# EXHIBIT B

**FILED**

San Francisco County Superior Court

JUN 2 2 2023

CLERK OF THE COURT
BY: _R. Michael Di___
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.550] | Case No. CJC-21-005188 JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5188 |
| IN RE UBER RIDESHARE CASES | ORDER ON DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S DEMURRER TO PLAINTIFFS' MASTER LONG-FORM COMPLAINT |

Defendants Uber Technologies, Inc. and Rasier, LLC's Demurrer to Plaintiffs' Master Long-Form Complaint came on for hearing on June 15, 2023. Having considered the papers and pleadings on file in the action, and the arguments of counsel presented at the hearing, the Court hereby sustains Uber's demurrer as to Plaintiffs' vicarious liability claims (sixth through tenth causes of action), fraud and misrepresentation claims (third, fourth, thirteenth, and sixteenth causes of action), and strict products liability claims (fourteenth and fifteenth causes of action) without leave to amend. The Court sustains Uber's demurrer as to the negligent infliction of emotional distress claim (fifth cause of action) with leave to amend.

- 1 -

**BACKGROUND**

By order dated December 9, 2021, the Court (Hon. Andrew Y.S. Cheng) granted the petition for coordination with respect to 86 cases originally filed in San Francisco, Sacramento, Santa Clara, Kern, and Los Angeles counties. Since that time, over 1,200 additional cases were the subjects of add-on orders from this Court. On January 23, 2023, the Court granted Uber's Motions to Stay or Dismiss Based on *Forum Non Conveniens*. Over 360 California cases remain in this JCCP. (Opening Brief, 13 fn. 1.)

On March 7, 2023, Plaintiffs filed a Master Long-Form Complaint ("Complaint" or "Compl.") against Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber"). Plaintiffs allege sixteen causes of action: (1) general negligence; (2) common carrier negligence; (3) negligent misrepresentation; (4) intentional misrepresentation; (5) negligent infliction of emotional distress ("NIED"); (6) intentional infliction of emotional distress ("IIED"); (7) vicarious liability/liability for the torts of Uber drivers; (8) vicarious liability for sexual assault; (9) vicarious liability for sexual battery; (10) vicarious liability for false imprisonment; (11) negligence by misfeasance; (12) negligence by nonfeasance; (13) intentional concealment; (14) strict product liability – design defect; (15) strict product liability – failure to warn; and (16) fraud. (Compl. ¶¶ 164-348.) Plaintiffs generally allege as follows.

Plaintiffs "are individuals who were raped, sexually assaulted, sexually battered, sexually harassed, falsely imprisoned, kidnapped, physically assaulted, and/or otherwise assaulted and/or harassed by their Uber driver." (*Id.* ¶ 6.) Uber is a transportation company that uses its app ("Uber App") to "connect riders looking for transportation to independent transportation providers...looking for rides." (*Id.* ¶¶ 1, 21-22.) Uber "drivers are largely nonprofessional, untrained individuals who use their own vehicles." (*Id.* ¶ 44.)

As early as 2014, Uber became aware that its drivers were engaging in sexual misconduct or sexual assault against its passengers. (*Id.* ¶¶ 3, 166; see *id.* ¶¶ 27, 244.) Uber has "publicly acknowledged this sexual assault crisis." (*Id.* ¶ 4; see *id.* ¶¶ 29, 121, 147, 149; see, e.g., *id.* ¶ 122 [approximately 250 reported sexual assaults per month in 2017 and 2018].) However, Uber "has actively chosen not to report instances of sexual assault that occur on the UBER App to the authorities" or other

ridesharing companies.  (*Id.* ¶¶ 84-86, 88, 134.)  In addition, Uber does not proactively cooperate with law enforcement investigating cases passenger victims report to the police or participate in transportation network company ("TNC") safety hearings.  (*Id.* ¶¶ 89-94, 116-120, 172.)  Moreover, after a victim reports a sexual assault, Uber often erases the victim's complaint and disables the victim's account, which precludes the victim from accessing pertinent information such as the driver's name, driver's photo, make and model of the vehicle, ride time, ride distance, and route.  (*Id.* ¶¶ 94-95, 100, 102.)

Despite marketing itself as a safe and better alternative to other transportation methods, Uber continues to hire drivers without conducting adequate background checks and screening procedures, allows culpable drivers to keep driving for Uber, and fails to adopt and implement reasonable monitoring and investigation procedures to protect passengers.  (*Id.* ¶¶ 4, 24-25, 28, 30-31, 112-114, 131-133, 152-153, 157, 167-169, 171, 173-180, 195-196, 198, 204, 221-226, 232-238, 245-247, 262, 267, 295, 301, 316, 332-333; see, e.g., *id.* ¶¶ 33-43, 66-83, 130 [Uber Safe Rides Fee was a revenue source rather than a fund for implementing background checks, vehicle checks, driver safety education, development of safety features, and insurance], 329-330; but see *id.* ¶ 111 [the Uber App now includes an emergency button that allows a passenger to call 911].)  Due to Uber's failure to implement changes, passengers continue to be victims of sexual assaults.  (*Id.* ¶¶ 28, 127.)

Uber now demurs to the third through tenth and thirteenth through sixteenth causes of action, which fall into four categories of claims: vicarious liability (fifth through tenth causes of action), fraud and misrepresentation (third, fourth, thirteenth, and sixteenth causes of action), NIED (fifth cause of action), and strict products liability (fourteenth and fifteenth causes of action).  (Demurrer, 2-4; Opening Brief, 14.)  Plaintiffs oppose the demurrer.[1]

## **LEGAL STANDARD**

A demurrer lies where "the pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10(e).)  A demurrer admits "all material facts properly pleaded, but not

---

[1] Plaintiffs' Request for Judicial Notice of state trial court rulings is denied.  Written trial court rulings have no precedential value.  (*Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761 [denying request for judicial notice]; see also, e.g., *Santa Ana Hospital Medical Center v. Belshe* (1997) 56 Cal.App.4th 819, 831.)  Uber's extensive reliance on such rulings throughout its briefing is misplaced for the same reason.

contentions, deductions, or conclusions of fact or law." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The complaint is given a reasonable interpretation, reading it as a whole and its parts in their context. (*Id.*)  The Court accepts as true, and liberally construes, all properly pleaded allegations of material fact, as well as those facts which may be implied or reasonably inferred from those allegations; its sole consideration is whether the plaintiff's complaint is sufficient to state a cause of action under any legal theory. (*O'Grady v. Merchant Exchange Prods., Inc.* (2019) 41 Cal.App.5th 771, 776-777.)

## DISCUSSION

### I.      Uber Cannot Be Held Vicariously Liable For The Tortious Acts Of Its Drivers.

Plaintiffs seek to hold Uber vicariously liable for IIED, sexual assault, sexual battery, and false imprisonment. (Compl. ¶¶ 250-292.) Uber contends that, as a matter of law, it cannot be held vicariously liable for the alleged sexual assaults committed by its drivers because such conduct falls outside the scope of employment. (Demurrer, 2; Opening Brief, 14-19.)[2]  The Court agrees.

"California deems employers to be vicariously liable for the torts committed by their employees if, but only if, *the employee is acting within the scope of employment.*" (*Musgrove v. Silver* (2022) 82 Cal.App.5th 694, 707 (emphasis in original).)  "Under certain circumstances, the employer may be subject to this form of vicarious liability even for an employee's willful, malicious, and criminal conduct." (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 491.)  "The nexus required for respondeat superior liability—that the tort be engendered by or arise from the work—is to be distinguished from 'but for' causation.  That the employment brought the tortfeasor and victim together in time and place is not enough." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 298.)  That is, "the incident leading to injury must be an outgrowth of the employment; the risk of tortious injury must be inherent in the working environment or typical of or broadly incidental to the enterprise the employer has undertaken." (*Id.* (cleaned up).)

California courts use two tests to regarding the "scope of employment under the respondeat

---

[2] For purposes of the demurrer, Uber accepts Plaintiffs' allegations regarding Uber drivers' status as employees. (Demurrer, 2; but see Reply, 10 fn. 1 ["As the demurrer made clear, the independent drivers are not Uber employees in any event."].)

-4-

superior doctrine." (*Marez v. Lyft, Inc.* (2020) 48 Cal.App.5th 569, 577.)  Under the first test, "the employer is liable if the activities that caused the employee to become an instrument of danger to others were undertaken with the employer's permission and were of some benefit to the employer, or in the absence of proof of benefit, the activities constituted a customary incident of employment." (*Id.*, quoting *Moreno v. Visser Ranch, Inc.* (2018) 30 Cal.App.5th 568, 577.)  Under the second test, "an employee's conduct is within the scope of his or her employment if (1) the act performed was either required or incident to his duties or (2) the employer's misconduct could be reasonably foreseen by the employer in any event." (*Marez*, 48 Cal.App.5th at 577, quoting *Halliburton Energy Services, Inc. v. Dept. of Transportation* (2013) 220 Cal.App.4th 87, 94.)  "Whether an employee was acting within the scope of employment is a question of fact, unless 'the facts are undisputed and no conflicting inferences are possible.'" (*Doe v. Uber Technologies, Inc.* (N.D. Cal. 2016) 184 F.Supp.3d 774, 784, quoting *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 213.)

Uber asserts *Lisa M.* is directly on point because "[i]f a hospital cannot be vicariously liable for a sexual assault carried out by an employee who was permitted to perform physical examinations on vulnerable patients alone in a confined space, then Uber certainly cannot be vicariously liable for a sexual assault carried out by an independent driver whose 'job' was providing rides to users of the Uber App." (Opening Brief, 17; see *id.* at 16.)  In *Lisa M.*, the plaintiff, a nineteen-year-old pregnant woman, was injured in a fall at a movie theater and sought medical treatment. (*Lisa M.*, 12 Cal.4th at 294.)  The plaintiff underwent an ultrasound imaging examination during which the ultrasound technician molested the plaintiff. (*Id.* at 295.)  Thereafter, the plaintiff filed suit against the ultrasound technician and the hospital for professional negligence, battery, IIED, and NIED. (*Id.* at 296.)  The Court found the "injurious events were causally related to Tripoli's employment as an ultrasound technician in the sense they would not have occurred had he not been so employed.  Tripoli's employment as an ultrasound technician provided the opportunity for him to meet plaintiff and to be alone with her in circumstances making the assault possible." (*Id.* at 299.)  However, the Court found:

> a sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions.  Here the opposite was true: a technician simply took advantage of solitude with a naive patient to commit an assault for reasons

- 5 -

> unrelated to his work. Tripoli's job was to perform a diagnostic examination and record the results. The task provided no occasion for a work-related dispute or any other work-related emotional involvement with the patient. The technician's decision to engage in conscious exploitation of the patient did not *arise out* of the performance of the examination, although the circumstances of the examination made it possible.

(*Id.* at 301 (emphasis in original).) The Court concluded that the "flaw in plaintiff's case for Hospital's respondeat superior liability is not so much that Tripoli's actions were personally motivated, but that those personal motivations were not generated by or an outgrowth of workplace responsibilities, conditions or events." (*Id.* at 301-302.) "Although the routine examination Tripoli was authorized to conduct involved physical contact with Lisa M., Tripoli's assault on plaintiff did not originate with, and was not a generally foreseeable consequence of, that contact." (*Id.* at 303.) The same reasoning applies here.

Plaintiffs generally allege Uber drivers engaged in sexual misconduct within the scope of their employment. (Compl. ¶¶ 11, 251, 257, 261, 264, 277, 284, 290.) Plaintiffs also allege "[t]he sexual assault and/or rape of intoxicated and unaccompanied women who have been placed in an improperly screened UBER driver's car with little to no supervision is incidental to and a foreseeable result of the act of transporting passengers." (*Id.* ¶ 264; see, e.g., *id.* ¶¶ 121-127 [5,981 sexual assaults in 2017 and 2018].) However, these allegations are insufficient as a matter of law. Plaintiffs do not allege Uber drivers were not acting solely for personal gratification or that the sexual assaults were engendered by their alleged employment. Rather, being in close proximity to passengers, in a confined environment, "brought the tortfeasor and victim together in time and place," which is insufficient to impose vicarious liability on Uber. (*Lisa M.*, 12 Cal.4th at 298.)

California appellate courts routinely find sexual assaults are beyond the scope of employment, and hence employers may not be held vicariously liable for such misconduct. (*John Y. v. Chaparral Treatment Center, Inc.* (2002) 101 Cal.App.4th 565, 575; see, e.g., *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992; *Roe v. Hesperia Unified School Dist.* (2022) 85 Cal.App.5th 13, 25; *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438; *Doe 1 v. City of Murrieta* (2002) 102 Cal.App.4th 899; *Maria D. v. Westec Residential Sec., Inc.* (2000) 85 Cal.App.4th 125; *Debbie Reynolds Prof. Rehearsal Studios v. Superior Court* (1994) 25 Cal.App.4th 222; *Kimberly M. v. Los Angeles Unified*

1   *School Dist.* (1989) 215 Cal.App.3d 545; *Jeffrey E. v. Central Baptist Church* (1988) 197 Cal.App.3d

2   718; *Rita M. v. Roman Catholic Archbishop* (1986) 187 Cal.App.3d 1453; *Alma W. v. Oakland Unified*

3   *School Dist.* (1981) 123 Cal.App.3d 133.)

> In those decisions, vicarious liability was rejected as a matter of law because it could not be demonstrated that the various acts of sexual misconduct arose from the conduct of the respective enterprises. In particular, the acts had been undertaken solely for the employees' personal gratification and had no purpose connected to the employment. Moreover, the acts had not been engendered by events or conditions relating to any employment duties or tasks; nor had they been necessary to the employees' comfort, convenience, health, or welfare while at work.

(*Farmers Ins. Group*, 11 Cal.4th at 1007.)

The sole exception is *Mary M.*, where the Court found that when "a police officer on duty misuses his official authority by raping a woman whom he has detained, the public entity that employs him can be held vicariously liable." (*Mary M.*, 54 Cal.3d at 221.) Plaintiffs contend that this case is similar to *Mary M.* because "Uber drivers abused their position of power to benefit [off] of Plaintiffs' vulnerabilities." (Opposition, 17.) However, as Uber points out, *Mary M.*'s holding is limited to sexual assaults by on-duty police officers, as the Supreme Court itself has expressly recognized. (See, e.g., *Farmers Ins. Group*, 11 Cal.4th at 1006-1007 ["except where sexual misconduct by on-duty police officers against members of the public is involved, the employer is not vicariously liable to the third party for such misconduct."]; *Lisa M.*, 12 Cal.4th at 204 ["We expressly limited our holding [in *Mary M.* to] the unique authority vested in police officers. Employees who do not have this authority and who commit sexual assaults may be acting outside the scope of their employment as a matter of law."]; *Z.V. v. County of Riverside* (2015) 238 Cal.App.4th 889, 891 ["there is considerable doubt that *Mary M.* has any applicability beyond the narrow context of an arrest performed by a uniformed, armed police officer in the normal course of that officer's duties."]; *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 124 [*Mary M.*'s holding "is, at best, limited to such [sex crime] acts by an on-duty police officer and does not extend to any other form of employment, including firefighting."].)

In the interest of completeness, the Court notes that it has identified one other appellate decision (which neither party cited) that applies these principles, although it does not advance Plaintiffs' position here. In *Samantha B. v. Aurora Vista Del Mar, LLC* (2022) 77 Cal.App.5th 85, the court reversed the trial

-7-

court's order granting an acute psychiatric hospital's motion for nonsuit on causes of action asserted by

former patients alleging the hospital bore vicarious liability for sexual assaults on them committed by a

mental health worker.  While the court recognized the general rule that "an employer is not liable under

the doctrine of respondeat superior for sexual assaults committed by an employee," it found that there was

sufficient evidence for a jury to conclude the mental health worker was acting within the scope of his

employment under the narrow exception recognized in *Lisa M.*: "a sexual tort will be considered to be

within the scope of employment if 'its motivating emotions were fairly attributable to work-related events

or conditions.'"  (*Id.* at 107-108, quoting *Lisa M.*, 12 Cal.4th at 301.)  The court's conclusion was

informed by the unique relationship between mental health workers and psychiatric patients:

> The duties of a mental health worker include helping patients with daily living activities.  The
> workers are personally involved with the patients over an extended period of time.  The patients
> are vulnerable; they may suffer from impaired judgment or other cognitive impairments.  Sexual
> exploitation of the patients by employees is a foreseeable hazard arising from the circumstances of
> the job.  That hazard was exponentially increased by [the hospital's] policies, including allowing
> male workers 20 minutes alone with patients and providing inadequate training on worker-patient
> boundaries.

(*Id.* at 108.)  The court observed that in *Lisa M.*, the ultrasound technician's interaction with the victim

was "brief" and his duties were "technical," and the circumstances of employment therefore were "highly

unlikely to engender a personal relationship that might result in sexual exploitation."  (*Id.*)  In contrast, it

observed, the mental health worker "becomes sexually involved with a patient as a result of mishandling

the feelings predictably created by the therapeutic relationship."  (*Id.*, quoting *Lisa M.*, 12 Cal.4th at

303.)[3]  Thus, *Samantha B.* recognizes a narrow exception to the general rule precluding vicarious liability

for sexual torts, one that plainly does not apply here: Uber's drivers are not therapists or mental health

workers, their interactions with their passengers typically are brief and technical and do not involve

physical contact, and any sexual assaults they may engage in are not fairly attributable to work-related

events or conditions.

---

[3] As an alternative ground for its holding, the court found that there was substantial evidence from which
a jury could have determined that the hospital ratified the worker's act by failing to investigate his actions
because it was on notice that his reputation among other employees was so bad that he had earned the
nickname "Rapey Juan."  (*Id.* at 109.)  Plaintiffs make no claim here that Uber ratified its drivers' alleged
intentional torts.

1    Plaintiffs argue the number of sexual assaults that have occurred and Uber's knowledge of the

2  sexual assaults render sexual assault a predictable outcome.  (Opposition, 15-16.)  However, "in

3  determining whether a risk is unusual or startling for respondeat superior purposes, the inquiry should be

4  whether the risk was one that may fairly be regarded as typical of or broadly incidental *to the enterprise*

5  *undertaken by the employer*.  Thus, it is not enough that a risk be neither unusual nor startling as a general

6  matter; rather, the risk must be evaluated in the context of the employer's particular enterprise." (*Farmers*

7  *Ins. Group*, 11 Cal.4th at 1009 (cleaned up); see also, e.g., *id.* at 1010 ["applying the same type of

8  approach in other contexts, we would be forced to conclude, in direct conflict with *John R.*, *supra*, 48

9  Cal.3d 438, and numerous other California and out-of-state decisions, that sexual molestation by teachers

10  and clergy is an inherent risk of schools and religious institutions simply because of the frequency with

11  which such misconduct is claimed."].)  Plaintiffs' allegations are insufficient to establish sexual assault is

12  "typical of or broadly incidental" to ridesharing services.

13    Plaintiffs' reliance on *Doe v. Uber Technologies, Inc.* (N.D. Cal. 2016) 184 F.Supp.3d 774, is

14  unpersuasive.  (See Opposition, 18.)  In *Doe*, the plaintiffs brought a similar action against Uber for

15  sexual assaults by Uber drivers alleging claims for battery, assault, false imprisonment, and IIED under a

16  theory of respondeat superior.  (*Id.* at 779-780.)  Uber moved to dismiss, arguing "it cannot be vicariously

17  liable because, it claims, sexual assault falls outside the scope of an employee's duties." (*Id.* at 781.)  The

18  court could not determine "that as a matter of law sexual assault by Uber driver is always outside the

19  scope of employment, if the drivers are in fact ultimately found to be employees.  The California Supreme

20  Court has left this question open." (*Id.* at 785.)  However, after *Doe*, California voters approved

21  Proposition 22, the Protect App-Based Drivers and Services Act, which classifies app-based drivers as

22  independent contractors rather than employees.  (See *Castellanos v. State of California* (2023) 89

23  Cal.App.5th 131, 142-145; Bus. & Prof. Code §§ 7448-7467.)  Therefore, *Doe* is not directly applicable to

24  the instant action.  In any event, other federal court decisions have criticized its holding and have reached

25  a different conclusion.  (E.g., *Doe v. Uber Technologies, Inc.* (N.D. Cal. Nov. 22, 2019) 2019 WL

26  6251189, *5 ["This Court respectfully disagrees that such a holding can be squared with *Lisa M.* and the

27  test it applies to sexual assault by employees on third parties."]; see also *Doe v. Uber Technologies, Inc.*

28

- 9 -

(N.D. Cal. May 1, 2020) 2020 WL 2097699, *2 [granting Uber's motion to dismiss false imprisonment, assault, and battery claims, following *Lisa M.*]; *Doe v. Uber Technologies, Inc.* (D.Md. June 9, 2021) 2021 WL 2382837, *4 [same, applying Maryland law]; *Murray v. Uber Technologies, Inc.* (D.Mass. 2020) 486 F.Supp.3d 468, 477 [same, applying Massachusetts law: "as a matter of law, sexual assault necessarily falls outside the scope of employment"].)

Uber's potential status as a common carrier does not alter the vicarious liability analysis. "Both California and federal cases consistently hold that, under California law, a common carrier relationship exists and a corresponding 'heightened standard of care applies to a passenger while in transit' with a common carrier . . ., and, under certain circumstances, for brief windows of time immediately before and/or after the passenger is in transit with the carrier." (*Jane Doe No. 1 v. Uber Technologies, Inc.* (2022) 79 Cal.App.5th 410, 420-421, quoting *Churchman v. Bay Area Rapid Transit Dist.* (2019) 39 Cal.App.5th 246, 250-251 (cleaned up); see also *Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 216 [common carrier-passenger relationship is a special relationship that gives rise to an affirmative duty to protect]; *Gomez v. Superior Court* (2005) 35 Cal.4th 1125, 1128 [common carriers are subject to a heightened duty of care].) A common carrier is "[e]very one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry." (Civ. Code § 2168.) The Public Utilities Code also defines common carrier as:

> . . . every person and corporation providing transportation for compensation to or for the public or any portion thereof, except as otherwise provided in this part. "Common carrier" includes: . . . Every railroad corporation; street railroad corporation; dispatch, sleeping car, dining car, drawing-room car, freight, freight line, refrigerator, oil, stock, fruit, car-loaning, car-renting, car-loading, and every other car corporation or person operating for compensation within this state.

(Pub. Util. Code § 211(a).)

Plaintiffs sufficiently allege Uber, as a ride-sharing company, is a common carrier because it provides transportation to the public (anyone can download the app and order a ride) in exchange for compensation. (Compl. ¶¶ 19-21, 190-191; see also *id.* ¶¶ 294-300; see, e.g., *Doe*, 2019 WL 6251189, at *6 ["Uber's status as an app-based transportation network does not preclude it as a matter of law from being held liable as a common carrier"]; *Doe*, 184 F.Supp.3d at 787 ["Plaintiffs have alleged sufficient

1    facts to plausibly claim that Uber is a common carrier."].)[4]

2          Plaintiffs point to *Berger v. Southern Pac. Co.* (1956) 144 Cal.App.2d 1, a 1956 appellate decision

3    that long predates *Lisa M.* and the body of cases discussed above, asserting that because Uber is a

4    common carrier, "the scope of employment of the driver is immaterial to whether Uber can be held liable

5    for these torts." (Opposition, 11; see also *id.* at 12 [same].)  As Plaintiffs acknowledged at the hearing,

6    however, they do not rely upon *Berger* to establish that Uber is vicariously liable for torts committed by

7    its drivers, but rather for the distinct proposition that as a common carrier, it owed them a duty of care to

8    prevent their injuries.[5]  In *Berger*, the court found that a common carrier

9        is liable for acts of assault and battery upon the part of its employees resulting in injury to those it
10       has agreed to transport upon its facilities.  This liability extends not only to cases where the assault
         was in the line of the employee's duty, but also to those instances where the act was merely that of
11       an individual and entirely disconnected with the performance of the agent's duties, as where the
         conductor of a train kisses a female passenger against her will. … The liability of a common
12       carrier for an assault by one of its employees on a passenger is not dependent on the question as to
         whether the employee was acting within the scope of his authority or in the line of his duty, but is
13       based upon its broad duty as a common carrier to protect its passengers from assault.

14   (*Berger*, 144 Cal.App.2d at 7; see also *Lisa M.*, 12 Cal.4th at 306 ["Although, as we have concluded,

15   [employee's] criminal acts were not engendered by or broadly incidental to his work so as to render

16   Hospital vicariously liable, Hospital's duty of due care to its patient obliged it to take all measures

17   dictated by ordinary prudence to protect against even such unusual sources of injury."].)[6]  Because Uber

18   has not demurred to Plaintiffs' common carrier negligence cause of action, whether the Complaint states a

19   cause of action for breach of a common carrier's duty to its passengers is not an issue currently before the

20   Court.

21         Thus, *Berger* does not support Plaintiffs' contention that a common carrier may be held

22

---

23   [4] Uber does not challenge Plaintiffs' second cause of action for common carrier negligence or Plaintiffs'
     eleventh and twelfth causes of action for negligence by misfeasance and negligence by nonfeasance,
24   respectively, which are premised on Uber's alleged common carrier status.
     [5] In a later case, the California Supreme Court cited *Berger* in connection with a claim alleging "a breach
25   of the common law duty of an employer to exercise due care in the employment and supervision of an
     employee who inflicted intentional harm on her." (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 745.)
26   [6] Similarly, *Lopez v. Southern California Rapid Transit Dist.* (1985) 40 Cal.3d 780 involved a negligence
     action in which the Court found that the defendant transit district owed a duty to protect passengers
27   aboard its buses from assaults by fellow passengers.  The district was the sole defendant, and the opinion
     did not address any issue of vicarious liability.

28                  - 11 -

1  vicariously liable for intentional sexual torts of its employees or agents committed *outside* the scope of

2  their employment, nor does it constitute "binding precedent" on that subject. (Opposition, 11-12.)

3  Accordingly, Uber's demurrer to Plaintiffs' vicarious liability claims is sustained without leave to amend.

4  **II.     Plaintiffs Do Not Allege Sufficient Facts To State Fraud And Misrepresentation Claims.**

5         Plaintiffs seek to state four causes of action based on fraud and misrepresentation: (1) negligent

6  misrepresentation (third cause of action); (2) intentional misrepresentation (fourth cause of action); (3)

7  intentional concealment (thirteenth cause of action); and (4) fraud (sixteenth cause of action).  Uber

8  argues Plaintiffs fail to plead their fraud and misrepresentation claims with particularity.  (Opening Brief,

9  22.)[7]  The Court agrees.

10        "The essential elements of . . . intentional misrepresentation are: (a) misrepresentation (false

11 representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to

12 defraud, i.e., to induce reliance; (d) actual and justifiable reliance; and (e) resulting damage." (*Berry v.*

13 *Frazier* (2023) 90 Cal.App.5th 1258, 307 Cal.Rptr.3d 778, 789.)  The elements of fraud are the same,

14 except only justifiable reliance must be alleged rather than actual and justifiable reliance. (*Amiodarone*

15 *Cases* (2022) 84 Cal.App.5th 1091, 1109.)  In addition, the elements of negligent misrepresentation are

16 the same, except no scienter or intent to defraud is required. (*Nissan Motor Acceptance Cases* (2021) 63

17 Cal.App.5th 793, 823.)  The elements of intentional concealment are: "(1) the defendant must have

18 concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact

19 to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent

20 to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as

21 he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or

22 suppression of the fact, the plaintiff must have sustained damage." (*RSB Vineyards, LLC v. Orsi* (2017)

23

24 [7] Uber also argues the sixteenth cause of action for fraud alleges the same facts and theory of liability as
   the intentional misrepresentation cause of action, therefore, it should be dismissed as duplicative.
25 (Opening Brief, 22.)  The Court disagrees.  Although similar, the two causes of action are not the same.
   (Compare Compl. ¶¶ 232-234 [Uber made false representations regarding safety of app, rides, and
26 experience as well as properly screened driver backgrounds] with *id.* ¶¶ 329-330 [Uber made false
   representations that it was taking steps to ensure its rides were safe and reliable (e.g., the Safe Rides Fee),
27 it properly screened drivers using background checks that were "often more rigorous" than the taxi
   industry, and held itself out as safe for young women].)

28                                                        - 12 -

1  15 Cal.App.5th 1089, 1096-1097, quoting *Bank of America Corp. v. Superior Court* (2011) 198

2  Cal.App.4th 862, 870.)

3        Fraud must be pled with particularity, which "necessitates pleading *facts* which show how, when,

4  where, to whom, and by what means the false representations were made." (*State ex rel. Edelweiss Fund,*

5  *LLC v. JPMorgan Chase & Company* (2023) 90 Cal.App.5th 1119, 307 Cal.Rptr.3d 750, 766, quoting

6  *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 (internal quotations omitted).) General and

7  conclusory allegations are insufficient. (*Amiodarone Cases*, 84 Cal.App.5th at 1109.)

8        **A.**    **Plaintiffs Do Not Sufficiently Plead Reliance**

9        Uber contends reliance is "highly individualized and specific to each Plaintiff," therefore,

10  generally alleging reliance is insufficient. (Opening Brief, 23-25.) The Court agrees.

11        "To allege actual reliance on misrepresentations with the required specificity for a fraud count, the

12  plaintiff must plead that he believed the representations to be true … and that in reliance thereon (or

13  induced thereby) he entered into a transaction." (*Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217,

14  231-232, quoting *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1063 (cleaned up); see *Small v. Fritz*

15  *Companies, Inc.* (2003) 30 Cal.4th 167, 184 [negligent misrepresentation must also be pled with

16  specificity]; *Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1193 ["A plaintiff

17  establishes [actual] reliance when the misrepresentation or nondisclosure was an immediate cause of the

18  plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or

19  nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other

20  transaction." (cleaned up)].) The plaintiff must show that the reliance was reasonable by showing that (1)

21  the matter was material in the sense that a reasonable person would find it important in determining how

22  he or she would act and (2) it was reasonable for the plaintiff to have relied on the misrepresentation. (*Id.*

23  at 1194.)

24        Plaintiffs allege that by "getting into the UBER, Plaintiffs reasonably relied on UBER's

25  representations that it would get them safely to their intended destination." (Compl. ¶ 226; see *id.* ¶ 238.)

26  Plaintiffs also allege that by "trusting and relying on Uber's representations, Plaintiffs were placed in a

27  uniquely vulnerable position that was taken advantage of by an UBER[] employee, an UBER driver." (*Id.*

28

¶ 227; see *id.* ¶ 239.)  Plaintiffs further allege they "actually and reasonably relied on the representations made by Defendant UBER when they agreed to utilize UBER's services after being informed that UBER stringently screened its drivers and took measures to ensure it provided passengers safe transport." (*Id.* ¶ 237; see *id.* ¶¶ 331-333.)  As to fraud in particular, Plaintiffs allege they "were justified in relying on Defendants' misstatements [because] UBER took advantage of information asymmetries.  That is, UBER was in a much better position than Plaintiffs to know whether UBER was adequately training, screening, and supervising drivers and what steps it had taken and was taking to make UBER rides safe." (*Id.* ¶ 334.)

These allegations are insufficient to plead reliance for all 362 individual Plaintiffs.  (See Opening Brief, 23-25; Reply, 22-24.)  It is implausible, to state the obvious, that every one of those individual Plaintiffs actually saw and relied on each and every one of the statements and other representations alleged in the Complaint.[8]  Plaintiffs do not identify the specific representations each Plaintiff relied upon and when those representations were made.  The purpose of the long-form complaint is to set forth the causes of action as applied "to each plaintiff within the JCCP . . . except to the extent that a particular plaintiff has pled otherwise in a Short-Form Complaint." (Apr. 14, 2022 Joint Case Management Statement, 6-7.)  However, by filing a long-form complaint that applies to all Plaintiffs, Plaintiffs are not relieved of their obligation to plead fraud claims with particularity.  (See, e.g., *Murphy v. BDO Seidman* (2003) 113 Cal.App.4th 687, 690, 698 ["Although the complaint is long, with numerous allegations, dozens of paragraphs, and more than 100 plaintiffs," the plaintiffs sufficiently alleged reliance].)  Therefore, to allege fraud and misrepresentation claims, Plaintiffs must plead with particularity, as required, to place Uber on notice of "certain definite charges which can be intelligently met" and "to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." (*Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 838, quoting *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217 (cleaned up).)  The short-form complaints serve the purpose of providing the

---

[8] Plaintiffs' reliance on *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235 (Opposition, 20), a class action, is misplaced.

1    specific factual allegations as to each individual Plaintiff.[9]

2        **B.    Plaintiffs Inadequately Plead False Statements By Uber**

3        Uber argues Plaintiffs do not "allege with specificity the how, when, where, and to which specific

4    plaintiff any specific misrepresentation was made." (Opening Brief, 25.)  Uber contends Plaintiffs allege

5    "a laundry list of allegedly false statements, none of which is connected to any specific plaintiff." (*Id.*)

6    Again, the Court agrees.  Plaintiffs allege that beginning in 2014, Uber engaged in an active and

7    aggressive marketing campaign regarding the safety of its services.  (Compl. ¶ 66.)  Plaintiffs allege that

8    this marketing campaign, which continues to this day, includes "email messages sent to every UBER

9    customer, including Plaintiffs." (*Id.*)  Plaintiffs' allegations set forth specific statements regarding safety

10   made by Uber "to its customers, including Plaintiffs, on its website." (*Id.* ¶ 67.)  However, as a threshold

11   matter, Plaintiffs do not plead that all Plaintiffs saw the purported misrepresentations either by email or on

12   Uber's website.  In addition, "when a plaintiff asserts fraud against a corporation, the plaintiff must

13   'allege the names of the persons who made the allegedly fraudulent representations, their authority to

14   speak, to whom they spoke, what they said or wrote, and when it was said or written.'" (*Cansino v. Bank*

15   *of America* (2014) 224 Cal.App.4th 1462, 1469, quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*

16   (1991) 2 Cal.App.4th 153, 157.)  No such allegations are pled in the Complaint.

17       Accordingly, Uber's demurrer as to Plaintiffs' fraud and misrepresentation claims is sustained

18   without leave to amend.  Should any individual Plaintiffs seek to plead fraud and misrepresentation

19   claims, those Plaintiffs are granted 30 days leave to amend the short-form complaints with the

20   particularity required by California law, and Uber is granted 30 days to respond to those amended short-

21   form complaints.

22

23

---

24   [9] Uber raises the issue of the class action settlement in *McKnight v. Uber Techs., Inc.*, No. 4:14-cv-05615
     (N.D. Cal. June 1, 2017), as it relates to misrepresentations.  (Opening Brief, 26 fn. 12.)  Uber states that

25   it cannot determine which plaintiffs are in the *McKnight* class based on the operative pleading here.  In
     particular, the Long-Form Complaint does not include the date Plaintiffs began using the Uber App and

26   the date of the alleged incident.  This information should be readily available in Plaintiffs' short-form
     complaints such that Uber can determine whether a plaintiff is included in the *McKnight* class.  The Court

27   declines to order Plaintiffs to plead facts as to each individual Plaintiffs' initial date of using the Uber
     App and date of the alleged incident in the long-form complaint.

28                                                   - 15 -

III.   **NIED**

Uber contends, and Plaintiffs concede, California does not recognize a separate tort for negligent infliction of emotional distress because it is simply the tort of negligence.  (Opening Brief, 31; Opposition, 24.)  The Court agrees.  (*Downey v. City of Riverside* (2023) 90 Cal.App.5th 1033, 307 Cal.Rptr.3d 666, 673 ["The negligent causing of emotional distress is not an independent tort, but the tort of negligence."].)  Uber asserts that because the fifth cause of action for NIED is duplicative of and subsumed by the negligence claims, it should be dismissed.  (*Id.*)  Plaintiffs oppose dismissal, denying that the allegations regarding the NIED claim are duplicative.  (Opposition, 24.)  However, Plaintiffs request leave to amend to consolidate Plaintiffs' negligence allegations.  (*Id.*)

The Court declines to sustain Uber's demurrer on the ground the NIED claim is duplicative of Plaintiffs' other negligence claims.  Although similar, they are not identical.  Uber's demurrer is sustained with leave to amend to allow Plaintiffs to consolidate the negligence allegations.

IV.   **Plaintiffs Cannot State A Cause Of Action For Strict Products Liability.**

Uber asserts Plaintiffs' strict products liability claims fail as a matter of law because Plaintiffs do not plead facts to establish that the Uber App is a "product."  (Opening Brief, 32-36.)  Rather, Uber argues Plaintiffs plead the Uber App provides a service.  (*Id.*)

"'Products liability' refers to tort liability imposed on 'those who supply goods or products for the use of others to purchasers, users, and bystanders for losses of various kinds resulting from so-called defects in those products.'"  (*Sharufa v. Festival Fun Parks, LLC* (2020) 49 Cal.App.5th 493, 502, quoting *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 478.)  "However, products liability does not reach a party who is delivering a service to the consumer rather than supplying the product at issue."  (*Sharufa*, 49 Cal.App.5th at 502; see *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 453; *Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 640; *Hennigan v. White* (2011) 199 Cal.App.4th 395, 403.)  Therefore, "[a]s a condition precedent to maintaining a strict products liability claim, a plaintiff must show the transaction in which she obtained the product was one in which the transaction's primary objective was to acquire ownership or use of a product, and not one where the primary objective was to obtain a service."  (*Hennigan*, 199 Cal.App.4th at 403; *Brooks v. Eugene Burger Management*

- 16 -

*Corp.* (1989) 215 Cal.App.3d 1611, 1625 [plaintiffs "must show that the object or instrumentality claimed to be defective was in fact a 'product' as defined or contemplated by the Restatement of Torts, legislation or case law."].) "Although the primary objective inquiry turns on the particular facts of each case, determining whether something is properly considered a 'product' is a gatekeeping function that controls the availability of a products liability cause of action.  It is therefore a question of law for the court." (*Sharufa*, 49 Cal.App.5th at 502; see *Brooks*, 215 Cal.App.3d at 1626.)

"A 'product' is broadly defined to include any 'tangible personal property distributed commercially for use or consumption." (*Johnson v. United States Steel Corp.* (2015) 240 Cal.App.4th 22, 31, quoting Rest.3d Torts, Products Liability § 19(a).)  There are two exceptions where intangible property is considered a product for purposes of strict liability.  (Rest.3d Torts, Products Liability § 19 cmt. d.)  The first type of intangible property is information in media such as books, maps, and navigational charts.  (*Id.*)  The second type is the transmission of intangible forces such as electricity and x-rays.  (*Id.*)  These intangible properties are considered products when their use and distribution are similar to the use and distribution of tangible personal property.  (*Id.*)

Here, Plaintiffs allege Uber "designs, manufactures, produces and/or distributes a smart phone application" (the Uber App), which is "available to anyone to download onto a smart phone" at no cost.  (Compl. ¶ 21; see *id.* ¶¶ 314, 321.)  Plaintiffs also allege the Uber App "is a product designed, patented, and/or distributed by UBER in San Francisco, California.  It is a product, designed and intended to 'connect riders looking for transportation to independent transportation providers…looking for riders.'" (*Id.* ¶ 22.)

Based on the face of the Complaint, the Uber App is intangible property.  Plaintiffs argue the Uber App is tangible property because it fits the Black's Law Dictionary definition of "capable of being touched and seen." (Opposition, 28; *Tangible*, Black's Law Dictionary (11th ed. 2019).)  However, this argument is unpersuasive.  It is not the app that is being touched and seen, it is the phone.  Indeed, the Uber App itself is software that is not capable of being touched and seen and, therefore, is intangible.  (See, e.g., *Lucent Technologies, Inc. v. Board of Equalization* (2015) 241 Cal.App.4th 19, 42 ["the fact that placing a computer program on storage media physically alters that media does not thereby

- 17 -

1    transmogrify the software itself into tangible personal property; the media is tangible, the software is

2    not."].)

3           Even assuming the Uber App is a product, when a transaction involves both a service and a

4    product, courts will look to the defendant's dominant role in the transaction, as well as the primary

5    objective or essence of the transaction. (*Murphy v. E.R. Squibb and Sons, Inc.* (1985) 40 Cal.3d 672, 677;

6    *Hernandezcueva v. E.F. Brady Co. Inc.* (2015) 243 Cal.App.4th 249, 259.)  First, if Uber is considered to

7    be a TNC, it is defined by the California Legislature as "providing prearranged transportation services."

8    (Pub. Util. Code § 5431; see also *Uber Technologies Pricing Cases* (2020) 46 Cal.App.5th 963, 968,

9    citing *Goncharov v. Uber Technologies, Inc.* (2018) 19 Cal.App.5th 1157, 1161 ["Uber provides

10   transportation services to the public for a fee by connecting consumers to its 'partner drivers' through the

11   use of a GPS-enabled smartphone application"].)  Uber's dominant role in creating and providing the app

12   is to provide transportation services.  Second, Plaintiffs allege the Uber App's primary purpose or

13   objective is "to connect riders looking for transportation to independent transportation providers . . .

14   looking for riders."  (Compl. ¶ 22.)  Further, the Uber App is free for all users, and it is responsible for

15   tracking the rides and processing payments.  (*Id.*)

16          Therefore, a customer's primary objective when downloading and using the Uber App is to

17   request a ride in a car and get paired with a driver who is dispatched to pick up and drive the customer to

18   their destination in exchange for a fee.  (*Id.* ¶ 21.)  Customers do not purchase the App, nor is it in any

19   meaningful sense the object of their transaction with Uber, but merely the mechanism by which that

20   object—securing a ride to their destination—is accomplished.  The Uber App is no more a "product" for

21   these purposes than is a telephone that a customer uses to call a taxi.  The Uber App is incidental to the

22   transportation service provided.  (See, e.g., *Murphy*, 40 Cal.3d at 679 [holding a pharmacist's dominant

23   role is selling prescription drugs and his service of giving advice is a subsidiary role]; *Ferrari v. Grand

24   Canyon Dories* (1995) 32 Cal.App.4th 248, 258 [holding defendants who sponsored and conducted a

25   rafting trip were not liable for injuries to the plaintiff because the primary objective of the transaction was

26   providing a service of transportation down a river rather than providing the raft as a product].)  It is

27   essentially a means of obtaining a service, not a product in and of itself.  (See, e.g., *Jane Doe No. 1*, 79

28                                                           - 18 -

1    Cal.App.5th at 419 ["As to the strict liability cause of action, the [trial] court concluded the Uber app was

2    not a product, and thus a products liability theory of recovery was not legally viable."]; *Hennigan*, 199

3    Cal.App.4th at 403 [finding the plaintiff's primary objective in patronizing the defendant's salon was to

4    obtain a service, affixing permanent makeup to her eyebrows and eyelids, not to purchase a bottle of

5    pigment to apply to her face]; *Ziencik v. Snap, Inc.* (C.D. Cal. Feb. 3, 2023), 2023 WL 2638314, *4

6    [finding plaintiffs' products liability claims failed because non-tangible objects such as the Snapchat app

7    cannot be a "product" for purposes of strict products liability as "Snapchat is more like a service than a

8    product."]; *Jackson v. Airbnb, Inc.* (C.D. Cal. Nov. 4, 2022) ___ F.Supp.3d ___, 2022 WL 16752071, *9-

9    *10 ["Airbnb is a platform that connects users; it is more akin to a service than to a product."].)

## CONCLUSION

12       For the foregoing reasons, the Court sustains Uber's demurrer as to Plaintiffs' vicarious liability

13   claims (sixth through tenth causes of action), fraud and misrepresentation claims (third, fourth, thirteenth,

14   and sixteenth causes of action), and strict products liability claims (fourteenth and fifteenth causes of

15   action) without leave to amend.  The Court sustains Uber's demurrer as to the negligent infliction of

16   emotional distress claim (fifth cause of action) with leave to amend.  Plaintiffs are granted 30 days leave

17   to amend.  Individual Plaintiffs who have filed short-form complaints are granted 30 days leave to amend

18   those complaints to plead claims for fraud and misrepresentation, and Uber shall have 30 days to respond

19   to such amended short-form complaints.

21       IT IS SO ORDERED.

23   Dated: June 22, 2023

Ethan P. Schulman
Judge of the Superior Court

- 19 -

| In Re Uber Rideshare Cases | Case No:  CJC-21-005188 |
|---|---|

### CERTIFICATE OF ELECTRONIC SERVICE
(CCP §1010.6 & CRC §2.251)

I, R. Michael Diles, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am over the age of 18 years, employed in the City and County of San Francisco, California and am not a party to the within action.

On June 22, 2023, I electronically served the attached **Order on Defendants Uber Technologies, Inc. and Rasier, LLC's Demurrer to Plaintiffs' Master Long-Form Complaint.** via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated: June 22, 2023

Brandon E. Riley, Clerk of the Court

By: _____

R. Michael Diles, Deputy Clerk