# EXHIBIT C

FILED
San Francisco County Superior Court
JUN 22 2023
CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| COORDINATION PROCEEDING<br>SPECIAL TITLE [RULE 3.550]<br><br>IN RE UBER RIDESHARE CASES | Case No. CJC-21-005188<br>JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5188<br><br>ORDER ON DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S MOTION TO STRIKE PLAINTIFFS' MASTER LONG-FORM COMPLAINT |

Defendants Uber Technologies, Inc. and Rasier, LLC's Motion to Strike Plaintiffs' Master Long-Form Complaint came on for hearing on June 15, 2023. Having considered the papers and pleadings on file in the action, and the arguments of counsel presented at the hearing, the Court hereby grants the motion in part as set forth below.

**BACKGROUND**

On March 7, 2023, Plaintiffs filed a Master Long-Form Complaint ("Complaint" or "Compl.") against Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber"). Plaintiffs allege sixteen causes of action: (1) general negligence; (2) common carrier negligence; (3) negligent misrepresentation;

- 1 -

(4) intentional misrepresentation; (5) negligent infliction of emotional distress ("NIED"); (6) intentional infliction of emotional distress ("IIED"); (7) vicarious liability/liability for the torts of Uber drivers; (8) vicarious liability for sexual assault; (9) vicarious liability for sexual battery; (10) vicarious liability for false imprisonment; (11) negligence by misfeasance; (12) negligence by nonfeasance; (13) intentional concealment; (14) strict product liability – design defect; (15) strict product liability – failure to warn; and (16) fraud. (Compl. ¶¶ 164-348.) Plaintiffs generally allege as follows.

Plaintiffs "are individuals who were raped, sexually assaulted, sexually battered, sexually harassed, falsely imprisoned, kidnapped, physically assaulted, and/or otherwise assaulted and/or harassed by their Uber driver." (*Id.* ¶ 6.) Uber is a transportation company that uses its app ("Uber App") to "connect riders looking for transportation to independent transportation providers…looking for rides." (*Id.* ¶¶ 1, 21-22.) Uber "drivers are largely nonprofessional, untrained individuals who use their own vehicles." (*Id.* ¶ 44.)

As early as 2014, Uber became aware that its drivers were engaging in sexual misconduct or sexual assault against its passengers. (*Id.* ¶¶ 3, 166; see *id.* ¶¶ 27, 244.) Uber has "publicly acknowledged this sexual assault crisis." (*Id.* ¶ 4; see *id.* ¶¶ 29, 121, 147, 149; see, e.g., *id.* ¶ 122 [approximately 250 reported sexual assaults per month in 2017 and 2018].) However, Uber "has actively chosen not to report instances of sexual assault that occur on the UBER App to the authorities" or other ridesharing companies. (*Id.* ¶¶ 84-86, 88, 134.) In addition, Uber does not proactively cooperate with law enforcement investigating cases passenger victims report to the police or participate in transportation network company ("TNC") safety hearings. (*Id.* ¶¶ 89-94, 116-120, 172.) Moreover, after a victim reports a sexual assault, Uber often erases the victim's complaint and disables the victim's account, which precludes the victim from accessing pertinent information such as the driver's name, driver's photo, make and model of the vehicle, ride time, ride distance, and route. (*Id.* ¶¶ 94-95, 100, 102.)

Despite marketing itself as a safe and better alternative to other transportation methods, Uber continues to hire drivers without conducting adequate background checks and screening procedures, allows culpable drivers to keep driving for Uber, and fails to adopt and implement reasonable monitoring and investigation procedures to protect passengers. (*Id.* ¶¶ 4, 24-25, 28, 30-31, 112-114, 131-133, 152-

- 2 -

153, 157, 167-169, 171, 173-180, 195-196, 198, 204, 221-226, 232-238, 245-247, 262, 267, 295, 301, 316, 332-333; see, e.g., *id.* ¶¶ 33-43, 66-83, 130 [Uber Safe Rides Fee was a revenue source rather than a fund for implementing background checks, vehicle checks, driver safety education, development of safety features, and insurance], 329-330; but see *id.* ¶ 111 [the Uber App now includes an emergency button that allows a passenger to call 911].) Due to Uber's failure to implement changes, passengers continue to be victims of sexual assaults. (*Id.* ¶¶ 28, 127.)

Uber now moves to strike portions of the Complaint. (Motion, 2-15.) Plaintiffs oppose the motion.

## LEGAL STANDARD

"The court may, upon a motion made pursuant to [Code of Civil Procedure] Section 435, or at any time in its discretion, and upon terms it deems proper: (a) Strike out any irrelevant, false, or improper matter inserted in any pleading. (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." (Code Civ. Proc. § 436.) "The grounds for a motion to strike shall appear on the face of the challenged pleading or from any matter of which the court is required to take judicial notice." (Code Civ. Proc. § 437(a).)

## DISCUSSION

### I. Allegations Regarding Uber's Toxic Male Culture.

Uber moves to strike Plaintiffs' allegations regarding Uber's "toxic male culture" on the ground that they are irrelevant to the instant action as there is no causal link between the "unrelated incidents" and Plaintiffs' injuries. (Opening Brief, 24-25; see Reply, 11.) The Court agrees. Allegations regarding "toxic male culture" amongst Uber's corporate employees are irrelevant to this action and inflammatory. (See, e.g., Compl. 26:3 & ¶¶ 138 [Malaysian Uber employee followed by a gang after work], 139 [Uber employees in Thailand consuming and forcing others to consume drugs], 140 [Uber employees visiting a brothel in South Korea], 141 [Uber employees throwing parties at topless bars], 143 [Uber employee propositioning another Uber employee], 144 [aversion to proposal to add a female board member], 145-146 [investigation and report on Uber's culture and work-place environment]; see *Oiye v. Fox* (2012) 211

1   Cal.App.4th 1036, 1070 ["Courts have inherent authority to strike scandalous and abusive statements in
2   pleadings."]; see also Code Civ. Proc. § 431.10(b)(1)-(2) [allegations are not essential to the statement of
3   a claim or defense or neither pertinent to nor supported by an otherwise sufficient claim or defense].)

4   However, Plaintiffs' allegations regarding Uber's response to the sexual assault of a passenger in
5   New Delhi, India, Travis Kalanick's response to passenger reports of sexual assault by Uber drivers, and
6   the celebratory environment at Uber's headquarters when a sexual assault claim or charge could not
7   proceed in court are relevant to Plaintiffs' negligence claims, if marginally so. (See, e.g., Compl. ¶¶ 135-
8   136 [sexual assault of passenger in New Delhi, India], 137 [alleging that Travis Kalanick, Uber's second
9   Chief Executive Officer, "would pace around UBER headquarters . . . repeating . . . 'innocent until proven
10  guilty'" when a passenger would accuse an Uber driver of sexual assault, and that "a round of cheers
11  would ring out across the fifth floor of UBER HQ" in celebration of a sexual assault victim declining to
12  bring a civil claim against Uber or law enforcement deciding evidence was too inconclusive to file
13  criminal charges.].)

14  Therefore, Uber's motion is denied as to paragraphs 135 to 137 of the Complaint and granted
15  without leave to amend as to the remaining listed allegations regarding Uber's "toxic male culture."

16  **II.   Punitive Damages Allegations.**

17  Plaintiffs seek punitive damages in their causes of action for intentional infliction of emotional
18  distress and fraud. (Compl. ¶¶ 258, 336.) The Complaint also contains a separate section entitled
19  "Punitive Damages" that incorporates by reference all of the preceding causes of action and factual
20  allegations. (*Id.* ¶¶ 349-360.) In essence, Plaintiffs allege that although Uber knew that it faced an
21  ongoing problem of sexual assaults by its drivers, it failed to take adequate safety precautions to protect
22  its passengers, including by making "conscious decision[s]" not to implement adequate background
23  checks and not to warn passengers of the risks. Plaintiffs allege that Uber and its executive officers
24  prioritized profits over passenger safety, and therefore acted "recklessly and in knowing, conscious
25  disregard of the safety of its passengers." (*Id.* ¶ 356.) Uber moves to strike Plaintiffs' punitive damages
26  allegations and prayer on the grounds, among others, that allegations of negligence cannot support
27  punitive damages. (Opening Brief, 20, 27-29; Reply, 4-10.) Because Uber does not establish that

28
- 4 -

1  Plaintiffs' factual allegations are insufficient as a matter of law at the pleading stage to support their
2  request for punitive damages, the motion must be denied.
3        Uber argues first that "[n]egligence is no basis for punitive damages." (Opening Brief, 24, 26-27.)
4  That argument misstates the controlling standard. Punitive damages may be awarded "[i]n an action for
5  the breach of an obligation not arising from contract, where the defendant has been guilty of oppression,
6  fraud, or malice, express or implied." (Civ. Code § 3294.) "Malice" is "conduct which is intended by the
7  defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a
8  willful and conscious disregard of the rights or safety of others." (Civ. Code § 3294(c)(1).) "At the same
9  time, malice does not require actual intent to harm. Conscious disregard for the safety of another may be
10 sufficient where the defendant is aware of the probable dangerous consequences of his or her conduct and
11 he or she willfully fails to avoid such consequences." (*Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th
12 1270, 1299 (cleaned up); see also, e.g., *Hoch v. Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48 [to establish
13 "conscious disregard," a plaintiff must show that defendant was aware of the probable dangerous
14 consequences of his conduct and that he willfully and deliberately failed to avoid those consequences].)
15 Thus, contrary to Uber's argument, "nonintentional torts support punitive damages when the defendant's
16 conduct involves conscious disregard of the rights or safety of others." (*Pfeifer*, 220 Cal.App.4th at 1299
17 (cleaned up); see also *CRST, Inc. v. Superior Court* (2017) 11 Cal.App.5th 1255, 1261 ["California courts
18 have long held that punitive damages may, under appropriate circumstances, be recoverable for
19 nondeliberate or unintentional torts"]; *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 395
20 ["punitive damages may be recovered . . . in a negligence action . . . on the basis of a conscious disregard
21 of the safety of others."].)
22       "In order to survive a motion to strike an allegation of punitive damages, the ultimate facts
23 showing an entitlement to such relief must be pled by a plaintiff." (*Clauson v. Superior Court* (1998) 67
24 Cal.App.4th 1253, 1255.) In considering a motion to strike, "judges read allegations of a pleading subject
25 to a motion to strike as a whole, all parts in their context, and assume their truth"; "courts do not read
26 allegations in isolation." (*Id.* [holding that "plaintiffs stated sufficient facts to permit them to proceed past
27 the pleading stage with their punitive damage allegations" that certain of defendants' employees had
28

- 5 -

installed eavesdropping devices in plaintiff's office and had wiretapped his private office and telephone].) Thus, a plaintiff must plead facts sufficient to meet the statutory criteria; merely parroting the statutory language is insufficient. (See, e.g., *Turman v. Turning Point of Central California, Inc.* (2010) 191 Cal.App.4th 53, 64 [trial court properly granted motion to strike punitive damages where third amended complaint "fails to state facts sufficient to support allegations that [defendant employer] acted with malice, oppression or fraud, as required by statute"]; *Smith v. Superior Court* (1992) 10 Cal.App.4th 1033, 1042 ["conclusory allegations" that are "devoid of any factual assertions supporting a conclusion [defendants] acted with oppression, fraud or malice" are insufficient].)

Uber argues that Plaintiffs' factual allegations do not meet the heightened standard for pleading punitive damages. (Opening Brief, 22-29.) The Court disagrees. Plaintiffs' factual allegations, if proven, are sufficient to allow a trier of fact to find that Uber acted with malice within the meaning of Section 3294. Uber's contrary arguments are unpersuasive at the pleading stage.

First, Uber argues that Plaintiffs fail to allege that its allegedly malicious conduct is causally related to their injuries. (Opening Brief, 23, 28-29.) However, a fair reading of the Complaint reveals multiple allegations to the effect that but for Uber's decisions not to implement more effective safety measures, fewer sexual assaults would have occurred, and Plaintiffs would not have suffered the injuries they did. (See, e.g., Compl. ¶¶ 152, 155, 185-187, 205, 297, 302, 357.) Whether Plaintiffs will be able to prove those factual allegations, of course, is a question that must be addressed on a full record, not one the Court can answer on a demurrer or motion to strike. Revealingly, most of the cases on which Uber relies were decided after a jury verdict or a motion for summary judgment or summary adjudication, not at the pleading stage. (E.g., *CRST, Inc.*, 11 Cal.App.5th at 1258 [summary adjudication].)

Second, Uber asserts that Plaintiffs' allegations that it negligently implemented certain policies that were inadequate to prevent sexual assault are insufficient to meet the standard for pleading malicious, oppressive, or fraudulent conduct. (Reply, 7.) The law, however, is to the contrary. Thus, in *Samantha B. v. Aurora Vista Del Mar, LLC* (2022) 77 Cal.App.5th 85, an action by former patients at an acute psychiatric hospital who suffered sexual abuse by a hospital employee, the court found that the evidence supported an award of punitive damages against the hospital's management company where "[t]he jury

could reasonably conclude that it was [the defendant management company] that set the policies that made sexual predation of patients almost inevitable, and that in setting those policies, it acted willfully and with a conscious disregard for the safety of others." (*Id.* at 106;[1] compare, e.g., *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1170-1175 [in an action against utility for damages arising out of a wildfire which started when a tree came into contact with power line, any shortcomings in utility's risk management practices did not support award of punitive damages, where there was no evidence that utility consciously disregarded risk of wildfire or willfully ignored fire safety standards].)

Third, Uber correctly observes that it cannot be held liable for punitive damages unless the person responsible for the wrongful act was "an officer, director, or managing agent of the corporation." (Opening Brief, 23; Civ. Code § 3294(b).) But as Uber itself acknowledges, "Plaintiffs allege that Uber's former CEO and current CEO determined Uber's policies with regard to background checks and safety." (Opening Brief, 30; see Compl. ¶¶ 131-132, 134.) Further, the Complaint is replete with allegations that the policies Plaintiffs complain of were the product of corporate decision-making at the direction of Uber's officers, directors and/or managing agents. (See, e.g., Compl. ¶¶ 28, 30, 32, 132, 137, 152.) No more is required.

Finally, Uber argues that Plaintiffs must show that an officer, director, or managing agent had advance knowledge of the unfitness of a particular driver. (Opening Brief, 23; Reply 5-6.) The argument is fatuous. Uber misreads section 3294(b), which is phrased in the disjunctive: "With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification *or* act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." (Emphasis added.)

Therefore, Uber's motion to strike Plaintiffs' requests for punitive damages is denied.

---

[1] The policies in question included the defendants' policies of hiring unlicensed mental health workers, as to whom their ability to do background checks was limited; providing inadequate training on therapeutic boundaries; allowing male workers up to 20 minutes alone with female patients; and understaffing, creating a situation that was "perfect for a sexual predator." (77 Cal.App.5th at 100.) The flaws in these policies, the court observed, "were so obvious that the jury could conclude that [defendants] intentionally turned a blind eye to the high probability of harm." (*Id.*)

- 7 -

### III. Plaintiffs' Common Carrier Allegations.

Uber moves to strike Plaintiffs' common carrier allegations "to the extent those allegations are made to support their vicarious liability causes of action." (Opening Brief, 32; see *id*. at 20-21; Reply, 4, 12.) However, Plaintiffs also allege causes of action for common carrier negligence, negligence by misfeasance, and negligence by nonfeasance based on Uber's alleged status as a common carrier. (Compl. ¶¶ 189-206, 293-303.) These causes of action are not based on a theory of vicarious liability and are not the subject of Uber's demurrer. Plaintiffs sufficiently allege Uber, a ride-sharing company, is a common carrier. (Compl. ¶¶ 19-21, 190-191; see also *id*. ¶¶ 294-300.) "Uber's status as an app-based transportation network does not preclude it as a matter of law from being held liable as a common carrier." (*Doe v. Uber Technologies, Inc.* (N.D. Cal. Nov. 22, 2019) 2019 WL 6251189, *6.) Therefore, Uber's motion to strike common carrier allegations is denied.

### CONCLUSION

For the foregoing reasons, the Court grants Uber's motion to strike the following portions of the Master Long-Form Complaint: Compl. 26:3 & ¶¶ 138-141, 143-146. The motion to strike is denied as to Paragraphs 135-137, Plaintiffs' allegations and requests for punitive damages, and Plaintiffs' common carrier allegations.

IT IS SO ORDERED.

Dated: June 22, 2023

Ethan P. Schulman
Judge of the Superior Court

| In Re Uber Rideshare Cases | Case No: CJC-21-005188 |
|---|---|

# CERTIFICATE OF ELECTRONIC SERVICE
(CCP §1010.6 & CRC §2.251)

I, R. Michael Diles, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am over the age of 18 years, employed in the City and County of San Francisco, California and am not a party to the within action.

On June 22, 2023, I electronically served the attached **Order on Defendants Uber Technologies, Inc. and Rasier, LLC's Motion to Strike Plaintiffs' Master Long-Form Complaint.** via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated: June 22, 2023

Brandon E. Riley, Clerk of the Court

By: _____
R. Michael Diles, Deputy Clerk