# EXHIBIT F

RANDALL S. LUSKEY (SBN: 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
**& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Admitted Pro Hac Vice*)
ratkins@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
**& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3183
Facsimile: (212) 492-0183

*Attorneys for Defendants/Cross-Complainants,*
UBER TECHNOLOGIES, INC.,
RASIER, LLC and RASIER-CA, LLC

**F I L E D**
San Francisco County Superior Court

AUG 1 0 2022

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO – UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| Coordination Proceeding<br><br>*In Re: Uber Rideshare Cases*<br><br>This Document Relates to:<br>ALL ACTIONS | JUDICIAL COUNCIL COORDINATION<br>PROCEEDING CASE NO. 5188<br><br>Case No. CJC-21-005188<br><br>*(Assigned to Hon. Ethan P. Schulman<br>Dept. 304)*<br><br>**STIPULATION RE: FORUM NON<br>CONVENIENS DISCOVERY AND<br>MOTIONS PRACTICE; [PROPOSED]<br>ORDER** |

STIPULATION RE: FORUM NON CONVENIENS DISCOVERY AND MOTIONS PRACTICE

## STIPULATION

This Stipulation is entered by and among Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, the "Parties"), through their respective undersigned counsel of record and appointed interim liaison counsel.

**WHEREAS**, the Parties have reached an agreement regarding the form of the fact sheet ("Forum Fact Sheet") to be filled out by each Plaintiff relating to forthcoming motions to stay or dismiss based on forum non conveniens and/or the absence of indispensable parties (the "Forum Motions"), a copy of which is attached hereto as **Exhibit A**;

**WHEREAS**, the Parties further have reached an agreement regarding the scope and nature of special interrogatories ("Forum Special Interrogatories") to be responded to by Defendant Uber Technologies, Inc. ("Uber") that Plaintiffs contend are related to forthcoming Forum Motions;

**WHEREAS**, the form of Forum Special Interrogatories propounded by Plaintiffs is attached hereto as **Exhibit B**;

**WHEREAS**, the Parties have agreed that Uber's responses to the Forum Special Interrogatories may come in the form of production of data reflecting the information sought in the Forum Special Interrogatories;

**WHEREAS**, interim liaison counsel for Plaintiffs represent and affirm that they have the authority, and have obtained the consent of Plaintiffs, to enter into this Stipulation on behalf of Plaintiffs and that the terms of this Stipulation shall be binding on Plaintiffs;

**NOW, THEREFORE, IT IS AGREED AND STIPULATED BY THE PARTIES THAT:**

1.  Each Plaintiff who has not previously provided a copy of the trip receipt for the ride out of which that Plaintiff's claims arise shall serve on counsel for Uber a copy of such trip receipt or furnish the information requested in Questions III.1.–7. of the Forum Fact Sheet by **July 6, 2022 (to be extended by up to 30 days as needed by Plaintiffs)**. If a Plaintiff has previously provided a copy of the trip receipt for the ride out of which that Plaintiff's claims arise, but the receipt does not contain all of the information requested in Questions III.1.–III.7.

of the Forum Fact Sheet, the Plaintiff shall furnish the remaining information requested in Questions III.1.–III.7. of the Forum Fact Sheet by **July 6, 2022 (to be extended by up to 30 days as needed by Plaintiffs)**. For any Plaintiff added to the coordinated proceeding after the date of entry of this Stipulated Order, such Plaintiff shall serve on counsel for Uber a copy of the trip receipt or furnish the information requested in Questions III.1–7 of the Forum Fact Sheet within 30 days of that Plaintiff's action being added to this coordinated proceeding.[1]

2.      Each Plaintiff shall e-serve his or her completed Forum Fact Sheet on counsel for Uber by **September 6, 2022**. For any Plaintiff added to the coordinated proceeding after the date of entry of this Stipulated Order, such Plaintiff shall e-serve his or her completed Forum Fact Sheet on counsel for Uber within 60 days of that Plaintiff's action being added to this coordinated proceeding.

3.      Counsel for Plaintiffs may complete the Forum Fact Sheet on behalf of each Plaintiff based on the information available to counsel. A Plaintiff's completed Forum Fact Sheet shall be binding on that Plaintiff for the purposes of the forthcoming Forum Motions. Uber reserves the right to raise challenges to the sufficiency of any of the Plaintiffs' responses to questions, except that Uber will not challenge the sufficiency of responses to Questions II.2., II.6., II.7., III.8., III.9., III.10.a,, IV.1.a., IV.3.c., IV.4., IV.5.a., IV.7., V.1., and V.2., which Plaintiffs have represented request information that generally will not be known by counsel at this time. However, the parties agree that Uber may request further information regarding all questions contained in the Forum Fact Sheet, including Questions II.2., II.6., II.7., III.8., III.9., III.10.a,, IV.1.a., IV.3.c., IV.4., IV.5.a., IV.7., V.1., and V.2., with respect to a subset of Plaintiffs to be subsequently determined and Uber reserves the right to challenge the sufficiency of these subsets of responses if necessary.

4.      Uber shall e-serve responses and/or production of data to the Forum Special Interrogatories in Exhibit B by **September 6, 2022 (to be extended by the number of days**

---

[1] Because this stipulated order governs case management of the coordinated proceeding, the parties request that the Court's order entering this stipulation (should it be approved) be binding on all Plaintiffs whose claims are hereafter coordinated into the coordinated proceeding.

STIPULATION RE: FORUM NON CONVENIENS DISCOVERY AND MOTIONS PRACTICE

required by Plaintiffs to provide the documents and information identified in **Paragraph 1**). Plaintiffs reserve their right to raise challenges to the adequacy of Uber's responses.

5.      The Parties jointly request that the schedule for the forthcoming Forum Motions be set as follows:

a)      Uber shall file and e-serve Forum Motions by **October 7, 2022**.

b)      Plaintiffs shall file and e-serve their oppositions to Uber's Forum Motions by **November 14, 2022**.

c)      Uber shall file and e-serve its replies in support of Forum Motions by **December 9, 2022**.

d)      Uber's Forum Motions shall be set for hearing between **December 16 and December 21, 2022**, or on a date thereafter that is convenient for the Court.

6.      Any of the above deadlines and dates may be extended by mutual agreement.

7.      Following resolution of the Forum Motions, which will cover only a number of particular cases (consistent with the Parties' case management statement submissions and the colloquy with the Court at the conferences on March 4, 2022 and April 21, 2022), the parties shall meet and confer to discuss a process stipulating to or contesting the applicability of the Court's ruling on the Forum Motions to the remainder of the cases within this coordinated proceeding.

**IT IS SO STIPULATED.**[2]

DATED: August 9, 2022

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON**

By: _____
RANDALL S. LUSKEY
ROBERT ATKINS

*Attorneys for Defendant*
UBER TECHNOLOGIES, INC.,
RASIER, LLC and RASIER-CA, LLC

---

[2] Counsel for the Parties are prepared to address any questions or concerns the Court may have regarding this Stipulation.

1  DATED:  August 9, 2022

2

3

4

5

6

7

8

9  DATED:  August 9, 2022

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LEVIN SIMES ABRAMS, LLP**


By: _____
    WILLIAM A. LEVIN
    LAUREL L. SIMES
    RACHEL ABRAMS
    SAMIRA J. BOKAIE

*Attorneys for Plaintiffs*


**WILLIAMS HART BOUNDAS EASTERBY, LLP**


By: _____
    WALT CUBBERLY
    BRIAN ABRAMSON

*Attorneys for Plaintiffs*

Case No. CJC-21-005188

STIPULATION RE: FORUM NON CONVENIENS DISCOVERY AND MOTIONS PRACTICE

## [PROPOSED] CASE MANAGEMENT ORDER

The Court, having reviewed the foregoing Stipulation and for good cause appearing:

**IT IS HEREBY ORDERED:**

1.      This Case Management Order shall be binding on all Plaintiffs whose claims are currently coordinated into this coordinated proceeding as well as Plaintiffs whose claims are hereafter coordinated into this coordinated proceeding.

2.      Each Plaintiff who has not previously provided a copy of the trip receipt for the ride out of which that Plaintiff's claims arise shall serve on counsel for Uber a copy of such trip receipt or furnish the information requested in Questions III.1.–III.7. of the Forum Fact Sheet appended to the Parties' stipulation as Exhibit A by **July 6, 2022 (to be extended by up to 30 days as needed by Plaintiffs)**. If a Plaintiff has previously provided a copy of the trip receipt for the ride out of which that Plaintiff's claims arise, but the receipt does not contain all of the information requested in Questions III.1.–III.7. of the Forum Fact Sheet, the Plaintiff shall furnish the remaining information requested in Questions III.1.–III.7. of the Forum Fact Sheet by **July 6, 2022 (to be extended by up to 30 days as needed by Plaintiffs)**. For any Plaintiff added to the coordinated proceeding after the date of entry of this Stipulated Order, such Plaintiff shall serve on counsel for Uber a copy of the trip receipt or furnish the information requested in Questions III.1.–III.7. of the Forum Fact Sheet within 30 days of that Plaintiff's action being added to this coordinated proceeding.

3.      Each Plaintiff shall e-serve his or her completed Forum Fact Sheet, consistent with the terms of the Parties' stipulation, on counsel for Uber by **September 6, 2022**. For any Plaintiff added to the coordinated proceeding after the date of entry of this Stipulated Order, such Plaintiff shall e-serve his or her completed Forum Fact Sheet on counsel for Uber within 60 days of that Plaintiff's action being added to this coordinated proceeding. Counsel for Plaintiffs may complete the Forum Fact Sheet on behalf of each Plaintiff based on the information available to counsel. A Plaintiff's completed Forum Fact Sheet shall be binding on that Plaintiff for the purposes of the forthcoming motions to stay or dismiss based on forum non conveniens and the absence of indispensable parties.

4.     Uber shall e-serve responses to the Forum Special Interrogatories, consistent with the terms of the Parties' stipulation and limitations, by **September 6, 2022 (to be extended by the number of days required by Plaintiffs to provide the documents and information identified in Paragraph 2)**.

5.     The schedule for the forthcoming motions to stay or dismiss based on forum non conveniens and/or the absence of indispensable parties ("Forum Motions") is set as follows:

a)     Uber shall file and e-serve its Forum Motions by **October 7, 2022**.

b)     Plaintiffs shall file and e-serve their oppositions to the Forum Motions by **November 14, 2022**.

c)     Uber shall file and e-serve its replies in support of the Forum Motions by **December 9, 2022**.

d)     The   Forum   Motions   are   hereby   set   for   hearing   on _December 20_   at _9:00_ a.m. in Department 304 of the above-referenced court.

6.     The parties may extend any of the above deadlines and dates by mutual agreement, _subject to Court approval._

7.     The Forum Motions will be filed only in particular cases (consistent with the Parties' case management statement submissions and the colloquy with the Court at the conferences on March 4, 2022 and April 21, 2022). Following resolution of the Forum Motions, the parties shall meet and confer to discuss a process for stipulating to or contesting the applicability of the Court's ruling on the Forum Motions to the remainder of the cases within this coordinated proceeding.

**IT IS SO ORDERED.**

DATED: _Aug. 10, 2022_

_Ethan P. Schl_

THE HONORABLE ETHAN P. SCHULMAN
JUDGE OF THE SUPERIOR COURT FOR
THE COUNTY OF SAN FRANCISCO

STIPULATION RE: FORUM NON CONVENIENS DISCOVERY AND MOTIONS PRACTICE

# Exhibit A

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO – UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| Coordination Proceeding<br><br>*In Re: Uber Rideshare Cases*<br><br>This Document Relates to:<br>ALL ACTIONS | JUDICIAL COUNCIL COORDINATION PROCEEDING CASE NO. 5188<br><br>CASE NO. CJC-21-005188<br>Assigned to Hon. Ethan P. Schulman, Dept. 304<br><br>**[PROPOSED] PLAINTIFF FORUM NON CONVENIENS FACT SHEET** |

## PLAINTIFF FACT SHEET

**CASE NUMBER:** _____

**PLAINTIFF NAME:** _____

***on behalf of (if applicable):*** _____

***relationship (if applicable):*** _____

**COMPLETED BY:** _____

### GENERAL INSTRUCTIONS

Pursuant to the Order Regarding Fact Sheet Implementation entered in the above-captioned litigation, a completed Plaintiff Fact Sheet ("PFS") shall be provided for each individual asserting legal claims in the above captioned lawsuit. Each question must be answered in full. If counsel does not have access to the information needed to answer a question, please explain that in the response to the question. **Please do not leave any questions unanswered or blank.**

Additional Space for Completeness

In filling out any section or sub-section of this form, additional sheets of paper should be used and submitted as necessary to provide complete and accurate information.

### DEFINITIONS

The following definitions shall apply to this PFS:

"You" and "Your" means the attorney or attorneys, or any agent thereof, responsible for completing the PFS.

"Plaintiff" refers to the Plaintiff, listed above, who is completing this fact sheet, as well as her/his/their agents, representatives, and all other natural persons or entities acting on her/his behalf; provided that if the Plaintiff has filed this lawsuit on behalf of another (*e.g.*, a decedent or a minor), then "Plaintiff" refers to the person on whose behalf this lawsuit was filed. In such a case, Counsel should identify at the top of this page the person on whose behalf the case was filed and the Plaintiff's relationship to that person (*e.g.*, guardian, administrator of estate, etc.).

"Driver" refers to the person who Plaintiff alleges, in the complaint filed in this action, committed sexual misconduct or assault against Plaintiff.

"Alleged Incident" refers to all events that Plaintiff alleges, in the complaint filed in this action, constituted sexual misconduct or assault against Plaintiff.

"Trip" refers to any ride that Plaintiff, or another person on Plaintiff's behalf or for Plaintiff's benefit, requested through the rider version of the Uber Application around the time of the Alleged Incident.

"Health Care Provider" means any facility or person involved in the evaluation, diagnosis, care, or treatment of Plaintiff, including without limitation any such hospital; clinic; medical center; physician's office; infirmary; medical or diagnostic laboratory; pharmacy; counselor; x-ray department; physical therapy department;, rehabilitation specialist; physician; psychiatrist; physical therapist; osteopath; homeopath; chiropractor; psychologist; occupational therapist; nurse; herbalist; emergency responder including EMT, paramedic, or firefighter; social worker; or other facility or person that provides medical, dietary, psychiatric, mental, emotional, or psychological evaluation, diagnosis, care, treatment, or advice.

"Communication" means any and all forms of oral, written, and electronic transmission and includes, without limitation, written contact by such means as letters, memoranda, computer communication, text messages, electronic mail, and social media postings as well as oral contact by such means as meetings and telephone conversation.

"Document" means any writing or record of any type, however produced and whatever the medium on which it was produced, and includes, without limitation; the original and non-identical copy (whether different from the original because of handwritten notes or underlining on the copy or otherwise) and all drafts of papers, letters, notes, notations, memoranda of conversations or meetings, calendars, diaries or journals, minutes of meetings, interoffice communications, electronic mail and other forms of electronic communication (including but not limited to postings on websites, blogs and/or social media), message slips, notebooks, agreements, reports, articles, books, tables, charts, schedules, memoranda, medical records, X-rays, explants, devices, advertisements, pictures, photographs, films, accounting books or records, billings, credit card records, electrical or magnetic recordings or tapes, or any other writings, recordings or pictures of any kind or description.

When this fact sheet calls for Documents and/or Communications, Plaintiff's response need not reference any privileged communications Plaintiff has had with Plaintiff's counsel.

-2-

## I.   CASE INFORMATION

1. Please state the following for the civil action that Plaintiff filed:

    a. Case caption:_____

    b. Pseudonym used in the Complaint:_____

    c. Name of principal attorney representing Plaintiff:

        1. Name:_____

        2. Law Firm:_____

## II.   PLAINTIFF'S PERSONAL INFORMATION

1. Name (Last, First, Middle):_____

2. Maiden name (if applicable) or other names used and dates Plaintiff used those names:

    _____

3. Current address: _____

4. City and state of residence at time of Alleged Incident: _____

5. Date of birth:_____

6. From two years prior to the Alleged Incident through the present, please identify the employers for whom you worked, as well as the city, state, and dates of employment for each employer. _____

    _____

    _____

7. From two years prior to the Alleged Incident through the present, please identify the educational institutions you attended, as well as the city, state, and dates of attendance for each institution. _____

    _____

    _____

## III.   INFORMATION AS TO THE ALLEGED INCIDENT

**Counsel will provide the ride receipt and phone number associated with the account to the extent it is available. To the extent the ride receipt and account information is not available, or to the extent the ride receipt does not contain the information contained in the following questions, counsel shall respond to the following questions:**

1. Was the Trip requested through the Uber Application under Plaintiff's account? Yes:_____ No:_____

    a. *If yes*, state the name, phone number and email address associated with Plaintiff's account: _____

    _____

    b. *If no*, state the name, current address, telephone number and email address of the person whose account was used to request the Trip: _____

-3-

2. Did Plaintiff intend the Trip to be a shared ride (*i.e.*, UberPool) in which Plaintiff requested and/or expected that there would be other passengers in addition to him/her/them?

   Yes:_____ No:_____

3. State the location (including, city, state, zip, and nearest street address or, if unknown, the closest intersection) where Plaintiff's Trip originated: _____
   _____

4. State the location (including, city, state, zip, and nearest street address or, if unknown, the closest intersection) of Plaintiff's requested destination:_____
   _____

5. Date of the Alleged Incident:_____

6. If You know the first or last name of the driver (or both), please state them:
   _____

7. State the time and location (including, city, state, zip, and nearest street address or, if unknown, the closest intersection) of the Alleged Incident:_____
   _____

8. **Note: If counsel provided the ride receipt, the ride receipt includes a map, which depicts the route taken by the driver, and the Alleged Incident occurred at some location on that depicted route, then counsel need not answer #7; otherwise, please answer #7.**

**Please answer the following questions regardless of whether You provide a ride receipt:**

9. If You know the Driver's state of residence at the time of the Alleged Incident to have been a state other than the state in which the Alleged Incident occurred, please identify that state: _____

10. If You know the Driver's current state of residence to be a state other than the state in which the Alleged Incident occurred, please identify that state:_____

11. Was Plaintiff the only passenger in the vehicle during the Trip? Yes:_____ No:_____

    a. *If no*, provide the name, address, and telephone number of other passenger(s), if known: _____
    _____

12. Does the Plaintiff allege that any of the following acts occurred during the Alleged Incident? Please select all that apply, and where relevant, select whether contact was made over or under the clothes:

    ___ Lewd and/or Inappropriate Comments or Questions or Gestures[1]

---

[1] This category is defined to include, but is not limited to, the following: asking specific, probing, and personal questions of the user; making uncomfortable comments on the user's appearance; making sexually suggestive gestures at the user; and asking for a kiss, displays of nudity, sex, or contact with a sexual body part.

-4-

___ Verbal Threat of Sexual Assault[2]

___ Masturbation and/or Indecent Exposure[3]

___ Touching of a Non-Sexual Body Part[4]

    ___ Over the Clothes[5]

    ___ Under the Clothes[6]

___ Touching of a Sexual Body Part Not Involving Penetration[7]

    ___ Over the Clothes

    ___ Under the Clothes

___ Kissing of a Non-Sexual Body Part[8]

___ Kissing of a Sexual Body Part[9]

___ Sexual Penetration Including Oral Copulation[10]

___ Kidnapping[11]

13. Briefly describe the nature of the alleged assault or sexual misconduct:

_____

_____

## IV.  WITNESSES

1. Did Plaintiff or someone on Plaintiff's behalf notify Uber of the Alleged Incident?

---

[2] This category is defined to include directing verbal explicit/direct threats of sexual violence at a user.

[3] This category is defined to include exposing genitalia and/or engaging in sexual acts in presence of a user.

[4] This category is defined to include, without explicit consent from the user, touching or forcing a touch on any non-sexual body part (e.g., hand, leg, thigh) of the user.

[5] This category is defined to include any touch over any piece of clothing on the user (e.g., pants, shirt, bra, underwear) as well as any touch on an area that in no way has clothing covering it (e.g., parts of the thigh when wearing shorts).

[6] This category is defined to include any touch under clothing which causes contact with the user's skin. It does not include a touch on an area that does not have clothing covering it in the first instance (e.g., parts of the thigh when wearing shorts).

[7] This category is defined to include, without explicit consent from the user, touching or forcing a touch on any sexual body part (i.e., breast, genitalia, mouth, buttocks) of the user. It does not include penetration.

[8] This category is defined to include, without consent from the user, any kiss, lick, or bite, or forced kiss, lick, or bite on any non-sexual body part (e.g., hand, leg, thigh) of the user.

[9] This category is defined to include, without consent from the user, any kiss, lick, or bite, or forced kiss, lick, or bite on either the breast or buttocks of the user. This also includes kissing on the lips and kissing while using tongue.

[10] This category is defined to include, without explicit consent from a user, penetration, no matter how slight, of the vagina or anus of a user with any body part or object. This includes penetration of the user's mouth with a sexual organ or sexual body part. This excludes kissing with tongue.

[11] This category is defined to include abduction, child abduction, false imprisonment, human trafficking, unlawful restraint, and unlawful/forcible detention.

Yes:_____ No:_____

    a. *If yes and someone notified Uber on Plaintiff's behalf*, state that person's name, current address, phone number and email address, if known: _____

2. Did Plaintiff or someone on Plaintiff's behalf notify law enforcement of the Alleged Incident? Yes:_____ No:_____

3. *If Your answer to the prior question is Yes*, please answer the following questions:

    a. What is the name and location (city, state) of the law enforcement agency Plaintiff notified?_____

    b. Identify the officer(s) with whom Plaintiff spoke regarding the incident: _____

    c. *If someone notified law enforcement on Plaintiff's behalf*, state that person's name, current address, phone number and email address, if known: _____ _____

4. To Your knowledge, were criminal charges filed? Yes:___ No:___ Unknown: ___

5. After the Alleged Incident, did Plaintiff undergo a medical exam to determine any physical injuries or the presence of any evidence (*e.g.*, a Sexual Assault Response Team "SART" exam, a Sexual Assault Forensic Exam ("SAFE"), or a Sexual Assault Nurse Exam ("SANE"))? Yes:_____ No:_____

    a. *If yes*, what is the name of the Health Care Provider that performed the exam, if known? Please provide both the name of the facility where the exam was performed and the name of the person(s) who performed the exam, if known._____

    b. *If yes*, in what city and state was the exam performed?_____

6. Was Plaintiff treated by emergency responders, including police officers, EMT, fire fighters, or paramedics, as a result of the Alleged Incident? Yes:_____ No:_____

7. If Plaintiff received any medical treatment or therapy as a result of the Alleged Incident, including treatment provided by emergency responders, please identify the people who provided medical treatment or therapy and their location (city and state) at the time Plaintiff received medical treatment or therapy. Please provide both the name of the facility where the medical treatment or therapy was provided and the name of the person(s) who provided the medical treatment or therapy, if known.

| Name of Health Care Provider | Location (City, State) |
|---|---|
|  |  |
|  |  |
|  |  |

## V.   CLAIMED INJURIES

1. Lost Earnings – Does Plaintiff claim that Plaintiff lost earnings or suffered impairment of earning capacity as a result of any physical, mental, or emotional injury Plaintiff alleges? Yes____ No____ Unknown at this time____

2. Medical Expenses – Does Plaintiff seek to recover medical expenses that Plaintiff incurred as a result of the Alleged Incident?  Yes___ No___ Unknown at this time___

## VI.   PERSONS LIKELY TO HAVE DISCOVERABLE INFORMATION

1. To the extent that anyone not already listed above is known by You to likely have discoverable information, please state the name and, if known, current location (city, state) of each individual—along with the general subject(s) of that information, excluding the Plaintiff, the Driver, and any past or present employees of Uber.  Please include, without limitation, all witnesses to the Alleged Incident and all persons with whom Plaintiff has spoken about the Alleged Incident, excluding Plaintiff's attorneys.  To the extent that You do not know the name of any of the witnesses, for such witnesses, please provide any identifying information that You are aware of (e.g., neighbor, coworker, bystander).

| Name, Location (City, State) | Subjects |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

# Exhibit B

William A. Levin (SBN 98592)
Laurel L. Simes (SBN 134637)
Rachel B. Abrams (SBN 209316)
Samira J. Bokaie (SBN 332782)
**LEVIN SIMES ABRAMS LLP**
1700 Montgomery Street, Suite 250
San Francisco, California 94111
Telephone: (415) 426-3000
Facsimile: (415) 426-3001
Email: wlevin@levinsimes.com
Email: llsimes@levinsimes.com
Email: rabrams@levinsimes.com
Email: sbokaie@levinsimes.com
*Attorneys for Plaintiffs*

John Eddie Williams (*pro hac vice*)
John Boundas (*pro hac vice*)
Walt Cubberly (325163)
Margret Lecocke (*pro hac vice*)
Brian Abramson (*pro hac vice*)
**WILLIAMS HART BOUNDAS EASTERBY, LLP**
8441 Gulf Freeway, Suite 600
Houston, Texas 77017-5051
Telephone: (703) 230-2200
Facsimile: (713) 643-6226
Email: jwilliams@whlaw.com
Email: jboundas@whlaw.com
Email: wcubberly@whlaw.com
Email: mlecocke@whlaw.com
Email: babramson@whlaw.com
*Attorneys for Plaintiffs*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE (Rule 3.550) | **JUDICIAL COUNCIL COORDINATED PROCEEDING NO. 5188** |
| | Case No. CJC-21-005188 |
| **IN RE: UBER SEXUAL ASSAULTS** | **PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER TECHNOLOGIES, INC., SET ONE** |
| THIS DOCUMENT RELATES TO: | |
| *ALL CASES* | *Assigned for All Purposes to the Honorable Ethan P. Schulman, Dept. 304* |

| | |
|---|---|
| **PROPOUNDING PARTY**: | Plaintiffs |
| **RESPONDING PARTY**: | Uber Technologies, Inc. |
| **SET NO.**: | ONE (1) |

The Court has ordered that the parties engage in forum related discovery.  These interrogatories propounded upon Uber are designed to discover the identity and state of residence of witnesses who may possess relevant evidence or whose testimony is likely to lead to the discovery of admissible evidence in the overall liability case against Uber.  Pertinent subject areas are defined in the definition section below.  Broadly speaking, these subject areas include those aspects of Uber's operations which are relevant to the causes of action asserted in the complaints that are part of JCCP 5188. Witnesses include current and former employees and, third party vendors, who have performed services relating to the pertinent subject areas.  Uber has taken the position that deposition testimony is unnecessary because it will provide the information which we are seeking in order to respond to any forum motions.  In that and unlike interrogatories propounded in the ordinary course of litigation, plaintiffs request that Uber provide complete responses and approach its responses against the backdrop of the broad purposes of the discovery.  Given the deadlines involved, Plaintiffs' expectations are that we will not be faced with objections or narrow readings of the interrogatories propounded.

## PERTINENT SUBJECT AREAS

### 1. EVALUATION OF PASSENGER SAFETY ISSUES AT INCEPTION

Uber was formed as a rideshare company in 2011.  At inception and immediately thereafter, its business model included strangers picking up strangers and transporting them.  We assume that there were transportation experts, consultants and people both inside and outside of Uber who evaluated, discussed and wrote about the inherent safety risks to both drivers and passengers arising from the misconduct of either. Presumably, the subject of driver background checks, finger printing, driver onboarded processes and procedure, standards for driver onboarding, driver training and education as well as safety features designed to minimize the risk to passengers including but not limited to cameras,

1  GPS tacking of rides, zero tolerance policies, handling complaints about problem drivers, the design of

2  the Uber app.

3  ///

4  ///

5     2.  **DRIVER BACKGROUND CHECKS, FINGERPRINTING, ONBOARDING PROCESSES AND**

6        **PROCEDURES, STANDARDS FOR ONBOARDING 2011- PRESENT**

7     This subject area includes identification of the people and entities who were involved in the creation,

8  implementation, and execution of driver screening, standards for drivers, and the driver onboarding

9  process overtime. This includes individuals and entities that were involved in the initial processes

10  applied at the time Uber began in 2011 and any changes that were discussed, made, and/or implemented

   at Uber.

11

12     3.  **HANDLING OF COMPLAINTS ABOUT DRIVER MISCONDUCT, DRIVER DISCIPLINE**

13        **(TEMPORARY OR PERMANENT DEACTIVATIONS, WARNINGS, RE-TRAINING OR RE-**

14        **EDUCATION) DRIVER RATING SYSTEM AND THE MECHANISMS AND PROCEDURES**

15        **FOR ADDRESSING DRIVER MISCONDUCT REPORTED TO UBER 2011-PRESENT**

16     This subject includes the handling of complaints and reports of driver misconduct through all of the

17  feedback mechanisms that Uber put in place whether through the app, help lines, written communication

18  or any other method.  This subject includes the identification of the people involved in this subject area

   whether at the level of policy formation, design or implementation.

19

20     4.  **APP DESIGN, APP CHANGES OVER TIME, SAFETY FEATURES CONSIDERED BUT NOT**

21        **ADOPTED, SAFETY FEATURES ADOPTED**

22     This subject concerns the extent to which the App itself was designed or changed over time to

23  include safety features and mechanisms to protect passengers.  It includes consideration of features

24  which were not adopted.  Examples include but are no means limited to GPS tracking of rides that go off

25

PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER
TECHNOLOGIES, INC., SET ONE

course, surveillance through the App, 911 and emergency features, safety flags and safety feedback features within the App, warnings and instructions, safety guidelines and protocols communicated within the App or to passengers in the Terms of Service.

This subject includes witnesses at the design and engineering level, decision-making and policy levels, implementation level and participants in the discussions about changes that should be made as time went on. It includes outside consultants and well as current and former employees.

///

5. **WARNINGS TO PASSENGERS AND DRIVERS 2011-PRESENT**

This subject includes communications to drivers and passengers concerning safety problems and risks and changes to such communications over time.

6. **RESPONSE TO SEXUAL ASSAULT AND SEXUAL MISCONDUCT PROBLEM 2011-PRESENT**

This subject includes how and when Uber became aware of the problem, actions it considered taking in response, actions it actually took in response, changes over time, tracking of the effectiveness of its response. It includes decision-makers, executives, teams and team members and consultants who were involved in discussions, problem solving efforts, ideas for addressing the problem, evaluation of the scope of the problem, data and analytics and any efforts made to study the problem in the transportation industry generally.

7. **COMPILATION OF THE DATA AND PREPARATION OF THE COMMUNITY SAFETY REPORT**

This subject area includes the first discussions of the idea of publicly disclosing the scope of the sexual assault problem, the method of compiling the data, sources of the data, people and outside consultants involved, purpose of the disclosure, reasons why it wasn't done earlier, status of the scope of the problem in terms of numbers and data subsequent to the release of the report.

4

8.  **MARKETING THE SAFETY OF THE PLATFORM SAFE RIDE HOME, MARKETING TO WOMEN AND TO PEOPLE WHO HAVE BEEN DRINKING 2011-PRESENT**

This subject area includes all of the people who have been involved with Uber's marketing to passengers, women passengers, passengers who have been drinking, marketing re the safety of Uber vis a vis other rideshare companies or forms of transportation.

9.  **DRIVER DISCIPLINE**

This subject area includes the internal procedures, protocols, and mechanisms whereby drivers who engage in sexual or other unsafe behavior are identified and subject to consequences ranging from warnings, suspension, temporary or permanent deactivation and any other corrective steps, re-training or re-education.

10.  **LOBBYING EFFORTS TO RESIST SAFETY REGULATIONS, TNC REGULATIONS AND COMMON CARRIER STATUS**

This subject area includes Ubers internal discussions, decision-making and interactions with governmental agencies, including politicians on subjects having to do with fingerprinting, cameras, classification as a common carrier or transportation company.

**DEFINITIONS**

Throughout the following words and terms shall bear the meanings as identified below.  For any undefined term, the standard, dictionary definition of the term applies.

1.  **"DOCUMENTS"** shall mean "writing" as defined in California Evidence Code 250, which includes without limitation all handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds or symbols, or combinations thereof.  This term shall also include e-mail transmissions and writings stored on all computer-related medium, including hard disk drives, floppy disk

drives, CD-ROMs and DVDs, and will be referred to below as "documents."  This term shall include all papers, books, letters, correspondence, telegrams, cables, telex messages, memoranda, typed or handwritten notes, notations, work papers, transcripts, minutes, audio, visual or audio-visual recordings, reports and records of telephone or other conversations, or of interviews, conferences or other meetings, maps, charts, plans, specifications, diagrams, photographs, affidavits, statements, statistical records, lists, tabulations, summaries, sound recordings, computer print-outs, data processing input and output, microfilms, microfiche, all other records kept by computer, or on computer programs, electronic, photographic, or mechanical means, and items similar to the foregoing and/or items from which information can be obtained, translated if necessary, through the use of detection devices into reasonably usable form. If any tape, disc, card, wire, or other electronic or mechanical recording or transcript or any computer program is produced, you shall also produce such documents as are necessary for decoding, playback, printing out and/or interpretation thereof, and any other documents which are necessary to convert such information into a usable and useful format.

2.      The term **"DOCUMENT RETENTION POLICY"** shall refer to all guidelines, procedures and policies YOU employ for maintaining and/or destroying DOCUMENTS.

3.      The term **"YOU," "YOUR,"** and **"UBER"** shall mean UBER TECHNOLOGIES, INC. and any of its agents, employees, contractors, officers, shareholders, directors, owners, attorneys, representatives and all others acting for it and/or on its behalf.

4.      **"IDENTIFY"** when used in reference to a person means to state the full name, home address, home phone number, employer, job title, work address and work phone number of that person. If the person identified is not a natural person (e.g., a corporation), give its full name, address, nature of organization, principal place of business activity, principal business activity and state under which it was organized

5.      **"IDENTIFY"** when used in reference to a document or report means to state as to each document or report the date, the general subject matter, the type of document (e.g., letter, memorandum, receipt, invoice, schedule, contract, bill of sale, etc.) the name and address of the author, the name and address of the addressee, the name and location of the files where the original and each copy is normally or presently kept, and the name and address of the present custodian thereof.

6.      **"RELATING TO"** means concerned with, showing or indicating knowledge of, mentioning, or in any manner referring to, either directly or indirectly.

7.      **"PERSONS"** means an individual, corporation, partnership, trust, associations, company, organization, or any form of a business or commercial entity.

8.      **"DRIVER"** means anyone utilizing the Uber application to be connected with passengers for rides.

**"IDENTIFY"** with respect to a PERSON or ENTITY, means to state the name, last known address and last known telephone number of the PERSON or ENTITY.

10.     **"PASSENGER"** means anyone taking an Uber ride coordinated through the Uber application, regardless of whether the passenger was the individual who ordered the ride.

11.     **"UBER APPLICATION"** or any derivative thereof means the Uber application used by drivers and passengers to order and provide Uber rides.

## SPECIAL INTERROGATORIES

**SPECIAL INTERROGATORY NO. 1:**

With respect to pertinent subject area (1), please identify the witnesses, whether current employees, former employees or third-party witnesses who were involved in the pertinent subject area and for each person provide their current state of residence.

**SPECIAL INTERROGATORY NO. 2:**

With respect to pertinent subject area (1), identify the name of the team or teams (departments)

1  within Uber who had responsibility for the subject area and the location of the office, or offices, where

2  the people on the team, teams, department or departments.

3  **SPECIAL INTERROGATORY NO. 3:**

4  With respect to pertinent subject area (2), please identify the witnesses, whether current

5  employees, former employees or third-party witnesses who were involved in the pertinent subject area

6  and for each person provide their current state of residence.

7  **SPECIAL INTERROGATORY NO. 4:**

8  With respect to pertinent subject area (2), identify the name of the team or teams (departments)

9  within Uber who had responsibility for the subject area and the location of the office, or offices, where

10  the people on the team, teams, department or departments.

11  **SPECIAL INTERROGATORY NO. 5 :**

12  With respect to pertinent subject area (3), please identify the witnesses, whether current

13  employees, former employees or third-party witnesses who were involved in the pertinent subject area

and for each person provide their current state of residence.

14  **SPECIAL INTERROGATORY NO. 6:**

15  With respect to pertinent subject area (3), identify the name of the team or teams (departments)

16  within Uber who had responsibility for the subject area and the location of the office, or offices, where

17  the people on the team, teams, department or departments.

18  **SPECIAL INTERROGATORY NO. 7:**

19  With respect to pertinent subject area (4), please identify the witnesses, whether current

20  employees, former employees or third-party witnesses who were involved in the pertinent subject area

21  and for each person provide their current state of residence.

22  **SPECIAL INTERROGATORY NO. 8:**

23  With respect to pertinent subject area (4), identify the name of the team or teams (departments)

24  within Uber who had responsibility for the subject area and the location of the office, or offices, where

25  the people on the team, teams, department or departments.

8

**SPECIAL INTERROGATORY NO. 9:**

With respect to pertinent subject area (5), please identify the witnesses, whether current employees, former employees or third-party witnesses who were involved in the pertinent subject area and for each person provide their current state of residence.

**SPECIAL INTERROGATORY NO. 10:**

With respect to pertinent subject area (5), identify the name of the team or teams (departments) within Uber who had responsibility for the subject area and the location of the office, or offices, where the people on the team, teams, department or departments.

**SPECIAL INTERROGATORY NO. 11:**

With respect to pertinent subject area (6), please identify the witnesses, whether current employees, former employees or third-party witnesses who were involved in the pertinent subject area and for each person provide their current state of residence.

**SPECIAL INTERROGATORY NO. 12:**

With respect to pertinent subject area (6), identify the name of the team or teams (departments) within Uber who had responsibility for the subject area and the location of the office, or offices, where the people on the team, teams, department or departments.

**SPECIAL INTERROGATORY NO. 13:**

With respect to pertinent subject area (7), please identify the witnesses, whether current employees, former employees or third-party witnesses who were involved in the pertinent subject area and for each person provide their current state of residence.

**SPECIAL INTERROGATORY NO. 14:**

With respect to pertinent subject area (7), identify the name of the team or teams (departments) within Uber who had responsibility for the subject area and the location of the office, or offices, where the people on the team, teams, department or departments.

**SPECIAL INTERROGATORY NO. 15:**

With respect to pertinent subject area (8), please identify the witnesses, whether current

9

1  employees, former employees or third-party witnesses who were involved in the pertinent subject area

2  and for each person provide their current state of residence.

3  **SPECIAL INTERROGATORY NO. 16:**

4      With respect to pertinent subject area (8), identify the name of the team or teams (departments)

5  within Uber who had responsibility for the subject area and the location of the office, or offices, where

6  the people on the team, teams, department or departments.

7  **SPECIAL INTERROGATORY NO. 17:**

8      With respect to pertinent subject area (9), please identify the witnesses, whether current

9  employees, former employees or third-party witnesses who were involved in the pertinent subject area

10  and for each person provide their current state of residence.

11  **SPECIAL INTERROGATORY NO. 18:**

12      With respect to pertinent subject area (9), identify the name of the team or teams (departments)

13  within Uber who had responsibility for the subject area and the location of the office, or offices, where

the people on the team, teams, department or departments.

14  **SPECIAL INTERROGATORY NO. 19:**

15      With respect to pertinent subject area (10), please identify the witnesses, whether current

16  employees, former employees or third-party witnesses who were involved in the pertinent subject area

17  and for each person provide their current state of residence.

18  **SPECIAL INTERROGATORY NO. 20:**

19      With respect to pertinent subject area (10), identify the name of the team or teams (departments)

20  within Uber who had responsibility for the subject area and the location of the office, or offices, where

21  the people on the team, teams, department or departments.

22  **SPECIAL INTERROGATORY NO. 21:**

23      Please IDENTIFY whether current or former employees, who are or were involved in the

24  SCREENING OF UBER DRIVERS for the years 2011 to present.

25  ///

PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER TECHNOLOGIES, INC., SET ONE

1    **SPECIAL INTERROGATORY NO. 22:**

2        Please IDENTIFY PERSONS, whether current or former employees, who were involved in the

3    development of UBER's DRIVER screening process for the years 2011 to present.

4    **SPECIAL INTERROGATORY NO. 23:**

5        Please IDENTIFY of all PERSONS, whether current or former employees, who are or were

6    involved in DRIVER training for the years 2011 to present.

7    **SPECIAL INTERROGATORY NO. 24:**

8        Please IDENTIFY of all PERSONS, whether current or former employees, who are or were

9    involved in fielding, reviewing, and responding to PASSENGER complaints of DRIVER misconduct for

10   the years 2011 to present.

11   **SPECIAL INTERROGATORY NO. 25:**

12       Please IDENTIFY all PERSONS, whether current or former employees, who are or were

13   in the DRIVER discipline, including but not limited to the decision-making process of removing DRIVERS from the UBER platform after receipt of complaints of DRIVER misconduct for

14   the years 2011 to present.

15   **SPECIAL INTERROGATORY NO. 26:**

16       Please IDENTIFY of all PERSONS, whether current or former employees, who are or were

17   involved in drafting UBER's community guidelines for the years 2011 to present.

18   **SPECIAL INTERROGATORY NO. 27:**

19       Please IDENTIFY all PERSONS, whether current or former employees, who are or were

20   involved in conceptualizing Uber' marketing campaigns, including but not limited to Uber's marketing

21   efforts toward female PASSENGERS, for the years 2011 to present.

22   **SPECIAL INTERROGATORY NO. 28:**

23       Please IDENTIFY all PERSONS, whether current or former employees, who are or were

24   involved in designing, Uber' marketing campaigns, including but not limited to Uber's marketing efforts

25   toward female PASSENGERS, for the years 2011 to present.

11

**SPECIAL INTERROGATORY NO. 29:**

For the years 2011 to present, please IDENTIFY all PERSONS, whether current or former employees involved in discussing or making changes to UBER's marketing with respect to advertisements containing young females drinking.

**SPECIAL INTERROGATORY NO. 30:**

Please IDENTIFY all PERSONS, whether current or former employees, who are or were involved in researching possible safety features, regardless of if those features were ultimately implemented, for the UBER APPLICATION from the for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 31:**

Please IDENTIFY all PERSONS, whether current or former employees, who are or were involved in the decision-making process for the safety features that would be implemented on the UBER APPLICATION from the for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 32:**

Please IDENTIFY any third-party company, law enforcement agency, or advocacy organization with whom UBER consulted regarding PASSENGER safety for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 33:**

Please IDENTIFY all PERSONS, whether current or former employees, who are or were, UBER agents trained to handle sensitive report from PASSENGERS for the years 2011 to present.

**SPECIAL INTERROGATORY NO. 34:**

For the years 2017 to 2021, please provide the percentage of trips completed in California in relation to trips completed in the United States.

**SPECIAL INTERROGATORY NO. 35:**

For the years 2017 to 2021, please provide the percentage of complaints received by Uber concerning alleged sexual assaults committed in California in relation to complaints received by Uber concerning alleged sexual assaults committed in the United States.

**SPECIAL INTERROGATORY NO. 36:**

Case No. CJC-21-005188 | PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER TECHNOLOGIES, INC., SET ONE

1    Please IDENTIFY all PERSONS, whether current or former employees, involved in UBER's

2  "Don't Stand By" initiative.

3  **SPECIAL INTERROGATORY NO. 37:**

4    For the years 2011 to present, please IDENTIFY the person or PERSONS involved, whether

5  current or former employees, tasked with addressing reports of sexual assault by DRIVERS on

6  PASSENGERS.

7  ///

8  **SPECIAL INTERROGATORY NO. 38:**

9    For the years 2011 to present, please IDENTIFY all of Uber's C-LEVEL EXECUTIVES (for the

10  purposes of these interrogatories, "C-LEVEL EXECUTIVES" shall mean PERSONS with senior

11  managerial responsibility in a business organization including but not limited to Chief executive officer

12  (CEO), chief financial officer (CFO), chief operating officer (COO), and chief information officer

13  **SPECIAL INTERROGATORY NO. 39:**

14    Please IDENTIFY all PERSONS, whether current or former employees, who were involved in

15  UBER's Safety Report released in 2019.

16  **SPECIAL INTERROGATORY NO. 40:**

17    Please IDENTIFY all PERSONS, whether current or former employees, who are or were

18  involved in mandatory reporting of PASSENGER safety to the California Public Utilities Commission

19  ("CPUC") from the years 2011 to the present.

20  **SPECIAL INTERROGATORY NO. 41:**

21    For the years 2011 to present, please describe the business conducted at UBER's corporate office

22  in San Francisco, California.

23  **SPECIAL INTERROGATORY NO. 42:**

24    For the years 2011 to present, please provide the number of employees working out of UBER's

25  corporate office in San Francisco, California.

13

**SPECIAL INTERROGATORY NO. 43:**

For the years 2011 to present, please provide the percentage of employee turnover in UBER's corporate office in San Francisco, California.

**SPECIAL INTERROGATORY NO. 44:**

For the years 2011 to present, please describe the business conducted at UBER's corporate office in Palo Alto, California.

**SPECIAL INTERROGATORY NO. 45:**

For the years 2011 to present, please provide the number of employees working out of UBER's corporate office in Palo Alto, California.

///

**SPECIAL INTERROGATORY NO. 46:**

For the years 2011 to present, please provide the percentage employee turnover at UBER's corporate office in Palo Alto, California.

**SPECIAL INTERROGATORY NO. 47:**

For the years 2011 to present, please describe the business conducted at UBER's corporate office in New York City, New York.

**SPECIAL INTERROGATORY NO. 48:**

For the years 2011 to present, please provide the number of employees working out of UBER's corporate office in New York City, New York.

**SPECIAL INTERROGATORY NO. 49:**

For the years 2011 to present, please provide the percentage employee turnover at UBER's corporate office in New York City, New York.

**SPECIAL INTERROGATORY NO. 50:**

For the years 2011 to present, please describe the business conducted UBER's corporate office in Dallas, Texas.

**SPECIAL INTERROGATORY NO. 51:**

1    For the years 2011 to present, please provide the number of employees working out of UBER's

2    corporate office in Dallas, Texas.

3    **SPECIAL INTERROGATORY NO. 52:**

4    For the years 2011 to present, please provide the percentage employee turnover at UBER's

5    corporate office in Dallas, Texas.

6    **SPECIAL INTERROGATORY NO. 53:**

7    For the years 2011 to present, please describe the business conducted at UBER's corporate office

8    in Denver, Colorado.

9    **SPECIAL INTERROGATORY NO. 54:**

10    For the years 2011 to present, please provide the number of employees working out of UBER's

11    corporate office in Denver, Colorado.

12    **SPECIAL INTERROGATORY NO. 55:**

13    For the years 2011 to present, please provide the percentage employee turnover at UBER's corporate office in Denver, Colorado.

14    **SPECIAL INTERROGATORY NO. 56:**

15    For the years 2011 to present, please describe the business conducted at UBER's corporate office

16    in Seattle, Washington.

17    **SPECIAL INTERROGATORY NO. 57:**

18    For the years 2011 to present, please provide the number of employees working out of UBER's

19    corporate office in Seattle, Washington.

20    **SPECIAL INTERROGATORY NO. 58:**

21    For the years 2011 to present, please provide percentage employee turnover at UBER's corporate

22    office in Seattle, Washington.

23    **SPECIAL INTERROGATORY NO. 59:**

24    For the years 2011 to present, please describe the business conducted at UBER's corporate office

25    in Chicago, Illinois.

1  **SPECIAL INTERROGATORY NO. 60:**

2      For the years 2011 to present, please provide the number of employees working out of UBER's

3  corporate office in Chicago, Illinois.

4  **SPECIAL INTERROGATORY NO. 61:**

5      For the years 2011 to present, please provide the percentage employee turnover at UBER's

6  corporate office in Chicago, Illinois.

7  **SPECIAL INTERROGATORY NO. 62:**

8      For all cases listed in response to Special Interrogatory Number 1, please IDENTIFY the

   DRIVER involved in the disputed assault.

9  Dated: ___, 2022                          **LEVIN SIMES ABRAMS LLP**

10

11

12

13                                           _____
                                             William A. Levin
                                             Laurel L. Simes
                                             Rachel B. Abrams
14                                           Samira J. Bokaie
                                             *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

Case No. CJC-21-005188                       PLAINTIFFS' SPECIAL INTERROGATORIES TO DEFENDANT UBER
                                             TECHNOLOGIES, INC., SET ONE