[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** <br><br> This Document Relates to: <br><br> ALL CASES | No. 3:23-md-03084-CRB <br><br> **RESPONSE TO DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S INITIAL CONFERENCE SUBMISSION** <br><br> Judge: Honorable Charles R. Breyer <br> Courtroom: 6 – 17th Floor <br><br> Date: November 3, 2023 <br> Time: 11:00 a.m. |

The undersigned Plaintiffs (representing 85% of the law firms with cases currently in this MDL) respectfully submit Plaintiffs' Response to Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") Initial Conference Submission.

I.   **INTRODUCTION**

The Court requested a submission regarding "the status of all litigation pending in this MDL matter," as well as "the steps Defendants have taken to preserve relevant evidence." Doc. 2. Defendants' submission goes well beyond the Court's request and is laden with unilateral case management proposals that will lead to delay, expense, and needless complexity. And on the one area where the Court did request additional detail—evidence preservation—Defendants' submission is woefully insufficient.

1    Plaintiffs provide this responsive submission to articulate a basic plan for moving this
2    MDL forward quickly and efficiently.

3    **II.    BACKGROUND**

4    Uber would make this case about "the intentional torts and criminal acts allegedly
5    committed by independent drivers." Doc. 38 at 2. It is not. This case is about Uber. Uber
6    promises a safe ride. Despite knowing for years of widespread sexual assaults by its drivers
7    during Uber rides, Uber did nothing to mitigate the risk or warn its riders that sexual assault has
8    occurred and continues to occur with shocking frequency. Instead, Uber allows drivers to drive
9    despite reports of sexual misconduct, refuses to install cameras which are known to decrease
10   assaults, and refuses to conduct sufficient background checks to ensure the company lives up to
11   its safety promise and obligation. Indeed, Uber did the opposite: it promised a "Safe Rides Fee"
12   that lulls users into a false sense of security.

13   This MDL was created (over Uber's objection) because of what unites these cases, not
14   what distinguishes them. Such common threads include "Uber's knowledge about the prevalence
15   of sexual assault by Uber drivers, and whether Uber failed to conduct adequate background
16   checks of its drivers, train drivers regarding sexual assault and harassment, implement adequate
17   safety measures to protect passengers from sexual assault, and adequately respond to complaints
18   about drivers." *In re Uber Tech., Inc., Passenger Sexual Assault Litig.*, MDL No. 3084, 2023 WL
19   6456588, at *1 (J.P.M.L Oct. 4, 2023).

20   Uber now reports thousands of sexual assaults by its drivers every year. While these
21   reports do not provide a complete picture of the actual number of incidents for many reasons, the
22   reporting is indicative of the number of potential cases that will be consolidated in this MDL.

23   **III.   STATUS OF THE LITIGATION**

24        **A.    Status of Federal Actions**

25   Much of Uber's submission reiterates arguments made to and rejected by the JPML.
26   Uber's attempt to re-argue consolidation should be disregarded.

27        **B.    The California State Court Proceedings (JCCP)**

28   Uber details JCCP rulings on the Master Complaint, including demurrers and motions to

1  strike. These have no bearing on the MDL. As this Court is aware, the JCCP presiding judge,

2  Judge Schulman, granted Uber's motion to dismiss out-of-state plaintiffs based on forum *non*

3  *conveniens*. Several plaintiffs appealed. Because JCCP leadership included all JCCP filed cases

4  subject to the dismissal order in the appeal, all of those cases are currently stayed pending the

5  appellate court's ruling. In addition, many plaintiffs have (and others may as well) dismissed their

6  case on appeal and re-filed in federal court, and have been (or will shortly be) included in this

7  MDL.

8        The upshot is that these Plaintiffs are in a federal forum and, under the federal rules,

9  require efficient and just resolution of their cases. Uber says that it needs a better understanding

10 of which plaintiffs may refile in the MDL before establishing any MDL case management plan

11 for this MDL, which "may not be possible until following the ruling on the FNC Appeal." Doc.

12 38 at 6. This is unreasonable and unprecedented. Holding up a federal consolidated action

13 because of a lengthy appeal in state court where the plaintiffs no longer have active cases is

14 unduly prejudicial and inconsistent with both Rule 1 and the MDL statute.

15 **IV.   THE COURT SHOULD ADOPT CASE MANAGEMENT IDEAS DESIGNED TO
        PROMOTE THE JUST, SPEEDY, AND INEXPENSIVE DETERMINATION OF**
16 **COMMON FACT QUESTIONS.**

17       The purpose of this MDL is to "streamline overlapping discovery and pretrial proceedings

18 arising from nearly identical allegations regarding Uber's corporate policies and practices as to

19 alleged passenger sexual assaults." *Id.* at *2. Many of Uber's proposals, which reflect its

20 arguments against the formation of this MDL in the first place, are inconsistent with the MDL's

21 essential purpose. Plaintiffs provide case management suggestions below that will advance these

22 cases consistent with both Rule 1 and the MDL statute.

23       **A.   The Court should require early, easy discovery to happen immediately.**

24       As a starting point, there is no cause to delay common discovery. Uber does not offer any

25 legal theories that, if accepted, would plausibly result in the elimination (or even substantial

26 narrowing) of the pending cases. Discovery should begin promptly and immediately regarding the

27 following "off the shelf" categories of documents:

28         - Defendants should re-produce any discovery produced in any other rideshare sexual assault case, save for private identifying information.

1
2
- Defendants should re-produce any documents produced to any legislative or regulatory entity that has investigated Uber with respect to sexual assault.

3 In addition, once a protective order is entered in this MDL, Defendants should stipulate
4 that any plaintiff's attorney who has conducted discovery in a case against Uber related to sexual
5 assault may share discovery materials produced in those cases without violating any protective
6 orders entered in those individual matters.

7
8
**B.    The Court should bypass master and short-form complaints and move directly to bellwether complaints for briefing of cross-cutting legal issues.**

9 Defendants' submission referenced the long-form/short-form complaint processes utilized
10 in the JCCP. While that procedure can be useful in certain MDLs, it also causes delay.
11 Consequently, it should be used only where the case management benefits outweigh those
12 inevitable delays. In this case, there are no global legal issues (like federal preemption), resolution
13 of which would necessarily be advanced by a common pleading.

14 There are, of course, some cross-cutting legal issues, resolution of which will advance the
15 litigation. Those issues may include:

16
17
- Applicable law where misconduct occurred in California but injury occurred in another state

18
- Whether vicarious liability exists under scope-of-employment, common carrier, agency, non-delegable duties, or other theories.

19
- Scope of duty under different negligence theories.

20
- Availability of punitive damages.

21 There are two options to tee up briefing of those issues. First, the Court may identify trial
22 bellwethers (discussed further below) and then receive Rule 12 briefing in those cases. Second, to
23 move faster, the Court may identify bellwethers solely for the purpose of Rule 12 briefing and
24 hear argument on those complaints while the parties work to develop a broader bellwether pool
25 for trial. *See, e.g.*, *In re JUUL Labs, Inc., Mkt., Sales Prac., & Prods. Liab. Litig.*, 497 F. Supp.
26 3d 552, 573 (N.D. Cal. 2020) (resolving threshold motions for seven exemplar complaints). In
27 either path, Plaintiffs suggest that the Court (1) instruct the parties to meet and confer to identify
28 cases for which briefing would be most helpful in resolving common legal issues and (2) grant

any selected cases time to amend their complaints before motions to dismiss are due.

### C. The Court should initiate the trial bellwether process promptly.

Defendants suggest that "it is too soon to determine the scope of this MDL," Doc. 38 at 3, and that any bellwether process should be delayed until, at least, the pending appeal from the JCCP forum *non conveniens* order is resolved. There is no reason to wait.[1] It is the natural course of MDLs that the case population evolves as time goes on and more cases are filed. If that inevitable fact were sufficient to delay the bellwether process, the tried and proven way of advancing MDL resolution, then no MDL would select early bellwethers. In reality, while parties and the Court seek representative bellwethers, courts routinely recognize that the perfect cannot be the enemy of the good. *See, e.g.*, Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litig.*, 82 Tulane L. Rev. 2323, 2344-45 (2008) ("Rather than attempt to delineate every identifiable variable, the transferee court and the attorneys should focus on those variables that can be easily identified, are substantively important, and provide clear lines of demarcation.").

In addition, courts regularly order multiple rounds of bellwether selection to account for characteristics lacking from the initial pool. If resolution of the pending JCCP appeal results in changes to the "size and characteristics" of the plaintiff population, then the Court can order an additional round of bellwether selections.

#### 1. The Court should require the parties to negotiate reasonable, productive fact sheets.

Part of determining the scope of an MDL, and in selecting effective bellwethers, is learning basic information about the cases pending before the Court. But the Court should reject Defendants' suggestion to preempt that process with a threshold requirement that "at the outset" Plaintiffs produce "a *bona fide* verified receipt" or other evidence of their Uber ride. Doc. 38 at 7. Uber's proposal is untenable and lacks any foundation in the Federal Rules of Civil Procedure. Instead, as is common in MDLs, the parties should work together to design a plaintiff profile form (and subsequent fact sheet) that will help select bellwethers. This profile form would contain information from *both* Plaintiffs and Defendants (who are likely to have as much, or more,

---

[1] Uber also tried, unsuccessfully, to stay the JCCP proceedings on the same grounds.

1  information about relevant rides than Plaintiffs do).

### 2. The Court should reject Uber's request for a "cutoff."

While hinting at indefinite delay of basic case management functions, Defendants also seek to impose an arbitrary "cutoff for new filings." Doc. 38 at 3. Setting aside the obvious problems with statutes of limitations, there is no basis in the federal rules or other law to cut off a sexually-assaulted survivor's right to seek justice for the injuries she/he sustained by an Uber driver.

Moreover, how the Court would accomplish this is unclear: absent a JPML order otherwise, new cases will continue to be transferred to this Court for consolidated pretrial proceedings. In any event, discussion of a "cutoff" is premature at best. The flow of future cases is often in an MDL defendant's control: practice changes may preclude future cases as a matter of fact (by preventing misconduct) or of law (by removing the factual predicates for liability). Here, Plaintiffs may force the issue by pursuing and obtaining injunctive relief.

### D. The Court should set fast deadlines for core case management orders.

The Court should set out a quick and early schedule for the proposal and entering of core CMOs, including:

- Protective Order
- Direct Filing Order
- Timekeeping Order
- ESI Order

Undersigned counsel have convened meetings and begun drafting proposed initial orders. Representatives have initiated discussions with Defense counsel.

### V. THIS DISTRICT IS AN AVAILABLE AND APPROPRIATE FORUM FOR TRIAL, NOTWITHSTANDING ANY HYPOTHETICAL CLAIMS AGAINST THIRD-PARTY DRIVERS.

Defendants present their view that "these actions should be tried in the judicial districts in which the underlying incidents were alleged to have occurred." Doc. 38 at 4. Even putting aside the great weight a plaintiff's choice of forum earns in the § 1404(a) analysis, Defendants ignore the common sense reasons *why* Plaintiffs would elect to file in this district. Most obviously, Uber

1   is here. Not only are many documents and people relevant to the common allegations in this
2   district (saving all parties time and money), but also this is the only proper forum for subpoenaing
3   Uber witnesses to testify at trial. Transfer would all but guarantee that any bellwether trial would
4   be bereft of company witnesses (perhaps the point of Defendants' position). In addition, trial
5   dates are easier to get and keep in an MDL court prioritizing the litigation rather than a distant
6   court with competing scheduling demands.

7         The potential for Defendants to file claims against third-party drivers does not change the
8   calculus. The availability of a third-party tortfeasor does not require transfer. *See, e.g.*, *Cisco Sys.,*
9   *Inc. v. Dexon Computer, Inc.*, No. 20-4926, 2023 WL 3032061, at *4 (N.D. Cal. Apr. 21, 2023)
10  (Breyer, J.) (granting third-party defendant's motion to dismiss for lack of personal jurisdiction
11  and denying primary defendant's motion to transfer). If Uber is unable to sue third-party drivers
12  in this District, nothing prevents it from bringing separate actions where those drivers are subject
13  to process, or to pursue, to the extent legally available, a comparative fault defense in the MDL
14  actions.

15  **VI.  DEFENDANTS' STATEMENTS REGARDING EVIDENCE PRESERVATION ARE INSUFFICIENT AND SHOULD BE SUPPLEMENTED PROMPTLY.**
16

17        Defendants' evidence preservation efforts, or lack thereof, and spoliation issues will likely
18  need to be promptly addressed by the parties and the Court.

19        Defendants' description of their preservation efforts is inaccurate. On October 27, 2023,
20  the parties in the JCCP submitted a Joint Case Management Statement.[2]  In relevant part, the Joint
21  Case Management Statement states:

22  > One business day before the deposition of Uber's Person Most
23  > Qualified for ESI and Uber's document-retention policy, Plaintiffs learned for the first time that from September 2015 to January
24  > 2023, Uber had a six-month e-mail retention policy. Uber's current policy is to destroy e-mails after 24 months. On September 18,
25  > 2020, Uber deleted all Slack messages older than 90 days. Uber also deletes all chat communications after 90 days. These document
26  > and data deletion policies are particularly concerning because the Parties have been meeting and conferring about ESI for over a year,
27  > and we only learned of this recently. Plaintiffs do not yet

28  ---
[2] **Exhibit A** (*In re: Uber Rideshare Cases,* JCCP, No. CJC-21-005188, Joint Case Management Statement).

- 7 -  RESPONSE TO DEFENDANTS' INITIAL CONFERENCE SUBMISSION; MDL 3084

understand the full scope of the potential problem because of attorney-client privilege objections that were raised during the deposition. On October 17, Plaintiffs wrote Uber, asking Uber to clarify the scope of the documents and communications it has destroyed and kept. Uber has not responded.

Given the above, it is likely that significant evidence may not have been preserved or spoliated, in contrast to Defendants' representations.

Moreover, the steps that Defendants state they have taken to preserve relevant evidence are insufficient. For example, Defendants state that Uber has issued litigation holds for "multiple Uber custodians who work on sexual assault or sexual misconduct Incidents." Doc. 38 at 8. But discovery here will not be limited to Uber custodians who work on sexual assault/misconduct issues. Rather, as highlighted in the Transfer Order (Doc. 1), discovery will encompass, for example, Uber's alleged failure to implement appropriate safety precautions to protect passengers; whether Uber failed to conduct adequate background checks and training of its drivers, whether Uber adequately respond to complaints about drivers, and Uber's representations regarding safety.

Uber has been on notice of sexual assault claims against it for years. And Uber has been accused of failing to preserve evidence (and denying its duty to preserve) in at least one previous litigation in this District. *See Waymo LLC v. Uber Techs., Inc.,* No. 17-939, 2018 WL 646701, at *15 (N.D. Cal. Jan. 30, 2018) ("Here, the record clearly shows (and this order finds) not only that a reasonable party in Uber's circumstances would have reasonably foreseen this litigation in January 2016, but also that Uber actually foresaw this litigation in January 2016 []. Uber itself previously insisted as much while trying to withhold evidence []. But now, facing accusations of spoliation, Uber has reversed course and, in a performance deserving of an Academy Award, claims the exact opposite — that it did not reasonably foresee this litigation in 2016 and thus supposedly had no duty to preserve evidence []. Uber's own statements show otherwise.").

Uber's current litigation hold policy fails to cover, at a minimum, custodial sources that are likely to have relevant discovery regarding these topics. Defendants should immediately issue a company and vendor wide comprehensive and complete litigation hold in order to prevent further spoliation of evidence.

## VII. CONCLUSION

Plaintiffs look forward to discussing these issues with the Court at the November 3rd initial conference.

Dated: November 1, 2023

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (State Bar No. 267083)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (State Bar No. 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

1

2  By: */s/ Bret Stanley*
    Bret Stanley
3
    **KHERKHER GARCIA, LLP**
4   2925 Richmond Avenue, Suite 1560
    Houston, TX 77098
5   Telephone: (713) 333-1030
    bstanley@kherkhergarcia.com
6

7  By: */s/ Michael Lee Nimmo*
    Michael Lee Nimmo
8
    **WAHLBERG WOODRUFF NIMMO &**
9   **SLOANE LLP**
    4601 DTC Boulevard, Suite 950
10  Denver, CO 80237
    Telephone: (303) 835-9227
11  michael@denvertriallawyers.com

12
    By: */s/ Eric D. Holland*
13     Eric D. Holland

14  **HOLLAND LAW FIRM**
    211 North Broadway, Suite 2625
15  St. Louis, MO 63102
    Telephone: (866) 471-3695
16  eholland@hollandtriallawyers.com

17
    By: */s/ Charles Andrew Childers*
18     Charles Andrew Childers

19  **CHILDERS, SCHLUETER & SMITH,**
    **LLC**
20  1932 N Druid Hills Road, Ste. 100
    Atlanta, GA 30319
21  Telephone: (404) 419-9500
    achilders@cssfirm.com
22

23  By: */s/ Bartlet Brebner*
    Bartlet Brebner
24
    **BREBNER LAW FIRM PC**
25  4647 N 32nd St., Ste. 285
    Phoenix, AZ 85018
26  Telephone: (602) 230-9554
    bbrebner@brebnerlaw.com
27

28

- 10 -   RESPONSE TO DEFENDANTS' INITIAL CONFERENCE
         SUBMISSION; MDL 3084

By: */s/ Lauren A. Welling*
    Lauren A. Welling

**SLATER SCHULMAN, LLP**
8383 Wilshire Blvd. Suite 255
Beverly Hills, CA 90211
Telephone: (310) 341-2086
lwelling@sssfirm.com


By: */s/ Paula Bliss*
    Paula Bliss

Paula Bliss
Kimberly Dougherty
**JUSTICE LAW COLLABORATIVE, LLC**
210 Washington Street
North Easton, MA 02356
Telephone: (508) 230-2700
paula@justicelc.com
kim@justicelc.com


By: */s/ Tracey Cowan*
    Tracey Cowan

**CLARKSON LAW FIRM**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: (213) 788-4050
tcowan@clarksonlawfirm.com


By: */s/ Karen Barth Menzies*
    Karen Barth Menzies

**KBM LAW**
6701 Center Drive West, 1400
Los Angeles, CA 90045
Telephone: (310) 363-0030 (Direct)
kbm@kbmlaw.com


By: */s/ Layne C. Hilton*
    Layne C. Hilton

**MEYER WILSON**
305 W. Nationwide Blvd
Columbus, OH 43215
Telephone: (866) 827-6537
(614) 255-2697(Direct)
lhilton@meyerwilson.com

|  |  |
|---|---|
| 1 | |
| 2 | By: */s/ Alyson S. Beridon* |
|   | Alyson S. Beridon |
| 3 | |
| 4 | **HERZFELD, SUETHOLZ, GASTEL, LENISKI & WALL, PLLC** |
|   | 600 Vine Street Suite 2720 |
| 5 | Cincinnati, OH 45202 |
|   | Telephone: (513) 381-2224 |
| 6 | Facsimile: (615) 994-8625 |
|   | alyson@hsglawgroup.com |
| 7 | |
| 8 | By: */s/ Meredith Stratigopoulos* |
|   | Meredith Stratigopoulos |
| 9 | |
|   | **WATTS GUERRA LP** |
| 10 | 811 Barton Springs Rd #725 |
|    | Austin, TX 78704 |
| 11 | Telephone: (512) 479-0500 |
|    | mdrukker@wattsguerra.com |
| 12 | |
| 13 | By: */s/ Sara Peters* |
|    | Sara Peters |
| 14 | |
| 15 | **WALKUP, MELODIA, KELLY & SCHOENBERGER** |
| 16 | 650 California St. |
|    | San Francisco, CA 94108 |
| 17 | Telephone: (415) 981-7210 |
|    | speters@walkuplawoffice.com |
| 18 | |
| 19 | By: */s/ Marlene Goldenberg* |
|    | Marlene Goldenberg |
| 20 | |
|    | **NIGH GOLDENBERG RASO & VAUGHN, PLLC** |
| 21 | 14 Ridge Square NW Third Floor |
| 22 | Washington, D.C. 20016 |
|    | Telephone: (202) 978-2228 |
| 23 | mgoldenberg@nighgoldenberg.com |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

By: */s/ Erin Copeland*
Erin Copeland

**FIBICH LEEBRON COPELAND & BRIGGS**
1150 Bissonnet St.
Houston, TX 77005
Telephone: (713) 496-0549
ecopeland@fibichlaw.com

By: */s/ Benjamin T. Carroll*
Benjamin T. Carroll

**KENNEY & CONLEY, P.C.**
100 Grandview Road, Suite 218
Braintree, MA 02184
Telephone (781) 848-9891
Facsimile: (781) 843-4216
Email: benjamin@kenneyconley.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Sarah R. London*
    Sarah R. London