

November 17, 2023

**Sent Via ECF and U.S. Mail**
District Judge Charles R. Breyer
450 Golden Gate Avenue, Courtroom 6
San Francisco, California 94102

<u>Re: MDL No. 3084 In re: Uber Technologies Inc. Passenger Sexual Assault</u>

Dear Judge Breyer,

    Pursuant to Pretrial Order No. 3, I am submitting my application to serve the Court within Your Honor's leadership structure, either as a member of the Plaintiffs' Executive Committee should Your Honor appoint one, or as a member of Plaintiffs' Steering Committee. This submission is intended to provide the Court with the information requested in PTO No. 3, as well as to provide Your Honor with some insight as to who I am.

## Relevant Professional Experience

    I briefed and argued the petitions for coordination before the California Judicial Council for Coordination that resulted in the formation of both the Lyft and Uber JCCPs. Thereafter, I was appointed as a co-lead by the Honorable Ethan Schulman in the *in re: Uber Rideshare Cases,* JCCP No. 5188. I was also appointed as a co-lead by the Honorable Andrew Cheng in the *in re: Lyft Rideshare Cases,* JCCP No. 5061. My firm currently represents roughly half of the Plaintiffs tagged in this MDL (87).

    As Uber co-lead, I have served as one of the primary spokespeople for all of the clients and have been responsible for substantively addressing the Court at every case management conference, informal discovery conference and hearing. I briefed and argued many of the important legal issues that have been addressed thus far. I have been integrally involved in every meaningful meet and confer session with opposing counsel on subjects such as bellwether candidates, corporate depositions, document custodians, document production and ESI protocols. In addition, I have a productive, constructive relationship with Uber's Counsel, Mr. Atkins, Mr. Smith and Ms. Grusauskas.

    In Lyft, in preparation for the bellwether trials, I took depositions of Lyft corporate witnesses, reviewed all the relevant documents produced by Lyft, prepared experts and participated in focus groups. Our firm had half of the trial set bellwethers, including the first trial set case, and nearly half the cases in the initial bellwether pool. With Judge Cheng, I have been one of the primary voices among the co-lead group at every case management conference and at every hearing. I also have a productive and constructive professional relationship with Lyft's counsel at Williams & Connolly and Munger, Tolles & Olsen.

    At this juncture, it is important to highlight that the four co-lead firms in both JCCPs[1] have worked tirelessly, cooperatively and successfully in both litigations. This team already includes fifteen lawyers, including many highly talented women who have been working on this litigation full-time since the beginning. Significantly, at the outset of the Lyft and Uber litigations, these four firms decided not to seek a Common Benefit fee or assessment. We have been working on behalf of all plaintiffs for the traditional reason, namely that we represent our many clients.

---

[1] Levin Simes, Williams Hart & Boundas, Estey-Bomberger and Cutter Law

Also, in the area of other sexual assault litigation, my firm represents quite a number of victims who were assaulted as children in institutional settings. Most of these clients have individual cases, but some of these clients are included in coordinated proceedings.

With respect to other mass torts, I served as state court liaison counsel to the JUUL MDL from the JUUL JCCP. I currently serve on the Plaintiffs' Steering Committee in the Talcum Power JCCP. In addition, I was actively involved in other MDLs and JCCPs.[2] In addition, the firm has been involved in quite a number of other MDLs and JCCPs over the years.

*Trial Experience*

During my ten years as a partner Brobeck, I served as national counsel to Fibreboard Corporation in the asbestos litigation. As national counsel, I tried many cases to verdict in California, Texas, and Pennsylvania. Most notably, I was lead trial counsel in the year-long trial Cimino class action trial involving 2000 plaintiffs, in the Eastern District of Texas, with the Honorable Robert Parker presiding and Joe Rice as opposing counsel. We actually tried over twenty "sample" cases from different disease categories to verdict. At Brobeck, I also tried seven consolidated cases to verdict in the Eastern District of Pennsylvania, as well as many individual cases in state court in San Francisco and Alameda counties.

On the plaintiffs' side, my partner Ms. Simes and I have tried a significant number of cases to verdict, including a verdict against Lorillard Tobacco. We also obtained a $200 million punitive damage award against Certainteed Corporation.

*Settlement Experience*

As national counsel for Fibreboard, my partner Steve Snyder and I negotiated the Fibreboard $3.2 billion global settlement (Ahern Class) which ultimately made its way to the U.S. Supreme Court. The negotiations were very challenging and the issues which needed to be resolved were quite complex. My negotiating partners on the other side included Ron Motley, Joe Rice, Steve Kazan, and Harry Wartnick of the Carwright Office. The negotiations also included CNA's counsel Herb Wachtel, and Myer Koplow of Wachtel Lipton. Before the global settlement, I separately settled over 100,000 cases for Fibreboard with plaintiff's firms all over the country.

Most notably on the plaintiff's side, Joe Rice and I were approached by American Medical Systems national counsel, Ellen Reisman[3], to negotiate an AMS global settlement in the TVM MDL. Eventually, AMS decided to enter into firm-by-firm settlements and our two plaintiff's firms were among the first firms to settle their inventory of cases. Also, in the other aforementioned MDLs and JCCPs, our firm has settled tens of thousands of cases. In the rideshare litigation with Lyft and Uber, my partner Laurel Simes has been the primary negotiator for our firm and she had been able to settle a substantial number of cases.

**Working Cooperatively, Resources and Time Commitment**

Over the years, I have forged highly constructive professional relationships with plaintiffs counsel, defense counsel, and corporate in-house counsel throughout the country. A considerable number of trial lawyers, settlement negotiators, and heads of firms would attest to my reputation with respect to my ability to work collaboratively, cooperatively, and productively with counsel regardless of the interests they represent.

With respect to the question of overall time commitment, I intend to devote almost all of my professional time to this litigation. Beyond me, most of our firm is currently working on the rideshare litigation and intends to continue to do so. With regard to resources, the firm has independently funded all of our litigations since the firm's inception in 2002.

---

[2] Transvaginal Mesh MDL Nos. 2187, 2325-2327, 2387, North Bay Fire JCCP No. 4955
[3] Formerly a partner at Arnold & Porter, but now serving as a special master in mass torts.

### Uber Leadership Structure

Prior to this submission, Plaintiffs' counsel had been discussing the overarching question as to whether or not the interests of the clients and the Court would be best served by establishing a leadership structure which includes members of the four firms who are already leading the litigation against Uber, along with some of the other firms who have MDL leadership aspirations. We strongly believe that joint leadership throughout the leadership structure will be best for the clients and the Court for the following three reasons:

First, these four firms collectively represent a large number of women who deserve to be represented at highest levels of leadership and throughout the leadership structure. Second, these four firms include the fifteen lawyers who have been doing all of the work in the Uber litigation for the past two years, and who will continue to work on the case on a full-time basis. Third, the formation of separate leadership groups in the manner that has been proposed to Your Honor is bound to be unduly cumbersome, inefficient, and divisive.

Given the goals of judicial coordination, we believe that the most efficient and constructive path forward would be to create a balanced leadership team which includes the firms that have been deeply involved in the Uber litigation for over two years and who represent the majority of the clients who have cases currently filed in the state and federal litigations. We think that such an approach makes the most sense and takes into account the practical realities of this particular litigation. Even now, the Uber litigation requires the constant, real time attention of plaintiffs' leadership and opposing counsel. To interpose an additional bureaucratic layer of a mostly separate leadership team does not appear to best serve the overall interests of coordination.

As such, we support the appointment of John Eddie Williams of Williams Hart Boundas as a co-lead of the litigation. As a consequence of Mr. Williams' invaluable contributions to the rideshare litigation, he has earned the support of all four firms. Beyond this, he brings a tremendous amount to the table in terms of the depth and breadth of his experience in large-scale, national litigation, as well as his firm's substantial resources. With regard to whatever committee the Court appoints below the co-leads, we believe that the most effective approach would include Steve Estey of Estey Bomberger, Celine Cutter of Cutter Law, along with me on such a committee. With respect to Sarah London, whom I worked with in JUUL, I have a great deal of respect for her and her firm and am confident that she would be an excellent choice alongside Mr. Williams. While I am just getting to know Roopal Luhana professionally, I have no reason to doubt that she would be effective in this role.

I believe that a balanced co-lead and executive leadership team, which is fully representative of all constituencies and the vast majority of clients would be most effective and will allow us to proceed with a unified, coherent voice on behalf of everyone. We have very serious concerns that creating two mostly separate leadership structures will lead to competing factions in an arena which requires the utmost cooperation and daily coordination. Lastly, as we all know, common benefit fee allocations tend to be divisive, but a balanced leadership and co-lead structure will help to avoid such problems.

### Judicial Contact Information

- Judge Ethan Schulman, San Francisco Superior Court, complexlit@sftc.org, 415-551-3729/5948
- Judge Andrew Cheng, San Francisco Superior Court, (415) 551-3840
- Judge Robert Parker, Retired Fifth Circuit Judge, deceased.

Very truly yours,

LEVIN SIMES LLP

*[signature]*

William A. Levin