

Estey & Bomberger, LLP
2869 India St.
San Diego, CA 92103

November 22, 2023

**Via ECF**
Senior District Judge Charles R. Breyer
San Francisco Courthouse
Courtroom 6 – 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *In re Uber Technologies, Inc. Passenger Sexual Assault Litigation*, MDL No. 3084 CRB

Dear Honorable Judge Breyer:

      I write to respectfully object to the appointment of the slate called the "Plaintiffs' Leadership Group." The leadership structure should, above all, serve the needs of the clients. I believe a leadership structure that includes me and other members of the JCCP leadership alongside a subset of the proposed Plaintiffs' Leadership Group achieves this goal. The JCCP leadership, and the JCCP leadership alone, brings years of experience litigating coordinated proceedings against Uber and its biggest competitor, Lyft.

      It would be a disservice to all plaintiffs in this MDL for the JCCP attorneys to be categorically excluded from the leadership structure. It would also be a disservice to the Court; exclusion of the JCCP leadership would hinder the central tenets and purposes of coordination, not least among them the reduction of discovery costs and duplication. *See* Bolch Judicial Institute, *Guidelines and Best Practices for Large and Mass-Tort MDLs*, at 82 (2d ed. 2018) (hereinafter "*Guidelines*").

      Cooperation and interaction between MDLs and parallel state court proceedings should start at the outset. *See* Judicial Panel on Multi-District Litigation and Federal Judicial Center, *Ten Steps to Better Management: A Guide to Multi-District Litigation for Transferee Judges* (2014), p. 7. Appointing a joint leadership group would ensure a high level of coordination in this proceeding. "Some MDL courts have facilitated…coordination by including in the court-appointed leadership structure counsel who are active in both the MDL and state cases." *See Guidelines,* p. 92. I respectfully ask the Court to do so here.

**Experience Matters**

      Many of the attorneys who submitted leadership applications are unquestionably talented. But sexual assault is a harmful experience. And an interest in sexual assault and/or sexual abuse litigation, or one's status as a female attorney, without a demonstrated track record of successfully litigating sexual assault cases does not render one qualified for a leadership position.[1] My clients hired my firm *because* of our experience in litigating sexual assault cases.

---

[1] This statement is in no way meant to minimize the accomplishments and experience of the subset of attorneys included in the proposed leadership slate that do have demonstrated experience litigating sexual assault cases.

www.ebtrialattorneys.com    Phone: 800.672.1036    Fax: 888.244.3144    info@estey-bomberger.com

In short, effectively litigating sexual assault and abuse cases requires years of dedication. This MDL is not the appropriate arena for attorneys with little to no experience in this genre of cases and/or who have only settled sexual assault and abuse cases outside court to learn on the job. Placing my clients' cases exclusively or primarily in the hands of attorneys who lack the same breadth of experience would contravene the very reasons my clients hired me and my firm and place the outcome of their cases in the hands of attorneys who may not have the necessary experience to reach the best resolution possible.

As Your Honor is undoubtedly aware, a jury verdict or settlement amount is heavily impacted by the experience of the attorney handling the case. Respectfully, my clients deserve the best representation possible. They are best represented by attorneys with experience litigating sexual assault cases; not those with no or limited sexual assault litigation experience, nor those with an interest in joining the fight against rideshare companies years after my firm and the other co-lead firms in the Uber JCCP have been litigating against them for years. In other words, my clients and all other clients in this coordinated proceeding are best served by attorneys who have demonstrably dedicated the majority of their careers – if not their entire career - to litigating sexual assault and abuse cases.

**MDL No. 3084 Does Not Require An Expansive Leadership Structure**

The case against Uber is, at its core, rooted in negligence. As attorneys John Eddie Williams and Paula Bliss made plain during the hearing before the JPML, this proceeding is governed by when Uber knew its drivers were sexually assaulting passengers and what they did - or failed to do – to protect passengers from future sexual assaults. While I am in no way minimizing the amount of work that needs to be done, this is not a case that involves complicated medical or scientific issues necessitating an eighteen-firm leadership structure. Particularly in a context where a great deal of work has been done in the Uber JCCP; work from which the MDL attorneys and clients will and should collectively benefit.

**Involvement in the Uber JCCP**

One applicant for a co-lead position represented to the Court that she has been "actively involved in the Uber JCCP" and has "attended every CMC." Attending case management conferences, as any attorney or member of the public is free to do, does not equate to meaningful involvement in the Uber JCCP. Further, the JCCP leadership has done significant work over the past two years in accordance with structure and timing instituted by Judge Schulman. More specifically, Judge Schulman delayed liability discovery until Uber's *forum non conveniens* and demurrer motions were heard. As such, the parties engaged in *forum non conveniens* discovery wherein each Plaintiff completed a forum-related fact sheet. Thereafter, the parties briefed and argued the forum motion. The Court's forum order is on appeal and is being handled by an appellate attorney hired and retained by the Uber JCCP leadership. Uber's demurrer was argued by JCCP leadership earlier this year, and plaintiffs' core negligence and common carrier liability claims survived. Since Judge Schulman issued his order in June, the parties have been engaging in discovery. Plaintiff and defendant fact sheets have been completed for each case, two corporate representative depositions have been taken, and Plaintiffs have propounded 351 requests for production of documents, special interrogatories, form interrogatories, and requests for admission The parties have also identified the pool of bellwether plaintiffs. The aforementioned applicant was not involved in any of these efforts.

I also adopt the response submitted by John Eddie Williams and welcome the opportunity for a hearing on the applications if helpful to Your Honor.

Respectfully,

/s/ Stephen J. Estey
Stephen J. Estey