

**JOHN E. WILLIAMS, JR.**
MANAGING PARTNER
Attorney at Law
Board Certified Personal Injury Trial Law
Texas Board of Legal Specialization

jwilliams@whlaw.com

November 22, 2023

Senior District Judge Charles R. Breyer
San Francisco Courthouse
Courtroom 6, 17th Floor
450 Golden Gate Avenue
San Francisco, California 94102
***Via CM/ECF***

Re:  *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*, MDL No. 3084, Response to Applications to Plaintiffs' Steering Committee

Dear Honorable Judge Breyer,

I submit this letter in response to the applications to Plaintiffs' Steering Committee (PSC). I am encouraged by the individual attorneys interested in leadership and am confident in my ability to be an effective Co-Lead Counsel in this proceeding.

The sexual assault victims that we represent deserve for their cases to proceed in a timely and just manner. The proposed Plaintiffs' Leadership Group (PLG) does not account for the best interests of these victims. It undermines the value of JCCP Leadership attorneys and lends itself to abuse with an overly large and nondiverse membership. I suggest a joint leadership group (JLG) with both JCCP Leadership and PLG attorneys.

### Coordinating at the Highest Levels of Leadership Allows for Efficiency

JCCP Leadership attorneys should be appointed to the highest levels of leadership (i.e., at the Co-Lead Counsel level) to allow for efficient and seamless coordination between the two Uber proceedings, the JCCP and MDL. *See* Bolch Judicial Institute, *Guidelines and Best Practices for Large and Mass-Tort MDLs*, at 81–92 (2d ed. 2018) (*Guidelines*). The proposed JLG would streamline efforts and communications between leadership counsel, with defense counsel, and with the courts. It would benefit from the overlap between the Uber proceedings, largely eliminating the need to split attention and resources between them. *See Guidelines* at 45.

On the other hand, the proposed PLG would require a distinct, open line of communication between leadership counsel. It has been difficult to communicate with PLG in its capacity as the *de facto* PSC. While acting as the *de facto* PSC, PLG met with defense counsel to discuss ESI protocols without coordinating its efforts with JCCP Leadership even though PLG knew of the ESI negotiations under way in the Uber JCCP. The proposed JLG would eliminate reliance on such communication and facilitate efficiency and transparency in the interest of coordination.

PLG believes that having JCCP Leadership prominently involved in leadership would prejudice the Uber proceedings. Judge Schulman seems to welcome and expect coordination as the Uber JCCP enters the discovery phase, and PLG's belief is unfounded.

### Including Attorneys with Direct Experience Capitalizes on Valuable Insights

In 2019, JCCP Leadership filed its first rideshare sexual assault lawsuit and soon after initiated two coordinated proceedings, the Lyft and Uber JCCPs. The Lyft and Uber JCCPs have been ongoing for the last three and two years, respectively. JCCP Leadership attorneys have litigated rideshare sexual assault cases and worked with defense counsel for Uber. We have briefed and argued dispositive motions, conducted full discovery, and developed a trial framework. In the Uber JCCP, we pressed forward after facing FNC and demurrer challenges. With the FNC, we partook in a limited yet substantial discovery process, including the exchange of fact sheets to begin to assess bellwether candidates. It would be inaccurate to minimize the progress made in the Uber JCCP. Having previewed the upcoming litigation and acquired much insight, we would bring added value to leadership in this proceeding.

In comparison, PLG attorneys have minimal experience in the Lyft and Uber JCCPs, with most showing interest in the Uber docket only after coordination of this proceeding. Contrary to the assertions of Rachel Abrams, she has not played any leadership role in the Uber JCCP (nor do I recall her playing a significant role in either JCCP). *See* Dkt. 106. Additionally, the other PLG attorneys, including the proposed Co-Lead Counsel, have not volunteered in the JCCPs. PLG seeks to prevent JCCP Leadership from participating in leaderships of both Uber proceedings, which does not accord with the preference of many courts: "[E]xperienced transferee judges report that they actually prefer to have some attorneys in leadership who have cases in both courts . . . ." *Guidelines* at 91. In this proceeding, it would be valuable for JCCP Leadership attorneys to participate in leadership since we have considerable experience in prosecuting rideshare sexual assault cases.

### Including Firms that Represent Many Plaintiffs Aligns with Plaintiffs' Best Interests

The exclusion of JCCP Leadership from the proposed PLG would take away the voice of many victims in this proceeding. JCCP Leadership represents many victims: nearly all plaintiffs with claims filed in the Uber JCCP; 100 plaintiffs with claims filed in this proceeding; and many future plaintiffs with relevant claims. JCCP Leadership attorneys are not beholden to any attorney or law firm vying for a common benefit fee. Instead, we have a "significant incentive to prosecute the litigation as vigorously as possible." *Guidelines* at 44. The proposed JLG would empower the voices of the many victims that we represent.

JCCP Leadership has been fortunate to maximize client recovery and to be able to self-fund the Lyft and Uber JCCPs. The proposed JLG could also consider self-funding this proceeding. At a bare minimum, the proposed JLG would better protect plaintiffs from being "double taxed." PLG contemplates a framework that would underutilize the work performed by JCCP Leadership and carelessly lead to duplicative expenses and costs.

### Focusing on Lean Membership with Diverse Skillsets and Experiences is Optimal

The proposed JLG is tailored to meet the needs of this proceeding. It focuses on being lean yet balanced with diverse skills, expertise, experiences, and demographics. PLG puts forward a

leadership of 21 member attorneys/firms. This proceeding is not an exceptional case that warrants such a large membership. *See Guidelines* at 34. It is a straightforward negligence case against a single defendant. If four firms could guide the Lyft JCCP to trial, then less than ten firms should be needed here. The proposed PLG would hinder and not expedite or improve the management of this proceeding. *See Guidelines* at 33, 41. Given the resources available to JCCP Leadership attorneys, a lean membership would be attainable and appropriate. Backed by their firms, JCCP Leadership attorneys have the ability to self-fund litigation and the support of 11 additional attorneys. Ideally, leadership would include a manageable number of members, who would partake in tasks and decision-making without delay and duplication of efforts. *See Guidelines* at 43.

The proposed PLG mainly consists of member attorneys with MDL experience. Unfortunately, some PLG attorneys may be soliciting or seeking an appointment rather than prioritizing actual work. *See Guidelines* at 42. The proposed JLG recognizes that member attorneys with other skills and experience would be just as valuable to this proceeding. *Id*. at 43. JCCP Leadership attorneys have focused on litigating cases. We have extensive case management and trial experience in rideshare sexual assault and complex cases. In my case, I am not looking to bolster my resume, and I intend for my Co-Lead Counsel application to be my one and only.

**Avoiding the Potential for Abuse Promotes an Effective Leadership**

PLG proposes an independent slate, as listed in all 18 PLG attorney applications (Adam Gomez has not applied). Such a private-ordering process should be scrutinized for impropriety:

> Judges have complained that as leadership appointments have increasingly become the path to substantial common benefit fund awards, the monetary stakes of appointment have generated substantial dysfunction in the incentives of counsel, leading to competitive behaviors that may not result in the appointment of the best possible counsel.

*Guidelines* at 47. Many PLG attorneys seem to routinely jump from one MDL to the next likely in pursuit of a common benefit fee. *See id*. at 46. For them, when one door closes, another one opens. Most are newcomers to the rideshare sexual assault litigation, with a recent interest in the Uber docket and only a few cases on file. Yet they have banded together to reject JCCP Leadership—attorneys who are uniquely and highly qualified to be appointed to leadership in this proceeding. As a *quid pro quo*, PLG offered me an Executive Committee seat in exchange for my endorsement of its slate. Ultimately, I could not accept the offer. Even after I expressed my concerns, PLG refused to make any changes to its slate. I do not have allegiance to an attorney or law firm but to my clients, and to this proceeding if appointed as Co-Lead Counsel. The proposed JLG would resolve my concerns over an overly large and nondiverse leadership largely devoid of JCCP Leadership involvement. I adopt the response submitted by Steve Estey and welcome the opportunity for a hearing if helpful to Your Honor.

Yours truly,

*/s/ John Eddie Williams*
John Eddie Williams, Jr.
