

November 22, 2023

**Via ECF**
Hon. Charles R. Breyer
United States District Court Judge
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, California 94102

      Re:    *MDL No. 3084 In re: Uber Technologies Inc., Passenger Sexual Assault Litigation Response in Opposition to the Application for Co-Lead Counsel of Rachel Abrams*

Dear Judge Breyer,

    I submit this opposition to the application of Ms. Abrams to serve as Plaintiffs Co-Lead Counsel (motion to partially seal filed concurrently herewith) and in response to the proposed Plaintiffs' Leadership Group (PLG) structure submitted by other applicants. Ms. Abrams' professional misconduct, as described below, should be disqualifying as it negatively impacted Uber clients in this MDL. I tried to avoid having to file this opposition by first communicating our concerns to Peiffer Wolf, the other co-lead PLG applicants, as well as some of the other counsel included in the PLG.

    **Ms. Abrams' Application is Misleading:** Ms. Abrams has misrepresented her role in the Rideshare litigations. Her actual role was fairly, peripheral. For the most part, Ms. Abrams did not substantively address the court in any of the 22 case management conferences in the Rideshare litigations. She did not conduct or defend any deposition, nor did she even ask a single question in any of the many rideshare depositions. In addition, she hardly participated in the many meet-and-confer sessions with opposing counsel. Nor did she brief or argue any legal issues, and she rarely made a substantive contribution during well over 100 co-lead calls.



MDL No. 3084 William Levin's Opposition to Leadership Application of Rachel Abrams
November 22, 2023
Page 2

[Page body redacted]

**Objection to the Proposed Structure of Plaintiffs' Leadership Group (PLG)**

There is a mismatch between the Plaintiffs proposed PLG and the needs of the litigation. As set forth in the MDL Best Practices Guide, each MDL is unique and "[t]he transferee judge should assess the needs of the litigation in establishing an appropriate leadership structure." (MDL Guideline 1, Best Practice 2b) This case is not a traditional mass tort involving tens of thousands of plaintiffs with complicated scientific and medical causation issues. It is a negligence-based case against a single defendant, involving acts and omissions related to the system for vetting drivers, the absence of a requirement for cameras in the car, and a lack of an effective supervisory program for policing driver misconduct. What we need is basic deposition and document discovery.

The PLG proposal simply is not a good fit for this MDL in terms of completing the necessary deposition and document discovery efficiently and without undue duplication of effort or cost. On its face, the PLG proposal involves 17 separate law firms. While there are undoubtedly many excellent lawyers in those firms, the proposal places too many "cooks in the kitchen" for the task at hand. This bloated leadership structure fails to articulate what any of the proposed "leaders" will actually be doing, therefore, sidestepping the recommendations contained in the best practices guide. How many "leaders" do we really need to conduct discovery on these limited subjects?

By way of comparison, Judge Andrew Cheng was able to effectively manage and bring the Lyft litigation all the way through the pretrial discovery phase, with the assistance of four firms who reviewed all the documents, took all of the depositions and who did not seek common benefit contributions from any of the other firms with cases. The bellwether cases in Judge Cheng's court were ready to be tried, but the litigation was stayed in order to accommodate the mediation process which is now ongoing and which has resulted in the resolution of a substantial number of cases. Given all of the tools at Your Honor's disposal, we see no reason why this MDL can't effectively proceed to the resolution stage with a more efficiency-oriented leadership structure that includes a limited number of "leaders," and a balanced leadership structure including the lawyers who are already doing the work and who represent the majority of clients with filed cases.

A joint leadership structure in this context is consistent with the principles articulated in MDL Guideline 1, as follows: "The objectives of an MDL proceeding should usually include: (1) the elimination of duplicative discovery; (2) avoiding conflicting rulings and schedules among courts; (3) reducing litigation costs; (4) saving the time and effort of the parties, attorneys, witnesses, and courts; (5) streamlining key issues; and (6) moving cases toward resolution (by trial, motion practice, or settlement)."

In closing, I also adopt the responses submitted by Stephen Estey and John Eddie Williams. While I oppose Rachel Abrams' application as co-lead, I recognize that the Peiffer Wolf firm has a significant stake in the litigation, as does Levin Simes. Accordingly, both firms could serve on a plaintiff's executive or steering committee, but neither should serve as a co-lead for the others' clients. It is for this reason that I did not apply for that position.

Very truly yours,

/s/ William A. Levin