

Rachel Abrams | Partner
555 Montgomery Street, Suite 820, San Francisco, CA 94111
415-426-5641   415-840-9435   rabrams@peifferwolf.com

November 27, 2023

The Honorable Charles R. Breyer
United States District Court, Northern District of California
Phillip Burton Federal Building & United States Courthouse
450 Golden Gate Avenue
San Francisco, California 94102

      Re:    *In Re: Uber Technologies, Inc., Passenger Sexual Assault Litigation,* MDL No. 3084

Your Honor:

    I respectfully submit this brief response to the opposition to my Application for Co-Lead that was filed by my former law partner, William Levin. Mr. Levin is upset that I left my former firm, Levin Simes Abrams LLP ("LSA"), and regrettably, he has allowed his personal animosity toward me to infect the proceedings before this Court in a highly unprofessional manner. While this forum is not the appropriate place for Mr. Levin to air his baseless contentions (or for me to rebut them), [1] I thought it was necessary to respond briefly to Mr. Levin's filing.

    In short, Mr. Levin's accusations toward me are untrue. As this Court is aware, attorneys routinely leave their firms for new opportunities. When I chose to leave LSA, I made every effort to ensure an amicable departure. I gave my partners thirty days' notice of my withdrawal, in accordance with LSA's Partnership Agreement. I fully intended to remain at LSA during that period to ensure a smooth transition. As part of that transition, I proposed to my partners that we provide a joint notice to clients of my departure from LSA. Based on the advice of ethics counsel and Formal Opinion No. 2020-201 of the California State Bar Committee on Professional Responsibility, I was required to inform clients that I was leaving LSA, and because many of those clients were traumatized sexual assault survivors, I wanted to protect them as much as possible from any unnecessary confusion or concern.

    After an initial thoughtful discussion with my partners over dinner, which ended with warm embraces, I was encouraged that we would work together amicably to accomplish this. Unfortunately, the next day Mr. Levin informed me that I was expelled from LSA and made clear that he would not cooperate with me on a joint notice to clients or anything else related to my departure. This adversarial approach to my leaving LSA ultimately resulted in the arbitration proceedings referenced in the footnote below.

    At every step of the process of my disassociation from LSA, I carefully consulted with ethics counsel. I did this both to honor my professional obligations and to make sure that I acted in the best interests of the clients who had entrusted their claims to LSA and to me. Indeed, one of the reasons I decided to leave LSA was *because*

---

[1] The proper forum for the full vetting of those accusations is the arbitration in which Mr. Levin and I have filed claims against each other, pursuant to LSA's Partnership Agreement. The arbitration will not detract from my commitment and ability to work collegially and effectively with all plaintiffs' counsel in our collective prosecution of claims against Uber.

Hon. Charles R. Breyer
November 27, 2023
Page 2

of the Uber sexual assault clients. Mr. Levin is one of the Uber JCCP Co-Leads who made the decision to appeal the JCCP court's *forum non-conveniens* ruling for the affected clients, many of whom already had their cases stayed for over a year. The thought of having those cases sit idle while on appeal, potentially for years, was untenable for me, as well as for many plaintiffs. Thus, I decided to leave LSA and work with like-minded attorneys to establish this MDL and advance the cause of Uber sexual assault survivors. Unfortunately, my work for this MDL has now given Mr. Levin an opportunity to try to damage my reputation by publicly making a host of spurious allegations in opposition to my leadership application.

Let me be clear: I forcefully and unequivocally dispute the allegations made by Mr. Levin. As mentioned above, I consulted ethics counsel at every stage of my disassociation from LSA, and I would welcome scrutiny by anyone, including this Court, of my actions in departing my former firm. But this is not the proper forum for that, and Mr. Levin knows it.

Further, my experience and work for rideshare sexual assault survivors is undeniable. Despite Mr. Levin's inaccurate assertions, I was the predominate partner working on all aspects of rideshare litigation for LSA. Regarding Uber specifically, I resolved hundreds of Uber sexual assault cases before the JCCP was formed. I helped draft the petition for coordination (which my name is on) and addressed Judge Schulman during initial Case Management Conferences. I worked with co-counsel and Uber's counsel on *forum non-conveniens* discovery and helped draft the Plaintiffs' *FNC* fact sheet. As this Court is aware, very little meaningful litigation transpired in the JCCP until the *FNC* motion was granted earlier this year, shortly before my departure from LSA.

Finally, the support I have received (and continue to receive) from the other plaintiffs' attorneys in this MDL speaks volumes. By his own admission, Mr. Levin reached out to those attorneys to make the same accusations he included in his opposition to my leadership application. He characterizes this smear campaign as a "good faith effort" to inform "the other co-lead Plaintiff's Leadership Group ("PLG") applicants, as well as some of the other counsel included in the PLG, of our concerns regarding her application for the co-lead position." As Mr. Levin aptly notes, however, those "efforts were unsuccessful." Despite Mr. Levin's cynical attempt to undermine my application,[2] every one of those attorneys continues to support me as a Co-Lead. Their faith in me is based not only on my professional achievements and the reputation I have worked hard to build, but also on the fact that Mr. Levin's conduct has made clear to them—as it should to this Court— that he is acting out of personal animosity and not out of concern for clients or the MDL.

I am grateful and humbled to know that this outstanding group of attorneys has committed its unwavering support to me. I respectfully request that the Court honor that commitment and disregard Mr. Levin's unwarranted, unprofessional, and baseless attempt to call into question my qualifications to serve as Co-Lead Counsel. To do otherwise would reward precisely the kind of petty, sharp tactics that have no place in this MDL or our profession generally.

Respectfully submitted,

By: */s/ Rachel B. Abrams*
    RACHEL B. ABRAMS
    **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**

---

[2] In the interests of transparency, I also provided Mr. Levin's unredacted opposition filing to every member of the proposed PLG and to all non-JCCP Leadership firms with MDL cases (presumably, Mr. Levin has already shared the same with the JCCP firms). All of those attorneys have unwavered support for me as a Co-Lead in this MDL.