RANDALL S. LUSKEY (SBN: 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
**& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice forthcoming*)
ratkins@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
**& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3183
Facsimile: (212) 492-0183

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S STATEMENT IN SUPPORT OF ITS PROPOSED PRETRIAL ORDER REGARDING DISCOVERY AND INITIAL MOTIONS**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor |

**DEFENDANTS' STATEMENT IN SUPPORT OF ITS PROPOSED PRETRIAL ORDER REGARDING DISCOVERY AND INITIAL MOTIONS**

In accordance with the Court's Pretrial Order No. 4, dated December 6, 2023, and with the Court's Order Granting Stipulation to Amend Case Schedule, dated December 14, 2023, Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively "Uber"), hereby submit this statement in support of Uber's proposed pretrial order regarding discovery and initial motions, which is attached hereto. ECF 152, 158. As requested in Pretrial Order No. 4, because the parties were not able to reach complete agreement on a proposed pretrial order, each party agreed to submit "its own proposal with a memorandum" that "explain[s] why the Court should adopt that party's proposal" where the proposals differ from one another. ECF 152.

I.  **THE PARTIES EXTENSIVELY MET AND CONFERRED IN THE LEAD-UP TO THIS SUBMISSION**

On December 6, 2023 the Court ordered the parties to meet and confer regarding a discovery plan as well as a schedule for the filing of a long-form complaint and for briefing motions to dismiss. ECF 152. Before filing this statement, the parties engaged in substantial meet and confer efforts, including exchanging redlines of each side's proposal, in an effort to submit an agreed upon proposal or to otherwise narrow the scope of the parties' disputes. While the parties were not able to agree completely on a proposed pretrial order regarding discovery and the filing of initial motions, we were able to significantly narrow our disputes.

In particular, the parties agreed to the schedule for the filing of a Master Long-Form Complaint ("Master Complaint") and generally to the briefing of Rule 12 Motions to Dismiss: Plaintiffs will file a Master Complaint by February 15, 204, Uber will file its first set of Rule 12 Motions by April 1, 2024, the opposition will be due on May 22, and the reply brief will be due by June 19. Thus, full briefing on the first set of Rule 12 Motions will be done by mid-June, 2024. The parties also agreed to meet and confer regarding various items, including the timing and form of short-form complaints, as well as a deposition protocol and the timing of expert discovery. The parties were not, however, able to come to an agreement regarding the overall timing or features of the discovery plan or the timing of any Motions to Transfer.

## II. INTRODUCTION

There are a number of problems with Plaintiffs' proposed order of procedure and scheduling that bear brief discussion at the outset. Plaintiffs' proposal places the cart before the horse: proposing full-blown discovery from Uber before the parties have even negotiated an ESI protocol and before the Court has decided which claims will remain in this MDL. Plaintiffs' proposal is also plainly imbalanced: Plaintiffs seek broad and immediate discovery from Uber but request an order that would preclude Uber from receiving *any* early discovery from Plaintiffs about the facts underlying their individualized claims. For example, Plaintiffs refused to even commit to a date by which the parties would agree to the model plaintiff and defense fact sheets to be used in this litigation (Uber had proposed mid-January). Instead, Plaintiffs offer merely to meet and confer about what discovery from Plaintiffs might be appropriate at some indeterminate date down the line. Further, Plaintiffs' proposal fails to take advantage of the many benefits that coordination with the parallel Judicial Council Coordination Proceeding No. 5188 (the "JCCP") may bring to this litigation.

Uber proposes an orderly process that avoids these pitfalls. As set forth further below, Uber respectfully submits that the parties begin with straightforward and simple preliminary disclosures whereby Plaintiffs promptly provide a copy of the trip receipt underlying their claims - - a requirement that is essential to allowing the Court and the parties to confirm that this MDL consists only of cases that are substantiated.

Uber further submits that the discovery stay should, in part, be lifted immediately and that it should be lifted in a logical, orderly manner. Early discovery in this action should be coordinated with the JCCP, which is already well underway. Coordination with the JCCP will enable corporate discovery to begin promptly in this litigation, but importantly, in a manner that is efficient for the parties and for the Court. Uber proposes a plan that, among other things, involves applying Uber's ongoing massive document collection, review, and production efforts in the JCCP to this litigation: Uber shall rapidly produce in this MDL any and all documents produced in the JCCP that are not specific to a particular case within the JCCP. The parties can and should also promptly begin case-specific discovery by exchanging fact sheets. Overlapping with this early commencement of

discovery, Uber further submits that the Court should address an Omnibus Motion to Transfer under 1404(a) at the outset of this litigation. This Omnibus Motion to Transfer should be followed by Rule 12 Motions to Dismiss to determine which cases and which claims will remain, and following a ruling on the Rule 12 Motions to Dismiss, the remainder of the discovery stay shall be lifted.

### III.    THE ISSUES IN DISPUTE

####     A.    Preliminary Disclosures

As we have learned from the JCCP, preliminary disclosures are key to the successful management of this case. In the JCCP, Uber identified 111 cases out of 338 total California-based cases in which the plaintiff was unable to provide sufficient information for Uber to identify a trip connected with the Uber platform approximately *two years after* the JCCP was established. In short, one-third of Plaintiffs' claims were identified to be, and to this date remain, unsubstantiated. With respect to those "Unsubstantiated Cases," the plaintiffs suggested and agreed to ultimately exclude those cases from the bellwether selection pool, and on October 30, 2023, Judge Schulman ordered that those cases be excluded from the bellwether selection pool. Based on that experience, it is likely that there will be many unsubstantiated cases in this proceeding. Determining the scope of that problem can and should be addressed at the outset with the requisite preliminary disclosures.

Uber's proposal is simple: Plaintiffs shall produce, by February 15, 2024, the date on which they will file their Master Complaint, a bona fide receipt from an Uber trip connected to the alleged incident, accompanied by a verification of accuracy.[1] For any case that is filed in or transferred into the MDL after the date of the Master Complaint, the Plaintiff shall produce a bona fide trip receipt and verification of accuracy within 7 days of the direct filing of their complaint or the transfer of their case into the MDL. This gatekeeping mechanism will encourage the parties to use their resources efficiently at the outset. Resources will not be wasted on cases that cannot be substantiated. Instead, Plaintiffs who fail to substantiate their claims in a timely matter will

---

[1] As Uber noted in its Initial Conference Submission, dated October 27, 2023, similar orders have been entered in both the JCCP and in the state court coordinated proceedings involving claims against Lyft. ECF 38 at 7-8.

have their cases dismissed with prejudice.

**B.     The Coordinated Discovery Plan**

Uber proposes initiating select discovery immediately upon entry of a Protective Order in this matter (the "PO"). Specifically, Uber recommends that the parties promptly begin both certain corporate discovery as well as certain ***bi-lateral*** case specific discovery.

*Corporate Discovery*:  Uber believes coordinating discovery with the JCCP is the most logical and efficient way to commence corporate discovery in this litigation.  In the JCCP, Uber already made some targeted productions and has, thus far, received and submitted responses and objections to nearly **400 document requests**.  Document collection efforts are proving to be a massive undertaking.  For example, looking only at email data for the 44 custodians that Uber has agreed to collect for thus far, the expected export (through which search terms will be run) is expected to result in more than 1.3 terabytes of email data, which is in excess of 1 trillion bytes.  Other shared repositories will add significant volumes (many more terabytes) above and beyond that, just for the 44 custodians whose files are currently being collected.  Uber is anticipating beginning to make broad corporate document productions within the first quarter of 2024 and those document productions are expected to ultimately contain hundreds of thousands of documents, based on the vast scope of the search terms presently being discussed.

Uber proposes to put those onerous efforts to work in the MDL.  In particular, Uber submits that, in this MDL, it shall produce any documents it produces in the JCCP that are not specific to a particular case in the JCCP within 30 days of having produced them in the JCCP.  As such, under Uber's proposal, Plaintiffs would begin receiving substantial amounts of corporate document discovery prior to the first wave of Rule 12 Motions having even been decided in this case.[2]

Uber also proposes the parties in this litigation and in the parallel JCCP action quickly begin meeting and conferring regarding a coordinated deposition protocol that would apply across both this MDL and the JCCP.  Uber believes that it would be most efficient for a witness to be deposed once by the MDL and JCCP plaintiffs together.  Both MDL and JCCP plaintiffs would

---

[2] The parties have agreed the first set of Rule 12 Motions to Dismiss will be fully briefed as of June 19, 2024.

participate in the depositions that are relevant to the causes of action that remain in each litigation.

Plaintiffs expressed a concern that they would be forced to partake in depositions without having received the documents necessary to properly prepare for and take the depositions. This concern is misplaced for several reasons. First and foremost, at this time, there is no reason to think that significant numbers of depositions - - perhaps none - - will be scheduled prior to resolution of Uber's first set of Rule 12 Motions in the MDL proceedings, after which the remainder of the discovery stay will be lifted. Second, Plaintiffs here will receive all documents produced in the JCCP that do not contain information pertaining only to a specific JCCP case- - meaning that they will be in at least as good of a position to participate in any deposition as the JCCP plaintiffs.[3] Because the fact discovery cutoff in the JCCP is not until January 15, 2025, the parties in the JCCP and the MDL will have two full months post-the MDL substantial completion deadline (November 15, 2024) to take depositions before the JCCP fact discovery cutoff. The parties will also have an additional month to take any depositions specific to the MDL (if any) prior to Uber's proposed February 15, 2025 fact discovery cutoff in the MDL.

If the parties in the JCCP and the MDL ultimately decide that some small number of depositions should take place before the initial Rule 12 Motions are resolved in the MDL, the MDL Plaintiffs would not be prejudiced. Once again, they would have the same documents as the JCCP plaintiffs. Furthermore, Uber's proposal expressly calls for the parties to meet and confer regarding other exceptions to the stay of discovery that may be needed (if any) to effectuate appropriate and efficient coordination with the JCCP. This includes the coordination of depositions. The parties can meet and confer about Plaintiffs' potential need to make targeted requests for deponent-specific documents in advance of depositions if they think they are missing certain documents beyond those in the JCCP productions.

---

[3] Uber is of the view that the JCCP productions should generally provide Plaintiffs with the breadth of corporate document discovery that is relevant and proportionate to this litigation. While Uber recognizes that there may be some delta between what is produced in the JCCP and what Defendants are entitled to in this litigation, the anticipated difference is relatively small. As previously mentioned, the plaintiffs in the JCCP have already served on Uber nearly 400 document requests, for example. This means that as a practical matter, substantial completion here could well occur significantly earlier than November 15, 2024.

*Bi-lateral Case-Specific Discovery*: With regard to bi-lateral case-specific discovery, Uber proposes to immediately begin the process of exchanging verified plaintiff and defense fact sheets. Given that model plaintiff and defense fact sheets have already been extensively negotiated and effectively implemented in the JCCP, Uber sees no reason to deviate from using those models here and no reason why the parties should not commence this process promptly. For the Court's reference, the model plaintiff and defense fact sheets used in the JCCP are attached as Exhibit A and Exhibit B, respectively, to Uber's proposed pretrial order regarding discovery and initial motions.[4]

Uber thus proposes that within 30 days of the entry of the PO, each plaintiff shall serve a verified plaintiff fact sheet providing the information requested in the JCCP model plaintiff fact sheet ("PFS"),[5] and then within 30 days of receipt of each substantiated PFS, Uber shall serve a verified defense fact sheet providing the information requested in the JCCP model defense fact sheet ("DFS"). For any case that is subsequently filed in or transferred to this MDL, the plaintiff shall serve their PFS within either 30 days of the direct filing of their complaint or of the transfer of their case to the MDL. Within 30 days of receipt of such PFS, Uber will serve a DFS. Any Plaintiffs who fail to substantially complete their PFS within the allotted time, and who did not

---

[4] The model plaintiff fact sheet used in the JCCP requests that the plaintiff filling out the fact sheet set forth the basic facts underlying their claims. For example, it requests the plaintiff's statement of the details of the incident (e.g., what was the nature of the attack, and when did it take place in relation to when the ride started or ended?), the aftermath (e.g., was the incident reported to police, and when?), medical treatment (e.g., what medical treatment did the plaintiff receive following the incident?), the identity and contact information of witnesses (e.g., witnesses to the incident, the aftermath of the incident, or on damages issues), and the nature of the injury and damages alleged to have been incurred.

[5] Plaintiffs may argue that they should not have to do a PFS for all Plaintiffs, but instead for only some subset of Plaintiffs, to be determined at a later date. The Court should reject any such arguments. Obtaining fact sheets, which ask the plaintiff to set forth the basic facts underlying their claims, from all Plaintiffs, is both necessary and feasible for Plaintiffs' counsel to achieve. Plaintiffs have filed hundreds of individual actions (and have stated that they anticipate filing at least several hundred more), and Uber is entitled to understand what those claims are and to litigate them, not merely a subset of them. Surely Plaintiffs' counsel investigated these allegations before filing the hundreds of complaints at issue. It is only fair to require Plaintiffs' counsel to compile the information Plaintiffs' counsel already possesses so that the parties are on a level playing field. Further, to the extent that Plaintiffs intend to advocate for some sort of bellwether process (which Uber opposes), obtaining full verified fact sheets from each plaintiff is the first step in selecting bellwethers.

receive an extension of time from Uber or from the Court, shall have their cases dismissed with prejudice.

Uber submits that the remainder of the discovery stay should be lifted after the Court has fully adjudicated the first set of Rule 12 Motions - - after which, the parties and the Court shall have at least a general sense of which claims are in or out of the case and the specific nature of the claims that remain live.

### C.    Motions to Transfer

Uber proposes that motion practice should begin with an Omnibus Motion to Transfer under U.S.C. § 1404(a).  This determination is imperative and there is no reason not to make it at the outset of this litigation.  While the cases are here for pretrial purposes, questions under U.S.C. § 1404(a) must be decided so that the cases can be transferred to the appropriate venue for trial once they are remanded.  28 U.S.C. § 1407(a).  Uber is aware of a total of 200 cases pending in federal court that are, or soon will be, part of this MDL.  Of those pending cases, 174 cases - - or 87% - - arise from alleged incidents that occurred outside of California, yet were originally filed in the Northern District of California.  *See* Addendum 1. Uber maintains that those actions should be tried in the judicial districts in which the underlying incidents are alleged to have occurred. Venuing the cases in the appropriate districts will, among other things, assist in service of process on third-party defendant drivers.[6]

Since Uber is not requesting any forum discovery in advance of bringing its Omnibus Motion, there is nothing preventing the parties from briefing this issue immediately.  Prior to the Transfer Order, pursuant to 28 U.S.C. § 1404(a), Uber moved to transfer 15 of the cases in this MDL out of the Northern District of California to the states in which the alleged incidents occurred.

---

[6] Uber intends to commence filing and service of third-party complaints on independent drivers in these actions shortly.  However, any independent drivers who are not California residents - - likely, the *vast majority* of the drivers - - will not be subject to personal jurisdiction in California.  Although transfers under Section 1407 are "not encumbered by considerations of in personam jurisdiction and venue," *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987) (citation omitted), the non-California drivers are likely to argue that they cannot be joined or impleaded into an action that is part of a multidistrict litigation in a court where they are not subject to personal jurisdiction of the forum in which the case was originally filed.

See ECF 38-1. Two of the plaintiffs in those actions opposed Uber's motion, and in one action, the issue was fully briefed. ECF 38-1. In other words, the parties have already, and quite recently, fully briefed this issue - - meaning the parties are ready to brief the issue again in this Court and they can do so quickly. To that end, Uber shall file an Omnibus Motion to Transfer pursuant to 28 U.S.C. Section 1404(a) by February 1, 2024; Plaintiffs shall file their opposition by March 1, 2024; and Uber shall file its reply by March 22, 2024. This Omnibus Motion to Transfer briefing schedule shall in no way affect or delay the briefing schedule for the first set of Rule 12 Motions in this case, which the parties have already agreed will take place between April 1, 2024 through June 19, 2024.

### D.     Rule 12 Motions to Dismiss

While the parties came to an agreement regarding the timeline for briefing Rule 12 Motions to Dismiss, there is an important distinction in their proposals. Plaintiffs' proposal omits the flexibility built into Uber's proposal for Rule 12 Motions to be brought in "some or all of the actions in this MDL" and fails to contemplate any process for meeting and conferring about the potential application of the Court's ruling on initial Rule 12 Motions to other actions within this MDL. Such provisions are necessary for the development of a streamlined and efficient approach to Rule 12 motion practice that prevents unnecessary motion practice from being brought to the Court. It is not desirable for the parties or for the Court to brief Rule 12 Motions in all cases in all states simultaneously (or at all) and such a process would be entirely contrary to the purposes underlying an MDL.

### E.     ESI Protocol

Plaintiffs urge for the Court to set the deadline for the submission of a joint electronically stored information ("ESI") protocol, or for competing protocols, as January 30, 2024 - - just 4 days before the February 2, 2024 deadline in the JCCP. That makes no sense. The date should be the same in both the JCCP and the MDL, and that is what Uber has proposed: February 2, 2024.

## IV.     CONCLUSION

For the foregoing reasons, the Court should adopt Uber's proposed schedule regarding

DEFENDANTS' STATEMENT IN SUPPORT OF
ITS PROPOSED PRETRIAL ORDER RE       - 8 -       CASE NO. 3:23-MD-03084-CRB
DISCOVERY AND INITIAL MOTIONS

discovery and initial motions.

DATED: December 21, 2023

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:    */s/ Randall S. Luskey*
      RANDALL S. LUSKEY
      ROBERT ATKINS

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC