ROBERT ATKINS (*Admitted Pro Hac Vice*)
 ratkins@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3183
Facsimile: (212) 492-0183

RANDALL S. LUSKEY (SBN: 240915)
 rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.; RASIER, LLC;
and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-3084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PTO NO. 2 AND TO COMPEL DEFENDANTS TO PRODUCE LITIGATION HOLD AND PRESERVATION INFORMATION**<br><br>Judge:     Honorable Lisa J. Cisneros<br>Date:       January 4, 2024<br>Time:      1:30 PM<br>Courtroom: G – 15th Floor |

# **TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................................................... ii

I.   Summary of Argument ..................................................................................................1

II.  Uber's Preservation Measures Fully Comply With Pretrial Order No. 2 ............................1

    A.   Uber Has Taken Comprehensive Steps to Preserve Evidence.................................4

    B.   Uber Provided and Agreed to Provide Plaintiffs with Substantial Information Regarding its Preservation Efforts.......................................................5

    C.   The Meet and Confer Process ..................................................................................7

III. Plaintiffs Are Trying to Change, not "Enforce," Pretrial Order No. 2 .................................7

IV.  Plaintiffs' Request Is Not Supported By Applicable Law .....................................................9

    A.   Uber is Not Required by Law to Disclose Additional Details Regarding Its Preservation Efforts and Litigation Holds ................................................................9

    B.   There is No Legal Basis to Require Uber to Completely Suspend its Document Retention Policies.....................................................................................10

V.   Conclusion ................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*United States* v. *$40,955.00 in U.S. Currency*,
   554 F.3d 752 (9th Cir. 2009) ..................................................................................................11

*Apple Inc.* v. *Samsung Elecs. Co.*,
   881 F. Supp. 2d 1132 (N.D. Cal. 2012) ..................................................................................10

*Apple Inc.* v. *Samsung Elecs Co., Ltd*,
   888 F. Supp. 2d 976 (N.D. Cal. 2012) ..............................................................................10, 12

*Arthur Andersen LLP* v. *U.S.*,
   544 U.S. 696 (2005) ................................................................................................................11

*Complete Ent. Res. LLC* v. *Live Nation Ent., Inc.*,
   2016 WL 11785092 (C.D. Cal. Nov. 10, 2016) .....................................................................10

*In Re eBay Seller Antitrust Litig.*,
   2007 WL 2852364 (N.D. Cal. Oct. 2, 2007) ............................................................................9

*Oracle Am., Inc.* v. *Hewlett Packard Enter. Co.*,
   328 F.R.D. 543 (N.D. Cal. 2018) ............................................................................................10

*Shenwick* v. *Twitter, Inc.*,
   2018 WL 833085 (N.D. Cal. Feb. 7, 2018) .........................................................................9, 10

*Starline Windows Inc.* v. *Quanex Building Prods. Corp.*,
   2016 WL 4485568 (S.D. Cal. Aug. 19, 2016) .........................................................................11

*In the Matter of Uber Techs., Inc.*,
   C-1523054 (F.T.C. 2018) ........................................................................................................14

*In re: Uber Techs. Inc., Passenger Sexual Assault Litig.*,
   3:23-md-03084-CRB (Nov. 3, 2023) ........................................................................................1

*WeRide Corp.* v. *Kun Huang*,
   2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ........................................................................12

**Statutes**

Cal. Civ. Code § 1798.100(a)(3) ....................................................................................................13

California Consumer Privacy Act of 2018 .....................................................................................13

**Other Authorities**

European Commission, Principles of the GDPR, *For how long can data be kept and is it necessary to update it?*, https://commission.europa.eu/law/law-topic/data-protection/reform/rules-business-and-organisations/principles-gdpr/how-long-can-data-be-kept-and-it-necessary-update-it_en (last visited Dec. 22, 2023) ........................13

Fed. R. Civ. P. 26(b)(1) ........................................................................................................... 11

Federal Rule of Civil Procedure 37(e) ..................................................................................... 11

*Meet and Confer Regarding Electronically Stored Information*,
     United States District Court Northern District of California,
     https://www.cand.uscourts.gov/filelibrary/1118/ESI_Checklist-12-1-2015.pdf .................. 6, 9

*Northern District of California Guidelines for the Discovery of ESI*,
     https://www.cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-
     2015.pdf .............................................................................................................................. 11

Sedona Conference, *Commentary on Information Governance, Second Edition*, 20
     Sedona Conf. J. 95, 139 (2019) .......................................................................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

**I.  Summary of Argument**

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully oppose Plaintiffs' "motion to enforce Pretrial Order No. 2 and to compel Defendants to produce certain litigation hold and preservation information." Put simply, there is no deficiency in Uber's preservation efforts or its compliance with Pretrial Order No. 2. Uber has met its obligations under Pretrial Order No. 2 and applicable law and has continuously made itself available to meet and confer with Plaintiffs. Nevertheless, what Plaintiffs now ask this Court to do is not to "enforce" Pretrial Order No. 2, but to force <u>an entirely new set of obligations on Uber</u>, none of which are contained in the Order or required or supported by any applicable law.

Plaintiffs have failed to make any showing that the drastic relief they seek - - the wholesale suspension of all ordinary course document destruction company-wide - - is appropriate. Plaintiffs cite no precedent to support their argument that "[t]he only way to ensure appropriate evidence preservation is for Uber to suspend" its retention policies to allow Plaintiffs to vet Uber's preservation efforts. Plaintiffs' Motion to Enforce Pretrial Order No. 2 ("Mot.") at 6. This is no surprise. Plaintiffs' position finds no support in the relevant law and is contrary to well-recognized discovery principles. As Judge Breyer recently observed, companies must have "[s]ome system for preserving ***and discarding*** documents." Transcript of Status Conf 38:19–24, *In re: Uber Techs. Inc., Passenger Sexual Assault Litig.*, 3:23-md-03084-CRB (Nov. 3, 2023) ("Status Conference Tr.") (emphasis added).

Plaintiffs' request is outside the bounds of typical discovery, entirely disproportionate to the needs of the case, and not substantiated by any evidence that Uber has fallen short of its preservation obligations. To our knowledge, the relief they seek from this Court is, simply put, unprecedented. *See* Declaration of Philip Favro ("Favro Decl.") ¶ 14. Plaintiffs' wholly baseless attempt to expand the scope of Pretrial Order No. 2 should be denied.

**II.  Uber's Preservation Measures Fully Comply With Pretrial Order No. 2**

Uber takes seriously its obligation to preserve potentially relevant evidence in this litigation. Accordingly, Uber has taken extensive steps to ensure that potentially relevant

information is preserved and, therefore, excluded from any automatic deletion that occurs in the ordinary course of business under Uber's document retention policies. *See* Declaration of William Anderson in Support of Uber's Opposition ("Anderson Decl.") ¶¶ 7-9; *see also* Favro Dec. ¶ 15. Plaintiffs bring this motion for the purpose of portraying Uber in a bad light before discovery even begins, and without regard for the facts. In so doing, Plaintiffs' motion misrepresents Uber's preservation efforts and Uber's disclosures to Plaintiffs' Liaison Counsel about such efforts. Moreover, Plaintiffs misconstrue Pretrial Order No. 2, which does not require the extraordinary and unprecedented relief they seek.

Pretrial Order No. 2 is a clear "interim measure" that leaves no room for interpretation. It requires the parties to meet five straightforward obligations: (1) the parties shall not "destroy any information subject to discovery within their control"; (2) the parties shall "take reasonable steps to preserve all evidence that may be relevant"; (3) the parties "must confirm, by way of notice to opposing counsel, that they are preserving" all potentially relevant information "from all sources"; (4) Uber's custodians must be "broadly identified"; and (5) Uber shall "implement a litigation hold that covers the company and vendors." Pretrial Order No. 2: Preliminary Order on the Preservation of Information That May Be Relevant To This Litigation ("PTO No. 2") at 1-3.

Uber has met each one of these obligations. Moreover, Uber has committed to doing more beyond the Order. Uber's compliance is set forth in the following table and described in more detail below:

| PTO No. 2 Requirement | Uber's Actions to Satisfy Requirement |
|---|---|
| 1. "No party shall destroy any information subject to discovery within their control without applying to this Court." | • Uber issued legal holds to 5,500 current and former employees across the business in connection with this specific litigation. The employees on hold go well beyond those who work on sexual assault and misconduct claims. These legal holds provide an exception to any automatic deletion policies.<br><br>• In total, there are approximately 15,700 current and former employees subject to legal holds, including the hold for this matter. These legal holds provide an exception to any automatic deletion policies. |

| PTO No. 2 Requirement | Uber's Actions to Satisfy Requirement |
|---|---|
| 2. "Each party shall take reasonable steps to preserve all evidence that may be relevant to this litigation." | • Uber issued legal holds to 5,500 current and former employees across the business in connection with this specific litigation. The employees on hold go well beyond those who work on sexual assault and misconduct claims. These legal holds provide an exception to any automatic deletion policies.<br><br>• In total, there are approximately 15,700 current and former employees subject to legal holds, including the hold for this matter. These legal holds provide an exception to any automatic deletion policies |
| 3. "The parties must confirm, by way of notice to opposing counsel, that they are preserving all information that may be relevant to this litigation from all sources…" | • In multiple meet and confers and correspondence, Uber confirmed to Plaintiffs' Liaison Counsel the steps it has taken to preserve potentially relevant information.<br><br>• Uber also agreed to provide, upon the entry of a protective order, detailed information about Uber's ESI and communications systems, document preservation policies and procedures, deposition transcripts from Uber's person most qualified, and information about specific relevant custodians that has been provided to plaintiffs in the JCCP Proceeding. |
| 4. "Defendants' custodians must be broadly identified and not limited to those who work on sexual assault or sexual misconduct issues." | • Uber issued legal holds to 5,500 current and former employees across the business in connection with this specific litigation. The employees on hold go well beyond those who work on sexual assault and misconduct claims. These legal holds provide an exception to any automatic deletion policies.<br><br>• In total, there are approximately 15,700 current and former employees subject to legal holds, including the hold for this matter. These legal holds provide an exception to any automatic deletion policies.<br><br>• Uber agreed to provide the job titles of all of the custodians subject to Uber's legal holds.<br><br>• Uber agreed to provide the names and job titles of the 100+ potential document custodians that are being negotiated between Uber and the JCCP Plaintiffs. |

| PTO No. 2 Requirement | Uber's Actions to Satisfy Requirement |
|---|---|
| 5. "Defendants shall implement a litigation hold that covers the company and vendors." | • Uber issued legal holds to 5,500 current and former employees across the business in connection with this specific litigation. The employees on hold go well beyond those who work on sexual assault and misconduct claims. These legal holds provide an exception to any automatic deletion policies.<br><br>• In total, there are approximately 15,700 current and former employees subject to legal holds, including the hold for this matter. These legal holds provide an exception to any automatic deletion policies. |

A.  Uber Has Taken Comprehensive Steps to Preserve Evidence

First, as a preliminary matter, Uber does not have a "company-wide destruction policy." What Uber does have is a series of policies related to the retention and automatic deletion of different sources of electronic data. Anderson Decl. ¶ 3. Under Uber's current email retention policy, for example, emails are automatically retained for 24 months. *Id.* ¶ 4.[1] Under Uber's retention policy for Google Drive, a document storage platform, documents are ***not automatically deleted at any point in time***. *Id.* ¶ 5. There are other policies in place that provide for the automatic retention of other electronic data sources for services used by Uber employees, such as Slack (messaging) and Box (cloud data storage).

Second, under all of these policies, there is an exception to automatic deletion. The exception applies to any employee who is subject to a legal hold. *Id.* ¶ 7. When a legal hold is in place, Uber's system automatically preserves that custodian's electronic materials. *Id.* ¶ 8.[2] Uber's legal holds are not subject matter specific. *Id.* This means that when a custodian is placed on a legal hold, that custodian's electronic materials are preserved regardless of the subject matter of

---

[1] The 24-month retention of emails has been in place since January 2023. Prior to that, emails were retained for at least 6 months. Anderson Decl. ¶ 4. Under all applicable policies, legal holds provided an exception to automatic deletion. *Id.* ¶ 7.

[2] Uber's legal hold technology overrides any automated time-based deletion with respect to the primary sources of electronic data that custodians in this case are likely to use: Google Workspace (including Gmail), Box, and Slack. *See id.* ¶¶ 6-7.

the litigation. *Id.* This is not a discretionary situation in which Uber or its counsel picks and chooses which electronic documents in an individual custodian's files to preserve and which to delete. Rather, the automatic process is an objective one.

Uber has placed 5,500 current and former employees who have been identified as holding potentially relevant information on legal holds specific to this litigation. *Id.* ¶ 9. In total, there are 15,700 current and former employees at Uber who are subject to legal holds, including the hold for this matter. *Id.*. The thousands of current and former employees identified as custodians conceivably having relevant information in this litigation were designated based on a liberal reading of Plaintiffs' allegations against Uber - - *i.e.*, Uber did not attempt to draw fine lines to exempt custodians from the hold. Instead, Uber reasonably and broadly identified its custodians in an effort to be overinclusive, out of an abundance of caution for preserving potentially relevant information.[3] The employees on hold go well beyond those who work on sexual assault and misconduct claims.

Plaintiffs are aware of this system and Uber's efforts. Uber repeatedly informed Plaintiffs that it is not destroying potentially relevant evidence and Uber has suspended the automatic deletion feature of its document retention policies for 5,500 additional custodians with potentially relevant information in this litigation. Declaration of Roopal P. Luhana in Support of Pls.' Motion to Enforce ("Luhana Decl.") Ex. A at 2; Ex. B.

B. <u>Uber Provided and Agreed to Provide Plaintiffs with Substantial Information Regarding its Preservation Efforts</u>

Contrary to the false impression created by Plaintiffs, Uber previously offered Plaintiffs a substantial amount of information about the document preservation efforts already underway. For each of the approximately 15,700 custodians subject to a legal hold, Uber will provide a list of job titles - - as recommended by the Northern District of California's Checklist for Rule 26(f) Meet

---

[3] To be clear, Uber has placed legal holds on these additional 5,500 individuals out of an abundance of caution. But it does not believe that all, or anywhere near, this number of individuals will be appropriate as bona fide custodians as this litigation progresses.

- 5 -
UBER'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PTO NO. 2          3:23-md-3084-CRB

and Confer Regarding Electronically Stored Information.[4] This will occur as soon as the protective order is entered - - which is set to happen imminently - - to ensure this confidential and sensitive information is appropriately protected. *See* Luhana Decl. Ex. D. In addition, Uber informed Plaintiffs' Liaison Counsel that in the JCCP Proceeding, it identified a broad class of document custodians, including company managers and executives in charge of implementing safety precautions and technologies to protect riders, as well as company managers and executives who, for example, evaluate and analyze riders complaints about drivers, interface with law enforcement, and develop policies for vetting drivers or responding to rider complaints about drivers. Luhana Decl. Ex. A at 1-2. Further, Uber will provide Plaintiffs' Liaison Counsel the names of the approximately three-dozen provisionally agreed upon document custodians in the JCCP Proceeding, as well as another approximately 100 individuals who the JCCP Plaintiffs proposed as document custodians and who are still being discussed as possible document custodians in the JCCP Proceeding.

Uber also agreed to provide extensive information regarding Uber's ESI and custodial files, upon entry of a protective order. This information, which already is available to Plaintiffs in the JCCP (under a protective order), will include: (a) the deposition transcript of Uber's person most qualified to testify on topics such as how and where Uber stores and/or maintains electronic information related to sexual assault and sexual misconduct; (b) the communication platforms used by Uber; the electronic platforms, programs, databases, and information technology systems Uber uses and has used historically; and (c) Uber's document/ESI preservation policies and procedures. Luhana Decl. Ex. A at 2.

---

[4] *See Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information*, United States District Court Northern District of California, https://www.cand.uscourts.gov/filelibrary/1118/ESI_Checklist-12-1-2015.pdf. ("The names ***and/or*** general job titles or descriptions of custodians for whom ESI will be preserved") (emphasis added).

C.   The Meet and Confer Process

Uber has been actively engaged in numerous telephonic meet and confer conferences with Plaintiffs' Liaison Counsel, plus several exchanges of letters and emails.[5]  Not only has Uber conveyed to Plaintiffs all of the above steps it is taking to preserve potentially relevant evidence, it has made it abundantly clear that Uber remains available to continue discussing preservation with Plaintiffs.  However, rather than continuing to meet and confer, Plaintiffs rushed to court with unsupported conjecture that "it is ***plausible*** that relevant ESI is being destroyed [by Uber] every day."  Mot. at 3.  Many things are "plausible," but for Plaintiffs to obtain relief - - particularly the drastic and unprecedented relief they seek here - - they should be required to show that there is an actual, or at least likely, deficiency in Uber's preservation efforts and compliance with Pretrial Order No. 2.  Here, they have not done so.  Plaintiffs failed to make such a showing because they cannot make such a showing.

**III.   Plaintiffs Are Trying to Change, not "Enforce," Pretrial Order No. 2**

Plaintiffs' motion does not seek to "enforce" Pretrial Order No. 2, but to force Uber to undertake an entirely new set of obligations not contained in the Order.

*First*, Plaintiffs have manufactured a requirement that does not exist in Pretrial Order No. 2.  The disclosure obligations that are actually contained in Pretrial Order No. 2 are that Uber must: (1) "confirm, by way of notice to opposing counsel," that it is meeting its preservation obligations; and (2) "broadly identify" its custodians to Plaintiffs' counsel.  PTO No. 2 at 2.  As described above, Uber met, and continues to meet, both of these requirements.  However, Plaintiffs wrongly insist Uber must also specify "what litigation or claim the holds relate to, the dates of issue, the

---

[5] As Plaintiffs themselves put into the record, the parties met and conferred to discuss these issues on several occasions: November 17, 2023 (*see* Luhana Decl. Ex. A at 1) December 11, 2023 (*see* Luhana Decl. Ex. D), and December 13, 2023 (*see* Luhana Decl. Ex. B).  The parties further exchanged formal letters on November 22, 2023 and December 1, 2023 (*see* Luhana Decl. Ex. A; Ex. C), and sent additional correspondence in between (*see* Luhana Decl. Ex. B; Ex. D).  As those exchanges reveal, Uber repeatedly made offers to further confer on the issues and agreed to provide plaintiffs additional information beyond that which it is obligated to.  Further still, Uber also met and conferred on these same issues with the JCCP plaintiffs - - represented by many of the same counsel representing Plaintiffs here - - and reported on those efforts to Judge Schulman in an informal discovery conference on December 7, 2023.

dates of preserved ESI, and the names, job titles, and dates of employment of the recipients of the hold notices." Mot. at 7. None of this is required by Pretrial Order No. 2. Nor is Plaintiffs' demand that Uber be compelled to "provide[] Plaintiffs with sufficient assurance that it is meeting its [preservation] obligations" and to engage in a "meet and confer process" to provide Plaintiffs with such assurances.[6] Mot. at 3.

*Second*, Plaintiffs contend Uber's continued use of document retention policies violates Pretrial Order No. 2 and applicable law. It does not. Nowhere does Pretrial Order No. 2 impose on Uber an obligation to suspend its document retention policies for *all* documents. Any suggestion that Uber completely upend its ordinary document retention policies runs counter to this Court's stated intent not to interfere with "how [the Parties] preserve documents." Status Conference Tr. 39:10–14. Instead, Pretrial Order No. 2 requires Uber to preserve, and not destroy, "all evidence ***that may be relevant to this litigation***." PTO No. 2 at 2 (emphasis added). In describing the intended scope of the Pretrial Order, this Court explained at the November 3, 2023 Status Conference that the Order would instruct both parties to "preserve any and all documentation ***that might be relevant to all of the issues that have been raised***." Status Conference Tr. 39:2–6 (emphasis added). Uber has issued legal holds to many thousands of employees who may conceivably have documents that are potentially relevant to this litigation. Anderson Decl. ¶ 9. Those legal holds prevent any documents held by those custodians from being deleted, notwithstanding any automatic deletion that would otherwise occur under Uber's retention policies.[7] *Id.* ¶ 7. Pretrial Order No. 2 does not require anything more.

---

[6] There is no default meet and confer process contemplated by Pretrial Order No. 2. The only meet and confer obligation contained in the order relates to the procedure for either party to seek permission from Magistrate Judge Cisneros "for leave to destroy information that may be relevant to the litigation." PTO No. 2 at 3. Uber does not seek leave to destroy potentially relevant information, and therefore has no obligation to meet and confer with Plaintiffs. Uber has nevertheless made itself available to meet and confer with Plaintiffs regarding preservation.

[7] Plaintiffs make much of Uber's retention policies prior to January 2023, but those policies are irrelevant to the outcome of this motion. For one, those policies were not in place when Pretrial Order No. 2 was ordered, when this MDL was created, or even when Plaintiffs' filed their complaints in federal court. Moreover, under those policies (like the one in place now), legal holds created an exception to any ordinary course document destruction. Anderson Decl. ¶ 7.

Because Plaintiffs seek preservation disclosures well beyond what is required under Pretrial Order No. 2, Plaintiff's motion to change Judge Breyer's order - - mischaracterized as a "motion to enforce" - - should be denied.

### IV. Plaintiffs' Request Is Not Supported By Applicable Law

Plaintiffs also ask this Court to impose on Uber preservation obligations that are outside the scope of applicable law.

### A. Uber is Not Required by Law to Disclose Additional Details Regarding Its Preservation Efforts and Litigation Holds

As authority for the claim that Uber must provide more information regarding its litigation holds, Plaintiffs cite the Northern District of California's "Rule 26(f) Checklist" regarding ESI. Mot. at 5. Plaintiffs' reliance on this checklist is flawed for several reasons. *First*, this action has not yet proceeded to Rule 26(f) disclosures. Pretrial Order No. 2 is an "interim" order intended "to ensure the preservation of all documents and ESI that may be discoverable in relation to any of the issues in this litigation." PTO No. 2 at 1. It is not intended to accelerate the process of exchanging information to the Rule 26(f) phase. *Second*, the checklist clearly states that it is meant only to "***guide***" meet and confer discussions regarding Rule 26(f); it does not create mandatory obligations for parties to disclose specific information regarding preservation. Northern District of California Rule 26(f) Checklist regarding ESI, https://www.cand.uscourts.gov/filelibrary/1118/ESI_Checklist-12-1-2015.pdf. *Third*, Uber already met and conferred with Plaintiffs' Liaison Counsel about *every* item in the "Preservation" section on which Plaintiffs rely. In fact, the checklist plainly states that parties may provide "the names ***and/or*** general job titles or descriptions of custodians for whom ESI will be preserved." *Id.* (emphasis added); *see also* Mot. at 5. Thus, Uber has done exactly what is contemplated by the checklist.

What is more, Plaintiffs wrongly suggest that the "basic details" they seek "do[] not implicate any privilege." Mot. at 5. Litigation holds are generally subject to privilege protections, something Plaintiffs acknowledge in their motion. *In Re eBay Seller Antitrust Litig.*, 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007); *Shenwick* v. *Twitter, Inc.*, 2018 WL 833085, *4 (N.D. Cal. Feb. 7, 2018). But Plaintiffs fail to appreciate that those protections extend to "*any*

*information about matters contained*" within the litigation holds, including how the holds "were worded" or "how they described the legal issues." *In Re eBay*, 2018 WL 833085, at *4 (emphasis added). What Plaintiffs request is plainly privileged: "what litigation or claim [Uber's] holds relate to, the dates of issue, [and] the dates of preserved ESI." Mot. at 4, 7. The privilege cannot be disregarded simply because Plaintiffs claim, with no basis in fact, to be concerned about document preservation. *Shenwick*, 2018 WL 833085, at *4 ("Any concerns that Plaintiffs have about spoliation can be addressed through means other than forcing Defendants to reveal attorney-client privileged documents or documents protected the work product doctrine.").

### B. There is No Legal Basis to Require Uber to Completely Suspend its Document Retention Policies

Uber has no obligation under applicable law to suspend its document retention policies until Plaintiffs feel "sufficient[ly] assur[ed]" that it is meeting its preservation obligations. Mot. at 3. The duty to preserve relevant evidence arises when a party has notice that the evidence might be relevant to a "reasonably foreseeable" future litigation. *Oracle Am., Inc.* v. *Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549-550 (N.D. Cal. 2018). This duty "includes an obligation to identify, locate and maintain, information that is relevant to specific, predictable, and identifiable litigation." *Apple Inc.* v. *Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012). "It is well-established that the duty pertains only to relevant documents." *Id*. Plaintiffs cherry pick language from *Apple Inc.* v. *Samsung Elecs Co., Ltd*, 888 F. Supp. 2d 976 (N.D. Cal. 2012) to suggest that corporate parties must "suspend **any** existing policies related to deleting or destroying files" when faced with litigation. *Id.* at 991 (citations omitted) (emphasis added). What Plaintiffs omit is that the full quote provides that parties are required only to "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *Id.*

A corporate party therefore need not preserve *all company-wide data*, but instead must preserve documents held by "those employees likely to have relevant information – the 'key players' in the case." *Apple Inc.*, 881 F. Supp. 2d at 1137 (quoting *Zubulake* v. *UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)); *see also Complete Ent. Res. LLC* v. *Live Nation Ent.,*

*Inc.*, 2016 WL 11785092, at *2 (C.D. Cal. Nov. 10, 2016). This comports with the principle that discovery - - including preservation - - must be proportional to the litigation. It is simply "unreasonable to expect parties to take every conceivable step or disproportionate steps to preserve each instance of relevant electronically stored information." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 93 (2018); *see* Favro Decl. ¶ 10.[8] Accordingly, "[w]hether preservation. . . is acceptable in a case depends on what is reasonable, and that in turn depends on whether what was done - - or not done - - was proportional to that case . . . ." *See Starline Windows Inc.* v. *Quanex Building Prods. Corp.*, 2016 WL 4485568, at *9 (S.D. Cal. Aug. 19, 2016) (citing *Victor Stanley, Inc.* v. *Creative Pipe Inc.*, 269 F.R.D. 497, 522 (D. Md. 2010)). In fact, the 2015 committee note to Federal Rule of Civil Procedure 37(e) urges courts to safeguard preserving parties against "aggressive preservation efforts." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment; *see also* Favro Decl. ¶ 11.

It is not the case, as Plaintiffs suggest, that there is something unusual (let alone untoward) about company policies that allow for the disposal of documents in the ordinary course that are not subject to a legal hold. *Arthur Andersen LLP* v. *U.S.*, 544 U.S. 696, 704 (2005); *see also United States* v. *$40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) ("A party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business.") There are many legitimate purposes underlying the establishment of information retention policies. Favro Decl. ¶ 17. As this Court observed at the November 3, 2023 Status Conference, companies need to have "some system for preserving **and discarding** documents." Status Conference Tr. 38:19–24 (emphasis added). That position is well supported by The Sedona Conference: "It is a sound strategic objective of an organization to dispose of information that no longer provides value to

---

[8] *See also Northern District of California Guidelines for the Discovery of ESI*, https://www.cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf ("[T]he "proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) should be applied to the discovery plan and its elements, including . . . preservation").

the organization, if that information is not required for statutory or regulatory compliance or legal hold purposes." The Sedona Conference, *Commentary on Information Governance, Second Edition*, 20 Sedona Conf. J. 95, 139 (2019). The Commentary goes further still, stating that "If there is no statutory, regulatory, or preservation obligation, information *should be disposed of* as soon as the likely business value of retaining the information is outweighed by the cost and risk of retaining the information." *Id.* at 140 (emphasis added).

Plaintiffs claim there is an "urgent problem" because Uber is "currently destroying ESI," and "[t]he only way to ensure appropriate preservation is for Uber to suspend" automatic deletion entirely for some undefined period of time. Mot. at 6. But Plaintiffs cite no precedent to support its request for this improper and disproportionate (and punitive) measure. Instead, Plaintiffs cite two cases - - *WeRide* and *Apple* - - both of which involve extreme conduct for which parties were sanctioned *after* it became clear that they had intentionally and willfully spoliated evidence. *WeRide Corp.* v. *Kun Huang*, 2020 WL 1967209, at *3 (N.D. Cal. Apr. 24, 2020); *Apple Inc.*, 888 F. Supp. 2d at 982. [9] Those cases do *not* stand for the proposition that a company must preserve *every* document to and from *every* employee, relevant or not, based on the other party's baseless and unsubstantiated concerns. We know of no such case law, and have not found one case where the court ordered such a broad and unrestrained order on ESI data preservation. *See* Favro Decl. ¶ 14.

Not only is Plaintiffs' demand for a company-wide suspension of the document retention policy unsupported by the law, but Plaintiffs discount completely the effort, burden, and potential

---

[9] Among the many facts that distinguish those cases from this one - - and were critical to the courts' analyses in those cases - - was the Defendants' continued use of their company-wide automatic deletion policies without any mechanisms to accommodate custodial legal holds. *See WeRide*, 2020 WL 1967209, at *3 (highlighting that the "auto-deletion setting remained in place" during the relevant period such that "nearly *all emails* sent over" the defendant's servers "were destroyed") (emphasis added); *Apple Inc.*, 888 F. Supp. 2d 976, 992 ("Although Samsung did make some efforts to preserve documents, such as by sending out litigation hold notices … 'Samsung to this day has not suspended its email system's biweekly destruction policy, *even as to key custodians*'") (emphasis added). Uber's document retention policies are thus distinguishable from the problematic processes at the center of *WeRide* and *Apple* because (among other things) they do not apply to individuals placed on legal holds.

legal risk complying with such a request would impose. In so doing, they further minimize the disproportionality of their demand that seeks to expand this Court's Order.

Before implementing a company-wide policy, Uber would need to evaluate the extent to which doing so would create cyber security and information security risks for the company and any user information it holds. *See id.* ¶ 18. Given the numerous cyber attacks on major companies that have resulted in improper public disclosure of private emails and other proprietary information, Uber has credible concerns about the need to balance document retention with cyber security. *Id.* Relatedly, Uber would need to assess the vast number of data privacy laws, regulatory controls, and other legal obligations Uber is bound by, many of which are specifically designed to prevent improper disclosure of consumer data and other sensitive information. *Id.* By way of example, Plaintiffs' request would require Uber to retain indefinitely user information and data Uber collects as part of its ordinary business. Uber would need to determine whether it could do so consistent with its obligations under the California Consumer Privacy Act of 2018, *see* Cal. Civ. Code § 1798.100(a)(3) ("a business shall not retain a consumer's personal information or sensitive personal information for each disclosed purpose for which the personal information was collected *for longer than is reasonably necessary* for that disclosed purpose") (emphasis added), or the European Union General Data Protection Regulation ("GDPR"), *see* European Commission, Principles of the GDPR, *For how long can data be kept and is it necessary to update it?*, https://commission.europa.eu/law/law-topic/data-protection/reform/rules-business-and-organisations/principles-gdpr/how-long-can-data-be-kept-and-it-necessary-update-it_en (last visited Dec. 22, 2023) ("Data must be stored for the **shortest time possible**") (emphasis in original), among many other data privacy regimes. *See* Favro Dec. ¶ 13; 19.

The Federal Trade Commission also recommend that organizations practice data minimization in order to reduce the risk and impact of data breaches and other improper disclosure of data. *See* Favro Dec. ¶ 18 (discussing FTC's recommendations that organizations engage in "data minimization."). In fact, before implementing a company-wide suspension of its retention policies, Uber would also need to determine what the company-wide halt would spell for its obligations under its FTC Consent Decree, which requires Uber to take measures to protect the

1  privacy of its users' information.  *See* Decision and Order, *In the Matter of Uber Techs., Inc.*, C-
2  1523054 (F.T.C. 2018).

3  Such examples not only further underscore the propriety - - indeed the benefit of - - data retention policies, but also the efforts involved just to determine the legal consequences that would result from complying with Plaintiffs' unwarranted demands.  And the ultimate outcome of those efforts might be to place Uber in the untenable position of creating additional legal exposure for itself.  That cannot be correct.  Neither the law, common sense, nor Pretrial Order No. 2 supports such disproportionate measures.

### V. Conclusion

This Court should deny Plaintiffs' motion because neither Pretrial Order No. 2 nor applicable law requires Uber to suspend its document retention policy or provide Plaintiffs the information they demand.

DATED:  December 22, 2022

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:  /s/ *Randall S. Luskey*
RANDALL S. LUSKEY
ROBERT ATKINS

*Attorney for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC