1  ROBERT ATKINS (*Admitted Pro Hac Vice*)
       ratkins@paulweiss.com
2  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
3  1285 Avenue of the Americas
4  New York, NY 10019
   Telephone: (212) 373-3183
5  Facsimile: (212) 492-0183

6  RANDALL S. LUSKEY (SBN: 240915)
       rluskey@paulweiss.com
7  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
8  535 Mission Street, 24th Floor
9  San Francisco, CA 94105
   Telephone: (628) 432-5100
10 Facsimile: (628) 232-3101

11 *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.; RASIER, LLC; and
12 RASIER-CA, LLC

13

14            **UNITED STATES DISTRICT COURT**

15           **NORTHERN DISTRICT OF CALIFORNIA**

16              **SAN FRANCISCO DIVISION**

17

18 | IN RE: UBER TECHNOLOGIES, INC. | 3:23-MD-3084-CRB
   | PASSENGER SEXUAL ASSAULT |
19 | LITIGATION | **DECLARATION OF PHILIP FAVRO IN**
   | | **SUPPORT OF DEFENDANTS UBER**
20 | | **TECHNOLOGIES, INC., RASIER, LLC, AND**
   | _____ | **RASIER-CA, LLC'S OPPOSITION TO**
21 | | **PLAINTIFFS' MOTION TO ENFORCE PTO**
   | This Document Relates to: | **NO. 2 AND TO COMPEL DEFENDANTS TO**
22 | | **PRODUCE LITIGATION HOLD AND**
   | ALL ACTIONS | **PRESERVATION INFORMATION**
23 |

24 | | Judge: Honorable Lisa J. Cisneros
   | | Date:   January 4, 2024
25 | | Time:  1:30 PM
   | | Courtroom:  G – 15th Floor
26 |

27

28
                              - 1 -
                                                    3:23-MD-3084-CRB

I, Philip J. Favro, declare pursuant to 28 U.S.C. § 1746:

1.     I am over the age of 18 and a resident of the State of Utah. I submit the instant declaration in support of Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's (collectively "Uber") Opposition to Plaintiffs' Motion to Enforce PTO No. 2 and to Compel Defendants to Produce Litigation Hold and Preservation Information ("Motion").

## I.   CREDENTIALS

2.     I am a Principal Consultant for Innovative Driven, an international electronic discovery consulting firm. I am also an attorney licensed to practice law in the States of California (1999) and Utah (2011). If called to do so, I could and would competently testify to the statements and opinions in this declaration. My Curriculum Vitae is attached hereto as Exhibit "A."

3.     I am a nationally recognized expert in the field of electronic discovery. My expertise has qualified me to serve as a court-appointed special master on issues relating to electronic discovery and electronically stored information ("ESI"). In my role as a special master, courts have tasked me with (among other things) addressing issues regarding ESI preservation and spoliation, up to and including (but not limited to) the preparation of reports and recommendations on ESI spoliation.

4.     As an expert on ESI and electronic discovery, I regularly provide training to judges on these subjects, including preservation and spoliation issues. Over the last three years, I have provided six training sessions to audiences of U.S. District Judges and/or U.S. Magistrate Judges on ESI preservation and spoliation issues and have emphasized the nature and scope of parties' common law duty to preserve relevant ESI.

5.     Beyond these roles, I offer expert testimony and consulting services in the areas of data preservation practices, litigation holds, data collection strategies, search methodologies for ESI, security and privacy considerations regarding discovery of ESI, and protocols regarding the preservation, identification, and production of relevant ESI. I am one of the field's leading scholars on issues relating to the discovery process and the confluence of litigation and technology. Federal and state courts and academic journals have cited my articles.

3:23-MD-3084-CRB

DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO ENFORCE PTO NO. 2 AND TO COMPEL DEFENDANTS
TO PRODUCE LITIGATION HOLD AND PRESERVATION INFORMATION

6.      I belong to The Sedona Conference, have served as a member of the Steering Committee for Working Group One (Electronic Document Retention and Production), and continue to be an active participant in the organization. The Sedona Conference is the preeminent legal institution dedicated to advancing thoughtful reforms on important legal issues. The organization is best known for its work on electronic discovery. The authoritative resources it prepares—many of which I have helped to develop—are regularly cited by courts throughout the nation as instructive on issues relating to electronic discovery including, but not limited to, the nature and scope of litigants' common law duty to preserve relevant ESI.

## II.   PURPOSES AND SUMMARY OF DECLARATION TESTIMONY

7.      I have been engaged by Uber to offer the instant declaration in connection with the Motion. In connection with preparing this Declaration, I have reviewed the following documents: The Motion, Plaintiffs' Notice of Motion, and related exhibits.

8.      The purpose of my declaration is to provide the Court with contextual understanding regarding: (1) The nature of electronic discovery standards; (2) the best practices for preserving relevant ESI; and (3) why Plaintiffs' request that Uber "suspend its company-wide document destruction policy," ostensibly to preserve relevant information, is contrary to those standards and practices. To provide additional context on these issues, I also describe in this declaration the purposes underlying organizations' implementation of corporate information retention policies.

9.      It is my opinion—based on my collective experience dealing with ESI as a court-appointed special master, legal counsel, expert witness, and an ESI and electronic discovery consultant—that ordering the suspension of a company-wide document retention policy or policies would be contrary to electronic discovery standards and best practices for preserving relevant ESI; would result in significant over-retention of irrelevant ESI; could cause Uber to violate its obligations under various U.S. state privacy laws, as well as the data protection and privacy laws of other regions and nation-states; and would not necessarily succeed in facilitating the preservation of relevant ESI for the above-captioned litigation.

DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO ENFORCE PTO NO. 2 AND TO COMPEL DEFENDANTS
TO PRODUCE LITIGATION HOLD AND PRESERVATION INFORMATION

1    **III.    ELECTRONIC DISCOVERY STANDARDS AND BEST PRACTICES FOR PRESERVING**
2    **RELEVANT ESI**

3    10.    The principle that organizations like Uber need to preserve potentially relevant

4    information, but not all information held by all employees, has been repeatedly endorsed by The

5    Sedona Conference in its authoritative guidance on electronic discovery. Principle 5 from *The*

6    *Sedona Principles* has adopted this concept in its entirety and counsels against requiring litigants

7    to preserve all ESI. *The Sedona Principles, Third Edition: Best Practices, Recommendations &*

8    *Principles for Addressing Electronic Document Production* ("*The Sedona Principles*"), 19

9    SEDONA CONF. J. 1, 108-112 (2018); *see generally* The Sedona Conference, *Commentary on*

10   *Ephemeral Messaging*, 22 SEDONA CONF. J. 435, 482-87 (2021); The Sedona Conference,

11   *Commentary on Legal Holds, Second Edition: The Trigger & The Process*, 20 SEDONA CONF. J.

12   341 (2019); The Sedona Conference, *Commentary on Proportionality in Electronic Discovery*, 18

13   SEDONA CONF. J. 141, 150-53 (2017).

14   11.    Upon the triggering of the duty to preserve, it is generally recognized by Rule 37(e),

15   case law, and The Sedona Conference that a litigant must take reasonable steps to preserve relevant

16   information. While the notion of "reasonable steps" is subject to interpretation in the context of

17   specific litigation and highly dependent on the facts and circumstances of a particular matter, the

18   2015 committee note to Rule 37(e) urges courts to safeguard preserving parties against "aggressive

19   preservation efforts." Disproportionate preservation efforts, as the committee note counsels, "can

20   be extremely costly," which I have observed to be the case due to the proliferation and exponential

21   growth of ESI. Proportionality considerations, which also factor into the preservation analysis per

22   the 2015 committee note and subsequent case law, indicate that a preserving party "may act

23   reasonably by choosing a less costly form of information preservation, if it is substantially as

24   effective as more costly forms." While there are many proportional methods that are less costly

25
26
27
28

3:23-MD-3084-CRB

DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO ENFORCE PTO NO. 2 AND TO COMPEL DEFENDANTS
TO PRODUCE LITIGATION HOLD AND PRESERVATION INFORMATION

than blanket measures such as suspending entire information retention policies, I have observed that one best practice that particularly stands out is the targeted method of disabling aspects of retention and destruction policies that only affect custodians on legal hold.

12. The Sedona Conference has also adopted these standards and advised against requiring companies from engaging in preservation efforts that are "heroic or unduly burdensome." *The Sedona Principles*, 19 SEDONA CONF. J. at 108-12. This is particularly the case for enterprises like Uber, which I understand maintains "an inventory of existing legal holds and know[s] whether information relevant to the claims and defenses in [the instant litigation are] already being preserved" in connection with its existing litigation portfolio. *Id*. at 99, 108. Because Uber is knowledgeable about the universe of relevant information already on legal hold due to other legal matters, The Sedona Conference charges companies like Uber under Sedona Principle 6 with the sole responsibility to determine what procedures and methodologies are best suited to preserve relevant ESI. *Id*. at 118-26.

13. Despite these clear standards regarding the requirement to preserve only relevant information and adopt reasonable steps to do so, I understand that Plaintiffs seek to acquire an order requiring Uber to suspend its enterprise email retention policy that affects *every* employee at the company throughout its global operations. My opinion is that such a request, without regard to custodians of relevant ESI or their involvement in the claims at issue in the instant litigation, is extraordinary and would encompass enormous volumes of irrelevant ESI. Given my familiarity with enterprises and the categories of information they typically generate, vast amounts of nonresponsive communications on issues ranging from irrelevant strategic business plans to casual lunch plans (and everything in between) would now fall within the scope of that order. This includes large troves of personal data and personally identifiable information ("PII") belonging to either or both employees and consumers. Retaining personal data or PII beyond Uber's designated retention periods could run afoul of the European Union General Data Protection Regulation ("GDPR") and the California Consumer Privacy Act, along with other international and domestic data protection and privacy statutes. This could potentially expose Uber to severe fines and other

- 5 -

DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PTO NO. 2 AND TO COMPEL DEFENDANTS TO PRODUCE LITIGATION HOLD AND PRESERVATION INFORMATION

penalties, which are completely unnecessary when, as I understand it, Uber has already adopted more proportional preservation methods to efficiently retain potentially relevant materials for this litigation.

14.     Were Plaintiffs' requested approach adopted, my opinion is that Uber could incur a disproportionate cost to preserve all emails generated and received regarding Uber's global business operations. The costs could include preserving millions upon millions of irrelevant emails on servers that would otherwise be eliminated. In my view, it would be unprecedented for the Court to issue an order of this magnitude, particularly given Uber's stated intention to comply with its preservation obligations and the proactive steps it has taken so far in this litigation.

15.     Based on my knowledge gained from both representing and consulting with organizations, together with my experience as a special master, I concur with the steps Uber has taken in this lawsuit to disable aspects of its email and other retention policies that apply to the custodians who are in fact on legal hold. I view this as an appropriate practice under the circumstances of this case given my observation that companies who follow this approach can typically preserve relevant emails from the employee custodians at issue, taking into account the custodians who are already on legal hold in other matters. My opinion is that this measure, particularly for purposes of preserving email, is an effective, targeted, and proportional approach to ensure relevant communications are preserved for collection, search, review, and production.

**IV.     NATURE AND PURPOSES OF INFORMATION RETENTION POLICIES**

16.     Plaintiffs have expressed concern that Uber's email retention policy might operate to deprive them of relevant information for this lawsuit. While the Motion does not appear to cite any evidence substantiating such a proposition, I have observed that the purposes generally underlying organizations' implementation of corporate information retention policies do not support this assertion.

17.     I have observed in my various roles that there are several legitimate purposes underlying the establishment of information retention policies. Memorialized over the years in court orders and materials generated by The Sedona Conference and other organizations, those

DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PTO NO. 2 AND TO COMPEL DEFENDANTS TO PRODUCE LITIGATION HOLD AND PRESERVATION INFORMATION

purposes are typically "motivated by general business needs" and include "the innocent purpose of simply limiting the volume of a party's files and retaining only that which is of continuing value." The U.S. Court of Appeals for the Federal Circuit referred to this as the "good housekeeping" purpose. *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1322 (Fed. Cir. 2011). I have found that this has been the traditional reason on which organizations like Uber have relied to develop records retention policies. *See generally* The Sedona Conference, *Commentary on Defensible Disposition*, 20 SEDONA CONF. J. 179 (2019); *The Sedona Principles*, 19 SEDONA CONF. J. at 59-64.

18.     Over the past several years, however, I observed that organizations augmented the purposes for which they developed information retention policies to include cyber security and information security. This is due to the increasing number of cyber incidents from third parties and internal threats from malicious insiders. After many notorious cyber attacks during the past decade that have resulted in an untold number of emails and other proprietary information being circulated around the internet, I observed that organizations began taking more aggressive measures to reduce their stockpiles of old emails known commonly as "ROT" (redundant, outdated, and trivial) data. It is now an established best practice to implement information retention policies that eliminate ROT data, particularly emails, so as to ameliorate harm that might transpire in the event of a data breach. *See* The Sedona Conference, *Commentary on Defensible Disposition*, 20 SEDONA CONF. J. 179, 213 (2019) ("Regulatory agencies are now recommending that organizations, as part of their cybersecurity program, have policies for the secure disposal of information that is not required to be retained by law or regulation. The FTC also recommends that organizations consider data minimization (i.e., limiting the collection of consumer data, and retaining that information only for a set period of time, and not indefinitely) to reduce the attractiveness of those repositories to data thieves, the harm done to consumers when breach occurs, and the risk of use of the data in ways not consistent with its intended use.").

19.     During this same timeframe, I have seen organizations take efforts to establish defensible disposition programs in order to comply with data protection and privacy laws. For

- 7 -

DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PTO NO. 2 AND TO COMPEL DEFENDANTS TO PRODUCE LITIGATION HOLD AND PRESERVATION INFORMATION

1   companies with global operations, the most prominent of these laws has been the GDPR, which
2   has express directives requiring companies to minimize the types of personal data that can typically
3   be found in emails. Other countries and U.S. states have followed the EU's lead, implementing
4   laws to address data protection and privacy including (among others) Brazil, China, California,
5   Virginia, and Colorado. To comply with these laws, I have found that organizations need to adopt
6   policies and practices to reduce over-retention of personal data and PII while simultaneously
7   meeting their common law obligations to preserve evidence with respect to reasonably anticipated
8   litigation. *See generally* The Sedona Conference, *Commentary on Ephemeral Messaging*, 22
9   SEDONA CONF. J. 435 (2021).

10       I declare under penalty of perjury that the foregoing is true and correct.

11

12   Executed on December 22, 2023

13                                                  Philip Favro

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                     - 8 -

3:23-MD-3084-CRB

DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO ENFORCE PTO NO. 2 AND TO COMPEL DEFENDANTS
TO PRODUCE LITIGATION HOLD AND PRESERVATION INFORMATION

# EXHIBIT A



# PHILIP J. FAVRO

philip.favro@innovativedriven.com | (385) 498-2172

515 Flower St., Suite 1800 Los Angeles, CA 90071

linkedin.com/in/philip-favro-b1a27ba/ | @philipfavro

## PROFILE

Philip Favro is a leading expert on issues relating to electronically stored information. Phil serves as a court-appointed special master, expert witness, and trusted advisor to law firms and organizations on matters involving ESI and electronic discovery. He is a nationally recognized scholar on electronic discovery, with courts and academic journals citing his articles. Phil also regularly provides training to judges on electronic discovery and ESI. He is a licensed attorney who in private practice represented organizations and individuals in litigation across the spectrum of business disputes. In addition to handling a range of complex and other discovery issues, Phil has extensive experience in the courtroom including summary judgment, preliminary injunction, and discovery motion practice, together with trial and arbitration experience.

## PROFESSIONAL EXPERIENCE

### INNOVATIVE DRIVEN                                                      12/15–Present
PRINCIPAL CONSULTANT, DISCOVERY AND INFORMATION GOVERNANCE

**Court-Appointed Special Master**. Serve as a court-appointed special master in matters involving ESI and electronic discovery. Address issues across the range of discovery disputes including ESI preservation, collection, search, review, production, and spoliation. Broker agreements with the parties on disputed issues, hold hearings and conferences, examine and weigh evidence, assess witness credibility, and author orders, reports, and recommendations relating to the disposition of legal and factual issues and privilege claims.

**Expert Witness and Rule 30(b)(6) Witness**. Offer expert testimony on issues relating to electronic discovery including appropriate steps and methods for handling the preservation of relevant information, the duty to conduct a reasonable inquiry, the proper use and development of search methodologies and analytics tools including technology-assisted review (TAR), the use of ESI protocols, the role of sampling to satisfy production obligations, the importance of metadata, and safeguarding privileged information and work product. Also provide Rule 30(b)(6) testimony on behalf of organizations regarding discovery and information topics.

**Consultant to Law Firms and Organizations**. Act as a trusted advisor to organizations and law firms on issues regarding discovery and information governance. Provide guidance on data preservation practices, litigation holds, data collection strategies, and search methodologies for electronically stored information. Offer direction on records retention policies, litigation hold policies, and the need to manage dynamic sources of information found on social media, messaging applications, and smartphones.

**eDiscovery Legal Scholar**. Am one of the leading scholars on issues relating to ESI and electronic discovery. Federal and state courts and academic journals (University of Pennsylvania Law Review, Notre Dame Law Review, and Cornell Law Review) have cited my articles.

**Ephemeral Messaging Expertise**. Am one of the foremost experts on ephemeral messaging and consult with clients regarding its impact on discovery obligations and corporate information governance programs. This includes helping address preservation duties in civil discovery, complying with regulators who discourage ephemeral messaging use, preparing policies regarding the implementation of ephemeral messaging, and guiding the selection of technologies. Am one of the leading thought leaders on these issues and served as the Editor-in-Chief for The Sedona Conference *Commentary on Ephemeral Messaging*, 22 SEDONA CONF. J. 435 (2021).

**RECOMMIND, INC**.                                                              01/14 to 09/15
SENIOR DISCOVERY COUNSEL

**Consultant & Legal Scholar**. Served as consultant for lawyers, organizations, and judges regarding key developments, trends, and best practices in litigation, electronic discovery, information governance, and data protection. Authored scholarly articles and industry pieces relating to electronic discovery and information governance.

**SYMANTEC CORPORATION**                                                 02/11 to 08/13
SENIOR DISCOVERY COUNSEL

**Consultant & Legal Scholar**. Provided guidance to organizations' in-house counsel regarding best practices for electronic discovery, data protection, and information governance. Shared strategies for reducing inefficiencies and costs, maximizing information, and satisfying legal strictures. Developed articles and analyses regarding int'l data protection laws. Authored scholarly articles and other writings on electronic discovery and information governance.

**SANTA CLARA COUNTY SUPERIOR COURT**                    02/10 to 08/12
JUDGE PRO TEM, TRAFFIC DIVISION

**Arraignments**. Presided as pro tem judicial officer at arraignment proceedings for traffic-related infractions and misdemeanors. Entered pleas, set matters for trial, and assigned fines or other penalties.

**Trials**. Conducted trials as pro tem judicial officer for traffic-related infractions and misdemeanors. Received and weighed oral/written evidence from police officers and defendants, entered findings, imposed fines or other penalties, and/or dismissed matters.

**Appeals**. Prepared written record of proceedings of traffic trials subject to appeal.

**PACKARD, PACKARD & JOHNSON**                                    02/06 to 08/10
SENIOR COUNSEL (LITIGATION)

**High Stakes Litigation**. False Claims Act litigation practice focused on pursuing high stakes procurement fraud cases with the U.S. Department of Justice. Represented clients in matters that culminated in settlements between the Department of Justice and various defendants in a total amount exceeding $300 million.

**Discovery Practice**. Successfully litigated discovery motions that enabled clients to obtain key documents supporting their claims and allegations of procurement fraud. Prepared initial disclosures, handled FRCP 26(f) obligations, reviewed ESI, conducted meet and confers, prepared discovery motions, and conducted follow-up consistent with discovery orders.

**Firm eDiscovery Practice Leader**. Directed the firm's electronic discovery practice. Trained government attorneys, federal investigators, firm lawyers, and document reviewers regarding the discovery of ESI. Supervised production, receipt, and analysis of millions of pages of ESI.

**HOPKINS & CARLEY, A LAW CORPORATION**                   09/99 to 02/06
ASSOCIATE (LITIGATION)

**Business Litigation**. Business litigation practice concentrated on advising organizations regarding commercial contract, trademark, trade secret, partnership, and employment disputes. Obtained summary judgment and writs of attachment orders; handled pleadings, discovery, pre-trial motion practice, and expert discovery. Participated

**PHILIP J. FAVRO**, CURRICULUM VITAE                    philip.favro@innovativedriven.com

as counsel in trial regarding IP dispute in U.S. District Court, Northern District of California.

**Discovery Practice**. Managed discovery efforts as lead associate on a professional malpractice dispute involving $300 million in alleged damages against an international accounting firm. Engaged in motion practice, supervised production of millions of pages of electronic and paper records, and advised client regarding other complex discovery issues. Handled motion practice, depositions, written discovery, and related tasks in various other cases.

**HON. JEREMY FOGEL, U.S. DISTRICT JUDGE (N.D. CAL.)**                    08/98 to 01/99
JUDICIAL EXTERN

**Legal Research and Writing**. Performed legal research and analysis, prepared memoranda, and drafted proposed orders under the direction of the Judge Fogel and his law clerks.

# Education

**Santa Clara University School of Law**, Santa Clara, CA
DEGREE: Juris Doctor | 1999
- Emery Academic Merit Scholar | 1997-99
- Member, Honors Moot Court Board | 1998-99
- Dean's List | 1997

**Brigham Young University**, Provo, UT
DEGREE: Bachelor of Arts, Political Science | 1994
- Spanish Minor
- Dean's List

# Licenses

**Utah State Bar, Lawyer**
- 2011—Present

**California State Bar, Lawyer**
- 1999—Present

# Professional Associations & Rankings

**Georgetown Law Advanced eDiscovery Institute**—(2023–Present)
- Advisory Board Member

**Seventh Circuit Bar Association**—(2023—Present)
- Honorary Member
- Associate Editor, *The Circuit Rider*

**Chambers and Partners**—(2019–Present)
- Chambers-Ranked Lawyer, Band 1 USA-Nationwide Litigation Support/eDiscovery (2023—Present)
- Chambers-Ranked Lawyer, Band 2 USA-Nationwide Litigation Support/eDiscovery (2019—2022)

**The Sedona Conference**—(2011–Present)
- Member, WG1 Steering Committee (Electronic Document Retention & Production) (2019-2021)
- Project Manager, WG1 Steering Committee (2017-2019)
- Editor-in-Chief, *Commentary on Ephemeral Messaging* (2021)
- Editor-in-Chief, *Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders* (2021)
- Editor-in-Chief, *Commentary on ESI Evidence & Admissibility, Second Ed.* (2020)
- Editor-in-Chief, *Primer on Social Media, Second Ed.* (2019)
- Drafting Team Leader, *Commentary on Proportionality in Electronic Discovery, 3rd Ed.* (2017)

**Utah State Bar Litigation Section**—(2018–2023)

**Central Utah Bar Association**—(2014–2023)

**Coalition of Technology Resources for Lawyers**—(2014–2019)
- Director of Legal Education and Resources
- Editor-in-chief, *Guidelines Regarding the Use of Technology-Assisted Review*
- Lead author, *The New Information Governance Playbook for Addressing Digital Age Threats*

**Santa Clara County Bar Association**—(2000–2013)
- Member, Board of Trustees (2009–2010)
- Chair, Exec. Committee, High Technology Law Section (2007–2010)

**American Bar Association**—(2009–2014)
- Science & Technology Section (2009–2014)
- Litigation Section (2013–2014)
- Judicial Division (Lawyers Conference) (2013–2014)

**California State Bar**—(2008–2010)
- Exec. Committee, Law Practice Management & Technology Section

# Special Master Appointments

*(Orders, Reports, and Recommendations available on Westlaw)*

1. **Deal Genius, LLC v. O2COOL, LLC**, No. 21-cv-2046 (N.D. Ill.); Magistrate Judge Jeffrey Cole; Appointed Special Master on September 23, 2022. *See* 2022 WL 17418892 and 2022 WL 17419522.

   **Special Master Report No. 1**, *Report Re Status Of Dispute Regarding Production Of Certain Emails*, 2022 WL 17418933 (N.D. Ill. Oct. 24, 2022).

   **Special Master Report No. 6**, *Report Re Status of Disputes Over the Production of Emails and the Failure to Preserve Emails*, 2023 WL 2299977 (N.D. Ill. Feb. 17, 2023); *report and recommendations adopted*, 2023 WL 2299976 (N.D. Ill. Feb. 23, 2023).

   **Special Master Report No. 9**, *Report Re Status of Disputes Over the Production of Emails and the Failure to Preserve Emails*, 2023 WL 3445758 (N.D. Ill. Apr. 28, 2023).

   **Special Master Report No. 11**, *Report Re Status of Disputes Over the Production of Emails and the Failure to Preserve Emails*, 2023 WL 3445759 (N.D. Ill. May 8, 2023).

   **Order Addressing the Parties' Dispute Re Elusion Testing and Additional Search Terms**, --- F. Supp. 3d ---, 2023 WL 4556759 (N.D. Ill. 2023).

2. **Porter v. Equinox Holdings, Inc.**, No. RG19009052 (Cal. Super. Ct., Alameda Cty.); Superior Court Judge Paul Herbert; Appointed Expert Advisor on December 16, 2021.

   **Order** *Re Production of Linked Documents in Family Relationships and Privacy Issues Re Production of Relevant Documents*, 2022 WL 887242 (Cal. Super. Mar. 17, 2022).

3. **Shumway v. Wright**, No. 4:19-cv-00058 (D. Utah); District Judge David Nuffer; Appointed Special Master on September 4, 2019. *See* 2019 WL 8135705.

   **Special Master Report No. 21**, *Report and Recommendation on Plaintiffs' Motion for Order of Contempt against Defendant Gary D. Slavens and Award of Attorney Fees and Costs*, 2020 WL 3038052 (D. Utah May 19, 2020); *report and recommendation adopted*, 2020 WL 3037207 (D. Utah June 5, 2020).

   **Special Master Report No. 17**, *Report and Recommendation re Erasure of Google Drive Documents Reflecting Trade Secrets Seized from Defendant Gary D. Slavens*, 2020 WL 1042168 (D. Utah Jan. 28, 2020); *report and recommendation adopted*, 2020 WL 1038014 (D. Utah Feb. 10, 2020).

   **Special Master Report No. 16**, *Report and Recommendation re Erasure of Additional Trade Secret Documents Seized from Defendant Gary D. Slavens*, 2020 WL 1037773 (D. Utah Jan. 13, 2020); *report and recommendation adopted*, 2020 WL 1038152 (D. Utah Jan. 29, 2020).

   **Special Master Report No. 14**, *Report and Recommendation re Erasure of Trade Secret Documents Seized from Defendant Gary D. Slavens*, 2019 WL 8129801 (D. Utah Dec. 17, 2019); *report and recommendation adopted*, 2020 WL 1042036 (D. Utah Jan. 29, 2020).

   **Special Master Report No. 12**, *Report and Recommendation on Additional Null Set Searches re Documents Seized from Defendant Gary D. Slavens*, 2019 WL 8137128 (D. Utah Nov. 25, 2019), *report and recommendation adopted*, 2020 WL 1042211 (D. Utah Jan. 8, 2020).

   **Special Master Report No. 11**, *Report and Recommendation on the Review of Certain Null Set Documents Seized from Defendants James Linn Wright, Audra Wright, and Gary D. Slavens*, 2019 WL 8135308 (D. Utah Nov. 22, 2019), *report and recommendation adopted*, No. 4:19-CV-00058-DN-PK, 2019 WL 8137130 (D. Utah Dec. 16, 2019).

   **Special Master Report No. 10**, *Report and Recommendation on the Disposition of Certain ESI Seized from Defendant Gary D. Slavens*, 2019 WL 8129803 (D. Utah Nov. 19, 2019), *report and recommendation adopted*, 2019 WL 8137130 (D. Utah Dec. 16, 2019).

   **Special Master Report No. 8**, *Report and Recommendation on the Disposition of Information Seized from Defendant Gary D. Slavens*, 2019 WL 8129820 (D. Utah Nov. 4, 2019); *report and recommendation adopted*, 2019 WL 8137130 (Dec. 16, 2019).

   **Special Master Report No. 7**, *Preliminary Conclusions regarding the Records Seized from Defendant Gary Slavens*, 2019 WL 8135701 (D. Utah Oct. 9, 2019).

   **Special Master Report No. 5**, *Report on the Erasure of Information Seized from Defendant James Linn Wright and Defendant Audra Wright*, 2019 WL 8135310 (D. Utah Oct. 1, 2019).

   **Special Master Report No. 3**, *Report and Recommendation on the Disposition of Information Seized from Defendant James Linn Wright and Defendant Audra Wright*, 2019 WL 8129822 (D. Utah Sept. 27, 2019). **Order**, *Granting in Part and Denying in Part the Wrights' Motion for Expedited Return of Seized Devices*

*or, in the Alternative, Supervised Access to Macbook Pro*, 2019 WL 8129821 (D. Utah Sept. 18, 2019).

**Special Master Report No. 1**, *Status of Searches through Data from Defendants' Seized Computer Devices*, 2019 WL 8137124 (D. Utah Sept. 17, 2019).

# Expert Witness and Rule 30(b)(6) Testimony
*(2019—Present)*

1. **Core Consultants, Inc. v. Ferran**, No. 2021CV31719 (Colo. District Court, Arapahoe Cty., Nov. 7, 2022). Oral testimony during hearing before court-appointed special master supporting inclusion of certain provisions in an ESI protocol regarding search terms and production format.

2. **Fernandez v. Walmart Inc.**, No. RIC1904598 (Cal. Super. Ct, Riverside Cty., Oct. 17, 2022). Written declaration in support of opposition to motion for terminating, issue, evidentiary, and monetary sanctions and/or to compel compliance with the court's prior discovery order.

3. **Schmidt v. Allstate Prop. and Cas. Ins. Co.**, No.: 41D03-1408-CT-00125 (Indiana, Johnson County Super. Ct., Aug. 12, 2022). Written affidavit in support of motion to modify an order compelling defendant to engage in a nationwide production of insurance claims files.

4. **Dominion Voting Systems, Inc. v. Fox News Network, LLC**, No. N21C-03-257 EMD (Delaware Super. Ct., Aug. 5, 2022). Oral testimony in the capacity of a Rule 30(b)(6) witness regarding the nature and extent of plaintiff's efforts to respond to defendant's written discovery requests.

5. **Hogan v. Wal-Mart Stores E., LP**, No. 4:21-cv-78 RLW (E.D. Mo. Mar. 11, 2022), ECF No. 48-2. Written declaration in support of motion for relief from discovery order compelling defendant to produce responsive communications to plaintiff's written discovery request.

6. **Hernandez v. Solorzano**, No. 21STFL06318 (Cal. Super. Ct., Los Angeles Cty., Aug. 17, 2021). Written declaration addressing standard employer practices regarding termination of access to corporate network and devices for departed employees.

7. **Moore v. Westgate Resorts, Ltd.**, No. 3:18-cv-00410 (M.D. Tenn. Nov. 1, 2019), ECF No. 78. Written declaration in support of motion for entry of an ESI protocol to govern discovery issues in the litigation.

8. **Southam & Associates, Inc. v. McClellan**, No. 1604011926 (Utah Fourth Dist. Ct., Mar. 8, 2019). Written declaration in support of motion for sanctions and other discovery relief regarding a litigant's apparent refusal to meet and confer regarding the development of search terms.

# ESI and eDiscovery Trainings for the Judiciary
*(2013—Present)*

1. **2023 National Workshop for Magistrate Judges II—7/11/2023 (Atlanta, GA)**, *"Delete" Uncertainty: Learn the Basics and Beyond on ESI Spoliation*. Training regarding ESI spoliation sanctions under Federal Rule of Civil Procedure 37(e) to a national audience of U.S. Magistrate Judges through the Federal Judicial Center.

2. **2023 National Workshop for Magistrate Judges II—7/10/2023 (Atlanta, GA)**, *A Discussion with Magistrate Judges about AI's Impact on Legal Issues They Manage*. Training regarding the potential impact of artificial intelligence on civil and criminal issues to a national audience of U.S. Magistrate Judges through the Federal Judicial Center.

3.  **2023 National Workshop for Magistrate Judges I—4/18/2023 (San Diego, CA)**, *"Delete" Uncertainty: Learn the Basics and Beyond on ESI Spoliation*. Training regarding ESI spoliation sanctions under Federal Rule of Civil Procedure 37(e) to a national audience of U.S. Magistrate Judges through the Federal Judicial Center.

4.  **2023 National Workshop for Magistrate Judges I—4/17/2023 (San Diego, CA)**, *AI is Coming to Your Courthouse: Are You Ready?* Training regarding the potential impact of artificial intelligence on civil and criminal issues to a national audience of U.S. Magistrate Judges through the Federal Judicial Center.

5.  **U.S. District Court, Eastern District of Michigan—5/31/2022 (Virtual)**, *Ephemeral Messaging: Understanding the Benefits and Addressing the Risks*. Training regarding the nature of ephemeral messaging and the challenges that it presents for courts in civil litigation.

6.  **U.S. District Court, District of Utah—5/4/2022 (Salt Lake City, UT)**, *Ephemeral Messaging: Understanding the Benefits and Addressing the Risks*. Training regarding the nature of ephemeral messaging and the challenges that it presents for courts in civil litigation.

7.  **U.S. District Court, Northern District of Illinois—2/9/2022 (Virtual)**, *Ephemeral Messaging: Understanding the Benefits and Addressing the Risks*. Training regarding the nature of ephemeral messaging and the challenges that it presents for courts in civil litigation.

8.  **Ohio Courts of Appeals Judges Association Fall Conference—9/1/2021 (Virtual)**, *Discovery of Electronic Materials: New Ohio Civ. R.37(E): Failure to Preserve Electronic Stored Information (ESI)*. Delivered training to Ohio State Supreme Court Justices and Appellate Court Judges regarding key appellate issues relating to sanctions arising from the destruction of ESI under new Ohio Rule of Civil Procedure 37(e).

9.  **Federal Judicial Center—5/3/2021 (Virtual)**, *Electronically Stored Information and Discovery Misconduct in an Electronic Age*. Provided training to national audience of U.S. District Judges and U.S. Magistrate Judges through the Federal Judicial Center regarding ESI preservation and production issues.

10. **U.S. District Court, District of Utah—10/20/2020 (Virtual)**, *Seizure Orders under the Defend Trade Secrets Act of 2016*. Training regarding key legal and technological considerations regarding the issuance of seizure orders under the Defend Trade Secrets Act of 2016.

11. **2018 Utah District Court Judges Conference—5/17/2018 (St. George, UT)**, *Dealing with Discovery: Technology and ESI Tips for the Digital Age Jurist*. Provided judicial training for Utah state court judges at their annual retreat regarding common ESI preservation and search challenges, together with various recommendations and best practices for addressing those challenges.

12. **U.S. District Court, District of Utah—10/1/2014 (Salt Lake City, UT)**, *Guidelines Regarding the Use of Technology-Assisted Review (TAR)*. Training regarding the basics of TAR, along with several strategic and tactical issues that courts and counsel should consider in connection with the use of TAR.

13. **U.S. District Court, District of Utah—9/12/2013 (Salt Lake City, UT)**, *Getting The Basics: Highlights of the Newly Proposed Amendments to the Federal Rules of Civil Procedure*. Training on the proposed amendments to the Federal Rules of Civil Procedure regarding proportionality and sanctions for failures to preserve relevant ESI.

# Court Citations to Authored Articles

1.  **Deal Genius, LLC v. O2COOL, LLC**, --- F. Supp. 3d ---, 2023 WL 4556759 (N.D. Ill. 2023).

2. **Deal Genius, LLC v. O2COOL, LLC**, No. 21-cv-2046, 2023 WL 2299977, at *3 (N.D. Ill. Feb. 17, 2023).

3. **Deal Genius, LLC v. O2COOL, LLC**, No. 21-cv-2046, 2022 WL 17418933, at *2 (N.D. Ill. Oct. 24, 2022).

4. **DR Distributors, LLC v. 21 Century Smoking, Inc.**, 616 F. Supp. 3d 769, 787 (N.D. Ill. 2022)

5. **DR Distributors, LLC v. 21 Century Smoking, Inc.**, 513 F. Supp. 3d 839, 948, n.49 (N.D. Ill. 2021).

6. **Shumway v. Wright**, No. 4:19-cv-00058-DN-PK, 2019 WL 8137128, *2, n.6 (D. Utah Nov. 25, 2019), *report and recommendation adopted*, 2020 WL 1042211 (D. Utah Jan. 8, 2020).

7. **Shumway v. Wright**, No. 4:19-CV-00058-DN-PK, 2019 WL 8135308, at *3, n.16 (D. Utah Nov. 22, 2019), *report and recommendation adopted*, 2019 WL 8137130 (D. Utah Dec. 16, 2019).

8. **Shumway v. Wright**, No. 4:19-CV-00058-DN-PK, 2019 WL 8135701, at *3, n.3 (D. Utah Oct. 9, 2019).

9. **Shumway v. Wright**, No. 4:19-CV-00058-DN-PK, 2019 WL 8129822, at *5, n.16 (D. Utah Sept. 27, 2019).

10. **Winfield v. City of New York**, No. 15-cv-05236, 2017 WL 5664852, at *10 (S.D.N.Y. Nov. 27, 2017).

11. **Rio Tinto PLC v. Vale S.A.**, 306 F.R.D. 125, 128 (S.D.N.Y. 2015).

12. **United States ex rel. Carter v. Bridgepoint Educ., Inc.**, 305 F.R.D. 225, 237, n.23 (S.D. Cal. 2015).

13. **Quintana v. Claire's Boutiques, Inc.**, No. 13-cv-0368, 2014 WL 234219, at *2, n.13 (N.D. Cal. Jan. 21, 2014).

14. **Lake v. City of Phoenix**, 220 Ariz. 472, 486 (Ct. App.) (Norris, J. *dissent*), *vacated in part*, 222 Ariz. 547 (2009).

# Scholarly Articles, Books, Commentaries, and Bar Journal Articles
*(2007—Present)*

1. **Ephemeral Messaging: Understanding Key Preservation Issues in Civil Litigation**, THE CIRCUIT RIDER: THE JOURNAL OF THE SEVENTH CIRCUIT BAR ASSOCIATION (May 2023) | Author.

2. **The Outsized Impact of Text Messages on Litigation**, FMJA BULLETIN (March 2023) | Author.

3. **Ephemeral Messaging: Understanding Key Preservation Issues in Civil Litigation**, FMJA BULLETIN (Sep. 2022) | Author

4. **Selected eDiscovery and ESI Case Law from 2021-22**, THE CIRCUIT RIDER: THE JOURNAL OF THE SEVENTH CIRCUIT BAR ASSOCIATION (June 2022) | Author.

5. **Navigating Social Media Discovery: What Judges Need to Know About How Lawyers Should Deal with Mass Deletion of Social Media History**, FMJA BULLETIN (June 2022) | Co-Authored with the Hon. Helen Adams, U.S. Magistrate Judge (Southern District of Iowa) and Leslie Behaunek (Nyemaster Goode).

PHILIP J. FAVRO, CURRICULUM VITAE                    philip.favro@innovativedriven.com

6.  **Navigating Social Media Discovery: Steps Counsel Can Take to Address Mass Deletion of Social Media History**, THE IOWA LAWYER (June 1, 2022) | Co-Authored with the Hon. Helen Adams, U.S. Magistrate Judge (Southern District of Iowa) and Leslie Behaunek (Nyemaster Goode).

7.  **Solving the Privilege Conundrum in Discovery**, PRACTICAL LAW (Mar. 4, 2022) (with updates on legal and practical issues affecting privilege log practices since originally published in 2016) | Author.

8.  **DTSA Seizure Orders**, PRACTICAL LAW THE JOURNAL (Winter 2022) | Author.

9.  **Court Sanctions Defendants For Using Signal To Thwart FTC Investigation**, FMJA BULLETIN (Dec. 2021) | Author.

10. **Proportionality Weaponized: How It Happens And What Can Parties And Courts Do About It**, THE CIRCUIT RIDER: THE JOURNAL OF THE SEVENTH CIRCUIT BAR ASSOCIATION (Sept. 24, 2021) | Author.

11. **Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders**, 23 SEDONA CONF. J. 1 (forthcoming 2022) | Editor-in-Chief and Contributing Author (The Sedona Conference).

12. **Commentary on Ephemeral Messaging**, 22 SEDONA CONF. J. 435 (2021) | Editor-in-Chief and Contributing Author (The Sedona Conference).

13. **Slack Discovery: Key Issues and Challenges**, PRACTICAL LAW (Sep. 1, 2020) | Author.

14. **Seizure Orders Under the Defend Trade Secrets Act**, 33 UTAH BAR J. 32 (July/Aug 2020) | Co-Authored with the Hon. David Nuffer, U.S. District Judge (District of Utah).

15. **Commentary on ESI Evidence & Admissibility, Second Ed.**, 22 SEDONA CONF. J. 83 (2021) | Editor-in-Chief and Contributing Author (The Sedona Conference).

16. **Slack Discovery: Key Issues and Challenges**, PRACTICAL LAW (Apr. 1, 2020) | Author.

17. **Navigating the Discovery Chess Match through Effective Case Management**, 53 AKRON L. REV. 31 (2019) | Author.

18. **Ephemeral Messaging: Balancing the Benefits and Risks**, PRACTICAL LAW (June/July 2019) | Author.

19. **Primer on Social Media, Second Ed.**, 20 SEDONA CONF. 1 (2019) | Editor-in-Chief and Contributing Author (The Sedona Conference).

20. **A New Frontier in eDiscovery Ethics: Self-Destructing Messaging Applications**, 31 UTAH BAR J. 40 (Mar/Apr 2018) | Co-Authored with Keith Call (Snow Christensen & Martineau).

21. **Commentary on Proportionality in Electronic Discovery, Third Ed.,** 18 SEDONA CONF. J. 141 (2017) | Drafting Team Leader and Contributing Author (The Sedona Conference).

22. **The New Information Governance Playbook for Addressing Digital Age Threats**, 3 RICH. J.L. & TECH. ANN. SURVEY (2017) | Co-Author.

23. **Safeguarding The Seed Set: Why Seed Set Documents May Be Entitled To Work Product Protection**, Chapter 9 in Jason R. Baron, Ralph C. Losey & Michael D. Berman, *Perspectives on Predictive Coding* (American Bar Association 2016) | Co-Authored with the Hon. John M. Facciola (ret.), U.S. Magistrate Judge (D.D.C.) | Author.

PHILIP J. FAVRO, CURRICULUM VITAE                                    philip.favro@innovativedriven.com

24. **Protecting Work Product in the Age of Electronic Discovery**, 33 MICH. DEF. QUAR. 6 (2016) | Author.

25. **Addressing Employee Use of Personal Clouds**, 22 RICH. J. L. & TECH 6 (2016) | Author.

26. **Getting the Big Picture on the New eDiscovery Amendments to the Federal Rules of Civil Procedure**, 29 UTAH BAR J. 30 (Jan/Feb 2016) | Author.

27. **Solving the Privilege Conundrum in Discovery**, PRACTICAL LAW (Feb/Mar 2016) | Author.

28. **Protecting Privilege Claims in Discovery**, 29 UTAH BAR J. 22 (Mar/Apr 2016) | Author.

29. **Addressing EU Data Protection Laws in Discovery**, PRACTICAL LAW (May 15, 2015) | Author.

30. **Safeguarding The Seed Set: Why Seed Set Documents May Be Entitled To Work Product Protection**, 8 FED. CTS. L. REV. 1 (2015) | Co-Authored with the Hon. John M. Facciola (ret.), U.S. Magistrate Judge (D.D.C.).

31. **The New ESI Sanctions Framework Under the Proposed Rule 37(e) Amendments**, 21 RICH. J. L. & TECH 8 (2015) | Author.

32. **Changing the Culture of Discovery**, 37 AMER. J. TR. ADV. 587 (2014) | Co-Authored with the Hon. Mitchell D. Dembin, Magistrate Judge (S.D. Cal.).

33. **Getting Serious: Why Companies Must Adopt Information Governance Measures to Prepare for the Upcoming Changes to the Federal Rules of Civil Procedure**, 20 RICH. J. L. & TECH 5 (2014) | Author.

34. **A Comprehensive Look at the Newly Proposed Amendments to the Federal Rules of Civil Procedure**, 26 UTAH BAR J. 38 (Sep/Oct 2013) | Author.

35. **Inviting Scrutiny: How Technologies are Eroding the Attorney-Client Privilege**, 20 RICH. J. L. & TECH 2 (2013) | Author.

36. **New Utah Rule 26: A Blueprint for Proportionality under the Federal Rules of Civil Procedure**, 2012 MICH. ST. L. REV. 933 (2012), Co-Authored with the Honorable Derek P. Pullan, District Judge (Utah Fourth District) | Author.

37. **Five Proportionality Principles that Can Reduce eDiscovery Costs and Burdens**, 25 UTAH BAR J. 26 (Sep/Oct 2012) | Author.

38. **Sea Change or Status Quo: Has the Rule 37(e) Safe Harbor Advanced Best Practices for Records Management?**, 11 MINN. J. L. SCI. & TECH. 317 (2010) | Author.

39. **A New Frontier in Electronic Discovery: Preserving and Obtaining Metadata**, 13 B. U. J. SCI. & TECH. L. 1 (2007) | Author.

# Industry Publications, Posts, and White Papers
*(2012—Present)*

1. **New Circuit Court Opinion Highlights the Need for Enhanced Cyber and Privacy Safeguards**, INNOVATIVE DRIVEN BLOG (Sept. 8, 2023) | Co-Authored with Naheed Bleecker (Innovative Driven).

2. **New Case Law Spotlights the Need for Effective ESI Protocol Practices**, INNOVATIVE DRIVEN BLOG (Aug. 3, 2023) | Author.

PHILIP J. FAVRO, CURRICULUM VITAE                    philip.favro@innovativedriven.com

3. **Selected Information Governance Case Law from 2022-23**, THE SEDONA CONFERENCE (May 2023) | Author.

4. **Selected eDiscovery and ESI Case Law from 2022-23**, THE SEDONA CONFERENCE (Apr. 2023) | Author.

5. **2023 Tech Glossary**, INNOVATIVE DRIVEN (April 11, 2023) | Author.

6. **New Cases Spotlight Best Practices for Handling Ephemeral Messages in Litigation**, LEGALTECH NEWS (March 20, 2023) | Author.

7. **Handling Structured Data in Discovery**, LEGAL PRACTICE INTELLIGENCE (Mar. 1, 2023) | Co-Authored with Gregg Parker (Innovative Driven).

8. **Lessons Learned for 2023: Spotlighting Five Key eDiscovery Trends from 2022**, INNOVATIVE DRIVEN BLOG (Jan. 4, 2023) | Author.

9. **The Impact that the Changing Nature of Documents is Having on eDiscovery**, INNOVATIVE DRIVEN BLOG (Dec. 7, 2022) | Author.

10. **Selected eDiscovery and ESI Case Law from 2022**, THE SEDONA CONFERENCE (Oct. 2022) | Author.

11. **New Sanctions Case Offers Lessons on ESI Protocols and Information Governance Policies**, LEGALTECH NEWS (July 25, 2022) | Author.

12. **New Cases Spotlight eDiscovery Trends on Possession, Custody or Control and Jury Instructions re ESI Spoliation**, LEGALTECH NEWS (May 18, 2022) | Author.

13. **Messaging Apps Raise Tricky E-Discovery Issues**, TECHNOLOGY & MARKETING LAW BLOG (May 16, 2022) | Author.

14. **Selected eDiscovery and ESI Case Law from 2021-22**, THE SEDONA CONFERENCE (Apr. 2022) | Author.

15. **Court Sanctions Plaintiff for Destroying Relevant Facebook Messenger and Telegram Messages**, LEGALTECH NEWS (Feb. 17, 2022) | Author.

16. **Court Rejects Sanctions Based on Party's Efforts to Remediate Data Loss**, LEGALTECH NEWS (Jan. 27, 2022) | Author.

17. **Lessons Learned for 2022: Spotlighting Five eDiscovery Trends from 2021**, INNOVATIVE DRIVEN BLOG (Jan. 3, 2022) | Author.

18. **What Litigants Should Know About New Court Decisions on Categorical Privilege Logs**, LEGALTECH NEWS (Dec. 2, 2021) | Author.

19. **Fitbits, Teams and Privilege: New Cases Highlight Hot Discovery Trends**, LEGALTECH NEWS (Oct. 27, 2021) | Author.

20. **Selected eDiscovery and ESI Case Law from 2021**, THE SEDONA CONFERENCE (Oct. 2021) | Author.

21. **Court Sanctions Defendants For Using Signal To Thwart FTC Investigation**, LEGALTECH NEWS (Sept. 16, 2021) | Author.

22. **Fabricated Text Message Case Highlights the Importance of Emojis in E-Discovery**, LEGALTECH NEWS (Aug. 16, 2021) | Author.

23. **Snapchat Spoliation Case Highlights the Importance of E-Discovery Competence**, LEGALTECH NEWS (July 13, 2021) | Author.

24. **New ACC Report Spotlights Correlation between IG Maturity and Discovery Responsiveness**, DRIVEN BLOG (June 30, 2021) | Author.

25. **Court Rejects In Camera Review, Signals Need for Privilege Log Alternatives**, DRIVEN BLOG (May 27, 2021) | Author.

26. **New Federal Cases Spotlight 2021's Key Trends in E-discovery**, LEGALTECH NEWS (May 13, 2021) | Author.

27. **Dispute Over Linked Google Drive Documents Highlights Discovery Challenges with Information Systems**, DRIVEN BLOG (Apr. 27, 2021) | Author.

28. **Dispute Over Linked Google Drive Documents Highlights Discovery Challenges with Information Systems**, THE SEDONA CONFERENCE (Apr. 2021) | Author.

29. **Special Masters: A Cost-Effective Method for Handling eDiscovery**, DRIVEN BLOG (Mar. 29, 2021).

30. **New ESI Sanctions Order Offers E-Discovery 101 Course for Lawyers**, ACEDS DETROIT CHAPTER NEWSLETTER (Mar. 2021) | Author.

31. **Court Rejects Slack Production, Spotlights Discovery Pitfalls for Requesting Parties**, DRIVEN BLOG (Feb. 8, 2021) | Author.

32. **New ESI Sanctions Order Offers E-Discovery 101 Course for Lawyers**, LEGALTECH NEWS (Jan. 28, 2021) | Author.

33. **Lessons Learned for 2021: Spotlighting the Top eDiscovery Cases from 2020**, DRIVEN BLOG (Jan. 5, 2021) | Author.

34. **New TAR Case Spotlights Perils with Broad ESI Protocols**, LEGALTECH NEWS (Dec. 14, 2020) | Author.

35. **Proportionality: Cost Remains The Bottom Line in eDiscovery**, DRIVEN BLOG (Nov. 23, 2020) | Author.

36. **Terminating Sanctions Order Emphasizes the Need for Safeguards in Disposition Programs**, LEGALTECH NEWS (Oct. 27, 2020) | Author.

37. **Terminating Sanctions Order Emphasizes the Need for Safeguards to Ensure Disposition Programs are Defensible**, DRIVEN BLOG (Oct. 28, 2020) | Author.

38. **New TAR Case Affirms Sedona Principle Six, Approves Search Term Pre-Culling**, LEGALTECH NEWS (Sep. 15, 2020) | Author.

39. **New eDiscovery Case Law Developments in 2020: Native Excel Production without Relevance Redactions, FRCP 37(e) Order Rejecting Inherent Authority, and Denial of Proposed Blanket Production 502(d) Order**, DRIVEN BLOG (Aug. 20, 2020) | Author.

PHILIP J. FAVRO, CURRICULUM VITAE                    philip.favro@innovativedriven.com

40. **Three New E-discovery Case Law Developments So Far in 2020**, LEGALTECH NEWS (Aug. 14, 2020) | Author.

41. **Top European Court Invalidates Privacy Shield, Unsettles Personal Data Transfer Practices under the Standard Contractual Clauses**, DRIVEN BLOG (Aug. 4, 2020) | Co-Author.

42. **Court Requires Production of Filepath Metadata, Spotlights Importance of eDiscovery Experts**, DRIVEN BLOG (June 23, 2020) | Author.

43. **California Case Offers Warnings on Ephemeral Messaging**, BLOOMBERG LAW (June 1, 2020) | Author.

44. **eDiscovery Cases Spotlight IG Best Practices for Workplace Collaboration Tools**, DRIVEN BLOG (May 4, 2020) | Author.

45. **Recent E-Discovery Cases Spotlight IG Best Practices for Workplace Collaboration Tools**, LEGALTECH NEWS (Apr. 29, 2020) | Author.

46. **Understanding and Addressing Discovery Challenges with Slack**, DRIVEN BLOG (Apr. 3, 2020) | Author.

47. **Slack: Understanding and Addressing Discovery Challenges**, DRIVEN BLOG (Apr. 2, 2020) | Author.

48. **Three New Changes to the Revised CCPA Regulations and New CCPA Lawsuits**, LEGALTECH NEWS (Mar. 24, 2020) | Author.

49. **eDiscovery and Seizure Orders under the Defend Trade Secrets Act**, DRIVEN BLOG (Mar. 16, 2020) | Author.

50. **Electronic Discovery and Seizure Orders Under the Defend Trade Secrets Act**, LEGALTECH NEWS (Feb. 27, 2020) | Author.

51. **Key Changes from the Newly Revised CCPA Regulations**, DRIVEN BLOG (Feb. 13, 2020) | Author.

52. **The Need for Continuing Federal Judiciary Education Regarding the 2015 FRCP Amendments**, LEGALTECH NEWS (Jan. 8, 2020) | Author.

53. **Lessons Learned for 2020: Spotlighting the Top eDiscovery Cases from 2019**, DRIVEN BLOG (Jan. 7, 2020) | Author.

54. **Court Criticizes Model eDiscovery Order, Spotlights Advanced Search Methodologies**, DRIVEN BLOG (Jan. 3, 2020) | Author.

55. **Information Governance is Key in New DOJ Antitrust Guidance on Corporate Compliance Programs**, DRIVEN BLOG (Nov. 18, 2019) | Author.

56. **Sedona Working Group 1 Meeting Spotlights Key E-Discovery Cases from 2019**, LEGALTECH NEWS (Nov. 12, 2019) | Author.

57. **Select Recent Decisions Regarding Federal Rule of Civil Procedure 37(e)**, THE SEDONA CONFERENCE (Oct. 2019) | Author.

58. **New Cases Provide Insights on the FRCP 37(e) "Reasonable Steps to Preserve" Requirement**, LEGALTECH NEWS (Sept. 5, 2019) | Author.

PHILIP J. FAVRO, CURRICULUM VITAE                                       philip.favro@innovativedriven.com

59. **New Cases Spotlight Production Pitfalls in eDiscovery with Slack**, DRIVEN BLOG (July 19, 2019) | Author.

60. **Recent Cases Spotlight the Challenges of Cross-Border Data Protection Laws in eDiscovery**, LEGALTECH NEWS (June 17, 2019) | Author.

61. **WeChat: A New Frontier in ESI Preservation and Production**, DRIVEN BLOG (May 21, 2019) | Author.

62. **Fatal Attraction? Examining the Merits of Ephemeral Messaging**, DRIVEN BLOG (May 1, 2019) | Author.

63. **Practical Tips for Lawyers on How to Preserve Relevant Text Messages**, DRIVEN BLOG (Apr. 29, 2019) | Author.

64. **Reducing ESI Preservation Obligations with Proportionality and Metrics**, DRIVEN BLOG (Apr. 22, 2019) | Author.

65. **Addressing Possible Pitfalls from Rule 502(d) Orders**, DRIVEN BLOG (Mar. 19, 2019) | Author.

66. **Lessons Learned for 2019: Spotlighting the Top eDiscovery Cases from 2018**, DRIVEN BLOG (Jan. 31, 2019) | Author.

67. **"Zombie Cookies" and eDiscovery: Baking Privacy into the Proportionality Analysis**, DRIVEN BLOG (Dec. 17, 2018) | Author.

68. **Utah Court Rejects Disclosure of TAR Process, Offers Insights on Transparency and Cooperation**, DRIVEN BLOG (Nov. 19, 2018) | Author.

69. **Judge Parker Reaffirms Rule 502(d) Protections, Rejects 'Quick Peek' Procedure**, LEGALTECH NEWS (Oct. 24, 2018) | Author.

70. **Using the FRCP 26(f) Conference to Effectively Address ESI Preservation Issues**, DRIVEN BLOG (Oct. 18, 2018) | Author.

71. **SF Court Rejects eDiscovery Sanctions, Provides Guidance on Defensible Preservation**, DRIVEN BLOG (Aug. 30, 2018) | Author.

72. **Vegas Court Spotlights the Importance of Custodian Interviews with New ESI Sources**, LEGALTECH NEWS (Aug. 30, 2018) | Author.

73. **Safely Navigating Social Media Discovery with The Sedona Conference Primer on Social Media**, BLOOMBERG BNA and BIG LAW BUSINESS (Aug. 2018) | Co-Authored with Lauren Schwartzreich (Littler, LLP).

74. **New Case Highlights the Importance of an Effective Information Retention Program**, DRIVEN BLOG (June 7, 2018) | Author.

75. **"Follow the Money" and Metrics: A User's Guide to Proportionality in the Age of e-Discovery**, THE E-DISCOVERY TEAM (Apr. 8, 2018) | Author.

76. **Surfing for Sanctions under Federal Rule of Civil Procedure 37(e)**, DRIVEN BLOG (Mar. 28, 2018) | Author.

77. **The eDiscovery Legacy of Judge Andrew Peck: Cooperative Advocacy and Technology**, DRIVEN BLOG (Mar. 23, 2018) | Author.

78. **Analytics, Metrics, and Sampling: Tools Needed for Litigating in the Age of eDiscovery**, Bloomberg Law, DIGITAL DISC. & E-EVID., 18 DDEE 170 (Mar. 15, 2018) | Author.

79. **Recent Cases Offer Lessons on the Limitations of Discovery Sanctions**, LEGALTECH NEWS (Feb. 20, 2018) | Author.

80. **Waymo v. Uber Trade Secret Lawsuit Settles, Provides Guidance on Discovery Strategy**, DRIVEN BLOG (Feb. 9, 2018) | Author.

81. **The Challenges of Handling eDiscovery in an Increasingly Mobile World**, DRIVEN BLOG (Feb. 7, 2018) | Author.

82. **Lessons Learned for 2018: Spotlighting the Top eDiscovery Cases from 2017**, DRIVEN BLOG (Jan. 4, 2018) | Author.

83. **Three Key eDiscovery Lessons from New TAR Case Winfield v. City of New York**, LEGALTECH NEWS (Dec. 12, 2017) | Author.

84. **Unfinished Business: A Wish List for New FRCP Amendments**, AMERICAN LAWYER and LEGALTECH NEWS (Dec. 1, 2017) | Co-Authored with Gareth Evans (Gibson Dunn & Crutcher, LLP).

85. **The "Uber" Problem with Self-Destructing Messaging Apps**, DRIVEN BLOG (Nov. 30, 2017) | Author.

86. **The GDPR: Five Changes to EU Data Protection Law You Need to Know**, DRIVEN BLOG (Nov. 28, 2017) | Author.

87. **Key eDiscovery Insights for the Courts and Counsel from the Federal Judicial Center**, DRIVEN BLOG (Nov. 14, 2017) | Author.

88. **Smart Discovery Practices Required for Addressing Smartphone Discovery**, DRIVEN BLOG (Oct. 3, 2017) | Author.

89. **eDiscovery and Ethical Considerations for Social Media**, DRIVEN BLOG (Aug. 29, 2017) | Author.

90. **Social Media e-Discovery: What You Need to Know before You Preserve**, THE RELATIVITY BLOG (Aug. 15, 2017) | Author.

91. **Wells Fargo Breach Spotlights the Need for Discovery Competence**, LEGALTECH NEWS (Aug. 8, 2017) | Author.

92. **New Mandatory Initial Disclosures Could Radically Change Discovery**, DRIVEN BLOG (July 25, 2017) | Author.

93. **The Critical Role of Sampling in Discovery**, LEGALTECH NEWS (July 18, 2017) | Author.

94. **The "Business Judgment" Discovery Rule and its Impact on Information Governance**, LEGALTECH NEWS (May 11, 2017) | Author.

95. **Social Messaging Applications Herald a New Era of Discovery Challenges**, DRIVEN BLOG (Mar. 22, 2017) | Author.

PHILIP J. FAVRO, CURRICULUM VITAE                    philip.favro@innovativedriven.com

96.  **The Art of the Litigation Hold: Preserving Electronic Data**, DRIVEN BLOG (Feb. 17, 2017) | Author.

97.  **Three Expert Lessons about Digital Threats**, TODAY'S GENERAL COUNSEL (Feb/Mar 2017) | Author.

98.  **Personal Cloud Applications Continue to Imperil Company Trade Secrets**, LEGALTECH NEWS (Jan. 25, 2017) | Author.

99.  **Breakdowns and Tune-Ups: Getting the Litigation Hold Process Right**, DRIVEN BLOG (Jan. 24, 2017) | Author.

100. **Lessons Learned for 2017: Spotlighting the Top eDiscovery Cases from 2016**, DRIVEN BLOG (Jan. 11, 2017) | Author.

101. **Lessons from the Experts on Addressing Digital Age Threats**, DRIVEN BLOG (Dec. 13, 2016) | Author.

102. **Leading the Culture Change on Discovery Practice**, BLOOMBERG LAW (Dec. 1, 2016) | Co-Authored with Kevin F. Brady (Redgrave, LLP).

103. **Three Lessons on Digital Threats (and 4 Bonus Tips from a New IG Playbook)**, THE RELATIVITY BLOG (Nov. 29, 2016) | Author.

104. **New Court Decision Refuses to Require the Use of Technology-Assisted Review**, DRIVEN BLOG (Oct. 26, 2016) | Author.

105. **Court Sanctions Safeway, Spotlights the Importance of Conducting a Reasonable Search**, DRIVEN BLOG (Oct. 19, 2016) | Author.

106. **Old Habits Die Hard: The Difficulty in Getting Courts to Follow Rules Changes**, BIG LAW BUSINESS and BLOOMBERG LAW (Oct. 3, 2016) | Author.

107. **The New Information Governance Playbook for Addressing Digital Age Threats**, COALITION OF TECHNOLOGY RESOURCES FOR LAWYERS (Oct. 2016) | Co-Author.

108. **Insights on eDiscovery from the 2016 Norton Rose Fulbright Litigation Trends Survey**, DRIVEN BLOG (Sep. 22, 2016) | Author.

109. **Three Tips to Negotiating TAR Protocols in e-Discovery**, THE RELATIVITY BLOG (Sept. 20, 2016) | Author.

110. **Tips for a Cost-Effective eDiscovery Process**, DRIVEN BLOG (Sep. 16, 2016) | Author.

111. **Mobile Devices Continue to Roil Information Governance Measures**, DRIVEN BLOG (Sep. 1, 2016) | Author.

112. **Confirming the Growing Use of Analytics Tools in Corporate Legal**, THE RELATIVITY BLOG (Aug. 26, 2016) | Author.

113. **Lessons Learned from New Technology-Assisted Review Case Law**, DRIVEN BLOG (Aug. 17, 2016) | Author.

114. **What Must Happen Before Technology is Widely Used in e-Discovery?**, BIG LAW BUSINESS and BLOOMBERG BNA (Aug. 2, 2016) | Author.

115. **2016 Guidelines Regarding the Use of Technology-Assisted Review**, COALITION OF TECHNOLOGY RESOURCES FOR LAWYERS (Aug. 2016) | Editor-in-Chief and Lead Author.

116. **Protecting Corporate Trade Secrets in the Age of Personal Clouds**, THE RECORDER (July 21, 2016) | Author.

117. **Courts Make the Case for Information Governance**, LEGALTECH NEWS (June 21, 2016) | Author.

118. **Court Issues Doomsday Sanctions, Finds Counsel Lacking eDiscovery Competence**, DRIVEN BLOG (June 17, 2016) | Author.

119. **Oracle v. Google Trial Highlights Importance of Privilege Reviews**, BIG LAW BUSINESS and BLOOMBERG LAW (May 11, 2016) | Author.

120. **The Art of the Litigation Hold: Lessons Learned for eDiscovery**, DRIVEN BLOG (Apr. 27, 2016) | Author.

121. **Tracking Newer Data Sources for eDiscovery: GPS, Toll Transponders, and Beyond**, DRIVEN BLOG (Apr. 6, 2016) | Author.

122. **Closing the Loop on Unreasonable eDiscovery Requests**, DRIVEN BLOG (Mar. 23, 2016) | Author.

123. **Catching the Information Governance Wave**, DRIVEN BLOG (Feb. 22, 2016) | Author.

124. **Lessons Learned From a UK Predictive Coding Order**, BIG LAW BUSINESS and BLOOMBERG BNA (Feb. 19, 2016) | Author.

125. **Proportionality Standards: The New Touchstone for Discovery?**, BIG LAW BUSINESS and BLOOMBERG LAW (Jan. 25, 2016) | Author.

126. **The Interplay between Proportionality and Information Governance**, DRIVEN BLOG (Jan. 25, 2016) | Author.

127. **Polluting the Corporate Environment with Employee Use of Personal Clouds**, DRIVEN BLOG (Jan. 7, 2016) | Author.

128. **The 2016 Horoscope: 10 Predictions for the Year in E-Discovery**, LEGALTECH NEWS (Dec. 29, 2015) | Author.

129. **Navigating the choppy legal waves of connectivity**, ITPROPORTAL.COM (Sep. 4, 2015) | Author.

130. **New Regulatory Climate Requires Enhanced Compliance Processes**, BIG LAW BUSINESS and BLOOMBERG LAW (Sep. 1, 2015) | Author.

131. **Navigating the choppy legal waters of the Internet of Things**, LEGAL TECHNOLOGY INSIDER (Aug. 26, 2015) | Author.

132. **Information Governance: Busting Three Big Myths**, INFORMATION GOVERNANCE INITIATIVE (Aug. 18, 2015) | Author.

133. **'Rio Tinto' and Using Keywords in Predictive Coding**, CORPORATE COUNSEL (Aug. 13, 2015) | Author.

PHILIP J. FAVRO, CURRICULUM VITAE                               philip.favro@innovativedriven.com

134. **Addressing the Continuing Challenges of Mobile Devices**, LEGAL TECHNOLOGY NEWS (Aug. 3, 2015) | Author.

135. **Surfing the choppy legal waves of Internet of Things: What Your Business Needs to Know**, INFORMATION AGE (July 17, 2015) | Author.

136. **Do You Know Your BYOCs?**, LEGAL TECHNOLOGY NEWS (July 13, 2015) | Author.

137. **IoT Data Collection Raises Legal, eDiscovery Questions**, DATA INFORMED (May 21, 2015) | Author.

138. **Is the Debate on Predictive Coding Ending?**, CORPORATE COUNSEL (May 17, 2015) | Author.

139. **The Missing Link: Law Firm Data Security**, BIG LAW BUSINESS and BLOOMBERG LAW (Apr. 6, 2015) | Author.

140. **The Question of Disclosure in Predictive Coding**, BIG LAW BUSINESS and BLOOMBERG BNA (Mar. 19, 2015) | Author.

141. **Why Hillary Clinton's Email Troubles Matter for In-House Counsel**, INSIDE COUNSEL (Mar. 17, 2015) | Author.

142. **The Sony Hack Signals the Need for Information Governance**, INSIDE COUNSEL (Jan. 22, 2015) | Author.

143. **How Analytics Tools Can Help Agencies Sharpen eDiscovery**, GCN (Jan. 15, 2015) | Author.

144. **The Impact of Cloud Computing and Mobile Devices on Litigation Holds**, LAW JOURNAL NEWSLETTERS (Jan. 2015—Vol. 31, No. 9) | Author.

145. **10 Predictions for 2015 E-Discovery**, LAW TECHNOLOGY NEWS (Dec. 12, 2014) | Author.

146. **Mobile Device Preservation Failures Lead to Doomsday eDiscovery Sanctions**, DRUVA BLOG: DATA PROTECTION AND BEYOND (Sep. 17, 2014) | Author.

147. **The Critical Role CIOs Play in e-Discovery**, FEDERAL COMPUTER WEEK (Sep. 8, 2014) | Author.

148. **Guidelines Regarding the Use of Technology-Assisted Review**, COALITION OF TECHNOLOGY RESOURCES FOR LAWYERS (CTRL) (Aug. 2014) | Editor-in-Chief and Contributing Author.

149. **Understanding the litigation hold landscape in 2014**, INSIDE COUNSEL (Sep. 5, 2014) | Author.

150. **The eDiscovery Complexities of Mobile Devices**, DRUVA BLOG: DATA PROTECTION AND BEYOND (July 16, 2014) | Author.

151. **Information Governance**, THE CORPORATE COUNSELOR (July 2014— Vol. 29, No. 4) | Author.

152. **The New ESI Sanctions Framework under the Proposed Rule 37(e) Amendments**, THE AMERICAN LAW INSTITUTE (Summer 2014) | Author.

153. **The Challenge of Safeguarding Today's Attorney-Client Privilege**, INSIDE COUNSEL (June 5, 2014) | Author.

PHILIP J. FAVRO, CURRICULUM VITAE                           philip.favro@innovativedriven.com

154. **The New ESI Sanctions Framework under the Proposed Rule 37(e) Amendments**, EDDE JOURNAL (ABA) (Summer 2014) | Author.

155. **What California's e-discovery Ethics Opinion means for In-house Counsel**, INSIDE COUNSEL (May 9, 2014) | Author.

156. **Addressing The Impact of Mobile Devices on In-house Counsel**, INSIDE COUNSEL (Apr. 9, 2014) | Author.

157. **Changing Discovery Culture One Step at a Time**, LAW TECHNOLOGY NEWS (Feb. 2014—print edition) | Co-Authored with the Hon. Mitchell D. Dembin, Magistrate Judge (S.D. Cal.) | Author.

158. **Just Three Simple Steps: The Key to a Better E-Discovery Culture Lies with In-House Counsel**, CORPORATE COUNSEL (Feb. 1, 2014) | Co-Authored with the Hon. Mitchell D. Dembin, Magistrate Judge (S.D. Cal.).

159. **The Impact of Oracle America v. Google: Are You Certain Your Emails Are Privileged?**, ACC DOCKET (Jan./Feb. 2014) | Co-Authored with Shawn Cheadle, General Counsel, Lockheed Space Systems | Author.

160. **Promiscuous Email**, LAW TECHNOLOGY NEWS (Dec. 2013) | Author.

161. **Changing Discovery Culture One Step at a Time**, LAW TECHNOLOGY NEWS (Dec. 5, 2013) | Co-Authored with the Hon. Mitchell D. Dembin, Magistrate Judge (S.D. Cal.).

162. **BYOD and Beyond: ACC Addresses Security Risks in the Digital Age**, LAW TECHNOLOGY NEWS (Nov. 1, 2013) | Author.

163. **ACC Explores Cross-Border Discovery Dilemmas**, LAW TECHNOLOGY NEWS (Nov. 1, 2013) | Author.

164. **Key Discovery Changes Proposed to the Federal Rules of Civil Procedure**, LITIGATION SUPPORT TODAY (Aug/Oct 2013) | Author.

165. **Technology: The Impact of Digital Age Innovations on the Attorney-Client Privilege**, INSIDE COUNSEL (Oct. 25, 2013) | Author.

166. **Trial: The Forgotten Phase of Litigation after Discovery**, LAW TECHNOLOGY NEWS (Oct. 18, 2013) | Author.

167. **The Promiscuous Use of Email Creates Cross-Border Nightmares**, LAW TECHNOLOGY NEWS (Oct. 17, 2013) | Author.

168. **Addressing Cross-Border Data Protection Traps**, LAW TECHNOLOGY NEWS (Oct. 17, 2013) | Author.

169. **Assessing the Impact of the Newly Proposed Amendments to the Federal Rules of Civil Procedure on the Discovery Process**, EDDE JOURNAL (ABBA Autumn 2013) | Author.

170. **ESI Sampling: The New Trend**, THE RECORDER (Sep. 9, 2013) | Co-Authored with the Hon. Paul S. Grewal, U.S. Magistrate Judge (N.D. Cal.).

171. **The "Other" Proposed Amendments to the Federal Rules of Civil Procedure**, INSIDE COUNSEL, July 31, 2013 | Author.

PHILIP J. FAVRO, CURRICULUM VITAE                    philip.favro@innovativedriven.com

172. **Defensible Deletion: The Touchstone of Effective E-Discovery**, TECHNOLOGY FOR THE LITIGATOR (ABA) (July 24, 2013) | Author.

173. **Push vs. Pull: How Much Oversight is Required of In-house Counsel in e-Discovery?**, ACC DOCKET (May 2013) | Co-Authored with Shawn Cheadle, General Counsel, Lockheed Space Systems | Author.

174. **E-Disclosure: Disclosure Trends**, THE LAWYER (May 7, 2013) | Author.

175. **Will Changes to the Federal Rules Reduce e-Discovery Burdens?**, INSIDE COUNSEL (May 3, 2013) | Author.

176. **The Challenges of eDiscovery and Cloud Computing**, NYSBA SENIOR LAWYERS SECTION (Spring 2013—Vol. 5, No.1) | Co-Author.

177. **Cross-Border Data Privacy Laws**, THE RECORDER (Feb. 12, 2013) | Author.

178. **Proportionality: The Key to Reducing Corporate e-Discovery Costs**, INSIDE COUNSEL (Jan. 22, 2013) | Author.

179. **The Challenges of eDiscovery and Cloud Computing**, NYSBA CORPORATE COUNSEL SECTION (Winter 2013—Vol. 30, No.3) | Co-Author.

180. **Defensible Deletion**, THE RECORDER (Dec. 24, 2012) | Author.

181. **Peer Panel: eDisclosure**, THE LAWYER (Nov. 26, 2012) | Author.

182. **Refuge from the Storm: Defensible Deletion and the Federal Rule 37(e) Safe Harbor**, THOMSON REUTERS (Nov. 2012) | Author.

183. **Finding a Safe Harbor: Defensible Deletion and Federal Rule 37(e)**, INSIDE COUNSEL (Nov. 14, 2012) | Author.

184. **Keeping Pace with Disclosure Needs in a 'More for Less' but Increasingly Litigious World**, EUROPEANGC (Oct. 2012) | Author.

185. **UK eDiscovery News: How to Prepare for Civil Procedure Rule 31.5**, LEGAL TECHNOLOGY INSIDER (Oct. 15, 2012) | Author.

186. **The eDiscovery "Passport": The First Step to Succeeding in International Legal Disputes**, LEGAL WEEK (Oct. 3, 2012) | Author.

187. **Following the Golden Rules of eDiscovery: What Litsupport Professionals Need to Know**, LITIGATION SUPPORT TODAY (Aug/Oct 2012) | Author.

188. **The Challenges of eDiscovery and Cloud Computing**, NYSBA INTERNATIONAL LAW PRACTICUM (Autumn 2012—Vol. 25, No.2) | Co-Author.

189. **Conducting eDiscovery in Glass Houses: Are You Prepared for the Next Stone?**, LEGAL WEEK (Oct. 3, 2012) | Author.

190. **Kleen Products Ruling Confirms Significance of Cooperation and Proportionality in eDiscovery**, LEGAL WEEK (Oct. 3, 2012) | Author.

PHILIP J. FAVRO, CURRICULUM VITAE                              philip.favro@innovativedriven.com

191. **Decrease Your Litigation Costs and Risks by Following the Golden Rules of eDiscovery**, RECAP CALIFORNIA ALLIANCE OF PARALEGAL ASSOCIATIONS (Fall/Sep. 2012) | Author.

192. **International Mystery: How Information Governance Can Help Solve Cross-Border Data Protection Laws**, INSIDE COUNSEL (Sep. 6, 2012) | Author.

193. **Five Proportionality Principles That Can Reduce eDiscovery Costs and Burdens**, EDDE JOURNAL (ABA), Summer 2012 | Author.

194. **How Organizations Should Address Cross-Border Data Protection Laws**, PRACTICAL LAW (June 29, 2012) | Author.

195. **Drowning in International Waters? How to Stay Abreast of Treacherous Cross-Border eDiscovery Issues**, INSIDE COUNSEL (Apr. 11, 2012) | Author.

196. **Greater Global Integration and More International Litigation: A Planet-Sized Headache for European Legal Departments?**, EUROPEANGC (April 2012) | Author.

197. **The eDiscovery Passport**, LEGAL TECHNOLOGY INSIDER (Apr. 11, 2012) | Author.

198. **Look Before You Leap! Avoiding Pitfalls When Moving eDiscovery to the Cloud**, LAW JOURNAL NEWSLETTERS (Apr. 2012) | Author.

199. **The Golden Rules of eDiscovery: Gaining the Advantage in Litigation**, KM WORLD (Feb. 2012) | Author.

200. **Rule 37(e): The Touchstone for Effective Information Management**, METROPOLITAN CORPORATE COUNSEL (Jan. 17, 2012) | Author.