UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE LS 340, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 23-md-03084-CRB   (LJC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ENFORCE PTO NO. 2 AND TO COMPEL DEFENDANTS TO PRODUCE LITIGATION HOLD AND PRESERVATION INFORMATION**<br><br>Re: ECF No. 159 |

Pending before the Court is Plaintiffs' Motion to Enforce PTO No. 2 and to Compel Defendants to Produce Litigation Hold and Preservation Information (Motion). ECF No. 159.[1] Defendants Uber Technologies, Inc., et al. (collectively, Uber) filed an opposition. ECF No. 172. Plaintiffs filed a further declaration in support of their Motion on January 8, 2024 (ECF No. 184), shortly before the Court commenced its hearing. ECF No. 187. Having read the papers filed by the parties and carefully considered their arguments and relevant authority, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for the reasons discussed herein.

I.    **BACKGROUND**

This multi-district litigation (MDL) centers on allegations that Uber failed to implement appropriate safety precautions to protect passengers, and that, as a result, Plaintiffs suffered sexual

---

[1] Plaintiffs concurrently filed an Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (ECF No. 160), and provisionally filed under seal portions of the Motion as well as all its accompanying exhibits. Plaintiffs took no position on whether the materials should be sealed, and Uber did not file a statement or declaration in support of sealing as required by Local Rule 79-5(f)(3). Thus, the Court denied the motion. ECF No. 181. On January 9, 2024, the Court ordered Plaintiffs to publicly file unsealed and unredacted versions of the Motion and its exhibits. ECF No. 189. Because the unredacted versions of the Motion and its exhibits are not yet publicly filed, this Order will hereinafter cite to the versions of the Motion and its exhibits filed under seal, with the expectation that Plaintiffs will comply with the Court's order to timely file the unredacted versions.

assault or harassment by drivers using the Uber application. ECF No. 1. On October 4, 2023, the Judicial Panel on Multidistrict Litigation granted the petition to centralize federal cases bringing these allegations against Uber and transferred an initial set of cases from eleven districts to the Northern District of California. Id. The cases were assigned to Judge Breyer. Id.

The allegations against Uber are not new. Numerous cases have been filed against Uber in California Superior Court. Two years prior to the order initiating this MDL, the California Judicial Council on Coordination Proceedings (JCCP) granted a petition to coordinate individual cases filed in the California state courts against Uber based on substantially similar allegations. ECF No. 38 at 3.[2] In the JCCP proceeding and this MDL, Plaintiffs allege that as early as 2014, Uber became aware that its drivers were engaging in sexual misconduct or sexual assault against its passengers. ECF No. 38-3 at 3; see e.g., ECF No. 141 at 2 (Cazares Compl. ¶ 4).[3]

On November 3, 2023, Judge Breyer issued Pretrial Order (PTO) No. 2, which was an "interim measure pending the parties' proposal of a more tailored order concerning the preservation of relevant information," and a way to "ensure the preservation of all documents and ESI that may be discoverable in relation to any of the issues in this litigation…" ECF No. 65 at 1. Thereafter, in November, the parties began to meet and confer to discuss the scope of Uber's evidence preservation efforts as well as a proposed protective order. ECF Nos. 160-4, 160-5, 160-6. Uber declined to provide certain information regarding its preservation efforts until a protective order was entered. ECF No. 160-6 at 2–3.

Unable to come to an agreement as to the preservation issue, Plaintiffs filed their Motion on December 14, 2023. As for the protective order, the parties' disputes continued until they were resolved with the final Protective Order being issued on December 28, 2023. ECF No. 176.[4]

---

[2] Unless specified otherwise, the Court refers to the PDF page number generated by the Court's e-filing system.

[3] Over a thousand cases involving incidents of sexual assault or harassment outside of California were dismissed from the JCCP proceeding on *forum non conveniens* grounds. ECF No. 38 at 6. The dismissal order is now on appeal. Id. It appears that at least ninety of the Plaintiffs in the present federal actions are among those whose cases were dismissed from the JCCP proceeding. Id.

[4] Judge Breyer's PTO No. 4, issued on December 6, 2023, required the parties to meet and confer regarding a discovery plan and protective order, and to file their proposals by December 14, 2023. ECF No. 152 at 6–7.

Thereafter, Uber provided some information concerning its preservation efforts on January 4 and 8, 2024. The morning of the Court's hearing on the Motion, Plaintiffs submitted a supplemental declaration indicating that on January 4, 2024, Uber had produced a list of the job titles of approximately 15,700 past and current Uber employees subject to a legal hold. ECF No. 184. The holds provide an exception to any of Uber's automatic deletion policies. ECF No. 172 at 6. 10,200 of the employees are subject to legal holds not in connection with this litigation. The disclosure did not include the names of the employees or the dates when the litigation holds were issued. At the hearing on January 8, 2024, Uber confirmed that it had also produced that morning documents from the JCCP proceeding, which it claims represents all the information Plaintiffs seek as to Uber's ESI sources, including custodial and non-custodial sources. Plaintiffs had not yet reviewed the entire document production and asked that the Court order disclosure of the categories of ESI source information requested in their Motion, to the extent such information has not already been disclosed by Uber. Uber offered to provide a status report detailing its disclosures.

In their Motion, Plaintiffs request that the Court order Uber to: (1) immediately produce basic details surrounding its litigation holds, including the names, job titles, and dates of employment of the recipients of the hold notices, the dates of issue, and what litigation or claim the holds relate to, (2) immediately disclose information as to the ESI sources enumerated in PTO No. 2, Paragraph 3—including non-custodial sources—that it has preserved and when it preserved them, when such ESI sources were used, what they were used for, the general types of information they housed, and which Uber employees used or had access to these sources, and (3) suspend Uber's company-wide document destruction policies for a period of time to allow Plaintiffs to determine what, if any, relevant ESI has been destroyed. ECF No. 160-3 at 4-7.

## II.    LEGAL STANDARD

"As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Under "ordinary circumstances," it is of course not wrongful for a manager to instruct his or her employees to comply with a valid

document retention policy. Eacret v. Crunch, LLC, No. 18CV04374JSTRMI, 2022 WL 4466718, at *2 (N.D. Cal. Sept. 26, 2022) (quoting Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311, 1319–20 (Fed. Cir. 2011)).  However, "once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d at 1070 (quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)).

The duty to preserve evidence "includes an obligation to identify, locate, and maintain information that is relevant to specific, predictable, and identifiable litigation." Apple v. Samsung Electronics Co., Ltd., 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) (quoting The Sedona Conf. Working Group on Electronic Document Retention & Production, the Sedona Conf. Comment on Legal Holds: The Trigger and the Process 1 (public cmt. Aug. 2007)).  Organizations are not generally required to "preserve every email or electronic document. . . To require such broad preservation would cripple organizations that almost always are involved in litigation, and make discovery even more costly and time-consuming." The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production (The Sedona Principles), 19 Sedona Conf. J. 1, 95 (2018).

**III.   DISCUSSION**

    **A.   Information Regarding Uber's ESI Custodians and Litigation Holds**

Plaintiffs argue that Uber is unreasonably withholding basic facts surrounding its litigation holds, such as the names, job titles, and dates of employment of the recipients of the hold notices, the dates of issue, and what litigation or claim the holds relate to.  ECF No. 160-3 at 4–5, 7. Plaintiffs claim their request does not implicate any privilege, and the exchange of such information is contemplated by the federal and local rules as well as the Northern District of California Rule 26(f) Checklist regarding ESI.  Id. at 5.

Uber, on the other hand, argues that the Rule 26(f) Checklist plainly states that parties may provide "the names *and/or* general job titles or descriptions of custodians for whom ESI will be preserved."  ECF No. 172 at 13.  Here, Uber has already provided Plaintiffs with a list of job titles (with no names) for the approximately 15,700 past and current Uber employees subject to a legal

4

hold. ECF No. 184. Uber further argues that the more detailed information regarding its litigation holds sought by Plaintiffs is "plainly privileged," as it concerns matters contained within the litigation holds themselves. ECF No. 172 at 13–14.

Uber's position is not supported by the applicable law. "[T]he basic details surrounding the litigation hold" are not protected by the attorney-client privilege and the work product doctrine. Cohen v. Trump, No. 13-CV-2519-GPC WVG, 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015) (internal citation omitted). In fact, the Cohen court ordered in a related action disclosure of "the names and titles of the persons notified of the litigation hold and the dates of such notifications." Id.; see also Thomas v. Cricket Wireless, LLC, No. 19CV07270WHAAGT, 2020 WL 7344742, at *3 (N.D. Cal. Dec. 14, 2020) (noting that "basic details" about litigation holds are "fair game," including "when and to whom the litigation hold notices were given.") Plaintiffs are not "entitled to probe into what exactly" Uber's employees were told by its attorneys through the litigation holds, they are "certainly entitled to know" what Uber's employees are doing "with respect to collecting and preserving ESI." In re eBay Seller Antitrust Litig., No. C 07-01882 JF (RS), 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007). "Even though such inquiry may, indirectly, implicate communications from counsel to the employees, the focus can and should be on the facts of what [Uber's] document retention and collection policies are," including the kinds and categories of ESI preserved, rather than how the litigation holds were worded or how they describe the legal issues in the action. Id.

Here, the required disclosures include whether the litigation hold relates to a case or complaint involving allegations of sexual assault or sexual harassment. Uber urged that Plaintiffs are not entitled to such information. Plaintiffs, however, are entitled to information to evaluate whether Uber has met its preservation obligations. Given that a sexual assault or sexual harassment case or complaint has the potential to put Uber on notice of its duty to preserve potentially relevant evidence, it is warranted that Uber specify whether the litigation hold pertains to a sexual assault or sexual harassment case or complaint involving a driver using its application. This information is also necessary because, without it, it is not possible to tell whether Uber's litigation holds from other actions are even related to the fulfillment of its preservation obligations

in this MDL.

As such, the Court hereby **GRANTS** Plaintiffs' request for basic information concerning its litigation holds.

### B. Information Regarding Uber's ESI Sources

Plaintiffs also argue that Uber has refused to disclose information about the ESI sources enumerated in PTO No. 2, Paragraph 3—including non-custodial sources—that it has preserved and when it has preserved them. ECF No. 160-3 at 4. They claim that the only thing Uber has told Plaintiffs is that employees who are on hold "have been advised that the hold for this matter applies to data sources listed in Paragraph 3." ECF No. 160-5 at 2. Plaintiffs believe this is not sufficient for them to evaluate whether Uber is complying with its preservation obligations in this case.

At the hearing, Uber claimed that the ESI source information which Plaintiffs seek is found within the JCCP documents it produced that morning. However, Plaintiffs had not been able to fully review these documents to confirm whether they have received all the information they request from Uber. Moreover, the Court has not reviewed these documents and cannot independently verify Uber's assertion. As such, the Court will consider whether Plaintiffs are entitled to the information requested as to Uber's ESI sources, and if so, order Uber to disclose such information, to the extent it has not already done so.

Courts routinely hold that parties are "entitled to know what kinds and categories of ESI" a party has collected and preserved and what specific actions were undertaken to that end. Cohen, 2015 WL 3617124, at *7 (case citations omitted). Thus, the disclosure of information indicating non-custodial sources of the ESI is expected in the ordinary course of discovery. See United States District Court, Northern District of California, "Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information," (Rule 26(f) Checklist), Section I, available at https://www.cand.uscourts.gov/filelibrary/1118/ESI_Checklist-12-1-2015.pdf. In fact, Comment 5.c of the Sedona Principles contemplates that parties should discuss and consider non-custodial as well as custodial sources of relevant ESI. See The Sedona Principles, 19 Sedona Conf. J. at 101–02 ("In assessing the scope of a preservation duty, as soon as practicable, parties should consider

1  persons likely to have relevant ESI, as well as non-custodial sources of relevant ESI."). Likewise,
2  the Rule 26(f) Checklist calls for the parties to identify and discuss a "list of systems, if any, that
3  contain ESI not associated with individual custodians," such as enterprise databases. Rule 26(f)
4  Checklist, Section I. The disclosure of non-custodial sources will facilitate the parties' ability to
5  meet and confer regarding the scope of evidence preservation, and if necessary, propose a
6  modified preservation order for this Court's consideration. See ECF No. 65 at 1.

7  Accordingly, the Court **GRANTS IN PART** Plaintiffs' request for Uber to disclose
8  information about the ESI sources it has preserved, specifically, what sources of ESI it preserved,
9  when each source was preserved, when each ESI source was used, what each source was used for,
10 and the general types of information housed or contained in each source. This information shall
11 be provided in the form of a declaration and/or list, unless such a list or declaration is already
12 included in the JCCP materials that were disclosed on January 8, 2024. Given the number of
13 current and former employees at Uber, and the burdens likely associated with parsing out such
14 information, the Court declines to order Uber to identify or provide information about which
15 employees used or had access to each source. Plaintiffs, however, may inquire about this topic in
16 a subsequent deposition, if such a deposition is noticed.

17 **C.     Suspension of Uber's Company-Wide Document Destruction Policies**

18 Finally, Plaintiffs argue that because Uber's document destruction policies are still in
19 place, "it is plausible that relevant ESI is being destroyed every day." ECF No. 160-3 at 3.
20 Plaintiffs raise these concerns with respect to potentially relevant ESI that is not subject to one of
21 Uber's "self-selecting litigation holds." Id. at 6. To address their concerns, Plaintiffs request an
22 order that suspends Uber's policies that institute the automatic deletion of records company-wide.
23 As noted above, litigants are not generally required to preserve all electronic records, and the
24 principles of proportionality guide the scope of a party's duty to preserve potentially relevant
25 evidence. See The Sedona Principles, 19 Sedona Conf. J. at 93, 95.

26 According to Plaintiffs, passenger sexual assault litigation began no later than 2013, yet
27 from September 2015 to January 2023, Uber maintained only a six-month email retention policy,
28 and in 2020, it deleted all Slack messages more than 90 days old. ECF No. 160-3 at 6. Since

1  January 2023, Uber's policy has been to retain emails not subject to a litigation hold for 24
2  months.  Id.  Plaintiffs request that the Court suspend Uber's automatic document destruction
3  policies until the parties meet and confer to work on a more tailored preservation order as
4  contemplated by PTO No. 2.  Id.

5  Uber, for its part, argues that such a request is overbroad.  Uber points out that it conducts
6  business that is unrelated to its rideshare application.  Yet Plaintiffs seek a company-wide
7  suspension of Uber's policies that provide for the automatic deletion of data.  Furthermore, Uber
8  contends that there is no legal basis to support Plaintiffs' request to completely suspend Uber's
9  document destruction policies.  ECF No. 172 at 14–18.  The Court agrees.  Plaintiffs' request is
10 exceedingly broad.  Even the court in Apple did not order such broad relief.  There, Samsung
11 never suspended its email system's biweekly automatic destruction policy, even as to its key
12 custodians.  Apple, 881 F. Supp. 2d at 992.  Here, Uber has already suspended automatic deletion
13 of emails and electronic data for thousands of employee custodians.  The Apple case does not
14 contemplate a company-wide suspension of automatic deletion for all custodial and non-custodial
15 sources of ESI regardless of their connection to the claims and defenses in the case.

16 Nor have Plaintiffs made clear that the relief they seek is reasonably necessary to address
17 their concerns regarding documents destroyed in prior years pursuant to prior versions of Uber's
18 document retention policies.  Plaintiffs suggest that going forward, it is plausible that potentially
19 relevant ESI could be destroyed by Uber if it is not protected by an existing legal hold.  Yet, the
20 relief that Plaintiffs seek is exceedingly broad and generally disfavored.  The current record does
21 not persuade the Court that it is proportionate to the needs of the case at this time.

22 Accordingly, Plaintiffs' request to suspend Uber's company-wide document destruction
23 policies is **DENIED** without prejudice.

24 **IV. CONCLUSION**

25 For the reasons discussed above, Plaintiffs' Motion is **GRANTED IN PART** and
26 **DENIED IN PART**.

27 Within seven days from the date of this Order, Uber shall disclose, to the extent it has not
28 done so already, the following basic information about the approximately 15,700 past and current

Uber employees subject to a litigation hold: (1) dates that the holds were issued; (2) the dates of preserved ESI; (3) the names, job titles, and dates of employment of the recipients of the hold notices; (4) whether the hold relate to a case or complaint involving allegations of sexual assault or sexual harassment.

Within seven days from the date of this Order, Uber must produce to Plaintiffs, to the extent it has not done so already, information as to the ESI sources (custodial and non-custodial) enumerated in PTO No. 2, Paragraph 3, including: (1) whether each source of ESI was preserved; (2) when each source was preserved; (3) when each source was used; (4) what was each source used for; (5) the general types of information housed/contained in each source.  With respect to non-custodial sources, this information shall be provided in the form of a declaration and/or list, unless such a list or declaration is already included in the JCCP materials that were disclosed on January 8, 2024.

Plaintiffs' request to suspend Uber's company-wide document destruction policies is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: January 9, 2024

LISA J. CISNEROS
United States Magistrate Judge