# Exhibit C



**Sent from:** New York Office

November 22, 2023

<u>*Via E-mail*</u>
Kyle Smith, Esq.
ksmith@paulweiss.com
Marcelo Triana, Esq.
mtriana@paulweiss.com
Paul, Weiss, Rifkind, Wharton & Garrison LLP

Re:   *In re: Uber Technologies, Inc., Passenger Sexual Assault Litig.,* 3:23-md-03084-CRB
      Preservation of Electronically Stored Information (ESI)

Dear Counsel:

I write to follow up on our November 17, 2023 meet and confer concerning the steps Uber has taken to preserve potentially relevant ESI, and the discovery of such, per the Court's November 3, 2023 Order (PTO No. 2) (ECF No. 65) and the Northern District of California Guidelines for ESI Discovery. We understand the following per our meet and confer:

- Uber states that it is fully complying with PTO No. 2.

- Attorney Robert Atkins informed the Court at the November 3, 2023 hearing that sexual assault claims against Uber go back to 2013. *See* 11/3/23 transcript at page 23:5. Consequently, at our meet and confer, I requested that you provide information related to Uber's sources of potentially relevant discovery going back to 2013, which includes custodial and non-custodial sources. As detailed in PTO No. 2, such sources would include, but are not limited to: email systems; mobile device data; text and messaging applications; workplace collaboration tools and chat applications; unstructured data (such as documents created by commonly used Microsoft Office programs and Google programs); structured data (such as information stored in structured databases like Salesforce and Basecamp); backup media (such as data from tapes, discs, or cloud accounts); external storage media (such as portable hard drives or flash drives); voicemail systems; and video surveillance systems (collectively "ESI Sources"). I also requested that Uber provide information as to when such sources were used, what they were used for/general information they housed, and which employees used these sources (or had access to these sources). I also requested that Uber provide the names, titles, responsibilities, and dates of employment for all custodial files identified to date. In response, you stated that after a Protective Order is in place,

**New York Office:**
600 Third Ave., 12th Floor
New York, NY 10016

**Pennsylvania Office:**
615 Iron City Drive
Pittsburgh, PA 15205

**West Virginia Office:**
3200 Main St.
Weirton, WV 26062

Chaffin Luhana LLP • Toll Free: (888) 480-1123 • Fax: (888) 499-1123 • ChaffinLuhana.com

Uber will provide a list of all its non-custodial sources. You also represented that Uber used and still uses a "suite" of Google products.

- I requested that Uber designate an ESI Liaison to work with Plaintiffs' ESI Liaison to help efficiently resolve any ESI issues that may arise. The E-Discovery Guidelines for the Northern District of California state that "the meet and confer process will be aided by participation of e-discovery liaisons." *See* E-Discovery Guidelines, Section 2.05. As I stated, we would like to have our ESI vendor liaison with Uber's ESI liaison/vendor to efficiently resolve any technical ESI issues. You stated you were not necessarily opposed to this approach, but you did not commit to our liaisons/vendors discussing ESI issues. Instead, you offered to speak with Plaintiffs' vendor yourself. We explained that without sufficient technical knowledge, Uber's counsel speaking with Plaintiffs' ESI vendor would not be productive (as opposed to Uber's ESI liaison/vendor having such a discussion). In particular, you raised that Uber's position is that certain ESI document family relationships (such as between a Google email and an internal link within the email) cannot be easily preserved and produced, and that such family relationships can only be preserved manually. We do not believe that is the case. We will speak with our ESI vendor to present you with options for maintaining ESI family relationships and producing same.

- Defendants previously stated that Uber has issued litigation holds for "multiple Uber custodians who work on sexual assault or sexual misconduct Incidents." (Doc. 38 at 8). You, however, noted on our meet and confer that Uber has issued "thousands" of litigations holds for other matters since in or about 2013 and there may be overlap with relevant custodians for this matter. Uber is refusing to disclose the names, job titles, dates, and all relevant information concerning who received the holds and when, and what litigation or claim the holds were/are related to. Uber is also refusing to produce the litigation holds themselves or the holds' contents.

- You stated at our meet and confer that Uber's document deletion policy used to maintain emails for two (2) years. At some point in 2023, you represented that Uber switched to a six (6) month email deletion policy, meaning that emails are deleted after six (6) months unless there is a litigation hold in place that will prevent the custodial emails (and any potential platforms that the custodian may use) from being deleted. According to you, there are numerous, as yet, undisclosed exceptions to Uber's document deletion policy. This information is in contrast with the parties 10/27/23 Joint Case Management Statement in the JCCP, in which it was stated that "from September 2015 to January 2023, Uber had a six-month e-mail retention policy. Uber's current policy is to destroy e-mails after 24 months."

- Uber's company-wide six (6) month document deletion policy is still in place despite PTO No. 2. Only ESI subject to a specific litigation hold is currently not being destroyed by Uber after six months.

Please let us know if your understanding is different from the above.

2

It is clear from our meet and confer that Uber is not complying with PTO No. 2 and that potential discovery is currently <u>not</u> being preserved by Uber. PTO No. 2 states, *inter alia*, that:

- "The purpose of this interim order is to ensure the preservation of all documents and ESI that may be discoverable in relation to any of the issues in this litigation, even if it is later decided that certain claims or defenses are without merit or otherwise cannot be asserted." (PTO No. 2, at 1);

- "***No party shall destroy any information subject to discovery within their control without applying to this Court***." (*id*. at 2) (emphasis added);

- "Defendants' custodians must be broadly identified and not limited to those who work on sexual assault or sexual misconduct issues. Instead, custodians should include company managers, executives, and engineers in charge of implementing safety precautions and technologies to protect passengers, as well as company managers and executives who evaluate and analyze passenger complaints about drivers, interface with law enforcement, develop policies for vetting drivers or policies for responding to passenger complaints about drivers, or develop safety-related marketing strategies and materials." (*id*.); and

- "Defendants shall implement a litigation hold that covers the company and vendors, including vendors that maintain backup media that may contain copies of deleted emails, Slack messages, or other relevant communications that may have been destroyed pursuant to Defendants' document-retention policies." (*id*. at 3).

Uber is not complying with the Court's directives above.

<u>First</u>, Uber must immediately suspend its companywide six-month ESI deletion policy. Your current document deletion policy is inconsistent with the Court's Order that "[n]o party shall destroy any information subject to discovery within their control without applying to this Court." (*Id*. at 2). Despite the fact that there may be litigation holds related to certain undisclosed custodians in place for other litigations, our concern is potentially relevant ESI is unquestionably being currently destroyed as all relevant ESI may not be subject to Uber's unilaterally decided litigation holds for other matters. The only way for Uber to comply with the Court's Order is to suspend company-wide automatic deletions until discovery can show which, if any, ESI sources should not be preserved or Uber applies for relief per PTO No. 2 (which Uber has not done).

<u>Second</u>, Uber must immediately produce all relevant information related to its past and current litigation holds, including the names, job titles, dates, and all relevant information concerning who received the holds and when, and what ESI the litigation or claim the holds were/are related to. While you may claim that the litigation holds themselves are privileged (we disagree), you cannot dispute that the names and titles of the persons notified of the litigation hold, the dates of such notifications, and which litigation the holds are related to, must be provided, as such information would be provided on any privilege log (in relation to your claim that the holds are privileged). Without this information and documentation, it is impossible for Plaintiffs to discern if all relevant ESI was or is currently preserved, or may have been destroyed. *See, e.g., Cohen v. Trump*, No. 13–cv–2519, 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015)

("the circumstances of a company's litigation hold is not privileged, even if the hold memo itself is privileged.")

Third, Uber must immediately produce information related to Uber's ESI Sources of potentially relevant discovery going back to 2013, which includes custodial and non-custodial sources. Uber must also provide information as to when such sources were used, what they were used for/general information they housed, and which employees used these sources (or had access to these sources). Uber must also provide the names, titles, responsibilities, and dates of employment for all custodial files preserved to date.

At this time, we cannot confirm that 2013 is indeed the first time Uber was on notice of sexual assault or related claims against the company. We ask that you please confirm that Uber did not receive sexual assault or related complaints prior to 2013 (this includes written or oral complaints made to Uber, and is not restricted to filed lawsuits or arbitrations). We reserve our right to seek related discovery from Defendants prior to 2013 if or when we learn that Uber did receive sexual assault or related complaints prior to that year.

Additionally, on November 15, 2023, we sent you a proposed Protective Order. Given that you stated at our meet and confer that Uber would not provide certain information until after a Protective Order was agreed upon, we ask that you promptly let us know if the proposed order is agreeable or if you have any proposed changes. You stated that you would provide us feedback before the Thanksgiving holiday, and we look forward to receiving your response.

Plaintiffs are being extremely prejudiced by Uber's failure to comply with PTO No. 2. If Uber does not comply with the above by no later than November 30, 2023, we intend to seek immediate relief from the Court, including seeking any appropriate sanctions.

Thank you for your prompt attention to this matter and we look forward to hearing from you soon.

Sincerely,

s/ Roopal P. Luhana

Roopal P. Luhana

cc:   Randall S. Luskey, Esq.
      Robert Atkins, Esq.
      Sarah R. London, Esq.
      Rachel B. Abrams, Esq.
      Bret Stanley, Esq.
      Steven D. Cohn, Esq.
      John Eddie Williams, Esq.
      Brain Abramson, Esq.
      Stephen Estey, Esq.
      Celine Cutter, Esq.
      Brooks Cutter, Esq.
      William Levin, Esq.