RANDALL S. LUSKEY (SBN: 240915)
   rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
   **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
   ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
   cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
   akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
   **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S PROPOSED PRIVILEGED MATERIALS ORDER**<br><br>Judge:     Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor |

- ii -

| | |
|---|---|
| 1 | KYLE N. SMITH (*Pro Hac Vice* admitted) |
| | ksmith@paulweiss.com |
| 2 | JESSICA E. PHILLIPS (*Pro Hac Vice* admitted) |
| | jphillips@paulweiss.com |
| 3 | **PAUL, WEISS, RIFKIND, WHARTON** |
| | **& GARRISON LLP** |
| 4 | 2001 K Street, NW |
| | Washington DC, 2006 |
| 5 | Telephone: (202) 223-7300 |
| | Facsimile: (202) 223-7420 |
| 6 | |
| 7 | *Attorney for Defendants* |
| | UBER TECHNOLOGIES, INC., |
| | RASIER, LLC, and RASIER-CA, LLC |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to the Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's (collectively "Defendants") and Plaintiffs' Co-Lead Counsel's ("Plaintiffs") January 15, 2024 Joint Case Management Conference Statement, ECF No. 207, and the Court's January 24, 2024 Stipulation and Order, ECF No. 223, Defendants submit this memorandum outlining the remaining areas of disagreement concerning the Privileged Materials Order.

The parties have been engaged in a productive meet and confer process since January 9, 2024, when Plaintiffs sent their first draft of this Order to Defendants. Since that time, the parties have had multiple meet and confers on January 10, January 22, January 23, and January 25, 2024. The parties have also exchanged numerous drafts, including a draft sent by Defendants on January 12, 2024, with Plaintiffs returning a draft to Defendants on January 22, and multiple drafts exchanged between January 23 and January 25. As a result of these collaborative efforts, the parties have come to compromised agreement on many of the initial disputes, and have substantially narrowed the issues.

This memorandum provides an outline of the remaining disputes, as well as Defendants' arguments in support of their proposal. A copy of Defendants' proposal is attached as Exhibit A, and a chart outlining the disputed language clearly for the Court is attached as Exhibit B. Each of the sections of this memorandum reference the disputed language chart presented in Exhibit B.

## II. ARGUMENT

### A. Defendants' Paragraphs 5 and 9: Analyses, Memoranda, or Notes Based Upon Potentially Privileged Materials (Ex. B, § I)

The parties agree that paragraphs 5 and 9 apply to, among other things, analyses, memoranda, or notes (herein, "derivative materials") or portions thereof which were internally generated and contain the item(s) listed in the Clawback Notice. However, the parties disagree as to whether the language of paragraphs 5 and 9 applies where the derivative materials are *based upon* the item(s) listed in the Clawback Notice. Defendants' proposal includes derivative materials based upon the item(s) listed in the Clawback Notice.

If a party receives inadvertently produced privileged materials, that party should not be able to use or rely on the derivative materials it creates from those privileged materials. Even if the derivative materials do not contain the original privileged material in its original form, they still contain information reflecting the contents of the privileged material. To allow a party to make use of these materials could create a situation where a party attempts to circumvent the privilege protections set forth under this Order and the applicable law simply by, for example, taking notes on the privileged material and then making use of those notes. Defendants' proposal ensures that the parties are not able to do so.

B.   Defendants' Paragraphs 5 and 6: Materials Used in a Clawback Challenge (Ex. B, § II)

The disputed language at the end of paragraph 5 and beginning of paragraph 6 relates to whether the Parties are allowed to use materials that are the subject of a Clawback Notice as a means to challenge that notice. Defendants' proposal makes clear that any objection to a Clawback Notice shall be made only on the basis of the information provided in the Clawback Notice, and shall not make use of the underlying materials that are subject to the Clawback Notice.

Defendants' proposal is consistent with the Federal Rules of Civil Procedure ("FRCP"), which provide, "if information produced in discovery is subject to a claim of privilege . . . [the Receiving Party] must not use or disclose the information until the claim is resolved." Fed. R. Civ. P. 26(b)(5)(B). The one exception is that the Receiving Party may present the information to the Court "under seal" for determination of the issue. *Id.* FRCP 26(b) therefore embraces the principle that the Producing Party should be placed in the same position as it would have been if the inadvertent production had not happened. It would be contrary to that purpose to allow a party to use the material that is the subject of the Clawback Notice to challenge the privilege assertion. Plaintiffs' proposal cuts against the purpose of FRCP 26(b)(5)(B) and provides the Receiving Party with an advantage that it would not have otherwise had but for the inadvertent production.

C.   Defendants' Paragraph 7: *In Camera* Review (Ex. B, § III)

As noted above, the Federal Rules of Civil Procedure require that "if information produced in discovery is subject to a claim of privilege . . . [the Receiving Party] must not use or disclose

-2-

the information until the claim is resolved," but may submit the document "under seal" to the Court for review. *Id.* This is precisely what Defendants' proposal allows.

Under Defendants' proposal, the Receiving Party of a document subject to a claim of privilege that was inadvertently produced would not be allowed to use that document, just as the Federal Rules require. But Defendants' proposal is not inflexible. The proposal allows for either party to submit the document to the Court for *in camera* review upon a showing of good cause and a determination by the Court that it cannot otherwise make a determination on the privilege issue. Thus, Defendants' proposal aligns with FRCP 26(b)(5)(B).

Permitting *in camera* review upon a showing of good cause reflects a reasonable compromise position. In the context of privilege challenges, the Supreme Court has held that "before engaging in *in camera* review . . . the Judge should require a showing of a factual basis adequate to support a good faith belief" that the privilege should not apply. *United States* v. *Zolin*, 491 U.S. 554, 572 (1989) (internal quotations omitted). "Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court." *Id.* Defendants' proposal follows *Zolin*. Before the court reviews the document *in camera*, the challenging party must first show good cause. After that showing is made, it is left to the Court's discretion whether *in camera* review is necessary. This procedure properly balances the Court's need to evaluate claims of privilege and the risk of harm that can come from the review of potentially privileged materials.

Nor does Defendants' proposal prevent the Court from assessing a claim of privilege. If the document is submitted *in camera*, the Court will have access to the document itself and will be able to rule on the privilege dispute appropriately. This aligns with Rule 26(b), which provides that a party may submit the information to the court for review while prohibiting use of the document for any other purpose.

D. Defendants' Paragraph 10: Technical Language Disputes (Ex. B, § IV)

The parties agree on the substance of paragraph 10, but there are two remaining areas of dispute over technical language.

1    Defendants' Line 18: Under Plaintiffs' proposal if a privilege challenge is raised as to a document during a deposition, all copies of the document must be sequestered "in accordance with paragraph 5." Defendants' proposal would remove the quoted language. Paragraph 5 deals specifically with the sequestration of documents in connection with Clawback Notices, and is distinct from the circumstances contemplated here. Plaintiffs' proposed qualifying language is thus unnecessary and inappropriate.

Defendants' Line 22: Defendants' proposed language accurately reflects the procedures established by this order. Paragraphs 5 *through* 8 govern the Clawback Notice and Challenge procedures. Plaintiffs' reference to paragraphs 5 *and* 8 would omit paragraphs 6 and 7, which are part of the procedures referenced.

### E.    Defendants' Paragraph 14: Timing of Privilege Logs (Ex. B, § V)

Defendants' proposal would require a 120-day timeline for production of privilege logs. This is in contrast to Plaintiffs' proposal, which would require the production of a privilege log within 30 days of each production. Plaintiffs' proposal is not realistic or workable.

The creation of privilege logs requires substantial time and resources. *See The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production* ("Sedona Principles"), 19 Sedona Conf. J. 1, 81 (2018) ("even if there are relatively few privileged documents, preparing and reviewing a privilege log can be extremely time-consuming . . . The immense volume of ESI now subject to discovery exacerbates the problem."). Time and resources that could be devoted to the production of the responsive and clearly non-privileged documents that will make up the vast majority of documents produced in this case. A 120-day timeline for the production of privilege logs would allow the parties to focus their efforts on the production of documents without being encumbered by the production of privilege logs every 30 days, resulting in responsive, non-privileged documents being produced faster.

While requiring more frequent privilege logs may sometimes allow the parties to challenge privilege assertions sooner, that possibility comes at the cost of a potential delay in the production of responsive, non-privileged documents. Defendants believe that it better serves the interests of

-4-

efficient completion of production in this case to prioritize the ongoing productions of documents rather than the rushed production of privilege logs, as the former are what ultimately comprise the discovery record in this case.

Establishing a reasonable 120-day timeline for the production of privilege logs would also make the combination of privilege logs more feasible.  If the parties are required to produce privilege logs only 30 days after each production, then it is unlikely that multiple productions would have taken place in that limited time, and the parties would lose the possibility of combining privilege logs and the resulting efficiency gains that come with it.

Finally, Defendants emphasize that their position provides only an outer limit of the timeline for the production of privilege logs, and does not preclude either party from producing logs faster.  Defendants will endeavor to proceed faster when reasonably possible, and many logs may ultimately be produced in well under the allotted time.  Defendants' proposal avoids a situation where a party is required to choose between devoting its resources to the production of responsive documents or a privilege log.  Adopting Defendants' proposal would therefore serve the Court's goal of resolving pretrial issues "as efficiently and quickly as possible."  PTO No. 4 at 7.

### F. Plaintiffs' Paragraph 14(j): "Source File" Information (Ex. B, § VI)

Paragraph 14(j) of Plaintiffs' proposal requires that each privilege log include for each entry "[t]he name or other identifying information as to the produced source file in which the document subject to a privilege claim was found, such as, but not limited to, the document or communication's file path."  It is unclear what information Plaintiffs seek with this requirement.

"Source file" is a term without a clear definition. *See e.g., Freyburger LLC* v. *Microsoft Corp.*, 2009 WL 3062884, at * 6 (W.D. Wisc. Sep. 21, 2009) (considering and "declin[ing] to construe the term 'source file'" based on the parties' competing understandings of the term in a patent infringement case).  While Plaintiffs have not defined "source file" in their proposal, as best Defendants can tell, the "source file," is of little, if any, utility in testing the claim of privilege, which is the primary purpose of providing a privilege log. *Waymo LLC* v. *Uber Techs., Inc.*, 319 F.R.D. 284, 292 (N.D. Cal. 2017) ("the very purpose of a privilege log is to allow a fair way to test a claim of privilege.").

Plaintiffs have noted that language similar to their proposal has been used in privileged material orders before, such as in the *Xarelto* and *Zantac* products liability litigations in Louisiana and Florida. However, both *Xarelto* and *Zantac* are pharmaceutical liability cases, and the 9th Circuit has observed that "'source files' . . . have been produced in pharmaceutical litigation of [that] sort." *In re Incretin-Based Therapies Prods. Liab. Litig.*, 721 Fed. Appx. 580, 583 (9th Cir. 2017). Thus, it seems "source file" information may have some unique relevance in the pharmaceutical context. To the extent that Plaintiffs seek information about the "source" of the document, such as the custodial file, Defendants have agreed to produce custodian information for each privileged document. Ex. A ¶ 15(d) ("The name(s) of the author(s) and custodians").

Given that there is no benefit to assessing the claim of privilege by providing this information, and its lack of definition, "source file" information should not be included in this Order. Defendants' proposal strikes this unnecessary and inapt requirement.

G. <u>Defendants' Paragraph 17: Inadvertent Failure to Identify Attorneys with an Asterisk (Ex. B, § VII)</u>

The parties agree that attorneys will generally be identified on the privilege log with an asterisk. The only dispute is whether that requirement will be imposed even when it is infeasible. Defendants' proposal would establish that this is not a rigid, inflexible requirement untethered to the needs of the case, but would instead be required only "where feasible." While identifying attorneys on the privilege log is useful for the parties to assess the claim of privilege, it should not serve as an encumbrance where it is not feasible to do so, technologically or otherwise.

H. <u>Defendants' Paragraph 18 and Plaintiffs' Paragraph 17: Production of a Separate List of Individuals Included in the Log (Ex. B, § VIII)</u>

Plaintiffs' proposed paragraph 17 would require the Producing Party to produce, in addition to a privilege log, a separate list that includes the names, aliases, job titles, and employers for each individual that appears in the log. Doing so is not necessary for two primary reasons.

First, Defendants have already provided much of this information in their letter submission pursuant to the Court's January 9, 2024 Order on Plaintiffs' Motion to Enforce PTO No. 2, ECF No. 190. In that submission, which was submitted to this Court under seal on January 23, 2024,

-6-

ECF No. 217, Defendants provided the names and job titles of over 15,500 employees. It stands to reason that many of those names will overlap with the names on privilege logs. To reproduce a separate list would be both burdensome and duplicative of the information that has already been provided.

Second, the creation of this additional list would be burdensome and not proportional to the needs of the case. Production of a privilege log is a time-consuming and burdensome task. Creating an additional list including the names, title, and employer of each individual listed on the log would add to that burden unnecessarily, requiring the Producing Party to go through the log and ensure that each unique name has been added to this list. Further, much of this information is already provided in the privilege log. The name of each individual, for example, will be provided in the log. Similarly, the individual's employer will be readily discernible from the individual's email address in most instances (i.e., Uber employees typically have email addresses ending in "@uber.com"). Thus, there is little benefit to requiring creation of this additional list.

Despite these concerns, Defendants' proposal does not foreclose the ability of the Receiving Party to receive this information upon request. Instead, it allows for the Receiving Party to request this information on an individual basis for good cause, in which case the Producing Party will endeavor to provide the requested information, to the extent that it is not readily available to the Receiving Party.

I. Defendants' Paragraph 19: Potential Use of Categorical Privilege Logs (Ex. B, § IX)

The possibility of using categorical privilege logs is encouraged by both the FRCP's Advisory Committee Notes and the Sedona Conference Principles. Fed. R. Civ. P. 26(b)(5) Advisory Committee's notes to 1993 Amendment ("Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, *particularly if the items can be described by categories.*"); Sedona Principles at 81 ("One solution that the parties may consider [to the problem of the time-consuming nature of privilege logging] is to agree . . . to accept privilege logs that will initially classify categories or groups of withheld

-7-

1   documents."). Categorical privilege logs may prove useful in this litigation. Defendants' proposed
2   language embraces that possibility, while Plaintiffs seek to rigidly foreclose it at the outset.

3   Plaintiffs have suggested that discovery in this case may be broad, increasing the burden
4   of creating privilege logs, and note that the parties and the Court have an interest in the efficient
5   resolution of privilege disputes. The use of categorical logs could serve this interest by allowing
6   the parties to produce privilege logs faster and more efficiently, providing the Receiving Party
7   with the information needed to challenge an assertion of privilege sooner than it otherwise would
8   be able to. In turn, the challenge process set forth in this order could be initiated, and therefore
9   resolved, more quickly. Thus, the use of categorical logs will expedite all of the processes set
10  forth in this order and make the entirety of this litigation more efficient.

11  To be clear, Defendants' proposal does not *require* the use of categorical logs. It simply
12  states that documents "may be grouped into categories based on content, and a categorical privilege
13  log prepared." Thus, Defendants' proposal simply leaves open the possibility of using categorical
14  privilege logs if doing so would be appropriate and efficient.

15  Nor would a categorical privilege log prevent the Receiving Party from adequately
16  challenging any assertions of privilege. Paragraph 19 of Defendants' proposal requires that the
17  Producing Party provide information in a categorical log "sufficient to support the claim that the
18  documents within the category are privileged and/or protected." This information forms the crux
19  of a challenge to privilege. If a party is going to challenge a privilege assertion, it will do so
20  primarily on the basis of this information, which would be provided in a categorical log. Thus the
21  Receiving Party would have all of the information it needs to adequately challenge an assertion of
22  privilege whether the document was logged in a categorical privilege log or a document-by-
23  document privilege log. The additional information to be gleaned from a more detailed log would
24  thus "be of no material benefit to the discovering party in assessing whether the privilege claim is
25  well grounded." *In re Imperial Corp. of America*, 174 F.R.D. 475, 478 (S.D. Cal. 1997).

26  In all events, Plaintiffs attempt to foreclose the *possibility* that a categorical privilege log
27  may ever be used in this litigation is premature. Defendants' proposal appropriately
28  accommodates the prospect that a categorical log *may* be appropriate, and if there is a dispute in

the future about the use of categorical logs, the parties can take up that dispute at that time. But the use of categorical privilege logs should not be foreclosed completely at this time.

J.  Defendants' Paragraph 20: Communications and Documents That Do Not Need to be Logged (Ex. B, § X)

Plaintiffs' proposal would limit the communications that do not need to be logged to only those documents and communications that were created after March 15, 2023, the date that the first case in this MDL was filed in the federal court system. Defendants propose the date should be August 12, 2021, which is the date that the petition to coordinate proceedings in state court (i.e. the state court JCCP) was filed.

There is not a dispute that the documents created after the issues in this litigation commenced should not be logged. All that is disputed is whether that date should be when the federal court MDL proceedings commenced, or when the state court coordinated proceedings in the state court JCCP commenced.

Plaintiffs have acknowledged that this MDL is in some respects an outgrowth of the state court JCCP and have linked those proceedings together. Mem. in Supp. Of Pls.' Mot. for Transfer of Actions Under 28 U.S.C. § 1406 for Coordinated or Consolidated Pretrial Proceedings, *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, MDL No. 3084, ECF No. 1 (Jul. 14, 2023 J.P.M.L.) (noting "the recent *Forum Non Conveniens* Order in the [state court JCCP]" as a reason why consolidation and coordination would be proper). And Plaintiffs agree that documents *their counsel* exchanged relating to the state court JCCP, under the same enumerated circumstances, need not be logged. Ex. A ¶ 20(e) (agreed to by both parties except for the date). The appropriate date for cutting off when these documents need to be logged is therefore the date on which the first motion to create the state court JCCP was filed, August 12, 2021.

Plaintiffs' paragraph 18(b) would also remove the language making this paragraph applicable to attorney work product and trial preparation materials related to the state court JCCP. Given that the parties have agreed throughout parts of this paragraph that communications and documents related to the state court JCCP need not be logged, there is no reason to remove that language here.

-9-

K. **Defendants' Paragraph 21: Privilege Log Treatment of Email Chains (Ex. B, § XI)**

The parties disagree on whether email threads need to be logged in their entirety or if only the last in time email can be logged. Defendants' proposal would allow the parties to log only the most inclusive, or last in time, email on email threads where the prior messages are fully contained within the thread. The privilege log entry for the last in time email would still provide the names, authors, email addresses, and recipients for all thread members, including those that are not logged as individual entries, as well as the entry would include the factual bases sufficient to support the claim of privilege for each of the thread members, so the Receiving Party would be provided with all of the information necessary to challenge the privilege assertion.

Because the Receiving Party will be provided with all of the information that is needed to challenge the privilege assertion, if so required, there is no reason to incur the additional burden of logging each of the emails in a privileged thread individually.

L. **Plaintiffs' Paragraph 19: The *Production* of Email Threads (Ex. B, § XII)**

Plaintiffs' proposed paragraph 19 would use this Privileged Materials Order to establish that the production of email threads shall be governed by operation of the ESI protocol. Inclusion of this provision confuses the issues. Defendants' proposal to log only the most inclusive email in a fully contained email thread deals with the privilege log treatment of emails, not the *production* of those emails. Thus, Plaintiffs' proposal is inapposite to this Order regarding privilege logging.

DATED: January 26, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:   */s/ Randall S. Luskey*
     RANDALL S. LUSKEY
     ROBERT ATKINS

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC