# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | MDL No. 3084 CRB<br><br>**DEFENDANT'S FACT SHEET** |

Uber must provide information that is true and correct to the best of Uber's knowledge. Uber is under an obligation to supplement these responses consistent with the Federal Rules of Civil Procedure. In the event the DFS does not provide Uber with enough space for it to complete its responses or answers please attach additional sheets. The information in the DFS may, at Uber's discretion, be provided by reference to the Ride Receipt or other documentation. Please identify any documents that Uber is producing as responsive to a question or request by Bates-stamp identifiers. Please do not leave any questions unanswered or blank except as allowed by the instructions below.

## **DEFINITIONS**

The following definitions shall apply to this DFS:

"Account Status Log" means a log or report that includes (to the extent available) the complete history of the driver's status with Uber, including the driver name, status (e.g. applied, active, deactivated, suspended, etc.), status note(s), whether status is current, time and date status began, time and date status ended, flow type (e.g. P2P), time and date flow began and ended.

"Agreements" means any contracts or agreements consented to by the Driver, including without limitation any Technology Services Agreements, Platform Access Agreements, Software Licensing Agreements, as well as Service Fee Schedules, driver addenda, and state or local specific addenda.

"Communications," as used herein, includes but is not limited to Bliss communications, Exact Target communications, voicemail recordings, recorded calls, and other messages and communications.

"Communications Log" (aka Comm Log) refers to a spreadsheet log of communications concerning

a Driver while logged into the Uber Driver App including (to the extent available) columns entitled timestamp, datstr, message uuid, to user uuid, from user uuid, direction, medium, content summary, and content.

"Driver," unless otherwise specified, refers to the person with registered access to the Driver App who was identified by the Uber App as the driver during the Subject Trip.

Plaintiff" means the allegedly injured party who has filed the complaint in this action, provided that if the Plaintiff has filed the complaint on behalf of another (e.g. a decedent or a minor) then "Plaintiff" shall refer to the person on whose behalf the lawsuit was filed.

"Ride Receipt" means the standard trip summary and payment receipt generated by Uber, summarizing information related to the Subject Trip, including e.g., the Chronicle map snapshot, the start and end date and time, the location that the Plaintiff entered the vehicle, the end location, the name (or first name) of the driver, the license plate of the vehicle (though the appearance and information on the receipt may vary depending on when and where the trip occurred).

"The Date of Your Safety Taxonomy Implementation" as used herein shall refer to the date by which Uber had fully implemented its Sexual Misconduct and Violence Taxonomy (which implementation is described in Uber's 2018 Safety Report as occurring sometime in late 2018).

"Subject Trip" means the ride or trip the Plaintiff has identified as connected with Plaintiff's legal claims in the above-captioned lawsuit.

"Ticket" as used herein means a customer support interaction or series of related customer support interactions (including but not limited to those which Uber sent, received, tracked, or organized via Uber's Zendesk software, JIRA software, Bliss software, or another software program). Production of a Ticket, where required by this form, must include production of all information attached or linked to the Ticket, including without limitation the Chronicle map snapshot, Voyager data, comments, names of Uber personnel reflected in the tickets, and all Communications connected with the ticket.

"Trip History Report" refers to the log of all past ride requests a Driver has accepted, including (to the extent available) the date and time of each action (ride request, ride acceptance, begin trip, drop off), the status of the trip (whether completed, canceled, failed, etc.), the rating if any given by the rider to the Driver, the driver tools link, trip tools link, business line, city name, gross driver original fare, gross driver adjusted fare, all tags, and any feedback given by the rider via the App.

"Uber," "You," "Your" or "Yours" includes Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC, and their predecessors.

I. **CASE INFORMATION**

 1. Case Number:
 2. Pseudonym and Real Name of Plaintiff (if known):

2

## II. PLAINTIFF INFORMATION

3. Has Uber identified an account for the Plaintiff (Yes/No)?

   If your answer to the above question is "Yes," please answer questions 4-7.

4. What was the rider UUID (or other unique identifying number) for Plaintiff?

5. What was the date of Plaintiff's first trip pairing?

6. What was the date of Plaintiff's last trip pairing?

7. What was Plaintiff's total number of Uber Trips?

8. Has Plaintiff ever been a Driver on the Uber Platform (Yes/No)?

   If Your answer to the above question is "Yes," please answer questions 9-11.

9. What was the date of Plaintiff's first trip pairing as a Driver?

10. What was the date of Plaintiff's last trip pairing as a Driver?

11. What were Plaintiff's total number of trips as a Driver?

## III. UBER TRIP INFORMATION

12. Were you able to confirm that the Subject Trip occurred (Yes/No)?

    If Your answer to the above question is "No," You need not answer any of the other questions on this DFS.

13. Trip UUID (or other internal identifying number) used by Uber to identify the Subject Trip.

14. Please provide all GPS data in Uber's possession relating to the Subject Trip. Include (if available) GPS data reflecting the Driver's and Plaintiff's movements for ten minutes before the Subject Trip, and two hours after the Subject Trip (or until the Driver next accepted a ride request, whichever occurred earlier).

15. Produce (if available) the Chronicle Trip map for the Subject Trip displaying (to the extent available) the date, time, and location where the Subject Trip began and ended, the Driver acceptance location, the Preferred Route, the Actual Route, and the time and location the trip was cancelled (if applicable).

16. Was the Subject Trip a Pool Ride (i.e., a ride in which multiple riders requested an Uber ride) (Yes/No)?

17. If the Subject Trip was a Pool Ride, were any other passengers picked up (Yes/No)?

IV. **DRIVER INFORMATION**

18. Full name of the Driver:

19. Date of Birth of the Driver:

20. Last two digits of the SSN of the Driver:

21. Driver UUID (or other unique identifying number used by Uber if UUID was not used):

22. Driver's License Number of the Driver:

23. Address of the Driver as indicated on Driver's license at time Driver was approved to drive:

24. Last known address of the Driver:

25. Was the person driving during the Subject Trip the same person identified by Uber on the Ride Receipt (Yes/No/Unknown)?

26. If Your answer to the above question is "No," please state (if known) the Driver's license number, last known address, date of birth, and last four digits of the SSN of the person who was actually driving during the Subject Trip.

27. Was the vehicle used during the Subject Trip the same vehicle identified by Uber on the Ride Receipt (Yes/No/Unknown)?

28. If Your answer to the above question is "No," what was the license plate number (if known) of the vehicle actually used during the Subject Trip?

29. Was the Subject Trip an Uber Black ride (Yes/No)?

30. If Your answer to the above question is "Yes," please state the Company that operated the Uber Black account and whether the driver was part of an Uber Black Fleet.

31. Produce the complete Background Check Results in Your possession for each and every background check conducted on the Driver.

32. Produce a complete log of Agreements the Driver accepted with Uber, including the name of each Agreement and the date and time each Agreement was accepted (if known).

33. Produce a complete Account Status Log for the Driver.

34. Produce a complete Trip History Report for the Driver.

35. Produce the Driver "Tax Summary" for every year the Driver accepted any rides using the Uber Driver App.

36. Produce the complete Communication Log for the Driver.

37. Produce all Tickets for the Driver which post-date the Date of Your Safety Taxonomy Implementation and which relate to any of the following categories from Uber's Safety Taxonomy: (1) Sexual Assault, (2) Vehicle Crash or Claim, (3) Theft or Robbery, (4) Sexual Misconduct, (5) Physical Altercation, (6) Verbal Altercation, (7) Substance Abuse, (8) Inappropriate Post-Trip Contact, (9) Health / Self Harm, (10) Law Enforcement / Regulatory, (11) Potential Safety Concern, (12) Dangerous Driving.

38. Produce all Tickets for the Driver which predate the Date of Your Safety Taxonomy Implementation and which relate to any Ticket (including any complaint or customer service interaction) initiated by a Rider or by a third party on the Rider's behalf.

39. Produce all Communications exchanged between Uber and LERT, Uber and law enforcement, Uber and prosecutors, and/or Uber and Lyft, related to alleged misconduct and/or crimes by the Driver.

**CERTIFICATION**

The foregoing answers were prepared with the assistance of a number of individuals, including counsel, upon whose advice and information I relied. I declare under penalty of perjury subject to 28 U.S.C. 1746 that all of the information provided in this Defendant's Fact Sheet is true and correct to the best of my knowledge.

_____   _____   _____
Signature                Print Name/Title          Date