[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**<br><br>This Document Relates to:<br><br>All Cases | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF PROPOSED PLAINTIFF FACT SHEET**<br><br>Judge: Honorable Lisa J. Cisneros<br>Date: TBD<br>Time: TBD<br>Courtroom: G – 15th Floor |

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

    I.    The PFS Should Be Clear, Efficient, and Targeted to the Court's Goals for Prioritizing Resolution of Common Issues Over Individualized Ones. .................. 1

        A.    Plaintiffs' proposed PFS is in line with PFSs adopted in other cases and appropriate for this initial stage of the litigation. ................................ 1

        B.    The PFS serves a different purpose and requires a separate analysis from the Defense Fact Sheet (DFS). ........................................................... 2

    II.    Uber's Proposed PFS Is Riddled With Inappropriate, Overbroad, and Duplicative Questions. ....................................................................................... 3

        A.    Uber's questions about Plaintiffs' calls, text messages, emails, and social media communications are inappropriate and disregard privacy concerns. ............................................................................................. 3

        B.    Uber's witness questions are overbroad at this stage of the litigation. ........................................................................................................ 4

        C.    Uber's requests for individualized wage loss data and employer records are overbroad, unfairly burdensome and harassing. ....................... 4

        D.    Uber's PFS includes questions that Plaintiffs' are already answering by providing the ride receipt pursuant to PTO 5. ........................................ 5

        E.    Uber's questions about the route and the driver's intentions are unknowable to Plaintiffs. ................................................................................. 5

        F.    Uber's questions about Plaintiffs' medical diagnoses are overbroad, inappropriate in the context of sexual assault, and threatening. ................. 6

    III.    Uber's Document Requests Are Unduly Burdensome, Seek Duplicative Information, and Harass Plaintiffs. ............................................................................ 6

        A.    Uber's document requests require Plaintiffs to produce information already in Uber's possession. ...................................................................... 7

        B.    Uber's document requests are overly burdensome, intrusive, and unnecessary. ............................................................................................. 7

    IV.    Medical Authorizations Should Prioritize Relevant Information While Protecting Plaintiffs' Heightened Privacy Interests, but Uber's Requested Medical Authorizations Are Overbroad and Largely Irrelevant. ........................... 8

        A.    Medical record releases must be limited in scope and duration. ................ 8

        B.    Psychiatric, psychotherapy, and mental health information must be produced in a manner that protects privacy and privileges. ....................... 8

    V.    Plaintiffs' Proposed Implementation Order Advances Resolution of Incident Ride Confirmation Issues. .................................................................. 10

CONCLUSION ............................................................................................................................. 10

**INTRODUCTION**

The Court has indicated that the first priority of this MDL is to facilitate the discovery and resolution of "common issues of fact" sooner rather than later. *See* 11/3/23 Hearing Tr. at 7. These issues include: "what did Uber know; when did they know it, and what actions did they take." *Id.* at 8. "[T]here may [also] be some commonality" when it comes to what happened to each Plaintiff during a subject Uber ride. *Id.* The Court has made clear, however, that "it's not the idea of this Court nor should it be" that the Court hear "a thousand presentations of each [case] being individualized." *Id*. The Court has also encouraged plaintiffs to file their cases in the MDL "sooner rather than later." *Id.* at 40.

Plaintiffs proposed a Plaintiff Fact Sheet (PFS) that provides essential plaintiff-specific information that will advance resolution of common issues, allow for the high-level categorization of cases into groups for pre-trial and trial management, and encourage plaintiffs to file their cases quickly. In contrast, Uber's proposed PFS focuses the parties' and Court's attention on individualized issues, which will delay the proceedings and drain resources in ways contrary to Rule 1. Further, Uber's proposed PFS would deter plaintiffs from filing in the MDL, as it is more burdensome and invasive than the JCCP PFS (attached as Exhibit E)—particularly as to the plaintiffs' credibility and damages. These burdens are especially relevant given the unique trauma that sexual assault survivors experience and the courage needed to come forward.

For the reasons explained below, the Court should adopt Plaintiffs' PFS proposal, attached as Exhibit A, and Plaintiffs' Implementation Order proposal, attached as Exhibit B.

**ARGUMENT**

**I.      The PFS Should Be Clear, Efficient, and Targeted to the Court's Goals for Prioritizing Resolution of Common Issues Over Individualized Ones.**

**A.      Plaintiffs' proposed PFS is in line with PFSs adopted in other cases and appropriate for this initial stage of the litigation.**

A PFS is merely "the starting point for defendants' assessment of plaintiffs' claims and the precondition for proceeding with further discovery." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1224 (9th Cir. 2006). Accordingly, plaintiff fact sheets should be limited to clear questions that will elicit the required information quickly and without

confusion. *See, e.g.*, *Guidelines and Best Practices for Large and Mass-Tort MDLs* ("*Guidelines*"), Bolch Jud. Inst., Duke Law Sch. (2d ed.), at 10-11[1]; Margaret S. Williams et al., *Plaintiff Fact Sheets in Multidistrict Litigation – a Guide for Transferee Judges* ("*Plaintiff Fact Sheets*"), Fed. Jud. Ctr. & J.P.M.L. (2019)[2]. As such, MDL courts routinely adopt staggered plaintiff-specific discovery plans that prioritize core and easily-identified relevant matters first, while deferring highly individualized issues such as causation, credibility, and damages for a narrower set of claims in connection with trial settings.[3]

Plaintiffs' proposed PFS is clear, streamlined, and—at 14 pages plus releases for Plaintiff's medical records and law enforcement records—comprehensive as to the required case-specific core information necessary to advance common issues. In contrast, as discussed below, Uber's proposed PFS front-loads plaintiffs' individualized damages issues and includes confusing and vague questions that will obstruct, rather than facilitate, efficient information gathering.

> **B.     The PFS serves a different purpose and requires a separate analysis from the Defense Fact Sheet (DFS).**

Uber admitted that it added sweeping document requests and probing questions to its proposed PFS in response to Plaintiffs' defense fact sheet proposal. *See* Exhibit C (1/24/24 email from Uber counsel). But "discovery is not conducted on a 'tit-for-tat' basis." *Nat'l Acad. of Recording Arts & Sci., Inc.*, 256 F.R.D. 678, 680 (C.D. Cal. 2009). Each kind of fact sheet—plaintiffs' and defendants'—serves particular purposes, and the content of one does not dictate the content of the other. In particular, when designing fact sheets, courts account for "the cost to the producing party, especially plaintiffs for whom the collection of information may not be

---

[1] https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=1004&context=bolch

[2] Reproduced in David F. Herr, *Multidistrict Litigation Manual*, App. J (2023 ed.).

[3] *See, e.g.*, Order No. 5 at 5, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2151 (C.D. Cal. July 20, 2010) (establishing phased discovery to allow parties to develop more narrowly tailored discovery in subsequent phases); *In re Zofran (Ondansetron) Products Liab. Litig.*, No. MDL 1:15-MD-2657-FDS, 2018 WL 2761849, at *1 (D. Mass. May 17, 2018) (five phases of discovery, with individual causation and Plaintiff damages discovery occurring at the final phase for cases selected for trial); *In re Juul Labs, Inc.*, No. 3:19-md-02913-WHO, Dkt. No. 1455 (N.D. Cal.) (narrower discovery for all Plaintiffs followed by more detailed discovery for those phased for trial); *In Re American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation;* No. 2:12-md-02325, Dkt. No. 302 (S.D. W.Va.) (plaintiffs completed short form initially and more detailed form for later-phased discovery).

1   automated." *Plaintiff Fact Sheets*; *Guidelines* at 10 (plaintiff fact sheets should be completed with
2   "relative ease"); *id.* at 11 (noting that defense fact sheets should consider "the accessibility of
3   [relevant] documents"). This is not a novel concept, but merely application of the standard
4   relevance, burden, and proportionality considerations applicable to any discovery request.

5         The fact that the DFS may require the production of more documents reflects only that
6   Uber, given their technological capabilities, can produce more documents easily in ways that do
7   not vary from one Plaintiff to another. It also reflects that in this MDL, unlike many products-
8   based MDLs, Plaintiffs are Uber's direct customers, meaning Uber has much more Plaintiff-
9   specific information than is usual. *See Guidelines* at 11 (noting that the content of a DFS
10  "depends upon … the pre-suit relationship [] between plaintiffs and defendant"). Yet Plaintiffs
11  have *not* requested full-blown individual discovery from Uber. Future case-specific discovery
12  from Uber would include, for example, individual Plaintiffs' Uber App usage data, Plaintiffs' past
13  communications with and/or reporting of other drivers, or ratings and comments/reporting
14  Plaintiffs received via the Uber App. Overly specific individualized discovery is inappropriate at
15  this stage, and both Plaintiffs' proposed PFS and DFS reflect that understanding.

16  **II.     Uber's Proposed PFS Is Riddled With Inappropriate, Overbroad, and
17            Duplicative Questions.**

18        Plaintiffs' Proposed PFS is the result of serious compromise and offers far more
19  information than a typical PFS. It provides Uber everything it needs to begin preliminary
20  investigations of Plaintiffs' cases. While more detailed plaintiff-specific discovery will be
21  appropriate in the future, Plaintiffs' questions target information concerning common issues
22  relevant *now*. As explained below, Uber's proposed PFS overreaches in many ways.

23        **A.     Uber's questions about Plaintiffs' calls, text messages, emails, and
24                     social media communications are inappropriate and disregard privacy
                       concerns.**

25        Uber has included a number of questions that require Plaintiffs to identify and produce
26  communications unrelated to the alleged incident, communications that may not be in their
27  possession, and entirely irrelevant private conversations. For example, Def. Qs. 6, 7, and 8 seek to
28  discover every email address Plaintiffs have ever used, including employment email addresses,

every social media platform Plaintiffs have ever used, including every handle/username, and every texting application Plaintiffs have ever used, including every handle/username/number. Uber offers no justification for such broad and invasive requests.

In addition to these expansive discovery questions, Uber seeks to obtain all of Plaintiffs' telephone records with an authorization to their telephone service providers. *See* Ex. F to Def. Proposed PFS. While cellphone records and/or text messages may be relevant in some specific cases, a blanket authorization, with no limitations other than from the date of incident to present, is extremely invasive and unprecedented. If at all warranted, Plaintiffs' cell phone records and unrelated communications should be deferred for later individualized discovery in specific cases.

### B. Uber's witness questions are overbroad at this stage of the litigation.

Plaintiffs' Proposed PFS identifies potential witnesses in a targeted and meaningful way, which will encourage early filing. Plaintiffs have agreed to identify any other passengers in the car at the time of the incident (Plaintiffs' Q. 21) and any person who notified Uber of the incident on the plaintiff's behalf (Q. 24). Plaintiffs also agree to disclose whether anyone else witnessed the incident (Q.22), whether the plaintiff spoke about the incident to anyone (Q. 26), and whether the plaintiff posted about the incident on a website or social media site (Q. 27).

Uber, in contrast, demands Plaintiffs list identifying information—including phone numbers—for every "individual or other entity" with whom Plaintiffs discussed their assaults. Def. Q. 36. Uber's proposal would intimidate plaintiffs from filing their cases, as Uber implies it will call the plaintiff's friends, family, therapist, employer, or anyone else to whom the plaintiff disclosed their assault, including members of a support group. Such an approach is unnecessary and disproportionate to the Court's goals at this stage of the MDL. As courts have explained, such "sweeping requests for any communications in which a party expresses certain emotions or interests are generally too broad, and have little probative value." *Voe v. Roman Catholic Archbishop,* No. 14-1016, 2015 WL 12669899, at *3 (D. Or. Mar. 10, 2015).

### C. Uber's requests for individualized wage loss data and employer records are overbroad, unfairly burdensome and harassing.

Plaintiffs have agreed to advise Uber as to whether they are claiming lost wages. Yet

1  Uber's proposed PFS would require all Plaintiffs, regardless of whether they are pursuing a wage
2  loss claim, to identify their employer, job title, and responsibilities. Def. Q. 11.  Uber's proposal
3  also requires Plaintiffs who intend to seek lost wages to further "describe" their claims and
4  provide their earnings. Def. Q. 42. Uber's employment waiver proposal (Ex. D to Def. Proposed
5  PFS) also requires release of records from some Plaintiffs' entire adult working life and includes
6  a section for employers to disclose "statements and comments from fellow employees."

7  Plaintiffs object to these questions and proposed employer authorizations. The limited
8  probative value of such information is substantially outweighed by burden imposed. Plaintiffs
9  fear that Uber will send investigators to their employer or reveal the nature of their claims to their
10 bosses or co-workers. These requests would chill plaintiffs from coming forward while offering
11 nothing toward resolving common issues. *See Plaintiff Fact Sheets* ("[A]dding questions
12 unrelated to the core issues in the litigation may cause inefficiencies or put an unreasonably
13 burden on the plaintiffs."). The proposed waiver is overboard and borderline harassment. Finally,
14 detailed wage loss questions are premature and inefficient at this stage, since calculations often
15 involve time consuming record reviews and expert analysis. Disputes over the specifics of
16 Plaintiffs' damage claims should be deferred until cases are set or selected for trial workup.

**D.      Uber's PFS includes questions that Plaintiffs' are already answering by providing the ride receipt pursuant to PTO 5.**

19 Def. Qs. 15-16 require Plaintiffs to describe "the location, including city, state, zip, and
20 nearest street address" where their "Trip originated" and "of the requested destination." But the
21 Court has already ordered Plaintiffs to produce a bona fide ride receipt or, if they cannot, to
22 produce ride-identifying information within 14 days of filing or transfer. ECF 175, § 4A. These
23 questions could cause confusion and are unnecessary given Plaintiffs' compliance with PTO 5.

**E.      Uber's questions about the route and the driver's intentions are unknowable to Plaintiffs.**

26 Def. Qs. 18-20 ask the plaintiff whether the driver took a route other than the route
27 suggested in the Uber app, whether the driver made any stops, and whether the trip ended at the
28 requested location. The questions also ask *why* the driver took those actions. But "the law

1  recognizes that a person cannot know conclusively what the intentions of another person are."
2  *See, e.g.*, *United States v. Subeh*, No. 04-6077, 2006 WL 1875407, at *5 (W.D.N.Y. July 5, 2006)
3  Plaintiffs' proposal only requests information in the plaintiff's possession, such as if the plaintiff
4  and driver communicated about any route changes or stops. *See* P. Qs. 10-12. This ensures that
5  the PFS provides accurate information and avoids calling for speculation.

6        **F.**     **Uber's questions about Plaintiffs' medical diagnoses are overbroad,
7  inappropriate in the context of sexual assault, and threatening.**

8        Def. Q. 39 asks Plaintiffs to self-identify and diagnose an inexhaustive list of conditions
9  pulled from a different litigation that did not involve sexual assault allegations. The question
10 includes actual medical diagnoses ("eating disorder," "OCD," "PTSD," etc.) that a lay-person
11 cannot relate. Under Plaintiffs' proposed PFS, Plaintiffs may allege their injuries, describe them,
12 and indicate whether they have received a diagnosis. *See* P. Qs. 28-37. Such information is
13 sufficient at this stage. Individual-specific diagnoses and treatment information will be more
14 comprehensively provided in medical records and during expert discovery.

15       Plaintiffs' concern about Uber's medical diagnosis question is compounded by Uber's
16 statement that "*failure to fully and accurately identify the injuries You claim to have suffered as a*
17 *result of the Incident may limit Your ability to recover damages later.*" Def. Proposed PFS at p.
18 17. This intimidating language is inappropriate in a PFS, and legally incorrect. *See* Fed. R. Civ. P.
19 26(e) (discussing supplementing discovery responses). Trauma-based injuries manifest over time
20 and are subject to change, so such an admonition is particularly inapt in this case.

21       **III.**     **Uber's Document Requests Are Unduly Burdensome, Seek Duplicative
22 Information, and Harass Plaintiffs.**

23       Plaintiffs have agreed to produce several categories of documents, including: (1)
24 communications between the Plaintiff and the driver outside the Uber App; (2) authorizations for
25 law enforcement records; and (3) authorizations for medical records pertaining to the alleged
26 incident and subsequent treatment. This sufficient and proportionate to this stage of the litigation.
27 In contrast, Uber's "Requests for Production" are overbroad, unduly burdensome, and the
28 opposite of "streamlined, cost-effective paper discovery" typical of a PFS. *Guidelines* at 10-11.

### A. Uber's document requests require Plaintiffs to produce information already in Uber's possession.

Def. Qs. 44 and 45 ask Plaintiff to produce information about their use of the Uber app, including records of payments and communications with Uber. It is extremely time-consuming for Plaintiffs to manually screenshot their entire Uber App history—which Uber maintains and can efficiently access.[4] In contrast, Plaintiff's proposed PFS includes a reasonable question asking the Plaintiff to identify and produce communications with the driver *outside* the App. Pl. Q. 13.

### B. Uber's document requests are overly burdensome, intrusive, and unnecessary.

Def. Qs. 46 and 47 require Plaintiffs to produce all communications with anyone about the incident. For the reasons explained above in sections II.A and II.B, such information is unnecessary and chilling at this stage of the litigation. Moreover, producing such information is better suited to formal discovery procedures, not an initial PFS.

Def. Q. 48 asks Plaintiffs to provide all posts made on social before *from five years before the date of the incident to the present*. This proposal is an unprecedented and onerous. The request does even purport to account for relevance (limited-to-none) or burden (expensive, time-consuming and potentially invasive depending on which sources of social media are included), is inconsistent with how courts evaluate requests for social media history,[5] is designed to harass Plaintiffs and will further stifle potential plaintiffs in filing their lawsuit.

Finally, Def. Q. 49 requests communications between Plaintiffs and "any other person who claims to have been sexually assaulted" by an Uber driver. Any communications between Plaintiffs and a third-party who may have also been sexually assaulted (whether or not they have

---

[4] If anything, *Uber* should produce that history to *Plaintiffs*, particularly if Uber intends to rely on that history for its defense, as cases are set for trial.

[5] *See, e.g.,* Order Granting in Part and Denying in Part Defendants' Motion to Compel, *Roe v. The Archdiocese of Portland*, Case No. 13-1930 (D. Or. Feb. 13, 2015); *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012); *Holter v. Wells Fargo & Co.*, 281 F.R.D. 340, 344 (D. Minn. 2011).

1   come forward to file a claim) has at best only minimal probative value, potentially invades

2   attorney-client privilege and the third party's privacy, and is better lodged later in discovery

3   where scope, duplication, and privilege can be adequately evaluated on a per-client basis.

4   **IV.    Medical Authorizations Should Prioritize Relevant Information While Protecting Plaintiffs' Heightened Privacy Interests, but Uber's Requested Medical Authorizations Are Overbroad and Largely Irrelevant.**

6   There are two disputes in connection with the medical authorizations attached to the PFS.

7   Where, as with medical records, discovery implicates core privacy rights, it is crucial to tailor

8   required productions appropriately. *See, e.g.*, *Pate v. Pac. Harbor Line, Inc.*, No. 21-1300, 2023

9   WL 2629867, at *5-6 (C.D. Cal. Feb. 6, 2023).

10  **A.    Medical record releases must be limited in scope and duration.**

11  Uber's medical record authorizations seek records from 10 years before the assault to the

12  present. For most Plaintiffs, the relevant medical treatment began on or soon after the assault, so

13  this request would produce many irrelevant records. *See, e.g.*, *Hansen v. Uber Techs., Inc.*, No.

14  17-1559, 2018 WL 7361084, at *3 (M.D. Fla. Aug. 13, 2018) (quashing subpoena issued by Uber

15  for medical records where "UTI and Rasier fail to provide any explanation why such a broad time

16  period is necessary to obtain information that is relevant to this case"); *Powell v. Texvans, Inc.*,

17  No., 09-1079, 2010 WL 3810204, at *1 (D. Nev. Sept. 23, 2013). Because pre-incident medical

18  information may be relevant in some cases, Plaintiffs' proposed PFS has detailed medical

19  questions, including pre-existing conditions and injuries resulting from the assault, allowing Uber

20  to identify which Plaintiffs may later require additional discovery. *See* P. Qs. 28-37.

21  Further, releasing a decade of medical records is unfairly burdensome and invasive—it

22  would undoubtedly deter some survivors from bringing a case, and Plaintiffs' counsel would have

23  to review large swaths of records for sensitive, unrelated, privileged information such as family

24  history, substance use, and psychiatric and mental health records.

25  **B.    Psychiatric, psychotherapy, and mental health information must be produced in a manner that protects privacy and privileges.**

27  Plaintiffs' concerns are amplified when it comes to psychiatric and mental health records.

28  For many Plaintiffs, some or all of these records are privileged. For example, California

1    recognizes a broad "psychotherapeutic privilege [that] is broadly construed in favor of the patient,
2    while exceptions to the privileged are narrowly construed." *Jones v. Sunbelt Rentals, Inc.*, No. 22-
3    5954, 2023 WL 6215295, at *13 (N.D. Cal. Sept. 22, 2023) (citation omitted). California is hardly
4    alone. *See Jaffee v. Redmond*, 518 U.S. 1, 12 (1996) ("[A]ll 50 states and the District of Columbia
5    have enacted into law some form of psychotherapist privilege."). Although the scope of the
6    privilege varies across jurisdictions,[6] in many cases it will limit or preclude production of mental
7    health records. For example, some courts require production of such records only where "a
8    plaintiff has alleged more than 'garden variety' emotional distress and has instead alleged
9    emotional distress that is 'complex' or has resulted in specific disorders." *Stallworth v. Brollini*,
10   288 F.R.D. 439, 443 (N.D. Cal. 2012) (citation omitted, and collecting cases).

11   When Uber contacts Plaintiffs' mental health care providers, there are real consequences.
12   In counsels' experience, some providers stop treatment due to their wariness of litigation, causing
13   immediate harm. Requiring all plaintiffs to turn over mental health records now is
14   disproportionate and unwarranted given the highly sensitive nature of these records, the risk that
15   discovery may impede treatment, and the fear that disclosure of unrelated personal or mental
16   health issues would impair Plaintiffs' employment or family relationships. Adopting Uber's
17   proposal would lead to hundreds or thousands of individualized disputes over mental health
18   subpoenas—issues that have little bearing on the common issues in this MDL. For these reasons,
19   Plaintiffs propose that the Court defer disputes over invasive discovery into Plaintiffs' highly
20   sensitive mental health records until cases are set for trial or where the Court has otherwise lifted
21   the discovery stay, as is typical in complex MDLs.

22   However, if the Court finds that some level of mental health record discovery is
23   appropriate at this juncture, Plaintiffs request that the attached authorization, Exhibit D, be used
24   instead of Uber's proposal. Plaintiffs propose that mental health medical records be produced first

---

[6] The same can be said of *ex parte* communications with mental healthcare providers, a standard which varies state to state. For example, Florida prohibits them while New Jersey allows them. *See Hasan v. Garvar,* 108 So. 3d 570, 572 (Fla. 2012) (Florida statute prohibits *ex parte* conversations between opposing counsel and treating physicians), *Smith v. Am. Home Prods. Corp. Wyeth-Ayerst Pharm.*, 372 N.J. Super. 105, 855 A.2d 608, 623 (N.J. Super. Ct. Law Div. 2003) (recognizing that ex parte interviews are permitted under state law).

to a third-party document host. Each Plaintiff's counsel would have ten days to review the records and redact or withhold, providing Uber with a detailed privilege log. Uber could then raise any objections to the privilege log to Plaintiff's counsel or the Court, when the Court determines it is appropriate to handle individualized disputes. Allowing Plaintiffs' counsel to review and redact private and irrelevant details from mental health records appropriately reflects the balance courts apply to medical records, especially considering the sensitive nature of these particular records. *See Hayer v. Liverant*, No. 22-5420, 2023 WL 6062916, at *2 (N.D. Cal. Sept. 17, 2023) ("Psychotherapy notes capture the therapist's impressions about the patient, contain details of the psychotherapy conversation considered to be inappropriate for the medical record, and are used by the provider for future sessions."). This procedure is reasonable because it protects important interests. *See, e.g.*, *Meyer v. Bank of Am., N.A.*, No. 18-218, 2018 WL 6436268, at *5 (S.D. Ohio Dec. 7, 2018) (requiring defendant to "conduct a privilege review [] and create a corresponding privilege log" of documents to be produced by third party in response to plaintiff subpoena).

V.      **Plaintiffs' Proposed Implementation Order Advances Resolution of Incident Ride Confirmation Issues.**

There appear to only be two substantive differences in the competing Implementation Orders: (1) the timing of the DFS (addressed in Plaintiffs' DFS Memorandum) and (2) the ride receipt discovery. During the January 19, 2024 Case Management Conference, the Court indicated consideration of a process by which Uber would provide a missing ride receipt for the ride where Plaintiff was assaulted, or requisite information that could be used to ascertain the ride, if they were in possession of the information after receiving the Ride Receipt Information Form from Plaintiff as outlined in PTO-5. Plaintiffs' proposal provides a reasonable process to coordinate this process and should be implemented to promote a speedy resolution of this discreet discovery issue. To date, Uber has neither provided nor conferred on a counter proposal.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court adopt Plaintiffs' proposed PFS and Implementation Order and reject Uber's proposals.

Dated: January 31, 2024

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Sarah R. London*