RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S STATEMENT IN SUPPORT OF THEIR PROPOSED PRETRIAL ORDER REGARDING PLAINTIFF FACT SHEET**<br><br>Judge:   Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor |

-ii-

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
2001 K Street, NW
Washington DC, 2006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**DEFENDANTS' STATEMENT IN SUPPORT OF THEIR PROPOSED PLAINTIFF FACT SHEET AND FACT SHEET IMPLEMENTATION ORDER**

In accordance with the Court's Pretrial Order No. 5, dated December 28, 2023, ECF 175; and the Court's January 24, 2024, Order granting the parties' stipulated extension request, ECF 223; Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively "Uber"), hereby submit this statement in support of Uber's proposed plaintiff fact sheet ("PFS"), Declaration of Jessica E. Phillips ("Phillips Decl.") Ex. A, and Fact Sheet Implementation Order. Uber respectfully requests the opportunity to present oral argument in support of its proposal.

The parties' core disagreement is that Uber thinks that the PFS should be a "detailed" questionnaire, *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 865 (8th Cir. 2007), that gives Uber "the specific information necessary to defend the case against it," *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1234 (9th Cir. 2006); *see also* Phillips Decl. Ex. B at 10–51 (comprehensive PFS used in *In re Juul Labs Inc., Marketing Sales Practices & Products Liability Litigation*, Case No. 19-md-02913-WHO ("*In re Juul*")),[1] while Plaintiffs have belatedly taken the position that the PFS should be much more limited and that Plaintiffs should not have to answer questions about their damages until after Rule 12(b) motions are decided.[2] But the purpose of the fact sheets is to assist both parties in determining how to prioritize these consolidated cases, and both sides are assisted in that endeavor by a PFS that includes basic information about each Plaintiff's claims, including details about the incident and damages. Moreover, nothing in the federal rules prohibits information about damages from being exchanged while Rule 12 motions are briefed and decided. And Plaintiffs' nonsensical approach is inconsistent with how fact sheets have been used in other MDLs, including ones for which Plaintiffs have advocated.[3] The Court should order the parties to use Uber's PFS.

---

[1] The *In re Juul* Fact Sheet Order cited page numbers are the numbers digitally stamped at the top of each page instead of the numbers at the bottom that reset with each exhibit.

[2] Plaintiffs advocate for this position while simultaneously proposing a defense fact sheet ("DFS") that would likely require Uber to produce thousands of pages of documents.

[3] During the parties' negotiations, Plaintiffs cited the *In re Juul* PFS as an example the parties should follow. Nevertheless, the *In re Juul* PFS contains many questions that Plaintiffs have

I.  **THE PARTIES' MEET AND CONFER EFFORTS**

In Uber's December 21, 2023, Statement in Support of Its Proposed Pretrial Order, Uber proposed that the parties use the fact sheets that were agreed upon in the Judicial Council Coordination Proceeding No. 5188 (the "JCCP"), as those documents had "already been extensively negotiated and effectively implemented." ECF 171 at 6.[4]  Plaintiffs disagreed. ECF 168 at 5. Pretrial Order No. 5 ordered the parties to meet and confer regarding "the scope and terms of Plaintiff-related discovery, including plaintiff . . . fact sheets." ECF 175 at 3. Unfortunately, Plaintiffs did not fulfill their obligation to meaningfully collaborate with Uber regarding the scope and terms of the fact sheets.

The parties met and conferred regarding the fact sheets on four occasions, totaling approximately five hours, and exchanged eight drafts of the PFS. During the negotiations, the parties appeared to make some progress resolving their disputes. In particular, although Uber believes that the JCCP PFS has worked well, Uber compromised to make a number of changes to accommodate Plaintiffs' requests, including (but not limited to):

- Plaintiffs advocated for an approach to mental heath records whereby only Plaintiffs who report suffering mental or emotional harm and identify one or more particular mental health injuries from an established list are required to sign an authorization that releases their mental health records. Uber agreed to this approach.[5]
- Plaintiffs' counsel complained that certain sections of the PFS restricted Plaintiffs' ability to accurately convey their experience. Uber responded to those concerns by adding "attempted" categories to the checklist Plaintiffs use to identify the misconduct they allegedly experienced, *see* Phillips Decl. Ex. D at 7–8, and for questions requiring Plaintiffs to select an answer from certain pre-determined options, Uber provided space for Plaintiffs

---

objected to, *see, e.g.*, Phillips Decl. Ex. B at 22 (directing plaintiffs to identify mental health injuries), and the PFS in *In re Juul* were due by May 26, 2020, *see id.* at 3 (60 days from order). The first Rule 12(b) motions were not submitted till June 2020. *See, e.g.*, Notice of Mot. to Dismiss RICO Claims Pursuant to Rule 12(b)(6), *In re Juul*, ECF No. 645 (June 5, 2020).

[4] The Plaintiffs' JCCP leadership committee that agreed to the JCCP PFS overlaps with the MDL leadership committee. *See* ECF 132-1 at 2 (letter proposing adding Brian Abramson to the proposed MDL leadership group to "facilitate coordination with the MDL and the JCCP").

[5] *Compare* Phillips Decl. Ex. C at 13 ("To discuss adding separate authorization for mental health records for plaintiffs claiming psychological/mental health injuries . . . ."), *with* Phillips Decl. Ex. A at 15–16.

- Plaintiffs complained some questions were confusing. Uber rephrased them to add clarity.[7]
- Plaintiffs requested many questions be eliminated. While Uber kept some questions, it eliminated others, including those regarding Plaintiffs' prior legal claims and certain questions regarding criminal proceedings connected to Plaintiffs' allegations.[8]

to clarify their answers with narrative responses should they wish to.[6] Uber also added an "if you know" qualifier to its questions.

Despite these concessions, Uber continuously noted Plaintiffs' non-reciprocal position that while the DFS should contain numerous burdensome document requests, the PFS should not contain any document requests.[9] During the January 20 meet and confer, Uber noted that if Plaintiffs' position remained the same, then Uber would ensure reciprocity in the fact sheets by adding document requests to its proposed PFS that it had not previously included. The draft DFS that Plaintiffs circulated on January 22 made clear that Plaintiffs' position had not changed, so Uber added document requests to its proposed PFS circulated on January 23. In response, Plaintiffs' January 26 PFS, Phillips Decl. Ex. F, *drastically* retreated not only from the few compromises they had made, but also from many of their original positions, including eliminating several of the basic questions regarding reporting the alleged incident to law enforcement, limiting the requirement that Plaintiffs identify who they spoke to about the alleged incident (including no requirement to name witnesses who are family, friends, significant others etc.), eliminating the requirement that Plaintiffs claiming lost wages provide an authorization for their employment records, and eliminating the requirement that Plaintiffs claiming certain types of mental or

---

[6] *See, e.g.*, Phillips Decl. Ex. A at 6 (questions regarding when alleged misconduct occurred), 16 (questions regarding mental or emotional harm).

[7] *Compare* Phillips Decl. Ex. E at 4 (asking whether independent driver took a different route than "anticipated"), *with* Phillips Decl. Ex. A at 5 (asking whether independent driver took a route "other than the one suggested in the Uber Application"); *compare* Phillips Decl. Ex. E at 4 (asking whether alleged incident occurred "before, during, or after the Trip"), *with* Phillips Decl. Ex. A at 6 (asking whether alleged incident occurred before entering, after exiting, or while inside the independent driver's vehicle).

[8] *Compare* Phillips Decl. Ex. E at 6 (Questions 4(e)–(f)), *with* Phillips Decl. Ex. A at 10–11; *compare* Phillips Decl. Ex. D at 15–16 (Questions 40–42), *with* Phillips Decl. Ex. A at 18.

[9] For additional reasons that fact sheets should not be used as a vehicle for serving document requests, and for a broader overview of the parties' negotiations regarding the DFS, please see Uber's Statement in Support of Their Proposed Pretrial Order Regarding Defendant Fact Sheet.

-3-
DEFENDANTS' STATEMENT IN SUPPORT OF THEIR
PROPOSED PRETRIAL ORDER RE PLAINTIFF FACT SHEET          CASE NO. 3:23-MD-03084-CRB

1  emotional harm provide an authorization for their mental health records.  Plaintiffs for the first
2  time have taken the position that Uber is entitled to only minimal information about witnesses—
3  far less than the federal rules require for initial disclosures—and to virtually no information about
4  the actual damages Plaintiffs are alleging in these cases.

5  **II.     THE PARTIES' DISAGREEMENTS**

6  Because the parties disagree about the PFS' basic function, they disagree about many of its specific aspects.  For example,  (1) Plaintiffs seek to limit Uber from obtaining information from third parties Plaintiffs identify as having relevant information; (2) Plaintiffs refuse to provide to Uber information about their employment or education, telephone numbers, email addresses, social media platforms, and other texting applications; (3) Plaintiffs refuse to provide to Uber basic information about the Uber trip connected to a Plaintiff's claim, including the start and end location; (4) Plaintiffs refuse to provide to Uber information about their interactions with law enforcement; (5) Plaintiffs refuse to provide to Uber information about their injuries; (6) Plaintiffs refuse to produce relevant documents to Uber; and (7) Plaintiffs who report suffering a specific mental health injury refuse to authorize the release of their mental health records to Uber.

16 **III.    THE COURT SHOULD ADOPT UBER'S PROPOSAL OVER PLAINTIFFS'**

17     **A.      Uber's Proposal Better Fulfills the PFS's Purpose**

18  The PFS' purpose "is to assemble considerable detail regarding each plaintiff in respect to its claim against each defendant." *In re Diet Drugs (Phentermine, Fenfluramine, Dexenfluramine) Prods. Liab. Litig.*, Nos. MDL 1203, Civ. 98–20070, 1999 WL 387322, at *1 (E.D. Pa. May 19, 1999).  Uber's proposal meets that standard by, among other things, directing Plaintiffs to list information about the events giving rise to their claims (the "Incident"), Phillips Decl. Ex. A at 7–9, and the alleged injuries they suffered, *id.* at 15–18.  Both parties will benefit from a comprehensive PFS when making strategic and case-management decisions in this litigation.

25  However, Uber is uniquely susceptible to prejudice without a comprehensive PFS.  *See In re Phenylpropanolamine*, 460 F.3d at 1234 (deferring to district court's conclusion that a "defendant was unable to mount its defense" without a PFS "because it had no information about the plaintiff or the plaintiff's injuries outside the" complaint).  The risk of prejudice is particularly

DEFENDANTS' STATEMENT IN SUPPORT OF THEIR
PROPOSED PRETRIAL ORDER RE PLAINTIFF FACT SHEET         CASE NO. 3:23-MD-03084-CRB

pronounced here for two reasons. First, Plaintiffs' cases are highly individualized, involving allegations ranging from "Inappropriate Comments," Phillips Decl. Ex. A at 7, to "Sexual Penetration" and "Kidnapping," *id.* at 9. The PFS must be correspondingly thorough. Second, in its Pretrial Order No. 5, the Court extended the stay of discovery *but only as to Plaintiffs*. *See* ECF 175 at 2–3.[10] Hence, while Uber must serve Plaintiffs with Rule 26 initial disclosures in February, *id.* at 3, Plaintiffs do not have a reciprocal obligation. Denying Uber a comprehensive PFS while requiring Uber provide Plaintiffs with an array of discovery responses would be patently unfair.

### B. Where the Parties Differ, the Court Should Adopt Uber's Proposal

#### 1. The Information Uber Can Obtain from and About Third Parties with Discoverable Information

Plaintiffs' proposal includes a provision that "Defendants will not contact any health care provider identified in this [PFS], other than for the purpose of seeking records pursuant to authorizations signed by Plaintiff, without Plaintiff's consent or Court Order." Phillips Decl. Ex. F at 2. "Other than witnesses to the Incident, Defendants will not contact any person with whom Plaintiff has spoken about the Incident identified in this [PFS] without Plaintiff's consent or Court Order." *Id.* There is no support, either in the Rules of Civil Procedure or Ninth Circuit case law, for Plaintiffs' proposal. There is no such provision in the JCCP PFS nor in any other MDL PFS Uber has reviewed. *See* Phillips Decl. Ex. E at 1–2. Plaintiffs have chosen to sue Uber, and a consequence of such decision is that Uber may investigate Plaintiffs' claims through, among other means, contacting and interviewing individuals with discoverable information.[11]

Plaintiffs likewise object to directing Plaintiffs to list the individuals with whom they have discussed the Incident (if any). *See* Phillips Decl. Ex. A at 14. This question is not burdensome to Plaintiffs. The information is readily within each Plaintiff's knowledge, and it is critical that Uber have this information as these individuals are highly likely to have discoverable information. Indeed, a broader version of this question was used in the JCCP. Phillips Decl. Ex. E at 7, 10.

---

[10] The Court made an exception to this extended stay by ordering Plaintiffs to produce bona fide ride receipts by February 15, 2024. *Id.*

[11] Uber will, of course, communicate with those represented by counsel only through counsel.

Plaintiffs also object to asking Plaintiffs to note the approximate date(s) they or someone on their behalf notified a health care provider of the Incident. *Compare* Phillips Decl. Ex. A at 12, *with* Phillips Decl. Ex. F at 12. But when a health care provider was notified of the Incident (e.g., immediately after or years after) is relevant to understanding Plaintiffs' alleged injuries' severity.

### 2. Questions Asking for Basic Information About a Plaintiff

Plaintiffs object to including questions about each Plaintiff's telephone numbers, email addresses, social media platforms, and other texting applications. *See* Phillips Decl. Ex. A at 3 (Questions 5–8); *see also id.* at 13–14 (Questions 37(a) and 38). This basic information, designed to assist the parties in streamlining discovery, is not difficult for Plaintiffs to provide.

Plaintiffs also argue that the PFS should not require listing any employment or education information even in cases where Plaintiffs claim lost wages. *Compare* Phillips Decl. Ex. A at 3–4, *with* Phillips Decl. Ex. F at 3. But Plaintiffs' earlier proposals included these questions, *see, e.g.*, Phillips Decl. Ex. G at 3–4, and versions of these questions were included in the JCCP and in other MDL PFS. *See* Phillips Decl. Ex. E at 3; *see, e.g.*, Phillips Decl. Ex. B at 13–14. Uber is entitled to this information given it is not particularly sensitive and is relevant to damages.

### 3. Questions Regarding a Plaintiff's Uber Trip

Questions 15 and 16 of Uber's PFS ask Plaintiffs to list, to their recollection, where the trip allegedly connected to their claims originated and its requested destination. Phillips Decl. Ex. A at 5. Plaintiffs view these questions as duplicative of the ride receipt. However, not every Plaintiff may provide a receipt. *See* ECF 175 at 2–3. Nevertheless, these questions are not burdensome, are well within Plaintiffs' knowledge, and were in the JCCP. Phillips Decl. Ex. E at 4.

Questions 18 through 20 of Uber's PFS asks Plaintiffs whether their independent driver took them to the requested destination via an alternate route or stopped at a location other than the requested destination. Phillips Decl. Ex. A at 5. Plaintiffs object to several sub-questions asking why these deviations occurred, if known. *Compare id.*, *with* Phillips Decl. Ex. F at 3–4 (omitting Questions 18(b), 19(b), and 20(b) from Uber's PFS); *see also* Phillips Decl. Ex. F at 4 (not asking whether the independent driver took an alternate route). Plaintiffs claim that these questions improperly call for speculation or information Plaintiffs will not know. But Uber's PFS instructs

Plaintiffs to answer only if they know. *See* Phillips Decl. Ex. A at 5. Variations of these questions were also used in the JCCP. Phillips Decl. Ex. E at 4 (Questions 11, 12(b), and 13(b)).

4. <u>Questions Regarding Interactions with Law Enforcement</u>

Plaintiffs object to Question 30(a), (b), and (d) of Uber's PFS. *Compare* Phillips Decl. Ex. A at 10, *with* Phillips Decl. Ex. F at 10. These questions ask Plaintiffs to list, to the best of their ability, when they or someone on their behalf notified law enforcement of the Incident, the contact information of anyone who notified law enforcement on Plaintiffs' behalf, and the names of all agents the Plaintiffs and those acting on Plaintiffs' behalf have spoken to. Phillips Decl. Ex. A at 10. These reasonable questions are aimed at locating individuals with discoverable information. They too were included in the JCCP. Phillips Decl. Ex. E at 6.

Plaintiffs take issue with Question 30(e) of Uber's PFS, which ask Plaintiffs who have testified in any criminal hearing or trial in connection with their claims to list the courthouses and years in which they testified. *Compare* Phillips Decl. Ex. A at 11, *with* Phillips Decl. Ex. F at 10 (requiring only the city and state where Plaintiffs testified). This information is within Plaintiffs' knowledge, is not burdensome to provide, and is important for efficiently locating relevant records. Again, a similar question was included in the JCCP that in fact was broader and requested more specific information. *See* Phillips Decl. Ex. E at 6.

5. <u>Questions Regarding Damages</u>

Plaintiffs object to the PFS including a chart that Plaintiffs can use to identify their mental health injuries, *see* Phillips Decl. Ex. A at 15; instructing Plaintiffs who anticipate seeking out-of-pocket costs to describe the costs they have incurred, *id.* at 18; and asking Plaintiffs who anticipate making a lost wages claim to state, to the best of their ability, their wages before and after the Incident, *id.* at 17; *see* Phillips Decl. Ex. F at 11–12 (eliminating these questions and Questions 39(b) and 41 of Uber's PFS asking whether Plaintiffs continue to suffer harm due to the Incident).

Uber first proposed the mental health injuries chart on January 18, Phillips Decl. Ex. D at 12, which Plaintiffs adopted with some modifications on January 22, Phillips Decl. Ex. G at 12–13. Plaintiffs sent Uber two proposals that included an out-of-pocket expenses chart like the one used in the JCCP. *Compare* Phillips Decl. Ex. E at 9, *with* Phillips Decl. Ex. C at 10, *and* Phillips

1  Decl. Ex. G at 16.  Plaintiffs have now, for unclear reasons, eliminated both charts from their
2  proposal and have steadfastly refused to include a question on lost wages.  Plaintiffs' proposals
3  would harm both sides as learning the exact nature of a Plaintiff's claimed injuries, whether it be
4  physical, mental, or lost wages, will help streamline discovery.  Uber's proposed charts are also
5  superior to Plaintiffs' primarily narrative-based questions because, as Uber learned in the JCCP,
6  many Plaintiffs will fail to fully describe their damages if presented with only a narrative prompt.

7        6.      <u>Requests for Production of Documents</u>

8  As Uber has explained, Plaintiffs' insistence on using their proposed DFS as a vehicle to
9  request broad, burdensome, irrelevant, and voluminous document productions is inappropriate.  If
10 the Court determines, however, that the fact sheets should include document requests, then such
11 approach should be reciprocal.  The requests for production in Uber's PFS are limited in scope and
12 seek information relevant to the claims in these cases, including Plaintiff's use of the Uber
13 Application, communications with Uber, communications with the accused independent driver,
14 communications regarding the Incident, social media posts, and communications with other
15 alleged victims.  *See* Phillips Decl. Ex. A at 18–19.

16       7.      <u>Release Forms</u>

17 The parties dispute several aspects of the release forms authorizing the disclosure of certain
18 records.  The first dispute is whether any Plaintiff should have to authorize the release of their
19 mental health records.  Plaintiffs' most recent proposal does not include this authorization form,
20 *see* Phillips Decl. Ex. F at 13, which is an unexpected departure from Plaintiffs' prior positions,
21 *see* Phillips Decl. Ex. G at 17; Phillips Decl. Ex. C at 13.  Uber proposes requiring only those
22 Plaintiffs who report suffering a specific mental health injury to sign an authorization for mental
23 health records.  *See* Phillips Decl. Ex. A at 15–16.  Disclosure of these records is appropriate,[12]
24 and consistent with other MDL PFSs.  *See, e.g.*, Phillips Decl. Ex. B at 22–23.

---

[12] *See Dornell* v. *City of San Mateo*, No. CV 12-06065-CRB (KAW), 2013 WL 5443036, at *3 (N.D. Cal. Sept. 30, 2013) ("[A] plaintiff waives her privacy rights [in her mental health records] if the alleged emotional distress claims are more than 'garden variety.'" (citation omitted)); *see also Pringle* v. *Wheeler*, No. 19-cv-07432-WHO, 2021 WL 1907824, at *3 (N.D. Cal. Apr. 16, 2021) (collecting cases held to not present garden-variety emotional distress claims, including cases alleging anxiety, sleeplessness, and depression).

Second, Plaintiffs refuse to include in the proposed PFS an authorization to release employment records, *see* Phillips Decl. Ex. F at 13, which is another recent departure from Plaintiffs' prior positions, *see* Phillips Decl. Ex. G at 17. As Plaintiffs proposed originally, Uber proposes requiring only those Plaintiffs "making lost wage claims" authorize disclosure of their employment records. Phillips Decl. Ex. C at 13; *see* Phillips Decl. Ex. A at 17. These Plaintiffs have placed their employment record in controversy, and disclosure is appropriate.[13] Uber's position is also consistent with other MDL PFS. *See, e.g.*, Phillips Decl. Ex. B at 27.

Third, Plaintiffs refuse to include in the proposed fact sheet a release authorizing disclosure of telephone records. *See* Phillips Decl. Ex. A at 14. But Uber's proposal is limited in that it applies only to Plaintiffs who have communicated on the phone about the Incident, *id.*, and covers only records from the Incident to the present, *id.*, Ex. E at 1.

Fourth, the parties dispute which Plaintiffs must authorize the release of their physical health records and law enforcement records. Plaintiffs argue that only those Plaintiffs who have seen a non-mental healthcare provider for treatment related to the Incident or otherwise notified a healthcare provider of the Incident must authorize the release of their physical health records Phillips Decl. Ex. F at 13. But Plaintiffs who see healthcare providers specifically about the Incident are not the only ones whose medical records will contain probative information regarding Plaintiffs' claims, including whether Plaintiffs' injuries stem from pre-existing conditions. In contrast, Uber's proposal—that Plaintiffs who have reported suffering physical harm as a result of the Incident authorize the release of their physical health records, Phillips Decl. Ex. A at 17—is more consistent with, and indeed, more plaintiff friendly than, the PFS used in the JCCP and other MDLs. *See* Phillips Decl. Ex. E at 12–14 (requiring *every* plaintiff to authorize the release of their physical health records); *see, e.g.*, Phillips Decl. Ex. B at 27 (same). Similarly, Plaintiffs refuse to authorize the release of law enforcement records relating to the Incident if someone on their behalf notified law enforcement, *see* Phillips Decl. Ex. F at 13, but regardless of who reported the

---

[13] *See Batts* v. *County of Santa Clara*, No. C08-00286 JW (HRL), 2010 WL 11586791, at *1 (N.D. Cal. Sept. 17, 2010) ("Here, Batts claims lost wages . . . . This court agrees that plaintiff's [complete] employment records are relevant or reasonably calculated to lead to the discovery of admissible evidence . . . .").

1  Incident, the law enforcement records exist and will be highly relevant.

2  Fifth, the parties dispute the scope of the physical health record and release. Plaintiffs argue that the form should authorize the release of records only from the date of the Incident to the present, *see* Phillips Decl. Ex. F, Ex. A at 1, but this limited coverage would exclude many documents indicating whether Plaintiffs' injuries stem from pre-existing conditions. And Uber's proposal—that the release cover records from 10 years prior to the Incident through the present, Phillips Decl. Ex. A, Ex. A at 1—is consistent with other MDLs. *See, e.g.*, Phillips Decl. Ex. B at 30 (release covering 10 years of records). Plaintiffs also omit language from the physical health record release stating that it authorizes the release of insurance records and documents related to public assistance claims, *compare* Phillips Decl. Ex. A, Ex. A at 2 (stating release covers "[a]ll insurance records, including . . ."), *with* Phillips Decl. Ex. F, Ex. A at 2 (omitting statement). But there is no reason to exclude those records from the release and including them in the release is consistent with the broad language of the releases in the JCCP PFS and other MDLs. *See* Phillips Decl. Ex. E at 12–13 (noting records covered are not limited to those listed but listing workers' compensation claims); *see, e.g.*, Phillips Decl. Ex. B at 30 (similar).

Finally, Plaintiffs object to including an acknowledgement in the authorization forms that the authorization form "shall not preclude any party from later seeking additional records." *See, e.g.*, Phillips Decl. Ex. A, Ex. A at 4. This acknowledgement is a benign safeguard designed to protect the parties' rights to pursue discovery. It should be included in the PFS.

## IV. CONCLUSION

For the foregoing reasons, the Court should adopt Uber's proposed PFS and Fact Sheet Implementation Order.

DATED: January 31, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:  */s/Jessica E. Phillips*
      JESSICA E. PHILLIPS

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC