RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S STATEMENT IN SUPPORT OF THEIR PROPOSED PRETRIAL ORDER REGARDING DEFENSE FACT SHEET**<br><br>Judge:   Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor |

-ii-

| | |
|---|---|
| 1 | KYLE N. SMITH (*Pro Hac Vice* admitted) |
| | ksmith@paulweiss.com |
| 2 | JESSICA E. PHILLIPS (*Pro Hac Vice* admitted) |
| | jphillips@paulweiss.com |
| 3 | **PAUL, WEISS, RIFKIND, WHARTON** |
| | **& GARRISON LLP** |
| 4 | 2001 K Street, NW |
| | Washington DC, 2006 |
| 5 | Telephone: (202) 223-7300 |
| | Facsimile:  (202) 223-7420 |
| 6 | |
| | *Attorney for Defendants* |
| 7 | UBER TECHNOLOGIES, INC., |
| | RASIER, LLC, and RASIER-CA, LLC |

DEFENDANTS' STATEMENT IN SUPPORT OF PROPOSED
PRETRIAL ORDER RE DEFENSE FACT SHEET                               Case No. 3:23-md-03084-CRB

**DEFENDANTS' STATEMENT IN SUPPORT OF THEIR PROPOSED DEFENSE FACT SHEET AND FACT SHEET IMPLEMENTATION ORDER**

In accordance with the Court's Pretrial Order No. 5, dated December 28, 2023, ECF 175; and the Court's January 24, 2024, Order granting the parties' stipulated extension request, ECF 223; Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively "Uber"), hereby submit this statement in support of Uber's proposed defense fact sheet ("DFS"), Declaration of Jessica E. Phillips ("Phillips Decl.") Ex. A, and Fact Sheet Implementation Order. Uber respectfully requests the opportunity to present oral argument in support of its proposal.

The parties' primary dispute regarding the DFS is whether the DFS is the appropriate tool for Plaintiffs to seek eight extremely broad categories of documents that are essentially unbounded in scope and time, that are irrelevant, overbroad, and will delay completion of the DFS, thereby subverting the entire purpose of the fact sheet, which is to enable the parties to learn basic information about each of the consolidated cases in this MDL.[1]  Uber's view is that Pretrial Order No. 5, which lifted the stay of discovery, made clear that Plaintiffs can move forward with obtaining documents through the ordinary Rule 34 processes.  ECF 175 at 4.  Despite Uber's many concessions, Plaintiffs have steadfastly refused to compromise.  The Court should accept Uber's DFS and reject Plaintiffs' proposal.

**I.    THE PARTIES' MEET AND CONFER EFFORTS AND CONTINUED DISPUTES**

In Uber's December 21, 2023, Statement in Support of Its Proposed Pretrial Order, Uber advocated to use the fact sheets that were agreed upon in the Judicial Council Coordination Proceeding No. 5188 (the "JCCP"), as those documents had "already been extensively negotiated and effectively implemented."  ECF 171 at 6.[2]  Plaintiffs disagreed. ECF 168 at 5.  Pretrial Order

---

[1] Gallingly, Plaintiffs take the position that including document requests in the fact sheets should not be reciprocal; they have steadfastly refused to include document requests in their proposed plaintiff fact sheet ("PFS").  Uber does not believe that document requests should be made via the DFS, but if the Court permits them to be included, then they should also be included in the PFS.

[2] The Plaintiffs' JCCP leadership committee that agreed to the JCCP PFS overlaps with the MDL leadership committee. *See* ECF 132-1 at 2 (letter proposing adding Brian Abramson to the proposed MDL leadership group to "facilitate coordination with the MDL and the JCCP").

No. 5 ordered the parties to meet and confer regarding "the scope and terms of Plaintiff-related discovery, including . . . defense fact sheets." ECF 175 at 3. Before filing this statement, the parties engaged in approximately five hours of meet and confers and exchanged nine drafts of the DFS in an effort to submit an agreed upon proposal.

At the conclusion of these efforts, Plaintiffs sent Uber a final proposed DFS on January 26, 2024, Phillips Decl. Ex. B, that is predominately aimed not at obtaining basic information necessary for Plaintiffs to understand these cases or defend against a Rule 12 motion but rather seeking production of eight extremely broad categories of documents that are essentially unbounded in scope and time: (1) all GPS data related to a trip in issue (a "Subject Trip"), including for 10 minutes before and two hours after the Subject Trip as well as a "Trip map"; (2) every "Tax Summary" for each accused independent driver; (3) a log of all agreements each independent driver accepted with Uber; (4) all background checks performed on each independent driver; (5) an "Account Status Log" for each independent driver; (6) a "Trip History Report" for each independent driver; (7) a "Communication Log" for each independent driver as well as all communications exchanged between Uber and third parties "related to alleged misconduct and/or crimes" by the independent driver; and (8) "all [t]ickets for" each independent driver, with nominal limitations. Phillips Decl. Ex. B at 3–5.

As Uber has consistently explained, including during the parties' multiple meet and confers, and in a January 25, 2024, email, Plaintiffs' document requests should be made via Rule 34 requests for production and not via the DFS, which unnecessarily and unfairly frontloads the discovery burden on Uber and will delay completion of the DFS. However, in an effort to proceed in good faith, Uber made numerous significant concessions throughout the parties' negotiations. Uber's DFS includes some of Plaintiffs' document requests, including GPS data for the ride at issue, a log of all agreements between Uber and the accused independent drivers, and the requested Tax Summaries. Phillips Decl. Ex. A at 3–4. Uber's proposal also included more narrow and less burdensome production requests, such as a request to produce any legal process (i.e. a subpoena) that Uber received from law enforcement related to the misconduct a Plaintiff allegedly suffered (the "Incident") as well as Uber's responses to law enforcement's requests, and a request to

produce certain communications between Uber and any of the Plaintiffs, independent drivers, or other witnesses to an Incident. *Id.* at 1, 5. These documents are unlike any material Uber agreed to produce via the JCCP DFS. *See* Phillips Decl. Ex. C. And where Uber was unwilling to produce certain documents because of overbreadth and burden, Uber proposed adding questions that would nonetheless give Plaintiffs the information that they sought.

Despite all efforts and Uber's compromises, Plaintiffs steadfastly refused to compromise on the scope of their requests. As a result, the parties have not been able to reach complete agreement on the proposed DFS.

## II. THE COURT SHOULD ADOPT UBER'S PROPOSAL OVER PLAINTIFFS'

The Court should adopt Uber's DFS. Uber's proposal fulfills a DFS's purpose by providing Plaintiffs with the information they need at this early stage of litigation. By contrast, Plaintiffs' proposal, which includes numerous voluminous document requests, should be rejected for three primary reasons.

First, Plaintiffs wrongly and unnecessarily transform the DFS into a wide-ranging request for production of documents. Second, Plaintiffs' proposal will create unnecessary delays as Uber will be unable to complete the DFS for many months given the sheer volume of requested documents. Finally, Plaintiffs' specific requests for production are objectionable on numerous grounds (all of which would be most logically presented in the context of the orderly process for addressing document requests as set out in Fed. R. Civ. P. 34).

### A. Uber's DFS Provides Plaintiffs the Information They Need

A DFS is primarily meant to enable the parties to learn basic information about each of the many consolidated cases so that the parties can agree upon a logical schedule of proceedings. *See In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, Case No. 2:19-md-02921 (BRM) (ESK), 2022 WL 3211421, at *2 (D.N.J. Aug. 9, 2022) ("Based on the information obtained by these fact sheets, the parties would then select representative . . . cases **for further discovery** . . . ." (emphasis added)). Uber's DFS fulfills this purpose by providing Plaintiffs with information known to Uber about each Plaintiff, Phillips Decl. Ex. A at 2; each Subject Trip connected to a Plaintiff's claims, *see id.* at 2–3; each accused independent driver, *id.* at 3–4; and

each Incident, *id.* at 5. Responses to these requests will provide Plaintiffs with far more information than the JCCP DFS demanded, and far more than the "basic factual information about each plaintiff's claims" that Plaintiffs are entitled to receive from a DFS. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2010 WL 7699456, at *2 (N.D. Ohio June 4, 2010) (citation omitted).

### B. Plaintiffs' Proposal Wrongly and Unnecessarily Transforms the DFS into a De Facto List of Requests for Production

Plaintiffs demand to use their DFS to compel Uber to produce thousands, if not tens of thousands, of pages of documents. But there is no reason for Plaintiffs to seek the production of documents via the DFS instead of Rule 34 written discovery. Pretrial Order No. 5 lifted the "stay on discovery sought from Defendants . . . including written discovery." ECF 175 at 2. Plaintiffs have represented to the Court that they "anticipate serving their first set of RFPs shortly." ECF 207 at 6. Plaintiffs have provided no explanation for why they could not serve Uber with Rule 34 written discovery seeking the same categories of documents in a request for production that they are seeking via the DFS. In responses to RFPs, Uber could serve its responses and objections and work with Plaintiffs to agree on the proper scope of document requests and appropriate custodians, non-custodial sources of documents, and search terms.[3] The parties will not have time to engage in these discussions when completing their fact sheets, and the Court should reject Plaintiffs' attempts to unnecessarily circumvent the Rule 34 process.

### C. Treating the DFS As a De Facto List of Requests for Production Undermines the DFS's Utility

A fact sheet is most helpful when it is completed early in pretrial proceedings. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1224 (9th Cir. 2006) (district court adopted a PFS protocol "in lieu of interrogatories to streamline" discovery). But if Plaintiffs' proposed DFS is adopted, Uber will likely have to locate, review, and submit thousands (or tens

---

[3] The Court further ordered the parties to "meet and confer regarding custodial sources and non-custodial sources of discovery and other ESI productions." ECF 175 at 6. Many of Plaintiffs' requests for production preempt this meet and confer process.

-4-

of thousands) of pages of documents to comply with its obligations. The delay in Uber's completion of the DFS due to Plaintiffs' document production requests would severely hamper the parties' ability to make early decisions about the proper administration of these cases and would ultimately unnecessarily prolong this litigation. Uber offers an easy solution: use the DFS to learn facts and use requests for production to receive documents.

Plaintiffs' request for "Tickets" is illustrative of the problem inherent in Plaintiffs' approach. Instead of accepting Uber's proposal to provide Plaintiffs with more information regarding the formal and informal complaints an independent driver has received "for any form of misconduct or inappropriate behavior," Phillips Decl. Ex. A at 4, Plaintiffs have created an elaborate definition of "Ticket" that includes "information attached or linked to the Ticket, including . . . all Communications connected with the ticket" in the hopes of covering every tangentially related document conceivable, Phillips Decl. Ex. B at 2. Plaintiffs then request "all Tickets for the Driver" related to an astonishingly broad array of possible misconduct that is virtually unlimited in both scope and time. *Id.* at 5. This burdensome request for all of the independent drivers—in combination with Plaintiffs' many other overbroad requests—imposes a document production burden that would take months for Uber to satisfy.

**D.    Plaintiffs' Specific Requests Are Objectionable on Several Bases**

Because Plaintiffs have crafted their document requests as broadly as possible to reach every scenario imaginable in these individualized cases, all of the document requests are overly broad and unduly burdensome, and are often duplicative, among other problems.

1.    <u>GPS Data from 10 Minutes Before and Two Hours After a Trip</u>

Plaintiffs' proposal requires Uber to produce GPS data reflecting each accused independent driver's GPS for 10 minutes before and two hours after a Subject Trip. Phillips Decl. Ex. B at 3. As in the JCCP, Uber is willing to produce all GPS data relating to a Subject Trip. *Compare* Phillips Decl. Ex. C at 3, *with* Phillips Decl. Ex. A at 3. But pre- and post-trip GPS information will likely be irrelevant in most cases, and the parties will not know the few cases in which this discovery may be appropriate—for example, if the alleged incident took place after the ride was

complete—until after Plaintiffs complete the PFS.[4]

On January 30, 2024, Plaintiffs emailed Uber to inform it that Plaintiffs had amended their proposal and would now seek GPS data for 10 minutes before and two hours after a Subject Trip or until the independent driver next accepted a ride request, whichever occurred earlier. But it would be extremely burdensome for Uber to manually review each of the Subject Trips and determine whether the independent drivers accepted a ride within two hours after the Subject Trip ended. This request is another example of why Plaintiffs' approach is unworkable; document discovery of this nature should be proportionate to the facts of particular cases pursuant to the Rule 34 process, but Plaintiffs cannot do that since they are trying to shoehorn document requests into the discovery tool they should use to gain basic information about these cases.

### 2. Trip Maps

Plaintiffs ask for the "Trip map" that displays "the date, time, and location where the Subject Trip began and ended, the Driver acceptance location, the Preferred Route, the Actual Route, and the time and location the trip was cancelled" for each of the Subject Trips. Phillips Decl. Ex. B at 3. But a map of the route taken is already included in the ride receipts that Plaintiffs should have. Uber has also agreed to produce the GPS data for each Subject Trip, and Plaintiffs can use that data to map out the trips and identify alternative route options. Moreover, the requested "Trip map" does not display all of the requested data—another issue that the parties could discuss further during the Rule 34 process.

### 3. Background Checks

Plaintiffs request all background check results in Uber's possession—regardless of time frame—for every accused independent driver. Phillips Decl. Ex. B at 4. In addition to the requirement that independent drivers must pass a background check prior to gaining access to the Uber App as an independent driver, beginning in mid-2018, Uber ordered annual background checks on every independent driver. That means that some independent drivers may have had as many as seven background checks. Given the number of cases in this MDL, this request alone

---

[4] Moreover, as a practical matter, if an independent driver does not stay online for two hours after the ride at issue, Uber will not have GPS information for that period.

could require the production of thousands of pages of discovery—a burden that would only delay Uber's completion of the DFS. And Uber's proposal includes questions about when and how frequently background checks were produced on each of the independent drivers. Phillips Decl. Ex. A at 3–4.

### 4. Account Status Logs

For each accused independent driver, Plaintiffs request that Uber produce a "complete Account Status Log," which Plaintiffs define as a "log or report that includes (to the extent available) the complete history of the driver's status with Uber, including [among other things] the driver name, status . . . status note(s), whether status is current, time and date status began, time and date status ended, [and] flow type." Phillips Decl. Ex. B at 1, 5. These documents can be quite long, and much of the information recorded in these logs is irrelevant to Plaintiffs' claims. Independent drivers go in and out of active status for a wide variety of reasons and several, including some of the most common ones, like expired driver documentation, have nothing to do with these cases. Completing this request for irrelevant information would require Uber to produce thousands of pages of discovery and would slow down Uber's ability to complete the DFS.

### 5. Trip History Reports

Plaintiffs' proposal requires Uber to produce a "complete Trip History Report" for each accused independent driver. Phillips Decl. Ex. B at 5. Plaintiffs define this document as a log of all past ride requests an independent driver has accepted, including among other things, "the date and time of each action (ride request, ride acceptance, begin trip, drop off), the status of the trip . . ., the rating if any given by the rider to the Driver, . . . [the] gross driver adjusted fare, all tags, and any feedback" a rider gives via the Uber Application. *Id.* at 2.

This production would be extremely voluminous and yield largely irrelevant information. For example, it is not clear why Plaintiffs need to know the gross driver adjusted fare for each trip taken by an independent driver. Furthermore, Plaintiffs' request does not contain any time or subject-matter limitation, and some independent drivers have been utilizing the Uber platform for many years and have completed more than 10,000 trips. Even assuming that 50 trips could be summarized on one page, that would mean that just one driver would have a 200-page log.

Moreover, Plaintiffs either already have the relevant information from these documents, or Uber has offered to provide it in its DFS.  Much of the requested information pertaining to each Subject Trip is already included in the ride receipts that Plaintiffs should have.  A ride receipt shows, for example, the time at which the trip began and ended and the trip fare.  As a compromise, Uber has agreed to provide Plaintiffs with "the total number of trips the Driver has completed using the Uber Driver App," the "Driver's average star rating on the Uber Driver App," and whether Uber ever received informal feedback "regarding any form of misconduct or inappropriate behavior involving the Driver," and if so, the date of the feedback, the misconduct alleged, and whether Uber "restrict[ed] the Drivers access to the Uber App as a result of the" feedback.  Phillips Decl. Ex. A at 4.  This information is more than sufficient.

### 6. Communication Logs

Plaintiffs request a "complete Communication Log" for each accused independent driver, Phillips Decl. Ex. B at 5, which they define expansively as a "spreadsheet log of communications concerning a Driver while logged into the Uber Driver App including (to the extent available) [among other things,] columns entitled timestamp, datstr, message uuid, to user uuid, [and] from user uuid," *id.* at 1–2.  Plaintiffs' request does not contain any time or subject-matter limitation that could narrow their requests to exclude irrelevant material.  On its face, Plaintiffs' request seeks a log of all forms of communication (e.g., in-app messaging, push notifications, emails, phone calls) about anything made at any point in time.  Independent drivers receive correspondence related to local events in the area, promotions, and requests for updated independent driver information—all subjects entirely unrelated to Plaintiffs' claims.

### 7. Tickets

Plaintiffs' proposed DFS includes two requests that essentially amount to a request for "all tickets" associated with each accused independent driver.  *See* Phillips Decl. Ex. B at 5.  Plaintiffs demand "all [t]ickets" that post-date the implementation of Uber's safety taxonomy in 2018 for each independent driver "which relate to any of the following" of a wide variety of categories of misconduct ranging from sexual assault to "Dangerous Driving" and "Health / Self Harm."  *Id.* at

2, 5. Many tickets that fall within these expanded categories, particularly "Dangerous Driving" and "Health / Self Harm," will be completely irrelevant.

Plaintiffs separately demand "all [t]ickets" that pre-date the implementation of Uber's safety taxonomy in 2018 and "which relate to any Ticket (including any complaint or customer service interaction) initiated by a Rider or by a third party on the Rider's behalf." Phillips Decl. Ex. B at 2, 5. Plaintiffs do not clarify what constitutes a "complaint or customer service interaction" or how those items differ from what has already been included in the definition of "tickets." Again, the Rule 34 process should be used to clarify this confusion.

For both requests for "[t]ickets," Plaintiffs define a "[t]icket" as "a customer support interaction or series of related customer support interactions (including but not limited to those which Uber sent, received, tracked, or organized via Uber's" internal software programs). Phillips Decl. Ex. B at 2. Plaintiffs further expand the definition of ticket by including a variety of different types of documents and information separate from the ticket itself, including "all information attached or linked to the Ticket, including without limitation the . . . comments, names of Uber personnel reflected in the tickets, and all Communications connected with the ticket." *Id.* Plaintiffs' definition appears to cover all documents and communications, whether internal or external, regarding any complaint ever lodged against any independent driver—no matter how irrelevant the complaint is to this litigation. It is difficult to estimate just how vast this production would be, but it would certainly be thousands of pages, if not more. In addition, the "tickets," as Plaintiffs have defined them, would very likely include privileged material, which would require Uber to review and redact such communications and prepare a privilege log—imposing an additional time-consuming burden on Uber.

In an attempt to compromise, Uber has proposed to include in its DFS *information* relating to formal and informal reports of "any form of misconduct or inappropriate behavior," against the accused independent drivers. Phillips Decl. Ex. A at 4. This information would include all of the categories requested by Plaintiffs, which is a significant enlargement from what the parties agreed to in the JCCP where information was provided only as to sexual misconduct and assault complaints made against the independent drivers. *See* Phillips Decl. Ex. C at 5.

8. <u>Communications Regarding Accused Independent Drivers</u>

Plaintiffs ask for all communications between Uber and law enforcement entities and agents, as well as Lyft, "related to alleged misconduct and/or crimes by the Driver." Phillips Decl. Ex. B at 5. This request contains no time or scope limitation and could require the production of thousands of pages. But, as another compromise, Uber has agreed to produce any legal process Uber's Law Enforcement Response Team received as well as Uber's response. Phillips Decl. Ex. A at 5. These documents, which were not required by the JCCP DFS, *see* Phillips Decl. Ex. C at 6, will provide Plaintiffs with sufficient information for this early stage of litigation.

## III. TIMING FOR THE FACT SHEET EXCHANGE

The parties have submitted proposed implementation orders, which address, among other things, the timing and deadlines for the exchange of the fact sheets. Plaintiffs propose that the parties complete their respective fact sheets simultaneously and within 60 days after February 15, 2024. But Uber requests the Court order that the deadline to complete a DFS should be 60 days after the receipt of a completed PFS. This type of staggered exchange is common in fact sheet discovery. In the JCCP, Plaintiffs advocated for, and the court ultimately granted, a staggered fact sheet exchange schedule. That schedule has worked well because it ensures that Uber has all of the information in the PFS to help it ensure that it has the correct ride at issue and thereby complete the DFS.

## IV. CONCLUSION

For the foregoing reasons, the Court should adopt Uber's proposed DFS and Fact Sheet Implementation Order.

DATED: January 31, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: /s/ Jessica E. Phillips
JESSICA E. PHILLIPS

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

-10-