1  ROBERT ATKINS (*Admitted Pro Hac Vice*)
       ratkins@paulweiss.com
2  CAITLIN E. GRUSAUSKAS (*Admitted Pro Hac Vice*)
       cgrusauskas@paulweiss.com
3  ANDREA M. KELLER (*Admitted Pro Hac Vice*)
       akeller@paulweiss.com
4  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
5  1285 Avenue of the Americas
   New York, NY 10019
6  Telephone: (212) 373-3183
   Facsimile: (212) 492-0183
7

8  RANDALL S. LUSKEY (SBN: 240915)
       rluskey@paulweiss.com
9  MARC PRICE WOLF (SBN: 254495)
       mpricewolf@paulweiss.com
10 **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
11 535 Mission Street, 24th Floor
   San Francisco, CA 94105
12 Telephone: (628) 432-5100
   Facsimile: (628) 232-3101
13

14 *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.; RASIER, LLC;
15 and RASIER-CA, LLC
16

17 *[Additional Counsel Listed on Following Page]*

18                **UNITED STATES DISTRICT COURT**

19             **NORTHERN DISTRICT OF CALIFORNIA**

20                 **SAN FRANCISCO DIVISION**

21

22 | IN RE: UBER TECHNOLOGIES, INC. | Case No. 3:23-md-3084-CRB |

IN RE: UBER TECHNOLOGIES, INC.
PASSENGER SEXUAL ASSAULT
LITIGATION

Case No. 3:23-md-3084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO MODIFY PRETRIAL ORDER NO. 5**

This Document Relates to:

ALL ACTIONS

Judge:       Honorable Lisa J. Cisneros
Date:        February 22, 2024
Time:        3:00 PM via Zoom
Courtroom:   G – 15th Floor

KYLE SMITH (*Admitted Pro Hac Vice*)
  ksmith@paulweiss.com
JESSICA PHILLIPS (*Admitted Pro Hac Vice*)
  jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.; RASIER, LLC;
and RASIER-CA, LLC

DEFENDANTS' MOTION TO MODIFY PRETRIAL ORDER NO. 5                    3:23-md-3084-CRB

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3       Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively,

4  "Uber") submit this brief in support of their Motion to Modify Pretrial Order No. 5 (the "Motion").

5  In compliance with Pretrial Order ("PTO") No. 5, Uber is gathering the documents it produced in

6  prior sexual assault cases and arbitrations concerning Uber's general (*i.e.*, not case-specific)

7  policies, procedures, practices, and safety measures related to sexual assault.   However, Uber

8  respectfully requests that PTO No. 5 be modified to the extent that Uber shall not be required to

9  produce documents it produced in other sexual assault cases that relate specifically to the plaintiffs

10 in those cases.[1]  It is neither relevant nor appropriate to require the production of documents about

11 these specific plaintiffs, who are alleged victims of sexual assault or misconduct and many of

12 whom decided to resolve their claims privately and confidentially without a public trial or other

13 adjudication.  The Court should thus modify PTO No. 5 for four reasons:

14      *First*, these highly-sensitive plaintiff-specific documents about other, unrelated incidents

15 of sexual assault or misconduct have no relevance to the unique and highly-individualized

16 incidents and experiences alleged by the MDL Plaintiffs.  No two incidents of alleged sexual

17 misconduct are alike and no two victims of sexual misconduct experience the same impact.  The

18 nature of the alleged misconduct ranges from inappropriate comments to sexual assault, and all

19 variations in between, and the circumstances of the alleged incidents vary dramatically from case

20 to case.  The principal tortfeasors (the independent drivers), the conduct of the independent drivers,

21 and the consequences for the plaintiffs are different in every case.  What might have happened to

22 one individual says nothing about what might have happened to another individual, and thus has

23 absolutely no relevance here.  For that reason alone, PTO No. 5 should be modified.

24      *Second* - - and perhaps most importantly - - production of plaintiff-specific documents

25 poses very serious privacy and confidentiality concerns for the alleged victims of sexual assault or

26 misconduct, many of whom chose to resolve their cases on a private and confidential basis and

27 _____

[1] In the context of this brief, lower case "plaintiffs" refers to plaintiffs in the prior litigations at
28 issue, not the Plaintiffs in this MDL.

- 1 -

1  thereby put their legal claims behind them.  ***Documents involving survivors of sexual assault do***

2  ***not constitute "off the shelf discovery" as contemplated in other mass tort contexts***.  Production

3  of case-specific documents without the plaintiffs' knowledge or consent unnecessarily deprives

4  survivors of control and agency over their own experiences, when it should be up to them to decide

5  whether, when, where, and how to share the details of these uniquely traumatic events.  These

6  concerns are part of the reason that nearly all of the plaintiff-specific documents are governed by

7  protective orders and confidentiality agreements.  Absent those protections, the individual

8  plaintiffs might never have pursued their legal claims, and the documents about their incidents

9  might never have been produced in litigation.

10  *Third*, to the extent that the MDL Plaintiffs seek plaintiff-specific discovery to show that

11  Uber was on notice of reports of sexual assault or misconduct by other independent drivers using

12  the Uber platform, that is duplicative of information MDL Plaintiffs already possess, and is

13  unnecessary.  The documents that Uber will produce in discovery, the written discovery and

14  depositions available to the MDL Plaintiffs, and publicly-filed complaints will more than suffice.

15  The MDL Plaintiffs do not need, on top of all that, documents about specific individuals and

16  incidents that are unrelated to the incidents at hand and capture private experiences of survivors

17  who have not asked to be involved in this litigation.

18  *Finally*, Uber could be seriously prejudiced by production of case-specific documents from

19  prior cases, as the underlying allegations in those cases were never legally or factually tested or

20  adjudicated and may not even involve issues presented in the MDL cases.  If the MDL Plaintiffs

21  intend to use case-specific documents in their own cases, Uber will not be able to defend itself and

22  its actions as they relate to the previously-resolved cases without effectively reopening and taking

23  discovery in those cases.  In this way, production of those documents risks this MDL devolving

24  into mini-litigations over the facts of cases not at issue in the MDL that have long been resolved.[2]

25  _____

[2] Moreover, some prior litigations related to sexual assault are even further disconnected from the
26  cases in this MDL.  For example, some of the prior litigations involve alleged assaults committed
by someone other than an independent driver or someone fraudulently posing as an independent
27  driver.  Other cases involve alleged incidents that occurred long (*i.e.*, months) after the alleged
Uber-connected ride took place.  Discovery in these types of cases involve documents that have
28  no relevance to the MDL cases and should not be produced here.

1    For all or any one of the above reasons, PTO No. 5 should be modified such that Uber need

2    not produce plaintiff- and case-specific documents from prior cases.[3]

3    **II.    PROCEDURAL HISTORY**

4        In PTO No. 4, the Court ordered the parties to file joint or competing proposals for a PTO

5    on discovery.  ECF No. 152 at 6.  On December 21, 2023, following several meet and confers on

6    a wide variety of discovery and pretrial issues, the parties submitted competing proposals covering

7    various topics including, among other things, the stay of discovery and coordinated discovery.  *See*

8    ECF Nos. 168 (Plaintiffs' proposal), 171 (Uber's proposal).  Although Plaintiffs' submission

9    included a request for production of documents produced in other litigations,[4] because the parties'

10   submissions were filed in parallel, Uber did not have the opportunity to brief its objections to that

11   particular request.  On December 28, 2023, the Court issued PTO No. 5 which, among other things,

12   ordered Uber to produce "all documents [Uber] produced in any other Uber sexual assault cases,

13   including arbitrations, and any other cases about the 'Safe Rides Fee.'"[5]  ECF No. 175 at 4.

14       In their submission preceding PTO No. 5, the MDL Plaintiffs appeared to acknowledge

15   that the scope of productions related to these prior litigations likely needed to be narrowed, and

16   affirmatively posed the idea of engaging in discussions with Uber about narrowing the scope of

17   initial discovery "to ensure proportionality."  ECF No. 168 at 4.  Plaintiffs further contemplated

18   that if Uber were to provide a "meaningful argument as to why such discovery cannot or should

19   not take place here, . . . the Court could still order these productions in general and refer the matter

20   to Judge Cisneros to hear any objections as to scope or burden of specific requests."  *Id.*

21   [3] For these same reasons, PTO No. 5, ¶ 6.B, should be modified to limit the requirement for
     production of documents "pertaining to alleged individual incidents" unless the documents address
22   the individual incidents alleged by Plaintiffs in this MDL.

23   [4] Plaintiffs refer to production of documents in prior cases as "off the shelf discovery," which
     mischaracterizes the nature of the productions they seek.  There are no *pro forma* documents
24   produced in each prior case, and documents produced in prior litigations are not neatly packaged
     on a shelf ready for easy production at the push of a button.  Rather, collecting documents produced
25   in prior cases requires Uber to search for produced documents (as there has been turnover among
     the Uber in-house counsel team with knowledge of those productions) and, in some instances,
26   contact the numerous different outside counsel from across the country that handled the various
     prior litigations at issue and made the productions.  Prior to PTO No. 5, no judge in any case
27   against Uber related to sexual assault has ordered (even when requested) "off the shelf discovery."

28   [5] Uber did not produce any documents related to sexual assault in the "Safe Rides Fee" case,
     *McKnight* v. *Uber Technologies, Inc.*, Case No. 4:14-cv-05615-JST (N.D. Cal.).

1    Uber now respectfully requests the Court modify PTO No. 5 to require production of only

2    non-case-specific and non-plaintiff-specific documents Uber produced in prior litigations.  Uber

3    is gathering other documents pursuant to PTO No. 5, including non-case-specific documents

4    produced in prior sexual assault litigations, which will supply Plaintiffs with the "common defense

5    discovery" they seek. *See id*. at 3. This includes policies, procedures, guidelines, and other

6    documents relating to sexual assault that were produced in other cases.

7    **III.    LEGAL STANDARDS**

8    **A.    Modification of an Order**

9    "As long as a district court has jurisdiction over the case, then it possesses the inherent

10   procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to

11   be sufficient." *City of Los Angeles, Harbor Div.* v. *Santa Monica Baykeeper*, 254 F.3d 882, 885

12   (9th Cir. 2001) (quoting *Melancon* v. *Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)) (emphasis

13   omitted).  This power "is derived from the common law, not from the Federal Rules of Civil

14   Procedure." *Id.* at 886.

15   **B.    Limits of Discovery**

16   "[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries."

17   *Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman* v. *Taylor*, 329

18   U.S. 495, 507 (1947)).  A principal boundary is established by Federal Rule of Civil Procedure

19   26(b)(1), which permits parties to "obtain discovery regarding any nonprivileged matter" so long

20   as the discovery is "*relevant* to any party's claim or defense and *proportional* to the needs of the

21   case." Fed. R. Civ. P. 26(b)(1) (emphasis added).

22   Under the plain language of Rule 26(b)(1), evidence is not discoverable simply because it

23   is relevant; it must also be proportional to the needs of the case.  Therefore, a district court must

24   limit even relevant discovery in some instances, including when "the discovery sought is

25   unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).  As explained in the

26   relevant notes from the Advisory Committee on Civil Rules, "[t]he objective [of Rule 26] is to

27   guard against redundant or *disproportionate* discovery by giving the court authority to reduce the

28   amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry."

- 4 -

1    *Gonzales* v. *Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (quoting Fed. R. Civ. P. 26

2    advisory committee's note to 1983 amendment) (emphasis added).  Over time, Rule 26(b)(1) has

3    been amended to address "the need to impose reasonable limits on discovery through increased

4    reliance on the common-sense concept of proportionality." *Jensen* v. *BMW of N. Am., LLC*, 328

5    F.R.D. 557, 560 (S.D. Cal. Jan. 15, 2019) (internal quotation marks and citations omitted).

6        Courts thus require parties to "size and shape their discovery requests to the requisites of a

7    case," and discovery should be tailored to "provide parties with 'efficient access to what is needed

8    to prove a claim or defense, but eliminate unnecessary or wasteful discovery.'" *Id.* (quoting

9    *Roberts* v. *Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016)).  Here, the MDL Plaintiffs

10   cannot show that documents specific to individual victims in prior, resolved lawsuits are needed

11   or otherwise proportionate to proving their own individual claims.

12   **IV.    ARGUMENT**

13       PTO No. 5 should be modified because the case-specific and plaintiff-specific documents

14   produced by Uber in prior litigations involving sexual assault are irrelevant, and raise serious

15   privacy and confidentiality concerns for the plaintiffs in those prior cases.  The production of the

16   case-specific discovery is at odds with the survivor-centered approach that empowers survivors of

17   sexual abuse to control and share stories of their unique and traumatic experiences on their own

18   terms.  Moreover, the prior cases did not proceed to trial, and the introduction of unproven

19   allegations risks causing this litigation to devolve into mini-litigations in which Uber would have

20   to effectively reopen discovery to defend against allegations related to these prior incidents.

21   Production of documents produced in unrelated, irrelevant, and resolved cases not only injects

22   other plaintiffs into cases they did not ask to be a part of, but it also risks diverting the parties' and

23   the Court's attention away from the efficient resolution of the MDL cases.

24
         **A.    Plaintiff-Specific Documents From Prior Cases Are Not Relevant to the**
25                  **Allegations of the MDL Plaintiffs**

26       Plaintiff-specific documents and information about other, unrelated incidents of sexual

27   assault or misconduct have no relevance to the incidents and experiences alleged by any of the

28   MDL Plaintiffs.  There is no indication that the particular factual circumstances of the incidents

1   alleged in prior cases are the same as in the MDL cases: the plaintiffs are all different, the

2   independent drivers are all different, the time periods are different, the locations are all

3   different, the alleged misconduct is all different (ranging from inappropriate comments to

4   assault), the circumstances of the incidents are all different (some alleged incidents occurred

5   during the rides at issue while others occurred hours, days, or weeks after the rides), and the

6   alleged injuries are all different.  The MDL Plaintiffs' claims focus on the intentional and

7   potentially criminal misconduct of specific independent drivers.  What happened to each MDL

8   Plaintiff, and how each was impacted, varies from case to case, and from the prior cases.  Thus the

9   case-specific documents from prior cases regarding other alleged incidents of sexual assault and

10  behaviors of other independent drivers do not relate to what happened to the MDL Plaintiffs.

11      That is especially true because sexual assaults are highly individualized incidents that

12  can take many different forms and are caused by the intentional and often criminal behavior of

13  different independent drivers, under totally different conditions and circumstances.  The MDL

14  Plaintiffs' own co-lead counsel has stated that in "individual cases," "the details and severity

15  of the cases widely vary."[6]  Where, as here, the proximate cause of the MDL Plaintiffs' alleged

16  injuries is the intentional misconduct of specific independent drivers, case-specific documents

17  about different alleged injuries caused by different independent drivers, under entirely different

18  circumstances, are immaterial and unlikely to lead to the discovery of admissible evidence.

19      The prior cases also are likely to differ in terms of the claims and theories of liability raised

20  by the plaintiffs, as well as the merits of such claims.  These factors necessarily dictated the

21  appropriate scope of discovery, and what was ultimately produced by Uber, in the prior litigations

22  and should not be transposed onto this MDL to dictate the proper scope of discovery here.

23

24  **B.      Production of Plaintiff-Specific and Case-Specific Documents From Prior Cases Presents Serious Privacy and Confidentiality Concerns for Survivors**

25      Even if Plaintiffs were requesting relevant documents - - which they are not - - the Court

26  should still modify PTO No. 5 because production of the plaintiff-specific and case-specific

27  [6] *Uber faces mounting sexual assault, harassment lawsuits in San Francisco*, KRON4 (July 1, 2021, 10:24 AM), https://www.kron4.com/news/bay-area/uber-faces-mounting-sexual-assault-

28  harassment-lawsuits-in-san-francisco.

DEFENDANTS' MOTION TO MODIFY PRETRIAL ORDER NO. 5                                3:23-md-3084-CRB

1    documents from prior cases regarding sexual assault would infringe on the privacy and

2    confidentiality interests of the plaintiffs in those prior cases - - *i.e.*, individual victims and survivors

3    of alleged sexual assault - - who are not involved in this litigation and who, quite to the contrary,

4    chose to resolve their claims against Uber privately and confidentially.

5            The type of documents sought by the MDL Plaintiffs - - including reports and statements

6    regarding the sexual assaults of other individuals and the impact of those assaults on those other

7    individuals - - are by their very nature extremely sensitive and personal, often involving traumatic

8    and life-altering consequences, such that disclosure would invade their privacy and intrude on their

9    recovery.  *See Pioneer Elecs. (USA)* v. *Superior Ct.* 40 Cal. 4th 360, 372 (2007) (observing that

10   disclosure of "particularly sensitive" personal information such as one's personal medical history

11   or current medical condition constitutes a serious invasion of privacy).  The significance of this

12   privacy interest is demonstrated by the fact that many plaintiffs in sexual assault lawsuits,

13   including the MDL Plaintiffs, choose to file under pseudonyms to protect their identities and avoid

14   public scrutiny of such private matters.

15           The plaintiffs in these prior cases already decided *not* to share their stories in court.[7]  This

16   is part of the reason why there are protective orders, confidentiality agreements, and nondisclosure

17   agreements governing those cases, including the case-specific documents.  Absent these legally

18   binding protections, the plaintiffs might have decided against pursuing their legal claims - - or at

19   least not in a judicial forum - - and their case-specific documents might have never been produced.

20

21   [7] A survivor's right to choose if, when, and how to speak up about her experience is
     widely recognized.  *See, e.g.*, N.J. Dep't of L. & Pub. Safety, Div. of Crim. Just., *Attorney*
22   *General Standards for Providing Services to Victims of Sexual Assault* (3d ed. 2018)
     (setting standards for "respecting the integrity, choices, and autonomy of each victim" and
23   "protecting the victim's privacy and confidential information").  For example, numerous states
     recognize the right of a survivor to choose whether to report their assault to law enforcement.
24   *See, e.g.*, N.Y. Dep't of Health, *N.Y. State Sexual Assault Victim Bill of Rights*,
     https://www.health.ny.gov/publications/1934.pdf; N.J. Stat. § 52:4B-60.2(c)(3).
25
            These rights are imperative to a survivor's healing. To illustrate, in one study of sexual
26   assault, researchers found that "[a]ll of the participants expressed feelings of discomfort with the
     police" and "[m]any described that making a report to the police was challenging due to shame,
27   vulnerability, and exposure of a disclosure." Jodie Murphy-Oikenen et al., *Unfounded Sexual*
     *Assault: Women's Experiences of Not Being Believed by the Police*, J. Interpersonal Violence
28   (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9136376/.

- 7 -

DEFENDANTS' MOTION TO MODIFY PRETRIAL ORDER NO. 5                                     3:23-md-3084-CRB

1    When those plaintiffs brought their own cases and entered into corresponding protective

2    orders and agreements, they could not have anticipated the instant coordinated proceeding, the first

3    of its kind for sexual assault-related claims against Uber.  While the resurfacing of a plaintiff's

4    case in any forum could be anxiety-inducing, the scale of this consolidated litigation amplifies this

5    risk.  There are approximately 30 Plaintiffs' firms involved in this MDL to date, and the large

6    number of people involved could increase anxiety for a plaintiff about the number of people with

7    access to documents relevant to her personal experience, as well as a perceived risk of disclosure.[8]

8    This consolidated case is also undeniably higher profile than a single sexual assault case.  The

9    Plaintiffs who joined this MDL were able to weigh these considerations before deciding whether

10   and how to proceed with their claims.  The plaintiffs in prior litigations were not able to consider

11   these factors and have not been empowered to make these decisions for themselves.

12   Even if it were possible to redact all identifying information in the case-specific documents

13   - - which would be difficult and does not guarantee non-disclosure - - it would not change the fact

14   that survivors should have agency over their stories, which they did not necessarily want told in

15   court or, worse, *retold* in court by others.  Assuming that plaintiffs' identities can be shielded with

16   absolute certainty is a mistake when individual identities and information are so readily accessible

17   online and from other public sources.  And more importantly, it should be up to those individuals,

18   not the parties, to decide what (if any) protections sufficiently guarantee their privacy and security.

19   Recognizing these concerns, sexual violence advocacy organizations strongly recommend

20   a "survivor-centered" approach to incidents of sexual assault and misconduct and encourage

21   justice systems to incorporate this approach.  *See, e.g.*, Nat'l Sexual Violence Res. Ctr. et al.,

22   *Promoting Collaboration Between Victim Advocates and Sex Offender Management*

23   *Professionals: A Resource Package*, at 4 (2016) https://www.nsvrc.org/sites/default/files/ovw-

24   collaboration-v-2.pdf (advocating for practices that are "responsive to victims' rights, needs, and

25   interests and do not further traumatize or otherwise negatively impact survivors"); *id.* at 43 (noting

26   _____

[8] For this reason, the operative Protective Order in this MDL does not cure the privacy concerns
at issue.  The privacy rights of a non-party who elected to remain anonymous in a prior case or

27   otherwise desired to keep her personal information and story private are not protected when
documents specific to her prior case are disseminated to hundreds of individuals (including

28   Plaintiffs, lawyers and legal staff, and Court staff) in a lawsuit that has nothing to do with them.

DEFENDANTS' MOTION TO MODIFY PRETRIAL ORDER NO. 5                3:23-md-3084-CRB

1   the importance of "ensur[ing] victim input in critical decision-making at all phases of the

2   management process"). Production of plaintiff-specific and case-specific documents from prior

3   sexual assault cases is contrary to survivor-centric principles. All of the other cases at issue involve

4   plaintiffs who are not part of this MDL, and it should not be up to the parties here to decide whether

5   and how to share exquisitely personal details about a non-party's unique and traumatic experience

6   of sexual assault, especially when there is no compelling need for any unwelcome disclosures.

7          Finally, a survivor's expectation of privacy and confidentiality is of chief importance.

8   Without assurances, survivors may opt not to report instances of sexual assault for fear that taking

9   action could lead to unwanted disclosure of their stories, even years after they thought their cases

10  had been resolved. Sexual assaults are vastly underreported as is. *See, e.g.*, *Paramasamy* v.

11  *Ashcroft*, 295 F.3d 1047, 1053 & n.3 (9th Cir. 2002) (noting that sexual assault is underreported

12  and collecting sources); Cameron Kimble & Inimai M. Chettiar, *Sexual Assault Remains*

13  *Dramatically Underreported*, Brennan Ctr. for Just. (Oct. 4, 2018), https://www.brennancenter.

14  org/our-work/analysis-opinion/sexual-assault-remains-dramatically-underreported    (identifying

15  fear of retaliation from society, "revictimization, distortion of allegations, and generally not being

16  believed" as reasons why sexual assault is underreported). Any remote or conceivable benefit of

17  producing these case-specific documents is far outweighed by the potential that doing so could

18  chill a survivor's willingness to report what is already an underreported crime.

19          **C.      Plaintiff-Specific and Case-Specific Documents Are Not Needed**

20          Plaintiffs may contend that plaintiff-specific and case-specific documents from prior cases

21  are relevant to show ***notice*** to Uber of allegations of sexual assault. Uber disagrees that a prior

22  sexual assault committed by a different independent driver under different circumstances in a

23  different state and at a different point in time is sufficient to give Uber notice that any of the

24  independent drivers involved in the MDL Plaintiffs' cases would engage in sexual assault or

25  misconduct. But in any event, the MDL Plaintiffs do not need case-specific discovery from other

26  cases because they have numerous other avenues of discovery for exploring the alleged notice

27  issue. For one, the complaints in the prior lawsuits are publicly filed, and there are other documents

28  Uber has made publicly available. Then, there are the other documents Uber will produce in the

ordinary course of discovery in the MDL, plus interrogatories, requests for admission, stipulations, and depositions.  Third, data and statistics produced in Uber's U.S. Safety Reports include figures involving sexual assault and other incidents occurring in connection with Uber's platform.  There has been no showing made that all these sources will not suffice to make whatever arguments MDL Plaintiffs wish to make about notice.

**D.      Production of Plaintiff-Specific and Case-Specific Documents Could Seriously Prejudice Uber and Unnecessarily Delay Resolution of the MDL Plaintiffs' Cases**

Production of case-specific documents from prior litigations - - the vast majority of which have been resolved either by dismissal or settlement - - invites unwarranted and unnecessary scrutiny into closed matters that could significantly prejudice Uber.  Because none of these prior litigations were resolved through a trial or hearing, the merits of contested allegations were never tested, much less conclusively or legally determined.  To the extent the MDL Plaintiffs seek to use plaintiff-specific and case-specific discovery produced in prior cases, Uber will be unable to defend itself without effectively reopening and taking discovery in the previously-resolved cases.  In this way, introduction of these documents in the MDL creates an unnecessary risk that this litigation will devolve into mini-litigations concerning other alleged incidents or investigations into what Uber, the independent drivers, or the plaintiffs from those prior cases did or did not do in relation to other alleged offenses - - all of which is unrelated to the cases in the MDL.

It does not serve the purpose of the MDL to relitigate previously-resolved cases.  It is also not feasible - - or an efficient use of the justice system - - for the parties in this case to build the necessary record to make documents produced in other cases remotely informative.  Rather, the parties should focus attention on the Plaintiffs, independent drivers, and alleged incidents involved in the MDL cases.  Any focus on previously-resolved litigations would unnecessarily delay discovery into the incidents at issue and is not justifiable considering that the documents at issue are not relevant.  In the interests of judicial efficiency and resolution of the MDL cases, the parties should not litigate or relitigate cases that have already been resolved and are not before this Court.

**V.      CONCLUSION**

For the forgoing reasons, Uber respectfully requests that this Court grant the Motion.

1
2

DATED:  February 6, 2023

**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**

3
4

By:      /s/ *Randall S. Luskey*
         RANDALL S. LUSKEY
         ROBERT ATKINS

5
6
7

*Attorney for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -