IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>_____/<br><br>This Order Relates To:<br><br>ALL ACTIONS | MDL No. 3084 CRB<br><br>**PRETRIAL ORDER NO. 7: ORDER DENYING MOTION TO STAY PROCEEDINGS** |

Before the Court is Defendants' Motion to Stay Proceedings Pending Decision From the Court of Appeals for the Ninth Circuit on the Petition for a Writ of Mandamus (dkt. 173). On February 2, 2024, the Court held a hearing on the motion. For the reasons that follow, the motion is denied.

I.   **BACKGROUND**

On October 4, 2023, the United States Judicial Panel on Multidistrict Litigation ("JPML") created MDL No. 3084, centralizing 22 actions in this Court for coordinated pretrial proceedings. Transfer Order (dkt. 1). On November 10, a week after this Court held its initial case management conference, Defendants (collectively "Uber") filed a petition for a writ of mandamus in the Court of Appeals for the Ninth Circuit. See Petition (dkt. 83). Uber's petition argues that the JPML erred when it centralized the litigation against Uber in this Court. On December 14, the Court of Appeals ordered the Plaintiffs to answer Uber's petition within 14 days, allowing Uber five days to reply.[1]  The court also

---

[1] For clarity's sake, this Order refers to the plaintiffs in this litigation as "Plaintiffs" even

invited the JPML to address the petition.

On December 18, Plaintiffs filed a motion to extend their time to answer the petition, which the Court of Appeals granted. As of January 31, briefing on Uber's petition—which includes a supplemental order filed by the JPML on January 4—is complete. According to the Court of Appeals' initial order, the petition and the briefing will be referred to "the next available merits panel." Uber Technologies, Inc., et al. v. United States Judicial Panel on Multidistrict Litigation, No. 23-3445, ECF No. 10 (9th Cir. Dec. 14, 2023).

Meanwhile, proceedings in this MDL have continued apace. On December 6, the Court appointed Plaintiffs' Co-Lead Counsel and the Plaintiffs' Steering Committee, and it ordered the parties to meet and confer to prepare proposals concerning discovery, the filing of a master complaint, the briefing of initial motions, and other matters. See Pretrial Order No. 4 (dkt. 152). The parties timely filed various proposals on December 21. On December 22, Uber filed the present motion to stay MDL proceedings pending the Court of Appeals' decision on its petition for a writ of mandamus. Defs.' Mot. to Stay ("Mot.") (dkt. 173).

Beginning on December 28, the Court issued several orders based on the December 21 submissions of the parties, including an order setting a schedule for discovery and initial motions, a protective order, and an order concerning direct filing procedure. See Pretrial Order No. 5 (dkt. 175); Protective Order (dkt. 176); Pretrial Order No. 6 (dkt. 177).

On February 2, the Court heard argument on Uber's motion to stay. The motion to stay asks the Court to "stay all proceedings in this matter and vacate current deadlines for 60 days while the Court of Appeals for the Ninth Circuit adjudicates Uber's Petition for a Writ of Mandamus to the United States Judicial Panel on Multidistrict Litigation." Mot. at 3. As of February 9, 2024, there are a total of 220 actions pending in this MDL, 25 of

---

when discussing events at the Court of Appeals, where they are properly described as the Real Parties in Interest.

which were transferred here from other districts.[2] The remainder of the cases were directly filed in this district, some pursuant to Pretrial Order No. 6, which provided a set of procedures for "direct filing," but most prior to the entry of that order on January 2.

According to the schedule set by the Court, in the coming months (1) the parties and the Court will establish certain remaining discovery protocols, including a privileged materials order and an order governing ESI; (2) Uber will complete certain initial discovery productions and begin responding to Plaintiffs' initial requests for production; (3) the parties will brief, and the Court will decide, a motion concerning Uber's Terms of Use; (4) the Court will rule on the parties' proposed plaintiff fact-sheets and defense fact-sheets; (5) Plaintiffs will serve initial plaintiff-side discovery on Uber concerning ride-identifying information; (6) Uber will make Rule 26 disclosures; (7) Plaintiffs will file a master complaint; (8) the parties will propose a pretrial order to govern short-form complaints; and (9) Uber will file a motion or motions to dismiss the master complaint. See Pretrial Order No. 5.

## II.   LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).

Beyond this proposition, however, the parties disagree on the legal standard that should govern this motion. Uber advocates a test derived from Landis under which courts examine (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer [if the case is allowed] to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."

---

[2] Thirteen of the 22 actions subject to the initial transfer order originated in districts other than the Northern District of California, and 12 additional "tag-along" actions were transferred here by subsequent orders of the JPML. The remaining actions were either already pending in this district prior to the JPML's initial transfer order or were filed here after the creation of the MDL.

3

Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962)).  In essence, that test requires the Court to consider the balance of hardships that would result from the grant or denial of the stay and whether a stay will serve considerations of judicial economy.  See, e.g., Kuang v. U.S. Dep't of Def., No. 18-CV-03698-JST, 2019 WL 1597495 at *4–*6 (N.D. Cal. Apr. 15, 2019).  Plaintiffs use a test that resembles the preliminary injunction standard and requires courts to examine the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

As other courts have recognized, there is disagreement among Ninth Circuit district courts over the standard that applies to a motion to stay proceedings pending decision on a petition for a writ of mandamus.  See Kuang, 2019 WL 1597495 at *2 (citing United States ex rel. Atlas Copco Compressors LLC v. Rwt LLC, No. CV 16-00215 ACK-KJM, 2017 WL 2986586, at *11 n.11 (D. Haw. July 13, 2017); Finder v. Leprino Foods Co., No. 1:13-CV-02059-AWI-BAM, 2017 WL 1355104, at *2 (E.D. Cal. Jan. 20, 2017)).  Both parties are therefore able to cite cases that support their positions.  Some courts have applied the Nken test when considering whether to stay proceedings pending interlocutory appeals or mandamus petitions.  See, e.g., Mehedi v. View, Inc., No. 21-CV-06374-BLF, 2022 WL 1082010, at *2 (N.D. Cal. Apr. 11, 2022) (petition for a writ of mandamus); Powertech Tech. Inc. v. Tessera, Inc., No. C 11-6121-CW, 2013 WL 1164966, at *1 (N.D. Cal. March 20, 2013) (petition for a writ of mandamus); United States v. Acad. Mortg. Corp., No. 16-CV-02120-EMC, 2018 WL 4794231, at *1-2 (N.D. Cal. Oct. 3, 2018) (interlocutory appeal).  And others have applied the Landis test.  See, e.g., Kuang, 2019 WL 1597495 at *3 (interlocutory appeal); Doe 1 v. AOL LLC, 719 F. Supp. 2d 1102, 1106–07 (N.D. Cal. 2010) (petition for writ of mandamus).

4

1  However, nearly every court that has directly confronted the question of which standard to apply has concluded that Landis sets out the proper test when a party requests a stay of proceedings—as Uber does here—while the Nken test applies when a court considers whether to stay an order or judgment. See Flores v. Bennett, No. 1:22-CV-01003-JLT-HBK, 2023 WL 3751998, at *3 (E.D. Cal. June 1, 2023); Kuang, 2019 WL 1597495 at *3 (citing 23andMe, Inc. v. Ancestry.com DNA, LLC, No. 18-CV-02791-EMC, 2018 WL 5793473, at *3 (N.D. Cal. Nov. 2, 2018); Freeman Expositions, Inc. v. Glob. Experience Specialists, Inc., No. SA-CV-17-00364-CJCJDEX, 2017 WL 6940557, at *1 n.3 (C.D. Cal. June 27, 2017); Unitek Solvent Servs., Inc. v. Chrysler Grp. LLC, No. 12-00704 DKW-RLP, 2014 WL 12576648, at *1-2 (D. Haw. Jan. 14, 2014); Doe 1, 719 F. Supp. 2d at 1107 n.1; Asis Internet Servs. v. Active Response Grp., No. C07-6211-TEH, 2008 WL 4279695, at *4 n.1 (N.D. Cal. Sept. 16, 2008)). By contrast, the courts that have applied the Nken factors have tended to do so without analysis or consideration of the Landis factors.[3]

The reasoning of the Courts that have applied Landis is persuasive. Here, the question is whether proceeding with discovery and pretrial litigation is appropriate despite the possibility that another court's decision could alter the nature of these proceedings. See Kuang, 2019 WL 1597495 at *3 (citing Finder v. Leprino Foods Co., No. 113CV02059AWIBAM, 2017 WL 1355104, at *3 (E.D. Cal. Jan. 20, 2017)). By contrast, when the question is whether to stay an injunction or other order pending appeal, "the overarching question is not whether going forward with the litigation will be inefficient for the parties and the court, but rather if equity demands that the court 'preserve the pre-

---

[3] Several cases repeat the proposition that "[t]he factors considered in determining whether a stay pending a petition for writ of mandamus is warranted are the same as a stay pending appeal," and they go on to cite the Nken test. Mehedi, 2022 WL 1082010 at *2 (quoting Powertech Tech. 2013 WL 1164966, at *1). But none of these cases considers the Landis test. Further, the case from which this language is ultimately derived concerned a motion to stay an order pending a petition for a writ of mandamus, not a motion to stay proceedings. See Durand v. Stephenson, 2012 U.S. Dist. LEXIS 154968 at *2 (E.D. Cal. Oct. 29, 2012). That case is therefore ultimately consistent with the view expressed in Kuang and the decisions it cites.

5

1   judicial-relief status quo pending the appellate court's determination of the correctness of
2   that relief.'" Id. (quoting Finder, 2017 WL 1355104 at *3).  The Landis factors are suited
3   to the former situation, while the Nken factors, more closely resembling the traditional test
4   for a preliminary injunction, are suited to the latter.  Here, the Court will apply the test
5   derived from Landis and Lockyer, evaluating the balance of hardships and considerations
6   related to "the orderly course of justice."[4]  See Landis, 299 U.S. at 254.  Uber, as the
7   movant, bears the burden to show that a stay is appropriate.  See Clinton v. Jones, 520 U.S.
8   681, 708 (1997).

## III. DISCUSSION

### A. Harm to Plaintiffs

Under Landis, "'if there is even a fair possibility that the stay . . . will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" Manriquez v. DeVos, No. 17-CV-07210-SK, 2018 WL 5316174, at *2 (N.D. Cal. Aug. 30, 2018) (quoting Landis, 299 U.S. at 255) (alteration in original).

There is at least a "fair possibility" that Plaintiffs would be prejudiced by a stay of these proceedings.

First, as a practical matter, any stay would be of an indefinite duration. Uber's motion is styled as a motion for a stay "pending decision from the Court of Appeals for the Ninth Circuit on the petition for a writ of mandamus," although the motion itself asks for a stay of 60 days. Mot. at 3. These two ways of framing the stay are in tension. Given the purpose of the requested stay, little would be gained by staying proceedings for a fixed amount of time. Sixty days from now, the Court of Appeals will either have acted on the petition, or it will not have acted on the petition. If it has not, the parties will return with identical arguments for and against a further stay, and the Court can foresee no reason why it would decide the matter differently at that point in time. Nothing will have changed. If there is to be a stay, it will last until the Ninth Circuit's decision on Uber's petition.

---

[4] The Court would reach the same result if it applied the Nken/Hilton test.

6

        This being so, the amount of time the proceedings will be stayed is uncertain. Uber says several times that a decision on the petition is "imminent," although it is unclear how it can be certain of this. Sometimes the Court of Appeals acts relatively quickly on petitions for a writ of mandamus, but sometimes those decisions take several months to a year. Compare In re Toma, No. 23-70179, 2023 WL 8167206 (9th Cir. Nov. 24, 2023) (56 days between filing of petition for a writ of mandamus and the Ninth Circuit's decision on the petition), with In re Kirkland, 75 F.4th 1030 (9th Cir. 2023) (petition for mandamus filed on May 17, 2022; Ninth Circuit opinion issued on July 27, 2023), In re Walsh, 15 F.4th 1005 (9th Cir. 2021) (petition filed March 22, 2021, opinion issued October 19, 2021), In re Mersho, 6 F.4th 891 (9th Cir. 2021) (petition filed Dec. 30, 2020, opinion issued July 31, 2021).

        Briefing on Uber's petition has just been completed, and it will be referred to a merits panel, which will decide whether to set the matter for argument. See Ninth Cir. R. 21-1–21-4, advisory committee note. The initial briefing schedule set by the Ninth Circuit indicated an intent to move the petition along quickly, but Uber's petition seeks relief that has rarely if ever been sought—and apparently has never been granted—so the issues are novel. Furthermore, "the issues presented and the course of this litigation thus far suggest a reasonable probability that even once the Ninth Circuit issues a decision, 'one or more parties may file a petition for rehearing en banc, a petition for certiorari at the Supreme Court, or both.'" Kuang, 2019 WL 1597495 at *4 (quoting Bernstein v. Virgin Am., Inc., No. 15-CV-02277-JST, 2018 WL 3349183, at *3 (N.D. Cal. July 9, 2018)); see also Flores v. Bennett, No. 1:22-CV-01003-JLT-HBK, 2023 WL 3751998, at *7 (E.D. Cal. June 1, 2023). In other words, the amount of time until the final disposition of Uber's petition is uncertain: perhaps it will take 60 days, perhaps substantially longer. See, e.g., Lathrop v. Uber Techs., No. 14-cv-05678-JST, 2016 WL 97511, at *4-*5 (N.D. Cal. Jan. 8, 2016) ("[W]hile the briefing schedule is set in the case, oral argument has not yet been scheduled and neither the parties [ ] nor the Court can forecast when the D.C. Circuit will ultimately issue a decision."). The possibility of a "long, open-ended timeline counsels against a

7

stay." Bernstein, 2018 WL 3349183 at *3; see also Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 864 (9th Cir. 1979) ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.").

Second, Plaintiffs contend that the delay from granting a stay would hinder their ability to steer the litigation against Uber. They note that a stay would very likely set the MDL's schedule behind that of the parallel, coordinated California state court proceedings (the "JCCP Action"). As of now, the two coordinated actions will soon be running roughly in parallel, at least with respect to discovery. But if the federal coordinated litigation falls too far behind the California coordinated litigation, Plaintiffs will have to cede control over the course of discovery to the different plaintiffs' counsel leading the JCCP Action. This could prejudice the MDL plaintiffs, who may find themselves bound by decisions about discovery made in the state court. Uber may argue, for example, that Plaintiffs are not entitled to re-depose Uber witnesses who have already been deposed by JCCP plaintiffs' counsel in connection with essentially the same claims.

Third, Plaintiffs argue that because the claims at issue concern incidents of alleged sexual assault, many plaintiffs made difficult decisions to bring the claims in the first place, and thus that the plaintiffs have an especially strong interest in the speedy resolution of those claims.

Finally, Plaintiffs note that relevant evidence is at risk of fading with time. This includes not only the plaintiffs' memories of the alleged incidents, but also the memories of Uber employees with knowledge of relevant Uber policymaking. See, e.g., Juarez v. Jani-King of California, Inc., No. 09-CV-03495-YGR, 2019 WL 13222317, at *1 (N.D. Cal. Sept. 13, 2019) (The harm to plaintiffs is obvious. This case is over ten years old. Memories have and are fading. Evidence is becoming more and more stale. Delay only serves the defendants."); Bernstein v. Virgin Am., Inc., No. 15-CV-02277-JST, 2018 WL 3349183, at *4 (N.D. Cal. July 9, 2018) (finding potential harm from a proposed stay where "the passage of time will make it more difficult to reach class members and will

8

increase the likelihood that relevant evidence will dissipate"); True Health Chiropractic Inc. v. McKesson Corp., No. 13-CV-02219-JST, 2014 WL 12705057, at *4 (N.D. Cal. Oct. 22, 2014) (denying motion to stay and finding "significant potential for harm to the Plaintiffs" because "[s]ome evidence, such as the memory of percipient witnesses, will diminish or weaken during the pendency of a stay [and] [o]ther evidence could be lost or damaged").

Taken together, these considerations amount to a "fair possibility" that staying this litigation could "work damage" to Plaintiffs.  See Landis, 299 U.S. at 255.

### B. Harm to Uber and the "Orderly Course of Justice"

Uber's arguments about the harms it would face if the litigation were not stayed are closely related to its arguments about the third Landis factor: whether a stay would serve "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Lockyer, 398 F.3d at 1110.  The Court therefore discusses the potential harm to Uber in the absence of a stay and the "orderly course of justice" together.  "'[C]onsiderations of judicial economy are highly relevant' to [the] evaluation" of this third factor.  Kuang, 2019 WL 1597495 at *5 (quoting Gustavson v. Mars, Inc., No. 13-CV-04537-LHK, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014)).

Uber's basic position is that the resources it expends litigating in this Court will be wasted if it receives a favorable decision from the Court of Appeals.  For the same reasons, Uber says that this Court's resources will be preserved by a stay, since it may turn out that many or most of the actions in the MDL must be transferred back to the other federal district courts where they originated.  Uber analogizes its request for a stay to the stay motions that some individual plaintiffs filed while the JPML was considering whether to centralize these actions.

Most of the work the parties and the Court will undertake in the coming months will relate to discovery and to initial motions practice.  With respect to discovery—the focus of Uber's argument at the hearing—Uber says that what it will have to produce in the MDL is

9

larger in scope and more resource-intensive than what it would have to produce if it defended each of the member cases individually. If the cases proceeded individually, Uber says, it could have some cases dismissed prior to discovery, and in other cases, the parties could more easily tailor discovery to the specific allegations in each case. Either way, the notion is that the discovery taken in this MDL would ultimately be unnecessary, and thus amount to wasted effort, if it turns out that the cases must be litigated on an individual basis.

But Uber overstates the degree to which the effort expended here would be wasted if the Court of Appeals granted its petition. This is not a situation where an appellate decision could render discovery unnecessary altogether, nor would it "simplify[ ] or complicat[e]" the substantive issues in dispute. Lockyer, 398 F.3d at 1110. The sole question raised in Uber's petition is whether the JPML correctly determined that cases seeking to hold Uber liable for sexual assault and sexual harassment by its drivers should proceed on a centralized basis under 28 U.S.C. § 1407. This is an important question, but it is not a question that should significantly affect the scope of information that is discoverable from Uber. If Uber succeeds in having the JPML's transfer order reversed, there will still at least 220 distinct actions pending against Uber asserting the same legal theories against it.[5] And the discovery to which Plaintiffs are entitled in the MDL is arguably no greater than the discovery to which they would be entitled in each of the individual actions taken together.

It is certainly possible, as Uber says, that not all the cases would proceed to discovery if they proceeded individually. It is also possible that only more limited discovery would be necessary in some of them. But it does not follow that <u>none</u> of the actions would proceed to discovery or that the scope of discovery in <u>all</u> actions collectively would be significantly narrower than that to which Plaintiffs are entitled here. For

---

[5] Plaintiffs note that "being required to defend a suit, without more," does not suffice to make out a showing of hardship under Landis. See Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005). This is true, but the more important point is that Uber will be required to defend the same suits no matter what the Court of Appeals decides.

10

1  example, Uber suggests that discovery in individual actions will be temporally limited
2  because "there's no reason to go back to 2009" if a given incident took place years later.
3  Hearing Tr. at 28:4–6 (dkt. 244). Similarly, it says, documents that post-date a given
4  plaintiff's incident would not be relevant to her claims. See id. at 29:1–5. This may or
5  may not be true. In any given case, records from before the alleged incident may be
6  relevant to issues like notice, and records from after the alleged incident may be relevant to
7  issues like Uber's knowledge or the feasibility of certain safety features. At any rate, the
8  more fundamental point is that these arguments are premature, for they depend on a
9  particular view of the merits of plaintiffs' claims. Uber vigorously opposes the idea that
10 there is a pattern of assaults or harassment by Uber drivers, that Uber could have done
11 more to prevent such conduct, and that Uber could be liable for it. But that is what
12 Plaintiffs allege. Testing those allegations is what this litigation will have to do, whether it
13 proceeds on a centralized basis or in district courts around the country.
14      It is therefore difficult to see how most of the parties' efforts in the coming months
15 are at risk of being wasted. Even if, after a decentralization, Uber were able to narrow the
16 claims in some cases and have others dismissed, a substantial portion of what was
17 discoverable here would be relevant in at least some of the individual cases. Uber does not
18 suggest, and indeed it is not plausible, that it might be able to avoid discovery in all or
19 even most of these actions.[6] In the event of a decentralization, there would certainly be no
20 need to duplicate efforts by having Uber reproduce the same information in individual
21 cases—the parties could take what was produced here and use it in the individual litigation
22 where appropriate. The same goes for the plaintiff-side discovery that Uber has sought.
23 This includes the ride-identifying information Plaintiffs have been ordered to produce by
24 February 15, as well as any information that will be found in the plaintiff fact sheets. In
25 short, even if Uber's petition were granted, the risk of unnecessary or duplicative effort in

---

[6] To the extent that the JCCP Action offers a preview of the cases governed by California law, the parties there are currently taking discovery on all the plaintiffs' core negligence-based claims.

11

discovery is relatively low.  See, e.g., Matlow v. Fandom, Inc., No. CV 22-1212-FWS-SK, 2022 WL 17184982 (C.D. Cal. July 7, 2022) (denying stay of proceedings where record showed that discovery would be necessary regardless of outcome of pending appeal); Glick v. Performant Fin. Corp., No. 16-cv-05461-JST, 2017 WL 786293, at *2 (N.D. Cal. Feb. 27, 2017) ("Defendant will still be required to produce discovery to settle the factual disputes regarding its autodialing technology no matter the results from the appeals or the Petition."); Cabiness v. Educ. Fin. Sols., LLC, No. 16-cv-01109-JST, 2017 WL 167678, at *3 (N.D. Cal. Jan. 17, 2017).

Of course, Uber will be free to argue before this Court that MDL Plaintiffs are seeking overly broad discovery, just as it could in any individual case.  Uber can object to Plaintiffs' discovery demands and, if necessary, bring disputes before the Court for resolution.  Uber has in fact already begun doing so, and Magistrate Judge Cisneros will be hearing two disputes in the coming weeks.  Additionally, a substantial portion of the discovery Uber will produce in the MDL will overlap with the discovery it produces in the California JCCP Action.  That adds to the likelihood that many of the resources Uber expends on discovery here would be expended even if the actions proceeded individually.  Indeed, some potential efficiencies made possible by cooperation between the JCCP and MDL counsel would be lost if this litigation were stayed and the JCCP counsel forged further ahead of the federal litigation in discovery.  That is the flipside of Plaintiffs' argument about the harms they would face if MDL discovery lags behind JCCP discovery.

Nor would the grant of Uber's petition be the end of Uber's litigation before this Court.  The reason is that only 25 of the 220 cases that currently comprise this MDL were transferred here from other districts by the JPML.  The remainder—a large majority—were directly filed in this district, at least 62 of which were filed before the JPML issued its initial transfer order.  Transfer Order at 3 (dkt. 1).[7]  To be sure, Uber's view is that many

---

[7] The JPML's initial transfer order applied to 22 actions, 13 of which were originally filed in other districts.  See Transfer Order.  Since then, the JPML has transferred 12 "tag-along" actions to the MDL.

of those cases should be transferred away from this district under 28 U.S.C. § 1404(a). Such transfers may or may not be warranted; the Court expresses no view on the question at this juncture. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (setting forth multifactor test governing transfer under 28 U.S.C. § 1404(a)). But it is not disputed that this Court is the proper forum for at least nine actions.[8] If this Court did not grant motions to transfer in some or all of the other cases, that number could be substantially higher. This Court would presumably continue to preside over those cases and any others that remained in this district.[9]

That being so, much of the other work to be done by the parties would not be obviated by a grant of Uber's petition. In the cases that remained before this Court, the parties would require an order governing the production of ESI and an order governing privileged materials. The parties would still need to exchange Rule 26 disclosures. Uber would likely still want to file a motion to dismiss at least under California law, and the Court would rule on it. In just the nine cases involving assaults that allegedly took place in California, the incidents span more than 6 years, from May 2017 to July 2023.

To be sure, there are some matters that may not be necessary if Uber's petition is granted. Any motions to dismiss that Uber files under the laws of states other than California, for example, would be unnecessary if this Court transferred the remaining non-California actions to other Courts. But Uber's motions to dismiss will not be fully briefed until June, and if the Court of Appeals granted Uber's petition before then, Uber could

---

[8] The main reason Uber contends that most of the actions should be transferred is that the underlying incidents allegedly occurred in states other than California. At the February 2 hearing, Uber agreed that nine of the actions involved underlying assaults that allegedly took place in this state. Hearing Tr. at 39:19; see Doe LSA 340 v. Uber Techs, Inc., No. 3:23-cv-06705-CRB; H. D. v. Uber Techs, Inc., No. 3:23-cv-04617-CRB; M. F. A. v. Uber Techs., Inc., No. 3:23-cv-05560-CRB; T. R. v. Uber Techs., Inc., No. 3:23-cv-05625-CRB; Hunter v. Uber Techs., Inc., No. 3:23-cv-05622-CRB; D. H. v. Uber Techs., Inc., No. 3:23-cv-06693-CRB; J. B. v. Uber Techs., Inc., No. 3:23-cv-06692-CRB; K. L. v. Uber Techs., Inc., No. 3:23-cv-06701-CRB; T. M. v. Uber Techs., Inc., No. 3:23-cv-06705-CRB.

[9] Cases filed in the Northern District of California that were originally assigned to other judges have been reassigned to the undersigned pursuant to Northern District of California Local Rule 3-12—not by any action of the Judicial Panel on Multidistrict Litigation. See, e.g., Order Relating Cases (dkt. 8).

13

1  likely use the same briefing in individual actions upon remand.[10]  Uber's Terms of Use
2  Motion, which concerns only the Plaintiffs' ability to proceed on a coordinated basis,
3  would be unnecessary if its petition were granted.  But if the parties would prefer to delay
4  adjudication of this motion, they may move for, or stipulate to, a change of deadlines—the
5  issue does not warrant a stay of the entire proceedings.

Uber has failed to show that, in the absence of a stay, it would face the "clear case of hardship or inequity" that <u>Landis</u> requires, given Plaintiffs' showing of a "fair possibility" of harm.  <u>Lockyer</u>, 398 F.3d at 1112 ("<u>Landis</u> cautions that 'if there is even a fair possibility that the stay . . . will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'") (quoting <u>Landis</u>, 99 U.S. at 255).  Nor has Uber persuaded the Court that a stay would be likely to serve the "orderly course of justice."  While Uber talks of the potential unnecessary expenditure of resources, much of the work the parties and the Court will do in the coming months could be used in individual actions—and in the collection of actions that will remain in this Court—even if Uber's petition were granted.[11]  A stay is unwarranted.

## IV. CONCLUSION

For the foregoing reasons, Uber's motion to stay is denied.

---

[10] The Court adopted Uber's proposal regarding the briefing of initial motions, under which Uber will file an initial round of separate Rule 12 motions under the laws of states of its choosing, rather than filing a single motion directed at the entire Master Complaint.
[11] While Uber's "likelihood of success on the merits is not an independent factor under <u>Landis</u>, and therefore does not carry the same weight in this context," <u>Kuang</u>, 2019 WL 1597495 at *6, the risk that Uber will suffer any of its asserted harms is proportional to the likelihood of its success.  In this respect, the Court notes that "[t]he writ of mandamus is a drastic and extraordinary remedy reserved only for really extraordinary causes."  <u>In re Swift Transportation Co. Inc.</u>, 830 F.3d 913, 915 (9th Cir. 2016).  And in nearly 60 years of MDL practice that has included over 3000 instances of multidistrict litigation, no court has granted the relief that Uber seeks in its petition.  Meanwhile, the JPML's supplemental order issued in response to the petition sets forth a highly persuasive defense of the initial transfer order.

14

1    **IT IS SO ORDERED.**

2    Dated: February 9, 2024



CHARLES R. BREYER
United States District Judge

15