1  RANDALL S. LUSKEY (SBN: 240915)
       rluskey@paulweiss.com
2  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
3  535 Mission Street, 24th Floor
   San Francisco, CA 94105
4  Telephone: (628) 432-5100
   Facsimile:  (628) 232-3101
5
   ROBERT ATKINS (*Pro Hac Vice* admitted)
6       ratkins@paulweiss.com
   CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
7       cgrusauskas@paulweiss.com
   ANDREA M. KELLER (*Pro Hac Vice* admitted)
8       akeller@paulweiss.com
   **PAUL, WEISS, RIFKIND, WHARTON**
9       **& GARRISON LLP**
   1285 Avenue of the Americas
10 New York, NY 10019
   Telephone: (212) 373-3000
11 Facsimile:  (212) 757-3990

12 *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.,
13 RASIER, LLC, and RASIER-CA, LLC

14 *[Additional Counsel Listed on Following Page]*

15
16                    **UNITED STATES DISTRICT COURT**

17                   **NORTHERN DISTRICT OF CALIFORNIA**

18                       **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 19  IN RE: UBER TECHNOLOGIES, | Case No. 3:23-md-03084-CRB |
| 20  INC., PASSENGER SEXUAL | |
|     ASSAULT LITIGATION | **DEFENDANTS UBER TECHNOLOGIES,** |
| 21  | **INC., RASIER, LLC, AND RASIER-CA, LLC'S** |
|     | **MOTION REGARDING UBER'S TERMS** |
| 22  This Document Relates to: | **OF USE BAR ON PARTICIPATION IN** |
|     | **COORDINATED OR CONSOLIDATED** |
| 23  ALL ACTIONS | **PROCEEDINGS** |
| 24  | |
|     | Judge:      Honorable Charles R. Breyer |
| 25  | Date:        TBD |
|     | Time:        TBD |
| 26  | Courtroom:  6 – 17th Floor |

27
28

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

- ii -

1

## <u>TABLE OF CONTENTS</u>

2

STATEMENT OF THE ISSUES ................................................................................................ 1

3

STATEMENT OF THE FACTS ................................................................................................. 2

4

I.     An Enforceable Contract Exists Between Uber and Plaintiffs Regarding Forum
Selection and the Prohibition of Coordinated or Consolidated Actions ........................... 2

5

6

II.     The Non Consolidation Clause:  Plaintiffs Agreed to Bring Actions, and Litigate
Actions, "On an Individual Basis Only" and, Specifically, Not to Bring or Participate
in Any "Coordinated" or "Consolidated" Action .............................................................. 3

7

8

III.     The Forum Selection Clause:  Plaintiffs Agreed to Litigate Claims Against Uber Only
In the States Where the Alleged Incidents Occurred ......................................................... 4

9

ARGUMENT ............................................................................................................................... 4

10

I.     Plaintiffs Are Bound by the Terms of Use ....................................................................... 4

11

II.     The Non Consolidation Clause:  Plaintiffs Are Precluded From Bringing or
Participating in a MDL ...................................................................................................... 5

12

13

III.     The Forum Selection Clause:  Plaintiffs Agreed To Litigate Exclusively in the Forum
Where the Alleged Incidents Took Place ........................................................................... 8

14

      A.     Uber's Forum Selection Clause Is Valid and Enforceable and Plaintiffs
Cannot Make Any Credible Argument to the Contrary ....................................... 10

15

16

      B.     The Forum Selection Clause Mandates Transfer to the Forum Where the
Alleged Incidents Occurred .................................................................................. 11

17

             1.     Local Interests, and the Burden on the Courts and the Jury, Favor
Transfer ..................................................................................................... 12

18

19

             2.     Litigation Costs and Avoiding Unnecessary Expenses and Duplicative
Litigation Favor Transfer ......................................................................... 14

20

      C.     Plaintiffs' Cases Could Have Been Brought in the States in Which the Alleged
Incidents Occurred ................................................................................................ 15

21

CONCLUSION .......................................................................................................................... 15

22

23

24

25

26

27

28

DEFENDANTS' MOTION REGARDING
UBER'S TERMS OF USE                                  Case No. 3:23-md-03084-CRB

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Allred* v. *Innova Emergency Med. Assocs., P.C.*,
5
2018 WL 4772339 (N.D. Cal. Oct. 1, 2018)................................................................. 9, 10, 12

*Archer* v. *Carnival Corp. & PLC*,
6
2020 WL 6260003 (C.D. Cal. Oct. 20, 2020) ...................................................................... 7

7

*Argueta* v. *Banco Mexicano, S.A.*,
8
87 F.3d 320 (9th Cir. 1996)................................................................................................ 11

9

*Atl. Marine Const. Co.* v. *U.S. Dist. Ct. for the W. Dist. of Tex.*,
571 U.S. 49 (2013)............................................................................................................. 12
10

*Bastami* v. *Semiconductor Components Indus., LLC*,
11
2017 WL 1354148 (N.D. Cal. Apr. 13, 2017) ................................................................... 11

12

*Bell* v. *Uber Techs., Inc.*,
13
2023 Cal. Super. LEXIS 90782 (Super. Ct., L.A. Cty., Nov. 28, 2023)............................... 7

14

*Benedict* v. *Hewlett-Packard Co.*,
2016 WL 1213985 (N.D. Cal. Mar. 29, 2016) ..................................................................... 7
15

*Brooks* v. *Yang*,
16
190 N.Y.S.3d 309 (1st Dept. 2023).......................................................................................... 5

17

*Capriole* v. *Uber Techs., Inc.*,
18
460 F. Supp. 3d 919 (N.D. Cal. 2020), *aff'd*, 7 F. 4th 854 (9th Cir. 2021) ............................. 7

19

*Chavez* v. *Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010)............................................................................................ 8
20

*Cooney* v. *Osgood Machinery, Inc.*,
21
81 N.Y.2d 66 (1993) .............................................................................................................. 13

22

*Cordoba* v. *Uber Techs., Inc.*,
23
2023 Cal. Super. LEXIS 35824 (Super. Ct., L.A. Cty., May 30, 2023) ................................. 5

24

*Currie* v. *Uber Techs., Inc.*,
2023 Cal. Super. LEXIS 55782 (Super. Ct., L.A. Cty., Feb. 7, 2023)..................................... 5
25

*Dawson* v. *Medtronic, Inc.*,
26
2013 WL 3322040 (C.D. Cal. 2013)....................................................................................... 13

27

*Docksider, Ltd.* v. *Sea Technology, Ltd.*,
28
875 F.2d 762 (9th Cir.1989)............................................................................................ 10, 11

*Fein* v. *Public Serv. Coordinated Transp.*,
   165 F. Supp. 370 (E.D. Pa. 1958) ................................................................. 15

*First Intercontinental Bank* v. *Ahn*,
   798 F.3d 1149 (9th Cir. 2015) ........................................................................ 7

*Flores-Mendez* v. *Zoosk, Inc.*,
   2022 WL 2967237 (N.D. Cal. July 27, 2022) .................................................. 5

*Jane Doe* v. *Uber Techs., Inc.*,
   CGC-17-556481 (Cal. Super. Ct. Aug. 11, 2017) .......................................... 10

*Jane Doe* v. *Uber Techs., Inc.*,
   CGC-19-579901 (Cal. Super. Ct. Mar. 24, 2020) .......................................... 10

*Gilmore-Webster* v. *Bayou City Homebuyers Inc.*,
   2019 WL 1100492 (N.D. Cal. Mar. 8, 2019) .................................................. 13

*Gorne & Walker* v. *Uber Techs, Inc.*,
   CGC-19-575852 (Cal. Super. Ct. July 1, 2019) ....................................... 10, 13

*Hamilton* v. *Uber Techs. Inc.*,
   2023 WL 5769500 (S.D.N.Y. Sept. 7, 2023) ........................................... 2, 5, 7

*Hyundai Space & Aircraft Co.* v. *Boeing Co.*,
   1999 WL 910131 (N.D. Cal. Oct. 12, 1999) .................................................. 12

*Ingalls* v. *Spotify USA, Inc.*,
   2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ................................................ 7

*Italian Colors Rest.* v. *Am. Express Co.*,
   2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ............................................. 14

*Jane Doe* v. *Uber Techs., Inc.*,
   2017 WL 2352032 (N.D. Cal. May 31, 2017) .......................................... 10, 14

*Lee* v. *Fisher*,
   2021 WL 1659842 (N.D. Cal. April 27, 2021) ............................................... 10

*Lee* v. *Fisher*,
   70 F. 4th 1129 (9th Cir. 2023) .................................................................. 9, 10

*Lexecon* v. *Millberg Weiss Barshad Hynes & Lerach*,
   523 U.S. 26 (1998) ........................................................................................... 2

*Metz* v. *U.S. Life Ins. Co. in City of New York*,
   674 F. Supp. 2d 1141 (C.D. Cal. 2009) ........................................................ 15

*Nextrade, Inc.* v. *Hyosung (Am.), Inc.*,
   122 F. App'x 892 (9th Cir. 2005) .................................................................... 5

- v -

*Nix* v. *Major League Baseball*,
   62 F.4th 920 (5th Cir. 2023) ............................................................... 13

*Park* v. *Dole Fresh Vegetables, Inc.*,
   964 F. Supp. 2d 1088 (N.D. Cal. 2013) .......................................... 14, 15

*Perdue* v. *Hy-Vee, Inc.*,
   455 F. Supp. 3d 749 (C.D. Ill. 2020) .................................................. 13

*Ponomarenko* v. *Shapiro*,
   287 F. Supp. 3d 816 (N.D. Cal. 2018) ................................................ 11

*Roberts* v. *Uber Techs.*, *Inc.*,
   No. 5:23-cv-00545 (W.D. Tex. Aug. 8, 2023) (ECF No. 11) ............. 2, 5, 7

*Rycz* v. *Superior Ct. of San Francisco Cnty.*,
   81 Cal. App. 5th 824 (2022) ......................................................... 10, 12

*Stewart Org., Inc.* v. *Ricoh Corp.*,
   487 U.S. 22 (1988) ............................................................................ 9

*Torres* v. *De Nardo et al.*,
   2022 Cal. Super. LEXIS 87342 (Super. Ct., L.A. Cty., Dec. 20, 2022) ................ 5

*Turner* v. *Uber Techs., Inc.*,
   2023 Cal. Super. LEXIS 62376 (Super. Ct., L.A. Cty., Aug. 24, 2023)............... 3, 5

*In re Uber Passenger Sexual Assault Litigation*,
   MDL No. 3084 (July 14, 2023) (ECF No. 1) ...................................... 6

*In re Uber Rideshare Cases*,
   No. CJC-21-005188 (Jan. 23, 2023) ......................................... 10, 12, 14

*Universal Operations Risk Mgmt., LLC* v. *Glob. Rescue LLC*,
   2012 WL 2792444 (N.D. Cal. July 9, 2012)..................................... 7, 11

*Van Mourik* v. *Big Heart Pet Brands, Inc.*,
   2018 WL 3549122 (N.D. Cal. July 24, 2018)..................................... 13

*Williams* v. *Uber Techs., Inc.*,
   No. 4:22-cv-3398 (S.D. Tex., Jan. 5, 2024) (ECF No. 56) ................. 3, 5

*Williams* v. *Ysabel*,
   2023 WL 5768422 (N.J. Super. Ct. App. Div. Sept. 7, 2023) ............. 3, 5

*Wu* v. *Uber Techs., Inc.*,
   186 N.Y.S.3d 500 (N.Y. Sup. Ct. 2022), *aff'd*, 197 N.Y.S.3d 1 (1st Dept. 2023)................. 5

*Zut* v. *Harrah's Entertainment, Inc.*,
   2013 WL 5442282 (N.D. Cal. Sept. 30, 2013) .................................... 13

DEFENDANTS' MOTION REGARDING
UBER'S TERMS OF USE                     Case No. 3:23-md-03084-CRB

1

**Statutes**

2    28 U.S.C. § 1391(b)(2)............................................................................................. 15

3    28 U.S.C. § 1404(a) ....................................................................................... 2, 9, 10, 15

4    28 U.S.C. § 1407 .................................................................................................... 1, 6

5    Ariz. Rev. Stat. Ann. §§ 28-9551 *et seq.* ...................................................................... 13

6    Ariz. Rev. Stat. Ann. § 28-9552 ...................................................................................... 13

7    Ariz. Rev. Stat. Ann. § 28-9555 ...................................................................................... 13

8    Ariz. Rev. Stat. Ann. § 28-9556 ...................................................................................... 13

9
     Ending Forced Arbitration in Sexual Assault and Sexual Harassment Act .................................... 6
10
     Federal Arbitration Act ............................................................................................... 6, 7
11
12   N.Y. Veh. & Traf. Law §§ 1691 *et seq.* ...................................................................... 13

13   N.Y. Veh. & Traf. Law § 1692 ...................................................................................... 13

14   N.Y. Veh. & Traf. Law § 1696 ...................................................................................... 13

15   N.Y. Veh. & Traf. Law § 1699 ...................................................................................... 13

16   **Other Authorities**

17   AIRBNB TERMS OF SERVICE, https://www.airbnb.com/help/article/2908#22 .................................. 6

18   David Horton, *The Limits of Ending Forced Arbitration of Sexual Assault and
     Sexual Harassment Act*, 132 Yale L.J. Forum 1, 2 (2022)........................................................ 6
19
20   Restatement (Second) of Conflict of Laws § 187 (1971) ......................................................... 7

21   SQUARE GENERAL TERMS OF SERVICE, https://squareup.com/us/en/legal/general/ua.................... 6

22   TBS TERMS OF USE, https://www.tbs.com/terms ................................................................ 5

23   VRBO TERMS AND CONDITIONS, https://www.vrbo.com/lp/b/terms-of-service ........................... 6

24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF THE ISSUES

On December 28, 2023, in Pretrial Order No. 5, the Court ordered that Uber file, by February 9, 2024, "any pretrial motion raising arguments about its Terms of Use Agreement(s) and their effect on Plaintiffs' ability to bring their claims in a coordinated or consolidated proceeding (the 'Terms of Use Motion')." ECF No. 175 at 5. This Terms of Use Motion (the "Motion") is limited for the time being to 29 of the Plaintiffs in this Multidistrict Litigation ("MDL") ("MDL Plaintiffs"), who submitted sufficient information to allow Uber to demonstrate their assent to Uber's Terms of Use dated January 18, 2021 (and/or a subsequent updated version).[1] The 29 MDL Plaintiffs who are the subject of this Motion are referred to as "Plaintiffs."[2]

Uber brings this Terms of Use Motion based on two clauses contained in Uber's Terms of Use. In particular, Plaintiffs agreed to versions of the Terms of Use that contain:

> (1) a clause precluding Plaintiffs from bringing or participating in any coordinated or consolidated proceeding - - *e.g.*, this MDL proceeding - - and mandating they proceed on an individual basis only (the "Non Consolidation Clause"); and

> (2) a forum selection clause establishing that Plaintiffs' actions must be litigated in the state in which the incident occurred (the "Forum Selection Clause") - - *i.e.* in states other than the Northern District of California.[3]

---

[1] Given the deadline for the MDL Plaintiffs to provide information sufficient to identify the alleged trips at issue in their cases is not until February 15, ECF No. 175 at 2, the only MDL Plaintiffs who have provided this information to date are those who did so in JCCP No. 5188 (the "JCCP") - - where fact sheets and ride receipt information were submitted - - and then filed federal actions. Declaration of Peter Sauerwein in Support of Uber's Motion Regarding Uber's Terms of Use ("Sauerwein Decl.") ¶ 4.

[2] The case captions associated with these 29 Plaintiffs are listed in Exhibit A to the Sauerwein Declaration. Respectfully, Uber reserves its right to move as to additional MDL Plaintiffs, or to supplement this Motion, if and when other MDL Plaintiffs provide information sufficient to identify the trip in connection with which their alleged incident occurred.

[3] All 29 cases subject to this Motion involve alleged incidents that took place in states other than California, across 15 other jurisdictions. Sauerwein Decl. Ex. A. Considering the MDL more broadly, based on the allegations in the complaints, of the 229 cases currently pending in this MDL, at least 214 - - or roughly 93% - - involve incidents alleged to have occurred outside California, across at least 40 other jurisdictions. Only 23 of those 214 out-of-state incidents were filed in the state where the alleged incident occurred. Uber does not waive any of its rights, under 28 U.S.C.

- 1 -

Plaintiffs' participation in this MDL, which is located in the Northern District of California, is in violation of both of these provisions.

The Court should enforce Plaintiffs' contractual agreements with Uber, and pursuant to the Non Consolidation Clause and the Forum Selection Clause, and 28 U.S.C. § 1404(a), the Court should order that Plaintiffs' actions either be dismissed, or transferred to the states in which their alleged incidents occurred, so that they may proceed on an individual basis in the appropriate forums.

**STATEMENT OF THE FACTS**

I.     <u>An Enforceable Contract Exists Between Uber and Plaintiffs Regarding Forum Selection and the Prohibition of Coordinated or Consolidated Actions</u>

There can be no doubt, Plaintiffs entered into a contract with Uber and are subject to its Terms of Use. With respect to contract formation, and as applicable to the 29 Plaintiffs here, when a user registers for an Uber account, the user must agree to the Terms of Use then in effect before the user is able to utilize the Uber App. Sauerwein Decl. ¶ 6. The Terms of Use establish a "contractual relationship" between Uber and the user. Sauerwein Decl. Ex. E § 1.[4] Uber periodically updates its Terms of Use and users are required to agree to these updated versions, as Plaintiffs did here. Sauerwein Decl. ¶¶ 7, 9.

The means by which users agree to be bound by updated versions of the Terms of Use are familiar, and are regularly upheld in state and federal courts across the nation, including in California.[5] Specifically, acceptance of the Terms of Use occurs when Plaintiffs click a checkbox

---

§ 1407 and pursuant to *Lexecon* v. *Millberg Weiss Barshad Hynes & Lerach*, 523 U.S. 26 (1998), with respect to the remand of actions originally filed in other courts.

[4] The most recent version of the Terms of Use consented to by Plaintiffs include the Terms of Use dated December 16, 2021, January 17, 2023, and June 14, 2023. Sauerwein Exs. D, E, and F, respectively. The Non Consolidation Clauses in these Terms of Use are identical. The Forum Selection Clauses in these Terms of Use contain differences, but those differences are inconsequential (*e.g.*, a change from "the Terms" to "these Terms" or from "States" to "states"). For simplicity, throughout this brief we only cite to and quote from the Terms of Use dated January 17, 2023, but all arguments presented herein as to the Terms of Use dated January 17, 2023 apply equally to those dated December 16, 2021 and June 14, 2023.

[5] *See e.g.*, *Hamilton* v. *Uber Techs. Inc.*, 2023 WL 5769500, at *4 (S.D.N.Y. Sept. 7, 2023); Order, *Roberts* v. *Uber Techs.*, *Inc.*, No. 5:23-cv-00545, at *4 (W.D. Tex. Aug. 8, 2023) (ECF No. 11)

- 2 -

after being presented with an in-app pop up screen, which states:  "We encourage you to read our Updated Terms in full" and "By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice."  Sauerwein Decl. ¶ 10; Sauerwein Decl. Ex. B.

It is beyond dispute that Plaintiffs have all accepted updated versions of the Terms of Use as users cannot advance past the in-app pop up screen, or use the Uber App, unless and until they have clicked the checkbox, as well as clicked an additional "Confirm" button.  Sauerwein Decl. ¶ 10 (providing further details regarding the notice and consent process for updated versions of the Terms of Use); Sauerwein Decl. Ex. B.  Therefore, each Plaintiff assented to the Non Consolidation Clause and the Forum Selection Clause, which have appeared in every version of the Terms of Use since January 18, 2021 (hereinafter the Terms of Use are also referred to as the "Agreement").

**II.      The Non Consolidation Clause:  Plaintiffs Agreed to Bring Actions, and Litigate Actions, "On an Individual Basis Only" and, Specifically, Not to Bring or Participate in Any "Coordinated" or "Consolidated" Action**

Plaintiffs contractually agreed to bring and litigate actions against Uber "on an individual basis only," and not to participate in any "coordinated" or "consolidated" proceeding.  Specifically, with respect to claims alleging sexual harassment or assault, Plaintiffs agreed:

> Such claims may be brought and litigated in a court of competent jurisdiction by you <u>on an individual basis only.  On an individual basis means that you cannot bring such claims as a class, collective, coordinated, consolidated, mass and/or representative action against Uber. For the avoidance of doubt, this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated,</u> mass and/or representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding.

Sauerwein Decl. Ex. E § 2(b) (emphasis added).  Thus, Plaintiffs' participation in any coordinated or consolidated action is explicitly barred and constitutes a breach of the Agreement by Plaintiffs.

---

(Declaration of Randall S. Luskey in Support of Uber's Motion Regarding Uber's Terms of Use ("Luskey Decl.") Ex. 1); Amended Memorandum and Order, *Williams* v. *Uber Techs.*, Inc., No. 4:22-cv-3398, at *8 (S.D. Tex., Jan. 5, 2024) (ECF No. 56) (Luskey Decl. Ex. 2); *Turner* v. *Uber Techs., Inc.*, 2023 Cal. Super. LEXIS 62376, at *4 (Super. Ct., L.A. Cty., Aug. 24, 2023); *Williams* v. *Ysabel*, 2023 WL 5768422, at *4 (N.J. Super. Ct. App. Div. Sept. 7, 2023).

- 3 -

DEFENDANTS' MOTION REGARDING
UBER'S TERMS OF USE                                          Case No. 3:23-md-03084-CRB

**III.     The Forum Selection Clause:  Plaintiffs Agreed to Litigate Claims Against Uber Only In the States Where the Alleged Incidents Occurred**

The Agreement between the parties further contains a valid and enforceable Forum Selection Clause, which explicitly limits the forum to the states in which the incidents took place:

> Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to these Terms, <u>shall be brought exclusively in the state or federal courts in the state in which the incident or accident occurred</u>, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement in Section 2 or in Supplemental Terms applicable to your region, to the extent permitted by law.

Sauerwein Decl. Ex. E § 8 (emphasis added).  The Forum Selection Clause is presumptively enforceable and precludes Plaintiffs' claims, which admittedly occurred outside of California, and which were brought in the Northern District of California, from being litigated here.  Sauerwein Ex. A.

## ARGUMENT

### I.     Plaintiffs Are Bound by the Terms of Use

Plaintiffs unequivocally entered into binding agreements with Uber to (1) bring claims against Uber only on an individual basis and not to bring or participate in any coordinated or consolidated proceeding; and (2) litigate claims exclusively in the states in which the alleged incidents occurred.  Sauerwein Decl. Ex. E §§ 2(b), 8.  Therefore, by contract, Plaintiffs are not permitted to participate in this MDL - - which is not located in the state in which any of their alleged incidents occurred - - and their actions should either be dismissed or transferred to the states in which their alleged incidents did occur.  Sauerwein Ex. A.

The Plaintiffs subject to this Motion agreed to Uber's Terms of Use - - the version dated January 18, 2021, or a subsequent updated version - - which contain the Non Consolidation and Forum Selection clauses.  Sauerwein Decl. ¶ 13; Sauerwein Ex. C.  Plaintiffs were prompted to review and agree to these versions of the Terms of Use through a clickwrap agreement.  Plaintiffs would have been unable to proceed with using the Uber App, and would not have been able to

- 4 -

1   request a ride, unless and until they had agreed to the Terms of Use.   Sauerwein Decl. ¶ 10

2   (describing the notice and consent process for updated versions of the Terms of Use); Sauerwein

3   Ex. B.

4        In line with the general enforceability of clickwrap agreements, courts all over the country

5   - - including in California - - have concluded, time and time again, that Uber's clickwrap agreement

6   is enforceable.[6]  Some of those many decisions are:  *Hamilton*, 2023 WL 5769500, at *4 (S.D.N.Y.

7   Sept. 7, 2023); Order, *Roberts*, 5:23-cv-00545, at *4 (ECF No. 11) (Luskey Decl. Ex. 1); Amended

8   Memorandum and Order, *Williams*, No. 4:22-cv-3398, at *8 (ECF No. 56) (Luskey Decl. Ex. 2).[7]

9   **II.**   <u>**The Non Consolidation Clause:  Plaintiffs Are Precluded From Bringing or**</u>
        <u>**Participating in a MDL**</u>

10

11       Under the Agreements' Non Consolidation Clauses, Plaintiffs agreed that any claims of

12   sexual harassment or assault against Uber would be brought "on an <u>individual basis only</u>."

13   Sauerwein Decl. Ex. E § 2(b) (emphasis added).   And they further agreed that they would be

14   "<u>preclude[d] from bringing claims as or participating in</u> any kind of any class, collective,

15   <u>coordinated, consolidated,</u> mass and/or representative or other kind of group, multi-plaintiff or joint

16   action against Uber." *Id.* (emphasis added).  This type of Non Consolidation Clause frequently

17   appears in other companies' Terms of Use agreements.[8]

18

19   [6] Generally, state law governs questions of contract formation and enforceability.  *Nextrade, Inc.*
    v. *Hyosung (Am.), Inc*., 122 F. App'x 892, 893 (9th Cir. 2005); *Flores-Mendez* v. *Zoosk, Inc.,* 2022

20   WL 2967237, at *1 (N.D. Cal. July 27, 2022).  Because it does not appear that the law applicable
    to the simple facts of contract formation and enforceability presented in this Motion meaningfully

21   differs throughout the country, this Motion does not and need not address conflict of law issues
    related to contract formation and enforceability.  Should any meaningful differences in various

22   states' laws become apparent throughout briefing these issues, Uber reserves all rights with respect
    to choice of law.

23   [7] *See also Turner*, 2023 Cal. Super. LEXIS 62376, at *4; *Cordoba* v. *Uber Techs., Inc*., 2023 Cal.

24   Super. LEXIS 35824, *7-8 (Super. Ct., L.A. Cty., May 30, 2023); *Currie* v. *Uber Techs., Inc*., 2023
    Cal. Super. LEXIS 55782, at *8-9 (Super. Ct., L.A. Cty., Feb. 7, 2023); *Torres* v. *De Nardo et al*.,

25   2022 Cal. Super. LEXIS 87342, at *7 (Super. Ct., L.A. Cty., Dec. 20, 2022); *Wu* v. *Uber Techs.,*
    *Inc*., 186 N.Y.S.3d 500, 540 (N.Y. Sup. Ct. 2022), *aff'd*, 197 N.Y.S.3d 1 (1st Dept. 2023); *Brooks*

26   v. *Yang*, 190 N.Y.S.3d 309, 310-11 (1st Dept. 2023); *Williams*, 2023 WL 5768422, at *4.

27   [8]*See, e.g.*, TBS TERMS OF USE, https://www.tbs.com/terms (last visited January 25, 2024) ("You
    and TBS agree that … each party may bring claims (whether in court or in arbitration) against the

28   other <u>only in an individual capacity</u>, and not participate as a plaintiff, claimant, or class member in

- 5 -

A MDL, such as the one brought by Plaintiffs here, is axiomatically a "coordinated" or "consolidated" action.  *See* ECF No. 1 at 3 (transferring cases to this Court "for coordinated or consolidated pretrial proceedings"); 28 U.S.C. § 1407 ("actions may be transferred to any district for coordinated or consolidated pretrial proceedings").   Plaintiffs took affirmative steps to coordinate and consolidate their actions when they filed a motion before the Judicial Panel on Multidistrict Litigation ("JPML") seeking the coordination and consolidation of their actions on July 14, 2023.  *See* Motion of Plaintiffs for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. Section 1407, *In re Uber Passenger Sexual Assault Litigation*, MDL No. 3084 (July 14, 2023) (ECF No. 1).  Therefore, by explicit agreement, Plaintiffs are precluded from participating in this MDL, and in so participating, have violated the Non Consolidation Clause.[9]

Agreements circumscribing and specifying the ways in which claims may and may not be brought and litigated are regularly enforced by the courts.  Most common are mandatory arbitration

---

any class, collective, underlined consolidated, private attorney general, or representative proceeding." (emphasis added); AIRBNB TERMS OF SERVICE, https://www.airbnb.com/help/article/2908#22 (last visited Jan. 25, 2024) ("You and Airbnb acknowledge and agree that…we are each waiving the right to participate as a plaintiff or class member in any purported class action lawsuit, class-wide arbitration, private attorney general action, or any other representative or consolidated proceeding." (emphasis added)); SQUARE GENERAL TERMS OF SERVICE, https://squareup.com/us/en/legal/general/ua (last visited Jan. 25, 2024) (prohibiting "class arbitrations, class actions, representative actions, mass actions, and consolidation with other arbitrations," and further providing that "in no case will there be a class action, consolidated action, mass action or representative action arbitration." (emphasis added)); VRBO TERMS AND CONDITIONS, https://www.vrbo.com/lp/b/terms-of-service (last visited January 25, 2024) ("You and we agree that any and all proceedings to resolve Claims will be conducted only on an individual basis and not in a class, consolidated, or representative action, including without limitation as a private attorney general." (emphasis added)).

[9] Plaintiffs may argue that their agreement not to bring a coordinated or consolidated action against Uber is unenforceable pursuant to the Ending Forced Arbitration in Sexual Assault and Sexual Harassment Act ("EFASASHA").  That is incorrect.  EFASASHA bars "joint, class, or collective action" waivers in cases involving a sexual assault or sexual harassment dispute where the waiver appears within an arbitration provision that would ordinarily be subject to the Federal Arbitration Act ("FAA").  *See* David Horton, *The Limits of Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act*, 132 Yale L.J. Forum 1, 2 (2022) (observing that "federal lawmakers chose to plant [EFASASHA] within the FAA" and that "[a]ccordingly, [EFASASHA] only applies if the FAA applies.").  As explained above, here, Uber is seeking to enforce an agreement not to bring any "coordinated [or] consolidated" proceeding, and the provision containing that agreement is not contained within an agreement to arbitrate governed by the FAA.  As such, EFASASHA does not apply to the type of waiver at issue here.  Further, EFASASHA is not retroactive.

provisions and other required alternative dispute resolution procedures; forum selection clauses; and choice of law clauses. *See, e.g.*, *Universal Operations Risk Mgmt.*, *LLC* v. *Glob. Rescue LLC*, 2012 WL 2792444, at *4 (N.D. Cal. July 9, 2012) (explaining that "forum-selection clauses are presumptively valid" (citing *Murphy* v. *Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004)); *Ingalls* v. *Spotify USA, Inc.*, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016) (explaining that "under the FAA, an arbitration clause in an agreement is presumptively valid" (citing *AT&T Techs, Inc.* v. *Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *First Intercontinental Bank* v. *Ahn*, 798 F.3d 1149, 1156 (9th Cir. 2015) ("California generally enforces parties' freely-negotiated choice-of-law clauses."); Restatement (Second) of Conflict of Laws § 187 (1971) (explaining that generally, "the law of the state chosen by the parties to govern their contractual rights and duties will be applied," with two limited exceptions).

Likewise, courts enforce agreements precluding parties from bringing and pursuing claims in court as a class, collective, or representative action - - *e.g.*, class action waivers. *See Archer* v. *Carnival Corp. & PLC*, 2020 WL 6260003, at *6 (C.D. Cal. Oct. 20, 2020) ("Class-action waivers are common in many industries and have generally been upheld."); *Benedict* v. *Hewlett-Packard Co.*, 2016 WL 1213985, at *4 (N.D. Cal. Mar. 29, 2016) (explaining that collective action waivers have been approved in many circuits (collecting cases)). In fact, limitations like these are contained in Uber's Terms of Use in the same provision precluding participation in coordinated or consolidated proceedings. Sauerwein Decl. Ex. E § 2(b).

There is nothing improper about users of the Uber App agreeing, as a condition of using the Uber App, to the limitations in the Terms of Use. For example, Uber has carved out sexual harassment and assault claims from its arbitration requirement. *Id.*[10] The Terms of Use do not discourage or inhibit the filing of actions in federal and state courts against Uber - - such actions may be filed on an individual basis. And they have been. Uber defends against individual personal

---

[10] Courts across the nation have routinely enforced the arbitration clause included in Uber's Terms of Use. *See, e.g.*, *Capriole* v. *Uber Techs., Inc.*, 460 F. Supp. 3d 919, 933-34 (N.D. Cal. 2020), *aff'd*, 7 F. 4th 854 (9th Cir. 2021); *Bell* v. *Uber Techs., Inc.*, 2023 Cal. Super. LEXIS 90782, at *12 (Super. Ct., L.A. Cty., Nov. 28, 2023); *Hamilton*, 2023 WL 5769500, at *4; Order, *Roberts*, 5:23-cv-00545, at *3 (ECF No. 11) (Luskey Decl. Ex. 1).

DEFENDANTS' MOTION REGARDING
UBER'S TERMS OF USE                                    Case No. 3:23-md-03084-CRB

injury actions all over the country.  Indeed, many of the cases in this coordinated proceeding (and in the JCCP) were filed as individual actions before coordination and centralization was granted.

That stands in marked contrast to class action waivers insofar as class actions are viewed as a mechanism for providing monetary relief to absent class members who might not sue on an individual basis given the relatively small amount of damages.  *See*, *e.g.*, *Chavez* v. *Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 379 (N.D. Cal. 2010) (evaluating superiority under Rule 23(b)(3) and noting that "the class action is superior to maintaining individual claims for a small amount of damages").  Yet, as discussed above, even class action waivers are routinely respected and enforced.

Consequently, there is no reason to refrain from respecting and enforcing the Agreement, including the provision precluding Plaintiffs from participating in this coordinated or consolidated proceeding.  Access to the courts to seek legal relief on an individual basis is unrestricted and unimpaired for claims of sexual harassment and assault.  The Court should therefore enforce the Terms of Use and either dismiss Plaintiffs' actions, or alternatively, order them transferred to the states in which the alleged incidents occurred.[11]

### III.     The Forum Selection Clause:  Plaintiffs Agreed To Litigate Exclusively in the Forum Where the Alleged Incidents Took Place

Plaintiffs also agreed to a valid and enforceable Forum Selection Clause, stating:  "any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services . . . .shall be brought exclusively in the state

---

[11] Plaintiffs may try to rely on the JPML's statement that Uber's Terms of Use do not "preclude the motion for centralization" because "[t]he [JPML] is not bound by Uber's Terms of Use" to argue that the Non Consolidation Clause cannot be enforced.  ECF No. 1 at 3.  But in enforcing dispute resolution terms, courts need not consider whether they are bound by the parties' agreement, but whether the parties are bound by that agreement.  To do otherwise would mean that no party could ever enforce contractual terms regarding forum, choice of law, or the like, because no judicial body is ever bound, as to adjudication procedures, by a contract among parties.  Furthermore, this Motion is presenting the very question the JPML contemplated the transferee court, this Court, would take up:  "the enforceability of Uber's Terms of Use."  *Id.* ("Centralization thus will allow for streamlined briefing on this common issue.").  Uber is merely requesting that this Court make that assessment and find Uber's Terms of Use, including its Non Consolidation Clause, enforceable.

DEFENDANTS' MOTION REGARDING
UBER'S TERMS OF USE

or federal courts in the state in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter."  Sauerwein Decl. Ex. E § 8 (emphasis added).

Thus, under the Forum Selection Clause, the jurisdictions in which the alleged incidents occurred are the proper forums for these cases.  Plaintiffs' alleged incidents all occurred outside of California.[12]  Despite this, Plaintiffs chose to file their lawsuits in the Northern District of California and are now litigating their cases in an MDL centralized in the Northern District of California. Sauerwein Decl. Ex. A.  Plaintiffs are in violation of their agreement with Uber and their cases should be transferred to the states in which their alleged incidents occurred, where they can proceed on an individual basis, as dictated by the Terms of Use.[13]

"The enforceability of a forum-selection clause in a federal court is a well-established matter of federal law."  *Lee* v. *Fisher*, 70 F. 4th 1129, 1142 (9th Cir. 2023) (en banc) (cleaned up) (citation omitted).  "When a case concerns an enforcement of a forum selection clause, section 1404(a) provides a mechanism for its enforcement."  *Allred* v. *Innova Emergency Med. Assocs., P.C.*, 2018 WL 4772339, at *10-11 (N.D. Cal. Oct. 1, 2018).  To determine if a transfer of venue is appropriate under § 1404(a), courts apply a two-part test:  *First*, courts determine whether the case could have been brought in the proposed transferee district; *Second*, courts undertake an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc.* v. *Ricoh Corp.*, 487 U.S. 22, 29 (1988).[14]  "A proper application of § 1404(a) requires that a forum-

---

[12] Specifically, Plaintiffs alleged incidents took place across 15 different jurisdictions, including: Alabama, Arizona, Colorado, Florida, Illinois, Kentucky, Maryland, Missouri, North Carolina, Nevada, New York, Oregon, Pennsylvania, Virginia, and the District of Columbia.  Sauerwein Decl. Ex. A.

[13] Should the Court find the Non Consolidation Clause enforceable, there are logical and natural forms of relief available to enforce Plaintiffs' agreement not to seek or participate in this MDL: either, dismiss Plaintiffs' actions (ordering Plaintiffs to refile individual actions in the states in which the incidents occurred), or alternatively, enforce the Forum Selection Clause and transfer them there.  However, in the event that the Court finds the Non Consolidation Clause unenforceable, the Forum Selection Clause serves as an alternative grounds for finding that Plaintiffs cases do not belong in this MDL:  Plaintiffs agreed to litigate where the alleged incidents occurred, and none of the alleged incidents occurred in California.

[14] Because the Court requested that Uber submit a "motion raising arguments about [Uber's] Terms of Use Agreement(s)," ECF No. 175 at 5, and not a motion regarding section 1404(a) motions to

- 9 -

selection clause be given controlling weight in all but the most exceptional cases" and Plaintiffs "bear the burden of showing these exceptional circumstances" exist and that they "make transfer inappropriate." *Allred*, 2018 WL 4772339, at *4 (quoting *Atl. Marine Const. Co.* v. *U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59-60 (2013)).   Put simply, except in "extraordinary circumstances," when the parties have agreed to a valid forum-selection clause, the "district court should ordinarily transfer the case to the forum specified in that clause." *Lee*, 70 F. 4th at 1142 (citation omitted).   Ultimately, Plaintiffs "must show either that the forum selection clause is not valid or that the public interest factors recognized under section 1404(a) make transfer inappropriate." *Id.* (citations omitted).   Plaintiffs cannot do either.[15]

### A. Uber's Forum Selection Clause Is Valid and Enforceable and Plaintiffs Cannot Make Any Credible Argument to the Contrary

A forum selection clause "is prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Docksider, Ltd.* v. *Sea Technology, Ltd.,* 875 F.2d 762, 763 (9th Cir. 1989) (quoting *M/S Bremen* v. *Zapata Offshore Co.,* 407 U.S. 1, 10 (1972)); *see also Lee* v. *Fisher*, 2021 WL 1659842, at *3 (N.D. Cal. April 27, 2021) (describing a "strong federal policy in favor of enforcing forum-selection clauses"). The

---

transfer more generally, Uber does not present arguments here regarding why all of the out-of-state cases in the MDL should be transferred under section 1404(a).  Uber reserves its right to bring section 1404(a) motions to transfer at an appropriate time.

[15] Even with no forum selection clause to enforce, multiple courts have found it appropriate to transfer or dismiss personal injury cases against Uber, like these ones, in favor of the states in which the alleged incidents occurred.  *See Jane Doe* v. *Uber Techs., Inc.*, 2017 WL 2352032, at *1 (N.D. Cal. May 31, 2017) (hereinafter, the "*Minnesota Transfer Decision*") (granting Uber's motion to transfer venue); *Rycz* v. *Superior Ct. of San Francisco Cnty.*, 81 Cal. App. 5th 824 (2022) (granting Uber's motion to transfer venue to a different county); Order on Uber's Motions to Stay or Dismiss Based on *Forum Non Conveniens*, *In re Uber Rideshare Cases*, No. CJC-21-005188 (Jan. 23, 2023) (hereinafter, the "*JCCP Transfer Decision*") (Luskey Decl. Ex. 3) (granting *forum non conveniens* relief in favor of the state where alleged incident occurred); Order Granting Uber's Motion to Dismiss Based on *Forum Non Conveniens*, *Jane Doe* v. *Uber Techs., Inc.*, CGC-17-556481 (Cal. Super. Ct. Aug. 11, 2017) (Luskey Decl. Ex. 4) (same); Order Granting Uber's Motion to Stay Based on *Forum Non Conveniens*, *Jane Doe* v. *Uber Techs., Inc.,* CGC-19-579901 (Cal. Super. Ct. Mar. 24, 2020) (Luskey Decl. Ex. 5) (same); Order Granting Uber's Motion to Dismiss Based on *Forum Non Conveniens*, *Gorne & Walker* v. *Uber Techs.*, Inc., CGC-19-575852 (Cal. Super. Ct. July 1, 2019) (Luskey Decl. Ex. 6) (same).

DEFENDANTS' MOTION REGARDING
UBER'S TERMS OF USE                                                   Case No. 3:23-md-03084-CRB

1  "unreasonableness" exception to the enforcement of a forum selection clause is narrowly construed.

2  *See Argueta* v. *Banco Mexicano, S.A.,* 87 F.3d 320, 325 (9th Cir. 1996).  The resisting party "bears

3  a heavy burden of proof" - - one that Plaintiffs cannot meet here.  *Universal Operations Risk Mgmt.*,

4  2012 WL 2792444, at *4 (quoting *Murphy*, 362 F.3d at 1140).

5  Where, as here, "venue is specified with mandatory language the clause will be enforced."

6  *Docksider*, 875 F.2d 762, 764 (9th Cir. 1989).  The language of the forum selection clause here

7  clearly is mandatory, stating that personal injury claims:  "<u>shall be brought exclusively</u> in the state

8  or federal courts in the state in which the incident or accident occurred, notwithstanding that other

9  courts may have jurisdiction over the parties and subject matter."  Sauerwein Decl. Ex. E § 8

10  (emphasis added).  *See, e.g.*, *Universal Operations Risk Mgmt.*, 2012 WL 2792444, at *4 (finding

11  forum selection clause stating that the parties "consent to the sole and exclusive jurisdiction of the

12  courts of Massachusetts . . . for any action, suit or proceedings arising out of or relating to this

13  agreement" to be mandatory).

14  Further, as the Forum Selection Clause here applies broadly to "any dispute, claim, or

15  controversy arising out of or relating to incidents or accidents resulting in personal injury (including

16  but not limited to sexual assault or harassment claims)," it clearly applies to Plaintiffs' claims.

17  Sauerwein Decl. Ex. E § 8.  *See Bastami* v. *Semiconductor Components Indus., LLC*, 2017 WL

18  1354148 (N.D. Cal. Apr. 13, 2017) ("In the context of forum selection clauses, district courts have

19  held that the term 'relating to' is generally construed quite broadly." (citation omitted)).

20  Because enforcement would not be unreasonable, this Forum Selection Clause is

21  mandatory, and Plaintiffs' claims fall within its scope, the Forum Selection Clause is valid and

22  should be enforced.

23  **B. The Forum Selection Clause Mandates Transfer to the Forum Where the Alleged Incidents Occurred**

24

25  Where, as here, the parties agreed to a valid forum selection clause, the second step - - "the

26  multifactor private-public interest analysis" - - is significantly simplified, with a heavy emphasis

27  placed on the contractually-specified forum.  *Ponomarenko* v. *Shapiro*, 287 F. Supp. 3d 816, 833

28  (N.D. Cal. 2018).  Specifically, since a valid forum selection clause is present, this Court *must*:  (1)

1    not accord the plaintiff's choice of forum any weight; and (2) find that the private-interest factors

2    weigh entirely in favor of the preselected forum.  *Atl. Marine Const. Co.*, 571 U.S. at 63-65.  In

3    order to resist transfer, Plaintiffs "must show that the public interest factors <u>overwhelmingly</u>

4    disfavor a transfer."  *Allred,* 2018 WL 4772339, at *5 (emphasis added).  This Plaintiffs cannot do.

5    Here, as the JCCP court found, the public interest factors "weigh heavily in favor of transfer"

6    because "foreign states have a substantial interest in cases involving injuries that occur within their

7    borders, and in the application of their laws to regulate the conduct of defendants alleged to be

8    responsible for those injuries."  *JCCP Transfer Decision*, No. CJC-21-005188, at 11, 14 (Luskey

9    Decl. Ex. 3).

10            1.   <u>Local Interests, and the Burden on the Courts and the Jury, Favor Transfer</u>

11            The local interests of courts in the states of the alleged incidents are substantially greater

12   than those of California courts.  The residents and jurors in those states have a more compelling

13   interest in adjudicating cases involving alleged sexual assaults that took place in their own states

14   typically by and against residents of their own states.[16]  *See, e.g.*, *Hyundai Space & Aircraft Co*. v.

15   *Boeing Co*., 1999 WL 910131, at *5 (N.D. Cal. Oct. 12, 1999) (the "imposition of jury duty" is a

16   "burden . . . better left to the citizens and courts of the district . . . where many of the events related

17   to this dispute occurred.");  *Rycz*, 81 Cal. App. 5th at 848 ("[j]ury duty is a burden that ought not

18   to be imposed upon the people of a community which has no relation to the litigation." (citation

19   omitted)).

20            Further, out-of-state cases will likely be governed by the substantive law of the state of

21   incident.  In the majority of states, the situs of the injury is the controlling consideration, or at least

22

23

24

25   [16] As shown in Exhibit A to the Sauerwein Declaration, in 26 of the 29 cases subject to this Motion, Plaintiffs allege in their complaints that they reside in the state in which the alleged incident occurred.  In the other 3 cases, the Plaintiffs allege that they reside elsewhere, but none of the Plaintiffs allege residence in California.  Further, in the majority of these cases, the driver's last

26

27   known address is also in the alleged incident state.  Sauerwein Decl. Ex. A.  The drivers who do not appear to reside in the alleged incident state do not reside in California, and the majority appear

28   to live in a state neighboring the incident state.  *Id.*

DEFENDANTS' MOTION REGARDING
UBER'S TERMS OF USE                                        Case No. 3:23-md-03084-CRB

a highly relevant one.[17]  As compared to courts in California, courts in the incident states have a superior interest in, and much greater familiarity with, the laws of their own states.  *See Zut* v. *Harrah's Entertainment, Inc*., 2013 WL 5442282, at *4 (N.D. Cal. Sept. 30, 2013) ("[T]he District of Nevada will undoubtedly be more familiar with applying Nevada's state codes, any applicable local ordinances, and the substantive negligence and premises-liability law of Nevada that will likely be at issue in this case.").

In particular, the incident states have a strong interest in seeing their own common law applied by their courts to redress injuries that occurred in their states, especially where the injuries were inflicted on their residents and/or by their residents.  *See, e.g.*, *Van Mourik* v. *Big Heart Pet Brands, Inc.*, 2018 WL 3549122, at *2 (N.D. Cal. July 24, 2018); *Gilmore-Webster* v. *Bayou City Homebuyers Inc*., 2019 WL 1100492, at *11 (N.D. Cal. Mar. 8, 2019).  Given that Transportation Network Companies ("TNCs"), like Uber, are regulated at the state and local levels, these local interests extend beyond local tort law.  For instance, Arizona and New York each have expressed a specific regulatory interest in the operation of TNCs within their borders.  *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 28-9551 *et seq.*; N.Y. Veh. & Traf. Law §§ 1691 *et seq*.  Those states, like most others, regulate the means and manner by which TNC drivers provide services to riders.[18]  Insofar as these state and local regulations relate to these actions, local courts should not be denied the opportunity to consider, apply, and enforce local policy concerning independent drivers and Uber in their states.  *See Gorne & Walker*, CGC-19-575852, at 3 (Luskey Decl. Ex. 6) ("Washington also has an interest in ensuring that Uber and Uber drivers comply with local rules and regulations in conducting business in Washington.").

---

[17] *See, e.g.*, *Dawson* v. *Medtronic, Inc*., 2013 WL 3322040, at *2 (C.D. Cal. 2013); *Perdue* v. *Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 759 (C.D. Ill. 2020); *Nix* v. *Major League Baseball*, 62 F.4th 920, 932 (5th Cir. 2023); *Cooney* v. *Osgood Machinery, Inc.*, 81 N.Y.2d 66, 72 (1993).

[18] *See, e.g.*, N.Y. Veh. & Traf. Law § 1692(2)(a) and Ariz. Rev. Stat. Ann. § 28-9552 (requiring TNCs to obtain specific permits in order to operate in the state); N.Y. Veh. & Traf. Law § 1696 (requiring TNC drivers to obtain specific permits in order to operate in the state); N.Y. Veh. & Traf. Law § 1699 and Ariz. Rev. Stat. Ann. § 28-9555 (requiring background check and driving record reviews of all TNC drivers); N.Y. Veh. & Traf. Law § 1692(6) (requiring TNCs to provide riders with electronic receipts with additional information about their ride); Ariz. Rev. Stat. Ann. § 28-9556(B) (requiring TNCs to maintain trip records for at least one year).

DEFENDANTS' MOTION REGARDING
UBER'S TERMS OF USE                                        Case No. 3:23-md-03084-CRB

1    In contrast, California has no significant interest in adjudicating a dispute involving an

2    incident that occurred between non-California residents outside of California, involving the

3    application of another state's law, regulations, and public policy.  Citing California appellate

4    authority, the JCCP court concluded that California "has little or no interest in litigation involving

5    injuries incurred outside of California by nonresidents."  *JCCP Transfer Decision*, No. CJC-21-

6    005188, at 14 (Luskey Decl. Ex. 3) (citation omitted).  The only connection these lawsuits have to

7    the state of California is that Uber, a company with nationwide and global operations and offices,

8    is regulated locally in the hundreds of jurisdictions in which the Uber App is used, and has a

9    headquarters here.  *See Minnesota Transfer Decision*, 2017 WL 2352032, at *8 ("While []

10   California has some interest in seeing this case decided here, as Uber is headquartered in San

11   Francisco, Minnesota's interest is more substantial because the activities alleged to give rise to

12   Doe's suit occurred there.").

13            2.   Litigation Costs and Avoiding Unnecessary Expenses and Duplicative
                   Litigation Favor Transfer
14

15   "Generally, litigation costs are reduced when the venue is located near most of the witnesses

16   expected to testify or give depositions."  *Italian Colors Rest*. v. *Am. Express Co*., 2003 WL

17   22682482, at *5 (N.D. Cal. Nov. 10, 2003); *Park* v. *Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d

18   1088, 1095 (N.D. Cal. 2013) (same).  Here, most if not all of the direct evidence relating to the

19   alleged incidents and their consequences will be located in the states in which the alleged incidents

20   occurred, including the witnesses and documents relating to the incidents.

21   Moreover, Uber has the right to bring, and does bring, contribution and indemnity claims

22   against the accused drivers.  Uber will likely have to pursue these claims in the states in which the

23   alleged incidents occurred.[19]  Absent transfer, there will either be two separate court cases arising

24   _____

25   [19] Because in all cases the driver's last known address is outside California, Uber will likely be
     unable to assert cross-claims due to the inability of California courts to exercise personal
26   jurisdiction over the drivers. Sauerwein Decl. Ex. A.  By contrast, there will generally be personal
     jurisdiction over the accused drivers in the states of incident as most drivers reside in the states of
27   incident.  And even where they do not, the proposed transferee districts would still be able to assert
     specific jurisdiction over the accused drivers in connection with these lawsuits, since the alleged
28   conduct by the driver occurred in the states in which those districts sit.

1   from the same alleged incident proceeding in two forums, or Uber will have to move to dismiss this

2   action for failure to join the alleged assailant driver, an indispensable party.  Neither outcome favors

3   judicial economy and neither is cost efficient for the parties or the federal courts.   The costs

4   associated with litigation in California will be avoided by transfer.  *See Fein* v. *Public Serv.*

5   *Coordinated Transp.*, 165 F. Supp. 370, 371 (E.D. Pa. 1958) (In a Section 1404(a) analysis, "the

6   ability to implead a third party is a very important consideration. There is no reason why two

7   lawsuits should be needed [when] transfer will eliminate a perfectly useless additional trial").

8         Based on all the public interest factors, transfer is the appropriate and necessary remedy to

9   enforce the Forum Selection Clause (and either dismissal or transfer is the appropriate remedy to

10   enforce the Non Consolidation Clause).

### C.  Plaintiffs' Cases Could Have Been Brought in the States in Which the Alleged Incidents Occurred

13         To support transfer, the movant must show that the case "could have been brought in the

14   forum to which the moving party seeks to transfer the case."  *Park* v, 964 F. Supp. 2d at 1093.

15   "This includes demonstrating that subject matter jurisdiction, personal jurisdiction, and venue

16   would have been proper if the plaintiff had filed the action in the district to which transfer is

17   sought."  *Metz* v. *U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal.

18   2009) (citation omitted).

19         Here, the states in which the alleged incidents occurred are proper forums for the litigation.

20   Uber does not dispute that those courts would be able to exercise personal jurisdiction over Uber

21   in these matters, and venue in those courts would be proper under 28 U.S.C. § 1391(b)(2) because

22   a substantial part of the events giving rise to the claims allegedly occurred in those districts.  As

23   such, section 1404(a) mandates transfer to the contractually specified forum.

### CONCLUSION

25         For the foregoing reasons, Uber respectfully requests that the Court enforce the Terms of

26   Use that Plaintiffs are bound by, and therefore: (1) prohibit their continued participation in this

27   MDL, which is in violation of their agreements; and (2) either dismiss the cases or transfer the cases

28   to the proposed transferee districts listed in Exhibit A to the Sauerwein Declaration, *i.e.* to the states

- 15 -

in which the alleged incidents took place.

DATED: February 9, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Randall S. Luskey*
    ROBERT ATKINS
    RANDALL S. LUSKEY

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

- 16 -