1   RANDALL S. LUSKEY (SBN: 240915)
       rluskey@paulweiss.com
2   **PAUL, WEISS, RIFKIND, WHARTON
       & GARRISON LLP**
3   535 Mission Street, 24th Floor
    San Francisco, CA 94105
4   Telephone: (628) 432-5100
    Facsimile:  (628) 232-3101
5
    ROBERT ATKINS (*Pro Hac Vice* admitted)
6      ratkins@paulweiss.com
    CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
7      cgrusauskas@paulweiss.com
    ANDREA M. KELLER (*Pro Hac Vice* admitted)
8      akeller@paulweiss.com
    **PAUL, WEISS, RIFKIND, WHARTON
9       & GARRISON LLP**
    1285 Avenue of the Americas
10  New York, NY 10019
    Telephone: (212) 373-3000
11  Facsimile:  (212) 757-3990
12  *Attorneys for Defendants*
    UBER TECHNOLOGIES, INC.,
13  RASIER, LLC, and RASIER-CA, LLC

14  *[Additional Counsel Listed on Following Page]*

15

16              **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18                 **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 19   IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT 20   LITIGATION | Case No. 3:23-md-03084-CRB |
| 21   This Document Relates to: 22 23   ALL ACTIONS | **DECLARATION OF RANDALL S. LUSKEY IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION REGARDING UBER'S TERMS OF USE BAR ON PARTICIPATION IN COORDINATED OR CONSOLIDATED PROCEEDINGS** |
| 24 25 26 | Judge:      Honorable Charles R. Breyer<br>Date:       TBD<br>Time:       TBD<br>Courtroom:  6 – 17th Floor |

27

28

1   KYLE N. SMITH (*Pro Hac Vice* admitted)
        ksmith@paulweiss.com
2   JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
        jphillips@paulweiss.com
3   **PAUL, WEISS, RIFKIND, WHARTON
        & GARRISON LLP**
4   2001 K Street, NW
    Washington DC, 20006
5   Telephone: (202) 223-7300
    Facsimile:  (202) 223-7420
6
    *Attorney for Defendants*
7   UBER TECHNOLOGIES, INC.,
    RASIER, LLC, and RASIER-CA, LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LUSKEY DECLARATION IN SUPPORT OF DEFENDANTS'
MOTION REGARDING UBER'S TERMS OF USE                Case No. 3:23-md-03084-CRB

## DECLARATION OF RANDALL S. LUSKEY

I, Randall S. Luskey, declare pursuant to 28 U.S.C. § 1746:

1.     I am an attorney at the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys of record for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC, (collectively, "Uber").  I respectfully submit this declaration in support of Uber's Terms of Use Bar on Participation in Coordinated or Consolidated Proceedings.  I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief, and if called to testify, I could competently do so.

2.     Attached as **Exhibit 1** is a true and correct copy of the United States District Court for the Western District of Texas's August 8, 2023 Order in *Roberts* v. *Uber Techs. Inc*., No: 5:23-cv-00545 (W.D. Tex. Aug. 8, 2023), ECF No. 11.

3.     Attached as **Exhibit 2** is a true and correct copy of the United States District Court for the Southern District of Texas's Amended Memorandum and Order in *Williams* v. *Uber Techs., Inc.*, No. 4:22-cv-3398 (S.D. Tex. Jan. 5, 2024), ECF No. 56.

4.     Attached as **Exhibit 3** is a true and correct copy of the Superior Court of California for the County of San Francisco's January 23, 2023 Order granting Uber's Motion to Stay or Dismiss Based on *Forum Non Conveniens* in *In re Uber Rideshare Cases*, CJC-21-005188 (Cal. Super. Ct. Jan. 23, 2023).

5.     Attached as **Exhibit 4** is a true and correct copy of the Superior Court of California for the County of San Francisco's August 11, 2017 Order Granting Uber's Motion to Dismiss Based on *Forum Non Conveniens* in *Jane Doe* v. *Uber Techs., Inc*., CGC-17-556481 (Cal. Super. Ct. Aug. 11, 2017).

6.     Attached as **Exhibit 5** is a true and correct copy of the Superior Court of California for the County of San Francisco's March 24, 2020 Order Granting Uber's Motion to Stay Based on *Forum Non Conveniens* in *Jane Doe* v. *Uber Techs., Inc*., CGC-19-579901 (Cal. Super. Ct. Mar. 24, 2020).

7.     Attached as **Exhibit 6** is a true and correct copy of the Superior Court of California for the County of San Francisco's July 1, 2019 Order Granting Uber's Motion to Dismiss Based on *Forum*

1   *Non Conveniens* in *Gorne & Walker* v. *Uber Techs., Inc*., CGC-19-575852 (Cal. Super. Ct. July

2   1, 2019).

3        I declare under penalty of perjury under the laws of the State of California that the

4   foregoing is true and correct.  Executed on February 9, 2024, in San Francisco, California.

5

6                        */s/ Randall S. Luskey*

                            Randall S. Luskey

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LUSKEY DECLARATION IN SUPPORT OF DEFENDANTS'
MOTION REGARDING UBER'S TERMS OF USE      Case No. 3:23-md-03084-CRB

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RODERICK ROBERTS, | § | |
| *Plaintiff,* | § | 5-23-CV-00545-FB-RBF |
| | § | |
| vs. | § | |
| | § | |
| UBER TECHNOLOGIES, INC., | § | |
| RASIER, LLC, SAMANTHA DOE, | § | |
| | § | |
| *Defendants.* | § | |

### <u>ORDER</u>

Before the Court are two ripe motions. Defendants Uber Technologies, Inc., and Rasier, LLC, filed on June 9, 2023, a Motion to Compel Arbitration. *See* Dkt. No. 4. Plaintiff Roderick Roberts filed a response on June 22, 2023, *see* Dkt. No. 6, alongside a Motion for Leave to File a First Amended Petition. *See* Dkt. No. 5. This case was referred for resolution of all pretrial matters pursuant to Rules CV-72 and 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Dkt. No. 8.

For the reasons stated below, Plaintiff's Motion for Leave, Dkt. No. 5, is **DENIED** without prejudice to refiling, and Defendants' Motion to Compel Arbitration, Dkt. No. 4, is **GRANTED**. The Court will therefore stay and administratively close this case pending arbitration.

### A.    Plaintiff's Motion for Leave Doesn't Comply with the Local Rules.

In the motion for leave to amend, Plaintiff requests leave to amend the live pleading approximately two months after removal. The two-page motion states an intent to clarify the identity of Samantha Doe, the driver of the vehicle who allegedly caused Plaintiff's injury, as Samantha McGraw. Plaintiff also seeks to add new claims of negligent entrustment against the

vehicle's owner, Jacqueline Richardson. *See* Dkt. No. 5 at 1. No documents are attached to the motion.

Plaintiff initially identified the driver by first name only in the original petition, alleging that she resided in Bexar County and was employed by Defendants. *See* Dkt. No. 1-5 ¶ 5. But in the notice of removal, Defendants asserted that the alleged citizenship of individuals sued under fictious names, such as "Doe," must be disregarded for diversity jurisdiction. *See* Dkt. No. 1 at 3-4. Plaintiff has not challenged or otherwise opposed removal.

In response to Plaintiff's Motion for Leave, Defendants argue that Plaintiff failed to comply with the Local Rules by not conferring or attaching the proposed pleading as an exhibit. *See* Dkt. No. 10. Indeed, Local Rule CV-7(b) states that "an executed copy of the proposed pleading . . . shall be filed as an exhibit to the motion for leave." Local Rule CV-7(g) then requires parties (1) to confer before filing any non-dispositive motion, and (2) to include a certificate of conference in the motion. Plaintiff's motion makes no mention of any attempts to confer. And despite these shortcomings being brought to Plaintiff's attention, Plaintiff offers no amended motion or reply.

The Court further observes that, through the motion for leave to amend, Plaintiff seeks to join a non-diverse party to this litigation. This would effectively destroy diversity jurisdiction and require the Court to remand. *See* 28 U.S.C. § 1447(e); *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999). In such circumstances, the Court must closely scrutinize the proposed amendment to determine whether joinder and remand are appropriate under several factors. *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). But Plaintiff's two-page motion never addresses the applicable case law. And because Plaintiff fails to attach the proposed amendment, the Court has no means by which to determine whether the *Hensgens* factors are

met. Plaintiff's Motion for Leave, Dkt. No. 5, is therefore **DENIED** without prejudice to refiling in compliance with the Local Rules and with adequate support under Fifth Circuit case law.

> **B.**    **Plaintiff's Arguments Opposing Arbitration Are Unpersuasive.**

Defendants ask the Court to enforce a binding arbitration agreement between the parties. The Federal Arbitration Act declares that arbitration agreements "shall be valid, irrevocable, and enforceable." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (quoting 9 U.S.C. § 2). As such, "any doubts concerning the scope of arbitrable issues," including any defenses to arbitrability, "should be resolved in favor of arbitration." *Id.* at 24-25. Courts employ a two-step inquiry on motions to compel arbitration: (1) "whether the parties entered into *any arbitration agreement*," and (2) "whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The parties may validly delegate the second inquiry, *i.e.*, arbitrability, to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

Defendants provide a thorough overview of the law on arbitration agreements, and they attach a copy of the contract and an affidavit confirming that Plaintiff agreed to those terms. *See* Dkt. No. 4. While Plaintiff opposes enforcement in his response, arguing that he is blind and was not adequately notified of the terms, the response is unsigned, *see* Local Rule CV-10(b), and unsupported. Despite Plaintiff's repeated references to an exhibit, there is nothing attached to the response. *See* Dkt. No. 6. Defendants highlight these deficiencies in reply, and Plaintiff has taken no steps to address them. *See* Dkt. No. 9. Moreover, while Plaintiff disputes whether the display provided *reasonable* notice of the arbitration agreement's terms, Plaintiff does not state that he lacked *actual* notice. Because Plaintiff's assertions are unsupported by affidavit or any competent evidence, the Court need not address the merits. Based on the documentation

3

provided by Defendants, the Court agrees that the arbitration agreement is valid and should be enforced. And because the contract specifically delegates the threshold issues of arbitrability and unconscionability to the arbitrator, *see* Dkt. No. 4-5 at 6-7, the Court must abide by the parties' agreement.

Nonetheless, even if the Court were to address Plaintiff's arguments, they would fail on the merits. Plaintiff concedes that he assented to the arbitration agreement and that it covers all claims against Defendants. *See* Dkt. No. 6 at 5. Plaintiff then asserts that, because he is blind, he did not have reasonable notice of the arbitration agreement, which is described as a clickwrap checkbox. *See id.* at 4-5. But as Defendants correctly point out, "parties should be held to contracts, even if the parties cannot read or understand the contracts due to blindness." *Melancon v. Carnival Corp.*, 835 Fed. App'x 721, 726 (5th Cir. 2020) (cleaned up); *see also Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003) ("[I]lliteracy alone is not a sufficient basis for the invalidation of an arbitration agreement."). Challenges to contract enforcement, such as "not being able to read the contract" due to blindness, are usually for the arbitrator. *See Maravilla v. Gruma Corp.*, 783 Fed. App'x 392, 396 (5th Cir. 2019).

Plaintiff counters that the court should employ the "reasonably prudent smartphone user" test. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77 (2d Cir. 2017); *Walker v. Neutron Holdings, Inc.*, No. 1:19-CV-574-RP, 2020 WL 703268, at *3-4 (W.D. Tex. Feb. 11, 2020), *report and recommendation adopted*, No. 1:19-CV-574-RP, 2020 WL 4196847 (W.D. Tex. Apr. 8, 2020) (finding sign-in wrap agreement provided reasonable notice). But Plaintiff then asks the Court to craft a new test for the "reasonably prudent *blind* smartphone user." Dkt. No. 6 at 4 (emphasis added). Because Plaintiff's phone apparently does not differentiate between font sizes or colors

when it reads text aloud, Plaintiff insists that the measures Defendants adopted were "completely undetectable by a blind man." *Id.* This argument is unpersuasive.

Plaintiff cites no authority in support of requiring a separate test for blind individuals. Moreover, Plaintiff does not allege that Defendants *knew* of his blindness or otherwise had control over how text was read aloud on his smartphone. *Cf. Am. Heritage*, 321 F.3d at 538 (reasoning that knowledge of party's illiteracy may invalidate arbitration agreement due to fraud in the inducement). Because Plaintiff's blindness arguments go to unconscionability or contract enforcement—issues delegated to the arbitrator—as opposed to contract formation, the Court has no reason to question the contract's validity. *See, e.g.*, *Maravilla*, 783 Fed. App'x at 396 ("Despite his attempts to narrowly frame his arguments to challenge only the arbitration agreement, Maravilla's contention of not being able to read the contract pertains to the validity of the contract as a whole. Therefore, it is a decision for the arbitrator." (citing cases)).

Plaintiff next asserts that his claims against McGraw and Richardson are not covered by the arbitration agreement, and compelling arbitration may make discovery problematic. *See* Dkt. No. 6 at 5-6. This may be true, but the Court has no occasion to speculate. McGraw and Richardson are not parties to this case, and Plaintiff has brought no such claims yet. Although Plaintiff insists that he intends to assert additional claims against these non-diverse parties, there is no proposed amended complaint on the docket. The Court thus finds no persuasive reason why the parties' otherwise valid arbitration agreement should not be enforced under these circumstances.

## Conclusion

**IT IS ORDERED** that Plaintiff's Motion for Leave, Dkt. No. 5, is **DENIED** without prejudice, and Defendants' Motion to Compel Arbitration, Dkt. No. 4, is **GRANTED**.

**IT IS FURTHER ORDERED** that this case shall be **STAYED** pending completion of arbitration. Given the potential length of the stay, the Court concludes that this case is appropriate for administrative closure. *See CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 250 (5th Cir. 2006); *Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) (explaining that courts frequently use this device to remove inactive cases from their pending dockets and "[t]he effect of an administrative closure is no different from a simple stay").

The Clerk's office is therefore **DIRECTED** to administratively close this case pending further order of the Court. Though administratively closed, this case will still exist on the docket of this Court and may be reopened upon request by any party or on the Court's own motion. *See Mire*, 389 F.3d at 167. In addition, the parties may file documents and motions in the case despite the administrative closure.

**IT IS FINALLY ORDERED** that every six months, the parties shall confer and provide the Court with an update on the arbitration process. If a status conference is needed, the parties should style the update as a motion requesting a conference. Upon conclusion of arbitration, or in the meantime if there is any other pertinent development in the case warranting a lifting of the stay or other similar action from the Court, the parties are instructed to confer and file a joint motion so informing the Court and requesting to reopen the case or other appropriate relief.

**IT IS SO ORDERED**.

SIGNED this 8th day of August, 2023.

_____
RICHARD B.  FARRER
UNITED STATES MAGISTRATE JUDGE

# Exhibit 2

United States District Court
Southern District of Texas
**ENTERED**
January 05, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TIMOTHY M. WILLIAMS AND | § | |
| CAMERON M. WILLIAMS, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-3398 |
| | § | |
| UBER TECHNOLOGIES, INC., | § | |
| *Defendant*. | § | |

## <u>AMENDED MEMORANDUM AND ORDER</u>

Plaintiffs, appearing pro se and in forma pauperis, filed a Complaint on

September 26, 2022 asserting claims for personal injuries they suffered in an auto

accident while they were passengers in a vehicle driven by an Uber driver.[1]  ECF 1.

The matter is now before the Court on Defendant Uber Technologies, Inc.'s Motion

to Compel Arbitration.[2]  ECF 32.  Having reviewed the parties' submissions and the

law, Defendant's Motion to Compel Arbitration is GRANTED for the reasons set

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C.
§ 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act,
and Federal Rule of Civil Procedure 72.  ECF 12.  Although the Fifth Circuit has not ruled on the
issue, courts in this district have held that a motion to compel arbitration is a non-dispositive
motion subject to review by the District Court under the deferential clearly erroneous or contrary
to law standard of review.  *Adams v. Energy Transfer Partners*, No. 2:16-CV-400, 2017 WL
2347425, at *1 (S.D. Tex. May 30, 2017) (citing cases); *Prangner v. EK Real Est. Servs. of NY,
LLC*, No. CV H-21-3406, 2023 WL 2143605, at *1 n.1 (S.D. Tex. Feb. 21, 2023) (issuing an order,
not a recommendation, on motion to compel arbitration).
[2] The Court granted Defendant's Motion for Reconsideration and vacated its prior Memorandum
and Order on the Motion to Compel Arbitration.  ECF 55.

forth below.

## I.     Background

On June 23, 2021, using the Uber ride share application (the Uber App), Plaintiff Cameron Williams requested a ride for himself and his disabled father, Timothy Williams, who is also a plaintiff.  A driver using the Uber driver application (Uber Driver App), Michael Jackson, accepted Cameron William's request.  Jackson picked up both Plaintiffs and proceeded to drive them to the location Cameron had entered into the Uber App.  En route, Jackson and another driver collided at an intersection.  Jackson briefly exited the vehicle but then rushed back to the vehicle and fled the scene while Plaintiffs remained in the back seat.  Jackson drove erratically and at a high rate of speed before leaving Plaintiffs at their drop off point without stopping long enough to put the car in park.  Plaintiffs allege they feared for their lives and suffered injuries in the incident.  They also allege that Uber's insurance carrier, Progressive, has accepted liability.  Plaintiffs filed this case against Uber asserting that "Uber failed to perform acts that a person of ordinary prudence would have done under the same or similar circumstances."  ECF 1 at 4.  Uber contends that Plaintiffs' claims are subject to a valid, enforceable Arbitration Agreement and moves for dismissal or stay of this action pending arbitration.  ECF 32.

## I.    Legal Standards

The Federal Arbitration Act (FAA) provides that agreements to arbitrate are valid and enforceable.  9 U.S.C. § 2.  However, parties that have not agreed to arbitrate are not required to do so.  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).  Determining whether the parties have agreed to arbitrate requires the court to decide (1) whether the parties have a valid arbitration agreement and (2) whether the specific dispute in question falls within the scope of their arbitration agreement.  *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001); *Galvez v. Arandas Bakery No. 3 Inc.*, No. 4:22-CV-00712, 2023 WL 2652249, at *2 (S.D. Tex. Mar. 24, 2023).

Courts apply the "ordinary state law principles that govern the formation of contracts" when determining whether the parties entered into a valid arbitration agreement.  *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008).  The party seeking to compel arbitration bears the burden to establish the existence of an arbitration agreement.  *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) (stating "the party moving to compel arbitration must show that the agreement meets all of the requisite contract elements.").  As to the second determination— whether the dispute falls within the scope of a valid arbitration agreement—all doubts should be resolved in favor of arbitration.  *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996); *McClairne v. Titlemax of Texas, Inc.*, No. 4:22-CV-

03334, 2023 WL 3739085, at *3 (S.D. Tex. May 30, 2023) (stating that where an arbitration agreement exists, arbitration is presumed "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," quoting *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986)).

If the Court determines that a valid arbitration agreement exists and the dispute falls within the scope of that agreement, the Court must compel arbitration absent a federal statute or policy against arbitration. *OPE Int'l LP*, 258 F.3d at 445; *Galvez*, 2023 WL 2652249, at *2. If the Court determines that a matter should be referred to arbitration, the Federal Arbitration Act provides that the Court should stay the lawsuit until arbitration is completed, but if all claims and issues in the case are subject to arbitration, the Court retains discretion to dismiss the case without prejudice. 9 U.S.C. § 3; *Intermed Serv. Manag. Co., LP v. Horshoe LLC*, No. 3:22-CV-0191-N, 2023 WL 5758879, at *5 (N.D. Tex. Sept. 6, 2023) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

## II.    Analysis

### A. A valid arbitration agreement exists between Cameron Williams and Uber.

The elements of a valid contract under Texas law are: "(i) an offer, (ii) an acceptance in strict compliance with the terms of the offer, (iii) a meeting of the minds, (iv) each party's consent to the terms, and (v) execution and delivery of the

contract with intent that it be mutual and binding." *Galvez*, 2023 WL 2652249, at

*3 (citations omitted).

Acceptance of Uber's Terms of Use is required before a rider can use the Uber

App.  ECF 32-2 at 3-4.  Uber maintains an electronic record of each user's consent

to its Terms of Use.  *Id.*  In this case, Uber has presented evidence demonstrating

that Cameron accepted Uber's January 18, 2021 updated "Terms of Use" on

February 18, 2021, by clicking a check box on a pop-up screen in the Uber App.

ECF 32-2 at 3, 56-58.  The Terms of Use Cameron accepted contain the following

provisions regarding arbitration:

> IMPORTANT: PLEASE BE ADVISED THAT THIS AGREEMENT
> CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS
> BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING
> THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW).
> PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW
> CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL
> DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH
> LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING
> ARBITRATION (AS DESCRIBED IN SECTION 2 BELOW). BY
> ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY
> ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND
> ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN
> TIME TO CONSIDER THE CONSEQUENCES OF THIS
> IMPORTANT DECISION.

> \*       \*       \*

> **2. Arbitration Agreement**

> By agreeing to the Terms, you agree that you are required to resolve
> any claim that you may have against Uber on an individual basis in
> arbitration as set forth in this Arbitration Agreement. This will preclude

you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else. For the avoidance of doubt, this precludes you from bringing or participating in any kind of any class, collective, coordinated, consolidated, representative or other kind of group, multi-plaintiff or joint action against Uber.

(a) Agreement to Binding Arbitration Between You and Uber.

Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof, (ii) your access to or use of the Services at any time, (iii) incidents or accidents resulting in personal injury that you allege occurred in connection with your use of the Services, whether the dispute, claim or controversy occurred or accrued before or after the date you agreed to the Terms, or (iv) your relationship with Uber, will be settled by binding arbitration between you and Uber, and not in a court of law. This Agreement survives after your relationship with Uber ends.

You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to bring or to participate as a plaintiff or class member in any class, purported class, collective, coordinated, consolidated, or representative proceeding.

This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third-parties, including but not limited to your spouses, heirs, third-party beneficiaries and assigns, where their underlying claims are in relation to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties; those claims shall also be subject to this Arbitration Agreement.

\*     \*     \*

(c) Rules and Governing Law.

6

The arbitration will be administered by the American Arbitration Association ("AAA") in accordance with the AAA's Consumer Arbitration Rules (the "AAA Rules") then in effect, except as modified by this Arbitration Agreement. The AAA Rules are available at www.adr.org or by calling the AAA at 1-800-778-7879.

The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel. If there is a dispute about whether this Arbitration Agreement can be enforced or applies to a dispute, you and Uber agree that the arbitrator will decide that issue.

Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law. If the FAA and AAA Rules are found to not apply to any issue regarding the interpretation or enforcement of this Arbitration Agreement, then that issue shall be resolved under the laws of the state where you reside when you accept these Terms.

Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed by and construed in accordance with the laws of the state in which the incident or accident

7

occurred.

ECF 32-2 at 61-63.

Uber's evidence establishes each element of a valid arbitration agreement, i.e.,

an offer, acceptance, meeting of the minds, consent, and execution and delivery, as

to its contract with Cameron.  Texas state courts in Harris County have found Uber's

arbitration agreement with Uber App users to be binding and enforceable.  *See, e.g.,*

*Torres v. Salcedo*, Civil Action No. 2021-35390, in the 189th District Court of Harris

County, slip op. March 7, 2022 (compelling rider to arbitrate claims against Uber

and severing rider's claims against the Uber driver).

## B. Timothy Williams is bound by the arbitration agreement between Uber and Cameron Williams.

Uber argues that Timothy Williams's claims fall within the scope of its

arbitration agreement with Cameron Williams pursuant to the following provision:

> This Arbitration Agreement shall be binding upon, and shall include
> any claims brought by or against any third-parties, including but not
> limited to your spouses, heirs, third-party beneficiaries and assigns,
> where their underlying claims are in relation to your use of the Services.
> To the extent that any third-party beneficiary to this agreement brings
> claims against the Parties; those claims shall also be subject to this
> Arbitration Agreement.

ECF 32-2 at 63.  "[A]rbitration is a matter of contract and a party cannot be required

to submit to arbitration any dispute which he has not agreed so to submit." *AT & T*

*Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  Thus, "[a] party

who is not a signatory to an arbitration agreement generally cannot be compelled to

submit a dispute to arbitration." *McClairne*, 2023 WL 3739085, at *2. Under Texas

law, which governs whether a contract to arbitrate exists between Uber and Timothy

Williams, non-signatories are bound by an arbitration agreement only when law or

equity would bind them to the contract generally. *Taylor Morrison of Tex., Inc. v.*

*Ha*, 660 S.W.3d 529, 532 (Tex. 2023). Texas courts recognize several scenarios in

which a non-signatory to an arbitration agreement may be required to arbitrate, one

of which is direct-benefits estoppel. *Id.* (citing *Jody James Farms, JV v. Altman*

*Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018)). "Under 'direct benefits estoppel,' a

non-signatory plaintiff seeking the benefits of a contract is estopped from

simultaneously attempting to avoid the contract's burdens, such as the obligation to

arbitrate disputes." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex.

2005). A Plaintiff seeks to obtain the benefits of a contract containing an arbitration

agreement not only by suing to enforce the contract, but also by "deliberately

seek[ing] and obtain[ing] substantial benefits from the contract itself." *Taylor*

*Morrison of Tex., Inc.*, 660 S.W.3d at 533 (citing *In re Weekley Homes, L.P.*, 180

S.W.3d 127, 132 (Tex. 2005)).

In *Weekley*, the Court addressed whether a plaintiff who did not sign an

arbitration agreement between the family member that purchased the home and the

home builder could be compelled to arbitrate her personal injury claims related to

asthma she allegedly developed due to construction defects. 180 S.W.3d at 129.

The Court held that arbitration was required under direct-benefits estoppel because the plaintiff, who lived in the home, sued both "on the contract," and in tort.  *Id.* at 137.  According to the *Weekley* Court, the defendant's concern that litigants would artfully plead to avoid contract claims in order to evade arbitration was unfounded because "i]f they pursue a claim 'on the contract,' then they must pursue all claims—tort and contract—in arbitration.  Conversely, if they choose not to sue "on the contract," they may pursue the tort claims in court, but the contract claims will thereby likely be waived under the election-of-remedies doctrine."  The Texas Supreme Court expanded on *Weekley* in *Taylor Morrison of Tex., Inc.*, 660 S.W.3d at 533, which also dealt with non-signatories to a home purchase agreement.  The Supreme Court in *Taylor Morrison* held that regardless of whether the non-signatory family members asserted contract claims they are bound to the arbitration provision through direct-benefits estoppel because they lived in the home at issue.  *Id.*  The plaintiffs' occupancy of the home indicated that they accepted the benefits of the home purchase agreement.  *Id.*

Plaintiffs have not provided the court with a Texas direct-benefits estoppel case involving a passenger who accepted a ride in a vehicle requested by a companion through the companion's ride share account.  Nonetheless, the Court is persuaded that the reasoning of *Taylor Morrison* is sufficiently analogous to be controlling in this case.  Here, Timothy Williams willingly accepted the benefits of

10

the contractual arrangement between Cameron Williams and Uber.   Although he is suing in Tort, not contract, his acceptance of the ride was an acceptance of the benefits of Cameron's contract with Uber.  Although Plaintiff may have a tort claim directly against the negligent driver, he would have no claim against Uber absent Cameron's contract with Uber, which requires arbitration.  The Court concludes that Timothy Williams, like Cameron Williams, is bound by the Uber arbitration agreement.

### C. Plaintiffs' claims against Uber fall within the scope of the arbitration agreement.

The Williams' negligence claims for personal injury sustained in the June 23, 2021 accident are expressly covered by the agreement to arbitrate disputes relating to "incidents or accidents resulting in personal injury that you allege occurred in connection with your use of the Services." ECF 32-2 at 62.  Plaintiffs argue that the arbitration agreement should not be enforced because Uber's insurance company accepted liability on July 29, 2021 and Plaintiffs had no choice but to file suit to recover for their injuries.  ECF 35.  Nevertheless, Plaintiffs' argument does not provide any basis for invalidating or refusing to Uber's valid arbitration agreement.

### III.   Conclusion and Order

For the reasons discussed above, it is

ORDERED that Defendant's Motion to Compel Arbitration of Plaintiffs' is GRANTED.  It is further

ORDERED that Plaintiff claims are STAYED pursuant to 9 U.S.C. § 3 pending completion of arbitration.

Signed on January 05, 2024, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge

# Exhibit 3



San Francisco County Superior Court

JAN 2 3 2023

CLERK OF THE COURT

BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.550] **IN RE UBER RIDESHARE CASES** | Case No. CJC-21-005188 JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5188 |

| | |
|---|---|
| <u>This Order Relates to:</u> *Jane Doe LSA 35 v. Uber Techs., Inc., et al.,* CGC-21-592274 *Jane Doe LSA WHBE 3 v. Uber Techs., Inc., et al.,* CGC-20-584649 | ORDER ON DEFENDANTS AND CROSS-COMPLAINANTS UBER TECHNOLOGIES, INC. AND RASIER LLC'S MOTIONS TO STAY OR DISMISS BASED ON *FORUM NON CONVENIENS* |

On January 4, 2023, the motions of Defendants Uber Technologies, Inc. and Rasier LLC to stay or dismiss both of these actions based on *forum non conveniens* came on for hearing before the Court. Having considered the pleadings and papers filed in the case, and the argument of counsel presented at the hearing, both motions are hereby granted.

- 1 -

## **PROCEDURAL AND FACTUAL BACKGROUND**

These coordinated cases involve individual claims of sexual misconduct or assault against Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber").  In general, the actions arise out of Plaintiffs' use of the Uber app to arrange trips resulting in alleged sexual misconduct or assault against Plaintiffs by their Uber driver.  Plaintiffs in the actions allege that Uber failed to implement appropriate safety precautions to protect its passengers, such as adequate screening of drivers, adequate safety features of the application, and adequate training of drivers regarding sexual harassment and/or sexual assault.  The actions assert a wide range of claims, including general negligence; negligent hiring, retention, and supervision; common carrier negligence; negligent failure to warn and failure to recall; vicarious liability for torts committed by Uber drivers, including sexual assault, sexual battery, and false imprisonment; intentional and negligent misrepresentation; negligent and intentional infliction of emotional distress; breach of contract; strict products liability for design defect and failure to warn; intentional concealment; negligence by misfeasance and nonfeasance; and fraud.

By an order dated December 9, 2021, the Court (Hon. Andrew Y.S. Cheng) granted the petition for coordination with respect to 86 cases originally filed in San Francisco, Sacramento, Santa Clara, Kern, and Los Angeles counties and ordered those actions stayed.  Since that time, over 1,300 additional cases have been the subjects of add-on orders from this Court.  While nearly all of the coordinated cases were filed in San Francisco County in the first instance, the vast majority of them—according to Uber, nearly three-quarters of those cases where the location of the alleged incident is known—involve incidents of sexual misconduct or assault that occurred outside California, in other states and even, apparently, in foreign countries.

At the initial case management conference held on March 4, 2022, the Court expressed the view that Uber's anticipated motions to stay or dismiss on *forum non conveniens* grounds represented a threshold matter that it should resolve in the first instance so that it might determine which cases would remain in the coordinated proceeding in California and which would be refiled in other states.  Accordingly, the Court directed the parties to meet and confer regarding discovery necessary to bring and oppose *forum non conveniens* motions.  On August 10, 2022, the Court issued a Case Management Order

- 2 -

setting a schedule for such discovery based on the parties' detailed agreement, which provided, among other things, that each Plaintiff would fill out fact sheets and produce copies of their trip receipts and Uber would respond to special interrogatories by producing data and/or written responses.

Uber now has filed motions to stay or dismiss based on *forum non conveniens* or, in the alternative, to dismiss for failure to join an indispensable party.[1]  Those motions are directed at two individual cases that fall into two principal categories of out-of-state cases: so-called "Category 1" cases, where the alleged incident occurred outside California and both the plaintiff and the alleged assailant reside outside California; and "Category 2" cases, where the alleged incident occurred outside California, the alleged assailant resides outside California, and the plaintiff resided outside California at the time of the alleged incident and subsequently moved to California.  (LSA Opening Brief, 7.)[2]  Certain pertinent case-specific facts relating to each of the motions are summarized below, while others are addressed in the Discussion section of this Order.[3]

### A. Jane Doe LSA 35 (Category 1)

Plaintiff Doe LSA 35 alleges that in November 2017, she arranged for a ride utilizing the Uber app and was sexually assaulted by the Uber driver.  (Atkins Decl., Ex. 1 ¶ 23.)  It is undisputed that the incident took place in Texas, where Plaintiff resided at the time and currently resides.  (Exs. 10, 12.)  In response to discovery, Plaintiff identified her then-boyfriend as a witness likely to have discoverable information, as well as a police officer and investigator and a health care provider from whom she sought treatment, all in Texas.  (Exs. 10, 13; Levin Decl., Exs. B, C.)  It is undisputed that the Uber driver also is a Texas resident.  (Exs. 11, 15, 16.)  He entered a no contest plea and was found guilty of a criminal charge arising out of the incident.  (Levin Decl., Ex. D.)

Plaintiff filed her complaint in San Francisco Superior Court on June 16, 2021.  (Ex. 1.)  On July

---

[1] Because the Court believes that Uber's *forum non conveniens* motions are well-founded, it need not reach the alternative ground.

[2] Uber represents that "most of the cases" fall into Category 1, but that "several" of the out-of-state cases fall into Category 2.  (WHBE Opening Brief, 7.)  In appendices to its papers, Uber lists the cases that discovery to date shows fall within each of the categories.  There appear to be 925 cases listed under Category 1 and 37 under Category 2.  Thus, Uber's motions potentially bear on the proper forum for more than two-thirds of the over 1,400 coordinated cases.

[3] The Court has endeavored not to divulge any detailed information that any party has filed under seal.

2, 2021, Uber filed a cross-complaint against Roes 1-100 seeking equitable indemnity, contribution, declaratory relief, and contractual indemnity for Plaintiff's alleged damages. By joint stipulation and order filed July 30, 2021, the case was stayed pending a determination of Plaintiffs' coordination petition.

## B. Jane Doe WHBE 3 (Category 2)

Plaintiff Doe WHBE 3 alleges that in January 2020, she arranged for a ride utilizing the Uber app and was sexually assaulted by the Uber driver. (Atkins Decl., Ex. 1 ¶ 3.) Although Plaintiff is currently a California resident (*id.* ¶ 5), it is undisputed that the incident occurred in Hawaii, where she was then residing and working. (Exs. 12-14; Cubberly Decl., Exs. D, E.) Likewise, the driver who allegedly assaulted her, William Murray, is a Hawaii resident. (Ex. 15.) In the parties' forum-related discovery, Plaintiff did not identify any witnesses likely to have discoverable information (Ex. 12), and she neither reported the incident to law enforcement nor sought medical treatment in Hawaii. (Cubberly Decl., Ex. E.)

Plaintiff filed her complaint in San Francisco Superior Court on June 8, 2020. By order filed August 3, 2020, the Court denied Uber's motion to stay or dismiss based on *forum non conveniens* on the grounds, among others, that where the plaintiff is a California resident, the plaintiff's choice of a forum should rarely be disturbed, that Defendants had not shown that Plaintiff was not a California resident, and that on the record then before the Court, Uber had not established the driver's residence or that any other evidence or witnesses were located in Hawaii. After Uber filed a cross-complaint against the driver, Mr. Murray, the Court granted his motion to quash service of summons for lack of personal jurisdiction, finding among other things that Mr. Murray is a resident of Honolulu, Hawaii and that Plaintiff's claims "do not arise out of or relate to Murray's contacts with the [California] forum." (July 26, 2021 Order, 2.) While Uber later filed a renewed motion to stay or dismiss based on *forum non conveniens*, that motion was taken off calendar when the order granting the petition for coordination and request for a stay was granted. On September 14, 2021, Uber filed a complaint against Mr. Murray in Hawaii seeking indemnity and declaratory relief arising out of the action.

# LEGAL STANDARD

"When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (Code Civ. Proc. § 410.30(a); see also *id.* § 418.10(a)(3).)  *Forum non conveniens* is "an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751.)[4]

In ruling on a motion based on *forum non conveniens*, the court engages in a two-step process. First, it decides whether the alternative forum is a suitable place for trial. (*National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 917.)  If it makes that finding the court next considers the private interests of the litigants and the interests of the public in retaining the action for trial in California. (*Id.*)

The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. (*Stangvik*, 54 Cal.3d at 751; *National Football League*, 216 Cal.App.4th at 917.)  The residences of the plaintiff and defendant are also relevant.  If the plaintiff is a California resident, then the plaintiff's choice of forum is entitled to a presumption of convenience, and should rarely be disturbed unless the balance is strongly in favor of the defendant. (*Stangvik*, 54 Cal.3d at 754; *National Football League*, 216 Cal.App.4th at 917.)  If the plaintiff is not a California resident, however, the plaintiff's choice of forum is "entitled to due deference," but "not a strong presumption." (*Stangvik*, 54 Cal.3d at 754-755; *National Football League*, 216 Cal.App.4th at 929.)

The public interest factors include avoidance of overburdening local courts with congested

---

[4] Plaintiffs misplace their reliance on cases involving personal jurisdiction rather than *forum non conveniens*. (E.g., LSA Opposition, 20.)  "Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true.  A principal reason for not exercising jurisdiction, recognized by state and federal courts, is that the forum is not convenient." (*Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 706 (cleaned up).)

- 5 -

1  calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in

2  which the local community has little concern, and weighing the competing interests of California and the

3  alternate jurisdiction in the litigation. (*Stangvik*, 54 Cal.3d at 751; *National Football League*, 216

4  Cal.App.4th at 917.) "Also of potential concern is the interest in trying the case in a forum familiar with

5  the applicable law, and the interest in avoiding unnecessary conflicts of laws." (*Fox Factory, Inc. v.*

6  *Superior Court* (2017) 11 Cal.App.5th 197, 204 (cleaned up).)

7          The moving defendant bears the burden of proof on a motion based on *forum non conveniens*.

8  (*Stangvik*, 54 Cal.3d at 918; *Fox Factory*, 11 Cal.App.5th at 204.) The burden is not an insuperable one;

9  in particular, the defendant need not show that California is a "seriously inconvenient" forum. (See *Fox*

10 *Factory*, 11 Cal.App.5th at 204-207 [rejecting standard adopted in *Ford Motor Co. v. Insurance Co. of*

11 *North America* (1995) 35 Cal.App.4th 604]; *National Football League*, 216 Cal.App.4th at 930-931.)

12 "[T]he evidence before the court, which may include affidavits of the parties, discovery responses, and

13 the undisputed general knowledge of the nature of the action, need only be sufficient to give the court the

14 ability to soundly exercise its discretion regarding the applicability of the general considerations of the

15 *Stangvik* . . . factors to the question of forum non conveniens." (*Morris v. AGFA Corp.* (2006) 144

16 Cal.App.4th 1452, 1462.) To overcome the defendant's showing, the plaintiff may not rely upon

17 unsupported allegations. (See *Hemmelgarn v. Boeing Co.* (1980) 106 Cal.App.3d 576, 589 ["If a court

18 were required to accept any allegation made by a plaintiff as true, the likelihood of the motion based on

19 forum non conveniens being granted in that case would be substantially reduced."].)

20         The initial determination of whether the alternative forum is suitable is nondiscretionary. (*Fox*

21 *Factory*, 11 Cal.App.5th at 204.) Where the balancing of the public and private interest factors is

22 reached, the factors are applied flexibly. (*Stangvik*, 54 Cal.3d at 751; *Fox Factory*, 11 Cal.App.5th at

23 204.) The trial court exercises its discretion in balancing the factors. (*Stangvik*, 54 Cal.3d at 751.)

24

25                          **PERTINENT EVIDENCE AND AUTHORITY**

26         At the threshold, the Court is constrained to address what is and is not pertinent to its ruling on the

27 motions. First, both parties rely on a wide variety of newspaper articles, television reports, academic

28                                              - 6 -

articles, blog entries, websites, advocacy pieces, and other secondary authorities. The Court may not take judicial notice of such materials for the truth of matters stated in them (and for the most part neither side has sought such notice in any event). (E.g., *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1147 fn. 5 [newspaper articles "are not proper authorities to establish the truth of the matters asserted therein"]; *Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 824-827 [declining to take judicial notice of "the existence of a contemporary social movement" or of press releases and other exhibits for the truth of their contents]; *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194 [declining to take judicial notice of the truth of the contents of websites and blogs, including those of newspapers].) While the Court acknowledges that the *forum non conveniens* inquiry is not governed by strict evidentiary standards (*Morris*, 144 Cal.App.4th at 1462), the Court has considered these materials primarily as they may bear on the general considerations it is required to weigh under *Stangvik*.[5]

Second, both parties extensively cite to multiple unpublished trial court rulings, including prior rulings by this and other state courts in both individual cases and coordinated proceedings. While relevant federal decisional opinions generally may be considered by a state court, even if they are unpublished,[6] the same is not true of unpublished state trial court rulings, which (as Plaintiffs correctly acknowledge) have no precedential value. (*Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761; see also, e.g., *Santa Ana Hospital Medical Center v. Belshe* (1997) 56 Cal.App.4th 819, 831.) The Court considered these materials only to the degree that they may have persuasive value. Both parties' requests for judicial notice of unpublished state trial court rulings are denied.[7]

---

[5] The parties have filed uncontested motions to seal certain materials. The Court finds that the factors set forth in California Rule of Court 2.550(d) are satisfied, and grants those motions.
[6] "It does not violate the California Rules of Court to cite an unpublished federal opinion. They may be persuasive, although not binding, authority." (*Western Heritage Ins. Co. v. Frances Todd, Inc.* (2019) 33 Cal.App.5th 976, 989 fn. 6.)
[7] The Court has taken notice of its own prior rulings, including the order granting coordination (LSA, Ex. A) and the jurisdictional ruling granting the driver's motion to quash for lack of personal jurisdiction in *Jane Doe WHBE 3*, which bears on the merits of Uber's arguments regarding the potential for conflicting rulings and whether the driver is an indispensable party.

## DISCUSSION

### I.    THERE IS A SUITABLE ALTERNATIVE FORUM FOR EACH CASE.

"An alternative forum is suitable if it has jurisdiction and the action in that forum will not be barred by the statute of limitations." (*Guimei v. Gen. Electric Co.* (2009) 172 Cal.App.4th 689, 696.) "'[I]t is sufficient that the action can be brought, although not necessarily won, in the alternative forum.'" (*Id.* at 696.)  "It is well settled under California law that the moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the jurisdiction of the alternative forum and to waive any applicable statute of limitations." (*Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1190.) Uber has offered to enter into just such a stipulation.  Plaintiffs do not dispute that there is a suitable forum for each of the cases affected by Uber's motions. (See WHBE Opposition, 7 ["Ms. Doe doesn't deny that Hawaii is a suitable forum"].)

### II.    THE PRIVATE INTEREST FACTORS

The private interests of the litigants include their residences and the location and availability of evidence and witnesses. (*Stangvik*, 54 Cal.3d at 751, 754-757.)  The Court addresses each of the pertinent factors in turn.

#### A.  The Parties' Residences

Both Plaintiffs assert that a plaintiff's choice of forum is entitled to great deference.  As noted above, however, the presumption of convenience that attaches to a plaintiff's choice of forum applies only to California residents. (*Stangvik*, 54 Cal.3d at 754-755; *National Football League*, 216 Cal.App.4th at 929.)  Thus, that Doe LSA 35, a Texas resident, chose to file suit in California "is not a substantial factor in favor of retaining jurisdiction here." (*Stangvik*, 54 Cal.3d at 755.)

Doe LHBE 3 stresses that in 2006, the Court of Appeal quoted *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604 for the propositions that "[a] plaintiff's choice of forum is entitled to great weight even though the plaintiff is a nonresident" and that a plaintiff's choice of forum can be disturbed only "if the balance is strongly in favor of the defendant." (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464; LHBE Opposition, 1, 7.)  However, those propositions are no longer

- 8 -

correct statements of California law, if they ever were.[8]  As one court explained,

> [A] resident of one of our sister states who files suit in California is entitled to due deference under the circumstances presented, not a strong presumption, in favor of its choice of forum.  That deference is to be weighed and balanced by the trial court along with all the other pertinent factors, including the defendant's residence or principal place of business, and has no direct bearing on the moving defendant's burden of proof.  We therefore disagree with the contrary language in cases such as *Ford*, which assert that all U.S. citizen plaintiffs' choices of forum are entitled to great weight.

(*National Football League*, 216 Cal.App.3d at 929-930; see also *Fox Factory, Inc.*, 11 Cal.App.5th at 206 [agreeing with analysis in *National Football League* and rejecting the suggestion that "in every case great weight is required to overcome a nonresident plaintiff's forum choice"].)

Although Doe LHBE 3 currently is a California resident, she resided in Hawaii at the time of the alleged incident.  (Atkins Decl., Ex. 12 at 3.)  While her choice of forum is entitled to some deference in the analysis, California does not have a strong interest in assuring her a forum for the redress of grievances suffered in another state that provides her a suitable forum based on the happenstance that she later moved to California.  (See *Henderson v. Superior Court* (1978) 77 Cal.App.3d 583, 598 [the general rule that a court should stay rather than dismiss a case on forum non conveniens grounds if the plaintiff is a California resident is limited to "plaintiffs who were bona fide California residents at the time their causes of action arose."].)[9]

"Defendant's residence is also a factor to be considered in the balance of convenience.  If a corporation is the defendant, the state of its incorporation and the place where its principal place of business is located is presumptively a convenient forum."  (*Stangvik*, 54 Cal.3d at 755.)  However, "this presumption is not conclusive."  (*Id.* at 756.)  "A resident defendant may overcome the presumption of convenience by evidence that the alternate jurisdiction is a more convenient place for trial of the action."

---

[8] "Many cases hold that the plaintiff's choice of a forum should rarely be disturbed unless the balance is strongly in favor of the defendant.  But the reasons advanced for this frequently reiterated rule apply only to residents of the forum state . . . ."  (*Stangvik*, 54 Cal.3d at 754 (cleaned up).)

[9] Still less can a plaintiff who is a resident of a foreign country claim entitlement to any presumption in favor of her choice of a California forum.  (*Stangvik*, 54 Cal.3d at 755 ["Where, however, the plaintiff resides in a foreign country, . . . the plaintiff's choice of forum is much less reasonable and is not entitled to the same preference as a resident of the state where the action is filed."]; see also *David v. Medtronic, Inc.* (2015) 237 Cal.App.4th 734, 741, fn. 7; *Fox Factory*, 11 Cal.App.5th at 206.)  While Uber asserts that one of the coordinated cases arises from an incident that occurred in Paraguay, the record is unclear as to the residence of the plaintiff in that case.  One of Uber's exhibits shows that of the drivers' last known residences, three were in Paraguay, Bolivia, and Mexico.  (Atkins Decl., Ex. 11.)

- 9 -

(*Id.* (footnote omitted).)  Here, while Uber is incorporated in Delaware and has its principal place of business in California, it shows that it has multiple regional offices in states around the country, as well as call centers that provide specialized support for critical incidents reported by Uber App users.  (Gilmore Decl. ¶¶ 4-5.)  Thus, while this presumption favors Plaintiffs, it is not especially strong, and may be overcome by other evidence.

### B.  The Location Of Evidence And Witnesses

As in *Stangvik*, the parties "disagree sharply" as to how the Court should assess and weigh in the balance the location and availability of evidence and witnesses.  (54 Cal.3d at 756.)  Uber emphasizes that in each case, the driver—the alleged perpetrator of the sexual assaults of which Plaintiffs complain—is a resident of another state, and hence would not be subject to compulsory attendance to testify at trial in California.  Uber also contends that other non-party witnesses, including friends identified by Plaintiffs, police officers or other public safety personnel who may have responded to the incidents, and health care providers and mental health professionals who may have treated Plaintiffs for their injuries, similarly may not be subject to compulsory process.  Uber also stresses the importance of live testimony to the presentation of the cases.  Plaintiffs, for their part, respond that the drivers' and other witnesses' depositions could be taken, and that there are very few such third-party witnesses in the two exemplar cases in any event.  Finally, Uber contends that any documentary evidence relating to the alleged incidents is located in the states where they occurred.

For their part, Plaintiffs place a great deal of emphasis on the location of Uber's corporate headquarters in California, where they contend that many witnesses and documents bearing on Uber's alleged liability on various theories may be found.[10]  Uber, in response, points out that it is regulated by states and localities, and conducts its own business operations on a state or regional basis, and that many of the most pertinent witnesses it identified in its interrogatory responses are located outside California.[11]

---

[10] Plaintiffs assert that according to its discovery responses, Uber has at least 1,112 current California employees and 1,748 former California employees who worked in subject matters relevant to this litigation.  (WHBE Opposition, 4.)  As those numbers make clear, Plaintiffs define the "relevant" subject matters so broadly as to render the analysis nearly meaningless.

[11] Uber shows that key corporate witnesses who are responsible for safety policies and programs reside outside California, and that its operations and decision-making are spread across multiple offices in a number of different states.  (Reply, 10-11; Gilmore Decl. ¶ 4.)

How the balance between these competing arguments is to be struck turns in large part on how the cases are characterized: as individual sexual assault/misconduct cases in which Plaintiffs claim Uber is vicariously liable due to its deficient safety practices, or as corporate misconduct cases in which the individual Plaintiffs' claims are, in effect, merely illustrative of their larger claims.  The former view is far more persuasive to the Court since, as one federal court has pointed out, "to prevail in this case Doe must first prove that an assault took place." (*Doe v. Uber Technologies, Inc.* (N.D. Cal. May 31, 2017) 2017 WL 2352032, at *3; see also *id.* at *6 ["While some Uber party-witnesses may well reside in this District, their testimony will only be relevant at trial if Doe is able to prove her underlying battery and assault claims"] [granting motion to transfer venue of tort suit against Uber based upon alleged sexual assault perpetrated against plaintiff by Uber driver in Minnesota, where the majority of evidence and key third party witnesses are in Minnesota and Minnesota's local interest in deciding the controversy is substantially stronger than California's].)  The Court need not definitively resolve who has the better of this debate in order to decide these motions. (See *Stangvik*, 54 Cal.3d at 757 ["Before deciding whether the private convenience of the parties weighs in favor of plaintiffs or defendants, we consider the interests of the California public in retaining the trial of the actions in this state."].)

## III.    THE PUBLIC INTEREST FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER.

In the Court's view, the public interest factors involved weigh heavily in favor of transfer, and warrant granting Uber's motions.  Again, the Court addresses each of those factors in turn.

### A.  Avoiding Overburdening Local Courts With Congested Calendars

As the *Stangvik* Court recognized, "preventing court congestion resulting from the trial of foreign causes of action is an important factor in the forum non conveniens analysis." (*Stangvik*, 54 Cal.3d at 758.)  California courts—and this Court in particular—are overburdened with litigation as a result of the backlog of cases stemming from the pandemic.  Transferring these two cases—and many others like them—therefore would avoid overburdening congested California courts with foreign cases.

*Stangvik* and other cases are closely on point in this regard.  In *Stangvik*, foreign plaintiffs filed suit in California against Shiley, a California corporation, for products liability arising out of alleged

- 11 -

defects in heart valves received by plaintiffs' decedents.  Defendants asserted that the cases should be tried in the countries in which the plaintiffs resided, the valves were sold, decedents received medical care, alleged fraudulent misrepresentations were made, and evidence regarding the provision of health care and other matters existed.  (*Id.* at 750.)  Plaintiffs countered that California was the more convenient place of trial because the valves were designed, manufactured, tested and packaged in California.  (*Id.*)  On the question of burden, the court noted that foreign plaintiffs had filed 108 actions in California against Shiley relating to the heart valves, and that, according to plaintiffs, about one million pages of documents are relevant to their actions, and the testimony of hundreds of witnesses might be required.  (*Id.* at 758.)  Defendants stated that the number of cases filed against Shiley involving the heart valves had increased to 235 by the time the briefs were filed.  (*Id.*)

The Court found that the public interest factors "clearly" favored defendants' position, observing, "If we hold that the present cases may be tried in California, it will likely mean that the remaining 108 cases involving the Shiley valve will also be tried here.  The burden on the California courts of trying these numerous complex actions is considerable."  (*Id.* at 763.)  Further, the Court rejected the argument that transferring the foreign cases would undermine the deterrent effect on Shiley, a California-based manufacturer: "California's interest in deterring future improper conduct by defendants would be amply vindicated if the actions filed by California resident plaintiffs resulted in judgments in their favor."  (*Id.*)

Similarly, in *Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, the court affirmed an order staying two actions brought by California residents seeking to recover for personal injuries and wrongful death allegedly caused by asbestos exposure.  Most of the decedent's and his wife's asbestos exposure was alleged to have occurred in Montana, where the decedent had lived and worked.  The court held that the public interests weighed in favor of Montana, observing,

> California courts are already overburdened with asbestos litigation and have little or no interest in litigation involving injuries incurred outside of California by non-residents.  It seems unduly burdensome for California residents to be expected to serve as jurors on a case having so little to do with California.  The competing interests of California and Montana strongly weigh in favor of litigating this matter in Montana.

(*Id.* at 760; see also *Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542 ["Trial of the action here would contribute to court congestion, as there are 20 separate plaintiffs whose damages would

- 12 -

1    have to be considered."].)

2    Here, the number of cases pending in this Court far exceed the number of cases at issue in

3    *Stangvik, Hansen,* and *Campbell.*  The corresponding burden on this Court therefore would be

4    considerably greater.[12]  This factor therefore weighs heavily in favor of transfer.

5    Plaintiffs argue that granting the motions would impose burdens on other courts and judges around

6    the country where multiple cases presumably would be refiled, and that the Court should consider the

7    burden factor in light of the judicial system as a whole.  They point to language in the California Supreme

8    Court's decision in *Bristol-Myers Squibb Co. v. Superior Court* (2016) 1 Cal.5th 783, *rev'd* (2017) 137

9    S.Ct. 1773, a products liability action brought against a pharmaceutical manufacturer by both California

10   residents and nonresidents in which plaintiffs alleged they were injured by a prescription drug.  The

11   majority reasoned in part as follows:

12   > [Defendant] argues that it would be a waste of California's judicial resources to provide a forum
13   > for the nonresident plaintiffs.  To be sure, a single court hearing the claims of hundreds of
     > plaintiffs is a significant burden on that court.  But the overall savings of time and effort to the
14   > judicial system, both in California and interstate, far outweigh the burdens placed on the
     > individual forum court.  The alternative the [defendant] proposes would result in the duplication of
15   > suits in numerous state or federal jurisdictions at substantial costs to both the judicial system and
     > to the parties, who would have to deal with disparate rulings on otherwise similar procedural and
16   > substantive issues.

17   (*Id.* at 811-82.)  The quote is taken out of context, however, as the California Supreme Court there was

18   addressing factors bearing on a state's exercise of specific personal jurisdiction over a nonresident

19   defendant, and its holding in that regard was later reversed by the U.S. Supreme Court.[13]  As the Court

20   itself pointed out, *forum non conveniens* presents distinct issues.  (*Id.* at 809 & fn. 5.)  While this Court's

21   rulings may well have an indirect effect on the courts of other states, nothing in *Stangvik* or California law

22   mandates consideration of those effects in the *forum non conveniens* analysis.  Moreover, as discussed in

23

24   [12] Plaintiffs attempt to distinguish *Stangvik* on the ground that the actions in that case were not
     coordinated before a single judge.  As discussed below, the Court does not believe that the pendency of a
25   coordination proceeding renders a *forum non conveniens* motion unavailable in actions included in that
     proceeding.  As the California Supreme Court recognized in the language quoted below, the burden on the
26   Court of handling large numbers of cases brought by nonresidents is likely to be significant.
     [13] Even in that different context, only Justice Sotomayor, who authored the sole dissent in that case,
27   placed any weight on the argument regarding the burden on other courts.  (See 137 S.Ct. at 1789
     (dissenting op. of Sotomayor, J.).)

28   - 13 -

the next section, any additional burden on foreign states' courts is likely to be commensurate with their interest in resolving cases brought by their own residents arising out of injuries they occurred in those states.

### B. California's Interest Is Outweighed By That Of The States Where The Injuries Occurred

A second critical factor in the public interest balance relates to the competing interests of California, on the one hand, and Texas and Hawaii, on the other.  Because the harms Plaintiffs allegedly sustained occurred outside California, California's interest in providing Plaintiffs a forum is outweighed by that of the states where their injuries occurred.  In general, California courts "have little or no interest in litigation involving injuries incurred outside of California by nonresidents." (*Morris*, 144 Cal.App.4th at 1467.)  "California courts have held that with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." (*Roman v. Liberty University, Inc.* (2008) 162 Cal.App.4th 670, 684 (cleaned up) [trial court properly granted forum non conveniens motion where, among other things, plaintiff's injury and defendant's allegedly negligent conduct took place in Virginia; "California courts have little interest in regulating conduct within Virginia's borders."]; see also *Hahn*, 194 Cal.App.4th at 1196 [courts consider the locus of "the effect, harm, and damages caused by defendants' alleged conduct"]; *Boaz*, 40 Cal.App.4th at 713 ["All this having been said, the important reason for affirming the forum non conveniens decision of the trial court is that the torts alleged in this case have nothing to do with California.  They were not committed here; none of the affected appellants received her injury in this state; and none resides here. . . .  We find no justification for California courts and juries to bear the burden of this litigation."].)  Conversely, as Plaintiffs acknowledged at the hearing, foreign states have a substantial interest in cases involving injuries that occur within their borders, and in the application of their laws to regulate the conduct of defendants alleged to be responsible for those injuries.

Here, just as in the closely analogous federal case cited above, this factor "strongly favors transfer":

While California has some interest in seeing this case decided here, as Uber is headquartered in

- 14 -

San Francisco, Minnesota's interest is more substantial because the activities alleged to give rise to Doe's suit occurred there. Doe's recovery in this action depends on proving the alleged sexual assault and battery, which will require testimony from Minnesota witnesses and evidence located in Minnesota. Furthermore, Minnesota has a greater interest in protecting a Minnesota citizen against assault and battery than California does. Finally, while California undoubtedly has significant interests in the conduct of corporations headquartered here, Minnesota has a comparable interest in the conduct of corporations operating in Minnesota.

(*Doe v. Uber Technologies, Inc.*, 2017 WL 2352032, at *8.)

## C.  Applicable Law And The Interest In Avoiding Unnecessary Conflicts Of Laws

Yet a third significant factor in the public interest balance is the interest in trying the case in a forum familiar with the applicable law and the interest in avoiding unnecessary conflicts of laws. (*Fox Factory*, 11 Cal.App.5th at 204.) Allowing Plaintiffs' cases to remain in California, although they will likely be governed by the regulatory and tort laws of Texas and Hawaii, the states in which Plaintiffs were allegedly injured, would undermine that interest.

Plaintiffs ignore or understate the importance of other states' tort and regulatory laws in setting the standards by which Uber's liability for alleged sexual misconduct or sexual assaults by its drivers are likely to be determined. As Plaintiffs acknowledge, key legal issues in these cases will include, among others, whether Uber is a "common carrier" (LHBE Opposition, 15), whether it adequately screened drivers, and whether it owed Plaintiffs a duty to warn them about or implement other measures to protect them against assailants. It is likely that those issues will be determined under the laws of the states where the alleged incidents occurred, not under California law. In particular, as Uber shows, it is regulated in Texas as a Transportation Network Company (TNC) under Texas statutes and regulations that govern whether a TNC is a common carrier (it is not) and what criminal background checks it must conduct before hiring drivers, among other issues. (In Hawaii, in contrast, such state laws have only recently been enacted.)

Moreover, Texas and Hawaii law rather than California law are likely to apply to some of the novel questions of tort law posed by these cases such as, for instance, whether a TNC owes its passengers a duty to install cameras in vehicles to safeguard their safety. Under California's governmental interest analysis, "although the law of the place of the wrong is not necessarily the applicable law for all tort actions, the situs of the injury remains a relevant consideration." (*Castro v. Budget Rent-A-Car System*,

- 15 -

1  *Inc.* (2007) 154 Cal.App.4th 1162, 1180.)  Where an incident and the plaintiff's injury occurred within

2  another state's borders, the other state has a presumptive interest in controlling the conduct of the

3  tortfeasor, absent some other compelling interest to be served by applying California law.  (*Id.* [applying

4  Alabama law in personal injury case involving car accident that took place in Alabama]; *Boaz,* 40

5  Cal.App.4th at 713 ["The circumstances of this case—including the site of the tortious acts and their

6  manifestation, and the lack of a significant California connection to those events—provide strong reasons

7  to believe that a California court would look to the substantive law of New York."].)  Thus, California has

8  no interest in applying its law "in a case where there are no California plaintiffs and no one sustained

9  injuries in California"; under those circumstances, "California's interest in applying its law is

10  hypothetical, since no actual harm occurred in California giving rise to an interest to deter conduct or

11  compensate victims." (*Chen v. Los Angeles Truck Centers, LLC* (2019) 42 Cal.App.5th 488, 493.)

12         It is also likely that foreign law would apply to the claims of Jane Doe WHBE 3, even though she

13  currently is a California resident.  In weighing California's interest in applying its own law against

14  another state's, "it is generally appropriate for a court to accord limited weight to California's interest in

15  providing a remedy for a current California resident when the conduct of the defendant from whom

16  recovery is sought occurred in another state, at a time when the plaintiff was present in (and, in the

17  present situation, a resident of) that other state, and where that other state has its own substantive law, that

18  differs from California law, governing the defendant's potential liability for the conduct that occurred

19  within that state." (*McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68, 76.)

20         Accepting Plaintiffs' position could require the Court to apply Texas and Hawaii law in the two

21  cases that are the subject of the pending motions.  Moreover, that adverse effect would be dramatically

22  magnified, were the Court's ruling to be applied to hundreds of other cases arising out of alleged incidents

23  that occurred in some 50 jurisdictions across the United States.  Although the Court does not decide the

24  issue, "[i]t is sufficient to point out that the fact that a California court would have to untangle problems

25  in conflict of law is itself a basis to apply the doctrine of forum non conveniens." (*Id.* (cleaned up).)

26         **D.  The Public Interest Factors Control**

27         In the Court's view, these public interest factors overwhelmingly apply here in favor of granting

28                                                         - 16 -

Uber's motions as to both cases.  Even where it is "probable that both parties will suffer some disadvantage from trial in their home forums" because there are witnesses and documentary evidence in both states, it is appropriate to grant a *forum non conveniens* motion where, as here, the public factors "clearly favor" transfer. (*Stangvik*, 54 Cal.3d at 757, 762-763.)  For example, in *Campbell*, an action arising out of an airplane crash, virtually all of the evidence relating to damages was in a foreign jurisdiction, and the evidence relating to the design and manufacture of the plane was in the United States. "Thus, each side would suffer some disadvantage from trial in its home forum.  The public interest, however, favors granting the motions." (69 Cal.App.4th at 1542; see also *Century Indemnity Co. v. Bank of America* (1997) 58 Cal.App.4th 408, 413-414 [although "[t]he proximity of evidence and witnesses favors neither forum," trial court properly exercised discretion in staying action given "Hawaii's strong public policy interest in interpreting the insurance policies and the lack of a strong countervailing justification for proceeding . . . in California"].)  Because Texas and Hawaii's interests in deciding Plaintiffs' cases are substantially stronger than California's, the public interest factors control.

## IV. THE *FORUM NON CONVENIENS* ANALYSIS IS NOT NEGATED BY THE COORDINATION PROCEEDING.

As noted above, at the very first case management conference in this case, the Court identified the *forum non conveniens* issue as the critical threshold issue to be decided in the coordinated proceedings. Nine months after the Court first adopted this approach, and after the parties have completed substantial discovery on forum-related issues and extensively briefed these motions, Plaintiffs now invite the Court to jettison the entire approach, arguing that the Court should deny or defer ruling on the motions and instead develop a bellwether selection process in which forum considerations would be only one factor in the selection of bellwether cases. (LSA Opposition, 17-18.)  Plaintiffs argue, in essence, that the mere existence of the coordination proceedings negates the need to conduct any convenient forum inquiry at all.  Moreover, Plaintiffs now appear to back away from the basis for their own stipulation, embodied in the Court's order, that the Court's ruling on these motions would serve as a basis for deciding how other similar cases should be handled.  By the terms of that stipulation and order, following this Court's rulings on the instant motions, "the parties shall meet and confer to discuss a process stipulating to or contesting

- 17 -

the applicability of the Court's ruling on the Forum Motions to the remainder of the cases within this coordinated proceeding." (Aug. 10, 2022 Order, 4 ¶ 7.) Yet Plaintiffs now protest that each *forum non conveniens* motion must be decided on an individualized basis, and that there is no authority for "extrapolating" the Court's rulings in these two cases to any others included in the coordinated proceeding. (LSA Opposition, 5, 8-9.) The Court could not disagree more.

First, there is no merit to Plaintiffs' position that the Court's approach is somehow inconsistent with coordination or that inclusion of an individual case in a coordinated proceeding necessarily makes a *forum non conveniens* motion unavailable. Contrary to Plaintiffs' argument, the Court's order setting *forum non conveniens* as its first order of business was entirely consistent with the order granting coordination, which stated that, among other issues, the doctrine's application to the coordinated cases presents "identical threshold and central legal questions that should be decided by one judge." (Dec. 9, 2021 Order, 3.) Indeed, California case authority makes clear that forum motions are equally available in cases included in coordination proceedings. (See, e.g., *Bristol-Myers Squibb Co.*, 1 Cal.5th at 789-790, 809 fn. 5 [stating that defendant in coordinated proceedings involving actions by 86 California residents and 592 residents of 33 other states is "free to make such a showing [that the cost of litigating plaintiffs' claims in San Francisco is excessive or unduly burdensome compared to other relevant forums] on a motion asserting forum non conveniens"]; *Martinez v. Ford Motor Co.* (2010) 185 Cal.App.4th 9, 21 [reversing *forum non conveniens* order dismissing products liability action included in coordinated proceeding against tire and car manufacturers on ground that motion was prejudicially untimely because defendants took extensive discovery beyond the scope of that needed to establish the basis for the motion].)

It is no answer to say, as Plaintiffs assert, that the convenience factors do not matter because few of the cases will actually be tried after the Court selects bellwether cases. For one thing, there is no way of knowing whether the two cases that are the subject of Uber's motions will be selected as bellwethers. More importantly, the incremental burden on the Court of managing more than 1,400 cases rather than "only" 400 or so will itself be substantial: it undoubtedly will necessitate more motion practice and case management conferences, and may require the selection of a larger number of bellwethers. Plaintiffs cite

- 18 -

no authority—and there is none of which the Court is aware—which stands for the proposition that a court should ignore the potential burden on congested local courts posed by the filing of numerous foreign cases, the strength of the different states' interests in trying the cases, the potential applicability of multiple states' laws, and the other *forum non conveniens* factors merely because a bellwether process may be an available mechanism to manage the cases.

At the hearing, Plaintiffs for the first time proposed what they termed "a structural solution" to the Court's concerns. Under that proposal, Plaintiffs would stipulate to select only "California cases" (that is, cases in which the plaintiff was a resident of California at the time of the incident, remains a California resident, and the incident occurred in California) for the bellwether pool, unless Uber decided to select other cases as its bellwether candidates. Plaintiffs would further stipulate that all the non-California cases would be stayed for all purposes during the pendency of the bellwether process, unless the plaintiffs in those actions objected to a stay and wished to proceed in another forum. Finally, in the event the bellwether trials do not result in a resolution of all of the coordinated cases and the Court were to remand individual cases to the counties where they were originally filed (Cal. R. Ct. 3.542), Plaintiffs would agree that renewed *forum non conveniens* motions would not be untimely. As Uber pointed out, however, this novel proposal essentially begs the question of why the non-California cases were filed in this forum in the first place. Moreover, to the extent that the objective of bellwether trials is to yield representative verdicts in order to facilitate a global resolution of multiple coordinated actions,[14] it seems appropriate to the Court that non-California cases be refiled in other states, such that the resulting verdicts may more accurately reflect the governing law and jury venires in the fora with the greatest interest in their resolution.

Second, Plaintiffs' position that Uber is required to bring motions in each individual case subject to transfer under the *forum non conveniens* doctrine obviously would be unworkable, given the unusually large number of cases pending in this Court. Nor does the Court agree that it lacks the authority to devise

---

[14] "The primary purpose of a 'bellwether' trial is to educate the parties and the court about the strengths and weaknesses of the many underlying cases." (*Pacific Fertility Cases* (2022) 78 Cal.App.5th 568, 574 fn.3, review granted, S. 275134 (Aug. 17, 2022), citing 4 Newberg on Class Actions (5th ed. 2021) § 11:13.)

procedures to apply its rulings to groups or categories of cases, rather than merely issuing one-off rulings that would apply to a single case at a time. "The trial court has broad discretion to fashion suitable methods of practice in order to manage complex litigation. This includes requiring standard motions to minimize duplication where issues are similar, and the issuance of standard orders." (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 295; see also, e.g., *Cohn v. Corinthian Colleges, Inc.* (2008) 169 Cal.App.4th 523, 531 ["judges must be permitted to bring management power to bear upon massive and complex litigation to prevent it from monopolizing the services of the court to the exclusion of other litigants. . . . [T]he trial court is given the discretion to be flexible with complex cases." (cleaned up)]; *First State Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 324, 333-336 [trial court presiding over complex insurance coverage dispute involving 25 insureds, over 40 insurers, and claims arising from numerous jurisdictions, had inherent authority to defer hearing summary judgment motions filed by parties until after it had decided myriad choice of law issues presented by case].)

Third, and most broadly, Plaintiffs' argument seems to assume that the purpose of the coordination procedure is, as Uber puts it, to "nationalize" cases that could otherwise be brought in states across the country, akin to a federal MDL. However, there is nothing in the coordination statutes or rules that suggests any intent on the part of the Legislature to transform California state courts into a national hub for tort litigation. Code of Civil Procedure section 404 authorizes a petition for coordination to the Judicial Council "[w]hen civil actions sharing a common question of fact or law are pending in different courts," referring to different California state courts, which of course are the only courts over which the Judicial Council has jurisdiction. (See also Cal. R. Ct. 3.521(a)(5) [coordination petition shall include title and case number of any other action known to the petitioner to be pending "in a court of this state" that shares a common question of fact or law with the included actions]; *McGhan Medical Corp. v. Superior Court* (1992) 11 Cal.App.4th 804, 807-811 [considering trial court's order denying coordination in light of the objectives and effects of the coordination procedure as they relate to "hundreds of cases on the docket of not only this court but of numerous other trial courts throughout the state"].)

## **CONCLUSION**

For the foregoing reasons, Defendant's motions to stay both actions are granted.  As previously directed, the parties, consistent with their stipulation and the Court's order, shall meet and confer to devise a process to stipulate to or contest the applicability of the Court's rulings on these motions to the remainder of the cases within this coordinated proceeding, and shall be prepared to address those issues at the next case management conference on February 21, 2023.  A joint case management conference statement shall be filed at least five court days prior to the case management conference.

IT IS SO ORDERED.

Dated: January 23, 2023

Ethan P. Schulman
Judge of the Superior Court

- 21 -

## CERTIFICATE OF ELECTRONIC SERVICE
(CCP 1010.6(6) & CRC 2.251)

I, Ericka Larnauti, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On January 23, 2023, I electronically served the attached document via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:  January 23, 2023

Mark Culkins, Interim Clerk

By: _____

Ericka Larnauti, Deputy Clerk

# Exhibit 4



**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

# Document Scanning Lead Sheet

Aug-11-2017 3:14 pm

Case Number: CGC-17-556481

Filing Date: Aug-11-2017 10:28

Filed by: GINA GONZALES

Image: 05982472

ORDER

JANE DOE VS. UBER TECHNOLOGIES, INC. ET AL

001C05982472

**Instructions:**
Please place this sheet on top of the document to be scanned.

1   Robert F. Tyson, Jr., Esq. (Bar No. 147177)
    Susan L. Oliver, Esq. (Bar No. 160902)
2   Tracey L. Angelopoulos, Esq. (Bar No. 220095)
    TYSON & MENDES, LLP
3   5661 La Jolla Boulevard
    La Jolla, CA  92037
4   Telephone: (858) 459-4400

**FILED**

San Francisco County Superior Court

AUG 11 2017

CLERK OF THE COURT
BY: _____
                    Deputy Clerk

5   Attorneys for Defendants Uber Technologies, Inc. and Rasier, LLC

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF SAN FRANCISCO

11  JANE DOE,                          )  Case No. CGC-17-556481
                                       )  [Complaint Filed: 01/17/2017]
12              Plaintiff,             )
                                       )  [PROPOSED] ORDER GRANTING
13          v.                         )  DEFENDANTS UBER TECHNOLOGIES,
                                       )  INC.'S AND RASIER, LLC'S MOTION
14  UBER TECHNOLOGIES, INC., a Delaware )  TO DISMISS OR IN THE
    Corporation, RASIER, LLC, a Delaware )  ALTERNATIVE, STAY THE CASE
15  Limited Liability Company and DOES I-V, )  BASED ON FORUM NON CONVENIENS
    Inclusive Defendants              )
16                                     )  Date:   August 11, 2017
                Defendants.           )  Time:   9:30 a.m.
17                                     )  Dept:   302
                                       )  Judge:  Hon. Harold E. Kahn
18                                     )  Reservation No. 06090804-01
                                       )
19                                     )  Trial Date:  None Set
                                       )
                                       )

22  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

23      **PLEASE TAKE NOTICE** that on August 11, 2017 at 9:30 a.m. in Department 302 of this

24  Court, Defendants UBER TECHNOLOGIES, INC.'s and RASIER, LLC's motion for an order

25  dismissing the case based on forum non conveniens or in the alternative, staying the case came on

26  regularly for hearing.  All appearances are noted in the record.

27  / / /

28  / / /

                                      1

1   After considering the motion and supporting documents and argument by counsel, the

2   Court issues the following ruling.

3   DEFENDANT UBER TECHNOLOGIES, INC., RASIER, LLC's Motion For Support To

4   Dismiss Or In The Alternative, Stay The Case Based On Forum Non Conveniens ~~Defendants Uber~~

5   ~~Technologies, Inc. and Rasier, LLC's motion to dismiss for forum non conveniens~~ is **GRANTED**.

6   Michigan is a suitable alternative forum because defendants are subject to a Michigan court's

7   jurisdiction and none of plaintiff Jane Doe's claims would be barred by the statute of limitations.

8   Plaintiff's argument that Michigan is not a suitable forum because of the recently enacted

9   legislation limiting the circumstances in which transportation network companies like Uber are

10  deemed employers of their drivers lacks merit. "[S]o long as there is jurisdiction and no statute of

11  limitations bar, a forum is suitable where an action can be brought, although not necessarily won."

12  (*Shiley, Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 132 (internal quotation omitted).) "[A]

13  showing that recovery would be more difficult or even impossible in a foreign forum does not

14  demonstrate that the alternative forum is inadequate." (*Id.* at 133 (internal quotation omitted).) Nor

15  does the "no remedy at all" exception apply because this case does not present one of those rare

16  circumstances where the alternative forum lacks an "independent judiciary or due process of law."

17  (*Id.* at 134.) The private and public interest factors weigh in favor of this case being venued in

18  Michigan rather than California. As to the private interest factors, the incident occurred in

19  Michigan, plaintiff and the Uber driver reside in Michigan, and most or all of the potential

20  witnesses and documentary evidence are in Michigan. Defendants would likely not be able to

21  compel out-of-state witnesses to appear in a California proceeding, which would likely hinder their

22  defense. Defendants' corporate witnesses with knowledge of Uber's Michigan operations are

23  located in Chicago, Illinois, not San Francisco. As to the public interest factors, California has only

24  a minimal interest in adjudicating an incident that occurred between Michigan residents and

25  involves Uber's compliance with Michigan rules. Michigan has a much greater interest in resolving

26  a dispute involving Michigan residents and the way Uber operates in Michigan. Dismissal of the

27  case, rather than a stay, is warranted because plaintiff has no connection with California.

28  (*Henderson v. Superior Court* (1978) 77 Cal.App.3d 583, 598.)

2

1   **IT IS SO ORDERED.**

2   DATED:   B/11/17

3   _____
    Hon. Judge Harold E. Kahn

4   JUDGE OF THE SUPERIOR COURT

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   CGC-17-556481   JANE DOE vs. UBER TECH., INC., ET AL.

3

[PROPOSED] ORDER GRANTING UBER TECHNOLOGIES, INC.'S AND RASIER, LLC'S MOTION TO DISMISS

# Exhibit 5

1  Steven R. Disharoon (State Bar No. 273170)
   sdisharoon@wshblaw.com
2  Anoush C. Holaday (State Bar No. 291413)
   aholaday@wshblaw.com
3  **WOOD, SMITH, HENNING & BERMAN LLP**
   1401 Willow Pass Road, Suite 700
4  Concord, California 94520-7982
   Phone: 925 222 3400 ♦ Fax: 925 356 8250
5
   Attorneys for Defendants, UBER TECHNOLOGIES, INC. and RASIER, LLC
6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **IN AND FOR COUNTY OF SAN FRANCISCO**

10

11  JANE DOE, an Individual,                  Case No. CGC-19-579901  *STAY*

12          Plaintiff,                        [PROPOSED ORDER] GRANTING
                                              MOTION TO ~~DISMISS~~ BASED ON
13      v.                                    FORUM NON CONVENIENS

14  UBER TECHNOLOGIES, INC., a Delaware       **DATE:**  **January 14, 2020**
    Corporation; RASIER, LLC, a Delaware      **TIME:**  **9:30 a.m.**
15  Limited Liability Company,                **DEPT.:**  **302**

16          Defendants.                       **RESERVATION NO.: 12100114-09**

17                                            Action Filed:        October 9, 2019

18                                            Trial Date:          None Set

19

20          This action arises out of an alleged sexual assault on Plaintiff, a Texas resident represented

21  by Texas counsel, by an Uber driver, also a Texas resident, during a ride in Texas on April 27,

22  2017.  In April 2019, six months before filing the instant action, Plaintiff filed an action against the

23  driver and Uber in Texas state court, but has since voluntarily dismissed ("nonsuited") that action.

24          Texas is a suitable alternative forum because Uber is subject to the personal jurisdiction of

25  Texas courts, none of Plaintiffs' claims would be barred by the statute of limitations, and Texas can

26  provide an adequate remedy for Plaintiffs' claims.  (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744,

27  752.)

28          Texas Civil Practice & Remedies Code "section 16.0045(a) applies to a suit for personal

LEGAL:11009-0304/13749574.1

[PROPOSED ORDER] GRANTING DEFENDANTS' MOTION TO ~~DISMISS~~ *Stay*

FILED
San Francisco County Superior Court
MAR 2 4 2020
CLERK OF THE COURT
BY: _____
              Deputy Clerk

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ FAX 925 356 8250

1   injury, which includes claims for negligence. There is no language restricting this particular

2   limitations statute to certain types of personal-injury claims; hence, there is nothing in the statute to

3   indicate that the legislature intended to limit this provision to causes of action against only the

4   perpetrators of sexual assault." (*Stephanie M. v. Coptic Orthodox Patriarchate Diocese of Southern*

5   *U.S.* (2011) 362 S.W.3d 656, 659.) Although Plaintiff is correct that *Stephanie M.'s* holding was one

6   of first impression, review was denied and it has been cited with approval numerous times. (See

7   *Hernandez v. Baylor Univ.* (W.D. Tex. 2017) 274 F.Supp. 602, 623; *Doe v. Roman Catholic*

8   *Archdiocese of Galveston-Houston ex rel. Dinardo* (2012) 362 S.W.3d 803, 809-810; *Doe v.*

9   *Catholic Diocese of El Paso* (2011) 362 S.W.3d 707, 717 n.8.) In any event, Plaintiff herself filed a

10  timely action in Texas within two years of the incident.

11         As a non-California resident, Plaintiff's choice of forum is accorded "due deference," but not

12  a strong presumption. (*National Football League v. Fireman's Fund Ins. Co.* (2013) 216

13  Cal.App.4th 902, 929.)

14         The balance of private and public interest factors also favors Texas. As to the private

15  interest factors, Plaintiff's causes of action asserting negligent hiring, assault, false imprisonment,

16  fraud, and IIED liability against Defendants are based on an incident which allegedly occurred in

17  Texas. Plaintiff, a Texas resident, was allegedly sexually assaulted by an Uber driver, also a Texas

18  resident. (Compl. ¶¶ 3, 5; Plf.'s MPA ISO Opp., 3.) Most potential witnesses and documentary

19  evidence related to the incident are located in Texas. The cost and ease of obtaining access to these

20  witnesses and documents weigh in favor of Texas as a forum. Furthermore, those non-resident

21  witnesses probably would not be subject to compulsory attendance to testify at trial in

22  California. (See *Stangvik v. Shiley Inc.*, 54 Cal.3d at 751 [the private interest factors are those that

23  make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive,

24  such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the

25  availability of compulsory process for attendance of unwilling witnesses]; *Toyota Motor Corp. v.*

26  *Superior Court* (2011) 197 Cal.App.4th 1107, 1118.) That Mr. Hanna has pled the Fifth

27  Amendment does not relieve Plaintiff of the need to prove that an assault actually took place. All of

28  the potential witnesses and documentary evidence relating to that assault are in Texas, not in

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ♦ Fax 925 356 8250

[PROPOSED ORDER] GRANTING DEFENDANTS' MOTION TO ~~DISMISS~~ *stay*

California.

 As for the public factors, Texas has a strong interest in the protection of its citizens from sexual assault by other Texas citizens and from fraudulent misrepresentations by a corporation operating in Texas. As a party, Uber would still be subject to discovery in Texas. In contrast, California has no significant interest in adjudicating an incident that occurred between Texas residents, and only a minimal interest in the out-of-state conduct of companies that happen to have their principal corporate headquarters in California. (See, e.g., *Doe v. Uber Technologies, Inc.* (N.D. Cal. May 31, 2017) 2017 WL 2352032 [granting motion to transfer venue of tort suit against Uber based upon alleged sexual assault perpetrated against plaintiff by Uber driver in Minnesota, where the majority of the evidence and key third party witnesses are in Minnesota and Minnesota's local interest in deciding the controversy is substantially stronger than California's].) Neither the enactment of Cal. Code of Civ. Proc. § 340.16 nor of AB 5, which did not become effective until January 1, 2019 and January 1, 2020, respectively, establishes that California has any substantial interest in such a dispute involving primarily non-California residents and arises out of an incident that took place in a different state.

 At this time, the California action is ordered stayed. Should Plaintiff re-file in Texas, and if Texas is shown to be a suitable forum in regard to statutes of limitations, the Court will dismiss this case. The Court likewise will dismiss this case if Plaintiff does not re-file in Texas within 30 days of notice of entry of this Order. If, however, Plaintiff re-files in Texas and faces a statutes-of-limitations bar, Plaintiff may move to lift the stay, and the Court will then determine whether this case should be dismissed based on Plaintiff's voluntary dismissal of her previously filed Texas case.

**IT IS SO ORDERED.**

DATED: *Mar. 24, 2020*

_____
JUDGE OF THE SUPERIOR COURT
ETHAN P. SCHULMAN

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
1401 WILLOW PASS ROAD, SUITE 700
CONCORD, CALIFORNIA 94520-7982
TELEPHONE 925 222 3400 ● FAX 925 356 8250

[PROPOSED ORDER] GRANTING DEFENDANTS' MOTION TO ~~DISMISS~~ *stay*

# Exhibit 6

Proposed Order
for Defendant Uber
Technologies, Inc.

**FILED**
San Francisco County Superior Court

JUL  1 2019

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| BRIAN GORNE and ADRIENNE WALKER, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> UBER TECHNOLOGIES, INC., a Delaware ) Corporation, AND THE FIRST DOE ) THROUGH ONE HUNDRETH DOE, ) INCLUSIVE, ) <br><br> Defendants. ) <br> ) | Case No. CGC-19-575852 <br> [Complaint Filed: May 9, 2019] <br><br> [PROPOSED] ORDER GRANTING DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS BASED ON FORUM NON CONVENIENS <br><br> Date: July 1, 2019 <br> Time: 9:30 A.M. <br> Dept: 302 <br> Reservation No. 05160701-07 <br> Judge: Hon. Ethan Schulman <br> Trial Date: Not Set |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on July 1, 2019, at 8:30 a.m. in Department 302 of this

Court, Defendant UBER TECHNOLOGIES, INC.'S motion for an order dismissing the case based

on *forum non conveniens* came on regularly for hearing. All appearances are noted in the record.

/ / /

/ / /

/ / /

/ / /

1

1    After considering the motion and supporting documents and argument by counsel, the

2   Court ORDERS as follows:

3    Defendant Uber Technologies, Inc's Motion to Dismiss is GRANTED.

4    Washington is a suitable alternative forum because Uber is subject to the personal

5   jurisdiction of Washington courts, none of Plaintiffs' claims would be barred by the statute of

6   limitations, and Washington can provide an adequate remedy for Plaintiffs' claims. (*Stangvik v.*

7   *Shiley Inc.* (1991) 54 Cal.3d 744, 752; Boaz v. Boyle & Co. (1995) 40 Cal.App.4th 700, 710.)

8   ~~Plaintiff, Gorne's jurisdictional ties to California are irrelevant~~. As a non-California resident, ~~his~~

9   choice of forum is accorded "due deference," but not a strong presumption. (*National Football*

10  *League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 929.)

11   The balance of private and public interest factors favor Washington. As to the private

12  interest factors, all of Plaintiffs' causes of action asserting direct and vicarious liability against

13  Uber are based on an incident which allegedly occurred in Washington. Mr. Gorne, a Washington

14  resident, was allegedly assaulted by an Uber driver, also a Washington resident, who received a

15  license as a rideshare driver in Washington, and who contracted with Uber's subsidiary in

16  Washington. (Gorne Decl. 3; Holdsworth Decl. 4, 6). Most potential witnesses and documentary

17  evidence related to the incident and the treatment of Mr. Gorne's injuries are located in

18  Washington. The cost and ease of obtaining access to these witnesses and documents weigh in

19  favor of Washington as a forum. Furthermore, those non-resident witnesses probably would not be

20  subject to compulsory attendance to testify at trial in California. (See *Stangvik v. Shiley Inc.*, *supra*,

21  54 Cal.3d at 751 [the private interest factors are those that make trial and the enforceability of the

22  ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of

23  proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for

24  attendance of unwilling witnesses]; *Toyota Motor Corp. v. Superior Court* (2011) 197 Cal.App.4th

25  1107, 1118.) While Mr. Gorne identifies two blogs on Uber's webpage written by former

26  executives of Uber as statements constituting some of the alleged misrepresentations by Uber, it

27  appears undisputed that they are attributable to Uber, and the persons that wrote them on Uber's

28  behalf are not material witnesses to disputed facts.

1   As for the public factors, Washington has a strong interest in the protection of its citizens

2 from assault and battery by other Washington citizens and from fraudulent misrepresentations by a

3 corporation operating in Washington. Washington also has an interest in ensuring that Uber and

4 Uber drivers comply with local rules and regulations in conducting business in Washington. In

5 contrast, California has no significant interest in adjudicating an incident that occurred between

6 Washington residents and involves Uber's compliance with Washington regulations, and only a

7 minimal interest in the out-of-state conduct of companies that happen to have their principal

8 corporate headquarters in California. (See, e.g., *Doe v. Uber Technologies, Inc.* (N.D. Cal. May 31,

9 2017) 2017 WL 2352032 [granting motion to transfer venue of tort suit against Uber based upon

10 alleged sexual assault perpetrated against plaintiff by Uber driver in Minnesota, where the majority

11 of the evidence and key third party witnesses are in Minnesota and Minnesota's local interest in

12 deciding the controversy is substantially stronger than California's].)

13

14   **IT IS SO ORDERED.**

15

16

17

18 Dated:

19             JUDGE OF THE SUPERIOR COURT

20              ETHAN P. SCHULMAN

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS BASED ON
FORUM NON CONVENIENS