[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**<br><br>This Document Relates to:<br><br>All Cases | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' MOTION TO ENFORCE PTO NO. 5 RELATED TO GOVERNMENT INVESTIGATION DOCUMENTS**<br><br>Judge: Honorable Lisa Cisneros<br>Date: February 22, 2024 or at the Court's earliest convenience<br>Time: 3:00 pm<br>Via Zoom Videoconference |

Plaintiffs respectfully request that the Court order Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively "Uber") to comply with PTO No. 5 (Dtk. 175) as set forth below.

## I.     INTRODUCTION

This Court ordered Uber to produce "*all documents* Defendants produced to legislative, regulatory, or enforcement entities in connection with government investigations or inquiries of Uber within the United States with respect to sexual assault, including attempted assaults…and any associated privilege logs." PTO No. 5 (Dkt. 175) (emphasis added). Uber was to make "rolling productions" and endeavor to complete production by January 31, 2024.  *Id*.

Uber did not comply. Not only did Uber fail to make rolling productions, but on January 31, 2024 (the very last day), Uber produced only five documents—four letters to Congress and a joint stipulation in an action involving the California Public Utilities Commission. *See* February 12, 2024 Declaration of Sarah R. London ("London Decl.") at ¶ 5, attached hereto as Exhibit A. A week after the deadline, on February 8, 2024, and only after Plaintiffs expressed grave concern over Uber's compliance with PTO No. 5, Uber produced a letter it sent to the Massachusetts Department of Public Utilities and an assortment of apparently publicly available documents. *Id*. at ¶ 7. Despite the February 8 supplemental production, Uber's compliance with PTO No. 5 Paragraph 6(B) remains woefully deficient in three important ways.

First, Uber did not produce all documents they produced to the CPUC. The one document they did produce here indicates a slew of other documents were produced to the CPUC. *Id.* at ¶ 5; UBER-MDL-3084-000000323-358, attached as Ex. A-2 to London Decl. Indeed, Uber's separate production related to the Massachusetts Department of Public Works includes a copy of Uber's redline comments to proposed findings of fact and conclusions of law Uber filed in the CPCU. UBER-MDL-3084-000000359-614 at UBER-MDL-3084-000000589-614, attached as Ex. A-4 to London Decl.

Second, Uber did not and will not confirm that it has produced here all documents it has produced in response to all of the other governmental investigations of Uber related to sexual assault. Uber's counsel represented to the Court that there have been (unsurprisingly) numerous

governmental investigations regarding Uber and sexual assault. Based on the sparse documents received, the lack of information from Uber about the complete scope of governmental inquiries, and Uber's representation that it intends to continuing rolling productions without any clear end-date, Plaintiffs are left totally in the dark about whether, if and when Uber will comply with PTO No. 5.

Third, Uber's productions did not include privilege logs or any mention thereof. *Id.* at ¶¶ 5, 7.

To ensure compliance, Plaintiffs' respectfully request the Court order Uber to immediately: (1) produce here all documents, data, and materials produced to the CPUC relating to its inquiry into sexual assault; (2) disclose to Plaintiffs all government investigations or inquiries of Uber within the United States with respect to sexual assault, including attempted assaults; (3) confirm whether or not Uber produced any documents in those proceedings; (4) produce all documents produced in those proceedings; and (5) certify under oath that Uber has fully complied with Paragraph 6(B) of PTO No. 5.

## II. FACTS

On December 6, 2023, the Court ordered the parties to submit a proposed pretrial order regarding discovery, and if they could not agree on one, to submit their own proposals with a memorandum explaining why the Court should adopt that party's proposal. PTO No. 4 at 6 (Dkt. 152). After extensive meet and confers, the parties reached an impasse, and both sides submitted to the Court their separate proposals and memoranda explaining their positions. Dkts. 168; 171.

Consistent with other MDLs in this District, Plaintiffs proposed that discovery of the following categories of documents should begin immediately: (1) any discovery produced in any other rideshare sexual assault case (except private identifying information); and (2) any documents produced to any legislative or regulatory entity that has investigated Uber regarding sexual assault (collectively, "Off-the-Shelf" productions). Dkts. 168 at 4; 168-1 at 2-3.

During these extensive meet and confers, Uber made no meaningful argument as to why such discovery cannot or should not take place here, nor did they propose any limitations to this specific discovery. *See* London Decl. ¶ 3; Dkt. 168 at 4. In their memoranda to this Court, Uber

did not object to Plaintiffs' "off-the-shelf" proposals, nor did they seek to clarify or modify or narrow the scope—they just ignored it. Dkt. 171.

On December 28, 2023, this Court issued PTO No. 5, ordering in relevant part that Uber produce, by January 31, 2024, "all documents Defendants produced to legislative, regulatory, or enforcement entities in connection with government investigations or inquiries of Uber within the United States with respect to sexual assault, including attempted assaults…and any associated privilege logs."[1] The Order further requires that "[t]he disclosures should encompass investigations and inquiries pertaining to alleged individual incidents, as well as those pertaining to alleged systemic failures to address patterns of sexual assault against passengers."

Uber did not seek reconsideration of or relief from this Order, or otherwise approach the Court regarding its scope. Instead, on January 15, 2024, Uber represented to Plaintiffs and the Court that "Uber is promptly preparing its production of 'Government Documents' and 'Other Case Documents,' and is endeavoring to complete those productions by January 31, 2024 and February 8, 2024, respectively, as set forth in PTO No. 5." Dkt. 207 at 6. Uber's counsel reaffirmed this at the January 19, 2024 Case Management Conference. *See* Transcript of January 19, 2024 Case Manatement Conference, attached as Ex. A-1 to London Decl. ("As you know, PTO No. 5 required us to produce by -- I believe it was a substantial completion date of January 31st for documents that Uber had produced to government entities in connection with investigations of sexual assaults. We are moving forward apace with that and are collecting documents. We will be producing documents on a rolling basis and endeavoring to complete production by that January 31st deadline").

When asked about the scope of this production, Uber's Counsel reported that there were "a number of jurisdictions that have conducted some level of investigation of Uber and on issues related to these, so the number of jurisdictions is not, you know, one or two, it's more than that." *Id.* at 13. Counsel also indicated "the number of documents produced in each jurisdiction will

---

[1] The order excepted the production of investigations or inquiries conducted pursuant to grand jury subpoena. (Dkt. 175 at 4).

vary widely." *Id.* In describing the types of material, counsel reported, "There's more in the nature of things along the lines of statistics or data." *Id.*

On January 31, Uber produced five documents totaling 62 pages, related to four governmental entities. This production consisted of letters to three congressmen and a joint motion for a settlement agreement filed before the CPUC. *See* London Decl. ¶ 5. Notably, contrary to Uber's representations to the Court on January 19, none of these documents were "data or statistics" that Uber produced to the requesting entity, nor was there any "wide variation" by jurisdiction in the number of documents Uber produced. London Decl. Ex. A-1, Tr. 1/19/24 CMC, at 12. Instead, Uber produced a single document for each entity—with the exception of two letters to Senator Blumenthal. *See* London Decl. ¶ 5. Further, the production did not include any privilege logs. *Id*. Additionally, although the documents produced are all in the public domain, Uber marked each page of the production as "confidential." *Id*. Uber then removed the confidentiality designation and re-produced the documents on February 2, 2024, but only after Plaintiffs objected to the "confidential" designations. *Id*.

Among the documents produced is a Settlement Agreement between the CPUC, Uber, and RAINN related to fines and penalties imposed on Uber for its refusal to produce data and information to the Commission, and a motion to adopt such agreement. *Id*.; London Decl. Ex. A-2, UBER-MDL-3084-000000323-358. This document indicates that Uber has produced internal policies, procedures, practices, and data pertaining to the reporting and investigation of sexual assault and sexual misconduct to the CPUC. *See* London Decl. ¶ 5; London Decl. Ex. A-2, UBER-MDL-3084-000000323-358, at UBER-MDL3084-000000331 ("To set the foundation for negotiation and to provide a glimpse into Uber's practices, in the confines of the confidential mediation, Uber shared its internal policies, procedures, practices, and data pertaining to the reporting and investigation of sexual assault and sexual misconduct."). It also indicates that Uber has provided and continues to provide information and data related to sexual assault. *See* London Decl. Ex. A-2 at UBER-MDL3084-000000333; UBER-MDL3084-000000347-52. None of these materials were produced to Plaintiffs here, nor was any privilege log produced. *See* London Decl. ¶ 5.

On February 7, 2024, the parties met and conferred regarding Uber's insufficient governmental related document production and its failure to abide by PTO No. 5. *Id*. ¶ 6. Uber's counsel did not identify any additional investigations on the meet and confer, but instead insisted that Plaintiffs' counsel provide a list to Uber all governmental investigations they have discovered through publicly available information. *Id*. As Plaintiffs' counsel pointed out on the meet and confer, Uber is unquestionably best positioned to identify all governmental investigations or inquiries of the company related to sexual assault that occurred to date. *Id*. Uber's counsel stated it would provide additional supplemental information regarding governmental investigations by February 9. *Id*.

On February 8, 2024, Uber produced an additional set of documents. *Id*. ¶ 7. Uber's production cover letter accompanying that production is unclear as to whether the production was intended to be a supplement to their January 31/February 2 productions under Paragraph 6(B) of PTO No. 5, or if it was intended to be responsive to Paragraph 6(C) of PTO No. 5, which required Uber to produce documents related to all other Uber sexual assault cases and cases about the Safe Rides Fee. *See* Uber February 8, 2024 Cover Letter, attached as Ex. A-3 to London Decl. While the documents covered 930 pages, hundreds of those pages were the Raliance Report, Uber's 2019 and 2021 Safety Reports, the CPUC taxonomy, and various Uber public documents such as their Community Guidelines, Technology Services Agreement, Terms of Use Agreement, Platform Access Agreement, Privacy Policy, Non-discrimination Policy, and Service Animal Policy. London Decl. ¶ 7. Only *one* of these documents was clearly related to an inquiry by a governmental entity—the Massachusetts Department of Public Utilities. *Id*. It is impossible to determine what, if any, governmental investigation the remaining documents were purportedly produced to.[2]

### III.  ARGUMENT

Uber has ignored the Court's order to produce "*all documents* Defendants produced to legislative, regulatory, or enforcement entities in connection with government investigations or

---

[2] This underscores the reason for Plaintiffs' inclusion of a paragraph in the forthcoming ESI Protocol, which requires Uber to produce a production log with each production that includes relevant information about the production, among other things.

inquiries of Uber within the United States with respect to sexual assault, including attempted assaults…and any associated privilege logs." (ECF No. 175 at 3-4) (emphasis added). Uber has neither produced documents from <u>all</u> investigations, nor has it produced <u>all</u> documents from the investigations that it did identify in its productions. Further, Uber has not produced any privilege logs, nor confirmed that there are no privilege logs to produce.

Uber has not identified to Plaintiffs any additional documents that it intends to produce, has not committed to produce any additional responsive documents, nor has it sought additional time to look for or produce responsive documents. <u>However, even if it had, the time to do so was *before* January 31, 2024. The Court did not order a rolling production to begin on January 31, 2024; it ordered a rolling production to be *completed by* that date.</u>

Compliance with Court orders is not optional. Rather, litigants have an "unflagging duty to comply with clearly communicated case-management orders . . ." *Martin Fam. Tr. v. Heco/Nostalgia Enters. Co.*, 186 F.R.D. 601, 604 (E.D. Cal. 1999) (quoting *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998). Orders are not suggestions or recommendations. They are directives with which compliance is mandatory. *See Chapman v. Pacific Tel. & Tel. Co.*, 613 F.2d 193, 197 (9th Cir.1979). "Calendars are simply too crowded for parties to treat scheduling orders as optional and to submit required court filings at their own convenience." *Martin Fam. Tr.*, 186 F.R.D. at 603.

**1. Uber Must Immediately Produce All Documents It Produced To The CPUC.**

As described above, Uber's productions identify numerous documents that it produced to the CPUC which have not been re-produced here. Instead, Uber only produced a single document related to the CPUC's investigation—a publicly available settlement agreement. Accordingly, Uber should be required to immediately produce all documents it provided to the CPUC regarding the CPUC's investigation of sexual assault.

**2. Uber Must Identify All Governmental Investigations Related To Sexual Assault Or Attempted Sexual Assault And Immediately Produce All Documents Uber Produced To The Investigating Entities.**

Uber represented to the Court that there have been not just "one or two" governmental investigations of sexual assault associated with Uber, yet "one or two" is essentially the breadth

of the investigations identified by Uber's document production here. *See* London Decl. Ex. A-1, Tr. 1/19/24 CMC, at 12. Further, although Uber indicated to the Court that the "the number of documents produced in each jurisdiction will vary widely," the depth of Uber's production does not track that representation. *Id*. Per Uber's production to date, it has identified single letters sent to two congressmen, two letters sent to another congressman, a single filing in the CPUC case, and a letter and four publicly available documents provided to the Massachusetts Department of Public Utilities.

Although public reports indicate numerous governmental investigations regarding sexual assault and Uber, Uber is unarguably best positioned to identify all governmental investigations or inquiries of the company related to sexual assault that occurred to date and has been ordered by the Court to do so. London Decl. ¶¶ 6, 8. Plaintiffs ask the Court to order, again, that Uber immediately comply with PTO No. 5 and identify all governmental investigations regarding Uber and sexual assault or attempted sexual assault and immediately produce to Plaintiffs all documents it produced to those entities, including not just discovery productions, but also correspondence and privilege logs.

### 3. Certification Of Compliance.

To avoid further disputes and to preserve the parties' and the Court's time and resources, Plaintiffs request that Uber be ordered to provide a certification of compliance under oath, confirming that it has fully complied with PTO No. 5 and any Court order regarding this Motion. Such a certification is reasonable and appropriate where, as here, there has been a history of failure to produce documents pursuant to a court order, including orders in related litigations, and the Court has repeatedly stated that it intends to move this litigation along expeditiously. *See, e.g.*, *Stollings v. Ryobi Techs., Inc.*, No. 3:14-mc-00239-SI, 2014 WL 12964130, at *4 (D. Or. July 21, 2014) (finding an affidavit of completeness reasonable and appropriate given discovery disputes); *Deitrick v. Costa*, No. 06-cv-1556, 2019 WL 6717839, at *2 (M.D. Pa. Dec. 10, 2019) (ordering affidavit of completeness); *Parvati Corp. v. City of Oak Forest*, No. 08-cv-702, 2010 WL 3365911, at *1 (N.D. Ill. Aug. 23, 2010) (same); Transcript of the November 3, 2023 Case Management Conference at pp. 9, 13 (emphasizing that this litigation will move quickly),

attached as Ex. A-7 to London Decl.; Transcript of the January 8, 2024 Hearing before Magistrate Judge Lisa J. Cisneros at pp. 14-15 (reiterating Judge Breyer's expectation that this litigation move quickly), attached as Ex. A-8 to London Decl.

This is Plaintiffs' *second* motion to enforce this Court's orders and is unfortunately a continuing pattern for Uber. *See, e.g.*, *Richards et al v. Uber LLC, et al*, Superior Court, King County, Washington, No. 19-2-16858-7 (Mar. 11, 2020) (sanctioning Uber $70,000.00 "for the pattern of violating discovery rules and this Court's prior discovery orders"), attached as Exhibit A-6 to London Decl.

Uber's continuing refusal to abide by this Court's orders is prejudicial and imposes undue burden on Plaintiffs who must continually return to the Court to enforce orders. The Court has set clear expectations that this case will move quickly, and Uber's failures to timely comply with discovery orders will needlessly delay these proceedings.

### 4. Plaintiffs' Motion Is Ripe Notwithstanding Uber's Request To Continue Meeting And Conferring And Vague Promise To Make Additional Productions.

On February 8, 2024, Uber sent Plaintiffs correspondence stating, among other things, that Uber is still "searching" for responsive documents that it will produce on a rolling basis, without any definitive production date, failing to list all government investigations into sexual assault, and asking for additional meet and confers, claiming "there is no impasse on which [Plaintiffs' Motion to Enforce PTO No. 5] could be based." Uber's February 8. 2024 Meet & Confer letter, attached as Ex. A-5 to London Decl.  But this is not a discovery dispute—Uber was ordered to produce "all documents" on this topic and they failed to do so. They did not seek relief from PTO No. 5, nor did they seek an extension from Plaintiffs.  They simply ignored this Court's order and did not produce any additional information or documents until Plaintiffs raised Uber's failure to comply with PTO No. 5 directly with Uber. Despite their supplemental production, Uber still has not fully complied with PTO No. 5. Accordingly, Plaintiffs' motion is ripe for adjudication.

### IV. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court order Uber to fully comply with PTO No. 5 and within seven (7) days: (1) produce here all documents, data,

and materials produced to the CPUC relating to its inquiry into sexual assault; (2) disclose to Plaintiffs all government investigations or inquiries of Uber within the United States with respect to sexual assault, including attempted assaults; (3) confirm whether or not Uber produced any documents in those proceedings; (4) produce all documents produced in those proceedings; (5) certify under oath that Uber has fully complied with Paragraph 6(B) of PTO No. 5; and (6) order any other relief this Court deems appropriate under the circumstances.

Dated: February 12, 2024

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ Sarah London