# EXHIBIT A-1

Pages 1 - 37

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer

In Re UBER TECHNOLOGIES, INC.  )
PASSENGER SEXUAL ASSAULT       )
LITIGATION,                    )
                               )   NO. 3:23-md-03084 CRB
_____)

San Francisco, California
Friday, January 19, 2024

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:

        LIEFF, CABRASER, HEIMANN & BERNSTEIN
        275 Battery Street - 29th Floor
        San Francisco, California  94111
BY:  **SARAH R. LONDON**
      **ATTORNEY AT LAW**

        CHAFFIN, LUHANA, LLP
        600 Third Avenue, 12th Floor
        New York, NY 10016
BY:  **ROOPAL PREMCHAND LUHANA**
      **ATTORNEY AT LAW**

        PEIFFER WOLF CARR KANE CONWAY & WISE LLP
        555 Montgomery Street, Ste. 820
        San Francisco, CA 94111
BY:  **RACHEL BETH ABRAMS**
      **ATTORNEY AT LAW**

REPORTED BY:  Rhonda L. Aquilina, RMR, CRR, CRC
              CSR No. 9956, Official United States Reporter

```
 1   APPEARANCES cont'd.

 2   For Plaintiffs:
                               WALKUP, MELODIA, KELLY & ECHEVERRIA
 3                             650 California Street, 26th Floor
                               San Francisco, CA 94108-2702
 4                     BY:     KHALDOUN A. BAGHDADI
                               ATTORNEY AT LAW
 5
     For Defendants:
 6                             PAUL WEISS RIFKIND WHARTON GARRISON LLP
                               2001 K Street NW Washington D.C.
 7                             Washington, DC 20005
                       BY:     JESSICA E. PHILLIPS
 8                             KYLE SMITH
                               ATTORNEYS AT LAW
 9
                               PAUL WEISS RIFKIND WHARTON GARRISON LLP
10                             1285 Avenue of the Americas
                               New York, NY 10019
11                     BY:     ROBERT A. ATKINS
                               ATTORNEY AT LAW
12
                               PAUL WEISS RIFKIND WHARTON GARRISON LLP
13                             535 Mission Street, 24th Floor
                               San Francisco, CA 94105
14                     BY:     RANDALL SCOTT LUSKEY
                               ATTORNEY AT LAW
15

16   Also present:  Magistrate Judge Cisneros

17

18

19

20

21

22

23

24

25
```

UNITED STATES COURT REPORTERS

| | |
|---|---|
| 1 | **Friday - January 19, 2024**                    **10:16 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:**  Calling civil action C-23-3084, In Re Uber |
| 5 | Technologies, Inc. Passenger Sexual Assault Litigation. |
| 6 | Counsel, please step forward and state your |
| 7 | appearances for the record. |
| 8 | **MS. LONDON:**  Good morning, Your Honor.  Sarah London |
| 9 | on behalf of the plaintiffs. |
| 10 | **THE COURT:**  Good morning. |
| 11 | **MS. LUHANA:**  Good morning, Your Honor.  Roopal Luhana |
| 12 | on behalf of the plaintiffs. |
| 13 | **THE COURT:**  Good morning. |
| 14 | **MS. ABRAMS:**  Good morning, Your Honor.  Rachel Abrams |
| 15 | on behalf of the plaintiffs. |
| 16 | **THE COURT:**  Good morning. |
| 17 | **MR. BAGHDADI:**  Good morning, sir.  Khaldoun Baghdadi |
| 18 | on behalf of the plaintiffs. |
| 19 | **THE COURT:**  Fine.  Thank you. |
| 20 | **MS. PHILLIPS:**  Good morning, Your Honor.  Jessica |
| 21 | Phillips on behalf of the Uber defendants. |
| 22 | **MR. ATKINS:**  Good morning, Your Honor.  Robert Atkins |
| 23 | also for Uber. |
| 24 | **THE COURT:**  Okay.  And introduce all the people.  I |
| 25 | want to know all the people who are here. |

**UNITED STATES COURT REPORTERS**

```
 1              MR. ATKINS:  Counsels, you need to introduce yourself.

 2              THE COURT:  My experience is that they do all the

 3    work, you see.  That's my experience.

 4                          (Laughter)

 5              MR. ATKINS:  Stipulated.

 6                          (Laughter)

 7              MR. SMITH:  Kyle Smith for the Uber defendants, and

 8    also with us is Randy Luskey for the Uber defendants.

 9              THE COURT:  Okay.  We have some other people here.

10              MR. SMITH:  I'm sorry, Your Honor.  We have our

11    clients Lauren Shapiro and Suzanne Borg from Uber.

12              THE COURT:  Good morning.  Welcome.  Thank you.

13              So thank you very much, everybody, for attending.

14              This is a status conference.  I received the joint

15    submission.  It raises a couple of issues, which I think we can

16    go through and discuss, and then in the course of which I think

17    you can update me as to what's happening.  I think a lot is

18    happening.  My sense is a lot is happening, at least I told you

19    people to do a lot of things.

20                          (Laughter)

21              THE COURT:  Whether I was reasonable or not is another

22    issue, but I'm sure you've been fully engaged in this process.

23    So even though we haven't had a status conference since

24    November, is that right -- November 3rd, if I recall

25    correctly -- I think a lot of things have been done in
```

1   connection with the case, and I appreciate the efforts, and I

2   think they've been substantial by both sides in moving the case

3   along and complying with the Court's schedule.

4          So the first issue -- maybe I'll go through my list

5   and then you can go through your list if I haven't addressed

6   it.

7          The request that I set a cutoff date for the filing of

8   new complaints, and I'm sure the parties recall that this is

9   not the first time I addressed the issue, I did before, and I

10  don't think it has changed.  That is to say, I am reluctant --

11  when I say I'm reluctant, I'm going to say I won't, to set a

12  cutoff date now for the filing of new complaints.

13          I think -- and I don't know whether it's part of the

14  strategy or what it is or people have been too busy, because we

15  hear, we hear that there are many cases in the wings awaiting

16  filing.  We know that in the MDL in front of me there are

17  approximately 200 plus cases presently filed, and 200 is a big

18  number anyway.  I mean, it's a number.  I'm not sure whether

19  it's a big number or not.  It's a number of cases that, you

20  know, that deserve serious attention.

21          MDLs sometimes are made up of two or three cases, but

22  that doesn't -- that's not the answer to the question.  In this

23  case in this MDL we anticipate more cases to be filed.  I think

24  what I really want to do is await the filing of the master

25  complaint and then have a discussion about the response,

```
1    because I know that that's another thing that I'll get into,

2    which is the motions to dismiss, and so forth, and figure that

3    out.  And if, in connection with it, we can address again the

4    issue of filing, of a cutoff filing.

5              But the purpose of an MDL, among other things, is to

6    bring all the cases that appropriately are in front of me or it

7    should be appropriately in front of the MDL, it should be to

8    have them brought into the case so that there is global

9    treatment of the pretrial matters that any MDL Judge should

10   address.

11             And yes, indeed, numbers matter.  Numbers matter for a

12   lot of reasons.  Numbers matter because they disclose the scope

13   of the issues, the scope of the problem, the scope of

14   liability, and if liability, the scope of the liability, and

15   sometimes they do introduce some idiosyncratic issues.  But of

16   course with respect to separate issues, idiosyncratic to

17   perhaps a few cases and so forth, the Court is always able to,

18   as they would in any class action, but this isn't one, able to

19   have subclasses, subgroups, and so forth and so on.  But it

20   makes sense to have all of that in the context of the larger

21   problem.

22             And so I'm going to -- I'm going to thank you for

23   raising it again, and say not now, but I think you're entitled

24   to it at some point.  And I think -- and usually I don't get a

25   fight on this, interestingly enough, because, you know, you
```

```
 1    want something that's manageable, and you want to know the
 2    scope of the problem, for the reasons I've stated.
 3              Okay.  Let me turn to the second one.  The motion to
 4    stay, I understand it's fully briefed, and it is set for
 5    hearing on next Friday.  Now, I'm not here next Friday, which
 6    presents a small issue, since I'm the one who has to decide it,
 7    so I was going to simply continue it to the following Friday,
 8    which is February 2nd.  Does anybody have a problem with that?
 9              MR. ATKINS:  I think that works, because we're in town
10    in the JCCP.
11              THE COURT:  Great.
12              MR. ATKINS:  It's in the afternoon.  So maybe if your
13    calendar permits --
14              THE COURT:  Oh, sorry, your state thing is in the
15    afternoon?
16              MR. ATKINS:  Yes.
17              THE COURT:  Well, we'll do ours in the morning.
18              MR. ATKINS:  Perfect.
19              THE COURT:  And I don't think that -- I mean, I want
20    to give the parties ample time to address it, and I'll have
21    questions, and so forth, about it.  But, you know, this is not
22    an all-day hearing, which would be like a *de facto* stay, so
23    we'll address it in the morning.  Maybe we ought to do it at
24    11:00 o'clock.
25              Do I have other matters on for the 2nd?
```

1      **THE CLERK:**  Yes, on the 2nd, *In Re McKinsey*.

2      **THE COURT:**  I have *McKinsey*?

3      **THE CLERK:**  Yes.

4      **THE COURT:**  And that actually will take some time.

5      **THE CLERK:**  Yes.

6      **THE COURT:**  So let's do Uber at 11:00.  *McKinsey* at

7   10:00, Uber at 11:00; does that work for everybody?

8      **MR. ATKINS:**  Yeah, I was just conferring.  The JCCP is

9   at 1:30.

10      **THE COURT:**  Okay.  Well, I guarantee you, that's fine.

11      Okay.  Now I'd like to get some report on where we

12   stand with discovery.  And question number one, whether the

13   production of preservation information by Uber as ordered by

14   Judge Cisneros is complete.

15      **MS. LUHANA:**  Judge, Roopal Luhana.  As you're aware,

16   Judge, Judge Cisneros ordered that Uber produce litigation hold

17   information and some ESI information by January 16th.  However,

18   we are really concerned, because they haven't complied with

19   Judge Cisneros' order in terms of the things that she's asked

20   for in that order.  And so we sent an email this morning

21   notifying of them of that and asking for an immediate meet and

22   confer.

23      **THE COURT:**  Okay.  Well, Judge Cisneros has a criminal

24   calendar, otherwise she'd be here.  She may come in later, and

25   let's have a discussion on that as well.

1          You'd like to respond, of course.

2          **MS. PHILLIPS:**  If I may.

3          **THE COURT:**  Of course, of course, everybody can

4    respond.

5          **MS. PHILLIPS:**  Thank you so much.  Again, Jessica

6    Phillips on behalf of the Uber defendants.

7          Your Honor, to respond, we did comply with Judge

8    Cisneros' order.  We made what we believe to be a fully

9    compliant production of a rather large amount of material in a

10   relatively short period of time on January 16th.  As

11   plaintiffs' counsel just represented, we did receive their

12   communication this morning and are, of course, happy to review

13   that and meet and confer with them.  But we do believe that

14   we've been fully transparent with what we've done, and are in

15   full compliance with Judge Cisneros' order.

16         **THE COURT:**  Okay.  So what I think -- rather than

17   getting into a debate here, if Judge Cisneros shows up this

18   morning, if she can get through her criminal calendar, we can

19   have a discussion with her as to timing, because everybody is

20   here, and it's extremely important that these orders are

21   complied with.  Now, obviously there may be a difference of

22   opinion, and that's something that is not unique in the annals

23   of litigation production.

24         Okay.  So next question.

25         **MR. LUHANA:**  Thank you.

```
 1              THE COURT:  There is a pretrial order governing
 2   privileged materials; is that being drafted now?
 3              MS. LONDON:  Good morning, Your Honor.  Sarah London.
 4              Yes, we have been exchanging drafts of proposed order,
 5   a PTO that would govern the timing of privileged logging,
 6   clawbacks, and the like.
 7              THE COURT:  And is that moving ahead with speed?
 8              MS. LONDON:  Yes, although unsurprisingly the parties
 9   have different views that we are working through to try to
10   narrow those issues.  I believe we've stipulated we will be
11   submitting most likely competing versions and a supporting
12   brief by January 24th.
13              THE COURT:  By January --
14              MS. LONDON:  24th.
15              THE COURT:  Okay.  That's fine.  Thank you.
16              As well as I understand the discovery and the fact
17   sheets, and so forth, are going to be submitted by the 24th; is
18   that part of the submission?
19              MS. LONDON:  Yes, Your Honor.  On that, we have been
20   working very hard to address issues in both the plaintiff fact
21   sheet and the defense fact sheet as well as the implementation
22   order governing that.  And, you know, I am hopeful that we will
23   narrow the issues, but I suspect we will have competing
24   versions in this as well.
25              And we would ask Your Honor for permission to file a
```

```
1    separate brief, you know, 10 pages each on each of the
2    plaintiff fact sheet and the defense fact sheet.  I think
3    there's going to be enough issues that we might need a little
4    more space.  If we don't need it, we will not use it.
5              THE COURT:  Okay.  Well, it's granted.
6              MS. PHILLIPS:  Great.  I was going to say we
7    wholeheartedly agree.
8              THE COURT:  Yeah.  Okay.  Fine.  You see all the
9    common ground.
10                          (Laughter)
11             MS. LONDON:  Yes.
12             THE COURT:  Okay.  That's fine.
13             The protocol, the ESI protocol, and that's
14   February 4th, that's moving apace, yes?
15             MR. LUHANA:  Yes, Judge.  Roopal Luhana.
16             We've submitted a draft ESI protocol to the
17   defendants, and we will likely be meeting and conferring with
18   them next week, and the intention is to submit competing
19   proposals if we were unable to come to an agreement on
20   February 4th.
21             THE COURT:  Okay.  That's great.
22             Now, we ordered what we call off-the-shelf production
23   of information that you've already provided.  How has that
24   gone?
25             MS. LONDON:  Your Honor, I would ask Uber to give a
```

```
 1    report on that.  It's in their hands.  We haven't yet received
 2    them.
 3             THE COURT:  Okay.
 4             MS. PHILLIPS:  If I may, Your Honor.
 5             THE COURT:  Yeah.
 6             MS. PHILLIPS:  Sure.  So with regard to -- sorry,
 7    excuse me.
 8             THE COURT:  Go ahead.
 9             MS. PHILLIPS:  As you know, PTO 5 required us to
10    produce by -- I believe it was a substantial completion date of
11    January 31st for documents that Uber had produced to government
12    entities in connection with investigations of sexual assaults.
13             We are moving forward apace with that and are
14    collecting documents.  We will be producing documents on a
15    rolling basis and endeavoring to complete production by that
16    January 31st deadline, so I don't think any issues with their
17    protective order on December 28th, and we're moving forward.
18    Yes.
19             THE COURT:  Can you give me a sense of the magnitude
20    of that?  Because it struck me -- and, again, I'm not forming
21    any judgments as to whether there's any liability or whether
22    the allegations are true or not in any of these cases, but they
23    are of the type that would engender governmental interest, if
24    made.
25             So I'm trying to get a sense of are we talking
```

1   about -- are we talking about a lot of documents?  Are we

2   talking about -- and, I guess, what do I mean by a lot?  I

3   don't know what I mean by a lot, but I'm merely asking the

4   question what do you mean?

5           **MS. PHILLIPS:**  Yeah, I'll let Mr. Smith answer this

6   one.

7           **THE COURT:**  Thank you.  Go ahead.

8           **MR. SMITH:**  Thank you, Your Honor.  Kyle Smith.

9           We don't have a precise answer for Your Honor on the

10  number of documents.  There are a number of jurisdictions that

11  have conducted some level of investigation of Uber and on

12  issues related to these, so the number of jurisdictions is not,

13  you know, one or two, it's more than that.  But the number of

14  documents produced in each jurisdiction will vary widely.

15  There's more in the nature of things along the lines of

16  statistics or data.  But in terms of, you know, pulling emails

17  out of company files, and things like that, that has not been

18  the focus of those investigations, typically, so we do not

19  expect it to be voluminous in that regard.

20          **THE COURT:**  Okay.  I understand that.

21          **MS. PHILLIPS:**  Thank you.  And then if I may, Your

22  Honor --

23          **THE COURT:**  Yes.

24          **MS. PHILLIPS:**  -- there was something I wanted to

25  raise with regard to what you referred to as the other case

```
 1    documents in PTO 5.  And I think we really wanted to seek some
 2    clarification sort of on the scope of that order.
 3           Regarding documents related to Uber's policies,
 4    procedures, guidelines, I mean, those kind of documents,
 5    gathering and collection of those documents that have been
 6    produced in other cases is underway and will be produced, and
 7    we are, of course, aware of I believe it's a February 8th
 8    substantial completion date.
 9           Regarding documents about plaintiffs in these other
10    cases that are case-specific to plaintiffs, who of course are
11    not at issue here in this MDL, about independent drivers who
12    are not at issue in this MDL, and we're talking about cases
13    across the country that have -- the vast majority of which have
14    been already resolved.  Those plaintiff-specific documents are
15    the ones that we're sort of concerned about, and we really
16    didn't have an opportunity to brief this issue before Your
17    Honor.
18           The parties, of course, put in not a joint competing
19    submission, but separate parallel competing submissions, and so
20    it didn't really join issue on this in the December 21st
21    submission, about seven days before Your Honor issued PTO 5.
22           And, you know, the issue there, these case-specific
23    documents, you know, we really don't think have relevance to
24    the issues here, and they raise other concerns because of
25    confidentiality agreements, protective orders in other cases,
```

```
 1    sometimes non-disclosure agreements, depending on how those
 2    cases resolved.
 3              And, you know, so we wanted to raise this with Your
 4    Honor, again, particularly since we didn't have an opportunity
 5    to brief this in full before Your Honor.  And we do think this
 6    concern can be alleviated by reading Your Honor's order in PTO
 7    5 to be addressed to the Uber documents produced in other cases
 8    related to Uber policies, procedures, the things that would be
 9    and are relevant to the issues in this MDL.
10              (Magistrate Judge Cisneros enters courtroom.)
11         THE COURT:  Well, are you saying to me, and I want to
12    make sure I understand, are you saying as to those cases, when
13    I say cases, as to those complaints or allegations, or what
14    have you, that had been resolved?
15         MS. PHILLIPS:  Yes.
16         THE COURT:  That is, so the plaintiff in -- so that
17    they are not plaintiffs in this case?
18         MS. PHILLIPS:  Correct.
19         THE COURT:  Great.  There you are.  Good morning,
20    Judge Cisneros.  I was pointing out that you are the person who
21    is doing the criminal calendar today.
22         MAGISTRATE JUDGE CISNEROS:  Yes, I'm the duty judge
23    this morning.
24         THE COURT:  So we'll resolve the other issue in a
25    minute.  And maybe Judge Cisneros will also resolve this issue,
```

```
1    and I think it's a good idea, yeah, that's what happens when

2    you walk into a courtroom.

3                        (Laughter)

4         THE COURT:  I always make sure I'm the first person

5    there that can start things, but I just want to make sure that

6    maybe both of us get the benefit of your thought here.

7         So you believe that while the PTO 5 may, by its

8    language, encompass these types of documents, that is documents

9    from cases that have already been resolved --

10        MS. PHILLIPS:  Correct.

11        THE COURT:  -- or documents of complaints that have

12   already been resolved, they need not be produced in this

13   particular case.  And your reasoning, as I understand it, among

14   others, a lot of them out there, is that it is subject -- those

15   documents may very well be subject to protective orders,

16   non-disclosure agreements, I don't know, whatever those things

17   are, but all agreements of confidentiality, on and on and on.

18        MS. PHILLIPS:  That's part of it, certainly.  I do

19   think with regard to case-specific issues related to those

20   plaintiffs, you know, those issues are not relevant here, so I

21   think that's first and foremost.  They do raise other issues

22   because of protective orders, et cetera.

23        The other issue that I just wanted to raise is that,

24   you know, I feared that if we -- what we do, given that those

25   cases are resolved, if we produce documents that are
```

1    plaintiff-specific in these cases, if we get into the

2    substance, what we went up doing is relitigating issues that

3    have already been resolved.

4           **THE COURT:**  Well, maybe, maybe not, I don't know.  I

5    mean, I can't --

6           First of all, when you say "relitigating," some of

7    these may never have gone to full litigation, and so forth, so

8    I don't know about that.  And I don't know about the relevancy,

9    and I think the person who is the expert at it is seated to my

10   left, and she will make the decision as to how to interpret PTO

11   5.

12          But I did want to point out just one thing that you

13   said that struck me about confidentiality and disclosures, and

14   so forth.  My sense is that the confidentiality documents that

15   will be pertinent to this particular type of litigation may

16   very well include the types of documents that you are -- that

17   you are now talking about, and also -- that's number one.

18          Number two, I think that this is not -- we're not

19   talking about a voluntary production.  I mean, you know, it's

20   not like you're not perfectly nice and wouldn't volunteer

21   things, but you're being compelled by an order of the Court to

22   produce these documents, so I think that that puts

23   confidentiality issues in a very different context, especially

24   if you are able to maintain or if this Court is able to

25   maintain certain confidentially -- confidentiality

```
 1   requirements, which by the way I completely understand.  And
 2   it's not just the protection of, quote, Uber.  It's also maybe
 3   the protection of the plaintiff in any given case.
 4           So I'm not not mindful of that.  I think that it has
 5   to be -- we have to make sure that any confidentiality
 6   agreement that you've entered into pre this litigation would
 7   carefully analyze that to try to honor it where necessary in
 8   terms of its -- what the real concerns are.
 9           As to the issue of relevancy, which is your major
10   argument that you have, Judge Cisneros will do a fine job
11   looking at that, and that's where the arguments have to be
12   made.
13           MS. PHILLIPS:  Yeah.
14           THE COURT:  And we're not going to hear them today.
15   First of all, I'm not here to decide it, and, secondly, Judge
16   Cisneros is in a better situation than I am.
17           MS. PHILLIPS:  We would welcome the opportunity to
18   brief the issue.
19           THE COURT:  Great.  She'll give you that opportunity.
20   I don't know, do you want to add anything to this or do you
21   understand -- I didn't know when you came in on all of this.
22           MAGISTRATE JUDGE CISNEROS:  Not at this point.
23           THE COURT:  Okay.  All right.  You'll file something.
24   That's the way it's done, and there will be a response, and
25   then we'll deal with it on that basis.
```

1    **MS. LONDON:**  Your Honor, can I just raise one issue as

2    to timing on this one?

3        **THE COURT:**  Okay.

4        **MS. LONDON:**  So we had asked to have these documents

5    produced by February 8th so that we would have them in advance

6    of filing our master complaint.  We can see some -- we

7    certainly believe these materials are relevant.  No surprise,

8    we'll be contesting that position.  So if we can accelerate

9    this briefing process to get that resolved immediately so we're

10   not waiting to receive those documents on February 8th, only to

11   challenge their adequacy because you've withheld them or

12   something to that effect and then it will push it off schedule.

13   So I'd just like to advance this issue, if it's going to be

14   raised.

15       **THE COURT:**  I see no reason why it can't be

16   immediately addressed.

17       **MAGISTRATE JUDGE CISNEROS:**  Sure.  I'll probably set a

18   schedule for that later today.

19       **MS. LONDON:**  Great.  Thank you, Your Honor.

20       **MS. PHILLIPS:**  Thank you.

21       **THE COURT:**  Okay.  Thank you for raising it.

22       Okay.  The initial motions, Uber says it intends to

23   file a terms-of-use motion by February 9th.  That's fine.  No

24   problem with that.

25       **MR. ATKINS:**  Yes, it is, Your Honor.

```
 1              THE COURT:  Okay.  And, again, the other Rule 12
 2    motions, whatever they are, number, and so forth and so on,
 3    again, I want to reiterate that I want to await the filing of a
 4    master complaint before I look at those, before you -- because
 5    I think that's what you really want to attack.  Is there some
 6    reason why you should move ahead on that earlier than --
 7              MR. ATKINS:  No, Your Honor.
 8              THE COURT:  -- than February whatever it is, 12th?
 9              MR. ATKINS:  I think you may have set a date of
10    April 1 for the filing of motions directed at the pleadings.
11              THE COURT:  I already set the date?
12              MR. ATKINS:  If I'm not mistaken.
13              THE COURT:  Great.
14              MS. LONDON:  Yes, you did, Your Honor.  I think what
15    is to be decided is the scope, what they're going to move on,
16    and what they could reserve on moving on.  And right before the
17    conference we conferred about how I think we should confer
18    about the states they're choosing, make sure that is going to
19    actually advance the litigation, they're not picking outlier
20    states where there's only one plaintiff or something like that,
21    some states that have beneficial value for other states.
22    Obviously, we're going to have lots to do, and we can do it all
23    together.  We just want to be smart and efficient, and so the
24    states that they choose have some nexus to the most number of
25    cases or the most where plaintiffs live, if that ends up being
```

```
 1    relevant on a choice of law analysis.

 2              MR. ATKINS:  Well, I just would say that, I mean, it's

 3    our prerogative in terms of challenging pleadings against the

 4    client.

 5              On the other hand, as we set forth in the submission

 6    we gave you in advance of today, what our thinking is is to

 7    pick five or six states which cover the most number of cases,

 8    and the hope being that will help get us to a point --

 9              THE COURT:  Well, I think that makes a great deal of

10    sense, actually.

11              MR. ATKINS:  Yeah, and I think we're in agreement.

12              MS. LONDON:  Exactly.

13              THE COURT:  Yeah, I mean, you don't want to -- this is

14    not -- no one is looking for endless litigation, at least I'm

15    not, and there will be an end, at least as far as I'm

16    concerned.

17              So, sure, I mean, you obviously want to do that, and I

18    think that's entirely appropriate.

19              MR. ATKINS:  Thank you, Your Honor.

20              THE COURT:  Let's see.  Oh, well, I want to find out

21    what's happening with the JCCP.  Do we have any information on

22    that subject?

23              It's your moment in the sunshine.

24                            (Laughter)

25              MR. BAGHDADI:  That's why I'm taking my time to the
```

```
 1    podium, sir.
 2                       (Laughter)
 3          MR. BAGHDADI:  Good morning, Your Honor.
 4          THE COURT:  Good morning.
 5          MR. BAGHDADI:  Khaldoun Baghdadi.
 6          The JCCP and MDL leadership on the plaintiffs' side,
 7    we've been convening calls regularly since the formation of
 8    leadership.
 9          The next hearing at the JCCP is on February 2nd.  It
10    deals with motions to compel on discovery.  Leadership on the
11    plaintiffs' side for the MDL and the JCCP have started
12    coordinating their efforts with respect to ESI to avoid
13    duplication on how that process goes about.
14          The forum non conveniens appeal is fully briefed now.
15    We're expecting a ruling, we would anticipate, sometime in the
16    fall, and that is currently where things stand.
17          THE COURT:  Have they set -- has the court of appeals
18    set a hearing date?
19          MR. BAHGDADI:  I don't believe so as of yet.
20          MR. SMITH:  And, Your Honor, I think the reply brief
21    from the plaintiffs has not been filed yet.
22          THE COURT:  Oh, it hasn't been filed.
23          MR. SMITH:  But it's due in, I thought it was February
24    or March, but --
25          THE COURT:  Okay.  So maybe it will be decided in the
```

```
 1   fall.
 2             MR. SMITH:  That's the expectation, Your Honor.
 3             THE COURT:  I see.
 4             MR. BAHGDADI:  So that's where things stand as of now,
 5   sir.
 6             THE COURT:  All right.  And it strikes me that that
 7   could have a profound impact on the number of cases.
 8             MR. BAHGDADI:  It's really a very large indicator as
 9   to what type of caseload are we going to be dealing with here,
10   and in the meantime people are evaluating the cases that they
11   have that have gone up on appeal or those that are parked
12   elsewhere or considering where they want to commence.
13             But we remain in discussion with the plaintiffs'
14   leadership in the JCCP to find out where these cases are going
15   to be, and try to get them where they should be as soon as
16   possible, sir.
17             THE COURT:  Okay.
18             MR. SMITH:  May I address the Court, Your Honor?
19             THE COURT:  Of course.  Go ahead.
20             MR. SMITH:  As to the plaintiffs who are appealing the
21   *forum non conveniens* ruling, I believe the number is some 111
22   of them have already gone ahead and chose to refile in federal
23   court, and they -- those cases are before Your Honor.  So those
24   plaintiffs who wish to proceed in federal court have the
25   ability to file those actions, and they're before Your Honor
```

1    and while their appeal is pending in state court as well.

2          As to the issue of discovery and the JCCP, it's well

3    underway, documents are being produced, custodians are being

4    negotiated.  There was agreement on 46 custodians.  There's a

5    dispute over seven or eight of them, so the number that's going

6    to -- the parties will be proceeding with for the Uber

7    discovery will be somewhere in the order of 46 to 54, and

8    things are producing apace in that regard.

9          There are some issues over the scope of discovery that

10   will be allowable.  Judge Schulman is hearing those on February

11   2nd.  There's trial set for May of 2025 for the first of the

12   bellwether actions that Judge Schulman will be proceeding to

13   preside over, and everything is proceeding in accordance with

14   the case schedule that Judge Schulman set, calling for the

15   close of fact discovery in January of 2025.

16          **THE COURT:**  Okay.  Anything further on the JCCP?

17          **MR. BAHGDADI:**  Not at this time, sir.

18          **THE COURT:**  Great.  Okay.  Thank you.

19          I know that the parties have asked that they not have

20   to file chambers copies of documents, and the answer is it

21   depends.  You're dealing with an old fashioned judge who likes

22   to have a piece of paper in his hands while he reads them.  And

23   so, you know, what I think routine papers --

24          I'm going to leave it up to you, essentially.  I'm not

25   going to give you some ironclad rule.  I mean, if there are

```
 1   stipulations or -- and I don't know what Judge Cisneros would
 2   like to do.  We'll ask her in a minute.  But for those things,
 3   you know, that are motions of some substance, and so forth,
 4   please continue to file chambers copies.
 5          And I don't know what you would like to do.  Because
 6   Judge Cisneros is not old fashioned, you see.  She's newly
 7   fashioned.
 8                           (Laughter)
 9          THE COURT:  So what is your preference?
10          MAGISTRATE JUDGE CISNEROS:  I mean, if this were
11   summary judgment I'd want a courtesy copy, but I'm dealing with
12   discovery.  Electronic is perfectly fine.
13          THE COURT:  Ah, yes.  You see, that says it all,
14   doesn't it?
15                           (Laughter)
16          THE COURT:  Okay.  Well, I think the one thing, before
17   we leave -- are there other matters?
18          Okay.  Go ahead.  Yes, Ms. London.
19          MS. LONDON:  Thank you, Your Honor.
20          A couple of additional matters to raise.  I wanted to
21   give the Court an update on PTO 5 related to the plaintiffs'
22   obligations on the ride receipts and ride information forms.
23   We have -- plaintiffs' leadership held a webinar for all
24   plaintiffs' counsel to go over the order to come up with
25   procedures for facilitating the timely production of that
```

```
 1   information.
 2           We are pleased to report that the parties have agreed
 3   to retain Brown Greer as a vendor that will support our efforts
 4   at secure and organized exchange of information throughout the
 5   litigation through MDL centrality, and so we'll providing Your
 6   Honor with a proposed order to that effect.
 7           And I know many are watching from home, and they can
 8   rest assured that plaintiffs' leadership will provide
 9   additional information to plaintiffs about how to log in and
10   how to submit the information through MDL centrality.
11           We also wanted to raise the issue about bilateral
12   obligations of the ride receipt, understanding that PTO 5, of
13   course, talks about plaintiffs providing a bona fide ride
14   receipt and information or an explanation.  If they don't have
15   it, we're prepared to do that, and that's underway.
16           But one of the things that came up for us, as we are
17   discussing the plaintiff fact sheet and defense fact sheet, is,
18   well, if a plaintiff provides information to Uber that could
19   identify a ride, if they don't have a physical copy or an
20   electronic copy of the receipt, we would like Uber to then
21   produce that receipt, if they have it and can find it, so that
22   the plaintiffs have that in their possession while they're
23   preparing the plaintiff fact sheets.
24           That's something that we are continuing to discuss and
25   confer, but I wanted to raise that issue.  It wasn't in our
```

 1   statement.  It's something that's come out of the discussions

 2   organically but seems to make practical sense to us, but we

 3   wanted to raise the issue and put it on the Court's notice, I

 4   guess.

 5          Another issue I wanted to alert the Court, we just

 6   learned about another potential settlement special master.  We

 7   understand that Sheila Birnbaum is now going to be mediating.

 8   We've spoken with her.  She's interested and available starting

 9   in March, and so we wanted to notify the Court of just another

10   suggestion on that front.

11          And we wanted to talk a little bit about monthly

12   status conferences, setting a schedule, if that would suit Your

13   Honor, and perhaps monthly discovery status conferences as

14   well.  In my experience it's been helpful to have that planned

15   out.  We get things done when we have to come in front of the

16   judge, and just a couple other little housekeeping matters as

17   well.

18          **THE COURT:**  Okay.  Well, as to those ideas, I like

19   them.  I mean, I like monthly meetings.  It's up to Judge

20   Cisneros how she wants to deal with the discovery issues.

21          But, look, I mean, dates are important to getting

22   things done, and reports are important.  Judge Lynch, who was a

23   longtime judge in this Court known for his case management

24   skills and settlement skills, told me as a new Judge, he said,

25   never ever let a lawyer leave the courtroom without two things:

1  1, something to do, and, 2, a date by which it must be done.

2  And that's the secret, now everybody knows it, of case

3  management.  Those two things are extremely important.

4        So, yes, I like the idea of that.  I don't know

5  that -- does the defense have any problem with regularizing it?

6        **MS. PHILLIPS:**  No.

7        **THE COURT:**  I wouldn't think so.  I think it's good,

8  because things pop up all the time, the example being what

9  about furnishing the receipt, if you have the receipt, once you

10 can identify -- once you have sufficient identifying

11 information from the plaintiffs, and your response to that.

12       **MS. PHILLIPS:**  Yeah, sure.

13       So we're aware, I think we're meeting and conferring

14 about this.  I think it's Uber's perspective at this point the

15 request is a bit premature.  PTO 5 does require the plaintiffs

16 to provide to us the bona fide ride receipts in each of these,

17 as of now, 211ish cases, as well as the additional information

18 that Your Honor provided.  I think it makes a lot of sense to

19 see at that point what is produced and sort of the scope of the

20 issue.

21       Are we talking about 200 out of the 211 cases we don't

22 have bona fide receipts for or are we talking two, right?  I

23 think that does make a difference.

24       I will say perhaps there is a misconception by

25 plaintiffs that, you know, Uber can take a very small amount of

```
 1   information and just press a button and generate the ride
 2   receipt.  That's not the case.  I'll give you an example.
 3        So for a start and end location for a trip, Uber
 4   doesn't actually, for privacy reasons and safety reasons,
 5   doesn't keep the address in its system.  It keeps latitude and
 6   longitude, so that's obviously a little bit fuzzier than a
 7   print size address and can give you an entire block with
 8   multiple addresses.  If we don't have the email address or a
 9   phone number, we can't locate an account.  If we don't have
10   precision with regard to the incident date, right, if somebody
11   says fall of 2019 versus September 19th of 2019, that's a big
12   difference in terms of what we have to do.
13        So Uber's perspective is that, you know, plaintiffs
14   should follow PTO 5.  We'll get the information on
15   February 15th, we'll take a look at the scope of the issue, and
16   we can meet and confer about what the appropriate next steps
17   are.
18        THE COURT:  Well, that seems to me -- I mean, I just
19   want to make sure that you meet and confer once the material is
20   furnished.  Because it seems to me, and I don't hear anything
21   different from you, if you can identify it, you will, and
22   produce it.
23        MS. PHILLIPS:  Right.  We just, like I said, I think
24   we just view that as an appropriate thing to take up on
25   February 15th when we understand the scope.
```

 1              **THE COURT:**  I think that's fine.  Of course.

 2          **MS. PHILLIPS:**  Thank you, Your Honor.

 3          **MS. LONDON:**  And then a very ticky tacky issue, Your

 4   Honor, is just conferring -- confirming that on these briefs

 5   that we're filing, the PFS, DFS, privilege logging, that we can

 6   attach exhibits.  I know Judge Cisneros's standing order

 7   precludes exhibits, and we would just seek to amend or modify

 8   that order to allow some exhibits to be attached.

 9          **MAGISTRATE JUDGE CISNEROS:**  I'm ordering that it's

10   modified and exhibits are allowed.

11          **MS. LONDON:**  Thank you.

12          Thank you, Your Honor.

13          **THE COURT:**  Okay.  As to the settlement person, I have

14   not contacted anybody in connection with the settlement.  I

15   mean, I have your names.

16          It seemed to me, and maybe I'm wrong in this, I sit

17   where I sit, and they're your cases.  But it seemed to me a

18   little early to do that.  You know, I don't know the answer to

19   that, because obviously there is a history of settling a number

20   of these cases already.  It's not -- you know, my approach to

21   it, and, you know, in a sense I think the -- well, I don't

22   know, good rap or bad rap, but obviously cases can be settled.

23   92 percent of civil litigation is settled.  A court has to make

24   sure that they don't stand in the way of the resolution of the

25   case.

1    On the other hand, 8 percent don't settle, and they

2    don't settle for a variety of reasons, and I always thought one

3    of the principle reasons is that the problem is of such concern

4    that the parties believe that an airing of the issues is

5    beneficial to the judicial system and to the country at large.

6    I have no opinion on that.

7    But I do know that unlike the *Volkswagen* case, in

8    which liability was conceded, but there was no reason not to

9    settle that case, here, liability is not conceded.  It's a

10   different case.

11   And so I don't like to put a lot of pressure or any

12   pressure, any pressure on the parties to try to settle it right

13   away, you know, I don't.  I don't.

14   And, by the way, I also never, I'll tell you that this

15   will be truth, I don't participate in settlement discussions.

16   Somebody else does under a separate set of rules.  And, you

17   know, I'm generally told two things:  One, it settled, or the

18   other thing it's not settled.

19   And I don't want to know who is being reasonable and

20   who is not being reasonable.  And first of all, that's why I

21   don't do any settlements.  I think I've done one in 25 years,

22   because I don't think I'm particularly good at it; and,

23   number two, as a trier of certain facts or a decider of certain

24   issues, I don't want to form an opinion as to who is being

25   unreasonable in the litigation.  I may form that opinion based

1    upon what's filed in front of me, but I don't want to form that

2    opinion as a basis of what somebody says to a settlement judge,

3    and I don't want to inhibit a party from saying whatever they

4    want to to a settlement judge.

5         There may be very good reasons to settle outside of

6    the, quote, the legal issues or the factual issues, other

7    issues.  I mean, after all, to your clients, your clients stand

8    in the position of alleging that a tort has occurred.  They're

9    sitting there, and I'm not saying they're insensitive, but

10   they're standing there because they have a business to run, an

11   ongoing business.  And so the considerations given to one side

12   or the considerations that exist on the other side are

13   frequently very different, and they're very, very -- they're

14   inextricably intertwined with the view of what happened to

15   them, in terms of plaintiffs, how they've been able to cope

16   with it or not.  It's a very complicated set of concerns that

17   the defendant, while mindful of those concerns, has to address

18   other concerns as well.  I mean, that's just the way it works.

19        So, anyway, I may wait a bit longer.  I would like the

20   views of the plaintiff -- I mean, pardon me, the defendant, as

21   to Ms. Birnbaum, who is, I think she's -- is she with

22   Covington?  I mean, she was with Covington.

23        **MR. ATKINS:**  Skadden --

24        **THE COURT:**  Skadden.

25        **MR. ATKINS:**  -- most recently, and now Deco.

1      **THE COURT:**  Okay.  All right.  But she's been -- you

2   know, I'm familiar with her because she has frequently

3   addressed MDL panels or MDL conferences.  Okay.

4      **MR. ATKINS:**  Your Honor, on that issue I think I'd put

5   it this way.  We're happy with the two names that we previously

6   submitted jointly with the plaintiff.

7      **THE COURT:**  All right.

8      **MR. ATKINS:**  And I think those two are more than

9   sufficient for the task, and are qualified.

10     **THE COURT:**  That's fine.  That's fine.

11     So, Judge Cisneros, they did raise a question, going

12   back to the beginning.

13     Okay.  Why don't you raise it again in front of Judge

14   Cisneros.

15     **MS. LUHANA:**  Good morning, Judge Cisneros.  Roopal

16   Luhana for the plaintiffs.

17     Judge, as you're aware, you ordered defendants to

18   produce litigation hold information and certain ESI information

19   by January 16th.  While they produced that information, it's

20   still incomplete in two critical respects:  Number one, they

21   didn't provide a declaration and/or list of non-custodial

22   sources, as you have ordered, and they did not provide dates of

23   preserved ESI, as you had ordered.

24     In terms of what they produced, in a footnote they

25   noted, with the dates preserved ESI, that it was

```
 1   technologically impossible.  However, they didn't seek relief

 2   from the Court.  They didn't confer with the plaintiffs.  They

 3   just submitted that in their letter submission.

 4        And so they are not in compliance with your order

 5   currently, and we sent an email to them this morning and have

 6   requested an immediate meet and confer to discuss it.

 7             MR. SMITH:  May I respond, Your Honor?

 8             MAGISTRATE JUDGE CISNEROS:  Sure.

 9             MR. SMITH:  Kyle Smith for the Uber defendants.

10        Uber disagrees with the characterizations Ms. Luhana

11   has laid out.  Uber believes it did comply, submitted I believe

12   it was a 12-page or so single-spaced letter, including a list

13   of non-custodial sources, with attachments numbering some 900

14   plus pages, and including dates of litigation holds, start

15   date, end date of employment.

16        Suffice it to say, Uber does believe it's complied.

17   It would be happy to provide Your Honor with a chambers copy of

18   the submission it made, if it were permitted to do so, under

19   seal, given the confidential information in it.

20        There is some constraints on my ability to speak in

21   open court about the details of the technological systems and

22   whatnot.  But perhaps a starting point would be making an under

23   seal submission to Her Honor with the submission that was made

24   in the 900 pages of exhibits.

25             MAGISTRATE JUDGE CISNEROS:  That seems reasonable to
```

```
1    me.
2              Do you have any concerns about that?
3              MR. LUHANA:  No, I have no concerns about that.
4              MAGISTRATE JUDGE CISNEROS:  Okay.  Please submit it to
5    my chambers under seal.
6              MR. SMITH:  Will do, Your Honor.
7              And then as to Ms. Luhana's stated concerns with
8    whether there's compliance or not, we received her note this
9    morning.  We're going to work on scheduling and meet and confer
10   next week, and are certainly willing to confer.  We start off
11   at a point of disagreement, and then we think we've complied,
12   Ms. Luhana thinks we haven't.  We'll try to narrow that
13   disagreement, and if anything remains, come to Your Honor.
14             MAGISTRATE JUDGE CISNEROS:  Okay.  And just to be
15   clearer, could you file it as opposed to just sending it to my
16   chambers, but file it under seal?
17             MR. SMITH:  Yes, Your Honor.
18             MAGISTRATE JUDGE CISNEROS:  There will be a motion to
19   seal with that.
20             MR. SMITH:  Yes, Your Honor.  Thank you.
21             MR. LUHANA:  Thank you, Your Honor.
22             MAGISTRATE JUDGE CISNEROS:  Okay.  Thanks.
23             THE COURT:  Anything else?
24             THE CLERK:  Just so it's clear on the record, Judge,
25   the motion on February 2nd at 11:00 a.m., is that scheduled for
```

1    in-person appearance?

2          **THE COURT:**  Yes, yes, it is.  I mean, everybody

3    doesn't have to be here.  The attorneys who are going to argue

4    the issue of stay should be here.  Everybody else is excused.

5    They can participate by video.  That is to say, I'll have a

6    video, and if they want to watch it, they can watch it.  I

7    don't want to cut anybody off.  If any plaintiff wants to look

8    at it, anybody wants to look at it, they can look at it, okay?

9    But I do want it in person.

10         **MS. LONDON:**  Understood.  And, Your Honor, just to set

11   a date, perhaps, with Judge Cisneros to address the issue that

12   Ms. Phillips raised where they, I guess, are seeking

13   clarification or protection from PTO 5 as to the production of

14   all documents produced in other sex assault cases.  That's

15   something that we had talked about advancing that issue, so

16   perhaps we can schedule a hearing on that now.

17         **MAGISTRATE JUDGE CISNEROS:**  Well, I don't have my

18   calendar in front of me.  This isn't my usual courtroom.  So

19   you can propose dates right now, and that's perfectly fine with

20   me.  I'll take them under submission and consider that and then

21   issue an order later today setting a date.

22         **MS. LONDON:**  Very good.  Perhaps, Your Honor, we

23   should propose a stipulated order on an accelerated briefing

24   schedule and submit it to Your Honor.

25         **MAGISTRATE JUDGE CISNEROS:**  Okay.  Perfect.

```
 1            MS. LONDON:  Thank you.

 2            MAGISTRATE JUDGE CISNEROS:  Defendant was nodding her

 3   head up and down.  I saw your head going up and down.

 4            MS. PHILLIPS:  That sounds great.

 5            MAGISTRATE JUDGE CISNEROS:  Okay.  So I'll wait for

 6   the stipulation.

 7            MS. LONDON:  We'll do so today.  Thank you, Your

 8   Honor.

 9            MAGISTRATE JUDGE CISNEROS:  Okay.  Thanks.

10            THE COURT:  Okay.  We're in recess.  Thank you.

11            (Proceedings adjourned at 11:06 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          CERTIFICATE OF REPORTER

2          I certify that the foregoing is a correct transcript

3     from the record of proceedings in the above-entitled matter.

4

5     Dated:  January 19, 2024

6

7

8

9

10

11     _____

12          Rhonda L. Aquilina, CSR #9956, RMR, CRR, CRC
                U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25