1  [Submitting counsel below]

2

3

4  UNITED STATES DISTRICT COURT

5  NORTHERN DISTRICT OF CALIFORNIA

6  SAN FRANCISCO DIVISION

7

8  **IN RE: UBER TECHNOLOGIES, INC.,**      No. 3:23-md-03084-CRB
   **PASSENGER SEXUAL ASSAULT**
9  **LITIGATION**                           **PLAINTIFFS' BRIEF IN SUPPORT OF**
                                            **PROPOSED ESI ORDER**
10 This Document Relates to:               Judge: Honorable Lisa J. Cisneros
                                           Date: TBD
11 All Cases                               Time: TBD
                                           Courtroom: G – 15th Floor
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

    I.    Search Queries and Methodologies [Ex.1, Paragraph 8]............................................. 3

    II.    Cloud Stored Documents [Ex. 1, Paragraph 18]........................................................ 9

    III.    Definitions:  Attachments and Parent Child [Ex. 1 , Paragraph 2.h.t]........................ 12

    IV.    Non-Traditional ESI [Ex. 2, Paragraph 10] .............................................................. 13

    V.    Identification of Custodial and Non- Custodial Documents and ESI [Ex. 1 .............. 13
Paragraph 7] .................................................................................................................. 13

    VI.    Deduplication [Ex. 1, Paragraph 13] ........................................................................ 14

    VII.    Unsearchable Documents [Ex. 1, Paragraph 10] ....................................................... 14

    VIII.    Cooperation [Ex. 1, Paragraph 3]............................................................................. 14

    IX.    Appendix [Ex. 1, Appendix 1-2] .............................................................................. 15

CONCLUSION ........................................................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**<u>CASES:</u>**

3

*Bridgestone Americas, Inc. v. Inter. Business Machines Corp.,*
4
    No. 13-cv-1196, 2014 WL 4923014, at *1 (M.D. Tenn. July 22, 2014) ........................... 5

5

*Brown v. Coty, Inc.,*
6
    No. 22-cv-2696 (S.D.N.Y. Aug. 26, 2022), Dkt. 46 at ¶¶ II, 14, 16............................ 9, 14

7

*Calendar Research LLC v. Stubhub, Inc.,*
8
    No. 17-cv-4062, 2019 WL 1581406 (C.D. Ca. Mar. 14, 2019) ...................................... 12

*Doe v. Uber Technologies, Inc.,*
9
    No. 19-cv-03310, 2022 WL 767095, at *2 (N.D. Cal. Mar. 1, 2022)................................. 2

10

*Huntsman v. Sw. Airlines Co.,*
11
    No. 19-cv-00083, 2021 WL 3504154, at *3 (N.D. Cal. Aug. 10, 2021) ........................... 4

12

*In re 3M Combat Arms Earplug Prods. Liab. Litig.,*
13
    No. 19-md-2885 (N.D. Fla. July 1, 2019), Dkt. 472 at ¶ ¶ 3(a), 4(a), I(h) ........................ 5

14

*In re Acetaminophen-ASD-ADHD Prod. Liab. Litig.,*
15
    2023 WL 196157, *5 (S.D.N.Y 2023), Dkt. 345 at ¶ 19 ........................................... 12, 15

16

*In re Actos Prod. Liab. Litig.,*
    No. 11-md-2299, 2012 WL 7861249, at *4-5, ¶ 10 (W.D. La. July 27, 2012).............. 5, 8

17

*In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.,*
18
    No 19-md-2021, 2022 WL 16603821, at *4 (D.N.J. Oct. 25, 2022) ................................. 4

19

*In re Biomet M2a Magnum Hip Implant Prod. Liab. Litig.,*
20
    No. 12-md-2391, 2013 WL 1729682, at *2-3 (N.D. Ind. Apr. 18, 2013).......................... 4

21

*In re Broiler Chicken Antitrust Litig.,*
    No. 16-cv-0637 (E.D. Ill. Jan. 3, 2018), Dkt. 586 at ¶¶ III.C.1, III.1 ........................... 7, 8

22

*In re Diisocyanates Antitrust Litig. No.*
23
    18-mc-01001 (W.D. Pa. March 25, 2021), Dkt. 459 at ¶ 46.......................................... 4, 6

24

*In re East Palestine Train Derailment,*
25
    No. 23-cv-002242 (E.D.Oh. June 29, 2023), Dkt. 100 at ¶ III.C ..................................... 12

26

*In re Hair Relaxer Mktg. Sales Pracs. & Prod. Liab. Litig.,*
    No. 23-cv-0818 (N.D. Ill. May 18, 2023), Dkt. 109 at ¶¶ VII.M, VII.D ................... 12, 14

27

*In re McKinsey & Co., Inc., Nat'l Opiate Consultant Litig.,*
28
    No. 21-md-2996 (N.D. Cal. Sept. 21, 2021) (Breyer, J.), Dkt. 259 at ¶¶ V, VI.11 ......... 12

*In re JUUL Labs, Inc.,Mktg., Sales Pracs., & Prod. Liab. Litig.,*
    No. 19-md-2913 (N.D. Cal. Dec. 17, 2019) Dkt. 323, ¶ 7(d) ........................................ 12

*In re Paraquat Prod. Liab. Litig.,*
    No. 31-md-3004 (S.D. Ill. Oct. 27, 2021), Dkt. 466, at ¶¶ 73-74, II10.i ........................ 12

*In re Volkswagen "Clean Diesel" MDL,*
    No. 15-md-2672 (N.D. Fla. July 1, 2019) Dkt. 2173 at ¶¶ 4, 4A(4), 5.A ..................... 5, 8

*In re Zantac Prod. Liab. Litig.,*
    No. 20-md-2924 (S.D. Fla. June 17, 2020), Dkt. 862 at ¶ III.1.i ..................................... 12

*IQVIA, Inc. v. Veeva Systems, Inc.,*
    No. 17-cv-00177, 2019 WL 3069203 at *6 (D.N.J. Jul. 11, 2019)................................... 12

*Kozlowski v. Sears Roebuck & Co.,*
    73 F.R.D. 73, 76 (D. Mass. 1976) .................................................................................... 9

*Livingston v. City of Chicago,*
    No. 16-cv-10156. 2020 WL 5253848. At *3 (N.D. Ill. Sept. 3, 2020) .............................. 4

*Lou v. Ma Labs, Inc.,*
    12-cv-05409, 2013 WL 12328278, at *2 (N.D. Cal. Mar. 28, 2013) ................................ 9

*Meyer v. Kalanick,*
    212 F. Supp. 3d 437, 450 (S.D.N.Y. 2016)....................................................................... 2

*Moore v. Publicis Groupe,*
    287 F.R.D. 182, 191 (S.D.N.Y. 2012) .............................................................................. 3

*Nelson v. Super. Ct. of San Diego City,*
    No. D075542. 2019 WL 5412107, at *2 (Cal. App. 4th Dist. Oct. 23, 2019) ................... 2

*O'Connor v. Uber Techs., Inc.,*
    No. 13-cv-3826, 2015 WL 355496 at *3 n.2 (N.D. Cal. Jan. 27, 2015)............................ 2

*Pom Wonderful LLC v. Coca-Cola Co.,*
    No. 08-cv-86237, 2009 WL 10655335, at *3 (C.D. Cal. Nov. 30, 2009)....................... 11

*Richards, et al. v. Uber LLC, et al.,*
    Superior Court, King County, Washington No. 19-2-16858-7 (Mar. 11, 2020)................ 1

*Rio Tinto plc v. Vale S.A.,*
    No. 14-cv-3042, 2015 WL 13956130, at *2 (S.D.N.Y. Sept. 8, 2015)............................. 8

*Shenwick v. Twitter, Inc.,*
    No. 16-cv-05314, 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) ........................ 11

*Splunk Inc. v. Cribl, Inc.,*
    No. 22-cv-07611 (N.D. Cal. Aug. 24, 2023), Dkt. 78 at ¶40(b) ...................................... 11

*Stitch Editing v. TikTok,*
    No. 21-cv-06636, 2022 WL 17363054, at *1 (C.D. Cal. Aug. 31, 2022)........................ 11

*Symettrica Entm't, Ltd. v. UMG Recordings, Inc.,*
    No. 19-cv-1192, 2020 WK 13311682 (C.D. Cal. July 17, 2020) .................................... 12

*Wesley v. Muhammad,*
    No. 05-cv-5833, 2008 WL 4386871, at *5 (S.D.N.Y. Sept. 17, 2008)............................. 9

*Youngevity Inter. Corp. v. Smith,*
    No. 16-cv-00704, 2019 WL 1542300, at *12 (S.D. Cal. April 9, 2019) ........................... 4

**INTRODUCTION**

Plaintiffs' proposed Electronically Stored Information ("ESI") Order adheres to the best practices in complex litigation e-discovery by emphasizing early cooperation and transparency in ESI collection and production.  It establishes efficient, cost-effective discovery methods consistent with numerous ESI Protocols entered in other complex litigations or MDLs, assures Defendants comply with their Rule 26 obligations, reduces "gamesmanship," and ensures "forthright sharing…with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness…." *Sedona Cooperation Proclamation*, 10 Sedona Conf. J. 331, 332 (2009); *Sedona Cooperation Guidance for Litigators & In-House Counsel*, at 14 (2011).[1]

Plaintiffs' proposed ESI Order emphasizes transparency.  Plaintiffs' concerns about transparency are not speculative.  Indeed, Plaintiffs already have serious concerns that significant ESI may not have been preserved because (i) Uber had an unusual six-month email deletion policy that was in place from September 2015 to January 2023, (ii) on September 18, 2020, Uber deleted all Slack messages older than 90 days, and (iii) Uber is unable to articulate what its deletion policy was pre-2015.[2]  Moreover, despite Uber being on notice of sexual assault claims against the company since 2013, the majority of Defendants' litigation hold notices were first issued in November 2023—*ten years later*.  And, unfortunately, Uber has a long history of discovery violations and related sanctions.  *See, e.g., Richards et al v. Uber LLC, et al*, Superior County, Washington, No. 19-2-16858-7 (Mar. 11, 2020) (sanctioning Uber $70,000.00 "for the

---

[1]  *See also* Northen District of California's Guidelines for the Discovery of ESI ("reasonable electronic discovery [should be produced] with the goal of limiting the cost, burden and time spent, while ensuring that information subject to discovery is preserved and produced to allow for fair adjudication of the merits. [] The Court emphasizes the particular importance of cooperative exchanges of information *at the earliest possible stage of discovery* [].")(emphasis added).

[2]  *See* Dkt. 57, at 7-8, attached to February 12, 2024 Declaration of Roopal P. Luhana ("Luhana Declaration"), as <u>Exhibit 3</u>.  All exhibits referenced herein are attached to the Luhana Declaration.

pattern of violating discovery rules and this Court's prior discovery orders"), <u>Exhibit 4</u>.[3]

Defendants' proposed ESI Order, in contrast, eschews transparency and certainty, and instead seeks to leave many issues open to interpretation and further discussion. It will hinder Plaintiffs' ability to effectively obtain relevant discovery and litigate this matter, ensuring delay and necessitating expensive curative measures. In short, Defendants' proposal is inconsistent with this Court's goal of completing the first round of discovery by September 1, 2024, and is particularly inconsistent with the Court's directive to "<u>work together to coordinate discovery to the maximum extent feasible to promote the *efficient and speedy* resolution of this MDL</u>." PTO No. 5, Sections 2, 6.D (Dkt. 175).[4]

While the parties were able to narrow their disputes, important differences between the parties' proposals remain. For the reasons explained herein, the Court should adopt Plaintiffs' proposed ESI Order. S*ee* Pls.' proposed ESI Order, <u>Exhibit 1</u>; Pls' proposed ESI Order with Defendants' proposed edits, <u>Exhibit 2</u>.

---

[3] *See also Doe v. Uber Technologies, Inc*., No. 19-cv-03310, 2022 WL 767095, at *2 (N.D. Cal. Mar. 1, 2) (sanctioning Uber for discovery violation); *Nelson v. Super. Ct. of San Diego Cnty*., No. D075542, 2019 WL 5412107, at *2 (Cal. App. 4th Dist. Oct. 23, 2019) (discussing multiple instances of sanctions imposed against Uber for discovery violations in a single litigation); *O'Connor v. Uber Techs., Inc*., No. 13-cv-3826, 2015 WL 355496, at *3 n.2 (N.D. Cal. Jan. 27, 2015) (the court "warned [Uber] that submitting inaccurate or misleading statements to the Court in a declaration is sanctionable conduct that will not be condoned or tolerated); *Meyer v. Kalanick*, 212 F. Supp. 3d 437, 450 (S.D.N.Y. 2016) (after plaintiff sought sanctions from Uber and [CEO] Kalanick for "act[ing] with, at least, wanton disregard for its ethical and legal obligations" related to investigations it conducted on plaintiffs, defendants "agree[d] to pay plaintiff a reasonable (though publicly undisclosed) sum in reimbursement of plaintiff's attorneys' fees and expenses incurred in conjunction with these matters.").

[4] *See also* November 3, 2023 Hearing Transcript, at 9:16-23, <u>Exhibit 5</u> ("I'm going to tell you [discovery and litigation] is going to be done quickly. And I saw in going through Judge Schulman's orders and what was told to me is that there is a, quote, "bellwether" case that is set for 2025, mid-May. So, let me give you assurance to everybody in the courtroom that we are going to move a lot faster than that. And there is no reason not to. There is absolutely no reason not to.").

## ARGUMENT

### I.   Search Queries and Methodologies [Ex.1, Paragraph 8]

**A. TAR and Search Terms - Subsection a.2.**

The parties do not dispute that Defendants should use technology assisted review ("TAR") for this matter, a review process whereby the parties work with software to train it to identify responsive discovery. TAR is a transparent and collaborative process that includes several steps for the collection and analysis of ESI, training the computer with software, quality control, testing, and validation (as discussed in detail below).

In order for TAR to be effective, it must be applied to as large a data set as possible—this will properly "train" it to identify as many responsive documents as possible. But Defendants propose to "pre-cull" and *significantly limit* their responsive ESI production by applying search terms *prior* to TAR review, effectively ensuring that TAR will *not* locate the vast majority of responsive ESI. As consistently established by case law and Defendants' own ESI consultant[5], pre-culling by "stacking" search terms with TAR will inherently prejudice Plaintiffs by significantly reducing the number of responsive documents produced. Thus, it would unfairly and unreasonably limit TAR's ability to locate responsive documents. TAR is far more accurate and cost effective than search terms, *e.g., Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012) (average recall rate of keyword searches only 20%), but it should *not* be used in combination with search terms. *See* February 12, 2024 Declaration of ESI expert Douglas Forrest ("Forrest Decl."), at ¶¶ 53-56, Exhibit 6 (explaining the deficiencies of search terms in litigation). For example, if the application of search terms has a recall of 25% like the consensus queries in Legal Track 2008[6] and is followed by a TAR process that achieved the "modest" recall level of

---

[5] Defendants have disclosed that Maura Grossman is their ESI/TAR Consultant.

[6] Douglas W. Oard, et al., Overview of the TREC 2008 Legal Track 9 (November 1, 2008), available at https://apps.dtic.mil/sti/pdfs/ADA512711.pdf (Last accessed February 12, 2024).

80%, then the overall recall level would be a shocking and unreasonable 19.2%. If the TAR results were then manually reviewed, then the overall level of recall would be an even more shocking and unacceptable 13.4%.

Indeed, Defendants *own* ESI consultant Maura Grossman has stated that TAR is best run on an entire ESI collection *without* pre-culled using search terms. *See In re Diisocyanates Antitrust Litig.,* No. 18-mc-01001 (W.D. Pa. Mar. 25, 2021), Dkt. 459 at ¶ 46, Exhibit 7 ("Typically, to achieve the best results, TAR would be run on *the entire document collection*, not a collection pre-culled using search terms.")(emphasis added). And MDL Courts have similarly rejected using search terms to pre-cull documents prior to TAR review.[7] At bottom, Defendants' proposed "pre-culling" with search terms will unfairly prevent countless responsive documents from being located and produced, and should be rejected.[8]

**B.      Sample Sets - Subsection a.3**

Plaintiffs' proposed TAR protocol utilizes "sample sets"; i.e., a set of documents with two purposes: to kick off "training" the program to locate responsive documents, and to enable the

---

[7] *See, e.g., In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, No. 19-md-2921, 2022 WL 16630821, at *4 (D.N.J. Oct. 25, 2022)("We find that the Defendants have not set forth an adequate basis for ordering the application of TAR after the application of search terms…"); *see also Youngevity Inter. Corp. v. Smith*, Case No. 16-cv-00704, 2019 WL 1542300, at *12 (S.D. Cal. April 9,2019)("[t]echnology-assisted review of ESI. . . require[s] an 'unprecedented degree of transparency and cooperation among counsel.")(internal citation omitted).

[8] In contrast, Defendants' proffered cases (provided during the meet and confer process) are readily distinguishable. *See, e.g., In re Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, No. 12-md-2391, 2013 WL 1729682, at *2-3 (N.D. Ind. Apr. 18, 2013) (allowing use of pre-TAR search term culling only because the defendant provided the court with evidence under the proportionality standard that it would costs millions to run TAR without pre-culling); *Livingston v. City of Chicago*, No. 16-cv-10156, 2020 WL 5253848, at *3 (N.D. Ill. Sept. 3, 2020) (permitting pre-TAR culling with search terms only because plaintiffs proposed using search terms but noting that using TAR at onset might reveal more responsive documents overall); *Huntsman v. Sw. Airlines Co.*, No. 19-cv-00083, 2021 WL 3504154, at *3 (N.D. Cal. Aug. 10, 2021)(where parties had agreed to an ESI Order allowing both TAR and search terms, the court found that defendant's proposal to use both was reasonable because defendants had agreed to produce limited discovery despite the court's sustaining of defendant's objections to that discovery as overbroad).

parties to focus on relevance and scope.  Without providing a sufficient alternative or explanation

for their refusal, Defendants refuse to include sample sets in the TAR protocol even though

parties *routinely* do so when TAR is used.[9]  Sample sets are a necessity for transparency to ensure

responsive documents are used to train TAR and should be included in the TAR protocol here.

*See* Forrest Decl., Ex. 6 at ¶¶ 15-20 (describing the importance of Sample Sets and highlighting

Plaintiffs' implementation as robust).

**C.      TAR Training Process - Subsection a.4**

Plaintiffs' proposed TAR protocol contains a detailed training process that will provide

transparency to TAR.  Such a training process is also necessary because, without it, TAR cannot

properly identify and code responsive documents—i.e., TAR will not have the proper input it

needs to conduct its document review.  Defendants' proposal, on the other hand, is almost void of

detail and does not provide any transparency.  *See* Forrest Decl., Ex. 6 at ¶¶ 25-27 (explaining

Defendants' proposed TAR training process as skeletal).  This is why numerous Courts, including

this Court, have ordered TAR protocols to have a defined training process to create transparency

which does not leave room for ambiguity.[10]

---

[9]  *See, e.g., In Re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 19-md-2885 (N.D. Fla. Jul. 1, 2019), Dkt. 472 at ¶ 3(a), Exhibit 8 ("The Parties' TAR approach will include the use of a Sample Set to help assure that the Parties have a sufficient level of agreement on what constitutes responsiveness and non-responsiveness."); *Bridgestone Americas, Inc. v. Inter. Business Machines Corp.*, No. 13-cv-1196, 2014 WL 4923014, at *1 (M.D. Tenn. July 22, 2014) (approving use of sample set to train TAR); *In re Actos Products Liab. Litig.*, No. 11-md-299, 2012 WL 7861249, at *4-5 (W.D. La. July 27, 2012) (noting that experts for each party reviewed and coded TAR sample set documents).

[10]  *See In re Volkswagen "Clean Diesel" MDL*, No. 15-md-2672 (N.D. Cal. Nov. 7, 2016) (Breyer, J.), Dkt. 2173 at ¶ 4, Exhibit 9 (including a TAR training process); *see also In Re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 19-md-2885 (N.D. Fla. Jul. 1, 2019), Dkt. 472 at ¶ 4(a), Ex. 8 ("The 3M Defendants will start TAR tool's active learning process with the parties' agree-upon coded documents from the Sample Set, and such other documents as the Parties mutually agree, after which the system will automatically select documents for review based on predicted relevance and also, to allow the TAR tool to learn from all possible definitions of relevance, select for review some non-highly ranked documents and documents about which the TAR tool is uncertain.").

**D.      Stopping Criteria - Subsection a.5**

Stopping criteria determines if the TAR training has been successful—in other words, once TAR is properly trained, that training can "stop", and TAR can then locate and code responsive documents.  *See* Forrest Decl., Ex. 6 at ¶ 31 (describing the nature of a Stopping Criteria).  As such, a "stopping criteria" process is necessary to reduce the risk of prematurely stopping review and ensuring it is not based on rogue data.  For example, Plaintiffs' proposal requires that 1000 documents are likely responsive in consecutive batches to make sure TAR is consistent, reliable, and transparent.  *Id.* at ¶¶ 34-37 (explaining the reasonableness of Plaintiffs' proposal and the relevance of 1,000 documents).  Defendants reject this option, instead insisting upon undefined "reasonably sized" review batches. Defendants' criteria will create uncertainty, confusion, and lead to avoidable disputes because it fails to define what a "reasonably sized" review batch is and ignores the potential for a rogue batch of documents.  Indeed, Defendants' own ESI consultant, Maura Grossman, has advocated for Plaintiffs' position in other matters.[11] Plaintiffs have stated the same to Defendants during the meet and confer process, and Defendants have not explained how their proposal addresses Plaintiffs' concerns or their basis for not agreeing to Plaintiffs' proposal.

**E.      Validation - Subsection a.6**

The "validation process" is used to confirm (validate) that TAR is properly coding responsive documents.  As explained above, transparency is needed to confirm that TAR is used properly and effectively.  Plaintiffs therefore propose a validation process that is transparent, organized, systematic, and iterative. *See Youngevity*, 2019 WL 1542300, at *12 ("Technology-

---

[11]  *See In re Diisocyanates*, Ex. 7, ¶ 20 ("I have a hard time imagining a circumstance in which it would be reasonable to arbitrarily discontinue a review process in the midst of achieving a high yield of responsive documents (i.e., over 10%) in the batches that are being reviewed, particularly if the documents are novel and/or more than marginally responsive.").

1   assisted review of ESI. . . require[s] an unprecedented degree of transparency and cooperation

2   among counsel.")(internal quotation and citations omitted); *see also* Forrest Decl., Ex 6 at ¶ 39

3   (describing Plaintiffs' proposal as reasonably transparent and robust).  Plaintiffs' proposal

4   requires and recognizes the need for both parties to be involved in the TAR validation process—a

5   requirement that has been approved by this Court, other MDL courts, and by Defendants' own

6   expert in other MDLs.[12]  But Defendants refuse transparency and will only agree to meet and

7   confer when inevitable disputes arise.  As with other MDL ESI orders, Plaintiffs' validation

8
9   process should similarly be approved here.

10  **F.      Key Word Searching - Subsection c**

11          Plaintiffs propose that if Defendants do not use TAR, and instead use search terms, the

12  parties agree, *inter alia*, to meet and confer about potential search terms to be used in accordance

13  with this District's ESI Checklist.[13]  Plaintiffs' proposal sets clear parameters to improve the

14  effectiveness of the search terms, and to quickly resolve any disputes.  Defendants, on the other

15  hand, remove all obligation-based language to create a vague meet and confer process that will

16
17  only cause delay.

18
19
20

---

21  [12] *See e.g., In re Volkswagon,* Ex. 9, ¶ 4.A.(4); *In re Broiler Chicken Antitrust Litig.,* No. 1:16-cv-0637
    (E.D. Ill. Jan. 3, 2018), Dkt. 586 at ¶ III.C.1, Exhibit 10 ("The Collection shall be partitioned into the
22  following two or three Subcollections … Documents identified by the review as responsive to at least one
    Request for Production, including any privileged documents, but not including family members of
23  responsive documents, unless those family members are deemed to be responsive in their own right []");
    *see also* Forrest Decl., Ex. 6 at ¶¶ 39-41 (explaining the historical involvement of Plaintiffs in the
24  validation process).

25  [13] *See* N.D. Cal. ESI Checklist at V (requiring the parties to meet and confer regarding "[t[he search
    method(s), including specific words or phrases or other methodology, that will be used to identify
26  discoverable ESI and filter out ESI that is not subject to discovery."); *see also Sedona Conference
    Guidance for Litigators & In-House Counsel,* at 14 (2011) (advising that "[c]ooperation by the parties in
27  agreeing on search terms...can lead to more efficient discovery and ultimate resolution of the matter and
    avoid second-guessing and re-dos, and specifically, to consider the methodology to be used, hot to sample
28  or verify accuracy, feedback loops, a process for adding additional search terms, and discovery of non-
    searchable documents.").

**G.      End to End Validation of Defendants' Search Methodologies and Results [Ex. 1, Paragraph 9]**

Defendants refuse to allow Plaintiffs to confirm that the TAR process identified a reasonable level of responsive documents as required by, for example, this District's ESI Checklist.  *See* N.D. Cal. ESI Checklist at V (requiring the parties to cooperate regarding "[t]he quality control method(s) the producing party will use to evaluate whether a production is missing relevant ESI or contains substantial amounts of irrelevant ESI.").  Defendants' position is baseless.  MDL Courts regularly order Plaintiffs to be involved in the final TAR process review.[14]

Moreover and tellingly, Defendants' *own* ESI consultant has previously taken the opposite position, citing the necessity that "[v]alidation (and recall calculation) should apply to the end-to-end search and review process," and that "validation must account for all responsive documents potentially excluded by the search and review process…"  Forrest Decl., Ex. 6 at ¶ 52; *see also Rio Tinto plc v. Vale S.A.,* No. 14-cv-3042, 2015 WL 13956130, at *2 (S.D.N.Y. Sept. 8, 2015) (where Special Master Maura Grossman ordered a validation process in which all non-privileged documents, responsive and non-responsive were produced to the opposing party).  Plaintiffs' transparent validation process should be approved.

**H.      Reassessment [Ex. 1, Paragraph 11]**

Plaintiffs propose a provision for the parties to meet and confer regarding the potential need to reassess search methodology or the validation process after these processes commence.  Without more, Defendants refuse this provision because the TAR process has a meet and confer

---

[14] *See* Ex. 6  at ¶¶ 45-51 (explaining the importance of Plaintiffs' recall context); *see also, e.g., In re Volkswagen*, Ex. 9  at ¶ 5.A (ordering that parties would perform validation as part of TAR process when stopping criteria are reached); *In re Actos*, Ex. 11, at ¶ 10  (requiring parties to conduct collaborative, in person, review of random sample of documents withheld on relevance grounds after completion of predictive coding process); *In re Broiler Chicken*, Ex. 10 at ¶ III.I (producing party required to provide copies of every non-privileged document in Validation Sample to requesting party and parties required to meet and confer about effectiveness and completeness of search process, including quantity and nature of responsive documents).

provision.  Reassessment provisions of this nature are commonplace in MDL ESI orders, and particularly crucial here, given that disputes may arise regarding these processes should they prove ineffective.  *See, e.g., Brown v. Coty, Inc*., No. 22-cv-2696 (S.D.N.Y. Aug. 26, 2022), Dkt. 46 Ex. 12 at ¶ 16.  Plaintiffs' proposed reassessment provision should be included in the ESI Order.

## II.        Cloud Stored Documents [Ex. 1, Paragraph 18]

There are three related (and disputed) issues regarding ESI preservation and production due to Uber's decision to store ESI in cloud servers versus physical dedicated Uber servers: (1) preservation of a cloud-stored document's metadata ("Metadata Preserved"); (2) whether the contemporaneous hyperlinked documents, akin to attachments, must be produced along with the document that references or links them (Hyperlink/URL Referenced Documents); and (3) whether the Producing Party must produce the contemporaneous version of the hyperlinked document sent with the relevant e-mail or message.

First, Defendants claim burden and logistical difficulty for their refusal to produce this highly relevant discovery.  But any burden or difficulty is due to Uber's (a sophisticated technology company) own recordkeeping system, and a producing party may not "shield itself from discovery by utilizing a system of recordkeeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expenditure."  *Wesley v. Muhammad*, No. 05-cv-5833, 2008 WL 4386871, at *5 (S.D.N.Y. Sept. 17, 2008) (quotation marks and citation omitted).[15]

---

[15]  *See also Lou v. Ma Labs, Inc*., 12-cv-05409, 2013 WL 12328278, at *2 (N.D. Cal. Mar. 28, 2013)(when a burden the producing party claims is "one of their own making," there is no compelling reason to deny discovery because  "defendants are the master of their own record keeping…the fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information."); *Kozlowski v. Sears Roebuck & Co*., 73 F.R.D. 73, 76 (D. Mass. 1976) ("[t]o allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing

**Second**, Defendants refuse to produce the contemporaneous version of the hyperlinked google document; the version of the document that was required to be placed on litigation hold. Concerningly, Defendants do not even address this in their proposed version of the ESI Order. Defendants assert that it is implicit that only the most recent version of the hyperlinked document may be pulled and produced from Google Vault versus the version of the hyperlinked document contemporaneously sent with an e-mail. However, Plaintiffs learned that Defendants are simply relying on Google's public website for their assertion, instead of contacting Google directly to explore options. If Uber had properly investigated this issue, they would have learned that it is possible to produce these documents.[16] *See* Forrest Decl., Ex. 6 at ¶¶ 57-69.

Absurdly, Defendants propose should Plaintiffs be able to identify the missing relationship between the e-mail and the contemporaneous hyperlinked document (provided it was "reasonable and proportionate" for the Defendants to produce the metadata) then Plaintiffs can notify Defendants who in turn will assess the proportionality of the request to investigate further. Under Defendants' proposal, the parties would be forced to meet and confer every time the Receiving Party identified a message, or an email, was missing a metadata relationship. And if a copy of the linked document were ultimately produced, Defendants will *only* produce the version at the time of their collection— after potentially more than a decade of changes to that document.[17]

This is *highly prejudicial* to Plaintiffs.  If communications (though Defendants narrow only to e-mails here) do not include the contemporaneously sent hyperlinked attachments and

---

system, and then claiming undue burden, would defeat the purposes of the discovery rules.").

[16] Defendants can access contemporaneous versions of Google documents sent with e-mails if they utilize Metaspike's Forensic Email Collector. *See* Forrest Decl., Ex. 6 at ¶ 68.

[17] Additionally, Defendants routinely linked Google documents to other forms of communication, including messages in Slack, HipChat and UChat, but improperly narrow the scope to just e-mails in this section. This equally applies to any ESI that used Google Documents.

ability to associate them, then determinative evidence of "who knew what when" will be lost. For example, a parent email may reference information in a hyperlinked attachment, but without the contemporaneous attachment, the email would be impossible to decipher in context or to question a witness about without the contemporaneous version of the attachment at a deposition.

Defendants' proposal absconds their Rule 26 obligations, punts the issue, and leaves it loosely to their vendor to see if it can manage to obtain relevant ESI.[18]  This is not how discovery works.  Accordingly, Defendants should be required to produce the contemporaneous hyperlinked attachment and identify the metadata, including relationship/association, with the e-mail and hyperlinked attachment. *See, e.g., Pom Wonderful LLC v. Coca-Cola Co*., No. 08-cv- 86237, 2009 WL 10655335, at *3 (C.D. Cal. Nov. 30, 2009)(rejecting argument that defendant "'has no method to automatically re-link emails with their alleged "missing" attachments[]' and that requiring it to do so would 'employ a tedious manual process,'" because a defendant "cannot seek to preclude plaintiff from pursuing discovery based on a record-keeping system that is plainly inadequate"); *Stitch Editing v. TikTok*, No. 21-cv-06636, 2022 WL 17363054, at *1 (C.D. Cal. Aug. 31, 2022)("Documents referenced in hyperlinks … must be produced together with the source document containing the hyperlinks so that the association between parent document and hyperlinked document is maintained."); *Shenwick v. Twitter, Inc*., No. 16-cv-05314, 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018)(ordering production of hyperlinked documents); *Splunk Inc., v. Cribl, Inc. et al*., No. 3:22-cv-07611 (N.D. Cal. Aug. 24, 2023), Dkt. 78 at ¶ 40(b), Exhibit 13 ("the Parties shall make best efforts to obtain and produce the version of the

---

[18] This also is a smoke screen as Plaintiffs learned that Uber is doing its own collection in-house and producing those post-collection documents to its' vendor Lighthouse to associate, *inter alia*, e-mails with hyperlinked google documents.  Lighthouse informed Plaintiffs that if Uber pulls the contemporaneous hyperlinked document in the production, Lighthouse is able to associate the email with that hyperlinked google document.

[hyperlinked Google] document that existed at the relevant time, to the extent reasonably practicable and available.").[19]

### III.        Definitions:  Attachments and Parent Child [Ex. 1 , Paragraph 2.h.t]

Defendants refuse to define "Parent-Child" and offer a vague definition for "Attachment(s)", even though those terms are referenced elsewhere in the ESI Order and will be applicable for ESI production.  Clearly defining "Parent-Child" and "Attachment(s)" upfront will avoid any later confusion regarding which documents, if any, need to be produced in tandem as part of a parent-child relationship, or what constitutes an "attachment".  "Parent-child", for example, is routinely defined in MDL ESI Orders, including by this Court.[20] Defendants' refusal to do so, circumvents their duty to appropriately identify and associate the parent-child relationship between messages/emails and underlying attachments and/or hyperlinks which is entirely improper.

---

[19] *See also Symettrica Entm't, Ltd. v. Umg Recordings, Inc.,* No. 19-cv-1192, 2020 WL 13311682 (C.D. Cal. July 17, 2020)("Courts in this Circuit have long recognized that an email and its attachment comprise 'one document or message unit' and consistently require a producing party to 're-link the emails with the attachments or re-produce the emails with their attachments.' [] attachments can only be fully understood when read in the context of the emails to which they are attached.")(internal citations omitted); *IQVIA, Inc. v. Veeva Systems, Inc.,* 17-cv-00177, 2019 WL 3069203 at *6 (D.N.J. Jul. 11, 2019) (holing that because only the producing party, and not the requesting party, had the ability to link the documents, it must do so); *In re Acetaminophen Products Liab. Litig.,* No. 22-md-3043 (S.D.N.Y. Jan. 17, 2023), Dkt. 345 at ¶19, Exhibit 14 (hyperlinks pointing to files stored on cloud or shared repositories must be produced with the parent document); *In Re East Palestine Train Derailment,* No. 4:23-cv-002242 (E.D. Oh. June 29, 2023), Dkt. 100, at ¶ III.C, Ex. 15 (ordering Defendants to produce hyperlinked content); *see also Calendar Research LLC v. StubHub, Inc.,* No. 17-cv-4062, 2019 WL 1581406 (C.D. Ca. Mar. 14, 2019) (where a party cannot produce ESI without assistance, it may need to engage a discovery vendor to meet its burden).

[20] *See, e.g., In re McKinsey & Co., Inc. Nat'l Opiate Consultant Litig.,* No. 3:21-md-2996 (N.D. Cal. Sept. 21, 2021) (Breyer, J.), Dkt. 259 Ex. 16 at ¶ VI.11 ("Parent-Child Relationship: [] the association between an attachment and its parent document or between embedded documents and their parent"); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.,* No. 3:19-md-2913 (N.D. Cal. Dec. 17, 2019), Dkt. 323 Ex. 17 at ¶ 7(d) (same); *In re Zantac (Ranitidine) Prod. Liab. Litig.,* No. 9:20-md-2924 (S.D. Fla. June, 17 2020), Dkt. 862 Ex. 18 at ¶ III.1.i , (same); *In re Paraquat Products Liab. Litig.,* No. 3:21-md-3004 (S.D. Ill. Oct 27, 2021), Dkt. 466 Ex. 19 at ¶ II.10.i (same); *In re Hair Relaxer Mktg. Sales Pracs. & Prod. Liab. Litig.,* No. 23-cv-818 (N.D. Ill. May 18, 2023), Dkt. 109 Ex. 20 at ¶ VIII.H (same).

**IV.** <u>**Non-Traditional ESI [Ex. 2, Paragraph 10]**</u>

Defendants' proposal seeks to incorporate a "carve out" for "Non-Traditional ESI" which would render its ESI Order effectively useless.  Indeed, Defendants' proposal states that only "reasonable efforts" shall be taken to address the complexities of specific ESI (including collaboration tools, data formats identified on a mobile or handheld device, and modern cloud sources).  But the ESI that Defendants are now attempting to "carve out" are the *exact* types of ESI that Uber extensively used.  Dkt. 217, at ¶ 2, (describing Uber's mobile device data); ¶ 3 (describing Uber's text and messaging applications); ¶ 4 (describing Uber's workplace collaboration tools and chat applications); and ¶ 5 (describing Uber's social media accounts).  Defendants proposed "carveout" is also of complete contradiction of PTO No. 2's requirements.  Dkt. 65, at 2 (listing out relevant sources to the litigation including collaboration tools, text and messaging applications, and mobile device data).  Defendants' proposed "carve out" is highly prejudicial, would render the ESI Protocol effectively meaningless, and should be rejected.

**V.** <u>**Identification of Custodial and Non- Custodial Documents and ESI [Ex. 1 Paragraph 7]**</u>

Plaintiffs propose a meet and confer process to handle disputes related to sources that Defendants unilaterally conclude may not be "reasonably accessible".  Defendants also refuse to provide sufficient information to Plaintiffs about accessibility. The parties have not reached agreement on what sources are "reasonably inaccessible" and therefore it is necessary to implement a meet and confer process to discuss reasonable inaccessibility of ESI Sources.  In complex, information laden MDL litigation, such a process is necessary to avoid later disputes or time-consuming corrective measures.  *See* N.D. Cal. ESI Checklist at I (meet and confer obligation to "describe data from sources that are not reasonably accessible").

## VI.        Deduplication [Ex. 1, Paragraph 13]

The parties agree that MD5 and SHA-1, the industry standard algorithms, should be used to remove exact duplicates.  Under Plaintiffs' proposal, the original file paths of a Document prior to deduplication would be populated in the "ALL FILE PATHS" metadata field, separated by semicolons, in the order corresponding to the order of names in "ALL CUSTODIANS".  Under the Defendants' proposal, no order would be adhered to.  But, without this language, Plaintiffs will be unable be able to match up custodians to their corresponding entries in the equivalent fields included in the Google Drive & Linked Documents & Google Mail section of Appendix 2. See Forrest Decl., Ex. 6 at ¶¶ 74-78.

## VII.        Unsearchable Documents [Ex. 1, Paragraph 10]

Plaintiffs propose a clear and detailed process for producing unsearchable documents. Defendants simply propose the parties meet and confer regarding producing unsearchable documents.  Defendants' position will cause delay and lead to unnecessary disputes.  Plaintiffs' proposal is consistent with other MDL ESI orders and should be adopted.  *See, e.g., Brown v. Coty, Inc.,* Ex. 12 at ¶ 14 (requiring identification and production without technology-assisted methods); *In re Hair Relaxer*, Ex. 20 at ¶ VII.D (same).

## VIII.        Cooperation [Ex. 1, Paragraph 3]

Plaintiffs' proposal emphasizes transparency and cooperation, in line with this District's ESI Guidelines and Checklist. Defendants proposed language focuses on the opposite—namely, that Uber unilaterally is in the best position to determine how to locate responsive delivery. While Defendants rely on the Sedona Conference's Principle 6 for their position, courts have rejected a party's reliance on Principle 6 when it failed to properly "evaluate the procedure" underlying its production position. *See Marin v. Apple-Metro, Inc.*, 2023 WL 2060133, at *8 (E.D.N.Y. 2023).  Plaintiffs' proposed language, focusing on transparency and cooperation, is

more appropriate and should be adopted.

## IX.       Appendix [Ex. 1, Appendix 1-2]

Plaintiffs' proposed Appendix 1 is a concise and effective production format.  Although the parties agree on some of the language, Defendants' proposed Appendix 1 minimizes their obligation to produce documents, *inter alia*, in the form of parent-child relationships and production formatting.  Defendants' proposed language should be rejected.  *See Acetaminophen Prods. Liab. Litig.,* 2023 WL 196157, *5 (S.D.N.Y. 2023) ("modern attachments" shall be collected and produced with the parent message").

Plaintiffs' proposed Appendix 2 creates a transparent and effective production with metadata fields as well.  Plaintiffs' proposal identifies necessary metadata fields for what they believe will be some of the most important production of the litigation – Google Workspace documents.  *See* Ciaramitaro Decl. at ¶ 9, Exhibit 25 (understanding that Uber uses Google Workspace to email, chat and collaborate.); *Id.* at Ex. 1 (listing Google Workspace Metadata fields). This includes, *inter alia*, the modified date, author, and collaborators.  This is especially important given the parties disagreements over hyperlink production, as discussed *supra*. Accordingly. Plaintiffs' proposed language about requested metadata fields, which are readily accessible, should be implemented.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court adopt Plaintiffs' proposed ESI Order.

Dated: February 12, 2024

Respectfully submitted,

By: */s/ Sarah R. London*
    Sarah R. London (SBN 267083)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: */s/ Rachel B. Abrams*
    Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
    Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

16