# EXHIBIT 3

[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:23-md-03084-CRB<br><br>**RESPONSE TO DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S INITIAL CONFERENCE SUBMISSION** |
| This Document Relates to:<br><br>ALL CASES | Judge: Honorable Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Date: November 3, 2023<br>Time: 11:00 a.m. |

The undersigned Plaintiffs (representing 85% of the law firms with cases currently in this MDL) respectfully submit Plaintiffs' Response to Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") Initial Conference Submission.

**I.      INTRODUCTION**

The Court requested a submission regarding "the status of all litigation pending in this MDL matter," as well as "the steps Defendants have taken to preserve relevant evidence." Doc. 2. Defendants' submission goes well beyond the Court's request and is laden with unilateral case management proposals that will lead to delay, expense, and needless complexity. And on the one area where the Court did request additional detail—evidence preservation—Defendants' submission is woefully insufficient.

- 1 -     RESPONSE TO DEFENDANTS' INITIAL CONFERENCE SUBMISSION; MDL 3084

1    Plaintiffs provide this responsive submission to articulate a basic plan for moving this
2    MDL forward quickly and efficiently.

## II. BACKGROUND

Uber would make this case about "the intentional torts and criminal acts allegedly committed by independent drivers." Doc. 38 at 2. It is not. This case is about Uber. Uber promises a safe ride. Despite knowing for years of widespread sexual assaults by its drivers during Uber rides, Uber did nothing to mitigate the risk or warn its riders that sexual assault has occurred and continues to occur with shocking frequency. Instead, Uber allows drivers to drive despite reports of sexual misconduct, refuses to install cameras which are known to decrease assaults, and refuses to conduct sufficient background checks to ensure the company lives up to its safety promise and obligation. Indeed, Uber did the opposite: it promised a "Safe Rides Fee" that lulls users into a false sense of security.

This MDL was created (over Uber's objection) because of what unites these cases, not what distinguishes them. Such common threads include "Uber's knowledge about the prevalence of sexual assault by Uber drivers, and whether Uber failed to conduct adequate background checks of its drivers, train drivers regarding sexual assault and harassment, implement adequate safety measures to protect passengers from sexual assault, and adequately respond to complaints about drivers." *In re Uber Tech., Inc., Passenger Sexual Assault Litig.*, MDL No. 3084, 2023 WL 6456588, at *1 (J.P.M.L Oct. 4, 2023).

Uber now reports thousands of sexual assaults by its drivers every year. While these reports do not provide a complete picture of the actual number of incidents for many reasons, the reporting is indicative of the number of potential cases that will be consolidated in this MDL.

## III. STATUS OF THE LITIGATION

### A. Status of Federal Actions

Much of Uber's submission reiterates arguments made to and rejected by the JPML. Uber's attempt to re-argue consolidation should be disregarded.

### B. The California State Court Proceedings (JCCP)

Uber details JCCP rulings on the Master Complaint, including demurrers and motions to

strike. These have no bearing on the MDL. As this Court is aware, the JCCP presiding judge, Judge Schulman, granted Uber's motion to dismiss out-of-state plaintiffs based on forum *non conveniens*. Several plaintiffs appealed. Because JCCP leadership included all JCCP filed cases subject to the dismissal order in the appeal, all of those cases are currently stayed pending the appellate court's ruling. In addition, many plaintiffs have (and others may as well) dismissed their case on appeal and re-filed in federal court, and have been (or will shortly be) included in this MDL.

The upshot is that these Plaintiffs are in a federal forum and, under the federal rules, require efficient and just resolution of their cases. Uber says that it needs a better understanding of which plaintiffs may refile in the MDL before establishing any MDL case management plan for this MDL, which "may not be possible until following the ruling on the FNC Appeal." Doc. 38 at 6. This is unreasonable and unprecedented. Holding up a federal consolidated action because of a lengthy appeal in state court where the plaintiffs no longer have active cases is unduly prejudicial and inconsistent with both Rule 1 and the MDL statute.

### IV. THE COURT SHOULD ADOPT CASE MANAGEMENT IDEAS DESIGNED TO PROMOTE THE JUST, SPEEDY, AND INEXPENSIVE DETERMINATION OF COMMON FACT QUESTIONS.

The purpose of this MDL is to "streamline overlapping discovery and pretrial proceedings arising from nearly identical allegations regarding Uber's corporate policies and practices as to alleged passenger sexual assaults." *Id.* at *2. Many of Uber's proposals, which reflect its arguments against the formation of this MDL in the first place, are inconsistent with the MDL's essential purpose. Plaintiffs provide case management suggestions below that will advance these cases consistent with both Rule 1 and the MDL statute.

#### A. The Court should require early, easy discovery to happen immediately.

As a starting point, there is no cause to delay common discovery. Uber does not offer any legal theories that, if accepted, would plausibly result in the elimination (or even substantial narrowing) of the pending cases. Discovery should begin promptly and immediately regarding the following "off the shelf" categories of documents:

- Defendants should re-produce any discovery produced in any other rideshare sexual assault case, save for private identifying information.

- 3 - RESPONSE TO DEFENDANTS' INITIAL CONFERENCE SUBMISSION; MDL 3084

- Defendants should re-produce any documents produced to any legislative or regulatory entity that has investigated Uber with respect to sexual assault.

In addition, once a protective order is entered in this MDL, Defendants should stipulate that any plaintiff's attorney who has conducted discovery in a case against Uber related to sexual assault may share discovery materials produced in those cases without violating any protective orders entered in those individual matters.

### B. The Court should bypass master and short-form complaints and move directly to bellwether complaints for briefing of cross-cutting legal issues.

Defendants' submission referenced the long-form/short-form complaint processes utilized in the JCCP. While that procedure can be useful in certain MDLs, it also causes delay. Consequently, it should be used only where the case management benefits outweigh those inevitable delays. In this case, there are no global legal issues (like federal preemption), resolution of which would necessarily be advanced by a common pleading.

There are, of course, some cross-cutting legal issues, resolution of which will advance the litigation. Those issues may include:

- Applicable law where misconduct occurred in California but injury occurred in another state

- Whether vicarious liability exists under scope-of-employment, common carrier, agency, non-delegable duties, or other theories.

- Scope of duty under different negligence theories.

- Availability of punitive damages.

There are two options to tee up briefing of those issues. First, the Court may identify trial bellwethers (discussed further below) and then receive Rule 12 briefing in those cases. Second, to move faster, the Court may identify bellwethers solely for the purpose of Rule 12 briefing and hear argument on those complaints while the parties work to develop a broader bellwether pool for trial. *See, e.g.*, *In re JUUL Labs, Inc., Mkt., Sales Prac., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 573 (N.D. Cal. 2020) (resolving threshold motions for seven exemplar complaints). In either path, Plaintiffs suggest that the Court (1) instruct the parties to meet and confer to identify cases for which briefing would be most helpful in resolving common legal issues and (2) grant

any selected cases time to amend their complaints before motions to dismiss are due.

### C. The Court should initiate the trial bellwether process promptly.

Defendants suggest that "it is too soon to determine the scope of this MDL," Doc. 38 at 3, and that any bellwether process should be delayed until, at least, the pending appeal from the JCCP forum *non conveniens* order is resolved. There is no reason to wait.[1] It is the natural course of MDLs that the case population evolves as time goes on and more cases are filed. If that inevitable fact were sufficient to delay the bellwether process, the tried and proven way of advancing MDL resolution, then no MDL would select early bellwethers. In reality, while parties and the Court seek representative bellwethers, courts routinely recognize that the perfect cannot be the enemy of the good. *See, e.g.*, Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litig.*, 82 Tulane L. Rev. 2323, 2344-45 (2008) ("Rather than attempt to delineate every identifiable variable, the transferee court and the attorneys should focus on those variables that can be easily identified, are substantively important, and provide clear lines of demarcation.").

In addition, courts regularly order multiple rounds of bellwether selection to account for characteristics lacking from the initial pool. If resolution of the pending JCCP appeal results in changes to the "size and characteristics" of the plaintiff population, then the Court can order an additional round of bellwether selections.

#### 1. The Court should require the parties to negotiate reasonable, productive fact sheets.

Part of determining the scope of an MDL, and in selecting effective bellwethers, is learning basic information about the cases pending before the Court. But the Court should reject Defendants' suggestion to preempt that process with a threshold requirement that "at the outset" Plaintiffs produce "a *bona fide* verified receipt" or other evidence of their Uber ride. Doc. 38 at 7. Uber's proposal is untenable and lacks any foundation in the Federal Rules of Civil Procedure. Instead, as is common in MDLs, the parties should work together to design a plaintiff profile form (and subsequent fact sheet) that will help select bellwethers. This profile form would contain information from *both* Plaintiffs and Defendants (who are likely to have as much, or more,

---

[1] Uber also tried, unsuccessfully, to stay the JCCP proceedings on the same grounds.

- 5 -   RESPONSE TO DEFENDANTS' INITIAL CONFERENCE
SUBMISSION; MDL 3084

information about relevant rides than Plaintiffs do).

### 2. The Court should reject Uber's request for a "cutoff."

While hinting at indefinite delay of basic case management functions, Defendants also seek to impose an arbitrary "cutoff for new filings." Doc. 38 at 3. Setting aside the obvious problems with statutes of limitations, there is no basis in the federal rules or other law to cut off a sexually-assaulted survivor's right to seek justice for the injuries she/he sustained by an Uber driver.

Moreover, how the Court would accomplish this is unclear: absent a JPML order otherwise, new cases will continue to be transferred to this Court for consolidated pretrial proceedings. In any event, discussion of a "cutoff" is premature at best. The flow of future cases is often in an MDL defendant's control: practice changes may preclude future cases as a matter of fact (by preventing misconduct) or of law (by removing the factual predicates for liability). Here, Plaintiffs may force the issue by pursuing and obtaining injunctive relief.

### D. The Court should set fast deadlines for core case management orders.

The Court should set out a quick and early schedule for the proposal and entering of core CMOs, including:

- Protective Order
- Direct Filing Order
- Timekeeping Order
- ESI Order

Undersigned counsel have convened meetings and begun drafting proposed initial orders. Representatives have initiated discussions with Defense counsel.

### V. THIS DISTRICT IS AN AVAILABLE AND APPROPRIATE FORUM FOR TRIAL, NOTWITHSTANDING ANY HYPOTHETICAL CLAIMS AGAINST THIRD-PARTY DRIVERS.

Defendants present their view that "these actions should be tried in the judicial districts in which the underlying incidents were alleged to have occurred." Doc. 38 at 4. Even putting aside the great weight a plaintiff's choice of forum earns in the § 1404(a) analysis, Defendants ignore the common sense reasons *why* Plaintiffs would elect to file in this district. Most obviously, Uber

is here. Not only are many documents and people relevant to the common allegations in this district (saving all parties time and money), but also this is the only proper forum for subpoenaing Uber witnesses to testify at trial. Transfer would all but guarantee that any bellwether trial would be bereft of company witnesses (perhaps the point of Defendants' position). In addition, trial dates are easier to get and keep in an MDL court prioritizing the litigation rather than a distant court with competing scheduling demands.

The potential for Defendants to file claims against third-party drivers does not change the calculus. The availability of a third-party tortfeasor does not require transfer. *See, e.g.*, *Cisco Sys., Inc. v. Dexon Computer, Inc.*, No. 20-4926, 2023 WL 3032061, at *4 (N.D. Cal. Apr. 21, 2023) (Breyer, J.) (granting third-party defendant's motion to dismiss for lack of personal jurisdiction and denying primary defendant's motion to transfer). If Uber is unable to sue third-party drivers in this District, nothing prevents it from bringing separate actions where those drivers are subject to process, or to pursue, to the extent legally available, a comparative fault defense in the MDL actions.

## VI. DEFENDANTS' STATEMENTS REGARDING EVIDENCE PRESERVATION ARE INSUFFICIENT AND SHOULD BE SUPPLEMENTED PROMPTLY.

Defendants' evidence preservation efforts, or lack thereof, and spoliation issues will likely need to be promptly addressed by the parties and the Court.

Defendants' description of their preservation efforts is inaccurate. On October 27, 2023, the parties in the JCCP submitted a Joint Case Management Statement.[2] In relevant part, the Joint Case Management Statement states:

> One business day before the deposition of Uber's Person Most Qualified for ESI and Uber's document-retention policy, Plaintiffs learned for the first time that from September 2015 to January 2023, Uber had a six-month e-mail retention policy. Uber's current policy is to destroy e-mails after 24 months. On September 18, 2020, Uber deleted all Slack messages older than 90 days. Uber also deletes all chat communications after 90 days. These document and data deletion policies are particularly concerning because the Parties have been meeting and conferring about ESI for over a year, and we only learned of this recently. Plaintiffs do not yet

---

[2] **Exhibit A** (*In re: Uber Rideshare Cases,* JCCP, No. CJC-21-005188, Joint Case Management Statement).

understand the full scope of the potential problem because of attorney-client privilege objections that were raised during the deposition. On October 17, Plaintiffs wrote Uber, asking Uber to clarify the scope of the documents and communications it has destroyed and kept. Uber has not responded.

Given the above, it is likely that significant evidence may not have been preserved or spoliated, in contrast to Defendants' representations.

Moreover, the steps that Defendants state they have taken to preserve relevant evidence are insufficient. For example, Defendants state that Uber has issued litigation holds for "multiple Uber custodians who work on sexual assault or sexual misconduct Incidents." Doc. 38 at 8. But discovery here will not be limited to Uber custodians who work on sexual assault/misconduct issues. Rather, as highlighted in the Transfer Order (Doc. 1), discovery will encompass, for example, Uber's alleged failure to implement appropriate safety precautions to protect passengers; whether Uber failed to conduct adequate background checks and training of its drivers, whether Uber adequately respond to complaints about drivers, and Uber's representations regarding safety.

Uber has been on notice of sexual assault claims against it for years. And Uber has been accused of failing to preserve evidence (and denying its duty to preserve) in at least one previous litigation in this District. *See Waymo LLC v. Uber Techs., Inc.,* No. 17-939, 2018 WL 646701, at *15 (N.D. Cal. Jan. 30, 2018) ("Here, the record clearly shows (and this order finds) not only that a reasonable party in Uber's circumstances would have reasonably foreseen this litigation in January 2016, but also that Uber actually foresaw this litigation in January 2016 []. Uber itself previously insisted as much while trying to withhold evidence []. But now, facing accusations of spoliation, Uber has reversed course and, in a performance deserving of an Academy Award, claims the exact opposite — that it did not reasonably foresee this litigation in 2016 and thus supposedly had no duty to preserve evidence []. Uber's own statements show otherwise.").

Uber's current litigation hold policy fails to cover, at a minimum, custodial sources that are likely to have relevant discovery regarding these topics. Defendants should immediately issue a company and vendor wide comprehensive and complete litigation hold in order to prevent further spoliation of evidence.

RESPONSE TO DEFENDANTS' INITIAL CONFERENCE SUBMISSION; MDL 3084

## VII. CONCLUSION

Plaintiffs look forward to discussing these issues with the Court at the November 3rd initial conference.

Dated: November 1, 2023

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (State Bar No. 267083)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (State Bar No. 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

|   |   |
|---|---|
| 1 |   |
| 2 | By: */s/ Bret Stanley*<br>Bret Stanley |
| 3 |   |
| 4 | **KHERKHER GARCIA, LLP**<br>2925 Richmond Avenue, Suite 1560 |
| 5 | Houston, TX 77098<br>Telephone: (713) 333-1030 |
| 6 | bstanley@kherkhergarcia.com |
| 7 | By: */s/ Michael Lee Nimmo* |
| 8 | Michael Lee Nimmo |
| 9 | **WAHLBERG WOODRUFF NIMMO & SLOANE LLP** |
| 10 | 4601 DTC Boulevard, Suite 950<br>Denver, CO 80237 |
| 11 | Telephone: (303) 835-9227<br>michael@denvertriallawyers.com |
| 12 |   |
| 13 | By: */s/ Eric D. Holland*<br>Eric D. Holland |
| 14 |   |
| 15 | **HOLLAND LAW FIRM**<br>211 North Broadway, Suite 2625 |
| 16 | St. Louis, MO 63102<br>Telephone: (866) 471-3695 |
| 17 | eholland@hollandtriallawyers.com |
| 18 | By: */s/ Charles Andrew Childers*<br>Charles Andrew Childers |
| 19 |   |
| 20 | **CHILDERS, SCHLUETER & SMITH, LLC** |
| 21 | 1932 N Druid Hills Road, Ste. 100<br>Atlanta, GA 30319 |
| 22 | Telephone: (404) 419-9500<br>achilders@cssfirm.com |
| 23 |   |
| 24 | By: */s/ Bartlet Brebner*<br>Bartlet Brebner |
| 25 | **BREBNER LAW FIRM PC** |
| 26 | 4647 N 32nd St., Ste. 285<br>Phoenix, AZ 85018 |
| 27 | Telephone: (602) 230-9554<br>bbrebner@brebnerlaw.com |
| 28 |   |

|  |  |
|---|---|
| | By: */s/ Lauren A. Welling* |
| |     Lauren A. Welling |
| | |
| | **SLATER SCHULMAN, LLP** |
| | 8383 Wilshire Blvd. Suite 255 |
| | Beverly Hills, CA 90211 |
| | Telephone: (310) 341-2086 |
| | lwelling@sssfirm.com |

By: */s/ Paula Bliss*
    Paula Bliss

Paula Bliss
Kimberly Dougherty
**JUSTICE LAW COLLABORATIVE, LLC**
210 Washington Street
North Easton, MA 02356
Telephone: (508) 230-2700
paula@justicelc.com
kim@justicelc.com

By: */s/ Tracey Cowan*
    Tracey Cowan

**CLARKSON LAW FIRM**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: (213) 788-4050
tcowan@clarksonlawfirm.com

By: */s/ Karen Barth Menzies*
    Karen Barth Menzies

**KBM LAW**
6701 Center Drive West, 1400
Los Angeles, CA 90045
Telephone: (310) 363-0030 (Direct)
kbm@kbmlaw.com

By: */s/ Layne C. Hilton*
    Layne C. Hilton

**MEYER WILSON**
305 W. Nationwide Blvd
Columbus, OH 43215
Telephone: (866) 827-6537
(614) 255-2697 (Direct)
lhilton@meyerwilson.com

By: */s/ Alyson S. Beridon*
    Alyson S. Beridon

**HERZFELD, SUETHOLZ, GASTEL, LENISKI & WALL, PLLC**
600 Vine Street Suite 2720
Cincinnati, OH 45202
Telephone: (513) 381-2224
Facsimile: (615) 994-8625
alyson@hsglawgroup.com

By: */s/ Meredith Stratigopoulos*
    Meredith Stratigopoulos

**WATTS GUERRA LP**
811 Barton Springs Rd #725
Austin, TX 78704
Telephone: (512) 479-0500
mdrukker@wattsguerra.com

By: */s/ Sara Peters*
    Sara Peters

**WALKUP, MELODIA, KELLY & SCHOENBERGER**
650 California St.
San Francisco, CA 94108
Telephone: (415) 981-7210
speters@walkuplawoffice.com

By: */s/ Marlene Goldenberg*
    Marlene Goldenberg

**NIGH GOLDENBERG RASO & VAUGHN, PLLC**
14 Ridge Square NW Third Floor
Washington, D.C. 20016
Telephone: (202) 978-2228
mgoldenberg@nighgoldenberg.com

By: */s/ Erin Copeland*
Erin Copeland

**FIBICH LEEBRON COPELAND & BRIGGS**
1150 Bissonnet St.
Houston, TX 77005
Telephone: (713) 496-0549
ecopeland@fibichlaw.com

By: */s/ Benjamin T. Carroll*
Benjamin T. Carroll

**KENNEY & CONLEY, P.C.**
100 Grandview Road, Suite 218
Braintree, MA 02184
Telephone (781) 848-9891
Facsimile: (781) 843-4216
Email: benjamin@kenneyconley.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Sarah R. London*
Sarah R. London