# EXHIBIT 17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*ALL ACTIONS* | MDL No. 2913<br><br>Judge William H. Orrick, III<br><br>**ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

**1.      PURPOSE**

On October 2, 2019, the Judicial Panel on Multidistrict Litigation entered a Transfer Order centralizing all related actions (and subsequently transferred related actions) in this litigation for coordinated or consolidated pretrial proceedings before this Court under MDL No. 2913.  The MDL is comprised of consumer class actions, individual mass tort actions, and actions on behalf of governmental entities and school districts.  This Order will govern discovery of electronically stored information ("ESI") in this MDL as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.  The parties agree to consult in good faith this District's Guidelines for the Discovery of Electronically Stored Information ("Guidelines") and utilize this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information ("Checklist").

2.  **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3.  **DEFINITIONS**

All technical terms shall follow or be defined by the "The Sedona Conference Glossary: E-Discovery and Digital Information Management."

4.  **LIAISON**

The parties each have identified or will identify e-discovery liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this MDL. The parties will rely on the e-discovery liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

5.  **PRESERVATION**

Prior to all cases being coordinated in this MDL, the parties discussed their preservation obligations and needs and agreed that preservation of potentially relevant ESI will be reasonable and proportionate. Responsive ESI created or received after January 1, 2007 will be preserved.[1] Defendants agree to meet and confer with Plaintiffs concerning those preservation efforts consistent with the Guidelines and Checklist.

6.  **SEARCH**

The parties recognize that there exist a variety of search tools and methodologies, including but not limited to the use of search terms and technology assisted review ("TAR") tools. The parties agree to meet and confer over the use of search tools and methodologies, including the use of search terms and TAR, before any particular tool or methodology is applied.

---

[1] JLI notes that the ESI Order entered in *In re Juul Labs, Inc. Prods. Liab. Litig.*, Case No. 18-cv-02499 (*Colgate*) specified that "[o]nly ESI created or received after January 1, 2013 will be preserved." (*Colgate*, Dkt. 92 at § 4(a)). JLI agrees on a prospective basis to take reasonable efforts to preserve ESI created or received after January 1, 2007.

Where potentially responsive ESI shall be searched using search terms, the parties agree to propose search terms they intend to employ to search for relevant and responsive documents. In the first instance, the producing party will propose search terms for the consideration of the receiving party. Proposed search terms will be subject to negotiation with and input from the requesting party. The requesting party may ask for (and the producing party will not unreasonably withhold) qualitative and quantitative information regarding search methodology, including but not limited to, production of search term hit reports, and associated testing and validation to be conducted after the methodology is implemented.

Agreement on a search methodology does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to conduct a reasonable search and produce all relevant and responsive documents of which a party is aware, regardless of whether the contain search terms of or some other search methodology agreed to by the parties or ordered by the Court. Discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the parties' conferral, and search terms do not supplant discovery requests.

To the extent a party is aware of non-duplicative documents that are relevant, responsive, non-privileged, and reasonably accessible, such documents will be produced regardless of whether they contain search terms or some other search methodology agreed to by the parties or ordered by the Court.

The parties acknowledge that there may be subsequent instances where potential modification to a previously agreed upon search protocol may be warranted. Should such an instance arise, the parties agree to meet and confer about modifications to a search methodology. If a party requests such a meet and confer, the parties will meet and confer within seven days.

The parties further agree that each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

Nothing in this Order shall be construed as precluding a producing party from performing a privilege review to determine if certain documents should be withheld.

## 7. PRODUCTION FORMATS

With the exception of Spreadsheets, Presentation files, Multi-Media files and other native files that cannot be converted to image files, the parties shall produce all relevant, responsive, and non-privileged ESI as Bates-stamped single-page 1-bit TIFF images with a load file in standard Opticon OPT or iPro LFP or Summation (DII) format that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excepted below, single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

(a) *Production Media*.

The parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (*e.g.*, FTP), or readily accessible computer or electronic media (*e.g.*, CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel or other files that cannot be understood reasonably unless displayed in native format. The producing party shall identify: (a) the Responding Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

Defendants Altria Group, Inc. and Philip Morris USA Inc. (collectively, the "Altria Defendants") shall produce documents in one of the following formats:

(i) Encrypted media format through electronic means, such as external hard drives, secure file sharing methods (*e.g.*, FTP), or readily accessible computer or electronic media (*e.g.*, CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any

native Excel or other files that cannot be understood reasonably unless displayed in native format. The producing party shall identify: (a) the Responding Party's name; and (b) the production date of the materials contained on the Production Media.

(ii) The Altria Defendants may also produce documents via websites, as Philip Morris USA has done for decades in smoking and health litigation, by posting documents available to Plaintiffs on Philip Morris USA's litigation document website, www.pmlitdocs.com.

(b) *Color*. Plaintiffs and JUUL shall produce documents in color where color is reasonably helpful to understanding or viewing the document (e.g., charts and graphics, tracked changes, or other highlights). Color images should be produced as single page JPG files at 300dpi with JPG compression and a high-quality setting as to not degrade the original image. For the Altria Defendants, the receiving party may request color versions of documents produced in black and white where color is reasonably helpful to understanding or viewing the document (e.g., charts and graphics, tracked changes, or other highlights), and within seven days of the request, the Altria Defendants will either produce the color versions or set our their refusal in writing.

(c) *Unique IDs*. Images shall be produced using a unique file name that will be the Bates number of that page (*e.g.*, ABC000001.TIFF). The Bates number must appear on the face of the image and to the extent practical, not obliterate, conceal, or interfere with any information from the source document. While Bates numbers will not appear on the face of the image for native documents produced, slipsheets shall be provided in accordance with subsection (h).

(d) *Parent-Child Relationships*. For ESI only, Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

(e) *Redactions*. If the parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s), as set forth in the stipulated Protective Order in this matter. If documents that the parties have agreed to produce in native format need

to be redacted, the parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained. Extracted text will not be provided for electronic documents that have been redacted. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

(f) *Confidentiality Designation*. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file, indicated on its corresponding TIFF placeholder and/or set forth as a metadata field.

(g) *Metadata Fields*. Plaintiffs and JUUL shall provide the system-generated and metadata fields (the "Production Fields") set forth in Exhibit A. The Altria Defendants shall provide the Production Fields set forth in Exhibit B. No less than two weeks before their first production of documents in this matter, the Altria Defendants shall provide a sample production to Plaintiffs. The parties may meet and confer concerning the Production Fields provided with the Altria Defendants' production and Plaintiffs reserve the right to request additional Production Fields associated with any production.

(h) *Native Format*. The Responding Party shall produce spreadsheets (*e.g.*, Excel), presentation files (*e.g.*, PowerPoint), and any other materials not readily convertible to TIFF format (*e.g.* three-dimensional design files) in native format. To the extent that they are produced in this action, audio, video, and multimedia files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the .TIF file will display those changes in the converted image file. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Exhibit A. For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation and stating, "File Provided Natively." Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the

BCC line. Upon request from the receiving party that any files be produced in native format (identified by Bates number), the parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied. The parties agree to meet and confer regarding a protocol for use of native files at depositions, hearings, or trial.

(i) *Text Files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (*e.g.*, ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, hard copy documents with redactions. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.

(j) *Physical/Hard Copy Documents*. Nothing herein shall relieve the parties of any obligations they may have to search for responsive Documents in hard copy form. The parties shall produce documents that exist solely in physical hard-copy format following this ESI Protocol. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The following objective coding fields should be provided, if applicable: (1) beginning Bates number, (2) ending Bates number, (3) page count, and (4) source location/custodian. The documents should be logically unitized. The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents. The ".tiff" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. The parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

(k) *Databases and Other Structured Data*. The parties shall meet and confer regarding the production format and scope of data contained in enterprise database or database management systems (*e.g.*, Oracle, SQL server, DB2), including the types of information stored

- 7 -

ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
MDL NO. 2913

Case 3:19-md-02913-WHO Document 2638 Filed 02/12/24 Page 9 of 112

in the database(s), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the receiving Party will need any information in native form in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.

(l) *Duplicates*. The Responding Party may use software to identify duplicate documents that are in files of individual or multiple Production Custodians. To the extent there are duplicate documents, the Responding Party need only produce a single copy of a responsive document, unless the Requesting Party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e., global level) and the custodian and path information will be provided for each document. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing party should provide an overlay file along with or within a reasonable time after each production.

(m) *Email Threading*. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

8. **PRODUCTIONS FROM REGULATORY PROCEEDINGS AND OTHER LITIGATION**

In the event a party intends to produce documents that have already been produced in a

- 8 -

ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
MDL NO. 2913

prior or related matter, the parties agree to meet and confer regarding production format.

**9.     PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer concerning whether the production of responsive ESI should occur in phases.

**10.    MODIFICATION**

This Order may be modified by Order of the parties or by the Court for good cause shown.

**IT IS SO ORDERED**.

Dated: December 17, 2019

HONORABLE JUDGE WILLIAM H. ORRICK

**Exhibit A:**
**Production Fields (Plaintiffs and Defendant JUUL)**

| BEGBATES | Start Bates (including prefix) -- No spaces or special characters |
|---|---|
| ENDBATES | End Bates (including prefix) - - No spaces or special characters |
| BEGATTACH | The identifier of the first page of the first document in a family group. This is used for page-level numbering schemes. |
| ENDATTACH | The identifier of the last page of the first document in a family group. This is used for page-level numbering schemes. |
| ATTACHNAME | File name of the attachment, with any attachments separated by semi-colon |
| ATTACHMENT | Child document list: BEGDOC# of each child (populated ONLY in parent records) |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| REDACTION | Whether the document contains redactions (Yes/No) |
| CUSTODIAN | Custodian/source/source party of initial instance of document/family collected |
| DUPCUSTODIAN | Custodian(s)/source(s)/source parties of any instances of document/family collected |
| FROM | Sender of an email. |
| TO | Recipient(s) from the to line of an email. |
| CC | Carbon copy recipient(s) on an email. |
| BCC | Blind carbon copy recipient(s) on an email. |
| SUBJECT | Subject line from an email. |
| DATESENT | The date an email was sent. |
| TIMESENT | The time an email was sent. |
| DATERCVD | The date an email was received. |
| TIMERCVD | The time an email was received. |
| FILEEXT | The file extension of the native file. |
| AUTHOR | Person who created the file. A file can have one or no author. |
| MODIFIEDBY | Person who last modified or saved the item, |
| CREATEDATE | The date the file was created. |
| CREATETIME | The time the file was created. |
| DATELASTMOD | The date changes were last made to a file. |
| TIMELASTMOD | The time changes were last made to a file. |
| FILENAME | The original name of the first instance native file. |
| PGCOUNT | The number of pages in a document. |
| DOCTYPE | The kind of file a document came from. |
| PARENTDATE | The date of the parent document. For emails this will be date sent and for non-emails date last modified. |
| PATH | The full file, folder, or directory structure from which the initial instance of a document was collected. This should be the path where the document is kept in the usual course. |
| HASH | Numeric value of a fixed length that uniquely identifies data. |
| NATIVEPATH | The path to a copy of a file within the production deliverable. |
| TITLE | Available title information extracted from MS Office and PDF documents. |

## Exhibit B:
## Production Fields (Altria Defendants)

| |
|---|
| Start and End Bates Numbers (including prefix) |
| The identifier of the family group. |
| File name of the attachment |
| Whether the document contains redactions (Yes/No) |
| Custodian/source(s) |
| Sender or author of a document |
| Recipient(s) from the to line of an email. |
| Carbon copy and blind copy recipient(s) on a document. |
| Subject line from an email or the title of a document. |
| Document date |
| The file extension of the native file if produced in that format. |
| The original name of the first instance native file. |
| The number of pages in a document. |
| The full file, folder, or directory structure from which the initial instance of a document was collected. |
| Relative path to any files produced in native format if produced in that format. |
| Relative path to any ORC/extracted text file in the production set. |