# EXHIBIT 18

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

IN RE: ZANTAC (RANITIDINE)                         MDL No. 2924
PRODUCTS LIABILITY                                 20-MD-2924
LITIGATION

                                   JUDGE ROBIN L. ROSENBERG
                          MAGISTRATE JUDGE BRUCE E. REINHART

_____/

THIS DOCUMENT RELATES TO: ALL CASES

### PRETRIAL ORDER # 29
**Protocol for Discovery of Electronically Stored Information and Hard Copy Documents**

The Court recognizes that this MDL, No. 2924, (the "Litigation") involves not only a substantial variety of plaintiffs including both entities and individuals, but also many defendants who are also differently situated from each other.  This Protocol was negotiated amongst, and represents compromises by, the many Parties based upon the unique facts, circumstances and needs of this Litigation.  Recognizing this diversity of Parties in this Litigation, the Court emphasizes that this Protocol remains subject to the overriding principle of proportionality.  The Court also expressly emphasizes that in light of these unique circumstances, not only should this Protocol not be taken to bind any Party here to these or similar provisions in future litigation, but it cautions that the provisions here were negotiated by the Parties in light of the very unique circumstances of this Litigation and thus may not be well-suited to other litigations.

It is hereby **ORDERED** that the discovery of electronically stored information ("ESI") and hard copy documents in the Parties' possession, custody, or control shall be conducted in accordance with the following Protocol for Discovery of Electronically Stored Information and Hard Copy Documents ("ESI Protocol" or "Protocol").

## I.  DEFINITIONS

As used herein, the following terms shall have the following definitions:

1. The term "Electronically stored information" or "ESI" is coextensive with Fed. R. Civ. P. 34, and means information or data stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy.  It shall include, but not be limited to computer-generated information or data, stored in or on any storage media located on hard drives, USB or thumb drives, databases, computers, disks, CD-ROM, magnetic tape, optical disks, or other devices for digital data storage or transmittal; as well as writings, records, files, correspondence, reports, memoranda, calendars, diaries, minutes, E-mail, telephone message records, hard drives, removable computer storage media such as tapes, discs and cards, printouts, document image files, Web pages, databases, spreadsheets, books, ledgers, journals, orders, invoices, bills, vouchers, checks statements, worksheets, summaries, compilations, computations, charts, diagrams, PowerPoints or other demonstrative media, graphic presentations, drawings, films, charts, digital or chemical process photographs, histopathology, cytopathology, biopsy, tissue specimens or slides, video, phonographic, tape or digital records and any transcripts thereof, drafts, jottings and notes, studies or drafts of studies or other similar such material, or other real or virtualized devices or media. Information which serves to identify or locate such material, such as file inventories, file folders, indices, and metadata.

2. The term "Documents" shall be interpreted to have the meaning contemplated by Federal Rule of Civil Procedure 34(a)(1)(A) and shall include ESI.

3. The terms "ESI" and "Document(s)" are used interchangeably throughout this Protocol and, to the fullest extent possible, both terms are intended to encompass both electronically stored information and documents as defined by the Federal Rules of Civil Procedure.

4. The term "Party" means any person, business organization, or legal entity that is a named plaintiff or defendant in any filed case consolidated under this MDL.

5. The term "Requesting Party" means the Party requesting the production of Documents.

6. The term "Producing Party" means the Party that may be producing Documents in response to the request of the Requesting Party.

7. The term "Individual Plaintiff" means a plaintiff who is not a business organization or legal entity.

8. The term "Document Family" means a collection of pages or files maintained together constituting a logical single communication of information, but consisting of more than a single stand-alone record. Examples include a fax cover sheet, the faxed letter, and an attachment to the letter - the fax cover sheet being the "Parent," and the letter and

attachment being a "Child," or an email and associated attachments, or a presentation with embedded files. The Parties will take reasonable steps to preserve parent-child relationships in ESI and hard copy Documents already in existence from the ordinary course of business.

9. The term "native" means ESI in the file type for (or of) the application in which such ESI is originally created, viewed and/or modified.

10. "Extracted text" or "Full Text" means the text extracted from a native Document, and includes all header, footer and Document body information when available. A "Text File" is a file containing the full text of native files extracted directly from the native file, or, in the case of hard copy Documents or scanned PDF Documents, subject to OCR, a file containing the text resulting from the OCR.

11. The term "metadata" means: (i) structural information embedded in a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such file; (ii) information generated automatically by the operation of a computer or other information technology system when a file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system; and (iii) production process fields created in the course of producing Documents.

12. The term "OCR" means the optical character recognition file which is created by a technology process that captures text from an image for the purpose of creating a parallel text file that can be associated with the image and is searchable.

13. The term "Load file" means an electronic file that relates to a set of scanned images or electronically processed files, and that indicates where individual pages or files belong together as Documents, to include attachments, and where each Document begins and ends, and may contain data relevant to the individual Documents such as selected metadata, coded data, and extracted text. A load file is used to import all image, native, and text files and their corresponding production information into a Document database. The Producing Party shall produce a load file for all produced Documents in accordance with specifications provided herein to ensure transfer of accurate and usable data.

14. The term "unitization" means the assembly of individual scanned pages or electronically processed files into Documents and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

## II. APPLICABILITY

1. This ESI Protocol applies to Parties that are business organizations or legal entities, but does not apply to Individual Plaintiffs, except as indicated.

   i. Section III applies to all Individual Plaintiffs.

Case 9:23-md-03084-CRB   Document 261-10   Filed 02/12/24   Page 5 of 22

      ii.    Certain provisions of Section VI will also apply to Individual Plaintiffs, with the scope and implementation subject to additional meet and confer among the Parties.  Nothing herein shall be considered a waiver of any Parties' arguments at such meet and confer.

2. Nothing in this Order is intended to limit the duty of a non-party, including claimants in the registry or retained clients not yet in the registry, to preserve evidence as otherwise required by law.

### III.    ESI PRODUCTION BY INDIVIDUAL PLAINTIFFS

1. The scope of any search and production by Individual Plaintiffs of Documents shall be subject to a meet and confer process and any other production in connection with any Plaintiff Fact Sheet or other Court-ordered process will be the subject of a future Court order including in conjunction with bellwether and/or class representative discovery.  Absent further agreement or order of the Court, Individual Plaintiffs shall produce Documents other than those submitted through the census forms system, or pursuant to another order of the Court) in native file format, PDF, or such other reasonably useable format that retains the relevant characteristics of the original Document.  Any Document that requires redaction shall be produced in image format, *e.g.*, TIFF or PDF.  All of Individual Plaintiffs' production Documents shall be uniquely named and sequentially numbered with Bates Stamps.

      i.    For email families in Individual Plaintiffs' productions, the parent-child relationships (the association between emails and attachments) should be preserved, *i.e.*, email attachments should be consecutively produced with the parent email record.

      ii.    To the extent Individual Plaintiffs produce a Document other than in native format, and Defendants request metadata or other information, the Parties shall reasonably confer about an alternative production format for such Document, including the necessity for such alternative production format.  Any such request by a Defendant shall be specific and targeted.

      iii.    An Individual Plaintiffs' social media may be produced in the Litigation in PDF format.  A production of social media material made in PDF format will be deemed complete if it contains, to the extent reasonably accessible to individual Plaintiffs through the platform: (i) social media posts, comments, replies, likes and responses authored or received by the producing Plaintiff (*i.e.*, not cropped or cutoff), with visible dates of posts, responses, and replies; (ii) photos and images and associated post information (*i.e.*, dates and reactions visible and not cut off); and (iii) social media chat or messenger conversations with dates and participants visible.  A photograph of a computer monitor or screenshot of the social media material that does not comply with sub-parts (i)-(iii) is not sufficient for production.

iv. The Individual Plaintiffs will make a good faith attempt at substantial compliance with these requirements. To the extent an Individual Plaintiff's production format does not reasonably comply with Section III.1 above, such good faith failure will not be the sole basis of a motion to dismiss, but may be considered in determining adequacy of proposed class representation or bellwether selection.

## IV. COOPERATION, COMMUNICATION, AND DISPUTE RESOLUTION

1. The Court places great importance on cooperation and commends the Parties for their cooperative efforts to date. The Parties shall make a good faith effort to comply with the procedures set forth in this ESI Protocol consistent with the Federal Rules of Civil Procedure. The Court expects the Parties to continue to cooperate in good faith throughout the matter consistent with the Federal Rules of Civil Procedure and the Local Rules for the U.S. District Court for the Southern District of Florida. Consistent with the U.S. District Court for the Southern District of Florida's Checklist for the Rule 26(f) Conference Regarding Electronically Stored Information, the Parties shall engage in an early conference of counsel to exchange information in order to facilitate efficient and effective production of ESI, to the extent it is applicable to a particular Party.

2. To the extent reasonably possible, the production of ESI and Documents shall be conducted to maximize efficient access to ESI Documents and minimize related discovery costs. The terms of this ESI Protocol shall be construed so as to ensure the prompt, efficient, proportional, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure and any orders by this Court.

3. Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any discovery demand.

4. Nothing in this Protocol shall be deemed to prevent a Party from seeking the Court's intervention with respect to any issues that may arise regarding the application of this Protocol to a Document request issued to a Producing Party and/or any responses or objections a Producing Party may have with respect to any such request if the Parties are unable to resolve any such issues, responses, or objections without the Court's assistance. Likewise, nothing in this Protocol shall be deemed to prevent any other Party from opposing relief sought from the Court.

5. The Parties, through Lead Counsel or their designees, shall promptly meet and confer in good faith regarding any circumstance where application of this Protocol is not reasonably practicable or where this Protocol does not otherwise provide guidance or direction for the method of production. The Parties cannot, by consent, modify the terms of this Order, but the Parties may (after meeting and conferring) agree in writing, in the form of a written communication with the subject designated as "Agreement to Waiver under PTO # 29" and a copy provided to the Special Master, to waive their rights under certain provisions of this Order, consistent with proportionality or as needed in particular cases.

6. The Parties will ensure that their respective counsel and any third-party vendors hosting data produced in the Litigation shall maintain the appropriate level of data security in an effort to reasonably prevent a security breach of protected and/or proprietary information.

7. <u>Time Frame for ESI Issue Resolution</u>. The Parties recognize that as production of ESI proceeds, there may be certain problems that arise; as one example, there may be files that appear to have been corrupted. When such production or post-production issues occur, the Producing Party shall be promptly notified in writing of the issue. The Producing Party will undertake reasonable efforts to acknowledge receipt of such a notice within 5 business days after the initial inquiry and respond substantively no later than 10 business days after the initial inquiry. If the responding Party believes the ESI issue in question is particularly complex and requires more than 10 business days to respond substantively, then within 5 business days the responding Party will provide a general explanation of the process necessary to answer the question and provide an estimated response date.

## V. SCOPE OF ESI

1. To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

2. A Party may object to the production of ESI that is not reasonably accessible. A Party raising such an objection from a source of ESI not already identified as not reasonably accessible in this Protocol, will expeditiously inform the requesting Party of the relevant ESI that is not reasonably accessible and the Parties will meet and confer.

3. Producing Parties shall not, without good cause, have an obligation to preserve, search, or produce from the following sources of ESI for purposes of this Litigation:

   i. Orphaned Data: unknown or unindexed materials retained in tape, floppy disk, optical disk, or similar formats, for purposes of disaster recovery;

   ii. Server, system, or network logs;

   iii. Operating system files, executable files, and system files included on the National Institute of Standards and Technology ("NIST") List (http://www.nsrl.nist.gov/);

   iv. Data stored on photocopiers, scanners, and fax machines, unless routinely maintained in the ordinary course of business;

Case 3:23-md-03084-CRB   Document 261-19   Filed 03/12/24   Page 8 of 22

    v.   "Slack," "fragmented," or "unallocated" data on hard drives for data that was deleted prior to the duty to preserve arising, but not data which is simply in a "trash," "recycle bin" or similarly easily retrievable form;

    vi.  Online access data such as temporary internet files, history, cache, cookies, etc.;

    vii. Data in metadata fields from that are frequently updated automatically in the usual course of business;

    viii.  Random access memory ("RAM") and/or similar ephemeral data;

    ix.  Electronic mail sent to or from a mobile phone, tablet, or Personal Digital Assistant, provided that an identical copy of such mail is saved and available elsewhere within the Party's possession, custody or control; and

    x.   ESI comprising structural files (e.g., .CSS, .XSL, .XML, .DTD, etc.), that do not contain independently relevant information and are not necessary for the processing, review, rendering or understanding of any other ESI.

## VI.   SEARCH METHODOLOGY

1. All Parties shall make a reasonable search for reasonably accessible discoverable information in ESI systems, removable media, and cloud-based accounts including social media and hard copy paper Documents.

2. Each Party shall perform reasonably diligent searches of the sources within their custody or control to collect responsive and reasonably accessible ESI, regardless of whether such sources are currently in use, with the exception of sources or devices of an entity Party not likely to have responsive information.  These may include but are not limited to: (i) email accounts used by a Party; (ii) electronic devices used by a Party (e.g., desktop or laptop computers, tablets, digital cameras); (iii) any other hardware storage devices used by a Party (e.g., external hard drives, memory cards, USB or thumb drives, CDs/DVDs); (iv) any social media used by a Party (e.g., Facebook, Instagram, LinkedIn, Twitter, MySpace, YouTube, Pinterest, or other online collaboration tools such as Google+ or Yahoo! groups); (v) any website where a Party made online postings (e.g., on a blog, message board, etc.); (vi) any cloud storage used by a Party (e.g., DropBox, Microsoft Office365 Account, Google Drive, iCloud, Amazon Drive, etc.).

3. Reasonably diligent searches may require running search terms agreed upon by the Parties; reviewing files, communications, videos, and photographs; or otherwise conducting an actual, physical search of the sources.  Counsel for all Parties shall take an active role in identifying, preserving, collecting, reviewing, and producing all responsive ESI and associated metadata.  Parties shall produce responsive ESI in a manner that includes and preserves metadata.  If a Party contends that the production of materials sought from one or more sources are outside the scope of Fed. R. Civ. P.

26(b)(1), the Parties shall meet and confer to attempt to resolve the issue. Nothing in this Protocol shall prevent a Party from seeking the Court's intervention with respect to any such issue if the Parties are unable to resolve it themselves or from preventing any other Party from opposing any relief sought.

4. The Parties shall confer regarding the identification and collection of sources of relevant ESI. The Parties shall meet and confer regarding: (a) the identity and role of custodians possessing relevant information from whom Documents will collected and produced; (b) search methodology and search terms, if any, to be applied, and use of technology assisted review, or similar technologies, if any; (c) relevant data sources, including custodial, noncustodial, and third-party Documents; and (d) any applicable and appropriate timeframes for the collection, review, and production of Documents.

5. The Parties will confer regarding search methodologies, search terms, date restrictions, and custodian restrictions. Before implementing any search based on key word search terms, the Producing Party will provide a list of proposed search terms to the Receiving Party (i.e., the Party requesting or receiving Documents) and the Parties will discuss those terms and any additional terms, or other requested changes, proposed by the Receiving Party. The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate methods to increase the relative precision or proportion of relevant and responsive Documents within the search results and production sets, which may include exchanging "hit count" reports and having the Producing Party perform random sampling of nonresponsive sets. A Producing Party will not, however, be required to share the sampling of nonresponsive Documents with the Receiving Party. The exchange of information shall not waive a Producing Party's or Receiving Party's objection or rights regarding the production of such Documents. Nothing in this provision is intended to replace a Party's obligations under the Federal Rules of Civil Procedure to produce non-privileged relevant discovery, proportional to the needs of the case, in connection with searches conducted outside of the agreed search methodology.

6. To the extent a Producing Party has served production sets and responsive information in other litigations that may be demanded in this MDL, a Party is not obligated to re-run or re-validate those production sets or responsive information and is not obligated to re-collect the Documents that formed the basis for that production for the purpose of obtaining additional metadata as described in this Protocol, provided, however, that the Producing Party provides an explanation of the methodology and date ranges used to assemble the production(s). The Requesting Party may come forward with a particularized need for additional metadata information as to a specific Document the Parties will meet and confer to discuss reasonable efforts to locate and recollect such information.

7. The utilization of prior productions by a Producing Party will not exempt that Party from having to run additional and/or supplemental productions to account for additional keyword searches, custodians, expanded date ranges, etc. that were not taken into

account in assembling and serving the prior productions and relevant information, about which the Parties shall meet and confer in good faith.

8. The Parties will set a deadline for the Plaintiffs and each of the Defendant Brand Manufacturers individually to finalize the above search process including but not limited to the search methodology, the ESI sources to search, the agreed to search terms and testing consistent with the above and the United States District Court for the Southern District of Florida ESI Checklist. The Plaintiffs will meet and confer with the Generic and Retailer Defendants about the same at a mutually agreed to time.

9. At the next Case Management Conference, each Brand Manufacturer shall provide a report to the Court on the status of its ESI search and production. Liaison counsel for the Generic and Retailer Defendants shall also provide a report on the status of ESI search and production by those Parties.

## VII. FORMAT OF PRODUCTION

The Parties will produce ESI and hardcopy Documents in accordance with the following protocol:

1. <u>Non-Database ESI</u>.

    i. With the exceptions of ESI contained within databases and other structured data addressed in Sections VII.2-5, VII.11 and ESI to be produced in "native" format addressed in Section VII.9 below, all ESI shall be produced in TIFF format. All TIFF formatted Documents will be single page, black and white, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11-inch page size, except for Documents requiring different resolution or page size. Original Document orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party or its vendor (i.e., portrait to portrait and landscape to landscape). Hidden text, tracked changes, comments, notes, and other similar information viewable within the native file shall also be imaged so that this information is captured on the produced image file as reasonably processed using common litigation support tools. Except as noted below in Sections VII.3, 4, and 6 and otherwise referenced, the Parties agree that, where ESI needs to be redacted, it shall be produced in the TIFF format described above with each redaction clearly indicated.

    ii. A unitization file, in standard format (*e.g.*, Opticon, Summation DII) showing the Bates number of each page, the appropriate unitization of the Documents and the entire family range, will accompany each TIFF Document.

    iii. A Unicode formatted delimited text file that contains agreed upon metadata fields (see Section VII.7), if those fields exist, and associated extracted text (or any OCR for paper-based, redacted Documents, or Documents with no

extracted text) (see Section VII.1.iv) should also be produced and use the following delimiters:

Field Separator, ASCII character 020: ""
Quote Character, ASCII character 254 "þ"
Multi-Entry Delimiter, ASCII character 059: ";"

If the Producing Party requests alternate delimiters, the Parties shall agree on alternate delimiters.

iv. Document level extracted, searchable full text and metadata will be produced for non-redacted ESI. Each extracted full text file will be in Unicode formatted text file and named according to the first Bates number of the corresponding electronic file.

v. Each TIFF or .TIF version of an unredacted electronic Document will be created directly from the corresponding native file.

2. <u>Unredacted Spreadsheets</u>.

i. All unredacted spreadsheets (*e.g.*, MS Excel, Numbers, comma delimited data, tabular numerical data, etc.) shall be produced in their native format and where attached to emails the attach spreadsheets or other files produced in native format should not be separated from each other and should be linked using the Attachment Range fields.

ii. The file name should match the Bates number assigned to the file.

iii. The extractable metadata and text should be produced in the same manner as other Documents that originated in electronic form.

iv. A slipsheet with the words "File Produced Natively" with Bates number and Confidentiality designation shall be placed to mark where the original Native file was found in the production set.

3. <u>Redacted Spreadsheets</u>. For redacted spreadsheet files (e.g., MS Excel, Numbers, comma delimited data, tabular numerical data, etc.), the Parties shall produce redacted spreadsheet files as native rather than image files, and to the extent it is reasonably practicable, will use a native redaction tool. The Producing Party will identify the natively redacted spreadsheet as redacted in the associated "Redacted" metadata field. If a Producing Party cannot produce redacted Excels using a native redaction tool, the Parties will meet and confer to agree on a mutually agreeable format of production.

4. <u>Multimedia/Audio/Visual Files</u>. Audio and video files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi) shall be produced in native format. The Parties

shall meet and confer to discuss the appropriate manner for the production of audio/visual files that require redaction.

5. <u>Use of Native Files</u>. The Parties agree to meet and confer on a future protocol governing the use and format of Documents produced natively at trial, depositions, or hearings.

6. <u>Presentations and Word Processing Documents</u> shall be produced in single-page color JPEG format (300 DPI). All tracked changes in the metadata must be visible for these Documents. All other requirements for productions stated in this ESI Protocol Order regarding productions in TIFF format apply to any productions of Documents and/or ESI in JPEG format pursuant to this paragraph. If any animation, video, or audio was included in the original presentation or word processing Documents, that fact shall be identified to the Requesting Party as part of the metadata provided with the redacted presentation. As an alternative to the foregoing a Producing Party may produce word processing and presentation Documents in native format.

7. <u>Metadata</u>.

   i. The metadata fields specified in Appendix A associated with each electronic Document will be produced, to the extent they exist as electronic metadata associated with the original electronic Documents. No Party will have the obligation to manually generate information to populate these fields if such fields cannot be reasonably extracted or generated from the Document or Document collection using an automated process with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Page Count, (h) Redacted (Y/N), which should be populated regardless of whether the fields can be populated pursuant to an automated process.

   ii. The Producing Party may redact, or remove from production, protected and/or privileged metadata, so long as all revisions or redactions are individually noted on the privilege log, and noted as "redacted" in the metadata fields so removed, a process which shall be more fully described in the Confidentiality Order.

8. <u>Embedded Files</u>.

   i. If a Document has another responsive file embedded in it, (e.g., PowerPoint with a spreadsheet in it), the Producing Party shall extract and produce the embedded Documents as a separate Document and treat such Documents as an attachment to the original Document unless such original Document is produced in native format with the embedded information contained within it. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field.

    ii.  The Producing Party need not produce embedded files as separate files that do not have user created content, including but not limited to irrelevant inline image files (e.g., logos, icons, emoticons, and footers).

    iii.  The Producing Party need not produce embedded Excel files as separate files that have only duplicative data and not hitting search terms of what is available in the parent Document from which they were extracted.  The Requesting Party can meet and confer with the Producing Party to request the underlying Excel files.

9.  <u>Native Files</u>.

    i.  With the exception of ESI requested in native format as detailed in Section VII.2-6 and otherwise referenced, the Requesting Party may not request or seek to compel the production of ESI in native format on a wholesale basis, although the Producing Party retains the option to produce ESI in native file format after meet and confer with the Requesting Party.

    ii.  Subsequent to the production of the imaged Documents, however, and according to the following protocol, a Requesting Party may request from a Producing Party that certain imaged files or of files be produced in native format, because the files are not reasonably usable in an imaged form.  Such a request shall not be unreasonably denied by a Producing Party.

    iii.  The Requesting Party shall provide the reason for its request that the Documents be produced in their native format, and provide the specific Bates range, or list of Bates numbers of the imaged Documents sought to be produced in native file format.

    iv.  The Producing Party shall have 10 business days to produce the requested native files, or it may object to the demand as unreasonable as follows:

        a.  Within 10 business days of receiving a request to produce native files, the Producing Party will respond in writing, setting forth its objection(s) to the production of the files.

        b.  The Parties will meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of such files in native format within 10 days of submission of the Responding Party's objection(s), the Parties will submit the matter to the Court, pursuant to an Order to be entered concerning the Discovery Process and Discovery Dispute Resolution.

    v.  Any produced native files, will be assigned a unique file name and hash value and will include a cross reference to the Bates number it was originally produced with.

10. <u>Production of Documents Collected as Paper</u>. Documents in paper format, the same specifications should be used as the production of ESI in Section VII.1.i.-iv. and VII.5 as applicable, with the following clarifications:

    i. A delimited text file that contains reasonably available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian/Source, Confidentiality, Redacted, and Number of Pages.

    ii. To the extent that Documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the Documents for production, full text should also be delivered for each Document. Text should be delivered on a Document level in an appropriately Unicode formatted text file (.txt) that is named to match the first Bates number of the Document.

    iii. A text cross reference load file should also be included with the production that lists the beginning Bates number of the Document and the relative path to the text file for that Document on the production media.

    iv. A Producing Party will make best efforts to unitize Documents collected as paper prior to scanning but are not obligated to alter a pre-existing organizational structure. Where the Documents were organized into groups, such as boxes, folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file. The relationship among the Documents in a folder or other grouping should be reflected in proper coding of the beginning and ending Document and attachment fields to the extent reasonably practicable. Where a Document, or a Document group - such as a box, folder, clipped bundle, or binder - has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the Document or grouping.

11. <u>Production of Databases and Other Structured Data</u>.

    i. Generally, relevant ESI stored in enterprise databases should be produced in a mutually agreeable data exchange format.

    ii. The Parties will meet and confer regarding the production of information from structured data (e.g., Microsoft Access or proprietary databases). After the meet and confer, and subject to agreement with the Requesting Party on content, format and scope, information may be produced in an export from such database, provided the export is in a reasonably usable electronic format, such as an Excel spreadsheet in native format, unless not practicable, in which case the Producing Party shall notify the Receiving Party and the Parties shall promptly meet and confer to attempt to resolve the issue.

       iii. The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured data source.

12. <u>Compressed Files</u>. Compression file types (e.g., .CAB, .GZ, .TAR, .z, and .ZIP) shall be decompressed in an iterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

13. <u>Parent-Child Relationships</u>. Parent-child relationships (the association between an attachment and its parent Document in a Document family) that have been maintained in the ordinary course of business shall be preserved for both ESI and hard copy Documents. For example, for electronic production of a hard copy folder with Documents contained in the folder, the cover/title of the folder shall be produced first, with all contents of the folder in sequential Document order behind the containing folder. For email families, the parent-child relationships (the association between emails and attachments) should be preserved, i.e., email attachments should be consecutively produced with the parent email record.

14. <u>Attachments</u>. The Parties agree that if any part of a Document family (e.g., an email or its attachments) is responsive, the entire email, including attachments will be produced, except any attachments that must be withheld on the basis of privilege or attachments that are irrelevant. The attachments will be produced sequentially after the parent. Any withheld attachments shall be slip-sheeted in the place where the attachment would normally be and designated as withheld, including the reason for the withholding, in the metadata. The Producing Party will produce the metadata on the slipsheet with the bates number, the basis for withholding, and confidentiality designation. The Parties agree to meet and confer to the extent necessary regarding the appropriateness of withholding specific attachments that the Producing Party has deemed irrelevant or wholly pertain to a product not at issue in this case that the Requesting Party deems relevant and responsive to discovery.

15. <u>Documents Containing Color</u>. If an original Document contains color, the Producing Party shall not deny reasonable requests for color copies of the original. Reasonable requests for color versions of Documents originally produced in black-and-white shall not be denied. Upon receipt of a request for a color copy of a Document originally produced in black-and-white, the Producing Party shall (a) provide a color image by e-mail to the requesting Party; and (b) provide a replacement image and load file bearing the same Bates number for that previously produced Document with its next production.

16. <u>Hidden Text</u>. ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments. Any exceptions to this shall be subject to notice and a meet and confer.

17. <u>Processing Exceptions, Password-Protected, Encrypted, or Proprietary-Software Files</u>. With respect to any ESI items that are password-protected or encrypted, the Producing Party will produce such files in an unprotected/unencrypted form. If a password or encryption key is not available, the Producing Party shall take reasonable steps to access the Documents so that the Documents can be reviewed and produced if appropriate. In the event that exception, encrypted or password-protected Documents cannot be accessed because of processing exceptions, encryption or additional software requirements, despite good faith efforts to do so, the Parties shall promptly meet and confer regarding the next steps with respect to such ESI.

18. <u>Production Media</u>. Documents shall be produced on CD-ROM, DVD, or external hard drive (with standard PC-compatible interface), or via secure FTP site, or via such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each item of Production Media shall include: (1) the name of the litigation and the case number; (2) the identity of the Producing Party; (3) the production date; (4) the Bates Number range of the materials contained on such Production Media item; and (5) the Production Volume Number of the Production Media. Any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced. However, produced, a Producing Party shall provide clear instructions for accessing the production, including providing any necessary passwords or encryption keys contemporaneously with the production.

19. <u>Bates Numbering</u>. All ESI that is permitted to be, and is, produced in non-native format shall contain a legible, unique Bates number and confidentiality notice, where applicable, which will be electronically burned onto the page image in a manner that does not obliterate, conceal, obscure, or interfere with any information from the source Document. No other stamp or information will be placed on a Document other than Bates number, confidentiality notice, and any redactions as may be required, except where, by agreement, Documents previously produced are produced in this matter, those Documents may include additional markings. To the extent possible, the Bates number must be oriented in the same manner as the majority of the text on the page and will be sequential within a given Document. Bates numbering must always: (1) be unique across the entire Document production; (2) maintain a constant prefix, production number and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given Document; and (5) identify the Producing Party. If a member of a Document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected Document), those technical problems shall be identified and disclosed to the requesting Party by production of a Bates-labeled slip sheet that states "Technical issue—file cannot be processed" or otherwise indicates on its face that a processing error has occurred; the associated metadata for the file with the technical problem shall be produced if reasonably possible. A Requesting Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

20. <u>Confidentiality Designations</u>. If a particular paper Document or ESI item is designated for confidential treatment pursuant to the terms of the stipulated Confidentiality Order entered by the Court in the Litigation (PTO # 26), the designation shall be included in the appropriate metadata field in the load file.

21. <u>Other</u>. The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production and will seek Court intervention if necessary. All ESI shall be processed so as to show the date in Universal Coordinated Time.

## VIII. DE-DUPLICATION & E-MAIL THREADING

1. <u>De-Duplication</u>.

    i. Parties may globally de-duplicate identical ESI vertically within each custodian and horizontally across custodians on a family basis using either MD5 or SHA1 hash values and the hash function shall remain consistent across all productions. If used, the Parties shall de-duplicate stand-alone Documents only against stand-alone Documents and shall de-duplicate Document families only against other Document families. De-Duplication shall not break apart families. ESI that is not an exact duplicate may not be removed.

    ii. The Parties agree that an e-mail that includes content in the "bcc" or other blind copy field shall not be treated as a duplicate of an otherwise identical e-mail that does not include content in the "bcc" or other blind copy field.

    iii. To the extent that deduplication is used, the Parties expressly agree that a Document produced from one custodian's file but not produced from another custodian's file as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file. To the extent the Producing Party can reasonably produce from the production database, all custodians of the Duplicate ESI shall be listed in the "AllCustodians" field. In the event of rolling productions of Documents or ESI items, the Producing Party will, as needed, supplement the load files with updated AllCustodians information. Duplicate custodian information may be provided by a metadata "overlay" and shall, if not available to be produced upon production of the first instance of the Document, be produced on a rolling basis as a particular custodian's files are produced but no later than the custodian's production file has been deemed as complete.

2. <u>E-mail Threads and Attachments</u>.

    i.   The Parties agree that a Producing Party may review only the most inclusive email thread, and that confidentiality designations may be propagated to lesser included threads, and that a higher confidentiality designation applied to a lesser included thread cannot form the sole basis of a challenge to confidentiality. The Parties agree to meet and confer in good faith before any such challenges are raised in connection with the production of lesser included threads.

    ii.   A Producing Party shall produce all e-mails separately and not as part of an inclusive e-mail thread except for any e-mails requiring redaction, even though such redacted e-mails were transmitted by themselves or as part of a non-inclusive shorter e-mail thread, provided that:

        a.   All previous emails (content and header information) in the thread are contained within the produced final message.

        b.   Where a prior email contains an attachment, that email and attachment shall not be removed as a lesser inclusive email.

        c.   The Producing Party will make reasonable efforts to correct any errors that occur as part of its efforts to produce redacted e-mail chains, as described above, including but not limited to incomplete production of attachments.

        d.   If any issues arise from the Producing Party's production of redacted e-mail chains, even if not strictly production "errors," the Producing Party and the Requesting Party will meet and confer in good faith to resolve or address such issues.

        e.   The above most "inclusive" e-mail production for redacted e-mails is not intended to allow the Producing Party to withhold e-mail thread messages' lesser inclusive emails that are otherwise not privileged and do not require privilege redactions. To the extent this arises, the Parties will meet and confer regarding an approach to address and resolve this issue.

## IX.    MISCELLANEOUS

1.   The Producing Party does not have an obligation to create an English translation of a Document for purposes of discovery. English translations, created in the ordinary course of business, of responsive, non-privileged Documents will be produced, subject to the other Orders of this Court. The Producing Party does not have an obligation to associate an identified English translation to a foreign language original, when the Documents are not located together or otherwise associated with one another in the ordinary course.

2. A Party producing responsive ESI need not produce the identical Document in paper format when its reasonable investigation indicates that the paper Document is identical to the already-produced ESI however if the Producing Party does so, the Parties must meet and confer about it.

3. In the event the parties are unable to reach agreement as to any issue raised by this Order, the parties shall notify and confer with the Special Master. The Special Master is directed to facilitate discussions relating to the obligations in this Order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 17th day of June, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

APPENDIX A

| FIELD | FORMAT | DESCRIPTION |
|---|---|---|
| BEGDOC | Fixed-Length Text | Beginning Bates number |
| ENDDOC | Fixed-Length Text | Ending Bates number |
| BEGATTACH | Fixed-Length Text | Beginning of family range, first number of first family member |
| ENDATTACH | Fixed-Length Text | End of family range, last number of last family member |
| AttachCount | | The number of attachments to a document. |
| Attachment Withheld | (Yes if withheld, Blank if not) | Specifies if an attachment was withheld for any reason and slipsheets the withheld attachment |
| CUSTODIAN | Multiple Choice | Custodian name |
| ALL CUSTODIANS | Multiple Choice | If global deduplication is used, this field will be populated with the original custodian and custodians who also had a copy of this document or document family, but which is not being produced because of deduplication. |
| Author | Name | Author of document auto populated from document properties. No party shall have an obligation to manually populate this field. |
| Last Saved By | | Value shows within the "last saved" metadata field. |
| DATE_CREATION | Date (date:time) | Creation Date and Time File System |
| DATESENT | Date (date:time) | Sent Date and Time for email |
| Date Received | Date (date:time) | Received Date and Time for email |
| DATELASTMOD | Date (date:time) | Last Modified File System |
| FILEEXT | Fixed-Length Text | File Extension |
| FILENAME | Fixed-Length Text | File Name (longfile name) |
| HIDDENTEXT | (YES if flag present, blank if not) | Flag whether document has hidden text, as is reasonably available from document properties |
| HASTRACKCHANGES | (YES if flag present, blank if not) | Flag whether document has track changes, as is reasonably available from document properties. |

| Title | | Any value populated in the Title field of the document properties |
|---|---|---|
| File Path | | The full path to the file at its original location (for emails, the full folder path to where the e-mail was stored). |
| File Size | Number field | File size, in megabytes |
| HASHVALUE | Fixed-Length Text | Algorithmic based Hash Value generated by accepted method such as MD5 or SHA1 (or CONTROL_ID for scanned paper) |
| FileType | | The file type of a document. |
| BCC | Long Text | BCC Recipient Combined |
| CC | Long Text | CC Recipient Combined |
| FROM | Fixed-Length Text | Sender Combined |
| SUBJECT | Fixed-Length Text | Subject |
| TO | Long Text | Recipient Combined |
| DELIVRECEIPT | (YES if flag present, blank if not) | Message-delivered flag from Outlook email |
| Email Importance | (YES if flag present, blank if not) | Message importance flag from email, if reasonably available. |
| Item_Flag | | To-Do/Follow-up Flag for e-mail or item (e.g. in Outlook), if reasonably available. |
| Meeting Start Date | Date (date:time) | The start date and time of the calendar entry, if reasonably available from electronic calendar properties. |
| Meeting End Date | Date (date:time) | The end date and time of the calendar entry, if reasonably available from electronic calendar properties. |
| PAGECOUNT | Whole Number | Page count |
| CONFIDENTIALITY | Fixed-Length Text | Confidentiality |
| Is Embedded | (YES if true, blank if not) | The yes/no indicator of whether a file is embedded in another document. |
| Paper Document | (YES if true, blank if not) | "YES" if document was scanned from hard copy in connection with the collection and production of documents in this matter |
| Redacted | (YES if true, blank if not) | Indicates whether the file has been redacted |
| Redacted Reason | | Indicates the reason for the redaction. |

| OriginalContainedMultiMedia | (YES if true, blank if not) | Indicates for a non-natively produced document whether the original contained animation, audio, or video, if reasonably available from the document properties. |
|---|---|---|
| Conversation Index | Fixed-Length Text | The conversation index value for email (e.g. MS Exchange message id) |
| REVISION | | Application-stored revision number value |
| READRECEIPT | (YES if flag present, blank if not) | Message-read flag from Outlook email, if reasonably available. |
| Unprocessable | Yes/No | The yes/no indicator of whether a file was able to be processed. |
| HASCOMMENTS | (YES if flag present, blank if not) | Flag whether document has comments. |
| TimeZone | | Time zone used to process data during document collection and processing |
| NativeFilePath | | The path to the corresponding native file included with a production volume. |
| TextPath | | The relative path to the corresponding OCR or extracted text file included with a production volume. |