**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT
OF DEFENDANTS' PROPOSED ESI PROTOCOL**

**Disputed Language in the
Parties' Proposed ESI Protocols**

I.    **Definition of "Attachment"**

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 2(b): definition of "Attachment" | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 2(h): Definition of "Attachment(s)" |
|---|---|---|
| N/A | An "Attachment" is typically a file associated with another file for the purpose of storage, transfer, processing, production, or review.  There may be multiple attachments associated with a single "parent" or "master" file.  In many records and information management systems, or in a litigation context, the attachments and associated record(s) may be managed and processed as a single unit.  In common use, this term most often refers to a file (or files) associated with an individual email or other message type. ***For the avoidance of doubt, a hyperlinked document, such as a cloud-based document in Google Drive, is not an "attachment."*[1]** | "Attachment(s)" shall be interpreted broadly and includes, e.g., traditional email attachments and documents embedded in other documents (e.g., Excel files embedded in PowerPoint files) as well as modern attachments, pointers, internal or non-public documents linked, hyperlinked, stubbed or otherwise pointed to within or as part of other ESI (including but not limited to email, messages, comments or posts, or other documents). |

---

[1]    Throughout this exhibit, Uber has, in certain places, added emphasis to language in the disputed provisions where such emphasis may be helpful to the Court in comparing particular portions of the disputed language.

<u>**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**</u>
<u>**OF DEFENDANTS' PROPOSED ESI PROTOCOL**</u>

## II.     Definition of "Family" or "Parent-Child"

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>**Uber's Proposed Section 2(f): Definition of "Family"** | Plaintiffs' Proposal<br><br>**Plaintiffs' Proposed Section 2(t): Definition of "Parent-child"** |
|---|---|---|
| Ex. E,[2] §§ I(34)-(35) | "Family" means a document and all other documents in its attachment range, emails with attachments, files with extracted embedded OLE documents, and email or other documents together constitute family groups.  For the avoidance of doubt, a hyperlinked document, such as a cloud-based document in Google Drive, is not part of a family group. | "Parent-child" shall be construed to mean the association between an attachment and its parent Document in a Document family. |

## III.     Cooperation

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>**Uber's Proposed Section 3: Cooperation** | Plaintiffs' Proposal<br><br>**Plaintiffs' Proposed Section 3: Cooperation** |
|---|---|---|
| Ex. E, § B | The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. ***The Parties further acknowledge that responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for search, review, and production of their own ESI, but that any such procedures must be consistent with the responding parties' obligation to make a reasonable and good faith effort to obtain the requested information via diligent search and reasonable inquiry, and any other duties owed.  The Parties*** | The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. ***The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process, including the identification, preservation, and collection of sources of potentially relevant ESI, as well as propounding reasonably particular discovery requests, establishing proportional limits on the scope of potentially relevant and discoverable ESI, while endeavoring to identify*** |

---

[2] Declaration of Caitlin E. Grusauskas in Support of Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's Proposed ESI Protocol, Exhibit E ("Ex. E").

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

| | |
|---|---|
| *additionally agree that while the Parties have, in the spirit of cooperation, detailed in this ESI Order their intended discovery-related processes and procedures, each Party is ultimately responsible for compliance with its discovery obligations under the Federal Rules of Civil Procedure, and may follow any such processes and procedures that satisfy obligations under those Rules to conduct discovery in a reasonable and proportional manner.* | *and produce potentially relevant and discoverable ESI, and maintaining security over the discovery in this Litigation.* |

IV.    **"Reasonably Accessible" Documents**

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 7: Identification of Custodial and Non-Custodial Documents and ESI | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 7: Identification of Custodial and Non-Custodial Documents and ESI |
|---|---|---|
| Ex. E, § D(2) | If the Producing Party determines that a source of ESI is not "reasonably accessible," pursuant to Fed. R. Civ. P. 26(b), the Parties will meet and confer as to the accessibility of the ESI. | The Parties agree that if the Producing Party determines a source is not "reasonably accessible" pursuant to Fed. R. Civ. P. 26(b) during the search and collection process it will provide sufficient information regarding the accessibility of the source to enable the Parties to confer in good faith within seven (7) days of this determination about whether such source or Document will be produced or methods by which the information can be produced. If the Parties disagree as to the accessibility of the source after a good faith meet and confer, the Party seeking discovery from the source may submit the issue to the Court or its designee in accordance with the Court's procedures. The Parties agree to take any unresolved disputes on same promptly to the Court or its designee. |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

### V.      Search Queries and Methodologies

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 8: Search Queries and Methodologies | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 8: Search Queries and Methodologies |
|---|---|---|
| Ex. E, § E(1) | Pursuant to Fed. R. Civ. P. 26(f), and the ESI Guidelines and Section [7] above, the Parties will meet and confer, as appropriate, to discuss certain aspects of the discovery process, for example, the number of custodians, the identity of those custodians, keywords to be used as part of culling files, collection from non-custodial files, file types, date ranges, validation procedures and random sampling, technology assisted review ("TAR") or other appropriate advanced technology.  This process will be iterative.  For the avoidance of doubt, Plaintiffs will disclose to Defendants their processes for preservation and collection of documents, including the sources from which such documents will be collected, and the parameters for search and review of documents.  Plaintiffs will meet and confer with Defendants about these issues. | Pursuant to Fed. R. Civ. P. 26(f), and the ESI Guidelines, the Parties shall meet and confer on the application, if any, of search or other filtering technologies, including search terms, file types, date ranges, transparent validation procedures and random sampling, predictive coding or other appropriate advanced technology, including systems used to track review status related to those advanced technologies, including systems used to track review status related to those advanced technologies. The Parties are expected to work in a cooperative, collaborative, and iterative manner, in order to reach agreement upon a reasonable search methodology to achieve an appropriate level of recall (the percentage of responsive Documents in the collection against which the search terms were run which include a search term). To the extent the Parties are unable to reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall raise such issues for resolution by the Court or its designee. The Parties recognize that as the litigation evolves, there may be a need to supplement earlier agreed methods or search terms to enhance or improve the identification of potentially relevant ESI. |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

## VI.    Overview of Use of TAR

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 8(a)(1): Use of TAR by Uber Defendants | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 8(a)(1): Use of TAR by Uber Defendants |
|---|---|---|
| Ex. E, § E(3) | As part of document review, the Uber Defendants intend to use TAR methodology known as TAR 2.0, which utilizes continuous active learning to classify and prioritize documents for attorneys to review. Specifically, the Uber Defendants intend to use Relativity Active Learning ("RAL") on a Relativity Server 12.1.537.3 platform provided by their vendor Lighthouse. Commonly, a TAR 2.0 methodology begins with ingesting document population into the TAR 2.0 software where the algorithm learns to distinguish relevant from non-relevant documents through attorney review of documents. The TAR 2.0 algorithm prioritizes the documents in the review queue ***in a more efficient manner***. Attorney reviewers then review documents the TAR 2.0 model has prioritized to distinguish as ***most likely to be responsive***. As the review continues and reviewers code documents, the TAR 2.0 model continues to learn and prioritize likely responsive documents until a stopping point is reached and a validation is conducted. | As part of document review, the Uber Defendants intend to use TAR methodology known as TAR 2.0, which utilizes continuous active learning to classify and prioritize documents for attorneys to review. Specifically, the Uber Defendants intend to use  Relativity Active Learning ("RAL") on a Relativity Server 12.1.537.3 platform provided by their vendor Lighthouse. Commonly, a TAR 2.0 methodology begins with ingesting document population into the TAR 2.0 software where the algorithm learns to distinguish relevant from non-relevant documents through attorney review of documents. The TAR 2.0 algorithm prioritizes the documents in the review queue ***from most to least likely to be responsive***. Specifically, the Uber Defendants intend to use  Attorney reviewers then review documents the TAR 2.0 model has prioritized as most ***likely to be responsive in descending order from most to least*** likely to be responsive. As the review continues and reviewers code documents, the TAR 2.0 model continues to learn and prioritize likely responsive documents until a stopping point is reached and a validation is conducted. |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

## VII.    TAR and Search Terms

| Parallel JCCP Proposal Provision | Uber's Proposal | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 8(a)(2): TAR and Search Terms |
|---|---|---|
| Ex. E, § E(2) | [delete this paragraph] | TAR processing will not be "stacked" with the application of search terms, i.e., search terms will not be applied before or, unless agreed or ordered pursuant to Section 6.x below, after any application of TAR. |

## VIII.    TAR Sample Set

| Parallel JCCP Proposal Provision | Uber's Proposal | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 8(a)(3): Sample Set |
|---|---|---|
| Ex. E, §§ E(3)(a)-(c) | [delete this section] | i.    The Parties' TAR approach will include the use of a Sample Set to help assure that the Parties have a sufficient level of agreement on what constitutes responsiveness and non-responsiveness.<br>ii.    The Sample Set will be created by drawing a simple random sample of 1,750 documents from the collection to which TAR will be applied.<br>iii.    The Uber Defendants will conduct the first review of the Sample Set, and code each document as Responsive or Not Responsive and Privileged or Not Privileged. The Uber Defendants will provide Plaintiffs with access to all Non-Privileged documents in the Sample Set with text files and corresponding native files, images and metadata in a format that complies with the entered ESI protocol, and provide a privilege log for any documents withheld for privilege reasons. Documents coded as Privileged will not be removed from the Sample Set for the purposes of model training. Plaintiffs' |

| | | |
|---|---|---|
| | | Leadership may designate up to five individuals (plus up to three consultants) to aid in the review ("Plaintiffs' Designated Sample Set Reviewers") to be given access to review the Sample Set.  This review may take place at such dates and times as the Parties mutually agree (a) at such location or locations mutually agreed by the Parties, or (b) via a secure web-based viewer. Any documents coded Not Responsive by the Uber Defendants to which Plaintiffs' Designated Reviewers are provided access as part of this review are provided for the limited and sole purpose of raising and resolving disagreements, if any, regarding the coding calls made by the Uber Defendants. Any such disagreements shall be recorded on a TAR Protocol Classification Dispute Log (the "Log"), which shall be in a form agreed upon by the Parties. Once Plaintiffs' Designated Reviewers complete their review of the Sample Set, the Parties shall meet and confer to resolve any differences in coding designation.  The Parties' review of the Sample Set, and conferral to resolve any differences in coding designation, shall be completed within 10 days.  If resolution cannot be reached, the issue shall be submitted to the Court for resolution.<br>iv.      Plaintiffs' Designated Reviewers shall not remove from the location or locations mutually agreed to by the Parties, any documents to which they are provided access in connection with the Sample Set review process, and shall not copy, record, print, image, photograph, fax, scan, or otherwise capture, transmit or share any document or any information contained therein, in any way, with anyone beyond the other Plaintiffs' Designated Reviewers conducting the review.  Any document in native format accessed via secured web browser and opened in a native application by any Plaintiffs' Designated Reviewer will be immediately deleted after it has been viewed in the native application. |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

IX.    **TAR Training Process**

| Parallel JCCP Proposal Provision | Uber's Proposal | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 8(a)(4): TAR Training Process |
|---|---|---|
| N/A | [delete this section] | i.    The Uber Defendants will start the TAR tool's active learning process with the Parties' agreed-upon coded documents from the Sample Set, after which the system will automatically select documents for review based on predicted relevance.<br>ii.    Based on the reviewer coding of other documents, each document will eventually receive a score from 0-100, with documents closer to zero not likely to be relevant and documents closer to 100 considered very likely to be relevant.<br>iii.    The predictive model the TAR tool uses will update itself continuously without need for human intervention.<br>iv.    The TAR tool may automatically exclude duplicative documents from the review queue in order to avoid delays in training the model. These documents will still receive a classification score, and suppressed documents above or equal to the lowest score of any document classified as responsive by a reviewer will be reviewed at the end of the process. |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT
OF DEFENDANTS' PROPOSED ESI PROTOCOL**

X.    **Stopping Criteria**

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 8(a)(2)(i): Stopping Criteria | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 8(a)(5)(i): Stopping Criteria |
|---|---|---|
| Ex. E, § E(3) | Once ***two reasonably sized review batches are found to contain 10% or fewer documents marked responsive***, Defendants will pause the review and turn to validation.  Defendants may extend the review past this point if they believe sufficient thoroughness has not been achieved.  Defendants do not intend for the relevant batches to include index health documents. | Once ***two or more consecutive review batches sequentially populated by the highest-ranking uncoded documents remaining in the project in order from highest to lowest scores and containing a total of at least 1,000 documents are found to contain 10% or fewer documents marked responsive***, Defendants will pause the review and turn to validation. Defendants may extend the review past this point if they believe sufficient thoroughness has not been achieved. Defendants do not intend for the relevant batches to include index health documents. |

XI.    **Validation – Recall and Richness**

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 8(a)(3)(vii): Validation | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 8(a)(6)(vii): Validation |
|---|---|---|
| N/A | vii.    The Uber Defendants will disclose the Recall and Prevalence, ***once calculated as set forth above.*** | vii.    The Uber Defendants will disclose the calculated Recall and Richness ***and the input quantities used to calculate Recall and Richness.*** |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

XII.    **Further Review**

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>**Uber's Proposed Section 8(a)(3)(viii)** | Plaintiffs' Proposal<br><br>**Plaintiffs' Proposed Sections 8(a)(6)(viii)-(x)** |
|---|---|---|
| N/A | viii.    Defendants will determine, based on this validation test, whether further review or other targeted searches may be warranted, or whether further review would be disproportionate and the TAR 2.0 process can be concluded. | viii.    Plaintiffs' Designated Reviewers shall have the opportunity to review all non-privileged documents in the Validation Sample, without any knowledge of how any individual documents were coded by the Uber Defendants, in order to perform a blind comparison of the provided Recall and Richness estimates.<br>ix.    This review may take place (a) at such location or locations mutually agreed by the Parties, on a date and time to be agreed to by the Parties, or (b) via a secure web-based viewer on a date and time to be agreed to by the Parties. Any documents coded Not Responsive by the Uber Defendants to which Plaintiffs' Designated Reviewers are provided access as part of this review are provided for the limited and sole purpose of raising and resolving disagreements, if any, regarding the coding calls made by the Uber Defendants. Any such disagreements shall be recorded on a TAR Protocol Classification Dispute Log (the "Log"), which shall be in a form agreed upon by the Parties. Once Plaintiffs' Designated Reviewers complete their review of the Validation Sample, the Parties shall meet and confer to resolve any differences in coding designation. If resolution cannot be reached, the issue shall be submitted to the Court for resolution.<br>x.    If the recall estimate derived from the validation sample is below 80%, or if the documents designated responsive in the part of the sample drawn from the null set indicate that the TAR tool's model of Responsiveness was too limited, e.g., if the responsive documents in the Validation Sample included novel or significant documents, then Plaintiffs and Defendants will discuss remedial action to locate |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

|  |  | an adequate proportion of the remaining relevant documents in the null set, including but not limited to: continuing reviewing from the prioritized queue; and training alternative predictive models focused on the relevant documents found in the elusion test. After Defendants disclose these metrics, the parties may meet and confer to discuss questions and issues relating to the TAR process. |
|---|---|---|

## XIII.   Disclosures

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 8(b): Disclosures | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 8(b): disclosures |
|---|---|---|
| Ex. E, § E(4) | Once the TAR process is complete in addition to above, Defendants intend to disclose various metrics regarding the TAR 2.0 methodology utilized, including the following: (i) the total TAR population, (ii) the total population produced, (iii) the total population not produced, (iv) the total population not reviewed, (v) the size of the validation set used to verify the TAR 2.0 results, and (vi) a summary of the validation process.  The summary of the validation process will include the following figures from the Validation Sample: (a) the number of documents within the sample that were previously coded relevant; (b) the number of documents within the sample that were previously coded not relevant; (c) the number of unreviewed documents within the sample.  The summary of the validation process will also include the number of actual responsive documents identified in (a), (b), and (c) during the validation process.  After Defendants disclose these metrics, the parties may meet and confer to discuss ***reasonable*** questions and issues relating to the TAR process.  ***If the volume of documents intended for TAR review becomes so large that it is necessary to run multiple TAR projects to ensure the smooth operation of the technology, the Producing Party will disclose that and will provide reasonable transparency into the TAR workflow.*** | Once the TAR process is complete in addition to above, Defendants intend to disclose various metrics regarding the TAR 2.0 methodology utilized, including the following: (i) the total TAR population, (ii) the total population produced, (iii) the total population not produced, (iv) the total population not reviewed, (v) the size of the validation set used to verify the TAR 2.0 results, and (vi) a summary of the validation process. The summary of the validation process will include the following figures from the Validation Sample: (a) the number of documents within the sample that were previously coded relevant; (b) the number of documents within the sample that were previously coded not relevant; (c) the number of unreviewed documents within the sample.  The summary of the validation process will also include the number of actual responsive documents identified in (a), (b), and (c) during the validation process.  ***Defendants will also produce all non-privileged responsive documents in the Validation Sample.*** After Defendants disclose these metrics, the parties may meet and confer to discuss questions and issues relating to the TAR process. |

<u>**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**</u>
<u>**OF DEFENDANTS' PROPOSED ESI PROTOCOL**</u>

### XIV.   Key Word Search

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 8(c): Key Word Search | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 8(c): Key Word Search |
|---|---|---|
| Ex. E, § E(2) | If the Producing Party is identifying responsive ESI using search terms, the Parties will meet and confer about search terms in English and any other languages used in the Producing Party's documents.  ***To facilitate the meet and confers, the Producing Party shall make disclosures reasonably necessary for the Requesting Party to assess the proposed terms and resolve any disputes.*** | If the Producing Party is identifying responsive ESI, ***which is not already known to be responsive***, using search terms, the Parties will meet and confer about search terms in English and any other languages used in the Producing Party's documents. The Parties will meet and confer about information to improve the effectiveness of the search terms, such as providing a list of relevant English and foreign language company terminology (or equivalent) and all relevant project and code names, code words, acronyms, abbreviations, and nicknames, if any. Before implementing search terms, the Producing Party will disclose information and meet and confer within seven (7) days of the ESI Protocol being entered regarding the search platform to be used, a list of search terms in the exact forms that they will be applied (i.e., as adapted to the operators and syntax of the search platform), significant or common misspellings of the listed search terms in the collection to be searched, including any search term variants identifiable through a Relativity dictionary search with the fuzziness level set to 3, any date filters, or other culling methods, after which the Receiving Party may propose additional terms or culling parameters. Use of search terms will be validated post-review using comparable methodology and metrics to those set out in Disclosures (a) and (c) above. |

<u>**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**</u>
<u>**OF DEFENDANTS' PROPOSED ESI PROTOCOL**</u>

### XV.   End-to-End Validation of Defendants' Search Methodology and Results

| Parallel JCCP Proposal Provision | Uber's Proposal | Plaintiffs' Proposal<br><br>**Plaintiffs' Proposed Section 9: End-to-End Validation of Defendants' Search Methodology and Results** |
|---|---|---|
| **N/A** | [Delete this paragraph] | The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate validation procedures and random sampling of Defendants' Documents (both of relevant and non-relevant sets and of the entire collection against which search terms were run or TAR or other identification or classification methodology was used), in order to establish that an appropriate level of end-to-end recall (the percentage of responsive Documents in the initial collection before any search terms or TAR or manual review was applied which were classified as responsive after Defendants search, TAR and review processes) has been achieved and ensure that the Defendants' search, classification and review methodology was effective and that a reasonable percentage of responsive ESI was identified as responsively being omitted. |

### XVI.   Unsearchable Documents

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>**Uber's Proposed Section 9: Unsearchable Documents** | Plaintiffs' Proposal<br><br>**Plaintiffs' Proposed Section 10: Unsearchable Documents** |
|---|---|---|
| **Ex. E, § G** | To the extent that responsive documents, such as images or spreadsheets, cannot be located through text-based technology, the parties will meet and confer about conducting targeted collections through other means. | Documents which are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, video, certain spreadsheets, certain hard copy documents, certain documents from noncustodial sources, or certain foreign language documents where the Parties do not have suitable search terms in such language, |

|  |  | must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text within the document. Prior to the production of such unsearchable items, the Producing Party may conduct a page-by-page review for responsiveness, confidentiality, privilege, and other protections. |
|---|---|---|

### XVII.  Non-Traditional ESI

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>**Uber's Proposed Section 10: Non-Traditional ESI** | Plaintiffs' Proposal |
|---|---|---|
| Ex. E, § H | While this ESI Order is intended to address the majority of Documents and data sources handled in this matter, there may be situations where the Parties come into contact with more complex, non-traditional or legacy data sources, such as ESI from social media, ephemeral messaging systems, collaboration tools, data formats identified on a mobile or handheld device, and modern cloud sources.  In the event such data sources are relevant, the Parties agree to take reasonable efforts to appropriately address the complexities introduced by such ESI.  The Parties further agree to abide by their obligations under the Code to take reasonable and proportionate steps to avoid the deletion of all data associated with any non-traditional ESI accounts in their possession or control, including social media accounts. | [Delete this paragraph] |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

### XVIII. Reassessment

| Parallel JCCP Proposal Provision | Uber's Proposal | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 11: Reassessment |
|---|---|---|
| N/A | [Delete this paragraph] | After the completion of the search methodology meet and confer sessions and/or after completion of the selected search process itself, a Producing Party, a Receiving Party, or the Court may perceive the need to reassess a search methodology and/or validation process. In all such circumstances, the Parties will meet and confer to address any issues in a reasonable and timely manner; and the time, cost, and/or other resources expended in connection with ineffective methodologies and/or processes shall be deemed irrelevant to the issues of reasonableness and proportionality for additional efforts required. |

### XIX. Deduplication

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 12: Deduplication | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 13: Deduplication |
|---|---|---|
| N/A | The original file paths of a Document prior to deduplication will be populated in the "ALL FILE PATHS" metadata field, separated by semicolons. Hard-Copy Documents shall not be eliminated as duplicates of ESI. | The original file paths of a Document prior to deduplication will be populated in the "ALL FILE PATHS" metadata field, separated by semicolons, ***in the order corresponding to the order of names in ALL CUSTODIANS***. Hard-Copy Documents shall not be eliminated as duplicates of ESI. |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

XX.   **Cloud Stored Documents**

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 17: Cloud Stored Documents | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 18(a)-(c): Cloud Stored Documents |
|---|---|---|
| Ex. E, § I(10) | Uber will make reasonable and proportionate efforts to preserve the metadata relationship between email messages with links to files on Google Drive, to the extent Uber's vendor for processing and managing the documents to be reviewed and produced in this action possesses technology that enables it to maintain such a relationship.  Defendants may use Lighthouse's "Google Parser" for this purpose.<br><br>Notwithstanding that Uber agrees to make reasonable and proportionate efforts in this regard, because of technological limitations inherent in the processing of emails containing embedded links, it shall not be presumed that all emails containing links to files on Google Drive will be produced with a metadata relationship between the parent email and the linked document.<br><br>To the extent the Receiving Party believes that there is a lack of a metadata relationship between a specific email message and a specific linked document, the Receiving Party may notify the Producing Party and request that the particular linked file be extracted and produced or identified.  To the extent that the linked file in question is nonprivileged, and is relevant to either Party's claims or defenses and the efforts required to search for it would be proportional to the needs of the case, the Producing Party shall use reasonable and proportionate efforts to collect and produce/identify the document that was linked in the original email.  The Parties agree to meet and confer to resolve any disagreements as to what constitutes reasonable and proportionate discovery efforts. | a)      Metadata Preserved.<br>Uber shall preserve the metadata relationship between email messages with links to files on Google Drive. Uber shall preserve and produce (including, if necessary, as custom fields) all metadata collected with respect to all cloud-stored documents. That includes, but is not limited to, all metadata output by Google Vault when exporting a matter. Thus, the metadata exported from Google Vault pertaining to each document shall be preserved and produced as metadata for the same document within the load file of any production containing any such document.<br>b)      Hyperlinked/URL-Referenced Documents.<br>Producing party shall make all reasonable efforts to maintain and preserve the relationship between any message or email and any cloud-hosted document hyperlinked or referenced within the message or email. Thus, for instance, where a collected email links to or references by URL a document on Google Drive (or housed within Google vault,) the metadata for that message or email shall include the URLs and Google Document ID of all hyperlinked documents, and if a hyperlinked document was produced.<br>c)      Contemporaneous Versions of Hyperlinked/URL-Referenced Documents.<br>Uber shall produce the contemporaneous document version, i.e., the document version likely present at the time an email or message was sent, of Google Drive documents referenced by URL or hyperlinks in emails or messages such as Slack. If Uber contends that it is unable to meet this requirement through commercial or vendor software, Google APIs or through other |

| | | reasonable manual or automated means, then Plaintiffs and Defendants shall meet and confer to discuss solutions. This will not exempt Uber from producing the applicable version of any document so referenced by URL or hyperlink. |
| --- | --- | --- |

### XXI.   Continuing Obligations

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed Section 19(i): Continuing Obligations | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed Section 20(i): Continuing Obligations |
| --- | --- | --- |
| Ex. E, §§ D(4)(c), E(1) | The Parties will continue to meet and confer regarding ***ESI*** issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests. | ***The Parties recognize that discovery shall be an iterative and cooperative process.*** The Parties will continue to meet and confer regarding ***any*** issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests. |

### XXII.   Family Relationships

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>Uber's Proposed App. 1, Section 1(e): Family Relationships | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed App 1, Section (e): Family Relationships |
| --- | --- | --- |
| Ex. E, § I(35) | Family relationships (be that email, messaging applications, or otherwise) will be maintained in production. Attachments should be consecutively produced with their parent. Objects, documents or files embedded in documents, such as OLE embedded objects (embedded MS Office files, etc.), or images, etc., embedded in RTF files, shall be extracted as separate files and treated as attachments to the parent document. Chats from programs like Slack and HipChat should be produced in families by channel or private message. | Family relationships (be that email, messaging applications, or otherwise) will be maintained in production. Attachments should be consecutively produced with their parent. ***"Attachments" shall be interpreted broadly and includes, e.g., traditional email attachments and documents embedded in other documents (e.g., Excel files embedded in PowerPoint files) as well as modern attachments, internal or non-public documents linked, hyperlinked, stubbed or otherwise pointed to within or as part of other ESI (including but not limited to email, messages, comments or posts, or other documents).*** Objects, documents or files embedded in documents, such as |

|  |  | OLE embedded objects (embedded MS Office files, etc.), or images, etc., embedded in RTF files, shall be extracted as separate files and treated as attachments to the parent document. Chats from programs like Slack and HipChat should be produced in families by channel or private message. |
| --- | --- | --- |

### XXIII. Metadata Fields

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>**Uber's Proposed App. 1, Section 4: Metadata Fields** | Plaintiffs' Proposal<br><br>**Plaintiffs' Proposed App. 1, Section 4: Metadata Fields** |
| --- | --- | --- |
| **Ex. E, §§ I(7), I(10)** | Defendants shall use ***industry standard, reasonable and proportional*** methods of collection and processing that preserve the integrity of document metadata, and of parent-child and family group relationships such as the association between attachments and parent documents, or between embedded documents and their parents, or between documents, including, but not limited to, emails (e.g., Outlook, Gmail) or messaging or communication posts (e.g., Slack, Teams, Google Hangouts, Google Chat) . . .<br><br>The metadata fields detailed in Appendix 2 should be produced for each Document to the extent that such information ***is reasonably and proportionally accessible*** or available or, in the case of metadata created during processing such as Bates numbers created at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log. | Defendants shall use methods of collection and processing that preserve the integrity of document metadata, and of parent-child and family group relationships such as the association between attachments and parent documents, or between embedded documents and their parents, or between documents, including, but not limited to, emails (e.g., Outlook, Gmail) or messaging or communication posts (e.g., Slack, Teams, Google Hangouts, Google Chat), with document stubs or links or pointers to internal or non-public (e.g., Google Workspace, Zendesk) documents and those stubbed or internal or non-public documents so linked . . .<br><br>The metadata fields detailed in Appendix 2 should be produced for each Document to the extent that such information or available or, in the case of metadata created during processing such as Bates numbers created at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log. |

<u>**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**</u>
<u>**OF DEFENDANTS' PROPOSED ESI PROTOCOL**</u>

## XXIV. Production of Family Groups and Relationships

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>**Uber's Proposed App. 1, Section 14: Production of Family Groups and Relationships** | Plaintiffs' Proposal<br><br>**Plaintiffs' Proposed App. 1, Section 14: Production of Family Groups and Relationships** |
|---|---|---|
| Ex. E, §§ I(34)-(35) | If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate. ***For the avoidance of doubt, a hyperlinked document, such as a cloud-based document in Google Drive, is not part of a family group.*** | If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate. |

## XXV.  Redactions

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>**Uber's Proposed App. 1, Section 17: Redactions** | Plaintiffs' Proposal<br><br>**Plaintiffs' Proposed App. 1, Section 17: Redactions** |
|---|---|---|
| Ex. E, § I(28) | Redactions for relevance may only be made where necessary to protect particularly sensitive or proprietary confidential information, and the Parties agree to meet and confer regarding any disputes over the propriety of relevance redactions for any particular document(s) or category(ies) of documents.  For redacted items which were originally ESI, all metadata fields will be provided and will include all non-redacted data unless such metadata contains privileged information or information otherwise protected from disclosure.  Redacted documents shall be identified as such in the load file provided with the production.  A document's status as redacted does not relieve the producing party from providing all of the discoverable metadata required herein. | Other than as permitted by this Order or the Protective Order entered in this Action, no redactions for relevance may be made within a produced document or ESI item. The Parties agree to meet and confer on a case-by-case basis if a Party believes there is a good faith basis to permit limited redaction by agreement of the Parties of highly sensitive, non-relevant information within a Document that contains other relevant information. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the type of the redaction, and a metadata field shall indicate that the document contains redactions and the type of the redaction (e.g., "Privacy" or "Privilege"). Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions. |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

### XXVI. Mobile and Handheld Device Documents and Data

| Parallel JCCP Proposal Provision | Uber's Proposal | Plaintiffs' Proposal<br><br>**Plaintiffs' Proposed App 1, Section 22: Mobile and Handheld Device Documents and Data** |
|---|---|---|
| N/A | [Delete this paragraph] | If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained on any mobile or handheld device. |

### XXVII.    Parent-Child Relationships

| Parallel JCCP Proposal Provision | Uber's Proposal<br><br>**Uber's Proposed App. 1, Section 22: Parent-Child Relationships** | Plaintiffs' Proposal<br><br>**Plaintiffs' Proposed App. 1, Section 23** |
|---|---|---|
| Ex. E, § I(34) | The Parties shall use methods of collection and processing that preserve the integrity of document metadata. Except for hyperlinked documents, the parties shall use methods of collection and processing that preserve the parent-child relationships such as the association between attachments and parent documents, or between embedded documents and their parents, or between documents.  For documents where the parent-child relationship is produced, all document family relationships shall be produced together and children files should follow parent files in sequential Bates number order. For the avoidance of doubt, a hyperlinked document, such as a cloud-based document in Google Drive, is not part of parent-child relationship. | If responsive, Parent-child relationships that have been maintained in the ordinary course of business shall be preserved for both ESI and hard copy Documents. For example, for electronic production of a hard copy folder with Documents contained in the folder, the cover/title of the folder shall be produced first, with all contents of the folder in sequential Document order behind the containing folder. For email families, the parent-child relationships (the association between emails and attachments) should be preserved, i.e., email attachments should be consecutively produced with the parent email record. |

**EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' PROPOSED ESI PROTOCOL**

### XXVIII.   Metadata Disputes

| Parallel JCCP Proposal Provision | Uber's Proposal | Plaintiffs' Proposal<br><br>Plaintiffs' Proposed App. 2 |
|---|---|---|
| Ex. E, Attachment A – Other Custodians | [delete this metadata field] | Other Custodians<br><br>Definition: Custodians of all duplicate documents. Multiple values separated by semi-colons. |
| N/A | [delete this metadata field] | LINKGOOGLEDRIVEURLS<br><br>Definition: One-to-many field containing the URLS for any Google Drive linked documents referenced within a given Gmail document. If a Google Drive linked document has been produced, the URL will be suffixed by a space and the corresponding BEGBATES in square brackets ([ ])<br><br>Doc Type: Gmail documents containing linked Google Drive documents |
| N/A | CHANNELID<br><br>Definition: Identified for distinct messaging channels or conversations using messaging applications, such as Slack, HipChat, GChat, UChat, and others.<br><br>Doc Type: Non-email messaging communications, such as Slack, HipChat, GChat, UChat, and others. | THREADID<br><br>Definition: ThreadID for non-email threaded communications<br><br>Doc Type: Non-email threaded communications |
| N/A | [delete this metadata field] | SlideRecording<br><br>Definition: Metadata about recordings<br><br>Doc Type: Google Drive & Linked Documents |

### EXHIBIT B TO DEFENDANTS' MEMORANDUM IN SUPPORT
### OF DEFENDANTS' PROPOSED ESI PROTOCOL

| | | |
|---|---|---|
| N/A | [delete this metadata field] | ClientSideEncrypted<br><br>Definition: Indicates whether the file was encrypted in the Google Workspace using client-side encryption<br><br>Doc Type" Google Drive & Linked Documents |
| Ex. E,<br>Attachment A -<br>FILEPATH | [delete this metadata field] | SharedDriveID<br><br>Definition: The identifier of the shared drive that contains the file<br><br>Doc Type: Google Drive & Linked Documents |
| Ex. E,<br>Attachment A -<br>PARENTMSGID | [delete this metadata field] | DocParentID<br><br>Definition: Unique Identifier of page the site is a part of.<br><br>Doc Type: Google Drive & Linked Documents |
| N/A | [delete this metadata field] | SiteTitle<br><br>Definition: The name of the Sites page.<br><br>Doc Type: Google Drive & Linked Documents |
| Ex. E,<br>Attachment A -<br>FILEPATH | [delete this metadata field] | PublishedURL<br><br>Definition: Metadata included with Google Drive exports for sites, including the address of the published page.<br><br>Doc Type: Google Drive & Linked Documents |
| N/A | [delete this metadata field] | LabelName<br><br>Definition: Google Drive labels and fields.<br><br>Doc Type: Google Drive & Linked Documents |
| N/A | [delete this metadata field] | Account |

| | | |
|---|---|---|
| | | Definition: Metadata included with the Google Email exports which contains the email address of the collected email account. <br><br> Doc Type: Google Emails & Chat (Messages) |
| N/A | [delete this metadata field] | Rfc822MessageId <br><br> Definition: A message ID used to correlate message metadata with the collected message and corresponding Linked Drive Files, Drive Links CSV. <br><br> Doc Type: Google Emails & Chat (Messages) |
| Ex. E, Attachment A - MSGID | [delete this metadata field] | GmailMessageId <br><br> Definition: A unique message ID used to manage specific messages with the Gmail API. <br><br> Doc Type: Google Emails & Chat (Messages) |
| N/A | [delete this metadata field] | DriveUrl <br><br> Definition: Published URL corresponding to the Google Drive document. <br><br> Doc Type: Google Emails & Chat (Messages) |
| N/A | [delete this metadata field] | ParticipantPhoneNumbers' <br><br> Definition: The phone numbers of the participants. <br><br> Doc Type: Google Voice |
| N/A | [delete this metadata field] | OwnerPhoneNumbers <br><br> Definition: The value includes multiple phone numbers when the user's number changes. <br><br> Doc Type: Google Voice |