1    [Submitting counsel below]

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                          SAN FRANCISCO DIVISION

11

12   IN RE: UBER TECHNOLOGIES, INC.,          No. 3:23-md-03084-CRB
     PASSENGER SEXUAL ASSAULT
13   LITIGATION
                                              **PLAINTIFFS' OPPOSITION TO**
14                                            **DEFENDANTS' MOTION TO MODIFY**
                                              **PRETRIAL ORDER NO. 5**
15

16
     This Document Relates to:
17                                            Judge: Honorable Lisa J. Cisneros
     All Cases                                Date: February 22, 2024
18                                            Time: 3:00 PM (via Zoom)
                                              Courtroom: G-15th Floor
19

20

21

22

23

24

25

26

27

28

1

## I.    <u>INTRODUCTION</u>

2

3        Uber's Motion to Modify PTO 5 seeks to excise from discovery a large swath of relevant

4 documents – those already produced in other litigations regarding the facts and circumstances of

5 individual sexual assaults known to Uber, i.e. what Uber terms "case- and plaintiff-specific"

6 discovery. *See* ECF 251 ("Mot.") at 4. Uber's motion presupposes the validity of its defense, that

7 sexual assaults of its riders are isolated, unpreventable incidents that could not possibly reflect

8 systemic factors nor wrongdoing on the part of Uber. Uber's motion is meritless and should be

9 denied.

10        This discovery is not merely relevant; it goes to the core of Plaintiffs' case against Uber.

11 Plaintiffs allege that Uber, from its earliest days as a business, created a novel transportation

12 model that it knew would create a risk of sexual assault. *See* ECF 269 (Master Compl.). But

13 rather than work to mitigate or eliminate that risk, Uber prioritized attracting as many drivers and

14 riders as possible. *See, e.g., id*. at ¶¶ 11, 16, 135-186. Instead of preventing sexual assaults, Uber

15 promoted its product as a "safe ride" and encouraged potentially vulnerable people to get into cars

16 with strangers. *See, e.g., id*. at ¶¶ 12, 20-24, 30, 187-239. From its early beginnings, Uber knew

17 its drivers were sexually assaulting thousands of passengers each year but failed to take

18 appropriate safety action. *See, e.g., id*. at ¶¶ 29, 32, 240-334.

19        Evidence of Uber's notice of and the adequacy or inadequacy of Uber's conduct in

20 responding to sexual assaults depends in large part on examining individual incidents and

21 determining whether common factual patterns, practices, and liability themes exist. Put another

22 way, the relevant questions here include, *inter alia*, not just Uber's policies towards sexual

23 assaults or misconduct, but also how Uber did (or did not) adapt these policies in response to

24 ongoing assaults of its riders, and how Uber did (or did not) implement these policies.

25        Uber is well aware of the importance of this information, as the same evidence stands to

26 undermine Uber's intended defenses. Uber has intimated that it cannot be held liable because all

27 sexual assault cases are simply too individualized to be preventable. Whether that is true will

28 necessitate analyzing the facts of individual sexual assaults and seeing if, as Uber claims, all facts

are wholly distinct, or if, as Plaintiffs suspect, common patterns emerge that will demonstrate Uber's notice and liability.

Notwithstanding the high relevance of this discovery, Uber now moves for drastic modification of PTO No. 5 that would exclude all case- and plaintiff-specific documents. But Uber's motion is both procedurally and substantively deficient. On procedure, Uber styles this as a motion to "modify" but in truth it is an attempt to re-litigate issues already presented to, and decided by, Judge Breyer. In December 2023, Uber asked for this very same carve-out, urging the Court to limit discovery to documents that would be produced in the JCCP *that are not specific to a particular case*. *See* ECF 171. While Uber's argument in December was not as verbose as it is now, the relief requested is the same – broad exclusion of all case- and plaintiff-specific documents. Judge Breyer considered the competing arguments, including the privacy concerns, and rejected Uber's request. *See* ECF 175 at 4 (ordering production of all documents produced in other Uber sexual assault cases and providing for the redaction of HIPAA-protected information).

This Court should do the same here. As was the case before Judge Breyer, and continues to be the case now, Uber's request remains overbroad. On its face, the relief requested contains no limit on what documents would be subsumed, leaving Uber with carte blanche to determine what would or would not be implicated by the vague category of "case- and plaintiff-specific" documents. Further, as was the case before Judge Breyer, and continues to be the case now, Uber has failed to provide any evidence to substantiate its claimed burdens. Buzzwords like privacy and prejudice do not satisfy the requirement that a party resisting discovery make a particularized showing with respect to claimed burdens.[1] This is because, absent specific evidence of the burden at issue, courts cannot properly measure and balance the competing interests. Here, Uber's motion is devoid of specificity in almost all respects, including: specificity as to what actual

---

[1] To be clear, Plaintiffs agree that the privacy of victims should be respected and protected. But this must be balanced against the need for highly relevant discovery that would establish, among other things, Uber's gross failings in protecting sexual assault victims. In this respect, Uber's arguments miss the mark. Indeed, Uber argued for and ultimately prevailed on an "Attorneys-Eyes Only" confidentiality designation to provide an extra layer of security for highly sensitive documents. Uber provides no genuine analysis as to why this protective order, in tandem with narrowly tailored protective measures such as redactions, are not sufficient. And this is not the first time this issue has come up. During a prior meet and confer, Plaintiffs proposed redacting private identifying information, but Uber rejected this proposal outright. London Decl. at ¶ 4.

documents are at issue; what actual time, labor and cost would be needed to implement narrowly tailored redactions; and what undue prejudice would result to Uber. In this respect, Uber's emphasis on victim's rights is nothing more than an attempt to weaponize victims' privacy as a shield to withhold relevant discovery. Uber is not and has never been a champion of the rights of sexual assault survivors. Rather, Uber's motion should be seen for what it is: a transparent attempt to withhold evidence substantiating sexual assault survivors' claims against Uber, and Uber's utter failure to take steps to prevent or respond to those assaults. *See, e.g.,* Master Compl. at ¶¶ 317-334 (setting forth Uber's history of publicly paying lip service to sexual assault and harassment complaints while privately working to undermine investigations, reporting, and transparency).

## II.    RELEVANT FACTUAL AND PROCEDURAL SUMMARY

On December 21, 2023, the parties submitted their respective proposals for a pretrial order regarding discovery schedule and procedures. *See* ECF 168, 171. Prior to doing so, the parties met and conferred, during which Plaintiffs proposed privacy redactions, a proposal Uber categorically rejected. London Decl. at ¶ 4. Unable to reach agreement, the parties briefed the issue, with the competing briefs discussing the scope of initial discovery, including documents produced in other Uber sexual assault cases, and reflecting the offer by Plaintiffs to implement narrowly tailored redactions to address privacy concerns. *See* ECF 168 at 4 (Plaintiffs requested discovery produced in other rideshare sexual assault cases except for private identifying information); ECF 171 at 4 (Uber sought to cabin initial discovery to documents produced in the JCCP). Although Uber now argues that it had no opportunity to brief its position, i.e., limiting the scope of other case document discovery, its submission shows otherwise; Uber specifically urged the Court to limit discovery to only "documents [Uber] produces in the JCCP *that are not specific to a particular case*[.]" ECF 171 at 4 (emphasis added). Thus, Uber sought to impose the very same limitation that is being raised in this instant motion.

On December 28, 2023, the Court issued PTO No. 5, which, among other things, ordered Uber to produce "all documents [Uber] produced in any other Uber sexual assault cases, including arbitrations, and any other cases about the 'Safe Rides Fee,' including any associated

1   privilege. Defendants may redact HIPAA-protected information of plaintiffs in those actions."

2   ECF 175 at 4. The clear language of the order reflects the Court's rejection of Uber's request to

3   exclude from production documents "that are not specific to a particular case."  The order also

4   reflects the Court's consideration of the privacy implications to non-parties, as there is an express

5   carve out to "redact HIPAA-protected information of plaintiffs in those actions." ECF 175 at 4.

6   **III.   ARGUMENT**

7          Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any

8   party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

9   "Relevance, for the purposes of discovery, is defined very broadly." *Integrated Glob. Concepts,*

10  *Inc. v. j2 Glob., Inc.*, *No. 12-cv-3434* 2013 WL 6576124, at *1 (N.D. Cal. Dec. 13, 2013) (citation

11  omitted; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (holding a matter

12  is relevant if it "reasonably could lead to other matter that could bear on, any issue that may be in

13  the case"); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-md-2843, 2021

14  WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) (noting that "relevancy for purposes of discovery

15  is broader than relevancy for purposes of trial"). Once relevance is shown, "the party opposing

16  discovery has the burden of showing that discovery should not be allowed, and also has the

17  burden of clarifying, explaining, and supporting its objections with competent evidence."

18  *Facebook*, 2021 WL 10282215 at *4 (citation omitted).

19         As set forth below, the documents that Uber seeks to exclude are unquestionably relevant.

20  Thus, it is Uber's burden to demonstrate that its objections – in this case issues of privacy and

21  purported prejudice to Uber – are so burdensome that discovery should be precluded wholesale.

22  Uber has failed to do so, and its motion should be denied.

23         **A.    The At-Issue Discovery Is Highly Relevant To The Common Claims And Defenses In This MDL.**

24

25         A "request for discovery should ordinarily be allowed under the concept of relevancy

26  unless it is clear that the information sought can have no possible bearing upon the subject matter

27  of th[e] action." *Anders v. United Airlines Inc*., No. 19-cv-5809, 2020 WL 8575132, at *1 (C.D.

28  Cal. Dec. 18, 2020) (citation omitted). The discovery at issue here easily exceeds that bar.

Here, the particular facts and circumstances of other sexual assault incidents are directly relevant to common claims in the MDL, which rest in part on the assertions that Uber knew of the prevalence of sexual assaults by its drivers but failed to take appropriate measures to mitigate, rectify, redress, and warn against these occurrences. Alleged failures by Uber include: failing to adequately screen drivers; failing to adequately train and supervise drivers; failing to adequately discipline drivers; failing to adequately implement safety guidelines or requirements that would have discouraged the sexual assault or otherwise foreclosed the opportunity for assault; failing to adequately respond to and investigate individual complaints; failing to adequately consider and implement prevention methods; and, failing to adequately report on and publicize statistics regarding the prevalence of sexual assaults. *See, e.g.,* Master Compl. at ¶¶ 124-134, 142-169, 240-316.  Evidence regarding the facts and circumstances surrounding individual assaults will be critical to each of these liability theories.

Indeed, "the fact that each incident of sexual assault is unique does not also mean that, viewed cumulatively, they could shed no light on potential patterns, risk factors, areas for improvement, and/or effective methods of prevention." *Anders*, 2020 WL 8575132 at *7-8 (documents related to complaints of other sexual assaults/batteries relevant to whether defendant "had, or should have had, knowledge from which it may reasonably have apprehended that an assault on a passenger might occur, and [] had the ability in the exercise of the requisite degree of care to prevent the injury"); *Kawamura v. Boyd Gambling Corp.*, No. 13-cv-203, 2014 WL 3953179, at *4 (D. Nev. Aug. 13, 2014) (holding that initial discovery should not be so narrowly restricted as to prevent plaintiff from uncovering prior incidents that may be substantially similar to the incident in question; while plaintiff's claim did not pertain to sexual assault or murder, evidence that such incidents occurred in the same area as where plaintiff was physically assaulted was relevant to his claims against defendant for maintaining unsafe premises); *see also* Fed. R. Civ. P. 26 Committee Notes to 2000 and 2015 Amendments (expressly contemplating the relevance of documents pertaining to similar incidents "of the same type").

The particular facts and circumstances of other incidents of sexual assault are also directly

relevant to common defenses. Uber's emphasis on the individualized nature of sexual assaults is, in fact, a reflection of how it intends to defend against the claims alleged. Indeed, it is readily apparent that Uber will challenge the common claims by asserting – as it has previewed here – that, because each case of assault is so individualized, Plaintiffs will not be able to show that they were caused by Uber's systemic flaws and misconduct. Additionally, documents concerning other assaults are relevant to evaluating Uber's representations to Plaintiffs and the public that it would ensure passenger safety. *See, e.g.* Master Compl. at ¶¶ 187-239. The truth or falsity of those statements are central to Plaintiffs' fraud and voluntary undertaking claims.

In short, by seeking to preclude discovery into the facts of past sexual assault incidents, Uber is seeking to withhold the very discovery that would undermine its liability defenses. The federal rules do not grant Uber the right to unilaterally limit the scope of discovery based on the assumption that its litigation position is correct. As aptly explained in *Anders*: "Defendant insists that the material sought is not relevant because it could not have reasonably anticipated that one passenger would sexually assault another. In effect, Defendant is arguing that because, in its view, Plaintiff cannot succeed on the merits of her negligence claim, she is not entitled to discover material relevant to that claim. Defendant is incorrect—this is precisely the type of information that is discoverable."  2020 WL 8575132 at *4.

Ultimately, the allegations against Uber are not pled in a vacuum, but rather predicated on Uber's patterns and practices of negligence, disregard, and false promises that emerge only when one is able to view the facts and circumstances of individual incidents side by side. It is precisely through production of case- and plaintiff-specific information that MDL Plaintiffs will be able to discern the contours of common patterns and practices, and corresponding notice and knowledge, that form the foundation of their case against Uber.

### B.        The At-Issue Discovery Is Proportional.

Given that relevance cannot be seriously disputed, the burden shifts to Uber to demonstrate that discovery should not be allowed by "clarifying, explaining, and supporting its objections." *Williams v. Condensed Curriculum Int'l*, No. 20-cv-5292, 2021 WL 6621071, at *2 (N.D. Cal. Dec. 29, 2021) (citation omitted). Uber has failed to meet this burden. On privacy

concerns, Uber makes no attempt to delineate the actual burdens associated with applying narrowly tailored redactions. Instead, Uber raises privacy only in the abstract, untethered to any particular incident, document, or information. On prejudice, Uber's arguments are specious. The documents will neither result in "mini-litigations" nor "*unwarranted* scrutiny" into Uber's conduct. This is because the merits of the underlying cases are not at issue and the production here is only with respect to documents *already produced* in other litigations (and thus in Uber's custody, possession, or control). Further, any scrutiny is entirely warranted, and expected, given that the evidence will be highly relevant to substantiating Plaintiffs' claims.

**1.** <u>**Uber fails to establish that privacy concerns outweigh the need for the discovery, especially considering the available protective measures.**</u>

Resolution of privacy objections requires "balancing of the need for information against the privacy right asserted." *Zig Zag Holdings LLC v. Hubbard*, No. 13-cv-2643, 2021 WL 12644019, at *3 (N.D. Cal. Apr. 25, 2014) (citation omitted). Courts also consider the extent to which protective measures such as redactions and protective orders can alleviate privacy concerns. *See, e.g.*, *Doe v. Berkeley Unified Sch. Distr.*, No. 20-cv-8842, 2021 WL 1866197, at *1 (N.D. Cal. May 10, 2021) ("The identity of the alleged perpetrator and any other students referenced in the records can be protected by sealing or redaction, substantially reducing if not eliminating the privacy interest in those records"); *Vietnam Veterans of Am. v. C.I.A.*, No. 09-cv-37, 2011 WL 5882875, at *3 (N.D. Cal. Nov. 23, 2011) ("Defendant shall produce the document without redactions. If Defendant has privacy concerns, it may produce the document pursuant to the protective order governing this action").

With respect to Plaintiffs' need for the information, Uber argues the at-issue discovery is duplicative because evidence of "notice" can be obtained through other means, such as interrogatories, request for admissions, stipulations, and depositions. Mot. at 9-10. Not so. As discussed above, the evidence of specific incidents of sexual assaults are unique and directly relevant to establishing common patterns and practices that, in turn, will inform core issues related to notice and liability. This evidence cannot be duplicated through written discovery (which will largely be lawyer-curated) and they cannot be explored during depositions of Uber

1    witnesses (who will no doubt disclaim any knowledge of specific incidents). Simply put, Uber

2    does not get to control evidence by restricting the scope of discovery to only that which has been

3    curated and sanitized by Uber's legal team. *See, e.g.*, *Thomasson v. GC Servs. Ltd. P'ship*, No.

4    05-cv-940, 2006 WL 8451615, at *4 (S.D. Cal. Oct. 11, 2006) (noting that a party "does not get

5    to dictate the methods by which [the other party] may obtain relevant discovery").

6          As to protective measures, existing and available protective measures can adequately

7    protect non-party privacy interests. Courts routinely find that redaction *or* a protective order

8    adequately protects privacy interests. Here, there are both. The protective order in this case

9    expressly provides for protection over any discovery materials designated "confidential" or

10   "highly confidential – attorneys' eyes only," which may include the personal information and any

11   identifying information of any non-party, non-public incident reports, and any information

12   regarding any non-party not otherwise available to the public. *See* ECF 176 at 2-3. Further, and as

13   contemplated by the Court, redactions can and do protect private identifying information. *See*

14   ECF 175 at 4 (permitting redaction of HIPAA-related information). It bears noting that Plaintiffs

15   have and continue to offer to let Uber also redact private identifying information. *See* ECF 168 at

16   4.

17         In analogous contexts, Courts have found that such protective measures strike a balance

18   between privacy rights of non-party sexual assault victims and the plaintiff's need for discovery.

19   *See, e.g., Anders*, 2020 WL 8575132 at *6-8 (finding redaction of "last names and contact

20   information" of sexual assault complainants along with the "robust protective order" sufficient to

21   protect third parties in interrogatories, documents, and communications related to sexual

22   assaults); *Racine v. PHW Las Vegas, LLC*, No. 10-cv-1651, 2012 WL 6089182, at *3 (D. Nev.

23   Dec. 5, 2012) (granting motion to compel security reports, witness statements, police reports, and

24   investigation reports related to incidents or allegations of sexual assaults and other violent crimes

25   but requiring the redaction of names, contact information, and identifying information); *Bearchild*

26   *v. Cobban*, No. 14-cv-12, 2015 WL 13924068, at *4 (D. Mont. Sept. 3, 2015) (requiring

27   production of grievances and PREA complaints by non-party inmates alleging sexual abuse but

28   allowing the "identity of the inmates" to be redacted).

In categorically opposing a narrower approach, Uber makes only a cursory statement regarding the burdens of applying redactions. *See* Mot. at 8 (stating only that applying redactions would be "difficult"). This is simply not sufficient to carry its burden. In "opposing discovery on the grounds of burdensomeness, a party has the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. This imposes an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents." *Debeaubien v. California*, No. 19-cv-1329, 2021 WL 1616111, at *2 (E.D. Cal. Apr. 26, 2021). Without clarity into the precise burdens, it is impossible to meaningfully assess Uber's claims. *See id.* (granting motion to compel fitness for duty examinations over privacy objections where the defendant made no attempt to address why redactions and a protective order were insufficient and failed to suggest additional redactions); *Sundby v. Marquee Funding Grp., Inc.*, No. 19-cv-390, 2020 WL 4195071, at *5 (S.D. Cal. Jul. 21, 2020) (refusing to issue protective order to shield information from discovery because "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient); *Myles v. Cnty. of San Diego*, No. 15-cv-1985, 2016 WL 2343914, at *16 (S.D. Cal. May 4, 2016) (conclusory statements that files "are replete with private information" and "contain private information" insufficient to establish the applicability of privacy protections).

In any event, Uber's claim of burden is specious at best. Uber likely does not need to review these documents for relevance or privilege, because they were already reviewed and produced in other cases. So any burden here is less than applies to discovery generally. Indeed, Uber is already redacting its other PTO 5 productions to exclude "information contained in these documents that," in Uber's sole judgment," does not pertain to the subject matter set out in" PTO 5. **Ex. A** (2/14/24 Production Letter).

**2.      Production of the at-issue documents serves the interests of judicial economy and efficiency and there is no undue prejudice to Uber.**

Uber further argues that it should be permitted to withhold discovery because production would purportedly cause undue delays and would be prejudicial to Uber. These arguments are

1    without merit.

2            On delay, the Ninth Circuit and courts of this District have repeatedly held that the

3    production of documents that have already been searched for, reviewed, and produced in other

4    litigation serves the interests of judicial economy and avoids the wasteful duplication of

5    discovery. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003)

6    (noting that the Court "strongly favors access to discovery materials to meet the needs of the

7    parties engaged in collateral litigation") (citation omitted); *In re: McKinsey & Co., Inc. Nat'l*

8    *Prescription Opiate Consultant Litig.*, No. 21-md-2996, ECF 489, at 2-3 (N.D. Cal. Mar. 17,

9    2023) (ordering production of documents "related to any subpoenas, civil investigative demands,

10   or other requests for documents and communications from any government entity, and

11   McKinsey's responses, in connection with McKinsey's opioid-related work"), *objections*

12   *overruled* ECF 543 (N.D. Cal. May 9, 2023).

13           In fact, it is Uber's requested relief that, if granted, would result in protracted delays and

14   discovery disputes. Recall that Uber's request is to effectively excise from production all case-

15   and plaintiff-specific documents. In making this request Uber provides no clarity on what specific

16   documents – or even categories of documents –would fall within its ambit. Consequently, an

17   order on Uber's terms would result in Uber having carte blanche to withhold large swaths of

18   discovery based on its unilateral determination of what is or is not case- and plaintiff-specific

19   evidence. This will result in further discovery disputes on the proper scope and application of

20   Uber's request. The outcome is piecemeal litigation and iterative discovery that will only prolong

21   the dispute and unnecessarily burden the court. This does not serve the interests of judicial

22   economy or efficiency.

23           With respect to prejudice, Uber makes the absurd argument that it will be prejudiced

24   because the discovery will result in "unnecessary and unwarranted scrutiny[.]" Mot. at 10.

25   Production of discovery is, itself, necessarily prejudicial. *See Vasserman v. Henry Mayo Newhall*

26   *Mem'l Hosp.*, 65 F. Supp. 3d 932, 946 (C.D. Cal. 2014) (noting "[v]irtually all evidence is

27   prejudicial or it isn't material. The prejudice must be 'unfair'"). And the fact that it will be

28   scrutinized is entirely the point. Plaintiffs have every intention of carefully examining the

1    documents for evidence regarding the adequacy of Uber's conduct in each individual instance to

2    discern the larger pattern of negligence that may be applicable to all cases. In fact, the more

3    relevant the discovery the closer the scrutiny.

4         Similarly without merit is the contention that production will "relitigate previously-

5    resolved cases" and result in "mini-litigations[.]" Mot. at 10. The discovery at issue was *already*

6    *produced* in other litigations, and its production here is not a re-litigation of the merits of those

7    claims. Insofar as this argument is a preemptive challenge to the admissibility of the evidence at

8    trial, Rule 26 makes clear that "[i]information within the scope of discovery need not be

9    admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1); *see also Adams v. U.S.*, No.

10   03-cv-49, 2008 WL 162647, at *2 (D. Id. Jan. 16, 2008) (rejecting a similar argument regarding

11   the "specter of mini-trials" and noting that "[w]hile this may relate to admissibility, it does not

12   preclude discovery").

13   **IV.    <u>CONCLUSION</u>**

14        For these reasons, Plaintiffs respectfully request that the Court deny Uber's Motion to

15   Modify Pretrial Order No. 5.

16    Dated:  February 20, 2024                         Respectfully submitted,

17

18                                              By: */s/ Sarah R. London*
                                                     Sarah R. London (SBN
19                                                   267083)

20                                                 **LIEFF CABRASER HEIMANN &
                                                   BERNSTEIN, LLP**
21                                                 275 Battery Street, 29th Floor
                                                   San Francisco, CA 94111-3339
22                                                 Telephone: (415) 956-1000
                                                   Facsimile: (415) 956-1008
23                                                 slondon@lchb.com

24                                              By: */s/ Rachel B. Abrams*
                                                     Rachel B. Abrams (SBN
25                                                   209316)

26                                                 **PEIFFER WOLF CARR KANE
                                                   CONWAY & WISE, LLP**
27                                                 555 Montgomery Street, Suite 820
                                                   San Francisco, CA 94111
28                                                 Telephone: (415) 426-5641

Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
    Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*