RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

[Additional Counsel Listed on Following Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PTO NO. 5 RELATED TO GOVERNMENT INVESTIGATION DOCUMENTS**<br><br>Hearing Date: February 29, 2024<br>Hearing Time: 2:30 p.m.<br><br>Judge:       Hon. Lisa J. Cisneros<br>Courtroom:   G – 15th Floor |

-ii-

1  KYLE N. SMITH (*Pro Hac Vice* admitted)
       ksmith@paulweiss.com
2  JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
       jphillips@paulweiss.com
3  **PAUL, WEISS, RIFKIND, WHARTON
       & GARRISON LLP**
4  2001 K Street, NW
   Washington DC, 20006
5  Telephone: (202) 223-7300
   Facsimile:  (202) 223-7420
6
   *Attorney for Defendants*
7  UBER TECHNOLOGIES, INC.,
   RASIER, LLC, and RASIER-CA, LLC

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 4

    A.    Uber is in Compliance with PTO No. 5. ........................................................................... 4

           1.    Uber is in Compliance with PTO No. 5 With Respect to Production of CPUC Data .................................................................................................................. 6

           2.    Plaintiffs' Request for a List of Relevant Investigations or Inquiries Has Been Satisfied, and Their Other Requests Have No Basis ...................................... 7

    B.    Plaintiffs Have Not Meaningfully Engaged in the Meet and Confer Process as Required by Local Rule 37 ............................................................................................... 10

CONCLUSION ................................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**      **Page(s)**

*Deitrick* v. *Costa*,
  No. 06-cv-1556, 2019 WL 6717839 (M.D. Pa. Dec. 10, 2019) ...............................................10

*Parvati Corp.* v. *City of Oak Forest*,
  No. 08-cv-702, 2010 WL 3365911 (N.D. Ill. Aug. 23, 2010) ..................................................10

*Richards* v. *Uber USA, LLC*,
  Super. Ct., King Cnty., Wash., No. 19-2-16858-7 (Mar. 11, 2020) ........................................10

*Stollings* v. *Ryobi Techs., Inc.*,
  No. 3:14-mc-00239-SI, 2014 WL 12964130, at *4 (D. Or. July 21, 2014).............................10

*People of the State of California* v. *Uber Technologies, Inc., et al.*,
  No. CGC-14-543120 (S.F. Super. Ct.), Amended Complaint (Aug. 8, 2015)...........................9

**Statutes**

Cal. Bus. & Prof. Code, § 17200 ....................................................................................................9

Cal. Bus. & Prof. Code, § 17500 ....................................................................................................9

**Other Authorities**

U.S. Dist. Ct., N.D. Cal. Civ. L.R. 37....................................................................................10, 11

U.S. Dist. Ct., N.D. Cal. Civ. L.R. 37-1 .....................................................................................1, 11

U.S. Dist. Ct., N.D. Cal. Civ. L.R. 37-1(b).....................................................................................11

BACP, Transportation Network Provider Rules, Rule 1.10 ............................................................8

BACP, Transportation Network Provider Rules, Rule 1.10(b) .......................................................8

Defendants Uber Technologies Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") submit this memorandum in opposition to Plaintiffs' Motion to Enforce PTO No. 5 Related to Government Investigation Documents. Plaintiffs' premature and moot Motion should be denied because (1) Uber has complied with Pretrial Order No. 5 ("PTO No. 5"); (2) the Motion is premised on an overly broad interpretation of PTO No. 5; and (3) Plaintiffs failed to engage in any meaningful meet and confer with Uber before filing the Motion, in contravention of Local Rule 37-1.

**INTRODUCTION**

On December 28, 2023 the Court entered PTO No. 5, which provided, in Paragraph 6B, that Uber "produce to Plaintiffs, prior to receipt of formal document requests from Plaintiffs, all documents Defendants produced to legislative, regulatory, or enforcement entities in connection with government investigations or inquiries within the United States of Uber with respect to sexual assault, including attempted assaults (except those investigations or inquiries conducted pursuant to grand jury subpoena), including all those by the California Public Utilities Department, and any associated privilege logs." PTO No. 5, ECF No. 175 (Dec. 28, 2023). The Court ordered Defendants to "make rolling productions and privilege logs of these Government Documents" and stated that Defendants shall "endeavor to complete those productions, including privilege logs, by January 31, 2024." *Id.* (emphasis added).

Uber has fully complied with this order. Plaintiffs' overheated accusation that "Uber has ignored the Court's order" is not made in good faith - - especially given Plaintiffs' tactical decision to withdraw from the meet and confer process. Uber's compliance with the Court's order includes:

(a) By January 31, producing the responsive documents (including publicly available documents, as required by the order) that it had been able to identify by that date  - - including documents related to the CPUC's investigation/inquiry;

(b) Continuing to make "rolling productions" in the last two weeks of numerous tranches of additional documents; the only documents that remain to be produced are additional data submissions provided to the CPUC which likely will be produced prior to February 29, 2024 (assuming the documents have been located, identified, and prepared for production by then);

(c) Meeting and conferring with Plaintiffs - - voice to voice for nearly an hour on February 7, and in a detailed letter on February 8 - - to discuss and answer questions they posed, including by identifying, in writing, the investigations/inquiries within the scope of Paragraph 6B; and

(d) Inviting Plaintiffs to participate in additional meet and confers to discuss what remaining questions - - if any - - Plaintiffs have about Uber's productions and the identification of investigations/inquiries it provided.

Against this backdrop, Plaintiffs have moved to "enforce" the pretrial order, based on the erroneous assumption that there exists an "off-the-shelf" list of all government investigations and inquiries for Uber to produce or refer to during its discovery efforts - - and based on Plaintiffs' decision to ignore the fact that Uber has provided such a list through its productions and meet and confer correspondence (as well as in its Opposition to the Motion to Shorten Time on this motion). But there is no "enforcement" needed - - Uber has complied with the order (and continues to meet its obligations through rolling productions as materials are ready) *and* provided Plaintiffs with an identification of all of the relevant investigations/inquiries covered by the order. Tellingly, Plaintiffs have not responded to that identification of relevant investigations/inquiries by arguing that there are items missing from the list. In meet and confer correspondence, Plaintiffs said that they would, after receiving Uber's list, "identify any investigations or inquiries [within the United States of Uber that Plaintiffs] believe are missing from [Uber's] list." ECF No. 266-3 (Feb. 14, 2024). Plaintiffs have not done so.

It is therefore very difficult to understand what Plaintiffs actually are asking for in their motion, because Uber is fulfilling its obligations under the pretrial order. The remaining tranche of CPUC documents will likely be produced prior to February 29, 2024 once the materials have been identified, collected, and prepared for production; and Plaintiffs have not identified any deficiency in the scope of Uber's production. If Plaintiffs believe there is a deficiency, they can communicate that to Uber, and the parties can discuss the issue. That has not happened. The only "enforcement" that is needed in this process is enforcement of Plaintiffs' obligation to meet and confer in good faith, so the parties can discuss and resolve issues - - if there are any.

As Uber has explained and shown, repeatedly, it has complied, and more, with the requirements of PTO No. 5 as compared against the "enforcement" relief Plaintiffs seek through their motion:

| Plaintiffs' Request (ECF 259 at ECF p. 3) | Uber's Response |
|---|---|
| "(1) produce here all documents, data, and materials produced to the CPUC relating to its inquiry into sexual assault" | On January 31, Uber produced its settlement agreement with the CPUC related to the CPUC's investigation/inquiry. On February 13, Uber produced over 100 documents spanning more than 1,500 pages, reflecting a submission of materials to the CPUC related to its investigation/inquiry. (This submission had been made to the CPUC on February 12 - - *i.e.*, Uber re-produced the documents to Plaintiffs the next day.)<br><br>Within the next week, Uber expects to be in a position to produce all remaining documents provided to the CPUC related to its investigation/inquiry, with the production consisting of data reports that were submitted to the CPUC. |
| "(2) disclose to Plaintiffs all government investigations or inquiries of Uber within the United States with respect to sexual assault, including attempted assaults;" | No such list is required by Paragraph 6B, nor is such a list necessary, as Uber is complying with its obligation to produce to Plaintiffs documents for all such investigations / inquiries to Plaintiffs.<br><br>However, in an effort to meet and confer in good faith, Uber provided a list of the relevant investigations / inquiries during the parties' meet and confers, including through its productions and its correspondence to Plaintiffs dated February 8, 2024. Uber provided the list for a second time in its Opposition to the Motion to Shorten Time submitted on February 14, 2024 (ECF 266). |
| "(3) confirm whether or not Uber produced any documents in those proceedings;" | Uber has already provided the list of investigations / inquiries covered by Paragraph 6B multiple times - - as set forth above. Uber has also already confirmed the production status of documents related to this list through its February 8th Letter, its Opposition to Shorten Time, and this Opposition. |
| "(4) produce all documents produced in those proceedings" | Uber completed its productions with respect to the Massachusetts Department of Public Utilities, four inquiries from Members of Congress, and the Iowa Department of Transportation. Those productions span to almost 300 pages of material.<br><br>Uber is midstream with respect to documents produced to the CPUC. It has already produced 1,577 pages of CPUC material, and likely will be producing prior to February 29, 2024 the data submitted to the CPUC following the CPUC's investigation/inquiry. |

| "(5) certify under oath that Uber has fully complied with Paragraph 6(B) of PTO No. 5" | Uber explained its compliance to Plaintiffs in voice to voice meet and confers (which can continue, if Plaintiffs end their refusal to engage in the process), in written meet and confers, in the opposition to Plaintiffs' motion to shorten time, and in this opposition. Uber will further provide written confirmation of the completion of its productions, and its compliance, once the final productions of CPUC-related documents are made, which will likely occur prior to February 29, 2024. |
|---|---|

In sum, Uber produced documents on January 31; produced more documents in the last two weeks; likely will produce what is expected to be a final round of documents prior to February 29, 2024; met and conferred in good faith, and has offered to continue to do so, including after it completes productions.

Plaintiffs, on the other hand, have not identified any investigation/inquiry that they believe is missing from the list Uber has (repeatedly) provided, and have not met and conferred to discuss what other documents - - beyond those Uber already produced or communicated it will produce - - they believe must be produced under Paragraph 6B.

There is thus no basis for Plaintiffs' requested order of "enforcement," and the motion should be denied.

## ARGUMENT

**A.     Uber is in Compliance with PTO No. 5.**

As the record reflects, Uber has complied (and continues to comply) with the Court's December 28, 2023 Pretrial Order No. 5, Paragraph 6B.

The Court's December 28, 2023 Order Pretrial Order No. 5 required Uber to "endeavor to complete" the production of these government documents by January 31, 2024. Uber did just that. By January 31, 2024, Uber produced all of the documents it had identified from five separate government investigations or inquiries. Uber's January 31 production included documents it had produced in response to five government inquiries covered by Paragraph 6B of PTO No. 5: (1) Inquiry by California Public Utilities Commission ("CPUC") resulting in settlement dated July 15, 2021; (2) Inquiry by United States Congressman Joe Crawley (response dated May 25, 2018); (3) Inquiry by United States Congressmen Christopher Smith and Thomas Suozzi (response dated

-4-

September Sept. 11, 2019); (4) Inquiry by United States Senator Richard Blumenthal (response dated October Oct. 31, 2019); (5) Inquiry by United States Senator Richard Blumenthal (response dated February Feb. 14, 2020).

To the extent that Plaintiffs' motion is centered around the precise timing of Uber's productions, there is no basis for their grievances.  Uber identified, collected, and produced all the responsive documents it had been able to locate by January 31.  Since then, Uber has identified additional documents that it is in the process of obtaining and preparing for production.  Uber plans to produce these documents within the next week.  It seems that Plaintiffs incorrectly assume that there is a single, already-prepared list of all government investigations and inquiries available "off-the-shelf" for Uber to produce or refer to in its discovery efforts.  This is simply not true.  There is no single location or single list where all government investigation-related documents are stored. Uber has been diligently and continuously consulting its multiple legal and regulatory departments across the country responsible for relevant materials to locate and retrieve any other documents that fall within the scope of the Order. This undertaking has required a significant amount of time, especially given that some employees with relevant knowledge and responsibilities are no longer with the company.[1]

Following Uber's initial January 31 production, Uber has made 4 subsequent productions to Plaintiffs on a rolling basis.  To date, Uber's productions, totaling over 1,800 pages, consist of:

(1) CPUC Settlement Agreement dated July 15, 2021 and four Congressional Letters (produced January 31, 2024)

(2) MA DPU Inquiry Regarding Transportation Network Company (TNC) Complaint Reporting (D.P.U. Docket 23-33) (produced February 8, 2024);

(3) Iowa DOT 2018 Inquiry Response (produced February 12, 2024);

(4) Response to CPUC Request for Information Related to Training Documents and Investigative Policies dated February 12, 2014 (produced February 13, 2024);

(5) Iowa DOT 2019 Inquiry Response (produced February 14, 2024).

---

[1] That process resulted in production of the list of investigations and inquiries that Plaintiffs' Motion to Enforce purports to seek. *See* ECF No. 266-2.

1   These productions, which amount to almost two thousand pages of documents, demonstrate Uber's continuing compliance with PTO No. 5.  *See* Declaration of Kyle Smith ("Smith Decl.") ¶ 8.  Plaintiffs' assertion that "Uber has ignored the Court's order" has no basis in fact.

The record establishes that Uber has, in accordance with Paragraph 6B, undeniably "endeavored to complete" its Paragraph 6B production by January 31.  Further, Uber is continuing to act diligently to obtain all documents related to relevant government investigations and inquiries.  Because Uber was and continues to be in compliance with PTO No. 5, there is no need for Court intervention.  Plaintiffs' Motion to Enforce is entirely unnecessary and, at the very least, is woefully premature.

          1.    <u>Uber is in Compliance with PTO No. 5 With Respect to Production of CPUC Data</u>

Plaintiffs allege that Uber did not produce all documents it previously produced to the CPUC in connection with any investigation or inquiry.  This misrepresents Uber's representations and production to date.  Plaintiffs omitted from their Motion the express commitment made by Uber to promptly supplement its January 31 production with rolling productions of additional CPUC documents responsive to Paragraph 6B.  Specifically, Uber's February 8 letter to Plaintiffs states that Uber will be producing "additional rolling productions of documents [Uber] produced to the . . . California Public Utilities Commission."  ECF No. 266-2 at 2.

Uber initially produced on January 31, 2024 the "Inquiry by CPUC Resulting in Settlement Dated July 15, 2021."  And Uber did in fact produce additional CPUC documents on February 13 (Response to CPUC Request for Information Related to Training Documents and Investigative Policies dated February 12, 2014).  Smith Decl. ¶ 8(c).  Uber has committed to making additional productions to the extent any documents responsive to Paragraph 6B are identified. ECF No. 266-2 at 2. Specifically, Uber has identified further CPUC Annual Report Resubmission Appendix D documents, which it will produce as soon as the documents are received from the relevant departments.

-6-

2.  **Plaintiffs' Request for a List of Relevant Investigations or Inquiries Has Been Satisfied, and Their Other Requests Have No Basis**

Plaintiffs' request for a list of relevant investigations is puzzling (and moot), as Uber already provided Plaintiffs with this information in Uber's February 8, 2024 letter. ECF No. 266-2. In other words, Plaintiffs were already in possession of this information *prior to the filing of the instant Motion.* And of course, the list was resubmitted in Uber's opposition to Plaintiff's motion to shorten time on this motion (ECF No. 266).

Plaintiffs e-mailed Uber on February 8 reiterating their request, first posed during the February 7 meet and confer, that Uber "[p]rovide a list of all government investigations or inquiries within the United States of Uber with respect to sexual assault, including attempted sexual assaults." ECF No. 266-3. Plaintiffs affirmatively represented that, once Uber provided a list, Plaintiffs would then "identify any investigations or inquiries [Plaintiffs] believe are missing from your list," consistent with the Parties' discussions during the February 7, 2024 meet and confer. *Id.*[2] Uber upheld its end of this agreement through its letter responding to Plaintiffs the very next day, on February 8. ECF No. 266-2. Plaintiffs, for their part, did not hold up their end of the agreement, as they have not provided a list of *any* investigations or inquiries they believe are missing from Uber's lists. Smith Decl. ¶ 7.[3] Even after Uber provided its list for a second time in its opposition to the motion to shorten time on February 14, Plaintiffs *still* have not identified any investigations/inquiries they believe are missing. *Id.*

Plaintiffs' claims that Uber failed to confirm that it has produced to Plaintiffs all documents produced in response to all other government investigations, and that Plaintiffs are "left totally in the dark" about whether Uber will comply with PTO No. 5, are as hyperbolic as they are false.

---

[2] As will be addressed in further detail below, Uber requested a response from Plaintiffs with respect to any investigations Plaintiffs believe are missing from Uber's list because Uber suspected that the parties were not aligned on this issue, as part of an effort to resolve any dispute between the parties without the need for judicial intervention. ECF No. 266-2 , at 3.

[3] Uber did not unilaterally "insist[] that Plaintiffs' counsel provide a list to Uber," as Plaintiffs seem to suggest. Plaintiffs' counsel themselves represented that Plaintiffs would do so following a discussion between the parties; they said: "Upon receipt [of Uber's list], we will identify any investigations or inquiries we believe are missing from your list." ECF No. 266-3.

-7-

First, Uber has complied with PTO No. 5.  Second, Uber's February 8, 2024 letter addressed these issues.  Moreover, to the extent Plaintiffs believe the February 8, 2024 letter insufficiently addresses their concerns, they could have accepted Uber's offer to meet and confer for clarity and follow-up.

Plaintiffs request that the Court order Uber to immediately "disclose to Plaintiffs all government investigations or inquiries of Uber within the United States with respect to sexual assault, including attempted assaults." Pls. Mot. to Enforce PTO No. 5 ("Pls. Mot."), ECF No. 259, at 10.  It is unclear what Plaintiffs mean by this, but it seems that they may be seeking a disclosure of all investigations/inquiries *regardless of whether Uber produced documents in them*.  But Paragraph 6B of PTO No. 5 *does not require* disclosure of a list of all investigations or inquiries of Uber within the United States pertaining to sexual assault.  The scope of PTO No. 5 only requires that Uber "produce to Plaintiffs *all documents [Uber] produced* to legislative, regulatory, or enforcement entities *in connection with government investigations or inquiries* within the United States of Uber with respect to sexual assault, including attempted assaults . . . ."[4]

Based on Uber's correspondence with Plaintiffs and Plaintiffs' Motions, it seems Plaintiffs' expectations regarding the volume of documents that Uber possesses in connection with government investigations or inquiries are based on erroneous assumptions.  Plaintiffs seem to have the impression that a large number of government entities and local regulatory bodies have investigated Uber as to sexual assault and sexual misconduct issues.  This has not happened.  Outside of the CPUC and the other government entities that Uber has identified for Plaintiffs

---

[4] Uber has been clear with Plaintiffs, including in its February 8 meet and confer letter, ECF No. 266-2, that Paragraph 6B of PTO No. 5 does not require Uber to produce documents that were provided to regulators pursuant to legislative or regulatory reporting requirements.  Such documents are not ones that were made "in connection with government investigations or inquiries," and thus are not encompassed by Paragraph 6B.  These regular and ongoing reporting requirements are distinct from a "government investigation or inquiry." For example, in Illinois, TNP Rule 1.10, promulgated by the Department of Business Affairs and Consumer Protection ("BACP"), requires transportation network providers to identify drivers who are permanently deactivated from a transportation network provider's platform. BACP, Transportation Network Provider Rules, Rule 1.10 (Aug. 10, 2020). Uber submits reports to BACP under this Rule. *Id.* at Rule 1.10(b).   BACP does not request this information in connection with any investigation or inquiry.  Plaintiffs' motion does not raise any dispute over this category of documents.

through its list, government entities have not made investigations or inquiries of Uber in the manner Plaintiffs have speculated. Uber cannot produce documents that do not exist from investigations that do not exist.

Uber has complied with Paragraph 6B, as reflected in Uber's February 8, 2024 letter and reiterated in Uber's Opposition to Plaintiffs' Motion to Shorten Time. ECF No. 266, p. 5. [5]Opp. to Mot. to Shorten Time, at 5.

Plaintiffs also state that "Uber's productions did not include a privilege log or any mention thereof." Pls. Mot. at 3. At this point, Uber has not identified any privilege logs related to government inquiries or investigations. However, if Uber identifies any privilege logs in its continued review, they will be produced.

Lastly, Plaintiffs' fifth prong for relief requests that Uber be ordered to provide a certification of compliance under oath confirming that it has fully complied with PTO No. 5. *Id.* at 10. There is no basis for this requested relief, and it should be denied. For the myriad of reasons addressed above, Plaintiffs have not established Uber's non-compliance with PTO No. 5, and so there is no conceivable need for an affidavit that PTO No. 5, Paragraph 6B did not contemplate.

The cases on which Plaintiffs rely for the proposition that a "certification" should be ordered have no application here because they are instances where the court had previously found a history of noncompliance as to the discovery issues related to the same claims in the same court.

---

[5] Plaintiffs mentioned during the meet and confer that they expected Uber to produce documents provided to the San Francisco and Los Angeles District Attorneys based on investigations or inquiries of Uber that they conducted in or around 2014-2016. These DA investigations were not "government investigations or inquiries within the United States of Uber with respect to sexual assault, including attempted assaults." *See People of the State of California* v. *Uber Technologies, Inc., et al.*, No. CGC-14-543120 (S.F. Super. Ct.), Amended Complaint (Aug. 8, 2015). The causes of action in the District Attorneys' Complaint in *People of the State of California* involve violations of California's Business & Profession Code § 17500, which concerns claims regarding untrue or misleading statements concerning safety, and violations of California's Business & Profession Code § 17200, which concerns unfair competition and unlawful business practices. *See People of the State of California* Amended Compl. ¶¶ 161, 163, 165, 167, 169, 171, 173, 175, 177, 179, 181, and 183. In other words, the District Attorneys' case was not an investigation or inquiry of Uber in regards to sexual assault, sexual misconduct, or attempted sexual assault. Uber explained this to Plaintiffs in its February 8 meet and confer correspondence, and Plaintiffs do not raise any issues regarding the District Attorneys' case in their Motion to Enforce. ECF No. 266-2, at 2–3.

-9-

*See Stollings* v. *Ryobi Techs.*, Inc., No. 3:14-mc-00239-SI, 2014 WL 12964130, at *4 (D. Or. July 21, 2014) (ordering an affidavit of completeness in a discovery dispute when prior "substantially similar" discovery disputes had already been decided by this court in cases involving similar claims, the same subpoenaed entities, and same counsel); *Deitrick* v. *Costa*, No. 06-cv-1556, 2019 WL 6717839, at *4–5 (M.D. Pa. Dec. 10, 2019) (awarding sanctions when plaintiff violated a court order which required her to provide an affidavit establishing completeness after she did not produce multiple documents almost a year after agreeing she would and after multiple requests by defense counsel for updates on the status of discovery); *Parvati Corp.* v. *City of Oak Forest*, No. 08-cv-702, 2010 WL 3365911, at *1 (N.D. Ill. Aug. 23, 2010) (ordering an affidavit of completeness when plaintiff filed its third motion to compel in the case because defendant stated it had no responsive documents to some of plaintiff's request).[6]  In contrast, here, Plaintiffs do not even try to show that Uber has a history of non-compliance - - much less a single instance of non-compliance.

### B.  Plaintiffs Have Not Meaningfully Engaged in the Meet and Confer Process as Required by Local Rule 37

Following Uber's January 31, 2024 production, the parties met and conferred on February 7, 2024.  Smith Decl. ¶ 4. The next day, on February 8, 2024, Uber sent a detailed letter addressing all the issues raised during the meet and confer. *Id.*;  ECF No. 266-2.  Plaintiffs never engaged on the issues and did not respond to Uber's letter thereafter, and instead declared - - despite Uber's requests to meet and confer further - - that they would be filing a motion to "enforce." Plaintiffs therefore did not meaningfully engage with Uber to "resolve all disputed issues" as required by Civil Local Rule 37. On the contrary: Plaintiffs tactically retreated from the meet and confer in order to make a motion for which it has no basis.

---

[6] Plaintiffs' reliance on *Richards* v. *Uber USA, LLC*, Super. Ct., King Cnty., Wash., No. 19-2-16858-7 (Mar. 11, 2020) is misplaced.  That case does not involve allegations that Uber is culpable for sexual assault committed by an independent driver, and Plaintiffs do not even attempt to show that whatever discovery issues in that case apply to these here.  The fact that Uber is a common defendant of course does not establish that whatever may have transpired there is relevant to the dispute pending before this Court, and Plaintiffs do not cite to any authority that a discovery order in a prior, unrelated case would somehow justify the relief that they are seeking here.

-10-

|   |   |
|---|---|
| 1 | Civil Local Rule 37 governs motions to compel discovery.  Civil Local Rule 37-1 provides a procedure for resolving disputes that a moving party must follow prior to making such a motion. Pursuant to this Rule, Plaintiffs were required to confer with Uber to "resolve the matter without judicial intervention by conferring in good faith." Civil Local Rule 37-1(b). The rule is designed to "avoid future disputes and [] preserve the parties' and the Court's time and resources Pls. Mot. at 8. Those objectives were disregarded by Plaintiffs, who have rushed to Court without responding in any meaningful way to Uber's detailed written correspondence from February 8, and its offer to further meet and confer to discuss any remaining unresolved issues.  Smith Decl. ¶ 7. |

This is particularly true given that Plaintiffs committed that they would, in response to Uber's provision of a list of relevant investigations/inquiries (which Uber provided on February 8), "identify any investigations or inquiries within the United States of Uber with respect to sexual assault, including attempted assaults" that Plaintiffs believed were "missing" from Uber's list. ECF No. 266-3.  Plaintiffs have never identified any such investigations or inquiries - - not during the February 7 voice-to-voice meet and confer, not in the meet and confer correspondence that followed, not in their motion to shorten time, not in their motion to enforce, and not in any correspondence amongst the parties since the motions were filed.

Plaintiffs' rush to Court without engaging in the meet and confer process as required by Local Rule 37-1 is yet another ground on which to deny the motion.

## CONCLUSION

Uber respectfully requests that Plaintiffs' Motion to Enforce by denied.

DATED: February 23, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Robert Atkins*
    ROBERT ATKINS
    RANDALL S. LUSKEY

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC