[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**<br><br>This Document Relates to:<br><br>All Cases | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF PROPOSED DEPOSITION PROTOCOL**<br><br>Judge: Honorable Lisa J. Cisneros<br>Date: TBD<br>Time: TBD<br>Courtroom: G – 15th Floor |

# **INTRODUCTION**

Plaintiffs' proposed Deposition Protocol establishes efficient, clear procedures for conducting depositions and is aimed at avoiding the need for additional negotiation between the parties and the potential for Court intervention. Uber's proposal, in contrast, ignores important issues, including the production of privilege logs for custodial files and authentication of documents used in depositions. Failure to address these issues at this juncture guarantees inefficiency and delay as the parties, and likely the Court, will be required to address them later.

Further, without justification, Uber seeks to severely limit both the number of witnesses Plaintiffs may depose as well as the length of time of these depositions. First, Uber seeks to arbitrarily limit Plaintiffs to 25 total depositions, including 30(b)(6) witnesses, despite the fact that Uber has existed for 15 years and has placed 5,500 employees who may possess relevant information under litigation holds.  Second, Uber seeks to arbitrarily limit the time Plaintiffs' counsel can depose Uber's witnesses to less than the time afforded under the Federal Rules, arguing that MDL Plaintiffs and JCCP Plaintiffs must share the seven (7) hours allowed under the rules (in some unspecified split between the respective parties). Both of Uber's proposals are unwarranted and highly prejudicial and should be rejected.

For the reasons explained herein, the Court should adopt Plaintiffs' proposed Deposition Protocol. *See* Pls.' proposed Deposition Protocol, Exhibit A.

# **ARGUMENT**

### I.      **Number of Depositions [Ex. A, Paragraph II(B)]**

Uber insists that, at this early stage, the parties set a limit regarding the number of depositions Plaintiffs may take.  But asking Plaintiffs to agree to any set number of fact witness and 30(b)(6) depositions at this juncture, before discovery, essentially requires Plaintiffs to shoot in the dark as to how many depositions Plaintiffs will need.  Uber has not produced any

significant discovery to date, other than to identify at least 5,500 Uber employees and former employees the company has placed under litigation holds. Uber's Opposition to Plaintiffs' Motion to Enforce PTO No. 2, Dk. 172, at 2. Plaintiffs do not yet know the type of productions that are available for potential custodians or the number of custodians that will be necessary to depose to support their allegations. For example, Uber has had significant turnover during the past 15 years (Uber began operations in 2009), which may require numerous depositions to understand, *inter alia*, Uber's practices and procedures related to driver background checks, training, and implementation of safety measures. Therefore, it is premature to set a deposition cap at this time. *See, e.g.*, JUUL Deposition Protocol, attached as Exhibit 1 to Exhibit B, February 27, 2024 Declaration of Sarah R. London ("London Declaration") (not setting an initial cap and keeping the number of depositions open).

Nonetheless, in an effort to reach a compromise, Plaintiffs have proposed a limit of 100 witnesses, not including 30(b)(6) witnesses. Plaintiffs' position is based in part on the number of employees (5,500) that Uber has disclosed as being under litigation hold because those witnesses may possess information relevant to this litigation. *See* Uber's Opposition to Plaintiffs' Motion to Enforce PTO No. 2, Dk. 172, at 2. And Uber currently has approximately 30,000 employees (presumably many of which are not included in the current litigation holds but who may possess relevant information). Ex. B, London Declaration, at ¶ 4. Further, Plaintiffs' position is in line with other complex MDLs involving large corporate defendants and claims involving wide periods of time. *See, e.g.*, Volkswagen Deposition Protocol (attached as Exhibit 2 to Ex. B, London Declaration) at ¶ II(B) (permitting plaintiffs to conduct up to 100 depositions of the defendants); Zantac Deposition Protocol (attached as Exhibit 3 to Ex. B, London Declaration) at ¶ A(6) (placing "soft" caps on depositions totaling at least 92 depositions of defense fact witnesses).

In contrast, without explanation or justification, Uber seeks to unilaterally limit Plaintiffs to *25* depositions, including 30(b)(6) witnesses—which is not even two witnesses per year for each year of Uber's operations (Uber was first formed in 2009). Under Uber's proposal, Plaintiffs would only be allowed to depose less than five percent of the potential witnesses Uber identified. Such an unjustified discovery limitation is unwarranted and is highly prejudicial. Uber's approach is nothing more than a blatant attempt to deprive Plaintiffs of necessary discovery and should be rejected.[1]

For these reasons, the number of depositions should be set at a later date once discovery is fully underway. Alternatively, Plaintiffs should be permitted to take 100 depositions, in accord with the number of depositions regularly permitted in complex MDLs.

**II.         Duration of Depositions [Ex. A, Paragraph II(B)]**

Both parties seek coordination between this litigation and the state court JCCP to the extent practical. Towards that end, Plaintiffs agreed they will use their best efforts to coordinate with JCCP counsel with regard to scheduling depositions and cross-noticing depositions that are common to both litigations. However, Uber demands not just coordination, but time limits on witness questioning that essentially (and without justification) cut Plaintiffs' time for questioning witnesses roughly in half.

Under Rule 30 of the Federal Rule of Civil Procedure, Plaintiffs are entitled to question

---

[1] The only basis Uber has offered for its 25 deposition cap is the number of witnesses they report were deposed in the Lyft JCCP litigation. Ex. B, London Declaration, at ¶ 7. But this nationwide litigation is *not* the Lyft JCCP. This litigation will involve the claims of likely thousands of sexual assault survivors based on Uber's own reporting of sexual assaults in its Safety Reports. Moreover, Uber has been in operation several years longer than Lyft (approximately 20% longer), and controls approximately 50% more of the market share than Lyft. *Id*. at ¶¶ 8-9. Thus, Uber has had more employees and decisionmakers than Lyft and, therefore, the number of witnesses necessary to depose here will be significantly greater than in the Lyft litigation. In any event, the number of depositions taken in a different action, against a different company, does not justify a preemptive cap here.

Uber's witnesses for seven (7) hours. On the other hand, California state courts (such as the JCCP) have no time limitations governing corporate representative and expert depositions, and a seven-hour limit for other depositions. Cal. Code Civ. P. §2025.290. Therefore, if Plaintiffs' counsel were to depose an Uber witness and JCCP counsel deposed the same witness separately, without coordination, Plaintiffs' counsel would be entitled to seven hours of questioning and JCCP counsel would be entitled to an uncapped amount of time for depositions as there is no time limit for non-expert depositions in complex cases in California. *Id*. In other words, Plaintiffs here and JCCP plaintiffs are entitled to *at least* a combined 14 hours per witness under the applicable rules.

Nonetheless, Uber seeks to limit such depositions to seven hours *total* (including corporate representative and expert depositions), meaning that Plaintiffs here and JCCP plaintiffs must share those seven hours (in some unspecified split between the respective parties). In short, Uber is proposing (without justification) to improperly limit the time for Plaintiffs' counsels' questioning of witnesses to substantially less than what Plaintiffs are permitted by the Federal Rules. Moreover, Uber ignores that this Court cannot order the JCCP Plaintiffs to reduce the time they are allotted to conduct depositions under California state law. Unsurprisingly, JCCP plaintiffs' counsel also objects to Uber's proposal. Ex. B, London Declaration, at ¶ 10. The JCCP Plaintiffs have not agreed to be bound by any *ex parte* limitations Uber seeks to impose, and the JCCP Plaintiffs have not agreed to any cap on number of deponents, nor deposition time. *Id*.

Plaintiffs' position is consistent with what this Court and others similarly situated have ordered when coordinating discovery between MDL and state court litigation. For example, in the Volkswagen MDL, this Court instituted a 14-hour time limit on depositions noticed by the MDL plaintiffs, with that time to be shared by JCCP counsel. Volkswagen Deposition Protocol at ¶ III(G). Similarly, in the JUUL MDL, depositions were limited to 12 hours, exclusive of redirect

examination. Ex. 1, Juul Deposition Protocol at 4. Questioning counsel there was permitted additional time, up to two hours (14 hours total) for redirect examination, in an amount of time equal to questioning performed by the defending counsel. *Id*. Plaintiffs' proposal also provides that the JCCP leadership may agree to be bound to a combined 14-hour cap, or the JCCP court may impose such an order, to facilitate coordination.

Plaintiffs' proposal is in line with what this Court and other complex MDLs have ordered when coordinating between MDLs and related state court proceedings. Defendants' proposal, on the other hand, is unreasonable, unenforceable, in contrast to the federal rules, and should be rejected.

### III.      Production of Privilege Logs and Personnel Files [Ex. A, Paragraph I(B)]

Plaintiffs' proposal includes provisions regarding the production of privilege logs related to custodial files and personnel files for Uber employees and former employees. These provisions are intended to prevent future disputes on these issues and avoid delay in deposition scheduling. Indeed, failure to address this issue at the outset has caused delay in other complex MDLs. For example, in the JUUL litigation, the original deposition protocol did not include a provision regarding production of custodial files and privilege logs related thereto. JUUL Deposition Protocol. Nine (9) months later however, after issues arose regarding production of custodial files and privilege logs, the court entered an amended deposition protocol including provisions analogous to what Plaintiffs seek here. Ex. B, London Declaration, at ¶ 11; JUUL Amended Deposition Protocol (attached as Exhibit 4 to Ex. B, London Declaration) at ¶ II(7).

Uber's proposal is silent on this issue and seeks to address concerns as they arise, which they inevitably will. This invites delay, as demonstrated in the JUUL litigation. Because Uber's proposal is certain impede the efficient scheduling and conduct of depositions, it should be rejected and instead, provisions for production of privilege logs and personnel files should be required. This will further ensure that privilege disputes as to custodial files are addressed before witnesses are deposed and would eliminate the need to keep depositions open or the need to re-

depose witnesses on this issue.

## IV. Authenticity [Ex. A, Paragraph II(C)(3)]

Plaintiffs propose that objections to authenticity of documents that were produced by a Defendant or third party in this litigation and bear a Bates stamp must be made within thirty (30) days after the document is used as an exhibit in a deposition. If no objection is made the exhibit will be deemed authentic. Plaintiffs' proposal promotes efficiency by having a process for authenticating documents, rather than delaying authenticating documents until trial.

Defendants, in contrast, offer no proposal to authenticate documents and instead seek to punt this issue until trial. The absence of a plan likely means that the parties would have to conduct record depositions for the purpose of authentication and may require additional Rule 30(b)(6) depositions, which will undoubtably cause delay and waste time during depositions as the participants deal with document authentication issues. Additionally, lack of authentication prior to expert reports presents the potential for numerous issues at time of trial if documents cannot be authenticated—even where, as here, the documents at issue were already reviewed and produced by Uber as responsive to discovery requests.

Plaintiffs' proposal is consistent with deposition protocols regularly entered in complex MDLs. Indeed, Plaintiffs' proposal is nearly verbatim what this Court entered in the *Volkswagen* MDL; however, Plaintiffs' proposal adds the additional safeguard that it only applies to documents bearing a Defendant or third-party Bates stamp.  Volkswagen Deposition Protocol at ¶ III(J)(3)(b); *see, e.g.*, Zantac Deposition Protocol at ¶ G.

Punting on the important issue of document authentication would result in inefficiencies and cause a lack of clarity and certainty moving into trial (which will, in turn, cause undue delay). Given the expense and delay that authenticating documents down the road will undoubtably cause, Plaintiffs' proposed authentication requirement should be implemented here.

## V. <u>Video Cameras on Counsel [Ex. A, Paragraph I(D)(6)]</u>

Plaintiffs seek a provision requiring counsel present in the same room with a deponent during a remote deposition to appear on camera. This provision ensures proper conduct during depositions and aims to avoid any concern of impropriety. Allowing counsel to be present in the room with a deponent and not on camera is a situation ripe for abuse. It is also easy to accomplish, as each attorney can appear on camera in front of a laptop computer which will be part of the deposition Zoom link. Provisions of this nature have been consistently ordered since the Covid-19 pandemic and the increase in remote video depositions. *See, e.g.*, McKinsey Deposition Protocol (attached as Exhibit 5 to Ex. B, London Declaration) at ¶ C(3)(f); Ex. 3, Zantac Deposition Protocol at ¶ K(1)(g).

Uber seeks to exclude this provision, essentially asking to be permitted to attend a remote deposition in person, in the same room as the deponent, but without appearing on camera. Uber claims to have concern that requiring counsel to appear on camera may interfere with the videographer's ability to zoom in on the deponent and concern that other counsel would have to have an extra Zoom window open. Ex. B, London Declaration, at ¶ 13. But these concerns are unwarranted and are easily addressed through the Zoom application that will be used for remote depositions. First, the videographer will not be recording the attorneys, who instead will simply be appearing on camera in a provided Zoom link. Therefore, their appearance on camera does not affect the videographer's ability to focus on the witness. Second, to the extent any attorney does not want to have multiple Zoom windows open, one of which could display video of counsel appearing in person, any attorney attending remotely can chose whether to view only the video of the deponent, or video of the deponent as well as other counsel.

This provision is an easy, cheap, and efficient way to avoid any concern of impropriety.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request the Court adopt Plaintiffs' proposed Deposition Protocol.

Dated: February 27, 2024

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

- 9 -

PLS. BR. ISO PROPOSED DEPOSITION PROTOCOL
CASE NO. 23-MD-03084-CRB