1
2
3
4
      UNITED STATES DISTRICT COURT
5
      NORTHERN DISTRICT OF CALIFORNIA
6
7
IN RE: UBER TECHNOLOGIES, INC.
PASSENGER SEXUAL ASSAULT
8
LITIGATION
9
_____
10
This Document Relates to:
11
ALL ACTIONS

Case No. 23-md-03084-CRB   (LJC)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS
UBER TECHNOLOGIES, INC.,
RASIER, LLC, AND RAISER-CA,
LLC'S MOTION TO MODIFY
PRETRIAL ORDER NO. 5**

Re: ECF No. 251

12
13
      Pending before the Court is a Motion to Modify Pretrial Order (PTO) No. 5 submitted by
14
Defendants Uber Technologies, Inc., Raiser, LLC, and Rasier-CA, LLC (collectively, Uber).  ECF
15
No. 251.  Plaintiffs oppose the motion.  ECF No. 277.  A hearing was held on February 22, 2024.
16
ECF No. 283.  At the hearing, the Court permitted the parties to file, by February 26, 2024, up to
17
five examples of settlement agreements and protective orders pertaining to cases involving alleged
18
sexual assaults by drivers using the Uber application.  *Id.*  Uber and Plaintiffs subsequently filed
19
several supplementary materials for the Court's review.  ECF Nos. 291, 292, 293.[1]  Having read
20
the papers filed by the parties and carefully considered their arguments and relevant authority, the
21
Court hereby **GRANTS IN PART** and **DENIES IN PART** Uber's Motion to Modify PTO No. 5
22
for the reasons discussed herein.
23

24
_____
[1] Plaintiffs filed two confidential settlement agreements concurrently with an Administrative
25
Motion to Consider Whether Another Party's Material Should Be Sealed.  ECF No. 291.  Uber's
statement in support of sealing as required by Local Rule 79-5(f)(3) is due by March 4, 2024.
26
Plaintiffs also publicly filed two sample protective orders.  ECF No. 292.  Uber filed their
materials concurrently with an Administrative Motion to File Under Seal.  ECF No. 293.  On
27
February 29, 2024, the Court denied Uber's motion without prejudice because it was overbroad
and sought to seal additional legal argument as well as other, non-confidential materials not
28
originally requested by the Court.  ECF No. 305.  Uber's renewed motion to seal is due by March
1, 2024.  *Id.*

# I.      BACKGROUND

## A.      Procedural history

The Court presumes the parties' familiarity with the underlying facts in this multi-district litigation (MDL).  In PTO No. 4, the Court ordered the parties to jointly submit a proposed pretrial order regarding discovery, or if the parties could not reach agreement, competing proposals with memorandums explaining why the Court should adopt that party's proposal.  ECF No. 152.  The parties met and conferred thereafter but were unable to reach an agreement.  They submitted competing proposals on December 21, 2023.  ECF Nos. 168, 171.  Plaintiffs wanted "off the shelf discovery," including "any discovery produced in any other rideshare sexual assault case."  ECF No. 168 at 4.  Uber's proposal was "to produce in this MDL any and all documents produced in the JCCP [Judicial Council Coordination Proceeding] that are not specific to a particular case within the JCCP."  ECF No. 171 at 3.  On December 28, 2023, the Court issued PTO No. 5, stating, *inter alia*:

> Defendants shall promptly produce to Plaintiffs, prior to receipt of formal document requests from Plaintiffs, all documents Defendants produced in any other Uber sexual assault cases, including arbitrations, and any other cases about the 'Safe Rides Fee,' including any associated privilege logs.  Defendants may redact HIPAA-protected information of plaintiffs in those actions."

ECF No. 175 at 4.

## B.      Uber's position

Uber requests that the Court modify PTO No. 5 to require production of only "non-case-specific and non-plaintiff specific documents" Uber produced in prior litigations.  *Id.* at 6.  According to Uber, any "case-specific and plaintiff-specific documents" are irrelevant to Plaintiffs' allegations in this MDL because the prior litigations involve "highly individualized incidents" of sexual assault or misconduct with different factual circumstances to what happened to the MDL Plaintiffs.  *Id.* at 8.  Uber also raises the concern that production of these documents will infringe on the privacy interests of the non-party plaintiffs from these prior cases.  *Id.* at 9–11.  And Uber believes Plaintiffs do not have a compelling need for the documents because they have "numerous other avenues of discovery" available to support their claims.  *Id.* at 11–12.  Uber also

2

United States District Court
Northern District of California

argues that production of the case-specific documents will prejudice Uber by creating a risk of unnecessary "mini-litigations" as to the other incidents and what the parties involved did or did not do. *Id.* at 12. Finally, if Uber is forced to "religitate [the] previously-resolved cases," that will delay discovery into the incidents at issue in the MDL. *Id.*

### C.       Plaintiffs' position

Plaintiffs argue that discovery from prior litigations is directly relevant to their claims in the MDL because their fundamental theory of liability is that "Uber knew of the prevalence of sexual assaults by its drivers but failed to take appropriate measures to mitigate, rectify, redress, and warn against these occurrences." ECF No. 277 at 6. The unique factual circumstances of each prior incident of sexual assault, when the incidents are viewed cumulatively, may shed light as to Uber's "patterns and practices of negligence, disregard, and false promises." *Id.* at 7. Plaintiffs further argue that Uber has failed to prove that production of the case-specific and plaintiff-specific documents is not proportional to the needs of the case. *Id.* at 7–8. According to Plaintiffs, the at-issue discovery cannot be obtained through other means, and "existing and available protective measures" can be taken to protect non-party privacy interests. *Id.* at 9. They also argue that allowing Uber to unilaterally determine what documents are considered "case-specific" or "plaintiff-specific" will lead to future discovery disputes and a waste of judicial resources. *Id.* Finally, Plaintiffs disagree as to the risk of "mini-litigations" in part because "production here [of the case-specific documents] is not a relitigation of the merits of those claims." *Id.* at 12.

### D.       February 22, 2024 Hearing

At the hearing, the Court asked Uber to clarify what it meant by "case-specific documents" and "plaintiff-specific documents." According to Uber, its search and review process as to all prior sexual assault litigations is still ongoing, but it anticipates that these materials may include, *inter alia*, independent drivers' driver licenses, non-party plaintiffs' log in history as to the Uber app, ride trip receipts, vehicle registration and inspection paperwork, and communications from non-party plaintiffs related to their allegations. Plaintiffs directed the Court's attention to their Brief in Support of Proposed Defendant Fact Sheet (filed under seal), which attached examples of

1    the kinds of material that Uber had produced in prior sexual assault litigations, including, for

2    example, logs listing communications sent and received between Uber and the driver, as well as

3    communications among Uber staff about the sexual assault complaints.  *See* ECF No. 234.

4           The Court also asked for additional details as to how many prior cases are at issue, as well

5    as corresponding date ranges and potential terabytes of data to be produced.  Uber again indicated

6    that it is still in the process of compiling and reviewing documents, and was unable to give a

7    definitive answer, but counsel for Uber believes that there are over 75 cases, two of which are

8    arbitrations, and the rest are lawsuits.  Counsel for Uber was unable to give the Court a date range

9    for the prior litigations but indicated that they may go back to at least as early as 2016.

10          **E.     Subsequent Filings**

11          On February 26, 2024, in connection with Uber's submission of examples of confidential

12   settlement agreements and protective orders pertaining to prior litigations, Uber submitted four

13   pages of additional legal argument in a supplementary brief for the Court's consideration.  ECF

14   No. 293-3.[2]   Uber notifies the Court in this brief that the number of prior cases it has identified as

15   falling within the purview of PTO No. 5 is now at 86.  *Id.* at 4.  Uber also submitted a letter to the

16   undersigned from Yolanda Edrington, CEO of Respect Together, an organization that advocates

17   on behalf of survivors of all forms of sexual violence, dated February 26, 2024, as well as two

18   letters from January 2020 to the California Public Utilities Commission, also from advocacy

19   groups representing the interests of survivors of sexual assault or misconduct.  *Id.* at 51–59.

20          Uber again reiterates its argument that the non-party plaintiffs' privacy concerns prohibit

21   production of the case-specific and plaintiff-specific documents sought by Plaintiffs.  *Id.* at 4.

22   Uber also argues that the settlement agreements and protective orders it submitted include

23

---

24   [2] Uber's supplementary brief was filed without prior Court approval in contravention of L.R. 7-
     3(d).  However, because the additional legal argument concerns materials requested by the Court,
25   and touches on key issues with respect to non-party plaintiffs' privacy concerns, the Court will not
     strike the filing from the record.  But Uber did improperly file completely under seal the
26   supplementary brief along with other, non-confidential materials not originally requested by the
     Court as part of its Administrative Motion to File Under Seal.  ECF No. 293.  The Court denied
27   the motion without prejudice as overbroad and instructed Uber to file a renewed motion to seal.
     ECF No. 305.  Because the public versions of the supplementary brief and non-confidential
28   materials are not yet filed, this Order will hereinafter cite to the versions filed under seal, with the
     expectation that Uber will comply with the Court's order to file a renewed motion to seal.

United States District Court
Northern District of California

language specifically prohibiting disclosure of confidential information from the lawsuits, and that some of them do not provide for disclosure even when made pursuant to a court order. *Id.* at 5. Uber's contention is that production of documents from the prior litigations would be inconsistent with Rule 26(c)(1)(A)'s protection against discovery that would annoy, embarrass, oppress, or harass a party or non-party, especially because Plaintiffs do not have an "actual need" for the discovery they seek. *Id.* at 5–6.

On February 27, 2024, Plaintiffs filed a Response to Defendants' Argument in Connection with Filing of Settlement Agreements and Protective Orders. ECF No. 298-3.[3]  Plaintiffs contend that Uber's argument as to what the underlying protective orders do or do not allow in terms of disclosure conflates what *Uber produced* with *all documents produced* in the underlying litigations. *Id.* at 3.  Plaintiffs argue that protective orders in general do not shield Uber from discovery obligations with respect to its own documents. *Id.*  They again reiterate that there are protective measures available to the parties—including redacting personal identifying information and designating documents as "Highly Confidential – Attorneys' Eyes Only"—which will serve to protect the privacy concerns as to all non-party plaintiffs. *Id.* at 4.  Plaintiffs also claim that the confidentiality terms in the one settlement agreement submitted by Uber are clearly aimed at protecting Uber, not the non-party plaintiffs. *Id.*  Finally, Plaintiffs challenge Ms. Edrington's letter as "inapt" and based on a mistaken understanding as to what Plaintiffs are seeking to obtain (they do not want Uber to produce any of non-party plaintiffs' personal information) and what the Court's role is in deciding the present motion. *Id.* at 4–5.

## II.    LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows parties to obtain "discovery

---

[3] As with Uber's supplementary brief, Plaintiffs' Response was filed in contravention of L.R. 7-3(d).  However, the Court will not strike the filing for the same reasons detailed above.  Plaintiffs filed their Response concurrently with an Administrative Motion to Consider Whether Another Party's Material Should be Sealed.  ECF No. 298.  The Court denied that motion without prejudice as overbroad and directed Plaintiffs to file a renewed motion to seal by March 1, 2024.  ECF No. 305.  On March 1, 2024, Plaintiffs filed a Response to the Court's order indicating that they are unable to file a renewed motion and instead directing the Court to Uber's "forthcoming response to the Court's" order on Uber's sealing motion.  ECF No. 312.  The Court will defer further action on this matter until Uber files its renewed motion to seal.  However, for purposes of this Order, the Court will hereinafter cite to the version of the Response still under seal.

United States District Court
Northern District of California

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The right to discovery, even plainly relevant discovery, is not limitless. Rule 26(b)(2)(C) requires the Court to limit the frequency or extent of discovery where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." It is "[t]he [C]ourt's responsibility, using all the information provided by the parties, [ ] to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26(b), Advisory Committee Notes (2015 Amendment).

"The party seeking discovery has the initial burden of establishing that its request satisfies Rule 26(b)(1)'s relevancy requirement." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16CV00236WHODMR, 2019 WL 311622, at *3 (N.D. Cal. Jan. 24, 2019). "The test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . . [a] fact [that] is of consequence in determining the action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liabl. Litig.*, 2017 WL 4680242, at *1 (N.D. Ca. Oct 18, 2017) (quoting Fed. R. Evid. 401). On the other hand, the party opposing discovery "has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting [his] objections with competent evidence." *Sayta v. Martin*, No. 16-CV-03775-LB, 2019 WL 666722, at *1 (N.D. Cal. Feb. 19, 2019) (quoting *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012)).

## III.    DISCUSSION

Before turning to the parties' substantive arguments, the Court addresses Plaintiffs' contention that Judge Breyer's PTO No. 5 forecloses Uber's request for relief. The same order

1    plainly authorizes the parties to raise discovery disputes with the undersigned.  ECF No. 175 at 6.

2    Accordingly, the undersigned has considered Uber's present objections and will limit the

3    application of PTO No. 5 to the extent warranted under Rule 26.

4         **A.    Relevance**

5         Plaintiffs have sufficiently demonstrated, for purposes of Rule 26(b)(1) discovery, the

6    relevance of certain case-specific and plaintiff-specific documents that Uber produced in prior

7    sexual assault lawsuits.  Uber's emphasis on the highly individualized nature and unique factual

8    circumstances of each sexual assault incident misapprehends what constitutes relevant information

9    in this MDL.  Based on Plaintiffs' allegations in the Master Complaint, the key factual issues are

10   what Uber knew about the risk of passenger sexual assaults, when Uber learned about those risks,

11   and what Uber did or did not do in response to the information it had.  *See, e.g.*, ECF No. 269

12   (Master Compl.) ¶¶ 1–35, 124–34, 240–316.  When the particular facts and circumstances of each

13   prior litigation are "viewed cumulatively, they could shed [] light on potential patterns, risk

14   factors, areas for improvement, and/or effective methods of prevention," all of which are relevant

15   to Plaintiffs' "notice" and "knowledge" theories of liability.  *Anders v. United Airlines Inc.*, No.

16   CV 19-5809-GW (KS), 2020 WL 8575132, at *4, 7 (C.D. Cal. Dec. 18, 2020).  In *Anders*, the

17   court ordered United Airlines (United) to produce discovery as to customer complaints of inflight

18   sexual assaults and batteries on domestic flights during the relevant time period in part because the

19   documents could potentially show whether United "had, or should have had, knowledge from

20   which it may reasonably have apprehended that an assault on a passenger might occur," as well as

21   "the ability in the exercise of the requisite degree of care to prevent the injury."  *Id.*  *Anders* is on

22   point here as to Plaintiffs' ability to obtain discovery from Uber regarding prior sexual assault

23   lawsuits, to show that Uber had knowledge as to the risk of such assaults to passengers using the

24   Uber app.

25        Rule 26(b)(1) specifically contemplates that information which is "not directly pertinent to

26   the incident in suit" could still be relevant and discoverable, such as "other incidents of the same

27   type."  Fed. R. Civ. P. 26 Committee Notes to the 2000 and 2015 Amendments.  Each prior

28   incident of sexual assault or misconduct can serve as a data point for Plaintiffs to begin analyzing

United States District Court
Northern District of California

recurring trends, for example, on how many occasions was Uber accused of failing to adequately screen drivers or failing to respond to and investigate an individual complaint. The information will allow Plaintiffs, as they put it, "to discern the contours of common patterns and practices, and corresponding notice and knowledge, that form the foundation of their case against Uber." ECF No. 277 at 7.

At the hearing, counsel for Uber attempted to distinguish *Anders* as involving only one single individual plaintiff who sought evidence of prior incidents of assault and battery. In contrast, Uber highlights that this MDL has 229 member cases, the earliest of which is from 2014, and the most recent from 2023. Thus, Plaintiffs will be able to develop their "notice" and "knowledge" theories of liability based on discovery to be produced here—that is to say, Plaintiffs will have access to documents from 229 individual incidents of sexual assault or misconduct, which will allow Plaintiffs to identify patterns as to what Uber knew over the years about the risk of passenger sexual assault or misconduct, and how Uber responded. However, this argument is one about proportionality, and whether the discovery sought can be more easily obtained from other sources, which the Court will address in further detail below.

Uber has otherwise failed to rebut Plaintiffs' categorical assertion that prior sexual assault lawsuits are relevant. Given the period covered by Plaintiffs' claims, case-specific and plaintiff-specific documents from the prior 86 sexual assault lawsuits will shed light on facts of consequence. That said, at the hearing, Uber identified certain records produced in prior cases that do not bear on whether it had notice of a pattern of sexual assaults or certain risk factors. These records include non-party plaintiffs' log in history as to the Uber app, non-incident related trip receipts, and independent driver vehicle registration and inspection paperwork. Because Uber is only required to produce relevant records, PTO No. 5 is modified to allow Uber to omit the specific documents identified at the hearing: vehicle registration and inspection paperwork and non-incident related trip receipts and Uber app log in history.

## B. Other Grounds to Limit Discovery

### 1. Third Party Privacy Concerns

Uber argues that the privacy concerns of the non-party plaintiffs from the prior litigations

1   warrant a court order limiting Uber's production of case-specific and plaintiff-specific documents.

2   ECF No. 251 at 8–11.  But in its Motion to Modify PTO No. 5, Uber did not cite to any specific

3   privacy law, or any protective orders and confidentiality provisions from the settlement

4   agreements in the prior litigations, or any other document.  Instead, Uber asserts a generalized

5   concern regarding the privacy interests of survivors of sexual assault who have filed or lodged

6   complaints with Uber.  After the hearing, per the Court's order, Uber and Plaintiffs filed examples

7   of settlement agreements and protective orders pertaining to cases involving alleged sexual

8   assaults by drivers using the Uber application.  ECF Nos. 291, 292, 293.  Both parties also

9   submitted additional legal argument as to the confidential settlement agreements and protective

10  orders.  ECF Nos. 293-3, 298-3.

11          Having reviewed these subsequent filings, the Court finds that the sample settlement

12  agreements and protective orders do not prevent Uber from producing the case-specific and

13  plaintiff-specific documents which are relevant to this MDL.  The language in PTO No. 5 is clear

14  in that it only covers documents *produced by Uber* in other sexual assault litigations.  ECF No.

15  175 at 4.  As the Court is only requiring Uber to produce its own records, no protective order in

16  general would preclude that.  *See Adolph Coors Co. v. Am. Ins. Co.*, 164 F.R.D. 507, 514 (D.

17  Colo. 1993) ("[A] protective order is intended to operate as the producing party's shield against

18  the receiving party's misuse of protected information.  It is not intended to operate as a sword

19  which the producing party can thereafter wield in other litigation by urging that it has once

20  produced the requested documents under a protective order and that any later production or use of

21  the documents in the other litigation is therefore excused, precluded, or subject to the earlier

22  protective order.")  This is also true of the settlement agreements, which all focus on information

23  about the parties' *settlement terms*, not on documents produced in the underlying litigation, and

24  which in any event, contain provisions specifically permitting disclosure of confidential settlement

25  information pursuant to law or court order.

26          Uber also generally contends that discovery as to the case-specific and plaintiff-specific

27  documents would discourage reporting.  *See* ECF No. 251 at 11 ("Without assurances, survivors

28  may opt not to report instances of sexual assault for fear that taking action could lead to unwanted

United States District Court
Northern District of California

disclosure of their stories, even years after they thought their cases had been resolved.")  The wide range of reasons behind any individual survivor declining to report their sexual assault—such as likelihood that the individual will not be believed, that they will face retaliation, fear of revictimization—are broadly recognized.  *See* Cameron Kimble & Inimai M. Chettiar, *Sexual Assault Remains Dramatically Underreported*, Brennan Ctr. For Just. (Oct. 4, 2018), https://www.brennancenter.org/our-work/analysis-opinion/sexual-assault-remains-dramatically-underreported.  So too is the work being done by advocates across the country to implement a "survivor-centered approach" as to survivors' interactions with the courts and the justice system, which promotes putting the rights, needs, and wishes of the person who has experienced sexual assault first.  *See, e.g.*, Nat'l Sexual Violence Res. Ctr. Et al.*, Promoting Collaboration Between Victim Advocates and Sex Offender Management Professionals: A Resource Package*, at 4 (2016) https://www.nsvrc.org/sites/default/files/ovw-collaboration-v-2.pdf.

But what Uber fails to recognize is that this MDL has also been brought on behalf of individuals who are alleged survivors of sexual assault.  If the Court were to prevent production of the discovery Plaintiffs seek, then the hundreds of individuals in this MDL who did report their assaults and who seek accountability would be blocked from relevant and necessary evidence for their claims.  The reporting concerns expressed by Uber are therefore more complex than Uber acknowledges in its briefing.

Ultimately, the Court must balance these real-world issues and concerns with the broad scope of discovery allowed to parties engaged in civil litigation as contemplated by Rule 26(b)(1).  Uber believes that the potential for psychological and emotional harm to survivors means that no case-specific or plaintiff-specific documents should be produced without the non-party plaintiffs' knowledge and consent.  But it does not propose a mechanism for providing non-party plaintiffs with notice and an opportunity to consent.  Nor have Plaintiffs proposed any such process.  Given the direct relevance of the discovery at issue, the answer cannot be that Plaintiffs are completely blocked from reviewing discovery produced in prior Uber sexual assault cases and arbitrations.

On the other hand, there are several measures available to protect the very serious privacy concerns of the non-party plaintiffs and acknowledge the sensitivities which may arise for them as

10

to their case information.  The Protective Order in this case allows discovery materials to be designated "Confidential" or "Highly Confidential – Attorneys' Eyes Only," including any personal identifying information of a non-party, or any other non-party information not otherwise available to the public.  ECF No. 176 at 2–3.  The Court believes that designation by Uber of any case-specific and plaintiff-specific documents produced to Plaintiffs as "Highly Confidential – Attorneys' Eyes Only" is appropriate under these circumstances.  In addition, Plaintiffs agree that Uber shall redact personal information and any identifying information of the non-party plaintiffs, including names, contact information, birth date, social security numbers, and any other HIPAA-protected information.  ECF No. 277 at 9.  These measures appropriately balance the third-party privacy concerns that have been raised, alongside the MDL Plaintiffs' interests in evidence relevant to their claims.

## 2. Need

Uber argues that even if the case-specific and plaintiff-specific documents are considered relevant to Plaintiffs' theories of liability, discovery produced in prior litigations is not necessary. ECF No. 251 at 11–12.  Specifically, Uber argues that there are "numerous other avenues of discovery for exploring the alleged notice issue," including the publicly filed complaints from the prior lawsuits, documents that will be produced in the ordinary course of discovery in this MDL, such as interrogatories, requests for admission, depositions, etc., as well as data and statistics produced in Uber's U.S. Safety Reports.  *Id.*

First and foremost, "discovery and Rule 26 are intended to provide parties with 'efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery.'"  *Jensen v. BMW of North America, LLC*, 328 F.R.D. 557, 560 (quoting *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016)).  The burden of demonstrating that the relevant evidence Plaintiffs seek is unnecessary rests on Uber.  For that reason, Uber's cursory reference to publicly filed complaints does not persuade the Court that records bearing on notice produced by Uber in prior lawsuits are not needed in this MDL.  Nor do Uber's U.S. Safety Reports suffice as evidence of notice.  The sexual assault data in these reports are important but minimal.  The data are time limited and do not shed light on who within Uber was aware of what.

The Safety Reports do not render the discovery from prior lawsuits unnecessary.

Uber also contends that Plaintiffs should explore alleged notice through written discovery. However, Uber "does not get to dictate the methods by which [Plaintiffs] may obtain relevant discovery." *Thomasson v. GC Servs. Ltd. P'ship*, No. 05CV0940-LAB (CAB), 2006 WL 8451615, at *4 (S.D. Cal. Oct. 11, 2006). It would be inefficient to require Plaintiffs to serve interrogatories and other written discovery as a precondition or substitute for receiving the discovery already ordered in PTO No. 5. That order was intended to streamline and expedite discovery, as it identified categories of initial productions. ECF No. 175 at 3–4. Uber's position is contrary to Rule 26 and the clear intent of the order. Uber has not demonstrated that the alleged survivors in this MDL do not need relevant evidence produced in prior sexual assault litigations.

### 3.     Prejudice as to Uber and Delay

Uber contends that production of discovery from prior litigations could significantly prejudice it because the merits of the allegations as to each sexual assault incident were never tested or legally determined through a trial or hearing. ECF No. 251 at 12. As such, Uber may be forced to reopen and take discovery in some of these cases to defend itself as to accusations about what Uber, the independent drivers, or the non-party plaintiffs did or did not do. *Id.* Uber believes this type of discovery could lead to "mini-litigations" about incidents unrelated to the MDL cases. *Id.* But the merits of the allegations from the prior litigations are not at issue. What is relevant is what Uber knew in terms of each allegation of sexual assault at the time it was reported to Uber, and what it did in response. Uber is not required to relitigate the prior alleged incidents that were settled. Uber can take the position that the allegations were unsubstantiated and point to prior settlement agreements in which it disclaimed liability. On these grounds, Uber can argue that evidence of prior incidents of sexual assault needs to be weighed accordingly.

Finally, Uber claims that any focus on the previously resolved litigations that are, in its view, not relevant, will lead to unnecessary delay. ECF No. 251 at 12. But it is Uber's proposed approach which will increase the likelihood that the pace of discovery will slow. If the Court allows Uber to omit from production any case-specific or plaintiff-specific documents, Uber will have to consider particular records or categories of records to determine whether they are "non-

case specific" and "non-plaintiff specific" documents suitable for production.  Allowing Uber to unilaterally make that determination will more likely than not lead to challenges from Plaintiffs as to certain documents which may have been omitted.

## IV.  CONCLUSION

For the reasons given above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Uber's Motion to Modify PTO No. 5.  By March 8, 2024, Uber must fully comply with PTO No. 5, as modified by this Order.  Except for vehicle registration and inspection paperwork, and non-incident related trip receipts and Uber app log in history, Uber shall produce "all documents Defendants produced in any other Uber sexual assault cases, including arbitrations, and any other cases about the 'Safe Rides Fee,' including any associated privilege logs."  ECF No. 175 at 4.  When producing all documents, Uber shall redact any personal identifying information, including name, date of birth, social security number, and contact information (email address, mailing address, telephone number), as well as any other "HIPAA-protected information."  *Id.*  In addition, Uber shall designate all case-specific and plaintiff-specific documents it produces as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Protective Order in this MDL.  *See* ECF No. 176 at 3.

**IT IS SO ORDERED.**

Dated: March 1, 2024

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

13