RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUBMISSION OF SETTLEMENT AGREEMENTS AND PROTECTIVE ORDERS**<br><br>Judge:    Hon. Lisa J. Cisneros<br>Courtroom:    G – 15th Floor |

1

Per the Court's direction during the February 22, 2024, hearing and in the subsequent minute entry (ECF No. 283), Defendants Uber Technologies Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") submit examples of protective orders and a dispute-resolution agreement pertaining to resolved cases involving alleged sexual assault by drivers using the Uber application. *See* Exhibits A, B, C, and D. Uber has amended their February 22, 2024 filing in compliance with the Court's February 29, 2024 Order (ECF No. 305).

Uber is committed to user privacy principles, whether it is for the 86 rides associated with this request or for the billions of rides completed each year. *See* 2019-2020 US Safety Report at 37 *at* https://uber.app.box.com/s/vkx4zgwy6sxx2t2618520xt35rix022h?uclick_id=62fc0498-4441-4521-9197-1bb08c7f63ce (noting there were 1.4 billion Uber rides in 2019 in the United States alone). The Federal Rules underscore that Uber should not be ordered to provide confidential rider information that is subject to these agreements and protective orders that has no relevance to an element of a claim in this litigation. Maintaining confidentiality for survivors of sexual assault is paramount, extending beyond just their identities to include the details of their assault, as advocated by sexual assault support groups.[1] Revealing the underlying facts and circumstances of the assault, even with anonymized identities, risks re-traumatizing victims and may amplify their distress or humiliation. Protecting this confidentiality is crucial to prevent additional harm and ensure survivors feel safe reporting incidents.

Furthermore, specific to the cases at issue, the agreements and protective orders have varying confidentiality provisions that reflect the parties' efforts to protect the highly-sensitive plaintiff-specific materials from disclosure outside of the individual lawsuits. These provisions strictly prohibit

---

[1] Advocacy groups consistently seek to support survivors' rights and protect from disclosure survivors' personal information and information about their reported incidents. *See, e.g.,* Letter from Yolanda Edrington, Respect Together CEO, to Magistrate Judge Lisa Cisneros (Feb. 26, 2024), attached as Exhibit E; Letter from Sandra Henriquez, California Coalition Against Sexual Assault CEO, to President Marybel Batjer and the Commissioners of the California Public Utilities Commission (Jan. 17, 2020), attached as Exhibit F; Letter from the Karen Baker, Pennsylvania Coalition Against Rape and National Sexual Violence Resource Center CEO to the California Public Utilities Commission (Jan. 16, 2020), attached as Exhibit G; Letter from Deborah Vagins, National Network to End Domestic Violence CEO and President, to President Marybel Batjer and the Commissioners of the California Public Utilities Commission (Jan. 14, 2020), attached as Exhibit H.

1 disclosure of confidential information, even after the termination of the litigation, and some of the
2 agreements do not even provide for disclosure made pursuant to a court order in another case. *See,*
3 *e.g.*, April 20, 2021, Stipulation for Protective Order and Protective Order ("Confidential Information
4 shall not be used, shown, disseminated, copied, or in any way communicated, orally or verbally, to
5 anyone for any purpose whatsoever, other than as required for the preparation and trial of this action."),
6 attached as Exhibit A; December 20, 2019 Stipulated Protective Order ("Confidential Information
7 shall not be used, shown, disseminated, copied or in any way communicated, orally or verbally, to
8 anyone for any purpose whatsoever, other than as required for the preparation and trial of this action."),
9 attached as Exhibit B; April 17, 2017 Stipulation and Protective Order ("All Confidential Information
10 provided by a Party in response to a discovery request or transcribed testimony . . . shall be used only
11 for the purpose of this litigation and not for any business or other purpose whatsoever [and] shall not
12 be communicated or disclosed by any Party's counsel or a Party in any manner, either directly or
13 indirectly, to anyone except for purposes of this case . . . ."), attached as Exhibit C. And some of the
14 settlement agreements require Uber to provide notice to the Plaintiff before any required disclosure.
15 *See, e.g.*, June 23, 2021, Confidential Settlement Agreement and Release of All Claims ("▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮."), attached as Exhibit D. Nonconsensual disclosure of private information about
20 these individuals' reports of sexual assault—which these individuals were under the reasonable belief
21 would be protected from disclosure to yet another wave of lawyers and consultants as a result of their
22 contractual confidentiality agreements—would be inconsistent with the protections of the Federal
23 Rules against discovery that would serve to annoy, embarrass, oppress, or harass. FED. R. CIV. P.
24 26(c)(1)(A) (a court may forbid discovery "to protect a party or person from annoyance,
25 embarrassment, [or] oppression . . . ."); FED. R. CIV. P. 26(g)(1)(B)(ii) (discovery requests must not
26 be "interposed for any improper purpose, such as to harass").
27
28

1    Additionally, as previously noted, it is consistently believed by survivor advocates in this field, that there is an even greater need to protect nonparties' privacy in these particular circumstances since disclosure of such information would violate people who have already been victimized, which has a chilling effect on future victims reporting incidents, and discourages companies from accurately tracking and sharing information about sexual abuse.[2] Such disclosure would share painful details about the assault and other information (like time and place of the incident) that, even if the victims' names were withheld, could still identify and endanger survivors of sexual assault. For survivors of sexual violence, privacy and confidentiality of their personal information is more than an expectation, it is a critical matter of personal safety and security. Requiring a disclosure of the personal details of victims sexual assault, who are generally the "witnesses" reporting the incident, would have a chilling effect on survivors who may opt not to report instances of sexual assault for fear that their stories will be shared without their consent.

    Violating these nonparties' privacy and confidentiality concerns memorialized in their agreements and protective orders would be especially inappropriate and unnecessary here because Plaintiffs do not have an "actual need" for the plaintiff-specific materials.[3] The Federal Rules prohibit discovery that is disproportionate to the needs of the case, considering, among other things, "the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(1); *see also* FED. R. CIV. P. 26(g)(1)(B)(iii) (discovery requests must not be "unreasonable . . . considering the needs of the case . . ."). In his 2015 year-end report, Chief Justice John Roberts explained that amended Rule 26(b)(1) limits discovery to what parties actually need to prove their case: "Specifically, the pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, but eliminate

---

[2] *See, e.g.*, Letter from Yolanda Edrington, Respect Together CEO, to Magistrate Judge Lisa Cisneros (Feb. 26, 2024) (Ex. E); Letter from Sandra Henriquez, California Coalition Against Sexual Assault CEO, to President Marybel Batjer and the Commissioners of the California Public Utilities Commission (Jan. 17, 2020) (Ex. F); Letter from the Karen Baker, Pennsylvania Coalition Against Rape and National Sexual Violence Resource Center CEO to the California Public Utilities Commission (Jan. 16, 2020) (Ex. G); Letter from Deborah Vagins, National Network to End Domestic Violence CEO and President, to President Marybel Batjer and the Commissioners of the California Public Utilities Commission (Jan. 14, 2020) (Ex. H).

[3] Especially in light of the lack of need, Plaintiffs should adhere to the feedback from the advocacy space to provide survivors with the agency of choice regarding disclosure.

- 4 -

DEFENDANTS' SUBMISSION OF SETTLEMENT
AGREEMENTS AND PROTECTIVE ORDERS                  Case No. 3:23-md-3084-CRB

1  unnecessary or wasteful discovery. The key here is careful and realistic assessment of actual need."
2  *See* 2015 Year-End Report on the Federal Judiciary (Dec. 31, 2015) *at*
3  https://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf. The reasons Plaintiffs
4  outlined for wanting these documents, notice and pattern or practice, are served by information already
5  available in the public record, including date of ride, date of resolution, etc. Therefore, not only would
6  the production of the highly-sensitive plaintiff-specific materials be unnecessary, it would also be
7  duplicative. *See* FED. R. CIV. P. 26(b)(2)(C) (a party also may not obtain discovery that "is
8  unreasonably cumulative or duplicative, or can be obtained from some other source that is more
9  convenient . . . ."). Plaintiffs will also have the opportunity to obtain discovery relating to notice and
10 pattern or practice from Uber's document productions, discovery responses, and depositions.

11 For these reasons, and those stated within its Motion to Modify Pretrial Order No. 5 (ECF No.
12 251), Uber respectfully requests that the Court modify PTO No. 5 such that Uber need not produce
13 plaintiff- and case-specific documents from other lawsuits.

15 DATED: March 1, 2024

**SHOOK, HARDY & BACON LLP**

By: */s/ Michael B. Shortnacy*
      MICHAEL B. SHORTNACY

MICHAEL B. SHORTNACY (SBN: 277035)
   mshortnacy@shb.com
**SHOOK, HARDY & BACON LLP**
2049 Century Park East, Ste. 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (*Admitted Pro Hac Vice*)
   oot@shb.com
**SHOOK, HARDY & BACON LLP**
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC