# EXHIBIT F



1215 K Street, Suite 1850
Sacramento, CA 95814
916.446.2520
CALCASA.org

January 17, 2020

President Marybel Batjer and Commissioners
California Public Utilities Commission
505 Van Ness Avenue
San Francisco, CA 94102

Dear President Batjer and the Commissioners of the California Public Utilities Commission,

I write to you on behalf of the California Coalition Against Sexual Assault (CALCASA), the statewide coalition representing the needs of sexual assault survivors and the 84 rape crisis center programs in California, and a national advocacy organization dedicated to ending sexual violence wherever it may occur. We are sharing our concerns about Section 2.4 of the Administrative Law Judge's Ruling Ordering Uber Technologies, Inc. to File and Serve Its U.S. Safety Report for 2017-2018 and to Answer Questions Regarding Alleged Sexual Assault And Sexual Misconduct Incidents issued by Judge Robert M. Mason III on December 19, 2019 (the "Safety Report Ruling"). Along with several of our national partners in sexual violence prevention, we respectfully request that the Safety Report Ruling be modified to remove or rescind Section 2.4 of the ruling, so as not to require undue disclosure of victim information or information about sexual assaults.

Section 2.4 and its subparts of the Safety Report Ruling would require, for each incident of sexual assault and sexual misconduct that occurred in California in 2017, 2018, and 2019, that Uber:
- State the date, time, and place of each incident;
- Give a detailed description of the circumstances of each incident;
- Identify (i.e., provide the person's full name and contact information) each witness to each incident; and
- Identify (i.e., provide the person's full name, job title, contact information, and job responsibilities) each person to whom each incident was reported.

Section 2.4 would require a sweeping disclosure of the personal details of victims of sexual assault, who are generally the "witnesses" reporting the incidents, including their personally identifying information. It would share painful details about the assault, and other information (like time and place of the incident) that, even if the victims' names were withheld, could still identify and endanger survivors of sexual assault.

The release of information under Section 2.4 could jeopardize the safety and well-being of survivors who have already suffered. For survivors of sexual violence, privacy and confidentiality of their personal information is more than just an expectation; it is a critical matter of personal safety and security. If a survivor is known to have reported a sexual assault, the victim could be subjected to public humiliation, retaliation, rejection by family and friends, and most alarmingly, threats of further violence and harassment by the perpetrator. Survivors of sexual assault have a right to expect that their private information will not be used in any way they did not consent to, and that any communications or information regarding their sexual assault will be kept confidential unless they themselves choose to go public. Unfortunately, Section 2.4 proposes to undercut victim privacy and place victims in danger.

In the 1970's, nearly every U.S. jurisdiction adopted some form of Rape shield statute, which include laws that prohibit publication of the identity of alleged rape victims. These laws were adopted throughout the nation as well as in various countries, out of a recognition that sexual assault survivors are entitled to protections which include

the right to privacy. Section 2.4 is a direct violation of the hard-earned privacy rights to which survivors are entitled. Disclosing personal information without their consent further traumatizes individuals who have already had their control and bodily autonomy wrenched away from them. Survivors may feel even more violated when their personally identifying information and details about assaults are made publicly available, or even shared beyond whomever first took their reports. Only they can choose to tell their stories or give informed consent for details to be shared. The experiences of survivors are theirs alone, and they should be in control over their privacy and who knows their stories. Rideshare providers, transportation companies, and government regulators like CPUC have a responsibility to safeguard the privacy of victims of sexual assault, stalking, and domestic violence to the greatest extent possible. Taking away the control of victims' stories will cause further harm to the individuals the CPUC seeks to protect.

Furthermore, releasing information under Section 2.4 would have a devastating effect on future sexual assault reports. Many victims will be unwilling to report to Uber or any other company if they fear their identities or details of their stories could be disclosed to the public. If survivors are afraid to make reports, Uber cannot remove perpetrators from their platform and cannot take steps to protect their customers and drivers. This would likely allow perpetrators to continue to harm others, and will leave survivors in the dark. We already know victims avoid reporting to law enforcement or campus officials, mainly due to privacy concerns, and that mandatory reporting policies can have a chilling effect. Even the perception of lack of privacy can prevent victims from reaching out for help, and as a result, it is clear to us that survivors themselves should retain control of whether and to whom to report. If their information is now revealed to CPUC and, by extension, the public, this will cause other victims to think twice about making reports. The risk that victims would no longer feel safe reporting assaults to Uber is significant, and if Section 2.4 is enforced, the chilling effect on reporting incidents of sexual assault will compromise, rather than promote public safety.

CALCASA is committed to building policies and procedures that support survivors and developing systems in which we are able to prevent sexual assault from occurring in the first place. We need companies such as Uber to share statistical information about sexual violence in order to develop procedures that will keep people safe. The Safety Report issued by Uber on December 5 was a good first step. While well intended, the CPUC request for information under Section 2.4 inadvertently jeopardizes,, rather than promotes public safety. CALCASA is interested in working with CPUC to develop systems that will promote our shared desire to prevent sexual violence.

Thank you for considering these comments. We encourage CPUC's careful attention to the unique concerns of survivors of sexual violence as it considers Section 2.4 of the Safety Report Ruling. Rideshare users and drivers will be in greater danger if victim information is shared without their consent. If you have any further questions, please contact our Senior Policy Associate, John L. Finley at jfinley@calcasa.org.


Sincerely,

Sandra Henriquez
Chief Executive Officer
California Coalition Against Sexual Assault

1215 K Street, Suite 1850
Sacramento, CA 95814

Voice (916) 446-2520
FAX (916) 446-8166

info@calcasa.org

calcasa.org