`[Submitting Counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:23-md-03084-CRB |
|---|---|
| | **PLAINTIFFS' RESPONSE TO DEFENDANTS' ARGUMENT IN CONNECTION WITH FILING OF SETTLEMENT AGREEMENTS AND PROTECTIVE ORDERS** |
| This Document Relates to:<br><br>All Cases | Judge: Honorable Lisa J. Cisneros<br>Courtroom: G-15th Floor |

**I.     INTRODUCTION**

This Court granted the parties permission to "file examples of settlement agreements and protective orders pertaining to cases involving alleged sexual assaults by drivers using the Uber application." ECF 283. Uber made those filings, accompanied by a four-page sur-reply of unauthorized argument. ECF 293-3. Plaintiffs respectfully submit this brief response.

**II.    ARGUMENT**

Uber continues to miss the point. There is no dispute that sexual assault survivors have privacy concerns and interests in protecting their identity and the details of their sexual assaults. And, Plaintiffs have agreed with Uber, since the outset of this discussion, that survivors' identifying information need not be produced. But the federal rules expressly contemplate full and fair discovery, with those interests protected by protective orders and appropriate redactions. *See, e.g., Doe v. Berkeley Unified School Dist.,* No. 20-cv-8842, 2021 WL 1866197 (N.D. Cal. May 10, 2021); *Anders v. United Airlines,* No. 19-cv-5809, 2020 WL 8575132 (C.D. Cal. Dec. 18, 2020); *Kawamura v. Boyd Gambling Corp.*, No. 13-cv-203, 2014 WL 3953179 (D. Nev. Aug. 13, 2014); *Racine v. PHW Las Vegas LLC*, No. 10-cv-1651, 2012 WL 6089182 (D. Nev. Dec. 5, 2012); *Bearchild v. Cobban*, No. 14-cv-12, 2015 WL 13924068 (D. Mont. Sept. 3, 2015). These same cases also make clear that this discovery is not duplicative, as it is often the primary evidence available. As laid out in Plaintiffs' opposition briefing, the relevance of the discovery, coupled with the procedural mechanisms available to adequately address privacy concerns, show that Uber's motion should be denied.

Make no mistake about what is at issue here. Uber's position is not limited to PTO No. 5; rather, Defendants advocate that Plaintiffs should *never* be able to discover the scope of Uber's sexual assault epidemic, the extent to which Uber's actions contributed to those assaults, or how Uber responded (or did not respond) to those assaults. Instead, Uber's position is that Plaintiffs are entitled to discovery only regarding the details of their own assaults and nothing more. *See* 2/22/24 Hr'g Tr. at 12:4-24 (proposing that discovery be limited to "drivers at issue in this MDL"). As explained in Plaintiffs' briefing, the allegations in Plaintiffs' Master Complaint and the cases applying Rule 26 foreclose that line of argument: information about other assaults is

relevant and discoverable because it goes to notice, to the implementation of Uber's purported policies to prevent sexual assault, to the veracity of Uber's commitment to provide a "safe ride", and to Uber's overall course of conduct.[1]

Nothing Uber has now filed changes the relevance of this discovery or the stringent mechanisms in place to protect sensitive information. Start with the protective orders. Uber's argument that these orders preclude discovery here makes no sense. Importantly, PTO No. 5 extends to only documents *produced by Uber* in other sexual assault litigations. *See* ECF 175 at 4. This scope is important because, in order to support its expansive reading of underlying protective orders, Uber conflates what *it produced* (i.e. those documents for which it was the designating party)*,* with *all documents produced* in underlying litigation. *See* ECF 293-3 at 1 (erroneously arguing the underlying protective orders implicate *all* plaintiff-specific materials). This is incorrect. In issuing PTO No. 5, Judge Breyer was concerned with streamlining initial discovery and intentionally limited the initial scope of case documents to only those that were *produced by Uber*. Protective orders in general—including every example filed by Uber—do not shield Defendants from discovery obligations with respect to *their own documents*. *See Anderson v. Domino's Pizza, Inc*., No. 11-CV-902, 2012 WL 1076261, at *3 (W.D. Wash. Mar. 30, 2012) (noting "[t]he *Spillman* protective order obviously does not, however, protect Domino's own materials from discovery in this case; it prevents Domino's from producing any material from RPM or Ms. Spillman."); *Cox v. Sherman Capital LLC*, No. 12–CV–1654, 2016 WL 7971711, at *2 (S.D. Ind. May 24, 2016) (holding that "Petty cannot use the Protective Order as a sword "because it does not prohibit the designating party from producing its own documents" or confidential material"); *Adolph Coors Co. v. Am. Ins. Co.*, 164 F.R.D. 507, 514 (D. Colo. 1993) ("[A] protective order is intended to operate as the producing party's shield *against the receiving party's misuse of protected information.* It is not intended to operate as a sword which the producing party can thereafter wield in other litigation by urging that it has once produced the

---

[1] Uber now suggests that requests for documents concerning other sexual assaults are made for an "improper purpose, such as to harass." ECF 293-3 at 2. This bald assertion of misconduct has no basis and should be disregarded. Plaintiffs' request for documents produced in other cases (a request that was granted by Judge Breyer) is based on the clear relevance of those types of documents to this litigation.

requested documents under a protective order and that any later production or use of the documents in the other litigation is therefore excused, precluded, or subject to the earlier protective order") (emphasis added). Just so here: None of the examples produced by Uber contain any provision that would preclude *the designating party from using or producing its own materials in other litigation*. ECF 293-3, Exs. A - C.

These protective orders only serve to underscore that such orders were adequate to protect sensitive information in the case in which they were entered, even though they only have a single level of designation: "CONFIDENTIAL." It follows that the protective order *in this case*—which specifically envisioned the need to protective *private* information and allows for the heightened designation of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"—likewise offers adequate protection for the at-issue discovery. *See* ECF 176 at 1, 3.

Next, Uber submitted one settlement agreement. ECF 293-3, Ex. D. But the confidentiality terms in this agreement are clearly aimed at protecting *Uber*, not the plaintiff. The agreement reflects Uber's successful negotiation to keep confidential *the terms of the settlement* and prohibits only *the plaintiff* from "█████████████████████████████████████████████████████████████████████████████████" *Id.* at ¶ 6(a). And, in any event, the agreement, as is typical, ████████████████████████████ ████████. *Id.* at ¶ 2(a)(iii).

Finally, absent any evidence that any actual prior plaintiff would object to the implementation of PTO 5, Uber submits a letter from the CEO of Respect Together, Yolanda Edrington. ECF 293-3, Ex. E. Ms. Edrington's letter is inapt since it is premised on the misunderstanding that Plaintiffs' proposal would "requir[e] Uber to share the personal information of sexual assault victims." To the contrary, Plaintiffs' proposal specifically accounts for the protection of personal identifying information. The remainder of the letter, including the concern that the Court's order would "discourage other companies from accurately tracking and taking reports of sexual abuse," stems from the same mistaken understanding and should thus be disregarded, especially given the absence of any consideration of either the countervailing interests Plaintiffs have in proving their case and the availability of other measures that courts

routinely find adequate to protect privacy interests in this context. The letter also is premised on the erroneous assumption that the Court's role in deciding this motion is to adopt a "specific strategy" "to mitigate[e] incidents of sexual assault in transportation and other industries."

## III. CONCLUSION

For these reasons, and those previously submitted to the Court, Plaintiffs respectfully request that the Court deny Uber's Motion to Modify PTO No. 5.

Dated: February 27, 2024

Respectfully submitted,

By: */s/ Sarah R. London*
  Sarah R. London (SBN 267083)

  **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
  275 Battery Street, 29th Floor
  San Francisco, CA 94111-3339
  Telephone: (415) 956-1000
  Facsimile: (415) 956-1008
  slondon@lchb.com

By: */s/ Rachel B. Abrams*
  Rachel B. Abrams (SBN 209316)

  **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
  555 Montgomery Street, Suite 820
  San Francisco, CA 94111
  Telephone: (415) 426-5641
  Facsimile: (415) 840-9435
  rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
  Roopal P. Luhana

  **CHAFFIN LUHANA LLP**
  600 Third Avenue, 12th Floor
  New York, NY 10016
  Telephone: (888) 480-1123
  Facsimile: (888) 499-1123
  luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*