

Michael B. Shortnacy

March 8, 2024

2049 Century Park East, Suite 3000
Los Angeles, CA 90067
t 424.285.8330
mshortnacy@shb.com

*Via ECF*
The Hon. Lisa J. Cisneros
United States District Judge
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
Courtroom G – 15th Floor

Re:   *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, Case No. 3:23-md0384-CRB

Judge Cisneros:

Pursuant to this Court's March 1 Order (ECF 327), Uber filed the 2014 letter from the San Francisco and Los Angeles district attorneys (the "DAs") relating to their inquiry into certain of Uber's then marketing practices. ECF 333. Uber explains below why the DA inquiry is not "within the purview of PTO No. 5 or otherwise discoverable." ECF 327 at 2.

Initially, Uber notes that the March 1 Order addresses relief Plaintiffs did not request in their Motion to Enforce. Plaintiffs asked only for Uber to "produce all documents produced in" "all government investigations or inquiries of Uber within the United States with respect to sexual assault, including attempted assaults." ECF 259, at 3. Though outside of PTO 5, in the spirit of cooperation, Uber is producing 19 document requests, containing 186 pages from the DA inquiry. Uber also lodges the DA's 2014 Complaint. Uber reserves all rights to object to any discovery request as not relevant and exceeding the scope of discovery in the MDL and any individual case.

The DA inquiry related to claimed regulatory violations resulting from Uber's alleged failure "to submit Uber's mobile app for approval," "[o]perating at California airports," and "[c]alculating 'UberPool' fares" in an unlawful manner. Ex. A, at 1. That inquiry and the MDL only share *one* aspect relating to alleged misrepresentations "that Uber [affiliated] drivers pass an 'industry leading' background check." *Id.* But the 2014 Complaint alleged the failure of background checks to identify individuals with a "significant criminal history," Ex. B ¶ 31, and cites no sexual assault or misconduct. It also alleged claims sounding in fraud relating to Uber's $1.00 "Safe Ride Fee." Ex. B, at 27. The DA inquiry did not target sexual assault or misconduct allegations. The parties resolved the DA inquiry in 2016 with a permanent injunction that expired April 7, 2020. The DA inquiry only related to California activities and alleged violations of California "unlawful business practices."

As the DA's letter, 2014 Complaint, and document requests illustrate, the DA inquiry is clearly not contemplated by PTO 5 because that inquiry was not, as Plaintiffs sought in their Motion to Enforce, an "inquir[y] of Uber within the United States with respect to sexual assault, including attempted assaults." ECF 259, at 3. PTO 5 §6C required Uber to produce "all documents Defendants produced in any other Uber sexual assault cases," and to be clear, that "includ[es] arbitrations, and any other cases about the 'Safe Rides Fee,' including any associated privilege



March 8, 2024
Page 2

logs." ECF No. 175, at 4.  PTO 5 treats "any other cases about the 'Safe Rides Fee'" as a subset of sexual assault cases, just like arbitrations.  PTO 5 requires producing privilege logs in each subset—not only for "Safe Ride Fee" cases.  Section 6C follows Section 6B, which asks for governmental inquiries "with respect to sexual assault, including attempted assaults."  ECF 175, at 3-4.  Alleged misrepresentations about background checks and what the Safe Rides Fee covered (the DA inquiry) is clearly not a "sexual assault case."

This is the only reasonable interpretation of PTO 5 §6C.  It makes little sense to include within PTO 5 all "Safe Ride Fee" cases as a separate category of cases because Plaintiffs' case alleges failures to protect passengers from the dangers of sexual assault.  *See* Master Compl. ¶ 373, ECF No. 269. The Master Complaint references "sexual assault" 113 times.  Plaintiffs specifically allege a danger related to "sexual violence," *id.* ¶ 134, not everything related to safety, such as impaired drivers.  PTO 5, like any judicial pronouncement, should be read in the context of the case.  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979).  PTO 5 reflects that the Court wanted all sexual misconduct cases produced, even if they contained fraud claims related to the "Safe Ride Fee" representation related to sexual misconduct.  As the DA inquiry is not about sexual assault or misconduct it is definitively not within PTO 5's purview and wholly irrelevant to this action.

Uber also disagrees that the DA inquiry is "otherwise discoverable" because "Safe Ride Fee" representations are barred by res judicata or the statute of limitations.  In 2017, Uber settled a class action in *McKnight v. Uber Technologies* that included all riders who were charged a Safe Ride Fee from January 1, 2013 to January 31, 2016.  Am. Settlement Stip., No. 4:14-cv-05615-JST, ECF No. 125, at 6 (N.D. Cal. June 1, 2017).  The class asserted that Uber had made misrepresentations and omissions about its "Safe Ride Fee," safety measures, and the nature of its background checks.  *Id.* at 1.  Uber agreed to not describe or label any fee as the "Safe Ride Fee," and stop using the term "industry leading" in advertising.  *Id.* at 19.  **Uber stopped charging users a "Safe rides fee" in February, 2016** and all safe rides claims were released in the settlements described above.  **Plaintiffs agreed to release all claims related to the action**, and "Released Claims" include any claim "related to Defendants' representations or omissions regarding background checks, safety, or the Safe Ride Fees."  *Id.* at 12.

Plaintiffs' fraud allegations are precluded by the Released Claims.  They allege that "[i]n 2014, Uber started charging passengers an extra $1 fee for each trip" called a "Safe Rides Fee" to support an "industry-leading background check process."  Master Compl. ¶ 203, ECF No. 269.  It alleges that "Uber knew this marketing was false," *id.* ¶ 208, and even acknowledges the "fraud settlements," *id.* ¶ 211.  Plaintiffs claim that Uber never disclosed the "limitations of its background checks," *id.* ¶ 216, that "Uber's goal was to provide a 'safe ride,'" *Id.* ¶ 369, and that "every passenger rel[ied] on its safety marketing," *id.* at 379.

The *McKnight* classwide release precludes these fraud claims in the MDL.  Any *McKnight* class members reasserting their Released Claims are barred by res judicata.  *See Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 577 (2010).  The limitations period for fraud actions is generally three years after the discovery of any fraud.  *See* Cal. Civ. Proc. Code § 338.  As no "Safe Rides Fee" were charged after 2016, any such claims expired in 2019.  These untimely or barred fraud claims are irrelevant in this case, and Uber will move to have those claims dismissed.

March 8, 2024
Page 3



Respectfully submitted,

By: */s/ Michael B. Shortnacy*

Michael B. Shortnacy
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
mshortnacy@shb.com

*Counsel for Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*