**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
t  415.956.1000
f  415.956.1008

March 11, 2024

Sarah R. London
Partner
slondon@lchb.com

**VIA ECF**

Hon. Lisa J. Cisneros
United States District Court
RE:   *In Re: Uber Technologies, Inc., Passenger Sexual Assault Litig.* (MDL 3084)

Dear Judge Cisneros:

The joint investigation by the San Francisco and Los Angeles District Attorneys is within the purview of PTO 5 and otherwise discoverable.

**1.    The SF/LA DA investigation plainly relates to sexual assault.**

Uber's March 8 letter attaches the DAs' December 9, 2014 Complaint, but wholly ignores the DAs' Amended Complaint, filed on August 8, 2015. *See* Ex. A (SF/LA DA Am. Compl.). While the 28-page Complaint does include general allegations about Uber's inadequate safety measures, the 62-page Amended Complaint is rife with allegations specifically connecting those practices to sexual assault of passengers. *See, e.g.,* Ex. A ¶¶ 18, 27, 28, 32, 64 (noting Uber's representations that drivers are screened for prior sexual offenses); ¶¶ 22-23 (discussing Uber's "Safety By Design" campaign launched in response to reports of Uber drivers raping passengers, which messaged that Uber's screening was "robust enough to prevent the possibility that the customer will get into an Uber car driven by a sex offender"); ¶¶ 60-73 (Section titled "Uber's Background Check Process Cannot Uncover Many Categories of Sex Offenders); ¶¶ 76, 77 (detailing examples of specific Uber drivers who passed Uber's background check process despite felony convictions for sexual offenses against minors). The final introductory paragraph of both Complaints explains: "Through this civil enforcement action, Plaintiff seeks to address Uber's flagrant and unlawful business practices, including its practice of: (1) making untrue or misleading representations regarding the measures it takes to ensure customer safety in order to induce people to get into a stranger's car ...." *Id.* ¶ 12: ECF No. 337-2 at ¶ 12.

The connection to sexual assault of Uber passengers is not limited to the face of the DA's Amended Complaint. The DAs' September 2014 letter notes that before filing suit, the DAs had "conducted a joint investigation" into Uber's practices, including as to representations that Uber drivers pass an "industry leading" background check. ECF No. 333-1 at 2. And the Amended Complaint says: "Systemic failures in Uber's background check process came to light through the discovery process in this enforcement action, including the fact that in Los Angeles alone, registered sex offenders [and other criminals] had passed Uber's 'industry leading' background check." Ex. A ¶ 26. Similarly, the DAs made clear that the lawsuit's focus was the veracity of Uber's statements about passenger safety—not, as Uber now selectively highlights, fraudulent airport fees and UberPool fares.[1] The DAs' RFPs point to the same

---

[1] *See, e.g.*, https://labusinessjournal.com/technology/uber-sued-la-and-san-francisco-district-attorneys/ ("'Uber continues to misrepresent and exaggerate background checks on drivers', Los Angeles District Atty. Jackie Lacey said."); https://www.sfgate.com/business/article/SF-LA-sue-Uber-saying-it-misled-consumers-Lyft-5946353.php ("'Uber refused to comply with straightforward California laws to protect consumers from harm,' San Francisco District Attorney George Gascon said.").

Hon. Lisa J. Cisneros
March 11, 2024
Page 2

conclusion. *See, e.g.,* Ex. B (UBER-MDL3084-000053408) at ¶ 64 (seeking documents ▇▇▇▇▇▇▇▇▇▇▇▇▇▇).

## 2.  The SF/LA DA investigation is within the scope of PTO 5 § 6(B).

PTO 5 § 6 (B) encompasses "all documents Defendants produced to legislative, regulatory, or enforcement entities in connection with government investigations or inquiries of Uber with respect to sexual assault. . . . The disclosures should encompass [investigations and inquiries] pertaining to alleged systemic failures to address patterns of sexual assault against passengers." ECF No. 175 at 3-4.

Uber has made various contentions about the nature of the SF/LA DA investigation in an attempt to place it outside the purview of PTO 5: that it "relate[d] principally to economic damages relating to marketing practices", 2/29/24 Hearing Tr. at 7:7-13, and that it asserted claims "regarding Uber's representations to customers, Uber's calculations of fares, Uber's operations at California airports, and fees charged to customers." ECF No. 266-2 at 2-3 (2/8/24 Ltr.). Uber at one point suggested that the matter may be "tangentially related to [] alleged sexual assault," but was not sufficiently relevant to warrant production. 2/29/24 Hearing Tr. at 19:3-8.

As the Court explained, even if an investigation addressed other issues, like the propriety of certain fees, "that doesn't eliminate the fact that the investigation did have, as a component, some inquiry, some question, some investigation related to sexual assault of [] passengers using the Uber app. So, it is still going to be within pretrial order number five, paragraph six." 2/29/24 Hearing Tr. at 17:21-18:12. Simply put, "there should be a production to the extent that the investigation covered . . . any systematic factors that created a risk of sexual assault of passengers." *Id.* The DAs' investigation covered exactly that. *See* Ex. A ¶ 73 ("[T]his enforcement action [revealed] that Uber's background check process has systemic deficiencies that prevent Uber from identifying a large number of sex offenders.").

The Court should disregard Uber's creative arguments about how PTO 5 § 6(C)—the "other cases" provision—modifies the meaning of PTO 5 § 6(B). The scope of the governmental investigations provision is clear on its face and easily encompasses the DA investigation.

## 3.  The Court should disregard Uber's res judicata arguments.

Uber says that the DA investigation does not fall within the purview of PTO 5 because claims related to its "Safe Ride Fee" are barred by res judicata. There is no justification to modify a discovery order on the basis of an affirmative defense that has never been even litigated, let alone found meritorious. The defense is also not meritorious. The *McKnight* settlement excluded claims for personal injury, such as those alleged in this litigation. Ex. C (settlement agreement) at ¶ 95 ("Plaintiffs and Class Members are not releasing any claims for personal injuries."). The parties relied on this limitation in their approval papers. *See* Ex. D (final approval motion) at 62 ("Claims for personal injury are excluded."). And, in any event, a class settlement can preclude only those claims "based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse v. Spring Corp.*, 598 F.3d 581, 590-91 (9th Cir. 2010). *McKnight* asserted only economic-loss consumer fraud claims, and did not allege any personal injuries. Ex. E (complaint).[2]

***

The SF/LA DA investigation falls within the purview of PTO 5. The Court should order Uber to

---

[2] The fact that *McKnight* is not identical for the purposes of res judicata does not render it irrelevant—the case clearly falls within PTO 5 § 6(C).

Hon. Lisa J. Cisneros
March 11, 2024
Page 3

produce all materials produced to the DAs[3] within seven (7) days, and certify compliance.

Very truly yours,

Sarah R. London
*Liaison and Co-Lead Counsel for Plaintiffs*

2956897.3

---

[3] This includes materials produced to the DAs under the parties' stipulated judgment. *See* Ex. F (6/29/17 Declaration of W. Stern) at 3.