# EXHIBIT D

Robert Ahdoot (SBN 172098)
*rahdoot@ahdootwolfson.com*
Tina Wolfson (SBN 174806)
*twolfson@ahdootwolfson.com*
Theodore W. Maya (SBN 223242)
*tmaya@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
(310) 474-9111; (310) 474-8585 (Fax)

Mike Arias (SBN 115385)
*mike@asstlawyers.com*
Alfredo Torrijos (SBN 222458)
alfredo@asstlawyers.com
ARIAS, SANGUINETTI, WANG &
TORRIJOS, LLP
6701 Center Drive West, Suite 1400
Los Angeles, California 90045-7504
(310) 844-9696; (310) 861-0168 (Fax)

*Class Counsel*

*(Additional Counsel listed on signature page)*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BYRON MCKNIGHT, JULIAN MENA, TODD SCHREIBER, NATE COOLIDGE, and ERNESTO MEJIA, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., a Delaware Corporation, RASIER, LLC, a Delaware Limited Liability Company,<br><br>  Defendants. | Case No.: 3:14-cv-05615-JST<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon, Jon S. Tigar, Presiding<br>Date:  February 8, 2018<br>Time:  2:00 P.M.<br><br>Location: Courtroom 9, 19th Floor,<br>       450 Golden Gate Avenue,<br>       San Francisco, CA 94102<br><br>[Filed concurrently with Plaintiffs' Response to Settlement Objections; Declarations of Tina Wolfson and Cameron Azari] |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 8, 2018 at 2:00 p.m., in Courtroom 9 of the above-captioned Court before the Honorable Jon S. Tigar, Plaintiffs/Settlement Class Representatives Julian Mena, Todd Schreiber, Nate Coolidge, Ernesto Mejia, and Byron McKnight (collectively, "Plaintiffs" or "Settlement Class Representatives") will and hereby do move for an Order Granting Final Approval of Class Action Settlement, pursuant to the Amended Stipulation of Settlement filed on June 1, 2017. (Dkt. 125, Amended Stipulation of Settlement.)  Specifically, Plaintiffs seek an Order:

1.      Approving the proposed Settlement as fair, reasonable, and adequate to Plaintiffs and the Class Members, and directing the Settlement's consummation according to its terms;

2.      Reaffirming certification of the Settlement Class for settlement purposes;

3.      Finding that the form and manner of class notice implemented pursuant to the Settlement: (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice reasonably calculated, under the circumstances, to apprise class members of the pendency of the litigation, the terms of the proposed Settlement, the right to object to the proposed Settlement or exclude themselves from the Class, and the right to appear at the Final Fairness Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of state and federal due process, the Federal Rules of Civil Procedure, and any other applicable state and/or federal laws;

4.      Finding that all Class Members shall be bound by the Settlement as it relates to the class in which each is a member, including the release provisions and covenant not to sue;

5.      Directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation and ruling that no costs or fees be assessed on either party other than as expressly provided in the Settlement;

6.      Incorporating the release and related provisions set forth in the Settlement and barring any Released Claims against the Uber Released Parties;

7.      Overruling all objections;

8.      Approving payment of the benefits to the class members consistent with the Settlement; and

1  9.   Retaining jurisdiction of all matters relating to the interpretation, administration,

2  implementation, and enforcement of the Settlement.

3

4       As discussed in the accompanying memorandum, approval of the Settlement and the related

5  relief requested herein is appropriate under applicable law and is well justified under the circumstances

6  of this matter.  This motion is based upon this Notice of Motion and Motion; the accompanying

7  Memorandum of Points and Authorities; the accompanying Declarations of Tina Wolfson and

8  Cameron Azari; the Amended Stipulation of Settlement, including all exhibits thereto, and all papers

9  filed in support thereof; the argument of counsel; all papers and records on file in this matter; and such

10  other matters as the Court may consider.

11

12

13                        **AHDOOT & WOLFSON, PC**

14

15  Dated:  January 25, 2018          By:  _/s/ Robert Ahdoot_____
                                      Robert Ahdoot (State Bar No. 172098)
16                                    Tina Wolfson (State Bar No. 174806)
                                      Theodore W. Maya (State Bar No. 223242)
17                                    10728 Lindbrook Drive
                                      Los Angeles, California 90024
18                                    Tel:  (310) 474-9111

19

20

21

22

23

24

25

26

27

28

1

2
**ARIAS, SANGUINETTI, WANG
&TORRIJOS, LLP**

3

Dated:  January 25, 2018
By:  _/s/ Mike Arias_____

4
Mike Arias (State Bar No.  115385)
Alfredo Torrijos (State Bar No.  222458)

5
6701 Center Drive West, Suite 1400
Los Angeles, California 90045-7504

6
Tel: (310) 844-9696

7

8
**LIDDLE & DUBIN, P.C.**

9
By: _/s/ Nicholas A. Coulson_
Nicholas A. Coulson (_Pro Hac Vice_)

10
975 E. Jefferson Avenue
Detroit, MI 48201

11
Tel: (313) 392-0015

12
**BARBAT, MANSOUR & SUCIU**

13

14
By: _/s/ Nick Suciu III_
434 West Alexandrine, #101

15
Detroit, MI 48201
Tel: (313) 303-3472

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT– CASE NO. 3:14-cv-05615-JST

1

## **TABLE OF CONTENTS**

2    I.    INTRODUCTION ............................................................................................................ 1

3    II.    BACKGROUND ............................................................................................................... 2

4         A.  Factual and Procedural History .......................................................................... 2

5         B.  The Parties Engaged in Extensive Settlement Negotiations................................ 3

6         C.  Preliminary Approval of Amended Settlement and Implementation of the Notice Program ... 4

7         D.  Plaintiffs' Counsel Engaged in Extensive Investigation and Discovery .................................. 4

8    III.   THE SETTLEMENT .......................................................................................................... 5

9         A.  The Settlement Class .......................................................................................... 5

10        B.  The Settlement Confers Substantial Benefits to Class Members ............................................ 6

11             1.  Defendants Will Pay $32.5 Million in Monetary Relief ........................................ 6

12             2.  Defendants Will Change Their Practices ........................................................ 6

13        C.  Opt-Outs & Objections ....................................................................................... 7

14        D.  Payment of Attorneys' Fees, Costs and Expenses, and Service Awards ............................... 7

15        E.  Payment of Administrative Costs ....................................................................... 8

16        F.  Release ................................................................................................................ 8

17    IV.   NOTICE WAS SUCCESFULLY DISSEMINATED PURSUANT TO THE COURT-

18         APPROVED NOTICE PROGRAM .................................................................................. 8

19        A.  Class Members Received Direct Notice ............................................................. 8

20        B.  Class Members Received Notice from Internet Advertising, the Settlement Website, a Toll-

21             Free Number, and Publication Notice ................................................................ 8

22    V.    THE RESPONSE FROM THE CLASS IS OVERWHELMINGLY POSITIVE ........................... 9

23    VI.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT .................... 9

24        A.  The Class Action Settlement Approval Process ................................................. 9

25        B.  Final Approval of the Settlement is Appropriate ............................................. 10

26             1.  The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely

27                 Duration of Further Litigation Weigh in Favor of Settlement .......................... 10

28                 a.  Plaintiffs Would Have to Overcome Defendants' Motion to Compel Arbitration...... 11

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT– CASE NO. 3:14-CV-05615-JST

     b.   Plaintiffs Would Have to Overcome Defendants' Challenges to Issues of Liability, Damages, and Certification if the Litigation Continues to Trial ................................ 12

  2.  Plaintiffs Face the Challenge of Maintaining Class Action Status Leading up to and Through Trial ..................................................................................................................... 13

  3.  The Benefits Conferred by the Settlement are Substantial ................................................. 13

     a.   The Settlement's Consideration is Significant Compared to the Maximum Potential Recovery Available ............................................................................. 13

     b.   The Settlement's Injunctive Relief is Substantial Consideration ............................... 14

  4.  Class Counsel Performed Sufficient Discovery, Research and Analysis to Adequately Assess the Settlement and the Strengths and Weaknesses of the Class' Claims ............... 14

  5.  The Recommendations of Experienced Class Counsel Favor Approval ........................... 15

  6.  No Presence of a Government Participant ......................................................................... 16

  7.  The Class Response Favors Final Approval ...................................................................... 16

  8.  Lack of Collusion Between the Parties .............................................................................. 17

VII.  CONTINUED CLASS ACTION TREATMENT IS APPROPRIATE ........................................ 18

  A.  This Action Satisfies the Requirements of Rule 23(a) ............................................................ 18

    1.  The Class is Sufficiently Numerous ................................................................................. 18

    2.  There Are Common Questions of Both Law and Fact ...................................................... 18

    3.  The Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims ............................................................................................................................... 19

    4.  The Settlement Class Representatives and Settlement Class Counsel Fairly and Adequately Protect the Interests of the Settlement Class .................................................. 20

  B.  The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied ................. 20

    1.  Common Issues of Law and Fact Predominate ................................................................ 20

    2.  Class Treatment Is Superior in This Case ........................................................................ 21

VIII. CONCLUSION ..................................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013).............................. 20

*Boyd v. Bechtel Corp.*, 485 F. Supp 610 (N.D. Cal. 1979) .................................................. 15

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ........................................ 18

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .......................... 10, 16

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ................................. 10, 17

*Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017) .................................... 12

*Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541 (2017) .................................................... 12

*Cullinane v. Uber Techs., Inc.*, No. CV 14-14750-DPW, 2016 WL 3751652 (D. Mass. July 11, 2016) ......................................................................................................................... 12

*Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ......................................................................................................................... 14

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ............................... 19

*Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).. 10, 11, 16, 17

*Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007).... 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................... 10, 19, 20, 21

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .............................................. 19

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ......................... 17

*In re Ferrero Litig.*, 583 F. App'x 665 (9th Cir. 2014) ....................................................... 14

*In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122 (N.D. Cal. 2015) ........................... 14

*In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................... 17

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ........................................ 14

*In re Netflix Privacy Litig.*, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ......................... 10

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................... 12, 14

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450 (D.N.J. 1997) ...................... 22

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .................................................. 10

*In re TracFone Unlimited Serv. Plan Litig.*, No. C-13-3440 EMC, 2015 WL 4051882 (N.D. Cal. July 2, 2015) ................................................................................................................ 14

*Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457 (N.D. Cal. 1983).. 19

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................ 15

*Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ... 14

*Linney v. Cellular Alaska P'ship*, 1997 WL 450064 (N.D. Cal. July 18, 1997) .................................... 16

*Metter v. Uber Techs., Inc.*, No. 16-CV-06652-RS (N.D. Cal. Apr. 17, 2017) ...................................... 12

*Metter v. Uber Techs., Inc.*, No. 17-16027 (9th Cir. May 18, 2017) ...................................................... 12

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) ....................................................................... 12

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ........................... 16

*Negrete v. Allianz Life Ins. Co. of N. Am.,* 238 F.R.D. 482 (C.D. Cal. 2006) ...................................... 22

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016) ............................................... 11

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ................................................................................................................ 10, 11

*Palmer v. Stassinos*, 233 F.R.D. 546 (N.D. Cal. 2006) ........................................................................ 18

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .................................................................................... 19

*Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255 (N.D. Cal. 2016) ................... 15

*Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ... 17

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) ........................................................................ 21

*Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) ...... 18

*Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ........... 17

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ............................................................................. 19

*Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI-JLT (E.D. Cal. July 21, 2015) ....................... 17

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) .................................................................... 18

*Spalding v. City of Oakland*, No. C11-2867 TEH, 2012 WL 994644 (N.D. Cal. Mar. 23, 2012) ......... 18

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................................................. 10

*Stockwell v. City & County of San Francisco*, 749 F.3d 1107 (9th Cir. 2014) .................................... 18

*Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115 (3d Cir. 1990) ................................................................. 17

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ................................................... 19

*Wren v. RGIS Inventory Specialists*, No. C-06-05778-JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ..................................................................................................................... 16

**Statutes**

28 U.S.C. § 1715 ........................................................................................................................... 16

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................................... 18, 19, 20

Fed. R. Civ. P. 23(b) .............................................................................................................. 20, 21

**Treatises**

4 Newberg on Class Actions, § 11:22 .......................................................................................... 9

4 Newberg on Class Actions, § 11:41 ........................................................................................ 17

4 Newberg on Class Actions, § 11:50 ........................................................................................ 11

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1778 (2d ed. 1986) ....................................................................................................................... 21

Manual for Complex Litigation (Fourth) §§ 21.63 *et seq.* (Fed. Jud. Center 2004) ................. 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Court preliminarily approved the proposed Settlement and the Settlement's proposed notice program on August 7, 2017.  (Order Granting Motion for Preliminary Approval of Amended Class Action Settlement ("Prelim. App. Order."), Dkt. 136.)  Notice was successfully disseminated to Settlement Class Members ("Class Members") who had an overwhelmingly positive reaction to the Settlement.  By this motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement, and approve the Settlement as fair, reasonable, and adequate.

The Settlement is the product of extensive arms-length negotiations between the parties and their experienced and informed counsel, and is fair, reasonable, and adequate given the claims and relief sought, the alleged harm, and the parties' respective litigation risks.

Pursuant to the Settlement, Defendants will establish a non-reversionary cash Settlement Fund in the amount of $32.5 million.  The 82,375 Class Members who submitted Payment Election Forms will receive their Settlement Share in accordance with their indicated choice (*i.e.* Paypal, eCheck *etc.*).  The Settlement Share of the remainder of the Class will be Paid to their Uber account for their next Uber ride or service and, if not used within a year, Uber will pay the unused portion to the payment source linked to such Class Members' Uber account.  (Dkt. 125, Amended Stipulation of Settlement ("Am. Stip.") ¶ 68.)  The Settlement also provides injunctive relief to Class Members, including a requirement that Defendants stop use of the term "Safe Rides Fee" as well as by other provisions regarding safety and background checks in their Commercial Advertising.

The Settlement provided for a robust, multi-pronged notice program, and user-friendly process payment election process, which now have been implemented by the Settlement Administrator.

The reaction from Settlement Class Members is resoundingly positive — the deadline for Settlement Class Members to opt-out or to object was January 8, 2018, and out of an estimated total class size of 22.4 million, only 38 persons opted out and 7 submitted objections.  82,375 Class Members affirmatively chose their method of payment.  For the foregoing reasons and the others detailed below, the Settlement meets the standards for final settlement approval and should be approved.

## II.   BACKGROUND

### A.   <u>Factual and Procedural History</u>

*The Original Complaints*.  In December 2014, Plaintiffs Philliben[1] and McKnight filed a class action, No. 3:14-cv-05615 ("*McKnight*"), alleging, *inter alia*, misrepresentations and omissions regarding Defendants' "Safe Rides Fee," safety measures, alleged expenditures, and driver background checks.  (*McKnight*, Dkt. 1.)  Days later, in January 2015, Andrea Pappey filed a class action, No. 3:15-cv-00064 ("*Mena*"), with similar allegations.[2]  In February 2015, Plaintiffs filed a joint stipulation to relate *Mena* and *McKnight* that the Court granted.  (*McKnight*, Dkt. 23; *Mena*, Dkt. 19.)  Defendants filed an Administrative Motion to Determine Whether Cases Should Be Related seeking to relate *Mena* and *McKnight* to the *L.A. Taxi* action.  (*McKnight*, Dkt. 34-35.)  The Court granted Defendants' Administrative Motion in May 2015.  (*McKnight*, Dkt. 36.)

*The Arbitration Motions*.  In early 2015, Defendants filed a Joint Motion to Stay Proceedings Pending Arbitration in *McKnight*, and a short time later Defendants filed a similar motion in *Mena*.  (*McKnight* Dkt. 25-29, 38-40; *Mena* Dkt. 31-36, 39-41.)  Plaintiffs briefed the responses to Defendants' motions to stay (*McKnight*, Dkt. 37; *Mena*, Dkt. 37-38, 42, 45, 46), and Plaintiff McKnight filed a Statement of Recent Decision with respect to Defendants' motion (*McKnight*, Dkt. 47.)  The *Mena* plaintiffs filed an Objection to and Motion To Strike Reply Evidence Re Defendant's Motion To Stay Proceedings Pending Arbitration, or in the Alternative, Request for a Surreply (*Mena*, Dkt. 42), and the Court granted the *Mena* plaintiffs leave to file a Surreply.  The Court continued the hearing on Defendant's Motion to Stay in June 2015, and the *Mena* plaintiffs filed a Surreply In Opposition To Defendant's Motion To Stay Proceedings Pending Arbitration. (*Mena*, Dkt. 45.)  The *Mena* plaintiffs also filed a Statement of Recent Decision In Support of Plaintiffs' Opposition To Defendant's Motion To Stay Proceedings Pending Arbitration. (*Mena*, Dkt. 46.)

*The CAC*. On January 7, 2016, Plaintiffs filed a Consolidated Amended Complaint ("CAC")

---

[1]   In May 2017, Counsel for Byron McKnight filed a Stipulation of Partial Dismissal of Matthew Philliben dismissing all claims related to Matthew Philliben without prejudice.  This matter is now referred to as *McKnight, et al. v. Uber Technologies, Inc., et al.*  (*McKnight*, Dkt. 122.)

[2]   Plaintiff Pappey later amended this complaint to join Plaintiffs Mena, Schreiber, Coolidge, and Mejia as class representatives, while Andrea Pappey withdrew.

2

1  asserting claims seeking damages for breach of implied contract and violations of the CLRA, UCL,

2  FAL, and ICFA.  (*McKnight* Dkt. 67.)  The CAC alleged, *inter alia*, that Uber charged a Safe Rides Fee

3  without properly disclosing it prior to the ride (CAC ¶¶ 41, 54-58, 61, 64); that Uber made a number of

4  misrepresentations and/or omissions regarding its safety efforts, expenditures, and background checks.

5  (*Id.* ¶¶ 25, 26-27, 29-40, 65); and that Uber did not use the Safe Rides Fee to pay for effective efforts to

6  provide safe rides.  (*Id.* ¶¶ 79, 89.)

7  　　　　　　　**B.**　　**The Parties Engaged in Extensive Settlement Negotiations**

8  　　　　　After the arbitration motions were briefed, the parties began a series of arms-length settlement

9  negotiations, including three full days of mediation with the Honorable Carl West (Ret.) of JAMS, and

10  numerous face-to-face and telephonic meetings between counsel.  (Decl. of Robert R. Ahdoot in

11  Support of Motion for Attorneys' Fees and Expenses ("Ahdoot Fee Decl."), Dkt. 149, ¶¶ 15-19.)  The

12  parties reached an initial settlement (the "2016 Settlement"), which the Court declined to preliminarily

13  approve without prejudice.  (*McKnight* Dkt. 98 (the "Denial Order").)  After the Denial Order, the

14  parties again engaged in extensive settlement negotiations, including three more in-person mediation

15  sessions with Robert J. Kaplan of Judicate West, as well as a settlement conference with the Chief

16  Magistrate Judge Joseph C. Spero.  (*Id.* ¶ 27.)  After several months of additional, extensive, mediated

17  negotiations to address the issues raised by the Court, the parties reached the Amended Settlement.

18  　　　　　When the Court initially issued its Denial Order, it identified several questionable issues.  The

19  first issue the Court raised in its Denial Order was that the original settlement covered riders who had

20  not paid a Safe Rides Fee.  (Dkt. 98, Denial Order at 7.)  Accordingly, the Amended Settlement

21  encompassed a class consisting only of riders who paid a Safe Rides Fee.  The second issue raised by

22  the Court was that the settlement did not take into account the number of rides per rider.  (*Id.* at 7-9.)

23  In the Amended Settlement, damages took into account the number of Safe Rides Fee rides a rider

24  took, with each rider receiving approximately 25 cents for his or her first ride, and 5 cents for each ride

25  thereafter.  This allocation method was vetted with Chief Magistrate Judge Spero and reflected, among

26  other things: (i) an attempt to make recovery for each and every class member feasible in light of

27  administrative costs; and (ii) the relative strength of claims based on the first ride versus claims based

28  on subsequent rides (by which time the Safe Rides Fee would have been disclosed via a receipt for the

3

1  first ride).

2      The final issue the Court raised was that Plaintiffs had not shown that the $28.5 million

3  settlement amount fell within the range of possible approval.  (*Id.* at 9:23-14:11.)  In the Amended

4  Settlement, the fund was increased to $32.5 million.  In addition, Class Counsel negotiated to reduce

5  the maximum cap on the costs of notice and administration, from $800,000.  (Dkt. 74-9, Stipulation of

6  Settlement, Ex. I ¶ 37) to $487,000 (Dkt. 125-9, Am. Stip. Ex. I ¶ 37.)

7      Perhaps most importantly, as the Court noted in the Order Granting Motion for Preliminary

8  Approval of Amended Class Action Settlement (Dkt. 136, Prelim. App. Order), in moving for approval

9  of the Amended Stipulation of Settlement, "Plaintiffs provide[d] a more tailored estimate of Uber's

10  safety expenses."  (*Id.* at 7.)  This allowed the Court to conclude that Plaintiffs' proposed maximum

11  potential recovery, after discounting for certain safety-related costs, represented an appropriate

12  benchmark against which to compare the Settlement, as opposed to Uber's total Safe Rides Fee

13  revenue.  The Court further concluded that the Settlement represents a reasonable portion of this

14  maximum potential recovery at trial and, when "[w]eighed against the risks of litigation, . . . falls

15  within the range of possible approval."  (*Id.* at 8; *see also* Dkt. 136-1 at 8 (unredacted Preliminary

16  Approval Order); Dkt. 126-5 at 21 (explaining calculations in unredacted Motion for Preliminary

17  Approval).)

18     **C.**    **Preliminary Approval of Amended Settlement and Implementation of the Notice**
19         **Program**

20      Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement on June 1, 2017

21  ("Mtn. for Prelim. App."), Dkt. 127), and on August 7, 2017, the Court issued its Preliminary

22  Approval Order, which preliminarily approved the Settlement, provisionally certified the Class, and

23  stayed all proceedings pending the outcome of the Fairness Hearing.  (Dkt. 136, Prelim. App. Order.)

24  Following the entry of the Preliminary Approval Order, Class Counsel worked closely with the

25  Settlement Administrator to ensure correct implementation of the notice program and payment

26  election process.  (Declaration of Tina Wolfson, concurrently filed ("Wolfson Decl.") ¶4.)

27     **D.**    **Plaintiffs' Counsel Engaged in Extensive Investigation and Discovery**

28      Before initiating these Actions, Class Counsel researched, *inter alia*, Defendants'

representations, marketing, business practices and promotional efforts, interviewed riders and drivers, and investigated facts and applicable law and standards relating to background checks and commercial transportation service safety.  (Dkt 149, Ahdoot Fee Decl. ¶ 6.)  Furthermore, Plaintiffs researched and analyzed the merits of the potential causes of action and defenses.  (*Id.* ¶¶ 6, 31.)  Plaintiffs continued these efforts after filing the Actions and before entering into the 2016 Settlement and the Settlement. (*Id.* ¶ 7.)

Plaintiffs submitted comprehensive requests for information regarding their allegations and Defendants' anticipated defenses, and Defendants provided thousands of pages of responsive documents and sworn responses.  Plaintiffs thoroughly analyzed and evaluated all information provided, including documents bearing on Defendants' background checks, alleged safety expenditures, the Safe Rides Fee and resulting revenues, and Defendants' representations, advertising, and marketing regarding safety.  (*Id.* ¶ 31.)  Plaintiffs' investigation also included a detailed inspection and testing of Defendants' ride share App across various operating system platforms; consultations with experts; interviews of witnesses, drivers, and putative class members; the evaluation of documents and information related to other litigation against Defendants; as well as extensive factual and legal research regarding arbitration, the sufficiency of the claims, and the appropriateness of class certification.  (*Id.* ¶¶ 32, 35.)

## III.    THE SETTLEMENT

### A.    The Settlement Class

In the Preliminary Approval Order, the Court certified the following class for settlement purposes:

All persons who, from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories. "Uber Ride Services With A Safe Rides Fee" means all transportation services that were arranged through Defendants' website or the Uber App where a Safe Rides Fee was paid (such as UberX, *etc.*). "Uber App" means the Uber smartphone application by which riders may request Uber Rideshare Services. "Uber Rideshare Services" means all transportation services that are arranged through Defendants' website or the Uber App, regardless of type of ride or service that is requested. "Uber" means the companies, incorporated in the State of Delaware as Uber Technologies, Inc. and Rasier, LLC, who operate the ride share service commonly known as Uber. Excluded from the Class are (a) all persons who are employees, directors, and officers of Uber Technologies, Inc. and Rasier, LLC; and (b) the Court and Court staff.

5

"Employees" means any person whose Uber account email address ended with "@uber.com" as of May 8, 2017.

"Employees" means any person whose Uber account email address ended with "@uber.com" as of May 8, 2017.

(Dkt. 136, Prelim. App. Order ¶ VI.2.; Dkt. 125, Am. Stip. at p. 8 ¶ 6.)

### B.   The Settlement Confers Substantial Benefits to Class Members

#### 1.   Defendants Will Pay $32.5 Million in Monetary Relief

Under the terms of the Settlement, Defendants agree to pay $32.5 million in cash to create a Settlement Fund that will be used for payments to Class Members, less the costs of notice and settlement administration, any Court-approved Service Awards, and Court-approved Attorneys' Fees and Expenses, with no reversion to Defendants.  (Dkt. 125, Am. Stip. ¶¶ 52, 55.)

Class Counsel estimate that the Settlement Fund presents an average settlement share of approximately $1.07 per Class Member based on a Class size of approximately 22 million Members. (Dkt. 127, Mtn. for Prelim. App. at 6-7.)  This share is significant in relation to the average initial Safe Rides Fee of $1.14 charged by Defendants.  The Settlement Fund represents a significant proportion of the maximum possible recovery through continued litigation and trial.  (*Id.* at 20-21.)   And distribution of the cash benefits through the Uber application platform confers an additional $1.69 million-worth of benefits to the Class.  (Dkt. 125-9, Am. Stip. Ex. I ¶ 38.)  Class Members were given the opportunity to elect their form of payment, including through their Uber Rider Account, PayPal, or electronic check. 82,375 submitted a Payment Election Form made such an election.  (Declaration of Cameron Azari, filed concurrently herewith ("Azari Decl.") ¶ 40.)  Class Members who made no election will automatically have their share of the Settlement Fund paid to their Uber Rider Account. If those funds have not been used within one year, Defendants will attempt to pay the funds back to the Class Members' payment source (*e.g.* credit card).  (*See generally* Dkt. 125, Am. Stip. ¶¶ 55-79.)

#### 2.   Defendants Will Change Their Practices

In addition to monetary relief for Class Members, Defendants agreed to undertake significant measures including, but not limited to, making changes to how Uber describes its background check process, and its agreement to refrain from using statements such as "safest ride on the road," "industry-leading," and certain other statements that Plaintiffs challenge in the CAC in any Commercial Advertising.  (Dkt. 125, Am. Stip. ¶ 54(d)-(e).)  Defendants also agree not to charge any fee entitled "Safe Rides Fee." (*Id.* ¶ 54(a).)  The Settlement thus addresses substantially all of the objectionable

conduct alleged in the CAC, despite Defendants' denial of liability.

### C.     Opt-Outs & Objections

All potential Class Members were provided an opportunity to opt out by doing so on or before January 8, 2018.  (Dkt. 136, Prelim. App. Order, at 15.)  Valid requests required information described in the Notice.  (Dkt. 125, Am. Stip. ¶ 121 & Ex. E.)  Class Members also were informed that they could object to the Amended Settlement, and informed about Class Counsel's fee application and the requests for Service Awards.  (Dkt. 125-5, Am. Stip. ¶ 19.)  To be considered, a written, personally-signed objection had to either be mailed to the Clerk or filed with the Court, and had to include the information prescribed by the Notice.  (Dkt. 125, Am. Stip. ¶ 119 & Exs. D-E.)  The deadline to object also fell on January 8, 2018.  38 Class Members submitted valid requests for exclusion from the Class[3] (Azari Decl. ¶ 39) and only seven objections were filed (Dkts. 150-58.)

Virtually all of the objectors are serial objectors, are represented by serial objectors, or are suspected of covertly working with serial objectors who have lost, dismissed, abandoned, or withdrawn numerous objections and appeals, instead of allowing the courts to determine the merits of their objections.  The pack of serial objectors here is made up of attorneys who (i) have been disbarred or suspended from the practice of law (Gordon Morgan in Texas, Patrick Sweeney in Wisconsin and Florida), (ii) are convicted felons (Patrick Sweeney), (iii) are facing state bar proceedings (Tim Hanigan, Patrick Sweeney), (iv) have been sanctioned by courts for unethical conduct (Tim Hanigan, Michael Creamer), and/or (v) have been criticized by courts for unethical and vexatious behavior (Patrick Sweeney, Tim Hanigan, Gordon Morgan, Christopher Bandas, John Pentz).  (*See* Plaintiffs' Response to Settlement Objections, Sec. II.)

### D.     Payment of Attorneys' Fees, Costs and Expenses, and Service Awards

Class Counsel filed an application for an award of reasonable attorneys' fees and costs on December 7, 2017.  (Plaintiffs' Motion For Attorneys' Fees And Expenses And For Class Representative Service Awards ("Fee Motion"), Dkt. 140.)  Class Counsel requested attorneys' fees in the amount of $8.125 million, plus reimbursement of $39,312.83 in litigation costs.  Class Counsel's

---

[3]      As of January 23, 2018, the Settlement Administrator "received a total of 40 requests for exclusion from the Class. Of these, 38 were deemed complete and timely."  (Azari Decl. ¶ 39.)

fee application also requested service awards of $500 for each of the Representative Plaintiffs.  (*Id.*)

### E.      Payment of Administrative Costs

To date, $173,653.16 of Settlement administration expenses have been invoiced and will be deducted from the Settlement Fund (as stated above, administration costs are capped at $487,000). (Azari Decl., ¶ 45; Dkt. 125, Am. Stip. Ex. I ¶ 37.)

### F.      Release

If the Court grants final approval of the Settlement, Class Members will be deemed to have released Defendants of all claims, known or unknown, that were asserted or could have been asserted in the litigation.  (*Id.* ¶¶ 30-33.)  The Released Claims are tied to "the allegations in the Action." (*Id.* ¶ 31.)  Claims for personal injury are excluded.  (*Id.*)

## IV.     NOTICE WAS SUCCESFULLY DISSEMINATED PURSUANT TO THE COURT-APPROVED NOTICE PROGRAM

### A.      Class Members Received Direct Notice

Class Members received the Summary Notice (*Id.* Ex. G) directly at the email addresses associated with their Uber Rider Accounts.  (*Id.* ¶ 85(d)(i), Ex. I ¶¶ 17-19.)  Notices were mailed to 22,173,842 Class Members (after removal of duplicates and review of the data, with an over 90% success rate).  (Azari Decl. ¶¶ 13-17.)

### B.      Class Members Received Notice from Internet Advertising, the Settlement Website, a Toll-Free Number, and Publication Notice

The notice program also included an Internet campaign, such as sponsored search listings on major search engines and Banner Ads (featuring the Banner Notice) appearing on a network of various websites.  (Azari Decl. ¶¶ 18-23.)  The Long Form Notice was made available on the Settlement Website[4] and upon request through a toll-free number.  (*Id.* ¶¶ 24-27.)  A Publication Notice (*Id.* Ex. H) was published in accordance with the Court's Preliminary Approval Order.  (*Id.* ¶ 18.)  Altogether, the notice plan reached approximately 94.3% of potential Class Members.  (*Id.* ¶ 28.)

The Summary Notice referred Class Members to the Settlement website, which made available

---

[4]      <https://www.ridesharesettlement.com/Content/Documents/Notice.pdf > (last visited Jan. 25, 2018).

the Long Form Notice, Payment Election Form, Stipulation of Settlement, and other relevant Court documents. (*Id.* ¶ 15.)  The toll-free number also provided Settlement-related information. (*Id.* ¶ 26.) Finally, the requirements of 28 U.S.C. §1715 ("CAFA") were met. (*Id.* ¶¶ 10-12.)

## V.    THE RESPONSE FROM THE CLASS IS OVERWHELMINGLY POSITIVE

The deadline for class members to opt-out or object to the Settlement was January 8, 2018.  As stated, only 38 persons submitted valid requests for exclusion from the Class and seven objections were filed by serial objectors (which lack merit for the reasons stated in Plaintiffs' concurrently filed Response to Objections).  Together, these 45 individuals represent 0.00020% of the Class.  By contrast, 82,375 payment election forms were submitted by Class Members, despite the fact that Class Members need not submit the forms to be compensated.  Thus, Class Members supported this Settlement in overwhelming numbers.

## VI.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.    The Class Action Settlement Approval Process

Proceedings under Federal Rule of Civil Procedure 23 have led to a defined three-step procedure for approval of class action settlements:

> (1)    Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval.
>
> (2)    Dissemination of notice of the proposed settlement to the affected class members.
>
> (3)    A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

*See* Manual for Complex Litigation (Fourth) §§ 21.63 *et seq*. (Fed. Jud. Center 2004).  This procedure safeguards Settlement Class Members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests.  *See* 4 Newberg on Class Actions, § 11:22 *et seq*. (4th ed. 2002) (hereinafter "Newberg").

The Court completed the first step in the settlement approval process when it issued the Preliminary Approval Order on August 7, 2017 (Dkt. 136, Prelim. App. Order.), and the second step — dissemination of notice to the class members — has been implemented by the Settlement

9

Administrator.  (Azari Decl. ¶¶ 7-29.)  By this motion, Plaintiffs respectfully request that the Court take the third and final step and grant final approval of the Settlement.

### B. Final Approval of the Settlement is Appropriate

Public policy "strong[ly] . . . favors settlements, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013).

In weighing final approval of a class settlement, the Court's role is to determine whether the settlement, taken as a whole, is fair, reasonable, and adequate.  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  The Ninth Circuit has established a list of factors to consider when assessing whether a proposed settlement is fair, reasonable and adequate: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the benefits offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *See Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026.  Application of these factors here supports the conclusion that the Settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### 1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation Weigh in Favor of Settlement

The probability of success analysis is not subject to any "particular formula," nor is the Court expected to "reach any ultimate conclusions of the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009), and *Officers for Justice v. Civil Service Com'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).  "Rather, the

10

1   Court's assessment of the likelihood of success is nothing more than an amalgam of delicate

2   balancing, gross approximations and rough justice."  *Garner*, 2010 WL 1687832, at \*9 (citing *Officers*

3   *for Justice*, 688 F.2d at 625) (internal quotations omitted).  Given the subjective components inherent

4   in evaluating the potential range of recovery, "the Court may presume that through negotiation, the

5   Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's

6   likelihood of recovery."  *Id.* at \*9 (citing *Rodriguez*, 563 F.3d at 965).

7          Approval of a class settlement is particularly appropriate when plaintiffs must overcome

8   significant barriers to make their case.  *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851

9   (N.D. Cal. 2010).  The Settlement here appropriately balances the costs, risks, and likely delay of

10  further litigation, on the one hand, against the benefits provided, on the other hand.  *See* 4 Newberg §

11  11:50 at 155 ("In most situations, unless the settlement is clearly inadequate, its acceptance and

12  approval are preferable to lengthy and expensive litigation with uncertain results.").  While Plaintiffs

13  are confident in the strength of their claims, they also recognize that they would have to overcome

14  significant obstacles to succeed.

15                    a.    Plaintiffs Would Have to Overcome Defendants' Motion to Compel
16                          Arbitration

17          The Class faces the very real possibility that Defendants' arbitration agreements and class action

18  waivers could be found valid and enforceable — if not by this Court then by the Ninth Circuit — in

19  which case "immediately, a large portion of the class would be excluded from this litigation, and would

20  be forced to arbitrate their claims individually."  *In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, slip

21  op. at 6 (N.D. Cal. June 29, 2017); *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1123

22  (N.D. Cal. 2016) ("A finding that . . . the arbitration clause[] is valid and enforceable would

23  substantially change the scope and course of Plaintiffs' case, as it would likely require the vast majority

24  of the class to go to arbitration . . . , thus jeopardizing the scope and potential viability of the class

25  action at bar.  Plaintiffs face a considerable risk that they will not proceed as a class action in any

26  court . . . .").

27          Indeed, the same arbitration clauses that Defendants inserted into the terms and conditions

28  governing use of their app, and sought to enforce against Plaintiffs in this case, have since been

enforced by a number of courts.  *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) (reversing

trial court's denial of motion to compel arbitration); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985

(N.D. Cal. 2017) (upholding arbitration agreement); *Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541

(2017) (upholding arbitration agreement); *Cullinane v. Uber Techs., Inc.*, No. CV 14-14750-DPW,

2016 WL 3751652, at *7 (D. Mass. July 11, 2016) (dismissing case and ordering arbitration); *but see,*

*e.g., Metter v. Uber Techs., Inc.*, No. 16-CV-06652-RS, slip op. at 3 (N.D. Cal. Apr. 17, 2017) (denying

motion to compel arbitration) *appeal docketed*, No. 17-16027 (9th Cir. May 18, 2017).

    While Plaintiffs believe they would overcome this challenge, a successful motion to compel

arbitration could end the case entirely and result in the Class Members receiving nothing at all.  Indeed,

the recent arbitration decisions noted above highlight the very real risk that Plaintiffs run with respect

to the issue of arbitration, including on appeal — which is certain to occur if Defendants' motion to

compel arbitration is denied.

b.    <u>Plaintiffs Would Have to Overcome Defendants' Challenges to Issues of
Liability, Damages, and Certification if the Litigation Continues to Trial</u>

    In evaluating the Settlement, the Court should consider "the risk of continued litigation

balanced against the certainty and immediacy of recovery from the Settlement."  *In re Omnivision*

*Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008).  This is particularly true in cases, like this

one, which involve significant uncertainty and the potential for years of litigation and costly appeals.

*See, e.g., Rodriguez*, 563 F.3d at 966 (favoring settlement where "[i]nevitable appeals would likely

prolong the litigation, and any recovery by Settlement Class Members, for years").

    On the merits, Defendants have raised issues regarding limited viewership of allegedly

misleading statements, lack of materiality, lack of falsity, and lack of reliance, and Plaintiffs face a

risk that any of these defenses might succeed.  (Dkt. 127, Mtn. for Prelim. App. at 14-17.)  Plaintiffs

also face uncertainty with respect to obtaining and maintaining class certification.  (*Id.* at 18-20.)  If

the Settlement is not approved, this action will proceed to litigation and possibly to trial and appeal.

Regardless of the parties' respective beliefs in the strength of their positions, there is uncertainty about

the ultimate outcome of this action, and proceeding with this litigation poses various risks such as

certification, decertification, loss on the merits, and loss on appeal, all of which would be extremely

12

costly and time-consuming to fully litigate. The Amended Settlement allows class members to receive benefits promptly, and without the significant delays that continued litigation would entail.

### 2. Plaintiffs Face the Challenge of Maintaining Class Action Status Leading up to and Through Trial

If litigation continues in this Court, Defendants will dispute that common issues of fact and law prevail for class certification, and that a class trial is manageable. While Plaintiffs believe they have a strong argument for certifying litigation classes here, obtaining and maintaining class action status leading up to and throughout the trial is always a challenge, and is far from guaranteed in a complex case like this one.

### 3. The Benefits Conferred by the Settlement are Substantial

#### a. The Settlement's Consideration is Significant Compared to the Maximum Potential Recovery Available

Under the Settlement, the Class will receive a $32.5 million payment, less attorneys' fees and costs, administrative costs, and service awards. No amount of this money will revert to Defendants. The Settlement amount represents an average settlement share of approximately $1.07 per Class Member based on a Class size of 22.4 million Members. (Dkt. 127, Mtn. for Prelim. App. at 6-7.) This share is significant in relation to the initial Safe Rides Fee of $1.00. By comparison, Defendants' total revenues from the Safe Rides Fee during the Class Period were $470,706,387. (Dkt. 149, Ahdoot Fee Decl. ¶ 46.) As the Court recognized in its Preliminary Approval Order, "it is reasonable to deduct" certain expenses "from Uber's gross fee revenue in order to determine Plaintiffs' maximum potential recovery at trial[.]" (Dkt. 136, Prelim. App. Order 8:1-2.) In its Preliminary Approval Order, the Court accepted a deduction of reasonable safety-related costs from Uber's total Safe Rides Fee revenue, in comparison to which the Settlement Fund falls within the range of possible approval. (Dkt. 136, Prelim. App. Order at 8; Dkt. 126-5 (unredacted Prelim. Mot.) at 21; Dkt. 136-1 (unredacted Preliminary Approval Order) at 8.)

Nevertheless, even if $470,706,387 were used as the benchmark for reasonableness, the $32.5 million fund yields a recovery percentage of 6.9%, which is within the range of possible approval. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does

1    not *per se* render the settlement inadequate or unfair." *In re Omnivision*, 559 F. Supp. at 1042

2    (approving settlement of approximately 6% of potential recovery at trial). "Indeed, courts have held

3    that a recovery of only 3% of the maximum potential recovery is fair and reasonable when the

4    plaintiffs face a real possibility of recovering nothing absent the settlement." *Custom LED, LLC v.*

5    *eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014); *see also, e.g.*, *In*

6    *re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1132 (N.D. Cal. 2015) (due to "the

7    substantial legal obstacles to recovery through litigation," an $8.5 million settlement was fair even

8    though the "theoretical value" of the case was "in the trillions of dollars,").

9                              b.   The Settlement's Injunctive Relief is Substantial Consideration

10            The Settlement's injunctive relief also justifies approval of the Settlement. *See, e.g.*, *In re*

11   *Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014) (affirming settlement approval where "injunctive

12   relief . . . [was] meaningful and consistent with the relief requested in plaintiffs' complaint"); *In re*

13   *TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1005 (N.D. Cal. 2015) (approving

14   settlement where "the injunctive relief [would] have significant value for both Settlement Class

15   Members and the general public").

16            Here, Uber has agreed to change how it describes its background check process, and Uber has

17   agreed to refrain from using statements that Plaintiffs challenge in the CAC, such as "safest ride on the

18   road," "industry-leading," and certain other statements, in any Commercial Advertising.  (Dkt. 125,

19   Am. Stip. ¶ 54.)  Uber also has agreed not to charge any fee entitled "Safe Rides Fee." (Id. ¶6.)  The

20   Amended Settlement thus addresses substantially all of the objectionable conduct alleged in the CAC.

21
22                         **4.    Class Counsel Performed Sufficient Discovery, Research and Analysis to**
                                  **Adequately Assess the Settlement and the Strengths and Weaknesses of**
                                  **the Class' Claims**
23

24            This factor evaluates whether the parties have sufficient information to make an informed

25   decision with respect to the settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th

26   Cir. 2000); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal.

27   July 11, 2014).  "In the context of class action settlements, as long as the parties have sufficient

28   information to make an informed decision about settlement, formal discovery is not a necessary ticket

                                                          14

to the bargaining table." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (internal quotation omitted). "Rather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Id.* (internal quotation omitted).

This factor weighs particularly heavily in favor of approving the Settlement here. As explained in more detail in the Motion for Attorneys' Fees and Expenses and supporting Declaration of Robert Ahdoot (Dkt. 140, Fee Motion; Dkt. 149, Ahdoot Fee Decl.), Class Counsel conducted extensive factual investigation in this matter, including, *inter alia*: (1) thoroughly and exhaustively investigating all factual and legal issues surrounding Defendants' representations, marketing, business practices, and promotional efforts, across all available platforms, including dozens of witness and expert interviews prior to filing suit; (2) negotiating a way to proceed in a collaborative manner after the original two cases (this action and *Mena v. Uber Techs., Inc.*, No. 3:15- cv-00064) were independently filed; (3) preparing two original Complaints, an Amended Complaint, the Consolidated Amended Complaint ("CAC"), as well as fully researching and briefing two complex motions to compel arbitration filed by Uber; (4) conducting extensive post-filing investigation and discovery, including review of thousands of documents, ten interviews of Uber personnel, numerous interviews of additional witnesses, and consultation with experts; (5) reviewing filings in and researching factual and legal issues implicated by numerous other proceedings against Uber that were relevant to this matter; and (6) engaging in settlement negotiations spanning almost two years with an ever-changing backdrop of facts and law. Accordingly, Plaintiffs and Class Counsel had sufficient information to make an informed decision about the Settlement and to determine that it represented a favorable and fair result for the Class Members.

### 5. The Recommendations of Experienced Class Counsel Favor Approval

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (citing *Boyd v. Bechtel Corp.*, 485 F. Supp 610, 621 (N.D. Cal. 1979)); *see also Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *3 (N.D. Cal. 2016) ("[T]he views of Plaintiffs' counsel who are experienced in litigating and settling complex consumer class actions, weigh in favor of final approval.") (citing *Linney v. Cellular Alaska P'ship*, Nos. C-96-3008

DLJ, C-97-0203 DLJ, C-97-0457 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) *aff'd*, 151 F.3d 1234 (9th Cir. 1998)).  Here, Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters.  (Dkt. 149, Ahdoot Fee Decl.;  Dkt. 142, Declaration of Nicholas Coulson ISO Plaintiffs' Motion For Attorneys' Fees And Expenses And For Class Representative Service Awards ("Coulson Decl"); Dkt. 148, Declaration of Mike Arias ISO Plaintiffs' Motion For Attorneys' Fees And Expenses And For Class Representative Service Awards ("Arias Decl.").)  They have conducted an extensive investigation into the factual and legal issues raised in this litigation, and counsel for all parties endorse the Settlement as fair, adequate, and reasonable, especially when one considers the attendant expense, risks, delays, and uncertainties of litigation, trial and post-trial proceedings.  (*Id.*)

### 6.   No Presence of a Government Participant

Notice has been issued pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.  (Azari Decl. ¶¶ 10-12.)  To date, no governmental entity has intervened.

### 7.   The Class Response Favors Final Approval

82,375 payment election forms were submitted by Class Members.  (*Id.* ¶ 40.)  By comparison only 38 persons submitted valid requests for exclusion from the Class and just seven objections were submitted by serial objectors. (*Id.*)  Collectively those opting out or objecting represent approximately .00020 % of the total Settlement Class.  Comparison of these figures provides powerful evidence of the Settlement's fairness.  *See, e.g., Churchill Village*, 361 F.3d at 577 (affirming approval of settlement with 45 objections and 500 opt-outs from class of 90,000 members, roughly 0.6%); *Chun-Hoon*, 716 F. Supp. 2d at 852 (finding that sixteen opt-outs in class of 329 members, or 4.86%, strongly supported settlement); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068-MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (approving settlement with 2% opt-out rate); *Wren v. RGIS Inventory Specialists*, No. C-06-05778-JCS, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1, 2011) (holding that "'the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members'") (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)); *see also Garner*, 2010 WL 1687832 at *14 (same); *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at

16

1   *5 (D. Nev. Oct. 28, 2010) ("The small number of objections is an indication that the settlement is fair,

2   adequate, and reasonable."); *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 118-19 (3d Cir. 1990)

3   (finding that 29 objections out of a 281–member class "strongly favors settlement").  As addressed in

4   the concurrently filed Response to Objections, the objections filed have no merit and should be

5   overruled.

6   **8.   Lack of Collusion Between the Parties**

7   "Before approving a class action settlement, the district court must reach a reasoned judgment

8   that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the

9   negotiating parties." *City of Seattle*, 955 F.2d at 1290 (citations omitted).  "Where a settlement is the

10  product of arms-length negotiations conducted by capable and experienced counsel, the court begins its

11  analysis with a presumption that the settlement is fair and reasonable." *Garner*, 2010 WL 1687832 at

12  *13; *see also See* 4 Newberg § 11:41; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal.

13  June 10, 2005).

14  Evidence of a settlement negotiation process involving protracted negotiations with the

15  assistance of a neutral mediator also weighs in favor of approval.  *See Rosales v. El Rancho Farms*,

16  No. 1:09-cv-00707-AWI-JLT, slip op. at *44 (E.D. Cal. July 21, 2015) ("Notably, the Ninth Circuit

17  has determined the 'presence of a neutral mediator [is] a factor weighing in favor of a finding of non-

18  collusiveness.'") (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir.

19  2011)); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *15-16 (N.D. Cal.

20  Sept. 26, 2013) ("participation of mediator is not dispositive, but is 'a factor weighing in favor of a

21  finding of non-collusiveness'").

22  The Settlement here is the product of hard-fought, arms-length negotiations between the parties

23  and their well-qualified counsel.  These negotiations included three days of mediation with the

24  Honorable Carl J. West (Ret.) of JAMS, and three days of mediation with Robert J. Kaplan, Esq. of

25  Judicate West.  The Parties also participated in a settlement conference before Chief Magistrate Judge

26  Joseph C. Spero, and conducted numerous face-to-face and telephonic meetings between counsel.

27  Throughout these negotiations, the Parties were represented by counsel experienced in the prosecution,

28  defense and settlement of complex class actions.  Thus, the Settlement is presumptively fair and

17

1    reasonable.

2    **VII.    CONTINUED CLASS ACTION TREATMENT IS APPROPRIATE**

3         "Parties seeking class certification must satisfy each of the four requirements of Rule 23(a)—

4    numerosity, commonality, typicality, and adequacy[.]"  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d

5    1121, 1124 (9th Cir. 2017).  In its Preliminary Approval Order, the Court certified the Class defined in

6    section II(6) of the Settlement Agreement.  (Dkt. 136, Prelim. App. Order at 11-12.)  In doing so, the

7    Court found that the Settlement Class Representatives satisfied both Rule 23(a) and (b)(3)

8    requirements, and that Settlement Class Counsel were adequate representatives of the Class.  (*Id.*)  As

9    demonstrated below, there is no reason for the Court to depart from its previous conclusion that

10   certification of the Class is warranted, and no party argues otherwise.

11        **A.    This Action Satisfies the Requirements of Rule 23(a)**

12             **1.    The Class is Sufficiently Numerous**

13        Rule 23(a)(1) is satisfied when "the class is so numerous that joinder of all class members is

14   impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is generally satisfied when the class exceeds

15   forty members.  *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).  "A specific

16   minimum number is not necessary, and [a] plaintiff need not state the exact number of  potential class

17   members."  *Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 WL 6982943, at *15 (N.D. Cal.

18   Dec. 9, 2014) (class of 140 members meets numerosity requirement).  Here, the Class includes over 22

19   million members dispersed across the United States.  The sheer size and distribution of the Class

20   renders joinder impracticable.  *See Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006)

21   ("Joinder of 1,000 or more co-plaintiffs is clearly impractical.").  There are over 22 million Settlement

22   Class Member and thus numerosity is established.

23             **2.    There Are Common Questions of Both Law and Fact**

24        "Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that

25   members of the proposed class share common 'questions of law or fact.'"  *Stockwell v. City & County*

26   *of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014).  Courts routinely find commonality where the

27   class' claims arise from a defendant's uniform course of conduct.  *See, e.g.*, *Spalding v. City of*

28   *Oakland*, No. C11-2867 TEH, 2012 WL 994644, at *3 (N.D. Cal. Mar. 23, 2012) (finding

18

commonality where plaintiffs "alleged a common course of conduct that is amenable to classwide resolution"); *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 462 (N.D. Cal. 1983) ("[T]he commonality requirement is satisfied where it is alleged that the defendants have acted in a uniform manner with respect to the class."); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (finding that, "where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question").

Here, common questions include whether Defendants' representations and omissions regarding the Safe Rides Fee and Defendants' safety practices were misleading, whether revenues were used for the stated purpose, whether the statements created implied contracts with the Class Members, whether such contracts were breached, and whether Defendants' practices violated the law. All Class Members paid a Safe Rides Fee, and Defendants charged a Safe Rides Fees as part of their uniform course of conduct. Accordingly, Rule 23's commonality requirement is satisfied here.

### 3. The Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims

"Rule 23(a)(3) requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting Fed. R. Civ. P. 23(a)(3)). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiffs' claims stem from the same common course of conduct as the claims of the Class. All Class Members used the Uber App and were charged a Safe Rides Fee by Defendants. The injuries suffered by Plaintiffs are the same as those of the Class and result from Defendants' safety-related representations, omissions, and the imposition of, and disclosures regarding, the Safe Rides Fee.

19

Typicality is therefore satisfied.

### 4. The Settlement Class Representatives and Settlement Class Counsel Fairly and Adequately Protect the Interests of the Settlement Class

Finally, Rule 23(a)(4) requires "the representative parties [to] adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts engage in a dual inquiry to determine adequate representation and ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other Class Members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

As the Court noted, there are no conflicts of interest here. (Dkt. 98, Denial Order at 17-18; Dkt. 136, Prelim. App. Order at 11.) Plaintiffs seek the same remedy as all Class Members: relief to address claims arising from Defendants' safety-related representations and the imposition of, and disclosures regarding, the Safe Rides Fee. Plaintiffs' interests are perfectly aligned with the interests of the Class. Further, proposed Class Counsel have extensive experience litigating and settling class actions, including false advertising, breach of contract, and unlawful business practices claims on behalf of consumers. They have demonstrated expertise in handling all aspects of complex litigation and class actions and are well qualified to represent the Class. (Dkt. 149, Ahdoot Fee Decl.; Dkt. 142, Coulson Decl.; Dkt. 148, Arias Decl.)

### B. The Predominance and Superiority Requirements of Rule 23(b)(3) are Satisfied

In addition to the requirements of Rule 23(a), the Court must find that the provisions of Rule 23(b) are satisfied. The Court should certify a Rule 23(b)(3) class when: (i) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This case satisfies both the predominance and superiority requirements.

### 1. Common Issues of Law and Fact Predominate

To satisfy Rule 23(b)(3), Plaintiffs must demonstrate that "common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (Rule 23(b)(3) "does not require a plaintiff seeking class

20

certification to prove that each element of [the] claim is susceptible to classwide proof.")

No party disputes the Court's previous determination that common issues of law and fact predominate in this matter. That is because the claims in this case are based upon uniform conduct, representations, and omissions regarding the safety fee charge, which identically affect all Settlement Class Members, and thus factual issues predominate. Further, Uber contends that this dispute — as to all Settlement Class Members — is controlled by a contract that provides: "CHOICE OF LAW. These terms are governed by and construed in accordance with the laws of State of California, USA, without giving effect to any conflict of law principals." (*Mena* Dkt. 32-2 at 10.) California law is therefore is the controlling substantive law of the case, and it predominates and applies to all Settlement Class Members, nationwide. Moreover, because no party invokes the law of a foreign state, California law applied to class claims. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010) (reasoning that California law applies unless the party advocating application of a foreign state's aw meets its burden of identifying conflict of laws and of establishing that the foreign state has an interest in having its law applied). Thus, "there is clear justification for handling [this] dispute on a representative rather than an individual basis," because "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1778 (2d ed. 1986)).

## 2. Class Treatment Is Superior in This Case

Finally, under Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court evaluates whether a class action is a superior method of adjudicating plaintiff's claims by evaluating four factors: "(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

Each of these factors supports certifying the Settlement Class for settlement purposes. There is little interest or incentive for Settlement Class Members to individually control the prosecution of

1    separate actions.  The Settlement Class Members' individual claims are too small to justify the

2    potential litigation costs that would be incurred by prosecuting these claims individually.  Although

3    Plaintiffs claim an injury resulting from Defendants' conduct, the cost of individually litigating such a

4    case against Defendants would far exceed the value of any relief that could be obtained by any one

5    consumer.  This fact strongly warrants a finding that a class action is a superior method of

6    adjudication.  A class action also would be superior because concentrating this litigation in one forum

7    would not only prevent the risk of inconsistent outcomes but would "reduce litigation costs and

8    promote greater efficiency."  *Negrete v. Allianz Life Ins. Co. of N. Am.,* 238 F.R.D. 482, 493 (C.D.

9    Cal. 2006).  This "factor emphasizes the desirability of the forum selected, not the desirability of

10    claims concentration generally."  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp.

11    450, 524 (D.N.J. 1997).

12        In evaluating the Settlement this Court already found that a class action is superior to other

13    available methods for the fair and efficient adjudication of this controversy, because "the judicial

14    economy achieved through common adjudication undoubtedly makes a class action superior to any

15    alternative procedures for resolving the claims" of millions of class members. (Dkt. 98, Denial Order

16    at 18.)  This remains true for the Settlement, which encompasses a class in excess of 22 million

17    members (Dkt. 127, Mtn. for Prelim. App. at 7), satisfying Rule 23(b)(3)'s superiority requirement.

18    **VIII.   CONCLUSION**

19        For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

20        1.      Approving the proposed Settlement as fair, reasonable, and adequate to Plaintiffs and

21    the class members, and directing the Settlement's consummation according to its terms;

22        2.      Reaffirming certification of the Settlement Class for settlement purposes;

23        3.      Finding that the form and manner of class notice implemented pursuant to the

24    Settlement: (i) constitutes reasonable and the best practicable notice; (ii) constitutes notice reasonably

25    calculated, under the circumstances, to apprise class members of the pendency of the litigation, the

26    terms of the proposed Settlement, the right to object to the proposed Settlement or exclude themselves

27    from the Class, and the right to appear at the Final Fairness Hearing; (iii) constitutes due, adequate, and

28    sufficient notice to all persons entitled to receive notice; and (iv) meets the requirements of state and

federal due process, the Federal Rules of Civil Procedure, and any other applicable state and/or federal laws;

    4.    Finding that all class members shall be bound by the Settlement, including the release provisions;

    5.    Directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation and ruling that no costs or fees be assessed on either party other than as expressly provided in the Settlement;

    6.    Incorporating the release and related provisions set forth in the Settlement and barring any Released Claims against the Uber Released Parties;

    7.    Approving payment of the benefits to the class members consistent with the Settlement; and

    8.    Retaining jurisdiction of all matters relating to the interpretation, administration, implementation, and enforcement of the Settlement.

Dated:  January 25, 2018        Respectfully submitted,

AHDOOT & WOLFSON, PC

*/s/ Robert Ahdoot*
Tina Wolfson
Robert Ahdoot
Theodore W. Maya

Dated:  January 25, 2018        ARIAS, SANGUINETTI, WANG &TORRIJOS, LLP

*/s/ Mike Arias*
Mike Arias (State Bar No.  115385)
Alfredo Torrijos (State Bar No. 222458)
6701 Center Drive West, Suite 1400
Los Angeles, California 90045-7504
Tel: (310) 844-9696

23

Dated:  January 25, 2018

LIDDLE & DUBIN, P.C.

By: */s/ Nicholas A. Coulson*
Nicholas A. Coulson (*Pro Hac Vice*)
975 E. Jefferson Avenue
Detroit, MI 48201
Tel: (313) 392-0015

Class Counsel and Attorneys for Plaintiffs

BARBAT, MANSOUR & SUCIU

By: */s/ Nick Suciu III*
434 West Alexandrine, #101
Detroit, MI 48201
Tel: (313) 303-3472

Attorneys for Plaintiffs

1

2

**ATTORNEY ATTESTATION**

Pursuant to Civil Local Rule 5-1(i), I, Robert Ahdoot, hereby attest that concurrence in the filing of this document and all supporting documents has been obtained from the other signatories on these documents.

DATED: January 25, 2018          By:  */s/ Robert Ahdoot*
                                       Robert Ahdoot