# EXHIBIT F

1  WILLIAM L. STERN (CA SBN 96105)
   WStern@mofo.com
2  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
3  ALEXANDRA E. LAKS (CA SBN 291861)
   ALaks@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone: 415.268.7000
6  Facsimile:  415.268.7522

7  ARIEL F. RUIZ (CA SBN 305488)
   Ariel.Ruiz@uber.com
8  UBER TECHNOLOGIES, INC.
   1455 Market Street
9  San Francisco, California  94103
   Telephone: 415.391.4800
10
   Attorneys for Defendants
11 UBER TECHNOLOGIES, INC., RASIER, LLC and
   RASIER-CA, LLC
12

ELECTRONICALLY
**FILED**
Superior Court of California,
County of San Francisco
**06/29/2017**
Clerk of the Court
BY:ANNA TORRES
Deputy Clerk

13                 SUPERIOR COURT OF CALIFORNIA

14                    COUNTY OF SAN FRANCISCO

15 THE PEOPLE OF THE STATE OF            Case No. CGC-14-543120
   CALIFORNIA,
16
                      Plaintiff,
17                                        **DECLARATION OF**
       v.                                 **WILLIAM L. STERN IN SUPPORT OF**
18                                        **DEFENDANTS UBER TECHNOLOGIES,**
                                          **INC., RASIER, LLC AND RASIER-CA,**
   UBER TECHNOLOGIES, INC., a Delaware   **LLC'S MOTION FOR REVIEW**
19 Corporation; RASIER, LLC, a Delaware  **PURSUANT TO PARAGRAPH 9 OF**
   Limited Liability Company; RASIER-CA, **STIPULATED JUDGMENT**
20 LLC, a Delaware Limited Liability Company;
   and DOES 1 through 100, inclusive,
21
                      Defendants.         Date:      August 4, 2017
22                                        Time:      1:30 p.m.
                                          Courtroom:   305
23                                        Honorable Mary E. Wiss

24

25              **PUBLIC - Redacts material from sealed record.**

26

27

28

I, William L. Stern, declare:

1.     I am a member of the California State Bar and Senior Counsel in the law firm of Morrison & Foerster, LLP, attorneys for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-Ca, LLC (collectively, "Defendants" or "Uber").  The facts contained in this Declaration are personally known to me in that capacity.

**This Lawsuit and the Stipulated Judgment**

2.     This lawsuit was filed on December 9, 2014, by the San Francisco and Los Angeles District Attorneys ("District Attorneys") and was assigned to this Department.  The parties agreed to mediation, supervised by The Honorable Harold E. Kahn.  The case settled on April 7, 2016, pursuant to a Stipulated Judgment and Permanent Injunction ("Stipulated Judgment").  A true and correct copy of the Stipulated Judgment is attached to this Declaration as Exhibit A.

3.     Pursuant to the Stipulated Judgment, Defendants were required (among other things) to pay a civil penalty of $25 million, of which $10 million was due within 60 days of the date of entry of the Stipulated Judgment (*see* Ex. A, ¶ 8(A)), and a "Second Payment" was due on the 850th day after date of entry.  (*Id.* ¶ 8(B).)  Uber timely paid the First Payment.

**The First Review Period**

4.     Under the Stipulated Judgment, Uber would be subject to two "review periods," the first falling due on April 7, 2017.  Uber was required to produce various items of information, as set forth in the Stipulated Judgment in Paragraph 8(D), on that date.

5.     Uber was late in producing this material.  It does not dispute that.  But Uber provided the District Attorneys with required materials through a series of rolling productions ending on June 7, 2017.

6.     Altogether, Uber made five productions, totaling 11,569 documents (27,501 pages) of materials.  The majority of these documents concerned public statements regarding safety, airport operations, and airport fees, and many were responsive to more than one of these categories and, accordingly, could not be disaggregated.  Uber provided the DAs with the search terms used and databases it searched to identify documents, and produced documents in

accordance with specifications it used in the underlying litigation, including producing black-and-white documents in TIFF, color documents in JPEG, and excel files in native format.  Uber produced these documents as follows:

| Date | Pages | Categories of Information |
|---|---|---|
| May 5, 2017 | 306 | Safety and airport operation/fee statements (Stip J. ¶¶ 8(D)(ii)(iii)(vi).) |
| May 12, 2017 | 16,977 | Safety and airport operation/fee statements (*Id.*) |
| May 23, 2017 | 9,128 | Safety and airport operation/fee statements  (*Id.*) |
| June 6, 2017 | 1 (Excel Spreadsheet) and cover letter with explanation of spreadsheet. | List of California Airports at which Uber operates (*id.* ¶ 8(D)(iv)), fees charged at such airports and information about fees (*id.* ¶ 8(D)(vi)), and unauthorized trip information (*Id.* ¶ 7(C).) |
| June 7, 2017 | 1,089 | Copies of airport operation and safety statement text messages (in excel format) (Stip J. ¶¶ 8(D)(ii)(iii)(vi)), Operating agreements (formal and informal) with California Airports (*id.* ¶ 8(D)(iv)), airport operation statement, (*id.* ¶ 8(iii)), and correspondence with DMS  (*Id.* ¶ 5.)[1] |

7.      In addition, Uber produced a certification of compliance by a corporate officer, Uber's former Head of Finance, Mr. Gautam Gupta, as required under Paragraph 8(D)(i).  A true and correct copy of Mr. Gupta's certification is attached as Exhibit B to my Declaration.

8.      Finally, with respect to airport operations, as indicated above, Uber disclosed the number of unauthorized trips to California airports to the District Attorneys on June 6, and included a detailed explanation of the data with its disclosure.  Uber then remitted to the District

---

[1] The Stipulated Judgment does not require Uber to affirmatively produce this correspondence with its Compliance Materials, but Uber included it to demonstrate its ongoing compliance with the requirements in Paragraph 5 of the Stipulated Judgment.

1    Attorneys the revenue obtained from unauthorized trips, as required by Paragraph 7(C), on June

2    23, 2017.

### The Conditional "Second Payment"

4        9.      The Stipulated Judgment provides for a conditional Second Payment.  Paragraph

5    8(B) states that an additional $15 million "shall be paid" on June 6, 2018.  The DAs can also

6    demand an advanced payment of the $15 million, provided "Plaintiff determines that Defendants

7    have violated the Stipulated Judgment after the first Review period specified in Paragraph 8(D)."

8    (Stip J. ¶ 8(F).)  In that event, the Second Payment becomes due 60 days later.  (*Id.*)

9        10.     The Second Payment is not automatic, however.  It is subject to three conditions.

10       11.     The first condition is that the DAs must actually review Uber's compliance

11   production:  "Within 45 days after receiving [the First Review materials], Plaintiff will notify

12   [Uber] if it requests any additional information that is reasonably necessary to determine

13   compliance with th[e] Stipulated Judgment."  (*Id.* ¶ 8(E).)

14       12.     The second condition is that if the DAs are going to claim that Uber's public-

15   facing statements violate the Stipulated Judgment, they must notify Uber and allow Uber to cure.

16   (*Id.* ¶ 8(G)(d).)

17       13.     The third condition is that the $15 million payment "shall be permanently stayed if

18   Plaintiff determines, in good faith, that Defendants have complied with this Stipulated Judgment

19   after the date of the entry of the Stipulated Judgment."  (¶ 8(F) (emphasis added).)

20       14.     During the settlement negotiations, Uber was concerned that unless there were

21   clear guidelines conditioning the Second Payment, the Das would be in a positon to make an

22   arbitrary or pretextual determination of "violation."  The DAs understood that, and agreed to the

23   contractual safeguards of Paragraphs 8(E), (G) and (F) in order to alleviate those concerns.  The

24   wording of those provisions was heavily negotiated, especially the phrasing of Paragraph 8(F).

25       15.     Under Paragraph 9, Uber may challenge the reasonableness of Plaintiff's "good

26   faith" determination.  To seek review, Uber must escrow $15 million with the Court and file a

27   motion for review.  (*Id.*)

28       16.     Uber escrowed the $15 million with the Court on June 23, 2017.

**The DAs' Determination Violates the Stipulated Judgment**

17.     On April 14, 2017, one week after the deadline for Uber to produce First Review Period materials, the District Attorneys sent me a letter addressed to Uber's in-house counsel, Ariel Ruiz, stating that they had determined that Uber violated the Stipulated Judgment. They declared the Second Payment due in 60 days, based solely on the untimeliness of Uber's production of First Review materials.  A true and correct copy of the District Attorneys' April 14 letter is attached as Exhibit C to my Declaration.

18.     On April 19, 2017, the District Attorneys sent me another letter in response to a voicemail I had left regarding the April 14 letter.  In their April 19 correspondence, the District Attorneys contended that Uber had not undertaken its initial compliance obligations.  A true and correct copy of the District Attorneys' April 19 letter is attached as Exhibit D to my Declaration.

19.     I responded to this letter on April 25, 2017, a true and correct copy of which is attached as Exhibit E.

20.     After Uber completed its productions on June 7, 2017, I emailed the District Attorneys on June 8, requesting to meet regarding Uber's productions, and further asking that the District Attorneys toll the running of the 60-day period while the DAs complete their 45-day review.  A true and correct copy of my email is attached as Exhibit F to my Declaration.

21.     District Attorneys wrote another letter on June 12 in which they reiterated their determination of violation.  A true and correct copy of that letter is attached as Exhibit G to my Declaration.

22.     On June 21, 2017 the District Attorneys wrote again.  A true and correct copy of their June 21 letter is attached as Exhibit H to my Declaration.

23.     I responded to the District Attorneys' June 21 letter on June 26, 2017.  A true and correct copy of my response is attached as Exhibit I to my Declaration.

24.     I received a response from the District Attorneys on June 28, 2017.  A true and correct copy of that letter is attached as Exhibit J.

25.     On June 28, 2017, in connection with preparing this Motion, an associate under my supervision, Alexandra Laks, identified a substantial set (more than 31,000) of documents that

1   were not produced because the team at Morrison & Foerster assisting with Uber's compliance

2   productions ran incorrect searches over Uber's databases. Ms. Laks immediately informed the

3   District Attorneys upon discovering this error. Uber then produced documents which had been

4   omitted from its compliance materials, and which were directly relevant to Uber's compliance

5   efforts, on that day. Ms. Laks asked if the District Attorneys wanted the additional documents

6   Uber had identified, and they confirmed they did. Uber's counsel is working to provide these

7   documents to the DAs in short order.

8          26.    With respect to Mr. Gupta's certification, Uber was not able to state that it was in

9   full compliance with each term of the Stipulated Judgment because it had submitted materials

10   after the April 7 First Review deadline. Aside from lateness, however, Uber was fully in

11   compliance with each term of the Stipulated Judgment.

12                    **The DAs Refused, And Continue to Refuse, to Meet and Confer.**

13          27.    Though Uber has offered to meet and confer at various points during the parties'

14   correspondence regarding Uber's compliance with the Stipulated Judgment, to date, the District

15   Attorneys have refused to do so. The DAs have never requested further information pursuant to

16   Paragraph 8(E) of the Stipulated Judgment.

17          28.    The District Attorneys have never requested that Uber cure any alleged violations

18   pursuant to the terms of the Stipulated Judgment.

19

20   I declare under penalty of perjury under the laws of the State of California that the foregoing is

21   true and correct and that I am competent to testify to the facts contained in this declaration if

22   called as a witness, and that this Declaration was signed on June 29, 2017, in San Francisco,

23   California.

24

25                                          _William L. Stern_
                                            William L. Stern

26

27

28

## EXHIBITS A - J TO DECLARATION OF WILLIAM L. STERN

| Ex. No. | Description | Page |
|---------|-------------|------|
| A | Stipulated Judgment and Permanent Injunction, filed April 7, 2016. | 8 |
| B | Declaration and Certification of Gautam Gupta Pursuant to Paragraph 8(D((I) of the Stipulated Judgment and Permanent Injunction, dated June 6, 2017. | 24 |
| C | Letter from Office of the District Attorney to Ariel Ruiz, dated April 14, 2017. | 31 |
| D | Letter from Office of the District Attorney to William Stern, dated April 19, 2017. | 33 |
| E | Letter from William Stern to Ernest Halperin, Assistant District Attorney, dated April 25, 2017. | 36 |
| F | E-mail from William Stern to Ernest Halperin, Assistant District Attorney, dated June 8, 2017 | 40 |
| G | Letter from Office of the District Attorney to William Stern, dated June 12, 2017. | 42 |
| H | Letter from Office of the District Attorney to William Stern, dated June 21, 2017. | 46 |
| I | Letter from William Stern to Office of the District Attorney, dated June 26, 2017. | 49 |
| J | Letter from Office of the District Attorney to William Stern, dated June 28, 2017. | 59 |

# EXHIBIT A



### SUPERIOR COURT OF CALIFORNIA
### COUNTY OF SAN FRANCISCO

## Document Scanning Lead Sheet

Apr-07-2016 4:38 pm

Case Number: CGC-14-543120

Filing Date: Apr-07-2016 4:38

Filed by:  SEAN KANE

Image: 05347158

TEXT JUDGMENT

THE PEOPLE OF THE STATE OF CALIFORNIA VS. UBER TECHNOLOGIES INC A DELAWARE CORPORATION ET AL

001C05347158

**Instructions:**
Please place this sheet on top of the document to be scanned.

1 │ GEORGE GASCÓN, SBN 182345
District Attorney of San Francisco
2 │ JUNE D. CRAVETT, SBN 105094
Assistant Chief District Attorney
3 │ EVAN H. ACKIRON, SBN 164628
Managing Assistant District Attorney
4 │ ERNST A. HALPERIN, SBN 175493
NANCY H. TUNG, SBN 203236
5 │ SEAN M. KILEY, SBN 282075
PHOEBE H. MAFFEI, SBN 271346
6 │ DANIEL C. AMADOR, SBN 247642
Assistant District Attorneys
7 │ White Collar Crime Division
732 Brannan Street
8 │ San Francisco, California 94103
Telephone: (415) 551-9545
9 │
JACKIE LACEY, SBN 110808
10 │ District Attorney of the County of Los Angeles
STANLEY PHILLIP WILLIAMS, SBN 106658
11 │ Head Deputy District Attorney
HOON CHUN, SBN 132516
12 │ Assistant Head Deputy District Attorney
JESSIE LEE ANN MCGRATH, SBN 131702
13 │ CHRISTOPHER CURTIS, SBN 236978
Deputy District Attorneys
14 │ 201 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012
15 │
*Attorneys for Plaintiff,*
16 │ The People of the State of California
17 │
18 │ SUPERIOR COURT OF THE STATE OF CALIFORNIA
CITY AND COUNTY OF SAN FRANCISCO
19 │ UNLIMITED JURISDICTION

**F I L E D**
Superior Court of California
County of San Francisco

APR 0 7 2016

CLERK OF THE COURT
BY: _____
Deputy Clerk

| | |
|---|---|
| 20 │ THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>21 │ Plaintiff,<br><br>22 │ vs.<br><br>23 │ UBER TECHNOLOGIES, INC., a Delaware<br>24 │ Corporation; RASIER, LLC, a Delaware<br>Limited Liability Company; RASIER-CA,<br>25 │ LLC, a Delaware Limited Liability Company,<br><br>26 │ Defendants. | Case No.  CGC-14-543120<br><br>**STIPULATED JUDGMENT AND PERMANENT INJUNCTION** |

27 │

1    Plaintiff, the People of the State of California, by and through George Gascón, District

2    Attorney for the City and County of San Francisco and Jackie Lacey, District Attorney for the

3    County of Los Angeles, and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA,

4    LLC (hereinafter "Defendants"), having stipulated to entry of this Stipulated Final Judgment and

5    Permanent Injunction (hereinafter "Stipulated Judgment") without the taking of proof and without

6    this judgment constituting evidence of or an admission by any party regarding any issue of law or

7    fact alleged in the First Amended Complaint, all parties having waived the right to appeal, and

8    good cause appearing,

9    IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

10    1.    The Court has jurisdiction of the parties hereto and the subject matter hereof.

11    2.    The District Attorneys for the City and County of San Francisco and the County of

12    Los Angeles have the authority, and have exercised the authority, under the laws of the State of

13    California to maintain this action in the name of the People of the State of California concerning

14    the conduct alleged in the First Amended Complaint.

15    3.    This Stipulated Judgment entered into by the parties has been reviewed by the

16    Court, and the Court finds that it has been entered into in good faith and is in all respects just,

17    reasonable, equitable, and adequate.

18    PERMANENT INJUNCTION

19    4.    The injunctive provisions of this Stipulated Judgment shall be applicable to

20    Defendants as well as their subsidiaries, their successors and the assigns of all or substantially all

21    the assets of their businesses; their directors, officers, employees, and agents; and to all persons,

22    corporations, and other entities acting in concert or in participation with any of them with actual or

23    constructive knowledge of this Stipulated Judgment.

24    5.    Pursuant to Business and Professions Code sections 17203 and 17535, Defendants

25    are hereby subject to the following mandatory and prohibitory injunctive provisions related to

26    their technology:

27    ///

1    A.    Defendants shall comply with Business and Professions Code section
2    12500.5 by not selling or using for commercial purposes any weight or measure, or any weighing,
3    measuring, or counting instrument or device, as those terms are used in Business & Professions
4    Code sections 12500 and 12500.5, of a type or design that has not first been permitted, temporarily
5    permitted, or otherwise approved by the California Department of Food and Agriculture's
6    Division of Measurement Standards ("DMS").

7    B.    The technology that Defendants have submitted to DMS and for which
8    Defendants have obtained a Temporary Use Permit from DMS (the "Current Technology") is
9    subject to Business and Professions Code section 12500.5. Any updates or revisions to the
10   Current Technology shall also be subject to Business and Professions Code section 12500.5
11   provided that the updated technology continues to use for commercial purposes any weight or
12   measure, or any weighing, measuring, or counting instrument or device ("Updated Current
13   Technology"). Any future technology used by Defendants shall be subject to Business and
14   Professions Code section 12500.5 provided that the future technology uses for commercial
15   purposes any weight or measure, or any weighing, measuring, or counting instrument or device
16   ("Future Technology").

17   C.    Defendants have submitted the Current Technology to DMS for type
18   evaluation and approval under Business & Professions Code 12500 *et seq.,* and have obtained a
19   Temporary Use Permit. Defendants shall continue to cooperate in good faith with DMS during
20   the type evaluation and approval process of the Current Technology and the type evaluation and
21   approval process for any Updated Current Technology and any Future Technology.

22   D.    In the event DMS informs Defendants that Defendants' Updated Current
23   Technology or Future Technology must be submitted for evaluation, it shall be a violation of this
24   Stipulated Judgment for Defendants to refuse to submit the technology to DMS for evaluation.

25   E.    Once DMS issues a final decision (including deeming an application
26   abandoned) on the application for type evaluation of Defendants' Current Technology, or any
27   application concerning Updated Current Technology or Future Technology, Defendants'

STIPULATED JUDGMENT AND PERMANENT INJUNCTION; Case No. CGC-14-543120 Page - 3

1  subsequent use of that technology in any manner inconsistent with that decision shall constitute a

2  violation of this Stipulated Judgment beginning 60 calendar days after Defendants' receipt of the

3  DMS decision, unless Defendants obtain relief from DMS or a court of appropriate jurisdiction

4  over DMS's final decision.

5      F.    Notwithstanding paragraphs 5(A-E), other than in a proceeding brought by

6  Plaintiff pursuant to Business and Professions Code sections 17200 or 17207 or in further

7  proceedings brought by Plaintiff before this Court to enforce this Stipulated Judgment, Defendants

8  retain any and all rights to dispute the applicability of Business and Professions Code section

9  12500.5 in any proceeding, including any proceeding appealing, reviewing, or seeking relief from

10 a final decision by DMS regarding Defendants' Current or Future Technology.

11     G.    Nothing in this Stipulated Judgment purports to limit, alter, or modify any

12 of the California Department of Food and Agriculture's enforcement capabilities or rights.

13     6.   Pursuant to Business and Professions Code sections 17203 and 17535, Defendants are

14 hereby subject to the following mandatory and prohibitory injunctive provisions related to their

15 representations to the public about the safety of the transportation arranged through the use of their

16 services and the measures Defendants take to ensure customer safety:

17     A.    Defendants shall not make any false or misleading representation or

18 material omission, whether in the form of a comparison or otherwise, regarding the safety of the

19 transportation arranged through the use of their services, or the measures Defendants take to

20 ensure customer safety.

21     B.    In addition to the prohibitions stated in Paragraph 6(A), in any

22 representation regarding the characteristics of Defendants' criminal history and motor vehicle

23 record background checks for California drivers, made by Defendants to the public, including but

24 not limited to representations on Defendants' website, blogs, smartphone application, emails, text

25 messages, or advertising regardless of any form:

26     (i)    Defendants shall not list any offense type that does not result in

27 automatic disqualification of a person as a driver during the initial screening process in California

STIPULATED JUDGMENT AND PERMANENT INJUNCTION; Case No. CGC-14-543120 Page - 4

1   without explaining the disqualification criteria, unless the exception to the disqualification is based

2   upon the ability of the potential driver to produce a Certificate of Rehabilitation (California Penal

3   Code sections 4852.01 through 4852.22) or Pardon (California Penal Code sections 4800 through

4   4813), or equivalent documents issued by another state or the federal government;

5           (ii)    Defendants shall not represent that they screen against arrests for

6   any instances where Defendants actually screen only against convictions; and

7           (iii)    Defendants shall identify the time period covered by the criminal

8   history and motor vehicle record background check report Defendants use to screen potential

9   drivers. For all offense types that are disqualifying, Defendants shall identify any time period

10   used for disqualification purposes.

11           C.    In addition to the prohibitions stated in Paragraph 6(A), Defendants shall

12   not use the following terms in connection with their criminal history and motor vehicle record

13   background checks in California: "best available;" "industry leading;" "leads the industry;" "gold

14   standard;" "safest;" "best-in-class;" "safest ride on the road;" "strictest safety standards possible;"

15   "safest experience on the road;" "best in class safety and accountability;" "safest transportation

16   option;" "background checks that exceed any local or national standard;" "as far back as the law

17   allows;" "the maximum allowable by California law;" or "safest possible platform."

18           D.    In addition to the prohibitions stated in Paragraph 6(A), Defendants shall

19   not represent that their criminal history background check process obtains information from the

20   National Sex Offender Registry.

21           E.    In addition to the prohibitions stated in Paragraph 6(A), Defendants shall

22   not represent that they check sex-offender registries in connection with their criminal history

23   background check process for California drivers unless they provide a clear and conspicuous

24   disclaimer in close proximity to the representation stating that the sex-offender information

25   available to Defendants does not include all registered sex offenders in California, and may not

26   include all out-of-state sex offenders, depending on variations in state law.

27           F.    Paragraphs 6(A) through 6(E) notwithstanding, nothing in this Stipulated

1   Judgment purports to alter, modify, or restrict Defendants' rights under the First Amendment of

2   the United States Constitution.

3       7.      Pursuant to Business and Professions Code sections 17203 and 17535, Defendants

4   are hereby subject to the following mandatory and prohibitory injunctive provisions related to

5   services at airports in California:

6           A.      Defendants shall not encourage, assist or take any affirmative steps to

7   enable Participating Drivers, as defined in Public Utilities Code section 5431(b), to pick-up or

8   drop-off riders on the property of or at any California Airport unless expressly authorized to do so

9   by the airport authority responsible for managing the California Airport. "California Airport"

10  means any airport in California that is either: (1) classified as a Primary Airport by the Federal

11  Aviation Administration, or (2) has notified any of the Defendants that they may not conduct

12  operations without express written permission.

13          B.      Defendants shall take the following actions to prevent Participating Drivers

14  from conducting operations on the property of or into any California Airport unless at least one

15  Defendant is expressly authorized to conduct operations at the California Airport:

16              (i)      Within 60 days of entry of this stipulated judgment, Defendants shall

17  inform all Participating Drivers by means of an in-app pop-up screen that will display when a

18  Participating Driver opens the partner application, via email, and on a conspicuous portion of any

19  webpage through which they communicate with Defendants' drivers in California that:

20                  (a)      All drivers must obey all conditions, rules, or regulations set

21  by any authority at any airport in California, and must obey all conditions, rules, or regulations of

22  the California Public Utilities Commission;

23                  (b)      Defendants will not pay for or reimburse any driver for fines

24  assessed for any citation received at any airport in California, or directly or indirectly pay for, or

25  reimburse, any driver for any costs or fees of any nature, including but not limited to legal fees,

26  civil compromise fees or impound fees incurred by or assessed against any driver in connection

27  with citations at any airport in California; and

1          (c)     Participating Drivers are not allowed to operate at any

2  California Airport unless at least one Defendant has express authority to enable Participating

3  Drivers to operate.  Defendants shall list in the communication all California Airports where

4  Participating Drivers do not have express authority to operate.

5  The headline of the in-app pop-up communication, and the subject line of the email

6  communication shall both state, "IMPORTANT AIRPORT RULES – MUST READ."

7          (ii)     Defendants shall not pay for or reimburse any driver for fines assessed

8  for any citation received at any airport in California, or directly or indirectly pay for, or reimburse,

9  any driver for any costs or fees of any nature, including but not limited to legal fees, civil

10 compromise fees or impound fees incurred by or assessed against any driver in connection with

11 citations at any airport in California.

12          (iii)    Notwithstanding Paragraph 7(B)(ii), it shall not be a violation of this

13 Stipulated Judgment if Defendants pay for a citation received at any airport in California if the

14 citation is issued to Defendants for a violation other than a driver violation.  It shall also not be a

15 violation of this Stipulated Judgment if the citation is issued to Defendants for a driver violation

16 and either of the following: (1) Defendants cannot identify the driver; (2) Defendants do not have

17 the ability to withhold the citation amount from a driver's earnings because the drivers' account is

18 not active.  Nothing in this paragraph requires Defendants to seek reimbursement other than by

19 withholding funds from drivers' earnings.

20          (iv)    Defendants shall, within 90 days of entry of this Stipulated Judgment,

21 implement geo-fence technology to prevent riders from requesting a ride from a Participating

22 Driver from any California Airport unless at least one Defendant is expressly authorized to enable

23 Participating Drivers' operations.  However, if any California Airport issues or has issued a cease-

24 and-desist letter regarding unauthorized drop-offs or pick-ups where no Defendant is expressly

25 authorized to enable Participating Drivers' operations, Defendants shall implement the geo-fence

26 technology 14 days after receipt of the cease-and-desist letter or 14 days after entry of this order,

27 whichever is later.

STIPULATED JUDGMENT AND PERMANENT INJUNCTION; Case No. CGC-14-543120 Page - 7

1    C.    At the end of each Review Period, as defined in Paragraph 8, Defendants
2  shall remit to the City and County of San Francisco and the County of Los Angeles, in equal parts,
3  all net revenue (funds retained by Defendants and not delivered to Participating Drivers) generated
4  as a result of pick-ups or drop-offs at each California Airport where at least one Defendant has not
5  obtained written permission to enable Participating Drivers' operations at that particular airport.
6  Payment shall be made in the same manner as set forth in Paragraph 8(A) and Paragraph 11.

7    D.    Defendants shall not collect from any passenger on any ride to or ride from an
8  airport in California a fee designated as a "toll," or other term that implies the fee is a pass-through
9  of a fee mandated by the airport, unless any Defendant or the Participating Driver actually pays an
10 airport authority the entire fee charged to the passenger for that particular ride.  Nothing in this
11 Stipulated Judgment prohibits Defendants from assessing a surcharge or other added fee for trips
12 to or from airports in California, provided that the surcharge or fee is not described as a "toll" or
13 described in any other terms that imply that the charge is mandated by the airport.

14    E.    Other than in a proceeding brought by Plaintiff pursuant to Business and
15 Professions Code sections 17200 or 17207 or in further proceedings brought by Plaintiff before
16 this Court to enforce this Stipulated Judgment, Defendants retain any and all legal rights and
17 defenses with respect to issues related to California airport operations.

18    F.    Nothing in this Stipulated Judgment purports to alter or modify enforcement
19 capabilities or rights of the California Public Utilities Commission or any governing authority of a
20 California airport.

21                                CIVIL PENALTIES

22    8.    Defendants shall pay, pursuant to Business and Professions Code sections 17206 and
23 17536, a civil penalty in the sum of Twenty-Five Million Dollars ($25,000,000.00), which sum
24 shall be paid as follows:

25    A.    Ten Million Dollars ($10,000,000.00) shall be paid sixty (60) days after the
26 date of entry of this Stipulated Judgment (hereinafter "First Payment").  Pursuant to Government

27

1  Code section 26506, the First Payment shall be made as follows:  A check in the sum of Five

2  Million Dollars ($5,000,000.00)  made payable to the City and County of San Francisco; and a

3  check in the sum of Five Million Dollars ($5,000,000.00) made payable to the County of Los

4  Angeles.

5          B.      An additional Fifteen Million Dollars ($15,000,000.00) shall be paid no

6  later than eight hundred fifty (850) days after the date of entry of this Stipulated Judgment

7  (hereinafter "Second Payment").  If the 850th day falls on a weekend or holiday, the Second

8  Payment shall be made on the first business day after the 850th day.  Pursuant to Government

9  Code section 26506, the Second Payment shall be made as follows:  A check in the sum of Seven

10  Million, Five Hundred Thousand Dollars ($7,500,000.00) made payable to the City and County of

11  San Francisco; and a check in the sum of Seven Million, Five Hundred Thousand Dollars

12  ($7,500,000.00) made payable to the County of Los Angeles.

13          C.      Defendants shall make the Second Payment on the date specified in

14  Paragraph 8(B) above, unless notified by Plaintiff in writing that the Second Payment has been

15  permanently stayed pursuant to Paragraph 8(F). Upon Defendants' request, Plaintiff shall provide

16  written notification of the basis for the determination made under Paragraph 8(F).

17          D.      Defendants shall be subject to two review periods (hereinafter "Review

18  Period") during the pendency of the Second Payment in order to determine whether the Second

19  Payment shall be permanently stayed.  The first Review Period shall commence one year after

20  entry of this Stipulated Judgment, or the first business day thereafter if the one-year anniversary

21  falls on a weekend or holiday.  The second Review Period shall commence two years after the

22  entry of this Stipulated Judgment, or the first business day thereafter if the second anniversary

23  falls on a weekend or holiday.  Defendants shall provide the following information on the day that

24  each Review Period begins:

25          (i)      A certification under penalty of perjury by an Officer of Uber

26  Technologies, Inc. and by an Officer or Director of each Limited Liability Company defendant,

27  that – to the best of his or her knowledge – the Defendant has fully complied with each of the

1  terms and conditions of this Stipulated Judgment;

2  (ii)   A copy of every representation in a corporate publication – whether

3  on a web-site, blog, written communication, or electronic communication – regarding the safety of

4  the transportation arranged through the use of Defendants' services, and the measures Defendants

5  take to ensure customer safety, since entry of this Stipulated Judgment. Defendants shall endeavor

6  in good faith to provide a copy of every statement made by a spokesperson or representative of

7  Defendants to California residents regarding the safety of the transportation arranged through the

8  use of Defendants' services, and the measures Defendants take to ensure customer safety, since

9  entry of this Stipulated Judgment. Defendants shall also include sufficient information to

10  demonstrate their efforts to cure any statement described in Paragraph 8(G)(c), below;

11  (iii)   A copy of every representation in a corporate publication – whether

12  on a web-site, blog, written communication, or electronic communication – concerning or relating

13  to Defendants' ability to operate at California Airports since entry of this Stipulated Judgment.

14  Defendants shall endeavor in good faith to provide a copy of every statement made by a

15  spokesperson or representative of Defendants to California residents regarding Defendants' ability

16  to operate at California Airports made by Defendants since entry of this Stipulated Judgment;

17  (iv)   A list of all California Airports where Defendants have operated at

18  any time since entry of this Stipulated Judgment and evidence sufficient to show the express

19  authorization provided to Defendants to operate at those airports;

20  (v)   A copy of all cease-and-desist letters received by Defendants from a

21  California Airport and, for each such cease-and-desist letter received, a statement describing the

22  measures taken by Defendants to comply with the terms of Paragraph 7 of this Stipulated

23  Judgment for that airport, and a statement of the number of trips to that airport made by

24  Participating Drivers after Defendants received the cease-and-desist letter, or after the date of

25  entry of this Stipulated Judgment, whichever is later; and

26  (vi)   A list of additional fees charged to consumers for travel to or from

27  an airport in California. For each airport, the list shall specify the name of the fee, the amount of

1    each fee, and the total fees collected for travel to or from that airport; whether said fees are

2    retained by Defendants, paid to a driver, or paid to an agency; the amount of each fee and the total

3    fees paid to an agency; and the name of the agency receiving the fee. Defendants shall also

4    provide a copy of every representation in a corporate publication – whether on a web-site, blog,

5    written communication, or electronic communication – related to said fees. Defendants shall

6    endeavor in good faith to provide a copy of every statement made by a spokesperson or

7    representative of Defendants to California residents concerning or relating to said fees.

8            E.     Within 45 days after receiving the information in specified in subparagraph

9    8(D), above, Plaintiff will notify Defendants if it requests any additional information that is

10    reasonably necessary to determine compliance with this Stipulated Judgment. If any such

11    information is requested by Plaintiff, Defendants will provide such information to Plaintiff within

12    45 days of the request.

13            F.     The Second Payment shall be permanently stayed if Plaintiff determines, in

14    good faith, that Defendants have complied with this Stipulated Judgment after the date of the entry

15    of the Stipulated Judgment. Notwithstanding Paragraph 8(C), if Plaintiff determines that

16    Defendants have violated the Stipulated Judgment after the first Review Period specified in

17    Paragraph 8(D) above, the Second Payment shall become due sixty (60) days after Plaintiff gives

18    written notice of its determination.

19            G.     The foregoing notwithstanding, none of the following shall be a basis for

20    Plaintiff to make a good faith determination that the Second Payment is due: (a) any statement

21    made by a spokesperson of any Defendant to a legislative body regarding an issue of public safety;

22    (b) any statement made by a spokesperson of any Defendant in response to an inquiry from the

23    press regarding an issue of public safety; (c) any statement that Defendants cured within 45 days

24    of publication, except that if the statement was brought to the attention of Defendants by the

25    District Attorneys of Los Angeles County or San Francisco County, the cure period shall be 21

26    days; and (d) any unauthorized airport trip by a Participating Driver for which Defendants have

27    made a full payment pursuant to the terms of Paragraph 7(C). For purposes of this subparagraph,

1    a cure must include taking down the statement from any websites or blogs, and in the case of an

2    in-app communication or mass electronic communication such as an email, MMS, or SMS, a

3    retraction made in like-form.

4        9.    In the event that Defendants dispute whether Plaintiff's determination in Paragraph

5    8 was reasonable, Defendants may seek review from this Court of Plaintiff's determination by

6    paying the Second Payment into escrow with this Court and making a motion with this Court for

7    review of Plaintiff's determination.  In any such review, Defendants shall have the burden of

8    proving by preponderance of the evidence that Plaintiff's determination was unreasonable for any

9    reason including, but not limited to, whether there was a violation of the Stipulated Judgment.

10       10.    The Second Payment shall not affect Plaintiff's right to seek enforcement of this

11   Stipulated Judgment by the Court, penalties for violations of this Stipulated Judgment, and any

12   other remedy at law or in equity, including but not limited to the right to file a new action under

13   Business and Professions Code sections 17200, 17207, 17500 or 17537 for violations occurring

14   after the date of entry of this Stipulated Judgment.

15       11.    All payments required to be paid pursuant this Stipulated Judgment shall be sent to

16   the San Francisco District Attorney's Office, Attention June D. Cravett, 732 Brannan Street, San

17   Francisco, California 94103.

18       REQUESTS FOR INFORMATION TO VERIFY COMPLIANCE

19       12.    Within four (4) years after entry of this Stipulated Judgment, Plaintiff's counsel

20   may make request to Defendants for information and documents showing their compliance with

21   any provision(s) of the injunctive terms of this Stipulated Judgment. Defendants shall furnish such

22   information and documents within 45 days after the request is made.

23       RETENTION OF JURISDICTION, ATTORNEYS' FEES, FILING FEES

24       13.    Jurisdiction is retained by the Court for the purpose of enabling Plaintiff or

25   Defendants to apply to the Court at any time for such further orders and directions as are necessary

26   or appropriate for the carrying out of this Stipulated Judgment, the enforcement of compliance .

27   with this Stipulated Judgment, the punishment of violations of this Stipulated Judgment, or for

1  such other and further orders as may be required to modify or to carry out any of the terms of this

2  Stipulated Judgment.

3       14.    Reasonable attorneys' fees incurred by Plaintiff as a result of any violation of this

4  Stipulated Judgment, if such violation is proven in a court of law, shall be recoverable as costs

5  pursuant to California Code of Civil Procedure sections 685.040 and 1033.5(a)(10)(A).

6                                EFFECTIVE DATE

7       15.    This Stipulated Judgment shall take effect immediately upon entry thereof, without

8  further notice to Defendants.

9       16.    The clerk is ordered to enter this Stipulated Judgment forthwith.

10

11  DATED: _April 7, 2016_

12                                         _____

13                                         THE HON. MARY E. WISS
                                           JUDGE OF THE SUPERIOR COURT

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**Superior Court of California**
County of San Francisco

THE PEOPLE OF THE STATE OF
CALIFORNIA,

       Plaintiff(s)

    vs.

UBER TECHNOLOGIES, INC., ET AL.

       Defendant(s)

Case Number:   CGC-14-543120

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.260(g))

  I, Sean Kane, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

  On April 7, 2016, I electronically served the STIPULATED JUDGMENT AND PERMANENT INJUNCTION via File&ServeXpress® on the recipients designated on the Transaction Receipt located on the File&ServeXpress® website.

Dated:  April 7, 2016

        T. Michael Yuen, Clerk

By:  _Sean Kane_
      Sean Kane, Deputy Clerk

# EXHIBIT B

1  WILLIAM L. STERN (CA SBN 96105)
   WStern@mofo.com
2  CLAUDIA M. VETESI (CA SBN 233485)
   CVetesi@mofo.com
3  ALEXANDRA E. LAKS (CA SBN 291861)
   ALaks@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California 94105-2482
   Telephone: 415.268.7000
6  Facsimile: 415.268.7522

7  ARIEL F. RUIZ (CA SBN 305488)
   Ariel.Ruiz@uber.com
8  UBER TECHNOLOGIES, INC.
   1455 Market Street
9  San Francisco, California 94103
   Telephone:    415.391.4800
10

11 Attorneys for Defendants
   UBER TECHNOLOGIES, INC., RASIER, LLC, and
12 RASIER-CA, LLC

13
                    SUPERIOR COURT OF CALIFORNIA
14
                       COUNTY OF SAN FRANCISCO
15

16
   THE PEOPLE OF THE STATE OF           Case No. CGC-14-543120
17 CALIFORNIA,

18              Plaintiff,              **DECLARATION AND
                                        CERTIFICATION OF GAUTAM
19         v.                           GUPTA PURSUANT TO
                                        PARAGRAPH 8(D)(I) OF THE
20 UBER TECHNOLOGIES, INC., a Delaware  STIPULATED JUDGMENT AND
   Corporation; RASIER, LLC, a Delaware Limited  PERMANENT INJUNCTION**
21 Liability Company; RASIER-CA, LLC, a
   Delaware Limited Liability Company; and DOES
22 1 through 100, inclusive,            Department:   305
                                        Judge:        Hon. Mary E. Wiss
23              Defendants.

24

25

26

27

28
                                          1
   DEC. AND CERT. OF G. GUPTA PURSUANT TO PARA. 8(D)(I) OF THE STIP. JUDGMENT AND PERM. INJUNCTION

   sf-3767798

1  I, Gautum Gupta, declare as follows:

2      1.      I am the Head of Finance for Uber Technologies, Inc., as well as a Director of

3  Raiser-LLC and Raiser-CA (collectively "Uber"). I am also a signatory to the April 7, 2016

4  Stipulation for Entry of Judgment and Permanent Injunction ("Stipulated Judgment") on behalf of

5  Uber. I submit this Declaration and Certification pursuant to Paragraph 8(D)(i) of the Stipulated

6  Judgment. I have personal knowledge of the matters and facts set forth within, and, if called and

7  sworn as a witness, I would and could competently testify thereto.

8      2.      Paragraph 8(D)(i) requires that, in conjunction with Uber's reporting requirements

9  during the First Review Period as defined within the Stipulated Judgment, Uber must submit a

10  certification under penalty of perjury by an Officer of Uber and by an Officer or Director of each

11  Limited Liability Company defendant that – to the best of his or her knowledge, the Defendant

12  has fully complied with each of the terms and conditions of this Stipulated Judgment." (Stip. J.

13  ¶ 8(D)(i).) As an Officer of Uber and Director of the Uber Limited Liability defendants in this

14  Action, I submit this certification hereto.

15      3.      It is my understanding that the Stipulated Judgment includes terms and conditions

16  with respect to the following categories of information: (1) Uber's submission of its technology to

17  the California Department of Food and Agriculture's Division of Measurement and Standards

18  ("DMS"); (2) Uber's representations regarding safety and background check information; and

19  (3) Uber's operations and fees charged at California Airports. Moreover, the Stipulated Judgment

20  includes reporting Requirements within these categories. I describe Uber's obligations under the

21  Stipulated Judgment with respect to each of these categories below. I then certify that Uber has

22  met—and/or is meeting—these requirements.

23              **UBER'S OBLIGATIONS UNDER THE STIPULATED JUDGMENT**

24      4.      **DMS Obligations.** Paragraph 5 of the Stipulated Judgment includes mandatory

25  and prohibitive injunctive provisions with respect to Uber's obligations to DMS. These

26  provisions: (1) prohibit Uber from using any instrument or device that hasn't been permitted or

27  approved, at least temporarily, by DMS (Stip. J. ¶ 5(A)); (2) require Uber to receive DMS

28

1   approval for updates or revisions to its current technology (*id.* ¶ 5(B)); (3) require Uber to

2   continue to cooperate with DMS in good faith during the DMS type evaluation and approval

3   process (*id.* ¶ 5(C)); (4) require Uber to submit its technology to DMS if DMS informs Uber it

4   must do so (*id.* ¶ 5(D)); and (5) require Uber to comply with any final decision issued by DMS

5   beginning 60 calendar days after receipt of the DMS decision. (*Id.* ¶ 5(E).)

6       5.    **Safety and Background Check Obligations.** Paragraph 6 of the Stipulated

7   Judgment includes mandatory and prohibitory injunctive provisions related to Uber's public

8   representations regarding safety and background check issues. These provisions: (1) prohibit

9   Uber from making any false or misleading representation or material omission regarding safety or

10  Uber's measures to ensure safety (*id.* ¶ 6(A)); (2) with respect to Uber's representations regarding

11  its background check processes for California drivers, prohibit Uber from (i) listing any offense

12  type that doesn't result in automatic disqualification during the initial screening process in

13  California without explaining the disqualification criteria, (ii) representing that Uber screens

14  against arrests for certain offenses if the screen is actually for convictions, and (iii) require Uber

15  to identify the time period covered by the background check used to screen potential drivers and,

16  if a certain offense is disqualifying, to identify the time period used for disqualifying purposes (*id.*

17  ¶ 6(B)(i)-(iii)); (3) prohibit Uber from using certain terms in connection with describing its

18  background check processes in California (*id.* ¶ 6(C)):[1] (4) prohibit Uber from stating that its

19  background check process obtains information from the National Sex Offender Registry (*id.* ¶

20  6(D)); (5) prohibit Uber from stating that its background check process obtains information from

21  sex-offender registries for California drivers unless otherwise accompanied by specific

22  disclaimers. (*Id.* ¶ 6(E).)[2]

23      [1] Those terms include the following: "best available," "industry leading," "leads the

24  industry," "gold standard," "safest," "best-in-class," "safest ride on the road," "strictest safety
    standards possible," "safest experience on the road," "best in class safety and accountability,"

25  "safest transportation option," "background checks that exceed any local or national standard,"
    "as far back as the law allows," "the maximum allowable by California law," and "safest possible

26  platform." (*Id.* ¶ 6(C).)

27      [2] These disclaimers include a statement that sex-offender information available to Uber
    does not include all registered sex-offenders in California, and may not include all out-of-state

28  sex offenders, depending on variations in state law. (*Id.* ¶ 6(E).)

3

1          6.      **Obligations Regarding Operations and Fees Charged at California Airports.**

2   Paragraph 7 of the Stipulated Judgment includes mandatory and prohibitory injunctive provisions

3   related to Uber's services at California Airports.  These provisions: (1) prohibit Uber from

4   encouraging, assisting, or affirmatively enabling Uber drivers from picking-up or dropping-off

5   riders at any California Airport[3] unless Uber is expressly authorized to do so by the airport

6   authority operating such airport (Stip. J. ¶ 7(A)); (2) require Uber, within 60 Days of the

7   Stipulated Judgment, to inform drivers via an in-app pop up, an email with the headline

8   "IMPORTANT AIRPORT RULES – MUST READ," and on an obvious part of the website that

9   (i) partners must obey all conditions, rules, or regulations set by any California airport authority

10  or the California Public Utilities Commission, (ii) Uber will not pay or reimburse drivers for any

11  fine or fees in connection with citations at any airport, and (iii) partners cannot operate at any

12  California Airport unless Uber has the express authority to do so, and include a list of airports

13  where partners do not have express authority to operate (*id.* ¶ 7(B)(i)(a)-(c)); (3) prohibit Uber

14  from paying for or reimbursing drivers for fines assessed for any citation received at a California

15  airport or costs associated with the same (*id.* ¶ 7(B)(ii)); (4) require Uber to implement geo-fence

16  technology within 90 days of entry of the Stipulated Judgment to prevent riders from requesting

17  rides from any California Airport unless Uber has express authorization otherwise to operate at

18  such airport, or to implement geo-fence technology at a California Airport that has issued a cease-

19  and-desist letter to Uber within 14 days after receipt of such a letter,  or 14 days after entry of the

20  Stipulated Judgment, whichever is later (*id.* ¶ 7(B)(iv)); (5) require Uber to remint net revenues

21  generated as a result of unauthorized trips to California Airports to the City and County of San

22  Francisco and the County of Los Angeles (*id.* ¶ 7(C)); and (6) prohibit Uber from charging any

23  fee designated as a "toll," or using any other term that implies the fee is a pass-through fee

24  mandated by an airport authority, unless the entire amount is paid to the airport authority in that

25  amount.  (*Id.* ¶ 7(D).)

26          [3] "California Airport" is defined as any airport in California that is either: (1) classified as
    a "Primary Airport" by the Federal Aviation Administration; or (2) has notified any of the
27  Defendants that they may not conduct operations without express written permission.  (Stip. J. ¶
    7(A).)
28

4

DEC. AND CERT. OF G. GUPTA PURSUANT TO PARA. 8(D)(I) OF THE STIP. JUDGMENT AND PERM. INJUNCTION

sf-3767798

28

7.     **Civil Penalties Requirements.** Paragraph 8 of the Stipulated Judgment outlines civil penalties imposed on Uber.  Paragraph 8(A) requires Uber to pay $10 million dollars ($5 million to the City and County of San Francisco and $5 million to the County of Los Angeles) 60 days after the Stipulated Judgment is entered.  Paragraph 8(B) of the Stipulated Judgment also requires Uber to make a second payment of $15 million dollars ("Second Payment") no later than 850 days after the entry of the Stipulated Judgment unless, under Paragraph 8(B), the District Attorneys notify Uber in writing that the Second Payment has been permanently stayed.

8.     **Reporting Requirements.** Paragraph 8(D) requires Uber to provide information during two review periods—the first commencing one year after entry of the Stipulated Judgment and the second commencing two years after entry of the Judgment, to determine whether the Second Payment should be stayed.  Uber is required to provide the following: (1) a certification under penalty of perjury by an officer of Uber and by an officer or director of each LLC defendant that Uber has fully complied with the terms and conditions of the judgment (Stip. J. ¶ 8(D)(i)); (2) a copy of every representation since April 11, 2016 made in a corporate publication (including website, blog, etc.) regarding Uber's safety and the measures it has taken to ensure safety (*id.* ¶ 8(D)(ii)); (3) a copy of every representation since April 11, 2016 in a corporate publication (including website, blog, etc.) relating to Uber's ability to operate at CA airports (*id.* ¶ 8(D)(iii)); (4) a list of all California Airports where Uber has operated since entry of the Stipulated Judgment, and evidence to show express authorization at these airports (*id.* ¶ 8(D)(iv)); (5) a copy of all cease and desist letters Uber received from a California Airport, and for each letter, a statement describing the measures Uber has taken to comply with the judgment, a statement of the number of trips to that airport made by partners after Uber received the letter (or after April 11, 2016, whichever is later) (*id.* ¶ 8(D)(v)); (6) information regarding additional fees charged to riders for at each California Airport at which Uber has operated,[4] as well as a copy of

---

[4] This information includes: (i) the name of the fee; (ii) the amount of the fee; (iii) the total fees collected for that airport; (iv) whether the fees were kept by Uber, paid to a partner, or paid to an agency; (v) the amount of the fees paid to an agency; and (vi) the name of the agency receiving the fee. (*Id.* ¶ 8(D)(vi).)

5

1  every representation made in a corporate publication (including website, blog, etc.) regarding any
2  additional fees charged related to airport rides.  (*Id.* ¶ 8(D)(vi).)

3  ## CERTIFICATION OF COMPLIANCE

4        9.    I certify, that, to the best of my knowledge, Uber has worked in good faith to
5  comply—and/or is working to comply—with each of the terms and conditions of this Stipulated
6  Judgment.

7

8  I declare under penalty and perjury of the laws of the State of California that the foregoing is true
9  and correct.  Executed this 6th day of June, 2017.

10

11  _____
12               Gautum Gupta

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEC. AND CERT. OF G. GUPTA PURSUANT TO PARA. 8(D)(I) OF THE STIP. JUDGMENT AND PERM. INJUNCTION

sf-3767798

# EXHIBIT C

CITY AND COUNTY OF SAN FRANCISCO          OFFICE OF THE DISTRICT ATTORNEY



George Gascón                              Ernst A. Halperin
District Attorney                          Assistant District Attorney
                                           Direct Dial (415) 551-9545
                                           email: ernst.halperin@sfgov.org

April 14, 2017

VIA EMAIL AND FIRST CLASS MAIL (ariel.ruiz@uber.com)
Ariel Ruiz, Esq.
Uber Technologies, Inc.
1455 Market St., Fl. 4
San Francisco, CA 94103

      Re:   *The People of the State of California v. Uber Technologies, et al.*
           (S.F. Sup. Ct. No. CGC-14-543120)

Dear Mr. Ruiz:

      The April 7, 2016 Stipulated Judgment and Permanent Injunction entered in the above-referenced matter required Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC to gather and provide to the San Francisco and Los Angeles County District Attorneys extensive information concerning the defendants' activities in the year since entry of the Permanent Injunction, as well as certifications under penalty of perjury by Officers of the Defendants that each defendant had fully complied with each of the terms and conditions of the Permanent Injunction. Paragraph 8(D) of the Permanent Injunction required the Defendants to provide this information on April 7, 2017.

      From what Uber has communicated to us since we contacted Uber on April 11 to inquire about the missing information, it appears that the defendants have not taken any steps to collect the required information during the year since entry of the Permanent Injunction, or even begun the data processing necessary to provide the required information. To date, the defendants have provided nothing to the District Attorneys.

      Pursuant to Paragraph 8(F) of the Permanent Injunction, the People of the State of California have determined that the defendants have violated the Stipulated Judgment and Permanent Injunction. The Second Payment specified in Paragraph 8(B) is due within 60 days.

                        Very truly yours,

                        GEORGE GASCÓN
                        District Attorney
                        City and County of San Francisco

                        By Ernst A. Halperin
                        Assistant District Attorney

Cc: William Stern, Esq. (wstern@mofo.com)

# EXHIBIT D

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE DISTRICT ATTORNEY



George Gascón                                       Ernst A. Halperin
District Attorney                                   Assistant District Attorney
                                                    Direct Dial (415) 551-9545
                                                    email: ernst.halperin@sfgov.org

*Via email (WStern@mofo.com)*
William E. Stern, Esq.
Morrison Foerster
450 Market Street
San Francisco, CA 94105

April 19, 2017

Re:   *People of the State of California v. Uber Technologies, Inc. et al.*
      *(SF Sup. Ct. Case No. 14-CGC-14-543120) – First Review Period*

Dear Mr. Stern:

          This letter responds to the voice mail you left me after receiving my Friday, April 14th
letter. Your voice mail minimized the importance of Uber's failure to gather and provide to the
People the extensive information required by the Permanent Injunction during the past year.
Uber's failure is not a "technical" breach of the Injunction, as your voice mail implied. First, the
Injunction contemplated that Uber would self-monitor and document its compliance throughout
the year in order to catch potential violations of the Injunction before they became systemic.
Second, providing the required information to the People within the time limits specified by the
Injunction was Uber's first opportunity to demonstrate to both the People and the Court that it
took its obligations under the Injunction seriously. Third, the Injunction required Uber to
provide the information in order to aid the People in determining whether additional law
enforcement action might be needed to address any violations of the Unfair Competition and
False Advertising laws occurring since entry of the Permanent Injunction. See Paragraph 10 of
the Permanent Injunction, which provides that the Second Payment shall not affect the People's
right to seek enforcement of the Injunction, penalties for violation of the Injunction, or to file a
new action for violations occurring after the date of entry of the Injunction.

          Your voice mail's characterization of Uber's violation as somehow an issue that should
be revisited after Uber has provided the People with the information required by Paragraph 8(D)
of the Injunction ignores the fact that the Injunction required Uber to take proactive steps
throughout the year to comply with its mandates. For example, Paragraph 7 (prohibiting
unauthorized operations at California airports and fake airport toll charges) required Uber to
implement geo-fence technology within 90 days to prevent riders from requesting a ride from
any California airport where Uber had not received express authority to operate, and within 14
days after Uber received a cease-and-desist letter. Paragraph 7 also prohibited Uber from
reimbursing drivers for airport citations and required Uber to re-program its Driver app within

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE DISTRICT ATTORNEY

William E. Stern, Esq.                                                    Page 2
April 19, 2017

the first 60 days of the Injunction with pop-up screens warning drivers that Uber would no longer
pay for their legal fees or reimburse them for airport citations. To ensure compliance with
Paragraph 7's provisions, Paragraph 8(D)(iii through vi) of the Injunction required Uber to:

- gather its representations to consumers concerning Uber's ability to operate at
  California airports and its representations concerning airport fees,
- develop a list of all California airports where Uber operates and evidence
  sufficient to show express authorization to operate at those airports,
- collect cease-and-desist letters Uber received from California airports, and for
  each cease-and-desist letter, determine the number of trips to each such airport
  after Uber received a cease-and-desist letter,
- analyze the fees Uber collects for travel to and from each California airport to
  determine whether the fees are retained by Uber, paid to a driver, or paid to an
  agency, and
- calculate the total fees Uber collected at each California airport as well as the
  total fees paid to each airport agency.

Uber has not even begun the data-processing necessary to implement these procedures that were
designed to have allowed it to monitor its own behavior and catch potential violations of the
Injunction before they became systemic.

The Injunction also contemplated that Uber would proactively monitor its representations
to consumers regarding the safety of the transportation arranged through Uber and the measures
Uber takes to ensure customer safety. This is reflected in the provision of Paragraph 8(G) (added
to the Injunction at the insistence of Uber) which states that any statement Uber cured within 45
days of publication cannot be the basis for a determination that the Second Payment is due. It
was especially important for Uber to gather these representations as they were made throughout
the year given the fact that Uber admitted to the Court during this litigation that, "Uber
frequently updates its website, and it does not archive actual versions of previous webpages to
reflect each change made since the inception of the site in the normal course of its business."
(See Defendants' Response Separate Statement re People's First Set of Demands for Production,
Request for Production No. 1).

The People stand by the determination that Uber violated the Injunction. The Second
Payment remains due by June 14th. Your voice mail said that Uber may seek judicial review of
the People's determination. Paragraph 9 of the Injunction requires Uber to deposit the Second
Payment with the Court in order to make a motion with the Court for review, and that Uber bears
the burden of proving by a preponderance of the evidence that there was no violation of the
Injunction.

Finally, whether or not Uber decides to pay the Second Payment or deposit it with the
Court, Uber still must provide the People all of the information required by Paragraph 8(D) of
the Permanent Injunction. In your voice mail you committed to get the information that was due
April 7th as quickly as you could, in contrast to your statements earlier last week that the data
processing necessary to provide the information would have to wait in line with other Uber data
processing projects, and that production would be on a rolling basis. Nevertheless, Uber has still

CITY AND COUNTY OF SAN FRANCISCO          OFFICE OF THE DISTRICT ATTORNEY

William E. Stern, Esq.                                           Page 3
April 19, 2017

not committed to a firm date for providing the extensive information it should have been
gathering throughout the past year.  Please provide all of the information and the certification
required by the Permanent Injunction no later than April 28th.

                           Very truly yours,

                           GEORGE GASCÓN
                           District Attorney
                           City and County of San Francisco

                           Ernst A. Halperin   Digitally signed by Ernst A.
                                                Halperin
                                                Date: 2017.04.19 09:21:59 -07'00'
                           _____
                           By Ernst A. Halperin
                           Assistant District Attorney

# EXHIBIT E

**MORRISON** | **FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA 94105-2482

TELEPHONE: 415.268.7000
FACSIMILE: 415.268.7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS,
DENVER, HONG KONG, LONDON,
LOS ANGELES, NEW YORK,
NORTHERN VIRGINIA, PALO ALTO,
SAN DIEGO, SAN FRANCISCO, SHANGHAI,
SINGAPORE, TOKYO, WASHINGTON, D.C.

April 25, 2017

Writer's Direct Contact
+1 (415) 268.7637
WStern@mofo.com

**By email ernst.halperin@sfgov.org**

Ernst A. Halperin
Assistant District Attorney
Special Prosecutions Unit
Office of the District Attorney
City and County of San Francisco
732 Brannan Street
San Francisco, CA 94103

Re:     *People of the State of California v. Uber Technologies, Inc. et al.*, SF Sup. Ct. Case No.
        14-CGC-14-543120 – First Review Period

Dear Ernst:

This is in response to your letter of April 19, 2017. It is not my intent to set off an exchange
of competing letters. But there are things raised in your letter that I cannot let go
unaddressed.

**First**, Uber does not dispute that it is late in filing its first anniversary compliance reports
pursuant to Paragraph 8(D). I said that when we first spoke last week. Nevertheless, Uber
carried out a strict compliance program (discussed next) and instituted a compliance program
and reporting timeline.

**Second**, Uber categorically denies the implication that it failed to proactively self-monitor or
implement the compliance program. To the contrary, Uber in-house counsel, Seth
Schreiberg, supervised a team that took several immediate and continuing steps to comply
with the obligations imposed by the settlement, including implementing the airport rules
(geofencing, obtaining permits), ensuring that the required communications to TNC drivers
regarding the airport rules (in-app, email, web) would be implemented, doing a full review of
safety marketing, communicating to teams regarding the action and settlement, including
internal privileged communications, guidance, and ongoing training on the terms and actions
that could not be used or done pursuant to the agreement, as well as discussions with Uber's
safety policy team and other teams that are responsible for various forms of messaging.

sf-3761597

**38**

MORRISON | FOERSTER

Ernst A. Halperin
April 25, 2017
Page Two

**Third**, I didn't ask for an extension or forbearance on your part. What I told you was that I was disappointed that you invoked the penalty provision. I also told you Uber fully intends to comply with the requirements of Paragraph 8(D) and it is pressing forward to get those materials to you on a rolling basis. We will have a bounty of documents for your review.

**Fourth**, notwithstanding your comment, I do intend to revisit the issue of the penalty pursuant to Paragraph 8(F) once we have produced the materials and you have had a chance to review them and make a good faith determination of compliance. I would think that Judge Wiss would expect this of us before we seek the Court's assistance.

Sincerely,

William L. Stern

# EXHIBIT F

| | |
|---|---|
| **From:** | Stern, William L. |
| **Sent:** | Thursday, June 08, 2017 10:36 AM |
| **To:** | Ernst Halperin |
| **Cc:** | HChun@da.lacounty.gov; jmcgrath@da.lacounty.gov; swilliams@da.lacounty.gov; CCurtis@da.lacounty.gov; june.cravett@sfgov.org; sean.kiley@sfgov.org; evan.ackiron@sfgov.org; phoebe.maffei@sfgov.org; chloe.mosqueda@sfgov.org; Ariel Ruiz (ariel.ruiz@uber.com); Vetesi, Claudia M.; Laks, Alexandra |
| **Subject:** | People v. Uber |

Ernst:

In your April 14, 2017 letter, the District Attorneys gave notice that Uber was in violation of the Stipulated Judgment, and that the Second Payment would be due in 60 days (by June 14, 2017) pursuant to Paragraph 8(F).  With our production yesterday, Uber has now completed its production under the Stipulated Judgment.  We are also in the process of preparing checks concerning the payments that are due under the Stipulated Judgment, and these will be sent shortly.

We produced a substantial amount of material, and I assume that you and your colleagues are (or, soon will be) reviewing what we produced.  I further assume that, in order to make a determination as to Uber's compliance, you and your colleagues may very well have further questions or follow-up.  We stand ready to respond and to fully cooperate.

In the meantime, to give the parties some breathing room, I would request that the District Attorneys toll the June 14 deadline.  Note, I am asking only that you agree to *toll*, not that you agree to "restart the clock" if your offices were to determine that Uber's responses are deficient.  This request would be without waiver of the People's rights under the Stipulated Judgment, and the People would retain their right to end the tolling period once your offices complete your review and you have made your good faith determination of compliance.

As I said in my April 25 letter, Uber does not dispute that it is late in filing its first anniversary compliance reports pursuant to Paragraph 8(D).  I like to think, however, that despite our differences, we share a common goal of addressing issues of substance first, and attempting to narrow them.

I am around all day today and tomorrow, if you or your colleagues would prefer to discuss live.

Thank you for your consideration of this request.

Regards,

Will

1

**41**

# EXHIBIT G

**PUBLIC-Redacts materials from sealed record.**

CITY AND COUNTY OF SAN FRANCISCO          OFFICE OF THE DISTRICT ATTORNEY



George Gascón                                  Ernst A. Halperin
District Attorney                              Assistant District Attorney
                                               Direct Dial (415) 551-9545
                                               email: ernst.halperin@sfgov.org

*Via email (WStern@mofo.com)*
William E. Stern, Esq.
Morrison Foerster
450 Market Street
San Francisco, CA 94105

June 12, 2017

Re:  *People of the State of California v. Uber Technologies, Inc. et al.*
     *(SF Sup. Ct. Case No. 14-CGC-14-543120) – First Review Period*

Dear Mr. Stern:

This letter responds to the request set forth in your letter of June 7, 2017 and further email of June 8, 2017 asking the People to "toll" the June 14, 2017 deadline for Uber to deposit the second payment into Court. The People decline your request.

On April 14, 2017, the People notified the defendants in writing of the People's determination that the defendants had violated the Stipulated Judgment and Permanent Injunction. The People's letter explained that the Judgment required your clients to gather and provide to the People extensive information concerning the defendants' activities in the year since the April 7, 2016 entry of the Judgment, as well as certifications under penalty of perjury by Officers of the Defendants that each defendant had fully complied with the terms and conditions of the Judgment. From what you had communicated to us during the week of April 10, it was apparent that the defendants had not taken any steps to collect the required information during the year since entry of the Judgment, or even begun the data processing necessary to provide the required information.

The People further elaborated via letter dated April 19th in response to a voice mail you left in which you minimized the importance of your clients' failures. As pointed out in the People's April 19th letter, your clients' failures are not a simple "technical" breach of the Judgment. First, the Judgment contemplated that your clients would self-monitor and document their compliance throughout the year in order to catch potential violations of the Judgment before they became systemic. Second, providing the required information to the People within the time limits specified by the Judgment was your clients' first opportunity to demonstrate to both the

CITY AND COUNTY OF SAN FRANCISCO

OFFICE OF THE DISTRICT ATTORNEY

William E. Stern, Esq.
June 12, 2017

Page 2

People and the Court that they took their obligations under the Judgment seriously. Third, the Judgment required your clients to provide the information in order to aid the People in determining whether additional law enforcement action might be needed to address any violations of the Unfair Competition and False Advertising laws occurring since entry of the Judgment. See Paragraph 10 of the Judgment, which provides that the Second Payment shall not affect the People's right to seek enforcement of the Judgment, penalties for violation of the Judgment, or to file a new action for violations occurring after the date of entry of the Judgment.

The missed deadline and People's notice set off a scramble by your clients to collect information that your clients should have been organizing throughout the prior year if they had been serious about effectively monitoring their operations in order to fully comply with each of the terms and conditions of the Judgment. It took your clients three weeks after the People's notice to produce any documents or information at all. Then, over the ensuing five weeks your clients produced an unorganized data dump instead of a well-organized proof that your clients had fully complied with each of the terms and conditions of the Judgment. Moreover, your firm produced the documents in a manner that makes review difficult and obscures whether your clients had even begun the document collection and data-gathering process until after the deadline. You produced images of the documents – not the documents themselves – and stripped from your clients' production all of the metadata fields for authors, recipients, creation dates, and collection dates of the disorganized mass of materials you produced.

The People's April 14 and April 19 letters explained the basis for the People's determination that your clients had violated the Judgment. As explained in these communications, the Judgment required Uber to take proactive steps throughout the year to comply with its mandates and to ensure that isolated incidents did not become systemic. It was also especially important for the defendants to gather their safety representations to the public as they were made throughout the year given the fact that the defendants admitted to the Court during this litigation that they do not archive actual versions of previous webpages when they make changes to those pages.

The People's review of your clients' materials to-date confirms that your clients' failures allowed what could have been isolated instances to instead blow up into systemic problems. Your letter from this past Tuesday (June 6, 2017) accompanying your clients' airport data states that ███████████ when your clients initially implemented their geofence technology. You also admit that between September and November 2016 ████████████████ Your clients' failure to self-monitor allowed Uber drivers in the past year to make more than 59,000 unauthorized trips to California airports before your clients even became aware of the magnitude of the problem.

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE DISTRICT ATTORNEY

William E. Stern, Esq.                                                    Page 3
June 12, 2017

     The Judgment required your clients to fully comply with each of its terms and conditions. Paragraph 8(D)(i) of the Judgment further required your clients to certify under penalty of perjury that each "defendant has fully complied with each of the terms and conditions of this Stipulated Judgment."  The declaration your clients submitted to the People on Thursday fails to make this certification.  Instead, your declarant avers that "Uber has worked in good faith to comply—and/or is working to comply—with each of the terms and conditions of this Stipulated Judgment."  Your clients have not certified that they have fully complied with each of the terms and conditions of the Judgment because they cannot truthfully make such a certification under penalty of perjury.

     Very truly yours,

     GEORGE GASCÓN
     District Attorney
     City and County of San Francisco

Ernst A. Halperin    Digitally signed by Ernst A. Halperin
Date: 2017.06.12 14:14:49 -07'00'
_____

     By Ernst A. Halperin
     Assistant District Attorney

# EXHIBIT H

**PUBLIC-Redacts materials from sealed record.**

CITY AND COUNTY OF SAN FRANCISCO          OFFICE OF THE DISTRICT ATTORNEY



George Gascón                          Ernst A. Halperin
District Attorney                      Assistant District Attorney
                                       Direct Dial (415) 551-9545
                                       email: ernst.halperin@sfgov.org

*Via email (WStern@mofo.com)*
William E. Stern, Esq.
Morrison Foerster
450 Market Street
San Francisco, CA 94105

June 21, 2017

Re:   *People of the State of California v. Uber Technologies, Inc. et al.*
      *(SF Sup. Ct. Case No. CGC-14-543120) – First Review Period*

Dear Mr. Stern:

Following the People's current review of the documents and information the defendants (collectively "Uber") have produced, the People have determined that Uber has further violated the Judgment. Further violations are listed below:

- Uber ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for what appears to be a three month period from September 2016 through November 2016, ▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

- Uber admits that it does not know whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- Uber did not implement procedures to monitor the number of unauthorized airport trips being committed by Uber drivers, in violation of Paragraphs 7(A) and 7(B) of the Judgment.

- Uber made false and misleading representations to the public about the measures it takes to ensure customer safety, in violation of Paragraph 6(A) of the Judgment. Uber made these false and misleading representations in its "Details on Safety" newsroom blog entry (Uber's documents bates-stamped UBERSETTLEMENT0025985 – UBERSETTLEMENT0025992).

- Uber provided no information and no documents by April 7, 2017, in violation of Paragraph 8(D) of the Judgment.

---

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE DISTRICT ATTORNEY

William E. Stern, Esq.                                                    Page 2
June 21, 2017

- Uber failed to make accurate and complete disclosures, in violation of Paragraph 8(D) of the Judgment by obfuscating its disclosure of its ███████████████ ███████████ Uber omitted the exact dates and instead characterized the duration that it ██████████████ as, "a short period, between September and November 2016."

- Uber failed to make accurate and complete disclosures, in violation of Paragraph 8(D) of the Judgment by obfuscating its disclosure about ████████████ services that it admits it "may have" ████████████████████ Uber did not specify which services, ███████████████

- Uber purposefully stripped from its production metadata fields for the document date, the author, the recipients, and the date the document had been collected by Uber, in violation of its Judgment Paragraph 8(D) obligations to make accurate and complete disclosures. Uber's actions hide whether Uber complied with deadlines in the Judgment for Uber's communications with drivers.

- Uber did not provide a certification under penalty of perjury that each defendant had fully complied with each of the terms and conditions of the Judgment, as required by Paragraph 8(D)(i).

- Uber did not comply with Paragraphs 8(F) and 9 of the Judgment, which required Uber to either pay $15 million to the People or deposit the money with the Court by June 14, 2017. In fact, Uber has now admitted that it did not have internal authorization to make the payment in any form when it brought its *ex parte* application for relief from this requirement, nor does it have such authorization as of today.

The People's review of the documents Uber produced has not been completed, and this list of further violations is subject to further additions.

Very truly yours,

GEORGE GASCÓN
District Attorney
City and County of San Francisco

Ernst A. Halperin  Digitally signed by Ernst A. Halperin
                   Date: 2017.06.21 11:55:00 -07'00'

By Ernst A. Halperin
Assistant District Attorney

cc: Ariel Ruiz, Esq. *via email*
    *ariel.ruiz@uber.com*

**48**

# EXHIBIT I

**PUBLIC-Redacts materials from sealed record.**

**MORRISON | FOERSTER**

425 MARKET STREET
SAN FRANCISCO
CALIFORNIA  94105-2482

TELEPHONE: 415 268 7000
FACSIMILE: 415 268 7522

WWW.MOFO.COM

MORRISON & FOERSTER LLP

NEW YORK, SAN FRANCISCO,
LOS ANGELES, PALO ALTO,
SACRAMENTO, SAN DIEGO,
DENVER, NORTHERN VIRGINIA,
WASHINGTON, D.C.

TOKYO, LONDON, BRUSSELS,
BEIJING, SHANGHAI, HONG KONG,
SINGAPORE

June 26, 2017

Writer's Direct Contact
415.268.7637
WStern@mofo.com

**Via E-mail (ernst.halperin@sfgov.org)**

Ernst A. Halperin
Assistant District Attorneys
Office of the San Francisco District Attorney
Special Prosecutions Unit
732 Brannan Street
San Francisco, CA 94103

Re:    *People of the State of California v. Uber Technologies Inc., et al.* (San Francisco
       Superior Court Case No. 14-CV-543120)

Counsel:

We write in response to your June 21, 2017 letter alleging "further" violations of the
Stipulated Judgment based on the District Attorneys' review of the material Uber produced
pursuant to Paragraph 8(D).

While Uber provides specific responses to each alleged violation below, we preliminarily
note that the District Attorneys' letter violates Paragraph 8(E):  You are required to meet-
and-confer if you believe that our First Review Period materials are unclear or inadequate.
This is not only required by Paragraph 8(E), it is also a precondition to your "determination"
of a violation under Paragraph 8(F).  As you should remember from the settlement
discussions in your offices, those two provisions were heavily negotiated.  Uber was
concerned about your offices' ability to declare a violation on pretextual grounds, and it
requested these safeguards precisely to avoid the sort of arbitrary or baseless determination
of "violation" that your offices have now rendered.  That concern has proven to be entirely
justified given that the District Attorneys have ignored those provisions, and have not
complied with their obligations under Paragraphs 8(E) or 8(F). As such, your determination
is not made in "good faith."

We invite you to reconsider.  Uber stands by its offer in my June 8 email:  Uber is ready and
willing to provide information requested by the District Attorneys with respect to its
productions.  For example, you refer to our production as a "data dump."  It is not.  It was
discretely organized by subjects.  We were not required to do that.  Moreover, we produced
on a rolling basis and you had an opportunity to review and categorize each production as it
came in.  You never asked for a different organization.

MORRISON | FOERSTER

June 26, 2017
Page Two

Your letter of June 21 makes no requests under Paragraph 8(E). It includes only allegations and inferences. They are baseless. Uber believes that an in-person meeting with the District Attorneys would be fruitful so that the parties can discuss their disagreements and devise a plan to ensure Uber provides the District Attorneys with targeted information reasonably necessary to assess Uber's compliance rather than assume violations. If you agree, please reach out by email or phone so that we can set up a meeting. We think Judge Wiss would expect at least this much of the parties, even if all we accomplish is a narrowing of our differences. I invite you to reconsider.

That said, Uber responds to each of the District Attorneys' alleged violations as follows:

1.      **Alleged Violation Number 1**

    (a)      **District Attorneys' Position**

        Uber took down the ▮▮▮▮▮▮▮▮▮▮▮▮ for what appears to be a three month period from September 2016 through November 2016, in violation of Paragraphs 7(A) and 7(B) of the Judgment.

    (b)      **Uber's Response**

        Uber disagrees that this technological issue with respect to the Ontario geofence constitutes a violation of Paragraphs 7(A) and 7(B) of the Stipulated Judgment. To clarify, Uber did not affirmatively "take down" the ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮, as your letter states. Instead, there was a technical issue that ▮▮▮▮▮▮▮▮▮▮▮▮ for a period of time. Moreover, Uber believes that this ▮▮▮▮▮▮▮▮▮▮▮▮ from the beginning of September 2016 through the *beginning* of November 2016: not *through* November as you suggest.

        As Uber noted in its April 25 and June 6 letters, Uber timely implemented geofence technology at all California Airports where Uber did not have express authority to operate pursuant to Paragraph 7(B)(iv) of the Stipulated Judgment. It complied with the requirements of Paragraphs 7(A) and 7(B).

        Uber disclosed the technological issue it had discovered with respect to the ▮▮▮▮▮▮▮▮▮▮ in the interests of transparency and to demonstrate its ongoing efforts to comply with the Stipulated Judgment. Uber takes these obligations seriously, and it continues to carefully self-monitor to catch errors such as the one highlighted here.

        This alleged "violation" is especially unfortunate since it contravenes the express terms of the Stipulated Judgment. As we discussed in the negotiations, Uber could not guarantee 100% compliance; and it did not, given that Drivers and Riders could find work-arounds to avoid any ▮▮▮▮▮▮. Your offices recognized that fact, and you agreed. Instead of demanding 100% compliance, the Stipulated Judgment provides that "any unauthorized

MORRISON | FOERSTER

June 26, 2017
Page Three

airport trip by a Participating Driver for which Defendants have made full payment pursuant to the terms of Paragraph 7(C)" shall not be "a basis for Plaintiff to make a good faith determination that the Second Payment is due." (¶ 8(G)(d).)  Uber has remitted all funds to the District Attorneys, yet you cited those unauthorized trips as an event of non-compliance.  That violates the Stipulated Judgment.

## 2.    Alleged Violation Number 2

### (a)    District Attorneys' Position

Uber admits that it does not know whether it ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ it implemented, in violation of Paragraphs 7(A) and 7(B) of the Judgment.

### (b)    Uber's Response

Uber disagrees that this constitutes a violation of Paragraphs 7(A) and 7(B). In its June 6 Letter, Uber explained that



. At that time,

The oversight at issue here—which Uber has corrected—was that

Uber disclosed this oversight in the interest of transparency and to demonstrate its ongoing compliance with the terms of the Stipulated Judgment by describing how it remedied human error.  Uber's identification and remediation of this issue is exactly what the Stipulated Judgment contemplates.  And again, as stated in response to allegation No. 1 above, Uber has disgorged the sums for all unauthorized trips that occurred during the First Review Period, including any unauthorized trip related to the omissions highlighted here.  This is not, and cannot be, a violation.

## 3.    Alleged Violation Number 3

### (a)    District Attorneys' Position

Uber did not implement procedures to monitor the number of unauthorized airport trips being committed by Uber drivers, in violation of Paragraphs 7(A) and 7(B) of the Judgment.

**MORRISON** | **FOERSTER**

June 26, 2017
Page Four

**(b)    Uber's Response**

Uber disagrees with the District Attorneys' position for three reasons.

**First**, Uber undertook specific messaging to drivers in the App and on web with respect to authorized/unauthorized airports.  It did exactly what the Stipulated Judgment required.  Uber did not encourage riders to engage in work arounds, and the District Attorneys point to no single document indicating that it did.

**Second**, the District Attorneys fail to point to any provision in the Stipulated Judgment that requires Uber to implement procedures to "monitor" the number of unauthorized trips to California Airports.  Aside from paying for unauthorized trips under Paragraph 7(C), there are none.  During the settlement negotiations, you explained that your goal was not to demand 100% compliance, but to remove Uber's economic incentive for unauthorized trips, and the way you chose to ensure that was to require Uber to establish ▉▉▉▉▉, identify the net revenue Uber earned from such unauthorized trips, and then disgorge those sums.  As stated above, Uber identified the number of unauthorized trips that occurred during the First Review Period, and remitted all revenues to the District Attorneys as required under the Stipulated Judgment.  Uber complied with the terms of the Stipulated Judgment with respect to unauthorized trips.

**Third,** your allegations imply that Uber should have done more to prevent unauthorized trips from occurring.  As you know from the parties' negotiations, and as Uber confirmed in its June 6 letter, the majority of unauthorized trips occur because Drivers and Riders find work-arounds to avoid ▉▉▉▉▉ and because Uber could not prevent unauthorized drop-offs.  Aside from implementing ▉▉▉▉▉ under Paragraph 7(B), which Uber did, there is nothing further Uber could have done, or was required to do under the Stipulated Judgment, to prevent unauthorized trips from occurring.  What's more, while you characterized the number of unauthorized trips as a "systemic violation," in your June 12 letter, that number hardly warrants such a characterization.  The number of unauthorized trips represented ▉▉▉▉ of total trips to California Airports during the First Review Period.  This number is miniscule, and it demonstrates, if anything, that Uber's ▉▉▉▉▉ worked and that Uber complied with the terms of the Stipulated Judgment.

**4.    Alleged Violation Number 4**

**(a)    District Attorneys' Position**

Uber made false and misleading representations to the public about the measures it takes to ensure customer safety, in violation of Paragraph 6(A) of the Judgment.  Uber made these false and misleading representations in its

**MORRISON** | **FOERSTER**

June 26, 2017
Page Five

> "Details on Safety" newsroom blog entry (Uber's documents bates-stamped
> UBERSETTLEMENT0025985 – UBERSETTLEMENT0025992).

**(b)     Uber's Response**

Uber disagrees that the document identified in this alleged violation
constitutes a violation of Paragraph 6(A).  The document you highlight, the
"Details on Safety" Newsroom post, was updated on May 12, 2016 in order to
come into compliance with the terms of the Stipulated Judgment.  Notably,
your letter does not explain why you believe this document is false and
misleading.  It is not.  It fully complies with the mandatory and prohibitive
requirements under the Stipulated Judgment.  Again, this is the sort of
discussion we ought to be having pursuant to Paragraph 8(E).

**5.     Alleged Violation Number 5**

**(a)     District Attorneys' Position**

Uber provided no information and no documents by April 7, 2017, in
violation of Paragraph 8(D) of the Judgment.

**(b)     Uber's Response**

As Uber set forth in its previous letters to the District Attorneys and in its *Ex
Parte* Application, Uber does not dispute that it was tardy in producing
material required under Paragraph 8(D).  But Uber disagrees that its tardiness
constitutes a material violation of the Stipulated Judgment that warrants
forfeiture of the full $15 million Second Payment.  The Stipulated Judgment
has detailed provisions setting forth what does, and does not, constitute a
violation that would trigger the Second Payment; notably, being late is not on
that list.  That lateness is not a violation is further corroborated in light of:
(1) Uber's immediate and ongoing compliance with the Stipulated Judgment;
and (2) Uber's production of all material required under Paragraph 8(D).
Uber accordingly disputes that its late production constitutes a violation
requiring a $15 million penalty.

**6.     Alleged Violation Number 6**

**(a)     District Attorneys' Position**

Uber failed to make accurate and complete disclosures, in violation of
Paragraph 8(D) of the Judgment by obfuscating its disclosure of its ███████
█████████████████████.  Uber omitted the exact dates and instead
characterized the duration that it █████████████████ as, "a short period,
between September and November 2016."

**(b)     Uber's Response**

MORRISON | FOERSTER

June 26, 2017
Page Six

Uber disagrees that its description of the time period in which ██████████ ████████████████ constitutes a violation of the Stipulated Judgment. To begin, the District Attorneys fail to indicate which provision of the Stipulated Judgment they contend Uber violated through this conduct. If the District Attorneys sought further information with respect to Uber's disclosures, they should have requested it pursuant to Paragraph 8(E) rather than declaring Uber in violation. The District Attorneys' failure to do so constitutes a violation of the letter and spirit of the Stipulated Judgment.

Furthermore, the District Attorneys misstate Uber's intent with respect to its disclosure. Uber's intent was to be transparent and ensure that the information it disclosed was accurate. Uber believes that the ██████ ████████████ between September 1, 2016 and November 9, 2016 based on the data available to it. Moreover, Uber's characterization of the time period during which ████████████████████ as "short" is accurate, especially because ████████████████████████████, prior to entry of the Stipulated Judgment. The conduct highlighted by the District Attorneys does not constitute a violation of the Stipulated Judgment.

Finally, even if this were an event of non-compliance, the remedy is not forfeiture of the Second Payment. It is disgorgement of the net revenue Uber received. (¶ 8(G)(d).) Uber paid those sums.

## 7. Alleged Violation Number 7

### (a) District Attorneys' Position

Uber failed to make accurate and complete disclosures, in violation of Paragraph 8(D) of the Stipulated Judgment by obfuscating its disclosure about ████████████████████████████████████ Uber did not specify which services, did not specify the airports involved, and did not specify the duration at each airport.

### (b) Uber's Response

Uber disagrees that this conduct constitutes a violation of the Stipulated Judgment. As with alleged violation No. 6 above, the District Attorneys fail to indicate which provision of the Stipulated Judgment they contend Uber violated based on this conduct. Again, if the District Attorneys sought further information with respect to Uber's disclosures, they should have requested it pursuant to Paragraph 8(E) rather than declaring Uber in violation. The District Attorneys' failure to do so constitutes a violation of the letter and spirit of the Stipulated Judgment.

Moreover, Uber was not required under the Stipulated Judgment to ████████ ████████████████. It is simply required to pay those amounts, and it did. Uber did

MORRISON | FOERSTER

June 26, 2017
Page Seven

confirm, however, that ██████████████████████████████████
██████████████████████████████. As described in response to
allegation No. 2 above, Uber disclosed this issue in the interests of
transparency and to highlight its remediation of this oversight. Uber has
complied with the Stipulated Judgment with respect to this issue.

8.    **Alleged Violation Number 8**

    (a)    **District Attorneys' Position**

        Uber purposefully stripped from its production metadata fields for the
        document date, the author, the recipients, and the date the document had been
        collected by Uber, in violation of its Judgment Paragraph 8(D) obligations to
        make accurate and complete disclosures. Uber's actions hide whether Uber
        complied with deadlines in the Judgment for Uber's communications with
        drivers.

    (b)    **Uber's Response**

        To begin, Uber disputes the District Attorneys' characterization of its conduct
        with respect to the disclosure of metadata fields. Uber did not "purposefully
        strip" the documents it produced of metadata in order to "hide" anything.
        Uber did not include a separate metadata load file with these productions
        because this was not required under the Stipulated Judgment. In any event,
        Uber produced these documents in exactly the same format we produced
        documents in the underlying case.

        As stated above, if the District Attorneys sought further information with
        respect to Uber's disclosures, they could have gone online a year ago and read
        the changes. After all, Uber made these changes at or about the time of entry
        of the Stipulated Judgment.

        Finally, again, there is the question of remedy. Where in the Stipulated
        Judgment does it say that Uber's failure to produce First Review Period
        documents in a format that the District Attorneys' only specified at the close
        of Uber's productions should result in forfeiture of $15 million?

9.    **Alleged Violation Number 9**

    (a)    **District Attorneys' Position**

        Uber did not provide a certification under penalty of perjury that each
        defendant had fully complied with each of the terms and conditions of the
        Judgment, as required by Paragraph 8(D)(i).

    (b)    **Uber's Response**

MORRISON | FOERSTER

June 26, 2017
Page Eight

Uber provided a certification as required under Paragraph 8(D)(i) that it has worked in good faith to comply—and is working to comply—with each of the terms and conditions of the Judgment.  Uber qualified its compliance because) its productions under Paragraph 8(D) were late and, when the certification was signed on June 6, not yet complete.

As stated above, Uber acknowledges that it did not comply with the April 7, 2017 production deadline, but Uber has remedied this tardiness.  With the exception of that delay, Uber can certify that it has fully complied with each of the terms and conditions of the Judgment.  Uber is willing to provide a revised certification attesting as such should the District Attorneys request it pursuant to Paragraph 8(E).  The District Attorneys' refusal to engage in Paragraph 8(E)'s meet and confer process—and instead declare Uber in default—is itself a violation of the Stipulated Judgment.

**10.     Alleged Violation Number 10**

**(a)     District Attorneys' Position**

Uber did not comply with Paragraphs 8(F) and 9 of the Judgment, which required Uber to either pay $15 million to the People or deposit the money with the Court by June 14, 2017.  In fact, Uber has now admitted that it did not have internal authorization to make the payment in any form when it brought its ex parte application for relief from this requirement, nor does it have such authorization as of today.

**(b)     Uber's Response**

Uber stated its position with respect to escrowing the $15 million in connection with its *Ex Parte* Application:  The District Attorneys' violation of Paragraph 8(E)—failure to even commence its review—means that the District Attorneys were never entitled to skip to a "good faith determination" in the first place.  Uber didn't do this unilaterally; Uber sought the Court's guidance, through the TRO.  As such, Uber's conduct of seeking court redress is protected activity, and cannot be the basis for a violation.

In short, Uber expected the District Attorneys to abide by the Stipulated Judgment.  Instead, you took a shortcut.  You failed to meet and confer with Uber to resolve the parties' issues without Court intervention requiring immediate escrowing of $15 million dollars.  The Court did not enter the TRO, but it's hard to see how Uber's expectation was unreasonable.  Uber accordingly disagrees that its failure to escrow the full Second Payment prior to June 14 constitutes a violation of the Stipulated Judgment.

Moreover, your claim that "Uber has admitted that it did not have internal authorization to make the payment in any form when it brought its ex parte application" is inaccurate.  Uber alerted the individuals necessary to approve

**MORRISON** | **FOERSTER**

June 26, 2017
Page Nine

> transfer of the funds of the possibility that Uber might lose its Application, and would have to transfer the funds thereafter.  It further confirmed with those individuals that the funds would need to be transferred immediately after the Court ruled on Uber's Application, and it has been working on the logistics of finalizing the transfer—including gaining all final approvals— after receipt of instructions from the Court on how to escrow the funds. Those funds have now been deposited.

Again, we believe that an in-person meeting to discuss these issues would help the parties reach an agreement and focus on Uber's compliance.  We are happy to come to your offices or host a meeting.  We look forward to hearing from you further.

Sincerely,

William L. Stern

cc:    June Cravett (june.cravett@sfgov.org)
       Evan Ackiron (evan.ackiron@sfgov.org)
       Phoebe Maffei (phoebe.maffei@sfgov.org)
       Sean Michael Kiley (sean.kiley@sfgov.org)
       Stanley Phillip Williams (swilliams@da.lacounty.gov)
       Hoon Chun (hchun@da.lacounty.gov)
       Jessie Lee Ann McGrath (jmcgrath@da.lacounty.gov)
       Christopher Curtis (ccurtis@da.lacounty.gov)

# EXHIBIT J

CITY AND COUNTY OF SAN FRANCISCO     OFFICE OF THE DISTRICT ATTORNEY



George Gascón
District Attorney

Ernst A. Halperin
Assistant District Attorney
Direct Dial (415) 551-9545
email: ernst.halperin@sfgov.org

*Via email (WStern@mofo.com)*
William E. Stern, Esq.
Morrison Foerster
450 Market Street
San Francisco, CA 94105

June 28, 2017

Re:    *People of the State of California v. Uber Technologies, Inc. et al.*
       *(SF Sup. Ct. Case No. CGC-14-543120) – First Review Period*

Dear Mr. Stern:

Thank you for your letter dated June 26, 2017. We understand that Uber intends to challenge the reasonableness of the People's April determination that Uber has violated the Judgment. You will have the opportunity to present your arguments to the Court. However, this is not a discovery dispute subject to meet and confer. The Judgment required Uber to demonstrate to the People, on the Judgment's first anniversary, that Uber had fully complied with each of the terms and conditions of the Judgment. Uber did not do so then, to this day has not done so, and cannot do so.

Your letter seems to be premised upon the idea that discussions with us could change the fact that Uber violated the Judgment. Although we will meet with you and your client to assist Uber in preventing future violations of the Judgment, these meetings cannot change the fact that Uber has already violated the Judgment in a number of ways as enumerated in the People's prior correspondence.

Your letter also misconstrues the Judgment. Nothing in the Judgment required the People to "meet and confer" with you prior to making a determination that Uber violated the Judgment, much less the two paragraphs you cite in support of this assertion. Paragraphs 8(E) provides that *if* the People notify Uber that the People request additional information, Uber must disclose the information within 45 days. Paragraph 8(F) provides that *if* the People determine that Uber has violated the Judgment, the second payment becomes due within 60 days of the People's determination.

Your letter states that Uber has deposited the second payment into Court, while failing to mention that Uber did not make the payment until June 23rd. Uber's failure to comply with the Judgment's second payment requirements is especially troubling. In its June 13, 2017 *ex parte* application for a TRO, Uber acknowledged it was required by the Judgment to make the second payment to the People or deposit the second payment with the Court on or before June 14th.

CITY AND COUNTY OF SAN FRANCISCO                    OFFICE OF THE DISTRICT ATTORNEY

William E. Stern, Esq.                                                      Page 2
June 28, 2017

However, Uber did not tell the Court, in its motion papers or at the hearing, that it had no ability to make the second payment to the People or deposit it with the Court by June 14th, regardless of how the Court ruled on Uber's application. At the time of the hearing, Uber's attorneys had not obtained internal approval from Uber to deposit the second payment with the Court, and Uber had not even made any inquires with the Court about how to go about depositing the second payment. When Judge Wiss admonished Uber at the hearing that Uber needed to promptly take action regarding the escrow, you sat silently and did not mention to the Court that Uber could not meet the deadline. To make matters worse, you did not go immediately to the Court's financial unit to make arrangements. Instead, you sent an after-hours email to the courtroom clerk asking for instructions.

We now know from your June 21st email that authorization was not obtained until at least a week after the TRO hearing. As a result, your client did not deposit the money into escrow until June 23rd – a full ten days after Uber's *ex parte* application for a TRO; nine days after the payment was due pursuant to the Judgment; and seven days after Uber received escrow instructions from the Court. Because Uber did not have the ability to deposit the second payment into Court on June 14th, the "emergency" that formed the basis for Uber's TRO application did not exist.

Uber failed to comply with the Judgment's second payment requirements. In addition to violating the judgment in this manner, Uber has lost its right to have the People's determination reviewed by the Court.

Very truly yours,

GEORGE GASCÓN
District Attorney
City and County of San Francisco

Ernst A. Halperin   Digitally signed by Ernst A.
Halperin
Date: 2017.06.28 14:30:18 -07'00'

By Ernst A. Halperin
Assistant District Attorney

cc: Ariel Ruiz, Esq. *via email*
   ariel.ruiz@uber.com

61