[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION REGARDING UBER'S TERMS OF USE BAR ON PARTICIPATION IN COORDINATED OR CONSOLIDATED PROCEEDINGS** |
| This Document Relates to:<br><br>All Cases | Judge: Honorable Charles R. Breyer<br>Date:   TBD<br>Time:   TBD<br>Courtroom:  6-17th Floor |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 3

    A.    Uber's Terms of Use ............................................................................ 3

    B.    The 29 Plaintiffs at issue in this motion ............................................ 6

ARGUMENT ............................................................................................................ 7

I.    For most Plaintiffs, Uber fails to demonstrate assent to one or both clauses ...................... 7

II.    Uber's non-consolidation motion should be denied ............................................. 8

    A.    Under state contract law, Uber's TOU do not prevent MDL proceedings. ............ 8

        1.    The TOU's non-participation provision is unenforceable given the JPML's order .................................................................................. 9

        2.    The TOU's passive-voice provision is unenforceable. ............................ 9

        3.    If the non-consolidation clause creates an enforceable prohibition against MDLs, it is void as against public policy. ................................. 10

        4.    If the non-consolidation clause creates an enforceable prohibition against MDLs, it is unconscionable. .......................................... 10

    B.    Under federal law, Uber's TOU cannot dissolve MDL proceedings authorized by 28 U.S.C. § 1407. ................................................. 12

    C.    Uber does not request actionable relief. ................................................. 14

III.    Uber's forum selection motion should be denied. ........................................... 15

    A.    The Court need not address Uber's transfer motion now. ................................. 15

    B.    Because Uber promised to "honor" sexual assault plaintiffs' "election" of forum, the forum selection clause does not cover the claims at issue .................. 16

    C.    Uber's forum selection clause is unenforceable .............................................. 17

        1.    The clause is affected by fraud .......................................................... 17

        2.    The clause is the result of bad faith and overreach. ............................... 18

        3.    The clause is unreasonable. .............................................................. 20

    D.    Even if enforceable, the forum selection clause does not require transfer ............ 20

        1.    The burden on the courts weighs against transfer. ................................. 21

        2.    California has significant interest in local trial of these cases. ................. 22

        3.    Litigation costs do not support Uber's motion ...................................... 23

CONCLUSION ....................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228.................................................................................................................. 12

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
571 U.S. 49 (2013) ............................................................................................. 12, 13, 20

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*,
No. 17-cv-503, 2019 WL 2017541 (E.D. Va. May 7, 2019) ................................... 20

*Benedict v. Hewlett-Packard Co.*,
No. 13-cv-119, 2016 WL 1213985 (N.D. Cal. Mar. 29, 2016)................................. 13

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) ..................................................................................... 17, 18, 20

*Congdon v. Uber Techs., Inc.*,
291 F. Supp. 3d 1012 (N.D. Cal. 2018) ................................................................... 17

*D&S Consulting, Inc. v. Kingdom of Saudi Arabia*,
961 F.3d 1209 .......................................................................................................... 20

*Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*,
No. 20-cv-767, 2020 WL 5625740 (C.D. Cal. Sept. 17, 2020) ................................ 9

*Davis v. Oasis Legal Fin. Operating Co.*,
936 F.3d 1174 (11th Cir. 2019).............................................................................. 12

*Doe v. Uber Techs., Inc.*,
No. 17-950, 2017 WL 2352032 (N.D. Cal. May 31, 2017) .................................... 21

*Hyundai Space & Aircraft Co. v. Boeing Co.*,
No. 99-cv-3255, 1999 WL 9101131 (N.D. Cal. Oct. 12, 1999) ............................. 22

*In re Bavaria Yachts USA, LLLP*,
575 B.R. 540 (Bankr. N.D. Ga. 2017)...................................................................... 19

*In re Clorox Consumer Litig.*,
894 F. Supp. 2d 1224 (N.D. Cal. 2012) ................................................................. 22

*In re Equinox Fitness*,
764 F. Supp. 2d 1347 (J.P.M.L. 2011)..................................................................... 10

*In re: Lyft Assault Cases*,
JCCP No. 5061 (Cal. Sup. Ct. Jan. 17, 2020) ...................................................... 4, 5

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Marriott Int'l Customer Data Breach Litig.*,
MDL 2879, 2023 WL 8247865 (D. Md. Nov. 29, 2023), *appeals pending*
(4th Cir. Nos. 24-1064, 24-1065) ..................................................................... 13

*In re: Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*,
655 F. Supp. 2d 1378 (J.P.M.L. 2009) ............................................................... 16

*In re Uber Techs, Inc. Passenger Sexual Assault Litig.*,
MDL No. 3084, 2023 WL 6456588 (J.P.M.L. Oct. 4, 2023)............................ 6, 15

*In re Uber Techs, Inc. Passenger Sexual Assault Litig.*,
MDL No. 3084, 2024 WL 41889 (J.P.M.L. Jan. 4, 2024) ............................... *passim*

*In re Vistaprint Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010) ........................................................................... 21

*Int'l Bro. of Teamsters v. NASA Servs., Inc.*,
957 F.3d 1038 (9th Cir. 2020) ............................................................................. 16

*Iragorri v. United Tech. Corp.*,
274 F.3d 65 (2d Cir. 2001) .................................................................................. 19

*Italian Colors Rest. v. Am. Expr. Co.*,
No. 03-cv-3719, 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ....................... 23

*Jackson v. Amazon.com, Inc.*,
65 F. 4th 1091 (9th Cir. 2023) ............................................................................... 7

*Kashani v. Tsann Kuen China Enter. Co.*,
118 Cal. App. 4th 531 (2004) .............................................................................. 10

*Kooiman v. Siwell, Inc.*,
No. 20-cv-565, 2021 WL 899095 (C.D. Cal. Jan. 4, 2021) ........................... 15, 16

*L.G. v. Red Roof Inns., Inc.*,
No. 22-cv-1924, 2022 WL 4091837 (S.D. Ohio Sept. 7, 2022) .......................... 23

*Laasko v. Xerox Corp.*,
566 F. Supp. 2d 1018 (C.D. Cal. 2008) ............................................................... 18

*Lim v. TForce Logistics, LLC*,
8 F. 4th 992 (9th Cir. 2021) ........................................................................... 10, 11

*Marsh v. First Bank of Del.*,
No. 11-cv-5226, 2014 WL 2085199 (N.D. Cal. May 19, 2014).............................. 8

*Mulato v. Wells Fargo Bank, N.A.*,
76 F. Supp. 3d 929 (N.D. Cal. 2014) ..................................................................... 9

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Murphy v. Schneider Nat'l, Inc.*,
 362 F.3d 1133 (9th Cir. 2004) ................................................................. 7, 18, 19

*Nagrampa v. MailCoups, Inc.*,
 469 F.3d 1257 (9th Cir. 2006) ........................................................................ 17

*O'Connor v. Uber Techs, Inc.*,
 No. 13-cv-3826, 2014 WL 1760314 (N.D. Cal. May 2, 2014) ................................. 5

*OTO, LLC v. Kho*,
 447 P. 3d 680 (Cal. 2019) ............................................................................... 11

*Revitch v. DIRECTV, LLC*,
 977 F.3d 713 (9th Cir. 2020) ........................................................................... 14

*Rheinhart v. Nissan N. Am., Inc.*,
 92 Cal. App. 5th 1016 (2023) .......................................................................... 10

*Rodriguez v. PepsiCo Long Term Disability Plan*,
 716 F. Supp. 2d 855 (N.D. Cal. 2010) .............................................................. 17

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
 65 F. 4th 1012 (9th Cir. 2023) ......................................................................... 15

*Silvis v. Ambit Ener., L.P.*,
 90 F. Supp. 3d 393 (E.D. Pa. 2015) ................................................................. 21

*Solannex v. Miasole, Inc.*,
 No. 11-cv-171, 2013 WL 430984 (N.D. Cal. Feb. 1, 2013) ................................... 14

*Stewart Org., Inc. v. Ricoh Corp.*
 487 U.S. 22, 30 (1988) ................................................................................... 20

*Ullmo ex rel. Ullmo v. Gilmour Acad.*,
 273 F.3d 671 (6th Cir. 2001) ............................................................................. 9

*Walter v. Hughes Commc'ns, Inc.*,
 682 F. Supp. 2d 1031 (N.D. Cal. 2010) ............................................................. 13

*Wolf v. Gerhard Interiors, Ltd.*,
 399 F. Supp. 2d 1164 (D. Colo. 2005) .............................................................. 23

**Statutes**

9 U.S.C. § 402(a) ......................................................................................... 15

28 U.S.C. § 1391 ..................................................................................... 13, 14

28 U.S.C. § 1404 ................................................................................ 1, 13, 15

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

28 U.S.C. § 1407 ...................................................................................................... *passim*

Cal. Civ. Code § 3390 ........................................................................................................ 9

Cal. Civ. Code § 3513 ...................................................................................................... 10

Cal. Code Civ. P. § 404 ...................................................................................................... 5

**Court Rules**

Cal. Prof. Conduct R. 4.2(a) ............................................................................................ 19

Fed. R. Civ. P. 23(a)(2) .................................................................................................... 13

Fed. R. Civ. P. 23(c)(1)(A) .............................................................................................. 13

**Treatises**

Restatement (Second) of Contracts § 264 (1981) .............................................................. 9

**Other Authorities**

*CNN Investigation: 103 Uber drivers accused of sexual assault or abuse*, CNN,
Apr. 30, 2018 .................................................................................................................. 3

Daisuke Wakabayashi, *Uber Eliminates Forced Arbitration for Sexual Misconduct
Claims*, N.Y. Times, May 15, 2018 ............................................................................... 4

Linda Chiem, *Uber Vows to Drop Arbitration Push for Sex Assault Claims,*
Law360, May 15, 2018 ................................................................................................... 4

Uber, *Turning the Lights On* (May 15, 2018) ............................................................ 1, 4, 17, 18

1

**INTRODUCTION**

2      Uber's motion to enforce its "non-consolidation clause" and its "forum selection clause"

3  should be denied. Both the JCCP and the JPML centralized proceedings despite Uber's non-

4  consolidation clause. Uber offers no arguments for why this Court should reach a different

5  conclusion, no actionable request for relief if the Court did, and no explanation of why

6  coordinated proceedings are permissible in state court but not here. The clause does not bind this

7  Court (or the JPML), and if it did, it would be unenforceable as a matter of both state and federal

8  law. Uber's forum selection clause is also unenforceable: it is the product of bad faith and fraud,

9  does not meet minimal standards of reasonableness and fairness, and does not support transfer

10  under 28 U.S.C. § 1404.

11      Uber is a champion of sexual assault survivors' voice and agency—when convenient. In

12  2018, when Uber's IPO plans were threatened by a deluge of public criticism, the company

13  released sexual assault survivors from its secret arbitration process. To burnish its reputation and

14  keep riders riding, Uber made big promises. It claimed that "we have learned it's important to

15  give sexual assault and harassment survivors control of how they pursue their claims." Uber,

16  *Turning the Lights On* (May 15, 2018).[1] Uber promised its passengers, including the 29 Plaintiffs

17  at issue in this motion, that "survivors will be free to choose to resolve their individual claims in

18  the venue they prefer." *Id.* And "[w]hatever they decide, they will be free to tell their story

19  wherever and however they see fit." *Id.* This commitment was enshrined in Uber's 2019 Terms of

20  Use (TOU), in which Uber repeated that when a Plaintiff "elect[s] to bring [] claims in a court, …

21  Uber agrees to honor your election of forum." Ex. B (11/12/19 Uber TOU) at § 2.

22      So much for that. When Uber realized that the California lawsuits against it were likely to

23  be coordinated in a JCCP, it revised its TOU to say that cases would not be "coordinated" and

24  must be filed in the state in which victims were assaulted (slyly excising the language "of forum"

25  from its promise to "honor your election"). Ex. C (1/18/21 Uber TOU) at § 2.b. (Uber obscures

26  this bait-and-switch by attaching only three iterations of the TOU to its filings.)

27      Why? Because Uber's litigation strategy is to divide and conquer. Its view—as it has all

28

---

[1] https://www.uber.com/newsroom/turning-the-lights-on/

but confessed in this Court—is that it can convince individual judges in individual cases to limit discovery into its conduct on proportionality or other grounds. *See* 2/4/24 H'rg Tr. at 21:19-22:9 (arguing that in non-coordinated litigation, Uber expected to be able to dramatically curtail its document production obligations). Piecemeal proceedings also limit the resources any given plaintiff can marshal. This allows Uber to keep the full picture of its conduct hidden from victims and the public, evade liability, and conduct business as usual by paying a "sexual assault tax" on undervalued cases.

Uber's motion reflects the worst kind of forum shopping. In attempting to evade or manipulate procedural rules, Uber contradicts its own commitments—to the public and these Plaintiffs alike—to honor survivors' choice of how and where to litigate their cases. Even today, in defending its refusal to produce documents in this MDL, Uber relies on its victims' "taking back power" by exercising "agency over how and when they get to tell their story." 2/22/24 H'rg Tr. at 22:7-14. But only one side in this litigation represents sexual assault survivors. *See* ECF 321 at 10 (Cisneros, M.J.) ("But what Uber fails to recognize is that this MDL has also been brought on behalf of individuals who are alleged survivors of sexual assault.").

When considering the 29 Plaintiffs Uber has selected for its motion, the unconscionability, unfairness, and unenforceability of Uber's non-consolidation and forum selection clauses become even more apparent. To start, Uber does not carry even its threshold burden of showing assent for most of the claims at issue: 24 of the Plaintiffs filed a lawsuit *before* the date Uber says they assented to the relevant TOU. London Decl. Ex. H (filing chart). Nor does Uber establish that any Plaintiff accepted updated TOU for any reason other than opening the Uber App to investigate their own assaults or comply with judicial discovery orders.

Filing dates aside, most Plaintiffs (23) were assaulted before Uber added its forum selection clause, and more than half (16) before Uber amended its non-consolidation clause to apply outside of the arbitration context. Ex. G (assault chart). Uber does not disclose which of those assaults it was aware of when it changed the TOU, but the Master Complaint plausibly alleges Uber had reason to be aware of all of them. Several Plaintiffs put Uber on individual notice of their intent to sue by sending preservation letters before the forum selection clause was added. Ex. I (preservation

letter chart). Others sent letters soon after, demonstrating that they considered their legal options, including selecting California-based counsel, against a baseline where they had the right to select their choice of forum. *Id.* Indeed, it may be inferred that each of the 23 Plaintiffs whose assaults predated one or both clauses made the excruciating choice to grapple with what happened to them and pursue justice on the assumption that Uber's promises that they could choose their court would be honored.

The Court need not reward Uber's hypocrisy and gamesmanship. Federal law grants companies the power to withdraw disputes with their customers from the federal court system and move them into binding arbitration. Uber exercised that power for many years. When Uber changed course and permitted victims to sue in the federal courts, it did so on the premise that victims could seek justice "wherever and however they see fit." This Court should hold Uber to its word. This motion should be denied.

## FACTUAL BACKGROUND

### A.   Uber's Terms of Use

If there are two constants to Uber's approach to sexual assault, they are the company's attempts to avoid transparency—in particular, transparency in the courts—and the constant altering of the Terms of Use to achieve this goal. For years, Uber denied and concealed even the existence of sexual misconduct on its system, instead promising Plaintiffs, regulators, and the public that safety was its number one priority. *See* ECF 269 (Master Compl.) at ¶¶ 187-224, 240-81. Crucial to this strategy was the funneling of sexual assault claims into arbitration. *See* Ex. A (12/13/17 Uber TOU) at § 2. Under that regime, not only would the magnitude and character of Uber's sexual assault problem avoid public airing, but survivors could never receive fulsome discovery, and Uber's dirty laundry would never see the light of day.

Uber changed this policy in 2018, but not because of any legitimate concern for victims' rights or public transparency. Instead, Uber agreed to exempt sexual assault cases from arbitration only after a CNN investigation sparked widespread criticism of Uber's sexual assault problem and its efforts to conceal that fact. *See* Sara O'Brien et al., *CNN Investigation: 103 Uber drivers accused of sexual assault or abuse*, CNN, Apr. 30, 2018. Uber was forced to clean up its image to

preserve its plans for an initial public offering. *See* Daisuke Wakabayashi, *Uber Eliminates Forced Arbitration for Sexual Misconduct Claims*, N.Y. Times, May 15, 2018; Linda Chiem, *Uber Vows to Drop Arbitration Push for Sex Assault Claims*, Law360, May 15, 2018 ("The move comes as scandal-plagued Uber works hard to rehabilitate its public image amid last year's storm of reports of illicit business tactics, corporate bullying, institutionalized harassment, and rampant flouting of the law.").

At that time, Uber expressly promised its passengers that they could choose their forum to sue Uber. Uber promised that sexual assault and harassment survivors would "be free to choose to resolve their individual claims *in the venue they prefer*." Uber, *Turning the Lights On* (emphasis added). Uber assured riders that, were they to be assaulted, "they will be free to tell their story wherever and however they see fit." *Id.* This promise was enshrined in Uber's TOU: "Uber agrees to honor your election of forum with respect to your individual sexual assault or sexual harassment claim." Ex. B (11/12/19 Uber TOU) at § 2. Those representations continue today: just two weeks ago, Uber tried to withhold documents produced in previous sexual assault cases on the basis that it was important to honor victims' "agency over how and when they get to tell their story," which is "part of taking back power." 2/22/24 H'rg Tr. at 22:7-14.

When it eliminated mandatory arbitration for sexual assault claims, Uber did not modify the portions of the TOU directed at consolidated or class proceedings. The revised TOU retained language from the earlier iteration of the arbitration agreement providing that:

> You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding. Unless both you and Uber otherwise agree in writing, any arbitration will be conducted only on an individual basis and not in a class, collective, consolidated, or representative proceeding.

Ex. B (11/12/19 Uber TOU) at § 2. The new TOU added only that the above language would apply "in court" as well. *Id.*

But a new problem arose. In 2020, victims suing Uber's competitor Lyft successfully petitioned the California courts to coordinate their cases in a JCCP. *See In re: Lyft Assault Cases*, JCCP No. 5061, Order Granting Pet. for Coord. (Cal. Sup. Ct. Jan. 17, 2020). In its ruling, the California court rejected arguments essentially identical to those Uber would later make. *See id.*

at 7 ("Defendant Lyft argues … that each case arises from a different incident of alleged sexual misconduct by a driver, involving a different passenger, and that case-specific facts will predominate."). There were already cases pending against Uber in California state courts (and Uber knew of many other sexual assaults that could result in lawsuits), so the company knew a JCCP petition was inevitable, and, after the *Lyft* order, would almost certainly be granted.

Uber also knew that its post-2018 TOU did not even purport to prevent JCCPs. The language (which, again, was a holdover from the arbitration agreement) precluded users from participating in "class, collective, consolidated, or representative proceeding[s]." Ex. B (11/12/19 Uber TOU) at § 2. On its face this did not prohibit a JCCP, which "coordinates" cases, but does not "consolidate" them. *See* Cal. Code Civ. P. § 404. This makes sense: in the arbitration context where the clause originated, there was no concept of "coordinated" proceedings.

So Uber resorted to an old tactic: change the rules of the game as it was being played. *See O'Connor v. Uber Techs, Inc.*, No. 13-cv-3826, 2014 WL 1760314, at *1-3 (N.D. Cal. May 2, 2014) (ordering corrective notice after Uber pushed out an arbitration provision to members of a pending putative class). Uber amended its TOU on January 18, 2021, to include a new "Exceptions to Arbitration" section that provided:

> [Claims of sexual assault or sexual harassment] may be brought and litigated in a court of competent jurisdiction by you on an individual basis only. On an individual basis means that you cannot bring such claims as a class, coordinated, consolidated, collective, or representative action against Uber. For the avoidance of doubt, this precludes you from bringing claims as or participating in any kind of any class, collective, coordinated, consolidated, representative or other kind of group, multi-plaintiff or joint action against Uber and no action brought by you may be consolidated or joined in any fashion with any other proceeding. Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election.

Ex. C (1/18/21 Uber TOU) at § 2.b. While the 1/18/21 TOU retained Uber's promise to "honor your election," Uber removed the words "of forum." *Id.*

Uber also added a new "Choice of Forum" section. *Id.* at § 7. This provision was tailored to target Uber's JCCP problem. It required that "personal injury (including but not limited to sexual assault or harassment claims)" cases—and only those cases—"be brought exclusively in the state and federal courts in the State in which the incident or accident occurred." *Id.* Uber required any other court cases against it to "be brought exclusively in the state and federal courts

of California." *Id*.[2] Uber pushed these new TOU out to its users, including those with lawsuits pending, and those who had been sexually assaulted but had not yet filed lawsuits.

These moves did not work. When the California plaintiffs petitioned for a JCCP, Uber opposed, relying on its TOU. Ex. F (Uber Opp'n to Pet. for Coord.) at 4-6. Remarkably, Uber argued that it changed its TOU as a favor to victims:

> Uber's work with advocates also has resulted in an education and understanding of how individualized these types of claims are and informed its terms of service, including that each claim should be brought individually and not collectively. As research shows, incidents are personal, motivated by the individual conduct of the assailant, and caused by different circumstances and situations. No two incidents or experiences of the victims are the same. Uber's Terms of Use recognize the importance and value to survivors to have their claims brought independently and not as collective proceedings.

> The Terms of Use, allowing for individual claims, give survivors control of their options, encourage reporting, and help end the culture of silence that is so common with sexual violence and, to that end, the Terms of Use "preclude" any kind of collective, coordinated, group, multi-plaintiff, or joint action.

*Id*. at 5. The JCCP, unimpressed, granted coordination over Uber's objection. *Uber Sexual Assault Cases*, JCCP No. 5188, Order Granting Pet. for Coord. (Cal. Sup. Ct. Dec. 9, 2021).

Undeterred, Uber tried again in front of the JPML, arguing that "[t]he Panel need not conduct any analysis under 28 U.S.C. § 1407 because this [transfer] motion is barred by the plaintiffs' contractual agreement with Uber." Uber's Response to Mot. to Transfer, *In re: Uber Techs., Inc. Passenger Sexual Assault Litig.*, MDL No. 3084, ECF 65 (J.P.M.L. Aug. 18, 2023), at 6. Like the JCCP, the Panel disagreed: "The Panel is not bound by Uber's Terms of Use, and Section 1407(c) grants the Panel the authority to centralize civil cases upon its own initiative." *In re Uber Techs, Inc. Passenger Sexual Assault Litig.*, MDL No. 3084, 2023 WL 6456588, at *2 (J.P.M.L. Oct. 4, 2023); *accord In re Uber Techs, Inc. Passenger Sexual Assault Litig.*, MDL No. 3084, 2024 WL 41889, at *4 (J.P.M.L. Jan. 4. 2024) (reiterating that the TOU do not prevent MDL coordination).

### B.    The 29 Plaintiffs at issue in this motion

The 29 Plaintiffs Uber moves against were assaulted between August 6, 2016 and

---

[2] On December 16, 2021, Uber again modified the TOU to require that all lawsuits (not just personal injury cases) be filed where the case arose or incident occurred. ECF 257-2, Ex. D (12/16/21 Uber TOU) at § 7. Otherwise, the relevant terms have remained materially consistent since. *See* ECF 257-2, Exs. E at § 8 & F at § 8 (1/17/23 and 6/14/23 Uber TOU).

December 17, 2021. Ex. G. By November 12, 2019, when Uber amended its arbitration provision to extend non-consolidation from the arbitration context to the court context, 16 had already been assaulted. *Id.* By January 18, 2021, when Uber added the forum selection clause to its TOU, 23 had already been assaulted. *Id.* Uber does not disclose which of those assaults it knew about when it pushed out amended TOU, but the allegations of the Master Complaint (which at this stage the Court should accept) establish it had reason to know of them all.

In addition to those whose incidents were reported directly to Uber on the App., four Plaintiffs put Uber on specific notice of their intent to sue through preservation letters sent before Uber added the forum selection clause. Ex. I. Several more sent letters in the ensuing months. *Id.*

Uber says that each of these Plaintiffs consented to a version of the TOU "dated January 18, 2021, or later." ECF 257-2 at ¶ 13. But Uber provides only the "most recent date on which the Plaintiff assented to the Terms of Use" and "the version of the Terms of Use that was in effect on that date." *Id.* at ¶ 12 & Ex. C. For 24 of the 29 Plaintiffs, that date—the only date Uber provides—falls after they had filed lawsuits in California state court. Ex. H. And while Uber says that users must accept the TOU in order to access the Uber App, Mot. at 2-3, Uber does not establish that any Plaintiff accepted the Terms of Use in order to use Uber's services, as opposed to investigating the circumstances of her own assault (on her own or with assistance of counsel), or in response to court-ordered discovery obligations (like finding a ride receipt).

## ARGUMENT

### I.   For most Plaintiffs, Uber fails to demonstrate assent to one or both clauses.

It is Uber's burden to show that Plaintiffs assented to the clauses Uber says control here. *See, e.g.*, *Jackson v. Amazon.com, Inc.*, 65 F. 4th 1091, 1100 (9th Cir. 2023). The Court "must draw all reasonable inferences … and resolve all factual conflicts in favor of the non-moving party," here Plaintiffs. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004).

Uber has failed to carry its burden for most of these Plaintiffs. To start, Uber does not establish that 24 of the 29 assented to either clause before they filed California state court lawsuits. Uber provides the "the most recent date on which [each] Plaintiff assented to the Terms of Use." ECF 257-2 at ¶ 12 & Ex. C. For these 24, that date falls after they initiated litigation. Ex.

H (filing chart). The TOU do not purport to apply to cases that have already been filed (and would be unenforceable for various reasons if they did).[3]

Beyond the date of filing, Uber does not establish that any Plaintiff assented before they were assaulted. Exs. G & H. Of the Plaintiffs that sent preservation letters, Uber does not establish that any assented before their counsel put Uber on specific notice of their intent to sue. Ex. H, I. Finally, Uber does not establish that any Plaintiff assented to the updated TOU to use Uber's services, as opposed to investigating her own assault or complying with Court discovery orders (making the purported "assent" illusory).

To be sure, it is not inconceivable that some of these 24 Plaintiffs used the Uber App after the non-consolidation or forum selection clauses were added but before they filed their lawsuits (i.e., at earlier dates than the ones Uber provides in Ex. C to its motion). Those facts could affect the analysis for some (though the Court would still have to take into account the timing of the assault, Uber's actual and imputed knowledge of the incident, and whether the Plaintiff used the App. to gather information about her assault). But Uber omitted those dates, even though those facts are in its exclusive possession. Uber complains that it is not able to match Plaintiffs to TOU iterations with sufficient precision. *See* Mot. at 1 nn. 1, 2. But a failure of proof means the motion must be denied.

## II.   **Uber's non-consolidation motion should be denied.**

Assuming Uber could meet its burden to show that each Plaintiff assented to the non-consolidation clause, its motion should still be denied.

### A.   **Under state contract law, Uber's TOU do not prevent MDL proceedings.**

Under basic contract law, the non-consolidation clause does not include any enforceable provision that prevents MDL proceedings.[4] If it did, then the clause as a whole is unenforceable

---

[3] Uber may argue that the fact that Plaintiffs lost a forum non conveniens motion and refiled in federal court changes the relevant dates. There is no textual basis to interpret the TOU to apply to pending cases so long as those cases are moved from one forum to another.

[4] This Court should apply California contract law. Uber changed its choice-of-law provision over time. The Court need not identify and interpret each potentially applicable version: it is Uber's burden to say which state's law applies, and identify material conflicts between that state's law and California law. *See, e.g.*, *Marsh v. First Bank of Del.*, No. 11-cv-5226, 2014 WL 2085199, at *5 (N.D. Cal. May 19, 2014). It has not attempted to carry that burden. *See* Mot. at 5 n.5.

in light of public policy and unconscionability rules.

### 1. **The TOU's non-participation provision is unenforceable given the JPML's order.**

As Uber acknowledges, the TOU do not purport to, and could not, bind the Court. Mot. at 8 n.11 (conceding that contracts do not bind courts). So, Uber relies on the provision purporting to prevent Plaintiffs from "participating in any kind of … coordinated" action. ECF 257-2, Ex. D (12/16/21 Uber TOU) at § 2(b). This provision is unenforceable. Plaintiffs are not "participating" in the MDL by choice, but because of a JPML order saying they must. Contract terms are not enforceable where performance is rendered impractical by government regulation or order. *See, e.g.*, *Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, No. 20-cv-767, 2020 WL 5625740, at *5 (C.D. Cal. Sept. 17, 2020); Restatement (Second) of Contracts § 264 (1981). (To be sure, some Plaintiffs moved to transfer with the JPML, but the Panel has twice stated that filing had no legal effect. *See In re Uber*, 2024 WL 431889, at *4.)

### 2. **The TOU's passive-voice provision is unenforceable.**

The TOU say that "no action brought by you may be consolidated or joined in any fashion with any other proceeding." ECF 257-2, Ex. D (12/16/21 Uber TOU) at § 2(b). This is passive voice: the contract does not assign this goal to any person, let alone one bound by the contract. Instead, this provision must be understood as (at most) an aspiration, not an enforceable contractual obligation. *See, e.g.*, Cal. Civ. Code § 3390 ("The following obligations cannot be specifically enforced …. An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable."); *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 950 (N.D. Cal. 2014) ("To be enforceable, a promise must be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.") (citation omitted); *Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 677 (6th Cir. 2001) ("Indefinite and aspirational language does not constitute an enforceable promise.... [A] breach of contract claim will not arise from the failure to fulfill a statement of goals or ideals.").

### 3.   If the non-consolidation clause creates an enforceable prohibition against MDLs, it is void as against public policy.

A contract provision is "void and unenforceable" where it is "contrary to public policy." *Rheinhart v. Nissan N. Am., Inc.*, 92 Cal. App. 5th 1016, 1027 (2023) (citation omitted); *see also, e.g.*, Cal. Civ. Code § 3513 ("[A] law established for a public reason cannot be contravened by a private agreement."). This rule encompasses policies embodied in federal law. *See, e.g.*, *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 543 (2004) ("California law includes federal law. … Thus, a violation of federal law is a violation of law for purposes of determining whether or not a contract is unenforceable as contrary to the public policy of California.").

Here, federal policy is that cases presenting common factual issues should be coordinated for pretrial proceedings when doing so serves the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). This reflects public interests, including the need to "identify and centralize for pretrial proceedings multiple actions that would otherwise cause congestion in the federal courts." *In re Uber*, 2024 WL 431889, at *4; *see also In re Equinox Fitness*, 764 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011) ("[T]he Panel has an institutional responsibility that goes beyond simply accommodating the particular wishes of the parties."). In "determining that centralization is appropriate" here, "the Panel considered efficiency from both the standpoint of the parties and that of the judiciary itself." *In re Uber*, 2024 WL 41889, at *4. Uber's non-consolidation provision conflicts with that federal objective, and so is unenforceable.

### 4.   If the non-consolidation clause creates an enforceable prohibition against MDLs, it is unconscionable.

A contract provision is unenforceable if it is both procedurally and substantively unconscionable, but "both need not be present in the same degree." *Lim v. TForce Logistics, LLC*, 8 F. 4th 992, 1000 (9th Cir. 2021) (internal quotation marks omitted). Instead, "a sliding scale exists such that the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (internal quotation marks omitted).

Here, the non-consolidation clause is procedurally unconscionable because it is the

product of "deceptive or coercive bargaining tactics." *OTO, LLC v. Kho*, 447 P. 3d 680, 725-26 (Cal. 2019). The clause is part of a contract of adhesion presented on a take-it-or-leave-it basis to women who Uber knew or should have known had already been sexually assaulted or harassed and might file lawsuits. *See* Ex. G (noting that of the 29 Plaintiffs, 16 were assaulted before the clause was added).

The clause is also procedurally unconscionable because it carries an "absence of meaningful choice." *Lim*, 8 F. 4th at 1000 (citation omitted). Survivors are compelled to access their Uber App (and so assent to the TOU) to investigate their own assault and prepare their claims for filing. Indeed, Uber has sought and achieved Court orders (both here and in the JCCP) requiring survivors to access the App to produce ride receipts. *See* ECF 175 at ¶ 4.A. Plaintiffs cannot be found to have exercised "meaningful choice" where they were forced to assent by judicial order.

The clause is substantively unconscionable because it is "overly harsh" and "unduly oppressive." *Id.* at 1002. The term is harsh and oppressive because enforcement of the clause would deprive Plaintiffs of the efficiency benefits of the MDL, arbitrarily forcing them to incur the expense on their own of conducting what would otherwise be common discovery, or, worse, foregoing such discovery altogether. Indeed, Uber's interpretation of the clause would seem to bar even informal coordination among plaintiffs' counsel and might even prevent a lawyer representing multiple clients from "coordinating" across their own cases. The arbitrary cost burdens and intrusions into the attorney-client relationship are unjustifiable. The clause is also "unduly oppressive" on the courts, forcing hundreds of judges to spend thousands of hours on discovery disputes and pretrial motions that need only be heard by the transferee court.

The clause is also "unfairly one-sided," *Lim*, 8 F. 4th at 1000, both in form and in application. In application: Uber ignores the clause when convenient, for example arguing "[e]arly discovery in this action should be coordinated with the JCCP," ECF 171 at 2, and that JCCP and MDL Plaintiffs should share seven hours of deposition time. ECF 300 at 3. In form: while the clause precludes Plaintiffs from litigating in consolidated or coordinated *actions*, it permits them to "participat[e] in a classwide, collective, coordinated, consolidated, mass and/or

representative *settlement* of claims." ECF 257-2, Ex. D (12/16/21 Uber TOU) at § 2 (emphasis added). This puts inordinate pressure on a Plaintiff to participate in any consolidated settlement program Uber chooses to offer, because the alternative is going it alone, precluded from coordinating with other plaintiffs to reduce litigation costs and obtain robust discovery.

### B.   Under federal law, Uber's TOU cannot dissolve MDL proceedings authorized by 28 U.S.C. § 1407.

Even if state law would treat Uber's TOU as an enforceable prohibition against MDL centralization, a private contract like the TOU cannot provide a rule of decision that displaces the federal statutory command of 28 U.S.C. § 1407. *See, e.g.*, *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 56 (2013) (explaining that the federal venue statute "cannot reasonably be read to allow judicial consideration of other, extrastatutory limitations" such as private contracts). As the JPML has twice explained, "Section 1407 authorizes the Panel to identify and centralize for pretrial proceedings multiple actions …, notwithstanding the parties' private agreements." *In re Uber*, 2024 WL 41889, at *4.

Unsurprisingly, Uber does not cite a single case enforcing terms of use to preclude application of the MDL statute. To Plaintiffs' knowledge, no such case exists. Instead, Uber cites cases enforcing "mandatory arbitration clauses." Mot. at 6-7. But arbitration clauses are enforced because there is a federal statute saying so. *See, e.g.*, *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 & 238 n.5 (2013) (deciding the case based on "the FAA's command to enforce arbitration agreements"); *cf. Davis v. Oasis Legal Fin. Operating Co.*, 936 F.3d 1174, 1183 (11th Cir. 2019) ("The class action waiver here is not contained in an arbitration agreement, so § 2 of the FAA does not stand in the way of enforcing Georgia's public policy."). Indeed, even the FAA can be "overridden by a contrary congressional command." *Am. Exp.*, 570 U.S. at 233 (citations omitted). Here, not only does the FAA not apply, but the applicable federal statute—28 U.S.C. § 1407—says that cases presenting common questions of fact may be centralized.

Uber also cites the fact that courts often enforce choice-of-law and forum-selection clauses, Mot. at 6-7, but omits the reality that courts do so only when no federal statute provides

otherwise.[5] In *Atlantic Marine*, the Supreme Court considered whether a forum selection clause could be enforced through a motion to dismiss for improper venue. The Court said no: "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." 571 U.S. at 55. The Court explained that 28 U.S.C. § 1391 prescribes the "criteria" determining venue in "all civil actions" that section," and § 1391's "language cannot reasonably be read to allow judicial consideration of other, extrastatutory limitations on the forum in which a case may be brought." *Id.* at 56. Thus, the Court held, "venue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause." *Id.* at 57. Just so here: § 1407 applies to "civil actions," and says when civil actions can be transferred for MDL proceedings, with no room for consideration of other, extrastatutory limitations, such as a non-consolidation clause.[6]

Uber also cites two district court cases declining to certify class or collective actions because of a contractual waiver. Mot. at 7. But even assuming those cases were rightly decided,[7] they are not informative here. Those decisions, to the extent they set out reasoning at all, relied on interpretations of the relevant federal law (Rule 23 and FLSA) as establishing only *options* plaintiffs might pursue (and accordingly could be deemed to have been waived), not a process a federal court must apply. *See, e.g.*, *Benedict v. Hewlett-Packard Co.*, No. 13-cv-119, 2016 WL 1213985, at *3 (N.D. Cal. Mar. 29, 2016). For example, Rule 23 requires someone able and willing to be a named plaintiff. *See* Fed. R. Civ. P. 23(a)(2). Indeed, a court's Rule 23 analysis is triggered by a person's choice to "sue … as a class representative." Fed. R. Civ. P. 23(c)(1)(A). In

---

[5] Indeed, courts decline to enforce choice-of-law provisions for a variety of reasons. *See, e.g.*, *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1038-39 (N.D. Cal. 2010).

[6] The Court held that a valid and enforceable forum selection clause *could* be enforced through a motion to transfer under 28 U.S.C. § 1404(a), but only to a point. The Court explained that § 1404(a) expressly required consideration of the parties' "private interests" that can be deemed waived. *Atl. Marine*, 571 U.S. at 63-64. But the statute also required consideration of "public-interest factors," and a motion to transfer can be denied on those factors despite the presence of a forum selection clause. *Id.* at 64. Just so here: § 1407 implicates public interests concerns, not just those specific to the parties. *In re Uber*, 2024 WL 41889, at *4.

[7] *But see In re Marriott Int'l Customer Data Breach Litig.*, MDL 2879, 2023 WL 8247865, at *7-8 (D. Md. Nov. 29, 2023) (Class waiver unenforceable in light of plain text of Rule 23), *appeals pending* (4th Cir. Nos. 24-1064, 24-1065).

contrast, § 1407 does not give plaintiffs or defendants any choice—it creates a procedural tool for the *court* to use. When it comes to § 1407, once the JPML has made the required findings, the statute does not give the parties any choice in the matter: actions "shall" be centralized.

Finally, Uber argues that centralization here "would mean that no party could ever enforce contractual terms regarding forum, choice of law, or the like." Mot. at 8 n.11. This is incorrect: such terms, where valid, may be enforced absent a federal statute saying otherwise.

In reality, it is Uber's position that has no ascertainable limiting principle. For example, it is well established that a district court can consolidate cases under Rule 42 sua sponte. *See, e.g.*, *Solannex v. Miasole, Inc.*, No. 11-cv-171, 2013 WL 430984, at *2 (N.D. Cal. Feb. 1, 2013). Can the parties, by agreement, tie a court's hand when there are multiple cases in the same district and *the court* deems consolidation to be suitable? Clearly not. Read literally, Uber's clause bars even *pretrial informal* coordination of cases. Thus, it would bar the court from informally coordinating discovery in multiple cases pending before the court, setting up a document depository for multiple cases, having joint status conferences for similar cases, etc. It would be absurd if parties, by agreement, could deprive a district court of essential case management tools. *See, e.g.*, *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020) (Courts do not enforce contract language that "lead[s] to absurd results.") (citation omitted). To be sure, parties can agree to an alternative forum (e.g., arbitration). But they cannot stay in federal court and then deprive the court system of its essential case management powers under binding federal statutes and rules.

## C.    Uber does not request actionable relief.

Even if the non-consolidation clause were enforceable in some sense, it is unclear what the Court would do about it. While Uber's proposed order would simply "GRANT" its motion without further detail, ECF 257-3, its brief suggests two courses of action: "dismiss Plaintiffs' actions, or alternatively, order them transferred to the states in which the alleged incidents occurred." Mot. at 8. There is no basis to dismiss Plaintiffs' cases. The non-consolidation clause does not prevent Plaintiffs from maintaining their individual actions. Nor does it make venue improper. *See* 28 U.S.C. § 1391(b). And transfer makes no sense. There will be an MDL here

1   regardless (Uber has moved only as to 29 Plaintiffs).[8] If the Court transfers a case somewhere

2   else, it will be transferred right back here for coordinated pretrial proceedings.

3          Perhaps recognizing the lack of any actionable relief, Uber says it wants an "assessment"

4   that its non-consolidation clause is "enforceable." Mot. at 8 n.11. For this request, it relies on the

5   JPML's allowance for "briefing" in this Court on "the enforceability of Uber's Terms of Use." *In*

6   *re Uber*, 2023 WL 6456588, at *2. But federal courts are not in the business of making free-

7   floating "assessments" that do not translate into actual relief. *Cf., e.g.*, *San Diego Cnty. Credit*

8   *Union v. Citizens Equity First Credit Union*, 65 F. 4th 1012, 1022-23 (9th Cir. 2023) ("party

9   seeking declaratory relief" must still establish an "injury" that "will be redressed by a favorable

10  decision") (citation omitted). And Uber over-reads the JPML's suggestion. In context, the court

11  was referring to the argument that the TOU were not enforceable at all due to lack of adequate

12  notice. The question presented in this motion—whether an MDL will exist for these cases—has

13  been answered, in the affirmative, twice by the JPML.

14  **III.    Uber's forum selection motion should be denied.**

15         Assuming Uber could meet its burden to show that each Plaintiff assented to the forum

16  selection clause, its motion should still be denied. When considering a motion to transfer based on

17  a forum selection clause, courts undertake a two-step process. First, the court must determine that

18  the clause is "valid and enforceable and that it encompasses the claims at issue." *Kooiman v.*

19  *Siwell, Inc.*, No. 20-cv-565, 2021 WL 899095, at *2 (C.D. Cal. Jan. 4, 2021). Second, if the court

20  determines a valid and enforceable forum selection clause exists, the court must evaluate the

21  relevant factors under 28 U.S.C. § 1404(a). *Id.*

22  **A.      The Court need not address Uber's transfer motion now.**

23         To start, this is not the motion the Court ordered Uber to file—it does not concern

24  "Plaintiffs' ability to bring their claims in a coordinated or consolidated proceeding." ECF 175 at

25  ─────────────────────────────

26  [8] The remaining universe of Plaintiffs includes those who filed before Uber changed its TOU, and
    those whose claims accrued after Congress banned the enforcement of pre-dispute joint-action
    waivers in sexual assault cases. *See* 9 U.S.C. § 402(a). Uber argues, based on an off-point law

27  review article, that Uber's decision to exempt Plaintiffs from binding arbitration means this
    statute does not apply (Mot. at 6 n.9), but this is not true. *See* 9 U.S.C. § 402(a) (prohibiting *both*

28  "arbitration agreement[s]" *and* "joint-action waiver[s]"). While the status of other Plaintiffs is not
    at issue in this motion, it is very likely they will remain in an MDL.

¶ 9(A). Uber appears to assume that its clause, if valid, implicates "Plaintiffs' participation in this MDL … in the Northern District of California." Mot. at 1-2. But it is firmly established that forum selection clauses do not affect the proper location of coordinated pretrial proceedings under § 1407. *See, e.g.*, *In re: Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*, 655 F. Supp. 2d 1378, 1379 (J.P.M.L. 2009). Uber's forum-selection motion goes only to where those cases may be tried. If the Court agrees that Uber's forum selection clause requires transfer, it can issue a transfer order when it decides that cases should be remanded for trial. If the Court orders transfer now, the parties will have to waste time and resources filing tag-along notices.

The motion is also premature. It is possible that, if the state-court *forum non conveniens* order is reversed, some Plaintiffs may opt to return to state court, taking disputes about the forum selection clause with them. Or, when the MDL proceedings are concluded, and the reality of trial schedules becomes apparent, some Plaintiffs may agree with Uber to transfer their cases out of this District. The Court need not decide a motion that is not particularly ripe.

**B.      Because Uber promised to "honor" sexual assault plaintiffs' "election" of forum, the forum selection clause does not cover the claims at issue.**

Uber's forum selection clause does not "encompass[] the claims at issue." *Kooiman*, 2021 WL 899095, at *2. When Uber modified its TOU to include the forum selection clause for personal injury claims generally, it retained its promise to honor a sexual assault victim's choice of forum. *See* Ex. C (1/18/21 Uber TOU) at § 2(b). Discussing "sexual assault or sexual harassment" claims, the current TOU state: "Where your claims are brought and litigated to completion on such an individual basis in a court of competent jurisdiction, Uber agrees to honor your election." ECF 257-2, Ex. F at § 2(b). This language controls over the forum selection clause: it appears in Section 2 ("Arbitration Agreement"), and Section 7 (the forum selection clause) provides that the forum selection clause applies only "except as may be otherwise provided in the Arbitration Agreement in Section 2." *Id.*; *accord* ECF 257-2, Exs. D-E at § 2(b).

The best reading of Uber's "election" language in Section 2 is that it promised to "honor" Plaintiffs' chosen "court of competent jurisdiction." At worst, the provision is ambiguous, and "ambiguous contract provisions should be construed against the drafter," here Uber. *Int'l Bro. of*

*Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020). This rule applies with particular force to "form contracts," where the contract was "imposed and drafted by the party of superior bargaining strength." *Congdon v. Uber Techs., Inc.*, 291 F. Supp. 3d 1012, 1021, 1021 n.10 (N.D. Cal. 2018) (citation omitted). All the more so when the drafter, Uber, routinely amends its TOU but has not clarified any ambiguity over the ensuing two years.

Uber may argue that it changed the meaning of this provision by excising the words "of forum" from "honor your election" in the January 18, 2021 revision to the TOU. *Compare* Ex. B (11/12/19 Uber TOU) at § 2 *with* Ex. C (1/18/21 Uber TOU) at § 2. But courts do not examine extrinsic evidence, like previous agreements between the parties, when interpreting ambiguous adhesion contracts; instead, any ambiguities are construed against the drafter. *See, e.g.*, *Congdon*, 291 F. Supp. 3d at 1021-22 (collecting cases). And, extrinsic evidence goes both ways: if the Court were to look at extrinsic evidence, it would have to consider, for example, Uber's public commitment to honor Plaintiffs' "venue they prefer." Uber, *Turning the Lights On*.

### C.   Uber's forum selection clause is unenforceable.

Forum "selection clauses contained in form [] contracts are subject to judicial scrutiny for fundamental fairness." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). Courts do not enforce such clauses where doing so would be "unreasonable and unjust," where "the agreement was affected by fraud, undue influence, or overweening bargaining power, *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1287 (9th Cir. 2006) (citation omitted), or where "inclusion of the clause was motivated by bad faith," *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F. Supp. 2d 855, 858 (N.D. Cal. 2010). Uber's clause is unenforceable for several reasons.

### 1.   The clause is affected by fraud.

The clause is unenforceable because it was "affected by fraud." *Nagrampa*, 469 F.3d at 1287. Plaintiffs allege that Uber engaged in widespread fraud on its passengers and the public that it would ensure a safe ride, especially for women. *See* ECF 269 at ¶¶ 187-239. Uber induced women to use its product based on the false impression that Uber was working to mitigate or eliminate the risk of sexual assault. That false impression necessarily would affect any person's evaluation of a forum selection clause concerning incidents of sexual assault. Each Plaintiff

1    alleges that they relied to their detriment on Uber's promises of safety, a misapprehension that

2    attaches to this clause as well.

3          The clause was infected by fraud of a more specific sense too. Uber promised its

4    passengers that they could choose to sue Uber "in the venue they prefer" and "tell their story

5    *wherever* they see fit." Uber, *Turning the Lights On* (emphasis added). Uber has resisted

6    coordinated litigation on the basis that each survivor must be "give[n] control of their options."

7    Ex. F (Uber Opp'n to Pet. for Coord.) at 5. Even today, Uber touts survivors' rights to determine

8    "how and when they get to tell their story." *See* 2/22/24 H'rg Tr. at 22:7-14. Having promised,

9    over and over, that survivors could control their lawsuits, and having relied on that fact in its own

10   litigation defense, Uber cannot now abandon its commitments based on a forum selection clause

11   smuggled in when the risks of California-based litigation to the company became apparent.

12   Especially so when any Plaintiff reviewing the TOU would have seen the reassurances that Uber

13   would honor her "election."

14         Plaintiffs relied on that specific promise. Four Plaintiffs sent preservation letters before

15   the forum selection clause appeared in the TOU. Ex. I. Several more sent letters soon after,

16   suggesting that they, too, took specific steps to retain counsel and prepare lawsuits, implicitly

17   relying on the fact that they then had the right to the forum of their choice. *Id*. More generally, 23

18   Plaintiffs were assaulted before Uber added the forum selection clause: each processed her

19   experience and evaluated her legal options against the backdrop of Uber's promise—at the time

20   unambiguously captured in the TOU—that they could file lawsuits in the forum of their choice.

21              **2.        The clause is the result of bad faith and overreach.**

22         The clause is also unenforceable because it reflects bad faith "overreaching." *Murphy*, 362

23   F.3d at 1141 ("overreaching" is a "ground short of fraud" for invalidating a forum selection

24   clause); *see also Carnival Cruise*, 499 U.S. at 595 (enforcing clause only upon no "suggestion of

25   … a bad-faith motive"); *Laasko v. Xerox Corp.*, 566 F. Supp. 2d 1018, 1023-24 (C.D. Cal. 2008)

26   (courts consider "whether the forum selection clause was motivated by bad faith").

27         This clause is not the kind of ex ante expectations-setting that happens in commercial

28   contracts every day. It was an attempt to modify the terms of pending and immediately impending

litigation to improve Uber's chances of evading liability for sexual assault by requiring such actions to be spread across multiple fora. *Cf. Iragorri v. United Tech. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001) (noting courts must be cognizant that defendants can engage in improper "forum-shopping" too); *In re Bavaria Yachts USA, LLLP*, 575 B.R. 540, 563 (Bankr. N.D. Ga. 2017) ("Neither party should want to multiply litigation and increase the costs of litigation unless one party perceives that to be to its advantage because the other party cannot afford the increased costs or inconvenience."). If the timeline of events did not make this clear, the fact that Uber's 1/18/21 clause directed all cases *other* than personal injury cases to *California* courts does.[9]

Even worse, 23 of these 29 Plaintiffs were sexually assaulted before Uber added the 1/18/21 forum selection clause. Ex. G (assault chart). We do not yet know how many of those assaults Uber knew of immediately (an open fact issue that alone justifies denial of the motion), but given the allegations in the Master Complaint, the Court should presume Uber was on notice of all of them. *See Murphy*, 362 F.3d at 1138 (on a motion to enforce "a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party"). In other words, Uber knew these Plaintiffs were likely to sue Uber in the near future when it pushed out its revised TOU.

Indeed, Uber pushed out this clause even though it was on actual notice that at least four of these women had intent to sue and, by sending preservation letters, had demonstrated specific reliance on their freedom to choose their forum by hiring California-based counsel. Ex. I (preservation letter chart). Undoubtedly Uber's legal counsel (in-house or otherwise) were involved in drafting the clause, yet they pushed it out to known victims, undermining the protections of professional conduct rules prohibiting communication with represented parties. *See* Cal. Prof. Conduct R. 4.2(a). This clause was not a rote application of freedom of contract, but rather a bad-faith attempt to manipulate forum selection in Uber's favor.

---

[9] As mentioned above, Uber later removed this incongruity from its TOU (and now requires all disputes be filed where they arise). But it is still illustrative as to Uber's intentions in adopting the forum selection clause, especially as to the 11 of the 29 Plaintiffs who had already sued before Uber standardized the clause.

### 3.      The clause is unreasonable.

The clause is unreasonable and unjust because it does not reflect standard contract-based expectations. Courts enforce forum selection clauses that reflect "the parties' settled expectations." *D&S Consulting, Inc. v. Kingdom of Saudi Arabia*, 961 F.3d 1209, 1213 (D.C. Cir. 2020 (citation omitted). This is not one of those clauses. Uber's clause does not have "the salutary effect of dispelling any confusion about where suits arising from the contract may be brought and defended." *Carnival Cruise*, 499 U.S. at 593-94. It does not point lawsuits against Uber to a particular forum. It instead selects the forum where the passenger was or will be sexually assaulted. But sexual assault is not a feature of daily life, like a disputed cable bill, that people bake into their contractual expectations. No one can be presumed to make a reasoned decision to sue in the state where they are sexually assaulted because their baseline assumption is that they will not be sexually assaulted. This is especially true here, where Uber marketed its service on the premise that it was safe, inducing riders to use its product based on the false impression that Uber was working to eliminate the risk of sexual assault.

Indeed, the 1/18/21 version of the TOU in place when 11 of these Plaintiffs filed their state court actions made things even worse by distinguishing between personal injury claims (state of incident) and all other disputes (California). Ex. C (1/18/21 Uber TOU) at § 7. For example, if a user was assaulted in Missouri and the driver then forced her out of the car and drove off with her purse, would she need to bring a claim based on the assault in Missouri but a claim based on the theft in California? Here is the point: no Plaintiff could read this clause and make a reasoned decision about how its inclusion should affect her decision to ride with Uber.

### D.      Even if enforceable, the forum selection clause does not require transfer.

Even where a valid and enforceable forum selection clause exists, courts will evaluate a motion to transfer under the "public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Org., Inc. Ricoh Corp.*, 487 U.S. 22, 30 (1988). Although "exceptional cases" in which public-interest considerations alone justify a denial of a transfer motion are "uncommon," they exist. *Atl. Marine*, 571 U.S. at 64; *see also BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*,

PLS.' OPP'N TO DEF.'S MOT.
RE: UBER'S TERMS OF USE
CASE NO. 3:23-MD-03084

No. 17-cv-503, 2019 WL 2017541, at *7 (E.D. Va. May 7, 2019) ("As the *Atlantic Marine* Court noted, public interest may call for refusing to honor the choice of forum clause. Even though such cases may be rare, the Court did not foreclose the possibility that public interest could be so compelling as to warrant retaining jurisdiction."); *Silvis v. Ambit Ener., L.P.*, 90 F. Supp. 3d 393, 398-99 (E.D. Pa. 2015) (denying transfer despite forum selection clause given local interest in the controversy).

### 1.    The burden on the courts weighs against transfer.

The factor weighing most heavily against transfer is the burden on the courts and considerations of judicial efficiency. *See, e.g.*, *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344-45 (Fed. Cir. 2010) (approving order denying transfer based on "judicial economy considerations" even when "all of the convenience factors clearly favor transfer"). No matter the ruling on the motion to transfer, there will be an MDL here. There will also be cases directly filed here (e.g., Plaintiffs injured in California and Plaintiffs who sued before Uber added the forum selection clause, or who never assented to the clause). This Court will oversee pretrial proceedings in all federal Uber sexual assault cases, and trial in some, no matter where these particular 29 cases are sent for trial.

By trial, this Court will be familiar with the evidence and legal issues presented. The existence of the MDL distinguishes this case from the JCCP's evaluation of public interest factors in granting Uber's *forum non conveniens* motion, as well as from Judge Orrick's decision in *Doe v. Uber Techs., Inc.*, No. 17-950, 2017 WL 2352032 (N.D. Cal. May 31, 2017). In both cases, the question was whether the California court would oversee the out-of-state cases from start-to-finish, or not at all. Here, it is more efficient for this Court to oversee trial in these actions. For example, in *Vistaprint*, the Federal Circuit denied a mandamus petition arising from a district court's decision denying a motion to transfer a patent suit, notwithstanding that the convenience factors favored transfer. 628 F.3d at 1344-45. The court explained that judicial economy justified denial of the motion because the district court "had substantial experience" with the facts at issue "based on prior litigation involving the plaintiff," and because "there was also a second, co-pending case before the court between the plaintiff and another defendant … pertaining to the same underlying technology, and involving similar accused services." *Id.* Just so here.

This applies to the law as well as the facts. Uber argues that choice-of-law considerations favor transfer. Mot. at 13. That is wrong. Because the MDL is here, this Court will evaluate the law applicable to each case regardless as part of its pretrial adjudications. *See* 11/3/23 H'rg Tr. at 28:23-25 (noting that MDL courts decide issues arising under many states' laws "all the time"). There is nothing special about state TNC statutes. The Court will evaluate the relevance (if any) of those statutes to Uber's liability and so will be in sound position to apply those rulings at trial and to any post-trial motions.

### 2. California has significant interest in local trial of these cases.

California has a significant interest in local adjudication of these cases. This is litigation about a company headquartered in California making decisions in California that put women at increased risk of sexual assault. There is a strong local interest in regulating those centralized policies and representations, notwithstanding that their effects are felt nationwide (including in California). *Cf. In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237-38 (N.D. Cal. 2012) (applying California law to out-of-state consumers because "Clorox conducts substantial business in California and has its principal place of business and corporate headquarters in the state, decisions regarding the challenged representations were made in California, Clorox's marketing activities were coordinated at its California headquarters, and a significant number of class members reside in California.").

Uber says that "[t]he only connection these lawsuits have to the state of California is that Uber … has a headquarters here." Mot. at 14. That ignores the Master Complaint, which explains that the cruxes of this litigation are Uber's choice to create and popularize an innovative business model (normalizing hitchhiking) while failing to take any steps to evaluate or mitigate the risks of sexual assault that model would create; Uber's choice to prioritize the acquisition of drivers and riders over safety; and Uber's choice to guarantee a safe ride, making riders comfortable using this new kind of service. All those choices were made in California.[10]

---

[10] Uber cites *Hyundai Space & Aircraft Co. v. Boeing Co.*, No. 99-cv-3255, 1999 WL 9101131 (N.D. Cal. Oct. 12, 1999), but that court transferred because "[n]o party, witness, or document is located in the Northern District" and "[n]one of the negotiations, transactions, or events that form the basis of this dispute occurred in this district." *Id.* at *5. The opposite is true here.

### 3. Litigation costs do not support Uber's motion.

Finally, Uber argues that consideration of litigation costs merit transfer. It isn't clear why—litigation costs are not a public interest factor. In any event, Uber is wrong: the bulk of the "witnesses expected to testify or give depositions," Mot. at 14, are here, in San Francisco, where Uber's policies and marketing were devised and implemented, and where the employees handling rider, driver, and safety data are located. Uber cites *Italian Colors Rest. v. Am. Expr. Co.*, No. 03-cv-3719, 2003 WL 22682482, at *3 (N.D. Cal. Nov. 10, 2003), but that case found transfer appropriate to the state where the defendant had its "principal place of business," exactly where Plaintiffs propose to try these cases.

Uber also argues that it "has the right to bring, and does bring, contribution and indemnity claims against the accused drivers" and that it will be unable to do so in this Court. Mot. at 14. Absent from this claim are any actual examples, let alone a number sufficient to make this any more than speculation. *See L.G. v. Red Roof Inns., Inc.*, No. 22-cv-1924, 2022 WL 4091837, at *4 (S.D. Ohio Sept. 7, 2022) (in sexual assault case, denying motion to transfer where movants "speculate[d] that it is unlikely that key witnesses, such as Plaintiff's alleged traffickers, would voluntarily appear live at trial in Ohio"); *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1168 (D. Colo. 2005) (denying motion to transfer where the movants' "assertion that [a third party witness] will not appear before this Court, at this juncture in the litigation, is purely speculative."). Uber may not find the drivers, may not compel their compliance with process, or may decide that the time and expense of going after likely judgment-proof individuals is not worth it. *See L.G.*, 2022 WL 4091837, at *4 (expressing doubt that "if located and subpoenaed, … alleged sex traffickers would appear live at trial" anywhere).

If Uber locates and sues a driver and identifies an actual hurdle based on where a case is pending, it can make a motion to transfer that case at that time. But Uber's vague plans and aspirations do not support granting a transfer motion en masse.

### CONCLUSION

For these reasons, Plaintiffs respectfully request that Uber's motion regarding its Terms of Use be denied.

Dated: March 12, 2024

Respectfully submitted,

By: */s/ Sarah R. London*
    Sarah R. London (SBN 267083)

    **LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP**
    275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
    Facsimile: (415) 956-1008
    slondon@lchb.com

By: */s/ Rachel B. Abrams*
    Rachel B. Abrams (SBN 209316)

    **PEIFFER WOLF CARR KANE
    CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Facsimile: (415) 840-9435
    rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
    Roopal P. Luhana

    **CHAFFIN LUHANA LLP**
    600 Third Avenue, 12th Floor
    New York, NY 10016
    Telephone: (888) 480-1123
    Facsimile: (888) 499-1123
    luhana@chaffinluhana.com

    *Co-Lead Counsel*