# EXHIBIT F

1

2  **BUCHALTER**
   A Professional Corporation
3  GARY A. WOLENSKY (SBN: 154041)
   PAUL A. ALARCON (SBN: 275036)
   SAMUEL Q. SCHLEIER (SBN: 312449)
4  ELENI A. SWANK (SBN: 318462)
   18400 Von Karman Avenue, Suite 800
5  Irvine, CA 92612-0514
   Tel: (949) 760-1121
6  Fax: (949) 720-0182
   E-mail: gwolensky@buchalter.com
7
   **PAUL, WEISS, RIFKIND, WHARTON &**
8  **GARRISON LLP**
   ROBERT ATKINS (*pro hac vice*)
9  RANDY LUSKEY (SBN: 240915)
   943 Steiner St.
10 San Francisco, CA 94117
   Tel: (628) 432-5112
11 Fax: (202) 204-7391
   Email: rluskey@paulweiss.com
12
   Attorneys for Defendants
13 Uber Technologies, Inc. and Rasier, LLC

14

ELECTRONICALLY

**F I L E D**

*Superior Court of California,*
*County of San Francisco*

**08/18/2021**
**Clerk of the Court**
BY: JUDITH NUNEZ
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

15

COUNTY OF SAN FRANCISCO

16

17 Coordination Proceeding

18 *Uber Sexual Assault Cases*

19

20

21

JUDICIAL COUNCIL COORDINATION
PROCEEDING NO. 5188

**DEFENDANTS UBER TECHNOLOGIES,
INC. AND RASIER, LLC'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
PETITION FOR COORDINATION**

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

# TABLE OF CONTENTS

<b><u>Page</u></b>

I.  INTRODUCTION .................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 4

    A.  The Petition Lumps Together Personal Injury Actions from 23 States ................. 4

    B.  Uber's Terms of Use Recognize Each Survivors' Voice and Individuality and Plaintiffs Contractually Agreed *Not* to Proceed on a Coordinated Basis......... 4

    C.  The Threshold Issue:  These Cases Are Not Complex ........................................... 6

        1.  There Will *Not* Be an Unusual Number of Pretrial Motions Raising Difficult or Novel Issues That Will Be Time-Consuming to Resolve ........ 7

        2.  The Cases Do *Not* Involve a Large Number of Witnesses or Substantial Documentary Evidence ............................................................ 7

        3.  There Are *Not* a Large Number of Separately Represented Parties............ 8

        4.  There Is *No* Coordination with Actions in Other Counties, States, Countries or in a Federal Court, and None is Necessary ......................... 8

        5.  Any Judgments Will *Not* Require Judicial Supervision............................. 8

    D.  Even If the Cases Were Complex (Which They Are Not), the Section 404.1 Factors Weigh *Against* Coordination .................................................................. 9

        1.  Highly Individualized Issues Will Far Exceed Any Common Issues ......... 9

        2.  Coordination Would Be Inconvenient for the Parties, Witnesses, Counsel and the Court.......................................................................... 21

        3.  The Relative Development of the Actions and the Work Product of Counsel Weigh Heavily *Against* Coordination.......................................... 23

        4.  Coordination Would Not Result in a More Efficient Use of Judicial Resources ............................................................................................ 23

        5.  Calendar of the Courts ......................................................................... 24

        6.  There is Little Risk of Duplicative and Inconsistent Rulings, Orders, or Judgments ......................................................................... 24

        7.  Coordination Is Not Needed to Promote the Likelihood of Settlement............................................................................................ 25

III.  CONCLUSION.................................................................................................. 25

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 46605206v1

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Amazon.com, Inc.* v. *McMillan*,
  No. 20-0979, 2021 WL 2605885 (Tex. June 25, 2021) ....................................................... 21

*Graham* v. *Concord Constr., Inc.*,
  100 Wash. App. 851, 999 P.2d 1264 (2000) ...................................................................... 21

*Branham* v. *Ford Motor Co.*,
  390 S.C. 203 (2010) .......................................................................................................... 21

*Castro* v. *Budget Rent-A-Car Sys., Inc.*,
  154 Cal. App. 4th 1162 (2007) ......................................................................................... 12

*Doe* v. *Uber Technologies, Inc.*,
  No. 20-CV-8446 (LJL), 2021 WL 3193166 (S.D.N.Y. July 28, 2021) ................................ 15

*Doe v. Uber Techs., Inc.*,
  17-cv-00950-WHO (N.D. Cal. May 31, 2017) ................................................................... 10

*Doe* v. *Uber Techs., Inc.*,
  CGC-17-556481 (San Francisco Super. Ct. Aug. 11, 2017) ................................................ 10

*Doe* v. *Uber Techs., Inc.*,
  CGC-19-579901 (San Francisco Super. Ct. Mar. 24, 2020) ................................................ 10

*Frontier Oil Corp.* v. *RLI Ins. Co.*,
  153 Cal. App. 4th 1436 (2007) ......................................................................................... 12

*Gorne & Walker* v. *Uber Techs., Inc.*,
  CGC-19-575852 (San Francisco Super. Ct. July 1, 2019) .................................................. 10

*Graff* v. *Motta*,
  695 A.2d 486 (R.I. 1997) .................................................................................................. 19

*Harvey* v. *D & L Constr. Co.*,
  251 Cal. App. 2d 48 (1967) .............................................................................................. 12

*Huang* v. *The Bicycle Casino, Inc.*,
  4 Cal. App. 5th 329 (2016) ............................................................................................... 15

*Jackson* v. *Stancil*,
  253 N.C. 291 (1960) ......................................................................................................... 15

ii

Defendant Uber's Memo. of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 46605206v1

*Jane Doe LSA 84* v. *Uber Techs.*,
    21STCV23848 (Super. Ct., Cnty. of Los Angeles, July 27, 2021)...........................................6

*Jane Doe LSA 85* v. *Uber Techs.*
    21STCV23843 (Super. Ct., Cnty. of Los Angeles, July 27, 2021)...........................................6

*Jane Doe No. 1, et al.* v. *Uber Technologies, Inc., et al.*
    Super. Ct. L.A. County, Case No. 19STCV11874 (Nov. 30, 2020) .....................................21

*Jane Doe* v. *Uber Techs.*,
    No. CGC-20-584649[?] ...........................................................................................10, 22

*Jones* v. *Awad*,
    39 Cal. App. 5th 1200 (2019)...............................................................................................14

*Lewellen* v. *Franklin*,
    441 S.W.3d 136 (Mo. 2014)..................................................................................................20

*In re Lyft Rideshare Cases*,
    Order Granting Coordination, JCCP 5061 (Jan. 17, 2020) .............................................4, 11

*McKnight* v. *Uber Technologies, Inc.*,
    1:14-cv-05615-JST (N.D. Cal. Jun. 1, 2017) .......................................................................20

*McReynolds* v. *Krebs*,
    725 S.E.2d 584 (Ga. 2012) ...................................................................................................19

*NFL* v. *Fireman's Fund Ins. Co.*,
    216 Cal. App. 4th 902 (2013)................................................................................................10

*Pearl* v. *City of Los Angeles*,
    36 Cal. App. 5th 475 (2019)..................................................................................................18

*Pedeferri* v. *Seidner Enters.*,
    216 Cal. App. 4th 359 (2013)................................................................................................19

*Philipson & Simon* v. *Gulsvig*,
    154 Cal. App. 4th 347 (2007)................................................................................................20

*Pierson* v. *Sharp Mem'l Hosp., Inc.*,
    216 Cal. App. 3d 340, 264 Cal. Rptr. 673 (Ct. App. 1989) ..................................................21

*Polanco* v. *Lyft, Inc.*,
    Super Ct. Orange County, Case No. 30-2019-01065850 (May 13, 2021)..............................21

*Sanchez* v. *Carmax Auto Superstores Cal., LLC*,
    224 Cal. App. 4th 398 (2014).................................................................................................6

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 46605206v1

*Squaw Valley Ski Corp.* v. *Superior Ct.*,
    2 Cal. App. 4th 1499 (1992) ............................................................................ 7

*Stangvik* v. *Shiley Inc.*,
    54 Cal. 3d 744 (1991) ................................................................................ 10

*State Farm Mut. Auto Ins. Co.* v. *Campbell*,
    538 U.S. 408 (2003) .................................................................................. 22

*Toral* v. *Bazzi, et al.*,
    No. 20STCV02030 (Super. Ct. L.A. County Apr. 14, 2021) ........................ 21

*Wardingley* v. *Uber Technologies, Inc., et al.*,
    No. 2402-17-81 (Harrison Cty. Circ. Ct., Miss., Dec. 9, 2019) ..................... 14

**Statutes**

Pa. C.S.A. § 2604.1(b)(5) .................................................................................. 14

Code of Civ. Proc. § 389 ................................................................................... 11

Colo. Rev. Stat. § 13-21-102(1)(a) ...................................................................... 19

Fla. Stat. ch. 934.03 .......................................................................................... 16

Fla. Stat. § 627.748 (2) ...................................................................................... 15

Haw. Rev. Stat. Ann. § 663-8.7 .......................................................................... 19

Idaho Code Ann. § 6-1603(1) .............................................................................. 19

N.C. Gen. Stat. Ann. § 1D-25 ............................................................................. 19

N.Y. Penal Law § 250.00 ................................................................................... 16

Tex. Occ. Code § 2402.002 ................................................................................ 15

Va. Code § 46.2-2000 ........................................................................................ 15

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 46605206v1

Defendant Uber's Memo. of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

I.      **INTRODUCTION**

Plaintiffs' petition should be denied because (1) Plaintiffs contractually agreed to pursue only individualized lawsuits and (2) coordination would create and exacerbate the case-management difficulties the rules are intended to minimize and mitigate.

Plaintiffs propose to combine numerous personal injury suits, each involving different circumstances, causes, places, time periods, parties, and witnesses. Naming a single corporate defendant does not create commonality. Uber's business operations are not uniform -- *i.e.*, there is no common conduct across all the states. That lack of commonality is compounded by the fact that half of the alleged incidents happened outside California, thus implicating the law of 22 other states.

There is a decentralized patchwork of different state and local laws and regulations governing transportation network companies, which create different legal duties on top of the state-by-state differences in common law duties and defenses. They outline varying requirements that do not provide one unified template pertaining to screening, onboarding documentation, policies to be implemented, and data reporting. For example, there is not one, common, or unified set of laws regarding background checks, driver screening, and onboarding.  The host of choice of law questions and *forum non conveniens* issues generated by the out-of-state plaintiffs and claims alone subvert the goals of coordination.[1] But those are not the only problems with Plaintiffs' proposed 23-state coordinated proceeding: *e.g.*, if out-of-state driver-defendants are dismissed for lack of personal jurisdiction -- as has happened already -- there will be duplicative litigation in 22 or more states to resolve Uber's indemnity claims against the independent drivers. Thus, coordinating all 86 cases would not simplify the issues or streamline management of the cases; it would needlessly complicate and multiply the litigations.

Uber believes that sexual assault and misconduct do not belong anywhere and that the allegations documented in these complaints are extremely serious and, if proven, the alleged

---

[1] Plaintiffs' counsel recently disclosed that of the 86 cases that they seek to coordinate, only 40 involve underlying incidents that took place in California. The rest took place in 22 other states, including New York, Alabama, the District of Columbia, Georgia, and Hawaii. (Alarcon Declaration, ¶ 2.) Prior to this disclosure, Levin Simes revealed in a media interview that it planned to file around 1,000 such cases against Uber and Lyft, and that among those cases, only 1/3 took place within California. *See* Taylor Bisacky, Uber faces mounting sexual assault, harassment lawsuits in San Francisco, KRON4 (June 30, 2021), https://www.kron4.com/news/bay-area/uber-faces-mounting-sexual-assault-harassment-lawsuits-in-san-francisco/.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

behavior of the accused drivers is reprehensible.  But the gravity of claims does not make the actions "complex" -- the threshold test for coordination.  These personal injury lawsuits do not require "exceptional judicial management."  Each case has a handful of parties, a reasonable number of witnesses, readily manageable discovery, and ordinary pretrial motions. Complexity in these matters will come from trying to coordinate highly individualized actions with no common fact patterns, driver conduct, causes, injuries and, for many cases, case law or statutes.

This is not a mass tort litigation with uniform claims. The petition ignores that allegations of sexual assault are some of the most individualized experiences subject to litigation. Experts attest that such experiences are incredibly varied, intensely individual, and deeply personal.[2]  In recognizing the highly individualized nature of sexual assault and misconduct, Uber partnered with RALIANCE, the National Sexual Violence Resource Center, and the Urban Institute to develop a first of its kind taxonomy to classify incidents of sexual misconduct.[3] Uber's ongoing work with advocate experts continues to inform its understanding of the individuality of these experiences.

Additionally, most of the key questions will have to be decided case by case, making coordinated management inefficient and confusing. Did the underlying incident occur as alleged? Is the driver's fault the superseding or sole cause for the alleged harm? How should issues of contribution and indemnity be adjudicated between Defendants if the individual perpetrator is not deemed to be the sole cause?  What are the particular facts of the independent driver's background -- did a driver have any legally relevant history that was missed by the accredited third-party background check provider (which may lead to its addition to the lawsuit as a party)? What specific statements by Uber did each particular plaintiff actually see? Did the incident occur outside a

---

[2] Rape, Abuse & Incest National Network, *Statistics*, https://www.rainn.org/statistics; *see also* Sarah M. Greathouse et al., *A Review of the Literature on Sexual Assault Perpetrator Characteristics and Behaviors* (2015), https://www.rand.org/content/dam/rand/pubs/research_reports/RR1000/RR1082/RAND_RR1082.pdf;  National Sexual Violence Resource Center, *Seeing the Whole Survivor: Why It's Necessary to Talk About Identity for Survivors as Individuals and in Groups* (Feb. 25, 2019), https://www.nsvrc.org/blogs/seeing-whole-survivor-why-its-necessary-talk-about-identitysurvivors-individuals-and-groups ("Every survivor's experience is unique and valid. Although there are many ways survivors relate to one another in their experience of trauma and journey to healing – a survivor's experience is uniquely shaped by their personal history, identity, context, culture, and community."); Rape, Abuse & Incest National Network, *Survivor Stories*, https://www.rainn.org/survivor-stories (last visited July 16, 2021) ("No one person's story is alike. No one survivor's experience is the same.").
[3] NSVRC, Helping Industries to Classify Reports of Sexual Harassment, Sexual Misconduct, and Sexual Assault, https://www.nsvrc.org/sites/default/files/publications/2018-11/NSVRC_HelpingIndustries.pdf.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188
BN 46605206v1

driver's vehicle, which could implicate the common carrier analysis? All these questions, and more, are unique issues in each case, and no one blanket determination resolves them across the 86 complaints.

Naming Uber as a defendant cannot overcome the lack of commonality. On the contrary, the differences in Uber's business -- temporally and geographically -- and the array of different applicable state and municipal laws make the lack of commonality more pronounced. There is no common set of facts relating to Uber's conduct because Uber's business operations vary from region to region. Since Uber is governed by different state and municipal regulatory schemes, issues related to Uber's duty of care will vary from state to state.

Accordingly, the overwhelming number of factual and legal issues are *not* common. The elements of each claim -- as well as the discovery issues and different laws and regulations -- will be different in each case. There are 86 different incidents which took place in different regions and time periods, and were committed by different perpetrators under different rideshare regulations. The petition does not even acknowledge these differences, much less attempt to show how coordination would make sense in light of them. Even if the plaintiffs could make an argument to coordinate cases concerning incidents that occurred in California and plaintiffs who reside in California -- the 40 out-of-state cases do not belong in and would not fit in such a centralized proceeding. Before the out-of-state cases can even proceed, motions to dismiss on *forum non conveniens* grounds will have to be decided based on the facts specific to each case. To the extent any of those cases are not dismissed, the applicable state law will have to be determined and applied to the facts of the claims on a case-by-case basis.

Moreover, nearly all of the 86 plaintiffs agreed in Uber's Terms of Use that any claims against Uber would be brought "only on an individual basis" and not in any collective or coordinated proceeding. Uber's work with advocates in this space helped inform its marketplace terms of service, including that each claim should be brought individually and not collectively, given the fact that no two sexual assaults are alike and these experiences are unique to each claimant. The Court should enforce the Terms of Use accordingly, which bar collective and coordinated actions, and preserve the individual nature of these incidents.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188
BN 46605206v1

Rather than grappling with these considerations, Plaintiffs rely heavily on the decision granting coordination in *In re Lyft Rideshare Cases*, CJC20005061 (Jan. 17, 2020) (Plaintiffs' Ex. B.) That is ironic given that the decision expressly chastised the defendant there for relying on a trial court coordination decision that "has no precedential value" and for potentially violating CRC 8.1115(a). *Id.* at 7−8. But not only is the *Lyft* decision not precedential, it is not instructive because it addressed few of the arguments included here. As the court knows, and the *Lyft* decision itself admonishes, this petition must stand -- and fall -- on its own. In sum, as Plaintiffs have failed to satisfy their burden of establishing the requirements for coordination of all 86 actions, their petition should be denied.

## II.   ARGUMENT

### A.   The Petition Lumps Together Personal Injury Actions from 23 States

The petition seeks to coordinate 86 separate actions. Each case alleges some form of sexual misconduct or assault by independent drivers. Almost half of the cases here -- 40 cases -- are based on incidents that occurred outside California. These out-of-state cases involve plaintiffs, drivers, and witnesses residing outside California and, thus, implicate the laws and regulations of 22 other states.[4] (Alarcon Declaration, ¶ 2.) The petition completely ignores the patchwork set of rules that govern the operation of transportation network companies, across the nation and even within states. For instance, one of the allegations most prominently featured is that Uber conducted inadequate background checks. As described in greater detail below, there is no common legal standard for adjudicating that negligence claim because, *inter alia*, rideshare background checks and other conduct are subject to state regulations that differ in every state, and even differ in different localities within a state. There are countless other examples of the patchwork regulatory schemes, discussed later in the brief.

### B.   Uber's Terms of Use Recognize Each Survivors' Voice and Individuality and Plaintiffs Contractually Agreed *Not* to Proceed on a Coordinated Basis

Plaintiffs' petition should be denied because each plaintiff contractually agreed with Uber to pursue claims against Uber "only on an individual basis," and not in any collective or coordinated

---

[4] Data disclosed to Uber indicates that the incidents took place in California and 22 other jurisdictions. When discussing incidents that took place outside California, for simplicity we refer to the District of Columbia as a "state."

4

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

proceeding. Before any user can request a ride with an independent driver, the user must assent to Uber's Terms of Use, which govern the rider's use of the Rider App and establish a "contractual relationship" between Uber and each plaintiff.[5] (Vasquez Declaration, ¶ 4, Ex. A.)

Plaintiffs agreed to Terms of Use over a wide time span. Generally, the Terms of Use give victims a choice to control how they pursue their claims, in or outside court: claims may be brought and litigated "on an individual basis only," not as a "coordinated, consolidated, collective, or representative action against Uber." (*Id.*) Understanding the value of a public forum for sexual misconduct and assault claims, Uber exempted such claims from its standard arbitration program. (*Id.* ¶ 6.) But in doing so, Uber's work with advocates also has resulted in an education and understanding of how individualized these types of claims are and informed its terms of service, including that each claim should be brought individually and not collectively. (*Id.* ¶ 7.) As research shows, incidents are personal, motivated by the individual conduct of the assailant, and caused by different circumstances and situations. (*Id.*) No two incidents or experiences of the victims are the same.[6] Uber's Terms of Use recognize the importance and value to survivors to have their claims brought independently and not as collective proceedings. (*Id.*)

The Terms of Use, *allowing for individual claims*, give survivors control of their options, encourage reporting, and help end the culture of silence that is so common with sexual violence and, to that end, the Terms of Use "preclude" any kind of collective, coordinated, group, multi-plaintiff, or joint action. (*Id.*, Ex. A) Claims may be brought and litigated "on an individual basis only," which means not as a "coordinated, consolidated, collective, or representative action against Uber." (*Id.*) The Terms provide that "no action brought by you may be consolidated or joined in any fashion with any other proceeding." (*Id.*) The Terms have consistently precluded collective proceedings and permitted claims "only on an individual basis."[7]

---

[5] U.S. Terms of Use (last modified July 12, 2021), § 1 ("Contractual Relationship"), https://www.uber.com/legal/en/document/?name=general-terms-of-use&country=united-states&lang=en.

[6] *E.g.*, NSVRC, *supra* n.2 ("Every survivor's experience is unique and valid. Although there are many ways survivors relate to one another in their experience of trauma and journey to healing – a survivor's experience is uniquely shaped by their personal history, identity, context, culture, and community."); Rape, Abuse & Incest National Network, *supra* n.2 ("No one person's story is alike. No one survivor's experience is the same.").

[7] For example, the December 2017 version of the Terms provided: "By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration, as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

For those reasons, coordination of these lawsuits would only create more complexities, more inefficiencies, and more burdens on the court than would proceeding on an individual basis -- as Plaintiffs contractually agreed. *See, e.g.*, *Sanchez* v. *Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 402 (2014) (holding trial court erred in not enforcing provision that "prohibits the arbitrator from consolidating claims of different Associates into one proceeding").

## C. The Threshold Issue: These Cases Are Not Complex

Plaintiffs cannot satisfy the threshold requirement for coordination: with all due respect, these individual personal injury lawsuits are not complex. CCP § 404.1. Numerous cases alleging personal injury and fraud claims against Uber have been litigated over the past several years in California -- including claims like these -- and none have been treated as complex or required coordination. (Vasquez Declaration, ¶¶ 9–10.) To that point, the Los Angeles County Superior Court determined that two of the cases sought to be coordinated here are "not complex within the meaning of California Rule of Court 3.400." *Jane Doe LSA 84* v. *Uber Techs.*, 21STCV23848 (Super. Ct., Cnty. of Los Angeles, July 27, 2021); *Jane Doe LSA 85* v. *Uber Techs.*, 21STCV23843 (Super. Ct., Cnty. of Los Angeles, July 27, 2021).

An individual case cannot be deemed complex unless it "requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." Cal. Rule of Court 3.400. Plaintiffs cannot meet their burden of proving that any of these individual personal injury suits satisfy the criteria for deciding complexity: (1) "Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve"; (2) a large number of witnesses or substantial documentary evidence; (3) "a large number of separately represented parties"; (4) coordination with related actions pending in other counties, states, countries, or in a federal court; or (5) substantial post-judgment supervision. *Id.*

No exceptional judicial management has been required in the cases that have been proceeding apace before this petition was filed. None is needed now.

---

Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else." (Vasquez Declaration, ¶ 8, Ex. B.)

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

### 1.  There Will *Not* Be an Unusual Number of Pretrial Motions Raising Difficult or Novel Issues That Will Be Time-Consuming to Resolve

This criterion has three necessary components, none of which is present here: (a) numerous pretrial motions that (b) raise difficult or novel issues that (c) will be time-consuming to resolve.

The number and type of pretrial motions in each case will be similar to those in any other individual personal injury case: *e.g.*, demurrers, summary judgment motions, and motions *in limine*. The anticipated pretrial motions in each case will involve the ordinary legal issues that courts resolve promptly, and on an individual basis, all the time: *e.g.*, Has the plaintiff adequately pled a cognizable cause of action? Is the defendant entitled to judgment as a matter of law on the undisputed facts? Do the parties seek to introduce inadmissible, irrelevant, or prejudicial evidence?

Plaintiffs assert, in conclusory fashion, that "the cases are likely to involve numerous pretrial motions raising difficult or novel issues," without explaining why the motions will be "numerous," or why any specific issue will be difficult or novel. Pet. at 10. The key legal issues, according to Plaintiffs, include whether Uber is a common carrier, whether Uber is vicariously liable for the drivers' alleged torts, and whether the drivers are Uber employees. *Id.* at 7, 13.

Managed on an individual basis, these are issues that have been litigated in California for many years without coordination. There are precedents for deciding if a business is a common carrier (though those laws vary from state to state). *See, e.g.*, *Squaw Valley Ski Corp*. v. *Superior Ct.*, 2 Cal. App. 4th 1499, 1507 (1992). Likewise, the legal standard for establishing Uber's alleged vicarious liability will be based on case law in California and the other 22 states. Resolving whether the independent drivers are Uber employees likewise will require the application of previously litigated precedents and relevant statutory law.

In sum, there will not be an exceptional number of pretrial motions, and the expected pretrial motions will not be time-consuming to resolve or raise novel legal issues.

### 2.  The Cases Do *Not* Involve a Large Number of Witnesses or Substantial Documentary Evidence

These are individual personal injury lawsuits that typically involve one allegedly injured plaintiff, one alleged assailant (the independent driver), and Uber. Some cases may also involve an eyewitness and a treating physician or therapist, no different than most individual personal injury

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

cases. Plaintiffs assert that these cases will require "corporate discovery." Pet. at 5, 11. Nothing about that is complex. Many personal injury cases are against corporate defendants. Plaintiffs' desire to depose "a large number of witnesses" from Uber does not create complexity either. *Id.* at 10. It might make the lawyers busy, assuming Plaintiffs can show that so many depositions are really necessary, but it does not make the cases complex.

Likewise, there will be a manageable volume of evidence in each case. In several of the previously filed actions proceeding on an individual basis, the plaintiffs produced fewer than 30 pages of documents. (Alarcon Declaration, ¶ 7.) Plaintiffs argue that the "Uber-centered fact discovery . . . is by no means simple" because it implicates "Uber's pervasive and ongoing failure to conduct its business in a manner consistent with public safety." Pet. at 11. Plaintiffs' discovery plan may be ambitious, but that does not mean it will be extraordinary in volume or require extraordinary judicial management.

### 3.  There Are *Not* a Large Number of Separately Represented Parties

Each case has three separately represented parties: the plaintiff, the independent driver, and Uber. Individually, these lawsuits are not complicated cases involving a large number of plaintiffs with their own lawyers and a large number of corporate co-defendants in each action, each represented by their own separate law firms. Even if the cases are coordinated, the same set of plaintiffs' lawyers and the same defense lawyers will appear in most of the cases.

### 4.  There Is *No* Coordination with Actions in Other Counties, States, Countries or in a Federal Court, and None Is Necessary

Among the many other personal injury suits previously filed against Uber, there are no existing coordinated actions in any state or federal court that arise from different incidents. There are cases in different counties, but they have proceeded on their own without any need for coordination. (Vasquez Declaration, ¶¶ 9–10.)

### 5.  Any Judgments Will *Not* Require Judicial Supervision

These cases will not require post-judgment judicial supervision. They will not result in consent decrees to administer or supervise. If the cases go to trial, the juries will decide whether to award any damages and what amount to award, and no post-judgment supervision will be needed.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

8

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

### D. Even if the Cases Were Complex (Which They Are Not), the Section 404.1 Factors Weigh *against* Coordination

Plaintiffs cannot show that the factors in Section 404.1 warrant coordination: (1) whether "common questions of fact or law" predominate; (2) the "convenience of parties, witnesses, and counsel"; (3) "the relative development of the actions" or stage of the actions; (4) whether coordination will promote the "efficient utilization of judicial facilities and manpower"; (5) the impact of coordination on "the calendar of the courts"; (6) "the disadvantages of duplicative and inconsistent rulings, orders, or judgments"; and, (7) "the likelihood of settlement of the actions without further litigation should coordination be denied." CCP § 404.1.

### 1. Highly Individualized Issues Will Far Exceed Any Common Issues

As in most personal injury lawsuits arising from unique circumstances, causes, injuries, defenses, the majority of questions of fact and law will be individualized and case-specific. Sexual assault is an extremely personal crime involving individualized conduct, motivations, and causes. The National Sexual Violence Resource Center, in its project to help companies assess reports of sexual harassment, misconduct, and assault, has highlighted the dissimilarity of the types of incidents alleged here: one alleged assault might involve non-consensual touching of a sexual body part, another might involve attempted kissing, another might involve offensive sexual comments, and another might involve a violent attack. Each experience is unique to the victim.[8]

Accordingly, while Plaintiffs have named one corporate defendant, there are few other commonalities. Nearly every issue is case-specific, fact-intensive, and highly individualized -- including whether and how the alleged incidents occurred, and the precise nature of the independent driver's alleged misconduct. The lack of commonality is especially pronounced given that these actions will be governed by different state laws, regulations and standards.

### (a) *Forum Non Conveniens* Motions

If the cases are coordinated, including all the out-of-state cases, the court will need to decide whether claims arising outside California should be stayed or dismissed on *forum non conveniens* grounds.[9] Similarly, out-of-state drivers have grounds for dismissal on jurisdictional grounds.

---

[8] *E.g.*, National Sexual Violence Resource Center, *supra* n.2.
[9] *See, e.g.*, Order Granting Motion to Transfer at 1, *Doe* v. *Uber Techs., Inc.*, 17-cv-00950-WHO (N.D. Cal. May 31, 2017), ECF No. 35 (granting motion to transfer sexual assault case where incident took place in Minnesota, "the

9

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Those decisions will turn on the facts of each case: the location of the parties (including the drivers) and witnesses, the location of the evidence relating to the alleged incident, the location of third-parties like healthcare providers, the location of plaintiffs' employers, and the location of the relevant Uber corporate representatives (who are located in many different places around the country). (Vasquez Declaration, ¶ 13.) *See generally Stangvik* v. *Shiley Inc.*, 54 Cal. 3d 744 (1991).

In analyzing motions based on *forum non conveniens*, a "case-by-case examination of the parties, their dispute and the relationship of each to the state of California is the heart of the required analysis." *NFL* v. *Fireman's Fund Ins. Co.*, 216 Cal. App. 4th 902, 921 (2013) (citing *Stangvik*, 54 Cal. 3d 744)). Even if all 40 out-of-state plaintiffs find California convenient (a dubious proposition), there will be independent driver-defendants located in the 22 other states with defense counsel who likely will be located outside California. Herding out-of-state parties and lawyers into a single, coordinated action in California -- in some cases, 3,000 miles from their homes -- will be highly inconvenient.

The court may lack personal jurisdiction over many of those drivers. One independent driver has already prevailed in advancing such a position to the San Francisco County Superior Court, because the incident allegedly took place in Hawaii and he has no contact with California. *Jane Doe* v. *Uber Techs.*, No. CGC-20-584649, Order Granting Motion to Quash ("An individual's contacts with California are not to be judged according to [his alleged] employer's activities there. . . . Each defendant's contacts with the forum state must be assessed individually. . . . if Plaintiff's reasoning were accepted, any Uber driver anywhere in the world would be subject to suit in California."). The inability of the California courts to exercise jurisdiction over out-of-state drivers, at least in some instances, impacts whether the out-of-state lawsuits can be adjudicated in

---

majority of the evidence and key third-party witnesses are in Minnesota, and Minnesota's local interest in deciding this controversy is substantially stronger than California's"); *Doe* v. *Uber Techs., Inc.*, CGC-17-556481 (San Francisco Super. Ct. Aug. 11, 2017) (in sexual assault case, granting Uber's motion to dismiss based on *forum non conveniens* because "the incident occurred in Michigan, plaintiff and the Uber driver reside in Michigan, and most or all of the potential witnesses and documentary evidence are in Michigan"); *Doe* v. *Uber Techs., Inc.*, CGC-19-579901 (San Francisco Super. Ct. Mar. 24, 2020) (staying action in anticipation of *forum non conveniens* because "California has no significant interest in adjudicating an incident that occurred between Texas residents, and only a minimal interest in the out-of-state conduct of companies that happen to have their principal corporate headquarters in California"); *Gorne & Walker* v. *Uber Techs., Inc.*, CGC-19-575852 (San Francisco Super. Ct. July 1, 2019) (granting motion to dismiss based on *forum non conveniens* because Washington, the incident state, was a more appropriate forum).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

California. *See* Code of Civ. Proc. § 389 (listing factors to be considered by the court where an indispensable party cannot be joined). Where that happens, the California courts must decide between dismissing the action because an indispensable party is not present, or creating a scenario with duplicative litigation against the driver in the driver's home state, potentially doubling the number of lawsuits that the court systems are forced to handle. *See* Cal. Code of Civil Proc. § 389. Coordination of out-of-state actions would thus hinder judicial efficiency, not promote it. But that is a decision for another day. For today, the issue is whether *forum non conveniens* motions can be resolved with a one-size-fits-all answer for the 40 incidents in 22 other states. They cannot.

Plaintiffs inadvertently (and improperly) make this point. Uber is reluctant to address it since Plaintiffs inappropriately cite the non-precedential decision in JCCP 5061, but fairness warrants that Uber be allowed a response.[10] Following that decision, the court "[r]equired Lyft to meet its burden on a *per-plaintiff, and 'case-by-case,' basis*" to demonstrate *forum non conveniens* for all 45 out-of-state claims. *In re Lyft Rideshare Cases*, Order Denying Def.'s Mot. to Dismiss or Stay Based on *Forum Non Conveniens*, JCCP 5061 (May 20, 2021) at 3 (emphasis added). The court concluded that the one "representative example" before it was an insufficient basis to grant a motion to dismiss for *forum non conveniens* as to the other 44 non-California plaintiffs. *Id.* In other words, there is no common analysis or common answer.

### (b)   Choice of Law Determinations

If the out-of-state cases are not dismissed, the court will need to decide which state's laws and regulations apply. That too will have no single, common answer. To determine whether another

---

[10] California Rule of Court 8.1115(a) provides that "an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action." In the JCCP 5061 coordination ruling itself, the court expressly cited Rule 8.1115 and declined to consider Lyft's cited non-precedential coordination decision. *In re Lyft Rideshare Cases*, Order Granting Coordination, JCCP 5061 (Jan. 17, 2020) at 7 (internal citations omitted).

In any case, this opposition is based on different facts, different arguments, and a different record than the coordination decision in *Lyft*. Lyft's Terms of Service provide that the plaintiffs' claims would be governed by California law. Lyft Terms of Service § 21, https://www.lyft.com/terms. By contrast, Uber's Terms of Use provide that Plaintiffs' claims would be governed by the law of the state where the incident occurred, raising myriad choice-of-law issues that were not present in *Lyft* and that render coordination here impractical. In addition, the coordinating court in *Lyft* emphasized that "this is not a case against the drivers; it is fundamentally a case against Lyft." Here, every complaint against Uber contains allegations regarding the alleged driver-assailant's conduct. The majority of the complaints will thus involve questions of vicarious liability and individualized questions of causation, and superseding cause. Moreover, in each case, there will be at least one party (who is the principal tortfeasor and a key witness) located in another state.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

11

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

state's law applies, California courts apply a three-part test, asking (1) whether the substantive laws of California and the other state differ, (2) if they differ, what interests the other state has in the application of its laws, and (3) which state would be more impaired if its law were not applied.[11] *See Castro* v. *Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1179 (2007).

In personal injury lawsuits like these, where the injury occurred within another state's borders, the other state has "a presumptive interest in controlling the conduct of [the tortfeasor], absent some other compelling interest to be served by applying California law." *Id.* at 1180 (applying Alabama law in personal injury case involving car accident that took place in Alabama); Witkin Summ. of Cal. Law (11th ed.) § 139 ("[T]he law of the state where a personal injury occurred determines the rights and liabilities of the parties, 'unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties.'"); *Harvey* v. *D & L Constr. Co.*, 251 Cal. App. 2d 48, 51 (1967) (noting that "under conflicts of law principles, the law of Arizona apparently governs in this case -- being the jurisdiction where the alleged tort occurred").

This presumptive interest is further confirmed by each state evidencing its desire to control the conduct of transportation network companies and drivers who use the apps of such companies in developing their own set of laws and regulatory structures. Each of the 22 states involved in these incidents has an especially strong local interest in ensuring the enforcement of its regulations, given the public policy decisions to regulate the rideshare industry on the state and local, not federal, level. These regulations pertain to issues relevant to the litigation such as driver screening and the worker classification of rideshare drivers (*i.e.*, some states mandate that drivers are independent contractors by law).

Further, the Terms of Use accepted by each plaintiff state: "[a]ny dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to the Terms, shall be governed

---

[11] Further complicating the analysis, California courts have held that "a separate conflict of laws inquiry must be made with respect to each issue in the case," and certain claims -- for example, breach of contract -- are governed by different choice of law rules. *Frontier Oil Corp.* v. *RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1458–60 (2007).

BN 46605206v1

by and construed in accordance with the *laws of the state in which the incident . . . occurred*." (Vasquez Declaration, Ex. A (emphasis added).)

Tasking a judge in a coordinated proceeding involving 40 out-of-state cases and 46 California cases to conduct multiple choice-of-law analyses, which potentially implicate the laws of 23 different states, will hardly simplify the exercise. There will not be uniform answers to many of the key legal questions, and pretrial disputes and motions will not have uniform resolutions.

### (c) Individualized Questions of Liability and Damages Will Far Outnumber Any Common Questions

**The Alleged Assaults**: In each case, the jury will have to decide whether the alleged assault actually occurred, and whether it occurred in the way alleged. This will involve individualized factual determinations and different proofs. Indeed, the purported nature of the alleged incidents vary widely, for example: one driver allegedly stared at a rider in a manner that made the rider uncomfortable; another driver allegedly made comments of a sexual nature to the rider; other drivers allegedly kissed, kidnapped, or digitally penetrated the riders; in some cases, the driver allegedly raped the passenger. All of these incidents span across the taxonomy for classifying incidents of sexual assault and misconduct established by experts.[12] Moreover, the circumstances surrounding the alleged assaults also vary. For example: some of the alleged assaults occurred during a ride; some occurred during an alleged unplanned stop; while others occurred while the app was not even in use, for instance long after completion of a ride. (Alarcon Declaration, ¶ 4.)

**Duty of Care**: Whether the driver-defendants (who are different individuals and acted differently in each case with different motivations) committed a crime or intentional tort, and whether Uber breached any applicable duty of care, will vary from case to case and will depend on the particular facts of each case. There is no commonality between the facts and circumstances of any two, much less 86, of the alleged incidents. The lack of commonality becomes even more apparent when considering that the standard of care itself will vary depending on which state law governs. For example, one of the most prominent allegations is that Uber is negligent for having inadequate background checks (Plaintiffs allege this to be an issue without alleging specific facts

---

[12] NSVRC, Helping Industries to Classify Reports of Sexual Harassment, Sexual Misconduct, and Sexual Assault, https://www.nsvrc.org/sites/default/files/publications/2018-11/NSVRC_HelpingIndustries.pdf.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

as to each driver involved in the underlying incident). Pet. at 4. But the law providing the governing standard for the negligence claim will vary widely depending on the facts and location of the various incidents, because, *inter alia*, rideshare background checks are subject to state regulations that differ in every state, and even differ in different localities within a state. For example, Georgia requires transportation network companies to issue certifications of a private background check that is valid for a five-year period (Ga. St. § 40-5-39(e)(5)), Michigan requires updated background checks every year (Mi. St. § 257.2107(7)(1)(a)), and Pennsylvania requires background checks initially, then after one year, and thereafter every other year (Pa. C.S.A. § 2604.1(b)(5)(iii)).[13]

And before the court would even arrive at the issue of what the local state laws require as to background checks for transportation network companies, there would have to be a threshold determination in each case if the individual perpetrator even had a background check issue that would have given notice of any propensity to commit the underlying crime.[14] Plaintiffs ignore these issues and make broad generalizations that there were "insufficient background checks."

Therefore, each case will have unique facts as to "notice" and the standard of care will vary because the standard in each state will depend largely on each state's background check regulations. *See, e.g.*, *Jones* v. *Awad*, 39 Cal. App. 5th 1200, 1210 (2019) ("Under the doctrine of negligence per se, compliance with the standard of conduct established by the relevant statute, ordinance, or regulation is adopted as the duty of care."); *see also Wardingley* v. *Uber Technologies, Inc., et al.*, No. 2402-17-81 (Harrison Cty. Circ. Ct., Miss., Dec. 9, 2019) (applying Mississippi law and ruling that "Defendants met the requirements under the TNC statute by contracting with a third-party vendor to conduct a background check and Plaintiff cannot show a cognizable claim that Defendants breached the duty to conduct a background check."). The relevance and scope of discovery will vary across the cases based on the different standards, and briefing for dispositive motions will require examination of 22 other states' discrete requirements.

---

[13] Among countless examples of the patchwork regulatory environment that varies location to location, Florida enumerates certain disqualifying crimes if committed within a 5-year period (Fl. St. § 627.748(11)(d)(1)), Georgia within a 7-year period for certain crimes (Ga. St. § 40-5-39(e)(4)(B)), and Pennsylvania enumerates three different categories of disqualifying crimes within a 7-year period, 10-year period, and on a lifetime basis (Pa. C.S.A. § 2604.1(b)(5)).

[14] Not every driver will have such a flag, and none have been identified to have such flags per the Complaints.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

If Plaintiffs seek to prove their incorrect allegation that independent drivers are actually "employees" of Uber, there will also be unique and individualized analyses in each case, depending on (among many other things) where the incident occurred. Some states have common law tests for determining independent contractor status, while others determine it by statute. Even within California, the analysis may vary depending on when the incident occurred: incidents that occurred after Proposition 22 became law will presumably be adjudicated under its tests, while some plaintiffs may argue that incidents predating Proposition 22 are adjudicated under the common law *Borello* analysis or other forms of analyses.

**Common Carrier Duty of Care**: Plaintiffs allege Uber is subject to a heightened duty of care of a "common carrier." And they assert that Uber's status as a common carrier (or not) is a common question. Pet. at 13. That is demonstrably untrue: the legal standard for determining whether Uber is a common carrier varies significantly from state to state. In some states, Uber is not a common carrier by statute.[15] Other states apply other distinct legal standards.[16] Plaintiffs claim that common carriers have a "heightened duty of care," presumably based on California law. But, as recently explained by a federal court in New York that also determined Uber was not a common carrier: "New York law no longer holds common carriers to a heightened duty of care; the ordinary standard of negligence applies." *Doe* v. *Uber Technologies, Inc.*, No. 20-CV-8446 (LJL), 2021 WL 3193166, at *10 (S.D.N.Y. July 28, 2021) (performing a common law analysis and holding that "Plaintiff has failed to allege that Uber is a common carrier" as Uber does not provide services to the general public, drivers have the ability to cancel ride requests from individual riders, and Uber can deactivate users at any time).

Even if plaintiffs could establish that Uber is a common carrier, there still will be case-specific determinations of whether the common carrier duty of care applies in the circumstances of each case. For instance, an alleged assault that did not begin until *after* the trip was completed would not implicate any heightened common carrier duty; nor would an assault during a ride that was not arranged through the Uber App. There are no common answers to these

---

[15] *See, e.g.*, Fla. Stat. § 627.748 (2); Tex. Occ. Code § 2402.002; Va. Code § 46.2-2000.
[16] *Compare Huang* v. *The Bicycle Casino, Inc.*, 4 Cal. App. 5th 329, 339 (2016); *with Jackson* v. *Stancil*, 253 N.C. 291, 301 (1960).

1    questions.

2        **Breach of Duty**: Likewise, whatever the negligence standard, there is no common answer

3    to whether Uber breached that duty in each case. The complaints assert a number of different

4    allegedly negligent acts or failures to act by Uber. Which of those is implicated in each case will

5    vary based on the particular circumstances alleged. For example, certain plaintiffs claim Uber

6    breached its duty of care by not requiring video cameras. Factually, this is not a common issue:

7    some incidents occurred outside the car, making video cameras completely irrelevant. Even inside

8    the vehicle, there would be an issue whether it could help prevent the incident if a driver can simply

9    turn it off or move outside the scope of the camera. And the unique and individualized inquiries

10   regarding the independent contractor status, discussed above, present complicated questions about

11   the extent to which drivers could be required to have video cameras in their own vehicles.

12       Additionally, whether recording of drivers or passengers is even legally permissible varies

13   by state. Some states require the consent of only one party to record the audio of a conversation;

14   others require the consent of all parties. *Compare* N.Y. Penal Law § 250.00, *with* Fla. Stat. ch.

15   934.03. Even if some of the alleged incidents might arguably have been captured by video footage,

16   others might have required audio data collection. As such, whether Uber breached its duty to a

17   plaintiff will be a fact-intensive inquiry that depends on the state in which the incident took place.

18       Furthermore, Uber's safety technologies have changed over time and by location (in part,

19   because of the patchwork regulatory framework described earlier). The examples are many,

20   because Uber constantly creates and introduces new safety features and programs, such as the

21   in-app "Safety Toolkit" and GPS-based "RideCheck"; its continuously evolving incident response

22   and investigation system; in-app Text-to-911 feature; and the Uber Survivor Resources Hotline and

23   Fund in partnership with RAINN. And many of these and other technologies and programs had

24   different launch dates in different locations, and were thus rolled out in different time periods and

25   in different places.[17] (Vasquez Declaration, ¶ 12.) Therefore, with respect to breach of duty, there

26

27   [17] For example, the Safety Toolkit was first launched in April of 2018, and the Ride Verification (PIN) feature was first
     launched in December 2019. Similarly, while the 911 integration feature was launched originally in April of 2018, it
28   was launched only in certain locations.  In March of 2019 the feature was launched throughout the United States and
     in some international markets and in September of 2019 the feature was expanded to include text message support in

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

16

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

will be different questions, and different answers, in each case. What specific safety features does the plaintiff allege should have been implemented to prevent the alleged incident? What specific safety features were available (or not) at the time of the alleged incident? What were the circumstances of the plaintiff's trip that would have warranted the use of specific safety features or technologies? Could those specific features have even helped prevent the underlying occurrence? Each of these factual inquiries will differ depending on the unique circumstances of how the incident occurred and the time and geographic location of the alleged incident. As a consequence of all these differences and variations in the nature of the incidents, Uber's conduct, discovery and motion practice will not be the same in every case.

**Causation**: Causation is among the most fact-specific and case-specific issues to be litigated on motion practice and tried to juries -- and, like so many other issues, it is governed by different legal standards in different states. Even assuming a plaintiff could prove, for instance, that Uber should have implemented additional safety features in the App at a particular time and place, she would still have to prove that those additional features would have prevented her assault. Each case will require an individualized inquiry into what safety feature the plaintiff asserts should have been implemented, whether the safety feature was feasible in accordance with local law and regulations, and whether such a feature could have reasonably prevented that specific assault.

As to driver screening, each plaintiff would need to demonstrate a driver's background had a particular issue, that Uber's background check process performed by an accredited third-party background check provider failed to catch that issue, that a different type of check would have caught the issue (in addition to being feasible under the law), and that the issue was relevant to have put Uber on notice of a driver's propensity to commit an assault. The complaints here, and the petition, have failed to assert individualized facts specific to each driver's background, merely stating a generalized allegation of "inadequate background checks," when the reality is that the question of background checks and causation implicates highly individualized issues.

**Claims against Drivers**: Some plaintiffs brought claims against the driver-assailant, and

---

select U.S. cities, as it could not be rolled out in a unified way as local 911 entities need to be able to support the technology feature on their end. (Vasquez Declaration, ¶ 12.)

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 46605206v1

Uber will have cross-claims against all of the independent drivers, raising issues, *inter alia*, of superseding cause and comparative fault. That, in turn, will involve driver-specific discovery, evidence and motion practice. These individualized questions depend on various factors, including the independent driver's alleged personal motivations; incarceration status; any prior incidents involving the driver; the unique circumstances of each alleged assault; and other relevant events relating to the particular individual, and possibly to other parties who may be involved, such as various fleet operators with which certain drivers may be affiliated. Some incidents took place out of state, and jurisdictional and forum issues will inevitably arise.

**Damages**: "One of the most difficult tasks imposed on a fact finder is to determine the amount of money the plaintiff is to be awarded as compensation for pain and suffering. The inquiry is inherently subjective and not easily amenable to concrete measurement." *Pearl* v. *City of Los Angeles*, 36 Cal. App. 5th 475, 491 (2019). Harm is particularly subjective and individualized for sexual assault survivors.[18] Both the nature of the damages claim, and the specific facts developed in discovery and advanced to prove it, will be highly individualized. Indeed, some plaintiffs' claims will focus on physical treatment and rehabilitation, some on mental health treatment, some on lost wages, some on lost future opportunities, and others on non-economic harm like pain and suffering (to the extent such harm is actionable). No one experience is alike and every claim for damages will be unique to the specific survivor. Grouping them together in a coordinated action does not do justice to the individuality of these experiences for the victims.

**Uber's Causation and Damages Defenses**: Like any individual personal injury lawsuit, these cases raise the full array of causation, joint and several liability, and allocation of damages defenses. None of those are common issues.

One of the most significant case-specific issues in each case will be the fault of the independent driver-defendant. Where plaintiffs did not name the independent drivers, Uber has brought them into the litigation as Uber believes the evidence will show they are the sole cause of the underlying incident. But regardless of Uber's position, by dispositive motion or at trial, it must

---

[18] National Sexual Violence Resource Center, *supra* n.2 ("Every survivor's experience is unique and valid. Although there are many ways survivors relate to one another in their experience of trauma and journey to healing -- a survivor's experience is uniquely shaped by their personal history, identity, context, culture, and community.").

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

be determined in each case whether the alleged tortious or criminal conduct of the driver-defendant was a superseding cause. That will depend on the facts in each case. These issues will require different discovery, pretrial motion practice, case management, dispositive motions, and evidence.

The number and nature of these individualized defenses will vary depending on which states' laws will apply in which cases. Whether a third party's criminal conduct -- here, the driver's alleged assault -- qualifies as a superseding cause, severing the chain of causation, is a "normative question of policy." *Pedeferri* v. *Seidner Enters.*, 216 Cal. App. 4th 359, 372 (2013). Courts consider notions of fairness and public policy goals when they determine whether a third party's intervening act should relieve the defendant of liability. In a coordinated action, a single California court would be required to answer such public policy questions for at least 22 other states.

In addition, different states apply different rules in apportioning liability and damages among multiple tortfeasors. Some states allow a plaintiff to recover all damages from a single, partly liable defendant, while other states allow recovery for only that defendant's portion of the damages. *See, e.g.*, *Graff* v. *Motta*, 695 A.2d 486 (R.I. 1997); *McReynolds* v. *Krebs*, 725 S.E.2d 584 (Ga. 2012). Further, many states have enacted statutory measures to limit the amount of compensatory and or punitive damages that are recoverable by plaintiffs in a civil lawsuit. For example, some states have enacted statutes that limit the recovery of non-economic damages,[19] and many states have enacted statutes that provide a cap on punitive damages, but the caps vary.[20] Some states cap compensatory damage awards; others do not. Meanwhile, in some states, such statutes have been found unconstitutional by the state supreme court; and in other states, statutes capping compensatory damages, punitive damages, or both, are absent.

**Fraud and Misrepresentation**: The complaints allege different fraud claims, including common law fraud, intentional misrepresentation, intentional concealment, and negligent misrepresentation. However styled, fraud and misrepresentation claims raise inherently

---

[19] *See, e.g.*, Haw. Rev. Stat. Ann. § 663-8.7 ("Damages recoverable for pain and suffering as defined in section 663-8.5 shall be limited to a maximum award of $375,000; provided that this limitation shall not apply to tort actions enumerated in section 663-10.9(2).").

[20] *See, e.g.*, Colo. Rev. Stat. § 13-21-102(1)(a) (punitive damages cannot exceed the amount of compensatory damages awarded); N.C. Gen. Stat. Ann. § 1D-25 (capping punitive damages at three times compensatory damages or $250,000, whichever is greater).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

19

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

non-common issues -- which are multiplied here as the complaints allege different marketing claims at different points in time in differing locations.

Therefore, individualized discovery, demurrers, summary adjudications and, perhaps in some cases, trial will be necessary to determine these and other plaintiff-specific issues: (a) which of the many alleged misrepresentations were even in use at the particular time each plaintiff created and used her account; (b) which of the many alleged misrepresentations, if any, were actually seen or heard by each plaintiff; (c) which of the many alleged misrepresentations, if any, were actually and justifiably relied on by each plaintiff; (d) what other information (including truthful representations) was relied on by each plaintiff in using the Uber App; and (e) what actions were taken or not taken, if any, by each plaintiff as a direct result of which of the many alleged misrepresentations. Given the heightened standard for pleading fraud and misrepresentation with particularity, demurrers will be filed in many if not most of the cases.[21] *See, e.g.*, *Philipson & Simon* v. *Gulsvig*, 154 Cal. App. 4th 347, 362 (2007). The lack of commonality with respect to the fraud and misrepresentation claims will become all the more obvious when decisions need to be made as to which of the laws of which of the 22 other states apply to which of the claims.

There is one more highly individualized issue that will require claim-by-claim examination : which of the claims of plaintiffs will be barred as a matter of *res judicata* under the class action settlement in *McKnight* v. *Uber Technologies, Inc.*, 1:14-cv-05615-JST (N.D. Cal. June 1, 2017), ECF No. 125. Claims arising from several alleged misrepresentations relating to, *inter alia*, background checks and safety were released in that settlement, which applies to users of the Uber App from January 2013 through at least January 2016. Determining which plaintiffs are bound by the terms of the settlement, and which, if any, plaintiffs opted out, is a plaintiff-by-plaintiff issue. On this basis, fraud claims have already been dismissed at the demurrer stage.[22]

**Products Liability**: A subset of the cases allege product liability claims based on the theory that the App had "design defects," and that Uber "failed to warn of the risks" posed by the App. Although Uber disputes its App is a product and this issue has been decided in its favor in several

---

[21] Demurrers have already been granted in some of the cases, none requiring coordination.
[22] *See* Case No. CGC-20-584691, Order re: Demurrer (Feb. 5, 2021).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

California courts, both of these theories require fact-specific inquiries, which will vary depending on which of the 22 other states' laws apply to which claims.[23] Deciding whether the App is even subject to product liability claims will depend on the applicable state law.[24] And as with any tort claim, each plaintiff will have to prove that the alleged defect was the cause of the alleged incident. There is no common answer to that question.

In addition, the test for determining whether the App is "defective" will vary depending on where the alleged assault occurred. The states that recognize strict products liability (several do not) employ some form of a risk-utility analysis. Others exclusively apply the consumer expectations test -- which asks whether a product performed as safely as an ordinary consumer would have expected. *Branham* v. *Ford Motor Co*., 390 S.C. 203, 222 n.14. Yet other states use a hybrid approach, depending on the facts of the particular case. *Id.* at 220–22 (collecting cases). The variety of different tests and circumstances will generate numerous individual (not common) issues, which, in turn, will result in individual (not common) discovery and motion practice.

**Punitive damages**: As with the other elements of each plaintiff's claims, the punitive damages analysis (if permitted at all in any particular case) will turn on individualized questions. The appropriateness and extent of punitive damages will vary from case to case; any punitive award must "have a nexus to the *specific harm* suffered by the plaintiff." *State Farm Mut. Auto Ins. Co.* v. *Campbell*, 538 U.S. 408, 422 (2003) (emphasis added).

### 2. Coordination Would Be Inconvenient for the Parties, Witnesses, Counsel, and the Court

Coordination would be decidedly inconvenient. As already demonstrated by the earlier filed

---

[23] Multiple California courts have held the Uber App is not a product. For example, in November 2020, the Los Angeles Superior Court granted Uber's demurrer to the plaintiffs' product liability claims on this basis, specifically finding that "the Uber App is not a product." *Jane Doe No. 1, et al.* v. *Uber Technologies, Inc., et al.* Super. Ct. L.A. County, Case No. 19STCV11874 (Nov. 30, 2020). Similarly, in *Polanco* v. *Lyft, Inc.*, Super Ct. Orange County, Case No. 30-2019-01065850 (May 13, 2021), the Orange County Superior Court held that "the Uber App does not fit within the definition of a 'product' since it is not a 'tangible good' or 'physical object.'" *See also Toral* v. *Bazzi, et al.*, No. 20STCV02030 (Super. Ct. L.A. County Apr. 14, 2021) (Tentative Ruling and Court Order) (sustaining demurrer without leave to amend because "the complaint fails to plead the Uber App is a product").

[24] *Compare Amazon.com, Inc.* v. *McMillan*, No. 20-0979, 2021 WL 2605885, at *4 (Tex. June 25, 2021) (deciding whether Amazon is a seller under local statute) *with Pierson* v. *Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 344, 264 Cal. Rptr. 673 (Ct. App. 1989) (deciding whether the company provided a product or service), *and Graham* v. *Concord Constr., Inc.*, 100 Wash. App. 851, 856, 999 P.2d 1264, 1267 (2000) (deciding whether company provided a product or service under local statute).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

21

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

actions against Uber, each of which is proceeding on its own, amalgamating 86 cases, with numerous different discovery and case management issues, would only create complications. Given how different each case is from the others, and the multitude of case-specific legal and factual issues, there is no need for -- and surely no convenience from -- trying to impose a uniform discovery program, generic case management plan, or single pretrial and trial scheduling plan.

On the contrary, bringing all the cases together in one court will be highly inconvenient for many of the parties, witnesses, and their counsel. Almost half of the plaintiffs and independent driver-defendants are located outside California. As many of the incidents occurred in those 22 other states, it is fair to assume that many of the fact witnesses, treating healthcare providers, and police will be located in those other states. Counsel for the driver-defendants seeking relief from the court -- *e.g.*, protective orders limiting or barring discovery -- likely will be located outside California. The independent driver-defendants typically do not have the financial means or time to travel to faraway court proceedings, and likely will argue they cannot be subject to jurisdiction in California courts. In one of the cases sought to be coordinated, the driver already won dismissal based on lack of jurisdiction. *Jane Doe* v. *Uber Techs.*, No. CGC-20-584649, Order Granting Motion to Quash. Given the central role, if not principal liability, of the independent drivers, if the California courts can even exercise jurisdiction over them, they and their counsel would have to attend hearings and arguments away from home, or decide at their peril not to attend.

Even within California, it will be inconvenient for the independent driver-defendants and their counsel to attend court hundreds of miles away. In some already active cases, coordination will uproot the parties and their counsel from venues and courts in which they have already been litigating, forcing at least some of them to travel long distances and incur significant travel expenses to attend coordinated court proceedings. The same is true for the non-party witnesses located primarily where each plaintiff resides or where the incident occurred. If an incident occurred in Orange County, Florida, or Texas, the treating physicians, police officers, eyewitnesses, employers, etc. will be located in the plaintiff's home county. If it is necessary or desirable for any of them to attend court proceedings, centralizing the case will be very inconvenient. And Uber's witnesses with knowledge of the specific conduct that may be pertinent to the specific, individualized facts

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

of any given out-of-state case are located in disparate geographic regions throughout the country, creating even more inefficiencies and inconvenience if there were to be coordination of out-of-state cases within California. (Vasquez Declaration, ¶ 13.)

### 3. The Relative Development of the Actions and the Work Product of Counsel Weigh Heavily *against* Coordination

The cases subject to this petition are already at different stages of litigation and discovery. (Alarcon Declaration, ¶¶ 5–6.) While some cases were just recently filed and are relatively undeveloped, others have been pending for over a year.[25] The latter are already proceeding on their own: demurrers and motions to strike have been briefed, argued, and decided. Plaintiffs' counsel inaccurately assert that no discovery has been conducted in any cases. Pet. at 15. In many cases, document demands and interrogatories have been served; documents have been produced; depositions have been noticed; and protective orders have been entered. Counsel for the parties in those cases have conducted numerous meet and confer sessions. In one action, a motion to dismiss based on *forum non conveniens* was already adjudicated and discovery is ongoing. There are already Case Management Orders governing the proceedings in a number of the cases. One case has a trial date on the calendar, for later this year, and that action has proceeded toward trial on an individualized basis without any need for coordination.[26] (Alarcon Declaration, ¶ 5.) This fact, alone, is grounds for denial of the petition. *See* Rule of Court 3.521(e) ("The imminence of a trial in any action otherwise appropriate for coordination may be a ground for summary denial of a petition for coordination, in whole or in part."). The advanced and staggered stages of these cases, along with the significant work already underway, weigh against coordination.

### 4. Coordination Would Not Result in a More Efficient Use of Judicial Resources

Given the differences among the cases, and their various stages of litigation, it would not be more efficient for a single court to try to manage 86 widely disparate cases, and may well cause delays in discovery, dispositive motions, and trial dates. Including 40 out-of-state cases from 22

---

[25] Some cases filed by Plaintiffs' counsel are not on the coordination list, demonstrating that these cases are proceeding and can continue to proceed individually.

[26] Notably, two *other* actions filed by the same counsel, San Francisco Sup. Ct. No. CGC-20-585094 and Los Angeles Sup. Ct. No. 20STCV48919, have trial dates on the calendar for 2022 and 2023, and have proceeded on an individualized basis without any problems. Proving that point, Plaintiffs have *not* sought to include those two actions in the coordinated proceeding.

23
Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 46605206v1

different states in a coordinated proceeding is not more efficient. Demurrers, motions to strike, motions for summary adjudication, and discovery motions will vary from case to case based on the different facts, different evidence, different legal issues, and different laws. As demonstrated above, claims of sexual assault and misconduct are intensely personal and individualized, based on unique experiences and causes, and governed by a patchwork of different legal and regulatory regimes. It will not simplify the management of the cases to bunch them all together. Additionally, coordination will not be more efficient, because discovery and motion practice will not be the same in every case. Discovery from the various plaintiffs and drivers, and associated third parties (such as treating physicians or employers) will be unique to each plaintiff's alleged incident, ride history, and damages claim. It will not be more efficient to handle discovery disputes in all 86 cases together -- none of which are the same, and many of which will be governed by the laws of the other states.

### 5. Calendar of the Courts

The calendar of the courts where the cases have been (or should be) filed will not be unusually burdened by individual personal injury lawsuits, and the individual cases will proceed more efficiently than in a coordinated action. Uber regularly litigates personal injury cases in the standard way, in individual actions brought in appropriate jurisdictions (typically those in which the individual incidents occurred) and they proceed efficiently without placing undue burden on the court system. (Vasquez Declaration, ¶¶ 9–10.) Given all the unique facts, some cases may require less discovery than others and will be ready for trial more quickly, or will create the opportunity for resolution prior to trial. Others may have more extensive discovery, and contentious discovery disputes, and therefore require more time to prepare them for trial. A coordinated proceeding would only impede progress of cases that would otherwise proceed more promptly.

### 6. There Is Little Risk of Duplicative and Inconsistent Rulings, Orders, or Judgments

Plaintiffs assert that "[w]ithout coordination, if the cases all proceed independently of one another, the chances of both duplicative and inconsistent rulings would increase if the cases proceed independently." Pet. at 16. But that mistakenly assumes most of the cases are based on a common set of facts and will be governed by the same state laws and regulations. The highly individualized nature of the claims, along with the varying legal requirements set forth in regulations around the

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BN 46605206v1

nation, will limit the number of rulings of universal application, thus minimizing the risk of duplicative or inconsistent decisions. Many of the cases will not be decided under the same state laws, further minimizing the risk of duplicative or inconsistent decisions. That some legal issues may be adjudicated by more than one court is no different than in multiple litigations that otherwise do not satisfy the criteria for being complex or for coordination. Uber regularly litigates personal injury incidents across the nation, in the states where the individual incidents occurred, and there is little to no inconsistency given the rulings cannot be applied universally as torts are highly individualized occurrences (and, as mentioned, transportation network companies are regulated at a local level which influences the legal analysis on a state-by-state basis).

**7.  Coordination Is Not Needed to Promote the Likelihood of Settlement**

Settlement of these actions does not require coordination -- and, to the contrary, could be impeded by coordination. Uber has settled interpersonal and personal injury claims arising from a plethora of circumstances in countless jurisdictions on an individual basis at the early stages of litigation -- sometimes before suits are filed. (Vasquez Declaration, ¶ 11.)

The likelihood of settlement is improved, and opportunities to settle will arise earlier in the cases, if managed on an individual basis. It is easier to determine and evaluate the strengths and weaknesses of cases when litigated separately. Putting all the matters together will slow down that process and obscure the differences between cases and reduce the incentives to settle. From the perspective of settlement, coordination will be disadvantageous.

## III.  <u>CONCLUSION</u>

Based on the foregoing, Uber respectfully requests that the court deny the Petition for Coordination. For the reasons discussed above with respect to the out-of-state cases, it would be contrary to precedent and the purposes of coordination to combine in a single coordinated proceeding 40 out-of-state cases (arising under 22 different state laws) with the California cases. In no event should that be permitted.

/ / /

/ / /

/ / /

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 46605206v1

DATED: August 18, 2021

**BUCHALTER**
A Professional Corporation

By: _____
GARY A. WOLENSKY
PAUL A. ALARCÓN
SAMUEL Q. SCHLEIER
ELENI A. SWANK

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON**

ROBERT ATKINS
RANDY LUSKEY

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC. and RASIER, LLC

Defendant Uber's Memo of Points and Authorities in Opposition to Plaintiffs' Petition for Coordination
Judicial Council Coordination Proceeding No. 5188

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 46605206v1

# PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is at BUCHALTER, A Professional Corporation, 18400 Von Karman Avenue, Suite 800, Irvine, CA  92612-0514.

On the date set forth below, I served the foregoing document described as:

**DEFENDANTS UBER TECHNOLOGIES, INC. AND RASIER, LLC'S
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PETITION FOR COORDINATION**

on all other parties and/or their attorney(s) of record to this action by ☐ faxing and/or ☐ placing a true copy thereof in a sealed envelope as follows:

**PER FILE & SERVE XPRESS SERVICE LIST**

| | |
|---|---|
| William A. Levin, Esq.<br>Laurel L. Simes, Esq.<br>Rachel Abrams, Esq.<br>Meghan E. McCormic, Esq.<br>LEVIN SIMES ABRAMS LLP<br>1700 Montgomery Street, #250<br>San Francisco, CA 94111 | *Attorney for Plaintiff:*<br><br>Tel: 415-426-3000<br>Fax: 415-426-3001<br><br>Email: wlevin@levinsimes.com<br>llsimes@levinsimes.com<br>rabrams@levinsimes.com<br>mmccormick@levinsimes.com |

☑ **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS** – On **August 18, 2021**, based on a court order, I caused the above-entitled document(s) to be served through File & Serve Xpress at https://secure.fileandservexpress.com addressed to all parties appearing on the electronic service list for the above-entitled case. The service transmission was reported as complete and a copy of the File & ServeXpress Filing Receipt Page/Confirmation will be filed, deposited, or maintained with the original documents(s) in this office.

☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed on **August 18, 2021**, at Irvine, California.

☑ I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on **August 18, 2021**, at Irvine, California.

_____
Lina Velasquez

_____
(Signature)

BN 46593161v1

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

1