1  RANDALL S. LUSKEY (SBN: 240915)
       rluskey@paulweiss.com
2  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
3  535 Mission Street, 24th Floor
   San Francisco, CA 94105
4  Telephone: (628) 432-5100
   Facsimile:  (628) 232-3101
5
   ROBERT ATKINS (*Pro Hac Vice* admitted)
6      ratkins@paulweiss.com
   CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
7      cgrusauskas@paulweiss.com
   ANDREA M. KELLER (*Pro Hac Vice* admitted)
8      akeller@paulweiss.com
   **PAUL, WEISS, RIFKIND, WHARTON**
9      **& GARRISON LLP**
   1285 Avenue of the Americas
10 New York, NY 10019
   Telephone: (212) 373-3000
11 Facsimile:  (212) 757-3990

12 *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.,
13 RASIER, LLC, and RASIER-CA, LLC

14 *[Additional Counsel Listed on Signature Page]*

15
                **UNITED STATES DISTRICT COURT**
16
                **NORTHERN DISTRICT OF CALIFORNIA**
17
                    **SAN FRANCISCO DIVISION**
18

19

20 | IN RE: UBER TECHNOLOGIES, INC., | Case No. 3:23-md-03084-CRB |
   PASSENGER SEXUAL ASSAULT
21 LITIGATION                           **JOINT STATUS CONFERENCE**
                                         **STATEMENT**
22 ————————————————————

23 This Document Relates To:          Judge:        Hon. Charles R. Breyer
                                       Courtroom:    6 – 17th Floor
24 ALL ACTIONS
                                       Status Conference Date:  March 29, 2024
25                                     Status Conference Time:  11:00 a.m.

26

27

28

1  KYLE N. SMITH (*Pro Hac Vice* admitted)
        ksmith@paulweiss.com
2  JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
        jphillips@paulweiss.com
3  **PAUL, WEISS, RIFKIND, WHARTON
        & GARRISON LLP**
4  2001 K Street, NW
   Washington DC, 20006
5  Telephone: (202) 223-7300
   Facsimile:  (202) 223-7420
6
   MICHAEL B. SHORTNACY (SBN: 277035)
7  mshortnacy@shb.com
   **SHOOK, HARDY & BACON L.L.P.**
8  2049 Century Park East, Ste. 3000
   Los Angeles, CA 90067
9  Telephone: (424) 285-8330
   Facsimile: (424) 204-9093
10
   PATRICK OOT (*Admitted Pro Hac Vice*)
11  oot@shb.com
   **SHOOK, HARDY & BACON L.L.P.**
12  1800 K St. NW Ste. 1000
   Washington, DC 20006
13  Telephone: (202) 783-8400
   Facsimile: (202) 783-4211
14
   *Attorneys for Defendants*
15  UBER TECHNOLOGIES, INC.,
   RASIER, LLC, and RASIER-CA, LLC
16

17

18

19

20

21

22

23

24

25

26

27

28

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN &
BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

JOINT STATUS CONFERENCE STATEMENT                                    3:23-md-03084-CRB

## JOINT STATUS CONFERENCE STATEMENT

In advance of the status conference set by the Court in this action for Friday, March 29, 2024 at 11:00 a.m., Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Defendants" or "Uber"), and Plaintiffs (jointly, "the Parties"), submit this Joint Status Conference Statement.

## PROPOSED AGENDA

1.   **Status of Case Filings**

2.   **Cross-Complaints**

3.   **Pretrial Orders**

4.   **Uber's Initial Motions**

5.   **Discovery**

6.   **Pretrial Schedule**

7.   **Uber's Opposed Request to Establish a Cutoff for the Filing of New Complaints**

8.   **Special Settlement Master**

9.   **Administrative Matters**

I.   **STATUS OF CASE FILINGS**

As of March 22, 2024, there are 241 cases pending in this MDL.

II.   **CROSS-COMPLAINTS**

**Defendants' Statement**

Defendants will file cross-complaints against the third-party independent drivers in this Action. The independent drivers play a central role in this Action – there would be no individual lawsuits but for the alleged intentionally tortious and criminal conduct of these drivers. For that reason, Uber has in numerous prior litigations – including some cases in the state court JCCP – filed against drivers as third-party defendants, and Uber certainly intends to do so in these MDL cases. The presence of independent driver-defendants in the Action will change the landscape, timing, and breadth of discovery in this action. To the extent applicable, Uber also intends on filing cross-complaints as to any other third-party defendants.

Accordingly, Defendants intend to proceed with filing and serving cross-complaints against independent drivers for equitable indemnity, contractual indemnity, contribution, and declaratory relief promptly, while the initial Motions to Dismiss are pending (without waiving any rights to have Rule 12(b) motions adjudicated – both the initial round of Rule 12(b) motions, and subsequent ones contemplated by the Court's Pretrial Order No. 5).

Plaintiffs' final edits to this Case Management Statement suggest the possibility of deadlines for when Uber will endeavor to file cross-complaints, and request information regarding disclosures of cross-complaints in "prior litigations." With respect to the timing of filings, no cut-off deadline should be imposed, but Uber is prepared to meet and confer and discuss with Plaintiffs the anticipated timetable on which the filing of cross-complaints is expected to occur. Uber cannot be in a position to identify third-party defendants as Uber has yet to receive any discovery from plaintiffs, which would provide the information necessary to assess whether there are any third-party defendants and who they may be. With respect to disclosures about filings in "prior litigations," it is not clear what utility, if any, that will have in the context of setting a plan for *this MDL*.

**Plaintiffs' Statement**

There are no pending cross-complaints in this Action. To allow Plaintiffs and the Court to assess to what extent any future cross-complaints will present case management issues, Uber should provide an accounting of the number of drivers it intends to file against as third-party defendants, and the number of times it has done so in prior litigations, including in the JCCP. Uber should also identify any anticipated third-party defendants. Plaintiffs do not anticipate that any cross-complaints would meaningfully affect the proceedings at this stage, but encourage Defendants to file cross-complaints promptly, so that the parties and the Court have the benefit of that information when developing future orders regarding case-specific discovery and trial schedules.

///

///

///

## III.   PRETRIAL ORDERS

The following pretrial orders are in place:

- Pretrial Order No. 2: Preservation Order (ECF No. 65);
- Order Re: Plaintiffs Who Wish to Proceed Anonymously (ECF No. 174);
- Pretrial Order No. 5: Discovery Schedule and Initial Motions (ECF No. 175);
- Protective Order (ECF No. 176);
- Pretrial Order No. 6: Direct Filing Order (ECF No. 177);
- Pretrial Order No. 8: Discovery Dispute Resolution Procedures (ECF No. 323);
- Pretrial Order No. 9: ESI Protocol (ECF No 345);
- Pretrial Order No. 10: Fact Sheet Implementation Order (ECF No. 348[1]); and
- Pretrial Order No. 11: Order re: Adoption of Master and Short Form Complaints (ECF No. 349).

The following proposals await the Court's ruling:

- Privilege Order (ECF Nos. 228, 229);
- Common Benefit Order (ECF No. 282)[2]
- Deposition Protocol (ECF Nos. 299, 300); and
- Expert Discovery Protocol (ECF No. 300-1)[3].

The Parties note that the JCCP Plaintiffs and Defendants have been conferring regarding a Joint Coordination Order.

## IV.   UBER'S INITIAL MOTIONS

### A.   Terms of Use Motion

On February 9, 2024, Defendants filed a Terms of Use Motion, which included arguments about its Terms of Use Agreements and their effect on Plaintiffs' ability to bring their claims in a coordinated or consolidated proceeding.  ECF No. 257.  Plaintiffs filed their opposition on March

---

[1] The parties identified a handful of technical issues (i.e. numbering and typos) in the PFS and DFS attached to PTO 10, and propose sending revised versions to the Court for clarity.

[2] Proposed by Plaintiffs; Defendants did not object.

[3] Proposed jointly by the parties.

12, 2024 (ECF No. 341), and Defendants' reply is due on April 2, 2024.

### B.  Rule 12 Motions

On February 15, 2024, Plaintiffs filed their Master Long-Form Complaint.  ECF No. 269. As ordered in PTO No. 5, Defendants will file their Rule 12 motions to dismiss the Master Complaint by April 1, 2024.  Defendants are filing separate motions to dismiss addressing all claimants whose alleged incidents took place in five states with the largest volume of cases, including dismissal of certain misrepresentation (i.e., fraud) claims based on the release of such claims by many of these Plaintiffs as part of the settlement of the class action in *McKnight et al. v. Uber Technologies Inc.*, 3:14-cv-05615-JST (N.D. Cal).  Each state-specific motion will address all claims brought with respect to incidents in a particular state.  The parties met and conferred and anticipate submitting a stipulation regarding the page limits for those motions. Currently, the due date for Plaintiffs' oppositions is May 22, 2024, and for Defendants' replies is June 19, 2024. However, the parties have met and conferred and anticipate agreeing on new response and reply dates once the respective motions are filed.

### A.  Motion to Transfer

**Defendants' Position**

Uber intends to move to transfer under 28 U.S.C. § 1404(a). Uber is aware of a total of 241 cases pending in federal court that are part of this MDL. Of those pending cases, 210 cases arise from alleged incidents that occurred outside of California, yet were originally filed in the Northern District of California.  Those actions should be tried in the judicial districts in which the underlying incidents are alleged to have occurred.

Although the cases are coordinated for the time being before this Court for pretrial purposes, questions under U.S.C. § 1404(a) must be decided so that these cases can be transferred to the appropriate venue once they are remanded for trial. 28 U.S.C. § 1407(a).  Should Uber's Terms of Use motion be granted, Uber expects that the parties will stipulate to its application with respect to all, or the vast majority, of the remainder of the Plaintiffs in the MDL. In that event, the question of transferring their actions to the venues in which they should have been originally filed, to be litigated as individual action as Plaintiffs agreed in the Terms of Use, will be resolved.  In

the event that the Terms of Use Motion is not granted, a determination on motions to transfer pursuant to U.S.C. § 1404(a) will be required.  There is no reason to wait to make these § 1404(a) determinations.  Because Uber is not requesting any forum discovery in advance of bringing its Omnibus Motion, there is nothing preventing the parties from briefing this issue immediately.

**Plaintiffs' Position**

Uber's Terms of Use motion is pending before the Court.  That motion includes a request to transfer under 28 U.S.C. § 1404(a) based on Uber's forum selection clause. Therefore, any follow-on motion independent of a forum selection clause is not yet ripe.  After the Court decides Uber's Terms of Use motion, the parties can meet and confer regarding any transfer motions Uber wishes to file, and submit joint or competing proposals to the Court.

**V.    DISCOVERY**

**1.    Defendants' Discovery**

**a.    Discovery Requests**

On February 28, 2024, Plaintiffs served on Defendants a First Set of Requests for Production of Documents, which includes 202 requests.  Defendants' responses to these document requests are due by March 29, 2024. The parties are conferring regarding Defendants' request for a 60-day extension.

**b.    PTO 2**

On January 9, 2024, Judge Cisneros issued an order on Plaintiffs' Motion to Enforce PTO 2.  ECF No. 190.  The Court ordered Defendants to produce certain basic information about past and current employees subject to a litigation hold, and certain information as to the ESI sources enumerated in PTO No. 2, Paragraph 3.  Although Defendants maintain that they are and have been complying with PTO No. 2, the Parties are conferring regarding concerns Plaintiffs have about Defendants' compliance.

**c.    PTO 5**

PTO No. 5 ordered Defendants to produce to Plaintiffs "all documents Defendants produce in any other Uber sexual assault cases, including arbitrations, and any other cases about the 'Safe Rides Fee,' including any associated privilege logs.  Defendants may redact HIPAA-protected

information of plaintiffs in those actions." PTO No. 5, § 6.C. On February 6, 2024, Defendants filed a motion before Judge Cisneros to modify this provision of PTO No. 5 to require production of only non-case specific and non-plaintiff specific documents Uber produced in prior litigations. ECF No. 251. On March 1, 2024, Judge Cisneros carved out from production some categories of case specific and plaintiff specific documents – vehicle registration and inspection paperwork, non-incident related trip receipts, and Uber app log in history – but otherwise concluded that Uber was required to produce case-specific and plaintiff-specific documents to Plaintiffs. ECF No. 321.

PTO No. 5 also ordered Defendants to produce to Plaintiffs "all documents Defendants produced to legislative, regulatory, or enforcement entities in connection with government investigations or inquiries within the United States of Uber with respect to sexual assault, including attempted assaults (except those investigations or inquiries conducted pursuant to grand jury subpoena), including all those by the California Public Utilities Department, and any associated privilege logs." PTO No. 5, § 6.B. On February 12, 2024, Plaintiffs' filed a motion to enforce this aspect of PTO No. 5. ECF No. 259. On March 1, 2024, Judge Cisneros granted the motion with respect to the California Public Utilities Documents, but deferred decision and invited additional letter briefing with respect to whether certain SF and LA District Attorneys' investigations fell within the purview of PTO 5. ECF No. 327. The Court's March 1 Order denied without prejudice the remainder of Plaintiffs' motion and ordered the parties to meet and confer to ensure the list Uber provided Plaintiffs of relevant government investigations is complete. *Id.* The Parties continue to meet and confer to address this issue. On March 15, 2024, Judge Cisneros ruled the SF and LA District Attorneys' civil litigation regarding Uber's then marketing practices filed in San Francisco Superior Court after their initial investigation was within the purview of PTO 5. As with PTO 2, the parties dispute whether Uber has complied with PTO 5, and are conferring on this issue.

### 2. Plaintiff Discovery

#### a. Bona Fide Ride Receipts

Pretrial Order No. 5 ordered Plaintiffs with cases pending in the MDL on or before February 1, 2024, to produce to Defendants a bona fide ride receipt from an Uber trip connected

to the alleged incident by February 15, 2024.  PTO No. 5, § 4.A.  If a receipt was not available, Plaintiffs' Counsel were ordered to disclose to Defendants several categories of information: (1) why the receipt is unavailable; (2) the name, phone number, and email address of the accountholder who ordered the ride; (3) the date of the ride; (4) the starting and ending location of the ride; (5) any other basic information that may assist Defendants in identifying the ride; and (6) if items (2) through (5) cannot be provided with precision or cannot be provided at all, an explanation as to why the information is not readily ascertainable.  *Id.*

**Defendants' Position**

Plaintiffs have not complied with Pretrial Order No. 5.  As part of Defendants' review of Plaintiffs' receipts and submissions, Defendants determined that Plaintiffs submitted at least 30 deficient submissions. Specifically, Plaintiffs failed to provide sufficient information identifying the ride in question as required under Pretrial Order No. 5.  The deficiencies generally fall into two categories: (1) inaccurate names, phone numbers, and email addresses associated with the account used to order the alleged trip in question; and (2) imprecise trip dates, starting locations, and ending locations of the alleged trip in question.

In an effort to obtain relevant information in a timely manner, on March 6, 2024, Defendants began meeting and conferring with Plaintiffs' individual counsel about the cases that are non-compliant with Pretrial Order No. 5 with respect to Plaintiffs' ride receipt submissions, and requesting additional and accurate information.  These conversations have somewhat reduced the number of Plaintiff submissions with deficiencies that need to be remedied.  However, many deficiencies still remain.

On March 21, 2024, Defendants and Plaintiffs' Leadership met to discuss Plaintiffs' submissions under Pretrial Order No. 5 and the eight deficiency notices Defendants sent to individual Plaintiffs' firms.  The Parties agreed that Defendants should continue meeting and conferring with Plaintiffs' firms about individual Plaintiffs' submissions under Pretrial Order No. 5.

The purpose of the meet and confers between the Parties regarding individual Plaintiffs' submissions is to collaborate and reduce the number of cases where such motions might be

necessary.  If these meet and confers do not succeed in all cases, the Parties will be free to present their arguments to the Court about whether Pretrial Order No. 5's requirements were satisfied and, if not, the appropriate remedies in the context of actual disputes, not hypothetical future ones that may never arise.  Defendants reserve the right to file motions to enforce Pretrial Order No. 5 and seek dismissal of cases where Plaintiffs fail to submit sufficient information to allow Uber to locate Plaintiffs' alleged trips as Pretrial Order No. 5 requires.

Plaintiffs also raise an argument about Defendants' obligations to produce ride receipts to Plaintiffs.  As Defendants have reviewed Plaintiffs' Pretrial Order No. 5 submissions, Defendants simultaneously communicated with Plaintiffs about the actions Defendants must take when a Plaintiff fails to submit a bona fide ride receipt.  The Parties set a meet and confer to discuss the terms of a future order regarding this topic as, at the time, there was no order governing the process by which Defendants would produce ride receipts to Plaintiffs.  Before that meet and confer could take place, the Court issued Pretrial Order No. 10, ECF 348, and adopted a Defendant's Fact Sheet that outlines Defendants' obligations when a Plaintiff fails to submit a bona fide ride receipt, ECF 348-2 at 3.  Defendants will comply with the Court's Order and its obligations under the Defendant's Fact Sheet, which will include producing bona fide receipts to Plaintiffs when they can be located.

Plaintiffs use this Joint Status Conference Statement to seek an order demanding that Uber produce these receipts within 14 days of receiving an information form from a Plaintiff.  This request is a blatant attempt to revise Pretrial Order No. 10 and the Defendant's Fact Sheet the Court adopted.  ECF 348 at 5.  The Court's order was clear that the "Court will not revise either this Order or the fact sheets unless the parties agree on a given change."  ECF 348 at 9.  Notably, at no point during the Parties' meet and confer on March 21 did Plaintiffs inform Defendants that they would be requesting the Court accelerate Defendants' timeline for producing ride receipts or seek to obtain Defendants' consent to this change.  Uber does not agree to this change and there is no reason to make such a change.

Defendants will abide by their obligations under Pretrial Order No. 10 and follow the instructions in the Defendant's Fact Sheet.  As required by the Defendant's Fact Sheet plain text,

1   if Defendants can confirm that a Subject Trip occurred, regardless of whether a ride receipt is

2   available, it will complete the Defendant's Fact Sheet.  ECF 348-2 at 3.

3       **Plaintiffs' Position**

4       Plaintiffs and Defendants met and conferred regarding the production of ride receipts and

5   Ride Information Forms on March 21, 2024. Plaintiffs' position is that if a Ride Information Form

6   was timely completed in good faith pursuant to PTO No. 5, that form is complete and not

7   "deficient," even if plaintiff does not have all of the information (for example, if a third party

8   ordered the ride, or Uber deleted the account). If additional or supplemental information may assist

9   in substantiating a ride, Plaintiffs' counsel has encouraged individual counsel to meet and confer

10  with Uber to see if rides may be substantiated with receipts or other substantiating information in

11  Uber's possession.

12      The Court indicated that it expected Uber to produce Ride Receipts if they can be identified.

13  *See* 1/19/24 Hearing Tr. at 28:9-11, 29:18-22) ("[I]t seems to me, and I don't hear anything

14  different from you, if you can identify it, you will, and produce it."). While Uber has indicated that

15  it has in fact located receipts, to date, Uber has not produced a single ride receipt to Plaintiffs but

16  has indicated that they will do so within 60 days of March 26, 2024. Plaintiffs propose that Uber

17  produce receipts to Plaintiffs within 14 days of receipt of a Ride Receipt Form or within 14 days

18  of locating the receipt, so that Plaintiffs have access to the information when completing their

19  Plaintiff Fact Sheet.

20      Plaintiffs do not believe it would be a good use of the parties' and Court's resources to

21  engage in motion practice regarding Ride Information Forms, particularly in light of the impending

22  deadlines for Plaintiff Fact Sheets. Plaintiffs propose that the parties meet and confer and submit

23  joint or competing proposals regarding any anticipated motion practice regarding ride receipt

24  submissions before any such filing by Defendants.

25      **b.    Lifting Discovery Stay On Plaintiffs**

26      PTO No. 5 noted that, except for the requirements noted in Paragraph 4.A for Plaintiffs to

27  produce bona fide ride receipts or specific information regarding each ride, "all discovery on

28  Plaintiffs remains stayed."  PTO No. 5, § 4.B.

**Defendants' Position**

Defendants request the Court open discovery on Plaintiffs on April 1, 2024.  There is no reason for an asymmetry between Plaintiffs' ability to serve discovery on Defendants and Defendants' inability to serve discovery on Plaintiffs.  Plaintiffs served 202 document requests on Defendants, and Defendants are restricted from serving any discovery, let alone document requests, on Plaintiffs.  Defendants cannot defend themselves against these allegations if they cannot obtain discovery from the parties making those allegations.  Plaintiffs claim that no discovery other than their Fact Sheets should be allowed.  This approach is prejudicial. It ignores Defendants' need to further explore Plaintiffs' claims and evaluate the Fact Sheets in the first place.  Currently, Defendants are at a significant disadvantage in developing case strategy and moving the case forward.

Plaintiffs assert that "open[ing] general discovery of Plaintiffs at the same time that Plaintiffs are submitting Plaintiff Fact Sheets would invalidate the entire exercise." That makes no sense. Both Plaintiffs and Defendants have obligations to fill out and submit fact sheets. If it were true that there should be no discovery other than fact sheets, there would no discovery from Defendants until the fact sheet process is complete. Of course that is not the position that Plaintiffs have taken, nor is it a productive way to move this case forward. What is fair and productive, and what will advance these cases, is mutual discovery from both sides – which is what is occurring with respect to fact sheets with both sides having obligations within 60 days of the Court's fact sheet order – not the one-sided stay of discovery that Plaintiffs are advocating to have remain in place.

As this Court noted in the *Volkswagen* MDL, nothing should prevent Defendants from utilizing discovery tools to obtain evidence from Plaintiffs in addition to what is provided in the Fact Sheets: "The PFS [Plaintiff Fact Sheet] process is designed to streamline the production of relevant information and documents, but that process in no way limits any party from seeking additional information and documents from any plaintiff that completes a PFS through other discovery requests under the Federal Rules of Civil Procedure."  Pretrial Order No. 9 § 4(E)(iii),

-12-

*In re Volkswagen "Clean Diesel" Mktg., Sales, Pracs. & Prods. Liab. Litig.*, No. 3:15-md-02672-CRB (N.D. Cal. Feb. 25, 2016), ECF No. 1252.  Contrary to Plaintiffs' assertion below, nothing in the Defendants' proposed ESI Order suggests anything different.  Defendants' proposed ESI Order merely deferred a discussion about Plaintiffs' ESI until such time as Plaintiffs become involved in formal discovery.  That time should be now.  Pointedly, the proposed ESI protocol stated, "This provision shall not limit any Plaintiff's obligation to produce discovery that the Court or Federal Rules of Civil Procedure may require before being selected for trial."  Dkt 262-2 at 14.

Furthermore, experience with these types of claims shows that much of the evidence relating to Plaintiffs' alleged incidents is in the possession of third parties – e.g., law enforcement, healthcare providers, and employers.  Obtaining that third-party discovery is a time-consuming process that cannot begin without discovery from Plaintiffs.

**Plaintiffs' Position**

In MDLs, litigation-wide discovery of Plaintiffs is almost universally handled by way of the Plaintiff Fact Sheet. Aside from each plaintiff's production of their Plaintiff Fact Sheet and associated documents and record authorizations, no other plaintiff-specific discovery is contemplated or required in MDLs typically until specific cases are selected for trial. The very purpose of a Plaintiff Fact Sheet is to streamline this phase of litigation and reduce inefficiency. To open general discovery of Plaintiffs at the same time that Plaintiffs are submitting Plaintiff Fact Sheets would invalidate the entire exercise. Indeed, Defendants acknowledged this routine process for plaintiff-specific discovery in their Proposed ESI Order, in which Defendants agreed that the ESI Order *not* apply to Plaintiffs' production of documents because PFSs and documents produced with them would be subject to separate order, and "any Plaintiffs who are selected to proceed forward towards a trial date will meet and confer with Defendants about the technical aspects of these Plaintiffs' production of non-privileged documents as appropriate…" (Dkt. 262-2 at 14).

Further, the Court has already indicated that the traditional MDL discovery process should be used here (Plaintiff Fact Sheet followed by potential later discovery for trial plaintiffs). *See, e.g.*, Transcript of January 19, 2024 Case Management Conference, Dkt. 214, at pp. 10-11

(indicating that the parties are to brief any disputes regarding the content of plaintiff fact sheets); Transcript of November 3, 2023 Case Management Conference, Dkt. 76, at pp. 20-21 (indicating that it is yet to be determined whether plaintiff-specific bellwether discovery will be helpful in this litigation). As the Court noted in PTO 10 when approving the final PFS, the "appropriate question" for the PFS "is whether including a given question in a fact sheet will efficiently advance these coordinated proceedings, or whether that information might be better sought later, when individual cases are being worked up for trial." (Dkt. 348, PTO 10, at p. 2). "The Court regarded requests going to common issues…as more appropriate for inclusion in the fact sheets." *Id.*

Moreover, aligned with Judge Breyer's vision to address common discovery first, Plaintiffs have proposed a schedule below to address case specific discovery beyond the Plaintiff Fact Sheet later in the litigation.

## VI.    PRETRIAL SCHEDULE

### Plaintiffs' Position

Per Pre-Trial Order No. 5, the Court requested the parties to submit a joint or competing proposals on the "timing of deposition discovery, a protocol for depositions, and expert discovery." With this guidance, Plaintiffs believe that a case schedule was requested, and indeed appropriate at this juncture, to guide the parties on key discovery milestones. To that end, the parties met and conferred on this topic and exchanged competing proposals on fact discovery cut-offs as well as the timing of expert disclosures and depositions.

Plaintiffs note that the overarching theme to Defendants' opposition to a fulsome case schedule is that all decisions on scheduling and discovery be held in abeyance pending the outcome of their motions to dismiss. In effect, Defendants' want a stay. But their position is contrary to the spirit of this Court's Orders, in particular PTO 5. Further, resolution of any forthcoming motion to dismiss would not eliminate the need for a case schedule. To the contrary, while the Court's decision on a motion to dismiss may limit certain legal issues it will not obviate the general need for the parties to work expeditiously towards discovery and expert deadlines. Thus, a schedule at this juncture is appropriate. It would establish concrete goals and militate against attempts to stagnate the forward progression of the case.

For ease of reference, the parties' competing proposals are shown in the below chart. Plaintiffs' proposal addresses several significant issues that are not addressed in Defendants' proposal:

a. **Staggering General and Case Specific Discovery Deadlines to Facilitate Early Resolution of Common Issues**:

Plaintiffs contemplate a separate order that will cover the trial selection procedure, including which specific Plaintiffs are subject to individual discovery beyond the Plaintiff Fact Sheet, to run concurrently with fact discovery. Such an order would address the timing of case specific discovery, incorporate a deposition protocol for case specific depositions, and address issues relating to identity of Plaintiff and disclosure of confidential documents to third parties. Plaintiffs acknowledge that any trial selection order would not be appropriate until resolution of the motions to dismiss. It is for that reason that Plaintiffs' proposal staggers these dates. Staggering also facilitates the early resolution of the question of duty and informs decisions regarding case specific discovery and further expert disclosures. For these reasons, Plaintiffs have separated out the timing of general fact discovery from case specific discovery.

b. **Early Expert Disclosures on the Question of Duty**:

Plaintiffs propose an expert disclosure schedule that will front the question of duty. For example, on the duty owed by Uber to passengers regarding, among other things, duty to hire, supervise, and retain drivers; duty to protect passengers and provide safe transportation, including the non-delegable duty; and duty to disclose and refrain from making intentional misrepresentations to all users. Initial expert discovery of the duty question will enable the parties to evaluate and develop efficient litigations strategies, including the filing of motions for summary judgment, that would significantly streamline the litigation. Resolution of such motions would, in turn, inform decisions regarding case specific discovery and further expert disclosures. For this reason, Plaintiffs propose a two-wave schedule for disclosure of experts, with the first wave focused on the question of Uber's duty owed to users and passengers, in advance of other types of experts.

c.    **Personnel Files for Uber Employees:**

As set forth in Plaintiffs' proposed deposition protocol (Dkt. No. 299-1), Plaintiffs request that personnel files of Defendants' employee or former employee witnesses be produced at least 14 days in advance of each noticed deposition. This proposal, and a corresponding notation in a case schedule, will ensure efficient and timely completion of depositions, without burdening the parties and the Court with needless delay and litigation of a very straightforward request.

| Topic | PROPOSAL | Plaintiff Proposal Deadline | Defendant Proposal Deadline |
|---|---|---|---|
| *Plaintiff Initial Disclosures - Per PTO 5* | Plaintiffs submit initial disclosures to Defendants as set forth in Paragraph 4.A of PTO 5 | 02/15/2024 or within 14 days of filing | 02/15/2024 or within 14 days of filing |
| *Defendants Initial Disclosures - Per PTO 5* | Defendants serve Fed.R.Civ.P. Rule 26 Disclosures. | 03/07/2024 | 03/07/2024 |
| *Production of Custodial Files and Custodial and Non-Custodial Data Sources* | The Parties will develop a process to identify and prioritize the production of priority custodial files and custodial and non-custodial data sources. Unless otherwise agreed, production of a custodial file be less than 21 days prior to the date of the Custodian's deposition.<br><br>ESI production will be governed by the ESI Order. | Rolling | Rolling |
| *Deadline to Amend Master Complaint or Add Parties* | Deadline to Amend Master Complaint or Add Parties | | 30 days from Court Order on MTD (if leave to amend permitted) |
| *PTO5 Judge set Substantial Completion Defendant Production* | Defendants substantially complete productions of non-privileged responsive documents in response to First Set of Requests for Production | 09/01/2024 | 09/01/2024 |
| *Production of Personnel Files* | Defendant(s) shall produce the personnel file of any Deponent at least 14 days prior to the date of the Deponent's deposition. | rolling | Defendants dispute this requirement (see below) |

| Topic | PROPOSAL | Plaintiff Proposal Deadline | Defendant Proposal Deadline |
|---|---|---|---|
| *Fact Discovery Cutoff* | Substantial Completion of party fact and third-party discovery | 1/15/2025 (excluding Wave I specific fact discovery) <br><br> Trial Selection Order would govern close of Wave I case specific fact discovery – *contemplated 06/01/2025* | 4/15/2025 |
| *MSJ and Daubert meet and confers* | Parties to meet and confer and submit a proposed schedule for Motions for Summary Judgment and Daubert Motions. | Plaintiffs' proposed deadlines included herein | 5/15/2025 |
| *Expert Disclosure (for those experts needed to support a MSJ on question of duty)* | Expert Reports Due (simultaneous exchange) | 01/29/2025 | Defendants dispute bifurcating expert disclosures (see below) |
| *Rebuttal Expert Disclosure (for those experts rebutting those experts disclosed above )* | Rebuttal Expert Reports Due (simultaneous exchange) | 02/12/2025 | Defendants dispute bifurcating expert disclosures (see below) |
| *Expert Depositions (for those experts disclosed above)* | Expert Depositions (completed by) | 02/28/2025 | Defendants dispute bifurcating expert depositions (see below) |
| *Expert Disclosure (non case-specific)* | Expert Reports Due (simultaneous exchange) | 06/15/2025 <br><br> Trial Selection Order would govern Wave I case specific expert disclosure – *contemplated 06/25/2025* | 07/15/2025 90 days after Face Discovery Cutoff |
| *Rebuttal Expert Disclosure (non case-specific)* | Expert Reports Due (simultaneous exchange) | 30 days after disclosure | 09/15/2025 |

| Topic | PROPOSAL | Plaintiff Proposal Deadline | Defendant Proposal Deadline |
|---|---|---|---|
| | | Trial Selection Order would govern Wave I case specific expert rebuttal disclosure – *contemplated 30 days after disclosure* | 60 days after opening expert reports |
| *Expert Depositions (non case-specific)* | Expert Depositions (completed by) and close of discovery. | Completed by 08/15/2025<br><br>Trial Selection Order would govern Wave I case specific expert depositions (completed by) – *contemplated 08/25/2025* | 11/15/2025 |
| *Daubert and Dispositive Motions* | Daubert and Dispositive Motions (*to be filed no later than*) | 9/3/2025<br><br>*Plaintiffs anticipate filing a MSJ on the question of duty as early as March 2025.*<br><br>Trial Selection Order would govern Wave I case specific expert Daubert and dispositive motions – *contemplated 09/17/2025* | Parties to meet and confer and submit a proposed schedule for Motions for Summary Judgment and Daubert Motions by 5/15/24. |
| *Daubert and Dispositive Motions* | Response to Daubert and Dispositive Motions | 30 days after Daubert or Dispositive Motion<br><br>Trial Selection Order would govern Wave I responses to case specific expert Daubert and dispositive motions – *contemplated 30 days after Daubert or Dispositive Motion* | Parties to meet and confer and submit a proposed schedule for Motions for Summary Judgment and Daubert Motions by 5/15/24. |
| *Daubert and Dispositive Motions* | Reply to Daubert and Dispositive Motions | 14 days after Response to Daubert or Dispositive Motion | Parties to meet and confer and submit a |

| Topic | PROPOSAL | Plaintiff Proposal Deadline | Defendant Proposal Deadline |
|---|---|---|---|
| | | Trial Selection Order would govern Wave I replies to case specific expert Daubert and dispositive motions – *contemplated 14 days after Response to Daubert or Dispositive Motion* | proposed schedule for Motions for Summary Judgment and Daubert Motions by 5/15/24. |
| *Wave I Trial* | Wave I Pre-Trial Conference | 12/01/2025 | Not provided (trials would be held by court where incident occurred; date should be set by transferee judge ) |

**Defendants' Position**

**Case Management Scheduling Order.** The Court has not asked for and the Court need not enter a complete case management scheduling order at this juncture.  The parties have a fundamental disagreement on whether the Court has requested at this time that the parties submit competing case management proposals.  Such a submission was plainly not ordered by the Court and is premature.  Plaintiffs indicated that they believe now is the appropriate time to set forth a complete case management schedule that outlines deadlines for, among other things, motions for summary judgment, motions to exclude expert testimony, and a pretrial conference.  Preliminarily, Plaintiffs misread the Court's specific instructions in PTO. The instructions state: the parties are to meet and confer "about a pre-trial order regarding the *timing of depositions, a protocol for depositions, and expert discovery*."  PTO 5 ¶ 6(E) (emphasis added).  As such, Uber believes the Court asked the parties to simply address the schedule for the beginning and end of depositions, but did not ask for a complete case calendar through trial.

If the Court wanted the parties to meet and confer about summary judgment, *Daubert*, and pretrial conference dates, it would have explicitly said so.  In *McKinsey*, a Case Management Order issued sixteen months after the inception of the MDL required the parties to meet and confer regarding a "supplemental discovery plan" and "proposed case management order, including, as appropriate, deadlines for class discovery and class certification, completion of fact discovery, including substantial completion of document production, in each operative master and consolidated complaint, expert disclosure, *Daubert* briefing schedules for common issues, and a bellwether protocol."  *In Re McKinsey & Co. Inc. National Prescription Opiate Consultation Litigation*, Case No. 21-md-02996-CRB, Dkt. No. 440 at 4 (N.D. Cal, Oct. 27, 2022). This is in stark contrast to the Court's order in this case, which merely asked the parties to address, "the timing of deposition discovery."

Defendants respectfully ask the Court to decline to consider a full scheduling proposal, which is premature to consider at this juncture.  If however, the Court is inclined to consider a scheduling proposal, Defendants have, in an abundance of caution, prepared and attached to this motion a competing proposal for the Court's consideration.  Defendants' proposal includes a much more realistic and reasonable timeline for a fact discovery cutoff (4/15/2025), a deadline to meet and confer and submit a proposed schedule for summary judgment and *Daubert* motions (5/15/2025); and deadlines for expert disclosures (7/15/2025), rebuttal expert disclosures (9/15/2025), and expert depositions (11/15/2025).

Defendants proposed schedule tracks the schedule this Court ordered in the *McKinsey* case. *See, McKinsey*, Dkt. 505, April 6, 2023.  First, it should be noted that the scheduling order in *McKinsey* outlining deadlines for a fact discovery cutoff and expert reports was not entered until almost two years after the case began.  Second, in *McKinsey*, just as in Defendants' proposal, expert discovery is not bifurcated, the deadline to amend the master complaint or add parties is 30 days from the Court's Order on Defendants' final motions to dismiss, and expert disclosures and reports are due 90 days after the fact discovery cutoff.  In sum, although the Court has not requested a case management schedule at this juncture, if the Court is inclined to enter such a schedule, Defendants proposal is more reasonable and should be adopted.

Plaintiffs proposal suggests that the Court should contemplate a separate order regarding the trial selection procedure.  Defendants assert that there are far too many unknowns in this case at this juncture to discuss the manner in which cases are selected for trial.  Discussions about trial selection should not occur until after Uber's motions to dismiss are decided, so that the parties have a concrete sense of the remaining claims.  Moreover, the Court has already expressed disinterest in including bellwether trials in this MDL, "I don't want to spend a lot of time going through something that is in a book somewhere about this is a process you can use unless we become convinced it would be helpful, and I'm not so sure it would be helpful in this case;" and the Court also stated, "I don't want to spend a lot of time thinking about the perfect bellwether when I ought to be spending time on is, you know, are – the legal theories and the facts that are asserted and not necessarily the bellwether."  11/03/23 Tr. at 20:10-14, 20:25-21:3.

**Bifurcated Expert Discovery Schedule.**  Plaintiffs presented an odd bifurcated expert discovery schedule, which lacks grounding in common sense.  Plaintiffs propose to bifurcate the expert disclosures/depositions and summary judgment briefing on the issue of duty from all remaining potential expert disclosures/depositions and summary judgment briefing. There is no need to do so on a separate timeline from all other potential issues subject to summary judgment. Imposing this added layer of complexity this early in the litigation only serves to create unnecessary obstacles to the fluid litigation of the case.  In the ordinary course of a case, the parties first complete all fact discovery, then complete all expert discovery, and then they make whatever summary judgment motions they want, at the same time.  There is no reason to impose on the parties and the Court multiple rounds of summary judgment practice.  Plaintiffs' proposal is inefficient and impractical.

Among other things, experts often opine about multiple issues relating to multiple claims, therefore, expert disclosures and expert depositions cannot as a practical matter be "bifurcated."  Therefore, under Plaintiffs' proposal, there either will be multiple rounds of expert reports and expert depositions, or experts will need to disclose all their opinions and be deposed about all their opinions at the outset, thus making bifurcation unnecessary and unhelpful. Similarly, deposition testimony and documentary evidence that will be submitted to the court on summary

-21-

judgment will relate to multiple issues and multiple claims. Therefore, if there are multiple rounds of expert discovery and summary judgment motions, the parties will be submitting overlapping and duplicative record evidence twice: first on the first round of motions, and again on the second round of motions. However, if expert discovery and summary judgment motions are scheduled in the ordinary course — a single set of summary judgment motions at the conclusion of all fact discovery and all expert discovery — the parties will provide the Court with a single comprehensive submission of record evidence applicable to all summary judgment motions. In short, it will not be efficient to have two rounds of expert discovery, two rounds of summary judgment motions, and two rounds of oral argument.

Further, it is entirely premature for the Court to decide today how it will structure and sequence expert disclosures, expert depositions, and summary judgment motions, when the causes of action that will be dismissed, and those that will remain, are yet to be determined. Specifically, on April 1, Uber will be moving to dismiss several of the claims on which Plaintiffs assert they will move for summary judgment: e.g. non-delegable duty, misrepresentation, duty to disclose, and fraudulent concealment. The misrepresentation and concealment claims are especially vulnerable to dismissal, as none of the required elements of those claims is pled with the specificity requirements of Rule 9(b), which was the basis for the JCCP Court dismissing those claims. Moreover, numerous Plaintiffs released misrepresentation claims against Uber pursuant to the settlement and release in the *McKnight* class action, which also will be the subject matter of Uber's forthcoming motions. *See McKnight et al. v. Uber Technologies Inc.*, 3:14-cv-05615-JST (N.D. Cal). Thus, without knowing which claims will survive at the end of discovery, Plaintiffs' proposal asks the Court to get far ahead of itself by deciding now how summary judgment motion practice will later take place.

**Personnel Files.**

Plaintiffs schedule also includes a unique deadline for Defendants to produce personnel files of each deponent. This is not typical in a case management schedule order, it is not included in Defendants' Proposed Deposition Protocol, nor is it necessary for this case. Defendants plan to produce any and all relevant personnel documents that are responsive to document requests

propounded in this case, but there is no basis for Defendants to produce entire personnel files of each and every witness before a deposition.

## VII.   UBER'S OPPOSED REQUEST TO ESTABLISH A CUTOFF FOR THE FILING OF NEW COMPLAINTS

**Defendants' Position**

Uber believes it is appropriate for the Court to establish a deadline or cut-off date for the filing of any additional complaints to be included in this MDL.  At the last Case Management Conference on January 19, 2024, the Court noted that, "in connection with" the filing of the master complaint and a discussion about the response, it would "address again the issue of filing, of a cutoff filing." 01/19/24 Tr. at 5:10, 6:3-4.  The Master Complaint was filed on February 15, 2024, and Uber's Motions to Dismiss are set to be filed on April 1, 2024.

Since the last Case Management Conference on January 19, 2024, only [28] additional cases have been filed – despite Plaintiffs' counsel's representation at the November 3, 2023, Case Management Conference that, "My firm has over a thousand cases right now that are going to be filed before Your Honor in this MDL," 11/3/23 Tr. At 16:25-17:02;  and the Court's statement in Pretrial Order No. 4 that "Plaintiffs' counsel are encouraged to file their cases sooner rather than later, consistent with their fiduciary obligation to their clients." ECF No. 152 at 7.

A cut-off date is necessary so the Court and the Parties know the parameters of this MDL, including the size and composition of the body of cases. That, in turn, will guide the Court and the Parties in determining the nature and timing of motion practice (including statute of limitations motions and motions to transfer) and deciding what discovery is necessary and proportionate to the number and type of cases involved in the MDL. To those ends, a deadline will incentivize counsel to file whatever additional cases they may have, including those which they previously represented – nearly five months ago were ready to be filed.  Absent a defined endpoint for filing additional cases, the boundaries and scope of this MDL will remain unclear which, among other things, will make the resolution of the litigation, whether contested or compromised, impossible to achieve.  Accordingly, Uber proposes a cut-off date of May 31, 2024 (*i.e.*, around 60 days from now) for the filing of any new complaints which are to be litigated as part of this MDL.

**Plaintiffs' Position**

Plaintiffs oppose Uber's request, which has been raised and rejected multiple times now. *See* ECF No. 207 (CMCS discussing the parties' positions on Uber's request to establish a cut-off date); 1/19/24 Hearing Tr. at 5:7-7:2 (The Court: "The request that I set a cutoff date for the filing of new complaints, and I'm sure the parties recall that this is not the first time I addressed the issue, I did before, and I don't think it has changed. . . . The purpose of an MDL, among other things, is to bring all the cases that appropriately are in front of me or it should be appropriately in front of the MDL[.]" Plaintiffs' Counsel continue to anticipate a large number of cases filed in this MDL. The pace of filings is likely to increase now that the Court has entered PTO No. 10. As was the case just two months ago, the time is not right for a cutoff. *Id.*

## VIII.   SPECIAL SETTLEMENT MASTER

On November 15, 2023 (ECF No. 88), the Parties jointly submitted a narrowed list of two suggested candidates for Special Settlement Master: Hon. Gail Andler and Hon. Shelley Chapman, and they remain open to considering additional candidates as well. The Parties welcome the Court's guidance on appropriate next steps in arranging for appointment of a Special Settlement Master.

## IX.   ADMINISTRATIVE MATTERS

### A.  Defendants' Liaison Counsel

A recent change in the shape and scope of counsel for Defendants precipitates the need for more streamlined communication procedures. Plaintiffs request that Defendants identify 1-3 primary counsel, and no more than 5 recipients for service of sealed or redacted filings.

Defendants have agreed to meet and confer with Plaintiffs to identify primary counsel to facilitate communication.  Any obligations or limitations in this respect should be reciprocal (*i.e.*, Plaintiffs' counsel should be bound by any such limitations, as well).

### B.  Other

Plaintiffs request the Court set monthly status conferences in this MDL to keep things moving apace.  Plaintiffs inquired about Defendants' availability for a status conference in April and May; Defendants stated that the only workable date is May 24, 2024.

1        Defendants are not opposed to setting future status conferences in this MDL, but there is

2   no need to set regular monthly conferences at this juncture.  With the help of the Court's current

3   guidance and Pretrial Orders, the case is already moving at a significant pace and nothing suggests

4   that will change in the future.  In Defendants' experience, the scheduling of multiple status

5   conferences too close together can have the unintended consequence of pushing the parties to

6   manufacture issues to discuss with the Court rather than motivate the parties to resolve these issues

7   on their own through the meet and confer process or with the assistance of Judge Cisneros.

8

9   Dated: March 22, 2024                    **PAUL, WEISS, RIFKIND, WHARTON &**
                                             **GARRISON LLP**

10

11                                           By: */s/ Randall S. Luskey*
                                                ROBERT ATKINS
                                                RANDALL S. LUSKEY

12                                              KYLE N. SMITH
                                                JESSICA E. PHILLIPS

13                                              CAITLIN E. GRUSAUSKAS
                                                ANDREA M. KELLER

14

15                                           **SHOOK, HARDY & BACON L.L.P.**

16                                           By: */s/ Michael B. Shortnacy*
                                                MICHAEL B. SHORTNACY

17                                              PATRICK OOT

18                                           *Attorneys for Defendants*
                                             UBER TECHNOLOGIES, INC.,

19                                           RASIER, LLC, and RASIER-CA, LLC

20

21  Dated: March 22, 2024                    By: */s/ Sarah R. London*
                                                Sarah R. London (SBN 267083)

22                                              **LIEFF CABRASER HEIMANN**
                                                **& BERNSTEIN**

23                                              275 Battery Street, Fl. 29
                                                San Francisco, CA 94111

24                                              Telephone: (415) 956-1000
                                                slondon@lchb.com

25

26

27

28

JOINT STATUS CONFERENCE STATEMENT                                    3:23-md-03084-CRB

By: /s/ Rachel B. Abrams
    Rachel B. Abrams (SBN 209316)
    **PEIFFER WOLF CARR KANE**
    **CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    rabrams@peifferwolf.com

By: /s/ Roopal P. Luhana
    Roopal P. Luhana
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Floor 12
    New York, NY 10016
    Telephone: (888) 480-1123
    luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **FILER'S ATTESTATION**

I, Randall S. Luskey, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.


Dated:  March 22, 2024                                    By:    */s/ Randall S. Luskey*
                                                                            Randall S. Luskey