1  RANDALL S. LUSKEY (SBN: 240915)
       rluskey@paulweiss.com
2  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
3  535 Mission Street, 24th Floor
   San Francisco, CA 94105
4  Telephone: (628) 432-5100
   Facsimile:  (628) 232-3101
5
   ROBERT ATKINS (*Pro Hac Vice* admitted)
6     ratkins@paulweiss.com
   JACQUELINE P. RUBIN (*Pro Hac Vice* admitted)
7     jrubin@paulweiss.com
   CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
8     cgrusauskas@paulweiss.com
   ANDREA M. KELLER (*Pro Hac Vice* admitted)
9     akeller@paulweiss.com
   **PAUL, WEISS, RIFKIND, WHARTON**
10      **& GARRISON LLP**
   1285 Avenue of the Americas
11  New York, NY 10019
   Telephone: (212) 373-3000
12  Facsimile:  (212) 757-3990

13  *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.,
14  and RASIER, LLC

15  *[Additional Counsel Listed on Following Page]*

16              **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18              **SAN FRANCISCO DIVISION**

19

20  IN RE: UBER TECHNOLOGIES, INC.,          Case No. 3:23-md-03084-CRB
   PASSENGER SEXUAL ASSAULT
21  LITIGATION                               **DEFENDANTS UBER TECHNOLOGIES, INC.**
                                            **AND RASIER, LLC'S MOTION TO DISMISS**
22                                           **PLAINTIFF K.P.'S COMPLAINT**

23  This Document Relates to:
                                            Judge:      Honorable Charles R. Breyer
24  *K.P.* v. *Uber Technologies, Inc., et al.*,   Date:       TBD
   24-cv-00772-CRB                           Time:       TBD
25                                           Courtroom:  6 – 17th Floor

26

27

28

---

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF K.P.'S COMPLAINT                                    Case No. 3:23-md-03084-CRB

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
and RASIER, LLC.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF K.P.'S COMPLAINT                              Case No. 3:23-md-03084-CRB

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

INTRODUCTION ............................................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................................ 2

    A.    Plaintiff travels to UAE, where she was allegedly assaulted by an individual with no relationship with Uber or Rasier. .................................................................................. 2

    B.    Babar is a foreign independent driver with no relationship with Uber. ........................ 3

    C.    Plaintiff sues UTI and Rasier, but does not sue Babar. ................................................. 3

LEGAL STANDARD ...................................................................................................................... 3

ARGUMENT ...................................................................................................................................... 4

    A.    UAE law applies to Plaintiff's tort claims, and the UAE does not recognize common-law causes of action. ............................................................................................ 4

        1.    UAE law applies to Plaintiff's tort claims. ............................................................ 4

        2.    The UAE does not recognize common-law torts or punitive damages. ................. 6

    B.    Even if the Court were to read Plaintiff's common-law claims as claims under the UAE Civil Code, those claims must be dismissed. ......................................................... 7

    C.    Even if this Court applies Maryland law, Plaintiff's claims must be dismissed. ......... 9

        1.    Count 1—Negligence .............................................................................................. 9

        2.    Count 2—Negligent hiring, retention, and supervision ........................................ 13

        3.    Counts 3, 8, and 9—Negligent failure to warn, breach of warranty (design defect and failure to warn) .................................................................................... 15

        4.    Count 4—Intentional misrepresentation (fraud) .................................................. 19

        5.    Count 5—Negligent misrepresentation ................................................................. 21

        6.    Count 6—Negligent infliction of emotional distress ........................................... 22

        7.    Count 7—Breach of contract ................................................................................. 22

        8.    Vicarious liability for Babar's torts ...................................................................... 23

CONCLUSION ............................................................................................................................... 26

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF K.P.'S COMPLAINT               Case No. 3:23-md-03084-CRB

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                          **Page(s)**

*Adams v. NVR Homes, Inc.*, 193 F.R.D. 243 (D. Md. 2000) ........................................20

*Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718 (D. Md. 2018)................................4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................4

*Bond v. U.S. Postal Serv. Fed. Credit Union*, 164 F. Supp. 3d 740 (D. Md. 2015) .....................22

*Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423 (D. Md. 2014) ...........................20

*Brass Metal Prod., Inc. v. E-J Enters., Inc.*, 984 A.2d 361 (Md. Ct. Spec. App. 2009) ........................................................................20

*Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442 (D. Md. 2020) .......................................20

*Cont'l Masonry Co. v. Verdel Constr. Co.*, 369 A.2d 566 (Md. 1977) ............................23

*Corinaldi v. Columbia Courtyard, Inc.*, 873 A.2d 483 (Md. 2005) ...............................9

*Cunningham v. Feinberg*, 107 A.3d 1194 (Md. 2015) .............................................6

*Curry v. Trustmark Ins. Co.*, 600 F. App'x 877 (4th Cir. 2015)................................22

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir.1999).....................................3, 4

*Fid. First Home Mortg. Co. v. Williams*, 56 A.3d 501 (Md. Ct. Spec. App. 2012) ..................23

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999)..........................20

*Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 642 A.2d 219 (Md. 1994)..............................11

*Hartford Mutual Insurance Co. v. Bruchey*, 238 A.2d 115 (Md. 1968).............................5

*Higgins v. Diversey Corp.*, 998 F. Supp. 598 (D. Md. 1997) ....................................18

*Jackson v. A.M.F. Bowling Ctrs., Inc.*, 128 F. Supp. 2d 307 (D. Md. 2001)................................11

*Jacobs v. Adams*, 505 A.2d 930 (Md. 1986)......................................................5

*Jones v. Reichert Jung, Inc.*, 211 F. Supp. 2d 661 (D. Md. 2002)................................15

*Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466 (Md. 1988)...................................5

*Lab'y Corp. of Am. v. Hood*, 911 A.2d 841 (Md. 2006)..........................................5

*McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94 (D. Md. 2011) ...................................................................................23

*McGuiness v. Brink's Inc.*, 60 F. Supp. 2d 496 (D. Md. 1999) ...................................................9, 11

*Mitchell v. Rite Aid of Md., Inc.*, 290 A.3d 1125, cert. denied, 483 Md. 579, 296
   A.3d 419 (Md. Ct. App. 2023)...................................................................................13

*Moran v. Faberge, Inc.*, 332 A.2d 11 (Md. 1975) ...................................................15, 18

*Oaks v. Connors*, 660 A.2d 423 (Md. 1995)...................................................................23

*Papasan v. Allain*, 478 U.S. 265 (1986) ..........................................................................4

*Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870 (4th Cir.1989)...................................4

*Roberts v. Pruitt*, 2014 WL 4182215 (D. Md. Aug. 20, 2014), aff'd, 591 F. App'x
   201 (4th Cir. 2015).................................................................................4, 8, 18

*RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430 (Md. 2010)............................................23

*Scott v. Watson*, 359 A.2d 548 (Md. 1976).......................................................................9

*Tall v. Balt. Steam-Packet Co.*, 44 A. 1007 (Md. 1899)................................................11

*United Black Firefighters v. Hirst*, 604 F.2d 844 (4th Cir.1979) ....................................4

*White v. Kennedy Krieger Inst., Inc.*, 110 A.3d 724 (Md. Ct. Spec. App. 2015) .........22

**Statutes**

UAE Civil Code, art. 289(1) ...............................................................................................8

UAE Civil Code Article 313(1) ......................................................................................8, 9

Maryland Code Ann., Cts. & Jud. Proc. § 5-115 ........................................................15, 17

Maryland Code, Pub. Util. § 2-112 ..................................................................................10

Maryland Code, Pub. Util. § 10-101(l) .............................................................................10

**Other Authorities**

Federal Rule of Civil Procedure 9(b)..........................................................................2, 19, 20

Federal Rule of Civil Procedure 12(b)(6) ............................................................... *passim*

Raymond T. Nimmer, Law of Computer Tech. § 12:41 (West, Jan. 2020 Update).....................16

Restatement (Second) of Torts Section 314A.................................................................9, 11

Restatement (Third) of Torts: Prod. Liab. § 19 (West Grp., June 2020 Update) .........................16

UAE Civil Code, Chapter 3 (available at
    https://elaws.moj.gov.ae/English.aspx?val=UAE-KaitEL1) ....................................................6

- vi -

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., and Rasier, LLC, (collectively, "Uber") will, and hereby do, move this Court for an order dismissing portions of the Complaint brought by Plaintiffs in this coordinated action.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Robert Atkins, the concurrently filed Proposed Order, all evidence, pleadings, and papers filed herewith, the entire file in this coordinated action, any Reply that may be filed in support of this Motion, and any other arguments or evidence that may be presented to the Court in support of this Motion.

DATED:  April 1, 2024

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Robert Atkins*
　　ROBERT ATKINS
　　RANDALL S. LUSKEY
　　JESSICA E. PHILLIPS
　　KYLE N. SMITH
　　JACQUELINE P. RUBIN
　　CAITLIN E. GRUSAUSKAS
　　ANDREA M. KELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
and RASIER, LLC.

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF K.P.'S COMPLAINT

Case No. 3:23-md-03084-CRB

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      Defendants Uber Technologies, Inc. ("UTI") and Rasier, LLC ("Rasier") respectfully move

3 to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

4

## INTRODUCTION

5      This case involves a tragedy that occurred in Dubai, United Arab Emirates.  Plaintiff P.

6 alleges she was sexually assaulted in May 2023 by a resident of the UAE while on a trip to Dubai.

7 Plaintiff claims that, on May 4, 2023, she used the Uber App to request transportation from the

8 Dubai Marina to her hotel.  Plaintiff's driver was a man named Ali Babar—a Pakistani national

9 living in the UAE.  Plaintiff claims that Babar did not take her directly to her hotel, but instead

10 drove "almost an hour away" to a parking lot where he assaulted her.  She alleges that, following

11 the assault, Babar drove Plaintiff to her hotel.  Plaintiff sued UTI and Rasier in September 2023,

12 asserting various tort and contract claims, and alleges that Uber is vicariously liable for Babar's

13 criminal actions.  Plaintiff does not allege that UTI or Rasier had any knowledge of any prior

14 incidents involving Babar, nor does she allege that either entity had any reason to anticipate that

15 Babar would commit sexual assault, and she has not named Babar as a party to this action.

16      Plaintiff's case must be dismissed for several reasons.

17      First, Plaintiff's Maryland common-law tort claims fail as a matter of law because UAE

18 law—not Maryland law—governs.  This is so because the *lex loci delicti* approach adopted by

19 Maryland courts requires application of the tort law of the place where the injury occurred—here,

20 Dubai.  But Plaintiff has not pleaded any claims under UAE law, and the Complaint does not

21 invoke UAE law at any point.  Furthermore, the UAE is a civil law jurisdiction, not a common law

22 jurisdiction, so Plaintiff's Maryland common-law claims cannot be brought in the first instance.

23      Second, even assuming Plaintiff's Complaint could be read as asserting civil law tort

24 claims under UAE law, Plaintiff fails to state a claim upon which relief may be granted.  Plaintiff's

25 tort claims against UTI and Rasier are inextricably intertwined with the criminal acts of Babar.

26 But the UAE recognizes vicarious liability in extremely narrow circumstances that do not apply

27 here.  Neither UTI nor Rasier have any relationship—contractual or otherwise—with Babar.

28 Therefore, it follows that neither UTI nor Rasier exercised any direction or control over Babar,

-1-

1    which is required to impose vicarious liability under UAE law for Babar's acts.

2          Third, all of Plaintiff's claims fail under Maryland law because she does not (and cannot)

3    plead facts to satisfy the legal elements as prescribed by Maryland courts.  Her common-law

4    negligence claim cannot survive because Plaintiff cannot plead facts to show that either UTI or

5    Rasier—who have no relationship with Babar—were in a "special relationship" giving rise to a

6    duty of care.  Nor does she allege that Babar's independently tortious acts were foreseeable to UTI

7    or Rasier.  Plaintiff's negligent hiring, retention, and supervision claims fail because she cannot

8    allege any relationship between UTI or Rasier and Babar, and fails to plead any facts in support of

9    the required element of proximate cause.  Her product liability claims must be dismissed because,

10   among other reasons, the Uber App is not a "product," which is a threshold issue before bringing

11   a product liability claim.  Plaintiff's fraud claims fail because she cannot satisfy the stringent

12   pleading requirements of Federal Rule of Civil Procedure 9(b), and her negligent misrepresentation

13   claims are similarly deficient because she identifies no particular statements on which she

14   reasonably relied to her detriment.  Plaintiff's NIED claim is legally foreclosed because Maryland

15   does not recognize such a cause of action.  Plaintiff's breach of contract claims fail because she

16   does not allege any specific contract between herself and UTI or Rasier, nor does she identify any

17   terms of that contract that were allegedly breached. And, finally, Plaintiff's vicarious liability

18   theories fail because, as dozens of courts have held nationwide, UTI and Rasier are not vicariously

19   liable as a matter of law for the independent criminal acts of a driver, because such acts fall outside

20   the scope of any agency or employment relationship.

21                                **FACTUAL BACKGROUND**

22       A.    **Plaintiff travels to UAE, where she was allegedly assaulted by an individual
                with no relationship with Uber or Rasier.**

23

24         Plaintiff is a resident of Baltimore, Maryland.  Compl. ¶ 11.  Plaintiff alleges she was

25   traveling in Dubai in May 2023.  *See id.* ¶ 62.  Plaintiff alleges that, on May 4, 2023, she used the

26   Uber App to request transportation services from the Dubai Marina to her hotel.  *Id.*  She was

27   picked up by a driver named Ali Babar.  *Id.* ¶ 64.  Babar allegedly locked the doors of his car,

28   drove Plaintiff an hour away from her hotel, and assaulted her in a parking lot.  *Id.* ¶ 66.  Plaintiff

alleges that she "was asking him what was going on," but does not allege that she used any of the emergency features made available to her through the Uber App during the hour drive. *Id.* Following the assault, Babar allegedly drove Plaintiff back to her hotel, and demanded that Plaintiff "give him a 5-star review." *Id.* ¶¶ 66–71.  Plaintiff alleges she returned to her hotel room, and informed her "closest friend" of what had occurred. *Id.* ¶ 72.

### B.   Babar is a foreign independent driver with no relationship with Uber.

Babar is a Pakistani national who lives in the United Arab Emirates.  *See* Declaration of Alejandra O'Connor ¶ 19.  In order to access the Uber App to connect with riders in the UAE, Babar was required to enter into a UAE Driver Agreement. *Id.* ¶ 18.  But that agreement did not involve UTI or Rasier; instead, the agreement was between Babar and Uber B.V., a private limited company based in the Netherlands. *See id.* ¶¶ 15–18. Uber B.V. is a separate entity from UTI and Rasier, both of which are based in and incorporated in the United States. *Id.* ¶ 16.

### C.   Plaintiff sues UTI and Rasier, but does not sue Babar.

On September 22, 2023, Plaintiff filed this lawsuit against UTI and Rasier—she has not sued Babar or Uber B.V. *See* Complaint.  She brings nine claims: (1) negligence, *id.* ¶¶ 101–14; (2) negligent hiring, retention, and supervision, *id.* ¶¶ 115–27; (3) negligent failure to warn, *id.* ¶¶ 128–39;  (4)  intentional  misrepresentation—fraud,  *id.*  ¶¶  140–52;  (5)  negligent misrepresentation, *id.* ¶¶ 153–63; (6) negligent infliction of emotional distress, *id.* ¶¶ 164–171; (7) breach of contract, *id.* ¶¶ 172–75; (8) breach of warranty (design defect), *id.* ¶¶ 176–83; and (9) breach of warranty, failure to warn, *id.* ¶¶ 184–92.  She also alleges vicarious liability for Babar's torts, *id.* ¶¶ 193–209, and vicarious liability for sexual battery, *id.* ¶¶ 210–14.  Plaintiff is seeking punitive damages for all of her claims except her breach of contract claim.  *See id.* ¶¶ 101–92.

Plaintiff does not cite any statutes for her claims—all are common-law claims. *See id.* And although the alleged incident occurred in Dubai, Plaintiff does assert any claims under the UAE's civil law regime, and solely invokes Maryland common law. *Id.*

### LEGAL STANDARD

"The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of Plaintiff's Complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th

Cir.1999). The dismissal for failure to state a claim upon which relief may be granted does not require Defendant to establish 'beyond doubt' that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–62 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 562. The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979)."  *Roberts v. Pruitt*, No. CIV.A. GLR-13-3604, 2014 WL 4182215, at *1 (D. Md. Aug. 20, 2014), aff'd, 591 F. App'x 201 (4th Cir. 2015).

## ARGUMENT

The Court should grant this Motion to Dismiss.  UAE law applies to Plaintiff's tort claims because Dubai was the site of Plaintiff's injury.  But Plaintiff's common-law tort claims are not recognized in the United Arab Emirates (a civil law jurisdiction), and therefore cannot be brought as a matter of law, nor can her claims for punitive damages (which are not recognized in the UAE). And even if Plaintiff's claims were interpreted as claims under the UAE Civil Code, they still fail as a matter of law because Plaintiff cannot allege that UTI or Rasier controlled Babar's actions. Furthermore, even if Maryland common law applies, all of Plaintiff's claims fail because she does not (and cannot) plead facts to satisfy the various legal elements required under Maryland law.

### A.  <u>UAE law applies to Plaintiff's tort claims, and the UAE does not recognize common-law causes of action.</u>

Plaintiff alleges six different tort claims against Uber, and additionally seeks to hold UTI or Rasier vicariously liable for Babar's torts.  But these claims must be dismissed, as they are governed by UAE law, which is a civil law system.

#### 1.  <u>UAE law applies to Plaintiff's tort claims.</u>

A federal court applies the choice of law rules of the forum state in which it sits—here, Maryland.  *See Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718, 728 (D. Md. 2018).  For tort

-4-

1    claims, Maryland has adopted the *lex loci delicti* approach from the Restatement (First) of Conflict

2    of Laws.  *Lab'y Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006).  "Under that approach,

3    where the events giving rise to a tort action occur in more than one State, [the Court] appl[ies] the

4    law of the State where the injury—the last event required to constitute the tort—occurred."  *Id.*

5    Here, the analysis is straightforward: Plaintiff alleges she suffered an injury in the United Arab

6    Emirates and, consequently, UAE law applies to her tort claims.  Nowhere in Plaintiff's Complaint

7    does she allege any connection with Maryland, other than the fact that she is a resident of

8    Baltimore.

9        Plaintiff may argue, despite the *lex loci delicti* approach requiring application of UAE law,

10   that Maryland public policy leans in favor of applying Maryland law.  That is incorrect.  Public

11   policy does not control in "merely a situation in which Maryland law is different from the law of

12   another jurisdiction."  *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988).  Indeed,

13   "public policy is not a term to be bandied about lightly in every conflict of laws case" and the

14   Court must be "well convinced of the weight of a supposed policy before advancing it against

15   bedrock legal principles."  *Jacobs v. Adams*, 505 A.2d 930, 937 (Md. 1986).  It follows that

16   Maryland courts have "made it clear that for the argument of 'public policy' to succeed the alleged

17   public policy must be a very strong one."  *Id.*

18       The simple fact that a particular cause of action is available in Maryland, but is not

19   available in another forum, is *not* a public policy consideration that requires application of

20   Maryland law.  For example, in *Hartford Mutual Insurance Co. v. Bruchey*, the Maryland Court

21   of Appeals rejected the application of Maryland law in a loss of consortium case, even though

22   Maryland law permitted recovery for loss of consortium while the other jurisdiction (Virginia) did

23   not.  238 A.2d 115, 117 (Md. 1968).  In so doing, the court held that the mere lack of the particular

24   remedy in Virginia did not mandate the application of Maryland law, and the movant failed to

25   identify any overriding public policy considerations.  *Id.* at 119.

26       Similarly, in *Jacobs*, the court rejected application of Maryland law for an injury that

27   occurred in the District of Columbia. *Jacobs*, 505 A.2d at 937.  The plaintiff resisted application

28   of the District of Columbia's automobile negligence no-fault liability scheme, arguing that it was

-5-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF K.P.'S COMPLAINT                                              Case No. 3:23-md-03084-CRB

inconsistent with Maryland's supposed public policy that "permit[s] an injured party to pursue any remedy available at law." *Id.*  The court roundly rejected this argument: it noted that the District of Columbia had chosen to "close the doors of its courts" to such negligence cases, and that "[i]f Maryland were to entertain these suits, our courts might well become small claims courts for the District of Columbia, flooded with suits barred by the laws of that neighboring jurisdiction. If there is any strong public policy in these cases, it is to avoid such a result." *Id.* at 938.

Critically, the burden does not rest with UTI or Rasier to show that UAE law applies. Instead, the burden is on Plaintiff to show why Maryland law overrides the default application of UAE law under the *lex loci delicti* approach. *Cunningham v. Feinberg*, 107 A.3d 1194, 1211–12 (Md. 2015).  And "the requirement of showing that the public policy is sufficiently strong has been described as a heavy burden on the party that urges rejection of the application of the otherwise applicable foreign law." *Id.* (cleaned up).  Plaintiff cannot meet that burden here.  Moreover, as discussed *infra*, this is not a scenario where Plaintiff has no redress under UAE law.  The UAE Civil Code provides remedies for tort (though, as discussed *infra*, Plaintiff does not allege facts to overcome the gatekeeping function of Rule 12(b)(6)).  In short, there are no public policy considerations at play, and UAE law controls for any remedy Plaintiff seeks in tort.

### 2.   The UAE does not recognize common-law torts or punitive damages.

Plaintiff's Complaint pleads six tort claims, as well as vicarious liability, and seeks punitive damages against UTI and Rasier.  All of Plaintiff's claims are common-law claims—she cites no Maryland state statutes, regulations, or other codification.  And critically, although UAE law applies, Plaintiff does not cite to any of the UAE's Civil Code that governs tort claims.

Plaintiff is legally foreclosed from pursuing her common-law claims under UAE law.  The UAE is not a common law jurisdiction: it is a civil law regime that has adopted the UAE Civil Code (available at https://elaws.moj.gov.ae/English.aspx?val=UAE-KaitEL1).  Chapter 3 of the UAE Civil Code covers "Torts" and contains the various articles under which Plaintiff could allege cause of actions against tortfeasors.  Plaintiff has not invoked any of those articles here, nor has she made any attempt to explain how her distinctly American common-law claims fall within the scope of a foreign country's civil law scheme.  Plaintiff's attempts to force a square peg into a

-6-

1    round hole are inappropriate.  This Court is bound to apply UAE law, which does not recognize

2    common-law tort claims.  Plaintiff's claims should be dismissed.

3          Plaintiff's claims for punitive damages should be dismissed for similar reasons.  The UAE

4    does not recognize punitive damages.  Article 292 of the UAE Civil Code allows only for

5    compensatory damages based on "prejudice sustained" and "lost profit[s]," provided that each is

6    "a natural consequence of the prejudicial act."  And Article 293 recognizes "moral" damages that

7    pertain to "trespassing against others in their freedom, honor, dignity, reputation, social standing

8    or financial position."  But the Civil Code does not recognize recovery for punitive damages.  So

9    Plaintiff's claims for punitive damages are legally foreclosed under UAE law and, consequently,

10   cannot survive the gatekeeping threshold of Rule 12(b)(6).  The Court should dismiss all of

11   Plaintiff's punitive damages claims.

12          **B.    Even if the Court were to read Plaintiff's common-law claims as claims
             under the UAE Civil Code, those claims must be dismissed.**

13

14          Plaintiff brings six tort claims against Uber: (1) negligence, Compl. ¶¶ 101–14;

15   (2) negligent hiring, retention, and supervision, *id.* ¶¶ 115–27; (3) negligent failure to warn, *id.*

16   ¶¶ 128–39;  (4)  intentional  misrepresentation—fraud,  *id.*  ¶¶  140–52;  (5)  negligent

17   misrepresentation, *id.* ¶¶ 153–63; and (6) negligent infliction of emotional distress, *id.* ¶¶ 164–71.

18   She also alleges vicarious liability for Babar's torts, *id.* ¶¶ 193–209, and vicarious liability for

19   sexual battery, *id.* ¶¶ 210–14.

20          Although she attempts to cast these claims as different causes of action, they are all

21   inextricably intertwined with the alleged sexual assault committed by Babar.  Put another way,

22   Plaintiff could not bring any lawsuit in the first place were it not for Babar's actions.  The injury-

23   causing  conduct  in  this  case  is  the  assault  allegedly  committed  by  Babar.    Any

24   "misrepresentations," "fraud," or "failure to warn" relate to the allegation that Plaintiff was not

25   made aware she could have been sexually assaulted by Babar.  And Plaintiff's negligence,

26   negligent hiring, emotional distress, and vicarious liability theories all turn on UTI or Rasier's

27   alleged relationship with, or control over, Babar.

28

-7-

1    But the default rule under the UAE Civil Code is that third parties, like the defendants here,

2    are not responsible for the intentional acts of others, like Babar.  Article 313(1) of the Civil Code

3    establishes the baseline that "[n]o one is liable for the act of another person."[1]   There are two

4    limited exceptions to this rule, neither of which apply here.  The first exception is where the

5    tortfeasor is a person subject to supervision by the third party due to the tortfeasor's minority, or

6    mental or physical condition.  UAE Civil Code, art. 313(1)(a).  Those facts are not present, or

7    alleged, here.  The second exception is where the third party has actual control over the tortfeasor,

8    and that the tortfeasor was in a "subordinate" role and committed the tort "in the exercise of his

9    duty."  UAE Civil Code, art. 313(1)(b).  But this second exception also does not apply.

10    The entities named as defendants in this lawsuit are United States-based entities that are

11    incorporated in Delaware, with their principal place of business in California.  O'Connor Decl.

12    ¶ 16.  As a matter of common sense, therefore, Plaintiff does not (and cannot) allege that these

13    entities have any level of supervision or control over any individual drivers in a foreign country

14    like the UAE (especially where, as here, the party to Babar's Driver Agreement was Uber B.V., a

15    foreign entity).  Plaintiff's Complaint offers nothing more than conclusory allegations (devoid of

16    any specific factual support) about how Babar was subject to UTI or Rasier's "direction and

17    control."  *E.g.* Compl. ¶ 75.  But Plaintiff pleads no facts to allege *how* this is so.

18    Put another way, Plaintiff could not simply allege that "black is white" or "white is black"

19    and hope to survive Rule 12 dismissal.  As this Court has noted, it is not required to accept

20    unsupported legal allegations, nor should it give weight to "legal conclusions couched as factual

21    allegations," or "conclusory factual allegations devoid of any reference to actual events."  *Roberts*,

22    2014 WL 4182215, at *1.  And it should not do so here.  Plaintiff offers no factual allegations to

23    show how UTI or Rasier's actions fit within the narrow exception to UAE Civil Code Article

24    313(1)(b) that would impose liability upon Uber for any UAE tort claim stemming from Babar's

25    acts.  She does not allege any facts as to how UTI or Rasier had actual control, or supervised or

26    directed Babar on the date of the incident.  UAE Civil Code Article 313(1)(b).  She does not allege

---

27    [1] *See also* UAE Civil Code, art. 289(1) (noting that an "act is the responsibility of the doer and not
28    of the one who ordered it, unless the doer was compelled to act. Compulsion that is taken into
      consideration must amount to imminent duress.").

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF K.P.'S COMPLAINT                                    Case No. 3:23-md-03084-CRB

that Babar was in a "subordinate" role to anyone at UTI or Rasier.  Id.  And, critically, she does not (and cannot) allege that Babar's sexual assault was committed "in the exercise of his duty." *Id.*  Plaintiff cannot state a claim against UTI or Rasier under UAE Civil Code Article 313(1)(b) and, therefore, cannot hold either entity liable for Babar's actions as a matter of law.

**C.       Even if this Court applies Maryland law, Plaintiff's claims must be dismissed.**

Plaintiff brings six tort claims, three contract claims, and two vicarious liability claims. Even if the Court applies Maryland law to these claims, they should be dismissed for the reasons set forth below.

**1.       Count 1—Negligence**

Plaintiff's negligence claim should be dismissed because: (1) she fails to plead facts to show that UTI or Rasier owed her a duty of care; and (2) she fails to plead facts to show that the attack by Babar was foreseeable.  Both elements are required under Maryland law in order to hold Uber responsible for the acts of a third party like Babar, but neither element is satisfied by Plaintiff.

The default rule in Maryland is that there is no duty to protect another from the criminal acts of a third person, in the absence of either a statute or a special relationship.  *E.g.*, *Scott v. Watson*, 359 A.2d 548, 552 (Md. 1976).  And, even if a special relationship is established, under Maryland law, there is no duty to protect against criminal acts that are unforeseeable.  *See McGuiness v. Brink's Inc.*, 60 F. Supp. 2d 496, 499 (D. Md. 1999) (granting motion to dismiss).

> *(a)       Plaintiff cannot allege that UTI or Rasier are common carriers under these facts.*

Plaintiff cannot plead facts showing that she was in a special relationship with UTI or Rasier at the time of the accident, because neither entity has any relationship with Babar, who lives in the UAE, where the incident occurred.  Maryland has adopted Section 314A of the Restatement (Second) of Torts, which encapsulates four types of special relationships: (1) common carrier to passenger; (2) innkeeper to guest; (3) landowner to invitee; and (4) individuals required by law to take custody of another.  *See* RESTATEMENT (SECOND) OF TORTS § 314A; *Corinaldi v. Columbia Courtyard, Inc.*, 873 A.2d 483, 490 (Md. 2005).

Of those four, only common carrier bears any remote resemblance to the claims here, but

-9-

1    Plaintiff nevertheless cannot plead facts to show that UTI or Rasier is a common carrier in this

2    situation.  This is so for two reasons.

3        First, even assuming *arguendo* that UTI or Rasier are common carriers under Maryland

4    law, the incident in question occurred in Dubai, not Maryland.  The Maryland code section

5    pertaining to Public Utilities defines a "transportation network company" as a company "that

6    operates in the State."  MD. CODE, PUB. UTIL. § 10-101(l).  And the Maryland Public Utilities

7    Commission itself only has jurisdiction over entities that engage in business in Maryland.  Md.

8    Code, Pub. Util. § 2-112.  Thus, whether Maryland considers UTI or Rasier to be a common carrier

9    in the state of Maryland has no bearing on whether either of those entities is a common carrier in

10   Dubai.[2]  And Plaintiff has pleaded no facts, nor cited any law, to establish whether either entity is

11   a common carrier overseas.

12       Second, and relatedly, the entity that operates in the UAE is Uber B.V., a private limited

13   company that is based in the Netherlands.  Declaration of Alejandra O'Connor ¶¶ 15–18.  When

14   Plaintiff traveled to Dubai and used the Uber App, she agreed that she was subject to the UAE

15   Terms of Use, which named Uber B.V. as the appropriate entity—not UTI or Rasier.  *Id.*  And it

16   is Uber B.V. that is a party to the UAE Driver Agreement that was signed by Babar.  *Id.*  But

17   Plaintiff has not named Uber B.V. as a defendant, she has not referenced Uber B.V. in her

18   Complaint, and she does not plead anywhere that Uber B.V. is a common carrier.  Nor does she

19   plead any facts whatsoever to establish how Uber B.V.'s operations in the UAE can impute

20   common carrier liability to UTI and Rasier, two entities that are based in the United States.

21       Consequently, Plaintiff fails to plead the threshold requirement that UTI or Rasier were in

22   a special relationship with Plaintiff that gave rise to a duty of care.  Because she cannot do so, her

23   negligence claim must be dismissed.

24                    (b)    *Even assuming a duty exists, Plaintiff fails to allege that Babar's*
                            *crime was foreseeable.*
25

26       To survive a motion to dismiss her negligence claim, Plaintiff must do more than plead the

27   _____

28   [2] And, even if Maryland considers UTI or Rasier to be "common carriers," they are the only state
     in the country to arguably have adopted this outlier position.

-10-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF K.P.'S COMPLAINT                                    Case No. 3:23-md-03084-CRB

existence of a duty—she must also plead facts to show that Babar's criminal attack on her was foreseeable by these defendants.  She has not done so.

"A carrier is not an insurer of the absolute safety of his passengers, yet he is bound to use reasonable care according to the nature of his contract."  *Tall v. Balt. Steam-Packet Co.*, 44 A. 1007, 1008 (Md. 1899).  This common-sense principle is reflected in Comment *e.* to Section 314A, which states, in relevant part: "The duty in each case is only one to exercise reasonable care under the circumstances. The defendant is not liable where he neither knows nor should know of the unreasonable risk, or of the illness or injury. He is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate, or to give aid to one whom he has no reason to know to be ill."  RESTATEMENT (SECOND) OF TORTS § 314A cmt. *e.*   It follows, therefore, that foreseeability is a necessary element that Plaintiff must plead.

*McGuiness* is instructive.  There, a plaintiff sued Brink's security after he was shot by a firearm owned by Brink's and issued to a Brink's employee.  60 F. Supp. 2d at 497.  The tortfeasor who shot the plaintiff acquired the firearm from the Brink's employee, who lent the gun to the tortfeasor illegally.  *Id.*  Plaintiff sued Brink's, seeking to hold Brink's liable for the third-party shooting, and Brink's moved to dismiss pursuant to Rule 12(b)(6).  *Id.*  In dismissing the plaintiff's negligence claim, this Court held that, even assuming the existence of a duty, the unforeseeable acts of the employee loaning the weapon to the tortfeasor, and his use of the weapon to commit a crime, superseded any liability on behalf of Brink's.  *Id.* at 499; *see also Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 642 A.2d 219, 232 (Md. 1994) (declining to impose liability where third-party tortfeasor's criminal acts were unforeseeable and, accordingly, broke the causal chain); *Jackson v. A.M.F. Bowling Ctrs., Inc.*, 128 F. Supp. 2d 307, 314 (D. Md. 2001) (declining to impose liability under Maryland law where criminal incident that occurred was unforeseeable and "spontaneous").

Plaintiff does not plead any specific facts to show that Babar's alleged attack on Plaintiff was foreseeable.  Much of her Complaint focuses on allegations related to UTI's prior CEO, who departed the company in 2017—six years before Plaintiff's incident—or UTI or Rasier's United States-based operations.  But, again, this incident did not occur in the United States, it occurred in

-11-

Dubai.  Plaintiff makes no factual allegations about UTI or Rasier's operations in Dubai, whether there have been any prior sexual assaults in Dubai involving the Uber platform, or whether Babar himself has ever been accused of any other sexual assaults.  She similarly makes no allegations that Babar's sexual assault of Plaintiff was foreseeable in any way.

Recently, this Court granted dismissal in UTI's favor on a similarly-pleaded complaint, only with a United States incident.  *See Tchakounte v. Uber Techs., Inc.*, No. CV CCB-20-3028, 2022 WL 326727, at *7 (D. Md. Feb. 3, 2022).  In *Tchakounte*, the plaintiff sued UTI following the death of an independent driver.  *Id.* at *1–2.  Like here, the plaintiff alleged UTI was negligent due to failure to perform proper background checks and screenings and that UTI's United States Safety Report illustrated that UTI was aware of the issue of assault on its platform.  *Id.* at *7.

In granting UTI's motion to dismiss pursuant to Rule 12(b)(6), this Court rejected both sets of allegations as unconvincing.  *Id*.  It rejected Plaintiff's use of UTI's Safety Report data, citing that the rate of fatal assaults on the Uber platform (.00093%) was too remote to establish foreseeability.  *Id*.  But the Safety Report allegations in Plaintiff's Complaint show that the rate of sexual assault is even lower: for 2017–2018 it was .00002%, and for 2019–2020 it was .000002%.  *See* Compl. at 12 nn. 39, 41. Both of these numbers are lower than the assault rate cited by this Court in *Tchakounte*, which this Court held did not support an allegation of foreseeability as a matter of law.  *Tchakounte,* 2022 WL 326727, at *7.  So those numbers certainly cannot survive a motion to dismiss here (especially where the numbers cited by Plaintiff only pertain to United States sexual assault data, and Plaintiff presents no allegations regarding the rate of sexual assault on the Uber platform in the UAE).

Furthermore, in *Tchakounte*, the plaintiff alleged that the third-party tortfeasor had a criminal history (including a 21-year-old robbery conviction) that UTI allegedly failed to screen and properly vet.  *Id.* at *8.  But this Court also rejected that as evidence of foreseeability of the tortfeasor's unprompted, criminal attack on the decedent.  *Id.*  And this type of allegation is far more specific than the vague claims Plaintiff makes regarding a failure to screen in this case.  As discussed, Plaintiff identifies no prior misconduct by Babar, and does not allege any specific facts that could have put UTI or Rasier on notice of the fact that he intended to assault Plaintiff.  If a

-12-

1   specific allegation of prior crimes in misconduct was not sufficient to establish foreseeability, it

2   follows that vague, conclusory allegations of the type in Plaintiff's Complaint must also be

3   insufficient.[3]

4       In sum, Plaintiff does not meet her burden to allege facts that allow her negligence claim

5   to survive the pleading stage, and her claim must be dismissed.

6                    2.    Count 2—Negligent hiring, retention, and supervision

7       To survive a motion to dismiss on her negligent hiring claim, Plaintiff must allege facts to

8   support five elements: "(1) the existence of an employment relationship; (2) the employee's

9   incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the

10  employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in

11  hiring, supervising or retaining the employee as the proximate cause of plaintiff's injuries."

12  *Mitchell v. Rite Aid of Md., Inc.*, 290 A.3d 1125, 1160, cert. denied, 483 Md. 579, 296 A.3d 419

13  (Md. Ct. App. 2023).  But Plaintiff cannot allege an employment relationship between UTI or

14  Rasier and Babar, nor can she allege that Uber was aware or any incompetence on behalf of Babar.

15  And, crucially, she cannot allege that Uber's conduct was the proximate cause of her injuries.

16      At the outset, UTI again notes that neither UTI nor Raiser entered into any agreement with

17  Babar and, consequently, could not have formed any sort of employment relationship.[4]  And the

18  _____

19  [3] Numerous other courts around the country have similarly refused to impose a duty upon Uber or
20  Lyft for third-party criminal acts.  *See Mendoza v. Uber Techs, Inc.,* Case FCS057560, Superior
    Court of California, Solano County (Nov. 9, 2022) (sustaining Uber's demurrer finding "Plaintiff
21  has failed to allege facts establishing misfeasance by Defendant Uber or a special relationship or
    other circumstance that would have created a duty for Defendant Uber to protect Plaintiff from
    Defendant Doe from which Defendant Uber could be held liable for nonfeasance." and again
22  sustaining Uber's demurrer after Plaintiff replead his allegations); *Jane Doe v. Uber Techs., Inc.,*
    Case No. 19-cv-03310-JSC (N.D. Cal. Sept. 15, 2022)(holding Uber had no duty to protect against
23  third-party criminal conduct and there was no special relationship between Uber and Plaintiff);
    *Jane Doe No. 1 v. Uber Techs, Inc.*, 79 Cal. App. 5th 410, 294 Cal. Rptr. 3d 664 (June 1, 2022)
24  (affirming Uber's demurrer and holding that Uber did not owe a duty of care to warn passengers
    against criminal acts of third-parties who were posing as authorized drivers); *Ameer v. Morgan et
25  al.*, Case No. 222-CC00417, Circuit Court for the City of St. Louis (holding that Lyft did not owe
    a duty of care to a driver to protect him from the criminal acts of third parties); *Estate of Tchakounte
26  v. Uber Techs., Inc.* (D. Md. Feb 3, 2022) 2022 WL 326727 (holding Uber did not owe a duty of
    care to a driver to protect him from the criminal acts of third parties); *Estate of Ceesay v. Uber
27  Techs., Inc.* (D. Wa. Sept. 27, 2022) 2:21-cv-202-BJR (holding same).
    [4] And Uber does not concede that Babar, an independent contractor, ever entered into any sort of
28  employment relationship with UTI, Rasier, or Uber B.V.

-13-

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF K.P.'S COMPLAINT                          Case No. 3:23-md-03084-CRB

1    entity that is a party to the UAE Driver Agreement, Uber B.V., is not a party to this action.  So as

2    a matter of common sense, Plaintiff cannot plead the existence of an employment relationship

3    between Babar, a Pakistani national, living and working in the UAE, and UTI and Rasier, two

4    domestic companies who have no relationship whatsoever, or interacted with, Babar.

5         Plaintiff alternatively alleges, without any supporting facts, that Babar was the defendants'

6    "agent."  Compl. ¶ 77.  But this is not enough to bring a negligent hiring, retention, or supervision

7    claim.  "Apparent agency can only exist in the absence of actual authority, and therefore cannot

8    form the basis for a claim for negligent hiring, supervision, or retention which requires the

9    existence of an employment relationship."  *Doe v. Uber Techs., Inc.*, No. CV JKB-20-0370, 2021

10   WL 2382837, at *3 (D. Md. June 9, 2021).  Thus, in *Doe*, the Court granted UTI's motion to

11   dismiss where the driver in question (who was also alleged to have committed assault) was not

12   driving on the Uber platform at the time of the alleged incident.  *Id.* at *3–4.

13        Thus, in the absence of an actual employer-employee relationship, the driver was (at most)

14   an apparent agent of UTI, but such alleged agency could not support a negligent hiring claim as a

15   matter of law.  *Id.*  So too here.  There exists no relationship whatsoever, let alone an employer-

16   employee relationship, between UTI or Rasier and Babar.  The Court should reject Plaintiff's

17   vague allegations regarding employment, which amount to little more than rote recitations of

18   causes of action and legal conclusions.

19        Furthermore, Plaintiff fails to allege specific facts to support the critical element of

20   proximate cause.  Plaintiff again relies on nothing more than recitations of legal elements without

21   any supporting facts.  For example, she alleges that Babar was "inadequately screened" by UTI or

22   Rasier.  Compl. ¶ 118.  And she baldly alleges that Babar was not "adequate[ly] supervised."  *Id.*

23   ¶ 120.  But this is not enough, and *Doe* is again instructive.  There, this Court observed that, even

24   assuming a driver was UTI or Rasier's actual agent or employee, the Plaintiff still was required to

25   plead facts establishing that UTI or Rasier's failure to screen or perform an adequate background

26   check of the driver was the proximate cause of the plaintiff's injuries.  *Id.* at *4.  But although the

27   *Doe* plaintiff alleged that a proper screening would have potentially uncovered reports of prior

28   theft committed by the driver, she did not allege that the screening would have uncovered some

-14-

link to sexual misconduct, or was otherwise connected to her sexual assault. *Id.* Thus, the *Doe* court granted UTI's motion to dismiss because Plaintiff failed to plead facts to support the critical element of proximate cause. *Id.*

This Court should reach the same conclusion. Plaintiff's Complaint does not allege *any* prior misconduct by Babar that either UTI or Rasier allegedly could have identified through a more adequate screening. She does not allege that Babar had a history of sexual assault. She alleges no statistics or information about the rate or history of sexual assaults in the UAE as they pertain to the Uber platform. In short, Plaintiff does not allege a single fact to show how a different screening of Babar would have produced a different result. And because she fails to do so, she does not establish the required element of proximate cause. The Court should dismiss Plaintiff's negligent hiring claim.

      3.    <u>Counts 3, 8, and 9—Negligent failure to warn, breach of warranty (design defect and failure to warn)</u>

Plaintiff's failure to warn claims and design defect claims are essentially a re-hashing of her negligence claim. But these claims fail for a simple reason: all three claims are rooted in product liability, but the Uber App is not a product. But even if it were, Plaintiff's claims fail because she has not alleged any facts to support her failure to warn and defect theories, and she has disclaimed all of her warranty claims.

      *(a)*    *The Uber App is not a "product."*

For a general product liability case, "the plaintiff must satisfy three basics from an evidentiary standpoint: (1) the existence of a defect; (2) the attribution of the defect to the seller; and (3) a causal relation between the defect and the injury." *Jones v. Reichert Jung, Inc.*, 211 F. Supp. 2d 661, 666 (D. Md. 2002). Failure to warn claims are only appropriate for injuries caused by products that are inherently dangerous, and therefore required some sort of warning to the end user. *E.g., Moran v. Faberge, Inc.*, 332 A.2d 11, 15 (Md. 1975). Maryland's legislature has defined a "product" as a "tangible article, including attachments, accessories, and component parts, and accompanying labels, warnings, instructions, and packaging." MD. CODE ANN., CTS. & JUD. PROC. § 5-115 (emphasis added). It almost need not be said that software, like the Uber App, is

not tangible.  Likewise, the Third Restatement of Torts defines a "product" as "tangible personal property distributed commercially for use or consumption." RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 19 (West Grp., June 2020 Update) (emphasis added). It does not define a "product" to include phone applications or even software as products. Recognizing that most software is designed to itself provide a service, at least one commentator has suggested that "the proper answer holds that most software does not fall within the purview of product liability law under this definition." RAYMOND T. NIMMER, LAW OF COMPUTER TECH. § 12:41 (West, Jan. 2020 Update).

No Maryland court has yet considered whether the Uber App is a product, but numerous other courts across the country have flatly rejected such an argument. *See, e.g.*, *In re Uber Rideshare Cases*, Case No. CJC-21-005188 (June 22, 2023).[5]  This Court should reach the same

[5] *See also Ramos v. Uber Techs., Inc. et al.*, Case No. 22STCV33007 (June 1, 2023) (Los Angeles Superior Court sustained Uber's demurrer as to Plaintiff's strict products liability claim without leave to amend, finding the primary function of the Uber application is to facilitate a service); *Luna, Avelardo v. UTI, et al.*, Case No. 22STCV10806 (Sept. 27, 2022) (Los Angeles County court sustained Uber's demurrer as to Plaintiff's strict products liability claim without leave to amend, finding the Uber application was not a product as a matter of law); *Norman v. Uber Technologies, Inc., et al.*, Los Angeles County Superior Court No. 21STCV35632 (March 8, 2022) (Court sustained Uber's Demurrer without leave to amend as to Plaintiff's three (3) separate causes of action for strict products liability finding, "Uber's dominant role in the subject accident was as a provider of a service rather than as a distributor of a product."); *Flores v. Uber Techs., Inc., et al.*, Case No. 19STCV24988 (March 22, 2022) (Los Angeles County, California Superior Court granted Uber's demurrer without leave to amend finding that as a matter of law the Driver App is not a "product" for purposes of a cause of action for strict products liability but is rather a service, *i.e.* matching drivers with customers who require transportation services); *Shannon v. Uber Techs., Inc., et al.*, Los Angeles County Superior Court Case No. 21STCV42029 (April 15, 2022) (Court granted Uber's demurrer without leave to amend finding as a matter of law the App is not a "product" but rather is a service and"[...] the service aspect of the parties' transaction predominates, and the use of the Uber App [...] was merely incidental to the provision of Defendants' service."); *Toral v. Uber Techs., Inc., et al.*, Los Angeles County Superior Court Case No. 20STCV02030 (April 14, 2021) (Court granted Uber's demurrer without leave to amend, dismissing Plaintiff's product liability/negligent design cause of action holding "[o]ffering services, however, is not a product."); *Cruz Lopez v. Uber Techs., Inc.*, Santa Clara County Superior Court Case No. 21CV376012 (Nov. 23, 2021) (Court granted Uber's demurrer dismissing Plaintiff's holding "the primary objective of the Uber App is to facilitate and provide a service" and accordingly, the Uber App is merely a service rather than a product.") *Polanco v. LYFT, Inc., et al.*, Orange County Superior Court Case No. 30-2019-01065850-CU-PA-CJC (May 13, 2021) (Uber's demurrer granted with Court finding "the Uber App does App is not a 'tangible good' or 'physical object' . . . and the predominant purpose of the Uber App is the service of matching drivers with passengers); *Jane Doe v. Uber Techs, Inc., et al.*, Los Angeles Co., CA Sup. Ct. Case No. 19STCV11874( Nov. 30, 2020) (Granted Uber's demurrer without leave to amend ruling the "Uber App is not a product" and "[t]here is no legislation or case law to support plaintiffs' position [that the Uber App is a product].");  *A.T. v. Lyft, Inc., et al.*, No. 2019-CV-1759 (Ct. of Common Pleas Lackawanna Co., Penn. (Dec. 29. 2022) (noting "the Lyft app is 'an application, software, website or system' as a matter of Pennsylvania law -- not a product"); *Baumgartaner v. Uber Techs., Inc., et al.,* Case No. 21-2-15753-6 (Sup. Ct. King Co., WA Mar. 9, 2022) (Washington

-16-

1    conclusion and, as a federal court sitting in diversity, should not recognize a new category of

2    liability where one does not presently exist.

3         Although she attempts to pursue product liability claims, a reading of Plaintiff's Complaint

4    makes clear that she characterizes UTI as a transportation services provider, and not a

5    manufacturer of physical "products."  For example, Plaintiff alleges that "Uber has widely offered

6    its services to the general public and charges standard fees for its services through its application"

7    and that "Any member of the public can use Uber's services for transportation."  Compl. ¶ 80.

8    Elsewhere, she refers to UTI as providing transportation "services" no fewer than 16 times.  *See*

9    *id.* ¶¶ 84, 85, 87, 88, 92, 93, 123, 131, 145, 147, 155, 156, 196 and 203.  A "service" is not a

10   "*tangible* article, including attachments, accessories, and component parts, and accompanying

11   labels, warnings, instructions, and packaging."  MD. CODE ANN., CTS. & JUD. PROC. § 5-115

12   (emphasis added); *see also e.g. Toral v. Uber Techs., Inc., et al.*, Los Angeles County Superior

13   Court Case No. 20STCV02030 (April 14, 2021) (dismissing product liability claims and noting

14   "[o]ffering services, however, is not a product.").

15        Because software is generally not considered a product and the Uber App is intended for

16   use only in facilitating the provision of services, the Uber App is not a product.  Plaintiff's product

17   liability claims fail for this threshold reason alone.

18                    *(b)      Plaintiff fails to plead facts to support her product liability claims.*

19        In addition to the fact that the Uber App is not a product, Plaintiff's failure to warn claim

20   fails for two separate reasons.  First, Plaintiff (for the same reasons discussed *supra*) fails to plead

21   facts showing a duty to protect Plaintiff from the unforeseeable acts of Babar.  Second, under

22   Maryland law, a failure to warn claim is predicated upon a particular product defect, but Plaintiff

23   does not allege there was any defect or inherent danger with the Uber App, nor could she (she

24   merely alleges that UTI or Rasier failed to share information).  Such allegations cannot support a

25

26   Court granted Uber's Motion to Dismiss Plaintiff's product liability claim).;  *See also Ameer v. Morgan et al* Case No. 222-CC00417 Circuit Court for the City of St. Louis (holding the Lyft App is not a tangible product and is instead a service, not subject to products liability theory); *DeRose*

27   *v. DoorDash, Inc.*, et al Case NO. 5:22-CV-413-D (E.D. North Carolina June 1, 2023) (Court held the DoorDash App was not inherently dangerous, rejecting Plaintiff's argument that the company's

28   business model could foreseeable cause accidents.).

DEFENDANTS' MOTION TO DISMISS
PLAINTIFF K.P.'S COMPLAINT                                        Case No. 3:23-md-03084-CRB

1    failure to warn claim.

2          In Maryland, a failure to warn claim requires factual allegations to support the following

3    elements: "(1) that the defendant owed a duty to warn; (2) that the defendant breached that duty;

4    (3) that there was a direct causal connection between the defendant's failure and the alleged

5    injuries; and (4) that the plaintiff was harmed." *Higgins v. Diversey Corp.*, 998 F. Supp. 598, 604

6    (D. Md. 1997).  And a duty to warn only applies where a defendant knows, or has reason to know,

7    that the product or chattel "is or is likely to be dangerous for the use for which it is supplied," and

8    "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous

9    condition," *and* "fails to exercise reasonable care to inform them of its dangerous condition or of

10   the facts which make it likely to be dangerous."  *Moran*, 332 A.2d at 15.

11         But Plaintiff alleges no dangerous condition that is inherent in the Uber App for its use in

12   the UAE.  She does not allege there were any prior incidents of sexual assault in the UAE.  She

13   does not allege that Babar, her alleged assailant, previously used or exploited any defect in the

14   Uber App to commit sexual assault.  The only sexual assault data Plaintiff cites is from the United

15   States, but this data actively contradicts Plaintiff's factually-unsupported allegation that UTI or

16   Rasier did not warn the public about sexual assault on the Uber platform.  Indeed, Plaintiff alleges

17   that UTI issued two public-facing safety reports that detailed the occurrence of sexual assault on

18   the Uber platform in the United States, which also discussed the measures UTI and Rasier were

19   taking to combat the issue.  *See* Compl. ¶¶ 47–50 and nn. 39 & 41.  Plaintiff cannot simultaneously

20   allege that defendants did not make any public statements about the occurrence of sexual assault

21   on the Uber platform, while also alleging that UTI publicly discussed reports of sexual assault in

22   its safety reports.  And this Court is entitled to—and should—disregard such unsupported and

23   inconsistent allegations.  *Roberts*, 2014 WL 4182215, at *1.

24                    (c)      *Plaintiff has disclaimed her warranty claims.*

25         Plaintiff's breach of warranty claims should be dismissed because Plaintiff agreed that UTI

26   and Rasier disclaimed any and all warranties when she entered into Uber's Terms of Use.  Section

27   7 of the Terms of Use state, in all capital letters:

28

                                                    -18-

1

THE SERVICES ARE PROVIDED "AS IS" AND "AS
2   AVAILABLE." UBER DISCLAIMS ALL REPRESENTATIONS
AND WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY,
3   NOT EXPRESSLY SET OUT IN THESE TERMS, INCLUDING
THE IMPLIED WARRANTIES OF MERCHANTABILITY,
4   FITNESS FOR A PARTICULAR PURPOSE AND NON-
INFRINGEMENT. IN ADDITION, UBER MAKES NO
5   REPRESENTATION, WARRANTY, OR GUARANTEE
REGARDING THE RELIABILITY, TIMELINESS, QUALITY,
6   SUITABILITY, OR AVAILABILITY OF THE SERVICES OR
ANY SERVICES OR GOODS REQUESTED THROUGH THE
7   USE OF THE SERVICES, OR THAT THE SERVICES WILL BE
UNINTERRUPTED OR ERROR-FREE.
8

9   UBER DOES NOT GUARANTEE THE QUALITY,
SUITABILITY, SAFETY OR ABILITY OF THIRD-PARTY
10  PROVIDERS. YOU AGREE THAT THE ENTIRE RISK
ARISING OUT OF YOUR USE OF THE SERVICES, AND ANY
11  SERVICE OR GOOD REQUESTED OR OBTAINED FROM
THIRD-PARTY PROVIDERS IN CONNECTION THEREWITH,
12  REMAINS SOLELY WITH YOU, TO THE MAXIMUM
EXTENT PERMITTED UNDER APPLICABLE LAW.
13

14  O'Connor Declaration ¶ 13 & Exh. C.  It is clear from the face of the Terms of Use that Plaintiff

15  disclaimed any and all warranties against UTI and Rasier as they relate to her use of the Uber App

16  and her interaction with third-party drivers like Babar, and therefore her claims are legally

17  foreclosed.

18      But Plaintiff's breach of warranty claims separately fail because they are again rooted in

19  product liability law, but the Uber App is not a product. *Jane Doe No. 1*, 294 Cal. Rptr. 3d at 671.

20  And, in any event, Plaintiff fails to allege any warranty made by Uber regarding the safety

21  functionality of the Uber App that UTI or Rasier breached.  Plaintiff's claims should be dismissed.

22              4.      Count 4—Intentional misrepresentation (fraud)

23      Plaintiff's fraud claim fails for the simple reason that Plaintiff does not allege with any

24  specificity any statement made by UTI or Rasier that was allegedly fraudulent.  An allegation of

25  fraud is subject to the heightened standard of Federal Rule of Civil Procedure 9(b), and courts do

26  not allow such claims to proceed where the allegedly fraudulent statement is vague, ambiguous,

27  or represents an opinion by the speaker.

28

-19-

A claim for "intentional misrepresentation" requires Plaintiff to plead facts to support the following five elements: "(1) that a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresentation." *Brass Metal Prod., Inc. v. E-J Enters., Inc.*, 984 A.2d 361, 386 (Md. Ct. Spec. App. 2009).

Regarding the representation in question, Maryland courts require the plaintiff to make a heightened showing of particularity. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).  Thus, a plaintiff must specifically allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* at 784 (cleaned up).  "[W]here there are multiple defendants, plaintiffs must, where the gravamen of the claim is fraud, allege all claims with particularity as to each of the defendants." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 251 (D. Md. 2000).  And, for each defendant, "the Complaint must contain facts sufficient to give rise to a plausible inference of defendants' specific intent to defraud." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 460 (D. Md. 2014), as corrected (Mar. 20, 2014).  Furthermore, a particular misrepresentation must be one of a "material fact"—it cannot be an estimate or an opinion. *E.g.*, *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 466 (D. Md. 2020).

Plaintiff does not allege a single specific statement made by UTI or Rasier to support her fraud claim, and falls well short of Rule 9(b)'s strict particularity requirement. *See* Compl. ¶¶ 140–52.  At most, she alleges that "Uber represented to Plaintiff and the general public that safety was Uber's top priority, and it was Uber's goal to make every ride safe, comfortable, and reliable" and that Uber "stat[ed] it would provide Plaintiff with a safe ride to her destination. *Id.* ¶¶ 142–43.  But Plaintiff does not identify who made these statements, when they were made, where they were made, or what the statements are.

-20-

Although, elsewhere in her Complaint, Plaintiff lists various statements allegedly pulled from Uber's website, *see* Compl. ¶¶ 86–87, she does not allege when these statements were made. Critically, Plaintiff also does not allege that she ever read any of these statements, nor does she allege that she relied on any of these specific statements in a manner that caused her injury.  Nor does Plaintiff provide any facts to show how these statements, most of which describe various safety features available in the Uber App, are false.  For example, Plaintiff's Complaint highlights the following statement: "Ride with confidence—Designing a safer ride—driver screenings—All potential drivers in the US must complete a screening before becoming an Uber driver partner, and current drivers continue to be vetted for criminal offenses." *Id.* ¶ 86.c.  But Plaintiff does not plead any facts to show why or how this statement is false.  And fatally, she also does not plead any facts to show that, *even if* she relied on the above statement, why a statement regarding UTI or Rasier's operations in the United States deceived her into taking a ride in the UAE.  Numerous courts nationwide have granted dismissal or judgment in Uber's favor for this exact reason.[6]

Plaintiff's fraud allegations are conclusory, unsupported, and fail to satisfy the high bar imposed by Maryland courts.

### 5.    Count 5—Negligent misrepresentation

Plaintiff's negligent misrepresentation claims fail for similar reasons to her fraud claims. In order to adequately plead a claim for negligent misrepresentation, Plaintiff must allege facts to support that: "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous,

---

[6] *See, e.g.*, *In re Uber Rideshare Cases* Case No. CJC-21-005188 (Sup. Ct., San Francisco Cnty., CA June 22, 2023); *Estate of Stella Yeh, et al. v. Uber Techs., Inc., et al.*, (Sup. Ct. San Francisco Cnty., CA Aug. 5, 2021); *Soo Yeon Lee v. Uber Techs., Inc., et al.*, (District Court, Denver Cnty. CO, Dec. 21, 2023); *Jorge Rodriguez v. Uber Techs., Inc., et al.,* (Circuit Court of the 9th Judicial Circuit Osceola County, FL Aug. 9, 2021); *Gregory Strand v. Uber Technologies, Inc.* (Jefferson Co., KY Cir. Ct., Nov. 29, 2022); *Baraili v. Farmers Insurance Exchange, et al.,* Case No.C-03-CV-22-000156 (Baltimore Co., MD Dist. Ct. Jan. 9, 2023); *Youel-Nathan Tchakounte Peton v. Uber Technologies, Inc.* Civil Action No. CCB-20-3028 U.S. District Court for the District of Maryland (Feb. 2, 2022); *Hoffman v. Junior Silverio-Delrosar, et al.,* U.S. District Court District of New Jersey Case No. 20-cv-1391 (Dec. 23, 2021); *Jane Doe v. Uber Techs., Inc.*, (Erie Co. Sup. Ct., NY Nov. 9, 2022); *Minzer v. Barga et al* (New York Co. Sup. Ct. NY Sept. 27, 2019); *Fusco v. Uber Techs., Inc.*, No. 17-36, 2018 WL 3618232 (E.D. Pa. July 27, 2018).

-21-

will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence." *White v. Kennedy Krieger Inst., Inc.*, 110 A.3d 724, 747 (Md. Ct. Spec. App. 2015) (quoting *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 273 (2007)).

Plaintiff again speaks in generalities, and points to no specific statements or representations by UTI or Rasier on which Plaintiff relied. *See* Compl. ¶¶ 153–163. She alleges no specific facts to show how either entity, in making statements regarding their United States operations, would have known, or intended for, Plaintiff to rely on such statements when using the Uber App outside the United States. And, as a corollary, she offers no allegations that her reliance on those statements was justified, nor that she would have taken a ride with Babar but for any alleged statement made by UTI or Rasier. *See supra* n.6.

### 6.   Count 6—Negligent infliction of emotional distress

Plaintiff's claim for negligent infliction of emotional distress should be "easily dispatched" by this Court. *Bond v. U.S. Postal Serv. Fed. Credit Union*, 164 F. Supp. 3d 740, 750 (D. Md. 2015). "Maryland does not recognize an independent tort for negligent infliction of emotional distress." *Id.* (quoting *Miller v. Bristol-Myers Squibb Co.*, 121 F. Supp. 2d 831, 839 (D. Md. 2000). The Court should dismiss Plaintiff's NIED claim.

### 7.   Count 7—Breach of contract

Plaintiff's breach of contract claim is comprised of four short paragraphs, none of which contain any factual allegations to support her claim. *See* Compl. ¶¶ 172–75. "In order for a cause of action for breach of contract to exist, a party must show contractual obligation, breach of that obligation, and damages." *Curry v. Trustmark Ins. Co.*, 600 F. App'x 877, 882 (4th Cir. 2015). Plaintiff does not do so here.

Plaintiff's Complaint does not identify, or discuss, *any* contract between Plaintiff and UTI or Rasier. She does not allege when such a contract was entered into between the parties. She does not allege with specificity any of the contract's supposed terms. She does not allege with any specificity which terms were allegedly breached. Without more, "skeletal factual allegations accompanied by nothing more than mere conclusions and general averments of a breach of a

-22-

contractual duty do not suffice" to support a claim for breach.  *Cont'l Masonry Co. v. Verdel Constr. Co.*, 369 A.2d 566, 569 (1977); *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (2010) (dismissing breach of contract claim because "[a]lthough Count II states in conclusory fashion that 'BAA was bound to a configuration of concession sales locations for news/gifts of four locations,' nowhere in the Amended Complaint does RRC allege an explicit or implicit promise by BAA to be so bound.").

Plaintiff's conclusory allegations, without more, cannot satisfy the threshold requirement of Rule 12(b)(6), and her breach of contract claim should be dismissed.

8.    Vicarious liability for Babar's torts

Plaintiff's Complaint contains a standalone final two sections, wherein she seeks to hold Uber liable for Babar's torts and sexual misconduct.  The Court should dismiss these claims because they are not valid causes of action in Maryland and, in any event, Plaintiff cannot allege that Babar was acting within the scope of any agency or employment[7] when he assaulted Plaintiff.

At the outset, it is well-settled that, under Maryland law, vicarious liability is not an independent cause of action, but rather a theory of assigning liability. *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 97 (D. Md. 2011).  So to the extent Plaintiff's vicarious liability claims are put forth as a standalone cause of action, they should be dismissed.

But in addition to the above, Plaintiff cannot adequately plead vicarious liability here because Babar's actions were not within the scope of any alleged employment or agency with UTI or Rasier.  The doctrine of *respondeat superior* allows an employer to be held vicariously liable for the tortious conduct of its employee when that employee was acting within the scope of the employment relationship. *Oaks v. Connors*, 660 A.2d 423, 426 (1995).

Even assuming *arguendo* Babar was an employee of either UTI or Rasier, it is black-letter law in Maryland that liability to the employer cannot attach unless the employee's tortious acts were "in furtherance of the employer's business and were 'authorized' by the employer." *Fid. First Home Mortg. Co. v. Williams*, 56 A.3d 501, 514 (Md. Ct. Spec. App. 2012). "To be within the scope of the employment the conduct must be of the kind the servant is employed to perform and

---

[7] Uber does not concede that Babar was an employee of any Uber entity.

1   must occur during a period not unreasonably disconnected from the authorized period of

2   employment in a locality not unreasonably distant from the authorized area, and actuated at least

3   in part by a purpose to serve the master." *Id.* (quoting *East Coast Freight Lines, Inc. v. Mayor &*

4   *City Council of Balt.*, 58 A.2d 290, 304 (1948)).

5          Plaintiff baldly alleges that Babar's sexual assault was within the scope of his employment,

6   without citing any factual support for why such a remarkable proposition could be so.  She does

7   not, and cannot, allege how Babar's sexual assault was "authorized" by UTI or Rasier.  She does

8   not, and cannot, allege how sexual assault was part of Babar's job responsibilities, or was otherwise

9   in furtherance of either entity's business.  And she does not allege that Babar committed his acts

10  within a nearby locality to where he was supposed to have provided a ride to Plaintiff—indeed,

11  she alleges Babar drove an hour away from Plaintiff's hotel to assault her.  Compl. ¶ 66.

12         This Court has previously rejected such attempts to hold UTI vicariously liable for a sexual

13  assault committed by a driver.  In *Doe*, this Court correctly observed that "Courts applying

14  Maryland law have consistently found that an employer is not vicariously liable for the torts of

15  assault and battery based on sexual assaults by an employee as they are outside the scope of

16  employment."  *Doe*, 2021 WL 2382837, at *4 (cleaned up and collecting cases).  And more than

17  a dozen courts across the country have reached similar conclusions, and have declined to hold

18  Uber and others liable for another's intentional torts because they fall outside the scope of any

19  employment or agency relationship.[8]  There is no reason for this Court to depart from that well-

_____

20  [8] *See, e.g.*, *Browne v. Lyft, Inc., et al.*, 2021-01314 (N.Y.S. 2d Dept., Aug. 2, 2023) (reversing trial

21  court's denial of Lyft's motion to dismiss and finding that a driver's alleged sexual misconduct
    was outside the scope of any purported employment as it was a departure from his duties as a Lyft

22  driver and was committed solely for personal motives unrelated to Lyft's business); *Pratt v. Lyft,*
    *et al.*, Supreme Court of Kings County, New York, Index No. 501701/2018 (July 1, 2021) (New

23  York court granted Lyft's MTD as to, *inter alia*, Plaintiff's *respondeat superior*, fraud, and
    intentional infliction of emotional distress claims after potential rider assaulted by third-party

24  during course of commencing trip arranged through Lyft platform); *Burmakova v. Uber Techs.,*
    *Inc., et al.*, 20STCV24517 (Cal. Super. Oct. 22, 2021) (Los Angeles County Superior Court

25  granted Uber's demurrer finding that "there is nothing to suggest that Prince's actions were
    foreseeable in light of the nature of work performed in a ride-share trip. Rather, the assault was

26  "the independent product of [Defendant's] aberrant decision to engage in conduct unrelated to his
    duties."); *Dier v. Armbruster, et al.*, MSC20-01742 (Cal. Super. May 21, 2021) (Contra Costa

27  County Superior Court granted Airbnb's demurrer dismissing Plaintiff's negligence claim in case
    where plaintiffs alleged that an individual who rented next door property through Airbnb platform

28  assaulted them during course of the rental); *Cho v. McEwan, et al.*, BC697693 (Cal. Super. Mar.
    18, 2021) (California court granted Lyft's MSJ holding that plaintiff's vicarious liability argument

-24-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

failed as a matter of law because, regardless of how one characterized the relationship between Lyft and subject defendant driver, at the time of the incident, McEwan was not acting within the scope of that relationship when he allegedly assaulted an individual in an act of road rage); *Gonzalez v. Sierras, et al.*, 20STCV22103 (Cal. Super. Apr. 29, 2021) (Lyft's outside the scope demurrer granted where driver allegedly assaulted rider when rider would not exit the driver's vehicle); *Doe v. Uber Techs., Inc.*, No. 19-cv-03310-JSC, 2019 U.S. Dist.LEXIS 203466 (N.D. Cal. Nov. 22, 2019) (California court granted Uber's MTD finding that "Plaintiff has not plausibly alleged facts that support a finding that the assailant was acting within the scope of his ostensible employment when he assaulted Plaintiff."); *Flynn v. Bagumyan, et al.*, No. BC699997 (Cal. Super. Oct. 25, 2018 (Los Angeles County Superior Court sustained Uber's demurrer as to the plaintiff's claims of negligence, assault, battery, intentional infliction of emotional distress and negligent infliction of emotional distress finding defendant driver's alleged physical assault was outside the scope); *Karlen v. Uber Technologies, Inc.* (D.C. Conn. 3:21-cv-835 August 27, 2022) (Uber's motion to dismiss granted as to vicarious liability claims where the driver allegedly assaulted a rider); *Echevarria v. Uber Techs., Inc., et al.*, No. 2021-002103-CA-01 Miami-Dade Co., FL April 21, 2021) (Uber and Portier's MTD granted as to Plaintiff's vicarious liability and negligent hiring and retention claims in case where delivery driver was allegedly involved in a verbal and physical assault with Uber Eats user's husband); *Jorge Rodriguez v. Uber Techs, Inc., et al.* (9th J.D. Osceola Cty. Feb. 10, 2021) (Florida court granted Uber's MTD finding Plaintiff failed to state a claim for vicarious liability based on alleged physical assault of rider); *Walls v. Uber Techs., Inc., et al.*, Cause No. 2018CV311540 (Fulton Co., GA July 11, 2019) (Uber's motion for judgment on the pleadings granted with prejudice with Georgia court finding alleged physical assault by driver was "outside the scope as a matter of law"); *Strand v. Uber Techs., Inc., et al.*, No. 19-CI-004701 (Jefferson Co. Cir. Ct, KY Nov. 29, 2022) (Kentucky Court granted Uber's MSJ finding that the driver's alleged assault was "clearly outside the course and scope of his relationship with Uber" and accordingly, Uber could not be vicariously liable as a matter of law); *Doe v. Lyft, Inc.*, 2020 IL App (1st) 191328 (Ill. 2021) (Illinois trial court granted Lyft's MTD as to Plaintiff's counts of false imprisonment and assault/battery based on longstanding Illinois law and Illinois Appellate Court held that per the Transportation Network Providers Act, the common carrier exception to said law did not apply to Lyft); *Freni v. Uber Techs., Inc.*, No. 2018CV00326-C (Suffolk Co. Sup. Ct., Mass. August 10, 2021) (Court granted Uber's MTD finding that rider's criminal conduct was unforeseeable and did not rise to any duty for Uber); *Murray v. Uber Techs., Inc., et al.*, No. 20-11250-NMG (Mass. D.C. Sept. 11, 2020) (Massachusetts federal court granted Uber's 12(b)(6) motion finding that "as a matter of law, sexual assault necessarily falls outside the scope of employment" as "rape and sexual assault. . . do not serve the interests of the employer" and are "not motivated by a purpose to serve the employer."); *Cooper v. Postmates, LLC, et al.* (Case No. A-21-834317-C, 8th Judicial District Court, Clark County, NV) (NV trial court granted Postmates' MSJ finding no material evidence supporting Plaintiff's contention the delivery driver's alleged assault of the Plaintiff-customer was foreseeable to Postmates); *Huh v. Carr, et al.*, HUD-L-2488-20 (Hudson Co. Sup. Ct. March 25, 2021) (New Jersey Superior Court granted Uber's Motion to Dismiss punitive damages finding driver's intentional act of assaulting a third-party was not foreseeable and was outside the scope of any relationship with Uber); *Hoffman v. Silverio-Delrosar, et al.*, No. 20-cv-13291 (D.N.J. Dec. 23, 2021) (New Jersey federal court granted Uber's MTD dismissing Plaintiff's *respondeat superior* claim as a matter of law finding that driver's punching of rider was not a foreseeable act and did not further the driver's role.); *Cortese v. Aman, et al.*, Supreme Court of Suffolk County, New York, Index No. 605477/2019 (Feb. 19, 2021) (New York court granted Uber's MSJ with prejudice in alleged sexual assault case dismissing Plaintiff's assault, battery, false imprisonment, and negligent hiring claims); *Minzer v. Barga, et al.*, Supreme Court, New York County, New York, Index No. 151979/2019 (May 22, 2020) (New York court granted Uber's Motion to Dismiss based on the independent driver's physical assault of a rider being outside the scope of any agency relationship); *Phillips v. Uber Techs, Inc.*, 2017 U.S. Dist. LEXIS 94979 (S.D.N.Y. 2017) (June 14, 2017) (New York federal court granted Uber's 12(b)(6) MTD based on finding that driver's physical assault, battery, and false imprisonment could not be 'reasonably anticipated' by Uber and was accordingly, outside the scope of any relationship); *Mazaheri v. Doe, et al.*, No. CIV-14-225-M, 2014 U.S. Dist. LEXIS 70342 (W.D. Okla. May 22,

-25-

1  settled principle.  Plaintiff cannot state a claim for vicarious liability as a matter of law, and her

2  attempts to do so should be dismissed.

3                                        **<u>CONCLUSION</u>**

4          For the foregoing reasons, the Court should grant Uber's Motion to dismiss.

5

6  DATED:  April 1, 2024                 **PAUL, WEISS, RIFKIND, WHARTON &**
                                          **GARRISON LLP**

7

8                                        By: */s/ Robert Atkins*_____

9                                             ROBERT ATKINS
                                              RANDALL S. LUSKEY
10                                            JESSICA E. PHILLIPS
                                              KYLE N. SMITH
11                                            JACQUELINE P. RUBIN
                                              CAITLIN E. GRUSAUSKAS
12                                            ANDREA M. KELLER

13                                       *Attorneys for Defendants*

14                                       UBER TECHNOLOGIES, INC.,
                                         and RASIER, LLC

15

16  _____

17  2014) (Oklahoma federal court granted Uber's MTD where driver allegedly physically assaulted
    rider after verbal dispute with court holding, "it cannot plausibly be said…such behavior is a
    natural impulse growing out of or incident to the attempt to complete the master's business.
18  [Driver] was not acting to protect or further the interests of his employer, but instead pursued this
    course of conduct for his own personal interest of assaulting plaintiff."); *Owens v. Uber Techs.,*
19  *Inc.*, et al., No. 20-13942 (Ct. of Common Pleas, Berks Co., PA Mar. 11, 2021) (Pennsylvania
    court sustained Uber's Preliminary Objections dismissing  Plaintiff's battery, assault, and
20  intentional infliction of emotional distress claims with prejudice in incident where driver alleged
    to have thrown tire iron at rider outside of driver's vehicle); *Coughlin v. Uber Techs., Inc., et al.*,
21  No. 200203083 (Ct. of Common Pleas, Philadelphia Co., PA June 12, 2020) (Pennsylvania court
    sustained Uber's Preliminary Objections dismissing Plaintiff's *respondeat superior* and assault
22  and battery claims with prejudice in case where driver allegedly sexually assaulted rider); *Fusco
    v. Uber Techs., Inc.*, No. 17-36, 2018 WL  3618232 (E.D. Pa. July 27, 2018) (Pennsylvania federal
23  court granted Uber's Motion to Dismiss dismissing Plaintiff's *respondeat superior* and negligent
    hiring claims after driver allegedly violently attacked a passenger upon learning that the passenger
24  wanted to travel from  Philadelphia to New Jersey. Court found that conduct actuated by a purpose
    to serve the employer may nevertheless fail to create vicarious liability if the act is "so excessive
25  and dangerous, as to be totally without responsibility or reason under the circumstances . . . [and
    here,].the brutality of the beating takes the act outside the scope of employment as a matter of
26  law."); *Angela Robinson v. Uber Techs., Inc., et al.*, No. 2022CP4000496 (Ct. of Common Pleas,
    Richland Co., SC) (Nov. 30, 2022) (Uber's Motion to Dismiss was granted as to Plaintiff's
27  vicarious liability, negligent selection of an independent contractor, and negligent infliction of
    emotional distress claims with the Court finding the driver who discharged a firearm into
28  Plaintiff's vehicle during a road rage incident was acting outside the scope).