RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
JACQUELINE P. RUBIN (*Pro Hac Vice* admitted)
    jrubin@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| This Document Relates to: | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW** |
| *Jane Doe LSA 340* v. *Uber Technologies, Inc., et al.*, 3:23-cv-01165-CRB | |
| *H.D.* v. *Uber Technologies, Inc.*, et al., 3:23-cv-04617-CRB | Judge:      Honorable Charles R. Breyer<br>Date:       TBD<br>Time:       TBD<br>Courtroom:  6 – 17th Floor |
| *M.F.A.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05560-CRB | |

*Hunter* v. *Uber Technologies, Inc., et al.*,
3:23-cv-05622-CRB

*T.R.* v. *Uber Technologies, Inc.*, et al.,
3:23-cv-05625-CRB

*J.B.* v. *Uber Technologies, Inc.*, et al.,
3:23-cv-06692-CRB

*T.M.* v. *Uber Technologies, Inc.*, et al.,
3:23-cv-06705-CRB

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW          Case No. 3:23-md-03084-CRB

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW       Case No. 3:23-md-03084-CRB

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................. 2

I.      The Claim for Vicarious Liability Fails as a Matter of Law .................................... 3

     A.      The Alleged Assaults Are Outside the Scope of Any Alleged Employment ........ 3

     B.      Alleging Common Carrier Status Does Not Support Vicarious Liability .............. 6

     C.      Plaintiffs' Ratification Theory Fails ...................................................................... 8

     D.      CPUC § 5354 Does Not Create Vicarious Liability ............................................. 9

II.     Plaintiffs Fail to State a Claim for "Non-Delegable Duties" ................................... 10

III.    Plaintiffs' Fraud-Related Claims Should Be Dismissed ......................................... 12

     A.      The Complaint Fails to Plead Reliance ................................................................ 12

     B.      Plaintiffs Fail to Identify the Alleged False Statements with Specificity ............ 13

     C.      The *McKnight* Class Action Settlement Bars Many Misrepresentation Claims ... 15

          1.      The Complaint Tries to Evade the *McKnight* Settlement ......................... 15

          2.      The "Safe Rides Fee" Allegations Should Be Dismissed or Stricken ...... 17

     D.      The Complaint Alleges Representations That Are Not Actionable ....................... 17

     E.      The Complaint Fails to Plead Fraudulent Omission or Concealment .................. 19

IV.     The Claim for Negligent Infliction of Emotional Distress Is Not Recognized ......... 22

V.      Plaintiffs Fail to Allege Negligent Entrustment ..................................................... 22

VI.     The Complaint's Strict Product Liability Claims Fail As a Matter of Law ............. 23

VII.    Plaintiffs Fail to State a Claim for Relief under the UCL ...................................... 27

VIII.   Plaintiffs Are Not Entitled to Injunctive Relief ..................................................... 27

IX.     Plaintiffs' Request for Punitive Damages Should Be Dismissed ............................ 29

X.      Amendment Would Be Futile ................................................................................ 30

CONCLUSION ....................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                               **Page(s)**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
   2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) .........................................................................27

*Ahern* v. *Apple, Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ...............................................................18, 19, 20, 21

*Alma W.* v. *Oakland Unified Sch. Dist.*,
   123 Cal. App. 3d 133 (1981) .........................................................................................3, 4

*Am. Honda Motor Co.* v. *Milburn*,
   668 S.W.3d 6 (Tex. App. 2021)...........................................................................................19

*Arruda* v. *Rasier, LLC*,
   No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024)..............................................24

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009)................................................................................................................2

*Barrett* v. *Apple Inc.*,
   523 F. Supp. 3d 1132 (N.D. Cal. 2021) ...............................................................................22

*Baxter-Aremtrout* v. *Lyft, Inc.*,
   No. 50-20210CA-013917 (Fla. Cir. Ct., Aug. 29, 2022)......................................................24

*Beck* v. *State Farm Mut. Auto. Ins.*,
   54 Cal. App. 3d 347 (1976) ...............................................................................................29

*Behuet & Hunt* v. *Uber Techs., Inc.*,
   2022 WL 20318684 (Cal. Super. Ct. July 13, 2022) ..........................................................24

*Berger* v. *Southern Pacific Co.*,
   144 Cal. App. 2d 1 (1956) ....................................................................................................7

*Boschma* v. *Home Loan Ctr., Inc.*,
   198 Cal. App. 4th 230 (2011) ........................................................................................19, 22

*Brooks* v. *Eugene Burger Mgmt. Corp.*,
   215 Cal. App. 3d 1611 (1989) ........................................................................................23, 25

*Browne* v. *Lyft, Inc.*,
   219 A.D. 3d 445 (2d Dep't 2023) ..........................................................................................5

*Bull* v. *Clippinger*,
   2014 WL 2106782 (Cal. App. May 20, 2014) (unpublished)................................................11

*Burmakova* v. *Uber Techs.*,
   No. 20STCV24517 (Super. Ct., Los Angeles Cnty., Oct. 22, 2021) ....................................5

*C.T.* v. *Tetteh*,
   No. MRS-L-1723-23 (N.J. Super. Ct., Feb. 8, 2024)............................................................5

*Cadlo* v. *Owens-Illinois, Inc.*,
   125 Cal. App. 4th 513 (2004) ........................................................................13

*Campbell* v. *Sec. Pac. Nat. Bank*,
   62 Cal. App. 3d 379 (1976) ..........................................................................11

*Cansino* v. *Bank of Am.*,
   224 Cal. App. 4th 1462 (2014) ....................................................................18

*Cel-Tech Comms., Inc.* v. *L.A. Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) .............................................................................27

*Chapman* v. *Skype Inc.*,
   220 Cal. App. 4th 217 (2013) ......................................................................12

*Chee* v. *Amanda Goldt Prop. Mgmt.*,
   143 Cal. App. 4th 1360 (2006) ....................................................................10

*City of Los Angeles* v. *Lyons*,
   461 U.S. 95 (1983).......................................................................................29

*Clark* v. *State Farm Mut. Auto. Ins.*,
   231 F.R.D. 405 (C.D. Cal. 2005) ................................................................30

*Collins* v. *eMachines, Inc.*,
   202 Cal. App. 4th 249 (2011) ..........................................................20, 21, 22

*Consumer Advocs.* v. *Echostar Satellite Corp.*,
   113 Cal. App. 4th 1351 (2003) ..............................................................18, 19

*Coughlin* v. *Uber Techs., Inc.*,
   No. 03083 (Pa. Ct. C.P. Philadelphia Cnty., June 12, 2020) ........................5

*Cruz Lopez* v. *Uber Techs., Inc.*,
   No. 21CV376012 (Cal. Super. Ct. Dec. 7, 2021) .......................................24

*Daly* v. *General Motors Corp.*,
   20 Cal. 3d 725 (1978) ..................................................................................26

*Davidson* v. *Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .......................................................................29

*Debbie Reynolds Prof. Rehearsal Studios* v. *Superior Court*,
   25 Cal. App. 4th 222 (1994) .....................................................................3, 5

*Doe* v. *CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020) .....................................................................27

*Doe* v. *Lyft, Inc.*,
   176 N.E.3d 863 (Ill. App. Ct. 2020) ...........................................................5

*Doe* v. *Match.com*,
   789 F. Supp. 2d 1197 (C.D. Cal. 2011) .................................................28, 29

*Ehrlich* v. *BMW of N. Am., LLC*,
   801 F. Supp. 2d 908 (C.D. Cal. 2010) .........................................................22

*Estate of Stella Yeh, et al.* v. *Uber Techs., Inc., et al.*,
  CGC-20-584408 (Super. Ct. S.F. County Aug. 6, 2021) ..........................................14

*Fabricant* v. *Elavon, Inc.*,
  2020 WL 11884505 (C.D. Cal. Aug. 25, 2020) ..............................................................9

*Fantasy, Inc.* v. *Foberty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ............17

*Farmers Ins. Grp.* v. *Cnty. of Santa Clara*,
  11 Cal. 4th 992 (1995) ....................................................................................3, 4, 7

*Felmlee* v. *Falcon Cable TV*,
  36 Cal. App. 4th 1032 (1995) ...............................................................................10

*Ferrari* v. *Grand Canyon Dories*,
  32 Cal. App. 4th 248 (1995) ..................................................................................24

*Flores* v. *Uber Techs., Inc.*,
  No. 19STCV24988 (Cal. Super. Ct., Mar. 22, 2022) ............................................24

*Flynn* v. *Bagumyan*,
  No. BC69997 (Super. Ct. L.A. County Oct. 25, 2018) ..........................................22

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
  2001 WL 1266317 (D.N.J. Sept. 30, 1997) ....................................................12, 13

*Frenzel* v. *AliphCom*,
  76 F. Supp. 3d 999 (N.D. Cal. 2014) ....................................................................27

*Fusco* v. *Uber Techs., Inc.*,
  2018 WL 3618232 (E.D. Pa. July 27, 2018) .........................................................19

*G. D. Searle & Co.* v. *Superior Ct.*,
  49 Cal. App. 3d 22 (1975) .....................................................................................30

*Gentry* v. *eBay, Inc.*,
  99 Cal. App. 4th 816 (2002) ..................................................................................18

*Gomez* v. *Superior Court*,
  35 Cal. 4th 1125 (2005) ...........................................................................................7

*Haddock* v. *Countrywide Bank, NA*,
  2015 WL 9257316 (C.D. Cal. Oct. 27, 2015) .......................................................20

*Hall* v. *Sea World Ent., Inc.*,
  2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) .......................................................22

*Hauter* v. *Zogarts*,
  14 Cal. 3d at 104, 111-12 (1975) ..........................................................................19

*Hennigan* v. *White*,
  199 Cal. App. 4th 395 (2011) ................................................................................25

*Herron* v. *Best Buy Co. Inc.*,
  924 F. Supp. 2d 1161 (E.D. Cal. 2013) ............................................................21, 22

- vii -

*Hesketh* v. *Lumbera*,
  No. 30-2017-00903976-CU-PA-CJC (Orange Cnty. Super. Ct. Apr. 21, 2022) ......................6

*Huynh* v. *Quora Inc.*,
  508 F. Supp. 3d 633 (N.D. Cal. 2020) ...................................................................................28

*Jackson* v. *Airbnb, Inc.*,
  639 F. Supp. 3d 994 (C.D. Cal. 2022) ...................................................................................24

*Jacoves* v. *United Merch. Corp.*,
  9 Cal. App. 4th 88 (1992) ......................................................................................................23

*Jane Doe 1* v. *City of Murrieta*,
  102 Cal. App. 4th 899 (2002) ...............................................................................................3, 8

*Jane Doe No. 1* v. *Uber Techs., Inc.*,
  2020 Cal. Super. LEXIS 73095 (Cal. Super. Ct. Nov. 30, 2020) ....................................24, 25

*Jane Doe* v. *Uber Techs., Inc.*,
  20-cv-8446 (S.D.N.Y. July 28, 2021) ......................................................................................6

*Jane Doe* v. *Uber Techs., Inc.*,
  2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) .............................................................3, 5, 6

*Jane Doe* v. *Uber Techs., Inc.*,
  No. 20STCV12243 (Super. Ct. L.A. Cnty July 20 & 21, 2020)..........................................3

*Jane Doe* v. *Uber Techs.*,
  No. 20STCV48919 (Super. Ct. L.A. County June 16, 2021) ................................................7

*Jeffrey Scott E.* v. *Cent. Baptist Church*,
  197 Cal. App. 3d 718 (1988) ..................................................................................................3

*John R.* v. *Oakland Unified Sch. Dist.*,
  48 Cal. 3d 438 (1989) .....................................................................................................3, 4, 7

*John Y.* v. *Chaparral Treatment Ctr., Inc.*,
  101 Cal. App. 4th 565 (2002) ..................................................................................................3

*Karlen* v. *Uber Techs., Inc.*,
  2022 U.S. Dist. LEXIS 15320 (D. Conn. Aug. 27, 2022) .....................................................5

*Kimberly M.* v. *L.A. Unified Sch. Dist.*,
  215 Cal. App. 3d 545 (1989) ..................................................................................................3

*Klein* v. *Children's Hosp. Med. Ctr. of N. Cal.*,
  46 Cal. App. 4th 889 (1996) .................................................................................................22

*Kurns* v. *R.R. Friction Prods. Corp.*,
  565 U.S. 625 (2012).................................................................................................................25

*LaCount* v. *Henzel Phelps Constr. Co.*,
  79 Cal. App. 3d 754 (1978) (discussing *Elder* v. *Pacific Tel. Co.*, 66 Cal. App.
  3d 650, 676 (1977))...............................................................................................................11

*Lesnik* v. *Eisenmann SE*,
  374 F. Supp. 3d 923 (N.D. Cal. 2019) .................................................................15

*Lindstrom* v. *Hertz Corp.*,
  81 Cal. App. 4th 644 (2000) ................................................................................23

*Lisa M.* v. *Henry Mayo Newhall Mem'l Hosp.*,
  12 Cal. 4th 291 (1995) ...........................................................................3, 4, 5, 7

*Lopez* v. *S. Cal. Rapid Transit Dist.*,
  40 Cal. 3d 780 (1985) ......................................................................................7, 8

*Lucas* v. *City of Visalia*,
  726 F. Supp. 2d 1149 (E.D. Cal. 2010)................................................................26

*Lucent Techs., Inc.* v. *Board of Equalization*,
  241 Cal. App. 4th 19 (2015) ................................................................................24

*Luna, Avelardo* v. *Uber Techs., Inc.*,
  No. 22STCV10806 (Cal. Super. Ct., Sept. 27, 2022) .........................................24

*Maloney* v. *Rath*,
  69 Cal. 2d 442 (1968) ..........................................................................................11

*Maria D.* v. *Westec Residential Sec., Inc.*,
  85 Cal. App. 4th 125 (2000) ............................................................................3, 7

*Garcia ex rel. Marin* v. *Clovis Unified Sch. Dist.*,
  627 F. Supp. 2d 1187 (E.D. Cal. 2009)..................................................................9

*Martin* v. *PacifiCare of California*,
  198 Cal. App. 4th 1390 (2011) ...........................................................................10

*Martinez* v. *Uber Techs., Inc.*,
  No. 23STCV09795 (Cal. Super. Ct., Oct. 3, 2023) .............................................24

*McCall* v. *Safety Consultant Servs., Inc.*,
  2010 WL 3399892 (Cal. Ct. App. Aug. 31, 2010) (unpublished) ...........................9

*McKnight* v. *Uber Techs., Inc.*,
  14-cv-05615, ECF No. 1 ........................................................................................21

*McKnight* v. *Uber Techs., Inc.*,
  14-cv-05615-JST (N.D. Cal.).................................................................................1

*McNeal* v. *Whittaker, Clark & Daniels, Inc.*,
  80 Cal. App. 5th 853 (2022) ................................................................................30

*Medo* v. *Superior Ct.*,
  205 Cal. App. 3d 64 (1988) .................................................................................30

*Mendez* v. *Selene Fin. LP*,
  2017 WL 1535085 (C.D. Cal. Apr. 27, 2017) .....................................................27

*Mendiondo* v. *Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ..............................................................................2

- ix -

*Mewawalla* v. *Middleman*,
  601 F. Supp. 3d 574 (N.D. Cal. 2022) ....................................................................14

*Minzer* v. *Barga, et al.*,
  2020 WL 2621710 (N.Y. Super. Ct. May 22, 2020) ..............................................14

*Modisette* v. *Apple Inc.*,
  30 Cal. App. 5th 136 (2018) ..................................................................................26

*Murray* v. *Uber Techs., Inc.*,
  486 F. Supp. 3d 468 (D. Mass. Sept. 11, 2020) ......................................................5

*Nevitt* v. *Uber Techs., Inc.*,
  No. CGC-19-573849 (San Francisco Cnty. Sup. Ct. Dec. 20, 2022) ......................6

*Norman* v. *Uber Techs., Inc.*,
  No. 21STCV35632 (Cal. Super. Ct. Mar. 8, 2022) ................................................24

*Nyrkkanen* v. *Uber Techs., Inc.*,
  No. 200901485 (Utah Dist. Ct. Aug. 9, 2022) .........................................................6

*O'Neil* v. *Crane Co.*,
  53 Cal. 4th 335 (2012) ...........................................................................................26

*Palmer* v. *Apple Inc.*,
  2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ........................................................17

*Papasan* v. *Allain*,
  478 U.S. 265 (1986) ..................................................................................................2

*Payne* v. *Off. of the Comm'r of Baseball*,
  705 F. App'x 654 (9th Cir. 2017) ...........................................................................28

*Petitpas* v. *Ford Motor Co.*,
  13 Cal. App. 5th 261 (2017) ...................................................................................23

*Polanco* v. *Lyft, Inc.*,
  2021 Cal. Super. LEXIS 60679 (Cal. Super. Ct. May 13, 2021) .....................24, 25

*Quackenbush* v. *Am. Honda Motor Co., Inc.*,
  650 F. Supp. 3d 837 (N.D. Cal. 2023) ...................................................................19

*Rakestraw* v. *Rodrigues*,
  8 Cal. 3d 67 (1972) ..................................................................................................8

*Ramos* v. *Uber Techs., Inc.*,
  No. 22STCV33007 (Cal. Super. Ct. June 1, 2023) ................................................24

*Ramsay* v. *Frontier, Inc.*,
  2020 WL 4557545, at *3, 16 (D. Colo. July 30, 2020), *report and
  recommendation adopted*, 2021 WL 651021 (D. Colo. Feb. 19, 2021) .................29

*Rita M.* v. *Roman Catholic Archbishop*,
  187 Cal. App. 3d 1453 (1986) ..................................................................................3

*Rodriguez* v. *FCA US LLC*,
  2023 WL 3150075 (C.D. Cal. Mar. 21, 2023) ..........................................................28

*Rodriguez* v. *Uber Techs., Inc.*,
  No. 2020-CA-1823 (Aug. 9, 2021) (Fla. 9th J. D. Cir. Ct. Osceola County
  Aug. 9, 2021) ...........................................................................................................14

*Saller* v. *Crown Cork & Seal Co.*,
  187 Cal. App. 4th 1220 (2010) ...............................................................................25

*Shannon* v. *Uber Techs., Inc.*,
  No. 21STCV42029 (Cal. Super. Ct., Apr. 15, 2022)................................................24

*Shroyer* v. *New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ................................................................................27

*Shultz Steel Co.* v. *Hartford Accident & Indem. Co.*,
  187 Cal. App. 3d 513 (1986) ....................................................................................8

*Siafarikas* v. *Mercedes-Benz USA, LLC*,
  2021 WL 4147251 (E.D. Cal. Sept. 13, 2021).........................................................19

*Small* v. *Fritz Companies, Inc.*,
  30 Cal. 4th 167 (2003) .............................................................................................12

*Smith* v. *Superior Ct.*,
  10 Cal. App. 4th 1033 (1992) ..................................................................................30

*Snyder* v. *So. Cal. Edison Co.*,
  44 Cal. 2d 793 (1955) ..............................................................................................11

*Sonner* v. *Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ...................................................................................28

*Soule* v. *GM Corp.*,
  8 Cal. 4th 548 (1994) ...............................................................................................23

*State Dept. of State Hosps.* v. *Superior Ct.*,
  61 Cal. 4th 339 (2015) .............................................................................................26

*Steckman* v. *Hart Brewing, Inc.*,
  143 F. 3d 1293 (9th Cir. 1998) ................................................................................30

*Strand* v. *Hoover Techs., Inc.*,
  No. 19-CI-004701 (Ky. Cir. Ct. Nov. 29, 2022)........................................................6

*Swartz* v. *KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ...................................................................................12

*Teed* v. *Chen*,
  2023 WL 2277104 (N.D. Cal. Feb. 28, 2023) .........................................................14

*Todd* v. *Dow*,
  19 Cal. App. 4th 253 (1993) ....................................................................................23

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW      Case No. 3:23-md-03084-CRB

*Toral* v. *Uber Techs., Inc.*,
    No. 20STCV02030 (Cal. Super. Ct. Apr. 14, 2021) ........................................24

*In Re: Uber Rideshare Cases*,
    CJC-21-005188 (Super. Ct. S.F. Cnty. June 22, 2023) .................................... *passim*

*Vess* v. *Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................12, 14

*Victoria* v. *Superior Court*,
    40 Cal. 3d 734 (1985) ..........................................................................8

*Viner* v. *Sweet*,
    30 Cal. 4th 1232 (2003) ......................................................................26

*In re Volkswagen Clean Diesel*,
    349 F. Supp. 3d 881, 914 (N.D. Cal. 2018) ................................................14

*In re Volkswagen*,
    349 F. Supp. 3d at 915 .......................................................................19

*XYZ Two Way Radio Serv., Inc.* v. *Uber Techs., Inc.*,
    214 F. Supp. 3d 179 (E.D.N.Y. 2016) ......................................................19

*Ziencik* v. *Snap, Inc.*,
    2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ................................................24

**Statutes**

Cal. Civ. Code § 3294(a) .......................................................................29

Cal. Civ. Code § 3294(c)(1) ....................................................................30

Cal. Code Civ. Proc. § 2100 ..................................................................7, 8

Cal. Code Civ. Proc. § 2168 ....................................................................6

Cal. Pub. Util. Code § 5354 ..................................................................9, 10

Cal. Pub. Util. Code § 5431(c) .................................................................23

California Unfair Competition Law .......................................................2, 27, 28

Michael D. Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (3d ed. 2024 Supp.) .........................24

Raymond T. Nimmer, Law of Comput. Tech. § 12:41 (Nov. 2023 Update) ................................24

**Other Authorities**

Fed. R. Civ. P. Rule 9(b) ................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) .........................................................................2

Fed. R. Civ. P. Rule 12(f) ......................................................................17

- xii -

Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005) ........................................................... 24

Restatement (Second) of Torts ch. 15, topic 2, introductory note ................................................. 11

Restatement (Second) of Torts § 314A ..................................................................................... 11

Restatement (Third) of Torts: Prod. Liab. § 19 ......................................................................... 23

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW     Case No. 3:23-md-03084-CRB

1

**NOTICE OF MOTION TO DISMISS**

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

**NOTICE IS HEREBY GIVEN** that on a date and time to be set by the Court, before the

4 Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco

5 Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA

6 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively,

7 "Uber") will, and hereby do, move this Court for an order dismissing portions of the Complaint

8 brought by Plaintiffs in this coordinated action whose alleged incidents occurred in California.

9

This Motion is based on this Notice, the attached Memorandum of Points and Authorities,

10 the concurrently filed Declaration of Robert Atkins, the concurrently filed Declaration of Peter

11 Sauerwein, the concurrently filed Proposed Order, all evidence, pleadings, and papers filed

12 herewith, the entire file in this coordinated action, any Reply that may be filed in support of this

13 Motion, and any other arguments or evidence that may be presented to the Court in support of this

14 Motion.

15

16 DATED:  April 1, 2024               **PAUL, WEISS, RIFKIND, WHARTON &**

17                                **GARRISON LLP**

18

By: */s/ Robert Atkins*

19                           ROBERT ATKINS

20                           RANDALL S. LUSKEY
                          JESSICA E. PHILLIPS

21                           KYLE N. SMITH
                          JACQUELINE P. RUBIN

22                           CAITLIN E. GRUSAUSKAS
                          ANDREA M. KELLER

23

24                           *Attorneys for Defendants*
                          UBER TECHNOLOGIES, INC.,

25                           RASIER, LLC, and RASIER-CA, LLC

26

27

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW      Case No. 3:23-md-03084-CRB

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs allege that each of them was assaulted or harassed by a driver and contend that Uber is responsible for having not implemented different or additional safety measures.  If the drivers behaved as alleged, that is reprehensible.  But that is not sufficient to sustain the claims alleged in the Master Long-Form Complaint (the "Complaint").  This Motion is directed to claims in the Complaint asserted by Plaintiffs whose alleged incidents occurred in California and thus are governed by California law.  *See* Declaration of Robert Atkins ("Atkins Decl.") Ex. 9. Uber respectfully requests that this Court dismiss the claims addressed below and do so with prejudice given the legal infirmity of those causes of action:

*Vicarious Liability for Drivers' Torts (Cause of Action G).*  Uber is not vicariously liable for sexual assaults allegedly committed by independent drivers because such conduct is outside the scope of employment or agency under California law.

*"Other Non-Delegable Duties to Provide Safe Transportation" (Cause of Action F).*  Plaintiffs do not allege that Uber "delegated" any of its own purported duties to independent drivers, and, in any event, sexual assault is beyond the scope of any duty authorized by Uber.

*Fraud and Misrepresentation (Cause of Action C).*  Plaintiffs collectively complain about Uber's advertising, but misrepresentation claims cannot be asserted generically as a group.  The Complaint therefore fails to meet the heightened pleading standard of Rule 9(b).  In addition, many of Plaintiffs' misrepresentation claims cannot have survived the class action settlement in *McKnight* v. *Uber Techs., Inc.*, 14-cv-05615-JST (N.D. Cal.), because Plaintiffs either released their claims or, if they were not part of the class, could not have relied on the "Safe Ride" representations at issue in that dispute.

*Negligent Infliction of Emotional Distress (Cause of Action D).*  There is no standalone cause of action for negligent infliction of emotional distress ("NIED") in California.

*Negligent Entrustment (Part of Cause of Action B).*  Negligent entrustment applies only to chattel, not, as Plaintiffs allege, Uber's App or Uber trademarks.

*Strict Products Liability (Cause of Action H).*  The Uber App is not a "product" and therefore is not subject to product liability claims.  Plaintiffs also fail to allege any defect in the Uber App or any causal connection between their alleged injuries and the design of the software.

*Unfair Competition Law (Cause of Action I).*  Plaintiffs fail to adequately allege that Uber engaged in any unlawful, fraudulent, or unfair business practice in violation of the California Unfair Competition Law ("UCL").

*Injunctive Relief.*  Plaintiffs are not entitled to seek injunctive relief because the Complaint fails to allege that they lack an adequate remedy at law.  The Complaint also fails to allege facts establishing that any individual Plaintiff has standing to seek injunctive relief.

*Punitive Damages.*  Plaintiffs fail to sufficiently plead that Uber acted oppressively, fraudulently, or maliciously.

## BACKGROUND

On February 15, 2024, Plaintiffs filed a Master Long-Form Complaint alleging, *en masse*, that after using the Uber App to arrange for rides, each Plaintiff was sexually assaulted by an independent driver.  Plaintiffs seek compensatory and punitive damages and injunctive relief based on the following claims against Uber:  (1) negligence; (2) fraud and misrepresentation; (3) NIED; (4) "common carrier's non-delegable duty to provide safe transportation"; (5) "other non-delegable duties to provide safe transportation"; (6) vicarious liability for drivers' torts; (7) strict product liability; and (8) UCL violations.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Dismissal is appropriate where the allegations lack "a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo* v. *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In deciding a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986).

Here, based on both California law and the insufficiency of the facts alleged, this Court

-2-

should dismiss Plaintiffs' claims for (1) vicarious liability, (2) "other non-delegable duties to provide safe transportation," (3) fraud and misrepresentation, (4) NIED, (5) negligent entrustment, (6) strict product liability, and (7) UCL violations.  It should also dismiss Plaintiffs' requests for injunctive relief and punitive damages.

## I.    THE CLAIM FOR VICARIOUS LIABILITY FAILS AS A MATTER OF LAW

### A.    The Alleged Assaults Are Outside the Scope of Any Alleged Employment

As a matter of California law, Uber is not vicariously liable for alleged sexual assaults by independent drivers.  Even if there were an employer-employee (or principal-agent) relationship between Uber and the drivers - - which there is not - - Plaintiffs have failed to plead facts that would support the conclusion that the drivers' deplorable behavior (if proven) is within the scope of any alleged employment.  *See Lisa M.* v. *Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 296-99 (1995).  Courts applying California law routinely dispose of vicarious liability claims against employers based on sexual assaults allegedly committed by their employees because those assaults were not committed within the scope of employment.[1]  Virtually all such claims involved unspeakable sexual crimes by assailants in positions of dominance over vulnerable victims:  e.g., a school janitor raping an 11-year-old girl (*Alma W.*), priests raping and impregnating a 16-year-old girl (*Rita M.*), a police officer sexually abusing 16-year-old girls (*Doe 1*), and a teacher molesting a 14-year-old boy (*John R.*).

The acts of sexual violence alleged in the above cases are the very reason why the vicarious liability claims cannot be sustained as a matter of law:  where "the employee <u>substantially</u> <u>deviates</u> <u>from the employment duties for personal purposes</u>," the employer "will not be held liable for an employee's malicious or tortious conduct."  *Farmers*, 11 Cal. 4th at 1004-05 (emphasis added)

---

[1] *See, e.g.*, *Alma W.* v. *Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133 (1981); *John R.* v. *Oakland Unified Sch. Dist.*, 48 Cal. 3d 438 (1989); *Rita M.* v. *Roman Catholic Archbishop*, 187 Cal. App. 3d 1453 (1986); *Jeffrey Scott E.* v. *Cent. Baptist Church*, 197 Cal. App. 3d 718 (1988); *Kimberly M.* v. *L.A. Unified Sch. Dist.*, 215 Cal. App. 3d 545 (1989); *Debbie Reynolds Prof. Rehearsal Studios* v. *Superior Court*, 25 Cal. App. 4th 222 (1994); *Farmers Ins. Grp.* v. *Cnty. of Santa Clara*, 11 Cal. 4th 992 (1995); *Lisa M.*, 12 Cal. 4th 291; *Maria D.* v. *Westec Residential Sec., Inc.*, 85 Cal. App. 4th 125, 146 (2000); *Jane Doe 1* v. *City of Murrieta*, 102 Cal. App. 4th 899 (2002); *John Y.* v. *Chaparral Treatment Ctr., Inc.*, 101 Cal. App. 4th 565, 576 (2002); *Jane Doe* v. *Uber Techs., Inc.*, No. 20STCV12243 (Super. Ct. L.A. Cnty July 20 & 21, 2020); *see also Jane Doe* v. *Uber Techs., Inc.*, 2019 WL 6251189 (N.D. Cal. Nov. 22, 2019).

(italics in original).  As the California Supreme Court held in its leading decision, *Lisa M.*, the fact that "the employment brought tortfeasor and victim together in time and place" - - like drivers and riders using the Uber App - - is not enough to state a vicarious liability claim.  12 Cal. 4th at 298. Physical proximity and opportunity are not sufficient to plead a viable vicarious liability claim because those are not the measures of the scope of employment; the test is whether the sexual assault was part of the assailant's job responsibilities, or deviant behavior "for personal purposes." *Farmers*, 11 Cal. 4th at 1005.

That is the controlling principle of law in any vicarious liability case.  In *Farmers*, the California Supreme Court held that a deputy sheriff's sexual harassment of trainees "had no purpose connected to the employment" because it <u>was not related to his own job duties</u>; it was "<u>motivated for strictly personal reasons</u> unrelated to the guarding of inmates or the performance of any other duty of a deputy sheriff."  *Id.* at 1007 (emphasis added).  In *Alma W.*, a school janitor who raped an 11-year-old was found to have been motivated by "an <u>independent, self-serving pursuit wholly unrelated to his custodial duties</u>."  123 Cal. App. 3d at 141 (emphasis added). Plaintiff's vicarious liability claim in that case could not withstand dismissal because "sexual molestation <u>is in no way related to</u>" the worker's duties of "mopping floors, cleaning rooms, or any of the other tasks that are required of a school custodian."  *Id.* at 140 (emphasis added).  And in *John R.*, the court dismissed a vicarious liability claim because the teacher's sexual abuse of a student was "simply too attenuated" from the teacher's "instructional duties."  48 Cal. 3d at 452.

Here, the drivers' alleged sexual assault of riders was in no way related to providing "transportation, from place to place."  Compl. ¶ 389.  The California Supreme Court decision in *Lisa M.* is directly on point.  There, a pregnant patient was sexually assaulted by a hospital technician performing an ultrasound examination in the defendant-hospital's ultrasound room. 12 Cal. 4th at 294-96.  The Supreme Court held, *as a matter of law*, that no vicarious liability could be imposed on the hospital because the "technician simply took advantage of solitude with a naive patient to commit an assault for reasons unrelated to his work."  *Id.* at 301.  That was the law even though, by working in a confined and dark hospital room alone with a patient, the technician was put in the position by his job to commit the assault.  The same, in effect, is alleged here:  drivers

-4-

allegedly took advantage of their proximity to riders (many alone in the confined space of a car) to commit assaults for reasons having nothing whatsoever to do with driving the riders.  As the California Supreme Court held, that the "circumstances of the examination made [the assault] possible" was not legally sufficient to impose vicarious liability:  the technician's "motivating emotions were not causally attributable to his employment."  *Id.*

Here, "looking at [vicarious liability] with [the] slightly different focus" of foreseeability "leads to the same conclusion."  *Lisa M.*, 12 Cal. 4th at 299, 301-03.  The foreseeability question is whether the conduct alleged was an ordinary part of the job - - i.e., that the sexual assault was "sure to occur in the conduct of the employer's enterprise.  *Id.* at 299.  "The [foreseeability] question is not one of statistical frequency, but of a relationship between the nature of the work involved and the type of tort committed."  *Id.* at 302.  That the nature of work involves "solitude" and "access" to the plaintiff does not make a sexual assault foreseeable for vicarious liability - - even in cases like *Lisa M.* where the employee is authorized to physically touch a vulnerable plaintiff.  *Id.* at 303.  Even though the performance of his job required him to make physical contact with the patient, the technician's sexual assault in *Lisa M.* was "not foreseeable from the nature of the work he was employed to perform" because he - - like the drivers in these cases - - merely exploited the circumstances "to engage in conduct unrelated to his duties."  *Id.* at 302-03.  Uber cannot be vicariously liable for a sexual assault carried out by an independent driver whose purported "job" was providing rides to users of the Uber App.  Each of the drivers allegedly engaged in abhorrent and "wrongful conduct [that] was so divorced from his duties and his work that, as a matter of law, it was outside the scope of his employment."  *Debbie Reynolds*, 25 Cal. App. 4th at 227.

That is why courts in California and other jurisdictions have dismissed similar vicarious liability claims against Uber and other transportation network companies ("TNCs").[2]  As a recent

<hr>

[2] *See, e.g.*, *Burmakova* v. *Uber Techs.*, No. 20STCV24517 (Super. Ct., Los Angeles Cnty., Oct. 22, 2021); *Doe* v. *Uber Techs., Inc.*, 2019 WL 6251189, at *5 (N.D. Cal. Nov. 22, 2019); *Karlen* v. *Uber Techs., Inc.*, 2022 U.S. Dist. LEXIS 15320, at *11 (D. Conn. Aug. 27, 2022); *Doe* v. *Lyft, Inc.*, 176 N.E.3d 863 (Ill. App. Ct. 2020); *Murray* v. *Uber Techs., Inc.*, 486 F. Supp. 3d 468, 476 (D. Mass. Sept. 11, 2020); *C.T.* v. *Tetteh*, No. MRS-L-1723-23 (N.J. Super. Ct., Feb. 8, 2024); *Browne* v. *Lyft, Inc.*, 219 A.D.3d 445, 446-47 (2d Dep't 2023); *Coughlin* v. *Uber Techs., Inc.*, No. 03083, at 1 (Pa. Ct. C.P. Philadelphia Cnty., June 12, 2020).

example, the California Superior Court overseeing the Judicial Council Coordination Proceedings ("JCCP") dismissed all claims for vicarious liability with prejudice on the basis that Uber "cannot be held vicariously liable for the alleged sexual assaults committed by its drivers because such conduct falls outside the scope of employment." *In Re: Uber Rideshare Cases*, CJC-21-005188, at 4 (Super. Ct. S.F. Cnty. June 22, 2023) ("*JCCP Demurrer Order*"), Atkins Decl. Ex. 4.  Drawing from *Lisa M.*, the court held that the plaintiffs failed to allege that the drivers were acting for purposes other than "personal gratification" or that their "sexual assaults were engendered by their alleged employment," as opposed to being motivated by the drivers' "close proximity to passengers[] in a confined environment." *Id.* at 6; *see also Jane Doe* v. *Uber Techs., Inc.*, 2019 WL 6251189, at *4-5 (finding no vicarious liability because "the work duties" of a driver "do not involve any physical contact whatsoever," and thus sexual "assault was the independent product of the assailant's aberrant decision to engage in conduct unrelated to his duties.").  The JCCP ruling conformed with other rulings across the nation.

## B.  Alleging Common Carrier Status Does Not Support Vicarious Liability

Plaintiffs argue that the "scope of employment" test does not apply to "common carriers." Compl. ¶ 425.  Uber is a technology company, not a common carrier, but it does not matter for this Motion:  common carrier claims are negligence based, not some form of strict liability for the intentional torts committed by employees *outside the scope of their employment*.  To hold otherwise would contradict vicarious liability case law discussed above and would actually nullify the statutory and judicial standards that govern common carriers.[3]

---

[3] Although Uber does not ask that it be resolved on this Motion, Uber is not a common carrier, *i.e.*, "one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages."  Cal. Code Civ. Proc. § 2168.  The Uber App is available only to individual registered users who sign up privately for an account by inputting personal and financial information and agreeing to Uber's contractual terms and conditions; Uber can deactivate user accounts of riders at any time; and Uber does not own the vehicles used by any of the drivers.  Other courts, in assessing this issue, have found in Uber's favor.  *See, e.g.*, *Jane Doe* v. *Uber Techs., Inc.*, 20-cv-8446 (S.D.N.Y. July 28, 2021); *Nyrkkanen* v. *Uber Techs., Inc.*, No. 200901485 (Utah Dist. Ct. Aug. 9, 2022); *Strand* v. *Hoover Techs., Inc.*, No. 19-CI-004701 (Ky. Cir. Ct. Nov. 29, 2022); *Hesketh* v. *Lumbera*, No. 30-2017-00903976-CU-PA-CJC (Orange Cnty. Super. Ct. Apr. 21, 2022); *Nevitt* v. *Uber Techs., Inc.*, No. CGC-19-573849 (San Francisco Cnty. Sup. Ct. Dec. 20, 2022) (confirming arbitration award based on finding that Uber is not a common carrier).

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW        Case No. 3:23-md-03084-CRB

Common carrier liability is based on a breach of a heightened duty of care - - *i.e.*, negligence.  But it is based on a breach of a duty of care nonetheless which, if proven, may result in direct liability for the carrier.  Under the common carrier statute in California, "[a] carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." Cal. Code Civ. Proc. § 2100.  Thus, even if Uber were a common carrier (which it is not), the California Supreme Court has held that common carriers "are not, however, insurers of their passengers' safety."  *Lopez* v. *S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 785 (1985); *see Gomez* v. *Superior Court*, 35 Cal. 4th 1125, 1130 (2005).

Plaintiffs' theory of common carrier vicarious liability would subvert common carrier law by turning Uber into an insurer of rider safety absent a breach of duty and, in Plaintiffs' words, "whether or not the sexual assault was beyond the scope of employment."  Compl. at ¶ 425.  The California common carrier statute does not provide, and the California Supreme Court has never held, that common carriers can be vicariously liable for the tortious conduct of employees regardless of the scope of employment.  That is because the doctrinal basis of vicarious liability, *respondeat superior*, is predicated on employee conduct that is within the scope of employment. *See, e.g.*, *Maria D.*, 85 Cal. App. 4th at 134.  Plaintiffs can try to prove that Uber is *directly* liable for breaching the applicable duty of care - - *i.e.*, negligence - - but it cannot plead a cognizable claim of *vicarious* liability absent factual allegations sufficient to plausibly conclude that a driver acted within the scope of employment.  *See Jane Doe* v. *Uber Techs.*, No. 20STCV48919, at 5-6 (Super. Ct. L.A. County June 16, 2021), Atkins Decl. Ex. 7.  That is why Plaintiffs have included a separate cause of action for common carrier negligence.  *See* Compl. at ¶¶ 386-400.[4]

The 68-year old decision of *Berger* v. *Southern Pacific Co.*, 144 Cal. App. 2d 1 (1956), does not, as the JCCP plaintiffs argued, save the vicarious liability claims.  In the six-plus decades

---

[4] The California Supreme Court has avoided conflating vicarious liability with strict liability.  *See Lisa M.*, 12 Cal. 4th at 302 ("To hold medical care providers strictly liable for deliberate sexual assaults . . . would be virtually to remove scope of employment as a limitation on providers' vicarious liability."); *Farmers*, 11 Cal. 4th at 1004 ("[T]he law is clear that an employer is not strictly liable for all actions of its employees during working hours."); *John R.*, 48 Cal. 3d at 451 (rejecting application of "the doctrine of respondeat superior to impose, in effect, strict liability").

since it was decided, *Berger* has never been cited by a single California appellate court for the proposition that common carriers are vicariously liable for the tortious conduct of employees outside the scope of their employment.  That is not very surprising, as *Berger* makes no mention of vicarious liability or respondeat superior.  To read *Berger* as creating an unexpressed and never-repeated exception to the principles of vicarious liability would vitiate (1) the long-established rule that employers cannot be liable for their employees' torts unless they are within the scope of employment; (2) the California Supreme Court's holdings that common carriers are not insurers; and (3) the standard created by Code of Civil Procedure section 2100 and the case law that common carriers are liable only for breaches of their own duty of care.[5]  For that reason, the JCCP court held: "*Berger* does not support [the] contention that a common carrier may be held vicariously liable for intentional sexual torts of its employees or agents committed *outside* the scope of their employment."  *See JCCP Demurrer Order*, at 10-11 (emphasis in original). Likewise, in another sexual assault case against Uber, the trial court held that to adopt the interpretation of *Berger* advanced by the plaintiff there, "would absorb the rule of vicarious liability set forth in *Lisa M.* and other authorities." *See also Jane Doe*, 20STCV48919, at 6. This Court should come to the same conclusion.

### C.      Plaintiffs' Ratification Theory Fails

Plaintiffs fail to plead facts that would establish that Uber is vicariously liable for the alleged misconduct of the accused drivers under a theory of ratification.  Compl. ¶¶ 436-39 "Ratification is the voluntary election by a person to <u>adopt in some manner as his own an act which was purportedly done on his behalf</u> by another person, the effect of which . . . is to treat the act as if originally authorized by him."  *Rakestraw* v. *Rodrigues*, 8 Cal. 3d 67, 73 (1972) (emphasis added).

Plaintiffs allege that Uber ratified the independent drivers' alleged assaults because it was, as a general matter, "aware of the scope and scale of sexual assaults" by drivers.  Compl. ¶ 437.

---

[5] A pair of California Supreme Court cases decided three decades after *Berger* make clear that *Berger* stands for the proposition that common carrier liability is a form of direct liability for a common carrier's breach of its duty of care, not a species of strict or vicarious liability. *See Victoria* v. *Superior Court*, 40 Cal. 3d 734, 745 (1985); *Lopez*, 40 Cal. 3d at 785.

That misapprehends what ratification is.  Ratification requires that the defendant have "actual knowledge" of a *specific* agent's *specific* alleged misconduct.  Judicial Council of California Civil Jury Instruction 3710 (requiring that "[*name of defendant*] learn[] of [*name of agent*]'s unauthorized conduct"; *Shultz Steel Co.* v. *Hartford Accident & Indem. Co.*, 187 Cal. App. 3d 513, 519 (1986) (employer may be vicariously liable "for an act [it] did not originally authorize" if, and only if employer "learned of [its] agent's [wrongful conduct] and affirmed it, and thus made it his own"); *McCall* v. *Safety Consultant Servs., Inc.*, 2010 WL 3399892, at *6 (Cal. Ct. App. Aug. 31, 2010) (unpublished) (employer cannot be liable for ratification based on employee's acts of misconduct other than the one that is the subject of plaintiff's complaint).

Moreover, the Complaint does not allege that Uber took any action to adopt "as [its] own conduct" what any specific drivers allegedly did to the specific Plaintiffs.  *Garcia ex rel. Marin* v. *Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1202 (E.D. Cal. 2009); *see also Fabricant* v. *Elavon, Inc.*, 2020 WL 11884505, at *6 (C.D. Cal. Aug. 25, 2020).  Instead, Plaintiffs allege that Uber "failed to respond adequately to reports of sexual misconduct, failed to adequately investigate reports of sexual misconduct, failed to report sexual misconduct to law enforcement, and reinstated drivers after complaints of misconduct."  Compl. ¶ 438.  But ratification requires factual allegations showing that the defendant affirmatively adopted or affirmed the specific conduct of a specific individual - - *i.e.*, the defendant is responsible for an agent's conduct if the defendant approved that specific conduct.  *See* Judicial Council of California Civil Jury Instruction 3710 (requiring, after learning of the agent's misconduct, that "[*name of defendant*] then approved [*name of agent*]'s conduct"); *see also Garcia*, 627 F. Supp. 2d at 1202.  Plaintiffs here are attempting to base their theory of ratification on what is essentially a negligence claim - - that Uber failed to take the appropriate actions to "redress the issue."  Compl. ¶ 437.  But that is not enough to plead that Uber adopted any driver's conduct "as [its] own act."

### D.    CPUC § 5354 Does Not Create Vicarious Liability

Plaintiffs allege that Uber is vicariously liable for conduct by independent drivers by virtue of a California Public Utilities Commission regulation that provides:

> In construing and enforcing the provisions of this chapter **relating to the prescribed privileges and obligations of the holder of a permit or certificate issued hereunder**, the act, omission, or failure of any officer, agent, or employee, or person offering to afford the authorized service with the approval or consent of the permit or certificate holder, is the act, omission, or failure of the permit or certificate holder.

Cal. Pub. Util. Code ("CPUC") § 5354 (emphasis added); *see* Compl. ¶¶ 440-44.  But section 5354 does not create a basis for vicarious liability.  The first clause of section 5354 limits its application to "construing and enforcing the provisions" of the CPUC chapter governing "Charter-Party Carriers of Passengers," including TNCs.  Cal. Pub. Util. Code § 5354.  It does not impose on TNCs tort liability for *any* "act, omission, or failure" by a driver, much less vicarious tort liability.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM FOR "NON-DELEGABLE DUTIES"

The Complaint alleges that "the scope of employment" for vicarious liability "does not apply because the drivers' torts were a breach of Uber's non-delegable duties," Compl. ¶ 426, and that Uber is liable for breaching so-called "Other Non-Delegable Duties to Provide Safe Transportation" (Cause of Action F), *id.* ¶¶ 401-17.  In short, Plaintiffs seek to hold Uber vicariously liable for alleged criminal assaults by drivers far *outside* the scope of any alleged employment.[6]  That result is not supported by the non-delegable duty doctrine.

Under the doctrine of non-delegable duties, "a party may delegate the performance of a duty but not the liability for its breach."  *Martin* v. *PacifiCare of California*, 198 Cal. App. 4th 1390, 1405 (2011).  One cannot escape responsibility for the performance *of its own duty* "by entrusting it to an independent contractor."  *Felmlee* v. *Falcon Cable TV*, 36 Cal. App. 4th 1032, 1036 (1995).  Here, Plaintiffs do not - - and cannot - - plead facts showing that Uber decided to assign, subcontract, or delegate its *own* alleged duties to drivers.  According to the Complaint itself, Uber *itself*, not drivers, negligently performed Uber's alleged responsibilities by failing to, *e.g.*, "adapt or improve its safety procedures," "warn passengers of the risk of Uber riders," "adequately vet new drivers," "establish and maintain and appropriate and robust system for receiving passenger complaints of sexual misconduct," and "use the utmost care and vigilance to

---

[6] *Chee* v. *Amanda Goldt Prop. Mgmt.*, 143 Cal. App. 4th 1360, 1375 (2006) ("The doctrine of nondelegable duty . . . is simply a form of vicarious liability.").

protect Plaintiffs from its own drivers." *See* Compl. ¶ 365.  The Complaint does not allege, for example, that Uber delegated to drivers the development of safety features or investigations regarding rider complaints.[7]  Invoking a non-delegable duty is not simply "a substitute for liability based on negligence." *Maloney* v. *Rath*, 69 Cal. 2d 442, 447 (1968).

In any event, a principal is not liable "for every negligent act of an independent contractor" simply because the principal itself owes some non-delegable duty. *Bull* v. *Clippinger*, 2014 WL 2106782, at *4 (Cal. App. May 20, 2014) (unpublished).  For the alleged torts to fall within the non-delegable duty doctrine, it must be "intimately connected with the work authorized" by the principal and must be "such as is reasonably likely from [the] nature" of the work.  *Snyder* v. *So. Cal. Edison Co.*, 44 Cal. 2d 793, 801 (1955); *see also Bull*, 2014 WL 2106782, at *4 (principal not liable for "careless act by an individual worker without any logical connection to the structures or condition of the Property"); *Campbell* v. *Sec. Pac. Nat. Bank*, 62 Cal. App. 3d 379, 386-87 (1976) (doctrine of non-delegable duties was "inapposite" where a bank's independent contractor intentionally hit plaintiff with his own car in the course of repossessing it); *see also LaCount* v. *Henzel Phelps Constr. Co.*, 79 Cal. App. 3d 754, 767 (1978) (discussing *Elder* v. *Pacific Tel. Co.*, 66 Cal. App. 3d 650, 676 (1977)).

Finally, the non-delegable duty doctrine is not meant to apply to intentional torts beyond an independent contractor's authorized work, but to hold an "employer liable for the <u>negligence</u> of the independent contractor" in performing the principal's duties.  Restatement (Second) of Torts ch. 15, topic 2, introductory note (emphasis added); *Campbell*, 62 Cal. App. 3d at 387 (observing that because the doctrine is "specifically limited in application to cases where the <u>negligence</u> of the independent contractor constitutes the basis for liability," there was "no authority for holding the [principal] liable for the intentional torts" of its independent contractor (emphasis added)).  Here, Plaintiffs accuse the drivers not of negligence but of deliberate and intentional torts of the most heinous kind:  sexual assault.  Compl. ¶ 35.

---

[7] The so-called "duty to provide safe transportation," if it exists at all, is functionally the same thing as the common carrier duty.  *See* Restatement (Second) of Torts § 314A.  Plaintiffs' purported cause of action for "other non-delegable duties" seeks to repackage the common carrier negligence claim to give Plaintiffs multiple bites at the same basic allegation.

### III.     PLAINTIFFS' FRAUD-RELATED CLAIMS SHOULD BE DISMISSED

The requisite elements of an intentional misrepresentation claim are:  (1) misrepresentation of fact, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage.  *Chapman* v. *Skype Inc.*, 220 Cal. App. 4th 217, 230-31 (2013).[8]  Claims for fraud must satisfy the heightened pleading standard of Rule 9(b) by "stat[ing] with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Such claims must be pled with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz* v. *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotations omitted); *see also Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

Here, by definition, the Complaint cannot satisfy Rule 9(b) because it does not allege any facts specific to any Plaintiff.  While the Complaint describes an assortment of alleged misstatements by Uber over a broad period of time, it does not allege (a) which specific Plaintiff, (b) saw which specific statement, (c) where or when she specifically saw it, (d) how that specific Plaintiff actually and justifiably relied on the specific statement, or (e) how that specific Plaintiff was damaged as a result.  That this is an MDL does not relieve Plaintiffs of having to plead with specificity, nor does it dilute the requirements of Rule 9(b).  In an MDL, "to satisfy the requirements of Rule 9(b), plaintiffs must 'inject precision and some sort of substantiation into their allegations of fraud.'"  *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 2001 WL 1266317, *7 (D.N.J. Sept. 30, 1997) (citation omitted); *see also JCCP Demurrer Order*, at 12-15.

#### A.      The Complaint Fails to Plead Reliance

To withstand dismissal of a fraud claim under California law, each "plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations."  *Small*, 30 Cal. 4th at 184.  Actual reliance requires that each Plaintiff allege with particularity that she saw or heard a specific

---

[8] To the extent that Plaintiffs allege a cause of action for negligent misrepresentation, the elements largely overlap with the elements of intentional misrepresentation, *Small* v. *Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003), and the claim fails for the same reasons as their intentional misrepresentation claims.

purported misrepresentation and that the alleged misrepresentation was "an immediate cause of the plaintiff's conduct . . . [and] absent such representation, the plaintiff would not, in all reasonable probability, have entered into the transaction" that led to the injury. *Cadlo* v. *Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004), as modified (Dec. 30, 2004).

Reliance is thus highly individualized and specific to each plaintiff and "therefore, generally alleging reliance is insufficient." *JCCP Demurrer Order* at 13. For the misrepresentation claims to survive, the Complaint must allege - - but does not allege - - specific facts, based on each Plaintiff's specific individual experiences, supporting that each saw or heard specific representations by Uber and that those specific representations induced her to arrange a ride through the Uber App or enter a vehicle arranged through the App.

The *In re Ford Motor Co. Ignition Switch Prods. Liab. Lit.* MDL is instructive. That MDL involved over 100 plaintiffs alleging that defendant Ford "fraudulently misinform[ed] the public" regarding ignition switches. 2001 WL 1266317, at *6. Though plaintiffs "described with some particularity the nature of Ford's alleged misrepresentations to the public and the mediums through which these statements were made," the court found that the complaint was "nonetheless deficient in that it fail[ed] to describe with any particularity how plaintiffs relied upon the alleged misrepresentations and omissions of defendant, or how such reliance resulted in damages." *Id.* at *7-8. Just like the Complaint here, the complaint "fail[ed] to state what advertisement or other statement by Ford was heard or seen and then relied upon by each . . . plaintiff." *Id.* at *8.

Although the Complaint lists an assortment of "examples" of alleged representations by Uber, Compl. ¶ 188, it does not allege particularized facts indicating which specific Plaintiff was aware of and saw which specific representations and which specific Plaintiff then relied upon those representations in choosing to use Uber's services. "It is implausible, to state the obvious, that every one of [the] individual Plaintiffs actually saw and relied on each and every one of the statements and other representations." *JCCP Demurrer Order* at 14.

**B.** **Plaintiffs Fail to Identify the Alleged False Statements with Specificity**

The Complaint also fails to allege with specificity the what, when, where, and how of the alleged misrepresentations and to which specific Plaintiff a specific misrepresentation was made.

-13-

1   *Vess*, 317 F. 3d at 1106. That pleading defect would require dismissal even if there were only a

2   single Plaintiff. *See, e.g.*, *Estate of Stella Yeh, et al.* v. *Uber Techs., Inc., et al.*, CGC-20-584408,

3   at 4 (Super. Ct. S.F. County Aug. 6, 2021), Atkins Decl. Ex. 5 (failure to identify the "specific

4   representations the [passenger] purportedly read or heard, when or where she read or heard them,"

5   and "which misrepresentations she purportedly relied upon" was fatal to plaintiff's claims);

6   *Mewawalla* v. *Middleman*, 601 F. Supp. 3d 574, 600 (N.D. Cal. 2022); *Teed* v. *Chen*, 2023 WL

7   2277104, at *4-5 (N.D. Cal. Feb. 28, 2023).[9]  But it is a major problem here because the Complaint

8   alleges a menu of allegedly false statements, none of which is connected to any specific Plaintiff.

9   Instead, Plaintiffs make only general allegations that Uber made representations to "Plaintiffs and

10  the general public" and that "Uber made intentional misrepresentations of fact to all users of the

11  Uber App." Compl. ¶¶ 369-70.  The plaintiffs in the JCCP attempted a similar approach, which

12  the JCCP court rejected.  *JCCP Demurrer Order*, at 15.  That Plaintiffs here attached alleged

13  "[e]xamples of safety-based marketing" by Uber also does not change the result because these self-

14  selected examples are still not tied to any specific Plaintiff, to any time, or to any place.

15       For example, in *In re Volkswagen Clean Diesel*, the complaint "detail[ed] specific

16  advertisements and marketing materials," but the court found that the named plaintiffs' allegations

17  "lack[ed] sufficient detail about the particular circumstances surrounding VW's

18  misrepresentations to Plaintiffs."  349 F. Supp. 3d 881, 914 (N.D. Cal. 2018).  In particular, many

19  of the named plaintiffs failed to identify "the specifics of what was represented" and none

20  identified when and where they saw the advertising. *Id.* at 915.  The court found this dispositive,

21  emphasizing that "such <u>linking allegations</u> are required to satisfy Rule 9(b)." *Id.* (collecting cases)

22  (emphasis added).  The Complaint here suffers from the same defect.

23

24

25  _____

26  [9] *See also Minzer* v. *Barga, et al.*, 2020 WL 2621710, at *6 (N.Y. Super. Ct. May 22, 2020)
    (dismissing fraud claims because plaintiff alleged "he was aware of Uber's alleged safety
    promises" but not "how or when [he] came to possess this information"); *Rodriguez* v. *Uber*
27  *Techs., Inc.*, No. 2020-CA-1823, at *4-5 (Aug. 9, 2021) (Fla. 9th J. D. Cir. Ct. Osceola County
    Aug. 9, 2021) (dismissing fraud claims because plaintiff made only "bare allegations of fraudulent
28  conduct" and did not "identify[] the time, place, and manner in which the conduct occurred").

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW   Case No. 3:23-md-03084-CRB

**C.    The *McKnight* Class Action Settlement Bars Many Misrepresentation Claims**

1.    The Complaint Tries to Evade the *McKnight* Settlement

By force of the June 1, 2017 Settlement of the *McKnight* v. *Uber* class action, 14-cv-05615 (N.D. Cal.), Plaintiffs here who were members of that class, and did not opt out, released Uber from "any claim arising out of or relating to [Uber's] representations or omissions regarding [1] background checks, [2] safety, or [3] the Safe Rides Fee."  *McKnight* Am. Stip. of Settlement ¶ 31(a) (June 1, 2017) (the "Release"), Atkins Decl. Ex. 2.[10]   Still, the Complaint includes allegations that are almost identical to those in the complaint in *McKnight*.  *McKnight* Complaint, Atkins Decl. Ex. 1.[11]   For example:

- The *McKnight* Complaint alleged that Uber misrepresented that "Uber is committed to connecting you with the safest ride on road."  The Complaint here alleges that Uber falsely advertised "the safest ride on the road."  *McKnight* Compl. ¶ 26; Compl. ¶¶ 20, 206, 207.

- The *McKnight* Complaint alleged that Uber misrepresented that it set "the strictest safety standards possible."  The Complaint here alleges that Uber misrepresented that it set "the strictest standards possible."  *McKnight* Compl. ¶ 26; Compl. ¶¶ 20, 207.

- The *McKnight* Complaint alleged that Uber misrepresented that drivers are "thoroughly screened through a rigorous process we've developed using industry-leading standards."  The Complaint here alleges that drivers are screened by "an industry-leading background check process."  *McKnight* Compl. ¶ 27; Compl. ¶¶ 20, 207.

- The *McKnight* Complaint alleged that safety standards "aim to go above and beyond local requirements."  The Complaint here alleges that Uber misrepresented that it "aims to go above and beyond local requirements" with "industry leading" background checks.  *McKnight* Compl. ¶ 26; Compl. ¶ 20.

*McKnight* was settled pursuant to an Amended Stipulation of Settlement, dated June 1, 2017, which provided that all class members who did not opt out released claims "of any nature whatsoever, known or unknown, . . . which Plaintiffs and Class Members have or may have arising out of or relating to any allegations made in the Action, or any legal theories that could have been raised based on the allegations in the Action."  *McKnight* Am. Stip. of Settlement ¶ 31 (defining

---

[10] Where a defendant moves to dismiss a claim released by a prior settlement agreement, the Court may consider the settlement agreement because it is "integral to the plaintiff's claims and its authenticity is not disputed."  *Lesnik* v. *Eisenmann SE*, 374 F. Supp. 3d 923, 936 (N.D. Cal. 2019).  Uber respectfully requests that this Court take judicial notice of the *McKnight* Release, Complaint, and Mandate.  *See* Atkins Decl. Exs. 1-3.

[11] Plaintiffs cite the class action claims that culminated in the *McKnight* settlement.  Compl. ¶ 208.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW       Case No. 3:23-md-03084-CRB

"Released Claims").  "The Released Claims include, but are not limited to, any claim arising out of or relating to [Uber's] representations or omissions regarding background checks, safety, or the Safe Rides Fee."  *Id.*[12]  In exchange for the Release, Uber agreed, among other things, that it would cease any use of anything called a "Safe Rides Fee" beyond early 2016.  The Settlement Class included all passengers who "used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories," "from January 1, 2013 to January 31, 2016," and did not "elect exclusion or opt out from the Class."  *Id.* ¶¶ 6, 8.[13]  Therefore, any Plaintiff here who was a class member already released Uber from "any claim arising out of or relating to [its] representations or omissions regarding background checks, safety, or the Safe Rides Fee."  *Id.* ¶ 31.

The Complaint's total lack of specificity as to which Plaintiffs relied on which alleged misrepresentations and omissions, and when and where they did so, prevents Uber and the Court from determining which Plaintiffs are barred by the Release from pursuing which allegations about which alleged misrepresentations and omissions.  Even so, it is clear that there are Plaintiffs in the class - - i.e. individuals who "from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories."  *Id.* ¶ 6.[14]  Moreover, no claims relating to the "Safe Rides Fee" could have survived the *McKnight* settlement because that fee was terminated as part of the settlement and therefore did not exist after early 2016.  The MDL cannot be used to avoid the enforcement of the *McKnight* settlement by lumping all the Plaintiffs together with no specifics.  Put simply, either

---

[12] Final judgment in the *McKnight* action, following resolution of appeals, was entered by the Ninth Circuit on December 22, 2022.  *McKnight* Mandate, Atkins Decl. Ex. 3.  The release was effective on December 23, 2022.  *McKnight* Am. Stip. of Settlement ¶ 16.

[13] The *McKnight* Release states that "Class Members are not releasing any claims for personal injuries."  *McKnight* Am. Stip. of Settlement ¶ 31.  That exception immediately follows the release of "any claim arising out of or relating to Defendants' representations or omissions regarding background checks, safety, or the Safe Rides Fee."  *Id.*  Thus, the personal injury exception applies only where the claim relates to something other than an alleged representation or omission about background checks, safety, or the Safe Rides Fee.

[14] Uber has identified 21 Plaintiffs who allege incidents in California, Florida, Illinois, New York, and Texas who released claims pursuant to the Release.  Declaration of Peter Sauerwein ¶ 4.  Uber is not aware of any MDL Plaintiff who opted out of the *McKnight* class action settlement.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW          Case No. 3:23-md-03084-CRB

the Plaintiffs were part of the settlement and barred from alleging the released claims or the Plaintiffs otherwise were not charged a Safe Rides fee and cannot assert a claim based on the fee.

2.      The "Safe Rides Fee" Allegations Should Be Dismissed or Stricken

There is at least one allegation that cannot stand and should be dismissed now with prejudice and/or stricken in light of the *McKnight* settlement:  the allegation that the "Safe Rides Fee" constitutes an actionable misrepresentation or omission.  Compl. ¶¶ 203-04.  Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  As the Ninth Circuit has instructed, "'immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded," and "'impertinent' matter consists of statements that do not pertain, and are not necessary to the issues in question."  *Fantasy, Inc.* v. *Foberty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Here, the allegations about the "Safe Rides Fee" being misleading are undeniably immaterial because they cannot, given the *McKnight* settlement, support any misrepresentation or omission claims.  *First*, as to Plaintiffs who were members of the *McKnight* class, any claims arising from or relating to the Safe Rides Fee were released.  *See supra* Section III.C.2.  *Second*, it follows from the definition of the *McKnight* class that any Plaintiffs not in the class were those who did not obtain a "Uber Service With a Safe Rides Fee," and therefore cannot claim to have been misled by the Safe Rides Fee.  *Third*, as the use of the Safe Rides Fee was enjoined as part of the Settlement, no Plaintiff can have a claim based on a program that no longer existed after early 2016.

D.      **The Complaint Alleges Representations That Are Not Actionable**

Although the Complaint includes a list of alleged misrepresentations, it does not plead facts showing that those statements are false or in what way they are false.  *See Palmer* v. *Apple Inc.*, 2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016).  The Complaint alleges, for example, that Uber made representations about the existence of "safety features built into every ride," including that "911 help is a swipe away" and that RideCheck "can help detect if your trip goes unusually off course."  Compl. ¶ 227, Appx. A, Ads 8, 28, 32; *see, also* Appx. A, Ads. 7, 9, 10, 23, 24, 26,

-17-

27.  The Complaint does not, however, allege that "safety features" are <u>not</u> built into every ride; that "911 help" is <u>not</u> a swipe (of the finger) away; or that the RideCheck feature does <u>not</u> "help detect" trips that go off course.  Likewise, the Complaint points to Uber's statements that drivers "must undergo a multi-step safety screen" and that Uber "rescreens drivers every year."  Compl. ¶ 215; *see also id.* ¶ 216; Appx. A, Ad. 30.  Nowhere does the Complaint allege, however, facts showing that background checks are <u>not</u> used to vet drivers; that there is <u>not</u> a multi-step process; or that there are <u>not</u> background checks run every year.  In short, the Complaint does not "plead what is false or misleading" about the statements cited in the Complaint.  *Ahern* v. *Apple, Inc.*, 411 F. Supp. 3d 541, 559 (N.D. Cal. 2019) (citations omitted).

What Plaintiffs do allege is that Uber should have different and additional safety features and should use different background checks.  *See* Compl. ¶¶ 365 (a)-(p)2.  But that belief does not render false Uber's statements about the safety features it does, in fact, have or about the background checks that are, in fact, conducted.

The Complaint also alleges statements that are not falsifiable, and thus are not actionable.  Alleged false statements must "pertain to past or existing material facts," *Cansino* v. *Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014), and must be "amenable to general verification or falsification," *Ahern*, 411 F. Supp. 3d at 557.  Accordingly, statements of opinion "are not grounds for a misrepresentation cause of action."  *Gentry* v. *eBay, Inc.*, 99 Cal. App. 4th 816, 835 (2002).  Nor are "[s]tatements or predictions regarding future events," *Cansino*, 224 Cal. App. 4th at 626, or puffing or boasting in advertising.  *Consumer Advocs.* v. *Echostar Satellite Corp.,* 113 Cal. App. 4th 1351, 1356, 1361 & n.3 (2003).

Here, the Complaint alleges numerous such non-actionable statements by Uber, including: "Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone;" "That's why we're committed to safety—from the creation of new standards to the development of technology with the aim of reducing incidents;" and "Uber is dedicated to keeping people safe on the road."  Compl. ¶¶ 211, 221; *see also id.* Appx A. Ad 6.  These are not statements concerning "past or existing material facts."  *Cansino*, 224 Cal. App. 4th at 1469.  They are expressions of company pride and esteem communicated in aspirational

-18-

language that would not reasonably be understood to be subject to factual verification.  *See Ahern*, 411 F. Supp. 3d at 557 (holding that "everything is designed to work just the way you expect it to" is not subject to verification or falsification); *XYZ Two Way Radio Serv., Inc.* v. *Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) ("Many of the statements are couched in aspirational terms—'committed to,' 'aim to,' 'believe deeply'—that cannot be proven true or false.").  And they refer to "safety" in vague and general terms, without promising any specific standard of safety or guaranteeing absolute safety.  *See Consumer Advocs.*, 113 Cal. App. 4th at 1356, 1361 ("[t]he terms 'crystal clear video' and 'CD quality audio' . . . do not represent a specific quantifiable standard" and cannot "reasonably be understood as a promise of perfection"); *Cf. Hauter* v. *Zogarts*, 14 Cal. 3d at 104, 111-12 (1975).[15]

## E.   The Complaint Fails to Plead Fraudulent Omission or Concealment

Plaintiffs allege that Uber is liable for "misrepresentation by omission."  Compl. ¶ 368.  A claim of fraudulent omission or fraudulent concealment requires:  (1) concealment or suppression of a material fact, (2) a duty to disclose the fact to the plaintiff, (3) intent to defraud the plaintiff, (4) that the plaintiff was unaware of the fact and would have acted differently had she known it, and (5) resulting damage.  *Quackenbush* v. *Am. Honda Motor Co., Inc.,* 650 F. Supp. 3d 837, 845 (N.D. Cal. 2023); *see also Boschma* v. *Home Loan Ctr., Inc.,* 198 Cal. App. 4th 230, 248 (2011).  "Fraudulent omission claims, like fraudulent misrepresentation claims, are subject to Rule 9(b)."  *In re Volkswagen*, 349 F. Supp. 3d at 915 (citing *Kearns* v. *Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir. 2009)); *see also Siafarikas* v. *Mercedes-Benz USA, LLC,* 2021 WL 4147251, at *2 (E.D. Cal. Sept. 13, 2021).  This claim should be dismissed for the following reasons:

*First*, Plaintiffs do not allege an omission of a "material fact."  Instead, as discussed above, they state a number of accusations and opinions about the company:  Uber "failed to disclose the truth that Uber prioritized growth and driver supply over passenger safety"; Uber "failed to

---

[15] For this reason, courts have held that Uber marketing materials relating to safety - - many of them involving the same statements alleged here - - are non-actionable.  A Texas court held, for example, that safety-related "statements in Uber marketing materials . . . involve mere opinion or puffery."  *Am. Honda Motor Co.* v. *Milburn*, 668 S.W.3d 6, 33 (Tex. App. 2021).  A federal court held that Uber's general safety-related statements are distinguishable from "a claim of absolute safety."  *Fusco* v. *Uber Techs., Inc.*, 2018 WL 3618232, at *6, 8 (E.D. Pa. July 27, 2018).

disclose the truth that Uber failed to adequately protect passengers against sexual assault or harassment committed by drivers"; and Uber did not disclose "the truth of its priorities and lack of adequate safety mechanisms."  Compl. ¶¶ 372-74.  These are not allegations of undisclosed material facts, but derogatory characterizations of Uber.  The Complaint therefore fails to allege an omission or concealment with the factual specificity required by Rule 9(b).

*Second*, Plaintiffs fail to allege with the required particularity that Uber had a duty to disclose.  Such a duty arises only in four circumstances:  "(1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed."  *Collins* v. *eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011).  Plaintiffs fail to allege facts sufficient to show that any of these circumstances is present here.

**Fiduciary Duty**.  The Complaint does not allege that Uber had a fiduciary relationship with any Plaintiffs.  It alleges only, in a vague and conclusory fashion, that Uber "had a *special* relationship with the passengers."  Compl. ¶ 374(a) (emphasis added).  That is insufficient.  *Haddock* v. *Countrywide Bank, NA*, 2015 WL 9257316, at *10 (C.D. Cal. Oct. 27, 2015) (and finding the plaintiff "has not alleged any facts showing that a fiduciary relationship exists" where the complaint merely "mentions the phrase 'special relationship'").

**Exclusive Knowledge**.  The Complaint cannot adequately allege that Uber had exclusive knowledge of "material facts," when it has not alleged with specificity any undisclosed material facts.  Moreover, to the extent Plaintiffs are alleging that information relating to safety on the Uber App was not known or accessible to them - -  *i.e.*, that they "could not learn this information," *Ahern*, 411 F. Supp. 3d at 575  - - the Complaint alleges otherwise.  The Complaint alleges that it was in 2014 that Uber started receiving reports of sexual assault by drivers against riders.  Compl. ¶ 258.  It then cites a *New York Times* article *from 2014* called "Uber's System for Screening Drivers Draws Scrutiny," which details public and government criticism over Uber's driver screening process and the alleged rape of a passenger.  *Id.* ¶ 145 n.19; *see also id.* ¶ 151 (discussing

2014 investigation into Uber's driver screening); *id.* ¶ 260 n.60 (citing 2014 *New York Times* article about rape of passenger)*.*  Also in 2014, the original Complaint in the *McKnight* class action was filed, which alleged that Uber made misleading statements about passenger safety because, among other things, a woman allegedly (it was never proven) was attacked by a driver with a criminal background.  *McKnight* Compl. ¶ 53 n.2, Atkins Decl. Ex. 1.[16]  As discussed above, numerous Plaintiffs *in this case* were actually class members in *McKnight* and received payment in exchange for releases.  For those Plaintiffs, it certainly was not "difficult to discover" information about Uber safety-related statements, including about background checks.  *Collins*, 202 Cal. App. 4th at 256.

Then, as Plaintiffs themselves allege, in 2019 Uber released the 84-page 2017-2018 Safety Report detailing with statistical precision the number of incidents of the most severe forms of sexual misconduct on the platform.  Compl. ¶ 273.  Uber issued the Report even though it was not legally mandated to do so and even though doing so was above and beyond any industry standard (e.g., Lyft had not launched a report; there are also no notices or reports regarding sexual assaults on airplanes and cruises or at hotels despite the fact that sexual assaults occur in those industries too).  That directly contradicts Plaintiffs' accusation that Uber did not disclose facts about safety and, more generally, that Uber is the type of company that conceals such facts.  In sum, "general and conclusory allegations that [a company] owed a duty of disclosure because it was in a superior position . . . are not enough" to withstand a motion to dismiss, *Ahern*, 411 F. Supp. 3d at 576; *see also Herron* v. *Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (defendant did not have "exclusive knowledge" of product defect that had been subject of *Newsweek* article).

***Active Concealment***.  The Complaint alleges no facts to show that Uber actively concealed facts about the safety of "Uber rides."  Compl. ¶ 374(d).  On the contrary, as discussed immediately above, Uber affirmatively and voluntarily disclosed data about sexual assaults on the Uber App.  That Plaintiffs believe the Safety Report should have been issued sooner does not suffice because "[m]ere nondisclosure does not constitute active concealment," which requires facts supporting

---

[16]  The same alleged incident is discussed in the original complaint filed in December 2014. *McKnight* v. *Uber Techs., Inc.*, 14-cv-05615, ECF No. 1, ¶ 36.

1    that the defendant took "affirmative acts . . . in hiding, concealing or covering up" material facts.

2    *Herron*, 924 F. Supp. 2d at 1176 (citations omitted).

3         ***Partial Misrepresentations***.  "A partial representation claim may arise when the defendant

4    makes representations but does not disclose facts which materially qualify the facts disclosed, or

5    which render his disclosure likely to mislead."  *Herron*, 924 F. Supp. 2d at 1177 (internal

6    quotations omitted).  Thus, whether a "partial representation" is "misleading" depends on the

7    nature of both the disclosed and undisclosed facts.  *Collins*, 202 Cal. App. 4th at 255.  The

8    Complaint fails to allege facts supporting its contention that Uber made partial representations

9    because it does not allege with the specificity required by Rule 9(b) any "incomplete

10   misrepresentation."  Compl. ¶ 374(f).  The Complaint also fails to tie any alleged "undisclosed

11   facts" to any specific facts that Uber allegedly did disclose.[17]

12   **IV.   THE CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS**

13   **       NOT RECOGNIZED**

14        California law does not recognize a separate tort of NIED.  Instead, NIED is regarded by

15   California courts simply as the tort of negligence, and the question of whether Plaintiffs can

16   recover damages for alleged NIED is dependent on establishing the same elements as a claim for

17   negligence.  *See Klein* v. *Children's Hosp. Med. Ctr. of N. Cal.*, 46 Cal. App. 4th 889, 894 (1996);

18   *JCCP Demurrer Order*, at 16.  Because the claim for NIED is duplicative of and subsumed by the

19   negligence claims, it must be dismissed.  *Flynn* v. *Bagumyan*, No. BC69997, at 6-7 (Super. Ct.

20   L.A. County Oct. 25, 2018), Atkins Decl. Ex. 8.

21   **V.    PLAINTIFFS FAIL TO ALLEGE NEGLIGENT ENTRUSTMENT**

22        Plaintiffs' allegations do not support a claim for negligent entrustment.  Under California

23   law, "one is liable for injuries arising out of the negligent entrustment of a dangerous

24   instrumentality to a person who the supplier knows, or has reason to know, is a danger to himself

25   ───────────────
     [17] For the reasons stated *supra* Section III.A, Plaintiffs fail to allege reliance as to each particular
26   Plaintiff.  In order to plead reliance under a fraudulent concealment theory, a plaintiff must allege
     that "had the omitted information been disclosed, [the plaintiff] would have been aware of it and
27   behaved differently."  *Boschma*, 198 Cal. All. 4th at 350-51; *see also Barrett* v. *Apple Inc*., 523 F.
     Supp. 3d 1132, 1151 (N.D. Cal. 2021); *Hall* v. *Sea World Ent., Inc.,* 2015 WL 9659911, at *6
28   (S.D. Cal. Dec. 23, 2015); *Ehrlich* v. *BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919-20 (C.D.
     Cal. 2010).

or herself, or others." *Jacoves* v. *United Merch. Corp.*, 9 Cal. App. 4th 88, 116 (1992). Here, Plaintiffs allege that Uber permitted the independent drivers to use the Uber "product" and "trademarks." Compl. ¶ 363(n). However, Plaintiffs do not allege facts sufficient to show that these intangible items constitute "dangerous chattels" or "instrumentalities." *Todd* v. *Dow*, 19 Cal. App. 4th 253, 261 (1993). Plaintiffs also do not allege that any independent driver negligently used the Uber App or Uber's trademarks or that any such alleged negligent use proximately caused a particular Plaintiff's injury. *Lindstrom* v. *Hertz Corp.*, 81 Cal. App. 4th 644, 651 (2000).

## VI.   THE COMPLAINT'S STRICT PRODUCT LIABILITY CLAIMS FAIL AS A MATTER OF LAW

A manufacturer, distributor, or retailer of a product is liable in tort if a defect in the product causes injury while the product is being used in a reasonably foreseeable way. *Soule* v. *GM Corp.*, 8 Cal. 4th 548, 560 (1994) (internal citations omitted). As relevant here, defining whether there is a "product" at issue is "a condition precedent to successfully maintain the action." *Brooks* v. *Eugene Burger Mgmt. Corp.*, 215 Cal. App. 3d 1611, 1626 (1989). "Whether or not the subject object or instrumentality is a 'product' is a question of law for the trial court" to decide. *Id*.

Here, the Complaint fails to allege facts sufficient to show the Uber App is a "product" or "tangible personal property distributed commercially for use or consumption." Restatement (Third) of Torts: Prod. Liab. § 19. To the contrary, as the Complaint itself acknowledges, the Uber App provides a *service* of connecting riders with drivers. *See, e.g.*, Compl. ¶ 390 ("Uber charges standard fees for its services through its application."); *id.* ¶ 391 ("Any member of the public can use Uber's transportation services."); *see also id.* ¶¶ 13, 70, 73, 119, 179, 206, 352, 388, 408, 421, 429-30. Similarly, the California Legislature recognizes that TNCs provide a service. It defines TNCs as entities that "provide[] prearranged transportation services for compensation using an online-enabled application or platform to connect passengers with drivers using a personal vehicle." Cal. Pub. Util. Code § 5431(c); *see also, e.g.*, *id.* §§ 5440(a), 5440(c), 5440(d).

"Services, even when provided commercially, are not products." *Petitpas* v. *Ford Motor Co.*, 13 Cal. App. 5th 261, 272 (2017) (cleaned up). Given that most software is designed to provide a service, "most software does not fall within the purview of product liability law."

Raymond T. Nimmer, *Law of Comput. Tech.* § 12:41 (Nov. 2023 Update); *see also* Michael D. Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (3d ed. 2024 Supp.); Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005).  Accordingly, no California court assessing product liability claims has ever held that the Uber App is a "product" under applicable law and, in fact, numerous courts - - in California and elsewhere - - have held that the Uber App, and similar apps, are *not* products.[18]  For example, in the JCCP, the court sustained Uber's demurrer as to the product liability claims, relying on precedent that the Uber App is "intangible property" beyond the reach of product liability law. *JCCP Demurrer Order* at 17.  The court rejected plaintiffs' argument that the Uber App is tangible because it is "capable of being touched and seen," observing, "it is not the app that is being touched and seen, it is the phone." *Id.*; *see also Polanco* v. *Lyft, Inc.*, 2021 Cal. Super. LEXIS 60679, at *2-3 (Super. Ct. Orange County May 13, 2021); *see also Lucent Techs., Inc.* v. *Board of Equalization*, 241 Cal. App. 4th 19, 42 (2015) ("placing a computer program on storage media . . . does not thereby transmogrify the software itself into tangible personal property; the media is tangible, the software is not").

Even if the Uber App could be viewed in some respect as a product, Plaintiffs' product liability claims still would fail because the Uber App's "dominant role" and "primary objective" is providing a service by connecting drivers and riders. *JCCP Demurrer Order* at 18.  Courts have "not extended the doctrine of strict liability to transactions whose primary objective is obtaining services." *Ferrari* v. *Grand Canyon Dories*, 32 Cal. App. 4th 248, 258-59 (1995) (declining to

---

[18] *See, e.g.*, *Arruda* v. *Rasier, LLC*, No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024); *Martinez* v. *Uber Techs., Inc.*, No. 23STCV09795 (Cal. Super. Ct., Oct. 3, 2023); *Ramos* v. *Uber Techs., Inc.*, No. 22STCV33007 (Cal. Super. Ct. June 1, 2023); *Luna, Avelardo* v. *Uber Techs., Inc.*, No. 22STCV10806 (Cal. Super. Ct., Sept. 27, 2022); *Baxter-Aremtrout* v. *Lyft, Inc.*, No. 50-20210CA-013917 (Fla. Cir. Ct., Aug. 29, 2022); *Behuet & Hunt* v. *Uber Techs., Inc.*, 2022 WL 20318684, at *2 (Cal. Super. Ct. July 13, 2022); *Shannon* v. *Uber Techs., Inc.*, No. 21STCV42029 (Cal. Super. Ct., Apr. 15, 2022); *Flores* v. *Uber Techs., Inc.*, No. 19STCV24988  (Cal. Super. Ct., Mar. 22, 2022); *Norman* v. *Uber Techs., Inc.*, No. 21STCV35632 (Cal. Super. Ct. Mar. 8, 2022); *Cruz Lopez* v. *Uber Techs., Inc.*, No. 21CV376012 (Cal. Super. Ct. Dec. 7, 2021); *Polanco* v. *Lyft, Inc.*, 2021 Cal. Super. LEXIS 60679 (Cal. Super. Ct. May 13, 2021); *Toral* v. *Uber Techs., Inc.*, No. 20STCV02030 (Cal. Super. Ct. Apr. 14, 2021); *Jane Doe No. 1* v. *Uber Techs., Inc.*, 2020 Cal. Super. LEXIS 73095 (Cal. Super. Ct. Nov. 30, 2020); *see also Ziencik* v. *Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (same as to Snapchat); *Jackson* v. *Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022) (same as to Airbnb).

impose liability on a raft trip company because defendants "provided a service"); *see also Hennigan* v. *White*, 199 Cal. App. 4th 395, 403 (2011).  In sustaining Uber's demurrer in the JCCP, the court held that "[t]he Uber App is no more a 'product' . . . than is a telephone that a customer uses to call a taxi."  *JCCP Demurrer Order* at 18.  Similarly, in *Doe No. 1*, the court held, based on similar allegations as those alleged here, "the Uber App was used to gain a service: a ride."  *Jane Doe No. 1*., 2020 Cal. Super LEXIS 73095, at *19; *see also Cruz Lopez*, No. 21CV376012, at 7, Atkins Decl. Ex. 6; *Polanco*, 2021 Cal. Super. LEXIS 60679, at *3.

Even setting aside the threshold issue of whether the Uber App is a product, the Complaint also fails to state a claim for strict product liability because it does not allege any defect or condition necessitating a warning.  Nowhere does the Complaint allege that the Uber App had a glitch or bug that impaired its ability to connect riders with drivers or that the Uber App had an inherent and dangerous design flaw that prevented it from performing its function of connecting riders with drivers.[19]  Likewise, the Complaint does not allege that the design of the Uber App itself, such as its coding sequences that connect riders with drivers, is dangerous when used as intended and therefore requires warnings.[20]

Instead, Plaintiffs contend that Uber negligently failed to prevent the sexual misconduct of independent drivers because it implemented inadequate safety measures and background checks.  Compl. ¶ 473.  But Uber's alleged "failure to permit passengers to select drivers of the same gender" on the Uber App (*id.* ¶ 473(b)), for example, is not a defect in the software's function of connecting riders with drivers.  Nor is Uber's supposed failure to include a feature that would "ship dash cameras to drivers."  *Id.* ¶ 487(a).  These are simply safety measures that Plaintiffs think Uber should take, but they do not go to the design of the software itself.  *See Brooks*, 215 Cal. App. 3d at 1627 (rejecting product liability claim because the plaintiff "merely designate[d]" it as a product

---

[19] Defective design may be established under two theories:  "(1) the consumer expectations test, which asks whether the product performed as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner; or (2) the risk/benefit test, which asks whether the benefits of the challenged design outweigh the risk of danger inherent in the design."  *Saller* v. *Crown Cork & Seal Co.*, 187 Cal. App. 4th 1220, 1231–32 (2010).

[20] A failure-to-warn claim must "allege[] that the product itself is unlawfully dangerous unless accompanied by sufficient warnings or instructions."  *Kurns* v. *R.R. Friction Prods. Corp.*, 565 U.S. 625, 635 (2012).

1    liability claim when, in fact, it was based on negligence); *Lucas* v. *City of Visalia*, 726 F. Supp. 2d

2    1149, 1155 (E.D. Cal. 2010).  Product liability cannot be used as a catch-all law to "impose

3    absolute liability" on Uber, *O'Neil* v. *Crane Co.*, 53 Cal. 4th 335, 363 (2012) (citation omitted),

4    or make Uber "the insurer of [] safety," *Daly* v. *General Motors Corp.*, 20 Cal. 3d 725, 733 (1978),

5    absent an allegation that the Uber App itself is defective in design and performance.

6           The strict product liability claims fail for the additional reason that the Complaint does not

7    plausibly allege causation with respect to any individual Plaintiff.  *See O'Neil*, 53 Cal. 4th at 349;

8    *State Dept. of State Hosps.* v. *Superior Ct.*, 61 Cal. 4th 339, 352 (2015).  A plaintiff must plead

9    "cause in fact," sometimes referred to as "'but-for' causation." *State Hospitals*, 61 Cal. 4th at 352.

10   To establish but-for causation, the plaintiff must plead and prove facts showing that it is "more

11   likely than not that the conduct of the defendant was a cause in fact of [plaintiff's harm]." *See*

12   *Viner* v. *Sweet*, 30 Cal. 4th 1232, 1243 (2003) (citation omitted); *Modisette* v. *Apple Inc.*, 30 Cal.

13   App. 5th 136, 153 (2018).  The second aspect of proximate cause "focuses on public policy

14   considerations" that "limit an actor's responsibility for the consequences of his conduct." *State*

15   *Hospitals*, 61 Cal. 4th at 353 (citation omitted).

16          For example, the Complaint alleges that the Uber App failed to "utilize its existing GPS,

17   alert, and predictive technology to implement a feature whereby safety alerts are triggered in the

18   event of route deviations or excessive time spent with a passenger at the beginning or end of a

19   route."  Compl. at ¶ 487(b).  Yet, the Complaint does not allege, because it would be implausible,

20   that the absence of such "predictive technology" was the but-for cause of all 200+ alleged

21   incidents.  For instance, there are alleged incidents where there were no "route deviations," but

22   rather, where the driver allegedly assaulted the rider *after* the ride was complete and *after* the Uber

23   App had been turned off.  Similarly, there is no allegation that each individual Plaintiff  used the

24   Uber App herself to order the ride at issue or would have seen any warning issued through the

25   Uber App or otherwise directed to Uber App users.  Absent well-pled, plaintiff-specific allegations

26   that a warning would have been seen and heeded by any particular individual Plaintiff, the

27   Complaint's failure to warn claims fail.

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW     Case No. 3:23-md-03084-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE UCL

Plaintiffs' allegation that Uber engaged in "unlawful," "fraudulent," and "unfair" business practices is insufficient to state a claim for violation of the UCL.  Compl. ¶¶ 506–10.

*First*, Plaintiffs allege that "Uber's conduct was unlawful because it violated Uber's common law duties of care." *Id.* ¶ 507.  In other words, Plaintiffs attempt to satisfy the "unlawful" prong of their UCL claim by relying on allegations that Uber's conduct was negligent.  But "[c]ommon law claims such as negligence cannot form the basis of an unlawful prong claim under the UCL." *Mendez* v. *Selene Fin. LP*, 2017 WL 1535085, at *6 (C.D. Cal. Apr. 27, 2017); *see also Shroyer* v. *New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

*Second*, in support of their UCL claim, Plaintiffs allege that "Uber's conduct was fraudulent because it was grounded in Uber's representations that it would protect its passengers' safety." Compl. ¶ 509.  However, Plaintiffs' claim under the "fraud" prong of the UCL fails for the same reasons as their common law fraud claims as the UCL is "governed by Rule 9(b)'s heightened pleading standard." *Frenzel* v. *AliphCom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014).

*Third*, Plaintiffs make the conclusory allegation that Uber's "conduct was unfair because it was unscrupulous, contrary to public policy and presented a serious risk of harm to persons Uber was responsible for protecting." Compl. ¶ 508.  Plaintiffs do not allege, however, that Uber's alleged conduct is "tethered to an[] underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law or violates the policy or spirit of an antitrust law." *Doe* v. *CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) (quotation omitted).  Although Plaintiffs speciously claim that Uber's conduct "was grounded in unfair competition because the company enjoys a competitive advantage by not adequately protecting its passengers," Compl. ¶ 510, Plaintiffs do not allege any "proof of some actual or threatened impact on competition," *Cel-Tech Comms., Inc.* v. *L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999), nor do Plaintiffs tie their allegations "to some legislatively declared policy," *id.*; *see also In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2014 WL 5311272, at *26 (C.D. Cal. Sept. 4, 2014).

## VIII.   PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

Plaintiffs' request for injunctive relief under the UCL, Compl. ¶¶ 506–13, fails for at least

1    two reasons.

2    *First*, a "plaintiff seeking equitable relief under the UCL must demonstrate the inadequacy

3    of a remedy at law." *Rodriguez* v. *FCA US LLC*, 2023 WL 3150075, at *3 (C.D. Cal. Mar. 21,

4    2023); *cf. Sonner* v. *Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). That is because

5    the Court lacks equitable jurisdiction to grant the request for injunctive relief where there is an

6    adequate remedy at law. *See Rodriguez*, 2023 WL 3150075, at *4 (failure to "plausibly alleg[e]

7    [plaintiff] lacks an adequate remedy at law[] is . . . fatal to establishing th[e] court's equitable

8    jurisdiction"). But here, the Complaint is entirely devoid of *any* allegation, plausible or not, that

9    Plaintiffs lack an adequate remedy at law. Instead, all of the allegations pled in support of

10   Plaintiffs' claims for injunctive relief under the UCL are duplicative of allegations pled in support

11   of Plaintiffs' non-equitable claims for negligence, fraud, and product liability, and pursuant to

12   which Plaintiffs separately seek money damages. *See, e.g.*, Compl. ¶¶ 367, 380, 490; *see Huynh*

13   v. *Quora Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) ("[Plaintiff] fails to allege or demonstrate

14   that any remedy at law is inadequate, and in fact she even seeks a remedy at law through her

15   negligence claim, which is based on the same alleged conduct as her equitable claim.").

16   *Second*, the Complaint fails to allege facts establishing that any individual Plaintiff has

17   standing to seek injunctive relief under the UCL. "Under Article III's standing requirement, a

18   plaintiff seeking injunctive relief bears the burden of showing 'that **he** is under threat of suffering

19   'injury in fact' that is *concrete and particularized*; the threat must be *actual and imminent*, *not*

20   *conjectural or hypothetical*; it must be fairly traceable to the challenged action of the defendant;

21   and it must be likely that a favorable judicial decision will prevent or redress the injury.'" *Doe* v.

22   *Match.com*, 789 F. Supp. 2d 1197, 1199 (C.D. Cal. 2011) (emphasis added) (quoting *Summers* v.

23   *Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *Payne* v. *Off. of the Comm'r of Baseball*, 705

24   F. App'x 654, 655 (9th Cir. 2017).

25   But, Plaintiffs do not allege that any one of them faces an "actual and imminent" or

26   "immediate" threat of being subjected to future misconduct by an independent driver. Generalized

27   allegations about the purported "widespread nature of sexual misconduct" by certain independent

28   drivers, Compl. ¶ 354, do not suffice to allege a "real and immediate" threat of future harm to any

individual plaintiff as required to establish standing.  *See City of Los Angeles* v. *Lyons*, 461 U.S. 95, 111 (1983)  For example, in *Lyons*, a plaintiff sought an injunction against the City of Los Angeles after being subjected to a traffic stop and an alleged unprovoked chokehold by the officers. Although the plaintiff alleged that "the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force," the Supreme Court held that the plaintiff nonetheless failed to establish "a real and immediate threat" that he would be subjected to the same alleged harm in the future.  *Id.* at 106, 110.

Similarly, in *Doe* v. *Match.com*, a plaintiff alleged that, through defendant's online dating service, she met a serial sexual predator who forcibly raped her.  789 F. Supp. 2d at 1198.  The plaintiff sought injunctive relief requiring defendant to institute screening procedures that she alleges would have prevented the rape.  *Id.* at 1199.  The district court held, however, that plaintiff lacked standing to seek such relief because she had failed to establish more than a "tenuous likelihood of future injury" to herself.  *Id.* at 1200; *see also Ramsay* v. *Frontier, Inc.*, 2020 WL 4557545, at *3, 16 (D. Colo. July 30, 2020), *report and recommendation adopted*, 2021 WL 651021 (D. Colo. Feb. 19, 2021).  Dismissal of Plaintiffs' claims for injunctive relief is required for similar reasons as in *Lyons* and *Match.com*:  Plaintiffs cannot plausibly allege, and have not alleged, that any of them face an almost certain risk of a similar incident occurring, even assuming they were to use Uber's services in the future.[21]

## IX.    PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

Plaintiffs' request for punitive damages can and should be dismissed.  Under California law, recovery of punitive damages is permitted only in limited situations where a defendant has acted oppressively, fraudulently, or maliciously.  *See* Cal. Civ. Code § 3294(a); *Beck* v. *State Farm Mut. Auto. Ins.*, 54 Cal. App. 3d 347, 355-56 (1976).  A plaintiff seeking punitive damages must

---

[21] Relying on the Ninth Circuit's decision in *Davidson* v. *Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018), Plaintiffs allege they have standing because "[i]t is plausible that each Plaintiff will seek to use Uber's product in the future and necessarily will rely on Uber's obligations and representations regarding safety."  Compl. ¶ 350.  But *Davidson* addressed standing in the context of false advertising claims seeking to enjoin future advertising.  Here, Plaintiffs purport to seek an injunction to "ensure sexual assault in Uber vehicles is foreclosed to the greatest extent possible." *Id.* ¶ 35.  For that relief, Plaintiffs must (but do not) plausibly allege an "actual and imminent" threat of similar sexual misconduct in the future.  *Match.com*, 789 F. Supp. 2d at 1199.

1   satisfy a heightened pleading standard:  pleading with specificity facts sufficient to establish that

2   one of these criteria is met.  *See Smith* v. *Superior Ct.*, 10 Cal. App. 4th 1033, 1041-42 (1992); *see*

3   *also Clark* v. *State Farm Mut. Auto. Ins.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005).

4          For the reasons described above, the Complaint fails to adequately allege a valid claim of

5   fraud.  *See supra* Section III.  Plaintiffs also fail to adequately plead malice or oppression.  Under

6   California law, for the purposes of punitive damages, "malice" is defined as "conduct which is

7   intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on

8   by the defendant with a willful and conscious disregard of the rights or safety of others."  Cal. Civ.

9   Code § 3294(c)(1).  "Oppression" is defined as "despicable conduct that subjects a person to cruel

10  and unjust hardship in conscious disregard of that person's rights."  *Id.* § 3294(c)(2).  Plaintiffs

11  fail to plead facts supporting a conclusion that Uber had specific intent to cause substantial injury

12  to another, or otherwise engaged in despicable conduct that would support a claim for exemplary

13  damages.  *See, e.g.*, *G. D. Searle & Co.* v. *Superior Ct.*, 49 Cal. App. 3d 22, 29 (1975); *McNeal* v.

14  *Whittaker, Clark & Daniels, Inc.*, 80 Cal. App. 5th 853, 872 (2022) ("'Despicable conduct' is

15  conduct that is so vile, base, contemptible, miserable, wretched or loathsome that it would be

16  looked down upon and despised by ordinary decent people" having "the character of outrage

17  frequently associated with crime.") (citations and internal quotation marks omitted).  Moreover,

18  an award of punitive damages is not permissible where the plaintiff's injuries were caused by a

19  third party.  *See Medo* v. *Superior Ct.*, 205 Cal. App. 3d 64, 68 (1988).

20  **X.     AMENDMENT WOULD BE FUTILE**

21         Because the above causes of action are deficiently pled as a matter of law, and no Plaintiff

22  can allege facts beyond those asserted because no such facts exist, amendment would be futile and

23  should not be allowed.  *See Steckman* v. *Hart Brewing, Inc.*, 143 F. 3d 1293, 1298 (9th Cir. 1998).

24                                   **CONCLUSION**

25         For the foregoing reasons, Uber's motion to dismiss pursuant to California law should be

26  granted without leave to amend.

27

28

DATED:  April 1, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Robert Atkins*
     ROBERT ATKINS
     RANDALL S. LUSKEY
     JESSICA E. PHILLIPS
     KYLE N. SMITH
     JACQUELINE P. RUBIN
     CAITLIN E. GRUSAUSKAS
     ANDREA M. KELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO CALIFORNIA LAW     Case No. 3:23-md-03084-CRB