RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
JACQUELINE P. RUBIN (*Pro Hac Vice* admitted)
    jrubin@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| This Document Relates to: | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT PURSUANT TO NEW YORK LAW** |
| *A.H.M.* v. *Uber Technologies, Inc.*, et al., 3:23-cv-03482-CRB | |
| *R.T.* v. *Uber Technologies, Inc.*, et al., 3:23-cv-04301-CRB | Judge:        Honorable Charles R. Breyer<br>Date:         TBD<br>Time:         TBD<br>Courtroom:  6 – 17th Floor |
| *Jane Doe LS 231* v. *Uber Technologies, Inc.*, et al., 3:23-cv-04367-CRB | |

*Jane Doe LS 155* v. *Uber Technologies, Inc., et al.*, 3:23-cv-04374-CRB

*A.I.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-04740-CRB

*E.E.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-04744-CRB

*Jane Doe LS 66* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05414-CRB

*L.E. v. Uber Technologies, Inc., et al.*, 3:23-cv-05567-CRB

*Jane Doe LS 302* v. *Uber Technologies, Inc.*, et al., 3:23-cv-05577-CRB

*S.E.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05869-CRB

*Moore* v. *Uber Technologies, Inc., et al.*, 3:24-cv-00482-CRB

*Gacovino* v. *Uber Technologies, Inc.*, et al.,  3:24-cv-00501-CRB

*Moye* v. *Uber Technologies, Inc., et al.*, 3:24-cv-00695-CRB

*M.C.* v. *Uber Technologies, Inc., et al.*, 3:24-cv-01347-CRB

*B.C.* v. *Uber Technologies, Inc., et al.*, 3:24-cv-01917-CRB

*S.M.* v. *Uber Technologies, Inc., et al.*, 3:24-cv-01920-CRB

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO NEW YORK LAW          Case No. 3:23-md-03084-CRB

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................. 2

I.  The New York Plaintiffs' Claims Are Governed By New York Law ................................ 3

    A.  New York Conflicts of Laws Principles Mandate Application of New York Law ................................................................................................... 3

    B.  California Conflicts of Law Principles Mandate Application of New York Law ................................................................................................... 5

    C.  New York Law Applies Under the Terms of Use of 6 New York Plaintiffs .......... 6

II.  The Claim for Vicarious Liability Fails as a Matter of Law ............................................. 7

    A.  The Alleged Assaults Are Outside the Scope of Any Alleged Agency ................. 7

    B.  Plaintiffs' Ratification Theory Fails ...................................................................... 10

    C.  CPUC § 5354 Does Not Create Vicarious Liability ............................................ 11

III.  Plaintiffs' Fraud-Related Claims Should Be Dismissed .................................................. 12

    A.  The Complaint Fails to Plead Reliance ................................................................. 13

    B.  Plaintiffs Fail to Identify the Alleged False Statements with Specificity ............. 14

    C.  The *McKnight* Class Action Settlement Bars Many Misrepresentation Claims ................................................................................................................. 15

        1.  The Complaint Tries to Evade the *McKnight* Settlement ......................... 15

        2.  The "Safe Rides Fee" Allegations Should Be Dismissed or Stricken ...... 17

    D.  The Complaint Alleges Representations That Are Not Actionable ....................... 17

    E.  The Complaint Fails to Adequately Plead Fraud by Omission ............................ 19

IV.  The Claim for Negligent Infliction of Emotional Distress is Duplicative ....................... 22

V.  Plaintiffs Fail to Allege Negligent Entrustment .............................................................. 22

VI.  The Complaint's Strict Product Liability Claims Fail As a Matter of Law ...................... 23

VII.  Plaintiffs Fail to State A Claim for Relief Under the UCL ............................................. 26

    A.  Plaintiffs Cannot Assert UCL Claims for Incidents Occurring in New York ................................................................................................................. 26

    B.  Plaintiffs Fail to State a UCL Claim on the Merits .............................................. 27

VIII.  Plaintiffs Are Not Entitled To Injunctive Relief ............................................................. 28

IX.  Plaintiffs' Request for Punitive Damages Should Be Dismissed ..................................... 30

X.  Amendment Would Be Futile ............................................................................................ 30

CONCLUSION ............................................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ...................................................................28

*A. Terzi Prods., Inc.* v. *Theatrical Protective Union*,
 2 F. Supp. 2d 485 (S.D.N.Y. 1998) (Sotomayor, J.)...........................................................10

*Am. Med. Distributors* v. *Macdonald Tuskey*,
 2018 WL 1478301 (S.D.N.Y. Mar. 23, 2018) .......................................................................21

*Amusement Indus., Inc.* v. *Stern*,
 693 F. Supp. 2d 327 (S.D.N.Y. 2010).....................................................................................5

*Amusement Indus., Inc.* v. *Stern*,
 786 F. Supp. 2d 758 (S.D.N.Y. 2011)...................................................................................12

*Anderson* v. *Elliot*,
 807 N.Y.S2d 101, 102 (N.Y. App. Div. 2005) ....................................................................30

*Applied Hydrogel Tech., Inc.* v. *Raymedica, Inc.*,
 2007 WL 951297 (S.D. Cal. Mar. 2, 2007) ............................................................................7

*Arruda* v. *Rasier, LLC*,
 No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024)..............................................24

*Ashcroft* v. *Iqbal*,
 556 U.S. 662 (2009)................................................................................................................2

*Baxter-Aremtrout* v. *Lyft, Inc.*,
 No. 50-20210CA-013917 (Fla. Cir. Ct., Aug. 29, 2022)......................................................24

*Behuet & Hunt* v. *Uber Techs., Inc.*,
 2022 WL 20318684 (Cal. Super. Ct. July 13, 2022) ............................................................24

*Berardi* v. *Niagara Cnty.*,
 47 N.Y.S.3d 544 (N.Y. App. Div. 2017) ...............................................................................8

*Bermuda Container Line Ltd.* v. *Int'l Longshoremen's Ass'n, AFL-CIO*,
 192 F.3d 250 (2d Cir. 1999).................................................................................................19

*Brass* v. *Am. Film Techs.*,
 987 F.2d 142 (2d Cir. 1993)..................................................................................................21

*Browne* v. *Lyft, Inc.*,
 194 N.Y.S.3d 85 (N.Y. App. Div. 2023) ......................................................................7, 9, 22

*Burmakova* v. *Uber Techs.*,
   No. 20STCV24517 (Super. Ct., Los Angeles Cnty., Oct. 22, 2021) ........................................9

*C.T.* v. *Tetteh*,
   MRS-L-1723-23 (Super. Ct., Morris Cnty., Feb. 8, 2024) .........................................9

*Castro* v. *Budget Rent-A-Car Sys., Inc.*,
   154 Cal. App. 4th 1162 (2007) ........................................7

*Cel-Tech Comms., Inc.* v. *L.A. Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) ........................................28

*Chen* v. *L.A. Truck Ctrs., LLC*,
   42 Cal. App. 5th 488 (2019) ........................................6

*City of Los Angeles* v. *Lyons*,
   461 U.S. 95 (1983)........................................29

*Cohen* v. *S.A.C. Trading Corp.*,
   711 F.3d 353 (2d Cir. 2013)........................................12

*Cooney* v. *Osgood Mach., Inc.*,
   612 N.E.2d 277 (N.Y. 1993)........................................3, 4, 5

*Cooper* v. *Tokyo Elec. Power Co. Holding, Inc.*,
   960 F.3d 549 (9th Cir. 2020) ........................................5

*Cortese* v. *Aman*,
   No. 605477/2019, slip op. (N.Y. Sup. Ct. Feb. 19, 2021) ........................................8, 9

*Coughlin* v. *Uber Techs., Inc., et al.*,
   No. 200203083 (Ct. of Common Pleas, Phil. Cnty., June 12, 2020) ........................................9

*Cromer Fin. Ltd.* v. *Berger*,
   137 F. Supp. 2d 452 (S.D.N.Y. 2001)........................................5

*Cruz Lopez* v. *Uber Techs., Inc.*,
   No. 21CV376012 (Cal. Super. Ct. Dec. 7, 2021) ........................................24

*Davidson* v. *Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ........................................29

*Detwiler* v. *Bristol-Myers Squibb Co.*,
   884 F. Supp. 117 (S.D.N.Y. 1995) ........................................24

*Doe #2* v. *Legion of Christ, Inc.*,
   588 F. Supp. 3d 240 (D. Conn. 2022)........................................4

*Doe 1* v. *Bd. of Educ. of Greenpoint Union Free Sch. Dist.*,
   955 N.Y.S.2d 600 (N.Y. App. Div. 2012) ........................................8

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO NEW YORK LAW    Case No. 3:23-md-03084-CRB

*Doe* v. *Alsaud*,
  12 F. Supp. 3d 674 (S.D.N.Y. 2014)......................................................................8

*Doe* v. *CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020) ............................................................................27

*Doe* v. *Lyft*,
  176 N.E.3d 863 (Ill. App. Ct. 2020) ....................................................................9

*Doe* v. *Match.com*,
  789 F. Supp. 2d 1197 (C.D. Cal. 2011) ..............................................28, 29, 30

*Doe* v. *Uber Techs. Inc.*,
  551 F. Supp. 3d 341 (S.D.N.Y. 2021)................................................................22

*Doe* v. *Uber Techs., Inc.*,
  No. 19-cv-03310-JSC, LEXIS 203466 (N.D. Cal. Nov. 22, 2019) .....................9

*DoubleLine Capital LP* v. *Odebrecht Finance, Ltd.*,
  323 F. Supp. 3d 393 (S.D.N.Y. 2018)................................................................22

*Dragon Inv. Co. II LLC* v. *Shanahan*,
  854 N.Y.S.2d 115 (N.Y. App. Div. 2008) .....................................................18, 19

*Duncan* v. *Uber Techs., Inc.*,
  2023 WL 7198189 (N.Y. Sup. Ct. Sept. 27, 2023)..............................................8

*Ehret* v. *Uber Techs., Inc.*,
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...............................................................27

*In re Eighth Jud. Dist. Asbestos Litig.*,
  129 N.E.3d 891 (N.Y. 2019)..............................................................................23

*Ellington Credit Fund, Ltd.* v. *Select Portfolio Serv., Inc.*,
  837 F. Supp. 2d 162 (S.D.N.Y. 2011)..........................................................20, 21

*Estate of Stella Yeh* v. *Uber Techs, Inc.*,
  CGC-20-584408 (Super Ct. S.F. County Aug. 6, 2021)....................................14

*Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*,
  2002 WL 31426310 (S.D.N.Y. Oct. 29, 2002) ...................................................18

*Fantasy, Inc.* v. *Foberty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).......................17

*Flores* v. *Uber Techs., Inc.*,
  No. 19STCV24988 (Cal. Super. Ct., Mar. 22, 2022) ..........................................24

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
  2001 WL 1266317 (D.N.J. Sept. 30, 1997) ..................................................12, 13

*Frenzel* v. *AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014) ...................................................................27

*Fyre Festival Litig.*, 399 F. Supp. 3d at 216-17 ...............................................................22

*Ge Dandong* v. *Pinnacle Performance Ltd.*,
    2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) .........................................................13

*Hale* v. *Teledoc Health, Inc.*,
    2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021) .......................................................11

*Harsco Corp.* v. *Segui*,
    91 F.3d 337 (2d Cir. 1996).....................................................................................17

*Heindel* v. *Bowery Sav. Bank*,
    525 N.Y.S.2d 428 (N.Y. App. Div. 1988) ................................................................8

*Henneberry* v. *Sumitomo Corp. of Am.*,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006)....................................................................20

*Howell* v. *N.Y. Post Co.*,
    612 N.E.2d 699 (N.Y. 1993)...................................................................................22

*Huynh* v. *Quora Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020) ...................................................................28

*Ice Cream Distribs. of Evansville, LLC* v. *Dreyer's Grand Ice Cream, Inc.*,
    2010 WL 3619884 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th
    Cir. 2012) ................................................................................................................26

*Ironwoods Troy, LLC* v. *OptiGolf Troy, LLC*,
    166 N.Y.S.3d 730 (N.Y. App. Div. 2022) ..............................................................18

*Jackson* v. *Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022) ...................................................................24

*Jana L.* v. *W. 129th St. Realty Corp.*,
    802 N.Y.S.2d 132 (N.Y. App. Div. 2005) ..............................................................21

*Jane Doe No. 1* v. *Uber Techs., Inc.*,
    2020 Cal. Super. LEXIS 73095 (Cal. Super. Ct. Nov. 30, 2020) ...........................24

*Jane Doe* v. *Uber Techs., Inc.*,
    No. 801980/2022 (N.Y. Super. Ct. Dec. 7, 2022).................................................14

*Karlen* v. *Uber Techs., Inc., et al.*
    No. 3:21-cv-835 (U.S. Dist. Ct. Conn. August 27, 2022).........................................9

*Kasel* v. *Remington Arms Co.*,
    24 Cal. App. 3d 711 (1972) ......................................................................................6

*Koran I.* v. *N.Y.C. Bd. of Educ.*,
   683 N.Y.S.2d 228 (N.Y. App. Div. 1998) ...............................................................................8

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
   829 F.2d 1171 (D.C. Cir. 1987) .......................................................................................3, 28

*Kunz* v. *New Netherlands Routes, Inc.*,
   882 N.Y.S.2d 565 (N.Y. App. Div. 2009) .............................................................................8

*Kurns* v. *R.R. Friction Prods. Corp.*,
   565 U.S. 625 (2012) ..............................................................................................................25

*Landesbank Baden-Wurttemberg* v. *Goldman, Sachs & Co.*,
   821 F. Supp. 2d 616 (S.D.N.Y. 2011) .................................................................................14

*Laub Laub* v. *Faessel*,
   745 N.Y.S.2d at 536 ..............................................................................................................22

*Lee* v. *Mikimoto (Am.) Co.*,
   2023 WL 2711825 (S.D.N.Y. Mar. 30, 2023) .....................................................................19

*Lesnik* v. *Eisenmann SE*,
   374 F. Supp. 3d 923 (N.D. Cal. 2019) .................................................................................15

*Levine* v. *Sears Roebuck & Co.*,
   200 F. Supp. 2d 180 (E.D.N.Y. 2002) .................................................................................24

*Licci ex rel. Licci* v. *Lebanese Canadian Bank*,
   739 F.3d 45 (2d Cir. 2013) .....................................................................................................4

*Lugo by Lopez* v. *LJN Toys, Ltd.*,
   552 N.E.2d 162 (N.Y. 1990) .................................................................................................23

*Luna, Avelardo* v. *Uber Techs., Inc.*,
   No. 22STCV10806 (Cal. Super. Ct., Sept. 27, 2022) ..........................................................24

*Martinez* v. *Uber Techs., Inc.*,
   No. 23STCV09795 (Cal. Super. Ct., Oct. 3, 2023) .............................................................24

*Mayo* v. *N.Y.C. Transit Auth.*,
   3 N.Y.S.3d 36 (N.Y. App. Div. 2015) ...................................................................................8

*McCann* v. *Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010) ..............................................................................................................7

*McKnight* v. *Uber Techs., Inc.*,
   14-cv-05615, ECF No. 1 ........................................................................................................21

*McKnight* v. *Uber Techs., Inc.*,
   14-cv-05615 (N.D. Cal.) ..........................................................................................................1

- ix -

*Mendez* v. *Selene Fin. LP*,
   2017 WL 1535085 (C.D. Cal. Apr. 27, 2017) ..........................................................27

*Mendiondo* v. *Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ...............................................................................2

*In re Mid-Island Hosp., Inc.*,
   276 F.3d 123 (2d Cir. 2002)...................................................................................20

*Miller* v. *HSBC Bank U.S.A., N.A.*,
   2015 WL 585589 (S.D.N.Y. Feb. 11, 2015)...........................................................21

*Minzer* v. *Barga, et al.*,
   2020 WL 2621710 (N.Y. Sup. Ct. May 22, 2020)..................................................14

*Moll* v. *Griffith*,
   173 N.Y.S.3d 754 (N.Y. App. Div. 2022) ..............................................................22

*Morris* v. *AGFA Corp.*,
   144 Cal. App. 4th 1452 (2006) ...............................................................................6

*Morsette* v. *"The Final Call"*,
   764 N.Y.S.2d 416 (N.Y. App. Div. 2003) ..............................................................30

*Murphy* v. *Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th Cir. 2004) .................................................................................3

*Murray* v. *Uber Techs., Inc.*,
   No. 20-11250-NMG (D. Mass. Sept. 11, 2020).......................................................9

*N.X.* v. *Cabrini Med. Ctr.*,
   765 N.E.2d 844 (N.Y. 2002)....................................................................................8

*N.Y. Fruit Auction Corp.* v. *City of New York*,
   439 N.Y.S.2d 648 (N.Y. App. Div. 1981) .........................................................18, 19

*Neumeier* v. *Kuehner*,
   286 N.E.2d 454 (N.Y. 1972)....................................................................................4

*Norman* v. *Uber Techs., Inc.*,
   No. 21STCV35632 (Cal. Super. Ct. Mar. 8, 2022) ...............................................24

*Norwest Mortg., Inc.* v. *Superior Ct.*,
   72 Cal. App. 4th 214 (1999) ..................................................................................26

*In re Nucorp Energy Sec. Litig.*,
   772 F.2d 1486 (9th Cir. 1985) .................................................................................3

*O'Conner* v. *U.S. Fencing Ass'n*,
   260 F. Supp. 2d 545 (S.D.N.Y. 2003).......................................................................5

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO NEW YORK LAW          Case No. 3:23-md-03084-CRB

*Oden* v. *Boston Scientific Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...............................................................25

*Papasan* v. *Allain*,
    478 U.S. 265 (1986)..........................................................................................2

*Paul J.H.* v. *Lum*,
    736 N.Y.S.2d 561 (N.Y. App. Div. 2002) .........................................................8

*Payne* v. *Off. of the Comm'r of Baseball*,
    705 F. App'x 654 (9th Cir. 2017) ....................................................................29

*Phillips* v. *Uber Techs., Inc.*,
    2017 WL 2782036 (S.D.N.Y. June 14, 2017) ...............................................7, 9

*Polanco* v. *Lyft, Inc.*,
    2021 Cal. Super. LEXIS 60679 (Cal. Super. Ct. May 13, 2021)......................24

*Prisco* v. *New York*,
    804 F. Supp. 518 (S.D.N.Y. 1992) ..................................................................10

*Pungitore* v. *Barbera*,
    506 F. App'x 40 (2d Cir. 2012) .......................................................................29

*Quintana* v. *B. Braun Medical Inc.*,
    2018 WL 3559091 (S.D.N.Y. 2018).................................................................19

*Ramiro Aviles* v. *S&P Global, Inc.*,
    380 F. Supp.3d 221 (S.D.N.Y. 2019)...............................................................13

*Ramos* v. *Uber Techs., Inc.*,
    No. 22STCV33007 (Cal. Super. Ct. June 1, 2023)...........................................24

*Ramsay* v. *Frontier, Inc.*,
    2020 WL 4557545 (D. Colo. July 30, 2020) ...................................................29

*Rice* v. *Univ. of Rochester Med. Ctr.*,
    46 A.D.3d 1421, 849 N.Y.S.2d 134 (2007) .....................................................30

*Rivera* v. *New York*,
    142 N.E.3d 641 (N.Y. 2019)..........................................................................8, 9

*Rodriguez* v. *FCA US LLC*,
    2023 WL 3150075 (C.D. Cal. Mar. 21, 2023)..................................................28

*Rodriguez* v. *Uber Techs., Inc.*,
    No. 2020-CA-1823 (Aug. 9, 2021) (Fla. 9th J. D. Cir. Ct. Osceola County
    Aug. 9, 2021) ...................................................................................................14

*Ross* v. *Amrep Corp.*,
   393 N.Y.S.2d 410 (N.Y. App. Div. 1977) ...............................................................................14

*Schultz* v. *Boy Scouts of Am., Inc.*,
   480 N.E.2d 679 (N.Y. 1985) ..........................................................................................3, 4

*Shannon* v. *Uber Techs., Inc.*,
   No. 21STCV42029 (Cal. Super. Ct., Apr. 15, 2022) .............................................................24

*Shenouda* v. *Rivas*,
   No. 601854/2020, slip op. (N.Y. Sup. Ct. Jan. 5, 2024) ........................................................8

*Shroyer* v. *New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ...............................................................................................27

*Simulados Software, Ltd.* v. *Photon Infotech Priv., Ltd.*,
   40 F. Supp. 3d 1191 (N.D. Cal. 2014) ......................................................................................7

*Small* v. *Lorillard Tobacco Co., Inc.*,
   679 N.Y.S.2d 593 (N.Y. App. Div. 1999) ..............................................................................14

*Sonner* v. *Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................................................28

*Splawnik* v. *Di Caprio*,
   540 N.Y.S.2d 615 (N.Y. App. Div. 1989) ..............................................................................22

*State Farm Fire & Cas. Co.* v. *Weil-McLain*,
   2019 WL 10374223, 2019 N.Y. Slip Op. 34023 (N.Y. Sup. Ct. Aug. 20, 2019) ..................23

*Steckman* v. *Hart Brewing, Inc.*,
   143 F. 3d 1293 (9th Cir. 1998) ..............................................................................................30

*Sullivan* v. *Oracle Corp.*,
   51 Cal. 4th 1191 (2011) ..........................................................................................................26

*Swarna* v. *Al-Awadi*,
   622 F.3d 123 (2d Cir. 2010) ................................................................................................8, 9

*Swartz* v. *KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................................................12

*In re Thelen LLP*,
   736 F.3d 213 (2d Cir. 2013).................................................................................................3, 4

*Thomas* v. *Farrago*,
   62 N.Y.S.3d 478 (N.Y. App. Div. 2017) ...............................................................................30

*Tidenberg* v. *Bidz.com, Inc.*,
   2009 WL 605249 (C.D. Cal. Mar. 4, 2009)...........................................................................26

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO NEW YORK LAW          Case No. 3:23-md-03084-CRB

*Toral* v. *Uber Techs., Inc.*,
　　No. 20STCV02030 (Cal. Super. Ct. Apr. 14, 2021) .................................................................24

*In Re: Uber Rideshare Cases*,
　　CJC-21-005188 (Super. Ct. S.F. Cnty. June 22, 2023).................................................... *passim*

*In re Uber Rideshare Cases*,
　　No. CJC-21-005188 (Super. Ct. S.F. Cnty. Jan. 23, 2023).......................................................6

*Vess* v. *Ciba-Geigy Corp. USA*,
　　317 F.3d 1097 (9th Cir. 2003) .........................................................................................12, 14

*In re Volkswagen Clean Diesel*,
　　349 F. Supp. 3d 881, 914 (N.D. Cal. 2018) ....................................................................14, 19

*Voss* v. *Black & Decker Mfg. Co.*,
　　450 N.E.2d 204 (N.Y. 1983) ...........................................................................................24, 25

*Wargo* v. *Hillshire Brands Co.*,
　　599 F. Supp. 3d 164 (S.D.N.Y. 2022)...................................................................................12

*Wilson* v. *Danka Corp.*,
　　2002 WL 31929120 (S.D.N.Y. Jan. 28, 2003) ......................................................................8

*XYZ Two Way Radio Serv., Inc.* v. *Uber Technologies, Inc.*
　　214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) ..........................................................................18

*Ziencik* v. *Snap, Inc.*,
　　2023 WL 2638314 (C.D. Cal. Feb. 3, 2023)........................................................................24

*Zsa Zsa Jewels, Inc.* v. *BMW of N. Am., LLC*,
　　419 F. Supp.3d 490 (E.D.N.Y. 2019) ...................................................................................25

**Statutes**

CPUC § 5354 .............................................................................................................................7, 11

N.Y. Veh. & Traf. L. §§ 1691-1700 .............................................................................................23

N.Y. Veh. & Traf. L. § 1691 *et seq.* ............................................................................................11

N.Y. Veh. & Traf. L. § 1699.....................................................................................................5, 6

UCL................................................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)..................................................................................................................2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Civ. P. 12(f) ............................................................................................................17

Michael D. Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (3d ed. 2024 Supp.) ...........................23

Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005) ............................................................23

Raymond T. Nimmer, Law of Comput. Tech. § 12:41 (Nov. 2023 Update) ................................23

Restatement (Second) of Agency § 267 cmt. b ...........................................................................8

Restatement (Third) of Torts: Prod. Liab. § 19 ...........................................................................23

S.B. 4159, 240th Sess. (N.Y. 2017) ....................................................................................5, 6

**NOTICE OF MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will, and hereby do, move this Court for an order dismissing portions of the Complaint brought by Plaintiffs in this coordinated action whose alleged incident occurred in New York.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Robert Atkins, the concurrently filed Declaration of Peter Sauerwein, the concurrently filed Proposed Order, all evidence, pleadings, and papers filed herewith, the entire file in this coordinated action, any Reply that may be filed in support of this Motion, and any other arguments or evidence that may be presented to the Court in support of this Motion.

DATED:  April 1, 2024

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Robert Atkins*
  ROBERT ATKINS
  RANDALL S. LUSKEY
  JESSICA E. PHILLIPS
  KYLE SMITH
  JACQUELINE P. RUBIN
  CAITLIN E. GRUSAUSKAS
  ANDREA M. KELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs allege that each of them was assaulted or harassed by a driver and contend that Uber is responsible for having not implemented different or additional safety measures.  If the drivers behaved as alleged, that is reprehensible.  But that is not sufficient to sustain the claims alleged in the  Master Long-Form Complaint (the "Complaint").  Declaration of Robert Atkins ("Atkins Decl.") Ex. 5.  This Motion is directed to claims in the Complaint asserted by Plaintiffs whose alleged incidents occurred in New York, and thus are governed by New York law.  Uber respectfully requests that this Court dismiss the claims addressed below, and do so with prejudice given the legal infirmity of those causes of action:

*Vicarious Liability for Drivers' Torts (Cause of Action G).*  Uber is not vicariously liable for sexual assaults allegedly committed by independent drivers because such conduct is outside the scope of agency under New York law.

*Fraud and Misrepresentation (Cause of Action C).*  Plaintiffs collectively complain about Uber's advertising, but misrepresentation claims cannot be asserted generically as a group.  The Complaint therefore fails to meet the heightened pleading standard of Rule 9(b).  In addition, many of Plaintiffs' misrepresentation claims cannot have survived the class action settlement in *McKnight* v. *Uber Techs., Inc.*, 14-cv-05615 (N.D. Cal.) because Plaintiffs either released their claims or, if they were not part of the class, could not have relied on the "Safe Ride" representations at issue in that dispute.

*Negligent Infliction of Emotional Distress (Cause of Action D).*  Plaintiffs cause of action for negligent infliction of emotional distress ("NIED") is duplicative of their negligence claim.

*Negligent Entrustment (Part of Cause of Action B).* Negligent entrustment applies only to chattel, not, as Plaintiffs allege, Uber's App or Uber trademarks.

*Strict Products Liability (Cause of Action H).*  The Uber App is not a "product" and, therefore, is not subject to product liability claims.  Plaintiffs also fail to allege any defect in the Uber App or any causal connection between their alleged injuries and the design of the software.

*Unfair Competition Law (Cause of Action I).*  California's presumption against extraterritoriality mandates dismissal of the Unfair Competition Law ("UCL") claim.  Plaintiffs

also fail to adequately allege any unlawful, fraudulent, or unfair business practice in violation of the UCL.

*Injunctive Relief.*  Plaintiffs are not entitled to seek injunctive relief because the Complaint fails to allege that they lack an adequate remedy at law.  The Complaint also fails to allege facts establishing that any individual Plaintiff has standing to seek injunctive relief.

*Punitive Damages.*  Plaintiffs fail to sufficiently plead that Uber acted with fraud, malice, or gross negligence warranting imposition of punitive damages.

## BACKGROUND

On February 15, 2024, Plaintiffs filed a Master Long-Form Complaint alleging, en masse, that after using the Uber App to arrange for rides, each Plaintiff was sexually assaulted by an independent driver.  Plaintiffs seek compensatory and punitive damages and injunctive relief based on the following claims against Uber: (1) negligence; (2) fraud and misrepresentation; (3) NIED; (4) "common carrier's non-delegable duty to provide safe transportation"; (5) "other non-delegable duties to provide safe transportation"; (6) vicarious liability for drivers' torts; (7) strict product liability; and (8) UCL violations.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Dismissal is appropriate where the allegations lack "a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo* v. *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In deciding a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986).

Here, based on both New York law and the insufficiency of the facts alleged, this Court should dismiss Plaintiffs' claims for: (1) vicarious liability, (2) fraud and misrepresentation, (3) NIED, (4) negligent entrustment, (5) strict product liability, (6) UCL violations; (7)  injunctive relief, and (8) punitive damages.  It should also dismiss Plaintiffs' requests for injunctive relief and punitive damages.

# I.   THE NEW YORK PLAINTIFFS' CLAIMS ARE GOVERNED BY NEW YORK LAW[1]

As a court sitting in diversity jurisdiction, this Court must decide whether to apply the law of the state of the incident (New York) or the law of the forum state (California).   Under the conflicts of law principles of both New York and California, the proper choice of law for all of the 16 New York Plaintiffs' claims is the law of the state of the incident: New York.[2]

## A.   New York Conflicts of Laws Principles Mandate Application of New York Law

Under New York conflicts of law principles, choice of law is determined by applying an "interest analysis" test. *Schultz* v. *Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 684 (N.Y. 1985).  The interest analysis test considers which jurisdiction has the "greatest interest" in the litigation.  *Id.* Under this test, the contacts considered to be most significant "are, almost exclusively, the parties' domiciles and the locus of the tort."  *Id*.

For assessing which jurisdiction has the greatest interest, the interest analysis test divides torts into two types:  "conduct-regulating rules" (e.g., fraud and negligence) and "loss-allocation rules" (e.g., vicarious liability).  *In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013).  For alleged torts involving conduct-regulating rules, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  *Cooney* v. *Osgood Mach., Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993).

For alleged torts involving loss-allocation rules, "the site of the tort is less important, and the parties' domiciles are more important."  *In re Thelen LLP*, 736 F.3d at 220 (quotations omitted); *see Cooney*, 612 N.E.2d at 280 (same).  For such rules, New York courts apply three further rules to determine what law governs.  *See Cooney*, 612 N.E.2d at 281 (discussing and

---

[1] To the extent this Court must decide questions of federal law, the Ninth Circuit governs. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987).

[2] New York conflicts of law principles govern in: (i) the 2 actions that were originally filed in New York federal courts; and (ii) the 5 actions that were originally filed in California federal courts but which involve a contractual forum selection clause in the Terms of Use specifying the state of the incident as the proper forum.  *See In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir. 1985); *Murphy* v. *Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004); Atkins Decl. Ex. 5. California conflicts of law principles govern in the remaining 9 actions that were originally filed in California and where the Plaintiff did *not* assent to the forum selection clause.  Atkins Decl. Ex. 5.

applying the three "*Neumeier* Rules"); *see Neumeier* v. *Kuehner*, 286 N.E.2d 454 (N.Y. 1972). First, where the parties share a common domicile, the law of the domicile controls. *Cooney*, 612 N.E.2d at 281. Second, "where the parties are domiciled in different States and the local law favors the respective domiciliary," the law of the place of injury (or "locus") controls. *Id.* Finally, in instances where the parties are domiciled in different jurisdictions but the local law does not favor the respective domiciliary, the governing law is "the place of injury" or accident unless displacing this "normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants." *Id.* (quoting *Neumeier*, 286 N.E.2d at 458).[3]

Here, New York's interest analysis test for Plaintiffs' conduct-regulating and loss-allocation claims require application of New York law. For Plaintiffs' conduct-regulating claims, the New York Plaintiffs' alleged tortious injuries occurred in New York. That is where each of the New York Plaintiffs is alleged to have used the Uber App to request a ride from an independent driver, and where each is alleged to have been assaulted by the driver. *Licci ex rel. Licci* v. *Lebanese Canadian Bank*, 739 F.3d 45, 50 (2d Cir. 2013). Notably, that conclusion holds even where plaintiffs allege that the assault itself resulted in part from allegedly fraudulent or negligent conduct occurring elsewhere. *See Thelen*, 736 F.3d at 220; *Schultz*, 400 N.E.2d at 683; *see also Doe #2* v. *Legion of Christ, Inc.*, 588 F. Supp. 3d 240, 244-45 (D. Conn. 2022).

For Plaintiffs' loss-allocation claims, since the parties generally do not share a common domicile, either the second or third of the *Neumeier* rules would apply. Defendants are incorporated or formed in Delaware and have several principal places of business, including California. The vast majority of the New York Plaintiffs - - approximately 13 out of 16 - - however, are New York residents, and none are residents of California or Delaware. If for any claim, Plaintiffs can establish that the local law of the respective parties' domiciliary benefits that party, the law of the locus of the alleged torts - - i.e., New York - - controls under the second *Neumeier* rule.

---

[3] If "the interest of each State in enforcement of its law is roughly equal," which "is implicit in the second and third *Neumeier* rules," the place of the tort is considered a "tie breaker" and the law of that State applies. *Id.*

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO NEW YORK LAW        Case No. 3:23-md-03084-CRB

Even if the local law of the respective party's domiciliary does benefit that party, New York law still would apply under the third *Neumeier* rule because Plaintiffs cannot establish that application of California law would advance "the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants." *Cooney*, 612 N.E.2d at 281. Here, application of California law risks frustrating New York's demonstrated interest in governing the conduct of transportation network companies ("TNCs") and drivers. New York has demonstrated a clear legislative interest in the operations of TNC services within its borders, and the conduct of drivers accessing TNC digital networks. *See, e.g.*, N.Y. Veh. & Traf. L. § 1699 (re: TNC driver background checks); *id.* § 1696(2) (re: TNC driver substance use); *id.* § 1692(2) (re: TNC licensing); *see also* S.B. 4159, 240th Sess. (N.Y. 2017) (stating act's purpose to "ensure the safety, reliability, and cost-effectiveness" of TNC services and "preserve and enhance access to these important transportation options" in New York). Application of California law also would create uncertainty for TNCs operating in New York in compliance with New York law and yet face the risk of facing liability for allegedly running afoul of California law that may apply to the same conduct. *See Cromer Fin. Ltd.* v. *Berger*, 137 F. Supp. 2d 452, 492-93 (S.D.N.Y. 2001); *Amusement Indus., Inc.* v. *Stern*, 693 F. Supp. 2d 327, 340-41 (S.D.N.Y. 2010). New York also has an interest in applying its laws to claims asserted by its own domiciliaries who allege they were injured as a result of the negligence of another. *O'Conner* v. *U.S. Fencing Ass'n*, 260 F. Supp. 2d 545, 557 (S.D.N.Y. 2003).

**B.**   **California Conflicts of Law Principles Mandate Application of New York Law**

New York law also applies under California's "governmental interest test," which provides that if the laws of the competing states differ, the court "must determine what interest, if any, the competing jurisdictions have in their application of their respective laws." *Cooper* v. *Tokyo Elec. Power Co. Holding, Inc.*, 960 F.3d 549, 559 (9th Cir. 2020). If more than one jurisdiction has such an interest, the court then must apply "the law of the state whose interest would be the more impaired if its law were not applied." *Id.*

A state generally has legitimate interests in having its laws applied in cases concerning incidents that occurred in that jurisdiction. *Id.* at 560. Here, New York's extensive regulation of

the TNC industry, including with respect to driver criteria and safety standards, demonstrates a clear interest in the operations of TNCs like Uber within the state's borders. *See, e.g.*, N.Y. Veh. & Traf. L. § 1699; *id.* § 1696(2); *id.* § 1692(2); *see also* S.B. 4159, 240th Sess. (N.Y. 2017). California, by contrast, has little legitimate interest in applying its laws to cases involving foreign residents and incidents outside of its borders, *Morris* v. *AGFA Corp.*, 144 Cal. App. 4th 1452, 1467 (2006), or in compensating non-resident plaintiffs for related injuries, *see Chen* v. *L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 498 (2019); *Kasel* v. *Remington Arms Co.*, 24 Cal. App. 3d 711, 734 (1972).

Even if this Court were to find that California had some "legitimate interest" in the application of its laws to an injury to a non-resident outside California, New York law would still apply where the injured plaintiff does not reside in California. "California courts have tended to apply the law of the place of the injured's domicile, finding that the state has the greatest interest in compensating its domiciliaries." *Kasel*, 24 Cal. App. 3d at 734. [4]

### C.   New York Law Applies Under the Terms of Use of 6 New York Plaintiffs

New York law clearly applies to the 6 New York Plaintiffs who agreed to Uber's Terms of Use in effect in January 2021 or later. Declaration of Peter Sauerwein ("Sauerwein Decl.") ¶¶ 5, 9, Ex. A (emphasis added). Since at least 2021, the Terms of Use have specified that:

> Any dispute, claim, or controversy arising out of or relating to incidents . . . resulting in personal injury (including but not limited to sexual assault or harassment claims) . . . **shall be governed by and construed in accordance with the laws of the state in which the incident . . . occurred**.

Sauerwein Decl. Ex. C (emphasis added).

Such clauses are enforced as written where "(1) the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Simulados Software, Ltd.* v. *Photon Infotech Priv., Ltd.*, 40 F. Supp. 3d 1191, 1197 (N.D. Cal. 2014) (quotations omitted). The only exception is when the chosen law

---

[4] That Uber maintains one of its headquarters in California does not create an interest by the state in cases involving alleged tortious conduct by non-resident independent drivers against non-resident riders. *Cf.* Order on Defendants' Motions to Stay or Dismiss Based on *Forum Non Conveniens*, *In re Uber Rideshare Cases*, No. CJC-21-005188 at 10 & n.11 (Super. Ct. S.F. Cnty. Jan. 23, 2023).

is "so offensive to California public policy as to be prejudicial to recognized standards of morality and to the general interests of the citizens." *Applied Hydrogel Tech., Inc.* v. *Raymedica, Inc.*, 2007 WL 951297, at *2 (S.D. Cal. Mar. 2, 2007) (quoting *Bassidji v. Goe*, 413 F.3d 928, 933 (9th Cir. 2005)).  That is not the case here.  Moreover, any interest California may have in applying its laws is reduced where the alleged injury occurred outside of California.  *See McCann* v. *Foster Wheeler LLC*, 48 Cal. 4th 68, 99 (2010) (applying Oklahoma law in action against New York defendant by California resident exposed to asbestos in Oklahoma); *see also Castro* v. *Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1182 (2007).

## II.    THE CLAIM FOR VICARIOUS LIABILITY FAILS AS A MATTER OF LAW

Plaintiffs' vicarious liability claims must be dismissed because Uber cannot, as a matter of law, be held vicariously liable for the sexual assaults and harassment allegedly committed by the independent drivers.  New York's long-settled authority regarding the scope of employment for the purposes of vicarious liability precludes Plaintiffs' claims:  "[W]here an employee's actions are taken for wholly personal reasons, which are not job related, the challenged conduct cannot be said to fall within the scope of employment." *Browne* v. *Lyft, Inc.*, 194 N.Y.S.3d 85, 88 (N.Y. App. Div. 2023)  (citation omitted); *see also Phillips* v. *Uber Techs., Inc.*, 2017 WL 2782036, at *5 (S.D.N.Y. June 14, 2017).  Here, even assuming that the drivers are Uber employees - - they are not - - their alleged tortious conduct is still far outside the scope of their purported apparent agency "to provide transportation services."  Compl. ¶ 429.

For the same reasons, Uber also cannot be liable under the traditional "scope of employment" test, Uber also cannot be liable under a theory of apparent agency.  And Plaintiffs fail to state a claim for vicarious liability based on alternative theories of liability - - *i.e.*, ratification and the California Public Utilities Code § 5354.

### A.    The Alleged Assaults Are Outside the Scope of Any Alleged Agency

All of Plaintiffs' vicarious liability claims - - regardless of alleged incident date - - are barred by New York common law.  The Complaint effectively concedes that independent drivers are not Uber employees under New York law.  *See* Compl. ¶ 419 (excluding New York from

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO NEW YORK LAW        Case No. 3:23-md-03084-CRB

vicarious liability claim based on employment status).[5]  Nevertheless, Plaintiffs attempt to impose vicarious liability on Uber through a theory of apparent agency.  *Id.* ¶ 428.  But even if the drivers were Uber's "apparent agents" - - they are not - - Plaintiffs' vicarious liability claim still fails because under an apparent agency theory of vicarious liability, "[t]he rules . . . stating what acts are within the scope of employment, apply," meaning that "a purported master ordinarily is not liable for conduct of an apparent servant not actuated in some measure by an intent to perform the service in which he is apparently engaged."  Restatement (Second) of Agency § 267 cmt. b.

New York law regarding the scope of employment in the context of vicarious liability claims precludes Plaintiffs' "apparent agency" claim.  As the New York Court of Appeals - - the state's highest court - - has held multiple times, an employer cannot be vicariously liable for torts committed by an employee unless the conduct falls within the scope of employment - - *i.e.*, the conduct is part of the employer's business and part of the employee's job responsibilities.  *Rivera* v. *New York*, 142 N.E.3d 641, 644-45 (N.Y. 2019).  Courts applying New York law therefore routinely dispose of vicarious liability claims against employers based on sexual assaults allegedly committed by their employees as a matter of law, because those assaults were not committed within the scope of employment.[6]  That is because  "an employer 'is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." *Swarna* v. *Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010).

Here, the vicarious liability claims fail because Plaintiffs cannot plead facts that would support the conclusion that the drivers' deplorable behavior (if proven) is within the scope of any

---

[5] Indeed, New York courts have held that Uber is not vicariously liable for the acts of independent drivers because they are independent contractors, not employees.  *Duncan* v. *Uber Techs., Inc.*, 2023 WL 7198189, at *1 (N.Y. Sup. Ct. Sept. 27, 2023); *Shenouda* v. *Rivas*, No. 601854/2020, slip op. at 2-3 (N.Y. Sup. Ct. Jan. 5, 2024); *Cortese* v. *Aman*, No. 605477/2019, slip op. at 2 (N.Y. Sup. Ct. Feb. 19, 2021).

[6] *See, e.g.*, *N.X.* v. *Cabrini Med. Ctr.*, 765 N.E.2d 844, 846-47 (N.Y. 2002); *Berardi* v. *Niagara Cnty.*, 47 N.Y.S.3d 544, 546 (N.Y. App. Div. 2017); *Mayo* v. *N.Y.C. Transit Auth.*, 3 N.Y.S.3d 36, 37 (N.Y. App. Div. 2015); *Doe* v. *Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014); *Doe 1* v. *Bd. of Educ. of Greenpoint Union Free Sch. Dist.*, 955 N.Y.S.2d 600, 602-03 (N.Y. App. Div. 2012); *Kunz* v. *New Netherlands Routes, Inc.*, 882 N.Y.S.2d 565, 567 (N.Y. App. Div. 2009); *Paul J.H.* v. *Lum*, 736 N.Y.S.2d 561, 562 (N.Y. App. Div. 2002); *Koran I.* v. *N.Y.C. Bd. of Educ.*, 683 N.Y.S.2d 228, 229-30 (N.Y. App. Div. 1998); *Heindel* v. *Bowery Sav. Bank*, 525 N.Y.S.2d 428, 428-29 (N.Y. App. Div. 1988); *Wilson* v. *Danka Corp.*, 2002 WL 31929120, at *4-5 (S.D.N.Y. Jan. 28, 2003).

alleged agency.  *Rivera*, 142 N.E.3d at 644-45.  Importantly, the New York Court of Appeals has held that even where a tortfeasor's employment brings the tortfeasor in contact with the victim - - like drivers and riders using the Uber App - - that is not enough to state a vicarious liability claim. *Rivera*, 142 N.E.3d at 645-46 (dismissing vicarious liability claim against state for alleged assault by prison officer, even where "officers were on duty and the assault occurred at the prison while [the tortfeasor] supervised inmates in the mess hall").

The decisions in *Browne* and *Phillips* are directly on point.  In *Browne*, the conduct of a driver using the Lyft App who picked up a minor and began masturbating in the vehicle was found to have been "a departure from his duties as a Lyft driver and was committed solely for personal motives unrelated to Lyft's business."  194 N.Y.S. at 88; *see id.* ("A sexual assault perpetrated by an employee is not in furtherance of an employer's business and is a clear departure from the scope of employment, having been committed for wholly personal motives." (citation omitted)).  In *Phillips*, a driver using the Uber App committed assault, battery, and false imprisonment, but because those "are not acts 'commonly done' by taxi drivers, depart heavily from methods of normal performance, and could not have been reasonably anticipated by Uber," the court granted Uber's motion to dismiss the vicarious liability claim.  2017 WL 2782036, at *6.  Here too, the independent drivers' "duties" were to pick up and transport passengers "from place to place," not to commit any form of assault.  Compl. ¶ 388.

Consistent with the New York courts' rejection of vicarious liability premised on sexual assault committed by an employee, *Swarna*, 622 F.3d at 144 (2d Cir. 2010), courts in numerous other jurisdictions have dismissed similar vicarious liability claims against Uber and other TNCs.[7] As a recent example, the California Superior Court overseeing the Judicial Council Coordination Proceedings ("JCCP") dismissed all claims for vicarious liability with prejudice on the basis that Uber "cannot be held vicariously liable for the alleged sexual assaults committed by its drivers

_____

[7] *See, e.g.*, *Burmakova* v. *Uber Techs.* , No. 20STCV24517 (Super. Ct., Los Angeles Cnty., Oct. 22, 2021); *Doe* v. *Uber Techs., Inc.*, No. 19-cv-03310-JSC, LEXIS 203466 (N.D. Cal. Nov. 22, 2019); *Karlen* v. *Uber Techs., Inc., et al.* No. 3:21-cv-835 (U.S. Dist. Ct. Conn. August 27, 2022); *Doe* v. *Lyft*, 176 N.E.3d 863 (Ill. App. Ct. 2020), *Murray* v. *Uber Techs., Inc.*, No. 20-11250-NMG (D. Mass. Sept. 11, 2020); *C.T.* v. *Tetteh*, MRS-L-1723-23 (Super. Ct., Morris Cnty., Feb. 8, 2024); *Cortese* v. *Aman*, No. 605477/2019 (N.Y. Sup. Ct. Feb. 19, 2021); *Coughlin* v. *Uber Techs., Inc., et al.*, No. 200203083 (Ct. of Common Pleas, Phil. Cnty., June 12, 2020).

because such conduct falls outside the scope of employment." *In Re: Uber Rideshare Cases*, CJC-21-005188, at 4 (Super. Ct. S.F. Cnty. June 22, 2023) ("*JCCP Demurrer Order*"), Atkins Decl. Ex. 4.  In so doing, the court held that the plaintiffs failed to allege that the drivers were acting for purposes other than "personal gratification" or that their "sexual assaults were engendered by their alleged employment," as opposed to being motivated by the drivers' "close proximity to passengers[] in a confined environment." *Id.* at 6.  The JCCP ruling conformed with other rulings across the nation.

### B.      Plaintiffs' Ratification Theory Fails

Plaintiffs fail to plead facts that would establish that Uber is vicariously liable for the alleged misconduct of the accused drivers under a theory of ratification.  Compl. ¶¶ 436-39.  "Ratification is the express or implied adoption of acts of another by one for whom the other assumes to be acting but without authority," and "only occurs where the principal has <u>full knowledge of all material facts</u> and takes some action to affirm the agent's actions." *Prisco* v. *New York*, 804 F. Supp. 518, 523 (S.D.N.Y. 1992) (emphasis added).

Plaintiffs allege that Uber ratified the independent drivers' alleged assaults because it was, as a general matter, "aware of the scope and scale of sexual assaults."  Compl. ¶ 437.  That misapprehends what ratification is. Ratification requires "full knowledge of all material facts" of a specific agent's specific alleged misconduct.  *Prisco*, 804 F. Supp. at 523; *A. Terzi Prods., Inc.* v. *Theatrical Protective Union*, 2 F. Supp. 2d 485, 492 (S.D.N.Y. 1998) (Sotomayor, J.) (explaining that "ratification of another's actions requires 'full knowledge [of] . . . the specific acts in question,'" and dismissing claims where plaintiffs failed to adequately allege such knowledge).  No such specific knowledge is alleged here.

Moreover, the Complaint does not allege that Uber adopted or confirmed what any specific driver allegedly did to any specific Plaintiff.  Instead, Plaintiffs allege that Uber "failed to respond adequately to reports of sexual misconduct, failed to adequately investigate reports of sexual misconduct, failed to report sexual misconduct to law enforcement, and reinstated drivers after complaints of misconduct."  Compl. ¶¶ 437-38.  But ratification requires factual allegations showing that the defendant affirmatively adopted or affirmed the specific conduct of a specific

individual - - *i.e.,* the defendant is responsible for an agent's conduct if the defendant approved that specific conduct.  *See Hale* v. *Teledoc Health, Inc.*, 2021 WL 1163925, at *6 (S.D.N.Y. Mar. 25, 2021) ("Nowhere do plaintiffs allege an 'objectively or externally observable indication' that [the defendant] 'exercised choice and [] consented to the acts of [defendant's alleged agent].'"). Plaintiffs here are attempting to base their theory of ratification on what is essentially a negligence claim - - that Uber failed to take the appropriate actions to "redress the issue" of alleged sexual assault by drivers.  Compl. ¶ 437.  But that is not enough to plead that Uber affirmatively adopted any driver's conduct. *Hale*, 2021 WL 1163925, at *5.

## C. CPUC § 5354 Does Not Create Vicarious Liability

Plaintiffs allege that Uber is vicariously liable for conduct by independent drivers by virtue of a California Public Utilities Commission regulation that provides:

> In construing and enforcing the provisions of this chapter ***relating to the prescribed privileges and obligations of the holder of a permit or certificate issued hereunder***, the act, omission, or failure of any officer, agent, or employee, or person offering to afford the authorized service with the approval or consent of the permit or certificate holder, is the act, omission, or failure of the permit or certificate holder.

Cal. Pub. Util. Code ("CPUC") § 5354 (emphasis added); *see* Compl. ¶¶ 440-44.  But section 5354 does not impose vicarious liability on Uber for incidents that occurred in New York because it applies only to TNCs "<u>operating in California</u>."  *Id.* § 5431(c) (emphasis added).  Applying this regulation here would conflict with New York's own regulations governing TNCs.  N.Y. Veh. & Traf. L. § 1691 *et seq.*

Even if the CPUC did govern claims based on Uber's operations in Texas, it still would not create vicarious liability for conduct by independent drivers.  The first clause of section 5354 limits its application to "construing and enforcing the provisions" of the CPUC chapter governing "Charter-Party Carriers of Passengers," including TNCs. *Id.* § 5354.  It does not impose on TNCs tort liability for *any* "act, omission, or failure" by a driver, much less vicarious tort liability.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO NEW YORK LAW          Case No. 3:23-md-03084-CRB

### III.    PLAINTIFFS' FRAUD-RELATED CLAIMS SHOULD BE DISMISSED

Under New York law, the elements of an intentional misrepresentation or fraud claim are: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Wargo* v. *Hillshire Brands Co.*, 599 F. Supp. 3d 164, 177 (S.D.N.Y. 2022).[8] Such claims also must satisfy the heightened pleading standard of Rule 9(b) by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That requires pleading with specificity "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz* v. *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotations omitted); *see also Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Cohen* v. *S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

Here, by definition, the Complaint cannot satisfy Rule 9(b) because it does not allege any facts specific to any Plaintiff.  While the Complaint describes an assortment of alleged misstatements by Uber over a broad period of time, it does not allege (a) which specific Plaintiff, (b) saw which specific statement, (c) where or when she specifically saw it, (d) how that specific Plaintiff actually and justifiably relied on the specific statement, or (e) how that specific Plaintiff was damaged as a result.  That this is an MDL does not relieve Plaintiffs of having to plead with specificity, nor does it dilute the requirements of Rule 9(b).  In an MDL, "to satisfy the requirements of Rule 9(b), plaintiffs must 'inject precision and some sort of substantiation into their allegations of fraud.'"  *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 2001 WL 1266317, at *7 (D.N.J. Sept. 30, 1997) (citation omitted); *see also JCCP Demurrer Order*, at 12-15.

---

[8] To the extent Plaintiffs assert a claim for negligent misrepresentation, the elements largely overlap with the elements of intentional misrepresentation, *see Amusement Indus., Inc.* v. *Stern*, 786 F. Supp. 2d 758, 778 (S.D.N.Y. 2011), and the claim fails for the same reasons as their intentional misrepresentation claims.

## A.   The Complaint Fails to Plead Reliance

To withstand dismissal of a fraud claim under New York law, each plaintiff must allege with specificity "actual reliance" on a specific misrepresentation or omission. *Ramiro Aviles* v. *S&P Global, Inc.*, 380 F. Supp.3d 221, 283 (S.D.N.Y. 2019).  To establish actual reliance, "each individual Plaintiff must demonstrate that the misrepresentation or omission was a 'substantial factor in inducing [him or her] to act the way that [he or she] did.'"  *Ge Dandong* v. *Pinnacle Performance Ltd.*, 2013 WL 5658790, at *9 (S.D.N.Y. Oct. 17, 2013) (alteration in original).  Reliance is thus highly individualized and specific to each plaintiff and "therefore, generally alleging reliance is insufficient."  *See JCCP Demurrer Order*, at 13.  For the misrepresentation claims to survive, the Complaint must allege - - but does not allege - - specific facts, based on each Plaintiff's specific individual experiences, supporting that each saw or heard specific representations by Uber, and that those specific representations induced her to arrange a ride through the Uber App or enter a vehicle arranged through the Uber App.

The *In re Ford Motor Co. Ignition Switch Prods. Liab. Lit.* MDL is instructive.  That MDL involved over 100 plaintiffs alleging that defendant Ford "fraudulently misinform[ed] the public" regarding ignition switches.  2001 WL 1266317, at *6.  Though plaintiffs "described with some particularity the nature of Ford's alleged misrepresentations to the public and the mediums through which these statements were made," the court found that the complaint was "nonetheless deficient in that it fail[ed] to describe with any particularity how plaintiffs relied upon the alleged misrepresentations and omissions of defendant, or how such reliance resulted in damages."  *Id.* at *7-8.  Just like the Complaint here, the complaint "fail[ed] to state what advertisement or other statement by Ford was heard or seen and then relied upon by each . . . plaintiff."  *Id.* at *8.  Although the Complaint lists an assortment of "examples" of alleged representations by Uber, Compl. ¶ 188, it does not allege particularized facts indicating which specific Plaintiff was aware of and saw which specific representations, and which specific Plaintiff then relied upon those representations in choosing to use Uber's services.  "It is implausible, to state the obvious, that every one of [the] individual Plaintiffs actually saw and relied on each and every one of the statements and other representations."  *JCCP Demurrer Order*, at 14.

### B.   Plaintiffs Fail to Identify the Alleged False Statements with Specificity

The Complaint also fails to allege with specificity the what, when, where, and how of the alleged misrepresentations and to which specific Plaintiff a specific misrepresentation was made. *Vess*, 317 F. 3d at 1106; *Landesbank Baden-Wurttemberg* v. *Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 621-22 (S.D.N.Y. 2011).  That pleading defect would require dismissal even if there were only a single Plaintiff.  *See, e.g.*, *Small* v. *Lorillard Tobacco Co., Inc.*, 679 N.Y.S.2d 593, 600 (N.Y. App. Div. 1999); *Ross* v. *Amrep Corp.*, 393 N.Y.S.2d 410, 413 (N.Y. App. Div. 1977); *Minzer* v. *Barga, et al.*, 2020 WL 2621710, at *6 (N.Y. Sup. Ct. May 22, 2020).[9]  But it is a major problem here because the Complaint alleges a menu of allegedly false statements, none of which is connected to any specific Plaintiff.  Instead, Plaintiffs make only general allegations that Uber made representations to "Plaintiffs and the general public" and that "Uber made intentional misrepresentations of fact to all users of the Uber App."  Compl. ¶¶ 369-70.  The plaintiffs in the JCCP attempted a similar approach, which the JCCP court rejected.  *JCCP Demurrer Order*, at 15.  That Plaintiffs here attached alleged "[e]xamples of safety-based marketing" by Uber also does not change the result because these self-selected examples are still not tied to any specific Plaintiff, to any time, or to any place.

For example, in *In re Volkswagen Clean Diesel*, the complaint "detail[ed] specific advertisements and marketing materials," but the court found that the named plaintiffs' allegations "lack[ed] sufficient detail about the particular circumstances surrounding VW's misrepresentations to Plaintiffs."  349 F. Supp. 3d 881, 914 (N.D. Cal. 2018).  In particular, many of the named plaintiffs failed to identify "the specifics of what was represented" and none identified when and where they saw the advertising.  *Id.* at 915.  The court found this dispositive, emphasizing that "such <u>linking allegations</u> are required to satisfy Rule 9(b)."  *Id.* (collecting cases) (emphasis added).  The Complaint here suffers from the same defect.

---

[9] *See Jane Doe* v. *Uber Techs., Inc.*, No. 801980/2022 (N.Y. Super. Ct. Dec. 7, 2022) (dismissing Deceptive Practices claim based on alleged sexual assault); *Rodriguez* v. *Uber Techs., Inc.*, No. 2020-CA-1823, at *4-5 (Aug. 9, 2021) (Fla. 9th J. D. Cir. Ct. Osceola County Aug. 9, 2021) (dismissing misrepresentation and fraud claims because, among other reasons, plaintiff made only "bare allegations of fraudulent conduct" and did not "identify[] the time, place, and manner in which the conduct occurred"); *Estate of Stella Yeh* v. *Uber Techs, Inc.*, CGC-20-584408, at 4 (Super Ct. S.F. County Aug. 6, 2021) (same).

### C.    The *McKnight* Class Action Settlement Bars Many Misrepresentation Claims

#### 1.    The Complaint Tries to Evade the *McKnight* Settlement

By force of the June 1, 2017 Settlement of the *McKnight* v. *Uber* class action, 14-cv-05615 (N.D. Cal.), Plaintiffs here who were members of that class, and did not opt out, released Uber from "any claim arising out of or relating to [Uber's] representations or omissions regarding [1] background checks, [2] safety, or [3] the Safe Rides Fee." *McKnight* Am. Stip. of Settlement ¶ 31(a) (June 1, 2017) (the "Release"), Atkins Decl. Ex. 2.[10]  Still, the Complaint includes allegations that are almost identical to those in the complaint in *McKnight*. *McKnight* Complaint, Atkins Decl. Ex. 1.[11]  For example:

- The *McKnight* Complaint alleged that Uber misrepresented that "Uber is committed to connecting you with the safest ride on road." The Complaint here alleges that Uber falsely advertised "the safest ride on the road." *McKnight* Compl. ¶ 26; Compl. ¶¶ 20, 206, 207.

- The *McKnight* Complaint alleged that Uber misrepresented that it set "the strictest safety standards possible." The Complaint here alleges that Uber misrepresented that it set "the strictest standards possible." *McKnight* Compl. ¶ 26; Compl. ¶¶ 20, 207.

- The *McKnight* Complaint alleged that Uber misrepresented that drivers are "thoroughly screened through a rigorous process we've developed using industry-leading standards." The Complaint here alleges that drivers are screened by "an industry-leading background check process." *McKnight* Compl. ¶ 27; Compl. ¶¶ 20, 207.

- The *McKnight* Complaint alleged that safety standards "aim to go above and beyond local requirements." The Complaint here alleges that Uber misrepresented that it "aims to go above and beyond local requirements" with "industry leading" background checks. *McKnight* Compl. ¶ 26; Compl. ¶ 20.

*McKnight* was settled pursuant to an Amended Stipulation of Settlement dated June 1, 2017, which provided that all class members who did not opt out released claims "of any nature whatsoever, known or unknown, . . . which Plaintiffs and Class Members have or may have arising out of or relating to any allegations made in the Action, or any legal theories that could have been raised based on the allegations in the Action." *McKnight* Am. Stip. of Settlement ¶ 31 (defining

---

[10] Where a defendant moves to dismiss a claim released by a prior settlement agreement, the Court may consider the settlement agreement because it is "integral to the plaintiff's claims and its authenticity is not disputed." *Lesnik* v. *Eisenmann SE*, 374 F. Supp. 3d 923, 936 (N.D. Cal. 2019). Uber respectfully requests that this Court take judicial notice of the *McKnight* Release, Complaint, and Mandate. *See* Atkins Decl. Exs. 1-3.

[11] Plaintiffs cite the class action claims that culminated in the *McKnight* settlement.  Compl. ¶ 208.

- 15 -

"Released Claims").  "The Released Claims include, but are not limited to, any claim arising out of or relating to [Uber's] representations or omissions regarding background checks, safety, or the Safe Rides Fee." *Id.*[12]  In exchange for the Release, Uber agreed, among other things, that it would cease any use of anything called a "Safe Rides Fee" beyond early 2016.  The Settlement Class included all passengers who "used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories," "from January 1, 2013 to January 31, 2016," and did not "elect exclusion or opt out from the Class."  *Id.* ¶¶ 6, 8.[13]  Therefore, any Plaintiff here who was a class member already released Uber from "any claim arising out of or relating to [its] representations or omissions regarding background checks, safety, or the Safe Rides Fee."  *Id.* ¶ 31.

The Complaint's total lack of specificity as to which Plaintiffs relied on which alleged misrepresentations and omissions, and when and where they did so, prevents Uber and the Court from determining which Plaintiffs are barred by the Release from pursuing which allegations about which alleged misrepresentations and omissions.  Even so, it is clear that there are Plaintiffs in the class - - i.e., individuals who "from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories."  *Id.* ¶ 6. [14]  Moreover, no claims relating to the "Safe Rides Fee" could have survived the *McKnight* settlement because that fee was terminated as part of the settlement and therefore did not exist after early 2016.  The MDL cannot be used to avoid the enforcement of the *McKnight* settlement by lumping all the Plaintiffs together with no specifics.  Put simply, either

---

[12] Final judgment in the McKnight action, following resolution of appeals, was entered by the Ninth Circuit on December 22, 2022.  *McKnight* Mandate, Atkins Decl. Ex. 3.  The release was effective on December 23, 2022.  *McKnight* Am. Stip. of Settlement ¶ 16.

[13] The *McKnight* Release states that "Class Members are not releasing any claims for personal injuries."  *McKnight* Am. Stip. of Settlement ¶ 31.  That exception immediately follows the release of "any claim arising out of or relating to Defendants' representations or omissions regarding background checks, safety, or the Safe Rides Fee."  *Id.*  Thus, the personal injury exception applies only where the claim relates to something other than an alleged representation or omission about background checks, safety, or the Safe Rides Fee.

[14] Uber has identified 21 Plaintiffs who allege incidents in California, Florida, Illinois, New York, and Texas who released claims pursuant to the Release.  Sauerwein Decl. ¶ 20.  Uber is not aware of any MDL Plaintiff who opted out of the *McKnight* class action settlement.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO NEW YORK LAW        Case No. 3:23-md-03084-CRB

1   the Plaintiffs were part of the settlement and barred from alleging the released claims or the

2   Plaintiffs otherwise were not charged a Safe Rides fee and cannot assert a claim based on the fee.

3          **2.        The "Safe Rides Fee" Allegations Should Be Dismissed or Stricken**

4          There is at least one allegation that cannot stand and should be dismissed now with

5   prejudice and/or stricken in light of the McKnight settlement:  the allegation that the "Safe Rides

6   Fee" constitutes an actionable misrepresentation or omission.  Compl. ¶¶ 203-04.  Under Rule

7   12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial,

8   impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  As the Ninth Circuit has instructed,

9   "'immaterial' matter is that which has no essential or important relationship to the claim for relief

10  or the defenses being pleaded," and " 'impertinent' matter consists of statements that do not

11  pertain, and are not necessary to the issues in question." *Fantasy, Inc.* v. *Foberty*, 984 F.2d 1524,

12  1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

13         Here, the allegations about the "Safe Rides Fee" being misleading are undeniably

14  immaterial because they cannot, given the *McKnight* settlement, support any misrepresentation or

15  omission claims.  *First*, as to Plaintiffs who were members of the *McKnight* class, any claims

16  arising from or relating to the Safe Rides Fee were released.  *See supra* Section III.C.1.  *Second*,

17  it follows from the definition of the *McKnight* class that any Plaintiffs not in the class were those

18  who did not obtain a "Uber Service With a Safe Rides Fee," and therefore cannot claim to have

19  been misled by the Safe Rides Fee.  *Third*, as the use of the Safe Rides Fee was enjoined as part

20  of the Settlement, no Plaintiff can have a claim based on a program that no longer existed after

21  early 2016.

22         **D.        The Complaint Alleges Representations That Are Not Actionable**

23         Although the Complaint includes a list of alleged misrepresentations, it does not plead facts

24  showing that those statements are false, or in what way they are false.  *See Harsco Corp.* v. *Segui*,

25  91 F.3d 337, 347 (2d Cir. 1996) (complaint failed to satisfy Rule 9(b) where "[t]here is no

26  explanation regarding why th[e] representation may be fraudulent").  The Complaint alleges, for

27  example, that Uber made representations about the existence of "safety features built into every

28  ride," including that "911 help is a swipe away" and that RideCheck "can help detect if your trip

- 17 -

goes unusually off course."  Compl. ¶ 227, Appx. A, Ads 8, 28, 32; *see, also* Appx. A, Ads. 7, 9, 10, 23, 24, 26, 27.  The Complaint does not, however, allege that "safety features" are <u>not</u> built into every ride; that "911 help" is <u>not</u> a swipe (of the finger) away; or that the RideCheck feature does <u>not</u> "help detect" trips that go off course.  Likewise, the Complaint points to Uber's statements that drivers "must undergo a multi-step safety screen" and that Uber "rescreens drivers every year." Compl. ¶ 215; *see also id.* ¶ 216, Appx. A, Ad. 30.  Nowhere does the Complaint allege, however, facts showing that background checks are <u>not</u> used to vet drivers; that there is <u>not</u> a multi-step process; or that there are <u>not</u> background checks run every year.  In short, the Complaint does not "sufficiently allege how the representation was false." *Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*, 2002 WL 31426310, at *7 (S.D.N.Y. Oct. 29, 2002).

What Plaintiffs do allege is that Uber should have different and additional safety features, and should use different background checks.  *See* Compl. ¶ 365(a)-(p).  But that belief does not render false Uber's statements about the safety features it does, in fact, have, or about the background checks that are, in fact, conducted.

The Complaint also alleges statements that are not falsifiable, and thus are not actionable. A false representation must be one of an existing or past fact, and not a mere promise to do some act in the future.  *Dragon Inv. Co. II LLC* v. *Shanahan*, 854 N.Y.S.2d 115, 117 (N.Y. App. Div. 2008); *N.Y. Fruit Auction Corp.* v. *City of New York*, 439 N.Y.S.2d 648, 652 (N.Y. App. Div. 1981).  Accordingly, statements of opinion or puffery are not actionable.  *Ironwoods Troy, LLC* v. *OptiGolf Troy, LLC*, 166 N.Y.S.3d 730, 734 (N.Y. App. Div. 2022).  In *XYZ Two Way Radio Serv., Inc.* v. *Uber Technologies, Inc.*, the Eastern District of New York addressed false advertising claims against Uber based on its alleged safety representations.  214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016).  The court held that Uber's statements constituted non-actionable "puffery" because, although they were "intended to convey the impression that Uber takes the safety of its passengers seriously," they were "boastful and self-congratulatory" and "couched in aspirational terms—'committed to,' 'aim to,' 'believe deeply'— that cannot be proven true or false." *Id.*

The Complaint alleges numerous similar non-actionable statements by Uber, including: "Through our joint efforts with cities and safety experts and by working together, we're helping

to create safe journeys for everyone;" "That's why we're committed to safety—from the creation of new standards to the development of technology with the aim of reducing incidents;" and "Uber is dedicated to keeping people safe on the road."  Compl. ¶¶ 211, 221; *see also id.* Appx A, Ad. 6. These are not statements concerning past or existing material facts.  *Dragon Inv.*, 854 N.Y.S.2d at 117; *N.Y. Fruit*, 439 N.Y.S.2d at 652.  They are expressions of company pride and esteem, communicated in aspirational language that would not reasonably be understood to be subject to factual verification.  And they refer to "safety" in vague and general terms, without promising any specific standard of safety or guaranteeing absolute safety.  *See  Lee* v. *Mikimoto (Am.) Co.*, 2023 WL 2711825, at *5 (S.D.N.Y. Mar. 30, 2023) ("General statements about compliance with safety and quality standards are non-actionable 'puffery' where, as here, they fail to identify specific requirements or standards." (citation omitted)).

## E.   The Complaint Fails to Adequately Plead Fraud by Omission

Plaintiffs allege that Uber is liable for "misrepresentation by omission."  Compl. ¶ 368. The elements of a fraudulent omission claim are:  (1) failure to disclose material information that defendant had a duty to disclose, (2) intention to defraud the plaintiff thereby, (3) reasonable reliance on the omission, and (4) damages.  *Bermuda Container Line Ltd.* v. *Int'l Longshoremen's Ass'n, AFL-CIO*, 192 F.3d 250, 258 (2d Cir. 1999).  Such claims also are subject to Rule 9(b). *Volkswagen*, 349 F. Supp. 3d at 915; *Quintana* v. *B. Braun Medical Inc.*, 2018 WL 3559091, at *7 (S.D.N.Y. 2018).  This claim should be dismissed for the following reasons.

First, Plaintiffs do not allege an omission of a "material fact."  Instead, as discussed above, they state a number of accusations and opinions about the company:  Uber "failed to disclose the truth that Uber prioritized growth and driver supply over passenger safety"; Uber "failed to disclose the truth that Uber failed to adequately protect passengers against sexual assault or harassment committed by drivers"; and Uber did not disclose "the truth of its priorities and lack of adequate safety mechanisms."  Compl. ¶¶ 372-74.  These are not allegations of undisclosed material facts, but derogatory characterizations of Uber.  The Complaint therefore fails to allege an omission or concealment with the factual specificity required by Rule 9(b).

**Second**, Plaintiffs fail to allege that Uber had a duty to disclose.  Such a duty arises only in three circumstances:  "(1) where the parties stand in a confidential fiduciary relationship, (2) where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge, or (3) where a party to a business transaction has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth."  *Ellington Credit Fund, Ltd.* v. *Select Portfolio Serv., Inc.*, 837 F. Supp. 2d 162, 201 (S.D.N.Y. 2011).  Here, the Complaint does not allege that Uber had a fiduciary or confidential relationship with any of the Plaintiffs that would create a duty to disclose.  It alleges only, in a vague and conclusory fashion, that Uber "had a *special* relationship with the passengers."  Compl. ¶¶ 374(a) (emphasis added); *Henneberry* v. *Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 441-42 (S.D.N.Y. 2006) (conclusory allegation of "relationship of trust and confidence" is insufficient).  But an ordinary "arms-length contractual relationship" like the one between Uber and Plaintiffs does not form the basis of a fiduciary or confidential relationship producing a duty to disclose.  *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) ("[W]hen parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." (citation omitted)).

Plaintiffs also fail to allege that Uber "possesses superior knowledge, not readily available" to Plaintiffs," *Ellington Credit*, 837 F. Supp. 2d at 201, because the Complaint alleges otherwise. The Complaint alleges that it was in 2014 that Uber started receiving reports of sexual assault by drivers against riders.  Compl. ¶ 258.  It then cites a *New York Times* article *from 2014* called "Uber's System for Screening Drivers Draws Scrutiny," which details public and government criticism over Uber's driver screening process and the alleged rape of a passenger.  *Id.* ¶ 145 n.19; *see also id.* ¶ 151 (discussing 2014 investigation into Uber's driver screening); *id.* ¶ 260 n.60 (citing 2014 *New York Times* article about rape of passenger).  Also in 2014, the original Complaint in the *McKnight* class action was filed, which alleged that Uber made misleading statements about passenger safety because, among other things, a woman allegedly (it was never proven) was

- 20 -

1    attacked by a driver with a criminal background.  Atkins Decl. Ex. 1, *McKnight* Compl. ¶ 53 n.2.[15]

2    As discussed above, numerous Plaintiffs *in this case* were actually class members in *McKnight*

3    and received payment in exchange for releases.  Those Plaintiffs certainly did not lack opportunity

4    to discover information about Uber safety-related statements, including about background checks.

5    *See Jana L.* v. *W. 129th St. Realty Corp.*, 802 N.Y.S.2d 132, 135 (N.Y. App. Div. 2005).

6    Then, as Plaintiffs themselves allege, in 2019 Uber released the 84-page 2017-2018 Safety

7    Report detailing with statistical precision the number of incidents of the most severe forms of

8    sexual misconduct on the platform.  Compl. ¶ 273.  Uber issued the Report even though it was not

9    legally mandated to do so and even though doing so was above and beyond any industry standard

10   (*e.g.*, Lyft had not launched a report; there are also no notices or reports regarding sexual assaults

11   on airplanes and cruises or at hotels, despite the fact that sexual assaults occur in those industries

12   too).  That directly contradicts Plaintiffs' accusation that Uber did not disclose facts about safety

13   and, more generally, that Uber is the type of company that conceals such facts.  Because these

14   alleged safety issues were part of the public record, Plaintiffs' conclusory allegations of Uber's

15   supposedly exclusive knowledge do not state a claim for fraud by non-disclosure.  *Ellington Credit*

16   *Fund*, 837 F. Supp. 2d at 201; *Am. Med. Distributors* v. *Macdonald Tuskey*, 2018 WL 1478301, at

17   *3 (S.D.N.Y. Mar. 23, 2018).

18   Absent a confidential or fiduciary relationship, a duty may arise "on the theory that once a

19   party has undertaken to mention a relevant fact to the other party it cannot give only half the truth."

20   *Brass* v. *Am. Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993).  Thus, whether a "partial

21   representation" is misleading depends on the nature of the alleged "half-truth" and the

22   circumstances in which it was materially incomplete.  *Miller* v. *HSBC Bank U.S.A., N.A.*, 2015

23   WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015).  The Complaint fails to allege any facts that support

24   the conclusion that Uber failed to disclose new information that rendered prior disclosures untrue

25   or that Uber made any fraudulent partial disclosure.[16]

---

[15]  The same alleged incident is discussed in the original complaint filed in December 2014.
*McKnight* v. *Uber Techs., Inc.*, 14-cv-05615, ECF No. 1, ¶ 36.

[16]  For the reasons stated *supra* Section III.A, Plaintiffs fail to allege reliance as to each particular
Plaintiff.  In order to plead reliance under a fraudulent concealment theory, a plaintiff must allege
that that the withheld information "induced plaintiff to engage in the transaction in question."

IV.    **THE CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM IS DUPLICATIVE**

Under New York law, a claim for negligent infliction of emotional distress ("NIED"), requires plaintiff to establish "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell* v. *N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). However, an "NIED claim cannot be asserted if it is 'essentially duplicative of tort or contract causes of action.'" *Doe* v. *Uber Techs. Inc.*, 551 F. Supp. 3d 341, 364 (S.D.N.Y. 2021) (citation omitted). Here, any claim for NIED is duplicative of Plaintiffs negligence claims, which are based on the same factual circumstances and seek the same potential recovery. *Compare* Compl. at ¶¶ 362-67 (alleging Negligence), *with* Compl. at ¶¶ 381-85 (alleging NIED). Because the claim for NIED is duplicative of and subsumed by the negligence claims, it is ripe for dismissal on the pleadings as a matter of law. *Doe*, 551 F. Supp. 3d at 364.

V.    **PLAINTIFFS FAIL TO ALLEGE NEGLIGENT ENTRUSTMENT**

To support a claim for negligent entrustment, Plaintiffs must allege facts establishing that the defendant has "some special knowledge concerning a characteristic or condition peculiar to the" person to whom a particular chattel is given which renders their use of the chattel "unreasonably dangerous." *Moll* v. *Griffith*, 173 N.Y.S.3d 754, 756 (N.Y. App. Div. 2022). Contrary to Plaintiffs' allegations, the Uber App and Uber's trademarks are not "chattel." *See* Compl. ¶ 363(n). Negligent entrustment claims in New York apply only to chattels that are moveable or transferable physical property, such as motor vehicles and firearms. *See Splawnik* v. *Di Caprio*, 540 N.Y.S.2d 615, 617 (N.Y. App. Div. 1989). In any event, even if the Uber App and/or its trademark were considered "chattel," Plaintiffs do not allege that any independent driver's negligent use of the Uber App or Uber's trademarks, or that any such alleged negligent use caused any particular Plaintiff's injury. Accordingly, the claim must be dismissed.

---

*Browne*, 194 N.Y.S.3d at 89; *Laub*, 745 N.Y.S.2d at 536; *DoubleLine Capital LP* v. *Odebrecht Finance, Ltd.*, 323 F. Supp. 3d 393, 463 (S.D.N.Y. 2018); *see also Fyre Festival*, 399 F. Supp. 3d at 216-17.

## VI.      THE COMPLAINT'S STRICT PRODUCT LIABILITY CLAIMS FAIL AS A MATTER OF LAW

A manufacturer, distributor, or retailer of a product is liable in tort if a defect in the product causes injury while the product is being used in a reasonably foreseeable way.  *Lugo by Lopez* v. *LJN Toys, Ltd.*, 552 N.E.2d 162, 163 (N.Y. 1990).  As relevant here, defining whether there is a "product" at issue is a condition precedent to successfully maintain the action.  *See State Farm Fire & Cas. Co.* v. *Weil-McLain*, 2019 WL 10374223, at *2 2019 N.Y. Slip Op. 34023 (N.Y. Sup. Ct. Aug. 20, 2019).  Whether or not the subject object is defined as a "product" is a question of law for the court to decide.  *In re Eighth Jud. Dist. Asbestos Litig.*, 129 N.E.3d 891, 896 (N.Y. 2019).  Here, the Complaint fails to allege facts sufficient to show the Uber App is a "product" or "tangible personal property distributed commercially for use or consumption."  Restatement (Third) of Torts: Prod. Liab. § 19.  To the contrary, as the Complaint itself acknowledges, the Uber App provides a *service* of connecting riders with drivers.  *See, e.g.*, Compl. ¶ 390 ("Uber charges standard fees for its services through its application."); *id.* ¶ 391 ("Any member of the public can use Uber's transportation services."); *see also id.* ¶¶ 13, 70, 73, 119, 179, 206, 352, 388, 408, 421, 429-30.  Similarly, the New York Legislature recognizes that TNCs provide a service.  *See, e.g.*, N.Y. Veh. & Traf. L. §§ 1691-1700  (referring to "Transportation Network Company *Services*") (emphasis added); *id.* § 1691(2) ("'[d]igital network' means any *system or service* offered or utilized by a transportation network company(emphasis added)); *id.* at § 1691(4)(a) ("'Transportation network company driver' or 'TNC driver' means an individual who: receives connections to potential passengers and related *services*"); *see also id*. at  § 1691(3).

"Services, even when provided commercially, are not products."  Restatement (Third) of Torts: Prod. Liab. § 19.  Since software, like the Uber App, generally is designed to provide a service, "most software does not fall within the purview of product liability law."  Raymond T. Nimmer, Law of Comput. Tech. § 12:41 (Nov. 2023 Update); *see also* Michael D. Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (3d ed. 2024 Supp.); Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005).  For these reasons, courts in many jurisdictions have found that the Uber App, and similar apps, are not

products. [17]   For example, in the JCCP, the court explained that "customers do not purchase the App, nor is it in any meaningful sense the object of their transaction with Uber, but merely the mechanism by which that object—securing a ride to their destination—is accomplished." *JCCP Demurrer Order*, at 18.   The court held "[t]he Uber App is no more a 'product' . . . than is a telephone that a customer uses to call a taxi." *Id.*

Even if the Uber App could be viewed in some respect as a product under New York law (it is not), Plaintiffs would still need to establish that their transaction with Uber was for the purpose of purchasing a product rather than obtaining a service (connecting with an independent driver to obtain a ride).   *Levine* v. *Sears Roebuck & Co.*, 200 F. Supp. 2d 180, 192 (E.D.N.Y. 2002); *see also Detwiler* v. *Bristol-Myers Squibb Co.*, 884 F. Supp. 117, 121 (S.D.N.Y. 1995). Plaintiffs cannot make this showing because their transactions with Uber were to obtain the use of Uber's "services" - - not to compensate Uber for the purchase of the App, which is free to download.   *Detwiler*, 884 F. Supp. at 121.

Even setting aside the threshold issue of whether the Uber App is a product, the Complaint also fails to state a claim for strict product liability because it does not allege any defect or condition necessitating a warning.   Nowhere does the Complaint allege that the App had a glitch or bug that impaired its ability to connect riders with drivers or that the Uber App had an inherent and dangerous design flaw that prevented it from performing its function of connecting riders with drivers.[18]   Likewise, the Complaint does not allege that the design of the Uber App itself, such as

---

[17] *See, e.g.*, *Arruda* v. *Rasier, LLC*, No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024); *Martinez* v. *Uber Techs., Inc.*, No. 23STCV09795 (Cal. Super. Ct., Oct. 3, 2023); *Ramos* v. *Uber Techs., Inc.*, No. 22STCV33007 (Cal. Super. Ct. June 1, 2023); *Luna, Avelardo* v. *Uber Techs., Inc.*, No. 22STCV10806 (Cal. Super. Ct., Sept. 27, 2022); *Baxter-Aremtrout* v. *Lyft, Inc.*, No. 50-20210CA-013917 (Fla. Cir. Ct., Aug. 29, 2022); *Behuet & Hunt* v. *Uber Techs., Inc.*, 2022 WL 20318684, at *2 (Cal. Super. Ct. July 13, 2022); *Shannon* v. *Uber Techs., Inc.*, No. 21STCV42029 (Cal. Super. Ct., Apr. 15, 2022); *Flores* v. *Uber Techs., Inc.*, No. 19STCV24988  (Cal. Super. Ct., Mar. 22, 2022); *Norman* v. *Uber Techs., Inc.*, No. 21STCV35632 (Cal. Super. Ct. Mar. 8, 2022); *Cruz Lopez* v. *Uber Techs., Inc.*, No. 21CV376012 (Cal. Super. Ct. Dec. 7, 2021); *Polanco* v. *Lyft, Inc.*, 2021 Cal. Super. LEXIS 60679 (Cal. Super. Ct. May 13, 2021); *Toral* v. *Uber Techs., Inc.*, No. 20STCV02030 (Cal. Super. Ct. Apr. 14, 2021); *Jane Doe No. 1* v. *Uber Techs., Inc.*, 2020 Cal. Super. LEXIS 73095 (Cal. Super. Ct. Nov. 30, 2020); *see also Ziencik* v. *Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (same as to Snapchat); *Jackson* v. *Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022) (same as to Airbnb).

[18] Liability for defective design exists only where an allegedly defective product is "not reasonably safe" to the user. *See Voss* v. *Black & Decker Mfg. Co.*, 450 N.E.2d 204,, 208 (N.Y. 1983).

- 24 -

its coding sequences that connect riders with drivers, is dangerous when used as intended and therefore requires warnings.[19]  Instead, Plaintiffs contend that Uber negligently failed to prevent the sexual misconduct of independent drivers because it implemented inadequate safety measures and background checks.  Compl. ¶ 473.  But Uber's alleged "failure to permit passengers to select drivers of the same gender" on the Uber App (*id.* ¶ 473(b)), for example, is not a defect in the software's function of connecting riders with drivers.  Nor is Uber's supposed failure to include a feature that would "ship dash cameras to drivers."  *Id.* ¶ 487(a).  These are simply safety measures that Plaintiffs think Uber should take, but they do not go to the design of the software itself.

The strict product liability claims fail for the additional reason that the Complaint does not plausibly allege causation with respect to any individual Plaintiff.  *See Voss*, 450 N.E.2d at 209; *see Oden* v. *Boston Scientific Corp.*, 330 F. Supp. 3d 877, 888 (E.D.N.Y. 2018).  To survive dismissal, the Complaint must allege facts sufficient to show that the absence of a different design was the cause of each Plaintiff's injury - - *i.e.*, that the sexual assaults would not have occurred or would have been reduced had Uber adopted a specific different design.  *See, e.g.*, *Zsa Zsa Jewels, Inc.* v. *BMW of N. Am., LLC*, 419 F. Supp.3d 490, 507 (E.D.N.Y. 2019). Here, none of the Plaintiffs has satisfied that pleading requirement because none of them has alleged facts to show what specific alternative design would have prevented what specific incident, or that an alternative design would have stopped the independent motivations of a criminal perpetrator.  Plaintiffs' alleged injuries stemmed not from a software design flaw, but from the alleged actions of independent drivers who made independent decisions to commit sexual assault.

For example, the Complaint alleges that the Uber App failed to "utilize its existing GPS, alert, and predictive technology to implement a feature whereby safety alerts are triggered in the event of route deviations or excessive time spent with a passenger at the beginning or end of a route."  Compl. at ¶ 487(b). Yet, the Complaint does not allege, because it would be implausible, that the absence of such "predictive technology" was the but-for cause all 200+ alleged incidents. For instance, there are alleged incidents where there were no "route deviations," but, rather, where

---

[19] A failure to warn claim must "allege[] that the product itself is unlawfully dangerous unless accompanied by sufficient warnings or instructions." *Kurns* v. *R.R. Friction Prods. Corp.*, 565 U.S. 625, 635 (2012).

the driver allegedly assaulted the rider *after* the ride was complete and *after* the Uber App had been turned off.  Similarly, there is no allegation that each individual Plaintiff used the App herself to order the ride at issue, or would have seen any warning issued through the App or otherwise directed to App users.  Absent well-pled, plaintiff-specific allegations that a warning would have been seen, and heeded, by any particular individual Plaintiff, the Complaint's failure to warn claims fail.

**VII.    PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER THE UCL**

**A.    Plaintiffs Cannot Assert UCL Claims for Incidents Occurring in New York**

Plaintiffs' claims under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), must be dismissed.  *See* Compl. at ¶¶ 506-13.  California courts have long held that there is a presumption against applying California statutes extraterritorially.  *See Sullivan* v. *Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).  Those courts "ordinarily presume the Legislature did not intend the statutes of [California] to have force or operation beyond the boundaries of the state," absent clear statutory language to the contrary.  *Norwest Mortg., Inc.* v. *Superior Ct.*, 72 Cal. App. 4th 214, 222 (1999).  The California Supreme Court has held that "the presumption against extraterritoriality applies to the UCL in full force" because "[n]either the language of the UCL nor its legislative history provides any basis for concluding" otherwise.  *Sullivan*, 51 Cal. 4th at 1207; *see also Ice Cream Distribs. of Evansville, LLC* v. *Dreyer's Grand Ice Cream, Inc.,* 2010 WL 3619884, *8 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th Cir. 2012).

In assessing whether a foreign resident can avail herself of the UCL, the "critical" questions "are whether the injury occurred in California and whether the conduct of Defendants occurred in California."  *Tidenberg* v. *Bidz.com, Inc.*, 2009 WL 605249, *3-4 (C.D. Cal. Mar. 4, 2009).  Here, the Complaint contains no factual allegations supporting a conclusion that any of the New York Plaintiffs used the Uber App in California to book the rides during which the incidents occurred.  Indeed, the Complaint contains no allegations about any of the New York Plaintiffs'

"individual contacts with California." *Id.* at *5.  On the contrary, for all the New York Plaintiffs, the incidents, and Plaintiffs' alleged injuries resulting from the incidents, occurred *in New York*.[20]

## B.     Plaintiffs Fail to State a UCL Claim on the Merits

Plaintiffs' allegation that Uber engaged in "unlawful," "fraudulent," and "unfair" business practices is insufficient to state a claim for violation of the UCL.  Compl. ¶¶ 506–10.

*First*, Plaintiffs allege that "Uber's conduct was unlawful because it violated Uber's common law duties of care." *Id.* ¶ 507.  In other words, Plaintiffs attempt to satisfy the "unlawful" prong of their UCL claim by relying on allegations that Uber's conduct was negligent.  But "[c]ommon law claims such as negligence cannot form the basis of an unlawful prong claim under the UCL." *Mendez* v. *Selene Fin. LP*, 2017 WL 1535085, at *6 (C.D. Cal. Apr. 27, 2017); *see also Shroyer* v. *New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

*Second*, in support of their UCL claim, Plaintiffs allege that "Uber's conduct was fraudulent because it was grounded in Uber's representations that it would protect its passengers' safety." Compl. ¶ 509.  However, Plaintiffs' claim under the "fraud" prong of the UCL fails for the same reasons as their common law fraud claims as the UCL is "governed by Rule 9(b)'s heightened pleading standard." *Frenzel* v. *AliphCom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014).

*Third*, Plaintiffs make the conclusory allegation that Uber's "conduct was unfair because it was unscrupulous, contrary to public policy and presented a serious risk of harm to persons Uber was responsible for protecting."  Compl. ¶ 508.  Plaintiffs do not allege, however, that Uber's alleged conduct is "tethered to an[] underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law."  *Doe* v. *CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) (quotations omitted).  Although Plaintiffs speciously claim that Uber's conduct "was grounded in unfair competition because the company enjoys a competitive advantage by not adequately protecting its

---

[20] Some courts have held that the UCL may apply extraterritorially to claims based on alleged misrepresentations that were developed in and disseminated from California. *E.g., Ehret* v. *Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1131-32 (N.D. Cal. 2014).  However, those cases are distinguishable.  *First*, here, there is no factual allegation of misconduct occurring in California.  *Second*, the misconduct giving rise to Plaintiffs' claims indisputably occurred outside of the state, in New York.

passengers," Compl. ¶ 510, Plaintiffs do not allege any "proof of some actual or threatened impact on competition," *Cel-Tech Comms., Inc.* v. *L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999), nor do Plaintiffs tie their allegations "to some legislatively declared policy," *id.*; *see also In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2014 WL 5311272, at \*26 (C.D. Cal. Sept. 4, 2014).

## VIII.   <u>PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF</u>

Plaintiffs' request for injunctive relief under the UCL, Compl. ¶¶ 506–13, fails for at least two reasons.  *First*, a "plaintiff seeking equitable relief under the UCL must demonstrate the inadequacy of a remedy at law." *Rodriguez* v. *FCA US LLC*, 2023 WL 3150075, at \*3 (C.D. Cal. Mar. 21, 2023); *cf. Sonner* v. *Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  That is because the Court lacks equitable jurisdiction to grant the request for injunctive relief where there is an adequate remedy at law.  *See Rodriguez*, 2023 WL 3150075, at \*4 (failure to "plausibly alleg[e] [plaintiff] lacks an adequate remedy at law[] is . . . fatal to establishing th[e] court's equitable jurisdiction").  But here, the Complaint is entirely devoid of *any* allegation, plausible or not, that Plaintiffs lack an adequate remedy at law.  Instead, all of the allegations pled in support of Plaintiffs' claims for injunctive relief under the UCL are duplicative of allegations pled in support of Plaintiffs' non-equitable claims for negligence, fraud, and product liability, and pursuant to which Plaintiffs separately seek money damages.  *See, e.g.*, Compl. ¶¶ 367, 380, 490; *see Huynh* v. *Quora Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) ("[Plaintiff] fails to allege or demonstrate that any remedy at law is inadequate, and in fact she even seeks a remedy at law through her negligence claim, which is based on the same alleged conduct as her equitable claim.").

*Second*, the Complaint fails to allege facts establishing that any individual Plaintiff has standing to seek injunctive relief under the UCL.[21]  "Under Article III's standing requirement, a plaintiff seeking injunctive relief bears the burden of showing 'that *he* is under threat of suffering 'injury in fact' that is *concrete and particularized*; the threat must be *actual and imminent*, *not conjectural or hypothetical*; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.'" *Doe* v.

---

[21] Because Plaintiffs' Article III standing to seek injunctive relief is governed by federal law, the law of the Ninth Circuit applies.  *See In re Korean Air Lines Disaster*, 829 F.2d at 1175-76.

1    *Match.com*, 789 F. Supp. 2d 1197, 1199 (C.D. Cal. 2011) (emphasis added) (quoting *Summers* v.

2    *Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *Payne* v. *Off. of the Comm'r of Baseball*, 705 F.

3    App'x 654, 655 (9th Cir. 2017).  But, Plaintiffs do not allege that any one of them faces an "actual

4    and imminent" or "immediate" threat of being subjected to future misconduct by an independent

5    driver.  Generalized allegations about the purported "widespread nature of sexual misconduct" by

6    certain independent drivers, Compl. ¶ 354, do not suffice to allege a "real and immediate" threat

7    of future harm to any individual plaintiff as required to establish standing.  *See City of Los Angeles*

8    v. *Lyons*, 461 U.S. 95, 111 (1983)  For example, in *Lyons*, a plaintiff sought an injunction against

9    the City of Los Angeles after being subjected to a traffic stop and an alleged unprovoked chokehold

10   by the officers.  Although the plaintiff alleged that "the police in Los Angeles routinely apply

11   chokeholds in situations where they are not threatened by the use of deadly force," the Supreme

12   Court held that the plaintiff nonetheless failed to establish "a real and immediate threat" that he

13   would be subjected to the same alleged harm in the future.  *Id.* at 106, 110.

14       Similarly, in *Doe* v. *Match.com*, a plaintiff alleged that, through defendant's online dating

15   service, she met a serial sexual predator who forcibly raped her.  789 F. Supp. 2d at 1198.  The

16   plaintiff sought injunctive relief requiring defendant to institute screening procedures that she

17   alleges would have prevented the rape.  *Id.* at 1199.  The district court held, however, that plaintiff

18   lacked standing to seek such relief because she had failed to establish more than a "tenuous

19   likelihood of future injury" to herself.  *Id.* at 1200; *see also Ramsay* v. *Frontier, Inc.*, 2020 WL

20   4557545, at *3, 16 (D. Colo. July 30, 2020), *report and recommendation adopted*, 2021 WL

21   651021 (D. Colo. Feb. 19, 2021); *Pungitore* v. *Barbera*, 506 F. App'x 40, 41-42 (2d Cir. 2012).

22   Dismissal of Plaintiffs' claims for injunctive relief is required for similar reasons as *Lyons* and

23   *Match.com*:  Plaintiffs cannot plausibly allege, and have not alleged, that any of them face an

24   almost certain risk of a similar incident occurring, even assuming they were to use Uber's services

25   in the future.[22]

---

26   [22] Relying on the Ninth Circuit's decision in *Davidson* v. *Kimberly-Clark Corp.*, 889 F.3d 956,
     969 (9th Cir. 2018), Plaintiffs allege they have standing because "[i]t is plausible that each Plaintiff
27   will seek to use Uber's product in the future and necessarily will rely on Uber's obligations and
     representations regarding safety."  Compl. ¶ 350.  But *Davidson* addressed standing in the context
28   of false advertising claims seeking to enjoin future advertising.  Here, Plaintiffs purport to seek an

## IX.   PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

Plaintiffs' request for punitive damages can - - and should - - be dismissed.  Under New York law, law, unless a statute establishes a cause of action and authorizes punitive damages, "only where the actions of the alleged tort-feasor constitute gross recklessness or intentional, wanton or malicious conduct aimed at the public generally or are activated by evil or reprehensible motives." *Thomas* v. *Farrago*, 62 N.Y.S.3d 478, 480 (N.Y. App. Div. 2017).  Plaintiffs must plead and prove conduct that is "intentional and deliberate, has fraudulent or evil motive, and has the character to outrage frequently associated with crime."  *Morsette* v. *"The Final Call"*, 764 N.Y.S.2d 416, 420 (N.Y. App. Div. 2003).   The Complaint fails to allege fraud, for the reasons described *supra* Section III.   Plaintiffs also do not adequately allege malicious conduct or gross negligence warranting imposition of punitive damages.  Plaintiffs cannot state a claim for punitive damages simply by reiterating their allegations of ordinary negligence.  *See Rice* v. *Univ. of Rochester Med. Ctr.*, 46 A.D.3d 1421, 1423, 849 N.Y.S.2d 134, 135 (2007) (punitive damages not available for ordinary negligence); *Anderson* v. *Elliot*, 807 N.Y.S2d 101, 102 (N.Y. App. Div. 2005) (denying punitive damages where no malicious intent).

## X.   AMENDMENT WOULD BE FUTILE

Because the above causes of action are deficiently pled as a matter of law, and no Plaintiff can allege facts beyond those asserted because no such facts exist, amendment would be futile and should not be allowed.  *See Steckman* v. *Hart Brewing, Inc.*, 143 F. 3d 1293, 1298 (9th Cir. 1998).

### CONCLUSION

For the foregoing reasons, Uber's motion to dismiss pursuant to California law should be granted without leave to amend.

---

injunction to "ensure sexual assault in Uber vehicles is foreclosed to the greatest extent possible." Compl. ¶ 35.  For that relief, Plaintiffs must (but do not) plausibly allege an "actual and imminent" threat of similar sexual misconduct in the future.  *Match.com*, 789 F. Supp. 2d at 1199.

1    DATED: April 1, 2024            **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

2

3

4                         By: */s/ Robert Atkins*

                           ROBERT ATKINS

                           RANDALL S. LUSKEY

                           JESSICA E. PHILLIPS

                           KYLE SMITH

                           JACQUELINE P. RUBIN

                           CAITLIN E. GRUSAUSKAS

                           ANDREA M. KELLER

                     *Attorneys for Defendants*

                     UBER TECHNOLOGIES, INC.,

                     RASIER, LLC, and RASIER-CA, LLC