1  RANDALL S. LUSKEY (SBN: 240915)
       rluskey@paulweiss.com
2  **PAUL, WEISS, RIFKIND, WHARTON
       & GARRISON LLP**
3  535 Mission Street, 24th Floor
   San Francisco, CA 94105
4  Telephone: (628) 432-5100
   Facsimile: (628) 232-3101
5
   ROBERT ATKINS (*Pro Hac Vice* admitted)
6      ratkins@paulweiss.com
   JACQUELINE P. RUBIN (*Pro Hac Vice* admitted)
7      jrubin@paulweiss.com
   CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
8      cgrusauskas@paulweiss.com
   ANDREA M. KELLER (*Pro Hac Vice* admitted)
9      akeller@paulweiss.com
   **PAUL, WEISS, RIFKIND, WHARTON
10      & GARRISON LLP**
   1285 Avenue of the Americas
11 New York, NY 10019
   Telephone: (212) 373-3000
12 Facsimile:  (212) 757-3990

13 *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.,
14 RASIER, LLC, and RASIER-CA, LLC

15 *[Additional Counsel Listed on Following Page]*

16

17

18

19

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| 20  IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT 21  LITIGATION | Case No. 3:23-md-03084-CRB |
| 22  This Document Relates to: | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO DISMISS PLAINTIFFS'** |
| 23  *Jane Doe LS 237* v. *Uber Technologies,* 24  *Inc.*, et al., 3:23-cv-03973-CRB | **MASTER LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW** |
| 25  *E.C.* v. *Uber Technologies, Inc., et al.*, 26  3:23-cv-04299-CRB | Judge:      Honorable Charles R. Breyer  Date:       TBD  Time:       TBD |
| 27  *A.P. v. Uber Technologies, Inc., et al.*, 3:23-cv-04308-CRB | Courtroom:  6 – 17th Floor |

28

---

1
2
*Jane Doe LS 249* v. *Uber Technologies, Inc., et al.*, 3:23-cv-04369-CRB

3
*Jane Doe LS 203* v. *Uber Technologies, Inc., et al.*, 3:23-cv-04371-CRB

4
5
*Jane Doe LS 164* v. *Uber Technologies, Inc., et al.*, 3:23-cv-04373-CRB

6
7
*Jane Doe LS 251* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05187-CRB

8
9
*Jane Doe LS 384* v. *Uber Technologies, Inc.*, et al., 3:23-cv-05292-CRB

10
*Jane Doe LS 76* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05319-CRB

11
12
*Jane Doe LS 264* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05322-CRB

13
14
*Jane Doe LS 365* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05328-CRB

15
*Jane Doe LS 388* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05346-CRB

16
17
*Jane Doe LS 244* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05372-CRB

18
19
*Jane Doe LS 265* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05377-CRB

20
21
*Jane Doe LS 98* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05412-CRB

22
*X.Y.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05679-CRB

23
24
*C.W.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05795-CRB

25
26
*H.K.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05812-CRB

27
28
*Jane Doe EB 1, et al.* v. *Uber Technologies, Inc., et al.*, 3:23-md-05870-CRB

-ii-

*F.W.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05898-CRB

*Jane Doe LS 245* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05944-CRB

*Jane Doe LS 308* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05945-CRB

*Jane Doe LS 273* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05946-CRB

*H.B.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05949-CRB

*Jane Roes CL 7 through 10* v. *Uber Technologies, Inc., et al.*, 3:23-cv-06149-CRB

*N.A.* v. *Uber Technologies, Inc., et al.*, 3:24-cv-01520-CRB

*M.Y.* v. *Uber Technologies, Inc., et al.*, 3:24-cv-01821-CRB

*A.M.* v. *Uber Technologies, Inc., et al.*, 3:24-cv-01829-CRB

*Ortego* v. *Uber Technologies, Inc., et al.*, 3:24-cv-01914-CRB

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW          Case No. 3:23-md-03084-CRB

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

BACKGROUND ................................................................................................................................ 2

ARGUMENT ...................................................................................................................................... 2

I.     The Florida Plaintiffs' Claims Are Governed by Florida Law ........................................ 3

      A.     Florida Conflicts of Laws Principles Mandate Application of Florida Law .......... 3

      B.     California Conflicts of Law Principles Mandate Application of Florida Law ....... 4

      C.     Florida Law Applies Under the Uber Terms of Use of 13 Florida Plaintiffs ........ 5

II.    The Claim for Vicarious Liability Fails as a Matter of Law.............................................. 6

      A.     By Statute, TNCs Cannot Be Held Vicariously Liable for Drivers' Torts ............. 6

      B.     The Alleged Assaults Are Outside the Scope of Any Alleged Employment ......... 6

      C.     By Statute, Uber Is Not a Common Carrier ........................................................... 8

      D.     Plaintiffs' Ratification Theory Fails ....................................................................... 8

      E.     CPUC § 5354 Does Not Create Vicarious Liability .............................................. 9

III.   Plaintiffs Fail to State a Claim for "Common Carrier's Non-Delegable Duty" ............... 10

IV.   Plaintiffs Fail to State a Claim for "Non-Delegable Duties".......................................... 10

V.    Plaintiffs' Fraud-Related Claims Should Be Dismissed .................................................. 12

      A.     The Complaint Fails to Plead Reliance ................................................................. 13

      B.     Plaintiffs Fail to Identify the Alleged False Statements with Specificity ............. 14

      C.     The *McKnight* Class Action Settlement Bars Many Misrepresentation Claims ... 15

           1.     The Complaint Tries to Evade the *McKnight* Settlement ......................... 15

           2.     The "Safe Rides Fee" Allegations Should Be Dismissed or Stricken ...... 17

      D.     The Complaint Alleges Representations That Are Not Actionable...................... 18

      E.     The Complaint Fails to Adequately Plead Fraud by Omission............................. 19

VI.   The Claim for Negligent Infliction of Emotional Distress Should be Dismissed............. 22

VII.  Fails to Allege Negligent Entrustment.............................................................................. 22

VIII. Plaintiffs' Strict Product Liability Claim Fails ................................................................ 23

IX.   PLaintiffs' Fail to State A Claim for Relief Under the UCL ........................................... 26

      A.     Plaintiffs Cannot Assert UCL Claims for Incidents That Occurred in Florida..... 26

      B.     Plaintiffs Fail to State a UCL Claim on the Merits............................................... 27

X.    Plaintiffs Are Not Entitled to Injunctive Relief ............................................................... 28

XI.   Plaintiffs' Request for Punitive Damages Should Be Dismissed ..................................... 30

XII.  Amendment Would Be Futile ........................................................................................... 30

CONCLUSION.................................................................................................................................. 30

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW      Case No. 3:23-md-03084-CRB

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**                                                                                                     **Page(s)**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
   2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ........................................................................27

*ABC Salvage, Inc.* v. *Bank of Am., N.A.*,
   305 So. 3d 725 (Fla. 3d DCA 2020) ......................................................................................9

*Agriturf Mgmt., Inc.* v. *Roe*,
   656 So.2d 954 (Fla. 2d DCA 1995) ........................................................................................6

*Am. Honda Motor Co.* v. *Milburn*,
   668 S.W.3d 6 (Tex. App.—Dallas Nov. 24, 2021)................................................................19

*Applied Hydrogel Tech., Inc.* v. *Raymedica, Inc.*,
   2007 WL 951297 (S.D. Cal. Mar. 2, 2007) ............................................................................5

*Armiger* v. *Associated Outdoor Clubs, Inc.*,
   48 So. 3d 864 (Fla. 2d DCA 2010) ......................................................................................10

*Arruda* v. *Rasier, LLC*,
   No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024)..............................................24

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009)................................................................................................................2

*Ayers* v. *Wal-Mart Stores, Inc.*,
   941 F. Supp. 1163 (M.D. Fla. 1996) ......................................................................................6

*Bain* v. *Jockey Club Tech. Servs., Inc.*,
   2007 WL 9706994 (S.D. Fla. Oct. 2, 2007)..........................................................................22

*Baxter-Armentrout* v. *Lyft, Inc.*,
   No. 50-2021-CA-013917-XXXX-MB, at 5 (Fla. 15th Cir. Aug. 29, 2022)....................23, 24

*Behuet & Hunt* v. *Uber Techs., Inc.*,
   2022 WL 20318684 (Cal. Super. Ct. July 13, 2022) ............................................................24

*Bishop* v. *Florida Specialty Paint Co.*,
   389 So. 2d 999 (Fla. 1980)................................................................................................3, 4

*Brod* v. *Jernigan*,
   188 So. 2d 575 (Fla. 2d DCA 1966) ....................................................................................18

*Browne* v. *Lyft, Inc.*,
   219 A.D.3d 445 (2d Dep't 2023) ...........................................................................................7

*Burmakova* v. *Uber Techs, Inc.*,
   No. 20STCV33948 (Super. Ct. L.A. County Oct. 22, 2021)....................................................7

*Burshan* v. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   805 So. 2d 835 (Fla. 4th DCA 2001) ....................................................................................22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- vi -

*Butler* v. *Yusem*,
    44 So. 3d 102 (Fla. 2010)............................................................................................12

*C.T.* v. *Tetteh*,
    No. MRS-L-1723-23 (N.J. Super. Ct., Feb. 8, 2024)..................................................7

*Castro* v. *Budget Rent-A-Car Sys., Inc.*,
    154 Cal. App. 4th 1162 (2007) ....................................................................................6

*Cel-Tech Comms., Inc.* v. *L.A. Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999) ...........................................................................................27

*Chen* v. *L.A. Truck Ctrs., LLC*,
    42 Cal. App. 5th 488 (2019) ........................................................................................5

*Christopher* v. *Dep't of Highway Safety & Motor Vehicles*,
    209 F. Supp. 2d 1290-93 (S.D. Fla.).........................................................................29

*Clark* v. *Boeing Co.*,
    395 So. 2d 1226 (Fla. 2d DCA 1981) ........................................................................25

*Cleveland Clinic Fla. Health Sys. Nonprofit Corp.* v. *Oriolo*,
    357 So. 3d 703 (Fla. DCA 2023) ...............................................................................30

*Commodore Cruise Line, Ltd.* v. *Kormendi*,
    344 So. 2d 896 (Fla. 2d DCA 1977) ...........................................................................9

*Como Oil Co., Inc.* v. *O'Loughlin*,
    466 So. 2d 1061 (Fla. 1985)......................................................................................30

*Cooper* v. *Tokyo Elec. Power Co. Holding, Inc.*,
    960 F.3d 549 (9th Cir. 2020) .......................................................................................4

*Coughlin* v. *Uber Techs., Inc.*,
    No. 03083, at 1, (Pa. Ct. C.P. Philadelphia Cnty, June 12, 2020) ..........................7

*Coulter* v. *ADT Sec. Servs.*,
    744 Fed. Appx. 615 (11th Cir. 2018)...........................................................................3

*Cruz Lopez* v. *Uber Techs., Inc.*,
    No. 21CV376012 (Cal. Super. Ct. Dec. 7, 2021) ....................................................24

*Davidson* v. *Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) .....................................................................................29

*Doe #2* v. *Legion of Christ, Inc.*,
    588 F. Supp. 3d 240 (D. Conn. 2022)..........................................................................4

*Doe* v. *CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020) ...................................................................................27

*Doe* v. *Lyft, Inc.*,
    2020 IL App (1st) 191328...........................................................................................7

*Doe* v. *Match.com*,
    789 F. Supp. 2d 1197, 1198 (C.D. Cal. 2011) .....................................................28, 29

- vii -

*Doe* v. *Uber Techs., Inc.*,
2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) ...........................................................7

*Doe* v. *Willis*,
2023 WL 2799747 (M.D. Fla. Apr. 5, 2023) ............................................................6, 7

*Douse* v. *Boston Scientific Corp.*,
2018 WL 3536080 (M.D. Fla. July 23, 2018) ...........................................................17

*Edward M. Chadbourne, Inc.* v. *Vaughn*,
491 So. 2d 551 (Fla. 1986)........................................................................................23

*Ehret* v. *Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) .......................................................................26

*Estate of Stella Yeh, et al.* v. *Uber Techs., Inc.*,
CGC-20-584408 (Super Ct. S.F. County Aug. 6, 2021)............................................14

*Fantasy, Inc.* v. *Foberty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)......17

*Flores* v. *Uber Techs., Inc.*,
No. 19STCV24988 (Cal. Super. Ct., Mar. 22, 2022) .............................................24

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
2001 WL 1266317 (D.N.J. Sept. 30, 1997) ........................................................12, 13

*Frenzel* v. *AliphCom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) .........................................................................27

*Fusco* v. *Uber Techs.*,
2018 WL 3618232 (E.D. Pa. July 27, 2018) ..............................................................19

*Garrett-Alfred* v. *Facebook, Inc.*,
540 F. Supp. 3d 1129 (M.D. Fla. 2021) ................................................................19, 21

*Gaspari* v. *U.S. Bank Nat'l Ass'n*,
2012 WL 527533 (M.D. Fla. Feb. 17, 2012) .............................................................17

*Gibson* v. *NCL (Bah.) Ltd.*,
2012 WL 1952667 (S.D. Fla. May 30, 2012) ............................................................19

*Goldwire* v. *Uber Techs., Inc.*,
No. 50-2019-CA-003271 (Fla. 15th Cir. Ct. Nov. 9, 2021) .......................................6

*Goss* v. *Hum. Servs. Assocs., Inc.*,
79 So. 3d 127 (Fla. 5th DCA 2012) ...........................................................................6

*Hammer* v. *Lee Mem'l Health Sys.*,
2018 WL 3707832 (M.D. Fla. Aug. 3, 2018) .............................................................6

*Haq* v. *United Airlines, Inc.*,
1996 WL 426814 (S.D. Fla. Apr. 16, 1996) ............................................................8, 9

*Hess* v. *Philip Morris USA, Inc.*,
175 So. 3d 687 (Fla. 2015)........................................................................................19

*Huggins* v. *Santos*,
    No. 2021-CA-011450-O (Fla. 9th Cir. Ct. Aug. 31, 2023)........................................................6

*Huynh* v. *Quora Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020) ...................................................................................28

*Ice Cream Distribs. of Evansville, LLC* v. *Dreyer's Grand Ice Cream, Inc.*,
    2010 WL 3619884 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th
    Cir. 2012) ...............................................................................................................................26

*Iglesia Cristiana La Casa Del Senor, Inc.* v. *L.M.*,
    783 So.2d 353 (Fla. 2d DCA 2001) ........................................................................................6

*Jackson* v. *Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022) ...................................................................................24

*Jane Doe No. 1* v. *Uber Techs., Inc.*,
    No. 19STCV11874 (Cal. Super. Ct. Nov. 30, 2020) ..............................................................24

*Jennings* v. *BIC Corp.*,
    181 F.3d 1250 (11th Cir. 1999) .............................................................................................23

*Jimenez* v. *Holiday CVS, LLC*,
    2023 WL 4251176 (S.D. Fla.) ...............................................................................................25

*Karlen* v. *Uber Techs., Inc.*,
    2022 U.S. Dist. LEXIS 15320 (D. Conn. Aug. 27, 2022) .......................................................7

*Kasel* v. *Remington Arms Co.*,
    24 Cal. App. 3d 711 (1972) ....................................................................................................5

*Kitchen* v. *K-Mart Corp.*,
    697 So. 2d 1200 (Fla. 1997)...................................................................................................22

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    829 F.2d 1171 (D.C. Cir. 1987) .......................................................................................3, 28

*Lamb* v. *Graco Children's Prod. Inc.*,
    2012 WL 12871963 (N.D. Fla. Jan. 24, 2012) ...............................................................13, 14

*Lesnik* v. *Eisenmann SE*,
    374 F. Supp. 3d 923 (N.D. Cal. 2019) ..................................................................................15

*Luna, Avelardo* v. *Uber Techs., Inc.*,
    No. 22STCV10806 (Cal. Super. Ct., Sept. 27, 2022) ............................................................24

*M.S.* v. *Nova Se. Inc.*,
    881 So. 2d 614 (Fla. 4th 2004) ..............................................................................................11

*Mallory* v. *O'Neil*,
    69 So. 2d 313 (Fla. 1954)....................................................................................................8, 9

*Florida* v. *Mark Marks, P.A.*,
    698 So. 2d 533 (Fla. 1997)....................................................................................................20

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW      Case No. 3:23-md-03084-CRB

*Marriott Int'l Inc.* v. *Am. Bridge Bahamas, Ltd.*,
   193 So. 3d 902 (Fla. 3d DCA 2015) ...................................................................21

*Martinez* v. *Uber Techs., Inc.*,
   No. 23STCV09795 (Cal. Super. Ct., Oct. 3, 2023) .............................................24

*McCann* v. *Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010) ...........................................................................................5

*McKnight* v. *Uber Techs., Inc.*,
   14-cv-05615, ECF No. 1 .....................................................................................21

*McKnight* v. *Uber Techs., Inc.*,
   14-cv-05615-JST (N.D. Cal.)..................................................................................1

*MDVIP* v. *Beber*,
   222 So. 3d 555 (Fla. 4th DCA 2017) .................................................................18

*Mendez* v. *Selene Fin. LP*,
   2017 WL 1535085 (C.D. Cal. Apr. 27, 2017) ...................................................27

*Mendiondo* v. *Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ..............................................................................2

*Meridian Tr. Co.* v. *Batista*,
   2018 WL 4760277 (S.D. Fla. Sept. 30, 2018) ...................................................13

*Minzer* v. *Barga*,
   2020 WL 2621710 (N.Y. Super. Ct. May 22, 2020) ..........................................14

*Mogensen* v. *Body Cent. Corp.*,
   15 F. Supp. 3d 1191 (M.D. Fla. 2014).................................................................18

*Morris* v. *AGFA Corp.*,
   144 Cal. App. 4th 1452 (2006) .............................................................................5

*Murphy* v. *Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th Cir. 2004) ..............................................................................3

*Murray* v. *Uber Techs., Inc.*,
   486 F. Supp. 3d 468 (D. Mass. Sept. 11, 2020).................................................7

*Norman* v. *Uber Techs., Inc.*,
   No. 21STCV35632 (Cal. Super. Ct. Mar. 8, 2022) ............................................24

*North Miami General Hospital, Inc.* v. *Goldberg*,
   520 So. 2d 650 (Fla. 3d DCA 1988) ..................................................................24

*Norwest Mortg., Inc.* v. *Superior Ct.*,
   72 Cal. App. 4th 214 (1999) ...............................................................................26

*In re Nucorp Energy Sec. Litig.*,
   772 F.2d 1486 (9th Cir. 1985) ..............................................................................3

*Omnipol, A.S.* v. *Multinational Def. Servs.*,
   32 F.4th 1298 (11th Cir. 2022) ...........................................................................12

- x -

*Pamperin* v. *Interlake Companies, Inc.*,
  634 So. 2d 1137 (Fla. 1st DCA 1994) ...................................................................23

*Papasan* v. *Allain*,
  478 U.S. 265 (1986) ...........................................................................................3

*Payne* v. *Off. of the Comm'r of Baseball*,
  705 F. App'x 654 (9th Cir. 2017) ........................................................................28

*Pearson* v. *Wallace Aviation, Inc.*,
  400 So. 2d 50 (Fla. 5th DCA 1981) ......................................................................4

*Pedro Realty Inc.* v. *Silva*,
  399 So. 2d 367 (Fla. 3d DCA 1981) ......................................................................8

*Polanco* v. *Lyft, Inc.*,
  No. 30-2019-01065850 (Cal. Super. Ct. May 13, 2021) ...........................................24

*Pop* v. *Lulifama.com LLC*,
  2023 WL 4661977 (M.D. Fla. July 20, 2023), *appeal dismissed*, 2024 WL
  21403 (11th Cir. Jan. 2, 2024) ...........................................................................20

*Porter* v. *Rosenberg*,
  650 So. 2d 79 (Fla. 4th DCA 1995) ..................................................................23, 24

*Prentice* v. *R.J. Reynolds Tobacco Co.*,
  338 So. 3d 831 (Fla. 2022).................................................................................12

*Ramos* v. *Uber Techs., Inc.*,
  No. 22STCV33007 (Cal. Super. Ct. June 1, 2023).................................................24

*Ramsay* v. *Frontier, Inc.*,
  2020 WL 4557545, at *3, 16 (D. Colo. July 30, 2020), *report and
  recommendation adopted*, 2021 WL 651021 (D. Colo. Feb. 19, 2021) .................29

*Reillo* v. *Alternate Health USA, Inc.*,
  2020 WL 6701625 (M.D. Fla. Nov. 13, 2020) ........................................................9

*Riddle* v. *Aero Mayflower Transit Co.*,
  73 So. 2d 71 (Fla. 1954).....................................................................................9

*Rivera* v. *Aaron Rents, Inc.*,
  2008 WL 638353 (M.D. Fla. 2008) ......................................................................7

*Rodriguez* v. *FCA US LLC*,
  2023 WL 3150075 (C.D. Cal. Mar. 21, 2023) .......................................................28

*Rodriguez* v. *Uber Techs., Inc.*,
  No. 2020-CA-1823 (Fla. 9th Cir. Ct. Aug. 9, 2021).........................................14, 22

*Sanlu* v. *Royal Caribbean Cruises, Ltd.*,
  2019 WL 8895223 (S.D. Fla. Nov. 15, 2019)........................................................19

*Schalamar Creek Mobile Homeowner's Ass'n, Inc.* v. *Adler*,
  855 F. App'x 546 (11th Cir. 2021)......................................................................12

- xi -

*City of Los Angeles* v. *Lyons*,
    461 U.S. 95 (1983)................................................................................29

*Shannon* v. *Uber Techs., Inc.*,
    No. 21STCV42029 (Cal. Super. Ct., Apr. 15, 2022)...............................24

*Shroyer* v. *New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ................................................................27

*Simulados Software, Ltd.* v. *Photon Infotech Priv., Ltd.*,
    40 F. Supp. 3d 1191 (N.D. Cal. 2014) .....................................................5

*Smith* v. *Sox*,
    2023 WL 6376381 (M.D. Fla. Sept. 29, 2023) .......................................13

*Smith* v. *Telophase Nat. Cremation Soc., Inc.*,
    471 So. 2d 163 (Fla. 2d DCA 1985) ......................................................30

*Sonner* v. *Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .................................................................28

*Specialty Marine & Indus. Supplies, Inc.* v. *Venus*,
    66 So. 3d 306 (Fla. 1st DCA 2011) ........................................................12

*Steckman* v. *Hart Brewing, Inc.*,
    143 F. 3d 1293 (9th Cir. 1998) ..............................................................30

*Sullivan* v. *Oracle Corp.*,
    51 Cal. 4th 1191 (2011) .........................................................................26

*Swartz* v. *KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .................................................................12

*Taylor* v. *Am. Honda Motor Co., Inc.*,
    555 F. Supp. 59 (M.D. Fla. 1982) .....................................................20, 21

*Taylor Woodrow Homes Fla., Inc.* v. *4/46-A Corp.*,
    850 So. 2d 536 (Fla. 5th DCA 2003) .....................................................20

*Thor Bear, Inc.* v. *Crocker Mizner Park, Inc.*,
    648 So. 2d 168 (Fla. 4th DCA 1994) .....................................................18

*Thurn* v. *Kimberly-Clark Corp.*,
    2023 WL 4455630 (M.D. Fla. July 11, 2023) .......................................13, 14, 19

*Tidenberg* v. *Bidz.com, Inc.*,
    2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ...........................................26

*Toral* v. *Uber Techs., Inc.*,
    No. 20STCV02030 (Cal. Super. Ct. Apr. 14, 2021).................................24

*U.S. Sec. Servs. Corp.* v. *Ramada Inn, Inc.*,
    665 So. 2d 268 (Fla. DCA 1995) (per curiam) ..................................10, 11

*In Re: Uber Rideshare Cases*,
    CJC-21-005188 (Super. Ct. S.F. Cnty. June 22, 2023)............................ *passim*

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW    Case No. 3:23-md-03084-CRB

*In re Uber Rideshare Cases*,
   No. CJC-21-005188 ............................................................................................5

*Vess* v. *Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................12, 14

*In re Volkswagen Clean Diesel*,
   349 F. Supp. 3d 881, 914, 915 (N.D. Cal. 2018) ...................................14, 19

*W.R. Grace & Company—Conn.* v. *Waters*,
   638 So. 2d 502 (Fla. 1994)...................................................................................30

*West* v. *Caterpillar Tractor Co.*,
   336 So. 2d 80 (Fla. 1976)......................................................................................25

*Wildin* v. *DNC Servs. Corp.*,
   941 F.3d 1116 (11th Cir. 2019) ...........................................................................13

*XYZ Two Way Radio Serv., Inc.* v. *Uber Techs., Inc.*,
   214 F. Supp. 3d 179 (E.D.N.Y. 2016) ...............................................................19

*Young* v. *Grand Canyon Univ., Inc.*,
   57 F.4th 861 (11th Cir. 2023) ..............................................................................14

*Z.M.L.* v. *D.R. Horton, Inc.*,
   2021 WL 3501099 (M.D. Fla. June 11, 2021)..............................................7, 11

*Zell* v. *Meek*,
   665 So. 2d 1048 (Fla. 1995)..................................................................................22

*Ziencik* v. *Snap, Inc.*,
   2023 WL 2638314 (C.D. Cal. Feb. 3, 2023)....................................................24

**Statutes**

Cal. Pub. Util. Code § 5354 .............................................................................9, 10

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200................ *passim*

Fla. Stat. Ann. § 627.748 *et seq.* ..........................................................................4, 9

Fla. Stat. § 627.748(1)(e) .........................................................................................23

Fla. Stat. § 627.748(2)........................................................................................8, 10

Fla. Stat. § 627.748(9)...............................................................................................6

Fla. Stat. § 627.748(9), A .........................................................................................6

Fla. Stat. § 627.748(18) (effective June 2020)......................................................6

*Info. Tech. Law*, § 15.08 n.105 (3d ed. 2024 Supp.)........................................23

Raymond T. Nimmer, Law of Comput. Tech. § 12:41 (Nov. 2023 Update)................23

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW          Case No. 3:23-md-03084-CRB

**Other Authorities**

Fed. R. Civ. P. Rule 9(b) .......................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ......................................................................................................2

Fed. R. Civ. P. Rule 12(f) .................................................................................................17

41A Fla. Jur. 2d Products Liability § 20 ..........................................................................24

*Ford Motor Co. Ignition Switch Prods. Liab. Lit.* MDL .................................................13

Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005) ..........................................23

Restatement (Second) of Torts ch. 15 ...............................................................................11

Restatement (Second) of Conflict of Laws § 145(2) ..........................................................3

Restatement (Second) of Conflict of Laws § 145, cmt. D .................................................4

Restatement (Second) of Conflict of Laws § 146 ..............................................................4

Restatement (Second) of Torts § 314A .............................................................................11

Restatement (Third) of Torts: Prod. Liab. § 19 ................................................................23

**NOTICE OF MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will, and hereby do, move this Court for an order dismissing portions of the Complaint brought by Plaintiffs in this coordinated action whose alleged incidents occurred in Florida.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Robert Atkins, the concurrently filed Declaration of Peter Sauerwein, the concurrently filed Proposed Order, all evidence, pleadings, and papers filed herewith, the entire file in this coordinated action, any Reply that may be filed in support of this Motion, and any other arguments or evidence that may be presented to the Court in support of this Motion.

DATED:  April 1, 2024

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Robert Atkins*
ROBERT ATKINS
RANDALL S. LUSKEY
JACQUELINE P. RUBIN
JESSICA E. PHILLIPS
KYLE N. SMITH
CAITLIN E. GRUSAUSKAS
ANDREA M. KELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs allege that each of them was assaulted or harassed by a driver and contend that Uber is responsible for having not implemented different or additional safety measures.  If the drivers behaved as alleged, that is reprehensible.   But that is not sufficient to sustain the claims alleged in the Master Long-Form Complaint (the "Complaint").   Declaration of Robert Atkins ("Atkins Decl.") Ex. 8.  This Motion is directed to claims in the Complaint asserted by Plaintiffs whose alleged incidents occurred in Florida, and thus are governed by Florida law.   Uber respectfully requests that this Court dismiss the claims addressed below and do so with prejudice given the legal infirmity of those causes of action:

*Vicarious Liability for Drivers' Torts (Cause of Action G).*  Transportation network companies ("TNCs") like Uber are not vicariously liable for the conduct of drivers, who are classified by statute as independent contractors.  Moreover, sexual assault allegedly committed by independent drivers is outside the scope of employment or agency under Florida law.

*"Common Carrier's Non-Delegable Duty to Provide Safe Transportation" (Cause of Action E).*  By statute, TNCs are not common carriers, so Uber cannot as a matter of law be liable under Plaintiffs' common carrier theory.

*"Other Non-Delegable Duties to Provide Safe Transportation" (Cause of Action F).*  Plaintiffs do not allege that Uber "delegated" any of its own purported duties to independent drivers, and, in any event, sexual assault is beyond the scope of any duty authorized by Uber.

*Fraud and Misrepresentation (Cause of Action C).*  Plaintiffs collectively complain about Uber's advertising, but misrepresentation claims cannot be asserted generically as a group.  The Complaint therefore fails to meet the heightened pleading standard of Rule 9(b).  In addition, many of Plaintiffs' misrepresentation claims cannot have survived the class action settlement in *McKnight* v. *Uber Techs., Inc.*, 14-cv-05615-JST (N.D. Cal.), because Plaintiffs either released their claims or, if they were not part of the class, could not have relied on the "Safe Ride" representations at issue in that dispute.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW          Case No. 3:23-md-03084-CRB

*Negligent Infliction of Emotional Distress (Cause of Action D).*  Under Florida law, a plaintiff cannot bring a negligent infliction of emotional distress ("NIED") claim based on alleged injuries to the plaintiff herself.

*Negligent Entrustment (Part of Cause of Action B).*  Negligent entrustment applies only to chattel, not, as Plaintiffs allege, Uber's App or Uber trademarks.

*Strict Products Liability (Cause of Action H).*  The Uber App is not a "product and, therefore, is not subject to product liability claims.  Plaintiffs also fail to allege any defect in the Uber App or any causal connection between their alleged injuries and the design of the software.

*Unfair Competition Law (Cause of Action I).*  California's presumption against extraterritoriality mandates dismissal of the Unfair Competition Law ("UCL") claim.  Plaintiffs also fail to adequately allege any unlawful, fraudulent, or unfair business practice in violation of the UCL.

*Injunctive Relief.*  Plaintiffs are not entitled to seek injunctive relief because the Complaint fails to allege that they lack an adequate remedy at law.  The Complaint also fails to allege facts establishing that any individual Plaintiff has standing to seek injunctive relief.

*Punitive Damages.*  Plaintiffs fail to sufficiently plead that Uber acted with fraud, malice, or gross negligence warranting imposition of punitive damages.

## BACKGROUND

On February 15, 2024, Plaintiffs filed a Master Long-Form Complaint alleging, en masse, that after using the Uber App to arrange for rides, each Plaintiff was sexually assaulted by an independent driver.  Plaintiffs seek compensatory and punitive damages and injunctive relief based on the following claims against Uber: (1) negligence; (2) fraud and misrepresentation; (3) NIED; (4) "common carrier's non-delegable duty to provide safe transportation"; (5) "other non-delegable duties to provide safe transportation"; (6) vicarious liability for drivers' torts; (7) strict product liability; and (8) UCL violations.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Dismissal is appropriate where the allegations lack "a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo* v. *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In deciding a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986).  Here, based on both Florida law and the insufficiency of the facts alleged, this Court should dismiss Plaintiffs' claims for: (1) vicarious liability, (2) "common carrier's non-delegable duty to provide safe transportation," (3) "other non-delegable duties to provide safe transportation," (4) fraud and misrepresentation, (5) NIED, (6) negligent entrustment, (7) strict product liability, and (8) UCL violations.  It should also dismiss Plaintiffs' requests for injunctive relief and punitive damages.

## I.     THE FLORIDA PLAINTIFFS' CLAIMS ARE GOVERNED BY FLORIDA LAW[1]

As a court sitting in diversity jurisdiction, this Court must decide whether to apply the law of the state of the incident (Florida) or the law of the forum state (California).  Under the conflicts of law principles of both Florida and California, the proper choice of law for all of the 29 Florida Plaintiffs' claims is the law of the state of the incident: Florida.[2]

### A.     Florida Conflicts of Laws Principles Mandate Application of Florida Law

Under Florida conflicts of law principles, choice of law is determined based on the "most significant relationship" test.  *Bishop* v. *Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980); *Coulter* v. *ADT Sec. Servs.*, 744 Fed. Appx. 615, 619 (11th Cir. 2018).  As applicable here, courts consider the factual "contacts" between the claim and the state whose law is sought to be applied, including the places where: (a) the injury occurred, (b) the conduct causing the injury

---

[1] To the extent this Court must decide questions of federal law, the Ninth Circuit governs.  *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987).

[2] Florida conflicts of law principles govern in the 13 actions that were originally filed in California federal courts but which involve a contractual forum selection clause in the Terms of Use specifying the state of the incident as the proper forum. *See In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir. 1985); *Murphy* v. *Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004); Atkins Decl. Ex. 8.  California conflicts of law principles govern in the remaining 16 actions that were originally filed in California where the Plaintiff did *not* assent to the Uber Terms of Use's forum selection clause.  Atkins Decl. Ex. 8.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW          Case No. 3:23-md-03084-CRB

1   occurred, (c) the parties are located, and (d) the relationship, if any, between the parties is centered.

2   *See* Restatement (Second) of Conflict of Laws § 145(2); *see also Bishop*, 389 So. 2d at 1001.

3         As to the first factor, "subject only to rare exceptions, the local law of the state where the

4   conduct and injury occurred will be applied," because "a state has an obvious interest in regulating

5   the conduct of persons within its territory and in providing redress for injuries that occurred there."

6   *See* Restatement (Second) of Conflict of Laws § 145, cmt. D; *Bishop*, 389 So. 2d at 1001 ("The

7   state where the injury occurred would, under most circumstances, be the decisive consideration in

8   determining the applicable choice of law").  In an action for a personal injury, "the local law of

9   the state where the injury occurred determines the rights and liabilities of the parties, unless, with

10   respect to the particular issue, some other state has a more significant relationship . . . ."

11   Restatement (Second) of Conflict of Laws § 146.  Here, these factors point to application of Florida

12   law.  The alleged injuries of the Florida Plaintiffs indisputably occurred in Florida; the driver's

13   conduct causing those injuries took place in Florida; the Plaintiffs reside in Florida; and the

14   connection between each Plaintiff and Uber is centered in Florida because each Plaintiff claims to

15   have used the Uber App  to request a ride in Florida and Uber operated in Florida pursuant to

16   Florida law.  *See Pearson* v. *Wallace Aviation, Inc.*, 400 So. 2d 50, 51 (Fla. 5th DCA 1981) ("In

17   negligence suits, the rule is well established that a cause of action accrues where the plaintiff

18   suffers his or her injuries; normally the site of the accident."); *see also Doe #2* v. *Legion of Christ,*

19   *Inc.*, 588 F. Supp. 3d 240, 245 (D. Conn. 2022) (under significant relationship test, parties'

20   relationship was centered in state where alleged sexual assault occurred).

21        **B.**    **California Conflicts of Law Principles Mandate Application of Florida Law**

22         Florida law also applies under California's "governmental interest test," which provides

23   that if the laws of the competing states differ, the court "must determine what interest, if any, the

24   competing jurisdictions have in their application of their respective laws."  *Cooper* v. *Tokyo Elec.*

25   *Power Co. Holding, Inc.*, 960 F.3d 549, 559 (9th Cir. 2020).  If more than one jurisdiction has such

26   an interest, the court then must apply "the law of the state whose interest would be the more

27   impaired if its law were not applied."  *Id.*  A state generally has legitimate interests in having its

28   laws applied in cases concerning incidents that occurred in that jurisdiction.  *Id.* at 560.

Here, Florida's extensive regulation of the TNC industry, including with respect to driver criteria and safety standards, demonstrates a clear interest in the operations of TNCs like Uber within the state's borders. *See* Fla. Stat. Ann. § 627.748 *et seq.* California, by contrast, has little legitimate interest in applying its laws to cases involving foreign residents and incidents outside of its borders, *Morris* v. *AGFA Corp.*, 144 Cal. App. 4th 1452, 1467 (2006), or in compensating non-resident plaintiffs for related injuries, *see Chen* v. *L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 498 (2019); *Kasel* v. *Remington Arms Co.*, 24 Cal. App. 3d 711, 734 (1972).[3]

Even if this Court were to find that California had some "legitimate interest" in the application of its laws to an injury to a non-resident outside California, Florida law would still apply where the injured plaintiff does not reside in California. "California courts have tended to apply the law of the place of the injured's domicile, finding that the state has the greatest interest in compensating its domiciliaries." *Kasel*, 24 Cal. App. 3d at 734.

## C.    Florida Law Applies Under the Uber Terms of Use of 13 Florida Plaintiffs

Florida law clearly applies to the 13 Florida Plaintiffs who agreed to Uber's Terms of Use in effect in January 2021 or later. Declaration of Peter Sauerwein ("Sauerwein Decl.") ¶¶ 5, 9, Ex. A (emphasis added). Since at least 2021, the Terms of Use have specified that:

> Any dispute, claim, or controversy arising out of or relating to incidents . . . resulting in personal injury (including but not limited to sexual assault or harassment claims) . . . **shall be governed by and construed in accordance with the laws of the state in which the incident . . . occurred.**"

Sauerwein Decl. Ex C (emphasis added).

Such clauses are enforced as written where "(1) [] the chosen state has a substantial relationship to the parties or their transaction, or (2) [where] there is any other reasonable basis for the parties' choice of law." *Simulados Software, Ltd.* v. *Photon Infotech Priv., Ltd.*, 40 F. Supp. 3d 1191, 1197 (N.D. Cal. 2014) (quotations omitted). The only exception is when the chosen law

---

[3] That Uber maintains one of its headquarters in California does not create an interest by the state in cases involving alleged tortious conduct by non-resident independent drivers against non-resident riders. *Cf.* Order on Defendants' Motions to Stay or Dismiss Based on *Forum Non Conveniens*, *In re Uber Rideshare Cases*, No. CJC-21-005188 at 10 & n.11 (Super. Ct. S.F. Cnty. Jan. 23, 2023).

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW          Case No. 3:23-md-03084-CRB

is "so offensive to California public policy as to be prejudicial to recognized standards of morality and to the general interests of the citizens." *Applied Hydrogel Tech., Inc.* v. *Raymedica, Inc.*, 2007 WL 951297, at *2 (S.D. Cal. Mar. 2, 2007) (quoting *Bassidji* v. *Goe*, 413 F.3d 928, 933 (9th Cir. 2005)).  That is not the case here.  Moreover, any interest California may have in applying its laws is reduced where the alleged injury occurred outside of California.  See *McCann* v. *Foster Wheeler LLC*, 48 Cal. 4th 68, 99-102 (2010) (applying Oklahoma law in action against New York defendant by California resident exposed to asbestos in Oklahoma); *see also Castro* v. *Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1182 (2007).

## II.    THE CLAIM FOR VICARIOUS LIABILITY FAILS AS A MATTER OF LAW

### A.    By Statute, TNCs Cannot Be Held Vicariously Liable for Drivers' Torts

Under Florida law, a TNC such as Uber cannot be held vicariously liable for injuries resulting from the alleged tortious conduct of independent drivers.  Fla. Stat. § 627.748(18) (effective June 2020); s*ee also Huggins* v. *Santos*, No. 2021-CA-011450-O, at 4-5 (Fla. 9th Cir. Ct. Aug. 31, 2023), Atkins Decl. Ex. 5 ("pursuant to Section 18(a) . . . , Uber is not vicariously liable for the purported negligence of [the driver]").  Additionally, Uber cannot be vicariously liable for the conduct of the independent drivers because they are not employees under Florida's TNC statute.  Fla. Stat. § 627.748(9).[4]

### B.    The Alleged Assaults Are Outside the Scope of Any Alleged Employment

Plaintiffs' vicarious liability claims are barred by Florida common law for other reasons. Even if there were an employer-employee relationship (or principal-agent) relationship between Uber and the independent driver - - which there is not - - "an employer generally cannot be held liable for the tortious or criminal act of an employee, unless the act was committed during the course of employment to further a purpose or interest of the employer."  *Doe* v. *Willis*, 2023 WL 2799747, at *9 (M.D. Fla. Apr. 5, 2023); *Goss* v. *Hum. Servs. Assocs., Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012).  Under longstanding Florida law, "[s]exual assaults and batteries committed

---

[4] A "TNC driver is an independent contractor and not an employee of the TNC" subject to certain conditions, Fla. Stat. § 627.748(9), each of which is met by drivers using the Uber App. *See, e.g.*, *Goldwire* v. *Uber Techs., Inc.*, No. 50-2019-CA-003271, at 1 (Fla. 15th Cir. Ct. Nov. 9, 2021); *Huggins*, No. 2021-CA-011450-O, at 4.

by employees" are generally "outside the scope of an employee's employment and, therefore, insufficient to impose vicarious liability on the employer." *Id.* (quoting *Nazareth* v. *Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985)).[5]  That is because sexual assault generally is not within the authority granted to an employee, does not further an employer's business, and is not performed for the accomplishment of the object for which the employee was employed.

The same is true here.  The independent drivers are alleged to have committed heinous acts of sexual violence and misconduct.  Those acts, if proven, fall far outside the scope of any employment as a driver, even if such an employment relationship could be established under Florida law (it cannot).  Any sexual assault or misconduct that occurred was in no way related to providing "transportation from place to place," Compl ¶ 389, or furthering any interest of Uber's.  Plaintiffs also cannot plead vicarious liability simply by alleging that the drivers purportedly had the <u>opportunity</u>, by virtue of driving Plaintiffs, to commit the alleged assaults. Compl. ¶¶ 122, 315.  *See, e.g.*, *Doe*, 2023 WL 2799747, at *11 (no vicarious liability simply because defendant's employment "meant that he had an opportunity to assault" the plaintiff); *Z.M.L.* v. *D.R. Horton, Inc.*, 2021 WL 3501099, at *6 (M.D. Fla. June 11, 2021) ("The fact that [the employee] was in the [victim's] home by virtue of his employment is not enough to demonstrate that his agency helped him perpetrate a sexual assault.").

Consistent with Florida courts' recognition that assaults generally do not fall within the scope of employment, courts in numerous jurisdictions have dismissed similar vicarious liability claims against Uber and other TNCs.[6]  As a recent example, the California Superior Court

---

[5] *See Goss*, 79 So. 3d at 132 (sexual abuse of a child by group care facility's contractor); *Hammer* v. *Lee Mem'l Health Sys.*, 2018 WL 3707832, at *4 (M.D. Fla. Aug. 3, 2018) (nurse's sexual assault of patient); *Iglesia Cristiana La Casa Del Senor, Inc.* v. *L.M.*, 783 So.2d 353, 358 (Fla. 2d DCA 2001) (pastor's sexual assault of child); *Agriturf Mgmt., Inc.* v. *Roe*, 656 So.2d 954, 955 (Fla. 2d DCA 1995) (company president's molestation of his grandchild while at work); *Ayers* v. *Wal-Mart Stores, Inc.*, 941 F. Supp. 1163, 1169 (M.D. Fla. 1996) (manager's sexual harassment of subordinate); *Rivera* v. *Aaron Rents, Inc.*, 2008 WL 638353 at *3 (M.D. Fla. 2008) (employee's rape and sexual battery of colleague).

[6] *See, e.g.*, *Burmakova* v. *Uber Techs, Inc.*, No. 20STCV33948 (Super. Ct. L.A. County Oct. 22, 2021); *Doe* v. *Uber Techs., Inc.*, 2019 WL 6251189, at *5 (N.D. Cal. Nov. 22, 2019); *Karlen* v. *Uber Techs., Inc.*, 2022 U.S. Dist. LEXIS 15320, at *11 (D. Conn. Aug. 27, 2022); *Doe* v. *Lyft, Inc.*, 2020 IL App (1st) 191328, at *P57 (Ill. 2020); *Murray* v. *Uber Techs., Inc.*, 486 F. Supp. 3d 468, 476 (D. Mass. Sept. 11, 2020); *C.T.* v. *Tetteh*, No. MRS-L-1723-23 (N.J. Super. Ct., Feb. 8,

overseeing the Judicial Council Coordination Proceedings ("JCCP") dismissed all claims for vicarious liability with prejudice on the basis that Uber "cannot be held vicariously liable for the alleged sexual assaults committed by its drivers because such conduct falls outside the scope of employment." *In Re: Uber Rideshare Cases*, CJC-21-005188, at 4 (Super. Ct. S.F. Cnty. June 22, 2023) ("*JCCP Demurrer Order*"), Atkins Decl. Ex. 4.  In so doing, the court held that the plaintiffs failed to allege that the drivers were acting for purposes other than "personal gratification" or that their "sexual assaults were engendered by their alleged employment," as opposed to being motivated by the drivers' "close proximity to passengers[] in a confined environment." *Id.* at 6. The JCCP ruling conformed with other rulings across the nation.

### C.   By Statute, Uber Is Not a Common Carrier

Plaintiffs argue that the "scope of employment" test does not apply to "common carriers." Compl. ¶ 425.  Even if that were the law (it is not), Uber is not a "common carrier" under Florida law. *See*  Fla. Stat. § 627.748(2) ("A TNC or TNC driver is not a common carrier, contract carrier, or motor carrier and does not provide taxicab service.").

### D.   Plaintiffs' Ratification Theory Fails

Plaintiffs fail to plead facts that would establish that Uber is vicariously liable for the alleged misconduct of the accused drivers under a theory of ratification.   Compl. ¶¶ 436-39. Ratification requires that the principal "have full knowledge of all the facts, [and] there must be an intention on the part of the purported principal to ratify the act in question and the required intention must be manifested in some way." *Haq* v. *United Airlines, Inc.*, 1996 WL 426814, at *7 (S.D. Fla. Apr. 16, 1996) (internal quotations omitted).  As a general matter, a "criminal act committed outside the scope of the servant's authority cannot be ratified." *Mallory* v. *O'Neil*, 69 So. 2d 313, 314-15 (Fla. 1954).  In *Mallory*, the Supreme Court affirmed dismissal of a complaint alleging that a defendant landlord ratified the actions of a caretaker who shot a tenant. *Id.*  The court held that although "defendant secured a lawyer to represent his servant and retained the servant in his employment after serving his jail sentence, that could not be said to ratify the

---

2024); *Browne* v. *Lyft, Inc.*, 219 A.D.3d 445, 446-47 (2d Dep't 2023); *Coughlin* v. *Uber Techs.*, Inc., No. 03083, at 1 (Pa. Ct. C.P. Philadelphia Cnty. June 12, 2020).

servant's criminal act." *Id.* at 315.  Plaintiffs come nowhere close to overcoming this strong presumption against ratification of the independent drivers' alleged criminal conduct:

*First*, the Complaint does not allege that Uber approved what any specific driver allegedly did to any specific Plaintiff.  *See Pedro Realty Inc.* v. *Silva*, 399 So. 2d 367 (Fla. 3d DCA 1981). Instead, Plaintiffs allege that Uber "failed to respond adequately to reports of sexual misconduct, failed to adequately investigate reports of sexual misconduct, failed to report sexual misconduct to law enforcement, and reinstated drivers after complaints of misconduct."  Compl. ¶ 438.  That is insufficient to plead ratification, let alone ratification of criminal conduct.  *See, e.g.*, *Mallory*, 69 So. 2d at 314-15; *see also Riddle* v. *Aero Mayflower Transit Co.*, 73 So. 2d 71, 71-72 (Fla. 1954); *Reillo* v. *Alternate Health USA, Inc.*, 2020 WL 6701625, at *6 (M.D. Fla. Nov. 13, 2020); *Haq*, 1996 WL 426814, at *7-9.

*Second*, Plaintiffs allege that Uber was, as a general matter, "aware of the scope and scale of sexual assaults" by drivers.  Compl. ¶ 437.  That misapprehends what ratification is.  Ratification requires that Uber had "full knowledge of all material facts and circumstances," *ABC Salvage, Inc.* v. *Bank of Am., N.A.*, 305 So. 3d 725, 729 (Fla. 3d DCA 2020) (quotations omitted), but nowhere does Plaintiff allege such knowledge relating to a specific alleged assault of any specific Plaintiff by any specific driver.

*Finally*,  the law in Florida, "is clear that unless the original act under scrutiny is done on the behalf of the employer, no ratification can take place."  *Commodore Cruise Line, Ltd.* v. *Kormendi*, 344 So. 2d 896, 898 (Fla. 2d DCA 1977).  Plaintiffs do not - - and cannot - - allege that any of the driver's alleged acts of sexual assault was done on Uber's behalf.

### E.    CPUC § 5354 Does Not Create Vicarious Liability

Plaintiffs allege that Uber is vicariously liable for conduct by independent drivers by virtue of a California Public Utilities Commission regulation that provides:

> In construing and enforcing the provisions of this chapter **relating to the prescribed privileges and obligations of the holder of a permit or certificate issued hereunder**, the act, omission, or failure of any officer, agent, or employee, or person offering to afford the authorized service with the approval or consent of the permit or certificate holder, is the act, omission, or failure of the permit or certificate holder.

- 9 -

Cal. Pub. Util. Code ("CPUC") § 5354 (emphasis added); *see* Compl. ¶¶ 440-44.  But section 5354 does not impose vicarious liability on Uber for incidents that occurred in Florida because it applies only to TNCs "operating in California."   CPUC § 5354(c) (emphasis added).   Applying this regulation here would conflict with Florida's own regulations governing TNCs.  Fla. Stat. Ann. § 627.748 *et seq.*

Even if the CPUC did govern claims based on Uber's operations in Florida, it still would not create vicarious liability for conduct by independent drivers.  The first clause of section 5354 limits its application to "construing and enforcing the provisions" of the CPUC chapter governing "Charter-Party Carriers of Passengers," including TNCs.  CPUC § 5354.  It does not impose on TNCs tort liability for any "act, omission, or failure" by a driver, much less vicarious tort liability.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR "COMMON CARRIER'S NON-DELEGABLE DUTY"

Plaintiffs allege that Uber is a common carrier and thus Uber is bound by a duty to protect Plaintiffs from the intentional tortious conduct of the independent drivers.  Compl. ¶¶ 386-400.  But, Florida law expressly provides that TNCs such as Uber are *not* common carriers, Fla. Stat. § 627.748(2), so Plaintiffs' "common carrier's non-delegable duty" claim fails as a matter of law.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR "NON-DELEGABLE DUTIES"

The Complaint alleges that "the scope of employment" requirement for vicarious liability "does not apply because the drivers' torts were a breach of Uber's non-delegable duties," Compl. ¶ 426, and that Uber is liable for breaching so-called "Other Non-Delegable Duties to Provide Safe Transportation" (Cause of Action F), *id.* ¶¶ 401-17.   In short, Plaintiffs seek to hold Uber vicariously liable for alleged criminal assaults by drivers far *outside* the scope of any alleged employment.[7]  That result is not supported by the non-delegable duty doctrine, under which, a party "may contract out the *performance* of his non-delegable duty to an independent contractor, but he cannot contract out of his ultimate legal *responsibility* for the proper performance of his

---

[7] Plaintiffs' attempt to use the doctrine of non-delegable duties to establish vicarious liability is improper under Florida law.  *See Armiger* v. *Associated Outdoor Clubs, Inc.*, 48 So. 3d 864, 875-76 (Fla. 2d DCA 2010).

duty by the independent contractor." *U.S. Sec. Servs. Corp.* v. *Ramada Inn, Inc.*, 665 So. 2d 268, 270 (Fla. DCA 1995) (per curiam) (emphasis in original).

Here, Plaintiffs do not - - and cannot - - plead facts showing that Uber decided to assign, subcontract, or delegate its *own* alleged duties to drivers.  According to the Complaint itself, Uber *itself*, not drivers, negligently performed Uber's alleged responsibilities by failing to, e.g., "adapt or improve its safety procedures," "warn passengers of the risk of Uber riders," "adequately vet prospective drivers," "establish and maintain an appropriate and robust system for receiving passenger complaints of sexual misconduct," and "use the utmost care and vigilance to protect Plaintiffs from its own drivers."  *See* Compl. ¶ 365.  The Complaint does not allege that Uber assigned or delegated any of those alleged responsibilities to drivers; it alleges that Uber *itself* negligently performed those alleged responsibilities.[8]  For example, it is not alleged that Uber entrusted to drivers the development of new safety technologies or safety features.  What Plaintiffs *do* allege about the drivers is not that they breached a duty owed by Uber and delegated to the drivers, but that the drivers committed their own terrible and intentional acts of sexual assault and harassment.  *Id.* ¶ 35.

A principal is not liable for every negligent act of an independent contractor toward a plaintiff simply because the principal itself owes some non-delegable duty to the plaintiff. *Ramada Inn, Inc.*, 665 So. 2d at 271.  A principal "is *only* liable for the independent contractor's breach of the [principal's] non-delegable duty."  *Id.* (emphasis in original); *see also, e.g.*, *Z.M.L.* v. *D.R. Horton, Inc.*, 2021 WL 3501099, at *4 (M.D. Fla. June 11, 2021) (in case against company for sexual abuse by employee of a contractor, "the scope of the duty . . . relate[s] to the home maintenance work, not to wholly unauthorized interactions with the homeowner's family").  Moreover, the non-delegable duty doctrine is not meant to apply to intentional torts beyond an independent contractor's authorized work, but to hold an "employer liable for the <u>negligence</u> of the independent contractor" in performing the principal's duties.  Restatement (Second) of Torts

---

[8] The so-called "duty to provide safe transportation," if it exists at all, is functionally the same thing as the common carrier duty.  *See* Restatement (Second) of Torts § 314A.  Plaintiffs' purported cause of action for "other non-delegable duties" seeks to repackage the common carrier negligence claim to give Plaintiffs multiple bites at the same basic allegation.  That Uber is not a common carrier *by statute* makes Plaintiffs' attempt at repackaging all the more baseless.

ch. 15, topic 2, intro. note (emphasis added); *see also M.S.* v. *Nova Se. Inc.*, 881 So. 2d 614, 620

(Fla. 4th 2004).   Here, Plaintiffs accuse the drivers not of negligence, but of deliberate and

intentional torts of the most heinous kind, sexual assault.  Compl. ¶ 35.

## V.   PLAINTIFFS' FRAUD-RELATED CLAIMS SHOULD BE DISMISSED

The requisite elements of an intentional misrepresentation claim are: "(1) a false statement

concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an

intention that the representation induce another to act on it; and (4) consequent injury by the party

acting in *reliance* on the representation."  *Butler* v. *Yusem*, 44 So. 3d 102, 105 (Fla. 2010)

(emphasis in original). Claims for fraud must satisfy the heightened pleading standard of Rule

9(b), by "stat[ing] with particularity the circumstances constituting fraud,"  Fed. R. Civ. P. 9(b),

including "an account of the time, place, and specific content of the false representations as well

as the identities of the parties to the misrepresentations,"  *Swartz* v. *KPMG LLP*, 476 F.3d 756,

764 (9th Cir. 2007) (quotations omitted); *Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04

(9th Cir. 2003); *Omnipol, A.S.* v. *Multinational Def. Servs.*, 32 F.4th 1298, 1307 (11th Cir. 2022).

Here, by definition, the Complaint cannot satisfy Rule 9(b) because it does not allege any

facts specific to any Plaintiff.   While the Complaint describes an assortment of alleged

misstatements by Uber over a broad period of time, it does not allege (a) which specific Plaintiff,

(b) saw which specific statement, (c) where or when she specifically saw it, (d) how that specific

Plaintiff actually and justifiably relied on the specific statement, or (e) how that specific Plaintiff

was damaged as a result.  That this is an MDL does not relieve Plaintiffs of having to plead with

specificity, nor does it dilute the requirements of Rule 9(b).   In an MDL, "to satisfy the

requirements of Rule 9(b), plaintiffs must 'inject precision and some sort of substantiation into

their allegations of fraud.'"  *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 2001 WL

1266317, *7 (D.N.J. Sept. 30, 1997) (citation omitted); *see also JCCP Demurrer Order* at 12-15.[9]

---

[9] To the extent that Plaintiffs assert a claim for negligent misrepresentation, the elements largely overlap with the elements of intentional misrepresentation as relevant here, *Specialty Marine & Indus. Supplies, Inc.* v. *Venus*, 66 So. 3d 306, 309 (Fla. 1st DCA 2011), and the claim fails for the same reason as the intentional misrepresentation claim.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW          Case No. 3:23-md-03084-CRB

A.    **The Complaint Fails to Plead Reliance**

"[R]eliance requires the plaintiff to have received, believed, and acted upon a misrepresentation by the defendant." *Prentice* v. *R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 838 (Fla. 2022) (quotations omitted).  Establishing reliance "means that a plaintiff has entered a transaction in whole or in part because of the defendant's fraudulent conduct."  *Id.*; *see also Schalamar Creek Mobile Homeowner's Ass'n, Inc.* v. *Adler*, 855 F. App'x 546, 550-51 (11th Cir. 2021).  Like all elements of fraud, Plaintiffs must plead with particularity " that they *actually relied* on the misrepresentations or omissions."  *Meridian Tr. Co.* v. *Batista*, 2018 WL 4760277, at *3 (S.D. Fla. Sept. 30, 2018) (emphasis added).  Reliance is thus highly individualized and specific to each plaintiff and "therefore, generally alleging reliance is insufficient."  *See JCCP Demurrer Order* at 13.  A plaintiff must establish that the defendant's acts and representations induced him to either act or refrain from acting, to his detriment.  *See Wildin* v. *DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019); *Thurn* v. *Kimberly-Clark Corp.*, 2023 WL 4455630, at *4-5 (M.D. Fla. July 11, 2023).  For the misrepresentation claims to survive, the Complaint must allege - - but does not allege - - specific facts, based on each Plaintiff's specific individual experiences, supporting that each saw or heard specific representations by Uber, and that those specific representations induced her to arrange a ride through the Uber App or enter a vehicle arranged through the App.  *See Smith* v. *Sox*, 2023 WL 6376381, at *3 (M.D. Fla. Sept. 29, 2023); *Lamb* v. *Graco Children's Prod. Inc.*, 2012 WL 12871963, at *2-3 (N.D. Fla. Jan. 24, 2012).

The *In re Ford Motor Co. Ignition Switch Prods. Liab. Lit.* MDL is instructive.  That MDL involved over 100 plaintiffs alleging that defendant Ford "fraudulently misinform[ed] the public" regarding ignition switches.  2001 WL 1266317, at *6.  Though plaintiffs "described with some particularity the nature of Ford's alleged misrepresentations to the public and the mediums through which these statements were made," the court found that the complaint was "nonetheless deficient in that it fail[ed] to describe with any particularity how plaintiffs relied upon the alleged misrepresentations and omissions of defendant, or how such reliance resulted in damages."  *Id.* at *7-8.  Just like the Complaint here, the complaint "fail[ed] to state what advertisement or other statement by Ford was heard or seen and then relied upon by each . . . plaintiff."  *Id.* at *8.

- 13 -

Although the Complaint lists an assortment of "examples" of alleged representations by Uber, Compl. ¶ 188, it does not allege particularized facts indicating which specific Plaintiff was aware of and saw which specific representations, and which specific Plaintiff then relied upon those representations in choosing to use Uber's services.  *Wildin*, 941 F.3d at 1128; *Smith*, 2023 WL 6376381, at *3; *Thurn*, 2023 WL 4455630, at *4-5.  "It is implausible, to state the obvious, that every one of [the] individual Plaintiffs actually saw and relied on each and every one of the statements and other representations."  *JCCP Demurrer Order* at 14.

**B.**     **Plaintiffs Fail to Identify the Alleged False Statements with Specificity**

The Complaint also fails to allege with specificity the "what, when, where, and how" of the alleged misrepresentations and to which specific Plaintiff a specific misrepresentation was made.  *Vess*, 317 F. 3d at 1106; *see Young* v. *Grand Canyon Univ., Inc.*, 57 F.4th 861, 873 (11th Cir. 2023).  That pleading defect would require dismissal even if there were only a single Plaintiff. *See, e.g.*, *Rodriguez* v. *Uber Techs., Inc.*, No. 2020-CA-1823, at 4-5 (Fla. 9th Cir. Ct. Aug. 9, 2021), Atkins Decl. Ex. 7 (dismissing fraud claims because plaintiff made only "bare allegations of fraudulent conduct" and did not "identify[] the time, place, and manner in which the conduct occurred"); *Thurn*, 2023 WL 4455630, at *5; *Lamb*, 2012 WL 12871963, at *2.[10]  But it is a major problem here because the Complaint alleges a menu of allegedly false statements, none of which is connected to any specific Plaintiff.

Instead, Plaintiffs make only general allegations that Uber made representations to "Plaintiffs and the general public" and that "Uber made intentional misrepresentations of fact to all users of the Uber App."  Compl. ¶¶  369-70.  The plaintiffs in the JCCP attempted a similar approach, which the JCCP court rejected.  *JCCP Demurrer Order* at 15.  That Plaintiffs here attached alleged "[e]xamples of safety-based marketing" by Uber also does not change the result

---

[10] *See also Estate of Stella Yeh, et al.* v. *Uber Techs., Inc.*, CGC-20-584408, at 4 (Super Ct. S.F. County Aug. 6, 2021) (failure to identify the "specific representations the [passenger] purportedly read or heard, when or where she read or heard them," and "which misrepresentations she purportedly relied upon" was fatal to plaintiff's claims); *Minzer* v. *Barga*, 2020 WL 2621710, at *6 (N.Y. Super. Ct. May 22, 2020) (dismissing fraud claims because the plaintiff alleged "he was aware of Uber's alleged safety promises" but not "how or when [he] came to possess this information).

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW          Case No. 3:23-md-03084-CRB

because these self-selected examples are still not tied to any specific Plaintiff, to any time, or to any place.

For example, in *In re Volkswagen Clean Diesel*, the complaint "detail[ed] specific advertisements and marketing materials," but the court found that the named plaintiffs' allegations "lack[ed] sufficient detail about the particular circumstances surrounding VW's misrepresentations to Plaintiffs." 349 F. Supp. 3d 881, 914 (N.D. Cal. 2018).  In particular, many of the named plaintiffs failed to identify "the specifics of what was represented" and none identified when and where they saw the advertising. *Id.* at 915.  The court found this dispositive, emphasizing that "such <u>linking allegations</u> are required to satisfy Rule 9(b)." *Id.* (collecting cases) (emphasis added).  The Complaint here suffers from the same defect.

**C.      The *McKnight* Class Action Settlement Bars Many Misrepresentation Claims**

1.      <u>The Complaint Tries to Evade the *McKnight* Settlement</u>

By force of the June 1, 2017 Settlement of the *McKnight* v. *Uber* class action, 14-cv-05615 (N.D. Cal.), Plaintiffs here who were members of that class, and did not opt out, released Uber from "any claim arising out of or relating to [Uber's] representations or omissions regarding [1] background checks, [2] safety, or [3] the Safe Rides Fee." *McKnight* Am. Stip. of Settlement ¶ 31(a) (June 1, 2017) (the "Release"), Atkins Decl. Ex. 2.[11]  Still, the Complaint includes allegations that are almost identical to those in the complaint in *McKnight*. *McKnight* Complaint, Atkins Decl. Ex. 1.[12]  For example:

- The *McKnight* Complaint alleged that Uber misrepresented that "Uber is committed to connecting you with the safest ride on road."  The Complaint here alleges that Uber falsely advertised "the safest ride on the road."  *McKnight* Compl. ¶ 26; Compl. ¶¶ 20, 206, 207.

- The *McKnight* Complaint alleged that Uber misrepresented that it set "the strictest safety standards possible."  The Complaint here alleges that Uber misrepresented that it set "the strictest standards possible."  *McKnight* Compl. ¶ 26; Compl. ¶¶ 20, 207.

---

[11] Where a defendant moves to dismiss a claim released by a prior settlement agreement, the Court may consider the settlement agreement because it is "integral to the plaintiff's claims and its authenticity is not disputed." *Lesnik* v. *Eisenmann SE*, 374 F. Supp. 3d 923, 936 (N.D. Cal. 2019). Uber respectfully requests that this Court take judicial notice of the McKnight Release, Complaint, and Mandate. See Atkins Decl. Exs. 1-3.

[12] Plaintiffs cite the class action claims that culminated in the *McKnight* settlement.  Compl. ¶ 208.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW          Case No. 3:23-md-03084-CRB

- The *McKnight* Complaint alleged that Uber misrepresented that drivers are "thoroughly screened through a rigorous process we've developed using industry-leading standards." The Complaint here alleges that drivers are screened by "an industry-leading background check process." *McKnight* Compl. ¶ 27; Compl. ¶¶ 20, 207.

- The *McKnight* Complaint alleged that safety standards "aim to go above and beyond local requirements." The Complaint here alleges that Uber misrepresented that it "aims to go above and beyond local requirements" with "industry leading" background checks. *McKnight* Compl. ¶ 26; Compl. ¶ 20.

*McKnight* was settled pursuant to an Amended Stipulation of Settlement dated June 1, 2017, which provided that all class members who did not opt out released claims "of any nature whatsoever, known or unknown, . . . which Plaintiffs and Class Members have or may have arising out of or relating to any allegations made in the Action, or any legal theories that could have been raised based on the allegations in the Action." *McKnight* Am. Stip. of Settlement ¶ 31 (defining "Released Claims"). "The Released Claims include, but are not limited to, any claim arising out of or relating to [Uber's] representations or omissions regarding background checks, safety, or the Safe Rides Fee." *Id.*.[13] In exchange for the Release, Uber agreed, among other things, that it would cease any use of anything called a "Safe Rides Fee" beyond early 2016. The Settlement Class included all passengers who "used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories," "from January 1, 2013 to January 31, 2016," and did not "elect exclusion or opt out from the Class." *Id.* ¶¶ 6, 8.[14] Therefore, any Plaintiff here who was a class member already released Uber from "any claim arising out of or relating to [its] representations or omissions regarding background checks, safety, or the Safe Rides Fee." *Id.* ¶ 31.

The Complaint's total lack of specificity as to which Plaintiffs relied on which alleged misrepresentations and omissions, and when and where they did so, prevents Uber and the Court

---

[13] Final judgment in the *McKnight* action, following resolution of appeals, was entered by the Ninth Circuit on December 22, 2022. *McKnight* Mandate, Atkins Decl. Ex. 3. The release was effective on December 23, 2022. *McKnight* Am. Stip. of Settlement ¶ 16.

[14] The *McKnight* Release states that "Class Members are not releasing any claims for personal injuries." *McKnight* Am. Stip. of Settlement ¶ 31. That exception immediately follows the release of "any claim arising out of or relating to Defendants' representations or omissions regarding background checks, safety, or the Safe Rides Fee." *Id.* Thus, the personal injury exception applies only where the claim relates to something other than an alleged representation or omission about background checks, safety, or the Safe Rides Fee.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW          Case No. 3:23-md-03084-CRB

from determining which Plaintiffs are barred by the Release from pursuing which allegations about which alleged misrepresentations and omissions.  Even so, it is clear that there are Plaintiffs in the class - - i.e., individuals who "from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories."  *Id.* ¶ 6. [15]  Moreover, no claims relating to the "Safe Rides Fee" could have survived the *McKnight* settlement because that fee was terminated as part of the settlement and therefore did not exist after early 2016.  The MDL cannot be used to avoid the enforcement of the *McKnight* settlement by lumping all the Plaintiffs together with no specifics.  Put simply, either the Plaintiffs were part of the settlement and barred from alleging the released claims or the Plaintiffs otherwise were not charged a Safe Rides fee and cannot assert a claim based on the fee.

## 2.    The "Safe Rides Fee" Allegations Should Be Dismissed or Stricken

There is at least one allegation that cannot stand and should be dismissed now with prejudice and/or stricken in light of the *McKnight* settlement:   the allegation that the "Safe Rides Fee" constitutes an actionable misrepresentation or omission.  Compl. ¶¶ 203-04.  Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  As the Ninth Circuit has instructed, "'immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded," and "'impertinent' matter consists of statements that do not pertain, and are not necessary to the issues in question."  *Fantasy, Inc.* v. *Foberty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Here, the allegations about the "Safe Rides Fee" being misleading are undeniably immaterial because they cannot, given the *McKnight* settlement, support any misrepresentation or omission claims.  *See supra* Section V.C.1.  *Second*, it follows from the definition of the *McKnight* class that any Plaintiffs not in the class were those

---

[15] Uber has identified 21 Plaintiffs who allege incidents in California, Florida, Illinois, New York, and Texas who released claims pursuant to Release.  Sauerwein Decl. ¶ 22.  Uber is not aware of any MDL Plaintiff who opted out of the *McKnight* class action settlement.

1   who did not obtain a "Uber Service With a Safe Rides Fee," and therefore cannot claim to have

2   been misled by the Safe Rides Fee.  *Third*, as the use of the Safe Rides Fee was enjoined as part

3   of the Settlement, no Plaintiff can have a claim based on a program that no longer existed after

4   early 2016.

5           **D.       The Complaint Alleges Representations That Are Not Actionable**

6           Although the Complaint includes a list of alleged misrepresentations, it does not plead facts

7   showing that those statements are false, or in what way they are false.  *Douse* v. *Boston Scientific

8   Corp.*, 2018 WL 3536080, at *4 (M.D. Fla. July 23, 2018); *Gaspari* v. *U.S. Bank Nat'l Ass'n*, 2012

9   WL 527533, at *3 (M.D. Fla. Feb. 17, 2012).  The Complaint alleges, for example, that Uber made

10  representations about the existence of "safety features built into every ride," including that "911

11  help is a swipe away" and that RideCheck "can help detect if your trip goes unusually off course."

12  Compl. ¶ 227, Appx. A, Ads. 8, 28, 32; *see also* Appx. A, Ads. 7, 9, 10, 23, 24, 26, 27.  The

13  Complaint does not, however, allege that "safety features" are <u>not</u> built into every ride; that "911

14  help" is <u>not</u> a swipe (of the finger) away; or that the RideCheck feature does <u>not</u> "help detect" trips

15  that go off course.  Likewise, the Complaint points to Uber's statements that drivers "must undergo

16  a multi-step safety screen" and that Uber "rescreens drivers every year."  Compl. ¶ 215; *see also

17  id.* ¶ 216; Appx. A, Ad. 30.  Nowhere does the Complaint allege, however, facts showing that

18  background checks are <u>not</u> used to vet drivers; that there is <u>not</u> a multi-step process; or that there

19  are <u>not</u> background checks run every year.  What Plaintiffs do allege is that Uber should have

20  different and additional safety features, and should use different background checks.  *See* Compl.

21  ¶ 365(a)-(p).  But that belief does not render false Uber's statements about the safety features it

22  does, in fact, have; or about the background checks that are, in fact, conducted.

23          The Complaint also alleges statements that are not falsifiable, and thus are not actionable.

24  A false representation must be one of an existing or past fact, and not a mere promise to do some

25  act in the future.  *Thor Bear, Inc.* v. *Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA

26  1994).  Accordingly, statements of opinion or puffery are not actionable.  *Id.*; *MDVIP* v. *Beber*,

27  222 So. 3d 555, 561 (Fla. 4th DCA 2017).  Nor are statements or predictions about future events.

28  *Brod* v. *Jernigan*, 188 So. 2d 575, 579 (Fla. 2d DCA 1966).

- 18 -

The Complaint alleges numerous such non-actionable statements by Uber, including: "Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone;" "That's why we're committed to safety—from the creation of new standards to the development of technology with the aim of reducing incidents;" and "Uber is dedicated to keeping people safe on the road."  Compl. ¶¶ 211, 213, 221; *see also id.* Appx A. Ad 6.  These are not statements concerning past or existing material facts.  *Thor Bear*, 648 So. 2d at 172.  They are expressions of company pride and esteem, communicated in aspirational language that would not reasonably be understood to be subject to factual verification.  *See Mogensen* v. *Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1211 (M.D. Fla. 2014) ("generalized, non-verifiable, vaguely optimistic statements" are corporate puffery and "immaterial as a matter of law and therefore inactionable"); *XYZ Two Way Radio Serv., Inc.* v. *Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) ("Many of the statements are couched in aspirational terms— 'committed to,' 'aim to,' 'believe deeply'—that cannot be proven true or false.").  And they refer to "safety" in vague and general terms, without promising any specific standard of safety or guaranteeing absolute safety.  *See Sanlu* v. *Royal Caribbean Cruises, Ltd.*, 2019 WL 8895223, at *6 (S.D. Fla. Nov. 15, 2019) (general statements and promises concerning safety and reliability are "mere puffery and cannot, therefore, support a claim for misrepresentation"); *Gibson* v. *NCL (Bah.) Ltd.*, 2012 WL 1952667, at *6 (S.D. Fla. May 30, 2012) ("general promise of a 'safe, reliable, licensed, excursion' is not actionable").[16]

**E.      The Complaint Fails to Adequately Plead Fraud by Omission**

Plaintiffs allege that Uber is liable for "misrepresentation by omission."  Compl. ¶ 368.  A claim for fraudulent concealment requires that: (1) the defendant concealed or failed to disclose a fact that is material; (2) the defendant knew or should have known that the material fact was one that should be disclosed; (3) the defendant knew that concealment of or failure to disclose the

---

[16] For this reason, courts have held that Uber marketing materials relating to safety - - many of them involving the same statements alleged here - - are non-actionable for fraud claims.  A Texas court held, for example, that safety-related "statements in Uber marketing materials . . . involve mere opinion or puffery."  *Am. Honda Motor Co.* v. *Milburn*, 668 S.W.3d 6, 33 (Tex. App.— Dallas Nov. 24, 2021).  A federal court held that Uber's general safety-related statements are distinguishable from "a claim of absolute safety."  *Fusco* v. *Uber Techs.*, 2018 WL 3618232, at *6 (E.D. Pa. July 27, 2018).

material fact would induce the plaintiff to act; (4) a duty required the defendant to disclose the material fact; and (5) the plaintiff detrimentally relied on the defendant's misrepresentation.[17] *Hess* v. *Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015).  Fraudulent concealment claims are "subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."  *In re Volkswagen*, 349 F. Supp. 3d at 915 (citing *Kearns* v. *Ford Motor Co.,* 567 F.3d 1120, 1126–27 (9th Cir. 2009)).  This claim should be dismissed for the following reasons:

*First*, Plaintiffs do not allege an omission of "material fact."  Instead, as discussed above, they state a number of accusations and opinions about the company:  Uber "failed to disclose the truth that Uber prioritized growth and driver supply over passenger safety"; Uber "failed to disclose the truth that Uber failed to adequately protect passengers against sexual assault or harassment committed by drivers"; and Uber did not disclose "the truth of its priorities and lack of adequate safety mechanisms."  Compl. ¶¶ 372-74.  These are not allegations of undisclosed material facts, but derogatory characterizations of Uber.  The Complaint therefore fails to allege an omission or concealment with the factual specificity required by Rule 9(b).

*Second*, Plaintiffs fail to allege with the required particularity that Uber had a duty to disclose.  *Florida* v. *Mark Marks, P.A.*, 698 So. 2d 533, 539 (Fla. 1997).  "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them."  *Id* (citation omitted).  "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party."  *Taylor Woodrow Homes Fla., Inc.* v. *4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. 5th DCA 2003).  Here, the Complaint alleges only, in a vague and conclusory fashion, that Uber "had a *special* relationship with the passengers."  Compl. ¶ 374(a) (emphasis added).  But "[w]hen the parties are dealing at arm's length," such as Uber and Plaintiffs, "a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other."  *Taylor Woodrow Homes Fla.*, 850

---

[17] For the reasons stated supra [##], Plaintiffs fail to allege reliance as to each particular Plaintiff.  "Florida law imposes a reliance requirement in an omissions case, which . . . requires a party asserting fraud to establish that but for the alleged misrepresentation or nondisclosure, the party would not have entered the transaction."  *Garrett-Alfred* v. *Facebook, Inc.*, 540 F. Supp. 3d 1129, 1139 (M.D. Fla. 2021); *see also Thurn*, 2023 WL 4455630, at *4-5 (M.D. Fla. July 11, 2023).

So. 2d at 541; *Pop* v. *Lulifama.com LLC*, 2023 WL 4661977, at *7 (M.D. Fla. July 20, 2023), *appeal dismissed*, 2024 WL 21403 (11th Cir. Jan. 2, 2024); *see also Taylor* v. *Am. Honda Motor Co., Inc.*, 555 F. Supp. 59, 64-5 (M.D. Fla. 1982).

Moreover, the Complaint does not plausibly allege that Uber assumed a duty because Plaintiffs lacked an equal opportunity to learn the material information regarding the safety of rides arranged through the Uber App. The Complaint itself alleges otherwise. It alleges that safety issues, including sexual misconduct by drivers, have been a topic of public discussion since at least 2014. The Complaint alleges that it was in 2014 that Uber started receiving reports of sexual assault by drivers against riders. Compl. ¶ 258. It then cites a *New York Times* article *from 2014* called "Uber's System for Screening Drivers Draws Scrutiny," which details public and government criticism over Uber's driver screening and the alleged rape of a passenger. *Id.* ¶ 145 n.19; *see also id.* ¶ 151 (discussing 2014 investigation into Uber's driver screening); *id.* ¶ 260 n.60 (citing 2014 *New York Times* article about rape of passenger). Also in 2014, the original Complaint in the *McKnight* class action was filed, which alleged that Uber made misleading statements about passenger safety because, among other things, a woman allegedly (it was never proven) was attacked by a driver with a criminal background. Atkins Decl. Ex. 1, *McKnight* Compl. ¶ 53 n.2.[18] As discussed above, numerous Plaintiffs *in this case* were actually class members in *McKnight* and received payment in exchange for releases. Those Plaintiffs certainly did not lack opportunity to discover information about Uber safety-related statements, including background checks. *Taylor*, 555 F. Supp. at 64 ("Florida law additionally charges a claimant with knowledge of all facts that he could have learned through diligent inquiry."); *see also Garrett-Alfred*, 540 F. Supp. 3d at 1139.

Then, as Plaintiffs themselves allege, in 2019, Uber released the 84-page 2017-2018 US Safety Report detailing with statistical precision the number of incidents of the most severe forms of sexual misconduct on the platform. Compl. ¶ 273. Uber issued the Report even though it was not legally mandated to do so and even though doing so was above and beyond any industry

---

[18] The same alleged incident is discussed in the original Complaint filed in December 2014. *McKnight* v. *Uber Techs., Inc.*, 14-cv-05615, ECF No. 1, ¶ 36.

standard (e.g., Lyft had not launched a report; there are also no notices or reports regarding sexual assaults on airplanes and cruises or at hotels, despite the fact that sexual assaults occur in those industries too).  That directly contradicts Plaintiffs' accusation that Uber did not disclose facts about safety and, more generally, that Uber is the type of company that conceals such facts.[19]

## VI.   THE CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED

In support of their NIED claims, Plaintiffs allege that "[a]s a proximate result of Uber's negligence, Plaintiffs were assaulted or harassed by Uber drivers and suffered severe emotional distress."  Compl. ¶ 385.  But an NIED claim requires the following: "(1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person."  *Zell* v. *Meek*, 665 So. 2d 1048, 1054 (Fla. 1995) (emphasis added).  Here, Plaintiffs do not allege that they suffered emotional distress as a result of injury to another; Plaintiffs allege that they are the "directly injured person[s]."  Their claim for [NIED] must therefore be dismissed.  *See Rodriguez*, No. 2020-CA-1823, at 7.

## VII.   FAILS TO ALLEGE NEGLIGENT ENTRUSTMENT

To state a claim for negligent entrustment, Plaintiffs must plead and prove, among other elements, that Uber supplied a "chattel" to someone whom it "knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of harm to himself and others."  *Kitchen* v. *K-Mart Corp.*, 697 So. 2d 1200, 1202 (Fla. 1997), citing Restatement (Second) of Torts § 390 (1965).  The Complaint fails to plead such a claim.  For example, Plaintiffs allege that Uber permitted the independent drivers to use the Uber "product" and trademarks.  *See* Compl. ¶ 363 (n).  However, rather than expanding the definition of "chattel" to include software or trademarks, courts applying Florida law have expressly defined

---

[19] Plaintiffs also do not plausibly allege any other basis for a duty, i.e. that Uber made a partial disclosure of information that required supplementation, s*ee Marriott Int'l Inc.* v. *Am. Bridge Bahamas, Ltd.*, 193 So. 3d 902, 908 (Fla. 3d DCA 2015), or Uber perpetrated an "artifice or trick" that prevented Plaintiffs from learning the allegedly concealed information, *Taylor*, 555 F. Supp. at 64-65.

"chattel" to *exclude* intangible property.  *See Bain* v. *Jockey Club Tech. Servs., Inc.*, 2007 WL 9706994, at *4 (S.D. Fla. Oct. 2, 2007); *see also Burshan* v. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835, 846 (Fla. 4th DCA 2001).  In any event, Plaintiffs also do not allege that any independent driver negligently used the Uber App or Uber's trademarks in particular, or that any such alleged negligent use caused a particular Plaintiff's injury.

## VIII.   PLAINTIFFS' STRICT PRODUCT LIABILITY CLAIM FAILS

A manufacturer, distributor, or retailer of a product is liable in tort if a defect in the product causes injury while the product is being used "as intended." *Jennings* v. *BIC Corp.*, 181 F.3d 1250, 1256 (11th Cir. 1999).  As relevant here, defining whether there is a "product" at issue is a condition precedent to successfully maintain the action.  *See Edward M. Chadbourne, Inc.* v. *Vaughn*, 491 So. 2d 551, 553 (Fla. 1986).  Whether or not the object is defined as a "product" is a question of law for the court to decide.  *See Pamperin* v. *Interlake Companies, Inc.*, 634 So. 2d 1137, 1140 (Fla. 1st DCA 1994).

Here, the Complaint fails to allege facts sufficient to show the Uber App is a "product" or "tangible personal property distributed commercially for use or consumption."  Restatement (Third) of Torts: Prod. Liab. § 19.  To the contrary, as the Complaint itself acknowledges, the Uber App provides a *service* of connecting riders with drivers.  *See, e.g.*, Compl. ¶ 390 ("Uber charges standard fees for its services through its application."); *id.* ¶ 391 ("Any member of the public can use Uber's transportation services."); *see also id.* ¶¶ 13, 70, 73, 119, 179, 206, 352, 388, 408, 421, 429-30.  Similarly, the Florida Legislature recognizes that TNCs provide a service.  *See* Fla. Stat. § 627.748(1)(e) ("A [TNC] us[es] **a digital network** to connect a rider to a TNC driver, who provides prearranged rides." (emphasis added)); *id.* § 627.748(1)(a) (defining "digital network" as an "online-enabled technology application <u>service</u>, website, or system offered or used by a [TNC] which enables the prearrangement of rides with [TNC] drivers" (emphasis added)).

"Services, even when provided commercially, are not products."  Restatement (Third) of Torts: Prod. Liab. § 19; *see also Porter* v. *Rosenberg*, 650 So. 2d 79, 80 (Fla. 4th DCA 1995).  Since software, like the Uber App, generally is designed to provide a service, "most software does not fall within the purview of product liability law under this definition."  Raymond T. Nimmer,

Law of Comput. Tech. § 12:41 (Nov. 2023 Update); *see also* Michael D. Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (3d ed. 2024 Supp.); Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005).   For these reasons, courts in many jurisdictions have found that the Uber App, and similar apps, are not products.   For example, in *Baxter-Armentrout* v. *Lyft, Inc.*, a trial court granted Lyft's motion to dismiss product liability claims with prejudice because under the Florida TNC statute, the Lyft App is not a product, but a statutorily defined "service."   No. 50-2021-CA-013917-XXXX-MB, at 5 (Fla. 15th Cir. Aug. 29, 2022), Atkins Decl. Ex. 6.   And in the JCCP, the California superior court held that "[t]he Uber App is no more a 'product' . . . than is a telephone that a customer uses to call a taxi."   *JCCP Demurrer Order* at 18.[20]

Even if the Uber App could be viewed in some respect as a product under Florida law (it is not), Plaintiffs would still need to establish that the "predominant purpose" of their transaction with Uber was for the purpose of purchasing a product (the App) rather than obtaining a service (connecting with an independent driver to obtain a ride).   *Porter,* 650 So. 2d at 80 (physician's implantation of allegedly defective breast implant was a service, outside of products liability law); *North Miami General Hospital, Inc.* v. *Goldberg*, 520 So. 2d 650, 652 (Fla. 3d DCA 1988); *see also* 41A Fla. Jur. 2d Products Liability § 20 ("Strict liability will also not be imposed where an injured party alleges that professional services connected with the use of a product, rather than the product itself, were defective or where the professional services could not have been rendered without using the product.").   In *Baxter-Armentrout*, the court held that even if the Lyft App could be considered a product, the plaintiff's product liability claims would also independently fail

---

[20] *See also, e.g.*, *Arruda* v. *Rasier, LLC*, No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024); *Martinez* v. *Uber Techs., Inc.*, No. 23STCV09795 (Cal. Super. Ct., Oct. 3, 2023); *Ramos* v. *Uber Techs., Inc.*, No. 22STCV33007 (Cal. Super. Ct. June 1, 2023); *Luna, Avelardo* v. *Uber Techs., Inc.*, No. 22STCV10806 (Cal. Super. Ct., Sept. 27, 2022); *Behuet & Hunt* v. *Uber Techs., Inc.*, 2022 WL 20318684, at *2 (Cal. Super. Ct. July 13, 2022); *Shannon* v. *Uber Techs., Inc.*, No. 21STCV42029 (Cal. Super. Ct., Apr. 15, 2022); *Flores* v. *Uber Techs., Inc.*, No. 19STCV24988 (Cal. Super. Ct., Mar. 22, 2022); *Norman* v. *Uber Techs., Inc.*, No. 21STCV35632 (Cal. Super. Ct. Mar. 8, 2022); *Cruz Lopez* v. *Uber Techs., Inc.*, No. 21CV376012 (Cal. Super. Ct. Dec. 7, 2021); *Polanco* v. *Lyft, Inc.*, No. 30-2019-01065850 (Cal. Super. Ct. May 13, 2021); *Toral* v. *Uber Techs., Inc.*, No. 20STCV02030 (Cal. Super. Ct. Apr. 14, 2021); *Jane Doe No. 1* v. *Uber Techs., Inc.*, No. 19STCV11874 (Cal. Super. Ct. Nov. 30, 2020); *see also Ziencik* v. *Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (same as to Snapchat); *Jackson* v. *Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022) (same as to Airbnb).

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW          Case No. 3:23-md-03084-CRB

because it was indisputable that Lyft's "predominant purpose" is to provide a service through the Lyft App.  No. 50-2021-CA-013917-XXXX-MB (Fla. 15th Cir. Aug. 29, 2022), at 5. In applying the predominant purpose test, the court again relied on the plain language in the TNC statute, which explicitly defines the "connections to potential riders" that Lyft facilitates through the Lyft App as "services." *Id.*

Even setting aside the threshold issue of whether the Uber App is a product, the Complaint also fails to state a claim for strict product liability because it does not allege any defect or condition necessitating a warning.  Nowhere does the Complaint allege that the App had a glitch or bug that impaired its ability to connect riders with drivers, or that the App had an inherent and dangerous design flaw that prevented it from performing its function of connecting riders with drivers.  *See West* v. *Caterpillar Tractor Co.*, 336 So. 2d 80, 86-7 (Fla. 1976).  Likewise, the Complaint does not allege that the design of the Uber App itself, such as its coding sequences that connect riders with drivers, is dangerous when used as intended and therefore requires warnings. *See Jimenez* v. *Holiday CVS, LLC*, 2023 WL 4251176, at *2 (S.D. Fla.).

Instead, Plaintiffs contend that Uber negligently failed to prevent the sexual misconduct of independent drivers because it implemented inadequate safety measures and background checks. Compl. ¶ 473.  But Uber's alleged "failure to permit passengers to select drivers of the same gender" on the Uber App (*id.* ¶ 473(b)), for example, is not a defect in the software's function of connecting riders with drivers.  Nor is Uber's supposed failure to include a feature that would "ship dash cameras to drivers." *Id.* ¶ 487(a).  These are simply safety measures that Plaintiffs think Uber should take, but they do not go to the design of the software itself.

The strict product liability claims fail for the additional reason that the Complaint does not plausibly allege causation with respect to any individual Plaintiff.  Plaintiffs must plead facts sufficient to show that there was a proximate causal connection between the alleged defect and each plaintiff's injury, also known as "but for" causation. *Clark* v. *Boeing Co.*, 395 So. 2d 1226, 1229 (Fla. 2d DCA 1981).  Here, none of the Plaintiffs has satisfied that pleading requirement. For example, the Complaint alleges that the Uber App failed to "utilize its existing GPS, alert, and predictive technology to implement a feature whereby safety alerts are triggered in the event of

1    route deviations or excessive time spent with a passenger at the beginning or end of a route."

2    Compl. at ¶ 487(b).  Yet, the Complaint does not allege, because it would be implausible, that the

3    absence of such "predictive technology" was the but-for cause of all 200+ alleged incidents.

4         The Complaint also fails to plausibly allege proximate causation as to the strict product

5    liability-failure to warn claim. It does not adequately plead that a warning would have prevented

6    any particular Plaintiff's alleged assault. For instance, there is no allegation that each individual

7    Plaintiff used the App herself to order the ride at issue or would have seen any warning issued

8    through the App or otherwise directed to App users.

9    **IX.    PLAINTIFFS' FAIL TO STATE A CLAIM FOR RELIEF UNDER THE UCL**

10        **A.    Plaintiffs Cannot Assert UCL Claims for Incidents That Occurred in Florida**

11        Plaintiffs' claims under the California Unfair Competition Law, Cal. Bus. & Prof. Code §

12   17200 ("UCL"), must be dismissed.  *See* Compl. at ¶¶ 506-13.  California courts have long held

13   that there is a presumption against applying California statutes extraterritorially.  *See Sullivan* v.

14   *Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).  Those courts "ordinarily presume the Legislature

15   did not intend the statutes of [California] to have force or operation beyond the boundaries of the

16   state," absent clear statutory language to the contrary.  *Norwest Mortg., Inc.* v. *Superior Ct.*, 72

17   Cal. App. 4th 214, 222 (1999).  The California Supreme Court has held that "the presumption

18   against extraterritoriality applies to the UCL in full force" because "[n]either the language of the

19   UCL nor its legislative history provides any basis for concluding" otherwise.  *Sullivan*, 51 Cal. 4th

20   at 1207; *see also Ice Cream Distribs. of Evansville, LLC* v. *Dreyer's Grand Ice Cream, Inc.,* 2010

21   WL 3619884, *8 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th Cir. 2012).

22        In assessing whether a foreign resident can avail herself of the UCL, the "critical" questions

23   "are whether the injury occurred in California and whether the conduct of Defendants occurred in

24   California."  *Tidenberg* v. *Bidz.com, Inc.*, 2009 WL 605249, *3-4 (C.D. Cal. Mar. 4, 2009).  Here,

25   the Complaint contains no factual allegations supporting a conclusion that any of the Florida

26   Plaintiffs used the Uber App in California to book the rides during which the incidents

27   occurred.  Indeed, the Complaint contains no allegations about any of the Florida Plaintiffs'

28

1    "individual contacts with California." *Id.* at *5.  On the contrary, for all the Florida Plaintiffs, the

2    incidents, and Plaintiffs' alleged injuries resulting from the incidents, occurred *in Florida*. [21]

3        **B.        Plaintiffs Fail to State a UCL Claim on the Merits**

4        Plaintiffs' allegation that Uber engaged in "unlawful," "fraudulent," and "unfair" business

5    practices is insufficient to state a claim for violation of the UCL.  Compl. ¶¶ 506–10.

6        *First*, Plaintiffs allege that "Uber's conduct was unlawful because it violated Uber's

7    common law duties of care." *Id.* ¶ 507.  In other words, Plaintiffs attempt to satisfy the "unlawful"

8    prong of their UCL claim by relying on allegations that Uber's conduct was negligent.  But

9    "[c]ommon law claims such as negligence cannot form the basis of an unlawful prong claim under

10   the UCL." *Mendez* v. *Selene Fin. LP*, 2017 WL 1535085, at *6 (C.D. Cal. Apr. 27, 2017); *see*

11   *also Shroyer* v. *New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

12       *Second*, in support of their UCL claim, Plaintiffs allege that "Uber's conduct was

13   fraudulent because it was grounded in Uber's representations that it would protect its passengers'

14   safety."  Compl. ¶ 509.  However, Plaintiffs' claim under the "fraud" prong of the UCL fails for

15   the same reasons as their common law fraud claims as the UCL is "governed by Rule 9(b)'s

16   heightened pleading standard." *Frenzel* v. *AliphCom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014).

17       *Third*, Plaintiffs make the conclusory allegation that Uber's "conduct was unfair because

18   it was unscrupulous, contrary to public policy and presented a serious risk of harm to persons Uber

19   was responsible for protecting."  Compl. ¶ 508.  Plaintiffs do not allege, however, that Uber's

20   alleged conduct is "tethered to an[] underlying constitutional, statutory or regulatory provision, or

21   that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an

22   antitrust law." *Doe* v. *CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) (quotations

23   omitted).  Although Plaintiffs speciously claim that Uber's conduct "was grounded in unfair

24   competition because the company enjoys a competitive advantage by not adequately protecting its

25   _____

26   [21] Some courts have held that the UCL may apply extraterritorially to claims based on alleged
     misrepresentations that were developed in and disseminated from California. *E.g., Ehret* v. *Uber*
27   *Techs., Inc.*, 68 F. Supp. 3d 1121, 1131-32 (N.D. Cal. 2014).  However, those cases are
     distinguishable.  *First*, here, there is no factual allegation of misconduct occurring in California.
28   *Second*, the misconduct giving rise to Plaintiffs' claims indisputably occurred outside of the state,
     in Florida.

1   passengers," Compl. ¶ 510, Plaintiffs do not allege any "proof of some actual or threatened impact

2   on competition," *Cel-Tech Comms., Inc.* v. *L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999),

3   nor do Plaintiffs tie their allegations "to some legislatively declared policy," *id.*; *see also In re*

4   *5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2014 WL 5311272, at *26 (C.D. Cal. Sept. 4, 2014).

5   **X.      PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF**

6           Plaintiffs' request for injunctive relief under the UCL, Compl. ¶¶ 506-3, fails for at least

7   two reasons.  *First*, a "plaintiff seeking equitable relief under the UCL must demonstrate the

8   inadequacy of a remedy at law." *Rodriguez* v. *FCA US LLC*, 2023 WL 3150075, at *3 (C.D. Cal.

9   Mar. 21, 2023); *cf. Sonner* v. *Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  That is

10  because the Court lacks equitable jurisdiction to grant the request for injunctive relief where there

11  is an adequate remedy at law.  *See Rodriguez*, 2023 WL 3150075, at *4 (failure to "plausibly

12  alleg[e] [plaintiff] lacks an adequate remedy at law[] is . . . fatal to establishing th[e] court's

13  equitable jurisdiction").  But here, the Complaint is entirely devoid of *any* allegation, plausible or

14  not, that Plaintiffs lack an adequate remedy at law.  Instead, all of the allegations pled in support

15  of Plaintiffs' claims for injunctive relief under the UCL are duplicative of allegations pled in

16  support of Plaintiffs' non-equitable claims for negligence, fraud, and product liability, and

17  pursuant to which Plaintiffs separately seek money damages.  *See, e.g.*, Compl. ¶¶ 367, 380, 490;

18  *see Huynh* v. *Quora Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) ("[Plaintiff] fails to allege or

19  demonstrate that any remedy at law is inadequate, and in fact she even seeks a remedy at law

20  through her negligence claim, which is based on the same alleged conduct as her equitable claim.").

21          *Second*, the Complaint fails to allege facts establishing that any individual Plaintiff has

22  standing to seek injunctive relief under the UCL.[22]  "Under Article III's standing requirement, a

23  plaintiff seeking injunctive relief bears the burden of showing 'that *he* is under threat of suffering

24  'injury in fact' that is *concrete and particularized*; the threat must be *actual and imminent*, *not*

25  *conjectural or hypothetical*; it must be fairly traceable to the challenged action of the defendant;

26  and it must be likely that a favorable judicial decision will prevent or redress the injury.'"  *Doe* v.

27  _____

28  [22] Because Plaintiffs' Article III standing to seek injunctive relief is governed by federal law, the law of the Ninth Circuit applies.  *See In re Korean Air Lines*, 829 F.2d at 1175-76.

1  *Match.com*, 789 F. Supp. 2d 1197, 1199 (C.D. Cal. 2011) (emphasis added) (quoting *Summers* v.

2  *Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *Payne* v. *Off. of the Comm'r of Baseball*, 705 F.

3  App'x 654, 655 (9th Cir. 2017).

4      But, Plaintiffs do not allege that any one of them faces an "actual and imminent" or

5  "immediate" threat of being subjected to future misconduct by an independent driver.  Generalized

6  allegations about the purported "widespread nature of sexual misconduct" by certain independent

7  drivers, Compl. ¶ 354, do not suffice to allege a "real and immediate" threat of future harm to any

8  individual plaintiff as required to establish standing.  *See City of Los Angeles* v. *Lyons*, 461 U.S.

9  95, 111 (1983)  For example, in *Lyons*, a plaintiff sought an injunction against the City of Los

10  Angeles after being subjected to a traffic stop and an alleged unprovoked chokehold by the officers.

11  Although the plaintiff alleged that "the police in Los Angeles routinely apply chokeholds in

12  situations where they are not threatened by the use of deadly force," the Supreme Court held that

13  the plaintiff nonetheless failed to establish "a real and immediate threat" that he would be subjected

14  to the same alleged harm in the future.  *Id.* at 106, 110.

15      Similarly, in *Doe* v. *Match.com*, a plaintiff alleged that, through defendant's online dating

16  service, she met a serial sexual predator who forcibly raped her.  789 F. Supp. 2d at 1198.  The

17  plaintiff sought injunctive relief requiring defendant to institute screening procedures that she

18  alleges would have prevented the rape.  *Id.* at 1199.  The district court held, however, that the

19  plaintiff lacked standing to seek such relief because plaintiff had failed to establish more than a

20  "tenuous likelihood of future injury" to herself.  *Id.* at 1200; *see also Ramsay* v. *Frontier, Inc.*,

21  2020 WL 4557545, at *3, 16 (D. Colo. July 30, 2020), *report and recommendation adopted*, 2021

22  WL 651021 (D. Colo. Feb. 19, 2021); *Christopher* v. *Dep't of Highway Safety & Motor Vehicles*,

23  209 F. Supp. 2d 1290-93 (S.D. Fla.).  Dismissal of Plaintiffs' claims for injunctive relief is required

24  for similar reasons as in *Lyons* and *Match.com*:  Plaintiffs cannot plausibly allege, and have not

25  alleged, that any of them face an almost certain risk of a similar incident occurring, even assuming

26  they were to use Uber's services in the future.[23]

---

[23] Relying on the Ninth Circuit's decision in *Davidson* v. *Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018), Plaintiffs allege they have standing because "[i]t is plausible that each Plaintiff will seek to use Uber's product in the future and necessarily will rely on Uber's obligations and

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO FLORIDA LAW        Case No. 3:23-md-03084-CRB

## XI.   PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

Plaintiffs' request for punitive damages can - - and should - - be dismissed.  Under Florida law, punitive damages are available only by statute or where the defendant engages in conduct that is "fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence amounting to a wanton disregard for the rights of others." *W.R. Grace & Company—Conn.* v. *Waters*, 638 So. 2d 502, 503 (Fla. 1994).  Here, the Complaint fails to allege fraud, for the reasons described above.  *See supra* Section V.  Plaintiffs also do not allege malicious conduct or gross negligence warranting imposition of punitive damages.   The degree of misconduct required to sustain a claim for punitive damages is "willful and wanton misconduct equivalent to criminal manslaughter" and "beyond gross negligence."  *Como Oil Co., Inc.* v. *O'Loughlin*, 466 So. 2d 1061, 1062 (Fla. 1985).  Punitive damages are reserved for conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Smith* v. *Telophase Nat. Cremation Soc., Inc.*, 471 So. 2d 163, 166 (Fla. 2d DCA 1985) (quotations omitted).  Plaintiffs cannot state a claim for punitive damages simply by reiterating their allegations of ordinary negligence.  *Cleveland Clinic Fla. Health Sys. Nonprofit Corp.* v. *Oriolo*, 357 So. 3d 703, 706 (Fla. DCA 2023).  Yet that is exactly what Plaintiffs do.  *Compare* Compl. ¶ 343 (punitive damages), *with id.* ¶ 365(p) (negligence).

## XII.   AMENDMENT WOULD BE FUTILE

Because the above causes of action are deficiently pled as a matter of law, and no Plaintiff can allege facts beyond those asserted because no such facts exist, amendment would be futile and should not be allowed.  *See Steckman* v. *Hart Brewing, Inc.*, 143 F. 3d 1293, 1298 (9th Cir. 1998).

## CONCLUSION

For the foregoing reasons, Uber's motion to dismiss pursuant to Florida law should be granted without leave to amend.

---

representations regarding safety."  Compl. ¶ 350.  But *Davidson* addressed standing in the context of false advertising claims seeking to enjoin future advertising.  Here, Plaintiffs purport to seek an injunction to "ensure sexual assault in Uber vehicles is foreclosed to the greatest extent possible." Compl. ¶ 35.  For that relief, Plaintiffs must (but do not) plausibly allege an "actual and imminent" threat of similar sexual misconduct in the future.  *Match.com*, 789 F. Supp. 2d at 1199.

1

2    DATED: April 1, 2024                  **PAUL, WEISS, RIFKIND, WHARTON &**
                                           **GARRISON LLP**
3

4                                          By: */s/ Robert Atkins*
                                               ROBERT ATKINS
5                                              RANDALL S. LUSKEY
                                               JACQUELINE P. RUBIN
6                                              JESSICA E. PHILLIPS
                                               KYLE N. SMITH
7                                              CAITLIN E. GRUSAUSKAS
                                               ANDREA M. KELLER
8

9                                          *Attorneys for Defendants*
                                           UBER TECHNOLOGIES, INC.,
10                                         RASIER, LLC, and RASIER-CA, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28