1
RANDALL S. LUSKEY (SBN: 240915)
   rluskey@paulweiss.com
2
**PAUL, WEISS, RIFKIND, WHARTON**
   **& GARRISON LLP**
3
535 Mission Street, 24th Floor
San Francisco, CA 94105
4
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
5
6
ROBERT ATKINS (*Pro Hac Vice* admitted)
   ratkins@paulweiss.com
JACQUELINE P. RUBIN (*Pro Hac Vice* admitted)
7
   jrubin@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
8
   cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
9
   akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
10
   **& GARRISON LLP**
1285 Avenue of the Americas
11
New York, NY 10019
Telephone: (212) 373-3000
12
Facsimile:  (212) 757-3990
13
*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
14
RASIER, LLC, and RASIER-CA, LLC
15
*[Additional Counsel Listed on Following Page]*
16

**UNITED STATES DISTRICT COURT**
17
**NORTHERN DISTRICT OF CALIFORNIA**
18
**SAN FRANCISCO DIVISION**
19

| | |
|---|---|
| 20 IN RE: UBER TECHNOLOGIES, INC., <br> 21 PASSENGER SEXUAL ASSAULT <br> LITIGATION <br> 22 <br> This Document Relates to: <br> 23 <br> *A.G. v. Uber Technologies, Inc., et al.*, <br> 24 3:23-cv-02071-CRB <br> 25 *S.D. v. Uber Technologies, Inc., et al.*, <br> 3:23-cv-03852-CRB <br> 26 <br> 27 *Jane Doe LS 293 v. Uber Technologies,* <br> *Inc., et al.*, 3:23-cv-04364-CRB <br> 28 | Case No. 3:23-md-03084-CRB <br><br> **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW** <br><br> Judge:      Honorable Charles R. Breyer <br> Date:       TBD <br> Time:       TBD <br> Courtroom:  6 – 17th Floor |

1
2

*Rollo v. Uber Technologies, Inc., et al.*,
3:23-cv-05105-CRB

3

*Jane Doe LS 35 v. Uber Technologies,
Inc., et al.*, 3:23-cv-05233-CRB

4
5

*Jane Doe LS 253 v. Uber Technologies,
Inc., et al.*, 3:23-cv-05236-CRB

6
7

*Jane Doe LS 241 v. Uber Technologies,
Inc., et al.*, 3:23-cv-05413-CRB

8

*Espinosa v. Uber Technologies, Inc., et
al.*, 3:23-cv-05417-CRB

9
10

*A.M. v. Uber Technologies, Inc., et al.*,
3:23-cv-05807-CRB

11
12

*Jane Doe LS 185 v. Uber Technologies,
Inc., et al.*, 3:23-cv-05922-CRB

13
14

*Jane Roes CL 7 through 10 v. Uber
Technologies, Inc., et al.*, 3:23-cv-06149-
CRB

15
16

*Mouton v. Uber Technologies, Inc., et al.*,
3:23-cv-06429-CRB

17
18

*Wilson v. Uber Technologies, Inc., et al.*,
3:24-cv-00203-CRB

19
20

*Springs v. Uber Technologies, Inc., et al.*,
3:24-cv-00535-CRB

21

*P.K. v. Uber Technologies, Inc., et al.*,
3:24-cv-00572-CRB

22
23

*K.D. v. Uber Technologies, Inc., et al.*,
3:24-cv-01006-CRB

24
25

*N.A.* v. *Uber Technologies, Inc., et al.*,
3:24-cv-01042-CRB

26

*Milhouse* v. *Uber Technologies, Inc., et
al.*, 3:24-cv-01201-CRB

27
28

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW          Case No. 3:23-md-03084-CRB

1
KYLE N. SMITH (*Pro Hac Vice* admitted)
2
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
3
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
4
    **& GARRISON LLP**
2001 K Street, NW
5
Washington DC, 20006
Telephone: (202) 223-7300
6
Facsimile: (202) 223-7420
7
*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
8
RASIER, LLC, and RASIER-CA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW          Case No. 3:23-md-03084-CRB

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

BACKGROUND ...................................................................................................2

ARGUMENT ........................................................................................................2

I.   THE TEXAS PLAINTIFFS' CLAIMS ARE GOVERNED BY TEXAS
     LAW ...........................................................................................................3

     A.   Texas Conflicts of Laws Principles Mandate Application of Texas
          Law ....................................................................................................3

     B.   California Conflicts of Laws Principles Mandate Application of
          Texas Law ..........................................................................................4

     C.   Texas Law Applies Under the Uber Terms of Use of 11 Texas
          Plaintiffs ............................................................................................5

II.  THE CLAIM FOR VICARIOUS LIABILITY FAILS AS A MATTER OF
     LAW ...........................................................................................................5

     A.   By Statute, TNCs Cannot Be Held Vicariously Liable for Drivers'
          Torts ...................................................................................................5

     B.   The Alleged Assaults Are Outside the Scope of Any Alleged
          Agency ...............................................................................................6

     C.   By Statute, Uber Is Not a Common Carrier...........................................8

     D.   Plaintiffs' Ratification Theory Fails .....................................................8

     E.   CPUC § 5354 Does Not Create Vicarious Liability ...............................9

III. PLAINTIFFS FAIL TO STATE A CLAIM FOR "COMMON
     CARRIER'S NON-DELEGABLE DUTY" ...................................................10

IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR "NON-DELEGABLE
     DUTIES".....................................................................................................10

V.   PLAINTIFFS' FRAUD-RELATED CLAIMS SHOULD BE DISMISSED ...................12

     A.   The Complaint Fails to Plead Reliance................................................13

     B.   Plaintiffs Fail to Identify the Alleged False Statements with
          Specificity ........................................................................................14

     C.   The *McKnight* Class Action Settlement Bars Many
          Misrepresentation Claims ..................................................................15

          1.   The Complaint Tries to Evade the *McKnight* Settlement ...........15

          2.   The "Safe Rides Fee" Allegations Should Be Dismissed or
               Stricken ...................................................................................17

     D.   The Complaint Alleges Representations That Are Not Actionable......18

     E.   The Complaint Fails to Adequately Plead Fraud by Omission............19

VI.  THE CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL
     DISTRESS IS NOT RECOGNIZED.................................................................22

VII.   PLAINTIFFS FAIL TO ALLEGE NEGLIGENT ENTRUSTMENT..............................22

VIII.  THE COMPLAINT'S STRICT PRODUCT LIABILITY CLAIMS FAIL
       AS A MATTER OF LAW..................................................................................................23

IX.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE
       UCL....................................................................................................................................26

       A.    Plaintiffs Cannot Assert UCL Claims for Incidents That Occurred
             in Texas...................................................................................................................26

       B.    Plaintiffs Fail to State a UCL Claim on the Merits...............................................27

X.     PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF.................................28

XI.    PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES SHOULD BE
       DISMISSED .......................................................................................................................30

XII.   AMENDMENT WOULD BE FUTILE................................................................................30

CONCLUSION......................................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
    2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) .........................................................................27

*In re Academy, Ltd.*,
    625 S.W.3d 31 (2021)........................................................................................................22

*Acosta* v. *Uber Techs., Inc.*,
    No. D-1-GN-18-000119 (Dist. Ct. Travis Cnty. Aug. 17, 2023)......................................6

*AKB Hendrick, LP* v. *Musgrave Enterprises, Inc.*,
    380 S.W.3d 221 (Tex. App. 2012).....................................................................................18

*Am. Honda Motor Co.* v. *Milburn*,
    668 S.W.3d 6, 33 (Tex. App. 2021)..............................................................................18, 19

*Amazon.com, Inc.* v. *McMillan*,
    625 S.W.3d 101 (Tex. 2021)..............................................................................................24

*Applied Hydrogel Tech., Inc.* v. *Raymedica, Inc.*,
    2007 WL 951297 (S.D. Cal. Mar. 2, 2007) ........................................................................5

*Arruda* v. *Rasier, LLC*,
    No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024)...........................................23

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................2

*Baker* v. *Great Northern Energy, Inc.*,
    64 F. Supp. 3d 965 (N.D. Tex. 2014) ...............................................................................18

*Barrow-Shaver Resources Co.* v. *Carrizo Oil & Gas, Inc.*,
    590 S.W.3d 471 (Tex. 2019)...............................................................................................12

*Baxter-Aremtrout* v. *Lyft, Inc.*,
    No. 50-20210CA-013917 (Fla. Cir. Ct., Aug. 29, 2022)......................................................23

*Behuet & Hunt* v. *Uber Technologies, Inc.*,
    2022 WL 20318684 (Cal. Super. Ct. July 13, 2022) ..........................................................23

*In re Bella Corp.*,
    648 S.W.3d 373 (Tex. Ct. App. 2021) ...............................................................................30

*Benavides* v. *Cushman, Inc.*,
    189 S.W.3d 875 (Tex. App. 2001)......................................................................................22

*Berg* v. *AMF Inc.*,
   29 S.W.3d 212 (Tex. App. 2000) ............................................................................25

*Bergeron* v. *Select Comfort Corp.*,
   2016 WL 155088 (W.D. Tex. Jan. 11, 2016) ...........................................................21

*Bombardier Aerospace Corp.* v. *SPEP Aircraft Holdings, LLC*,
   572 S.W. 3d 213 (Tex. 2019) .....................................................................19, 20, 21

*Boyles* v. *Kerr*,
   855 S.W.2d 593 (Tex. 1993) ....................................................................................22

*Bradford* v. *Vento*,
   48 S.W.3d 749 (Tex. 2001) ......................................................................................21

*Brawley* v. *Bath & Body Works, LLC*,
   2019 WL 7945655 (N.D. Tex. Sept. 25, 2019) ........................................................29

*Browne* v. *Lyft, Inc.*,
   219 A.D.3d 445 (2d Dep't 2023) ...............................................................................7

*Buck* v. *Blum*,
   130 S.W.3d 285 (Tex. App. 2004) .............................................................................6

*Burmakova* v. *Uber Techs, Inc.*,
   No. 20STCV33948 (Super. Ct. L.A. County Oct. 22, 2021) ......................................7

*Butler* v. *Juno Therapeutics, Inc.*,
   2019 WL 2568477 (S.D. Tex. June 21, 2019) .........................................................12

*C.T.* v. *Tetteh*,
   No. MRS-L-1723-23 (N.J. Super. Ct., Feb. 8, 2024) .................................................7

*Campbell* v. *Racetrac Petrol., Inc.*,
   2021 WL 4552253 (N.D. Cal. Oct. 5, 2021) ..............................................................9

*Carroll* v. *Fort James Corp.*,
   470 F.3d 1171 (5th Cir. 2006) .................................................................................19

*Castro Romero* v. *Becken*,
   256 F.3d 349 (5th Cir. 2001) ...................................................................................22

*Castro* v. *Budget Rent-A-Car Sys., Inc.*,
   154 Cal. App. 4th 1162 (2007) ..................................................................................5

*Cel-Tech Comms., Inc.* v. *L.A. Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) .........................................................................................27

*Centerpoint Builders GP, LLC* v. *Trussway, Ltd.*,
   496 S.W.3d 33 (Tex. 2016) ......................................................................................24

*Chen* v. *L.A. Truck Ctrs., LLC*,
　42 Cal. App. 5th 488 (2019) ...................................................................................4

*Chrisman* v. *Electrastart of Houston, Inc.*,
　2003 WL 22996909 (Tex. App. Dec. 23, 2003) ....................................................8, 9

*City of Los Angeles* v. *Lyons*,
　461 U.S. 95 (1983).................................................................................................28

*Cooper* v. *Tokyo Elec. Power Co. Holding, Inc.*,
　960 F.3d 549 (9th Cir. 2020) ...................................................................................4

*Coughlin* v. *Uber Techs.*,
　Inc., No. 03083, at 1 (Pa. Ct. C.P. Philadelphia Cnty, June 12, 2020) .....................7

*Cruz Lopez* v. *Uber Techs., Inc.*,
　No. 21CV376012 (Cal. Super. Ct. Dec. 7, 2021) ....................................................23

*Curtis* v. *Cerner Corp.*,
　621 B.R. 141 (S.D. Tex. 2020) ...............................................................................30

*Davidson* v. *Kimberly-Clark Corp.*,
　889 F.3d 956 (9th Cir. 2018) ..................................................................................29

*Disney Enterprises, Inc.* v. *Esprit Fin., Inc.*,
　981 S.W.2d 25 (Tex. App. 1998)...............................................................................9

*Doe #2* v. *Legion of Christ, Inc.*,
　588 F. Supp. 3d 240 (D. Conn. 2022) .......................................................................4

*Doe* v. *CVS Pharmacy, Inc.*,
　982 F.3d 1204 (9th Cir. 2020) ................................................................................27

*Doe* v. *The Geo Grp., Inc.*,
　2017 WL 835209 (W.D. Tex. Mar. 2, 2017) .............................................................6

*Doe* v. *Lyft, Inc.*,
　2020 IL App (1st) 191328.........................................................................................7

*Doe* v. *Match.com*,
　789 F. Supp. 2d 1197 (C.D. Cal. 2011) ..............................................................28, 29

*Doe* v. *Uber Techs., Inc.*,
　2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) ..........................................................7

*Doe* v. *YUM! Brands, Inc.*,
　639 S.W.3d 214 (Tex. App. 2021)..........................................................................6, 7

*Ehret* v. *Uber Techs., Inc.*,
　68 F. Supp. 3d 1121 (N.D. Cal. 2014) ....................................................................26

- viii -

*Estate of Stella Yeh* v. *Uber Techs., Inc.*,
   CGC-20-584408 (Cal. Super. Ct. Aug. 6, 2021) ...................................................................14

*Evans* v. *Bryant*,
   29 S.W.2d 484 (Tex. Civ. App.—Eastland 1930) ...................................................................11

*Fantasy, Inc.* v. *Foberty*,
   984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).......................17

*Farah* v. *Mafrige & Kormanik, P.C.*,
   927 S.W.2d 663 (Tex. App. 1996).........................................................................................12

*Fifth Club, Inc.* v. *Ramirez*,
   196 S.W.3d 788 (Tex. 2006)..................................................................................................10

*Flores* v. *Uber Techs., Inc.*,
   No. 19STCV24988 (Cal. Super. Ct., Mar. 22, 2022) ............................................................23

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
   2001 WL 1266317 (D.N.J. Sept. 30, 1997) ..........................................................................13

*Frenzel* v. *AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) ....................................................................................27

*Freyer* v. *Lyft, Inc.*,
   639 S.W.3d 772 (Tex. App. 2021)...........................................................................................6

*Fusco* v. *Uber Techs.*,
   2018 WL 3618232 (E.D. Pa. July 27, 2018)..........................................................................19

*In re Gamble*,
   676 S.W.3d 760 (Tex. App. 2023)..........................................................................................10

*Garza* v. *Uber Techs., Inc.*,
   19-CI-25696 (Dist. Ct. Bexar County June 30, 2022) .............................................................6

*Genie Indus., Inc.* v. *Matak*,
   462 S.W.3d 1 (Tex. 2015)......................................................................................................24

*Gessell* v. *Traweek*,
   628 S.W.2d 479 (Tex. App—Texarkana 1982)......................................................................11

*Goolsby* v. *Kenney*,
   545 S.W.2d 592 (Tex. App. 1976)..........................................................................................11

*Harris* v. *Mastec North America, Inc.*,
   2020 WL 6305028 (Tex. App. 2020).....................................................................................6, 7

*Hoffman* v. *AmericaHomeKey, Inc.*,
   23 F. Supp. 3d 734 (N.D. Tex. 2014) .....................................................................................17

*Holland* v. *Thompson*,
    338 S.W.3d 586 (Tex. App. 2010)....................................................................21

*Hughes Wood Prod., Inc.* v. *Wagner*,
    18 S.W.3d 202 (Tex. 2000)..............................................................................3

*Huynh* v. *Quora Inc.*,
    508 F. Supp. 3d 633 (N.D. Cal. 2020) ............................................................28

*Ice Cream Distribs. of Evansville, LLC* v. *Dreyer's Grand Ice Cream, Inc.*,
    2010 WL 3619884 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th
    Cir. 2012) ........................................................................................................26

*Jackson* v. *Airbnb, Inc.*,
    639 F. Supp. 3d 994 (C.D. Cal. 2022) .............................................................23

*Jane Doe No. 1* v. *Uber Techs., Inc.*,
    2020 Cal. Super. LEXIS 73095 (Cal. Super. Ct. Nov. 30, 2020) ...........................23

*Johnson* v. *Murph Metals, Inc.*,
    562 F. Supp. 246 (N.D. Tex. 1983) ...........................................................22, 23

*Karlen* v. *Uber Techs., Inc.*,
    2022 U.S. Dist. LEXIS 15320 (D. Conn. Aug. 27, 2022) ......................................7

*Kasel* v. *Remington Arms Co.*,
    24 Cal. App. 3d 711 (1972) ...........................................................................4, 5

*Kelly* v. *Stone*,
    898 S.W.2d 924 (Tex. App. 1995).....................................................................6

*Kim* v. *Am. Honda Motor Co.*,
    86 F.4th 150 (5th Cir. 2023) ...........................................................................25

*Kolius* v. *Center Point Energy Houston Elec. LLC*,
    422 S.W.3d 861 (Tex. App. 2014).....................................................................10

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    829 F.2d 1171 (D.C. Cir. 1987).....................................................................3, 28

*Kurns* v. *R.R. Friction Prods. Corp.*,
    565 U.S. 625 (2012).......................................................................................24

*Lesnik* v. *Eisenmann SE*,
    374 F. Supp. 3d 923 (N.D. Cal. 2019) ............................................................15

*Loyd* v. *Herrington*,
    182 S.W.2d 1003 (Tex. 1944)..........................................................................11

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW          Case No. 3:23-md-03084-CRB

*Luna, Avelardo* v. *Uber Techs., Inc.*,
    No. 22STCV10806 (Cal. Super. Ct., Sept. 27, 2022) .............................................................23

*M.D.C.G.* v. *U.S.*,
    956 F.3d 762 (5th Cir. 2020) ...................................................................................................7

*Mackey* v. *U.P. Enters., Inc.*,
    935 S.W.2d 446 (Tex. App. 1996)............................................................................................6

*Martinez* v. *Uber Techs., Inc.*,
    No. 23STCV09795 (Cal. Super. Ct., Oct. 3, 2023) ................................................................23

*McCann* v. *Foster Wheeler LLC*,
    48 Cal. 4th 68 (2010) ...............................................................................................................5

*McKnight* v. *Uber Techs., Inc.*,
    14-cv-05615, ECF No. 1 .........................................................................................................20

*McKnight* v. *Uber Techs., Inc.*,
    14-cv-05615-JST (N.D. Cal.).....................................................................................................1

*Meador* v. *Apple, Inc.*,
    911 F.3d 260 (5th Cir. 2018) ..................................................................................................25

*MedARC, LLC* v. *Aetna Health Inc.*,
    2022 WL 1057085 (N.D. Tex. Feb. 3, 2022)..........................................................................29

*Mendez* v. *Selene Fin. LP*,
    2017 WL 1535085 (C.D. Cal. Apr. 27, 2017) ........................................................................27

*Mendiondo* v. *Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ..................................................................................................2

*Mercedes-Benz USA, LLC* v. *Carduco, Inc.*,
    583 S.W.3d 553 (Tex. 2019)...................................................................................................21

*Miller* v. *Towne Services, Inc.*,
    665 S.W.2d 143 (Tex. App—Houston [1st Dist.] 1983) ........................................................11

*Millsaps* v. *Continental Casualty Co.*,
    2023 WL 9645471, . (E.D. Tex. Dec. 20, 2023).....................................................................13

*Minzer* v. *Barga*,
    2020 WL 2621710 (N.Y. Super. Ct. May 22, 2020) (N.Y. Super. Ct. May 22,
    2020) ........................................................................................................................................14

*Morris* v. *Adolph Coors Co.*,
    735 S.W.2d 578 (Tex. App. 1987)..........................................................................................24

*Morris* v. *AGFA Corp.*,
  144 Cal. App. 4th 1452 (2006) ...................................................................................4

*Murphy* v. *Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004) ...................................................................................3

*Murray* v. *Uber Techs., Inc.*,
  486 F. Supp. 3d 468 (D. Mass. Sept. 11, 2020) ........................................................7

*Norman* v. *Uber Techs., Inc.*,
  No. 21STCV35632 (Cal. Super. Ct. Mar. 8, 2022) ...................................................23

*Norwest Mortg., Inc.* v. *Superior Ct.*,
  72 Cal. App. 4th 214 (1999) .....................................................................................26

*In re Nucorp Energy Sec. Litig.*,
  772 F.2d 1486 (9th Cir. 1985) ...................................................................................3

*Ozon* v. *Bank of Am., N.A.*,
  2015 WL 11545020 (W.D. Tex. Nov. 9, 2015)..........................................................29

*Papasan* v. *Allain*,
  478 U.S. 265 (1986)....................................................................................................2

*Patrusky* v. *Bloomberg*,
  2015 WL 3896097 (Tex. App—Dallas June 24, 2015)......................................18, 19

*Payne* v. *Off. of the Comm'r of Baseball*,
  705 F. App'x 654 (9th Cir. 2017) .............................................................................28

*Perenco Nigeria Ltd.* v. *Ashland Inc.*,
  252 F.3d 299 (5th Cir. 2001) ...................................................................................12

*Plotkin* v. *IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ...................................................................................12

*Polanco* v. *Lyft, Inc.*,
  2021 Cal. Super. LEXIS 60679 (Cal. Super. Ct. May 13, 2021)...........................23

*Prunty* v. *Arkansas Freightways, Inc.*,
  16 F.3d 649 (5th Cir. 1994) .......................................................................................8

*Ramos* v. *Uber Techs., Inc.*,
  No. 22STCV33007 (Cal. Super. Ct. June 1, 2023)................................................23

*Ramsay* v. *Frontier, Inc.*,
  2020 WL 4557545 (D. Colo. July 30, 2020) ...........................................................29

*RenCare, Ltd.* v. *United Medical Resources, Inc.*,
  180 S.W.3d 160 (Tex. App. 2005)............................................................................12

- xii -

*Retana* v. *Twitter, Inc.*,
    419 F. Supp. 3d 989 (N.D. Tex. 2019) ...................................................................22

*Rodriguez* v. *FCA US LLC*,
    2023 WL 3150075 (C.D. Cal. Mar. 21, 2023)..................................................27, 28

*Rodriguez* v. *Uber Techs., Inc.*,
    No. 2020-CA-1823 (Aug. 9, 2021) (Fla. 9th J. D. Cir. Ct. Osceola County
    Aug. 9, 2021) ..............................................................................................................14

*Estate of Scott*,
    2020 WL 2736466 (Tex. App. May 27, 2020) ........................................................21

*Scurlock* v. *Pennell*,
    177 S.W.3d 222 (Tex. App—Houston [1st Dist.] Feb. 10, 2005) ..........................22

*Shannon* v. *Uber Techs., Inc.*,
    No. 21STCV42029 (Cal. Super. Ct., Apr. 15, 2022).............................................23

*Sharifan* v. *NeoGenis Labs, Inc.*,
    622 F. Supp. 3d 478 (S.D. Tex. 2022) ....................................................................14

*Sharpe* v. *Lyft, Inc.*,
    2024 WL 278913 (S.D. Tex. Jan. 10, 2024)......................................................21, 22

*Sheffield* v. *Central Freight Lines, Inc.*,
    435 S.W.2d 954 (Tex. App. 1968)..............................................................................9

*Shroyer* v. *New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) .................................................................................27

*Simulados Software, Ltd.* v. *Photon Infotech Priv., Ltd.*,
    40 F. Supp. 3d 1191 (N.D. Cal. 2014) .......................................................................5

*Sonner* v. *Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ...................................................................................27

*Steckman* v. *Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) .................................................................................30

*Sullivan* v. *Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ...........................................................................................26

*Swartz* v. *KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...................................................................................12

*Tidenberg* v. *Bidz.com, Inc.*,
    2009 WL 605249 (C.D. Cal. Mar. 4, 2009)............................................................26

*Toral* v. *Uber Techs., Inc.*,
   No. 20STCV02030 (Cal. Super. Ct. Apr. 14, 2021) ................................................................23

*Tri-County Elec. Coop., Inc.* v. *GTE Sw. Inc.*,
   490 S.W.3d 530 (Tex. Ct. App. 2016) .....................................................................................30

*In Re: Uber Rideshare Cases*,
   CJC-21-005188 (Super. Ct. S.F. Cnty. June 22, 2023)..........................................7, 13, 14, 23

*In re Uber Rideshare Cases*,
   No. CJC-21-005188 (Super. Ct. S.F. Cnty. Jan. 23, 2023).......................................................4

*Vess* v. *Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ..........................................................................................12, 14

*In re Volkswagen*,
   349 F.Supp.3d at 915 .........................................................................................................14, 19

*Ware* v. *Paxton*,
   359 S.W.2d 897 (Tex. 1962) ....................................................................................................29

*Way* v. *Boy Scouts of America*,
   856 S.W.2d 230 (Tex. App. 1993)............................................................................................22

*United States ex rel. Williams* v. *Bell Helicopter Textron, Inc.*,
   417 F.3d 450 (5th Cir. 2005) ...................................................................................................14

*XYZ Two Way Radio Serv., Inc.* v. *Uber Techs., Inc.*,
   214 F. Supp. 3d 179 (E.D.N.Y. 2016) .....................................................................................19

*Zarzana* v. *Ashley*,
   218 S.W.3d 152 (Tex. App–Houston [14th Dist.] 2007)...........................................................6

*Ziencik* v. *Snap, Inc.*,
   2023 WL 2638314 (C.D. Cal. Feb. 3, 2023)............................................................................23

**Statutes**

CPUC § 5354 ..................................................................................................................................9, 10

Tex. Civ. Prac. & Rem. Code Ann. § 150E.002, 003 ......................................................................5

Tex. Civ. Prac. & Rem. Code § 41.001(7)......................................................................................30

Tex. Civ. Prac. & Rem. Code § 41.003(a) ......................................................................................29

Tex. Occ. Code § 2042.002 ...............................................................................................................8

Tex. Occ. Code § 2402 ...................................................................................................................4, 9

Tex. Occ. Code § 2402.002 .................................................................................10

Tex. Occ. Code § 2402.112 .................................................................................23

Tex. Occ. Code § 2402.113 .................................................................................23

Tex. Occ. Code § 2402.114 ...................................................................................6

Tex. Occ. Code § 2402.115 .................................................................................23

Tex. Occ. Code § 2402.153 .................................................................................23

UCL.............................................................................................................. *passim*

**Other Authorities**

Fed R. Civ. P. 9(b) ..................................................................................... *passim*

Fed. R. Civ. P.12(b)(1)............................................................................................7

Fed. R. Civ. P. 12(b)(6)..........................................................................................2

Fed R. Civ. P.12(f)...............................................................................................17

Michael D. Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (3d ed. 2024 Supp.)..........................23

Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005)...................................................23

Raymond T. Nimmer, Law of Comput. Tech. § 12:41 (Nov. 2023 Update)...............................23

Restatement (Second) of Torts ch. 15, topic 2, intro. note ..........................................11

Restatement (Second) of Conflict of Laws § 145(2) .....................................................3

Restatement (Second) of Agency § 267 cmt. b................................................................6

Restatement (Second) of Torts § 314A..........................................................................11

Restatement (Third) of Torts: Prod. Liab. § 19 ...........................................................23

1

## NOTICE OF MOTION TO DISMISS

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

**NOTICE IS HEREBY GIVEN** that on a date and time to be set by the Court, before the

4
Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco

5
Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA

6
94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively,

7
"Uber") will, and hereby do, move this Court for an order dismissing portions of the Complaint

8
brought by Plaintiffs in this coordinated action whose alleged incidents occurred in Texas.

9
This Motion is based on this Notice, the attached Memorandum of Points and Authorities,

10
the concurrently filed Declaration of Robert Atkins, the concurrently filed Declaration of Peter

11
Sauerwein, the concurrently filed Proposed Order, all evidence, pleadings, and papers filed

12
herewith, the entire file in this coordinated action, any Reply that may be filed in support of this

13
Motion, and any other arguments or evidence that may be presented to the Court in support of this

14
Motion.

15

16
DATED:  April 1, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

17

18
By: */s/ Robert Atkins*

19
ROBERT ATKINS
RANDALL S. LUSKEY

20
JESSICA E. PHILLIPS
KYLE N. SMITH

21
JACQUELINE P. RUBIN

22
CAITLIN E. GRUSAUSKAS
ANDREA M. KELLER

23

24
*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,

25
RASIER, LLC, and RASIER-CA, LLC

26

27

28

- xvi -

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW        Case No. 3:23-md-03084-CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs allege that each of them was assaulted or harassed by a driver and contend that Uber is responsible for having not implemented different or additional safety measures.  If the drivers behaved as alleged, that is reprehensible.  But that is not sufficient to sustain the claims alleged in the Master Long-Form Complaint (the "Complaint").  This Motion is directed to claims in the Complaint asserted by Plaintiffs whose alleged incidents occurred in Texas and thus are governed by Texas law.  *See* Declaration of Robert Atkins ("Atkins Decl.") Ex. 5. Uber respectfully requests that this Court dismiss the claims addressed below and do so with prejudice given the legal infirmity of those causes of action:

*Vicarious Liability for Drivers' Torts (Cause of Action G).*  Uber is not vicariously liable for sexual assaults allegedly committed by independent drivers because such conduct is outside the scope of agency under Texas law.

*"Common Carrier's Non-Delegable Duty to Provide Safe Transportation" (Cause of Action E).*  By statute, transportation network companies ("TNCs") like Uber are not common carriers, so Uber cannot as a matter of law be liable under Plaintiffs' common carrier theory.

*"Other Non-Delegable Duties to Provide Safe Transportation" (Cause of Action F).*  Plaintiffs do not allege that Uber "delegated" any of its own purported duties to independent drivers, and, in any event, sexual assault is beyond the scope of any duty authorized by Uber.

*Fraud and Misrepresentation (Cause of Action C).*  Plaintiffs collectively complain about Uber's advertising, but misrepresentation claims cannot be asserted generically as a group.  The Complaint therefore fails to meet the heightened pleading standard of Rule 9(b).  In addition, many of Plaintiffs' misrepresentation claims cannot have survived the class action settlement in *McKnight* v. *Uber Techs., Inc.*, 14-cv-05615-JST (N.D. Cal.), because Plaintiffs either released their claims or, if they were not part of the class, could not have relied on the "Safe Ride" representations at issue in that dispute.

*Negligent Infliction of Emotional Distress (Cause of Action D).*  There is no standalone cause of action for negligent infliction of emotional distress ("NIED") in Texas.

*Negligent Entrustment (Part of Cause of Action B).*  Negligent entrustment applies only to

- 1 -

chattel, not, as Plaintiffs allege, Uber's App or Uber trademarks.

*Strict Products Liability (Cause of Action H).*  The Uber App is not a "product" and, therefore, is not subject to product liability claims.   Plaintiffs also fail to allege any defect in the Uber App or any causal connection between their alleged injuries and the design of the software.

*Unfair Competition Law (Cause of Action I).*  California's presumption against extraterritoriality mandates dismissal of the Unfair Competition Law ("UCL") claim.  Plaintiffs also fail to adequately allege any unlawful, fraudulent, or unfair business practice in violation of the UCL.

*Injunctive Relief.*  Plaintiffs are not entitled to seek injunctive relief because the Complaint fails to allege that they lack an adequate remedy at law.  The Complaint also fails to allege facts establishing that any individual Plaintiff has standing to seek injunctive relief.

*Punitive Damages*.  Plaintiffs fail to sufficiently plead that Uber acted with fraud, malice, or gross negligence warranting imposition of punitive damages.

## BACKGROUND

On February 15, 2024, Plaintiffs filed a Master Long-Form Complaint alleging, en masse, that after using the Uber App to arrange for rides, each Plaintiff was sexually assaulted by an independent driver.  Plaintiffs seek compensatory and punitive damages and injunctive relief based on the following claims against Uber: (1) negligence; (2) fraud and misrepresentation; (3) NIED; (4) "common carrier's non-delegable duty to provide safe transportation"; (5) "other non-delegable duties to provide safe transportation"; (6) vicarious liability for drivers' torts; (7) strict product liability; and (8) UCL violations.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Dismissal is appropriate where the allegations lack "a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo* v. *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  In deciding a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986).  Here,

1   based on both Texas law and the insufficiency of the facts alleged, this Court should dismiss

2   Plaintiffs' claims for: (1) vicarious liability, (2) "common carrier's non-delegable duty to provide

3   safe transportation," (3) "other non-delegable duties to provide safe transportation," (4) fraud and

4   misrepresentation, (5) NIED, (6) negligent entrustment, (7) strict product liability, and (8) UCL

5   violations.  It should also dismiss Plaintiffs' requests for injunctive relief and punitive damages.

6   I.      **THE TEXAS PLAINTIFFS' CLAIMS ARE GOVERNED BY TEXAS LAW**[1]

7           Under the conflicts of law principles of both Texas and California, the proper choice of

8   law for all of the 17 Texas Plaintiffs' claims is the law of the state of the incident: Texas.[2]

9       A.      **Texas Conflicts of Laws Principles Mandate Application of Texas Law**

10          Under Texas conflicts of law principles, choice of law is determined based on the "most

11  significant relationship" test.  *Hughes Wood Prod., Inc.* v. *Wagner*, 18 S.W.3d 202, 205 (Tex.

12  2000).  As applicable here, courts consider the factual "contacts" between the claim and the state

13  whose law is sought to be applied, including the places where: (a) the injury occurred, (b) the

14  conduct causing the injury occurred, (c) the parties are located, and (d) the relationship, if any,

15  between the parties is centered.  *See* Restatement (Second) of Conflict of Laws § 145(2).

16          As to the first factor, "subject only to rare exceptions, the local law of the state where the

17  conduct and injury occurred will be applied," because "a state has an obvious interest in regulating

18  the conduct of persons within its territory and in providing redress for injuries that occurred there."

19  *See id.* § 145, cmt. D.  "In an action for a personal injury, the local law of the state where the injury

20  occurred determines the rights and liabilities of the parties, unless, with respect to the particular

21  issue, some other state has a more significant relationship . . . ."  *Id.* § 146.  Here, these factors

22  point to the application of Texas law.  The alleged injuries of the Texas Plaintiffs indisputably

---

[1] To the extent this Court must decide questions of federal law, the Ninth Circuit governs.  *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987).

[2] Texas conflicts of law principles govern in: (i) the 2 actions that were originally filed in Texas federal courts; and (ii) the 9 actions that were originally filed in California federal courts but which involve a contractual forum selection clause in the Terms of Use specifying the state of the incident as the proper forum.  *See In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir. 1985); *Murphy* v. *Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004); Atkins Decl. Ex. 5.  California conflicts of law principles govern in the remaining 6 actions that were originally filed in California where the Plaintiff did *not* assent to Uber's Terms of Use's forum selection clause. Atkins Decl. Ex. 5.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW          Case No. 3:23-md-03084-CRB

occurred in Texas; the driver's conduct causing those injuries took place in Texas; the Plaintiffs reside in Texas; and the connection between each Plaintiff and Uber is centered in Texas because each Plaintiff claims to have used the Uber App to request a ride in Texas and Uber operated in Texas pursuant to Texas law.  *See Doe #2* v. *Legion of Christ, Inc.*, 588 F. Supp. 3d 240, 245 (D. Conn. 2022) (under significant relationship test, parties' relationship was centered in state where alleged sexual assault occurred).

### B.    California Conflicts of Laws Principles Mandate Application of Texas Law

Texas law also applies under California's "governmental interest test," which provides that if the laws of the competing states differ, the court "must determine what interest, if any, the competing jurisdictions have in their application of their respective laws."  *Cooper* v. *Tokyo Elec. Power Co. Holding, Inc.*, 960 F.3d 549, 559 (9th Cir. 2020).   If more than one jurisdiction has such an interest, the court then must apply "the law of the state whose interest would be the more impaired if its law were not applied."  *Id.*

A state generally has legitimate interests in having its laws applied in cases concerning incidents that occurred in that jurisdiction.  *Id.* at 560.  Here, Texas's extensive regulation of the TNC industry, including with respect to driver criteria and safety standards, demonstrates a clear interest in the operations of TNCs like Uber within the state's borders.  *See, e.g.*, Tex. Occ. Code § 2402 *et seq.*[3]  California, by contrast, has little legitimate interest in applying its laws to cases involving foreign residents and incidents outside of its borders, *Morris* v. *AGFA Corp.*, 144 Cal. App. 4th 1452, 1467 (2006), or in compensating non-resident plaintiffs for related injuries, *see Chen* v. *L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 498 (2019); *Kasel* v. *Remington Arms Co.*, 24 Cal. App. 3d 711, 734 (1972).[4]

Even if this Court were to find that California had some "legitimate interest" in the application of its laws to an injury to a non-resident outside California, Texas law would still apply

---

[3] In Texas, TNC regulation began with a patchwork of local city regulations, which were replaced by a set of statewide TNC regulations in May 2017.  Atkins Decl. Ex. 5.

[4] That Uber maintains one of its headquarters in California does not create an interest by the state in cases involving alleged tortious conduct by non-resident independent drivers against non-resident riders.  *Cf.* Order on Defendants' Motions to Stay or Dismiss Based on *Forum Non Conveniens*, *In re Uber Rideshare Cases*, No. CJC-21-005188 at 10 & n.11 (Super. Ct. S.F. Cnty. Jan. 23, 2023).

where the injured plaintiff does not reside in California.  "California courts have tended to apply the law of the place of the injured's domicile, finding that the state has the greatest interest in compensating its domiciliaries." *Kasel*, 24 Cal. App. 3d at 734.

### C.  Texas Law Applies Under the Uber Terms of Use of 11 Texas Plaintiffs

Texas law clearly applies to the 11 Texas Plaintiffs who agreed to Uber's Terms of Use in effect in January 2021 or later.  Declaration of Peter Sauerwein ("Sauerwein Decl.") ¶¶ 5, 9, Ex. A.  Since at least 2021, the Terms of Use have specified that:

> Any dispute, claim, or controversy arising out of or relating to incidents . . . resulting in personal injury (including but not limited to sexual assault or harassment claims) . . . **shall be governed by and construed in accordance with the laws of the state in which the incident . . . occurred**.

Sauerwein Decl. Ex. C (emphasis added).

Such clauses are enforced as written where "(1) [] the chosen state has a substantial relationship to the parties or their transaction, or (2) [where] there is any other reasonable basis for the parties' choice of law." *Simulados Software, Ltd.* v. *Photon Infotech Priv., Ltd.*, 40 F. Supp. 3d 1191, 1197 (N.D. Cal. 2014) (quotations omitted).  The only exception is when the chosen law is "so offensive to California public policy as to be prejudicial to recognized standards of morality and to the general interests of the citizens."  *Applied Hydrogel Tech., Inc.* v. *Raymedica, Inc.*, 2007 WL 951297, at *2 (S.D. Cal. Mar. 2, 2007) (quoting *Bassidji* v. *Goe*, 413 F.3d 928, 933 (9th Cir. 2005)).  That is not the case here.  Moreover, any interest California may have in applying its laws is reduced where the alleged injury occurred outside of California. See *McCann* v. *Foster Wheeler LLC*, 48 Cal. 4th 68, 99 (2010) (applying Oklahoma law in action against New York defendant by California resident exposed to asbestos in Oklahoma); *see also Castro* v. *Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1182 (2007).

## II.   THE CLAIM FOR VICARIOUS LIABILITY FAILS AS A MATTER OF LAW

### A.   By Statute, TNCs Cannot Be Held Vicariously Liable for Drivers' Torts

Under Texas law, a defendant TNC generally "may not be held vicariously liable for damages in an action" seeking recovery "for loss of property, bodily injury, or death" arising "out of the ownership, use, operation, or possession of a network vehicle while the vehicle's driver or

1   passenger was logged on to a transportation network company's digital network."  Tex. Civ. Prac.

2   & Rem. Code Ann. § 150E.002, 003.  This statute, which became effective on September 1, 2023,

3   bars claims for vicarious liability by any Texas Plaintiffs who allege an incident occurring on or

4   after that date.  Prior to this time period, Texas law already provided that drivers who use a TNC

5   platform are independent contractors.

6           **B.      The Alleged Assaults Are Outside the Scope of Any Alleged Agency**

7           All of Plaintiffs' vicarious liability claims - - regardless of alleged incident date - - are

8   barred by Texas common law.  The Complaint effectively concedes that independent drivers are

9   not Uber employees under Texas law.  Compl. ¶ 419 (excluding Texas from vicarious liability

10  claim based on employment status).[5]  Nevertheless, Plaintiffs attempt to impose vicarious liability

11  on Uber through a theory of apparent agency.  *Id.* ¶ 428.  But even if the drivers were Uber's

12  "apparent agents" - - they are not - - Plaintiffs' vicarious liability claim still fails because under an

13  apparent agency theory of vicarious liability, "[t]he rules . . . stating what acts are within the scope

14  of employment, apply," meaning that "a purported master ordinarily is not liable for conduct of an

15  apparent servant not actuated in some measure by an intent to perform the service in which he is

16  apparently engaged."  Restatement (Second) of Agency § 267 cmt. b.

17          Texas law regarding the scope of employment in the context of vicarious liability claims

18  therefore precludes Plaintiffs' "apparent agency" claim.  Texas courts have long held that alleged

19  assaults, sexual or otherwise, are far outside the course and scope of employment and will not support

20  a finding of vicarious liability because "[a]ssault is considered as an expression of personal animosity

21  and not for the purpose of carrying out a master's business."  *See Mackey* v. *U.P. Enters., Inc.*, 935

22  S.W.2d 446, 453 (Tex. App. 1996).  Texas courts routinely dismiss vicarious liability claims that

23  seek to hold an employer liable for sexual assault by an employee.[6]  The acts of sexual violence

---

24  [5] Drivers are independent contractors under Texas's TNC statute. *See* Tex. Occ. Code § 2402.114;
25  *Freyer* v. *Lyft, Inc.*, 639 S.W.3d 772, 780-82 (Tex. App. 2021).  Numerous Texas courts have
    dismissed vicariously liability claims on this basis.  *See, e.g.*, *Acosta* v. *Uber Techs., Inc.*, No. D-
    1-GN-18-000119, at 1 (Dist. Ct. Travis Cnty. Aug. 17, 2023); *Garza* v. *Uber Techs., Inc.*, 19-CI-
26  25696, at 1 (Dist. Ct. Bexar County June 30, 2022).

27  [6] *See Mackey*, 935 S.W.2d at 454 (fast food restaurant managers' sexual touching of coworker);
    *Harris* v. *Mastec North America, Inc.*, 2020 WL 6305028 (Tex. App. 2020) (cable installer's
    sexual assault of customer in her home); *Doe* v. *YUM! Brands, Inc.*, 639 S.W.3d 214, 231 (Tex.
28  App. 2021) (pizza delivery driver's alleged sexual assault of customer); *Buck* v. *Blum*, 130 S.W.3d

alleged in these cases above are the very reason why the vicarious liability claims cannot be sustained as a matter of law: where "an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during the deviation." *YUM! Brands*, 639 S.W.3d at 231 (quoting *Painter* v. *Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018)).

Here, the vicarious liability claims fail because Plaintiffs cannot plead facts that would support the conclusion that the drivers' deplorable behavior (if proven) is within the scope of any alleged agency.  As a Texas appellate court has explained, the fact that "one's employment may be the occasion for the wrongful act or may give a convenient opportunity for execution" does not bring the wrongful act within the scope of employment.  *YUM! Brands*, 639 S.W.3d at 231. Conduct supports vicarious liability only if it is "within the scope of the employee's general authority, in furtherance of the employer's business, and for the accomplishment of the object for which he was hired." *Id.* Here, "[t]here is no correlation between" the independent drivers' alleged acts of sexual violence and misconduct and the independent drivers' "duties" as drivers. *Id.* The independent drivers' "duties" were to pick up and transport passengers to "from place to place," not to commit any form of assault.  Compl ¶ 389.

Consistent with the Texas courts' "general[] reject[ion] of vicarious liability premised on sexual assault committed by an employee," *Harris*, 2020 WL 6305028, at *6, courts in numerous jurisdictions have dismissed similar vicarious liability claims against Uber and other TNCs.[7]  As a recent example, the California Superior Court overseeing the Judicial Council Coordination Proceedings ("JCCP") dismissed all claims for vicarious liability with prejudice on the basis that

285, 290 (Tex. App. 2004) (doctor who allegedly placed his penis in patient's hand during neurological examination); *Kelly* v. *Stone*, 898 S.W.2d 924, 928 (Tex. App. 1995) (supervisor's verbal and physical sexual assault of employee); *Doe* v. *The Geo Grp., Inc.*, 2017 WL 835209, at *3 (W.D. Tex. Mar. 2, 2017) (correctional officer's assault against inmate ); *see also Zarzana* v. *Ashley*, 218 S.W.3d 152, 160-61 (Tex. App–Houston [14th Dist.] 2007) (service station employee's sale of counterfeit inspection stickers was "serious criminal conduct" outside the scope of employment); *cf. M.D.C.G.* v. *U.S.*, 956 F.3d 762, 771 (5th Cir. 2020) (dismissing claims against federal government under Rule 12(b)(1) for sexual assault of detainees by border patrol agent).

[7] *See, e.g.*, *Burmakova* v. *Uber Techs, Inc.*, No. 20STCV33948 (Super. Ct. L.A. County Oct. 22, 2021); *Doe* v. *Uber Techs., Inc.*, 2019 WL 6251189, at *5 (N.D. Cal. Nov. 22, 2019); *Karlen* v. *Uber Techs., Inc.*, 2022 U.S. Dist. LEXIS 15320, at *11 (D. Conn. Aug. 27, 2022); *Doe* v. *Lyft, Inc.*, 2020 IL App (1st) 191328, at *P57 (Ill. 2020); *Murray* v. *Uber Techs., Inc.*, 486 F. Supp. 3d 468, 476 (D. Mass. Sept. 11, 2020); *C.T.* v. *Tetteh*, No. MRS-L-1723-23 (N.J. Super. Ct., Feb. 8, 2024); *Browne* v. *Lyft, Inc.*, 219 A.D.3d 445, 446-47 (2d Dep't 2023); *Coughlin* v. *Uber Techs.*, Inc., No. 03083, at 1 (Pa. Ct. C.P. Philadelphia Cnty, June 12, 2020).).

- 7 -

Uber "cannot be held vicariously liable for the alleged sexual assaults committed by its drivers because such conduct falls outside the scope of employment." *In Re: Uber Rideshare Cases*, CJC-21-005188, at 4 (Super. Ct. S.F. Cnty. June 22, 2023) ("*JCCP Demurrer Order*"), Declaration of Robert Atkins ("Atkins Decl.") Ex. 4.  In so doing, the court held that the plaintiffs failed to allege that the drivers were acting for purposes other than "personal gratification" or that their "sexual assaults were engendered by their alleged employment," as opposed to being motivated by the drivers' "close proximity to passengers[] in a confined environment." *Id.* at 6.  The JCCP ruling conformed with other rulings across the nation.

### C.    By Statute, Uber Is Not a Common Carrier

Plaintiffs argue that the "scope of employment" test does not apply to "common carriers." Compl. ¶ 425.  Even if that were the law (it is not), Uber is not a "common carrier" under Texas law, which provides that, TNCs, like Uber, "and drivers logged in to the [TNC's] digital network ***are not common carriers***."  Tex. Occ. Code § 2042.002 (emphasis added).

### D.    Plaintiffs' Ratification Theory Fails

Plaintiffs fail to plead facts that would establish that Uber is vicariously liable for the alleged misconduct of the accused drivers under a theory of ratification.  Compl. ¶¶ 436-39. "Ratification is the <u>adoption or confirmation</u> by a person, <u>with knowledge of all material facts</u>, of a prior act which did not then legally bind that person and which that person had the right to repudiate." *Chrisman* v. *Electrastart of Houston, Inc.*, 2003 WL 22996909, at *5 (Tex. App. Dec. 23, 2003) (emphasis added) (citation omitted).

Plaintiffs allege that Uber ratified the independent drivers' alleged assaults because it was, as a general matter, "aware of the scope and scale of sexual assaults."  Compl. ¶ 437.  That misapprehends what ratification is.  Ratification requires knowledge of "all material facts" of a *specific* agent's *specific* misconduct.  *See also Chrisman*, 2003 WL 22996909, at *5 (finding no ratification where "there is no evidence that MCD came into full possession of all the facts in order to ratify the Chrisman Parties' allegedly wrongful conduct"); *see also Prunty* v. *Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994) ("[B]efore one can ratify an act so that it becomes his own, he must know of the act with which he is charged.").

- 8 -

Moreover, the Complaint does not allege that Uber adopted or confirmed what any specific driver allegedly did to any specific Plaintiff.  Instead, Plaintiffs allege that Uber "failed to respond adequately to reports of sexual misconduct, failed to adequately investigate reports of sexual misconduct, failed to report sexual misconduct to law enforcement, and reinstated drivers after complaints of misconduct."  Compl. ¶¶ 437-38.  But ratification "only binds the ratifier to the specific transaction that is ratified."  *Disney Enterprises, Inc.* v. *Esprit Fin., Inc.*, 981 S.W.2d 25, 31 (Tex. App. 1998) (emphasis added).  Plaintiffs here are attempting to base their theory of ratification on what is essentially a negligence claim - - that Uber failed to take the appropriate actions to "redress the issue" of alleged sexual assault by drivers.  Compl. ¶ 437.  But that is not enough to plead that Uber adopted any driver's conduct.  *See Chrisman*, 2003 WL 22996909, at *5 (ratification "must result from acts clearly evidencing an intention to ratify").

Finally, in Texas, to establish liability through ratification, "the original act must have been done in [the employer's] interest or been intended to further some purpose of [the employer's].  *Sheffield* v. *Central Freight Lines, Inc.,* 435 S.W.2d 954, 956 (Tex. App. 1968).  It follows that "[w]here the employee's tort consists of an assault and battery, there are but a few situations in which the employer may be constituted a wrongdoer by ratification."  *Campbell* v. *Racetrac Petrol., Inc.*, 2021 WL 4552253, at *7 (N.D. Cal. Oct. 5, 2021) (quotations omitted).  Plaintiffs do not and cannot allege that any of the driver's alleged acts of sexual assault were done in Uber's interest.  *See, e.g.*, *Sheffield*, 435 S.W.2d at 956; *Campbell*, 2021 WL 4552253 at *7.

### E.   CPUC § 5354 Does Not Create Vicarious Liability

Plaintiffs allege that Uber is vicariously liable for conduct by independent drivers by virtue of a California Public Utilities Commission regulation that provides:

> In construing and enforcing the provisions of this chapter *relating to the prescribed privileges and obligations of the holder of a permit or certificate issued hereunder*, the act, omission, or failure of any officer, agent, or employee, or person offering to afford the authorized service with the approval or consent of the permit or certificate holder, is the act, omission, or failure of the permit or certificate holder.

Cal. Pub. Util. Code ("CPUC") § 5354 (emphasis added); *see* Compl. ¶¶ 440-44.  But section 5354 does not impose vicarious liability on Uber for incidents that occurred in Texas because it applies

- 9 -

only to TNCs "<u>operating in California</u>."   CPUC § 5431(c) (emphasis added).   Applying this regulation here would conflict with Texas's own regulations governing TNCs.  Tex. Occ. Code § 2402 *et seq.*

Even if the CPUC did govern claims based on Uber's operations in Texas, it still would not create vicarious liability for conduct by independent drivers.  The first clause of section 5354 limits its application to "construing and enforcing the provisions" of the CPUC chapter governing "Charter-Party Carriers of Passengers," including TNCs.  CPUC § 5354.  It does not impose on TNCs tort liability for *any* "act, omission, or failure" by a driver, much less vicarious tort liability.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR "COMMON CARRIER'S NON-DELEGABLE DUTY"

Plaintiffs allege that Uber is a common carrier and thus Uber is bound by a duty to protect Plaintiffs from the intentional tortious conduct of the independent drivers.  Compl. ¶¶ 386-400. Texas law expressly provides that TNCs such as Uber "are *not* common carriers."  Tex. Occ. Code § 2402.002 (emphasis added).  As a matter of law, Plaintiffs' "common carrier's non-delegable duty" claim must be dismissed.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR "NON-DELEGABLE DUTIES"

The Complaint alleges that "the scope of employment" for vicarious liability "does not apply because the drivers' torts were a breach of Uber's non-delegable duties," Compl. ¶ 426, and that Uber is liable for breaching so-called "Other Non-Delegable Duties to Provide Safe Transportation" (Cause of Action F), *id.* ¶¶ 401-17.   In short, Plaintiffs seek to hold Uber vicariously liable for alleged criminal assaults by drivers far *outside* the scope of any alleged employment.[8]  That result is not supported by the non-delegable duty doctrine.

Under the doctrine of non-delegable duties, when a party "assign[s] to another the responsibility for performing [a non-delegable] duty, he remains liable for any negligence in the performance of that duty."  *In re Gamble*, 676 S.W.3d at 785-86 (internal citations and quotations omitted); *see also Fifth Club, Inc.* v. *Ramirez*, 196 S.W.3d 788, 795 (Tex. 2006).  Texas courts

---

[8] *In re Gamble*, 676 S.W.3d 760, 786 (Tex. App. 2023) ("liability for the breach of a nondelegable duty is vicarious rather than direct.").

have recognized very few non-delegable duties with respect to non-employees. *Kolius* v. *Center Point Energy Houston Elec. LLC*, 422 S.W.3d 861, 867 (Tex. App. 2014). Here, Plaintiffs do not - - and cannot - - plead facts showing that Uber decided to assign, subcontract, or delegate its *own* alleged duties to drivers. According to the Complaint itself, Uber *itself*, not drivers, negligently performed Uber's alleged responsibilities by failing to, e.g., "adapt or improve its safety procedures," "warn passengers of the risk of Uber riders," "adequately vet new drivers," "establish and maintain and appropriate and robust system for receiving passenger complaints of sexual misconduct," and "use the utmost care and vigilance to protect Plaintiffs from its own drivers." *See* Compl. ¶ 365. The Complaint does not allege, for example, that Uber delegated to drivers the development of safety features or investigations regarding rider complaints.[9]

In any event, the imposition of a non-delegable duty does not make a principal liable for every negligent act of an independent contractor. *Gessell* v. *Traweek*, 628 S.W.2d 479, 482 (Tex. App—Texarkana 1982) (doctrine applies "only where the harm results from the negligence of the contractor in failing to take precautions against the dangers involved in the work itself"); *Loyd* v. *Herrington*, 182 S.W.2d 1003, 1006 (Tex. 1944) (principal not liable for explosion by independent contractor that was "foreign to the building of the road and not necessarily incident thereto"); *Evans* v. *Bryant*, 29 S.W.2d 484, 487-88 (Tex. Civ. App.—Eastland 1930) (principal not liable where independent contractors caused an injury by parking their truck on the highway because the contract did not make "necessary the parking of the tank so to obstruct in any manner the highway"). Similarly, "[n]o recovery may be allowed for an injury resulting from an act or fault purely collateral to the work and which arises entirely from the wrongful act of the independent contractor or his employees." *Goolsby* v. *Kenney*, 545 S.W.2d 592, 594 (Tex. App. 1976).

Finally, the non-delegable duty doctrine is not meant to apply to intentional torts beyond an independent contractor's authorized work, but to hold an "employer liable for the <u>negligence</u> of the independent contractor" in performing the principal's duties. Restatement (Second) of Torts

---

[9] The so-called "duty to provide safe transportation," if it exists at all, is functionally the same thing as the common carrier duty. *See* Restatement (Second) of Torts § 314A. Plaintiffs' purported cause of action for "other non-delegable duties" seeks to repackage the common carrier negligence claim to give Plaintiffs multiple bites at the same basic allegation. That Uber is not a common carrier *by statute* makes Plaintiffs' attempt at repackaging all the more baseless.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW          Case No. 3:23-md-03084-CRB

ch. 15, topic 2, intro. note (emphasis added); *see also Miller* v. *Towne Services, Inc.*, 665 S.W.2d 143, 145 (Tex. App—Houston [1st Dist.] 1983) (courts have imposed a statutory non-delegable duty upon motor carriers "to prevent harm caused by the *negligent* operation of the motor carriers by his appointed agents" and declining to extend the duty "to harm resulting from intentional torts.") (emphasis in original). Here, Plaintiffs accuse the drivers not of negligence, but of deliberate and intentional torts of the most heinous kind, sexual assault. Compl. ¶ 35.

## V.   PLAINTIFFS' FRAUD-RELATED CLAIMS SHOULD BE DISMISSED

Fraudulent misrepresentation "is another name for common law fraud." *Farah* v. *Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 671 (Tex. App. 1996). To establish fraud, a plaintiff must show that: "(1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury." *Barrow-Shaver Resources Co.* v. *Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019) (quotations omitted); *RenCare, Ltd.* v. *United Medical Resources, Inc.*, 180 S.W.3d 160, 166 (Tex. App. 2005).[10] "The absence of proof of any element, of course, will prevent recovery." *Perenco Nigeria Ltd.* v. *Ashland Inc.*, 252 F.3d 299, 306 (5th Cir. 2001) (applying Texas law). Claims for fraud must satisfy the heightened pleading standard of Rule 9(b) by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Such claims must be pled with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz* v. *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotations omitted); *see also Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Plotkin* v. *IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Here, by definition, the Complaint cannot satisfy Rule 9(b) because it does not allege any

---

[10] To the extent that Plaintiffs allege a cause of action for negligent misrepresentation, it is "unclear" whether such a claim is even a valid claim under Texas law outside of the business tort context. *See Butler* v. *Juno Therapeutics, Inc.*, 2019 WL 2568477, at *24 (S.D. Tex. June 21, 2019). In any event, the elements largely overlap with the elements of intentional misrepresentation, *Perenco Nigeria Ltd.*, 242 F.3d at 306, and the claim fails for the same reasons as their intentional misrepresentation claims.

facts specific to any Plaintiff.   While the Complaint describes an assortment of alleged misstatements by Uber over a broad period of time, it does not allege (a) which specific Plaintiff, (b) saw which specific statement, (c) where or when she specifically saw it, (d) how that specific Plaintiff actually and justifiably relied on the specific statement, or (e) how that specific Plaintiff was damaged as a result.   That this is an MDL does not relieve Plaintiffs of having to plead with specificity, nor does it dilute the requirements of Rule 9(b).   In an MDL, "to satisfy the requirements of Rule 9(b), plaintiffs must 'inject precision and some sort of substantiation into their allegations of fraud.'"   *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 2001 WL 1266317, *7 (D.N.J. Sept. 30, 1997) (citation omitted); *see also JCCP Demurrer Order*, at 12-15.

### A.   The Complaint Fails to Plead Reliance

To withstand dismissal of a fraud claim under Texas law, each "plaintiff must plead specific facts demonstrating that . . . the plaintiff *actually received and relied* upon [the alleged misrepresentation]."   *Millsaps* v. *Continental Casualty Co.*, 2023 WL 9645471, at *6. (E.D. Tex. Dec. 20, 2023) (emphasis in the original).   "Put differently, [f]raud does not exist unless the defendant's representations induced the plaintiff to take a particular course of action."   *Id.* (quotations omitted).   Reliance is thus highly individualized and specific to each plaintiff and "therefore, generally alleging reliance is insufficient."   *See JCCP Demurrer Order*, at 13.   For the misrepresentation claims to survive, the Complaint must allege - - but does not allege - - specific facts, based on each Plaintiff's specific individual experiences, supporting that each saw or heard specific representations by Uber, and that those specific representations induced her to arrange a ride through the Uber App or enter a vehicle arranged through the Uber App.

The *In re Ford Motor Co. Ignition Switch Prods. Liab. Lit.* MDL is instructive.   That MDL involved over 100 plaintiffs alleging that defendant Ford "fraudulently misinform[ed] the public" regarding ignition switches.   2001 WL 1266317, at *6.   Though plaintiffs "described with some particularity the nature of Ford's alleged misrepresentations to the public and the mediums through which these statements were made," the court found that the complaint was "nonetheless deficient in that it fail[ed] to describe with any particularity how plaintiffs relied upon the alleged misrepresentations and omissions of defendant, or how such reliance resulted in damages."   *Id.* at

- 13 -

*7-8.  Just like the Complaint here, the complaint "fail[ed] to state what advertisement or other statement by Ford was heard or seen and then relied upon by each . . . plaintiff."  *Id.* at *8. Although the Complaint lists an assortment of "examples" of alleged representations by Uber, Compl. ¶ 188, it does not allege particularized facts indicating which specific Plaintiff was aware of and saw which specific representations, and which specific Plaintiff then relied upon those representations in choosing to use Uber's services.  "It is implausible, to state the obvious, that every one of [the] individual Plaintiffs actually saw and relied on each and every one of the statements and other representations."  *JCCP Demurrer Order*, at 14.

## B.    Plaintiffs Fail to Identify the Alleged False Statements with Specificity

The Complaint also fails to allege with specificity the what, when, where, and how of the alleged misrepresentations and to which specific Plaintiff a specific misrepresentation was made. *Vess*, 317 F. 3d at 1106; *United States ex rel. Williams* v. *Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).  That pleading defect would require dismissal even if there were only a single Plaintiff.  *See, e.g.*, *Sharifan* v. *NeoGenis Labs, Inc.*, 622 F. Supp. 3d 478, 488-494 (S.D. Tex. 2022).[11]  But it is a major problem here because the Complaint alleges a menu of allegedly false statements, none of which is connected to any specific Plaintiff.  Instead, Plaintiffs make only general allegations that Uber made representations to "Plaintiffs and the general public" and that "Uber made intentional misrepresentations of fact to all users of the Uber App."  Compl. ¶¶ 369-70.  The plaintiffs in the JCCP attempted a similar approach, which the JCCP court rejected.  *JCCP Demurrer Order*, at 15.  That Plaintiffs here attached alleged "[e]xamples of safety-based marketing" by Uber also does not change the result because these self-selected examples are still not tied to any specific Plaintiff, to any time, or to any place.

---

[11] *See also Estate of Stella Yeh* v. *Uber Techs., Inc.*, CGC-20-584408, at 4 (Cal. Super. Ct. Aug. 6, 2021) (failure to identify the "specific representations the [passenger] purportedly read or heard, when or where she read or heard them," and "which misrepresentations she purportedly relied upon" was fatal to plaintiff's claims); *Minzer* v. *Barga*, 2020 WL 2621710, at *6 (N.Y. Super. Ct. May 22, 2020) (N.Y. Super. Ct. May 22, 2020) (dismissing fraud claims because plaintiff alleged "he was aware of Uber's alleged safety promises" but not "how or when [he] came to possess this information."); *Rodriguez* v. *Uber Techs., Inc.*, No. 2020-CA-1823, at *4-5 (Aug. 9, 2021) (Fla. 9th J. D. Cir. Ct. Osceola County Aug. 9, 2021) (dismissing fraud claims because plaintiff made only "bare allegations of fraudulent conduct" and did not "identify[] the time, place, and manner in which the conduct occurred").

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW              Case No. 3:23-md-03084-CRB

For example, in *In re Volkswagen Clean Diesel*, the complaint "detail[ed] specific advertisements and marketing materials," but the court found that the named plaintiffs' allegations "lack[ed] sufficient detail about the particular circumstances surrounding VW's misrepresentations to Plaintiffs." 349 F. Supp. 3d 881, 914 (N.D. Cal. 2018). In particular, many of the named plaintiffs failed to identify "the specifics of what was represented" and none identified when and where they saw the advertising. *Id.* at 915. The court found this dispositive, emphasizing that "such <u>linking allegations</u> are required to satisfy Rule 9(b)." *Id.* (collecting cases) (emphasis added). The Complaint here suffers from the same defect.

### C.   The *McKnight* Class Action Settlement Bars Many Misrepresentation Claims

#### 1.   The Complaint Tries to Evade the *McKnight* Settlement

By force of the June 1, 2017 Settlement of the *McKnight* v. *Uber* class action, 14-cv-05615 (N.D. Cal.), Plaintiffs here who were members of that class, and did not opt out, released Uber from "any claim arising out of or relating to [Uber's] representations or omissions regarding [1] background checks, [2] safety, or [3] the Safe Rides Fee." *McKnight* Am. Stip. of Settlement ¶ 31(a) (June 1, 2017) (the "Release"), Atkins Decl. Ex. 2.[12] Still, the Complaint includes allegations that are almost identical to those in the complaint in *McKnight*. *McKnight* Complaint, Atkins Decl. Ex. 1.[13] For example:

- The *McKnight* Complaint alleged that Uber misrepresented that "Uber is committed to connecting you with the safest ride on road." The Complaint here alleges that Uber falsely advertised "the safest ride on the road." *McKnight* Compl. ¶ 26; Compl. ¶¶ 20, 206, 207.

- The *McKnight* Complaint alleged that Uber misrepresented that it set "the strictest safety standards possible." The Complaint here alleges that Uber misrepresented that it set "the strictest standards possible." *McKnight* Compl. ¶ 26; Compl. ¶¶ 20, 207.

- The *McKnight* Complaint alleged that Uber misrepresented that drivers are "thoroughly screened through a rigorous process we've developed using industry-leading standards." The Complaint here alleges that drivers are screened by "an industry-leading background check process." *McKnight* Compl. ¶ 27; Compl. ¶¶ 20, 207.

---

[12] Where a defendant moves to dismiss a claim released by a prior settlement agreement, the Court may consider the settlement agreement because it is "integral to the plaintiff's claims and its authenticity is not disputed." *Lesnik* v. *Eisenmann SE*, 374 F. Supp. 3d 923, 936 (N.D. Cal. 2019). Uber respectfully requests that this Court take judicial notice of the *McKnight* Release, Complaint, and Mandate. *See* Atkins Decl. Exs. 1-3.

[13] Plaintiffs cite the class action claims that culminated in the *McKnight* settlement. Compl. ¶ 208.

- The *McKnight* Complaint alleged that safety standards "aim to go above and beyond local requirements." The Complaint here alleges that Uber misrepresented that it "aims to go above and beyond local requirements" with "industry leading" background checks. *McKnight* Compl. ¶ 26; Compl. ¶ 20.

*McKnight* was settled pursuant to an Amended Stipulation of Settlement dated June 1, 2017, which provided that all class members who did not opt out released claims "of any nature whatsoever, known or unknown, . . . which Plaintiffs and Class Members have or may have arising out of or relating to any allegations made in the Action, or any legal theories that could have been raised based on the allegations in the Action." *McKnight* Am. Stip. of Settlement ¶ 31 (defining "Released Claims"). "The Released Claims include, but are not limited to, any claim arising out of or relating to [Uber's] representations or omissions regarding background checks, safety, or the Safe Rides Fee." *Id.*[14] In exchange for the Release, Uber agreed, among other things, that it would cease any use of anything called a "Safe Rides Fee" beyond early 2016. The Settlement Class included all passengers who "used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories," "from January 1, 2013 to January 31, 2016," and did not "elect exclusion or opt out from the Class." *Id.* ¶¶ 6, 8.[15] Therefore, any Plaintiff here who was a class member already released Uber from "any claim arising out of or relating to [its] representations or omissions regarding background checks, safety, or the Safe Rides Fee." *Id.* ¶ 31.

The Complaint's total lack of specificity as to which Plaintiffs relied on which alleged misrepresentations and omissions, and when and where they did so, prevents Uber and the Court from determining which Plaintiffs are barred by the Release from pursuing which allegations about which alleged misrepresentations and omissions. Even so, it is clear that there are Plaintiffs in the class - - i.e., individuals who "from January 1, 2013 to January 31, 2016, used the Uber App or

---

[14] Final judgment in the McKnight action, following resolution of appeals, was entered by the Ninth Circuit on December 22, 2022. *McKnight* Mandate, Atkins Decl. Ex. 3. The release was effective on December 23, 2022. *McKnight* Am. Stip. of Settlement ¶ 16.

[15] The *McKnight* Release states that "Class Members are not releasing any claims for personal injuries." *McKnight* Am. Stip. of Settlement ¶ 31. That exception immediately follows the release of "any claim arising out of or relating to Defendants' representations or omissions regarding background checks, safety, or the Safe Rides Fee." *Id.* Thus, the personal injury exception applies only where the claim relates to something other than an alleged representation or omission about background checks, safety, or the Safe Rides Fee.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW          Case No. 3:23-md-03084-CRB

1    website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United

2    States or its territories."  *Id.* ¶ 6.[16]  Moreover, no claims relating to the "Safe Rides Fee" could

3    have survived the *McKnight* settlement because that fee was terminated as part of the settlement

4    and therefore did not exist after early 2016.  The MDL cannot be used to avoid the enforcement of

5    the *McKnight* settlement by lumping all the Plaintiffs together with no specifics.  Put simply, either

6    the Plaintiffs were part of the settlement and barred from alleging the released claims or the

7    Plaintiffs otherwise were not charged a Safe Rides fee and cannot assert a claim based on the fee.

8                           2.   The "Safe Rides Fee" Allegations Should Be Dismissed or Stricken

9          There is at least one allegation that cannot stand and should be dismissed now with

10   prejudice and/or stricken in light of the McKnight settlement:  the allegation that the "Safe Rides

11   Fee" constitutes an actionable misrepresentation or omission.  Compl. ¶¶ 203-04.  Under Rule

12   12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial,

13   impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  As the Ninth Circuit has instructed,

14   "'immaterial' matter is that which has no essential or important relationship to the claim for relief

15   or the defenses being pleaded," and " 'impertinent' matter consists of statements that do not

16   pertain, and are not necessary to the issues in question."  *Fantasy, Inc.* v. *Foberty*, 984 F.2d 1524,

17   1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

18         Here, the allegations about the "Safe Rides Fee" being misleading are undeniably

19   immaterial because they cannot, given the *McKnight* settlement, support any misrepresentation or

20   omission claims.  *First*, as to Plaintiffs who were members of the *McKnight* class, any claims

21   arising from or relating to the Safe Rides Fee were released.  *See supra* Section V.C.1.  *Second*, it

22   follows from the definition of the *McKnight* class that any Plaintiffs not in the class were those

23   who did not obtain a "Uber Service With a Safe Rides Fee," and therefore cannot claim to have

24   been misled by the Safe Rides Fee.  *Third*, as the use of the Safe Rides Fee was enjoined as part

25   of the Settlement, no Plaintiff can have a claim based on a program that no longer existed after

26   early 2016.

---

[16] Uber has identified 21 Plaintiffs who allege incidents in California, Florida, Illinois, New York, and Texas who released claims pursuant to Release.  Sauerwein Decl. ¶ 20.  Uber is not aware of any MDL Plaintiff who opted out of the *McKnight* class action settlement.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW        Case No. 3:23-md-03084-CRB

**D.     The Complaint Alleges Representations That Are Not Actionable**

Although the Complaint includes a list of alleged misrepresentations, it does not plead facts showing that those statements are false, or in what way they are false.  *See Hoffman* v. *AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 743 (N.D. Tex. 2014) (dismissing fraud claim where "Plaintiffs do not provide a specific explanation of why the statements . . . were fraudulent").  The Complaint alleges, for example, that Uber made representations about the existence of "safety features built into every ride," including that "911 help is a swipe away" and that RideCheck "can help detect if your trip goes unusually off course."  Compl. ¶ 227, Appx. A, Ads 8, 28, 32; *see, also* Appx. A, Ads. 7, 9, 10, 23, 24, 26, 27.  The Complaint does not, however, allege that "safety features" are <u>not</u> built into every ride; that "911 help" is <u>not</u> a swipe (of the finger) away; or that the RideCheck feature does <u>not</u> "help detect" trips that go off course.  Likewise, the Complaint points to Uber's statements that drivers "must undergo a multi-step safety screen" and that Uber "rescreens drivers every year."  Compl. ¶ 215; *see also id.* ¶ 216, Appx. A, Ad. 30.  Nowhere does the Complaint allege, however, facts showing that background checks are <u>not</u> used to vet drivers; that there is <u>not</u> a multi-step process; or that there are <u>not</u> background checks run every year.  In short, the Complaint "fails to adequately plead *how* the statements" cited in the Complaint "are false." *Baker* v. *Great Northern Energy, Inc.*, 64 F. Supp. 3d 965, 974 (N.D. Tex. 2014) (emphasis in the original).  What Plaintiffs do allege is that Uber should have different and additional safety features, and should use different background checks.  *See* Compl. ¶ 365(a)-(p).  But that belief does not render false Uber's statements about the safety features it does, in fact, have; or about the background checks that are, in fact, conducted.

The Complaint also alleges statements that are not falsifiable, and thus are not actionable. A false representation must be one of an existing or past fact, and not a mere promise to do some act in the future.  *Patrusky* v. *Bloomberg*, 2015 WL 3896097, at *8 (Tex. App—Dallas June 24, 2015); *AKB Hendrick, LP* v. *Musgrave Enterprises, Inc.*, 380 S.W.3d 221, 237 (Tex. App. 2012). Accordingly, statements of opinion or puffery are not actionable.  *Am. Honda Motor Co.* v. *Milburn*, 668 S.W3d 6, 33 (Tex. App. 2021).  In *American Honda Motor Co.*, a Texas appellate court addressed fraud claims premised on allegations that Uber "made false representations to the

public . . . that Uber is committed to safety and provides safe transportation services" including in "marketing materials" about background checks and the development of safety features on the App." 668 S.W.3d at 32. The court held as a matter of law that the plaintiff could not "rely on statements in Uber marketing materials in which Uber promises the safest possible platform" because "such statements involve mere opinion or puffery." *Id.* at 33; *see also Fusco* v. *Uber Techs.*, 2018 WL 3618232, at *6, 8 (E.D. Pa. July 27, 2018) (distinguishing Uber's general safety-related statements from "a claim of absolute safety").

The Complaint alleges numerous similar non-actionable statements by Uber, including: "Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone;" "That's why we're committed to safety—from the creation of new standards to the development of technology with the aim of reducing incidents;" and "Uber is dedicated to keeping people safe on the road." Compl. ¶¶ 211, 221; *see also id.* Appx A, Ad. 6. These are not statements concerning past or existing material facts. *See Patrusky*, 2015 WL 3896097, at *8. They are expressions of company pride and esteem, communicated in aspirational language that would not reasonably be understood to be subject to factual verification. *See XYZ Two Way Radio Serv., Inc.* v. *Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) ("Many of the statements are couched in aspirational terms—'committed to,' 'aim to,' 'believe deeply'— that cannot be proven true or false."). And they refer to "safety" in vague and general terms, without promising any specific standard of safety or guaranteeing absolute safety. *See Am. Honda Motor Co.*, 668 S.W.3d at 33.

### E. The Complaint Fails to Adequately Plead Fraud by Omission

Plaintiffs allege that Uber is liable for "misrepresentation by omission." Compl. ¶ 368. A claim for fraud by non-disclosure requires that: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury. *Bombardier Aerospace Corp.* v. *SPEP Aircraft Holdings, LLC*, 572 S.W. 3d 213, 219-20 (Tex. 2019). "Fraudulent omission claims, like

fraudulent misrepresentation claims, are subject to Rule 9(b)."  *In re Volkswagen*, 349 F.Supp.3d at 915 (citing *Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir.2009)); *see also Carroll* v. *Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006).  This claim should be dismissed for the following reasons.

*First*, Plaintiffs do not allege an omission of a "material fact."  Instead, as discussed above, they state a number of accusations and opinions about the company:  Uber "failed to disclose the truth that Uber prioritized growth and driver supply over passenger safety"; Uber "failed to disclose the truth that Uber failed to adequately protect passengers against sexual assault or harassment committed by drivers"; and Uber did not disclose "the truth of its priorities and lack of adequate safety mechanisms."  Compl. ¶¶ 372-74.  These are not allegations of undisclosed material facts, but derogatory characterizations of Uber.  The Complaint therefore fails to allege an omission or concealment with the factual specificity required by Rule 9(b).

*Second*, Plaintiffs fail to allege that they were "ignorant of the facts and did not have an equal opportunity to discover them," *Bombardier Aerospace Corp.*, 572 S.W. 3d at 219, because the Complaint alleges otherwise.  The Complaint alleges that it was in 2014 that Uber started receiving reports of sexual assault by drivers against riders.  Compl. ¶ 258.  It then cites a *New York Times* article *from 2014* called "Uber's System for Screening Drivers Draws Scrutiny," which details public and government criticism over Uber's driver screening process and the alleged rape of a passenger.  *Id.* ¶ 145 n.19; *see also id.* ¶ 151 (discussing 2014 investigation into Uber's driver screening); *id.* ¶ 260 n.60 (citing 2014 *New York Times* article about rape of passenger)*.  Also in 2014, the original Complaint in the *McKnight* class action was filed, which alleged that Uber made misleading statements about passenger safety because, among other things, a woman allegedly (it was never proven) was attacked by a driver with a criminal background.  *McKnight* Compl. ¶ 53 n.2, Atkins Decl. Ex. 1.[17]  As discussed above, numerous Plaintiffs *in this case* were actually class members in *McKnight* and received payment in exchange for releases.  Those Plaintiffs certainly did not lack opportunity to discover  information about Uber safety-related statements, including

---

[17] The same alleged incident is discussed in the original complaint filed in December 2014. *McKnight* v. *Uber Techs., Inc.*, 14-cv-05615, ECF No. 1, ¶ 36.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW          Case No. 3:23-md-03084-CRB

about background checks.  *See Bombardier*, 572 S.W. 3d at 219.

Then, as Plaintiffs themselves allege, in 2019 Uber released the 84-page 2017-2018 Safety Report detailing with statistical precision the number of incidents of the most severe forms of sexual misconduct on the platform.  Compl. ¶ 273.  Uber issued the Report even though it was not legally mandated to do so and even though doing so was above and beyond any industry standard (e.g., Lyft had not launched a report; there are also no notices or reports regarding sexual assaults on airplanes and cruises or at hotels, despite the fact that sexual assaults occur in those industries too).  That directly contradicts Plaintiffs' accusation that Uber did not disclose facts about safety and, more generally, that Uber is the type of company that conceals such facts.  Because these alleged safety issues were part of the public record, Plaintiffs' conclusory allegations of Uber's supposedly exclusive knowledge do not state a claim for fraud by non-disclosure.  *See Estate of Scott*, 2020 WL 2736466, at *5 (Tex. App. May 27, 2020); *Holland* v. *Thompson*, 338 S.W.3d 586, 598 (Tex. App. 2010); *cf. Bergeron* v. *Select Comfort Corp.*, 2016 WL 155088, at *7 (W.D. Tex. Jan. 11, 2016) (no fraudulent concealment of mold issues where reports of mold were discussed in publicly available sources, some of which were cited in complaint).

<u>Third</u>, Plaintiffs fail to allege that Uber had a duty to disclose.  *See Bradford* v. *Vento*, 48 S.W.3d 749, 755 (Tex. 2001).  "In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship." *Bombardier*, 572 S.W.3d at 220.  Here, the Complaint does not allege that Uber had a fiduciary or confidential relationship with any of the Plaintiffs that would create a duty to disclose.  It alleges only, in a vague and conclusory fashion, that Uber "had a *special* relationship with the passengers."  Compl. ¶¶ 374(a) (emphasis added).  But an ordinary "arms-length contractual relationship" like the one between Uber and Plaintiffs does not form the basis of a fiduciary or confidential relationship producing a duty to disclose.  *See Sharpe*, 2024 WL 278913, at *2.  Indeed, "[i]n an arm's length transaction, the party alleging fraud . . . cannot blindly rely on the defendant's reputation, representations, or conduct." *Mercedes-Benz USA, LLC* v. *Carduco, Inc.*, 583 S.W.3d 553, 563 (Tex. 2019).

Absent a confidential or fiduciary relationship, a duty may arise only "when the defendant: (1) discovered new information that made its earlier representation untrue or misleading; (2) made

a partial disclosure that created a false impression, or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Bombardier*, 572 S.W.3d at 220. The Complaint fails to allege any facts that support the conclusion that Uber failed to disclose new information that rendered prior disclosures untrue or that Uber made any fraudulent partial disclosure.[18]

## VI.   THE CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS IS NOT RECOGNIZED

Texas law does not recognize a separate tort of NIED, which is simply a form of recoverable damages dependent on establishing the elements of negligence. *Boyles* v. *Kerr*, 855 S.W.2d 593, 595-600 (Tex. 1993); *see also Castro Romero* v. *Becken*, 256 F.3d 349, 355 (5th Cir. 2001). Because the claim for NIED is not recognized as a standalone cause of action, it must be dismissed. *Retana* v. *Twitter, Inc.*, 419 F. Supp. 3d 989, 999 (N.D. Tex. 2019).

## VII.   PLAINTIFFS FAIL TO ALLEGE NEGLIGENT ENTRUSTMENT

To support a claim for negligent entrustment, Plaintiffs must allege facts establishing (1) that a chattel was entrusted but not sold to a person the owner knew or should have known was incompetent, (2) that person was negligent with the chattel, and (3) that person's negligence caused the plaintiff's injury. *See In re Academy, Ltd.*, 625 S.W.3d 31, n. 13 (2021) (citing Restatement (Second) of Torts § 390). Contrary to Plaintiffs' allegations, the Uber App and Uber's trademarks" are not "chattel." *See* Compl. ¶ 363(n). Negligent entrustment claims in Texas apply only to chattels that are moveable or transferable physical property, such as motor vehicles and firearms. *See Scurlock* v. *Pennell*, 177 S.W.3d 222, 226 (Tex. App—Houston [1st Dist.] Feb. 10, 2005) (collecting cases). In any event, even if the Uber App and/or its trademark were considered "chattel," Plaintiffs do not allege that any independent driver's negligent use of the Uber App or Uber's trademarks, or that any such alleged negligent use caused any particular Plaintiff's injury. Accordingly, the claim must be dismissed.

---

[18] For the reasons stated *supra* Section V.A., Plaintiffs also fail to allege reliance as to each particular Plaintiff. Under Texas law, "[i]n order to satisfy the justifiable reliance element of fraud by non-disclosure, Plaintiff must show that [the allegedly injured party] *actually relied* on the omission to his detriment." *Sharpe* v. *Lyft, Inc.*, 2024 WL 278913, at *3 (S.D. Tex. Jan. 10, 2024) (emphasis in original). Plaintiffs fail to do so here.

## VIII.   THE COMPLAINT'S STRICT PRODUCT LIABILITY CLAIMS FAIL AS A MATTER OF LAW

A manufacturer, distributor, or retailer of a product is liable in tort if a defect in the product causes injury while the product is being used in a reasonably foreseeable way.  *Benavides* v. *Cushman, Inc.*, 189 S.W.3d 875, 881 (Tex. App. 2001).  As relevant here, defining whether there is a "product" at issue is a condition precedent to successfully maintain the action.  *See Johnson* v. *Murph Metals, Inc.*, 562 F. Supp. 246, 249 (N.D. Tex. 1983); *see also Way* v. *Boy Scouts of America*, 856 S.W.2d 230, 238 (Tex. App. 1993).  Whether or not the subject object is defined as a "product" is a question of law for the court to decide.  *Johnson*, 562 F. Supp. at 249.  Here, the Complaint fails to allege facts sufficient to show the Uber App is a "product" or "tangible personal property distributed commercially for use or consumption."  Restatement (Third) of Torts: Prod. Liab. § 19.  To the contrary, as the Complaint itself acknowledges, the Uber App provides a *service* of connecting riders with drivers.  *See, e.g.*, Compl. ¶ 390 ("Uber charges standard fees for its services through its application."); *id.* ¶ 391 ("Any member of the public can use Uber's transportation services."); *see also id.* ¶¶ 13, 70, 73, 119, 179, 206, 352, 388, 408, 421, 429-30. Similarly, the Texas Legislature recognizes that TNCs provide a service.  *See, e.g.*, Tex. Occ. Code § 2402.112 (transportation network companies may not "refus[e] to provide service to a potential passenger with a service animal"), *see also, e.g. id.* §§ 2402.113; 2402.115; 2402.153.

"Services, even when provided commercially, are not products."  Restatement (Third) of Torts: Prod. Liab. § 19.  Since software, like the Uber App, generally is designed to provide a service, "most software does not fall within the purview of product liability law."  Raymond T. Nimmer, Law of Comput. Tech. § 12:41 (Nov. 2023 Update); *see also* Michael D. Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (3d ed. 2024 Supp.); Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005).  For these reasons, courts in many jurisdictions have found that the Uber App, and similar apps, are not products. [19]  For example, in the JCCP, the court explained that "customers do not purchase the

---

[19] *See, e.g.*, *Arruda* v. *Rasier, LLC*, No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024); *Martinez* v. *Uber Techs., Inc.*, No. 23STCV09795 (Cal. Super. Ct., Oct. 3, 2023); *Ramos* v. *Uber Techs., Inc.*, No. 22STCV33007 (Cal. Super. Ct. June 1, 2023); *Luna, Avelardo* v. *Uber Techs.,*

1   App, nor is it in any meaningful sense the object of their transaction with Uber, but merely the

2   mechanism by which that object—securing a ride to their destination—is accomplished."  *JCCP*

3   *Demurrer Order*, at 18.  The court held "[t]he Uber App is no more a 'product' . . . than is a

4   telephone that a customer uses to call a taxi."  *Id.*

5       Even if the Uber App could be viewed in some respect as a product under Texas law (it is

6   not), Plaintiffs would still need to establish that their transaction with Uber was for the purpose of

7   purchasing a product rather than obtaining a service (connecting with an independent driver to

8   obtain a ride).  *Amazon.com, Inc.* v. *McMillan*, 625 S.W.3d 101, 107 (Tex. 2021) ("Those that

9   provide both goods and services are not sellers if the provision of products is incidental to the

10  provision of services.").  Plaintiffs cannot make this showing because their transactions with Uber

11  were to obtain the use of Uber's "services" - - not to compensate Uber for the purchase of the App,

12  which is free to download.  *Centerpoint Builders GP, LLC* v. *Trussway, Ltd.*, 496 S.W.3d 33, 40-

13  41 (Tex. 2016) (general contractor not strictly liable for defects in materials used in construction

14  of building because any sale of these materials by the general contractor "was incidental to its

15  contract to provide the services necessary to construct a building." (quoting *Barham* v. *Turner*

16  *Const. Co. of Texas*, 803 S.W.2d 731, 738 (Tex. App. 1990))).

17      Even setting aside the threshold issue of whether the Uber App is a product, the Complaint

18  also fails to state a claim for strict product liability because it does not allege any defect or

19  condition necessitating a warning.  Nowhere does the Complaint allege that the Uber App had a

20  glitch or bug that impaired its ability to connect riders with drivers or that the App had an inherent

21  and dangerous design flaw that prevented it from performing its function of connecting riders with

22

23  *Inc.*, No. 22STCV10806 (Cal. Super. Ct., Sept. 27, 2022); *Baxter-Aremtrout* v. *Lyft, Inc.*, No. 50-
    20210CA-013917 (Fla. Cir. Ct., Aug. 29, 2022); *Behuet & Hunt* v. *Uber Technologies, Inc.*, 2022
24  WL 20318684, at *2 (Cal. Super. Ct. July 13, 2022); *Shannon* v. *Uber Techs., Inc.*, No.
    21STCV42029 (Cal. Super. Ct., Apr. 15, 2022); *Flores* v. *Uber Techs., Inc.*, No.
25  19STCV24988  (Cal. Super. Ct., Mar. 22, 2022); *Norman* v. *Uber Techs., Inc.*, No. 21STCV35632
    (Cal. Super. Ct. Mar. 8, 2022); *Cruz Lopez* v. *Uber Techs., Inc.*, No. 21CV376012 (Cal. Super. Ct.
26  Dec. 7, 2021); *Polanco* v. *Lyft, Inc.*, 2021 Cal. Super. LEXIS 60679 (Cal. Super. Ct. May 13,
    2021); *Toral* v. *Uber Techs., Inc.*, No. 20STCV02030 (Cal. Super. Ct. Apr. 14, 2021); *Jane Doe*
27  *No. 1* v. *Uber Techs., Inc.*, 2020 Cal. Super. LEXIS 73095 (Cal. Super. Ct. Nov. 30, 2020); *see*
    *also Ziencik* v. *Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (same as to Snapchat);
28  *Jackson* v. *Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022) (same as to Airbnb).

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW          Case No. 3:23-md-03084-CRB

drivers.[20]  Likewise, the Complaint does not allege that the design of the Uber App itself, such as its coding sequences that connect riders with drivers, is dangerous when used as intended and therefore requires warnings.[21]  Instead, Plaintiffs contend that Uber negligently failed to prevent the sexual misconduct of independent drivers because it implemented inadequate safety measures and background checks.  Compl. ¶ 473.  But Uber's alleged "failure to permit passengers to select drivers of the same gender" on the Uber App (*id.* ¶ 473(b)), for example, is not a defect in the software's function of connecting riders with drivers.  Nor is Uber's supposed failure to include a feature that would "ship dash cameras to drivers."  *Id.* ¶ 487(a).  These are simply safety measures that Plaintiffs think Uber should take, but they do not go to the design of the software itself.

The strict product liability claims fail for the additional reason that the Complaint does not plausibly allege causation with respect to any individual Plaintiff.  *See Berg* v. *AMF Inc.*, 29 S.W.3d 212, 219 (Tex. App. 2000).  To survive dismissal, the Complaint must allege facts sufficient to show that the absence of a different design was the cause of each Plaintiff's injury - - i.e., that the sexual assaults would not have occurred or would have been significantly reduced had Uber adopted a specific different design.  *See, e.g.*, *Kim* v. *Am. Honda Motor Co.*, 86 F.4th 150, 163 (5th Cir. 2023), *citing* Tex. Civ. Prac. & Rem. Code Ann. § 82.005(b).  Here, none of the Plaintiffs has satisfied that pleading requirement because none of them has alleged facts to show what specific alternative design would have prevented what specific incident, or that an alternative design would have stopped the independent motivations of a criminal perpetrator.  Plaintiffs' alleged injuries stemmed not from a software design flaw, but from the alleged actions of independent drivers who made independent decisions to commit sexual assault.  *See Meador* v. *Apple, Inc.*, 911 F.3d 260, 265-7 (5th Cir. 2018).

For example, the Complaint alleges that the Uber App failed to "utilize its existing GPS, alert, and predictive technology to implement a feature whereby safety alerts are triggered in the

---

[20] Liability for defective design exists only where an allegedly defective product is unreasonably dangerous to the user or consumer. *See Genie Indus., Inc.* v. *Matak*, 462 S.W.3d 1, 6 (Tex. 2015) (quotations omitted).

[21] A failure to warn claim must "allege[] that the product itself is unlawfully dangerous unless accompanied by sufficient warnings or instructions." *Kurns* v. *R.R. Friction Prods. Corp.*, 565 U.S. 625, 635 (2012); *see Morris* v. *Adolph Coors Co.*, 735 S.W.2d 578, 583 (Tex. App. 1987).

event of route deviations or excessive time spent with a passenger at the beginning or end of a route."  Compl. at ¶ 487(b).  Yet, the Complaint does not allege, because it would be implausible, that the absence of such "predictive technology" was the but-for cause of all 200+ alleged incidents.  For instance, there are alleged incidents where there were no "route deviations," but, rather, where the driver allegedly assaulted the rider *after* the ride was complete and *after* the Uber App had been turned off.  Similarly, there is no allegation that each individual Plaintiff  used the App herself to order the ride at issue, or would have seen any warning issued through the App or otherwise directed to App users.  Absent well-pled, plaintiff-specific allegations that a warning would have been seen, and heeded, by any particular individual Plaintiff, the Complaint's failure to warn claims fail.

## IX.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE UCL

### A.   Plaintiffs Cannot Assert UCL Claims for Incidents That Occurred in Texas

Plaintiffs' claims under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"), must be dismissed.  *See* Compl. at ¶¶ 506-13.  California courts have long held that there is a presumption against applying California statutes extraterritorially.  *See Sullivan* v. *Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).  Those courts "ordinarily presume the Legislature did not intend the statutes of [California] to have force or operation beyond the boundaries of the state," absent clear statutory language to the contrary.  *Norwest Mortg., Inc.* v. *Superior Ct.*, 72 Cal. App. 4th 214, 222 (1999).  The California Supreme Court has held that "the presumption against extraterritoriality applies to the UCL in full force" because "[n]either the language of the UCL nor its legislative history provides any basis for concluding" otherwise.  *Sullivan*, 51 Cal. 4th at 1207; *see also Ice Cream Distribs. of Evansville, LLC* v. *Dreyer's Grand Ice Cream, Inc.,* 2010 WL 3619844, *8 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th Cir. 2012).

In assessing whether a foreign resident can avail herself of the UCL, the "critical" questions "are whether the injury occurred in California and whether the conduct of Defendants occurred in California."  *Tidenberg* v. *Bidz.com, Inc.*, 2009 WL 605249, *3-4 (C.D. Cal. Mar. 4, 2009).  Here, the Complaint contains no factual allegations supporting a conclusion that any of the Texas Plaintiffs used the Uber App in California to book the rides during which the incidents

- 26 -

occurred.  Indeed, the Complaint contains no allegations about any of the Texas Plaintiffs' "individual contacts with California." *Id.* at *5.  On the contrary, for all the Texas Plaintiffs, the incidents, and Plaintiffs' alleged injuries resulting from the incidents, occurred *in Texas*. [22]

### B.   Plaintiffs Fail to State a UCL Claim on the Merits

Plaintiffs' allegation that Uber engaged in "unlawful," "fraudulent," and "unfair" business practices is insufficient to state a claim for violation of the UCL.  Compl. ¶¶ 506–10.  *First*, Plaintiffs allege that "Uber's conduct was unlawful because it violated Uber's common law duties of care." *Id.* ¶ 507.  In other words, Plaintiffs attempt to satisfy the "unlawful" prong of their UCL claim by relying on allegations that Uber's conduct was negligent.  But "[c]ommon law claims such as negligence cannot form the basis of an unlawful prong claim under the UCL." *Mendez* v. *Selene Fin. LP*, 2017 WL 1535085, at *6 (C.D. Cal. Apr. 27, 2017); *see also Shroyer* v. *New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

*Second*, in support of their UCL claim, Plaintiffs allege that "Uber's conduct was fraudulent because it was grounded in Uber's representations that it would protect its passengers' safety." Compl. ¶ 509.  However, Plaintiffs' claim under the "fraud" prong of the UCL fails for the same reasons as their common law fraud claims as the UCL is "governed by Rule 9(b)'s heightened pleading standard." *Frenzel* v. *AliphCom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014).

*Third*, Plaintiffs make the conclusory allegation that Uber's "conduct was unfair because it was unscrupulous, contrary to public policy and presented a serious risk of harm to persons Uber was responsible for protecting."  Compl. ¶ 508.  Plaintiffs do not allege, however, that Uber's alleged conduct is "tethered to an[] underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law."  *Doe* v. *CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) (quotations omitted).  Although Plaintiffs speciously claim that Uber's conduct "was grounded in unfair

---

[22] Some courts have held that the UCL may apply extraterritorially to claims based on alleged misrepresentations that were developed in and disseminated from California. *E.g., Ehret* v. *Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1131-32 (N.D. Cal. 2014). However, those cases are distinguishable. *First*, here, there is no factual allegation of misconduct occurring in California. *Second*, the misconduct giving rise to Plaintiffs' claims indisputably occurred outside of the state, in Texas.

competition because the company enjoys a competitive advantage by not adequately protecting its passengers," Compl. ¶ 510, Plaintiffs do not allege any "proof of some actual or threatened impact on competition," *Cel-Tech Comms., Inc.* v. *L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999), nor do Plaintiffs tie their allegations "to some legislatively declared policy," *id.*; *see also In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2014 WL 5311272, at *26 (C.D. Cal. Sept. 4, 2014).

## X.    PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

Plaintiffs' request for injunctive relief under the UCL, Compl. ¶¶ 506–13, fails for at least two reasons. *First*, a "plaintiff seeking equitable relief under the UCL must demonstrate the inadequacy of a remedy at law." *Rodriguez* v. *FCA US LLC*, 2023 WL 3150075, at *3 (C.D. Cal. Mar. 21, 2023); *cf. Sonner* v. *Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). That is because the Court lacks equitable jurisdiction to grant the request for injunctive relief where there is an adequate remedy at law. *See Rodriguez*, 2023 WL 3150075, at *4 (failure to "plausibly alleg[e] [plaintiff] lacks an adequate remedy at law[] is . . . fatal to establishing th[e] court's equitable jurisdiction"). But here, the Complaint is entirely devoid of *any* allegation, plausible or not, that Plaintiffs lack an adequate remedy at law. Instead, all of the allegations pled in support of Plaintiffs' claims for injunctive relief under the UCL are duplicative of allegations pled in support of Plaintiffs' non-equitable claims for negligence, fraud, and product liability, and pursuant to which Plaintiffs separately seek money damages. *See, e.g.*, Compl. ¶¶ 367, 380, 490; *see Huynh* v. *Quora Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) ("[Plaintiff] fails to allege or demonstrate that any remedy at law is inadequate, and in fact she even seeks a remedy at law through her negligence claim, which is based on the same alleged conduct as her equitable claim.").

*Second*, the Complaint fails to allege facts establishing that any individual Plaintiff has standing to seek injunctive relief under the UCL.[23] "Under Article III's standing requirement, a plaintiff seeking injunctive relief bears the burden of showing 'that *he* is under threat of suffering 'injury in fact' that is *concrete and particularized*; the threat must be *actual and imminent*, *not conjectural or hypothetical*; it must be fairly traceable to the challenged action of the defendant;

---

[23] Because Plaintiffs' Article III standing to seek injunctive relief is governed by federal law, the law of the Ninth Circuit applies. *See In re Korean Air Lines Disaster*, 829 F.2d at 1175-76.

and it must be likely that a favorable judicial decision will prevent or redress the injury.'"  *Doe* v. *Match.com*, 789 F. Supp. 2d 1197, 1199 (C.D. Cal. 2011) (emphasis added) (quoting *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *Payne* v. *Off. of the Comm'r of Baseball*, 705 F. App'x 654, 655 (9th Cir. 2017).  But, Plaintiffs do not allege that any one of them faces an "actual and imminent" or "immediate" threat of being subjected to future misconduct by an independent driver.  Generalized allegations about the purported "widespread nature of sexual misconduct" by certain independent drivers, Compl. ¶ 354, do not suffice to allege a "real and immediate" threat of future harm to any individual plaintiff as required to establish standing.  *See City of Los Angeles* v. *Lyons*, 461 U.S. 95, 111 (1983)  For example, in *Lyons*, a plaintiff sought an injunction against the City of Los Angeles after being subjected to a traffic stop and an alleged unprovoked chokehold by the officers.  Although the plaintiff alleged that "the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force," the Supreme Court held that the plaintiff nonetheless failed to establish "a real and immediate threat" that he would be subjected to the same alleged harm in the future.  *Id.* at 106, 110.

Similarly, in *Doe* v. *Match.com*, a plaintiff alleged that, through defendant's online dating service, she met a serial sexual predator who forcibly raped her.  789 F. Supp. 2d at 1198.  The plaintiff sought injunctive relief requiring defendant to institute screening procedures that she alleges would have prevented the rape.  *Id.* at 1199.  The district court held, however, that plaintiff lacked standing to seek such relief because she had failed to establish more than a "tenuous likelihood of future injury" to herself.  *Id.* at 1200; *see also Ramsay* v. *Frontier, Inc.*, 2020 WL 4557545, at *3, 16 (D. Colo. July 30, 2020), *report and recommendation adopted*, 2021 WL 651021 (D. Colo. Feb. 19, 2021); *Brawley* v. *Bath & Body Works, LLC*, 2019 WL 7945655, at *3 (N.D. Tex. Sept. 25, 2019).  Dismissal of Plaintiffs' claims for injunctive relief is required for similar reasons as in *Lyons* and *Match.com*:  Plaintiffs cannot plausibly allege, and have not alleged, that any of them face an almost certain risk of a similar incident occurring, even assuming they were to use Uber's services in the future.[24]

---

[24] Relying on the Ninth Circuit's decision in *Davidson* v. *Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018), Plaintiffs allege they have standing because "[i]t is plausible that each Plaintiff will seek to use Uber's product in the future and necessarily will rely on Uber's obligations and

## XI.    PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

Plaintiffs' request for punitive damages can - - and should - - be dismissed.  Under Texas law, unless a statute establishes a cause of action and authorizes punitive damages, "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." *See* Tex. Civ. Prac. & Rem. Code § 41.003(a); *see also Ware* v. *Paxton*, 359 S.W.2d 897, 898-99 (Tex. 1962).  The Complaint fails to allege fraud, for the reasons described *supra* section V.  *See Ozon* v. *Bank of Am., N.A.*, 2015 WL 11545020, at *5 (W.D. Tex. Nov. 9, 2015) (noting that some district courts do not consider a claim for exemplary damages to be a separate claim); *MedARC, LLC* v. *Aetna Health Inc.*, 2022 WL 1057085, at *6 (N.D. Tex. Feb. 3, 2022) (dismissing exemplary damages claim because party "failed to plead a claim for fraud" under Rule 9(b)); *Curtis* v. *Cerner Corp.*, 621 B.R. 141, 186–87 (S.D. Tex. 2020) (dismissing request for exemplary damages).  Plaintiffs also fail to plead malice, which requires a "*specific intent* by the defendant to cause substantial injury or harm *to the claimant*."  Tex. Civ. Prac. & Rem. Code § 41.001(7) (emphasis added).  *Tri-County Elec. Coop., Inc.* v. *GTE Sw. Inc.*, 490 S.W.3d 530, 556 (Tex. Ct. App. 2016).  Plaintiffs fail to plead facts showing that Uber had a specific intent to cause substantial injury or harm to any Plaintiffs.  *See In re Bella Corp.*, 648 S.W.3d 373, 383–84 (Tex. Ct. App. 2021).

## XII.    AMENDMENT WOULD BE FUTILE

Because the above causes of action are deficiently pled as a matter of law, and no Plaintiff can allege facts beyond those asserted because no such facts exist, amendment would be futile and should not be allowed.  *See Steckman* v. *Hart Brewing, Inc.*, 143 F. 3d 1293, 1298 (9th Cir. 1998).

## CONCLUSION

For the foregoing reasons, Uber's motion to dismiss pursuant to Texas law should be granted without leave to amend.

---

representations regarding safety."  Compl. ¶ 350.  But *Davidson* addressed standing in the context of false advertising claims seeking to enjoin future advertising.  Here, Plaintiffs purport to seek an injunction to "ensure sexual assault in Uber vehicles is foreclosed to the greatest extent possible."  Compl. ¶ 35.  For that relief, Plaintiffs must (but do not) plausibly allege an "actual and imminent" threat of similar sexual misconduct in the future.  *Match.com*, 789 F. Supp. 2d at 1199.

1

DATED: April 1, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

2

3

By: */s/ Robert Atkins*

4

ROBERT ATKINS
RANDALL S. LUSKEY
JESSICA E. PHILLIPS
KYLE N. SMITH
JACQUELINE P. RUBIN
CAITLIN E. GRUSAUSKAS
ANDREA M. KELLER

5

6

7

8

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO TEXAS LAW                    Case No. 3:23-md-03084-CRB