RANDALL S. LUSKEY (SBN: 240915)
  rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
  ratkins@paulweiss.com
JACQUELINE P. RUBIN (*Pro Hac Vice* admitted)
  jrubin@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
  cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
  akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| This Document Relates to: | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT PURSUANT TO ILLINOIS LAW** |
| *Hylin* v. *Uber Technologies, Inc., et al.*, 3:23-cv-01630-CRB | |
| *Jane Doe LS 75* v. *Uber Technologies, Inc., et al.*, 3:23-cv-03805-CRB | Judge:      Honorable Charles R. Breyer |
| | Date:       TBD |
| *Jane Doe LS 134* v. *Uber Technologies, Inc., et al.*, 3:23-cv-03811-CRB | Time:       TBD |
| | Courtroom:  6 – 17th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Jane Doe LS 250* v. *Uber Technologies, Inc., et al.*, 3:23-cv-03995-CRB

*R.M.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-04302-CRB

*J.C.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-04723-CRB

*Worzalla* v. *Uber Technologies, Inc., et al.*, 3:23-cv-04731-CRB

*Jane Roe CL 1, et al.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-04772-CRB

*C.S.* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05115-CRB

*Jane Doe LS 346* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05193-CRB

*Murphy* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05224-CRB

*Jane Doe LS 200* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05387-CRB

*Jane Doe LS 353* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05401-CRB

*Jane Doe LS 311* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05406-CRB

*Sullivan* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05418-CRB

*Jane Doe LS 103* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05442-CRB

*Harris* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05526-CRB

*Jane Roes CL 4 through 6* v. *Uber Technologies, Inc., et al.*, 3:23-cv-05647-CRB

1   *J.B.* v. *Uber Technologies, Inc., et al.*,
    3:23-cv-05876-CRB
2
    *L.M.* v. *Uber Technologies, Inc., et al.*,
3   3:23-cv-05928-CRB

4   *Craig* v. *Uber Technologies, Inc., et al.*,
    3:23-cv-05932-CRB
5
6   *Cazares* v. *Uber Technologies, Inc., et al.*,
    3:23-cv-06190-CRB
7
8   *A.P.* v. *Uber Technologies, Inc., et al.*,
    3:23-cv-06357-CRB

9
    *T.H.* v. *Uber Technologies, Inc., et*
10  *al.*,  3:23-cv-06533-CRB

11  *C.O.* v. *Uber Technologies, Inc., et al.*,
    3:24-cv-00136-CRB
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## <u>TABLE OF CONTENTS</u>

BACKGROUND ........................................................................................................................... 2

ARGUMENT ............................................................................................................................... 2

I.      The Illinois Plaintiffs' Claims Are Governed by Illinois Law ........................................ 3

        A.      Illinois Conflict of Law Principles Mandate Application of Illinois Law .............. 3

        B.      California Conflict of Laws Principles Mandate Application of Illinois Law........ 4

        C.      Illinois Law Applies Under the Uber Terms of Use of 15 Illinois Plaintiffs.......... 5

II.     The Claim for Vicarious Liability Fails as a Matter of Law............................................ 6

        A.      The Alleged Assaults Are Outside the Scope of Any Alleged Employment ......... 6

        B.      Alleging Common Carrier Status Does Not Support Vicarious Liability .............. 8

        C.      Plaintiffs' Ratification Theory Fails ..................................................................... 8

        D.      CPUC § 5354 Does Not Create Vicarious Liability .............................................. 9

III.    Plaintiffs Fail to State a Claim for "Common Carrier's Non-Delegable Duty" ............... 10

IV.     Plaintiffs Fail to State a Claim for "Non-Delegable Duties"............................................ 10

V.      Plaintiffs' Fraud-Related Claims Should Be Dismissed.................................................. 12

        A.      The Complaint Fails to Plead Reliance.................................................................. 13

        B.      Plaintiffs Fail to Identify the Alleged False Statements with Specificity............. 14

        C.      The *McKnight* Class Action Settlement Bars Many Misrepresentation Claims... 15

                1.      The Complaint Tries to Evade the *McKnight* Settlement ......................... 15

                2.      The "Safe Rides Fee" Allegations Should Be Dismissed or Stricken ...... 17

        D.      The Complaint Alleges Representations That Are Not Actionable....................... 18

        E.      The Complaint Fails to Plead Fraudulent Omission or Concealment................... 19

VI.     The Negligent Infliction of Emotional Distress Claim Is Duplicative ............................ 22

VII.    Plaintiffs Fail To Allege Negligent Entrustment ........................................................... 22

VIII.   The Complaint's Strict Product Liability Claims Fail As a Matter of Law..................... 22

IX.     Plaintiffs Fail to State A Claim for Relief Under the UCL.............................................. 26

        A.      Plaintiffs Cannot Assert UCL Claims for Incidents That Occurred in Illinois..... 26

        B.      Plaintiffs Fail to State a UCL Claim on the Merits.............................................. 26

X.      Plaintiffs Are Not Entitled to Injunctive Relief ............................................................ 27

XI.     Plaintiffs' Request for Punitive Damages Should Be Dismissed .................................... 29

XII.    Amendment Would Be Futile ......................................................................................... 30

CONCLUSION............................................................................................................................ 30

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO ILLINOIS LAW          Case No. 3:23-md-03084-CRB

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                    **Page(s)**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
  2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ........................................................27

*Al Maha Trading & Contracting Holding Co.* v. *W.S. Darley & Co.*,
  936 F. Supp. 2d 933 (N.D. Ill. 2013) ...................................................................21

*Aleman* v. *McDonald's Corp.*,
  2021 WL 3418857 (N.D. Ill. Aug. 5, 2021) .............................................................6

*Applied Hydrogel Tech., Inc.* v. *Raymedica, Inc.*,
  2007 WL 951297 (S.D. Cal. Mar. 2, 2007) ..............................................................5

*Arruda* v. *Rasier, LLC*,
  No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024)................................23

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009)...............................................................................................2

*Avery* v. *State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005)....................................................................................18

*Babcock* v. *Nudelman*,
  12 N.E.2d 635 (Ill. 1937) ......................................................................................24

*Bates* v. *Doria*,
  502 N.E.2d 454 (Ill. App. Ct. 1986) ....................................................................6, 7

*Baxter-Aremtrout* v. *Lyft, Inc.*,
  No. 50-20210CA-013917 (Fla. Cir. Ct., Aug. 29, 2022)........................................23

*Behuet & Hunt* v. *Uber Technologies, Inc.*,
  2022 WL 20318684 (Cal. Super. Ct. July 13, 2022) ..............................................23

*Bixby's Food Sys., Inc.* v. *McKay*,
  193 F. Supp. 2d 1053 (N.D. Ill. 2002) ..................................................................13

*Brandt* v. *Bos. Sci. Corp.*,
  792 N.E.2d 296 (Ill. 2003)................................................................................22, 24

*Browne* v. *Lyft, Inc.*,
  219 A.D.3d 445 (2d Dep't 2023) .............................................................................7

*Budzyn* v. *KFC Corp.*,
  2022 WL 952746 (N.D. Ill. Mar. 30, 2022)..............................................................6

*Burmakova* v. *Uber Techs, Inc.*,
  No. 20STCV33948 (Super. Ct. L.A. County Oct. 22, 2021)....................................7

*C.T.* v. *Tetteh*,
  No. MRS-L-1723-23 (N.J. Super. Ct., Feb. 8, 2024)................................................7

- ii -

*Cansino* v. *Bank of Am.*,
    224 Cal. App. 4th 1462 (2014) ......................................................................18

*Castro* v. *Budget Rent-A-Car Sys., Inc.*,
    154 Cal. App. 4th 1162 (2007) ........................................................................6

*Cel-Tech Comms., Inc.* v. *L.A. Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999) ...............................................................................27

*Chen* v. *L.A. Truck Ctrs., LLC*,
    42 Cal. App. 5th 488 (2019) ............................................................................4

*City of Los Angeles* v. *Lyons*,
    461 U.S. 95 (1983)..........................................................................................28

*Cnota* v. *Palatine Area Football Ass'n*,
    592 N.E.2d 196 (Ill. App. Ct. 1992) ...............................................................9

*Cooper* v. *Tokyo Elec. Power Co. Holding, Inc.*,
    960 F.3d 549 (9th Cir. 2020) ...........................................................................4

*Coughlin* v. *Uber Techs., Inc.*,
    No. 03083, at 1 (Pa. Ct. C.P. Philadelphia Cnty, June 12, 2020) ...................7

*Cove Mgmt.* v. *AFLAC, Inc.*,
    986 N.E.2d 1206 (Ill. App. Ct. 2013) .............................................................8

*Crittenden* v. *Cook Cnty. Comm'n on Human Rights*,
    973 N.E.2d 408 (Ill. App. Ct. 2012) .............................................................29

*Cruz Lopez* v. *Uber Techs., Inc.*,
    No. 21CV376012 (Cal. Super. Ct. Dec. 7, 2021) .........................................23

*D'Attomo* v. *Baumbeck*,
    36 N.E.3d 892 (Ill. App. Ct. 2015) ..........................................................20, 21

*Davidson* v. *Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) .........................................................................29

*Deloney* v. *Bd. of Educ. of Thornton Twp.*,
    666 N.E.2d 792 (Ill. App. Ct. 1996) ...............................................................6

*DOD Techs.* v. *Mesirow Ins. Servs., Inc.*,
    887 N.E.2d 1 (Ill. App. Ct. 2008) .................................................................21

*Doe #2* v. *Legion of Christ, Inc.*,
    588 F. Supp. 3d 240 (D. Conn. 2022)..............................................................4

*Doe* v. *CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020) .......................................................................27

*Doe* v. *Hudgins*,
    1997 WL 337247 (N.D. Ill. June 17, 1997)....................................................6

*Doe ex rel. Doe* v. *Lawrence Hall Youth Servs.*,
    966 N.E.2d 52 (Ill. App. Ct. 2012) ...........................................................6, 10

- iii -

*Doe* v. *Lyft*,
   176 N.E.3d 863 (Ill. App. Ct. 2020) ...............................................................7, 8, 11

*Doe* v. *Match.com*,
   789 F. Supp. 2d 1197, 1198 (C.D. Cal. 2011) ...............................................28, 29

*Doe* v. *Uber Techs., Inc.*,
   2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) .......................................................7

*Dopson* v. *Corcoran*,
   2020 WL 3268513 (N.D. Ill. June 17, 2020) .......................................................29

*Ehret* v. *Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) .................................................................26

*In re Est. of Feinberg*,
   6 N.E.3d 310 (Ill. App. Ct. 2014) ........................................................................30

*Estate of Stella Yeh* v. *Uber Techs., Inc.*,
   CGC-20-584408 (Cal. Super. Ct. Aug. 6, 2021) ................................................14

*Fantasy, Inc.* v. *Foberty*,
   984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)......17

*Fed. Deposit Ins. Corp. for Valley Bank* v. *Crowe Horwath LLP*,
   2018 WL 1508485 (N.D. Ill. Mar. 27, 2018)......................................................22

*Flores* v. *Uber Techs., Inc.*,
   No. 19STCV24988 (Cal. Super. Ct., Mar. 22, 2022) ..........................................23

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*,
   2001 WL 1266317 (D.N.J. Sept. 30, 1997) ........................................................13

*Frenzel* v. *AliphCom*,
   76 F. Supp. 3d 999 (N.D. Cal. 2014) ...................................................................27

*Gambling* v. *Cornish*,
   426 F. Supp. 1153 (N.D. Ill. 1977) ........................................................................6

*Garland* v. *Sybaris Clubs Int'l, Inc.*,
   141 N.E.3d 730 (Ill. Ct. App. 2019) ...................................................................22

*Gensler* v. *Strabala*,
   764 F.3d 735 (7th Cir. 2014) ...............................................................................18

*Good* v. *Zenith Elecs. Corp.*,
   751 F. Supp. 1320 (N.D. Ill. 1990) .....................................................................13

*Gutterman* v. *Target Corp.*,
   242 F. Supp. 3d 695 (N.D. Ill. 2017) ..................................................................25

*Hoover* v. *Univ. of Chi. Hosps.*,
   366 N.E.2d 925 (Ill. Ct. 1977) ..............................................................................6

*Horne* v. *Elec. Eel Mfg. Co.*,
   987 F.3d 704 (7th Cir. 2021) ...............................................................................25

- iv -

*Howell* v. *Jofe*,
  483 F. Supp. 2d 659 (N.D.Ill.2007) ...................................................................22

*Huynh* v. *Quora Inc.*,
  508 F. Supp. 3d 633 (N.D. Cal. 2020) ...............................................................28

*Ice Cream Distribs. of Evansville, LLC* v. *Dreyer's Grand Ice Cream, Inc.*,
  2010 WL 3619884 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th
  Cir. 2012) .............................................................................................................26

*Jackson* v. *Airbnb, Inc.*,
  639 F. Supp. 3d 994 (C.D. Cal. 2022) ...............................................................23

*Jane Doe No. 1* v. *Uber Techs., Inc.*,
  2020 Cal. Super. LEXIS 73095 (Cal. Super. Ct. Nov. 30, 2020) .........................23

*Karlen* v. *Uber Techs., Inc.*,
  2022 U.S. Dist. LEXIS 15320 (D. Conn. Aug. 27, 2022) .....................................7

*Kasel* v. *Remington Arms Co.*,
  24 Cal. App. 3d 711 (1972) ...........................................................................4, 5

*Kelsay* v. *Motorola, Inc.*,
  384 N.E.2d 353 (Ill. 1978) ..................................................................................29

*Kopley Grp. V., L.P.* v. *Sheridan Edgewater Props., Ltd.*,
  876 N.E.2d 218 (Ill. App. Ct. 2007) ...................................................................12

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
  829 F.2d 1171 (D.C. Cir. 1987) ......................................................................3, 28

*Krilich* v. *Am. Nat'l Bank & Tr. Co. of Chi.*,
  778 N.E.2d 1153 (Ill. App. Ct. 2002) .................................................................12

*Kurns* v. *R.R. Friction Prods. Corp.*,
  565 U.S. 625 (2012) ............................................................................................24

*Lesnik* v. *Eisenmann SE*,
  374 F. Supp. 3d 923 (N.D. Cal. 2019) ...............................................................15

*Loitz* v. *Remington Arms Co.*,
  563 N.E.2d 397 (Ill. 1990) ..................................................................................30

*Lowrie* v. *City of Evanston*,
  365 N.E.2d 923 (Ill. App. Ct. 1977) ...................................................................23

*Luna, Avelardo* v. *Uber Techs., Inc.*,
  No. 22STCV10806 (Cal. Super. Ct., Sept. 27, 2022) ..........................................23

*Lydon* v. *Eagle Food Ctrs., Inc.*,
  696 N.E.2d 1211 (Ill. App. Ct. 1998) ...................................................................8

*In re Marriage of Jackson*,
  534 N.E.2d 687 (Ill. App. Ct. 1989) .....................................................................9

*Martinez* v. *Uber Techs., Inc.*,
  No. 23STCV09795 (Cal. Super. Ct., Oct. 3, 2023) ...............................................23

*Mateyka* v. *Schroeder*,
  504 N.E.2d 1289 (Ill. 1987) .................................................................................8

*McCann* v. *Foster Wheeler LLC*,
  48 Cal. 4th 68 (2010) ...........................................................................................5

*McKnight* v. *Uber Techs., Inc.*,
  14-cv-05615, ECF No. 1 .....................................................................................20

*McKnight* v. *Uber Techs., Inc.*,
  14-cv-05615-JST (N.D. Cal.) .................................................................................1

*McMahan* v. *Deutsche Bank Ag*,
  938 F. Supp. 2d 795 (N.D. Ill. 2013) ..................................................................19

*Mendez* v. *Selene Fin. LP*,
  2017 WL 1535085 (C.D. Cal. Apr. 27, 2017) .....................................................27

*Mendiondo* v. *Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ..............................................................................2

*FDIC* v. *Miller*,
  781 F. Supp. 1271 (N.D. Ill. 1991) .....................................................................18

*Minzer* v. *Barga*,
  2020 WL 2621710 (N.Y. Super. Ct. May 22, 2020) ...........................................14

*Morris* v. *AGFA Corp.*,
  144 Cal. App. 4th 1452 (2006) .............................................................................4

*Morse* v. *Abbott Labs.*,
  756 F. Supp. 1108 (N.D. Ill. 1991) .....................................................................13

*Mullen* v. *GLV, Inc.*,
  488 F. Supp. 3d 695 (N.D. Ill. 2020) .............................................................20, 21

*Murphy* v. *Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004) ..............................................................................3

*Murray* v. *Uber Techs., Inc.*,
  486 F. Supp. 3d 468 (D. Mass. Sept. 11, 2020) ...................................................7

*Norman* v. *Uber Techs., Inc.*,
  No. 21STCV35632 (Cal. Super. Ct. Mar. 8, 2022) .............................................23

*Norwest Mortg., Inc.* v. *Superior Ct.*,
  72 Cal. App. 4th 214 (1999) ...............................................................................26

*In re Nucorp Energy Sec. Litig.*,
  772 F.2d 1486 (9th Cir. 1985) ..............................................................................3

*Oakview New Lenox Sch. Dist. No. 122* v. *Ford Motor Co.*,
  378 N.E.2d 544 (Ill. App. Ct. 1978) ...................................................................30

- vi -

*Padilla* v. *d'Avis*
  580 F. Supp. 403 (N.D. Ill. 1984) ............................................................................................6

*Papasan* v. *Allain*,
  478 U.S. 265 (1986) ..............................................................................................................3

*Payne* v. *Off. of the Comm'r of Baseball*,
  705 F. App'x 654 (9th Cir. 2017) ..........................................................................................28

*People ex rel. Peters* v. *Murphy-Knight*,
  618 N.E.2d 459 (Ill. App. Ct. 1993) .................................................................................13, 18

*Phillips* v. *DePaul Univ.*,
  19 N.E.3d 1019 (Ill. App. Ct. 2014) ......................................................................................19

*Pickens* v. *Mercedes-Benz USA, LLC*,
  2021 WL 5050289 (N.D. Ill. Nov. 1, 2021) ............................................................................19

*Pippen* v. *Pedersen & Houpt*,
  986 N.E.2d 697 (Ill. Ct. App. 2013) ......................................................................................22

*Polanco* v. *Lyft, Inc.*,
  2021 Cal. Super. LEXIS 60679 (Cal. Super. Ct. May 13, 2021)...........................................23

*Polivka* v. *Worth Dairy, Inc.*,
  328 N.E.2d 350 (Ill. App. Ct. 1974) ......................................................................................18

*Powell* v. *City of Chicago*,
  197 N.E.3d 219 (Ill. App. Ct. 2021) ........................................................................................6

*Pyne* v. *Witmer*,
  543 N.E.2d 1304 (Ill. 1989) ....................................................................................................6

*R.J. Mgmt. Co.* v. *SRLB Dev. Corp.*,
  806 N.E.2d 1074 (Ill. App. Ct. 2004) ....................................................................................21

*Ramos* v. *Uber Techs., Inc.*,
  No. 22STCV33007 (Cal. Super. Ct. June 1, 2023)................................................................23

*Ramsay* v. *Frontier, Inc.*,
  2020 WL 4557545, at *3, 16 (D. Colo. July 30, 2020), *report and
  recommendation adopted*, 2021 WL 651021 (D. Colo. Feb. 19, 2021) ................................29

*Randi F.* v. *High Ridge YMCA*,
  524 N.E.2d 966 (Ill. App. Ct. 1988) ........................................................................................6

*Reith* v. *Gen. Tel. Co. of Ill.*,
  317 N.E.2d 369 (Ill. App. Ct. 1974) ......................................................................................10

*Rodriguez* v. *FCA US LLC*,
  2023 WL 3150075 (C.D. Cal. Mar. 21, 2023)...................................................................27, 28

*Rodriguez* v. *Uber Techs., Inc.*,
  No. 2020-CA-1823 (Aug. 9, 2021) (Fla. 9th J. D. Cir. Ct. Osceola County
  Aug. 9, 2021) .........................................................................................................................14

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO ILLINOIS LAW          Case No. 3:23-md-03084-CRB

*Shannon* v. *Uber Techs., Inc.*,
   No. 21STCV42029 (Cal. Super. Ct., Apr. 15, 2022) ..............................................................23

*Shroyer* v. *New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ........................................................................................27

*Simulados Software, Ltd.* v. *Photon Infotech Priv., Ltd.*,
   40 F. Supp. 3d 1191 (N.D. Cal. 2014) ..............................................................................5

*Sinclair* v. *Sullivan Chevrolet Co.*,
   202 N.E.2d 516 (Ill. 1964) ..............................................................................................18

*Smith v. Boehringer Ingelheim Pharms., Inc.*,
   886 F. Supp. 2d 911 (S.D. Ill. 2012) ..............................................................................22

*Smith* v. *LG Elecs. U.S.A., Inc.*,
   2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ..................................................................19

*Sonner* v. *Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..........................................................................................27

*Squires-Cannon* v. *Forest Preserve Dist. of Cook Cnty.*,
   897 F.3d 797 (7th Cir. 2018) ..........................................................................................21

*Steckman* v. *Hart Brewing, Inc.*,
   143 F. 3d 1293 (9th Cir. 1998) ........................................................................................30

*Stern* v. *Ritz Carlton Chicago*,
   299 Ill. App. 3d 674 (Ill. App. Ct. 1998) ..........................................................................6

*Sullivan* v. *Oracle Corp.*,
   51 Cal. 4th 1191 (2011) ..................................................................................................26

*Swader* v. *Golden Rule Ins. Co.*,
   561 N.E.2d 99 (Ill. App. Ct. 1990) ..................................................................................8

*Swartz* v. *KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ..........................................................................................12

*Teran* v. *Coloplast Corp.*,
   633 F. Supp. 3d 1102 (N.D. Ill. 2022) ............................................................................24

*Tidenberg* v. *Bidz.com, Inc.*,
   2009 WL 605249 (C.D. Cal. Mar. 4, 2009) ....................................................................26

*Toral* v. *Uber Techs., Inc.*,
   No. 20STCV02030 (Cal. Super. Ct. Apr. 14, 2021) ........................................................23

*Toulon* v. *Cont. Casualty Co.*,
   877 F.3d 725 (7th Cir. 2017) ..........................................................................................18

*Townsend* v. *Sears, Roebuck & Co.*,
   879 N.E.2d 893 (Ill. 2007) ................................................................................................3

*In Re: Uber Rideshare Cases*,
   CJC-21-005188 (Super. Ct. S.F. Cnty. June 22, 2023)..........................................7, 13, 14, 24

*In re Uber Rideshare Cases*,
    No. CJC-21-005188 (Super. Ct. S.F. Cnty. Jan. 23, 2023)......................................................5

*Vess* v. *Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...............................................................12, 14

*In re Volkswagen Clean Diesel*,
    349 F. Supp. 3d 881, 914 (N.D. Cal. 2018) ...........................................15

*Webb* v. *Jewel Companies, Inc.*,
    485 N.E.2d 409 (Ill. App. Ct. 1985) .......................................................6

*Wigod* v. *Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) ..................................................................21

*Windy City Metal Fabricators & Supply, Inc.* v. *CIT Tech. Fin. Servs., Inc.*,
    536 F.3d 663 (7th Cir. 2008) ...........................................................12, 14

*XYZ Two Way Radio Serv., Inc.* v. *Uber Techs., Inc.*,
    214 F. Supp. 3d 179 (E.D.N.Y. 2016) ...................................................19

*Ziencik* v. *Snap, Inc.*,
    2023 WL 2638314 (C.D. Cal. Feb. 3, 2023).........................................23

**Statutes**

625 Ill. Comp. Stat. 57/15(a)(2)...................................................................4

625 Ill. Comp. Stat. 57/15(b) .......................................................................4

625 Ill. Comp. Stat. 57/25(a)–(c) .................................................................4

625 Ill. Comp. Stat. Ann. 57 *et seq.* ............................................................9

625 Ill. Comp. Stat. Ann. 57/25(e) ................................................8, 10, 11

625 Ill. Comp. Stat. Ann. 57/5 ...................................................................23

Cal. Pub. Util. Code § 5354 ..........................................................................9

Cal. Pub. Util. Code § 5431(c)......................................................................9

Cal. Bus. & Prof. Code § 17200 ........................................................ *passim*

2023 Ill. Laws, Pub. Act 103-0527.............................................................10

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)..................................................................................2

Fed. R. Civ. P. 12(f)....................................................................................17

- ix -

Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005)..........................................................23

*Info. Tech. Law*, § 15.08 n.105 (3d ed. 2024 Supp.)........................................................23

Raymond T. Nimmer, Law of Comput. Tech. § 12:41 (Nov. 2023 Update)................................23

Restatement (Second) of Conflict of Laws § 145(2) .......................................................3

Restatement (Second) of Agency § 231 cmt. A...............................................................10

Restatement (Second) of Torts § 314A..........................................................................11

Restatement (Third) of Torts: Prod. Liab. § 19 (Am. L. Inst. 1998) ............................................23

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO ILLINOIS LAW        Case No. 3:23-md-03084-CRB

**NOTICE OF MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will, and hereby do, move this Court for an order dismissing portions of the Complaint brought by Plaintiffs in this coordinated action whose alleged incident occurred in Illinois.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Robert Atkins, the concurrently filed Declaration of Peter Sauerwein, the concurrently filed Proposed Order, all evidence, pleadings, and papers filed herewith, the entire file in this coordinated action, any Reply that may be filed in support of this Motion, and any other arguments or evidence that may be presented to the Court in support of this Motion.

DATED:  April 1, 2024

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP


By: */s/ Draft*_____
    ROBERT ATKINS
    RANDALL S. LUSKEY
    JACQUELINE P. RUBIN
    JESSICA E. PHILLIPS
    KYLE N. SMITH
    CAITLIN E. GRUSAUSKAS
    ANDREA M. KELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiffs allege that each of them was assaulted or harassed by a driver and contend that Uber is responsible for having not implemented different or additional safety measures.  If the drivers behaved as alleged, that is reprehensible.  But that is not sufficient to sustain the claims alleged in the  Master Long-Form Complaint (the "Complaint").  *See* Declaration of Robert Atkins ("Atkins Decl.") Ex. 5.  This Motion is directed to claims in the Complaint asserted by Plaintiffs whose alleged incidents occurred in Illinois, and thus are governed by Illinois law.   Uber respectfully requests that this Court dismiss the claims addressed below, and do so with prejudice given the legal infirmity of those causes of action:

*Vicarious Liability for Drivers' Torts (Cause of Action G).*  Uber is not vicariously liable for sexual assaults allegedly committed by independent drivers because such conduct is outside the scope of agency under Illinois law.

*"Common Carrier's Non-Delegable Duty to Provide Safe Transportation" (Cause of Action E).*  By statute, transportation network companies ("TNCs") like Uber cannot be liable under a common carrier theory for incidents prior to January 1, 2024 when Illinois law expressly provided that Transportation Network Companies ("TNCs") like Uber are not common carriers.

*"Other Non-Delegable Duties to Provide Safe Transportation" (Cause of Action F).*  Plaintiffs do not allege that Uber "delegated" any of its own purported duties to independent drivers, and in any event, sexual assault is beyond the scope of any duty authorized by Uber.

*Fraud and Misrepresentation (Cause of Action C).*  Plaintiffs collectively complain about Uber's advertising, but misrepresentation claims cannot be asserted generically as a group.  The Complaint therefore fails to meet the heightened pleading standard of Rule 9(b).  In addition, many of Plaintiffs' misrepresentation claims cannot have survived the class action settlement in *McKnight* v. *Uber Techs., Inc.*, 14-cv-05615-JST (N.D. Cal.), because Plaintiffs either released their claims or, if they were not part of the class, could not have relied on the "Safe Ride" representations at issue in that dispute.

*Negligent Infliction of Emotional Distress (Cause of Action D).*  This claim is duplicative of the negligence claims, since both are based on the same operative facts and injury.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO ILLINOIS LAW          Case No. 3:23-md-03084-CRB

*Negligent Entrustment (Part of Cause of Action B).*  Negligent entrustment applies only to chattel, not, as Plaintiffs allege, Uber's App or Uber trademarks.

*Strict Products Liability (Cause of Action H).*  The Uber App is not a "product" and, therefore, is not subject to product liability claims.   Plaintiffs also fail to allege any defect in the Uber App or any causal connection between their alleged injuries and the design of the software.

*Unfair Competition Law (Cause of Action I).*   California's presumption against extraterritoriality mandates dismissal of the Unfair Competition Claim ("UCL") claim.  Plaintiffs also fail to adequately allege unlawful, fraudulent, or unfair business practice in violation of the UCL.

*Injunctive Relief.*  Plaintiffs are not entitled to seek injunctive relief because the Complaint fails to allege that they lack an adequate remedy at law.  The Complaint also fails to allege facts establishing that any individual Plaintiff has standing to seek injunctive relief.

*Punitive Damages.*  Plaintiffs fail to sufficiently plead that Uber acted with fraud, malice, or gross negligence warranting imposition of punitive damages.

**BACKGROUND**

On February 15, 2024, Plaintiffs filed a Master Long-Form Complaint alleging, en masse, that after using the Uber App to arrange for rides, each Plaintiff was sexually assaulted by an independent driver.  Plaintiffs seek compensatory and punitive damages and injunctive relief based on the following claims against Uber: (1) negligence; (2) fraud and misrepresentation; (3) NIED; (4) "common carrier's non-delegable duty to provide safe transportation"; (5) other non-delegable duties to provide safe transportation; (6) vicarious liability for drivers' torts; (7) strict product liability; and (8) UCL violations.

**ARGUMENT**

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Dismissal is appropriate where the allegations lack "a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo* v. *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104

(9th Cir. 2008).  In deciding a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986).  Here, based on both Illinois law and the insufficiency of the facts alleged, this Court should dismiss Plaintiffs' claims for: (1) vicarious liability, (2) "common carrier's non-delegable duty to provide safe transportation," (3) "other non-delegable duties to provide safe transportation," (4) fraud and misrepresentation, (5) negligent infliction of emotional distress, (6) negligent entrustment, (7) strict product liability, (8) UCL violations.  It should also dismiss Plaintiffs' requests for injunctive relief and punitive damages.

## I.   THE ILLINOIS PLAINTIFFS' CLAIMS ARE GOVERNED BY ILLINOIS LAW[1]

As a court sitting in diversity jurisdiction, this Court must decide whether to apply the law of the state of the incident (Illinois) or the law of the forum state (California).  Under the conflicts of law principles of both Illinois and California, the proper choice of law for all of the 26 Illinois Plaintiffs' claims is the law of the state of the incident: Illinois.[2]

### A.   Illinois Conflict of Law Principles Mandate Application of Illinois Law

Under Illinois conflicts of law principles, choice of law is determined based on the "most significant relationship" test.  *Townsend* v. *Sears, Roebuck & Co.*, 879 N.E.2d 893, 904 (Ill. 2007).  As applicable here, courts consider the factual "contacts" between the claim and the state whose law is sought to be applied, including the places where: (a) the injury occurred, (b) the conduct causing the injury occurred, (c) the parties are located, and (d) the relationship, if any, between the parties is centered.  *See* Restatement (Second) of Conflict of Laws § 145(2).

As to the first factor, "subject only to rare exceptions, the local law of the state where the conduct and injury occurred will be applied" because "a state has an obvious interest in regulating

---

[1] To the extent this Court must decide questions of federal law, the Ninth Circuit governs. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987).

[2] Illinois conflicts of law principles govern in: (i) the 5 actions that were originally filed in Illinois federal courts; and (ii) the 12 actions that were originally filed in California federal courts but which involve a contractual forum selection clause in the Terms of Use specifying the state of the incident as the proper forum.  *See In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir. 1985); *Murphy* v. *Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004); Atkins Decl. Ex. 5.  California conflicts of law principles govern in the remaining 9 actions that were originally filed in California where the Plaintiff did *not* assent to the Uber's Terms of Use's forum selection clause. Atkins Decl. Ex. 5.

the conduct of persons within its territory and in providing redress for injuries that occurred there." *See id.* § 145, cmt. D. "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship . . . ." *Id.* § 146. Here, these factors point to application of Illinois law. The alleged injuries of the Illinois Plaintiffs indisputably occurred in Illinois; the driver's conduct causing those injuries took place in Illinois; the Plaintiffs reside in Illinois; and the connection between each Plaintiff and Uber is centered in Illinois because each Plaintiff claims to have used the Uber App to request a ride in Illinois and Uber operated in Illinois pursuant to Illinois law. *See Doe #2* v. *Legion of Christ, Inc.*, 588 F. Supp. 3d 240, 245 (D. Conn. 2022) (under significant relationship test, parties' relationship was centered in state where alleged sexual assault occurred).

**B.**    **California Conflict of Laws Principles Mandate Application of Illinois Law**

Illinois law also applies under California's "governmental interest test," which provides that if the laws of the competing states differ, the court "must determine what interest, if any the competing jurisdictions have in their application of their respective laws." *Cooper* v. *Tokyo Elec. Power Co. Holding, Inc.*, 960 F.3d 549, 559 (9th Cir. 2020). If more than one jurisdiction has such an interest, the court then must apply "the law of the state whose interest would be the more impaired if its law were not applied." *Id.*

A state generally has legitimate interests in having its laws applied in cases concerning incidents that occurred in that jurisdiction. *Id.* at 560. Here, Illinois' extensive regulation of the TNC industry, including with respect to driver criteria and safety standards, demonstrates a clear interest in the operations of TNCs like Uber within the state's borders. *See, e.g.*, 625 Ill. Comp. Stat. 57/15(a)(2) (re: TNC background checks); 625 Ill. Comp. Stat. 57/15(b) (re: TNC driver eligibility criteria); 625 Ill. Comp. Stat. 57/25(a)–(c) (regulating TNC driver substance abuse). California, by contrast, has little legitimate interest in applying its laws to cases involving foreign residents and incidents outside of its borders, *Morris* v. *AGFA Corp.*, 144 Cal. App. 4th 1452, 1467 (2006), or in compensating non-resident plaintiffs for related injuries, *see Chen* v. *L.A. Truck Ctrs., LLC*, 42 Cal. App. 5th 488, 498 (2019); *Kasel* v. *Remington Arms Co.*, 24 Cal. App. 3d 711,

734 (1972).

Even if this Court were to find that California had some "legitimate interest" in the application of its laws to an injury to a non-resident outside California, Illinois law would still apply where the injured plaintiff does not reside in California. "California courts have tended to apply the law of the place of the injured's domicile, finding that the state has the greatest interest in compensating its domiciliaries." *Kasel*, 24 Cal. App. 3d at 734.[3]

## C.   Illinois Law Applies Under the Uber Terms of Use of 15 Illinois Plaintiffs

Illinois law clearly applies to the 15 Illinois Plaintiffs who agreed to Uber's Terms of Use in effect in January 2021 or later. Declaration of Peter Sauerwein ("Sauerwein Decl.") ¶¶ 5, 9, Ex. A. Since at least 2021 the Terms of Use have specified that:

> Any dispute, claim, or controversy arising out of or relating to incidents . . . resulting in personal injury (including but not limited to sexual assault or harassment claims) . . . **shall be governed by and construed in accordance with the laws of the state in which the incident . . . occurred**.

Sauerwein Decl. Ex. C (emphasis added).

Such clauses are enforced as written where "(1) [] the chosen state has a substantial relationship to the parties or their transaction, or (2) [where] there is any other reasonable basis for the parties' choice of law." *Simulados Software, Ltd.* v. *Photon Infotech Priv., Ltd.*, 40 F. Supp. 3d 1191, 1197 (N.D. Cal. 2014) (quotations omitted). The only exception is when the chosen law is "so offensive to California public policy as to be prejudicial to recognized standards of morality and to the general interests of the citizens.'" *Applied Hydrogel Tech., Inc.* v. *Raymedica, Inc.*, 2007 WL 951297, at *2 (S.D. Cal. Mar. 2, 2007) (quoting *Bassidji v. Goe*, 413 F.3d 928, 933 (9th Cir. 2005)). That is not the case here. Moreover, any interest California may have in applying its laws is reduced where the alleged injury occurred outside of California. *See McCann* v. *Foster Wheeler LLC*, 48 Cal. 4th 68, 99-102 (2010) (applying Oklahoma law in action against New York

---

[3] That Uber maintains one of its headquarters in California does not create an interest by the state in cases involving alleged tortious conduct by non-resident independent drivers against non-resident riders. *Cf.* Order on Defendants' Motions to Stay or Dismiss Based on *Forum Non Conveniens*, *In re Uber Rideshare Cases*, No. CJC-21-005188 at 10 & n.11 (Super. Ct. S.F. Cnty. Jan. 23, 2023).

defendant by California resident exposed to asbestos in Oklahoma); *see also Castro* v. *Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1182 (2007).

## II.   THE CLAIM FOR VICARIOUS LIABILITY FAILS AS A MATTER OF LAW

### A.   The Alleged Assaults Are Outside the Scope of Any Alleged Employment

Plaintiffs' vicarious liability claims must be dismissed because Uber cannot, as a matter of law, be held vicariously liable for sexual assaults and harassment allegedly committed by independent drivers.   *See* Compl. ¶¶ 418-44.   Even if there were an employer-employee relationship (or principal-agent) relationship between Uber and the independent drivers - - which there is not - - Illinois courts have long held that "sexual assault *by its very nature* precludes a conclusion that it occurred within the employee's scope of employment."   *See Doe ex rel. Doe* v. *Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 62 (Ill. App. Ct. 2012); *see also Deloney* v. *Bd. of Educ. of Thornton Twp.*, 666 N.E.2d 792, 797 (Ill. App. Ct. 1996); *Pyne* v. *Witmer*, 543 N.E.2d 1304, 1308-09 (Ill. 1989).   Illinois courts routinely dismiss vicarious liability claims that seek to hold an employer liable for sexual assault by an employee.[4]   The acts of sexual violence alleged in these cases are the very reason why the vicarious liability claims cannot be sustained as a matter of law: "the term 'scope of employment' excludes conduct by an employee that is solely for the benefit of the employee."   *Deloney*, 666 N.E.2d at 798.

Here, the vicarious liability claims fail because Plaintiffs cannot plead facts that would support the conclusion that the drivers' deplorable behavior (if proven) is within the scope of any alleged agency.   *Stern*, 702 N.E.2d at 196-99.   Illinois courts have held that even where a tortfeasor's employment brings the tortfeasor in contact with the victim - - like drivers and riders using the Uber App - - that is not enough to state a vicarious liability claim.   *Deloney*, 666 N.E.2d

---

[4] *See, e.g.*, *Gambling* v. *Cornish*, 426 F. Supp. 1153 (N.D. Ill. 1977); *Webb* v. *Jewel Companies, Inc.*, 485 N.E.2d 409 (Ill. App. Ct. 1985); *Randi F.* v. *High Ridge YMCA*, 524 N.E.2d 966 (Ill. App. Ct. 1988); *Bates* v. *Doria*, 502 N.E.2d 454 (Ill. App. Ct. 1986); *Doe* v. *Hudgins*, 1997 WL 337247 (N.D. Ill. June 17, 1997); *Stern* v. *Ritz Carlton Chicago*, 299 Ill. App. 3d 674 (Ill. App. Ct. 1998); *Doe ex rel. Doe* v. *Lawrence Hall Youth Servs.*, 966 N.E.2d 52 (Ill. App. Ct. 2012); *Hoover* v. *Univ. of Chi. Hosps.*, 366 N.E.2d 925 (Ill. Ct. 1977); *Padilla* v. *d'Avis* 580 F. Supp. 403 (N.D. Ill. 1984); *Powell* v. *City of Chicago*, 197 N.E.3d 219 (Ill. App. Ct. 2021); *Budzyn* v. *KFC Corp.*, 2022 WL 952746 (N.D. Ill. Mar. 30, 2022); *Aleman* v. *McDonald's Corp.*, 2021 WL 3418857 (N.D. Ill. Aug. 5, 2021); *see also Deloney*, 666 N.E.2d 782 (sexual assault of student was outside scope of truant officer's employment such that school board owed no statutory duty to defend him in civil rights action).

at 800 (even where truant officer's "employment provided the <u>opportunity for his misconduct</u>, by no stretch of the imagination could his actions be deemed an extension, albeit unlawful, of his functions").   Physical proximity and opportunity are not sufficient to plead a viable vicarious liability claim because those are not the measures of the scope of employment; the test is whether the sexual assault was part of the assailant's job responsibilities, or deviant behavior for "personal benefit." *Id.* 799-800.  "The fact that the employee has acted in an outrageous manner is evidence that he departed from the scope of employment and, instead, acted for purely personal reasons." *Bates*, 502 N.E.2d at 457.

The decision in  *Doe* v. *Lyft*, 176 N.E.3d 863 (Ill. App. Ct. 2020), is directly on point.  In *Doe*, an Illinois appellate court reiterated that under Illinois law, sexual assault "by its very nature" is outside the scope of employment.  *Id.* at 870.  Consistent with the *Lyft* court's decision, courts in numerous jurisdictions have dismissed similar vicarious liability claims against Uber and other TNCs.[5]   As a recent example, the California Superior Court overseeing the Judicial Council Coordination Proceedings ("JCCP") dismissed all claims for vicarious liability with prejudice on the basis that Uber "cannot be held vicariously liable for the alleged sexual assaults committed by its drivers because such conduct falls outside the scope of employment."  *In Re: Uber Rideshare Cases*, CJC-21-005188, at 4 (Super. Ct. S.F. Cnty. June 22, 2023) ("*JCCP Demurrer Order*"), Atkins Decl. Ex. 4.  In so doing, the court held that the plaintiffs failed to allege that the drivers were acting for purposes other than "personal gratification" or that their "sexual assaults were engendered by their alleged employment," as opposed to being motivated by the drivers' "close proximity to passengers[] in a confined environment."  *Id.* at 6.  The JCCP ruling conformed with other rulings across the nation.

---

[5] *See, e.g.*, *Burmakova* v. *Uber Techs, Inc.*, No. 20STCV33948 (Super. Ct. L.A. County Oct. 22, 2021); *Doe* v. *Uber Techs., Inc.*, 2019 WL 6251189, at *5 (N.D. Cal. Nov. 22, 2019); *Karlen* v. *Uber Techs., Inc.*, 2022 U.S. Dist. LEXIS 15320, at *11 (D. Conn. Aug. 27, 2022); *Murray* v. *Uber Techs., Inc.*, 486 F. Supp. 3d 468, 476 (D. Mass. Sept. 11, 2020); *C.T.* v. *Tetteh*, No. MRS-L-1723-23 (N.J. Super. Ct., Feb. 8, 2024); *Browne* v. *Lyft, Inc.*, 219 A.D.3d 445, 446-47 (2d Dep't 2023); *Coughlin* v. *Uber Techs.*, Inc., No. 03083, at 1 (Pa. Ct. C.P. Philadelphia Cnty, June 12, 2020).

### B.  Alleging Common Carrier Status Does Not Support Vicarious Liability

Plaintiffs argue that the "scope of employment" test does not apply to "common carriers." Compl. ¶ 425.  Even if that were the law (it is not), until January 1, 2024, Illinois law expressly provided that TNCs, like Uber, were "not common carriers, contract carriers or motor carriers, as defined by applicable State law, nor do they provide taxicab or for-hire vehicle service."  625 Ill. Comp. Stat. Ann. 57/25(e); *see Lyft*, 176 N.E.3d at 870 (holding that Section 25(e) precluded TNC from being held vicariously liable for sexual assault).  On August 11, 2023, Section 25(e), was amended to add: "This subsection (e) is inoperative on and after January 1, 2024."  625 Ill. Comp. Stat. Ann. 57/25(e)*.  Therefore, claims for vicarious liability based on incidents prior to January 1, 2024 are barred.  *See Lyft*, 176 N.E.3d at 870.

### C.  Plaintiffs' Ratification Theory Fails

Plaintiffs fail to plead facts that would establish that Uber is vicariously liable for the alleged misconduct of the accused drivers under a theory of ratification.  Compl. ¶¶ 436-39.  "Ratification occurs upon the express or implied adoption of the acts of another by one for whom the other assumes to be acting, even without authority." *Mateyka* v. *Schroeder*, 504 N.E.2d 1289, 1297 (Ill. 1987).

Plaintiffs allege that Uber ratified the independent drivers' alleged assaults because it was, as a general matter, "aware of the scope and scale of sexual assaults."  Compl. ¶ 437.  That misapprehends what ratification is.  Ratification requires that the principal has "full knowledge of the act," and  "manifest[ed] an intent to abide and be bound" by it.  *Cove Mgmt.* v. *AFLAC, Inc.*, 986 N.E.2d 1206, 1215 (Ill. App. Ct. 2013); *Swader* v. *Golden Rule Ins. Co*., 561 N.E.2d 99, 103-04 (Ill. App. Ct. 1990) (stating that ratification will be found if "the principal has full knowledge of the facts and has the choice of either accepting or rejecting the benefits of  the transaction"); *see also Lydon* v. *Eagle Food Ctrs., Inc.*, 696 N.E.2d 1211, 1216 (Ill. App. Ct. 1998) ("Before ratification will be found, the principal must have full knowledge of the facts and the choice to either accept or reject the benefits of the transaction.").

Moreover, the Complaint does not allege that Uber adopted or confirmed what any specific driver allegedly did to any specific Plaintiff.  Instead, Plaintiffs allege that Uber "failed to respond

- 8 -

adequately to reports of sexual misconduct, failed to adequately investigate reports of sexual misconduct, failed to report sexual misconduct to law enforcement, and reinstated drivers after complaints of misconduct."  Compl. ¶¶ 438.  But ratification requires factual allegations showing that the defendant adopted or affirmed the specific conduct of a specific individual.  *See Cnota* v. *Palatine Area Football Ass'n*, 592 N.E.2d 196, 203 (Ill. App. Ct. 1992).  Plaintiffs here are attempting to base their theory of ratification on what is essentially a negligence claim - - that Uber failed to take the appropriate actions to "redress the issue" of alleged sexual assault by drivers.  Compl. ¶ 437.  But that is not enough to plead that Uber <u>adopted</u> any driver's conduct. *See id.*

In addition, "[a]t the heart of the doctrine of ratification is the concept that the person ratifying obtains a benefit, and that the benefit is obtained through the actions of a person that is acting [o]n his behalf."  *In re Marriage of Jackson*, 534 N.E.2d 687, 689 (Ill. App. Ct. 1989).  Plaintiffs do not - - and cannot - - allege that any of the driver's alleged acts of sexual assault were done in Uber's interest.  Assaults by drivers are plainly <u>*contrary*</u> to Uber's interest.

### D.    <u>CPUC § 5354 Does Not Create Vicarious Liability</u>

Plaintiffs allege that Uber is vicariously liable for conduct by independent drivers by virtue of a California Public Utilities Commission regulation that provides:

> In construing and enforcing the provisions of this chapter ***relating to the prescribed privileges and obligations of the holder of a permit or certificate issued hereunder***, the act, omission, or failure of any officer, agent, or employee, or person offering to afford the authorized service with the approval or consent of the permit or certificate holder, is the act, omission, or failure of the permit or certificate holder.

Cal. Pub. Util. Code ("CPUC") § 5354 (emphasis added); *see* Compl. ¶¶ 440-44.  But section 5354 does not impose vicarious liability on Uber for incidents that occurred in Illinois because it applies only to TNCs "<u>operating in California</u>."  CPUC § 5431(c) (emphasis added).  Applying this regulation here would conflict with Illinois's own regulations governing TNCs.  625 Ill. Comp. Stat. Ann. 57 *et seq.*

Even if the CPUC did govern claims based on Uber's operations in Illinois, it still would not create vicarious liability for conduct by independent drivers.  The first clause of section 5354

limits its application to "construing and enforcing the provisions" of the CPUC chapter governing "Charter-Party Carriers of Passengers," including TNCs.  CPUC § 5354.  It does not impose on TNCs tort liability for *any* "act, omission, or failure" by a driver, much less vicarious tort liability.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR "COMMON CARRIER'S NON-DELEGABLE DUTY"

Plaintiffs allege that Uber is a common carrier and thus Uber is bound by a duty to protect Plaintiffs from intentional tortious conduct of independent drivers.  Compl. ¶¶ 386-400.  The Complaint purports to assert this claim under Illinois law only for incidents after August 11, 2023.  *See id.* ¶¶ 352, 363(b)(ii), 363(l), 386–400.  Presumably, Plaintiffs selected August 11, 2023 because on that date, the Illinois legislature amended the state statute expressly providing that TNCs like Uber are not common carriers.  *See supra* Section II.B.  But that amendment did not become operative until January 1, 2024.  *See* 625 Ill. Comp. Stat. 57/25(e) ("This subsection (e) is inoperative on and after January 1, 2024."); 2023 Ill. Laws, Pub. Act 103-0527.  Therefore, Plaintiffs cannot state a claim for "common carrier's non-delegable duty" based on any incident that occurred prior to *January 1, 2024*, not August 11, 2023, as the Complaint presumes.  Since all Illinois Plaintiffs allege incidents occurring before January 1, 2024, each of their claims for purported breach of common carrier's non-delegable duties fail.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR "NON-DELEGABLE DUTIES"

The Complaint alleges that "the scope of employment" for vicarious liability "does not apply because the drivers' torts were a breach of Uber's non-delegable duties," Compl. ¶ 426, and that Uber is liable for breaching so-called "Other Non-Delegable Duties to Provide Safe Transportation" (Cause of Action F), *id.* ¶¶ 401-17.  In short, Plaintiffs seek to hold Uber vicariously liable for alleged criminal assaults by drivers far *outside* the scope of any alleged employment.[6]  That result is not supported by the non-delegable duty doctrine.

Under the doctrine of non-delegable duties, "[i]f the law provides that one may not delegate a duty imposed, A fortiori, he may not simply divest himself of it."  *Weber* v. *N. Ill. Gas Co.*, N.E.2d 41, 51 (Ill. App. Ct. 1973).  A party bearing a non-delegable duty cannot escape

---

[6] Restatement (Second) of Agency § 231 cmt. A; *Doe ex rel. Doe* v. *Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 61 (Ill. App. Ct. 2012).

responsibility for the performance of *its own duty* by engaging an independent contractor.  *See Reith* v. *Gen. Tel. Co. of Ill.*, 317 N.E.2d 369, 373 (Ill. App. Ct. 1974).  Here, Plaintiffs do not - - and cannot - - plead facts showing that Uber decided to assign, subcontract, or delegate its *own* alleged duties to drivers.  According to the Complaint itself, Uber *itself*, not drivers, negligently performed Uber's alleged responsibilities by failing to, e.g., "adapt or improve its safety procedures," "warn passengers of the risk of Uber rides," "adequately vet prospective drivers," "establish and maintain an appropriate and robust system for receiving passenger complaints of sexual misconduct," and "use the utmost care and vigilance to protect Plaintiffs from its own drivers."  *See* Compl. ¶ 365.   The Complaint does not allege, for example, that Uber delegated to drivers the development of safety features or investigations regarding rider complaints.[7]

    But this approach has been considered - - and squarely rejected - - in Illinois.  Specifically, in *Lyft*, 176 N.E.3d at 870, the court considered whether the Illinois statute stating that TNCs are *not* common carriers (625 Ill. Comp. Stat. 57/25(e)) "precludes TNCs from being subject to the same heightened duty of care and principles of vicarious liability applicable to common carriers."[8]  There, the plaintiff argued that the principles of common carrier liability should be extended to TNCs because, like common carriers, they "exercise[] a high degree of control over [their] passengers' safety."  *Id.* at 871–72.  In doing so, the plaintiff cited two Illinois cases extending common carrier liability to school bus operators.  *Id.* at 872.  The court distinguished those cases, however, noting the vulnerability of children and the strong public policy of ensuring the safe transportation of school children, and concluded that they do not "support the broad proposition that any non-common carrier that performs the same basic function as a common carrier and exercises a similar degree of control over its passengers' safety must be held to the same duty of care that applies to common carriers."  *Id.*

---

[7] The so-called "duty to provide safe transportation," if it exists at all, is functionally the same thing as the common carrier duty.  *See* Restatement (Second) of Torts § 314A.  Plaintiffs know this.  That is why they brought a separate claim based on common carrier's duty to "provide safe transportation" (Cause of Action E). Compl. ¶¶ 386-400.  Plaintiffs' purported cause of action for "other non-delegable duties" (Cause of Action F) merely seeks to repackage the common carrier negligence claim to give Plaintiffs multiple bites at the same basic allegation that Uber breached an alleged duty of care.  *Id.* ¶¶ 401-17.

[8] This statute was recently amended such that it became "inoperative" beginning January 1, 2024. *See* 625 Ill. Comp. Stat. 57/25(e).

Moreover, the court held that, even if there were support for the proposition that common carrier liability should be broadly extended, such an extension would be impermissible for TNCs, which the legislature had expressly declared are *not* common carriers.[9]  *Id.* at 873.  The court reasoned that applying common carrier standards of liability to TNCs "would strip the relevant language of section 25(e) of all meaning."  *Id.*  Considering the statutory language and context of additional provisions in the Transportation Network Providers Act, the court concluded that the Act "exempts TNCs from common carrier standards of liability but requires them to adhere to the common carrier's duty to serve all members of the public alike."  *Id.* at 874.

## V.   PLAINTIFFS' FRAUD-RELATED CLAIMS SHOULD BE DISMISSED

To establish fraud, a plaintiff must show: "(1) the existence of a false statement of material fact, (2) made by a party who knows or believes it to be false, (3) with the intent to induce another to act, (4) which causes action by another in reasonable reliance on the statement's truth, and (5) causes an injury to the other resulting from the reliance." *Krilich* v. *Am. Nat'l Bank & Tr. Co. of Chi.*, 778 N.E.2d 1153, 1160 (Ill. App. Ct. 2002).[10]  Fraud claims also must satisfy the heightened pleading standard of Rule 9(b), "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  That requires pleading with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz* v. *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotations omitted); *see also Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *Windy City Metal Fabricators & Supply, Inc.* v. *CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008).

Here, by definition, the Complaint cannot satisfy Rule 9(b) because it does not allege any facts specific to any Plaintiff.   While the Complaint describes an assortment of alleged misstatements by Uber over a broad period of time, it does not allege (a) which specific Plaintiff,

---

[9] Plaintiffs are presumptively aware of this statute, as the Complaint explicitly excludes certain states, including Illinois, from their common carrier claim.  *See* Compl. ¶¶ 352, 363(b)(ii), 363(l), 386–400 (asserting common carrier negligence as to all states except Illinois and others).

[10] To the extent that Plaintiffs allege a cause of action for negligent misrepresentation, the elements largely overlap with the elements of intentional misrepresentation as relevant here, *Kopley Grp. V., L.P.* v. *Sheridan Edgewater Props., Ltd.*, 876 N.E.2d 218, 228 (Ill. App. Ct. 2007), and the claim fails for the same reasons as their intentional misrepresentation claims.

(b) saw which specific statement, (c) where or when she specifically saw it, (d) how that specific Plaintiff actually and justifiably relied on the specific statement, or (e) how that specific Plaintiff was damaged as a result.  That this is an MDL does not relieve Plaintiffs of having to plead with specificity, nor does it dilute the requirements of Rule 9(b).  In an MDL, "to satisfy the requirements of Rule 9(b), plaintiffs must 'inject precision and some sort of substantiation into their allegations of fraud.'"  *In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, 2001 WL 1266317, *7 (D.N.J. Sept. 30, 1997) (citation omitted); *see also JCCP Demurrer Order*, at 12-15.

### A.   The Complaint Fails to Plead Reliance

To withstand dismissal of a fraud claim under Illinois law, each plaintiff "must also prove actual and reasonable reliance on the representations."  *Bixby's Food Sys., Inc.* v. *McKay*, 193 F. Supp. 2d 1053, 1065 (N.D. Ill. 2002).  Under Illinois law, a "claim for common law fraud requires actual reliance," such that "the misrepresentations must reach the plaintiff and [s]he must in fact reasonably rely on them."  *People ex rel. Peters* v. *Murphy-Knight*, 618 N.E.2d 459, 465-66 (Ill. App. Ct. 1993).  Further, each plaintiff "is required to allege actual reliance with particularity."  *Morse* v. *Abbott Labs.*, 756 F. Supp. 1108, 1112 (N.D. Ill. 1991); *Good* v. *Zenith Elecs. Corp.*, 751 F. Supp. 1320, 1323 (N.D. Ill. 1990).  Reliance is thus highly individualized and specific to each plaintiff and "therefore, generally alleging reliance is insufficient."  *See JCCP Demurrer Order*, at 13.  For the misrepresentation claims to survive, the Complaint must allege - - but does not allege - - specific facts, based on each Plaintiff's specific individual experiences, supporting that each saw or heard specific representations by Uber, and that those specific representations induced her to arrange a ride through the Uber App or enter a vehicle arranged through the Uber App.

The *In re Ford Motor Co. Ignition Switch Prods. Liab. Lit.* MDL is instructive.  That MDL involved over 100 plaintiffs alleging that defendant Ford "fraudulently misinform[ed] the public" regarding ignition switches.  2001 WL 1266317, at *6.  Though plaintiffs "described with some particularity the nature of Ford's alleged misrepresentations to the public and the mediums through which these statements were made," the court found that the complaint was "nonetheless deficient in that it fail[ed] to describe with any particularity how plaintiffs relied upon the alleged misrepresentations and omissions of defendant, or how such reliance resulted in damages."  *Id.* at

*7-8.  Just like the Complaint here, the complaint "fail[ed] to state what advertisement or other statement by Ford was heard or seen and then relied upon by each . . . plaintiff."  *Id.* at *8. Although the Complaint lists an assortment of "examples" of alleged representations by Uber, Compl. ¶ 188, it does not allege particularized facts indicating which specific Plaintiff was aware of and saw which specific representations, and which specific Plaintiff then relied upon those representations in choosing to use Uber's services.  "It is implausible, to state the obvious, that every one of [the] individual Plaintiffs actually saw and relied on each and every one of the statements and other representations."  *JCCP Demurrer Order*, at 14.

### B.  Plaintiffs Fail to Identify the Alleged False Statements with Specificity

The Complaint also fails to allege with specificity the what, when, where, and how of the alleged misrepresentations and to which specific Plaintiff a specific misrepresentation was made. *Vess*, 317 F. 3d at 1106; *Windy City*, 536 F.3d at 668.  That pleading defect would require dismissal even if there were only a single Plaintiff.  *See, e.g.*, *Windy City*, 536 F.3d at 669 (affirming dismissal of fraud claims because "district court correctly determined that the complaint failed to plead with particularity the who, when and how of the alleged frauds").[11]  But it is a major problem here because the Complaint alleges a menu of allegedly false statements, none of which is connected to any specific Plaintiff.  Instead, Plaintiffs make only general allegations that Uber made representations to "Plaintiffs and the general public" and that "Uber made intentional misrepresentations of fact to all users of the Uber App."  Compl. ¶¶ 369-70.  The plaintiffs in the JCCP attempted a similar approach, which the JCCP court rejected.  *JCCP Demurrer Order*, at 15.  That Plaintiffs here attached alleged "[e]xamples of safety-based marketing" by Uber also does not change the result because these self-selected examples are still not tied to any specific Plaintiff, to any time, or to any place.

---

[11] *See also Estate of Stella Yeh* v. *Uber Techs., Inc.*, CGC-20-584408, at 4 (Cal. Super. Ct. Aug. 6, 2021) (failure to identify the "specific representations the [passenger] purportedly read or heard, when or where she read or heard them," and "which misrepresentations she purportedly relied upon" was fatal to plaintiff's claims); *Minzer* v. *Barga*, 2020 WL 2621710, at *6 (N.Y. Super. Ct. May 22, 2020) (dismissing fraud claims because plaintiff alleged "he was aware of Uber's alleged safety promises" but not "how or when [he] came to possess this information."); *Rodriguez* v. *Uber Techs., Inc.*, No. 2020-CA-1823, at *4-5 (Aug. 9, 2021) (Fla. 9th J. D. Cir. Ct. Osceola County Aug. 9, 2021) (dismissing fraud claims because plaintiff made only "bare allegations of fraudulent conduct" and did not "identify[] the time, place, and manner in which the conduct occurred").

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO ILLINOIS LAW        Case No. 3:23-md-03084-CRB

For example, in *In re Volkswagen Clean Diesel*, the complaint "detail[ed] specific advertisements and marketing materials," but the court found that the named plaintiffs' allegations "lack[ed] sufficient detail about the particular circumstances surrounding VW's misrepresentations to Plaintiffs." 349 F. Supp. 3d 881, 914 (N.D. Cal. 2018).  In particular, many of the named plaintiffs failed to identify "the specifics of what was represented" and none identified when and where they saw the advertising. *Id.* at 915.  The court found this dispositive, emphasizing that "such <u>linking allegations</u> are required to satisfy Rule 9(b)." *Id.* (collecting cases) (emphasis added).  The Complaint here suffers from the same defect.

**C.     The *McKnight* Class Action Settlement Bars Many Misrepresentation Claims**

1.     The Complaint Tries to Evade the *McKnight* Settlement

By force of the June 1, 2017 Settlement of the *McKnight* v. *Uber* class action, 14-cv-05615 (N.D. Cal.), Plaintiffs here who were members of that class, and did not opt out, released Uber from "any claim arising out of or relating to [Uber's] representations or omissions regarding [1] background checks, [2] safety, or [3] the Safe Rides Fee." *McKnight* Am. Stip. of Settlement ¶ 31(a) (June 1, 2017) (the "Release"), Atkins Decl. Ex. 2.[12]  Still, the Complaint includes allegations that are almost identical to those in the complaint in *McKnight*. *McKnight* Complaint, Atkins Decl. Ex. 1.[13]  For example:

- The *McKnight* Complaint alleged that Uber misrepresented that "Uber is committed to connecting you with the safest ride on road."  The Complaint here alleges that Uber falsely advertised "the safest ride on the road." *McKnight* Compl. ¶ 26; Compl. ¶¶ 20, 206, 207.

---

[12] Where a defendant moves to dismiss a claim released by a prior settlement agreement, the Court may consider the settlement agreement because it is "integral to the plaintiff's claims and its authenticity is not disputed." *Lesnik* v. *Eisenmann SE*, 374 F. Supp. 3d 923, 936 (N.D. Cal. 2019).  Uber respectfully requests that this Court take judicial notice of the *McKnight* Release, Complaint, and Mandate.  *See* Atkins Decl. Exs. 1-3.

[13] Plaintiffs cite the class action claims that culminated in the *McKnight* settlement.  Compl. ¶ 208.

- The *McKnight* Complaint alleged that Uber misrepresented that it set "the strictest safety standards possible."  The Complaint here alleges that Uber misrepresented that it set "the strictest standards possible."  *McKnight* Compl. ¶ 26; Compl. ¶¶ 20, 207.

- The *McKnight* Complaint alleged that Uber misrepresented that drivers are "thoroughly screened through a rigorous process we've developed using industry-leading standards."  The Complaint here alleges that drivers are screened by "an industry-leading background check process."  *McKnight* Compl. ¶ 27; Compl. ¶¶ 20, 207.

- The *McKnight* Complaint alleged that safety standards "aim to go above and beyond local requirements."  The Complaint here alleges that Uber misrepresented that it "aims to go above and beyond local requirements" with "industry leading" background checks. *McKnight* Compl. ¶ 26; Compl. ¶ 20.

*McKnight* was settled pursuant to an Amended Stipulation of Settlement dated June 1, 2017, which provided that all class members who did not opt out released claims "of any nature whatsoever, known or unknown, . . . which Plaintiffs and Class Members have or may have arising out of or relating to any allegations made in the Action, or any legal theories that could have been raised based on the allegations in the Action."  *McKnight* Am. Stip. of Settlement ¶ 31 (defining "Released Claims").  "The Released Claims include, but are not limited to, any claim arising out of or relating to [Uber's] representations or omissions regarding background checks, safety, or the Safe Rides Fee."  *Id.*[14]  In exchange for the Release, Uber agreed, among other things, that it would cease any use of anything called a "Safe Rides Fee" beyond early 2016.  The Settlement Class included all passengers who "used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories," "from January 1, 2013 to January 31, 2016," and did not "elect exclusion or opt out from the Class."  *Id.* ¶¶ 6, 8.[15]  Therefore, any Plaintiff here who was a class member already released Uber from "any claim arising out of or relating to [its] representations or omissions regarding background checks, safety,

---

[14] Final judgment in the McKnight action, following resolution of appeals, was entered by the Ninth Circuit on December 22, 2022.  *McKnight* Mandate, Atkins Decl. Ex. 3.  The release was effective on December 23, 2022.  *McKnight* Am. Stip. of Settlement ¶ 16.

[15] The *McKnight* Release states that "Class Members are not releasing any claims for personal injuries."  *McKnight* Am. Stip. of Settlement ¶ 31.  That exception immediately follows the release of "any claim arising out of or relating to Defendants' representations or omissions regarding background checks, safety, or the Safe Rides Fee."  *Id.*  Thus, the personal injury exception applies only where the claim relates to something other than an alleged representation or omission about background checks, safety, or the Safe Rides Fee.

- 16 -

or the Safe Rides Fee." *Id.* ¶ 31.

The Complaint's total lack of specificity as to which Plaintiffs relied on which alleged misrepresentations and omissions, and when and where they did so, prevents Uber and the Court from determining which Plaintiffs are barred by the Release from pursuing which allegations about which alleged misrepresentations and omissions. Even so, it is clear that there are Plaintiffs in the class - - i.e., individuals who "from January 1, 2013 to January 31, 2016, used the Uber App or website to obtain service from one of the Uber Ride Services With A Safe Rides Fee in the United States or its territories." *Id.* ¶ 6.[16]  Moreover, no claims relating to the "Safe Rides Fee" could have survived the *McKnight* settlement because that fee was terminated as part of the settlement and therefore did not exist after early 2016.  The MDL cannot be used to avoid the enforcement of the *McKnight* settlement by lumping all the Plaintiffs together with no specifics.  Put simply, either the Plaintiffs were part of the settlement and barred from alleging the released claims or the Plaintiffs otherwise were not charged a Safe Rides fee and cannot assert a claim based on the fee.

### 2.   The "Safe Rides Fee" Allegations Should Be Dismissed or Stricken

There is at least one allegation that cannot stand and should be dismissed now with prejudice and/or stricken in light of the McKnight settlement:  the allegation that the "Safe Rides Fee" constitutes an actionable misrepresentation or omission.  Compl. ¶¶ 203-04.  Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  As the Ninth Circuit has instructed, "'immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded," and "'impertinent' matter consists of statements that do not pertain, and are not necessary to the issues in question."  *Fantasy, Inc.* v. *Foberty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Here, the allegations about the "Safe Rides Fee" being misleading are undeniably immaterial because they cannot, given the *McKnight* settlement, support any misrepresentation or omission claims.  *First*, as to Plaintiffs who were members of the *McKnight* class, any claims

---

[16] Uber has identified 21 Plaintiffs who allege incidents in California, Florida, Illinois, New York, and Texas who released claims pursuant to Release.  Sauerwein Decl. ¶ 20.  Uber is not aware of any MDL Plaintiff who opted out of the *McKnight* class action settlement.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO ILLINOIS LAW          Case No. 3:23-md-03084-CRB

arising from or relating to the Safe Rides Fee were released.  *See supra* V.C.1.  *Second*, it follows from the definition of the *McKnight* class that any Plaintiffs not in the class were those who did not obtain a "Uber Service With a Safe Rides Fee," and therefore cannot claim to have been misled by the Safe Rides Fee.  *Third*, as the use of the Safe Rides Fee was enjoined as part of the Settlement, no Plaintiff can have a claim based on a program that no longer existed after early 2016.

## D.   The Complaint Alleges Representations That Are Not Actionable

Although the Complaint includes a list of alleged misrepresentations, it does not plead facts showing that those statements are false, or in what way they are false.  *See Gensler* v. *Strabala*, 764 F.3d 735, 737 (7th Cir. 2014); *FDIC* v. *Miller*, 781 F. Supp. 1271, 1278 (N.D. Ill. 1991).  The Complaint alleges, for example, that Uber made representations about the existence of "safety features built into every ride," including that "911 help is a swipe away" and that RideCheck "can help detect if your trip goes unusually off course."  Compl. ¶ 227, Appx. A, Ads 8, 28, 32; *see, also* Appx. A, Ads. 7, 9, 10, 23, 24, 26, 27.  The Complaint does not, however, allege that "safety features" are <u>not</u> built into every ride; that "911 help" is <u>not</u> a swipe (of the finger) away; or that the RideCheck feature does <u>not</u> "help detect" trips that go off course.  Likewise, the Complaint points to Uber's statements that drivers "must undergo a multi-step safety screen" and that Uber "rescreens drivers every year."  Compl. ¶ 215; *see also id.* ¶ 216, Appx. A, Ad. 30.  Nowhere does the Complaint allege, however, facts showing that background checks are <u>not</u> used to vet drivers; that there is <u>not</u> a multi-step process; or that there are <u>not</u> background checks run every year.  In short, the Complaint fails to adequately plead "*how* the statements" cited in the Complaint "are false."  *Toulon* v. *Cont. Casualty Co.*, 877 F.3d 725, 734 (7th Cir. 2017).

The Complaint also alleges statements that are not falsifiable, and thus are not actionable.  A "false representation must be one of an existing or past fact, and not a mere promise to do some act in the future."  *Polivka* v. *Worth Dairy, Inc.*, 328 N.E.2d 350, 354 (Ill. App. Ct. 1974); *Avery* v. *State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846 (Ill. 2005); *Murphy-Knight*, 618 N.E.2d at 463; *Sinclair* v. *Sullivan Chevrolet Co.*, 202 N.E.2d 516, 518 (Ill. 1964); *Cansino* v. *Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (2014).

The Complaint alleges numerous similar non-actionable statements by Uber, including: "Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone;" "That's why we're committed to safety—from the creation of new standards to the development of technology with the aim of reducing incidents;" and "Uber is dedicated to keeping people safe on the road."  Compl. ¶¶ 211, 221; *see also id.* Appx A, Ad. 6. These are not statements concerning past or existing material facts.  They are expressions of company pride and esteem, communicated in aspirational language that would not reasonably be understood to be subject to factual verification.  *See XYZ Two Way Radio Serv., Inc.* v. *Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) ("Many of the statements are couched in aspirational terms—'committed to,' 'aim to,' 'believe deeply'— that cannot be proven true or false.").  And they refer to "safety" in vague and general terms, without promising any specific standard of safety or guaranteeing absolute safety.  *See Pickens* v. *Mercedes-Benz USA, LLC*, 2021 WL 5050289, at *4 (N.D. Ill. Nov. 1, 2021); *Smith* v. *LG Elecs. U.S.A., Inc.*, 2014 WL 989742, at *5 (N.D. Cal. Mar. 11, 2014).

### E.      The Complaint Fails to Plead Fraudulent Omission or Concealment

Plaintiffs allege that Uber is liable for "misrepresentation by omission."  Compl. ¶ 368. The elements of a fraudulent omission claim are:  (1) "the defendant concealed a material fact under circumstances that created a duty to speak"; (2) "the defendant intended to induce a false belief"; (3) "the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist"; (4) "the concealed information was such that the plaintiff would have acted differently had he or she been aware of it"; and (5) "the plaintiff's reliance resulted in damages."  *Phillips* v. *DePaul Univ.*, 19 N.E.3d 1019, 1037 (Ill. App. Ct. 2014).  Such claims also are subject to Rule 9(b).  *McMahan* v. *Deutsche Bank Ag*, 938 F. Supp. 2d 795, 805 (N.D. Ill. 2013).  Plaintiffs' fraudulent omission claim fails:

First, Plaintiffs do not allege an omission of a "material fact."  Instead, as discussed above, they state a number of accusations and opinions about the company:  Uber "failed to disclose the truth that Uber prioritized growth and driver supply over passenger safety"; Uber "failed to

1  disclose the truth that Uber failed to adequately protect passengers against sexual assault or
2  harassment committed by drivers"; and Uber did not disclose "the truth of its priorities and lack
3  of adequate safety mechanisms."  Compl. ¶¶ 372-74.  These are not allegations of undisclosed
4  material facts, but derogatory characterizations of Uber.  The Complaint therefore fails to allege
5  an omission or concealment with the factual specificity required by Rule 9(b).

6       Second, Plaintiffs fail to allege that they "could not have discovered the truth through
7  reasonable inquiry or inspection," *D'Attomo*, 36 N.E.3d at 913, because the Complaint alleges
8  otherwise.  The Complaint alleges that it was in 2014 that Uber started receiving reports of sexual
9  assault by drivers against riders.  Compl. ¶ 258.  It then cites a *New York Times* article *from 2014*
10 called "Uber's System for Screening Drivers Draws Scrutiny," which details public and
11 government criticism over Uber's driver screening process and the alleged rape of a passenger.  *Id.*
12 ¶ 145 n.19; *see also id.* ¶ 151 (discussing 2014 investigation into Uber's driver screening); *id.* ¶
13 260 n.60 (citing 2014 *New York Times* article about rape of passenger).  Also in 2014, the original
14 Complaint in the *McKnight* class action was filed, which alleged that Uber made misleading
15 statements about passenger safety because, among other things, a woman allegedly (it was never
16 proven) was attacked by a driver with a criminal background.  Atkins Decl. Ex. 1, *McKnight*
17 Compl. ¶ 53 n.2.[17]  As discussed above, numerous Plaintiffs *in this case* were actually class
18 members in *McKnight* and received payment in exchange for releases.  Those Plaintiffs certainly
19 did not lack opportunity to discover  information about Uber safety-related statements, including
20 about background checks.  *See D'Attomo* v. *Baumbeck*, 36 N.E.3d 892, 912 (Ill. App. Ct. 2015);
21 *see also Mullen*, 488 F. Supp. 3d at 709-10.

22      Then, as Plaintiffs themselves allege, in 2019 Uber released the 84-page 2017-2018 Safety
23 Report detailing with statistical precision the number of incidents of the most severe forms of
24 sexual misconduct on the platform.  Compl. ¶ 273.  Uber issued the Report even though it was not
25 legally mandated to do so and even though doing so was above and beyond any industry standard
26 (e.g., Lyft had not launched a report; there are also no notices or reports regarding sexual assaults

---

[17] The same incident is discussed in the original complaint filed in December 2014.  *McKnight* v.
*Uber Techs., Inc.*, 14-cv-05615, ECF No. 1, ¶ 36.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO ILLINOIS LAW      Case No. 3:23-md-03084-CRB

on airplanes and cruises or at hotels, despite the fact that sexual assaults occur in those industries too).  That directly contradicts Plaintiffs' accusation that Uber did not disclose facts about safety and, more generally, that Uber is the type of company that conceals such facts.  Because these alleged safety issues were part of the public record, Plaintiffs' conclusory allegations of Uber's supposedly exclusive knowledge do not state a claim for fraud by non-disclosure.  *See D'Attomo*, 36 N.E.3d at 913; *see also Mullen* v. *GLV, Inc.*, 488 F. Supp. 3d 695, 709-10 (N.D. Ill. 2020).

Third, Plaintiffs fail to allege that Uber had a duty to disclose.  *See Squires-Cannon* v. *Forest Preserve Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018); *Al Maha Trading & Contracting Holding Co.* v. *W.S. Darley & Co.*, 936 F. Supp. 2d 933, 946 (N.D. Ill. 2013).  Here, the Complaint does not allege that Uber had a fiduciary or confidential relationship with any of the Plaintiffs that would create a duty to disclose.  It alleges only, in a vague and conclusory fashion, that Uber "had a *special* relationship with the passengers."  Compl. ¶¶ 374(a) (emphasis added).  But an ordinary arms-length contractual relationship, like the one between Uber and Plaintiffs, does not form the basis of a fiduciary or confidential relationship producing a duty to disclose.  *R.J. Mgmt. Co.* v. *SRLB Dev. Corp.*, 806 N.E.2d 1074, 1083–84 (Ill. App. Ct. 2004).  *See also Al Maha Trading*, 936 F. Supp. 2d at 946.

For similar reasons, Plaintiffs also fail to plausibly allege that Uber was in a position of superiority or that Plaintiffs and Uber had a "special trust relationship" that obligated Uber to disclose further information.  "[T]he standard for identifying a special trust relationship is extremely similar to that of a fiduciary relationship," *Squires-Cannon*, 897 F.3d at 806 (citation omitted), and "state and federal courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one," *Wigod* v. *Wells Fargo Bank, N.A.*, 673 F.3d 547,  571 (7th Cir. 2012) (collecting cases).  The Complaint fails to allege any facts that support the conclusion that Uber failed to disclose new information that rendered prior disclosures untrue or that Uber made any fraudulent partial disclosure.[18]

---

[18] For the reasons stated *supra* Section V.A., Plaintiffs also fail to allege reliance as to each particular Plaintiff.  Under Illinois law, even where a plaintiff "alleges that [a] defendant intended that plaintiff rely on its misrepresentations and concealment," a fraudulent concealment claim will be dismissed when a plaintiff "does not allege that plaintiff actually relied on anything."  *DOD*

1

2

## VI.   THE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM IS DUPLICATIVE

3

4

5

6

7

8

9

10

11

12

13

Under Illinois law, a claim for NIED requires a plaintiff to establish that "(1) defendant owed plaintiff a duty; (2) defendant breached that duty; and (3) plaintiff's injury was proximately caused by that breach." *Howell* v. *Jofe*, 483 F. Supp. 2d 659, 667 (N.D. Ill. 2007).  Illinois courts look to "the operative facts and injury to determine whether" causes of action are duplicative.  *See Pippen* v. *Pedersen & Houpt*, 986 N.E.2d 697, 705 (Ill. Ct. App. 2013).  Here, any claim for NIED is duplicative of Plaintiffs' negligence claims, because they are based on the same factual circumstances and seek the same potential recovery.  *Compare* Compl. at ¶¶ 362-67 (alleging Negligence), *with* Compl. at ¶¶ 381-85 (alleging NIED).  Plaintiffs' NIED claim is therefore ripe for dismissal as duplicative of, and subsumed by, the negligence claim.  *See Fed. Deposit Ins. Corp. for Valley Bank* v. *Crowe Horwath LLP*, 2018 WL 1508485, at *6-7 (N.D. Ill. Mar. 27, 2018).

14

## VII.   PLAINTIFFS FAIL TO ALLEGE NEGLIGENT ENTRUSTMENT

15

16

17

18

19

20

21

22

23

To support a claim for negligent entrustment, Plaintiffs must allege facts establishing that Uber gave the independent drivers "express or implied permission to use or possess a dangerous article or instrumentality" that Uber knew or should have known "would likely be used in a manner involving an unreasonable risk of harm."  *Garland* v. *Sybaris Clubs Int'l, Inc.*, 141 N.E.3d 730, 748 (Ill. Ct. App. 2019) (citation omitted).  Here, Plaintiffs allege that Uber permitted the independent drivers to use the Uber "product" and trademarks, *see* Compl. ¶ 363 (n), but there is no allegation that these intangible items constitute a dangerous article or instrumentality.  In any event, Plaintiffs do not allege that any independent driver negligently used the Uber App or Uber's trademarks, or that any such alleged negligent use caused any particular Plaintiff's injury.

24

## VIII.   THE COMPLAINT'S STRICT PRODUCT LIABILITY CLAIMS FAIL AS A MATTER OF LAW

25

26

A manufacturer, distributor, or retailer of a product is liable in tort if a defect in the product

27

28

*Techs.* v. *Mesirow Ins. Servs., Inc.*, 887 N.E.2d 1, 11 (Ill. App. Ct. 2008). Plaintiffs fail to do so here.

causes injury while the product is being used in a reasonably foreseeable way.  *See Smith v. Boehringer Ingelheim Pharms., Inc.*, 886 F. Supp. 2d 911, 926 (S.D. Ill. 2012).  As relevant here, defining whether there is a "product" at issue is a condition precedent to successfully maintain the action.  *Brandt* v. *Bos. Sci. Corp.*, 792 N.E.2d 296, 302 (Ill. 2003).  Whether or not the subject object is defined as a "product" is a question of law for the court to decide.  *See, e.g.*, *Lowrie* v. *City of Evanston*, 365 N.E.2d 923, 929 (Ill. App. Ct. 1977).  Here, the Complaint fails to allege facts sufficient to show the Uber App is a "product" or "tangible personal property distributed commercially for use or consumption."  Restatement (Third) of Torts: Prod. Liab. § 19 (Am. L. Inst. 1998).  To the contrary, as the Complaint itself acknowledges, the Uber App provides a *service* of connecting riders with drivers.  *See, e.g.*, Compl. ¶ 390 ("Uber charges standard fees for its services through its application."); *id.* ¶ 391 ("Any member of the public can use Uber's transportation services."); *see also id.* ¶¶ 13, 70, 73, 119, 179, 206, 352, 388, 408, 421, 429-30. Similarly, the Illinois Legislature recognizes that TNCs provide a service.  625 Ill. Comp. Stat. Ann. 57/5 (defining a TNC as "an entity operating in this State that uses a digital network or software application <u>service</u> to connect passengers to transportation network company <u>services</u> provided by transportation network company drivers" (emphasis added)).

Services, even when provided commercially, are not products.  Restatement (Third) of Torts: Prod. Liab. § 19.  Since software, like the Uber App, generally is designed to provide a service, "most software does not fall within the purview of product liability law."  Raymond T. Nimmer, Law of Comput. Tech. § 12:41 (Nov. 2023 Update); *see also* Michael D. Scott, *Scott on Info. Tech. Law*, § 15.08 n.105 (3d ed. 2024 Supp.); Michael L. Rustad & Thomas H. Koenig, *The Tort of Negligent Enablement of Cyberspace*, 20 Berkeley Tech. L.J. 1553, 1577 (2005).  For these reasons, courts in many jurisdictions have found that the Uber App, and similar apps, are not products.[19]  For example, in the JCCP, the court explained that "customers do not purchase the

---

[19] *See, e.g.*, *Arruda* v. *Rasier, LLC*, No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024); *Martinez* v. *Uber Techs., Inc.*, No. 23STCV09795 (Cal. Super. Ct., Oct. 3, 2023); *Ramos* v. *Uber Techs., Inc.*, No. 22STCV33007 (Cal. Super. Ct. June 1, 2023); *Luna, Avelardo* v. *Uber Techs., Inc.*, No. 22STCV10806 (Cal. Super. Ct., Sept. 27, 2022); *Baxter-Aremtrout* v. *Lyft, Inc.*, No. 50-20210CA-013917 (Fla. Cir. Ct., Aug. 29, 2022); *Behuet & Hunt* v. *Uber Technologies, Inc.*, 2022 WL 20318684, at *2 (Cal. Super. Ct. July 13, 2022); *Shannon* v. *Uber Techs., Inc.*, No. 21STCV42029 (Cal. Super. Ct., Apr. 15, 2022); *Flores* v. *Uber Techs., Inc.*, No. 19STCV24988

App, nor is it in any meaningful sense the object of their transaction with Uber, but merely the mechanism by which that object—securing a ride to their destination—is accomplished." *JCCP Demurrer Order*, at 18.  The court held "[t]he Uber App is no more a 'product' . . . than is a telephone that a customer uses to call a taxi." *Id.*

Even if the Uber App could be viewed in some respect as a product under Illinois law (it is not), Plaintiffs would still need to establish that their transaction with Uber was for the purpose of purchasing a product rather than obtaining a service (connecting with an independent driver to obtain a ride).  *See Brandt*, 792 N.E.2d at 302; *see also Babcock* v. *Nudelman*, 12 N.E.2d 635, 637 (Ill. 1937).  Plaintiffs cannot make this showing because their transactions with Uber were to obtain the use of Uber's "services" - - not to compensate Uber for the purchase of the App, which is free to download.

Even setting aside the threshold issue of whether the Uber App is a product, the Complaint also fails to state a claim for strict product liability because it does not allege any defect or condition necessitating a warning.  Nowhere does the Complaint allege that the Uber App had a glitch or bug that impaired its ability to connect riders with drivers or that the App had an inherent and dangerous design flaw that prevented it from performing its function of connecting riders with drivers.[20]  Likewise, the Complaint does not allege that the design of the Uber App itself, such as its coding sequences that connect riders with drivers, is dangerous when used as intended and therefore requires warnings.[21]  Instead, Plaintiffs contend that Uber negligently failed to prevent the sexual misconduct of independent drivers because it implemented inadequate safety measures

---

(Cal. Super. Ct., Mar. 22, 2022); *Norman* v. *Uber Techs., Inc.*, No. 21STCV35632 (Cal. Super. Ct. Mar. 8, 2022); *Cruz Lopez* v. *Uber Techs., Inc.*, No. 21CV376012 (Cal. Super. Ct. Dec. 7, 2021); *Polanco* v. *Lyft, Inc.*, 2021 Cal. Super. LEXIS 60679 (Cal. Super. Ct. May 13, 2021); *Toral* v. *Uber Techs., Inc.*, No. 20STCV02030 (Cal. Super. Ct. Apr. 14, 2021); *Jane Doe No. 1* v. *Uber Techs., Inc.*, 2020 Cal. Super. LEXIS 73095 (Cal. Super. Ct. Nov. 30, 2020); *see also Ziencik* v. *Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (same as to Snapchat); *Jackson* v. *Airbnb, Inc.*, 639 F. Supp. 3d 994, 1010-11 (C.D. Cal. 2022) (same as to Airbnb).

[20] Liability for defective design exists only where an allegedly defective product is unreasonably dangerous to the user or consumer.  *See Teran* v. *Coloplast Corp.*, 633 F. Supp. 3d 1102, 1115 (N.D. Ill. 2022).

[21] A failure to warn claim must "allege[] that the product itself is unlawfully dangerous unless accompanied by sufficient warnings or instructions."  *Kurns* v. *R.R. Friction Prods. Corp.*, 565 U.S. 625, 635 (2012).

and background checks.  Compl. ¶ 473.  But Uber's alleged "failure to permit passengers to select drivers of the same gender" on the Uber App (*id.* ¶ 473(b)), for example, is not a defect in the software's function of connecting riders with drivers.  Nor is Uber's supposed failure to include a feature that would "ship dash cameras to drivers."  *Id.* ¶ 487(a).  These are simply safety measures that Plaintiffs think Uber should take, but they do not go to the design of the software itself.

The strict product liability claims fail for the additional reason that the Complaint does not plausibly allege causation with respect to any individual Plaintiff.  *See Horne* v. *Elec. Eel Mfg. Co.*, 987 F.3d 704, 725 (7th Cir. 2021).  To survive dismissal, the Complaint must allege facts sufficient to show that the absence of a different design was the cause of each Plaintiff's injury - - i.e., that the sexual assaults would not have occurred or would have been reduced had Uber adopted a specific different design.  *See Gutterman* v. *Target Corp.*, 242 F. Supp. 3d 695, 705-06 (N.D. Ill. 2017).  Here, none of the Plaintiffs has satisfied that pleading requirement because none of them has alleged facts to show what specific alternative design would have prevented what specific incident, or that an alternative design would have stopped the independent motivations of a criminal perpetrator.  Plaintiffs' alleged injuries stemmed not from a software design flaw, but from the alleged actions of independent drivers who made independent decisions to commit sexual assault.

For example, the Complaint alleges that the Uber App failed to "utilize its existing GPS, alert, and predictive technology to implement a feature whereby safety alerts are triggered in the event of route deviations or excessive time spent with a passenger at the beginning or end of a route."  Compl. at ¶ 487(b). Yet, the Complaint does not allege, because it would be implausible, that the absence of such "predictive technology" was the but-for cause of all 200+ alleged incidents.  For instance, there are alleged incidents where there were no "route deviations," but, rather, where the driver allegedly assaulted the rider *after* the ride was complete and *after* the Uber App had been turned off.  Similarly, there is no allegation that each individual Plaintiff  used the App herself to order the ride at issue, or would have seen any warning issued through the App or otherwise directed to App users.  Absent well-pled, plaintiff-specific allegations that a warning would have been seen, and heeded, by any particular individual Plaintiff, the Complaint's failure

1  to warn claims fail.

2  **IX.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE UCL**

3  **A.    Plaintiffs Cannot Assert UCL Claims for Incidents That Occurred in Illinois**

4       Plaintiffs' claims under the California Unfair Competition Law, Cal. Bus. & Prof. Code §

5  17200 ("UCL"), must be dismissed.  *See* Compl. at ¶¶ 506-13.  California courts have long held

6  that there is a presumption against applying California statutes extraterritorially.  *See Sullivan* v.

7  *Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).  Those courts "ordinarily presume the Legislature

8  did not intend the statutes of [California] to have force or operation beyond the boundaries of the

9  state," absent clear statutory language to the contrary.  *Norwest Mortg., Inc.* v. *Superior Ct.*, 72

10 Cal. App. 4th 214, 222 (1999).  The California Supreme Court has held that "the presumption

11 against extraterritoriality applies to the UCL in full force" because "[n]either the language of the

12 UCL nor its legislative history provides any basis for concluding" otherwise.  *Sullivan*, 51 Cal. 4th

13 at 1207; *see also Ice Cream Distribs. of Evansville, LLC* v. *Dreyer's Grand Ice Cream, Inc.,* 2010

14 WL 3619884, *8 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th Cir. 2012).

15      In assessing whether a foreign resident can avail herself of the UCL, the "critical" questions

16 "are whether the injury occurred in California and whether the conduct of Defendants occurred in

17 California."  *Tidenberg* v. *Bidz.com, Inc.*, 2009 WL 605249, *3-4 (C.D. Cal. Mar. 4, 2009).  Here,

18 the Complaint contains no factual allegations supporting a conclusion that any of the Illinois

19 Plaintiffs used the Uber App in California to book the rides during which the incidents

20 occurred.  Indeed, the Complaint contains no allegations about any of the Illinois Plaintiffs'

21 "individual contacts with California."  *Id.* at *5.  On the contrary, for all the Illinois Plaintiffs, the

22 incidents, and Plaintiffs' alleged injuries resulting from the incidents, occurred *in Illinois*. [22]

23 **B.    Plaintiffs Fail to State a UCL Claim on the Merits**

24      Plaintiffs' allegation that Uber engaged in "unlawful," "fraudulent," and "unfair" business

---

[22] Some courts have held that the UCL may apply extraterritorially to claims based on alleged misrepresentations that were developed in and disseminated from California.  *E.g.*, *Ehret* v. *Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1131-32 (N.D. Cal. 2014).  However, those cases are distinguishable.  *First*, here, there is no factual allegation of misconduct occurring in California.  *Second*, the misconduct giving rise to Plaintiffs' claims indisputably occurred outside of the state, in Illinois.

1    practices is insufficient to state a claim for violation of the UCL.  Compl. ¶¶ 506–10.  *First*,

2    Plaintiffs allege that "Uber's conduct was unlawful because it violated Uber's common law duties

3    of care." *Id.* ¶ 507.  In other words, Plaintiffs attempt to satisfy the "unlawful" prong of their UCL

4    claim by relying on allegations that Uber's conduct was negligent.  But "[c]ommon law claims

5    such as negligence cannot form the basis of an unlawful prong claim under the UCL." *Mendez* v.

6    *Selene Fin. LP*, 2017 WL 1535085, at *6 (C.D. Cal. Apr. 27, 2017); *see also Shroyer* v. *New*

7    *Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

8          *Second*, in support of their UCL claim, Plaintiffs allege that "Uber's conduct was

9    fraudulent because it was grounded in Uber's representations that it would protect its passengers'

10   safety."  Compl. ¶ 509.  However, Plaintiffs' claim under the "fraud" prong of the UCL fails for

11   the same reasons as their common law fraud claims, as the UCL is "governed by Rule 9(b)'s

12   heightened pleading standard." *Frenzel* v. *AliphCom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014).

13         *Third*, Plaintiffs make the conclusory allegation that Uber's "conduct was unfair because

14   it was unscrupulous, contrary to public policy and presented a serious risk of harm to persons Uber

15   was responsible for protecting."  Compl. ¶ 508.  Plaintiffs do not allege, however, that Uber's

16   alleged conduct is "tethered to an[] underlying constitutional, statutory or regulatory provision, or

17   that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an

18   antitrust law."  *Doe* v. *CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) (quotations

19   omitted).  Although Plaintiffs speciously claim that Uber's conduct "was grounded in unfair

20   competition because the company enjoys a competitive advantage by not adequately protecting its

21   passengers," Compl. ¶ 510, Plaintiffs do not allege any "proof of some actual or threatened impact

22   on competition," *Cel-Tech Comms., Inc.* v. *L.A. Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999),

23   nor do Plaintiffs  tie their allegations "to some legislatively declared policy," *id.*; *see also In re 5-*

24   *Hour Energy Mktg. & Sales Pracs. Litig.*, 2014 WL 5311272, at *26 (C.D. Cal. Sept. 4, 2014).

25   **X.    <u>PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF</u>**

26         Plaintiffs' request for injunctive relief under the UCL, Compl. ¶¶ 506–13, fails for at least

27   two reasons.  *First*, a "plaintiff seeking equitable relief under the UCL must demonstrate the

28   inadequacy of a remedy at law." *Rodriguez* v. *FCA US LLC*, 2023 WL 3150075, at *3 (C.D. Cal.

Mar. 21, 2023); *cf. Sonner* v. *Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  That is because the Court lacks equitable jurisdiction to grant the request for injunctive relief where there is an adequate remedy at law.  *See Rodriguez*, 2023 WL 3150075, at *4 (failure to "plausibly alleg[e] [plaintiff] lacks an adequate remedy at law[] is . . . fatal to establishing th[e] court's equitable jurisdiction").  But here, the Complaint is entirely devoid of *any* allegation, plausible or not, that Plaintiffs lack an adequate remedy at law.  Instead, all of the allegations pled in support of Plaintiffs' claims for injunctive relief under the UCL are duplicative of allegations pled in support of Plaintiffs' non-equitable claims for negligence, fraud, and product liability, and pursuant to which Plaintiffs separately seek money damages.  *See, e.g.*, Compl. ¶¶ 367, 380, 490; *see Huynh* v. *Quora Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) ("[Plaintiff] fails to allege or demonstrate that any remedy at law is inadequate, and in fact she even seeks a remedy at law through her negligence claim, which is based on the same alleged conduct as her equitable claim.").

*Second*, the Complaint fails to allege facts establishing that any individual Plaintiff has standing to seek injunctive relief under the UCL.[23]  "Under Article III's standing requirement, a plaintiff seeking injunctive relief bears the burden of showing 'that *he* is under threat of suffering 'injury in fact' that is *concrete and particularized*; the threat must be *actual and imminent*, *not conjectural or hypothetical*; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.'"  *Doe* v. *Match.com*, 789 F. Supp. 2d 1197, 1199 (C.D. Cal. 2011) (emphasis added) (quoting *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 493 (2009)); *Payne* v. *Off. of the Comm'r of Baseball*, 705 F. App'x 654, 655 (9th Cir. 2017).  But, Plaintiffs do not allege that any one of them faces an "actual and imminent" or "immediate" threat of being subjected to future misconduct by an independent driver.  Generalized allegations about the purported "widespread nature of sexual misconduct" by certain independent drivers, Compl. ¶ 354, do not suffice to allege a "real and immediate" threat of future harm to any individual plaintiff as required to establish standing.  *See City of Los Angeles* v. *Lyons*, 461 U.S. 95, 111 (1983).  For example, in *Lyons*, a plaintiff sought an injunction against

---

[23] Because Plaintiffs' Article III standing to seek injunctive relief is governed by federal law, the law of the Ninth Circuit applies.  *See In re Korean Air Lines Disaster*, 829 F.2d at 1175-76.

the City of Los Angeles after being subjected to a traffic stop and an alleged unprovoked chokehold by the officers. Although the plaintiff alleged that "the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force," the Supreme Court held that the plaintiff nonetheless failed to establish "a real and immediate threat" that he would be subjected to the same alleged harm in the future. *Id.* at 106, 110.

Similarly, in *Doe* v. *Match.com*, a plaintiff alleged that, through defendant's online dating service, she met a serial sexual predator who forcibly raped her. 789 F. Supp. 2d at 1198. The plaintiff sought injunctive relief requiring defendant to institute screening procedures that she alleges would have prevented the rape. *Id.* at 1199. The district court held, however, that plaintiff lacked standing to seek such relief because she had failed to establish more than a "tenuous likelihood of future injury" to herself. *Id.* at 1200; *see also Ramsay* v. *Frontier, Inc.*, 2020 WL 4557545, at *3, 16 (D. Colo. July 30, 2020), *report and recommendation adopted*, 2021 WL 651021 (D. Colo. Feb. 19, 2021); *Dopson* v. *Corcoran*, 2020 WL 3268513, at *7 (N.D. Ill. June 17, 2020) (dismissing former hospital patient's injunctive relief claim to prevent "further sexual advances, assaults or seductive communication," since plaintiff's "allegations involve past events" and is "no longer at [the hospital] and has not alleged subsequent contact with [the hospital] or [defendant hospital administrators]").[24]

## XI.   **PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES SHOULD BE DISMISSED**

Plaintiffs' request for punitive damages can - - and should - - be dismissed. Under Illinois law, in the absence of a statute authorizing punitive damages, such damages are available only "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the

---

[24] Relying on the Ninth Circuit's decision in *Davidson* v. *Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018), Plaintiffs allege they have standing because "[i]t is plausible that each Plaintiff will seek to use Uber's product in the future and necessarily will rely on Uber's obligations and representations regarding safety." Compl. ¶ 350. But *Davidson* addressed standing in the context of false advertising claims seeking to enjoin future advertising. Here, Plaintiffs purport to seek an injunction to "ensure sexual assault in Uber vehicles is foreclosed to the greatest extent possible." Compl. ¶ 35. For that relief, Plaintiffs must (but do not) plausibly allege an "actual and imminent" threat of similar sexual misconduct in the future. *Match.com*, 789 F. Supp. 2d at 1199.

rights of others." *Kelsay* v. *Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978); *Crittenden* v. *Cook Cnty. Comm'n on Human Rights*, 973 N.E.2d 408, 430-31 (Ill. App. Ct. 2012).

Here, the Complaint fails to allege fraud, for the reasons described *supra* Section V. Plaintiffs remaining allegations cannot support imposition of punitive damages.  Since punitive damages are disfavored under Illinois law, a plaintiff must plead and prove that "the defendant's conduct is willful or outrageous due to evil motive or a reckless indifference to the rights of others." *In re Est. of Feinberg*, 6 N.E.3d 310, 330 (Ill. App. Ct. 2014).  Plaintiffs are not entitled to punitive damages based simply on allegations of ordinary negligence, which is what Plaintiffs allege here. *Loitz* v. *Remington Arms Co.*, 563 N.E.2d 397, 407 (Ill. 1990); *compare* Compl. ¶ 343 (alleging, as a basis for punitive damages, "even though Uber was fully aware of its sexual misconduct problem it failed to take safety precautions to protect its passengers"), *with id.* ¶ 365(p) (alleging, as a basis for negligence, "Uber failed to take reasonable precautions to protect its vulnerable female riders and other passengers, including Plaintiffs, from the foreseeable and known risk of assault or harassment by its drivers").[25]

## XII.   AMENDMENT WOULD BE FUTILE

Because the above causes of action are deficiently pled as a matter of law, and no Plaintiff can allege facts beyond those asserted because no such facts exist, amendment would be futile and should not be allowed.  *See Steckman* v. *Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

### CONCLUSION

For the foregoing reasons, Uber's motion to dismiss pursuant to California law should be granted without leave to amend.

---

[25] Although a corporation may be vicariously liable for punitive damages where the corporation is "complicit[]" in the acts of an agent, *Oakview New Lenox Sch. Dist. No. 122* v. *Ford Motor Co.*, 378 N.E.2d 544, 548 (Ill. App. Ct. 1978), Uber cannot be vicariously liable for the acts of drivers by statute.  *See supra* Section II.

1
2

DATED:  April 1, 2024

**PAUL, WEISS, RIFKIND, WHARTON &**
**  GARRISON LLP**

3
4
5
6
7

By: */s/ Draft*_____
    ROBERT ATKINS
    RANDALL S. LUSKEY
    JACQUELINE P. RUBIN
    JESSICA E. PHILLIPS
    KYLE SMITH
    CAITLIN E. GRUSAUSKAS
    ANDREA M. KELLER

8
9
10

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' MASTER
LONG-FORM COMPLAINT PURSUANT TO ILLINOIS LAW          Case No. 3:23-md-03084-CRB