1   RANDALL S. LUSKEY (SBN: 240915)
        rluskey@paulweiss.com
2   **PAUL, WEISS, RIFKIND, WHARTON**
        **& GARRISON LLP**
3   535 Mission Street, 24th Floor
    San Francisco, CA 94105
4   Telephone: (628) 432-5100
    Facsimile:  (628) 232-3101

5

6   ROBERT ATKINS (*Pro Hac Vice* admitted)
        ratkins@paulweiss.com
    JACQUELINE RUBIN (*Pro Hac Vice* admitted)
7       jrubin@paulweiss.com
    **PAUL, WEISS, RIFKIND, WHARTON**
8       **& GARRISON LLP**
    1285 Avenue of the Americas
9   New York, NY 10019
    Telephone: (212) 373-3000
10  Facsimile:  (212) 757-3990

11  *Attorneys for Defendants*
    UBER TECHNOLOGIES, INC.,
12  RASIER, LLC, and RASIER-CA, LLC

13  [*Additional Counsel Listed on Following Page*]

14

15                    **UNITED STATES DISTRICT COURT**

16                    **NORTHERN DISTRICT OF CALIFORNIA**

17                        **SAN FRANCISCO DIVISION**

18

19  IN RE: UBER TECHNOLOGIES,           Case No. 3:23-md-03084-CRB
    INC., PASSENGER SEXUAL
20  ASSAULT LITIGATION                  **REPLY IN FURTHER SUPPORT OF**
                                        **DEFENDANTS' MOTION REGARDING**
21  ─────────────────────────────       **UBER'S TERMS OF USE BAR ON**
                                        **PARTICIPATION IN COORDINATED OR**
22  This Document Relates to:           **CONSOLIDATED PROCEEDINGS**

23  ALL ACTIONS
                                        Judge:      Honorable Charles R. Breyer
24                                      Date:       April 12, 2024
                                        Time:       11:00 a.m.
25                                      Courtroom:  6 – 17th Floor

26

27

28

─────────────────────────────────────────────────────────────────────
REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION REGARDING THE TERMS OF USE                    Case No. 3:23-md-03084-CRB

1    JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
         jphillips@paulweiss.com
2    KYLE N. SMITH (*Pro Hac Vice* admitted)
         ksmith@paulweiss.com
3    **PAUL, WEISS, RIFKIND, WHARTON**
         **& GARRISON LLP**
4    2001 K Street, NW
     Washington DC, 20006
5    Telephone:  (202) 223-7300
     Facsimile:  (202) 223-7420
6
7    *Attorneys for Defendants*
     UBER TECHNOLOGIES, INC.,
     RASIER, LLC, and RASIER-CA, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- ii -

1

## <u>TABLE OF CONTENTS</u>

2   TABLE OF AUTHORITIES ................................................................................................ iv

3   INTRODUCTION ............................................................................................................... 1

4   ARGUMENT ....................................................................................................................... 2

5   I.    The Contract Terms At Issue Are Enforceable and Should Be Enforced ........................... 2

6   II.   Plaintiffs Assented to the Terms of Use, Which Are Not "Unconscionable" ..................... 5

7         A.    Plaintiffs Here Assented to the Terms of Use ........................................................ 6

8         B.    The Non-Consolidation Clause Is Not Unconscionable ......................................... 9

9   III.  Plaintiffs' Other Arguments Are Meritless ...................................................................... 10

10        A.    These Contractual Provisions Should Be Enforced ............................................. 10

11        B.    The Passive Voice Does Not Render Contracts Unenforceable ........................... 13

12        C.    Plaintiffs Misread the Terms of Use .................................................................... 14

13  IV.   These Cases Should Not Participate In This MDL ........................................................... 15

14  CONCLUSION ................................................................................................................... 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABF Cap. Corp.* v. *Berglass*,
 130 Cal. App. 4th 825 (2005) .................................................................................. 3

*Adkins* v. *Labor Ready, Inc.*,
 303 F.3d 496 (4th Cir. 2002) ................................................................................... 3

*Atl. Marine Const. Co.* v. *U.S. Dist. Ct.*,
 571 U.S. 49 (2013) ............................................................................................ 11, 13

*Bell* v. *Uber Techs., Inc.*,
 2023 Cal. Super. LEXIS 90782 (Super. Ct. L.A. Cnty. Nov. 28, 2023) .................. 9

*Benedict* v. *Hewlett-Packard Co.*,
 2016 WL 1213985 (N.D. Cal. Mar. 29, 2016) ......................................................... 3

*Bielski* v. *Coinbase, Inc.*,
 87 F.4th 1003 (9th Cir. 2023) ................................................................................ 10

*Brooks* v. *Yang*,
 190 N.Y.S.3d 309 (N.Y. App. Div. 2023) ................................................................ 5

*Carnival Cruise Lines, Inc.* v. *Shute*,
 499 U.S. 585 (1991) ................................................................................................. 3

*Carter* v. *Countrywide Credit Indus., Inc.*,
 362 F.3d 294 (5th Cir. 2004) ................................................................................... 3

*Chavez* v. *Blue Sky Nat. Beverage Co.*,
 268 F.R.D. 365 (N.D. Cal. 2010) ............................................................................ 3

*Claudio-De Leon* v. *Sistema Universitario Ana G. Mendez*,
 775 F.3d 41 (1st Cir. 2014) ................................................................................... 12

*Coenen* v. *R. W. Pressprich & Co.*,
 453 F.2d 1209 (2d Cir. 1972) .................................................................................. 8

*CompuCredit Corp.* v. *Greenwood*,
 565 U.S. 95 (2012) ................................................................................................... 3

*Cordoba* v. *Uber Techs., Inc.*,
 2023 Cal. Super. LEXIS 35824 (Super. Ct. L.A. Cnty. May 30, 2023) .................. 5

*Currie* v. *Uber Techs., Inc.*,
 2023 Cal. Super. LEXIS 55782 (Super. Ct. L.A. Cnty. Feb. 7, 2023) ..................... 5

*Dean Witter Reynolds, Inc.* v. *Byrd*,
 470 U.S. 213 (1985) ................................................................................................. 4

- iv -

*Desert Outdoor Advert.* v. *Super. Ct.*,
  196 Cal. App. 4th 866 (2011) ............................................................. 8

*Gentry* v. *Super. Ct.*,
  42 Cal. 4th 443 (2007), *abrogated on other grounds*, *Iskanian* v. *CLS Transp.*
  *L.A., LLC*, 59 Cal. 4th 348 (2014)................................................... 10

*Grand Prospect Partners, L.P.* v. *Ross Dress for Less, Inc.*,
  232 Cal. App. 4th 1332 (2005) ......................................................... 10

*Greene* v. *Dell Fin. Servs., LLC*,
  2022 WL 260821 (D.N.H. Jan. 27, 2022) ........................................ 13

*Hamilton* v. *Uber Techs. Inc.*,
  2023 WL 5769500 (S.D.N.Y. Sept. 7, 2023) ..................................... 5

*Hawaiian Paradise Park Corp.* v. *Friendly Broad. Co.*,
  414 F.2d 750 (9th Cir. 1969) ............................................................ 15

*Jane Doe WHBE 302–03* v. *Uber Techs., Inc.*,
  No. 2322-CC01288 (June 27, 2023, Mo. Cir. Ct.) ............................ 5

*Koepping* v. *Tri-Cnty. Metro. Transp. Dist. of Or.*,
  120 F.3d 998 (9th Cir. 1997) ............................................................ 7

*Koresko* v. *RealNetworks, Inc.*,
  291 F. Supp. 2d 1157 (E.D. Cal. 2003) ............................................. 6

*Levin* v. *Alms & Assocs., Inc.*,
  634 F.3d 260 (4th Cir. 2011) ............................................................ 8

*M/S Bremen* v. *Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ............................................................................. 3

*Marin Storage & Trucking, Inc.* v. *Benco Contracting and Eng'g, Inc.*,
  89 Cal. App. 4th 1042 (2001) ........................................................... 9

*Meyer* v. *Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ............................................................ 6, 7

*Moretti* v. *Hertz Corp.*,
  2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ................................... 9

*Nat'l Equip. Rental, Ltd.* v. *Szukhent*,
  375 U.S. 311 (1964) ......................................................................... 3

*Net2Phone, Inc.* v. *Super. Ct.*,
  109 Cal. App. 4th 583 (2003) ........................................................... 5

*Nicosia* v. *Amazon.com, Inc.*,
  815 F. App'x 612 (2d Cir. 2020) ....................................................... 8

*Oberstein* v. *Live Nation Ent., Inc.*,
  60 F.4th 505 (9th Cir. 2023) ............................................................. 7

- v -

*In re: Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*,
    655 F. Supp. 2d 1378 (J.P.M.L. 2009) ...................................................................... 11

*Pinel* v. *Aurora Loan Servs., LLC*,
    814 F. Supp. 2d 930 (N.D. Cal. 2011) ...................................................................... 14

*Podesta* v. *Hanzel*,
    684 F. App'x 213 (3d Cir. 2017) ............................................................................... 12

*RJ* v. *Cigna Health & Life Ins. Co.*,
    625 F. Supp. 3d 951 (N.D. Cal. 2022) ...................................................................... 12

*Rojas* v. *Lewis Brisbois Bisgaard & Smith LLP*,
    2014 WL 3612568 (D. Nev. July 18, 2014) ................................................................ 3

*In re Roundup Prods. Liab. Litig.*,
    544 F. Supp. 3d 950 (N.D. Cal. 2021) ........................................................................ 4

*Salgado* v. *Carrows Rests., Inc.*,
    33 Cal. App. 5th 356 (2019) ....................................................................................... 8

*Sellers* v. *JustAnswer LLC*,
    73 Cal. App. 5th 444 (2021) ....................................................................................... 5

*Serafin* v. *Balco Props. Ltd., LLC*,
    235 Cal. App. 4th 165 (2015) ..................................................................................... 9

*Smith* v. *Aegon Cos. Pension Plan*,
    769 F.3d 922 (6th Cir. 2014) .................................................................................... 12

*Sutherland* v. *Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013) ........................................................................................ 3

*Tompkins* v. *23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) ..................................................................................... 9

*Torres* v. *De Nardo et al.*,
    2022 Cal. Super. LEXIS 87342 (Super. Ct. L.A. Cnty. Dec. 20, 2022) ...................... 5

*Trudeau* v. *Google LLC*,
    349 F. Supp. 3d 869 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) ........ 9

*Turner* v. *Uber Techs., Inc.*,
    2023 Cal. Super. LEXIS 62376 (Super. Ct. L.A. Cnty. Aug. 24, 2023) ...................... 5

*Verifone, Inc.* v. *A CAB, LLC*,
    2016 WL 4480686 (D. Nev. Aug. 24, 2016) ............................................................. 12

*In re Verisign, Inc., Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...................................................................... 8

*Viking River Cruises, Inc.* v. *Moriana*,
    596 U.S. 639 (2022) ..................................................................................................... 3

- vi -

*Vilches* v. *The Travelers Cos.*,
    413 F. App'x 487 (3d Cir. 2011) ..................................................................... 3

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010)..................................................................... 13

*Walthour* v. *Chipio Windshield Repair, LLC*,
    745 F.3d 1326 (11th Cir. 2014)....................................................................... 3

*Watson Wyatt & Co.* v. *SBC Holdings, Inc.*,
    513 F.3d 646 (6th Cir. 2008)............................................................................ 8

*Webb* v. *Auto Knight Motor Club, Inc.*,
    2023 WL 6058492 (9th Cir. Sept. 18, 2023) ................................................... 8

*Williams* v. *Ysabel*,
    2023 WL 5768422 (N.J. Super. Ct. App. Div. Sept. 7, 2023) ......................... 5

*Wu* v. *Uber Techs., Inc.*,
    186 N.Y.S.3d 500 (N.Y. Sup. Ct. 2022), *aff'd*, 197 N.Y.S.3d 1 (N.Y. App. Div.
    2023) ................................................................................................................ 5

*Zink* v. *Merrill Lynch Pierce Fenner & Smith, Inc.*,
    13 F.3d 330 (10th Cir. 1993)........................................................................... 7

**Statutes**

28 U.S.C. § 1404(a) .......................................................................................... 11

28 U.S.C. § 1406 ............................................................................................... 11

28 U.S.C. § 1407 ...................................................................................... 4, 10, 11

**Other Authorities**

Rule 12(b)(3).................................................................................................... 11

Rule 12(b)(6).......................................................................................... 2, 12, 15

Tony West, *Turning the lights on*, Uber Newsroom (May 15, 2018),
    https://www.uber.com/newsroom/turning-the-lights-on/................................ 14

REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION REGARDING THE TERMS OF USE                Case No. 3:23-md-03084-CRB

1

## INTRODUCTION

2       The central proposition of this Terms of Use Motion is unrefuted, even by Plaintiffs'

3   opposition: Contracts governing the place, procedure and law for seeking legal relief - - like the

4   Non-Consolidation and Forum Selection Clauses - - are enforceable and are regularly enforced.

5   Plaintiffs agreed by contract that they would not bring their sexual assault claims in a coordinated

6   or consolidated action, and would not participate in any such action.  Plaintiffs further agreed that

7   their individual sexual assault claims would be brought exclusively in the state where the incident

8   occurred, and would be governed by the law of the state where the incident occurred.  Those

9   agreements are of a kind with other forum selection clauses, choice of law provisions, arbitration

10  agreements, and certain class action waivers - - all of which courts respect and honor.

11      Moving for and participating in this coordinated action violates the Terms of Use.  Like so

12  many litigants resisting the enforcement of similar contracts, Plaintiffs ask the Court to disregard

13  the Terms of Use by pleading unfairness and by misreading the terms.  None of their arguments

14  provides a legal basis for declining to enforce the Terms of Use, to which Plaintiffs affirmatively

15  assented.  Plaintiffs acknowledge that "some Plaintiffs may agree with Uber to transfer their cases

16  out of this District," so they should not protest the relief Uber seeks by this Motion.  Plaintiffs'

17  Opposition, ECF No. 341 ("Opp'n") at 16.

18      There is nothing unfair about the Non-Consolidation and Forum Selection Clauses.  They

19  should not be disregarded merely because Plaintiffs argue that these provisions might work some

20  perceived disadvantage on one of the parties.  That could be said of many of these types of contract

21  provisions.  Choice of law clauses, for instance, require the parties to litigate and courts to

22  adjudicate claims under state laws that may be more favorable to one party than would be the law

23  of other states - - *e.g.*, some states recognize emotional stress causes of action, others do not; some

24  states impose caps on punitive damages, others do not.  Those differences can be consequential,

25  even dispositive, yet such clauses are enforced routinely.  Arbitration clauses, which all but

26  foreclose access to the courts and restrict the procedural mechanisms available for seeking legal

27

28

REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION REGARDING THE TERMS OF USE                         Case No. 3:23-md-03084-CRB

redress, are enforced by courts virtually every day.  When parties to arbitration agreements do not comply with them, the courts compel compliance.  The same should happen here.[1]

If anything, the Non-Consolidation and Forum Selection Clauses impose fewer constraints than most of the other types of enforceable clauses.  They may determine the procedure and place of litigation, but neither impairs the ability of Plaintiffs to obtain full and fair relief in court. Plaintiffs' substantive rights have not been diminished by agreeing to forego the *procedural* option of pursuing their claims in a coordinated proceeding.  The Terms of Use allow Plaintiffs to have their day in court - - they simply agreed to do so individually.  Plaintiffs with sexual misconduct complaints often choose, in compliance with the Terms of Use, to pursue their claims on an individual basis and in individual actions.  That is not unfair or unconscionable.

Plaintiffs' objections to online and app-based agreements are of the sort routinely made and just as routinely rejected.  Examples of these cases include enforcing arbitration clauses and forum selection clauses.  Denigrating Uber's motivations for drafting and revising the Terms of Use does not make the contract provisions unenforceable.  And Plaintiffs' other assorted arguments, like the theory that the use of the passive voice renders a contract unenforceable, have no merit.

Accordingly, Uber respectfully requests that the Court grant this Terms of Use Motion and order that the cases subject to this Motion cannot be a part of this MDL proceeding and must either be (1) transferred to the forum in which the alleged incidents occurred, pursuant to the parties' agreed Terms of Use, or (2) dismissed from the MDL pursuant to Rule 12(b)(6) without prejudice to refiling in the contractually specified forum to be litigated on an individual basis.

## **ARGUMENT**

### I.   **The Contract Terms At Issue Are Enforceable and Should Be Enforced**

The thrust of most of Plaintiffs' arguments is that the Non-Consolidation Clause, and even the Forum Selection Clause, are not fair and that Uber drafted the Terms of Use to gain an unjust advantage.  Those are the same arguments that frequently are made by parties trying to avoid

---

[1] For the avoidance of doubt, Uber seeks to enforce the Non-Consolidation and Forum Selection Clauses in the Terms of Use.  Uber does not dispute that these claims are subject to the Sexual Assault Exception to the mandatory Arbitration Clause in the Terms of Use.

arbitration clauses, choice of law provisions, and class action waivers, and should be rejected - - as they most often are - - for the reasons discussed below.

But to start, it should not be overlooked in the flurry of Plaintiffs' arguments that they do not even attempt to establish that the Non-Consolidation and Forum Selection Clauses are unenforceable as a matter of law. Nor do Plaintiffs refute that the Non-Consolidation and Forum Selection Clauses are of a piece with other enforceable contract provisions that circumscribe the procedures and prescribe the substantive law governing disputes between the contracting parties. It is undeniable - - and undenied - - that arbitration clauses, choice of law provisions, and forum selection clauses are routinely upheld and enforced.[2] Though sometimes debated, class action and collective action waivers also are enforced.[3] That is true despite the fact that class actions sometimes are the only practical and economically feasible procedure for claimants to recover relief - - which cannot be said, and has not been said, of the Non-Consolidation and Forum Selection Clauses. *See, e.g.*, *Chavez* v. *Blue Sky Nat. Beverage Co.,* 268 F.R.D. 365, 379 (N.D. Cal. 2010).

Provisions like arbitration clauses are enforceable in part because they need not limit a party's substantive rights. *See Viking River Cruises, Inc.* v. *Moriana*, 596 U.S. 639, 653 (2022) ("[A]n arbitration agreement is 'a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.' An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed." (citations omitted)); *Rojas* v. *Lewis Brisbois Bisgaard & Smith LLP*, 2014 WL 3612568, at \*5 (D. Nev. July 18, 2014) ("Plaintiff did not waive any of her substantive rights in the

_____

[2] *See, e.g.*, *CompuCredit Corp.* v. *Greenwood*, 565 U.S. 95, 101–02 (2012) (enforcing an arbitration provision); *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 17–18 (1972) (enforcing a forum selection clause); *Carnival Cruise Lines, Inc.* v. *Shute*, 499 U.S. 585, 595 (1991) (enforcing a forum selection clause); *Nat'l Equip. Rental, Ltd.* v. *Szukhent*, 375 U.S. 311, 315–16 (1964) (enforcing a forum selection clause); *ABF Cap. Corp.* v. *Berglass*, 130 Cal. App. 4th 825, 834–36 (2005) (enforcing a choice of law provision).

[3] *See, e.g.*, *Benedict* v. *Hewlett-Packard Co.*, 2016 WL 1213985, at \*4 (N.D. Cal. Mar. 29, 2016) (explaining that collective action waivers have been approved in many circuits (collecting cases)); *see also Walthour* v. *Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334–36 (11th Cir. 2014); *Sutherland* v. *Ernst & Young LLP*, 726 F.3d 290, 298–99 (2d Cir. 2013); *Carter* v. *Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins* v. *Labor Ready, Inc.*, 303 F.3d 496, 502–03 (4th Cir. 2002); *Vilches* v. *The Travelers Cos.*, 413 F. App'x 487, 492–94 (3d Cir. 2011).

- 3 -

1    Agreement to Arbitrate.").  The Non-Consolidation and Forum Selection Clauses do not trespass

2    at all on any of Plaintiffs' substantive rights.  The coordination ordered by the JPML pursuant to

3    28 U.S.C. § 1407, relates to the location for centralizing pre-trial proceedings, and thus § 1407 is

4    viewed as "a procedural statute."  *See In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950, 958

5    (N.D. Cal. 2021).

6         As for limiting Plaintiffs' procedural options, the Non-Consolidation and Forum Selection

7    Clauses are less restrictive than, for example, arbitration clauses and class action waivers.  Plaintiffs

8    are not deprived of access to the courts or a public forum to bring their claims.  The Terms of Use

9    are explicit that plaintiffs with sexual assault or sexual harassment claims are not required to

10   arbitrate those claims and may elect to proceed in court - - and that "Uber agrees to honor [that]

11   election."  Declaration of Peter Sauerwein in Support of Uber's Reply ("Sauerwein Reply Decl.")

12   Ex. 4 § 2(b) ("Exceptions to Arbitration" in the Terms of Use, effective date January 18, 2021).[4]

13        The contractual condition that plaintiffs who choose court over arbitration, agree not to

14   bring or participate in a coordinated or consolidated action, has not prevented individual plaintiffs

15   from bringing and litigating individual sexual assault suits against Uber.  There is no suggestion,

16   as sometimes is made in the context of class actions, that any of the Plaintiffs here would not have

17   sued Uber but for the MDL.  Before these cases were coordinated, many Plaintiffs filed individual

18   actions that would have proceeded on an individual basis had coordination not been granted.  Many

19   others have brought and litigated sexual assault claims on an individual basis, as this Court may

20   have been aware when it ordered Uber to produce documents that it had produced "in any other

21   Uber sexual assault cases."  Pretrial Order No. 5, ECF No. 175, at 4.  In fact, counsel with clients

22   in this MDL has filed a separate individual suit on behalf of two individuals in Missouri state court,

23

24

---

25   [4] Plaintiffs' argument that "arbitration clauses are enforced because there is a federal statute saying
     so," Opp'n at 12, only furthers Uber's point: the law - - common, statutory, or otherwise - - has
26   long favored enforcement of contractual provisions that govern procedural mechanisms available
     to the parties in litigation.  *See Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213, 219 (1985) ("The
27   House Report accompanying the [FAA] makes clear that its purpose was to place an arbitration
     agreement 'upon the same footing as other contracts, where it belongs.'")
28

- 4 -

REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION REGARDING THE TERMS OF USE                         Case No. 3:23-md-03084-CRB

and is aggressively litigating it.  *See generally Jane Doe WHBE 302–03* v. *Uber Techs., Inc.*, No. 2322-CC01288 (June 27, 2023, Mo. Cir. Ct.).

In sum, the Non-Consolidation and Forum Selection Clauses are enforceable, should be enforced, and will not impair in any way the ability of these or any other Plaintiffs to seek complete legal redress in court (if they are entitled to it).

## II.   Plaintiffs Assented to the Terms of Use, Which Are Not "Unconscionable"

Plaintiffs seem to contend that they are not bound by the Non-Consolidation Clause, which they claim is unconscionable, and the Forum Selection Clause because they did not assent to the Terms of Use.  Opp'n at 7–8, 10–12.  Again, Plaintiffs repeat arguments frequently made by parties trying to evade their obligations under clickwrap or other online and app-based agreements.  They have no more force here than they do in most cases - - including cases enforcing the Terms of Use.

The Terms of Use are enforceable because users are presented with a pop-up screen notifying them of the existence of or, as relevant here, an update to, the Terms of Use.  That screen has a hyperlink to the Terms of Use, and if they so choose, users can click a checkbox to manifest their assent to the then-current Terms of Use.  If a user does not affirmatively assent by clicking the checkbox, they cannot use the Uber App - - *e.g.*, the app will not allow them to request a ride without assenting.  *See* Declaration of Peter Sauerwein in Support of Uber's Motion, ECF No. 257-2, ("Sauerwein Mot. Decl.") ¶ 10.  This is why courts have enforced these Terms of Use.[5]

Such agreements, where users check a box to affirmatively "confirm their assent to the agreement's terms," are ubiquitous in the digital economy and are enforced as a matter of course. *See Sellers* v. *JustAnswer LLC*, 73 Cal. App. 5th 444, 470 (2021) (citation omitted); *see also*

---

[5] *See*, *e.g.*, *Brooks* v. *Yang*, 190 N.Y.S.3d 309, 310–11 (N.Y. App. Div. 2023); *Wu* v. *Uber Techs., Inc.*, 186 N.Y.S.3d 500, 540 (N.Y. Sup. Ct. 2022), *aff'd*, 197 N.Y.S.3d 1 (N.Y. App. Div. 2023); *Hamilton* v. *Uber Techs. Inc.*, 2023 WL 5769500, at *4–5 (S.D.N.Y. Sept. 7, 2023); *Williams* v. *Ysabel*, 2023 WL 5768422, at *4 (N.J. Super. Ct. App. Div. Sept. 7, 2023); *Turner* v. *Uber Techs., Inc.*, 2023 Cal. Super. LEXIS 62376, at *4 (Super. Ct. L.A. Cnty. Aug. 24, 2023); *Cordoba* v. *Uber Techs., Inc.*, 2023 Cal. Super. LEXIS 35824, *7–8 (Super. Ct. L.A. Cnty. May 30, 2023); *Currie* v. *Uber Techs., Inc.*, 2023 Cal. Super. LEXIS 55782, at *8–9 (Super. Ct. L.A. Cnty. Feb. 7, 2023); *Torres* v. *De Nardo et al.*, 2022 Cal. Super. LEXIS 87342, at *7 (Super. Ct. L.A. Cnty. Dec. 20, 2022); *see also Net2Phone, Inc.* v. *Super. Ct.*, 109 Cal. App. 4th 583, 588 (2003) ("[There is] no unfairness in [the] requirement that certain contractual terms must be accessed via hyperlink, a common practice in Internet business.").

REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION REGARDING THE TERMS OF USE                    Case No. 3:23-md-03084-CRB

*Koresko* v. *RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162–63 (E.D. Cal. 2003) ("When Plaintiff clicked the click-box on the screen marked, 'I agree' on Defendant's website, he expressly agreed to litigate any claims . . . exclusively in the State of Washington."); *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'").

### A.   Plaintiffs Here Assented to the Terms of Use

Plaintiffs do not dispute that Uber has established assent to the applicable Terms of Use by at least six of the Plaintiffs subject to this Motion.  Opp'n at 7.[6]  As for the twenty others, Plaintiffs make several arguments for avoiding the consequences of their active and affirmative assent.[7]  They argue that they are not bound by the Non-Consolidation and Forum Selection Clauses because with respect to the versions of these Terms of Use submitted with this Motion, they claim that they did not assent to those versions until after they initiated their lawsuits.  Opp'n at 7–8.  What they fail to say, however, is that *prior to* filing suit, each assented to a version of the Terms of Use containing materially identical Non-Consolidation and Forum Selection Clauses.  As set forth in the Reply Declaration of Peter Sauerwein, the Terms of Use these Plaintiffs assented to before they filed suit, contain Non-Consolidation and Forum Selection Clauses.  Sauerwein Reply Decl. at ¶ 11.  While it is irrelevant as a legal matter whether Plaintiffs assented before or after commencing litigation, the evidence establishes that each of these Plaintiffs assented *before* and after.[8]

Plaintiffs' other arguments are no more effective:

---

[6] The Opposition refers to five Plaintiffs that Uber has demonstrated assented to the operative Terms of Use.  However, Plaintiffs' Exhibit G, ECF No. 341-8, identifies six Plaintiffs whose alleged incident occurred after January 18, 2021 (which date marks the first time the Terms of Use included both the forum selection and non-consolidation clauses).  There is no explanation for the reference to five in the brief but six in Exhibit G; we presume it was a typographical error.

[7] Uber has determined that three of the Plaintiffs previously subject to this Motion have differing fact patterns than the other 26.  These three Plaintiffs are Jane Doe LS 37, Jane Doe LS 90, and Jane Doe LS 251.  The total number of Plaintiffs subject to this Motion is therefore 26, while Uber continues to reserve all rights to move with respect to those three and other Plaintiffs.  The remaining 26 Plaintiffs subject to this Motion are individuals who submitted fact sheets and ride receipt information in JCCP No. 5188 prior to the filing of this Motion.

[8] The Sauerwein Reply Declaration also sets forth the dates on which each of the Plaintiffs subject to this Motion assented to versions of the Terms of Use after January 18, 2021, all of which contained Non-Consolidation and Forum Selection Clauses.

REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION REGARDING THE TERMS OF USE                    Case No. 3:23-md-03084-CRB

1.     Plaintiffs argue that Uber has not established the reasons how and why Plaintiffs assented to the Terms of Use. Opp'n at 8. The law does not require an explanation for a contracting party's *subjective* reasons for entering a contract. What is required to prove the formation of an enforceable contract is the *objective* manifestation of intent to be bound. *See* Restatement (Second) of Contracts § 17(1) (Am. L. Inst. 1981) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."); *Koepping* v. *Tri-Cnty. Metro. Transp. Dist. of Or.*, 120 F.3d 998, 1002 (9th Cir. 1997) ("[T]he objective theory of contract interpretation . . . requires a court to look not at the parties' subjective understandings, but at their communications and overt acts."). In the case of a clickwrap agreement, the objective manifestation of intent is the affirmative act of clicking on the checkbox. *Oberstein* v. *Live Nation Ent., Inc.*, 60 F.4th 505, 513–14 (9th Cir. 2023) (Clickwrap agreements, "in which . . . users must check a box explicitly stating 'I agree' in order to proceed" represent "the clearest manifestation of assent and is certainly the easiest method of ensuring the terms are agreed to." (internal citations omitted)); *Meyer*, 868 F.3d at 75. In the case of these Terms of Use, each Plaintiff clicked the checkbox immediately next to the bolded words: "**By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice.**" Sauerwein Mot. Decl. Ex. B.

2.     Plaintiffs argue that Uber has not established that any Plaintiff did more than "access" the Uber App to retrieve a ride receipt relevant to this litigation. Opp'n at 7–8. That is not correct. The evidence shows that each of the 26 Plaintiffs *used* the Uber App to request a ride or order UberEATS on multiple occasions in the period between their alleged incidents and the commencement of their lawsuits. Sauerwein Reply Decl. Ex. 1.

3.     Plaintiffs argue that Uber has not established that some of the Plaintiffs assented to the applicable Terms of Use prior to the date of their alleged incidents. Opp'n at 8. But the cases applying the principle that contracts governing dispute resolution procedures can be enforced even if the dispute arose or claim accrued prior to the date of the agreement are well established. *See, e.g.*, *Zink* v. *Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 331–32 (10th Cir. 1993) (holding that an arbitration clause entered into in 1982 including language applying to "any controversy . . . arising out of [the parties'] business or this agreement" included claims arising out

- 7 -

of conduct in 1980); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1223–24 (N.D. Cal. 2007) (holding that a 2005 arbitration clause with language applying to claims arising from "any other services provided by or on behalf of KPMG" applied to claims arising from pre-2005 conduct); *Salgado* v. *Carrows Rests., Inc.*, 33 Cal. App. 5th 356, 361 (2019) ("[A]n arbitration agreement may be applied retroactively to transactions which occurred prior to execution of the arbitration agreement." (alteration in original) (citation omitted)).[9]

Here, the Forum Selection Clause is explicit.  It states that any sexual assault or harassment claim "*whether before or after the date you agreed to the Terms*," shall be brought in the state in which the incident occurred.  Sauerwein Reply Decl. Ex. 4 § 7 (emphasis added).  The Non-Consolidation Clause, which has no temporal limitation of its own and applies to "your use of the Services," operates as an exception (and refers back) to the claims described in the Arbitration Agreement.  *Id.* § 2(b).  The Arbitration Clause applies to, among other past claims, "personal injury [claims] *that you allege occurred . . . or accrued before . . . the date you agreed to the Terms*."  *Id.* § 2(a) (emphasis added).  Simply put, these provisions are broad and apply to claims that arise from prior conduct, including Plaintiffs' claims here.

4.     Plaintiffs argue that the Non-Consolidation and Forum Selection Clauses do not apply because one or both of those provisions (depending on which Plaintiff) were not contained in the Terms of Use in place prior to the alleged incidents.  Opp'n at 8.  This argument fails for the

---

[9] *See also*, *e.g.*, *Levin* v. *Alms & Assocs., Inc.*, 634 F.3d 260, 269 (4th Cir. 2011) (holding that an agreement executed in 2007 containing an arbitration clause with language applying to "any dispute" covered claims arising out of conduct occurring before execution of the contract); *Watson Wyatt & Co.* v. *SBC Holdings, Inc.*, 513 F.3d 646, 648, 650–52 (6th Cir. 2008) (holding that an agreement executed in 2002 containing an arbitration clause applying to "any dispute or claim arising from or in connection with this agreement or the services provided" covered claims arising out of conduct occurring in 2001); *Coenen* v. *R. W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972) (holding an arbitration clause applicable to the sale of shares made before agreement to the clause); *Nicosia* v. *Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d Cir. 2020) (enforcing arbitration clause that was assented to after the transactions giving rise to the claims in the case); *Webb* v. *Auto Knight Motor Club, Inc.*, 2023 WL 6058492, at *2 (9th Cir. Sept. 18, 2023) (noting that parties can assent to arbitration clauses covering conduct that occured before assent); *Desert Outdoor Advert.* v. *Super. Ct.*, 196 Cal. App. 4th 866, 869, 877 (2011) (holding that an agreement entered into in 2006 containing an arbitration clause with language applying to "any . . . dispute of any kind whatsoever" applied to claims arising out of conduct as early as 2002).

same reasons as Plaintiffs' previous argument: Plaintiffs' agreement to be bound by the Non-Consolidation and Forum Selection Clauses following their incidents is no less enforceable than it would have been had they assented prior to their incidents. *See Trudeau* v. *Google LLC*, 349 F. Supp. 3d 869, 878 (N.D. Cal. 2018) (enforcing an arbitration agreement assented to after the claim accrued because that provision, "by its plain terms, covers claims that accrued prior to enactment"), *aff'd*, 816 F. App'x 68 (9th Cir. 2020).

## B.      The Non-Consolidation Clause Is Not Unconscionable

Plaintiffs argue that the Non-Consolidation Clause is "unconscionable." Opp'n at 10. What they really mean is that they want to participate in an MDL, but agreed not to. That probably explains why this argument is not made with much analytic or doctrinal rigor. Voiding the Non-Consolidation Clause requires a showing of both procedural unconscionability and substantive unconscionability. *See Marin Storage & Trucking, Inc.* v. *Benco Contracting and Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1053 (2001). Plaintiffs have shown neither.[10]

Plaintiffs claim they had no "meaningful choice" in agreeing to be bound by the Non-Consolidation Clause. Typical of challenges to clickwrap agreements, Plaintiffs argue that the Terms of Use are a "contract of adhesion presented on a take-it-or-leave-it basis." *See* Opp'n at 11. But calling a clickwrap agreement a contract of adhesion is not a bar to the contract's enforceability. *See, e.g.*, *Moretti* v. *Hertz Corp.*, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014); *Bell* v. *Uber Techs., Inc.*, 2023 Cal. Super. LEXIS 90782, at *10–13 (Super. Ct. L.A. Cnty. Nov. 28, 2023) (enforcing the arbitration agreement contained in Uber's clickwrap Terms of Use despite finding that the Terms were "adhesive in nature"). As shown above, *supra* n.5, courts across the country have held these Terms of Use to be enforceable. More generally, California courts have found that claims that a contract is one of "adhesion" are insufficient to establish unconscionability. *See Serafin* v. *Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 179 (2015)

---

[10] Procedural unconscionability is concerned with the manner in which the contract is formed, "focusing on oppression or surprise due to unequal bargaining power." *Tompkins* v. *23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016). Substantive unconscionability, on the other hand, is concerned with the fairness of the terms themselves, and whether they espouse "overly harsh or one-sided results." *Id.*

- 9 -

1   ("[T]he fact that the arbitration agreement is an adhesion contract does not render it automatically

2   unenforceable as unconscionable."); *see also Bielski* v. *Coinbase, Inc.*, 87 F.4th 1003, 1014–15 (9th

3   Cir. 2023) (rejecting plaintiff's argument that an adhesion contract was unconscionable because

4   plaintiff failed to establish the element of substantive unconscionability).

5           Plaintiffs recite the buzz-words that the Terms of Use were "the product of 'deceptive or

6   coercive bargaining tactics,'" yet put forth no supporting facts or on-point case law.  Opp'n at 11

7   (citation omitted).  Nothing compelled or coerced Plaintiffs into assenting to the Terms of Use.

8   Plaintiffs were free to decline to accept the Terms of Use (and updated versions) and choose not to

9   use the Uber App, especially as there are many alternatives for arranging transportation.  *See Gentry*

10  v. *Super. Ct.*, 42 Cal. 4th 443, 470 (2007) ("[F]reedom to choose whether or not to enter into a

11  contract of adhesion is a factor weighing against a finding of procedural unconscionability."),

12  *abrogated on other grounds*, *Iskanian* v. *CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 360 (2014).

13          As for substantive unconscionability, Plaintiffs barely make the effort.  Plaintiffs complain

14  that adhering to the Non-Consolidation Clause would "deprive Plaintiffs of the efficiency benefits

15  of the MDL . . . ."  Opp'n at 11.  There is no precedent for disregarding an agreement establishing

16  the terms and conditions of dispute resolution because other means might be more efficient.  When

17  the agreement at issue does not affect, much less impinge on, the parties' substantive legal rights,

18  it would make no sense to find it substantively unconscionable.

19          Accordingly, the Non-Consolidation Clause is not unconscionable and Plaintiffs' *ex post*

20  preferences cannot override the parties' *ex ante* agreement in the Terms of Use.  *See, e.g.*, *Grand*

21  *Prospect Partners, L.P.* v. *Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347 (2005) ("T]he

22  determination of unconscionability is not based on hindsight in light of subsequent events.").

23      **III.**    **Plaintiffs' Other Arguments Are Meritless**

24          **A.**    **These Contractual Provisions Should Be Enforced**

25          Plaintiffs try to invoke JPML orders (from this and other cases) and Section 1407 to suggest

26  that this Court, presiding over a series of individual actions, is not able to enforce the Non-

27  Consolidation and Forum Selection Clauses in those individual actions.  Opp'n at 12–14.  But, the

28  JPML expressly reserved for this Court the issue of the enforceability of the Terms of Use, stating

- 10 -

1   that, "Centralization thus will allow for streamlined briefing on this common issue."  Transfer

2   Order, ECF No. 1, at 3.  The question presented by this Motion is not about the JPML's authority

3   to make determinations pursuant to Section 1407, but whether these Plaintiffs in this litigation

4   agreed with Uber not to bring or participate in a coordinated proceeding like an MDL.  That is the

5   issue left for this Court to decide.[11]

6          Plaintiffs' reliance on  *In re: Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.* is

7   misplaced.  There, the JPML determined that a forum selection clause on its own does not preclude

8   the JPML from transferring a case to an MDL court.  *In re: Park W. Galleries, Inc., Mktg. & Sales*

9   *Pracs. Litig.*, 655 F. Supp. 2d 1378, 1379 (J.P.M.L. 2009).  That is not the issue here.  Here,

10  Plaintiffs agreed to not seek or participate in a coordinated proceeding and, therefore, the object of

11  this Motion is to enforce that contract - - specifically, the Non-Consolidation Clause.  As for the

12  forum selection clause in *In re: Park W. Galleries*, the JPML acknowledged that its decision "in no

13  way preclude[d] . . . enforcement of the forum selection clauses" in a motion brought in the

14  transferee court.  *Id.* at 1379.

15         Plaintiffs' reliance on *Atlantic Marine* also is misplaced.  First, *Atlantic Marine*'s holding

16  was limited explicitly to the particular venue statute - - 28 U.S.C. § 1404(a) - - which is invoked

17  when enforcing a forum selection clause.  *Atl. Marine Const. Co.* v. *U.S. Dist. Ct.*, 571 U.S. 49, 52

18  (2013) ("The question in this case concerns the procedure that is available for a defendant in a civil

19  case who seeks to enforce a forum-selection clause.").  In that case, the Supreme Court determined

20  that a Rule 12(b)(3) motion to dismiss based on 28 U.S.C. § 1406 was not an appropriate procedure

21  by which to enforce a forum selection clause.  *Id.*  Uber has brought no such motion here; rather,

22  Uber is seeking an order that each of the cases subject to the Non-Consolidation and Forum

23  Selection Clauses should be ordered to be litigated individually, and should be either (1) transferred

24  to the proper forums pursuant to the parties' agreed contract, or (2) dismissed without prejudice to

25  refiling in the contractually specified forum to be litigated on an individual basis.

26

27  _____

    [11] This Motion also is not about counsel's ability to represent multiple clients or the Court's ability
28  to manage its individual docket.  *But see* Opp'n at 11, 14.  This Motion is about whether Plaintiffs
    bound themselves by contract not to participate in a coordinated proceeding.

1    That is what is contemplated by *Atlantic Marine*, which does not foreclose the enforcement

2  of forum selection clauses or similar contractual obligations as Plaintiffs seem to suggest.  Rather,

3  the Supreme Court held that a forum selection clause may be enforced through a transfer motion

4  and instructed courts that when such a clause is present, they "should transfer the case" absent

5  "extraordinary circumstances."   *Id.*   Here, Uber requests that the Court enforce the parties'

6  contractual provisions using the same remedy - - transfer pursuant to the parties' contract - - that

7  the Supreme Court endorsed in *Atlantic Marine*.   As the Supreme Court explained, proper

8  application of transfer analysis "requires that a forum-selection clause be 'given controlling weight

9  in all but the most exceptional cases.'"  *Id.* at 59–60 (citation omitted).  This is because there is

10  already a strong public interest that is furthered by enforcing such a claim.  *Id.* at 63 ("The

11  'enforcement of valid forum-selection clauses . . . protects their legitimate expectations and furthers

12  vital interests of the justice system.'" (citation omitted)).[12]

13    And as Uber has shown, other public interest factors also weigh in favor of transferring

14  these cases to the federal courts where the alleged incidents took place.  In addition to the reasons

15  set forth in this Motion, the courts local to the alleged incidents have a strong public interest in

16  protecting their citizens from the serious activities alleged to have taken place there. There are no

17  California public interests here - - certainly not the kind of "extraordinary circumstances" to which

18  the Supreme Court referred in *Atlantic Marine* as required to warrant disregard of the parties'

---

[12] The Supreme Court in *Atlantic Marine* did not foreclose the possibility of enforcing a forum-selection clause through a motion to dismiss; on the contrary, the Court expressly declined to decide that issue.  *Id.* at 61.  Since *Atlantic Marine*, many courts, including one in this district, have held that forum selection clauses may be enforced through such a procedure.  *See, e.g.*, *RJ* v. *Cigna Health & Life Ins. Co.*, 625 F. Supp. 3d 951, 969 (N.D. Cal. 2022) ("Consistent with the First, Third and Sixth Circuit and the district court decisions cited above, this Court concludes that a Rule 12(b)(6) motion is an acceptable means of enforcing a forum selection clause."); *Verifone, Inc.* v. *A CAB, LLC*, 2016 WL 4480686 (D. Nev. Aug. 24, 2016) (dismissing certain counterclaims in light of a forum selection clause); *Claudio-De Leon* v. *Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 n.3 (1st Cir. 2014) ("Absent a clear statement from the Supreme Court to the contrary, the use of Rule 12(b)(6) to evaluate forum selection clauses is still permissible in this Circuit."); *Smith* v. *Aegon Cos. Pension Plan*, 769 F.3d 922, 934 (6th Cir. 2014) (affirming enforcement of a forum selection clause through dismissal); *Podesta* v. *Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017) (finding enforcement of a forum selection clause through dismissal appropriate). Under these authorities, it is appropriate for this Court to order the Plaintiffs' actions dismissed with a direction that they may be re-filed in the contractually-specified forum on an individual basis only.

1   contractual agreement.  Thus, there is no basis to permit these Plaintiffs to participate in a

2   coordinated proceeding in an improper forum in violation of their contractual agreements.  *Atl.*

3   *Marine*, 571 U.S. at 52.  The only case Plaintiffs cite with respect to application of public interest

4   factors is easily distinguished: *In re Vistaprint Ltd.* did not involve a forum selection clause and

5   thus the court did not apply the kind of weight afforded to such clauses that *Atlantic Marine*

6   requires.  *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344–45 (Fed. Cir. 2010).

7       Finally, Plaintiffs appear to concede that the parties can agree to transfer cases out of the

8   MDL.  Opp'n at 16 ("[S]ome Plaintiffs may agree with Uber to transfer their cases out of this

9   District.").[13]  It would be nonsensical if the parties could later agree to a transfer of the cases out of

10  the MDL, but the parties' *ex ante* contractual agreement on how and where to litigate potential

11  actions were somehow unenforceable.

12          **B.      The Passive Voice Does Not Render Contracts Unenforceable**

13      Plaintiffs argue that the passive voice in the Non-Consolidation Clause renders it "(at most)

14  an aspiration" and unenforceable.  Opp'n at 9.  There is no such contract formation or interpretation

15  doctrine or precedent supporting Plaintiffs' arguments.  In any case, the Non-Consolidation Clause

16  is far from passive or aspirational.  It is part of the section of the Terms of Use excepting sexual

17  assault and harassment claimants from the arbitration provision and states in forceful, declarative

18  and prohibitory language that "<u>you cannot bring</u> such claims" in any collective, coordinated or

19  consolidated action, and that this provision "<u>precludes you</u> from bringing claim as or participating

20  in" any collective, coordinated or consolidated action.  That is not merely an aspiration.  It is a

21  contractual dictate.  Were it even necessary to resort to case law, courts regularly enforce contracts

22  with "passive" language.  *See Greene* v. *Dell Fin. Servs., LLC*, 2022 WL 260821, at *4 (D.N.H.

23  Jan. 27, 2022) ("[M]any [contracts] come with . . . generous servings of passive voice.").

24

25

26

---

27  [13] Plaintiffs claim that they are participating in the MDL only because the JPML ordered that they
    must.  Opp'n at 9.  But this ignores the reality that after losing their *forum non conveniens* argument
28  in the JCCP, these Plaintiffs chose to file new actions in federal court rather than in state court.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    Plaintiffs Misread the Terms of Use

With respect to selection of forum, Plaintiffs argue that the phrase "Uber agrees to honor your election" with regard to sexual assault plaintiffs who elect to proceed in court, rather than in arbitration, means that Uber agreed to honor a plaintiff's selection of *any* court in *any* forum.  Opp'n at 16–17.  But that phrase is in Section 2(b), which exempts from arbitration any sexual assault plaintiff who elects to sue Uber in court.  The referenced "election" is the election by a plaintiff to avail themselves of the arbitration exception.  Section 2(b) is not a forum selection provision.  The forum selection provision is in Section 7, which states that sexual assault or harassment claims "shall be brought exclusively in the state or federal courts in the State in which the incident or accident occurred."  Sauerwein Reply Decl. Ex 4 § 7 ("Other Provisions" in the Terms of Use, effective date January 18, 2021).

Reading Section 2(b) to permit Plaintiffs to sue in any court would nullify Section 7.  It is fundamental contract interpretation law that contracts must be construed as a whole, taking into account and giving meaning to all the provisions of the contract.  *See, e.g.*, *Pinel* v. *Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 943 (N.D. Cal. 2011) ("Courts must interpret contractual language in a manner that gives force and effect to every provision, and not in a way that renders some clauses nugatory, inoperative or meaningless." (alterations adopted) (citation omitted)).

This is not a *post hoc* litigation position.  In May 2018, Uber stated publicly: "Survivors will be free to choose to resolve their individual claims in the venue they prefer: in a mediation where they can choose confidentiality; in arbitration, where they can choose to maintain their privacy while pursuing their case; or in open court."[14]  *See* Tony West, *Turning the lights on*, UBER NEWSROOM (May 15, 2018), https://www.uber.com/newsroom/turning-the-lights-on/.  Thereafter, contractual provisions were added to the Terms of Use (such as in the January 18, 2021 version) memorializing this principle.  The "election" does not refer to a geographic choice, but to the choice of the type of legal proceeding: mediation, arbitration, or court.

---

[14] Plaintiffs quote this exact statement, Opp'n at 4, but leave out the part of the sentence making clear that Uber would allow plaintiffs the election of mediation, arbitration, or litigation - - not the election of suing Uber in any court.

**IV.    These Cases Should Not Participate In This MDL**

Plaintiffs appear to argue that there is no relief for Plaintiffs' violations of their contractual duties.  Opp'n at 14–15.  This is contrary to the basic powers of the courts to enforce the terms of a contract when a party has breached those terms.  Restatement (Second) of Contracts § 357(1) ("[S]pecific performance of a contract duty will be granted in the discretion of the court against a party who has committed or is threatening to commit a breach of the duty."); *see also, e.g.*, *Hawaiian Paradise Park Corp.* v. *Friendly Broad. Co.*, 414 F.2d 750, 758 (9th Cir. 1969) ("Where there has been a threatened or actual breach of a contract of sale, the determination of whether specific performance should be granted rests within the sound discretion of the trial court.").

This Court has the authority to enforce the Non-Consolidation and Forum Selection Clauses and grant relief for the violation of the Terms of Use.  Each of the 26 Plaintiffs here brought suit in a forum other than where the alleged incident occurred and has participated in this MDL, contrary to the Forum Selection and Non-Consolidation Clauses.  The  Court consequently has authority to enforce those contractual terms and remedy the contractual breaches by ordering that the Plaintiffs subject to this Motion shall not participate in this MDL and that their cases shall proceed on an individual basis, and further order that their cases be either (a) transferred pursuant to the parties' agreed Forum Selection Clause in the Terms of Use to the contractually-specified forum in which the alleged incidents occurred, or (b) dismissed pursuant to Rule 12(b)(6) without prejudice to refiling in the contractually-specified forum to be litigated on an individual basis (*see supra*, n.12).

**CONCLUSION**

For the foregoing reasons, Uber respectfully requests that the Court grant its Motion Regarding the Terms of Use and, pursuant to the Non-Consolidation and Forum Selection Clauses, order that the cases listed in the chart accompanying this Motion not proceed as part of the MDL.

1

2

DATED: April 2, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

3

4

By: */s/ Robert Atkins*
    ROBERT ATKINS
    RANDALL S. LUSKEY

5

6

7

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN FURTHER SUPPORT OF DEFENDANTS'
MOTION REGARDING THE TERMS OF USE