

**Sent from:** New York Office

April 12, 2024

<u>Via ECF</u>
Magistrate Judge Lisa J. Cisneros
Northern District of California
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102

    Re: *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*
        Case No. 3:23-md-03084-CRB

Dear Judge Cisneros:

    Pursuant to Pretrial Order No. 8 ("PTO No. 8") (ECF No. 323) and as directed by this Court in Pretrial Order No. 9 ("PTO No. 9") (ECF No. 345), the Parties respectfully submit this joint letter regarding the parties' respective disagreements concerning the remaining issues for the proposed Electronically Stored Information Order ("ESI Order"). The parties agree that each parties' portion, exclusive of this opening paragraph and headings, complies with the Court's 2.5-page limit. Plaintiffs' Expert Doug Forrest's Declaration is attached hereto as <u>Exhibit A</u>. Plaintiffs' Proposal is attached hereto as <u>Exhibit B</u>. Roopal P. Luhana's Declaration is attached hereto as <u>Exhibit C</u>. For Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively "Uber"), William Anderson's Declaration is attached hereto as <u>Exhibit D</u>, Uber's Expert Philip Favro's Declaration is attached hereto as <u>Exhibit E</u> and Uber's Expert Jamie Brown's Declaration is attached hereto as <u>Exhibit F</u>. The parties' email thread dating March 21 to March 24, 2024 is attached hereto as <u>Exhibit G</u>. Plaintiffs' questions for Uber are attached hereto as <u>Exhibit H</u>. The parties' email thread dating March 29, 2024 to April 11, 2024 is attached hereto as <u>Exhibit I</u>.

### I. Cloud-Stored Documents and Related Hyperlinks

#### A. Plaintiffs' Position

    Contemporaneous versions of hyperlinked documents essentially show "who knew what, when." If contemporaneous versions are not produced, this important evidence will be lost. In this case, if Uber produces only the latest version of a hyperlinked document (the version at the time of collection) Plaintiffs will be deprived of over a decade of information regarding edits, comments, and information about who had access to, read, or modified the document. Plainly put,

**New York Office:**
600 Third Ave., 12th Floor
New York, NY 10016

**Pennsylvania Office:**
615 Iron City Drive
Pittsburgh, PA 15205

**West Virginia Office:**
3200 Main St.
Weirton, WV 26062

Chaffin Luhana LLP • Toll Free: (888) 480-1123 • Fax: (888) 499-1123 • ChaffinLuhana.com

pursuant to Rule 26, Uber was required to preserve and Plaintiffs are entitled to receive Uber's responsive emails and documents attached by hyperlink in those emails. Further, Plaintiffs are entitled to receive those documents in a way that preserves the family relationship of the emails and their linked attachments.

Uber's emails exist in two buckets: (1) "live" or undeleted Google emails in Uber's workspace, i.e., emails within the last six months and going forward which have not been deleted under Uber's retention policy ("Active Google Email"); and (2) deleted emails no longer existing in Uber's workspace but preserved in Google Vault ("Google Vault Email"). The documents attached to email by hyperlink also exist in two buckets: (a) "live" or undeleted documents still existing in Uber's Google Drive ("Google Drive Documents"); and (b) documents preserved in Uber's Google Vault ("Google Vault Documents").

When a document is exported from Google Vault, the *current* version of that document is exported. Ex. A at ¶ 16. Metadata from the document can be compared to the corresponding email date to determine whether the current version of the document is the version that was contemporaneously linked to the corresponding email. *Id.* at ¶ 21-22. Uber has already done this. Based on Uber's estimates from a sample set, 7% of its emails contain hyperlinks to Google Drive documents and the average is two hyperlinked documents per email. Ex. I at 5. Approximately 20% of the hyperlinks in Uber's emails would pull the version contemporaneous to the time the email was sent and the document was linked. *Id*. The parties have no dispute with respect to the process for producing those documents. However, the remaining 80% would pull a version that is not in an identical state to the time it was linked and sent. *Id*. Doing the math on a per million basis works out to 140,000 links per million emails, only 28,000 of which would link to contemporaneous documents. Ex. A at ¶ 55-57. This leaves 80,000 links per million emails that require a process for retrieving the contemporaneous version of the linked documents. *Id*.

The parties' dispute is over the remaining estimated 80% of emails containing hyperlinks where the link would not pull the document as it existed at the time that the link was included in the respective email. Per Uber's representations, the sample set used to determine these percentages contained tens of millions of emails. Ex. I at 5. As such, the number of documents in dispute is substantial. Uber claims that there is no way to automate collection of those documents from Google Vault, but Plaintiffs have identified a process for automation that has passed Proof of Concept testing.

Uber's proposal is to manually pull the contemporaneous version of hyperlinked documents from Google Vault, but only after the Plaintiffs have made a specific request for the contemporaneous version, and only if Uber deems, after a unilateral review based on criteria that it has not disclosed, that Plaintiffs' need for the contemporaneous version is proportionate to Uber's burden in retrieving it. Plaintiffs understand that Uber would use the Google Vault Search interface to manually retrieve the correct version, however, despite Plaintiffs' requests that it do so, Uber has not specified, in writing or otherwise, precisely what those steps are or how long it would take someone experienced in their process to retrieve a contemporaneous version.[1]

Uber's proposal is unworkable. It seeks to shift the burden it purposely created when Uber chose its document storage system to Plaintiffs and would force the parties to meet and confer over

---

[1] In PTO No. 9, this Court instructed both parties to investigate a process for production of contemporaneous hyperlinked documents. Uber, on the other hand, appears not to have done any additional investigation despite the Court's order and instead has maintained the same position it took before the Court's Order. Moreover, Uber has thwarted Plaintiffs' efforts to work cooperatively to reach a solution. For example, Plaintiffs submitted written questions to Uber seeking information that would allow Plaintiffs to evaluate a potential solution that would work for both parties. See Ex. H at 2-3; Ex. I at 11-12 . However, Uber refused to provide meaningful information in response to those questions.

*every* request for *every* document.[2] This would significantly delay the discovery process, derail the Court's discovery schedule, and create continual disputes. Stated simply, Uber's proposal is untenable and highly prejudicial to Plaintiffs, particularly considering that large numbers of otherwise responsive documents have already been destroyed. ECF No. 261 at 1, 9-11.

While Uber's only position is that there is no solution, Plaintiffs have put forth a practical and feasible system to obtain these highly relevant and critical documents.[3] Plaintiffs suggested alternative has three components. First, to collect Active Google Email, Uber should use Metaspike's *Forensic Email Collector* ("FEC"), a program which can retrieve active Google email and the contemporaneous versions of linked Google Drive documents.[4] Second, to collect documents from Google Drive documents that are linked in Google emails that have been deleted from Google email, Plaintiffs propose that these contemporaneous documents be retrieved programmatically using the Google Drive API.[5] Plaintiffs have created a proof of concept ("POC") program, described in more detail in the Forrest Declaration, Ex. A at ¶ 40, demonstrates that such a program can be written. ILS is continuing the development of this program to make it production-ready.[6] Third, for any documents which cannot be retrieved programmatically, Uber would use the manual method that Uber proposes (once it has been sufficiently described in writing). The number of documents to be retrieved this way should be significantly and substantially reduced after using the processes described in steps 1 and 2, above.

Uber's criticisms and objections to Plaintiffs Proposed Methodology are unfounded. First, ILS's POC demonstrates that such a program can be written. Ex. A at ¶ 40. Second, with respect to document links in undeleted emails, there already is such a program, viz. FEC. *Id.* at ¶¶ 24, 29, 41, 72-76. Third, ILS is continuing the development of this program to make it production ready, again just to demonstrate that a production-ready version could be developed quickly. *Id.* at ¶ 42. Fourth, both the POC and the production ready version handle Uber's enumerated failure points through standard error capture and logging without manual intervention. *Id.* at ¶ 43. Fifth, capturing revision id data, which the program would have at the time of retrieval, as metadata fields which would be included in a load ready production is a trivial task. *Id.* at ¶ 44.

Plaintiffs' proposal would expedite the process of Uber's document production exponentially, conserving resources and saving costs for both the parties and the Court. Uber's proposal would be costly in terms of time and resources and does not comport with the Court's expectations of efficiency in the discovery process for this litigation. Therefore, the Court should adopt Plaintiffs' proposal.

---

[2] But Uber cannot claim burden and logistical difficulty when it is due to Uber's own recordkeeping which conceals rather than discloses relevant records, makes it unduly difficult, and renders the production of documents burdensome and costly. *Wesley v. Muhammad*, 05-cv-5833, 2008 WL 4386871, at *5 (S.D.N.Y. Sept. 17, 2008).

[3] With respect to feasibility, this case has specific and important differences from *In re: Meta Pixel Healthcare Litigation*, highlighted by this Court in PTO No. 9. The complexities in the specific systems and the issues raised by *Meta Pixel* declarants are not present or applicable here. *See* Ex. A at ¶¶ 98-107 (explaining the differences between MDL 3084 and *Meta Pixel*).

[4] FEC is a proven program which has been used for years by numerous organizations and governmental entities, including Paul Weiss, counsel for Uber in this litigation. Ex. A. at ¶ 74.

[5] As explained in Exhibit A, because these emails have been deleted, the linked documents cannot be retrieved using FEC. Ex. A at ¶ 25.

[6] Plaintiffs are unable to create a production-ready program because they do not have access to Uber's file storage systems. Thus, if the Court accepts Plaintiffs' proposal, Plaintiffs respectfully suggest that the Court order the parties to mutually agree to neutral third-party programmer who will be given access to Uber's file storage systems and work with the parties to implement the methodology that Plaintiffs propose.

### B. Defendants' Position

Uber requests that the Court adopt Uber's proposal that it use reasonable efforts to create a metadata relationship between documents with hyperlinks and the hyperlinked material and permit Plaintiffs, on a case-by-case basis, to request that Uber identify and produce specific documents corresponding to a Google Drive hyperlink. This proposal is similar to what other courts that have looked at this issue in depth have ordered.[7] And for good reason—it is the only technologically feasible solution currently available. Those courts' decisions considered similar issues and arguments by the parties and their experts (including Mr. Forrest, proposing broadly the same "solution") and multiple of those cases involved Google Workspace, including a case in which Google was among the defendants that successfully proposed the same solution Uber has proposed here.

In response to PTO 9, Uber expended hundreds of person-hours investigating whether Google Vault's API, macro recorders, Metaspike's FEC, or other programs could be useful to automate the process of collecting contemporaneous versions of hyperlinked documents. That assessment included numerous meetings for many hours with: (1) Uber's internal eDiscovery team who have years of experience using Google Workspace and have practical experience dealing with the issue of collecting contemporaneous "versions" of hyperlinked documents; (2) Uber's external eDiscovery vendor who has experience with these systems and with addressing this particular collection issue; (3) Uber's experts who have experience and expertise addressing this issue; (4) the founder of Metaspike who confirmed that FEC does not connect to Google Vault; and (5) Google subject-matter experts who acknowledged the problem and that a solution does not currently exist. Ex. D at ¶ 5; Ex. F at ¶ 3. Uber walked Plaintiffs through the specific steps of the collection process, preventing automation, outlined in the Anderson Declaration. Ex. D at ¶¶ 18–46. On this exhaustive basis, Uber submits to the Court that no technical, scalable solution is available.[8] Ex. D at ¶¶ 5, 17, 46, 67–70; Ex. E at ¶¶ 4, 21; Ex. F at ¶¶ 26, 30.

Plaintiffs' reference to Mr. Forrest's so-called "proof of concept" is pure gamesmanship. Contrary to both PTO 8 and PTO 9, Plaintiffs never mentioned this "proof of concept" to Uber until 10:58 a.m. PT today when they included it within an entirely new version of their draft letter compared to what they provided to Uber on Monday. Plaintiffs have not provided Mr. Forrest's declaration or any details about this "proof of concept," deliberately making it impossible for Uber to provide the Court with Uber's, its vendor's, and its experts' assessments. Moreover, this "proof of concept" gambit is clearly intended to dangle the possibility of a hypothetical "solution" when

---

[7] *See, e.g.*, *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, No. 22-md-03047-YGR (PHK), ECF 623 at 14 (N.D. Cal. Feb. 20, 2024) ("[T]he Requesting Party may submit a list of hyperlinks to a particular Producing Party . . . and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location . . . ."); *In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO (VKD), 2023 WL 4361131, at *1 (N.D. Cal. June 2, 2023) ("the parties should consider reasonable requests for production of hyperlinked documents on a case-by-case basis"); *Nichols v. Noom Inc.*, No. 20-CV-3677 (LGS) (KHP), 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021) ("if Plaintiffs determine there is a need for an additional targeted pull or production or clarifying information about a hyperlinked document's identity or Bates number, Plaintiffs can request it").

[8] For their part, Plaintiffs frustrated the conferral process by refusing to disclose any information about their own investigation and by, despite repeated requests, withholding their hyperlink proposal until after the March 27 meet-and-confer deadline. Ex. I at 8; ECF 345 at 21. Indeed, during the last few minutes of the parties' April 2 conferral, Plaintiffs' counsel revealed they had what they positioned as a solution (though it is not a solution at all), which they admitted they had been withholding from discussion because they said they wanted to "see what Uber had to say." Ex. I at 3, 8. Plaintiffs refused to disclose any details about this proposed solution during the call or in response to a follow-up request. *Id.* at 8. Contrary to PTO 9, Plaintiffs waited until the evening of April 3 to share their proposal. *Id.* at 4–5.

every single expert, vendor, and third-party software provider available to Uber has indicated that such a solution is not possible for the reasons outlined below and in the attached declarations. Ex. D at ¶¶ 5, 17, 46, 67–70; Ex. E at ¶¶ 4, 21; Ex. F at ¶¶ 26, 30.

In any event, Plaintiffs have dropped all pretense that a solution exists, and instead have shifted to propose that Uber be required to invent a computer program that can automate this process. Ex. B at ¶ 5. But there is no evidence that creation, development, and implementation of a discovery program is possible at all; and no dispute that even if it were possible, it would take untold costs and many months if not years (slowing this case down in direct contradiction of the parties' and the Court's objectives). Ex. D at ¶ 51. That such a programmatic solution for this particular issue is not available shows its patent infeasibility. Uber received direct confirmation from its email and document vendor, Google, that Google is not aware of such a solution. Ex. D at ¶ 5. Moreover, the *Nichols* court rejected the very same argument that a defendant should try to create a program to collect and associate hyperlinked documents in Google Workspace, the same system at issue here, urged by the very same expert on which Plaintiffs rely here, Douglas Forrest.[9] Notably, over three years have passed since Mr. Forrest made that suggestion originally, and still no company has released such a program—because it is not feasible to do so. Ex. D at ¶¶ 5, 17, 46, 67–70; Ex. E at ¶¶ 4, 21; Ex. F at ¶¶ 26, 30.

The *Nichols* court also rejected the same argument that the defendant was "attempting to shield itself from discovery by virtue of its recordkeeping system," Google Workspace.[10] Uber's use of Workspace is not akin to "unwieldy" recordkeeping systems as Plaintiffs wrongly claim. Rather, Workspace, with its built-in eDiscovery tool, is a leading business solution, used by countless companies, including other Fortune 500 companies. Ex. D at ¶ 10.

Plaintiffs describe their hypothetical "program" in just five sentences, which do not correspond with the actual process of identifying, collecting, and processing Google Workspace documents. Ex. B at ¶ 5; Ex. D at ¶¶ 18–46, 50–62; Ex. E at ¶¶ 5–8, 17–21; Ex. F at ¶¶ 29–32. Plaintiffs' fanciful "program" ignores necessary steps in the collection process and disregards numerous points of manual intervention, including document-access issues, incomplete version histories, and unsuccessful Drive or Vault exports. *Id.* Plaintiffs' proposed "program" also does not account for importing the document to a review platform, including, for each link, figuring out how to add the revision number to the specific Gmail message and URL, how to attach the revision number to the document, and how to develop a process to avoid de-duplication of various "versions" of the same Drive file. *Id.* Even these points are giving Plaintiffs' proposal undue credence because no "program," as they are proposing, exists.

In a footnote, Plaintiffs suggest that those five steps (which would not actually work in practice) "can all be accomplished used [sic] the approach set out in" an apparent web-forum conversation between two anonymous internet users, "EagleEye" and "Tanaike," discussing a "script" that would not actually address the issues presented here. Ex. D at ¶¶ 58–62. That script related to collecting a single document, not in Vault, and where there were no concerns about access permissions. *Id.* at ¶ 62. The script they discussed would not even address the program steps Plaintiffs outlined in paragraph 5 of their proposal. *Id.* at ¶ 60. Further, according to "EagleEye," the outlined script did not even work. *Id.* at ¶¶ 61–62.

While Plaintiffs' proposal (Ex. B) does not mention Metaspike FEC, Plaintiffs now attempt to reinsert FEC into the conversation. But other courts have rejected the suggestion by Mr. Forrest that FEC provides an "easy button" solution for automating this process.[11] Moreover, Metaspike

---

[9] 2021 WL 98646, at *4.

[10] *Id.* at *5.

[11] *See, e.g.*, *In re Meta Pixel*, 2023 WL 4361131, at *1; *Nichols*, 2021 WL 948646, at *1.

admits—and Plaintiffs appear to acknowledge—that FEC cannot access Vault, and FEC would not provide any benefit here. Ex. D at ¶¶ 63–67; Ex. E at ¶¶ 11–15; Ex. F at ¶¶ 25–28. Aside from being unable to access most of the data, FEC will face performance issues due it to being a desktop-based application unsuitable for a collection effort of this magnitude.

## II.   Metadata Fields

Under PTO 9, the Court required the parties to confer regarding six disputed metadata fields. The parties have reached an agreement as to three of those fields. Uber will include ParticipantPhoneNumbers and OwnerPhoneNumbers, and need not include Rfc822MessageID so long as Uber provides the Rfc822MessageID in the MSGID field, which Uber agrees to do. The fields still in dispute are LINKGOOGLEDRIVEURLS and the Account field.

### A.  Plaintiffs' Position

This Court offered a proposed resolution to the parties' ESI disputes over metadata fields if they were unable to come to an agreement. ECF No. 345 at 25. The parties have been unable to come to an agreement, but Plaintiffs' reasoning constitutes compelling justification as laid out by this Court in PTO No. 9.  See Ex A at ¶¶ 89-107.

### B.  Defendants' Position

Uber requests that the Court proceed with its proposed PTO 9 resolution for the Account and LINKGOOGLEDRIVEURLS metadata fields. Account is duplicative of ALLCUSTODIANS, TO, FROM, CC, and BCC, which will identify the documents' custodians and email addresses. ECF 262-9 at ¶ 14. Yesterday was the first time Plaintiffs even mentioned the LINKGOOGLEDRIVEURLS since entry of PTO 9. Ex. H at 1. That field would require custom-creation, impose a substantial burden, and essentially serve the same purpose as LINKGOOGLEDRIVEDOCUMENTIDS. ECF 262-9 at ¶ 15; ECF 345 at 25.

## III.  Definitions

### A.  Plaintiffs' Position

The parties were unable to resolve their dispute over the definition of "attachment". Plaintiffs' Brief originally highlighted Uber's desire to keep the definition of "attachment" vague and removed any definition of contemporaneous hyperlinked documents. ECF No. 261 at 12. Unless hyperlinks are addressed in the ESI Order, disputes over what constitutes an "attachment" will lead to further motion practice before this Court.

### B.  Defendants' Position

Uber respectfully requests that the Court adopt Uber's proposed definition of "Attachment." Uber's proposal is consistent with recent court orders that have declined to treat hyperlinked documents as family groups, like emails and attachments.[12]

---

[12] *See, e.g.*, *In re Social Media*, No. 22-md-03047-YGR (PHK), ECF 623 at 14 (hyperlinked documents "do not need to be produced in the first instance as part of the same family group as the Document

Sincerely,

By: /s/ Michael B. Shortnacy
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (*Pro Hac Vice* admitted)
oot@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
1800 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

RANDALL S. LUSKEY (SBN: 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

By: /s/Roopal Luhana
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

---

residing at the location to which the hyperlink points."); *In re Meta Pixel*, 2023 WL 4361131, at *1 ("the ESI protocol should make clear that hyperlinked documents are not treated as conventional attachments for purposes of preserving a 'family' relationship in production").

Encls.

cc: All counsel of record via ECF