# Exhibit E

| | |
|---|---|
| 1 | RANDALL S. LUSKEY (SBN: 240915) |
| |    rluskey@paulweiss.com |
| 2 | **PAUL, WEISS, RIFKIND, WHARTON** |
| |    **& GARRISON LLP** |
| 3 | 535 Mission Street, 24th Floor |
| | San Francisco, CA 94105 |
| 4 | Telephone: (628) 432-5100 |
| | Facsimile:  (628) 232-3101 |

ROBERT ATKINS (*Pro Hac Vice* admitted)
   ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
   cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
   akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
   **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **SUPPLEMENTAL DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S PROPOSED ESI PROTOCOL** |
| This Document Relates to:<br><br>ALL ACTIONS | |
| | Judge:     Hon. Lisa J. Cisneros |
| | Courtroom:  G – 15th Floor |

-1-

SUPPLEMENTAL DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' PROPOSED ESI PROTOCOL

Case No. 3:23-md-3084-CRB

MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (*Pro Hac Vice* admitted)
    oot@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
1800 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

-2-
SUPPLEMENTAL DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' PROPOSED ESI PROTOCOL

Case No. 3:23-md-3084-CRB

1   I, Philip J. Favro, declare pursuant to 28 U.S.C. § 1746:

2   1.   I am over the age of 18 and a resident of the State of Utah. I submit the instant declaration in support of the Proposed ESI Protocol submitted by Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's (collectively "Uber") in the above-captioned matter.

**I. PURPOSES AND SUMMARY OF THE INSTANT DECLARATION**

2.   On February 12, 2024, I submitted a declaration in support of Uber's Proposed ESI Protocol in this matter, ECF No. 262-8 ("2/12/24 Declaration"). The purpose of my 2/12/24 Declaration was to provide the Court with contextual understanding regarding: (1) The differences between traditional attachments and hyperlinked content from cloud sites like Google Drive; and (2) the complexities with producing hyperlinked documents stored in Google Drive. Among other things, I opined that the technological limitations of Google Workspace could prevent Uber from producing the "version" of a hyperlinked document stored in Google Drive that was actually shared in an email at the time it was sent. I hereby incorporate by reference herein my 2/12/24 Declaration.

3.   I am aware of and have read the Court's Pretrial Order No. 9: Order on ESI Protocol Disputes, dated March 15, 2024, ECF No. 345 ("3/15/24 Order"). I understand from the 3/15/24 Order that the Court has requested clarification on multiple issues regarding whether Uber can implement a solution to automate the collection of the contemporaneous hyperlinked documents referenced in particular electronic communications. In particular, the 3/15/24 Order provides as follows:

- "Uber shall direct an employee with knowledge and expertise regarding Google Vault and Uber's data and information systems to investigate in detail the extent to which Google Vault's API, macro readers, Metaspike's FEC or other programs may be useful to automate, to some extent, the process of collecting the contemporaneous version of the document linked to a Gmail or other communication within Uber's systems, whether the email or communication is stored in Google Vault, or outside." *Id*. at 21:5-11.

- "Uber may also submit declarations from its experts and e-discovery vendors." *Id*. at 21:24-25.

-3-
SUPPLEMENTAL DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' PROPOSED ESI PROTOCOL

Case No. 3:23-md-3084-CRB

4.     I hereby submit the instant declaration to provide the Court with additional understanding on the issues delineated in the 3/15/24 Order and memorialized in Paragraph Three of this Declaration. It is my opinion that Uber will not be able to implement a repeatable solution for this litigation that can automate the collection of the contemporaneous hyperlinked documents with electronic communications in an efficient and cost-effective manner that is proportional to the needs of this case. In my opinion, Google Vault's user interface and API[1] (collectively "Google Vault") do not provide Uber with the ability to use either Google Vault or other existing or customized computer programs—such as Metaspike's Forensic Email Collector ("FEC"), macro recorders, or other programs including the suggested customized program in Plaintiffs' latest proposal—to develop a repeatable solution that can automate the collection of contemporaneous hyperlinked documents.

## II. GOOGLE VAULT

5.     In response to the Court's query regarding the feasibility of having "Google Vault's API . . . automate, to some extent, the process of collecting the contemporaneous version of the document linked to a Gmail or other communication within Uber's systems" (*Id*. at 21:7-10), I have further explored this issue and determined that, without individualized searches, Google Vault allows only for the collection of the current "version" of a hyperlinked document. 2/12/24 Declaration, at 7:25-8:14.

6.     As I understand it, Google Vault does not provide an automated, turnkey manner in which Uber can search for earlier "versions" of a hyperlinked document, such as the contemporaneous "version" of a hyperlinked document sent by email. Instead, Google Vault offers Uber at this time a manual process that it can follow to potentially identify the contemporaneous "version" of a hyperlinked document. Among other things, that process requires Uber to have the date of the communication in question, the title of the hyperlinked document referenced in the message, and the email address of the Uber custodian who had proper access to the shared hyperlinked document. With that information in hand, Uber could query in Google Vault to identify the document. This is the *only*

---

[1] API stands for Application Programming Interface. Whereas a user interface connects a computer to a person, an API connects computers or computer software to each other.

1  method that I understand Uber can use to conduct a search in Google Vault for earlier "versions" of a
2  hyperlinked document. Google Vault does not allow searches to be conducted either by the individual
3  identification number of a particular Google document or by the URL for the hyperlinked document
4  at issue.

5        7.     My understanding of this process is that the query could have multiple or several search
6  results, depending on how many "versions" were created in a given day, which will vary based on the
7  activity of Uber custodians. Uber will next analyze the search results in an attempt to find the precise
8  "version" of the hyperlinked document sent contemporaneously by email. Assuming Uber could
9  successfully identify the contemporaneous "version" of the hyperlinked document, Uber would first
10 attempt to perform an export from a particular Uber custodian's Google Drive account. If Uber were
11 unable to retrieve the "version" of the hyperlinked document using that method, it would then search
12 Google Vault to identify the "version" at issue. Assuming Uber could identify the correct
13 contemporaneous "version" in either Google Drive or Google Vault, it would then have to perform a
14 single export of this "version" of the document. Google would then have to repeat this process for
15 each and every hyperlinked document at issue.

16       8.     My examination of this process has revealed that Uber may not be able to identify the
17 contemporaneous "version" of the hyperlinked document in the form Plaintiffs have requested, even
18 if Uber follows the above-referenced specifications. For example, Google makes clear that certain
19 metadata for a hyperlinked document will automatically default to the current "version." This includes,
20 among other metadata fields, the title of the document, the Uber user(s) with whom the document was
21 shared, and the document's last modified date.

22       9.     Plaintiffs have proposed that a hypothetical computer program could be designed to
23 ostensibly automate this manual process of collection and thereby obtain the contemporaneous
24 "versions" of hyperlinked documents. As I understand it, there is nothing to suggest that such a
25 program is even feasible since neither Google nor other solution providers have to date been able to
26 develop such a program. However, even assuming such a program could be designed, any possible
27 time and cost savings that could be achieved through the use of this theoretical program would be

28

-5-

SUPPLEMENTAL DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' PROPOSED ESI PROTOCOL

Case No. 3:23-md-3084-CRB

1  negated by delays in designing the program. My opinion is that a customized program, targeting the
2  identification of large numbers of documents, could take a lengthy time to develop. It would entail
3  programming, execution, testing, and quality control measures.

4      10.    Even assuming such a hypothetical program could be successfully designed,
5  developed, and executed, my opinion is that it may still not achieve the desired efficiency due to "usage
6  limits" that Google places on its users. Colloquially known as "throttling," Google imposes limits on
7  users generally, including Uber, from processing large data volumes at one time for both security and
8  fairness considerations. By limiting the amount of data that Uber could process, throttling restrictions
9  from Google could very well frustrate the time savings associated with any automated collection
10 computer program.

11     11.    I have observed that courts are generally reluctant to require parties to create a
12 customized program to handle discovery issues. That is especially the case in this instance given the
13 number of variables that may prevent or otherwise impede Uber from making a successful "family
14 production" of contemporaneous hyperlinked documents.

15 **III. METASPIKE'S FORENSIC EMAIL COLLECTOR**

16     12.    In response to the Court's query regarding the feasibility of having "FEC . . . automate,
17 to some extent, the process of collecting the contemporaneous version of the document linked to a
18 Gmail or other communication within Uber's systems" (3/15/24 Order, at 21:8-10), I have also
19 examined this issue and determined that Uber will not be successful in deploying FEC in its
20 environment to automate the collection of contemporaneous hyperlinked documents.

21     13.    As I understand it, FEC does not have the ability to access Google Vault. Google Vault
22 is the lone repository in Google Workspace where Uber has placed a legal hold to preserve relevant
23 information—including emails and documents—for this matter. The inability of FEC to access Google
24 Vault dooms any usefulness that the FEC program could possibly hold for automating the collection
25 process of contemporaneous hyperlinked documents.

26     14.    My understanding is that the FEC tool requires access to individual user Google
27 accounts. The possibility that such an approach could eventually track down contemporaneous

28

-6-

hyperlinked documents is precluded by the reality that Uber depends on Google Vault to collect its emails and documents, and FEC cannot access Google Vault.

15. Even assuming FEC could overcome these significant hurdles and also work seamlessly with Uber's outside eDiscovery provider to eventually match up communications with the hyperlinked documents, FEC—as a third party tool leveraging an API—would still have to address the issue of throttling and the attendant delays caused by Google's usage limits on the amount of data that could be collected and exported through the Google API.

### IV. MACRO RECORDERS AND OTHER PROGRAMS INCLUDING PLAINTIFFS' CURRENT PROPOSAL

16. The Court has similarly asked whether macro recorders or other programs might enable Uber to "automate, to some extent, the process of collecting the contemporaneous version of the document linked to a Gmail or other communication within Uber's systems." 3/15/24 Order, at 21:7-10. For the same reasons previously articulated in this Declaration—among other things, the manual and particularized nature for identifying and collecting contemporaneous "versions" of hyperlinked documents, the restrictions with Google Vault, the problems with collecting documents from individual Uber custodian Google Drive accounts, the merger of metadata for document "versions," the challenges arising from Google's usage limits—my opinion is that Uber will not be successful in automating the collection process and ultimately connecting contemporaneous hyperlinked documents with electronic communications in an efficient and cost-effective manner that is proportional to the needs of the case.

17. My opinion about the infeasibility of other programs being able to address this issue includes, in particular, Plaintiffs' latest proposal. That proposal, dated April 3, 2024 (4/3/24 Proposal), advances a scenario in which Uber could hypothetically design a customized program to ostensibly identify "missing" contemporaneous hyperlinked documents. According to the 4/3/24 proposal, plaintiffs posit that Uber and its eDiscovery provider could use this theoretical program to "cycle" through the contemporaneous hyperlinked documents "missing" from Uber's overall collection and Uber could then identify and collect those "missing" documents in Google Vault, using the "Google DocumentId." 4/3/24 at ¶¶4, 5(a).

-7-
SUPPLEMENTAL DECLARATION OF PHILIP FAVRO IN SUPPORT OF DEFENDANTS' PROPOSED ESI PROTOCOL

Case No. 3:23-md-3084-CRB

18. The 4/3/24 proposal fails to address the numerous manual and particularized steps required to identify, export, and then make available contemporaneous "versions" of hyperlinked documents for "downstream" discovery purposes. The 4/3/24 proposal is overly simplistic and is based on a faulty premise that Uber can magically automate a manual and highly particularized process.

19. By way of example, the notion that Uber can "retrieve its revision list" does not consider the manual process required to identify the email address of the Uber custodian with proper access to the shared hyperlinked document. Nor does it consider that multiple queries must often be run before a complete revision list of the hyperlinked document is available. 4/3/24 at ¶5(a).

20. Another problem with the 4/3/24 proposal is its assumption that Uber can use this proposed program (which does not exist) to automate the export process for the contemporaneous "version" of a hyperlinked document. The proposal fails to address the similarly manual process involved in individually exporting each hyperlinked document and then repeating this process for each and every hyperlinked document at issue. 4/3/24 at ¶ 5(c).

21. These problems with the 4/3/24 Proposal highlight the broader issue, which is that Plaintiffs have failed to identify a viable solution—either commercially available or customizable by consultants—that can automate the identification and collection process for contemporaneous "versions" of hyperlinked documents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 12, 2024

*Philip J. Favro*
_____
Philip Favro