# Exhibit I

## RE: Uber MDL - PTO No. 9 M&C

Wikler, Jeremy (SHB) <JWIKLER@shb.com>
Thu 4/11/2024 8:40 PM

To: Michael Sweet <sweet@chaffinluhana.com>;Oot, Patrick L. (SHB) <OOT@shb.com>;Shortnacy, Michael (SHB) <mshortnacy@shb.com>;Smith, Kyle <ksmith@paulweiss.com>;Grusauskas, Caitlin E <cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>

Cc: Roopal Luhana <Luhana@chaffinluhana.com>;Steven Cohn <cohn@chaffinluhana.com>;Beth Wilkins <Wilkins@chaffinluhana.com>;Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>;Layne Hilton <lhilton@meyerwilson.com>;Brian Abramson <babramson@whlaw.com>;David Grimes <dgrimes@levinsimes.com>;Bret Stanley <bstanley@johnsonlawgroup.com>

Michael,

On the eve of the parties' joint filing deadline, we do not believe the parties' resources are well spent on further back and forth in email correspondence. We also do not agree that the parties should be exchanging emails, containing arguments very clearly directed to the Court, as a work-around to avoid the Court's two-and-a-half-page-per-side limitation for the joint letter. Suffice to say, we disagree with your one-sided and revisionist account below. The record will speak for itself. For these reasons, and for efficiency's sake, we have responded solely to the timeline in your email. See those responses in red font below.

Separately, we are very surprised by Plaintiffs' new position, first articulated in your email below, regarding the Account and LINKGOOGLEDRIVEURLS metadata fields. I spoke with you on the phone yesterday about the metadata fields at issue (as a follow-on from our prior meet-and-confers), and you did not raise any of this. Lighthouse was on the meet-and-confers with the parties and explained exactly what the Account metadata field would contain. I'm not even following what this concern is that you're expressing for the first time here. We were providing that field, which is cumulative of other fields, purely in the spirit of cooperation to remove unnecessary disputes, and are disappointed with this recent and new objection. Without agreement on what the Account field would contain, we cannot agree to provide it. As for LINKGOOGLEDRIVEURLS, your email below is the very first time you have even mentioned that field since entry of PTO 9. We can't agree to produce it for the reasons we have previously explained to you. We of course also don't agree to any new metadata fields Plaintiffs propose asserting at this late juncture.

Thanks,
Jeremy

---

**From:** Michael Sweet <sweet@chaffinluhana.com>
**Sent:** Thursday, April 11, 2024 11:38 AM
**To:** Wikler, Jeremy (SHB) <JWIKLER@shb.com>; Oot, Patrick L. (SHB) <OOT@shb.com>; Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Smith, Kyle <ksmith@paulweiss.com>; Grusauskas, Caitlin E <cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>
**Cc:** Roopal Luhana <Luhana@chaffinluhana.com>; Steven Cohn <cohn@chaffinluhana.com>; Beth Wilkins <Wilkins@chaffinluhana.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Layne Hilton <lhilton@meyerwilson.com>; Brian Abramson <babramson@whlaw.com>; David Grimes <dgrimes@levinsimes.com>; Bret Stanley <bstanley@johnsonlawgroup.com>
**Subject:** Re: Uber MDL - PTO No. 9 M&C

**EXTERNAL**
Hi Jeremy,

Thanks for the email. Suffice to say we disagree with many of your characterizations, but nonetheless will address what you raise.

<u>First</u>, unfortunately Defendants have not provided any specifics to why Plaintiffs' April 3 proposal is unworkable. Simply stating there are "failure points" and then resorting to your original position that you can only pull contemporaneous hyperlinked documents manually is unhelpful.

Plaintiffs have worked to provide a solution in writing based on the piecemeal information Uber has provided. Uber's sole position, however, is to say that it will fail. Uber has yet to provide Plaintiffs with what efforts it has made to find *other* potential solutions, what Uber has accomplished, or even attempted. Moreover, to date, despite repeated requests to do so, Uber has not even put the manual process it described on the April 2 meet and confer in writing. The only point Uber has made clear is that it believes the only solution is no solution.

<u>Second</u>, the Court ordered *both* parties to investigate potential solutions. However, based on Plaintiffs' observations this effort has been one-sided. The most details that you have provided in writing are in this e-mail you belatedly sent on April 9 (after Defendants' received Plaintiffs' Joint Letter draft to the Hyperlinks/Metadata Dispute) despite us discussing this matter over almost three (3) weeks.

As you are aware, PTO No. 9 ordered the parties to investigate the matter and meet and confer to discuss a potential resolution to the cloud-stored documents and hyperlinks related issue, as well as other smaller areas of dispute. Below details Plaintiffs' efforts and Uber's responses.

<span style="color:red">Immediately after entry of PTO 9 on March 15, 2024, Uber began investigating whether Google Vault's API, macro recorders, Metaspike's FEC, or other programs could be useful to automate the process as required by PTO 9. Uber has had numerous meetings with Uber's eDiscovery team and key stakeholders, Uber's outside eDiscovery vendor, Uber's experts, Google subject-matter experts, and Metaspike's founder.</span>

- On March 21, 2024, Plaintiffs sent Uber a list of 23 unique questions focused on identifying what difficulties Uber was encountering, expecting, and investigating and requested written responses.
- On March 24, 2024, Plaintiffs reached out to Uber again to ask when we would receive our written responses.
- On March 25, 2024, Uber responded without providing written responses, only that we could discuss it at the next meet and confer.

<span style="color:red">You posed your 23 questions, beyond the requirements of PTO 9, on March 21, 2024—only *one day* before both Plaintiffs' and Uber's deadline to complete their investigation per PTO 9. For its part, at the time you sent this list of questions, Uber was still working on its investigation and continuing to meet with knowledgeable individuals and key stakeholders to accomplish the investigation ordered by the Court. Nevertheless, on receipt of the questions, Uber added them to Uber's investigation and began setting new meetings with stakeholders in an effort to address anything that had not been previously covered in Uber's inquiries to that point.</span>

- On March 27, 2024, the parties agreed to meet and confer to discuss areas enumerated in this Court's PTO No. 9 and to discuss the questions that Plaintiffs sent to Uber to aid in their investigation. Uber's answers to most of Plaintiffs questions were general and not helpful. Uber stated uniformly that there was no solution and would not put anything in writing.

<span style="color:red">During the March 27, 2024 meet-and-confer with Plaintiffs, Uber and its eDiscovery vendor answered Plaintiffs' and their experts' questions for over an hour. We of course disagree with Plaintiffs' mischaracterization of Uber's responses during that conferral as "general and not helpful." Contrary to your assertions, Uber did provide specific information based on the investigation described above. We also reject your assertion that Uber would "not put anything in writing." Significantly, and despite the requirements of PTO 9, Plaintiffs did not discuss their investigation whatsoever and did not provide any information about a proposed solution.</span>

- On March 29, 2024, Plaintiffs again sent six (6) additional follow-up questions to Uber relating to matters Uber brought up on the meet and confer as potential "difficulties" with its investigation, including throttling. Indeed, Uber never indicated that it reached out to Google to change its throttling quota or capacity to resolve this issue but instead stated that any position other than its own had too many failure points.

<span style="color:red">On March 29, 2024, Uber reminded Plaintiffs via email that they still had not discussed the results of their own investigation, contrary to PTO 9's requirements. Uber asked Plaintiffs again for any specific steps Plaintiffs' propose that Uber could take to accomplish what Plaintiffs seek, and told Plaintiffs that we would investigate any proposals with Uber. We understood Plaintiffs to have narrowed their questions to six priority questions, which Uber promptly investigated with the appropriate knowledgeable individuals and stakeholders.</span>

- On April 2, 2024, the parties participated in a final meet and confer. Plaintiffs sought answers to their questions (and the original questions that remained unanswered). Uber informed Plaintiffs that Uber did not have a programmer looking into this matter, and represented that its position had not changed. This was the first time that Uber provided some piecemeal data about exemplar documents.

<span style="color:red">We did not say we Uber did not have a programmer looking at these issues. We said we have inquired with Uber and it does not *have* programmers with this knowledge. Your statement misconstrues the facts. Moreover, during the last few minutes of the April 2, 2024 meet-and-confer, Plaintiffs' counsel revealed that they had a proposed "wire frame solution," which they had been withholding from the discussion because they wanted "to see what Uber had to say." Plaintiffs declined to disclose any additional details about this "wire frame solution" during the call or afterwards when Uber requested its disclosure again via email. Additionally, Plaintiffs continue to say that this was the first time that Uber provided metrics, but are leaving out the fact that Plaintiffs had requested metrics for the first time during the previous meet-and-confer, which Uber agreed to add to its investigation and then Uber provided those metrics during the April 2, 2024 meet-and-confer, as agreed. Again, Plaintiffs, even here, have still failed to explain how metrics about the particular prevalence of URLs within a Gmail population helps develop a solution, which is not available or feasible to create.</span>

- On April 3, 2024, Plaintiffs used some of the responses including the piecemeal data provided by Uber and worked to develop a feasible and nonburdensome methodology that should work for Uber and promptly circulated it. Now, as of April 9, Uber's position again is that the methodology is not workable for "the same reasons we have previously discussed" but not providing any details of why it does not work.

<span style="color:red">Uber has provided extensive and specific detail about why Plaintiffs' belated proposed "solution" would not work. During the April 2, 2024 meet-and-confer, Uber walked Plaintiffs through each step one must take to try to collect a contemporaneous "version" of a Google Drive document, including the manual intervention repeatedly required throughout the process. As discussed, this very manual process makes a solution such as the one Plaintiffs have proposed infeasible.</span>

<u>Third</u>, We appreciate the most recent new piece of information regarding the 1.5 TB of data. However, the numbers you provided are not helpful. General numbers or conclusions about unworkability do not help Plaintiffs understand the magnitude of documents that Uber continues to represent as being an obstacle and why the process is failing. Any potential process/solution in programing requires testing and adjustments to address potential issues and re-running; it's an iterative process. General numbers without discussing what is behind them and reasons why a potential process is not working is not helpful.

<u>Fourth</u>, Defendants must be forgetting that Plaintiffs discussed on the April 2 meet and confer why providing the date range of the sample files Uber pulled would be helpful in understanding the scope of the hyperlinks issue. Defendants represented to Plaintiffs that they pulled a sample set of e-mails where roughly 7% contained hyperlinked Google Drive documents. You further represented that there were many caveats to this, and that Plaintiffs couldn't rely on it. We asked about date ranges for this sample set to understand if the percentage of hyperlinked documents was generally representative, e.g., if the sample set is from an earlier time period it's indicative that hyperlinks may not have been as prevalent and therefore the 7% may not be representative.

Further, metrics about how long downloads take, the actual number of documents, throttling measures, and other characteristics of the process are critical to understand (and help craft proposals) the cloud-stored documents universe that the parties are seeking to understand.

<u>Fifth</u>, regarding metadata fields, the Court proposed a solution in PTO No. 9 that would be adopted unless complete agreement to an alternate proposal was made. Plaintiffs appreciate Uber dropping its objections to the inclusion of ParticipantPhoneNumbers and OwnerPhoneNumbers, and agree to drop Rfc822MessageID so long as the Rfc822MessageID will be provided in the MSGID field. Plaintiffs do not agree to limit the Account field to only the e-mail address associated with the single custodian whose data survives the deduplication process. A custodian may have multiple Google email addresses used for different functions. Suppressing a custodian's email address on documents produced from another custodian would strip Plaintiffs of their ability to breakdown that custodian's documents by which email account it belonged to. Regarding LINKGOOGLEDRIVEURLS, it would appear that Uber's burden issue would be due to suffixing the URLs with Bates numbers for those Google Drive documents which have been produced. The reason for adding the suffixed Bates numbers was to identify which Google Drive documents may not have been produced. This is why we asked for, but did not receive, your position in writing so that we could properly identify the failure points between our positions. Separately, Plaintiffs' Proposal, if adopted by the Court, would introduce a new metadata field "Non-Contemporaneous" which would contain the value "Y" if a produced Google Drive document was not the contemporaneous version. These are described in the proposal.

Altogether, it would be more appropriate to say that Plaintiffs investigated this issue thoroughly, proposed multiple solutions (both in writing and on the meet and confers), and worked with only the generalities that Uber provided. Uber, on the other hand, cannot say the same.

We are looking forward to receiving your draft on Thursday.

---

**From:** Wikler, Jeremy (SHB) <JWIKLER@shb.com>
**Sent:** Tuesday, April 9, 2024 9:44 PM
**To:** Michael Sweet <sweet@chaffinluhana.com>; Oot, Patrick L. (SHB) <OOT@shb.com>; Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Smith, Kyle <ksmith@paulweiss.com>; Grusauskas, Caitlin E <cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>
**Cc:** Roopal Luhana <Luhana@chaffinluhana.com>; Steven Cohn <cohn@chaffinluhana.com>; Beth Wilkins <Wilkins@chaffinluhana.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Layne Hilton <lhilton@meyerwilson.com>; Brian Abramson <babramson@whlaw.com>; David Grimes <dgrimes@levinsimes.com>; Bret Stanley <bstanley@johnsonlawgroup.com>
**Subject:** RE: Uber MDL - PTO No. 9 M&C

Hi, Michael.

We have reviewed Plaintiffs' proposal provided to us for the first time on the evening of April 3rd, giving us only three business days to investigate your belated proposal, including meeting and discussing with Uber's internal stakeholders and subject matter experts, and Uber's outside ESI vendors and experts. This is contrary to Judge Cisneros's direction in PTO 9, instructing the Parties to complete their investigations by March 22nd and meet and confer by March 27th, and unfairly prejudices Uber.

In any event, and although belated, we have now reviewed Plaintiffs' proposal with Uber's appropriate stakeholders, outside ESI experts, and vendors. Plaintiffs' proposal is not workable or feasible, for the

same reasons we have previously discussed. As we explained to you in the meet-and-confer process, there are too many failure points with the proposed workflow, which would require manual intervention on a one-by-one basis. By way of example, during the April 2nd call, we walked you through the specific steps required for Uber to collect a same-date version of a Google Drive document referenced in a URL. As discussed, we are talking about a manual, one-by-one process for a single URL and time stamp. As Plaintiffs' expert acknowledged on the call, the Google environment is complex and specific in terms of authorizations and access to documents.

While this manual process may be feasible for a small number of documents, it is not technically feasible for thousands or millions of documents at issue in this MDL. As discussed on our April 2nd conferral, beyond the issues outlined above, errors regularly occur during the process, requiring manual intervention, troubleshooting, and investigation. Your statement that we did not respond to Plaintiffs' questions about what Uber has tried as a part of its investigation is not true. We talked at length about Uber's practical experiences in trying to collect particular versions of Google Drive documents and the obstacles they have encountered. We also discussed in our conferrals the investigation Uber has performed to identify a programmatic solution. Not only did we provide this information during our call and discuss the investigations Uber has conducted, but we explained why this process that requires manual intervention has not been automated. Again, we are not aware of an existing program to automate this process, and we have heard no concrete plan or proposal from Plaintiffs. Further, even a Google Drive collection from Google Vault can take substantial time. To be specific, we looked at an actual collection from last month of 1.5 TB of data for just six months of ten custodians' Drive documents, and that took five days to export. As we have discussed, that collection would capture only the current versions of those Drive documents.

So while Uber has taken concrete steps to investigate potential solutions, as we have explained to you over two video meet-and-confers and back-and-forth follow up emails, with Uber and its stakeholders and counsel, vendor and experts, spending a significant amount of time in meetings, Plaintiffs have not approached the issue with such transparency and good faith.

In terms of metadata, as we discussed on our March 27th and April 2nd meet-and-confer calls, Uber does not object to the inclusion of the ParticipantPhoneNumbers and OwnerPhoneNumbers fields. In the spirit of cooperation, Uber will also agree to include the Account metadata field. Again, the ALLCUSTODIANS field (that Uber has already agreed to provide) will contain the first and last names of in-scope production custodians associated with each document. And the Account metadata field will contain the e-mail address associated with the single custodian whose data survives the de-duplication process. Uber does not agree to include the Rfc822MessageID field, which will already be provided in the agreed MSGID field as we discussed in our conferrals during which Plaintiffs did not request this field. Also, Uber does not agree to include the LINKGOOGLEDRIVEURLS field, which we also assume Plaintiffs no longer wish to pursue as they have not mentioned this field to Uber since entry of PTO 9.

Finally, Plaintiffs requested *during the March 27th meet-and-confer* that Uber disclose metrics with respect to prevalence of URLs referencing Google Drive documents. As Plaintiffs requested, Uber provided these metrics during the April 2nd meet-and-confer. As we told you on April 2nd, we looked at a sample set of tens of millions of collected Google e-mails for a set of Uber employees, of which roughly 7% contained a URL reference to a Google Drive document. On average, there were roughly two URL references per Google e-mail that contained such a reference (i.e., millions of URLs). And roughly 20% of those URL-referenced Google Drive documents pre-dated or were on the same date as the Google e-mail. Plaintiffs asked in follow-up what the general date range was for the e-mails we discussed, and we confirm that the date range is generally from the time of Uber's inception to near the end of 2023. Notably, despite Uber's repeated requests, Plaintiffs were unable or unwilling to explain how these metrics would help in the development of a solution for collecting particular versions of Google Drive documents.

Jeremy

**From:** Michael Sweet <sweet@chaffinluhana.com>
**Sent:** Wednesday, April 3, 2024 7:06 PM
**To:** Oot, Patrick L. (SHB) <OOT@shb.com>; Wikler, Jeremy (SHB) <JWIKLER@shb.com>; Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Smith, Kyle <ksmith@paulweiss.com>; Grusauskas, Caitlin E <cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>
**Cc:** Roopal Luhana <Luhana@chaffinluhana.com>; Steven Cohn <cohn@chaffinluhana.com>; Beth Wilkins <Wilkins@chaffinluhana.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Layne Hilton <lhilton@meyerwilson.com>; Brian Abramson <babramson@whlaw.com>; David Grimes <dgrimes@levinsimes.com>; Bret Stanley <bstanley@johnsonlawgroup.com>
**Subject:** Re: Uber MDL - PTO No. 9 M&C

**EXTERNAL**

Hi Patrick,

Thanks for your email and I appreciate the promptness. This was an oversight and has been removed. See attached. Have a good night.

Michael

---

**From:** Oot, Patrick L. (SHB) <OOT@shb.com>
**Sent:** Wednesday, April 3, 2024 7:39 PM
**To:** Michael Sweet <sweet@chaffinluhana.com>; Wikler, Jeremy (SHB) <JWIKLER@shb.com>; Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Smith, Kyle <ksmith@paulweiss.com>; Grusauskas, Caitlin E <cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>
**Cc:** Roopal Luhana <Luhana@chaffinluhana.com>; Steven Cohn <cohn@chaffinluhana.com>; Beth Wilkins <Wilkins@chaffinluhana.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Layne Hilton <lhilton@meyerwilson.com>; Brian Abramson <babramson@whlaw.com>; David Grimes <dgrimes@levinsimes.com>; Bret Stanley <bstanley@johnsonlawgroup.com>
**Subject:** RE: Uber MDL - PTO No. 9 M&C

Hi Michael. This is captioned Privilege and Confidential.

I have not read this in case you sent the wrong version. I will delete.

**Patrick Oot**
Shook, Hardy & Bacon L.L.P.
1800 K Street NW – 10th Floor
Washington, DC 20006
p: 202.639.5645 | oot@shb.com

SHOOK, HARDY & BACON L.L.P. MAY CONTAIN CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION CONTAINING WORK PRODUCT AND/OR ATTORNEY-CLIENT PRIVILEGE INFORMATION OF RETAINED OUTSIDE COUNSEL

---

**From:** Michael Sweet <sweet@chaffinluhana.com>
**Sent:** Wednesday, April 3, 2024 7:33 PM
**To:** Wikler, Jeremy (SHB) <JWIKLER@shb.com>; Oot, Patrick L. (SHB) <OOT@shb.com>; Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Smith, Kyle <ksmith@paulweiss.com>; Grusauskas, Caitlin E <cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>
**Cc:** Roopal Luhana <Luhana@chaffinluhana.com>; Steven Cohn <cohn@chaffinluhana.com>; Beth

Wilkins <Wilkins@chaffinluhana.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Layne Hilton <lhilton@meyerwilson.com>; Brian Abramson <babramson@whlaw.com>; David Grimes <dgrimes@levinsimes.com>; Bret Stanley <bstanley@johnsonlawgroup.com>
**Subject:** Re: Uber MDL - PTO No. 9 M&C

**EXTERNAL**

Hi Jeremy, Patrick and Michael,

In accordance with PTO No. 9, attached please find Plaintiffs' proposal for the hyperlinks dispute between our parties based on our investigation, the recent meet and confers, and Uber's general responses to our questions.

We look forward to hearing from you after you consult with your client.

Have a good night.

Michael

---

**From:** Michael Sweet <sweet@chaffinluhana.com>
**Sent:** Tuesday, April 2, 2024 10:11 PM
**To:** Wikler, Jeremy (SHB) <JWIKLER@shb.com>; Oot, Patrick L. (SHB) <OOT@shb.com>; Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Smith, Kyle <ksmith@paulweiss.com>; Grusauskas, Caitlin E <cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>
**Cc:** Roopal Luhana <Luhana@chaffinluhana.com>; Steven Cohn <cohn@chaffinluhana.com>; Beth Wilkins <Wilkins@chaffinluhana.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Layne Hilton <lhilton@meyerwilson.com>; Brian Abramson <babramson@whlaw.com>; David Grimes <dgrimes@levinsimes.com>; Bret Stanley <bstanley@johnsonlawgroup.com>
**Subject:** Re: Uber MDL - PTO No. 9 M&C

Hi Jeremy, Patrick and Michael,

Thanks for the follow-up email and the time today on the meet and confer. We appreciate Defendants generally describing the manual steps needed to pull a contemporaneous version of a hyperlinked document. As we stated on the meet and confer, the goal is for the parties to work together to arrive at a viable solution. To that end, we have asked questions which we believe will help facilitate arriving at a potential solution. However, general answers do not help. Unfortunately, at the March 27 meet and confer, many of Plaintiffs' questions were not answered. While Defendants provided some general information, as you can appreciate, specific information is necessary to understand these complex issues. For example, at the March 27 M&C, you informed Plaintiffs that it is too burdensome to pull a custodial file with various versions of Google Drive documents. When we appropriately asked for your basis for that conclusion, you stated it was based on a test run on an unrelated matter and were unable to provide the specifics as to when the test was run and what steps were taken.

Importantly, we are trying to understand what scripts or solutions Uber has <u>tried</u> to automate for any part of the process or address FEC or the feasibility of deploying it with Uber's systems. When we asked what Uber has proactively tried, you did not have a response. It is our understanding that after Uber's investigation, it has not changed its position from its original proposal and has not provided an alternative solution.

Additionally, we agree that the Court, under PTO No. 9, asked both parties to investigate the hyperlinks issue(s). We have on more than one occasion provided potential solutions on the meet and confers, only to be informed that any proposal was either apparently impossible, overly burdensome, or commercially unviable. Thus, we currently find ourselves in an unfair position. While we appreciated the ballpark (caveat) estimates on the numbers today, this was the first time that we truly received any form of

numbers that would help us form some general opinions. Although Defendants represented that Plaintiffs have the same information as the Defendants do, this is facially inaccurate as we rely on Defendants' answers about their systems.

Moreover, Plaintiffs are not "withholding" information as you state in your e-mail. As you are aware we are working to coordinate with the JCCP and invited JCCP Counsel, Mr. Grimes, to the meet and confer. This is the first time Mr. Grimes has raised a potential "wire frame" solution to address the issue. We intend to confer with him and our experts at ILS and will follow-up. As we said, the goal here is to come up with a reasonable solution and collaboratively work with Defendants to get there.

Lastly, I believe we are on the same page with respect to metadata fields, and we appreciate Defendants not objecting to the inclusion of our fields.

Look forward to connecting again shortly. Have a good night.

Michael

---

**From:** Wikler, Jeremy (SHB) <JWIKLER@shb.com>
**Sent:** Tuesday, April 2, 2024 6:51 PM
**To:** Michael Sweet <sweet@chaffinluhana.com>; Oot, Patrick L. (SHB) <OOT@shb.com>; Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Smith, Kyle <ksmith@paulweiss.com>; Grusauskas, Caitlin E <cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>
**Cc:** Roopal Luhana <Luhana@chaffinluhana.com>; Steven Cohn <cohn@chaffinluhana.com>; Beth Wilkins <Wilkins@chaffinluhana.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Layne Hilton <lhilton@meyerwilson.com>; Brian Abramson <babramson@whlaw.com>; David Grimes <dgrimes@levinsimes.com>; Bret Stanley <bstanley@johnsonlawgroup.com>
**Subject:** RE: Uber MDL - PTO No. 9 M&C

Hi, Michael.

Thank you for your e-mail and taking the time for today's meet-and-confer.

As follow-up, during last Wednesday's meet-and-confer, we responded to the questions Plaintiffs had previously provided. In your March 29th follow-up e-mail, you narrowed it down to several questions, to which we responded during today's call. We also provided you an overview of the manual workflow required for Uber to attempt to identify, collect, and produce a date-specific Google Drive document referenced in a URL.

As a reminder, the Court ordered Plaintiffs to come to the table with information they have regarding possible solutions. But the information sharing has currently been a one-way street, despite our repeated requests. Near the end of our call, Plaintiffs indicated that they have a "wire frame" to address this issue, which Plaintiffs were withholding from the discussion, including our meet-and-confers. As we requested on the call and consistent with our previous requests, please provide this "wire frame" and any other information you have regarding possible solutions so that we can investigate with Uber.

Thanks,
Jeremy

---

**From:** Michael Sweet <sweet@chaffinluhana.com>
**Sent:** Tuesday, April 2, 2024 12:02 PM
**To:** Wikler, Jeremy (SHB) <JWIKLER@shb.com>; Oot, Patrick L. (SHB) <oot@shb.com>; Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Smith, Kyle <ksmith@paulweiss.com>; Grusauskas, Caitlin E

<cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>
**Cc:** Roopal Luhana <Luhana@chaffinluhana.com>; Steven Cohn <cohn@chaffinluhana.com>; Beth Wilkins <Wilkins@chaffinluhana.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Layne Hilton <lhilton@meyerwilson.com>; Brian Abramson <babramson@whlaw.com>; David Grimes <dgrimes@levinsimes.com>; Bret Stanley <bstanley@johnsonlawgroup.com>
**Subject:** Re: Uber MDL - PTO No. 9 M&C

**EXTERNAL**

Hi Jeremy,

Thank you for your email and I hope you enjoyed your weekend.

Throughout this issue, Plaintiffs have worked diligently with Defendants, only to find that each proposal is met with the response that it is apparently impossible, overly burdensome, or commercially unviable. While we recognize the complexity of its nature, Plaintiffs are confident the parties can work together and find an effective and reasonable solution. In accordance with this Court's PTO No. 9, Plaintiffs have continued to pursue potential avenues for Uber to explore; however, Plaintiffs firmly believe that Defendants have access to the necessary information about their documents and vendors to lead the investigation to find a solution. Plaintiffs can only delve as deeply as Defendants allow with their data and responses, which we believe have fallen short of what the investigation needs in critical areas outlined by the Court.

As we previously stated, we believe it is generally possible to link contemporaneous hyperlinks and the respective document with the Google Drive/Google Drive Document metadata or API in order to systematically link and pull each document. Therefore, we would kindly ask that you confer with your client and vendor on the ability to use data such as Date Sent and estimate the reasonable hours it would take to pull each document or handle a string of requests for documents.

Separately, we want to address your statement about the "new" questions Plaintiffs raised on our March 27 M&C. The questions we raised were either similar or in-line with the previous set of questions we sent you on March 21, and we presumed they were part of your investigation as well. Regardless, we are hoping for written answers to our questions soon as we previously requested so that we can potentially evaluate solutions.

Lastly, we are still awaiting your responses to our metadata field conversation near the end of the March 27 M&C so that Plaintiffs may confirm that we are on the same page.

Thank you and looking forward to speaking later today.

Michael

---

**From:** Wikler, Jeremy (SHB) <JWIKLER@shb.com>
**Sent:** Friday, March 29, 2024 5:55 PM
**To:** Michael Sweet <sweet@chaffinluhana.com>; Oot, Patrick L. (SHB) <OOT@shb.com>; Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Smith, Kyle <ksmith@paulweiss.com>; Grusauskas, Caitlin E <cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>
**Cc:** Roopal Luhana <Luhana@chaffinluhana.com>; Steven Cohn <cohn@chaffinluhana.com>; Beth Wilkins <Wilkins@chaffinluhana.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Layne Hilton <lhilton@meyerwilson.com>; Brian Abramson <babramson@whlaw.com>; David Grimes <dgrimes@levinsimes.com>; Bret Stanley <bstanley@johnsonlawgroup.com>
**Subject:** RE: Uber MDL - PTO No. 9 M&C

Hey, Michael.

Thanks for your e-mail. We would add that we still need to discuss the results of Plaintiffs' investigation per PTO 9. If Plaintiffs are aware of specific steps that Uber can take to accomplish what Plaintiffs seek, please provide those before our meet-and-confer so that we can investigate with Uber. If Plaintiffs can't provide their proposal in advance of our meet-and-confer, please provide alternative dates for our meet-and-confer so that we can have time to discuss your proposal with our client. As we agreed, we are willing to discuss any proposal Plaintiffs have with our client. But as it stands, Uber maintains its proposal for the reasons previously stated.

As for the items you've outlined, we agree that those are similar to the questions Plaintiffs asked for the first time during our call on Wednesday, and we are working with Lighthouse and Uber to address those questions, as well as the metadata questions. We can discuss on our next call.

We're available between 5 and 6 ET next Tuesday. Feel free to circulate an invite if that still works for you.

Thanks again, and have a good weekend.

Jeremy

---

**From:** Michael Sweet <sweet@chaffinluhana.com>
**Sent:** Friday, March 29, 2024 1:40 PM
**To:** Oot, Patrick L. (SHB) <oot@shb.com>; Shortnacy, Michael (SHB) <mshortnacy@shb.com>; Smith, Kyle <ksmith@paulweiss.com>; Grusauskas, Caitlin E <cgrusauskas@paulweiss.com>; Triana, Marcelo <mtriana@paulweiss.com>; Wikler, Jeremy (SHB) <JWIKLER@shb.com>
**Cc:** Roopal Luhana <Luhana@chaffinluhana.com>; Steven Cohn <cohn@chaffinluhana.com>; Beth Wilkins <Wilkins@chaffinluhana.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>; Layne Hilton <lhilton@meyerwilson.com>; Brian Abramson <babramson@whlaw.com>; David Grimes <dgrimes@levinsimes.com>; Bret Stanley <bstanley@johnsonlawgroup.com>
**Subject:** Uber MDL - PTO No. 9 M&C

**EXTERNAL**
Hi Patrick,

Thank you for meeting with us this Wednesday. As we discussed on the meet and confer, Judge Cisneros per PTO No. 9, inter alia, has requested that the parties try to find a solution to the hyperlink document issue and identified Google Vault, amongst other areas, as a particular concern because much of Uber's ESI is located there due to its retention policies. Ultimately, on the call, you indicated that the only solution Uber has arrived at is what it initially proposed in the ESI Protocol. You represented that Uber is unable to produce the contemporaneous version of the hyperlinked document when the email/communication was sent and only the current version of the hyperlinked document at the time of collection may be available. As you can appreciate, we had a number of questions based on what Uber has done to date to arrive at that conclusion and what potential solutions it has explored. We understand that you did not have answers to our questions below but appreciate you working with us. Please let us know if we have misstated anything below.

We understand that Uber is handling the collection of documents in-house and that Lighthouse is handling the production after Uber provides it (post-collection). We understand that Lighthouse will use its Google Parser tool to connect/relate, e.g., an email, to the underlying hyperlinked document in the email. Lighthouse has repeatedly represented that if Uber produces the contemporaneous version of the hyperlinked document, its Google Parser tool will similarly be able to connect/relate the email to the underlying hyperlinked document.

Please find the questions below that we raised at the meet and confer that you agreed to investigate and provide responses and/or confirmation for.

- Has/can Lighthouse checked the hyperlinked URLs provided in the emails and other documents in its possession and assess if it is able to query those URLs that cannot be linked up contemporaneously?

- What metrics are available regarding throttling?

- You informed us that you have not investigated whether a query/API can be written to pull contemporaneous hyperlinked documents from various platforms including emails but are willing to investigate.

- Of the collection that Lighthouse has, how many URLs contained in them can be broken down by uniqueness and by custodian?

- Of the collection that Lighthouse has, how many revision dates are there later than the email sent date?

- You referenced a previous test where an entire custodial file was pulled for an unrelated matter (you represented it was done approximately a year ago or perhaps earlier but would confirm). Can you please provide exactly what steps were taken, what was retrieved, and what were the metrics behind data pulled?

Additionally, as we discussed on the call, we believe a 1-hour time slot is appropriate for a second meet and confer and we are available:

- Tuesday, April 2, 2024: 4:30 - 6:30pm ET

Would you please confirm whether a time in that range works for Defendants?

Separately, near the end of our meet and confer, the parties discussed questions relating to PTO No. 9 and metadata fields.  Would you please provide those written responses so that Plaintiffs may confirm that we are on the same page and potentially resolve that area of dispute?

Thank you.

Michael

Michael Sweet*
*Associate*



CHAFFIN LUHANA LLP
www.ChaffinLuhana.com
www.ChaffinLuhanaFoundation.org

*New York, New York*
600 Third Ave., 12th Floor

New York, New York 10016
Toll Free Telephone: (888) 480-1123
Toll Free Fax: (888) 499-1123
Direct Line: (412) 752-7518
*admitted only in Massachusetts

*Pittsburgh, Pennsylvania*
615 Iron City Drive
Pittsburgh, PA 15205

*Weirton, West Virginia (by appointment only):*
3200 Main St.
Weirton, WV 26062

CONFIDENTIALITY NOTE: This E-mail message contains information belonging to Chaffin Luhana LLP and may be privileged, confidential and/or protected from disclosure. The information is intended only for the use of the individual or entity named above. If you think that you have received this message in error, please E-mail the sender. If you are not the intended recipient, please delete the message and understand that any dissemination, distribution or copying is strictly prohibited.

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.