1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RANDALL S. LUSKEY (SBN: 240915)
  rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA  94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
  ratkins@paulweiss.com
JACQUELINE P. RUBIN (*Pro Hac Vice* admitted)
  jrubin@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
  cgrusauskas@paulweiss.com
CASSANDRA N. LOVE (SBN: 342723)
  clove@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
  akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY  10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*ALL CASES* | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OMNIBUS REPLY IN SUPPORT OF THEIR MOTIONS TO DISMISS PLAINTIFFS' MASTER LONG-FORM COMPLAINT**<br><br>Judge:      Honorable Charles R. Breyer<br>Date:       TBD<br>Time:       TBD<br>Courtroom:  6 - 17th Floor |

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
2001 K Street, NW
Washington DC  20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION................................................................................................1

ARGUMENT.....................................................................................................2

I.    The Claim for Vicarious Liability Fails as a Matter of Law............................2

    A.    Scope of Employment..........................................................................3

        1.    California..................................................................................3

        2.    Illinois.....................................................................................6

    B.    Apparent Agency.................................................................................8

        1.    California..................................................................................9

        2.    Texas.....................................................................................10

        3.    Florida...................................................................................11

        4.    Illinois...................................................................................12

        5.    New York...............................................................................13

    C.    Ratification......................................................................................14

        1.    California................................................................................14

        2.    Texas.....................................................................................15

        3.    Florida...................................................................................16

        4.    Illinois...................................................................................16

        5.    New York...............................................................................16

    D.    The Florida and Texas TNC Statutes Preclude Vicarious Liability...................17

        1.    Texas.....................................................................................17

        2.    Florida...................................................................................18

    E.    Common Carriers' "Non-Delegable Duty" Is Not An Independent Basis for Vicarious Liability.............................................................................19

        1.    California................................................................................20

        2.    Florida, Illinois, and Texas........................................................21

    F.    Common Carrier "Non-Delegable Duties" Claims Are Barred by Statute..........22

        1.    Texas.....................................................................................22

        2.    Florida...................................................................................24

        3.    Illinois...................................................................................26

II.    Plaintiffs Waived Their "Other Non-Delegable Duties" Claim........................26

III.    Plaintiffs' Fraud-Related Claims Fail.......................................................26

    A.    The Complaint Fails to Allege Fraud with the Required Specificity.................26

    B.    The *McKnight* Settlement Agreement Bars Certain Plaintiffs' Claims..............29

    C.    The Complaint Alleges Non-Actionable Statements.....................................30

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS
Case No. 3:23-md-03084-CRB

|  |  | D. | The Complaint Fails to Plead Fraudulent Omission or Concealment | 33 |
|  |  |  | 1. California | 33 |
|  |  |  | 2. Texas | 35 |
|  |  |  | 3. Florida | 37 |
|  |  |  | 4. Illinois | 37 |
|  |  |  | 5. New York | 39 |
| IV. | NIED Is Duplicative of Negligence and Must Be Dismissed | | | 40 |
|  | A. | California | | 41 |
|  | B. | Florida | | 41 |
|  | C. | Illinois | | 42 |
|  | D. | New York | | 42 |
| V. | Plaintiffs Fail to Allege Negligent Entrustment | | | 43 |
|  | A. | California | | 43 |
|  | B. | Texas | | 44 |
|  | C. | Florida | | 45 |
|  | D. | Illinois | | 45 |
|  | E. | New York | | 46 |
| VI. | Plaintiffs' Strict Product Liability Claims Fail As a Matter of Law | | | 47 |
|  | A. | The Uber App Is Not a Product Under Plaintiffs' Own Test | | 47 |
|  | B. | The Uber App Is Used to Obtain a Service | | 50 |
|  |  | 1. California | | 50 |
|  |  | 2. Texas | | 52 |
|  |  | 3. Florida | | 53 |
|  |  | 4. Illinois | | 55 |
|  |  | 5. New York | | 55 |
|  | C. | The TNC Statutes Confirm that the Uber App's Purpose Is to Facilitate a Service | | 56 |
|  | D. | Plaintiffs Have Failed to Identify A Defect | | 56 |
|  | E. | Plaintiffs Fail to Allege Causation As To Any Individual Plaintiff | | 57 |
| VII. | Plaintiffs Fail to State a Claim for Relief under the UCL | | | 59 |
|  | A. | Plaintiffs Cannot Assert UCL Claims Based On Injuries That Occurred Outside California | | 59 |
|  | B. | Plaintiffs Have Failed to State a Cause of Action Under the UCL | | 61 |
| VIII. | Plaintiffs Are Not Entitled to Injunctive Relief | | | 65 |
| IX. | Plaintiffs Have Failed to Plead Facts Sufficient to Support An Award of Punitive Damages | | | 69 |

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

A. California ....................................................................................... 69

B. Texas ............................................................................................... 70

C. Florida ............................................................................................. 70

D. Illinois ............................................................................................. 71

E. New York ......................................................................................... 71

X. The Law of the Incident State Governs Plantiffs' Claims ............................................. 72

XI. Amendment Would Be Futile .................................................................................. 74

CONCLUSION ................................................................................................................. 74

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*4Front Engineered Sols., Inc.* v. *Rosales*,
    505 S.W.3d 905 (Tex. 2016) ........................................................ 44

*In re 5-hour ENERGY Marketing and Sales Practices Litigation*,
    2014 WL 5311272 (C.D. Cal. Sep. 4, 2014) ................................... 27

*Adams* v. *New York City Transit Auth.*,
    666 N.E.2d 216 (N.Y. 1996) ....................................................... 21

*Adkins* v. *Sarah Bush Lincoln Health Ctr.*,
    544 N.E.2d 733 (Ill. 1989) ......................................................... 71

*In re Adobe Systems, Inc. Privacy Litigation*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ......................................... 64

*Aerojet Rocketdyne, Inc.* v. *Glob. Aerospace, Inc.*,
    2020 WL 3893395 (E.D. Cal. July 10, 2020) ............................... 61

*Aetna Cas. & Sur. Co.* v. *Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005) ....................................................... 39

*Agnew* v. *Keeler Roofing LLC*,
    2023 WL 4303165 (Fla. Cir. Ct. Mar. 8, 2023) ............................ 45

*Ahern* v. *Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) .................................... 30, 33

*Albright* v. *Am. Greetings Corp.*,
    2020 WL 3303001 (N.D. Ill. June 18, 2020) ................................... 7

*Alma W.* v. *Oakland Unified Sch. Dist.*,
    123 Cal. App. 3d 133 (Cal. Ct. App. 1981) ................................ 3, 6

*Am. Bank of Cerro Gordo & Keith* v. *Illinois*,
    37 Ill. Ct. Cl. 82 (Ill. Ct. Cl. 1984) ........................................... 12

*Am. Honda Motor Co., Inc.* v. *Milburn*,
    668 S.W.3d 6 (Tex. App. 2021) ................................................. 30

*Amstar Ins. Co.* v. *Cadet*,
    862 So. 2d 736 (Fla. Dist. Ct. App. 2003) .................................. 12

*Anderson* v. *United States*,
    612 F.2d 1112 (9th Cir. 1979) .................................................... 65

*In re Anthem, Inc. Data Breach Litigation,*
    2016 WL 3029783 (N.D. Cal. May 27, 2016) ................................................ 28

*Armstrong* v. *Davis,*
    275 F.3d 849 (9th Cir. 2001) ........................................................................ 66

*Arruda* v. *Rasier, LLC,*
    No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024) ....................... 47

*Banton* v. *Wells Fargo Bank, N.A.,*
    2019 WL 6683138 (E.D. Cal. Dec. 6, 2019) ................................................. 61

*Baptist Memorial Hospital System* v. *Sampson,*
    969 S.W.2d 945 (Tex. 1998) ........................................................................ 11

*Baptist* v. *Robinson,*
    143 Cal. App. 4th 151 (Cal. Ct. App. 2006) ................................................. 15

*Baxter-Armentrout* v. *Lyft, Inc.,*
    No. 50-2021-CA-013917-XXXX-MB (Fla. Cir. Aug. 29, 2022) ..................... 53

*Begay* v. *Medicus Healthcare Sols., LLC,*
    2015 WL 13650107 (D.N.M. Nov. 18, 2015) ............................................... 33

*Behuet & Hunt* v. *Uber Techs., Inc.,*
    2022 WL 20318684 (Cal. Super. Ct. L.A. Cnty. July 13, 2022) ..................... 47

*Benson* v. *Stafford,*
    941 N.E.2d 386 (Ill. App. Ct. 2010) ............................................................. 38

*Berger* v. *South. Pacific Co.,*
    144 Cal. App. 2d 1 (Cal. Ct. App. 1956) ................................................. 20, 21

*Bergeron* v. *Select Comfort Corp.,*
    2016 WL 155088 (W.D. Tex. Jan. 11, 2016) ................................................ 36

*Bevelacqua* v. *Brooklyn L. Sch.,*
    2013 WL 1761504 (N.Y. Sup. Ct. Apr. 22, 2013) ........................................ 40

*Beyer* v. *Symantec Corp.,*
    333 F. Supp. 3d 966 (N.D. Cal. 2018) ......................................................... 48

*Bicounty Brokerage Corp.* v. *Burlington Ins. Co.,*
    931 N.Y.S.2d 99 (N.Y. App. Div. 2011) ...................................................... 14

*Big Thirst, Inc.* v. *Donoho,*
    2024 WL 348526 (W.D. Tex. Jan. 29, 2024) ................................................ 36

*Bombardier Aerospace Corp.* v. *SPEP Aircraft Holdings, LLC,*
    572 S.W.3d 213 (Tex. 2019) .................................................................. 35, 36

*Brookes v. Lyft, Inc.*,
    2022 WL 19799628 (Fla. Cir. Ct. Sept. 30, 2022) ...................................................... 53, 54

*Brooks* v. *Eugene Burger Management Corp.*,
    215 Cal. App. 3d 1611 (Cal. Ct. App. 1989) ...................................................... 57

*Browne* v. *Lyft*,
    194 N.Y.S.3d 85 (N.Y. App. Div. 2023) ...................................................... 6

*Carr* v. *Wm. C. Crowell Co.*,
    28 Cal. 2d 652 (Cal. 1946) ...................................................... 21

*Catilina Nominees Proprietary Ltd.* v. *Stericycle, Inc.*,
    2021 WL 1165087 (N.D. Ill. Mar. 26, 2021) ...................................................... 30

*Cel-Tech Commc'ns, Inc.* v. *L. A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (Cal. 1999) ...................................................... 63, 64

*Charleston* v. *Nevada*,
    830 F. App'x 948 (9th Cir. 2020) ...................................................... 66, 68

*Checker Cab Operators, Inc.* v. *Miami-Dade County*,
    899 F.3d 908 (11th Cir. 2018) ...................................................... 25

*Chubb & Son, Inc.* v. *Cansoli*,
    726 N.Y.S.2d 398 (N.Y. App. Div. 2001) ...................................................... 14

*Cimino* v. *Raymark Indus., Inc.*,
    151 F.3d 297 (5th Cir. 1998) ...................................................... 52

*City of Los Angeles* v. *Lyons*,
    461 U.S. 95 (1983) ...................................................... 66, 67, 68

*Clark Equipment Co.* v. *Wheat*,
    92 Cal. App. 3d 503 (Cal. Ct. App. 1979) ...................................................... 9

*Commodore Cruise Line, Ltd.* v. *Kormendi*,
    344 So. 2d 896 (Fla. Dist. Ct. App. 1977) ...................................................... 16

*Como Oil Co., Inc.* v. *O'Loughlin*,
    466 So. 2d 1061 (Fla. 1985) ...................................................... 70

*Copeland* v. *Johnson*,
    2021 WL 4439395 (N.D. Ill. Sept. 28, 2021) ...................................................... 8

*Covarrubias* v. *Wendy's Props., LLC*,
    2022 WL 1238666 (N.D. Ill. Apr. 27, 2022) ...................................................... 8

*D.T.* v. *State Bd. of Educ. for New Mexico*,
    1998 WL 36030588 (D.N.M. July 13, 1998) ...................................................... 68

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

*Davidson* v. *Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ............................................................................. 65, 66

*Davila* v. *Yellow Cab Co.*,
   776 N.E.2d 720, 730 (Ill. App. Ct. 2002) .................................................................. 8

*Deburro* v. *Apple, Inc.*,
   2013 WL 5917665 (W.D. Tex. 2013) .................................................................. 30, 31

*Deloney* v. *Bd. of Educ. of Thornton Twp.*,
   666 N.E.2d 792 (Ill. App. Ct. 1996) ........................................................................... 8

*Delux Cab, LLC* v. *Uber Techs., Inc.*,
   2017 WL 1354791 (S.D. Cal. 2017) ......................................................................... 33

*DeSoto Cab Co., Inc.* v. *Uber Techs., Inc.*,
   2018 WL 10247483 (N.D. Cal. Sept. 24, 2018) ...................................................... 33

*Detwiler* v. *Bristol-Myers Squibb Co.*,
   884 F. Supp. 117, 121 (S.D.N.Y. 1995) .................................................................. 56

*Dillingham* v. *Anthony*,
   11 S.W. 139 (Tex. 1889) .......................................................................................... 15

*Disney Enters. Inc.* v. *Esprit Fin., Inc.*,
   981 S.W.2d 25 (Tex. App. 1998) .............................................................................. 15

*Doe* v. *Boy Scouts of Am.*,
   66 N.E. 3d 433 (Ill. App. Ct. 2016) ......................................................................... 39

*Doe* v. *Catholic Bishop of Chicago*,
   82 N.E.3d 1229 (Ill. App. Ct. 2017) ........................................................................ 71

*Doe* v. *City of Chicago*,
   360 F.3d 667 (7th Cir. 2004) ...................................................................................... 6

*Doe* v. *CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020) ........................................................................... 63, 64

*Doe* v. *Hagee*,
   473 F. Supp. 2d 989 (N.D. Cal. 2007) ..................................................................... 67

*Doe ex rel. Doe* v. *Lawrence Hall Youth Servs.*,
   966 N.E.2d 52 (Ill. App. Ct. 2012) ............................................................................ 8

*Doe* v. *Lyft, Inc.*,
   176 N.E.3d 863 (Ill. Ct. App. 2020) ............................................................... 6, 7, 26

*Doe* v. *Match.com*,
   789 F. Supp. 2d 1197 (C.D. Cal. 2011) ............................................................. 65, 68

*Doe* v. *Roe*,
   2013 WL 2421771 (N.D. Ill. June 3, 2013) ............................................................ 6, 7

*Doe* v. *Uber Technologies, Inc.*,
   2019 WL 6251189 (N.D. Cal. Nov. 22, 2019) ........................................................ 5, 10

*Doe* v. *Uber Techs., Inc.*,
   184 F. Supp. 3d 774 (N.D. Cal. 2016) .................................................................... 5, 21

*Doe* v. *Uber Techs., Inc.*,
   2020 WL 2097599 (N.D. Cal. May 1, 2020) ................................................................ 6

*Doe* v. *Uber Techs., Inc.*,
   551 F. Supp. 3d 341 (S.D.N.Y. 2021) .......................................................... 6, 30, 31, 33

*Doe* v. *Uber Techs.*,
   No. 20STCV48919 (Cal. Super. Ct. L.A. Cnty. June 16, 2021) .................................. 21

*Doe* v. *Willis*,
   2023 WL 2799747 (M.D. Fla. June 11, 2021) ............................................................ 12

*Doe* v. *YUM! Brands, Inc.*,
   639 S.W.3d 214 (Tex. App. 2021) ........................................................................ 10, 11

*Dorsey* v. *Portfolio Equities, Inc.*,
   540 F.3d 333 (5th Cir. 2008) ..................................................................................... 36

*Durell* v. *Sharp Healthcare*,
   183 Cal. App. 4th 1350 (Cal. Ct. App. 2010) ............................................................ 64

*Durham Transp., Inc.* v. *Valero*,
   897 S.W.2d 404 (Tex. App. 1995) ........................................................................ 22, 23

*Durk* v. *Daum Trucking, Inc.*,
   2008 WL 4671721 (N.D. Ill. Oct. 22, 2008) .............................................................. 42

*Ebby Halliday Real Estate, Inc.* v. *Dougas*,
   2019 WL 1529174 (Tex. App. April. 9, 2019) ........................................................... 32

*Ehret* v. *Uber Technologies, Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. Sept. 17, 2014) ........................................................ 60

*Eidmann* v. *Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021) ....................................................................... 63

*Eiland* v. *B.E Atlas Co.*,
   2014 WL 3811024 (N.D. Ill. July 30, 2014) ................................................................ 7

*Ellis* v. *Hansen & Adkins Auto Transp.*,
   2009 WL 4673933 (S.D. Ill. Dec. 4, 2009) ................................................................ 55

*Entergy Gulf States, Inc.* v. *Summers*,
    282 S.W.3d 433 (Tex. 2009) ......................................................................... 18

*Estate of Alex through Coker* v. *T-Mobile US, Inc.*,
    313 F. Supp. 3d 723 (N.D. Tex. 2018) ......................................................... 52

*Esurance Prop. & Cas. Ins. Co.* v. *Vergara*,
    2021 WL 2955962 (S.D. Fla. June 29, 2021) ........................................ 24, 25

*In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*,
    2024 WL 991210 (E.D.N.Y. Mar. 7, 2024) ................................................... 72

*Eyrich* v. *Estate of Waldemar*,
    765 N.E.2d 504 (Ill. App. Ct. 2002) ............................................................. 46

*Farmers Ins. Grp.* v. *Cnty. of Santa Clara*,
    11 Cal. 4th 992 (Cal. 1995) ........................................................................ 2, 3

*Farrell* v. *United States Olympic & Paralympic Committee*,
    567 F. Supp. 3d 378 (N.D.N.Y. 2021) .......................................................... 43

*Farrer* v. *U.S. Fidelity & Guaranty Co.*,
    809 So. 2d 85 (Fla. Dist. Ct. App. 2002) ..................................................... 19

*Fay* v. *Troy Cty. Sch. Dist.*,
    151 N.Y.S.3d 642 (N.Y. App. Div. 2021) ...................................................... 43

*Fearrington* v. *Boston Scientific Corp.*,
    410 F. Supp. 3d 794 (S.D. Tex. 2019) .......................................................... 70

*Fi-Evergreen Woods, LLC* v. *Estate of Robinson*,
    172 So. 3d 493 (Fla. Dist. Ct. App. 2015) ................................................... 12

*Fields* v. *Sanders*,
    29 Cal. 2d 834 (Cal. 1947) ........................................................................... 21

*First Valley Bank of Los Fresnos* v. *Martin*,
    144 S.W.3d 466 (Tex. 2004) ................................................................... 10, 11

*Fla. Power & Light Co.* v. *Dominguez*,
    295 So. 3d 1202 (Fla. Dist. Ct. App. 2019) ................................................. 70

*Fleury* v. *General Motors LLC*,
    654 F. Supp. 3d 724 (N.D. Ill. 2023) ............................................................ 39

*Flier* v. *FCA US LLC*,
    2022 WL 16823042 (N.D. Cal. Nov. 8, 2022) ............................................... 34

*Flores* v. *Uber Techs., Inc.*,
    2022 WL 20311788 (Cal. Super. Ct. L.A. Cnty. Mar. 22, 2022) ............. 47, 48

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   2001 WL 1266317 (D.N.J. Sept. 30, 1997) ................................................................ 28

*Ford* v. *Unity Hosp.*,
   299 N.E.2d 659 (N.Y. 1973) ...................................................................................... 13

*Frankenmuth Mut. Ins. Co.* v. *Magaha*,
   769 So. 2d 1012 (Fla. 2000) ...................................................................................... 16

*Freeman* v. *ABC Legal Servs., Inc.*,
   877 F. Supp. 2d 919 (N.D. Cal. July 3, 2012) ...................................................... 66, 68

*In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*,
   76 F. Supp. 3d 294 (D. Mass. 2015) .......................................................................... 72

*Fusco* v. *Uber Techs., Inc.*,
   2018 WL 3618232 (E.D. Pa. July 27, 2018) ...................................................... 6, 31, 33

*Gardner* v. *United States*,
   780 F.2d 835 (9th Cir.1986) ...................................................................................... 20

*Gomez* v. *Super. Ct.*,
   35 Cal. 4th 1125 (Cal. 2005) ..................................................................................... 20

*Goodyear Tire & Rubber Co.* v. *Mayes*,
   236 S.W.3d 754 (Tex. 2007) ...................................................................................... 45

*Gordon* v. *City of Moreno Valley*,
   687 F. Supp. 2d 930 (C.D. Cal. 2009) ........................................................................ 67

*Graham* v. *Jones*,
   46 N.Y.S.3d 329 (N.Y. App. Div. 2017) ..................................................................... 46

*Green* v. *ADT, LLC*,
   2016 WL 3208483 (N.D. Cal. June 10, 2016) ............................................................. 51

*Green* v. *Tex. Elec. Wholesalers, Inc.*,
   651 S.W.2d 4 (Tex. App. 1982) ................................................................................. 44

*Gregory* v. *Albertson's, Inc.*,
   104 Cal. App. 4th 845 (Cal. Ct. App. 2002) ............................................................... 64

*Gross* v. *Symantec Corp.*,
   2012 WL 3116158 (N.D. Cal. July 31, 2012) .............................................................. 60

*Grumman Allied Indus., Inc.* v. *Rohr Indus. Inc.*,
   748 F.2d 729 (2d Cir. 1984) ................................................................................. 39, 40

*Guerrero* v. *Lyft, Inc.*,
   2023 WL 9228975 (Cal. Super. Ct. L.A. Cnty. May 25, 2023) ..................................... 52

- xii -

*Hammerling* v. *Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022)..................................................... 63

*Hardin* v. *PDX, Inc.*,
  227 Cal. App. 4th 159 (Cal. Ct. App. 2014) .......................................... 52

*Hartless* v. *Clorox Co.*,
  2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) ........................................ 61

*Hernandezcueva* v. *E.F. Brady Co.*,
  243 Cal. App. 4th 249 (Cal. Ct. App. 2015) ...................................... 50, 51

*Hesse* v. *Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ............................................................... 29

*Higginbotham* v. *Higginbotham*,
  2022 WL 17490993 (Tex. App. Dec. 8, 2022)...................................... 36

*Hodgers-Durgin* v. *de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ............................................................. 69

*Hodsdon* v. *Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018)........................................................... 63, 64

*Holland* v. *Thompson*,
  338 S.W.3d 586 (Tex. App. 2010) ....................................................... 35

*Humana, Inc.* v. *Castillo*,
  728 So. 2d 261 (Fla. Dist. Ct. App. 1999) .......................................... 37

*Inter Mountain Mortgage, Inc.* v. *Sulimen*,
  78 Cal. App. 4th 1434 (Cal. Ct. App. 2000) ........................................ 4

*In re iPhone 4S Consumer Litig.*,
  2013 WL 3829653 (N.D. Cal. July 13, 2013)....................................... 59

*Iron City Nat'l Bank of Llano* v. *Fifth Nat'l Bank of San Antonio*,
  47 S.W. 533 (Tex. App. 1898)............................................................. 15

*Jacoves* v. *United Merch. Corp.*,
  9 Cal. App. 4th 88 (Cal. Ct. App. 1992)......................................... 43, 44

*Jane Doe No. 1* v. *Uber Techs., Inc.*,
  2020 WL 13801354 (Cal. Super. Ct. L.A. Cnty. Nov. 30, 2020)................... 47, 9

*Jones* v. *Medtronic, Inc.*,
  745 F. App'x 714 (9th Cir. 2018) ....................................................... 27

*Jones* v. *Patrick & Associates Detective Agency, Inc.*,
  442 F.3d 533 (7th Cir. 2006).......................................................... 6, 7

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

*K.P.* v. *Uber Technologies, Inc., et al.*,
  1:23-cv-02580-GLR (D. Md.) ............................................................ 2

*K.S.* v. *Sch. Dist. of Philadelphia*,
  2006 WL 314535 (E.D. Pa. Feb. 6, 2006) .......................... 66, 67, 68

*Kaplan* v. *Epstein*,
  219 So. 3d 932 (Fla. Dist. Ct. App. 2017) .................................... 19

*Karlen* v. *Uber Techs., Inc.*,
  2022 WL 3704195 (D. Conn. Aug. 27, 2022) .................................. 6

*Kearns* v. *Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ...................................................... 62

*Kitchen* v. *K-Mart Corp.*,
  697 So. 2d 1200 (Fla. 1997) .......................................................... 45

*Kokenes* v. *Cities Serv. Oil Co.*,
  321 N.E.2d 338 (Ill. App. Ct. 1974) ............................................ 13

*In re Korean Air Lines Co., Ltd.*,
  642 F.3d 685 (9th Cir. 2011) ........................................................ 28

*Kristensen* v. *Credit Payment Servs. Inc.*,
  879 F.3d 1010 (9th Cir. 2018) ...................................................... 15

*Kye* v. *New Star Realty, Inc.*,
  2016 WL 3523683 (Tex. App. June 27, 2016) .............................. 11

*L.A. Taxi Coop., Inc.*, v. *Uber Techs., Inc.*,
  114 F. Supp. 3d 852 (N.D. Cal. 2015) .......................................... 33

*LaDuke* v. *Nelson*,
  762 F.2d 1318 (9th Cir. 1985) ...................................................... 67

*Lalonde* v. *Royal Caribbean Cruises, Ltd.*,
  2019 WL 144129 (S.D. Fla. Jan. 9, 2019) .................................... 53

*Latty* v. *Jordan*,
  604 N.E.2d 1049 (Ill. App. Ct. 1992) .......................................... 45

*Lavie* v. *Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (Cal. Ct. App. 2003) ................................ 32

*Lee* v. *Oregon*,
  107 F.3d 1382 (9th Cir. 1997) ...................................................... 69

*Lemmon* v. *Snap, Inc.* (*Lemmon I*),
  995 F.3d 1085 (9th Cir. 2021) ...................................................... 52

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

*Levine* v. *Sears Roebuck & Co.*,
   200 F. Supp. 2d 180 (E.D.N.Y. 2002)........................................................ 55, 56

*Lilly* v. *Ford Motor Co.*,
   2002 WL 84603 (N.D. Ill. Jan. 22, 2002).................................................. 38

*LiMandri* v. *Judkins*,
   52 Cal. App. 4th 326 (Cal. Ct. App. 1997).............................................. 34

*Lindstrom* v. *Hertz Corp.*,
   81 Cal. App. 4th 644 (Cal. Ct. App. 2000).............................................. 44

*Lingsch* v. *Savage*,
   213 Cal. App. 2d 729 (Cal. Ct. App. 1963).............................................. 34

*Lisa M.* v. *Henry Mayo Newhall Mem'l Hosp.*,
   12 Cal. 4th 291 (Cal. 1995)..............................................................*passim*

*Lopez* v. *Southern Cal. Rapid Transit Dist.*,
   40 Cal. 3d 780 (Cal. 1985)................................................................ 20

*Lozano* v. *AT & T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007)............................................................ 63

*Lujan* v. *Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................ 66

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   91 F.4th 174 (4th Cir. 2024)............................................................ 29

*Maloney* v. *Rath*,
   69 Cal. 2d 442 (Cal. 1968).............................................................. 20

*Florida* v. *Mark Marks, P.A.*,
   698 So. 2d 533 (Fla. 1997).............................................................. 37

*Marlene F.* v. *Affiliated Psychiatric Med. Clinic, Inc.*,
   770 P.2d 278 (Cal. 1989)................................................................ 41

*Marriott Int'l.* v. *Am. Bridge Bahamas, Ltd.*,
   193 So. 3d 902 (Fla. Dist. Ct. App. 2015)............................................ 37

*Mary M.* v. *City of Los Angeles*,
   54 Cal. 3d 202 (Cal. 1991)............................................................... 6

*Mazaheri* v. *Doe*,
   2014 WL 2155049 (W.D. Okla. May 22, 2014)...................................... 6

*McClure* v. *Greater San Antonio Transportation Co.*,
  2009 WL 10670097 (W.D. Tex. Mar. 24, 2009)........................................................ 22, 23

*McGarry* v. *United States*,
  549 F.2d 587 (9th Cir. 1976)............................................................................ 20

*McKenzie* v. *U.S. Tennis Ass'n, Inc.*,
  2024 WL 665102 (M.D. Fla. Feb. 16, 2024) ........................................................ 16

*McMahan v. Deutsche Bank.*,
  938 F. Supp. 2d 795 (N.D. Ill. 2013)................................................................. 39

*McNerney* v. *Allamuradov*,
  84 N.E.3d 437 (Ill. App. Ct. 2017)................................................................... 13

*Mendez* v. *Selene Fin. LP*,
  2017 WL 1535085 (C.D. Cal. Apr. 27, 2017)....................................................... 61

*Mercury Cab Owners Ass'n* v. *Jones*,
  79 So. 2d 782 (Fla. Dist. Ct. App. 1955)............................................................ 11

*Microsoft Corp.* v. *Franchise Tax Bd.*,
  212 Cal. App. 4th 78 (Cal. Ct. App. 2012)......................................................... 48

*Mikojczyk* v. *Ford Motor Co.*,
  901 N.E.2d 329 (Ill. 2008)............................................................................ 55

*Miller* v. *HSBC Bank U.S.A., N.A.*,
  2015 WL 585589 (S.D.N.Y. Feb. 11, 2015)........................................................ 40

*Minzer v. Barga*,
  2020 WL 2621710 (N.Y. Sup. Ct. May 22, 2020) .................................................. 6

*Molien* v. *Kaiser Found. Hosps.*,
  616 P.2d 813 (Cal. 1980).............................................................................. 41

*Moll* v. *Griffith*,
  173 N.Y.S.3d 754 (N.Y. App. Div. 2022)........................................................... 46

*Moro-Romero* v. *Prudential-Bache Sec., Inc.*,
  1991 WL 494175 (S.D. Fla. Aug. 26, 1991)........................................................ 12

*Morton* v. *McKenna*,
  2010 WL 591085 (N.Y. Sup. Ct. Feb. 11, 2010)................................................... 46

*Moskowitz* v. *Masliansky*,
  155 N.Y.S.3d 414 (N.Y. App. Div. 2021)........................................................... 71

*Muller-Paisner* v. *TIAA*,
  289 Fed. Appx. 461 (2d Cir. 2008)................................................................... 40

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

*Mullins* v. *Harrell*,
   490 So. 2d 1338 (Fla. Dist. Ct. App. 1986) .................................................. 45

*Murray* v. *Uber Techs., Inc.*,
   486 F. Supp. 3d 468 (D. Mass. 2020) ........................................................ 6

*Nations Bank, N.A.* v. *Dilling*,
   922 S.W.2d 950 (Tex. 1996) ...................................................................... 10

*Nationwide Biweekly Admin., Inc.* v. *Super. Ct.*,
   9 Cal. 5th 279 (Cal. 2020) ......................................................................... 64

*Nazareth* v. *Herndon Ambulance Serv. Inc.*,
   467 So. 2d 1076 (Fla. Dist. Ct. App. 1985) ................................................ 24

*Nazemi* v. *Specialized Loan Servicing, LLC*,
   637 F. Supp. 3d 856 (C.D. Cal. 2022) .......................................... 62, 63 64

*New Texas Auto Auction Servs., L.P.* v. *Gomez De Hernandez*,
   249 S.W.3d 400 (Tex. 2008) ...................................................................... 52

*In re Nuvaring Products Liability Litigation*,
   2009 WL 4825170 (E.D. Mo. Dec. 11, 2009) ....................................... 27, 28

*Odyssey Re (London) Ltd.* v. *Stirling Cooke Brown Holdings Ltd.*,
   85 F.Supp.2d 282 (S.D.N.Y. 2000) ........................................................... 40

*In re OnStar Contract Litigation*,
   600 F. Supp. 2d 861 (E.D. Mich. 2009) ............................................... 73, 74

*In re Orthopedic Bone Screw Products Liability Litigation*,
   1997 WL 109595 (E.D. Pa. Mar. 7, 1997) .................................................. 27

*Owens-Corning Fiberglas Corp.* v. *Ballard*,
   749 So. 2d 483 (Fla. 1999) ........................................................................ 71

*P.T. Bank Cent. Asia* v. *ABN AMRO Bank N.V.*,
   754 N.Y.S.2d 245 (N.Y. App. Div. 2003) .................................................. 39

*In re Packaged Seafood Prods. Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) ...................................................... 72

*Parlato* v. *Equitable Life Assurance Society of the United States*,
   749 N.Y.S.2d 216 (N.Y. App. Div. 2002) .................................................. 13

*Parsons* v. *Winter*,
   491 N.E.2d 1236 (Ill. App. Ct. 1986) ......................................................... 71

*Paulsen* v. *Abbott Labs.*,
   2017 WL 11886538 (N.D. Ill. Mar. 15, 2017) ........................................... 55

- xvii -

*Payne* v. *Off. of the Comm'r of Baseball,*
    705 F. App'x 654 (9th Cir. 2017) ................................................................. 67, 68

*PC-41 Doe* v. *Poly Prep Country Day Sch.,*
    590 F. Supp. 3d 551 (E.D.N.Y. 2021) ................................................................ 43

*Philips* v. *DePaul Univ.,*
    19 N.E.3d 1019 (Ill. App Ct. 2014) ................................................................... 37

*Pierson* v. *Sharp Mem'l Hosp., Inc.,*
    216 Cal. App. 3d 340 (Cal. Ct. App. 1989) ........................................................ 50

*Pippen* v. *Pedersen & Houpt,*
    986 N.E.2d 697 (Ill. App. Ct. 2013) .................................................................. 42

*Pizza Hut, Inc.* v. *Papa John's International, Inc.,*
    227 F.3d 489 (5th Cir. 2000) ......................................................................... 32, 33

*Plooy* v. *Paryani,*
    657 N.E.2d 12 (Ill. Ct. App. 1995) .................................................................... 13

*Polanco* v. *Lyft, Inc.,*
    2021 Cal. Super. LEXIS 60679 (Super. Ct. Orange Cnty. May 13, 2021) ............ 47

*Prentice* v. *R.J. Reynolds Tobacco Co.,*
    338 So. 3d 831 (Fla. 2022) ................................................................................ 32

*Prisco* v. *New York,*
    804 F. Supp. 518 (S.D.N.Y. 1992) .................................................................... 17

*Prunty* v. *Ark. Freightways, Inc.,*
    16 F.3d 649 (5th Cir. 1994) .............................................................................. 15

*Rawhide Mesa-Partners, Ltd.* v. *Brown McCarroll, L.L.P,*
    344 S.W.3d 56 (Tex. App. 2011) ...................................................................... 35

*In re Refco Inc. Sec. Litig.,*
    826 F. Supp. 2d 478 (S.D.N.Y. 2011) ............................................................... 73

*Richardson* v. *Crawford,*
    2011 WL 4837849 (Tex. App. Oct. 12, 2011) ................................................... 44

*Robertson* v. *PHF Life Ins. Co.,*
    702 So. 2d 555 (Fla. Dist. Ct. App. 1997) ......................................................... 37

*Robinson* v. *Wieboldt Stores, Inc.,*
    104 Ill. App. 3d 1021 (Ill. Ct. App. 1982) ......................................................... 16

*Rodgers* v. *Kemper Constr. Co.,*
    50 Cal. App. 3d 608 (Cal. App. 1975) ................................................................. 3

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

*Rodriguez* v. *Ford Motor Co.*,
   596 F. Supp. 3d 1050 (N.D. Ill. 2022)................................................................. 39

*Roe* v. *Roman Cath. Archdiocese of N.Y.*,
   2024 WL 1806072 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 25, 2024)........................... 43

*Samantha B.* v. *Aurora Vista Del Mar, LLC*,
   77 Cal. App. 5th 85 (Cal. Ct. App. 2022).................................................. 4, 5, 15

*Sanlu Zhang* v. *Royal Caribbean Cruises, Ltd.*,
   2019 WL 8895223 (S.D. Fla. Nov. 15, 2019)................................................... 30

*Schrager* v. *N. Cmty. Bank*,
   767 N.E.2d 376 (Ill. App. Ct. 2002)................................................................. 38

*Estate of Scott*,
   2020 WL 2736466 (Tex. App. May 27, 2020)............................................. 35, 36

*Scripps Clinic* v. *Super. Ct.*,
   108 Cal. App. 4th 917 (Cal. Ct. App. 2003).................................................... 64

*Sebastian* v. *D.C.*,
   636 A.2d 958 (D.C. 1994)............................................................................... 21

*Seitlin & Co.* v. *Doebler*,
   489 So. 2d 1200 (Fla. Dist. Ct. App. 1986) .................................................... 12

*Sharpe* v. *Lyft, Inc.*,
   2024 WL 278913 (S.D. Tex. Jan. 10, 2024)..................................................... 36

*Sheffield* v. *Cent. Freight Lines, Inc.*,
   435 S.W.2d 954 (Tex. App. 1968).................................................................... 15

*Shroyer* v. *New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ........................................................................ 61

*Simila* v. *Am. Sterling Bank*,
   2010 WL 3988171 (S.D. Cal. Oct. 12, 2010)................................................... 64

*Singh* v. *Bascom*,
   2010 Fla. Cir. LEXIS 7366 (Fl. Cir. Dept. Dec. 14, 2010)........................ 41, 42

*Smith* v. *Superior Ct.*,
   10 Cal. App. 4th 1033 (Cal. Ct. App. 1992)..................................................... 69

*In re Soc. Media Adolescent Addition/Pers. Inj. Prods. Liab. Litig.*,
   2023 WL 752491 (N.D. Cal. Nov.14, 2023)............................................... 48, 49

*Soltis* v. *New York*,
   568 N.Y.S.2d 470 (N.Y. App. Div. 1991).......................................................... 14

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

*South Central Bell Telephone Co.* v. *Barthelemy,*
    643 So. 2d 1240 (La. 1994) ................................................................. 48

*Squires-Cannon* v. *Forest Preserve Dist. of Cook Cnty.,*
    897 F.3d 797 (7th Cir. 2018) ............................................................... 38

*St. Joseph Hosp.* v. *Corbetta Const. Co.,*
    316 N.E.2d 51 (Ill. App. Ct. 1974) ....................................................... 32

*Standard Funding Corp.* v. *Lewitt,*
    678 N.E.2d 874 (N.Y. 1997) ................................................................ 13

*Stanley* v. *Kelly,*
    173 N.Y.S.3d 750 (N.Y. App. Div. 2022) ............................................. 46

*Stearns* v. *Select Comfort Retail Corp.,*
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ................................................ 62

*Steckman* v. *Hart Brewing, Inc.,*
    143 F. 3d 1293 (9th Cir. 1998) ............................................................. 74

*Stern* v. *Ritz Carlton Chicago,*
    702 N.E.2d 194 (Ill. App. Ct. 1998) ....................................................... 8

*Sullivan* v. *Oracle Corp.,*
    51 Cal. 4th 1191 (2011) ................................................................. 59, 60

*Suzlon Wind Energy Corp.* v. *Shippers Stevedoring Co.,*
    662 F. Supp. 2d 623 (S.D. Tex. 2009) .................................................. 36

*In re Takata Airbag,*
    2017 WL 775811 (S.D. Fla. Feb. 27, 2017) .......................................... 37

*In re Takata Airbag Prods. Liab. Litig.,*
    462 F. Supp. 3d 1304 (S.D. Fla. 2020) ................................................. 72

*Talbott* v. *Csakany,*
    199 Cal. App. 3d 700 (Cal. Ct. App. 1988) .......................................... 43

*Tallahassee Furniture Co.* v. *Harrison,*
    583 So. 2d 744 (Fla. Dist. Ct. App. 1991) ............................................ 12

*Taylor* v. *The Point at Saranac Lake, Inc.,*
    23 N.Y.S.3d 682 (N.Y. App. Div. 2016) .............................................. 14

*Taylor* v. *United States,*
    2013 WL 3223420 (C.D. Cal. June 25, 2013) ........................................ 3

*Terter v. Clemens,*
    112 N.E.2d 1340 (Ill. 1986) ................................................................. 45

*Thomas* v. *Farrago*,
  62 N.Y.S.3d 478 (N.Y. App. Div. 2017) ........................................................................ 71

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (Cal. 2009) ........................................................................ 60

*Toulon* v. *Cont'l Cas. Co.*,
  877 F.3d 725 (7th Cir. 2017) ........................................................................ 38

*In re Trasylol Products Liability Litigation*,
  2009 WL 577726 (S.D. Fla. Mar. 5, 2009) ........................................................................ 28

*In re Uber Rideshare Cases*,
  No. CJC-21-005188 (Cal. Super. Ct. S.F. Cnty. Jan. 23, 2023) ................................... *passim*

*Valladares* v. *Bank of Am. Corp.*,
  197 So. 3d 1 (Fla. 2016) ........................................................................ 70

*Van Zeeland* v. *Rand McNally*,
  532 F. Supp. 3d 557 (N.D. Ill. 2021) ........................................................................ 38

*In re Vaxart, Inc. Securities Litigation*,
  576 F. Supp. 3d 663 (N.D. Cal. 2021) ........................................................................ 32

*Ventura* v. *ABM Indus., Inc.*,
  212 Cal. App. 4th 258 (Cal. Ct. App. 2012) ........................................................................ 15

*Verhelst* v. *Michael D's Restaurant San Antonio, Inc.*
  154 F. Supp. 2d 959 (W.D. Tex. 2001) ........................................................................ 15

*VIA Metro. Transit* v. *Meck*,
  620 S.W.3d 356 (Tex. 2020) ........................................................................ 21

*Villareal* v. *R.J. Reynolds Tobacco Co.*,
  839 F.3d 958 (11th Cir. 2016) ........................................................................ 19

*In re Volkswagen Clean Diesel*,
  349 F. Supp. 3d 881 (N.D. Cal. 2018) ........................................................................ 28

*Wagner* v. *National Union Fire Insurance Co. of Pittsburgh*,
  2018 WL 6258891 (C.D. Cal. Mar. 8, 2018) ........................................................................ 62

*Warren* v. *Dep't of Admin.*,
  554 So. 2d 568 (Fla. Dist. Ct. App. 1989) ........................................................................ 12

*Wells Fargo Home Mortg., Inc.* v. *Hiddekel Church of God, Inc.*,
  2004 WL 258144 (N.Y. Sup. Ct. Feb. 10, 2004) ........................................................................ 14

*White* v. *County of Orange*,
  166 Cal. App. 3d 566 (Cal. Ct. App. 1985) ........................................................................ 9

*Wiechmann Eng'rs* v. *State of California ex rel. Dept. Pub. Wks.*,
  31 Cal. App. 3d 741 (Cal. Ct. App. 1973)................................................................ 35

*Wigod* v. *Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012)................................................................ 38, 39

*Wilczynski* v. *Gates Cmty. Chapel of Rochester, Inc.*,
  2022 WL 446561 (W.D.N.Y. Feb. 14, 2022)................................................................ 43

*Wisniewski* v. *Diocese of Belleview*,
  943 N.E.2d 43 (Ill. App. Ct. 2011)................................................................ 39

*Wolkstein* v. *Morgenstern*,
  713 N.Y.S.2d 171 (N.Y. App. Div. 2000)................................................................ 42

*Wyatt* v. *McGregor*,
  855 S.W.2d 5 (Tex. App. 1993)................................................................ 15

*Wyndham Hotel Co.* v. *Self*,
  893 S.W.2d 630 (Tex. App. 1994)................................................................ 11

*Xue Lu* v. *Powell*,
  621 F.3d 944 (9th Cir. 2010)................................................................ 4, 5

*XYZ Two Way Radio Serv., Inc.* v. *Uber Techs., Inc.*,
  214 F. Supp. 3d 179 (E.D.N.Y. 2016)................................................................ 31, 33

*Yanez* v. *United States*,
  63 F.3d 870 (9th Cir. 1995)................................................................ 20

*Z.M.L.* v. *D.R. Horton, Inc.*,
  2021 WL 3501099 (M.D. Fla. June 11, 2021)................................................................ 12

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
  546 F. Supp. 3d 1192 (S.D. Fla. 2021)................................................................ 73

*Zedella* v. *Gibson*,
  650 N.E.2d 1000 (Ill. 1995)................................................................ 45

*Ziencik* v. *Snap, Inc.*,
  2023 WL 2638314 (C.D. Cal. Feb. 3, 2023)................................................................ 48

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
  2017 WL 1458193 (D. Mass. Apr. 24, 2017)................................................................ 27

**Statutes**

Cal. Civ. Code § 2100................................................................ 64

Cal. Civ. Code § 2307................................................................ 15

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

Cal. Pub. Util. Code § 5431(c) ................................................................ 56

Fla. Stat. § 323 .......................................................................................... 24

Fla. Stat. § 627 ..................................................................................... *passim*

Fla. Stat. § 768 .......................................................................................... 70

Ill. Comp. Stat. Ann. 57/25 ................................................................. 26, 56

N.Y. Veh. & Traf. L. §§ 1691-1700 ......................................................... 56

Tex. Civ. Prac. & Rem. Code § 41 ..................................................... 18, 70

Tex. Civ. Prac. & Rem. Code § 150E ................................................. 17, 18

Tex. Occ. Code § 2402 .......................................................... 22, 23, 24, 56

Tex. Rev. Civ. Stat. Ann. Art. 911 ............................................................ 22

Tex. Transp. Code § 5 ............................................................................... 23

**Other Authorities**

CACI No. 400 ............................................................................................ 41

CACI No. 1620 .......................................................................................... 41

Fla. Jur. 2d Products Liability § 20 .......................................................... 54

Fla. Jur. 2d Negligent Entrustment § 48 .................................................. 45

N.Y. Jur. 2d Agency § 296 ........................................................................ 14

Restatement (Second) of Agency § 267 (Am. L. Inst. 1958) .......... 10, 11, 12

Restatement (Third) of Torts: Products Liability ............................... *passim*

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**INTRODUCTION**

3          There is rhetoric, and then there is reality.  Plaintiffs' Opposition ("Opp.") is long on the former,

4   not on the latter.  While sexual assault is a deplorable problem plaguing every aspect of society, the most

5   serious incidents of sexual misconduct by drivers using Uber's platform are exceptionally rare:  0.0003%

6   of rides.  In other words, over 99.9% of rides end with no such incidents.  Though that fact is actually part

7   of the Master Long-Form Complaint ("Master Complaint" or "Compl."), Plaintiffs left it out of their brief.[1]

8   Plaintiffs also fail to mention that Uber has openly confronted the problem by voluntarily publishing, and

9   widely disseminating, detailed information about the number of sexual assaults on its platform - -

10  something extraordinary that no other business has done with so much depth and detail.  And with a safety

11  operation involving hundreds of employees, Uber regularly develops new safety features to reduce the

12  number of future incidents.  That is not the conduct of a company accused of negligence and worse - -

13  because that is not the kind of company Uber is.

14          As for Plaintiffs' pleading, their Opposition reveals a single unifying defect in the Master

15  Complaint:  Plaintiffs are attempting to repackage their negligence claims, meritless as they are, in the

16  guise of other claims, none of which state a viable cause of action:

17
18      •  To sustain their *vicarious* liability claim (Claim G), Plaintiffs invoke a theory of *direct* liability for
           common carriers, the same basis for a separate cause of action that Uber did not move to dismiss
19         in California and moved to dismiss on statutory grounds in Texas, Florida, and Illinois (Claim E).
           Plaintiffs did not bring Claim E under New York law.

20      •  To sustain their fraud claim (Claim C), Plaintiffs concede they cannot satisfy Rule 9(b), but argue
21         that Uber has failed to implement what Plaintiffs think are better safety features.  That is not fraud,
           that is the basis of the negligence claim.

22      •  To sustain their product liability claim (Claim H), Plaintiffs rhetorically say that Uber has failed
23         to "design away" sexual misconduct, even though they cannot identify any actual design defect in
           the app software.

24      •  To sustain their UCL claim (Claim I), Plaintiffs say that Uber allegedly violated their "duties of
25         care."  Negligence cannot sustain a UCL claim.

26          Repeating allegations of negligent conduct does not suffice to deny Uber's Motions.  Accordingly,

27
_____

28  [1] *See* Compl. ¶ 273; Uber, 2017-18 U.S. Safety Report at 10.

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS
                                                                Case No. 3:23-md-03084-CRB

Uber's Motions to Dismiss[2] should be granted and the causes of action dismissed with prejudice.[3]

## ARGUMENT

## I.   THE CLAIM FOR VICARIOUS LIABILITY FAILS AS A MATTER OF LAW

Nothing in Plaintiffs' Opposition ("Opp.") suffices to get around the California Supreme Court's holding that where "the employee substantially deviates from the employment duties for personal purposes," the "employer will not be held vicariously liable for an employee's malicious or tortious conduct." *Farmers Ins. Grp.* v. *Cnty. of Santa Clara*, 11 Cal. 4th 992, 1005 (Cal. 1995). That controlling authority, and the numerous cases applying it, requires the dismissal of Plaintiffs' *respondeat superior* claim: Claim G, "Vicarious Liability for Drivers' Torts (Employee, Retained Control, Apparent Agency, Ratification, California Public Utilities Code)."

Plaintiffs' foreseeability, agency, and ratification arguments are not grounds for disregarding long-established precedent, especially when the facts alleged in the Master Complaint itself show that the independent drivers' malicious and tortious conduct had "no purpose connected" to their driving duties and were "motivated for strictly personal reasons." Likewise, Uber's alleged common carrier "non-delegable duties" are not grounds for denying the Motions because such alleged duties are not a legal theory of *respondeat superior* liability. In fact, the Complaint contains an entirely separate and distinct cause of action based on that theory, one that is not the subject of this motion: Claim E, "Common Carrier's Non-Delegable Duty to Provide Safe Transportation." Whatever the merits of that claim, it is not a basis for denying dismissal of Plaintiffs' vicarious liability cause of action. In any event, statutes in Florida, Illinois, and Texas bar Plaintiffs' Non-Delegable Duties claim, and statutes in Florida and Texas

---

[2] This is an omnibus reply in support of five of Uber's Motions to Dismiss: Defs' Motion to Dismiss Pursuant to California Law, ECF 384 ("Cal. Mot."), Defs' Motion to Dismiss Pursuant to Florida Law, ECF 386 ("Fla. Mot."), Defs' Motion to Dismiss Pursuant to Illinois Law, ECF 388 ("Ill. Mot."), Defs' Motion to Dismiss Pursuant to New York Law, ECF 385 ("N.Y. Mot."), and Defs' Motion to Dismiss Pursuant to Texas Law, ECF 387 ("Tex. Mot.") (collectively, "Motions").

[3] As permitted by the Court, on April 1, 2024, Uber re-noticed its previously-filed motion to dismiss the complaint in *K.P.* v. *Uber Technologies, Inc., et al.*, 1:23-cv-02580-GLR (D. Md.). *See* ECF 383, 389. That case involved an incident which allegedly occurred in the United Arab Emirates and in its motion, Uber argued that K.P.'s claims failed under UAE law. On April 29, 2024, the day before K.P.'s opposition was due, K.P. filed a notice of dismissal on the case's individual docket, and the court entered it. 3:24-cv-00772-CRB, ECF 20. In light of this dismissal, Uber does not further address the K.P. claim in its reply.

preclude vicarious liability.

  **A.**  <u>**Scope of Employment**</u>

    1. <u>California</u>

  In their Opposition, Plaintiffs try to recast the scope of employment test for vicarious liability under California law as "foreseeability." But their argument about the alleged foreseeability of sexual assaults erroneously equates negligence (which is based on *Uber's* conduct) with vicarious liability (which is based on the *drivers'* conduct). The California Supreme Court has rejected that approach. Foreseeability for vicarious liability "must be distinguished from 'foreseeability' as a test for negligence." *Farmers*, 11 Cal. 4th at 1004 (quoting *Rodgers* v. *Kemper Constr. Co.*, 50 Cal. App. 3d 608, 618-19 (Cal. App. 1975)). For negligence, "'foreseeable' means a level of probability which would lead a prudent person to take effective precautions." *Id.* For vicarious liability, foreseeability is part and parcel of the scope of employment test: was the tortious conduct of employees an expected part of performing and fulfilling their job responsibilities or a deviation from those responsibilities for personal gratification. *See*, *e.g., Lisa M.* v. *Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 302 (1995); *Taylor* v. *United States*, 2013 WL 3223420, at *3 (C.D. Cal. June 25, 2013) ("[T]he scope of employment is limited by an element of foreseeability.").

  Plaintiffs' foreseeability argument reads just like their negligence claim: the assaults allegedly were foreseeable because Uber purportedly knew of many other "incidents and allegations." *See* Compl. ¶¶ 279, 281; Opp. at 41-42. That is the basis of Plaintiffs' allegation of negligence - - that Uber breached its duty of care to prevent incidents. Compl. ¶ 365. But as applied to vicarious liability, rather than negligence, "[t]he [foreseeability] question is not one of statistical frequency, but of a relationship between the nature of the work involved and the type of tort committed." *Lisa M.*, 12 Cal. 4th at 302. Thus, sexual misconduct is not foreseeable where it is "an independent, self-serving pursuit wholly unrelated to [] [job] duties." *Alma W.* v. *Oakland Unified Sch. Dist.*, 123 Cal. App. 3d 133, 141 (Cal. Ct. App. 1981).

  Plaintiffs also argue the assaults were "foreseeable" because passengers are "alone" and "vulnerable," the vehicles are enclosed, and drivers can "control[] the passenger's ability to exist [sic] the vehicle." Opp. at 42. That is the same argument that was rejected in *Lisa M.* where the male ultrasound technician attacked a vulnerable female patient - - she was pregnant, injured from a fall, alone in a dark

-3-

room with the assailant, and subject to a physically invasive medical procedure. *Lisa M.*, 12 Cal. 4th at 294-95. The California Supreme Court held that the sexual assault was not within the scope of employment because the "technician simply took advantage of solitude with a naive patient to commit an assault for reasons unrelated to his work." *Id.* at 301.

Seeking a different outcome here, Plaintiffs cite *Xue Lu* v. *Powell*, 621 F.3d 944 (9th Cir. 2010), and *Samantha B.* v. *Aurora Vista Del Mar*, *LLC*, 77 Cal. App. 5th 85 (Cal. Ct. App. 2022), where courts found the *respondeat superior* allegations in those cases to be sufficient. But Plaintiffs do not, and cannot, contend that those cases - - involving entirely unique fact patterns - - changed the state of the law established by California Supreme Court authority.

In *Xue Lu*, the perpetrator asylum officer had, in the course of arranging and carrying out asylum application interviews, explained to the victims that he could, as part of his job duties, grant their asylum claims in exchange for engaging in sexual activity. 621 F.3d at 946. On those peculiar facts, the Ninth Circuit upheld the allegation of *respondeat superior* liability by analogy to *Inter Mountain Mortgage*, *Inc.* v. *Sulimen*, 78 Cal. App. 4th 1434 (Cal. Ct. App. 2000), a case involving a real estate broker who had submitted a fraudulent loan application as part of a real estate transaction. *Xue Lu*, 621 F.3d at 949. Notably, *Xue Lu* involved Federal Tort Claims Act (FTCA) claims for interference with civil rights and intentional infliction of emotional distress, not for sexual assault. *Id.* at 950. Because the FTCA prohibited a theory of negligence, id. dismissing the other claims would have left the victims with no relief for a heinous abuse of police power.

For these same reasons, Judge Corley held in *Doe* v. *Uber Technologies*, *Inc.*, that the decision in *Xue Lu* does *not* support vicarious liability claims against Uber based on allegations similar to those here:

> First, it is not apparent that the [*Xue Lu*] court held that the immigration officer was acting within the scope of his employment when he sexually assaulted the plaintiffs. In holding that the officer was acting within the scope of his employment, the court relied on a case involving a loan broker and a fraudulent loan application—not a sexual assault. *Id.* at 949 (discussing *Inter Mountain Mortgage, Inc.* v. *Sulimen*, 78 Cal. App. 4th 1434, 1440 (2006)). Second, the actual holding of the court was that the government could not be liable for the officer's sexual assault. *Id.* at 949-50 (holding that "the torts for which the plaintiffs may be compensated by [the officer's] employer are the infliction of emotional distress and interference with their civil rights" rather than "sexual misconduct"). Third,

> *Xue Lu* is arguably analogous to the law enforcement sexual assault context given the power and authority an immigration officer has over immigration applicants.  The facts alleged here are not.

2019 WL 6251189, at *5 (N.D. Cal. Nov. 22, 2019).

*Samantha B.* likewise is distinguishable.  There, the court held that a mental health worker's sexual abuse of a long-term patient was within the scope of employment because the worker's "motivating emotions were fairly attributable to work-related events or conditions."  *Samantha B.*, 77 Cal. App. 5th at 108 (quoting *Lisa M.*, 12 Cal. 4th at 301).  Unlike here and *Lisa M.*, the mental health worker's job duties included "helping patients with daily living activities" and being "personally involved with the patients over an extended period of time."  *Id.*  In the JCCP, Judge Schulman found *Samantha B.* inapposite because it fit within the narrow category of cases in which a vicarious liability claim could be sustained where the perpetrator might, as part of his job, develop "feelings predictably created by the [long-term] therapeutic relationship."  *In Re: Uber Rideshare Cases*, CJC-21-005188, at 8 (Cal. Super. Ct. S.F. Cnty. June 22, 2023) ("*JCCP Demurrer Order*") (quoting *Samantha B.*, 77 Cal. App. 5th at 108).  The short-term "relationship" between a driver and passenger is not comparable:  "drivers are not therapists or mental health workers, their interactions with their passengers typically are brief and technical and do not involve physical contact, and any sexual assaults they may engage in are not fairly attributable to work-related events or conditions."  *Id.*

Plaintiffs lastly cite a Northern District of California case concluding, against the weight of authority, that whether a driver's assault is within the scope of employment is a question of fact.  *See* Opp. at 25 (citing *Doe* v. *Uber Techs.*, *Inc.*, 184 F. Supp. 3d 774, 787 (N.D. Cal. 2016)).  But the decision contains little analysis.  Judge Corley's more recent opinion took exception to that decision, noting that "*Lisa M.* holds that [a passenger's] vulnerability cannot be a basis for finding that a sexual assault assailant was acting within the scope of his employment."  *Doe*, 2019 WL 6251189, at *5.  Applying *Lisa M.*, the court concluded that Uber could not be vicariously liable because the complaint did "not plausibly allege that the sexual assault arose from the assailant's job to drive Plaintiff to her chosen destination," and the assault was not foreseeable for vicarious liability purposes because it was "the independent product of the assailant's aberrant decision to engage in conduct unrelated to his duties."  *Id.* at *4-5.  Other courts around

1   the country have come to the same conclusion.[4]

2       Plaintiffs conclude by contending that the Court should use vicarious liability to "prevent[] future

3   injuries, assur[e] compensation to victims, and sprea[d] the losses."  Opp. at 45 (quoting *Lisa M.*, 12 Cal.

4   4th at 304).  But under California law, "[t]he 'spread the risk' concept underlying the doctrine of

5   respondeat superior" is not "a legal artifice invoked to reach a deep pocket."  *Alma W.*, 123 Cal. App. 3d

6   at 143-44.  An alleged employee's scope of employment does not expand in proportion to the employer's

7   revenue under some sort of "deep pocket" theory.  Otherwise, *Lisa M.*, *Alma W.*, and numerous other cases

8   would not have been dismissed.

9               2.    Illinois

10      Plaintiffs argue that Illinois law construes the scope of alleged employment more broadly than

11  California, such that the allegations of sexual assault here fall within that scope.  Not so.  The cases on

12  which Plaintiffs rely, primarily *Doe* v. *Roe*, 2013 WL 2421771 (N.D. Ill. June 3, 2013), and *Jones* v.

13  *Patrick & Associates Detective Agency, Inc.*, 442 F.3d 533 (7th Cir. 2006), actually illustrate why the

14  vicarious liability claim *should* be dismissed under Illinois law.

15      *Doe* v. *Roe* and *Jones* both involved attacks by law enforcement officers.  They thus fit within a

16  group of inapposite cases involving police abuse of the power inherent in, and part of, their jobs - - *i.e.,*

17  brandishing a gun and a badge.  *See Mary M.* v. *City of Los Angeles*, 54 Cal. 3d 202, 217-18 (Cal. 1991)

18  ("In view of the considerable power and authority that police officers possess, it is neither startling nor

19  unexpected that on occasion an officer will misuse that authority by engaging in assaultive conduct. . . .

20  [T]he risk of such tortious conduct is broadly incidental to the enterprise of law enforcement, and thus

21  liability for such acts may appropriately be imposed on the employing public entity."); *see also Doe* v.

22  *City of Chicago*, 360 F.3d 667, 671-72 (7th Cir. 2004) ("[T]he power of a rogue police officer to do harm

23  is so great that more than ordinary care on the part of his employer may be required in order to provide

---

[4] *See, e.g.*, *Karlen* v. *Uber Techs., Inc.*, 2022 WL 3704195, at *4-5 (D. Conn. Aug. 27, 2022); *Mazaheri* v. *Doe*, 2014 WL 2155049, at *2 (W.D. Okla. May 22, 2014); *Fusco* v. *Uber Techs., Inc.*, 2018 WL 3618232, at *10 (E.D. Pa. July 27, 2018); *Minzer* v. *Barga*, 2020 WL 2621710, at *1-2 (N.Y. Sup. Ct. May 22, 2020); *Doe* v. *Lyft, Inc.*, 176 N.E.3d 863, 870 (*Ill. App. Ct.* 2020); *Murray* v. *Uber Techs., Inc.*, 486 F. Supp. 3d 468, 476-77 (D. Mass. 2020); *Browne* v. *Lyft*, 194 N.Y.S.3d 85, 88 (N.Y. App. Div. 2023); *Doe* v. *Uber Techs., Inc.*, 551 F. Supp. 3d 341, 353 (S.D.N.Y. 2021); *Doe* v. *Uber Techs., Inc.*, 2020 WL 2097599, at *5 (N.D. Cal. May 1, 2020) (Corley).

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS
Case No. 3:23-md-03084-CRB

adequate protection to the public.").

In *Doe* v. *Roe*, the perpetrator was an on-duty policer officer who began questioning the plaintiff while she waited on the street to hail a cab. 2013 WL 2421771, at *1.  The police officer was "driving his police vehicle, wearing his uniform and badge, and carrying his department-issued weapon." *Id.* at *4. The police officer directed the plaintiff to enter the police vehicle, where he forced the plaintiff to perform oral sex on him. *Id.* at *1.  The court explained that the police officer's conduct - - stopping a member of the public and making demands of that person using his official authority - - "was within the scope of *what a police officer is employed to do* as part of his community policing duties." *Id.* at *4 (emphasis added).  The police officer had been entrusted with the power to make the plaintiff get into his car by virtue of his law enforcement authority; the attack flowed directly from the fact that the perpetrator was "a police officer in uniform." *Id.*  (quoting *Jones*, 442 F.3d at 536); *see also Albright* v. *Am. Greetings Corp.*, 2020 WL 3303001, at *3 n.5 (N.D. Ill. June 18, 2020) (dismissing suit against employer arising out of sexual assault and distinguishing *Doe* v. *Roe* because "scope of employment" is interpreted more broadly where employee is a police officer); *Eiland* v. *B.E Atlas Co.*, 2014 WL 3811024, at *4 (N.D. Ill. July 30, 2014) (same).

Similarly, in *Jones*, a private security guard attacked individuals who had been detained by the police after one of those individuals injured the security guard at his job site. 442 F.3d at 534.  The security guard then went to the police station in uniform and entered the holding cell to assault the individual using his employer-issued "billy club and a can of mace." *Id.* at 534.  The Seventh Circuit found that the security guard's actions were within the scope of his employment because without his uniform, the guard would not have been granted access to the cell and would not have been in a position to commit the attack. *Id.* at 536.

*Doe* v. *Roe* and *Jones* both predate the directly on-point *Doe* v. *Lyft* Illinois Appellate Court decision cited in Uber's opening brief. *See* Ill. Mot. at 7.  And, in any case, they stand for the proposition (at least in Illinois and California) that empowering individuals with the authority to use force and violence to perform their jobs may result in them abusing that authority in performing their jobs - - *i.e.,* within the scope of their employment.  As the subsequent decision in *Doe* v. *Lyft* demonstrates, it remains the law that for individuals whose jobs do not involve the use of physical force, "an act of sexual assault, 'by its

very nature, precludes the conclusion that it was committed within the scope of employment.'"  176 N.E.3d at 870 (quoting *Doe ex rel. Doe* v. *Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 61 (Ill. App. Ct. 2012));  *see also Stern* v. *Ritz Carlton Chicago*, 702 N.E.2d 194, 197-98 (Ill. App. Ct. 1998); *Deloney* v. *Bd. of Educ. of Thornton Twp.*, 666 N.E.2d 792, 797-99 (Ill. App. Ct. 1996); *Covarrubias* v. *Wendy's Props., LLC*, 2022 WL 1238666 (N.D. Ill. Apr. 27, 2022).

The third case on which Plaintiffs primarily rely, *Davila* v. *Yellow Cab Co.*, is not at all analogous to this case.  776 N.E.2d 720, 730 (Ill. App. Ct. 2002).  There, a cab driver, while inside the cab doing his job of "transporting a passenger," was blocked in traffic.  *Id.* at 728.  A "stranger" approached his cab, opened the door, reached inside, and took one of the driver's licenses on his dashboard.  *Id.* at 730.  The stranger, it turned out, was a state policeman, but he was not wearing his identifying state police hat.  *Id.* at 729.  According to the policeman, he was injured when he reached into the cab for the license, and the cab driver stepped on the gas and began moving while the policeman held onto the door and ran alongside the cab.  *Id.*  It was undisputed that at some point during the interaction the cab driver was "transporting an individual from one Chicago destination to another," but given the conflicting testimony about what exactly happened, the court did not resolve the question of whether the cab driver was acting within the scope of employment.  *Id.* at 730.  That question, the court held, turned on whether the cab driver "deviated so greatly from his duties as a Yellow Cab driver, or was so extreme that he was no longer performing the business of a Yellow Cab driver."  *Id.*; *see also Copeland* v. *Johnson*, 2021 WL 4439395, at *5 (N.D. Ill. Sept. 28, 2021).  Here, the allegations answer that question:  there is no dispute that when the drivers allegedly sexually assaulted the Plaintiffs, they were criminally attacking their passengers, not fulfilling their duty transporting them.  In committing a sexual assault, each driver "deviated so greatly . . . that he was no longer performing" his business as a driver and their misconduct is "beyond the pale of any conceivable understanding of" their duties.  *Copeland*, 2021 WL 4439395, at *6.

## B.  **Apparent Agency**

Plaintiffs argue that Uber is liable for an independent contractor's intentional torts under a theory of apparent agency.  Opp. at 56-59.  According to Plaintiffs, the drivers are "apparent agents," rather than employees or actual agents and, as a consequence, Uber can be vicariously liable for the drivers' alleged intentional torts even if committed outside the scope of agency.  That theory is contrary to the laws of all

1   five states, which all apply a scope requirement under an apparent agency theory.[5]  It also makes no logical

2   or legal sense that a company's potential vicarious liability would be *broader* where its relationship with

3   the worker is *narrower* - - where the worker is not its employee, not its actual agent, but merely an alleged

4   apparent agent.[6]  Rather, as set out in the vicarious liability section, *supra*, as the alleged conduct is outside

5   the scope of *any* employment or agency, it can be decided on a motion to dismiss.

6             1.   <u>California</u>

7         Under California law, vicarious liability for an apparent agent is limited by a "scope of agency"

8   requirement functionally identical to the "scope of employment" test.  *See supra*, Section I.A.1.   In

9   California, the doctrine of *respondeat superior* is "not limited to employer and employee but speaks more

10   broadly of agent and principal."  *Lisa M.*, 12 Cal. 4th at 296 n.2.  Thus, California courts often use the

11   words "employee" and "agent," as well as "scope of employment" and "scope of agency," interchangeably

12   discussing *respondeat superior*.   In *Lisa M.* itself, there was a question of whether the ultrasound

13   technician was an "employee" or an "ostensible agent" of the hospital.  *Id*.  The court treated the technician

14   as an employee for the purposes of deciding the motion, id. because that classification was immaterial to

15   the scope analysis.

16         Plaintiffs' own cited cases demonstrate that the "scope of agency" and "scope of employment"

17   inquiries are the same.  In *Clark Equipment Co.* v. *Wheat*, 92 Cal. App. 3d 503, 521 (1979), the court

18   explained that "the cases do not always distinguish between the agency theories of actual or ostensible

19   authority and the tort doctrine of respondeat superior."  Under California law, the court continued, "an

20   agent or employee" must be "acting within the scope of employment" for vicarious liability to attach.  *Id*.

21   at 520.  And in *White* v. *County of Orange*, 166 Cal. App. 3d 566, 570 (Cal. Ct. App. 1985), the court

22   explained that "in order to avoid vicarious liability, the [defendant] must show [the employee's] actions

---

[5] For the purposes of the Motions only, there is no dispute over whether Uber's conduct would lead a reasonable third party to believe that the drivers are apparent agents.  Instead, the Motions can be resolved on the basis that even assuming the drivers are apparent agents, Plaintiffs have not alleged facts showing that they were acting within the scope of agency or apparent authority.

[6] Plaintiffs assert that Uber did not expressly discuss apparent agency in the opening briefs as to certain states.  Opp. at 57.  In those states, Uber assumed for the purposes of the Motions that the drivers were employees.  Thus, there was no need to consider the alternative theory that the drivers were apparent agents instead of employees.  Uber does, however, dispute Plaintiffs' argument that there is no scope requirement as to apparent agents under the laws of all five states.

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS
Case No. 3:23-md-03084-CRB

were beyond the scope of his employment."  The court then quoted *Clark*, affirming that the agent must be "acting in the ordinary course of the business" for vicarious liability to apply.  *Id.* at 571 (citation omitted).

Plaintiffs contend, with no explanation, that those cases' discussion of "estoppel" and "reliance" are "incompatible with any inquiry into scope of employment."  Opp. at 59.  That discussion is relevant only to the question of whether a worker is an apparent agent in the first place - - *i.e.,* if a principal makes representations that would lead a third party to reasonably believe that an apparent agent has the authority to act on behalf of the principal, and the third party justifiably relies on that belief, then the principal is estopped from denying the agency relationship.  Apparent agency is not at all incompatible with a scope of employment inquiry.  *See* Restatement (Second) of Agency § 267 (Am. L. Inst. 1958). This is why the cases cited by Plaintiff nonetheless do consider the "scope" of employment to be a limitation.

*Doe* v. *Uber Technologies*, *Inc.*, 2019 WL 6251189 (N.D. Cal. Nov. 22, 2019), which Plaintiffs contend is a "contrary opinion," is consistent with California law.  There, the Northern District held that the plaintiff had plausibly alleged that the driver was an ostensible agent, but dismissed the vicarious liability claim because the alleged sexual assault did not fall within the scope of agency.  *Id.* at *1.  In so doing, the court cited *Lisa M.*, *Farmers Insurance Group*, and other California decisions about scope of employment.  *Id.* at *3-5.

2.   Texas

A claim of apparent agency under Texas law, requires that plaintiff must show "(1) she had a reasonable belief in the agent's authority, (2) her belief was generated by some holding out, by act or neglect, of the principal, and (3) she was justified in relying on the representation of authority." *Doe* v. *YUM! Brands*, *Inc.*, 639 S.W.3d 214, 237 (Tex. App. 2021).  The Texas Supreme Court instructs that "apparent authority is limited to the scope of responsibility that is apparently authorized." *First Valley Bank of Los Fresnos* v. *Martin*, 144 S.W.3d 466, 471 (Tex. 2004).

To determine if an apparent agent's act is within the scope of their authority, courts ask whether "a reasonably prudent person [would] believe" - - based on the "conduct by the principal" - - "that the agent has the authority" to commit the specific alleged misconduct.  *Nations Bank*, *N.A.* v. *Dilling*, 922 S.W.2d 950, 953 (Tex. 1996) (*per curiam*).  For example, a bank may hold out an apparent agent as having

-10-

the authority to "approve a loan," but doing so does not give the agent the apparent authority to also "orally release the collateral or forgive the debt." *First Valley Bank*, 144 S.W.3d at 471. A broker may have the apparent authority to bind a seller in real estate contracts, but without conduct by the seller indicating otherwise, the broker does not have the apparent authority to make representations about surrounding properties. *See Kye* v. *New Star Realty, Inc.*, 2016 WL 3523683, at *4-6 (Tex. App. June 27, 2016).

Here, Plaintiffs allege no facts showing that Uber held out drivers as having the authority *to commit sexual assault*. Not one of Plaintiffs' cited cases involves apparent authority to commit an intentional tort, much less a crime. In *Baptist Memorial Hospital System* v. *Sampson*, 969 S.W.2d 945, 946-47 (Tex. 1998), the hospital was sued for the negligence of a physician treating a patient in the emergency room. The Court held that there was no liability for the hospital, which made no affirmative statement to the patient that the doctor was its agent and the patient had (among other things) signed a waiver that acknowledged that the doctor was an independent contractor. *Id.* at 949-50. The discussion of apparent agency in *Doe* v. *YUM! Brands* involved whether a franchisor and parent company. could be vicariously liable for a franchisee's allegedly negligent hiring. *See* 639 S.W.3d at 233, 237. The Court held that they could not. *Id.* at 238. And in *Wyndham*, the court's substantive analysis on agency was determined under the law of the Bahamas. *Wyndham Hotel Co.* v. *Self*, 893 S.W.2d 630, 633-34 (Tex. App. 1994).

### 3. Florida

Plaintiffs concede that "Florida has adopted Section 267 of the Restatement." Opp. at 61 (citing *Mercury Cab Owners Ass'n* v. *Jones*, 79 So. 2d 782, 784 (Fla. Dist. Ct. App. 1955)). As the comment to Section 267 explains, pursuant to this provision, "[t]he rules . . . stating what acts are within the scope of employment, apply," to apparent agency, such that "a purported master ordinarily is not liable for conduct of an apparent servant not actuated in some measure by an intent to perform the service in which he is apparently engaged." Restatement (Second) of Agency § 267 cmt. b. Nonetheless, Plaintiffs argue, without any citation to any case, that Florida does not follow Comment (b) or import any scope of employment requirement. Opp. at 61.[7]

---

[7] Comments are not additional provisions of the Restatement. Rather they explain the rule's application: "Comments follow black letter rules; they explain the rule, its background and rationale for adoption, and how to apply the rule." Restatement of the Law, Legal Info. Inst.,

Plaintiffs are wrong.  Where a principal creates the appearance of agency, his vicarious liability depends on whether the apparent agent acted within the scope of that agency.[8]  *See, e.g., Fi-Evergreen Woods, LLC* v. *Estate of Robinson*, 172 So. 3d 493, 498 (Fla. Dist. Ct. App. 2015) ("A principal may be liable for the acts of his or her apparent agent that are committed *within the scope of the apparent agency*." (emphasis added)); *Amstar Ins. Co.* v. *Cadet*, 862 So. 2d 736, 742 (Fla. Dist. Ct. App. 2003) (same); *Warren* v. *Dep't of Admin.*, 554 So. 2d 568, 571 (Fla. Dist. Ct. App. 1989) (same); *Seitlin & Co.* v. *Doebler*, 489 So. 2d 1200, 1203 (Fla. Dist. Ct. App. 1986) (*per curiam*) (same).

Where, as here, the alleged apparent agent's actions exceed the scope of agency, Plaintiffs cannot plead vicarious liability even if the alleged apparent authority provided them opportunity and access to Plaintiffs.  *See, e.g., Doe* v. *Willis*, 2023 WL 2799747, at *11 (M.D. Fla. June 11, 2021) (defendant not vicariously liable for alleged sexual assault); *Z.M.L.* v. *D.R. Horton, Inc.*, 2021 WL 3501099, at *6 (M.D. Fla. June 11, 2021) (rejecting vicarious liability claim for sexual assault).  This Court should follow the weight of Florida law.

### 4.   Illinois

Without any supporting case law, Plaintiffs assert that Illinois "would not apply a 'scope of employment' requirement to apparent agency."  *See* Opp. at 57.  But in Illinois, the general rule is that "the principal's liability does not apply . . . where, notwithstanding the existence of the relationship, the tortious acts have been committed by the agent *outside the scope or in excess of his authority*, the latter being so even though the tort is committed for the benefit of the principal."  IL-LP Agency § 43 (emphasis added) (footnote omitted).  Therefore, where the "agent abandons the business of the agency and commits an act outside the scope of his authority or employment in a wanton, willful, or malicious manner, the

---

https://www.law.cornell.edu/wex/restatement_of_the_law (last visited May 11, 2024).  When courts cite "approvingly to Restatement provisions as law," as Florida has done with Section 267, it "thereby mak[es] that provision mandatory authority."  *Id.*

[8] Plaintiffs agree that *Tallahassee Furniture Co.* v. *Harrison* holds that scope of employment limitations apply to apparent agency.  583 So. 2d 744 (Fla. Dist. Ct. App. 1991).  That *Moro-Romero* notes that the *Tallahasee* court was analyzing respondeat superior is of no moment, given that numerous other courts in Florida have also made it clear that such limitations apply to an apparent authority analysis. *Moro-Romero* v. *Prudential-Bache Sec., Inc.*, 1991 WL 494175 (S.D. Fla. Aug. 26, 1991) (internal citation omitted).  Moreover, even *Moro-Romero* notes that apparent authority only extends so far as each action is within that authority.  *Id.* at *3.

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS
Case No. 3:23-md-03084-CRB

principal is not liable therefor." *Am. Bank of Cerro Gordo & Keith* v. *Illinois*, 37 Ill. Ct. Cl. 82, 87 (Ill. Ct. Cl. 1984) (citing *Kokenes* v. *Cities Serv. Oil Co.*, 321 N.E.2d 338, 341 (Ill. App. Ct. 1974) (finding a foster parent's abuse was outside the scope of any apparent agency from DCFS)).

Plaintiffs rely on *Plooy* v. *Paryani*, 657 N.E.2d 12 (Ill. App. Ct. 1995), but the court there did not focus on whether or not the alleged conduct was within the scope of employment. Rather, the court focused on whether the trial court had improperly instructed the jury that the driver was, in fact, an agent of the cab company. *Id.* at *22. The appellate court reversed and remanded, sending back to the jury the question as to the existence and scope of the agency relationship. *Id.* at *23-24. Similarly, in *McNerney* v. *Allamuradov*, 84 N.E.3d 437, 457 (Ill. App. Ct. 2017), the court did not address the scope of the apparent agent's authority, only whether there were sufficient facts to allege the existence of apparent agency. Neither case rejects Section 267 of the Restatement.

### 5. New York

Plaintiffs primarily rely on one case, *Parlato* v. *Equitable Life Assurance Society of the United States*, 749 N.Y.S.2d 216 (N.Y. App. Div. 2002), to argue that New York does not limit liability to any scope of employment or agency. *See* Opp. at 58, 63. Plaintiffs give *Parlato* too much weight. There, the plaintiffs were defrauded by an employee (and later former employee) of an insurer, Equitable. *Parlato*, 749 N.Y.S.2d at 218. In deciding the post-judgment appeal, the court did not make any finding as to whether the tortfeasor was acting within or outside the scope of the agency, or render a holding as to New York law on this issue. To the contrary, "no details concerning the scope of apparent authority" were presented to the court, and the court assumed "the truth of plaintiffs' allegation that the transactions, as proposed by the [tortfeasor] would have been within the scope of the apparent authority which with Equitable clothed him during his employment." *Id.* at 220.

In New York, the creation of agency for one purpose, "does not automatically invest the agent with the 'apparent authority' to bind the principal without limitation." *Ford* v. *Unity Hosp.*, 299 N.E.2d 659, 664 (N.Y. 1973). "Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Standard Funding Corp.* v. *Lewitt*, 678 N.E.2d 874, 877 (N.Y. 1997) (emphasis and citation omitted). "A principal is liable only for the conduct of an agent acting *within the*

-13-

*scope of one's authority*." N.Y. Jur. 2d Agency § 296 (emphasis added).  "Where an agent's misconduct falls outside of the scope of activities authorized by the agency agreement between the agent and his or her principal, however, the principal will not be liable for such misconduct." *Wells Fargo Home Mortg., Inc.* v. *Hiddekel Church of God*, *Inc.*, 2004 WL 258144, at *6 (N.Y. Sup. Ct. Feb. 10, 2004).

When considering scope, a principal "is not liable for the unlawful act of the agent if the principal did not expressly authorize or ratify it or it does not come within the natural scope . . . of the duties delegated."  N.Y. Jur. 2d Agency § 296; *see also id.* § 294 (omitting sexual assault, assault, battery, and others from those for which apparent authority can bind a principal).  New York law is clear that, "[i]t is fundamental to the principal/agent relationship that [a principal] is liable to a third person for the wrongful or negligent acts . . . of its agent *when made within the general or apparent scope* of the agent's authority." *Taylor* v. *The Point at Saranac Lake*, *Inc.*, 23 N.Y.S.3d 682, 684 (N.Y. App. Div. 2016) (cleaned up) (quoting *Bicounty Brokerage Corp.* v. *Burlington Ins. Co.*, 931 N.Y.S.2d 99, 102 (N.Y. App. Div. 2011)); *Soltis* v. *New York*, 568 N.Y.S.2d 470, 471 (N.Y. App. Div. 1991).  There is no liability for an agent's acts when the agent "totally abandons the principal's interests and acts entirely for his or another's purposes." *Chubb & Son*, *Inc.* v. *Cansoli*, 726 N.Y.S.2d 398, 400 (N.Y. App. Div. 2001).

## C.   <u>Ratification</u>

Ratification as a basis for vicarious liability is when an employer (or principal) adopts and approves the tortious conduct of one of its employees (or agents).  Plaintiffs' theory is that Uber ratified the drivers' misconduct by not appropriately investigating or responding.  However, Plaintiffs concede that they have pled no facts to support that theory:  by their own admission, Plaintiffs cannot "point to 'a specific agent's specific alleged misconduct'" that Uber purportedly failed to investigate or take appropriate action in response.  Opp. at 49.  To the extent Plaintiffs assert a ratification theory "based on Uber's knowledge of an epidemic of sexual assault in its transportation system," *id.*, they confuse ratification with negligence:  Plaintiffs may try (unsuccessfully) to prove that Uber breached a duty of care by not *preventing* the rare instances of driver sexual assaults; but they have not alleged any facts to show that Uber ratified individual driver misconduct by *rewarding* a single individual driver.

### 1.   <u>California</u>

The foreseeability of a risk with a product or service might be relevant to a duty of care, but

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

ratification requires that a person adopt or affirm *as her own* the specific conduct of a specific person. *See Baptist* v. *Robinson*, 143 Cal. App. 4th 151, 167 (Cal. Ct. App. 2006) (explaining that *subsequent* ratification results in an employer becoming liable for an employee's prior act); *see also* Cal. Civ. Code § 2307 ("[A]uthority may be conferred, by a . . . *subsequent* ratification) (emphasis added).

Thus, to plead ratification, the plaintiff must allege facts establishing that the "employer subsequently ratifies the *originally unauthorized tort*" committed by the specific perpetrator. *Samantha B.* v. *Aurora Vista Del Mar, LLC*, 77 Cal. App. 5th 85, 109 (Cal. Ct. App. 2022) (emphasis added); *see also Kristensen* v. *Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014-15 (9th Cir. 2018); *Ventura* v. *ABM Indus., Inc.*, 212 Cal. App. 4th 258, 271-72 (Cal. Ct. App. 2012). Plaintiffs have failed to do so.

### 2.   Texas

Under Texas law, the "key concern in determining whether a principal has ratified an unauthorized act by an agent is the principal's knowledge of the act [by the agent] and subsequent actions with that knowledge." *Wyatt* v. *McGregor*, 855 S.W.2d 5,13 (Tex. App. 1993); *Iron City Nat'l Bank of Llano* v. *Fifth Nat'l Bank of San Antonio*, 47 S.W. 533 (Tex. App. 1898), *modified*, 49 S.W. 368 (Tex. 1899) (holding that defendant did not ratify conduct when it did not have knowledge of the specific transaction at issue until after the transaction happened). When a person affirms "a prior act which when performed did not bind him, but which was professedly done on his account," the "act is given effect as if originally authorized by him." *Disney Enters. Inc.* v. *Esprit Fin., Inc.*, 981 S.W.2d 25, 31 (Tex. App. 1998).

Plaintiffs' own cited case illustrates why their ratification argument fails. In *Verhelst* v. *Michael D's Restaurant San Antonio, Inc.*, defendant had knowledge that a *specific* employee had sexually assaulted a *specific* coworker, and had still taken "steps to ensure that the[y] would remain working on the same shift." 154 F. Supp. 2d 959, 966 (W.D. Tex. 2001). There are no such allegations here.

Plaintiffs also take issue with the Texas Court of Appeals' holding that, "the original act must have been done in [the employer's] interest, or been intended to further some purpose of [the employer's]." *Sheffield* v. *Cent. Freight Lines, Inc.*, 435 S.W.2d 954, 956 (Tex. App. 1968)(quoting *Dillingham* v. *Anthony*, 11 S.W. 139, 142 (Tex. 1889)). But contrary to Plaintiffs' assertion, the Fifth Circuit has not abrogated this requirement, and the decision relied upon by Plaintiffs does not mention *Sheffield*. Opp. at 56 (citing *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 653-54 (5th Cir. 1994)).

1

       3.    <u>Florida</u>

2        The Florida Supreme Court has held that under a ratification theory, a plaintiff "must demonstrate

3  that the principal was *fully informed* and that he approved of the act" in question. *Frankenmuth Mut. Ins.*

4  *Co.* v. *Magaha*, 769 So. 2d 1012, 1022 (Fla. 2000) (emphasis in original). Further, constructive knowledge

5  is not enough to ratify an agent's conduct. *Id.*

6        Plaintiffs cite *McKenzie* v. *U.S. Tennis Ass'n*, *Inc.*, 2024 WL 665102 (M.D. Fla. Feb. 16, 2024),

7  but that case did not invoke ratification to impose vicarious liability. Instead, Plaintiffs quote out of

8  context the court's discussion of punitive damages. *See id.* at *10-11. Because that case did not involve

9  ratification, the court had no occasion to address the relevant Florida authority. Plaintiffs also challenge

10  the appellate court's conclusion that the "original act under scrutiny [must] be done on behalf of the

11  employer." Opp. at 52 (quoting *Commodore Cruise Line*, *Ltd.* v. *Kormendi*, 344 So. 2d 896, 898 (Fla.

12  Dist. Ct. App. 1977)). But Plaintiffs cite no authority to the contrary, and their claim that it is "more

13  likely" that there is no such requirement under Florida law lacks support. *Id.*

14        Plaintiffs do not dispute that mere "failure to discipline" an employee is not enough to support a

15  ratification theory. Opp. at 51. Instead, they merely repeat their accusations that "maximizing the number

16  of active drivers was essential to Uber's business model even if that meant attracting, onboarding, and

17  retaining predatory drivers" is "categorically different than failing to discipline a one-off, rogue employee

18  committing sexual harassment or assault against other employees." *Id.* Still, however, Plaintiffs point to

19  no factual allegations that Uber adopted the misconduct of any specific driver.

20

       4.    <u>Illinois</u>

21        In *Robinson* v. *Wieboldt Stores*, *Inc.*, Plaintiffs' case, the court allowed a ratification theory of

22  vicarious liability to proceed only because the defendant principal had full knowledge of the security

23  guard's assault of a specific customer, *and* yet "continued to defend [his] actions" throughout the litigation

24  and "show[ed] no attempt to alter" related procedures 104 Ill. App. 3d 1021, 1025 (Ill. App. Ct. 1982).

25  Here Plaintiffs do not allege that Uber defended the driver's alleged conduct, and the Complaint alleges

26  that Uber has in fact adopted safety measures. *E.g.,* Compl. ¶¶ 24, 103-08, 110, 462, 486, 487(b), 488.

27

       5.    <u>New York</u>

28        New York, like the other states here, requires that ratification, whether express or implied, "only

-16-

occurs where the principal has full knowledge of all material facts and takes some action to affirm the agent's actions." *Prisco* v. *New York*, 804 F. Supp. 518, 523 (S.D.N.Y. 1992). Plaintiffs again point to their "allegations regarding Uber's business model, pattern of conduct, and standard practices," Opp. at 55, but fail to identify any factual allegations about any specific driver, specific incident, specific plaintiff, or Uber's approval of any specific driver's conduct.

### D.  **The Florida and Texas TNC Statutes Preclude Vicarious Liability**

Plaintiffs cannot avoid application of the Florida and Texas TNC statutes, which clearly preclude vicarious liability claims against Uber.

#### 1.  Texas

Plaintiffs ignore the critical portions of the Texas statute prohibiting vicarious liability claims against TNCs.  *See* Tex. Civ. Prac. & Rem. Code § 150E.002(4); 150E.003.  They literally do not quote, cite, mention, let alone discuss, the full text of the statute.  The obvious explanation is that the clear language - - the *complete* clear language - - of the statute bars, and requires dismissal of,  Plaintiffs' vicarious liability claim under Texas law.

Unmoored to the text of the statute, Plaintiffs argue that it applies only to vicarious liability claims by "persons 'injured *by a vehicle*'" arising out of the use or operation of a vehicle.  Opp. at 19.  That is not what the statute says.  The statute provides, in the relevant parts disregarded by Plaintiffs, that in a damages action for bodily injury, a TNC may not be held vicariously liable if (a) the claim "arises out of the ownership, use, operation, or possession of a network vehicle while the vehicle's driver or passenger was logged on to a transportation network company's digital network," § 150E.002 subsection (3)), and (b) "the theory of recovery for which damages are sought against the transportation network company is based on . . . the relationship, affiliation, or interaction with a driver logged on to a transportation network company's digital network," § 150E.002 subsection (4)(B)).

In short, Uber cannot be vicariously liable for damages arising out of the use of a  vehicle by a driver using Uber's platform (the "digital network") are based on an "interaction with a driver."  Plainly, Plaintiffs' claims (a) arise out of drivers using their cars to drive passengers with whom they connected via Uber's digital network; and (b) seek recovery based on their interactions with those passengers.  The limitation Plaintiffs seek to impose - - that the statute applies only to injuries caused by the vehicles - -

-17-

1    cannot be squared with the legislature's inclusion of claims based on a "relationship, affiliation, or

2    interaction" with a driver, which is why Plaintiffs just ignore that provision, subsection (4)(B).

3         Plaintiffs' resort to "legislative history" does not help. For one, legislative history is irrelevant

4    where the "text is clear." *Entergy Gulf States*, *Inc.* v. *Summers*, 282 S.W.3d 433, 437 (Tex. 2009). In any

5    event, Plaintiffs are incorrect that the legislative history shows that the statute covers only "auto accident

6    claims" or claimants "injured by a vehicle." Opp. at 19-20. That the legislature was "concerned" about

7    particular examples of claims does not mean the statute is limited to those claims. If that were the case,

8    the legislature easily could have written a statute with those express limitations. Instead, the legislature

9    chose to write a broad statute including all claims for bodily injuries "arising out of" the "use" of vehicles

10   based on, among other things "interaction[s]" with drivers. § 150E.002(3), (4).

11        Finally, Plaintiffs argue that the exemption from liability for TNCs does not apply in the case of

12   gross negligence. Even assuming that Plaintiffs' negligence claims plausibly allege gross negligence, that

13   is irrelevant to whether their vicarious liability claims are prohibited by the Texas statute. Plaintiffs do not

14   plausibly allege gross negligence under Texas law, which requires Plaintiffs to plead and prove that Uber

15   engaged in conduct "which when viewed objectively" from its own standpoint at the time of the conduct

16   "involve[d] an extreme degree of risk" of which Uber "ha[d] actual, subjective awareness" but

17   "nevertheless proceed[ed] with conscious indifference to the rights, safety, and welfare of others." Tex.

18   Civ. Prac. & Rem. Code Ann. § 41.001(11)).

19        2.   Florida

20        Relying on language in the Florida TNC statute providing that it only applies if, among other

21   factors, [t]he TNC is not the owner or bailee of the motor vehicle that caused harm to persons or property,"

22   Plaintiffs argue that the statute bars vicarious liability *only* where the motor vehicle caused harm. Opp. at

23   18. That is not what the statute says. On its face, the statute applies broadly to claims "for harm to

24   persons or property which results or arises out of the use, operation, or possession of a motor vehicle

25   operating as a TNC vehicle." Fla. Stat. § 627.748(18)(a). Just because the statute may apply to

26   circumstances in which a vehicle "caused harm to persons or property" does not mean it does not also

27   apply to bar vicarious liability in these broader circumstances, including here, where Plaintiffs allege

28

sexual assaults by drivers in the course of "us[ing], operat[ing], or possess[ing] a motor vehicle operating as a TNC vehicle." *Id.*

Plaintiffs cite *Farrer* v. *U.S. Fidelity & Guaranty Co.*, which held that an insurance policy's inclusion of "'arising out of' the use of a motor vehicle" did not include coverage for a sexual assault in a taxi. 809 So. 2d 85 (Fla. Dist. Ct. App. 2002). But in *Farrer*, the court was interpreting "language in an exclusionary clause" of an insurance policy," and was required to apply a Florida rule of construction that "a narrow and strict interpretation must be given to such language in an exclusionary clause." *Id.* at 92. By contrast, the relevant language here is a statutory provision - - not the exclusionary clause of an insurance policy - - and no such rule of construction applies to narrow the broad language written by the Florida legislature.

Plaintiffs also are wrong that legislative history supports their interpretation.  Florida courts "do not consider legislative history when the text is clear." *Kaplan* v. *Epstein*, 219 So. 3d 932, 933 (Fla. Dist. Ct. App. 2017) (quoting *Villareal* v. *R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969 (11th Cir. 2016 (*en banc*)).  Moreover, Plaintiffs' cited legislative history does not state that the provision is "aimed only at levelling the field as between TNCs and rental car companies" - - those are Plaintiffs' own words, not the legislature's words.

### E.       Common Carriers' "Non-Delegable Duty" Is Not An Independent Basis for Vicarious Liability

The "non-delegable duty" of a common carrier is not a form of vicarious liability, and thus not a basis to sustain Plaintiffs' *respondeat superior* claim, Claim G.   As Plaintiffs themselves allege in their separate cause of action for "Common Carrier's Non-Delegable Duty to Provide Safe Transportation," Claim E, that is a claim for "direct liability."  Complaint ¶ 387.[9]  Specifically, Plaintiffs allege in Claim E that "Uber owes its passengers a heightened *duty of care*," and that Uber breached that *duty of care* because

---

[9] Plaintiffs' assertion that "Uber does not dispute that, as a factual matter, its status as a common carrier is adequately pleaded under the laws of" California, Florida, Illinois, and Texas, Opp. at 26, mischaracterizes Uber's position.  Solely for purposes of adjudicating its Motions, Uber merely does not dispute that it is a common carrier, and does not ask that the Court resolve that question. *See* Cal. Mot. at 6 n.3.  Uber does not concede that Plaintiffs have adequately alleged common carrier status, or that it is a common carrier.

it "failed *in its duty* to keep Plaintiffs safe."  Compl., ¶¶ 392, 396-98 (emphasis added).  That is a negligence claim.

### 1.  California

Under California law, liability for breach of a nondelegable duty claim arises from the defendant's own failure to take reasonable care to protect the injured plaintiff.  *See McGarry* v. *United States*, 549 F.2d 587, 590 (9th Cir. 1976); *Maloney* v. *Rath*, 69 Cal. 2d 442, 446 (Cal. 1968).  "[L]iability for breach of [a nondelegable] duty *is neither strict nor vicarious liability*. . . .  It stems from the duty of the contractor's employer to exercise reasonable care to see that the contractor abides by his responsibilities in that respect." *McGarry*, 549 F.2d at 590.[10]  Disregarding that case law, Plaintiffs argue that *Berger* v. *South. Pacific Co*. imposes some form of strict or absolute liability on common carriers for the torts of their employees, even if not within the scope of employment.  144 Cal. App. 2d 1 (Cal. Ct. App. 1956).  But no matter how *Berger* is interpreted, it is not a vicarious liability or *respondeat superior* decision:  it never mentions either of those theories of liability.  Likewise, neither the California Supreme Court nor any other appellate court has recognized that case as creating a vicarious liability cause of action irrespective of the scope of employment.  Mot. at 7-8.  As the Complaint itself alleges, common carrier liability is a form of "direct liability" for breach of a duty of care.  The California Supreme Court has thus held that common carriers "*are not, however, insurers of their passengers' safety*."  *Lopez* v. *Southern Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 785 (Cal. 1985) (emphasis added); *see also Gomez* v. *Super. Ct.*, 35 Cal. 4th 1125, 1130 (Cal. 2005).

Though the Court need not resolve this issue in order to dismiss Plaintiffs' vicarious liability claim (Claim G), *Berger* does not create a rule of strict liability for common carriers for the torts of employees

---

[10] For instance, in *Gardner* v. *United States*, the plaintiff sued the United States for the wrongful death of her husband who was electrocuted while working for a government contractor. 780 F.2d 835, 836 (1986). The Ninth Circuit held that, although the FTCA does not allow the U.S. to be held liable for the acts of an independent contractor under a strict or vicarious liability theory, the plaintiff's claim could proceed because "under California's nondelegable duty doctrine the United States is *directly* liable for its own negligence when it fails to ensure that an independent contractor takes adequate safety precautions and the work to be performed involves special dangers." *Id.* at 837. As *Yanez* v. *United States* recognized, the scope of the precise non-common carrier, nondelegable duty at issue in *Gardner* has since changed, but *Gardner*'s recognition that California's nondelegable duty doctrine imposes neither strict nor vicarious liability remains accurate. 63 F.3d 870, 872 n. 1, 873 (9th Cir. 1995).

*outside* the scope of employment.  In fact, the two cases it cites in support of its holding, *Fields* v. *Sanders*, 29 Cal. 2d 834 (Cal. 1947), and *Carr* v. *Wm. C. Crowell Co.*, 28 Cal. 2d 652 (Cal. 1946), found liability for employee torts within the scope of the employee's "performance of his duties" (*Fields*, 29 Cal. 2d at 840) and "arising out of the employment" (*Carr*, 28 Cal. 2d at 654).  *See Berger*, 144 Cal. App. 2d at 8.  Judge Schulman found that "Uber's potential status as a common carrier," and the scope of its duties under a direct theory of liability, "does not alter the vicarious liability analysis."  *JCCP Demurrer Order* at 10.  The court in *Doe* v. *Uber Techs.*, No. 20STCV48919, at 5-6 (Cal. Super. Ct. L.A. Cnty. June 16, 2021), reached the same conclusion.[11]

### 2.   Florida, Illinois, and Texas

Plaintiffs argue that Uber is a common carrier in Florida, Illinois, and Texas and that, as a common carrier, Uber is liable for the intentional torts of independent drivers regardless of whether they were acting within the scope of "employment."  Opp. at 26.  But whether fashioned as vicarious or direct liability, Uber cannot be liable as a common carrier in these states because, as discussed below, Uber is not a common carrier as a matter of statute.[12]

---

[11]  Plaintiffs attempt to construe the Northern District's 2016 *Doe* v. *Uber Technologies*, *Inc.* case as endorsing their *Berger* theory.  But the court did not state that it was treating the common carrier allegations as supporting a theory of *respondeat superior*.  The court summarized *Berger* this way: "[T]he California Court of Appeal found that the jury was properly instructed that the Pullman Company could be liable for the rape that its porter committed upon a passenger."  *Doe*, 184 F. Supp. 3d at 787.  Yes, a common carrier *could* be liable for breaching its duty with respect to such conduct.  But the *Doe* court did not hold that Uber could be strictly (or vicariously) liable as a common carrier.  Even if the *Doe* court could be read as adopting Plaintiffs' *Berger* interpretation, that conclusion would be inconsistent with all other California common carrier cases, as discussed *supra* I.E.1.  Plaintiffs cite no decisions against Uber supporting the conclusion that a common carrier standard of care converts a direct negligence action into absolute vicarious liability for the tortious or criminal conduct of others.

[12]  Accordingly, this Court need not reach the theoretical question of the scope of Uber's duties as a common carrier.  Though Plaintiffs overstate the extent to which the law on this issue is settled.  Although they highlight century-old decisions as well as some more recent intermediate appellate court decisions that have applied their preferred rule, they do not cite any recent decisions from the Florida, Illinois, or Texas Supreme Courts that have done so or that have applied this rule to TNCs like Uber.  When the highest courts in other jurisdictions have considered this issue more recently, they have recognized that holding common carriers liable for the conduct of their employees committed outside the scope of their employment is "no longer viable as a matter of law or policy."  *Adams* v. *New York City Transit Auth.*, 666 N.E.2d 216, 217 (N.Y. 1996); *see, e.g.*, *Sebastian* v. *D.C.*, 636 A.2d 958, 959 (D.C. 1994); *see also VIA Metro. Transit* v. *Meck*, 620 S.W.3d 356, 372 (Tex. 2020) (Hecht, J., concurring) (characterizing the "high degree of care" rule for common carriers as "an anachronism" and collecting cases rejecting the

---

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

F.    **Common Carrier "Non-Delegable Duties" Claims Are Barred by Statute**

Plaintiffs' common carrier non-delegable duties claims (Claim E - "Common Carrier's Non-Delegable Duty to Provide Safe Transportation") must be dismissed under the statutes in Florida, Illinois, and Texas expressly providing that TNCs such as Uber are not common carriers.[13]

1.    Texas

Texas's statute is clear and unlimited in scope:  "Transportation network companies and drivers logged in to the company's digital network *are not common carriers*, contract carriers, or motor carriers."  Tex. Occ. Code § 2402.002 (emphasis added).  Plaintiffs argue that the Court should nevertheless look to the common law definition of common carrier to determine whether Uber is a common carrier for purposes of Uber's common law common carrier status.  Opp. at 36-37.  That is not the law in Texas.

Plaintiffs cite two cases for their proposition that there are separate "regulatory" and "common law" definitions of a common carrier:  *Durham Transp.*, *Inc.* v. *Valero*, 897 S.W.2d 404 (Tex. App. 1995) and *McClure* v. *Greater San Antonio Transportation Co.*, 2009 WL 10670097 (W.D. Tex. Mar. 24, 2009).  Neither supports Plaintiffs' argument.

*Durham*, which pre-dates the adoption of the Texas statute, involved claims related to a child who was struck by a third party when attempting to board a school bus.  897 S.W.2d at 407.  At the time, by statute, school buses were deemed "to be 'common carriers' *and subject to regulation by the State of Texas*."  *Id.* at 408 (quoting Tex. Rev. Civ. Stat. Ann. Art. 911a (emphasis added) (repealed)).  Thus, the statute at issue in *Durham* specified that it was for regulatory purposes and further, according to the court, "explicitly reserve[d] the issue of the duties and liabilities of carriers for the common law."  *Durham*, 897 S.W.2d at 409.  Therefore, the *Durham* court was directed, by the statute, to look to the common law to determine what standard of care should apply with respect to the defendants.

As a result of the statute's instruction to analyze the common law, the parties in *Durham* were

_____

rule).  But again, on this motion, the Court need not resolve whether the Florida, Illinois, or Texas Supreme Courts would follow those more recent and better-reasoned decisions because, as a matter of statute, Uber is not a common carrier.

[13] There is no dispute that the Illinois statute was repealed effective January 1, 2024.  As discussed below, no Illinois Plaintiff has alleged an incident in Illinois after that date.  Therefore, the Illinois statute was effective during all relevant times for purposes of this Motion.

arguing whether the school bus was a contract carrier or a common carrier under the common law.  *Id.* at

408.  Not so here.  The Texas legislature has spoken directly and plainly that Uber and other TNCs are

"not common carriers, contract carriers, or motor carriers."  Tex. Occ. Code Ann. § 2402.002.  And unlike

in *Durham*, Section 2402.002 contains no reference to Texas regulations.  Nor does Section 2402.002

"explicitly reserve[] the issue of the duties and liabilities of carriers for the common law."  *Durham*, 897

S.W.2d at 407. [14]  Therefore, there is no reason for the Court to turn to the common law.  Further, because

the statute addresses Uber's status as a common carrier, contract carrier, and motor carrier, the distinction

between the standards of care that the *Durham* court had to confront is inapplicable here:  the Texas

legislature has made it clear that Uber is neither.

The other case that Plaintiffs cite, *McClure*, also is off point.  *McClure* was decided before Texas's

TNC statute was in place and only discusses a then-effective local ordinance in the City of San Antonio.

The local ordinance discussed in *McClure* did not mention common carriers, but rather set forth

contractual requirements for taxicab companies to contract with the city.  Plaintiffs claim that the *McClure*

court "explained that the ordinances were 'merely regulatory in nature and have no bearing on tort

liability.'"  Opp. at 37.  That is incorrect.  *First*, Plaintiffs' quote is a part of the court's summary of *the

plaintiffs' arguments*, not a court-endorsed explanation of the law. [15]  Rather than an analysis of the local

ordinance, the court explained that "the Magistrate Judge determined that, *by definition under Texas law*,

GSTC was a common carrier."  *McClure*, 2009 WL 10670097, at *6 (emphasis added).  The court did not

endorse the plaintiffs' positions that the local ordinance identified the common carrier status of the taxicab

company or that such status was limited to regulatory issues under the ordinance.  Even if the court had

accepted the *McClure* plaintiffs' positions, the case would still be of no help to Plaintiffs here.  Unlike the

local ordinance in *McClure*, Section 2402.002 is a statewide statute that explicitly says that TNCs are not

common carriers.

---

[14] Plaintiffs claim that Tex. Transp. Code § 5.001(a) applies here in the same way that a predecessor statute applied in *Durham*, but that statute applies to "carriers."  As Section 2402.002 explains, Uber is not a common carrier, contract carrier, or motor carrier, so there is no basis to apply the common law duties and liabilities for any of those types of carriers to Uber.

[15] The full quote is "As for the City Ordinance, *the McClures argued* case law involving GSTC's sister company in Houston, Texas establishes such local ordinances are 'merely regulatory in nature and [have] no bearing in tort liability.'"  *McClure*, 2009 WL 10670097, at *5.

1    Plaintiffs have identified no basis on which to limit the direct and plain terms of the statute. The

2  principles of statutory interpretation that Plaintiffs identify support Uber's position. Plaintiffs cite to case

3  law for the proposition that a statute "will not be extended beyond its plain meaning or applied to cases

4  not clearly within its purview." Opp. at 37. But Uber is not arguing to extend Section 2402.002 beyond

5  its plain meaning or to apply Section 2402.002 to cases not clearly within its purview. It is asking the

6  Court to apply the plain meaning of the statute, which plainly provides that Uber is not a common carrier.

7          2.    Florida

8    In response to Florida's clear and unqualified statutory command that "a TNC or TNC driver is

9  not a common carrier," Fla. Stat. § 627.748(2), Plaintiffs make the baseless argument that Florida's TNC

10  statute is limited to "regulatory schemes" and has no effect on a TNC's "scope of tort liability toward

11  passengers." Opp. at 32. None of the cases Plaintiffs cite support their theory that Florida's TNC statute

12  is limited to narrow regulatory purposes, especially given the clear and unqualified language of the statute.

13    *Nazareth* v. *Herndon Ambulance Serv. Inc.* does *not* stand for the proposition that courts may

14  disregard a statute exempting an entity from common carrier status and nevertheless treat the entity as a

15  common carrier for purposes of imposing tort liability. 467 So. 2d 1076 (Fla. Dist. Ct. App. 1985). The

16  statute at issue in *Nazareth* did not state one way or the other whether ambulances are common carriers.

17  Fla. Stat. (1981) § 323. Instead, the statute imposed certain regulatory requirements on common carriers,

18  and then separately, stated that ambulances (and other forms of transportation) were exempt from those

19  requirements. *Id.* at § 323.29(7) ("The following transportation shall not be subject to the requirements

20  of chapter 323: . . . ambulances"). The difference here is that there is a statute that expressly says that "a

21  TNC . . . is not a common carrier." Fla. Stat. § 627.748(2). Far from reaching a conclusion contrary to

22  the statutory language, as Plaintiffs suggest, the court in *Nazareth* actually relied on the definition of a

23  common carrier contained in the statute at issue when it concluded that an ambulance business is properly

24  characterized as a common carrier. 467 So. 2d at 1076 (considering definitions of "private carrier" and

25  "common carrier" contained in § 323 and concluding that "an ambulance business fits more closely the

26  statute's definition of common carrier than that of private carrier").

27    *Esurance Prop. & Cas. Ins. Co.* v. *Vergara* also provides no support for the idea that the Florida

28  TNC statute is limited to a "regulatory" role. 2021 WL 2955962 (S.D. Fla. June 29, 2021). That case

-24-

involved an insurance dispute in which the magistrate judge was asked to recommend whether a ride-sharing vehicle fell under *an insurance policy exclusion* for a "public or livery conveyance." *Id.* at *1. When defendants cited to the TNC statute, the magistrate judge correctly pointed out that "that statute has no relevance here." *Id.* at *6. The court went on to explain that the TNC statute did "not purport to modify the insurance contract" between private parties, and that the statute did not "define the term 'public or livery conveyance.'" *Id.* It is thus clear that Plaintiffs here have taken the court's characterization of the TNC statute as "a regulatory statute enacted by the legislature" out of context: the court was simply drawing a distinction between a public statute regulating common carriers and the private contract involving public or livery conveyances at issue in that case. *Esurance* did not hold that the TNC statute is confined to regulatory disputes.

Plaintiffs' reliance on *Checker Cab Operators*, *Inc.* v. *Miami-Dade County*, is misplaced for similar reasons. 899 F.3d 908 (11th Cir. 2018). That case involved Florida taxicab medallion holders challenging a local ordinance regulating TNCs, which was preempted by the Florida TNC statute at issue here. *Id.* at 913-14. The statute that Plaintiffs discuss and that the court characterized as "authoriz[ing] the TN[C]s' market entry," was the challenged local ordinance, not the statewide Florida TNC statute that preempted local ordinances (that is at issue here), which the court characterized as "comprehensively govern[ing]" TNCs "by state law." *Id.* at 914. But even if Plaintiffs' quotes did describe the right statute, the *Checker Cab* case still would be irrelevant. When the Eleventh Circuit described the various TNC laws as a "regulatory scheme," it was not making the distinction that Plaintiffs claim. Rather, that term was meant to describe what the statutes are: regulations imposed on TNCs like Uber.

The rules of statutory interpretation support Uber's position. Contrary to Plaintiffs' argument, Section 627.748 *does* reflect an express intention to displace common carrier liability because that is exactly what the words of the statute say: "a TNC or TNC driver is not a common carrier." Fla. Stat. § 627.748(2). Plaintiffs read into the statute a limitation that does not exist in the text. Plaintiffs claim later additions to the TNC statute limiting certain specific kinds of common carrier vicarious liability prove their point is mistaken. Opp. at 33-34. The section of the Florida TNC statute limiting vicarious liability for accidents was added in 2020 in response to the judicially-created dangerous instrumentality doctrine. There is no evidence that the addition of that section of the statute was intended to be a narrow exception

-25-

1  to otherwise broad and strict common carrier liability.  *See* Florida Staff Analysis, H.B. 1039, 4/3/2020.

2          3.     <u>Illinois</u>

3       Until January 1, 2024, Illinois law expressly provided that TNCs like Uber are not common

4  carriers.  625 Ill. Comp. Stat. Ann. 57/25 (2023).  Unlike in Florida and Texas, Plaintiffs do not attempt

5  to argue that the Illinois TNC statute is limited to regulatory schemes, presumably because that theory has

6  been rejected.  *Doe* v. *Lyft, Inc.*, 176 N.E.3d at 870 (holding that the statute "precludes TNCs from being

7  subject to the same heightened duty of care and principles of vicarious liability applicable to common

8  carriers.").

9       Plaintiffs propose to amend their complaint to limit their common carrier claim to the period after

10  January 1, 2024.  But no Illinois Plaintiff has alleged any incident occurring in Illinois on or after January

11  1, 2024.  Therefore, there are no Illinois Plaintiffs with common carrier claims at issue in this MDL and

12  the Court should dismiss this claim with respect to the Illinois Plaintiffs who are actually in the litigation.

**II.**    <u>**PLAINTIFFS WAIVED THEIR "OTHER NON-DELEGABLE DUTIES" CLAIM**</u>

14       Uber moved to dismiss Plaintiffs' claim for "Other Non-Delegable Duties," Claim F.  Mot. at 10-

15  11.  Plaintiffs have no response, other than to say that they "proceed only under a common carrier theory."

16  Opp. at 31.[16]  As Plaintiffs have not even tried to defend this claim, it should be dismissed with prejudice.

**III.**    <u>**PLAINTIFFS' FRAUD-RELATED CLAIMS FAIL**</u>

18      **A.**    <u>**The Complaint Fails to Allege Fraud with the Required Specificity**</u>

19       This much is undisputed:  Plaintiffs have not alleged a single fact to show what specific

20  misrepresentation (if any) was seen or heard by which specific plaintiff (if any), at what time and in what

21  place.  These are not the typical Motions under Rule 9(b) where the plaintiff has alleged some facts and

22  the question is whether she has alleged enough.  Here, the Complaint alleges *nothing* with specificity.

23       Plaintiffs do not argue that they have complied with Rule 9(b).  That would be impossible as neither

24  the Master Complaint nor any of the SFCs[17] contain the required specificity.  Plaintiffs do not even

---

[16] *See also* Opp. at 2-3 ("Plaintiffs rely only on the nondelegable duties owed by common carriers (Claim E) and not on other potentially applicable nondelegable duties (Claim F)."); *id.* at 20 ("While Plaintiffs also pleaded other, non-common-carrier, nondelegable duties (Claim F), for purposes of this motion, they proceed only under a common carrier theory."), Uber does not otherwise address this claim on reply.

[17] This Court ordered Plaintiffs to file short form complaints ("SFC") to indicate their individual facts and

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS
Case No. 3:23-md-03084-CRB

1   contend that their original complaints satisfied Rule 9(b).  Instead, Plaintiffs claim they should be excused

2   from Rule 9(b) because this is an MDL.   Opp. at 86.  The case on which Plaintiffs rely, *In re Zofran*

3   *(Ondansetron) Prods. Liab. Litig.*, 2017 WL 1458193, at *7 (D. Mass. Apr. 24, 2017), does not support

4   their attempt to circumvent Rule 9(b).  To the contrary, in *Zofran*, the court dismissed several of plaintiffs'

5   fraud claims for failure to plead with particularity under Rule 9(b), and stated that the "creation of an MDL

6   proceeding does not suspend the requirements of the Federal Rules of Civil Procedure, nor does it change

7   or lower the requirements of those rules.  Rule 9(b) applies to MDL proceedings no less than any other

8   civil proceeding in which fraud is alleged." *Id.* at *5.[18]

9       Furthermore, the *Zofran* court found that where a master complaint does not include plaintiff-

10   specific factual allegations, it must be accompanied by "individual short-form complaint[s]" that plead

11   "particularized allegation of fraud applicable . . . to an individual" plaintiff.  *Id.* at *6.  Just such SFCs

12   were ordered to be completed in this case.  The Court's PTO 11 provides that the SFC "is an abbreviated

13   form that *each individual Plaintiff* will complete to indicate their *individual claims*, adopt the factual

14   allegations set forth in the Master Complaint as the basis for those claims, and *provide additional factual*

15   *allegations*, if any." PTO 11 at 2 (emphases added).  But not a single one of the SFC's "additional factual

16   allegations" support their "individual" misrepresentation or omission claims.

17       The other cases Plaintiffs cite do not excuse the failure to comply with Rule 9(b).  Neither *In re*

18   *Orthopedic Bone Screw Products Liability Litigation*, 1997 WL 109595 (E.D. Pa. Mar. 7, 1997), nor *In*

19   *re Nuvaring Products Liability Litigation*, 2009 WL 4825170 (E.D. Mo. Dec. 11, 2009), even addresses

20   the application of Rule 9(b) on a motion to dismiss.  Rather, in *Orthopedic Bone Screw*, the MDL court

---

22   claims. *See*  Pretrial Order No. 11 ("PTO 11") at 2, ECF 349; *id.* at Ex. A, ECF 349-1.

23   [18] The sentences Plaintiffs selectively quote from *Zofran* concern alleged misrepresentations in the drug's
pharmaceutical labeling.  The *Zofran* court found these alleged misrepresentations were in fact pleaded
24   with specificity, but held that the reliance element need not meet that heightened pleading standard,
especially given that "pharmaceutical product labeling is highly regulated and its very purpose is to advise
25   prescribing physicians who may reasonably rely on the representations in such labeling." *Id.* at *7.  The
alleged misrepresentation here does not concern such labeling, and the Ninth Circuit requires that reliance
26   be pled "with the particularity or specificity required by [Rule] 9(b)." *Jones* v. *Medtronic, Inc.*, 745 F.
App'x 714, 717 (9th Cir. 2018); *In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, 2014 WL 5311272,
27   at *16 (C.D. Cal. Sep. 4, 2014) ("[B]road allegations of reliance are not enough to satisfy the strictures of
Rule 9(b).").
28

declined to rule on certain partial motions for summary judgment, finding them unsuitable for determination by the MDL court. 1997 WL 109595, at *1. Similarly, in *In re Nuvaring Products Liability Litigation*, the court dismissed without prejudice defendant's "motions to dismiss and motions for a judgment on the pleadings" as to "individual cases" of an MDL, ordering that the motions be addressed at summary judgment or the transferee courts at a later date. 2009 WL 4825170, at *2-3. *In re Trasylol Products Liability Litigation*, 2009 WL 577726 (S.D. Fla. Mar. 5, 2009), also is inapposite. There the court dismissed fraud claims that were based on information that "lies largely in the possession of [plaintiffs'] physicians," including their reliance on certain alleged misrepresentations. *Id.* at *12. The claims the court allowed to proceed were based on facts "largely within the control of the [d]efendants," such as the results of clinical studies. *Id.* at *8. Here, any information about which plaintiffs saw which alleged statements are within Plaintiffs' exclusive control, and thus must be pled with the "particularity required by Rule 9." *Id.* at *12.

While some MDL courts have decided within their broad discretion not to entertain challenges to the adequacy of a master complaint, Opp. at 86-89, this Court advised the parties that it did intend to consider and resolve dispositive motions under various states' laws. Hearing Tr. at 33-35, ECF 244 (Feb. 2, 2024).

The Northern District's decision in *In re Anthem, Inc. Data Breach Litigation*, 2016 WL 3029783 (N.D. Cal. May 27, 2016), is instructive. There, the MDL transferee court granted the defendants' motion to dismiss fraud-related claims under several states' laws. Citing Ninth Circuit precedent that "the MDL transferee court, 'is generally bound by the same substantive legal standards . . . as would have applied in the transferor court,'" the MDL court applied Rule 9(b) as it would apply to individual claims, and made no exceptions to its particularity standard simply because the action involved an MDL. *Anthem*, 2016 WL 3029783, at *38 (N.D. Cal. May 27, 2016) (quoting *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 699 (9th Cir. 2011)).[19]

---

[19] Plaintiffs attempt to distinguish *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317 (D.N.J. Sept. 30, 1997), and *In re Volkswagen Clean Diesel*, 349 F. Supp. 3d 881, 914 (N.D. Cal. 2018), on the basis that they were MDLs that also included class actions. Opp. at 88. But that is not a meaningful distinction. Nor was it a distinction discussed or relied upon by the MDL courts. Rule 9(b)'s particularity requirement applies equally in MDLs.

### B.    The *McKnight* Settlement Agreement Bars Certain Plaintiffs' Claims

Plaintiffs do not dispute that certain of them are bound by the *McKnight* Settlement Agreement, nor do they dispute that their misrepresentation claims "aris[e] out of or relat[e] to" the safety-related marketing statements that were alleged in *McKnight*.  Instead, Plaintiffs contend that the *McKnight* Settlement Agreement contains a "carve-out," citing a portion of the release stating that, "Plaintiffs and Class Members are not releasing any claims for personal injuries."  Opp. at 66.  But Uber is not moving to dismiss Plaintiffs' personal injury claims - - *i.e.,* negligence and common carrier liability.  That was the point of the personal injury carve-out:  plaintiffs released "any claim arising out of or relating to [Uber's] representations or omissions regarding background checks, safety, and the Safe Rides Fee," while preserving their right to assert personal injury claims.  What the Settlement Agreement does *not* preserve is any right to bring misrepresentation claims for a second time about the same alleged marketing misrepresentations.  For example, the Settlement Agreement released all fraud-related claims with respect to alleged "Safe Rides Fee" misrepresentations.

Plaintiffs also argue that the "personal injury claims" here are not "based on the identical factual predicate" as the "consumer fraud claims" in *McKnight*.  Opp. at 67.  That is a non sequitur.  The issue isn't whether the personal injury and fraud claims are based on the same facts.  The issue is whether the misrepresentation claims here and the misrepresentation claims in *McKnight* arise from the same factual predicate - - *i.e.,* Uber's alleged marketing statements "regarding background checks, safety, and the Safe Rides Fee."  There is no dispute that they do.

The cases cited by Plaintiffs are off point.  In *Hesse* v. *Sprint Corp.*, the two sets of claims did not share an identical factual predicate because the first claim concerned "nationwide surcharges" while the second claim concerned a separate "statewide surcharge."  598 F.3d 581, 591 (9th Cir. 2010).  *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg.*, *Sales Pracs. & Prods. Liab. Litig.* actually favors Uber:  as in this case, the Fourth Circuit held that the released "consumer protection claims," including fraud claims, and a subsequent "wrongful death claim," did not share an identical factual predicate.  91 F. 4th 174, 184 (4th Cir. 2024).  The court emphasized that the first action did not "pursu[e] personal injury or wrongful death claims," while the second action was for wrongful death with no fraud claims.  *Id.* at 182.  Here, by contrast, the same fraud claims were brought in both *McKnight* and

in this case.

One final point:  Uber has moved to strike the "Safe Rides Fee" allegations because they have no relevance to any of the plaintiffs:  the *McKnight* class action plaintiffs settled their claims, and the remaining plaintiffs did not see any representations about the "Safe Rides Fee."  Plaintiffs' Opposition contains no reason for allowing the Safe Rides Fee claim to remain in this case.  It should be stricken.

## C.    The Complaint Alleges Non-Actionable Statements

Uber's opening brief explained that the Complaint includes a list of dozens of statements, many of which are non-actionable.  A number of the statements are not even alleged to be false - - for example, "safety features are built into every ride."  Other statements are non-falsifiable opinion or aspirational statements - - for example, "Uber is dedicated to keeping people safe on the road."  Statements that refer to "safety" in vague and general terms do not promise any specific standard of safety and cannot be actionable false statements.  Mots. at 17-18.

Plaintiffs do not dispute that many of these specific statements are true or are non-falsifiable.  Instead, they accuse Uber of "cherry-pick[ing]."  Opp. at 73.  According to Plaintiffs, Uber "picked" certain statements that are "true, such as that Uber does have 'safety features built into every ride,'" while ignoring certain "pre-*McKnight* statements."  Opp. at 73-74.  Plaintiffs also take issue with the fact that Uber "picked" certain statements that are not falsifiable - - such as statements about Uber's values and goals - - and "ignore[d] its factual claims regarding background checks and driver ratings."  Opp. at 75.

Courts are not precluded from finding that certain alleged misrepresentations are not actionable even if some are. Plaintiffs have cited no case to that effect. In fact, courts, including those in the cases Plaintiffs themselves cite, often rule that of a list of alleged misrepresentations, certain of those statements cannot form the basis of a fraud claim.  *See*, *e.g.*, *Ahern* v. *Apple Inc.*, 411 F. Supp. 3d 541, 554-55 (N.D. Cal. 2019); *Doe* v. *Uber Techs.*, *Inc.*, 551 F. Supp. 3d 341, 366-69 (S.D.N.Y. 2021); *Sanlu Zhang* v. *Royal Caribbean Cruises*, *Ltd.*, 2019 WL 8895223, at *6 (S.D. Fla. Nov. 15, 2019); *Catilina Nominees Proprietary Ltd.* v. *Stericycle*, *Inc.*, 2021 WL 1165087, at *6 (N.D. Ill. Mar. 26, 2021); *Deburro* v. *Apple*, *Inc.*, 2013 WL 5917665, at *4 (W.D. Tex. 2013).

That Plaintiffs supposedly alleged a "decade-long barrage of" safety-related statements does not make non-actionable statements actionable.  Opp. at 69.  Plaintiffs cite no legal authority supporting that

proposition, either.  And Plaintiffs admit they allege statements with "no relevance" to some plaintiffs, who did not see or rely on all the statements.  Opp. at 81.  Because Plaintiffs fail to meet Rule 9(b)'s specificity requirements by identifying which statements were seen and relied on by which Plaintiffs, *supra*, Section III.A, it is impossible for the Court to determine which specific Plaintiffs saw only non-actionable statements.  *See*, *e.g.*, *Deburro* v. *Apple*, *Inc.*, 2013 WL 5917665, at *4 (W.D. Tex. Oct. 31, 2013) (finding that plaintiffs had failed to plead reliance with sufficient particularity when they did not "plead they personally saw any" of the statements only made "conclusory" statements that they relied.).[20]

Plaintiffs argue that even if certain of the alleged statements are true, "literally true" statements "may nonetheless be misleading when considered in context."  Opp. at 74 (citation omitted).  According to Plaintiffs, the truthful statement that "safety features are built into every ride," read in context, suggests that "such 'safety features' are designed to be and are, in fact, effective."  *Id.* Even accepting Plaintiffs' unsupported "in context" interpretation of this true statement fact, there are no factual allegations that those safety features are not effective - - for example, that the "911 help" feature could *not* call 911, or that the RideCheck feature does *not* help detect trips that go off course.  Absent such necessary allegations, Plaintiffs still have failed to allege a falsifiable statement such that it may support a fraud claim.  *See*, *e.g.*, *Doe* v. *Uber Techs.*, *Inc.*, 551 F. Supp. 3d at 366-67 (finding that Uber's statements that the "Uber experience has been designed from the ground up with your safety in mind" as non-actionable); *XYZ Two Way Radio Serv.*, *Inc.*, 214 F. Supp. 3d at 185 (same).[21]

Similarly Plaintiffs argue that indisputably true statements must be read alongside other

---

[20] Plaintiffs argue that two cases that found many of the very same statements at issue here non-actionable, were decided for "unique case-specific reasons."  Opp. at 78 n.49.  As Plaintiffs describe it, in *XYZ Two Way Radio Serv.*, *Inc.* v. *Uber Techs.*, *Inc.*, the court found certain statements were non-actionable because the "[a]llegedly false portion of the statements did not apply in the local market at issue."  Opp. at 78 n.49 (citing 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016)).  And in *Am. Honda Motor Co.*, *Inc.* v. *Milburn*, 668 S.W.3d 6 (Tex. App. 2021), Plaintiffs assert the passenger "disclaimed any reliance on specific Uber safety messaging."  *Id.* But again, that demonstrates the problem with Plaintiffs' Complaint - - they have failed to make any allegations providing the "unique case-specific" information necessary to adjudicate their fraud claims, including which, if any, actionable statements Plaintiffs saw, and whether they in fact relied on those statements.

[21] Plaintiffs make similar arguments for the statement that Uber's drivers "undergo a multi-step safety screen."  Opp. at 74.  But whether the background checks are "robust" or comprehensive" are "general terms of quality, not specific characteristics," that, "without more," are "not falsifiable."  *Fusco* v. *Uber Techs.*, *Inc.*, 2018 WL 3618232, at *7 (E.D. Pa. July 27, 2018).

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

advertising statements made in other contexts, at different times, and regardless of whether each plaintiff had seen them, such that the court should not dismiss any alleged statement. Opp. at 73. There is no support for that argument. Most of Plaintiffs' cited cases are not even common law fraud cases. *In re Vaxart, Inc. Sec. Litig.*, 576 F. Supp. 3d 663 (N.D. Cal. 2021) (federal securities law); *Lavie* v. *Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (Cal. Ct. App. 2003) (decided under UCL). Plaintiffs' other cases involve alleged omissions - - which are discussed below and not relevant here - - *see Prentice* v. *R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 837 (Fla. 2022), or discrete statements made to a single plaintiff in a single document, *see St. Joseph Hosp.* v. *Corbetta Constr. Co.*, 316 N.E.2d 51, 71 (Ill. App. 1974); *Ebby Halliday Real Estate, Inc.* v. *Dougas*, 2019 WL 1529174, at \*4 (Tex. App. Apr. 9, 2019).

Here, there is no single Plaintiff who saw every alleged statement made over a decade, consequently, no Plaintiff could have relied on the "context" of all Uber's purported statements. Plaintiffs make a similar "context" argument as to non-actionable opinions or puffery, asserting that aspirational statements cannot be puffery because "they appear close to" or were "part of the same advertising strategy" as other "statements that incorporate more factual elements." Opp. at 77. But Plaintiffs fail to identify any non-actionable statement that is misleading in its specific context. Plaintiffs point to, for example, an advertisement stating: "Our commitment to safety." Opp. at 77; Compl. App'x at 4. While Plaintiffs concede that the statement is aspirational, they selectively quote other words in that advertisement to argue that it was made "in conjunction" with other statements. However, read in full, the relevant statement is: "That's why we're committed to safety - - from the creation of new standards to the development of technology with the aim of reducing incidents." Compl. App'x at 4. Plaintiffs do not allege that Uber has not created new standards or developed technology; nor do they dispute that the term "aim" indicates that "reducing incidents" is a goal and does not contain the absolute guarantee of zero incidents.

Even assuming that non-actionable puffery could be actionable in "context," that context cannot include statements that the individual plaintiff never saw or read. Plaintiffs cite no decision concerning common law fraud claims to support their argument, instead relying on a Fifth Circuit case interpreting the "reasonable consumer" standard under the Lanham Act, and a federal district court case interpreting New Mexico law, in which the court found that - - contrary to Plaintiffs' argument - - some alleged statements were non-actionable puffery while others were actionable. *See* Opp. at 77 (first citing *Pizza*

1  *Hut* v. *Papa John's Int'l*, 227 F.3d 489, 501 (5th Cir. 2000); then *Begay* v. *Medicus Healthcare Sols.*,

2  *LLC*, 2015 WL 13650107, at *7 (D.N.M. Nov. 18, 2015)).  Nor do Plaintiffs address Uber's cited cases,

3  which show that courts regularly examine a company's advertising statements and identify the specific

4  statements that qualify as non-actionable puffery.  *See*, *e.g.*,  *Ahern*, 411 F. Supp. 3d 541, 554-55.

5       As the cases cited by both parties reveal, no court that has analyzed the specific issue here - -

6  whether Uber's safety statements were actionable - - has ruled that otherwise non-actionable statements

7  may predicate a fraud claim based on Uber's overall "advertising strategy."  *See generally*, *e.g.*, *Doe* v.

8  *Uber Techs.*, *Inc.*, 551 F. Supp. 3d 341; *XYZ Two Way Radio Serv.*, *Inc.*, 214 F. Supp. 3d 179; *Fusco*,

9  2018 WL 3618232; *L.A. Taxi Coop.*, *Inc.*, v. *Uber Techs.*, *Inc.*, 114 F. Supp. 3d 852 (N.D. Cal. 2015);

10  *Delux Cab*, *LLC* v. *Uber Techs.*, *Inc.*, 2017 WL 1354791 (S.D. Cal. 2017); *DeSoto Cab Co.*, *Inc.* v. *Uber*

11  *Techs.*, *Inc.*, 2018 WL 10247483 (N.D. Cal. Sept. 24, 2018).

12       **D.**    **The Complaint Fails to Plead Fraudulent Omission or Concealment**

13       As Uber's opening brief explained, a fraudulent omission claim requires allegations about the

14  omission of a material fact.  In their Opposition, Plaintiffs do not identify material *facts* that they allege

15  Uber was required to, but did not, disclose.  Instead, they argue that Uber somehow had a legal obligation

16  to make statements echoing Plaintiffs' unproven accusations about the company and its business.  Mots.

17  at 19.  Plaintiffs argue, for example, that "Uber used the language 'sign up to ride' as opposed to 'sign up

18  to connect with rides, which may or may not be safe, offered by random drivers whom we don't know and

19  can't vouch for other than to say they passed our cursory background check.'"  Opp. at 79.  These are not

20  facts; they are Plaintiffs' own pejorative allegations against Uber.  With all respect, that is not a serious

21  argument and it is not a cognizable basis to sustain an omission claim.

22       Plaintiffs also fail to allege facts demonstrating that Uber had a duty to disclose to Plaintiffs.

23  Plaintiffs' fraudulent omission claims therefore cannot survive Uber's Motion.

24            **1.**    California

25       Under California law, "[t]here are 'four circumstances in which nondisclosure or concealment may

26  constitute actionable fraud:  (1) when the defendant is in a fiduciary relationship with the plaintiff; (2)

27  when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the

28  defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial

1   representations but also suppresses some material facts.'" *LiMandri* v. *Judkins*, 52 Cal. App. 4th 326, 336

2   (Cal. Ct. App. 1997).

3          Other than the first circumstance (fiduciary duty), which Plaintiffs concede does not exist here,

4   "[e]ach of the other three circumstances in which nondisclosure may be actionable presupposes the

5   existence of some other relationship between the plaintiff and defendant in which a duty to disclose can

6   arise," and is insufficient on its own. *Id.* at 336-37.  For example, "where material facts are known to one

7   party and not to the other, failure to disclose them is not actionable fraud unless there is *some relationship*

8   between the parties which gives rise to a duty to disclose such known facts." *Id.* at 337.  Plaintiffs have

9   not alleged facts supporting a relationship between Uber and Plaintiffs giving rise to a duty to disclose.

10          Even assuming that such a relationship exists, Plaintiffs are incorrect that any of the three

11   circumstances exist. *First*, "active concealment" differs from "mere nondisclosure," in that the former

12   requires "affirmative acts on the part of the defendants in hiding, concealing or covering up" material

13   facts. *Lingsch* v. *Savage*, 213 Cal. App. 2d 729, 734 (Cal. Ct. App. 1963).  Plaintiffs are therefore wrong

14   that the "same facts" as to nondisclosure can support active concealment, and the Complaint does not

15   allege any facts demonstrating that Uber actively concealed material facts from Plaintiff.  Opp. at 80.

16          *Second*, as to exclusive knowledge, Plaintiffs assert that Uber had "superior knowledge" of

17   information about incidents and background checks, even if that knowledge was not exclusive.  Opp. at

18   80.  But Plaintiffs' cited case explains that "to plead that defendants have *superior* knowledge," Plaintiffs

19   must also plead facts that "the information was not reasonably discoverable by the plaintiffs." *Flier* v.

20   *FCA US LLC*, 2022 WL 16823042, at *5 (N.D. Cal. Nov. 8, 2022) (emphasis added).  There are no

21   allegations supporting that Plaintiffs could not have reasonably discovered any "material facts," given that

22   a number of them were class members in *McKnight* (and settled those claims), and Plaintiffs themselves

23   allege that publicly published articles - - and Uber's Safety Report - - disclosed the information in question.

24   Plaintiffs argue that "the first Safety Report (December 5, 2019) has no relevance to the fraud claims

25   asserted by someone who was assaulted before that date." Opp. at 81.  But that again reveals the problem

26   with Plaintiffs' deficient pleadings.  There are no facts alleged about which plaintiffs relied on which

27   statements or omissions, and without those factual allegations, it is impossible to determine whether any

28   alleged statement or omission has any relevance to a specific plaintiff's claim.

*Third*, partial disclosures give rise to a duty to disclose where they are "half-truths which purported to be the whole truth or which were likely to mislead." *Wiechmann Eng'rs* v. *State of California ex rel. Dept. Pub. Wks.*, 31 Cal. App. 3d 741, 750 (Cal. Ct. App. 1973). Plaintiffs have not alleged how any of Uber's statements were "half-truths which purported to be the whole truth." Nor have they alleged how or why any of Uber's statements were "likely to mislead." For example, Plaintiffs assert that Uber made statements about background checks without disclosing that they used names instead of biometrics, but there are no facts alleged indicating that any reasonable passenger would assume that the background check included biometrics, or that they were misled to believe that the background checks included more than what was disclosed.

### 2.   Texas

Under Texas law, there is generally no duty to disclose without evidence of a confidential or fiduciary relationship. *See Bombardier Aerospace Corp.* v. *SPEP Aircraft Holdings*, *LLC*, 572 S.W.3d 213, 219-20 (Tex. 2019). Under certain conditions there "may be" a duty to disclose imposed when the defendant: "(1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Id.* at 220. Plaintiffs claim that they have pleaded fraud by nondisclosure pursuant to all three of these conditions. But for the same reasons as detailed above for California and New York, this claim under Texas law fails.

Even if Plaintiffs could show that Uber had a duty to disclose information as a matter of law, under Texas law, to state a claim for fraud by omission, Plaintiffs must separately allege that they were "ignorant of the facts and did not have an equal opportunity to discover them." *Id.* at 219. As Plaintiffs' complaint alleges, and as discussed above, the public record was replete with information and facts on the very issues about which they now complain. *See* Compl. ¶¶ 145 n.19; 151; 260 n.60; 273. Plaintiffs cannot profess ignorance, or an inability to discover, facts that are "publicly available." *See Estate of Scott*, 2020 WL 2736466, at *5 (Tex. App. May 27, 2020); *Holland* v. *Thompson*, 338 S.W.3d 586, 598 (Tex. App. 2010); *Rawhide Mesa-Partners*, *Ltd.* v. *Brown McCarroll, L.L.P*, 344 S.W.3d 56, 62 (Tex. App. 2011); *cf.*

1  *Bergeron* v. *Select Comfort Corp.*, 2016 WL 155088, at *7 (W.D. Tex. Jan. 11, 2016).[22]

2        Plaintiffs attempt to avoid the implications of this publicly available information by suggesting

3  that under Texas law, some undefined "whole truth" must be made available to Plaintiffs, and claiming

4  that the cases Uber cited in its Opening Brief support that proposition. But neither of the cases Uber cited,

5  *Estate of Scott* and *Holland* v. *Thompson*, nor Plaintiff's proffered case, *Suzlon Wind Energy Corp.* v.

6  *Shippers Stevedoring Co.*, set forth such a "whole truth" or "full picture" standard. Instead, under Texas

7  law, to plead a claim for fraudulent omission, a Plaintiff must plead they were "ignorant of *material facts*"

8  and did not "have an equal opportunity to discover" those material facts. *E.g., Higginbotham* v.

9  *Higginbotham*, 2022 WL 17490993, at *5 (Tex. App. Dec. 8, 2022) (emphasis added). Thus, the relevant

10  inquiry is whether Plaintiffs have alleged with sufficient specificity under Rule 9(b) that there were

11  material facts of which they were ignorant and which they did not have the opportunity to discover. They

12  have not.

13        Texas subjects claims of fraud by omission to a heightened pleading standard. *Dorsey* v. *Portfolio*

14  *Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008); *Big Thirst, Inc.* v. *Donoho*, 2024 WL 348526, at *5

15  (W.D. Tex. Jan. 29, 2024) ("Rule 9(b) applies to fraud by nondisclosure because '[f]raud by non-

16  disclosure [is a] subcategory of fraud.'" (citing *Bombardier Aerospace Corp.* v. *SPEP Aircraft Holdings*,

17  *LLC*, 572 S.W.3d 213, 219 (Tex. 2019)). For the reasons set forth above at Section III.A., Plaintiffs have

18  failed to meet this heightened pleading standard. Moreover, in Texas, in order to satisfy the reliance

19  element of fraud by omission, Plaintiffs must allege that they actually relied on the omission to their

20  detriment. *Sharpe* v. *Lyft, Inc.* 2024 WL 278913, at *3 (S.D. Tex. Jan. 10, 2024). Plaintiffs have failed

21  to allege any such facts for each of the plaintiffs that have brought actions.

22

23  [22] Plaintiffs argue that *Bergeron* is inapposite because the case applied "the elements of fraudulent

24  concealment tolling, not fraud by omission," the former of which requires "awareness of the public record and reasonable investigation of red flags," whereas the latter "requires only that the plaintiff lack 'an equal opportunity' as that of the defendant." Opp. at 85 n. 53. But it is not clear what Plaintiffs believe is the

25  difference between having "awareness of the public record" and having "an equal opportunity" to investigate public information. And at any rate, as Plaintiffs seem to recognize, the fraudulent

26  concealment standard is a higher one than fraudulent omission. Under the latter, Plaintiffs are not actually required to have conducted a "reasonable investigation of red flags," rather, as Plaintiffs articulate, fraud

27  by omission requires "*only* that the plaintiff lack 'an equal opportunity'" to learn of the relevant

28  information. *Id.* Whether or not they actually investigated is of no matter for the purposes here.

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

3. Florida

Under Florida law, a duty to disclose arises when one party "has a right to know because of a fiduciary or other relation of trust or confidence between them." *Florida* v. *Mark Marks*, *P.A.*, 698 So. 2d 533, 539 (Fla. 1997). Plaintiffs do not contest that Uber lacked a "fiduciary or other relation of trust of confidence" with Plaintiffs. Rather, Plaintiffs now argue that Uber's duty to disclose arose because its "failure to speak would render the defendant's own prior speech misleading or deceptive." Opp. at 81 (quoting *In re Takata Airbag*, 2017 WL 775811, at *4 (S.D. Fla. Feb. 27, 2017)). The *Marriott International* court actually held that a duty may arise "where a party undertakes to disclose certain facts, such that the party must then disclose the entire truth known to him." *Marriott Int'l.* v. *Am. Bridge Bahamas*, *Ltd.*, 193 So. 3d 902, 908 (Fla. Dist. Ct. App. 2015). "Such a claim, however, must be supported by some evidence of a statement that would trigger the further duty to disclose all known facts." *Id.* Plaintiffs do not identify the specific statements they allege trigger this duty to disclose, and regardless, for the same reasons as detailed above for California and other states, Plaintiffs fraudulent omission claim based on partial facts or statements fails.

But even if Plaintiffs had identified partial facts or statements that trigger this exception, Florida too subjects claims of fraud by omission to a heightened pleading standard. *See*, *e.g., Robertson* v. *PHF Life Ins. Co*., 702 So. 2d 555, 556 (Fla. Dist. Ct. App. 1997). For the reasons set forth above at Section III.A., Plaintiffs have failed to meet this heightened pleading standard. And with regard to the reliance element, "Florida law imposes a reliance requirement in an omissions case, which cannot be satisfied by assumptions." *Humana*, *Inc.* v. *Castillo*, 728 So. 2d 261, 265 (Fla. Dist. Ct. App. 1999). Plaintiffs have not alleged with the required particularity which, if any, of the plaintiffs relied on which, if any, partial statements and alleged omissions. Instead, Plaintiffs have improperly assumed reliance.

4. Illinois

Under Illinois law, to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when it was under a duty to disclose such a fact to the plaintiff. *See*, *e.g., Philips* v. *DePaul Univ*., 19 N.E.3d 1019, 1037 (Ill. App Ct. 2014). Plaintiffs now claim two situations can give rise to a duty to disclose: (1) where a defendant makes an affirmative statement that is a misleading half-truth; and (2) where a plaintiff places trust and confidence in defendant, thereby placing

-37-

defendant in a position of influence and superiority over the plaintiff (a "special trust relationship"). Neither situation applies here.

For the reasons set forth herein for California and other states, Plaintiffs fraudulent omission claim based on partial facts or statements fails.

In urging this court to find a special trust relationship, Plaintiffs rely on *Lilly* v. *Ford Motor Co.*, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002) and *Schrager* v. *N. Cmty. Bank*, 767 N.E.2d 376, 386 (Ill. App. Ct. 2002). These cases were decided in 2002; the Seventh Circuit and appellate courts in Illinois have since provided additional guidance as to the requirements of the special trust relationship that cast doubt on the holdings in *Lilly* and *Schrager*. These more recent decisions have made clear that a special trust relationship is "extremely similar to that of a fiduciary relationship." *Benson* v. *Stafford*, 941 N.E.2d 386, 403 (Ill. App. Ct. 2010); *see also Squires-Cannon* v. *Forest Preserve Dist. of Cook Cnty.*, 897 F.3d 797, 806 (7th Cir. 2018) (quoting *Toulon* v. *Cont'l Cas. Co.*, 877 F.3d 725, 738 (7th Cir. 2017)). For that reason, "courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Toulon*, 877 F.3d at 738 (quoting *Wigod* v. *Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012)); *see also Wigod*, 673 F.3d at 572 (collecting cases).

In order to now plead a special trust relationship, the plaintiff must allege that defendants accused of fraudulent concealment "exercise *overwhelming influence over the plaintiff*." *Id.* As the Seventh Circuit explained in *Wigod*, in assessing whether a special trust relationship exists, the court should consider factors such as the degree of kinship between the parties, disparity in age, health, and mental condition, and the extent to which the servient party entrusted her business affairs to the dominant party. *Id.* The *Wigod* court also warned that "asymmetric information alone does not show the degree of dominance needed to establish a special trust relationship." *Id.* at 573. In short, the "special relationship threshold is a high one." *Id.* at 572.

Ignoring this more recent law, Plaintiffs argue that the court should follow *Lilly*, and find a special trust relationship giving rise to a duty to disclose here because "Uber was solely responsible for the design of its business" and "withheld information." Opp. at 82-83. But under the standard as set out in *Benson*, *Wigod*, *Toulon* and *Squires-Cannon*, such allegations are not sufficient to establish a special trust relationship. *See also Van Zeeland* v. *Rand McNally*, 532 F. Supp. 3d 557, 573 (N.D. Ill. 2021) (declining

-38-

to apply *Lilly* in light of the Seventh Circuit's decision in *Wigod*); *see also Rodriguez* v. *Ford Motor Co.*, 596 F. Supp. 3d 1050, 1058 (N.D. Ill. 2022) (declining to find a special trust relationship between Ford and plaintiff, even though Ford had more knowledge and information as to the functionality of its vehicles and their parts); *Fleury* v. *General Motors LLC*, 654 F. Supp. 3d 724, 735 (N.D. Ill. 2023) ("[A] car manufacturer's knowledge of its vehicles' parts and function does not establish an 'overwhelming influence' over the consumer.").[23]   Plaintiff does not allege that they and Uber have a relationship akin to a fiduciary one, and without that, Plaintiffs fraudulent omission claim under Illinois law fails.

Finally, Illinois subjects claims of fraud by omission to a heightened pleading standard.  *See, e.g., McMahan* v. *Deutsche Bank.*, 938 F. Supp. 2d 795, 805 (N.D. Ill. 2013).  For the reasons set forth above at Section III.A., Plaintiffs have failed to meet the heightened pleading standard.

### 5.   New York

Under New York law, in addition to alleging the elements for fraud, a fraudulent omission claim requires that the plaintiff allege that the defendant had a duty to disclose the material information and did not.  *P.T. Bank Cent. Asia* v. *ABN AMRO Bank N.V.*, 754 N.Y.S.2d 245, 250 (N.Y. App. Div. 2003). There are three bases on which to impose a duty to disclose under New York Law:  (1) a fiduciary relationship; (2) the special facts doctrine, where one party possesses superior knowledge, not readily available to the other; and (3) where a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure. *See Aetna Cas. & Sur. Co.* v. *Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005).  Plaintiffs do not contest that they fail to meet the first requirement. And Plaintiffs fail to satisfy the other bases for the same reasons as they failed under similar California law.

Plaintiffs' invocation of the special facts doctrine is also undermined by its own Complaint.  Under New York law, "a party's knowledge is not superior where the relevant information 'was either a matter of public record, was not pursued by plaintiffs, or was disclosed at least in part.'"  *Grumman Allied Indus.*,

---

[23] The two other cases Plaintiffs cite both involve minors, one of whom was sexually assaulted by a priest, *Wisniewski* v. *Diocese of Belleview*, 943 N.E.2d 43, 49 (Ill. App. Ct. 2011), and the other of whom was sexually assaulted by a Scout Leader, *Doe* v. *Boy Scouts of Am.*, 66 N.E. 3d 433, 437 (Ill. App. Ct. 2016). Plaintiffs have not and cannot allege facts that the relationship between Uber and the Plaintiffs is anything at all like that between the minors to those institutions.

*Inc.* v. *Rohr Indus. Inc.*, 748 F.2d 729, 739 (2d Cir. 1984). Facts are "not readily available" only when those facts could not be discovered through the "exercise of ordinary intelligence by the plaintiffs." *See, e.g., Bevelacqua* v. *Brooklyn L. Sch.*, 2013 WL 1761504, at *10 (N.Y. Sup. Ct. Apr. 22, 2013). But here, Plaintiffs allege that information and facts on the very issues about which they now complain have been available in the public record for years. *See* Compl. ¶¶ 145 n.19; 151; 260 n.60; 273. The Safety Reports indisputably disclosed extensive data and information relating to prior incidents. *Id.* ¶ 273. Several articles discussed background checks. *Id.* ¶¶ 145 n.19; 151; 260 n.60. And, as detailed above, numerous plaintiffs were class members in the *McKnight* litigation, and that litigation was publicly filed and settled as a class action. *Id.* ¶ 53 n.2. Thus, "relevant information" was publicly available and, if not actually known by the Plaintiffs, could have been "discovered . . . through the exercise of ordinary intelligence." *Bevelacqua*, 2013 WL 1761504, at *10.

New York requires that a plaintiff must comply with the heightened pleading requirement of Federal Rule of Civil Procedure 9(b)." *See Muller-Paisner* v. *TIAA*, 289 F. App'x 461, 463 (2d Cir. 2008); *Odyssey Re (London) Ltd.* v. *Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 296 (S.D.N.Y. 2000), *aff'd*, 2 F. Appx. 109 (2d Cir. 2001). For the reasons set forth above at Section III.A., Plaintiffs have failed to meet this heightened pleading standard. In addition, in New York, when the duty to disclose is based, as is Plaintiffs' claim, "on partial representations or superior knowledge, the pleader 'must allege facts giving rise to a duty to disclose with the specificity required by 9(b).'" *Miller* v. *HSBC Bank U.S.A., N.A.*, 2015 WL 585589, at *7 (S.D.N.Y. Feb. 11, 2015) (quoting *Odyssey Re (London) Ltd.*, 85 F. Supp. 2d at 296). Here, Plaintiffs have simply recited the standard, but have not specifically alleged under New York law which omissions fall into which exception, and on what basis. Plaintiffs undifferentiated and unspecified claim of fraud by omission cannot meet the heightened pleading requirements under New York law.

## IV.   NIED IS DUPLICATIVE OF NEGLIGENCE AND MUST BE DISMISSED

Plaintiffs' claim for negligent infliction of emotional distress should be dismissed. As a preliminary matter, in light of Uber's Motion, Plaintiffs have now withdrawn their claim for negligent infliction of emotional distress ("NIED") under Texas law. *See* Opp. at 3. And Plaintiffs' cursory attempt to save their NIED claims under the laws of California, New York, Illinois, and Florida relies on a

misreading of those states' laws, only confirming that their ill-pled claim should be dismissed.

### A. California

Plaintiffs' only response to Uber's argument that Plaintiffs' claim for NIED under California law is duplicative and subsumed by their negligence claim is that there are separate CACI pattern jury instructions for NIED and general negligence. That there are separate pattern jury instructions for NIED and general negligence does not mean that they are distinct claims that can be asserted simultaneously in the same action based on the same conduct, or that they are not duplicative. The CACI pattern jury instructions actually support the opposite conclusion. *First*, the elements of each CACI instruction are the *same*. *Compare* CACI No. 400 (requiring 3 elements: defendant was negligent, plaintiff was harmed, and the negligence caused the harm), *with* CACI No. 1620 (providing the same elements and clarifying that the "harm" can be "serious emotional distress"). *Second*, the Judicial Council of California Jury Instructions Rule 1620, which Plaintiffs cite, explain that: "'[N]egligent infliction of emotional distress' is *not* a separate tort or cause of action. It simply allows . . . recover[y of] damages for emotional distress only on a negligence cause of action even though they were not otherwise injured or harmed." CACI No. 1620, Directions for Use (2023) (emphasis added) (citing *Molien* v. *Kaiser Found. Hosps.*, 616 P.2d 813, 819-20 (Cal. 1980) (*en banc*); *see also Marlene F.* v. *Affiliated Psychiatric Med. Clinic*, *Inc.*, 770 P.2d 278, 281 (Cal. 1989) (*en banc*).

Plaintiffs cite *no* California case holding that NIED is a cognizable claim separate from negligence. Plaintiffs also fail to address or acknowledge the supporting California case law cited in Uber's Motion. *See* Cal. Mot. at 22.

### B. Florida

In Florida, Plaintiffs argue that they meet the elements of an NIED claim because "for many or most Plaintiffs, NIED claims will be available based on physical impact," and "[f]or those lacking physical impact, it is still likely that the Florida Supreme Court would recognize a claim for NIED." Opp. at 90. However, regardless of whether Plaintiffs can bring a claim for NIED based on physical impact, they cannot bring *duplicative* claims of NIED *and* negligence, as they do here. That is because the NIED claim is subsumed by Plaintiffs' negligence claim. *See Singh* v. *Bascom*, 2010 Fla. Cir. LEXIS 7366, *3-4 (Fl. Cir. Ct. Dec. 14, 2010) (dismissing claim for negligent infliction of emotional distress because "Plaintiff

already has stated a cause of action for negligence").

### C.   Illinois

With respect to Illinois law, Plaintiffs again cite to the pattern jury instructions, which again fail to support Plaintiffs.  Rather, Illinois Pattern Jury Instructions, Civil, No. 30.01 merely provides, "[i]f you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the" negligence.  In other words, the instruction provides clarity on how to determine *damages* - - it does not set forth another cause of action for liability.

As explained in Uber's opening brief, Illinois courts look to "the operative facts and injury to determine whether" causes of action are duplicative.  *See* Ill. Mot. at 22 (quoting *Pippen* v. *Pedersen & Houpt*, 986 N.E.2d 697, 705 (Ill. App. Ct. 2013)).  Here, Plaintiffs' claims for NIED and negligence are based on the same facts as one another and seek the same recovery.  *Id.*; *compare* Compl. ¶¶ 362-67 (alleging Negligence), *with* Compl. ¶¶ 381-85 (alleging NIED).[24]  Plaintiffs do not refute that point.

### D.   New York

With respect to New York, Plaintiffs again cite to the Pattern Jury Instructions, Opp. at 89, but that cite makes clear that NIED is *not* a standalone claim in New York:  "The pattern charge deals with damages . . . it is not a liability charge.  Thus, the charge is not designed as a charge for a cause of action for negligent infliction of emotional distress (NIED) . . . .  [*T*]*he court must craft a negligence charge to address the matter of liability.*"  N.Y. Pattern Jury Instr. - - Civil No. 2:284, cmt. (emphasis added).  And New York case law supports that NIED is subsumed by a negligence claim based on the same conduct.  *See Wolkstein* v. *Morgenstern*, 713 N.Y.S.2d 171, 172 (N.Y. App. Div. 2000) ("[A] cause of action for infliction of emotional distress is not allowed if [it is]  essentially duplicative of tort . . . causes of

---

[24] Plaintiffs cite a single case to support their proposition that they should be permitted to plead both NIED and negligence simultaneously in Illinois:  *Durk* v. *Daum Trucking, Inc.*, 2008 WL 4671721, at *3 (N.D. Ill. Oct. 22, 2008).  But in *Durk*, the court recognized that "there cannot be double recovery for the same injury alleged under different claims," and allowed the claims to proceed in part because the factual predicates were not the same.  *See id.* at *3-4.  Under one claim, the plaintiffs alleged damages resulting from their involvement in the car collision at issue, and in the other, they alleged emotional damages related to observing (and attempting to assist) their daughter with her injuries following the accident.  *Id.*  Here, by contrast, Plaintiffs' claims for NIED and negligence are based on the same factual premise and seek the same relief.

1   action.").[25]  Accordingly, the NIED claim is duplicative and should be dismissed.  *See Fay* v. *Troy Cty.*

2   *Sch. Dist.*, 151 N.Y.S.3d 642, 643 (N.Y. App. Div. 2021) (dismissing an NIED claim as duplicative of

3   negligence, negligent supervision, hiring, and retention claims); *Roe v. Roman Cath. Archdiocese of N.Y.*,

4   2024 WL 1806072, at \*5-6 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 25, 2024) (same).

5   **V.    PLAINTIFFS FAIL TO ALLEGE NEGLIGENT ENTRUSTMENT**

6          Plaintiffs do not contest that their claims for negligent entrustment require allegations that Uber

7   permitted another to use its "chattels," and that negligent use of the chattels proximately caused Plaintiffs'

8   injuries.  Opp. at 90.  Across all five states at issue - - California, New York, Illinois, Florida, and Texas

9   - - Plaintiffs make the same argument in response to Uber's argument that they have failed to do so:  that

10  Uber decals and signage are "tangible" items and provision of these items to drivers gave them "the

11  opportunity" to assault Plaintiffs.  *Id.* at 90-92.  Plaintiffs misinterpret the law.  They cite *no* cases from

12  any of the states subject to the Motions holding that entrusting an ordinary, non-dangerous object like a

13  decal or sign can be the basis for liability of an intentional tort (like sexual assault) committed by the

14  entrustee.

15         **A.    California**

16         In California, one is liable for injuries arising out of the negligent entrustment (i) *of a dangerous*

17  *instrumentality* (ii) to a person (iii) "who the supplier *knows, or has reason to know*, is a danger to himself

18  or herself, or others."  *Jacoves* v. *United Merch. Corp.*, 9 Cal. App. 4th 88, 116 (Cal. Ct. App. 1992)

19  (emphasis added).  Here, Plaintiffs' claims fail on the first prong.  Nowhere do Plaintiffs allege - - either

20  in their Master Long Form Complaint or in their Opposition - - that either the decals or the signage is a

21  "dangerous instrumentality."  Plaintiffs' argument that providing decals and signage gave drivers "the

22  opportunity to sexually assault Plaintiffs," Opp. at 91, fails to meet the premise for a negligent entrustment

23

---

24  [25] Plaintiffs cite a single case to support their proposition that they should be permitted to plead both NIED

25  and negligence in New York:  *Farrell* v. *United States Olympic & Paralympic Committee*, 567 F. Supp. 3d 378, 393 (N.D.N.Y. 2021).  But *Farrell* was decided by a federal district court, against the clear weight of New York authority.  *See, e.g.*, *PC-41 Doe* v. *Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 570

26  (E.D.N.Y. 2021) (dismissing plaintiff's claims for negligent infliction of emotional distress as "duplicative" of plaintiff's negligence claims), *appeal dismissed*, 2022 WL 14807756 (2d Cir. May 3,

27  2022); *Wilczynski* v. *Gates Cmty. Chapel of Rochester, Inc.*, 2022 WL 446561, at \*3 (W.D.N.Y. Feb. 14,

28  2022) (same).

1  claim - - that the chattel itself be dangerous.  *See Jacoves*, 9 Cal. App. 4th at 116.  For example, in

2  California, negligent entrustment has been found where the owner or person in possession of a dangerous

3  object, typically a *vehicle* or a *firearm*, lends it to another and the object causes injury (*i.e.,* there is a car

4  accident or a shooting).  *See id.* (sale of rifle to psychiatric patient who committed suicide); *Talbott* v.

5  *Csakany*, 199 Cal. App. 3d 700, 702-03 (Cal. Ct. App. 1988) (entrusting vehicle to alleged "habitual adult

6  drunk driver" whose intoxicated driving killed victim).

7       Plaintiffs' claims also fail the second prong because they do not plead facts demonstrating that

8  Uber knew or should have known any particular driver was a danger to himself or others.  *See Lindstrom*

9  v. *Hertz Corp.*, 81 Cal. App. 4th 644, 651 (Cal. Ct. App. 2000).  Plaintiffs argue that *Lindstrom* is

10 distinguishable because in that case, "there was 'no evidence that defendant knew or should have known

11 that the driver was . . . incompetent,'" Opp. at 91 n.56 (omission in original) (misquoting *Lindstrom*, 81

12 Cal. App. 4th at 648-51), but here there also is no allegation that Uber had knowledge (or should have had

13 knowledge) that any *particular* driver was a danger as required.

14      Finally, Plaintiffs do not contest that the Complaint fails to allege causation in support of their

15 negligent entrustment claim (under any state's law).  Instead, they argue that proximate causation as to

16 "any particular assault is a Plaintiff-specific question not suitable for resolution on the Master Complaint."

17 Opp. at 91.  But Plaintiffs cite no case law supporting their argument that filing a Master Complaint

18 relieves them of the obligation to adequately plead causation.

19    **B.    Texas**

20      In Texas, to support a claim for negligent entrustment, Plaintiffs similarly must allege facts

21 establishing (1) that a chattel was entrusted to a person the owner knew or should have known was

22 incompetent, (2) that person was negligent with the chattel, and (3) that person's negligence caused the

23 plaintiff's injury.  *See 4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 908-10 (Tex. 2016).  As

24 in California, the qualifying chattel must be a "dangerous instrumentality."  *See, e.g., Green* v. *Tex. Elec.*

25 *Wholesalers, Inc.*, 651 S.W.2d 4, 6 (Tex. App. 1982).  Cases considering these claims typically involve

26 vehicles and firearms.  *See id.*; *Richardson* v. *Crawford*, 2011 WL 4837849, at *4 (Tex. App. Oct. 12,

27 2011).  As in other states, Plaintiffs cite *no* Texas cases holding that entrusting an ordinary, non-dangerous

28 object, like a decal or sign, can be the basis for liability of an *intentional* tort (like sexual assault)

-44-

1   committed by the borrower.

2        Plaintiffs also fail to plead facts demonstrating that Uber knew or should have known any

3   particular driver was a danger to herself or others as Texas law requires.  *See Goodyear Tire & Rubber*

4   *Co.* v. *Mayes*, 236 S.W.3d 754, 758 (Tex. 2007).  There are no allegations in any Complaint that Uber had

5   knowledge (or should have had knowledge) that any *particular* driver was a danger as to any Texas

6   plaintiff as required.  Plaintiffs also do not contest that the Complaint fails to allege causation in support

7   of their negligent entrustment claim under Texas law.  *See supra* Section V.A.

8       **C.**    **Florida**

9        Florida recognizes a claim for negligent entrustment only where the defendant knew or had reason

10  to know that the borrower was incompetent prior to entrusting him with a dangerous instrumentality,

11  which caused injury.  *See Agnew* v. *Keeler Roofing LLC*, 2023 WL 4303165, at *6 (Fla. Cir. Ct. Mar. 8,

12  2023) (citing Fla. Jur. 2d Negligent Entrustment § 48).  Here again, the decals and signage are far afield

13  from the firearms and automobiles typically analyzed in Florida's jurisprudence.  *See*, *e.g.*, *id.* at *16-18

14  (analyzing vehicle as instrumentality for negligent entrustment); *Kitchen* v. *K-Mart Corp.*, 697 So. 2d

15  1200, 1204-07 (Fla. 1997) (analyzing firearms as the instrumentality for negligent entrustment).  Plaintiffs

16  also fail to allege that Uber had knowledge (or should have had knowledge) that any *particular* driver was

17  a danger as to any Florida plaintiff as required.  *See Mullins* v. *Harrell*, 490 So. 2d 1338, 1340 (Fla. Dist.

18  Ct. App. 1986).  Plaintiffs also do not contest that the Complaint fails to allege causation in support of the

19  negligent entrustment claim under Florida law.  *See supra* Section V.A.

20      **D.**    **Illinois**

21       In Illinois, an action for negligent entrustment likewise requires entrustment of a "dangerous

22  article" to another whom the lender knows, or should know, is likely to use it in a manner involving an

23  unreasonable risk of harm to others." *Zedella* v. *Gibson*, 650 N.E.2d 1000, 1002 (Ill. 1995) (citing *Terter*

24  *v. Clemens*, 112 N.E.2d 1340, 1345 (Ill. 1986)).  There too, such claims generally are limited to the context

25  of particular instrumentalities like firearms and automobiles, not things like decals and signage.  *Id.*

26  (analyzing automobiles as dangerous instrumentality giving rise to negligent entrustment); *Latty* v.

27  *Jordan*, 604 N.E.2d 1049, 1050-51 (Ill. App. Ct. 1992) (analyzing firearms as dangerous instrumentality

28  giving rise to negligent entrustment).  And here too, Plaintiffs cite *no* Illinois cases holding that entrusting

-45-

1  an ordinary, non-dangerous object, like a decal or sign, can be the basis for liability of an *intentional* tort

2  (like sexual assault) committed by the borrower.

3      Plaintiffs again fail to adequately allege that Uber had knowledge (or should have had knowledge)

4  that any *particular* driver was a danger as to any Illinois plaintiff as required.  *See Zedella*, 650 N.E.2d at

5  1002; *Eyrich* v. *Estate of Waldemar*, 765 N.E.2d 504, 506-07 (Ill. App. Ct. 2002) (dismissing negligent

6  entrustment claim where seller not on notice that driver was "reckless, incompetent or inexperienced").

7  Plaintiffs also do not contest that the Complaint fails to allege causation in support of their negligent

8  entrustment claim under Illinois law.  *See supra* Section V.A.

9      **E.**　　**New York**

10      New York law likewise provides that "[o]n a negligent entrustment cause of action, '[t]he owner

11  or possessor of a dangerous instrument is under a duty to entrust it to a responsible person whose use does

12  not create an unreasonable risk of harm to others."  *Stanley* v. *Kelly*, 173 N.Y.S.3d 750, 752 (N.Y. App.

13  Div. 2022) (second alteration in original) (citation omitted), *leave to appeal denied*, 206 N.E.3d 1254

14  (N.Y. 2023).   But again, Uber's decals and signage are not "dangerous instruments" akin to the only

15  chattel that New York courts have allowed negligent entrustment claims to proceed on:  automobiles and

16  firearms.  *See Graham* v. *Jones*, 46 N.Y.S.3d 329, 330 (N.Y. App. Div. 2017) (analyzing automobiles as

17  dangerous instrumentality giving rise to negligent entrustment); *Morton* v. *McKenna*, 2010 WL 591085

18  (N.Y. Sup. Ct. Feb. 11, 2010) (analyzing firearms as dangerous instrumentality giving rise to negligent

19  entrustment).  As with other states, Plaintiffs cite *no* New York cases holding that entrusting an ordinary,

20  non-dangerous object, like a decal or sign, can be the basis for liability of an *intentional* tort (like sexual

21  assault) committed by the borrower.

22      In their Opposition, Plaintiffs also fail to address New York's well-settled law that to be liable,

23  Uber must have had "some *special knowledge concerning a characteristic or condition peculiar to the*

24  person to whom a particular chattel is given which renders their use of the chattel "unreasonably

25  dangerous." *Moll* v. *Griffith*, 173 N.Y.S.3d 754, 756 (N.Y. App. Div. 2022) (citation omitted).  There is

26  no allegation that Uber had such knowledge.  Plaintiffs also do not contest that the Complaint fails to

27  allege causation in support of their negligent entrustment claim under New York Law.  *See supra* Section

28  V.A.

1

## VI. PLAINTIFFS' STRICT PRODUCT LIABILITY CLAIMS FAIL AS A MATTER OF LAW

2

Plaintiffs' Opposition confirms that they have failed to adequately plead each requisite element of

3

a strict product liability claim.

4

### A. The Uber App Is Not a Product Under Plaintiffs' Own Test

5

As demonstrated in Uber's Motion, numerous courts have held as a matter of law that the Uber

6

App is not a "product" for purposes of strict product liability claims. *See*, *e.g.*, Cal. Mot. at 24 & n.18

7

(collecting cases). Plaintiffs do not identify any cases applying California, New York, Texas, Illinois, or

8

Florida law holding that the Uber App is a product. Instead, Plaintiffs urge the Court to apply a test of

9

their own creation, which has not been applied by any California court to reach a different conclusion.

10

Plaintiffs assert that: Something can be classified as a product in three ways: (1) if it is 'tangible personal

11

property distributed commercially for use or consumption'; (2) 'when the context of [its] distribution and

12

use is sufficiently analogous to the distribution and use of tangible personal property'; or (3) when 'the

13

public policies behind the imposition of strict liability' justify treatment as a product." Opp. at 94

14

(alteration in original). Although Plaintiffs quote the Restatement (Third) of Torts, Plaintiffs fashion their

15

proposed test by assembling three disparate, partial quotes from different parts of the Restatement.

16

Contrary to Plaintiffs' suggestion, the Restatement does not create such a test for determining whether

17

"[s]omething can be classified as a product." *Id.*; *see* Restatement (Third) of Torts: Products Liability §

18

19 & reporter's notes cmt. a (Am. L. Inst. 1998). Nonetheless, even applying Plaintiffs' fabricated test

19

supports the conclusion that the Uber App itself is not a product.

20

*First*, as numerous courts have held, the Uber App and similar TNC applications are not "tangible

21

personal property." *See JCCP Demurrer Order* at 17-18 ("[T]he Uber App itself is software that is not

22

capable of being touched and seen and, therefore, is intangible."); *Polanco* v. *Lyft, Inc.*, 2021 Cal. Super.

23

LEXIS 60679, at *2 (Cal. Super. Ct. Orange Cnty. May 13, 2021) ("[T]he Uber App does not fit within

24

the definition of a 'product' since it is not a 'tangible good' or 'physical object.'"); *Jane Doe No. 1* v.

25

*Uber Techs.*, *Inc.*, 2020 WL 13801354, at *6 (Cal. Super. Ct. L.A. Cnty. Nov. 30, 2020) ("The Uber App

26

is not tangible personal property . . . .").[26] That is because the Uber App is not a "tangible" article that

27

---

[26] *See Arruda* v. *Rasier, LLC*, No. A-23-878332-C (Dist. Ct., Clark County, Mar. 18, 2024); *Behuet &*

28

*Hunt* v. *Uber Techs.*, *Inc.*, 2022 WL 20318684, at *2 (Cal. Super. Ct. L.A. Cnty. July 13, 2022); *Flores*

1    can be touched or felt.[27]

2         Plaintiffs' reliance on *Beyer* v. *Symantec Corp.*, 333 F. Supp. 3d 966 (N.D. Cal. 2018), is

3    misplaced.  That case did not consider whether TNC applications constitute tangible personal property for

4    purposes of assessing product liability claims.  Instead, the court considered whether the installation of

5    malicious security software ("malware") on computers that rendered them more vulnerable to cyberattacks

6    and security vulnerabilities constituted a "physical defect" to the computer itself.  *Id.* at 978-80.  Moreover,

7    the language from *Beyer* that Plaintiffs rely on, stating that under certain circumstances computer software

8    "may be characterized as tangible property," quotes a decision, *Microsoft Corp.* v. *Franchise Tax Bd.*, 212

9    Cal. App. 4th 78, 87 (Cal. Ct. App. 2012), which is even farther afield from the facts here.  As the *Microsoft*

10   court made clear, the question in that case was "not whether software itself is tangible or intangible

11   property, but whether the *right* to *replicate and install* software is a tangible or intangible *property right*."

12   *Microsoft Corp.*, 212 Cal. App. 4th at 88 (emphasis added).[28]

13        *Second*, relying again on the Restatement (Third) of Torts, Plaintiffs argue that the Uber App may

14   be subject to strict product liability claims because "the context of [its] distribution and use is sufficiently

15   _____

16   v. *Uber Techs.*, *Inc.*, 2022 WL 20311788, at *3 (Cal. Super. Ct. L.A. Cnty., Mar. 22, 2022); *see also*
     *Ziencik* v. *Snap*, *Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (same as to Snapchat).

17   [27] Even in *In re Social Media*, which Plaintiffs otherwise cite favorably, the court held that social media
     platforms are not tangible property for reasons that also apply here.  *See In re Soc. Media Adolescent*

18   *Addition/Pers. Inj. Prods. Liab. Litig.*, 2023 WL 752491, at *25 (N.D. Cal. Nov. 14, 2023) ("It is the
     phones that vibrate, make sounds, or otherwise manifest, physically, defendants' design choices.  Any

19   connection between defendants and such haptics is therefore too attenuated for the Court to find that
     defendants' platforms are in fact tangible products. Doing so would erode any distinction between phone

20   manufacturers (for example, when they calibrate how a phone vibrates in a user's hands) and platform
     operators like defendants."), *mot. to certify appeal denied*, 2024 WL 1205486 (N.D. Cal. Feb. 2, 2024).

21   The court also held that the social medial platforms are not analogous to tangible property for similarly
     applicable reasons.  *Id.* at *26 ("A social media platform is not like a container.  To that end, plaintiffs

22   have not established as a global matter that defendants' platforms are akin to tangible personal property
     such that they are products.").  The court nevertheless partially denied defendants' motion to dismiss

23   plaintiffs' product liability claims due to its fact-specific assessment of the specific design defects
     plaintiffs had alleged.  *See id.* at *29-34.  This reasoning is both not applicable to this case and

24   fundamentally mistaken for the reasons discussed *infra* Section VI.

25

26   [28] The Louisiana Supreme Court decision in *South Central Bell Telephone Co.* v. *Barthelemy*, 643 So. 2d
     1240 (La. 1994), is distinguishable for similar reasons.  That decision considered whether software used

27   for operating a telephone system constituted "tangible, taxable property" subject to a local sales and use
     tax.  *Id.* at 1241.

28

analogous to the distribution and use of tangible personal property."  Opp. at 94 (alteration in original) (quoting Restatement (Third) of Torts: Products Liability § 19 cmt. a).  But that argument is not supported by the Restatement or the cases Plaintiffs cite.  The Uber App is not akin to any of the types of "intangible personal property," such as "books, maps, and navigational charts" or "electricity and X rays" discussed in these authorities.  Restatement (Third) of Torts:  Products Liability § 19 cmt. d.  The Uber App is not "a tangible medium" like a book, map, or navigational chart, and Plaintiffs do not claim that the Uber App itself caused "personal injury or property damage" akin to the effects of "unexpected drops or surges in voltage."  *Id*.; *see Jane Doe No. 1* v. *Uber Techs.*, *Inc.*, 2020 WL 13801354, at *6 ("The Uber App . . . is not akin to real property and electricity that, in the context of its distribution and use, it is analogous to the use and distribution of tangible personal property.").  Notably, even the Restatement explains, as to claims based on allegedly false information contained in books, maps, and navigational charts, that "the better view is that false information in such documents constitutes a misrepresentation" supporting a negligence claim, not a strict product liability claim.  Restatement (Third) of Torts:  Products Liability § 19 cmt. d.

Plaintiffs also rely on *In re Social Media* to argue that the Uber App is analogous to tangible personal property.  But that case is distinguishable because it involved social media platforms used to "create profiles and to share content including messages, videos, and photos."  2023 WL 752491 at *2.  The Uber App is not a social media platform.  Instead, as relevant to Plaintiffs' claims here, the app was used for the purpose of connecting a rider to an independent driver who, in turn, provided a service.[29]

*Finally*, although Plaintiffs argue that "[p]ublic policy warrants application of strict liability

[29] The court in *In re Social Media*, respectfully, also applied the wrong analysis in considering whether the social media platforms constituted "products."  The court concluded that plaintiffs failed to establish that *the social media platform* itself "is sufficiently analogous to the distribution and use of tangible personal property" as the Restatement instructs.  Restatement (Third) of Torts:  Products Liability § 19(a); *In re Social Media*, 2023 WL 752491 at *25-26.  The analysis should have ended there.  However, despite the fact that the parties did not argue for this approach, *see In re Social Media*, 2023 WL 752491 at *24, the court went on to employ what it described as "The Court's Defect-Specific Approach" and considered whether the "*alleged defects* are analogous to tangible personal property."  *Id.* at *30 (emphasis added).  But the question of whether something constitutes tangible personal property for purposes of imposing strict product liability should not turn on the creative ability of the plaintiffs' bar to allege a defect that happens to be analogous to entirely separate tangible products that are not at issue in the litigation.  *See*, *e.g.*, *id.* at *29-30 (holding that because plaintiffs alleged that social media platforms had "defective parental controls and age verification systems," which are analogous to "parental locks on bottles containing prescription medicines," those alleged defects may be "classified as products").

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS
Case No. 3:23-md-03084-CRB

against Uber," Opp. at 96, the Restatement instructs that courts consider public policy only when the applicable definition of a product "fails to provide an unequivocal answer." Restatement (Third) of Torts: Products Liability § 19 reporter's notes, cmt. a.  Here, as discussed above, and as numerous courts already have held, the Uber App does not fit the definition of a tangible product.  *See*, *e.g.*, *Pierson* v. *Sharp Mem'l Hosp.*, *Inc.*, 216 Cal. App. 3d 340, 345 (Cal. Ct. App. 1989) ("A product is a physical article which results from a manufacturing process and is ultimately delivered to a consumer.").  Therefore, whether public policy does or does not support treating the Uber App as a product subject to strict product liability claims is irrelevant to the Court's analysis.  Plaintiffs do not cite to a single case under California, Illinois, New York, or Texas law that relies on public policy rationale to hold that the Uber App is a "product."  And even if the Court were to consider public policy considerations, Plaintiffs do not identify any policy rationale that would support expanding strict product liability to encompass the claims alleged here involving an intangible item used for the sole purpose of obtaining a service, particularly where Plaintiffs simultaneously assert claims under theories of common law negligence based on the same alleged conduct and injuries.  *See* Compl. ¶¶ 362-67.

### B.   The Uber App Is Used to Obtain a Service

Plaintiffs' strict product liability claims also fail for the independent reason that such claims do not apply where the "predominant purpose" of the transaction at issue is to obtain a commercial service, or where a "product" is "incidental" to the service aspect of the transaction.  Cal. Mot. at 24-25.

#### 1.   California

Plaintiffs acknowledge that the applicable test under California law for determining whether a service provider may be held liable under a theory of strict product liability is whether the "service aspect predominates" the transaction.  Opp. at 100 (quoting *Hernandezcueva* v. *E.F. Brady Co.*, 243 Cal. App. 4th 249, 258 (Cal. Ct. App. 2015)).[30]  Plaintiffs argue, however, that "companies like Uber who occupy dual roles as product suppliers *and* service providers are typically subject to strict products liability." *Id.*

---

[30] Although Plaintiff asserts that "California alone" applies the "predominant purpose" test and suggests that other states do not, in reality, courts throughout the country are consistent in holding that commercially-provided services are not "products" that may be subject to strict product liability claims. *See* Restatement (Third) of Torts:  Products Liability § 19 cmt. f ("Courts are unanimous in refusing to categorize commercially-provided services as products for the purposes of strict products liability in tort." (collecting cases)).

1    For the reasons discussed *supra*, Uber is not a "product supplier" because the Uber App is not a product;

2    it facilitates a service.  But even if Uber did play such a "dual role," that is beside the point.  Plaintiffs do

3    not dispute that Plaintiffs used the Uber App to obtain a service - - a ride.  Indeed, the Complaint repeatedly

4    alleges that the Uber App provides a *service* of connecting riders with drivers.  *See*, *e.g.,* Compl. ¶¶ 13,

5    70, 73, 119, 179, 206, 352, 388, 390-91, 408, 421, 429-30.  Nor do Plaintiffs allege facts establishing that

6    they downloaded or used the Uber App for some purpose other than facilitating rides.  That is why the

7    JCCP court held that similar allegations do not support a strict product liability claim.  *JCCP Demurrer*

8    *Order* at 18 ("[A] customer's primary objective when downloading and using the Uber App is to request

9    a ride in a car and get paired with a driver who is dispatched to pick up and drive the customer to their

10   destination in exchange for a fee.  Customers do not purchase the App, nor is it in any meaningful sense

11   the object of their transaction with Uber, but merely the mechanism by which that object-securing a ride

12   to their destination-is accomplished. . . .   The Uber App is incidental to the transportation service

13   provided." (internal citation omitted)).

14          That is also why the cases Plaintiffs rely on are distinguishable.  In *Hernandezcueva*, the question

15   was whether a subcontractor, which provided a service of supplying and installing an allegedly defective

16   product (asbestos-containing drywall and joint compound) could be subject to strict product liability

17   claims arising out of a janitor's mesothelioma allegedly resulting from exposure to the products.  243 Cal.

18   App. 4th at 261-62.  That case did not turn on whether provision of a service predominated the transaction,

19   but instead on whether the contractor could be considered to be "in the stream of commerce" given its role

20   in procuring and installing the building materials.  243 Cal. App. 4th at 257-58, 265 (citation omitted).

21          The decision in *Green* v. *ADT*, *LLC*, 2016 WL 3208483 (N.D. Cal. June 10, 2016), is similarly

22   distinguishable.  In that case, plaintiff alleged that a manufacturing defect in her home security system

23   that was "designed, manufactured, distributed, installed, maintained, and operated" by defendant, failed

24   due to a "disconnected wire in the control box," resulting in the alarm system falsely detecting an intruder

25   in plaintiff's home, and setting off a false alarm signal.  *Id.* at *1 (alteration omitted).  The court held that

26   because "the alarm system components - - *e.g.,* the control box and motion detectors - - are physical

27   articles that result from a manufacturing process and were delivered to plaintiff," they may "serve as a

28   basis for a products liability claim."  *Id.* at *3.  Here, Plaintiffs do not allege any manufacturing defect in

a tangible "physical article" such as the control box of a home security system.  *See* Opp. at 105-06.[31]

### 2. Texas

Defendants have not identified any decision from a Texas court considering whether transportation services facilitated via the Uber App constitute a "product", or specifying what test would apply to such a claim.  However, as Plaintiffs acknowledge, Texas follows the Restatement (Third) of Torts:  Products Liability, *see* Opp. at 94 n. 60; *Cimino* v. *Raymark Indus.*, *Inc.*, 151 F.3d 297, 334 (5th Cir. 1998), which makes clear that "[s]ervices, even when provided commercially, are not products."  Restatement (Third) of Torts: Products Liability § 19(b); *id.* cmt. f ("[I]t is irrelevant that the service provided relates directly to products commercially distributed.").

The cases cited by Plaintiffs are inapposite.  In *New Texas Auto Auction Servs.*, *L.P.* v. *Gomez De Hernandez*, 249 S.W.3d 400, 405-06 (Tex. 2008), the court considered whether an auctioneer was a "seller" of a car that was the subject of a strict product liability claim.  In *Estate of Alex ex rel. Coker* v. *T-Mobile US*, *Inc.*, 313 F. Supp. 3d 723, 732 (N.D. Tex. 2018), although the court denied a motion to dismiss product liability claims against a wireless provider based on allegations that software installed on

---

[31] The other cases on which Plaintiffs rely are inapposite. In *Lemmon* v. *Snap*, *Inc.* (*Lemmon I*), 995 F.3d 1085, 1087-89 (9th Cir. 2021), teenage boys were involved in a fatal car accident after one accelerated the car over 100 mph in order to post a photo with a current speed overlay on Snapchat. The district court granted defendants' motion to dismiss based entirely on the Communications Decency Act ("CDA") (not at issue here), finding that defendants were immune from suit. *Id.* at 1095. On appeal, the 9th Circuit reversed on that issue alone. *Id.* The court there did not address whether Snapchat was a product, and the issue does not appear to have been raised by defendants in that case. In *Hardin* v. *PDX*, *Inc.*, 227 Cal. App. 4th 159, 161-63, 170 (Cal. Ct. App. 2014), defendants designed and distributed a program to pharmaceutical dispensers that would allow the dispenser to find a pharmaceutical in the database and print out the necessary information and warning material for the patient. Due to a known error in the software, certain warnings and information were omitted from the printouts and as a result plaintiff allegedly took medicine that caused her to go blind. *Id.* The court's decision in that case also turned on an analysis of the CDA and anti-SLAPP laws. *Id.* at 170-71. The court did not find that the software at issue was a "product." The trial court decision in *Guerrero* v. *Lyft*, *Inc.*, 2023 WL 9228975, at *4 (Cal. Super. Ct. L.A. Cnty. May 25, 2023), permitting strict liability claims against Lyft is wrongly decided and was based in part on its determination that Lyft "proffers no citable authority that holds a software application and/or program is not a product . . . under product liability principles." *Id.* at *5. Here, however, Uber has cited to dozens of cases holding that the Uber App, and similar apps, are not products, and demonstrating that the *Guerrero* decision is contrary to the overwhelming weight of authority. The *Guerrero* decision is also internally inconsistent. Although the court recognizes that "the doctrine of strict liability is ordinarily inapplicable to transactions whose primary objective is obtaining services," *id.* at *4, it nevertheless holds that even assuming Lyft "provides only services," it may be held liable "under a product liability theory," *id.* at *5. The court cites no authority supporting this irreconcilable holding.

---

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

the mobile device was defective, the court's decision contains no analysis of whether the software is a "product."

### 3. Florida

Plaintiffs assert that "Florida's use of the 'predominant purpose' test is limited to professional services, specifically in healthcare." Opp. at 102. But Plaintiffs do not cite any case holding that the predominant purpose test in Florida is so limited. To the contrary, in *Baxter-Armentrout* v. *Lyft, Inc.*, the trial court granted a motion to dismiss product liability claims against Lyft - - which, like Uber, is a TNC operator - - on the grounds that "the 'predominant purpose' of the Lyft App is to facilitate a service - - connecting riders with drivers." No. 50-2021-CA-013917-XXXX-MB (Fla. Cir. Aug. 29, 2022), at 7; *id.* at 9 ("[T]he controlling 'predominant purpose' test is identical under both California and Florida law."). Plaintiffs do not address this clearly applicable holding. Other courts applying Florida law have similarly explained that, as a general matter, "a strict products liability claim applies to sellers of products, rather than services." *Lalonde* v. *Royal Caribbean Cruises, Ltd.*, 2019 WL 144129, at *2 (S.D. Fla. Jan. 9, 2019) (dismissing product liability claim for alleged injuries plaintiff incurred while using an amusement attraction on a cruise ship where cruise operator's role was limited to "selling a *service* package to Plaintiff" to use the attraction) (emphasis added).

Plaintiffs' argument that the predominant purpose test is satisfied here because Uber "provided services" and designed the Uber App also is not supported by the law. Opp. at 102. Regardless of whether or not Uber designed the app, since the "predominant purpose" of the app is to provide and facilitate a service, and the app itself is merely "incidental" to that service, Plaintiffs' strict product liability claims fail. As the court explained in *Baxter*, "even where a product is involved, if the defendant's 'predominant purpose' is to provide a service and the product is merely 'incidental' to that service, no products liability claim will lie." No. 50-2021-CA-013917-XXXX-MB at 4 (citing cases).

Relying on the trial court decision in *Brookes v. Lyft, Inc.*, 2022 WL 19799628 (Fla. Cir. Ct. Sept. 30, 2022), Plaintiffs argue that "the true test in Florida depends on the public policy factors underlying the doctrine of strict liability." Opp. at 103. But *Brookes*, respectfully, was wrongly decided, and *Baxter*

1   is better-reasoned and more consistent with applicable law.[32]  Although the court in *Brookes* recognizes

2   that the Lyft App facilitates transportation "services," it nonetheless concludes, contrary to Florida law,

3   that it may be the subject of strict product liability claims.  *Id.* at *1 ("The Lyft application is a technology

4   platform that connects drivers with paying customers *seeking transportation services*." (emphasis added));

5   *id.* at *2 (stating that the Lyft application is used "to provide a service").

6          However, as discussed above, other courts applying Florida law, as well as learned treatises, have

7   explained that strict product liability claims do not apply to services transactions.  *See* Restatement (Third)

8   of Torts:  Products Liability § 19 cmt. f ("Services, even when provided commercially, are not products

9   for purposes of this Restatement."); 41A Fla. Jur. 2d Products Liability § 20 (same).  Although the *Brookes*

10  court recognizes that, under the Restatement (Third) of Torts, "strict liability does not extend to

11  professionally provided services" and purported to apply the Restatement, *Brookes*, 2022 WL 19799628,

12  at *5, the court made the same mistake as Plaintiffs here in concluding that because Lyft designs and

13  distributes the Lyft App, the rule against imposing strict products liability does not apply.  But the

14  Restatement makes clear that services may not be subject to product liability claims, even where  "the

15  service provided relates directly to products commercially distributed."  Restatement (Third) of Torts:

16  Products Liability § 19 cmt. f; 41A Fla. Jur. 2d Products Liability § 20 (strict product liability will not be

17  imposed in connection with services merely because the "services could not have been rendered without

18  using the product.").  The *Brookes* court's reliance on a "public policy rationale," 2022 WL 19799628, at

19  *2, also is inconsistent with the Restatement's guidance that courts only consider public policy when the

20  applicable definition of a product "fails to provide an unequivocal answer."  Restatement (Third) of Torts:

21  Products Liability § 19 cmt. a.  Here, the Uber App, like the Lyft App (as the *Brookes* court recognizes),

22  is used to facilitate a service.[33]

23

24  [32] Although the decision in *Baxter* dismissing product liability claims related to the Lyft App was issued
    from the same court just a month earlier, the court in *Brookes* apparently was not aware of that precedent.

25  *Brookes*, 2022 WL 19799628, at *2 (stating that "[t]here is no Florida precedent that has directly addressed
    th[e] question" of "whether the Lyft application is a product or a service for purposes of product liability

26  law . . . .").

27  [33] In any event, the court in *Brookes* also stated that its holding was limited to the facts of "[that] particular
    case," which involved allegations that the defendant driver, while driving a vehicle leased from Lyft and

28  distracted using the Lyft App, struck plaintiff causing injuries.  *Brookes*, 2022 WL 19799628, at *1.

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

4.      Illinois

Defendants have not identified any decision from an Illinois court considering whether transportation services facilitated via the Uber App constitute a "product" subject to strict product liability claims, or specifying what test would apply to such a claim.  However, as Plaintiffs acknowledge, courts in Illinois treat the Restatement (Third) of Torts:  Products Liability as instructive.  *See* Opp. at 94 n. 60 (citing *Mikojczyk* v. *Ford Motor Co.*, 901 N.E.2d 329, 352 (Ill. 2008)).  The Restatement, in turn, makes clear that "[s]ervices, even when provided commercially, are not products."  Restatement (Third) of Torts: Products Liability § 19 cmt. f; *id.* ("[I]t is irrelevant that the service provided relates directly to products commercially distributed.").  Under these principles, Plaintiffs' product liability claims fail.

Relying on the decision in *Paulsen* v. *Abbott Labs.*, 2017 WL 11886538 (N.D. Ill. Mar. 15, 2017), Plaintiffs urge this Court to ignore these principles, and instead turn to supposed public policy.  Opp. at 103.  But *Paulsen* is irrelevant.  The court in *Paulsen* considered public policy only for purposes of determining "whether a party falls within the original producing and marketing chain of a defective product," not whether a transaction for purposes of obtaining a service may give rise to strict product liability claims.  2017 WL 11886538, at *3 (quoting *Ellis* v. *Hansen & Adkins Auto Transp.*, 2009 WL 4673933, at *5 (S.D. Ill. Dec. 4, 2009)).

5.      New York

Courts applying New York law similarly decline to subject transactions to strict product liability claims where, as here, the service aspect of the transaction predominates.  *See*, *e.g., Levine* v. *Sears Roebuck & Co.*, 200 F. Supp. 2d 180, 192 (E.D.N.Y. 2002).  Plaintiffs' attempt to distinguish *Levine* does not work.  That case involved product liability claims asserted against the vendor and repairer of a dishwasher by a plaintiff who was injured tripping over the broken dishwasher door.  Plaintiffs argue that, "In *Levine*, the plaintiffs did not deny that the subject product was 'designed and manufactured by a different company.'"  Opp. at 103.  But Plaintiffs focus on the wrong part of the court's opinion:  the part dealing solely with the claim against defendant as designer and manufacturer of the dishwasher.  Later in the opinion, the court addressed plaintiff's argument that it may assert a claim against defendant in its "dual role as seller and servicer," which is the same theory Plaintiffs assert here.  *Levine*, 200 F. Supp. 2d at 191-93; *see* Opp. at 93 (referencing Uber's "dual role as product supplier and service provider").  In

-55-

1   dismissing *that* claim, the court made clear that, under New York law, a hybrid product-service transaction

2   may support a strict product liability claim "only when the sale aspect of the transaction predominates and

3   the service aspect is merely incidental." *Levine*, 200 F. Supp. 2d at 192.[34] Here, where the service aspect

4   of Plaintiffs' transactions with Uber clearly predominates, Plaintiffs' product liability claims fail.

5   **C.      The TNC Statutes Confirm that the Uber App's Purpose Is to Facilitate a Service**

6   The conclusion that the Uber App is used to facilitate a service is confirmed by the state TNC

7   statutes. *See* Mots. at 23. Plaintiffs' Opposition misconstrues Uber's argument on this issue to be that

8   "TNC statutes prohibit classification of the Uber App as a product." Opp. at 96. That is a strawman. The

9   point is, by expressly defining TNCs as entities that "provide[] prearranged transportation services for

10  compensation using an online-enabled application or platform to connect passengers with drivers using a

11  personal vehicle," Cal. Pub. Util. Code § 5431(c); *see also e.g., id.* §§ 5440(a), 5440(c), 5440(d), the

12  California legislature, for example, recognized that the predominant purpose of the Uber App is to

13  facilitate a service, not to sell a tangible product. The other state legislatures recognize this function of

14  TNCs as well. *See*, *e.g.,* Tex. Occ. Code. §§ 2402.113; 2402.115; 2402.153; N.Y. Veh. & Traf. L. §§

15  1691-1700 (referring to "Transportation Network Company *Services*." (emphasis added)); *id.* at §

16  1691(4)(a) ("'Transportation network company driver' or 'TNC driver' means an individual who: receives

17  connections to potential passengers and related *services* . . . ." (emphasis added)); 625 Ill. Comp. Stat.

18  Ann. 57/25 (defining a TNC as "an entity operating in this State that uses a digital network or software

19  application *service* to connect passengers to transportation network company *services* provided by

20  transportation network company drivers" (emphasis added)); Fla. Stat. § 627.748(g)(1) (defining a

21  "'Transportation network company driver' or 'TNC driver' as one who 'Receives connections to potential

22  riders and related services from a transportation network company'" (emphasis added)).

23  **D.      Plaintiffs Have Failed to Identify A Defect**

24  Rather than identify any alleged design defects in the Uber App, Plaintiffs' Opposition merely

25  ─────────────

26  [34] Plaintiffs also attempt to distinguish *Detwiler* v. *Bristol-Myers Squibb Co.*, but that decision merely
    shows that New York courts apply an analogous rule to claims against physicians involving the

27  administration of medical products and services. 884 F. Supp. 117, 121 (S.D.N.Y. 1995) ("New York
    courts appear to have developed a rule that a physician cannot be liable in strict products liability for a

28  defective product he administers when his provision of the product is incidental to the medical services.").

cites to various paragraphs in the Complaint, none of which specify defects in the Uber App itself. In particular, Plaintiffs cite to paragraphs 487 and 488 of the Complaint, which allege that Uber's actions (or inaction) are at fault, not the design of the software itself: *e.g.,* Uber should have adopted additional technology that would allow video and/or audio monitoring of rides, use GPS data to more closely monitor rides and alert law enforcement to route deviations, and "obtain biometric data from a driver's mobile phone." Those same allegations are the basis of Plaintiffs' various negligence claims, as they relate to the conduct and policies of the company, not defects in the intended design or performance of the Uber App. *See, e.g.,* Compl. ¶ 365 (alleging in support of Plaintiffs' negligence claim that Uber "did not verify driver identities with biometric background checks," "invest in continuous monitoring of its drivers," implement "video monitoring" during rides, or "provide alerts to law enforcement" using GPS data). Plaintiffs may try to claim that Uber failed to "design away" pervasive societal problems as a breach of duty, but that is not a product liability claim.

In *Brooks* v. *Eugene Burger Management Corp.*, 215 Cal. App. 3d 1611 (Cal. Ct. App. 1989), the California Court of Appeal rejected a theory of product liability akin to Plaintiffs' theory here. There, the plaintiff tried to convert a negligence theory into one for strict product liability even though there was no allegation of a defect in a product. The court declined to recognize the plaintiff's product liability claim, in part, because the plaintiff "merely designate[d] his fourth cause of action 'Products Liability' but found[ed] his argument in support thereof upon the theory of 'Premises Liability,'" which the plaintiff separately alleged, just as Plaintiffs here separately allege negligence. *Id.* at 1627. In *Brooks*, the failure of the defendant to install fencing around a "complex of apartment dwellings, playground equipment and grounds" was not a cognizable product liability claim. *Id.* Repackaging and relabeling a negligence claim as product liability does not suffice to state a product liability claim.

For similar reasons, Plaintiffs also fail to plausibly allege a failure to warn. Absent a defect in the design of the Uber App itself, Uber had no obligation to warn of any such defect, or of its inability to "design away" sexual misconduct.

### E.  Plaintiffs Fail to Allege Causation As To Any Individual Plaintiff

Plaintiffs do not dispute that their strict product liability claims require them to establish but-for causation. Nor do Plaintiffs dispute that the Complaint fails to allege causation as to any individual

Plaintiff.  Instead, Plaintiffs again argue that because their claims have been consolidated into an MDL, no individual plaintiff has an obligation to plausibly allege causation at the pleading stage.  Opp. at 106.  Plaintiffs cite no law supporting this argument.  As discussed, *supra* Section III.A., the procedural mechanism of an MDL does not relieve Plaintiffs of their obligation to meet the pleading requirements for each of their claims.

Plaintiffs attempt to argue that they have met their pleading obligation because "the Master Complaint's extensive allegations of the design and (lack of) warnings of the Uber App make it plausible that safety features and warnings would have made a difference in many individual cases."  Opp. at 106.  The standard for pleading causation is not plausibility, but individualized facts specific to the circumstances of each alleged incident.  Setting aside that Plaintiffs fail to specify which of the "extensive allegations" support such a conclusion, nowhere does any Plaintiff allege which alternative design would have prevented which alleged injury to which Plaintiff.  The Complaint alleges that the Uber App failed to "utilize its existing GPS, alert, and predictive technology to implement a feature whereby safety alerts are triggered in the event of route deviations or excessive time spent with a passenger at the beginning or end of a route."  Compl. ¶ 487(b).  Yet, Plaintiffs do not allege, nor could they plausibly allege, that the absence of such "predictive technology" was the but-for cause of each plaintiff's alleged incident, or that the presence of such technology would have prevented each driver's conduct.

Despite having had multiple opportunities to plead specific facts establishing causation as to each individual Plaintiff, including in their individual complaints that were consolidated into the MDL, in the Master Long-Form Complaint, and in the SFCs, Plaintiffs have failed to identify any such allegations.  Indeed, as discussed above, the Court specifically ordered Plaintiffs to complete SFCs to plead Plaintiff-specific factual allegations to support their individual claims.  PTO 11 at 2, ECF 349.  Consistent with that order, the SFC was the procedure by which each Plaintiff should have provided any "additional factual allegations not set forth in *Plaintiffs' Master Long-Form Complaint*."  *See* PTO 11, Ex. A at 5 (emphasis added).  Yet, despite each having this opportunity, no plaintiff included in their SFC individualized facts supporting causation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE UCL

### A.   Plaintiffs Cannot Assert UCL Claims Based On Injuries That Occurred Outside California

Plaintiffs who do not reside in California, and who claim to have been assaulted outside of California, nevertheless seek relief under the California UCL.  But, as demonstrated in Uber's Motions, there is a longstanding "presumption against extraterritoriality" that attaches to the UCL.  *Sullivan* v. *Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *see* Motions at 26.   Plaintiffs do not dispute this point. Instead, Plaintiffs argue that "Uber's actions" in connection with designing the App, developing policies related to the selection and screening of drivers, and advertising, "were coordinated at, emanate from and are developed at its California headquarters."  Opp. at 109-10 (quoting *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *7 (N.D. Cal. July 13, 2013)).  But Plaintiffs cite several paragraphs in the Complaint, which Plaintiffs misleadingly assert allege that "Uber's business model and policies were designed by California-based leadership" and discuss purported representations that "by definition are approved by corporate decision-makers in California."  *Id.* at 110 (citing Compl. ¶¶ 142-56, 196-99, 218-23). None of these assertions regarding conduct purportedly centered in California appear in any of the paragraphs cited by Plaintiffs, or anywhere else in the Complaint.  Indeed, Plaintiffs' Complaint barely mentions "California-based" leadership or headquarters at all.

As Plaintiffs' Complaint and documents incorporated by reference into the Complaint make clear, Uber has offices and operations all over the country and the globe.  *See, e.g.,* Compl. ¶ 48 (alleging that Uber "pioneered an app-based transportation system that eventually spread through the United States and around the world"); *see also* Uber's Form S-1 Registration Statement 32 (Apr. 11, 2019)[35] ("Since our inception, we have experienced rapid growth in the United States and internationally. . . .   As our operations have expanded, we have grown from 159 employees as of December 31, 2012 to 22,263 global employees as of December 31, 2018, of whom 11,488 were located outside the United States.") (cited at Compl. ¶ 13 n.8).  By necessity, Uber has offices and employees in numerous states and localities because Uber is regulated on a state and municipal level.  *See* Order on Defs. and Cross-Complainants Uber Techs.

---

[35] https://www.sec.gov/Archives/edgar/data/1543151/000119312519103850/d647752ds1.htm

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Inc. and Rasier LLC's Mots. to Stay or Dismiss Based on *Forum Non Conveniens* at 10 & n.11, *In re Uber Rideshare Cases*, No. CJC-21-005188 (Cal. Super. Ct. S.F. Cnty. Jan. 23, 2023) (noting that Uber "is regulated by states and localities," "conducts its own business operations on a state or regional basis," has "key corporate [personnel] who are responsible for safety policies and programs [that] reside outside of California," and has "operations and decision-making [that] are spread across multiple offices in a number of different states"). The fact of Uber's national and international operations necessarily conflicts with Plaintiffs' overly simplistic assertion that all of the relevant conduct must have occurred in California simply because that is where Uber is headquartered.

In any event, as this Court has recognized, merely alleging the location of a company's headquarters is "not enough to create a plausible inference that the unlawful conduct emanated from that location." *Gross* v. *Symantec Corp.*, 2012 WL 3116158, at *7 (N.D. Cal. July 31, 2012). That is particularly true here where the alleged injuries of non-California Plaintiffs indisputably occurred outside of California. *Sullivan* is directly on point. In that case, the California Supreme Court certified a question from the Ninth Circuit as to whether the UCL applies to claims by out-of-state plaintiffs against a California-based employer related to alleged failure to pay overtime to misclassified employees in violation of the Fair Labor Standards Act ("FLSA"). 51 Cal. 4th at 1196. The California Supreme Court explained that, even though the employer's decision to adopt an erroneous classification policy may have been made primarily from its headquarters in California, the UCL does not apply to the plaintiffs' claims because "for an employer to adopt an erroneous classification policy is not unlawful in the abstract. What is unlawful, and what creates liability under the FLSA, is the failure to pay overtime when due." *Id.* at 1208 (internal citation omitted). The same logic applies here. There is no allegation that Uber's alleged representations and policies are "unlawful in the abstract." Instead, the non-California Plaintiffs allege injury resulting from assaults by drivers occurring outside the state. The UCL does not apply extraterritorially those clams.[36]

---

[36] The cases cited by Plaintiffs are distinguishable. *See* Opp. at 109-10. None involved alleged injuries from intentional tortious conduct committed by a third party outside California. Moreover, *In re Tobacco II Cases*, 46 Cal. 4th 298 (Cal. 2009), did not address extraterritoriality and, in any event, was decided before the California Supreme Court issued its decision in *Sullivan*. *In re iPhone 4S Consumer Litigation* also did not address *Sullivan*. And *Ehret* v. *Uber Technologies, Inc.*, 68 F. Supp. 3d 1121, 1127 (N.D.

1

### B.   Plaintiffs Have Failed to State a Cause of Action Under the UCL

2   Plaintiffs' Opposition confirms that they cannot state a claim for violation of the UCL under any

3   of the three prongs.

4   *First*, Plaintiffs cannot state a UCL claim for "unlawful" conduct based on alleged violations of

5   "common law duties of care."  Compl. ¶ 507; *see* N.Y. Mot. at 27.  Plaintiffs are wrong that "no case says"

6   that "an 'ordinary' negligence claim standing alone could not support a UCL 'unlawful' claim.  Opp. at

7   107.  California courts have held just that multiple times.  *E.g., Hartless* v. *Clorox Co.*, 2007 WL 3245260,

8   at *5 (S.D. Cal. Nov. 2, 2007) (holding that defendant's contention that "common law negligence . . .

9   cannot serve as a predicate act under the unlawful prong of the UCL" is correct); *Mendez* v. *Selene Fin.*

10  *LP*, 2017 WL 1535085, at *6 (C.D. Cal. Apr. 27, 2017) ("Common law claims such as negligence cannot

11  form the basis of an unlawful prong claim under the UCL."); *Banton* v. *Wells Fargo Bank, N.A.*, 2019 WL

12  6683138, at *4 n.3 (E.D. Cal. Dec. 6, 2019) ("Even if plaintiff was able to proceed on his negligence

13  claim, he would not be able to rely on it as a predicate a UCL claim based on unlawful conduct.").

14  Plaintiffs also assert that *Mendez* cites to a Ninth Circuit decision, which, according to Plaintiffs,

15  "held only that '*breach of contract* is insufficient'" to support a UCL "unlawful" claim.  Opp. at 107

16  (emphasis added) (quoting *Shroyer* v. *New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir.

17  2010)).  That also is not true.  The court in *Shroyer* recognized that this principle applies to alleged

18  violations of common law more generally, holding, "Because [plaintiff] does not go beyond alleging a

19  violation of common law, he fails to state a claim under the unlawful prong of [the UCL]."  *Shroyer*, 622

20  F.3d at 1044.  Plaintiffs have not cited a single case that allowed a UCL "unlawful" claim to proceed under

21  a theory of common law negligence.

22  The case that Plaintiffs cite for the proposition that a breach of contract may be sufficient "if

23  flanked by allegations the conduct is *also* unlawful," is merely a recitation of the requirement that the

24  alleged conduct must actually violate a law - - not support for the position that alleged common law

25  violations standing alone can support a UCL "unlawful" claim.  Opp. at 107 (quoting *Aerojet Rocketdyne*,

26

27  Cal. Sept. 17, 2014), did not involve alleged injuries committed by third parties outside California, but
    instead, allegations that Uber advertised a gratuity fee as "automatically added for the driver" but "ke[pt]

28  a substantial portion" for itself.

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS
Case No. 3:23-md-03084-CRB

*Inc.* v. *Glob. Aerospace, Inc.*, 2020 WL 3893395, at *7 (E.D. Cal. July 10, 2020)).  Indeed, the court in *Aerojet* also recognized the general rule that "a breach of contract claim alone is an insufficient predicate for an 'unlawfulness' prong claim." *Aerojet Rocketdyne*, 2020 WL 3893395, at *7.  The other two cases Plaintiffs cite are inapposite.  In *Nazemi* v. *Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856 (C.D. Cal. 2022), the court did not consider whether mere common law violations can support a UCL claim.  In fact, the court dismissed plaintiffs' UCL claims under the lawful prong "[b]ecause Plaintiff ha[d] not adequately alleged any predicate violation of law" at all.  *Id.* at 865.  In *Wagner* v. *National Union Fire Insurance Co. of Pittsburgh*, 2018 WL 6258891, at *3 n.1 (C.D. Cal. Mar. 8, 2018), the court permitted plaintiff's UCL claim based on "common law principles of good faith" to proceed only because the defendant *did not move to dismiss the claim*.[37]  Plaintiffs claim that their allegations include "wanton, reckless conduct" and "violations of higher duties of care," Opp. at 107, but do not identify which allegations do so and, therefore, do not "'state with reasonable particularity the facts supporting the statutory elements' of the alleged violation," as required.  *Stearns* v. *Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1150 (N.D. Cal. 2010) (citation omitted).

*Second*, Plaintiffs do not dispute that claims of "fraudulent" conduct in violation of the UCL are governed by Rule 9(b)'s heightened pleading standard.  Quoting *Nazemi*, Plaintiffs assert that "a UCL claim 'does not require a showing of intent, scienter, actual reliance, or damage.'"  Opp. at 107 (citation omitted).  But the very next sentence in the decision makes clear that "the heightened pleading standard of Rule 9(b) applies" to UCL fraud claims.  *Nazemi*, 637 F. Supp. at 863; *see also Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").  Plaintiffs do not even attempt to explain how their allegations meet the heightened pleading standard required by Rule 9(b) - - because

---

[37] Plaintiffs' selective quotation of the *Wagner* decision is misleading.  Plaintiffs quote only the portion of the decision stating that "Wagner's UCL claim remains intact to the extent it is predicated on the common law duty of good faith."  Opp. at 107.  But the preceding sentence, which Plaintiffs omitted, explains why the claim was permitted to proceed: "National Union's motion fails to address Wagner's UCL claim based on common law principles of good faith.  Accordingly, . . . ."  *Wagner*, 2018 WL 6258891, at *3 n.1.  Further, although the court also permitted plaintiff's UCL claim predicated on common law conversion to proceed, the defendant did not argue for dismissal of that claim on the basis that UCL claims cannot be predicated on mere common law violations either.  *Id.* at *5-6.

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

1   they do not, the UCL fraud claim must be dismissed. [38]

2         *Finally*, as to "unfairness," when the conduct alleged to give rise to a claim "under the unfair prong

3   overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL, the unfair

4   prong of the UCL cannot survive if the claims under the other two prongs do not survive." *Hammerling*

5   v. *Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022) (cleaned up) (citation omitted); *Eidmann* v.

6   *Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (citation omitted) (same). Just as in *Hammerling*

7   and *Eidmann*, Plaintiffs' claim under the unfair prong overlaps with the conduct alleged in support of the

8   fraudulent and unlawful prongs, which fail for the reasons discussed above. Plaintiffs' "unfairness" prong

9   claim therefore must be dismissed as well.

10        Even if one of the other UCL prongs remains, the Court still should dismiss Plaintiffs' claim under

11   the unfairness prong. Plaintiffs argue that the public policy definition of unfairness set forth by the

12   California Supreme Court in *Cel-Tech*, which requires Plaintiffs' claim to "be tethered to some

13   legislatively declared policy or proof of some actual or threatened impact on competition," does not apply

14   in consumer actions such as this one. *See* Opp. at 108 (first quoting *Cel-Tech Commc'ns, Inc.* v. *L. A.*

15   *Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (Cal. 1999); and then quoting *Lozano* v. *AT & T Wireless Servs.*,

16   *Inc.*, 504 F.3d 718, 735-36 (9th Cir. 2007)). But that is not an accurate statement of California law. In

17   *Cel-Tech*, the California Supreme Court rejected the very same unfairness test definitions that Plaintiffs

18   seek to use here because they "are too amorphous and provide too little guidance to courts and businesses."

19   20 Cal. 4th at 185. Instead, the court held, in the context of UCL competitor cases, any finding of

20   unfairness must be "tethered to some legislatively declared policy or proof of some actual or threatened

21   impact on competition." *Id.* at 186-87. In *Lozano*, the court recognized that California state courts have

22   split with respect to how to define unfairness in UCL consumer cases, and *merely* said that it could not

23

24   [38] Plaintiffs' claims also fail under the alternative tests for unfair conduct. Plaintiffs argue that they "plead

25   that Uber's practices are 'immoral, unethical, oppressive, unscrupulous or substantially injurious to
consumers' as well as that 'the practice's impact on the victim outweighs the reasons, justifications, and

26   motives of the alleged wrongdoer.'" Opp. at 108 (quoting *Nazemi*, 637 F. Supp. 3d at 864). But no such
allegations appear in the Master Complaint. In any event, as in *Hodsdon*, "failure to disclose information

27   [Uber] had no duty to disclose in the first place" is not unfair. 891 F.3d at 867. Plaintiffs allege no more
than a "profit motive" as a reason for Uber's alleged conduct, which the Ninth Circuit has held is not

28   sufficient to establish unfairness. *Doe* v. *CVS Pharmacy, Inc.*, 982 F.3d at 1215.

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

1   hold that the district court, in applying the pre-*Cel-Tech* unfairness definition, had applied the wrong legal

2   standard.  *See* 504 F.3d at 736.  But if any doubt remains that the court did not reject the public policy

3   definition of unfairness as inapplicable to consumer actions, the Ninth Circuit has applied that definition

4   in a consumer action since it decided *Lozano*.  *See Hodsdon* v. *Mars*, *Inc.*, 891 F.3d 857, 867 (9th Cir.

5   2018) (holding that plaintiff's UCL "unfairness" claim failed under either test).

6          Presently, "a split of authority has developed in the [California] Courts of Appeal with regard to

7   the proper test for determining whether a business practice is unfair under the UCL in consumer cases."

8   *Nationwide Biweekly Admin.*, *Inc.* v. *Super. Ct.*, 9 Cal. 5th 279, 303 (Cal. 2020).  The better reasoned

9   approach applies the *Cel-Tech* definition for the same reasons the California Supreme Court provided in

10  the competition context:  the alternative definitions are too vague and amorphous to be workable.  *Cel-*

11  *Tech*, 20 Cal. 4th at 185; *see* 183 Cal. App. 4th 1350, 1365-66 (Cal. Ct. App. 2010); *Gregory* v.

12  *Albertson's*, *Inc.*, 104 Cal. App. 4th 845, 854 (Cal. Ct. App. 2002); *Scripps Clinic* v. *Super. Ct.*, 108 Cal.

13  App. 4th 917, 939-40 (Cal. Ct. App. 2003); *see also Simila* v. *Am. Sterling Bank*, 2010 WL 3988171, at

14  *6 (S.D. Cal. Oct. 12, 2010).  Plaintiffs' attempt to meet this test and to tether their allegations to "some

15  legislatively declared policy," fails.  It is not sufficient to reference the "broad authority" of the California

16  Public Utilities Commission ("CPUC") to regulate TNCs, or other general safety regulations, as Plaintiffs

17  do here.  *See* Opp. at 108-09.  The only specific regulation Plaintiffs identify is Cal. Civ. Code § 2100.

18  *Id.* at 109.  But Section 2100 is merely a restatement of the common carrier standard of care applying to

19  negligence claims and does not specifically prohibit any business practice.  There is not a "close enough

20  nexus" between these "general polic[ies]" and the specific practices alleged in the Master Complaint to

21  support a UCL claim.  *See Hodsdon*, 891 F.3d at 867 (holding that chocolate manufacturer's alleged failure

22  to disclose that its suppliers used forced and child labor failed to support a claim under the UCL unfairness

23  prong).[39]  The decision in *In re Adobe Systems*, *Inc. Privacy Litigation*, 66 F. Supp. 3d 1197 (N.D. Cal.

24  2014), on which Plaintiffs rely, is distinguishable.  There, the court held that defendant's alleged conduct

25  _____

    [39] Plaintiffs' claims also would fail under the alternative tests for unfair conduct.  Plaintiffs argue that they
26  have pleaded that "Uber's practices are 'immoral, unethical, oppressive, unscrupulous or substantially
    injurious to consumers' as well as that 'the practice's impact on the victim outweighs the reasons,
27  justifications, and motives of the alleged wrongdoer.'"  Opp. at 107-08 (quoting *Nazemi*, 637 F. Supp. 3d
    at 864).  But Plaintiffs allege no more than a "profit motive" as a reason for Uber's alleged conduct, which
28  is not sufficient.  *Doe* v. *CVS Pharmacy*, *Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020).

                                                  -64-

1   resulting in a data breach was sufficiently tethered to public policy reflected in several statutes dealing

2   specifically with protection of customer data.  *Id.* at 1227.  Plaintiffs have cited no such statutes here.

3   **VIII.   PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF**

4          Plaintiffs say they are seeking "injunctive relief to change Uber's policies regarding driver

5   screening, sexual assault prevention, and sexual assault response in order to improve their safety in future

6   Uber rides."  Opp. at 110.  But courts are not legislatures or regulators that can freely dictate standards of

7   corporate conduct.  Companies may be enjoined from disseminating false advertisements or violating

8   specific statutory or regulatory provisions.  It is not, however, for a court to promulgate public policies for

9   the operation of ride-sharing platforms.  *See*, *e.g., Anderson* v. *United States*, 612 F.2d 1112, 1114-15 (9th

10  Cir. 1979) (explaining that mandatory injunctions go "well beyond simply maintaining the status quo,"

11  are "particularly disfavored," and that "generally an injunction will not lie except in prohibitory form").

12  Apart from that, Plaintiffs have failed to satisfy the standards for injunctive relief.  As demonstrated in the

13  Motions, the Complaint is devoid of *any* allegation that Plaintiffs lack an adequate remedy at law.  *See*

14  *e.g.,* Cal. Mot. at 28.  Plaintiffs' Opposition does not identify any such allegation.

15         Plaintiffs also cannot plead that any individual plaintiff faces an "actual and imminent" or

16  "immediate" threat of being subjected to future misconduct by an independent driver as required to

17  establish entitlement to seek injunctive relief.  Cal. Mot. at 28-29; *see Doe* v. *Match.com*, 789 F. Supp. 2d

18  1197, 1199 (C.D. Cal. 2011).  Plaintiffs attempt to rely on *Davidson* v. *Kimberly-Clark Corp.*, 889 F.3d

19  956 (9th Cir. 2018), as their basis for standing to seek injunctive relief, but that reliance is misplaced.  The

20  claims in *Davidson* and its progeny relate to the false advertising of products, and the alleged harm was

21  the consumer's inability to rely on the advertising with respect to the product when purchasing it in the

22  future.  *Id.* at 971-72.  The injunctive relief sought in *Davidson* - - an injunction prohibiting the false

23  advertising of flushable wipes - - was tailored to that specific harm.

24         The reasoning in *Davidson* does not apply here.  Davidson's allegations that she desired to

25  purchase the wipes in the future but was unable to rely on the wipes' advertisements as flushable, and thus

26  was deprived of purchasing the product, gave her standing to enjoin the false advertising alleged in that

27  case.  *Id.*  Plaintiffs did not seek an injunction to compel the defendant to manufacture wipes in a particular

28  way, or to change the way the wipes were made.  The injunction sought was to enjoin the defendants from

-65-

making false statements about its products.  *Id.* at 972.  Here, Plaintiffs purport to seek an injunction to "ensure sexual assault in Uber vehicles is foreclosed to the greatest extent possible." Compl. ¶ 35.  Again, that is not the role of a court.  Moreover, in this case, Plaintiffs have not alleged "a sufficient likelihood that [they] will again be wronged in a similar way."  *See Davidson*, 889 F.3d at 971 (quoting *City of Los Angeles* v. *Lyons*, 461 U.S. 95, 111 (1983)).

Even assuming that *Davidson*'s reasoning could apply here, Plaintiffs' allegations fall far short of showing that any injury is "*certainly impending*."  *Id.* at 967 (citation omitted).  Plaintiffs vaguely allege that they "reasonably expect to be able to use Uber's product in the future" and that some "third parties, such as medical benefit payors, utilize Uber's product to transport clients to medical or rehabilitation appointments," Compl. ¶¶ 352, 355. Plaintiffs do not allege *any* facts about when or where any purported future Uber rides will occur.  The most Plaintiffs can allege is that it is "plausible" that they "will seek to use Uber's product in the future." *Id*. ¶ 350.  But "[s]uch 'some day' intentions - - without any description of concrete plans, or indeed even any specification of *when* the some day will be - - do not support a finding of [an] 'actual or imminent' injury."  *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 564 (1992).

The Supreme Court's decisions in *Lyons* and its progeny confirm that Plaintiffs have failed to allege "a real and immediate threat" that *they* will be subjected to the same alleged harm in the future. 461 U.S. at 105, 110; *see also Charleston* v. *Nevada*, 830 F. App'x 948, 948-49 (9th Cir. 2020) (plaintiffs must show "that *they*, not [similarly situated individuals], are at risk of 'actual and imminent' harm"). Plaintiffs argue that "sexual assault is a well-accepted part of Uber's business model." Opp. at 113.  But that allegation (which is false) is the exact type of allegation that has been repeatedly held to be insufficient.[40]  *See Lyons*, 461 U.S. at 105-06; *K.S.* v. *Sch. Dist. of Phila.*, 2006 WL 314535, at *3 (E.D. Pa. Feb. 6, 2006).

*Lyons* involved a plaintiff who was allegedly subjected to an unprovoked chokehold after a stop for a traffic violation, and who sought an injunction to prevent the harm of future chokeholds.  461 U.S.

---

[40] Plaintiffs cite to *Armstrong* v. *Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001), for the proposition that the existence of a "written policy" or routine practice by the defendant establishes that an injury is likely to recur.  Opp. at 113.  But courts have distinguished *Armstrong* in cases where, as here, "individuals could not show that they *personally* would be subject to the illegal conduct again."  *Freeman* v. *ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 927-29 (N.D. Cal. 2012).

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

Case No. 3:23-md-03084-CRB

1  at 97-98. Although the plaintiff alleged that "the police in Los Angeles routinely apply chokeholds in

2  situations where they are not threatened by the use of deadly force," the Supreme Court held that the

3  plaintiff nonetheless failed to establish "a real and immediate threat" that the plaintiff himself would be

4  subjected to the same alleged harm in the future.  *Id.* at 105, 110.  To establish standing, the Court

5  explained, the plaintiff needed to allege not only "that he would have another encounter with the police,"

6  but also "(1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to

7  have an encounter" or "(2) that the City ordered or authorized police officers to act in such manner." *Id.*

8  at 105-106.  Plaintiffs do not allege that all drivers using the Uber App always sexually assault their

9  passengers.  *See Lyons*, 461 U.S. at 106.  That is no surprise, because any such assertion is belied by data,

10  incorporated by reference into the Complaint, reporting that the most serious safety incidents are the rarest

11  of exceptions:  occurring in less than 0.0003% of rides arranged via the Uber App.  *See* Compl. ¶ 273

12  (discussing number of reports published in 2017-18 U.S. Safety Report); Safety Report at 10; *see also*

13  *Payne* v. *Off. of the Comm'r of Baseball*, 705 F. App'x 654, 655 (9th Cir. 2017) (holding that risk of being

14  hit by a foul ball at a baseball game did not entitle plaintiff to an injunction because the "chance of being

15  hit by a foul ball in her chosen sections is roughly 0.0027% per game").  Nor do Plaintiffs allege that Uber

16  "ordered or authorized" the drivers to assault them.  *See Lyons*, 461 U.S. at 106.[41]

17  At most, Plaintiffs argue that "they 'realistically' will ride in Uber . . . and will encounter drivers

18  who are poorly screened and set out to drive without sufficient protections against sexual assault."  Opp.

19  at 114.  But *Lyons* makes clear that the mere allegation of another "encounter" is insufficient to establish

20  "a real and immediate threat" of similar future harm.  461 U.S. at 105-06.  Courts applying *Lyons* have

21  reached the same conclusion in analogous contexts.  For instance, in *K.S.* v. *School District of*

22  *Philadelphia*, a plaintiff sued the Pennsylvania Department of Education after her daughter was sexually

23  assaulted by a classmate at school and sought to enjoin the Department from implementing some of its

24  policies and procedures. 2006 WL 314535, at *1.  The plaintiff alleged that the Department had "policies,

[41] In the same vein, Plaintiffs also have failed to allege "a standard pattern of officially sanctioned . . . behavior."  *LaDuke* v. *Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985), *amended*, 796 F.2d 309 (9th Cir. 1986); *see also Doe* v. *Hagee*, 473 F. Supp. 2d 989, 997 (N.D. Cal. 2007).  Instead, Plaintiffs' allegations turn entirely on the "repetition of random or unauthorized acts of a third party."  *Gordon* v. *City of Moreno Valley*, 687 F. Supp. 2d 930, 938 (C.D. Cal. 2009) (citation omitted).

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS
Case No. 3:23-md-03084-CRB

procedures, and customs that created the opportunity" for the sexual assault and that the school district had a "history of rampant violence." *Id*. at *1, *3. The district court found the case "analytically indistinguishable from *Lyons*" since the plaintiff had not shown that her daughter was "likely to suffer another sexual assault at school as a result of [the Department's] policy." *Id*. at *3. Because the plaintiff did not allege that "*all* situations of students walking throughout the halls resulted in sexual or physical wrongdoing, or that the Commonwealth authorized such behavior," the court dismissed the claim for lack of standing. *Id*. Other decisions are in accord.[42]

Plaintiffs' attempts to distinguish *Lyons* fail. Their assertion that in *Lyons* "a premise of the claim was that the plaintiff would engage in future criminal conduct," Opp. at 113, is not based on anything actually stated in the Court's opinion, and makes little sense - - not every person who is subjected to the use of force by police is engaged in "criminal conduct." Plaintiffs also attempt to narrow *Lyons* to its procedural posture and construe the question of standing as a factual one that must be deferred until later in the litigation. *See id*. But courts applying *Lyons* often apply it at the motion to dismiss stage when assessing whether there is standing to pursue injunctive relief. *See, e.g., Charleston*, 830 F. App'x at 948-49; *Freeman*, 877 F. Supp. 2d at 926-29; *K.S.*, 2006 WL 314535, at *1-3; *D.T.*, 1998 WL 36030588, at *2. In any event, Plaintiffs do not identify what facts alleged in the Complaint would, if proven, put the Court or the parties in a better position to predict the future. Plaintiffs' allegations of future harm depends on the possibilities that (1) Plaintiffs *will* utilize the Uber App to request a ride from an independent driver, and (2) Plaintiffs *will* be paired with an independent driver who decides to commit a sexual assault. Plaintiffs do not allege either. This is precisely the type of contingent theory of speculative future harm that courts find too remote to support standing to seek injunctive relief. *See Payne*, 705 F. App'x at 655; *Doe* v. *Match.com*, 789 F. Supp. 2d 1197, 1201 (C.D. Cal. 2011) ("Plaintiff's claim relies upon a chain of

---

[42] *See, e.g., D.T.* v. *State Bd. of Educ.*, 1998 WL 36030588, at *2 (D.N.M. July 13, 1998) ("While it is unfortunate that sexual abuse may have occurred in the past, the facts alleged do not show that the Plaintiffs are currently in danger, or that abuse is likely to occur in the future."); *Charleston*, 830 F. App'x at 948-49 ("survivors of sex-trafficking and coerced prostitution in Nevada" lacked standing under *Lyons* for injunction to prohibit implementation of laws that legalize and regulate brothels even though the survivors argued that they "suffer exponentially higher risk of revictimization" because they did not show "that *they*, not survivors of trafficking generally, are at risk of 'actual and imminent' harm"); *Freeman*, 877 F. Supp. 2d at 927-29.

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS

1  speculative contingencies - - she must first utilize Defendant's services, choose to communicate with

2  another known sex offender out of the millions of available users, go on a date with the user, and be

3  sexually assaulted."); *Freeman*, 877 F. Supp. 2d at 928 ("[A]s currently alleged, whether [Plaintiffs] are

4  subject to ABC's purportedly unlawful conduct in the future depends largely on undefined contingencies.

5  . . . Even if defendants' practices are routine, the Court cannot conclude based on the current allegations

6  that any predicted future harm is more than speculative.") (citing *Hodgers-Durgin* v. *de la Vina*, 199 F.3d

7  1037, 1044 (9th Cir. 1999)).[43]

8  **IX.   PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO SUPPORT AN**
9  **AWARD OF PUNITIVE DAMAGES**

10         In support of their request for punitive damages, Plaintiffs rely on the same allegations supporting

11  their negligence claims.  *See* Opp. at 115 (referencing allegations that Uber failed to "implement measures

12  to thoroughly vet its drivers before and after hiring" and "forego reasonable safety precautions," despite

13  alleged "aware[ness] of widespread sexual misconduct on its platform).  Plaintiffs' Opposition therefore

14  confirms that they have failed to plead facts sufficient to demonstrate that Uber acted in a fraudulent or

15  malicious manner that would support an award of punitive damages.[44]  For the reasons discussed *supra*

16  Section III, Plaintiffs' fraud-related claims fail and therefore cannot support an award of punitive damages.

17  Plaintiffs' claims of malice also fail.

18         **A.   California**

19         Under California law, malice requires Plaintiffs to plead sufficient facts to show "conduct which

20  is intended by the defendant to cause injury to the plaintiff" or "willful and conscious disregard of the

21  rights and safety of others."  *Smith* v. *Superior Ct.*, 10 Cal. App. 4th 1033, 1041 (Cal. Ct. App. 1992).

22  Here, Plaintiffs have not plausibly alleged any facts demonstrating that Uber *intended* to cause Plaintiffs'

23  to be assaulted, or that Uber *willfully* or *consciously* disregarded the rights and safety of others.

---

[43] As to Plaintiffs' assertion that their alleged harm is "far more significant and actual than the inability to buy one particular brand of flushable wipes," Opp. at 113, courts have explained that the alleged severity of future harm does not suggest greater likelihood of harm for standing purposes. *See Lee* v. *Oregon*, 107 F.3d 1382, 1389-90 (9th Cir. 1997) ("Just because the asserted injury is the threat of death does not mean that the plaintiff is relieved from the requirement of asserting some significant possibility of injury.").

[44] Plaintiffs' Opposition also makes clear that they do not purport to have pled "oppressive" conduct supporting an award of punitive damages.  *See* Opp. at 115 ("Plaintiffs plead both malice and fraud.").

**B.** **Texas**

Plaintiffs argue that they are entitled to punitive damages under Texas law because their Complaint alleges gross negligence.  But Plaintiffs fail to identify any allegations in their Complaint that would establish that Uber engaged in conduct "which when viewed objectively" from its own standpoint at the time of the conduct "involve[d] an extreme degree of risk" of which Uber "ha[d] actual, subjective awareness" but "nevertheless proceed[ed] with conscious indifference to the rights, safety, and welfare of others."  *See* Tex. Civ. Prac. & Rem. Code § 41.001(11) (emphasis added).[45]  Moreover, Plaintiffs effectively concede that they have no basis for seeking punitive damages based on malice.  *See* Opp. at 120 (failing to make an argument based on malice).  For these reasons, the Court should dismiss Plaintiffs' request for punitive damages under Texas law.

**C.** **Florida**

Plaintiffs argue that the gross negligence necessary to permit punitive damages can be established simply "by allegations of a defendant's actual knowledge of a danger followed by a failure to warn of that danger."  Opp. at 117 (citation and quotation marks omitted).  But that is not the case.  The Florida Supreme Court has long recognized that "the required level of negligence for punitive damages is equivalent to the conduct involved in criminal manslaughter."  *Valladares* v. *Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016)[46] (citing *Como Oil Co.*, *Inc.* v. *O'Loughlin*, 466 So. 2d 1061, 1062 (Fla. 1985)); *accord Fla. Power & Light Co.* v. *Dominguez*, 295 So. 3d 1202, 1206 (Fla. Dist. Ct. App. 2019). Negligence will only rise to such a level if it is of a:

> gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness,

---

[45] Plaintiffs cite *Fearrington* v. *Boston Scientific Corp.*, 410 F. Supp. 3d 794, 808-09 (S.D. Tex. 2019), which is easily distinguishable. *Fearrington* involved a medical device that was implanted in the plaintiff. The *Fearrington* complaint alleged that the device - - unlike the Uber App - - had been banned by the U.S. Food and Drug Administration for certain purposes, Compl. ¶ 26, *Fearrington* v. *Boston Scientific Corp.*, No. 4:19-cv-02366 (S.D. Tex. July 1, 2019), ECF No. 1, and carried a "high degree of probability of injury" to those that used it. *Id.* ¶ 144.

[46] Plaintiffs take issue with Uber's citations to case law that preceded the current Florida statute on punitive damages, Fla. Stat. § 768.72, but *Valladares* confirms that Florida courts still require this heightened level of negligence.

1

2

or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

3

*Valladares*, 197 So. 3d at 11 (quoting *Owens-Corning Fiberglas Corp.* v. *Ballard*, 749 So. 2d 483, 486

4

(Fla. 1999)).   The allegations to which Plaintiffs point fall well below this heightened standard of

5

negligence.   The request for punitive damages under Florida law must therefore be dismissed.

6

### D.   Illinois

7

Plaintiffs argue that they sufficiently allege "willful, reckless, and fraudulent misconduct" to

8

support their request for punitive damages under Illinois law.   Opp. at 118.   In doing so, they rely on *Doe*

9

v. *Catholic Bishop of Chicago*, 82 N.E.3d 1229, 1231, 1234 (Ill. App. Ct. 2017), which held that a claim

10

for punitive damages in a negligent hiring, supervision, and retention case need not be supported by

11

evidence of the defendant's actual knowledge of a tortfeasor employee's "particular unfitness."   The *Doe*

12

court reasoned that the same factual allegations and evidence *could* support findings of both basic

13

negligence and the willful and wanton misconduct needed to award punitive damages.   *Id.* at 1233-34.

14

But Illinois law is clear that "a plaintiff must allege either a *deliberate intention to harm or an utter*

15

*indifference to or conscious disregard for the welfare of the plaintiff*" to successfully plead willful and

16

wanton misconduct.   *Adkins* v. *Sarah Bush Lincoln Health Ctr.*, 544 N.E.2d 733, 743 (Ill. 1989) (emphasis

17

added); *see also Parsons* v. *Winter*, 491 N.E.2d 1236, 1241 (Ill. App. Ct. 1986) (trial court should have

18

entered judgment notwithstanding the verdict on issue of punitive damages where plaintiff alleged

19

intentional misconduct but failed to allege oppression, violence, gross negligence arising to the level of

20

wanton disregard of his rights, or conduct beyond what is necessary to establish fraud).   Plaintiffs'

21

allegations do not meet these standards, and their request for punitive damages must be dismissed.

22

### E.   New York

23

Plaintiffs argue that the "trend" among New York courts is to deny motions to dismiss requests for

24

punitive damages because a plaintiff need not plead allegations supporting punitive damages with

25

specificity.   Opp. at 118 (citation omitted).   While some courts have declined to dispose of such requests

26

at the motion to dismiss stage, Plaintiffs ignore recent case law where New York courts *have* dismissed

27

such requests.   *See, e.g., Moskowitz* v. *Masliansky*, 155 N.Y.S.3d 414, 418 (N.Y. App. Div. 2021) (holding

28

that trial court should have dismissed demand for punitive damages in negligence action stemming from

-71-

1  allegations of sexual assault where allegations amounted "to nothing more than allegations of mere

2  negligence" and did not "rise to the level of moral culpability necessary to support a claim for punitive

3  damages"); *Thomas* v. *Farrago*, 62 N.Y.S.3d 478, 480 (N.Y. App. Div. 2017) (court properly dismissed

4  demands for punitive damages where allegations amounted to mere negligence).

5        Because the allegations Plaintiffs rely on fail to demonstrate the level of moral culpability

6  necessary to support a request for punitive damages under New York law.   The request for punitive

7  damages under New York law therefore should be dismissed.

8  **X.**      **THE LAW OF THE INCIDENT STATE GOVERNS PLANTIFFS' CLAIMS**

9        In its Motions under the laws of Texas, Florida, New York, and Illinois, Uber demonstrated that

10  the law of the state where the alleged incident occurred governs each Plaintiff's claims.   That conclusion

11  holds under (1) the conflicts of laws principles of the state in which the alleged incident occurred; (2)

12  California conflicts of law principles; and (3) Uber's Terms of Use in effect in January 2021 or later,

13  including the contractual choice of law clause specifying the law of the state of the incident as the

14  governing law.[47]   In response, Plaintiffs do not argue that any state's law other than the law of the incident

15  state should apply.   Instead, Plaintiffs ask the Court not to decide the issue.   However, none of Plaintiffs'

16  arguments support deferring this question until some unspecified later date.   The Court should now hold

17  that the law of the incident state applies to their claims.

18        *First*, Plaintiffs argue that a choice of law determination is "not required to resolve the motions."

19  Opp. at 121.   But resolving the choice of law issues raised in the Motions is consistent with this Court's

20  MDL role.   Resolving the Motions "to dismiss, [their multi-]state choice of law inquiry included, is a fair

21  and efficient way to advance this litigation," *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*,

22  2024 WL 991210, at *5 (E.D.N.Y. Mar. 7, 2024), because it may resolve certain causes of action, and will

23  provide the parties with guidance about which claims may proceed.   Engaging in this analysis would also

24  be consistent with the decisions in several other multidistrict litigations.[48]

---

25  [47] Uber did not address choice of law in its California Motion as there is no basis to apply anything other

26  than California law to claims where the incident occurred in California and filed a complaint in California.

26  [48] *See*, *e.g.*, *In re Exactech*, 2024 WL 991210, at *5-6 (conducting choice of law analysis when resolving

27  motion to dismiss in a multidistrict litigation); *In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d

27  1304, 1313-14 (S.D. Fla. 2020); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033,

28

*Second*, Plaintiffs argue that determining choice of law requires, for some Plaintiffs, analysis of the choice of law and forum selection clauses in Uber's Terms of Use, which is the subject of a separate motion pending before this Court. Opp. at 121. But the fact that this issue already has been raised and fully briefed weighs in favor of deciding it now, not deferring until some unspecified later date.

*Third*, Plaintiffs argue that "[a]bsent an extant material conflict, there is no need to evaluate choice-of-law," and claim that there is no material conflict because it is Uber's position "that the identified claims fail under each of the five states' laws at issue." Opp. at 122 (citation omitted). It is true that Plaintiffs' claims "fail" under each state's law, but not because these laws are all the same. On the contrary, there are potentially outcome-determinative differences in the laws of the various states. For example, Uber has not asked the Court to resolve Uber's common carrier status or dismiss Plaintiffs' common carrier nondelegable duty claim (Claim E) under the law of California, but has demonstrated why dismissal is proper under the law of Texas, Florida, and Illinois. *Compare*, *e.g.*, Cal. Mot. at 1, 6 n.3, *with* Tex. Mot. at 1, 10, *and* Fla. Mot. at 1, 10, *and* Ill. Mot. at 1, 10. Plaintiffs themselves have implicitly recognized material differences in the laws of each state by advancing different substantive arguments corresponding to each. *Compare*, *e.g.*, Opp. at 89 (arguments regarding NIED claims under California, Illinois, and New York law), *with id.* at 90 (separate arguments regarding NIED claims under Florida law).

*Finally*, Plaintiffs' assertion that choice of law analysis requires a separate inquiry regarding each claim at issue ignores that the Motions undertake such an analysis, *see*, *e.g.*, N.Y. Mot. to Dismiss at 3-5, and the conclusion is that the law of the incident state governs with respect to each claim.[49]

---

1065-66 (S.D. Cal. 2017); *In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 294, 300 (D. Mass. 2015); *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 488, 499-500 (S.D.N.Y. 2011) (adopting "in all respects" R&R from special master who conducted choice of law analysis at motion to dismiss stage in a multidistrict litigation where the defendants moved "to dismiss almost all the counts in the complaint against them").

[49] The cases relied on by Plaintiffs in which the court declined to conduct a choice of law analysis at the dispositive motions stage are distinguishable. For example, in *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1192, 1214-15 (S.D. Fla. 2021), the parties actively disputed what law should apply, and resolution of that dispute required consideration of plaintiff-specific facts. Plaintiffs here have not identified any plaintiff-specific facts that would alter the Court's conclusion. The closest Plaintiffs come is their argument regarding the Terms of Use; but in addition to being mistaken about the Terms' enforceability, Plaintiffs have ignored that conflicts of laws principles in California and non-California states all dictate that the law of the state of the incident should control. Similarly, in *In re OnStar Contract*

For all these reasons, the Court should address choice of law now in connection with its resolution of Uber's Motion.  Furthermore, because Plaintiffs provide no substantive argument in response, the Court should hold, as Uber argues, that the law of the incident state applies to each Plaintiff's claims.  Uber fully briefed the issue, and Plaintiffs chose not to engage.  While that is their choice, there is no reason why Plaintiffs should be given a second chance to litigate this issue.

## XI.   AMENDMENT WOULD BE FUTILE

Plaintiffs have had multiple opportunities to plead their claims, both before and during this MDL, and still their allegations are inadequate.  Plaintiffs have filed *three* pleadings - - their original complaints, the Master Complaint, and their SFCs - - and they still have failed to state the causes of action.  Because the causes of action are deficiently pled as a matter of law, and no Plaintiff can allege facts beyond those asserted because no such facts exist, amendment would be futile and should not be allowed.  *See Steckman* v. *Hart Brewing, Inc.*, 143 F. 3d 1293, 1298 (9th Cir. 1998).

### CONCLUSION

For the foregoing reasons and the reasons set forth in Uber's Motions, this Court should grant Uber's Motions to Dismiss Plaintiffs' Master Long-Form Complaint Pursuant to California Law (ECF 269).

DATED: May 14, 2024

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:   /s/ Robert Atkins
ROBERT ATKINS
RANDALL S. LUSKEY

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

---

*Litigation*, 600 F. Supp. 2d 861, 865 (E.D. Mich. 2009), the court declined to conduct a choice of law analysis because "the parties . . . made limited arguments in support of their respective positions."

DEFENDANTS' OMNIBUS REPLY ISO THEIR MOTIONS TO DISMISS
Case No. 3:23-md-03084-CRB