IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>_____/<br><br>This Order Relates To:<br><br>ALL ACTIONS | MDL No. 3084 CRB<br><br>**ORDER RE: JUNE 7 HEARING ON MOTIONS TO DISMISS** |

This order sets forth some questions and issues that the parties should be prepared to address at Friday's hearing. The parties may of course also address other issues that they regard as important, time permitting.

**A. Vicarious Liability**

1. In Lisa M. v. Henry Mayo Newhall Mem'l Hosp., the Supreme Court of California held that "a sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions." 907 P.2d 358, 364 (Cal. 1995). And it reasoned that "simply [taking] advantage of solitude, access and superior knowledge to commit a sexual assault" was not sufficient to regard a sexual assault as "engendered by the employment." Doesn't this case foreclose Plaintiffs' scope-of-employment theory of vicarious liability?

2. How should the Court think about Xue Lu v. Powell, 621 F.3d 944 (9th Cir. 2010), given that it is arguably in tension with California appellate courts' application of

  Lisa M.?

3. What role should the policy goals articulated in Lisa M. play in the Court's analysis of the scope-of-employment inquiry?

4. Assume that Uber is a common carrier for purposes of common law tort liability in Texas. What are the strongest indications that the Supreme Court of Texas would hold Uber liable to the Plaintiffs on the grounds that it breached its non-delegable duty of care? What are the strongest indications that it would not?

**B. "Other Non-Delegable Duties" Claim**

1. Do Plaintiffs concede that Claim F must be dismissed under California and Texas law?

**C. Negligent Entrustment**

1. In Hacala v. Bird Rides, Inc., 306 Cal. Rptr. 3d 900 (Cal. App. 2d Dist. 2023), review denied (June 21, 2023), the California Court of Appeal held that "Bird's general duty of care under [Cal. Civ. Code. § 1714] encompasses an obligation not to entrust its scooters to individuals who Bird knows or should know are likely to leave scooters in hazardous locations where they will pose an unreasonable risk of harm to others." How, if at all, does that case affect Plaintiffs' negligent entrustment claims under California law?

2. Relatedly, is negligent entrustment a separate cause of action in California, or is it just a species of general negligence?

**D. Products Liability Claims**

1. Would the California and Texas Supreme Courts follow Section 19 of the Restatement (Third) of Torts: Products Liability in defining a "product"? If not, what is the correct standard for determining whether something is a product under California and Texas law?

2. Imagine an iPhone app contained a coding error that, just by itself, caused users' otherwise un-defective phones to overheat and stop functioning. Why shouldn't that app be regarded as a defective product, and why wouldn't the purposes of strict

1     products liability be served by recognizing it as such?

2 3. Now imagine that, due to a malfunction in the Uber app, it falsely (and without human intervention) reported to police that a user was committing a serious crime against the driver. As a result, a SWAT team arrived and injured the user.[1] Why shouldn't that app be regarded as a defective product, and why wouldn't the purposes of strict products liability be served by recognizing it as such? (The Court recognizes that there are many significant factual differences between these examples and Plaintiffs' defect theories. But the Court is interested in why an app, distributed widely to individuals via their devices, should or shouldn't be categorically outside the bounds of products liability law.)

4. Assume that some part of what Uber offers to its users is a product for purposes of products liability law. How, specifically, should that product be defined? The Master Complaint ("MC") defines the "Uber App" to include both the front-end user interface—the thing that a user would download onto her phone—and also the "backend infrastructure" that "actually makes the Uber App work" and includes "physical servers located at data centers around the country." MC ¶ 448. But Plaintiffs' main arguments for why the app is a product—it is tangible and is distributed in a way analogous to personal property—really only apply to the front-end interface. Why wouldn't it be correct to say that, even if Plaintiffs are right on the law, the front-end interface is a "product," but the backend infrastructure is not? And if that were right, wouldn't Plaintiffs' products liability claims be limited to defects affecting the functionality of the app itself?

5. With respect to the "predominant purpose" test: In what sense do Plaintiffs argue that the provision of a service (rides) is not the "predominant purpose" of Uber's transactions with its users? In other words, besides procuring a ride, what is the

---

[1] Cf. Dave Savini et al., A pizza order leads to a huge police response in suburban Chicago swatting, CBS NEWS (March 22, 2024) (Domino's Pizza app used in "swatting" incident), available at https://www.cbsnews.com/chicago/news/pizza-order-suburban-chicago-swatting/.

3

purpose of downloading and using the Uber app, or of making any other transaction with Uber?

6. If the Court concludes that there is no other such purpose, do the products liability claims need to be dismissed in California? In Texas?

### E. Individualized Allegations

1. Finally, the parties should be prepared to address the following issues.  How and when should the Court address legal questions that require analysis of individualized factual allegations?

2. At this stage, does it matter whether short-form complaints contain the individual allegations that Uber argues are lacking from the MC (or whether the Plaintiff Fact Sheets disclose the relevant facts)?

3. If, for certain claims, the lack of individualized allegations warrant dismissal at this stage, should the Court dismiss the MC or certain short-form complaints with leave to amend?

**IT IS SO ORDERED.**

Dated: June 4, 2024

_____
CHARLES R. BREYER
United States District Judge