1  RANDALL S. LUSKEY (SBN: 240915)
       rluskey@paulweiss.com
2  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
3  535 Mission Street, 24th Floor
   San Francisco, CA 94105
4  Telephone: (628) 432-5100
   Facsimile:  (628) 232-3101
5
   ROBERT ATKINS (*Pro Hac Vice* admitted)
6      ratkins@paulweiss.com
   JACQUELINE P. RUBIN (*Pro Hac Vice* admitted)
7      jrubin@paulweiss.com
   YAHONNES CLEARY (*Pro Hac Vice* admitted)
8      ycleary@paulweiss.com
   CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
9      cgrusauskas@paulweiss.com
   ANDREA M. KELLER (*Pro Hac Vice* admitted)
10     akeller@paulweiss.com
   **PAUL, WEISS, RIFKIND, WHARTON**
11     **& GARRISON LLP**
   1285 Avenue of the Americas
12 New York, NY 10019
   Telephone: (212) 373-3000
13 Facsimile:  (212) 757-3990

14 *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.,
15 RASIER, LLC, and RASIER-CA, LLC

16 *[Additional Counsel Listed on Following Page]*

17

**UNITED STATES DISTRICT COURT**

18

**NORTHERN DISTRICT OF CALIFORNIA**

19

**SAN FRANCISCO DIVISION**

20

| | |
|---|---|
| 21  IN RE: UBER TECHNOLOGIES, INC.,<br>     PASSENGER SEXUAL ASSAULT<br>22   LITIGATION | Case No. 3:23-md-03084-CRB<br><br>**MEMORANDUM IN SUPPORT OF**<br>23 _____ **DEFENDANTS UBER TECHNOLOGIES,**<br>     **INC., RASIER, LLC, AND RASIER-CA, LLC'S**<br>24   This Document Relates to: **PROPOSED DEPOSITION PROTOCOL**<br>25   ALL ACTIONS Judge:     Hon. Charles R. Breyer<br>     Courtroom: 6 – 17th Floor<br>26 |

27

28

-ii-

KYLE N. SMITH (*Pro Hac Vice* admitted)
  ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
  jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") submit this brief in support of their updated proposed deposition protocol as required by Order Regarding Deposition Protocol (ECF No. 371). In the Order Regarding Deposition Protocol, the Court, having reviewed the parties' initial deposition protocol proposals (ECF Nos. 299, 300), stated that it was premature to determine the number of depositions to be taken or the time allocated for each deposition. The Court ordered the parties to appear for a discovery status conference on April 24, 2024 and to submit their respective deposition protocols regarding the timing for when depositions should begin, the number of depositions, the amount of time for each deposition, coordination with the JCCP, and authentication of documents, two business days before the conference. ECF No. 371 at 2. The hearing has since been rescheduled to June 11, 2024, and the Court has also sought clarification as to whether the parties' proposals incorporate or differ from the positions of their JCCP counterparts in any manner. ECF No. 526.

The parties met and conferred on these issues but have not been able to agree on a few discrete provisions within the deposition protocol. Defendants have attached their updated proposed deposition protocol as Exhibit A ("Ex. A") to this motion.[1] As the Court will see, Defendants' new deposition protocol is largely the same as the protocol that was submitted in February, with a few modifications. Although the parties have agreed that they will confer as to the appropriate time to start depositions and that the JCCP intends to coordinate with the MDL so that Uber witnesses are not deposed twice, there remain four issues for the Court's consideration:

(1) Whether the Court should include an overall deposition cap and whether Plaintiffs should be limited in the number of depositions of Uber witnesses: Defendants believe that Plaintiffs should be limited to 30 depositions of Uber witnesses. This reflects an increase of five depositions from Defendants' initial proposal. Plaintiffs continue to express that they do not want the Court to enter any limit at this time, or alternatively, they request the ability to take as many as

---

[1] Also attached is Exhibit B, which is a chart of the differences between Plaintiffs' proposed deposition protocol and Defendants' proposed deposition protocol.

-1-

***100 depositions*** of Uber witnesses—which would ***not include*** third-party witnesses; or depositions of Uber witnesses that are "plaintiff-specific."

(2) Whether Plaintiffs should be limited in the length of depositions of Uber witnesses: Defendants believe that the Court should set a default time limit of 7 hours in 1 day, consistent with the federal rules (*see* Fed. R. Civ. P. 30(d)(1) (limiting depositions to "1 day of 7 hours")). In the spirit of compromise, Defendants have agreed that the Plaintiffs can designate 5 depositions that would be 10 hours and 3 that would be 14 hours. Plaintiffs maintain the extreme and unjustified position that they should be able to depose ***every*** Uber witness for ***up to 14 hours for all depositions***.

(3) Whether the deposition protocol should include a provision to automatically authenticate documents used in depositions: Plaintiffs maintain that a failure to object to a document on authenticity grounds within 30 days of a deposition should waive the right to object at trial. Defendants think that this provision is misplaced in a deposition protocol and that authenticity objections should be heard closer to trial.

(4) Whether the parties should be able to state the basis of their objections on the record during depositions.

## II.     ARGUMENT

### A.     Plaintiffs Should Be Limited to 30 Depositions of Uber.

Plaintiffs request that the Court not set a cap on the number of depositions of Uber witnesses "at this time," and "revisit the issue in due time." ECF No. 299-1 at 11.

Uber respectfully submits that a deposition cap as to the number of depositions taken of Defendant witnesses is necessary and appropriate at this time. Deposition protocols in MDLs routinely set deposition caps in advance of or at the beginning of fact discovery. *See, e.g*, Stipulation & Deposition Protocol Order at 6, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981 (N.D. Cal. Dec. 20, 2021), ECF No. 171 (prior to answer of second amended complaint, the court entered deposition protocol and set a cap on the number of depositions to be taken in the case); Stipulation & Order re Deposition Protocol at 4, *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 3:19-md-02918 (N.D. Cal. Nov. 6, 2020), ECF No. 287 (prior to

-2-

briefing in opposition of motion to dismiss second amended complaint, the court entered a deposition protocol and set a cap on the number of depositions to be taken in the case ). And for good reason. Proceeding without a deposition cap will create unnecessary expense, the potential for an unlimited number of depositions, and a longer than reasonable discovery period. Forcing Plaintiffs to make some choices about appropriate deponents will ensure efficiency. Setting a deposition limit will greatly aid the parties as they negotiate document custodians, develop witness lists, and set a reasonable and manageable deposition schedule.

Assuming the Court sets a deposition cap with respect to depositions of Defendant witnesses, as is typical in MDL proceedings, the parties dispute the number of depositions Plaintiffs should be allowed to take in this case. Uber proposes that Plaintiffs should be limited to taking 30 depositions of former and current Uber employees, including 30(b)(6) depositions. Other MDL courts, in cases significantly more complex than this one, have ordered a similar number of depositions that Uber proposes here. *See, e.g.*, Stipulation & Deposition Protocol Order at 6, *Google Play Store*, No. 3:21-md-02981, ECF No. 171 ("Absent good cause, the Plaintiffs shall be limited to a total of thirty-five (35) depositions of the current and former employees of Google. Absent good cause, Google shall be limited to a total of thirty-five (35) depositions of the Plaintiffs, except no more than twenty (20) of these depositions may be of the current and former employees of [plaintiff] Epic."); Stipulation & Order re Deposition Protocol at 4, *Hard Disk Drive Suspension Assemblies*, No. 3:19-md-02918, ECF No. 287 (ordering that plaintiffs may take a total of 33 depositions across three different defendant groups, and defendants may take one deposition for each end-user plaintiff, one deposition for each reseller plaintiff, and up to 8 depositions for each direct action plaintiff group); Order Regarding Deposition Protocol at 5, *Fed. Housing Finance Agency as Conservator for the Fed. Nat'l Mortgage Ass'n et al* v. *UBS Americas Inc. et al*, No. 1:11-cv-05201 (S.D.N.Y. Nov. 28, 2012) ECF No. 280 (capping depositions to 20 per family of corporate defendants); Stipulation & Order at 2, *In re Niaspan Antitrust Litig.*, 2:13-md-02460 (E.D. Pa. Nov. 19, 2014), ECF No. 131 (imposing a limit on plaintiffs of 25 depositions collectively for each side); Stipulation & Order on Deposition Limits at 1, *In re Realpage, Inc., Rental Software Antitrust Litigation (No. II)*, 3:23-md-03071 (M.D. Tenn. May 13, 2024), ECF

-3-

No. 911 (ordering that plaintiffs cannot take more than 25 depositions of one defendant and 15 depositions of other defendant parties); Pretrial Order # 54 at 5, *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 9:20-md-02924 (S.D. Fla. November 11, 2020), ECF No. 2260 (imposing a soft cap of 35 depositions or less per defendant).[2]

Plaintiffs' proposed protocol provides that they may take up to 100 fact depositions. Taking this many depositions would amount to a tremendous expense and burden for the parties. Moreover, the parties should strive towards efficiency and cost-consciousness, and avoid any effort to drive up legal fees and the number of needless depositions. The needs of the case do not warrant such an exorbitant number of depositions. Thirty is sufficient to cover the subjects at issue, including Uber's safety policies, practices, and features; Uber's processes for handling passenger complaints; the nature of driver background checks; and Uber's Safety Reports. Although depositions have not begun in the JCCP case, there, the Plaintiffs have coalesced around 24–30 key document custodians, which suggests a similar number of depositions will occur in that matter.

In addition to their proposal in this protocol to depose 100 former and current Uber employees, Plaintiffs also seek to take an additional undetermined number of depositions of Uber witnesses under the guise that they are "plaintiff-specific depositions" to be addressed in a different order. Plaintiffs attempt to include this phrase in three areas of the deposition protocol, but Uber

---

[2] Plaintiffs cite *In re Zantac* for the proposition that depositions were soft capped to at least 92 defense fact witnesses. *See* ECF No. 299 at 3. What Plaintiffs failed to include is that the MDL had over ten defendants and the depositions were spread among those defendants. Pretrial Order # 54 at 5–6, *In re Zantac*, No. 9:20-md-02924, ECF No. 2260. Indeed, the Order imposed a soft cap of 35 depositions for Defendant GlaxoSmithKline, 19 for Defendant Boehringer Ingelheim, 14 for Defendant Pfizer and Sanofi, and only 5 depositions for each generic brand manufacturer for current or former employees and 5 for each generic brand manufacturer for designated witnesses. *Id.* The deposition cap per each Defendant was 35 or less, which is right in the range of what Uber believes is appropriate in this case. *Id.*

Plaintiffs also cite *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-02672 (N.D. Cal. May 13, 2016) ECF No. 1500, for the proposition that plaintiffs were permitted to take 100 depositions in that case. *See* ECF No. 299 at 3. Here too Plaintiffs fail to mention that the limit of 100 depositions applied to all VW entities, Porsche entities, and Bosh entities collectively, which amounted to 8 entities in total. Pretrial Order No. 20 Stipulation and Order Relating to Deposition Protocol at 2, *In re Volkswagen*, No. 3:15-md-02672, ECF No. 1500. As such, the deposition cap per entity was well under what Uber is proposing here.

-4-

suggests edits to clarify that the instant deposition protocol places a limit on **all** depositions of current and former Uber employees.

Uber proposes that references in the deposition protocol to "plaintiff-specific depositions" should be edited to read "depositions of plaintiffs." Specifically, in footnote 1 of the deposition protocol, Uber proposes that the sentence "[t]he court anticipates entering a subsequent order to address plaintiff specific depositions . . ." should be changed to "[t]he court anticipates entering a subsequent order to address depositions of plaintiffs . . . ." Uber also proposes that, on page 10, line 24, "Sequencing of plaintiff-specific depositions, including depositions of health care providers, will be set by separate order" be replaced with "Sequencing of depositions noticed by Defendants, including depositions of Plaintiffs and other third-party witnesses such as health care providers will be set by separate order." Lastly, the sentence on page 12, lines 4-5: "[l]imits on the number and duration of plaintiff specific depositions will be set in a separate court order," should be removed.

The instant deposition protocol should place a complete cap on the number of depositions taken of current and former Uber employees -- Defendants do not want to leave open the possibility that a separate order will be issued which would allow additional depositions of Uber witnesses. This approach is reflected in the MDL cases cited above, in which deposition caps were imposed without any exclusion for "plaintiff-specific depositions." *See generally, e.g.*, Stipulation & Deposition Protocol Order, *Google Play Store*, No. 3:21-md-02981, ECF. No. 171; Stipulation & Order re Deposition Protocol, *Hard Disk Drive Suspension Assemblies*, No. 3:19-md-02918, ECF No. 287.

B.   <u>Plaintiffs Should Be Limited to 7 Hours for Most Depositions.</u>

The depositions in this case should also follow the duration limits outlined in Federal Rule of Civil Procedure 30, which limits depositions to "1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). Here, Plaintiffs seek to schedule two days for each and every deposition, and, where a deposition is cross-noticed with the JCCP, Plaintiffs seek **14 hours** of deposition testimony. Plaintiffs have not established any basis for such an extraordinary time commitment for each deposition, effectively doubling the presumptive time limit codified in the Federal Rules of Civil Procedure.

Deposition protocols from other MDLs reflect that limiting depositions to 7 hours is standard. *See, e.g.*, Stipulation & Order at 1, *In re Niaspan Antitrust Litigation*, No. 2:13-md-2460, ECF No. 137 (ordering that no deposition is to exceed 7 hours); Case Management Order No. 5 at 3, *In re Stryker LFIT V40 Femoral Head Prods. Liab. Litig.*, No. 1:17-md-02768 (D. Mass. Jan. 11, 2018), ECF No. 596 ("Absent agreement of the parties or order of this court, the presumptive limit for depositions is one (1) day of seven (7) hours, as set forth in Federal Rule of Civil Procedure 30(d)(1)."); Stipulation & Order re Deposition Protocol at 4, *Hard Disk Drive Suspension Assemblies*, No. 3:19-md-02918, ECF No. 287 ("Except as otherwise provided below, each deposition . . . shall presumptively be limited to 7 hours on the record."); Pretrial Order # 41 at 4, *In re Am. Med. Sys., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 2:12-md-02325 (S.D. W. Va. Feb. 20, 2013), ECF No. 469 (ordering a deposition limit of 7 hours: "The time limitations on depositions imposed by Fed. R. Civ. P. 30(d)(1) shall apply in the MDL unless the parties agree to a different time limitation in the MDL or the Court establishes a different time limitation"); Deposition Protocol Order at 2, *In re Diisocyanates Antitrust Litig.*, No. 2:18-mc-01001 (W.D. Pa. Oct 18, 2023), ECF No. 958 ("English language depositions shall be limited to seven (7) hours in accordance with Fed. R. Civ. P. 30(d)(1) unless the parties otherwise agree or the Court otherwise orders."); Protocol for Phase One Fact & Expert Depositions at 9, *In re Acetaminophen – ASD-ADHD Prods. Liab. Litig.*, No. 1:22-md-03043 (S.D.N.Y. Feb. 13, 2023), ECF No. 435 ("The amount of time for depositions shall be governed by the Federal Rules of Civil Procedure, exclusive of any re-direct examination time by a party of its own witness.").

Furthermore, Plaintiffs are not entitled to more time merely because multiple sets of Plaintiffs' lawyers will partake in questioning. Deposition protocol orders in other MDLs have often imposed a time cap even where shared among several sets of attorneys. *See, e.g.*, Case Management Order No. 5 at 3, *In re Stryker*, No. 1:17-md-02768, ECF No. 596 (imposing a presumptive 7-hour time limit per deposition across multiple sets of plaintiffs' attorney); Pretrial Order # 54 at 14, *In re Zantac*, No. 9:20-md-02924, ECF No. 2260 (same); *In re Diisocyanates*, No. 2:18-mc-01001, ECF No. 958 (same; "[a]ll plaintiffs in the above-captioned matter ('Plaintiffs') shall be considered as one side for purposes of this Deposition Protocol Order only").

1  The needs of the case do not warrant anything other than depositions lasting 1 day of 7 hours.
2  Defendants agree Plaintiffs can designate 5 depositions that will last 10 hours and 3 that will last
3  14 hours, but it is overly burdensome and unnecessary to designate 14 hours to every single
4  deposition.

5  Additionally, Uber also proposes modest limits should be placed on 30(b)(6) testimony.
6  Specifically, "Every seven (7) hours of Rule 30(b)(6) deposition testimony shall count as one (1)
7  deposition against the overall limit of thirty (30) depositions of Uber defendants.  The seven (7)
8  hours of examination shall not include questioning by the party defending the deposition or other
9  opposing counsel." Ex. A § II.B.  This reasonable limitation on 30(b)(6) testimony is in line with
10 what has been done in other MDLs.  *See, e.g.*, Stipulation & Order at 1, *In re Niaspan*, No. 2:13-
11 md-2460, ECF No. 137 (ordering that plaintiffs could take 25 depositions plus 2 additional
12 30(b)(6) depositions of each group of plaintiffs, and that every deposition be limited to 7 hours);
13 Deposition Protocol Order at 2, *In re Diisocyanates*, No. 2:18-mc-01001, ECF No. 958 (ordering
14 that any 30(b)(6) deposition completed within 7 hours counts as a single deposition; any 30(b)(6)
15 depositions exceeding 7 hours must be agreed to by parties and shall count as more than one
16 deposition, with each additional increment up to 7 hours counting as an additional deposition);
17 Stipulation & Order on Deposition Limits at 1, *In re Realpage,* No. 3:23-md-03071, ECF No. 911
18 (ordering that the cap of 25 depositions of one defendant and the cap of 15 depositions for the
19 remaining defendants be inclusive of 30(b)(6) depositions).

20     C.    <u>The Court Should Not Determine Document Authenticity in a Deposition Protocol.</u>

21 The parties dispute the timing of when documents used in a deposition must be
22 authenticated before trial.  Uber believes that disputes regarding the authenticity of documents to
23 be used at trial should be the subject of pretrial motions closer to trial, not during deposition
24 discovery.  Plaintiffs' proposal would have the parties object to the authenticity of documents
25 within 30 days of a deposition in which the document was used, or **waive any right** to object to a
26 document's authenticity at trial.  This is entirely premature.  Issues of authenticity are not relevant
27 to the litigation until much later in the case and are better suited for resolution at that point.  *See*
28 Order at 3, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill. Aug. 28, 2018),

-7-

ECF No. 1155 ("Legitimate disputes concerning the authenticity and admissibility of particular documents . . . can be resolved later in the case when the parties and the Court have a greater appreciation and understanding of the documents that actually matter, and after the parties have had a chance to address those matters in context."); *see also* Case Management Order No. 5 at 4, *In re* Stryker, No. 1:17-md-02768, ECF No. 596 ("Objections to the relevance or admissibility of documents used as deposition exhibits are not waived and are reserved for later ruling by the Court or by the trial judge."); Protocol for Phase One Fact & Expert Depositions at 9, *In re Acetaminophen*, No. 1:22-md-03043, ECF No. 435 ("All objections, except to the form of the question and the responsiveness of the answer are reserved to the time of trial and are not waived, including objections to foundation.").

Plaintiffs' proposal would also prove both costly and inefficient. The universe of deposition exhibits will be larger than the universe of documents offered as trial exhibits, resulting in the ripening of authenticity issues for documents that would otherwise not have been at issue absent Plaintiffs' proposal. Plaintiffs' proposal incentivizes the parties to over-object to preserve their rights, precipitating rolling and protracted discovery disputes. When these disputes inevitably arise, the parties will devote time and resources to the wasteful pretrial activity of resolving authenticity issues for every deposition exhibit at issue, regardless of whether that exhibit will be offered at trial, instead of devoting time and resources to preparing for the disposition of this action. The potential for high costs and further inefficiency will only be made worse if the parties have to engage in motions practice and seek resolution from the Court on authenticity issues for documents that will never be offered as trial exhibits. The interests of judicial economy are not served by asking the Court to resolve document-specific issues that will have no further bearing on this litigation. Resolving issues of authenticity closer to trial, for *all* documents that may be offered as trial exhibits rather than those that simply serve as deposition exhibits, will discourage wasteful pretrial activities, avoid costly meet and confers and motions practice, and expedite the disposition of this action.

Accordingly, there is no need to include a provision on authenticating documents in a deposition protocol.

D.   Stating Objections on the Record.

Plaintiffs propose to include language in the protocol that would prohibit an attorney in a deposition from stating on the record the basis for an objection. Specifically, Plaintiffs seek to include the following:

- "Counsel shall refrain from engaging in colloquy during a deposition. No speaking objections are allowed, and professionalism is to be maintained by all counsel at all times. Counsel shall not make objections or statements that might suggest an answer to a witness.";

whereas Uber suggests the following:

- "Counsel shall refrain from engaging in colloquy during a deposition. No speaking objections are allowed, but <u>counsel may state the basis for their objections</u>, and professionalism is to be maintained by all counsel at all times. Counsel shall not make objections or statements that might suggest an answer to a witness."

Ex. A § II.C.2 (emphasis added).

Plaintiffs' prohibition is unnecessary and unfairly limits an attorney from making a fair and adequate record. Counsel should not be prohibited from making a clear record of the basis for objections. As such, the deposition protocol should confirm what should be uncontroversial: the parties' counsel has the right to briefly state the basis for their objections on the record. This is, of course, a bilateral provision - - Plaintiffs' counsel, too, would have the same opportunity. *See Barajas* v. *Abbott Lab'ys., Inc.*, 2018 WL 6248550, at *3 (N.D. Cal. Nov. 29, 2018) (declining to find that counsel had unduly prolonged the deposition even where counsel "made a number of extended objections and engaged in colloquy"); *Loop AI Labs Inc.* v. *Gatti*, 2017 WL 934599, at *2 (N.D. Cal. Mar. 9, 2017) (order that directed counsel to state the basis of their objection but refrain from speaking objections), *aff'd*, 742 F. App'x 286 (9th Cir. Nov. 9, 2018).

E.   Scheduling Depositions and Statement Regarding JCCP Counterparts

The parties have discussed the timing of depositions and will meet and confer to set a specific schedule for when depositions should begin. The parties agree that the timing of

depositions should be discussed in the context of document productions. However, the parties need not wait to enter into a deposition protocol until a certain number of documents have been produced in a case. As noted above, setting parameters on the number and length of depositions will greatly assist the parties in negotiating document custodians, developing witness lists, and setting a reasonable and manageable deposition schedule. In fact, it is common place in MDLs for courts to order deposition protocols long before substantial completion of document productions. *See generally, e.g.*, Stipulation & Order re Deposition Protocol, *Hard Disk Drive Suspension Assemblies*, No. 3:19-md-02918, ECF No. 287 (deposition protocol filed prior to briefing in opposition to motion to dismiss of second amended complaint); Stipulation & Deposition Protocol Order, *Google Play Store*, No. 3:21-md-02981, ECF No. 171 (deposition protocol filed on same day as second amended complaint); Protocol for Phase One Fact & Expert Depositions, *In re Acetaminophen*, No. 1:22-md-03043, ECF No. 435 (deposition protocol filed before the pending motion to dismiss was fully briefed); Pretrial Order No. # 54, *In re Zantac*, No. 9:20-md-02924, ECF No. 2260 (deposition protocol filed on same day as amended short-form complaint).

## III.     CONCLUSION

In terms of whether the parties' deposition protocol proposals incorporate or differ from the position of the JCCP Plaintiffs, it is Defendants' understanding that Plaintiffs' Counsel from the JCCP will be at the hearing to represent and convey their views and positions on these issues. Uber believes that the deposition protocol implemented in the MDL should also be implemented in the JCCP, and that coordination in the two actions will be more efficient and economical for Plaintiffs and Defendants alike. *See* Case Management Order No. 5 at 4, *In re* Stryker, No. 1:17-md-02768, ECF No. 596 ("The parties and the Court desire to minimize the expense and inconvenience of this litigation by, *inter alia*, providing for joint depositions of witnesses within the time limits set forth in this Order in this MDL and the coordinated state court litigations in New Jersey."); Pretrial Order No. 7: Deposition Protocol at 2, *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741 (N.D. Cal. Jan. 10, 2017), ECF No. 103 (noting that MDL/state action coordination "is intended to conserve judicial resources, eliminate duplicative discovery on the

issue of general causation, serve the convenience of the parties and witnesses, and promote the just and efficient conduct of this litigation" and ordering that "discovery obtained in [MDL] proceedings which is used in any state court litigation is subject" to the pre-trial order governing depositions).

Uber respectfully requests that the Court enter its proposed deposition protocol.

DATED:  June 4, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:   */s/ Randall S. Luskey*
　　　RANDALL S. LUSKEY
　　　ROBERT ATKINS

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC