

**Littler Mendelson, PC**
101 Second Street, Suite 1000
San Francisco, CA 94105

**\*Please note new address effective 10/2023.**


Rod M. Fliegel
Shareholder
415.439.6253 direct
415.433.1940 main
415.743.6557 fax
rfliegel@littler.com

June 7, 2024


Magistrate Judge Lisa J. Cisneros
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:** ***In Re: Uber Technologies, Inc., Passenger Sexual Assault Litigation***
**USDC, Northern District of California, Case No. 3:23-MD-03084-CRB**

Dear Judge Cisneros:

Pursuant to this Court's Order dated May 31, 2024 (Dkt. 574), nonparty Checkr, Inc. ("Checkr") respectfully submits this letter to preserve a clear record of its objections to Plaintiffs' subpoena. (Exhs. A & B.) Plaintiffs seek the production of basically <u>every</u> document, including massive amounts of ESI, which may exist at Checkr that in any way mentions "Uber." By rule, Checkr has a right to stand on its objections, and Checkr has elected to exercise that right. Fed. R. Civ. P. 45(d)(2)(B).[1] For avoidance of doubt, nothing stated herein is intended to imply that Checkr is assuming any burden the law imposes on Plaintiffs as the issuing party. Checkr disclaims any such burden.

## I.   <u>PLAINTIFFS' SUBPOENA TO CHECKR</u>

Plaintiffs' subpoena is nothing short of an impermissible blanket demand for <u>all</u> documents that in any way mention "Uber" – <u>and</u> other parties and nonparties included in Plaintiffs' definitions of "Uber" and "Checkr" – since 2009. (Exh. A.) Schedule A to the subpoena has a full page of "Instructions," including how "the terms shall be given their most <u>expansive</u> and <u>inclusive</u> interpretation. . . ." *Id.* (emphasis added.) Schedule A also includes 27 "Definitions," including broad definitions of the key terms "Communication(s)," "Documents," and "Electronic data."

---

[1] *E.g., Ex. Dev. Can. v. E.S.E. Elec.,* No. 17-mc-80003, 2017 WL 2500906, at \*2 (N.D. Cal. June 9, 2017).

Judge Cisneros
**Re:  *In Re: Uber Rideshare Cases***
June 7, 2024
Page 2

Requests 1 and 2 are representative. Request 1 seeks "all communications with Uber and/or Uber's agents, employees, officers, or directors." Request 2 seeks "all documents exchanged with Uber and/or Uber's agents, employees, officers, or directors."  The time period for the requests is from January 1, 2009, to the present.[2]

## II.   FIRST PARTY DISCOVERY

As a nonparty, Checkr is not as familiar with this sprawling litigation as the Court and the parties. Nonetheless, based on, *inter alia*, Checkr's review of the extensive proceedings to date, Checkr's position is that Plaintiffs' sweeping subpoena is premature and otherwise objectionable. Plaintiffs' subpoena seeks documents, including <u>massive</u> amounts of ESI, that Plaintiffs have obtained or can obtain from Defendants (*e.g.*, Defendants' background checks policies, Defendants' contracts with Checkr, billing records of amounts Defendants paid Checkr (including even "cancelled checks"), etc.). Without first even attempting to exhaust party discovery – which is <u>ongoing</u> – Plaintiffs may not shift the immense burden and expense of production from Defendants to Checkr. Summarizing what Checkr can glean from the docket:

- In December 2023, the Court ordered Defendants to produce "all documents Defendants produced to legislative, regulatory, or enforcement entities in connection with government investigations or inquiries within the United States of Uber with respect to sexual assault," and "all documents Defendants produced in any other Uber sexual assault cases . . . and any other cases about the 'Safe Rides Fee.'"[3] Dkt. 175, PTO 5, at 3-4.

- In February 2024, Plaintiffs propounded over 200 requests for the production of documents. Dkt. 563 at 11. Pursuant to PTO 5, Defendants have until September 2024 to substantially complete their production of non-privileged documents. Dkt. 175, at 4.

- In March 2024, Plaintiffs propounded 76 interrogatories and 137 requests for admissions. Dkt. 563, at 15. The final objections/responses are due in late June. Dkt. 588, at 2.

Importantly, there are <u>numerous</u> disagreements between the parties over Defendants' objections, custodians,[4] search terms, redactions, privilege logs, etc. Dkt. 588. The contours of the action also appear to be unsettled (*e.g.*, Defendants' motions to dismiss are pending). Dkts. 383-388. Also, nothing appears in the docket about bellwether trials or selection procedures.

---

[2] Checkr learned that Plaintiffs withdrew Requests 1 and 2 for a different nonparty. As will be discussed in Section II, Plaintiffs <u>refuse</u> to withdraw these same requests regarding Checkr.

[3] In May 2024, Defendants produced documents as required by PTO 5.  Dkt. 563 at 8.

[4] Plaintiffs, it seems, have narrowed their list from 100 to close to <u>80 custodians</u>.  Dkt. 588, at 7 n.3.

Judge Cisneros
**Re:  *In Re: Uber Rideshare Cases***
June 7, 2024
Page 3

## III.    THE JUNE 5, 2024 ZOOM MEETING

On June 5, 2024, Checkr joined a Zoom meeting with the parties' attorneys about the subpoena. Because Checkr started operating in 2014, Plaintiffs' counsel agreed to limit the subpoena to 2014 to the present. This was <u>not</u> a compromise. Plaintiffs' counsel also agreed to forgo requesting all of Checkr's background reports for Defendants. This, too, was <u>not</u> a compromise. Checkr is a "consumer reporting agency" ("CRA") and is subject to the Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681 *et seq.*) and state law. The FCRA prohibits CRAs from providing copies of "consumer reports" to any person without a statutory "permissible purpose." 15 U.S.C § 1681b(a).  A subpoena is legally insufficient. Further, Plaintiffs have no right to private information about tens of thousands of consumers with no connection to the action.

Plaintiffs otherwise refused to withdraw any requests, failed to identify <u>any</u> gaps in Defendants' productions to date, and rejected any cost-shifting/sharing.[5] Counsel for Plaintiffs and Checkr have exchanged e-mails since the Zoom meeting. But, so far, Plaintiffs continue to insist on the production of basically every document, including ESI, which may exist at Checkr that in any way mentions "Uber."

Uber is a large customer for Checkr. The subpoena would sweep in <u>oceans</u> of utterly irrelevant, confidential, proprietary, private, and commercially-sensitive information for the entire time that Checkr has been operating (*e.g.*, about information-gathering for tens of thousands of background checks on consumers with no connection to this action, internal administrative communications, personnel documents for Checkr employees touching the Uber account, internal financial results and reports, generic marketing communications (e.g., monthly newsletters), etc.).

Plaintiffs' offer during the Zoom meeting to limit requests to "unique" documents, without specificity, hardly cures the subpoena's defects because of the immense amount of work that Checkr would have to undertake – at significant expense – to identify the universe of potentially "unique" documents. Plaintiffs offered <u>no</u> rationale for how documents that were never sent to Defendants are "relevant to any party's claim or defense." Plaintiffs thus are flouting the mandate to "take reasonable steps to avoid imposing undue burden or expense" in Rule 45(d)(1).

## IV.    <u>CHECKR'S POSITION</u>

Again, Checkr has exercised its right to stand on its objections, and does not intend to assume Plaintiffs' burden by submitting this letter. Rather, Checkr submits this letter to preserve a clear record regarding its objections, including Checkr's objection that the requests are grossly overbroad and that, at a minimum, Plaintiffs should await Defendants' additional responses and

---

[5] Unhelpfully, counsel for Plaintiffs – while cordial – was unfamiliar with Plaintiffs' requests for the production of documents and Defendants' document productions to date.

Judge Cisneros
**Re:  *In Re: Uber Rideshare Cases***
June 7, 2024
Page 4

productions – and the resolution of the parties' <u>many</u> discovery disputes[6] – and then determine what else, if anything, they still require from Checkr to prosecute their claims. Indeed, "the Ninth Circuit has long held that nonparties subject to discovery requests deserve <u>extra protection</u> from the courts." *In re NCAA Student-Athlete Name & Likeness Licensing Lit.*, No. 09-cv-1967-CW-NC, 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) (citing *U.S v. C.B.S., Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982)); *and see Dart Ind. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) (nomenclature "nonparty" discovery reflects distinct limitations on such discovery).

And courts in this district routinely quash subpoenas when, as here, the issuing party can obtain documents from the opposing party. *See, e.g., Athalonz, LLC v. Under Armour, Inc.*, No. 23-mc-80324-LJC, 2024 WL 628846, at *5-6 (N.D. Cal. Feb. 14, 2024); *Genus Lifesciences Inc. v. Lannett Co., Inc.*, No. 18-cv-07603-WHO, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019); *Ow v. U.S.*, No. 17-cv-00733-SK, 2018 WL 6267839, at *1 (N.D. Cal. June 12, 2018). This is especially true when, as here, the subpoena is so overbroad that it would sweep in massive amounts of <u>irrelevant</u> documents. *See, e.g., Airwair Int'l Ltd. v. Zoetop Bus. Co.*, No. 23-mc-80324-LJC, 2024 WL 628846, at *2 (N.D. Cal. Dec. 23, 2021) (if the documents are not relevant, "any burden at all that might be imposed would be, by definition, an undue burden"). The law also does not require Checkr to expend time and money to sift through massive amounts of ESI to identify privileged information and prepare a detailed privilege log.

In closing, Checkr appreciates the Court's attention to this letter. To be clear, Checkr reserves its rights, privileges, arguments, and objections, including its right to seek cost-shifting/sharing from Plaintiffs under Rule 45(d)(2)(B)(ii), including its attorney's fees.[7]

Respectfully submitted,

Littler Mendelson, P.C.

Rod M. Fiegel
Shareholder

RMF/ma

---

[6] Given the vast scope of the subpoena, similar disputes between Plaintiffs and Checkr would be likely.

[7] Checkr understands that Defendants may submit a letter to this Court regarding Plaintiffs' subpoena. To help ensure a fulsome record, Checkr incorporates any pertinent points raised therein.

**PROOF OF SERVICE**

I, the undersigned, state:

I am employed in the City and County of San Francisco, State of California.  I am over the age of 18 years, and not a party to the within action.  My business address is LITTLER MENDELSON, P.C., 101 Second Street, Suite 1000, San Francisco, CA 94105.

On June 7, 2024, I served the foregoing document(s) described as:

**CHECKR, INC.'S
OBJECTIONS TO THE SUBPOENA FOR DOCUMENTS**

on the interested parties by enclosing a true copy in a sealed envelope addressed as follows:

| | |
|---|---|
| Samantha Hoefs<br>Nigh Goldenberg Raso Vaughn, PLLC<br>60 South 6th Street, Ste. 2800<br>Minneapolis, MN 55402 | *Attorney for Plaintiff*<br><br>T: 612-445-0202<br>Fax: 202-792-7927<br>Email: shoefs@nighgoldenberg.com |
| Michael B. Shortnacy (SBN 277035)<br>SHOOK, HARDY & BACON L.L.P.<br>2049 Century Park East, Ste. 3000<br>Los Angeles, CA 90067 | *Attorney for Defendant*<br>*UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC*<br><br>Telephone: (424) 285-8330<br>Facsimile: (424) 204-9093<br>mshortnacy@shb.com |
| Patrick Oot (Admitted Pro Hac Vice)<br>SHOOK, HARDY & BACON L.L.P.<br>1800 K St. NW Ste. 1000<br>Washington, DC 20006 | *Attorney for Defendant*<br>*UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC*<br><br>Telephone: (202) 783-8400<br>Facsimile: (202) 783-4211<br>oot@shb.com |
| Kyle N. Smith (Pro Hac Vice admitted)<br>Jessica E. Phillips (Pro Hac Vice admitted)<br>PAUL, WEISS, RIFKIND, WHARTON<br>& GARRISON LLP<br>2001 K Street, NW<br>Washington DC, 20006 | *Attorney for Defendant*<br>*UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC*<br><br>Telephone: (202) 223-7300<br>Facsimile:  (202) 223-7420<br>ksmith@paulweiss.com<br>jphillips@paulweiss.com |

☐    **VIA OVERNIGHT MAIL**:  By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

☐    **VIA U.S. MAIL:**  I am readily familiar with Littler Mendelson, P.C.'s practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **VIA PERSONAL DELIVERY**:  I arranged personal delivery of such sealed envelope(s) by hand to the offices of the addressee(s) listed above.

☐    **VIA MESSENGER SERVICE**:  I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed above and providing them to a professional messenger service for service.

**DECLARATION OF MESSENGER**:  I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed above.  For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening; for a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.  At the time of service, I was over 18 years of age.  I am not a party to the above-referenced legal proceeding.  I served the envelope or package, as stated above on June 7, 2024.  I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Dated: _____         _____

                                               Signature of Declarant/Messenger

☒    **VIA ELECTRONIC MAIL:**  I caused the foregoing document(s) to be served electronically on the persons at the electronic notification addresses listed above.

       I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  I further declare that I am employed by a member of the bar of this court at whose direction the service was made.

       Executed on June 7, 2024, at San Francisco, California.

_____
                                        MARI ADRIAÑO

4873-4094-5861.1 / 091435-1534

# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation<br><br>This Document Relates to: All Cases | )<br>)<br>)   Civil Action No.  No. 3:23-md-03084-CRB<br>)<br>)<br>) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                        Checkr, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: shoefs@nighgoldenberg.com<br>275 Battery St, 29th Floor<br>San Francisco CA, 9411-3339 | Date and Time:<br><br>05/08/2024 8:00AM |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____04/16/2024_____

*CLERK OF COURT*

OR

_____          /s/ Samantha Hoefs
_____          _____
*Signature of Clerk or Deputy Clerk*                     *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  ____Plaintiffs____
_____ , who issues or requests this subpoena, are:

Samantha Hoefs, 60 South 6th Street, Minneapolis, MN 55402, shoefs@nighgoldenberg.com, (612) 445-0202

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. No. 3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                      *Server's signature*

                                                 _____
                                                      *Printed name and title*

                                                 _____
                                                      *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
        **(i)** is a party or a party's officer; or
        **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        **(i)** fails to allow a reasonable time to comply;
        **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
        **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        **(i)** expressly make the claim; and
        **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

**Instructions**

The following instructions and definitions apply to each of the Requests set forth below and are deemed to be incorporated therein:

1.  If You make any assumption of fact or law in responding to any Request, state each assumption and the basis for each assumption.

2.  If the response to any Request consists, in whole or in part, of any objection(s), state with specificity the full objection(s) and the particularized basis for each objection. You must also state whether any responsive materials or information are being withheld on the basis of any objection(s). To the extent that You object to any portion of a Request, You must respond to the remaining portion of the Request to which You do not object.

3.  If You object to Request on the basis of any claim of privilege, then You must produce any and all information required by the Privilege Order for this matter.

4.  Each Request is considered continuing. You are required to timely supplement Your responses when appropriate or necessary under the Federal Rules of Civil Procedure to make them correct or complete. If, after responding to these Requests, additional responsive documents become available to You, You are required to produce such additional information.

5.  For purposes of interpreting or construing the scope of these Requests, the terms shall be given their most expansive and inclusive interpretation unless otherwise specifically limited by the language of an individual Request. This includes, without limitation, the following:

    a.  The terms "each," "every," "any," and "all" are synonymous with one another and with "each and every" and "any and all;"

    b.  The connectives "and" and "or" are used inclusively and not exclusively and shall be construed either disjunctively or conjunctively as to require the broadest possible response;

    c.  Construing the singular form of the word to include the plural and the plural form to include the singular;

    d.  Construing the masculine to include the feminine, and vice-versa;

    e.  The use of any tense of any verb shall also include all other tenses of that verb;

    f.  A term or word defined herein is meant to include both the lower and uppercase reference to such term or word.

7.  In construing these requests, You should give effect to the Definitions set forth below. Undefined words and terms shall be given their common meaning. If You are unsure about the definition of a particular term or word, use the definition that You believe to be the most accurate and state that definition in Your response. If, in responding to any of these requests, You encounter any other ambiguity in construing either the request or an instruction, then set forth the matter You deem ambiguous and the construction You use in answering the request.

13.  The relevant time period for these Requests is January 1, 2009 through the present time, unless otherwise specified.

**Definitions**

In these Requests, the following words and terms shall bear the meanings as identified below. For any undefined term, the standard dictionary definition of the term applies.

1.  "Communication(s)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

    a.  correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;

    b.  emails;

    c.  text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;

    d.  messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;

    e.  user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"

    f.  posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;

    g.  voicemails and voice messages;

    h.  any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

3.  "Document" and "Documents" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer-generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media. The definition of DOCUMENTS includes papers, trade letters, envelopes, telegrams, cables, messages, correspondence, memoranda, notes, email, text messages, instant messages, communications on any collaborative system or hub (including but not limited to Google Chat, Slack, uChat, and HipChat), electronic signals, electronic data, active files, deleted files, file fragments, reports, studies, press releases,

comparisons, books, accounts, checks, audio and video recordings, pleadings, testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, lists, logs, publications, notices, diagrams, instructions, diaries, meeting minutes, orders, resolutions, agendas and memorials or notes of oral Communications, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions of drafts thereof, whether used or not. A request for all Documents Concerning a particular subject matter includes within its scope all Communications Concerning that subject matter.

4.    "Driver" means anyone who uses or at any time has used the Uber Application to be connected with Riders for the purpose of providing rides to Riders. Where appropriate, "Driver" shall be interpreted to also include potential or prospective Drivers.

5.    "Driver Screening" refers to anything and everything done to gather information about drivers and to act on that information, which occurs before and is a condition of allowing them to offer Rides.

6.    "Electronic data," "electronic database," "database," and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, computer programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD-ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

7.    "Fare" refers to all the money a Riders is required to pay in connection with a Ride, including but not limited to booking fees, base fares, tolls and surcharges, and surge pricing.

8.    "Identity," Identification," or "Identify" means:

    a.    When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;

    b.    When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;

    c.    When used in reference to a Document, shall mean to state the type of Document, date, author, addressee, recipient, title, its present location, the name and address of

its custodian, and the substance of its contents. In lieu of the foregoing, a copy of the Document may be attached as an exhibit to Your answers; and

    d.    When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

9.    "Lobbying activities" means lobbying contacts and efforts in support of such contacts including preparation and planning activities, research and other background work related in any way to the lobbying activities or lobbying contacts of others. In this context, "Lobbying contact" means any oral or written communication including electronic communication with any Regulator, as herein defined, made on behalf of Uber.

10.    "Media" means any person or entity engaged in disseminating information to the general public through newspapers or other print publication (whether in print or online), radio, television, or other medium of mass communication.

11.    "Person" or "Persons" means any natural person, corporation, company, partnership, proprietorship, association, governmental or nongovernmental entity, agency, organization, group, or any other business entity or association.

12.    "Policy" or "Policies" means all formal and informal policies, practices, guidelines, protocols, procedures, plans, systems, customs, or manners of conducting a specific task that are or were adopted, implemented, considered, or used by You; and for each of the foregoing terms, the methods and means of implementation.

13.    "Regarding," "Referring To," "Refer To," "Reflecting," "Reflect," "Concerning," "Concern," "Relate(s)," "Relate(s) To," "Related To" or "Relating To" are used in their broadest sense and mean anything that, in whole or in part, analyzes, comments upon, concerns, contains, considers, constitutes, contradicts, comprises, deals with, describes, discusses, embodies, evidences, evaluates, indicates, identifies, involves, mentions, memorializes, pertains to, provides, refers to, reflects, regards, relates to, reports on, responds to, reviews, shows, states, summarizes, supports, or is in any way factually, legally, or logically pertinent to or connected with the subject matter or topic in question, either in whole or in part.

14.    "Regulator" means any executive or legislative body of any city, county, municipal, state, or federal government entity in the United States, including legislatures and executive agencies, and any agents, employees, contractors, officers, attorneys, representatives, elected officials, and all others acting, or who have acted, for it and/or on its behalf.

15.    "Ride" refers to transportation in an automobile, provided by a Driver to a Rider and facilitated via the Uber App and Uber Driver App.

16.    "Rider" refers to an individual who uses or at any time has used the Uber App to request a Ride.

17.    "Safety Risk" refers to anything that threatens to injure or harm, or does in fact injure or harm, Riders' physical safety and well-being, including but not limited to risks of kidnapping, sexual assault, sexual harassment, rape, battery, and/or murder.

18.    "Sexual Assault" shall mean physical or attempted physical conduct that is sexual in nature and without the consent of the Rider, including but not limited to all acts addressed in Defendants' taxonomy and Ralliance's Sexual Assault taxonomy.

19.    "Sexual Misconduct" shall mean any and all non-physical conduct (such as verbal or staring) of a sexual nature that is without consent or has the effect of threatening or

intimidating a Rider, including but not limited to all acts addressed in Defendants' taxonomy and Raliance's Sexual Misconduct taxonomy.

20.   "Study" (noun) means a documented research project, analysis, investigation, study, or test that was conducted to identify, predict and/or understand something, and/or to accomplish specific goals.

21.   "Study" (verb) means to intentionally design, conduct, and/or document research, studies, analyses, investigation, and/or testing in order to identify, predict and/or understand something, and/or to accomplish specific goals.

22.   "Uber" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

23.   "Uber App" and "Uber Application" refer to Uber's mobile phone application that is used by Riders to order Rides.

24.   "Uber Driver App" and "Uber Driver Application" refer to Uber's mobile phone application that is used by Drivers to offer Rides.

26.   "Uber" "Defendant," or "Defendants" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

27.   "Checkr, Inc.," "Checkr," "You," or "Your," shall be used interchangeably and refer to the parties to which these requests are directed, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

## Requests for Documents

1.   Please produce all communications with Uber and/or Uber's agents, employees, officers, or directors.

2.   Please produce all documents exchanged with Uber and/or Uber's agents, employees, officers, or directors.

3.   Please produce all documents reflecting payments or contributions made by Uber to CHECKR including, but not limited to, any invoices, letters, cancelled checks, or accounting ledgers.

4.   Please produce all documents relating to work CHECKR has performed on Uber's behalf or at Uber's request relating to sexual assault, sexual misconduct, passenger safety, driver education, or training for Uber employees.

5.   Please produce all documents relating to background checks, monitoring of background checks, or auditing of background checks CHECKR performed on Uber's behalf or at

Uber's request including, but not limited to, any contracts, policies, procedures, correspondence, or payments.

6. Please produce all documents reflecting the scope of work CHECKR was retained to do for Uber.

7. Please produce all documents related to recommendations from CHECKR to Uber regarding how Uber rides can be made safer.

8. Please produce all documents relating to the monitoring or auditing of driver background checks or criminal offenses on Uber's behalf or at Uber's request.

9. Please produce all documents relating Uber's driver deactivation policies or procedures, including agreements, contracts, and statements of work.

10. Please produce all communications with Uber and/or Uber's agents, employees, officers, or directors relating to fingerprinting drivers.

# EXHIBIT B



**Littler Mendelson, PC**
101 Second Street, Suite 1000
San Francisco, CA 94105

**\*Please note new address effective 10/2023.**


Rod M. Fliegel
Shareholder
415.439.6253 direct
415.433.1940 main
415.743.6557 fax
rfliegel@littler.com

May 30, 2024


**VIA U.S. MAIL AND EMAIL (SHOEFS@NIGHGOLDENBERG.COM)**

Samantha Hoefs
Nigh Goldenberg Raso Vaughn, PLLC
60 South 6th Street, Ste. 2800
Minneapolis, MN 55402

**Re:      *In Re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*
          USDC, Northern District of California, Case No. 3:23-MD-03084-CRB**

Dear Counsel:


Please be advised that Littler represents non-party Checkr, Inc. ("Checkr") regarding the Subpoena to Produce Documents, Information, or Objects that Plaintiffs served on April 19, 2024 (the "Subpoena"). Please update your files accordingly. All further communications must be directed to my attention.  Please do not communicate with anyone at Checkr.

<u>**OBJECTIONS TO PLAINTIFFS' SUBPOENA**</u>

**A.      <u>GENERAL OBJECTIONS</u>**

Checkr hereby generally objects to Plaintiffs' Subpoena on the following grounds to the extent that the Subpoena purports to require Checkr to produce extensive documents and information, including extensive electronically stored information ("ESI"), in San Francisco at 8:00 a.m. on Wednesday, May 8, 2024.

**1.      The Subpoena's Overbroad Requests Subject Checkr to Undue Burden**

Plaintiffs' Subpoena is, in effect, a blanket demand for all documents, communications, and ESI exchanged between Checkr and the Defendants, and other parties and non-parties included in the Subpoena's definitions of "Uber" and "Checkr," at any time since January 1, 2009, including but not limited to the background checks for thousands of individuals with absolutely no connection to the litigation in any way, and documents with confidential

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 2

commercial information that are not relevant to any party's claim or defense in the action. Therefore, Checkr objects to the Subpoena as overbroad, unduly burdensome, and not proportional to the needs of the case.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iv) (ordering the district court to quash or modify a subpoena that "subjects a person to undue burden"); *see also generally* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

All the information available to Checkr is equally available to Uber, a party in this litigation, so a third-party subpoena is not justified. *See Realtime Data, LLC v. MetroPCS Texas, LLC,* No. C 12-80130 LHK PSG, 2012 WL 3727304, at *2 (N.D. Cal. Aug. 28, 2012) (refusing to enforce subpoena issued to non-party where same documents were available from party opponent); *Kim v. NuVasive, Inc.,* No. 11CV1370-DMS NLS, 2011 WL 3844106, at *4 (S.D. Cal. Aug. 29, 2011) (quashing a subpoena that "shift[ed] the burden of production from a party to a nonparty" and stating "[t]his circuit does not favor unnecessarily burdening nonparties with discovery requests"); *Calcor Space Facility, Inc. v. Superior Court*, 53 Cal. App. 4th 216, 225 (1997) ("As between parties to litigation and nonparties, the burden of discovery should be placed on the latter only if the former do not possess the material sought to be discovered."). Moreover, to the extent the information is sought to verify the completeness or accuracy of discovery from Uber, there is no reason to believe that Checkr's systems may contain different versions of the same communications and documents. *Cf. Visto Corp. v. Smartner Info. Sys., Ltd.,* Nos. 06-80339 MISC RMW (RS), 06-80352 MISC RMW (RS), 2007 WL 218771, at *3 (N.D. Cal. Jan. 29, 2007) (production from a third party may be compelled if "there is reason to believe that the files of the third party may contain different versions of documents, additional material, or perhaps, significant omissions").

For these reasons, Checkr respectfully objects to, and at this time declines to comply with, the Subpoena.

Checkr notes with regard to the sweeping scope of the Subpoena that Schedule A to the Subpoena sets out a full-page of "Instructions," including how "the terms shall be given their most expansive and inclusive interpretation unless otherwise specifically limited by the language of an individual Request."   (Emphasis added.)   Instruction 13 further indicates that the Subpoena covers a period of more than 15 years, i.e., "January 1, 2009 through the present time, unless otherwise specified."   Schedule A also includes no fewer than 27 "Definitions," including expansive definitions of the terms "Communication(s)," "Document and Documents," "Electronic data," "electronic database," "database," "data," "Identity," Identification," "Identify," "Regarding," "Referring To," "Refer To," "Reflecting," "Reflect," "Concerning," "Concern," "Relate(s)," "Relate(s) To," "Related To," and "Relating To."   The Definitions also include expansive definitions of "Checkr, Inc.," "Checkr," "You," and "Your."

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 3

To help ensure a clear record, Checkr objects to Plaintiffs' instructions, directions, and definitions to the extent they impose or seek to impose burdens greater than those imposed on Checkr by the Federal Rules of Civil Procedure.

**2.      Plaintiffs Failed to Take Reasonable Steps to Avoid Imposing Undue Burden or Expense on Checkr**

Checkr further objects to this Subpoena as Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45 (d)(1).  Plaintiffs can obtain everything they seek from Defendants.  Plaintiffs must first exhaust their effort to obtain discovery from Defendants before imposing the significant burden and expense of responding on non-party Checkr.  *See, e.g., Ow v. U.S.*, No. 17-CV-00733-SK, 2018 WL 6267839, at *1 (N.D. Cal. June 12, 2018) (granting in part motion to quash subpoena for documents that plaintiffs could have obtained directly from defendant).  Accordingly, Checkr respectfully objects to, and at this time declines to comply with, the Subpoena.

**3.      The Subpoena is Not Limited to "Business Records"**

Checkr also objects to the Subpoena as it is not limited to "business records" and improperly seeks the product of Checkr's business, namely, the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever. Furthermore, the Subpoena is so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself.  Accordingly, Checkr respectfully objects to, and at this time declines to comply with, the Subpoena.

**4.      The Subpoena Requests Privileged and Protected Materials**

Checkr also objects to the Subpoena to the extent that it seeks privileged documents and information and/or documents (i.e., documents and information protected by the attorney-client privilege and/or attorney work product doctrine) and information that is subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information.  *See generally* Fed. R. Civ. P. 45(d)(3)(A)(iii). Notably, Instruction 3 in the Subpoena refers to "the Privilege Order for this matter," but does not include any reference to a specific docket number or even date.

The attorney-client privilege and attorney work product are foundational to the practice of law and integral to facilitating candid and confidential discussions between attorneys and their clients. *See Upjohn v. United States*, 449 U.S. 383 (1981). The party – in this case, non-party – asserting the attorney-client privilege and work product doctrine bears the burden of establishing that the privilege applies, and should do so with specificity. *See* Fed. R. Civ. P. 45(e)(2)(A); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1099 (9th Cir. 2007) ("Ordinarily, the party asserting attorney-client privilege has the burden of establishing all of the elements of the

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 4

privilege."); *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) (explaining that a blanket claim of privilege is extremely disfavored).

Plaintiffs' Subpoena so broad and lacking particularity that it either seeks to vitiate Checkr's claims of privilege by requiring a "document dump" or imposes the herculean task of reviewing and providing descriptive narratives for every single document containing attorney-client communications or trial preparation materials over a 15-year period that relate in any way to business Checkr has conducted with Uber. Such an onerous undertaking requires significant time and resources, and cannot be completed in the timeframe set forth in the Subpoena.

The law does not require Checkr to expend substantial time and money to sift through massive volumes of ESI to identify privileged information *and* prepare a detailed, entry-by-entry privilege log. *See, e.g., Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, No. 2:05-cv-01059-KJD-GWF, 2007 WL 1726558, at **6-8 (D. Nev. June 11, 2007) (endorsing a certification in lieu of creating a full privilege log in a case involving a significant number of potentially privileged documents); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y. 2008) ("[Attorney representing plaintiff who is challenging the subpoena] may provide a categorical privilege log rather than a traditional, itemized privilege log […]."); *Lake as Tr. of Richard D. Lake Revocable Living Tr. Dated Aug. 24, 2011 v. Charlotte County Bd. of County. Commissioners*, No. 2:20-CV-809-JLB-NPM, 2021 WL 2351178, at *2 (M.D. Fla. June 9, 2021) (ordering that in lieu of producing a privilege log, the subpoenaed parties could categorically withhold privileged documents if they produced a "certification by both the subpoenaed party and [the plaintiff trustee] that none of the withheld or redacted documents were distributed to or reviewed by anyone other than [the trustee], [the trustee's] counsel, [the subpoenaed individuals], or their respective staffs").

At a minimum, if the Court orders Checkr to produce information, a protective order providing protections against waiver and procedural clawback safeguards under Fed. R. Evid. 502(d) and (e) will be necessary to protect Checkr's privileged information during the course of, and after, this litigation. Without such an order, Checkr is deprived of any relief in the event privileged information is inadvertently disclosed.

For these reasons, Checkr respectfully objects to, and at this time declines to comply with, the Subpoena.

### 5.      The Subpoena Does Not Provide Sufficient Time to Comply

Checkr objects to the Subpoena on the ground that it fails to afford Checkr sufficient time to even attempt to fully comply.  The Subpoena demands full production in San Francisco on May 8, 2024. This amount of time is insufficient considering the overbroad and sweeping scope of the Subpoena.  Fed. R. Civ. P. 45(d)(3)(A)(i).  Accordingly, Checkr respectfully objects to, and at this time declines to comply with, the Subpoena.

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 5

6.      **The FCRA Prohibits Checkr From Providing Consumer Reports**

Checkr is unable to comply with the Subpoena, in part, based on the consumer protection provisions of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Checkr is a "consumer reporting agency" within the meaning of the FCRA. The text of the FCRA unambiguously provides that a consumer reporting agency may only release "consumer reports" to a user with a "permissible purpose" for requesting the reports. 15 U.S.C. § 1681b(a). An ordinary subpoena is legally insufficient. 15 U.S.C. § 1681(b)(A)(1); *FTC Staff Report, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* (July 2011) at p. 42; *Federal Trade Commission Official Staff Commentary on the Fair Credit Reporting Act*, § 604(1) item 1.   Again, the Subpoena is, in effect, a blanket demand for all documents and ESI exchanged between Checkr and the Defendants at any time since January 1, 2009, including the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever.

Accordingly, based on the FCRA and corresponding local law, Checkr respectfully objects to, and at this time declines to comply with, Plaintiffs' Subpoena insofar as it seeks consumer reports.

7.      **The Subpoena Requests ESI that is Unrecoverable Due to a Routine, Good Faith Operation of an Electronic Information System Prior to Checkr's Anticipation or Awareness of the Subpoena or Plaintiffs' Action**

The Subpoena requires the production of ESI dating back over a decade to January 2009.   Some information Plaintiffs seek may have been lost, damaged, altered, or overwritten as the result of Checkr's routine, good faith operation of an electronic system before Checkr could have anticipated or became aware of Plaintiffs' Subpoena or the underlying action.  Fed. R. Civ. P. 37.  Accordingly, to the extent that the Subpoena requests ESI from Checkr that has been lost, damaged, altered, or overwritten, as a part of its routine, good faith operation prior to Checkr could have anticipated or became aware of this Subpoena or underlying action, Checkr cannot comply with the Subpoena.

8.      **The Subpoena Requests Private Personal Information of Third Parties**

As explained above, the Subpoena purports to call for the production of confidential and highly private personal information of thousands of individuals with absolutely no connection to the litigation in any way whatsoever.   *See* Fed. R. Civ. P. 45(d)(3)(A)(iii); *see, e.g., Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990) ("[T]he initiation of a lawsuit does not, by itself, grant plaintiff[] the right to rummage unnecessarily and unchecked through the private affairs of anyone [he] choose[s].").   Checkr further objects that the documents

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 6

requested may contain information protected by the Constitutional right to privacy.[1]   To Checkr's knowledge, none of the individual consumers whose information the Subpoena seeks have provided consent to have their confidential and highly private personal information shared with Plaintiffs.   Disclosure of such information in response to the Subpoena potentially will dispose of the unrepresented consumers' privacy interests in that information without affording them notice or the opportunity to oppose the disclosure.   At a minimum, if the Court orders Checkr to produce such highly private personal information, a protective or confidentiality order will be necessary to protect such information during the course of, and after, the litigation.

Checkr's General Objections are applicable to, and incorporated into, each of Checkr's specific objections set forth below.

## B.    <u>SPECIFIC OBJECTIONS</u>

**1.    Please produce all communications with Uber and/or Uber's agents, employees, officers, or directors.**

Checkr respectfully objects to, and at this time declines to comply with, the Subpoena for the reasons set for above, including more specifically the following:

- the request is overbroad, unduly burdensome, and not proportional to the needs of the case;

- the request seek information that is not relevant to any party's claim or defense in this action;

- Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena";

- the request is not limited to "business records" and improperly seeks the product of Checkr's business (e.g., the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever), and is also so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself;

- the request seeks privileged documents and information and/or documents and information that are subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information;

---

[1]     Article I Section 1 of the California Constitution provides an "'inalienable right' of privacy [that] is a 'fundamental interest' of our society, essential to those rights 'guaranteed by the First, Third, Fourth, Fifth and Ninth Amendments to the U.S. Constitution."   *Board of Trustees v. Super. Ct.*, 119 Cal. App. 3d 516, 524-25 (1981).

Samantha Hoefs
**Re:  _In Re: Uber Rideshare Cases_**
May 30, 2024
Page 7

- the request fails to afford Checkr sufficient time to even attempt to fully comply; and

- the request calls for the production, at least in part, of Checkr's consumer reports, and as such, implicates the FCRA and corresponding local law, and also constitutional and other protections for private information about individual persons.

**2.      Please produce all documents exchanged with Uber and/or Uber's agents, employees, officers, or directors.**

Checkr respectfully objects to, and at this time declines to comply with, the Subpoena for the reasons set for above, including more specifically the following:

- the request is overbroad, unduly burdensome, and not proportional to the needs of the case;

- the request seek information that is not relevant to any party's claim or defense in this action;

- Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena";

- the request is not limited to "business records" and improperly seeks the product of Checkr's business (e.g., the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever), and is also so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself;

- the request seeks privileged documents and information and/or documents and information that are subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information;

- the request fails to afford Checkr sufficient time to even attempt to fully comply; and

- the request calls for the production, at least in part, of Checkr's consumer reports, and as such, implicates the FCRA and corresponding local law, and also constitutional and other protections for private information about individual persons.

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 8

**3.      Please produce all documents reflecting payments or contributions made by Uber to CHECKR including, but not limited to, any invoices, letters, cancelled checks, or accounting ledgers.**

Checkr respectfully objects to, and at this time declines to comply with, the Subpoena for the reasons set for above, including more specifically the following:

- the request is overbroad, unduly burdensome, and not proportional to the needs of the case;

- the request seek information that is not relevant to any party's claim or defense in this action;

- Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena";

- the request is not limited to "business records" and improperly seeks the product of Checkr's business (e.g., the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever), and is also so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself;

- the request seeks privileged documents and information and/or documents and information that are subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information; and

- the request fails to afford Checkr sufficient time to even attempt to fully comply.

**4.      Please produce all documents relating to work CHECKR has performed on Uber's behalf or at Uber's request relating to sexual assault, sexual misconduct, passenger safety, driver education, or training for Uber employees.**

Checkr respectfully objects to, and at this time declines to comply with, the Subpoena for the reasons set for above, including more specifically the following:

- the request is overbroad, unduly burdensome, and not proportional to the needs of the case;

- the request seek information that is not relevant to any party's claim or defense in this action;

- Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena";

Samantha Hoefs
**Re:  _In Re: Uber Rideshare Cases_**
May 30, 2024
Page 9

- the request is not limited to "business records" and improperly seeks the product of Checkr's business (e.g., the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever), and is also so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself;

- the request seeks privileged documents and information and/or documents and information that are subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information;

- the request fails to afford Checkr sufficient time to even attempt to fully comply; and

- the request calls for the production, at least in part, of Checkr's consumer reports, and as such, implicates the FCRA and corresponding local law, and also constitutional and other protections for private information about individual persons.

5.     **Please produce all documents relating to background checks, monitoring of background checks, or auditing of background checks CHECKR performed on Uber's behalf or at Uber's request including, but not limited to, any contracts, policies, procedures, correspondence, or payments.**

Checkr respectfully objects to, and at this time declines to comply with, the Subpoena for the reasons set for above, including more specifically the following:

- the request is overbroad, unduly burdensome, and not proportional to the needs of the case;

- the request seek information that is not relevant to any party's claim or defense in this action;

- Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena";

- the request is not limited to "business records" and improperly seeks the product of Checkr's business (e.g., the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever), and is also so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself;

- the request seeks privileged documents and information and/or documents and information that are subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information;

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 10

- the request fails to afford Checkr sufficient time to even attempt to fully comply; and

- the request calls for the production, at least in part, of Checkr's consumer reports, and as such, implicates the FCRA and corresponding local law, and also constitutional and other protections for private information about individual persons.

**6.    Please produce all documents reflecting the scope of work CHECKR was retained to do for Uber.**

Checkr respectfully objects to, and at this time declines to comply with, the Subpoena for the reasons set for above, including more specifically the following:

- the request is overbroad, unduly burdensome, and not proportional to the needs of the case;

- the request seek information that is not relevant to any party's claim or defense in this action;

- Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena";

- the request is not limited to "business records" and improperly seeks the product of Checkr's business (e.g., the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever), and is also so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself;

- the request seeks privileged documents and information and/or documents and information that are subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information;

- the request fails to afford Checkr sufficient time to even attempt to fully comply; and

- the request calls for the production, at least in part, of Checkr's consumer reports, and as such, implicates the FCRA and corresponding local law, and also constitutional and other protections for private information about individual persons.

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 11

**7.     Please produce all documents related to recommendations from CHECKR to Uber regarding how Uber rides can be made safer.**

Checkr respectfully objects to, and at this time declines to comply with, the Subpoena for the reasons set for above, including more specifically the following:

- the request is vague and ambiguous, overbroad, unduly burdensome, and not and not proportional to the needs of the case;

- the request seek information that is not relevant to any party's claim or defense in this action;

- Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena";

- the request is not limited to "business records" and improperly seeks the product of Checkr's business (e.g., the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever), and is also so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself;

- the request seeks privileged documents and information and/or documents and information that are subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information; and

- the request fails to afford Checkr sufficient time to even attempt to fully comply.

**8.     Please produce all documents relating to the monitoring or auditing of driver background checks or criminal offenses on Uber's behalf or at Uber's request.**

Checkr respectfully objects to, and at this time declines to comply with, the Subpoena for the reasons set for above, including more specifically the following:

- the request is overbroad, unduly burdensome, and not and not proportional to the needs of the case;

- the request seek information that is not relevant to any party's claim or defense in this action;

- Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena";

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 12

- the request is not limited to "business records" and improperly seeks the product of Checkr's business (e.g., the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever), and is also so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself;

- the request seeks privileged documents and information and/or documents and information that are subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information; and

- the request fails to afford Checkr sufficient time to even attempt to fully comply; and

- the request calls for the production, at least in part, of Checkr's consumer reports, and as such, implicates the FCRA and corresponding local law, and also constitutional and other protections for private information about individual persons.

**9.     Please produce all documents relating Uber's driver deactivation policies or procedures, including agreements, contracts, and statements of work.**

Checkr respectfully objects to, and at this time declines to comply with, the Subpoena for the reasons set for above, including more specifically the following:

- the request is vague and ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case;

- the request seek information that is not relevant to any party's claim or defense in this action;

- Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena";

- the request is not limited to "business records" and improperly seeks the product of Checkr's business (e.g., the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever), and is also so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself;

- the request seeks privileged documents and information and/or documents and information that are subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information; and

- the request fails to afford Checkr sufficient time to even attempt to fully comply.

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 13

**10.    Please produce all communications with Uber and/or Uber's agents, employees, officers, or directors relating to fingerprinting drivers.**

Checkr respectfully objects to, and at this time declines to comply with, the Subpoena for the reasons set for above, including more specifically the following:

- the request is overbroad, unduly burdensome, and not and not proportional to the needs of the case;

- the request seek information that is not relevant to any party's claim or defense in this action;

- Plaintiffs failed to heed the mandate in Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena";

- the request is not limited to "business records" and improperly seeks the product of Checkr's business (e.g., the background checks for thousands of individuals with absolutely no connection to the litigation in any way whatsoever), and is also so broad that it improperly encompasses documents and ESI generated by businesses other than Checkr itself;

- the request seeks privileged documents and information and/or documents and information that are subject to a contractual agreement requiring confidentiality and/or that include confidential commercial information;

- the request fails to afford Checkr sufficient time to even attempt to fully comply; and

- the request calls for the production, at least in part, of Checkr's consumer reports, and as such, implicates the FCRA and corresponding local law, and also constitutional and other protections for private information about individual persons.

## C.    RESERVATION OF ALL RIGHTS AND PRIVILEGES

Checkr reserves its right to seek its legal recourse, including an order protecting it from "significant expense resulting from compliance," including, but not limited to, any production-related costs and its reasonable attorney's fees and costs. Fed. R. Civ. P. 45(d)(2)(B)(ii).

Samantha Hoefs
**Re:  *In Re: Uber Rideshare Cases***
May 30, 2024
Page 14


Thank you for your attention to this letter and Checkr's objections.

Sincerely,

Littler Mendelson, P.C.

Rod M. Fliegel
Shareholder


RMF/ma

**PROOF OF SERVICE**

I, the undersigned, state:

I am employed in the City and County of San Francisco, State of California.  I am over the age of 18 years, and not a party to the within action.  My business address is LITTLER MENDELSON, P.C., 101 Second Street, Suite 1000, San Francisco, CA 94105.

On May 30, 2024, I served the foregoing document(s) described as:

**CHECKR, INC.'S
OBJECTIONS TO THE SUBPOENA FOR DOCUMENTS**

on the interested parties by enclosing a true copy in a sealed envelope addressed as follows:

| | |
|---|---|
| Samantha Hoefs<br>Nigh Goldenberg Raso Vaughn, PLLC<br>60 South 6th Street, Ste. 2800<br>Minneapolis, MN 55402 | *Attorney for Plaintiff*<br><br>T: 612-445-0202<br>Fax: 202-792-7927<br>Email: shoefs@nighgoldenberg.com |
| Michael B. Shortnacy (SBN 277035)<br>SHOOK, HARDY & BACON L.L.P.<br>2049 Century Park East, Ste. 3000<br>Los Angeles, CA 90067 | *Attorney for Defendant*<br>*UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC*<br><br>Telephone: (424) 285-8330<br>Facsimile: (424) 204-9093<br>mshortnacy@shb.com |
| Patrick Oot (Admitted Pro Hac Vice)<br>SHOOK, HARDY & BACON L.L.P.<br>1800 K St. NW Ste. 1000<br>Washington, DC 20006 | *Attorney for Defendant*<br>*UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC*<br><br>Telephone: (202) 783-8400<br>Facsimile: (202) 783-4211<br>oot@shb.com |
| Kyle N. Smith (Pro Hac Vice admitted)<br>Jessica E. Phillips (Pro Hac Vice admitted)<br>PAUL, WEISS, RIFKIND, WHARTON<br>& GARRISON LLP<br>2001 K Street, NW<br>Washington DC, 20006 | *Attorney for Defendant*<br>*UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC*<br><br>Telephone: (202) 223-7300<br>Facsimile:  (202) 223-7420<br>ksmith@paulweiss.com<br>jphillips@paulweiss.com |

☐ **VIA OVERNIGHT MAIL**:  By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

☒ **VIA U.S. MAIL:**  I am readily familiar with Littler Mendelson, P.C.'s practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **VIA PERSONAL DELIVERY**:  I arranged personal delivery of such sealed envelope(s) by hand to the offices of the addressee(s) listed above.

☐ **VIA MESSENGER SERVICE**:  I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed above and providing them to a professional messenger service for service.

**DECLARATION OF MESSENGER**:  I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed above.  For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening; for a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.  At the time of service, I was over 18 years of age.  I am not a party to the above-referenced legal proceeding.  I served the envelope or package, as stated above on May 30, 2024.  I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Dated: _____          _____

                                                      Signature of Declarant/Messenger

☒ **VIA ELECTRONIC MAIL:**  I caused the foregoing document(s) to be served electronically on the persons at the electronic notification addresses listed above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  I further declare that I am employed by a member of the bar of this court at whose direction the service was made.

Executed on May 30, 2024, at San Francisco, California.

_____
                                 MARI ADRIANO

4879-6840-3130.2 / 091435-9011

**Adriano, Mari**

---

| | |
|---|---|
| **From:** | sfcourt@nationwidelegal.com |
| **Sent:** | Thursday, May 30, 2024 4:21 PM |
| **To:** | Adriano, Mari |
| **Subject:** | Proof of Delivery on control number SF207929 |

[EXTERNAL E-MAIL]


Dear Mari Adriano,

Your 036 - MAIL SERVICES is now complete.

Control #: SF207929
Reference #: 091435.1534
Case #: 3:23-MD-03084-CRB
Plaintiff: Uber Technologies, Inc., Passenger Sexual Assault Litigation
Defendant:
Document(s): OBJECTIONS TO PLAINTIFFS' SUBPOENA;

Delivery Address:
Nigh Goldenberg Raso Vaughn, PLLC/Samantha Hoefs
60 South 6th Street, Ste. 2800 2800
Minneapolis, MN 55402

Date: 5/30/2024
Time: 4:20 PM

Signed by: MAILED OUT

If you have requested a Proof of Service, a signed PDF of the Proof of Service will follow shortly.

**Adriano, Mari**

---

**From:**            sfcourt@nationwidelegal.com
**Sent:**            Thursday, May 30, 2024 4:21 PM
**To:**              Adriano, Mari
**Subject:**         Proof of Delivery on control number SF207932


[EXTERNAL E-MAIL]


Dear Mari Adriano,

Your 036 - MAIL SERVICES is now complete.

Control #: SF207932
Reference #: 091435.1534
Case #: 3:23-MD-03084-CRB
Plaintiff: Uber Technologies, Inc., Passenger Sexual Assault Litigation
Defendant:
Document(s): OBJECTIONS TO PLAINTIFFS' SUBPOENA;

Delivery Address:
SHOOK, HARDY & BACON L.L.P./Michael B. Shortnacy (SBN 277035)
2049 Century Park East, Ste. 3000 3000
Los Angeles, CA 90067


Date: 5/30/2024
Time: 4:21 PM

Signed by: MAILED OUT

If you have requested a Proof of Service, a signed PDF of the Proof of Service will follow shortly.

## Adriano, Mari

**From:** sfcourt@nationwidelegal.com
**Sent:** Thursday, May 30, 2024 4:22 PM
**To:** Adriano, Mari
**Subject:** Proof of Delivery on control number SF207937

[EXTERNAL E-MAIL]

Dear Mari Adriano,

Your 036 - MAIL SERVICES is now complete.

Control #: SF207937
Reference #: 091435.1534
Case #: 3:23-MD-03084-CRB
Plaintiff: Uber Technologies, Inc., Passenger Sexual Assault Litigation
Defendant:
Document(s): OBJECTIONS TO PLAINTIFFS' SUBPOENA;

Delivery Address:
SHOOK, HARDY & BACON L.L.P./Patrick Oot (Admitted Pro Hac Vice)
1800 K St. NW Ste. 1000 1000
Washington DC, DC 20006

Date: 5/30/2024
Time: 4:22 PM

Signed by: MAILED OUT

If you have requested a Proof of Service, a signed PDF of the Proof of Service will follow shortly.

**Adriano, Mari**

| | |
|---|---|
| **From:** | sfcourt@nationwidelegal.com |
| **Sent:** | Thursday, May 30, 2024 4:24 PM |
| **To:** | Adriano, Mari |
| **Subject:** | Proof of Delivery on control number SF207939 |

[EXTERNAL E-MAIL]


Dear Mari Adriano,

Your 036 - MAIL SERVICES is now complete.

Control #: SF207939
Reference #: 091435.1534
Case #: 3:23-MD-03084-CRB
Plaintiff: Uber Technologies, Inc., Passenger Sexual Assault Litigation
Defendant:
Document(s): OBJECTIONS TO PLAINTIFFS' SUBPOENA;

Delivery Address:
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP/Kyle N. Smith (Pro Hac Vice admitted
2001 K Street, NW
WASHINGTON DC, DC 20006

Date: 5/30/2024
Time: 4:23 PM

Signed by: MAILED OUT

If you have requested a Proof of Service, a signed PDF of the Proof of Service will follow shortly.