

Sent from: New York Office

June 7, 2024

<u>Via ECF</u>
Magistrate Judge Lisa J. Cisneros
Northern District of California
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102

    Re: *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*
        Case No. 3:23-md-03084-CRB

Dear Judge Cisneros:

On December 28, 2023, Judge Breyer issued Pretrial Order No. 5, ordering that the parties shall endeavor to complete Defendants' productions of non-privileged, responsive documents in response to Plaintiffs' First Set of Requests for Production by September 1, 2024. ECF 175. Pursuant to Pretrial Order No. 8 (ECF 323) the Parties respectfully submit this joint letter to address Uber's position in the May 24, 2024 Joint Case Management Statement (ECF 563) that Uber "can meet the current September 1, 2024 substantial completion deadline outlined in using the current set of 29 custodians and operative search terms (also agreed in the JCCP many months ago), but that deadline will need to be changed if it is required to include additional search terms and custodians."

I.    **Plaintiffs' Position**

Uber attempts to modify PTO 5 and skirt its obligation to substantially complete production by September 1. Uber's position that it will only produce documents using search terms selected in the JCCP (which MDL Plaintiffs had no input in identifying) for a list of 29 custodians that MDL Plaintiffs likewise had no input in selecting, does not comply with PTO 5. Indeed, Judge Breyer already rejected Uber's argument that JCCP discovery should proceed before MDL discovery—Uber simply seeks a second bite at the apple. *See* ECF 76 at pp. 10, 21-22; PTO 5. Uber's failure to negotiate in good faith with respect to PTO 5 undermines PTO 5's substantial completion deadline and does not comply with PTO 5, the Court's ESI Order, or the Federal Rules. Accordingly, Plaintiffs request the Court's assistance in resolving this dispute.[1]

    A.    **Uber Must Produce Documents for the Custodians Most Likely to have Relevant Information.**

Although Uber is required to investigate and identify custodians most likely to possess discoverable information responsive to Plaintiffs' requests,[2] Uber instead repurposed the custodian

---

[1] Declaration of Roopal P. Luhana, Ex. A, ¶ 3.; *see also,* Declaration of Marlene J. Goldenberg, Ex. C.
[2] *See, e.g.*, ESI Order (ECF 524 at pp. 4-5); Fed. R. Civ. P. 26; Guidelines for the Discovery of Electronically Stored Information (*available at* https://www.cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-

list negotiated in the JCCP – all but one of which JCCP plaintiffs identified specific to JCCP requests. *See* Declaration of Walt Cubberly, attached as Ex. B, ¶ 9. According to Uber, a search of just these 29 custodians – further limited to only search terms identified in the JCCP – meets PTO 5's substantial completion requirement. Plaintiffs disagree. Under this District's guidance on ESI Discovery, Uber has a good faith obligation to identify relevant custodians. Indeed, it is in the best position to do so as the party with superior knowledge as to corporate organization, employee hierarchy and work assignments. *See Robinson v. Bay Club Los Angeles, Inc.*, 2021 WL 4706705, at *2 (C.D. Cal. Jul. 28, 2021) (noting "[defendant] cannot simply re[ly] on Plaintiff to propose custodians as [defendant] likely has superior knowledge as to which of its employees have relevant communications"). This obligation cannot be met by mechanical duplication of custodians from one case to another, as it would not be tailored to ensure relevant discovery to this litigation.

Moreover, Uber's proposal to limit substantial completion to only 29 custodians is glaringly deficient. Through Plaintiffs' own research and investigation there are *at least* 50 additional custodians that should be added. Tellingly, if Uber believed that its 29 custodians were the most relevant in the entire litigation with responsive discovery, it would have placed them on litigation hold as early 2013 (when it knew of the sexual assaults occurring on its platform), or at the very least when the JCCP Litigation began. Yet, the majority of the 29 custodians (18 of 29) were not placed on a sexual assault litigation hold until July 2023 or later. Ex. A ¶ 21. In fact, only two of the 29 have pre-2018 litigation holds related to sexual assault. *Id.* Noticeably absent from the list of 29 are 61 other custodians Uber put on litigation hold related to sexual assault prior to 2018 (however, Plaintiffs' list includes 13 of these custodians). *Id.* at 16, 21. Thus, under Uber's framework, it would search the custodial files of just two employees who were on ligation hold prior to 2018 (a timeframe at the heart of this case). This comes nowhere near the substantial completion contemplated by the Court. Thus, Plaintiffs request that Uber be compelled to search and produce relevant documents from 50 custodians identified by Plaintiffs, as well as the 29 identified by Uber, to be completed by September 1 as contemplated by PTO 5.[3]

The same reasoning applies to Uber's unreasonable attempt to limit substantial completion to just a subset of search terms (those identified in the JCCP), as opposed to the full search terms negotiated in and relevant to this litigation. Uber should be required to utilize the full set of search terms negotiated in this MDL.

### B. Uber's Proposal is Prejudicial and Not Proportionate to the Needs of the Case.

Between the MDL, JCCP, and cases on appeal, at least a thousand women with common allegations have filed claims against Uber, which is only expected to grow.[4] Producing documents for just Uber's proposed 29 custodians does not scratch the surface of what is necessary here for Uber to comply with the Federal Rules and PTO 5 for three primary reasons: (1) Uber's belated litigation holds; (2) Uber's document destruction policies; and (3) Uber's inability to produce contemporaneous hyperlinked documents on scale. Alone, each of these is concerning; together, they place Plaintiffs at a severe disadvantage.[5]

In response to concerns Plaintiffs raised regarding Uber's failure to preserve evidence, Uber told the Court that it has approximately 15,700 custodians on litigation hold, at least 5,500 of which are related to this litigation. *See* ECF 190 at p. 3. It does not indicate good faith to suggest that just 29 custodians meet Uber's discovery obligations where nearly 200 times that number of employees have been under legal hold related to sexual assault. The dates that the litigation holds

---

1-2015.pdf); Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored information (*available at* https://www.cand.uscourts.gov/filelibrary/1118/ESI_Checklist-12-1-2015.pdf).

[3] Plaintiffs reserve the right to seek additional custodians or search terms after receiving responsive documents.

[4] In consolidated litigations, the proportionality arguments shifts towards producing a greater number of documents given the greater number of plaintiffs. Uber admits this. (ECF 244 at 27-2; 35-36).

[5] Uber's inability to produce documents along with the contemporaneous version of any documents attached by hyperlink, as well as Uber's use of both TAR and search terms will further reduce the pool of responsive documents. In fact, Uber's ESI expert admits that typically, to achieve the best results, TAR would be run on its own on the entire document collection, not a collection pre-culled using search terms. ECF 261 at 9.

were entered accentuates the insufficiency of just 29 custodians. Nearly 5,100 of the sexual assault litigation holds were not placed until 2023 or later and, as mentioned above, only 63 custodians were placed on sexual assault hold prior to 2018. Ex. A, ¶ 21. Even Travis Kalanick, the former Uber CEO from 2009-2014 who is key to the allegations here, was not placed on sexual assault litigation hold until November 29, 2023. *Id*. This significantly limits Plaintiffs' ability to get relevant discovery for the necessary time period with the limited custodians that Uber has identified. Unfortunately, it will take many more custodians here to address Plaintiffs' allegations in light of these facts, requiring potentially three to four custodians for every one custodian typical in other cases to paint a complete picture of what has happened at Uber. This litigation is national in scope and spans 14+ years with serious allegations about Uber's inadequate background checks and safety measures resulting in tens of thousands of passengers being sexually assaulted by Uber's drivers including hundreds of plaintiffs. Moreover, in light of Uber's turnover, the limited custodians Uber has chosen can hardly meet its obligations under PTO 5 and the Federal Rules.

Plaintiffs' concerns about Uber's evidence preservation are underscored by Uber's document destruction policies. Ex. A, ¶ 24. For example, from September 2015 to January 2023, Uber had a policy of deleting e-mails after six months, and only since 2023 has extended that time period to 24 months.[6] *Id*. Further, as of January 31, 2023, Uber had deleted all Slack messages older than 90 days. *Id*. Prior to using Slack, Uber had similar chat communication deletion policies, some as short as 7 days. *Id*. Due to these policies, a large quantity of evidence has already been destroyed—and these are just the policies Uber has admitted to. Based on a document filed in another other litigation, Plaintiffs expect to learn in discovery that additional Uber policies were aimed at avoiding discovery and preventing evidence from being created at all. *Id*., ¶ 25.

### C.   Plaintiffs' Request is Not Overly Burdensome to Uber.

Uber has not substantiated any burden argument on this dispute.[7] *See In re XF-TRW Airbag Control Units Prod. Liab. Litig.*, 2022 WL 19425956, at *3 (C.D. Cal. Jul. 25, 2022) ("party who resists discovery has the burden to show discovery should not be allowed" by "clarifying, explaining, and supporting its objections"); *Debeaubien v. California*, 2021 WL 1616111, at *2 (E.D. Cal. Apr. 26, 2021) (the party opposing discovery on burden grounds bears the obligation to provide sufficient detail in terms of time, money and procedure required to produce requested documents). Nor could it prevail on such argument. The overwhelming majority of Uber's custodians have been negotiated in the JCCP for approximately six months. Ex. B, ¶ 7. Therefore, Uber should have been collecting and reviewing documents for those custodians for six months. Moreover, Uber knew that its document production for this MDL would not be limited to the selected JCCP custodians using the JCCP search terms.

### D.   Uber's Failure to Meet and Confer in Good Fatih

Uber agreed to the Milestones without any caveats regarding custodians or search terms. Ex. A at ¶ 15. However, two months into the process, Uber changed course and announced that with respect to the September 1 deadline, it will only produce documents using search terms and custodians on which Plaintiffs have had no input. *Id*. at ¶ 19. This was particularly surprising given Uber had been continuously representing its intention to meet the Milestones, including a May 20 deadline for a final meet and confer and a conferral period of May 10 through 21. *Id*. If Uber truly can only produce for these custodians, Uber knew that from the outset of discussions in March. Yet Uber agreed to the Milestones so that Plaintiffs would agree to a significant extension of time. If Uber needed more information from Plaintiffs, Uber had more than three weeks to ask for it from the time Plaintiffs provided their list on May 3 to the time Uber announced to the Court on

---

[6] On January 16, 2024, Plaintiffs learned that Uber could not locate a specific policy that was in place prior to the September 1, 2015 date, and therefore believes that all emails older than March 2015 would have been typically automatically deleted.

[7] Uber portrays Plaintiffs' proposal of 50 custodians as burdensome, citing a declaration from Uber's ESI vendor that Uber first provided Plaintiffs on June 7, 2024. Plaintiffs have not had the opportunity to fully review or discuss its content with Plaintiffs' vendor, however, these statements are unsupported speculation as to the number of custodians in other MDLs or the potential number of documents for Plaintiffs' 50 custodians.

May 24 that it would only use its own custodians and search terms. Still today, Uber has not identified any additional information that it, the party with superior information about these custodians and their documents, seeks from Plaintiffs—even in this letter. *Id*. at ¶ 18. Contrary to Uber's attempts to shift the blame to Plaintiffs, Plaintiffs have met all agreed-upon Milestones and nothing unanticipated has occurred to prevent Uber from upholding its commitment and obligation to *substantially complete* production by September 1. *Id*. at ¶¶ 18-20, 22-23 Ex. C at ¶¶ 3-6.

### II.     Uber's Position

Plaintiffs unreasonably demand 50 yet-to-be-identified custodians of Plaintiffs' choosing (in *addition* to the 29 custodians Uber proposes, most of whom are already part of a review, production, and deposition priority agreement in the JCCP). Plaintiffs walked away from the negotiation table without ever engaging in any discussion about why Uber's proposed custodians are inadequate or why Plaintiffs' proposed custodians are relevant, proportional, and non-duplicative. Conversely, the custodians in the JCCP were carefully chosen, with consideration for what would be relevant, rational, and reasonable. This Court should reject Plaintiffs' unilateral and unsupported fishing expedition, and initially limit the custodians to align with those proposed by Uber (inclusive of those negotiated in the JCCP).

Plaintiffs' claims in the JCCP are nearly identical to those in the MDL, and thus aligning the custodians logically follows. This would also facilitate the coordination of the JCCP and MDL, and Uber could reasonably expect to substantially complete productions by the September 1 deadline proposed by Plaintiffs, which the Court adopted as a part of PTO 5. Plaintiffs inexplicably cite PTO 5, the broad scope of Uber's legal holds, and the production of hyperlinked documents as a basis to support the demand for 50 more custodians. What is compelling, however, is the scope of custodians long negotiated with the JCCP Plaintiffs' counsel–counsel who are also on the leadership of this MDL. These negotiated and litigated custodians should be the baseline for this Court to meet the requirements of the rules governing this dispute, Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C) and 26(g), all designed to define the scope of discovery and prevent cumulative efforts.

#### A.     Plaintiffs' Refusal to Negotiate on Custodians

In agreeing to discovery milestones that included an 11-day conferral period to finalize custodians and search terms, Uber expected those conferrals to be collaborative engagements to discuss why custodians proposed by both sides are appropriate and proportional, as contemplated by the ESI Protocol and the District's guidance on ESI Discovery. This expectation also aligns with Judge Schulman's urging as to how the JCCP parties should proceed to tackle this very process. Informal Discovery Conference Transcript, May 16, 2024, at 51 (Ex. D). Unfortunately, the process in the MDL was not that. At every turn, Plaintiffs refused Uber's offers to engage in discussions about the work duties, titles, and reasons why individual custodians might have relevant (or duplicative) information. Plaintiffs flatly refused to discuss Uber's reasoning for its 29 proposed custodians. *See* Shortnacy Decl. (Ex. E). Nor did Plaintiffs constructively engage in identifying which custodians Plaintiffs propose may be better than Uber's proposed custodians, or fill a perceived gap in thematic coverage of Plaintiffs' 202 Requests for Production. Uber later learned, on May 30, the reason for this: Plaintiffs always intended these negotiations to be one-sided and ultimately fail so they could seek judicial intervention. *See id.* Plaintiffs never intended to evaluate, for example, whether a custodian proposed by Plaintiffs and a custodian proposed by Uber may be duplicative, and then discuss which of those custodians the Parties could agree to select to achieve reasonable compromise and yield proportional, discoverable information.

A *responding* party is generally entitled to select the custodians most likely to possess responsive information, and a *requesting* party seeking production of additional custodial data

bears the burden of demonstrating that the requested additional custodians "possess uniquely relevant information that is not available from the sources already designated."[8] But Plaintiffs made no attempt to meet their burden to show that any one of the 100, let alone 50, of their unilateral choices may possess uniquely relevant information. *See* Ex. E, ¶¶ 6-11. Plaintiffs did not mention a single one of their custodians by name or role during meet-and-confers. *Id.* Instead, Plaintiffs repeatedly asked for *Uber's* position on *Plaintiffs'* proposed custodians, and, in those discussions, Uber responded that some of Plaintiffs' custodians by role were inappropriate, such as custodians employed outside of Uber's Rides business (e.g., Postmates) or with a scope of responsibility primarily outside the United States. *Id.*, ¶ 8. But Plaintiffs did not reciprocate, and instead ran to the Court to demand a large, arbitrary number of custodians that Plaintiffs want to unilaterally choose for opaque reasons without any discussion between the Parties regarding the merits of a single specific one.

### B. Uber's Proposed Custodians are Relevant, Reasonable, and Proportional to the Needs of the Case

Even though Plaintiffs want to unilaterally select almost two-thirds of the custodians in this case, Plaintiffs and Uber appear to agree that Uber, the responding party, is in the best position to identify relevant custodians.[9] As Uber has repeatedly explained to Plaintiffs, Uber carefully assessed the roles and responsibilities of current and former Uber employees for the time period relevant to this litigation, to ensure qualitative coverage for Plaintiffs' requests for production and other written discovery over a relevant time scope. For example, Uber's list contains an Uber Executive Leadership Team member and SVP for customer support, as well as the Senior Program Leader for Safety Support, who plays a key role in maintaining relevant policies and procedures at Uber. Additionally, two custodians who supervised the development and implementation of rider safety measures are included. Uber's proposed custodians include every head of Uber's Rides business over time,[10] as well as custodians covering key women's safety and data-science-related roles. Uber's independent investigation resulted in the selection of additional custodians, including some not proposed by JCCP Plaintiffs, to reflect the broader geographic scope of the MDL and the discovery propounded by MDL Plaintiffs.

Furthermore, many of "JCCP Plaintiffs'" proposed custodians actually originated from Uber. After Plaintiffs took the deposition of an Uber employee regarding Uber's structure and personnel, Plaintiffs requested 73 new potential custodians. Smith Decl., ¶ 5 (Ex. F). Ten custodians of the JCCP's 26 custodians, and 12 of Uber's 29 proposed custodians in this MDL, were first identified as potential custodians after this deposition. *Id.*, ¶ 10. Plaintiffs here would have the Court ignore Uber's previous input into custodians relevant to a nearly identical set of claims.

---

[8] *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282213, at *1 (N.D. Cal. Nov. 14, 2021); *see also, e.g.*, Weinstein v. Katapult Grp., Inc., 2022 WL 4548798, at *4 (N.D. Cal. Sept. 29, 2022); *Handloser v. HCL Am., Inc.*, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018); *Forth Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013).
[9] *See, e.g.*, Weinstein, 2022 WL 4548798, at *4; *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282213, at *1; *Servicios Funerarios GG v. Advent Int'l*, 2023 WL 7332836 (D. Mass. Nov. 7, 2023); *Firefighters' Retirement Sys. v. Citco Grp. Ltd.*, 2018 WL 276941 (M.D. La. Jan. 3, 2018); *see also The Sedona Principles*, 19 Sedona Conf. J. 1, Principle 6, 118-24 (3d ed. 2018).
[10] *Id.*, at 286.

Lastly, Plaintiffs' stated concerns about supposed "preservation issues," based on a mischaracterization of legal holds and an unverified letter containing unsupported allegations, are as wrong as they are belied by the sheer volume of data collected in this case from Uber's proposed 29 custodians (who, after de-duplication, have on average over 884,000 documents in their custodial files–a far cry from "incomplete" or "missing" files). Brown Decl., ¶ 7 (Ex. G). Uber, as Plaintiffs note, applies legal holds broadly. A legal hold preserves a custodian's data regardless of the nature of the matter that gave rise to the hold.[11] For example, Travis Kalanick, as Plaintiffs know, has been subject to multiple legal holds starting on Dec. 19, 2014. Furthermore, the collection currently comprises over 25.6 million documents, almost half of which pre-date 2018, despite Plaintiffs' purported concern about pre-2018 documents. *See id.* at ¶ 7 fn 1. Despite this significant volume of documents, Uber has previously committed that it is prepared to substantially complete productions from these custodians by September 1.

At the same time, Uber has repeatedly explained the onerous burden inherent in adding numerous custodians and broad search terms, in terms of cost, time to review, and the impact that would have on the case schedule as a whole and on coordination with the JCCP.[12] For instance, adding 50 more custodians would result in an estimated post-processing collection of over 69 million documents. Ex. G, ¶ 8. Plaintiffs' latest set of proposed search terms would pull over 50 million of those documents into the review population. *Id.* at ¶ 11. Collecting, processing, reviewing, and producing that enormous volume of data by September 1, 2024 is not feasible. *See id.* at ¶¶ 6, 8, 11, 15, 17-21.[13] Moreover, the costs for processing and hosting that amount of data would be approximately $10 million for just one year–not even taking into account the costs of collection and review. *Id.* at ¶ 22. There is no basis for permitting Plaintiffs to pile this burden onto Uber, with no showing of relevance, regardless of production deadlines.

---

[11] *See* Ex. D, ¶ 11.
[12] Plaintiffs' blanket assertion that consolidated litigations require "a greater number of documents" is not correct. And in any event, does not justify the extraordinary discovery burden Plaintiffs demand here. Further, Uber made no such admission, as the transcript reflects. *See supra*, fn 7.
[13] Plaintiffs are simply incorrect to believe that Uber should have assumed the risk and massive expense of pre-collecting, processing, and searching over 100 custodians' data before agreement between the Parties on the scope of discovery or guidance from the Court. *See, e.g.*, *Rusoff v. Happy Grp., Inc.*, 2023 WL 114224, at *8 (N.D. Cal. Jan. 5, 2023).

Sincerely,

By: */s/ Sarah R. London*
Sarah R. London
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiff*

By: */s/ Michael B. Shortnacy*
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

By: */s/ Randall S. Luskey*
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
rluskey@paulweiss.com

KYLE N. SMITH (Pro Hac Vice admitted)
ksmith@paulweiss.com
JESSICA E. PHILLIPS (Pro Hac Vice admitted)
jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

PATRICK OOT (Admitted Pro Hac Vice)
oot@shb.com
**SHOOK, HARDY & BACON L.L.P.**
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

*Attorneys for Defendants*

Encls.

cc: All counsel of record via ECF