# EXHIBIT A

[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>All Cases | No. 3:23-md-03084-CRB<br><br>**DECLARATION OF ROOPAL P. LUHANA IN SUPPORT OF PLAINTIFFS' PTO 8 LETTER BRIEF REGARDING CUSTODIAL FILES** |

I, Roopal P. Luhana, declare and state as follows:

1. I am an attorney and partner at Chaffin Luhana LLP, counsel for Plaintiffs and Court-appointed Co-Lead Counsel in this action. I am a member in good standing of the State Bars of New York, New Jersey, Connecticut, and Pennsylvania, and am admitted *pro hac vice* in this coordinated action. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2. I submit this Declaration in support of Plaintiffs' PTO 8 Letter Brief regarding Custodial Files.

3. On December 28, 2023, Judge Beyer issued Pretrial Order No. 5 (ECF 175), ordering that the parties shall endeavor to complete Defendants' productions of non-privileged, responsive documents in response to Plaintiffs' First Set of Requests for Production by September 1, 2024. Plaintiffs raise this dispute with the Court under the process set forth by

Pretrial No. 8 (ECF 323) to address Uber's position in the May 24, 2024 Case Management Statement (ECF 563) that Uber can only meet the current September 1, 2024 substantial completion deadline outlined if it restricts discovery to the of 29 custodians it has proposed here (28 of which were negotiated in the JCCP) and using the search terms agreed upon in the JCCP, and that it will not consider any of MDL plaintiffs' proposed search terms or custodians.

4. Despite Uber's position in the Case Management Statement and although Plaintiffs indicated to Uber that Plaintiffs were using the PTO 8 process to raise this issue with the Court, Plaintiffs have nonetheless continued to attempt to meet and confer regarding Plaintiffs' selection of custodians and search terms, including a proposal that Uber produce documents for 50 custodians of Plaintiff's choosing. See Ex. 3 at 1-3.

5. A true and accurate copy of the Parties' correspondence occurring between March 22 and April 11, 2024 regarding Uber's responses to Plaintiffs' First Request for Production is attached hereto as **Exhibit 1**.

6. A true and accurate copy of the Parties' correspondence occurring between April 19 and May 13, 2024 regarding Uber's responses to Plaintiffs' First Request for Production is attached hereto as **Exhibit 2**.

7. A true and accurate copy of the Parties' correspondence occurring between May 16 and June 6, 2024 regarding Uber's responses to Plaintiffs' First Request for Production is attached hereto as **Exhibit 3**.

8. A true and accurate copy of Uber's rationale supporting Uber's custodian selections, provided to Plaintiffs on May 20, 2024, is attached hereto as **Exhibit 4**.

9. A true and accurate copy of Plaintiffs' rationale supporting Plaintiffs' preliminary proposed custodian selections, provided to Uber on May 23, 2024, is attached hereto as **Exhibit 5**.

10. Plaintiffs served their First Requests for Production on February 28, 2024, consisting of 202 Requests.

11. On March 22, 2024, counsel for Uber requested that counsel for Plaintiffs agree to extend Uber's deadline to respond to Plaintiffs First Requests for Production by 60 days, to May 29, 2024. Ex. 1 at p. 12. Plaintiffs agreed to an extension of 30 days contingent upon meeting certain milestones regarding custodians and search terms intended to ensure efficiency in the discovery process and preserve the September 1 substantial completion deadline for Uber's document production, as set by Pretrial Order No. 5 (ECF. 175). *Id*. at p. 11. Uber continued to insist on a 60-day extension. *Id*. at p. 10. After meeting and conferring on March 26, 2024, Plaintiffs indicated that they would consider the 60-day extension contingent upon setting milestones to prevent delay. Plaintiffs proposed specific milestones including the following:

(1) Uber produce a custodian list by March 29;

(2) the Parties exchange search terms by April 5;

(3) Plaintiffs propose custodians by April 5;

(4) Uber to identify a final list of custodians for which it would produce documents by April 12;

(5) A final meet and confer regarding search terms and custodians would occur by April 29; and

(6) Any remaining dispute over search terms or custodians was to be submitted to the Court by May 1.

*Id*. at pp. 4-6.

12. Although the Parties met and conferred on April 5, Uber did not provide their position on Plaintiffs' March 26 proposed milestones until April 12—more than 2 weeks after Plaintiffs' proposal—at which point the first three milestones had already passed. Ex. 1 at pp. 2-3. The amended milestones Uber proposed on April 12 are attached hereto as **Exhibit 6**. Uber proposed to extend the milestones as follows:

- 3 -

     (1) Uber will produce a custodian list by ~~March 29~~ April 12;

     (2) the Parties exchange search terms by ~~April 5~~ April 12;

     (3) Plaintiffs propose custodians by ~~April 5~~ April 23;

     (4) Uber to identify a final list of custodians for which it would produce documents by ~~April 12~~ May 3;

     (5) A final meet and confer regarding search terms and custodians would occur by ~~April 29~~ May 13; and

     (6) Any remaining dispute over search terms or custodians was to be submitted to the Court by ~~May 1~~ June 4.

Ex. 6. Although Uber sent a list of proposed custodians on April 12, the list was an identical list of 26 custodians that had been agreed upon in the JCCP. Ex. 1 at pp. 2-3. Plaintiffs advised at that time that Uber's choice to reproduce the 26 custodians identified in the JCCP was insufficient and that Uber had yet to compile its own list of proposed custodians with relevant discovery, particularly in light of the thousands of litigation holds that Uber placed in November 2023 related to this MDL. *Id*. at p. 1. Indeed, according to information Uber provided to Plaintiffs in January 2024, Uber placed more than 5,600 employees on litigation hold in November 2023 related to this MDL.

   13. In a good faith effort to reach an agreement despite Uber's delays, on April 16 Plaintiffs proposed extensions to the March 26 milestones and stated that Plaintiffs would agree to extend Uber's deadline to respond to Plaintiffs' Requests for Production to May 29 *if* Uber agreed to meet the updated milestones. A true and accurate copy of Plaintiffs' April 16 proposed updated milestones are attached hereto as **Exhibit 7** Plaintiffs proposed to extend the milestones as follows:

     (1) Uber will produce a custodian list by ~~March 29~~ ~~April 12~~ April 18;

- 4 -

    (2) ~~the Parties exchange search terms by April 5 April 12~~ Plaintiffs propose search terms on April 18; Uber propose search terms on April 23;

    (3) Plaintiffs propose custodians by ~~April 5 April 23~~ April 23;

    (4) Uber to identify a final list of custodians for which it would produce documents by ~~April 12 May 3~~ April 26;

    (5) A final meet and confer regarding search terms and custodians would occur by ~~April 29 May 13~~ May 3; and

    (6) Any remaining dispute over search terms or custodians was to be submitted to the Court by ~~May 1 June4~~ May 7.

Ex. 7.

  14. Following a meet and confer on April 19, counsel for Uber acknowledged that an agreement on custodian identification was a "pivotal point" in the discussion of discovery schedule milestones and agreed to reconsider their position with regard to Uber's proposal to produce documents for only the 26 JCCP custodians. Ex. 2 at p. 13. Counsel for Plaintiffs advised that if the Parties could not reach an agreement on this milestone in which "Plaintiffs believe that Defendants are acting in good faith" it would be "difficult to get through the remaining milestones." *Id*. at p. 12.

  15. On April 22 (one month after the Parties had initiated discussions regarding Uber's request for an extension and Plaintiffs' consent contingent upon adherence to milestones), Uber proposed yet an additional set of modifications to the milestones. A true and accurate copy of Uber's April 22 proposal is attached hereto as **Exhibit 8**. Uber proposed the following modifications:

    (1) Uber will produce a custodian list by ~~March 29 April 12 April 18~~ April 26;

    (2) ~~the Parties exchange search terms by April 5 April 12 Plaintiffs propose search terms on April 18; Uber propose search terms on April 23~~;

    (3) Plaintiffs propose custodians by ~~April 5 April 23 April 23~~ May 3;

    (4) Uber to identify a final list of custodians for which it would produce documents by ~~April 12 May 3 April 26~~ May 10;

- 5 -

(5) A final meet and confer regarding search terms and custodians would occur by ~~April 29~~ ~~May 13~~ ~~May 3~~ May 20; and

(6) Any remaining dispute over search terms or custodians was to be submitted to the Court by ~~May 1~~ ~~June 4~~ ~~May 7~~ June 6.

Ex. 8. After numerous discussions regarding modifications to the milestones, Uber committed to complying with milestones on May 10, 2024. Ex. 2 at p. 1. A true and accurate copy of the Milestones Uber agreed to is attached hereto as **Exhibit 9**. Among other deadlines, the final agreement included the following dates:

(7) Uber will produce a custodian list by ~~March 29~~ ~~April 12~~ ~~April 18~~ April 26;

(8) ~~the Parties exchange search terms by April 5 April 12 Plaintiffs propose search terms on April 18; Uber propose search terms on April 23~~; Uber to propose search terms by May 3; Plaintiffs to propose search terms by April 19;

(9) Plaintiffs propose custodians by ~~April 5 April 23 April 23~~ May 3;

(10) Uber to identify a final list of custodians for which it would produce documents by ~~April 12~~  ~~May 3 April 26~~ May 10;

(11) A final meet and confer regarding search terms and custodians would occur by ~~April 29~~ ~~May 13~~ ~~May 3~~ May 20; and

(12) Any remaining dispute over search terms or custodians was to be submitted to the Court by ~~May 1~~ ~~June 4~~ ~~May 7~~ June 6.

Ex. 9.

16. Although the Parties still had not reached an agreement as to the milestones, Plaintiffs provided their list of search terms on April 19 and their list of 100 initial proposed custodians on May 3. Ex. 2 at p. 9. Plaintiffs' list of custodians includes 13 custodians who were placed on a litigation hold for sexual assault prior to 2018.

17. During meet and confer discussions on May 7 and May 10, Plaintiffs sought Uber's response to Plaintiffs' proposed custodians. Uber did not provide a response, nor did Uber identify a final list of custodians pursuant to the May 10 deadline. During a meet and confer on

May 10, Uber committed to, by the end of that day, either provide its position on Plaintiffs' May 3 custodian list or provide a date certain by which it would do so. Ex. 2 at p. 1. However, by May 13, Uber still had not provided its position. *Id*.

18. During a meet and confer video conference on May 16, 2024, Uber was still not prepared to discuss its position on Plaintiffs' list of proposed custodians. During that same call, Plaintiffs' counsel requested that Uber provide its rationale for the 29 custodians Uber included on its proposed custodian list, as required by the ESI Order (ECF 524). In response to this request, Uber's counsel requested, for the first time, that Plaintiffs provide their rationale for the custodians that Plaintiffs proposed on May 3, 2024. Uber's counsel acknowledges that their request came only in response to Plaintiffs' request. Ex. 3 at p. 20. Plaintiffs' counsel advised Uber that they would provide rationale, however, Plaintiffs' ability to do so was limited to publicly available documents and the limited documents produced by Uber, whereas Uber had access to more information about the custodians on Plaintiffs list than Plaintiffs would ever expect to have access to. Although Uber committed on May 16 to providing its rationale in a sufficient time for Plaintiffs to review it before a scheduled meet and confer on May 20 at 6:30 p.m. Eastern time Uber did not provide its rationale until at 6:17 p.m. Eastern time on May 20, minutes before the scheduled conference. Ex. 3 at 22; Ex. 4. During the May 16 call, Plaintiffs agreed to provide their rationale on May 23 and provided their rationale on that date. Ex. 5. Copies of the parties' respective rationale explanations are attached so that the Court may consider the sufficiency of each. Ex. 4; Ex. 5. Since receiving Plaintiffs' rationale, Uber has not identified any particular additional information it needs from Plaintiffs to be in a position to provide Uber's position on Plaintiffs' selections.

19. Throughout the Parties' numerous meet and confer discussions from May 10 through May 22, Uber continuously provided assurances that it would meet the September 1

- 7 -

deadline and did not indicate in *any* discussion before May 22 that it intended to limit its production to Uber's proposed custodians. (See Ex.'s 1-3). Plaintiffs' counsel learned for the first time on May 22 that Uber intended to limit it production when they received Uber's portion of the Joint Case Management Statement due May 24, in which Uber stated: "Uber notes that it can meet the current September 1, 2024 substantial completion deadline outlined in PTO 5 using the current set of 29 custodians and operative search terms (also agreed in the JCCP many months ago), but that deadline will need to be changed if it is required to include additional search terms and custodians, many of whom are duplicative to custodians that Uber has already proposed, as a result of Plaintiffs' demands." (ECF 563 at p. 14).

20. The Parties met and conferred on May 24. During that call, Uber's counsel took the position that it was still unprepared to discuss Plaintiffs' May 3 custodian list, claiming that it could not do so because it had just received Plaintiffs' rationale the day before. Plaintiffs' counsel advised Uber's counsel that the parties were at an impasse regarding Uber's position that it would only produce documents for its list of 29 custodians using its search terms by PTO 5's September 1 deadline and that Plaintiffs intended to raise these issues to the Court through the PTO No. 8 process. Ex. 3 at 11. To date, Uber still has not provided its position as to Plaintiffs' custodian list despite its commitment to the milestones to do so by May 10 and despite its agreements that any final meet and confer regarding search terms and custodians would be completed by May 20 so that any remaining disputes could be raised to the Court by June 6.

21. On April 26, 2024, Uber updated its April 12 custodian list, however the updated list was nearly identical to its April 12 list. Uber simply removed one person from its April 12 list and added four more. Of those four custodians, three had been negotiated in the JCCP but ultimately not included in the first round of discovery. Further, the 28 JCCP custodians contained in Uber's April 26 list were identified by JCCP plaintiffs in that litigation, not by Uber. (See

Declaration of Walt Cubberly, attached as Exhibit B to Plaintiffs' Letter Brief Regarding Search Terms and Custodians). Therefore, Uber has only identified one unique custodian that was not identified in the JCCP. Further, the majority of the 29 custodians (18 of 29) were not placed on a sexual assault litigation hold until July 2023 or later. Further, although Uber put 63 custodians on litigation hold related to sexual assault prior to 2019, Uber included only two (2) of these custodians in their list of 29. Even Travis Kalanick, the former Uber CEO from 2009-2014, was not placed on sexual assault litigation hold until November 29, 2023.

22. On May 30, Uber, for the first time, asked Plaintiffs to identify which of the 29 custodians it would like discovery for and demanded that Plaintiffs provide their response by the next day. Ex. 3 at pp. 10-11. Plaintiffs responded that Uber had already informed the Court, the JCCP and MDL Plaintiffs that it would produce the documents for these 29 custodians. *Id*. at pp. 8-9. Accordingly, the MDL Plaintiffs affirmed that Uber should produce these documents to MDL Plaintiffs also (which Uber is required to do per Pretrial Order No. 2 (ECF 65)). *Id*.

23. Uber did not offer during any of the meet and confer conversations herein to provide additional information about their custodian selections, aside from stating that they had selected custodians from across broad topical areas including marketing and safety and claiming that their selections meet their discovery obligations. Uber did not attempt to engage in any further discussion on the merits of their selections or Plaintiffs' selections. Likewise, before Uber's May 30 email Uber did not seek Plaintiffs' position on Uber's proposed custodians. Ex. 3 at pp. 1-11.

24. On January 16, 2024, Uber provided Plaintiffs with a letter describing its document retention and deletion policies. A true and accurate copy of that letter is attached hereto as **Exhibit 11**. For example, from September 2015 through January 2023, Uber had a policy of deleting e-mails after six months, and only since 2023 has extended that time period to destroy e-

mails after 24 months. Ex. 11 at p. 4. Further, as of January 31, 2023, Uber had deleted all Slack messages older than 90 days. *Id*. at pp. 5-6. Prior to using Slack, Uber had similar chat communications deletion policies, some as short as 7 days. *Id*. at p. 6.

25. Based on documents filed in other litigations, Plaintiffs expect to learn in discovery that additional Uber policies prevented evidence from being created at all. Although Plaintiffs have not independently verified the content, in a letter filed in another litigation against Uber, Uber's former Manager of Global Intelligence who worked for Uber from March 2016 to April 2017 revealed evidence spoliation and other discovery abuses he contends Uber committed during his employment. A true and accurate copy of the letter from *Waymo LLC v. Uber Tech. Inc.,* Case No. 3:17-cv-00939 (N.D. Cal. Dec 15, 2017) is attached hereto as **Exhibit 12**. Specifically, the letter indicates that various high-level Uber employees undertook efforts to "evade current and future discovery requests, court orders, and government investigations," including by "devis[ing[ training and provid[ing] advice intended to impede, obstruct, or influence the investigation of several ongoing lawsuits against Uber and in relation to or contemplation of further matters within the jurisdiction of the United States." Ex. 12 at p. 5. The letter further alleges that high-level Uber employees "objected to preserving any intelligence that would make preservation and legal discovery a simple process for future litigants," and "implemented a sophisticated strategy to destroy, conceal, cover up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigations," including instructing employees that they could "conceal documents…by attempting to 'shroud' them with attorney-client privilege or work product productions" including teaching employees "that if they marked communications as 'draft,' asked for a legal opinion at the beginning of an email, and simply wrote 'attorney-client privilege' on documents, they would be immune from discovery." *Id*. at pp. 5-7. Additionally,

the letter alleges that Uber used software intended to encrypt and destroy communications and evidence to avoid discovery and improperly shrouded documents with improper claims of attorney-client privilege. *Id*. at pp. 6-7.

26. I declare under penalty of perjury that the foregoing is true and correct. Executed on June 7, 2024, in San Francisco, California.

>*/s/ Roopal P. Luhana*
>Roopal P. Luhana
>**CHAFFIN LUHANA LLP**
>600 Third Avenue, 12th Floor
>New York, NY 10016
>Telephone: (888) 480-1123
>Facsimile: (888) 499-1123
>luhana@chaffinluhana.com
>
>*Co-Lead Counsel for Plaintiffs*