# EXHIBIT E

RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S PTO 8 LETTER BRIEF REGARDING CUSTODIANS AND SEARCH TERMS**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

I, Michael B. Shortnacy, declare as follows:

1. I am a partner at the law firm of Shook, Hardy & Bacon, LLP, representing Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC ("Uber"). I am a member in good standing of the Bar of the States of California, New York, and the District of Columbia. I make this declaration based upon matters within my own personal knowledge and if called as a witness, I could and would competently testify to the matters set forth herein. I attended each of the conferrals of counsel discussed in this declaration.

2. I submit this Declaration in support of Defendants' PTO 8 Letter Brief regarding Custodial Files and Search Terms.

3. On April 16, 2024, in the spirit of cooperation and without waiting for the entry of the ESI Protocol, Uber provided Plaintiffs a provisional list of proposed custodians, including information Plaintiffs specifically requested about current and former job titles, and prior sexual assault-related preservation legal hold dates. The parties met and conferred about these custodians three days later, on April 19. When asked during this conference, Plaintiffs refused to take a position on whether they accepted or rejected these custodians. Plaintiffs also insisted Uber should be required to identify custodians outside of the set of custodians that had been discussed and negotiated in the JCCP. Plaintiffs repeatedly pointed to Uber's number of legal holds to attempt to justify that some larger number of custodians was appropriate. During the conferral, Uber countered that the legal holds are preservation tools, but do not also mean that custodians on hold will necessarily have non-duplicative, proportional, and relevant data that should also be subject to review and production. Despite these disagreements, Uber agreed to supplement its initial custodian list.

4. Thereafter, Uber continued to work with counsel to identify custodians most likely to possess discoverable information responsive to Plaintiffs' requests, and made determinations about the custodians with appropriate job responsibilities over an appropriate scope of time tailored to Plaintiffs'

requests in this litigation. Uber supplemented its initial list of custodians on April 26, offering 29 custodians. The parties met and conferred about this custodian list on April 29. Uber explained that this list represented a set of custodians that based on job duties and time scope provided qualitative coverage for Plaintiffs' discovery responses, and Uber offered to explain in detail why these custodians provided complete coverage. At this conferral, Uber asked Plaintiffs when they would have their own proposed custodians, as was required under the ESI Protocol. Plaintiffs promised to provide their list "before May 3rd."

5. On the evening of May 3, 2024, Plaintiffs proposed a list of 100 custodians to Uber, 52 of which were also named in the JCCP's initial list of 143 custodians. One custodian on Plaintiffs' list was also deposed in the JCCP as a person-most-knowledgeable who testified as to Uber's business organization and structure. Plaintiffs' list did not contain the information the ESI Protocol required the Parties to provide ("The custodian and data source exchanges will include brief explanations of the rationale for their selections; for example, for custodians, their current job titles, dates of employment, and descriptions of their work..." ECF 524, at 6). Plaintiffs' list did not even include the same information Plaintiffs requested from Uber, and Uber had provided to Plaintiffs. On May 7, 2024 the parties met again and discussed custodians as part of a meet-and-confer that covered numerous other topics. Plaintiffs asked Uber for a position on Plaintiffs' custodians but did not offer any new information about them.

6. On May 10, 2024, the parties opened this 11 day conferral period with a video conference. However, instead of engaging in an iterative process or robust discussion about custodians by name, job title, or roles and responsibilities, as I understand occurred in the JCCP negotiations.

7. During the conferral, and following, Uber committed to provide information about the volume of data that might result from the application of search terms through a search term "hit report." Uber agreed to provide a hit report for Uber's custodians using Uber's terms as required by the ESI Protocol, and a hit report for Plaintiffs' initial search terms run against 23.3 million documents collected

3

DECLARATION OF MICHAEL B. SHORTNACY                                    Case No. 3:23-MD-3084-CRB

and processed from Uber's proposed custodians at that time. Uber's search terms hit on almost 3.6 million documents in that 23.3 million document pool, family inclusive. Plaintiffs' proposed terms hit on over 20 million documents, family inclusive, over the same set of Uber's proposed custodians, thus returning over 85% of the collected documents for potential review.

8. During the next conferral of counsel, on May 16, 2024, Plaintiffs were again unwilling to engage on the merits of any proposed custodian—Uber's or Plaintiffs'. Uber pointed out that it was challenging to understand why Plaintiffs want or need certain custodians proposed by Plaintiffs (e.g., individuals identified as employees of business units other than the Rides business at issue, such as Cornershop or Postmates). Uber reiterated the need for give-and-take in these conferrals. Instead, Plaintiffs demanded Uber provide a written rationale for each of Uber's custodian choices, which Uber agreed to provide by the following Monday. When Uber pointed out the ESI Protocol makes providing such rationales as a mutual obligation, Plaintiffs agreed to do the same. Uber also explained in this conferral that investigating job duties and roles and responsibilities (particularly for former employees) is challenging and requires investigation. Uber implored Plaintiffs to engage in information exchange about the custodians to help narrow the focus and so that Uber could explain why certain custodians already proposed may provide appropriate coverage for those Plaintiffs' had proposed. Again, Plaintiffs declined.

9. On May 20, 2024, when the parties again met-and-conferred, Plaintiffs acknowledged receipt of Uber's rationale for its proposed custodians, and indicated they were holding back providing Plaintiffs' rationale, and rather wanted to "wait and see" what Uber provided before drafting their own rationales. Uber also reiterated the need to hear from Plaintiffs about why Plaintiffs think their custodians are relevant and proportional. Plaintiffs instead pivoted to other topics.

10. On May 23, 2024, Plaintiffs brought their custodian list into compliance with the ESI Protocol by finally providing a rationale for each custodian. On May 24, the parties met and conferred,

4

1  and Uber pointed out that Plaintiffs' rationales did not provide sufficient information. Plaintiffs
2  confirmed that most of their stated rationales were simply pulled from job titles listed by individuals
3  on their LinkedIn profiles, which can be unreliable predictors of actual duties and responsibilities. Uber
4  explained to Plaintiffs that, as previously discussed, Uber needed more information about Plaintiffs'
5  basis to qualitatively investigate custodians' duties and roles as related to Plaintiffs' claims in the
6  litigation. Uber also pressed Plaintiffs for some prioritization of their custodians. Plaintiffs insisted they
7  never agreed to any priority, even though the stated goals of the conferral period included prioritization.
   Plaintiffs also insisted that Uber "should have already loaded all of Plaintiffs' proposed custodians" to
8  be able to search them. Plaintiffs also took the position for the first time that Uber should collect and
9  review documents from 50 of Plaintiffs' 100 proposed custodians.

10      11.     Through these five conferrals, and numerous email exchanges between the parties,
    Plaintiffs unfortunately never engaged in the process their JCCP counterparts engaged in, and that
11  Judge Schulman described in his closing remarks to the May 17, 2024 JCCP Informal Discovery
12  Conference.

13      The only other thing I would say is I would urge you all -- I'm sure you're
14      having these discussions in the context of the MDL. As I recall from the
15      prior motions, at least one of the issues that's likely to get raised by Uber,
        and presumably has already been raised by Uber, is whether a given
16      custodian is likely to be duplicative of another custodian or another witness.
17      I remember there were arguments about, well, gee, do you really need to
18      look at the inbox of so-and-so who is a more senior person when the person
19      who was really in charge of Issue X or Issue Y reported to that person, but
20      you're really getting a superior witness and you're not missing anything if
21      you talk to the person who had the primary responsibility for that.

Somebody who is the regional VP for marketing for the Western Hemisphere, it's going to be a small part of their task to be overseeing marketing in the western United States or something to that effect. I would urge you to keep having those discussions. If there's a way to narrow down the dispute here from six to four to two or wherever you come out, based on a good faith representation by counsel, where if need be a brief declaration from somebody like that who says: Yeah, I would have been copied on this stuff, but I don't have anything that my subordinate wouldn't have. Just a way to see if you can see your way through all of this without fighting about everything. Ex. C, at 51.

12. A true and accurate copy of "Plaintiffs' Initial Proposed Custodians," emailed by Plaintiffs' counsel to Uber's counsel on May 3, 2024, is attached hereto as **Exhibit 1**.

13. A true and accurate copy of Plaintiffs' custodian list with rationale added to bring their list into compliance with the ESI Protocol, emailed to Uber's counsel by Plaintiffs' counsel on May 23, 2024, is attached hereto as **Exhibit 2**.

14. A true and accurate copy of the Parties' correspondence occurring between May 16 and June 7, 2024 regarding Uber's responses to Plaintiffs' First Request for Production is attached hereto as **Exhibit 3**. This version of the email correspondence reflects the complete communications between counsel and demonstrates, yet again, Uber's willingness to meet and confer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: June 7, 2024                    By: */s/ Michael B. Shortnacy*
                                            Michael B. Shortnacy