# EXHIBIT G

1  RANDALL S. LUSKEY (SBN: 240915)
       rluskey@paulweiss.com
2  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
3  535 Mission Street, 24th Floor
   San Francisco, CA 94105
4  Telephone: (628) 432-5100
   Facsimile:  (628) 232-3101
5
   ROBERT ATKINS (*Pro Hac Vice* admitted)
6      ratkins@paulweiss.com
   CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
7      cgrusauskas@paulweiss.com
   ANDREA M. KELLER (*Pro Hac Vice* admitted)
8      akeller@paulweiss.com
   **PAUL, WEISS, RIFKIND, WHARTON**
9      **& GARRISON LLP**
   1285 Avenue of the Americas
10 New York, NY 10019
   Telephone: (212) 373-3000
11 Facsimile:  (212) 757-3990

12 *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.,
13 RASIER, LLC, and RASIER-CA, LLC

14 [*Additional Counsel Listed on Following Page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB<br><br>**DECLARATION OF JAMIE BROWN IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S PTO 8 LETTER BRIEF REGARDING CUSTODIANS AND SEARCH TERMS**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |
| This Document Relates to:<br><br>ALL ACTIONS | |

-1-
DECLARATION OF JAMIE BROWN IN SUPPORT OF DEFENDANTS' PROPOSED ESI PROTOCOL
Case No. 3:23-md-3084-CRB

MICHAEL B. SHORTNACY (SBN: 277035)
   mshortnacy@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (*Pro Hac Vice* admitted)
   oot@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
1800 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

KYLE N. SMITH (*Pro Hac Vice* admitted)
   ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
   jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
   **& GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

I, Jamie Brown, declare under penalty of perjury as follows:

1.  I am a Vice President of Global Advisory Services at Lighthouse, which provides eDiscovery services to Uber Technologies Inc. ("Uber"), a Defendant in the above captioned matter. I previously set forth my qualifications in a declaration provided in support of Uber's ESI protocol on April 12, 2024, which are incorporated herein.

2.  I submit this declaration at Defendant Uber's and its outside counsel, Paul Weiss's and Shook Hardy and Bacon's request, and in support of the Defendants' PTO 8 Letter Brief dated June 7, 2024 in the above captioned matter. I am familiar with the facts contained herein and am prepared to testify to the extent required.

3.  In connection with this declaration, I spoke with members of the Lighthouse team that supports the Uber account.

4.  Outside counsel has informed me that Plaintiffs request Uber to collect, process and review documents for an additional 50 custodians by September 1, 2024, on top of the 29 custodians Uber proposed and for whom data has already been collected, processed and prepared for review. The parties in the MDL are continuing to negotiate search terms.

5.  Lighthouse has provided ediscovery services in more than 14,000 matters, including dozens of MDLs. Based on my experience and familiarity with these matters, 79 custodians is significantly larger than other MDLs, particularly given the volume of data collected per custodian and the volume of data promoted for review per custodian using the Plaintiffs' latest proposed set of keywords.

6.  As set forth below, the sheer volume and density of data and the time it takes to collect, process, search, review and produce responsive and non-privileged data makes Plaintiffs' request unattainable. This is especially true given Plaintiffs' latest proposed set of search terms. These challenges are explained more fully below.

**Custodian Metrics**

7. After initial processing and de-duplicating the data for the 29 custodians Uber proposed, the total number of processed documents is 25,643,800, the volume for which is 32.85 Terabytes ("TB").[1] The average number of processed documents per custodian is approximately 884,269 documents and 1.13 TB of data.

8. If another 50 custodians were added to the population, and assuming the same number of documents per custodian, we would estimate an expanded population of processed documents to be approximately 69,857,248 documents and 89.5 TB of data.[2]

**Search Terms**

9. Consistent with the ESI Protocol (ECF No. 524), search terms will then be applied to the universe of processed documents for the 29 custodians. Uber's latest proposed set of search terms hit on 4,366,334 documents, family inclusive, or approximately 17% of the 25,643,800 total processed document population.

10. In contrast, Plaintiffs' latest proposed set of search terms hit on 18,589,167 documents, family inclusive, or approximately 72% of the 25,643,800 total processed document population.

11. If another 50 custodians were added to the population, and assuming the same culling rate of 72%, we would estimate Plaintiffs' latest proposed set of search terms would hit on approximately 50,639,455 of the 69,857,248 total processed documents that would then need to be reviewed.

12. A reasonable yield rate is typically below 20%, particularly when dealing with such a large universe of documents (that had not been previously filtered using keywords at the time of

---

[1] 12,114,407 of these 25,643,800 million documents predate 2018.
[2] One gigabyte ("GB") of data is the equivalent of approximately 10 bankers boxes, and there are 1,000 GB in one TB. Using these assumptions, 1 TB is the equivalent of 10,000 bankers boxes, and 89.5 TB is the equivalent of 895,000 bankers boxes.

-4-

collection). A yield rate of 72% far exceeds that benchmark and would suggest at least some of the keywords are overly broad and that the list should be revised and narrowed significantly to bring the yield into a normal range.

**CAL Issue**

13. Per the ESI Protocol, Uber is using a Continuous Active Learning ("CAL") process to facilitate review within Relativity (i.e., Relativity Active Learning or "RAL"). For background, CAL is prioritized review, essentially a machine-based algorithm that ranks or scores documents based on likelihood of responsiveness; it then delivers those documents in a prioritized manner to human reviewers who manually review the documents. As the score decreases (meaning, the document is less responsive), it is deprioritized in the review set; in contrast, documents containing a higher score are prioritized in the review set. Documents are manually reviewed by human reviewers from highest to lowest scores. The CAL review continues until a stopping point is reached as required by the ESI Protocol.

14. I understand that Plaintiffs have suggested that Uber's mere use of CAL supports their argument for broader search terms and additional custodians (notwithstanding that this would increase the number of documents Uber would need to review). This is simply untrue, as it ignores the way CAL works.

15. To reach the review cut-off for a population of 50,639,455 documents (i.e., the estimated number of processed documents that would need to be reviewed for 79 custodians using Plaintiffs' latest proposed set of search terms), human reviewers would likely need to code between 7.5 and 10 million documents.

16. In contrast, to reach the review cut-off for a population of 4,366,344 documents (i.e., the number of processed documents that would need to be reviewed for the 29 custodians Uber

proposed, as well as using Uber's latest proposed set of search terms), human reviewers would likely need to code between 600,000 and 800,000 documents.

17. In other words, there is a direct correlation between the number of documents subject to review (e.g., over 50 million vs. 4.3 million) and the time it takes to complete a review, even using CAL.

18. Further, Relativity reports a 9 million document threshold for RAL [3] (although in Lighthouse's experience, it is much less) and a maximum of 1 million coding decisions. To apply RAL to either of the data sets generated by Plaintiffs' latest set of search terms would require the use of multiple models/indices. Note that the 9 million document threshold is far less than the over 18.5 million documents generated against the 29 custodians – let alone the estimated over 50 million documents generated by including an additional 50 custodians – using Plaintiffs' latest set of search terms.

19. The use of multiple models/indices creates additional complexity, as the models would require different marginal precision and validation assessments. In short, the use of multiple models/indices would require significant time and multiple validation exercises – a process that would take months to develop and perfect to meet the requirements of the ESI Protocol.

20. Relativity also reports that the number of reviewers who can access the review queue (i.e., data served up for review by the model) at a time should not exceed 150 (see footnote 3). This means that Uber cannot simply add reviewers to solve the challenge of reviewing this volume of data by the deadline.

---

[3] https://help.relativity.com/Server2022/Content/Relativity/Active_Learning/Active_Learning_performance_baselines.htm

**Time**

21. In addition to the extensive time to collect this magnitude of data, it would then take Lighthouse – or a similarly situated ediscovery provider – several months just to process the data due to various data types, the need to reconcile file types and data formats, and link families given the sheer volume and density of data for this number of custodians. That does not account for the time for review.

**Cost**

22. Lighthouse estimates that it would cost Uber approximately $9,679,302 only to process Plaintiffs' proposed data set for 79 custodians, promote the data for review, and host it for one year. Note that this does not include any review costs for CAL or human review, consulting or project management costs.

I affirm under penalty of perjury of the laws of the State of New York that the foregoing statement is true and correct. Executed on June 7, 2024 in New York, New York.

/s/ Jamie Brown
Jamie Brown