LAW OFFICES

# WILLIAMS & CONNOLLY LLP

DAVID RANDALL J. RISKIN
(202) 434-5789
driskin@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

June 7, 2024

***Via ECF***
The Honorable Lisa J. Cisneros
United States Magistrate Judge
  for the Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

      Re:    *In re Uber Techs. Passenger Sexual Assault Litig.*, No. 23-md-03084 (N.D. Cal.)

Dear Judge Cisneros:

      The Court should quash Plaintiffs' premature, overbroad, and unduly burdensome fifteen-request subpoena to third-party Lyft Inc. (Ex. A (Subpoena (May 17, 2024)).) The Federal Rules command a party seeking third-party discovery to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). (So much so that a court "must enforce this duty and impose an appropriate sanction … on a party or attorney who fails to comply." *Id.*) In both process and substance, the subpoena falls short.

      Process-wise, the subpoena gave Lyft less than a week to comply (which alone is a basis to quash it), and Plaintiffs' counsel made little effort to modify the subpoena's requests to account for Lyft's objections. Substantively, the subpoena demands materials Plaintiffs can obtain from Uber, seeks documents untethered to the issues in the litigation and from an overbroad time period, and asks Lyft to produce sensitive internal documents notwithstanding that Uber is a competitor and otherwise would not have access to that material. More generally, throughout three conferences, Plaintiffs made no showing of relevance—particularly one that would justify burdening a third party. Each of these reasons, and others, is grounds to quash the subpoena.

      Lyft, to be sure, repeatedly has said it would discuss a reasonable set of documents Plaintiffs could show they needed in third-party discovery, but that the subpoena as drafted was far too broad, burdensome, and premature to ground those conversations. It thus invited Plaintiffs to narrow their requests. Plaintiffs, however, largely have stood on them as drafted,[1] and the Court

---

[1] Four days before this brief was due, Plaintiffs told Lyft the subpoena would be an exemplar (presenting it as a *fait accompli*), giving Lyft little time to respond. During a conference the next day, Plaintiffs agreed to drop only the two most-indefensible requests (seeking "all communications" and "all documents" Lyft and Uber exchanged) but they kept the other thirteen requests.

WILLIAMS & CONNOLLY LLP

June 7, 2024
Page 2

thus should protect Lyft from the burden and expense the subpoena would impose on it.

***The setup***:  The current subpoena is not Plaintiffs' first to Lyft, although Plaintiffs' initial subpoena violated Federal Rule 45(c)(2)(a) (place of compliance) and therefore was unenforceable.  Yet in the interests of efficiency, Lyft served detailed objections to that initial subpoena, and conferred with Plaintiffs' counsel twice, in the hopes Plaintiffs would identify a reasonable set of documents they actually thought were relevant and only Lyft had.  Lyft suggested that should Plaintiffs serve a new subpoena, a narrower set of requests was in order.  And Lyft invited Plaintiffs to hold any new subpoena in abeyance given that many of their requests sought from Lyft documents that would be in Uber's possession.  All of this fell into an abyss.

Plaintiffs served a new subpoena, but included the exact same overbroad requests from their initial subpoena, notwithstanding Lyft's objections.  That new subpoena also purported to give Lyft seven days to comply, although by the time Plaintiffs served it, five days remained on the clock.  (Rule 45(d)(1)'s command "to avoid imposing undue burden or expense" went unheeded.)  The no-more-than-seven days Plaintiffs purported to give Lyft alone is reason to quash the subpoena.  *See* Fed. R. Civ. P. 45(d)(3).  Although Rule 45 "does not specify what constitutes a 'reasonable time'" to respond, "courts normally require at least ten days" and will quash a subpoena that does not permit at least that period.  *Sartor v. Cnty. of Riverside*, 2024 WL 1136333, at *4 (C.D. Cal. Feb. 15, 2024).  The Court can begin and end its analysis there.

Although Plaintiffs' subpoena once again was defective, Lyft again served comprehensive objections and responses (on the date Plaintiffs demanded for compliance).  (Ex. B (Lyft's Objs. & Resps. (May 24, 2024)).)  Lyft having done so, the Court "must protect [Lyft] … from significant expense resulting from compliance." Fed. R. Civ. P 45(d)(2)(B)(ii).  Given the subpoena's deficiencies, as detailed below, it would be impossible to order production under Plaintiffs' subpoena *and* protect Lyft "from significant expense resulting from compliance."

***The subpoena is premature.***  It is axiomatic that documents should be sought from a party to an action in the first instance—not from a non-party.  *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 576 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *accord Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 4166780, at *4–5 (N.D. Cal. Sept. 3, 2019).  Courts thus will reject a subpoena where the subpoenaing party has not "ma[de] a showing … that the records are only obtainable through that third party." *Davis v. Ramen*, 2010 WL 1948560, at *1 (E.D. Cal. May 11, 2010) (requiring *pro se* plaintiff to abide by requirement); *see also Glass Egg*, 2019 WL 4166780, at *5 ("[p]laintiff should take care to be able to explain … why any and all documents should in third party discovery could not be obtained" in party discovery).  Here, Plaintiffs deploy at least nine requests (3–6, 11–15) that in whole or part seek documents that also would be in Uber's possession.  But Plaintiffs have not established the documents are unavailable from Uber—nor can they.  After all, Lyft understands party discovery has just begun, and Uber's responses to Plaintiffs' *first* set of document requests are not due until the end of June.  Given this, Plaintiffs cannot show the documents are unavailable in party discovery.

WILLIAMS & CONNOLLY LLP

June 7, 2024
Page 3

 Plaintiffs' counsel worries that Plaintiffs will not get everything they want from Uber, either because Uber will refuse to produce it or because the material was not preserved. But that is precisely the point—Plaintiffs need to go through party discovery first, litigate any disputes about the scope of production (which, of course, would bear on what Plaintiffs can seek from Lyft), and see what Uber's productions yield before burdening Lyft. Hypotheses about what may happen or what may be available is insufficient to demand a third-party production.

 That party discovery is just beginning also renders premature the requests that seek Lyft's internal documents and Lyft's communications with regulators (3–5, 7–11, 14–15).[2] Because Plaintiffs do not know what Uber will produce, they cannot establish a need for Lyft-specific documents. Lyft-specific documents may be substantively cumulative of what Uber produces, or else any benefit to Plaintiffs in receiving Lyft-specific documents may pale compared to Lyft's burden in reviewing and providing them. Those considerations are controlling, *see Nidec*, 249 F.R.D. at 577 (courts must protect third parties from "undue burden" and limit discovery if it "is obtainable from some other source that is more convenient, less burdensome, or less expensive or if the burden or expense of the proposed discovery outweighs its likely benefit" (quotations mitted)), and Plaintiffs cannot show its subpoena falls on the production side of the line.

 An example from the parties' discussions is useful to underscore why Plaintiff's demands come too early: Plaintiffs' counsel suggested Lyft-specific discovery was appropriate now because Lyft and Uber may have agreed to handle separate issues with regulators on behalf of both parties, meaning Lyft may be in possession of documents bearing on both companies that would not be in Uber's hands. (This seems a stretch, as Uber presumably would have documents at least summarizing Lyft's work. But let us put that aside for now.) That is speculation by Plaintiffs, and without taking discovery from Uber and learning if that *actually* is the case, there is no basis to demand that a third party undertake its own burdensome search. Simply put, Plaintiffs have not done the work in party discovery to establish discovery from Lyft is necessary.

 ***Plaintiffs have not established relevance.*** The primary relevance theory Plaintiffs offered during the parties' discussions was that the documents they sought would show Uber's (and Lyft's) efforts to lobby regulators. (This theory could not justify the entire subpoena, as Plaintiffs' requests are broader than communications with regulators.) Although Plaintiffs did not identify any specific causes of action from their complaint these lobbying efforts would inform (a telling absence), they offered that lobbying materials bore on the standard of care applicable to Uber in this action. This is hard to understand—what standard-of-care duty a transportation-network company owes will be set by statute or the common law and given to the jury; a company's purported efforts to change that standard do not speak to that issue.

 Perhaps recognizing this, Plaintiffs then shifted and said Uber's and Lyft's lobbying efforts were relevant to punitive damages. But even accepting that premise (which runs headlong into First Amendment issues, *see, e.g.*, *Apple Inc. v. Match Group, Inc.*, 2021 WL 3727067, at

---

[2] There is overlap with the requests seeking documents Lyft and Uber exchanged because of how broadly Plaintiffs have drawn their requests.

WILLIAMS & CONNOLLY LLP

June 7, 2024
Page 4

*7–8 (N.D. Cal. Aug. 19, 2021) (denying motion to compel third-party documents that implicated lobbying activities)), Lyft is not a party to this action. Lyft-specific documents, or Lyft's own communications with regulators, cannot inform a punitive-damages theory against *Uber*.[3]

Plaintiffs' relevance theory raises concerns about the motives for the expansive subpoena. Plaintiffs' counsel also has brought actions against Lyft, and the breadth of discovery, coupled with Plaintiffs' theory of supposed relevance, at least suggest the subpoena may be a way to accelerate discovery in those actions. Plaintiffs' counsel, to be sure, has expressly denied this, but it is hard to square the premature, broad subpoena requests with the requirement that third-party discovery "avoid imposing undue burden or expense"; one reasonably can wonder if there is a desire to peek at documents Plaintiffs (wrongly) would say are relevant in those Lyft actions.

***The subpoena is facially overbroad and unduly burdensome.*** None of Plaintiffs' thirteen remaining requests are tied to the sexual-assault-related matters at issue in this proceeding. And each of the requests demands documents from a more-than-fifteen-year period ("January 1, 2009 through the present time"). The requests thus are unwarranted and unsupportable. (It is not clear to Lyft that even party discovery is as broad as Plaintiffs have sought to make third-party discovery, although even harmonizing the discovery periods would unduly burden a non-party.) Plaintiffs made no offer to narrow the requests either by subject or date during the parties' discussions; Plaintiffs having chosen to rest on them as written, the Court should quash them.

An example illustrates just how far from reasonable Plaintiffs' demands are: Requests 9 and 10 seek "all communications" and "all documents" Lyft exchanged with regulators "related in any way to Uber, its Drivers, or its Riders." Plainly, Lyft may have communicated with regulators about Uber on matters unrelated to this action. The same is true for Uber riders and drivers, many of whom also are Lyft riders and drivers (and thus Lyft may have communicated about them for reasons unrelated to Uber). Therein lies an additional concern with Plaintiffs' demands for Lyft-specific information—it would require production of Lyft confidential information to a competitor. (Even the "attorney's eyes only" protective-order classification permits Uber employees to see the documents.) Rule 45(d)(3)(B)(i) contemplates protecting a third party from having to disclose "confidential research, development, or commercial information." Although Plaintiffs have offered to modify the protective order, Uber has not, and there currently is no mechanism to protect Lyft's information from disclosure to Uber.

As reflected in Lyft's response to the subpoena, Lyft has additional, granular objections to each of Plaintiffs' requests. But given the deficiencies detailed above, it is not the time for the Court to address the specific problems with individual requests. The Court should quash the subpoena—or, at the least (and as Lyft offered to Plaintiffs), hold it in abeyance pending party discovery, including Plaintiffs' receipt of documents from Uber and litigation of any disputes.

---

[3] If Plaintiffs offer additional relevance theories (or other new arguments), Lyft requests an opportunity to respond under Rule 45(d)(2)(i). The rule contemplates that upon timely objections, the subpoenaing party must act first—allowing the third party to address that party's contentions.

WILLIAMS & CONNOLLY LLP

June 7, 2024
Page 5

                                          Respectfully submitted,

                                          */s/ David Randall J. Riskin*

                                          David Randall J. Riskin (*pro hac vice*)
                                          WILLIAMS & CONNOLLY LLP
                                          680 Maine Avenue, S.W.
                                          Washington, DC 20024
                                          Tel:    (202) 434-5000
                                          Fax:   (202) 434-5029
                                          Email:  driskin@wc.com

                                          Warren Metlitzky (CA Bar No. 220758)
                                          CONRAD | METLITZKY | KANE LLP
                                          217 Leidesdorff Street
                                          San Francisco, CA 94111
                                          Tel:    (415) 343-7100
                                          Fax:   (415) 343-7101
                                          Email: wmetlitzky@conmetkane.com

                                          *Attorneys for Lyft, Inc.*