LAW OFFICES

# WILLIAMS & CONNOLLY LLP*

DAVID RANDALL J. RISKIN
(202) 434-5789
driskin@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

June 7, 2024

<u>*Via ECF*</u>

The Honorable Lisa J. Cisneros
United States Magistrate Judge
  for the Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

Re:     *In re Uber Techs. Passenger Sexual Assault Litig.*, No. 23-md-03084 (N.D. Cal.)

Dear Judge Cisneros:

The Court should quash Plaintiffs' premature, overbroad, and unduly burdensome fifteen-request subpoena to third-party Lyft Inc. (Ex. A (Subpoena (May 17, 2024)).) The Federal Rules command a party seeking third-party discovery to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). (So much so that a court "must enforce this duty and impose an appropriate sanction … on a party or attorney who fails to comply." *Id.*) In both process and substance, the subpoena falls short.

Process-wise, the subpoena gave Lyft less than a week to comply (which alone is a basis to quash it), and Plaintiffs' counsel made little effort to modify the subpoena's requests to account for Lyft's objections. Substantively, the subpoena demands materials Plaintiffs can obtain from Uber, seeks documents untethered to the issues in the litigation and from an overbroad time period, and asks Lyft to produce sensitive internal documents notwithstanding that Uber is a competitor and otherwise would not have access to that material. More generally, throughout three conferences, Plaintiffs made no showing of relevance—particularly one that would justify burdening a third party. Each of these reasons, and others, is grounds to quash the subpoena.

Lyft, to be sure, repeatedly has said it would discuss a reasonable set of documents Plaintiffs could show they needed in third-party discovery, but that the subpoena as drafted was far too broad, burdensome, and premature to ground those conversations. It thus invited Plaintiffs to narrow their requests. Plaintiffs, however, largely have stood on them as drafted,[1] and the Court

---

[1] Four days before this brief was due, Plaintiffs told Lyft the subpoena would be an exemplar (presenting it as a *fait accompli*), giving Lyft little time to respond. During a conference the next day, Plaintiffs agreed to drop only the two most-indefensible requests (seeking "all communications" and "all documents" Lyft and Uber exchanged) but they kept the other thirteen requests.

WILLIAMS & CONNOLLY LLP

June 7, 2024
Page 2

thus should protect Lyft from the burden and expense the subpoena would impose on it.

**The setup**:  The current subpoena is not Plaintiffs' first to Lyft, although Plaintiffs' initial subpoena violated Federal Rule 45(c)(2)(a) (place of compliance) and therefore was unenforceable.  Yet in the interests of efficiency, Lyft served detailed objections to that initial subpoena, and conferred with Plaintiffs' counsel twice, in the hopes Plaintiffs would identify a reasonable set of documents that actually thought were relevant and only Lyft had.  Lyft suggested that should Plaintiffs serve a new subpoena, a narrower set of requests was in order.  And Lyft invited Plaintiffs to hold any new subpoena in abeyance given that many of their requests sought from Lyft documents that would be in Uber's possession.  All of this fell into an abyss.

Plaintiffs served a new subpoena, but included the exact same overbroad requests from their initial subpoena, notwithstanding Lyft's objections.  That new subpoena also purported to give Lyft seven days to comply, although by the time Plaintiffs served it, five days remained on the clock.  (Rule 45(d)(1)'s command "to avoid imposing undue burden or expense" went unheeded.)  The no-more-than-seven days Plaintiffs purported to give Lyft alone is reason to quash the subpoena.  *See* Fed. R. Civ. P. 45(d)(3).  Although Rule 45 "does not specify what constitutes a 'reasonable time'" to respond, "courts normally require at least ten days" and will quash a subpoena that does not permit at least that period.  *Sartor v. Cnty. of Riverside*, 2024 WL 1136333, at *4 (C.D. Cal. Feb. 15, 2024).  The Court can begin and end its analysis there.

Although Plaintiffs' subpoena once again was defective, Lyft again served comprehensive objections and responses (on the date Plaintiffs demanded for compliance).  (Ex. B (Lyft's Objs. & Resps. (May 24, 2024)).)  Lyft having done so, the Court "must protect [Lyft] … from significant expense resulting from compliance."  Fed. R. Civ. P 45(d)(2)(B)(ii).  Given the subpoena's deficiencies, as detailed below, it would be impossible to order production under Plaintiffs' subpoena *and* protect Lyft "from significant expense resulting from compliance."

**The subpoena is premature.**  It is axiomatic that documents should be sought from a party to an action in the first instance—not from a non-party.  *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 576 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.");  *accord Glass Egg Digital Media v. Gameloft, Inc.*, 2019 WL 4166780, at *4–5 (N.D. Cal. Sept. 3, 2019).  Courts thus will reject a subpoena where the subpoenaing party has not "ma[de] a showing … that the records are only obtainable through that third party."  *Davis v. Ramen*, 2010 WL 1948560, at *1 (E.D. Cal. May 11, 2010) (requiring *pro se* plaintiff to abide by requirement);  *see also Glass Egg*, 2019 WL 4166780, at *5 ("[p]laintiff should take care to be able to explain … why any and all documents should in third party discovery could not be obtained" in party discovery).  Here, Plaintiffs deploy at least nine requests (3–6, 11–15) that in whole or part seek documents that also would be in Uber's possession.  But Plaintiffs have not established the documents are unavailable from Uber—nor can they.  After all, Lyft understands party discovery has just begun, and Uber's responses to Plaintiffs' *first* set of document requests are not due until the end of June.  Given this, Plaintiffs cannot show the documents are unavailable in party discovery.

WILLIAMS & CONNOLLY LLP

June 7, 2024
Page 3

Plaintiffs' counsel worries that Plaintiffs will not get everything they want from Uber, either because Uber will refuse to produce it or because the material was not preserved. But that is precisely the point—Plaintiffs need to go through party discovery first, litigate any disputes about the scope of production (which, of course, would bear on what Plaintiffs can seek from Lyft), and see what Uber's productions yield before burdening Lyft. Hypotheses about what may happen or what may be available is insufficient to demand a third-party production.

That party discovery is just beginning also renders premature the requests that seek Lyft's internal documents and Lyft's communications with regulators (3–5, 7–11, 14–15).[2] Because Plaintiffs do not know what Uber will produce, they cannot establish a need for Lyft-specific documents. Lyft-specific documents may be substantively cumulative of what Uber produces, or else any benefit to Plaintiffs in receiving Lyft-specific documents may pale compared to Lyft's burden in reviewing and providing them. Those considerations are controlling, *see Nidec*, 249 F.R.D. at 577 (courts must protect third parties from "undue burden" and limit discovery if it "is obtainable from some other source that is more convenient, less burdensome, or less expensive or if the burden or expense of the proposed discovery outweighs its likely benefit" (quotations mitted)), and Plaintiffs cannot show its subpoena falls on the production side of the line.

An example from the parties' discussions is useful to underscore why Plaintiff's demands come too early: Plaintiffs' counsel suggested Lyft-specific discovery was appropriate now because Lyft and Uber may have agreed to handle separate issues with regulators on behalf of both parties, meaning Lyft may be in possession of documents bearing on both companies that would not be in Uber's hands. (This seems a stretch, as Uber presumably would have documents at least summarizing Lyft's work. But let us put that aside for now.) That is speculation by Plaintiffs, and without taking discovery from Uber and learning if that *actually* is the case, there is no basis to demand that a third party undertake its own burdensome search. Simply put, Plaintiffs have not done the work in party discovery to establish discovery from Lyft is necessary.

***Plaintiffs have not established relevance.*** The primary relevance theory Plaintiffs offered during the parties' discussions was that the documents they sought would show Uber's (and Lyft's) efforts to lobby regulators. (This theory could not justify the entire subpoena, as Plaintiffs' requests are broader than communications with regulators.) Although Plaintiffs did not identify any specific causes of action from their complaint these lobbying efforts would inform (a telling absence), they offered that lobbying materials bore on the standard of care applicable to Uber in this action. This is hard to understand—what standard-of-care duty a transportation-network company owes will be set by statute or the common law and given to the jury; a company's purported efforts to change that standard do not speak to that issue.

Perhaps recognizing this, Plaintiffs then shifted and said Uber's and Lyft's lobbying efforts were relevant to punitive damages. But even accepting that premise (which runs headlong into First Amendment issues, *see, e.g.*, *Apple Inc. v. Match Group, Inc.*, 2021 WL 3727067, at

---

[2] There is overlap with the requests seeking documents Lyft and Uber exchanged because of how broadly Plaintiffs have drawn their requests.

WILLIAMS & CONNOLLY LLP

June 7, 2024
Page 4

*7–8 (N.D. Cal. Aug. 19, 2021) (denying motion to compel third-party documents that impli-
cated lobbying activities)), Lyft is not a party to this action.  Lyft-specific documents, or Lyft's
own communications with regulators, cannot inform a punitive-damages theory against *Uber*.[3]

Plaintiffs' relevance theory raises concerns about the motives for the expansive subpoena.
Plaintiffs' counsel also has brought actions against Lyft, and the breadth of discovery, coupled
with Plaintiffs' theory of supposed relevance, at least suggest the subpoena may be a way to ac-
celerate discovery in those actions.  Plaintiffs' counsel, to be sure, has expressly denied this, but
it is hard to square the premature, broad subpoena requests with the requirement that third-party
discovery "avoid imposing undue burden or expense"; one reasonably can wonder if there is a
desire to peek at documents Plaintiffs (wrongly) would say are relevant in those Lyft actions.

***The subpoena is facially overbroad and unduly burdensome.***  None of Plaintiffs' thir-
teen remaining requests are tied to the sexual-assault-related matters at issue in this proceeding.
And each of the requests demands documents from a more-than-fifteen-year period ("January 1,
2009 through the present time").  The requests thus are unwarranted and unsupportable.  (It is not
clear to Lyft that even party discovery is as broad as Plaintiffs have sought to make third-party
discovery, although even harmonizing the discovery periods would unduly burden a non-party.)
Plaintiffs made no offer to narrow the requests either by subject or date during the parties' dis-
cussions; Plaintiffs having chosen to rest on them as written, the Court should quash them.

An example illustrates just how far from reasonable Plaintiffs' demands are:  Requests 9
and 10 seek "all communications" and "all documents" Lyft exchanged with regulators "related
in any way to Uber, its Drivers, or its Riders."  Plainly, Lyft may have communicated with regu-
lators about Uber on matters unrelated to this action.  The same is true for Uber riders and driv-
ers, many of whom also are Lyft riders and drivers (and thus Lyft may have communicated about
them for reasons unrelated to Uber).  Therein lies an additional concern with Plaintiffs' demands
for Lyft-specific information—it would require production of Lyft confidential information to a
competitor.  (Even the "attorney's eyes only" protective-order classification permits Uber em-
ployees to see the documents.)  Rule 45(d)(3)(B)(i) contemplates protecting a third party from
having to disclose "confidential research, development, or commercial information."  Although
Plaintiffs have offered to modify the protective order, Uber has not, and there currently is no
mechanism to protect Lyft's information from disclosure to Uber.

As reflected in Lyft's response to the subpoena, Lyft has additional, granular objections
to each of Plaintiffs' requests.  But given the deficiencies detailed above, it is not the time for the
Court to address the specific problems with individual requests.  The Court should quash the sub-
poena—or, at the least (and as Lyft offered to Plaintiffs), hold it in abeyance pending party dis-
covery, including Plaintiffs' receipt of documents from Uber and litigation of any disputes.

---

[3] If Plaintiffs offer additional relevance theories (or other new arguments), Lyft requests an op-
portunity to respond under Rule 45(d)(2)(i).  The rule contemplates that upon timely objections,
the subpoenaing party must act first—allowing the third party to address that party's contentions.

WILLIAMS & CONNOLLY LLP

June 7, 2024
Page 5

Respectfully submitted,

 /s/ David Randall J. Riskin

David Randall J. Riskin (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Tel:    (202) 434-5000
Fax:    (202) 434-5029
Email:  driskin@wc.com

Warren Metlitzky (CA Bar No. 220758)
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email:  wmetlitzky@conmetkane.com

*Attorneys for Lyft, Inc.*

# Exhibit A



**CT Corporation**
**Service of Process Notification**
05/20/2024
CT Log Number 546475404

## Service of Process Transmittal Summary

**TO:**   Legal Sop
Lyft, Inc.
185 BERRY ST STE 400
SAN FRANCISCO, CA 94107-1725

**RE:**   **Process Served in California**

**FOR:**   Lyft, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation vs. Lyft, Inc. |
| **DOCUMENT(S) SERVED:** | Notice, Subpoena, Proof, Attachment(s) |
| **COURT/AGENCY:** | UNITED STATES DISTRICT COURT, CA<br>Case # 323MD03084CRB |
| **NATURE OF ACTION:** | Subpoena - Business records - Request for status of Subpoena previously served |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 05/20/2024 at 13:35 |
| **JURISDICTION SERVED:** | California |
| **APPEARANCE OR ANSWER DUE:** | 05/24/2024 at 08:00 a.m. (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | Sarah R. London<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br>415-956-1000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/21/2024, Expected Purge Date: 05/26/2024<br><br>Image SOP<br><br>Email Notification, John Pellegrini  jpellegrini@lyft.com<br><br>Email Notification, Christopher Youngblood  cyoungblood@lyft.com<br><br>Email Notification, Eboni James  ebonijames@lyft.com<br><br>Email Notification, Ty Lim  tlim@lyft.com<br><br>Email Notification, Devin Armstrong  devina@lyft.com<br><br>Email Notification, Legal Sop  legal-sop@lyft.com<br><br>Email Notification, Zermani Kadiam  zkadiam@lyft.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700 |

Page 1 of  2

 **Wolters Kluwer**

**CT Corporation**
**Service of Process Notification**
05/20/2024
CT Log Number 546475404

GLENDALE, CA 91203
877-564-7529
MajorAccountTeam2@wolterskluwer.com

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED | DATE/METHOD OF SERVICE | TO | LOG NUMBER |
|---|---|---|---|
| Subpoena, Proof, Attachment | By Process Server on 04/19/2024 at 09:27 | Legal Sop Lyft, Inc. | 546245705 |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Mon, May 20, 2024
**Server Name:**                             Victor Mendez

| Entity Served | LYFT, INC. |
|---|---|
| Case Number | 323MD03084CRB |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB |
| | **NOTICE OF SUBPOENA** |
| This Document Relates to: | Judge: Honorable Charles R. Breyer |
| All Cases | |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE, pursuant to Federal Rule of Civil Procedure 45, that Plaintiffs

intend to serve a subpoena, in the form attached hereto, on Lyft, Inc. on April 16, 2024, or as

soon thereafter as service may be effectuated.

Dated: May 17, 2024

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641

Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com
*Co-Lead Counsel*

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation | ) ) ) |
| | ) Civil Action No.   No. 3:23-md-03084-CRB |
| This Document Relates to: All Cases | ) |
| | ) |
| | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                                          Lyft, Inc.
_____

*(Name of person to whom this subpoena is directed)*

**☑** *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place:  Walkup Law Office 650 California St 26th Floor, San Francisco, CA 94108 | Date and Time: 05/24/2024 8:00AM |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____05/17/2024_____

CLERK OF COURT

                                                        OR

_____          _____
*Signature of Clerk or Deputy Clerk*                    /s/ Samantha Hoefs
                                                       *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Plaintiffs
_____ , who issues or requests this subpoena, are:

Samantha Hoefs, 60 South 6th St #2800, Minneapolis MN, 55402, shoefs@nighgoldenberg.com, (612) 445-0202

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   No. 3:23-md-03084-CRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)*   _____  .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)*   _____  ; or

☐ I returned the subpoena unexecuted because: _____

_____  .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____  .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                   *Server's signature*

                                               _____
                                                   *Printed name and title*

                                               _____
                                                   *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# SCHEDULE A

**Instructions**

The following instructions and definitions apply to each of the Requests set forth below and are deemed to be incorporated therein:

1.  If You make any assumption of fact or law in responding to any Request, state each assumption and the basis for each assumption.

2.  If the response to any Request consists, in whole or in part, of any objection(s), state with specificity the full objection(s) and the particularized basis for each objection. You must also state whether any responsive materials or information are being withheld on the basis of any objection(s). To the extent that You object to any portion of a Request, You must respond to the remaining portion of the Request to which You do not object.

3.  If You object to Request on the basis of any claim of privilege, then You must produce any and all information required by the Privilege Order for this matter.

4.  Each Request is considered continuing. You are required to timely supplement Your responses when appropriate or necessary under the Federal Rules of Civil Procedure to make them correct or complete. If, after responding to these Requests, additional responsive documents become available to You, You are required to produce such additional information.

5.  For purposes of interpreting or construing the scope of these Requests, the terms shall be given their most expansive and inclusive interpretation unless otherwise specifically limited by the language of an individual Request. This includes, without limitation, the following:

    a.  The terms "each," "every," "any," and "all" are synonymous with one another and with "each and every" and "any and all;"

    b.  The connectives "and" and "or" are used inclusively and not exclusively and shall be construed either disjunctively or conjunctively as to require the broadest possible response;

    c.  Construing the singular form of the word to include the plural and the plural form to include the singular;

    d.  Construing the masculine to include the feminine, and vice-versa;

    e.  The use of any tense of any verb shall also include all other tenses of that verb;

    f.  A term or word defined herein is meant to include both the lower and uppercase reference to such term or word.

7.  In construing these requests, You should give effect to the Definitions set forth below. Undefined words and terms shall be given their common meaning. If You are unsure about the definition of a particular term or word, use the definition that You believe to be the most accurate and state that definition in Your response. If, in responding to any of these requests, You encounter any other ambiguity in construing either the request or an instruction, then set forth the matter You deem ambiguous and the construction You use in answering the request.

13. The relevant time period for these Requests is January 1, 2009 through the present time, unless otherwise specified.

## Definitions

In these Requests, the following words and terms shall bear the meanings as identified below. For any undefined term, the standard dictionary definition of the term applies.

1.  "Communication(s)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

    a.  correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;

    b.  emails;

    c.  text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;

    d.  messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;

    e.  user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat, Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages sent "directly" or "privately;"

    f.  posts (whether public or otherwise) on any social media platform including but not limited to those referenced immediately above;

    g.  voicemails and voice messages;

    h.  any handwritten, printed, typed, photographed, recorded, computer-generated, or computer-stored representation or writing that memorializes, transcribes, or records the substance or occurrence of any meeting, conference, seminar, discussion, conference call, or videoconference call, including calendar invites, minutes, notes, memoranda, briefing materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions, audio recordings, and video recordings.

3.  "Document" and "Documents" shall have the broadest possible meaning and interpretation and refers to any material or information discoverable under Fed. R. Civ. P. 34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the information requested cannot be provided as to the original, each and every copy, duplicate or reproduction) of any medium upon which information can be recorded or retrieved. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any written, printed, recorded, typed, photostatic, photographed, computer-generated, computer-stored, graphic matter, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or bytes, including those in any language, whether produced or reproduced or stored on paper, cards, tape, film, computer, electronic storage devices or any other media. The definition of DOCUMENTS includes papers, trade letters, envelopes, telegrams, cables, messages, correspondence, memoranda, notes, email, text messages, instant messages, communications on any collaborative system or hub

(including but not limited to Google Chat, Slack, uChat, and HipChat), electronic signals, electronic data, active files, deleted files, file fragments, reports, studies, press releases, comparisons, books, accounts, checks, audio and video recordings, pleadings, testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, lists, logs, publications, notices, diagrams, instructions, diaries, meeting minutes, orders, resolutions, agendas and memorials or notes of oral Communications, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions of drafts thereof, whether used or not. A request for all Documents Concerning a particular subject matter includes within its scope all Communications Concerning that subject matter.

4.   "Driver" means anyone who uses or at any time has used the Uber Application to be connected with Riders for the purpose of providing rides to Riders. Where appropriate, "Driver" shall be interpreted to also include potential or prospective Drivers.

5.   "Driver Screening" refers to anything and everything done to gather information about drivers and to act on that information, which occurs before and is a condition of allowing them to offer Rides.

6.   "Electronic data," "electronic database," "database," and "data" mean the original (native electronic format) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Such terms include, by way of example only, computer programs (whether private, commercial or works-in-progress), programming notes or instructions, activity listings or electronic mail receipts and /or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PID files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media or which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Such terms include any and all items stored on computer memories, hard disks, floppy disks, CD-ROMS, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. Such terms also include the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

7.   "Fare" refers to all the money a Riders is required to pay in connection with a Ride, including but not limited to booking fees, base fares, tolls and surcharges, and surge pricing.

8.   "Identity," Identification," or "Identify" means:

a.   When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;

b.   When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;

      c.     When used in reference to a Document, shall mean to state the type of Document, date, author, addressee, recipient, title, its present location, the name and address of its custodian, and the substance of its contents. In lieu of the foregoing, a copy of the Document may be attached as an exhibit to Your answers; and

      d.     When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

9.     "Media" means any person or entity engaged in disseminating information to the general public through newspapers or other print publication (whether in print or online), radio, television, or other medium of mass communication.

10.    "Person" or "Persons" means any natural person, corporation, company, partnership, proprietorship, association, governmental or nongovernmental entity, agency, organization, group, or any other business entity or association.

11.    "Policy" or "Policies" means all formal and informal policies, practices, guidelines, protocols, procedures, plans, systems, customs, or manners of conducting a specific task that are or were adopted, implemented, considered, or used by You; and for each of the foregoing terms, the methods and means of implementation.

12.    "Regarding," "Referring To," "Refer To," "Reflecting," "Reflect," "Concerning," "Concern," "Relate(s)," "Relate(s) To," "Related To" or "Relating To" are used in their broadest sense and mean anything that, in whole or in part, analyzes, comments upon, concerns, contains, considers, constitutes, contradicts, comprises, deals with, describes, discusses, embodies, evidences, evaluates, indicates, identifies, involves, mentions, memorializes, pertains to, provides, refers to, reflects, regards, relates to, reports on, responds to, reviews, shows, states, summarizes, supports, or is in any way factually, legally, or logically pertinent to or connected with the subject matter or topic in question, either in whole or in part.

13.    "Regulator" means any executive or legislative body of any city, county, municipal, state, or federal government entity in the United States, including legislatures and executive agencies, and any agents, employees, contractors, officers, attorneys, representatives, elected officials, and all others acting, or who have acted, for it and/or on its behalf.

14.    "Ride" refers to transportation in an automobile, provided by a Driver to a Rider and facilitated via the Uber App and Uber Driver App.

15.    "Rider" refers to an individual who uses or at any time has used the Uber App to request a Ride.

16.    "Safety Risk" refers to anything that threatens to injure or harm, or does in fact injure or harm, Riders' physical safety and well-being, including but not limited to risks of kidnapping, sexual assault, sexual harassment, rape, battery, and/or murder.

17.    "Sexual Assault" shall mean physical or attempted physical conduct that is sexual in nature and without the consent of the Rider, including but not limited to all acts addressed in Defendants' taxonomy and Ralliance's Sexual Assault taxonomy.

18.    "Sexual Misconduct" shall mean any and all non-physical conduct (such as verbal or staring) of a sexual nature that is without consent or has the effect of threatening or intimidating a Rider, including but not limited to all acts addressed in Defendants' taxonomy and Raliance's Sexual Misconduct taxonomy.

19.     "Study" (noun) means a documented research project, analysis, investigation, study, or test that was conducted to identify, predict and/or understand something, and/or to accomplish specific goals.

20.     "Study" (verb) means to intentionally design, conduct, and/or document research, studies, analyses, investigation, and/or testing in order to identify, predict and/or understand something, and/or to accomplish specific goals.

21.     "Uber" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

22.     "Uber App" and "Uber Application" refer to Uber's mobile phone application that is used by Riders to order Rides.

23.     "Uber Driver App" and "Uber Driver Application" refer to Uber's mobile phone application that is used by Drivers to offer Rides.

26.     "Uber" "Defendant," or "Defendants" refers to Uber Technologies, Inc. and Rasier LLC., including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf.

27.     "You," or "Your," shall be used interchangeably and refer to the parties to which these requests are directed, including the parents, divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, employees, contractors, subcontractors, administrators, as well as any of its parents, divisions, departments, subsidiaries, affiliates, predecessors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

## Requests for Documents

1.  Please produce all communications with Uber.
2.  Please produce all documents exchanged with Uber.
3.  Please produce all documents related to the Industry Sharing Safety Program.
4.  Please produce all meeting minutes relating in any way to the Industry Sharing Safety Program.
5.  Please produce all meeting minutes, transcripts, summaries, presentations, and/or reports relating in any way to meetings (whether in person or remote) between You and Uber.
6.  Please produce all data You exchanged with Uber as part of the Industry Sharing Safety program.
7.  Please produce all communications with Regulators related in any way to the Industry Sharing Safety Program.
8.  Please produce all documents exchanged with Regulators related in any way to the Industry Sharing Safety Program.

9. Please produce all communications with Regulators related in any way to Uber, its Drivers, or its Riders.

10. Please produce all documents exchanged with regulators related in any way to Uber, its Drivers, or its Riders.

11. Please produce all documents related to partnering, coordinating, exchanging data, and/or otherwise working with Uber in any manner other than the Industry Sharing Safety Program.

12. Please produce all communications with Uber related to partnering, coordinating, exchanging data, and/or otherwise working with Uber in any manner other than the Industry Sharing Safety Program.

13. Please produce any contracts or agreements between You and Uber, including drafts.

14. Please produce all documents related to payments made to Uber or from Uber, including any invoices, purchase orders, contracts, or agreements, including drafts.

15. Please produce all documents related to any fee-sharing or fee-splitting arrangement to jointly pay for information, data, services, suppliers, vendors, and the like, including but any invoices, purchase orders, contracts, or agreements, including drafts.

# Exhibit B

WARREN METLITZKY (CA Bar No. 220758)
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:     (415) 343-7100
Fax:     (415) 343-7101
Email: wmetlitzky@conmetkane.com

*Attorneys for Lyft, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This document relates to:  All Cases | No. 3:23-md-03084-CRB<br><br>**NON-PARTY LYFT INC.'S OBJECTIONS & RESPONSES TO FEDERAL RULE 45 SUBPOENA** |

Lyft, Inc., a non-party in the above-captioned proceeding, objects and responds to the Plaintiffs' May 17, 2024 subpoena as set forth below.

\* \* \* \* \*

As it repeatedly has said throughout its discussions with Plaintiffs' counsel about its first subpoena (which discussions Lyft had notwithstanding that the subpoena was defective for multiple reasons, including that it violated Federal Rule of Civil Procedure 45(c)(2)), Lyft is open to considering a reasonable set of requests.  To aid Plaintiffs in coming to a reasonable scope, Lyft detailed the substantive problems with the first subpoena, such as that it sought documents available from a party, sought confidential or trade-secret information from Lyft without necessary protections, sought irrelevant information, was designed for an improper purpose and imposed a time period for production of more than fifteen years.  Plaintiffs corrected none of these problems in their May 17 subpoena; in fact, the requests are the same as the requests in the first subpoena.  Although Lyft continues to be open to discussing a reasonable subpoena, the fact Plaintiffs re-served their improper subpoena suggests they are more interested in burdening Lyft than reasonableness.

### Specific Objections Applicable to Multiple Demands

Lyft objects and responds below to Plaintiffs' document demands individually and with specificity.  For convenience, efficiency, and to avoid duplicating multiple lengthy objections detailing the many problems with Plaintiffs' subpoena, Lyft addresses here several issues common to some or all of the demands:

***The subpoena is invalid because it does not permit sufficient time to respond.***  The subpoena purports to give Lyft seven days to comply, although the actual period is shorter still because Plaintiff did not serve it until May 20, 2024—five days before the compliance date.  Whether the period for compliance is reasonable is "related to the extent of the materials requested and the other underlying circumstances of the particular case."  *In re Trinh*, 2022 WL 1769135, at *5 (Bankr. C.D. Cal. May 31, 2022) (quotation omitted).  Here, there can be no argument that seven days is reasonable, particularly given the scope of materials the subpoena purports to seek.

This "Invalid-Subpoena" Objection applies to requests 1 through 15 as if fully set forth therein.

1    ***The subpoena seeks documents available from a party.***  It is axiomatic that documents

2    should be sought from a party to an action in the first instance—not a non-party.  *See, e.g.*, *Nidec*

3    *Corp. v. Victor Co. of Japan,* 249 F.R.D. 575, 577 (N.D. Cal 2007).  Yet many requests demand

4    documents that, on their face, would be available to Plaintiffs from Uber.  As Lyft understands

5    Plaintiffs have not completed their efforts to obtain documents from Uber, the requests seeking

6    materials that also would be in Uber's possession, custody, or control are invalid.

7    This "Party-Discovery" Objection applies to requests 1 through 2, 5 through 6, and 11

8    through 14 as if fully set forth therein.

9    ***The subpoena seeks documents from an overbroad time period.***  The subpoena identifies the

10   relevant time period for its requests as "January 1, 2009 through the present time, unless otherwise

11   specified."  No other period is specified.  That more-than-fifteen-year period is overbroad and unduly

12   burdensome, particularly as it relates to a non-party.  There is nothing to suggest that documents

13   from that entire time period even are relevant to the claims asserted in the action (and Plaintiff has

14   not tried to make that showing).

15   This "Time-Period-Overbreadth" Objection applies to requests 1 and 2, 5, and 11 through 15

16   as if fully set forth therein.

17   ***The subpoena seeks documents for an improper purpose.***  During a May 10, 2024

18   discussion on Plaintiffs' initial subpoena, Plaintiffs' counsel suggested that a reason for the scope of

19   some of the requests was that Plaintiffs sought documents relevant to potential claims against Lyft.

20   That is not a proper purpose for a third-party subpoena, and requests that target Lyft's information

21   therefore are invalid.

22   This "Improper-Purpose" Objection applies to requests 3 through 5, 7 through 10, and 15 as

23   if fully set forth therein.

24   ***The subpoena asks Lyft to produce confidential and competitively-sensitive material to a***

25   ***competitor.***  The protective order in this action (a copy of which was not provided with the

26   subpoena) contemplates that at least some of Uber Technologies, Inc.'s employees will have access

27   to materials produced by third parties, even those materials designated "Highly Confidential—

28   Attorney's Eyes Only."  As there are no protections in place to ensure Lyft information does not go

2

to Uber, requests that seek Lyft's own material are improper.

This "Confidentiality" Objection applies to requests 3 through 5, 7 through 11, and 15 as if fully set forth therein.

***The subpoena is inconsistent with the obligations of Federal Rule 45(d)(1).*** "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1). There has been no effort to do so, including for all of the reasons detailed above.  The failure to serve a reasonable subpoena appears intentional, given that Lyft detailed during two discussions addressing Plaintiffs' first (defective) subpoena the many substantive problems with the requests and invited Plaintiffs to serve a more-tailored set of requests.  Plaintiffs did not.

This "Rule 45(d)(1)" Objection applies to requests 1 through 15 as if fully set forth therein.

***Right to amend and supplement.***  Lyft reserves all rights to amend and supplement its objections.  These amendment and supplementation rights apply to its response to each request.

### Objections to Definitions and Instructions

1.     Lyft objects to the subpoena's definitions and instructions insofar as they seek to impose obligations on Lyft beyond those the Federal Rules of Civil Procedure, or the law generally, impose.

2.     Lyft objects to instruction 3 insofar as it purports to demand that Lyft comply with an order that has not been provided to it (and thus which Lyft cannot assess whether the order applies).

3.     Lyft objects to instruction 5 as requiring unreasonable efforts on the part of a third party.

### Responses and Objections

**Request 1:**     Please produce all communications with Uber.

**Response:**     Lyft asserts its Invalid-Subpoena, Party-Discovery, Time-Period-Overbreadth, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request because it seeks materials irrelevant to this action, including because "all communications with Uber" encompasses materials far beyond what Lyft understands the claims or defenses at issue in the

matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on those grounds as well.  (More generally, Lyft cannot quantify the burden associated with the request given that it quite literally asks for all communications between the two biggest transportation-network companies.)  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 2:**   Please produce all documents exchanged with Uber.

**Response:**   Lyft asserts its Invalid-Subpoena, Party-Discovery, Time-Period-Overbreadth, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request because it seeks materials irrelevant to this action, including because "all communications with Uber" encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on those grounds as well.  (More generally, Lyft cannot quantify the burden associated with the request at this time given that it quite literally asks for all communications between the two biggest transportation-network companies.)  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 3:**   Please produce all documents related to the Industry Sharing Safety Program.

**Response:**   Lyft asserts its Invalid-Subpoena, Improper-Purpose, Confidentiality, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request insofar as the phrase "Industry Sharing Safety Program" is undefined, notwithstanding that it is a capitalized term.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar

4

as it demands "all documents" regarding the Industry Sharing Safety Program, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well.  (More generally, Lyft cannot quantify the burden associated with the request at this time given that it quite literally asks for all documents at Lyft about the Industry Sharing Safety Program.)  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 4:**     Please produce all meeting minutes relating in any way to the Industry Sharing Safety Program.

**Response:**     Lyft asserts its Invalid-Subpoena, Improper-Purpose, Confidentiality, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request insofar as the phrase "Industry Sharing Safety Program" is undefined, notwithstanding that it is a capitalized term.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "all meeting minutes" regarding the Industry Sharing Safety Program, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome.  Lyft further objects because, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 5:**     Please produce all meeting minutes, transcripts, summaries, presentations, and/or reports relating in any way to meetings (whether in person or remote) between You and Uber.

**Response:**     Lyft asserts its Invalid-Subpoena, Party-Discovery, Time-Period Overbreadth, Improper-Purpose, Confidentiality, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft

5

incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "all meeting minutes" (and other documents) regarding meetings about any topics that Lyft and Uber had, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well.  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 6:**     Please produce all data You exchanged with Uber as part of the Industry Sharing Safety program.

**Response:**     Lyft asserts its Invalid-Subpoena, Party-Discovery, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request insofar as the phrase "Industry Sharing Safety Program" is undefined, notwithstanding that it is a capitalized term.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "all data … exchanged with Uber" regarding the Industry Sharing Safety Program, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well.  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 7:**     Please produce all communications with regulators related in any way to the Industry Sharing Safety Program.

**Response:**     Lyft asserts its Invalid-Subpoena, Improper-Purpose, Confidentiality, and

Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request insofar as the phrase "Industry Sharing Safety Program" is undefined, notwithstanding that it is a capitalized term.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "all communications with regulators" regarding the Industry Sharing Safety Program, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well.  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection (including that arising from an actual or potential settlement) from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 8:**     Please produce all documents exchanged with regulators related in any way to the Industry Sharing Safety Program.

**Response:**     Lyft asserts its Invalid-Subpoena, Improper-Purpose, Confidentiality, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request insofar as the phrase "Industry Sharing Safety Program" is undefined, notwithstanding that it is a capitalized term.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "all documents exchanged with regulators" regarding the Industry Sharing Safety Program, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well.  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection (such as that arising from an actual or potential settlement) from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 9**:     Please produce all communications with regulators related in any way to Uber, its Drivers, or its Riders.

**Response**:     Lyft asserts its Invalid-Subpoena, Time-Period-Overbreadth, Improper-Purpose, Confidentiality, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "all communications with regulators" on the broad topics of "Uber, its Drivers, or its Riders."  (Of course, the subpoena does not identify how, precisely, Lyft is supposed to identify who Uber's "Drivers" and "Riders" are.)  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well.  (More generally, Lyft cannot quantify the burden associated with the request at this time given that it quite literally asks for all communications with regulators about incredibly broad, and undefined, subjects.)  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection (such as that arising from an actual or potential settlement) from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 10**:     Please produce all documents exchanged with regulators related in any way to Uber, its Drivers, or its Riders.

**Response**:     Lyft asserts its Invalid-Subpoena, Time-Period-Overbreadth, Improper-Purpose, Confidentiality, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "all documents exchanged with regulators" on the broad topics of "Uber, its Drivers, or its Riders."  (Of course, the subpoena does not identify how, precisely, Lyft is supposed to identify who Uber's "Drivers" and "Riders" are.)  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well.  (More generally, Lyft cannot quantify the burden associated with the request at this time given that it quite

literally asks for all documents exchanged with regulators about incredibly broad, and undefined, subjects.)  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection (such as that arising from an actual or potential settlement) from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 11:**   Please produce all documents related to partnering, coordinating, exchanging data, and/or otherwise working with Uber in any manner other than the Industry Sharing Safety Program.

**Response:**     Lyft asserts its Invalid-Subpoena, Time-Period-Overbreadth, Improper-Purpose, Confidentiality, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request insofar as the phrase "Industry Sharing Safety Program" is undefined, notwithstanding that it is a capitalized term.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "all documents" relating to working with Uber on any subject matter, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well. Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 12:**   Please produce all communications with Uber related to partnering, coordinating, exchanging data, and/or otherwise working with Uber in any manner other than the Industry Sharing Safety Program.

**Response:**     Lyft asserts its Invalid-Subpoena, Party-Discovery Objections, Time-Period-Overbreadth, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the

request insofar as the phrase "Industry Sharing Safety Program" is undefined, notwithstanding that it is a capitalized term.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "all documents" relating to working with Uber on any subject matter, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well. Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 13:**    Please produce any contracts or agreements between You and Uber, including drafts.

**Response:**      Lyft asserts its Invalid-Subpoena, Party-Discovery, Time-Period-Overbreadth, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "any contracts or agreements" relating with Uber on any subject matter, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well.  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 14:**    Please produce all documents related to payments made to Uber or from Uber, including any invoices, purchase orders, contracts, or agreements, including drafts.

**Response:**      Lyft asserts its Invalid-Subpoena, Party-Discovery, Time-Period-Overbreadth, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request because it

seeks information irrelevant to this action, insofar as it demands "all documents related to payments" between it and Uber on any subject matter, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well.  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

**Request 15:**   Please produce all documents related to any fee sharing or fee-splitting arrangement to jointly pay for information, data, services, suppliers, vendors, and the like, including but [sic] any invoices, purchase orders, contracts, or agreements, including drafts.

**Response:**      Lyft asserts its Invalid-Subpoena, Time-Period-Overbreadth, Improper-Purpose, Confidentiality, and Rule 45(d)(1) Objections as if fully set forth herein.  Lyft incorporates its objections to the definitions and instructions as if fully set forth herein.  Lyft further objects to the request as ambiguous insofar as it seeks documents relating to a "fee sharing or fee-splitting arrangement," but does not identify with whom or what entity Lyft would be sharing or splitting fees.  Lyft further objects to the request because it seeks information irrelevant to this action, insofar as it demands "all documents related to any fee sharing or fee-splitting arrangement," apparently with any individual or entity on any subject matter, which encompasses materials far beyond what Lyft understands the claims or defenses at issue in the matter to be.  That the request seeks irrelevant information also means, necessarily, that the request is overly broad and unduly burdensome—and it is objectionable on that ground as well.  (More generally, Lyft cannot quantify the burden associated with the request at this time given that it quite literally asks for all documents relating to any arrangements to jointly pay (with an undefined) party for any services on any matters.)  Lyft further objects because the request, as drafted, could encompass material protected as privileged, work product, or another privilege or protection from disclosure.  Lyft, of course, would not produce privileged or protected documents.

Lyft will not search for or produce documents in response to the request.

11

1   Dated:  May 24, 2024          Respectfully submitted,

By: */s/ Warren Metlitzky*
_____

Warren Metlitzky (CA Bar No. 220758)
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: wmetlitzky@conmetkane.com

*Attorneys for Lyft, Inc.*

12

**PROOF OF SERVICE**

I, **FELIPE CORREDOR**, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action.  I am employed at the law firm of Conrad | Metlitzky | Kane LLP, 217 Leidesdorff Street, San Francisco, CA, 94111.

On May 24, 2024, I served the following document(s):

**NON-PARTY LYFT INC.'S OBJECTIONS & RESPONSES TO FEDERAL RULE 45 SUBPOENA**

on the following person(s) at the location(s) specified:

> Samantha Hoefs
> NIGH GOLDENBERG RASO & VAUGHN
> 60 South 6th St. #2800
> Minneapolis, MN  55402
> shoefs@nighgoldenberg.com

> *Plaintiffs' Counsel*

in the manner indicated below:

☒        **BY EMAIL:**  I caused a copy of such document to be transmitted *via* electronic mail in portable document format ("PDF") Adobe Acrobat from the electronic address: fcorredor@conmetkane.com.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed May 24, 2024, at Toronto, Canada.


                                                */s/ Felipe Corredor*
                                                **FELIPE CORREDOR**