June 7, 2024

**SHOOK**
HARDY & BACON

*Via ECF*
The Hon. Lisa J. Cisneros, United States Magistrate Judge
Phillip Burton Federal Building, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Michael B. Shortnacy
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
**t** 424.285.8330
mshortnacy@shb.com

Re:    *In re: Uber Technologies, Inc., Passenger Sexual Assault Litig.*, Case No. 3:23-md0384-CRB

Judge Cisneros:

Like the rest of Plaintiffs' 30 subpoenas, the 7x7 Experience subpoena seeks documents Plaintiffs have already requested from Uber in party discovery. But where an opposing party is reasonably expected to have the same documents, a party must seek them in party discovery before burdening nonparties. Because Plaintiffs cannot show that 7x7 is likely to possess relevant and non-duplicative documents that they cannot seek from Uber, the Court should not permit Plaintiffs to side-step ordinary party discovery and seek duplicative requests from 7x7. Nor is it clear why Plaintiffs are targeting 7x7 at all, given that 7x7 has confirmed none of its training for independent Uber drivers has anything to do with sexual misconduct or assault.

Plaintiffs also made no attempt to comply with Rule 45's mandate that they "must take reasonable steps to avoid imposing undue burden or expense on" the recipients. Fed. R. Civ. P. 45(d)(1). The overbroad requests seek "all documents" and "all communications" to or from Uber—without any limitation on time, scope, or subject matter—sweeping in vast amounts of Uber's confidential, proprietary, and non-public documents which have no relevance to this litigation. The Court should quash the subpoena under Rule 45 or enter a protective order under Rule 26 barring its enforcement.

## ARGUMENT

**I.    THE 7x7 SUBPOENA SEEKS DOCUMENTS AVAILABLE FROM UBER, IS OVERBROAD, AND SEEKS UBER'S PROPRIETARY INFORMATION.**

**A.    Plaintiffs' Document Requests Require Production of Uber's Proprietary Information and Confidential, Non-Public Documents and Communications.**

The duplicative and overbroad nature of Plaintiffs' requests implicates Uber's interests because, if left unremedied, it would require the production of enormous swaths of Uber's confidential, proprietary, and non-public documents and communications. *See* Fed. R. Civ. P. 45(d)(3)(B)(i).

7x7 provides instructor-led and webinar courses focused on safety and professionalism for rideshare drivers, unrelated to sexual assault. Declaration of Brian Johnson ¶¶ 6-7 (Exhibit A). As can easily be seen on 7x7's website, its courses for independent Uber drivers focus on improving their ratings on the Uber app.[1] Uber and 7x7's relationship is governed by an agreement that recognizes that confidential and proprietary business information will be shared between the two companies and prohibits the disclosure of that information. *Id.* ¶¶ 7-10. Uber has worked with 7x7 Experience since 2014. *Id.* ¶ 6. In reliance on that confidentiality, Uber and 7x7 have each provided significant proprietary information on their respective platforms, including technical data on workflow processes that are highly proprietary, as well as driver eligibility data. *Id.* ¶ 7. Plaintiffs have not shown that much, if any, of this proprietary information has any bearing on this litigation (regarding sexual assault), much less that (if relevant) it is not available directly from Uber in party discovery. *See, e.g., Gradillas Ct. Reps., Inc. v. Cherry Bekaert, LLP*, No. 18-MC-80064-KAW, 2018 WL 2197544, at *3 (N.D. Cal. May 14, 2018) (stating that "confidential, trade secret business information, including pricing and procurement information" is protected by Rule 45 unless there is a "substantial need" for the

---

[1]    *See*  https://www.7x7experience.com/uber/  (offering courses on "quality improvement," covering "-Driver professionalism and maintaining 5-star ratings, -Advanced navigation, app, and safety concepts, [and] -How to quickly address customer service issues"; improving tipping; and Uber Eats).

documents). In fact, the discovery demanded of 7x7—every single document or communication ever exchanged between Uber and 7x7, with no limitation on time, scope, or subject matter—would consist primarily of non-public or confidential documents and communications in which Uber has a substantial privacy interest.[2]

**B.      Plaintiffs May Not Seek Documents from Third Parties That They Can Seek Directly from Uber.**

Plaintiffs' subpoena to 7x7 is improper because Plaintiffs have already sought discovery on Uber's driver training policies and practices directly from Uber in the ordinary course of party discovery. They have made no showing that any relevant documents cannot be obtained from Uber, nor have they limited their requests to documents they believe cannot be obtained from Uber. Plaintiffs' subpoena is entirely duplicative and an attempt to end-run the normal party discovery process and Uber's ability to object to the production of its own documents and communications.

In *Athalonz, LLC v. Under Armour, Inc.*, this Court quashed a subpoena in full because it sought discovery that was available from a party. No. 23-MC-80324-LJC, 2024 WL 628846, at *5-7 (N.D. Cal. Feb. 14, 2024) (Cisneros, J.). The Court said the plaintiff would only be permitted to renew the subpoena after seeking the discovery from the defendant if the plaintiff could establish that the third party was "likely to possess relevant and non-duplicative documents" it could not obtain from the defendant. *Id.* at *8. Numerous other courts have similarly explained that third party discovery should not be used to obtain documents available in party discovery.[3] After all, "the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery," *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023), and "subpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34,"[4] *Burns v. Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i) (prohibiting discovery that "is unreasonably . . . duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

---

[2]     A party's standing to move to quash a subpoena cannot be based on third party burden. But once a party has standing because it is "affected by a subpoena," Fed. R. Civ. P. 45(d)(3)(B), the Court evaluating the motion to quash must engage in a balancing analysis that includes consideration of burden. *E.g.*, *Jacoby v. Bd. of Supervisors of Univ. of Louisiana Sys.*, No. 2:23-MC-00403 KJM AC, 2023 WL 8843087, at *2 (E.D. Cal. Dec. 21, 2023); *see also Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006). Thus, the Court can properly consider the burden on 7x7 in ruling on Uber's motion to quash. *See, e.g.*, *Serrala US Corp. v. Paschke*, No. 3:21-CV-907/TKW/ZCB, 2022 WL 19333286, at *3 (N.D. Fla. Sept. 7, 2022) (granting party "a protective order staying compliance with the third-party subpoenas" because discovery was available in party discovery); *Burns v. Bank of Am.*, No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (granting party's motion to quash because subpoena was duplicative of party discovery); *Lemoine*, 2020 WL 3316119, at *1 (same).

[3]     *See, e.g.*, *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022); *Lemoine v. Mossberg Corp.*, No. 3:18-CV-01270 (KAD), 2020 WL 3316119, at *1 (D. Conn. June 18, 2020); *Genus Lifesciences Inc. v. Lannett Co., Inc.*, No. 18-CV-07603-WHO, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019); *Serrala US Corp.* 2022 WL 19333286, at *2; *Hickman v. Mead*, No. 218CV00404GMNNJK, 2019 WL 3837784, at *2 (D. Nev. Aug. 14, 2019); *Amini Innovation Corp. v. McFerran Home Furnishings*, Inc., 300 F.R.D. 406, 410 (C.D. Cal. 2014); *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (holding that the district court "properly require[d a party] to seek discovery from its party opponent before" seeking it from a third party).

[4]     *Cf. Springbrook Lenders*, 121 F.R.D. at 680 (subpoenas may not be used to evade time limit under discovery order); *Goldstein*, 494 B.R. at 87 (subpoenas may not be used to seek documents unsuccessfully sought in party discovery and motion practice); *Layman v. Junior Players Golf Acad., Inc.*, 314 F.R.D. 379, 385 (D.S.C. 2016) ("[R]esort to Rule 45 should not be allowed when it circumvents the requirements and protections of Rule 34 for the production of documents belonging to a party.").

Plaintiffs' subpoena to 7x7 (like their other subpoenas) seeks "*all* communications with Uber" and "*all* documents exchanged with Uber" (emphasis added). Logically, communications and documents exchanged with Uber involve Uber. Plaintiffs should seek these documents from Uber, not from 7x7. In fact, Plaintiffs *are* currently seeking discovery from Uber on driver training. *See* Pls.' RFP No. 24 ("Any and all of your training materials, including audio or visual materials, provided to drivers"). The Court should allow the ordinary discovery process, including custodian negotiations, objections, meet and confers, and (if necessary) motion practice, to work itself out. Plaintiffs cannot make any non-speculative showing that any particular, relevant documents cannot be sought through party discovery and, even if they had, they have not limited their requests to such documents.

### C.      Plaintiffs' Document Requests are Overbroad.

Plaintiffs' requests in the 7x7 subpoena—demanding every single communication with Uber and every document sent to or from Uber, without any limitation on time, subject matter, or scope—are grossly overbroad. Such requests would be inappropriate for party discovery, but are particularly improper when made to a third party who has no stake in this litigation. These requests would require production of Uber's proprietary information, as well as its non-public and confidential documents and communications.

Courts "may quash a subpoena *duces tecum* as overbroad if it 'does not limit the [documents] requested to those containing subject matter relevant to the underlying action." *HDSherer LLC v. Nat. Molecular Testing Corp*, 292 F.R.D. 305, 308 (D.S.C. 2013). Here, Plaintiffs' requests are overbroad in virtually every way possible. First, the subpoenas contain no time limitations. The 7x7 subpoena demands documents from Uber's founding in 2009 to 2024, and is not tailored to any relevant time period. Second, Plaintiffs' requests fail to identify the specific documents sought with reasonable particularity. Courts regularly find that requests seeking "any and all" documents or communications or those that "refer or relate to" broad categories are impermissibly overbroad—as opposed to requests for documents "sufficient to show" specific facts. Finally, Plaintiffs' requests are not limited in subject matter. Rather than make specific requests—such as seeking documents sufficient to show the general nature of the driver training provided by 7x7 to Uber drivers or Uber's process or policies for training drivers—Plaintiffs have asked 7x7 for every single document or communication to or from Uber. Demanding every communication, every document, and everything related in any way to payments and scope of work performed for Uber is clearly excessive, especially in the context of third party discovery, which "require[s] a stronger showing of relevance than for simple party discovery." *E.g.*, *Pandora Media*, 2024 WL 660244, at *1.

## II.      UBER HAS STANDING TO CHALLENGE THE SUBPOENAS.

Uber has standing to move to quash or for a protective order regarding the 7x7 subpoena because it seeks the disclosure of Uber's non-public, confidential, and proprietary documents and communications. It is true that a party lacks standing to challenge a subpoena if the party has no interest in the discovery sought. But parties *do* have standing when they "claim[] some personal right or privilege in the information sought by the subpoena," *Singletary v. Sterling Transp. Co*., 289 F.R.D. 237, 239 (E.D. Va. 2012), or where they "believes [their] own interests are jeopardized by discovery sought from a third party." *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 787924, at *2 (N.D. Cal. Feb. 29, 2016); *see also* Fed. R. Civ. P. 45(d)(3)(B) (stating that anyone "affected by a subpoena" may move to quash it). "Even a minimal privacy interest is sufficient to establish standing for a motion to quash." *Russell v. City of Chicago*, No. 20-CV-1163, 2022 WL 294765, at *1 (N.D. Ill. Feb. 1, 2022). Indeed, courts have recognized that parties have standing to challenge subpoenas related to their personal or confidential information, even if not legally privileged,

June 7, 2024
Page 4

in a broad range of contexts.[5]  Courts have also found standing based on the opposing party using third-party discovery to evade a court's limits on discovery, *see Springbrook Lenders v. Nw. Nat. Ins. Co.*, 121 F.R.D. 679, 680 (N.D. Cal. 1988), and where the third party possesses the responsive documents by virtue of its relationship with a party, *see Fusion Elite All Stars*, 340 F.R.D. at 261 (noting that third party "would not have had access to or possession of these documents except for the fact that she was [the party's] employee").

Here, Plaintiffs' subpoena seeks Uber's confidential, proprietary, and non-public documents that 7x7 possesses by virtue of its close business relationship with Uber, governed by a confidentiality agreement.  Uber has standing to challenge the production of its own documents and communications in 7x7's possession.

Finally, even if the Court were to determine that Uber lacked standing to move to the 7x7 subpoena, parties have standing, and the Court can grant the same relief with a Rule 26 protective order, which Uber moves for in the alternative.  *See e.g.*, *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc*., 314 F.R.D. 214, 218 (M.D. La. 2016) ("[A] party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena."); *Cunningham v. Concentrix Sols. Corp.*, No. 4:20-CV-00661, 2021 WL 425099, at *2 (E.D. Tex. Feb. 8, 2021) (similar); *Glass Egg Digital Media v. Gameloft, Inc*., No. 17CV04165MMCRMI, 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019) (similar); *Serrala US Corp.* 2022 WL 19333286, at *3.

For the reasons set forth above, Uber respectfully asks the Court to quash in full the subpoena issued by Plaintiffs to 7x7 Experience.  Alternatively, the Court should issue a protective order barring the enforcement of the 7x7 subpoena.[6][7]

---

[5]    *See, e.g.*, Merlo v. McDonough, No. 2:19-CV-05078-ODW-JC, 2021 WL 4434336, at *2 (C.D. Cal. Aug. 2, 2021) (medical records); Hunter v. Shield, No. 2:18-CV-1097, 2020 WL 6484055, at *12 (S.D. Ohio Nov. 4, 2020) (personal and business tax records); *Sines v. Kessler*, No. 18-MC-80080-JCS, 2018 WL 3730434, at *9 (N.D. Cal. Aug. 6, 2018) (Discord chat app account information and content); *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG(DMR), 2016 WL 787924, at *3 (N.D. Cal. Feb. 29, 2016) (phone records); *Verisign, Inc. v. XYZ.com, LLC*, No. CV 15-MC-175-RGA-MPT, 2015 WL 7960976, at *3 (D. Del. Dec. 4, 2015) (records of business "who has worked closely with defendants on business transactions"); *Chevron Corp. v. Donziger*, No. 12-MC-80237 CRB (NC), 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (email accounts); *Singletary v. Sterling Transp. Co*., 289 F.R.D. 237, 240 (E.D. Va. 2012) (employment records); *Liberty Mut. Fire Ins. Co. v. Ravannack*, No. CIV.A. 00-1209, 2002 WL 1770936, at *3 (E.D. La. Aug. 1, 2002) (records of employee); *In re Ashworth, Inc. Sec. Litig*., No. 99-CV-121, 2002 WL 33009225, at *2 (S.D. Cal. May 10, 2002) (confidential business information); *see also* Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. 2023) (noting that the "personal right or privilege standard" for party standing to object to a subpoena "has been recognized in numerous cases").

[6]    The Court should not interpret the fact that 7x7 Experience has not filed a brief as a lack of opposition to Plaintiff's subpoena.  Counsel for 7x7 served objections on Plaintiffs on May 7 (attached as Exhibit B) and amended objections on May 22 (attached as Exhibit C), informed in writing Plaintiffs that "7x7 does not offer any products that address or pertain to sexual assault" and is therefore "not aware of any communications, documents or other materials related to the Defendant that would be of relevance in this matter," and asked Plaintiffs to withdraw the subpoena.  Counsel for 7x7 also participated in a meet and confer on June 5 with counsel for Plaintiffs and Uber.  As it is entitled to do under Rule 45, 7x7 is standing on its objections and requiring Plaintiffs to carry their burden of showing that the subpoena requests are relevant, proportional, and appropriate under Rule 45 on a motion to compel, which Plaintiffs have not yet filed.  *See* Fed. R. Civ. P. 45(d)(2)(B).

[7]    Two days before this brief was due, Plaintiffs represented to Uber and 7x7 that they "are seeking materials related to passenger interactions."  This belated modification does not change the overbreadth of the subpoena.  Plaintiffs are still demanding every single communication, draft, invoice, payment, or other document ever in existence having anything to do with Uber and driver-passenger interactions—regardless of whether it has anything to do with sexual misconduct or assault.  Given the very broad requests and definitions in the subpoena, this would still encompass most

June 7, 2024
Page 5

Sincerely,
By: */s/ Michael B. Shortnacy*
Michael B. Shortnacy
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
mshortnacy@shb.com

---

of the documents in 7x7's possession, as 7x7 exclusively provides its services to independent Uber drivers and most of its work has at least some indirect connection to "passenger interactions."

ATLANTA | BOSTON | CHICAGO | DENVER | HARTFORD | HOUSTON | KANSAS CITY | LONDON | LOS ANGELES | MIAMI | NEW YORK |
ORANGE COUNTY | PHILADELPHIA | SAN FRANCISCO | SEATTLE | ST. LOUIS | TAMPA| WASHINGTON, D.C.