June 7, 2024

**SHOOK**
HARDY & BACON

*Via ECF*
The Hon. Lisa J. Cisneros, United States Magistrate Judge
Phillip Burton Federal Building, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Michael B. Shortnacy
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
**t** 424.285.8330
mshortnacy@shb.com

Re:   *In re: Uber Technologies, Inc., Passenger Sexual Assault Litig.*, Case No. 3:23-md0384-CRB

Judge Cisneros:

Plaintiffs' subpoena to Sara Peters, a member of the Plaintiffs' Steering Committee in this MDL, is one of two subpoenas issued to plaintiffs' attorneys who have previously litigated other cases against Uber and received company documents and deposition testimony under protective order. Plaintiffs' subpoena calls for the production of "all documents" and "all deposition transcripts" Ms. Peters "received from Uber in connection with litigation in which Uber was a party." This request would require the production of confidential deposition testimony provided by Uber in a prior case in which Ms. Peters was adverse to Uber, which is subject to a protective order. This subpoena is a blatant attempt to get around the protective order in that case and circumvent the party discovery process. Protective order aside, this subpoena is an improper cloned discovery request because it seeks wholesale production of discovery from another case with significantly different factual allegations.

The Court should quash the subpoena under Rule 45 or enter a protective order under Rule 26 barring compliance with the subpoena.

## **ARGUMENT**
### I.   PLAINTIFFS' SUBPOENA TO SARA PETERS IS IMPROPER.
#### A.   Plaintiffs' Subpoena is an Improper Attempt to End-Run Party Discovery.

Ms. Peters was counsel for the plaintiff in a prior case filed against Uber, *Jane Doe v. Uber Technologies Inc., et al.*, No. 3:19-cv-03310-JSC (N.D. Cal. Sept. 15, 2022). Declaration of Gregory F. Miller ¶ 15 (Exhibit A). That case involved a sexual assault by an individual who was <u>not</u> an authorized driver on the Uber platform and the plaintiff mistakenly got into his vehicle. *Id.* ¶¶ 4-5; Order Re: Uber's Motion for Summary Judgment, ECF 246, *Doe* (Sept. 15, 2022). The *Doe* case did not involve a ride set up through the Uber app. *Id.* The plaintiff's theory in that case was that Uber was negligent by not preventing the assailant from using an Uber decal on his vehicle. *Id.* The court in *Doe* entered summary judgment in Uber's favor. *Id.* ¶ 6.

The court in the *Doe* case entered a protective order prohibiting the unauthorized disclosure of discovery produced in the case and designated as confidential by the producing party. *Id.* ¶¶ 7-14. Uber produced confidential documents and provided deposition testimony in discovery in that case in reliance on the court's protective order. *Id.* ¶ 14.

As a threshold matter, Plaintiffs' request for the documents produced by Uber in the *Doe* case are duplicative in light of the fact that Uber has already reproduced documents from this case pursuant to PTO 5. Plaintiffs have no valid reason to seek these documents from Ms. Peters when Uber has already produced them.[1]

Any deposition testimony provided by Uber in the *Doe* case that may have any relevance to this litigation can be requested by Plaintiffs through the ordinary party discovery process. Plaintiffs' subpoena to one of the lead Plaintiffs' counsel in this litigation appears to be an attempt to circumvent the *Doe* court's protective order and prevent Uber from having the opportunity to object to the disclosure of its own confidential deposition testimony.

---

[1] The *Doe* case in which Ms. Peters was counsel was included in the PTO 5 productions based on PTO 5's broad language that encompassed all "Uber sexual assault cases." (ECF 175, p.4) But as explained in this brief, the factual allegations and legal theories in that case were very different from those in this MDL.

Two cases are particularly instructive on Plaintiffs' tactic.  In *Burns v. Bank of America*, a defendant moved to quash a subpoena served on one of the defendant's department presidents "requesting the same documents that they had sought in their [party] discovery request" to the defendant.  No. 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *13-14 (S.D.N.Y. June 4, 2007).  The court noted that the subpoena "appears to have been served by the plaintiffs in an effort to circumvent the regular discovery process." *Id.*  It further explained that "subpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Id.*  Citing Rule 26(b)(2)(c) (which states that courts must limit discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"), the court granted the defendant's motion to quash the subpoena.

Similarly, in *Lemoine v. Mossberg Corp.*, a plaintiff served a subpoena on a wholly-owned subsidiary of the defendant, seeking documents that it had already "sought from the Defendants through the normal course of discovery," but "were not satisfied with the responses received."  No. 3:18-CV-01270 (KAD), 2020 WL 3316119, at *1 (D. Conn. June 18, 2020).  The court explained that "[a] Rule 45 subpoena is not an alternative to the meet and confer requirements of Rule 37 and the appropriate procedures for bringing discovery disputes to the Court for resolution." *Id.*  The court granted the defendant's motion to quash.

Together, these cases illustrate that Rule 45 subpoenas may not be used as an avenue to circumvent party discovery, including the enforcement mechanisms in party discovery (meeting and conferring and motions to compel) if a party is not satisfied with the opposing party's responses and productions.  This principle applies here.  The testimony provided by Uber to Ms. Peters in the *Doe* case can be requested from Uber in party discovery (whether by asking to depose an Uber witness on a relevant topic or requesting the *Doe* transcripts).  Should Plaintiffs do so, Uber will consider the request in good faith and respond appropriately.  Plaintiffs should not be permitted to side-step that process because they know Ms. Peters will not object to the subpoena.

**B.     Plaintiffs' Subpoena Improperly Seeks Discovery Subject to a Protective Order.**

Aside from the fact that Plaintiffs should seek any relevant discovery produced by Uber in the *Doe* case through party discovery, the Court should quash the subpoena because it demands production of confidential information subject to a protective order.

This Court should respect the protective order in the *Doe* case, which prohibits the unauthorized disclosure of confidential information produced in the case.  *See, e.g.*, *Lee v. Certainteed Corp.*, No. 5:13-CV-826-FL, 2015 WL 12857328, at *7 (E.D.N.C. July 30, 2015) ("[W]here '[c]ourts which have been called upon to decide discovery motions that involve requests to modify or terminate a protective order previously issued by another court, whether state or federal, have frequently felt constrained by principles of comity [and] courtesy.'"); *see also Dushkin Pub. Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) ("[T]he court will not require the production of documents which contain information that has been deemed confidential pursuant to [another court's] protective order."); *Barrella v. Vill. of Freeport*, No. 12-CV-0348 ADS WDW, 2012 WL 6103222, at *2 (E.D.N.Y. Dec. 8, 2012) ("[W]hile obtaining the fruits of discovery in the earlier action might well save [a party] time and money, that does not entitle [the party] to documents and information governed by the protective order.").

A subpoena request to an opposing party is inapposite to the issue this Court previously addressed in the context of PTO 5.  The Court concluded that protective orders in prior cases would not prevent *Uber* from producing *its own documents*.  (ECF 321, p.9)  But whether it is proper for Plaintiffs to subpoena a third party seeking Uber's discovery materials is another matter.

There is no reason why Plaintiffs need to seek confidential deposition testimony or documents through a subpoena to an opposing counsel in another case rather than directly from Uber, unless the goal is to improperly prevent Uber from having any ability to object or review the discovery for responsiveness.  But as the court in *Lemoine* explained, if Plaintiffs are unsatisfied with Uber's responses, their remedies lie under Rule 34, not Rule 45.  2020 WL 3316119, at *1.

June 7, 2024
Page 3

### C. Plaintiffs' Subpoena is an Improper Cloned Discovery Request.

Plaintiffs' subpoena to Ms. Peters is improper for the additional reason that it is a cloned discovery request. "Cloned discovery" requests that a party produce all documents produced or received during other litigation, are deemed irrelevant unless "the fact that particular documents were produced or received by a party is relevant to the subject matter of the subject case." *King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. 2011). "This is because, without more, the Court cannot ascertain whether the documents requested actually relate to Plaintiffs' claims and defenses." *Id.*

Here, the subject subpoena would encompass patently irrelevant deposition testimony. Given the nature of the allegations in *Doe*, the discovery in that case largely focused on Uber's practices with regard to controlling the possession of Uber vehicle decals. That has no relevance here. This is not to say that there might not be some marginally relevant materials in the *Doe* discovery, but Plaintiffs should seek that from Uber through the ordinary course of party discovery with appropriately tailored discovery requests.

The mere fact that two cases are "similar" is not sufficient to permit cloned discovery requests. *See Chen v. Ampco System Parking*, 2009 WL 2496729 at *2 (S.D. Cal. 2009) ("Although Plaintiff identified certain similarities between the state cases and this case such similarities are not enough to require a carte blanche production of documents from the state cases."). For example, the court in *Chen* denied a cloned discovery request, despite a general level of similarity between cases (both involved "alleg[ations] that [the defendant] failed to pay wages to employees for all hours worked"), because the cases were somewhat different in terms of the claims and relevant time periods. *Id.* The same reasoning applies here. The *Doe* case did not involve a sexual assault against a passenger by an authorized driver on the Uber platform. Plaintiffs "must do their own work and request the information they seek directly" from Uber. *Midwest Gas Servs., Inc. v. Indiana Gas Co.,* No. IP 99-690-C-D/F, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (denying cloned discovery request as irrelevant). Even if cloned discovery requests were appropriate in limited circumstances, they are not appropriate here given the factual differences between the *Doe* case and this litigation.

For the reasons set forth above, Uber respectfully asks the Court to quash in full the subpoena issued by Plaintiffs to Sara Peters. Alternatively, the Court should issue a protective order barring compliance with the subpoena.

Sincerely,
By: */s/ Michael B. Shortnacy*
Michael B. Shortnacy
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
mshortnacy@shb.com