RANDALL S. LUSKEY (SBN: 240915)
  rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
  ratkins@paulweiss.com
JACQUELINE RUBIN (*Pro Hac Vice* admitted)
  jrubin@paulweiss.com
YAHONNES CLEARY (*Pro Hac Vice* admitted)
  ycleary@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
  cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
  akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

[*Additional Counsel Listed on Following Page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL OF TERMS OF USE RULING**<br><br>Judge:    Honorable Charles R. Breyer<br>Date:     August 9, 2024<br>Time:     10:00 a.m.<br>Courtroom: 6 – 17th Floor |

- i -

1  JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
       jphillips@paulweiss.com
2  KYLE N. SMITH (*Pro Hac Vice* admitted)
       ksmith@paulweiss.com
3  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
4  2001 K Street, NW
   Washington DC, 20006
5  Telephone: (202) 223-7300
   Facsimile:  (202) 223-7420
6
   *Attorneys for Defendants*
7  UBER TECHNOLOGIES, INC.,
   RASIER, LLC, and RASIER-CA, LLC
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION PURSUANT TO 28 U.S.C. § 1292(b)**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will, and hereby do, move this Court pursuant to 28 U.S.C. § 1292(b) for certification for an interlocutory appeal of the Court's Order dated May 20, 2024 (ECF 543), which denied Uber's Terms of Use motion.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Proposed Order, all evidence, pleadings, and papers filed herewith, the entire file in this coordinated action, any Reply that may be filed in support of this Motion, and any other arguments or evidence that may be presented to the Court in support of this Motion.

DATED:  June 7, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Robert Atkins*
ROBERT ATKINS

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

## STATEMENT OF THE ISSUES

On February 9, 2024, pursuant to Pretrial Order No. 5 (ECF 175), Uber filed a motion seeking to enforce the Non-Consolidation and Forum Selection Clauses in Uber's Terms of Use, which preclude Plaintiffs who assented to such clauses from bringing or participating in coordinated or consolidated proceedings, or any actions in a jurisdiction other than where the alleged incident occurred ("Uber's Motion"). ECF 257. On May 20, 2024, the Court denied Uber's Motion (the "Order"). ECF 543. The Court declined to enforce the Non-Consolidation Clause based on public policy underlying 28 U.S.C. § 1407, and declined at this time to rule with respect to any issues relating to the Forum Selection Clause. *Id.* at 31, 36. Uber respectfully submits that the question of whether the Non-Consolidation Clause in Uber's Terms of Use is unenforceable because of public policy underlying 28 U.S.C. § 1407 should be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). All of the factors for such certification are present:

**Controlling Question of Law.** There is a controlling question of law because enforcement of the Non-Consolidation Clause presents a legal question determinative of whether the subject Plaintiffs may participate in this multi-district litigation ("MDL") in violation of the Terms of Use.

**Substantial Grounds for Difference of Opinion.** There are substantial grounds for difference of opinion with respect to the question presented. As the Court observed, enforcement of the Non-Consolidation Clause is a question of "first impression." *Id.* at 10. The Court's reasoning on this novel issue necessarily involved new inquiries into the public policies underlying federal statutes and the largely unexplored limits of contractual provisions on judicial procedure.

**Interlocutory Appeal Stands to Materially Advance the Ultimate Termination of the Litigation.** Immediate appeal of this issue will avoid needless and wasteful future litigation if, among other things, there is controversy over whether an appeal after final judgment would be moot or about the ramifications of the MDL having proceeded in error. And it would deprive the parties

---

[1] Unless otherwise indicated, when language quoted from a decision contains material quoted from another source, all brackets, ellipses, footnote call numbers, internal quotation marks and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

- 1 -

| DEFENDANTS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL | Case No. 3:23-md-03084-CRB |

of guidance on this question with "profound impact" on how these cases, and others like them, will be litigated, or whether the Non-Consolidation Clause is enforceable. Finally, an immediate appeal may materially advance the ultimate termination of the litigation, if the Order is reversed, by allowing for proceedings in the appropriate jurisdictions and by preventing duplicative efforts in the event the Order is overturned at a later point after judicial resources have already been expended on the MDL proceedings. Therefore, Uber respectfully requests this Court certify under 28 U.S.C. § 1292(b) an interlocutory appeal on this important question.

## ARGUMENT

Section 1292(b) of Title 28 of the United States Code is the mechanism pursuant to which a district court may certify for appeal an interlocutory order that is not otherwise appealable. Certification of an order is warranted where: (1) the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate outcome of the litigation. 28 U.S.C. § 1292(b).

According to the Court, the Order addresses "a simple question, the answer to which will have a profound impact on litigation throughout the United States." *Id.* at 1. The Court described the question as: "do parties have the right to agree that some federal lawsuits cannot be coordinated with other federal lawsuits?" *Id.* The Court's 37-page opinion answered that question of "first impression" in the negative based on one public policy underlying 28 U.S.C. § 1407. *Id.* at 10. In the Court's view, Uber's Motion could affect not only plaintiffs here, but federal litigation more generally.[2] *Id.* at 1. Uber respectfully submits that this weighty issue would benefit from appellate review, and should be certified for an interlocutory appeal under 28 U.S.C. § 1292(b).

Enforcement of parties' bargained-for agreements relating to procedural rights in litigation is not at all new. Courts have long recognized the importance of freedom of contract and enforcement of private contracts. *See Steele* v. *Drummond*, 275 U.S. 199, 205 (1927) ("And it is of great public concern that freedom of contract be not lightly interfered with."). Consistent with

---

[2] The Court recognized that "if Uber's motion were successful as to these 29 plaintiffs, it would likely be entitled to the same result to any other plaintiffs to whom it could show had assented to the same terms." Order at 4.

this tradition, courts for more than a century have enforced provisions defining procedural rules in litigation. *See, e.g.*, *Missouri, K. & T.R. Co.* v. *Harriman Bros.*, 227 U.S. 657, 672 (1913) (enforcing a provision requiring filing a lawsuit within 90 days after a loss because "the time is not unreasonably short."); *Great Lakes Ins. SE* v. *Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 71–72 (2024) ("Like choice-of-law provisions, forum-selection clauses respect ancient concepts of freedom of contract."); *Krogstad* v. *Loan Payment Admin. LLC*, 740 Fed. Appx. 565, 565 (9th Cir. 2018) ("The Supreme Court has repeatedly rejected arguments that class action waivers are invalid.").[3] And, as Uber pointed out in its motion briefing, both federal and state courts regularly uphold contract provisions such as arbitration clauses, forum selection clauses, and choice of law provisions.[4]

Historically, judicial enforcement of contract provisions affecting procedural litigation rights had one notable exception: enforcement of arbitration clauses. Unlike some other contractual provisions, arbitration clauses did not play a prominent role in the early American justice system. *See* Frank D. Emerson, *History of Arbitration Practice and Law*, 19 CLEV. ST. L. REV. 155, 158–59 (1970). When arbitration clauses were routinely introduced to private party agreements, American courts often struck down such clauses as invading judicial jurisdiction. *See Dean Witter Reynolds* v. *Byrd*, 470 U.S. 213, 220 n.6 (1985). In response, Congress enacted the Federal Arbitration Act ("FAA") in 1925. *See id.* at 219–20. Thus, arbitration clauses since have become ubiquitous, even though such provisions effectively bar parties from pursuing their claims

---

[3] Uber's Mot. At 6-7; *see also Bronson* v. *Rodes*, 74 U.S. 229, 245 (1868) ("It is the appropriate function of courts of justice to enforce contracts according to the lawful intent and understanding of the parties."); *Sturges* v. *Crowninshield*, 17 U.S. 122, 152 (1819) ("Whether a contract shall be fit matter for judicial coercion, is a different question, from its being preserved perfect and undiminished where it is. When the courts do take cognisance, they shall not adjudge less, nor differently, either as to the amount, or other terms and conditions of the contract. The performance of the contract shall be exact.").

[4] *See, e.g.*, *CompuCredit Corp.* v. *Greenwood*, 565 U.S. 95, 101–02 (2012) (enforcing an arbitration provision); *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 17–18 (1972) (enforcing a forum selection clause); *Carnival Cruise Lines, Inc.* v. *Shute*, 499 U.S. 585, 595 (1991) (enforcing a forum selection clause); *Nat'l Equip. Rental, Ltd.* v. *Szukhent*, 375 U.S. 311, 315–16 (1964) (enforcing a forum selection clause); *ABF Cap. Corp.* v. *Berglass*, 130 Cal. App. 4th 825, 836 (2005) (enforcing a choice of law provision).

in court. *See Viking River Cruises, Inc.* v. *Moriana*, 596 U.S. 639, 653 (2022) (explaining that arbitration clauses do not abridge substantive rights); *CompuCredit Corp.*, 565 U.S. at 101–02 (enforcing an arbitration provision). As the Supreme Court has explained, the FAA's purpose was to "place an arbitration agreement *upon the same footing as other contracts*, where it belongs." *Byrd*, 470 U.S. at 219. Thus, Congress corrected the one exception to judicial enforcement of contract provisions affecting procedural litigation rights.

The Non-Consolidation Clause should not become a new exception to contract enforcement. In its Order, the Court said that resolution of this question will have a "profound impact on litigation" not only in this case, but also in other cases. Order at 1. Other companies have included provisions similar to the Non-Consolidation Clause in their agreements. Uber's Mot. at 5.[5] And the Court recognized the prevalence of MDLs in modern litigation. Order at 23 n.8. In light of this, it is likely that the question presented by Uber's Motion will again be litigated. Thus, this novel and timely question is ripe for appellate review and consideration. As discussed further below, this issue presents a unique, controlling question of law of first impression for which there is a substantial ground for difference of opinion and for which an immediate appeal may materially advance the ultimate outcome of litigation. Uber, therefore, respectfully requests certification of an interlocutory appeal of the Order denying Uber's Motion.

### I. There Is A Controlling Question of Law

"A controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court." *ICTSI Oregon, Inc.* v. *Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022). A controlling question of law need not "dispose of the litigation, only advance its ultimate termination." *Assoc. of Irritated Residents* v. *Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1092 (E.D. Cal. 2008). The Ninth Circuit has held that an order "may involve a controlling question of law if it could cause the needless

---

[5] By way of example, Uber's Motion highlighted similar language contained in several other companies' terms of use. *See, e.g.*, TBS TERMS OF USE, https://www.tbs.com/terms (last visited May 30, 2024); AIRBNB TERMS OF SERVICE, https://www.airbnb.com/help/article/2908#22 (last visited May 30, 2024); SQUARE GENERAL TERMS OF SERVICE, https://squareup.com/us/en/legal/general/ua (last visited May 30, 2024); VRBO TERMS AND CONDITIONS, https://www.vrbo.com/lp/b/terms-of-service (last visited May 30, 2024).

- 4 -

expense and delay of litigating an entire case in a forum that has no power to decide the matter." *Kuehner* v. *Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996), *as amended* (July 5, 1996). The Ninth Circuit has also noted that to satisfy the "controlling question of law" prong, a movant need show only that the question presented is one of law. *See Scheid* v. *PNC Bank, N.A.*, 2022 WL 17430306, at *1 (9th Cir. Dec. 6, 2022) ("Scheid argues that the first factor is not met because no controlling question of law exists. The question in this case, however, is whether the district court correctly determined that *Oman* did not limit *Vaquero* in order to grant summary judgment based on undisputed facts. This is a pure question of law. The other two factors are easily met.").

The controlling question of law at issue here is whether Plaintiffs may continue to participate in this MDL despite the fact that they agreed not to do so when they assented to the Terms of Use. That question is indisputably one of law and that could cause needless expense and delay by litigating in an improper forum. At issue is the Court's interpretation of the public policies underlying Section 1407, Section 1407's impact on private parties' ability to contract with respect to the procedural right to bring or participate in a consolidated proceeding, and the overall enforceability of the Non-Consolidation Clause. Resolution of the question presented by the Order would materially affect the outcome of litigation in this Court (as it would in other, similar litigation) because it controls whether certain Plaintiffs may participate in this MDL, potentially significantly reducing the number of MDL participants. As addressed in further detail in section III, *infra*, if the Ninth Circuit reverses, Plaintiffs who have assented to the Terms of Use - - and, therefore, the Non-Consolidation Clause - - would no longer be participants in this MDL, which would streamline and simplify the administration of this MDL. Should no interlocutory appeal be granted, Uber submits that the Order, and the subsequent participation in the MDL by Plaintiffs who agreed not to do so, would constitute reversible error. That determination need not, and should not, await final judgment after trial of an individual case on remand.

**II.     There Are Substantial Grounds for Difference of Opinion**

There are substantial grounds for difference of opinion as to the enforceability of the Non-Consolidation Clause. Where the legal issue consists of a "novel and difficult question[] of first impression," as here, "courts traditionally will find that a substantial ground for difference of

- 5 -

opinion exists." *ICTSI Oregon, Inc.*, 22 F.4th at 1132 (citing *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).  This is true even where there is no contradictory precedent.  *See Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.").  As recognized by the Court, "the enforceability of a provision like the Non-Consolidation Clause is a matter of first impression."  Order at 10.  As the Court stated: "No other MDL transferee courts appear to have considered the issue."  *Id.*

The Order relies on numerous findings and conclusions that are not only novel, but involve findings and conclusions that may vary from court to court.  Specifically, in holding the Non-Consolidation Clause unenforceable, the Court made the following determinations:  public policy underlying Section 1407; whether the Non-Consolidation Clause seriously compromised the Court's identified public policy underlying Section 1407; the bounds of the "limits of customized procedure;" and whether the Non-Consolidation Clause exceeded the Court's identified limits.  *Id.* at 17, 22, 25–26, and 31.  Each of these determinations involves substantial grounds for difference of opinion.

The Court acknowledged that there is nothing in the text of Section 1407 that disallows the Non-Consolidation Clause.  Order at 14.  Since the text of Section 1407 is silent as to parties' ability to contract around participation in MDLs, the inquiry necessarily involves an analysis of the intent of Congress and the public policies that underpin the statute.  Such analysis can be subjective and open to interpretations that may vary from court to court.[6]  In undertaking that analysis, the Court determined that one public policy of Section 1407 was "evidently in service of . . . judicial efficiency."  *Id.* at 22.  But judicial efficiency is not the only public policy that underlies Section

---

[6] For this reason, some reviewing courts have eschewed this type of inquiry entirely.  *See, e.g.*, *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 396 (1951) (Jackson, J., concurring) ("For us to undertake to reconstruct an enactment from legislative history is merely to involve the Court in political controversies which are quite proper in the enactment of a bill but should have no place in its interpretation."); *People v. Vaughan*, 19 Cal. Rptr. 2d 152, 153 n.2 (Ct. App. 1993), *as modified* (May 19, 1993), *review granted and opinion superseded*, 854 P.2d 721 (Cal. 1993) ("But not the least of the defects of legislative history is its indeterminacy.  If one were to search for an interpretive technique that, on the whole, was more likely to confuse than to clarify, one could hardly find a more promising candidate than legislative history.").

1407.  As the Court notes, "Parties are among the intended beneficiaries of the MDL process" and a transfer to the MDL "will be for the convenience of the parties."  Order at 18 (quoting 28 U.S.C. § 1407(a)).  The Court reasoned that Section 1407 was "aimed at striking some balance between the interests of the parties and the interests of justice," and that it struck that balance by removing from control of the parties the decision of where pre-trial proceedings take place.  *Id.*  Other courts, however, may interpret Section 1407 as leaving undisturbed the right of contracting parties to agree on the manner of litigation.  *Cf. Atl. Marine Const. Co.* v. *U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) ("enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system").  After all, Section 1407 is silent on the issue.  Congress could have expressly addressed the issue like it did when adopting the FAA, but to date it has not.

The Court reasoned that the Non-Consolidation Clause contravened its own interpretation of public purpose of Section 1407.  Order at 10.  While judicial efficiency may be one of the objectives of an MDL, it does not necessarily follow that the Non-Consolidation Clause severely compromises that public purpose.  Many parties may be unwilling to agree to a contract provision like the Non-Consolidation Clause.  Therefore, the restriction on the judiciary's ability to consolidate or coordinate cases may not be as widespread.  At a minimum, there has yet to be empirical evidence of such a dramatic effect - - something Congress surely could take note of if it felt the purpose of multi-district litigation was being impaired.  And in any event, some courts have found that considerations of "judicial economy" alone are insufficient to justify disregarding valid contractual provisions.  *Glob. Quality Foods, Inc.* v. *Van Hoekelen Greenhouses, Inc.*, 2016 WL 4259126, at *5 (N.D. Cal. Aug. 12, 2016) (quoting *Premiere Radio Networks, Inc.* v. *Hillshire Brands, Co.*, 2013 WL 5944051, at *3 (C.D. Cal. Nov. 4, 2013)).

The Court identified many ways in which parties may customize the litigation process, but asserted that "there are limits to parties' ability to customize their experience of litigation through contract."  Order at 26.  That may be, but where that limit lies is a question that courts (and legislatures) would surely debate.  The Court found unpersuasive Uber's argument that the Non-Consolidation Clause is analogous to forum selection clauses, choice of law provisions, and other

- 7 -

contract clauses. Instead, it found the Non-Consolidation Clause more similar to admittedly "extreme examples," such as requiring a judge to follow German Zivilprocessordnung, allowing parties to lie to the court and jury, or barring participation in litigation in which fully briefed motions are pending for more than three days. *Id.* The necessity of analogy highlights the novelty of this legal issue and why it is one on which reasonable minds may differ. Another court may disagree by finding that the limit lies elsewhere or that the Non-Consolidation Clause is more similar to a class action waiver than this Court did.[7]

For example, the Court distinguishes the Non-Consolidation Clause from other private agreements on the basis that Section 1407 is a tool for the judiciary, whereas the other provisions involve choices made by the parties. Order at 26. But that ignores the role the parties' choices have played in this very action. In the same way a plaintiff can choose whether to pursue a class action, a plaintiff can decide whether to file an action in state or federal court - - precisely as Plaintiffs did here. Plaintiffs originally filed their cases in state court and petitioned for JCCP coordination. After the JCCP court determined that the cases did not belong in California pursuant to *forum non conveniens*, Plaintiffs chose not to file in the state where the alleged incident occurred, but instead in the Northern District of California. Had Plaintiffs elected to file in state court in the states in which their alleged incidents occurred, there would have been no request for centralization, or order of centralization, resulting in a federal MDL. More importantly, the decision to seek centralization was not made by the courts, but by the parties in contravention of the Non-Consolidation Clause.

For all the above reasons, this first of its kind ruling is worthy of certification for an interlocutory appeal.

### III. Resolution Stands to Materially Advance the Ultimate Outcome of the Litigation

The last prong is whether resolution of the question may materially advance the ultimate

---

[7] This is especially true in light of the fact that at least one of the Court's examples likely implicates parties' substantive rights, as opposed to the procedural rights implicated by the Non-Consolidation Clause.

- 8 -

DEFENDANTS' MOTION TO CERTIFY  
FOR INTERLOCUTORY APPEAL

Case No. 3:23-md-03084-CRB

1    outcome of the litigation.  "Material advancement" has not been expressly defined by the Ninth
2    Circuit, *Williams* v. *Alameda Cnty.*, 657 F.Supp.3d 1250, 1255 (N.D. Cal. Feb. 24, 2023), but the
3    Ninth Circuit has concluded that Section 1292(b) does not require that the interlocutory appeal must
4    "have a final, dispositive effect on the litigation" to meet the "materially advance" standard. *Reese*
5    v. *BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  Despite the lack of a clear
6    standard from the Ninth Circuit, a key consideration for district courts evaluating this prong is
7    whether "permitting an interlocutory appeal would minimize the total burdens of litigation on the
8    parties and the judicial system by . . . simplifying trial court proceedings." *Sateriale* v. *RJ Reynolds*
9    *Tobacco Co.*, 2015 WL 3767424, at *4 (C.D. Cal. June 17, 2015); *see also Assoc. of Irritated*
10   *Residents*, 634 F. Supp. 2d at 1093 (granting certification in part because resolving the question
11   would "conserve judicial resources" by eliminating a claim).

12   Without immediate appellate review, this important question that the Court identified as
13   having "a profound impact on litigation throughout the United States," Order at 1, may never
14   receive appropriate appellate review and guidance, or may increase the amount of litigation in this
15   and other cases.  For example, if the appeal were to be delayed until after the entry of final judgment,
16   Plaintiffs may then argue that the appeal as to enforcement of the Non-Consolidation Clause is
17   moot.  Resolving the issue now with appropriate appellate review could, therefore, "facilitate
18   disposition of the action by getting a final decision on a controlling legal issue sooner, rather than
19   later in order to save the courts and the litigants unnecessary trouble and expenses." *United States*
20   v. *Adam Bros. Farming, Inc.*, 369 F.Supp.2d 1180, 1182 (C.D. Cal. 2004); *see also Hawaii ex rel.*
21   *Louie* v. *JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1068 (D. Haw. 2013) ("An interlocutory
22   appeal is appropriate where resolution of the issue would materially advance the termination of not
23   only the present case, but also other cases.") (collecting cases).

24   Furthermore, one function of the MDL process is to provide litigants with valuable
25   information about the relevant strengths and weaknesses of the claims, thereby promoting global
26   resolution.  One mechanism by which the MDL process seeks to develop this valuable information
27   is through proceedings in different forums.  Here, the Court noted that Section 1407 "expressly
28   protects a parties' ability to have their cases remanded to the transferor court at the conclusion of

- 9 -

1  the centralized pretrial proceedings." Order at 19. If the Ninth Circuit holds the Non-Consolidation
2  Clause enforceable, there is no need to wait for the relevant cases to proceed in the appropriate
3  jurisdictions. Rather, those cases can proceed in those jurisdictions now in relatively short order -
4  - and those adjudications are more likely to promote the global resolution of all claims. *See* Peter
5  H. Schuck, *Mass Torts: An Institutional Evolutionist Perspective*, 80 CORNELL L. REV. 941, 959
6  (1995) ("Individual cases proceeding through trial, verdict, and appeal in a variety of jurisdictions
7  gradually reveal the behavior of juries and judges, clarify the applicable rules of law, and render
8  expected value of individual claims more predictable. . . . In this way, the litigator acquires an
9  increasingly solid empirical foundation for his estimates of claim values.").

10  Additionally, as discussed in Section I, *supra*, the subject of the appeal will be whether
11  participation in the MDL by plaintiffs who have assented to the Non-Consolidation Clause
12  constitutes legal error. Absent review by the Ninth Circuit at this point, the relevant plaintiffs may
13  participate in the MDL process only to have the Court's decision about those plaintiffs' ability to
14  participate overturned at a later time, requiring those cases to undergo additional procedures in the
15  appropriate jurisdictions. Such procedures would require the duplicative expenditure of additional
16  time and resources by numerous courts across the country.

17  **CONCLUSION**

18  For the foregoing reasons, Uber requests certification[8] for interlocutory appeal under 28
19  U.S.C. § 1292(b) of the Court's May 20, 2024 Order, on the following controlling question of law:

20  > Whether the Non-Consolidation Clause in Uber's Terms of Use is unenforceable
21  > because of the public policy underlying 28 U.S.C. § 1407.

22  Uber further requests that, if the Court decides to certify its Order for interlocutory review,
23  the Court stay the proceedings in this action pending the outcome of Uber's Section 1292(b)
24  application to the Ninth Circuit, and pending the outcome of an appeal, if one is permitted.

---

[8] Section 1292(b) directs a district judge to certify an order for appellate review by "so stat[ing] in writing in such order." Accordingly, should the Court grant Uber's request, it "may amend its order . . . to include the required permission or statement." Fed. R. App. P. 5(a)(3).

| | | |
|---|---|---|
| 1 | DATED:  June 7, 2024 | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |

By: */s/ Robert Atkins*
    ROBERT ATKINS

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC