

June 14, 2024

The Hon. Lisa J. Cisneros, United States Magistrate Judge
Phillip Burton Federal Building, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re Uber Technologies, Inc. Passenger Sexual Assault Litigation*, No. 3:23-md-0384-CRB
       Third Party Subpoena to Lyft, Inc.

Judge Cisneros:

In accordance with the Court's Order, ECF 574, Plaintiffs submit this letter in support of their third-party subpoena to Lyft. Plaintiffs served a proper Rule 45 subpoena on Lyft, Inc. ("Lyft") seeking relevant, proportional discovery, and then, in response to Lyft's objections, proposed modifications in order to reduce the burden on Lyft as a nonparty.

I.   Background

Lyft is a rideshare company and Uber's primary competitor. As competitors, they rarely collaborate and thus Lyft should not have swaths of shared documents, save in a few discrete categories. For example, both Uber and Lyft have an interest in shaping and reducing regulation of the rideshare industry Plaintiffs assert various negligence-based causes of action against Uber premised on, among other things, Uber's use inadequate background checks of drivers. *See*, *e.g.*, Master Compl. ¶¶ 17, 31, 186, 160, 163, 216, 365. Plaintiffs believe that Uber's regulatory strategy is aimed, in part, at continuing to perform less stringent background checks and to avoid fingerprinting requirements, with knowledge that this will put passengers at risk. Accordingly, Plaintiffs are interested in documents evincing Uber's intent, motives, and importantly, knowledge as disclosed in documents and communications related to joint efforts by Lyft and Uber related to lobbying and data collection.

In addition, both Uber and Lyft collaborated to develop and administer Industry Sharing Safety Program (ISSP), a program by which both companies would share data about drivers reported for safety incidents.[1] These efforts also included work by nonprofit sexual advocacy organizations, including RALIANCE, and was administered by a background check company, HireRight, both of which are also the recipients of third party subpoenas. Facts about ISSP are relevant to Plaintiffs' allegations related to

---

[1] Lyft News, *Lyft and Uber Launch Industry Sharing Safety Program in the U.S.* (Mar. 10, 2021), https://www.lyft.com/blog/posts/lyft-and-uber-launch-industry-sharing-safety-program-in-the-us ("Lyft and Uber will share information about driver deactivation…The information sharing will be administered by Hire Right."); RALIANCE, RALIANCE Statement on Uber and Lyft Industry Sharing Safety Program (Mar. 11, 2021), https://www.raliance.org/wp-content/uploads/2021/03/Uber-and-Lyft-Statement.pdf ("RALIANCE is proud to have a seat at the table working with Uber and Lyft.").

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota



Uber's knowledge of drivers' past misconduct, including as reported on the Uber or Lyft apps through the ISSP. *See*, *e.g.*, Master Comp. ¶¶ 70–71 312–16.

It has become evident that Uber's document retention policies will result in inadequate document productions. *See* ECF 190 at 7–8, ECF 348 at 17. Moreover, Uber has been noncompliant with the process of adding relevant custodians. *See* ECF 607 at 2. The Federal Rules and the Scheduling Order also contemplate third-party discovery and party discovery proceeding contemporaneously, not in separate stages. To preserve their ability to timely obtain necessary documents, on April 19, 2024, Plaintiffs served a third-party subpoena on Lyft to obtain documents related to these claims in the possession, custody, and control of Lyft on April. *See* Ex. A, Subpoena to Lyft. Plaintiffs reissued an identical subpoena, modifying the date of compliance, on May 17, 2024. *See* ECF 609 at 6–20. Lyft served objections. *See* ECF 609 at 21–35.

## II.     Efforts to Minimize Burden

Plaintiffs made the following efforts to minimize the burden on Lyft:

- Plaintiffs extended the deadline for compliance to May 31[2]
- Plaintiffs withdrew Request No. 1.
- Plaintiffs withdrew Request No. 2.
- Plaintiffs limited Request No. 15 only to communications about Uber.
- Plaintiffs proposed a staged schedule, pursuant to which Lyft would agree to produce unique documents not anticipated to be in Uber's possession, custody, or control (i.e., internal emails; drafts versions of documents where only final versions were exchanged with Uber; documents exchanged with regulators or vendors involved in the ISSP pertaining to Uber) and Plaintiffs would defer the remaining requests for documents exchanged with Uber until substantial completion of party discovery revealed they were not actually in Uber's possession, custody, and control. Lyft declined this proposal.
- Plaintiffs requested—separately from ongoing party discovery efforts—that Uber commit to producing documents responsive to the Lyft subpoena and identify custodians who liaised with Lyft. *See* Ex. B, May 10, 2024 Hoefs Email. Uber did not respond. Plaintiffs renewed this request during the June 4 joint meet and confer during which counsel for both Uber and Lyft were present, but Uber did not commit to producing any of the documents responsive to the subpoena request or adding additional custodians beyond the current party discovery negotiations.

---

[2] To the extent Lyft asserts it only had 7 days for compliance, Plaintiffs served the subpoena on April 19 and re-served an identical subpoena on May 17—after receiving Lyft's objections and meeting and conferring with Lyft's counsel. Rule 45 does not specify the amount of time for compliance that is "reasonable." Lyft had notice that Plaintiffs would reserve the subpoena to modify the place of compliance and would not alter in any way the substance of the subpoena it and Plaintiffs had already been negotiating.

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota



- Plaintiffs offered Lyft the opportunity to identify any category of documents requested that it believed were irrelevant so Plaintiffs could withdraw or narrow their requests. Lyft declined and rejected Plaintiffs' explanations of the relevance of their Requests when offered.

### III.    Argument

*Relevance.* Plaintiffs expect that the universe of responsive documents in Lyft's possession is small given that Uber and Lyft are competitors who collaborate only under limited circumstances. Plaintiffs requested documents related to the ISSP and joint lobbying efforts, because Plaintiffs are aware the two entities have collaborated on these matters and significant claims in the MDL are premised on directly connected facts.

The relevance of the ISSP to this litigation cannot seriously be disputed. Uber's knowledge of the nature and scope of past misconduct by its drivers goes to Uber's knowledge of the dangers users faced on its platform, which is relevant to negligence, fraud, and failure to warn claims. Similarly, Uber's efforts to reassure passengers that its app was safe by, among other things, establishing the ISSP with its competitor are relevant to Plaintiffs' fraud and failure to warn claims.

Lyft's communications with regulators pertaining to Uber are relevant too. These communications may include data about sexual assaults on the Uber app (from the ISSP) requested by regulators *or* communications as part of joint lobbying efforts by Uber and Lyft to reduce the background check regulations to which they were subject. The use of inadequate background checks goes to Plaintiffs' negligence claims in this litigation and Uber's efforts to lobby legislatures around the country to treat it as a TNC so that it need not perform biometric screening goes to its knowledge of the inherent risks and its motivation. *See* Master Compl. ¶¶ 17, 31, 186, 160, 163, 216, 365. Plaintiffs also offered Lyft the opportunity to identify certain categories of documents that may fall within the scope of the requests that were not relevant (for example, documents related to a joint car washing program) that Plaintiffs could exclude, but Lyft did not offer any.

*Party Discovery.* Both Uber[3] and Lyft assert Plaintiffs must seek these documents first from Uber and only *then* from Lyft. ECF 609 at 3. Neither Rule 26 nor Rule 45 require that party discovery be exhausted and discovery disputes be resolved before service of third-party subpoenas. *Viacom Intern. Inc. v. YouTube, Inc,.*, 2008 WL 3876142, at *3–4 (N.D. Cal. Aug. 18, 2008) (rejecting argument that plaintiffs must first exhaust party discovery as "without merit" and stating that there is "no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in a defendant's possession."); *Knoll, Inc. v. Moderno, Inc.*, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012) (rejecting argument that discovery would be "duplicative" because plaintiff was entitled to "verify the accuracy" of defendants' reports and defendant had not demonstrated that sales figures were "fully and completely produced"); *Roberts v. Cnty. of Riverside*, 2021 5993528, at *8 (C.D. Cal. Oct 7, 2021) (rejecting

---

[3] Uber has no standing to challenge burden or relevance. *Doe v. Kaiser Found. Health Plan. Inc.*, 2023 WL 8174480, at *3 (N.D. Cal. Dec. 17, 2023).

Nigh Goldenberg Raso & Vaughn, PLLC  
14 Ridge Square NW | Third Floor  
Washington, D.C  
20016  

T: (202) 792-7927  
D: (612) 424-9900  
F: (202) 792-7927  
nighgoldenberg.com  

Washington D.C.  
Kansas  
Florida  
Minnesota

**NGRV** NIGH GOLDENBERG RASO & VAUGHN

argument that, because information sought was available from parties, subpoena must be quashed).[4] Nonetheless, Plaintiffs did seek the requested documents from Uber. *Twice*. Uber did not respond to Plaintiffs' first request and responded to the second that the Parties are still negotiating custodians and that Uber's Responses to Plaintiffs Requests for Production are not yet due. To be clear, Uber need not wait until it receives a specific Request for Production to provide documents responsive to the document requests in the subpoena—if it is truly concerned with the burden on nonparties, that is.

To further ensure that Lyft was not unduly burdened by searching for documents that Uber should have, Plaintiffs proposed a staged schedule under which Lyft would produce only those documents uniquely in its possession and not Uber's. This would include, for example, internal documents or communications about Uber with regulators. Plaintiffs could renew requests for documents exchanged with Uber after discovery revealed that Uber did not retain them Lyft rejected this proposal with no counter.

***Competitive Information.*** Lyft argues that the subpoena would require production of confidential information to a competitor. Lyft argues that because some Lyft drivers also driver for Uber, seeking information about Uber is tantamount to seeking information about Lyft drivers in their capacity as Lyft drivers. But where a party challenges a subpoena on confidentiality or trade secret grounds, it "must make 'a strong showing that it has historically sought to maintain the confidentiality of this information." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006). Lyft has not even attempted such a showing, nor could it. Plaintiffs are requesting information about a *joint* program between Lyft and Uber, administered by *yet another* vendor, HireRight, as well as information Lyft provided to government regulators about Uber—things that are not and have never been secret. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2023 WL 8714880, at *4 (N.D. Cal. Dec. 17, 2023) ("information disclosed to third parties has by definition lost its secrecy."). In any event, Plaintiffs are willing to agree to an "outside counsel's eyes only" designation for Lyft documents. This would be a Lyft-specific modification of the protective order.

---

[4] Where a defendant's poor record keeping "raises questions about the completeness of its files" and neither the defendant nor the third party have provided any reason to believe that the defendant has retained all documents or communications exchanged with a subpoena recipient, the use of a third party subpoena to seek those documents from a third party is appropriate. *Viacom*, 2008 WL 3876142, at *3. In addition, the third party's files "may contain different versions of documents, additional material, or perhaps significant omissions" from the defendant's own files. *Id.* (quoting *Visto Corp. v. Smartner Info. Sys., Ltd.*, 2007 WL 218771, at *3 (N.D. Cal Jan. 29, 2007)).

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota



Dated: June 14, 2024

Respectfully submitted,

By: /s/ *Marlene J. Goldenberg*

Marlene J. Goldenberg
Samantha V. Hoefs
**NIGH GOLDENBERG RASO & VAUGHN PLLC**
14 Ridge Square NW, Third Floor
Washington, D.C. 20016
Telephone: (202) 978-2228
Facsimile: (202) 792-7927
mgoldenberg@nighgoldenberg.com
shoefs@nighgoldenberg.com

By: /s/ *Sarah R. London*

Sarah R. London (SBN 267083)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: /s/ *Rachel B. Abrams*

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: /s/ *Roopal P. Luhana*

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016



Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Counsel for Plaintiffs*

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota