[*Submitting Listed on Signature Page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**AFFIDAVIT OF SARA M. PETERS REGARDING PLAINTIFFS' SUBPOENA TO SARA M. PETERS**<br><br>Judge:       Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

I, Sara M. Peters, hereby declare as follows:

1. I am an attorney at law, duly licensed to practice before this court, and a shareholder with Walkup, Melodia, Kelly & Schoenberger. If called as a witness I could competently testify to the facts set forth herein.

2. I am a member of the Plaintiffs' Steering Committee in this MDL, and I was also counsel for the plaintiff in a prior case against Uber, *Jane Doe v. Uber Technologies Inc., et al*, No 3:19-cv-03310-JSC (N.D. Cal. Sept. 15, 2022) ("*Doe*").

3. I am familiar with the facts and testimony in the Doe litigation, as well as the allegations and issues in the present litigation.

4. Plaintiffs in this MDL have subpoenaed evidence from the Doe case that is, in my opinion, highly relevant to the issues raised in this MDL.

5. Uber, in its June 7 letter to the Court (ECF 612) misleadingly characterizes the *Doe* case. It states: "That case involved a sexual assault by an individual who was <u>not</u> an authorized driver on the Uber platform and the plaintiff mistakenly got into his vehicle. … The plaintiff's theory in that case was that Uber was negligent by not preventing the assailant from using an Uber decal on his vehicle."

6. Uber neglected to inform the Court that the perpetrator in the *Doe* case

1  was a former Uber driver, and that the *Doe* plaintiff's theory included Uber's liability
2  for negligently handling prior sexual assaults by the same driver, while he was still an
3  authorized Uber driver. For example, an Uber rider reported a sexual assault by that
4  driver, and Uber deemed that report credible, but allowed him to keep driving for Uber
5  (pursuant to Uber's policy that required multiple reports of sexual assault before
6  banning a driver). Uber discouraged reporting to law enforcement.

7.  Uber also neglected to inform the Court that the *Doe* plaintiff's theory included Uber's marketing and advertisements that falsely reassured plaintiffs like *Doe*, and caused them to let their guard down while using the Uber platform, thereby increasing the risk of injury.

8.  Although Uber has produced at least some documents from the *Doe* litigation as ordered by PTO 5, it does not appear that Uber has produced all documents from the *Doe* litigation. Compliance with the subpoena would allow me to cross-check those documents against those produced in the prior *Doe* litigation and ensure full compliance.

9.  Uber has not produced deposition transcripts from the *Doe* litigation.

10. The deposition testimony from the *Doe* litigation, some of which is designated confidential and some of which was unsealed because it was attached to specific motions in that case, covers topics relevant here. For example, the deposition testimony in the *Doe* case addresses the following topic areas:

   a. The nature of Uber's business, whether it is in the business of providing transportation or merely matching riders and drivers.
   b. Uber's marketing, advertisements, and reassurance to riders, riders' reliance on Uber's safety representations, and Uber's awareness of that reliance.
   c. Uber's research regarding the impact of its safety representations on ridership.
   d. Whether Uber's resources were dedicated to actual safety, or just

1 trying to seem safe.
    e. Uber's knowledge and awareness of sexual assaults on its platform.
    f. Uber's policies and practices related to investigating reports of sexual assault.
    g. Uber's policies and practices related to banning or suspending drivers accused of sexual assault.
    h. Uber's policies and practices related to background checks, and changes in those background checks over time.
    i. Safety features in Uber's app, and the efficacy or lack thereof.
    j. Rider perceptions regarding safety features.
    k. Uber's policy not to report sexual assault or rape to law enforcement, and Uber's communications to riders related to this policy.
    l. Uber's policy not to coordinate with Lyft regarding drivers' history of sexual assault.
    m. Systemic culture issues at Uber that contributed to its mishandling of investigations.

11. Uber's policies and practices related to handling reports of sexual assault were a major focus of discovery in the *Doe* case, and are at issue in the present case.

12. Uber's focus on seeming safe rather than making its platform actually safe was a major focus on discovery in the *Doe* case, and is at issue in the present case.

13. Uber's marketing that created a false sense of safety was a major focus in the *Doe* case and is at issue in the present case.

14. Uber's recordkeeping and types of documents and database reports available was a major topic in the *Doe* case, and these same issues are relevant to the present case.

15. I cannot "unknow" what I know from the prior litigation, and it hampers my ability to effectively coordinate and strategize in the present litigation that I have

1 relevant knowledge that I cannot share.

2     I declare under penalty of perjury under the laws of the State of California that
3 the foregoing is true and correct.

4     Executed this 14th day of June 14, 2024 at San Francisco, California.

_____
Sara M. Peters