UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND PROPOSED AGENDA**<br><br>Date:  June 21, 2024<br>Time:  10:30 a.m.<br><br>Judge:  Hon. Charles R. Breyer<br>Courtroom:  G – 15th Floor |

# JOINT STATUS CONFERENCE STATEMENT

In advance of the status conference set by the Court in this action for Friday, June 21, 2024 at 10:30 a.m. via Zoom videoconference, Plaintiffs, Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the Parties"), submit this Joint Status Conference Statement. On disputed items, the party that seeks to raise an issue has presented their position first.

## PROPOSED AGENDA

1. **Status of Case Filings**
2. **Motions**
3. **Discovery**
4. **Resolution of Individualized Issues**
5. **Special Settlement Master**
6. **Next Case Management Conference**

## I. STATUS OF CASE FILINGS

**Number of Case Filings**

As of June 14, 2024, there are 319 cases pending in this MDL.[1]

**Status of JCCP**

Judge Schulman blocked out the summer of 2025 for a trial and set a January 15, 2025 discovery cutoff. Depositions are underway.

**Other Cases and Proceedings**

A list of other proceedings known to Plaintiffs is attached as **Exhibit A.**

---

[1] Uber and the Levin Simes Firm recently submitted a stipulation to dismiss without prejudice 84 MDL plaintiffs that have cases pending in the JCCP pursuant to ECF No. 600. Upon the ordering of that stipulation, the number of pending cases in the MDL will be 235.


## II. MOTIONS

The Court heard argument on Uber's motions to dismiss pursuant to California and Texas law on June 7, 2024. ECF No. 601. The parties are prepared to give argument on Uber's remaining fully briefed motions to dismiss pursuant to Florida, Illinois, and New York law at the Court's convenience, after it has ruled on the California and Texas motions.

As discussed at the May 31, 2024 Case Management Conference, the parties have entered a stipulation establishing that the filing and/or service of third-party complaints as to any action that has been or is later coordinated into the MDL shall not affect or waive Defendants' ability to file or have this Court decide any Rule 12 motions. ECF No. 605.

On June 7, 2024, Defendants filed a Motion pursuant to Rule 1292(b), requesting that Judge Breyer certify his order denying Defendants' Terms of Use Motion for appeal to the Ninth Circuit, and stay MDL proceedings pending the Ninth Circuit's decision on the certification request and, if certification is granted, on the merits of the appeal. The motion is set for hearing on August 9, 2024.

The Ninth Circuit notified the parties that it is considering hearing Oral Argument on Uber's Petition for Writ of Mandamus during the October sitting. A specific date has not yet been set but both parties advised the Ninth Circuit they are available during the October 7-11 sitting.

## III. DISCOVERY

On June 4, 2024, the parties filed a Joint Discovery Status Report in advance of the June 11, 2024 discovery hearing with Judge Cisneros. ECF No. 588. The following discovery disputes have been briefed and remain pending, with hearings scheduled before Judge Cisneros as indicated:

- Briefs in Support of Proposed Deposition Protocols (ECF Nos. 586, 587) (hearing to be held on 6/21/2024);
- Joint Letter Brief re: Safety Data and Statistics RFPs (ECF No. 592) (hearing was held on 6/13/2024);
- Joint Letter Brief re: Third-Party Subpoenas (ECF No. 598) (hearing to be held 6/21/2024); and
- Joint Letter Brief re: September 1 Substantial Completion Deadline (ECF No. 607)

(hearing was held 6/13/2024).

IV. **RESOLUTION OF INDIVIDUALIZED ISSUES**

In connection with Uber's Motions to Dismiss, the Court asked (i) how and when it should address legal questions that require analysis of individualized factual allegations, (ii) whether, at this stage, it matters whether short form complaints contain the individual allegations that Uber argues are lacking from the master complaint (or whether the Plaintiff Fact Sheets disclose the relevant facts), and (iii) whether the Court should dismiss the master complaint or certain short form complaints with leave to amend if the lack of individualized allegations warrant dismissal. ECF No. 585.

**Plaintiffs' Position:** The most practical and efficient process to resolve issues that turn on individualized factual allegations is via a pretrial order setting deadlines for a subset of cases to file long-form complaints, to which Uber then responds (via answer or motion), in connection with expanded discovery and trial phasing. PTO 11 contemplated this approach, in recognizing the inefficiency of every plaintiff drafting individual Complaints and answers to those Complaints, and in advising Defendants they need not answer or otherwise respond to Short Form Complaints until otherwise ordered to do so, presumably later in the proceedings.[2] While the Short Form Complaint does allow for additional allegations (primarily to give Defendants notice of new claims beyond the Master Complaint and add additional defendants), it was not meant to supersede or replace long-form complaints. *See* ECF No. 269 (Master Long-Form Complaint) at 1 ("This complaint does not supersede any complaints already filed (or that will be filed) in cases filed in or transferred to this MDL.").

The Court utilized a similar process in the *JUUL* MDL, ruling on motions to dismiss individual long-form complaints for the selected trial pool cases. This kept briefing on individual case-specific issues (e.g., choice of law and reliance) manageable. (Uber says that *JUUL* included

---

[2] *See* ECF No. 349 (Pretrial Order No. 11) at 1 ("In light of the number of complaints filed and anticipated in this Multi-District Litigation, the inefficiency of drafting individual Complaints and Answers to those Complaints, and in order to streamline the process for the Court's consideration of dispositive motions, the Parties have agreed to the use of master pleadings."); *id.* ¶ 12 ("To eliminate potential delays and to promote judicial efficiency … [Defendants] need not answer or otherwise respond to any SFC filed in this MDL proceeding until ordered to do so by the Court.").

1  a class action component, which is true, but the procedure discussed here was specific to the
2  personal-injury track.) Other MDLs, including *Atrium*, *3M*, *Social Media*, *Tylenol*, and *Trayasol*,
3  have likewise used this long-form complaint approach, reserving motion practice as to
4  individualized allegations for a phased discovery process leading toward trials. *See, e.g., In Re*
5  *Atrium Med. Corp.*, No. 16-MD-2753-LM, 2018 WL 11397878, at *6 (D.N.H. Jan. 8, 2018) (noting
6  that particularized allegations of fraud are contemplated for a Long Form Complaint which will be
7  specific to individual cases and filed "when an individual case is selected for specific phase
8  discovery"). Uber suggests these cases and others adopted this approach because of the large
9  number of pending cases. It is not clear what material difference 300 cases versus 500 or 600 poses
10 in terms of case management, but in any event, the Court can expect many more cases if the JCCP's
11 forum non convenience order is affirmed.

12    As for timing, an individualized long-form complaint process will be of best use after the
13 Court's ruling on common issues through Uber's initial motions to dismiss, and likely after the
14 Court of Appeals' ruling on the JCCP FNC motion, at which point the parties can utilize discovery
15 (i.e. plaintiff and defense fact sheets, and Uber's substantial completion of document production
16 responsive to Plaintiffs' First Set of Requests for Production) and will have a better understanding
17 of the universe of cases. Plaintiffs suggest that in October, the parties submit joint or competing
18 trial schedules and briefs detailing when and how to determine which cases should proceed first to
19 expanded motion practice, discovery, and trial. If the Court is disinclined to select cases now for
20 individual discovery and trial, an alternative option is to select cases for expanded pleading and
21 briefing, and reserve the question of which cases are tried (avoiding any *Lexecon* or transfer issues).
22 That was the approach Judge Orrick took in *JUUL* to deciding motions to dismiss government
23 entity cases, which the parties and the court decided were not amenable to a master complaint like
24 that filed for the person-injury track.

25    Uber's position appears to be that Plaintiffs must fully plead every individualized allegation
26 in the Short-Form Complaint, with perhaps one short opportunity to amend. As Uber says, "[t]here
27 is more than enough for the parties and the Court to do at this stage of the litigation." Amending
28 and responding to hundreds of Short-Form Complaints is not the best use of anyone's time or

resources.

Uber also ignores both the process and substance of the Short-Form Complaints. On the process, Uber disregards the Court's order, reflecting standard MDL practice, that Uber need not respond to any Short-Form Complaint contemplated follow-on pleadings in individual cases. On the substance, Uber ignores that the Short-Form Complaints did incorporate allegations sufficient to plead fraud-based claims, including (1) that Uber concealed the real risks and limitations on what the company does to keep passengers safe, MC ¶ 224; (2) that such risks and limitations were material to all passengers because safety is the essential value proposition of an Uber ride, *id.* ¶¶ 189-90, 349, 379, 481; and (3) that every Plaintiff was exposed to Uber's messaging through, at minimum, the App, and so would have heard or seen the truth, *id.* ¶¶ 49, 188. Uber also overlooks ignores the hard evidence of reliance in that every Plaintiff entered an Uber vehicle (established through Ride Receipts and Plaintiff Fact Sheets).[3]

Of course it is always possible to plead *more* facts about what any given Plaintiff saw or when, and how those messages induced them to ride with Uber at the time and manner they did. But at this time, the Master Complaint fairly puts Uber on notice of the types of misrepresentations and omissions that any particular plaintiff could plausibly allege (and of course, Uber knows when each Plaintiff began and stopped using the App). If the Court decides additional facts might matter, it should adopt Plaintiffs' proposal of a structured, phased inquiry into individualized allegations. But if, as Uber insists, the Court must issue a conclusive ruling on all fraud claims right now on this record, then the correct outcome is denial of the motions to dismiss.

**Defendants' Position:**

There is no reason to delay ruling on Uber's Motions to Dismiss with respect to those causes of action that Plaintiffs have failed to plead with the necessary particularity - - the most prominent example being Plaintiffs' failure to plead their fraud claims with the specificity required by Rule

---

[3] Uber also misses the fact that the scope of common discovery in no way turns on the adequacy of Plaintiffs' fraud claims. What Uber said about the safety of its platform and its own efforts to ensure that safety is relevant to Plaintiffs' negligence claims (which Uber did not move to dismiss) and issues that go to multiple claims, such as why Plaintiffs enter into random strangers' cars alone, at night, and, in many cases, under the influence of alcohol. Uber's knowledge of the real risks and limitations also goes to comparative fault and punitive damages.

9(b). There is no need for yet another round of pleadings which, notably, Plaintiffs never previously proposed and which the Court has not ordered. Plaintiffs already have had multiple opportunities to plead those claims with specificity on an individual basis, but have failed or elected not to: (1) in the first instance, all of the Plaintiffs filed their own, fully developed complaints; (2) then pursuant to PTO 5, Plaintiffs filed a Master Complaint; (3) then pursuant to PTO 11, Plaintiffs each filed individualized Short Form Complaints; and (4) though not a pleading *per se*, Plaintiffs had another chance pursuant to PTO 10 to assert the necessary individualized facts in their Plaintiff Fact Sheets.

Despite all those opportunities, Plaintiffs have not pled fraud or causation with *any* factual specificity. That was Plaintiffs' conscious decision. It was not made in reliance on yet another round of pleadings - - because there is no other round of pleadings. It also was not an oversight. Counsel well know the particularity requirement of Rule 9(b). And by the time of the Master Complaint, the JCCP court already had dismissed the fraud claims there for lack of particularity. But most important, at the time Plaintiffs' Short Form Complaints were due, *Uber already had moved to dismiss the Master Complaint* for failing to plead fraud and causation with specificity. ECF Nos. 384-388. With Plaintiffs expressly on notice of their pleading deficiencies, the Short Form Complaint provided Plaintiffs with the chance to add the missing individualized factual allegations. Following the section for adopting (or not) the various causes of action in the Master Complaint, including fraud, section V conspicuously provides: "If Plaintiff has additional factual allegations not set forth in *Plaintiffs' Master Long-Form Complaint,* they may be set forth below or in additional pages."

None of the Plaintiffs have provided *any* individualized allegations to support, among other claims, the fraud claim. Were the Short Form Complaint itself not clear enough that Plaintiffs needed to make any additional and individualized allegations, then PTO 11 made that clear: "The SFC is an abbreviated form that each individual Plaintiff will complete ***to indicate their individual claims***, adopt the factual allegations set forth in the Master Complaint as the basis for those claims, ***and provide additional factual allegations, if any***." PTO 11 ¶ 3. In the JCCP, where the court granted Uber's Demurrer with respect to the fraud claims for lack of supporting factual allegations,

it did give plaintiffs 30 days to amend their short form complaints to plead their claims with particularity as required, *but no plaintiff did*. Defendants would expect the same outcome here, were this Court to grant Plaintiffs a *fifth* chance to sufficiently plead specific facts. Although it is Defendants' position that this Court should dismiss these claims where Plaintiffs failed to meet their pleading burden, were the Court inclined to give Plaintiffs another opportunity to satisfy their particularity requirement, it should do so now - - *e.g.*, in the next 30 days - - not postpone it to some indefinite later date, as Plaintiffs suggest.

Plaintiffs' resistance to alleging facts sufficient to satisfy the Federal Rules in general, and Rule 9(b) specifically, after having so many opportunities to do so only highlights why the motions to dismiss should be granted - - and granted now. The MDL is not a mechanism to kick pleadings down the road while subjecting the defendant to vast amounts of class action style discovery on claims that may never be adequately pled. The Short Form Complaints were crafted and ordered to enable the Court to determine sooner, not later, whether claims requiring factual particularity - - in the case of fraud, heightened particularity - - can justify full-blown discovery on these claims. Because Plaintiffs quite consciously decided not to plead the additional factual allegations required by the Short Form Complaint, they have made the legal sufficiency of the fraud allegations a common issue ripe for the Court's determination.[4]

Put simply, there is no justification for Plaintiffs' proposal to string out *threshold* motion practice with even more pleadings, or to add another layer of what they call "expanded motion

---

[4] Plaintiffs attempt to suggest that they have pled such claims, citing allegations, generic and generalized, not facially specific, in the Master Complaint, *e.g.*, (1) Uber concealed the real risks and limitations on what the company does to keep passengers safe, MC ¶ 224; (2) that such safety risks and limitations were material to all passengers because safety is the essential value proposition of an Uber ride, *id.* ¶¶ 189-90, 349, 379, 481; and (3) that every Plaintiff was exposed to Uber's messaging through, at minimum, the App, and so would have heard or seen the truth, *id.* ¶¶ 49, 188. Never mind that simple logic dictates that not every user of an app sees every statement in that app, and Plaintiffs fail to allege any fact specific to any Plaintiff, but Plaintiffs take their claims even one step farther. Plaintiffs argue that it is "hard evidence of reliance in that every Plaintiff entered an Uber vehicle." *See supra*. But that is plainly not how reliance operates. Plaintiffs must show, and *have failed to show,* that each Plaintiff entered their Uber *because* of the alleged messaging, *and would not have entered the Uber vehicle without such messaging.* "Actual reliance requires that each Plaintiff allege with particularity that she saw or heard a specific purported misrepresentation and that the alleged misrepresentation was "an immediate cause of the plaintiff's conduct . . . [and] absent such representation, the plaintiff would not, in all reasonable probability, have entered into the transaction" that led to the injury. *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004), as modified (Dec. 30, 2004).

practice." Likewise, there is no justification for using Plaintiffs' pleading deficiencies to prematurely address, as Plaintiffs propose, "expanded discovery" and "trial phrasing." The first order of business, as established by PTO 5, is the resolution of Uber's Motions to Dismiss based on Plaintiffs' more than ample opportunity to plead their claims in accordance with the Federal Rules, including Rule 9(b). There is more than enough for the parties and the Court to do at this stage of the litigation before jumping to the next stage, including resolving Uber's five pending motions to dismiss, conducting document discovery, adjudicating consequential discovery disputes, and establishing a plan for presenting and resolving motions to dismiss addressing other states and issues (*e.g.,* statute of limitations) - - all of which must be done in order to decide how to progress this MDL. Plaintiffs' reliance on other MDLs does nothing to change this outcome. Those cases were managed in ways best suited to the unique and peculiar circumstances of those litigations[5] - - *e.g.*, *In Re: Juul Labs, Inc.,* 3:19-md-02913 (N.D. Cal.)[6] (comprising 7,068 lawsuits including a number of class actions not present here); *In Re: Atrium Medical Corp.*, 16-md-2753 LM (D.N.H.) (comprising 3,549 lawsuits and instituting a pleading and motions process that was jointly agreed to by the parties); *In Re: 3M*, 3:19-md-2885 (N.D. Fla.) (comprising 391,411 cases, which the parties worked up in tranches of 500 at a time); *In re: Social Media,* 22-MD-3047-YGR (N.D. Cal.) (comprising 570 cases and handling motions via claim phases); *In Re: Acetaminophen,* 1:22-md-3043 DLC (S.D.N.Y.) (comprising 631 cases and issuing motions to dismiss rulings in individual cases); and *In Re: Trasylol,* 1:08-md-01928 (S.D. Fla.) (comprising 1,834 cases and requiring plaintiffs alleging reliance based on direct fraudulent statements to amend their complaints to set forth the basis).

---

[5] Plaintiffs speculate that there may be additional filings in the MDL if the JCCP's decision on *forum non conveniens* is affirmed, but that is just conjecture at this point and is not relevant to the issues presented in this statement.

[6] Plaintiffs discuss that in *JUUL*'s government entity cases (a type of case not present here), the court followed a proposal similar to plaintiffs'. But, as Plaintiffs point out, the government entity cases were not amenable to a master complaint (also not the case here). Additionally, Plaintiffs fail to mention that the process used by the court in these government entity cases were handled pursuant to a stipulation submitted by the parties. And, in the personal injury cases *the parties* each proposed to handle motions to dismiss by groups of plaintiffs at a time—something Uber does not agree to here.

## V. SPECIAL SETTLEMENT MASTER

On November 15, 2023 (ECF No. 88), the Parties jointly submitted a narrowed list of two suggested candidates for Special Settlement Master: Hon. Gail Andler and Hon. Shelley Chapman, and they remain open to considering additional candidates. The Parties welcome the Court's guidance on appropriate next steps in arranging for appointment of a Special Settlement Master.

## VI. NEXT CASE MANAGEMENT CONFERENCE

The parties will be prepared to discuss the schedule for the next case management conference.

Dated: June 14, 2024                                Respectfully submitted,

By: */s/ Robert Atkins*
    Robert A. Atkins
    **PAUL, WEISS, RIFKIND,**
    **WHARTON & GARRISON LLP**
    1285 6th Avenue
    New York, NY 10019
    Telephone: (212) 373-3000
    ratkins@paulweiss.com

By: */s/ Randall S. Luskey*
    **PAUL, WEISS, RIFKIND,**
    **WHARTON & GARRISON LLP**
    535 Mission Street, 24th Floor
    San Francisco, CA 94105
    Telephone: (628) 432-5100
    Facsimile: (628) 232-3101
    rluskey@paulweiss.com

*Attorneys for Defendants*

By: */s/ Sarah R. London*
    Sarah R. London
    **LIEFF CABRASER HEIMANN &**
    **BERNSTEIN**
    275 Battery Street, Fl. 29
    San Francisco, CA 94111
    Telephone: (415) 956-1000
    slondon@lchb.com

By: */s/ Rachel B. Abrams*
    Rachel B. Abrams
    **PEIFFER WOLF CARR KANE**
    **CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
    Roopal P. Luhana
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*