# EXHIBIT A



Littler Mendelson, PC
101 Second Street, Suite 1000
San Francisco, CA 94105

***Please note new address effective 10/2023.**

Rod M. Fliegel
Shareholder
415.439.6253 direct
415.433.1940 main
415.743.6557 fax
rfliegel@littler.com

June 18, 2024

Magistrate Judge Lisa J. Cisneros
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:** *In Re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*
**USDC, Northern District of California, Case No. 3:23-MD-03084-CRB**

Dear Judge Cisneros:

Because Plaintiffs' subpoena seeks massive amounts of documents from nonparty Checkr, Checkr respectfully submits this response to Plaintiffs' letter, Dkt. 633. Plaintiffs' assertion they are seeking "necessary" documents they cannot obtain from Uber is unfounded.

### I. PLAINTIFFS DO NOT "NEED" THE DISCOVERY FROM NONPARTY CHECKR

Surprisingly, Plaintiffs' letter to the Court concedes the purpose of their subpoena to Checkr is to exert pressure on Uber. It states: "The whole point of Plaintiffs' proposal was to afford Uber the opportunity [to identify] which documents it had and commit to producing them. . . ." Dkt. 633 at 3 (emphasis added). The Court should not countenance such tactics. For several reasons, the Court should also disregard Plaintiffs' broad generalizations about why they supposedly "need" discovery from Checkr.

First, Uber has agreed to produce pertinent documents. Uber's June 7, 2004 letter to the Court states:

> While the parties are still negotiating the scope of discovery, Uber is willing to conduct a reasonable and diligent targeted search, and will provide any non-privileged, responsive policies and procedures regarding background checks of independent drivers from 2014 to 2023 in the United States.

Dkt. 610 at 3. Notably, Plaintiffs' letter ignores Uber's agreement to produce these documents.[1]

---

[1] This Court recently acknowledged that: "As a general rule, parties must pursue discovery from other parties before issuing subpoenas to non-parties, at least where a party could reasonably be expected to have the same information." *Athalonz, LLC v. Under Armour, Inc.*, No. 23-mc-80324-LJC, 2024 WL 628846, at *7 (N.D. Cal. Feb. 14, 2024); *see also* Dkt. 604 at 4 (citing additional cases).

Judge Cisneros
**Re:  *In Re: Uber Rideshare Cases***
June 18, 2024
Page 2

Second, even indulging Plaintiffs' assertion that Uber's production is deficient, Plaintiffs' remedy is to seek further documents from Uber.[2] *See* Dkt. 610 at 3 n. 5 (citing *Lemoine v. Mossberg Corp.*, No. 3:18-CV-01270 (KAD), 2020 WL 3316119, at *1 (D. Conn. June 18, 2020) ("A Rule 45 subpoena is not an alternative to the meet and confer requirements of Rule 37 and the appropriate procedures for bringing discovery disputes to the Court for resolution.")).

Third, while Plaintiffs assert that "Uber's document retention policies will result in inadequate document productions" (Dkt. 633 at 1), Uber disputes this assertion.[3] Importantly, Plaintiffs also fail to demonstrate the purported inadequacy will impact Uber's production of documents specifically regarding Uber's background check program.

Fourth, it is plain from Plaintiffs' allegations that they do not need discovery from both Uber and nonparty Checkr.  Summarizing:

| **Complaint**[4] | **Plaintiffs' Allegation** | **Why Discovery From Checkr Is Unnecessary** |
|---|---|---|
| ¶¶ 17, 365 | Uber conducts background checks on drivers without using fingerprints. | Uber can say whether it uses such information. And Plaintiffs have Uber's contract and can see the scope of Checkr's services. *See* Dkt. 633 at 3 n.5. |
| ¶¶ 160, 165-66, 365 | Uber conducts background checks on drivers without verifying SSNs. | Uber can say whether it first verifies SSNs. And Plaintiffs have the contract. |
| ¶ 163 | Uber operates its background check program the way it does to maintain profitability and a regular supply of drivers. | Uber is the best source of information about its reasons for maintaining its own program. |
| ¶ 216 | Uber's public representations about its background checks are false. | Uber is the best source of information about the basis for its representations. |
| ¶ 365 | Uber breached a duty of care by not investing in monitoring of its drivers. | Uber can say whether it arranges for monitoring. And Plaintiffs have the contract. |

*See also* Dkt. 639 at 3 (this Court's order directing the parties to "pay particular attention to concerns regarding duplicative and cumulative discovery").

---

[2] Plaintiffs' RFPs seek documents regarding Uber's background checks. Dkt. 610 at 3 n.4 (RFP 19 seeks: "Any and all documents regarding your use of third-parties, including background check companies, for conducting background checks"); *see also* RFPs 22, 23, 26, 27, 136, 154(e), and 154(m).

[3] Dkt. 607 at 6 ("Plaintiffs' stated concerns about supposed 'preservation issues,' . . . are as wrong as they are belied by the sheer volume of data collected in this case from Uber's proposed 29 custodians (who, after de-duplication, have on average over 884,000 documents in their custodial files – a far cry from 'incomplete' or 'missing' files).").

[4] Plaintiffs direct the Court to these allegations. Dkt. 633 at 1, 3.

Judge Cisneros
**Re:  *In Re: Uber Rideshare Cases***
June 18, 2024
Page 3

## II.     PLAINTIFFS MADE NO EFFORT TO MINIMIZE THE BURDEN ON CHECKR

Checkr's initial letter to the Court detailed how Plaintiffs are flouting the mandate to "take reasonable steps to avoid imposing undue burden or expense" in Rule 45(d)(1). Dkt. 604. Plaintiffs' letter now concedes they are trying to flip this burden by forcing Checkr to persuade them that not every document mentioning "Uber" since 2014 is relevant. Dkt. 633 at 2, 3. Again, the Court should not countenance such tactics.

Plaintiffs also ignore how their proposal to "limit" Checkr's production to documents "uniquely" in its possession would exacerbate the burden on Checkr. (*See* Exh. A.[5]) It will be costly for Checkr to provide precise estimates of the volume of ESI that it would need to collect, process, and review to even begin to identify potentially responsive and "unique" documents. As a factual matter, Checkr has Terabytes of data, *i.e.*, the equivalent of tens of thousands of bankers of boxes. *Cf.* Dkt. 607-22 at 4 n.2 (Brown Decl.). Plaintiffs' exceedingly broad demands also ignore how discovery must be proportionate to the needs of the case.[6] *See* Dkt. 610 at 3.

In sum, on the existing record, Plaintiffs' overly broad subpoena just plain goes too far. At the very least, the nonparty discovery is premature because Uber has agreed to produce pertinent documents and Uber will substantially complete its production by September 2024. Dkt. 175, at 4. Various disputes over discovery are also outstanding. And the Court is set to hear Uber's motion to certify under § 1292(b) and for a stay in about seven weeks. Dkt. 638 at 3. The potential for a stay is a proper consideration.

Checkr appreciates the Court's attention to this letter.[7]

Respectfully submitted,

Littler Mendelson, P.C.

*[signature]*

Rod M. Fliegel
Shareholder

RMF/ma

---

[5] To date, Plaintiffs' attorneys have not replied to Exhibit A.

[6] Such extraordinary demands by Plaintiffs, it seems, are not novel. *See, e.g.,* Dkt. 639 at 2 (denying Plaintiffs' request to select 50 additional custodians); Dkt. 190 (denying Plaintiffs' request to suspend Uber's company-wide retention policies).

[7] To help ensure a fulsome record, Checkr incorporates Uber's letter and supporting evidence. Dkt. 610.

## **PROOF OF SERVICE**

I, the undersigned, state:

I am employed in the City and County of San Francisco, State of California. I am over the age of 18 years, and not a party to the within action. My business address is LITTLER MENDELSON, P.C., 101 Second Street, Suite 1000, San Francisco, CA 94105.

On June 18, 2024, I served the foregoing document(s) described as:

### CHECKR, INC.'S
### OBJECTIONS TO THE SUBPOENA FOR DOCUMENTS

on the interested parties by enclosing a true copy in a sealed envelope addressed as follows:

| | |
|---|---|
| Samantha Hoefs<br>Nigh Goldenberg Raso Vaughn, PLLC<br>60 South 6th Street, Ste. 2800<br>Minneapolis, MN 55402 | *Attorney for Plaintiff*<br><br>T: 612-445-0202<br>Fax: 202-792-7927<br>Email: shoefs@nighgoldenberg.com |
| Michael B. Shortnacy (SBN 277035)<br>SHOOK, HARDY & BACON L.L.P.<br>2049 Century Park East, Ste. 3000<br>Los Angeles, CA 90067 | *Attorney for Defendant*<br>*UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC*<br><br>Telephone: (424) 285-8330<br>Facsimile: (424) 204-9093<br>mshortnacy@shb.com |
| Patrick Oot (Admitted Pro Hac Vice)<br>SHOOK, HARDY & BACON L.L.P.<br>1800 K St. NW Ste. 1000<br>Washington, DC 20006 | *Attorney for Defendant*<br>*UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC*<br><br>Telephone: (202) 783-8400<br>Facsimile: (202) 783-4211<br>oot@shb.com |
| Kyle N. Smith (Pro Hac Vice admitted)<br>Jessica E. Phillips (Pro Hac Vice admitted)<br>PAUL, WEISS, RIFKIND, WHARTON<br>& GARRISON LLP<br>2001 K Street, NW<br>Washington DC, 20006 | *Attorney for Defendant*<br>*UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC*<br><br>Telephone: (202) 223-7300<br>Facsimile: (202) 223-7420<br>ksmith@paulweiss.com<br>jphillips@paulweiss.com |

☐ **VIA OVERNIGHT MAIL**: By delivering such document(s) to an overnight mail service or an authorized courier in a sealed envelope or package designated by the express service courier addressed to the person(s) on whom it is to be served.

☐ **VIA U.S. MAIL:** I am readily familiar with Littler Mendelson, P.C.'s practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **VIA PERSONAL DELIVERY**: I arranged personal delivery of such sealed envelope(s) by hand to the offices of the addressee(s) listed above.

☐ **VIA MESSENGER SERVICE**: I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed above and providing them to a professional messenger service for service.

**DECLARATION OF MESSENGER**: I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed above. For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening; for a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding. I served the envelope or package, as stated above on June 18, 2024. I declare under penalty of perjury under the laws of the State of California and United States that the foregoing is true and correct.

Dated: _____                          _____

Signature of Declarant/Messenger

☒ **VIA ELECTRONIC MAIL:** I caused the foregoing document(s) to be served electronically on the persons at the electronic notification addresses listed above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. I further declare that I am employed by a member of the bar of this court at whose direction the service was made.

Executed on June 18, 2024, at San Francisco, California.

_____
MARI ADRIANO

4879-8412-3080.1 / 091435-1534

# Adriano, Mari

| | |
|---|---|
| **From:** | Fliegel, Rod |
| **Sent:** | Wednesday, June 12, 2024 3:05 PM |
| **To:** | Sam Hoefs |
| **Cc:** | Kim, Bo Kyung; Backhouse, Denise; Marlene Goldenberg; Gromada, Veronica G. (SHB); Cummings, Dan (SHB) |
| **Subject:** | RE: Subpoena to Checkr |

Good afternoon, Sam.

　　Thank you for your e-mail following our Zoom call on Tuesday, June 4, 2024, when we met, together with Defendants' attorneys, to discuss Plaintiffs' subpoena to nonparty Checkr. We are following up to request clarity regarding Request No. 5 and other issues discussed on the call.

　　To confirm, it was our understanding from the call that Plaintiffs' intent to withdraw requests for individual background reports would dispose of Request No. 5 in its entirety. However, your follow-up e-mail suggests a different understanding, and that you are seeking additional categories of documents on the basis that Defendants have not yet produced such documents (but without assessing whether said items are included in the 200+ pending requests to Defendants). Please confirm whether Plaintiffs are withdrawing Request No. 5. If not, kindly clarify, with specificity, what Plaintiffs are seeking from Checkr. Please also send us copies of all of Plaintiffs' written discovery requests to Defendants, including but not limited to the request for the production of documents. We would like to have an opportunity to review the outstanding written discovery requests ourselves.

　　Please also further consider withdrawing catch-all Request No. 1 and Request No. 2 which, without more, broadly seek "all communications" and "all documents exchanged" with Defendants. Based on our Zoom call, it seems Plaintiffs withdrew similar requests with regard to at least one of the other nonparties. In our view, there is no way these sweeping requests (or indeed, any of the ten requests) are drawn in conformity with Rule 45.

　　Additionally, as we requested on the Zoom call, please provide clarity on the following for <u>each</u> of the ten requests to Checkr:

1. Whether Defendants already have produced responsive documents to each of the requests at issue.

    o If so, please explain how, if at all, the produced documents are insufficient.

2. Whether Plaintiffs' 200+ pending discovery requests to Defendants include or encompass the documents sought by the request to Checkr.

    o If so, please explain why you believe Defendants will not provide responsive documents, or will provide insufficient documents.

　　Checkr's position is that the Rules should be construed, administered, and employed by the Court and the parties to secure the "just, speedy, and inexpensive determination of every action and proceeding," which includes the subpoenaing party's duty to exhaust party discovery before placing any burden or expense, much less significant burden and expense, on a third party. *See, e.g.*, Fed. R. Civ. P. 1; Fed. R. Civ. P. 45(d); *see also, e.g.*, *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."). Indeed, the Ninth Circuit has traditionally recognized that nonparties, such as Checkr, are entitled to special protections from overbroad and burdensome discovery seeking irrelevant documents and information.

   Once we identify the requests for documents you believe Defendants do not have (or will not give you), we can continue our discussion to determine whether we can find any common ground at all, including a much clearer sense of how, if at all, the documents (and ESI) sought specifically relate to the claims and defenses in the action. So far, you have basically taken the position that, because Plaintiffs' claims implicate alleged deficiencies in Uber's background check program, Plaintiffs are entitled to demand from a nonparty, such as Checkr, <u>any</u> document that Defendants exchanged with Checkr dating back ten years to 2014. Measured by any standard, this is not a reasonable position regarding Rule 45 or otherwise.

   We further note that Plaintiffs' proposed modification—i.e., that Checkr "produce documents uniquely in Checkr's possession"—does not, as a practical matter, in any meaningful way effectively reduce the significant financial, technical, and operational burdens imposed by the subpoena. Nor does it sufficiently narrow or focus the extremely overbroad nature of the sweeping requests. In fact, such a "limitation" only serves to multiply Checkr's burden, as the same massive volume of data must be collected, processed, searched, and reviewed, but with the added complexity of trying to determine whether any document or ESI may be "uniquely" within Checkr's possession and not available from Defendants. Moreover, to the extent that Plaintiffs subsequently seek supplemental discovery to address any perceived gaps in Defendants' productions, Checkr would be burdened with essentially repeating the process. Put simply, there is no "easy button" or filter for determining what is purely internal and "unique" to Checkr, and in the absence of any meaningful or actionable search criteria or parameters, Checkr is being asked to "boil the ocean" not once, but twice.

   Should you reconsider cost-shifting/sharing, please also let us know that, too. If for any reason Checkr is ordered to produce documents despite its objections, Checkr intends to seek its full recourse from Plaintiffs under applicable law, including all of its attorney's fees and costs. Fed. R. Civ. P. 45(d)(2)(B)(ii).

   Thank you for your attention to this e-mail.

**Rod Fliegel**
Attorney at Law
415.439.6253 direct, 415.215.1305 mobile, 415.743.6557 fax
RFliegel@littler.com

**Important –** We've Moved!  Please note the new address below



Labor & Employment Law Solutions | Local Everywhere
101 Second Street, Suite 1000, San Francisco, CA 94105

**From:** Sam Hoefs <shoefs@nighgoldenberg.com>
**Sent:** Wednesday, June 5, 2024 1:41 PM
**To:** Fliegel, Rod <RFliegel@littler.com>; Kim, Bo Kyung <BKim@littler.com>; Backhouse, Denise <DBackhouse@littler.com>; Gromada, Veronica G. (SHB) <vgromada@shb.com>; Cummings, Dan (SHB) <decummings@shb.com>; Marlene Goldenberg <mgoldenberg@nighgoldenberg.com>
**Subject:** Subpoena to Checkr

**[EXTERNAL E-MAIL]**

Hi Rod, Bo, and Denise,

2

Thank you for the call today.

As we discussed, Plaintiffs will withdraw without prejudice requests that can be construed to request background check reports on an individual. We have requested these from Uber.

Plaintiffs requested that Uber commit to producing documents responsive to the requests and providing custodians that worked with Checkr.

To reduce the burden on Checkr, Plaintiffs proposed that Checkr produce documents uniquely in Checkr's possession, i.e., internal communications pertaining to Uber, draft versions of documents (where finals were sent to Uber); internal audits or documents related to Uber background checks which would not have been provided to Uber. Plaintiffs would defer our requests for items exchanged between Checkr and Uber until later in the discovery process. You indicated that you would consider this but did not have a final position.

I agreed to have someone check on the following items. Uber's counsel did not object to this proposed plan during the call.
- Requests 3 and 6 (contracts, payments): Contracts located; minimum payment information has been located but we do not have invoices and would request those from Checkr.
- Requests 4 and 5 (audits): Search complete; no audits located, so we would request those from Checkr.

In the interest of time, I have a response on requests 8-10, which we may be able to address by email. Plaintiffs are not willing to withdraw at this time, and have determined that Item 8 has not been produced. Items 9 and 10 are more broad, but we would likewise request that Checkr produce any unique policies and procedures and any unique communications on these issues as an initial step.

Again, as I indicated in our call, if there are specific categories of items that would fall within the scope of the subpoena requests that Checkr believes are not relevant that we have not considered, we would be happy to consider them.

Thanks,

**Sam Hoefs**
Associate Attorney



Nigh Goldenberg Raso & Vaughn, PLLC
60 South Sixth Street
Suite 2800
Minneapolis, MN
55402

D - (612) 445-0202

T - (202)-792-7927

F - (202)-792-7927

nighgoldenberg.com

Schedule a meeting!