1    [Submitting counsel below]

2

3

4                        UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6                          SAN FRANCISCO DIVISION

7

8    **IN RE: UBER TECHNOLOGIES, INC.,**          No. 3:23-md-03084-CRB
     **PASSENGER SEXUAL ASSAULT**
9    **LITIGATION**                               **PLAINTIFFS' OPPOSITION TO**
                                                   **DEFENDANTS' MOTION TO CERTIFY**
10                                                 **INTERLOCUTORY APPEAL OF TERMS**
                                                   **OF USE RULING**
11   ─────────────────────────────

12   This Document Relates to:                    Judge: Honorable Charles R. Breyer
                                                   Date:    August 9, 2024
13   All Cases                                     Time:    10:00 a.m.
                                                   Courtroom:  6—17th Floor
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD ......................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.    Uber does not identify a controlling question of law. ........................................... 3

      A.    Whether Uber's Non-Consolidation Clause is enforceable does not
            materially affect the outcome of the litigation. ........................................ 3

      B.    The public policy question is not necessarily controlling even as to the
            Order. ......................................................................................................... 4

II.   There is no substantial ground for difference of opinion. .................................... 6

III.  Interlocutory appeal would not materially advance the litigation........................ 9

      A.    Reversal of the Court's TOU order would not accelerate or simplify the
            resolution of the cases against Uber....................................................... 10

      B.    Appeal and a stay would disrupt coordination with the JCCP............................ 11

      C.    Uber's arguments ignore the requirement that immediate appeal materially
            advance the litigation. ............................................................................. 12

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Irritated Residents v. Fred Schakel Dairy,*
634 F. Supp. 2d 1081 (E.D. Cal. 2008)................................................................. 9, 11

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011)...................................................................................................... 7

*Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas,*
571 U.S. 49 (2013)........................................................................................................ 8

*Capri Sun GmbH v. Am. Beverage Corp.,*
2022 WL 3137131 .................................................................................................... 5, 9

*In re Cement Antitrust Litig. (MDL No. 296),*
673 F.2d 1020 (9th Cir. 1981)...................................................................................... 3

*Coal. on Homelessness v. City & Cnty. of S.F.,*
90 F. 4th 975 (9th Cir. 2024) ....................................................................................... 5

*Couch v. Telescope Inc.,*
611 F.3d 629 (9th Cir. 2010).............................................................................. passim

*Doe 1 v. AOL LLC,*
552 F.3d 1077 (9th Cir. 2009)...................................................................................... 7

*Dukes v. Wal-Mart Stores, Inc.,*
2012 WL 6115536 (N.D. Cal. Dec. 10, 2012) ............................................................ 2

*Glob. Quality Foods v. Van Hoekelen Greenhouses, Inc.,*
2016 WL 4259126 (N.D. Cal. Aug. 12, 2015)............................................................ 7

*Guidiville Rancheria of Cal. v. United States,*
2014 WL 5020036 (N.D. Cal. Oct. 2, 2014)............................................................... 3

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union,*
22 F. 4th 1125 (9th Cir. 2022) .......................................................................... 1, 2, 3, 9

*Krommenhock v. Post Foods, LLC,*
2020 WL 2322993 (N.D. Cal. May 11, 2020) ............................................................ 7

*Kuehner v. Dickinson & Co.,*
84 F.3d 316 (9th Cir. 1996)......................................................................................... 4

*Leite v. Crane Co.,*
2012 WL 1982535 (D. Haw. May 31, 2012) ............................................................ 12

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.,*
921 F. Supp. 2d 1059 (D. Hawaii 2013) ............................................................. 11, 12

*In re: Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.,*
655 F. Supp. 2d 1378 (J.P.M.L. 2009)........................................................................ 6

*Reese v. BP Expl. (Alaska) Inc.,*
643 F.3d 681 (9th Cir. 2011)...................................................................................... 11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Roshan v. Lawrence*,
2023 WL 8587266 (N.D. Cal. Dec. 8, 2023) .......................................................... 10

*In re: Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
2024 WL 1205486 (N.D. Cal. Feb. 2, 2024) ...................................................... 2, 3, 11

*Uber Sexual Assault Cases*, JCCP No. 5188, Order Granting Pet. for Coord. (Cal.
Sup. Ct. Dec. 9, 2021) ........................................................................................ 2, 6

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
2023 WL 6456588 (J.P.M.L. Oct. 4, 2023) ....................................................... 8, 10

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
2024 WL 41889 (J.P.M.L. Jan. 4, 2024)........................................................... 2, 6, 9

*Union Cnty., Iowa v. Piper Jaffray & Co., Inc.*,
525 F.3d 643 (8th Cir. 2008)..................................................................................... 6

*United States v. Adam Brothers Farming, Inc.*,
369 F. Supp. 2d 1180 (C.D. Cal. 2004) ................................................................... 12

*Valadez v. CSX Intermodal Terminals, Inc.*,
2019 WL 13146777 (N.D. Cal. June 28, 2019) ..................................................... 9, 10

*WeRide Corp. v. Kun Huang*,
2020 WL 1478372 (N.D. Cal. Mar. 26, 2020) ........................................................... 4

*Wickersham v. Eastside Distilling, Inc.*,
2024 WL 1997896 (D. Or. May 4, 2024) ................................................................... 4

*Williams v. Alameda Cnty.*,
657 F. Supp. 3d 1250 (N.D. Cal. 2023) ............................................................... 9, 11

**Statutes**

9 U.S.C. § 16(b) ............................................................................................................ 4

12 U.S.C. § 1292(b) ............................................................................................. *passim*

28 U.S.C. § 1291 ........................................................................................................... 2

28 U.S.C. § 1407 ................................................................................................. *passim*

**Court Rules**

9th Cir. R. 36-3(a) ....................................................................................................... 3

Local Rule 3-12........................................................................................................ 4, 13

**Other Authorities**

D. Theodore Rave & Francis E. McGovern, *A Hub-and-Spoke Model of
Multidistrict Litigation*, 84 Law & Contemp. Probs. 21 (2021) ........................... 13

Francis E. McGovern, *Resolving Mature Mass Tort Litigation*, 69 B.U.L. Rev. 659
(1989) .................................................................................................................... 13

Peter H. Schuck, *Mass Torts: An Institutional Evolutionist Perspective*, 80 Cornell
L. Rev. 941 (1995) ................................................................................................ 13

**INTRODUCTION**

Whether Uber can, by operation of contract, dissolve this MDL in whole or in part is an important issue, one to which the Court gave close attention. The effect of Uber's Non-Consolidation Clause is, indeed, already before the Ninth Circuit, as part of Uber's fully-briefed mandamus petition (with oral argument likely to be set in the fall). But the question now is not whether a second appeal on similar questions would be beneficial in the abstract, but whether Uber's motion satisfies the three requirements of 12 U.S.C. § 1292(b). *See Couch v. Telescope Inc.*, 611 F.3d 629, 635 (9th Cir. 2010) (explaining that interlocutory appeal certification decisions must "remain focused on the statutory requirements, not policy considerations which may or may not be furthered by certification"). It does not.

As an initial matter, Uber pairs its motion for certification with a request that the Court "stay the proceedings in this action pending the outcome of Uber's Section 1292(b) application to the Ninth Circuit, and pending the outcome of an appeal, if one is permitted." Mot. at 10. Six months ago, this Court denied a similar motion to stay, finding that "any stay" for appellate proceedings "would be of indefinite duration," that delay would "very likely set the MDL's schedule behind that of the parallel, coordinated California state proceedings," and that Uber's appeal of the JPML's order did not present "a question that should significantly affect the scope of information that is discoverable from Uber" or affect "the substantive issues in dispute." ECF 255 at 6-8, 10. The Court also pointed out that a hypothetical "grant of Uber's [mandamus] petition" would not "be the end of Uber's litigation before this Court" given that the majority of pending cases "that currently comprise this MDL … were directly filed in this district." *Id.* at 12. Those reasons apply now as they did then. As the Court tentatively indicated at the June 21, 2024 case management conference, the request for a stay should be denied.

Turning to the merits, Uber must show that an immediate appeal would "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b); that is, it would "appreciably shorten the time, effort, or expense of conducting the district court proceedings." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F. 4th 1125, 1131 (9th Cir. 2022) (citation omitted). Uber cannot do so. As this Court earlier explained, discovery in this MDL

1   would in significant part need to be conducted regardless of the applicability of the Terms of Use,

2   and any appellate decision on whether or not these actions will proceed as an MDL will not

3   materially affect the substantive issues in dispute. Interlocutory appeal and the indefinite stay

4   Uber wants along with it would have the same deleterious effects (and no concrete benefits) that

5   the Court identified in denying Uber's previous motion to stay. *See also In re: Soc. Media*

6   *Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 1205486, at *2 (N.D. Cal. Feb. 2,

7   2024) (denying certification where appeal "would be disruptive to this litigation").

8        Nor can Uber satisfy the remaining two § 1292(b) criteria. This Court's TOU order does

9   not present a "controlling question of law," because answering the question the Court decided

10  would not affect in any way the "outcome of the litigation." *ICTSI*, 22 F. 4th at 1130. There is

11  also no showing of substantial grounds for disagreement on the merits of the Court's order. While

12  the Court identified the enforceability of the Non-Consolidation Clause "in the MDL context [a]s

13  a matter of first impression," ECF 543 at 10, just "because a court is the first to rule on a

14  particular question" does not alone "support an interlocutory appeal." *Couch*, 611 F.3d at 633.

15       In fact, this Court did not stand alone in disregarding Uber's Non-Consolidation Clause—

16  both the JCCP and JPML similarly disregarded the Clause in ordering coordinated proceedings.

17  *See Uber Sexual Assault Cases*, JCCP No. 5188, Order Granting Pet. for Coord. (Cal. Sup. Ct.

18  Dec. 9, 2021); *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 41889, at *4

19  (J.P.M.L. Jan. 4, 2024). While the Court's legal analysis may have addressed novel issues, its

20  bottom-line conclusion that sexual assault cases against Uber are subject to judicial coordination

21  broke no new ground.

22       Certification under § 1292(b) is "not intended merely to provide review of difficult rulings

23  in hard cases." *Dukes v. Wal-Mart Stores, Inc.*, 2012 WL 6115536, at *2 (N.D. Cal. Dec. 10,

24  2012) (Breyer, J.) (citation omitted). Because Uber cannot meet any of the three statutory

25  requirements, Uber's request for an interlocutory appeal should be denied.

26                                  **LEGAL STANDARD**

27       Under the final judgment rule, the courts of appeals "have jurisdiction of appeals from all

28  final decisions of the district courts of the United States." 28 U.S.C. § 1291. However, § 1292(b)

1  permits a district court to certify a non-final order for interlocutory review where (1) the order

2  "involves a controlling question of law," (2) "as to which there is substantial ground for

3  difference of opinion," and (3) "an immediate appeal from the order may materially advance the

4  ultimate termination of the litigation." *Social Media*, 2024 WL 1205486, at * 2 (citation omitted).

5  Section 1292(b) is a "narrow exception to the final judgment rule," *Couch*, 611 F.3d at 633, and

6  the "Ninth Circuit has emphasized that section 1292(b) 'is to be applied sparingly and only in

7  exceptional cases.'" *Social Media*, 2024 WL 1205486, at *2 (citation omitted).

**ARGUMENT**

**I.    Uber does not identify a controlling question of law.**

**A.    Whether Uber's Non-Consolidation Clause is enforceable does not materially affect the outcome of the litigation.**

12  For a question to be "controlling[,] its resolution must "materially affect the outcome of

13  the litigation in the district court." *ICTSI*, 22 F. 4th at 1130 (citation omitted). Uber suggests that

14  the Court ignore the word "controlling" and instead ask only whether the question of

15  enforceability of the Non-Consolidation Clause "is one of law." Mot. at 5. This is incorrect. The

16  Ninth Circuit has long held that questions "separable from and collateral to the merits" of the

17  lawsuit generally do not meet the statutory standard since they can "in no way materially affect

18  the eventual outcome of the litigation." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d

19  1020, 1027 (9th Cir. 1981).[1] Indeed, "the Ninth Circuit has suggested that a 'controlling question'

20  should be limited to such issues as who are proper parties, whether a court has jurisdiction, and

21  whether state or federal law should apply." *Guidiville Rancheria of Cal. v. United States*, 2014

22  WL 5020036, at *2 (N.D. Cal. Oct. 2, 2014).

23  Nothing could be more collateral to the merits of this litigation than the question of

24  whether Uber's Non-Consolidation Clause is enforceable. That is true as a general matter: "[t]his

25  is not a situation where an appellate decision could render discovery unnecessary altogether, nor

26  would it simplify or complicate the substantive issues in dispute." ECF 255 at 10 (citation

---

[1] Uber's citation to an unpublished Circuit decision that says nothing about the meaning of "controlling" does not add anything. *See* 9th Cir. R. 36-3(a).

1    omitted). If "Uber succeeds in [enforcing its Non-Consolidation Clause], there will still be at least

2    220 distinct actions pending against Uber asserting the same legal theories against it." *Id.* And

3    particularly so with respect to the Plaintiffs against whom Uber moved: "all of the cases that are

4    specifically the subject of Uber's motion … were all filed in this district." ECF 543 at 21. Even

5    absent MDL coordination, those cases would be subject to reassignment and coordination under

6    Local Rule 3-12. *Id.*[2] So not only does the Non-Consolidation Clause say nothing about the "basic

7    issues of this case," it does not even determine where the bulk of the MDL cases will be heard.

8    *Wickersham v. Eastside Distilling, Inc.*, 2024 WL 1997896, at *3 (D. Or. May 4, 2024) (quoting

9    Ninth Circuit).

10       For the argument that the Court's order is a controlling question, Uber cites *Kuehner v.*

11   *Dickinson & Co.*, 84 F.3d 316 (9th Cir. 1996). But that appeal was from an order sending a case

12   to arbitration. The Ninth Circuit held that the order presented a controlling question of law

13   because "it could cause the needless expense and delay of litigating an entire case in a forum that

14   has no power to decide the matter." *Id.* at 319. The order in *Kuehner*, analogous to a question of

15   subject matter jurisdiction, bears no resemblance to the question of whether, as Uber puts it, "the

16   subject Plaintiffs may participate in this [MDL] in violation of the Terms of Use." Mot. at 1.

17   Whether they may or may not, Plaintiffs are entitled to pursue their case in federal court, and will

18   continue to do so in the Northern District of California. *See WeRide Corp. v. Kun Huang*, 2020

19   WL 1478372, at *3 (N.D. Cal. Mar. 26, 2020) ("Here, unlike *Kuehner*, the Court's orders … do

20   not concern fundamental issues such as the Court's or an arbitral tribunal's jurisdiction. Thus,

21   *Kuehner* is inapposite."). Moreover, *Kuehner* relied on the Congressional recognition in the

22   Federal Arbitration Act that arbitrability questions merit immediate appeal. 84 F.3d at 316 (citing

23   9 U.S.C. § 16(b)). There is no such federal policy here.

24       **B.    The public policy question is not necessarily controlling even as to the Order.**

25       The legal question the Court answered and of which Uber seeks certification does not

26

27   _____
     [2] Although, as Plaintiffs and the Court pointed out, Uber's extreme position would presumably
     bar that kind of coordination (or even informal coordination), ECF 341 at 11, 14; ECF 543 at 26,
     Uber declined to take a position on that question, and so it has not been decided. ECF 393 at 11

28   n.11 ("This Motion also is not about counsel's ability to represent multiple clients or the Court's
     ability to manage its individual docket.").

even necessarily resolve the question of whether the Non-Consolidation Clause can be enforced. As an initial matter, Uber waived its arguments. As the Court pointed out, "Uber's briefing offers no direct response to Plaintiffs' argument that the Non-Consolidation Clause is unenforceable on grounds of public policy." ECF 543 at 11. Having declined the opportunity to argue public policy before this Court when the argument was ripe, Uber may not get a fast pass to the Court of Appeals. *See Coal. on Homelessness v. City & Cnty. of S.F.*, 90 F. 4th 975, 977 (9th Cir. 2024) (arguments not made below waived).

Waiver aside, Plaintiffs made a number of arguments for why the Non-Consolidation Clause could not be enforced. These included: (1) the clause is unenforceable because performance is rendered impractical by the JPML's order; (2) the operative provision is too aspirational to impose an actionable obligation; (3) the clause is unconscionable; (4) the clause conflicts with the mandate of 28 U.S.C. § 1407; and (5) Uber did not request any actionable relief. ECF 341 at 9-15. Because the Court found that Plaintiffs' contractual public policy argument resolved the motion, it did not reach any of the remaining issues. ECF 543 at 11. So even if the Ninth Circuit disagreed with this Court's analysis, that could well make no difference in the end. An interlocutory appeal should be denied where "[t]here are too many uncertainties" and when the party seeking appeal "embeds too many debatable assumptions" in its request. *Capri Sun GmbH v. Am. Beverage Corp.*, 2022 WL 3137131, at *6 (S.D.N.Y. Aug. 5, 2022).

The redressability problem bears emphasis. Plaintiffs argued that Uber's request for an "assessment" of its clause was academic, because (1) there was no basis to dismiss Plaintiffs' cases and (2) transfer would result only in cases being sent back to this Court by the JPML (there being an MDL regardless because many Plaintiffs are not subject to the clause). ECF 341 at 14-15. The Court acknowledged "a host of practical difficulties with the relief that Uber asks for, not the least of which is that it is unclear what would authorize this Court to dismiss Plaintiffs' cases just because they were in breach of a non-consolidation clause." ECF 543 at 22 n.7. For purposes of managing this MDL, the Court "set[] those difficulties aside," *id.*, but they make it impossible for Uber to demonstrate that the questions of law materially affect the outcome of the litigation.

1

**II.     There is no substantial ground for difference of opinion.**

2

Just "because a court is the first to rule on a particular question" does not alone mandate

3

interlocutory review. *Couch*, 611 F.3d at 633 (review inappropriate where "defendants have not

4

provided a single case that conflicts with the district court's" order). Instead, that fact weighs

5

against review. *Id.* (citing *Union Cnty., Iowa v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 647 (8th

6

Cir. 2008) ("[A] dearth of cases does not constitute substantial ground for difference of

7

opinion.").

8

Uber's requested application of its TOU may be "novel," but there is no indication the

9

question is particularly "difficult." *Couch*, 611 F.3d at 633. No court has ever precluded

10

participation in an MDL (or barred related case coordination) on the basis of a contractual

11

arrangement. *See, e.g.*, *In re: Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*, 655 F. Supp.

12

2d 1378, 1379 (J.P.M.L. 2009) (explaining that forum selection clauses do not preclude MDL

13

participation). To the contrary, every other court has disagreed with Uber's position that the TOU

14

prevent case coordination. *Uber Sexual Assault Cases*, JCCP No. 5188, Order Granting Pet. for

15

Coord.; *In re Uber*, 2024 WL 41889, at *4.

16

Uber's motion is full of suppositions about what other courts "might" do or what "courts

17

(and legislatures) would surely debate" but lacks any particularized showing that the Court's

18

conclusions are significantly debatable. Uber's arguments reflect only its "strong disagreement

19

with the Court's ruling," *Couch*, 611 F.3d at 633, not actual grounds to doubt the Court's

20

conclusion. A few of Uber's arguments stand out.

21

*First*, while Uber ignored Plaintiff's public policy arguments in the briefing, it now

22

apparently concedes the Court applied the correct legal standard. That weighs against 1292(b)

23

certification. *See In re Brower*, 2020 WL 4439042, at *3 (N.D. Cal. Aug. 3, 2020) ("[T]here must

24

be a genuine doubt as to the correct legal standard used in the order for the order to be granted

25

certification under § 1292(b).") (citation omitted).

26

*Second*, Uber says that "Courts have long recognized the importance of freedom of

27

contract and the enforcement of private contracts" and "both federal and state courts uphold

28

contract provisions such as arbitration clauses, forum selection clauses, and choice of law

provisions." Mot. at 2-3. But, in reality, courts decline to enforce forum selection and choice-of-law clauses on a wide variety of substantive grounds, including public policy. *See, e.g.*, *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009).[3] So Uber's argument underscores the degree to which the Court's analysis reflected the application of settled standards to present circumstances—not a basis for interlocutory appeal.

*Third*, Uber cites to the Federal Arbitration Act's requirement that courts enforce arbitration agreements in most circumstances. Mot. at 3-4. Uber's reliance on the FAA in a case that does not involve an arbitration clause remains bewildering. *See Krommenhock v. Post Foods, LLC*, 2020 WL 2322993, at *2 (N.D. Cal. May 11, 2020) ("inapposite" case law cannot show there is "substantial grounds" for disagreement). Uber takes a statute that singles out one kind of contractual provision for special treatment and divines from it a rule applicable to *all* contractual provisions that refer to court procedures. No court has ever accepted this view. To the contrary, the Supreme Court has made clear that the FAA reflects a "liberal federal policy favoring arbitration" and, as a result, preempts state-law contract rules based, for example, on public policies that in form or effect "disfavor[] arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 341 (2011). As this Court explained in distinguishing arbitration, "[p]arties can generally choose where their disputes must be brought, but having chosen a federal forum, they cannot pick and choose which rules of procedure apply to their cases." ECF 543 at 10. Uber has no response.

*Fourth*, Uber does not engage with the Court's extensive discussion of the history and public policies of 28 U.S.C. § 1407. Instead, it suggests in a footnote that the Court inappropriately relied on legislative history. Mot. at 6 n.6. But the Court's thorough analysis was based primarily on the text of the statute and Supreme Court, appellate, and JPML authority

---

[3] Uber cites *Glob. Quality Foods v. Van Hoekelen Greenhouses, Inc.*, 2016 WL 4259126 (N.D. Cal. Aug. 12, 2015), but that case reaffirmed that "public-interest concerns" are sometimes grounds for denying enforcement of a forum selection clause. *Id.* at *5. The court rejected only the argument that "judicial efficiency" *always* requires disregarding such a clause. *Id.* The Court's decision here did not rely on unmoored concerns about "judicial efficiency" but instead on the specific functions and policies of § 1407. Needless to say, different types of contractual provisions will have different outcomes.

1    applying it. To suggest the Court's ruling was based merely on review of a committee report is to

2    caricature it. Uber cites no cases or statutes that contradict the Court's opinion. The best Uber can

3    muster is a "*Cf.*" cite to *Atlantic Marine Construction Co. v. U.S. District Court for the Western*

4    *District of Texas*, 571 U.S. 49 (2013), a case the Court discussed and determined, if anything,

5    "supports Plaintiffs' point." ECF 543 at 15-16.[4]

6           *Fifth*, Uber argues that there is no "empirical evidence" supporting the Court's conclusion

7    that enforcement of the clause would compromise the public purposes that § 1407 is intended to

8    serve. This argument was never made during the briefing or even at oral argument and is waived.[5]

9    In any event, the empirical evidence is right here: the hundreds (possibly soon 1,000+) of cases

10   raising common questions of fact and benefitting from pretrial coordination, benefits that would

11   be lost if Uber's contract could preclude an MDL. Uber's position reflects its disagreement with

12   the factual findings made by the JPML that MDL centralization in this case "will serve the

13   convenience of the parties and witnesses and promote the just and efficient conduct of this

14   litigation." *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2023 WL 6456588, at *1

15   (J.P.M.L. Oct. 4, 2023). Uber has challenged those findings on mandamus; it may not do so on

16   interlocutory appeal of purely legal questions under § 1292(b).

17          *Sixth*, Uber disputes the Court's rejection of Uber's analogy between the Non-

18   Consolidation Clause and class waivers. This argument is similar to a party asserting that "one

19   precedent rather than another is controlling," which is not a basis for 1292(b) appeal. *Couch*, 611

20   F.3d at 633 (citation omitted).[6] And, again, Uber ignores the Court's extensive explanation that,

21   while "[t]here are some similarities between" the two procedures, "past a certain point, comparing

22   Rule 23 with Section 1407 reflects a misconception about the aims of multidistrict litigation and,

23

---

24   [4] The Court deemed Plaintiffs' arguments based on *Atlantic Marine* more pertinent to the JPML's
     function in applying § 1407, not a transferee court's. ECF 543 at 16.

25   [5] At the hearing, the Court asked Uber about the "practical real world consequence" of its
     position, and Uber's response was only "it's a binding contract." 4/12/24 H'rg Tr. at 6:1-13.

26
     [6] Uber argues that "the necessity of analogy" shows that the question "is one on which reasonable

27   minds might differ." Mot. at 8. Putting aside Uber's error in reducing the Court's analysis to mere
     "analogy," Uber ignores that any such "necessity" is the result of its inability to cite a single case

28   from any court enforcing a non-consolidation clause or anything like it.

1  especially, the means Congress used to achieve those aims." ECF 543 at 28. Uber attacks only

2  one leg of the Court's analysis (that class actions are party-driven) and argues that "the decision

3  to seek centralization was not made by the courts, but by the parties in contravention of the Non-

4  Consolidation Clause." Mot. at 8. This reflects Uber's habit of simply ignoring judicial

5  determinations it disagrees with: the JPML, in response to similar arguments, has twice explained

6  that this fact is legally irrelevant to the function of § 1407. *In re Uber*, 2024 WL 41889, at *4.[7]

7  And Uber's suggestion that it is germane that Plaintiffs filed in federal court (where there is an

8  MDL) and not "state court in the states in which their alleged incidents occurred" implicates fact

9  questions about Uber's promises and its forum selection clause, fact questions not suited for

10  interlocutory review. *See Allen*, 2019 WL 1466889, at *2.[8]

11  **III.    Interlocutory appeal would not materially advance the litigation.**

12         The "'materially advance' prong is satisfied when the resolution of the question may

13  appreciably shorten the time, effort, or expense of conducting the district court proceedings."

14  *ICTSI*, 22 F. 4th at 1131 (citation omitted). Contrary to Uber's claim that the legal standard for

15  this factor is unclear, Mot. at 9, its application is well understood: "The ultimate question is

16  whether permitting an interlocutory appeal would minimize the total burdens of litigation on

17  parties and the judicial system by accelerating or at least simplifying trial court proceedings."

18  *Valadez v. CSX Intermodal Terminals, Inc.*, 2019 WL 13146777, at *3 (N.D. Cal. June 28, 2019)

19  (citation omitted).[9]

20         Here, an appeal would not narrow or resolve any critical questions. As the Court

21

22  [7] To the extent the Rule 23 analogy helps Uber, it counsels against interlocutory review. As the Court noted, it is not settled that class waivers are enforceable. ECF 543 at 28 & n.11. So, to

23  evaluate Uber's position, the appellate court would first have to decide a separate Rule 23 question that is not otherwise relevant to this case at this time. *See Capri Sun*, 2022 WL 3137131,

24  at *6 (no appeal where party's request "embeds too many debatable assumptions").

25  [8] For example, if it is true, as Uber hints, that Plaintiffs were obligated by the Non-Consolidation Clause to file in state court to avoid the MDL, then the Non-Consolidation Clause is probably unenforceable because it conflicts with Uber's public promises and contractual provisions

26  expressly permitting Plaintiffs to sue in federal court.

27  [9] Uber's own cases confirm this: "the Court should consider the effect of a reversal by the court of appeals on the management of the case." *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1092 (E.D. Cal. 2008); *see also Williams v. Alameda Cnty.*, 657 F. Supp.

28  3d 1250, 1255 (N.D. Cal. 2023) (considering whether "[d]iscovery has [] begun" and whether "appeal might postpone the scheduled trial date").

PLS.' OPP'N TO DEF.'S MOT.
TO CERTIFY TOU ORDER FOR APPEAL
CASE NO. 3:23-MD-03084

explained earlier, the discovery and motions practice currently underway in the MDL would remain relevant even if the appellate court were to determine the cases must proceed individually. An interlocutory appeal would also damage coordinating efforts between the JCCP and MDL proceedings, which Uber itself has said will make this litigation more "efficient and economical." ECF 587 at 10. Uber's arguments elide rather than apply the statutory standard.

### A.      Reversal of the Court's TOU order would not accelerate or simplify the resolution of the cases against Uber.

As the Court has already explained, nothing is happening in this MDL that would not also need to happen in courts around the country were Uber to succeed on its pestiferous project to dismantle the MDL. *E.g.*, ECF 255 at 10. This is dispositive: "When litigation will be conducted in substantially the same manner regardless of [the] decision [to certify the appeal], the appeal cannot be said to materially advance the ultimate termination of the litigation." *Roshan v. Lawrence*, 2023 WL 8587266, at *1 (N.D. Cal. Dec. 8, 2023) (citation omitted); *see also Valadez*, 2019 WL 13146777, at *3 (same, where there will remain significant "discovery and then possibly further motion practice" regardless of the outcome of the interlocutory appeal).

The question on appeal would decide whether these proceedings should occur in one court or many; but those proceedings will happen in "substantially the same manner" either way. Absent an MDL, every single plaintiff would still have claims against Uber, and would still need to pursue them using the very discovery and motion practice currently happening in the MDL. As this Court has already explained: "there will still at least 220 distinct actions pending against Uber asserting the same legal theories against it. And the discovery to which Plaintiffs are entitled in the MDL is arguably no greater than the discovery to which they would be entitled in each of the individual actions taken together." ECF 255 at 10. There is no conceivable way in which splitting this MDL into hundreds of cases would "minimize the total burdens of litigation on parties and the judicial system." *Valadez*, 2019 WL 13146777 at *3. The Court's findings in this regard parallel those of the JPML, which found coordination would "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *In re Uber*, 2023 WL 6456588, at *1. Because the MDL's work will remain

1   relevant and useful no matter the outcome of an appeal, this case is distinguishable from all the

2   cases cited by Uber that certified an order for appeal.[10]

3   **B.   Appeal and a stay would disrupt coordination with the JCCP.**

4   Allowing an appeal would also hamper coordination between the MDL and the JCCP. In

5   "ruling on motions to certify interlocutory appeal, transferee courts have noted how an

6   interlocutory appeal could disrupt otherwise aligned schedules in parallel proceedings—thereby

7   creating a missed opportunity for more efficient management of the collective proceedings."

8   *Social Media*, 2024 WL 1205486, at *3 (citation omitted). While the Court has not required "strict

9   coordination of cases not before it," in considering Uber's motion for certification, the Court may

10  be "attentive to parallel litigation in state court not consolidated into this MDL and mindful of the

11  potential effect an early interlocutory appeal here may have on those proceedings." *Id.* at *3; *see*

12  *also id.* (denying request for interlocutory appeal upon finding "it most efficient to maintain this

13  MDL's current momentum and alignment with the JCCP").

14  Here, the JCCP has a fact discovery deadline of January 15, 2025, and the parties have

15  been working, as feasible, to coordinate discovery between the two jurisdictions with that

16  deadline in mind. This is beneficial to all: As Uber has asserted, "coordination in the two actions

17  will be more efficient and economical for Plaintiffs and Defendants alike." ECF 587 at 10; *see*

18  *also* ECF 607 at 4 ("Plaintiffs' claims in the JCCP are nearly identical to those in the MDL, …

19  [which] facilitate[s] coordination of [discovery in] the JCCP and MDL."). For example, Uber has

20  taken the position that its witnesses should be deposed only once. *See* ECF 588 at 20; *see also*

21  ECF 255 at 8 (explaining un-coordinated discovery "could prejudice the MDL plaintiffs, who

22  may find themselves bound by decisions about discovery made in the state court."). As a result,

23  the parties are trying to schedule nine priority custodian depositions in both actions in September.

24

---

25  [10] *See, e.g.*, *Irritated Residents*, 634 F. Supp. 2d at 1092-93 (certifying where a successful appeal
    would "obviate the need for extensive expert testimony… and … alleviate the need for additional
26  experts [and] investigation"); *Williams*, 657 F. Supp. 3d at 1255 (certifying where "discovery
    ha[d] not yet begun" and the order in question "would resolve liability generally"); *Reese v. BP*
27  *Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (explaining that the appeal "'may' take
    BPXA, as a defendant, and Reese's control claims against all remaining defendants out of the
28  case"); *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1064 (D. Hawaii
    2013) (certifying where appeal would determine court's subject matter jurisdiction).

1   ECF 588 at 20. Uber's appeal, especially with a stay, would disrupt these efforts, imposing

2   burdens on witnesses and losing opportunities to streamline and share costs among Plaintiffs.

3   **C.      Uber's arguments ignore the requirement that immediate appeal materially**
        **advance the litigation.**

4

5   Uber does not argue that immediate appeal of the Non-Consolidation Clause issue will

6   simplify the claims or defenses or streamline discovery. None of its arguments on this factor go to

7   the management of *this* case, and so all are mis-aimed.

8   *First*, Uber says that, absent "immediate appellate review," the question before the Court

9   "may never receive appropriate appellate review and guidance." Mot. at 9. But that has nothing to

10  do with the outcome of litigation in these cases. As the Ninth Circuit has held, "[a] district court

11  confronting a motion to certify pursuant to § 1292(b) should remain focused on the statutory

12  requirements, not policy considerations which may or may not be furthered by certification."

13  *Couch*, 611 F.3d at 635. Contrary to that clear direction, Uber says that 1292(b) review is

14  appropriate for issues important to the legal system generally. The two cases cited for that

15  proposition do not support it. In *United States v. Adam Brothers Farming, Inc.*, 369 F. Supp. 2d

16  1180 (C.D. Cal. 2004), the court denied interlocutory appeal based on a pending trial date in that

17  case. *Id.* at 1187. And Uber selectively and deceptively quotes *Hawaii ex rel. Louie*, which, citing

18  another case, said that it would consider the effect of appeal on "other cases *pending before the*

19  *court*." 921 F. Supp. 2d at 1068 (quoting *Leite v. Crane Co.*, 2012 WL 1982535, at *6-7 (D. Haw.

20  May 31, 2012)) (emphasis added). The quoted court was referring to "numerous [other] asbestos

21  cases that have been and will be removed to this court," *Leite*, 2012 WL 1982535, at *4, not the

22  legal system generally.

23  *Second*, Uber says that "one function of the MDL process" will by furthered by "cases …

24  proceed[ing] in the appropriate jurisdictions," because that will result in "adjudications … more

25  likely to promote the global resolution of all claims." Mot. at 9-10. In other words, "the MDL

26  process" will be best advanced by not having an "MDL process." This argument manages to

27  contradict all at once the text of § 1407, the JPML's orders in this case, and everything this Court

28  has said about MDLs in general and this one in particular. In support, Uber cites only a 1995 law

1   review article that says nothing at all about whether splintering an MDL before common

2   discovery is complete and legal issues resolved is beneficial. Peter H. Schuck, *Mass Torts: An*

3   *Institutional Evolutionist Perspective*, 80 Cornell L. Rev. 941, 959 (1995). In fact, the portion of

4   that article discussing how trial outcomes can generate information about claim values was based

5   on the "maturity concept" introduced "into the mass tort lexicon" by Professor Francis

6   McGovern. *Id.* at 949 & n.33 (citing Francis E. McGovern, *Resolving Mature Mass Tort*

7   *Litigation*, 69 B.U.L. Rev. 659 (1989)). But a premise of Professor McGovern's framework was

8   "consolidating all cases of a single mature mass tort into one forum" in order to "resolv[e] all

9   common issues in that forum," for example through "multi-district litigation." *McGovern*,

10  *Resolving*, *supra* at 690; *see also* D. Theodore Rave & Francis E. McGovern, *A Hub-and-Spoke*

11  *Model of Multidistrict Litigation*, 84 Law & Contemp. Probs. 21, 22 (2021) ("MDL consolidation

12  has been an enormously successful strategy for efficiently managing and resolving many mass

13  tort cases.").

14        *Third*, Uber says that, absent immediate appeal, if the "Court's decision" is "overturned at

15  a later time," these cases will "undergo" unspecified "additional procedures in the appropriate

16  jurisdictions." Mot. at 10. Of course, this posited harm is exactly what Uber says its TOU

17  require—duplicate proceedings in dozens or hundreds of courts across the county. In any event,

18  the Court has already explained that in "the event of a decentralization, there would certainly be

19  no need to duplicate efforts by having Uber reproduce the same information in individual cases—

20  the parties could take what was produced here and use it in the individual litigation where

21  appropriate." ECF 255 at 11. And the various district courts saddled with such cases would be

22  bound by Rule 1 to manage those cases in a fair and efficient manner (for example, with respect

23  to the many cases pending in this district, application of N.D. Cal. L.R. 3-12). Uber's vague

24  reference to unknown "procedures" does not support a finding that immediate appeal would

25  materially advance this litigation.

26                              **<u>CONCLUSION</u>**

27        For these reasons, Plaintiffs request that Uber's motion to certify the Court's TOU order

28  for immediate appeal be denied. Should the Court certify its order for appeal, Plaintiffs request

1    that Uber's request for a stay be denied.

2

3    Dated: June 21, 2024                          Respectfully submitted,

4

5                                                  By: */s/ Sarah R. London*
                                                        Sarah R. London (SBN 267083)

6                                                  **LIEFF CABRASER HEIMANN &**
7                                                  **BERNSTEIN, LLP**
                                                   275 Battery Street, 29th Floor
8                                                  San Francisco, CA 94111-3339
                                                   Telephone: (415) 956-1000
9                                                  Facsimile: (415) 956-1008
                                                   slondon@lchb.com

10

11                                                 By: */s/ Rachel B. Abrams*
                                                        Rachel B. Abrams (SBN 209316)
12
                                                   **PEIFFER WOLF CARR KANE**
13                                                 **CONWAY & WISE, LLP**
                                                   555 Montgomery Street, Suite 820
14                                                 San Francisco, CA 94111
                                                   Telephone: (415) 426-5641
15                                                 Facsimile: (415) 840-9435
                                                   rabrams@peifferwolf.com
16

17                                                 By: */s/ Roopal P. Luhana*
                                                        Roopal P. Luhana
18
                                                   **CHAFFIN LUHANA LLP**
19                                                 600 Third Avenue, 12th Floor
                                                   New York, NY 10016
20                                                 Telephone: (888) 480-1123
                                                   Facsimile: (888) 499-1123
21                                                 luhana@chaffinluhana.com

22                                                 *Co-Lead Counsel*

23

24

25

26

27

28