# EXHIBIT B

```
 1                     REPORTER'S RECORD
                      VOLUME 1 OF 1 VOLUME
 2              TRIAL COURT CAUSE NO. 2020-67824

 3


 4
     JANE DOE,                        )IN THE DISTRICT COURT OF
 5                                    )
                                      )
 6           Plaintiff                )
                                      )
 7   VS                               )HARRIS COUNTY
                                      )
 8                                    )
                                      )
 9                                    )
     UBER TECHNOLOGIES, INC.,         )
10                                    )
                                      )
11           Defendant                )THE 125TH JUDICIAL DISTRICT

12

13

14           ------------------------------------------

15

16                     REPORTER'S RECORD

17

18           ------------------------------------------

19

20

21           On the 21st day of August, 2023, the following

22   proceedings came on to be heard in the above-entitled and

23   numbered cause before the Honorable Kyle Carter, Judge

24   presiding, held in Houston, Harris County, Texas:

25                Proceedings reported by machine shorthand.
```

1                    A P P E A R A N C E S

2

3    Mr. Ross W. Evans
     SBOT NO. 24064771
4    Mr. Jeffrey Wigington
     SBOT NO. 00785246
5    WIGINGTON RUMLEY DUNN & BLAIR, LLP
     601 Howard Street
6    San Antonio, Texas 78212
     Phone: 210.487.7500
7    COUNSEL FOR PLAINTIFF

8

9    Mr. Robert H. Ford
     SBOT NO. 24074219
10   Ms. Whitney Wester
     SBOT NO. 24080420
11   Ms. Melissa B. Carroll
     BRADLEY ARANT BOULT CUMMINGS, LLP
12   600 Travis Street
     Suite 4800
13   Houston, Texas
     77002
14   Phone: 713.576.0300
     COUNSEL FOR DEFENDANT UBER TECHNOLOGIES
15

16

17

18

19

20

21

22

23

24

25

I N D E X

AUGUST 21, 2023                                    <u>PAGE</u>

Hearing commenced...........................4

Hearing concluded...........................30

Court reporter's certification..............31


<u>EXHIBITS</u>

No exhibits offered or admitted

1          THE COURT:  At this time the Court calls Cause

2   No. 2020-67824, Jane Doe versus Uber Technologies, Inc.

3   Counsel, please make your appearances for the record.

4          MR. EVANS:  Ross Evans on behalf of plaintiff,

5   Jane Doe.

6          MS. WESTER:  Whitney Wester and Robert Ford on

7   behalf of Uber Technologies.

8          THE COURT:  Thank you very much.  The parties

9   have previously stated that they didn't need a record.  We had

10   a brief off the record conversation about what we're going to

11   talk about today.  We're here today because the parties had

12   asked for a status conference so that the court could rule on

13   some documents that were the subject for the parties privilege

14   log contemporaneous or actually, recently the Texas Supreme

15   Court has issued a ruling on the mandamus that was out of this

16   court that dealt with some other issues, discoverability of

17   certain documents and objections that were made as to those

18   particular documents.  And the Supreme Court has made a ruling,

19   they denied the parties mandamus request and so what I want to

20   do is follow-up on those documents bearing that ruling would

21   have on the issues that were presented today.  The discovery

22   will be born out by the file and the court's record in this

23   case has been something that we've been working on for quite

24   some time in this matter.  I believe one of the last hearings

25   that we had, if not, the last hearing that we had, we had

discussed issues that the parties were trying to work through.
We took up the matter of certain documents that the parties
felt would be, expressly part of the mandamus, would be
subsumed by the issues that were being raised at the Texas
Supreme Court and therefore documents were separated and
withheld on the basis of the pending ruling before the Supreme
Court.   Now, that the Court is ruled, I will follow up and ask
the parties what the status of those documents were.   The
parties represented to me that all documents that were the
subject of the mandamus have been provided and that all the
documents that were withheld subsequently, based on the issues
raised in the mandamus, have been provided as well and that the
parties have undertaken an effort to streamline today's
hearing.   They are only looking for the court to rule on two
categories of documents, those that are protected by
attorney-client privilege, and they pointed to some extrinsic
evidence that they want to give me, i.e. affidavits from the
parties involved in those documents, the creation of those
documents.   And then there's documents that the parties claim
are outside of the geographic scope that's involved in this
case.
Just for the record, as I understand it, outside of the
geographic scope, this case involves a claim by a Jane Doe
against Uber Technologies for damages sustained as a result of
an alleged sexual assault in the State of Texas and we are

looking at and the parties are trying to discover information

about criteria used by Uber to conduct background checks,

information that Uber has to determine whether or not somebody

should continue to be a driver, things of that nature.  The

defendants objected saying that while what happened in Texas

may be relevant, and I say may because I don't think they want

to concede that entirely, but for purposes of summarizing the

argument, while what happened in Texas may be the subject of

the inquiry here, what happens in other countries' around the

world is different and it shouldn't be part of the discovery in

this case.  And so, what one of the categories is the category

of documents that are related to policies and procedures that

Uber has that it's outside of the geographic scope is the

argument of the defendant's i.e. outside of the relevant area

of inquiry, specifically it states other countries' policies

and procedures, is that accurate.

            MS. WESTER:  It is, Your Honor.  And I would

just add one thing, that today's document that we're talking

about outside of the geographic scope.  They're actually

documents that are discussing a specific prior incident so a

specific complaint made by an Uber rider or driver but those

complaints and their resolution are either in a state other

than Texas or any country other than the United States.

            THE COURT:  Thank you for that clarification.  I

wanted to go on the record and counsel wanted to go on the

1   report so we are on the same page with respect to any rulings

2   that the court may make today.  I'm looking at these two

3   categories of documents.  Counsel, anything you want to add?

4                   MR. EVANS:  Yes, Judge Carter.  With respect

5   to, we'll call them the OSI's, other similar instances, outside

6   of Texas, they are embedded with safety presentation.  And so

7   what it looks like is, we'll go through a safety presentation

8   or some risk analysis presentation, and then the whole page is

9   blanked out or redacted and I can't tell what's in it.  Counsel

10  has represented to me that it might involve other similar

11  incidents of sexual assault in a different state or even in

12  England but I want to get inside the mind of the Uber to

13  understand what they're saying about these incidents and why.

14  That's why I think it's important.

15                  THE COURT:  Well, here's my take.  If I

16  understand what you're saying, and I have not looked at it yet

17  but I want to kind of go out there and tell you what my

18  thoughts are.  If it's another incident but it's couched in

19  terms of a presentation that's been done to train other

20  employees or to train people at Uber, I'm inclined to say

21  that's something that I'm going to look at and I'll look at

22  what the contents are and make a determination.  It's something

23  they're using to train their employers.  I think it's part of

24  the presentation material to train employees and likely

25  discoverable and what we're looking at, again, there's a

1    difference between discoverability and admissibility.  I want

2    to deal with what's discoverable right now and I recognize that

3    one of the objections is the information is not likely to lead

4    to admissible evidence but at the same time, the law recognizes

5    that there is a distinction between that which is discoverable

6    and that which is admissible.  So to the extent that you're

7    evidentiary objection might be 403 that it's irrelevant, that

8    it's prejudicial, things like that, we'll take that up at the

9    time of trial and we'll look at what we're going to show the

10   finder of fact.  Okay, so anything else?

11                  MR. EVANS:  Yes, Your Honor.  On the

12   attorney-client privilege issue, it might be best to go through

13   each document.  We only have ten total documents to look at.

14   We narrowed it from 50 to 10.

15                  THE COURT:  Okay.

16                  MR. EVANS:  But I'll tell you, some of them I

17   have very limited insight to these but based on their privilege

18   log and the individuals identified on that certain e-mail

19   chain, none of them are lawyers and so that would be my

20   question as to how you can claim privilege over that if there's

21   not a single lawyer on the document.  Where there might be a

22   lawyer on one of them, I'm not sure if there are, just having a

23   lawyer on a e-mail chain doesn't necessarily make it

24   attorney-client privilege.  Beyond that, it's really hard for

25   me to comment because I just simply can't see the contents of

1  any of the e-mails.  The other thing I'll say, too, is within

2  certain presentations, like, training presentation, if they

3  have a schizophrenic redaction-type approach where they will be

4  charged in a presentation that's a AC privilege in red bold at

5  the top of the chart or an exemplar, and then for whatever

6  reason that's not redacted, but the next page you'll have

7  something in there which essentially that's the same stamp but

8  it's redacted so I can't figure out why they're taking that

9  schizophrenic approach.  On one hand, you can call it a waiver.

10 I'm not even going to wade into those waters.  I think it's

11 better just to have the Court look at it.  You'll see some of

12 these presentations where when we get into them, I don't

13 understand how they necessarily claim privilege.  Let's assume

14 that it was attorney-client privilege at some point where, you

15 know, they are seeking legal advice, then you take that

16 information and you put it into a chart and you disseminated to

17 other employees for training purposes, where does it end?  And

18 so, I guess, we need to be able to look at the information.  If

19 the court does, maybe we can have a conversation about it then,

20 but to me, it just seems like there's this overuse of this AC

21 privilege log.

22             THE COURT:  Why don't we just wade into it?  Do

23 y'all have the ten documents that you would like me to look at

24 the attorney-client?

25             MS. WESTER:  I do, Your Honor.  May I approach?

1          THE COURT:  Please.

2          (Attorney approaches bench)

3          MS. WESTER:  I have two notebooks for Your

4    Honor, one, the un-redacted versions and one notebook is the

5    redacted documents and then Mr. Evans has a copy of the

6    redacted notebook so he can follow along as well.  And all the

7    applicable declarations that support the attorney-client

8    privilege are also in that notebook as well, Your Honor.

9          THE COURT:  Does your notebook have this Exhibit

10   A?

11         MR. FORD:  It does not.

12         THE COURT:  Counsel, this is interesting because

13   I have a affidavit that's executed, it looks like by a

14   DocuSign.  It's not sworn to before a notary and specifically

15   it's executed it's represented in blank County of State of

16   blank.  But it was executed in Cabos San Lucas County, State of

17   Mexico.  That's something I haven't seen before.

18          MR. FORD:  We try to keep things spicy for

19   Your Honor, no pun intended.  Apologies for any un-orthodox

20   presentation, Your Honor.  As you know, it can be in the form

21   of a declaration under the CPRC so we had to avail ourselves of

22   that and under the Uniform Electronic Transaction Act in Texas,

23   DocuSign actually is permissible.  But as you can see, the

24   declarant, they were indisposed at the time we needed this

25   declaration.

1          THE COURT:  Thank you very much.

2          MR. FORD:  Yes, Your Honor.

3          MR. EVANS:  Judge Carter, may I approach and

4     show you a chart that might help you?

5          THE COURT:  Yes, sir.

6          (Attorney approaches bench)

7          MR. EVANS:  This is a chart.  This is where we

8     started.  It lists everything that was originally before the

9     court.  The items I have circled are part of the ten documents

10    that are at issue.

11         THE COURT:  Okay.

12         MS. WESTER:  Do you have another copy of that

13    chart because I don't --

14         MR. EVANS:  I think I've got a copy.

15         MS. WESTER:  But is it original exhibit A?

16         MR. EVANS:  It is.

17         MR. FORD:  Your Honor, if it pleases the Court.

18    There are about three or four documents that we appreciate the

19    legibility could be better.  There was a version that we

20    received from the client.  We literally this morning were able

21    to get them to send us what seems to be a more legible copy but

22    we literally received it, despite her request, this morning

23    while we were on our way over.  I'm happy to tender my Ipad to

24    the Court if it would aid the Court at all.

25         THE COURT:  Thank you very much.  I may have

1   some follow-up on it.  I don't have my readers with me or my

2   magnified glass but I appreciate what you're saying.  If I need

3   to follow-up on it, I will.

4            MS. WESTER:  And Judge, those four documents on

5   the front I did include a blown up version behind the first

6   page.  But again, the legibility is not great in quality.

7            THE COURT:  I'm happy to know it's not me.

8   Thank you.  Okay.  I've gone through the documents that are

9   included in the binders that you handed to me.  I've got a few

10  questions based on the information that's been provided.  I've

11  got three declarations and given this declaration, the Baker

12  declaration and the Freigoval declaration, F-R-E-I-G-O-V-A-L .

13  All of those declarations, none of them appear to be from a

14  lawyer.  So none of the three parties that drafted or signed

15  theses declarations are actually attorneys, correct?

16           MS. WESTER:  That's correct, Judge.

17           THE COURT:  Okay.  And so as I go through this

18  information, start with the first four exhibits, these are the

19  slides that we talked about earlier that are hard to see.

20  These are presumably a part of a presentation that's what's

21  referenced in the Freigoval declaration.  I believe that -- let

22  me make sure we're talking about the right Bates label

23  documents.  The first four are based on geographic scope,

24  correct?

25           MS. WESTER:  Correct

1          THE COURT:  And not a attorney-client

2    privilege.

3          MS. WESTER:  Correct

4          THE COURT:  Okay.  So the first four, one, two,

5    three and four, I'm going to overrule the objection and order

6    that they be produced.  Now we're taking a look at the

7    attorney-client issue and I've got Freigoval.

8          MR. FORD:  Your guess is as good as mine.

9          THE COURT:  And so I've got two documents behind

10   that gentlemen's declaration.  I've got the Gibbens declaration

11   with two documents behind it and the Baker declaration with

12   another two tabs behind it.  And so this is interesting, right,

13   because I've got two slides and these have been completely

14   withheld.  These are not redacted and provided.  These have

15   been completely withheld pursuant to attorney-client privilege.

16   And counsel, what they're arguing to me is that these slides,

17   based on the declaration of Mr. Friegoval, these slides were

18   created to facilitate the rendition of professional legal

19   service, mainly to obtain legal advice from Uber's inhouse

20   counsel on the proposed safety policy.  The safety risk slide

21   contains advice and proposals from inhouse legal counsel to

22   other and Uber employees.  That, I don't know of as I sit here

23   today because all I've got are the slides.  And so we got a

24   witness that's testifying about what the contents of the slide

25   are and the purposes of this slide.  I don't know.  I don't

1   have any evidence other than this statement by the client that

2   what these slides were to be used for.  I do see

3   attorney-client privilege confidential legal advice to counsel

4   on the actual document but, I guess, is that something that

5   y'all added after the fact?

6                    MS. WESTER:  It is not, Your Honor.  That slide

7   was actually created with those stamps on it.  And if I can

8   provide a little bit of additional context, what I'm gleaning

9   from the face of the document itself is discussing a proposed

10  change and so that would be where Uber would go to their legal

11  counsel and say, please advice us, everybody on board with that

12  change, what is your advise about that change, and that's

13  what's reflected at least in this slide that we're looking at.

14                   THE COURT:  And that's my question, right, is

15  because what you just said is, suppose of what they do.  Some

16  people may not do it that way.  They may just have people at

17  the office that work on a policy and procedure and make a

18  determination and so I'm looking for where the communication to

19  the attorney is, where are the request for advice is, where the

20  attorney's advice has been added to or included in this

21  document?  Something to help me get to the answer that you're

22  arguing to the Court that is, the purpose of this was to come

23  up with a new policy and procedure and you're going to run it

24  by legal.  I don't see where we've done that.  I just see the

25  slide itself.

1      MS. WESTER:  And Judge, I think our argument

2  is based on from the face of the document itself, under the

3  portion that says legal, and so I don't believe there's

4  additional contact that would aid the Court in that

5  determination.  We're just going on the face of the document

6  and the declaration, Your Honor.

7      MR. EVANS:  Are we talking about the dates

8  ending in 480?

9      THE COURT:  6724.

10      MR. FORD:  The only other supplementation I

11  would offer, Your Honor, is of course, in Texas under Rule 503d

12  D as in Delta, the privilege extends to communications,

13  confidential communications were made for the purpose of

14  facilitating rendition of professional legal services when

15  those communications are and, I quote, between the clients

16  representatives or between the client and the client

17  representative and so that's often a nuance of the privileges.

18  It's tough to tease out admittedly but I would offer, as I

19  believe Ms. Wester is offering, that even though it is not

20  apparent from this document that a lawyer is copied on it, for

21  instance, the privilege under Texas law is broad enough and

22  often does encompass communications among the clients

23  representatives to the extent those communications are being

24  made to facilitate the rendition of professional legal

25  services.

1           THE COURT:  Thank you very much.

2           MR. FORD:  Yes, Your Honor.

3           MR. EVANS:  Judge, if I could offer something on

4    this 6724.  It appears to be part of a presentation called

5    Stand for Safety Executive Committee.  There was a presentation

6    at some executive level that's all I can glean from that.  The

7    presentation looks like it's an internal presentation updating

8    everybody on safety efforts, not necessarily like it's an

9    ongoing conversation with attorneys with Uber.  Their rendition

10   of legal services.

11          THE COURT:  Well, that's my question, right.

12   And so you're arguing it from the standpoint of not being able

13   to really see the documents but to the extent that you can see

14   a title or a context with other documents that have been

15   provided.  I need to know what the law is and I've been given a

16   generality, you know, it's something that people working at a

17   business are doing for the purpose of ultimately receiving

18   legal advice, then the respondents, what the defendants are

19   saying is privilege.  I want to come down on what the law says

20   specifically and go from there.  To the extent that I've got

21   kind of work in progress documents and there's ultimately some

22   final, this is what our policy and procedure is regarding X, Y

23   and Z.  I think that would be sufficient.  Do y'all have that?

24              MR. EVANS:  We have a number of policies that

25   have been produced that appear to reflect what their

1  deactivation criteria were in different years including 2018,

2  the year of our incident.

3              MS. WESTER:  And, Your Honor, looking at this

4  slide 6724, I don't know if this particular program or policy

5  was ever actually put into place or has a final version.  I can

6  tell from this slide that it's in the process and that's why

7  they're seeking legal advice.  I don't know that its the final

8  version of that program.

9              THE COURT:  I'm looking at some of the others

10  I'm more focused on at the moment.  I'm just going to rule that

11  I think that 6724, I'll sustain the privilege objection.  8719,

12  I'm overruling the privilege objection 36.

13              MS. WESTER:  And Your Honor, I can provide

14  additional context on the one ending in 420, if you'd like, as

15  well as 421, if that would be helpful.

16              THE COURT:  Go ahead.

17              MS. WESTER:  So Your Honor, both of these are

18  e-mail chains and to Mr. Evans' point, the e-mail at the very

19  top, the two in the front are not from legal counsel Uber.  But

20  if you look down and if you look at Bates stamp Davis Uber

21  underscore PR log 000420, the very bottom of that first page,

22  you see Maureen, she is an attorney with Uber and she is the

23  one that ends up stamping this conversation as privileged.  And

24  also, if you read the first sentence of her e-mail under that,

25  it's clear that she is providing legal advice and asking them

1   to keep her updated for the purposes of providing legal advice.

2   If you look to the next document which is Bates stamped Davis

3   Uber underscore PR log 00421, the top e-mail on that chain is

4   different but if you look down at the bottom, you see that same

5   e-mail from the same person and then right after that e-mail,

6   is consistent with the document ending in 420.

7               THE COURT:  420 and 421, I'm going to sustain

8   the privilege claim.

9               MR. EVANS:  If I could, I want to clear the

10  air on this.  I was only going off the individual identified on

11  the e-mail chain, on the privilege log that was produced, this

12  is not this lawyer that did not appear on the privilege log.  I

13  did not want to misrepresent to the Court.  From my

14  perspective, it was just Roger Kaiser and Catherine Gibbons.

15  This is the first time I learned there was a lawyer on that

16  chain.

17              THE COURT:  I appreciate that.  And frankly,

18  this happens frequently in terms of what I get asked to review

19  for privilege and it being documents from a larger business

20  that have a number of people on the chain.  I usually will see

21  the to/from, the universe of people that are CC'd on it like we

22  get to in some of these other documents, but in these you have

23  to go back down further as to who was on there.  But I'm going

24  to sustain privilege because I think that it's warranted based

25  on what I see and counsel taking up no issue with what you

1    said.   Now, we're to the remaining 262 and 480.

2              MS. WESTER:   And Your Honor, I believe 262 is

3    going to be another one of those situations where Mr. Evans is

4    unaware that there was an attorney on the chain.  If you could

5    look at the fourth page of document ending in 262.  Next from

6    the bottom, it talks about looping in someone named Scott.

7    Scott is an attorney with Uber.  If you look at the sentence

8    before they loop in Scott, they discuss how the chain is

9    intended to give him information so that they can have a

10   discussion in person.  You'll also see where they identify

11   Scott as counsel in the Safety Department.

12             THE COURT:   Thank you very much.  I want to ask

13   you a question about the people that are included on this

14   e-mail.  One of the questions that we've had during discovery

15   has been, who are the right people to talk to about what the

16   policy and procedures are and what's your contention?  One,

17   have you resolved that issue?  Do you know based on the

18   information you've provided?  I think that what I'm asking is,

19   if I agree that it's privileged based on the attorney being

20   included on this, you've got a number of other individuals that

21   are working over at Uber that are a part of trying to come up

22   with and formulate a policy and procedure related to the

23   subject matter that we're all here about today, not

24   withstanding the privilege aspect of it.  Is it your contention

25   that the individuals identified in this e-mail chain are

1   subject to privilege as well or have you provided that

2   information to counsel?

3                   MS. WESTER:  Judge, I do believe that in this

4   chain e-mail they are subject to privilege because they would

5   be representative of Uber and they are providing information

6   for Scott to discuss in person later on and get legal advice

7   from.  As far as the specific policy in this e-mail, give me

8   just one moment, Your Honor, if you don't mind.  Your Honor, I

9   don't believe this e-mail is discussing its policy that's

10  relevant to this case.  I believe it's discussing a drug and

11  alcohol policy.  Okay.

12                  THE COURT:  Counsel, I've cut you off.  I don't

13  want you to talk about what is contained in these documents.

14                  MS. WESTER:  Thank you, Your Honor.

15                  THE COURT:  Here's my take on it.  I think

16  that the content, the substance of this is privileged.  I think

17  that all of the people that are included in the discussion are

18  witnesses and have knowledge of relevant facts and their

19  identity should be disclosed in response to request for

20  disclosures with the statement in earnest about what their role

21  is and so if counsel wants to talk to them, counsel can go and

22  talk to them.  Now, here we've got, again, it looks like

23  something that the Court is going to sustain privilege on.  I

24  do believe that the identity of the parties that are involved

25  in the process should be provide in response to disclosures.

1        MS. WESTER:  And Your Honor, if I could just

2   kind of go down that road a little bit further.  I think it's

3   difficult for us to understand what policies would be

4   considered relevant to this case when you're talking about a

5   technology company that has obviously a different policy for

6   hundreds and if not thousands of issues.  And so if it's not a

7   policy directly related to sexual assault, sexual misconduct,

8   or any other facts that we agree made the basis of this

9   lawsuit, to what extent do we need to disclose persons that

10  make policies not involved in the incident in this case?

11       THE COURT:  I am going to order you to disclose

12  everybody as well.  I don't want to tell you now, here's a

13  haystack and then that is going to be our one person that's on

14  point with the issues involved in this case.  So, I guess, what

15  I'm suggesting is, and I think this is a good place to start,

16  right.  If they're involved in the discussion of making

17  policies and procedures that relate to conduct or in this

18  instance determining whether or not a driver should be allowed

19  to continue on as a driver, I would be hopeful that you

20  wouldn't have a whole different cast of characters depending on

21  which different allegation is made.  I've got some discussion

22  here about particular policy and some individuals that are part

23  of that discussion.  I would presume that those same

24  individuals would be part of the discussion involving other

25  conduct.  But that's something that counsel can, once

1   identified, can follow-up on either through a conference call

2   with you or y'all can agree that an individual didn't have

3   anything to do with a certain something that's of issue in this

4   case.  And they can decide whether or not they want to go

5   through and conduct any additional discovery.  But I want to

6   make sure that what we're not doing is saying, now that they're

7   privileged, all of the people that would have knowledge about,

8   in this instance, the standards that Uber uses to deal with the

9   sexual assault complaint and what they do following that

10  complaint, that those decision makers need to be identified so

11  that if counsel wants to go and have a follow-up discussion

12  they can.  That's my thought.  I mean, I would think that they

13  would be relevant, not withstanding the fact what the Court's

14  ruling is on the actual document itself.

15          MS. WESTER:  And Your Honor, I completely

16  understand the Court's position on that.  I will say from

17  Uber's position, opposing counsel has had a chance to depose

18  the Head of Global Women's Safety to discuss who are the people

19  that make these policies that make these decisions.  That

20  information has been made available elsewhere.  It's just, I

21  can't guarantee that the people in this specific e-mail were

22  disclosed as people that made decisions related to sexual

23  assault and not sure that there is that crossover that we're

24  all kind of presuming there would be.

25          MR. FORD:  And I would just supplement to

1  everything that Ms. Wester has said.  Our understanding, and I

2  welcome counsel if you have a contrary view, I do think this is

3  important that we get this straight.  Our understanding is that

4  you have now had, subject to your re-deposition of Mr. Kyser in

5  a matter of days, that you have had ample opportunity to depose

6  corporate reps, to depose a number of people in our safety

7  apparatus.  And I'm just being honest because I don't think

8  this was initially an issue for plaintiffs and we had several

9  hearings about it and you all have deposed and now are set to

10 re-depose a corporate rep among other reps in high places,

11 officials, regarding what the policies and protocols are.  I

12 just want to make sure because I'm concerned that this could

13 tilt away where, you know, obviously, we are going to whatever

14 you tell us to do, Your Honor, but if we supplement our

15 disclosures, are we talking about the scenario where we're

16 re-opening discovery and deposing a boatload of witnesses?

17 That's my only concern, Your Honor, particularly given the

18 preferential trial setting on November 6 and obviously all the

19 discovery that's transpired today.  I know it seems like

20 putting you on the spot and I'm honestly not trying to.

21            MR. EVANS:  I think disclosures with

22 specificity as to what the roles would do, will be helpful but

23 here's my frustration.  Way back in May of 2020, Judge Carter

24 -- this is before you guys were involved -- he ordered Uber to

25 identify people in charge of safety policies and procedures and

1   Uber said, it's only Roger Kyser.  That's the only person they

2   identified.  And then we had to go and get on LinkedIn and

3   literally find names of people who look like good candidates to

4   depose because Uber wasn't becoming forthcoming about it.  A

5   lot of these individuals we stumbled upon was because we got an

6   order from Judge Carter saying, yes, it looks like in all

7   probability they had something to do with this.  And so through

8   that process there was a lot of hit and miss when we deposed

9   people to the extent that Uber's liability expert had in her

10   handwritten note that we deposed a bunch of nobodies.  And it

11   was frustrating because you would hope that Uber at some point

12   would step in and say, hey, we're going to stop you from

13   spending all this time and effort.  And actually by who,

14   meaning?  So that's for me to say when we get these names

15   disclosed to us, we're not interested in repeating that

16   process.  But if there's something that comes up and I tell

17   you, Rob, it sounds like there's someone we need to depose,

18   we'll let you know.  We don't intend to drag this out.  If

19   someone comes up and they've got information we might need to

20   talk to them.

21                  MR. FORD:  Okay.  And I feel and I appreciate

22   that.  I also appreciate you clarifying that we were not

23   involved during this time period.  I will say based on the

24   correspondences that I have seen dating back to that time and

25   correspondences that you and I have exchanged, I do know there

 1   was an attempt on our part, and I say this for your benefit and

 2   for the Court's benefit as well, there was an attempt on Uber's

 3   part to invite y'all on number of occasions to start with a

 4   corporate rep so that you could identify which persons in our

 5   safety apparatus were actually responsible for crafting and

 6   managing policies related to sexual assaults like the one made

 7   the basis of this case.  That opportunity was never really

 8   seized until much, much later down the road after Uber had to

 9   try to find someone.  So I hear you.  And I'm sorry, Your

10   Honor, I don't want to waste Your Honor's time.  I started

11   getting a little concerned when I saw how this might play out

12   given the schedule that we have.  But I hear you, Your Honor.

13   We will absolutely supplement our disclosures as ordered by the

14   Court and we will do that with alacrity.  That's all we can say

15   to that.

16               THE COURT:  Thank you.

17               MR. FORD:  Yes, Your Honor.  And again, I

18   apologize for what ended up being a side bar.

19               THE COURT:  So at this time, I find 262,

20   document ending in 262, I am going to sustain privilege.  Now,

21   480.

22               MS. WESTER:  Your Honor, my understanding that

23   480 is a PowerPoint that the main topic of which is an overview

24   of policies and procedure conducted by inhouse counsel with

25   Uber and so the information contained in these slides would

1  have been the results of legal investigation and legal overview

2  and would be a communication with the client or client

3  represented for facilitating that legal service in that they

4  are making suggestions or giving the client their findings

5  based on the review they conducted.

6                 THE COURT:  I'll sustain privileges as to 480.

7  Now, 480.  There's a couple of different instances where I've

8  got what's represented to be presentations, right, that are

9  being done either by counsel or to counsel or to the Board of

10  Directors to enable the parties to come up with something

11  that's obviously in conjunction with counsel.  If you've got

12  some exception to that let me know but as we sit here today

13  I've got their affidavits saying what the purpose of the

14  document was, and then the document itself.  And so the

15  evidence that I have suggest to me that the document would be

16  subject to privilege at this time.  If there's something you

17  want to bring to my attention feel free to do so and I'll take

18  a look at it.  I think that's everything.

19                 MR. FORD:  Just one last housekeeping matter,

20  Your Honor.  We have entered into a Rule 11 to pass what would

21  have been this Friday's hearing on Uber's traditional motion

22  for summary judgment and Uber's motion for leave to designate

23  an expert.  We did file a note per the court staff's direction

24  requesting an off day docket at the court's indulgence.  An off

25  docket day, forgive me, Your Honor, not enough coffee this

1   morning.  At the Court's indulgence and subject to opposing

2   counsel's availability to have those motions heard.  We would

3   very much like to have that done in September, if it pleases

4   the Court, if the Court has availability to accommodate us.  We

5   know we are asking a lot and the Court has been so flexible.

6   We are here on an off docket day and that's not lost on us.

7               THE COURT:  I'm happy to accommodate that

8   request.  Let me take a look at what I have available.  I have

9   a trial that's assigned out there right now and they're doing

10  some last minute work before we start pretrial tomorrow.  As I

11  sit here right now I don't know when we're calling the jury on

12  that matter.  We have some things to discuss at pretrial.  That

13  case is represented to be four to seven days, the other side is

14  four to seven weeks.  We're somewhere in the middle.  So we've

15  got some work to do that I'm concerned about interfering.

16  We've got a dead week that week of Labor Day as well.  You've

17  already got your response on summary judgment on file?

18              MR. EVANS:  No, Your Honor.

19              THE COURT:  Do it now.  Get your response on

20  file.  Go ahead and get with the clerks.  Set a date.

21              THE COURT:  Do you want to take up the expert

22  issue?

23              MR. FORD:  Yes, just to consolidate our steps,

24  Your Honor, if it pleases the Court.

25              THE COURT:  That's fine.

1          MR. FORD:  And again, we do appreciate it, Your

2    Honor.  We know you and your staff are very busy and we thank

3    you for accommodating us.

4          THE COURT:  I'm happy to do so.  I want to get

5    through this case and get everybody ready.  All right.  So I've

6    got a summary judgment out there.  We've gotten through this

7    discovery for today.  We've got a request that we allow you to

8    late designate an expert.  If I do that, they're going to get a

9    deposition.

10          MR. FORD:  Absolutely, yes.

11          THE COURT:  That's my thought.  Frankly, we're

12    still 90 days out.

13          MR. EVANS:  And we have not filed a response to

14    that yet because it hasn't been set.  If they late designate

15    expert, we'll call one of our rebuttal experts on the same

16    topic.

17          THE COURT:  Sounds good to me.

18          MR. FORD:  Obviously we have no objection to

19    that.

20          THE COURT:  There we go.  Listen, we're far

21    enough out that I'm kind of the mindset to say, okay, I'll

22    allow a late designation or substitution subject to of course

23    there being able to depose that individual and if they want to

24    do a rebuttal expert in response to yours, that's fair game,

25    too.  That's where I am on that.  But, we still have a summary

1  judgment.  Have y'all gone and talk to a mediator yet?

2                    THE COURT:  Okay.  Are those discussions

3  impasse or there's still some discussion?

4                    MR. FORD:  An impasse was declared, Your

5  Honor, but I think there's still talking to be done here.  Take

6  that for what it's worth.

7                    MR. EVANS:  The case is taking an interesting

8  turn where for the first time in my career I've someone make an

9  offer of settlement under that rule that was invoked by Uber

10 and we made our own counter under that same rule.  So I think

11 the parties probably want to try to get it done but --

12                   THE COURT:  I recognize that certain things may

13 need to happen in terms of everyone making sure that they

14 understand where they are going to be at trial before the

15 parties can appreciate, fully appreciate what's involved in the

16 mediation process.  I'm happy to do any work that y'all need me

17 to do in order to try to facility everybody's understanding of

18 what the presentation at trial is going to look like so that

19 they can advise their client and sit down and see what they

20 want to do okay.  I will figure a summary judgment out there

21 that might be something y'all would like to get heard.  The

22 sooner y'all can do that probably the better.  Just reach out

23 to the Court's staff.  They may not be able to give you

24 tomorrow.  They will tell me a little bit about what our next

25 couple of weeks will be.

1            MR. FORD:  Maybe it's best that I probably check

2   in tomorrow or the day after tomorrow.

3            THE COURT:  Yes, sir.  Let me give you these

4   back.  I made my rulings on the issues.

5            MR. EVANS:  We have a corporate rep deposition,

6   the second one next Friday, can we have the new production

7   before that?  The un-redacted.

8            MS. WESTER:  Yes.

9            THE COURT:  And also get over in the next ten

10  days all the supplements of disclosures to include anybody else

11  that's knowledgeable with relevant facts and specifically those

12  people that have been part of the process and that way counsel

13  can ask the corporate rep any follow-up.  That may answer all

14  the questions and alleviate the need to conduct any further

15  discovery but I think he's entitled to that information.

16  Anything else that I can do for y'all today.

17            MR. FORD:  No.  Thank you, Your Honor.

18            MR. EVANS:  No.  Thank you.

19            THE COURT:  Thank you.

20            (Hearing concluded)

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2  THE STATE OF TEXAS )

3  COUNTY OF HARRIS    )

4            I, Elizabeth Cordova, Deputy Court Reporter in

5  and for the 125th District Court of Harris County, State

6  of Texas, do hereby certify that the above and foregoing

7  contains a true and correct transcription of all

8  portions of evidence and other proceedings requested in

9  writing by counsel for the parties to be included in

10 this volume of the Reporter's Record in the above-styled

11 and numbered cause, all of which occurred in open court

12 or in chambers and were reported by me.

13           I further certify that this Reporter's Record of

14 the proceedings truly and correctly reflects the

15 Exhibits, if any, admitted by the respective parties.

16           I further certify that the total cost for the

17 preparation of this Reporter's Record is $266 and was paid by

18 Mr. Robert Ford.

19           WITNESS MY OFFICIAL HAND this 1st day of September,

20 2023.

21                        /s/Elizabeth Cordova
                          ELIZABETH CORDOVA, Texas CSR 9039
22                        Expiration Date: 12/31/24
                          Official Court Reporter
23                        125th District Court
                          201 Caroline
24                        Houston, Texas 77002
                          (281) 865-2723

25