**SHOOK**
HARDY & BACON

Michael B. Shortnacy
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
t 424.285.8330
mshortnacy@shb.com

June 24, 2024

Via ECF
The Hon. Lisa J. Cisneros, United States Magistrate Judge
Phillip Burton Federal Building, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re:   *In re: Uber Technologies, Inc., Passenger Sexual Assault Litig.* (Case 3:23-md0384-CRB)

Judge Cisneros:

Pursuant to PTO 14 and PTO 8, the Parties submit this joint letter over Plaintiffs' challenge to Uber's claim of privilege over five documents inadvertently produced by Uber pursuant to PTO 5. The remaining challenged Privileged Documents have been lodged with the Court under seal for *in camera* review.

**Uber's Position:**

On March 8, 2024, Uber produced more than 160,000 pages of documents pursuant to PTO 5. In doing so, Uber inadvertently produced five documents that (1) were not produced in the underlying litigation because they were deemed privileged by the court, *Jane Doe v. UTI* (Case No. 2020-67824 (Harris Cnty. D. Ct. Tex.); and thus not subject to PTO 5; and (2) are legally privileged.[1] Of importance, the first page of each Privileged Document is a cover sheet prepared by outside counsel in the *Doe* case explicitly stating, "Withheld For Privilege," reflecting that the documents were placed on a privilege log. Each subsequent page bears a Bates number further indicating the documents were associated with a privilege log. The Privileged Documents are Uber documents reflecting internal communications between Uber's in-house legal team and other Uber employees revealing legal advice and recommendations. In *Doe,* when Uber's assertion of privilege was challenged in a motion to compel, the Texas court reviewed the withheld documents *in camera* and issued a ruling sustaining privilege to four documents at issue here.[2] Uber's Challenge Response, Ex. B, at 18, 25, 26.

On May 7, 2024, Uber first learned of the inadvertent disclosure when Plaintiffs sent a letter using one of the privileged documents as an example of supposed undisclosed privilege redactions. On May 10, 2024, Uber sent a Notice of Clawback explaining the Privileged Documents were never produced in the *Doe* litigation, thus do not meet the requirements of PTO5; and that the documents reflect privileged communications between Uber employees and Uber's in-house legal counsel. On May 20, 2024, Plaintiffs issued a Notice of Clawback Challenge, which failed to provide a basis for their challenge. Rather, it merely stated the information Uber provided was "insufficient." On May 30, 2024, Uber's Challenge Response reaffirmed that the inadvertently produced Privilege Documents are protected by privilege, as recognized by the Texas court that ruled on four of the five documents. Uber's Challenge Response not only identified Uber's in-house

---

[1] The Privileged Documents are Bates labeled UBER-MDL3084-000093375, UBER-MDL3084-000093385, UBER-MDL3084-000093391, UBER-MDL3084-000093397, UBER-MDL3084-000093421.

[2] "Courts regularly take judicial notice of proceedings in other courts and facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Perez v. Kroger Co.*, 336 F. Supp. 3d 1137, 1141 (C.D. Cal. 2018) (quoting Fed. R. Evid. 201(b)(2)). Uber has filed a request that the Court take judicial notice of the proceedings in Doe.

attorneys who were involved in preparing and reviewing the Privileged Documents, but also provided the transcript of the Texas court rulings, and supplied previously–filed declarations by Uber employees with first-hand knowledge supporting Uber's claims of privilege.

Eight days after the meet and confer, on May 18, 2024, Plaintiffs withdrew their challenge to UBER-MDL3084-000093397. A day after receiving Uber's draft joint letter brief, on May 19, 2024, Plaintiffs withdrew their privilege challenge to UBER-MDL3084-000093375. Plaintiffs also agreed that UBER-MDL3084-000093385 & 093391 contained privileged communications, and only sought to challenge two August 2019 emails contained within those documents, as well as UBER-MDL 3084-000093421, the Safety Criteria Update Comms Plan. Plaintiffs' actions demonstrate they agree with the Texas Court that the four documents contained privileged communications.

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco Wholesale Corp. v. Super. Ct.*, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege," the privilege is presumed to apply, and the opponent "has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.* The privilege encourages "full and frank communication between attorneys and their clients and thereby promotes broader public interests in the observance of law and administration of justice." *In re Grand Jury*, 23 F.4th 1088, 1093 (9th Cir. 2021). If "communications were made during the course of an attorney-client relationship, the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means." *Kumar v. Nationwide Mut. Ins. Co.*, No. 22CV03852-TLT-LJC, 2023 WL 3598478, at *4 (N.D. Cal. May 23, 2023). In-house legal counsel's advice receives that protection when "an attorney gives a client legal advice on a business decision." *Staley v. Gilead Scis., Inc.*, No. 19-CV-02573-EMC, 2021 WL 4318403, at *2 (N.D. Cal. July 16, 2021). Documents "sent for the purpose of facilitating legal advice" are privileged. *United States ex rel. Schmuckley v. Rite Aid Corp.*, No. 212CV01699KJMJDP, 2023 WL 425841, at *3 (E.D. Cal. Jan. 26, 2023). And "legal advice is implicated if the nonlegal aspects of the consultation are integral to the legal assistance given." *Calendar Rsch. LLC v. StubHub, Inc.*, No. CV 17-4062 SVW (SSX), 2019 WL 11558873, at *3 (C.D. Cal. July 25, 2019).

**UBER-MDL3084-93385 (PRLOG420) & UBER-MDL3084-93391 (PRLOG421):** There is no dispute that the Texas Court found these to be privileged. Uber's Challenge Response Ex. B, at 18. There is also no dispute that Plaintiffs also agree that the documents, wherein Uber's in-house counsel was asked for legal advice regarding policy changes that were being considered, contain privileged communications. As such, Plaintiffs now narrow their challenge to two initial emails (dated August 12, 2019 and August 20, 2019) that were sent before Uber's in-house legal counsel weighed in on company policies. These initial emails are an integral part in asking for legal advice—identifying the company policies for the Legal Team's review ███████████████████ ███████████████████████████ as such, are also privileged. While Plaintiffs claim that a "cross-functional group" converts legal advice to business advice, so long as "an attorney gives a client legal advice on a business decision, that communication is protected by the privilege" even if other employees provide input. *Staley*, 2021 WL 4318403, at *2. That is what occurs here as counsel Maureen Frangopoulos advises ████████████████████████ ████████████████████████████████████████████████████████████████████ This demonstrates the legal review was an ongoing analysis and process. The "nonlegal aspects of the consultation are integral" because they form the basis of the request to Uber's in-house legal counsel and are privileged *Calendar Rsch. LLC*, No. CV 17-4062 SVW (SSX), 2019 WL 11558873, at

*3. Further, Plaintiffs provided no indication how Texas privilege law conflicts with California privilege law.

**UBER-MDL3084-93421 (PRLOG489):** This document is a Safety Criteria Update created for internal use only to guide the Communications Team and was provided to Uber's in-house legal counsel, including Nic Benincasa, Regional Associate Counsel, Regulatory; and Matt Burton, Legal Director II, Regulatory Development, for their review. Benincasa Decl. ¶¶ 4-6. The document was shared with Uber's in-house counsel on January 3, 2016, "for the purpose of obtaining legal review and advice." *Id.* 6. It reflects counsel's assessment on a regulatory change and "advising Uber on its regulatory and legal responsibilities under the law, and the impact of regulatory changes on those using the Uber marketplace platform, including riders and independent drivers." *Id.* ¶¶ 7-8.

Uber employees' attorney-client relationship with Uber's in-house legal counsel extends to all areas and persons where legal advice may be sought,[3] including advising on Uber's Communications and Public Policy Teams on the legal implications of company communications. The Safety Criteria Update contains legal guidance on changes to California law as well as its impact on Uber. Plaintiffs point to decisions involving clients and third-party public relations firms to show that PR communications are not always privileged. *In re Pacific Fertility Center Litig.*, 2020 WL 1934981, at *3 (N.D. Cal. Apr. 22, 2020) (noting communications between attorney and corporate employee deserve greater protection). However, this is not on point. Here, the Safety Criteria Update was not communicated to Uber's in-house legal counsel for public relations strategy (that is the province of the Communications Team), but as the declaration establishes, it was communicated for the purpose of providing the impact of regulatory changes and Uber's regulatory and legal responsibilities under the law. Benincasa Decl. ¶ 7. As such, it is indisputable that the Privilege Document was sent to Uber's in-house for legal counsel's advice. Moreover, it was not sent to a third-party outside vendor.

The Court should order that Plaintiffs return or destroy the Privileged Documents.

**Plaintiffs' position:**

Uber has not met its burden showing that these three documents (two of which are substantially similar) are privileged.[4] Each communication or document at issue was either created primarily for business purposes (as opposed to a legal purpose) or is not a communication that seeks, conveys, or even discusses legal advice.[5]

The attorney-client privilege exists: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *U.S. v. Graf*, 610

---

[3] Plaintiffs' exhibit should be disregarded as wholly irrelevant, hearsay, and unduly prejudicial for several reasons. First, this document arises from an entirely different case that is unrelated to the MDL, sexual assault, and/or the issues at hand. Second, Plaintiffs claim that a "senior Uber executive" said Uber instructed its employees on alleged improper uses of privilege labels. However, reliance on this document is improper given (1) it is an unsworn letter and (2) quotes opposing counsel's words— and not from a senior Uber executive's testimony. It also is an out of court statement that is hearsay. Further, the plaintiff in that case worked in a different department than the Uber employees here.

[4] Uber claims that Plaintiffs agreed that other previously disputed documents, UBER-MDL3084-000093397; UBER-MDL3084-000093375; and UBER-MDL3084-000093385 & 093391, were privileged. Not so. Plaintiffs do not concede, nor did they ever concede, these documents were privileged. Plaintiffs simply informed Uber that they were not challenging Uber's privilege assertions to these documents at this time and we reserved our rights to challenge at a later time.

[5] Uber argues the documents at issue do not meet the requirements of PTO No. 5 but, as Plaintiffs have informed Uber, the documents are responsive to numerous Requests for Production made by Plaintiffs on February 28, 2024, including RFP Nos. 20, 21, 29, 30, 53, 59, 63, 68, 97, 105, 110, 112, 113, and/or 115.

F.3d 1148, 1156 (9th Cir. 2010). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (quotation omitted). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege," and "applies only when necessary to achieve its purpose" of encouraging complete disclosure by the client. *Fisher v. U.S.*, 425 U.S. 391, 403 (1976). The privilege protects only communications, and not underlying facts, *Upjohn v. U.S.*, 449 U.S. 383, 396 (1981), and the fact "[t]hat a person is a lawyer does not, *ipso facto*, make all communications with that person privileged." *U.S. v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. U.S.*, 840 F.2d 1424, 1426 (9th Cir. 1988).

Where a communication was made for dual-purposes, courts must determine "whether the primary purpose of the communication is to give or receive legal advice, as opposed to business ... advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021). An assertion of privilege may be sustained only if "there is a clear evidentiary predicate for concluding that each communication in question was made primarily for the purpose of generating legal advice." *Id*.

Communications with in-house counsel "warrant [] heightened scrutiny" because "[i]n-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters." *Oracle Am., Inc. v. Google, Inc.*, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011). Thus, "[w]hen attempting to demonstrate that an internal communication involving in-house counsel deserves privileged status, a party ... 'must make a clear showing that the speaker made the communication [ ] for the purpose of obtaining or providing legal advice.'" *Id*. (quoting *U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002)). "Courts [] have rejected attempts to immunize documents from disclosure by simply involving an attorney in the investigation." *Greer v. County of San Diego*, 634 F.Supp.3d 911, 920 (S.D. Cal. 2022)(internal citations omitted).

"The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, the primary motivating purpose behind the creation of the materials must be as an aid in possible future litigation." *Id.* at 918 (citation omitted). Thus, work product protection applies only to material "that would not have been generated but for the pendency or imminence of litigation." *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 694745, at *1 (N.D. Cal. Feb. 21, 2014). The party asserting work product protection has the burden to demonstrate it applies to the material in question. *See Schoenmann v. FDIC*, 7 F. Supp. 3d 1009, 1013 (N.D. Cal. 2014).

Here, Uber has not met its burden to show that the documents (or portions of documents) in question are privileged. Plaintiffs are not challenging communications made with attorneys or communications that share or discuss attorney advice. It is evident on the face of the documents (or portions thereof) that they are primarily business, not legal, materials.

One other threshold point. Uber asserts that each document is privileged because each has a cover sheet stating, "Withheld For Privilege" or is otherwise noted to be a privileged communication on the document itself. But, according to one former senior executive, Uber employees were apparently instructed "to conceal documents [] by attempting to 'shroud' them with attorney-client privilege or work product protections. [I]f they marked communications as 'draft,' asked for a legal opinion at the beginning of an email, and simply wrote 'attorney-client privilege' on documents, they would be immune from discovery."[6] So while the mere stamping of a document privileged

---

[6] *Waymo LLC v. Uber Techs., Inc.*, Case No. 3:17-cv-00939-WHA, Dkt. 2401-1, at 6-7 (Dec. 15, 2017) (attached hereto as Exhibit B).

does not make it so as a general matter, the Court should be especially skeptical of the prima facie validity of such markings here.

**UBER-MDL3084-93385(PRLOG420) & UBER-MDL3084-93391 (PRLOG421).** Plaintiffs are challenging Uber's privilege assertions only as to the August 20, 2019 (7:03 PM) and August 12, 2019 (4:38 PM) emails sent by Valerie Shuping, Uber's Global Safety Program Manager, to unknown recipients (including any attachments, which Uber has not yet produced). Uber does not contend that these emails were sent to any attorney (in-house counsel or otherwise). While an Uber in-house counsel, Maureen Frangopoulos, is added later to the email chain, this does not negate that these prior emails were not communications with counsel and were not sent to solicit legal advice. In any event, the emails ask for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This "cross-functional group" presumably includes multiple business-related groups, but specifically did *not* include Uber's legal department or legal group (because an attorney is only added in later). Thus, the primary purpose of these emails is clearly seeking business advice and sign-off, not legal advice, and Uber has not met its burden showing otherwise. Uber argues that the Court should defer to a Texas state court ruling (applying Texas law) finding this document privileged. But that ruling apparently opined on the entire email thread, including the significant portion after Ms. Frangopoulos was added, that Plaintiffs do not challenge here. In any event, the Texas ruling is not binding here, and the Court should apply its own independent analysis.[7]

**UBER-MDL3084-93421 (PRLOG489).** This Safety Criteria Update (which was *not* reviewed by the Texas court) was created by Uber's Communications and Public Policy Teams in late 2015 or early 2016 and was not shared with outside counsel. Benincasa Decl. ¶¶ 4-6. It was later sent to in-house counsel. *Id.* It is Uber's "customary" and ordinary business practice to have Uber's in-house Regulatory Team review such documents. *Id.* at ¶ 7. Uber cannot meet its burden showing that this document is privileged. There are no attorney comments or redlines to this document apparent on its face. Nor does it relate to any imminent or pending litigation. Such a document, assembled in the ordinary course of business, is not privileged. *See Griffith*, 161 F.R.D. at 698. And simply because this document was later sent to in-house, who did not alter it, also does not make it privileged—presumably, legal signs off on many business documents, but that does not make them privileged. *See, e.g., Oracle Am., Inc.*, 2011 WL 5024457, at *3 ("Simply labeling a document as privileged and confidential or sending it to a lawyer does not automatically confer privilege."); *IP Co., LLC v. Cellnet Tech., Inc.*, 2008 WL 3876481, at *3 (N.D. Cal. Aug. 18, 2008) ("[I]t is well settled that merely copying an attorney on an email does not establish that the communication is privileged."). Moreover, this Safety Criteria Update is primarily focused on a "Comms approach"—namely, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It does not reflect legal advice—its primary purpose is clearly business-PR related. In short, Uber has not made a "clear showing" that this document was created to solicit legal advice and its improper privilege assertions should not be upheld. *See, e.g., In re Pacific Fertility Center Litig.*, 2020 WL 1934981, at *3 (N.D. Cal Apr. 22, 2020)(finding no privilege for communications that "are about monitoring and predicting the public reaction to the incident and subsequent lawsuits, managing messaging to patients, and determining how best to present the issues to the public and press.")(citing *Anderson v. SeaWorld Parks & Entm't, Inc.*, 329 F.R.D. 628, 634 (N.D. Cal. 2019)(overruling claim of privilege because communication was made "to better predict the public reaction to legal activities

---

[7] California law governs this privilege dispute. *See In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law").

and other efforts [], and to determine how best to present such activities to the public and other entities."); *Wisk Aero LLC v. Archer Aviation, Inc*., 2023 WL 2699971, at *5-6 (N.D. Cal. March 29, 2023)("Ultimately, Wisk [failed to] make a 'clear showing' that the 'primary or predominate purpose' of Bibbes' communication [] was the provision of 'legal advice or assistance.'"); *Estate of Serna v. County of San Diego*, 689 F.Supp.3d 848, 862 (S.D. Cal. 2023)("The Court's *in camera* review of the [] Reports further supports the conclusion that the primary purpose of the communications [] was not to seek or receive legal advice []").


Sincerely,
By: */s/ Michael B. Shortnacy*
Michael B. Shortnacy
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
mshortnacy@shb.com