# EXHIBIT 6

RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MAY 20 NOTICE OF CLAWBACK CHALLENGE** |
| This Document Relates to: | |
| ALL ACTIONS | Judge:       Hon. Lisa J. Cisneros |
| | Courtroom:  G – 15th Floor |

**INTRODUCTION**

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), respond to Plaintiffs' Notice of Clawback Challenge sent on May 20, 2024, concerning the following documents (the "Privileged Documents") that Uber inadvertently produced:

| Bates number | Ending Bates number | Privilege Log designation in prior litigation |
| --- | --- | --- |
| UBER-MDL3084-000093375 | UBER-MDL3084-000093384 | PRLog000262 |
| UBER-MDL3084-000093385 | UBER-MDL3084-000093390 | PRLog000420 |
| UBER-MDL3084-000093391 | UBER-MDL3084-000093396 | PRLog000421 |
| UBER-MDL3084-000093397 | UBER-MDL3084-000093420 | PRLog000480 |
| UBER-MDL3084-000093421 | UBER-MDL3084-000093431 | PRLog000489 |

As a threshold issue, the Privileged Documents were inadvertently produced by Uber on March 8, 2024, when inadvertent disclosures were governed by the Protective Order (ECF 176).  The inadvertent production occurred before the Court entered PTO 14 on April 4, 2024.  To the extent PTO 14 procedures apply to this production, Uber has substantially complied. Uber has produced slip sheets and a privilege log for the Privileged Documents pursuant to PTO 14.

Uber has made reasonable efforts to designate for protection the documents (and parts of documents) that are privileged. As more fully explained below, the Privileged Documents are not required to be produced by PTO 5 and the asserted legal privileges apply to the documents in whole. Plaintiffs also failed to comply with PTO 14.

A.    **PLAINTIFFS' NOTICE OF CLAWBACK CHALLENGE IS INSUFFICIENT PURSUANT TO PTO 14**

Uber also notes that Plaintiffs' Notice of Clawback Challenge is insufficient pursuant to the requirements of PTO 14. It does not "provide the reason for said disagreement."  PTO 14 ¶ 6, ECF 396, at 2.  Rather, Plaintiffs' letter merely states that the "reasons asserted for privilege in [Uber's] letter are insufficient."  Vague statements are insufficient, especially where, as here the Privileged

Documents contain conspicuous headings and markers indicating the privileges asserted. As such, Plaintiffs failed to comply with PTO 14.

Plaintiffs' Notice of Clawback Challenge confirms that Plaintiffs have sequestered the Privileged Documents. Uber reserves the right to seek discovery on Plaintiffs' efforts to sequester the Privileged Documents and any work product and comply with PTO 14, including the audit logs for who has viewed the Privileged Documents following receipt of the Clawback Notice.  PTO 14 ¶ 9.

**B.   BASIS FOR CLAWING BACK PRIVILEGED DOCUMENTS**

The Privileged Documents were inadvertently produced, and they should be returned in whole, because those documents are not subject to PTO 5 and they contain attorney-client communications and attorney work product.

**1.   The Privileged Documents Were Not Produced in a Prior Litigation, and Thus, are Not Subject to PTO 5.**

PTO 5 only requires that Uber produce "documents Defendants *produced* in any other Uber sexual assault cases."  § 6C, ECF 175, at 4.  Documents that were not produced are not subject to PTO 5.  Here, all five documents were on Uber's privilege log in the underlying case, *Jane Doe v. UTI* (Case No. 2020-67824 (Harris Cnty. D. Ct. Tex.)) (attached as Ex. A), and were never produced by Uber in that state court litigation.

The Privileged Documents bear a conspicuous Bates label that identifies them as part of the *Doe* privilege log, numbers 262, 420, 421, 480, and 489.  Those appear on the attached exhibit showing Uber's privilege log and their numbering.  Ex. A, at 5.  Next to each document, the *Doe* privilege log states that "Document has not been produced."  *Id.*  Those documents were never produced because either (1) the Court upheld the privilege designation for the whole document at an August 21, 2023 hearing, or (2) the case settled the next month and no further production occurred.  As the hearing transcript shows, the court in the *Doe* case reviewed PRLOG000262, 420, 421, and 480 *in camera* and sustained Uber's assertions of privilege.  Ex. B, Aug. 21 Hear'g Tr. at 18, 25, 26.  The remaining document, PRLOG000489, was also not subject to an order compelling its production before the case settled the next month.  Given the Privileged Documents were never produced in a prior litigation,

they are not subject to PTO 5.  Plaintiffs are not entitled to these documents and they must be destroyed or returned.  Plaintiffs' clawback challenge is without merit.

2. **The Documents are Protected by Attorney Client Privilege; Thus Should be Clawedback.**

The Privilege Documents contain attorney-client communications and attorney work product; thus are legally protected by privilege from disclosure.  In addition, in *Jane Doe v. UTI* (Case No. 2020-67824 (Harris Cnty. D. Ct. Tex.)), the trial court sustained Uber's asserted privilege objections as to these documents when challenged.  Ex. B, Aug. 21 Hear'g Tr. at 18, 25, 26.

## UBER-MDL3084-000093375 (PRLOG000262).

This document is attorney-client privileged.  It is an internal email communication between Uber employees and Uber's legal counsel, Scott Binnings, Senior Counsel of Safety; Aaron Brand, Senior Counsel of Regulatory, and Lisa Tse, Counsel of Regulatory.  Notably emails sent to and from legal counsel bear the notations "PRIVILEGED & CONFIDENTIAL" and "AC Privileged."  The March 14, 2017 email communication shows that it is part of an ongoing discussion between Uber employees and Uber's legal counsel about the internal policies, including "Zero Tolerance," and seeking counsel's insight, guidance, and review especially as it relates to ongoing legal issues for Uber.  The "Zero Tolerance Policy" email contains correspondence from Uber's in-house legal counsel to other Uber employees detailing counsel's impressions and thoughts and providing advice (including recommendations) with respect to the proposed policy. Ex. C, Baker Declaration, *Jane Doe v. UTI* (Case No. 2020-67824 (Harris Cnty. D. Ct. Tex. Apr. 28, 2023)).  Moreover, even when the email chain was forwarded within the company to other Uber employees, the internal discussion continued debate commentary based recommendations by legal counsel.

This document is indisputably protected by attorney-client privilege. Even the trial court in *Jane Doe v. UTI* had recognized "that the content, the substance of this is privileged," Ex. B, at 20, and upholding Uber's privilege claim, *id.* at 25.  As such, Plaintiffs have no basis to challenge the clawback.

**UBER-MDL3084-000093385(PRLOG000420) &**

**UBER-MDL3084-000093391 (PRLOG000421).**

These two documents have significant overlap, as only the most recent email in time is different, and will be treated together.  Both documents are attorney-client privileged and attorney work product privileged.  These email chains, subject line "Re:[Review Requested] Sexual Misconduct Policy & Standard," seek legal advice from Uber's in-house counsel which was provided to other Uber employees with counsel's thoughts, impressions, and advice regarding proposed safety policies. Ex. D, Gibbons Declaration, *Jane Doe v. UTI* (Case No. 2020-67824 (Harris Cnty. D. Ct. Tex. Apr. 28, 2023)).

Specifically, Uber's in house legal counsel, Maureen Frangopoulos, Senior Director of Safety & Insurance in August 2019, responded to the email thread and labeled it "AC Privileged and Confidential Attorney Work Product."  In the email, she advises on the effect Uber employees' proposals may have on pending litigation and providing a thorough review and the legal effects of the proposed policy.  The later-in-time emails discuss relevant items counsel opined on.  Similar to above, when challenged in *Jane Doe v. UTI*, the trial court stated "420 and 421, I'm going to sustain the privilege claim."  Ex. B, at 18.

**UBER-MDL3084-000093397 (PRLOG000480).**

This document is attorney-client privileged.  The document is a Proposed Policy Standard Report. The first slide notes that the presentation is "ATTORNEY-CLIENT PRIVILEGED."  The Proposed Policy Standard Report was created on or about August 2018 to communicate in-house counsel's recommendations and findings from their review of proposed policy changes. Ex. C, Baker Declaration.  The document contains findings and advice from in-house legal counsel's review of Uber policies and procedures concerning legal risk related to driver deactivation. Similar to the aforementioned documents, the trial court in *Jane Doe v. UTI* "sustain[ed] privileges as to 480." Ex. B, at 26.

**UBER-MDL3084-000093421 (PRLOG000489)**

This document is attorney-client privileged.  It is a "Safety Criteria Update Comms Plan" with each page bearing a red stamp stating "ATTORNEY-CLIENT PRIVILEGED."  This document was shared with and reviewed by Uber's in-house legal counsel including, Nic Benincasa, Regional Associate Counsel, Regulatory; and Matt Burton, Legal Director II, Regulatory Development.  This document sought legal advice, and conveys the thoughts, impressions, and recommendations of legal counsel regarding proposed policy changes.  This document was for internal use only and not shared outside of the company.

**CONCLUSION**

Plaintiffs should withdraw their challenge and destroy the documents, and all copies, in compliance with PTO 14. Should Plaintiffs proceed with their challenge, Uber offers to meet and confer on June 3 or 4, 2024 at a mutually agreeable time.

DATED: May 30, 2024

Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Michael B. Shortnacy*
    MICHAEL B. SHORTNACY

MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2049 Century Park East, Ste. 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (Admitted *Pro Hac Vice*)
    oot@shb.com
**SHOOK, HARDY & BACON L.L.P.**
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**

DEFENDANTS' RESPONSE TO PLAINTIFFS' MAY 20 NOTICE
OF CLAWBACK CHALLENGE                                    Case No. 3:23-MD-3084-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**& GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

7

# EXHIBIT A

| No. | Bates Nos. | Document/Presentation Title | Description of redacted page | Privilege claimed | Court's Ruling |
|---|---|---|---|---|---|
| 1 | 2419 | Safety Deactivations Overview | Fully redacted slide following slide titled "Incidents merit different treatment based on level of severity" | Not listed in Uber's privilege log | Overruled / Sustained |
| 2 | 2422 | Safety Deactivations Overview | Fully redacted slide following slide title "Policies are input into SIPS, which triggers DACT tickets" | Not listed in Uber's privilege log | Overruled / Sustained |
| 3 | 2426 - 2428 | Safety Deactivations Overview | Fully redacted slides following slide titled "Examples" | Not listed in Uber's privilege log | Overruled / Sustained |
| 4 | 2430 - 2431 | Safety Deactivations Overview | Fully redacted slides  following slide titled "Planned Improvements" | Not listed in Uber's privilege log | Overruled / Sustained |
| 5 | 6723 | STAND for Safety Executive Committee, 9/14/18 | Fully redacted slide following "S-RAD Update" slide. "S-RAD" is "data analysis that we use to help us better predict and prevent sexual violence."  Alicia Kedambadi deposition,  64:15-16. | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 6 | 6726 - 6728 | STAND for Safety Executive Committee, 9/14/18 | Fully redacted slides following "Support policies" | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 7 | 6730 - 6736 | STAND for Safety Executive Committee, 9/14/18 | Fully redacted slides following "Sexual Assault Policy" slide | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 8 | 6740 - 6742 | STAND for Safety Executive Committee, 9/14/18 | Fully redacted slides following "Appendix" slide | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 9 | 6760 | Safety On-platform Standards, 5/31/2016 | "Drivers with unconfirmed L3s remain active". Examples are redacted. | Not listed in Uber's privilege log | Overruled / Sustained |
| 10 | 6762 | Safety On-platform Standards, 5/31/2016 | Fully Redacted slide titled "Phase 1: Points system" | Not listed in Uber's privilege log | Overruled / Sustained |
| 11 | 6773 | Safety On-platform Standards, 5/31/2016 | L1 Examples.  Sexual misconduct example is redacted | Not listed in Uber's privilege log | Overruled / Sustained |
| 12 | 6811 - 6812 | SA/SM Standard Discussion, September 2018 | Fully redacted slides following "Current Deactivation/Ban Metrics" slide | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 13 | 6817 | SA/SM Standard Discussion, September 2018 | Redacted example of inconclusive report that would lead to deactivation | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |

| 14 | 6818 | SA/SM Standard Discussion, September 2018 | Redacted example of inconclusive report that would not lead to deactivation | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
|---|---|---|---|---|---|
| 15 | 6845 - 6857 | US/CAN Business Policy Leadership Check-In, 8/21/2017 | Fully redacted slides following intro title slides | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 16 | 7045-7046 | Overview of US&C Driver Deactivation Processes, August 2019 | Fully redacted slides following slide titled "The dynamic deactivation threshold varies by driver tenure, driver rating and geography | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 17 | 7050-7051 | Overview of US&C Driver Deactivation Processes, August 2019 | Fully redacted slides following the slide titled "DACT driver IPC - included contact types" | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 18 | 7063-7064 | Overview of US&C Driver Deactivation Processes, August 2019 | Fully redacted slides following the slide title "The standard takes into account the severity of the incident type" | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 19 | 7118 - 7123 | Overview of US&C Driver Deactivation Processes, August 2019 | Fully redacted slides following the slide titled "The types of communication to drivers vary by the type of complaint and business standard | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 20 | 7137 - 7140 | Overview of US&C Driver Deactivation Processes, August 2019 | Fully redacted slides following the a slide discussing driver screening process | Presentation containing legal advice of counsel re: legal risk related to driver conduct | Overruled / Sustained |
| 21 | 8211 | US & Canada Business Standards, Follow Up Meeting High Priority Safety Policies | Action Item for Sexual Misconduct | Presentation containing legal advice of counsel re: safety policy issue. | Overruled / Sustained |
| 22 | 8212 | US & Canada Business Standards, Follow Up Meeting High Priority Safety Policies | "Pain Points" for Sexual Misconduct | Presentation containing legal advice of counsel re: safety policy issue. | Overruled / Sustained |
| 23 | 8217 | US & Canada Business Standards, Follow Up Meeting High Priority Safety Policies | Threshold analysis/strike proposal | Presentation containing legal advice of counsel re: safety policy issue. | Overruled / Sustained |
| 24 | 8345- 8351 | Deactivated Driver Sizing and Opportunity Update, April 2021 | Fully redacted slides following intro title slide | Presentation containing legal advice of counsel re: safety policy issue | Overruled / Sustained |
| 25 | 8353 - 8355 | Deactivated Driver Sizing and Opportunity Update, April 2021 | Fully redacted slides following "Appendix" slide | Presentation containing legal advice of counsel re: safety policy issue | Overruled / Sustained |
| 26 | 8358 | Safety Deactivation/Reactivation Principles | Bottom is paragraph is redacted on slide discussing safety deactivations | Presentation containing legal advice of counsel re: legal risk related to conduct | Overruled / Sustained |

| 27 | 8396 - 8379 | Overview of US&C Driver Deactivation Processes, December 2019 | Fully redacted slides following slide titled "Drivers are deactivated when they reach three notations" | Not listed in Uber's privilege log | Overruled / Sustained |
|---|---|---|---|---|---|
| 28 | 8426 - 8429 | Overview of US&C Driver Deactivation Processes, December 2019 | Fully redacted slides following slide titled "The types of communications to drivers vary by the type of complaint and business standard" | Not listed in Uber's privilege log | Overruled / Sustained |
| 29 | 8559 | IRT Urgent (IRT = incident response team) | Fully redacted slide following slide title "Sexual Assault" | Not listed in Uber's privilege log | Overruled / Sustained |
| 30 | 8562 | IRT Urgent (IRT = incident response team) | Fully redacted slide following slide title "Stalking" | Not listed in Uber's privilege log | Overruled / Sustained |
| 31 | 8568 - 8583 | IRT Urgent (IRT = incident response team) | Fully redacted slides following slides titled "Incident Identification and application" | Not listed in Uber's privilege log | Overruled / Sustained |
| 32 | 8599 - 8603 | 2022 Central Safety Planning (Personal Safety (SA/SM) Brainstorming Session | Fully redacted slides following slide title "Limitations on our Insights" | Not listed in Uber's privilege log | Overruled / Sustained |
| 33 | 8695 | Earner deactivation overview, December 2021 | Risk rating criteria slide is redacted | Not listed in Uber's privilege log | Overruled / Sustained |
| 34 | 8753 | Introduction to DACT 3.0 | Fully redacted slide following slide which says "We find a list of similar drivers to show, driver similar to this driver is indeed at high risks" | Not listed in Uber's privilege log | Overruled / Sustained |
| 35 | 8764 | Introduction to DACT 3.0 | Fully redacted slide following slide discussing increase in "lift" for flagging more drivers under new modeling | Not listed in Uber's privilege log | Overruled / Sustained |
| 36 | 8719 | Personal Safety Strategy Brief, June 2018 | Fully redacted slide following slide titled "Metrics Update" | Not listed in Uber's privilege log | Overruled / Sustained |
| 37 | 8933 | Safety Deactivation and DACT Deep Dive | Fully redacted slide following slide title "non serious incidents" which discusses driver deactivation | Not listed in Uber's privilege log | Overruled / Sustained |
| 38 | 8934 | Safety Deactivation and DACT Deep Dive | Partially redacted slide discussing DACT process and driver appeals | Not listed in Uber's privilege log | Overruled / Sustained |
| 39 | 8935 -8940 | Safety Deactivation and DACT Deep Dive | Fully redacted slides following slide discussing DACT process and driver appeals | Not listed in Uber's privilege log | Overruled / Sustained |
| 40 | 8943 | Safety Deactivation and DACT Deep Dive | Fully redacted slide following slide titled "What is a Policy Deviation process and How it works." | Not listed in Uber's privilege log | Overruled / Sustained |

| 41 | 8950 | Safety Deactivation and DACT Deep Dive | Examples redacted from slide titled "Our Safety Policies define what we allow in the platform while our Standards and Processes help us identify and deal with users who present a threat to the platform and to the safety of others" | Not listed in Uber's privilege log | Overruled / Sustained |
|----|------|----------------------------------------|------------------------------------------------------------------------|------------------------------------|-----------------------|
| 42 | 8956 | Safety Deactivation and DACT Deep Dive | Fully redacted slide following slide titled "DACT prevents incidents by flagging high risk users for account adjudication" | Not listed in Uber's privilege log | Overruled / Sustained |
| 43 | 8958 | Safety Deactivation and DACT Deep Dive | Fully redacted slides following slide discussing DACT process and driver appeals | Not listed in Uber's privilege log | Overruled / Sustained |
| 44 | 8959 - 8964 | Safety Deactivation and DACT Deep Dive | Fully redacted slides following slide discussing DACT process and driver appeals | Not listed in Uber's privilege log | Overruled / Sustained |
| 45 | 8973 - 8984 | Safety Deactivation and DACT Deep Dive | Fully redacted slides following "Appendix" slide | Not listed in Uber's privilege log | Overruled / Sustained |
| 46 | 8991 | Safety Deactivation and DACT Deep Dive | Fully redacted slide following slide titled "Review of DACT Evolution" | Not listed in Uber's privilege log | Overruled / Sustained |
| 47 | 9006 -9007 | Personal Safety Risks and Trends | Fully redacted slides following slide discussing old challenges | Not listed in Uber's privilege log | Overruled / Sustained |
| 48 | DAVISUBER_PRLO G000262 | Re: Documents for Propose Zero Tolerance Changes | Document has not been produced.  All individuals on e-mail string are non-lawyers | Email string seeking and providing legal advice of counsel re: user deactivation policy. | Overruled / Sustained |
| 49 | DAVISUBER_PRLO G000420 | Re: [Review Requested] Sexual Misconduct Policy & Standard | Document has not been produced.  All individuals on the e-mail string are non-lawyers | Email string seeking and providing legal advice of counsel re: user conduct issues. | Overruled / Sustained |
| 50 | DAVISUBER_PRLO G000421 | Re: [Review Requested] Sexual Misconduct Policy & Standard | Document has not been produced.  All individuals on the e-mail string are non-lawyers | Email string seeking and providing legal advice of counsel re: user conduct issues. | Overruled / Sustained |
| 51 | DAVISUBER_PRLO G000480 | SA-SM Standard Discussion_1BBwwMY1v_vw2QlMHBfXYMdIAPb Rwonl3- bPEZN4KBlg.pptx | Document has not been produced. SA & SM are "Sexual Assault" and "Sexual Misconduct" respectively | Presentation containing legal advice of counsel re: legal risk related to driver deactivation. | Overruled / Sustained |
| 52 | DAVISUBER_PRLO G000489 | Safety Criteria Update Comms Plan_1P6A6gAXHJnk80bXa_n3gdDj1XOIQ6zTGjbG bmcNaCw w.docx | Document has not ben produce, but title refers to safety criteria | Document containing legal advice of counsel re: safety policy issues | Overruled / Sustained |
| 53 | DAVISUBER_PRLO G000490 | US & Canada Standard- Master External Fa_1AnmAbkBlbk0sh1YtwnB512wzsLwTl53nqUI AH0GrOxE.d ocx | Document has not been produced, but title refers to standard.  "Standards" are Uber's safety criteria | Document containing legal advice of counsel re: risk related to driver conduct | Overruled / Sustained |

# EXHIBIT B

```
 1                     REPORTER'S RECORD
                       VOLUME 1 OF 1 VOLUME
 2              TRIAL COURT CAUSE NO. 2020-67824

 3


 4
    JANE DOE,                      )IN THE DISTRICT COURT OF
 5                                 )
                                   )
 6           Plaintiff             )
                                   )
 7  VS                             )HARRIS COUNTY
                                   )
 8                                 )
                                   )
 9                                 )
    UBER TECHNOLOGIES, INC.,       )
10                                 )
                                   )
11           Defendant             )THE 125TH JUDICIAL DISTRICT

12

13

14          ------------------------------------------

15

16                      REPORTER'S RECORD

17

18          ------------------------------------------

19

20

21          On the 21st day of August, 2023, the following

22  proceedings came on to be heard in the above-entitled and

23  numbered cause before the Honorable Kyle Carter, Judge

24  presiding, held in Houston, Harris County, Texas:

25             Proceedings reported by machine shorthand.
```

1                    A P P E A R A N C E S

2

3    Mr. Ross W. Evans
     SBOT NO. 24064771
4    Mr. Jeffrey Wigington
     SBOT NO. 00785246
5    WIGINGTON RUMLEY DUNN & BLAIR, LLP
     601 Howard Street
6    San Antonio, Texas 78212
     Phone: 210.487.7500
7    COUNSEL FOR PLAINTIFF

8

9    Mr. Robert H. Ford
     SBOT NO. 24074219
10   Ms. Whitney Wester
     SBOT NO. 24080420
11   Ms. Melissa B. Carroll
     BRADLEY ARANT BOULT CUMMINGS, LLP
12   600 Travis Street
     Suite 4800
13   Houston, Texas
     77002
14   Phone: 713.576.0300
     COUNSEL FOR DEFENDANT UBER TECHNOLOGIES
15

16

17

18

19

20

21

22

23

24

25

1                           I N D E X

2

3       AUGUST 21, 2023                           <u>PAGE</u>

4       Hearing commenced..........................4

5       Hearing concluded.........................30

6       Court reporter's certification............31

7

8                          <u>EXHIBITS</u>

9       No exhibits offered or admitted

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  At this time the Court calls Cause

2    No. 2020-67824, Jane Doe versus Uber Technologies, Inc.

3    Counsel, please make your appearances for the record.

4          MR. EVANS:  Ross Evans on behalf of plaintiff,

5    Jane Doe.

6          MS. WESTER:  Whitney Wester and Robert Ford on

7    behalf of Uber Technologies.

8          THE COURT:  Thank you very much.  The parties

9    have previously stated that they didn't need a record.  We had

10   a brief off the record conversation about what we're going to

11   talk about today.  We're here today because the parties had

12   asked for a status conference so that the court could rule on

13   some documents that were the subject for the parties privilege

14   log contemporaneous or actually, recently the Texas Supreme

15   Court has issued a ruling on the mandamus that was out of this

16   court that dealt with some other issues, discoverability of

17   certain documents and objections that were made as to those

18   particular documents.  And the Supreme Court has made a ruling,

19   they denied the parties mandamus request and so what I want to

20   do is follow-up on those documents bearing that ruling would

21   have on the issues that were presented today.  The discovery

22   will be born out by the file and the court's record in this

23   case has been something that we've been working on for quite

24   some time in this matter.  I believe one of the last hearings

25   that we had, if not, the last hearing that we had, we had

1   discussed issues that the parties were trying to work through.

2   We took up the matter of certain documents that the parties

3   felt would be, expressly part of the mandamus, would be

4   subsumed by the issues that were being raised at the Texas

5   Supreme Court and therefore documents were separated and

6   withheld on the basis of the pending ruling before the Supreme

7   Court.   Now, that the Court is ruled, I will follow up and ask

8   the parties what the status of those documents were.   The

9   parties represented to me that all documents that were the

10  subject of the mandamus have been provided and that all the

11  documents that were withheld subsequently, based on the issues

12  raised in the mandamus, have been provided as well and that the

13  parties have undertaken an effort to streamline today's

14  hearing.   They are only looking for the court to rule on two

15  categories of documents, those that are protected by

16  attorney-client privilege, and they pointed to some extrinsic

17  evidence that they want to give me, i.e. affidavits from the

18  parties involved in those documents, the creation of those

19  documents.   And then there's documents that the parties claim

20  are outside of the geographic scope that's involved in this

21  case.

22  Just for the record, as I understand it, outside of the

23  geographic scope, this case involves a claim by a Jane Doe

24  against Uber Technologies for damages sustained as a result of

25  an alleged sexual assault in the State of Texas and we are

1    looking at and the parties are trying to discover information

2    about criteria used by Uber to conduct background checks,

3    information that Uber has to determine whether or not somebody

4    should continue to be a driver, things of that nature.  The

5    defendants objected saying that while what happened in Texas

6    may be relevant, and I say may because I don't think they want

7    to concede that entirely, but for purposes of summarizing the

8    argument, while what happened in Texas may be the subject of

9    the inquiry here, what happens in other countries' around the

10   world is different and it shouldn't be part of the discovery in

11   this case.  And so, what one of the categories is the category

12   of documents that are related to policies and procedures that

13   Uber has that it's outside of the geographic scope is the

14   argument of the defendant's i.e. outside of the relevant area

15   of inquiry, specifically it states other countries' policies

16   and procedures, is that accurate.

17              MS. WESTER:  It is, Your Honor.  And I would

18   just add one thing, that today's document that we're talking

19   about outside of the geographic scope.  They're actually

20   documents that are discussing a specific prior incident so a

21   specific complaint made by an Uber rider or driver but those

22   complaints and their resolution are either in a state other

23   than Texas or any country other than the United States.

24              THE COURT:  Thank you for that clarification.  I

25   wanted to go on the record and counsel wanted to go on the

1   report so we are on the same page with respect to any rulings

2   that the court may make today.  I'm looking at these two

3   categories of documents.  Counsel, anything you want to add?

4            MR. EVANS:  Yes, Judge Carter.  With respect

5   to, we'll call them the OSI's, other similar instances, outside

6   of Texas, they are embedded with safety presentation.  And so

7   what it looks like is, we'll go through a safety presentation

8   or some risk analysis presentation, and then the whole page is

9   blanked out or redacted and I can't tell what's in it.  Counsel

10   has represented to me that it might involve other similar

11   incidents of sexual assault in a different state or even in

12   England but I want to get inside the mind of the Uber to

13   understand what they're saying about these incidents and why.

14   That's why I think it's important.

15            THE COURT:  Well, here's my take.  If I

16   understand what you're saying, and I have not looked at it yet

17   but I want to kind of go out there and tell you what my

18   thoughts are.  If it's another incident but it's couched in

19   terms of a presentation that's been done to train other

20   employees or to train people at Uber, I'm inclined to say

21   that's something that I'm going to look at and I'll look at

22   what the contents are and make a determination.  It's something

23   they're using to train their employers.  I think it's part of

24   the presentation material to train employees and likely

25   discoverable and what we're looking at, again, there's a

1   difference between discoverability and admissibility.  I want

2   to deal with what's discoverable right now and I recognize that

3   one of the objections is the information is not likely to lead

4   to admissible evidence but at the same time, the law recognizes

5   that there is a distinction between that which is discoverable

6   and that which is admissible.  So to the extent that you're

7   evidentiary objection might be 403 that it's irrelevant, that

8   it's prejudicial, things like that, we'll take that up at the

9   time of trial and we'll look at what we're going to show the

10  finder of fact.  Okay, so anything else?

11              MR. EVANS:  Yes, Your Honor.  On the

12  attorney-client privilege issue, it might be best to go through

13  each document.  We only have ten total documents to look at.

14  We narrowed it from 50 to 10.

15              THE COURT:  Okay.

16              MR. EVANS:  But I'll tell you, some of them I

17  have very limited insight to these but based on their privilege

18  log and the individuals identified on that certain e-mail

19  chain, none of them are lawyers and so that would be my

20  question as to how you can claim privilege over that if there's

21  not a single lawyer on the document.  Where there might be a

22  lawyer on one of them, I'm not sure if there are, just having a

23  lawyer on a e-mail chain doesn't necessarily make it

24  attorney-client privilege.  Beyond that, it's really hard for

25  me to comment because I just simply can't see the contents of

1  any of the e-mails.  The other thing I'll say, too, is within

2  certain presentations, like, training presentation, if they

3  have a schizophrenic redaction-type approach where they will be

4  charged in a presentation that's a AC privilege in red bold at

5  the top of the chart or an exemplar, and then for whatever

6  reason that's not redacted, but the next page you'll have

7  something in there which essentially that's the same stamp but

8  it's redacted so I can't figure out why they're taking that

9  schizophrenic approach.  On one hand, you can call it a waiver.

10  I'm not even going to wade into those waters.  I think it's

11  better just to have the Court look at it.  You'll see some of

12  these presentations where when we get into them, I don't

13  understand how they necessarily claim privilege.  Let's assume

14  that it was attorney-client privilege at some point where, you

15  know, they are seeking legal advice, then you take that

16  information and you put it into a chart and you disseminated to

17  other employees for training purposes, where does it end?  And

18  so, I guess, we need to be able to look at the information.  If

19  the court does, maybe we can have a conversation about it then,

20  but to me, it just seems like there's this overuse of this AC

21  privilege log.

22              THE COURT:  Why don't we just wade into it?  Do

23  y'all have the ten documents that you would like me to look at

24  the attorney-client?

25              MS. WESTER:  I do, Your Honor.  May I approach?

1           THE COURT:  Please.

2           (Attorney approaches bench)

3           MS. WESTER:  I have two notebooks for Your

4  Honor, one, the un-redacted versions and one notebook is the

5  redacted documents and then Mr. Evans has a copy of the

6  redacted notebook so he can follow along as well.  And all the

7  applicable declarations that support the attorney-client

8  privilege are also in that notebook as well, Your Honor.

9           THE COURT:  Does your notebook have this Exhibit

10  A?

11           MR. FORD:  It does not.

12           THE COURT:  Counsel, this is interesting because

13  I have a affidavit that's executed, it looks like by a

14  DocuSign.  It's not sworn to before a notary and specifically

15  it's executed it's represented in blank County of State of

16  blank.  But it was executed in Cabos San Lucas County, State of

17  Mexico.  That's something I haven't seen before.

18           MR. FORD:  We try to keep things spicy for

19  Your Honor, no pun intended.  Apologies for any un-orthodox

20  presentation, Your Honor.  As you know, it can be in the form

21  of a declaration under the CPRC so we had to avail ourselves of

22  that and under the Uniform Electronic Transaction Act in Texas,

23  DocuSign actually is permissible.  But as you can see, the

24  declarant, they were indisposed at the time we needed this

25  declaration.

```
 1                  THE COURT:  Thank you very much.

 2                  MR. FORD:  Yes, Your Honor.

 3                  MR. EVANS:  Judge Carter, may I approach and

 4   show you a chart that might help you?

 5                  THE COURT:  Yes, sir.

 6                  (Attorney approaches bench)

 7                  MR. EVANS:  This is a chart.  This is where we

 8   started.  It lists everything that was originally before the

 9   court.  The items I have circled are part of the ten documents

10   that are at issue.

11                  THE COURT:  Okay.

12                  MS. WESTER:  Do you have another copy of that

13   chart because I don't --

14                  MR. EVANS:  I think I've got a copy.

15                  MS. WESTER:  But is it original exhibit A?

16                  MR. EVANS:  It is.

17                  MR. FORD:  Your Honor, if it pleases the Court.

18   There are about three or four documents that we appreciate the

19   legibility could be better.  There was a version that we

20   received from the client.  We literally this morning were able

21   to get them to send us what seems to be a more legible copy but

22   we literally received it, despite her request, this morning

23   while we were on our way over.  I'm happy to tender my Ipad to

24   the Court if it would aid the Court at all.

25                  THE COURT:  Thank you very much.  I may have
```

1    some follow-up on it.  I don't have my readers with me or my

2    magnified glass but I appreciate what you're saying.  If I need

3    to follow-up on it, I will.

4              MS. WESTER:  And Judge, those four documents on

5    the front I did include a blown up version behind the first

6    page.  But again, the legibility is not great in quality.

7              THE COURT:  I'm happy to know it's not me.

8    Thank you.  Okay.  I've gone through the documents that are

9    included in the binders that you handed to me.  I've got a few

10   questions based on the information that's been provided.  I've

11   got three declarations and given this declaration, the Baker

12   declaration and the Freigoval declaration, F-R-E-I-G-O-V-A-L .

13   All of those declarations, none of them appear to be from a

14   lawyer.  So none of the three parties that drafted or signed

15   theses declarations are actually attorneys, correct?

16             MS. WESTER:  That's correct, Judge.

17             THE COURT:  Okay.  And so as I go through this

18   information, start with the first four exhibits, these are the

19   slides that we talked about earlier that are hard to see.

20   These are presumably a part of a presentation that's what's

21   referenced in the Freigoval declaration.  I believe that -- let

22   me make sure we're talking about the right Bates label

23   documents.  The first four are based on geographic scope,

24   correct?

25             MS. WESTER:  Correct

1            THE COURT:  And not a attorney-client

2    privilege.

3            MS. WESTER:  Correct

4            THE COURT:  Okay.  So the first four, one, two,

5    three and four, I'm going to overrule the objection and order

6    that they be produced.  Now we're taking a look at the

7    attorney-client issue and I've got Freigoval.

8            MR. FORD:  Your guess is as good as mine.

9            THE COURT:  And so I've got two documents behind

10   that gentlemen's declaration.  I've got the Gibbens declaration

11   with two documents behind it and the Baker declaration with

12   another two tabs behind it.  And so this is interesting, right,

13   because I've got two slides and these have been completely

14   withheld.  These are not redacted and provided.  These have

15   been completely withheld pursuant to attorney-client privilege.

16   And counsel, what they're arguing to me is that these slides,

17   based on the declaration of Mr. Friegoval, these slides were

18   created to facilitate the rendition of professional legal

19   service, mainly to obtain legal advice from Uber's inhouse

20   counsel on the proposed safety policy.  The safety risk slide

21   contains advice and proposals from inhouse legal counsel to

22   other and Uber employees.  That, I don't know of as I sit here

23   today because all I've got are the slides.  And so we got a

24   witness that's testifying about what the contents of the slide

25   are and the purposes of this slide.  I don't know.  I don't

1   have any evidence other than this statement by the client that

2   what these slides were to be used for.  I do see

3   attorney-client privilege confidential legal advice to counsel

4   on the actual document but, I guess, is that something that

5   y'all added after the fact?

6               MS. WESTER:  It is not, Your Honor.  That slide

7   was actually created with those stamps on it.  And if I can

8   provide a little bit of additional context, what I'm gleaning

9   from the face of the document itself is discussing a proposed

10  change and so that would be where Uber would go to their legal

11  counsel and say, please advice us, everybody on board with that

12  change, what is your advise about that change, and that's

13  what's reflected at least in this slide that we're looking at.

14              THE COURT:  And that's my question, right, is

15  because what you just said is, suppose of what they do.  Some

16  people may not do it that way.  They may just have people at

17  the office that work on a policy and procedure and make a

18  determination and so I'm looking for where the communication to

19  the attorney is, where are the request for advice is, where the

20  attorney's advice has been added to or included in this

21  document?  Something to help me get to the answer that you're

22  arguing to the Court that is, the purpose of this was to come

23  up with a new policy and procedure and you're going to run it

24  by legal.  I don't see where we've done that.  I just see the

25  slide itself.

1          MS. WESTER:  And Judge, I think our argument

2     is based on from the face of the document itself, under the

3     portion that says legal, and so I don't believe there's

4     additional contact that would aid the Court in that

5     determination.  We're just going on the face of the document

6     and the declaration, Your Honor.

7          MR. EVANS:  Are we talking about the dates

8     ending in 480?

9          THE COURT:  6724.

10          MR. FORD:  The only other supplementation I

11    would offer, Your Honor, is of course, in Texas under Rule 503d

12    D as in Delta, the privilege extends to communications,

13    confidential communications were made for the purpose of

14    facilitating rendition of professional legal services when

15    those communications are and, I quote, between the clients

16    representatives or between the client and the client

17    representative and so that's often a nuance of the privileges.

18    It's tough to tease out admittedly but I would offer, as I

19    believe Ms. Wester is offering, that even though it is not

20    apparent from this document that a lawyer is copied on it, for

21    instance, the privilege under Texas law is broad enough and

22    often does encompass communications among the clients

23    representatives to the extent those communications are being

24    made to facilitate the rendition of professional legal

25    services.

1            THE COURT:  Thank you very much.

2            MR. FORD:  Yes, Your Honor.

3            MR. EVANS:  Judge, if I could offer something on

4    this 6724.  It appears to be part of a presentation called

5    Stand for Safety Executive Committee.  There was a presentation

6    at some executive level that's all I can glean from that.  The

7    presentation looks like it's an internal presentation updating

8    everybody on safety efforts, not necessarily like it's an

9    ongoing conversation with attorneys with Uber.  Their rendition

10   of legal services.

11           THE COURT:  Well, that's my question, right.

12   And so you're arguing it from the standpoint of not being able

13   to really see the documents but to the extent that you can see

14   a title or a context with other documents that have been

15   provided.  I need to know what the law is and I've been given a

16   generality, you know, it's something that people working at a

17   business are doing for the purpose of ultimately receiving

18   legal advice, then the respondents, what the defendants are

19   saying is privilege.  I want to come down on what the law says

20   specifically and go from there.  To the extent that I've got

21   kind of work in progress documents and there's ultimately some

22   final, this is what our policy and procedure is regarding X, Y

23   and Z.  I think that would be sufficient.  Do y'all have that?

24           MR. EVANS:  We have a number of policies that

25   have been produced that appear to reflect what their

1  deactivation criteria were in different years including 2018,

2  the year of our incident.

3              MS. WESTER:  And, Your Honor, looking at this

4  slide 6724, I don't know if this particular program or policy

5  was ever actually put into place or has a final version.  I can

6  tell from this slide that it's in the process and that's why

7  they're seeking legal advice.  I don't know that its the final

8  version of that program.

9              THE COURT:  I'm looking at some of the others

10  I'm more focused on at the moment.  I'm just going to rule that

11  I think that 6724, I'll sustain the privilege objection.  8719,

12  I'm overruling the privilege objection 36.

13              MS. WESTER:  And Your Honor, I can provide

14  additional context on the one ending in 420, if you'd like, as

15  well as 421, if that would be helpful.

16              THE COURT:  Go ahead.

17              MS. WESTER:  So Your Honor, both of these are

18  e-mail chains and to Mr. Evans' point, the e-mail at the very

19  top, the two in the front are not from legal counsel Uber.  But

20  if you look down and if you look at Bates stamp Davis Uber

21  underscore PR log 000420, the very bottom of that first page,

22  you see Maureen, she is an attorney with Uber and she is the

23  one that ends up stamping this conversation as privileged.  And

24  also, if you read the first sentence of her e-mail under that,

25  it's clear that she is providing legal advice and asking them

1   to keep her updated for the purposes of providing legal advice.

2   If you look to the next document which is Bates stamped Davis

3   Uber underscore PR log 00421, the top e-mail on that chain is

4   different but if you look down at the bottom, you see that same

5   e-mail from the same person and then right after that e-mail,

6   is consistent with the document ending in 420.

7           THE COURT:  420 and 421, I'm going to sustain

8   the privilege claim.

9           MR. EVANS:  If I could, I want to clear the

10  air on this.  I was only going off the individual identified on

11  the e-mail chain, on the privilege log that was produced, this

12  is not this lawyer that did not appear on the privilege log.  I

13  did not want to misrepresent to the Court.  From my

14  perspective, it was just Roger Kaiser and Catherine Gibbons.

15  This is the first time I learned there was a lawyer on that

16  chain.

17          THE COURT:  I appreciate that.  And frankly,

18  this happens frequently in terms of what I get asked to review

19  for privilege and it being documents from a larger business

20  that have a number of people on the chain.  I usually will see

21  the to/from, the universe of people that are CC'd on it like we

22  get to in some of these other documents, but in these you have

23  to go back down further as to who was on there.  But I'm going

24  to sustain privilege because I think that it's warranted based

25  on what I see and counsel taking up no issue with what you

1    said.  Now, we're to the remaining 262 and 480.

2                    MS. WESTER:  And Your Honor, I believe 262 is

3    going to be another one of those situations where Mr. Evans is

4    unaware that there was an attorney on the chain.  If you could

5    look at the fourth page of document ending in 262.  Next from

6    the bottom, it talks about looping in someone named Scott.

7    Scott is an attorney with Uber.  If you look at the sentence

8    before they loop in Scott, they discuss how the chain is

9    intended to give him information so that they can have a

10   discussion in person.  You'll also see where they identify

11   Scott as counsel in the Safety Department.

12                   THE COURT:  Thank you very much.  I want to ask

13   you a question about the people that are included on this

14   e-mail.  One of the questions that we've had during discovery

15   has been, who are the right people to talk to about what the

16   policy and procedures are and what's your contention?  One,

17   have you resolved that issue?  Do you know based on the

18   information you've provided?  I think that what I'm asking is,

19   if I agree that it's privileged based on the attorney being

20   included on this, you've got a number of other individuals that

21   are working over at Uber that are a part of trying to come up

22   with and formulate a policy and procedure related to the

23   subject matter that we're all here about today, not

24   withstanding the privilege aspect of it.  Is it your contention

25   that the individuals identified in this e-mail chain are

1  subject to privilege as well or have you provided that

2  information to counsel?

3           MS. WESTER:  Judge, I do believe that in this

4  chain e-mail they are subject to privilege because they would

5  be representative of Uber and they are providing information

6  for Scott to discuss in person later on and get legal advice

7  from.  As far as the specific policy in this e-mail, give me

8  just one moment, Your Honor, if you don't mind.  Your Honor, I

9  don't believe this e-mail is discussing its policy that's

10 relevant to this case.  I believe it's discussing a drug and

11 alcohol policy.  Okay.

12           THE COURT:  Counsel, I've cut you off.  I don't

13 want you to talk about what is contained in these documents.

14           MS. WESTER:  Thank you, Your Honor.

15           THE COURT:  Here's my take on it.  I think

16 that the content, the substance of this is privileged.  I think

17 that all of the people that are included in the discussion are

18 witnesses and have knowledge of relevant facts and their

19 identity should be disclosed in response to request for

20 disclosures with the statement in earnest about what their role

21 is and so if counsel wants to talk to them, counsel can go and

22 talk to them.  Now, here we've got, again, it looks like

23 something that the Court is going to sustain privilege on.  I

24 do believe that the identity of the parties that are involved

25 in the process should be provide in response to disclosures.

1           MS. WESTER:  And Your Honor, if I could just

2   kind of go down that road a little bit further.  I think it's

3   difficult for us to understand what policies would be

4   considered relevant to this case when you're talking about a

5   technology company that has obviously a different policy for

6   hundreds and if not thousands of issues.  And so if it's not a

7   policy directly related to sexual assault, sexual misconduct,

8   or any other facts that we agree made the basis of this

9   lawsuit, to what extent do we need to disclose persons that

10  make policies not involved in the incident in this case?

11          THE COURT:  I am going to order you to disclose

12  everybody as well.  I don't want to tell you now, here's a

13  haystack and then that is going to be our one person that's on

14  point with the issues involved in this case.  So, I guess, what

15  I'm suggesting is, and I think this is a good place to start,

16  right.  If they're involved in the discussion of making

17  policies and procedures that relate to conduct or in this

18  instance determining whether or not a driver should be allowed

19  to continue on as a driver, I would be hopeful that you

20  wouldn't have a whole different cast of characters depending on

21  which different allegation is made.  I've got some discussion

22  here about particular policy and some individuals that are part

23  of that discussion.  I would presume that those same

24  individuals would be part of the discussion involving other

25  conduct.  But that's something that counsel can, once

1    identified, can follow-up on either through a conference call

2    with you or y'all can agree that an individual didn't have

3    anything to do with a certain something that's of issue in this

4    case.  And they can decide whether or not they want to go

5    through and conduct any additional discovery.  But I want to

6    make sure that what we're not doing is saying, now that they're

7    privileged, all of the people that would have knowledge about,

8    in this instance, the standards that Uber uses to deal with the

9    sexual assault complaint and what they do following that

10   complaint, that those decision makers need to be identified so

11   that if counsel wants to go and have a follow-up discussion

12   they can.  That's my thought.  I mean, I would think that they

13   would be relevant, not withstanding the fact what the Court's

14   ruling is on the actual document itself.

15            MS. WESTER:  And Your Honor, I completely

16   understand the Court's position on that.  I will say from

17   Uber's position, opposing counsel has had a chance to depose

18   the Head of Global Women's Safety to discuss who are the people

19   that make these policies that make these decisions.  That

20   information has been made available elsewhere.  It's just, I

21   can't guarantee that the people in this specific e-mail were

22   disclosed as people that made decisions related to sexual

23   assault and not sure that there is that crossover that we're

24   all kind of presuming there would be.

25            MR. FORD:  And I would just supplement to

1  everything that Ms. Wester has said.  Our understanding, and I

2  welcome counsel if you have a contrary view, I do think this is

3  important that we get this straight.  Our understanding is that

4  you have now had, subject to your re-deposition of Mr. Kyser in

5  a matter of days, that you have had ample opportunity to depose

6  corporate reps, to depose a number of people in our safety

7  apparatus.  And I'm just being honest because I don't think

8  this was initially an issue for plaintiffs and we had several

9  hearings about it and you all have deposed and now are set to

10  re-depose a corporate rep among other reps in high places,

11  officials, regarding what the policies and protocols are.  I

12  just want to make sure because I'm concerned that this could

13  tilt away where, you know, obviously, we are going to whatever

14  you tell us to do, Your Honor, but if we supplement our

15  disclosures, are we talking about the scenario where we're

16  re-opening discovery and deposing a boatload of witnesses?

17  That's my only concern, Your Honor, particularly given the

18  preferential trial setting on November 6 and obviously all the

19  discovery that's transpired today.  I know it seems like

20  putting you on the spot and I'm honestly not trying to.

21          MR. EVANS:  I think disclosures with

22  specificity as to what the roles would do, will be helpful but

23  here's my frustration.  Way back in May of 2020, Judge Carter

24  -- this is before you guys were involved -- he ordered Uber to

25  identify people in charge of safety policies and procedures and

1    Uber said, it's only Roger Kyser.  That's the only person they

2    identified.  And then we had to go and get on LinkedIn and

3    literally find names of people who look like good candidates to

4    depose because Uber wasn't becoming forthcoming about it.  A

5    lot of these individuals we stumbled upon was because we got an

6    order from Judge Carter saying, yes, it looks like in all

7    probability they had something to do with this.  And so through

8    that process there was a lot of hit and miss when we deposed

9    people to the extent that Uber's liability expert had in her

10   handwritten note that we deposed a bunch of nobodies.  And it

11   was frustrating because you would hope that Uber at some point

12   would step in and say, hey, we're going to stop you from

13   spending all this time and effort.  And actually by who,

14   meaning?  So that's for me to say when we get these names

15   disclosed to us, we're not interested in repeating that

16   process.  But if there's something that comes up and I tell

17   you, Rob, it sounds like there's someone we need to depose,

18   we'll let you know.  We don't intend to drag this out.  If

19   someone comes up and they've got information we might need to

20   talk to them.

21              MR. FORD:  Okay.  And I feel and I appreciate

22   that.  I also appreciate you clarifying that we were not

23   involved during this time period.  I will say based on the

24   correspondences that I have seen dating back to that time and

25   correspondences that you and I have exchanged, I do know there

was an attempt on our part, and I say this for your benefit and
for the Court's benefit as well, there was an attempt on Uber's
part to invite y'all on number of occasions to start with a
corporate rep so that you could identify which persons in our
safety apparatus were actually responsible for crafting and
managing policies related to sexual assaults like the one made
the basis of this case.  That opportunity was never really
seized until much, much later down the road after Uber had to
try to find someone.  So I hear you.  And I'm sorry, Your
Honor, I don't want to waste Your Honor's time.  I started
getting a little concerned when I saw how this might play out
given the schedule that we have.  But I hear you, Your Honor.
We will absolutely supplement our disclosures as ordered by the
Court and we will do that with alacrity.  That's all we can say
to that.

        THE COURT:  Thank you.

        MR. FORD:  Yes, Your Honor.  And again, I
apologize for what ended up being a side bar.

        THE COURT:  So at this time, I find 262,
document ending in 262, I am going to sustain privilege.  Now,
480.

        MS. WESTER:  Your Honor, my understanding that
480 is a PowerPoint that the main topic of which is an overview
of policies and procedure conducted by inhouse counsel with
Uber and so the information contained in these slides would

1  have been the results of legal investigation and legal overview

2  and would be a communication with the client or client

3  represented for facilitating that legal service in that they

4  are making suggestions or giving the client their findings

5  based on the review they conducted.

6          THE COURT:  I'll sustain privileges as to 480.

7  Now, 480.  There's a couple of different instances where I've

8  got what's represented to be presentations, right, that are

9  being done either by counsel or to counsel or to the Board of

10  Directors to enable the parties to come up with something

11  that's obviously in conjunction with counsel.  If you've got

12  some exception to that let me know but as we sit here today

13  I've got their affidavits saying what the purpose of the

14  document was, and then the document itself.  And so the

15  evidence that I have suggest to me that the document would be

16  subject to privilege at this time.  If there's something you

17  want to bring to my attention feel free to do so and I'll take

18  a look at it.  I think that's everything.

19          MR. FORD:  Just one last housekeeping matter,

20  Your Honor.  We have entered into a Rule 11 to pass what would

21  have been this Friday's hearing on Uber's traditional motion

22  for summary judgment and Uber's motion for leave to designate

23  an expert.  We did file a note per the court staff's direction

24  requesting an off day docket at the court's indulgence.  An off

25  docket day, forgive me, Your Honor, not enough coffee this

1  morning.  At the Court's indulgence and subject to opposing

2  counsel's availability to have those motions heard.  We would

3  very much like to have that done in September, if it pleases

4  the Court, if the Court has availability to accommodate us.  We

5  know we are asking a lot and the Court has been so flexible.

6  We are here on an off docket day and that's not lost on us.

7                     THE COURT:  I'm happy to accommodate that

8  request.  Let me take a look at what I have available.  I have

9  a trial that's assigned out there right now and they're doing

10  some last minute work before we start pretrial tomorrow.  As I

11  sit here right now I don't know when we're calling the jury on

12  that matter.  We have some things to discuss at pretrial.  That

13  case is represented to be four to seven days, the other side is

14  four to seven weeks.  We're somewhere in the middle.  So we've

15  got some work to do that I'm concerned about interfering.

16  We've got a dead week that week of Labor Day as well.  You've

17  already got your response on summary judgment on file?

18                     MR. EVANS:  No, Your Honor.

19                     THE COURT:  Do it now.  Get your response on

20  file.  Go ahead and get with the clerks.  Set a date.

21                     THE COURT:  Do you want to take up the expert

22  issue?

23                     MR. FORD:  Yes, just to consolidate our steps,

24  Your Honor, if it pleases the Court.

25                     THE COURT:  That's fine.

1          MR. FORD:  And again, we do appreciate it, Your

2     Honor.  We know you and your staff are very busy and we thank

3     you for accommodating us.

4          THE COURT:  I'm happy to do so.  I want to get

5     through this case and get everybody ready.  All right.  So I've

6     got a summary judgment out there.  We've gotten through this

7     discovery for today.  We've got a request that we allow you to

8     late designate an expert.  If I do that, they're going to get a

9     deposition.

10          MR. FORD:  Absolutely, yes.

11          THE COURT:  That's my thought.  Frankly, we're

12     still 90 days out.

13          MR. EVANS:  And we have not filed a response to

14     that yet because it hasn't been set.  If they late designate

15     expert, we'll call one of our rebuttal experts on the same

16     topic.

17          THE COURT:  Sounds good to me.

18          MR. FORD:  Obviously we have no objection to

19     that.

20          THE COURT:  There we go.  Listen, we're far

21     enough out that I'm kind of the mindset to say, okay, I'll

22     allow a late designation or substitution subject to of course

23     there being able to depose that individual and if they want to

24     do a rebuttal expert in response to yours, that's fair game,

25     too.  That's where I am on that.  But, we still have a summary

1  judgment.  Have y'all gone and talk to a mediator yet?

2              THE COURT:  Okay.  Are those discussions

3  impasse or there's still some discussion?

4              MR. FORD:  An impasse was declared, Your

5  Honor, but I think there's still talking to be done here.  Take

6  that for what it's worth.

7              MR. EVANS:  The case is taking an interesting

8  turn where for the first time in my career I've someone make an

9  offer of settlement under that rule that was invoked by Uber

10  and we made our own counter under that same rule.  So I think

11  the parties probably want to try to get it done but --

12             THE COURT:  I recognize that certain things may

13  need to happen in terms of everyone making sure that they

14  understand where they are going to be at trial before the

15  parties can appreciate, fully appreciate what's involved in the

16  mediation process.  I'm happy to do any work that y'all need me

17  to do in order to try to facility everybody's understanding of

18  what the presentation at trial is going to look like so that

19  they can advise their client and sit down and see what they

20  want to do okay.  I will figure a summary judgment out there

21  that might be something y'all would like to get heard.  The

22  sooner y'all can do that probably the better.  Just reach out

23  to the Court's staff.  They may not be able to give you

24  tomorrow.  They will tell me a little bit about what our next

25  couple of weeks will be.

```
 1                    MR. FORD:  Maybe it's best that I probably check
 2     in tomorrow or the day after tomorrow.
 3                    THE COURT:  Yes, sir.  Let me give you these
 4     back.  I made my rulings on the issues.
 5                    MR. EVANS:  We have a corporate rep deposition,
 6     the second one next Friday, can we have the new production
 7     before that?  The un-redacted.
 8                    MS. WESTER:  Yes.
 9                    THE COURT:  And also get over in the next ten
10     days all the supplements of disclosures to include anybody else
11     that's knowledgeable with relevant facts and specifically those
12     people that have been part of the process and that way counsel
13     can ask the corporate rep any follow-up.  That may answer all
14     the questions and alleviate the need to conduct any further
15     discovery but I think he's entitled to that information.
16     Anything else that I can do for y'all today.
17                    MR. FORD:  No.  Thank you, Your Honor.
18                    MR. EVANS:  No.  Thank you.
19                    THE COURT:  Thank you.
20                    (Hearing concluded)
21
22
23
24
25
```

```
 1                    REPORTER'S CERTIFICATE
 2   THE STATE OF TEXAS )
 3   COUNTY OF HARRIS   )
 4              I, Elizabeth Cordova, Deputy Court Reporter in
 5   and for the 125th District Court of Harris County, State
 6   of Texas, do hereby certify that the above and foregoing
 7   contains a true and correct transcription of all
 8   portions of evidence and other proceedings requested in
 9   writing by counsel for the parties to be included in
10   this volume of the Reporter's Record in the above-styled
11   and numbered cause, all of which occurred in open court
12   or in chambers and were reported by me.
13              I further certify that this Reporter's Record of
14   the proceedings truly and correctly reflects the
15   Exhibits, if any, admitted by the respective parties.
16              I further certify that the total cost for the
17   preparation of this Reporter's Record is $266 and was paid by
18   Mr. Robert Ford.
19              WITNESS MY OFFICIAL HAND this 1st day of September,
20   2023.
21                              /s/Elizabeth Cordova
                                ELIZABETH CORDOVA, Texas CSR 9039
22                              Expiration Date: 12/31/24
                                Official Court Reporter
23                              125th District Court
                                201 Caroline
24                              Houston, Texas 77002
                                (281) 865-2723
25
```

# EXHIBIT C

E-SERVICE
702997
4/28/2023
8.10.49 PM
File & Serve Texas

**CAUSE NO. 2020-67824**

| | | |
|---|---|---|
| **JANE DOE** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| | § | |
| **UBER TECHNOLOGIES, INC.** | § | |
| **AND MANUEL ANTONIO** | § | |
| **PORTILLO** | § | **125TH JUDICIAL DISTRICT** |

## <u>DECLARATION OF MATTHEW BAKER</u>

1.      My name is Matthew Baker, I am over the age of 18, I am of sound mind and body, and I am capable of making this Declaration. I am offering this Declaration in the above-captioned cause in support of Defendant Uber Technologies, Inc.'s ("Uber") Response in Opposition to Plaintiff's Motion to Compel.

2.      I am a Senior Program Leader in Safety Support at Uber. I was first employed by Uber in July 2014 and have worked in safety support for the past seven years. In my position, I am responsible for ensuring that appropriate safety response procedures are in place. The facts set forth herein are based on my own personal knowledge and are true and correct.

3.      I am familiar with and have reviewed the unredacted document that has been Bates-Labelled for purposes of this litigation as **DAVISUBER_PRLOG000262** (the "Zero Tolerance Policy Email"). I am also familiar with the circumstances surrounding its creation and communication. The Zero Tolerance Policy Email was created on or about April 2017 to facilitate the rendition of professional legal services to Uber, namely, to obtain legal advice from Uber's in-house counsel on proposed policy changes. The Zero Tolerance Policy Email contains correspondence from Uber's in-house legal counsel to other Uber employees detailing their impressions, thoughts, and advice with respect to the proposed policy.

4.      I am familiar with and have reviewed the unredacted document that has been Bates-Labelled for purposes of this litigation as **DAVISUBER_PRLOG000480** (the "Proposed Policy Standard Report"). I am also familiar with the circumstances surrounding its creation and communication. The Proposed Policy Standard Report was created on or about August 2018 to facilitate

DocuSign Envelope ID: AA41331D-5F07-4A2B-A545-930B9F7E96B2

the rendition of professional legal services to Uber, namely, to obtain legal advice from Uber's in-house counsel on proposed policy changes. The Proposed Policy Standard Report contains findings and advice from Uber's in-house legal counsel's review of Uber's policies and procedures and was presented to other Uber employees.

*My name is Matthew Baker, my date of birth is* \_\_10/12/1986\_\_ *and my address is 1515 3rd St, San Francisco, CA 94158-2211.  I declare under penalty of perjury that the foregoing is true and correct.*

*Executed in* \_\_Cook\_\_ *County, State of* \_\_Illinois\_\_*, on the **28th** day of April, 2023.*

Matthew Baker

_____

Matthew Baker

# EXHIBIT D

**CAUSE NO. 2020-67824**

| JANE DOE | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| UBER TECHNOLOGIES, INC. | § | |
| AND MANUEL ANTONIO | § | |
| PORTILLO | § | 125TH JUDICIAL DISTRICT |

E-SERVICE
702997
4/28/2023
8:10:49 PM
File & Serve Texas™

## <u>DECLARATION OF CATHERINE GIBBONS</u>

1.      My name is Catherine Gibbons, I am over the age of 18, I am of sound mind and body, and I am capable of making this Declaration. I am offering this Declaration in the above-captioned cause in support of Defendant Uber Technologies, Inc.'s ("Uber") Response in Opposition to Plaintiff's Motion to Compel.

2.      I am Director and Global Head of Platform Safety, Identity, Risk & Payment, Community Operations at Uber. I was first employed by Uber in May 2018 and have worked in safety support for the past five years. In my position, I am responsible for ensuring that appropriate safety response procedures are in place. The facts set forth herein are true and correct and are based on my own personal knowledge.

3.      I am familiar with and have reviewed the unredacted document that has been Bates-Labelled for purposes of this litigation as **DAVISUBER_PRLOG000420** (the "Safety Policy Email"). I am also familiar with the circumstances surrounding its creation and communication. The Safety Policy Email was created in or about August 2019 to facilitate the rendition of professional legal services to Uber, namely, to obtain legal advice from Uber's in-house counsel on proposed safety policies. The Safety Policy Email contains correspondence from Uber's in-house legal counsel to other Uber employees detailing their impressions, thoughts, and advice with respect to the proposed policy.

*My name is Catherine Gibbons, my date of birth is* __08/02/1989__*, and my address is 1515 3rd St, San Francisco, CA 94158-2211. I declare under penalty of perjury that the foregoing is true and correct.*

*Executed in* __Cabo San Lucas__ *County, State of* __Mexicos__*, on the **27th** day of April, 2023.*

Catherine Gibbons
_____
Catherine Gibbons