RANDALL S. LUSKEY (SBN: 240915)
  rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
  ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
  cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
  akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT STATUS REPORT FOR JULY 18, 2024 HEARING**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**JOINT STATUS REPORT**

I. **PTO 5 AND DISCOVERY DEADLINES**

    a. **Custodians**

On July 8, 2024, Plaintiffs' MDL leadership and Uber reached an agreement that Uber will produce documents for 55 total custodians for both the JCCP and the MDL. These 55 custodians must include 9 for whom production has already begun in the JCCP and the MDL Plaintiffs and JCCP Plaintiffs will work together to identify the remaining 46 custodians. As the parties discussed during the July 8 in-person meet and confer, the MDL Plaintiffs are not required to include the 26 custodians previously agreed-upon between Uber and the JCCP Plaintiffs within the group of 55 custodians for whom Uber will produce documents in the MDL, other than 9 specifically-identified custodians for whom Uber has already begun to produce documents in the JCCP. As to the remaining 46 custodians, the MDL Plaintiffs and JCCP Plaintiffs will work together to identify those custodians. Per agreement between the MDL Plaintiffs and the JCCP Plaintiffs, Uber will produce documents for at least 29 custodians chosen by the MDL Plaintiffs (subject to Uber's objections and the Court's rulings on those objections). For the remaining 17, at the JCCP Plaintiffs' sole discretion, the JCCP Plaintiffs may determine whether these will be comprised from the group of 26 custodians originally agreed-upon in the JCCP or other custodians not previously agreed-upon in the JCCP or MDL. Uber reserves the right to object to inclusion of custodians not previously included in the list of 26. The Plaintiffs reserve the right to request additional custodians for good cause if the need arises as discovery progresses. The search terms that will be agreed-upon in the MDL will apply to Uber's production of documents from these 55 custodians in the MDL.

In order to avoid delay in moving toward a production date, the parties agreed to the following schedule moving forward:

    1.    July 10 or 11: Uber will provide metadata regarding the dates covered by the 26 priority custodians already chosen in the JCCP.

    2.    July 12 (or 15 at the latest), the Plaintiffs will provide a list of custodians.

    3.    July 26 (or July 29 if the Plaintiffs sent their list on July 15) Uber will provide a response with specific objections detailing their rationale. Uber will endeavor to provide metadata for

1  any custodians to whom it objects.

2      4.    The parties will meet and confer, including during a Zoom meeting on July 30, with
3  the goal of reaching an agreement and avoiding the need for briefing.

4      5.    By August 5, if the parties are not able to reach agreement on specific custodians, Uber
5  will provide its PTO 8 draft letter brief regarding any remaining disputes to plaintiffs.

6      6.    The parties would like to leave some flexibility to negotiate a slightly longer schedule
7  for responsive briefing than the schedule outlined in PTO 8 (depending on the number of custodians
8  Uber disputes) but the intention is to fully brief any disputes by August 16.

### b. Search Terms

The parties continue to negotiate on search terms and have currently reached agreement on approximately 1/3 of the terms being discussed. Plaintiffs continue to narrow their terms after receiving hit count reports and counter-proposals from Uber. The parties continue to refine these terms and will update the Court regarding any remaining disputes at the July 18, 2024 status conference.

### c. Non-Custodial Sources/Files

The parties dispute whether Uber has identified a complete list of non-custodial sources likely to contain discovery relevant to this litigation. On June 11, 2024, the Court heard from the parties regarding the status of non-custodial sources and files. Plaintiffs understood the Court to have ordered Uber to provide a complete list of non-custodial sources and files by June 17, 2024. (ECF No. 637 at 29:9-13; 29:25–30:2). Uber did not interpret the Court's statement to be an order to provide a complete list of its non-custodial information by such date. The parties continue to meet and confer on this issue.

On June 21, 2024, Uber identified the location of its company policies, and represented that Uber was still searching for, and would continue to search for, both earlier and newer policy versions. Uber has not produced an index or directory of Knowledge Base Policies. As Uber has previously explained, to the best of Uber's current knowledge, Uber maintains there does not appear to be an index listing the policies housed in Knowledge Base. Upon information and belief, Plaintiffs believe such an index should exist. On June 29, 2024, Uber produced a list of 114 policies and related documents identified and produced in the JCCP. Uber agreed to produce these documents to the MDL Plaintiffs, and endeavors to do so by July 15, 2024.

1  **Plaintiffs' Position**: On June 11, 2024, Plaintiffs believe the Court ordered Uber to provide Plaintiffs with its full and complete list of non-custodial sources, e.g., centralized files and structured databases, by June 17, 2024.  Despite Plaintiffs' numerous follow ups on June 17, 19, 20, and 28, Uber has not done so. On June 21, Uber emailed and identified generally where company policies are stored without details on the policies and two additional data sources with a reference to "other" databases that Uber has previously searched (Bliss, Zendesk, Jira, and PureCloud).

Uber should produce its full and complete list of non-custodial sources as ordered by the Court. Plaintiffs cannot meaningfully participate in discussions if Uber does not identify all relevant non-custodial sources, files and databases and what documents it is producing from these sources.

**Uber's Position**: Pursuant to its discovery obligations, Uber has disclosed its non-custodial data sources, including those under PTO 2. Further, Uber has also discussed non-custodial data sources in numerous meet-and-confers (beginning in November, 2023) related to data sources, as well as in numerous communications including a January 16, 2024 letter, which included exhibits, a February 22, 2024 letter, and emails dated March 15, 2024, March 20, 2024, March 23, 2024, March 27, 2024, and a supplement dated June 21, 2024. On June 21, 2024, Plaintiffs requested information about several tools they presumed were non-custodial data sources. Following an investigation, Uber determined those named tools are not data sources. They are web-based user interfaces used by Uber in the ordinary course of business to visualize data stored in locations Uber disclosed in the above communications. Uber further confirmed that data cannot be "pulled" from these web-based user interfaces.

### d. Uber's Responses to Plaintiffs' Written Discovery

On June 20, 2024, Uber served responses and objections to Plaintiffs' First Requests for Admission and Plaintiffs' First Set of Interrogatories. On June 27, 2024, Uber served responses and objections to Plaintiffs' First Requests for Production. The parties will meet and confer regarding Uber's objections but Plaintiffs anticipate seeking the Court's intervention to resolve various categories of objections. Production of documents specifically in response to Plaintiffs' Requests for Production has not commenced. Uber maintains that its productions of documents pursuant to PTO 2, PTO 5, and Defendant Fact Sheets (PTO 10) include documents that are also responsive to Plaintiffs'

Requests for Production, and Uber refers Plaintiffs to these documents in its responses. Plaintiffs' position is that Uber's productions responsive to PTO 2, PTO 5, and PTO 10 provide a minor fraction of the documents responsive to Plaintiffs' First Requests for Production.

## II.   DEFENDANT FACT SHEETS

In accordance with the Court's PTO 10 Order, Uber has produced, and continues to produce, Defendant Fact Sheets and associated documents through MDL Centrality. Beginning May 29, 2024, Uber also began producing the same in an ESI Protocol compliant format. For Defendant Fact Sheets served through MDL Centrality prior to May 29, 2024, Uber subsequently produced associated documents in an ESI Protocol compliant format.

Following the first production of Defendant Fact Sheets, Plaintiffs expressed concerns that some of the productions appeared incomplete, based on the absence of certain documents that Plaintiffs expected would exist. However, Uber has reassured Plaintiffs that the productions are not only complete (not rolling), but also a diligent search was conducted that complies with the Court's order. Uber has provided information related to specific concerns, and agreed to provide more contextual information to help Plaintiffs understand and evaluate what Plaintiffs believe to be an absence of certain types of documentation. At this point, the parties are engaged in an ongoing, productive meet-and-confer process.

## III.   DISCOVERY TO PLAINTIFFS

### a.   Plaintiff Fact Sheets

In accordance with PTO 10, Individual Plaintiffs began producing Plaintiff Fact Sheets through MDL Centrality to Defendants.  On June 21, 2024, Uber began serving deficiency notices on Individual Plaintiffs via MDL Centrality.

**Plaintiffs' Position**: Some Individual Plaintiffs began receiving alleged "deficiency" notices from Defendants over the weekend of June 21. Individual Plaintiffs have begun the meet and confer process regarding these notices, many of which appear to address clerical, non-substantive issues, such as a missing social security number on an authorization or contact information for an individual to whom Plaintiff disclosed the subject incident. As Plaintiffs continue to review notices regarding fact sheets from Defendants, the parties will continue to meet and confer as appropriate and, if global issues

are discovered, escalate them if appropriate.

**Uber's Position**: Individual Plaintiffs have submitted approximately 230 Plaintiff Fact Sheets in the MDL.  This number is not representative of every Plaintiff Fact Sheet that has been due, and Uber is meeting and conferring with the Individual Plaintiffs who have missed PTO 10's deadlines.

To date, Uber has served 192 Plaintiff Fact Sheet deficiency notices, which represents over 80% of Plaintiff Fact Sheets served.  Several of these deficiency notices concern cases where Plaintiffs have either left many questions in the Plaintiff Fact Sheet unanswered or offered responses that consist almost exclusively of some variant of "To be supplemented."  Pursuant to PTO 10, Plaintiffs have 30 days to cure the deficiencies in their Plaintiff Fact Sheets after being served with a deficiency notice. Should Plaintiffs fail to comply with the Court's Order, Uber is prepared to pursue the discovery to which it is entitled under PTO 10.

### b. Ride Receipts

Since the Court's order regarding ride receipt discovery, Plaintiffs continue to produce ride receipts. For Plaintiffs who are not in possession of a ride receipt, they continue to produce Ride Receipt Forms that provide information regarding the subject ride as required by the Court in an effort for Defendants to locate ride information or otherwise serve in place of a receipt if one cannot be located. Individual Plaintiff's counsel has also continued to meet and confer with Defendants in an effort to locate responsive information.

### c. Uber's Request to Take Written Discovery of Plaintiffs

The parties continue to disagree as to Uber's requests to take written discovery of Individual Plaintiffs.

**Plaintiffs' Position**: The Court recently denied Defendants' request to open discovery on all Plaintiffs beyond the Ride Information (PTO No. 5) and Plaintiff Fact Sheets (PTO No. 10) at the March Case Management Conference: "a substantial amount of the status conference was directed to a suggested schedule, essentially, of discovery, pretrial discovery; experts, you know, plaintiffs, this person, that person. I've got to tell you, that's all premature ... [O]ther than some voluntary [] we want to take Smith's deposition, everybody agrees, you take it. Fine.  I'll let you take it. But I don't want to unleash the horses at this point." (3/29/24 Tr. at 17:16-20.) Plaintiffs' position regarding further

1  premature Plaintiff discovery remains unchanged: until and unless there are bellwether cases selected for expanded discovery and trial, it would be unduly burdensome, unnecessary, and inefficient for the parties to shift focus away from the common discovery at this stage, which continues to require substantial resources to meet the Court's deadlines.  Indeed, Judge Breyer indicated he would visit the question of trial-case activation after it becomes clear how many of the former JCCP cases re-file in the MDL, and after he rules on the pending motions to dismiss. *See* 6/21/24 H'rg Tr. at 7:25-11:24.  Finally, Uber's request for interrogatories is really just a request for an expanded PFS, a request that the Court already evaluated and rejected. *See* ECF 348 (PTO 10).

**Uber's Position**:  Now that Plaintiff Fact Sheets have been submitted, the natural next step is for the parties to proceed with limited written discovery on Individual Plaintiffs.  Uber proposes that the parties meet and confer to discuss the contours of this additional discovery, but a logical first step is for each Individual Plaintiff to answer interrogatories.  Uber does not agree with Plaintiffs' position that no discovery on Individual Plaintiffs should occur beyond the requirements imposed by PTO Nos. 5 and 10.  While Individual Plaintiff discovery may have been premature at the time of the March Case Management Conference -- nearly four months ago and before any Plaintiff served a Plaintiff Fact Sheet -- the litigation is in a different stage now.  *Cf.* PTO 10 at 2 (discussing fact sheets as a tool to help "manage the litigation at this relatively early stage").  This additional written discovery would also assist the parties with evaluating the MDL case pool as a whole by exploring information not provided by the Plaintiff Fact Sheets such as further explanation regarding Plaintiffs' alleged damages and a summary of conversations Individual Plaintiffs may have had with third parties about the alleged incidents.

**PTO 5 PRODUCTION REDACTIONS**

Uber has produced 101,587 documents pursuant to PTO 5.  On May 31, 2024, Uber advised Plaintiffs that it has produced all information and documents pursuant to PTO 5.

**Plaintiffs' Position**: PTO 5 directed Uber to reproduce documents to this MDL that it previously produced (1) in response to government inquiries related to sexual assault; and (2) in other sexual assault litigations. Before producing those documents in this litigation, Uber made new redactions based on "scope" (including many documents redacted completely or nearly completely

1  except for confidentiality labels and/or column headings) and personal identifying information (PII)
2  (including names of drivers, phone numbers of Uber employees, names included in google news alert
3  e-mails) that were not included when Uber originally produced the documents to the respective
4  government entities or in the prior litigation. The parties have conferred numerous times regarding
5  these redactions and, following a final meet and confer on May 14, 2024, Uber provided Plaintiffs
6  with its final position on these topics. In addition, after numerous requests from Plaintiffs and long
7  after the documents were produced to Plaintiffs, Uber produced (on May 14) additional metadata that
8  it purports identifies each of the redacted documents. The metadata indicates that Uber redacted
9  approximately 8,800 documents, or nearly 9% of its entire PTO 5 production, prior to production in
10 this MDL. (315 documents were produced without metadata related to redactions.)

11         Uber's new redactions were not made or produced in a manner that allows Plaintiffs to
12 determine the particular reason why any document or any piece of information within a document was
13 redacted, nor has additional metadata remedied this issue. In other words, because Uber used the same
14 "black box" method for both PII and scope redactions and provided no metadata to differentiate
15 between the two in any particular document. Uber insists redactions made for PII or scope reasons are
16 self-evident either because the character of the redactions (complete sections of text) or because certain
17 other information such as column headings remains.  Not so -- Plaintiffs cannot determine whether a
18 particular redaction was made for either "scope" or PII (or both). In one circumstance this meant that
19 all sections of a memo to government regulators was redacted except for one paragraph.  In another
20 multi-sheet excel workbook, column headings were produced for all three sheets, but details were
21 redacted for all 14,055 records in all columns. Plaintiffs assert these redactions were made improperly.

22         Additionally, Uber's counsel confirmed on May 31, 2024 that PII redactions included, and
23 may continue to include, at least the names and all other identifying information of drivers who are
24 not known to be involved in any of the individual cases filed in this MDL. Specifically, Uber said it
25 "intends to adhere to the ESI Stipulation and the Court's orders for all non PTO-5 productions." On
26 May 16 Plaintiff requested anonymized driver identification numbers in place of this information. As
27 part of this submission, Uber states that it intends to reproduce documents without redaction to third
28 party driver names.  The parties anticipate requiring the Court's intervention on this issue.

1    **Uber's Position:** PTO 5 requires the production of two categories of documents: (1) documents produced "in connection with government investigations or inquiries … with respect to sexual assault, including attempted assaults" in § 6B; and (2) documents produced in "any other Uber sexual assault cases" in § 6C. ECF 175 at 3-4. As clarified by the Court's March 15 Order, PTO 5 requires the production of those documents that "concern (a) sexual assault, (b) the 'Safe Rides Fee,' or (c) any alleged systemic failures to warn or to address sexual assault due to inadequate safety measures, such as defective background checks." ECF 344.

In response to PTO 5, Uber redacted from the documents it re-produced: (1) privileged information, (2) "all personal identifying information ["PII"]" per ECF 321, and (3) information provided to regulators outside the scope of PTO 5 for documents produced under § 6B. Because PTO 5 requires producing documents that had been previously produced in other contexts, some documents inevitably contain redactions from when the documents were previously produced. That some of Uber's scope redactions are large does not alter the fact that such redactions are made for information that is beyond PTO 5's scope.

Plaintiffs' claim that they "cannot determine based on the information provided if redactions were made for either 'scope' or PII (or both)" is flatly incorrect. Uber provided detailed information on what redactions were applied to which production volumes, including electronic files that identify for Plaintiffs the precise pages on which redactions were made in the MDL for the vast majority of documents. All redactions made for privilege are consistent with PTO 14 and labeled "[REDACTED – PRIVILEGED]." PII redactions either state that they are for PII or they are obvious from the context of the document (e.g., where the numbers in a date of birth are redacted following the header "Date of Birth"). Uber further identified volumes where Uber applied scope redactions—documents produced in February and early March–long before any ESI Protocol existed.

Moreover, Plaintiffs' claim that Uber's "redactions were made improperly" is belied by the Court's Orders. PII redactions for third party plaintiffs and non-drivers are consistent with ECF 321: "When producing all documents, Uber shall redact any personal identifying information, including name, date of birth, social security number, and contact information (email address, mailing address, telephone number), as well as any other 'HIPAA-protected information.'" (ECF 321, at 13). The

1  Court's Order also provides further protection for independent drivers in the form of vehicle
2  registrations and inspection paperwork–documents with driver PII (e.g., addresses). The scope
3  redactions are also consistent with this Court's clarification to PTO 5, which orders Uber to produce
4  documents that "concern (a) sexual assault, (b) the 'Safe Rides Fee,' or (c) any alleged systemic
5  failures to warn or to address sexual assault due to inadequate safety measures, such as defective
6  background checks." ECF 344. Uber has not redacted information responsive to PTO 5. As to
7  documents produced under PTO 5 § 6B, Uber has applied block redactions to those productions for
8  information that is beyond PTO 5's scope. Regulators request information related to multiple topics,
9  usually tied to different complaints. For example, a regulator may ask about an incident where a driver
10 was using a different car than what was registered on Uber's platform and a different incident related
11 to sexual assault or sexual misconduct in the same letter. Such information not related to sexual assault
12 or misconduct is not required by the plain language of PTO 5.

13      Uber has only applied scope redactions to documents produced under PTO 5 § 6B. Uber
14 informed the Court and Plaintiffs it was doing this in February, explaining that certain excel
15 spreadsheets (originally provided to the CPUC) in Uber's February 28, 2024 production contain
16 redactions for items unrelated to sexual assault or sexual misconduct—like traffic violations. Feb. 29,
17 2024 Hearing Tr. 13:17 25 ("We're undertaking an effort to try to filter out some of the irrelevancy,
18 like traffic violations or what have you, amongst the data."). Those excel spreadsheets contain tens of
19 thousands of cells about traffic violations and other issues that are not related to sexual assault or
20 sexual misconduct; thus not within the plain language of PTO 5 or the subject of this case. All cells
21 with information about alleged sexual assault or sexual misconduct are provided, and those cells with
22 information unrelated to sexual assault or sexual misconduct have been redacted. This case is about
23 sexual assaults of riders, not improperly registered vehicles.

24      Finally, as Uber has previously informed Plaintiffs and the Court (ECF No. 588, p.12), Uber,
25 in a spirit of compromise, agreed to Plaintiffs' request to unredact independent drivers' names in PTO
26 5 productions. Upon resolution of the parties' disagreement on scope redactions, Uber will reproduce
27 PTO 5 productions with independent drivers' names unredacted.

28

### IV.  THIRD PARTY DISCOVERY

On June 21, 2024, the Court heard oral arguments for four of Plaintiffs' 30 subpoenas (specifically, those recipients whose compliance was due within the Northern District of California). Plaintiffs have continued to respond to a small number of inquiries from third parties but will apply the Court's guidance from the hearing and its forthcoming orders to any remaining disputes from other third parties. The Parties' June 7, 2024 joint letter (ECF No. 598, pp. 3-4) contains the Parties' respective suggestions for briefing and arguing the remaining subpoenas.

### VI.  COORDINATION WITH JCCP

The parties continue to meet and confer regarding efforts to coordinate discovery with JCCP proceedings as appropriate. Issues remain, however, as described below, with respect to the deposition protocol. The parties will be prepared to discuss this issue with the Court.

### V.  PENDING DISCOVERY DISPUTES

#### a.  Safety Data and Statistics:

On July 9, 2024, the Court issued its Order on the Parties Joint Discovery Letter Brief regarding safety data and statistics. (ECF 683). The Court did not compel Uber to produce documents and data related to all 800,000 plus incident reports and accompanying trip data reviewed by Uber in the course of preparing the two U.S. Safety Reports. The Court granted Plaintiffs' request for Uber to produce data and documents related to the sexual assault and sexual misconduct incident tickets from trips taken in 2017 that Uber internally audited but did not make available to the public, excluding for trips that occurred in Canada. With respect to incident tickets from 2018 through 2020, the Court ordered Uber to produce the data and documents related to incidents occurring in the United States associated with any of the twenty-one categories of sexual assault and sexual Misconduct from the Sexual Misconduct and Violence Taxonomy. The Court also ordered Uber to produce all underlying trip data (e.g., GPS information, trip date, and time, etc.) for all incident reports that Uber produces pursuant to the Order. The Parties' positions as to the timing and format of production are as follows:

**Plaintiffs' Position**: Uber should begin to produce responsive documents and data by July 19, 2024 and complete production by July 26, 2024. The underlying data should be produced in a useable format. The parties should meet and confer about the format of production.

1    **Uber's Position**:  Pursuant to this Order, Uber is investigating the technical requirements and time required to collect, process, review, and produce such documents, and will promptly update Plaintiffs and the Court with the start date for production.

### b. Clawback Dispute

On June 24, 2024, the parties submitted a joint discovery dispute letter regarding three documents produced by Uber over which it claims privilege and issued a notice of clawback. Argument has not yet been held.

### c. Deposition Protocol

On February 27, 2024, the parties submitted briefs in support of their respective proposed deposition protocols. (ECF Nos. 299, 300.) On March 29, 2024, the Court entered an Order addressing some of the parties' disputes, leaving others to be revisited at a later date. (ECF No. 371.) On May 2, 2024, the Court ordered the parties to submit updated proposals addressing unresolved issues flagged by the March 29 Order, indicating where the JCCP stands on each. (ECF No. 520.) On June 4, 2024, the parties submitted their respective proposed deposition protocols. (ECF Nos. 586, 587.)

**Plaintiffs' Position:** Plaintiffs propose that: (1) all Plaintiff-specific depositions (including individual Plaintiffs, healthcare providers, and Uber employees who may have played a role in an individual Plaintiff's case) should be covered by a separate Order; (2) the time limit for depositions should be fourteen (14) hours for the combined examination by MDL and JCCP Plaintiffs' counsel, subject to other agreement or order from the JCCP; (3) the number of depositions should be set at a later date once discovery is fully underway; (4) objections to authenticity of documents that were produced by a Defendant or third party in this litigation and bear a Bates stamp should be made within thirty (30) days after a document is used as an exhibit in a deposition; and (5) any "form" objections should be phrased as "Objection to form," with no further statement of the basis for the objection unless the questioning attorney so requests. As before, Plaintiffs submit that their proposed protocol is clearer, more efficient in the handling of authenticity and speaking objections, avoids prematurely limiting the number of corporate fact witness depositions, and avoids unduly limiting the duration of corporate fact witness depositions when there is combined examination by MDL and JCCP attorneys. Plaintiffs' lead counsel in the JCCP agree with Plaintiffs' leadership in the MDL on many of the issues

addressed in Plaintiffs' Proposed Deposition Protocol. But critically, there is an overarching hurdle that is preventing the MDL and JCCP from meaningfully coordinating with Uber on taking only a single deposition of a common witness. Judge Schulman has communicated that he has set aside the summer of 2025 for trial(s) in the JCCP litigation. Following that schedule, in September 2024, the JCCP will begin depositions of nine (9) initial custodians and will proceed thereafter with the remaining corporate witnesses to meet JCCP pretrial and trial deadlines. Ideally, the MDL and the JCCP should be able take these initial nine (9) custodian depositions in September, provided Uber timely produces complete custodial files and relevant documents in both Courts, as well as the documents for the post-September corporate witness depositions in a sufficient time thereafter. To meaningfully coordinate with the MDL and the JCCP, Uber must resolve outstanding discovery issues sufficiently in advance of the September deadlines or face the prospect of a second deposition in the MDL after Uber produces the additional documents based on, *inter alia*, the negotiated MDL search terms.

**Uber's Position**: Although the parties largely agree on most of the substance of the deposition protocol, several issues remain in dispute and the parties are awaiting the Court's resolution. Plaintiffs take the unreasonable position that they should be entitled to 100 depositions of Uber witnesses – which would not include third party witnesses, or depositions of Uber witnesses that are "plaintiff-specific" – as well the ability to depose each Uber witness for up to 14 hours. *See* Dkt. No. 587 at 4. Uber reasonably maintains that (1) the Court should set a limit of 30 depositions of Uber witnesses; (2) Plaintiffs should be limited to 7 hours per deposition for most witnesses (with an exception of 5 depositions of 10 hours, 3 depositions and 14 hours, and every 7 hours of 30(b)(6) testimony should equal 1 deposition against the cap); (3) the Court should not determine document authenticity in a deposition protocol; and (4) the parties should be allowed to state the basis of their objections on the record during depositions.

Uber also maintains that it is most efficient and in all of the parties' best interests to conduct a single deposition of all witnesses common to both the JCCP and the MDL. To that end, Uber will continue to work cooperatively and diligently with Plaintiffs in both the JCCP and MDL to ensure that discovery issues are resolved and documents are produced with sufficient lead time so that they can

conduct a single deposition of common witnesses.

DATED: July 11, 2024	Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

By: */s/ Khaldoun A. Baghdadi*
    Khaldoun A. Baghdadi

**WALKUP, MELODIA, KELLY & SCHOENBERGER**
650 California Street, 26th Floor
San Francisco, CA 94108
415-981-7210
kbaghdadi@walkuplawoffice.com

*Liaison for JCCP Plaintiffs, on behalf of JCCP Plaintiffs*

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Michael B. Shortnacy*
    MICHAEL B. SHORTNACY

MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (Admitted *Pro Hac Vice*)
    oot@shb.com
**SHOOK, HARDY & BACON L.L.P.**
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**FILER'S ATTESTATION**

I, Michael B. Shortnacy, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

DATED: July 11, 2024            By: */s/ Michael B. Shortnacy*
                                    Michael B. Shortnacy