UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | Case No. 23-md-03084-CRB (LJC)<br><br>**ORDER RE: THIRD-PARTY SUBPOENA DISPUTES** |

During the week of April 16, 2024, Plaintiffs served subpoenas for production of documents to thirty nonparties pursuant to Rule 45 of the Federal Rules of Civil Procedure. Dkt. No. 652 at 2.[1] The nonparties include various lobbying firms and law firms, plaintiff attorneys, contractors that have worked with Defendants Uber Technologies, Inc., Raiser, LLC, and Raiser-CA, LLC (collectively, Uber) in varying capacities, sexual violence advocacy organizations, and finally, Lyft, Inc. *Id.*

After considering the parties' proposals for handling disputes related to the nonparty subpoenas, the Court decided that it would consider an initial sample of disputes consisting of up to four subpoenas. Dkt. No. 574 at 1. The Court instructed the parties to only include subpoenas in the initial sample where the Northern District of California is both the issuing court and the court authorized to enforce the subpoena, pursuant to Rule 45(a)(2) and (d)(3).[2] *Id.* A briefing

---

[1] Unless specified otherwise, the Court refers to the page number in the header generated by the Court's e-filing system.
[2] The parties also filed a joint letter addressing "whether the Court, pursuant to the JPML order, has authority to resolve nonparty requests for relief from the subpoenas where compliance is required outside of" the Northern District of California "and any proposals for streamlining the presentation of such disputes." Dkt. 598. The Court will address the issues raised in that letter in a separate order.

schedule was set to allow the parties and nonparties to raise any objections to the subpoenas as well as any requests that the subpoenas be quashed or modified. *Id.*

The parties decided to include as part of the initial sample the subpoenas to Lyft, 7x7 Experience (7x7), Checkr, Inc., and attorney Sara Peters. On June 7, 2024, Uber filed letter briefs requesting that the subpoenas to 7x7, Checkr, and Ms. Peters be quashed or that the Court enter a protective order under Rule 26 barring their enforcement. Dkt. Nos. 610, 611, 612. That same day, Lyft filed a letter brief requesting that its subpoena be quashed. Dkt. No. 609. Uber filed a statement in support of Lyft's opposition to Plaintiffs' subpoena. Dkt. No. 613. Checkr also filed a letter brief, objecting to its subpoena requests and indicating that it was exercising its rights to stand on its objections pursuant to Rule 45(d)(2)(B). Dkt. No. 604. 7x7 did not file a letter brief, but Uber attached copies of the objections to the subpoena served by 7x7 on Plaintiffs and informed the Court that 7x7 is standing on its objections pursuant to Rule 45(d)(2)(B). *See* Dkt. Nos. 611 at 4, n. 6, 611-2, 611-3. Sara Peters likewise did not file a letter brief, but Plaintiffs confirmed in their letter brief that Ms. Peters does not object to the subpoena. Dkt. No. 635 at 1–2.

On June 14, 2024, Plaintiffs filed their letter briefs in support of all four subpoenas, requesting their enforcement. Dkt. Nos. 632, 633, 634, 635. On June 18, 2024, Checkr filed an administrative motion for leave to file a response to Plaintiffs' June 14, 2024 letter regarding the Checkr subpoena, which the Court granted. Dkt. Nos. 645, 650. The Court incorporated Exhibit A to the motion, Checkr's response letter, into the record. *Id.* The Court held a hearing on all four subpoenas and heard argument from Plaintiffs, Uber, and nonparties Lyft and Checkr on June 21, 2024. Dkt. No. 671. The Court ordered Plaintiffs at the hearing to file copies of the subpoenas served on 7x7 and Sara Peters, which were missing from the record. Plaintiffs filed the subpoenas later that day. Dkt. Nos. 654, 655.

Having considered both the parties' and nonparties' submissions and arguments, and all relevant authorities, the Court resolves the disputes as stated below.

I.     **LEGAL STANDARD**

Rule 45 governs motions to quash or modify a subpoena and provides that a court must

modify or quash a subpoena that, among other things, "fails to allow a reasonable time to comply," "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(i), (iii), (iv). "Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor [related to undue burden] when determining motions to quash a subpoena." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).

"The scope of discovery under Rule 45 is the same as under Rule 26(b)." *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA(JSC), 2017 WL 2929439, at *2 (N.D. Cal. July 7, 2017). That said, the "Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Maplebear Inc. v. Uber Techs., Inc.*, No. 21-mc-80007-SK, 2021 WL 1845535, at *1 (N.D. Cal. Mar. 23, 2021) (citation omitted); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing *United States v. C.B.S.*, 666 F.2d 364, 371–72 (9th Cir. 1982)). Rule 45 also establishes other procedures to challenge a subpoena in addition to bringing a motion to quash. A nonparty witness may serve the subpoenaing attorney a written objection. Fed. R. Civ. P. 45(d)(2)(B). In addition, a nonparty witness may move for a protective order. Fed. R. Civ. P. 26(c). Though the party who moves to quash the subpoena has the burden of persuasion, the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the case. *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 12-cv-080082-LHK (PSG), 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012).

To have standing to bring a claim in federal court, a party must have a personal stake in the outcome, and this threshold requirement also applies to discovery disputes. *Chevron Corp. v. Donziger*, No. 12-mc-80237-CRB (NC), 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013). "Generally speaking, a party to an action does not have standing to move to quash a subpoena served upon a nonparty unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *Glass Egg Digital Media v. Gameloft, Inc.*, No. 17CV04165MMCRMI, 2019 WL 2499710, at *5 (N.D. Cal. June 17, 2019). Because of this, "a

3

party's objection that a subpoena to a nonparty seeks irrelevant information, or that it would impose an undue burden, are not grounds on which that party can base standing to move to quash a subpoena when the nonparty has not objected." *Id.*

## II.   ANALYSIS

### A.   Uber Standing

As an initial matter, Plaintiffs challenge Uber's standing to object to all nonparty subpoenas based on relevance or burden. Dkt. No. 632 at 2–3, n.4. Uber argues that it has standing to move to quash the subpoenas to the extent a subpoena seeks Uber's confidential, proprietary, and non-public documents that the nonparty possess by virtue of its close business relationship with Uber, which is the case at least for 7x7 and Checkr. Dkt. Nos. 610 at 4, 611 at 3–4. The Court agrees with Uber that it has standing to seek to quash a subpoena where the subpoena calls for the production of Uber's confidential and proprietary information.[3] *See In re Ashworth, Inc. Sec. Litig.*, No. 99-CV-121, 2002 WL 33009225, at *2 (S.D. Cal. May 10, 2002) (finding that defendants had standing to move to quash third party subpoena where documents sought pertained to company's "confidential research, development and commercial information."). Nevertheless, as Plaintiffs point out, Uber does not have standing object to a nonparty subpoena on the basis that the subpoena "seeks irrelevant information, or that it would impose an undue burden… when the nonparty has not objected." *Glass Egg Digital Media*, 2019 WL 2499710, at *5; *see also Doe v. Kaiser Found. Health Plan, Inc.*, No. 23CV02865EMCPHK, 2023 WL 8714880, at *3 (N.D. Cal. Dec. 17, 2023).

Here, Uber also moves in the alternative for a protective order under Rule 26(c) as to the subpoenas to 7x7, Checkr, and Ms. Peters. Dkt. Nos. 610 at 4, 611 at 3–4, 612 at 1. "[A] party may seek to protect [its interests related to relevance and burden] through a protective order pursuant to Rule 26(c) regarding a subpoena issued to a nonparty if it believes its own interest is jeopardized by the discovery sought from that nonparty." *Glass Egg Digital Media*, 2019 WL

---

[3] Plaintiffs do not specifically challenge Uber's standing as to the subpoena to Ms. Peters, but the Court notes that the subpoena seeks documents which Uber designated as confidential pursuant to a protective order in another case where Uber was also a party. Dkt. No. 655 at 8.

4

2499710, at *5; *see also Wickersham v. Eastside Distilling, Inc.*, 692 F. Supp. 3d 1052, n.5 (D. Or. 2023) ("Whether under Rule 26 or Rule 45, both of which defendant relied on in the present motion, the court has the authority to quash or limit a subpoena, or otherwise to enter a protective order limiting discovery.").

Accordingly, the Court finds that Uber has standing to move to quash the subpoenas as to 7x7, Checkr, and Ms. Peters to the extent that its objections are based on Uber's interest in its confidential and proprietary information, and that Uber may also move for a protective order under Rule 26 barring their enforcement. The Court will entertain all of Uber's arguments as to the subpoenas, even where the nonparty has not moved to quash but instead stood on its objections, including those related to relevance and burden.

**B.     Lyft**

Lyft is one of Uber's most well-known competitors in the ride-sharing industry. Plaintiffs' subpoena to Lyft includes fifteen total requests for documents. Dkt. No. 609 at 19–20. As an initial matter, Lyft argues that the subpoena is premature in part because party discovery has just begun in the MDL, and Plaintiffs cannot show the documents they seek are unavailable from Uber. *Id.* at 2–3. This is also an argument that Uber makes in its letter in support of Lyft's opposition to Plaintiffs' subpoena. Dkt. No. 613. The Court declines to quash the Lyft subpoena in its entirety on these grounds because Rule 45 does not require that a requesting party exhaust party discovery before seeking discovery from a nonparty.[4] There is also "no general rule that plaintiffs cannot seek nonparty discovery of documents likely to be in defendants' possession." *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08-80129 SI, 2008 WL 3876142, at *3 (N.D. Cal. Aug. 18, 2008).

Uber's reliance on *Athalonz, LLC v. Under Armour, Inc.*, No. 23-MC-80324-LJC, 2024

---

[4] Lyft separately argues that the Court should quash Plaintiffs' subpoena because it only gave Lyft seven days to comply, which it argues is not a "reasonable time" under the caselaw to respond to a Rule 45 subpoena. Dkt. No. 609 at 2 (quoting *Sartor v. Cnty. of Riverside*, 2024 WL 1136333, at *4 (C.D. Cal. Feb. 15, 2024)). The Court rejects this argument because by the time Plaintiffs served the operative subpoena, May 17, 2024, Lyft had already served Plaintiffs with objections to the document requests and the parties had also met and conferred. Dkt. No. 613 at 2, n.2. Thus, there are no timeliness concerns here.

5

WL 628846 (N.D. Cal. Feb. 14, 2024) is misplaced. That miscellaneous action involved a factual dispute as to the extent of the involvement of nonparty Steph Curry, a four-time champion National Basketball Association (NBA) player, in designing and developing the allegedly infringing Under Armour shoes at issue in a patent case pending in the Eastern District of Texas. *Id.* at *5–7. It was "particularly appropriate" there for Athalonz to first obtain discovery from its party opponent because "[s]uch discovery [could] be expect to reveal" Curry's involvement. *Id.* at *7. Here, it is undisputed that Lyft has collaborated with Uber on several occasions as to passenger safety, and as to passenger sexual assault and the Industry Sharing Safety Program (ISSP) in particular, all of which are highly relevant to this MDL. On the other hand, Rule 45 requires that a "party or attorney responsible for issuing and serving a subpoena…take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). And the "Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Maplebear Inc.*, 2021 WL 1845535, at *1 (citation omitted). As such, the Court will consider the document requests in Plaintiffs' subpoena to Lyft with these principles in mind.[5]

Request No. 1 is for production of "all communications with Uber" and Request No. 2 is for production of "all documents exchanged with Uber." Dkt. No. 609 at 19. Lyft noted in its letter brief that Plaintiffs have agreed to drop both requests. *Id.* at 1, n.1. Plaintiffs confirmed this at the hearing. Dkt. No. 668 at 12. Thus, Lyft's motion to quash and Plaintiffs' request to enforce are **DENIED** as moot with respect to Requests Nos. 1 and 2.

Requests Nos. 3, 4, and 6 all relate to Lyft and Uber's the ISSP. Dkt. No. 609 at 19. Both companies collaborated to develop and administer the ISSP, launched in 2021. Dkt. No. 668 at 16–17. Through the ISSP, the companies share data about drivers reported for safety incidents, including incidents involving sexual assault. Dkt. No. 634 at 1, n.1. In Plaintiffs' view, facts

---

[5] Uber makes very similar arguments as to party versus nonparty discovery in its letter briefs as to the subpoenas to Checkr and 7x7. Dkt. Nos. 610 at 2–3, 611 at 2–3. Checkr also objects to its subpoena based on the subpoena being premature. Dkt. Nos. 604 at 2, 645-1 at 2–3. The Court likewise rejects these arguments for the reasons stated above. Both Checkr and 7x7 are third-party vendors which provide Uber services as to driver education, background checks, etc., issues which are also relevant to this MDL.

concerning the program bear on Uber's ability to track and investigate driver misconduct, and the company's knowledge of drivers' past misconduct. Dkt. No. 269, Master Long-Form Complaint (Master Compl.) ¶¶ 70–71, 312–316. Specifically, Request No. 3 is for all documents related to the ISSP, Request No. 4 is for all meeting minutes relating in any way to the ISSP, and Request No. 6 is for all data Lyft exchanged with Uber as part of the ISSP. Dkt. No. 609 at 19. At the hearing, Lyft did not contest Plaintiffs' relevancy argument as to the ISSP-related document requests. The Court also notes that though Lyft objects to Plaintiffs identifying the relevant time period for the subpoena as "January 1, 2009 through the present time" (*id.* at 4), Lyft's arguments as to burden based on the subpoena being overbroad do not apply here because the ISSP was launched in 2021. The time period as to preparation for the program's launch and its administration is likely to be much narrower than fifteen years. With respect to the contention that Plaintiffs' requests are premature, as noted above, Plaintiffs are not required to exhaust party discovery before seeking discovery from nonparties. For months, Plaintiffs have endeavored to collect discovery from Uber. Uber has yet to begin producing documents responsive to Plaintiffs' First Set of Requests for Production (Dkt. No. 693 at 4), though the deadline to complete substantial production is less than two months away. *See* Dkt. No. 175 at 4. Plaintiffs have taken reasonable steps to avoid imposing an undue burden or expense of Lyft. *See* Fed. R. Civ. P. 45(d)(1).

Thus, Lyft's request to quash Requests Nos. 3, 4 and 6 is **DENIED** and Plaintiffs' request to enforce compliance with these subpoena requests is **GRANTED.**

Requests Nos. 5, 11, 12, 13, and 14 all relate generally to collaborations between Lyft and Uber unrelated to the ISSP. Dkt. No. 609 at 19–20. Request No. 5 is for meeting minutes, transcripts, summaries, presentations, or reports relating to meetings between Lyft and Uber. *Id.* Requests Nos. 11 and 12 are for all documents and communications as to Lyft and Uber partnering, coordinating, exchanging data, and/or otherwise working together in any manner other than the ISSP. *Id.* Request No. 13 is for any contracts or agreements between Lyft and Uber. *Id.* Finally, Request No. 14 is for all documents related to payments made to Uber or from Uber, including invoices, purchase orders, contracts, or agreements. *Id.*

As a threshold matter, Plaintiffs are required to demonstrate how their subpoena requests are relevant to the claims at issue in this MDL. However, Requests Nos. 5, 11, 12, 13, and 14 are broadly worded, catch-all requests. These requests are designed to gather information related to many different types of collaborations that may exist between Uber and Lyft, but Plaintiffs have offered no persuasive argument as to why this broad, open-ended range of materials would be relevant to their claims. *See* Dkt. No. 634 at 3. Accordingly, Lyft's request to quash Request Nos. 5, 11, and 12 is **GRANTED** and Plaintiffs' request to enforce these requests is **DENIED**. Lyft's request to quash and Plaintiffs' request to enforce Request Nos. 13 and 14 is **GRANTED IN PART** and **DENIED IN PART**, in that Lyft is only required to produce information responsive to these two requests where the material relates to the ISSP.

Requests Nos. 7, 8, 9, and 10 all relate to Lyft's communications and dealings with federal and state regulators that relate to Uber, its drivers, or its riders.[6] Dkt. No. 609 at 19–20. Request Nos. 7 and 8 are for all communications and all documents exchanged between Lyft and any regulators as part of the ISSP. *Id.* Requests Nos. 9 and 10 are for all communications and all documents exchanged between Lyft and any regulators "related in any way to Uber, its Drivers, or its Riders." *Id.* All of Lyft's communications with federal or state regulators, as well as any documents and information Lyft shared with such regulators, are part of the public record and can be obtained through Freedom of Information Act (FOIA) requests, or through requests pursuant to each state's public records request laws. But there is no indication that Plaintiffs made any effort to collect the documents at issue in Requests Nos. 7, 8, 9 and 10 through these alternative avenues. Rule 45 requires that Plaintiffs, who issued the subpoena, "take reasonable steps to avoid imposing undue burden or expense" on Lyft. Fed. R. Civ. P. 45(d)(1). At the hearing, Plaintiffs argued that they would need to submit such requests most likely in all 50 states, which would be

---

[6] In its letter brief, in the context of its argument as to its communications with regulators, Lyft cited *Apple Inc. v. Match Grp., Inc.*, No. 21MC80184YGRTSH, 2021 WL 3727067 (N.D. Cal. Aug. 19, 2021) and mentioned in passing "potential First Amendment issues." Dkt. No. 609 at 3–4. It also argued that Lyft's lobbying materials did not bear on the "standard-of-care duty a transportation-network company owes," which is "set by statute or the common law." *Id.* At the hearing, additional arguments and legal authorities as to these issues were presented for the first time by all parties. Because the Court is quashing the requests for Lyft's communications with regulators on unrelated grounds, these issues are not addressed in this Order.

1   onerous. Dkt. No. 668 at 32. But Plaintiffs apparently did not make any public records requests
2   from even some jurisdictions before issuing the subpoena to Lyft. The Court **GRANTS** Lyft's
3   motion to quash and **DENIES** Plaintiffs' request to enforce Requests Nos. 9 and 10. In contrast,
4   because Request Nos. 7 and 8 relate to the ISSP, Plaintiffs have demonstrated the relevancy of
5   these requests, and they are more narrowly tailored to avoid undue burden, the Court **DENIES**
6   Lyft's request to quash and **GRANTS** Plaintiffs' request to enforce compliance with Request Nos.
7   7 and 8.

8   Finally, Request No. 15 is for all documents related to any fee-sharing or fee-splitting
9   arrangement to jointly pay for information, data, services, etc., including any invoices, purchase
10  orders, contracts, or agreements. Dkt. No. 609 at 20. In their letter seeking enforcement,
11  Plaintiffs indicated they were limiting this request to fee-sharing or fee-splitting involving Lyft
12  and Uber. Dkt. No. 634 at 2. For the reasons explained above, in relation to Requests Nos. 7, 8,
13  13 and 14, Lyft's request to quash and Plaintiffs' request to enforce Request No. 15 is
14  **GRANTED IN PART** and **DENIED IN PART**, in that Lyft is only required to produce
15  information responsive to this request where the materials relate to the ISSP, such as the
16  program's administration.

17      **C.**    **Checkr**
18  Checkr is a third-party vendor which provides Uber with criminal background checks,
19  motor vehicle reports, and other driver screening services through an online platform. Dkt. No.
20  610 at 3–4. Plaintiffs' subpoena to Checkr includes ten requests for documents, and these requests
21  initially covered the time period from January 1, 2009 to the present. Dkt. No. 604 at 11, 15–16.
22  Unsurprisingly, as Checkr began operations in 2014, Plaintiffs have since agreed to narrow the
23  time frame for its request to 2014 to the present. Checkr, however, asserts that Uber is a large
24  customer for the company, and therefore, Plaintiffs' subpoena will still reach voluminous
25  records—tens of thousands of background checks for drivers with no connection to this action,
26  internal administrative communications, personnel documents for Checkr employees involved
27  with the Uber account, internal financial results and reports, and generic marketing
28  communications. *Id.* at 3.

1    Regarding the relevancy of their requests, Plaintiffs point out that they have alleged several
2    negligence-based causes of action against Uber premised on its use of third-party vendors, such as
3    Checkr. Dkt. No. 633 at 1. Plaintiffs claim that the driver background checks performed for Uber
4    are inadequate to protect passengers' safety. *Id*. But Checkr contends that Plaintiffs' subpoena is
5    unnecessary because they can collect information related to these allegations from Uber. Dkt. No.
6    645-1 at 3. Even though Plaintiffs have raised concerns about Uber's document retention policies
7    (Dkt. No. 633 at 1), they have provided little specific information about identified gaps in Uber's
8    productions. Indeed, Uber has yet to begin its productions beyond producing records responsive
9    to this Court's pretrial orders and the defense fact sheets. Dkt. No. 693 at 4–5. Plaintiffs served
10   their First Requests for Production, consisting of 202 requests, on February 28, 2024. Dkt. No.
11   563 at 12.

12   Uber, for its part, objects to Plaintiffs' subpoena to Checkr because it seeks confidential,
13   proprietary, technical information belonging to Uber that Uber and Checkr have exchanged during
14   the course of their business relationship. Dkt. No. 610 at 1. Furthermore, Uber contends that
15   Plaintiffs' document requests are unnecessary and overbroad. *Id.* at 2-3. Plaintiffs, on the other
16   hand, argue that they are permitted to verify the accuracy of the information that Uber provides in
17   the course of the litigation. Dkt. No. 633 at 3. In *Viacom International, Inc. v. YouTube, Inc.*, one
18   case upon which Plaintiffs rely, the court explained that when a requesting party seeks responsive
19   documents from a nonparty which belong to a set of records that are not well-defined, i.e., whose
20   completeness is not readily verifiable, and which a party may have never possessed or may no
21   longer possess, requesting such information from the nonparty may be appropriate where the
22   information is relevant and the request is not unduly burdensome. No. 09-80129 SI, 2008 WL
23   3876142, at *2 (N.D. Cal. Aug. 18, 2008)

24   In light of this background, and the parties' arguments, the Court addresses Plaintiffs'
25   subpoena requests as follows. Request No. 1 is for production of "all communications with Uber"
26   and Request No. 2 is for production of "all documents exchanged with Uber." Dkt. No. 604 at 15.
27   Checkr objects to the fact that Plaintiffs agreed to drop similar requests for Lyft, but they have
28   refused to do so for Checkr. *Id.* at 2, n.2. Plaintiffs' request to enforce is **DENIED** as to Requests

Nos. 1 and 2 and the Court will **GRANT** Uber's request for a Rule 26(c) protective order to bar their enforcement. Even though Plaintiffs have narrowed the time frame for these requests, they are so broad that, on their face, Plaintiffs failed to demonstrate the relevancy of such a broad range of documents, and the requests unduly burden Checkr with far reaching ESI collection, processing, and production.

Next, the Court turns to Request No. 3. Request No. 3 asks for documents reflecting payments or contributions made by Uber to Checkr. *Id.* Plaintiffs' request to enforce compliance with Request No. 3 is **DENIED** without prejudice and Uber's request to bar its enforcement is **GRANTED**. The request, at this stage, is disproportionate to the needs of the case because it is not clear how the information is important to advancing Plaintiffs' claims or why Plaintiffs need this broad range of payment information.

Request No. 4 asks for "all documents relating to work CHECKR has performed on Uber's behalf or at Uber's request relating to sexual assault, sexual misconduct, passenger safety, driver education, or training for Uber employees." *Id.* at 15. Similarly, Request No. 6 asks for "all documents reflecting the scope of work CHECKR was retained to do for Uber." *Id.* at 16. As explained at the hearing, Plaintiffs' request that Checkr turn over "all documents" "relating to" or "related to" or "reflecting" a general topic create a significant risk of undue burden on a nonparty. Dkt. No. 668 at 9–10. Given the length of time Uber has partnered with Checkr, and the apparent scope of work Checkr did for Uber, Request Nos. 4 and 6 are overbroad. Plaintiffs offered Checkr a process whereby Uber could identify responsive information in its possession, and Checkr would produce only the documents uniquely in its possession either because Uber never had them, or no longer does. Dkt. No. 633 at 2. This process, however, would be burdensome to deploy given the range of documents that Plaintiffs have requested. At bottom, Plaintiffs must narrowly tailor their requests to a more limited set of records, such as documents that describe the scope of work and the particular tasks that Checkr was retained and contracted to perform which directly concern sexual assault and sexual misconduct, or projects that Uber requested Checkr undertake related to these issues, and protecting passengers from drivers who engaged in such conduct. Accordingly, Plaintiffs' request to enforce is **DENIED** and Uber's request to bar enforcement is **GRANTED** as

11

to Request Nos. 4 and 6.

Request No. 5 seeks documents relating to background checks, monitoring of background checks, or auditing of background checks Checkr performed for Uber, including but not limited to, any contracts, policies, procedures, correspondence, or payments. Dkt. No. 604 at 15–16. Similarly, Request No. 8 seeks all documents relating to the monitoring or auditing of driver background checks or criminal offenses by Checkr on Uber's behalf or at Uber's request. *Id.* at 16. The requests largely overlap and are overbroad, except to the extent they seek policies and procedures. Records that set forth and describe the policies and procedures regarding Checkr's handling, monitoring, and auditing of background checks and criminal offenses is not a well-defined set of records, certain records may not be in Uber's possession, and the records may bear on issues that are highly relevant to Plaintiffs' claims. Uber's willingness to produce its own records of policies and procedures related to background checks does not foreclose Plaintiffs' requests that Checkr produce its own records. The Court will **GRANT IN PART** Plaintiffs' request to enforce and **DENY IN PART** Uber's request to bar enforcement of the subpoena with regards to Request Nos. 5 and 8. Checkr shall produce policies and procedures regarding how Checkr conducted, monitored, and audited driver background checks and criminal offenses for Uber.

Request No. 7 seeks all documents related to recommendations from Checkr to Uber regarding how Uber rides can be made safer. *Id.* As explained above, requests that seek from a nonparty all documents related to a particular topic are likely to be burdensome. That said, records indicating Checkr's recommendations on how to curb the risk of sexual assaults and sexual misconduct would be a more narrowly tailored request. Furthermore, there is no reason to assume that this information was retained by Uber, if Uber declined to adopt recommendations made by Checkr. The Court **DENIES IN PART** Plaintiffs' request to enforce and **GRANTS IN PART** Uber's request to bar enforcement of compliance by Checkr with Request No. 7. Checkr is only required to produce documents that show any recommendation it has made to improve passenger safety with respect to the risk of sexual assault and sexual misconduct.

Through Request No. 9, Plaintiffs seek "all documents relating [sic] Uber's driver

deactivation policies or procedures, including agreements, contracts, and statements of work." *Id.* The Court finds that this request is overbroad except to the extent that Plaintiffs ask for "statements of work" and comparable records that describe Checkr's role in carrying out or facilitating Uber's driver deactivation policies and procedures. Such documents do not comprise a well-defined set of records, and they may not be in Uber's possession, though they may be relevant to Plaintiffs' claims. Accordingly, the Court **GRANTS IN PART** Plaintiffs' request to enforce Request No. 9 and **DENIES IN PART** Uber's request to bar its enforcement, as to such "statements of work" and comparable records.

Finally, the Court will **GRANT** Uber's request to bar enforcement and **DENY** Plaintiffs' request to enforce as to Request No. 10, which seeks all Checkr communications with Uber and/or its agents, employees, officers, or directors relating to fingerprinting drivers. Dkt. No. 604 at 16. This request poses similar problems to those that exist with respect to Requests Nos. 1 and 2. It is unreasonably broad as it would relate to all drivers who were fingerprinted, even drivers who have no history of complaints as to sexual assault or misconduct, or passenger safety.[7]

### D. Sara Peters

Sara Peters, who is a member of the Plaintiffs' Steering Committee, was counsel for the plaintiff in a prior case filed against Uber, *Doe v. Uber Technologies, Inc.*, 3:19-cv-03310-JSC (N.D. Cal.). Dkt. No. 612 at 1. *Doe* involved a former Uber driver with a history of sexually assaulting passengers during the time he operated as an authorized Uber driver. Dkt. No. 635 at 1 (citing *Doe v. Uber Techs., Inc.*, 2022 WL 4281363, at *1 (N.D. Cal. Sept. 15, 2022)). He was no longer an authorized Uber driver when the plaintiff mistakenly got into his vehicle, although he was still using an Uber decal. *Doe*, 2022 WL 4281363, at *1. The court in *Doe* eventually entered summary judgment in Uber's favor. *Id.* at *5.

---

[7] Because the Court has denied Plaintiffs' request to enforce several of their subpoena requests on relevance and burden grounds, Uber's motion to quash those requests on the grounds that they seek confidential, proprietary information is **DENIED** as moot. With regards to any information that the Court has ordered Checkr to produce, which does contain Uber's confidential, proprietary information, Uber's motion to quash is **DENIED** because the existing Protective Order in this MDL, as well as the procedure for sealing records filed on the court docket, are sufficient to protect any privacy interests that Uber may have in those records.

1    Plaintiffs' subpoena to Ms. Peters contains three requests for documents. Dkt. No. 655 at
2    8. They request all documents, videos and audio, and deposition transcripts that Ms. Peters
3    received in connection with litigation in which Uber was a party. *Id.* Plaintiffs clarified at the
4    hearing that the scope of their subpoena is limited only to documents, videos and audio, and
5    deposition transcripts from the *Doe* case. Dkt. No. 668 at 75.
6    Uber acknowledges that there might be some marginally relevant materials in the
7    discovery from the *Doe* case but argues that Plaintiffs should seek those materials through the
8    ordinary course of party discovery. Dkt. No. 612 at 3. Uber requests that the Court quash in full
9    the subpoena issued to Ms. Peters, or alternatively, that the Court grant a protective order that bars
10   compliance with the subpoena. *Id.*
11   Given that *Doe* is a prior sexual assault case involving Uber, documents produced by Uber
12   in *Doe* are likely to contain evidence relevant to this MDL, which is why the Court ordered Uber
13   to produce such documents as part of PTO No. 5. *See* Dkt. No. 175 at 4. Although PTO No. 5 did
14   not explicitly require production of videos, audio, or deposition transcripts, these materials are
15   also clearly relevant. The Court rejects Uber's argument that the documents requests in Ms.
16   Peters' subpoena are improper "cloned discovery requests." Dkt. No. 612 at 3. Discovery in *Doe*
17   involved testimony from Uber employees that concerned highly relevant topics, including Uber's
18   systems and tools to investigate safety incidents, policies for investigating reported safety
19   incidents, data compilation, auditing and collection practices, user awareness of safety tools, and
20   the usefulness of safety tools in the rider version of the Uber App. *See* Dkt. No. 612-1 at 33-40.
21   Uber has not met its burden of persuasion to establish that the discovery in *Doe* is irrelevant such
22   that the subpoena should be quashed in its entirety.
23   The Court also rejects Uber's argument that Plaintiffs are improperly trying to circumvent
24   party discovery and the protective order in *Doe*. Dkt. No. 612 at 1–2. Plaintiffs do not need to
25   formally request documents from *Doe* when PTO No. 5 already contemplated production by Uber
26   of key documents from any prior sexual assault cases. More importantly, Ms. Peters does not
27   object to the subpoena and makes no argument that producing the requested documents would be
28   unduly burdensome under Rule 26 or Rule 45. *See* Dkt. Nos. 635 at 1–2, 635-1. Uber argues that

14

the Court should quash the subpoena because the protective order in *Doe* prohibits the unauthorized disclosure of confidential information produced in that case. Dkt. No. 612 at 2. But nothing in the *Doe* protective order precludes any other court from ordering production of *Doe* documents in another litigation. *See Doe v. Uber Techs., Inc.*, 3:19-cv-03310-JSC, Dkt. No. 75 at 9. And the Court is satisfied that Uber's confidentiality concerns can be sufficiently addressed by the Protective Order and clawback procedures in this MDL as well as by the Court's procedures for filing confidential material under seal pursuant to Civil Local Rule 79-5. *See* Dkt. Nos. 176, 366.

Uber's motion to quash the subpoena as to Ms. Peters is **DENIED**, and the Court will **GRANT** Plaintiffs' request to enforce the subpoena in its entirety.

### E.    7x7 Experience

7x7 is a third-party vendor hired by Uber to provide instructor-led and webinar courses for Uber drivers, including to drivers who have had their accounts deactivated. Dkt. Nos. 611 at 1, 632 at 1. Plaintiffs' subpoena to 7x7 includes seven requests for documents. Dkt. No. 654 at 8–9. Plaintiffs request, *inter alia*, all communications and documents exchanged between 7x7 and Uber, all documents reflecting payments or contributions made by Uber to 7x7, all documents reflecting the scope of work 7x7 was retained to do for Uber, as well as all documents related to sexual assault or misconduct exchanged between 7x7 and Uber or its drivers, including training materials created by 7x7. *Id.*

7x7 did not file a letter brief as to Plaintiffs' subpoena. Uber attached to its letter brief objections to the subpoena served on Plaintiffs by 7x7, which are dated May 6, 2024, and May 22, 2024. Dkt. Nos. 611-2, 611-3. Uber also indicated that 7x7 is standing on its objections pursuant to Rule 45(d)(2)(B). *See* Dkt. No. 611 at 4, n. 6. However, at the hearing, Uber informed the Court that 7x7's in-house counsel, who handled drafting the objections to the subpoena and 7x7's meet and confer efforts with the parties, did not file a letter brief and did not attend the hearing because she is out of the country. Dkt. No. 668 at 64–65. In addition, Uber noted that 7x7's in-house counsel is in the process of trying to retain outside counsel as to Plaintiffs' subpoena. *Id.*

Given these developments, the Court will **DENY** without prejudice both Uber's motion to

quash or bar enforcement of the 7x7 subpoena and Plaintiffs' request to enforce the subpoena. Plaintiffs shall resume meet and confer efforts with 7x7 and its counsel as to 7x7's objections to the subpoena pursuant to Rule 45(d)(2)(B). If 7x7 continues to stand on its objections to Plaintiffs' subpoena after the additional meet and confer efforts, Plaintiffs may renew their request to enforce the subpoena, and 7x7 shall respond, if it seeks to oppose Plaintiffs request. The parties shall follow the briefing procedures outlined in this Court's Order Regarding Joint Administrative Motion for an Order Regarding the Parties' Submission of Discovery Disputes. Dkt. No. 574. If Plaintiffs renew their request, they may direct the Court to its letter filed at Dkt. No. 632, or they may file a new letter, if necessary, to address any new arguments made by 7x7. Plaintiffs' request to enforce the 7x7 subpoena shall be due no later than seven days after the parties' meet and confer efforts have concluded. 7x7 shall file its response letter within seven days of Plaintiffs' letter. Uber may also file a letter in response to Plaintiffs at the same time as 7x7 if it so chooses.

### III.   CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** Lyft's motion to quash and Plaintiffs' request to enforce the Lyft subpoena. The Court **GRANTS IN PART** and **DENIES IN PART** Uber's motion to issue a Rule 26 protective order barring enforcement of the Checkr subpoena and Plaintiffs' request to enforce the Checkr subpoena. Uber's motion to quash as to certain subpoena requests served on Checkr is **DENIED** as moot, while the remainder of Uber's motion to quash is **DENIED**. The Court **DENIES** Uber's motion to quash the subpoena to Ms. Peters and **GRANTS** Plaintiffs' motion to enforce the subpoena in its entirety.

//
//
//
//
//
//
//

Finally, the Court **DENIES** without prejudice Uber's motion to quash, or in the alternative, issue a Rule 26 protective order barring enforcement of the 7x7 subpoena and Plaintiffs' request to enforce the 7x7 subpoena. Plaintiffs, 7x7, and Uber shall resume meet and confer efforts as to the subpoena. If a dispute remains, then the parties shall follow the letter briefing procedures outlined above to bring the dispute to the Court for resolution.

**IT IS SO ORDERED.**

Dated: July 14, 2024

_____
LISA J. CISNEROS
United States Magistrate Judge