**Lieff
Cabraser
Heimann &
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
t  415.956.1000
f  415.956.1008

July 30, 2024

Sarah R. London
Partner
slondon@lchb.com

**VIA ECF**

Magistrate Judge Lisa J. Cisneros
Northern District of California
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge Cisneros:

Under PTO 8 (ECF 323), the parties respectfully submit this joint letter regarding Uber's redactions to documents produced under PTO 5.

**I.      Plaintiffs' Position**

PTO 5 required Uber to reproduce documents that it previously produced (1) in response to government inquiries related to sexual assault; and (2) in other sexual assault litigation. The idea behind PTO 5 was that these documents could be re-produced "off the shelf" with minimal effort. Instead of producing quickly, as PTO 5 expressly required, Uber delayed complete production until May 31. One reason for the delay was that Uber redacted approximately 8,800 documents (nearly 9% of the production). These redactions are purportedly based on relevance, scope, and the personal identifying information of drivers and others.

As the Court has noted, "redactions for relevance are highly disfavored in this District." ECF 698 at 1; *see also Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *3 (N.D. Cal. Feb. 7, 2018) ("In general, courts frown upon the practice of redacting irrelevant information from documents based on one party's unilateral assessment of relevance"); *Live Nation Merch., Inc. v. Miller*, 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) (finding that "unilateral redaction" of information based on relevance, privacy interests, and confidentiality concerns was "disfavored, and a protective order could ensure the confidentiality of sensitive information"); *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 12230960, at *1 (N.D. Cal. Mar. 15, 2013) (ordering defendants to produce "any documents that they have redacted for lack of relevance and/or responsiveness in their un-redacted form.").[1]

---

[1] Uber cites cases involving redactions only on the *public* docket, *e.g.*, *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003); redactions approved only after document-by-document *in camera* review, *e.g.*, *Yellow Rose Prods., Inc. v. Pandora Media, LLC*, 2024 WL 3225892, at *2 (C.D. Cal. Apr. 26, 2024); and cases

Uber's reliance on the terms of PTO 5 and this Court's order modifying it (ECF 321) is misplaced. First, Uber says that the redacted "information" is not "responsive to PTO 5."[2] But PTO 5 calls for the production of "documents," not "information." ECF 321 at 13; *see also Francisco v. Emeritus Corp.*, 2017 WL 11036693, at *2 (C.D. Cal. Sept. 5, 2017) ("[C]ourts view 'documents' as relevant or irrelevant; courts do not, as a matter of practice, weigh the relevance of particular pictures, graphics, paragraphs, sentences, or works."). Second, Uber says that the Court permitted redaction of "any personal identifying information," but the Court's order modifying PTO 5 was referring to PII concerning "non-party *plaintiffs*," not Uber drivers. ECF 321 at 10-11 (emphasis added). As the Court explained, general privacy concerns are addressed through the "Protective Order in this case," which "allows discovery materials to be designated 'Confidential' or 'Highly Confidential – Attorneys' Eyes Only,' including any personal identifying information of a non-party, or any other non-party information not otherwise available to the public." *Id.* at 11.

Uber's inappropriate redactions create real and significant practical problems. First, "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information." *Nguyen v. City of Garden Grove*, 2023 WL 2558536, at *8 (C.D. Cal. Feb. 2, 2023) (citation omitted). Here, Uber's extensive redactions prevent Plaintiffs from understanding many of the documents produced. For example, **Exhibit A** (1290) is a five-page document, with only a single Q&A left unredacted. It is impossible for Plaintiffs to understand the context of the document or even its nature. Or consider **Exhibit B** (48774), which is redacted in its entirety, reduced to 20 pages of black boxes.[3]

Second, "the unilateral editing of documents produced in discovery … leads to unnecessary discovery disputes and burdensome *in camera* inspections." *Live Nation*, 2014 WL 1877912, at *3 (citation omitted). Take **Exhibit C** (33294), an obviously relevant document about how Uber uses the JIRA system to escalate safety incidents. Starting on bates page 33323, Uber has redacted large chunks of the document. Plaintiffs do not know why, and will need to spend time (and probably the Court's time) figuring it out. This same problem applies to dozens and dozens of documents. *See, e.g.*, **Ex. D** (328853) (triage workflow, heavily redacted); **Ex. E** (34701) (sexual assault ticket, some permissible redacting of victim name, but also extensive unexplained scope redactions).

Third, permitting unilateral redactions requires accepting at face value Uber's determinations regarding the appropriate scope of those redactions. Plaintiffs cannot do this, and the Court should not either. *See Yellow Rose Prods.*, 2024 WL 661162, at *4 ("[A] party's selective redactions for relevancy breed suspicion."). For example, Uber's PII redactions were made

---

permitting redactions only where "a producing party discusses its desire to make such redactions with its adversary *in advance* of its production and *seeks advance permissions from the Court* to make them," *Kaiser Aluminum Warrick, LLC v. US Mag. LLC*, 2023 WL 2482933, at *2 (S.D.N.Y. Feb. 27, 2023 (emphasis in original). None is on-point here.

[2] Quotes in Plaintiffs' portion reflecting Uber's position come from ECF 693.

[3] This problem is particularly acute because, due to the fact that these are reproductions of previously-produced documents, they come with no metadata. So Plaintiffs are not able to consult, for example, related documents to discern the meaning of what Uber has produced. They are limited to the text of the documents themselves, text Uber has unilaterally obscured.

indiscriminately. Uber redacted its own employees' names, even though those people are potential witnesses. See **Ex. F** (4053). Indeed, it seems like Uber redacted any names anywhere in its productions, including names in Google news alerts. See **Ex. G** (55511). Uber also, at times, redacted internal driver ID numbers, even those by definition are not PII. See **Ex. H** (48716). In other documents, Uber's PII redactions are so extensive they conceal the entire document. See **Ex. I** (18830).

These are just examples. Plaintiffs could point to many more. At bottom, there is no justification for Plaintiffs and the Court to work through Uber's redactions, document by document, 8,800 times. This has already wasted significant time and resources, in part because Uber disclosed its redaction policies only after Plaintiffs raised concerns with specific documents. If Uber is permitted to redact beyond as authorized by the federal rules, it will only result in magnitudes more disputes and delay once Uber begins productions in response to Plaintiffs' RFPs.

Uber's letter briefing and declaration only prove the point: Uber expects Plaintiffs (and the Court) to determine, document-by-document, when redactions were applied; then, for new redactions, to evaluate, document-by-document, whether the redactions are over-broad, unjustified, or prejudicial. The convoluted, time-consuming, and arduous meet-and-confer process described in Uber's declaration underscores why courts do not permit unilateral redactions. Nothing in the federal rules, PTO 5, or the cases Uber cites authorizes such a burden.

The Court should order Uber to re-produce the 8,000 documents with redactions only (1) for privilege, properly logged and (2) of passenger PII as expressly permitted by ECF 321.

**II.     Uber's Position**

Uber's redactions complied with this Court's orders and applicable rules.  The Court should deny Plaintiffs' requested relief.

PTO 5 required Uber to re-produce documents previously produced: (1) "in connection with government investigations or inquiries … with respect to sexual assault, including attempted assaults" in § 6B; and (2) in "any other Uber sexual assault cases" in § 6C. ECF 175 at 3-4. Immediately, Uber began working to comply with the Court's Order. While Plaintiffs characterize PTO 5 productions as "off the shelf" discovery, Uber's compliance required substantial efforts to identify, locate, and pull prior productions across numerous cases and government investigations, spanning many years and involving many different in-house counsel (some former employees) and outside counsel.  See Shortnacy Declaration ¶ 3.  These efforts were done on a narrow timeline as the Court's March 1 Order (ECF 321) gave Uber just 7 days to fully comply with PTO 5. Plaintiffs incorrectly assert that "Uber delayed complete production until May 31." In reality, May 31 was the date Uber certified it had *entirely* completed PTO 5 productions after responding to Plaintiffs' numerous questions and follow up requests and completing its investigation.  The PTO 5 document productions were substantially complete by April 12. Because PTO 5 required producing documents that had been previously produced in prior cases and government inquiries, some documents inevitably contain redactions from when the documents were previously produced.  On numerous occasions, Uber explained to Plaintiffs the types of redactions contained

within each production volume and how to distinguish between pre-existing redactions from the underlying cases and those made in this litigation. *See* Shortnacy Declaration ¶¶ 7-15. In total, Uber produced 101,587 documents, totaling over 365,000 pages, pursuant to PTO 5.

Uber's PII redactions were entirely proper. Plaintiffs assert that PTO 5 and the Court's March 1, 2024 order clarifying PTO 5 (ECF 321) only allowed redactions for PII of "non-party plaintiffs." Not so. While non-party plaintiffs were a key focus of the redaction issues discussed in the Court's order, the Court mandated: "Uber shall redact *any* personal identifying information, including name, date of birth, social security number, and contact information (email address, mailing address, telephone number), as well as any other 'HIPAA-protected information.'" (ECF 321, p.13 (emphasis added))  Uber has done just that.

The Court's order requiring PII redactions is consistent with how other courts have addressed the issue. PII redactions are routine and permissible. For example, this Court has said that PII "may be properly redacted to protect confidentiality concerns." *Yellow Rose Prods., Inc. v. Pandora Media, LLC*, No. 2:22-CV-809-MCS-MAR, 2024 WL 3225892, at *2 (C.D. Cal. Apr. 26, 2024); *see also Stuart v. Cnty. of Riverside*, No. 522CV701SPGMAR, 2023 WL 4826231, at *3 (C.D. Cal. June 15, 2023) (approving PII redactions because the requesting party "provide[s] no reasoning for why [the PII was] necessary for them to litigate their claims"); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2024 WL 2925064, at *1 (S.D.N.Y. June 10, 2024) (approving redaction of customer names and other PII); *In re Google Digital Advert. Antitrust Litig.*, No. 21-CV-6841 (PKC), 2021 WL 4848758, at *5 (S.D.N.Y. Oct. 15, 2021) (approving the redaction of employee names and contact information); *cf. Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) (approvingly referring to the "redacti[on of] identifying information of third parties (e.g., their names, addresses, telephone numbers, and social security numbers)").

Plaintiffs take issue with Uber redacting PII of independent drivers. Uber made these redactions pursuant to the Court's order (requiring redaction of "any" personal information), but after conferring with Plaintiffs, and in the spirit of compromise, Uber agreed to un-redact drivers' names (ECF 588, p.12 and ECF 693, p.10). Upon resolution of this dispute, Uber will re-produce its PTO 5 productions with driver names un-redacted. This portion of Plaintiffs' requested relief is moot.

Plaintiffs also state that "Uber redacted its own employees' names, even though those people are potential witnesses," citing an exhibit with notes from Uber's Investigations Team (Ex. F). Plaintiffs' contention is inaccurate. The only redaction Uber made to Exhibit F in its PTO 5 production was to redact the rider's name–which is expressly permitted by the Court's March 1 Order. *See* Shortnacy Declaration ¶ 22. The Uber employee last names were already redacted in the underlying litigation—not in the PTO 5 production, and Uber has explained in the meet and confer process how to determine this. Moreover, in its PTO 5 productions, Uber has not redacted PII for Uber employees that appear in incident reports and correspondence related to sexual assault incidents. *See* Shortnacy Declaration ¶ 4.

In 22 documents that had previously been produced to government regulators, Uber's

redactions consisted of materials beyond the scope of PTO 5, such as information not related to sexual assault and/or misconduct, (e.g., motor vehicle reports). *See* Shortnacy Declaration ¶¶ 4-5. Uber did not make any scope redactions in its re-productions of documents from prior sexual assault and/or misconduct cases. Uber made no secret of this approach, stating, for example in the February 29 hearing that it was working on "filter[ing] out some of the irrelevancy, like traffic violations or what have you," in a document with "30,000 rows of different data points." Feb. 29, 2024 Hr'g Tr. at 13. PTO 5 required Uber to re-produce documents previously produced to regulators "in connection with government investigations or inquiries within the United States of Uber *with respect to sexual assault*…." (ECF 175, pp.3-4 (emphasis added)) Regulators routinely request information related to multiple topics, usually tied to different complaints, in the same request. As such, these document productions often included responsive information (which Uber did not redact), and information on unrelated, wholly irrelevant topics, such as traffic violations. Such information not related to sexual assault or misconduct is not required by the plain language of PTO 5. (*See* ECF 175, pp.3-4, requiring Uber to produce documents previously produced "to legislative, regulatory, or enforcement entities in connection with government investigations or inquiries within the United States of Uber *with respect to sexual assault*, including attempted assaults" (emphasis added))

Plaintiffs' arguments and case law regarding the general propriety of relevance redactions are inapposite. PTO 5 is no ordinary discovery process. It required wholesale reproduction of prior document productions in order to jump-start the discovery process in this MDL. Because some government investigations related to multiple topics—including discrete matters that are wholly beyond the scope of PTO 5 or relevance—scope redactions were uniquely appropriate for those productions. Moreover, the concern about relevance redactions in the cases cited by Plaintiffs is that redactions may obscure "other information that is useful in understanding the relevant portions of the agreement." *Live Nation Merch., Inc. v. Miller*, No. 13-CV-03936 CW (NC), 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014). Plaintiffs have not identified any documents in which Uber's PTO 5 scope redactions remove valuable context for relevant portions. Nor is there anything nefarious about a party "unilaterally" making scope redactions. After all, "allowing a party to determine whether a document is relevant is standard discovery protocol. Every party reviews its own documents for relevance and responsiveness…. There is no reason … that a party is less able to make good faith relevance determinations as to portions of documents than as to whole documents." *Kaiser Aluminum Warrick, LLC v. US Magnesium LLC*, No. 22CV3105JGKKHP, 2023 WL 2482933, at *2 (S.D.N.Y. Feb. 27, 2023) (stating that relevancy redactions can be appropriate in some cases); *see also, e.g.*, *Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, No. C 04-01827 MHP, 2009 WL 1457974, at *7 (N.D. Cal. May 26, 2009) (permitting the redaction of irrelevant business information); *In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (permitting redaction of materials related to seven irrelevant categories of information).

Finally, Plaintiffs emphasize the delay that Uber's PTO 5 redactions supposedly caused. The reality is Plaintiffs have not shown and cannot show any prejudice from Uber's redactions and their requested relief. Regardless, PTO 5 was intended to jump-start the discovery at the outset of this litigation and has served that purpose. Uber has completed its PTO 5 productions and provided

clear answers to Plaintiffs about its redactions. Plaintiffs' request to compel re-review and reproduction of PTO 5 documents would create needless delay while the parties should be focusing their time and resources on advancing the remaining discovery process. Uber respectfully asks the Court to deny Plaintiffs' request for relief.

                            Respectfully submitted,

                            Sarah R. London