1  RANDALL S. LUSKEY (SBN: 240915)
       rluskey@paulweiss.com
2  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
3  535 Mission Street, 24th Floor
   San Francisco, CA 94105
4  Telephone: (628) 432-5100
   Facsimile:  (628) 232-3101

5  ROBERT ATKINS (*Pro Hac Vice* admitted)
       ratkins@paulweiss.com
6  CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
       cgrusauskas@paulweiss.com
7  ANDREA M. KELLER (*Pro Hac Vice* admitted)
       akeller@paulweiss.com
8  **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
9  1285 Avenue of the Americas
   New York, NY 10019
10 Telephone: (212) 373-3000
   Facsimile:  (212) 757-3990

12 *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.;
13 RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| This Document Relates to:<br><br>ALL ACTIONS | **DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S LETTER BRIEF REGARDING UBER'S REDACTIONS IN PRODUCTIONS PURSUANT TO PRETRIAL ORDER NO. 5**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

DECLARATION OF MICHAEL B. SHORTNACY                                                                 Case No. 3:23-MD-3084-CRB

I, Michael B. Shortnacy having personal knowledge of the following state:

1. I am a partner at the law firm of Shook, Hardy & Bacon LLP, attorneys of record for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC, (collectively, "Uber"). I am a member in good standing of the Bars of the State of California, the State of New York, and the District of Columbia. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief, and if called to testify, I could competently do so.

2. I respectfully submit this declaration in support of Uber's Pretrial Order No. 8 (PTO 8) letter brief regarding Uber's redactions in productions made pursuant to Pretrial Order No. 5 (PTO 5).

3. Upon entry of PTO 5 on December 28, 2023, Uber immediately began working to comply with PTO 5. Uber's first production was made on January 4, 2024, just one week after PTO 5 was issued. Uber's compliance with PTO 5 required substantial efforts to identify, locate, and pull copies of document productions made (in some cases years ago, by law firms that are no longer retained by Uber since the conclusion of the respective matters those firms handled), across numerous cases and government inquiries, involving many different in-house counsel (some now-former Uber employees) and outside counsel. Uber made rolling productions in compliance with PTO 5 and, by April 12, had produced over 365,000 pages.

4. In its productions pursuant to PTO 5, Uber made limited redactions on the basis of: (1) legal privilege; (2) personal identifying information (PII) (e.g., names, birth dates, contact information, etc., of individuals, some of whom allege they are survivors of sexual assault or misconduct); and (3) information beyond the scope of PTO 5. In its PTO 5 productions, Uber redacted only 3 documents for privilege, 8,806 documents for PII, and 22 documents for information beyond the scope of PTO 5. In its PTO 5 productions, Uber has not redacted PII for Uber employees that appear in incident reports and correspondence related to sexual assault incidents.

5. Uber's scope redactions were only made to productions pursuant to § 6.B of PTO 5 (*see* ECF 175, p.4, requiring production of "documents Defendants produced to legislative, regulatory, or enforcement entities in connection with government investigations or inquiries within the United States of Uber with respect to sexual assault, including attempted assaults….") Uber did not make scope redactions to productions made pursuant to § 6.C of PTO 5 (*see id.*, p.4, requiring production

of "documents Defendants produced in any other Uber sexual assault cases…..") None of the information redacted for scope was related to sexual assault or any topic within the scope of PTO 5, but instead related to irrelevant topics such as traffic violations.

6. In the February 29, 2024 hearing on Uber's PTO 5 productions, Uber referenced its scope redactions, explaining to the Court that "[t]here are two large Excel files that contain data provided to the CPUC," which are "like 30,000 rows of different data points." Uber stated that it was working on "filter[ing] out some of the irrelevancy, like traffic violations or what have you, amongst the data."

7. Plaintiffs first raised the issue of Uber's redactions in its PTO 5 productions in a meet and confer on March 26. Plaintiffs stated that they could not distinguish between redactions made in the underlying litigations and inquiries and those redactions made for purposes of Uber's PTO 5 redactions in *this* litigation. Uber asked Plaintiffs for examples. Plaintiffs followed up with six exemplar documents on April 2. The same day, Uber responded by email, explaining to Plaintiffs how to distinguish between the types of redactions made in the prior litigation and those made in this litigation.

8. In an April 12 meet and confer, Uber explained to Plaintiffs that the redactions in the exemplars Plaintiffs sent on April 2 were redactions for PII.

9. On April 16, Plaintiffs followed up regarding the April 12 meet and confer with several detailed questions about Uber's PTO 5 productions. In this email, Plaintiffs provided an exemplar document they had discussed at the April 12 and demanded that Uber provide "full detail regarding Uber's current redaction practices." Uber responded on April 16, responding to a number of items in Plaintiffs' email, and stating that it would look into that exemplar. On April 26, Uber explained that this exemplar document contained scope redactions. It further explained that scope redactions were not made in re-productions from prior litigations.

10. On April 26, Uber provided Plaintiffs with an index with details for the contents of each PTO 5 production volume, including dates of production, Bates numbers of the documents in the production volume, and whether each volume contained PII redactions, scope redactions, or was produced with a computer file that would allow Plaintiffs' document review platform to easily query

or identify whether each document contained redactions made for purposes of this litigation (as opposed to redactions that were applied to the documents when the documents were previously produced in the underlying matters). A true and correct image of this index is below:

| Date(s) | Vol. | Bates Begin | Bates End | PII Redaction | Scope Redactions | .dat file |
|---|---|---|---|---|---|---|
| 1/4/2024 | 0 | UBER-MDL3084-000000001 | UBER-MDL3084-000000296 | No | No | No |
| 1/31/2024; 2/8/2024; 2/12/2024; 2/13/2024; 2/14/2024 | 1-5 | UBER-MDL3084-000000297 | UBER-MDL3084-000002841 | No | Yes | No |
| 2/22/2024 | 6 | UBER-MDL3084-000002842 | UBER-MDL3084-000003713 | No | No | No |
| 2/28/2024 | 7 | UBER-MDL3084-000003714 | UBER-MDL3084-000003858 | Yes | Yes | No |
| 3/8/2024 | 8 | UBER-MDL3084-000003859 | UBER-MDL3084-000004039 | Yes | Yes | Yes |
| 3/8/2024 | 9 | UBER-MDL3084-000004040 | UBER-MDL3084-000162697 | Yes | No | Yes |
| 3/8/2024 | 10 | UBER-MDL3084-000162698 | UBER-MDL3084-000162857 | Yes | Yes | Yes |
| 3/22/2024 | 11 | UBER-MDL3084-000162858 | UBER-MDL3084-000163620 | Yes | No | Yes |
| 4/2/2024 | 12 | UBER-MDL3084-000163621 | UBER-MDL3084-000283828 | Yes | No | Yes |
| 4/2/2024 | 13 | UBER-MDL3084-000283829 | UBER-MDL3084-000285237 | Yes | Yes | Yes |
| 4/12/2014 | 14 | UBER-MDL3084-000285238 | UBER-MDL3084-000365533 | Yes | No | Yes |
| 4/12/2024 | 15 | UBER-MDL3084-000365534 | UBER-MDL3084-000365794 | Yes | Yes | Yes |

11.  On May 10, the Uber met and conferred with Plaintiffs, at which Plaintiffs requested an explanation of how to distinguish between original redactions and those made in this litigation in

the first 7 volumes of documents produced pursuant to PTO 5, and how to determine whether documents were redacted for PII or scope.

12. On May 13, Uber sent Plaintiffs a computer "overlay" file (referred to in the chart above as a ".dat file") that Plaintiffs could load onto their document review platform and determine which specific documents were redacted in volumes 8-15 of Uber's PTO 5 productions. Uber further explained to Plaintiffs that volumes 1, 6, and 7 do not appear to have any redactions. Uber also explained that Volumes 2-5, which consist of documents provided to regulators contained some scope redactions. Uber also provided details on the nature of the redactions contained in each of the other production volumes. A true and correct image of Uber's explanation to Plaintiffs is below:

> 1. Volumes 1, 6, and 7 do not appear to have redactions, and thus we believe there is no dispute.
> 2. Volumes 2-5 consist of documents Uber previously submitted to regulators. The redactions on these documents are made by block boxes and Plaintiffs should presume the redactions were made for purposes of this litigation for content that is not within the scope of PTO 5: (a) sexual assault, (b) the "Safe Rides Fee," or (c) any alleged systemic failures to warn or to address sexual assault due to inadequate safety measures, such as defective background checks.
> 3. Volume 8 contains redactions for privilege which are expressly labeled. Those privilege redactions are also on the privilege log. Volume 8 also has black box redactions. For a spreadsheet, UBER-MDL3084-3882, the column of the spreadsheet containing driver's names (indicated clearly in the column header of the spreadsheet) is redacted for PII. The remaining redactions on the spreadsheet are on the basis of scope (i.e., redaction of other events outside of those relating to sexual assault and/or misconduct, such as driving without insurance, vehicle accidents, traffic violations, etc.).
> 4. Volumes 9 and 11 contain redactions for PII.
> 5. Volume 10 contains redactions for scope, as in Volume 8.
> 6. Volumes 12-15 contain redactions that are clearly labeled on their face to indicate whether a redaction was on the basis of PII. Other redactions within these volumes should be presumed to be scope redactions

13. On May 14, Uber met and conferred with Plaintiffs again on PTO 5 productions. Plaintiffs requested explanations on a number of issues, including revisiting issues that had been discussed at length over the preceding meet and conferrals: "all types of redactions made in any documents produced by Uber to date" and "the method by which Plaintiffs can determine what redaction applies to what document(s)."

14. On May 29, Uber met and conferred with Plaintiffs on PTO 5 productions.

15. On May 31, Uber provided responses to Plaintiffs' numerous questions posed on May 14 regarding a range of issues related to PTO 5. Uber informed Plaintiffs, "In the spirit of compromise, and given that the documents will be produced under the 'Highly-Confidential – Attorney eyes only' designation, Uber has agreed to unredact independent drivers' names in PTO 5 productions. Uber will continue to redact PII for third party plaintiffs and non-drivers as required by ECF 321." In addition

1  to agreeing to un-redact independent drivers' names, Uber explained that its redactions (in documents
2  previously produced to regulators) included some redactions of materials beyond the scope of PTO 5.
3  Uber provided the example of spreadsheets that "contain tens of thousands of cells about traffic
4  violations and other issues that are not related to sexual assault or sexual misconduct; thus not within
5  the plain language of PTO5," but clarified that "all those cells with information about alleged sexual
6  assault or sexual misconduct are provided [i.e., unredacted]."

7  16. The issue of Uber's redactions in its PTO 5 productions was discussed in the joint status
8  reports dated June 4 and July 11, 2024 (ECF 588, pp.10-13 and ECF 693, pp.7-10).

9  17. The document attached by Plaintiffs as Exhibit A to the PTO 8 letter brief (Bates
10 labeled as UBER-MDL3084-000001290), was produced pursuant to Section 6.B of PTO 5 on
11 February 12, 2024.  This document contains redactions for information provided to a regulator that is
12 beyond the scope of PTO 5, i.e., the redacted portions relate to issues other than sexual assault or
13 misconduct inquiries.  Uber told Plaintiffs by email on April 26 that this document contained scope
14 redactions.

15 18. The document attached by Plaintiffs as Exhibit B to the PTO 8 letter brief (Bates
16 labeled as UBER-MDL3084-000048774), was produced pursuant to Section 6.C of PTO 5 on March
17 8, 2024.  This document contains redactions for PII.  On April 26, Uber told Plaintiffs that production
18 Volume 9 (which includes this document) contains redactions for PII but <u>not</u> for scope.  On May 13,
19 Uber told Plaintiffs that the redactions in Volume 9 are for PII (and not, as Uber had previously
20 explained, including in the chart sent on April 26, *see* ¶ 10 above, for scope).

21 19. In the document attached by Plaintiffs as Exhibit C to the PTO 8 letter brief (Bates
22 labeled as UBER-MDL3084-000033294), the redactions identified by Plaintiffs beginning on page 30
23 (UBER-MDL3084-000033323) were made in the underlying litigation, not in this litigation.  The
24 document was therefore re-produced in the MDL in the form it was previously produced in the
25 underlying case, and thus compliant with PTO 5.

26 20. In the document attached by Plaintiffs as Exhibit D to the PTO 8 letter brief (Bates
27 labeled as UBER-MDL3084-000032853), the redactions identified by Plaintiffs were made in the
28

underlying litigation, not in this litigation. The document was therefore re-produced in the MDL in the form it was previously produced in the underlying case, and thus compliant with PTO 5.

21. In the document attached by Plaintiffs as Exhibit E to the PTO 8 letter brief (Bates labeled as UBER-MDL3084-000034701), the only redactions made by Uber as part of its PTO 5 production in the MDL were redactions to the rider's names, which appear in the form of white boxes that state "REDACTED" within the box. Uber has previously explained to Plaintiffs during the meet and confer process how to identify these "white box" redactions, and the type of information (i.e., personal identifying information) those boxes redact. The redactions in the Exhibit E document that appear as black boxes were made in the underlying production, as Uber has already explained to Plaintiffs during the meet and confer process. Uber has also explained to Plaintiffs that production Volume 9 (which includes this document) contains redactions for PII but not for scope.

22. In the document attached by Plaintiffs as Exhibit F to the PTO 8 letter brief (Bates labeled as UBER-MDL3084-000004053), the only redactions made by Uber as part of its PTO 5 production were redactions to the rider's names, which appear as white boxes that state "REDACTED." The redactions in that document that appear as black boxes were made in the underlying, prior case production. Uber has explained to Plaintiffs that production Volume 9 (which includes this document) contains redactions for PII but not for scope.

23. The document attached by Plaintiffs as Exhibit G to the PTO 8 letter brief (Bates labeled as UBER-MDL3084-000055511), was produced pursuant to Section 6.C of PTO 5 on March 8, 2024. No redactions were made to this document by Uber in its PTO 5 production in this litigation. The redactions in the document that appear as black-box redactions were made when the document was previously produced in the underlying, unrelated litigation.

24. In the document attached by Plaintiffs as Exhibit H to the PTO 8 letter brief (Bates labeled as UBER-MDL3084-000048716), the redactions made by Uber as part of its PTO 5 production were redactions to the independent drivers' ID numbers and emails, which appear as white boxes that state "REDACTED." The redactions in the document that appear as black-box redactions over email addresses on the first page of the document are redactions that were made when the document was

previously produced in the underlying, unrelated litigation. Uber has explained to Plaintiffs that production Volume 9 (which includes this document) contains redactions for PII but not for scope.

25. The document attached by Plaintiffs as Exhibit I to the PTO 8 letter brief (Bates labeled as UBER-MDL3084-000018830), is a photograph of the driver's license of an independent driver, which contains PII.  This document was re-produced in this litigation on March 8, 2024.  Uber has explained to Plaintiffs that production Volume 9 (which includes this document) contains redactions for PII but not for scope.  This document would be un-redacted as a part of Uber's proposed compromise to un-redact driver information.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 30, 2024.                    By: */s/ Michael B. Shortnacy*
                                                  Michael B. Shortnacy