UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | Case No. 23-md-03084-CRB   (LJC)<br><br>**ORDER REGARDING DISCOVERY LETTER BRIEF**<br><br>Re: Dkt. No. 761 |

The parties filed a Joint Discovery Letter (Dkt. No. 761) on July 30, 2024 addressing Uber's production of documents from prior litigation and government investigations as required by paragraphs 6.B and 6.C of Pretrial Order No. 5 (PTO 5, Dkt. No. 175), this Court's March 1, 2024 Order (the March 1st Order, Dkt. No. 321), and this Court's March 15, 2024 Order (the March 15th Order, Dkt. No. 344). The Court understands the parties' Joint Letter as primarily concerning: (1) redactions already in place at the time of Uber's productions in other litigation or investigations; (2) redactions of personal identifying information (PII) of Uber drivers and employees; and (3) redaction of information unrelated to sexual assault from documents produced in government investigations concerning multiple topics.

**A.     Prior Redactions**

For the purpose of its production under paragraphs 6.B and 6.C of PTO 5, Uber is not required to remove redactions that were in place at the time documents were produced in previous litigation or investigations. As the parties largely agree, the purpose of PTO 5 was "jump-start the discovery process," Dkt. No. 761 at 5 (Uber), with "documents [that] could be re-produced 'off the shelf' with minimal effort," *id.* at 1 (Plaintiffs). Requiring Uber to locate underlying source documents for its previous productions and reevaluate the redactions that it applied would undermine the intended efficiency of this production. If Plaintiffs believe unredacted versions of

specific documents are relevant to this litigation, they may request production of specific documents upon a showing of relevance.

To be clear, the Court's holding on the issue of prior redactions is limited to Uber's obligations under paragraphs 6.B and 6.C of PTO 5. If a given document would also be required to be produced in response to a request for production or any other disclosure obligation in this litigation, the fact that Uber redacted that document for use in a prior lawsuit or investigation does not in itself authorize Uber to apply the same redactions here.

### B.  Names and Other Personal Identifying Information

Uber's proposal to unredact its drivers' names (at least to the extent that those redactions had been applied for the purpose of this litigation[1]) is reasonable and consistent with the intent of the March 1st Order. *See* Dkt. No. 321 at 11. Based on the record, however, it appears that Uber may have also applied new redactions for the purpose of this production to obscure the names of its employees. *See* Dkt. No. 761-2, Shortnancy Decl. ¶ 4.[2] New redactions to names or other PII of Uber drivers and employees were not authorized by the Court.

Uber points to a single sentence in the conclusion of the Court's March 1st Order to justify new PII redactions that reach beyond non-party plaintiffs. Dkt. No. 761 at 4. This interpretation of the order is untenable. The third-party privacy concerns that the Court addressed were limited to the non-party plaintiffs from prior litigation. Dkt. 321 at 11 (". . . Uber shall redact personal information and any identifying information *of the non-party plaintiffs* . . . ." (emphasis added));

---

[1] It is not entirely clear from the record before the Court whether Uber's agreement to unredact drivers' names extended to redactions that were in place at the time documents were previously produced in other litigation or investigations. This Order is not intended to alter Uber's prior agreement as to that distinction. If Uber had already agreed to remove preexisting redactions of driver's names, it must do so. If Uber had only agreed to remove redactions that it added at the time of its PTO 5 production, then it need not remove preexisting redactions of drivers' names for the purpose of that production.

[2] Plaintiffs have accused Uber of applying new redactions to employee names and Uber has not offered a simple denial. Defense counsel Michael Shortnancy attested that Uber redacted PII from 8,806 documents. Shortnancy Decl. ¶ 4. Uber's portion of the Joint Discovery Letter states that, in one specific document, "employee last names were already redacted in the underlying litigation—not in the PTO 5 production." Dkt. No. 761 at 4. Mr. Shortnancy asserts that Uber "has not redacted PII for Uber employees that appear in incident reports and correspondence related to sexual assault incidents." Shortnancy Decl. ¶ 4. Mr. Shortnancy's declaration does not include any simple statement that Uber has not applied *any* new redactions to employee names in its PTO 5 production.

*see generally id.* at 8-11. In fact, Uber's ten-page brief in support of its request to modify PTO 5 included seventeen references to survivors of sexual assault and never asserted any specific concern for its employees' privacy. Dkt. 251.

Uber shall remove all new redactions applied to employee first and last names. Uber may maintain redactions to other PII besides drivers' and employees' names in this production of documents, without prejudice to Plaintiffs requesting unredacted versions of specific documents upon a showing of relevance.

### C. Redactions for Relevance

Uber's redactions of portions of documents based on relevance was not authorized by PTO 5 or this Court's previous orders. Even if portions of those documents did not relate to sexual assault, and the investigations for which they were produced concerned other issues in addition to sexual assault, the documents—in their entirety—still fall within the scope of "all *documents* Defendants produced . . . in connection with government investigations or inquiries within the United States of Uber with respect to sexual assault" as required by PTO 5, Dkt. No. 175 at 4 (emphasis added), and within the scope of this Court's previous Order to produce "*documents* [that] concern" sexual assault and related topics, Dkt. No. 344 at 2 (emphasis added).

Uber's efforts to segregate information it considered irrelevant within particular documents undermined the efficiency that paragraphs 6.B and 6.C of PTO 5 were intended to promote, and potentially deprived Plaintiffs of context to understand the remaining portions of those documents that Uber produced.[3] Although removing these redactions and reproducing documents will now impose an additional burden on Uber, that is a problem that Uber created for itself by unilaterally redacting documents for relevance without either an agreement from Plaintiffs or permission from the Court. Even the cases on which Uber relies as supporting potential propriety of such redactions acknowledge that "many courts do not permit relevancy redactions," and that "a party should request permission to make such redactions in advance of a production." *Kaiser Aluminum*

---

[3] Uber asserts that Plaintiffs have not identified specific instances where these redactions obscured relevant context, ECF No. 761 at 5, but without knowing what Uber redacted, it is not clear how Plaintiffs could determine whether it is helpful to understanding the remainder of a document.

3

*Warrick, LLC v. US Magnesium LLC*, No. 22-CV-3105 (JGK) (KHP), 2023 WL 2482933, at *2 (S.D.N.Y. Feb. 27, 2023); *see also Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, No. C 04-01827 MHP, 2009 WL 1457974, at *7 (N.D. Cal. May 26, 2009) (specifically granting leave for redactions); *In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (approving in part a proposed discovery protocol that would prospectively allow certain relevance redactions).  A passing reference to redactions for relevance during a court appearance does not amount to a request for permission to make such redactions.

As a general rule, Uber must produce documents without redactions for relevance.  If Uber believes that a limited number of exceptionally sensitive and entirely irrelevant portions of documents warrant special treatment, it must address those documents specifically with Plaintiffs and explain what relevance redactions Uber believes should be allowed.  The parties shall meet and confer and file a new joint letter addressing specific documents at issue if they cannot reach an agreement.

* * *

The parties shall meet and confer to determine whether this Order wholly resolves the issues presented in the July 30, 2024 Joint Discovery Letter, and whether they can agree on a date for production of documents as required by this Order.  The parties shall file either a stipulated deadline for production or a new joint letter addressing any remaining disputes no later than August 9, 2024.

**IT IS SO ORDERED.**

Dated: 8/1/2024

LISA J. CISNEROS
United States Magistrate Judge

4