WARREN METLITZKY (CA Bar No. 220758)
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: wmetlitzky@conmetkane.com

BETH A. STEWART (*pro hac vice*)
DAVID RANDALL J. RISKIN (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave., S.W.
Washington, DC 20024
Tel:    (202) 434-5000
Fax:    (202) 434-5029
Email:  bstewart@wc.com
Email:  driskin@wc.com

*Attorneys for Lyft, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC)<br><br>**JOINT REPORT ON NON-PARTY DISCOVERY FROM LYFT, INC.** |

# LYFT, INC.'S STATEMENT

Consistent with the Court's July 29, 2024 order, Lyft submits this brief report (i) describing the status of Plaintiffs' demands for documents from Lyft and (ii) identifying a matter Lyft would like to raise with the Court at the August 8, 2024 hearing.

## I. STATUS OF DISCOVERY FROM NON-PARTY LYFT

As Lyft details below, there are issues relating to Plaintiffs' document demands for which Lyft is seeking the Court's guidance. Consistent with there being open matters, the Court, on the parties' stipulation, continued the deadline for appealing the subpoena order (ECF 751). The parties thus have not discussed the subpoena to Lyft since the subpoena order (which discussion, of course, will include addressing the scope of any production).

## II. ISSUES LYFT WOULD LIKE TO ADDRESS WITH THE COURT

The Court's subpoena order requires Lyft to produce documents relating to the Industry Sharing Safety Program (and it denied Plaintiffs' demands for other materials). As the parties began outlining during the hearing, such documents fall into three general categories: (i) communications between Uber and Lyft, (ii) communications with regulators, and (iii) other Lyft communications or documents. Lyft is not raising below any issues with Industry Sharing Safety Program documents from categories (i) and (ii). (These categories encompass material in Uber's possession as well as Lyft's, and the Court has observed that cost shifting may be warranted for expenses incurred for producing documents in Uber's possession. (Tr. (July 18, 2018), at 33:3–35:15.) Lyft will address this issue with Plaintiffs and Uber in the first instance.)

Category (iii) material—that is, other Lyft communications and documents relating to the Industry Sharing Safety Program (such as how Lyft administers the program at the company)—presents several issues on which guidance from the Court is warranted, including because there are unique relevance and burden arguments accompanying it.

*First*, Plaintiffs have not established the relevance of category (iii) documents—which is their burden. *See Pate v. Pacific Harbor Line, Inc.*, 2023 WL 2629867, at *5 (C.D. Cal. Feb. 6, 2023) (demanding "a stronger-than-usual showing of relevance" for non-party subpoenas); *Pizana v. Sanmedica Int'l, LLC*, 2021 WL 1060440, at *3 (E.D. Cal. Mar. 18, 2021) ("strong showing of

relevance required for non-party discovery" (quotation omitted)). At the hearing, Plaintiffs (for the first time) argued that such documents could show "the way in which the [Industry Sharing Safety Program] was designed; what information they agreed to share; [and] what categories of offenses were going to qualify for sharing of that information." (Tr. (June 21, 2024), at 14:2–5.) But even assuming information of this type is relevant to the suit against Uber, it does not demonstrate why production of category (iii) material is warranted. After all, the details Plaintiffs identified would be available either in Uber's internal communications, or communications between Uber and Lyft (*i.e.*, category (i), which the Court already has ordered Lyft to produce). Lyft is not a party to this action, and its own considerations relating to the Industry Safety Sharing Program cannot inform any of the claims Plaintiffs have against Uber—a point the Court made at the hearing. (June 21 Tr. 14:17–19 ("[T]wo Lyft employees who are sharing their views about what the ISSP looks like—it doesn't speak to what Uber knew, thought, or did.").)

Plaintiffs also offered that "information about specific incidents … could be relevant to the number of sexual assaults that took place on Ubers." (June 21 Tr. 14:5–7.) How this could be the case, Plaintiffs did not say. And it makes little sense logically—alleged incidents on the Lyft platform cannot inform "the number of sexual assaults that took place on Ubers." In all events, this theory appears to rest on a misapprehension about the Industry Safety Sharing Program. Lyft and Uber do not share information directly through it:

> The information sharing will be administered by HireRight, an industry-leading workforce solutions provider that will collect and manage the data from individual companies, match and share information between the companies, and ensure that each company is abiding by best practices and industry standards informed by sexual violence prevention experts and the NSVRC taxonomy.[1]

What does this mean? If Plaintiffs are interested in what Uber knew or should have known through the Industry Safety Sharing Program about drivers on its platform, Lyft would not have that information.

Plaintiffs have not carried their burden of demonstrating the relevance of category (iii)

---

[1] https://www.lyft.com/blog/posts/lyft-and-uber-launch-industry-sharing-safety-program-in-the-us.

1   material to their claims. The Court should confirm that documents in this category are not
2   discoverable (which is consistent with the fact the Court made no specific finding to this effect[2]). As
3   Lyft noted, Plaintiffs' demand for Lyft-specific (category (iii)) documents raises motive concerns.
4   Plaintiffs' counsel also has brought actions against Lyft, and one reasonably can ask if the subpoena
5   is an effort to accelerate discovery in those cases, or to identify potential clients.

6       *Second*, even were there some relevance to category (iii) documents, the burden of their
7   production far outweighs their benefit to Plaintiffs in a suit against a different entity—for multiple
8   reasons. For one thing, production would entail turning over confidential Lyft material to a direct
9   competitor, given that even the highest classification under the protective order would permit Uber
10  employees to access it. *See generally Natera, Inc. v. CareDx, Inc.*, 2023 WL 3763808, at *6 (N.D.
11  Cal. May 31, 2023).[3] This alone is reason to preclude production. (For lack of a better phrase, it is
12  *res ipsa loquitur* that Lyft confidences generally would be protected from disclosure to a direct
13  competitor, and Lyft is prepared to support its confidentiality assertion with declarations should the
14  Court want. But Plaintiffs do not really have an answer for why Lyft should be forced to turn over
15  its confidences to Uber.)

16      For another, a comparison of the relevance of category (iii) documents to the burden and
17  expense associated with collecting, reviewing, and producing them must tip decidedly in Plaintiffs'
18  favor in order to justify a third-party production. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D.
19  575, 577 (N.D. Cal. 2007) (burden on third party outweighed benefit "in the absence of a convincing
20  showing that the subpoena is likely to yield unique and material evidence from the third party"); *see*
21  *also Moon v. Amini Innov. Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D.
22  Cal. 2014) ("Concern for the unwanted burden thrust upon non-parties is a factor entitled to special
23  weight in evaluating the balance of competing needs." (quotation and citation omitted)). Here, there
24  is significant burden associated with collecting, reviewing, and producing at-best-minimally-relevant

---

[2] Although the Court said "Lyft did not contest Plaintiffs' relevance argument as to the ISSP-related document requests" (ECF 695 at 7), Lyft did so (ECF 609 at 3–4; *see also* Tr. (June 21, 2024), at 18:16–19:5, 24:25–25:17, 52:16–53:12).

[3] It also could entail production of the private personal information of third parties who are not involved in the alleged incidents at issue in this action.

material Industry Sharing Safety Program materials that are not communications with Uber or regulators (which the Court has ordered Lyft to produce).  Such burdens include, for example, the act of collection, scope of which is akin to taking party discovery from Lyft (including because the materials potentially sought are far afield from anything related to the claims against Uber), and the fact that large swaths of category (iii) material likely will implicate privilege and work-product concerns, given the Lyft employees involved with the program, meaning they would not be subject to discovery.  (Lyft is prepared to give the Court more details should it conclude that it is necessary.)

Whatever minimal relevance Industry Sharing Safety Program materials that are not communications with Uber or regulators have for Plaintiffs' case, it cannot overcome the burden and expense of production—or the fact that it would entail giving a direct competitor access to Lyft confidences.  Lyft only is asking for the Court's guidance on this set of Lyft materials, and the Court should detail that Lyft need not collect or produce Industry Sharing Safety program documents beyond communications with Uber or regulators identified following a reasonable search.[4]

* * * * *

As Lyft explained in its initial brief, there are granular issues that may arise with any production.  At this time, though, Lyft only is raising several unique issues with Industry Sharing Safety Program documents that are not communications with Uber or regulators (category (iii) materials), and it otherwise reserves its rights regarding the subpoena order, consistent with the Court's continuation of the appeal deadline.

## PLAINTIFFS' POSITION

Plaintiffs have reached or are finalizing agreements with the other three parties, 7x7 Experience, Sara Peters, and Checkr, Inc. regarding the nature, scope, and general timing of

---

[4] Lyft does not quite understand Plaintiffs' procedural criticisms.  The Court invited subpoena recipients to "raise[] any issues that the nonparty would like to address with the Court" (Order (July 29, 2024) [ECF 755], at 1), and Lyft did not "refuse[] to provide its copy of this report until late into the evening," as Plaintiffs suggest.  Lyft provided all parties the proposed status update (Part I above) early today, and although the Court's order did not contemplate responsive sections of the report, Lyft agreed to provide Plaintiffs its position statement in advance of filing to give Plaintiffs an opportunity to respond.  It circulated that statement once it had permission from its client to do so.  (Perhaps Plaintiffs would have mitigated any supposed procedural issues by telling Lyft of the Court's invitation to non-parties to submit a report and participate in the August 8, 2024 hearing.)

| | |
|---|---|
| 1 | production. Lyft remains the only third party subject to the Court's June 14 Order who has not |
| 2 | reached an agreement with Plaintiffs.  Plaintiffs stipulated to an extension for Lyft to file an |
| 3 | objection to the Court's order regarding its subpoena and have therefore not reached an agreement |
| 4 | regarding the nature, scope, or date of production. |

Plaintiffs dispute the appropriateness of Lyft's submission above and note that this report goes well beyond the bounds of what the Court requested, which was merely an optional "brief report jointly with Plaintiffs and Defendants that describes the status of such nonparty discovery and raises any issues that the nonparty would like to address with the Court." *[ECF No. 755.]* This Court has already ruled on the subpoena sent to Lyft, and to the extent Lyft is interested in re-litigating this issue, it may do so in its forthcoming Objection to the order. Any argument in what should only be a report is inappropriate and untimely. Plaintiffs further note that Lyft refused to provide its copy of this report until late into the evening on the night it was due, and Plaintiffs therefore reserve all arguments for that stage of briefing and will fully note their disagreements with Lyft at that time.

Dated: August 5, 2024               Respectfully submitted,

By: */s/ Warren Metlitzky*

Warren Metlitzky
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: wmetlitzky@conmetkane.com

David Randall J. Riskin
WILLIAMS & CONNOLLY LLP
680 Maine Ave., S.W.
Washington, DC 20024
Tel:    (202) 434-5000
Fax:    (202) 434-5029
Email: bstewart@wc.com
Email: driskin@wc.com

*Attorneys for Lyft, Inc.*


By: */s/ Marlene J. Goldenberg*

MARLENE J. GOLDENBERG
SAMANTHA V. HOEFS
NIGH GOLDENBERG RASO & VAUGHN PLLC
14 Ridge Square NW, Third Floor
Washington, D.C. 20016
Tel:    (202) 978-2228
Fax:    (202) 792-7927
Email: mgoldenberg@nighgoldenberg.com
Email: shoefs@nighgoldenberg.com

*Attorneys for Plaintiffs*


By: */s/ Michael B. Shortnacy*

MICHAEL B. SHORTNACY
SHOOK HARDY & BACON
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel:    (424) 324-3494
Email: mshortnacy@shb.com

*Attorneys for Defendants*

**ATTESTATION**

Under Civil Local Rule 5-1(h)(3), I hereby attest that each of the other signatories have concurred in the filing of this document.

DATED: August 5, 2024  /s/ *Warren Metlitzky*
Warren Metlitzky