1
2
*[Counsel Listed on Signature Page]*

3

4

5

6

7

8

9
**UNITED STATES DISTRICT COURT**

10
**NORTHERN DISTRICT OF CALIFORNIA**

11
**SAN FRANCISCO DIVISION**

12

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **JOINT STATUS REPORT FOR AUGUST 8, 2024 DISCOVERY STATUS CONFERENCE** |
| This Document Relates to: | |
| ALL ACTIONS | Judge:     Hon. Lisa J. Cisneros |
| | Courtroom: G – 15th Floor |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT STATUS REPORT**

In advance of the discovery status conference set by the Court in this action for Thursday, August 8, 2024 at 2:00 p.m. via Zoom video conference, Plaintiffs, Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the parties"), submit this Joint Status Report to "describe[] the status of discovery, the parties' progress in meeting discovery deadlines, any issues or challenges to discovery that the parties have encountered that may impact the discovery schedule." ECF No. 748.

## I.     SEARCH TERMS

The parties attended an in-person meet and confer on August 1 and 2, 2024 to resolve the remaining disputes regarding search terms. The parties, with the assistance of Judge Cisneros, reached a compromise agreement that the agreed-upon search terms would hit on no more than 32%, family inclusive, of the sample set of documents collected by Defendants. As of August 5, 2024, the parties finalized the set of search terms to be run in accordance with this agreement. This agreement was memorialized in an email exchange between the parties on August 5, 2024. The parties also agreed to revisit certain terms that may be subject to renewed negotiation, pending the Court's resolution of certain pending disputes, including global safety issues and lobbying. Uber also stated to Plaintiffs and the Court that it required, as part of this compromise agreement, the ability to raise with Plaintiffs concerns about specific search terms in the final set that lack sufficient precision when applied to the actual documents searched, and to be able to raise these issues with the Court for potential relief. Plaintiffs lodged their disagreement with Uber's need to raise concerns about terms at a later date and noted that the set of terms needs to be final in order to move forward. Nonetheless, if Uber chooses to raise additional issues, Plaintiffs will respond to them at that time.

## II.    CUSTODIANS

**Plaintiffs' Position:**

On July 8, 2024, Uber and Plaintiffs' MDL leadership reported to the Court their agreement for 55 total custodians for the JCCP and the MDL. Disputes remain as to whether Uber will produce the 55 custodians Plaintiffs selected and the process for presenting those disputes to the Court.

Plaintiffs believe the parties have concluded their meet and confer process with regard to 52 of Plaintiffs' proposed 55 custodians and Uber objects to at least 18 of these 52 custodians. To date, Uber has not provided Plaintiffs with its PTO 8 draft letter brief regarding the custodians to which it objects. Plaintiffs asked Uber to meet and confer about custodians on August 1, August 2 and August 6 to no avail.

Presently, Uber has agreed to produce documents for only 26 of Plaintiffs' selected 55 custodians. Although the parties agreed that Uber would provide its portion of PTO 8 briefing on any disputed custodians by August 5 and briefing would be fully submitted by August 16, Uber did not comply with the August 5 deadline and to date, has refused to meet and confer about a briefing schedule. Document production cannot proceed apace until custodians are determined. Due to the number of custodians in dispute and the need to resolve these issues without further delay, Plaintiffs propose the following responsive briefing schedule in lieu of the PTO 8 process:

- Uber will file one omnibus brief in opposition to Plaintiffs' selected custodians by August 12, 2024. Plaintiffs will file their response by August 19, 2024.
- No party may submit more than 10 pages of double-spaced briefing total (exclusive of exhibits) in support of their position on these custodian disputes.

Uber's recitation of the parties' progress on custodian negotiations since July 8 and compliance (or not) with the deadlines omits a number of significant details, including its delay in providing critical metadata and documents necessary for Plaintiffs to finalize custodians. Importantly, Uber seeks to excuse its noncompliance with the August 5 deadline by misrepresenting the timing of Plaintiffs' custodian selections and Plaintiffs' request for documents necessary to make their selections. However, any delays are solely of Uber's design. First, due to Uber's three-day delay in providing metadata, Plaintiffs' initial selection of custodians was delayed by one day, from July 15 to July 16. On July 16, Plaintiffs provided Uber a list of 50 custodians, indicating (in writing) that Plaintiffs were reserving the final 5 slots contingent upon receiving more than 1400 pages of documents that Uber referenced in its June 20 Interrogatory Responses. Those documents were necessary to consider before making Plaintiffs' final custodian selections because, according to Uber's

Responses, the documents identify employees involved in matters at the heart of this case, for example, employees involved in preventing sexual misconduct, studying the efficacy of actions Uber took to protect Riders from sexual misconduct, overseeing Uber's classification of Rider sexual misconduct reports, studying the frequency of sexual misconduct in connection with Rides, ensuring that Drivers who engaged in sexual misconduct were blocked from the platform, and using Uber's system metrics to protect Riders from sexual assault. Plaintiffs had previously asked Uber to produce those documents on July 5 (in writing) and again during the in-person meeting on July 8. Having still not received them, Plaintiffs asked for them again, each time in writing, on July 11, July 16, July 18, and July 23. In each of these, the need for these documents was clearly tied to Plaintiffs' custodian selections. Uber finally produced the documents on July 26, and Plaintiffs promptly identified their final five custodians on July 30.

As part of the July 8 agreement, the parties agreed to a final meet and confer on July 30, and further agreed that any disputes unresolved at that time would be fully briefed by August 16. The parties also agreed that Uber would provide its portion of PTO 8 letter briefing on its custodian objections no later than August 5. Because it was clear during the parties' July 30 meet and confer that the parties would not reach an agreement as to at least 17 custodians, Plaintiffs sought to work with Uber finalize a briefing schedule based on the agreed-upon August 5 and August 16 deadlines. However, Uber stated they were not prepared during that meeting to discuss a schedule or briefing structure. Plaintiffs again sought to meet and confer with Uber to address the briefing schedule on August 1 and August 2, but Uber again declined to do so. To date, Uber has not responded to Plaintiffs' requests to meet and confer regarding the briefing process or structure to resolve these custodian disputes.

Although Uber claims it seeks to continue to meet and confer (despite its unwillingness to schedule a meet and confer conference with Plaintiffs), Uber has not indicated any further meetings would cause Uber to withdraw any of its objections. Uber's objections to Plaintiffs' custodians are essentially relevance and burden objections and fall into five categories. Uber objects to custodians who (1) serve or have served as senior executives for Uber; (2) Uber was not required to produce in

1   the JCCP; (3) serve, in part, as in-house counsel for Uber; (4) have been involved in lobbying, among

2   other activities, for Uber; and (5) have been involved in capital projects, mergers, and acquisitions for

3   Uber, among other activities. In addition to these objections, Uber has stated during meet and confers

4   that it intends to argue that some custodians are cumulative or duplicative of other custodians.

5   Uber's objections are improper and not supported by law or fact.[1] Plaintiffs agreed to a

6   presumptive limit of 55 custodians, unless good cause is shown for additional custodians. Particularly

7   considering this cap on discovery, Plaintiffs are entitled to select the custodians Plaintiffs believe are

8   most likely to possess discovery relevant to their claims (and not merely mouthpieces for Uber's

9   defense), so long as those custodians are relevant to Uber's rideshare activities, which Plaintiffs'

10  selected custodians are, and not unreasonably duplicative.  Objections based on burden or duplicative

11  discovery are unfounded, given removing one custodian will simply mean another will be added in its

12  place and duplicative custodians would ultimately reduce the number of documents to be produced

13  and in turn, the burden of production. In sum, these issues are ripe for briefing and should be presented

14  to the Court as described above.

15  **Uber's Position:**

16  On July 8, 2024, Uber and Plaintiffs' MDL leadership reported to the Court their agreement

17  for 55 total custodians for the JCCP and the MDL. To avoid delay, and in moving toward a production

18  date, the parties agreed to the following schedule:

19      1.      July 10 or 11: Uber will provide metadata regarding the dates covered by the 26 priority

20  custodians already chosen in the JCCP.

21      2.      July 12 (or 15 at the latest), the Plaintiffs will provide a list of custodians.

22      3.      July 26 (or July 29 if the Plaintiffs sent their list on July 15) Uber will provide a

23  response with specific objections detailing their rationale. Uber will endeavor to provide

24  metadata for any custodians to whom it objects.

25

26  ---
    [1] Plaintiffs disagree with Uber's characterizations of Plaintiffs' selected custodians but do not believe
27  this Status Report is the appropriate place to address this issue. Plaintiffs will be prepared to address
    Uber's mischaracterizations of Plaintiffs' selected custodians and the history of the parties'
28  discussions on this topic should the Court wish to address these matters during the August 8, 2024
    status conference.

4.      The parties will meet and confer, including during a Zoom meeting on July 30, with the goal of reaching an agreement and avoiding the need for briefing.

5.      By August 5, if the parties are not able to reach agreement on specific custodians, Uber will provide its PTO 8 draft letter brief regarding any remaining disputes to plaintiffs.

6.      The parties would like to leave some flexibility to negotiate a slightly longer schedule for responsive briefing than the schedule outlined in PTO 8 (depending on the number of custodians Uber disputes) but the intention is to fully brief any disputes by August 16.

The parties continue to meet and confer regarding the proposed custodians for the JCCP and the MDL.

On July 16, 2024, MDL Plaintiffs provided Uber a partial list of proposed custodians for both the JCCP and the MDL. On July 22, 2024, upon Plaintiff's request, and in advance of a meet-and-confer on July 23, 2024, Uber reiterated categories of custodians to which Uber objected; and provided a preliminary evaluation of Plaintiffs' partial list of custodians.  Without Plaintiffs' full custodian list for both the JCCP and MDL, Uber advised that it could not fully vet Plaintiffs' custodians to avoid duplicative and cumulative discovery. Uber further advised that it was surprised by Plaintiffs' inclusion of custodians and topics that had already been the subject of prior briefing (in the JCCP) and conferrals in the MDL.  Thus, Uber advised Plaintiffs in the July 23 meet and confer that Court guidance would be needed on how to brief any such issues that remained at the end of the conferral period.  Nonetheless, on July 29, 2024, Uber provided (per the agreed schedule) Uber's objections and specific rationales for objections to Plaintiffs' initial list of custodians.

Plaintiffs waited to provide their complete list of custodians for the JCCP and the MDL until after the Parties' scheduled July 30, 2024, meet-and-confer regarding Uber's objections.[2] The parties have not yet met and conferred regarding Uber's custodian objections or Uber's proposals for replacement with alternative custodians.[3]

---

[2] As the parties were negotiating the joint JCCP/MDL custodian list following the July 8, 2024 in-person meet and confer, Plaintiffs indicated they were holding some designations in reserve because they needed additional documents (beyond the over 100,000 documents Uber had already produced) to identify their final selections.  This was not part of the parties' agreement.  Nevertheless, Uber provided the requested documents during the conferral period.

[3] Plaintiffs note that they sought to meet and confer with Uber on August 1 and 2. But as Plaintiffs well know, and as Uber informed them, Uber's counsel were appearing in court in the in-person meet-and-confer regarding search terms on August 1 and 2.

Additionally, Plaintiffs have resisted providing Uber the Bates numbers of any documents Plaintiffs' relied on to make their custodian selections, despite agreeing to do so.

For the JCCP and MDL, Plaintiffs' 55 proposed custodians include the following custodians who remain in dispute:

- Uber's Chief Legal Officer: Despite Plaintiffs agreeing on July 8, 2024 to take Uber's Chief Legal Officer off the table in exchange for Uber accepting his Chief of Staff as a custodian, Plaintiffs have nonetheless proposed him as a custodian. Plaintiffs' proposal came only after the Parties met and conferred regarding Uber's objections on July 30, 2024.

- Four custodians whose files the JCCP Plaintiffs had moved to compel before Judge Schulman, which were ultimately denied, including one as recently as June 27, 2024. Of note, to show good faith and avoid duplicative briefing, Uber's custodian proposals to Plaintiffs included all of the custodians JCCP Plaintiffs successfully moved to compel.

- Two custodians selected, per Plaintiffs' stated rationales, for the purpose of conducting discovery regarding Uber's lobbying efforts.  JCCP Plaintiffs moved to compel production of documents related to lobbying, and Judge Schulman denied their motion.

- A disproportionate number of senior executives. Thirteen of Plaintiffs' 55 proposed custodians, almost 25%, are senior executives. Uber already agreed to produce documents from the most relevant senior executives on the joint JCCP and MDL custodian list: the current and former CEOs; the Chief Marketing Officer and SVP, Communications & Public Policy; and the SVP for Safety & Core Services.

- Custodians with roles related to capital projects, or mergers and acquisitions.

Further, Plaintiffs' proposed JCCP and MDL custodian list excludes, in fact Plaintiffs removed, multiple highly relevant custodians proposed by Uber, including:

- Uber's Director of Public Policy, who was also Uber's primary point of contact for safety related advocacy groups, including the following groups subpoenaed by

7

1          Plaintiffs: NSVRC, RALIANCE, Urban Institute, and RAINN;

2     ●     Two successive heads of Global Women's Safety;

3     ●     Uber's Global Head of Interpersonal Violence;

4     ●     Uber's Global Head of Women's Safety Policy;

5     ●     Multiple individuals responsible for safety features in the Uber app; and,

6     ●     A Senior Program Leader in Uber's Community Operations organization, responsible

7          for safety compliance.

8          In light of the following, and considering it is not yet known how many custodians will actually

9     remain in dispute once the parties meet and confer on the totality of the proposed custodians on the

10    table, Uber proposes the following order from the Court directing the Parties to:

11    ●     Meet and confer regarding both sides' custodians currently under negotiation by

12          August 9, 2024;

13    ●     Assuming custodians remain in dispute at that time (and permitting time to evaluate

14          the results of the meet and confer process, and consider any proposed compromises and

15          the possibility to narrow disputes), Plaintiffs will file an omnibus motion to compel

16          custodians by August 16, 2024, with a brief of not more than 25 pages; and

17    ●     Uber will submit an omnibus opposition by August 26, 2024, with a brief of not more

18          than 25 pages.

19         Uber makes this proposal because it needs an opportunity, once the totality of the custodian

20    disputes is locked, to prepare the evidentiary record for whichever custodians are not agreed.  For this

21    reason, Uber disagrees with Plaintiffs' proposal to require Uber to submit a brief by August 12, 2024,

22    merely two business days after the discovery status conference, when the Parties have not met and

23    conferred on the complete list of custodians.  Significantly, Uber is not waiting for resolution of this

24    dispute over whichever custodians remain in dispute, but rather Uber has already agreed on search

25    terms, and is engaged in the process of reviewing documents for production (to the extent overlapping

26    with the JCCP) for the currently undisputed custodians.

27    **III.    DEFENDANT FACT SHEETS**

28

**Uber's Position:**

In accordance with PTO 10 (ECF 348), on April 28, 2024, Uber began producing Defendant Fact Sheets (DFS). Following the first production of Defense Fact Sheets (DFS), Plaintiffs expressed concerns that some of the productions appeared incomplete, based on the absence of certain documents that Plaintiffs expected would exist. Uber reassured Plaintiffs that the productions are not only complete (not rolling), but also a diligent search was conducted that complied with the Court's Order. Uber also agreed to supplement additional linked documents as discovered in the course of Uber's continuing investigations. Uber also provided information related to specific concerns raised by Plaintiffs, including contextual information to help Plaintiffs understand and evaluate what Plaintiffs believe to be an absence of certain types of documentation as Plaintiffs undertake their review. At this point, the parties are engaged in an ongoing, productive meet-and-confer process.

**Plaintiffs' Position:**

Plaintiffs continue to review Uber's Defendants Fact Sheets ("DFS") productions and corresponding documents. Uber has indeed indicated that they are not withholding production or producing on a rolling basis and that every DFS is complete when served. This comes with the caveat that Uber is in the process of producing over 300 audio recordings that were not initially produced with the corresponding Defense Fact Sheets. Plaintiffs have requested that all audio recordings be produced with metadata that allows Plaintiffs to determine the date the recording was created. That meet and confer process is ongoing.

Additionally, Plaintiffs have noted several missing documents in DFS productions, but the parties continue to meet and confer on whether these are in fact missing or do not exist.

## IV.    PLAINTIFF FACT SHEETS

In accordance with PTO 10, on April 17, 2024, Individual Plaintiffs began producing Plaintiff Fact Sheets (PFS) through MDL Centrality to Defendants.  On June 21, 2024, Uber began serving deficiency notices on Individual Plaintiffs via MDL Centrality.

**Plaintiffs' Position:**

Plaintiffs continue to produce Plaintiff Fact Sheets (PFS) via MDL Centrality as they become

due and individual counsel are responding to Uber's deficiency notices and meeting and conferring to cure any real deficiencies. However, Uber alleges numerous PFS "deficiencies" which Plaintiffs disagree are deficiencies at all, and do not require PFS supplementation.  As for late Plaintiff Fact Sheets, it is important for the Court and Uber to understand that these are survivors of sexual assault who may be retraumatized when  contacted for clarifying or additional PFS information, which in turn, causes some Plaintiffs to become unresponsive. Plaintiffs' counsel are seeking to meet the Courts' deadlines but are also cognizant of a small number of Plaintiffs who may need additional time to respond. Individual Plaintiffs will continue to meet and confer with Uber regarding PFS's.  Should global issues remain after meeting and conferring, the parties will seek the Court's guidance.

**Uber's Position:**

Individual Plaintiffs have submitted around 255 Plaintiff Fact Sheets in the MDL.  A number of Plaintiffs have missed their deadline to submit the required Plaintiff Fact Sheet, and Uber will be pursuing appropriate relief.

To date, Uber has served 230 Plaintiff Fact Sheet deficiency notices.  PTO 10 gives Plaintiffs 30 days to cure the deficiencies in their Plaintiff Fact Sheets after being served with a deficiency notice.  The 30 days has passed for many Plaintiffs, and for many Plaintiffs, deficiencies remain.  For instance, on June 21, 2024, Uber served Peiffer Wolf (one of the leadership firms in this case) with deficiency letters regarding 85 Plaintiffs and Uber did not receive any response (including supplemental documents, extension requests, or offers to meet and confer) for any Plaintiff until July 29, 2024.

While Plaintiffs alleged they have suffered injuries as the result of sexual misconduct or sexual assault by independent drivers, and a subset of those Plaintiffs have alleged particularly severe misconduct by those drivers, that cannot serve as an excuse for failure to meet discovery obligations.  Indeed, it was Plaintiffs themselves who proposed a party have 30 days to cure alleged deficiencies in its fact sheet productions, *see* ECF 235-2 at 5 (Plaintiffs' proposed fact sheet implementation order), and the Court embraced their proposal in Pretrial Order No. 10.  Uber has agreed to grant numerous Plaintiffs reasonable extensions of that deadline when presented with a request.  But Plaintiffs' counsel

1  may not simply ignore Court-ordered deadlines, and then retroactively attempt to justify missed

2  deadlines by pointing to unsupported assertions of unnamed clients' unwillingness (or inability) to

3  follow the Court's instructions.

4       Nevertheless, Uber is working with Plaintiffs' counsel in an attempt to resolve these issues

5  without requiring Court intervention.   Should Plaintiffs continue to disregard the requirements

6  imposed by the Plaintiff Fact Sheet the Court ordered and the schedule the Court created for remedying

7  deficiencies in Plaintiffs' productions, Uber will present disputes to the Court that cannot be resolved

8  through the meet and confer process.

9  **V.      ADDITIONAL DISCOVERY FROM PLAINTIFFS**

10       The parties continue to disagree as to the additional discovery Plaintiffs must submit beyond

11  Plaintiff Fact Sheets.

12  **Plaintiffs' Position:**

13       As was the case less than two months ago, it remains premature to open individualized

14  discovery for all Plaintiffs. *See* 6/21/24 CMC Hearing Tr. at 11:8-11 (the Court indicating that the

15  parties should wait for its ruling on pending motions to dismiss before setting a process and schedule

16  for dealing with individualized issues); *see also* 5/31/24 CMC Hearing Tr. at 21:1-22:9 (same); ECF

17  No. 771 at 2 (Judge Cisneros recognizing that "the proceedings in this transferee court are focused on

18  common issues of fact", "[t]he Court has not lifted the stay to allow Uber to conduct discovery on

19  individual Plaintiffs", and "[a] later phase in this litigation is the more appropriate time to address

20  discovery … to uncover facts that are specific to Plaintiffs' individualized allegations."). Plaintiffs

21  maintain that it is customary and appropriate in MDLs to postpone plaintiff discovery (beyond PFS)

22  until cases are selected for trial. *See* ECF No. 356 at 13-14 (3/22/24 CMCS detailing Plaintiffs'

23  objection to Uber's request to lift the stay on plaintiff discovery); ECF No. 563 at 17-19 (5/24/24

24  CMCS, same). Here, the parties' extensively negotiated and detailed PFS is the correct tool to facilitate

25  that process. In keeping with Judge Breyer's vision to focus on common discovery first, Plaintiffs have

26  both proposed a detailed pretrial schedule (ECF No. 356 at 16-19) and a plan for resolution of

27  individualized issues (ECF No. 386 at 3-5) for the appropriate stage of the litigation. Plaintiffs have

28

1    also proposed a census to capture information about filed cases from a bird's eye view, which the

2    Court agreed was a "very good idea" and made sense as "the next step" after PFS submissions. *See*

3    5/31/24 CMC Hearing Tr. at 14:25-15:15. Plaintiffs remain prepared to discuss a schedule and plan

4    for bringing cases to trial, and to meet and confer with Defendants regarding discovery for the selected

5    plaintiffs. But opening discovery of *all* Plaintiffs before the Court has ruled on a single motion to

6    dismiss risks needlessly retraumatizing sexual assault survivors and turning this MDL into "a thousand

7    presentations of each [case] being individualized." *See* 11/3/23 Hearing Tr. at 7:4-15; *see also id.* at

8    21:15-16 (The Court: "Let's deal with the common issues first and then go from there.").

9            **Uber's Position:**

10           Now that PFS have been submitted, the natural next step is for the parties to proceed with

11   limited written discovery on Individual Plaintiffs.  Uber proposes that the parties meet and confer to

12   discuss the contours of this additional discovery, but a logical first step is for each Individual Plaintiff

13   to answer interrogatories.  Uber does not agree with Plaintiffs' position that no discovery on Individual

14   Plaintiffs should occur beyond the requirements imposed by PTO Nos. 5 and 10.  While Individual

15   Plaintiff discovery may have been premature at the time of the March Case Management Conference

16   -- which occurred over four months ago and before any Plaintiff served a Plaintiff Fact Sheet -- the

17   litigation is in a different stage now.  *Cf.* PTO 10 at 2 (discussing fact sheets as a tool to help "manage

18   the litigation at this relatively early stage").  This additional written discovery would also assist the

19   parties with evaluating the MDL case pool as a whole by exploring information not provided by the

20   Plaintiff Fact Sheets such as further explanation regarding Plaintiffs' alleged damages and a summary

21   of conversations Individual Plaintiffs may have had with third parties about the alleged incidents.

22           To the extent that Plaintiffs are proposing that each Plaintiff participate in a "census" to collect

23   information about each Plaintiff's allegations, damages, and other matters that would be useful to

24   managing the MDL as a whole, Uber welcomes such a discussion, assuming it is not premised on

25   discovery from Plaintiffs remaining closed.  Indeed, such a "census" process consisting of each

26   Plaintiff providing information about their case in a form that would normally be captured by

27   interrogatories is largely what Uber is proposing the parties pursue.  Clearly, there is space for

28

1  additional discovery from Plaintiffs that would be helpful to all sides.  To ensure that the contours of

2  discovery from Plaintiffs are developed promptly, Uber asks that the Court order the parties to meet

3  and confer regarding the next steps in discovery that will be taken from Plaintiffs and appropriate

4  deadlines for compliance.

5  **VI.   CLAWBACK DISPUTE**

6  On June 24, 2024, the parties submitted letter briefing on the dispute over Uber's redactions

7  made in its productions pursuant to Pretrial Order No. 5. ECF No. 664. On July 25, 2024, the Court

8  heard arguments on the clawback challenge.  The Court took the parties' briefs and arguments under

9  submission and has not yet issued an order.  The parties stand on their arguments made in the letter

10  briefing and oral arguments.

11  **VII.   COORDINATION WITH JCCP**

12  The parties continue to meet and confer regarding efforts to coordinate discovery with JCCP

13  proceedings as appropriate.

14  **Plaintiffs' Position:**

15  In order for the MDL and JCCP to meaningfully coordinate with Uber on taking only a single

16  deposition of a common witness, Uber must timely produce complete custodial files based on, inter

17  alia, the negotiated MDL search terms and the JCCP timeline. If Uber is unable to timely resolve

18  outstanding discovery issues and comply with the requisite timelines, it will face the prospect of a

19  second deposition in the MDL after complete custodial files are produced.

20  **Uber's Position:**

21  Uber rejects Plaintiffs' assertion that MDL Plaintiffs' insistence on elongated discovery

22  negotiations and processes should result in repeated depositions for the same Uber witnesses.  MDL

23  and JCCP Plaintiffs have a duty to coordinate on timing to ensure one single deposition per witness.

24  The Court's order on the deposition protocol disputes (ECF 771) is premised on coordinated

25  depositions.  There is no basis for Plaintiffs' suggestion that they can refuse to coordinate and thereby

26  unilaterally create the possibility of (unnecessary) multiple depositions of the same witnesses.

27  **VIII.   THIRD-PARTY DISCOVERY**

28

On July 14, 2024, the Court issued an Order on the first group of subpoenas to be briefed out of Plaintiffs' 30 subpoenas, consisting of Checkr, Lyft, Sara Peters, and 7x7 Experience. ECF No. 695. The Court did not rule on the motions with respect to 7x7, and set up a new schedule for the parties and 7x7 to meet and confer and, if necessary, to brief the dispute for the Court's resolution. *Id.* at 15-16. On Monday, August 5, 2024, the parties met and conferred with counsel for 7x7, pursuant to the Court's Order. *Id.* In the meet and confer, Plaintiffs and 7x7 reached a tentative agreement to resolve the subpoena dispute, with 7x7 agreeing to produce a limited set of documents.

Pursuant to the Court's July 18, 2024 Order, on August 2, 2024, the parties submitted a joint letter with their respective proposals for the "next tranche of nonparty subpoena disputes." ECF No. 772.

Plaintiffs are continuing to meet and confer with various third parties and are prepared to meet the deadlines outlined in the joint letter. ECF No. 772. On August 6, 2024, the Motion to Transfer and in the Alternative to Compel Documents from RAINN was heard in the District of Washington DC before Judge Ana Reyes. Judge Reyes denied the motion to transfer and granted in part and denied in part Plaintiffs' Motion to Compel. An order has not yet been issued, but Plaintiffs will provide the Court with a copy of the Order upon receipt.

## IX.    NON-CUSTODIAL SOURCES/FILES

Pursuant to the Court's July 18, 2024 Order (ECF No. 706), Uber provided Plaintiffs an index generated for conferral purposes of Uber's policies, and Knowledge Base "homepages" produced as PDF printouts per agreement of the parties. The parties continue to meet and confer to the extent the Plaintiffs dispute whether Uber identified a complete list of non-custodial sources likely to contain discovery relevant to this litigation.

**Plaintiffs' Position:**

The parties have met and conferred concerning non-custodial sources and Knowledge Base "homepages." On July 19, 2024, Defendants provided an updated non-custodial sources list[4] and have

_____

[4] Uber's updated list of non-custodial data sources includes: (1) Google Cloud Storage (Box, Google Suite); (2) Audio Recordings (LiveOps, PureCloud Genesys); (3) Ticketing Systems (ZenDesk, Bliss, JIRA); (4) Knowledge Base Related NCDS (Teamdot, Salesforce, KMS Lighthouse); (5) Uber

committed to producing documents from non-custodial sources starting immediately and continuing on a rolling basis. Uber informed Plaintiffs that it continues to find and provide new sources as they are found in the course of discovery, which remains a point of dispute. Plaintiffs believe Uber should produce a full and complete list of non-custodial sources, as well as a date certain for production, rather than Plaintiffs unilaterally identifying sources or systems and having to take them to Uber.

Despite Uber previously providing on May 6, 2024 that (1) documents produced pursuant to PTO 5, (2) Team Google Drives, (3) Bliss, (4) PureCloud, and (5) DFS submission-related documents were all non-custodial files that could be produced without search terms, Uber still has not substantively produced these files nor a date certain for production. Plaintiffs have repeatedly requested these and are within the milestones agreed upon by the parties.

Nonetheless, on July 30, 2024, Plaintiffs proposed a bi-weekly production schedule for Uber to include noncustodial documents that can be produced in an effort to avoid a majority of the production coming in at the deadline. To date, Uber has not offered a response.

By July 26, 2024, Uber was ordered to produce "an index, list, table of contents, or some other comparable record…of Uber's Policies." *See* ECF No. 706 at 2. Additionally, Uber was ordered to produce the "related homepages that operationalize those policies." *Id.* On July 26, 2024, Uber Produced seventeen (17) total documents claiming to be Uber's Knowledge Base indexes, directories, and/or homepages.[5] Plaintiffs and Defendants are in the process of scheduling an additional meet and confer to discuss whether Defendants have met their obligation under the Court's Order and to discuss redactions made to one of the indexes produced. Based on a review of the documents produced, Plaintiffs contend Defendants have not met their obligation to produce the indexes and/or Knowledge Base homepages as ordered on July 26, 2024, and that the redactions were improperly made. The parties will continue to meet and confer on this issue.

**Uber's Position:**

---

Application (App Tweak); (6) Marketing (Databook); and (7) Other Structured Data (GPS Data, Independent Driver profiles, feedback, and ratings).

[5] Of the seventeen (17) documents produced, only seven (7) documents are indexes, table of contents, or homepages that are unique and non-duplicative of other documents in the production. The other ten (10) documents in the production set are either duplicative or do not contain any indexes or directories of policies.

In accordance with its discovery obligations, Uber disclosed its non-custodial data sources, including those under PTO 2 and PTO 5. Uber also discussed non-custodial data sources in numerous meet-and-confers (beginning in November 2023) related to data sources, as well as in various communications including a January 16, 2024 letter, which included exhibits, a February 22, 2024 letter, and emails dated March 15, 2024, March 20, 2024, March 23, 2024, March 27, 2024, and a supplement dated June 21, 2024. To date, Uber has produced over 111,000 documents, consisting of over 390,000 pages from non-custodial sources. Further, Uber investigated Plaintiffs' inquiries as to certain web-based user interfaces and provided that information to Plaintiffs.

The Parties continue to meet and confer regarding the identification and production of policies and Knowledge Base documents that are responsive to Plaintiffs' written discovery requests.

## X.   UBER'S RESPONSES TO PLAINTIFFS' WRITTEN DISCOVERY

**Plaintiffs' Position:**

On June 20, 2024, Uber served responses and objections to Plaintiffs' First Requests for Admission and Plaintiffs' First Set of Interrogatories. On June 27, 2024, Uber served responses and objections to Plaintiffs' First Requests for Production ("Plaintiffs' RFPs"). Plaintiffs had provided a three (3) month extension to Uber to respond to the Plaintiffs' RFPs in exchange for Defendants agreement to certain milestones which, *inter alia*, required Defendants to make rolling productions. ECF Nos. 607-1 ¶ 17, 607-12. To date, Uber's production has been limited to documents previously produced in the JCCP, documents produced pursuant to PTO 2, PTO 5, and Defendant Fact Sheets (PTO 10), and has not otherwise produced documents responsive to Plaintiffs' Requests for Production. On July 30, 2024, Plaintiffs requested that Defendants agree to semi-weekly production of documents to allow for an efficient production and review of documents instead of being inundated with large productions on the September deadline. There should be voluminous productions of noncustodial documents that Defendants should be able produce in the meantime, as well as documents that were produced in the JCCP that have not yet been produced in the MDL. To that end, Plaintiffs believe these semi-weekly productions should be starting now, and can continue as search terms are finalized.

Additionally, Defendants are required to produce production logs per the ESI Protocol ¶19(f) and have not done so. On August 1, 2024, Plaintiffs requested Defendants do so by August 7, 2024 and have not received a response. Moreover, Defendants have not complied with the agreed-to production protocol (to produce documents to our ESI vendor, ILS, and Plaintiffs' Liaison Counsel's email address for certain productions). Uber instead has produced certain documents via e-mail to only a small number of leadership attorneys which leads to access problems and non-compliance with the ESI Protocol for these productions. Plaintiffs have raised this with the Defendants and still have not received a response.

Lastly, the parties plan to meet and confer regarding Uber's objections, but anticipate seeking the Court's intervention via the PTO 8 process to resolve various categories of objections, including Defendants' unilateral decisions to: (1) narrow the relevant time period to 2014 to 2023 (despite the fact that Uber's platform and policies at issue were created well before 2014 and that Uber' current policies and actions are relevant); (2) limit marketing and business activity documents to only documents that fit Uber's determination that such documents involve sexual misconduct or sexual assault; (3) limit production only to the United States (despite the fact that Uber has researched and implemented various safety changes in other countries that it has not implemented in the U.S.); and (4) withhold documents related to lobbying, despite the fact that Uber lobbied extensively to avoid regulations that would have made Uber users safer during rides.

**Uber's Position:**

On June 20, 2024, Uber served responses and objections to Plaintiffs' First Requests for Admission and Plaintiffs' First Set of Interrogatories. On June 27, 2024, Uber served responses and objections to Plaintiffs' First Requests for Production. The parties have not met and conferred; however, Uber's production of documents in response to Plaintiffs' Requests for Production has commenced. Uber maintains that its prior productions of documents pursuant to PTO 2, PTO 5, and Defendant Fact Sheets (PTO 10) includes documents that are also responsive to Plaintiffs' Requests for Production, and refers Plaintiffs to these documents in its responses. Some of these initial productions are reproductions from prior litigation. Other productions are occurring on a rolling basis

1    following motion practice and guidance from the court.  However, the lion's share of Uber's discovery

2    responses require custodial searches.

3    **XI.    PTO 5 PRODUCTION REDACTIONS**

4        On August 1, 2024, the Court issued an Order on the parties' PTO 8 dispute regarding

5    redactions made in Uber's productions of documents pursuant to PTO 5. ECF No. 767. The Court

6    ordered the parties to meet and confer on "whether this Order wholly resolves the issues presented in

7    the [letter brief on PTO 5 redactions], and whether they can agree on a date for production of

8    documents as required by this Order." *Id.* The parties intend to meet and confer in accordance with

9    the Court's Order.

10       **Plaintiffs' Position:**

11       Following issuance of the Court's Order, on August 1, Plaintiffs requested that Uber provide

12   a proposed date by which Uber will re-produce improperly redacted documents.  In addition, Plaintiff

13   requested a meet and confer on Monday, August 5, 2024, as well as renewed requests for answers to

14   questions raised by Uber's Court submissions.  Plaintiff renewed these requests on Monday, August

15   5, 2024.

16       **Uber's Position:**

17       Uber intends to meet and confer with Plaintiffs in accordance with the Court's order (ECF

18   767).  Uber began determining the time necessary to revise redactions and produce documents in

19   accord with the Court's Order to meaningfully confer with Plaintiffs on a production timeline, and, on

20   August 6, 2024, provided Plaintiffs with a proposed date and times to meet and confer.

21   **XII.   SAFETY DATA & STATISTICS DISCOVERY DISPUTE**

22       On July 9, 2024, the Court issued its Order on the parties' Joint Discovery Letter Brief

23   regarding safety data and statistics. ECF No. 683. On July 18, 2024, the Court issued its Order

24   regarding discovery related to U.S. Safety Reports. ECF No. 706. The parties met and conferred about

25   the July 9 and July 18 Orders on July 23, and twice on July 30. The parties continue to meet and confer

26   regarding the implementation of the Court's July 9 and July 18 Orders.

27       **Plaintiffs' Position:**

28

1    In its July 9, 2024 Order, the Court required Uber to produce data and documents related to

2    the sexual assault and sexual misconduct incident tickets from trips taken in 2017 that Uber internally

3    audited but did not make available to the public, excluding for trips that occurred in Canada. The Court

4    further ordered Uber to produce the data and documents related to incidents from 2018 through 2020,

5    occurring in the United States associated with any of the twenty-one categories of sexual assault and

6    sexual Misconduct from the Sexual Misconduct and Violence Taxonomy. The Court also ordered Uber

7    to produce all underlying trip data (e.g., GPS information, trip date, and time, etc.) for all incident

8    reports that Uber produces pursuant to the Order. On July 18, the Court ordered Uber to endeavor to

9    complete this production by July 31. Additionally, on July 18, the Court ordered Uber to produce all

10   fields contained in Jira, Bliss, and ZenDesk as well as the decoders for those fields by July 22, 2024.

11   Uber's position is that its intended production of 9800 PDFs showing the tickets for the sexual

12   assault and sexual misconduct incidents for the 5 categories reported in the 2017-2018 and 2019-2020

13   Safety Reports is sufficient to comply with the Court's Orders. Plaintiffs were surprised to learn that

14   Uber had unilaterally undertook to prepare these tickets for production, given Plaintiffs had repeatedly

15   communicated to Uber that production of these tickets did not meet Uber's obligations under the

16   Orders and that the parties needed to meet and confer to attempt to reach an agreement regarding the

17   scope and format of production. Regardless, these PDFs do not meet Uber's obligations under the

18   Orders because: (1) the Court required Uber to produce data and documents related to the 100,000

19   sexual assault and misconduct incident tickets from trips taken in the U.S. in 2017 that Uber internally

20   audited but did not make public, (2) the Court required Uber to produce data and documents for the

21   sexual assault and misconduct incidents for all 21 categories of sexual assault and sexual misconduct,

22   not just the 5 categories disclosed in the Safety Reports; (3) PDF print-outs do not contain any of the

23   underlying trip data that Uber was required to produce, including the audio or video recordings and

24   photographs; (4) there was no agreement between the parties as to what fields should be included in

25   the tickets; and (5) Uber has not agreed to produce any documents related to the process of auditing

26   the incident reports or compiling the Safety Reports. Additionally, although Uber provided a list of all

27   fields currently contained in Jira, Bliss and ZenDesk and decoders belatedly on July 28, 2024, Uber

28

has stated that it cannot identify which fields were contained in those systems in 2017 through 2020. Further, the decoder Uber provided contains numerous circular descriptions and does not describe how the fields are used sufficiently to allow the parties to discuss whether those fields should be included in the production (for example, "account type" is described as "the type of account involved in the ticket," without identifying what types of account exist).

It is Plaintiffs' position that the most efficient way to produce the data required per the Court's Orders is to export it and produce it in native format as it is maintained in the ordinary course of business. This would allow the parties to agree on which fields should be produced and would also relieve Uber's burden in reviewing and making redactions, as certain fields could be de-identified through an automated process. Therefore, Plaintiffs have asked Uber to do the following:

1.  Identify which fields currently contained in Jira, Bliss, and ZenDesk were not used in 2017-2020, so that the parties may limit their discussions to those fields.

2. Provide the fields Uber believes would contain personal identifying information or privilege, so that the parties can consider ways to reduce Uber's burden related to redacting this information.

3. Provide an updated decoder that provides sufficient information to assess what information or data is collected in the field.

4. To assist the parties in understanding how the fields were used, provide copies of manuals or policies that are were provided to Uber employees from 2017 through 2020 that describe how to use Jira, Bliss, and ZenDesk in relation to sexual assault or sexual misconduct incidents, reports, or investigations.

5. Schedule a call involving each party's experts so that the experts can discuss the process and format for exporting the data.

6. Produce the documents related to the Safety Reports that are referenced in the Reports themselves, including at pages 16, 41, 42, 45, and 46. Specifically, Plaintiffs have asked Uber to produce the documents provided to first line reviewers and auditors, including:

- Documents sufficient to show training and criteria provided to "frontline" agents to be used in making "initial classification attempt" for sexual assault and sexual misconduct reports,

including what systems to use, what fields to use within those systems, and what information to enter into each field;

- Documents sufficient to show training and criteria provided to the "specialized audit team" to be used in classifying reports based on 21 categories of the taxonomy, including what data was considered "necessary," the process/criteria set to achieve Uber's "high standard for quality," and criteria and process for "updat[ing] historical data" and "addressing any discrepancies" (noted "...we created a curriculum and certification process for auditors and measured their categorization accuracy at a regular cadence"); and

- Documents sufficient to show the process, criteria, and polices/procedures for measuring the accuracy of auditors' classification.

Despite Uber's continued insistence otherwise, these are not new requests. Plaintiffs' position is consistent with the discussions on this topic that occurred prior to filing the PTO 8 letter, what was requested and argued in conjunction with the PTO 8 letter, and what the Court ordered Uber to produce in its July 9 and July 18 Orders.

**Uber's Position:**

As an initial matter, Uber *agreed* to produce documents responsive to Plaintiffs' discovery requests at issue from custodial files. Uber understands this dispute concerns documents related to incidents of alleged sexual assault and sexual misconduct occurring in the United States from 2017 to 2020 which had been reported to Uber, *i.e.* incident reports. On July 30, 2024, the Parties met and conferred twice about discovery safety data and statistics, and Plaintiffs provided their interpretation of the Order as encompassing a much wider spectrum of documents than Plaintiffs previously sought, up to and including user manuals for the Jira system.

Pursuant to the Court's July 18 Order, on July 31, 2024, Uber commenced production of incident reports related to the sexual assault and sexual misconduct categories of the Safety Taxonomy Uber reported on in the 2017-2018 and 2019-2020 U.S. Safety Report. Uber made a second rolling production of these incident reports on August 2, 2024, and is working with all haste to complete this production by August 9, 2024, if not sooner.

1       Plaintiffs' current, brand new asks do not align with their original ask and continues to evolve

2   to now include asks for additional information that is not reasonable or proportional to the needs of

3   this case. Plaintiffs continue in their attempt to broaden the Court's order and moreover seek items far

4   beyond their initial requests at issue before the court in their Motion to Compel. Uber should be

5   required to produce to Plaintiffs only the incident reports associated with categories of the taxonomy

6   Uber reported on in the U.S. Safety Reports, in the form used by Uber in the ordinary course of

7   business and those produced in the Defendant Fact Sheet (DFS) process, because the burden associated

8   with producing the additional reports (and associated data, documents, videos and other files stored

9   outside of Jira) in Plaintiffs' new asks is not proportional.

10       Plaintiffs now seek: 1) other electronically stored information associated with hundreds

11   of thousands of incident reports, such as audio or video recordings and photographs, which contain

12   PII requiring redaction and which are not stored in the same locations as the incident reports, therefore

13   requiring a separate and onerous process to produce; 2) documents related to the process of auditing

14   the incident reports or compiling the Safety Reports; and 3) a custom report of metadata fields, with

15   many containing PII and privileged information requiring review and redaction, across multiple

16   systems for hundreds of thousands of incident reports.   This position is not consistent with the

17   proportionality factors in Rule 26(b)(1), including whether the burden or expense of the proposed

18   discovery outweighs its likely benefit, as well as Rule 26(b)(2)(C), which forecloses discovery of ESI

19   that presents an "undue burden or cost."

20

21   DATED: August 6, 2024                     Respectfully submitted,

22                                             By: */s/ Sarah R. London*
                                                  Sarah R. London
23                                                **LIEFF CABRASER HEIMANN &**
                                                  **BERNSTEIN**
24                                                275 Battery Street, Fl. 29
                                                  San Francisco, CA 94111
25                                                Telephone: (415) 956-1000
                                                  slondon@lchb.com
26
                                              By: */s/ Rachel B. Abrams*
27                                                Rachel B. Abrams

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
     Roopal P. Luhana
     **CHAFFIN LUHANA LLP**
     600 Third Avenue, Fl. 12
     New York, NY 10016
     Telephone: (888) 480-1123
     luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Michael B. Shortnacy*
     MICHAEL B. SHORTNACY

MICHAEL B. SHORTNACY (SBN: 277035)
     mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2049 Century Park East, Ste. 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (Admitted *Pro Hac Vice*)
     oot@shb.com
**SHOOK, HARDY & BACON L.L.P.**
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

KYLE N. SMITH (*Pro Hac Vice* admitted)
     ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
     jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
     **& GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC