[Submitting counsel below]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL CUSTODIAL DISCOVERY** |
| This Document Relates to: | Judge: Honorable Lisa J. Cisneros |
| All Cases | Date: TBD<br>Time: TBD<br>Via: TBD |

## **NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that at the Court's earliest convenience, before the Honorable Lisa J. Cisneros, Plaintiffs will and hereby do, move for an order compelling Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's (collectively "Uber") to produce custodial discovery for the custodians identified herein.

**INTRODUCTION**

This dispute reaches the Court after nearly four months of negotiations, a prior brief and hearing on the parties' custodian dispute, and extensive Court-ordered negotiations including a lengthy in-person meeting. *See* August 19, 2024 Declaration of Roopal P. Luhana, Esq. ("Luhana Decl."),[1] ¶¶ 3, 6. By way of that in-person meeting, the parties agreed on the number of initial custodians: 55, with JCCP Plaintiffs selecting 26 and MDL Plaintiffs selecting the remaining 29. ECF 693 at 2-3. But now, despite this agreement, Uber refuses to provide custodial files for <u>19 of the 29 custodians</u> that the MDL Plaintiffs selected. Uber's primary argument is that Plaintiffs' selected custodians are cumulative and duplicative of custodians Uber agrees to produce, objecting to 18 of the 19 custodians on this basis.[2] *Id*. at ¶ 3; Ex.'s 1, 2. Uber also makes wholly unsupported relevancy objections and asks the Court to exclude custodians based on rulings from another judge in a different litigation, which this Court has repeatedly said is improper.

Uber's objections are meritless. To begin, each of these custodians is relevant to Plaintiffs' claims, including negligence claims (and Uber's anticipated defenses related to negligence), particularly comparative fault, as well as Plaintiff's common carrier claims, scope of employment claims, and punitive damages. Each held decision-making roles related to matters at the heart of this litigation and are likely to possess information that will help establish Plaintiffs' claims or refute Uber's defenses. Plaintiffs chose custodians who held or hold significant roles in at least one of the following capacities: (1) directly related to responding to, analyzing, communicating about, or preventing sexual assault and sexual misconduct on the Uber platform;[3] (2) supporting safety efforts such as background checks and fingerprinting, in-app safety features, data analysis, relationships with law enforcement, or dashcam initiatives,[4] or (3) in relation to

---

[1] All Exhibits referenced herein are attached to the Luhana Declaration.

[2] Uber objects to the following custodians: (1) Brooke Anderson, (2) Ed Baker, (3) Adam Blinick, (4) Frank Chang, (5) Ryan Graves, (6) Mat Henley, (7) Nairi Hourdajian, (8) Meghan Joyce, (9) Matt Kallman, (10) Justin Kintz, (11) Andrew MacDonald, (12) Emil Michael, (13) Thuan Pham, (14) Cameron Poetzscher, (15) David Richter, (16) Joe Sullivan, (17) Pat Twomey, (18) Tony West, and (19) Rachel Whetstone.

[3] *See e.g.* ECF 269, ¶¶ 131, 172, 246, 255, 268, 271, 272, 304-311, 347, 470, 486.

[4] *Id.* at ¶¶ 17, 25, 54, 131, 132, 141, 157, 158, 163, 172, 179, 244, 246, 255, 268, 271, 272, 304-311, 347, 351, 446, 451, 452, 458, 459, 460, 462, 472, 486.

matters that increased risk for sexual assault, such as marketing to women without adequate safety measures to protect women, suppressing media coverage of sexual assault during Uber rides or otherwise creating the appearance of safety, rapidly onboarding drivers, pursuing growth over safety, and lobbying for Uber's interests and against regulations that would make Uber safer for women.[5]

The disputed custodians served roles crucial to these matters. For example, the selected custodians emphasized profits and rapid growth over safety, particularly with respect to background checks and driver onboarding (Baker, Graves, Joyce, MacDonald, Michael, Poetzscher, Richter), built and led Uber's incident response systems, investigations, and safety reporting (Anderson, Henley, Sullivan), were integral in creating a public perception of safety for female riders (Blinick, Hourdajian, Kallman, Kintz, West, Whetstone), or had access to data and technology to evaluate risk and create in-app features to reduce risk (Chang, Pham, Twomey). These examples are just a selection of the discoverable information expected from these custodians. For additional information and supporting documents, see Exhibit 9.

As to proportionality, the Court has already addressed Uber's objections multiple times, including: (1) in a letter brief regarding Uber's position that it should only have to produce custodians of its choosing (and a hearing on that matter)(ECF 607); (2) in the parties' agreement to cap the number of custodians reached during the parties' in-person meet and confer; (3) in the parties' agreement to limit search terms to 32% recovery (agreed to at the parties' August 1-2 in-person meeting); and (4) in the parties' ESI dispute and the resulting Court Order regarding the use of search terms with TAR and de-duplication. Uber's burden argument has been addressed by each of these measures that significantly reduces the number of documents that Uber is required to review and produce.  Luhana Decl. ¶11; Ex.6; ECF No. 345. Any additional burden argument by Uber rings hollow—whatever the identity of the custodians, Uber's burden remains the same—it must produce custodial files for 55 custodians.[6] To the extent any given custodian has

---

[5] *Id.* at ¶¶ 10, 16, 17, 25, 54, 132, 133, 138, 141, 157, 158, 163, 179, 184, 244, 245, 261, 272, 305, 347, 351, 470.

[6] Even though the document production to date here is skewed heavily in favor of overlap

more documents that hit on search terms than another custodian (Uber has not provided hit reports), that means only that the custodian has potentially *more* relevant documents, not less so (making their inclusion more appropriate). Further, to the extent documents overlap between custodians, that reduces Uber's burden because de-duplication processes mean those documents need only be reviewed once, not twice. In short, Uber should be compelled to produce discovery for each selected custodian—it has no basis in law or fact to refuse to do so.[7]

## LEGAL STANDARD

This Court has articulated the test for analyzing a discovery dispute when certain custodians are alleged to be duplicative or cumulative, specifically when "the [defendant's executive leadership] are already ESI custodians for this case, and these executives are the [disputed] custodians' direct supervisors." *Rusoff v. Happy Group, Inc*., 2023 WL 114224, at *2 (N.D. Cal. Jan. 5, 2023) (Cisneros, M.J.) The standard is simple: parties may obtain discovery regarding any nonprivileged matter that is relevant to a party's claims or defenses and proportional to the needs of the case. *Id*. (citing Fed. R. Civ. P. 26). In other words, discovery should be produced so long as it is (1) relevant and (2) proportional. *Id*.

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351(1978). For custodial discovery, relevance turns on whether the custodian is likely to possess information that might help establish the requesting party's claims or defenses. *See, e.g., Rusoff*, 2023 WL 114224, at *2 (ordering production from a senior marketing team manager because he was "likely to have had a significant role developing and overseeing [] marketing campaigns" and a Sales VP who "likely communicated with third-party retailers and distributors, and made representations regarding pricing, premiums, standards and certifications…and shelf placement."); *see also In re Meta Pixel*

---

between custodians produced to date and disputed custodians, the numbers still do not support Uber's claims that the disputed custodians are cumulative and duplicative. See Luhana Decl. ¶ 18.

[7] During the August 8, 2024 discovery status conference, Uber took the position for the first time that if the Court sustains Uber's objections to any of these 19 custodians, Plaintiffs should not be permitted to replace the stricken custodian(s). *See* 8/8/2024 H'rg Tr. at 11:4-13:11. Uber's position is baseless and contradicts the spirit of the agreement reached during the July 8 in-person meet and confer.

*Healthcare Litig.*, 2023 WL 5767460, at *1,3 (N.D. Cal. Sept. 6, 2023) (hereinafter "*Meta Pixel*") (ordering discovery of custodians where the "plaintiffs offer[ed] [] substantial justifications based on allegations in the complaint and plaintiffs' interpretation of publicly available documents and newspaper articles regarding the custodian's responsibilities").

Proportionality turns on the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *See Rusoff*, 2023 WL 11424, at *2. Where a party opposes producing ESI for certain custodians, that party carries the "the burden of clarifying, explaining, and supporting its objections," particularly where the objection is that the requested discovery is cumulative or duplicative. *Id*. To meet that burden, the objecting party must make an actual and particularized showing of burden. *See, e.g.*, *Meta Pixel*, 2023 WL 5767460, at *1-3 (rejecting Meta's objections that the requested custodians would result in unreasonably cumulative or duplicative discovery where searches could be "narrowly tailored to the relevant subject matter" and "Meta identifie[d] no significant burden on the individual custodians themselves associated with the collection, search, and production of such responsive documents from their files."); *Oracle Am., Inc. v. Google Inc.*, 2015 WL 7775243, at *1 (N.D. Cal. Dec. 3, 2015)(applying Rule 26 to custodial dispute and ordering production of additional custodians where Google "argue[d] that the requested discovery is cumulative, but does not assert that the information that Oracle seeks is irrelevant, or too expensive to produce.").

Accordingly, Courts in this jurisdiction hold that a party opposing the production of a custodian's ESI cannot rest on unsupported claims that the production is cumulative or duplicative of other custodians, especially where search terms and de-duplication mitigate the burden of collection and review. *See Rusoff*, 2023 WL 114224, at *4 (holding burden "objections based on duplication and proportionality" are rebutted where that burden "can be substantially mitigated by the application of appropriate narrow search terms and the de-duplication of ESI across custodians," which "limit[s] the extent of [the producing party's document review."); *see also Williams v. Apple, Inc.,* 2020 WL 5107639, at *2 (N.D. Cal. Aug. 31, 2020) ("where the key

objection is unnecessarily duplicative discovery [of custodians' ESI], Apple's burden can be substantially mitigated by application of appropriately narrow search terms and de-duplication of ESI across custodians."); *Meta Pixel*, at *3.

Uber has stated that *In re EpiPen Marketing, Sales Practices and Antitrust Litig.*, 2018 WL 1440923 (D. Kan. Mar. 15, 2018)("*In re EpiPen*") is persuasive. But *EpiPen's* analysis concerned a party seeking *additional* custodians; it did not opine on custodian selections after protected negotiations as to the initial number of custodians. *id*. at *3 Regardless, even where, unlike here, a plaintiff seeks *additional* custodians, courts permit discovery of additional custodians upon a showing that a proposed custodian's job responsibilities are significant in relation to the subject matter of the case, absent a showing from the responding party that a custodian's documents are clearly duplicative of another custodian. *See, e.g.*, *In re EpiPen*, 2018 WL 1440923, at *4 (ordering two of three custodial files be produced because custodians "likely" had unique and relevant discovery, but rejecting one custodian because, *inter alia*, he joined company "well after many of the alleged facts and key events in this case" and he "resides in France and, as a result, there may be additional issues that make it unduly burdensome []."); *Rusoff*, 2023 WL 114224, at *2 (ordering production from senior managers); *In re In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282213, at *1 (N.D. Cal. Nov. 14, 2021)(adding additional custodians where it was "possible" they had unique communications); *In re Bank of America California Unemployment Benefits Litig.*, 2024 WL 3174874, at *5-7 (S.D. Cal. June 25, 2024)(reversing order denying plaintiffs' motion to compel additional ESI custodians because custodians possessed relevant information and was not unduly burdensome where defendant already "expended $7.150 million in processing, hosting review, redaction, production and privilege log costs [].");  *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin.*, 2015 WL 50552421, at *3 (D.N.J. Aug. 21, 2015) (ordering additional custodians where there was a "a fair inference that among the [] additional custodians [sought], there may be a number … with emails or analyses different from those of the agreed custodians," notwithstanding that "the number of agreed custodians is already substantial").

**ARGUMENT**

Uber lodges five categories of objections against these custodians: (1) the custodian is cumulative and duplicative of other custodian(s) that Uber has agreed to produce and therefore the discovery is not proportionate to the needs of the case; (2) Uber was not required to produce the custodian in the JCCP; (3) the custodian serves or previously served on Uber's Executive Leadership Team ("ELT"); (4) Uber has agreed to produce either the custodian's direct report or the person to whom the custodian directly reported; and (5) the custodian was involved in lobbying activities at Uber. Ex.1, 2. Some custodians fall only within one category of objection, but Uber has lodged numerous categories of objections against most of these 19 custodians.[8]

Each of Uber's arguments fails. These custodians have relevant, non-duplicative information, based not just on information or belief or even publicly available information, but on review of discovery produced to date. Ex. 9. Uber has not shown that the discovery sought is irrelevant, nor could they. And Uber has failed to (and *cannot*) make any showing that the discovery would be overly burdensome to produce, and certainly not the particularized showing required.[9] Indeed, the parties' lengthy negotiations regarding the number of custodians (55) was largely related to Uber's burden and proportionality objections, and therefore these issues were *already* addressed by the parties and this Court. Accordingly, custodial files for Plaintiffs' selected custodians should be produced.

**A. The Requested Discovery is Proportional to the Needs of the Litigation**

Evaluating the need for discovery considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Rusoff*, 2023 WL 114224, at *2.

1. <u>Importance of the Issues at Stake in the Action</u>: Uber is the largest rideshare company in the world and averaged nearly 26 million trips *per day* in 2023.[10] This litigation

---

[8] To the extent Uber's response brief raises objections not addressed herein, Plaintiffs request an opportunity to respond to these objections in a reply brief.
[9] Despite Plaintiffs' requests for metadata on these custodians, Uber has refused to provide it. Luhana Decl. ¶15.
[10] *Uber Announces Results for Fourth Quarter and Full Year 2023,* Business Wire*,* (Feb. 7, 2024)

involves allegations that Uber has known for at least a decade that Uber users are at risk for sexual assault, but Uber has not done enough to limit that risk. ECF 269 at ¶¶ 117. Over 650 sexual assault survivors have filed cases in the MDL (with hundreds of cases being re-filed in the MDL) alleging they were sexually assaulted by Uber drivers.

   2. <u>Amount in Controversy</u>: It is premature to submit an amount in controversy as Plaintiffs are still working with their experts to establish their position with respect to damages, however the amount in controversy is undisputedly significant.

   3. <u>Relative Access to Information</u>: Discovery is asymmetrical. Plaintiffs are consumers who used the Uber app and as a result, are survivors of sexual assault. Plaintiffs have access to publicly-available information, but otherwise have no access to Uber's ESI.

   4. <u>Parties' Resources</u>: Uber generated $37.2 billion revenue in 2023.[11]

   5. <u>Importance of the Discovery in Resolving the Issues</u>: The ESI likely held by the custodians in dispute touches upon every aspect of Plaintiffs' allegations. See Ex. 9.

   6. <u>Whether the Burden or Expense Outweighs the Likely Benefit</u>: as described above, Uber's burden related to the production of custodial files has already been mitigated. First, by capping custodians at 55, second by setting a search term return limit at 32%, and third, by the use of TAR after search terms. Luhana Dec. ¶ 11; Ex. 6. No additional relief is necessary or warranted. The fraction of duplicate ESI across the disputed custodians and the custodians whom Uber claims to be duplicative is demonstrably low (Ex. 49) and further mitigated by the use of narrow search terms and TAR. *Rusoff*, 2023 WL 114224, at *4; *Meta Pixel*, at *3; *Williams*, 2020 WL 5107639, at *2.[12]

---

https://www.businesswire.com/news/home/20240207898706/en/Uber-Announces-Results-for-Fourth-Quarter-and-Full-Year-2023 (last accessed August 19, 2024).

[11] Mansoor Iqbal, *Uber Revenue and Usage Statistics (2024),* Business of Apps (July 8, 2024), https://www.businessofapps.com/data/uber-statistics/ (last accessed August 19, 2024).

[12] Plaintiffs have demonstrated that the 19 custodians they chose are relevant, proportional and have unique information. Ex. 9. Surprisingly, despite protracted discussions for at least 4 months and the July 8 agreement, on August 9, 2024, Defendants belatedly submitted a list of 19 "alternative" custodians, the majority of majority of which they had never previously proposed as custodians nor disclosed in their Rule 26 disclosures, and many of which had never been discussed between the parties at all. Defendants have not provided any reasons for why these

**B. Uber's Argument that It Does Not Have to Produce Certain Custodians Due to the JCCP Court's Order Should Be Rejected**

Uber objects to four selected custodians (Chang, Graves, Andrew MacDonald, Micheal) on the basis that Judge Schulman denied motions to add those custodians in the JCCP. Ex. 2. This objection is unfounded. This Court (and Judge Breyer) have repeatedly rejected the contention that the MDL is bound by the JCCP decisions, or that what is appropriate in that context is necessarily correct here. For example, this Court explained: "The initial group of custodians in the JCCP does not necessarily reflect the full scope of custodians that would be appropriate in this MDL given that this case is national in scope and includes different claims." ECF 639 at 2; *see also* 6/13/24 H'rg Tr. at 38:20-22 ("We're not bound by the decisions [or] the scope of discovery in the JCCP."). And additional discovery has occurred since Judge Schulman's orders that sheds light on the role these custodians played (as detailed in Ex. 9).

**C. Uber's Argument That It Does Not Have to Produce Certain Custodians Because They are Part of Uber's Executive Leadership Team Should Be Rejected**

Uber objects to producing custodial files for certain custodians (Baker, Joyce, Pham, Richter, Whetstone) because, according to Uber, they are "senior executives" or members of Uber's "executive leadership team" and the agreed custodians include other "ELT members." *See* Ex. 2. While each custodian is likely to possess relevant information (*see supra*), this Court rejected a similar argument in *Rusoff*, ordering discovery from two senior custodians, and overruling objections that "individuals in [the defendant's] control group are already ESI custodians for this case," where plaintiff's assertions that requested custodian had "distinct" communications were more than mere "speculation." 2023 WL 114224, at *2. A person's membership in an executive team means they have important job responsibilities likely not fully shared with others. *See id.* (ordering production from senior managers who had significant roles). Just so here: these custodians had or have important job responsibilities likely not fully shared with others and their discovery is likely not duplicative.

**D. Uber's Argument That It Does Not Have to Produce Certain Custodians Because**

---

custodians are more relevant or less burdensome than Plaintiffs' 19 chosen custodians. Should the Court consider this "alternative" list, Plaintiffs respectfully request an opportunity to respond.

**They are Direct Reports to Other Custodians Should Be Rejected**

Uber objects to producing custodial files for certain custodians (Baker, Kallman, Joyce), because, according to Uber, their files are not proportionate as they are "direct report[s]" of more senior custodians, or their "direct report[s]" are themselves custodians. *See* Ex. 2. This Court rejected a similar argument in *Rusoff*, 2023 WL 114224, at *3-4. Senior personnel, who receive information and recommendations from their junior employees, may then communicate with others who are not their direct subordinates, in making key decisions. Likewise, custodians within the same department who occupy varying roles and supervision levels offer a range of insight, context, and strategic thought that is not captured when limited to only individuals cherrypicked by the producing party. *See Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 50 (S.D.N.Y. 2009)("it may well be…that only the more senior …employees sent or received emails that are relevant to the issues in this case. [] it also may be true that employees at that level took care not to say anything incriminating and that lower-level employees were less guarded in their email communications"); *Facebook*, 2021 WL 10282213, at *2 (ordering senior personnel as additional custodians because "it is possible that" they created communications "without including other custodians"); *Shenwick v. Twitter, Inc.*, 2018 WL 833085, at *1 (N.D. Cal. Feb. 7, 2018)("[t]he idea that responsive documents will necessarily be found in other custodians' records is not sufficient to defeat a search of [proposed custodian's] files. [] one custodian may have created a document, such as handwritten notes, that no other custodian possesses.").

**E. Uber's Argument That It Does Not Have to Produce Certain Custodians Because These Custodians Related to Uber's Lobbying Efforts Should Be Rejected**

Uber objects to producing two custodians (Blinick, Kintz) because the employes were involved in Uber's lobbying activities. Ex. 2. Uber argues that these custodians are inappropriate because the JCCP denied JCCP Plaintiffs' motion to compel documents related to Uber's lobbying activities. *Id*. But, as discussed above, this Court is not bound by the JCCP's discovery rulings, nor should it be. Further, discovery into lobbying activities is not precluded under the *Noerr-Pennington* doctrine. The doctrine has no bearing here—it is not a bar to discovery of lobbying activity, but rather only a partial bar to liability for certain types of lobbying activity.

1  *See, e.g.*, *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006); *Natural-Immunogenics Corp
2  v. Newport Trial Grp.*, 2018 WL 6137597, at *4 (C.D. Cal. May 16, 2018) ("*Noerr-Pennington* is
3  not an evidentiary privilege and only a limitation on liability"); *Wal-Mart Stores, Inc. v. City of
4  Turlock*, 2005 WL 8176355, at *3 (E.D. Cal. Jan. 28, 2005).

Moreover, Uber's lobbying activities are relevant because Uber lobbied extensively to avoid regulations that would have made Uber Riders. Indeed, Uber spent millions for the enactment of laws and regulations that would identify Uber as merely a technology platform in order to avoid liability and responsibility for Rider safety. ECF 269 ¶ 31. Uber's lobbying efforts touched other areas as well, including efforts to defeat requirements for driver biometric fingerprinting. *Id*. at ¶ ¶156, 185. Uber's lobbying efforts relate directly to Plaintiffs' claims that Uber implemented adequate safety measures, deliberately misled users regarding their safety, and failed to adequately screen its drivers. Such discovery does not run afoul of *Noerr-Pennington*. *See, e.g.*, *In re JUUL Labs, Inc., Mkt., Sales. Prac., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 614 (N.D. Cal. 2020) ("doctrine does not foreclose use of communications to the government as evidence, e.g., of knowledge, intent, state of mind") (citation omitted). And finally, even if Uber's lobbying efforts were irrelevant (they are not), these custodians still likely have other relevant and unique documents. Ex. 9.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court order Uber to produce complete custodial files for the custodians identified herein.

Dated: August 19, 2024

Respectfully submitted,

By: */s/ Sarah R. London*
    Sarah R. London (SBN 267083)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

1
2  By: */s/ Rachel B. Abrams*
3  Rachel B. Abrams (SBN 209316)
4  **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
5  555 Montgomery Street, Suite 820
   San Francisco, CA 94111
6  Telephone: (415) 426-5641
   Facsimile: (415) 840-9435
7  rabrams@peifferwolf.com

8  By: */s/ Roopal P. Luhana*
9  Roopal P. Luhana

10 **CHAFFIN LUHANA LLP**
   600 Third Avenue, 12th Floor
11 New York, NY 10016
   Telephone: (888) 480-1123
12 Facsimile: (888) 499-1123
   luhana@chaffinluhana.com
13
   *Co-Lead Counsel*
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Sarah R. London*