UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**<br><br>This Document Relates to:<br><br>All Cases | No. 3:23-md-03084-CRB<br><br>**DECLARATION OF ROOPAL P. LUHANA, ESQ. IN SUPPORT OF MOTION TO COMPEL CUSTODIAL DISCOVERY**<br><br>Judge: Honorable Lisa J. Cisneros<br>Date: TBD<br>Time: TBD<br>Via: TBD |

I, Roopal P. Luhana, declare and state as follows:

1. I am an attorney in the law firm of Chaffin Luhana LLP, appointed Co-Lead counsel for Plaintiffs in the above-captioned Multi-District Litigation. I am a member of the State Bar of New York and am admitted pro hac vice to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2. I submit this Declaration in support of Plaintiffs' Motion to Compel Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's (collectively "Uber") to produce custodial discovery.

3. The parties have been negotiating a custodian list since April 2024. Plaintiffs sent an initial list of 100 proposed custodians to Uber on May 3, 2024 and reduced that list to 50 custodians on June 17, 2024. Uber provided objections to Plaintiffs' selected custodians on June 19, 2024 and July 29, 2024. True and accurate copies of Uber's objections provided on those dates are attached hereto as Exhibit 1 and 2, respectively.

4. A true and accurate copy of Uber's proposed custodian list, provided to Plaintiffs on April 26, 2024, is attached hereto as Exhibit 3.

5. A true and accurate copy of the roles and dates of employment for the 50 custodians on Plaintiffs' June 17, 2024 list, provided by Uber on July 8, 2024, is attached hereto as Exhibit 4.

6. Because the parties could not reach an agreement on the number or identity of custodians despite *numerous* meet and confer conferences, the Court ordered the parties to attend a July 8, 2024 in-person meet and confer conference. Although Plaintiffs intended to leave that meeting with an agreed list of custodians, counsel for Uber was unwilling to engage in meaningful discussions about each individual and instead insisted on negotiating a number of custodians, arguing that the determinative factor for Uber is the cost of production, which in turn is determined by the number of custodial files in the production. As a result, the parties agreed on July 8 to a cap of 55 custodians but agreed that MDL Plaintiffs' counsel would select the 55 custodians in conjunction with JCCP Plaintiffs' counsel. A true and accurate copy of the email the parties provided to the Court on July 8, outlining the parties' agreement, is attached hereto as Exhibit 5.

7. This agreement was intended to reduce the burden on Uber. Plaintiffs' initial reduction from 100 to 50 custodians was made in response to Uber's objections on the basis of proportionality and burden. Prior to the July 8 negotiations, Uber was separately negotiating the production of these 50 custodians in the MDL, unique from the 26 custodians that had been agreed upon in the JCCP. Additionally, Uber was separately negotiating the production of ESI from some number of additional custodians in the JCCP. Had the MDL and JCCP Plaintiffs not agreed to work together, Uber was facing production of significantly more than 55 custodians.

8. Pursuant to the agreement, JCCP Plaintiffs' counsel selected 26 custodians and MDL Plaintiffs' counsel selected the remaining 29. Uber objects to 19 of Plaintiffs' 29 selected custodians. *See* ECF 693.

9. Separately, the parties have been negotiating search terms for months since March 2024. The Court required the parties to attend an in-person meet and confer on August 1, 2024

since the parties were unable to agree on search terms. Unfortunately, those discussions spanned over two days on August 1 and August 2. Only after the two-day meet and confer with oversight and guidance from the Court, did the parties negotiate and reach an agreement on search terms. Again, this agreement was made in response to Uber's proportionality and burden objections. As a result of these negotiations, the parties reached a compromise that the agreed-upon search terms would hit on no more than 32% of a sample set of documents. (ECF 779 at 2). As a result, Uber's document production burden has been significantly reduced.

10. Aside from the objections contained in Exhibits 1 and 2, Uber has not provided any other written objections to the 19 custodians at issue; per the July 8 agreement, Defendants were to provide their objections to custodians by July 29.  During a meet and confer conference on August 12, 2024, Uber did not identify any further objections beyond those contained in Exhibits 1 and 2, nor point to any other written correspondence or documentation containing additional objections.

11. As described by Plaintiffs' ESI expert, Doug Forrest, Uber's burden and relevancy objections are meritless for at least four reasons: (1) Uber's collection will be deduplicated pursuant to the ESI Order; therefore, any duplicates in disputed custodian documents will be filtered out before any review and will have no or minimal effect on Uber's efforts; (2) using narrowed search terms with a 32% return rate significantly narrows the universe of relevant discovery; (3) the TAR 2.0 process will largely weed out the non-duplicate, non-responsive documents of the 19 disputed custodians without any manual review by Uber; and (4) to the extent that the disputed 19 custodians have non-duplicate *responsive* documents, those documents will be produced. A true and accurate copy of Forrest Declaration is attached hereto as Exhibit 6.

12. Additionally, pursuant to the Parties' July 8 agreement, Uber provided partial metadata for the 26 potential custodians that Uber had agreed to produce at that time. This metadata consisted of hit counts using the JCCP search terms and was provided as the number of preserved documents of any kind for each year of the potential custodian's employment, and separately, the number of preserved emails for each year of the potential custodian's employment. True and accurate copies of this metadata are attached hereto as Exhibits 7 and 8.

13. Plaintiffs requested that Uber provide this information to assist Plaintiffs' evaluation and selection of custodians because the parties disputed whether litigation hold dates should be considered in selecting custodians. Plaintiffs were and are still concerned about Uber's document destruction policies and therefore made custodial selections based in part on litigation hold dates, while Uber maintained that litigation hold dates were not indicative of document populations. Based in part on this metadata, Plaintiffs did not agree to accept certain custodians that had been previously agreed upon in the JCCP.

14. For example, Plaintiffs did not agree to accept Emilie Boman, who worked at Uber from 2016 to 2024, but had not preserved emails from 2016 or 2018, only 41 preserved emails from 2018, and a reduced number in 2019. (Ex. 3, 8).  Ms. Boman's first litigation hold was placed in May 2020 and should have preserved documents from six months prior to that date and forward. Another custodian, Troy Stevenson, has no preserved emails until 2021, despite having joined Uber in 2016. *Id*. His first litigation hold was placed in October of 2019 and should have preserved documents from six months prior to that date and forward. Thus, the metadata shows Uber's document preservation is inconsistent with Uber's statements that litigation hold dates are not indicative of number of documents preserved as six years of Mr. Stevenson's emails were deleted. Nonetheless, Plaintiffs did not seek to retract their agreement to accept Mr. Stevenson as one of the nine (9) non-negotiable custodians.

15. Given the importance of this metadata in considering the likelihood that a custodian possesses relevant, discoverable information, Plaintiffs requested that Uber provide this information for any custodian that Uber objected to producing. Although Uber initially agreed during the July 8 meeting to endeavor to do so and agreed to the same in writing (ECF 693 at 2-3), Uber has not provided metadata for these 19 disputed custodians. Further, although Uber offered to provide total document counts for the 19 custodians, it would not provide the information broken down by year of employment. Whether documents were properly preserved cannot be determined by the total documents over the entire course of employment and Plaintiffs are unable to assess what years custodians have documents for without this data.  Accordingly,

1   Plaintiffs informed Defendants that this information is not helpful without this detail. Moreover,
2   if the custodial data is collected, providing document count by year is easy to extract and produce.
3     16. Attached hereto as Exhibit 9 is a chart showing the relevance of the disputed
4   custodians. In the interest of judicial efficiency, Plaintiffs have provided only a limited number of
5   documents from Uber's document production as exhibits to show the relevance of these
6   custodians, as referenced herein:
7     a. Attached hereto as Exhibit 10 is a true and accurate copy of a document
8   produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000118166.
9     b. Attached hereto as Exhibit 11 is a true and accurate copy of an excerpt of a
10  document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000003836.
11    c. Attached hereto as Exhibit 12 is a true and accurate copy of a document
12  produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000041223.
13    d. Attached hereto as Exhibit 13 is a true and accurate copy of a document
14  produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000487300.
15    e. Attached hereto as Exhibit 14 is a true and accurate copy of a document
16  produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000118897.
17    f. Attached hereto as Exhibit 15 is a true and accurate copy of a document
18  produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000089689.
19    g. Attached hereto as Exhibit 16 is a true and accurate copy of a document
20  produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000480423.
21    h. Attached hereto as Exhibit 17 is a true and accurate copy of a document
22  produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000089475.
23    i. Attached hereto as Exhibit 18 is a true and accurate copy of the deposition
24  transcript of Brad Rosenthal, taken October 24, 2023 in Case No. CJC-21-005188.
25    j. Attached hereto as Exhibit 19 is a true and accurate copy of a document
26  produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000126883.
27    k. Attached hereto as Exhibit 20 is a true and accurate copy of a document
28  produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000445388.

1       l.      Attached hereto as <u>Exhibit 21</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000127294.

m.      Attached hereto as <u>Exhibit 22</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000127303.

n.      Attached hereto as <u>Exhibit 23</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000041066.

o.      Attached hereto as <u>Exhibit 24</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000051100.

p.      Attached hereto as <u>Exhibit 25</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000148062.

q.      Attached hereto as <u>Exhibit 26</u> is a true and accurate copy of an excerpt of a document produced by Uber in this litigation bearing Bates No. UBER-MDL-000367724.

r.      Attached hereto as <u>Exhibit 27</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000445039.

s.      Attached hereto as <u>Exhibit 28</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000497336.

t.      Attached hereto as <u>Exhibit 29</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000331904.

u.      Attached hereto as <u>Exhibit 30</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000390248.

v.      Attached hereto as <u>Exhibit 31</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000119163.

w.      Attached hereto as <u>Exhibit 32</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000127632.

x.      Attached hereto as <u>Exhibit 33</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000128011.

y.      Attached hereto as <u>Exhibit 34</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000114997.

1        z.        Attached hereto as <u>Exhibit 35</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000426456.

aa.        Attached hereto as <u>Exhibit 36</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000485056.

bb.        Attached hereto as <u>Exhibit 37</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000116748.

cc.        Attached hereto as <u>Exhibit 38</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000118795.

dd.        Attached hereto as <u>Exhibit 39</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000354195.

ee.        Attached hereto as <u>Exhibit 40</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000041367.

ff.        Attached hereto as <u>Exhibit 41</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000040686.

gg.        Attached hereto as <u>Exhibit 42</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000121053.

hh.        Attached hereto as <u>Exhibit 43</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000497591.

ii.        Attached hereto as <u>Exhibit 44</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000125718.

jj.        Attached hereto as <u>Exhibit 45</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000445244.

kk.        Attached hereto as <u>Exhibit 46</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000455607.

ll.        Attached hereto as <u>Exhibit 47</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-DFS000530529.

mm.        Attached hereto as <u>Exhibit 48</u> is a true and accurate copy of a document produced by Uber in this litigation bearing Bates No. UBER-MDL3084-000320357.

17. To address Uber's claims of cumulative or duplicative custodians, Plaintiffs conducted a search of the documents Uber had produced as of August 12, 2024. First, Plaintiffs performed searches to find all email addresses and other names used by all proposed custodians and claimed duplicative custodians. Next, Plaintiffs performed a search to find all documents that contain either the proposed custodian's name or email address. Plaintiffs then searched for documents containing either the proposed Custodian's name or email address AND either the claimed duplicative custodian's name or email address to determine overlapping documents between the proposed and claimed duplicative custodian. Each claimed duplicative custodian was searched against the proposed custodian individually. To determine a unique document count for each proposed custodian, Plaintiffs performed a search of the proposed Custodian's documents against all claimed duplicative custodians to return a result for all documents that do not include any overlap between the proposed custodian and any duplicative custodian. All searches were performed using a Boolean wildcard character to account for the potential use of nicknames. This search methodology may exclude documents that only contain the custodian's first name without their surname and/or email address, however, that is a negligible number of documents based on Plaintiffs' review and generally, those documents would not clearly appear in a custodian's file (typically these are documents where a custodian is referenced by another author but not otherwise included in or shown to have received the document). A chart with these results, representing exact or close approximations of the exact document counts, is attached hereto as Exhibit 49.

18. The document counts in Exhibit 49 are derived from a limited and heavily skewed set of documents. The documents produced so far are either responsive to PTO 5 (documents from other litigations or investigations), Defendant Fact Sheets (PTO 10), or they are documents that Uber produced in the JCCP from the first nine custodial files (Gus Fuldner, Jill Hazelbaker, Rachel Holt, Roger Kaiser, Jodi Kawada Page, Katy McDonald, Andi Pimentel, Nick Silver, and Troy Stevenson). Given that these are the sole sources of documents produced to date, the document universe as a whole, and therefore the document counts in Exhibit 49, are heavily skewed toward the custodians Uber claims are cumulative and duplicative, and therefore, heavily

skewed toward overlap. Nonetheless, the numbers support that the overlap between the disputed and agreed custodians is minimal and these custodians are not cumulative and duplicative.

19. On August 9, 2024, Uber belatedly proposed for the first time, a list of 19 custodians that it proposed as substitutes or alternatives. Uber provided this list well after custodian negotiations were closed per the parties' July 8 agreement, and after the briefing process was supposed to have begun per that agreement. The majority of these individuals were not on Uber's Rule 26 disclosures, were not on Uber's initial list of custodians provided on April 26, and were never proposed by Uber as relevant custodians until August 9. Indeed, before August 9, Uber objected to Plaintiffs' selection of some of those custodians up to the time Uber provided its list on August 9. Still today, Uber has not explained whether any one of their proposed custodians is more relevant or less burdensome than any of the disputed custodians and indeed, admits that their list was not intended to be direct or one-for-one replacements for any of the disputed custodians.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 19, 2024, in Brooklyn, New York.

                                        */s/ Roopal P. Luhana*
                                            Roopal P. Luhana