# EXHIBIT 2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# For Meet and Conferral Purposes – Uber's Objections to Selected Custodians Proposed by MDL Plaintiffs

1) **Brooke Anderson**
    - Anderson's role in safety communications to the public overlaps with agreed custodian Tracey Breeden's (2016-2018 for Breeden vs 2016-2019 for Anderson), thus Ms. Anderson is cumulative and duplicative of Ms. Breeden.
    - Ms. Anderson is in agreed custodian Jill Hazelbaker's reporting chain, and Ms. Hazelbaker would have been involved in the strategic direction for any marketing campaigns Plaintiffs referenced on May 23 as a basis for requesting Ms. Anderson as a custodian. Therefore, Ms. Anderson is cumulative and duplicative of Ms. Hazelbaker.

2) **Ed Baker**
    - Uber has already agreed to produce the custodial files of multiple senior executives/ELT members who are responsible for areas of the business directly relevant to the claims and defenses in this litigation. Plaintiffs are not entitled to the custodial files of every senior executive at Uber.
    - In Plaintiffs' 6/24 response to Uber's stated objections to Mr. Baker as a custodian in this litigation, Plaintiffs speculated about "missing" documents from agreed custodian Travis Kalanick's folder, because Mr. Baker was under a legal hold roughly a year earlier than Mr. Kalanick. However, both Mr. Baker and Mr. Kalanick were under legal holds as of 9/1/2015. Furthermore, Mr. Kalanick's file contains over a million documents each for 2013 and 2014–amounting to almost 2.4 million of the 3,352,135 total documents in Mr. Kalanick's file. Mr. Kalanick's file is also the most voluminous custodial file collected. Therefore, "missing" documents due to Kalanick's slightly later legal hold are unlikely, and no reason to add Mr. Baker as a custodian.
    - Mr. Baker reported directly to Mr. Kalanick.
        - As the founding CEO of a fast-growing startup, Mr. Kalanick would naturally have a focus on strategies for growing the Company, and can provide relevant and proportional information on growth from the strategic perspective.
    - Danielle Sheridan provides an operational perspective on driver growth due to her regional (2014-2015) operations experience and senior management positions related to driver growth and experience (2015-2017). Andi Pimentel also held a senior business development role from 2014-2019. Moreover, Carley

1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# For Meet and Conferral Purposes – Uber's Objections to Selected Custodians Proposed by MDL Plaintiffs

Lake was involved in launching Uber new markets. These custodians, in concert with Travis Kalanick, provide relevant and proportional coverage of Uber's business development.
- To the extent Plaintiffs seek information about driver onboarding and background checks, Uber has proposed multiple relevant custodians, including Phil Cardenas (head of safety), and Roger Kaiser (head of safety operations). Mr. Baker is thus cumulative and duplicative as to these topics.

3) **Adam Blinick**
   - On both 5/23 and 6/24 Plaintiffs' cited their belief Mr. Blinick was involved in lobbying as their rationale for selecting him as a custodian.
   - On July 8, MDL Plaintiffs agreed on a custodian list "that will be for both the JCCP and the MDL," and reported this agreement to the Court.
   - In the JCCP, Judge Schulman ruled against Plaintiffs' motion to compel documents related to Uber's lobbying activities, in a ruling substantially grounded in the federal *Noerr-Pennington* doctrine and thus equally applicable to the MDL.
   - In light of Judge Schulman's ruling, Mr. Blinick is improper as a JCCP custodian, and thus as a custodian on a joint JCCP+MDL custodian list.
   - Further, to the extent Plaintiffs may seek Mr. Blinick for information as to public policy related to safety, Uber's proposed custodians Emilie Boman, Elise Maiolino, and Alex Madsen, who were not on Plaintiffs' proposed custodian list, are more directly relevant. Ms. Boman held senior roles related to public policy and safety and is Uber's primary point of contact for a number of advocacy organizations. Ms. Madsen has held critical roles as Head of Women's Safety and Global Head of Interpersonal Violence. Ms. Maiolino succeeded Ms. Madsen as Head of Women's Safety. Uber remains willing to accept Ms. Boman, Ms. Madsen, and Ms. Maiolino as custodians.

4) **Frank Chang**
   - On July 8, MDL Plaintiffs agreed on a custodian list "that will be for both the JCCP and the MDL," and reported this agreement to the Court.
   - JCCP Plaintiffs moved to compel Mr.Chang's custodial file; Judge Schulman denied JCCP Plaintiffs' motion.

2

# For Meet and Conferral Purposes – Uber's Objections to Selected Custodians Proposed by MDL Plaintiffs

- It is improper for Plaintiffs to attempt an end run around Judge Schulman's ruling by proposing Frank Chang for a joint JCCP and MDL custodian list.
- The grounds on which Judge Schulman denied JCCP Plaintiffs' motion to compel Mr. Chang's file–namely, that Mr. Chang is cumulative and duplicative of Katy McDonald and Gus Fuldner - apply equally to the MDL.

5) **Ryan Graves**
    - On July 8, MDL Plaintiffs agreed on a custodian list "that will be for both the JCCP and the MDL," and reported this agreement to the Court.
    - JCCP Plaintiffs moved to compel Graves' custodial file; Judge Schulman denied their motion.
    - It is improper for Plaintiffs to attempt an end run around Judge Schulman's ruling by proposing Ryan Graves for a joint JCCP and MDL custodian list.
    - Further, the grounds on which Judge Schulman denied JCCP Plaintiffs' motion to compel Graves' file - namely that JCCP Plaintiffs could not establish " a connection between Mr. Graves's role with Uber and any safety or other issues relevant to the instant proceeding." are equally applicable to the MDL.
    - Additionally, Uber has already agreed to produce the custodial files of multiple senior executives/ELT members who are responsible for areas of the business directly relevant to the claims and defenses in this litigation. Plaintiffs are not entitled to the custodial files of every senior executive at Uber.

6) **Nairi Hourdajian**
    - Ms. Hourdajian is not relevant to Plaintiffs' claims and defenses in this Action.
    - Plaintiffs' own rationale for including Ms. Hourdajian only speaks to her "building out the communications role" and claims that she was "Uber's first Communications employee."
    - Further, Plaintiffs appear to seek Ms. Hourdajian as a custodian on the basis of a 2014 quote Plaintiffs reference in RFP 128, to which Plaintiffs obliquely allude in their May 23 rationale for selecting Ms. Hourdaijian ("knowledge of Uber legal and regulatory obstacles"). This quote is missing context or tone, and furthermore relates to certain alleged activities occurring outside the United States, with no nexus to sexual assault or sexual misconduct by independent drivers against riders.

3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# For Meet and Conferral Purposes – Uber's Objections to Selected Custodians Proposed by MDL Plaintiffs

      i)    Because, inter alia, this Request has no nexus to the claims and defenses in this Action or even to Uber activities within the United States, Uber has objected to providing documents under this RFP.

**7) Meghan Joyce**
- Uber has already agreed to produce the custodial files of multiple ELT members
- Ms. Joyce's direct report, Troy Stevenson, is a custodian. Stevenson is more appropriate and proportional for this litigation, given his direct responsibility for Community Operations under Ms. Joyce.
- Given that custodial files both for Ms. Joyce's direct report for Community Operations and those numerous other senior executives will already be produced, the addition of Ms. Joyce is cumulative and not proportional to this case.
- Additionally, Uber remains willing to accept Uber proposed Emily Richter-Eason, a Senior Program Leader in Community Operations with direct involvement in global safety and compliance issues.

**8) Matt Kallman**
- As Uber's VP of Communications, Mr. Kallman has a global role that is considerably broader in scope than the claims and defenses in this litigation.
- Mr. Kallman's communications role substantially overlaps with agreed custodian Jodi Kawada Page, who had a more direct role in communications related to the claims and defenses in this litigation. Thus, Mr. Kallman is largely cumulative and duplicative of Ms. Page. Mr. Kallman's role in safety communications is also covered in part by a custodian with a direct role in safety communications, Tracey Breeden. Thus, Mr. Kallman is cumulative and duplicative in part of Ms. Breeden.
- Mr. Kallman is a direct report of agreed custodian Jill Hazelbaker, and his tenure at Uber wholly overlaps with Ms. Hazelbaker's. Ms. Hazelbaker would have been involved in the strategic direction for marketing campaigns that Plaintiffs referenced on May 23 as a basis for requesting Mr. Kallman as a custodian. Thus, he is also cumulative and duplicative of Ms. Hazelbaker.
- Mr. Kallman was not on MDL Plaintiffs' list of 50 proposed custodians Judge Cisneros ordered MDL Plaintiffs to provide Uber in her Order regarding the custodians PTO 8 letter brief.

4

# For Meet and Conferral Purposes – Uber's Objections to Selected Custodians Proposed by MDL Plaintiffs

- Plaintiffs have dropped Uber-proposed custodian Kate Parker, who was director of Safety Marketing from 2016-2020. Ms. Parker is highly relevant to the claims and defenses in this litigation, and would be a more appropriate custodian than Mr. Kallman.

9) **Justin Kintz**
    - On both 5/23 and 6/24 Plaintiffs' cited their belief Mr. Kintz was involved in lobbying as their rationale for selecting him as a custodian.
    - On July 8, MDL Plaintiffs agreed on a custodian list "that will be for both the JCCP and the MDL," and reported this agreement to the Court.
    - In the JCCP, Judge Schulman ruled against Plaintiffs' motion to compel documents related to Uber's lobbying activities, in a ruling substantially grounded in the federal *Noerr-Pennington* doctrine and thus equally applicable to the MDL.
    - In light of Judge Schulman's ruling, Mr. Kintz is improper as a JCCP custodian, and thus as a custodian on a joint JCCP+MDL list.
    - Further, to the extent Plaintiffs may seek Mr. Kintz for information as to public policy related to safety, Uber's proposed custodians Emilie Boman, Elise Maiolino, and Alex Madsen, who were not on Plaintiffs' proposed custodian list, are more directly relevant. Ms. Boman held senior roles related to public policy and safety and is Uber's primary point of contact for a number of advocacy organizations. Ms. Madsen has held critical roles as Head of Women's Safety and Global Head of Interpersonal Violence. Ms. Maiolino succeeded Ms. Madsen as Head of Women's Safety. Uber remains willing to accept Ms. Boman, Ms. Madsen, and Ms. Maiolino as custodians.

10) **Andrew Macdonald**
    - On July 8, MDL Plaintiffs agreed on a custodian list "that will be for both the JCCP and the MDL," and reported this agreement to the Court.
    - JCCP Plaintiffs moved to compel Mr. Macdonald's custodial file; Judge Schulman denied their motion.
    - It is improper for Plaintiffs to attempt an end run around Judge Schulman's ruling by proposing Andrew Macdonald for a joint JCCP and MDL custodian list.
    - Furthermore, the grounds on which Judge Schulman denied JCCP Plaintiffs' motion to compel Mr. Macdonald's file - namely that Dennis Cinelli, Rachel Holt,

5

**For Meet and Conferral Purposes – Uber's Objections to Selected Custodians Proposed by MDL Plaintiffs**

and Uber-proposed custodian Camiel Irving (not on Plaintiffs' current list), as well as Troy Stevenson, are the appropriate custodians to cover subject matter areas such as Uber's Rides business, Community Operations, and statements related to the panic button on the Uber app in Chicago. As Judge Schulman noted, these custodians provide more comprehensive, targeted, and relevant documents than Mr. Macdonald's files.

   i)   Uber remains willing to accept Camiel Irving as a custodian. Ms. Irving was initially proposed by Uber as a custodian but dropped by Plaintiffs, despite her clear relevance to the core issues in this litigation as current VP and General Manager of U.S. and Canada Mobility Operations as well as prior senior roles in Uber's Marketplace organization and Rider Engagement operations.

**11) Emil Michael**
- On July 8, MDL Plaintiffs agreed on a custodian list "that will be for both the JCCP and the MDL," and reported this agreement to the Court.
- JCCP Plaintiffs moved to compel Michael's custodial file; Judge Schulman denied their motion.
- It is improper for Plaintiffs to attempt an end run around Judge Schulman's ruling by proposing Emil Michael for a joint JCCP and MDL custodian list.
- Furthermore, the grounds on which Judge Schulman denied JCCP Plaintiffs' motion to compel Michael's file - namely, that he was the driving force of Uber's initial capital campaign and not a decision maker regarding Uber's policies, are equally applicable to the MDL. Further, Judge Schulman found that the fact of Mr. Michael's close relationship with Mr. Kalanick does not establish that he is a relevant custodian, and JCCP Plaintiffs could not establish a nexus between "embarrassing incidents" allegedly involving Mr. Michael and the issues involved in that proceeding.

**12) Thuan Pham**
- Uber has already agreed to produce the custodial files of multiple senior executives/ELT members who are responsible for areas of the business directly relevant to the claims and defenses in this litigation. Plaintiffs are not entitled to the custodial files of every senior executive at Uber.

6

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

**For Meet and Conferral Purposes – Uber's Objections to Selected Custodians Proposed by MDL Plaintiffs**

- Mr. Pham's role at Uber was as Chief Technology Officer, a senior executive role that is broad in scope and removed from the claims and defenses in this Action.
- The CTO role encompasses all technology employed at the company; to the extent Plaintiffs need information about app feature development they have several custodians directly involved, and rejected several relevant custodians proposed by Uber as well, such as Mike Akamine (Director, Product Management since 2019) and Rebecca Payne (Senior Product Manager since 2018)..
- To the extent Mr. Pham was involved in strategic discussions at the senior executive level in connection with relevant issues, he is cumulative and duplicative of other senior executive custodians, including Mr. Kalalnick, Mr. Fuldner, and Ms. Hazelbaker.

**13) Cameron Poetzscher**
- Mr. Poetzscher's roles at Uber were primarily related to mergers and acquisitions, and raising capital. Mr. Poetzscher was a dealmaker, not a decision maker regarding Uber's policies.
- Therefore, Mr. Poetzscher is not relevant to this litigation.

**14) David Richter**
- Uber has already agreed to produce the custodial files of multiple senior executives/ELT members who are responsible for areas of the business directly relevant to the claims and defenses in this litigation. Plaintiffs are not entitled to the custodial files of every senior executive at Uber.
- Mr. Richter was Senior Vice President for Business, a role that is broad in scope and removed from the claims and defenses in this Action. Mr. Richter succeeded Emil Michael in this role, and the arguments above that apply to Mr. Michael, who JCCP Plaintiffs fought to include as a custodian but lost, apply likewise to Mr. Richter.
- Prior to succeeding Mr. Michael as Uber's SVP for Business, Mr. RIchter was responsible for corporate partnerships. That role is also irrelevant to the claims and defenses in this litigation.
- Further, Plaintiffs first proposed Mr. Richter as a potential custodian on July 16; Mr. Richter was not on MDL Plaintiffs' initial list of 100 proposed custodians, and Mr. Richter was not on MDL Plaintiffs' list of 50 custodians Judge Cisneros

**For Meet and Conferral Purposes – Uber's Objections to Selected Custodians Proposed by MDL Plaintiffs**

ordered MDL Plaintiffs to provide Uber in her Order regarding the custodians PTO 8 letter brief.

**15) Joe Sullivan**
- Uber has already agreed to produce the custodial files of multiple senior executives/ELT members who are responsible for areas of the business directly relevant to the claims and defenses in this litigation. Plaintiffs are not entitled to the custodial files of every senior executive at Uber.
- Joe Sullivan, who served as Uber's Chief Security Officer, is not a relevant custodian. His roles and responsibilities related primarily to cybersecurity. This is not a data breach case.
- Plaintiffs claimed on June 24 that they selected Mr. Sullivan for his roles related retention policies. While Uber disputes that discovery into its data retention policies are relevant to the core issues in this litigation, Plaintiffs' claim is incorrect on its face. Plaintiffs already have relevant and proportional information about Uber's retention policies over time, including the JCCP deposition of William Anderson, which was provided to MDL Plaintiffs along with the associated exhibits, various disclosures made to JCCP Plaintiffs that were subsequently provided to MDL Plaintiffs, and K. Smith's January 16, 2024 letter to MDL Plaintiffs that included detailed information regarding retention policies and litigation holds.

**16) Pat Twomey**
- Mr. Twomey's data science and analytics role covers a broad scope of responsibilities, each of which is cumulative and duplicative of one or more agreed custodians.
- To the extent Plaintiffs selected Mr. Twomey because he held a data and analytics role at Uber, as Plaintiffs stated on May 23 and June 24, he is cumulative and duplicative of agreed custodians Katy McDonald and Mark Jones. Ms. McDonald is the relevant custodian for safety-related data and analytics. As Plaintiffs described on June 24, Mr. Jones was selected in part for "his role in using data analysis to address safety concerns." Further, Mr. Twomey did not work on the U.S. Safety Reports.
- To the extent Mr. Twomey was selected, as Plaintiffs stated on May 23, for his involvement in driver activation and maintenance of driver supply, such

8

**For Meet and Conferral Purposes – Uber's Objections to Selected Custodians Proposed by MDL Plaintiffs**

> information is obtainable from custodians with direct involvement in those issues from an Operations or Rides business perspective. These business organizations are necessarily informed by data and analytics, and thus managers in these organizations would have relevant and proportional data-and-analytics-related information. Therefore, the relevant and proportional information Mr. Twomey could provide on these topics is cumulative and duplicative of the following agreed custodians:
> - Greg Brown, who held Operations-related management roles informed by analytics from 2014-2017; Dennis Cinelli, who rose to VP of Operations; and Andi Pimentel, who held Operations roles from 2012-2014.
> - Sarfraz Maredia, who led Uber's Rides business; and Rachel Holt, who held a variety of senior Rides business management roles from 2011-2018 ranging from launching Uber in the Washington, D.C. market, to overseeing the Rides business in the US and Canada, and also was a member of Uber's ELT.
- To the extent Mr. Twomey was selected, as Plaintiffs stated on May 23, for his roles related to growth and business development, Plaintiffs can obtain relevant and proportional information related to data and analytics that inform growth from agreed custodians involved in development and growth including Danielle Sheridan, who in addition a relevant Operations role served as a senior manager for Driver Growth and Experience from 2015-2017, and Andi Pimentel, who was involved in business development in addition to her previously-discussed Operations roles.
- Additionally, Mr. Twomey is cumulative and duplicative of Travis Kalanick and Dara Khosrowshahi, who as Uber's CEOs provide strategic direction on issues related to Uber's growth and development informed by relevant data and analytics.

**17) Rachel Whetstone**
- Ms. Whetstone was a senior executive at Uber for under 2 years.
- To the extent relevant, Ms. Whetstone is cumulative and duplicative of the following agreed custodians in both subject matter and time.
    i) Phil Cardenas as to issues related to safety and safety communication, for the first half of Ms. Whetstone's short tenure at Uber, and Jodi Kawada

9

**For Meet and Conferral Purposes – Uber's Objections to Selected Custodians Proposed by MDL Plaintiffs**

        Page as to safety communications in the second half of Ms. Whetstone's short tenure at Uber.

  ii)    Tracey Breeden as to communications related to safety issues generally, and women's safety specifically, for the second half of Ms. Whetstone's short tenure at Uber.

  iii)    Jill Hazelbaker as to  communications and, to the extent relevant, public policy, for all of Ms. Whetstone's tenure. Further, Ms. Whetstone reported into Ms. Hazelbaker

  iv)    Travis Kalanick as to the general strategic direction of Uber as it relates to the claims and defenses in this litigation, for all of Ms. Whetstone's short tenure at Uber.