UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT AND PROPOSED AGENDA**<br><br>Date:      August 29, 2024<br>Time:      10:00 a.m.<br>Judge:     Hon. Charles R. Breyer<br>Courtroom: G – 15th Floor |

**JOINT STATUS CONFERENCE STATEMENT**

In advance of the status conference set by the Court in this action for Thursday, August 29, 2024 at 10:00 a.m. via Zoom videoconference, Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the Parties"), submit this Joint Status Conference Statement.

**PROPOSED AGENDA**

1. **Status of Case Filings**
2. **Motions**
3. **Proposals Following Order on Motions to Dismiss**
4. **Discovery**
5. **Settlement Special Master**
6. **Next Case Management Conference**

**I.   STATUS OF CASE FILINGS**

**Number of MDL Case Filings**

As of August 27, 2024, there are more than 1,000 cases pending in this MDL. The parties can supply the Court a specific number once the waves of former-JCCP cases complete processing.

**Status of JCCP**

Roughly 1,650 cases are pending in the JCCP (not yet accounting for cases that have been refiled in other jurisdictions following the affirmance of the FNC order).

**Other Cases and Proceedings**

A list of other proceedings known to Plaintiffs is attached as **Exhibit A.**

**II.   MOTIONS**

On August 19, 2024, the Ninth Circuit granted Uber permission to appeal the Court's Order denying Defendants' Terms of Use Motion, and denied Uber's request for a stay pending appeal. That appeal has been consolidated with Uber's appeal of the JPML's Coordination Order, and argument on both matters will be heard on October 8, 2024. Supplemental briefs are due September 3, 2024.

### III. PROPOSALS FOLLOWING ORDER ON MOTIONS TO DISMISS

**Plaintiffs' Position:**

**1. Individual Amendments**

In its order on the motion to dismiss claims under California and Texas law, the Court identified three claims that included essential individualized elements: ratification, fraud, and strict products liability.[1] The Court recognized that, for at least some issues, the contents of the Defense Fact Sheet (DFS) could potentially support amended pleadings.

The Court should pursue the important goal of determining the scope of claims in the MDL, but do so through the most efficient mechanism. Uber proposes amending every single plaintiff complaint in a short amount of time. All that will tell the Court and the parties are which plaintiffs are able to put pen to paper in a truncated timeframe. This will accomplish little: Uber does not intend on filing hundreds of case-specific motions to dismiss, nor has the Court expressed interest (or availability) in deciding them at this time. And Plaintiffs will always be able to rely on the liberal Rule 15 standards should they choose to amend at a later date.

There is also no urgent cause to do this. Uber concedes that the scope of the common discovery does not depend on the remaining pleading issues. And we know that every Plaintiff, at least presumptively, has live claims including the negligence claims that Uber has not challenged and requests for punitive damages that the Court has found adequately pleaded in the states it has examined.

Instead, the best approach is to tee up a second round of pleading challenges for a select group of Plaintiffs. That group of Plaintiffs can take their best shot at pleading the issues the Court found lacking in the master complaint, Uber can move to dismiss, the Court can rule, and the MDL will proceed from there. The Court's rulings on those motions will inform the remainder of the MDL whether and how those claims can be pleaded, and will guide case-specific pleadings, case-

---

[1] The Court also identified individual issues with respect to Plaintiffs' requests for injunctive relief, but there is no need to further address those pleading issues. Should the facts proved ultimately support standing and entitlement to injunctive relief, the Court can issue an appropriate order at that point. *See* Fed. R. Civ. P. 54(c) ("[F]inal judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); Fed. R. Civ. P 15(b)(2) ("A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence.").

specific discovery and, ultimately, resolution.

Plaintiff proposed this approach to Uber, and sought Uber's views on the number and types of cases to be re-pleaded at this time. Uber declined to answer those questions.

There are different ways to do this. Plaintiffs suggest the Court consider the following principles:

- **We need complete DFSs**. Any case selected should have a complete DFS, given the Court's correct conclusion that the information within is relevant to one or more of the claims needing further pleading. The order governing the selection should provide for a reasonable time period for Judge Cisneros to adjudicate any DFS-related disputes. Uber says that DFSs are completed for many cases; if that is true (as to whatever amendment pool the Court directs), then there will be minimal or no delay as a result of this requirement.[2] There is no good reason, as Uber suggests, for "staging" amendments as between claims that benefit from a DFS and those that might not. The distinction does not make sense anyway; for example a fraud claim could be predicated on facts about the driver not disclosed to the passenger that are stated in the DFS.

- **The Court has options as far as timing**. The Court can choose between selections from a smaller pool with DFSs already submitted, or wait a few months until DFSs are submitted for the waves of cases coming from the JCCP.

- **The Court has options regarding the scope of the legal challenges in the next round of motions**. The Court can order cases be selected from the entire pool of pending MDL filings. Or, the Court can order cases proceed from cases pending only in certain states. For example, the Court can tailor the pool to cases stemming from California and Texas assaults. For both states, the Court has already ruled on cross-cutting legal issues. And for California cases, there are no forum or choice-of-law disputes.

- **The Court can make these cases trial candidates, but does not have to**. The Court may, at this time, begin the process of selecting candidates for case-specific discovery and trial, and conduct the next round of pleading challenges with respect to that pool. But the Court can also hear pleading challenges, and put off trial candidate selection, which promises to be more complex and require more coordination with Uber, for another stage. Should the Court decide now is the time to select trial candidates, then it should order the parties to submit joint or competing proposed trial selection ordered by **September 30.**

- **Plaintiffs should pick the cases to be amended, within limits set by the Court**. If the Court opts for a small pool of amendments, there is no need for a back-and-forth between the parties of the sort MDL courts use when picking trial candidates. Uber picked the states to move on (and will get to pick which amendments to move against and on which grounds). To move forward expeditiously, Plaintiffs should pick the cases to amend within whatever timing or case-type guidelines the Court thinks make sense. Uber objects, but does not explain why it objects. However, if the Court believes Uber should have input on which cases are amended, Plaintiffs will work with Uber to accomplish that.

---

[2] On August 20, after reviewing approximately 150 DFSs, Plaintiffs raised with Uber numerous potential issues, including missing audio/video recordings, missing incident investigation documents, and missing background checks. Uber has not responded to Plaintiffs regarding these deficiencies, so a limited but mandatory period to resolve them for the potential amendment pool makes sense.

**2. Common Issues in Other States**

Uber proposes that the parties submit simultaneous briefing on the laws of 45 states by September 30 (while at the same time Plaintiffs amend a thousand individual complaints, and while Uber misses crucial discovery deadlines). This structure is not workable because simultaneous briefing will just result in the parties talking past each other (for good reason, Rule 12 motions do not work this way). It is Uber's obligation to file a motion to dismiss, not Plaintiffs' to guess what it might contain. And the timeline is too quick given that, for some issues in some states, undoubtedly one party or the other will take the view that the issues require a fresh look at the states' case law. While some issues (like whether a state authorizes a distinct NIED claim) are, as Uber suggests, straightforward, others are less so. For example, the Court's analysis of respondeat superior and common carrier duties required thorough analysis of relevant cases in each state. The parties spent hundreds of pages briefing five states; while the lessons learned will have streamlining benefits for other states, the task is not as quick and easy as Uber would have it.

The more efficient approach is to first resolve the remaining issues fully briefed and pending before the Court: Florida, Illinois, and New York law. Because the parties have been heard on these states already, additional submissions applying the Court's order to those states should be brief and capable of quick turnaround. Plaintiffs propose that, by **September 13**, the parties file short statements (two pages) identifying how they believe the Court's order applies to the claims already briefed under Florida, Illinois, and New York law.

Once the Court rules on those remaining fully-briefed states, then the parties can discuss the next round of master complaint-related motions based on the parties' and the Court's priorities (e.g., briefing on certain claims, or briefing on a next set of states). So, for example, it does probably make sense in the grand scheme of the MDL to resolve whether TNC statutes preclude vicarious common carrier liability. But the Court has before it one fully-briefed state with both examples: Florida, where Plaintiffs rely on different text and precedents than they did in Texas. Once the parties submit short statements regarding Florida, the Court can rule, and then parties will have more information to apply to other states. In the meantime, the parties can focus

1  on the concern the Court flagged in its motion-to-dismiss order: the next steps in the claims that

2  require additional, individual allegations.

3    If the Court is inclined to receive briefing on multiple states' laws at this time, Plaintiffs

4  request that the briefing be sequential, not simultaneous, and that Plaintiffs receive reasonable

5  time to respond (60 days).

6    **Defendants' Position:**

7  **Summary of Uber's Proposed Case Management Plan for Amended Pleadings and Motions to Dismiss**

8  As explained below, Uber proposes the following plan with respect to applying the

9  Court's legal analysis in its initial order on motions to dismiss, amending pleadings, and

10 challenges to the amended pleadings:

(1) **Topic #1: Claims That Are Not Being Amended.** The Court's motion to dismiss order addressed certain claims under the laws of two states - - for example, vicarious liability (which was granted as to Texas law, and denied as to California law) - - without explicitly granting leave to amend. Over the next month, the parties will seek to reach a stipulation covering those claims under the laws of the remaining ~38 states in this MDL. Thus, Uber proposes by **September 30, 2024** - - or the due date the Court sets for plaintiffs' amended pleadings (if later) - - the parties will (i) stipulate that the Court's legal analysis in its August 15, 2024 order applies to unamended claims under the remaining states' laws, and/or (ii) brief the Court as to the different legal analyses required for unamended claims under the remaining states' laws.

(2) **Topic #2: Claims That Are Being Amended.** The Court's motion to dismiss order granted the motion to dismiss with leave to amend as to certain claims, namely fraud and products liability. Any plaintiff seeking to cure those claims via amendment should submit an amended pleading with case-specific allegations by **September 30, 2024**. (Uber is amenable to a longer time period, if plaintiffs believe more time is necessary.)

   a. **Motions to Dismiss the Amended Pleadings.** After plaintiffs' amended

pleadings are submitted, the parties will meet and confer to determine an efficient plan to address another round of motions to dismiss that will cover the amended claims.  Uber's motions to dismiss the amended claims will be due within 60 days of the filing of the amended pleadings: by **November 29, 2024**. (This time would be extended if plaintiffs request and are granted more than 30 days to submit their amendments.)

    b. **Amendment of Ratification Claims.** For those plaintiffs who have not received Defense Fact Sheets at the time of submitting their amended pleadings, they will have the right to further amend their pleadings as to the ratification theory of vicarious liability, within 14 days after receipt of a Defense Fact Sheet.

**Topic #1: Claims That Are Not Being Amended**

At this juncture, there is a subset of claims that will not be the subject of case-specific pleading amendments - - for example, vicarious liability. Those claims will therefore not be affected by any amended pleadings, and what remains is to reach a determination on whether the claims stand or fall under the laws of the ~38 states that the Court did not address in its motion to dismiss ruling.

As to these claims, it is likely (i) that the Court's legal analysis in its initial motion to dismiss order can be applied in a relatively straightforward and clear-cut manner under the similar laws of many of the other states at issue in this MDL, or (ii) if one party or both parties contend that the Court's prior legal analysis does not compel a particular outcome based on the Court's motion to dismiss order, the claim can be the subject of streamlined and targeted state-specific briefing.  For instance, the Court held that Texas plaintiffs' common carrier claim was foreclosed by a Texas statute providing that transportation network companies (TNCs) like Uber are not common carriers, and that analysis would apply equally under similar TNC statutes in other states.  *See, e.g.*, Fla. Stat. § 627.748.  And the Court dismissed plaintiffs' NIED claim on the basis that California law does not recognize NIED as an independent cause of action, a principle recognized by the common law of multiple other states.  *See, e.g.*, *Wolkstein* v. *Morgenstern*, 713

N.Y.S.2d 171, 172 (N.Y. App. Div. 2000).

Challenges to such claims will be most efficiently resolved through a process by which the parties: (1) stipulate that the Court's legal analysis in its August 15, 2024 order on motions to dismiss controls the outcome under the laws of the remaining states of incident, and/or (2) in the event that other states' laws require *different* legal analyses, submit briefing to the Court explaining how the issues and analyses differ under those states' laws.  This process will allow the parties to eliminate or narrow disputes where amendment would be futile, and prevent duplicative efforts where state laws have significant overlap and similarities.  And, of course, both parties would retain full appellate rights as to the Court's underlying ruling that results in a stipulation addressing claims from other states.

Thus, Uber proposes that as a next step, the parties meet and confer about which of the claims and/or issues would be appropriate for this process.  Because this work involves claims that will not be amended, it can proceed in parallel with plaintiffs' case-specific amendments as to their other claims (*e.g.*, fraud).  Once the parties agree to the subset of claims that will be governed by a stipulation or can be the subject of narrowed briefing regardless of the contents of any amendments, the parties' stipulation and/or briefing regarding those claims can be submitted to the Court on September 30, 2024, or the same date on which plaintiffs' amended pleadings are due (if later).

**Topic #2: Amended Claims and Motions to Dismiss the Amended Pleadings**

All plaintiffs who are seeking to revive dismissed claims (*e.g.*, fraud, products liability) by amending their pleadings should do so now.  Each plaintiff who is asserting a claim that was dismissed by the Court's initial order on motions to dismiss (*i.e.*, claims for fraud, products liability, negligent entrustment, negligent infliction of emotional distress, or injunctive relief), and who believes that the dismissed claim can be cured through amendment, will submit an amended complaint.  Upon submission of the amended pleadings, the parties and the Court can then determine the most efficient process to challenge the plaintiffs' claims across this MDL proceeding, thus using the motion to dismiss process to cover the entire MDL, rather than just a narrow sliver of it (as plaintiffs propose).  Plaintiffs suggest the possibility of "hundreds of case-

specific motions to dismiss." That is not correct; with the full scope of pleadings, Uber will be in a position to make motions covering multiple complaints. The way to make the most progress is through one round of motions to dismiss that cover this entire MDL, not plaintiffs' suggestion of targeted and limited motions on a few cherry-picked cases.

This proposed plan is fully consistent with ordinary principles of litigation, the federal rules, and the purposes of an MDL. Contrary to plaintiffs' contention, there is nothing controversial or inefficient about requiring a plaintiff to plead her claim at the outset of the litigation, whether or not in an MDL. That is how cases traditionally proceed, and as the Court has noted, "it is important for the [MDL] district court to articulate and apply the traditional standards governing [dispositive] motions" because "Plaintiffs have filed individual cases that have to be held to the usual pleading standards." Dkt. 1044, MTD Order at 10 (citing *In re Korean Air Lines Co., Ltd.*, 642 F. 3d 685, 700 (9th Cir. 2011)).

Plaintiffs assert that a process of amending now will only serve to "tell the Court and the parties which plaintiffs are able to put pen to paper in a truncated timeframe." The idea that imposing a requirement that a plaintiff plead his or her claim is not about merely "putting pen to paper" - - it is the most basic of requirements under litigation procedures, and is essential so that the parties and the Court know who is pleading particular claims, and whether there are plausible factual allegations supporting those claims. It is not only desirable for this to occur at the outset of the case, rather than the end of it as plaintiffs suggest, but is in fact essential. How would resolution of common issues across the MDL be advanced if the identity of the issues across the array of cases is not even known to the Court, or to the defendant? Many plaintiffs in this MDL brought their cases many months, if not years, ago. A great number of the several hundred recently re-filed actions were commenced in 2022 or before. There thus cannot be a credible suggestion that Plaintiffs are not able to plead the facts supporting their causes of action now.

Requiring all plaintiffs to submit amended pleadings would promote the purpose of this MDL: to identify "common issues . . . which will, if adjudicated, result in [] efficiency" before trial. Hearing Tr. 42:20-22 (Feb. 2, 2024). To identify and resolve those common issues, the parties and the Court need to know which claims exist in the MDL cases, and for how many

1   plaintiffs.  That way, the parties can effectively utilize any information they glean from the

2   motions to dismiss - - or other pre-trial proceedings - - and determine how it would facilitate the

3   broader resolution of the claims within the MDL, and move the cases forward.

4         By contrast, plaintiffs' proposed plan would leave the vast majority of the cases sitting

5   dormant in this MDL, while only a handful of pleadings are amended and challenged.  For the

6   hundreds of dormant cases, neither Uber nor the Court would know which claims the plaintiffs

7   are attempting to assert.  As a result, the parties and the Court would lack critical information

8   about the universe of claims that are at issue and viable in this MDL.  The Court's rulings on

9   motions to dismiss certain individualized claims, for example, would have limited value as to the

10  dormant cases, because the parties would not know how many or which cases will be able to

11  assert individual claims.

12        Moreover, even accepting plaintiffs' contention that motions to dismiss should be made in

13  a few "test cases" rather than by briefing issues so as to cover as broad an array of cases as

14  possible- - which Uber does not - - it still does not follow that only a few test *pleadings* should be

15  amended.  Which cases are appropriate "test cases" to proceed to the next stages of litigation is

16  something that can be decided only *after* all plaintiffs have amended their pleadings, because their

17  amended pleadings are necessary to determine whether any particular case may provide valuable

18  information as to the universe of cases in this MDL.  And it certainly makes no sense that

19  Plaintiffs might *unilaterally* decide the "test cases" by selectively choosing to submit amended

20  pleadings in a small number of cases.

21        Plaintiffs assert that Uber has "concede[d] that the scope of the common discovery does

22  not depend on the remaining pleading issues," as a justification for Plaintiffs' contention that

23  virtually all of the MDL should be put into a standstill without submitting an operative amended

24  pleading.  Plaintiffs' position is flawed in numerous respects.  For starters, while it is true that

25  there are some remaining causes of action, such as negligence, which are present in all cases - -

26  and that discovery on those causes of action (in terms of discovery taken from plaintiffs, and from

27  Uber) can thus proceed in the meantime - - it is not at all clear what other supposedly "common"

28  issues will be present.  For example, it might be the case that zero plaintiffs can assert fraud or

products liability claims; or perhaps some will be able to and some will not. The degree to which that is a common issue will turn on what each plaintiff pleads, and whether that amounts to a valid statement of a cause of action for pleading purposes. Regardless, which pleadings survive and which do not will define the scope of supposedly "common" discovery: the pleadings that survive motions to dismiss is what will establish the scope of "common" discovery in the case, and plaintiffs' "test cases" proposal would make it impossible to assess what is "common" and what is not. Accordingly, Uber proposes that plaintiffs submit their amended pleadings within 30 days of the August 29, 2024 case management conference: by September 30, 2024. (Uber is amenable to a longer period than 30 days, if plaintiffs believe more time is necessary; to date, plaintiffs have not stated that 30 days would be insufficient.) Uber will then file any motions to dismiss the amended claims within 60 days of plaintiffs submitting their amended pleadings: *i.e.*, by November 29, 2024, assuming amendments are due September 30.

***Whether Defense Fact Sheets Must Precede Amendments to the Pleadings***

Plaintiffs incorrectly contend that they must first receive Defense Fact Sheets before they can amend their pleadings. For one thing, plaintiffs' position proceeds from an incorrect premise that they lack Defense Fact Sheets already. On the contrary, Uber *has* submitted Defense Fact sheets in virtually all of the 300+ cases that were on file by the end of July. Those fact sheets have been accompanied by productions of over 25,000 pages of Defense-Fact-Sheet-specific documents. Plaintiffs' arguments about Defense Fact Sheets therefore cannot possibly have any bearing on the submission of timely amendments in the significant volume of cases - - essentially all of the cases that were on file before the end of July 2024 - - in which Uber already provided Defense Fact Sheets.

As to the several hundred actions recently filed since August 1, for which Defense Fact Sheets (and Plaintiff Fact Sheets) will be exchanged in the coming weeks and months, the absence of a Defense Fact Sheet is no reason to postpone the process of amending the pleadings. Information in the Defense Fact Sheets has no effect on plaintiffs' ability to address the pleading deficiencies as to most of their dismissed claims, including fraud, products liability, negligent infliction of emotional distress, negligent entrustment, and injunctive relief. As an example, the

3085513.8                                -10-                         JOINT CASE MANAGEMENT CONFERENCE
                                                                     STATEMENT AND PROPOSED AGENDA
                                                                     Case No. 3:23-md-03084-CRB

1  Court granted Uber's motions to dismiss plaintiffs' fraud claims on the basis that plaintiffs had
2  "not pled any plaintiff-specific allegations about whether a given plaintiff saw certain alleged
3  misrepresentations, how they relied on them, and so forth." MTD Order at 36. That information
4  is within plaintiffs' exclusive possession, and nothing in the Defense Fact Sheets would assist
5  plaintiffs in amending those pleadings. Similarly, Defense Fact Sheets would neither supply the
6  plaintiff-specific causation allegations missing from plaintiffs' products liability and injunctive
7  relief claims, nor cure the legal deficiencies of their negligent entrustment and NIED claims.
8        To be sure, the Court recognized an exception when it observed that "the information in
9  the Defense Fact Sheets may help" some plaintiffs in pleading a ratification theory, and that those
10 plaintiffs "could seek to amend their complaints at the appropriate time" upon receiving that
11 information. MTD Order at 31, Dkt. 1044. Accordingly, Uber is amenable to holding the
12 deadline to amend ratification causes of action in abeyance until shortly after Defense Fact Sheets
13 are provided. This will not affect the 300+ cases in which Defense Fact Sheets were already
14 provided, and therefore need not postpone amendments or motions to dismiss directed to any
15 ratification causes of action in those cases.

16 *Claim for Injunctive Relief*

17       Plaintiffs include a footnote implying that they do not intend to seek to amend their
18 pleading in response to the Court's dismissal of their claim for injunctive relief (which was the
19 sole basis for the now-dismissed California Unfair Competition Law (UCL) claim). The footnote
20 suggests that plaintiffs believe that they may make an amendment later in the case pursuant to
21 Fed. R. Civ. 54(c) and/or 15(b)(2). Uber does not agree that a claim for injunctive relief is viable
22 now, or later in the case, and if Plaintiffs decline to amend their pleading in this respect now, they
23 would need to establish good cause for any later amendment to establish a claim for injunctive
24 relief.

25 **IV.    DISCOVERY**
26       Judge Cisneros has scheduled the next discovery status conference for August 30, 2024.
27 The parties will file a joint discovery status report on August 28, 2024.
28       **Defendants' Position:**

1   Plaintiffs are taking extensive discovery from Uber and, consistent with the Court's
2   December 28, 2023 case management order, Uber produced (and continues to produce)
3   substantial volumes of documents.  To date, those productions span approximately 485,000
4   pages.  The process of producing documents beyond the so-called 'off-the-shelf' productions
5   contemplated by Pretrial Order No. 5 is still ongoing, given that the search terms to be used were
6   resolved within the last few weeks, and that document custodians are in dispute and the issue will
7   not be briefed until August 29.  Accordingly, substantial completion of the production of
8   documents in response to Plaintiff's First Set of Requests for Production cannot feasibly occur by
9   September 1, 2024.  The parties are discussing next steps, including setting appropriate
10  milestones and deadlines, with Judge Cisneros, and a discovery status conference with Judge
11  Cisneros is scheduled to take place on August 30, 2024.
12      In addition, discovery has proceeded as essentially a one-way process to this point, as the
13  Court's early case management orders prohibit Uber from taking any discovery from plaintiffs.
14  Now that Plaintiff Fact Sheets have been submitted, the natural next step is for the parties to
15  proceed with limited written discovery on individual plaintiffs.  Uber believes that now is the
16  appropriate time to discuss a plan for taking discovery from plaintiffs, and requests that the
17  Court's stay on plaintiff-discovery be modified to allow Uber to proceed with issuing written
18  interrogatories.
19      There is much in Plaintiffs' statement regarding the status of discovery which is
20  inaccurate, and Uber will continue addressing those issues with Judge Cisneros, including at the
21  upcoming August 30 discovery status conference.
22  **Plaintiffs' Position:**
23      The Court ordered the September 1, 2024 deadline for substantial completion of
24  documents in response to Plaintiffs' First Set of RFPs back on December 28, 2023. ECF No. 175.
25  Uber has not asked to extend that deadline in the many months that have since passed, even
26  though the disputes regarding search terms and custodians it references have been long
27  outstanding. This follows Uber missing the deadline for its PTO 5 "off the shelf" productions by
28  several months: the Court ordered both sets of productions done by February 8, but Uber did not

1  complete those productions until May 31 (and then littered those productions with unauthorized
2  redactions requiring wasteful briefing, and after court order, reproduction). *See* ECF No. 767.

3        Unless and until the Court modifies the September 1 production deadline upon a showing
4  of a good cause, Uber remains obligated to it. Although Uber has produced approximately
5  175,000 documents in the MDL, the majority are responsive to DFS and PTO 5 (documents from
6  other litigations and government investigations). Less than a third of the production to date is
7  from custodial files (just over 50,000 documents). Moreover, *all* of the documents produced from
8  custodial files are produced in response to JCCP discovery requests and using the JCCP search
9  terms—Uber has not produced *any* documents responsive to the MDL Plaintiffs' discovery
10 requests or using MDL agreed-upon search terms and now claims inability to do so by the
11 September 1 deadline.

12       This deadline matters. Timely production of documents, particularly from custodial files,
13 is essential not just to keep this litigation on track but also if any meaningful coordination is to be
14 had between the MDL and the JCCP Plaintiffs. Unless good cause is shown, Plaintiffs are limited
15 to 45 depositions, including 30(b)(6) depositions. ECF No. 866 (deposition protocol). Given this
16 limitation, it is essential that Plaintiffs know which custodians' files will be produced and also
17 have an opportunity to review the productions before Plaintiffs can determine which custodians
18 they will depose. Additionally, Uber has disputed 19 of the 29 custodians MDL Plaintiffs
19 selected, adding further question to which custodians MDL Plaintiffs will chose to depose.[3]

20       Currently, four depositions are set in the JCCP of custodians whose files will also be
21 produced in the MDL. Although Uber has produced some documents for those custodians in the
22 MDL, it has not produced those custodians' documents using the MDL search terms, despite
23 Judge Cisneros' Order that it do so by August 22. 8/8/24 Discovery Conf. Transcript, at 27.
24 Before MDL Plaintiffs can determine whether to take these depositions, Plaintiffs need not only
25 those custodians' documents, but also privilege logs for those custodians (and sufficient time to

---

[3] Pursuant to agreement between the Parties, JCCP and MDL Plaintiffs agreed to a presumptive cap of 55 custodians with JCCP Plaintiffs selecting 26 and MDL Plaintiffs selecting the remaining 29. Uber has not objected to any of the JCCP selections but objects to 66% of the MDL Plaintiffs' selections.

1  resolve privilege disputes), as well as a determination of which custodians will be produced in the
2  MDL and production of sufficient documents from the remaining custodians to evaluate which
3  custodians to depose.

4  With regards to Plaintiff-side discovery, Uber has requested at least three times now to
5  open written discovery of individual plaintiffs. *See* ECF No. 356 (3/22/24 CMCS) at 11-14
6  (detailing Uber's request and Plaintiffs' objections); ECF No. 563 (5/24/24 CMCS) at 16-19
7  (same); ECF No. 779 (8/6/24 JSR) at 11-13 (same). Judge Cisneros rejected this request most
8  recently at the August 8 discovery hearing, recognizing the Court's desire to focus on common
9  discovery first. *See* 8/8/24 Hearing Tr. at 28:23-29:11 (Judge Cisneros: "Judge Breyer has set
10 parameters for discovery in terms of phasing it and focusing discovery at the present time and this
11 MDL on common issues. And so to the extent there was discussion in the status report regarding
12 different discovery requests that could be submitted around individualized issues that concern the
13 plaintiffs … there are the plaintiff fact sheets. That's [] what Judge Breyer has allowed to go
14 forward."); *see also* ECF No. 771 at 2 (Judge Cisneros explaining that "the proceedings in this
15 transferee court are focused on common issues of fact", "[t]he Court has not lifted the stay to
16 allow Uber to conduct discovery on individual Plaintiffs", and "[a] later phase in this litigation is
17 the more appropriate time to address discovery … to uncover facts that are specific to Plaintiffs'
18 individualized allegations."). As before, Plaintiffs' position is that it is premature to open
19 individualized discovery for all plaintiffs, especially as the parties and the Court discuss the best
20 procedural path forward following the Court's initial order on Uber's motions to dismiss.

21 **V.    DISMISSAL STIPULATION**

22 On June 7, 2024, Uber and Levin Simes LLP filed a stipulation to dismiss 84 cases
23 without prejudice (Dkt. 600).  The proposed order accompanying this stipulation has not yet been
24 entered as an order of the Court.

25 **VI.   SPECIAL SETTLEMENT MASTER**

26 On November 15, 2023 (ECF No. 88), the Parties jointly submitted a narrowed list of two
27 suggested candidates for Special Settlement Master: Hon. Gail Andler and Hon. Shelley
28 Chapman, and they remain open to considering additional candidates. The Parties welcome the

Court's guidance on appropriate next steps in arranging for appointment of a Special Settlement Master.

### VII.  NEXT CASE MANAGEMENT CONFERENCE

The parties look forward to discussing the Court's availability for the next case management conference.

Dated: August 27, 2024                              Respectfully submitted,

By: */s/ Robert Atkins*                             By: */s/ Sarah R. London*
    Robert A. Atkins                                        Sarah R. London
    **PAUL, WEISS, RIFKIND,**                                **LIEFF CABRASER HEIMANN &**
    **WHARTON & GARRISON LLP**                               **BERNSTEIN**
    1285 6th Avenue                                         275 Battery Street, Fl. 29
    New York, NY 10019                                      San Francisco, CA 94111
    Telephone: (212) 373-3000                               Telephone: (415) 956-1000
    ratkins@paulweiss.com                                   slondon@lchb.com

By: */s/ Randall S. Luskey*                         By: */s/ Rachel B. Abrams*
    **PAUL, WEISS, RIFKIND,**                                Rachel B. Abrams
    **WHARTON & GARRISON LLP**                               **PEIFFER WOLF CARR KANE**
    535 Mission Street, 24th Floor                          **CONWAY & WISE, LLP**
    San Francisco, CA 94105                                 555 Montgomery Street, Suite 820
    Telephone: (628) 432-5100                               San Francisco, CA 94111
    Facsimile: (628) 232-3101                               Telephone: (415) 426-5641
    rluskey@paulweiss.com                                   rabrams@peifferwolf.com

*Attorneys for Defendants*                          By: */s/ Roopal P. Luhana*
                                                            Roopal P. Luhana
                                                            **CHAFFIN LUHANA LLP**
                                                            600 Third Avenue, Fl. 12
                                                            New York, NY 10016
                                                            Telephone: (888) 480-1123
                                                            luhana@chaffinluhana.com

                                                            *Co-Lead Counsel for Plaintiffs*

3085513.8                                         -15-                    JOINT CASE MANAGEMENT CONFERENCE
                                                                           STATEMENT AND PROPOSED AGENDA
                                                                           Case No. 3:23-md-03084-CRB