1  [Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ENTRY OF PRETRIAL ORDER ESTABLISHING A COMMON BENEFIT FEE AND EXPENSE FUND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
|---|---|
| This Document Relates to:<br><br>ALL ACTIONS | Judge: Honorable Charles R. Breyer<br>Date: October 4, 2024<br>Time: 10:00 AM<br>Courtroom: 6 – 17th Floor (by Zoom) |

## **NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 4, 2024, at 10:00 a.m., before the Honorable Charles R. Breyer (by Zoom), Plaintiffs will and hereby do, move for an order establishing a common benefit fee and expense fund in this proceeding. The motion will be based on this Notice and Motion and the Memorandum of Points and Authorities below.

1 **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION**

Common benefit funds are judicially supervised mechanisms that equitably spread the cost of collective efforts among all beneficiaries of those efforts. These funds—typically established and governed by a common benefit order—are created in accordance with the century-old common benefit doctrine, which empowers federal district courts to apportion fees and costs among all beneficiaries as a matter of equity jurisdiction. Common benefit orders are commonplace in modern multidistrict litigation, including the contemporary *McKinsey*, *JUUL*, and *Social Media* MDLs also proceeding in this District. *See* London Decl., Exs. A-C. Indeed, every edition of the Federal Judicial Center's *Manual for Complex Litigation* has recommended the creation of both a plaintiff leadership structure and a mechanism for compensating these appointed counsel (on a contingent basis) for the work they perform and costs they incur for the benefit of all plaintiffs.

To date, Co-Lead Counsel and the members of the PSC have committed substantial efforts to the benefit of all MDL No. 3084 plaintiffs. These efforts include (1) securing production under PTO 5 of documents produced in other litigations and investigations, and successfully opposing Uber's attempts to limit those productions; (2) enforcing Uber's compliance with its preservation obligations; (3) opposing Uber's petition for writ of mandamus reversing the JPML's transfer order, as well as defeating Uber's motion to stay pending resolution of that petition; (4) negotiating and briefing plaintiff and defendant fact sheet, privilege, and ESI orders; (5) researching, drafting, and filing a master complaint; (6) opposing Uber's motions to dismiss that master complaint; (7) defeating Uber's motion to enforce the non-consolidation clause in its Terms of Use; and (8) pursuing fact discovery against Uber and third parties. In addition to many hours of attorney and staff time, this work has required substantial financial investment by the PSC with no guarantee of any recovery.

On May 23, 2024, this Court entered Second Amended PTO No. 12, which, in addition to setting certain guidelines and rules for work performed and expenses incurred for the common benefit of all Plaintiffs in these proceedings, also "anticipate[d] establishing a mechanism for

creating a Common Benefit Fund [] and determining an appropriate holdback amount for contribution to that fund." ECF No. 558 at 1-2. In light of their ongoing effort and investment in this litigation, Plaintiffs' Co-Lead Counsel and the PSC members submit that now is the appropriate time for an order establishing a common benefit fund.

## II. **PROPOSED COMMON BENEFIT ORDER**

The Proposed Pretrial Order would accomplish the following:

- Establish procedures for establishing and administering bank accounts for the common benefit fund;
- Set an assessment amount of 9% (7% for fees, 2% for costs) for counsel who have cases or claims under the jurisdiction of the Court, as well as any other counsel who execute a Participation Agreement or who have access to or use MDL work product, excepting cases that can properly be filed within the JCCP *In re Uber Rideshare Cases*, No. CJC-21-005188, as defined by that court's January 23, 2023 forum non conveniens order (those cases to be subject to a parallel order in the JCCP);
- Create a procedure for Plaintiffs' counsel unaffiliated with the MDL to execute a Participation Agreement through which counsel may obtain the benefit of common benefit work product; and
- Require the Uber Defendants to hold back the assessment amounts from any settlements or other recoveries until they ascertain from Plaintiffs' Co-Lead Counsel if the case is one subject to assessment.

The proposed order is intended only to establish and preserve the fund until the Court later determines eligibility for common benefit fees and cost reimbursement.

## III. **ARGUMENT**

### A. **The Court has the authority to establish a common benefit fund.**

The Supreme Court has long recognized both the equitable imperative and practical necessity of providing judicially supervised and enforced mechanisms to spread the costs of efforts undertaken for the common benefit among all beneficiaries. *See Trs. v. Greenough*, 105

1   U.S. 527 (1881); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1884); *Sprague v. Ticonic*
2   *Nat'l Bank*, 307 U.S. 161 (1939); *Mills v. Elec. Auto-Lite Co*., 396 U.S. 375 (1970); *Boeing v.*
3   *Van Gemert*, 444 U.S. 472 (1980). The resulting "common benefit doctrine" empowers federal
4   courts to apportion fees and costs among all beneficiaries as a matter of their equity jurisdiction,
5   and modern MDL courts have continued to adopt and operationalize the common benefit doctrine
6   through common benefit orders. *See, e.g.*, *In re Bextra & Celebrex Mktg. Sales Prac. & Prod.*
7   *Liab. Litig.*, 2006 WL 471782, at *1 (N.D. Cal. Feb. 28, 2006); *In re Chinese-Manufactured*
8   *Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d 456, 496 (E.D. La. 2020); *In re: McKinsey & Co.,*
9   *Inc. Nat'l Prescrip. Opiate Consultant Litig.*, No. 21-md-2996, ECF No. 567 (N.D. Cal. June 30,
10  2023) (London Decl., Ex. A); *In re: Juul Labs, Inc. Mkt., Sales Prac., & Prods. Liab. Litig.*, No.
11  19-md-2913, ECF No. 586 (N.D. Cal. May 27, 2020) (London Decl., Ex. B); *In re Social Media*
12  *Litig.*, No. 22-md-03047, ECF No. 190 (N.D. Cal. Mar. 15, 2023) (London Decl., Ex. C).

13      The entry of common benefit orders by MDL courts is a common case management
14  technique, arising not only from the federal courts' equity jurisdiction under the common benefit
15  doctrine, but also from the additional authority of MDL courts to assess common benefit fees and
16  costs that "comes from the inherent 'managerial' power over the consolidated litigation." *In re*
17  *Cook Med., Inc., Pelvic Repair Sys.*, 365 F. Supp. 3d 685, 695 (S.D.W. Va. 2019) (collecting
18  cases).[1] A trial court's managerial power has been described as "the power inherent in every court
19  to control the disposition of the causes on its docket with economy of time and effort for itself, for
20  counsel, and for litigants." *Florida Everglades*, 549 F. 2d at 1012 (quoting *Landis v. N. Am. Co.*,
21  299 U.S. 248, 254 (1936)). Indeed, a court's success in dealing with multi-party, multi-case
22  litigation is "largely dependent on its ability to uncomplicate matters." *In re Linerboard Antitrust*
23

---

24  [1] *See also In re Genetically Modified Rice Litig.*, 2010 WL 716190, at *4 (E.D. Mo. Feb. 24, 2010)
    ("An MDL court's authority to establish a trust and to order contributions to compensate leadership
25  counsel derives from its 'managerial' power over the consolidated litigation, and, to some extent,
    from its inherent equitable power."); *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 265-67
26  (E.D.N.Y. 2009); *In re Sulzer Hip Prosthesis & Knee Prosthesis Prods. Liab. Litig.*, 268 F. Supp. 2d
    907 (N.D. Ohio 2003), *aff'd*, 398 F.3d 778 (6th Cir. 2005); *In re MGM Grand Hotel Fire Litig.*, 660
27  F. Supp. 522, 525-29 (D. Nev. 1987); *In re Air Crash Disaster at Florida Everglades on December
    29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977); *Manual for Complex Litigation* § 14.215 (4th ed.,
28  Federal Judicial Center 2004).

1  *Litig.*, 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003) (quoting *In re Recticel Foam Corp.*, 859 F.2d
2  1000, 1004 (1st Cir. 1988)). As experienced judges have observed, such ability would be
3  impaired, if not rendered a poetical impossibility, without the existence of a common benefit
4  assessment that incentivizes counsel to place their time and money at risk in service to all
5  plaintiffs. *See In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d 822, 831, 841 (D. Ariz.
6  2022) (enforcing an 8% fees, 2% expenses assessment). Further to this point, the Third Circuit's
7  recent decision in *Home Depot USA, Inc. v. LaFarge North America, Inc.*, 59 F.4th 55 (3d Cir.
8  2023) (Scirica, J.), included common benefit assessments in an inventory of the case management
9  orders available to MDL transferee courts seeking to achieve both judicial economy and fairness
10 to litigants:

> In multidistrict cases, "it is standard practice for courts to compensate attorneys who work for the common benefit of all plaintiffs by setting aside a fixed percentage of settlement proceeds." *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 265 (E.D.N.Y. 2006); *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128-30 (2d Cir. 2010) (Kaplan, J., concurring) (approving this order). We have upheld the use of such fees in situations where an attorney "confer[s] a substantial benefit to members of an ascertainable class." *In re Diet Drugs*, 582 F.3d 524, 546 (3d Cir. 2009). The American Law Institute endorses the use of common benefit fees to compensate lawyers for work they do on behalf of others. *See* Principles of the Law of Aggregate Litigation § 2.07, cmt. G….

19 59 F. 4th at 67-68.
20      It is also standard, appropriate, and necessary to avoid free-riding and moral hazard for
21 common benefit assessments to encompass cases in which MDL counsel have a fee interest, but
22 which are filed outside the MDL or remain unfiled. *See, e.g.*, *In re Bard IVC Filters Prod. Liab.*
23 *Litig.*, 81 F. 4th 897, 906-08 (9th Cir. 2023) (affirming "common benefit fund assessments from
24 plaintiffs' recoveries in non-MDL cases"); *McKinsey*, No. 21-md-2996, ECF No. 567 ¶ (9)(b);
25 *Juul*, No. 19-md-2913, ECF No. 586 ¶ 12(b); *Social Media*, No. 22-md-03047, ECF No. 190, at
26 2; *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 181, 189 (S.D.N.Y. 2020).
27 Here, the proposed order expressly adopts the consent-based model for exerting authority over
28 those cases that the Ninth Circuit approved in *Bard*.

**B.     The Requested Common Benefit Fee Assessment Is Fair and Reasonable.**

The requested fee assessment of 9% (7% for fees, 2% for costs) is within the norm for large and complex multidistrict litigation. In proposing the amount, Plaintiffs' Co-Lead Counsel and the PSC considered several factors, including: the substantial time and effort necessary to prosecute the litigation; the complexity of the legal issues; the number of cases filed and projected to be filed in the MDL; the complexity and cost of discovery; the reasonable values of cases in the litigation; and the percentages adopted and results obtained in other similar cases.

Moreover, a fee assessment of 9% falls well within the range of fee assessments granted in other recent MDLs. *See, e.g.*:

    a.    *Social Media Litig.*, MDL No. 3047, ECF No. 190 (10% assessment for fees and costs)

    b.    *In re JUUL*, ECF No. 586 (7-10% common benefit fee assessment);

    c.    *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 2020 WL 1433923, at *10 (E.D. La. Mar. 24, 2020) (12% common benefit fee assessment);

    d.    *In re Lidoderm Antitrust Litig.*, 2017 WL 3478810, at *1 (N.D. Cal. Aug. 14, 2017) (10% assessment);

    e.    *In re Bair Hugger Forced Air Warming Prods. Liab. Litig.*, MDL No. 2666 (D. Minn. May 25, 2016), ECF No. 47 (10% to 16% common benefit fee assessment);

    f.    *In re Bard IVC Filters Prods. Liab. Litig.*, MDL No. 2641 (D. Ariz. Dec. 18, 2015), ECF No. 372 (6% common benefit fee assessment);

    g.    *In re Fresenius Granuflo/ Naturalyte Dialysate Prods. Liab. Litig.*, MDL No. 2428, ECF No. 865 (D. Mass. Jan. 12, 2015) (7% common benefit fee assessment);

    h.    *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, ECF No. 488 (N.D. Ill. Nov. 25, 2014) (8% common benefit fee assessment);

    i.    *In re Nuvaring Prods. Liab. Litig.*, MDL No. 1964. ECF No. 1129 (E.D. Mo. Dec. 9, 2011) (11% common benefit fee assessment);

j.   *In re Genetically Modified Rice Litig.*, MDL No. 1811 (E.D. Mo. Feb. 24, 2010), ECF No. 2574 (6–8% common benefit fee assessment);

k.   *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.,* MDL No. 1699, ECF No. 2507 (N.D. Cal. July 7, 2008) (6-10% common benefit fee assessment).

### C.   **Defendants Should Be Required to Withhold and Deposit Assessments into the Common Benefit Fund.**

It is standard practice for MDL courts to require defendants to hold back assessment amounts from any settlement. *See, e.g.*, *Lidoderm*, 2017 WL 3478810, at *4. Such orders commonly provide that: "For any settlement or judgment . . . Defendant(s) shall set aside and place into the Lidoderm End-Payor Fee and Expense Account 10% of the total monetary value of such settlement or judgment." *Bextra*, ECF No. 2507; *see also In re JUUL*, MDL No. 2913, ECF No. 586; *In re Avandia Prods. Liab. Litig.*, MDL No. 1871, ECF No. 495 (E.D. Pa. Aug. 26, 2009).[2] Because the Uber Defendants are the only parties with complete knowledge of the universe of settlements and access to every dollar of any settlement, they should similarly be ordered to hold back assessments here.

## IV.   **CONCLUSION**

For the reasons set forth herein, Co-Lead Counsel and the PSC respectfully request that the Court enter a common benefit order in the form of the proposed order submitted with this motion.

---

[2] *See also, e.g.*, *In re Yaz Prods. Liab. Litig.,* MDL No. 2100 (S.D. Ill. Mar. 25, 2010), ECF No. 1042; *In re Gadolinium Prods. Liab. Litig.*, MDL No. 1909, ECF No. 277 (N.D. Ohio Feb. 20, 2009); *In re Bausch & Lomb Contact Lens Sol. Prods. Liab. Litig.*, MDL No. 1785, ECF No. 128 (D.S.C. July 23, 2008); *Guidant*, 2006 WL 409229, at *1; *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, ECF No. 786 (E.D. La. Aug. 4, 2005).

| | |
|---|---|
| 1 | Dated: August 28, 2024 |

Respectfully submitted,

By: */s/ Sarah R. London*
   Sarah R. London (SBN 267083)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: */s/ Rachel B. Abrams*
   Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
   Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

# **CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2024 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF No. system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Andrew R. Kaufman*