UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB<br><br>**DECLARATION OF SARAH R. LONDON IN SUPPORT OF PLAINTIFFS' PORTION OF PLAINTIFFS' MOTION FOR ENTRY OF PRETRIAL ORDER ESTABLISHING A COMMON BENEFIT FEE AND EXPENSE FUND** |
| This Document Relates to:<br><br>All Cases | Judge: Honorable Charles R. Breyer |

1    I, Sarah R. London, hereby declare as follows:

2        1.    I am a partner of Lieff Cabraser Heimann & Bernstein, LLP, an attorney licensed

3    in the State of California and duly admitted to practice before this Court, and appointed co-lead

4    counsel in the above captioned action.

5        2.    I submit this declaration in support of Plaintiffs' motion for entry of a pretrial

6    order establishing a common benefit fee and expense fund.

7        3.    I have personal knowledge of the facts stated herein and, if called upon to do so,

8    could and would testify competently thereto.

9        4.    Attached as **Exhibit A** is a true and correct copy of an order entered in *In re:*

10   *McKinsey & Co., Inc. Nat'l Prescrip. Opiate Consultant Litig.*, No. 21-md-2996, ECF No. 567

11   (N.D. Cal. June 30, 2023).

12       5.    Attached as **Exhibit B** is a true and correct copy of an order entered in *In re: Juul*

13   *Labs, Inc. Mkt., Sales Prac., & Prods. Liab. Litig.*, No. 19-md-2913, ECF No. 586 (N.D. Cal.

14   May 27, 2020)

15       6.    Attached as **Exhibit C** is a true and correct copy of an order entered in *In re Social*

16   *Media Litig.*, No. 22-md-03047, ECF No. 190 (N.D. Cal. Mar. 15, 2023) ,

17       7.    I declare under penalty of perjury under the laws of the United States of America

18   that the foregoing is true and correct.

19   Executed on this 28th day of August 2024 in San Francisco, California.

20       */s/ Sarah R. London*
21       Sarah R. London

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MCKINSEY & CO., INC. NATIONAL PRESCRIPTION OPIATE CONSULTANT LITIGATION | Case No. 21-md-02996-CRB (SK) |
| | **[CORRECTED] [PROPOSED] PRETRIAL ORDER NO. 9: ESTABLISHING A COMMON BENEFIT FEE AND EXPENSE FUND** |
| This Order Relates to: | |
| ALL ACTIONS | |

**THIS ORDER** is entered to supplement Pretrial Order No. 3 (Protocol for Common Benefit Work and Expenses) entered August 18, 2021 in this litigation ("PTO-3").[1] PTO-3 remains in full force and effect and is hereby supplemented as follows:

    1.     On August 16, 2021, this Court appointed a Plaintiffs' leadership structure.[2]

    2.     On August 18, 2021, this Court entered PTO-3, which sets forth detailed instructions for the performance of common benefit work, and for the type of work and expenses that could qualify for potential compensation and reimbursement. Under this authority and with this guidance, Plaintiffs' Lead Counsel, the members of the Plaintiffs' Steering Committee ("PSC"), and other authorized counsel (collectively, "Participating Counsel"), have done and

---

[1] ECF No. 215.

[2] ECF No. 211 (Pretrial Order No. 2: Order Appointing Plaintiffs' Lead Counsel and Plaintiffs' Steering Committee).

1    will continue to do common benefit work on a contingent basis. The PSC has invested and will

2    continue to invest substantial time and financial resources related to motion practice, discovery,

3    and bellwether trials. This work has and will benefit all Plaintiffs with claims against Defendants

4    related to the subject matter of this MDL.

5           3.      It is just and appropriate to provide a system of assessment on any settlements

6    and recoveries, to which this substantial effort has contributed, commensurate with common

7    benefit assessments ordered in recent and contemporary MDLs.

8           4.      The Court enters this Order: (1) to avoid unnecessary conflicts and expense,

9    conserve judicial resources, and expedite the disposition of all the cases in this complex

10   litigation; (2) to provide for the equitable sharing among Plaintiffs and their counsel of the

11   burden of services performed and expenses incurred by attorneys acting for the common benefit

12   of all Plaintiffs in this complex litigation (collectively, "Common Benefit Work"); and (3) to

13   enable Plaintiffs' attorneys who wish to obtain the work-product of the PSC and the work-

14   product of others who perform authorized common benefit work (collectively, the "Common

15   Benefit Work Product"), an opportunity to obtain such work product.

16          5.      For purposes of this and other common benefit-related Orders, the phrase

17   "common benefit" refers to Lead Counsel-authorized and timely reported work performed and

18   costs incurred on behalf of one or more of the definable groups or categories of plaintiffs with

19   cases in these proceedings, such as Subdivisions, School Districts, Tribes, Third Party Payors, or

20   NAS plaintiffs, or all plaintiffs generally.

21   **I.      <u>GOVERNING PRINCIPLES—THE COMMON BENEFIT DOCTRINE</u>**

22          6.      This Order is entered to provide for the fair and equitable sharing, among all

23   beneficiaries, of the value of the services performed and expenses incurred by attorneys acting

24   for the common benefit of all plaintiffs in this complex litigation. This is accomplished by

25   directing Defendants who have appeared in these proceedings, and over whom this Court has

26   exercised jurisdiction, in the event of settlement, verdicts, and/or other recoveries, to either hold

27   back or self-fund a designated percentage of their related settlements. The Court's authority

28   derives from the Supreme Court's common benefit doctrine, as established in *Trustees v.*

1   *Greenough*, 105 U.S. 527 (1881); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116

2   (1884); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*,

3   396 U.S. 375 (1970); and *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

4           7.      This and many other courts have properly exercised their inherent case

5   management authority to apply the common benefit doctrine in MDL proceedings. *See In re*

6   *Nat'l Prescription Opiate Litig.* (MDL No. 2804) (N.D. Ohio 2022), ECF Nos. 4804, 5503; *In re*

7   *Bard IVC Filters Prods. Liab. Litig.* (MDL No. 2641), 603 F. Supp. 822 (D. Ariz. 2022); *In re*

8   *Social Media Adolescent Addiction(/Personal Injury Products. Liab. Litig.* (MDL No. 3047)

9   (N.D. Cal. 2022); *In re Cook Med., Inc., Pelvic Repair Sys.* (MDL No. 2440), 365 F. Supp. 3d

10  685, 695 (S.D.W. Va. 2019) (collecting cases); *In re Zyprexa Prods. Liab. Litig.* (MDL No.

11  1596), 467 F. Supp. 2d 256, 265–67 (E.D.N.Y. 2009); *In re Bextra/Celebrex Prods. Liab. Litig.*

12  (MDL No. 1699), Pretrial Order No. 8A (N.D. Cal. 2008) (8% assessment); *In re Sulzer Hip*

13  *Prosthesis & Knee Prosthesis Prods. Liab. Litig.*, 268 F. Supp. 2d 907 (N.D. Ohio 2003), *aff'd*,

14  398 F.3d 778 (6th Cir. 2005); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525–29 (D.

15  Nev. 1987); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d

16  1006, 1019–21 (5th Cir. 1977). The Third Circuit most recently endorsed this important case

17  management tool in *Home Depot USA, Inc. v. LaFarge North America, Inc.*, 59 F.4th 55 (3d Cir.

18  2023).

19          8.      Use of the common benefit doctrine to compensate attorneys who work for the

20  common good of all plaintiffs is necessary for MDLs to be an effective means for the timely and

21  economic resolution of cases. Management of complex MDLs would be impossible without

22  court-appointed counsel. *See Bard IVC Filters*, 603 F. Supp. 3d at 831. If court-appointed

23  counsel "are to be an effective tool, the court must have the means at its disposal to order

24  appropriate compensation for them. The court's power is illusory if it is dependent upon [court-

25  appointed] counsel's performing the duties desired of them for no additional compensation."

26  *Everglades*, 549 F.2d at 1012. Thus, in consolidated MDL proceedings, it is standard practice to

27  order that a percentage of all recoveries be contributed to a fund to compensate attorneys who

28  provide work for the common benefit of all plaintiffs. *Manual for Complex Litigation (Fourth)*

§ 20.312 (2004) ("MDL judges generally issue orders directing that defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel.").

## II.   APPLICATION AND SCOPE

9.   This Order applies to:

a)   All cases or claims now or later subject to the jurisdiction of this Court in this MDL, regardless of whether the case is resolved while the case is pending before this Court, after a remand from this Court to the transferor court, or in bankruptcy;[3]

b)   All cases or claims, filed or unfiled, in which any counsel associated with any one case filed in or transferred to this MDL has a fee interest; and,

c)   All cases or claims settled pursuant to an MDL-negotiated or supervised settlement agreement.

## III.   PLAINTIFFS' FEE AND EXPENSE ACCOUNTS

10.   Plaintiffs' Lead Counsel is directed to establish two bank accounts (the "Accounts") to receive and disperse funds consistent with this Order (the "Funds"). These Funds will be held subject to the direction of this Court. The first fund shall be designated as the "Fee Fund," and the second should be designated as the "Expense Fund."

### A.   Establishing the Fee and Expense Accounts

11.   The accounting department of Plaintiffs' Lead Counsel's firm is directed to serve as "Administrator" to oversee the Accounts and to receive and disburse funds in the event of settlements or verdicts as provided in this Order and any subsequent Orders. The Accounts will be held subject to the direction of this Court.

---

[3] If a case is determined to be improperly removed to this Court after the Court's consideration of a remand motion and is remanded to the transferor court, the case will not automatically be subject to assessment just by virtue of it having been temporarily venued in this Court. However, if the case received and benefited from the work product of the MDL, it could be assessed, after due consideration by the Court following briefing by the parties.

**B.**      <u>Administration of the Fee and Expense Accounts</u>

12.      The Accounts shall be established at a commercial bank that Plaintiffs' Lead Counsel shall select in consultation with the PSC. The commercial bank shall be the "Escrow Agent."

13.      No disbursement shall be made from the Accounts other than by Order of this Court pursuant to a petition requesting an award of fees and reimbursement of expenses (a "Petition"). No Petition shall be filed without leave of Court. No person or entity has any right to make any claim against any of the amounts held in the Accounts except to the extent this Court issues an Order directing the disbursement of any amounts to such a person or entity. The rights of any such person or entity are limited to the amount ordered by the Court to be so disbursed to that particular person or entity. Plaintiffs' Lead Counsel may, in consultation with the PSC, convene a common benefit fees and costs committee, or utilize another appropriate mechanism, to make recommendations to the Court for the award of common benefit fees and costs. Any and all such awards require Court approval on noticed motions.

14.      The amounts held in the Accounts shall not constitute the separate property of any person or entity or be subject to garnishment or attachment for the debts of any person or entity. However, any specific amounts ordered by the Court to be disbursed to a person or entity, upon the entry of such an Order, can then be subject to garnishment or attachment, limited to the amount of the disbursement so ordered. These limitations do not preclude a person or entity from transferring, assigning, or creating a security interest in potential disbursements from the Accounts to which such person or entity may be entitled as determined by the Court, if permitted by applicable state laws and if subject to the conditions and contingencies of this Order. However, no notice of lien or security interest in potential disbursements or of a transfer or assignment of a right of potential disbursements shall be effective unless and until it is filed in this Court and served upon the Administrator.

15.      In connection with the administrative services, the Administrator shall:

     a)      Have all such power and authority over the Accounts as necessary or convenient to exercise the authority granted in this Order;

b)   Keep and report periodically to the Court, to the extent requested by the Court, an accounting of the funds received, maintained, and disbursed relating to the Accounts;

c)   Have the authority to instruct the Escrow Agent with respect to permitted investments of the Accounts;

d)   Make decisions and take action with respect to treatment of the Accounts for purposes of compliance with the Internal Revenue Code and any applicable local or state tax codes, including creating reports, maintaining and reporting relating to the Accounts and their income, if any, derived therefrom, and as in a Qualified Settlement Fund or such other entity as the Administrator deems appropriate;

e)   Out of the assets of the Accounts, purchase and maintain reasonable amounts and types of insurance for errors and omissions or fidelity bonds;

f)   Have the authority to procure, upon consultation with the PSC, professional accounting, legal, and other services for the purposes of carrying out the tasks described in this Order, and to be reimbursed for the expenses of such services; and,

g)   Have the authority to adopt and implement reasonable procedures consistent with this Order and in consultation with the PSC.

16.   Unless required by law (as with a settlement containing a class action component in which certain class members settle parallel to, but outside of, the settlement class), or as otherwise agreed to by Defendants and the PSC, details of any individual settlement agreement, individual settlement amount, and individual amounts deposited into the Accounts shall be treated as confidential by the Administrator and shall not be disclosed by the Administrator to the public, the Court, or the Court's designee, unless the Court requests that it receive that information *in camera*. The Administrator shall, however, provide statements to the Court upon its request, showing only the aggregate of the monthly deposits, disbursements, interest earned, financial institution charges, if any, and current balance.

**C.      Requirements of the Escrow Agent**

17.   The Escrow Agent shall be a commercial bank that: (1) has deposits insured by the Federal Deposit Insurance Corporation; (2) is organized under the laws of the United States or any state thereof; and (3) has a total risk-based capital in excess of $5 billion and meets the

1  minimum risk-based ratios established under the Federal Deposit Insurance Corporation

2  Improvement Act of 1991. The Escrow Agent may act as paying agent, depository, custodian, or

3  trustee with respect to funds it holds.

4       18.     The Administrator shall consider, in designating the Escrow Agent and in

5  procuring professional services, the charges that the Escrow Agent or provider of professional

6  services will impose for its actions and the ability of the Escrow Agent or provider of

7  professional services to undertake the tasks called for with efficiency and responsiveness.

8       19.     The Escrow Agent shall not acquire or hold for longer than 90 days, any debt

9  securities, certificates, or investments unless such instruments are a U.S. Treasury Bill, U.S.

10 Treasury Money Market, U.S. Government Money Market, or similar type of account

11 guaranteed by the United States or an agency thereof, including an FDIC-Insured Account. The

12 U.S. Treasury Money Market or U.S. Government Money Market must be registered under the

13 Investment Company Act of 1940, as amended. In determining investments to be held by the

14 Escrow Agent, primary regard shall be given by the Escrow Agent to safety of principal.

15      20.     The reasonable fees and reasonable expenses of the Administrator and Escrow

16 Agent shall be paid by the PSC. The Administrator and Escrow Agent shall each provide to the

17 PSC their statements for their reasonable fees and reasonable expenses charged on a monthly

18 basis. When this Court authorizes the filing of a Petition, the reasonable fees and expenses of the

19 Administrator and Escrow Agent that were paid by the PSC may be included as items for

20 reimbursement from the Accounts. The Petition shall include copies of the statements of the

21 Administrator and Escrow Agent that had been submitted on a monthly basis to the PSC to

22 support the request for reimbursement of such payments made by the PSC for which

23 reimbursement is requested.

24 **IV.   PARTICIPATION AGREEMENT AND ELIGIBLE PARTICIPATING**
25      **COUNSEL**

26      21.     Pursuant to PTO-3, the recovery of common benefit attorneys' fees and cost

27 reimbursements will be limited to "Participating Counsel," defined as Plaintiffs' Lead Counsel

28 and members of the Plaintiffs' Steering Committee (along with members and staff of their

1   respective firms), any other counsel authorized by Plaintiffs' Lead Counsel to perform work that

2   may be considered for common benefit compensation, and/or counsel who have been

3   specifically approved by this Court as Participating Counsel prior to incurring any such cost or

4   expense.

5         22.    An agreement attached hereto as **Exhibit 1** (the "Participation Agreement") is

6   approved by this Court for signature by attorneys for the purposes set forth below.

7         23.    The Participation Agreement can be entered into by plaintiffs' attorneys on a

8   voluntary basis. The Participation Agreement is a private and cooperative agreement between the

9   PSC and plaintiffs' attorneys only. It is not an agreement with any Defendant.

10        24.    There is no need for an attorney who already has a case filed in or transferred to

11   this Court or who represents a plaintiff or claimant in any MDL proceeding to sign the

12   Participation Agreement, because they are automatically subject to PTO-3, and any amendments,

13   with regard to all cases in which they have a fee interest, regardless of whether any of their other

14   cases are filed in other jurisdictions, or not yet filed.

15        25.    Plaintiffs' attorneys who do not execute the Participation Agreement and who are

16   not deemed signatories to the Participation Agreement, or are otherwise not bound to common

17   benefit assessments pursuant to PTO-3, and any amendments, are hereinafter referred to as

18   "Non-Participating Counsel."

19        26.    Participating Counsel who execute the Participation Agreement shall be entitled

20   to access to the Common Benefit Work Product for use in all of the cases or claims of their

21   clients, whether the case or claim has been filed or not, and if filed, for use in any court in which

22   it was filed even if not filed in this MDL, and for use for the benefit of non-filed claims,

23   including any for which a tolling agreement exists. All claims or cases of a counsel who has

24   executed the Participation Agreement shall be assessed whether the claim or case has or had not

25   been filed, and all claims or cases in which a counsel who has executed the Participation

26   Agreement has a fee interest shall be assessed.

27        27.    Non-Participating Counsel, who do not execute the Participation Agreement and

28   who are not deemed to have executed the Participation Agreement, shall have no right of access

1   to the Common Benefit Work Product. However, in the event it is determined that such counsel

2   in any fashion benefited from the Common Benefit Work Product or the administrative functions

3   of the PSC, then all cases and claims of clients of such counsel, whether filed or not, shall be

4   subject to the assessment described in this Order. It is deemed that the fair liquidated damages

5   for such unauthorized use of the Common Benefit Work Product is equal to the assessment

6   percentage(s) set by this Order. The Court will also consider an application by the PSC for

7   payment of its fees and costs to enforce this Order with respect to any unauthorized procurement

8   or use of the Common Benefit Work Product.

9          28.    The PSC may periodically request that attorneys who are subject to the

10  assessment provide a list of all cases filed, regardless of jurisdiction, and a list of all claims of

11  clients represented or in which they have a fee interest whether the case is filed or not or on a

12  tolling agreement or not, to facilitate the PSC's ability to keep track of all cases and claims that

13  are subject to the assessment. Further, all counsel with cases filed in or transferred to this Court,

14  and those who sign the Participation Agreement, must comply with such a request within 30

15  days of the request.

16  **V.     ASSESSMENTS AND PAYMENTS INTO THE ACCOUNTS**

17          **A.     Assessment Allocation**

18          29.    For Participating Counsel, the assessment shall be 7.5%. This 7.5% assessment is

19  payable from the attorneys' fee portions of the "Gross Monetary Recovery," defined below, and

20  applies, unless otherwise ordered, to all settlements reached and judgments entered in this

21  litigation, whether before or after the date of this Order.

22          30.    If the 7.5% amount exceeds one-half (1/2) of Participating Counsel's total

23  contingency fee for a given client, then the contingent assessment will instead be limited to one-

24  half (1/2) of the contingency fee of Participating Counsel on each settlement or judgment. This

25  assessment and limit is equivalent to that ordered in a related contemporary MDL, *In re National*

26  *Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio), and within the range of modern

27  MDL assessments. The MDL assessments represent a hold back pursuant to *In re Zyprexa*

28  *Products Liability Litigation*, 467 F. Supp. 2d 256, 266 (2d Cir. 2006).

**B.**  **Calculating the Assessment**

31.     For any attorney subject to an assessment under the terms of this Order, the assessment is owed on the "Gross Monetary Recovery" on all of that attorney's cases or claims.

32.     A Gross Monetary Recovery occurs when a plaintiff agrees or has agreed—for monetary consideration—to settle, compromise, dismiss, or reduce the amount of a claim (a "Settlement") or, with or without trial, recover a judgment for monetary damages or other monetary relief, including compensatory, and/or abatement costs and/or punitive damages (a "Judgment"), with respect to any opioids-related claims against McKinsey, including any or all claims alleged against McKinsey in the Master Complaints and case-specific complaints (and amendments thereto) in these MDL proceedings (individual or class), including but not limited to the private, public, or government-entity plaintiffs (including cities, counties, school districts, Indian tribes, state attorneys general, and participating States).

33.     The Gross Monetary Recovery:

      a.     Excludes court costs that are to be paid by Defendant(s); and,

      b.     Includes the present value of any fixed and certain payments to be made in the future, such as those that come about as a result of a structured settlement of a claim or payments for future abatement costs.

**C.**  **Defendants' Obligations**

34.     Defendants and their counsel shall not distribute any Settlement or Judgment proceeds to any counsel or plaintiff until after (1) Defendants' counsel notifies Plaintiffs' Lead Counsel in writing of the existence of a settlement and the name of the individual plaintiff's attorney (without disclosing the amount of the settlement); (2) Plaintiffs' Lead Counsel consults with the designee, if necessary, to ascertain if the attorney or his/her/their firm is a firm subject to an assessment; and (3) the PSC has advised Defendants' counsel in writing whether or not the individual plaintiff's attorney's cases are subject to an assessment and the amount (stated as a percentage of the recovery) of the assessment pursuant to this Order. Any of the Defendants' counsel shall be permitted to share this information with the PSC, who shall otherwise keep this information confidential.

35.     For cases subject to an assessment, Defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Accounts as a credit against the Settlement or Judgment. No orders of dismissal of any Plaintiff's claim, subject to this Order, shall be entered unless accompanied by a certificate of Plaintiff's and Defendants' counsel that the assessment, where applicable, will be withheld and will be deposited into the Accounts at the same time the settlement proceeds are paid to settling counsel. If for any reason the assessment is not or has not been so withheld, the Plaintiff and his/her/their counsel are jointly responsible for paying the assessment into the Accounts promptly.

36.     Upon payment of the assessment into the Accounts, Defendants, the PSC, and its individual members shall be released from any and all liability to any person, attorney, or claimant with respect to the assessment placed into the Accounts. Any person, attorney, or claimant allegedly aggrieved by an assessment pursuant to this Order shall seek recourse as against the Accounts only, provided, however, that notice and an opportunity to be heard shall be given to both the Defendants and the PSC.

37.     This Order shall in no way be read to affect or otherwise encumber any Defendants' obligation to pay attorneys' fees and costs pursuant to fee-shifting statutes, if any, that may apply in this case.

### D.     Other Rights

38.     Nothing in this Order is intended to impair the attorney/client relationship or any contingency fee contract deemed lawful by the attorneys' respective bar rules and/or state court nor otherwise interfere with public entities' rights to, and exercise of, control in their respective cases.

## VI.     COMMON BENEFIT WORK

### A.     Qualified Common Benefit Work Eligible for Reimbursement

39.     Pursuant to PTO-3, only Participating Counsel are eligible for reimbursement for time and efforts expended for the Common Benefit. Participating Counsel shall be eligible to

1   seek reimbursement for time and efforts expended for Common Benefit Work if said time and

2   efforts are:

3            a.      for the common benefit of Plaintiffs as defined in Paragraph 5 of this
                     Order;

4            b.      timely submitted; and

5            c.      reasonable.

6        40.     All submissions and applications for common benefit fees and/or costs must

7   comply with the procedures, requirements, and guidelines of PTO-3. This Court retains the

8   discretion to amend or supplement PTO-3, and this Order, as necessary and appropriate to reflect

9   ongoing developments in the litigation.

10       41.     Time spent on unauthorized work will not be compensable.

11       42.     Duplicative work may not be approved for compensation.

12       43.     The provisions of PTO-3, Section I(A) are incorporated herein as if set forth in

13  their entirety.

14       **B.**     **Common Benefit Timekeeping Protocols**

15       44.     The provisions of PTO-3, Section I(B) are incorporated herein as if set forth in

16  their entirety.

17  **VII.**   **COMMON BENEFIT EXPENSES**

18       **A.**     **Qualified Common Benefit Expenses Eligible for Reimbursement**

19       45.     In order to be eligible for reimbursement, expenses ("Common Benefit

20  Expenses") must meet the requirements set forth in PTO-3, Section I(D), which are incorporated

21  herein as if set forth in their entirety. Said expenses must be for the common benefit of Plaintiffs

22  in this MDL as a whole and must be approved by Lead Counsel prior to payment.

23       **B.**     **Shared Costs Defined**

24       46.     The provisions of PTO-3 Section I(D)(1) are incorporated herein as if set forth in

25  their entirety.

26       **C.**     **Held Costs Defined**

27       47.     The provisions of PTO-3 Section I(D)(2) are incorporated herein as if set forth in

28  their entirety.

**D.    Common Benefit Submission of Time and Expense Protocols**

48.    The provisions of PTO-3 Section I(E) are incorporated herein as if set forth in their entirety.

**VIII.    FURTHER PROCEEDINGS AND CONTINUING JURISDICTION**

49.    The payment of attorneys' fees and expenses for any class action settlement or recovery is governed by Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules. This Order is without prejudice to such other assessments or awards of fees and costs as may be ordered by this Court under Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules, the common benefit doctrine, or that may be provided by contract between the parties to a group or global settlement, provided that any order or agreement that would alter the common benefit obligations set forth herein is also subject to the approval of this Court.

50.    The intent of this Order is to establish, secure, and supervise a fund to promote the purposes and policies of the common benefit doctrine and provide a source for equitable payment of services rendered and costs incurred for the benefit of plaintiffs.

51.    If all parties to a future settlement agree that exceptional circumstances warrant a departure from the holdback obligations, or other provisions of this Order, they shall submit affidavits thereon and request appropriate relief from the Court.

52.    Any disputes or requests for relief from or modification of this Order will be decided by the Court in the exercise of its continuing jurisdiction over the parties, and authority and discretion under the common benefit doctrine.

For Good Cause Shown,

**IT IS SO ORDERED.**

_____
THE HONORABLE CHARLES R. BREYER

# EXHIBIT B

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: JUUL LABS, INC., MARKETING,
SALES PRACTICES, AND PRODUCTS
LIABILITY LITIGATION

_____

This Document Relates to:

ALL ACTIONS

_____

Case No. 19-md-02913-WHO

**CASE MANAGEMENT ORDER 5(A)
ESTABLISHING A COMMON
BENEFIT FEE AND EXPENSE FUND**

    **THIS ORDER** is entered to supplement Case Management Order No. 5 (Common

Benefit Order—Timekeeping and Expenses Protocol) entered January 13, 2020 in this litigation

("CMO-5").[1] CMO-5 remains in full force and effect and is hereby supplemented as follows:

    1.     On December 20, 2019, this Court appointed a Plaintiffs' leadership structure.[2]

    2.     On January 13, 2020, this Court entered CMO-5, which sets forth detailed

instructions for the performance of common benefit work, and for the type of work and expenses

that could qualify for potential compensation and reimbursement. Under this authority and with

_____

[1] ECF Doc. No. 352.

[2] ECF Doc. No. 341.

1   this guidance, Plaintiffs' Co-Lead Counsel, Liaison Counsel, the members of the Plaintiffs'

2   Steering Committee (referred to as the "MDL PSC") and other authorized counsel, have done

3   and will continue to do common benefit work on a contingent basis.  The MDL PSC has

4   invested and will continue to invest substantial time and financial resources related to motion

5   practice, discovery, and bellwether trials against many Defendants. This work has and will

6   benefit all Plaintiffs with claims against Defendants related to the subject matter of this MDL.

7       3.      The MDL and *JUUL Labs Product Cases*, JCCP 5052 (hereinafter "JCCP")

8   (collectively referred to as "Lead Actions") are in the process of negotiating a Coordination

9   Order. Plaintiffs' Steering Committee for the MDL and Plaintiffs' Steering Committee for the

10  JCCP (collectively referred to as "PSCs") have been working cooperatively concerning

11  discovery and coordination of the Lead Actions.

12      4.      The Court continues to encourage a cooperative approach by all plaintiffs in

13  federal and state court. To facilitate coordination, this Court anticipates entering a Joint

14  Coordination Order through which work product will be shared between the Lead Actions, state

15  court plaintiffs in other coordinated and independent actions, and presumably the State Attorneys

16  General for their respective cases.

17      5.      On February 18, 2020, the JCCP Court appointed the Plaintiffs' Leadership

18  structure.[3] Co-Lead Counsel for Individual Plaintiffs in the JCCP will seek entry of a similar

19  order ("Parallel Common Benefit Order") from Hon. Ann I. Jones.  The goal of the Parallel

20  Common Benefit Order will be to enable a substantially similar system in the JCCP action

21  governing its fees, expenses, common benefit work assignments, and reporting as outlined in this

22  Order. Co-Lead Counsel from the Lead Actions agree that parallel common benefit orders will

23  facilitate cooperation and coordination between the federal and state cases.

24      6.      It is just and appropriate to provide a system of assessment on any settlements

25  and recoveries, to which this substantial effort has contributed, commensurate with common

26  benefit assessments ordered in recent MDLs.

27

28

---

[3] *JUUL Labs Product Cases*, JCCP 5052 Case Management Order 1.1.

- 2 -                                          CMO NO. 5(A)
                                              Case No. 3:19-md-02913-WHO

1    7.    The Court enters this Order: (1) to avoid unnecessary conflicts and expense,

2    conserve judicial resources, and expedite the disposition of all the cases by enabling the

3    coordination of the Lead Actions and other state courts; (2) to provide for the equitable sharing

4    among Plaintiffs and their counsel of the burden of services performed and expenses incurred by

5    attorneys acting for the common benefit of all Plaintiffs in this complex litigation (collectively,

6    "Common Benefit Work"); and (3) to enable Plaintiffs' attorneys who wish to obtain the work-

7    product of the PSCs and the work-product of others who perform authorized common benefit

8    work whether in the Lead Actions or in state court (collectively, the "Common Benefit Work

9    Product"), an opportunity to obtain such work product.

10    8.    The Court is aware that the Lead Actions worked collaboratively to submit a

11    proposal regarding common benefit procedures, as well as the intent of the JCCP leadership for

12    Individual Plaintiffs to seek a Parallel Common Benefit Order, and accordingly enters the

13    provisions applicable to the MDL as set forth below.

14    **I.    GOVERNING PRINCIPLES—THE COMMON BENEFIT DOCTRINE**

15    9.    This Order is entered to provide for the fair and equitable sharing, among all

16    beneficiaries, of the value of the services performed and expenses incurred by attorneys acting

17    for the common benefit of all plaintiffs in this complex litigation. This is accomplished by

18    directing Defendants who have appeared in these proceedings, and over whom this Court has

19    exercised jurisdiction, in the event of settlement, verdicts, and/or other recoveries, to either hold

20    back or self-fund a designated percentage of their related settlements. The Court's authority

21    derives from the Supreme Court's common benefit doctrine, as established in *Trustees v.*

22    *Greenough*, 105 U.S. 527 (1881); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116

23    (1884); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*,

24    396 U.S. 375 (1970); and *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

25    10.    Courts have properly exercised their inherent case management authority to apply

26    the common benefit doctrine in MDL proceedings.  *See In re Cook Medical, Inc., Pelvic Repair*

27    Systems, 365 F. Supp. 3d 685, 695 (MDL No. 2440) (S.D.W.V. 2019) (collecting cases); *In re*

28    *MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525-29 (D. Nev. 1987); *In re Air Crash*

1    *Disaster at Florida Everglades on December 29,1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977);

2    *In re Zyprexa Prods. Liab. Litig.* (MDL No. 1596), 467 F. Supp. 2d 256, 265-267 (E.D.N.Y.

3    2009); *In re Sulzer Hip Prosthesis and Knee Prosthesis Prods. Liab. Litig.*, 268 F.Supp.2d 907

4    (N.D. Ohio 2003), *affirmed*, 398 F.3d 778 (6th Cir. 2005).

5          11.    Use of the common benefit doctrine to compensate attorneys who work for the

6    common good of all plaintiffs is necessary for MDLs to be an effective means for the timely and

7    economic resolution of cases. Management of complex MDLs would be impossible without

8    court-appointed counsel. If court-appointed counsel "are to be an effective tool, the court must

9    have the means at its disposal to order appropriate compensation for them. The court's power is

10   illusory if it is dependent upon [court-appointed] counsel's performing the duties desired of them

11   for no additional compensation." *Everglades,* 549 F.2d at 1012. Thus, in consolidated MDL

12   proceedings, it is standard to order that a percentage of all recoveries be contributed to a fund to

13   compensate attorneys who provide work for the common benefit of all plaintiffs. *Manual for*

14   *Complex Litigation (Fourth)* § 20.312 (2004) ("MDL judges generally issue orders directing that

15   defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a

16   general fund to pay national counsel.").

17   **II.    APPLICATION AND SCOPE**

18         12.    This Order applies to:

19              a)    All cases or claims now or later subject to the jurisdiction of this Court in
20                    this MDL, regardless of whether the case is resolved while the case is
                      pending before this Court, after a remand from this Court to the transferor
21                    court, or in bankruptcy;[4]

22              b)    All cases or claims, filed or unfiled, in which any counsel associated with
                      any one case filed in or transferred to this MDL has a fee interest;
23

24              c)    Coordinated Actions as that term is defined in an anticipated
                      Coordination Order, to the extent attorneys in those actions also have fee
25

26   _____

27   [4] If a case is determined to be improperly removed to this Court after the Court's consideration of a
     remand motion and is remanded to the transferor court, the case will not automatically be subject to
     assessment just by virtue of it having been temporarily venued in this Court. However, if the case
28   received and benefited from the work product of the MDL, it could be assessed, after due consideration
     by the Court following briefing by the parties and with input from the Common Benefit Special Master.

interests in cases filed or transferred to this MDL, sign the Participation Agreement, or utilize the work product of this MDL;

d)   All cases or claims settled pursuant to an MDL-negotiated or supervised settlement agreement; and,

e)   All cases or claims of clients of any counsel who signed the Participation Agreement as defined herein, whether the case was filed, unfiled or tolled.

## III.   STATE-FEDERAL COORDINATION

### A.   Coordination with the Consolidated California State Court Litigation

13.   Coordination on discovery and case management between the Lead Actions will be effectuated as set forth in the anticipated Coordination Orders to be entered by this Court and the JCCP Court and otherwise where practicable and appropriate, through cooperation between the leadership counsel for the MDL and the JCCP.

### B.   Establishing of Joint Document Depository

14.   The Court understands that the PSCs have established a joint platform for hosting documents (the "Joint Document Depository"). The Joint Document Depository shall be available for the use of the plaintiffs in this MDL and the JCCP, subject to the terms set forth below, and other attorneys who sign the Participation Agreement.

## IV.   PLAINTIFFS' JUUL FEE AND EXPENSES ACCOUNTS

15.   The MDL Plaintiffs' Liaison Counsel is directed to establish two bank accounts (the "Accounts") to receive and disperse funds provided in this Order (the "Funds"). These Funds will be held subject to the direction of this Court. The first fund shall be designated as the "JUUL Fee Fund" and the second should be designated as "JUUL Expense Fund" respectively. The Court understands that JCCP Leadership for Individual Plaintiffs as set forth above will move to establish two similar JCCP accounts in the Parallel Common Benefit Order.

### A.   Establishing the JUUL Fee and Expense Accounts

16.   The MDL Plaintiffs' Liaison Counsel, in consultation with the MDL PSC, shall identify a Certified Public Accountant to serve as "Administrator" to be appointed by a separate Order who will be directed to oversee the Accounts and to receive and disburse funds in the

1    event of settlements or verdicts as provided in this Order and any subsequent Orders.  The

2    Accounts will be held subject to the direction of this Court.

3         **B.**      **Administration of the JUUL Fee and Expense Accounts**

4         17.      The Accounts shall be established at a commercial bank that the Administrator

5    shall select in consultation with the MDL PSC.  The commercial bank shall be the "Escrow

6    Agent."

7         18.      No disbursement shall be made from the Accounts other than by Order of this

8    Court pursuant to a petition requesting an award of fees and reimbursement of expenses (a

9    "Petition").  No Petition shall be filed without leave of Court.  No person or entity has any right

10   to make any claim against any of the amounts held in the Accounts except to the extent this

11   Court  issues an Order directing the disbursement of any amounts to such a person or entity. The

12   rights of any such person or entity are limited to the amount ordered by the Court to be so

13   disbursed to that particular person or entity.

14        19.      The amounts held in the Accounts shall not constitute the separate property of any

15   person or entity or be subject to garnishment or attachment for the debts of any person or entity.

16   However, any specific amounts ordered by the Court to be disbursed to a person or entity, upon

17   the entry of such an Order, can then be subject to garnishment or attachment, limited to the

18   amount of the disbursement so ordered. These limitations do not preclude a person or entity from

19   transferring, assigning, or creating a security interest in potential disbursements from the

20   Accounts to which such person or entity may be entitled as determined by the Court, if permitted

21   by applicable state laws and if subject to the conditions and contingencies of this Order.

22   However, no notice of lien or security interest in potential disbursements or of a transfer or

23   assignment of a right of potential disbursements shall be effective unless and until it is filed in

24   this Court and served upon the Administrator.

25        20.      In connection with the administrative services, the Administrator shall:

26             a)     Have all such power and authority over the Accounts as necessary or
                      convenient to exercise the authority granted in this Order;
27

28             b)     Keep and report periodically to the Court, to the extent requested by
                      the Court, an accounting of the funds received, maintained and

disbursed relating to the Accounts;

    c)    Have the authority to instruct the Escrow Agent with respect to permitted investments of the Accounts;

    d)    Make decisions and take action with respect to treatment of the Accounts for purposes of compliance with the Internal Revenue Code and any applicable local or state tax codes, including creating reports, maintaining and reporting relating to the Accounts and their income, if any, derived therefrom, and as in a Qualified Settlement Fund or such other entity as the Administrator deems appropriate;

    e)    Out of the assets of the Accounts, purchase and maintain reasonable amounts and types of insurance for errors and omissions or fidelity bonds;

    f)    Have the authority to procure, upon consultation with the MDL PSC, professional accounting, legal and other services for the purposes of carrying out the tasks described in this Order, and to be reimbursed for the expenses of such services; and,

    g)    Have the authority to adopt and implement reasonable procedures consistent with this Order and in consultation with the MDL PSC.

21.    Unless otherwise agreed to by Defendants and the MDL PSC, details of any individual settlement agreement, individual settlement amount, and individual amounts deposited into the Accounts shall be treated as confidential by the Administrator and shall not be disclosed by the Administrator to the MDL PSC, the Court, or the Court's designee, unless the Court requests that it receive that information *in camera*. The Administrator shall, however, on a quarterly basis provide statements to the MDL Co-Lead counsel and the Courts showing only the aggregate of the monthly deposits, disbursements, interest earned, financial institution charges, if any, and current balance.

### C.    Requirements of the Escrow Agent

22.    The Escrow Agent shall be a commercial bank that: (1) has deposits insured by the Federal Deposit Insurance Corporation; (2) is organized under the laws of the United States or any state thereof; and (3) has a total risk-based capital in excess of $5 billion and meets the minimum risk-based ratios established under the Federal Deposit Insurance Corporation

1    Improvement Act of 1991. The Escrow Agent may act as paying agent, depository, custodian or

2    trustee with respect to funds it holds.

3        23.    The Administrator shall consider, in designating the Escrow Agent and in

4    procuring professional services, the charges that the Escrow Agent or provider of professional

5    services will impose for its actions and the ability of the Escrow Agent or provider of

6    professional services to undertake the tasks called for with efficiency and responsiveness.

7        24.    The Escrow Agent shall not acquire or hold for longer than 90 days, any debt

8    securities, certificates or investments unless such instruments are a U.S. Treasury Bill, U.S.

9    Treasury Money Market, U.S. Government Money Market or similar type of account guaranteed

10   by the United States or an agency thereof, including an FDIC-Insured Account. The U.S.

11   Treasury Money Market or U.S. Government Money Market must be registered under the

12   Investment Company Act of 1940, as amended. In determining investments to be held by the

13   Escrow Agent, primary regard shall be given by the Escrow Agent to safety of principal.

14       25.    The reasonable fees and reasonable expenses of the Administrator and Escrow

15   Agent shall be paid by the MDL PSC. The Administrator and Escrow Agent shall each provide

16   to the MDL PSC their statements for their reasonable fees and reasonable expenses charged on a

17   monthly basis. When this Court authorizes the filing of a Petition, the reasonable fees and

18   expenses of the Administrator and Escrow Agent that were paid by the MDL PSC may be

19   included as items for reimbursement from the Accounts. The Petition shall include copies of the

20   statements of the Administrator and Escrow Agent that had been submitted on a monthly basis to

21   the MDL PSC to support the request for reimbursement of such payments made by the MDL

22   PSC for which reimbursement is requested.

23   **V.    APPOINTMENT OF THE SPECIAL MASTER FOR COMMON BENEFIT
            REVIEW AND DISPUTE RESOLUTION**

24

25       26.    The Lead Actions have advised the Court that they have reached an agreement

26   that Retired Judge Gail A. Andler, formerly of the Orange County Superior Court Complex

27   Department, presently with the mediation group JAMS in Irvine, California, would be an

28   appropriate special master to audit reported common benefit time and costs, and to resolve any

1  common benefit disputes that may arise between any parties authorized to submit common

2  benefit time and or expenses (the "Common Benefit Special Master").  The Court finds that

3  Judge Andler is well-qualified to perform these tasks. Accordingly, the Court appoints Judge

4  Gail A. Andler as Common Benefit Special Master to perform the necessary case time and cost

5  management functions pursuant to CMO-5, this Order, and any amendments. The Court will

6  issue a separate Order regarding this appointment pursuant to Federal Rule of Civil Procedure

7  53.

8          27.     The MDL PSC, in consultation with the Common Benefit Special Master and the

9  JCCP leadership, may choose to retain a vendor to provide an electronic platform for reporting

10  of common benefit time and costs. The Common Benefit Special Master shall provide quarterly

11  reports to the MDL Co-Leads and the JCCP leadership as to her review of the common benefit

12  time and cost submissions.  Within thirty days of each report being provided to the MDL Co-

13  Leads, the MDL Co-Leads shall submit a report to the Court including the Common Benefit

14  Special Master's findings as well as any matters that the Co-Leads believe merit the Court's

15  attention.  Because of the nature of the information contained in this submission, it may be made

16  *ex parte* and will not be submitted to Defense Counsel or posted on any docket.

17  **IV.    PARTICIPATION AGREEMENT AND ELIGIBLE PARTICIPATING**
18         **COUNSEL**

19         28.     An agreement attached hereto as **Exhibit A** (the "Participation Agreement") is

20  approved by this Court for signature by attorneys for the purposes set forth below.

21         29.     The Participation Agreement can be entered into by plaintiffs' attorneys on a

22  voluntary basis. The Participation Agreement is a private and cooperative agreement between the

23  MDL PSC and plaintiffs' attorneys only. It is not an agreement with any Defendants.

24         30.     There is no need for an attorney who already has a case filed in or transferred to

25  this Court to sign the Participation Agreement, because they are automatically subject to the

26  Common Benefit Orders CMO-5 and CMO-5(a), and any amendments (unless they met the

27  criteria of a remand for wrongful removal as set forth in footnote 3) with regard to all cases in

28

1  which they have a fee interest, regardless of whether any of their other cases are filed in other

2  jurisdictions, or not yet filed.

3        31.     Plaintiffs' attorneys who execute the Participation Agreement are hereinafter

4  referred to as "Participating Counsel." Plaintiffs' attorneys who do not execute the Participation

5  Agreement and who are not deemed signatories to the Participation Agreement, or are otherwise

6  not bound to common benefit assessments pursuant to CMO-5 and CMO5(a), and any

7  amendments are hereinafter referred to as "Non-Participating Counsel."

8        32.     All counsel for Coordinated Actions must sign the Participation Agreement in

9  order to obtain MDL Common Benefit Work Product, and if otherwise authorized, to submit for

10  common benefit time and costs.

11       33.     Participating Counsel who execute the Participation Agreement shall be entitled

12  to access to the Common Benefit Work Product for use in all of the cases or claims of their

13  clients, whether the case or claim has been filed or not, and if filed, for use in any court in which

14  it was filed even if not filed in this MDL, and for use for the benefit of non-filed claims,

15  including any for which a tolling agreement exists. All claims or cases of a counsel who has

16  executed the Participation Agreement shall be assessed whether the claim or case has or had not

17  been filed, and all claims or cases in which a counsel who has executed the Participation

18  Agreement has a fee interest shall be assessed.

19       34.     As detailed above, this Court understands that the JCCP leadership for Individual

20  Plaintiffs intends to seek entry of a Parallel Common Benefit Order as soon as practicable that

21  will apply to counsel with cases pending in the JCCP, including those not otherwise subject to

22  this Order.  This Court also recognizes, however, that court functions at the Los Angeles

23  Superior Court are limited at this time due to the ongoing Covid-19 pandemic, and that it may be

24  some time before a Parallel order is entered.  In the meantime, if attorneys from the JCCP wish

25  to access and submit time and expenses for Common Benefit Work—for example, document

26  coding in the Joint Document Depository, or engage in other cooperative work—they may do so

27  by signing the Participation Agreement, or by coordinating with the MDL PSC (and utilizing the

28  Common Benefit Special Master as necessary) to reach interim agreements.

35.     Non-Participating Counsel, who do not execute the Participation Agreement and who are not deemed to have executed the Participation Agreement, or who are not subject to a Parallel common benefit order or interim agreement with the MDL PSC, shall have no right of access to the Common Benefit Work Product. However, in the event it is determined that such counsel in any fashion benefitted from the Common Benefit Work Product or the administrative functions of the PSCs, then all cases and claims of clients of such counsel, whether filed or not, shall be subject to the assessment described in this Order. It is deemed that the fair liquidated damages for such unauthorized use of the Common Benefit Work Product is equal to the assessment percentage(s) set by this Order. The Court will also consider an application by the MDL PSC for payment of its fees and costs to enforce this Order with respect to any unauthorized procurement or use of the Common Benefit Work Product.

36.     The PSCs may periodically request that attorneys who are subject to the assessment provide a list of all cases filed, regardless of jurisdiction, and a list of all claims of clients represented or in which they have a fee interest whether the case is filed or not or on a tolling agreement or not, to facilitate the PSCs' ability to keep track of all cases and claims that are subject to the assessment. Further, all counsel with cases filed in or transferred to this Court, and those who sign the Participation Agreement, must comply with such a request within 30 days of the request.

**VI.     ASSESSMENTS AND PAYMENTS INTO THE ACCOUNTS**

    **A.     Assessment Allocation**

37.     Early Participating Counsel and Late Participating Counsel

    a.     "Early Participating Counsel" include any counsel with cases filed in a Lead Action, or any counsel who enters into the Participation Agreement within 60 days of the entry of the Order or 60 days of their first case being docketed in a Coordinated Action, or any other jurisdiction working cooperatively with the Lead Actions (whichever date is later).  For Early Participating Counsel, the assessment shall be a combined seven percent 7% (5% for fees and 2% percent for costs).

    b.     "Late Participating Counsel" include any counsel who enters into the

1  Participation Agreement 60 days or later after the entry of this Order or 60 days or later after

2  their first case being docketed in a Coordinated Action, or any jurisdiction working

3  cooperatively with the Lead Actions (whichever date is later). For Late Participating Counsel,

4  the assessment shall be a combined 10% (8% for fees and 2% percent for costs).  Exceptions

5  may be made for Public Entities and School Districts, who may require additional time and

6  process for consultation and approval from certain California public entities, and such

7  exceptions will allow for Early Participation assessment rates.

8          c.      Early Participating Counsel and Late Participating Counsel together are

9  referred to as "Participating Counsel."

10         38.     The MDL and (proposed) JCCP assessments represent a hold back pursuant to *In*

11  *re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 266 (2d. Cir. 2006), and shall not be altered

12  in any way unless each of the following occurs: (1) the PSCs are consulted and provided an

13  opportunity to be heard at a formally announced meeting prior to the filing of any motion to

14  change the assessment amount; (2) the PSCs approve the proposed change to the assessment by a

15  majority vote of each PSC; (3) a noticed motion (including notice to Defendants' Liaison

16  Counsel) with an opportunity to be heard is granted by each Lead Action Court as to its

17  respective common benefit order, (4) all Early and Late Participating Counsel receive emailed or

18  mailed communication of such motion and (5) this Court, upon good cause shown, amends this

19  Order. The PSCs agree and understand that JCCP Co-Lead Counsel for Public Entities and

20  School Districts will be given opportunity to object in the event certain public entities do not

21  agree to this assessment or an increase in assessments.

22         **B.      Calculating the Assessment**

23         39.     For any attorney subject to an assessment under the terms of this Order, the

24  assessment is owed on the "Gross Monetary Recovery" on all of that attorney's cases or claims.

25         40.     A Gross Monetary Recovery occurs when a plaintiff agrees or has agreed—for

26  monetary consideration—to settle, compromise, dismiss, or reduce the amount of a claim (a

27  "Settlement") or, with or without trial, recover a judgment for monetary damages or other

28  monetary relief, including compensatory, and/or abatement costs and/or punitive damages (a

1  "Judgment"), with respect to any JUUL-related claims (individual or class), including but not

2  limited to the private, public, or government entity plaintiffs (including cities, counties, school

3  districts, Indian tribes, state attorney generals, and participating States).

4       41.    The Gross Monetary Recovery:

5          a.    Excludes court costs that are to be paid by Defendant(s); and,

6          b.    Includes the present value of any fixed and certain payments to be made
7                in the future, such as those that come about as a result of a structured
              settlement of a claim or payments for future abatement costs.

8      **C.**    **Defendants' Obligations**

9       42.    Defendants and their counsel shall not distribute any Settlement or Judgment

10 proceeds to any counsel or plaintiff until after (1) Defendants' counsel notifies the MDL PSC

11 Liaison Counsel Sarah London, JCCP Co-Lead Counsel, and the Common Benefit Special

12 Master in writing of the existence of a settlement and the name of the individual plaintiff's

13 attorney (without disclosing the amount of the settlement); (2) MDL PSC Liaison Counsel Sarah

14 London consults JCCP Co-Lead Counsel if necessary to ascertain if the attorney or his/her firm

15 is a firm subject to an assessment;  and (3) the PSCs have advised Defendants' counsel in writing

16 whether or not the individual plaintiff's attorney's cases are subject to an assessment and the

17 amount (stated as a percentage of the recovery) of the assessment pursuant to this Order. Any of

18 the Defendants' counsel shall be permitted to share this information with the MDL PSC Liaison

19 Counsel and JCCP Co-Lead Counsel, who shall otherwise keep this information confidential.

20      43.    For cases subject to an assessment, Defendants are directed to withhold an

21 assessment from any and all amounts paid to plaintiffs and their counsel and to pay the

22 assessment directly into the Accounts based on the allocations set forth in paragraph 37 above as

23 a credit against the Settlement or Judgment.  No orders of dismissal of any Plaintiff's claim,

24 subject to this Order, shall be entered unless accompanied by a certificate of Plaintiff's and

25 Defendants' counsel that the assessment, where applicable, will be withheld and will be

26 deposited into the Accounts at the same time the settlement proceeds are paid to settling

27 counsel.  If for any reason the assessment is not or has not been so withheld, the Plaintiff and

28

1   his/her/their counsel are jointly responsible for paying the assessment into the Accounts

2   promptly.

3          44.     Upon payment of the assessment into the Accounts, Defendants, the PSCs, and its

4   individual members shall be released from any and all liability to any person, attorney, or

5   claimant with respect to the assessment placed into the Accounts. Any person, attorney, or

6   claimant allegedly aggrieved by an assessment pursuant to this Order shall seek recourse as

7   against the Accounts only, provided however, that notice and an opportunity to be heard shall be

8   given to both the Defendants and the PSCs.

9          45.     This Order shall in no way be read to affect or otherwise encumber any

10  Defendants' obligation to pay attorneys' fees and costs pursuant to fee shifting statutes, if any,

11  that may apply in this case.

12         **D.     Other Rights**

13         46.     Nothing in this Order is intended to impair the attorney/client relationship or any

14  contingency fee contract deemed lawful by the attorneys' respective bar rules and/or state court

15  nor otherwise interfere with public entities' rights to, and exercise of, control in their respective

16  cases.

17  **VII.   COMMON BENEFIT WORK**

18         **A.     Qualified Common Benefit Work Eligible for Reimbursement**

19         47.     Only  PSCs' counsel or their designees and Participating Counsel are eligible for

20  reimbursement for time and efforts expended for the Common Benefit. Participating Counsel

21  shall be eligible to seek reimbursement for time and efforts expended for Common Benefit

22  Work, if said time and efforts are:

23                 a.      for the common benefit;

24                 b.      appropriately authorized;

25                 c.      timely submitted;

26                 d.      certified by a senior partner of the submitting firm each month attesting
                           to the accuracy and correctness of the monthly submission; and,
27

28                 e.      approved by the Common Benefit Special Master, pursuant to her
                           designated authority as set forth in a subsequent order.

1    48.    There is no guarantee that all of the time submitted by any firm will be

2    compensated and the hourly rate for the work that is compensated is not guaranteed.  If counsel

3    is a member of either the MDL PSC or the JCCP PSC and fails to timely submit capital

4    contributions as may be requested by Co-Lead Counsel in that Lead Action, such counsel and

5    members of his/her firm shall not be allowed to submit common benefit time and expenses, or in

6    the discretion of the Co-Lead Counsel for the Lead Actions, a submission may be made with an

7    explanation of why the capital contributions stopped, and the PSCs with the guidance of the

8    Common Benefit Special Master and the Courts, may, after review and consultation, for good

9    cause, agree to an award that is substantially reduced.

10    49.    All submissions and applications for common benefit fees and/or costs, whether

11    made by counsel performing such work in the Lead Actions or in state courts, must comply with

12    the procedures, requirements and guidelines of CMO-5, as amended, or the corresponding JCCP

13    Order. Counsel performing common benefit work in courts other than the Lead Actions, who

14    have not previously submitted their time and costs under CMO-5, shall have 45 days to do so

15    from the date that counsel signs the Participation Agreement. However, submitted time must

16    have been contemporaneously recorded, well-documented, and not reconstructed after the fact,

17    and if not pre-authorized, show good cause for the late submission.  Attorneys authorized to do

18    work by Co-Lead Counsel in the Lead Actions shall submit their time to the Common Benefit

19    Special Master (with copies to their respective Co-Leads of the MDL or JCCP) in the form of

20    spreadsheets and documentation to be specified by the Common Benefit Special Master. If an

21    attorney applies for common benefit fees or costs in this Court, all of the cases in which the

22    attorney and/or his or her law firm are counsel of record are subject to the full assessment.[5] This

23    Court retains the discretion to amend or supplement CMO-5, and this Order, as necessary and

24    appropriate to reflect ongoing developments in the litigation.

25    **B.    Compensable Common Benefit Work Defined**

26    50.    As the litigation progresses and Common Benefit Work Product is generated, Co-

27    Lead Counsel of the MDL will assign their Participating Counsel with Common Benefit Work as

28    _____

[5] By making application for common benefit fees or costs, an attorney is automatically eligible to access Common Benefit Work Product outlined in the Participation Agreement.

- 15 -

CMO NO. 5(A)
Case No. 3:19-md-02913-WHO

1    is necessary. In the MDL, Common Benefit Work shall include only work specifically assigned

2    by the MDL Co-Lead Counsel, and Co-Chairs of the MDL Committees with the approval of the

3    MDL Co-Lead Counsel.

4          51.    The Court understands the JCCP leadership for Individual Plaintiffs intends to

5    seek entry of a Parallel Common Benefit Order for the authority to assign Common Benefit

6    Work in that proceeding, and encourages the Lead Actions to collaborate on the exercise of such

7    authority to avoid the duplication of time and effort. Disputes between the MDL and JCCP shall

8    be resolved by the Common Benefit Special Master in the first instance, and if necessary, by the

9    Courts.  More details regarding the role of the Common Benefit Special Master in resolving

10   disputes will follow in a subsequent order.

11         52.    Time spent on unauthorized work will not be compensable.

12         53.    Duplicative work may not be approved for compensation.

13         54.    The provisions of CMO-5, Section II(A) are incorporated herein as if set forth in

14   their entirety.

15         55.    Common Benefit Work includes all authorized work performed for the benefit of

16   many plaintiffs in a JUUL case, including pre-trial matters, discovery, trial preparation, trial, a

17   potential settlement process, and all other work that advances this litigation to conclusion.

18   Common Benefit Work includes, but is not limited, to the following authorized activities:

19   maintenance and working in the Joint Document Depository; factual investigation and research;

20   legal research; conducting authorized discovery (e.g. reviewing, indexing, and coding

21   documents); preparation of timelines/chronologies; drafting and filing pleadings, briefs, pre-trial

22   motions and orders; preparation of deposition cuts that may be used in a case set for trial;

23   preparation of the trial exhibits; assembly of the scientific articles; approved PSC activities;

24   work of the MDL Discovery, Law and Briefing, and Science Committee Co-Chairs; other MDL

25   committee work authorized by Co-Lead Counsel; expert development authorized by the Co-

26   Chairs of the Science Committee or Co-Lead Counsel; authorized preparation for and

27   participation at state and federal court hearings; preparation for and taking of depositions of

28

1    Defendants and third-party witnesses, and experts; and activities associated with preparation for

2    trial and the trial of any cases designated by the PSC.

3         **C.**      **Common Benefit Timekeeping Protocols**

4       56.     The provision of CMO-5, Section II(B) is incorporated herein as if set forth in

5    their entirety.

6   **VIII.**    **COMMON BENEFIT EXPENSES**

7         **A.**      **Qualified Common Benefit Expenses Eligible for Reimbursement**

8       57.     In order to be eligible for reimbursement, expenses ("Common Benefit

9    Expenses") must meet the requirements set forth in CMO-5, Section II(C) which are

10   incorporated herein as if set forth in their entirety.  Specifically, said expenses must be:

11           a.     for the common benefit;

12               b.     appropriately authorized, as set forth in this Order, CMO-5,
                    and the Participation Agreement;

13

14               c.     certified by a senior partner of the submitting firm each month
                    attesting to the accuracy and correctness of the monthly

15                            submission; and,

16               d.     approved by the Common Benefit Special Master pursuant to
                    her designated authority as set forth in a subsequent order.

17

18         **B.**      **Compensable Common Expenses Defined**

19       58.     Common Benefit Expenses shall include only authorized and necessary expenses

20   specifically approved by the MDL Co-Lead Counsel, or Co-Chairs of the MDL Committees with

21   the approval of the MDL Co-Lead Counsel. Expenses incurred by the MDL are also subject to

22   the type and kind and limits of CMO-5. In the event of a dispute between the MDL and JCCP

23   counsel as to an expense, it shall be submitted to the Common Benefit Special Master in the first

24   instance, and if necessary, ultimately resolved by the Courts.

25         **C.**      **Common Benefit Expense Protocols**

26       59.     The provision of CMO-5 Section II(C), as amended is incorporated herein as if

27   set forth in their entirety.

28

IX.     **FURTHER PROCEEDINGS AND CONTINUING JURISDICTION**

60.     The payment of attorneys' fees and expenses for any class action settlement or recovery is governed by Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules. This Order is without prejudice to such other assessments of or awards of fees and costs as may be ordered by this Court under Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules, the common benefit doctrine, or that may be provided by contract between attorneys and clients.

61.     The intent of this Order is to establish, secure, and supervise a fund to promote the purposes and policies of the common benefit doctrine and provide a source for equitable payment of services rendered and costs incurred for the benefit of plaintiffs.

62.     If all parties to a future settlement agree that exceptional circumstances warrant a departure from the holdback obligations, or other provisions of this Order, they shall submit affidavits thereon and request appropriate relief from the Court.

63.     Any disputes or requests for relief from or modification of this Order will be decided by the Court in the exercise of its continuing jurisdiction over the parties, and authority and discretion under the common benefit doctrine.

IT IS SO ORDERED,

DATED: May 27, 2020

_____
HONORABLE WILLIAM H. ORRICK

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: JUUL LABS, INC., MARKETING,
SALES PRACTICES, AND PRODUCTS
LIABILITY LITIGATION

_____

This Document Relates to:

ALL ACTIONS

Case No. 19-md-02913-WHO

**EXHIBIT A TO CASE MANAGEMENT
ORDER 5(A) ESTABLISHING A
COMMON BENEFIT FEE AND
EXPENSE FUND**

## MDL 2913 COMMON BENEFIT PARTICIPATION AGREEMENT

**THIS AGREEMENT** is made this _____ day of _____, 20__, by and between the Plaintiffs' Steering Committee ("PSC") appointed by the United States District Court for the Northern District of California in MDL 2913 and _____ **[Name of the Attorney and their Law Firm Executing the Agreement on behalf of themselves and their Law Firm]** (the "Participating Counsel").

**WHEREAS**, the United States District Court for the Northern District of California (MDL 2913) has appointed the following to serve as members of the PSC to facilitate the conduct of pretrial proceedings in the federal actions relating to the use, marketing, and sales of JUUL ("JUUL"):

| Attorney | Firm | Leadership |
|---|---|---|
| Sarah London | Lieff Cabraser Heimann & Bernstein LLP | Co-lead counsel/ Liaison/PSC |
| Dean Kawamoto | Keller Rohrback LLP | Co-lead counsel/PSC |
| Dena Sharp | Girard Sharp LLP | Co-lead counsel/PSC |
| Ellen Relkin | Weitz & Luxenberg | Co-lead counsel/PSC |
| Khaldoun Baghdadi | Walkup Melodia Kelly & Schoenberger | Fed/State court liaison/PSC |
| Leslie LaMacchia | Pulaski Law Firm, PLLC | Fed/State court liaison/PSC |
| Thomas P. Cartmell | Wagstaff & Cartmell, LLP | Gov. Entity Liaison/PSC |
| Adam Gutride | Gutride Safier LLP | PSC |
| Esfand Nafisi | Migliaccio & Rathod LLP | PSC |
| Michelle Drake | Berger Montague PC | PSC |
| Joseph VanZandt | Beasley, Allen, Crow, Methvin, Portis & Miles | PSC |
| Erin Dickinson | Crueger Dickinson LLC | PSC |
| Michael Weinkowitz | Levin Sedran & Berman LLP | PSC |
| Rachel Abrams | Levin Simes Abrams, LLP | PSC |
| Emily Jeffcott | Morgan & Morgan | PSC |
| Matt Schultz | Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor | PSC |
| Kristine Kraft | Schlichter, Bogard & Denton, LLP | PSC |
| Jonathan Gdanski | Schlesinger Law Offices | PSC |
| Sabita Soneji | Tycko & Zavareei LLP | PSC |
| Brad Honnold | Goza & Honnold LLC | PSC |
| Mikal Watts | Watts Guerra LLP | PSC |

**WHEREAS**, the PSC in association with other attorneys working for the common benefit of plaintiffs have developed and are in the process of further developing work product and a record that will be valuable in all proceedings and benefits all plaintiffs alleging injuries or damage caused by JUUL ("Common Benefit Work Product");

**WHEREAS**, Participating Counsel wants to acquire the Common Benefit Work Product and establish a framework for an amicable, working relationship with the PSC for the mutual benefit of their clients, and for those attorneys who perform work authorized, audited and approved as common benefit to seek common benefit compensation;

**NOW THEREFORE**, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

- 1 -

I.    **SCOPE OF AGREEMENT**

    A.    **Purpose**

      1.    This Participation Agreement is a private cooperative agreement between plaintiffs' attorneys to share Common Benefit Work Product with regard to all injuries and damages arising from JUUL-related claims by Participating Counsel, pursuant to Case Management Order No. 5(a) Establishing Common Benefit Fee and Expense Fund ("CMO-5(a)" or any amendment). Plaintiffs' attorneys who execute this Participation Agreement are entitled to receive the Common Benefit Work Product created by those attorneys who have also executed or have been deemed to have executed the Participation Agreement.

      2.    The intent of this Participation Agreement is to establish, secure, and supervise a fund to promote the purposes and policies of the common benefit doctrine and provide a source for equitable payment of services rendered and costs incurred for the benefit of plaintiffs.

      3.    There is no need for an attorney who already has a case filed in or transferred to the MDL to sign the Participation Agreement, because they are automatically subject to the Common Benefit Orders CMO-5 and CMO-5(a), and any amendments with regard to all cases in which they have a fee interest, regardless of whether any of their other cases are filed in other jurisdictions, or not yet filed.

      4.    For those cases that have been transferred to the MDL, but are subject to a remand motion, if a case is determined to have been improperly removed to this Court after the Court's consideration of the remand motion and is remanded to the transferor court, that case will not automatically be subject to Common Benefit Assessment by virtue of it having been temporarily venued in this Court. However, if the case received and benefited from the work product of the MDL, it could be assessed, after due consideration by the Court following briefing by the parties and with input from the Common Benefit Special Master.

      5.    The PSC anticipates that this Court may enter a Coordination Order that contemplates work sharing between the PSC and counsel in other actions involving the same subject matter as the MDL pending in other courts that agree to be bound by the same

- 2 -

1    Coordination Order (the "Coordinated Actions").  Plaintiffs' attorneys with any cases filed in a

2    Coordinated Action shall, to the extent they utilize the Common Benefit Work Product, be

3    subject to and deemed to have signed this Participation Agreement for all cases they have filed

4    in any jurisdiction, and all unfiled or if applicable, tolled cases.

5                    **B.**      **Rights and Obligations of Participating Counsel**

6                    6.      Upon execution of this Participation Agreement, the PSC will provide access to

7    Participating Counsel the Common Benefit Work Product defined in the Court's CMO-5 and

8    5(a), and any amendments, including access to the document depository as well as all the

9    coding and summarizing of the documents in the depository, access to all deposition transcripts

10   and summaries, deposition cuts for the purpose of trial, medical literature library, legal briefing

11   and research, and, as deemed appropriate by PSC leadership, expert witness work product.

12   Participating Counsel agree that all JUUL cases, as defined in paragraph 9 below, in which

13   Participating Counsel has a fee interest, including unfiled cases, tolled cases, and/or cases filed

14   in state and/or federal court, are subject to the terms of this Participation Agreement.

15                   7.      The PSC may periodically request that Participating Counsel produce a list

16   setting forth the name of each JUUL client represented by them (whether filed or unfiled) or in

17   which they have any interest in an attorneys' fee, together with the Court and docket number

18   (if filed) of each such case. Unless otherwise specified, Participating Counsel shall provide

19   such a list within 30 days of a request to Sarah London, Lieff Cabraser Heimann & Bernstein

20   LLP at JUULParticipatingCounselCaseList@lchb.com.

21   **II.    AGREEMENT TO PAY AN ASSESSMENT ON GROSS RECOVERY**

22                   8.      Subject to the terms of this Participation Agreement and the terms of CMO-5

23   and 5(a), and any amendments, all Plaintiffs and their attorneys who either agree or have

24   agreed—for a monetary consideration—to settle, compromise, dismiss, or reduce the amount

25   of a claim or, with or without trial, recover a judgment for monetary damages or other

26   monetary relief, including such compensatory and punitive damages, with respect to JUUL-

27   related claims or cases are subject to an assessment of the gross settlement amount.

28

**A.     Gross Monetary Recovery Defined**

9.     "Gross Monetary Recovery" includes any and all amounts paid to Plaintiffs by Defendants through a settlement or pursuant to a judgment. Gross Monetary Recovery (a) excludes court costs that are to be paid by the defendant; and (b) includes the present value of any fixed and certain payments to be made in the future.  The assessment shall apply to all of the claims or cases of the attorneys who are subject to CMO-5(a) that are pending in the MDL or state court as well as any unfiled or if applicable, tolled claims or cases of such attorneys in which they are counsel or co-counsel, or in which they have any interest.

**B.     Assessment Amount**

10.     **Early Participation vs. Late Participation** – For any counsel who enters into the Participation Agreement within 60 days of the entry of CMO-5(a) or 60 days of their first case being docketed in any Coordinated Action or jurisdiction working cooperatively with the Lead Actions (MDL and JCCP) (whichever date is later), the assessment shall be a combined 7% as computed and determined below ("Early Participation"). For any counsel who enters into the Participation Agreement after 60 days of the entry of this Order or 60 days of their first case being docketed in any Coordinated Action or jurisdiction working cooperatively with the Lead Actions (MDL and JCCP) (whichever date is later), the assessment shall be a combined 10% as computed and determined below ("Late Participation"). Exceptions may be made for Public Entities and School Districts, who may require additional time and process for consultation and approval from certain California public entities, and such exceptions will allow for Early Participation assessment rates.

       a.     Early Participation – The assessment amount for Early Participation Counsel shall be 7% (5% for common benefit attorneys' fees and 2% for costs).

       b.     Late Participation – The assessment amount for Late Participation Counsel shall be 10% (8% for common benefit attorneys' fees and 2% for costs).

11.     This assessment represents a hold back pursuant to *In re Zyprexa Prods. Liab.*

- 4 -

1     *Litig.*, 467 F.Supp.2d 256, 266 (2d. Cir. 2006), and shall not be altered in any way unless each

2     of the following occurs: (1) the PSCs of the MDL and JCCP are consulted and provided an

3     opportunity to be heard at a formally announced meeting prior to the filing of any motion to

4     change the assessment amount; (2) the PSCs of the MDL and JCCP approve the proposed

5     change to the assessment by a majority vote of each PSC; (3) a noticed motion (including

6     notice to Defendants' Liaison Counsel) with an opportunity to be heard is granted by each

7     Lead Action Court as to its respective common benefit order, (4) all Early and Late

8     Participating Counsel receive emailed or mailed communication of such motion and (5) this

9     Court, upon good cause shown, amends this Order. The PSCs of the MDL and JCCP agree and

10     understand that JCCP Co-Lead Counsel for Public Entities and School Districts will be given

11     opportunity to object in the event certain public entities do not agree to this assessment or an

12     increase in assessments.

13         **C.**     **Covered Claims or Cases**

14         12.     Counsel who sign (or who are deemed to have signed) this Participation

15     Agreement agree that the assessment shall apply to all unfiled claims or cases, tolled (if

16     applicable) claims or cases, and claims or cases filed in other courts in which they have any fee

17     interest. Covered claims or cases include all JUUL related claims or cases or actions brought

18     by individuals or any private, public, or government entity plaintiffs (including Cities,

19     Counties, School Districts, Indian Tribes and States).

20         **D.**     **Attorney Fee Lien**

21         13.     With respect to each client who they represent in connection with related claims

22     or cases that are filed or pending in any court, unfiled or subject to a tolling agreement,

23     consistent with CMO-5(a) establishing the common benefit JUUL Fee and JUUL Expense

24     Accounts, each Participating Counsel agrees to have Defendants deposit or cause to be

25     deposited into the JUUL Fee and JUUL Expense Accounts a percentage proportion of the

26     gross amount recovered by each such client that is equal to the assessment amount.

27         14.     In the event Defendants do not deposit such funds into the JUUL Fee and

28     Expense Accounts, Plaintiff and Plaintiff's Participating Counsel are required to so inform the

1  MDL Plaintiffs Liaison Counsel, Sarah London and JCCP Co-Lead Counsel, and shall deposit

2  or cause to be deposited in the JUUL Fee and JUUL Expense Accounts the percentage

3  proportion of the gross amount recovered by each such client that is equal to the assessment

4  amount.

5      15.    Participating Counsel, on behalf of themselves, their affiliated counsel, and

6  their clients, hereby grant the MDL PSC a lien upon and a security interest in any fee

7  generated as a result of any recovery by any client who they represent in connection with any

8  JUUL-induced injury, nuisance and marketing and sales practices, to the full extent permitted

9  by law, in order to secure payment in accordance with the provisions of this Participation

10  Agreement.

11      16.    Participating Counsel will undertake all actions and execute all documents that

12  are reasonably necessary to effectuate and perfect this lien and/or security interest.

13  **III.    COMMON BENEFIT EXPENSES**

14      **A.    Qualified Expenses Eligible for Reimbursement**

15      17.    In order to be eligible for reimbursement, expenses ("Common Benefit

16  Expenses") must meet the requirements set forth in CMO-5, Section II(C) which are

17  incorporated herein as if set forth in their entirety.  Specifically, said expenses must be:

18          a.  for the common benefit;

19          b.  appropriately authorized, as set forth in CMO-5 and CMO-5(a);

20          c.  certified by a senior partner of the submitting firm each month attesting

21              to the accuracy and correctness of the monthly submission; and,

22          d.  approved by the Common Benefit Special Master pursuant to her

23              designated authority as set forth in a subsequent order.

24      **B.    Expense Reporting Protocol**

25      18.    Participating Counsel must submit expenses consistent with CMO-5 and CMO-

26  5(a) and any amendments thereto. Expenses incurred on matters common to all claimants in

27  MDL 2913 and authorized by MDL Co-Lead Counsel, Co-Chairs of the MDL Committees

28  with the approval of MDL Co-Lead Counsel may be submitted for reimbursement.

- 6 -

1       19.   No costs spent on developing or processing individual issues in any case for an

2   individual client will be considered or should be submitted, unless that case is an authorized

3   bellwether trial case.

4   **IV.**   **COMMON BENEFIT WORK**

5       **A.**   **Qualified Common Benefit Work Eligible for Reimbursement**

6       20.   In order to be eligible for reimbursement time and efforts expended for common

7   benefit work must meet the requirements set forth in CMO-5 and CMO-5(a) and any

8   amendments thereto.

9       21.   Participating Counsel shall be eligible to seek reimbursement for time and efforts

10   expended for Common Benefit Work, if said time and efforts are:

11           a.   for the common benefit;

12           b.   appropriately authorized;

13           c.   timely submitted;

14           d.   certified by a senior partner of the submitting firm each month attesting

15              to the accuracy and correctness of the monthly submission; and,

16           **e.**   approved by the Common Benefit Special Master, pursuant to her

17              designated authority as set forth in a subsequent order.

18       **B.**   **Authorization**

19       22.   Time spent on matters common to all claimants in MDL 2913 must be assigned

20   by MDL Co-Lead Counsel, or the co-Chairs of the MDL Committees with the approval of

21   MDL Co-Lead Counsel to be eligible for consideration for common benefit. No time spent on

22   developing or processing individual issues in any case for an individual client will be

23   considered or should be submitted, nor will time spent on unauthorized and unapproved work.

24       23.   For examples of authorized and unauthorized work please review CMO-5 and

25   CMO 5(a) and any amendments thereto.

26

27

28

- 7 -

### C. Common-Benefit Time Keeping Protocols

24. As set forth in CMO-5 and CMO-5(a) and any amendments thereto, all time must be accurately and contemporaneously maintained. Participating Counsel agrees to follow the time-keeping protocols set forth in CMO-5 and CMO-5(a) and any amendments thereto.

25. Counsel performing common benefit work in courts other than the Lead Actions, who have not previously submitted their time and costs under CMO-5, shall have 45 days to do so from the date of signing the Participation Agreement. However, submitted time must have been contemporaneously recorded, well-documented, and not reconstructed after the fact, and if not pre-authorized, show good cause for the late submission.

26. Upon order of the Court, payments may be made from the JUUL Fee and JUUL Expense Accounts to Participating Counsel who provide services or incur expenses for the joint and common benefit of plaintiffs. Attorneys eligible are limited to the PSC, other MDL counsel called upon to assist in performing the PSC responsibilities, other Participating Counsel called upon by the MDL leadership to assist in performing their responsibilities, and JCCP counsel subject to a parallel common benefit order.

27. **No Individual Rights to the Funds.** No party or attorney has any individual right to any of funds from the assessment except to the extent of amounts directed to be disbursed to such person by Order of this Court. These funds will not constitute the property of any party or attorney or be subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed as provided by court order to a specific person.

28. **Court Approval**. The amounts deposited in the JUUL Fee and JUUL Expense Accounts shall be available for distribution only to attorneys who have performed professional services or incurred expenses for the common benefit. The MDL Court retains jurisdiction over the common benefit award. Each Participating Counsel who does authorized common benefit work has the right to present their claim(s) for compensation prior to any recommendation to the Court.

- 8 -

1
2
3
4
5

     29.    **Other Fee Assessments.** This Participation Agreement is without prejudice to such other assessments of or awards of fees and costs as may be ordered by any Court, including under Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules, the common benefit doctrine, or that may be provided by contract between attorneys and clients.

6
7
8

    30.    **Fee Committee**. Participating Counsel understands that at a later date the Lead Action Courts may appoint a Fee and Expense Committee to make recommendations on how funds in the JUUL Fee and JUUL Expense Accounts should be distributed.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AGREEMENT TO BE BOUND**


Dated: _____, 20_____                    _____

                                                **Firm Name:**
                                                **Attorney's Name:**


I hereby agree to be a **Participating Counsel** and certify that I am signing this Participation Agreement voluntarily. I also certify that I have the authority and power to bind my law firm into this Participation Agreement.


**ON BEHALF OF THE PLAINTIFFS' STEERING COMMITTEE:**


Dated: _____, 20__                    _____

                                                SARAH LONDON
                                                *Plaintiffs' Liaison Counsel*

- 10 -

# EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SOCIAL MEDIA ADOLESCENT ADDICTION/PERSONAL INJURY PRODUCTS LIABILITY LITIGATION | Case No. 4:22-MD-03047-YGR<br><br>MDL No. 3047 |
| This Document Relates to:<br><br>ALL ACTIONS | [~~PROPOSED~~] *REVISED* COMMON BENEFIT ORDER |

     In Case Management Order ("CMO") No. 1 (ECF No. 75), the Court appointed Leadership for Plaintiffs. CMO No. 2 (ECF No. 82) governs the responsibilities and operation of Plaintiffs' Leadership. In accordance with CMO No. 2, the Court now sets specific guidelines and rules for work done and expenses incurred for the common benefit of all Plaintiffs in this MDL. This Order also provides for the fair and equitable sharing among Plaintiffs and their counsel of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all Plaintiffs in this complex litigation. Nothing in this Order shall be interpreted to affect any proceedings other than those involving the authorities, duties, responsibilities, guidelines, and rules of and for Plaintiffs' counsel discussed herein.

1      This Order applies to:

2          a.      All cases or claims now or later subject to the jurisdiction of this Court in

3  this MDL, regardless of whether the case is resolved while the case is pending before this Court,

4  after a remand from this Court to the transferor court, or in bankruptcy;[1]

5          b.      All cases or claims, filed or unfiled, in which any counsel associated with

6  any one case filed in or transferred to this MDL has a fee interest;

7          c.      All cases or claims settled pursuant to an MDL-negotiated or supervised

8  settlement agreement; and

9          d.      All cases or claims of clients of any counsel who signs the Participation

10  Agreement as defined herein, whether the case was filed, unfiled or tolled.

11  **I.    COMMON BENEFIT DOCTRINE**

12      The United States Supreme Court's common benefit doctrine was initially established in

13  *Trustees v. Greenough*, 105 U.S. 527 (1881); was refined in, *inter alia*, *Central R.R. & Banking*

14  *Co. v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Mills v.*

15  *Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); and *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); and

16  was approved and implemented in the MDL context in, *inter alia*, *In re Air Crash Disaster at*

17  *Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977); and *In re*

18  *MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525-29 (D. Nev. 1987). Common Benefit Work

19  Product includes all work performed for the benefit of all claimants, including pre-trial matters,

20  discovery, trial preparation, a potential settlement process, and all other work that advances this

21  litigation to conclusion.

22  **II.   ADOPTION OF CASE MANAGEMENT PROTOCOLS FOR COMMON BENEFIT**
        **WORK**

23
        The Court hereby adopts the following guidelines for the management of case-staffing,
24

25  _____

26  [1] If a case is determined to be improperly removed to this Court after the Court's consideration of a
    remand motion and is remanded to the transferor court, the case will not automatically be subject to
27  assessment just by virtue of it having been temporarily venued in this Court. However, if the case received
    and benefited from the work product of the MDL, it could be assessed, after due consideration by the
28  Court following briefing by the parties.

timekeeping, cost reimbursement, and related common benefit issues. The recovery of common benefit attorneys' fees and cost reimbursements will be limited to "Common-Benefit Counsel." "Common-Benefit Counsel" is defined as Plaintiffs' Co-Lead Counsel, Liaison Counsel, Steering Committee Leadership and Membership (along with members and staff of their respective firms), and any other counsel authorized by Co-Lead Counsel to perform work that may be considered for common benefit compensation.

Eligibility does not pre-determine payment. Common-Benefit Counsel shall be eligible to receive common benefit attorneys' fees and reimbursement of costs and expenses only if the time expended, costs incurred, and activity in question were (a) for the common benefit of Plaintiffs; (b) timely submitted; and (c) reasonable. Common-Benefit Counsel shall agree to the terms and conditions herein, including submitting to this Court's jurisdiction and agreeing that this Court has plenary authority regarding the award and allocation of common benefit attorneys' fees and expense reimbursements in this matter.

As directed in CMO No. 2, Co-Lead Counsel will be responsible for collecting monthly common benefit time and expense submissions from Common-Benefit Counsel; auditing such submissions, with the assistance of the Common Benefit Time and Expense Billing Manager and Auditor Amy Collins, PC ("Auditor"), *see supra* § II.G, for compliance with the directives set forth in this Order; informing Common-Benefit Counsel when their submissions do not comply with the directives set forth in this Order; and providing quarterly summaries of attorneys' fees and costs by timekeeper to the Court by email at ygrpo@cand.uscourts.gov six weeks following the end each quarter (e.g., May 12, 2023; August 11, 2023; November 10, 2023; etc.). Co-Lead Counsel's and the Auditor's auditing responsibility notwithstanding, the ultimate determination of what is compensable common benefit work, and the extent or rate at which it is compensable, is within the purview of the Court.

If Common-Benefit Counsel are unsure if the action they are about to undertake is considered Common Benefit Work, they shall ask Co-Lead Counsel in advance as to whether such time may be compensable.

### A.     Compensable Common Benefit Work

"Common Benefit Work" includes all work done and expenses incurred that inure to the common benefit of Plaintiffs in this MDL.

Guidelines regarding compensable and non-compensable work are set forth below.

- **Consolidated Pleadings:** (i) factual and legal research and preparation of consolidated master complaint(s) and short-form complaint(s); (ii) comments and suggestions regarding the consolidated master complaint(s); and (iii) presentation of argument before the Court regarding common factual or legal issues.

- **Briefing**: drafting and researching (i) dispositive and non-dipositive motions and responses thereto, including motions to dismiss, discovery motions, *Daubert* motions, and motions for summary judgment; (ii) status conference statements; and (iii) stipulations.

- **Discovery and Document Review:** Only discovery and document review authorized and assigned by Co-Lead Counsel to an attorney or law firm will be considered Common Benefit Work. If a firm/attorney elects to review documents that have not been assigned to them by Co-Lead Counsel, that review may not be considered Common Benefit Work. Descriptions associated with "document review" should contain sufficient detail to allow those reviewing the time entry to generally ascertain what was reviewed. For example, indicating the custodian(s), search topic(s), or number of documents reviewed is the kind of description needed. Likewise, time spent reviewing discovery requests and preparing responses for the benefit of counsel's own clients is not considered Common Benefit Work, unless it is at Co-Lead Counsel's direction and for a bellwether case after the case is selected as a bellwether.

- **Use of Contract Attorneys:** Contract attorneys may be used only with prior authorization of and for work authorized by Co-Lead Counsel. Such authorization should be included in the time submission for said attorneys. Generally this authorization will be limited to first-level document review and legal research. The terms of the compensation to contract attorneys engaged by Common-Benefit Counsel

1    (e.g., whether at actual cost or on a cost + multiplier basis) will be determined at the

2    time of any Court approved disbursement of any recovery, if any.

3    • **Depositions:** Co-Lead Counsel shall exercise discretion, judgment, and prudence to

4    designate only that number of attorneys to participate, in person or remotely as

5    appropriate, in any given deposition that is commensurate with the nature of that

6    deposition so as to avoid over-staffing. For attorneys not assigned to first-chair, second-

7    chair, or defend a deposition, approval from Co-Lead Counsel should be sought

8    beforehand, and included in the relevant time submission. Thus, for example, the

9    deposition of a causation expert proffered by Defendants would typically justify the

10    assignment of more attorneys than would the defense of the deposition of one of

11    Plaintiffs' fact witnesses. Time and expenses for Common-Benefit Counsel not

12    designated as one of the authorized questioners or otherwise authorized to attend the

13    deposition by Co-Lead Counsel may not be considered Common Benefit Work but,

14    rather, considered as attending on behalf of such counsel's individual clients.

15    Unnecessary attendance by counsel may not be compensated in any fee application to

16    the Court.

17    • **Bellwethers:** When authorized by Co-Lead Counsel, Common Benefit Work may

18    include: (i) communication with clients for the purposes of identifying suitable

19    bellwether candidates; (ii) factual and legal research necessary to select the appropriate

20    bellwethers; and (iii) prosecution of the selected bellwether cases.

21    • **Periodic MDL Status Conferences:** The Court intends to hold periodic status

22    conferences to ensure that the litigation moves forward efficiently, and that legal issues

23    are resolved with guidance from or formal rulings by the Court. Individual attorneys are

24    free to attend any status conference held in open court to stay up to date on the status of

25    the litigation, but except for Co-Lead Counsel, Plaintiffs' Liaison Counsel, Plaintiffs'

26    Steering Committee Leadership and their designees (including, to the extent authorized

27    by Co-Lead Counsel, members of the Plaintiffs' Steering Committee Membership),

28    attending and listening to such conferences is not compensable Common Benefit Work.

1    All attorneys have an obligation to keep themselves informed about the litigation so that
2    they can best represent their respective clients. Mere attendance at a status conference
3    will not be considered common benefit time, and expenses incurred in relation thereto
4    will not be considered common benefit expenses. The attorneys designated by Co-Lead
5    Counsel to address issues that will be raised at a given status conference or requested
6    by Co-Lead Counsel to be present at a status conference are working for the common
7    benefit, and their time will be considered for the common benefit. Similarly, any
8    attorney whose attendance at a status conference is specifically requested by the Court
9    (or by any other judge presiding over this matter or Court-appointed Special Master) to
10   address a common issue may submit his or her time and expenses for such attendance
11   for evaluation as Common Benefit Work.

12   • **Expert-Related Work:** If a Common-Benefit Counsel retains an expert without the
13   knowledge and approval of Co-Lead Counsel, time and expenses attributable to the
14   same may not be approved as Common Benefit Work. On the other hand,
15   communications with and retention of experts with the knowledge and approval of Co-
16   Lead Counsel will be considered common benefit time.

17   • **Leadership Meetings or Calls:** PSC members may submit common benefit time for
18   participation in leadership communications and meetings that are germane to all
19   members of the PSC and are necessary to fulfill their Court-appointed obligations.
20   During leadership phone calls or other meetings there is a presumption that one
21   participant per Plaintiffs' Steering Committee Membership firm, and two participants
22   per Plaintiffs' Steering Committee Leadership firm, will qualify for common benefit
23   time, . In addition, there is a presumption that additional counsel from PSC firms who
24   are tasked in writing with assignments by Co-Lead Counsel or the Co-Chairs of
25   Subcommittees may participate in Subcommitee calls relevant to those assignments.

26   • **Attendance at Seminars:** Except as approved by Co-Lead Counsel, attendance at
27   seminars (e.g., American Association for Justice Section Meetings, Mass Torts Made
28   Perfect, Harris Martin, and similar seminars and Continuing Legal Education programs)

1     shall not qualify as Common Benefit Work, or the expenses pertaining thereto as

2     Common Benefit Expenses.

3     • **Review of Court Filings and Orders:** All attorneys have an obligation to keep

4     themselves informed about the litigation so that they can best represent their respective

5     clients, and review of briefs and filings made and Orders entered in this litigation is part

6     of that obligation. Only Co-Lead Counsel, Liaison Counsel, Steering Committee

7     Leadership and those attorneys working on assignments therefrom that require them to

8     review, analyze, or summarize those filings or Orders in connection with their

9     assignments are doing so for the common benefit. All other counsel are reviewing those

10    filings and Orders for their own benefit and that of their respective clients and such

11    review will not be considered Common Benefit Work.

12    • **Emails and Correspondence:** Except for Co-Lead Counsel, Liaison Counsel, Steering

13    Committee Leadership, and their assigned attorneys and staff, time recorded for

14    reviewing emails and other correspondence is not compensable unless germane to a

15    specific task being performed by the receiving or sending attorney or party that is

16    directly related to that email or other correspondence and that is for the common benefit

17    of Plaintiffs. Thus, for example, review of an email or other correspondence sent to

18    dozens of attorneys to keep them informed on a matter on which they are not specifically

19    working would not be compensable as Common Benefit Work.

20    • **Other Non-Compensable Work:** The following types of work will not be

21    compensated: leadership organization and applications prior to the appointment of

22    leadership, time not authorized by Co-Lead Counsel, duplicative time, excessive

23    amounts of time spent on a particular task, work performed by a person more senior

24    than reasonably necessary for the task (which may not be compensated or may be

25    compensated at a reduced rate), time spent organizing case files, time spent on internal

26    firm management, and time spent preparing and reviewing time and expense

27    submissions or responding to questions concerning time and expense submissions.

28    Because all attorneys have an obligation to stay informed about the litigation so that

1   they can best represent their respective clients, review of emails and court filings,

2   attendance at status conferences, participation in conference calls, and similar activities

3   will not be considered Common Benefit Work, unless authorized in advance by Co-

4   Lead Counsel in furtherance of a specific common benefit objective.

5   **B.**   **Common Benefit Timekeeping Protocols**

6   All time must be accurately and contemporaneously maintained. Common-Benefit Counsel

7   shall keep contemporaneous billing records of the time spent in connection with Common Benefit

8   Work on this MDL, indicating with specificity the hours (in tenth-of-an-hour increments) and

9   billing rate, along with a description of the particular activity (such as "conducted deposition of

10  John Doe"). Descriptions must bear sufficient detail to identify the precise task and how it relates

11  to Common Benefit Work. Individuals identified in time descriptions must be described by at least

12  their first initial and last name, not by initials. "John Doe" is preferred; "J. Doe" is acceptable; and

13  "JD" is unacceptable.

14  When referring to a specific plaintiff within the time description, the term "plaintiff" should

15  be placed prior to the full name or first initial & full last name. Likewise, when referring to an

16  expert or consultant within the time description, the term "expert" or "consultant" should be placed

17  prior to the full name or first initial & full last name.

18  Each time entry must be categorized using one of the categories in Exhibit A. In general,

19  when possible, a more specific category should be used in place of a more general category. Under

20  no circumstances should a submitting firm make up new categories for use in its submission.

21  While the categories are generally self-explanatory, below are some further explanations of

22  some of the categories that may have the potential for the most confusion.

23  • **Leadership Case Management Duties (1)** – This category code should only be used

24      for work done by Court-appointed Counsel and their assigned attorneys and staff, in

25      their capacity as Court-appointed Counsel. This category should be used primarily for

26      Court-appointed Counsel's more general or administrative responsibilities that do not

27      fit into other, more specific categories. These include, but are not limited to, reviewing,

28      analyzing, and summarizing filings and orders, and coordinating and designating non-

1   Court-appointed attorneys to conduct common-benefit tasks such as document reviews,

2   depositions, or work with experts. This category should not be used by any timekeeper

3   who is not a Court-appointed Counsel or one of their assigned attorneys or staff.

4   • **Administrative (3)** – This category should be used for internal filing and organizational

5   tasks, such as reviewing and downloading documents from the ECF case docket(s),

6   creating charts, reviewing filings generally, updating calendars, copying and

7   distributing documents, etc., whether done by an attorney or staff. Please remember that

8   the review of filings and orders to stay informed about the litigation is every attorney's

9   obligation, and time spent on such tasks is not compensable as Common Benefit Work

10   for most timekeepers.

11   • **Research (6)** – This category should not be used if a more specific category can be used

12   instead. If research is done while writing a brief, that should be clearly indicated in the

13   time description and coded as category 5 (Pleadings/Briefs/Pre-trial Motions/Legal

14   Memoranda). Since most research will likely be done in service of a legal writing, court

15   appearance, discovery, or other specific task (and thus should be coded with the

16   appropriate category for the specific task), category 6 should be used relatively

17   infrequently.

18   • **Discovery (9)** – Almost all common benefit discovery-related tasks should be coded

19   with this category. The exceptions are: document review (which should be coded

20   category 8), discovery-related motions or briefs (which should be coded category 5),

21   and discovery-related court appearances (which should be category 4).

22   • **Document Review and Analysis (8)** – For the purposes of this category, the word

23   "document" specifically means documents or other information produced in discovery.

24   In other words, this category is not to be used for every instance of reading a

25   document—it is more specific than that. Only discovery document review specifically

26   authorized by Co-Lead Counsel and assigned to an attorney will be considered Common

27   Benefit Work.  Time entry descriptions for document review tasks should include

28   specific details such as custodians, search topic(s), number of documents reviewed, or

1    other similar details sufficient to explain and justify the time spent.

2      • **Litigation Strategy & Analysis (7)** – This is a general category that should not be used

3        if a more specific category can be used instead. Examples of work coded to this category

4        would include internal firm strategy sessions regarding division/completion of work

5        assigned by Co-Leads or internal correspondence regarding same.

6      • **Pleadings/Briefs/Pre-trial Motions/Legal Memoranda (5)** – All research and drafting

7        time spent for a specific pleading, brief, motion, or similar legal writing should be coded

8        in this category.

9      • **Trial (13)** – This category is reserved solely for tasks performed during a bellwether or

10       other trial designated by the Co-Leads as a Common Benefit trial.

11     • **Miscellaneous (15)** – This is a general category that should not be used if a more

12       specific category can be used instead. Any activities that are done in connection with or

13       as part of a larger task like a brief, or a court appearance, or a meeting, should be

14       categorized according to that larger task. This category should be used relatively

15       infrequently; however, if it is used, it is critical that the description of the task be

16       sufficiently detailed to make clear how the work was common benefit.

17    No time entry should contain the description of Common Benefit Work for more than one

18 category. If on the same day the timekeeper performs two tasks that fall into two different

19 categories, then there should be two separate entries for that timekeeper on that date, each with the

20 appropriate category code.

21    **C.**    **Hourly Rates**

22    Common-Benefit Counsel shall record their then-present hourly rates for all attorneys and

23 staff. Counsel shall not bill a rate other than their standard rates at the time the work is performed.

24 Use of these rates does not guarantee their payment.

25    **D.**    **Document Review Platform**

26    Co-Lead Counsel has or will put out for bid any vendor services and strive to get the best

27 services for the best price without sacrificing quality. A document review platform and analysis

28 system will be used to avoid unnecessary expenses and procedures will be put in place to monitor

1   how much time is spent analyzing documents and to monitor the efficiency and quality of analysis

2   by other firms.

3         **E.**      **Common Benefit Expenses Protocol**

4             **1.**      **Shared Costs**

5         "Shared Costs" are costs that will be paid out of the Litigation Fund ("Fund") administered

6   by Co-Lead Counsel. Each member of the Plaintiffs' Leadership shall contribute to the Fund at

7   times and in amounts sufficient to cover Plaintiffs' expenses for the administration of this MDL.

8   The timing and amount of each assessment will be determined by Co-Lead Counsel and each

9   assessment will be paid within 30 days as instructed by Co-Lead Counsel. Failure to pay

10  assessments will be grounds for removal from the appointments made in previous Court Orders or

11  other common benefit assignments.

12        Shared Costs are costs incurred for the common benefit of Plaintiffs in this MDL as a whole,

13  including costs for bellwethers once set for trial. All Shared Costs must be approved in writing by

14  Co-Lead Counsel prior to payment.

15        All costs that meet these requirements and fall under the following categories shall be

16  considered Shared Costs and qualify for submission and payment directly from the Fund:

17        • Court, filing, and service costs related to common issues;

18        • Court reporter, videographer, and interpreter costs for depositions;

19        • Document (both electronic and hard copy) depository creation, operation, staffing,

20        equipment, and administration;

21        • Document and case analysis software used for the common benefit of a substantial

22        number of cases and approved by Co-Lead Counsel;

23        • Extraordinary administration costs incurred by Plaintiffs' Leadership (e.g., expenses for

24        equipment, technology, conference rooms, etc.), approved by Co-Lead Counsel;

25        • Legal, tax, and accountant fees relating to the Fund;

26

27

28

1   • Expert witness and consultant fees and expenses for experts whose opinions and
2       testimony would be generic and for the common benefit of a substantial number of
3       cases. There shall be no reimbursement for case-specific experts except with the
4       approval of Co-Lead Counsel;

5   • Extraordinary printing, copying, coding, and scanning costs incurred by Plaintiffs'
6       Leadership related to the above , approved by Co-Lead Counsel;

7   • Research by outside third-party vendors/consultants/attorneys, approved by Co-Lead
8       Counsel;

9   • Translation costs related to the above, approved by Co-Lead Counsel;

10  • Bank or financial institution charges relating to the Fund;

11  • Investigative services, approved by Co-Lead Counsel; and

12  • Common Benefit Time and Expense Billing Manager and Auditor invoices.

13  Co-Lead Counsel shall prepare and be responsible for distributing reimbursement
14  procedures and the forms associated therewith. Shared Costs should not be included on the monthly
15  expense report. Requests for payments from the Fund for Common Benefit expenses shall include
16  sufficient information to permit Co-Lead Counsel and a Certified Public Accountant ("CPA") to
17  account properly for costs and to provide adequate detail to the Court if necessary.

18              **2.      Held Costs**

19  "Held Costs" are those that will be carried by each attorney in this MDL and reimbursed as
20  and when Co-Lead Counsel determines to do so. Held Costs are those that do not fall into the above
21  Shared Costs categories but are incurred for the common benefit of all Plaintiffs in this MDL,
22  including costs of bellwethers once set for trial. Held Costs shall be recorded in accordance with
23  the guidelines set forth herein and on the form provided as Exhibit B hereto.

24  Held Costs shall be subject to the following limitations:

25              **a.      Travel Limitations**

26  Only reasonable travel expenses will be reimbursed. Except in unusual circumstances
27  approved by Co-Lead Counsel, all travel reimbursements are subject to the following limitations:

28  • **Airfare:** For routine domestic flights, ordinarily only the price of a refundable,

changeable and convenient coach fare seat or its equivalent will be reimbursed. For international travel, business class, or if business class is not available, first class, is reimbursable.

- **Hotel:** Hotel room charges for the average available room rate of a reasonable business hotel will be reimbursed.

- **Meals:** Meal expenses must be reasonable. Unusually large meal expenses may be reviewed by Co-Lead Counsel and disallowed. Alcohol expenses are not reimburseable.

- **Cash Expenses:** Miscellaneous cash expenses for which receipts generally are not available (e.g., tips, luggage handling) will be reimbursed up to $50.00 per trip, as long as the expenses are properly itemized.

- **Automobile Rental:** Automobile rentals must be reasonable for the date and location of the rental.

- **Mileage:** Mileage claims must be documented by stating origination point, destination, and total actual miles for each trip. The rate will be the maximum rate allowed by the Internal Revenue Service.

### b.    Non-Travel Limitations

- **Shipping, Overnight, Courier, and Delivery Charges:** All claimed Common Benefit shipping, overnight, courier, or delivery expenses must be documented with bills showing the sender, origin of the package, recipient, and destination of the package. Such charges are to be reported at actual cost.

- **Postage Charges:** Common Benefit postage charges are to be reported at actual cost.

- **In-House Photocopy:** The maximum charge for Common Benefit in-house copies is $0.20 per black and white page, and $1.00 per color page.

- **Computerized Research- Lexis, Westlaw, or Bloomberg:** Claims for Lexis, Westlaw, Bloomberg, or other computerized legal research expenses should be in the actual amount charged to the firm and appropriately allocated for these research services.

No entry should contain more than one category of expense when practical, and no entry should have more than one expense category code assigned to it. If, on the same day, one person

1    incurs two expenses that fall into two different categories, then there should be two separate entries

2    for that person for that date, each with the appropriate expense description and category code.

3    Similarly, when practical, no listed expense entry should include expenses incurred by more than

4    one person. If multiple people incur the same expense for the same category, then generally there

5    should be a separate entry for each person, unless a single person paid the expense for multiple

6    people.

7            Every expense entry should be as detailed and specific as reasonably practical. Descriptions

8    such as "Filing and Service Fees," "Service of Process," "Plane Ticket," "Investigation Fees,"

9    "Hearing Transcript," and "Deposition Services" are not sufficient. Every entry must describe the

10   task for which the expense was incurred in enough detail to reasonably identify what the expense

11   was, who incurred it, why it was incurred, and how it related to Common Benefit Work. For

12   example: What was filed? Who was served with what document? What hearing transcript was

13   requested and for what purpose? For whom was the plane ticket purchased, for air travel from where

14   to where, for what purpose, and on what dates of travel? (The same goes for hotels, taxis, car

15   services, tips, meals, and any other travel-related expenses.) Expense entries without sufficient

16   detail may be rejected at Co-Lead Counsel's discretion.

17           Attorneys shall provide receipts for all expenses. This does not mean that receipts are to be

18   provided "upon request"—it means each firm must provide receipts monthly along with their

19   expense submissions, in PDF form, not hard copy. Credit card receipts or sufficiently specific

20   entries on monthly statements are an appropriate form of verification. The description of unclaimed

21   expenses may be redacted.

22           **F.      Protocols for Submission of Time and Expenses**

23                   **1.      Format**

24           For Co-Lead Counsel to maintain all time submissions in a fully sortable and searchable

25   format, all the time and expense submissions must be provided by submitting counsel in the

26   following format:

27           1.      Counsel must use files formatted consistent with the Exhibits to this Order.

28

---

1       2.     In the "Monthly Time Report" and the "Monthly Expense Report," the person who

2   performed each task should be identified in the column called "Last Name, First Name" by their

3   complete last name, a comma, and their complete first name (e.g. Smith, John). Please do not use

4   abbreviations or initials in this column.

5       3.     In all reports, the date must be provided in month/day/year format (e.g.,

6   12/01/2022).

7           **2.**    **Deadlines**

8       All time and expense submissions must be timely submitted to Co-Lead Counsel and the

9   Auditor by the 20th day of each month, in accordance with the guideline set forth herein, using the

10   following email address: MDL3047Time@amylcollinspc.com. If the 20th day of the month falls on

11   a Saturday, Sunday, or legal holiday, time and expense submissions must be submitted the next day

12   that is not a Saturday, Sunday, or legal holiday. The first submission is due on April 20, 2023, and

13   should include all time and expense from inception through March 31, 2023. Lead Counsel and the

14   Auditor will determine prior to the time of allocation whether pre-MDL formation time or costs

15   submitted warrant inclusion as common benefit work. After this first submission, each monthly

16   submission should include all common benefit time and expenses incurred from the first to the last

17   day of the preceding month (e.g. the submission due May 22, 2023 should contain all common

18   benefit time and expenses incurred from April 1, 2023 through April 30, 2023).

19       Although counsel should endeavor to submit all common benefit expenses incurred in a

20   certain month in the submission made on the 20th of the next month, the realities of third-party

21   billing and credit card statement schedules may make such quick expense submission difficult in

22   some circumstances. Thus submissions of "supplemental" common benefit expense reports will be

23   permitted for those expenses incurred during the previous six months that—because of

24   circumstances outside the submitting counsel's control—could not have been submitted by the

25   deadline. Any common benefit expenses submitted more than six months in arrears may not be

26   considered or included in any compilation of common benefit expense calculation and may be

27   disallowed, except for good cause shown and with approval of Co-Lead Counsel.

28       Supplemental submissions of common benefit time will be permitted only for good cause

1    shown and with the approval of Co-Lead Counsel.

2            **G.      Auditing Time and Expense Submissions**

3            Plaintiffs' Co-Lead Counsel have retained Amy Collins, PC, to serve as Common Benefit

4    Time and Expense Billing Manager and Auditor for common benefit time and expenses submitted

5    for work performed in this MDL. The Auditor will contemporaneously review all MDL submitted

6    common benefit time and expenses for compliance with this Order and identify those entries which

7    are not compliant or otherwise appear not to be reasonable. Co-Lead Counsel shall determine if

8    time and expenses identified as potentially not compensable or reasonable should be disallowed,

9    and notify (through the Auditor or directly) the firm/person who submitted the time/expense of

10   their determination. Co-Lead Counsel will endeavor to provide such notification on a rolling basis

11   and may allow the firm/person an opportunity to correct the problem if appropriate. However,

12   nothing in this Order shall be construed to mean that time entries that are not identified by the

13   Auditor or Co-Lead Counsel as not compliant, not reasonable, or not compensable in the rolling

14   review process are thereby deemed compliant, reasonable, or compensable. The Auditor also will

15   assist Co-Lead Counsel with quarterly submissions to the Court. The Auditor shall be paid from

16   the Fund as a Shared Expense.

17           **1.      Immunity**

18           The Auditor, including any person acting as assistant or consultant to the Auditor in relation

19   to her responsibility under this Order, shall enjoy the same protections from being compelled to

20   give testimony and from liability for damages as those enjoyed by other federal judicial adjuncts

21   performing similar functions. Specifically, the Auditor and the Auditor's staff working on this

22   matter are protected by absolute quasi-judicial immunity. Co-Lead Counsel will make readily

23   available to the Auditor any and all facilities, files, database, and documents that may be necessary

24   to fulfill her functions.

25           **2.      Indemnity**

26           In the event of any future settlements or verdicts resulting in the creation of a Qualified

27   Settlement Fund (QSF), the Auditor shall be indemnified and held harmless by the QSF and the

28   attorney claimants seeking payment from the QSF from any claims made by any alleged lien holder,

1   or other person or entity that attempts to assert a right of payment, reimbursement or

2   garnishment against the Fund. Should the Auditor be named as a party to, or threatened to be made

3   a party to, or named as a witness in, any threatened, pending, or completed action, suit, or

4   proceeding of any kind, whether civil, administrative, or arbitrative, and whether brought by or

5   against or otherwise involving the Fund, by reason of the Auditor having served in any capacity on

6   behalf of the Fund, the Auditor shall be indemnified and held harmless by the QSF and the attorney

7   claimants seeking payments from the QSF against reasonable expenses, costs and fees (including

8   attorneys' fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds

9   incurred by the Auditor in connection with or resulting from such actual or threatened action, suit

10  or proceeding; except to the extent that it is finally determined by this Court that the Auditor was

11  grossly negligent or acted with willful misconduct in connection with the administration of this

12  Fund.

13  **III.**     **PLAINTIFFS' SOCIAL MEDIA FEE AND EXPENSE ACCOUNTS**

14         Co-Lead Counsel is directed to establish two bank accounts (the "Accounts") to receive and

15  disperse funds in the event of settlements or verdicts as provided in this Order and any subsequent

16  Orders. The first account shall be designated as the "Social Media Fee Account" and the second

17  should be designated as "Social Media Expense Account" respectively. The Accounts will be held

18  subject to the direction of this Court.

19         **A.**     **Administration of the Social Media Fee and Expense Accounts**

20         Co-Lead Counsel shall identify a Certified Public Accountant to serve as "Administrator"

21  to be appointed by a separate Order who will be directed to oversee the Accounts. The Accounts

22  shall be established at a commercial bank that the Administrator shall select in consultation with

23  the Co-Lead Counsel. The commercial bank shall be the "Escrow Agent." No disbursement shall

24  be made from the Accounts other than by Order of this Court pursuant to a petition requesting an

25  award of fees and reimbursement of expenses (a "Petition"). No Petition shall be filed without leave

26  of Court. No person or entity has any right to make any claim against any of the amounts held in

27  the Accounts except to the extent this Court issues an Order directing the disbursement of any

28  amounts to such a person or entity. The rights of any such person or entity are limited to the amount

1   ordered by the Court to be so disbursed to that particular person or entity.

2          The amounts held in the Accounts shall not constitute the separate property of any person

3   or entity or be subject to garnishment or attachment for the debts of any person or entity. However,

4   any specific amounts ordered by the Court to be disbursed to a person or entity, upon the entry of

5   such an Order, can then be subject to garnishment or attachment, limited to the amount of the

6   disbursement so ordered. These limitations do not preclude a person or entity from transferring,

7   assigning, or creating a security interest in potential disbursements from the Accounts to which

8   such person or entity may be entitled as determined by the Court, if permitted by applicable state

9   laws and if subject to the conditions and contingencies of this Order. However, no notice of lien or

10  security interest in potential disbursements or of a transfer or assignment of a right of potential

11  disbursements shall be effective unless and until it is filed in this Court and served upon the

12  Administrator.

13         In connection with the administrative services, the Administrator shall:

14                 a.      Have all such power and authority over the Accounts as necessary or

15  convenient to exercise the authority granted in this Order;

16                 b.      Keep and report periodically to the Court, to the extent requested by the

17  Court, an accounting of the funds received, maintained and disbursed relating to the Accounts;

18                 c.      Have the authority to instruct the Escrow Agent with respect to permitted

19  investments of the Accounts;

20                 d.      Make decisions and take action with respect to treatment of the Accounts for

21  purposes of compliance with the Internal Revenue Code and any applicable local or state tax codes,

22  including creating reports, maintaining and reporting relating to the Accounts and their income, if

23  any, derived therefrom, and as in a Qualified Settlement Fund or such other entity as the

24  Administrator deems appropriate;

25                 e.      Out of the assets of the Accounts, purchase and maintain reasonable amounts

26  and types of insurance for errors and omissions or fidelity bonds;

27

28

- 18 -

1             f.      Have the authority to procure, upon consultation with the Co-Lead Counsel,

2 professional accounting, legal and other services for the purposes of carrying out the tasks described

3 in this Order, and to be reimbursed for the expenses of such services; and,

4             g.      Have the authority to adopt and implement reasonable procedures consistent

5 with this Order and in consultation with the Co-Lead Counsel.

6      Unless otherwise agreed to by Defendants and the Co-Lead Counsel, details of any

7 individual settlement agreement, individual settlement amount, and individual amounts deposited

8 into the Accounts shall be treated as confidential by the Administrator and shall not be disclosed

9 by the Administrator to the Co-Lead Counsel, the Court, or the Court's designee, unless the Court

10 requests that it receive that information *in camera*. The Administrator shall, however, on a quarterly

11 basis provide statements to the Co-Lead Counsel and the Courts showing only the aggregate of the

12 quarterly deposits, disbursements, interest earned, financial institution charges, if any, and current

13 balance.

14     **B.**      <u>**Requirements of the Escrow Agent**</u>

15      The Escrow Agent shall be a commercial bank that: (1) has deposits insured by the Federal

16 Deposit Insurance Corporation; (2) is organized under the laws of the United States or any state

17 thereof; and (3) has a total risk-based capital in excess of $5 billion and meets the minimum risk-

18 based ratios established under the Federal Deposit Insurance Corporation Improvement Act of

19 1991. The Escrow Agent may act as paying agent, depository, custodian or trustee with respect to

20 funds it holds.

21      The Administrator shall consider, in designating the Escrow Agent and in procuring

22 professional services, the charges that the Escrow Agent or provider of professional services will

23 impose for its actions and the ability of the Escrow Agent or provider of professional services to

24 undertake the tasks called for with efficiency and responsiveness.

25      The Escrow Agent shall not acquire or hold for longer than 90 days, any debt securities,

26 certificates or investments unless such instruments are a U.S. Treasury Bill, U.S. Treasury Money

27 Market, U.S. Government Money Market or similar type of account guaranteed by the United States

28 or an agency thereof, including an FDIC-Insured Account. The U.S. Treasury Money Market or

1    U.S. Government Money Market must be registered under the Investment Company Act of 1940,

2    as amended. In determining investments to be held by the Escrow Agent, primary regard shall be

3    given by the Escrow Agent to safety of principal.

4          The reasonable fees and reasonable expenses of the Administrator and Escrow Agent shall

5    be paid by the Co-Lead Counsel. The Administrator and Escrow Agent shall each provide to Co-

6    Lead Counsel their statements for their reasonable fees and reasonable expenses charged on a

7    monthly basis. When this Court authorizes the filing of a Petition, the reasonable fees and expenses

8    of the Administrator and Escrow Agent that were paid by Co-Lead Counsel may be included as

9    items for reimbursement from the Accounts. The Petition shall include copies of the statements of

10   the Administrator and Escrow Agent that had been submitted on a monthly basis to Co-Lead

11   Counsel to support the request for reimbursement of such payments made by Co-Lead Counsel for

12   which reimbursement is requested.

13   **IV.**      **PARTICIPATION AGREEMENT AND ELIGIBLE PARTICIPATING COUNSEL**

14         An agreement attached hereto as Exhibit C (the "Participation Agreement") is approved by

15   this Court for signature by attorneys for the purposes set forth below. The Participation Agreement

16   can be entered into by plaintiffs' attorneys on a voluntary basis. The Participation Agreement is a

17   private and cooperative agreement between Co-Lead Counsel and plaintiffs' attorneys only. It is

18   not an agreement with any Defendants.

19         There is no need for an attorney who already has a case filed in or transferred to this Court

20   to sign the Participation Agreement, because they are automatically subject to this Order with

21   regard to all cases and any amendments (unless they met the criteria of a remand for wrongful

22   removal as set forth in footnote 1) in which they have a fee interest, regardless of whether any of

23   their other cases are filed in other jurisdictions, or not yet filed.

24         Plaintiffs' attorneys who execute the Participation Agreement are hereinafter referred to as

25   "Participating Counsel." Plaintiffs' attorneys who do not execute the Participation Agreement and

26   who are not deemed signatories to the Participation Agreement, or are otherwise not bound to

27   common benefit assessments pursuant this Order and any amendments are hereinafter referred to

28   as "Non-Participating Counsel."

1    Participating Counsel who execute the Participation Agreement shall be entitled access to

2    the Common Benefit Work Product for use in all of the cases or claims of their clients, whether the

3    case or claim has been filed or not, and if filed, for use in any court in which it was filed even if not

4    filed in this MDL, and for use for the benefit of non-filed claims, including any for which a tolling

5    agreement exists. All claims or cases of a counsel who has executed the Participation Agreement

6    shall be assessed whether the claim or case has or has not been filed, and all claims or cases in

7    which a counsel who has executed the Participation Agreement has a fee interest shall be assessed.

8    Non-Participating Counsel who do not execute the Participation Agreement and who are

9    not deemed to have executed the Participation Agreement shall have no right of access to the

10   Common Benefit Work Product. However, in the event it is determined that such counsel in any

11   fashion benefitted from the Common Benefit Work Product or the administrative functions of the

12   Plaintiffs' Leadership, then all cases and claims of clients of such counsel, whether filed or not,

13   shall be subject to the assessment described in this Order. It is deemed that the fair liquidated

14   damages for such unauthorized use of the Common Benefit Work Product is equal to the assessment

15   percentage(s) set by this Order. The Court will also consider an application by the Co-Lead Counsel

16   for payment of its fees and costs to enforce this Order with respect to any unauthorized procurement

17   or use of the Common Benefit Work Product.

18   Co-Lead Counsel may periodically request that attorneys who are subject to the assessment

19   provide a list of all cases filed, regardless of jurisdiction, and a list of all claims of clients

20   represented or in which they have a fee interest whether the case is filed or not or on a tolling

21   agreement or not, to facilitate the Co-Lead Counsels' ability to keep track of all cases and claims

22   that are subject to the assessment. Further, all counsel with cases filed in or transferred to this Court,

23   and those who sign the Participation Agreement, must comply with such a request within 30 days

24   of the request.

25   **V.    ASSESSMENTS AND PAYMENTS INTO THE ACCOUNTS**

26   **A.    Assessment Allocation**

27   For Participating Counsel, the assessment shall be a combined 10% for fees and costs, with

28   the appropriate division between fees and costs to be proposed by Co-Lead Counsel and approved

1    by the Court prior to any disbursement from the Accounts. The portion of the 10% allocated to fees

2    shall be paid entirely out of attorney's fees. The MDL assessment represents a hold back pursuant

3    to *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 266 (2d. Cir. 2006).  The Co-Leads may

4    adjust the 10% up or down as appropriate, subject to Court approval.

5            **B.    Calculating the Assessment**

6            For any attorney subject to an assessment under the terms of this Order, the assessment is

7    owed on the "Gross Monetary Recovery" on all of that attorney's cases or claims. A Gross

8    Monetary Recovery occurs when a plaintiff agrees or has agreed—for monetary consideration—to

9    settle, compromise, dismiss, or reduce the amount of a claim (a "Settlement") or, with or without

10   trial, recover a judgment for monetary damages or other monetary relief, including compensatory

11   damages and/or abatement costs and/or punitive damages (a "Judgment"), with respect to any

12   Social Media-related claims. The Gross Monetary Recovery excludes court costs that are to be paid

13   by Defendant(s) and includes the present value of any fixed and certain payments to be made in the

14   future, such as those that come about as a result of a structured settlement of a claim.

15           **C.    Defendants' Obligations**

16           Defendants and their counsel shall not distribute any Settlement or Judgment proceeds to

17   any counsel or plaintiff until after (1) Defendants' counsel notifies Co-Lead Counsel in writing of

18   the existence of a settlement and the name of the individual plaintiff's attorney (without disclosing

19   the amount of the settlement); and (2) Co-Lead Counsel have advised Defendants' counsel in

20   writing whether or not the individual plaintiff's attorney's cases are subject to an assessment

21   pursuant to this Order.

22           For cases subject to an assessment, Defendants are directed to withhold an assessment from

23   any and all amounts paid to plaintiffs and their counsel and to confidentially pay the assessment

24   directly into the Accounts based on the allocations set forth in Section V.A above as a credit against

25   the Settlement or Judgment. Counsel for each Defendant must provide quarterly notice to the

26   Administrator, who will share the notice with Co-Lead Counsel, of the names and docket numbers

27   of the cases for which it has paid an assessment into the Funds since the last such report. A report

28   is not due if there are no payments made into the Funds by that Defendant during that quarter.

1   Details of any individual settlement agreement, individual settlement amount and individual

2   amounts deposited into escrow will be confidential and must not be disclosed by the Administrator

3   to anyone, except to the Court upon its request. Quarterly statements from the Administrator,

4   however, will be provided to Co-Lead Counsel, and to the Court if it so requests, showing only the

5   aggregate of the quarterly deposits, disbursements, interest earned, financial institution charges, if

6   any, and current balance.

7        This Order shall in no way be read to affect or otherwise encumber any Defendants'

8   obligation to pay attorneys' fees and costs pursuant to fee shifting statutes, if any, that may apply

9   in this case.

10       **D.**      **Other Rights**

11       Nothing in this Order is intended to impair the attorney/client relationship or any

12   contingency fee contract deemed lawful by the attorneys' respective bar rules and/or state court.

13       IT IS SO ORDERED.

14

15    Dated:  March 15, 2023

16                                        YVONNE GONZALEZ ROGERS
                                          UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -                               [PROPOSED]
                                    COMMON BENEFIT ORDER
                                    CASE NO. 4:22-MD-03047-YGR

# EXHIBIT A

**SOCIAL MEDIA MDL**
**MONTHLY TIME REPORT**

Firm Name: _____
Date: _____

Categories: 1. Leadership Case Management Duties 2. Leadership calls/meetings 3. Admin 4. Court appearances 5. Pleadings/Briefing 6. Research 7. Litigation strategy 8. Doc review & analysis 9. Discovery 10. Experts 11. Settlement 12. Trial prep 13. Trial 14. Appeal 15. Miscellaneous

| Last Name, First Name | Professional Level: Partner (PT), Associate (A), Contract (C), Of Counsel (OC), or Paralegal (PR) | Date of Service | Category Code | Detailed Description of Work Performed | Co-Lead Counsel Who Assigned Or Approved Work | Billing Rate | Time Spent (by 0.1 increments) | Fees Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

EXHIBIT A

# EXHIBIT B

**SOCIAL MEDIA MDL**
**MONTHLY EXPENSE REPORT**

Firm Name: _____

Date: _____

Categories: 1. Assessment Fees 2. Federal Express / Local Courier, etc. 3. Postage Charges 4. In-House Photocopying 5. Outside Photocopying 6. Hotels 7. Meals 8. Mileage 9. Air Travel 10. Deposition Costs 11. Lexis/Westlaw 12. Court Fees 13. Witness / Expert Fees 14. Investigation Fees / Service Fees 15. Transcripts 16. Ground Transportation (i.e. Rental, Taxis, etc.) 17. Miscellaneous (Describe)

| Last Name, First Name | Date | Category Code | Detailed Description | Co-Lead Counsel Who Assigned Or Approved Work | Amount | Receipt Provided: Yes/No (if no, provide reason) |
|---|---|---|---|---|---|---|
| | | | | | | |

EXHIBIT B

# EXHIBIT C

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10

11   IN RE: SOCIAL MEDIA ADOLESCENT          Case No. 4:22-MD-03047-YGR
     ADDICTION/PERSONAL INJURY
12   PRODUCTS LIABILITY LITIGATION           MDL No. 3047

13   _____

     This Document Relates to:              **COMMON BENEFIT ORDER, EXHIBIT C**
14
     ALL ACTIONS
15

16

17            **MDL 3047 COMMON BENEFIT PARTICIPATION AGREEMENT**

18           **THIS AGREEMENT** is made this ____ day of _____, 20__, by and

19   between Co-Lead Counsel appointed by the United States District Court for the Northern

20   District of California in MDL 3047 and _____ **[Name of**

21   **the Attorney and their Law Firm Executing the Agreement on behalf of themselves and**

22   **their  Law Firm]** (the "Participating Counsel").

23           **WHEREAS**, the United States District Court for the Northern District of California

24   (MDL 3047) has appointed the following to as Leadership for Plaintiffs to facilitate the

25   conduct of pretrial proceedings in this MDL:

26

27

28

| Attorney | Firm | Leadership |
|----------|------|------------|
| Lexi Hazam | Lieff Cabraser Heimann & Bernstein LLP | Co-lead counsel |
| Christopher Seeger | Seeger Weiss | Co-lead counsel |
| Previn Warren | Motley Rice | Co-lead counsel |
| Jennie Anderson | Andrus Anderson | Liaison counsel |
| Joseph VanZandt | Beasley Allen | PSC Leadership |
| Alexandra Walsh | Walsh Law | PSC Leadership |
| Mike Weinkowitz | Levin, Sedran & Berman | PSC Leadership |
| Emily Jeffcott | Morgan & Morgan | PSC Leadership |
| Andre Mura | Gibbs Law Group | PSC Leadership |
| Jayne Conroy | Simmons Hanley Conroy | PSC Leadership |
| Matthew Bergman | Social Media Victims Law Center PLL | PSC Leadership |
| Ron Austin | Ron Austin Law LLC | PSC |
| James Bilsborrow | Weitz and Luxenberg | PSC |
| Paige Boldt | Watts Guerra | PSC |
| Carrie Goldberg | C.A. Goldberg | PSC |
| Sin-Ting Mary Liu | Aylstock Witkin Kreis & Overholtz | PSC |
| Emmie Paulos | Levin Papantonio Rafferty | PSC |
| Roland Tellis | Baron Budd, P.C. | PSC |
| Diandra "Fu" Debrosse Zimmermann | DiCello Levitt Gutzler | PSC |
| James Marsh | Marsh Law Firm | PSC |
| Hillary Nappi | Hach Rose Schirripa & Ch | PSC |
| Ruth Rizkalla | The Carlson Law Firm | PSC |

**WHEREAS**, Leadership for Plaintiffs in association with other attorneys working for the common benefit of plaintiffs have developed and are in the process of further developing work product and a record that will be valuable in all proceedings and benefits all plaintiffs alleging injuries or damage caused by Defendants ("Common Benefit Work Product");

**WHEREAS**, Participating Counsel wants to acquire the Common Benefit Work Product and establish a framework for an amicable, working relationship with Leadership for Plaintiffs for the mutual benefit of their clients, and for those attorneys who perform work authorized, audited and approved as common benefit to seek common benefit compensation;

**NOW THEREFORE**, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

I.   **SCOPE OF AGREEMENT**

    A.   **Purpose**

    1.   This Participation Agreement is a private cooperative agreement between plaintiffs' attorneys to share Common Benefit Work Product with regard to all injuries and damages arising from Social Media Adolescent Addiction/Personal Injury-related claims by Participating Counsel, pursuant to the Court's Common Benefit Order. Plaintiffs' attorneys who execute this Participation Agreement are entitled to receive the Common Benefit Work Product created by those attorneys who have also executed or have been deemed to have executed the Participation Agreement.

    2.   The intent of this Participation Agreement is to establish, secure, and supervise a fund to promote the purposes and policies of the common benefit doctrine and provide a source for equitable payment of services rendered and costs incurred for the benefit of plaintiffs.

    3.   There is no need for an attorney who already has a case filed in or transferred to the MDL to sign the Participation Agreement, because they are automatically subject to the Common Benefit Order, and any amendments with regard to all cases in which they have a fee interest, regardless of whether any of their other cases are filed in other jurisdictions, or not yet filed.

    4.   For those cases that have been transferred to the MDL, but are subject to a remand motion, if a case is determined to have been improperly removed to this Court after the Court's consideration of the remand motion and is remanded to the transferor court, that case will not automatically be subject to Common Benefit Assessment by virtue of it having been temporarily venued in this Court. However, if the case received and benefited from the work product of the MDL, it could be assessed, after due consideration by the Court following briefing by the parties.

    B.   **Rights and Obligations of Participating Counsel**

    5.   Upon execution of this Participation Agreement, Co-Lead Counsel will provide access to Participating Counsel the Common Benefit Work Product defined in the Court's

1 Common Benefit Order, and any amendments, including access to the document depository as

2 well as all the coding and summarizing of the documents in the depository, access to all

3 deposition transcripts and summaries, deposition cuts for the purpose of trial, medical literature

4 library, legal briefing and research, and, as deemed appropriate by Co-Lead Counsel, expert

5 witness work product. Participating Counsel agree that all Social Media Adolescent

6 Addiction/Personal Injury cases, as defined in paragraph 11 below, in which Participating

7 Counsel has a fee interest, including unfiled cases, tolled cases, and/or cases filed in state

8 and/or federal court, are subject to the terms of this Participation Agreement.

9       6.     Co-Lead Counsel may periodically request that Participating Counsel produce a

10 list setting forth the name of each Social Media Adolescent Addiction/Personal Injury client

11 represented by them (whether filed or unfiled) or in which they have any interest in an

12 attorneys' fee, together with the Court and docket number (if filed) of each such case. Unless

13 otherwise specified, Participating Counsel shall provide such a list within 30 days of a request

14 to Co-Lead Counsel Lexi Hazam at lhazam@lchb.com, Christopher Seeger at

15 CSeeger@seegerweiss.com, and Previn Warren at pwarren@motleyrice.com.

16 **II.**    **AGREEMENT TO PAY AN ASSESSMENT ON GROSS RECOVERY**

17       7.     Subject to the terms of this Participation Agreement and the terms of the

18 Common Benefit Order, and any amendments, all Plaintiffs and their attorneys who either

19 agree or have agreed—for a monetary consideration—to settle, compromise, dismiss, or reduce

20 the amount of a claim or, with or without trial, recover a judgment for monetary damages or

21 other monetary relief, including such compensatory and punitive damages, with respect to

22 Social Media Adolescent Addiction/Personal Injury-related claims or cases are subject to an

23 assessment of the gross settlement amount..

24       **A.**    **Gross Monetary Recovery Defined**

25       8.     "Gross Monetary Recovery" includes any and all amounts paid to Plaintiffs by

26 Defendants through a settlement or pursuant to a judgment. Gross Monetary Recovery

27 (a) excludes court costs that are to be paid by the defendant; and (b) includes the present value

28 of any fixed and certain payments to be made in the future.  The assessment shall apply to all

1    of the claims or cases of the attorneys who are subject to the Common Benefit Order that are

2    pending in the MDL or state court as well as any unfiled or if applicable, tolled claims or cases

3    of such attorneys in which they are counsel or co-counsel, or in which they have any interest.

4          **B.**    **Assessment Amount**

5          9.    For Participating Counsel, the assessment shall be a combined 10% for fees and

6    costs, with the appropriate division between fees and costs to be proposed by Co-Lead Counsel

7    and approved by the Court prior to any disbursement from the Accounts. Co-Lead Counsel

8    may adjust this percentage up or down with approval of the Court.

9          10.    This assessment represents a hold back pursuant to *In re Zyprexa Prods. Liab.*

10    *Litig.*, 467 F.Supp.2d 256, 266 (2d. Cir. 2006).

11          **C.**    **Covered Claims or Cases**

12          11.    Counsel who sign (or who are deemed to have signed) this Participation

13    Agreement agree that the assessment shall apply to all unfiled claims or cases, tolled (if

14    applicable) claims or cases, and claims or cases filed in other courts in which they have any fee

15    interest. Covered claims or cases include all Social Media Adolescent Addiction/Personal

16    Injury-related claims or cases or actions.

17          **D.**    **Attorney Fee Lien**

18          12.    With respect to each client who they represent in connection with related claims

19    or cases that are filed or pending in any court, unfiled or subject to a tolling agreement,

20    consistent with the Common Benefit Order establishing the common benefit Social Media Fee

21    and Social Media Expense Accounts, each Participating Counsel agrees to have Defendants

22    deposit or cause to be deposited into the Social Media Fee and Social Media Expense

23    Accounts a percentage proportion of the gross amount recovered by each such client that is

24    equal to the assessment amount.

25          13.    In the event Defendants do not deposit such funds into the Social Media Fee

26    and Social Media Expense Accounts, Plaintiff and Plaintiff's Participating Counsel are

27    required to so inform the Co-Lead Counsel, and shall deposit or cause to be deposited in the

28

1    Social Media Fee and Social Media Expense Accounts the percentage proportion of the gross

2    amount recovered by each such client that is equal to the assessment amount.

3        14.    Participating Counsel, on behalf of themselves, their affiliated counsel, and

4    their clients, hereby grant the Co-Lead Counsel a lien upon and a security interest in any fee

5    generated as a result of any recovery by any client who they represent in connection with any

6    Social Media Adolescent Addiction/Personal Injury claims to the full extent permitted by law,

7    in order to secure payment in accordance with the provisions of this Participation Agreement.

8        15.    Participating Counsel will undertake all actions and execute all documents that

9    are reasonably necessary to effectuate and perfect this lien and/or security interest.

10   **III.    COMMON BENEFIT EXPENSES**

11       **A.    Qualified Expenses Eligible for Reimbursement**

12       16.    In order to be eligible for reimbursement, expenses ("Common Benefit

13   Expenses") must meet the requirements set forth in the Common Benefit Order, Section II.E,

14   which are incorporated herein as if set forth in their entirety.  Specifically, said expenses must

15   be:

16           a.   for the common benefit;

17           b.   appropriately authorized, as set forth in the Common Benefit Order and

18               the Participation Agreement;

19           c.   certified by a senior partner of the submitting firm each month attesting

20               to the accuracy and correctness of the monthly submission; and,

21           d.   approved by the Common Benefit Time and Expense Billing Manager

22               and Auditor pursuant to her designated authority as set forth in the

23               Common Benefit Order.

24       **B.    Expense Reporting Protocol**

25       17.    Participating Counsel must submit expenses consistent with the Common

26   Benefit Order and any amendments thereto. Expenses incurred on matters common to all

27   claimants in MDL 3047 and authorized by Co-Lead Counsel may be submitted for

28   reimbursement.

18.     No costs spent on developing or processing individual issues in any case for an individual client will be considered or should be submitted, unless that case is an authorized bellwether trial case set for trial.

## IV.     COMMON BENEFIT WORK

### A.     Qualified Common Benefit Work Eligible for Reimbursement

19.     In order to be eligible for reimbursement time and efforts expended for common benefit work must meet the requirements set forth in the Common Benefit Order and any amendments thereto.

20.     Participating Counsel shall be eligible to seek reimbursement for time and efforts expended for Common Benefit Work, if said time and efforts are:

      a.   for the common benefit;

      b.   appropriately authorized;

      c.   timely submitted;

      d.   certified by a senior partner of the submitting firm each month attesting to the accuracy and correctness of the monthly submission; and,

      **e.**   approved by the Common Benefit Time and Expense Billing Manager and Auditor, pursuant to her designated authority as set forth in the Common Benefit Order.

### B.     Authorization

21.     Time spent on matters common to all claimants in MDL 3047 must be assigned by Co-Lead Counsel to be eligible for consideration for common benefit. No time spent on developing or processing individual issues in any case for an individual client will be considered or should be submitted, nor will time spent on unauthorized and unapproved work.

22.     For examples of authorized and unauthorized work please review the Common Benefit Order and any amendments thereto.

### C.     **Common-Benefit Time Keeping Protocols**

23.     As set forth in the Common Benefit Order and any amendments therto, all time must be accurately and contemporaneously maintained.  Participating Counsel agree to follow the time-keeping protocols set forth in Common Benefit Order and any amendments therto.

24.     Upon order of the Court, payments may be made from the Social Media Fee and Social Media Expense Accounts to Participating Counsel who provide services or incur expenses for the joint and common benefit of plaintiffs. Attorneys eligible are limited to Plaintiffs' Co-Lead Counsel, Liaison Counsel, Steering Committee Leadership and Membership, other MDL counsel called upon to assist in performing the Plaintiffs' Leadership's responsibilities, and other Participating Counsel called upon by the Plaintiffs' Leadership to assist in performing their responsibilities.

25.     **No Individual Rights to the Funds.** No party or attorney has any individual right to any of funds from the assessment except to the extent of amounts directed to be disbursed to such person by Order of this Court. These funds will not constitute the property of any party or attorney or be subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed as provided by court order to a specific person.

26.     **Court Approval**. The amounts deposited in the Social Media Fee and Social Media Expense Accounts shall be available for distribution only to attorneys who have performed professional services or incurred expenses for the common benefit. The MDL Court retains jurisdiction over the common benefit award. Each Participating Counsel who does authorized common benefit work has the right to present their claim(s) for compensation prior to any recommendation to the Court.

27.     **Other Fee Assessments.** This Participation Agreement is without prejudice to such other assessments of or awards of fees and costs as may be ordered by any Court, including under Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules, the common benefit doctrine, or that may be provided by contract between attorneys and clients.

1       28.    **Fee Committee**. Participating Counsel understands that at a later date the

2  Common Benefit Time and Expense Billing Manager and Auditor, and/or a Fee and Expense

3  Committee appointed by the Court, may make recommendations to the MDL Court on how

4  funds in the Social Media Fee and Social Media Expense Accounts should be distributed.

5                     **AGREEMENT TO BE BOUND**

6

7  Dated: _____, 20__     _____

8                            **Firm Name**:
                             **Attorney's Name**:

9

10  I hereby agree to be a **Participating Counsel** and certify that I am signing this Participation
Agreement voluntarily. I also certify that I have the authority and power to bind my law firm

11  into this Participation Agreement.

12  **ON BEHALF OF THE PLAINTIFFS' CO-LEAD COUNSEL**:

13  Dated: _____, 20__     _____

14                             Lexi Hazam

15  Dated: _____, 20__     _____

16                             Christopher Seeger

17  Dated: _____, 20__     _____

                             Previn Warren

18

19

20

21

22

23

24

25

26

27

28