*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT STATUS REPORT FOR AUGUST 30, 2024 DISCOVERY STATUS CONFERENCE**<br><br>Judge:   Hon. Lisa J. Cisneros<br>Courtroom:   G – 15th Floor |
|---|---|

**JOINT STATUS REPORT**

In advance of the discovery status conference set by the Court in this action for Thursday, August 29, 2024 at 1:00 p.m. via Zoom video conference, Plaintiffs, Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the parties"), submit this Joint Status Report to "update the Court regarding their progress on discovery." (ECF 1068)

### I. CUSTODIANS

On July 8, 2024, Uber and Plaintiffs' MDL leadership reported to the Court their agreement for 55 total custodians for both the JCCP and the MDL. The parties have not yet reached agreement as to 18 of the 55 custodians. Pursuant to the Court's August 8, 2024 Order (ECF 867), Plaintiffs filed their Motion to Compel on August 19, 2020 (ECF 1137). Uber's response is due August 29, 2024.

### II. DEFENDANT FACT SHEETS

Plaintiffs identified many Defendant Fact Sheets ("DFS") and corresponding productions that Plaintiffs believe appear to contain missing information. Uber represented that in cases where DFS production has been made, production is complete. Nevertheless, Uber requested identification of specific issues for confirmation. On August 20, 2024, Plaintiffs provided Uber with a preliminary list of cases in which there appear to be gaps in production, for example, missing background checks and tax histories, confirmation that all responsive documents relating to the subject incident and other responsive incidents have been produced. Plaintiffs have not received any video recordings as part of DFS productions and have requested confirmation that no video recordings exist for either the subject incidents or other responsive incidents to the DFS. Uber is investigating the potential issues raised in Plaintiffs' August 20, 2024 letter. This meet and confer process is ongoing.

### III. PLAINTIFF FACT SHEETS

The parties are continuing to work through their disputes regarding individual Plaintiffs' Fact Sheets and the alleged deficiencies Uber has identified in its notices. On August 22, 2024, Plaintiffs' leadership sent Uber a letter identifying five points of contention. Uber sent its response on August 28, 2024. These issues are not yet ripe for judicial resolution, but the parties may bring them to the Court's attention via a PTO 8 dispute if they are unable to reach agreement.

### IV.     CLAWBACK DISPUTE

On July 25, 2024, the Court heard arguments on a clawback challenge by Plaintiffs to Uber's clawback of three documents that had been inadvertently produced in Uber's document productions pursuant to Pretrial Order No. 5. The Court took the parties' briefs and arguments under submission on July 25.

### V.     COORDINATION WITH JCCP

The JCCP Plaintiffs have been working through a tranche-by-tranche priority process for production of custodial files with the Defendants. Uber indicates that as of August 26, 2024, Uber has substantially completed production of custodial files in both the JCCP and MDL for twenty custodians using JCCP search terms ("Tranche 1" and "Tranche 2" custodians). The MDL Plaintiffs have requested simultaneously coordinated production of the remaining custodial files to the MDL Plaintiffs.

Currently, deposition dates are set in the JCCP for four Tranche 1 witnesses to occur between September 25 and October 28 in the JCCP. JCCP Plaintiffs and MDL Plaintiffs intend to do their best to coordinate to take a single deposition of common witnesses, but the MDL Plaintiffs have significant concerns about their ability to do so, as discussed more fully below.

**Plaintiffs' Position:** The Court has set a September 1, 2024 deadline for Uber to substantially complete discovery responsive to Plaintiffs' First Requests for Production. It is clear that Uber will not meet that Sept. 1 deadline; however, Plaintiffs have asked Uber to produce the undisputed custodial files with the MDL search terms promptly; the Court ordered Uber to produce the first nine custodial files using MDL search terms by August 22 however Uber has not complied. (Aug. 8, 2024 Discovery Conf. Transcript, at 27). Timely production of documents, particularly from custodial files, is essential not just to keep this litigation on track but also if any meaningful coordination is to be had between the MDL and the JCCP Plaintiffs. Unless good cause is shown, Plaintiffs are limited to 45 depositions, including 30(b)(6) depositions. Given this limitation, it is essential that Plaintiffs know which custodians' files will be produced and also have an opportunity to timely review the productions before Plaintiffs can determine which custodians they will depose. Additionally, Uber has disputed 19 of the 29 custodians MDL Plaintiffs selected, adding further question to which custodians MDL Plaintiffs

2

will chose to depose.

Currently, four depositions are set in the JCCP of custodians whose files will also be produced in the MDL. Although MDL Plaintiffs will do their best to coordinate to take a single deposition of common witnesses, Plaintiffs have repeatedly raised that Uber must comply with critical deadlines including completing custodial file production and resolving key disputes related to privilege logs and redactions if coordination is to be achieved. Before MDL Plaintiff can determine whether to take depositions, Plaintiffs need not only those custodians' documents, but also privilege logs for those custodians (and sufficient time to resolve privilege disputes), as well as a determination of which custodians will be produced in the MDL and production of sufficient documents from the remaining custodians to evaluate which custodians to depose. Although Uber has produced some documents for those custodians in the MDL, it has not produced those custodians' documents using the MDL search terms, despite Judge Cisneros' Order that they do so promptly (ECF No. 867). Additionally Judge Breyer has ordered that Uber substantially complete production of documents responsive to Plaintiffs' first Requests for Production by September 1. Instead, Uber indicates that it will *begin* production of these documents on September 4 and has not indicated when production will be complete. Further, Plaintiffs are alarmed that Uber's position is that they substantially completed production for 20 custodians using the JCCP search terms, yet Uber has only produced under 60,000 total documents for those custodians (or approximately 3,000 documents per custodian). After Uber completes production of those custodial files with MDL search terms, the parties still have to work through the Validation process, which may result in additional disputes and rounds of production, and will further delay discovery.

**Uber's Position:** Plaintiffs are taking extensive discovery from Uber and, consistent with the Court's December 28, 2023 case management order, Uber produced (and continues to produce) substantial volumes of documents. To date, those productions span approximately 485,000 pages. The process of producing documents beyond the so-called 'off-the-shelf' productions contemplated by Pretrial Order No. 5 is still ongoing, given that the search terms to be used were resolved within the last few weeks, and that document custodians are still in dispute and the issue will not be briefed until August 29. Accordingly, substantial completion of the production of documents in response to

3

Plaintiffs' First Set of Requests for Production cannot feasibly occur by September 1, 2024, as Uber raised with Judge Breyer. See ECF 1501. Uber also notes that Plaintiffs incorrectly state that Uber missed the deadline to produce priority custodians' documents with MDL search terms. The Court ordered Uber to produce these documents "promptly," ECF 867 at 2, and Uber is working to do so.

The Court ordered Uber to promptly produce the delta of these custodial files using the MDL search terms to facilitate the first nine custodian depositions. ECF 867 at 2. On August 12, 2024, Uber produced 50,068 documents previously produced in JCCP for 20 custodians, including the first nine custodians. On August 26, 2024, Uber produced an additional 4,753 documents for 20 custodians originally produced in the JCCP. With these two productions, Uber has provided MDL Plaintiffs all documents provided in the JCCP for 20 custodians. Uber plans to make its initial production of responsive documents with the finalized MDL search terms beginning on September 4, 2024. Therefore, Uber anticipates that the MDL and JCCP Plaintiffs will be able to proceed with a single deposition for common witnesses, consistent with the Deposition Protocol.

### VI. THIRD-PARTY DISCOVERY

#### a. Second Round of Briefing

On August 16, 2024, the Court ordered that the next round of briefing on third party subpoenas would include Ballard Partners, Nexar, and The Chertoff Group. [ECF. 706, 1068]. Chertoff Group agreed to produce some documents, which narrows the scope of the Chertoff briefing. Ballard Partners continues to stand on its objections. Plaintiffs reached an agreement with Nexar regarding its production, so there will be no need to submit briefing on Nexar. To that end, Uber has objected to the production of documents by another Plaintiff attorney and PSC member, Bret Stanley. Plaintiffs therefore suggest that the subpoena to Mr. Stanley be substituted in for Nexar as the third brief. Uber disagrees with Plaintiffs' proposal (first shared with Uber on August 28, 2024) to substitute a new subpoena into the second round of subpoena briefing just days before the start of briefing. Consistent with the Court's order, Plaintiffs will file their motions to enforce this tranche of subpoena disputes on August 30, 2024.

#### b. Third Round of Briefing

**Plaintiffs' Position:** Plaintiffs believe the Court's forthcoming rulings on this next round of

third-party subpoenas will be highly instructive as to several other third parties. With depositions beginning in short order, Plaintiffs believe the most expedient use of time would be to make this third round of briefing the last one. To that end, Plaintiffs propose the following schedule:

- By **September 15, 2024**, Uber must provide to Plaintiffs their objections as to all remaining third parties, along with the names of custodians and Bates numbers of documents which Uber believes cover the document requests sent to the third parties.

Plaintiffs further propose a briefing schedule that begins to run from the date the Court issues rulings on the second round of their party subpoenas:

- **Within 30 days**, Plaintiffs complete meet and confers with all remaining third parties.
- **Within 40 days,** Plaintiffs should file motions as to any entity not consenting to the MDL Court's jurisdiction. Plaintiffs intend to file Notices of Tagalong Actions with the MDL as to each of these motions in order to expedite their transfer to the MDL.
- **Within 50 days**, Plaintiffs will file their motions as to all remaining subpoenas.
- **Within 64 days,** Uber and all third parties must file their responses.

**Uber's Position:** Plaintiffs' proposed third round of briefing on subpoena disputes is premature. The Parties have yet to submit briefing on the second tranche of subpoenas, much less have a Court order providing guidance for conferrals in advance of a third round of briefing. Further underscoring the premature nature of this proposal is the fact that enforcement proceedings for 16 of the remaining 20 outstanding subpoenas have not been transferred (by court or by consent) to this Court. Briefing on the remaining subpoenas (if not resolved between the Parties and non-parties) may largely occur in other courts. Until Plaintiffs successfully achieve transfer or gain consent for the remaining subpoena recipients, setting up such a schedule to litigate as-yet-to-be-defined disputes is premature.

Uber further disagrees with Plaintiffs' proposal to require Uber to provide "all objections" to "remaining third parties" without receiving the Court's guidance on the second tranche. The Court's approach of addressing subpoenas in tranches allows the Parties and non-parties to resolve or narrow the scope of disputes. The Parties' positions are guided by the Court's rulings on prior subpoena disputes. Requiring Uber to take positions on all remaining subpoenas without the benefit of the

1  Court's order on the second tranche would be inefficient, premature, and prejudicial.

2  Uber believes that Plaintiffs should complete their work of reaching resolution and narrowing
3  potential areas of dispute with third parties, and attempting to transfer any outstanding subpoena on
4  which Plaintiffs intend to pursue transfer before this Court sets a schedule for any further subpoena
5  briefing.

### c. Status of RALIANCE, NSVRC, and Urban Institute

7  Following several unsuccessful attempts to serve RALIANCE, Plaintiffs learned RALIANCE
8  is a joint venture between NSVRC (also known as Respect Together) and at least one other entity,
9  ValorUS, and that documents pertaining to RALIANCE may be in the custody of ValorUS. Plaintiffs
10 then served ValorUS with a subpoena on August 7, 2024. The Urban Institute does not consent to the
11 Court's jurisdiction. NSVRC is finalizing its production. Plaintiffs do not intend to file any motions
12 to transfer pertaining to these entities.

### d. RAINN Status Report

14 Plaintiffs' Motion to Compel documents from RAINN was granted in part and denied in part
15 in the U.S. District Court for the District of Columbia during a hearing that was held on August 6,
16 2024. Plaintiffs ordered a copy of the transcript and will file it on receipt. Judge Reyes retained
17 jurisdiction over the matter. Plaintiffs are working to obtain documents pursuant to Judge Reyes' Order
18 and will continue to keep this Court apprised of developments as they unfold.

### e. Third-Party Discovery from Lyft

20 The Court ordered Plaintiffs to review their custodian list and discovery to assure that Plaintiffs
21 are taking reasonable steps to gather ISSP-related information. [ECF. 1068 at 3.] The Court further
22 ordered Uber to identify for Plaintiffs all document productions that have occurred or will occur by
23 September 1, 2024 addressing this issue. *Id.*

24 **Plaintiffs' Position**: As of August 23, Uber has not "identif[ied] for Plaintiffs all document
25 productions…that address the issue." ECF No. 1068, p. 3. Based on documents produced by Uber,
26 there are at least seven undisputed custodians who had responsibility for the ISSP: Jodi Kawada Page,
27 Valerie Shuping (who worked on the Safety Ops team, along with Jenny Luu), Gus Fuldner, Roger
28 Kaiser, Adam Blinick, Matt Baker, and Katy McDonald. In fact, according to Uber's internal

documents, four of these (Page, Shuping, McDonald, and Baker) were considered "champions" of the ISSP Plaintiffs' selection of seven custodians with responsibility for the ISSP demonstrates that Plaintiffs fully complied with their Rule 45 responsibilities to nonparties. Plaintiffs withdrew requests for category (iii) documents.

**Uber's Position**: Uber has committed to complying with the Court's Order. Uber provided Plaintiffs with a list of previously-produced documents related to the ISSP on August 28, 2024.

The Parties met and conferred on custodians on August 12 and August 14. In these conferrals, Uber identified custodians most probable to have discoverable information related to ISSP. Plaintiffs have not previously referenced ISSP as a basis for including any custodian, including the seven they reference now. Uber disagrees with Plaintiffs' characterizations of these custodians' roles with respect to ISSP, but believes this joint status report is not the appropriate place for supplemental arguments on custodians. Uber has proposed to Plaintiffs custodians with unique and relevant information relating to ISSP from conception to operation, whom Plaintiffs have, thus far, rejected.

After the discussion about ISSP custodians at the August 8, 2024 discovery status conference and after the Court's Order regarding ISSP discovery (ECF 1068 at 2-3), Plaintiffs filed a motion to compel custodial files (ECF 1137). But Plaintiffs chose not to address this issue in their briefing. It is improper for Plaintiffs to use this Joint Status Report to supplement their briefing.

## VII. NONCUSTODIAL SOURCES/FILE

**Plaintiffs' Position**: Although Uber has produced some noncustodial documents in response to PTO 5 and Defendant Fact Sheets, Uber has not yet begun to produce noncustodial documents responsive to Plaintiffs' Requests for Production. Plaintiffs remain concerned over production of these documents in conjunction with the pending September 1 deadline. Plaintiffs' position is that Uber should substantially complete production of documents from noncustodial sources, including, for example, documents related to marketing, background checks, safety data, and policies, by September 1, certifying that it has conducted a thorough search for all noncustodial sources relevant to this litigation.

Moreover, pursuant to the Court's July 18 Order, Uber was to produce by July 26, (i) an index, table of contents, or other record of Uber's policies and (ii) the related homepages for those policies.

(ECF 706). Plaintiffs believe that the index and responsive documents Uber has provided are incomplete. Uber should provide an index of Uber's policies with accompanying Homepages to the extent they exist and substantially complete production of the relevant and produce the responsive underlying policies by September 1.

**Uber's Position**: Uber notes that, on January 16, 2024 and February 22, 2024, Uber disclosed additional noncustodial sources in communications. Following a review of Plaintiffs' discovery requests, on July 19, 2024 Uber provided an updated list of non-custodial sources that Uber has agreed to search. Uber has produced non-custodial documents in response to PTO 5 and Defendant Fact Sheets, as well as additional systems identified by Plaintiffs. Uber has searched for and agreed to produce documents in the following noncustodial data sources in response to Plaintiffs' written discovery: (1) Google Cloud Storage (Box, Google Suite); (2) Audio Recordings (LiveOps, PureCloud Genesys); (3) Ticketing Systems (ZenDesk, Bliss, JIRA); (4) Knowledge Base Related NCDS (Teamdot, Salesforce, KMS Lighthouse); (5) Uber Application (App Tweak); (6) Marketing (Databook); and (7) Other Structured Data (GPS Data, Independent Driver profiles, feedback, and ratings). It is Uber's position that many of these documents are also responsive to Plaintiffs' First Set of Requests for Production. Uber has provided a list of non-custodial sources and believes that Plaintiffs continue to mistakenly refer to electronic tools or web-based user interfaces as "additional data sources." Thus, Uber believes no dispute remains.

Uber has identified dozens of Knowledge Base Homepages across multiple business units and will be supplementing this information to Plaintiffs.

## VIII.  . UBER'S RESPONSES TO PLAINTIFFS' WRITTEN DISCOVERY

### a. Uber's objections to Plaintiffs' Requests for Production

Uber has made eight primary objections to Plaintiffs' First Requests for Production and objects to requests that (1) relate to activities occurring outside of the U.S.; (2) call for information outside of a time scope 1-year prior to the 1st Complaint; (3) seek documents outside of Uber's possession or equally available to Plaintiffs; (4) seek documents related to Uber's lobbying efforts; (5) relate to Uber's campaigns, business initiatives, or activities unrelated to sexual assault or sexual misconduct; (6) implicate the privacy of non-parties; (7) seek information related to subsequent remedial measures;

and (8) relate to statistics, tickets, or reporting that do not involve named Plaintiffs. The parties are in the process of meeting and conferring to attempt to resolve these disputes or otherwise narrow the issues that will require Court intervention.

### b. Production of Custodial Files using MDL Search Terms

On August 8, 2024, Judge Cisneros ordered Uber to produce to the MDL Plaintiffs the custodial files Uber produced in the JCCP regarding the first nine custodians. August 8, 2024 Status Conf. Transcript, at 27. In addition, Judge Cisneros ordered Uber to promptly produce the delta of these custodial files using the MDL search terms to facilitate coordination of depositions to the extent feasible. ECF 867, p.2. On August 12, 2024, Uber produced 50,068 documents previously produced in JCCP for 20 custodians, including the first nine whose depositions are planned to take place in September and October in the JCCP. On August 26, 2024, Uber produced an additional 4,753 documents for 20 custodians originally produced in the JCCP on August 9. With these two productions, Uber indicates that it has provided MDL Plaintiffs all documents provided in the JCCP for 20 custodians. To facilitate coordination, Plaintiffs have requested that Uber produce any custodial files with a unique identifier for the MDL and JCCP to eliminate duplicative productions and to identify whether documents are responsive to the MDL search terms. At this time, no custodial files are complete with MDL search terms. Uber has committed to producing its initial production of responsive documents with the finalized MDL search terms beginning on September 4 but has not provided a date by which document production will be complete. It is Plaintiffs position that Uber should complete production of documents from custodial files of undisputed custodians using the MDL search terms promptly and in compliance with the September 1 deadline set by Judge Breyer.

### c. Production of Privilege Logs

As noted above, Uber re-produced custodial files for 20 custodians on August 12 and August 26, 2024, that Uber previously produced in the JCCP. Uber has not yet provided privilege logs for this production and the parties dispute when Uber is required to produce privilege logs. Plaintiffs assert that privilege log production is governed by PTO 16, Stipulated Deposition Protocol, which requires privilege logs to be produced within 10 days of the respective document production. ECF No. 866. As required by the Deposition Protocol, Plaintiffs believe privilege logs must be produced 10 days after

custodial files are produced to facilitate an expeditious meet and confer process and to address and resolve privilege disputes in advance of any deposition. Uber maintains that the Stipulated Pretrial Order No. 14, ECF 396, regarding Federal Rule of Evidence 502(D) and Privileged Materials, which provides for production of privilege logs within 30 days is applicable and is not superseded by the Deposition Protocol.

Additionally, a dispute exists regarding production of privilege logs for Uber's earlier document productions. Pursuant to PTO 14, order regarding Federal Rule of Evidence 502(D) and Privileged Materials, the producing party is required to provide a privilege log concerning any information that has been redacted or withheld in whole or in part from that production within 30 calendar days of such production. ECF No. 396. Although Uber provided some privilege logs prior to June 28, Uber has made 14 productions since that date, but has produced no privilege logs. While multiple of Uber's productions since June 28 related to Knowledge Base or were in connection with the Court's data and statistics Orders, Uber is confirming whether there are any outstanding redacted documents that require privilege logging, and will promptly provide such logs. To the extent Uber has outstanding privilege logs, Plaintiffs request that Uber produce them by September 4, 2024.

### IX.   RE-PRODUCTION REDACTIONS

**Plaintiffs' Position:** On August 1, 2024, the Court issued an order on the parties' PTO 8 dispute regarding Uber's improper redactions of documents. ECF No. 767. On August 8, 2024 the parties stipulated that Uber would re-produce certain PTO 5 documents without redactions by August 16, 2024. ECF No. 865. On August 16, 2024 Uber produced overlay files in this MDL for 7,042 documents. Included in this production were replacement copies for the 22 scope-redacted documents Uber has previously represented were included in its PTO 5 productions. Plaintiff is assessing the remainder of the reproduced documents.

On August 12, 2024, Uber produced 50,068 documents that were produced in the JCCP, including many "scope" and "outside of the United States" redacted documents that were originally produced in the JCCP on August 2, 2024. Plaintiffs have sought conference and requested Uber remove at least redactions it made to the 50,068 documents for scope ("Redacted-Scope" -- 1,247), and "outside of the United States" ("Redacted -OUS" --1,824) in accordance with this Court's August

10

1, 2024 Order. ECF No. 767  Plaintiffs are prepared to address their position in greater detail during the August 29 status conference.

**Uber's Position:** Plaintiffs' position conflates two issues: redactions in Uber's PTO 5 re-productions and redactions in Uber's re-productions of JCCP productions. Only the latter is at issue. Uber believes this issue is premature as Plaintiffs only raised the issue of redactions in Uber's JCCP re-productions with Uber on August 27, 2024. Uber will meet and confer on that issue.

Moreover, the Court ordered Uber to make the JCCP re-productions on an expedited basis, which Uber did. The redactions cited by Plaintiffs were made in the original JCCP productions pursuant to the applicable court orders in that litigation, not in Uber's MDL re-productions. With respect to the PTO 5, the Court ruled that "Uber is not required to remove redactions that were in place at the time documents were produced in previous litigation or investigations." (ECF 767, p.1) Similarly, the Court did not order Uber to affirmatively remove redactions that were made in the JCCP productions (ECF 867) (which may have made the expedited production timeline impracticable), so Uber did not do so. Uber re-produced the JCCP productions as ordered by the Court.

## X.   SAFETY DATA & STATISTICS DISCOVERY DISPUTE

On July 9, 2024, the Court issued its Order on the parties' Joint Discovery Letter Brief regarding safety data and statistics. (ECF 683). On July 18, 2024, the Court issued its Order regarding discovery related to U.S. Safety Reports. (ECF 706). On August 16, 2024, the Court ordered the parties to complete negotiations on this topic by August 22 (ECF. 1068). The parties have conferred and are hopeful that an agreement will be reached. The parties continue to meet and confer regarding (1) the use of a third party to house the data; (2) whether and, if so, how Uber will produce data from free-form fields; (3) whether and, if so, how Uber will produce materials referenced in the "attachments" field in Jira and Bliss tickets that are not located or stored within those respective systems, such as photos and audio and video recordings; and (4) whether and, if so, how Uber will produce GPS data.

## XI.   COST ALLOCATION

**Uber's Position:** Uber intends to file a motion seeking cost allocation. Plaintiffs in this MDL have pursued a scorched-earth approach to discovery that has needlessly created delay and expense that is not proportional to the needs of this litigation. The Parties will meet and confer in attempts to

resolve this issue and that aligns with Judge Breyer's recent rulings, but fairness and the Rules dictate the need to place some guardrails on discovery or require cost allocation if Plaintiffs persist in their shotgun approach to discovery.

**Plaintiffs' Position**: Uber improperly raises the question of cost allocation for the first time in this Joint Status Report. Uber has not discussed this issue with Plaintiffs prior to raising it here and has not requested to meet and confer about costs or scope of discovery. Raising an issue for the first time in a status report without first attempting to confer is inappropriate and not productive. Regardless, shifting of discovery costs would not be appropriate here. Plaintiffs are proceeding with discovery as efficiently as possible. As an example, Plaintiffs are currently pursuing discovery of only 55 custodians across both the JCCP and MDL, where the total number of Plaintiffs is collectively around 2,000. Considering Plaintiffs' efforts to streamline discovery, the stakes at issue in this litigation and the extreme disparity between the parties' resources, an allocation of discovery costs would be improper.

DATED: August 28, 2024

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

|     |     |
| --- | --- |
| 1   | |
| 2   | *Co-Lead Counsel for Plaintiffs* |
| 3   | **SHOOK HARDY & BACON L.L.P.** |
| 4   | By: */s/ Michael B. Shortnacy* |
|     |    MICHAEL B. SHORTNACY |
| 5   | MICHAEL B. SHORTNACY (SBN: 277035) |
| 6   |   mshortnacy@shb.com |
|     | **SHOOK, HARDY & BACON L.L.P.** |
| 7   | 2121 Avenue of the Stars, Suite 1400 |
|     | Los Angeles, CA 90067 |
| 8   | Telephone: (424) 285-8330 |
|     | Facsimile: (424) 204-9093 |
| 9   | PATRICK OOT (Admitted *Pro Hac Vice*) |
| 10  |   oot@shb.com |
|     | **SHOOK, HARDY & BACON L.L.P.** |
| 11  | 1800 K St. NW Ste. 1000 |
|     | Washington, DC 20006 |
| 12  | Telephone: (202) 783-8400 |
|     | Facsimile: (202) 783-4211 |
| 13  | KYLE N. SMITH (*Pro Hac Vice* admitted) |
| 14  |   ksmith@paulweiss.com |
|     | JESSICA E. PHILLIPS (*Pro Hac Vice* admitted) |
| 15  |   jphillips@paulweiss.com |
|     | **PAUL, WEISS, RIFKIND, WHARTON** |
| 16  |   **& GARRISON LLP** |
|     | 2001 K Street, NW |
| 17  | Washington DC, 20006 |
|     | Telephone: (202) 223-7300 |
| 18  | Facsimile:  (202) 223-7420 |
| 19  | *Attorney for Defendants* |
|     | UBER TECHNOLOGIES, INC., |
| 20  | RASIER, LLC, and RASIER-CA, LLC |