# EXHIBIT C

FILED
San Francisco County Superior Court

JUN 27 2024

CLERK OF THE COURT
BY: _Edward J____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| COORDINATION PROCEEDING<br>SPECIAL TITLE [RULE 3.550]<br><br>IN RE UBER RIDESHARE CASES | Case No. CJC-21-005188<br>JUDICIAL COUNCIL COORDINATION<br>PROCEEDING NO. 5188<br><br>ORDER ON PLAINTIFFS' MOTION TO<br>COMPEL FRANK CHANG'S CUSTODIAL<br>FILE |

Plaintiffs' Motion to Compel Frank Chang's Custodial File came on for hearing on June 27, 2024. Having considered the pleadings and papers on file in the action, and the arguments of counsel presented at the hearing, the motion is hereby denied without prejudice.

## BACKGROUND

On March 7, 2023, Plaintiffs filed a Master Long-Form Complaint against Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber"). Plaintiffs alleged sixteen causes of action: (1) general negligence; (2) common carrier negligence; (3) negligent misrepresentation; (4) intentional misrepresentation; (5) negligent infliction of emotional distress ("NIED"); (6) intentional infliction of emotional distress ("IIED"); (7) vicarious liability/liability for the torts of Uber drivers; (8) vicarious

- 1 -

liability for sexual assault; (9) vicarious liability for sexual battery; (10) vicarious liability for false imprisonment; (11) negligence by misfeasance; (12) negligence by nonfeasance; (13) intentional concealment; (14) strict product liability – design defect; (15) strict product liability – failure to warn; and (16) fraud. (Compl. ¶¶ 164-348.) On June 22, 2023, the Court sustained Uber's Demurrer to Plaintiffs' Master Long-Form Complaint. (June 22, 2023 Order, 1, 19.) In particular, the Court sustained Uber's demurrer as to Plaintiffs' vicarious liability, fraud, misrepresentation, and strict products liability claims without leave to amend. (*Id.* at 1, 12, 15, 19.) The Court sustained Uber's demurrer as to the negligent infliction of emotional distress claim with leave to amend. (*Id.* at 1, 16, 19.) On July 24, 2023, Plaintiffs filed a First Amended Master Long Form Complaint ("FAC") alleging causes of action for general negligence, common carrier negligence, negligence by misfeasance, and negligence by nonfeasance. Plaintiffs allege as follows.

Plaintiffs "are individuals who were raped, sexually assaulted, sexually battered, sexually harassed, falsely imprisoned, kidnapped, physically assaulted, and/or otherwise assaulted and/or harassed by their Uber driver." (FAC ¶ 6.) Uber is a transportation company that uses its app ("Uber App") to "connect riders looking for transportation to independent transportation providers…looking for riders." (*Id.* ¶¶ 1, 21-22.) Uber "drivers are largely nonprofessional, untrained individuals who use their own vehicles." (*Id.* ¶ 44.)

As early as 2014, Uber became aware that its drivers were engaging in sexual misconduct or sexual assault against its passengers. (*Id.* ¶ 3; see *id.* ¶ 27.) Uber has "publicly acknowledged this sexual assault crisis." (*Id.* ¶ 4; see *id.* ¶¶ 29, 121, 147, 149; see, e.g., *id.* ¶¶ 121-122 [approximately 250 reported sexual assaults per month in 2017 and 2018].) However, Uber "has actively chosen not to report instances of sexual assault that occur on the UBER App to the authorities" or other ridesharing companies. (*Id.* ¶¶ 84-86, 88, 134.) In addition, Uber does not proactively cooperate with law enforcement investigating cases passenger victims report to the police or participate in transportation network company ("TNC") safety hearings. (*Id.* ¶¶ 89-94, 116-120.) Moreover, after a victim reports a sexual assault, Uber often erases the victim's complaint and disables the victim's account, which precludes the victim from accessing pertinent information such as the driver's name, driver's photo,

make and model of the vehicle, ride time, ride distance, and route. (*Id.* ¶¶ 94-95, 100, 102.)

Despite marketing itself as a safe and better alternative to other transportation methods, Uber continues to hire drivers without conducting adequate background checks and screening procedures, allows culpable drivers to keep driving for Uber, and fails to adopt and implement reasonable monitoring and investigation procedures to protect passengers. (*Id.* ¶¶ 4, 24-25, 28, 30-31, 112-114, 131-133, 160-161, 164-168, 170-172, 189-190, 192, 209, 214-215, 218; see, e.g., *id.* ¶¶ 34-43, 66-69, 73-83, 130 [Uber Safe Rides Fee was a revenue source rather than a fund for implementing background checks, vehicle checks, driver safety education, development of safety features, and insurance]; but see *id.* ¶ 111 [the Uber App now includes an emergency button that allows a passenger to call 911].) Due to Uber's failure to implement changes, passengers continue to be victims of sexual assaults. (*Id.* ¶¶ 28, 127.)

On September 29, 2023, Plaintiffs provided Uber with a list of seventy proposed custodians for Uber. (Smith Decl. ¶ 3.) On October 26, 2023, after the deposition of Uber's person most knowledgeable regarding organizational structure, Plaintiffs provided Uber with an updated list of custodians. (*Id.* ¶¶ 4-5.) That list added seventy-three custodians for a total of 143 custodians. (*Id.*) The parties then engaged in negotiations to narrow that list. (*Id.* ¶¶ 7-8.) By order filed February 5, 2024, this Court granted Plaintiffs' motion to compel discovery in part, ordering Uber to produce documents from three senior executive custodians and denying their request as to four others. (Feb. 5, 2024 Order.) The parties thereafter continued their negotiations, and ultimately arrived at a list of 26 agreed "priority" custodians whose files would be the subject of Uber's document productions, with the parties to discuss and decide later what documents, if any, would be collected and searched from the remaining proposed custodians. (Smith Decl. ¶ 9.) Uber's hit report produced on May 14, 2024 for the 26 priority custodians shows there are more than 3 million documents with hits. (Abramson Decl. ¶ 22.)

Plaintiffs now move to compel production of the custodial file of Frank Chang, Uber's Vice President of Applied Science. Uber opposes the motion.

## LEGAL STANDARD

As one federal court has noted, "[r]elatively little legal authority exists on the standards a court should apply when parties are unable to agree on designated ESI custodians and a party seeks to compel

1  another party to designate an additional ESI custodian or custodians." (*In re EpiPen (Epinephrine
2  Injection, USP) Marketing, Sales Practices and Antitrust Litigation* (D. Kan. Mar. 15, 2018) 2018 WL
3  1440923, *2.) The Court finds persuasive the general principles summarized in that opinion. (*Id.*)[1] First,
4  "determining what is relevant and proportional under the circumstances for each matter often requires a
5  highly fact-specific inquiry." (*Id.* (cleaned up); see also Code Civ. Proc. § 2017.020(a).) Second, "absent
6  agreement among the parties, the party who will be responding to discovery requests is entitled to select
7  the custodians it deems most likely to possess responsive information and to search the files of those
8  individuals." (*Id.* (cleaned up).) Third, "unless the party's choice is manifestly unreasonable or the
9  requesting party demonstrates that the resulting production is deficient, the court should not dictate the
10 designation of ESI custodians." (*Id.* (cleaned up).) Fourth, "the party seeking to compel the designation
11 of a particular additional ESI custodian has the initial threshold burden of showing that the disputed
12 custodian's ESI likely includes information relevant to the claims or defenses in the case. This is because
13 the party responding to discovery requests is typically in the best position to know and identify those
14 individuals within its organization likely to have information relevant to the case." (*Id.* (cleaned up).)
15 Fifth, "mere speculation that one's position as a senior executive might increase the relevance of that
16 individual's files is not a basis for designating that individual as a custodian." (*Id.* (cleaned up).) Finally,
17 where the responding party has designated multiple custodians and searched their ESI and the requesting
18 party is seeking to compel it to designate *additional* custodians, courts require a showing that "the
19 additional requested custodians would provide unique relevant information not already obtained." (*Id.*;
20 see also *In re Facebook, Inc. Consumer Privacy User Profile Litigation* (N.D. Cal. Nov. 14, 2021) 2021
21 WL 10282213, *1 [special master's finding that "requiring a party to compel the designation of additional
22 custodians requires a showing that the disputed custodians possess uniquely relevant information that is
23 not available from the sources already designated."].) In the Court's view, these principles warrant denial

---

[1] "Because of the similarity of California and federal discovery law, federal decisions have historically been considered persuasive absent contrary California decisions." (*Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282, 1288.) Adopting a federal standard is particularly appropriate here because of the pendency of the MDL proceeding involving similar cases. The parties are currently negotiating a coordination order that would govern document discovery in both the JCCP and the MDL proceedings. (Abramson Decl. ¶ 21.)

- 4 -

of the motion, without prejudice to its possible renewal upon the completion of Uber's current production of documents from priority custodians' files.

## DISCUSSION

Plaintiffs contend that Uber should be compelled to produce documents from Frank Chang's custodial file because of "his close involvement in developing Uber and its platform, including Uber's approach and response to rider safety and sexual assault." (Mot., 1; see also Opening Brief, 8 ["Chang's ESI likely includes information relevant to the claims and defenses in this case."].) Uber responds that it has already agreed to produce the custodial files of a number of employees, including Mr. Chang's direct report, Katherine McDonald, and the Uber senior executive to whom Mr. Chang directly reports, Gus Fuldner, rendering Mr. Chang's custodial file "unreasonably cumulative or duplicative." (Opposition, 2.) They argue that Mr. Chang's "work spans the globe and addresses voluminous issues well beyond interpersonal safety data statistics," and that Plaintiffs will receive the relevant data they seek from Mr. Chang through the productions of current priority custodians' files. (*Id.* at 2, 6.) Uber acknowledges, however, that if Mr. Chang "truly does possess relevant and non-cumulative ESI, it will become clear through Plaintiffs' review of the custodial documents Uber is producing, including from other senior executives, as well as documents from non-custodial sources." (*Id.* at 6.) Based on the record before it, the Court agrees.

Mr. Chang is Uber's Vice President of Applied Science, a position he has held since March 2022. (Chang Decl. ¶ 3.) His job responsibilities include supervising global teams that develop the technology and science supporting the Global Core Service Team which includes a wide range of areas including Safety, Actuarial, Insurance, Payments Integrations, Payments Processing, Financial Risk, Fraud, Customer Identity, Customer Support Tooling, and Customer Support Channels. (*Id.*) He currently manages a team of 242 employees located across 6 countries. (*Id.*) Mr. Chang currently has 8 direct reports, including Katherine McDonald who is Uber's Director of Data Science. (*Id.* ¶ 8.) In Ms. McDonald's roles she has held direct and primary responsibility for maintaining safety incident data at Uber, including pulling safety data required to be submitted to the California Public Utilities Commission. (*Id.*) Ms. McDonald was directly involved in the development of Uber's Sexual Misconduct and Sexual

Violence Taxonomy, and was also involved in authoring both Safety Reports. (*Id.* ¶ 9.) According to Mr. Chang's declaration, her "involvement in these matters has been co-extensive to, and in fact far more encompassing and granular than [his] own. She would have been copied on most, if not all, substantive communications [Mr. Chang] sent and received concerning these matters and is likely to have superior access to materials relevant to this litigation." (*Id.* ¶ 10.) Likewise, Mr. Chang reports directly to Gus Fuldner, the Senior Vice President of Safety & Core Services, who is a member of Uber's Executive Leadership Team. (*Id.* ¶ 12.) Mr. Fuldner, who like Ms. McDonald is also a priority custodian, "would have been party to relevant, substantive, and/or executive-level communications that [Mr. Chang] participated in without Ms. McDonald's involvement, if any." (*Id.*) Thus, Mr. Chang does not have "unique or superior knowledge" concerning the facts or allegations of the lawsuit to that of Uber employees, including but not limited to Ms. McDonald and Mr. Fuldner, who have already been selected as priority custodians. (*Id.* ¶ 13.) Indeed, Uber shows that all of the key documents attached to Plaintiffs' moving papers in order to show why Mr. Chang's custodial file should be produced are found within the custodial files of persons already selected as priority custodians. (Oot Decl. ¶¶ 4-10.)

For these reasons, the Court denies Plaintiffs' motion to compel Mr. Chang's custodial file. Again, however, the denial is without prejudice to its renewal, should Plaintiffs' review of the current priority custodians' documents or further discovery provide a basis to revisit it. In particular, as the Court discussed with the parties at the hearing, the parties shall meet and confer regarding the scope of discovery into safety data and statistics, whether responsive information is contained in custodial or non-custodial files or other sources, in an attempt to focus their discovery efforts and reduce their associated burden and expense.

IT IS SO ORDERED.

Dated: June 17, 2024

Ethan P. Schulman
Judge of the Superior Court

## CERTIFICATE OF ELECTRONIC SERVICE
(CCP 1010.6(6) & CRC 2.260(g))

  I, Edward Santos, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

  On June 27, 2024, I electronically served ORDER DENYING PLAINTIFFS' MOTION TO COMPEL FRANK CHANG'S CUSTODIAL FILE   via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:

JUN 27 2024

             Brandon E. Riley, Court Executive Officer

      By: _____
          Edward Santos, Deputy Clerk