| | |
|---|---|
| 1 | RANDALL S. LUSKEY (SBN: 240915) |
| 2 | rluskey@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON** |
| 3 | **& GARRISON LLP**<br>535 Mission Street, 24th Floor |
| 4 | San Francisco, CA 94105<br>Telephone: (628) 432-5100 |
| 5 | Facsimile:  (628) 232-3101 |
| 6 | ROBERT ATKINS (*Pro Hac Vice* admitted) |
| 7 | ratkins@paulweiss.com<br>CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted) |
| 8 | cgrusauskas@paulweiss.com<br>ANDREA M. KELLER (*Pro Hac Vice* admitted) |
| 9 | akeller@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON** |
| 10 | **& GARRISON LLP**<br>1285 Avenue of the Americas |
| 11 | New York, NY 10019<br>Telephone: (212) 373-3000 |
| 12 | Facsimile:  (212) 757-3990 |
| 13 | |
| 14 | *Attorneys for Defendants*<br>UBER TECHNOLOGIES, INC., |
| 15 | RASIER, LLC, and RASIER-CA, LLC |
| 16 | *[Additional Counsel Listed on Following Page]* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**SUPPLEMENTAL DECLARATION OF JAMIE BROWN**<br><br>Judge:         Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

1  MICHAEL B. SHORTNACY (SBN: 277035)
      mshortnacy@shb.com
2  **SHOOK, HARDY & BACON, L.L.P.**
   2049 Century Park East, Suite 3000
3  Los Angeles, CA 90067
   Telephone: (424) 285-8330
4  Facsimile: (424) 204-9093

5
   PATRICK OOT (*Pro Hac Vice* admitted)
6      oot@shb.com
   **SHOOK, HARDY & BACON, L.L.P.**
7  1800 K Street NW, Suite 1000
   Washington, DC 20006
8  Telephone: (202) 783-8400
   Facsimile: (202) 783-4211
9

10 KYLE N. SMITH (*Pro Hac Vice* admitted)
       ksmith@paulweiss.com
11 JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
       jphillips@paulweiss.com
12 **PAUL, WEISS, RIFKIND, WHARTON
       & GARRISON LLP**
13 2001 K Street, NW
   Washington DC, 20006
14 Telephone: (202) 223-7300
   Facsimile:  (202) 223-7420
15

16 *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.,
17 RASIER, LLC, and RASIER-CA, LLC

18

19

20

21

22

23

24

25

26

27

28

-2-

SUPPLEMENTAL DECLARATION OF JAMIE BROWN         CASE NO. 3:23-MD-3084-CRB

I, Jamie Brown, declare under penalty of perjury as follows:

1. I am a Vice President of Global Advisory Services at Lighthouse, which provides eDiscovery services to Uber Technologies Inc. ("Uber"), a Defendant in the above captioned matter. I previously set forth my qualifications in a declaration provided in support of Uber's ESI protocol on April 12, 2024, which are incorporated herein.

2. I submit this declaration at Defendant Uber's and its outside counsel, Paul Weiss's and Shook Hardy and Bacon's request and as a supplement to my previous declaration filed on June 7, 2024, in which I provided information related to Plaintiffs' proposed number of custodians and proposed search terms.

3. I understand that the parties disagree about certain custodians' data to be collected – specifically, 18 of the total 55 custodians.[1] In connection with their request, Plaintiffs submitted the declaration of Douglas Forrest on August 19, 2024 (ECF 1137-7) setting forth four reasons why Plaintiffs' proposed list is justified, to which I will respond in turn. I am familiar with the facts contained herein and am prepared to testify to the extent required.

**Argument 1: Deduplication**

4. Mr. Forrest argues that Uber's collection will be deduplicated pursuant to Section 12 of the ESI Order and that "[a]ny duplicates in the documents of the [18] disputed custodians will be filtered out before any review and will have no or minimal effect on the efforts required of Uber." This statement is an oversimplification and incomplete.

5. This assertion is an oversimplification because it suggests that deduplication is guaranteed to drastically reduce the volume of data subject to review. Realistically, the impact deduplication has on data volume depends upon the method used and how duplicative the content actually is, which is driven by the relationship between the custodians, overlap of roles and likelihood the same content was shared / retained / collected from the custodian population. In this case, pursuant to the ESI protocol, a document's "hash value" serves as the sole method for deduplication, which is the narrowest method for identifying unique content. A hash value, such as MD5 or SHA-1, is a

---

[1] Counsel for Uber notified me that Uber agreed to one additional custodian, thereby reducing the number in dispute from 19 to 18.

1  computer generated algorithm that is a widely used and accepted method for authenticating and
2  deduplicating documents.[2] It is important to note that documents truly have to be identical to have the
3  same hash value – for example, even a difference of one letter (or space!) would generate a different
4  value.  In contrast, the ESI protocol does not permit deduplication of "near-duplicates," such as a
5  document that is substantively the same but for various reasons like the example above, has a different
6  hash value – the point being that the hash value will exclude only a fraction of the documents that are
7  actually duplicative for all intents and purposes.

8        6. Further, Mr. Forrest's statement paints an incomplete picture of how deduplication
9  impacts the broader discovery process, as if, because of deduplication methods, there is no time, cost
10 or burden associated with the discovery of the underlying data.  This ignores the fact the data still has
11 to be collected and processed before it can be deduplicated; more importantly, it ignores provisions in
12 the ESI protocol requiring substantial manual review.

**Argument #2:  Reduction Rate Using Keywords**

14       7. Mr. Forrest's second argument is that the application of search terms should result in
15 the same reduction rate of 68% as with a sample set of other custodians.  Mr. Forrest's conclusions
16 are purely speculative, as the terms have not actually been applied against this yet-to-be-collected data
17 set.

18       8. He then suggests that any reduction using keywords removes such a substantial portion
19 of the document universe that it virtually "eliminates" the need for manual review, which simply is
20 not the case and ignores that the ESI protocol necessitates a manual review of a substantial amount of
21 documents.

**Argument #3:  Use of TAR**

23       9. Mr. Forest's third argument is, "[T]o the extent that there were still non-responsive
24 documents in the population after this 68% reduction, the TAR 2.0 process being implemented here
25 will largely weed out any remaining non-duplicate, non-responsive documents . . . ."

---

[2]  The algorithm generates a unique value (sometimes referred to as a digital fingerprint) for a given document; the unique values can then be compared to other documents for sameness in an automated manner.

10. This argument implies that the search terms are so precise that they will hit only on responsive documents, but common sense suggests otherwise. In reality, search terms are used only to initially cull the data, and that initial reduction is not dispositive of the responsiveness rate, which depends on many other factors, such as the search terms themselves given the context. While responsiveness rates vary, in practice, typically only a fraction of documents that hit on search terms are responsive.

11. Further, the volume of data to be reviewed – in aggregate – will be tremendous, and is attributable to the large volume of data collected and the anticipated low reduction rate associated with the search terms. Notably, the data volume in this review set represents the top 1% of cases handled by Lighthouse.

**Argument 4:  Production of Responsive Documents**

12. Lastly, Mr. Forrest states that Uber should be required to produce non-duplicative responsive documents, some of which could be probative and/or dispositive of issues in the case. It is axiomatic that nonprivileged, responsive, and otherwise discoverable documents identified through a review process should be produced. Mr. Forrest's statement merely reflects this axiom without elaboration, and therefore does not require further response.

I affirm under penalty of perjury of the laws of the State of New York that the foregoing statement is true and correct. Executed on August 29, 2024 in New York, New York.

/s/ Jamie Brown
Jamie Brown