

August 30, 2024

The Hon. Lisa J. Cisneros, United States Magistrate Judge
Phillip Burton Federal Building, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re Uber Technologies, Inc. Passenger Sexual Assault Litigation*, No. 3:23-md-0384-CRB
      Third Party Subpoena to Ballard Partners

Judge Cisneros:

In accordance with the Court's August 16, 2024 Order Re: Discovery, [ECF 1068], Plaintiffs submit this letter brief in support of their motion to enforce their third party subpoena to Ballard Partners ("Ballard"). Defendant Uber Technologies, Inc. and Ballard are moving to quash the subpoena.

**I.   Background**

Ballard is a well-resourced lobbying firm that employs fifty full-time lobbyists and maintains offices in five countries.[1] It claims to be "a dominant force in the lobbying world."[2]

Uber retained Ballard in 2015 to overcome restrictions on its operations at the local level in Florida where it initially operated illegally.[3] The process of obtaining the TNC classification under which Uber eventually operated in Florida (and around the country) goes to key claims and defenses in this litigation. Uber already invoked its TNC status in moving to dismiss Plaintiffs' vicarious liability and product liability claims, including under Florida law. In 2017, Uber again turned to Ballard to avail itself of the lobbying firm's connections to the Trump administration.[4]

Ballard represented Uber from 2017 through 2020, advocating for Uber on "[i]ssues related to the sharing economy," "Technology Policy and Regulation," "Digital Trade Policy," and "Labor Policy & Regulation," with the Department of Transportation, Department of Labor, the White House, the Senate, and the House of Representatives.[5] These topics pertain directly to critical issues in this litigation.

---

[1] Ballard Partners, *Who We Are*, https://ballardpartners.com/about/who-we-are/ (last accessed Aug. 8, 2024).
[2] *Id.*
[3] Philip Amman, *Miami Dade Tells Ballard Partners "No, You Cannot Also Lobby for Uber*," Florida Politics (Jan. 21, 2015), https://floridapolitics.com/archives/20561-miami-dade-tells-ballard-partners-no-you-cannot-also-lobby-for-uber-2/;   Tony Romm, *Uber's Newest DC Lobbyist: A Top Fundraiser for President Donald Trump*, CNBC (Jul. 20, 2017), https://www.cnbc.com/2017/07/20/ubers-newest-dc-lobbyist-is-a-fundraiser-for-donald-trump.html.
[4] *Id.*
[5] *See* United States Senate, Lobbying Disclosures, https://lda.senate.gov/filings/public/filing/search/ (last accessed Aug. 8, 2024); *see also* Ballard Partners, *Lobbying Report* (2020 Q2), https://lda.senate.gov/filings/public/filing/4e5a6954-6ac3-4ad7-8e07-0f4c92b704c6/print/ (last accessed Aug. 8, 2024); Ballard Partners, *Lobbying Report* (2018 Q2), https://lda.senate.gov/filings/public/filing/2ba5b70e-bff2-4ef2-9f93-f56b36407f09/print/ (last accessed Aug. 8, 2024);

---

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota



Uber lobbied extensively to avoid regulations that would have made Uber Riders safer during rides. Indeed, Uber spent millions for the enactment of laws and regulations that would identify Uber as merely a technology platform to avoid liability and responsibility for Rider safety. ECF 269 ¶ 31. Uber's lobbying efforts touched other areas as well, including efforts to defeat requirements for driver biometric fingerprinting. *Id*. at ¶¶156, 185. Uber's lobbying efforts relate directly to Plaintiffs' claims that Uber implemented inadequate safety measures, deliberately misled users regarding their safety, and failed to adequately screen its drivers. Plaintiffs anticipate Uber will defend itself at trial by telling the jury it complied with the exact same safety measures it lobbied for and that it met the standard of care. These documents will allow Plaintiffs to rebut this assertion to show that in writing its own rules and working to establish a standard well below what a reasonable transportation company should adhere to,[6] Uber was aware of the risks its product and services posed to passengers *the whole time* and even used the lobbying process to mislead passengers, regulators, and the public about the safety of Uber rides.

Plaintiffs served Ballard with a subpoena on April 18, seeking documents and communications related to Ballard's lobbying activities on behalf of Uber. Ex. A. Between April 23 and May 28, Plaintiffs and counsel for Ballard met and conferred by zoom, email, and phone. On May 28, Ballard served Plaintiffs with Objections to the Subpoena. Ex. B. On June 4, Ballard confirmed that it consented to jurisdiction of the MDL Court. On July 30, Plaintiffs sent a proposal to Ballard, narrowing the original subpoena. Ex. C. Ballard declined the proposal as well as an amended proposal sent on August 21. *Id.*

## II.     Efforts to Minimize Burden

Plaintiffs took the following steps to minimize any burden on Ballard as a non-party:

- Plaintiffs agreed to modify the scope of the subpoena to 2017–2020.
- At Ballard's request, Plaintiffs sent Ballard a limited set of search terms and later refined them; Ballard ultimately did not agree to produce documents based on this method.
- On July 30, Plaintiffs sent Ballard a proposal for narrowed document requests. Ex. C. Plaintiffs' proposal withdrew seven requests and modified the remaining ten, limiting the requests to a discrete set of "key lobbying issues." *Id.*
- During an August 21 meet and confer, Plaintiffs invited Ballard to confirm that it did not perform work on Uber's behalf on any of the key lobbying issues identified in Plaintiffs' proposal, so Plaintiffs could withdraw such requests. Ballard confirmed that it performed work related to TNC classification but could not confirm or deny that it performed work related to the remaining three issues.
- Following the August 21 meet and confer, Plaintiffs sent a second revised proposal to Ballard, which further defined key lobbying issues to exclude tax-related documents. Ex. C.

---

Ballard Partners, *Lobbying Report* (2018 Q1), https://lda.senate.gov/filings/public/filing/6b08430b-414c-4966-9ddb-2b3779bf9880/print/ (last accessed Aug. 8, 2024). The Ballard Partners lobbyists representing Uber at the federal level were Brian Ballard, Sylvester Lukis, Daniel McFaul, Rebecca Benn, and Pamela Bondi. *Id.*

[6] The TNC standard of care is different than the negligence standard of care, which applies regardless of these statutes.



### III. Argument

***Standing.*** Uber's standing under Fed. R. Civ. P. 26 and 45 is limited to its interest in confidential and proprietary information. [ECF 695 at 3–4].[7] The Court should disregard its standing arguments.

***Relevance.*** The scope of discovery under Rule 45 is the same as under Rule 26, [ECF 695 at 3], which permits "discovery concerning 'any nonprivileged matter that is relevant to any party's claim or defense.'" *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 528, 530–31 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 26(b)(1)). "The test for relevance is not overly exacting: evidence is relevant if it has any tendency to make more or less probable a fact that is of consequence in determining the action." [ECF 684 at 8 (quotations omitted)]. "On the other hand, the party opposing discovery, 'has the burden of showing that discovery should not be allowed.'" *Id.* (quoting *Sayta v. Martin*, 2019 WL 666722, at *1 (N.D. Cal. 2012)).

Ballard asserted that the key lobbying issues Plaintiffs identified were not relevant to the torts Plaintiffs alleged; this suggests a misunderstanding of the relevance standard and the claims and defenses in this litigation. One of the key lobbying issues goes directly to Uber's knowledge of and reaction to sexual assault and the others go to elements of Plaintiffs' key claims: Uber's control over its employees, Uber's duty to riders, and Uber's knowledge of the risks riders face, all of which are relevant under Rules 26 and 45. The key lobbying issues, that function as limitations on each of Plaintiffs remaining 10 document requests, *see* Ex. C,[8] correspond exactly to claims and defenses in this case:

**(a) classification of rideshare drivers as independent contractors or employees**: This corresponds to the allegation that Uber drivers are employees and, consequently, Uber is vicariously liable for the sexual assaults committed during rides. *See*, *e.g.*, Master Complaint ¶¶ 15, 25, 111, 132, 183, 419–24, 431, 433–34. Worker classification issues bear directly on Plaintiffs' vicarious liability claims; lobbying on these issues involves discussions of the control that the employer has over the drivers.[9] Documents and communications on this issue would shed light on the Uber-driver relationship and Uber's knowledge and intentions concerning control over its drivers.

**(b) classification of rideshare companies as "transportation network companies" (TNCs)**: This lobbying work is relevant to Plaintiffs' negligence-based, product liability, and common carrier claims. *See* Master Complaint ¶ 408; Uber's Reply Supp. MTD at 17–19, 22–23. Uber has asserted that TNC status insulates it from liability for these claims. *Id.* Uber argues TNC classification **sets the standard of care for Uber's actions**. Thus, documents related to Uber's efforts to define and

---

[7] In any event, neither Uber nor Ballard have any basis to claim confidentiality as documents exchanged with third parties are not confidential. *Doe v. Kaiser Found. Health Plan, Inc.*, 2023 WL 8714880, at *4 (N.D. Cal. Dec. 17, 2023).

[8] After submitting the proposal to Ballard Partners, Plaintiffs observed that this caveat was inadvertently omitted from Request No. 8. Plaintiffs' Amended Proposal included this caveat for Request No. 8.

[9] *See Examining the Future of Transportation Network Companies: Challenges and Opportunities*, Hr'g Tr., Subcomm. On Highways and Transit of the Comm. On Transp. and Infrastructure, House of Representatives, 116-36 (Oct. 16, 2019), https://www.congress.gov/event/116th-congress/house-event/LC65343/text

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: **(612) 424-9900**
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota



secure TNC status will provide critical evidence of Uber's motives and plan in lobbying for the TNC classification, demonstrating **that Uber wrote and rigged the rules by passing legislation to serve its own needs, not to protect its riders**. Additionally, these documents will capture evidence that Uber knew what it was doing and was fully aware of the risks to riders. Ballard worked for Uber on precisely these issues.

**(c) background check requirements for rideshare drivers, including the use of biometric or fingerprint screening**: To support Plaintiffs' negligence-based claims, Plaintiffs allege that Uber's use of inadequate background checks results in of dangerous drivers on the Uber app. Master Complaint ¶¶ 14, 17–20, 54, 118, 140, 143, 144–53, 160–63, 184, 198–99, 203, 207–09, 215–16, 220, 347, 365, 473. This thus goes to key claims in the litigation. *Id.* Uber's knowledge and plan concerning the efficacy of its background checks and its knowledge of available better alternatives (such as fingerprinting), as demonstrated by communications between it and Ballard or Ballard and legislators are relevant to these claims.

**(d) sexual assault**: Indisputably, "sexual assault," is relevant to the litigation. *See also* Master Complaint ¶¶ 1, 10, 16, 23, 25–26, 28–29, 32, 35, 117–18, 125–28, 130–34, 140, 163, 230, 240–42, 244–45, 254–55, 287, 291, 294–95, 297–305, 311–314, 342, 347, 363, 473. Information Uber shared with its lobbyists or regulators about sexual assault is demonstrative of its knowledge of this problem or, its plan to address (or not address) this growing issue. When asked, Ballard was not able to confirm or deny whether its work pertained to sexual assault.

*Burden.* Rule 45 does not require a requesting party to eliminate all potential burden to a subpoena recipient; indeed, this would leave requesting parties unable to issue subpoenas at all. Instead, requesting parties are tasked with taking "reasonable steps" to prevent "undue burden" to subpoena recipients. Fed. R. Civ. P. 45(d)(1); *Stemmelin v. Matterport inc.*, 2023 WL 411354, at *2 (N.D. Cal. Jan. 25, 2023). In evaluating claims of undue burden under Rule 45, courts "weigh the burden to the subpoenaed party against the value of the information to the serving party" and may also consider "the relevance of the requested information and the breadth or specificity of the discovery request." *Id.* (quotations omitted). Here, Plaintiffs took reasonable steps to prevent undue burden to Ballard.

First, Plaintiffs engaged in numerous meet and confers with Ballard regarding the scope of the subpoena and, at Ballard's request, negotiations over third party search terms. These various avenues of negotiation were not fruitful. On July 30, Plaintiffs sent Ballard a proposal to narrow the subpoena's scope. Ex. C. This proposal eliminated Requests 1–2 and 13–17. *Id.* Plaintiffs added limiting language to the remaining ten requests, now seeking those documents only to the extent they relate to defined "key lobbying issues." The key lobbying issues were specifically chosen because Ballard performed work for Uber on those issues and that work relates to central claims and defenses in this litigation. *See supra*.

Second, as the Court previously held, "Plaintiffs are not required to exhaust party discovery before seeking discovery from nonparties." [ECF 695 at 7]. In the context of a prior third-party subpoena, the Court reasoned that "Plaintiffs have taken reasonable steps to avoid imposing an undue burden or expense" on the third party where "[f]or months, Plaintiffs have endeavored to collect discovery from

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: **(612) 424-9900**
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota



Uber" but it had yet to begin producing responsive documents with only two months remaining before the substantial production deadline. *Id.* With respect to Ballard, even more time has passed, but Uber's production does not include any relevant documents. The deadline for Uber to complete PTO 5 discovery passed long ago. The Court ordered Defendants to identify by Bates number all documents responsive to Plaintiffs' third party subpoena requests. Order Regarding Discovery (Aug. 16, 2024) [ECF 1068 at 4]. Uber has not yet identified a single document responsive to Plaintiffs' subpoena to Ballard. Thus, while Plaintiffs need not exhaust party discovery before issuing third party subpoenas to Ballard, the discovery performed to date and ordered by the Court does not include any documents related to Ballard.

*Noerr-Pennington.* The *Noerr-Pennington* doctrine provides that those who petition the government are "generally immune from statutory liability for their petitioning conduct." *Tisdale v. City of Los Angeles*, 617 F.Supp.2d 1003, 1007 (C.D. Cal. 2009).[10] But *Noerr-Pennington* does not preclude **discovery** of evidence about petitioning conduct.

Ballard argues that the *Noerr-Pennington* doctrine is a wholesale bar to the discovery of evidence, but this objection is improper because the doctrine does not apply to discovery. Courts around the country consistently recognize that *Noerr-Pennington* is "not a bar to the discovery of evidence." *Wal-Mart Stores, Inc. v. City of Turlock*, 2005 WL 8176355, at *3 (E.D. Cal. Jan. 28, 2005); *Natural-Immunogenics Corp v. Newport Trial Grp.*, 2018 WL 6137597, at *4 (C.D. Cal. May 16, 2018) ("*Noerr-Pennington* is not an evidentiary privilege and only a limitation on liability"); *see also Natural-Immunogenics Corp. v. Newport Trial Grp.*, 2018 WL 618035, at *11 (C.D. Cal. June 12, 2018) (explaining "the *Noerr-Pennington* doctrine is not a rule of evidence that operates as a complete bar to admissibility… the issue of whether documents … are discoverable … is separate and apart from the issue of whether Defendants can be held liable for their conduct"). Plaintiffs are not, by this subpoena, seeking to impose tort liability on Uber for petitioning the government. Plaintiffs seek to use these documents to show Uber's motives and plan in shaping the statutes that Uber will undoubtedly rely on at trial for the alleged standard of care, employment classification, and safety requirements. But Plaintiffs must be permitted to discover and tell the rest of the story, including how Uber crafted those rules despite its awareness of the risks to passengers, and how it did so by falsely representing Uber rides as safe.

Uber argues that lobbying evidence is irrelevant because *Noerr-Pennington* immunizes it from liability for petitioning activities. But Uber lacks standing to challenge third party subpoenas for relevance. [ECF 695 at 3–4]. Even so, this argument fails on the merits because the applicability of *Noerr-Pennington* under these circumstances has not been established. *See*, *Kottle*, 146 F.3d at 1060–

---

[10] It is not at all obvious that *Noerr-Pennington*'s limitation on liability applies here where Uber has, for example, lobbied regulators as well as legislatures. *See, e.g.*, *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060-62 (9th Cir. 1998) (sham exception applies where defendant engages in intentional fraud on an administrative agency acting in an adjudicatory capacity); *Clipper Express v. Rocky Mtn. Motor Tariff Bur., Inc.*, 690 F.2d 1240, 1261 (9th Cir. 1982) ("[T]he supplying of fraudulent information thus threatens the fair and impartial functioning of these agencies and does not deserve immunity from the … laws."). Moreover, the doctrine is inapplicable where "Plaintiffs seek to impose liability, not for the act of 'petitioning' the government, but for specific acts committed in the course of 'petitioning' the government," such as representing Uber rides to be safe. *US ex rel. Wilson v. Maxxam, Inc.*, 2009 WL 322934, at *6 (N.D. Cal. Feb. 9, 2009).

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota



62; *Wilson*, 2009 WL 322934, at *6. Additionally, Plaintiffs seek to discover evidence of Uber's lobbying activities, not to hold Uber liable for the end result of its lobbying, but because Plaintiffs intend to uncover evidence about Uber's knowledge of sexual assault in the rideshare industry and relationships with its drivers, as well as its conduct in concealing information about those risks, throughout the petitioning process—all permissible purposes.

For similar reasons, in recent years, MDL courts have rejected arguments like Uber's and Ballard's and not only allowed discovery into lobbying activities but have admitted it into evidence at trial. *See, e.g.*, *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2023 WL 356128, 6–7 (D.S.C. May 19, 2023) (denying motion in limine to exclude evidence of lobbying activities under *Noerr-Pennington* because such evidence was admissible to prove motive, opportunity, and intent); *In re Testosterone Replacement Therapy Prods. Liability Litig.*, 2018 WL 305503, at *10 (N.D. Ill. Jan. 6, 2018) ("The Court disagrees that the *Noerr-Pennington* doctrine is applicable. … [plaintiff] intends to offer evidence of that activity to demonstrate [defendant's] motive or intent."); *In re Tylenol (Acetaminophen) Mktg., Sales Practices, & Prods. Liab. Litig.*, 181 F. Supp.3d 278 (E.D. Pa. 2016) ("It would be a stretch to say that *Noerr-Pennington* bars any use of any evidence of the defendants' petitioning of the government and its agencies."). Here, too, the Court should reject Uber's and Ballard's blanket arguments that the *Noerr-Pennington* doctrine bars all discovery and use of evidence of lobbying activities. To the contrary, documents and communications pertaining to lobbying activities are demonstrative of Uber's knowledge, intent, and plan concerning its app, including specifically with respect to classification of drivers, classification of Uber itself, and the technological features of the sharing economy that bear directly on Plaintiffs' claims.

Finally, Plaintiffs anticipate that Uber and Ballard will direct the Court to the JCCP Court's ruling on *Noerr-Pennington*. But as this Court has repeatedly stated, it is "not bound by the decisions [or] the scope of discovery in the JCCP." 6/13/24 H'rg Tr. at 38:20–22; [ECF 639 at 2]. In any event, the JCCP Court relied on *Mercury Cas. Co. v. Scottsdale Indemnity Co.* (2007) 156 Cal. App. 4th 1212, which does not so much as reference *Noerr-Pennington* and is not applicable to this discovery issue.[11] The Court should not adopt the JCCP Court's reasoning here.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to enforce the subpoena to Ballard as modified in Ex. C.

---

[11] And, unlike in *Mercury*, Plaintiffs do not seek to hold Uber liable for the *fact* of its lobbying (what the *Mercury* court described as "unclean hands"), but rather for evidence of Uber's knowledge of safety risks demonstrated in documents about its efforts to lobby for reduced background check and duty-related (TNC, employment) standards.

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota

**NGRV** NIGH GOLDENBERG RASO & VAUGHN

Dated: August 30, 2024      Respectfully submitted,

By: */s/ Marlene J. Goldenberg*
    Marlene J. Goldenberg
    Samantha V. Hoefs
    **NIGH GOLDENBERG RASO & VAUGHN PLLC**
    14 Ridge Square NW, Third Floor
    Washington, D.C. 20016
    Telephone: (202) 978-2228
    Facsimile: (202) 792-7927
    mgoldenberg@nighgoldenberg.com
    shoefs@nighgoldenberg.com

By: */s/ Sarah R. London*
    Sarah R. London (SBN 267083)
    **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
    275 Battery Street, 29th Floor
    San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
    Facsimile: (415) 956-1008
    slondon@lchb.com

By: */s/ Rachel B. Abrams*
    Rachel B. Abrams (SBN 209316)
    **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Facsimile: (415) 840-9435
    rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
    Roopal P. Luhana
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, 12th Floor
    New York, NY 10016
    Telephone: (888) 480-1123
    Facsimile: (888) 499-1123
    luhana@chaffinluhana.com

*Counsel for Plaintiffs*

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C 20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota