

## BERKE FARAH LLP
### ATTORNEYS AT LAW

September 5, 2024

The Hon. Lisa J. Cisneros, United States Magistrate Judge
Phillip Burton Federal Building, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

*In re Uber Technologies, Inc. Passenger Sexual Assault Litigation, No. 3:23-md-03084-CRB*
*Third Party Subpoena to Ballard Partners*

Dear Judge Cisneros:

Plaintiffs' motion to enforce their subpoena served on non-party Ballard Partners ("Ballard") should be denied, or, alternatively, the court should modify the scope of the subpoena, because, for the reasons explained herein, Plaintiffs have failed to satisfy the requirements when seeking compelled disclosure of protected First Amendment activity. In any event, Plaintiffs' requests are overly broad and impose an undue burden on Ballard.

Plaintiffs' letter brief of August 30, 2024, incorrectly states that Ballard has moved to quash their subpoena. Ballard has not moved to quash, but has objected to the unduly broad scope of the subpoena on various grounds. After several consultations with Plaintiffs, Ballard has been unable to reach accommodation with Plaintiffs as to the proper scope for the subpoena. Unwilling to accept Ballard's proposal to confine the subpoena request to "***documents and records referring to misconduct (e.g., sexual harassment, sexual assault) or reckless behavior by Uber drivers,***" Plaintiffs moved to compel. This letter brief is filed in *response* to Plaintiffs' motion to compel. Ballard remains prepared to work toward a sufficiently tailored request.

Plaintiffs' letter brief also misstates Ballard's position as to the "Noerr-Pennington" doctrine, which provides that those who petition the government are immune from liability for their petitioning conduct.[1] Ballard does *not* contend, as Plaintiffs state, that Noerr-Pennington is a "wholesale bar" to discovery, but rather asserts that such "petitioning" activity is protected First Amendment activity and therefore any attempt to compel disclosure thereof is subject to a balancing test that applies heightened or "exacting scrutiny." Indeed, such an approach has been adopted by the Ninth Circuit to attempts to use discovery to compel disclosure that infringes on the associational rights of members of politically active organizations. *See Perry v. Schwarzenegger,* 591 F.3d 1126 (9th Cir. 2009). A similar approach is merited for compelled disclosure of other First Amendment protected activities, including activity recognized under Noerr-Pennington.

Finally, Plaintiffs are dismissive of the JCCP Court's ruling earlier this year denying Plaintiffs' motion to compel the production of Uber's lobbying documents. In particular, the JCCP Court determined that

---

[1]*See Eastern Railroad Presidents Conf. v. Noerr Motor Freight*, 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965); and *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508 (1972).

"Plaintiffs fail[ed] to offer any persuasive argument to show how discovery regarding Uber's lobbying activities may be relevant to the issues properly in the case or reasonably calculated to lead to the discovery of admissible evidence," JCCP Order, p. 8, and therefore concluded that "….Plaintiffs' lobbying theories go nowhere, and no legitimate purpose would be served by allowing discovery on this topic." *Id.* at p.10.  Plaintiffs contend that the JCCP Court incorrectly relied on a case, *Mercury Cas. Co. v. Scottsdale Indemnity Co.* , 156 Cal. App. 4th 1212 (2007), and differentiates their need for the subpoenaed documents by claiming they "do not seek to hold Uber liable for the *fact* of its lobbying … but "rather [require the documents as] as evidence of Uber's knowledge of safety risks …".  Plaintiffs' Letter Brief, p.6.  But even if one were to accept this argument, Plaintiffs' requests nonetheless intrude into protected First Amendment activity and therefore require them to show a compelling need for the information they seek and to describe it with more particularly than they have done to date.

**Background**

Ballard is a politically bipartisan government relations firm that was engaged by Uber to represent the company's interests before the Florida legislative and executive branches starting in 2014.  In 2017, the Uber representation expanded to include representation before the U.S. Congress, the White House, and Federal executive branch agencies.  In particular, Ballard advised and lobbied for the company to operate without being treated as a conventional taxi company by local authorities and for its drivers to be classified as independent contractors.  At the Federal level, Ballard's lobbying activities also included advice and representation relating to national technology policy, including digital trade, the "sharing economy," foreign regulation of data management, surface transportation measures, and COVID-19 relief measures.  Ballard's representation of Uber ended in December 2020.   Thus, it has been nearly four (4) years since Uber's engagement of Ballard ended, and ten (10) years since the representation commenced.

Ballard is not a small government relations firm, as such firms go, but it also is not a large enterprise, and it does not maintain a large administrative infrastructure. Of the approximately fifty-five (55) professionals associated with the firm, a number maintain positions with other firms and organizations and some work only episodically for Ballard.  While Ballard has established an office in several jurisdictions, several of those offices are small in size and staffed by just a few professionals.  Thus, Ballard does not have the same extent of resources as some of the other firms that lobbied for Uber and received nonparty subpoenas from Plaintiffs.

Upon receipt of Plaintiffs' subpoena, Ballard engaged in a number of consultations with Plaintiffs aimed at modifying the scope of the subpoena to reduce its burden on Ballard in identifying and producing potentially relevant information and to limit the intrusion into the protected First Amendment activities in which it had engaged on behalf of Uber during the 2014-2020 time period.[2]  These consultations did not result in a mutually satisfactory agreement because, in Ballard's view, Plaintiffs were not able, or were unwilling, to offer a sufficiently tailored description of the information they sought.

For example, the Plaintiffs' subpoena sought, among other things, virtually all information relating to lobbying for Uber's classification as a Transportation Network Company ("TNC") and for Uber drivers to be classified as independent contractors rather than employees.   Uber's business interest in both these matters was broad and multifaceted.  Obtaining status as a TNC was essential to Uber's continued operation as a non-taxi company and therefore necessary regardless of any liability for rideshare drivers.

---

[2] Plaintiffs state at page 2 of their letter brief that they offered to narrow the time period of the subpoena to 2017-2020. While it is possible that this limitation was communicated to Ballard at some point, it is not reflected in the proposed modifications attached to Plaintiffs' letter brief at Exhibit C.

As to the issue of independent contractor classification, companies routinely prefer independent contractor status for workers when lawful because it affords general economic advantages unrelated to liability (*e.g.*, no obligation to pay certain payroll taxes or overtime and exclusion from providing other employee benefits the company may offer). Thus, requesting all communications, documents and records concerning Ballard's lobbying on these topics for Uber is overly broad, would impose a needless burden on Ballard, and, importantly, result in an unwarranted intrusion into protected First Amendment activity.

As an alternative, Ballard proposed to modify Plaintiffs' subpoena to request all "***documents and records referring to misconduct (e.g., sexual harassment, sexual assault) or reckless behavior by Uber drivers.***" This information would seem to get to the crux of Plaintiffs' expressed need for information demonstrating Uber's knowledge and intentions as to the conduct of its drivers. Plaintiffs rejected this proposal.

A discussion of Ballard's rationale for requiring a balancing test and applying exacting scrutiny to Plaintiffs' motion to compel follows.

**Compelled disclosure of First Amendment protected activity must undergo a balancing test that applies "exacting scrutiny."**

Pursuant to the Federal Rules of Civil Procedure (FRCP), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit." FRCP 26(b). Subpoenas should not impose an undue burden or expense on a nonparty who is subject to a subpoena, *see* FRCP 45(d)((1), and the court "must quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no waiver or exception applies; or (iv) subjects a person to undue burden." FRCP 45(d)(3)(A).

The First Amendment to the United States Constitution guarantees the right to speech, assembly, and to petition for the redress of grievances. *See* U.S. Const. amend. I. In cases involving compelled disclosure of First Amendment protected activity, courts will generally balance the intrusion into the protected activity against the requesting party's need for relevant information, applying "exacting scrutiny" to the request. For example, in *Americans for Prosperity Foundation v. Bonta*, the Supreme Court of the United States refused to force nonprofit organizations to comply with a California requirement that they file copies of their IRS returns listing major donors with the State's Attorney General. *See* 594 U.S. _; 141 S. Ct. 2373 (2021). The Court found that California's requirement did not survive exacting scrutiny, which requires that the compelled disclosure be narrowly tailored in that there be a substantial relation between the disclosure requirement and a sufficiently important governmental interest. *Id. at* 2385 (2021).

First Amendment protection applies in the context of discovery involving private parties. *See Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (First Amendment may be applicable in context of discovery orders, even if all the litigants are private parties). More specifically, in *Perry v. Schwarzenegger,* 591 F.3d 1126 (9th Cir. 2009), the U.S. Court of Appeals for the Ninth Circuit adopted a two-part framework for evaluating compelled disclosure of a civil subpoena seeking information implicating the associational rights of members of an organization advocating for adoption of a controversial California ballot proposition.[3] *Perry's* two-part test requires that the party asserting the privilege demonstrate a p*rima facie*

---

[3] The subpoena in this case was issued on behalf of private parties who had initiated a lawsuit challenging the Constitutionality of Proposition 8, which amended the California Constitution to provide that only marriage between a man and a woman was valid.

showing of arguable First Amendment infringement, and if this is accomplished, shifts the burden to the party seeking the disclosure to demonstrate a "compelling governmental interest … [and] the 'least restrictive means' of obtaining the information." *Id.*  591 F.3d at 1140-41.

While *Bonta* and *Perry* concern attempts to compel disclosure of information from membership organizations engaged in advocacy (*i.e.,* seeking information about their membership, donors, and activities), compelled disclosure that infringes on other types of protected First Amendment activity also requires the application of exacting scrutiny.  In this regard, laws requiring the disclosure of lobbying and campaign activities are subjected to exacting scrutiny, *see National Ass'n of MFRS v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009); and *Buckly v. Valeo*, 424 U.S. 1, 65 (1976), and *Noerr-Pennington* clearly establishes that the types of activities in which Plaintiffs seek in compel disclosure are First Amendment protected.

Plaintiffs' subpoena makes broad inquiries into a list of various "key lobbying issues" without describing in any particularity the information being sought or explaining why that information is highly relevant to their claims against Uber.  As explained above, the lobbying activity relating to each of these subject matters was multifaceted and would likely have been focused on Uber's general business interests.  Moreover, as a practical matter, it seems highly unlikely that in preparing to engage in public advocacy with policymakers and the media through its lobbyists that Uber would impart information that could be construed to suggest the company had knowledge of improper or reckless conduct by rideshare drivers or was seeking legislative/regulatory action for the purpose of protecting itself against liability for such misconduct.

**Plaintiffs' requests are overly broad and not proportional to the needs of Plaintiffs' case.**

Even if the court declines to apply a balancing test with exacting scrutiny to Plaintiffs' motion to compel, Plaintiffs' requests nevertheless are overly broad and not proportional to the needs of Plaintiffs' case.  As such, they would impose an undue cost and burden on Ballard, a nonparty to the litigation.

In an attempt to demonstrate their efforts to minimize Ballard's burden in complying with their subpoena, Plaintiffs' Letter Brief states that they "withdrew seven requests and modified the remaining ten, "limiting the requests to a discrete set of 'key lobbying issues.'"  Plaintiffs' Letter Brief, p. 2.  This is not as meaningful as Plaintiffs would have the court believe.  Five of those seven requests were largely redundant, and their removal does little, if anything, to limit the subpoena's scope because Plaintiffs' list of "key lobbying issues" covers most of the very same information.  As to the other two requests that were removed, they were clearly overly broad to begin with, generally seeking all communications with Uber or documents exchanged with Uber.[4]

According to Plaintiffs' Letter Brief, they are seeking information from Ballard in order to learn of and understand "Uber's knowledge of and reaction to sexual assault," "Uber's control over its employees," "Uber's duty to riders," and "Uber's knowledge of the risks riders face" (hereinafter, "Plaintiffs' Informational Needs").   But the modified subpoena proposed by Plaintiffs goes well beyond these purposes and would require Ballard to identify and produce any communications and documents (including those with legislators, other government employees, and the media) relating to its lobbying activities for Uber on the list of key lobbying issues, which are as follows:  (a) classification of rideshare drivers as independent contractors or employees; (b) classification of rideshare companies as "transportation network companies" (TNCs); (c) background check requirements for rideshare drivers, including the use of biometric or fingerprint screening; and (d) sexual assault." Plaintiffs' Letter Brief, Exhibit C ("Key Lobbying Issues").   These key lobbying issues are too broad in nature and should be

---

[4] See footnote 2 regarding Plaintiffs' limitation as to the time period covered by the subpoena.

modified, as previously proposed by Ballard, to *"documents and records referring to misconduct (e.g., sexual harassment, sexual assault) or reckless behavior by Uber drivers."*

For example, as previously explained, companies routinely seek to classify their workers as independent contractors and have actively lobbied Congress and the Department of Labor over the years for more flexibility in this regard.  Thus, seeking any communications and documents relating to lobbying for the classification of rideshare drivers as independent contractors or employees is likely to yield information largely, if not entirely, extraneous to Plaintiffs' claims.

This brings up another point.  Plaintiffs have not represented any knowledge of, or reason to believe there exists, communications or documents in Ballard's possession that are potentially relevant to their case. Given the amount of time that has passed since Ballard last represented Uber (Dec. 2020), and that the representation dates back to 2014, before requiring Ballard to undergo a potentially costly and time-consuming review of its records, Plaintiffs should be expected to provide greater particularly in specifying the information they desire and, at a minimum, should have good reason to believe it exists.  Plaintiffs have done neither, suggesting that their requests are purely speculative.

**<u>Conclusion</u>**

For the foregoing reasons, Ballard respectfully asks the court to deny Plaintiffs' motion to enforce the subpoena they have issued to Ballard, or, in the alternative, to modify the subpoena in line with Ballard's earlier proposal.

Respectfully submitted,

*William Farah*

BY:  William J. Farah
BERKE FARAH, LLP
*Counsel for Ballard Partners, Inc.*

701 8th St. NW, Suite 620
Washington, D.C.  20001
Telephone:  (202) 669-9811
Email:  wfarah@berkefarah.com

5