**COVINGTON**

BEIJING   BOSTON   BRUSSELS   DUBAI   FRANKFURT
JOHANNESBURG   LONDON   LOS ANGELES   NEW YORK
PALO ALTO   SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Lindsey Barnhart

Covington & Burling LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
T  +1 650 632 4706
lbarnhart@cov.com

By ECF                                                                                               September 6, 2024

The Honorable Lisa J. Cisneros
United States Magistrate Judge
 for the Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

Re:  *In re Uber Techs. Passenger Sexual Assault Litig.*, No. 23-md-03084 (N.D. Cal.)

Dear Judge Cisneros:

We represent nonparty Chertoff Group, LLC and write pursuant to the Court's August 16, 2024 Order Regarding Discovery (ECF No. 1068) to request that the Court quash Plaintiffs' subpoena to Chertoff Group (ECF No. 1549, Ex. A) as to "interview materials" for individuals listed in Appendix C of the report titled "An Evaluation of Safety Incident Categorization Capabilities for Uber" dated December 5, 2019 (the "Report") (*see id.*, Ex. E at 31).  To avoid repetition, we incorporate Uber's letter by reference and write separately here only to address the burden that would be imposed by Plaintiffs' request for "interview materials" and to correct inaccuracies in Plaintiffs' brief.

At the outset, it should be noted that Chertoff Group sought to avoid the Court's involvement and, having been unsuccessful in that effort, significantly narrowed the issues in dispute and facilitated the resolution of those issues in this consolidated forum.  Chertoff Group voluntarily consented to transfer any motions concerning the subpoena from the District of Columbia to the Northern District of California.  *See id.* at 1.  Chertoff Group then voluntarily agreed to produce (after Uber has the opportunity to review and assert its available and applicable privileges): (1) the full set of 57 documents listed in Appendix B of the Report, which Chertoff Group believes comprises all of the substantive written materials provided by Uber and relied on by Chertoff Group when drafting the Report; and (2) the draft versions of the Report that were communicated between Uber and Chertoff Group.  *See id.*, Ex. D.  Chertoff Group did so despite the subpoena's deficiencies and Chertoff Group's concern that the subpoena is intended, at least in part, to circumvent claims of attorney-client privilege, attorney work product, and confidentiality that may be asserted by Uber.  *See id.*, Ex. B at 1–3.  It is with that

COVINGTON

The Honorable Lisa J. Cisneros
September 6, 2024
Page 2

background that the Court should consider the validity of Chertoff Group's objections to producing this single, outstanding category of documents.

Rule 45 provides that a court must modify or quash a subpoena that, among other things, "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(i), (iii), (iv). "Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor [related to undue burden] when determining motions to quash a subpoena." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). Further, "[t]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982)).

Plaintiffs' request that Chertoff Group produce "interview materials" for individuals listed in Appendix C of the Report would subject Chertoff Group to undue burden. The term "interview materials" appears nowhere in the subpoena, but based on Plaintiffs' brief it appears that they are requesting "interview transcripts, notes, impressions, or other materials, from these interviews[.]" ECF No. 1549 at 3.[1] Although Plaintiffs attempt to downplay Chertoff Group's burden concerns by stating that the Report identifies six individuals who worked on the Report[2] as well as 15 individuals interviewed during the course of Chertoff Group's engagement (*Id.* at 4), this proves the point Plaintiffs seek to refute. Plaintiffs are requesting that Chertoff Group search the files of at least six individuals — some of whom are not Chertoff Group employees — for an ill-defined set of materials dating back more than five years relating to interviews of 15 individuals. Unlike the materials that Chertoff Group has agreed to produce — *i.e.*, the 57 documents listed in Appendix B to the Report as well as certain drafts of the Report — this request is not well-defined and is unduly burdensome given the circumstances at issue as well as the realities of modern discovery.

Moreover (with the caveat that Chertoff Group is not a party to the action and therefore is not fully aware of the parties' claims, defenses, or discovery efforts to date), it appears that Plaintiffs are requesting information that is either not relevant to this action or is more appropriately sought from Uber. On the one hand, it is difficult to

---

[1] Although Plaintiffs posit that "Chertoff has in its possession" these materials (ECF No. 1549 at 3), no representations have been made about whether any such documents, many of which date back more than five years, are (or ever were) in Chertoff Group's possession.

[2] To avoid confusion, it should be noted that the Report states that the Chertoff Group team "included" these persons (*see* ECF No. 1549, Ex. E at 25), which is different than Plaintiffs' contention that these are "all the individuals that performed work on the Report" (*Id.* at 4).

COVINGTON

The Honorable Lisa J. Cisneros
September 6, 2024
Page 3

conceive how materials that were not sent to Uber, such as Chertoff Group's internal notes and impressions, could be relevant, and indeed Plaintiffs do not explain how they are. On the other hand, Plaintiffs should seek from Uber first any discovery into communications between Uber and Chertoff Group. *See, e.g.*, *Davis v. Pinterest, Inc.*, 2021 WL 3044958, at *3 (N.D. Cal. July 20, 2021) (quashing nonparty subpoena where the requesting party had not first sought the same materials from the opposing party, who would have been expected to have them).[3] For example, if Plaintiffs want taxonomy-related information from any of the 15 Uber employees identified in Appendix C to the Report, they could request that these individuals be included among the 55 Uber custodians. *See* ECF No. 1068 at 2–3 (staying enforcement of Lyft subpoena due to concerns that Plaintiffs had "dropped" custodians expected to have the records sought by the subpoena). And the fact that Uber has taken the position that some or all of the documents requested by the subpoena are privileged only further underscores why Plaintiffs should seek these materials from Uber first. *See Genus Lifesciences Inc. v. Lannett Co., Inc.*, 2019 WL 7313047, at *1, *5 (N.D. Cal. Dec. 30, 2019) (quashing nonparty subpoena where "it would result in a significant expense, could subject [the nonparty] to sanctions from [defendant] for producing privileged or confidential information, and is unduly burdensome because the requested documents are also in [defendant's] possession.").

In addition, the proposed discovery is not proportional to the needs of the case, when considering the other discovery that has or will be produced. *See* Fed. R. Civ. P. Rule 26(b)(1). Plaintiffs purport to need information regarding "Chertoff's evaluation of the Taxonomy" (*see* ECF No. 1549 at 2), but Uber has already produced the 33-page Report, which details Chertoff Group's strategic-level evaluation of Uber's application of its sexual harassment, sexual misconduct, and sexual assault taxonomy to its U.S. rideshare platform incident data set and its classification of incidents of physical assault or theft and robbery that result in fatality (*see generally id.*, Ex. E). Plaintiffs have not articulated a need for further discovery beyond the Report, let alone in addition to the productions Chertoff Group has agreed to make and the productions that Uber has or will be making. Put simply, the marginal value of the "interview materials" is minimal (if it exists at all), and accordingly "the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. Rule 26(b)(1).

For the foregoing reasons, as well as the reasons set forth in Uber's letter, the Court should quash Plaintiffs' subpoena to Chertoff Group as to "interview materials" for individuals listed in Appendix C of the Report.

---

[3] Plaintiffs offer no explanation for the assertion that "Uber does not possess [interview materials] and, in fact, it does not appear Uber ever did." *Id.* at 4.

**COVINGTON**

The Honorable Lisa J. Cisneros
September 6, 2024
Page 4

                                                    Respectfully submitted,

                                                     _/s/ Lindsey Barnhart_

Lindsey Barnhart (Bar No. 294995)
COVINGTON & BURLING LLP
3000 El Camino Real, 10th Floor
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone: +1 (650) 632-4700
Facsimile: +1 (650) 632-4800
Email: lbarnhart@cov.com

*Counsel for Chertoff Group LLC*