September 6, 2024



*Via ECF*
The Hon. Lisa J. Cisneros, United States Magistrate Judge
Phillip Burton Federal Building, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Michael B. Shortnacy
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
**t** 424.285.8330
mshortnacy@shb.com

Re:   *In re: Uber Technologies, Inc., Passenger Sexual Assault Litig.*, Case No. 3:23-md0384-CRB

Judge Cisneros:

Defendants Uber Technologies, Inc., Raiser, LLC, and Rasier-CA, LLC (collectively, Uber) respectfully ask the Court to quash Plaintiffs' subpoena to Ballard Partners under Rule 45 or enter a protective order under Rule 26 barring its enforcement, for the following reasons: (1) lobbying discovery is categorically irrelevant because petitioning the government is protected by the First Amendment and cannot form the basis of any of Plaintiffs' claims; (2) Plaintiffs have not identified any other viable theories of relevance for the discovery they seek from Ballard Partners that do not involve seeking to hold Uber liable for lobbying; (3) even if relevant, Plaintiffs' requests do not satisfy the exacting scrutiny standard that applies to disclosures that implicate First Amendment rights; and (4) Plaintiffs' requests to Ballard Partners, even as narrowed, are overbroad.

In the JCCP, Judge Schulman carefully considered and rejected the same arguments MDL Plaintiffs make in their motion here, denying the JCCP plaintiffs' motion to compel lobbying discovery from Uber. *See* Order on Pls.' Mot. for Order Comp. Marketing & Lobbying Docs., JCCP No. 5188 (Feb. 6, 2024) ("The Court is unpersuaded that Plaintiffs' allegations regarding Uber's lobbying activities regarding background checks or sexual assault render their requests for lobbying documents relevant to the issues or reasonably likely to lead to the discovery of admissible evidence.") ("JCCP Lobbying Order") (Attached as Exh. 1 to Gromada Declaration).  This Court should do likewise.

**I.   UBER HAS STANDING TO CHALLENGE THE BALLARD PARTNERS SUBPOENA.**

Plaintiffs repeat the arguments on standing that this Court has previously rejected.  *Compare* Pls.' Mot. at 5 ("Uber lacks standing to challenge third party subpoenas for relevance."), *with* ECF 695 at 4-5 (noting Uber's standing under Rules 26 and 45 and concluding, "[t]he Court will entertain all of Uber's arguments as to the subpoenas, even where the nonparty has not moved to quash but instead stood on its objections, including those related to relevance and burden.").  Standing limits the type of judicial relief a party may seek, not the arguments a party may make in seeking that relief once standing is established.  Uber has standing to challenge the Ballard Partners subpoena because it seeks Uber's non-public, confidential documents and communications.  *See* Gromada Decl. ¶¶ 5-7.

**II.   LOBBYING IS OUTSIDE THE SCOPE OF DISCOVERY BECAUSE IT IS NOT RELEVANT OR PROPORTIONAL.**

Plaintiffs' subpoenas to Ballard Partners should be quashed, or a protective order issued precluding enforcement.  Lobbying is categorically irrelevant and not proportional to the needs of the case.  Plaintiffs attempted to make Uber's lobbying related to Ubers' independent drivers' status given independent contractors and background check mandates a key issue in this litigation.  *See* Master Long-Form Complaint ¶¶ 31, 156, 184, ECF No. 269 (Feb. 25, 2024).  They wrongfully claim that "Uber wrote and rigged the rules by passing legislation to serve its own needs, not to protect its riders," by lobbying on various unspecified laws and regulations.  Not only are Plaintiffs wrong on the facts, but they are also wrong as to the law.  Facts aside, the First Amendment provides absolute protection for petitioning the government.

Under the *Noerr-Pennington* doctrine, liability may not be imposed for petitioning the government, including through lobbying. Plaintiffs' arguments show that is precisely their aim, stating that they want to "discover and tell the rest of the story, [about] how Uber crafted th[e] rules" governing its operations. Pls.' Mot. at 5. But Plaintiffs' story is legally irrelevant to their claims and Uber's defenses.

### A. Lobbying is Protected from Liability under the *Noerr-Pennington* First Amendment Doctrine.

As Judge Schulman correctly ruled, Uber's lobbying and government affairs activities are categorically irrelevant because lobbying is protected by the First Amendment and cannot form the basis of Plaintiffs' claims. *See* JCCP Lobbying Order ("The Court is unpersuaded that Plaintiffs' allegations regarding Uber's lobbying activities regarding background checks or sexual assault render their requests for lobbying documents relevant to the issues or reasonably likely to lead to the discovery of admissible evidence.").

"The *Noerr–Pennington* doctrine derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.' 'The doctrine immunizes petitions directed at any branch of government, including the executive, legislative, judicial and administrative agencies.'" *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022) (citation omitted); *see also Powertech Tech., Inc. v. Tessera, Inc.*, 872 F. Supp. 2d 924, 931 (N.D. Cal. 2012) (noting that the *Noerr-Pennington* doctrine protects against liability "from antitrust, statutory, or tort liability"). A party's motives for petitioning the government are irrelevant to the First Amendment's protections. *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) ("That a private party's political motives are selfish is irrelevant.").

Under Rule 26(b)(1), discovery is limited to "nonprivileged matter that is ***relevant to any party's claim or defense*** and proportional to the needs of the case." (emphasis added) Subpoenas under Rule 45 are subject to Rule 26's limitations on the scope of discovery. *E.g.*, *Huynh v. Wal-Mart Assocs., Inc.*, No. 18-CV-01631-VC (SK), 2019 WL 13221170, at *1 (N.D. Cal. Aug. 1, 2019). In fact, non-party discovery "require[s] a stronger showing of relevance than for simple party discovery." *E.g.*, *Pandora Media, LLC v. Word Collections, Inc.*, No. 2:23-MC-140-MCS-MAR, 2023 WL 9419594, at *3. Uber's constitutionally protected lobbying cannot be a part of Plaintiffs' claims. As a result, under Rule 26(b), lobbying is beyond the scope of discovery.

Plaintiffs argue they should be allowed lobbying discovery because "the applicability of *Noerr-Pennington* under these circumstances has not been established," Pls.' Mot at 5, because "for example, lobbied regulators as well as legislatures," *id.* at 5 n.10. Not so. The case law is clear that "[t]he doctrine immunizes petitions directed at *any branch of government*, including the executive, legislative, judicial and administrative agencies.'" *B&G Foods*, 29 F.4th at 535 (emphasis added). In a footnote, Plaintiffs cite two cases addressing the "sham" exception to the *Noerr-Pennington* doctrine, but make no attempt to establish that it applies to any particular act of lobbying by Uber. In fact, Plaintiffs have not pleaded any facts supporting the application of the sham exception, or even identified which lobbying acts fall outside the scope of *Noerr-Pennington*. The Ninth Circuit "employ[s] a heightened pleading standard" for the application of the sham exception, which Plaintiffs cannot meet. *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir. 1998); *Evans Hotels, LLC v. Unite Here! Loc. 30*, No. 18-CV-2763-RSH-AHG, 2023 WL 4998062, at *6 (S.D. Cal. July 6, 2023); *see also* JCCP Lobbying Order at 8 n.3 ("Plaintiffs do not allege that [the sham exception] applies. Nor could they."). The Ninth Circuit has recognized that the "sham" exception has little to no applicability in the context of lobbying. *See Kottle*, 146 F.3d at 1061 (explaining that the "sham litigation" factors do not apply in the legislative context and that "the scope of the sham exception to the *Noerr–Pennington* doctrine [in the context of petitioning] the legislature … is extraordinarily narrow"). Regardless, this exception applies ***only*** to "a defendant whose activities are not

genuinely aimed at procuring favorable government action at all." *Kottle*, 146 F.3d at 1060 (quoting *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991)); *see also B&G Foods*, 29 F.4th at 535-41 (9th Cir.). The "sham" exception applies where a party "used government processes, as opposed to the outcome of those processes, as a mechanism to injure." *B&G Foods*, 29 F.4th at 538. Plaintiffs do not contend that Uber was not genuinely attempting to influence government action with its lobbying; therefore the sham exception is inapplicable, and the *Noerr-Pennington* First Amendment protection applies.

### B.     Plaintiffs Have Not Shown Any Independent Basis for Relevance of Lobbying Discovery.

Plaintiffs rely on the unremarkable proposition that *Noerr-Pennington* is not a categorical bar on discovery. Pls.' Br. at 5. But they do not dispute, nor could they, that *Noerr-Pennington* bears on the relevance and proportionality requirements of Rule 26(b). Plaintiffs assert that they "do not seek to hold Uber liable for the fact of its lobbying," *id.* at 6, n.11, but their arguments show they are doing just that given they have not articulated any other viable theory of relevance for the lobbying discovery they seek from Ballard Partners.

**Uber's Defenses:** Plaintiffs argue that Uber's lobbying on issues related to Uber's defenses—such as its classification as a transportation network company (TNC), its drivers' classification as independent contractors, or safety requirements on issues such as background checks—are relevant. Specifically, "Plaintiffs seek to use these documents to show Uber's motives and plan in shaping the statutes that Uber will undoubtedly rely on at trial for" its defenses. *Id.* at 5. Plaintiffs argue that they "must be permitted to discover and tell the rest of the story, including how Uber crafted those rules …." *Id.*

Plaintiffs' arguments are flawed. They rest on a false premise: that whether a party lobbied for a law related to a legal defense affects the applicability of that legal defense. But Plaintiffs cite no authority for this novel argument. To the contrary, whether a party lobbied for a law is legally irrelevant to whether that law applies. As Judge Schulman recognized, case law "conclusively undermines Plaintiffs' novel theory that evidence that Uber advocated for a law or regulation concerning background checks, for example, would enable Plaintiffs to 'attack' any defense that Uber complied with it." JCCP Lobbying Order at 9-10 (discussing *Mercury Casualty Co. v. Scottsdale Indemnity Co.*, 156 Cal.App.4th 1212 (2007)). That Uber lobbied on issues related to independent contractor status, for example, has no bearing on whether Uber's independent drivers are, in fact, independent contractors under the applicable legal standards. Put simply, that law is the law, regardless of whether a party lobbied for that law. *See, e.g. Delaware River & Bay Auth. v. Delaware Outdoor Advert., Inc.*, No. 15922, 1998 WL 83056, at *4 n.14 (Del. Ch. Feb. 20, 1998) ("The exercise of a constitutionally protected right [to lobby] cannot be used to defeat the effective implementation of public policy under the label of 'unclean hands.'").

A ruling to the contrary would be untenable. Would Uber be entitled to discovery to show it was not a driving force behind legislation bearing on the standard of care and subpoena legislators, lobbyists for other companies, and campaign donors? Of course not, because the manifold influences on the passage of legislation and regulations is irrelevant to whether those laws apply. Plaintiffs' stated goal demonstrates their actual motivation: they want to "tell the rest of the story" about Uber's lobbying to juries, effectively asking juries to *disregard* the law because of Uber's lobbying—in direct contradiction with the First Amendment.

**Uber's Motives:** Plaintiffs argue that Uber's lobbying is relevant to Uber's "motives" or "plan." Pls.' Mot. at 4-6. But rather than identifying any "motive" that is relevant to any element of any of their claims, the "motive" Plaintiffs reference is Uber's "motive for lobbying." In other words, Plaintiffs seek to show that Uber was acting out of self-interest when it engaged in lobbying. *See e.g., id.* at 3-4 (Plaintiffs arguing that "documents related to Uber's efforts to define and secure TNC status will provide critical evidence of Uber's motives and plan in lobbying for the TNC classification, demonstrating that Uber wrote

and rigged the rules by passing legislation to serve its own needs, not to protect its riders."). But this theory runs headlong into the First Amendment. The Supreme Court has clearly held that a party's motives for petitioning the government are irrelevant to the First Amendment's protections under the *Noerr-Pennington* doctrine. *City of Columbia*, 499 U.S. at 380 ("That a private party's political motives are selfish is irrelevant."). Self-interested lobbying cannot be relevant to any of Plaintiffs' claims, nor can it be used to defeat any of Uber's defenses.

**Uber's Knowledge:** Plaintiffs argue that they "do not seek to hold Uber liable for the fact of its lobbying …, but rather for evidence of Uber's knowledge of safety risks demonstrated in documents about its efforts to lobby for reduced background check and duty-related (TNC, employment) standards." Pls.' Mot. at 6. But Plaintiffs have not identified with any specificity what knowledge they are looking for, why evidence of that knowledge is likely to be contained in the discovery they seek, what lobbying on what legislation and regulation will show that knowledge, and how that knowledge is relevant to their claims and Uber's defenses. Simply reciting the magic word "knowledge" is not sufficient to get around Uber's First Amendment rights.

For example, Plaintiffs argue that discovery of lobbying related to drivers' independent contractor status "would shed light on the Uber-driver relationship and Uber's knowledge and intentions concerning control over its drivers." *Id.* at 3. But a putative employer's "knowledge and intentions" are irrelevant to employee or independent contractor status—actual control is. *E.g.*, *S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 769 P.2d 399, 406 (Cal. 1989) (common law test looks to whether details of work are controlled by putative employer).

Similarly, Plaintiffs argue that lobbying on the topic of sexual assault "goes directly to Uber's knowledge of and reaction to sexual assault." Pls.' Mot. at 3. But Plaintiffs do not identify any lobbying performed by Ballard Partners on Uber's behalf (or by any lobbying entity on Uber's behalf) related to sexual assault. In fact, Plaintiffs cite public lobbying disclosure filings, *see id.* at 1-2 n.5, that detail the topics on which Ballard Partners lobbied for Uber, which do not include sexual assault. Plaintiffs also ignore that Ballard Partners proposed limiting the subpoena to "documents and records referring to misconduct (e.g., sexual harassment, sexual assault) or reckless behavior by Uber drivers."

Plaintiffs also argue that discovery of lobbying related to background checks is relevant to show Uber's knowledge regarding the effectiveness of background checks. Pls.' Mot. at 4. To start, Uber has already produced over 6,700 documents related to background checks and will produce many more as custodial productions continue. *See* Gromada Decl. ¶ 9. Plaintiffs will have ample opportunity to discover what Uber knew about the effectiveness of its background checks without burdening a non-party based on speculation that lobbying might show something about Uber's knowledge. Regardless, Plaintiffs do not identify *any* particular pieces of legislation or regulation related to background checks on which Ballard Partners lobbied for Uber. The lobbying disclosures cited by Plaintiffs indicate that Ballard Partners did not lobby on legislation or regulation on background check requirements. *See* Pls.' Mot. at 1. It is pure speculation that Ballard Partners' lobbying, even if it were to touch on background check regulatory requirements, shows anything about Uber's knowledge of the *effectiveness* of various types of background checks. Companies routinely provide input to lawmakers and regulators on the laws and regulations that affect their business. Such lobbying is not likely to reveal anything about Uber's knowledge of the effectiveness of background checks. Nor does the fact of lobbying negate Uber's compliance with applicable regulations. Instead, Plaintiffs' goal is to unfairly prejudice juries by telling them that "Uber lobbied extensively to avoid regulations that would have made Uber Riders safer during rides." Pls.' Mot. at 2. But Uber cannot be penalized for petitioning the government, as it is entitled to do under the First Amendment.

### III. PLAINTIFFS' LOBBYING REQUESTS DO NOT SATISFY EXACTING SCRUTINY.

The U.S. Supreme Court has held that mandated disclosures that implicate First Amendment rights must satisfy "exacting scrutiny. *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 607-15 (2021). Under this standard, there must be "a substantial relation between the disclosure requirement and a sufficiently important governmental interest" to justify the disclosure. *Id.* Forced disclosures must "be narrowly tailored to the" important interest they serve. *Id.* at 608. This standard applies equally to discovery mandated in litigation between private parties. *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 n.5 (9th Cir. 2009); *Carrier v. Ravi Zacharias Int'l Ministries, Inc*., No. 1:21-CV-3161-TWT, 2023 WL 2355891, at *4 (N.D. Ga. Mar. 3, 2023) (collecting cases).

"Narrow tailoring is crucial where First Amendment activity is chilled—even if indirectly—'[b]ecause First Amendment freedoms need breathing space to survive.'" *Bonta*, 594 U.S. at 609. The fact that a protective order may be in place does not vitiate the First Amendment's protections. *See, e.g.*, *id.* at 616; *Perry*, 591 F.3d at 1143. Here, disclosure of non-public, confidential communications regarding Uber's lobbying efforts would chill internal discussions related to lobbying strategy or otherwise engaging in the First Amendment right to petition the government. *See* Gromada Decl. ¶ 8; *cf. Calzone v. Summers*, 942 F.3d 415, 422 (8th Cir. 2019) (en banc) (applying exacting scrutiny to lobbying disclosure requirement).

"Importantly," as the Ninth Circuit has explained, "the party seeking []discovery" implicating First Amendment rights "must show that the information sought is ***highly relevant*** to the claims or defenses in the litigation—***a more demanding standard of relevance*** than that under Federal Rule of Civil Procedure 26(b)(1). The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Perry*, 591 F.3d at 1141 (emphases added).

Here, Plaintiffs' requests are far from narrowly tailored. Plaintiffs advance speculative theories about what their expansive discovery requests might show. As shown above, Plaintiffs' requests are irrelevant and seek only to smear Uber in front of juries for engaging in lobbying. But even if the requests were marginally relevant, they certainly are not "highly relevant" or limited in scope to what they need to litigate their cases without unduly burdening Uber's First Amendment rights.

### IV. PLAINTIFFS' REVISED REQUESTS ARE STILL OVERBROAD.

While Plaintiffs have narrowed the extremely overbroad requests they initially demanded of Ballard Partners, their revised requests are still substantially overbroad. Plaintiffs' requests, with one exception seek all documents and communications related to: (A) classification rideshare drivers as independent contractors or employees; (B) classification of rideshare companies as transportation network companies; (C) background check requirements for rideshare drivers; and (D) sexual assault. As detailed above, the fact that Uber may have lobbied on various regulatory requirements has no bearing on Plaintiffs' claims or Uber's defenses.

Moreover, even if there were some marginally relevant documents within the scope of Plaintiffs' requests, they are impermissibly overbroad, unduly burdensome, and not proportional to the needs of the case. Plaintiffs' request for "documents reflecting the scope of work [Ballard Partners was] retained to do for Uber, including but not limited to contracts, agreements, and statements of work," has no limitation on subject matter. It would encompass categories of work beyond even Plaintiffs' broad categories. And

Plaintiffs request ***all***[1] documents and communications "***relating in any way*** to lobbying work" performed for Uber. These requests would impose enormous burden on Ballard Partners

      If the Court were to permit some lobbying discovery, it should restrict that discovery similar to how it has narrowed prior subpoenas. For example, in ruling on the subpoena to Checkr (which performs background checks, a topic the Court found to be "highly relevant," ECF 695, p.12), the Court narrowed Plaintiffs' requests to: (1) "policies and procedures regarding how Checkr conducted, monitored, and audited driver background checks and criminal offenses for Uber"; (2) "documents that show any recommendation it has made to improve passenger safety with respect to the risk of sexual assault and sexual misconduct"; and (3) "'statements of work' and comparable records that describe Checkr's role in carrying out or facilitating Uber's driver deactivation policies and procedures." (ECF 695, pp.9-13) Similarly with Ballard Partners, if the Court were to allow any lobbying discovery (and it should not), it should be limited to (1) documents sufficient to show the matters on which Ballard Partners lobbied on behalf of Uber, on legislation or regulation the Court deems relevant; (2) documents sufficient to show the positions taken by Ballard Partners in such lobbying; and (3) documents sufficient to show the scope of work performed by Ballard Partners in such lobbying.

\* \* \* \* \*

      For the reasons set forth above, the Court quash Plaintiffs' subpoena to Ballard Partners under Rule 45 or enter a protective order under Rule 26 barring its enforcement.

Sincerely,
By: */s/ Michael B. Shortnacy*
Michael B. Shortnacy
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
mshortnacy@shb.com

---

[1] Plaintiffs struck the word "all" from their requests (*e.g.,* changing "all communications" to "communications"). This appears to be a window dressing alteration that makes no difference to the broad scope of the requests. If it were a substantive narrowing, it would render the requests vague and ambiguous by failing to identify which documents or communications Plaintiffs seek.