IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

In re: SUBPOENA TO RAPE ABUSE AND INCEST NATIONAL NETWORK ) CIVIL NO.: 24-0073-ACR

PLAINTIFF'S STEERING COMMITTEE,

Petitioner,

vs.

RAPE ABUSE AND INCEST NATIONAL, NETWORK,

Respondent.

August 6, 2024
Washington, D.C.
2:00 p.m.

Transcript of Motions Hearing
Before the Honorable Ana C. Reyes
United States District Judge

APPEARANCES:

For the Plaintiff: Marlene Jaye Goldenberg, Esquire
Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW
Third Floor
Washington, DC 20016

For the Defendant: Samuel M. Adelmann, Esquire
John Sullivan, Esquire
Mcguire Woods
1750 Tysons Boulevard
Suite 1800
Tysons Corner, VA 22102

Reported by: Christine T. Asif, RPR, FCRR
Federal Official Court Reporter
333 Constitution Avenue, NW
Washington, D.C. 20001
(202) 354-3247

Proceedings recorded by machine shorthand; transcript produced by computer-aided transcription

P R O C E E D I N G S

THE CLERK: Case 24-73 Plaintiff's Steering Committee versus Rape and Incest Abuse National Network.

Counsel, please approach the podium and state your name for the record, starting with plaintiff's counsel.

MS. GOLDENBERG: Good afternoon, Your Honor. Marlene Goldenberg on behalf of the Plaintiff's Steering Committee.

THE COURT: Good morning -- good afternoon.

MS. GOLDENBERG: Whatever it is.

MR. SULLIVAN: Good afternoon, Your Honor. My name is John Sullivan, I'm not making an appearance today, but Mr. Adelmann he is a few blocks --

THE COURT: Are you an attorney?

MR. SULLIVAN: Yes, I am.

THE COURT: Are you an attorney for RAINN?

MR. SULLIVAN: I'm not making an appearance. I'm here to --

THE COURT: I'm asking if you're an attorney for RAINN.

MR. SULLIVAN: I'm not an attorney for RAINN in this court --

THE COURT: Why are you here?

MR. SULLIVAN: I'm assisting Mr. Adelmann in taking notes just --

THE COURT: Are you an attorney?

MR. SULLIVAN: Yes.

THE COURT: Who is your client?

MR. SULLIVAN: It would be RAINN, but I --

THE COURT: Okay. Well, then you're up. We start at 2:00 --

MR. SULLIVAN: Your Honor --

THE COURT: No. We are starting and you're a lawyer and so sit down, we're going.

MR. SULLIVAN: Your Honor --

THE COURT: Sit down. We're going.

Up. First off, in the future, pro hac vice applications are not sort of "do them if you want." All right. Your first filing had a bunch of pro hacs that weren't made. And then my clerk called to find out what was going on. And the answer was, well, this is just like -- we just want you to transfer this, so we're not going to be here long enough for us new pro hacs. In the future do not assume what I'm going to do. And even if you were just going to be here for a minute, if there's a filing, there's a pro hac vice process, we need to follow it, okay?

MS. GOLDENBERG: Understood, Your Honor.

THE COURT: All right. Secondly, I'm not transferring the case. We're going to this settled today.

MS. GOLDENBERG: Okay.

THE COURT: Third, I'm not going to argue or hold that they waived their objections because whatever, I'm not going to hold that. You can be seated.

You. All right. I am not going to quash the subpoena. And we are going to all figure out what you guys are going to agree to today, because we are not leaving here until you guys produce something, because it is totally inappropriate not to agree to produce any documents.

Now, have you two had actual or have you all had actual meet and confers about what documents would get put over?

MR. SULLIVAN: I have not personally. Mr. Adelmann has. And he is a few blocks away --

THE COURT: I don't care how many blocks away he is. He's not here at 2:00. So do you know what the meet and confers have been?

MS. GOLDENBERG: I do, Your Honor.

THE COURT: All right. Come on up.

MS. GOLDENBERG: The short answer to your question is no, there haven't been substantive meet and confers. RAINN hasn't responded. We did argue some third party subpoena motions out in the MDL. And based on the Court's rulings have narrowed our subpoena, sent narrower requests to RAINN last week, and have not heard back.

THE COURT: Okay. Why haven't they heard back?

Come on up. Why haven't they heard back in a week? Especially, since we were doing this before a conference that I had to get ready for.

MR. SULLIVAN: Your Honor, we have been speaking, we have been --

THE COURT: Well, she just told me you haven't been.

MR. SULLIVAN: And if I may, I am not an attorney who is admitted in the District of Columbia.

THE COURT: I don't care. I'm letting you -- you're in the well of my courtroom and I'm letting you speak.

MR. SULLIVAN: Understood. We have been going back and forth. And I understand that --

THE COURT: Well, why is she telling me that they haven't heard from you in a week?

MR. SULLIVAN: We have -- we did receive some proposed changes to that --

THE COURT: Okay. What was the response?

MR. SULLIVAN: From what I understand it is still -- that is still ongoing.

THE COURT: How is it ongoing and you guys knew you had a hearing in front of me today? Have you responded to the thing that they gave you a week ago?

MR. SULLIVAN: Your Honor, I have not had personally -- not personally worked on that response

specifically, Your Honor. And I am --

THE COURT: Okay. What were the narrowed topics that you gave?

MS. GOLDENBERG: In short, Your Honor, what we're asking for are documents related to two things; one the Safety Advisory Committee and two --

THE COURT: Safety Advisory Committee at Uber?

MS. GOLDENBERG: At Uber that RAINN played a role on. And the second thing are documents related to the development of Uber's taxonomy, which is how they describe different types of sexual abuse. And Uber's publicly available U.S. safety reports, which are also part of our subpoena, detail that RAINN was part of the process of developing both the taxonomy as well as putting together the safety report. And that's --

THE COURT: That's from the Safety Advisory Committee?

MS. GOLDENBERG: I'm sorry.

THE COURT: From the Safety Advisory Committee?

MS. GOLDENBERG: Those played a role in the final product of the U.S. safety report. And we don't know exactly how it worked, because we don't have their documents. But what we are aware of is that they were involved in the Safety Advisory Committee and the final safety report and the development of the taxonomy.

THE COURT: Okay. When I start at 2:00, I start at 2:00, I don't start at 2:03, I don't start at 2:05, I don't start at 2:10. If you're ten minutes early, you're 15 minutes late. And right now you're actually late.

MR. ADELMANN: I apologize, Your Honor. Sincere apologies.

THE COURT: What caused you to be late?

MR. ADELMANN: Your Honor, my office is in Virginia. I was over here at 1:30 and I was looking for parking. I turned around on the D Street underpass and accidentally went down 395 --

THE COURT: All right. All right. She says that she sent you all narrowed requests last week and she hasn't heard back from you all.

MR. ADELMANN: That is correct, Your Honor.

THE COURT: Come on up. Make an appearance and come on up.

MR. ADELMANN: Good morning, Your Honor, Sam -- good afternoon, excuse me, Sam Adelmann from Maguire Woods on behalf of the nonparty RAINN. Your Honor, I did receive Ms. Hoefs' email, I -- it took a while to get a hold of my client. I discussed it with my client just yesterday and was prepared to respond today.

THE COURT: Did you think maybe it would be good to respond to her before I had to call this status conference and

prepare for it.

MR. ADELMANN: Your Honor, I did my level best to get a hold of my client and discuss the limited terms --

THE COURT: What is the response? Are you going to give her the narrowed subpoena documents?

MR. ADELMANN: Well, I think, Your Honor -- I mean, we did want to be heard on the opposition of the motion to transfer.

THE COURT: Well, you're late and I already denied it.

MR. ADELMANN: Understood, Your Honor. I'm happy to speak with Ms. Hoefs in the hallway --

THE COURT: We're going to get this squared away right now. What is your response on her narrowed request?

MR. ADELMANN: Your Honor, we still believe that it's overly broad and unduly burdensome.

THE COURT: What's overly broad? Let's take them one at a time. The Safety Committee documents, and what documents exactly do you want?

MS. GOLDENBERG: What we'd like are the documents that show the role that RAINN played on Uber's Safety Advisory Committee.

THE COURT: Okay. And I'm sure you're happy for documents sufficient to show; right?

MS. GOLDENBERG: Yes.

THE COURT: All right. That's not overly broad. You're producing that. Second?

MS. GOLDENBERG: Second, we'd like the documents relating to the development of Uber's taxonomy.

THE COURT: Okay. All documents or documents sufficient to show?

MS. GOLDENBERG: I mean, I think this is an all documents request, because documents sufficient to show would really just give us definitions for what the taxonomy is, that's available already. What we need to know is specifically how they decided what was going to count and what wasn't.

THE COURT: Okay. What's the response on that?

MR. ADELMANN: Your Honor, I think that the response sort of globally here is the burden it would be on my client to --

THE COURT: You're a third party, this is not -- we're not playing the burden game. Okay. I litigated for 22 years, this is not burdensome. And frankly, you missed the lecture, I gave her a lecture, your lecture was saying no documents whatsoever was totally inappropriate to this subpoena. Which is why I'm super annoyed at both of you for not having met and conferred much earlier on the actual substance, even if you were going to disagree on the transfer or the whatever.

But specific to the request that she just gave, what is the overbroad objection there, because she's narrowed a subpoena that was way overbroad, 11, 12 or 13 areas to just two. The first is not broad at all. The second maybe, but tell me why that's particularly burdensome.

MR. ADELMANN: Well, Your Honor, I still see that there's 12 requests even in the narrowed subpoena, but as to --

THE COURT: I thought you just told me there were only two requests?

MS. GOLDENBERG: I apologize, I was paraphrasing. But basically what it boils down to is that. And we're happy to go with what I put on the record.

THE COURT: Okay. Good. You've got it narrowed to two.

MR. ADELMANN: Well, if it's narrowed to two then --

THE COURT: We have documents sufficient to show the role that you all played on the Safety Advisory Committee. I am confident that that's very easy for you to get to them; right?

MR. ADELMANN: Yes, Your Honor.

THE COURT: Okay. And No. 2 is, you want to say that again for the record?

MS. GOLDENBERG: And I want to clarify that, I guess there's 2A and B, because we didn't talk about the safety

report. But the two that we just talked about is the development of Uber's taxonomy, which goes into the safety report. So we can call it 2, I guess.

THE COURT: Okay. I just want to be absolutely clear what we're dealing with. No. 1 is documents sufficient to show RAINN's involvement on the Safety -- on the Uber Safety Advisory Committee.

MS. GOLDENBERG: Correct, Your Honor.

THE COURT: All right. And I assume if there's no clean document you're happy to get a letter from them or something from them telling them what it is; right?

MS. GOLDENBERG: My understanding is that there are going to be meeting minutes that show us precisely what that role was. And that's the type of document we envisioned getting. Again, I don't know what they have, but that's my guess.

THE COURT: Okay. Well, he's going to give you a document sufficient to show what the role was. It's not going to be expansive. And if he represents to you that he doesn't have that kind of document, then he's going to -- you guys are going to figure out some way that he's going to tell you what it is in writing. And then you can have it like an interrogatory even though he's a third party, okay?

MS. GOLDENBERG: Understood.

THE COURT: All right. Your second request is

documents regarding how the taxonomy report -- how the taxonomy was created for the safety report.

MS. GOLDENBERG: Correct. And then the role that RAINN played with the safety report as well.

THE COURT: Okay. Well, I just want to take them each separately. So let's start with the second one. All right. Documents relating to how the taxonomy categories were put together. What is that yay, nay, what do we have?

MR. ADELMANN: Your Honor, I guess my objection -- my only objection to that would be -- and perhaps this could be dealt with with a protective order that may already be in place in the MDL, but I don't know to what extent the taxonomy was specific to Uber or was something proprietary that RAINN has developed and used with other clients, in which case I would claim that there's some proprietary, confidential interest there.

MS. GOLDENBERG: We have a protective order in the MDL. Happy to have it apply to these documents as well. And Uber's U.S. safety report says that it is publicly available that RAINN was involved in developing the taxonomy, at least as it relates to Uber. We don't need documents relating to other people.

THE COURT: All right. So good?

MR. ADELMANN: Yes, Your Honor.

THE COURT: All right. When you say all documents,

he doesn't have to search every nook and cranny --

MS. GOLDENBERG: No.

THE COURT: Okay? He's going to take one or two relevant individuals, look at their emails, and go to whatever shared drive there is; right?

MS. GOLDENBERG: I've just finished two days of search term and custodian negotiations. I'm certainly happy to meet and confer separately with him and make sure that happens.

THE COURT: Okay. All right. And then the third -- go ahead.

MR. ADELMANN: I'm happy to meet and confer. I would just like, if appropriate from the Court, you know, some limitation around that, whatever the Court deems appropriate. I mean, part of our position today was that -- and if I may, you know, my client's received two other subpoenas from state court JCCP, another coordinated action identical to these requests. And in meeting conferring on that my client has discovered there's about 40 custodians that may be responsible for communications with Uber. And that would be overly burdensome. So I do --

THE COURT: Okay. You get five. You get five custodians.

MS. GOLDENBERG: Sure.

MR. ADELMANN: Thank you, Your Honor.

THE COURT: They get five.

MR. ADELMANN: Thank you.

THE COURT: They don't get anymore than five. You get to choose the five. They better be the actual core five. Because if she comes back and tells me that you guys played games, then she's going to get 40.

MR. ADELMANN: Understood.

THE COURT: Okay. All right. And then what's the third -- and that's for all of these. What's the third issue?

MS. GOLDENBERG: The third is RAINN's role in the --

THE COURT: Oh, and I'm sorry, yes, you can -- sign the protective order, file it in this court, because I'll have jurisdiction over things. But just use the whatever protective order they used in the MDL. I'm sure that will be fine for you. If not, let me know.

MR. ADELMANN: Yes.

MS. GOLDENBERG: Understood.

THE COURT: What's the third thing?

MS. GOLDENBERG: The last thing is RAINN's role with the Uber U.S. safety report.

THE COURT: Is that different than the Safety Advisory Committee?

MS. GOLDENBERG: It is. The safety report is a document that was publicly made available by Uber. They've had two of them that have covered the number and nature of

sexual assaults that took place in Ubers. And, obviously, there was a lot that went into creating that document. RAINN was one of the outside organizations that helped Uber consult on putting that together.

THE COURT: Okay. That's another document sufficient to show; right?

MS. GOLDENBERG: No, that's an all documents request, but we understand the confines you just gave us with custodians --

THE COURT: Well, no, hold on. Hold on. You just told me documents -- you need to know what the role was, why is that not just a document sufficient to show.

MS. GOLDENBERG: Not just their role, but the selections that were made with RAINN's assistance.

THE COURT: Okay. Well, that's not what you just said. I'm trying to be really specific here so that we're not coming back and doing this again.

MS. GOLDENBERG: No, I appreciate that.

THE COURT: Because that guy is freaked out over there and he doesn't want to have to be in front of me again.

MS. GOLDENBERG: I apologize if I was inarticulate and thanks for clarifying.

THE COURT: Okay. So with respect to what their role was, let's just take that, that's just a document

sufficient to show; right? Just put aside the other stuff that you want.

MS. GOLDENBERG: Yes.

THE COURT: All right. So a document sufficient to show what RAINN's role was in the Safety Advisory Report. Same issue if there's not a document on it, you guys figure out some way to get that information to them in a way that they can use, okay?

MR. ADELMANN: Understood, Your Honor.

THE COURT: All right. Now what's the fourth thing you want?

MS. GOLDENBERG: It's really tied to that. So the decisions that RAINN helped Uber make for the U.S. safety report; what went in, how was it classified, really just those two things. And that's more of an all documents request, because we don't know exactly what decisions were made or how they were formed.

THE COURT: All right. Do you know from based on your are JCCP meet and confers how wide that area is?

MR. ADELMANN: I don't know that that's going to be contain -- I mean, the role, the advice that they gave as to safety reports I don't think is going to be contained in a finite number of documents. If they want the safety reports, we can produce those.

THE COURT: No, no, they want to know how you went

into deciding what the categories were going to be.

MR. ADELMANN: So I think if the Court would make it documents sufficient to show, then we can determine if there's, you know, a limited number of documents --

THE COURT: Actually, one second. How is what they did in the safety report different from how they decided what the taxonomy -- wasn't the taxonomy what the safety report used to get their numbers? I know all this because I represented Lyft forever on these issues.

MS. GOLDENBERG: Yeah, so they're closely tied, but they're not exactly the same. So the taxonomy, as you correctly stated, is basically how they classified sexual assaults, right. But then the safety report took it one step further. There were decisions made about what type of sexual assault was counted. And there was work done on the back end to decide, okay, we're looking at this report, this one counts, this one doesn't. So there's a decision-making process behind the scenes that isn't available to us from reading the public --

THE COURT: I'm sorry, this one does or doesn't count, that goes into how the taxonomy report was created.

MS. GOLDENBERG: The -- I think we're just -- there's a semantics issue. So the publicly available document is called the U.S. safety report.

THE COURT: Right.

MS. GOLDENBERG: The taxonomy is the classification criteria for the sexual assault.

THE COURT: Right.

MS. GOLDENBERG: So the U.S. safety report describes the taxonomy. And I think what we really want for the document portion of our request, just to get this down to brass tax, is we want to know how the safety report was created. How did they decide what the taxonomy criteria were. How did they decide what was going to be included and excluded from the U.S. safety report. That's what it boils down to.

THE COURT: Okay. Why isn't that all -- why can't you get that part from Uber?

MS. GOLDENBERG: We can get some of it from Uber, but because RAINN was hired on as an outside consultant they're going to have internal documents that never went to Uber.

THE COURT: Well, why are those relevant?

MS. GOLDENBERG: I'm sorry?

THE COURT: Why are those relevant? I mean, at the end of the day the only thing that's going to be relevant to you is the decisions that Uber made.

MS. GOLDENBERG: Well, not necessarily, because if RAINN was to make a recommendation that Uber chose not to accept, that's going to be relevant to our case. RAINN was brought on --

THE COURT: Well, if there's -- if you find a recommendation that RAINN made that Uber didn't follow, then you can come back to me. But I'm not going to have them go on a wild goose chase about this particular -- the taxonomy report I understand, that is key to you all trying to attack the report. I'm on board. You're going to get five custodians on that. I'm not going to send them on a wild goose chase on if they made a recommendation and Uber didn't follow it. If that ends up being the case, come back to me and I'll think about it again. But at the end of the day, if they made a recommendation and Uber didn't follow it, you really don't need much more than that. I mean, that is prima facie, you would argue, bad. And if they really, really meant it, that's not going to be any worse for you than if they kind of meant it. They made the recommendation.

MS. GOLDENBERG: Certainly, and that's just what we'd like to know is if the recommendation was made, presumably that's a document that RAINN has that --

THE COURT: Well, if the recommendation was made then Uber will have the document or you'll be able to depose their people.

MS. GOLDENBERG: Hopefully. We're not sure. But understood.

THE COURT: You're definitely going to get Uber depositions.

MS. GOLDENBERG: We're certainly going to have Uber depositions. We have separate issues with Uber where they have refused to produce custodians on certain issues. And because of that had a hearing in the MDL where the judge ruled we don't have to get everything from Uber or wait to see if we get it from Uber before we go elsewhere, which is why we're here. But I understand and respect your ruling. We'll take it and we'll come back if we need to.

THE COURT: All right. Does that solve all your issues?

MR. ADELMANN: Understood, Your Honor. Yes.

THE COURT: All right. Anything else?

MS. GOLDENBERG: No. Thanks for your time, Your Honor.

THE COURT: Okay. I despise discovery disputes. I think most of them, if not all of them, should be figured out amongst the parties. I realize it's a somewhat odd posture, which is why I had the hearing as opposed to just telling you all to meet and confer again, which I maybe should have done.

But going forward, you guys figure this stuff out. Because the next time you guys are in front of me, whoever loses is going to lose big. So in other words, if you want all documents and he loses, you're going to get all documents. If you want all documents and he wins, you're going to get zero documents going forward. Okay?

MS. GOLDENBERG: Understood.

THE COURT: All right. Thank you, everyone.

(The proceedings were concluded 2:18 p.m.)

I, Christine Asif, RPR, FCRR, do hereby certify that the foregoing is a correct transcript from the stenographic record of proceedings in the above-entitled matter.

_________/s/______________
Christine T. Asif
Official Court Reporter

< 0 >.
00 3:6, 4:15, 7:1, 7:2.
03 7:2.
05 7:2.
.
.
< 1 >.
1 7:9, 11:5.
10 7:3.
11 10:3.
12 10:3, 10:7.
13 10:3.
14 1:27.
15 7:3.
1750 1:33.
18 21:3.
1800 1:34.
.
.
< 2 >.
2 3:6, 4:15, 7:1, 7:2, 7:3, 10:22, 11:3, 21:3.
20001 1:44.
20016 1:29.
202 1:45.
2024 1:13.
22 9:18.
22102 1:35.
24-0073-ACR 1:5.
24-73 2:2.
2:00 1:15.
2A 10:25.
.
.
< 3 >.
30 7:9.
333 1:43.
354-3247 1:45.
395 7:11.
.
.
< 4 >.
40 13:19, 14:6.
_________/s/___ ___________ 21:9.
.
.
< A >.
able 19:20.
above-entitled 21:7.
absolutely 11:4.
Abuse 1:4, 2:3, 6:11.
accept 18:24.
accidentally 7:10.
action 13:17.
actual 4:9, 4:10, 9:23, 14:4.
Actually 7:4, 17:5.
Adelmann 1:31, 2:13, 2:24, 4:12, 7:5, 7:19.
admitted 5:9.
advice 16:21.
Advisory 6:6, 6:7, 6:16, 6:19, 6:24, 8:21, 10:18, 11:7, 14:22, 16:5.
afternoon 2:6, 2:9, 2:11, 7:19.
ago 5:23.
agree 4:6, 4:8.
ahead 13:11.
already 8:9, 9:10, 12:11.
amongst 20:17.
Ana C. Reyes 1:19.
annoyed 9:22.
answer 3:16, 4:19.
apologies 7:6.
apologize 7:5, 10:11, 15:22.
appearance 2:12, 2:17, 7:16.
APPEARANCES 1:23.
applications 3:13.
apply 12:18.
appreciate 15:18.
approach 2:4.
appropriate 13:13, 13:14.
area 16:19.
areas 10:3.
argue 4:1, 4:21, 19:13.
around 7:10, 13:14.
aside 16:1.
Asif 1:41, 21:5, 21:10.
assault 17:15, 18:2.
assaults 15:1, 17:13.
assistance 15:14.
assisting 2:24.
assume 3:18, 11:9.
attack 19:5.
attorney 2:14, 2:16, 2:19, 2:21, 3:1, 5:8.
August 6 1:13.
available 6:12, 9:10, 12:19, 14:24, 17:18, 17:23.
Avenue 1:43.
aware 6:23.
away 4:13, 4:14, 8:13.
.
.
< B >.
back 4:24, 4:25, 5:1, 5:12, 7:14, 14:5, 15:17, 17:15, 19:3, 19:9, 20:8.
bad 19:13.
based 4:22, 16:18.
basically 10:12, 17:12.
behalf 2:7, 7:20.
behind 17:18.
believe 8:15.
best 8:2.
better 14:4.
big 20:22.
blocks 2:13, 4:13, 4:14.
board 19:6.
boils 10:12, 18:10.
Boulevard 1:33.
brass 18:7.
broad 8:16, 8:17, 9:1, 10:4.
brought 18:25.
bunch 3:14.
burden 9:15, 9:18.
burdensome 8:16, 9:19, 10:5, 13:21.
.
.

< C >.
C. 1:14, 1:44.
call 7:25, 11:3.
called 3:15, 17:24.
care 4:14, 5:10.
Case 2:2, 3:24, 12:14, 18:24, 19:9.
categories 12:7, 17:1.
caused 7:7.
certain 20:3.
Certainly 13:7, 19:16, 20:1.
certify 21:5.
changes 5:17.
chase 19:4, 19:8.
choose 14:4.
chose 18:23.
Christine 1:41, 21:5, 21:10.
CIVIL 1:4.
claim 12:15.
clarify 10:24.
clarifying 15:23.
classification 18:1.
classified 16:14, 17:12.
clean 11:10.
clear 11:5.
CLERK 2:2, 3:15.
client 3:3, 7:22, 8:3, 9:15, 13:16, 13:18.
clients 12:14.
closely 17:10.
Columbia 1:2, 5:9.
comes 14:5.
coming 15:17.
Committee 2:3, 2:8, 6:6, 6:7, 6:17, 6:19, 6:24, 8:18, 8:22, 10:18, 11:7, 14:22.
communications 13:20.
computer-aided 1:49.
concluded 21:3.
confer 13:8, 13:12, 20:19.
conference 5:2, 7:25.
conferred 9:23.
conferring 13:18.
confers 4:10, 4:16, 4:20, 16:19.
confident 10:19.
confidential 12:15.
confines 15:8.
Constitution 1:43.
consult 15:3.
consultant 18:14.
contain 16:21.
contained 16:22.
coordinated 13:17.
core 14:4.
Corner 1:35.
Correct 7:15, 11:8, 12:3, 21:6.
correctly 17:12.
Counsel 2:4, 2:5.
count 9:11, 17:21.
counted 17:15.
counts 17:17.
courtroom 5:11.
covered 14:25.
cranny 13:1.
created 12:2, 17:21, 18:8.
creating 15:2.
criteria 18:2, 18:8.
custodian 13:7.
custodians 13:19, 13:23, 15:9, 19:7, 20:3.
.
.
< D >.
day 18:20, 19:10.
days 13:6.
DC 1:29.
dealing 11:5.
dealt 12:11.
decide 17:16, 18:8, 18:9.
decided 9:11, 17:6.
deciding 17:1.
decision-making 17:17.
decisions 16:13, 16:16, 17:14, 18:21.
deems 13:14.
Defendant 1:31.
definitely 19:24.
definitions 9:9.
denied 8:9.
depose 19:20.
depositions 19:25, 20:2.
describe 6:10.
describes 18:4.
despise 20:15.
detail 6:13.
determine 17:3.
developed 12:14.
developing 6:14, 12:20.
development 6:10, 6:25, 9:4, 11:2.
different 6:11, 14:21, 17:6.
disagree 9:24.
discovered 13:19.
discovery 20:15.
discuss 8:3.
discussed 7:22.
disputes 20:15.
District 1:1, 1:2, 1:20, 5:9.
document 11:10, 11:14, 11:18, 11:20, 14:24, 15:2, 15:5,

15:12, 15:25, 16:4, 16:6, 17:23, 18:6, 19:18, 19:20.
Documents 4:8, 4:10, 6:5, 6:9, 6:22, 8:5, 8:18, 8:19, 8:20, 8:24, 9:3, 9:5, 9:8, 9:21, 10:17, 11:5, 12:1, 12:7, 12:18, 12:21, 12:25, 15:7, 15:11, 16:15, 16:23, 17:3, 17:4, 18:15, 20:23, 20:24, 20:25.
doing 5:2, 15:17.
done 17:15, 20:19.
down 3:9, 3:11, 7:11, 10:12, 18:6, 18:10.
drive 13:5.
.
.
< E >.
earlier 9:23.
early 7:3.
easy 10:19.
elsewhere 20:6.
email 7:21.
emails 13:4.
end 17:15, 18:20, 19:10.
ends 19:9.
enough 3:18.
envisioned 11:14.
Especially 5:2.
Esquire 1:25, 1:31.
everyone 21:2.
everything 20:5.
exactly 6:21, 8:19, 16:16, 17:11.
excluded 18:9.
excuse 7:19.
expansive 11:19.
extent 12:12.
.
.
< F >.
facie 19:13.
FCRR 1:41, 21:5.
Federal 1:42.
few 2:13, 4:13.
figure 4:5, 11:21, 16:6, 20:20.
figured 20:16.
file 14:12.
filing 3:14, 3:20.
final 6:20, 6:24.
find 3:15, 19:1.
fine 14:15.
finished 13:6.
finite 16:23.
First 3:12, 3:14, 10:4.
five 13:22, 14:1, 14:3, 14:4, 19:6.
Floor 1:28.
follow 3:21, 19:2, 19:9, 19:11.
foregoing 21:6.
forever 17:9.
formed 16:17.
forth 5:13.
forward 20:20, 20:25.
fourth 16:10.
frankly 9:19.
freaked 15:19.
front 5:22, 15:20, 20:21.
future 3:12, 3:18.
.
.
< G >.
game 9:18.
games 14:6.
gave 5:23, 6:3, 9:20, 10:1, 15:8, 16:21.
getting 11:15.
give 8:5, 9:9, 11:17.
globally 9:15.
GOLDENBERG 1:25, 1:26, 2:7, 2:10, 15:18, 18:4.
goose 19:4, 19:8.
guess 10:24, 11:3, 11:16, 12:9.
guy 15:19.
guys 4:5, 4:7, 5:21, 11:20, 14:5, 16:6, 20:20, 20:21.
.
.
< H >.
hac 3:12, 3:20.
hacs 3:14, 3:18.
hallway 8:12.
happens 13:9.
Happy 8:11, 8:23, 10:12, 11:10, 12:18, 13:7, 13:12.
heard 4:24, 4:25, 5:1, 5:15, 7:14, 8:7.
hearing 5:22, 20:4, 20:18.
helped 15:3, 16:13.
hereby 21:5.
hired 18:14.
Hoefs 7:21, 8:12.
Hold 4:1, 4:3, 7:21, 8:3, 15:10.
Honor 2:6, 2:11, 3:7, 3:10, 3:22, 4:17, 5:4, 5:24, 6:1, 6:4, 7:5, 7:8, 7:15, 7:18, 7:20, 8:2, 8:6, 8:11, 8:15, 9:14, 10:6, 10:21, 11:8, 12:9, 12:24, 13:25, 16:9, 20:11, 20:14.
Honorable 1:19.
Hopefully 19:22.
.
.
< I >.
identical

13:17.
inappropriate 4:8, 9:21.
inarticulate 15:22.
Incest 1:5, 2:3.
included 18:9.
individuals 13:4.
information 16:7.
interest 12:16.
internal 18:15.
interrogatory 11:23.
involved 6:23, 12:20.
involvement 11:6.
issue 14:9, 16:6, 17:23.
issues 17:9, 20:2, 20:3, 20:10.
.
.
< J >.
Jaye 1:25.
JCCP 13:17, 16:19.
John 2:12.
Judge 1:20, 20:4.
jurisdiction 14:13.
.
.
< K >.
key 19:5.
kind 11:20, 19:14.
.
.
< L >.
last 4:23, 7:13, 14:19.
late 7:4, 7:7, 8:9.
lawyer 3:8.
least 12:20.
leaving 4:6.
lecture 9:20.
letter 11:10.
letting 5:10, 5:11.
level 8:2.
limitation 13:14.
limited 8:3, 17:4.
litigated 9:18.
long 3:17.
look 13:4.
looking 7:9, 17:16.
lose 20:22.
loses 20:22, 20:23.
lot 15:2.
Lyft 17:9.
.
.
< M >.
M. 1:31.
machine 1:48.
Maguire 7:19.
Marlene 1:25, 2:7.
matter 21:7.
Mcguire 1:32.
MDL 4:22, 12:12, 12:18, 14:14, 20:4.
mean 8:6, 9:7, 13:15, 16:21, 18:19, 19:12.
meant 19:13, 19:15.
meet 4:10, 4:15, 4:20, 13:8, 13:12, 16:19, 20:19.
meeting 11:13, 13:18.
met 9:23.
minute 3:20.
minutes 7:3, 11:13.
missed 9:19.
morning 2:9, 7:18.
motion 8:7.
motions 4:22.
Motions Hearing 1:18.
MR. ADELMANN 7:8, 7:15, 7:18, 8:2, 8:6, 8:11, 8:15, 9:14, 10:6, 10:16, 10:21, 12:9, 12:24, 13:12, 13:25, 14:2, 14:7, 14:16, 16:9, 16:20, 17:2, 20:11.
MR. SULLIVAN 5:16, 5:19, 5:24.
MS 2:10, 7:21, 8:12, 15:18, 18:4.
.
.
< N >.
name 2:5, 2:11.
narrowed 4:23, 6:2, 7:13, 8:5, 8:14, 10:2, 10:7, 10:14, 10:16.
narrower 4:23.
National 1:5, 2:3.
nature 14:25.
nay 12:8.
necessarily 18:22.
need 3:21, 9:10, 12:21, 15:11, 19:12, 20:8.
negotiations 13:7.
Network 1:5, 1:13, 2:3.
new 3:18.
next 20:21.
Nigh 1:26.
No. 1:4, 3:8, 10:22, 11:5, 20:13.
nonparty 7:20.
nook 13:1.
notes 2:25.
number 14:25, 16:23, 17:4.
numbers 17:8.
NW 1:27, 1:43.
.
.
< O >.
objection 10:2, 12:9, 12:10.
objections 4:2.
obviously 15:1.
odd 20:17.
office 7:8.
Official 1:42, 21:11.
Okay 3:5, 3:21, 3:25, 4:25, 5:18, 6:2, 7:1, 8:23, 9:5, 9:13, 9:18, 10:14, 10:22, 11:4, 11:17, 11:23, 12:5, 13:3,

13:10, 13:22, 14:8, 15:5, 15:15, 15:24, 16:8, 17:16, 18:11, 20:15, 20:25.
one 6:5, 8:18, 12:6, 13:3, 15:3, 17:5, 17:13, 17:16, 17:17, 17:20.
ongoing 5:20, 5:21.
opposed 20:18.
opposition 8:7.
order 12:11, 12:17, 14:12, 14:14.
organizations 15:3.
outside 15:3, 18:14.
overbroad 10:2, 10:3.
overly 8:16, 8:17, 9:1, 13:20.
.
.
< P >.
p.m. 1:15, 21:3.
paraphrasing 10:11.
parking 7:9.
part 6:12, 6:13, 13:15, 18:12.
particular 19:4.
particularly 10:5.
parties 20:17.
party 4:21, 9:17, 11:23.
people 12:22, 19:21.
perhaps 12:10.
personally 4:12, 5:25.
Petitioner 1:9.
place 12:12, 15:1.
Plaintiff 1:25, 2:2, 2:5, 2:7.
PLAINTIFF'S STEERING COMMITTEE 1:7.
played 6:8, 6:20, 8:21, 10:18, 12:4, 14:5.
playing 9:18.
please 2:4.
PLLC 1:26.
podium 2:4.
portion 18:6.
position 13:15.
posture 20:17.
precisely 11:13.
prepare 8:1.
prepared 7:23.
presumably 19:18.
prima 19:12.
pro 3:12, 3:14, 3:18, 3:20.
Proceedings 1:48, 21:3, 21:7.
process 3:21, 6:13, 17:18.
produce 4:7, 4:8, 16:24, 20:3.
produced 1:48.
producing 9:2.
product 6:21.
proposed 5:17.
proprietary 12:13, 12:15.
protective 12:11, 12:17, 14:12, 14:14.
public 17:19.
publicly 6:11, 12:19, 14:24, 17:23.
put 4:10, 10:13, 12:8, 16:1.
putting 6:14, 15:4.
.
.
< Q >.
quash 4:4.
question 4:19.
.
.
< R >.
RAINN 2:16, 2:20, 2:21, 3:4, 4:20, 4:23, 6:8, 6:13, 7:20, 8:21, 11:6, 12:4, 12:13, 12:20, 14:10, 14:19, 15:2, 15:14, 16:5, 16:13, 18:14, 18:23, 18:24, 19:2, 19:18.
Rape 1:4, 2:3.
RAPE ABUSE AND INCEST NATIONAL 1:12.
Raso 1:26.
re 1:4.
reading 17:19.
ready 5:3.
realize 20:17.
really 9:9, 15:16, 16:12, 16:14, 18:5, 19:12, 19:13.
receive 5:16, 7:20.
received 13:16.
recommendation 18:23, 19:2, 19:8, 19:11, 19:15, 19:17, 19:19.
record 2:5, 10:13, 10:23, 21:7.
recorded 1:48.
refused 20:3.
regarding 12:1.
related 6:5, 6:9.
relates 12:21.
relating 9:4, 12:7, 12:21.
relevant 13:4, 18:17, 18:19, 18:20, 18:24.
Report 6:15, 6:21, 6:24, 11:1, 11:3, 12:1, 12:2, 12:4, 12:19, 14:20, 14:23, 16:5, 16:14, 17:6, 17:7, 17:13, 17:16,

17:21, 17:24, 18:4, 18:7, 18:10, 19:5, 19:6.
Reported 1:41.
Reporter 1:42, 21:11.
reports 6:12, 16:22, 16:23.
represented 17:9.
represents 11:19.
request 8:14, 9:8, 10:1, 11:25, 15:8, 16:15, 18:6.
requests 4:23, 7:13, 10:7, 10:10, 13:18.
respect 15:24, 20:7.
respond 7:23, 7:25.
responded 4:21, 5:22.
Respondent 1:14.
response 5:18, 5:25, 8:4, 8:14, 9:13, 9:14.
responsible 13:19.
Ridge 1:27.
role 6:8, 6:20, 8:21, 10:18, 11:14, 11:18, 12:3, 14:10, 14:19, 15:11, 15:13, 15:25, 16:5, 16:21.
RPR 1:41, 21:5.
ruled 20:4.
ruling 20:7.
rulings 4:22.
.
.
< S >.
S. 6:12, 6:21, 12:19, 14:20, 16:13, 17:24, 18:4, 18:10.
Sam 7:18, 7:19.
Samuel 1:31.
saying 9:20.
says 7:12, 12:19.
scenes 17:18.
search 13:1, 13:7.
seated 4:3.
Second 6:9, 9:2, 9:3, 10:4, 11:25, 12:6, 17:5.
Secondly 3:23.
selections 15:14.
semantics 17:23.
send 19:7.
sent 4:23, 7:13.
separate 20:2.
separately 12:6, 13:8.
settled 3:24.
sexual 6:11, 15:1, 17:12, 17:14, 18:2.
shared 13:5.
short 4:19, 6:4.
shorthand 1:48.
show 8:21, 8:24, 9:6, 9:8, 10:17, 11:6, 11:13, 11:18, 15:6, 15:12, 16:1, 16:5, 17:3.
sign 14:11.
Sincere 7:5.
Sit 3:9, 3:11.
solve 20:9.
somewhat 20:17.
sorry 6:18, 14:11, 17:20, 18:18.
sort 3:13, 9:15.
speaking 5:4.
specific 10:1, 12:13, 15:16.
specifically 6:1, 9:11.
Square 1:27.
squared 8:13.
start 3:5, 7:1, 7:2, 7:3, 12:6.
starting 2:5, 3:8.
state 2:4, 13:16.
stated 17:12.
States 1:1, 1:20.
status 7:25.
Steering 2:2, 2:7.
stenographic 21:6.
step 17:13.
Street 7:10.
stuff 16:1, 20:20.
SUBPOENA 1:4, 4:5, 4:21, 4:23, 6:13, 8:5, 9:22, 10:3, 10:7.
subpoenas 13:16.
substance 9:24.
substantive 4:20.
sufficient 8:24, 9:6, 9:8, 10:17, 11:5, 11:18, 15:6, 15:12, 16:1, 16:4, 17:3.
Suite 1:34.
SULLIVAN 2:11, 2:12, 2:15, 2:17, 2:21, 2:24, 3:2, 3:4, 3:7, 3:10, 4:12, 5:4, 5:8, 5:12.
super 9:22.
.
.
< T >.
T. 1:41, 21:10.
talked 11:1.
tax 18:7.
taxonomy 6:10, 6:14, 6:25, 9:4, 9:9, 11:2, 12:1, 12:2, 12:7, 12:12, 12:20, 17:7, 17:11, 17:21, 18:1, 18:5, 18:8, 19:4.
tells 14:5.
ten 7:3.
term 13:7.
terms 8:3.
Thanks 15:23, 20:13.
They've 14:24.
Third 1:28, 4:1, 4:21, 9:17, 11:23, 13:10, 14:9,

14:10,
14:18.
though 11:23.
tied 16:12,
17:10.
today 2:12,
3:24, 4:6,
5:22, 7:23,
13:15.
together 6:14,
12:8, 15:4.
took 7:21,
15:1,
17:13.
topics 6:2.
totally 4:7,
9:21.
Transcript
1:18, 1:48,
21:6.
transcription
1:49.
transfer 3:17,
8:8, 9:24.
transferring
3:24.
trying 15:16,
19:5.
turned 7:10.
two 4:9, 6:5,
6:6, 10:4,
10:10, 10:15,
10:16, 11:1,
13:3, 13:6,
13:16, 14:25,
16:15.
type 11:14,
17:14.
types 6:11.
Tysons 1:33,
1:35.
.
.
< U >.
Uber 6:7, 6:8,
6:10, 6:11,
8:21, 9:4,
11:2, 11:6,
12:13, 12:19,
12:21, 13:20,
14:20, 14:24,
15:3, 16:13,
18:12, 18:13,
18:16, 18:21,
18:23, 19:2,
19:8, 19:11,
19:20, 19:24,
20:1, 20:2,
20:5, 20:6.
Ubers 15:1.
underpass
7:10.
understand
5:13, 5:19,
15:8, 19:5,
20:7.
understanding
11:12.
Understood
3:22, 5:12,
8:11, 11:24,
14:7, 14:17,
16:9, 19:23,
20:11,
21:1.
unduly 8:16.
United 1:1,
1:20.
until 4:7.
.
.
< V >.
VA 1:35.
Vaughn 1:26.
versus 2:3.
vice 3:12,
3:20.
Virginia 7:8.
vs 1:10.
.
.
< W >.
wait 20:5.
waived 4:2.
want. 3:13.
Washington
1:14, 1:29,
1:44.
week 4:24, 5:1,
5:15, 5:23,
7:13.
Whatever 2:10,
4:2, 9:25,
13:4, 13:14,
14:13.
whatsoever
9:21.
whoever
20:21.
wide 16:19.
wild 19:4,
19:7.
will 14:14,
19:20.
wins 20:24.
Woods 1:32,
7:19.
words 20:22.
work 17:15.
worked 5:25,
6:22.
worse 19:14.
writing
11:22.
.
.
< Y >.
yay 12:8.
years 9:19.
yesterday
7:22.
.
.
< Z >.
zero 20:25.