RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
JACQUELINE P. RUBIN (*Pro Hac Vice* admitted)
    jrubin@paulweiss.com
YAHONNES CLEARY (*Pro Hac Vice* admitted)
     ycleary@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S POSITION PAPER ON THE APPLICATION OF PRETRIAL ORDER NO. 17 TO DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FLORIDA, ILLINOIS AND NEW YORK LAW** |
| This Document Relates to: | |
| ALL ACTIONS | Judge:       Hon. Charles R. Breyer |
| | Courtroom:  Courtroom 6 – 17th Floor |

KYLE N. SMITH (*Pro Hac Vice* admitted)
    ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
    jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone:  (202) 223-7300
Facsimile:   (202) 223-7420

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

ARGUMENT ...............................................................................................................1

I.  VICARIOUS LIABILITY ...............................................................................1

    A.  Under Florida Law, Plaintiffs' Vicarious Liability Claims Should
         Be Dismissed Because They Are Barred by the Florida TNC
         Statute............................................................................................................3

    B.  Under Illinois Law, the Vicarious Liability Claims Should Be
         Dismissed Based On the Principles of *Respondeat Superior* ...................4

    C.  Plaintiffs' Apparent Agency Theory of Vicarious Liability Fails
         Under Florida, Illinois and New York Law ...............................................6

    D.  Plaintiffs' Ratification Theory of Vicarious Liability Fails Under
         Florida, Illinois and New York Law ..........................................................8

    E.  Plaintiffs' Common Carrier Non-Delegable Duties Claims Should
         Be Dismissed Under Florida and Illinois Law ..........................................8

         1.  Florida ............................................................................................9

         2.  Illinois .........................................................................................10

II.  PLAINTIFFS' FRAUD-RELATED CLAIMS SHOULD BE DISMISSED ...................10

III.  PLAINTIFFS' CLAIMS FOR NEGLIGENT INFLICTION OF
     EMOTIONAL DISTRESS SHOULD BE DISMISSED BECAUSE
     THOSE CLAIMS ARE NOT RECOGNIZED UNDER THE LAWS OF
     THE OTHER STATES ....................................................................................10

IV.  PLAINTIFFS' NEGLIGENT ENTRUSTMENT CLAIMS SHOULD BE
     DISMISSED ..................................................................................................11

V.  PLAINTIFFS' PRODUCTS LIABILITY CLAIMS SHOULD BE
    DISMISSED BECAUSE THEY FAIL TO PLAUSIBLY ALLEGE
    CAUSATION.................................................................................................12

VI.  INJUNCTIVE RELIEF...................................................................................12

VII.  PUNITIVE DAMAGES .................................................................................13

CONCLUSION............................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Bank of Cerro Gordo & Keith* v. *Illinois*,
37 Ill. Ct. Cl. 82 (Ill. Ct. Cl. 1984)................................................................6

*Checker Cab Operators* v. *Miami-Dade Cnty.*,
899 F.3d 908 (11th Cir. 2018) ...............................................................9

*Deloney* v. *Board of Education of Thornton Tp.*,
666 N.E.2d 792 (Ill. Ct. App. 1996) ..........................................................6

*Doe ex rel. Doe* v. *Lawrence Hall Youth Servs.*,
966 N.E.2d 52 (Ill. App. Ct. 2012) .......................................................6, 7

*Doe* v. *Uber Techs. Inc.*,
551 F. Supp. 3d 341 (S.D.N.Y. 2021).....................................................11

*Esurance Prop. Cas. & Ins. Co.* v. *Vergara*,
No. 20-CV-81754, 2021 WL 2955962 (S.D. Fla. June 29, 2021) ...........................9

*Fi-Evergreen Woods, LLC* v. *Estate of Robinson*,
172 So. 3d 493 (Fla. Dist. Ct. App. 2015) .....................................................6

*Linder* v. *Golden Gate Bridge, Highway & Transportation District*,
2015 WL 4623710 (N.D. Cal. Aug. 3, 2015) .............................................7

*Means* v. *Lyft, Inc.*,
2024 WL 3012795 (N.D. Cal. June 13, 2024) .............................................9

*Nazareth* v. *Herndon Ambulance Serv., Inc.*,
467 So. 2d 1076 (Fla. App. 1985)..........................................................9

*Phillips* v. *Uber*,
2017 WL 2782036 (S.D.N.Y. June 14, 2017) .................................................7

*Pippen* v. *Pedersen & Houpt*,
986 N.E.2d 697 (Ill. Ct. App. 2013) .....................................................11

*Powell* v. *City of Chicago*,
197 N. E. 3d 219 (Ill. Ct. App. 2021) ....................................................5, 6

*Rivera* v. *New York*,
142 N.E.3d 641 (N.Y. 2019).............................................................7

*Singh* v. *Bascom*,
2010 Fla. Cir. LEXIS 7366 (Fl. Cir. Ct. Dec. 14, 2010).........................................11

*Stern* v. *Ritz Carlton Chicago*,
    702 N.E. 2d 194 (Ill. Ct. App. 1998) ........................................................................5

*Taylor* v. *The Point at Saranac Lake, Inc.*,
    23 N.Y.S.3d 682 (N.Y. App. Div. 2016) ...................................................................6

*Zell* v. *Meek*,
    665 So. 2d 1048 (Fla. 1995) ....................................................................................11

**Statutes**

625 Ill. Comp. Stat. Ann. 57/25 (2023) ........................................................................10

Fla. Stat. § 627.748(2) ....................................................................................................9

Fla. Stat. § 627.748(18) ...............................................................................................3, 7

Fla. Stat. § 627.748(18)(a) .............................................................................................4

Fla. Stat. § 627.748(18)(a)(1) & (a)(2) ...........................................................................3

Tex. Civ. Prac. & Rem. Code § 150E.002(3) ..................................................................3

Tex. Civ. Prac. & Rem. Code § 150E.003(a)(1) ..............................................................3

**Other Authorities**

Federal Rule of Civil Procedure 9(b) .........................................................................1, 10

Pretrial Order No. 17 ...................................................................................................1, 12

**INTRODUCTION**

Pursuant to the Court's direction at the August 29, 2024 Case Management Conference, Uber respectfully submits that in light of the Court's Order on Uber's Motions to Dismiss Plaintiffs' claims under California and Texas law (Pretrial Order No. 17 or "PTO 17"), the pending Motions to Dismiss Plaintiffs' claims under Florida, Illinois and New York law should be resolved as follows:

(1) Dismiss Plaintiffs' vicarious liability claims (Claim G) under Florida, Illinois and New York law because they fail to allege cognizable claims under any theories of *respondeat superior,* apparent agency, ratification, or common carrier non-delegable duties;

(2) Dismiss Plaintiffs' fraud-related claims (Claim C) because they are not pled with the particularity required under Federal Rule of Civil Procedure 9(b);

(3) Dismiss Plaintiffs' negligent infliction of emotional distress claims (Claim D) because they are not independent causes of action under Florida, Illinois or New York law and, in any event, Plaintiffs' allegations fail to adequately plead the requisite elements;

(4) Dismiss Plaintiffs' negligent entrustment claims (Claim B) because the allegations that Uber permitted drivers to use its trademarked decals and signage fail to state a cause of action under Florida, Illinois or New York law;

(5) Dismiss Plaintiffs' products liability claims (Claim H) because they fail to adequately allege causation; and

(6) Dismiss Plaintiffs' claims for injunctive relief (Claim I) because Plaintiffs do not have Article III standing to bring such claims for relief.

Uber does not seek dismissal of Plaintiffs' punitive damage claims for relief at this time and reserves the right to do so later.

**ARGUMENT**

**I.      VICARIOUS LIABILITY**

Plaintiffs' theories of vicarious liability - - *respondeat superior*, apparent agency, ratification, and common carrier non-delegable duties - - each fail under Florida, Illinois and New York law.

DEFENDANTS' POSITION PAPER RE: PRETRIAL ORDER NO. 17          Case No. 3:23-md-3084-CRB

At the threshold, Florida's Transportation Network Company ("TNC") statute - - like the Texas TNC statute - - specifically bars vicarious liability claims asserted against TNCs like Uber. In addition:

***Respondeat superior* - -** Plaintiffs do not assert *respondeat superior* as a basis for vicarious liability under Florida or New York law; that theory is asserted only under Illinois law, *see* MTD Opp. (ECF No. 518) at 46-48, but it fails under Illinois law because the alleged sexual assaults were not committed within the scope of employment.  Unlike California law, Illinois courts focus on the motivating emotions of the assailant, and do not apply the foreseeability test or other policy factors this Court considered under California law.

***Apparent Agency* - -** Plaintiffs' apparent agency theory fails under the laws of Florida, New York and Illinois.  As with Texas and California law, the laws of all three states hold that apparent agency claims are limited by scope-of-employment or scope-of-agency analyses. Plaintiffs' opposition brief did not argue that sexual assault is within the scope of employment under Florida or New York law, (*see* MTD Opp. at 61-62 and 63-64), thus Plaintiffs have waived those arguments.  Under Illinois law, the alleged sexual assaults were not within the scope of employment or agency, and Plaintiffs' apparent agency claim should be dismissed for the same reasons as their *respondeat superior* claim.

***Ratification* - -** The laws of Florida, Illinois and New York all require allegations that the defendant knew and approved of the particular incidents at issue.  Thus, Plaintiffs' ratification theory suffers from the same pleading deficiencies as under Texas and California law, and should be dismissed on that basis.

***Common Carrier* - -** Plaintiffs do not assert common carrier claims under New York law.  Plaintiffs' common carrier claims must be dismissed under Florida law (for all incidents) and Illinois law (for incidents occurring before January 1, 2024) because those states have statutes declaring that TNCs like Uber are not common carriers.[1]

---

[1] Plaintiffs suggest that they will amend the Master Long-Form Complaint with respect to Illinois law. *See infra* Section I.E.2.  Uber reserves its right to move to dismiss any such amended claim.

DEFENDANTS' POSITION PAPER RE: PRETRIAL ORDER NO. 17          Case No. 3:23-md-3084-CRB

### A. Under Florida Law, Plaintiffs' Vicarious Liability Claims Should Be Dismissed Because They Are Barred by the Florida TNC Statute

In addressing the Texas TNC Statute in PTO 17, the Court found that, as a general matter, the "unambiguous language" of "the Texas TNC Statute bars vicarious[] liability under Texas law for claims like Plaintiffs'." Order at 13. Like the Texas statute, the Florida TNC Statute uses "broad language that captures claims against TNCs based on injuries to plaintiffs caused by TNC drivers while those drivers are driving for the TNC." Order at 13. *Compare* Tex. Civ. Prac. & Rem. Code § 150E.002(3) (precluding vicarious liability for claims "aris[ing] out of the ownership, use, operation, or possession of a network vehicle while the vehicle's driver or passenger was logged on to a transportation network company's digital network") *with* Fla. Stat. § 627.748(18) (precluding vicarious liability for claims "for harm to persons or property which results or arises out of the use, operation, or possession of a motor vehicle operating as a TNC vehicle while the driver is logged on to the digital network"). *See* FL MTD (ECF No. 386) at 6.

The grounds for dismissal of the vicarious liability claims under Florida law are, if anything, stronger than under Texas law. Under the Texas statute, the Court found that "if the facts ultimately support the view that Uber acted with gross negligence under Texas law, then Plaintiffs may be able to get around the Texas TNC Statute's restrictions on vicarious liability." Order at 14. *See* Tex. Civ. Prac. & Rem. Code § 150E.003(a)(1) (providing that a TNC may not be held vicariously liable if "the claimant does not prove by clear and convincing evidence that the company was grossly negligent with respect to the subject claim"). The Florida TNC Statute, by contrast, contains no similar exception for gross negligence, and there is no allegation that Uber has not "fulfilled all of its obligations under this section [of the Florida TNC Statute] with respect to the TNC driver," or that Uber engaged in "negligence *under this section* or criminal wrongdoing under the federal or Florida criminal code." Fla. Stat. § 627.748(18)(a)(1) & (a)(2) (emphasis added).

The Florida statute's express terms also undermine Plaintiffs' assertion that the Florida TNC statute bars vicarious liability *only if* the motor vehicle itself, rather than the driver, caused harm. *See* MTD Opp. (ECF No. 518) at 18. That is not what the statute says. Instead, under the

statute, and consistent with the Court's interpretation of the Texas TNC statute, the Florida TNC statute applies broadly to claims "for harm to persons or property which results or arises out of the use, operation, or possession of a motor vehicle operating as a TNC vehicle." Fla. Stat. § 627.748(18)(a). *See* Uber MTD Reply (ECF No. 538) at 18-19. Although the statute may apply to circumstances in which a vehicle "caused harm to persons or property," it also applies to bar vicarious liability in these broader circumstances, including those here, where Plaintiffs allege sexual assaults by drivers in the course of "us[ing], operat[ing], or possess[ing] a motor vehicle operating as a TNC vehicle." *Id.* There was no carveout by the legislature that the statute would only apply to motor vehicle accident cases.

### B. Under Illinois Law, the Vicarious Liability Claims Should Be Dismissed Based On the Principles of *Respondeat Superior*

Under Illinois law, Plaintiffs' vicarious liability claim based on *respondeat superior* should be dismissed. In holding that under California law, the scope-of-employment issue "presents a question of fact," the Court relied on aspects of California law that are not present in Illinois case law. *See* Order at 16. The Court observed that the "leading [California] cases suggest what are, in effect, three different rules, and they do not explain how the different inquiries fit together." Order at 16. The Court found that the "causal nexus rule"—which asks whether the "assault was engendered by work-related events or conditions"—is "the least favorable to Plaintiffs' position." Order at 22. If the emphasis is on the assailants' "motivating emotions," the Court explained, "the causal nexus inquiry would likely counsel against imposing respondeat superior liability." Order at 23. On the other hand, the Court concluded that California's "foreseeability rule" and "policy" factors—including "preventing recurrence, assuring compensation, and equitably spreading losses"—both "point in favor of liability." Order at 17, 19-20.

There are not three (or two) different rules under Illinois law. Rather there is just the rule: Illinois courts apply a scope-of-employment test that is most akin to the "causal nexus" test, with its focus on the employee's "motivating emotions." Order at 23. Applying Illinois law, an employee's tortious conduct is within the scope of employment if: "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and]

1   (c) it is actuated, at least in part, by a purpose to serve the [employer]." *Powell* v. *City of Chicago*,

2   197 N. E. 3d 219, 223 (Ill. Ct. App. 2021). "An employee's conduct must satisfy all three criteria

3   or it is not within the scope of employment." *Id.*

4          As to the first criteria, Illinois courts have "consistently found that sexual assault is not the

5   kind of conduct that an employee is employed to perform." *Powell*, 197 N.E. 3d at 224. For

6   example, in *Powell*, an Illinois Appellate Court affirmed the granting of a motion to dismiss a

7   vicarious liability claim against the city of Chicago, based on the theory that its employee, a police

8   officer, sexually assaulted the plaintiff while he was in the officer's custody. As the court

9   explained, sexual assault was not within the officer's scope of employment because "[s]exual

10  assault committed by police officers has no relation to their duties and responsibilities" - - "it

11  cannot be reasonably said that sexual assault was encompassed in [the officer's] duties, was similar

12  to those duties, or was reasonably foreseeable by the City." *Id.* at 224.

13         *Powell* illustrates another way in which Illinois differs from California law. This Court's

14  analysis under California law found that there is tension between the causal nexus test and the

15  foreseeability test, and reasoned that under California's version of the foreseeability test, it was

16  plausible that "sexual assault is a risk 'inherent in or created by the enterprise' that Uber has

17  undertaken." Order at 19. By contrast, Illinois law treats the concept of "foreseeability" as

18  inherent in the first factor: tortious conduct cannot be foreseeable if it is not "encompassed in" or

19  "similar to" the employee's job duties. *Powell*, 197 N.E. 3d at 224. As the Illinois Appellate Court

20  has explained, "foreseeability" is determined by the employee's job duties *and not by the*

21  *employer's enterprise. Id.* For example, physical assault by a bouncer may be foreseeable because

22  "it is expected that a bouncer will be required to use force in doing his job," but sexual assault by

23  a masseuse is *not* "reasonably foreseeable" because "it cannot reasonably be said that sexual

24  assault by masseurs  .   .   . was encompassed in their duties" or "was similar to those duties."

25  *Stern* v. *Ritz Carlton Chicago*, 702 N.E. 2d 194, 197-98 (Ill. Ct. App. 1998). Likewise, sexual

26  assaults are *not* "encompassed in [the] duties" of independent drivers using the Uber App.

27         Because Illinois law requires satisfaction of all three scope criteria to find that an

28  employee's conduct is within the scope of employment, Plaintiffs' vicarious liability claim should

be dismissed because there can be no reasonable argument that "sexual assault is the kind of conduct [drivers] [were] employed to perform." *Powell*, 197 N.E. 3d at 223.  But in case there is any doubt, Plaintiffs also cannot satisfy the third factor:  that the alleged sexual assault was motivated, at least in part, "by a purpose to serve" Uber.  *Id.*  As demonstrated in Uber's briefing, under Illinois law, "the term 'scope of employment' excludes conduct by an employee that is *solely for the benefit of the employee*." *Deloney* v. *Board of Education of Thornton Tp.*, 666 N.E.2d 792, 798 (Ill. Ct. App. 1996) (emphasis added) (holding that, as a matter of law, school board could not be vicariously liable for school truant officer's sexual assault of student).  *See* Uber IL MTD (ECF No. 388) at 6-7; Uber MTD Reply (ECF No. 538) at 6-8.  Illinois courts have held that, as a general matter of law, "sexual assault by its very nature precludes a conclusion that it occurred within the employee's scope of employment," because it is "conduct by an employee that is *solely for his own benefit*" and "could in no way be interpreted as an act in furtherance of the" employer's interest.  *Doe ex rel. Doe* v. *Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 57, 61-62 (Ill. App. Ct. 2012) (emphasis added); *see* Uber IL MTD (ECF No. 388) at 6 n. 4 (citing cases).

Therefore, as discussed fully in Uber's motion to dismiss briefing, Uber IL MTD (ECF No. 388) at 6-7; Uber MTD Reply (ECF No. 538) at 6-8, Plaintiffs' vicarious liability claims based on *respondeat superior* should be dismissed under Illinois law.

### C.  Plaintiffs' Apparent Agency Theory of Vicarious Liability Fails Under Florida, Illinois and New York Law

In assessing Plaintiffs' theory of vicarious liability based on apparent agency under the laws of California and Texas, the Court concluded that "the scope of liability under an apparent agency theory is limited by the usual scope-of employment rules."  Order at 25.  Plaintiffs' vicarious liability claims under principles of apparent agency should be dismissed under the laws of Florida, Illinois and New York because even where a principal creates the appearance of agency, vicarious liability is limited to the agent's acts within the scope of that agency.  *See*, *e.g.*, *Fi-Evergreen Woods*, *LLC* v. *Estate of Robinson*, 172 So. 3d 493, 498 (Fla. Dist. Ct. App. 2015); *Am. Bank of Cerro Gordo & Keith* v. *Illinois*, 37 Ill. Ct. Cl. 82, 87 (Ill. Ct. Cl. 1984); *Taylor* v. *The Point at Saranac Lake*, *Inc.*, 23 N.Y.S.3d 682, 684 (N.Y. App. Div. 2016).  *See* Uber MTD Reply

(ECF No. 538) at 11-14.

The Court's reasoning in dismissing Plaintiffs' apparent agency theory under Texas law applies to the three other states' laws as well: "Plaintiffs concede that Uber could not be vicariously liable under a theory of *respondeat superior*" in Texas.  Order at 28.  Likewise, under Florida law and New York law, Plaintiffs do not assert that Uber could be vicariously liable under a theory of *respondeat superior*, argue that sexual assault is within the scope of employment for the purposes of the apparent agency theory, or otherwise respond to Uber's arguments that sexual assault is not within the scope of employment under the laws of Florida and New York.  *See* MTD Opp. (ECF No. 518) at 40-47; *Linder* v. *Golden Gate Bridge, Highway & Transportation District*, 2015 WL 4623710 (N.D. Cal. Aug. 3, 2015) (granting motion to dismiss where plaintiff's opposition brief waived causation argument).  Nor could they.  As explained above, Florida's TNC statute expressly provides that a TNC such as Uber cannot be held vicariously liable for injuries resulting from the alleged tortious conduct of independent drivers.  Fla. Stat. § 627.748(18).  *See* FL MTD (ECF No. 386) at 6.  And New York law is clear that an employer cannot be vicariously liable for torts committed by an employee unless the conduct is part of the employer's business and part of the employee's job responsibilities.  *Rivera* v. *New York*, 142 N.E.3d 641, 644-45 (N.Y. 2019); *Phillips v. Uber*, 2017 WL 2782036 (S.D.N.Y. June 14, 2017);  s*ee* NY MTD (ECF No. 385) at 7-10; Uber MTD Reply (ECF No. 538) at 13-14.

Plaintiffs' apparent agency theory similarly fails under Illinois law.  As discussed above, it is well-established that, as a general matter, under Illinois law "sexual assault by its very nature precludes a conclusion that it occurred within the employee's scope of employment."  *Doe ex rel. Doe*, 966 N.E.2d at 62; *see* Uber IL MTD (ECF No. 388) at 6 n. 4 (citing cases).

As this Court observed, "Plaintiffs have not identified any cases where an agent was held liable for a tort under an apparent agency theory that would not have given rise to vicarious liability even if the tortfeasor had been an actual agent."  Order at 25.  *See* Uber MTD Reply (ECF No 538) at 8-14.  For all these reasons, as fully discussed in Uber's motion to dismiss briefing, Plaintiffs' apparent agency theory of vicarious liability fails under Florida, Illinois and New York law.

DEFENDANTS' POSITION PAPER RE: PRETRIAL ORDER NO. 17          Case No. 3:23-md-3084-CRB

D. **Plaintiffs' Ratification Theory of Vicarious Liability Fails Under Florida, Illinois and New York Law**

As to Plaintiffs' ratification theory of vicarious liability, the Court concluded that "the facts alleged [in the Complaint] are insufficient to support a theory of ratification" under Texas or California law. Order at 30. In particular, "the allegations do not support a plausible inference that Uber knew about any given incident, nor do they permit inferences about what actions Uber took with respect to particular drivers." *Id.* The Court's analysis applies with equal force under the laws of Florida, Illinois and New York, which also require factual allegations that the defendant knew of, and adopted and approved, the particular tortious conduct in question. *See* Uber FL MTD (ECF No. 386) at 8-9; Uber IL MTD (ECF No. 388) at 8-9; Uber NY MTD (ECF No. 385) at 10-11; Uber MTD Reply (ECF No. 538) at 16-17. The Complaint does not allege facts supporting such a plausible inference as to any Plaintiff in any state. Indeed, Plaintiffs concede that they cannot "point to 'a specific agent's specific alleged misconduct'" that Uber purportedly failed to investigate or take appropriate action in response. *See* Uber MTD Reply at 14 (quoting Opp. at 49). Therefore, Plaintiffs' vicarious liability claims based on ratification should be dismissed under the laws of each state.[2]

E. **Plaintiffs' Common Carrier Non-Delegable Duties Claims Should Be Dismissed Under Florida and Illinois Law**

The Court dismissed Plaintiffs' common carrier non-delegable duties claims in Texas because a Texas statute "expressly declared" that TNCs such as Uber are not common carriers. Order at 31. The Court should dismiss these claims under both Florida law (for all incidents) and Illinois law (for incidents occurring before January 1, 2024) because those states have similar statutes expressly declaring that TNCs such as Uber are not common carriers.[3]

---

[2] In response to the Court's observation that "the Defense Fact Sheets may help" some plaintiffs amend their complaints, to the extent that they provide information about "whether Uber learned about and ratified a given incident," Order at 31, Uber proposed "holding the deadline to amend ratification causes of action in abeyance until shortly after Defense Fact Sheets are provided." Joint CMC Statement at 11 (Aug. 27, 2024), Dkt. 1501.

[3] Plaintiffs do not assert this claim under New York law. *See* Master Complaint (ECF No. 269) at ¶ 386.

DEFENDANTS' POSITION PAPER RE: PRETRIAL ORDER NO. 17          Case No. 3:23-md-3084-CRB

1        **1.      Florida**

2        Like the Texas TNC statute, Florida's TNC statute declares that "a TNC or TNC driver is

3    not a common carrier."  Fla. Stat. § 627.748(2).  *See* Uber FL MTD (ECF No. 386) at 23; Uber

4    Reply Br. (ECF No. 538) at 24.  Just as they argued under Texas law, Plaintiffs attempt to avoid

5    the plain language of the Florida statute by arguing that the statute is limited to "regulatory"

6    purposes as opposed to tort liability purposes.  This argument is unavailing for the reasons already

7    set forth in Uber's Reply Brief and the Court's Order, *see* ECF No. 538 at 24-26, and Order at 31

8    and n. 11.   Another court in this district recently ruled on this exact question, holding that the

9    Florida statute declares that TNCs "like Uber and Lyft" are not common carriers for tort liability

10   (or any other) purposes.  *Means* v. *Lyft, Inc.*, 2024 WL 3012795, at *4 (N.D. Cal. June 13, 2024).

11   In holding that the plaintiff in *Means* did "not have a common carrier claim under Florida law,"

12   the court rejected the same arguments that Plaintiffs advance here regarding a purported distinction

13   between "whether a company is a common carrier for purposes of the regulatory schemes" and

14   "whether a company owes a common carrier's heightened duty for tort liability purposes."  *Id.*

15   The *Means* court distinguished the same cases that Plaintiffs relied on here for the same reasons

16   outlined in Uber's Reply.[4]  Plaintiffs' common carrier non-delegable duties claims therefore must

17   be dismissed under Florida law.

18

19   _____

20   [4] In *Means*, the court distinguished these cases as follows:

         The statute there at issue [in *Nazareth* v. *Herndon Ambulance Serv., Inc.*, 467 So.
21       2d 1076, 1080 (Fla. App. 1985)], however, did not purport to define ambulances,
         or otherwise categorize them in any manner.  Here, by contrast, § 627.28 expressly
22       states a TNC 'is not a common carrier.' . . . Means' reliance on *Esurance Prop. Cas.
         & Ins. Co.* v. *Vergara*, No. 20-CV-81754, 2021 WL 2955962, at *5–6 (S.D. Fla.
23       June 29, 2021) and *Checker Cab Operators* v. *Miami-Dade Cnty.*, 899 F.3d 908,
         913 (11th Cir. 2018) likewise is unavailing.  Although the courts in both cases
24       referred to § 627.748 as regulatory, the issues presented therein were entirely
         distinct from the issue in the instant case.  *See Esurance*, 2021 WL 2955962, at *6
25       (finding § 627.748 not relevant to interpretation of insurance policy's exclusion of
         vehicles "used as a public or livery conveyance"); *Checker Cab*, 899 F.3d at 913
26       (holding § 647.748 preempted local ordinance authorizing TNCs to operate without
         medallion).
27

28   *Means* v. *Lyft, Inc.*, 2024 WL 3012795, at *4 (N.D. Cal. June 13, 2024).

### 2. Illinois

Like Texas and Florida, until January 1, 2024, Illinois law provided that TNCs like Uber are not common carriers.  625 Ill. Comp. Stat. Ann. 57/25 (2023).  *See* Uber IL MTD (ECF No. 388) at 10; Uber MTD Reply (ECF No. 538) at 26.  Therefore, Plaintiffs' common carrier non-delegable duties claims must be dismissed under Illinois law for any incident that occurred prior to January 1, 2024.  Indeed, Plaintiffs conceded as much, suggesting that they might amend the Complaint to assert these claims under Illinois law for incidents occurring only *after* January 1, 2024.  Opp. at 26.

## II.   PLAINTIFFS' FRAUD-RELATED CLAIMS SHOULD BE DISMISSED

The Court's dismissal of Plaintiffs' fraud claims was based on Plaintiffs' failure to meet the heightened pleading standard applicable to fraud claims under Federal Rule of Civil Procedure 9(b).  Order at 35-37.  In particular, the Court dismissed Plaintiffs' misrepresentation claims because "Plaintiffs do not dispute that they have not pled any plaintiff-specific allegations about whether a given plaintiff saw certain alleged misrepresentations, how they relied on them, and so forth." Order at 36.  Similarly, in dismissing Plaintiffs' claims based on alleged omissions, the Court explained that "[a]ssessing whether Uber owed a given plaintiff a duty to disclose based on allegedly misleading partial representations depends on what the relevant partial representations were—which, again, depends on what a given plaintiff actually saw and relied upon," and which Plaintiffs failed to allege.  *Id.* at 37.  Since the same federal pleading standard applies to all of Plaintiffs' fraud claims irrespective of the residence of the Plaintiff or location of the incident, the same reasoning requires dismissal of Plaintiffs' fraud claims under Florida, Illinois and New York law.

## III.   PLAINTIFFS' CLAIMS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED BECAUSE THOSE CLAIMS ARE NOT RECOGNIZED UNDER THE LAWS OF THE OTHER STATES

This Court dismissed Plaintiffs' negligent infliction of emotional distress ("NIED") claim under California law because NIED is "not an independent tort, but the tort of negligence."[5]  For

---

[5] Plaintiffs withdrew their NIED claim under Texas law.  Opp. at 3.

the same reason, Plaintiffs' NIED claim should be dismissed under Illinois, New York and Florida law as duplicative of Plaintiffs' negligence claims because the two claims are based on the same "operative facts and injury."  *Pippen* v. *Pedersen & Houpt*, 986 N.E.2d 697, 705 (Ill. Ct. App. 2013); *see Doe* v. *Uber Techs. Inc.*, 551 F. Supp. 3d 341, 364 (S.D.N.Y. 2021) (New York law prohibits NIED claim "if it is 'essentially duplicative of tort or contract causes of action.'"); *Singh* v. *Bascom*, 2010 Fla. Cir. LEXIS 7366, *3-4 (Fl. Cir. Ct. Dec. 14, 2010) (dismissing NIED claim because "Plaintiff already has stated a cause of action for negligence").  *See also* IL MTD (ECF No. 388) at 22; NY MTD (ECF No. 385) at 22; FL MTD (ECF No. 386) at 22; Uber MTD Reply (ECF No. 538) at 41-43.

Plaintiffs' NIED claim should be dismissed under Florida law for the additional reason that Plaintiffs fail to allege that they suffered emotional distress as a result of injury to another person to whom they have a "close personal relationship," as is required to state a viable claim for NIED. *Zell* v. *Meek*, 665 So. 2d 1048, 1054 (Fla. 1995); *see* FL MTD (ECF No. 386) at 22.

## IV.   PLAINTIFFS' NEGLIGENT ENTRUSTMENT CLAIMS SHOULD BE DISMISSED

The Court dismissed Plaintiffs' claim for negligent entrustment under California and Texas law principally because in both states, "the negligent entrustment cases uniformly concern instrumentalities that are themselves [] inherently dangerous in some way."  Order at 38.  The Court therefore dismissed Plaintiffs' negligent entrustment claim as it is premised on Plaintiffs' allegations that Uber permitted drivers to use its "trademarked decals and signage." *Id.*  The same rationale requires dismissal of Plaintiffs' negligent entrustment claim under Florida, Illinois and New York law.  *See* FL MTD (ECF No. 386) at 22-23; IL MTD (ECF No. 388) at 22; NY MTD (ECF No. 385) at 22; and Uber MTD Reply (ECF 538) at 45-46.  As demonstrated by Uber, Plaintiffs cite no cases from any of these states holding that entrusting an ordinary, non-dangerous object like a decal or sign can be the basis for liability of an intentional tort (like sexual assault) committed by an alleged entrustee. *Id.*

1
2

## V.   PLAINTIFFS' PRODUCTS LIABILITY CLAIMS SHOULD BE DISMISSED BECAUSE THEY FAIL TO PLAUSIBLY ALLEGE CAUSATION

3
4
5
6
7
8
9
10
11
12
13

In dismissing Plaintiffs' product liability claims under California and Texas law, the Court held that the claims "founder on the absence of individual allegations that make the causation allegations plausible."  Order at 47.  In particular, the Court explained that in order to avoid dismissal, "there need to be some allegations making causation plausible not just in a general, abstract sense, but with respect to the claims of the actual plaintiffs in this MDL."  *Id.* at 48.  However, "neither the [Master Complaint] nor the short-form complaints contain any description of the alleged incidents, nor do they otherwise explain how the absence of a given feature caused any particular assault."  *Id.*  Because this fundamental pleading defect in Plaintiffs' product liability claim applies to all Plaintiffs irrespective of the residence of the Plaintiff or location of the incident, the claim should be dismissed under Florida, Illinois and New York law as well.[6]

14

## VI.   INJUNCTIVE RELIEF

15
16

The Court dismissed Plaintiffs' claims for injunctive relief under the Unfair Competition Law because Plaintiffs failed to plausibly allege Article III standing.  Order at 48-52.  In particular, the

17

18
19
20
21
22
23
24
25
26
27
28

---

[6] Although the Court recognized that "[a]xiomatically, services are not products and do not give rise to strict liability," PTO 17 at 44 (quoting Restatement (Third) of Torts: Prods. Liab. § 19(b)), the Court concluded in PTO 17 that the Uber App may be characterized as a product, *id.* at 45. But as noted above, the Court dismissed Plaintiffs' product liability claim on other grounds. Uber maintains that, as a matter of law, the Uber App is not a "product" that may be subject to strict liability claims, and that Plaintiffs' product liability claims fail because the Uber App is a service. The allegations in the Complaint make crystal clear that the Uber App is a service, and was used as such by Plaintiffs. *See* Compl. ¶ 49 ("Uber provides an online and mobile application—the 'Uber App.' The Uber App connects persons seeking transportation with persons who use their personal vehicles to provide transportation in exchange for compensation. Users request and pay for rides through the customer version of the Uber App. Drivers are notified of requested rides, which they can then accept and be compensated for by Uber through the driver version of the Uber App."); *see also id.* ¶¶ 13 (referring to "Uber's services"), 70 ("transportation services"); 73 ("transportation services"), 179 (stating that Uber "offer[s] a service"); 206 (referring to "children using [Uber's] service"); 390 ("Uber charges standard fees for its services through its application.") 391 ("Any member of the public can use Uber's transportation services."). If Plaintiffs seek to amend their complaint to revive their product liability claims, Uber reserves the right to seek dismissal of any such amended claim on these and other grounds.

DEFENDANTS' POSITION PAPER RE: PRETRIAL ORDER NO. 17                    Case No. 3:23-md-3084-CRB

Court held that, "Plaintiffs cannot point to an injury-in-fact relating to Uber's misrepresentations because they have not plead specific facts showing those misrepresentations occurred," and that "Plaintiffs have made insufficient allegations that any individual plaintiff has more than a 'tenuous likelihood of future injury.'" *Id.* at 49-50 (quoting *Doe* v. *Match.com*, 789 F. Supp. 2d 1197, 1200 (C.D. Cal. 2011)). Because the same constitutional standing requirements apply to all Plaintiffs' claims for injunctive relief irrespective of the residence of the Plaintiff or location of the incident, the same reasoning that requires dismissal of all of Plaintiffs' claims for injunctive relief under California and Texas law, applies equally under Florida, Illinois and New York law.

## VII.   PUNITIVE DAMAGES

In PTO 17, the Court concluded that punitive damages are available under California and Texas law. Although Uber respectfully disagrees, Uber is not at this time seeking dismissal of the punitive damages claims under Florida, Illinois and New York law, and Uber reserves the right to do so at a later stage of the case.

## <u>CONCLUSION</u>

For the foregoing reasons and those discussed further in Uber's motion to dismiss briefing, ECF Nos. 384-388, 538, the Court respectfully should grant Uber's Motion to Dismiss Plaintiffs' claims for vicarious liability, fraud, negligent infliction of emotional distress, negligent entrustment, product liability, and injunctive relief under the laws of Florida, Illinois and New York.

DATED: September 13, 2024

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Robert Atkins*
    ROBERT ATKINS
    RANDALL S. LUSKEY
    JACQUELINE P. RUBIN
    YAHONNES CLEARY

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

-13-