*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT STATUS REPORT FOR OCTOBER 1, 2024 DISCOVERY STATUS CONFERENCE**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

# JOINT STATUS REPORT

In advance of the discovery status conference set by the Court for Tuesday, October 1, 2024 at 10:30 a.m., Plaintiffs, Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the parties"), respectfully submit this Joint Status Report. (ECF 1629).

## I. Custodians

On July 8, the parties agreed to a cap of 55 document custodians for both the JCCP and the MDL, with Plaintiffs reserving the right to request additional custodians for good cause if the need arises. The parties agree as to 37 custodians and dispute the remaining 18. The Court heard the parties' arguments on this dispute on September 19. The parties await the Court's decision.

## II. Non-Custodial Sources

On September 13, the parties filed a joint letter brief regarding Uber's identification of and production of documents from non-custodial data sources. The parties do not currently seek the Court's intervention on this issue.

**Plaintiffs' position:** In the September 13 letter, Uber committed to: (1) treat certain folders/documents on Google Drive used by multiple individuals as "non-custodial"; (2) identify additional data sources; (3) describe the categories of documents being produced and the requests to which the documents being produced are responsive; and (4) produce additional documents responsive to Plaintiffs' RFPs from non-custodial sources. (ECF 1643 at 1). Uber has also agreed to produce non-custodial documents including from the Knowledge Base policy repository, audio file repository, ticketing systems, Uber Application documents, marketing documents, and other structured data sources. However, to date, Uber has only produced around 7,000 documents from noncustodial sources, outside of DFS, PTO 5, and safety data documents.

**Uber's Position**: At the time of the September 13 agreement, Uber had produced ~6,600 pages of documents from noncustodial sources (excluding DFS (~29,000 pages), PTO 5 (~101,000 pages), and safety data productions (~ 9,700 pages, largely JIRA tickets)). Per the agreement, Uber commenced production of Google Drive documents on September 18, and has committed to producing responsive documents on a rolling basis. Uber is using best efforts to substantially complete these

productions by October 15. Meanwhile, by September 25, Uber had produced almost 155,000 pages of documents from non-custodial sources.

### III.  Defendant Fact Sheets (DFS)

Plaintiffs believe there are gaps in the DFS production and the parties. The parties are conferring to resolve this issue and do not seek Court intervention at this time.

### IV.  Plaintiff Fact Sheets

The parties are meeting and conferring regarding Defendants' alleged PFS deficiencies and do not seek Court intervention at this time.

### V.  Unsubstantiated Cases

**Uber's Position**: The number of unsubstantiated cases has increased significantly over the past few weeks, as Uber has served approximately 100 Defendant Fact Sheets on Plaintiffs (roughly 60 since the beginning of September) which state that Uber has not been able to confirm that a subject trip occurred. Uber's concern over these unsubstantiated cases is heightened by evidence of questionable filings it has seen in the MDL, including at least one instance where a receipt appeared to depict the same trip with the same rider with altered driver names.

Uber has been communicating with Plaintiffs' firms on an individual basis to discuss unsubstantiated cases, but the number of cases where a trip cannot be confirmed remains alarmingly high. Uber proposes that the parties be ordered to meet and confer regarding any case where Uber is unable to locate a matching trip and that Plaintiffs be ordered to produce, within 30 days after the parties meet and confer, additional information regarding that trip or a signed declaration that after a diligent search, such information cannot be provided. Many months ago Uber raised the issue of unsubstantiated cases, and is open to discussing Plaintiffs' proposed plan for addressing them. *See, e.g.*, May 24, 2024, Joint Case Mgmt. Statement (ECF 563); *see also* Mar. 22, 2024, Joint Status Conf. Statement at 9 (ECF 356).

**Plaintiffs' Position**: Uber first raised the above concerns to Plaintiffs in its September 25 draft of this Report, without any prior attempt to meet and confer about its allegations of "increasing" unsubstantiated cases, a process for substantiating trips, or its accusations of "questionable" or "altered" filings. Not only are these issues premature, but a suggestion that a singular concern Uber

identified with respect to an individual action is characteristic of the hundreds of cases that have indeed been substantiated is inappropriate, particularly without allowing Plaintiffs the opportunity to conduct an investigation as to that single alleged instance. Although the parties had an initial conversation about this singular issue on September 27, neither party has had an opportunity to fully investigate, nor has any discussion occurred regarding Uber's alleged global concerns or proposed process.

## VI. Additional Discovery From Plaintiffs

**Uber's Position**: As it has done previously, Uber requests that the Court order the parties to meet and confer over the scope of additional discovery from Plaintiffs. Uber acknowledges that the Court previously stated that it is not in a position to mandate such additional discovery at this time in the absence of a modification of Judge Breyer's case management orders. The parties should use the time at hand productively so that a more informed selection of representative cases can occur at the appropriate time.

**Plaintiffs' Position**: It is Plaintiffs' position that Uber's repeated requests regarding additional discovery of plaintiffs is improperly included in this Joint Status Report. There has been no change in the status of this issue since the August 8, 2024 Discovery Status Conference. At that time, the Court appropriately indicated that Judge Breyer has set parameters for phasing discovery and that it is not appropriate for Uber to seek to amend Judge Breyer's orders and change the parameters for discovery. (ECF 1050 at 28-29).

## VII. Clawback

On July 25, the Court heard arguments on Plaintiffs' challenge to Uber's clawback of three documents. The Court took the parties' briefs and arguments under submission and the parties await the Court's guidance on these challenges, which Plaintiffs believe will impact ongoing privilege disputes.

## VIII. Coordination with JCCP and Deposition Scheduling

**Uber's Position:** Uber has raised an interest in discussing a Coordination Order, and the Court has expressed interest in the parties' progress. (Aug. 8, Disc. Stat. Conf. Tr. at 26:21-27:4) Uber will provide the Court with current drafts of the Coordination Order and Deposition protocol upon request.

Currently, deposition dates are set in the JCCP for four Tranche 1 witnesses to occur between October. 7 and October 28.

**Plaintiffs' Position:** JCCP Plaintiffs and MDL Plaintiffs intend to do their best to coordinate to take a single deposition of common witnesses, however MDL Plaintiffs continue to have significant concerns about their ability to do so, particularly in light of the numerous disputes concerning validation, production of the underlying hyperlinked documents (discussed below) and privilege log disputes.

IX.   **Safety Data Production**

The parties have engaged in productive conferrals regarding Uber's production of incident data. The parties believe they are near agreement on both the format of production and a neutral third-party host for the data within a secure hosting platform. Production of the first tranche of incident data will follow finalization of remaining details. The parties continue to confer regarding two issues, (1) de-identification of PII within certain fields so Uber can produce data contained in free-text fields with the PII de-identified and hashed, and (2) production of free-text fields. At this time, the parties do not seek the Court's intervention.

**Plaintiffs Position**: Although Plaintiffs believe the Protective Order is sufficient to address Uber's concerns about security and confidentiality (and therefore this data could be produced on a hard drive), Plaintiffs have worked with Uber to address its concerns, engaging an expert consultant and expending significant time and resources. Therefore, it is Plaintiffs' position that Uber should bear all costs associated with the third-party host. Additionally, as Plaintiffs proposed on September 17, because the agreed platform will restrict Plaintiffs' and their experts' use of this data, it is Plaintiffs' position that Uber's experts should be required to use the same platform for accessing and analyzing this data that Uber is requiring Plaintiffs' experts to use. Finaly, Plaintiffs remain concerned as to whether Uber will fully comply with the Court's Orders on this issue with respect to providing data from free-text fields.

**Uber's Position:** Before this report, Plaintiffs have never expressed a preference to limit Uber's experts to using the same platform for accessing an analyzing this incident data as Plaintiffs' experts, and the parties have not met and conferred on this topic.  Given the highly confidential and

commercially sensitive nature of the incident data, which includes millions of rows of information about riders, independent drivers in all manner of safety and non-safety related incidents, and Uber's business processes in reporting and handling the data, Uber has engaged a third party neutral to securely host the data outside the company. While a Protective Order is in place, the vulnerability of such voluminous and sensitive data about Uber's riders and independent drivers warrants enhanced protection and security. Plaintiffs have repeatedly told the Court they do not oppose enhanced security for this data. To this end, Uber engaged a third-party neutral to design a hosting workspace to Plaintiffs' specifications, meeting each of Plaintiffs' requested needs, and providing Plaintiffs' experts unfettered access to run any analysis or reporting they desire within the secure space.

### X. Uber's Responses and Objections to Plaintiffs' Written Discovery

The parties have continued to meet and confer regarding Uber's objections to Plaintiffs' written discovery. The parties have made progress as to three categories of Uber's objections to Plaintiffs' First Requests for Production: requests that (1) relate to activities occurring outside of the U.S.; (2) call for information outside of a time scope 1-year prior to the 1st Complaint; and (3) relate to Uber's campaigns, business initiatives, or activities unrelated to sexual assault or sexual misconduct. Uber agrees to produce all non-privileged Rideshare marketing documents related to women and/or safety. During the week of September 30, Uber will provide its final position on production of marketing towards intoxicated persons and minors/families of minors, time scope, and certain rider safety initiatives outside the U.S. The parties do not seek Court intervention at this time but will seek the Court's guidance if they are unable to resolve these issues. Discussions regarding Uber's other objections are continuing.

### XI. Third Party Discovery

#### a. Briefing Regarding Third Party Discovery

Pursuant to the Court's Order (ECF 706, 1068), second round briefing of Plaintiffs' subpoenas to Ballard and Chertoff is fully submitted. (ECF 1549; 1555; 1617; 1619; 1624; 1625). Plaintiffs have proposed a third round of briefing; Uber has disagreed with the content and timing of this proposal. (*See* ECF 1521 at 4-6). Currently, two subpoena disputes are within this Court's jurisdiction: Plaintiffs' subpoenas to Tremont Strategies Group and Plaintiffs' Counsel Bret Stanley. Plaintiffs have

1  not moved to transfer enforcement proceedings to this Court for any of the remaining outstanding
2  subpoenas but will do so once the Court provides guidance.

   **b. Third Party Subpoena Negotiations**

4  **Plaintiffs' Position:** During the months Plaintiffs have worked to negotiate with third parties
5  to expediently resolve disputes, Plaintiffs have observed a troubling pattern in which third party
6  productions are delayed at the eleventh hour due to Uber's insistence on performing a confidentiality
7  review. The Protective Order (ECF 176) addresses confidentiality concerns for Uber and third parties
8  and therefore, confidentiality should not be used to hold up or prevent production of documents.

9  **Uber's Position**: Plaintiffs' claim of a "troubling pattern" of delay caused by Uber is baseless.
10 Uber has consistently communicated its need to review contemplated productions by subpoena
11 recipients where those productions may include Uber's confidential or privileged information, so that
12 Uber can determine whether to: (A) ask the non-party to withhold documents based on Uber's
13 privilege (in which case Uber would provide a privilege log to Plaintiffs); or (B) file a motion to quash
14 or for protective order.  The Court has recognized Uber's interest in its own confidential and
15 proprietary information held by non-parties when it acknowledged Uber's standing for subpoena
16 motion practice (ECF 695).  This review process has not caused undue delay in non-party productions.
17 Plaintiffs in the MDL and JCCP have issued 51 subpoenas to 38 entities.  Any "eleventh hour"
18 production delays have been caused by Plaintiffs' failure to keep Uber apprised of the status of its
19 negotiations and agreements with non-party subpoena recipients, despite the spirit of the Court's
20 orders on subpoena disputes which set up a cooperative process that includes Uber (*e.g.* ECF Nos.574,
21 695, 706, 1068).

22 **XII.   Contacting Former Uber Employees**

23 **Uber's Position:** Plaintiffs have hired a non-testifying expert, Sarah Kleiner, who has been
24 contacting numerous individuals who have been affiliated with Uber to discuss the case.  Uber is
25 concerned that Plaintiffs may have, or might in the future, violate Cal. Ct. R. 4.2. (and other similar
26 rules), which provides that Plaintiffs' counsel or others "shall not communicate directly or indirectly
27 about the subject of the representation with a person the lawyer knows to be represented by another
28 lawyer in the matter." Although there is no blanket prohibition on Plaintiffs' ability to contact

unrepresented former Uber employees in any and all circumstances, Uber currently represents a number of former employees, and Uber plans to represent additional former Uber employees Ms. Kleiner has contacted, or may contact going forward. These concerns are very real – just a few days ago, Plaintiffs contacted Carley Lake, a former Uber employee who is now represented by Uber's counsel.

Further, many current and former Uber employees have signed nondisclosure agreements arising from the confidential nature of their work at Uber. By seeking out individuals subject to such terms and advising them to provide information, Plaintiffs' counsel may be inducing breaches of contractual and other duties owed to Uber. Uber has also become aware that Ms. Kleiner contacted Claire Eagan—former in-house counsel at Uber, implicating obvious privilege issues. To ensure these issues do not continue to arise moving forward, on July 24, Uber proposed the parties enter into a stipulation providing for a process to ensure that any reach out to persons formerly employed by or affiliated with Uber only occurs where appropriate under the rules and after providing sufficient notice to Uber. Uber will provide the Court with the proposed stipulation upon request. Thus far, Plaintiffs have rejected this approach. The parties are finishing up the meet and confer process and will present any disputes via the PTO 8 process.

**Plaintiffs' Position:** This issue is the subject of ongoing meet and confer discussions. Uber's argument is not properly included in this joint status report. Plaintiffs do not agree with Uber's description of the facts or the dispute (among other things, Plaintiffs have not contacted any individuals who are currently affiliated with Uber, and Uber has not identified a single "rule" that has even arguably been violated). Further, Plaintiffs have requested that Uber provide a list of former employees that Uber represents and Plaintiff would agree not to contact those individuals, however, Uber has refused to do so. Plaintiffs will be prepared to address their position with the Court during the October 1 Status Conference should the Court wish to discuss this issue.

### XIII. Privilege Logs

Uber has served eight privilege logs to date for documents withheld or redacted for privilege for all nine of the priority custodians, including the four scheduled deponents noticed by the JCCP

Plaintiffs, in accordance with the Stipulated and PTO 14, the Stipulated Deposition Protocol, and ECF 1644, entered on Sept. 14, 2024.

**Plaintiffs' Position:** Defendants have logged approximately 32,000 privileged entries on their privilege logs thus far for custodians from whose files Uber has produced fewer than 100,000 documents. Plaintiffs have informed Uber of serial issues with privilege logs, which do not comply with the requisite Orders. These include failure to provide Bates numbers or unique document identifier, producing slipsheets for fully withheld entries, incomplete file names, general lack of detail to allow Plaintiffs to assess Uber's privilege claims, entries that appear conflicting with the ESI Order, and claimed privilege on communications with where no attorneys included. These problems prevent the privilege issues from being addressed wholesale (since Plaintiffs are still lacking complete details), waste considerable time in reviewing incomplete entries and cause significant delays and encumber coordination with depositions. Plaintiffs are concerned that in an attempt to coordinate on depositions with the JCCP, the MDL Plaintiffs will have to revisit depositions once the privilege log disputes are addressed and Uber produces improperly withheld documents, resulting in significant waste of time and money.

**Uber's Position:** On September 21, Plaintiffs categorically challenged 3,283 of the 4,394 entries in the September 14 privilege log for scheduled deponent Katy McDonald's custodial files and 771 of the 1,182 entries on the September 15 privilege log for scheduled deponent Andi Pimentel's custodial files. Uber has addressed Plaintiffs' formatting complaints and agreed to provide additional metadata, outside of what is required by the Privileged Materials Order or the ESI Order, and is currently reviewing Plaintiffs' other challenges.

## XIV. Hyperlinked Documents

**Plaintiffs' Position:** The ESI protocol makes clear that family members of responsive documents should be produced, with family relationships being maintained, and one version of hyperlinked documents should be produced. (ECF. 524 at 22, 30 Appendix 1, paragraph 1(e), 23). However, Plaintiffs have discovered that swaths of documents do not have family members, despite having hyperlinked documents in the text. In other words, the hyperlinked documents referenced in thousands of documents simply have not been produced. That Uber used Google Drive and would

often "attach" documents to an email via a hyperlink rather than physically attaching a file to an email does not absolve Uber of its obligation to produce the family members and to ensure that the metadata appropriately links these documents within the productions.

Plaintiffs first raised this with Uber on September 6, and Uber agreed to produce an overlay production which should fix issues already identified for Uber by the JCCP. But this is not a long-term solution. Auditing Uber's production takes hours, and Uber has an obligation to ensure that its production complies with the ESI protocol. That burden should not be shifted back to Plaintiffs. Further, the overlay that Uber did produce contains only a metadata overlay; it does not contain any new google documents that were identified by their parser but not produced. In other words, the problem still exists. To that end, Plaintiffs ask that Uber be ordered to audit its own production (1) to produce an overlay with fixes for all hyperlinked documents that do not properly have parent-child relationships noted in the metadata, and (2) produce all hyperlinked documents in each email or other document from its production.

**Uber's Position:** Hours before providing their portion of this Joint Status Report to Uber, Plaintiffs stated for the first time that they believe there are missing hyperlinked documents from Uber's productions. Plaintiffs did not make this assertion on September 6. Plaintiffs have not provided any specific details regarding this assertion or requested to meet and confer on this issue. Significantly, it was the JCCP Plaintiffs, not the MDL Plaintiffs, who identified specific hyperlinked documents for which they sought an overlay and production; Uber is producing what they requested. MDL Plaintiffs have never identified hyperlinked documents they believe have not been produced. This topic is therefore not yet ripe.

XV.   **Custodial Productions**

The parties have been working through a tranche-by-tranche priority process for production of custodial files, with 37 of the 55 custodians agreed upon to date.

**Uber's Position:** Since August 12, 2024, Uber has produced eight custodial production volumes comprising more than 321,600 pages and 86,000 documents from custodial records. Uber substantially completed production of all 20 priority custodians' data using JCCP terms on August 30. Pursuant to the Court's order on August 30 (ECF 1622) and the Stipulated Deposition Protocol (ECF

866), Uber has substantially completed production for the first nine custodians applying MDL search terms on September 15. The parties are conferring on Uber's request for an extension to complete custodial discovery following the Court's September 10 order.

**Plaintiffs' Position**: Given the low number of documents Uber has produced for custodians for whom Uber previously produced hit count reports for which were in the millions, Plaintiffs have substantial concerns as to Uber's compliance with the Privilege Order (ECF 396) and ESI Order (ECF 524) entered in this case, particularly with respect to improperly withholding documents for privilege, and use of TAR/the validation process. This may result in Uber improperly withholding responsive discovery, causes delay in deposition scheduling and coordination with JCCP, and significantly disadvantages Plaintiffs.

| | |
|---|---|
| By: /s/Roopal Luhana<br>ROOPAL P. LUHANA (*Pro Hac Vice*)<br>**CHAFFIN LUHANA LLP**<br>600 Third Avenue, Fl. 12<br>New York, NY 10016<br>Telephone: (888) 480-1123<br>Email: luhana@chaffinluhana.com<br>*Co-Lead Counsel for Plaintiffs*<br><br>SARAH R. LONDON (SBN 267083)<br>**LIEFF CABRASER HEIMANN & BERNSTEIN**<br>275 Battery Street, Fl. 29<br>San Francisco, CA 94111<br>Telephone: (415) 956-1000<br>Email: slondon@lchb.com<br><br>RACHEL B. ABRAMS (SBN 209316)<br>**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**<br>555 Montgomery Street, Suite 820<br>San Francisco, CA 94111<br>Telephone: (415) 426-5641<br>Email: rabrams@peifferwolf.com | By: /s/ Michael B. Shortnacy<br>MICHAEL B. SHORTNACY (SBN: 277035)<br>mshortnacy@shb.com<br>**SHOOK, HARDY & BACON, L.L.P.**<br>2049 Century Park East, Suite 3000<br>Los Angeles, CA 90067<br>Telephone: (424) 285-8330<br>Facsimile: (424) 204-9093<br><br>PATRICK OOT (*Pro Hac Vice* admitted)<br>oot@shb.com<br>**SHOOK, HARDY & BACON, L.L.P.**<br>1800 K Street NW, Suite 1000<br>Washington, DC 20006<br>Telephone: (202) 783-8400<br>Facsimile: (202) 783-4211<br><br>RANDALL S. LUSKEY (SBN: 240915)<br>rluskey@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>535 Mission Street, 24th Floor<br>San Francisco, CA 94105<br>Telephone: (628) 432-5100<br>Facsimile: (628) 232-3101<br><br>ROBERT ATKINS (*Pro Hac Vice* admitted)<br>ratkins@paulweiss.com<br>CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)<br>cgrusauskas@paulweiss.com<br>ANDREA M. KELLER (*Pro Hac Vice* admitted)<br>akeller@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990 |

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/Roopal P. Luhana
Roopal P. Luhana