IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br>_____/<br><br>This Order Relates To:<br><br>ALL ACTIONS | MDL No. 3084 CRB<br><br>**PRETRIAL ORDER NO. 18: ORDER ON MOTIONS TO DISMISS PURSUANT TO FLORIDA, ILLINOIS, AND NEW YORK LAW** |

## I. BACKGROUND

### A. Procedural Background

On August 15, 2024, the Court issued an order deciding Uber's Motions to Dismiss pursuant to the law of Texas and California. Pretrial Order No. 17: Order on Motions to Dismiss Pursuant to California and Texas Law (dkt. 1044). After issuing that order, the Court asked the parties to state their positions on how the Court's order should be applied to Uber's Motions to Dismiss under the laws of Florida, Illinois, and New York. Having received the parties' positions, the Court now decides Uber's remaining Motions to Dismiss. A more complete accounting of the procedural and factual background of this case, as well as a summary of the allegations in Plaintiffs' Master Complaint, can be found in the prior order.

In each of its Florida, New York, and Illinois Motions to Dismiss (dkt. 386, 385, 388), Uber moves to dismiss all pleaded claims except for Plaintiffs' core negligence claims. The following table indicates the parties' positions on how the Court should

1  decide those motions in light of its prior order, as stated in their supplemental briefs. See
2  dkt. 1637, 1641.

|  | **Florida** | **Illinois** | **New York** |
|---|---|---|---|
| Claim B: Negligent Entrustment Only | Grant | Grant | Grant |
| Claim C: Fraud and Misrepresentation | Grant | Grant | Grant |
| Claim D: Negligent Infliction of Emotional Distress ("NIED") | Disputed | Grant | Grant |
| Claim E: Common Carrier Non-Delegable Duties | Disputed | Disputed | Not Pleaded |
| Claim F: Other Non-Delegable Duties | Grant | Grant | Grant |
| Claim G.1: Respondeat Superior | Withdrawn | Disputed | Not Pleaded |
| Claim G.2: Apparent Agency | Grant | Disputed | Grant |
| Claim G.3: Ratification | Grant | Grant | Grant |
| Claim H: Products Liability | Grant | Grant | Grant |
| Claim I: Injunctive Relief | Grant | Grant | Grant |
| Punitive Damages | Deny | Deny | Deny |

Since the Plaintiffs concede that most of the claims challenged by Uber's motions should be dismissed in light of the Court's previous order, the Court does so now. Uber's Motion to Dismiss under the law of Florida is granted as to the following claims: Claim B (Negligent Entrustment only), Claim C (Fraud and Misrepresentation), Claim F (Other Non-Delegable Duties), Claim G (as to Apparent Agency and Ratification theories of Vicarious Liability), H (Products Liability), and Claim I (Injunctive Relief). Uber's Florida Motion is denied as to punitive damages. Uber's Motion to Dismiss under the law of Illinois is granted as to the following claims: Claim B (Negligent Entrustment only), Claim C (Fraud and Misrepresentation), Claim D (Negligent Infliction of Emotional Distress), Claim F (Other Non-Delegable Duties), Claim G.3 (Ratification), H (Products Liability), and Claim I (Injunctive Relief). Uber's Illinois Motion is denied as to punitive damages. Uber's Motion to Dismiss under the law of New York is granted as to all

challenged claims and is denied as to punitive damages.

With these undisputed matters out of the way, the Court now turns to four disputed issues: (1) whether Florida's transportation network company ("TNC") statute bars vicarious liability, (2) whether the Florida and Illinois TNC statutes bar common carrier liability, (3) Plaintiffs' NIED claim under Florida law, and (4) whether intentional torts can be considered within the scope of employment under Illinois law. The Court applies the same legal standard to these issues as discussed in its prior order on Uber's California and Texas motions to dismiss. See Pretrial Order No. 17 at 8.

## II. DISCUSSION

### A. Vicarious Liability Statute (Florida)

As it did in its Texas Motion to Dismiss, Uber invokes Florida's TNC Statute as a bar to vicarious liability. This statute reads, in relevant part:

> (18) Vicarious liability.--
> (a) A TNC is not liable under general law by reason of owning, operating, or maintaining the digital network accessed by a TNC driver or rider, or by being the TNC affiliated with a TNC driver, for harm to persons or property which results or arises out of the use, operation, or possession of a motor vehicle operating as a TNC vehicle while the driver is logged on to the digital network if:
> 1. There is no negligence under this section or criminal wrongdoing under the federal or Florida criminal code on the part of the TNC;
> 2. The TNC has fulfilled all of its obligations under this section with respect to the TNC driver; and
> 3. The TNC is not the owner or bailee of the motor vehicle that caused harm to persons or property.

Fla. Stat. § 627.748(18).

Plaintiffs, for their part, argue that sexual assault is not the sort of harm envisioned by the statute, and it thus does not apply here. They hang their hat on subclause 18(a)(3), which requires that the TNC not own "the motor vehicle that caused harm to persons or property" for the section to apply. Id. In Plaintiffs' eyes, this means the statute precludes vicarious liability for only those harms that are caused by motor vehicles (i.e., car accidents). The Court considered similar arguments regarding Texas's TNC Statute and found the statute precluded vicarious liability. See Pretrial Order No. 17 at 12–14. For

3

1   similar reasons as discussed there, the Court finds Florida's TNC statute encompasses
2   sexual assault.
3       As the Court noted with regard to the Texas TNC statute, "[d]eciding how the TNC
4   [statute] applies to claims for sexual assaults by rideshare drivers is an exercise in statutory
5   interpretation." Dkt. 1044 at 13.  In Florida, as in Texas, "[t]he goal of statutory
6   interpretation is to identify the Legislature's intent." Schoeff v. R.J. Reynolds Tobacco
7   Co., 232 So. 3d 294, 301 (Fla. 2017).  "If the plain meaning of the language is clear and
8   unambiguous, then the Court need not delve into principles of statutory construction unless
9   that meaning leads to a result that is either unreasonable or clearly contrary to legislative
10  intent." Polite v. State, 973 So. 2d 1107, 1111 (Fla. 2007), as clarified (Jan. 24, 2008).
11      The plain meaning of the statute's language indicates a legislative intent for broad
12  limitation of a TNC's vicarious liability.  Plaintiffs' point that subclause 18(a)(3) only
13  contemplates harms caused by motor vehicles is well-taken, but the language used in its
14  parent clause clearly contemplates other harms: those "result[ing] or aris[ing] out of the
15  use, operation, or possession of a motor vehicle operating as a TNC vehicle while the
16  driver is logged on to the digital network." Fla. Stat. § 627.748(18)(a).  If the legislature
17  intended to limit the covered harms to just car accidents, it would not have defined those
18  harms so broadly in the introductory paragraph.  Further, for the vicarious liability bar to
19  apply, the Florida TNC statute requires that "[t]he TNC has fulfilled all of its obligations
20  under this section with respect to the TNC driver," including screening drivers for prior
21  offenses like sexual battery.  Id. at (12)(d)(1)(c).  As the Court noted in its prior order,
22  "[c]onditioning the statute's protections on compliance with these obligations would make
23  little sense if the statute were only applicable to car accidents." Pretrial Order No. 17 at
24  14.  The Court thus finds the text of the statute is sufficiently clear to determine it
25  encompasses sexual assault and precludes Uber from being found vicariously liable for
26  such harms.
27      Plaintiffs point out that this section of the statute became effective on June 23,
28  2020.  Thus, any vicarious liability claims based on incidents occurring before that date

remain unaffected by the Florida TNC statute's vicarious liability bar.

### B.     Common Carriers' Non-Delegable Duties (Florida and Illinois)

Uber moves the Court to dismiss Claim E under both Florida and Illinois law because each state's TNC statute carves out TNCs as common carriers. Plaintiffs dispute this point with regard to Florida law but tacitly concede Illinois's TNC Statute precludes common carrier liability, at least before it was repealed on January 1, 2024. See Plaintiffs' Suppl. Br. (dkt. 1637) at 3–4.

Plaintiff's arguments that Florida's TNC statute only applies for regulatory purposes are as unavailing under Florida law as they were under Texas law. See Pretrial Order No. 17 at 31, n.11. Florida's statute is clear: TNCs are not common carriers. Judge Chesney considered virtually identical arguments over Florida's TNC Statute in an unrelated case in this District, and the Court sees no reason to depart from that precedent. See Means v. Lyft, Inc., 2024 WL 3012795, at *4 (N.D. Cal. June 13, 2024).

But although the statutes dictate that Uber was not a common carrier for the time they were in place, neither statute has been in place for the entire period covered by the Master Complaint, and neither statute is retroactive. As the Illinois TNC Statute was repealed January 1, 2024, common carrier claims relating to any incidents which occurred after that date are not affected by the statute. The Florida statute is still valid law but did not become effective until July 1, 2017. Thus, common carrier claims relating to incidents that occurred before that date are similarly not affected by the statute. With some number of common carrier claims still live under both Florida and Illinois law, the Court now turns to analyzing the scope of Uber's duties as a common carrier in each state.

Florida and Illinois have similar definitions of a common carrier. Fla. Stat. § 908.111 ("'Common carrier' means a person, firm, or corporation that undertakes for hire, as a regular business, to transport persons or commodities from place to place, offering his or her services to all such as may choose to employ the common carrier and pay his or her charges."); Browne v. SCR Med. Transp. Servs., Inc., 356 Ill. App. 3d 642, 646, 826 N.E.2d 1030, 1034 (2005) ("a common carrier is one who undertakes for the public to

transport from place to place such persons or the goods of such persons as choose to employ him for hire.") (internal quotations and citations removed). There seemingly can be no doubt that for the period not covered by the applicable TNC Statute, Uber would meet the definition of a common carrier in both states.

Florida law imposes a duty on common carriers that "includes vicarious liability for the torts of employees visited upon a passenger while the contract for transport is being accomplished." Nazareth v. Herndon Ambulance Serv., Inc., 467 So. 2d 1076, 1081 (Fla. Dist. Ct. App. 1985). It is of no moment whether or not "the employee's actions fall outside the scope of employment." Nadeau v. Costley, 634 So. 2d 649, 652 (Fla. Dist. Ct. App. 1994). Rather, Florida courts apply a "strict liability rule for employee assaults in common carrier-passenger cases." Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 915 (11th Cir. 2004).

Similarly, in Illinois, "[c]ommon carriers owe their passengers the highest degree of care." Green v. Carlinville Cmty. Unit Sch. Dist. No. 1, 381 Ill. App. 3d 207, 213, 887 N.E.2d 451, 456 (2008). This duty extends to "the intentional acts of its employees, even if those acts are committed outside the scope of employment." Dennis v. Pace Suburban Bus Serv., 2014 IL App (1st) 132397, ¶ 16, 19 N.E.3d 85, 92. It is clear to the Court that common carrier liability would extend to sexual assaults by drivers against passengers under both Florida and Illinois law.

Uber's only argument around this issue is a brief reference to three decisions from other states suggesting disagreement with these longstanding principles of common law. See Uber's Omnibus Reply at 21–22, n.12. The Court finds this argument unconvincing. Therefore, for cases arising in the period before Florida's TNC Statute became effective, the Court denies Uber's Florida Motion to Dismiss as to Claim E and further finds Uber's common carrier non-delegable duties can form an independent basis for vicarious liability under Florida law. For cases arising in the period after Illinois's TNC Statute was repealed, the Court denies Uber's Illinois Motion to Dismiss as to Claim E and finds Uber's common carrier non-delegable duties can form an independent basis for vicarious

6

liability under Illinois law.

### C. Claim D: Negligent Infliction of Emotional Distress (Florida)

Uber moves to dismiss Plaintiffs' claim for the negligent infliction of emotional distress (NIED) under Florida law. The elements for NIED are:

> (1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person.

Zell v. Meek, 665 So. 2d 1048, 1054 (Fla. 1995).

Plaintiffs have not alleged that any other persons were involved in the underlying assaults, let alone that such a person had a relationship with the plaintiff. Thus, their allegations cannot support elements (3) or (4) of an NIED claim.

Plaintiffs rely on Florida's "impact rule" to carry their NIED claim, despite not meeting the claim's elements. But the "impact rule" is better understood as a limit on the scope of recovery for emotional suffering rather than to expand the definition of NIED. See Rowell v. Holt, 850 So. 2d 474, 478 (Fla. 2003) ("The impact rule has been traditionally applied primarily as a limitation to assure a tangible validity of claims for emotional or psychological harm."). As such, Plaintiffs' claim for negligent infliction of emotional distress under Florida law is dismissed.

### D. Claim G: Vicarious Liability (Illinois)

Finally, Plaintiffs maintain a tenuous grip on two theories of vicarious liability under Illinois law: respondeat superior and apparent agency. Both theories, Plaintiffs say, rise and fall on whether Uber authorized or enabled the conduct of their drivers. See Plaintiff's Suppl. Br. at 4. The question for both theories turns, in other words, on whether the alleged sexual assaults were within the scope of employment. As Plaintiffs point out, the analysis required here is different from that the Court's applied in its prior Order on California law, because "California does not follow the traditional common law rule that intentional torts can only be considered 'within the scope of employment' where the employee acts to serve the employer's interests." Pretrial Order No. 17 at 15 (citing Lisa

M. v. Henry Mayo Newhall Meml. Hosp., 907 P.2d 358, 361 (Cal. 1995)).

The traditional common law rule the Court referenced bars Plaintiffs' remaining vicarious liability theories. Illinois law is clear on the matter. In a nearly identical context (sexual assaults by a ridesharing company driver), an Illinois appeals court noted that "an act of sexual assault, by its very nature, precludes the conclusion that it was committed within the scope of employment." Doe v. Lyft, Inc., 2020 IL App (1st) 191328, ¶ 19, 176 N.E.3d 863, 870 (internal quotations and citations removed). Indeed, "in Illinois the cases are clear that as a matter of law acts of sexual assault are not within the scope of employment." Deloney v. Bd. of Educ. of Thornton Twp., 666 N.E.2d 792, 799 (Ill. App. Ct. 1996).

To overcome these clear statements of Illinois law, Plaintiffs rely on two federal decisions. One is Doe v. Roe, a 2013 case in which an on-duty police officer sexually assaulted the plaintiff, who sued the police department that employed the assailant. The court denied a motion to dismiss the plaintiff's respondeat superior claims, finding that the sexual assault could be considered within the police officer's scope of employment. Doe v. Roe, 2013 WL 2421771, at *4 (N.D. Ill. June 3, 2013). Uber urges the Court to reject this precedent as a being a member of a "group of inapposite cases involving police abuse" of power. Omnibus Reply at 6. But the Court need not parse whether the scope of a police officer's employment is different from that of another employee because the reasoning of Doe v. Roe has been explicitly rejected by the appellate courts of Illinois. See Powell v. City of Chicago, 2021 IL App (1st) 192145, ¶ 27, 197 N.E.3d 219, 226 (stating, in a discussion of Doe v. Roe and similar federal cases, "[t]hese cases fail to convince us to diverge from the strong precedent set forth by this court; specifically, they fail to explain how sexual assault is the kind of conduct that a police officer is employed to perform and how sexual assault furthers an employer's business."). Although Illinois appellate courts have not commented on the other case Plaintiffs rely on, Jones v. Patrick & Assocs. Detective Agency, Inc., 442 F.3d 533 (7th Cir. 2006), Doe v. Roe relies heavily on its reasoning to reach its conclusion. See 2013 WL 2421771 at *4. The Court is convinced

1 Illinois courts would be no more compelled by Jones than they are Doe v. Roe. Therefore,
2 the Court declines to adopt the rule articulated in those cases.
3 As sexual assault cannot be considered within the scope of employment under
4 Illinois law, Plaintiffs' remaining vicarious liability theories must be dismissed.

### III. CONCLUSION

For the foregoing reasons, the Court orders as follows:

Uber's Motion to Dismiss under the law of Florida is granted as to the following claims: Claim B (Negligent Entrustment only), Claim C (Fraud and Misrepresentation), Claim D (Negligent Infliction of Emotion Distress), Claim E (Common Carriers' Non-Delegable Duties, in part, as discussed above), Claim F (Other Non-Delegable Duties), Claim G (Vicarious Liability, in part, as discussed above), H (Products Liability), and Claim I (Injunctive Relief). Uber's Florida Motion is denied as to punitive damages and those vicarious liability and common carrier claims not excluded by Florida's TNC Statute, as discussed above.

Uber's Motion to Dismiss under the law of Illinois is granted as to the following claims: Claim B (Negligent Entrustment only), Claim C (Fraud and Misrepresentation), Claim D (Negligent Infliction of Emotional Distress), Claim E (Common Carriers' Non-Delegable Duties, in part, as discussed above), Claim F (Other Non-Delegable Duties), Claim G (Vicarious Liability, in part, as discussed above), H (Products Liability), and Claim I (Injunctive Relief). Uber's Illinois Motion is denied as to punitive damages and those vicarious liability and common carrier claims not excluded by Illinois's TNC Statute, as discussed above.

Uber's Motion to Dismiss under the law of New York is granted as to all challenged claims and is denied as to punitive damages.

Dismissal is with leave to amend.

**IT IS SO ORDERED.**

Dated: October 7, 2024

CHARLES R. BREYER
United States District Judge