UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | Case No.  23-md-03084-CRB   (LJC)<br><br>**ORDER RE: JOINT DISCOVERY LETTER BRIEF ON PLAINTIFFS' CLAWBACK CHALLENGE**<br><br>Re: Dkt. No. 664 |

On June 24, 2024, the parties submitted a Joint Discovery Letter Brief over Plaintiffs' challenge to Defendant Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's (collectively, Uber's) claim of privilege over three[1] documents inadvertently produced by Uber during its PTO No. 5 document production, as well as attachments potentially related to two of those documents.  Dkt. No. 664.  The challenged documents (but not attachments) were lodged with the Court under seal for *in camera* review.  Dkt. No. 663.  The Court held a hearing on the matter under seal on July 25, 2024.  Dkt. No. 748.  Having considered the parties' submissions and arguments, and all relevant authorities, the Court addresses the parties' disputes as stated below.

**I.    BACKGROUND**

Uber withheld as privileged the documents at issue in this dispute in an unrelated litigation, *Jane Doe v. UTI*, Case No. 2020-67824 (Harris Cnty. D. Ct. Tex.).  Dkt. No. 664 at 1.  As part of Uber's PTO No. 5 production in this multidistrict (MDL) litigation, which required Uber to

---

[1] The introduction to the parties' Joint Letter refers to five documents inadvertently produced, which appears to include two documents that Plaintiffs agreed Uber may claw back.  *See* Dkt. No. 64 at 1, 2.

1  produce documents it had previously produced "in any other Uber sexual assault cases," Dkt. No.
2  175 at 4, Uber inadvertently produced five documents to Plaintiffs that it had withheld in *Doe v.*
3  *UTI*.  Upon learning of the inadvertent disclosure, Uber sent a Notice of Clawback pursuant to
4  PTO No. 14, which governs the production of discovery materials containing potentially
5  privileged information.  *See* Dkt. No. 396.  Plaintiffs sent Uber a Notice of Clawback Challenge,
6  and Uber in turn responded with a Challenge Response.  Dkt. No. 664 at 1.  After meeting and
7  conferring, but before the filing of the Joint Discovery Letter Brief, Plaintiffs withdrew their
8  challenge to two of the five documents.  *Id.* at 2.
9        Of the three remaining documents, two of them are offshoots of the same email thread,
10 where Uber's in-house counsel was eventually added to thread and asked for legal advice
11 regarding policy changes that were being considered.  *Id.*  Plaintiffs' challenge to Uber's claim of
12 privilege is only as to two initial emails (dated August 12, 2019 and August 20, 2019) sent by
13 Valerie Shuping, Uber's Global Safety Program Manager, before Uber in-house counsel was
14 added to the thread.  *Id.*  The third document is a "Safety Criteria Update Comms Plan" created for
15 internal use by the Communications and Public Policy Teams, which Uber contends was provided
16 to Uber in-house counsel for legal review and advice.  *Id.* at 3, 5.

## II.     LEGAL STANDARD

18       "[I]n a civil case, state law governs privilege regarding a claim or defense for which state
19 law supplies the rule of decision."  Fed. R. Evid. 501.  The parties agree that California law
20 applies to Uber's claim of privilege.  *See* Dkt. No. 664 at 2, 5, n.7; *see also Holley v. Gilead Scis.,*
21 *Inc.*, No. 18-cv-06972 JST (JSC), 2021 WL 2371890, at *2 (N.D. Cal. June 10, 2021) (applying
22 California choice-of-law rules to conclude that California privilege law applied in a case with
23 "factual connections to multiple states," where no party introduced evidence of a conflict of laws
24 or another state's governmental interest in applying its own law).
25       Under California law, the attorney-client privilege is governed by statute and applies to
26 confidential communications between client and lawyer during the course of the attorney-client
27 relationship.  *See* Cal. Evid. Code §§ 911, 954, 952.  "The party claiming the privilege has the
28 burden of establishing the preliminary facts necessary to support its exercise."  *Costco Wholesale*

*Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege," then the privilege is presumed to apply, and "the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). Where the "dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Id.* "[T]he relevant inquiry is not the content of the communication but is instead the relationship of the communicators." *Id.* at 52. If "the communications were made during the course of an attorney-client relationship"—as opposed to a relationship with some other "dominant purpose"—then "the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means." *Costco*, 47 Cal. 4th at 740.

However, "[i]t is established that otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1504 (2007). And a corporation cannot "shield facts, as opposed to communications, from discovery. Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney." *Id.* Finally, "the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent." *Chi. Title Ins. Co. v. Superior Ct.*, 174 Cal. App. 3d 1142, 1151 (1985) (citing *Aetna Cas. & Sur. Co. v. Superior Ct.*, 153 Cal. App. 3d 467, 475 (1984))

**III.   DISCUSSION**

    **A.   August 12, 2019 and August 20, 2019 Emails**

At the hearing, Uber informed the Court that the previous evening, it had reached out to Plaintiffs and offered to reproduce the two email threads with redactions only to the portions

3

1    Plaintiffs were not challenging, thus producing in full the August 12, 2019 and August 20, 2019

2    emails from Valerie Shuping.  Uber indicated that it was agreeing to do so without "waiver of the

3    subject matter" and in "the spirit of compromise and judicial efficiency."  Dkt. No. 764 at 37–38.

4    The parties still dispute, however, whether Uber is required to produce all attachments,

5    particularly the two draft policies Shuping attached to the emails.

6          The Court's understanding from the Joint Discovery Letter Brief is that Plaintiffs'

7    privilege challenge was to both the emails and any attachments.  *See* Dkt. No. 664 at 5 ("Plaintiffs

8    are challenging Uber's privilege assertions only as to the August 20, 2019 (7:03 PM) and August

9    12, 2019 (4:38 PM) emails sent by [Shuping] to unknown recipients (including any attachments,

10   which Uber has not yet produced).").  But counsel for Uber asserted that Uber believed this was a

11   new request, that the attachments to the emails were not discussed during the parties' meet and

12   confers, and that the attachments would need to be located and reviewed to see if they were

13   potentially privileged.

14         Because the attachments were not lodged with the Court for *in camera* review, and their

15   privileged nature was not otherwise explained in the briefing, the Court orders the parties to meet

16   and confer as to Uber's potential claim of privilege over the attachments no later than October 11,

17   2024.  If a dispute remains, the parties shall file a new joint discovery letter pursuant to PTO No.

18   8 as to the attachments and may lodge them with the Court (under seal if necessary) for *in camera*

19   review.  The parties shall file no later than October 16, 2024 either a stipulation resolving their

20   dispute over the attachments or a joint letter presenting that dispute to the Court.

21       **B.**    **Safety Criteria Update**

22         In support of Uber's claim of privilege over the "Safety Criteria Update" document, Uber

23   submitted a declaration from Nicole Benincasa, who is currently Senior Counsel, Regulatory,

24   Delivery.  *See* Dkt. No. 664-10 (Benincasa Decl.) ¶ 2.  In 2015 and 2016, around the time the

25   Safety Criteria Update was created, Benincasa was Northeast Regional Associate Counsel,

26   Regulatory.  *Id.*  Benincasa asserts that she is familiar with the Safety Criteria Update and

27   recognizes the document from her work providing legal advice to the Communications and Public

28   Policy Teams.  *Id.* ¶ 3.  She recalls that the document was prepared in late 2015 or early 2016 in

1  connection with Uber's internal decision-making regarding Uber company policies in light of
2  California's Proposition 47. *Id.* ¶ 4. It was then shared with Benincasa and with another in-house
3  lawyer, Matt Burton (Legal Director II, Regulatory Development), in early January 2016 "for the
4  purpose of obtaining legal review and advice." *Id.* ¶ 6. According to Benincasa, it is "customary"
5  that attorneys for the Regulatory Team review documents like the Safety Criteria Update to
6  evaluate "the correctness of statements about the change in law," advise "Uber on its regulatory
7  and legal responsibilities under the law" as well as the "impact of regulatory changes" on riders
8  and independent drivers. *Id.* ¶¶ 7–8.

9  On its face, the Safety Criteria Update is a plan for public outreach regarding changes to
10 Uber policy in response to a change in California law. Although communications between other
11 Uber employees and attorneys like Benincasa and Burton for the purpose of obtaining legal
12 advice—including asking them to review a draft public outreach plan for potential legal pitfalls—
13 would generally be privileged, those communications are not at issue in the present dispute. In
14 other words, Plaintiffs do not claim they are entitled to whatever emails or other messages Uber's
15 employees on the Communications Team might have sent to Benincasa. Regardless of whether
16 those emails attached the Safety Criteria Update, the emails themselves would be privileged.
17 Moreover, if other Uber employees had excerpted or summarized the Safety Criteria Update in an
18 email to Benincasa in the course of seeking her legal advice, that email would be privileged in its
19 entirety, even though it contained factual information created for a business purpose. *See Costco*,
20 47 Cal. 4th at 740 (explaining that "reports of factual material" included in attorney-client
21 communications are privileged, "even though the factual material might be discoverable by some
22 other means"). But the parties have not asked the Court to address such a communication.

23 Instead, this dispute concerns the outreach plan itself, which Benincasa states "was
24 prepared by the Communications and Public Policy Teams in late 2015 or early 2016 in
25 connection with Uber's internal decision making regarding Uber company policies in light of
26 California's Proposition 47." Dkt. No. 664-10, ¶ 6. It is itself a communication among the
27 members of those teams, whose relationship did not have a dominant attorney-client purpose. *See*
28 *generally Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628 (N.D. Cal. 2019) (treating

5

public relations as distinct from legal advice); *Behunin v. Superior Ct.*, 9 Cal. App. 5th 833 (2017).[2]

Benincasa does not assert that the Safety Criteria Update was created for the purpose of seeking legal advice, but instead states only that the Communications and Public Policy Teams sent copies to her and Burton for their review some time after those teams created the document. Dkt. No. 664-10, ¶ 6. If the document was not privileged when Uber's policy and communications teams created it, then merely sending a copy later for lawyers to review does not retroactively render it privileged. *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504 ("Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney."); *see also Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 5024457, at *3 (N.D. Cal. Oct. 20, 2011) ("Simply labeling a document as privileged and confidential or sending it to a lawyer does not automatically confer privilege.") (applying federal law). Uber's request to claw back the Safety Criteria Update is therefore DENIED.

//
//
//
//
//
//
//
//
//

---

[2] *Anderson* and *Behunin* both concerned communications among a client, an attorney, and an outside public relations firm, and thus dealt with issues of when disclosure to a third party waives privilege, which are not present here. Those cases' treatment of the outside consultants' role as distinct from that of legal counsel nevertheless informs this Court's conclusion that the work of Uber's Communications and Public Policy teams is not inherently privileged, at least absent some showing by Uber that those teams in themselves included attorneys providing legal advice such that the communications within or between those teams were part of a predominantly attorney-client relationship even before the attorneys Burton and Benincasa were consulted.

## IV. CONCLUSION

For the reasons explained above, the Court understands that the parties have resolved their dispute as to the 7:03 PM and 4:38 PM emails sent by Valerie Shuping, but not their attachments. The parties are ORDERED to meet and confer regarding the disputed email attachments no later than October 11, 2024, and to file either a stipulation or a joint letter addressing any remaining dispute no later than October 16, 2024. Uber's request to claw back the Safety Criteria Update Comms Plan is DENIED. This Order terminates Dkt. No. 664.

**IT IS SO ORDERED.**

Dated: 10/8/2024

LISA J. CISNEROS
United States Magistrate Judge