UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.  23-md-03084-CRB   (LJC) |
| This Document Relates To:<br><br>ALL CASES. | **ORDER REGARDING SUBPOENA TO CHERTOFF GROUP AND ADMINISTRATIVE MOTION TO CONSIDER SEALING**<br><br>Re: Dkt. Nos. 1549, 1554 |

### A.        Introduction

This Order resolves a discovery dispute regarding a subpoena that Plaintiffs served on nonparty Chertoff Group, LLC (Chertoff), *see* Dkt. Nos. 1549, 1619, 1625, as well as a related administrative motion to consider whether materials should be filed under seal, Dkt. No. 1554. The Court assumes the parties' familiarity with the facts and history of this multidistrict litigation.

### B.        Discovery Dispute Regarding Subpoena to Chertoff Group

#### 1.        Background

Plaintiffs served a subpoena on nonparty Chertoff, a security and risk management consulting agency, seeking documents related to Chertoff's work evaluating Uber's handling of sexual misconduct by drivers.  The present dispute primarily concerns a report that Chertoff prepared for Uber in 2019 addressing how Uber applied a taxonomy of sexual harassment, sexual misconduct, and sexual assault to categorize "safety incidents."

Plaintiffs and Chertoff have narrowed their dispute substantially:  Plaintiffs have withdrawn several requests, and Chertoff has agreed to produce draft versions of the report that it shared with Uber and the written materials it relied on to prepare the report, subject to Uber's review for potential claims of privilege.  The only remaining dispute is whether Chertoff must produce "interview materials" for Uber employees that Chertoff interviewed in preparing the

United States District Court<br>Northern District of California

report.[1]

Plaintiffs argue that Chertoff's interview materials are relevant to Plaintiffs' theories of Uber's negligence in addressing sexual misconduct by its drivers, and that any burden on Chertoff is minimal when Chertoff's report identifies the six Chertoff employees who prepared it and the fifteen Uber employees who they interviewed. *See generally* Dkt. No. 1549. Plaintiffs contend that that Chertoff investigated some of the same issues Plaintiffs now seek to understand, and Plaintiffs should be allowed to see what Chertoff found. *See, e.g.*, *id.* at 3 ("Plaintiffs can try to piece together what [Uber's taxonomy] process entailed—but Uber's employees have already described it to Chertoff and holding back that information on relevance grounds is unwarranted.").

Chertoff argues that its own internal records are not relevant to what Uber knew about safety concerns, that anything else it might have would be cumulative to discovery Plaintiffs could more appropriately seek from Uber, and that it would be unduly burdensome on Chertoff to collect these records, particularly when Uber may still assert that anything Chertoff has is privileged. *See generally* Dkt. No. 1619. Uber "agrees and joins in" Chertoff's "burden and overbreadth arguments" by reference, and otherwise asserts only that it should be permitted to review any potential production by Chertoff for privilege or work product protection—a process the parties appear to have agreed is appropriate. *See generally* Dkt. No. 1625. Uber asserts that "Chertoff was retained by in-house counsel at Uber for the purpose of obtaining and facilitating the provision of legal advice," but makes clear that "Uber is not moving to quash the entire subpoena." *Id.* at 2.

## 2. Legal Standard

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A court must quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i), (iv). "Although irrelevance is not among the litany of enumerated

---

[1] This category has been narrowed from Request No. 9 in the subpoena, which sought "all communications with Uber and/or Uber's agents, employees, officers, or directors relating to Uber's First, Second, or Third U.S. Safety Report." ECF No. 1549-2 at 11.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor

2    [related to undue burden] when determining motions to quash a subpoena." *Moon v. SCP Pool*

3    *Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).

4         "Unless otherwise limited by court order," Rule 26 of the Federal Rules of Civil Procedure

5    provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant

6    to any party's claim or defense and proportional to the needs of the case, considering the

7    importance of the issues at stake in the action, the amount in controversy, the parties' relative

8    access to relevant information, the parties' resources, the importance of the discovery in resolving

9    the issues, and whether the burden or expense of the proposed discovery outweighs its likely

10   benefit." Fed. R. Civ. P. 26(b)(1).

11        "The scope of [subpoena] discovery under Rule 45 is the same as under Rule 26(b)."

12   *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA (JSC), 2017 WL 2929439, at *2 (N.D.

13   Cal. July 7, 2017). That said, the "Ninth Circuit has long held that nonparties subject to discovery

14   requests deserve extra protection from the courts." *Maplebear Inc. v. Uber Techs., Inc.*, No. 21-

15   mc-80007-SK, 2021 WL 1845535, at *1 (N.D. Cal. Mar. 23, 2021) (citation omitted); *High Tech*

16   *Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing

17   *United States v. C.B.S.*, 666 F.2d 364, 371–72 (9th Cir. 1982)).

18              **3.      Analysis**

19        What Uber knew about alleged incidents of sexual assault and harassment by its drivers,

20   and how it tracked and categorized such incidents, are potentially important issues in this

21   litigation. One of Plaintiffs' theories of negligence is that Uber did not gather sufficient

22   information about incidents of sexual assault and mismanaged its categorization program. *See*

23   Dkt. No. 1549 at 2.

24        Chertoff interviewed fifteen Uber employees in the course of preparing its report. Dkt. No.

25   1554-4 at 32 (under seal). Interviewees ranged from high-level corporate officers to "frontline

26   auditors" who applied the taxonomy. *Id.* at 9. Those employees' interview testimony regarding

27   Uber's development and application of its taxonomy is reasonably likely to be relevant to

28   Plaintiffs' claims. The interviews may include information that does not exist in other documents

1   discoverable from Uber—or even in the same employees' recollection several years later, if

2   Plaintiffs were to depose them now.

3       That said, Plaintiffs have not explained what their request for "interview materials" might

4   include, beyond an illustrative list consisting of "interview transcripts, notes, impressions, *or other*

5   *materials*, from these interviews." Dkt. No. 1549 at 3 (emphasis added). The scope of that

6   request could have significant implications for both the likely relevance of the materials and the

7   burden on Chertoff in identifying responsive documents. In an effort to allow discovery of

8   relevant evidence without imposing undue burden disproportionate to the needs of the case, the

9   Court ORDERS as follows.

10       If Chertoff maintains complete transcripts or recordings of any of its interviews[2] of the

11   fifteen Uber employees at issue, or copies of any written communications with those interviewees

12   that served to supplement their interview testimony, Chertoff must produce those in response to

13   Plaintiffs' subpoena (subject to review for privilege by Uber). Chertoff must also produce any

14   summaries of the interviews. The Court disagrees with Chertoff's contention that its own internal

15   records are not relevant to what Uber knew about safety concerns. To the extent Chertoff

16   collected information about Uber's application of its taxonomy, including its capabilities and

17   supporting resources, and assessed the effectiveness of various elements of the program to apply

18   the taxonomy to its incident data, Chertoff could only collect and evaluate such information if

19   Uber provided it. By implication, information that Chertoff collected and evaluated reflects what

20   Uber likely knew about its taxonomy process. Nor is cumulative third-party discovery a concern.

21   Any Chertoff summaries that provide an overview and synthesis of the interviews, as used by

22   Chertoff to aid its evaluation of Uber's program, will not likely unduly repeat information in

23   Uber's own records, even if the summaries and records touch on the same topics.

24       The Court limits the scope of discoverable "interview materials" to interview transcripts

---

[2] This Order uses the term "interview" broadly, to include any preliminary or follow-up discussions—whether written or oral—with the fifteen interviewees that address in any way Uber's operations, the topic of sexual assault or harassment, or other such matters related to the substance of Chertoff's investigation and report. Non-substantive discussions that do not relate to matters under investigation (e.g., emails that discuss only the timing of an interview) need not be produced.

United States District Court
Northern District of California

and summaries, while omitting interview notes, to ensure that this third-party discovery is feasible without the burden of extensive custodial document review.  To minimize disputes about what constitutes a discoverable summary, the Court defines an interview-related summary as any memorandum, email, or similar document that describes, synthesizes, or provides an overview of or highlights of one or more of the interviews at issue.  Because there were a limited number of Uber employees who were interviewed, the interviews were limited to a particular time frame, and a limited number of Chertoff staff were involved, custodial document review can be targeted to limit the burden on Chertoff.  Chertoff shall produce those documents to Uber's counsel no later than October 31, 2024.  Uber shall provide a privilege log no later than November 7, 2024, and shall produce to Plaintiffs any documents for which it is not asserting privilege (or redacted versions of documents for which it claims privilege only in part) at the same time.  If Chertoff has *only* summaries of certain interviews (i.e., no transcripts or recordings), this Order is without prejudice to Plaintiffs seeking to compel further discovery of notes related to those interviews if, after reviewing the summaries, Plaintiffs do not believe they provide a sufficient record of the interviewees' testimony.

For any interviews where Chertoff does not have transcripts, recordings, summaries, or copies of written communications, the parties shall meet and confer regarding a proportional scope of discovery of notes or other records of what was said at the interviews.

No later than October 31, 2024, the parties shall file a joint letter (not exceeding six pages) identifying the interviews for which Chertoff does or does not have transcripts, recordings, or summaries, and setting forth any agreement or remaining dispute as to production of other documents for any interviews where Chertoff lacks such records.

The Court understands Uber's assertion that "is not moving to quash the entire subpoena," and instead seeks only to preserve its ability to review specific documents for privilege, as indicating that Uber does not intend to assert a categorical claim of privilege as to all of Chertoff's interview materials.  If that is incorrect, and Uber intends to assert privilege or work product protection categorically as to *all* records of Chertoff's interviews, Uber must raise that claim as part of the joint statement discussed above.  Individualized assertions of privilege may be

5

1   addressed in due course after Uber provides a privilege log.

2   **C.    Administrative Motion to Consider Sealing**

3   Based on Uber's designation of confidentiality, Plaintiffs filed an administrative motion to

4   consider sealing Exhibit E to Plaintiffs' letter brief and two quotations from that document within

5   the brief. Dkt. No. 1554. Uber filed a responsive declaration asserting that the exhibit (Chertoff's

6   report) is proprietary and confidential, and seeking to seal both the exhibit and the quotations from

7   it in Plaintiffs' brief on that basis. Dkt. No. 1626. Documents filed with discovery motions that

8   are no "more than tangentially related to the merits of a case" may be maintained under seal on a

9   showing of "good cause," as distinct from the more stringent standard of "compelling reasons" to

10  seal documents filed in contexts more closely tied to the merits. *See Ctr. for Auto Safety v.*

11  *Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).

12  Exhibit E is a complete copy of Chertoff's report, describing internal Uber safety processes

13  regarding the inherently sensitive topic of sexual assault. Without reaching the question of

14  whether "compelling reasons" would support sealing the report in a context more closely

15  connected to the merits of the case, the Court finds that Uber has shown good cause to seal it here,

16  and GRANTS that request. The short quotations from the report included in Plaintiff's brief,

17  however, only describe—in general categories—the Uber employees that Chertoff interviewed.

18  The request to seal those passages is DENIED, and Plaintiffs are directed to file an unredacted

19  copy of their brief no later than October 24, 2024 to complete the public record.

20  Plaintiffs are reminded that when a filing a motion to consider sealing a document in part

21  (i.e., a document that is redacted in the public record), the "unredacted version . . . must highlight

22  the portions for which sealing is sought." Civ. L.R. 79-5(e)(2).

23  **D.    Further Subpoena Disputes**

24  Plaintiffs and Uber are directed to meet and confer and file no later than October 24, 2024

25  a stipulation setting a briefing schedule for the next set of subpoena disputes. *See* Dkt. No. 1681

26  at 6–7; Dkt. No. 1521 at 5–7 (addressing the parties' previous positions on procedures for

27  addressing third-party discovery, including Uber's position that guidance from the Court's

28  resolution of disputes that have now been resolved would be useful). The Court will address up to

*United States District Court*
*Northern District of California*

four subpoenas in the next batch, with three contested subpoenas selected by Plaintiffs (as the parties seeking discovery) and one selected by Uber.  If the parties cannot agree to a schedule, they shall file a joint statement stating their respective proposals, without argument.

**IT IS SO ORDERED.**

Dated: October 17, 2024

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California