*[Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**SUPPLEMENTAL JOINT STATUS REPORT REGARDING THE PARTIES' MEET AND CONFER EFFORTS CONCERNING THE PRODUCTION SCHEDULE**<br><br>Judge:       Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

# JOINT STATUS REPORT

As ordered by the Court (ECF 1747), the parties submit this joint status report regarding their meet and confer efforts concerning the extension of deadlines for production, including the deadlines for teeing up and resolving privilege log disputes. The parties met and conferred but were unable to reach agreement. Their respective positions are set forth below. The chart the Court requested was attached to the parties' October 16 status report (ECF 1759-1).

## I.      Plaintiffs' Position

The basic problem here is: (1) Uber's privilege logs are large; (2) it takes time to raise and resolve disputes concerning the logs; and (3) before Plaintiffs can take depositions based on substantially complete document production, privilege disputes need to be resolved, and the Court's guidance, based on a sample of disputed documents, applied to the remainder of the logs so documents can be de-designated and timely produced in advance of the depositions.

To solve these problems, the Court should enter two schedules. *First*, as to privilege log disputes, the Court should void the deadlines set in PTO 14 (ECF 396) and PTO 16 (ECF 866) regarding privilege disputes and adopt the following schedule:

| **Deadline for production of privilege log** | As proposed by Uber in its October 11 Status Report, ECF 1745 at 4 |
|---|---|
| **Parties to complete meet & confer process** | 35 days before scheduled deposition |
| **Parties to submit disputes to Court (requesting a hearing within two weeks)** | 28 days before scheduled deposition |
| **Uber to produce all de-designated documents per the Court's Order** | 14 days before scheduled deposition |

The parties can then implement this schedule by agreeing to workable deposition dates given the size of the logs produced, the scope of Plaintiffs' challenges, and the overall goal of coordinating with the JCCP as is realistic.

*Second*, the Court should ensure that the sampling process results, as it should, in the narrowing of future privilege disputes, and order the following deadlines for complying with the Court's privilege orders:

- 1 -

| | |
|---|---|
| **Uber to revise previously served logs to apply the Court's claw-back Order (ECF 3727)** | 10 days from the Court's Order on this Status Report |
| **Uber to revise previously served logs to apply the Court's forthcoming order on the October 25 privilege log dispute submission.** | 10 days after the Court's Order on the October 25 privilege log dispute submission |
| **Uber to revise previously served logs to apply future privilege orders** | 10 days after issuance of future privilege orders |

The fundamental disagreement between the parties here is Uber's assumption that its privilege logs, the majority of which include thousands of entries, will require only minimal changes after review by Plaintiffs and the Court. Accordingly, by Uber's lights, depositions can proceed without additional time for the raising and resolution of privilege log disputes, because, on Uber's assumption, those disputes will be few and their resolution will mostly go Uber's way.

Plaintiffs cannot accept that assumption, and the Court should not either. To start, we already have evidence that Uber's privilege log designations are overbroad: just last week, the Court ordered de-designation of three documents (two email chains and a "Comms Plan"), overruling Uber's assertions of privilege on ordinary business communications. ECF 1727. Spurred by that Order, Uber subsequently agreed to de-designate the hyperlinked attachments to those emails as well. *See id.* (ordering meet and confer). Experience aside, common sense indicates that privilege logs containing thousands of entries (in many cases, reflecting a substantial proportion of the total documents pulled for a custodian, *see* Ex. A), are likely to generate disputes. There is a reasonable probability that those disputes are resolved in Plaintiffs' favor, with the resulting need for Uber to apply the Court's ruling to the remaining entries on the log. Indeed, Plaintiffs have pending challenges to more than 9,000 log entries they believe reflect business communications, not legal— the same issue the Court addressed in its claw-back Order.

To permit adequate time to resolve privilege disputes before depositions, Plaintiffs proposed a tiered approach that accounts for the fact that smaller privilege logs present smaller problems. Uber's current best estimate is that all remaining privilege logs will fall into the third bucket—750 entries or more. If so, more flexibility is needed to ensure an adequate record before deposition.

Uber's defense of the current schedule should be rejected as not reflecting the reality of the situation. For example, Uber argued that the scheduling issues were "moot" with respect to the "tranche 1" custodians (Fuldner, Hazelbaker, Holt, Kaiser, McDonald, Pimentel, Silver, and Stevenson) because those privilege logs have already been served. Not so. Those logs include, on average, more than 3,000 entries each. And, Plaintiffs have raised challenges to each of those logs (concerning more than 16,000 entries), and anticipate briefing those issues to the Court, as ordered, on October 25. *See* ECF 1732 (discovery order). Before depositions of those tranche 1 custodians can occur, those disputes need to be resolved, Uber needs to de-designate in accordance with the Court's ruling, and Plaintiffs need time to review the de-designated documents in advance of any deposition.

To be sure, Plaintiffs will try to resolve privilege disputes consistent with proposed deposition dates offered by Uber or the JCCP, where feasible. For example, for deponents who Uber has proposed the MDL depose in late November or December (Stevenson, Silver, and Holt), Plaintiffs will work to include log-related disputes in the October 25 submission, in order to accelerate the scheduling of those depositions. In an attempt to reach quicker resolution and increase the possibility of coordinated depositions, Plaintiffs will provide Uber with an initial 10 documents from each of these custodial files to discuss and potentially resolve through the process ordered by this Court. *See* ECF 1732. But, in contrast, Uber proposed that Kaiser (whose log includes more than 6,000 entries) be deposed on October 29, four days after the parties present the sample of privilege disputes to the Court.

During the meet and confer, Uber argued that "perfect" production is not a prerequisite for deposition. Plaintiffs agree. But we are worlds away from perfect. For example, with respect to Katy McDonald, whose privilege log comprises 4,395 documents, Plaintiffs anticipate that the briefed disputes will inform the proprietary of the designations of almost 3,000 documents. If the Court agrees with Plaintiffs' position—even in part—Uber will need to de-designate large numbers of documents, and Plaintiffs will need to review them, before Ms. McDonald's MDL coordinated deposition (which was scheduled for October 23, but was taken off calendar in light of these issues) can occur.

The Court should also order, as interim deadlines, that Uber, in addition to applying the Court's ruling prospectively, go back and review previously-served logs to comply with the Court's claw-back Order, its forthcoming order on privilege log disputes to be presented on October 25, and any future privilege-related orders. Uber has argued that, even if the Court resolves privilege disputes in Plaintiffs' favor, Uber will be under no obligation to go back and apply those rulings to the remainder of the privilege logs at issue. Indeed, Uber disclaimed even any obligation to review its logs in light of the Court's order on the claw-backed documents (ECF 1727). This makes no sense. The point of a sampling approach is to save the Court's time by letting the parties apply rulings to similar documents, not to stamp approval on designations that are not included in the sample presented to the Court. Reality is that, if Plaintiffs prevail on privilege disputes, time must be provided for Uber to de-designate other documents and for Plaintiffs to review them.

Uber would prioritize the coordination of depositions between the MDL and the JCCP above all else. But coordination does not justify prejudice to MDL Plaintiffs' right to take fulsome depositions. MDL Plaintiffs agree that coordination is a laudable goal, but, despite best efforts, not an achievable one given the current production and privilege log disputes. In any event, strict coordination was already proving difficult—Uber did not propose consecutive dates for several deponents (e.g., McDonald and Stevenson), or proposed such dates only too far in the future (Fuldner). For others (Kaiser), Uber's proposed second day for MDL deposition came only with sharp time restrictions. It does not make sense for Uber to benefit from coordination (for example, the time limitations ordered by the Court), while MDL Plaintiffs do not.

Finally, Uber argued that this issue has already been resolved in PTO 14 and 16. But the existing schedules simply did not anticipate logs comprising thousands of documents. And, for reasonably-sized logs (fewer than 100 documents), Plaintiffs proposed the default PTO 16 schedule, but Uber has determined it will not produce any logs that small. In any event, Uber is already seeking to modify existing deadlines. And, of course, any schedule can be modified upon a showing of good cause. *See* ECF 1629 (extending date for substantial completion of document production in response to first RFPs); ECF 321 (modifying PTO 5 production obligations).

Uber says that Plaintiffs' proposal gives no certainty as to when depositions will occur. This

- 4 -

is not true. For example, the parties plan on submitting disputes related to nine custodians to the Court on October 25. If the Court issues a ruling within three weeks, and then Uber de-designates within 10 days, depositions for many of those nine can begin two weeks later in early December:

| Joint Briefing Submitted to Court | Order Issued by Court on Privilege Sampling (assumes 3 week time period for arguments/rulings from submission) | Uber Produces De-designated Documents per Order (10 days to de-designate and produce) | Deposition No Earlier Than 14 days following Uber's De-designation |
|---|---|---|---|
| 10/25/2024 | 11/15/2024 | 11/25/2024 | 12/9/2024 |

And, because Uber will have to apply the Court's ruling prospectively as well as retrospectively, future privilege log disputes should narrow.

**II.       Defendants' Position**

The parties do not disagree as to Defendants' request for extension of its custodial production dates, (*see* ECF 1746, p.3), which were reached through extensive negotiations between the parties and consultations with Defendants' vendors, and which Defendants understood to be agreed upon (ECF 1745, p.2).  Defendants believe these dates are achievable, and are working diligently to meet them.  The Court should not permit Plaintiffs to leverage this extension request (through a condition added by Plaintiffs late in the conferral process) to rewrite the Court's pretrial orders long-since litigated and decided.  Rather, Plaintiffs must show good cause for their request to discard the timeframes set forth in PTO 14 and PTO 16, which they have not done.

As to Plaintiffs' latest proposal herein, it is founded on a distorted view of the scope of privilege disputes and would, through serial, categorical privilege challenges, hold up the deposition process and throw out any possibility of coordination.  To begin with, the number of privileged documents is not nearly as voluminous as Plaintiffs suggest because they do not account for duplication.  Plaintiffs do not account for the fact that there are separate entries for each part of an email thread (*i.e.*, an email "chain" or series of emails responding to each other).  While email threads are typically produced together as a single document (and logged as a single document), Plaintiffs insisted, and the ESI protocol provides, that emails be produced without threading.  ECF 524, p.16.  So a single email conversation consisting of 10 emails back and forth is reflected as 10 privilege log entries, not one. Logged email chains account for around 8,000 email threads (not 30,000+). Another reason for the

- 5 -

Supp. Joint Status Report Regarding Meet And Confer Efforts
Case No. 3:23-MD-3084-CRB

number of entries is that some of the initial custodians had extensive interactions with the legal department, and therefore more privileged communications. But other logs have had far fewer entries and fewer challenges (for example, total privilege challenges entries for Silver, Stevenson, and Holt combined are about 3,600). The numbers cited by Plaintiffs do not accurately reflect the true scope of the dispute.

Despite paying lip service to coordination as a "laudable goal," Plaintiffs have not shied away from the fact that their proposal to "void the deadlines set in PTO 14 [] and PTO 16" will mean that few, if any, of the 45 deponents could possibly have coordinated depositions. Plaintiffs propose an open-ended process which is contingent upon this Court deciding serial disputes (on a tight timeline) for each of the 45 deponents. Plaintiffs' position suggests they intend to raise numerous challenges for every single deponent (as their 9,000+ challenges to date already made clear). Defendants agree there should be a process for addressing privilege disputes, but depositions cannot be made contingent on this Court issuing rulings on their timelines. Despite Plaintiffs' contention that their proposal can provide certainty on when depositions will occur, their proposal contains no apparent deadline for Plaintiffs to submit privilege challenges, provides no concrete timeline between custodial productions and depositions (as does Defendants' 45-day timeframe), and remains contingent upon receiving Court rulings within a limited window for each deponent, making scheduling depositions a near impossibility. This approach is not workable.

Defendants disagree that the Court failed to account for the possibility of substantial privilege disputes when it set the deadlines in PTO 14 and PTO 16. Nevertheless, in the spirit of cooperation, Defendants agreed to many of Plaintiffs' demands and set out concrete dates that are relatively close to existing JCCP dates (*see* ECF 1745, p.4), to permit the parties to align and achieve coordinated depositions with modest adjustments by Judge Schulman and JCCP plaintiffs. Defendants' proposal (attached as Exhibit B) sets out specific dates for the process of getting from custodial production to depositions for each custodian:

- Completion of custodial productions;
- Service of privilege logs (10 days after production);
- Plaintiffs' deadline for privilege challenges (7 days after service of log);

- Parties' deadline to meet and confer on challenges (7 days after challenge);
- Joint brief deadline (10 day days after conferral period);
- Earliest potential deposition date (no earlier than 45 days following service of the privilege log); and
- Any JCCP noticed deposition date, for each custodian (organized by tranches).

These proposed deadlines are triggered from Defendants' completion of custodial production and allow for at least 35 days between service of a privilege log and any deposition. Defendants believe their proposal is pragmatic, workable, and—critically—preserves the ability to coordinate depositions with JCCP plaintiffs.

Plaintiffs assert that they are not seeking "perfection" in document production prior to conducting depositions. But their proposal would make *all* depositions contingent on this Court's ability to resolve 9,000+ privilege disputes for 45 custodians on Plaintiffs' timeline. If the Court is inclined to alter the existing PTO 14 and PTO 16 timelines for service of privilege logs, it should adopt Defendants' proposal. Regardless, Defendants respectfully ask the Court to grant Defendants' requested extensions for completion of custodial production.

| | |
|---|---|
| By: */s/Sarah R. London*<br>ROOPAL P. LUHANA (*Pro Hac Vice*)<br>**CHAFFIN LUHANA LLP**<br>600 Third Avenue, Fl. 12<br>New York, NY 10016<br>Telephone: (888) 480-1123<br>Email: luhana@chaffinluhana.com<br>*Co-Lead Counsel for Plaintiffs*<br><br>SARAH R. LONDON (SBN 267083)<br>**LIEFF CABRASER HEIMANN & BERNSTEIN**<br>275 Battery Street, Fl. 29<br>San Francisco, CA 94111<br>Telephone: (415) 956-1000<br>Email: slondon@lchb.com<br><br>RACHEL B. ABRAMS (SBN 209316)<br>**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**<br>555 Montgomery Street, Suite 820<br>San Francisco, CA 94111<br>Telephone: (415) 426-5641<br>Email: rabrams@peifferwolf.com | By: */s/ Michael B. Shortnacy*<br>MICHAEL B. SHORTNACY (SBN: 277035)<br>mshortnacy@shb.com<br>**SHOOK, HARDY & BACON, L.L.P.**<br>2049 Century Park East, Suite 3000<br>Los Angeles, CA 90067<br>Telephone: (424) 285-8330<br>Facsimile: (424) 204-9093<br><br>PATRICK OOT (*Pro Hac Vice* admitted)<br>oot@shb.com<br>**SHOOK, HARDY & BACON, L.L.P.**<br>1800 K Street NW, Suite 1000<br>Washington, DC 20006<br>Telephone: (202) 783-8400<br>Facsimile: (202) 783-4211<br><br>RANDALL S. LUSKEY (SBN: 240915)<br>rluskey@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>535 Mission Street, 24th Floor<br>San Francisco, CA 94105<br>Telephone: (628) 432-5100<br>Facsimile: (628) 232-3101<br><br>ROBERT ATKINS (*Pro Hac Vice* admitted)<br>ratkins@paulweiss.com<br>CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)<br>cgrusauskas@paulweiss.com<br>ANDREA M. KELLER (*Pro Hac Vice* admitted)<br>akeller@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990 |

- 8 -

Supp. Joint Status Report Regarding Meet And Confer Efforts
Case No. 3:23-MD-3084-CRB

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/  *Andrew R. Kaufman*

- 9 -

Supp. Joint Status Report Regarding Meet And Confer Efforts
Case No. 3:23-MD-3084-CRB