

August 30, 2024

The Hon. Lisa J. Cisneros, United States Magistrate Judge
Phillip Burton Federal Building, Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re Uber Technologies, Inc. Passenger Sexual Assault Litigation*, No. 3:23-md-0384-CRB
       Third Party Subpoena to The Chertoff Group

Judge Cisneros:

In accordance with the Court's August 16, 2024 Order Re: Discovery, [ECF 1068], Plaintiffs submit this letter brief in support of their motion to enforce their third party subpoena to The Chertoff Group ("Chertoff"). Defendant Uber Technologies, Inc. has moved to quash the subpoena and Plaintiffs anticipate that Chertoff may also move to quash the subpoena.

### I.   Background and Efforts to Minimize Burden

In 2018, Uber retained Chertoff, a security and risk management services firm, "to conduct a strategic-level evaluation of Uber's application of an independently-developed sexual harassment, sexual misconduct, and sexual assault taxonomy to its U.S. rideshare platform incident data set."[1] As part of this evaluation, Chertoff examined Uber's activities through "review of relevant documents" and "multiple reviews with Uber personnel" pertaining to Uber's Sexual Misconduct and Sexual Violence Taxonomy (the "Taxonomy"), "policy development," staff training, and funding.[2]

Plaintiffs served Chertoff with a third party subpoena on May 7, 2024. Ex. A. On May 24, 2024, Chertoff served Plaintiffs with its Objections and Responses to the subpoena. Ex. B. Chertoff thereafter consented to transfer of any motions concerning Plaintiffs' subpoena to the Northern District of California. Subsequently, Plaintiffs sent Chertoff a proposal to substantially narrowing the scope of the subpoena. Ex. C. During an August 23 meet and confer, Plaintiffs agreed to withdraw Requests most of the remaining requests and stay request 5 pending further discovery from Uber. Ex. D. To the extent the remaining Requests sought information on the U.S. Safety Advisory Board or U.S. Safety Reports *other than* the First U.S. Safety Report, Plaintiffs omitted those portions of the requests. *Id.* Thus, the four remaining requests were substantially narrowed. Plaintiffs and Chertoff agreed that the following documents were responsive to the remaining four requests:

---

[1] The Chertoff Group, *An Evaluation of Safety Incident Categorization Capabilities for Uber*, App'x III to Uber 2017–2018 U.S. Safety Report (Dec. 3, 2019) https://uber.box.com/s/vkx4zgwy6sxx2t2618520xt35rix022h?uclick_id=82832a17-7593-49b1-a681-9603c62c2166; *see also* Ex. E.

[2] *Id.*

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota

- Category 1: Drafts of the Chertoff-prepared report titled, "An Evaluation of Safety Incident Categorization Capabilities for Uber," (the "Chertoff Report") exchanged between Chertoff and Uber;
- Category 2: The documents listed in Appendix B to the Chertoff Report;
- Category 3: Interview materials for the individuals listed in Appendix C to the Chertoff Report.

*See* Ex. D. Chertoff agreed to produce Category 1 and 2 documents subject to privilege review and logging by Uber. *Id.* Both Chertoff and Uber object to production of Category 3 materials.

## II.     Argument

**Standing.** Uber's standing under Fed. R. Civ. P. 26 and 45 is limited to its interest in confidential and proprietary information. Order Re: Third Party Subpoena Disputes (July 14, 2024) [ECF 695 at 3–4]. The Court should therefore disregard Uber's arguments as to relevance or burden.

**Relevance**. The scope of discovery under Rule 45 is the same as under Rule 26, [ECF 695 at 3], which permits "discovery concerning 'any nonprivileged matter that is relevant to any party's claim or defense.'" *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 528, 530–31 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 26(b)(1)). "The test for relevance is not overly exacting: evidence is relevant if it has any tendency to make more or less probable a fact that is of consequence in determining the action." [ECF 684 at 8 (quotations omitted)]. "On the other hand, the party opposing discovery, 'has the burden of showing that discovery should not be allowed.'" *Id.* (quoting *Sayta v. Martin*, 2019 WL 666722, at *1 (N.D. Cal. 2012)).

Plaintiffs initially requested documents pertaining to Chertoff's evaluation of the Taxonomy, the classification scheme Uber used to categorize reports of sexual misconduct and determine its response. Ex. C; *see also* Master Compl. ¶¶ 268, 271. During the August 23 meet and confer with Chertoff, Plaintiffs indicated that these requests would be satisfied by production of Category 1–3 documents, including specifically materials related to the interviews of individuals identified in Appendix C (Category 3 materials). These documents go directly to Plaintiffs' negligence, negligent hiring, negligent supervision, and negligent retention claims, among others.

Plaintiffs allege that Uber's categorization of sexual assault incidents was deficient because Uber's system of gathering information about reports was itself inadequate and that Uber fostered a system in which categorizing the type and nature of assaults was mismanaged. Master Compl. ¶¶ 246, 272. Plaintiffs challenge the development and implementation of Uber's system to categorize and respond to reports of sexual misconduct which necessarily includes the Taxonomy, as well as related training for staff. *Id.* at ¶ 365(j). This, Plaintiffs allege, resulted in drivers who Uber knew were unfit or who Uber knew became unfit and who posed a risk of sexual assault to passengers including Plaintiffs. *Id.* at ¶¶ 363(o), 364(c). These are the *exact issues* Chertoff was hired study for Uber for the stated

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota

purpose of assessing whether Uber was appropriately categorizing and responding to sexual assault reports.[3]

Chertoff's analysis was grounded in interviews with fifteen Uber employees ranging from "executives responsible for program oversight to frontline auditors" comprising a "cross-section of Uber personnel who could speak to the core aspects of the program." Ex. E at 8. Interviewees consisted of "developers of the taxonomy, the Uber team members that developed the methodology and processes used to apply that taxonomy to Uber's incident data set, the managers of the safety data and analytics and technology team, and some of the auditors who implemented the classification system." *Id.* Chertoff sought out to understand the methodology, purpose, and principles behind the taxonomy and did so by interviewing key stakeholders at all levels of the process. Plaintiffs, likewise, need to understand these issues to build their case. *See*, *e.g.*, [ECF 684 at 10 (finding classification of safety incidents relevant to Plaintiffs' case including to support duty of care.)]. Chertoff has in its possession primary source documentation, in the form of interview transcripts, notes, impressions, or other materials, from these interviews, which Plaintiffs are entitled to explore in order to gain critical insight into this process of receiving, classifying, and auditing reports of sexual assault at Uber.

The relevance of materials related to Uber's taxonomy cannot seriously be disputed. The Court previously ruled that materials pertaining to Uber's taxonomy *are relevant* to Plaintiffs' case. [ECF 684 at 10.] The Court's order on Safety Data is instructive. There, the court held that certain underlying data on prior incidents was relevant. *Id.* That is certainly true, but interviews with Uber employees about how, exactly, the process of receiving, classifying, auditing, and responding to the reports that *comprise* that data is of particular significance for Plaintiffs' claims as to negligence because Plaintiffs allege that Uber's overall process was deficient and mismanaged. *See*, *e.g.*, Master Compl. ¶¶ 246, 272. Plaintiffs can try to piece together what this process entailed—but Uber's employees have already described it to Chertoff and holding back that information on relevance grounds is unwarranted.

**Burden.** Requesting parties are tasked with taking "reasonable steps" to prevent "undue burden" to subpoena recipients. Fed. R. Civ. P. 45(d)(1); *Stemmelin v. Matterport inc.*, 2023 WL 411354, at *2 (N.D. Cal. Jan. 25, 2023). Courts "weigh the burden to the subpoenaed party against the value of the information to the subpoenaed party" and may also consider "the relevance of the requested information and the breadth or specificity of the discovery request." *Id.* (quotations omitted).

"Plaintiffs are not required to exhaust party discovery before seeking discovery from nonparties." [ECF 695 at 7]. Here, Plaintiffs diligently pursued discovery from Uber but are still missing wide swaths of documents and communications concerning Chertoff's evaluation and validation of Uber's taxonomy, including **any** communications between Uber and Chertoff, drafts of Chertoff's report, and Chertoff's primary source documents, such as interviews. Plaintiffs nonetheless worked to substantially narrow the scope of their requests to Category 1–3 documents and have reached an agreement as to Category 1 and 2 documents, such that the only dispute is as to Category 3, interview materials.

---

[3] The Chertoff Group, *An Evaluation of Safety Incident Categorization Capabilities for Uber*, App'x III to Uber 2017–2018 U.S. Safety Report (Dec. 3, 2019) https://uber.box.com/s/vkx4zgwy6sxx2t2618520xt35rix022h?uclick_id=82832a17-7593-49b1-a681-9603c62c2166 ; *see also* Ex. E.

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota

As the Court previously held, plaintiffs are not required to exhaust party discovery before seeking discovery from a nonparty. [ECF 695 at 10.]; *see also Viacom International, Inc. v. YouTube, Inc.*, 2008 WL 3876142, at *2 (N.D. Cal. Aug. 18, 2008). This is true where, as here, "a party may have never possessed or may not longer possess" the requested documents," [ECF 695 at 10]. Uber does not possess Category 3 documents and, in fact, it does not appear Uber ever did. There is no reason to delay seeking discovery from Chertoff.

Plaintiffs ask that the Court compel compliance with the subpoena so that they can obtain the full picture of the work Uber performed to develop, implement, validate, and train on its taxonomy. As the court explained in *Gonzales*, "in order to aid the [requestor] in its study of the entire elephant, the Court may burden a non-party to require production of a picture of the elephant's tail, but it is within this Court's discretion to not require a non-party to produce another picture of the same tail." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 678 (N.D. Cal. 2006) (granting motion to compel as to disclosure of 50,000 URLs). Here, Plaintiffs are not asking Chertoff to reproduce information that they already have but are asking Chertoff to provide materials Uber does not have so that Plaintiffs can ascertain the reasoning behind the Taxonomy Uber implemented.

To the extent Chertoff asserts production of these documents will require it to undertake a thorough document review, involving significant time and expense, this argument is without merit. In preparing its Report, Chertoff identified all the individuals that performed work on the Report, all the materials it reviewed in preparing the report, and all of the individuals interviewed. In essence, it created a reliance list. Retrieving interview materials for the fifteen identified individuals should not create a significant hurdle.

### III.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to enforce the subpoena as to interview materials for individuals listed in Appendix C to the Chertoff Report (Category 3 documents).

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: **(612) 424-9900**
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota

Dated: August 30, 2024          Respectfully submitted,

By: */s/ Marlene J. Goldenberg*
Marlene J. Goldenberg
Samantha V. Hoefs
**NIGH GOLDENBERG RASO & VAUGHN PLLC**
14 Ridge Square NW, Third Floor
Washington, D.C. 20016
Telephone: (202) 978-2228
Facsimile: (202) 792-7927
mgoldenberg@nighgoldenberg.com
shoefs@nighgoldenberg.com

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Counsel for Plaintiffs*

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: **(612) 424-9900**
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota