PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

NEW YORK
BEIJING
BRUSSELS
HONG KONG
LONDON

LOS ANGELES
SAN FRANCISCO
TOKYO
TORONTO
WILMINGTON

DIRECT DIAL: (202) 223-7407
EMAIL: KSMITH@PAULWEISS.COM

October 28, 2024

**VIA ECF**

Magistrate Judge Lisa J. Cisneros
United States District Court for the Northern District of California
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Judge Cisneros,

Pursuant to Pretrial Order No. 8, ECF 323, the parties respectfully submit this joint letter regarding Plaintiffs' fact sheet obligations under Pretrial Order No. 10, ECF 348. After several meet and confers in which other issues were resolved, three disputed issues remain. The first issue is whether Plaintiffs must contemporaneously provide an additional verification when submitting amended answers to questions in the Plaintiff Fact Sheet ("PFS"), or whether Plaintiffs may wait to provide supplemental verifications until after cases are selected for additional pre-trial discovery, before a Plaintiff is deposed, or at another date. The second issue concerns questions in the PFS that seek third-party contact information. The third issue is whether it is a deficiency when a Plaintiff answers a PFS question with "will supplement" even though the information is currently within the Plaintiff's possession, custody, or control.

      **I.**      **Uber's Position**

**Issue One (Whether Plaintiffs May Delay Providing Required Verifications):** The parties agree that Plaintiffs must verify their initial and amended answers to the fact sheets' questions.[1] The only dispute is whether Plaintiffs can refrain from verifying their amended answers when submitting them, until some indeterminate time in the future (perhaps months or years away). For several reasons, Plaintiffs should be required to verify their amended discovery at the time they submit it, consistent with Federal Rule of Civil Procedure 33(b)(5).

---

[1] Under PTO 10, fact sheet responses are "governed by the standards applicable to written discovery under the Federal Rules of Civil Procedure" and "considered the same as interrogatory responses" PTO 10 at 5. Courts regularly require that both initial and amended interrogatory—and PFS—responses must be verified. *E.g.*, *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 466 (M.D. Fla.), *aff'd*, 254 F.R.D. 470 (M.D. Fla. 2008); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 2024 WL 2303810, at *5 (E.D. La. May 21, 2024); *In re Zicam Cold Remedy Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2011 WL 3438862, at *2 & n.1 (D. Ariz. Aug. 5, 2011).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Magistrate Judge Cisneros                                                                                                    2

First, Judge Breyer established that Plaintiffs must contemporaneously verify their fact sheet responses. PTO 10 states that Plaintiffs shall "serve" their fact sheet responses "[w]ithin the deadlines prescribed for the PFS," and that service "shall be accomplished by uploading the *verified* PFS to MDL Centrality." PTO 10 at 6 (emphasis added). Plaintiffs' arguments about the burden of verifying amended PFS responses would also seemingly apply to the undisputed requirement to verify initial responses, and therefore do not provide a compelling reason for deferring verifications as to amended responses until a later, indeterminate deadline.

Second, Plaintiffs' argument that they may delay providing required verifications for months on end without infringing on Uber's discovery needs is tantamount to arguing that verifying discovery responses is trivial or "optional," a position courts have squarely rejected. *E.g.*, *Walls* v. *Paulson*, 250 F.R.D. 48, 52 (D.D.C. 2008). Verification of Plaintiffs' written discovery "is essential for establishing the truth of the answers so that they may be relied on by the parties during the litigation." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 2012 WL 5839023, at *7 (E.D. Pa. Nov. 16, 2012); *see also id.* at *8 (MDL court discussing "the clear body of law establishing the reasons for and importance of party verification").[2]

As for Plaintiffs' complaints about receiving deficiency letters, PTO 10 states that to submit a "substantially complete" PFS, a Plaintiff must "[a]nswer *all* applicable questions," "[i]nclude a signed Declaration," "[p]rovide duly executed record release Authorizations," and "[p]roduce the requested documents." PTO 10 at 6 (emphasis added). When a Plaintiff does not meet this standard, Uber sends a letter, identifying the problems and asking Plaintiff and their counsel to remedy them within 30 days. If there is a disagreement about whether an individual Plaintiff has answered all applicable questions or otherwise met PTO 10's standard, that is a separate and individualized issue Uber is willing to meet and confer about that should not distract from the global question of whether Plaintiffs may wait months to verify amended discovery responses. For all the reasons listed above, Plaintiffs should provide the verifications contemporaneously, or within 30 days if they have not provided the required verification already. *See Uschold* v. *Carriage Servs., Inc.*, 2019 WL 3282961, at *4 (N.D. Cal. Jan. 17, 2019) (requiring party to "immediately" serve verified, amended interrogatory responses).

**Issue Two (Whether Plaintiffs May Decline to Answer PFS Questions Regarding Third-Party Contact Information):** Questions 23(a) and 30(a) of the PFS ask Plaintiffs to provide the "name, full address and phone number" of any other passengers in the vehicle at the time of the alleged incident and the "last known contact information" of any individual Plaintiff has communicated with about the alleged incident. Am. PFS, ECF 360-2, at 10, 13. In meet-and-confer correspondence, Plaintiffs acknowledged that the "Court adopted a PFS that requires Plaintiffs to identify such information at questions 23.a and 30," Decl. of Kyle Smith ("Smith Decl.") Ex. A ("Pls.' Sept. 16, 2024 Letter") at 2, but argued that "plaintiffs should not be required to provide" the requested information until "designated plaintiffs are required to produce

---

[2] Concern with the veracity of Plaintiffs' discovery is not merely hypothetical. Uber has identified multiple cases, not just one, where a Plaintiff appears to have submitted a fraudulent ride receipt. The parties are meeting and conferring with Plaintiffs about how to handle those cases, and they illustrate the importance of ensuring that Plaintiffs' discovery responses are verified, which Judge Breyer recognized when adopting the verification requirement in PTO 10.

additional case specific information," Smith Decl. Ex. B ("Pls.' Aug. 22, 2024 Letter") at 2. Despite identifying this dispute as a "global PFS issue[,]" Pls.' Aug. 22, 2024 Letter at 1, Plaintiffs now contend that this dispute is an "individualized issue," and that if the Court wishes to resolve it, it should permit Plaintiffs to withhold the information and require "Uber to meet and confer with individual firms" so Plaintiffs may "seek protective orders as justified in each case."

The questions to which Plaintiffs object seek relevant, discoverable information. The JCCP PFS contains versions of both questions, Smith Decl. Ex. C ("Model JCCP PFS") at 3, 7, and *both sides*' fact sheet proposals in the MDL included a version of Question 23(a), *compare* Pls.' Proposed PFS, ECF 235-1, at 10, *and* Uber's Proposed PFS, ECF 236-2, at 9, *with* Am. PFS at 10. Plaintiffs disputed Question 30(a), advancing the same arguments they articulate now, Pls.' PFS Br. at 4, ECF 235, and the Court resolved the disagreement while considering whether a disputed PFS question sought information that "might be better sought later, when individual cases are being worked up for trial," PTO 10 at 2. That being said, Uber is, of course, willing to meet and confer about individual cases where third parties are represented by counsel or there are other unique circumstances. But the starting point for discussions must be that Plaintiffs should answer the questions in the Court-ordered PFS unless there are special circumstances. Plaintiffs' position and the fact sheets they have submitted illogically turn the PFS on its head by allowing the submitting party to decide when they will or will not provide required information. This stance directly contradicts the PFS Judge Breyer adopted, and the Court should reject Plaintiffs' attempt to "amend his orders and change the parameters for this discovery." Aug. 8, 2024 Disc. Status Conf. Tr. at 28:25–29:11.

**Issue Three (Whether Plaintiffs May Withhold Information in Their Possession, Custody, or Control By Answering "Will Supplement"):** There are many cases (more than 10) where a Plaintiff has answered more than 10 questions in the PFS with some variant of "will supplement" and the information has not been provided as of the date of this letter. There are dozens of additional cases where Plaintiffs have improperly invoked "will supplement" in response to a smaller volume of questions. In all events, the failure to provide information requested by the PFS and under the Plaintiffs' "custody and control" is a deficiency, regardless of the precise number of questions that have been selectively left unanswered. *Fresenius Med. Care Holding Inc.* v. *Baxter Int'l, Inc.*, 224 F.R.D. 644, 651 (N.D. Cal. 2004); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1234 (9th Cir. 2006) ("Failure to produce information without a good reason increases the risk of prejudice from unavailability of witnesses and loss of records."). The questions in the PFS request basic information about Plaintiffs and their claims, and a large majority of "will supplement" responses Plaintiffs have provided relate to information that should be "readily available" to a Plaintiff such as their employment or education. PTO 10 at 1 (noting that the "Court has tried to avoid questions" in the PFS that seek "information not readily available to a given plaintiff"). Plaintiffs now claim that this issue is not a global dispute. But they identified it as a "global PFS issue[]" in their meet-and-confer correspondence, Pls.' Aug. 22, 2024 Letter at 1; Pls.' Sept. 16, 2024 Letter at 4, and have argued that they "disagree that 'will supplement' is a PFS deficiency," Pls.' Aug. 22, 2024 Letter at 2. The Court should reject that position and adopt the common-sense rule that a "party cannot use 'the duty to supplement as an excuse to provide incomplete discovery.'" *Taghavi* v. *Soto*, 2023 WL 6544905, at *2 (N.D. Tex. Oct. 6, 2023).

**II.     Plaintiffs' Position**

The basis for meet and confers and this briefing was to raise "global" issues concerning PFSs. But two of the three issues Uber raise are individualized in nature (Issues 2 and 3). They are therefore not suited for global adjudication and do not warrant consuming court resources at this stage. Plaintiffs have met and conferred and strived to come to streamlined approaches to address Uber's concerns,[3] while also avoiding needlessly burdensome, time-consuming and mushrooming discovery proceedings, but Uber remains unwilling to discuss Plaintiffs' proposals.[4]

**Issue One (Whether Plaintiffs may submit a final verification for PFS amendments):** Uber has repeatedly and erroneously alleged that various PFSs are deficient when in fact they are verified and substantially complete. PTO 10 states that a '[i]f a Party considers a PFS or DFS to be ***materially deficient***, a deficiency notice outlining the purported deficiency(ies) shall be served on the deficient Party's attorney of record via MDL Centrality." PTO No. 10 at 7. Although Plaintiffs' Leadership cannot adequately address every individual Plaintiff's PFS and Uber's alleged deficiencies, Co-Lead counsel's (Peiffer Wolf's) cases provide illustrative examples.

To date, Peiffer Wolf Plaintiffs have submitted <u>verified</u> PFSs for approximately 193 cases. *See* Abrams Decl., ¶ 4. Of those, Uber has alleged deficiencies in *143* cases (74%). *See id.*, ¶ 4. Critically, the majority of asserted deficiencies are not "material," but rather trivial or simply incorrect, and despite these non-material deficiencies, plaintiffs have consistently supplemented PFS's and provided additional verifications. For example, Uber argues plaintiffs must provide their maiden name and correct inconsistent spellings in their names, *i.e.,* typos, or incorrectly argues that any plaintiff who suffered physical harm must complete a release of medical records, even if they need not receive medical treatment, or otherwise amend their response. *See id.*, ¶ 5. After Uber raises these non-material "deficiencies", Plaintiffs are supplementing their PFSs and submitting repeated verifications. In requiring discovery, the Court must consider "the importance of the discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, it is incredibly burdensome and inefficient to require iterative verifications at *every* turn, including for the most minor of amendments that do not amount to "material deficiencies." At the same time, Uber has identified no reason why it needs such repeat verifications, nor could it, given that further individual discovery in these cases is currently stayed, and no Plaintiff depositions are scheduled. Plaintiffs' commonsense and evenhanded proposal is that Plaintiffs (**in addition to the initial verification**) serve a final verification, to all amendments, that is executed once a case is advanced for expanded case-specific discovery. This appropriately balances Uber's request for verified responses with the particularly heightened burdens imposed on sexual abuse survivor Plaintiffs.

In opposition, Uber raises two tenuous arguments. *First*, Uber implies that the law requires a verification be submitted *at the time* of every amendment. It does not. Nothing cited by Uber supports its claim for an *immediate* timeframe for a supplemental PFS verification.[5] To the contrary, this Court may determine the appropriate timing for verifications, as it has "wide discretion in controlling discovery" (*Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988)),

---

[3] The fact that Plaintiffs identified certain issues that may be *streamlined* on a global basis, e.g., delineating process and procedure for a particular dispute or, where appropriate, reaching some global agreement as to all or a portion of the dispute, does not mean (as Uber suggests) that Plaintiffs waive the individual issues that are at play.

[4] Judge Breyer issued PTO 10 and these PFS "disputed issues" are potentially more appropriately addressed by His Honor during the November 6, 2024 Case Management Conference.

[5] Uber's citation is distinguishable. In *Uschold v. Carriage Servs., Inc.,* 2019 WL 3282961, at *4 (N.D. Cal. Jan. 17, 2019, the Court granted a defendant's request to compel verified amended responses that had been served on counsel two months prior and for which there was no indication that subsequent amendments might be forthcoming.

and may issue an order to protect a party from "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1)(B). *Second*, Uber states that a verification simultaneous with each amendment is required to establish the truth of the answers. But, on its face, PFSs state that responses are made "under oath" and are "true and correct to the best of [Plaintiff's] knowledge, information, and belief[.]" Am. PFS, ECF 360-2, at 3. In addition, Plaintiffs have agreed that amendments *will* be verified at the appropriate time – prior to any further case-specific discovery. Thus, final verifications present no prejudice, and do not impede the "truth of the answers." In an effort to manufacture prejudice, Uber misdirects by noting that fraudulent receipts appear to have been produced by plaintiffs. This suspicion, while something the PSC is taking seriously, is completely irrelevant to the issue of timing verification for an amended PFS for all Plaintiffs.[6]

**Issue Two (Whether Plaintiffs May Designate Attorney Contact for Third-Party Witnesses)**: While circumstances vary, there is often good cause for a PFS to provide for third parties to be contacted through counsel. For example, there are cases involving third-party witnesses who are minors, estranged ex-partners, and even witnesses who participated in Plaintiff's sexual assault. *See* Abrams Decl. at ¶ 6. At its core, this is an individualized issue, not a common one. Uber provides no reason for the parties and the Court to resolve each case-specific dispute now, as opposed to at a later date when the litigation moves to the next stage of individual adjudication. As evidenced by the ongoing privilege-, production-, and schedule-related disputes, the parties are hard at work conducting the common discovery the Court has identified as the priority at this stage. To accommodate Uber's concerns, Plaintiffs have in good faith met and conferred with Uber for a streamlined process to evaluate individual cases, and provide third-party contact information where appropriate, while also affording Plaintiffs the necessary protection Uber has refused, opting instead to push the position that all third-party contact information must be provided immediately.[7]

On a global basis, Uber's request should be denied. Uber seeks an expansive ruling that any and every designation of counsel as a point of contact is *per se* improper for third parties. This is simply not true. At minimum, a threshold inquiry must be made as to whether a particular third-party is *in fact* represented by counsel, such that counsel designation is entirely appropriate. And, as noted above, there may be individual circumstances that warrant protection. Simply put, there are circumstances in which designation of counsel as contact for third parties may be appropriate, and the sexual assault survivors in this case should be afforded the opportunity to explain those individual circumstances to this court, should they choose to do so. Uber's sole argument in opposition is that the fact sheets are set in stone, but the Court has the power to modify previous orders for good cause, which exists here. *See, e.g.,* ECF 321 (modifying discovery under PTO 5). Alternatively, if the Court wishes to resolve this issue now, on an individualized basis, it should establish a process for Uber to meet and confer with individual firms, and for those firms to have the opportunity to seek protective orders as justified in each case.[8] Otherwise, the legitimate

---

[6] Uber states that it has identified "multiple cases, not just one, where Plaintiff appears to have submitted a fraudulent ride receipt." However, Uber has failed to provide this information and basis for these allegations to Plaintiffs' Leadership.

[7] Plaintiffs also proposed a joint stipulation for providing Uber third party contact information with notification to counsel if and when it intends to contact these third-party witnesses. Uber ignored this proposal.

[8] Uber appears to concede this point, stating that it is "of course, willing to meet and confer about individual cases where third parties are represented by counsel or there are other unique circumstances."

Magistrate Judge Cisneros                                                                                                         6

concerns that sexual assault victims may have over the disclosure of identifying contact information for third parties would be eviscerated under Uber's overbroad approach.

**Issue Three (Whether the Court Should Address Individualized Disputes on 11 Cases Regarding "Will Supplement")**: This is not a global issue. The parties agree that a response of "will supplement" is neither categorically proper nor categorically improper. *See, e.g. Covad Communications Co. v. Revonet, Inc.*, 258 F.R.D. 17, 19 (D.D.C. 2009) ("because the responding party has a continuing duty to supplement its answer, it is sufficient for a party to state that it is unable, at the time the answer is provided, to provide the information requested but will supplement its answers as information becomes available") (discussing interrogatories); Am. PFS, ECF 360-2, at 3 (recognizing that "obligation to supplement these responses consistent with the Federal Rules of Civil Procedure"); *see also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1234 (9th Cir. 2006) ("Failure to produce information ***without a good reason*** increases the risk of prejudice from unavailability of witnesses and loss of records") (emphasis added) (cited by Uber). At this time, Uber has identified excessive PFS responses of "will supplement" in only *eleven* cases, and never explains why the use of "will supplement" in that tiny subset of cases presents any common issues. Thus, whether the use of "will supplement" in eleven specific cases is improper would need to be viewed on an individualized basis – requiring individual briefing.[9] As for the subset of cases that have responded "will supplement" for just one or two questions in an otherwise complete PFS, these do not amount to "material deficiencies" and again can be addressed with individualized meet and confers with plaintiff's counsel.

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Kyle Smith*
Kyle Smith
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7407
ksmith@paulweiss.com

cc:     All Counsel of Record via ECF

---

[9] Uber's expectation that the cases will "balloon" is purely speculative and unsubstantiated. Uber raised this issue several months ago and majority of cases impacted have resolved this issue. Thus, the number has in fact *gone down*.