IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | Case No. 23-md-03084-CRB<br><br>**DECLARATION OF TIFFANY R. ELLIS IN SUPPORT OF PLAINTIFFS' PORTION OF PTO 8 LETTER BRIEF REGARDING PRIVILEGE LOG DISPUTES**<br><br>Judge: Honorable Lisa J. Cisneros |

I, Tiffany Ellis, hereby declare as follows:

1. I am a partner of Peiffer Wolf Care Kane Conway & Wise, an attorney licensed in the States of Michigan and Illinois and duly admitted to practice before this Court, representing Plaintiffs in the above caption action.

2. I submit this declaration in support of Plaintiffs' portion of the joint letter brief concerning privilege log disputes.

3. I have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto.

4. As required by PTO 8, I attest that Plaintiffs met and conferred with Defendants prior to seeking relief from the Court.

**Privilege Log Production and Review – Background**

5. Uber produced a privilege log for custodian Katherine McDonald on September 14, 2024, containing 4,395 entries. Uber produced a privilege log for custodian Andi Pimental on September 15, 2024, containing 1,183 entries.

6. Plaintiffs painstakingly reviewed each entry on both custodial privilege logs and sent Uber document-by-document challenges on September 21, 2024, in order to comply with the seven-day deadline mandated by PTO 16. For each log, Plaintiffs sent Uber a detailed letter describing general issues with the privilege log, as well as categories of privilege challenges, including examples of specific challenged entries. Attached to the letters, Plaintiffs sent charts reproducing Uber's log and explaining, for each challenged entry, the reason why the specific entry was being challenged.

7. Plaintiffs completed this same process for the 9/20 log that contained 2,839 entries for custodians Jill Hazelbaker, Nate Silver, and Troy Stevenson, and 9/25 log that contained 17,122 entries for custodians Gus Fuldner, Rachel Holt, Roger Kaiser, and Jodi Page. Plaintiffs sent their letters and charts detailing challenges to the logs on September 27 and October 2 respectively.

8. Privilege log entry JCCP_MDL_PRIVLOG007124 is an e-mail that was withheld for attorney-client privilege. On September 27, 2024, Plaintiffs challenged this entry stating it

"appears to have a primary business purpose- a weekly email regarding Uber's business decision to use dashcams." There were 29 names listed as associated with the document, but none are designated in any field on the log as attorneys or privileged. On October 18, 2024, Uber withdrew its claim of privilege over this document and produced it as UBER_JCCP_MDL_000913808.

9. In meet and confers on September 25 and October 2, Uber made clear that it would not be responding to these challenges or re-reviewing any claims of privilege in any systematic fashion.

10. The Parties and the Court discussed potential disputes related to Uber's privilege logs during the discovery status conference on October 1, 2024. During that hearing, the Court indicated that the parties "should present any such disputes using a sample of specific privilege log entries." *See* ECF No. 1732.

11. On October 8, 2024 the Court issued its order regarding the parties' Joint Discovery Letter Brief on Plaintiffs' Clawback Challenge directing the parties to meet and confer by no later than October 11 and file a stipulation or joint letter addressing any remaining dispute by October 16, 2024. ECF No. 1727.

12. On October 9, 2024 the Court issued a discovery management order directing the parties to exchange and confer about privilege log disputes and to submit entries that resulted in an impasse to the Court by October 24, 2024. ECF No. 1732.

13. The parties met and conferred regarding the documents at issue in the Clawback Order on October 11, 2024.

**Conferral Over Disputed Privilege Log Entries and Challenges**

14. The parties met and conferred on October 14, 2024, and agreed to the following process prior to presentation of disputed entries to the Court as directed:

   a. By Tuesday, October 15 Plaintiff would propose its initial list of samples;

   b. By Thursday, October 17, Defendants would respond to Plaintiffs' proposal;

- 3 -

DECLARATION OF TIFFANY ELLIS IN SUPPORT OF PLAINTIFFS' PORTION OF PTO 8 LETTER BRIEF REGARDING PRIVILEGE LOG DISPUTES

     c.    The parties would meet and confer about the samples on Thursday, October 17;

     d.    The parties would continue this exchange and conference process until 10 samples identified by Plaintiffs and five samples identified by Defendants could be finalized or Wednesday, October 23, whichever was earlier.

15. In addition, during the October 14 meet and confer the parties discussed the possibility of resolving certain categories of disputes through the sampling process.

16. Both parties' selections and the result are described below. Throughout this process, the parties continued to regularly meet and confer, including on October 23 and October 25.

**Plaintiffs' First Selection**

17. On October 15, 2024, Plaintiffs sent Uber ten disputed privilege sample entries to review (18 entries total as one selection included 6 log entries grouped together as an email chain). Included in the 18 entries, Plaintiffs identified three privilege log entries that were exemplary of categorical issues with Uber's privilege logs: (1) JIRA documents, (2) documents similar to those at issue in the Clawback Order, and (3) Google documents with comments from unknown, non-privileged individuals.

18. On October 18, Uber responded to Plaintiffs' ten selections and immediately withdrew its claim of privilege over five entries; maintained privilege over one document; and stated it would continue review of the remaining entries, including to determine whether they could be produced with redactions.

19. Uber also responded to Plaintiffs' three "categorical" examples on October 18, and stated it was continuing to review two documents (JIRA and Clawback Order examples), and would withdraw its claim of privilege over the third document (Google comment example). Uber also stated it did not think the document Plaintiffs identified as similar to the Clawback Order documents (a PowerPoint titled "Copy of WIP: Stand for Safety – 2018 Strategy and Plan") was substantially similar.

20. As to the JIRA document, Uber referred Plaintiffs to its October 16, 2024, privilege dispute response letter in which it said, part:

> " ...many of the emails with subject lines that include "[JIRA]," "[L3]/[L4]," or "PTP" are in fact not automated emails, but are replies from humans in response to an automatically generated notice email. Again, these replies, like any other email, may be privileged; they are not categorically non-privileged simply because they may be replies to an automated email. In the spirit of cooperation, however, Uber is reviewing this request to determine whether any documents within these categories could be de-designated or produced with redactions rather than withheld in full."

21. On October 22, Uber withdrew in full its privilege claim over the remaining two categorical examples, and withdrew its claim entirely over one of the documents it stated it would review. Uber also agreed to produce with redactions the chain of six emails that comprised Plaintiffs' tenth challenge, and to produce with redactions one additional document challenged by Plaintiffs. On October 23, Uber withdrew its claim of privilege over the last challenged entry from Plaintiffs' first selection.

22. Thus, Uber withdrew its claim of privilege in whole or in part over all but one of the entries included in Plaintiffs' first selection (12 out of 13 documents, over 90%).

**Plaintiffs' Second Selection**

23. On October 21, Plaintiffs sent Uber five additional log entries to review (one of these five was a collection of seven log entries that were all part of the same email thread).

24. On October 23, Uber withdrew its claim of privilege over three of Plaintiffs' selections (including the set of seven emails), and agreed to produce the other two documents with reactions.

25. Thus, Uber withdrew its claim of privilege in whole or in part for 100% of the documents included in Plaintiffs' second selection.

**Plaintiffs' Third Selection**

26. To attempt to expedite the process of identifying disputed log entries, Plaintiffs sent Uber 33 challenged privilege log entries on October 23 (including one chain of emails such that the challenges cover 42 total documents).

- 5 -

DECLARATION OF TIFFANY ELLIS IN SUPPORT OF
PLAINTIFFS' PORTION OF PTO 8 LETTER BRIEF
REGARDING PRIVILEGE LOG DISPUTES

27. On October 24, Uber responded and fully withdrew its claim of privilege for 15 documents. It also partially withdrew its claim over 11 entries (including the chain of emails) and agreed to produce with redactions. Uber maintained its claim fully over 7 documents.

28. On October 25, Plaintiffs withdrew their challenge over one of the remaining seven documents, as they realized one of the documents included outside counsel (though not marked with an asterisk by Uber, indicating their role as an attorney).

29. Thus, Uber withdrew its claim of privilege in whole or in part for nearly 80% of log entries challenged in Plaintiffs' third selection.

**Ubers' First Selection**

30. On October 18, Uber sent Plaintiffs five privilege log challenges to review.

31. On October 21, Plaintiffs informed Uber that one sample was not in dispute. Uber provided a replacement for this sample on October 22.

32. On October 22, Plaintiffs withdrew their challenge concerning two entries and maintained its challenge for the other three, including the replacement sample.

**Uber's Second Selection**

33. On October 24, Uber sent Plaintiffs two additional challenged entries to review.

34. On October 25, Plaintiffs withdrew their challenge over one entry.

**Uber's Production of Previously Withheld or Redacted Documents**

35. On October 22 Uber produced 74 documents. This included samples from Plaintiffs' first round of sampling and similar documents to those samples.

36. On October 24 Uber produced 13 documents. This production included a sample from Plaintiffs' first round of sampling that Uber needed to review further, and 10 documents related to Plaintiffs' second round of sampling.

37. On October 26, Uber produced the 16 documents de-designated from Uber's privilege logs, 7 of which were included in Plaintiffs' third round of samples.

**Exhibits**

38.     Attached as **Exhibit A** is a true and correct copy of a document which Uber originally included on its privilege log, but produced after Plaintiffs' challenge. Uber's log had stated was a "[c]onfidential e-mail seeking legal advice from in-house counsel regarding use of cameras or recording devices in vehicles." Plaintiffs challenged this entry, noting that no legal advice was sought from the one attorney on the email, which had almost 30 recipients.

39.     Attached as **Exhibit B** is a true and correct copy of the disputed log entries as presented by Uber on its logs.  One additional column has been added by Plaintiffs noting the log on which the document was originally identified.

40.     Attached as **Exhibit C** is a spreadsheet comparing the description Uber included on its privilege log for each disputed entry and the detailed description Uber included in its portion of thisPTO 8 letter for each disputed entry. Plaintiffs include this exhibit to illustrate the dearth of detail Uber provides to Plaintiffs to assess their privilege claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of October 2024 in Detroit, Michigan.

/s/ Tiffany R. Ellis
Tiffany R. Ellis