

**Sent from:** New York Office

November 14, 2024

<u>Via ECF</u>
Magistrate Judge Lisa J. Cisneros
Northern District of California
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102

      Re: *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*
          Case No. 3:23-md-03084-CRB

Dear Judge Cisneros:

      Pursuant to the Court's Order Regarding Time Period for Discovery (ECF 1813), the parties respectfully submit this joint letter.

**I.**      <u>**Plaintiffs' Position**</u>

      **Post-November 2023 Documents**. Sexual assault of Uber riders by drivers is not a problem of the past. Throughout this past year, women have continued to file claims in this ligation alleging that their Uber driver sexually assaulted them during 2024. The importance of discovery after November 2023 is twofold: first, to support claims that occurred after that date and second, to support punitive damages claims in each case (regardless of the date of the incident).

      The Court ordered the parties to meet and confer regarding the terms of post-11/2023 discovery. Plaintiffs' position is that, for custodians already produced (tranches 1 and 2), Uber should update their productions by December 1, 2024 with documents through November 1, 2024; for custodians not yet produced (tranches 3 and 4), Uber should pull, review, and produce documents through November 1, 2024 consistent with the deadlines currently in place (see ECF No. 1808); and for all custodians, Uber should make supplemental productions consisting of documents through January 1, 2025 by February 1, 2025, and again at the close of discovery consisting of documents through the time period of one month prior to the close of discovery.

      Additionally, with respect to non-custodial documents Uber should supplement its production with documents through November 1, 2024 by December 1, 2024. With respect to newly-created documents, Uber should produce documents on a rolling basis in selected non-custodial categories, including policies governing background checks and driver onboarding (including screening and training); incident investigation and driver suspension and deactivation policies; law enforcement cooperation policies; documents related to safety marketing and marketing to women including studies or focus group materials assessing safety or safety

communications; safety policies related to preventing interpersonal conflict, sexual assault, or sexual misconduct; and documents related to U.S. Safety Reports.

Uber says it is willing to produce targeted categories of non-custodial documents, but has not provided any specifics and appears unwilling to produce these documents unless Plaintiffs agree not to seek production of custodial documents after November 27, 2023. To the extent Uber is in fact willing to produce targeted categories, it should produce the above-identified ones, at a minimum.

**Pre- 2013 Documents**. Uber has not complied with the Court's order with respect to pre-2013 discovery.

*First*, while Uber identified the custodians who should possess relevant documents prior to 2013, Uber has refused to "provide to Plaintiffs a declaration or discovery material sufficient to identify the earliest date when Uber began to research, plan, or otherwise consider a rideshare model for its transportation business." ECF 1816 at 2. Uber argues that Plaintiffs do not need this information in light of Uber's agreement to produce custodial discovery dating back to the start of each custodian's employment. On top of flatly ignoring the plain terms of the Court's Order, Uber's position hides that Uber did not preserve documents for these custodians prior to 2013 and also ignores its obligation to produce responsive discovery not just from custodial files, but also from noncustodial files. Noncustodial documents will be particularly important here because the earliest litigation hold for any of these six custodians is December 2013.[1] These six custodians are unlikely to have any meaningful discovery prior to 2013 because Uber did not preserve it. Therefore, in addition to the declaration the Court ordered and in light of Uber's position (as discussed below) that it will not produce noncustodial discovery, Uber should provide the size of the custodial file (by number of documents) for each of these six custodians prior to 2013.

*Second*, Uber has refused to produce non-custodial discovery (categories of documents and targeted searches) prior to 2013. Uber argues that the Court rejected such production in its order, but that is incorrect. The Court's order drew a line based on timeframe and nothing else: discovery starting from when Uber "gathered relevant data or made early decisions that relate to ride safety" is proportional; "earlier documents" are not. *Id.* at 2. The Court never said that only custodial discovery is proportional.

An artificial limitation to custodial discovery makes no sense. Plaintiffs explained, and the Court agreed, that Uber's "pre-launch research, design, and policies" were relevant and proportional. ECF 1783 at 1; *see also* ECF 1816 at 2 ("agree[ing] with Plaintiffs that Uber's consideration and development of a rideshare service model is sufficiently relevant to this litigation to warranty discovery, regardless of when that process began"). Nothing about that conclusion depends on where such "policies" are contained. Nor did Uber make any burden arguments specific to noncustodial sources. *See* ECF 1783.

---

[1] Uber first issued litigation holds for Graves and Twomey on December 4, 2013; for Kalanick on December 19, 2014; and for Barnes, Pimentel, and Holt in 2015. The custodial file production for Holt, Kalanick, and Pimentel, which Uber claims is complete, includes fewer than 250 documents from the entire year of 2013.

2

Indeed, from at least 2012, if not earlier, Uber recognized the safety risks to riders inherent in ridesharing.[2] For example, policies concerning driver onboarding (including training and screening) and background checks should be produced, even if they predate 2013.[3] In fact, Uber has agreed to conduct target searches of noncustodial files in response to certain discovery requests, for example, documents related to investigating and responding to customer complaint and support requests, (i.e., Uber's systems and processes for documenting and investigating reports of safety incidents), Uber's policies on cooperation with law enforcement, deactivation and suspension policies, and training materials provided to drivers. There is no reason those searches should exclude the pre-2013 time period the Court identified as proportional. And Uber's pre-launch marketing to socialize the concept of riding in strangers' cars is relevant and proportional, even if that marketing did not materialize as an attachment to a custodian's email.

While Uber's position in the meet-and-confer was that pre-2013 non-custodial production is off-limits, it now says that it will respond to "reasonable, targeted requests." The above categories are both reasonable and targeted and should be produced. All of this discovery reflects documents Uber already agreed to search for and produce post-2013. Extending those searches pre-2013 to begin when Uber first contemplated a "rideshare model" simply reflects the Court's correct conclusion that evidence from this time period is relevant and proportional.

## II.     Defendants' Position

**Post-November 27, 2023 Documents**. As Defendants informed the Court in the November 6, 2024 Case Management Conference, and communicated to Plaintiffs on November 7 and November 12, Defendants intend to seek relief from that part of the Court's Order setting no cutoff date for custodial document productions. In conferrals with Plaintiffs prior to the PTO 8 joint letter (ECF 1783) being filed, and since the Court's Order (ECF 1816), Defendants took the position that they would consider good-faith reasonable requests for targeted information originating after November 2023 where Plaintiffs articulated a specific need tied to a claim or defense (e.g., policies or procedures).  Defendants in the November 12 conferral again raised the possibility of resolution of the dispute by crafting a practical solution of post-2023 targeted requests. However, Plaintiffs did not respond to Defendants' proposal or otherwise engage on this topic. Plaintiffs did not propose a production schedule during the parties' meet-and-confer, and now for the first time raise a proposed schedule that is not workable.

Defendants are seeking relief from the end-date portion of the Court's Order because evergreen collections, review, and production and logging of documents created in the thick of litigation is not practical. The parallel tracks of running a business and preparing a legal defense on the very same issues presents exponentially greater burdens for review and production of these documents. During this time period, now stretching well past one year since the first MDL case was filed in early 2023, individuals in Defendants' business are necessarily communicating

---

[2] *See, e.g.*, Ryan Lawyer, *California Regulator Issues Citations And Fines Against Transportation Services Uber, Lyft, And SideCar*, TechCrunch (Nov. 14, 202), https://techcrunch.com/2012/11/14/cpuc-uber-lyft-sidecar-citations/ (last visited Nov.12, 2024) (Kalanick: "We do appreciate the model for streamlined supply of the P2P transport co's (and are actively considering a similar supply model)…[and] [t]here is a distinct advantage to this kind of streamlined supply, but we haven't yet figured out a way to do this while feeling that the driver and passenger in the vehicle are **adequately protected from a legal or personal injury standpoint**.") (emphasis added).

[3] For example, in its earliest years of operation (prior to 2013), Uber conducted screening interviews of drivers. These documents are significant to Plaintiffs' contention that Uber should have done more to screen drivers.

on issues relevant to the case. This is their business. Nearly every email among the 55 agreed upon custodians, particularly given the breadth of Plaintiffs' search terms (e.g., "ride"), will be swept into the costly and time consuming document review process. Moreover, to the extent these custodians are communicating directly with in-house and outside counsel, or with each other to effect and/or inform legal advice by counsel, countless documents from 2024 will require a privilege assessment. The burdens of establishing "primary purpose" in the privilege assessment, which falls uniquely on Defendants as the proponent of the privilege, in what will surely be serial privilege challenges, will generate needless disputes and pose an extreme burden on the Court.

At this time, pending the outcome of Defendants L.R. 72-2 motion, Defendants do not propose a schedule for review and production of post November 27, 2023 documents. However, Plaintiffs' proposed timeline is clearly unworkable, given the breadth of the previously agreed nearly 10-year time scope of discovery, the burdens of supplemental collections, and the additional layers of privilege review required for these later 2024 documents. Judge Breyer stated at the CMC that he would quickly evaluate Defendants' Rule 72-2 motion. Forcing the completion of collections now, while that motion is pending, will force costs to be incurred that may not be necessary depending on the disposition of the Order. For this reason, the Court should reserve setting a schedule for production of post-2023 documents. To the extent the Court does adopt some schedule, over Defendants' objection, for production of post November 27, 2023 documents, any such productions should follow the production completion timeline set by the Court for January 3, 2025 (PTO 20, ECF 1808), so as not to disturb the existing production schedule.

**Pre-2013 Documents**. Per the Court's Order, on November 7, 2024, Defendants identified by name the six custodians (of the 55 agreed upon custodians) who were employed in roles likely relevant to researching, planning, implementing safeguards associated with, or otherwise considering Uber's entry into the rideshare market prior to April, 2013. Additionally, on November 7, 2024, in the spirit of compromise and an endeavor to conserve judicial resources by avoiding motions for reconsideration and/or review of the Order, Defendants further agreed to produce responsive and non-privileged documents for those six custodians with no back-end date cutoff.

Defendants' agreement to provide documents for these custodians without a back-end cutoff obviates the immediate need for a "declaration or other discovery material" pinpointing when Defendants began consideration of the rideshare model. As the Order states, the intended purpose of such a mechanism was to allow the parties to limit discovery to the time period in which "Uber first considered a rideshare service model" given that "such a date necessarily preceded Uber's decision and its April 2013 public announcement that it would enter the rideshare market." ECF 1816 at 2-3. Had Defendants provided a declaration that planning for rideshare began on or around the time of the article cited by Plaintiffs above, Defendants would thus be justified in moving the front-end (earlier) date cutoff for discovery back by less than two months, i.e., from January 2013 to November 2012. Defendants appreciate this opportunity to narrow the scope of discovery. However, as a practical matter, these events happened a dozen years ago or earlier. Only one of those six identified custodians is currently employed by Defendants, and even then in a markedly different role now as compared to pre-2013. Requiring an individual to provide a declaration, under penalty of perjury, proving a pinpoint date for a business decision "to take steps" toward the creation of a business line made over a dozen years ago, is both unjust to that individual and may prejudice parties in this litigation, who would rely

4

on that date to inform discovery. Further investigation and discovery, however, could show a fact unknown to that individual and may ultimately move the "date" Defendants "took steps to consider" a rideshare business model either forwards or backwards in time. All of this is mooted by Defendants' agreement to give Plaintiffs more than what the Court ordered. This is another example of Plaintiffs seeking more, even in the face of proposed compromise and practical solutions offered by the Court and Defendants–costs and burdens to the Court notwithstanding.

Plaintiffs also misread the Court's Order to encompass non-custodial documents prior to 2013. As the Order plainly states, "the Court is not persuaded that discovery of documents predating Uber's consideration of a rideshare service model is 'proportional to the needs of the case.'" ECF 1816 at 2. Accordingly, the Court ordered the parties to meet and confer only about "appropriate *custodians* and date range for production of their *custodial records*" prior to Defendants' proposed 2013 front-end cutoff. *Id.* (emph. added). Plaintiffs also mischaracterize Defendants' position as a blanket refusal to produce anything outside of custodial files prior to 2013, when in fact Defendants have consistently made clear that, if Plaintiffs believe they need something specific from the pre-2013 time period, Defendants will entertain reasonable, targeted requests.

To comply with the Court's Order, Defendants will begin producing pre-2013 responsive documents on or before November 26 and will continue to incorporate pre-2013 documents in its productions on a rolling basis for all custodians until document custodial productions are completed on January 3, 2025 as required in PTO 20 (ECF 1808). Defendants will make a concerted effort to prioritize completing pre-2013 document productions for the three Uber employees associated with Tranches 1 and 2 (R. Holt, T. Kalanick, and A. Pimentel).

Sincerely,

By: /s/ *Roopal P. Luhana*
ROOPAL P. LUHANA (Pro Hac Vice)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

**RACHEL B. ABRAMS (SBN 209316)
PEIFFER WOLF CARR KANE CONWAY
& WISE, LLP**

By: */s/ Michael B. Shortnacy*
MICHAEL B. SHORTNACY
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (Admitted *Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON L.L.P.**
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

KYLE N. SMITH (*Pro Hac Vice* admitted)
ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC