# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br>ALL CASES. | Case No. 23-md-03084-CRB (LJC)<br><br>**ORDER REGARDING TIME PERIOD FOR DISCOVERY**<br><br>Re: Dkt. No. 1783 |

On October 22, 2024, the parties filed a joint letter addressing a dispute regarding the relevant time period for discovery. Dkt. No. 1783. In gathering documents from its current and former employees designated as custodians for the purpose of this litigation, Uber has declined to search for documents predating January 1, 2013 or postdating November 27, 2023. *See id.* at 3–4.

### A. Pre-2013 Documents

Uber argues that documents created before 2013 are not relevant because Uber only began offering its current "rideshare" service model using independent individual drivers—as opposed to relying on "transportation services from existing transportation providers who purchased commercial insurance, and [were] commercially licensed"—in "mid-2013." *Id.* at 4 (cleaned up). Plaintiffs argue that Uber presumably began developing its business plan and support structure for its rideshare service well before implementing that service. *Id.* at 1–2. Plaintiffs also argue that Uber's "primary focus on safety marketing pre-2013 to create brand trust" is relevant even if it predated any consideration of a rideshare service model, and that Uber would not face an excessive burden in reviewing earlier documents because only six of the fifty-five document custodians worked for Uber before 2013. *Id.* at 2.

Uber does not assert in this joint letter that its consideration of a rideshare model began in 2013. *See* Dk. No. 1783 at 4. Instead, it argues that it would "def[y] common sense" for Uber to

have "created marketing and various policies related to this wholly new group of independent drivers years before" beginning its rideshare service in mid-2013, and that producing documents from earlier that year, "several months before Uber entered the rideshare market," is sufficient. *Id.*

The Court agrees with Plaintiffs that Uber's consideration and development of a rideshare service model is sufficiently relevant to this litigation to warrant discovery, regardless of when that process began. Uber might—or might not—have gathered relevant data or made early decisions that relate to rider safety before 2013. It is reasonable to infer that process could have begun well before Uber publicly released a "white paper" in April 2013 announcing that "Uber will roll out ridesharing." *See* Uber Policy White Paper 1.0 (Apr. 12, 2013), *available at* https://www.benedelman.org/uber/uber-policy-whitepaper.pdf (access Oct. 31, 2024); *see also* ECF No. 1783 at 4 n.6 (Uber's portion of the joint letter, citing this document). Moreover, if—hypothetically—Uber had previously considered a rideshare model but rejected that approach due in part to concerns about rider safety, non-privileged documents related to that decision should be discoverable. Uber's arguments and its chart with generalized settlement information related to pharmaceutical and medical device MDL settlements do not persuade the Court that this approach is disproportionate to the needs of this litigation, or that costs associated with this discovery should be shifted to Plaintiffs. *See* Dkt. No. 1783-1.

Plaintiffs also argue that earlier documents may be relevant to show Uber's knowledge of the ways riders used its service, including usage in dangerous places or at times of day that could increase their risk, even before Uber developed its rideshare model. Dkt. No. 1783 at 2. That may be so, but the Court is not persuaded that discovery of documents predating Uber's consideration of a rideshare service model is "proportional to the needs of the case," even from the limited number of custodians who worked at Uber before 2013. *See* Fed. R. Civ. P. 26(b)(1).

It is not clear from the current record when Uber first considered a rideshare service model. The Court therefore ORDERS as follows: By November 7, 2024, Uber shall provide to Plaintiffs a declaration or discovery material sufficient to identify the earliest date when Uber began to research, plan, or otherwise consider a rideshare model for its transportation business. It is reasonable to infer that such a date necessarily preceded Uber's decision and its April 2013 public

2

announcement that it would enter the rideshare market. Uber's research and planning could have included, without limitation, writing a business plan, designing its app to support ridesharing, considering and deciding a host of related elements that range from driver onboarding to background checks and safety marketing, or weighing the advantages and risks of a rideshare model as compared to using professional transportation providers.

Plaintiffs have asserted, and Uber has not disputed, that only six custodians worked for Uber before 2013. By the November 7 deadline, Uber shall also identify which of these six custodians were employed in roles pre-April 2013 that were relevant to researching, planning, implementing safeguards associated with, or otherwise considering Uber's entry into the rideshare market. By November 14, 2024, the parties shall meet and confer regarding the appropriate custodians and date range for production of their custodial records, and file either a stipulation or a joint discovery letter consistent with Pretrial Order No. 8 addressing the custodians and date range(s) for pre-2013 discovery. If documents for any such custodians have already been produced, the November 14 filing must also address when Uber will complete a supplemental production of pre-2013 documents for those custodians.

### B. Post-November 2023 Documents

Uber's arguments for its November 27, 2023 cutoff date include that: (1) the plaintiffs in the related JCCP litigation in California state court agreed to it; (2) less than five percent of the MDL plaintiffs (thus far) claim their rides occurred after that date; (3) some end date is necessary to create a manageable process and avoid undue burden; and (4) case-specific fact sheets and other targeted discovery will be sufficient to address new developments in cases involving more recent rides. *See* Dkt. No. 1783 at 5. Plaintiffs argue that they need discovery related to Uber's current policies and procedures, specifically for newer claims involving rides that occurred in the past year. *Id.* at 2–3.

New member cases continue to be added to this MDL, and some are based on rides that occurred in the current year. Those plaintiffs have a legitimate interest in discovering relevant information that concerns Uber's contemporaneous safety policies, decisions surrounding those policies, understanding of risks, and other matters generally within the scope of discovery in this

3

1  litigation. The Court therefore declines to set an end date for custodial document production at
2  this time. Uber is ORDERED to produce documents created through the present and on an
3  ongoing basis going forward, unless and until an end date is set by further order.
4      The Court recognizes, or course, that Uber cannot produce discoverable documents in real
5  time as they are created. The parties shall meet and confer regarding the cutoff dates for
6  upcoming tranches of custodial document production, supplemental productions for custodians
7  whose documents have already been produced, and future productions of newly created
8  documents. The parties shall file a stipulation or joint letter addressing those issues no later than
9  November 14, 2024.
10 **IT IS SO ORDERED.**
11 Dated: October 31, 2024

LISA J. CISNEROS
United States Magistrate Judge

4