

November 19, 2024

The Hon. Lisa J. Cisneros
United States Magistrate Judge
Phillip Burton Federal Building
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *In re Uber Technologies, Inc. Passenger Sexual Assault Litigation*, No. 3:23-md-0384-CRB
      Third Party Subpoena to Corrie Yakulic

Judge Cisneros:

In accordance with the Court's Order, ECF 1792, Plaintiffs submit this letter in support of their third-party subpoena to Corrie Yakulic.

## I.    Background

Corrie Yakulic is counsel of record for Plaintiffs Amie Drammeh and Yusupha Ceesay in *Drammeh v. Uber Technologies, Inc. and Rasier, LLC*, No. 2:21-cv-00202 BJR (W.D. Wash.) (the "*Drammeh* case"). Discovery in the *Drammeh* case is also relevant to the allegations in the MDL. Additionally, Ms. Yakulic plans to enter a notice of appearance on behalf of a plaintiff in this MDL.

In the *Drammeh* case, an Uber driver was carjacked and murdered by two Uber passengers. *Drammeh v. Uber Techs., Inc.*, 2024 WL 4003548, at *1 (9th Cir. Aug. 30, 2024). As counsel for the decedent's surviving family, Ms. Yakulic obtained discovery on numerous issues relevant to this MDL, including how Uber tracks, analyzes, and categorizes safety data as part of its Sexual Misconduct and Violence Taxonomy (the "Taxonomy"); Uber's data quality requirements and methodology for evaluating and representing safety incident data as part of its Safety Reports; and Uber's assessment of safety features, including dashcams, including through surveys and studies. *See*, *e.g.*, Appellee's Supp'l Excerpts of Record Vol. I, *Drammeh v. Uber Techs., Inc.*, 22-36038 [Dkt. 26] (9th Cir. Filed June 30, 2023).[1]

Because the documents, including deposition transcripts, from the *Drammeh* case are subject to a protective order, Ms. Yakulic cannot use them in this litigation or share them with the PSC absent an order from this Court. In accordance with established procedures, Plaintiffs served a subpoena on Ms. Yakulic who has possession, custody, and control of documents relevant and proportional to this litigation—and who does not object to their production—so that the Court may enter an order permitting Ms. Yakulic to produce the documents. This is the least burdensome way of obtaining these documents,

---

[1] The *Drammeh* case is currently on appeal to the Ninth Circuit.

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota



which Ms. Yakulic is willing to produce quickly and at no expense to any party. Just as it was fictional to ask Sara Peters to "know" something in one case and "not know" it here, the same logic should apply to Ms. Yakulic.

Nonetheless, Plaintiffs, after meeting and conferring with both Uber and Ms. Yakulic, have narrowed their requests to the following categories of documents:

1. Documents related to dashcams;
2. Documents related to the Taxonomy;
3. All deposition transcripts and associated exhibits of Uber's witnesses and any other witness who acted with or on Uber's behalf;
4. Documents related to the safety report; and
5. All correspondence with the court.

Ms. Yakulic has agreed to produce all documents requested by Plaintiffs, and only Uber objects.

### II.     Argument

On July 14, the Court granted Plaintiffs' motion to enforce and denied Uber's motion to quash a substantially similar subpoena to PSC member Sara Peters. [ECF 695 at 14–15.] There, the Court held that "Uber's confidentiality concerns can be sufficiently addressed by the Protective Order and clawback procedures in this MDL as well as by the Court's procedures for filing confidential material under seal pursuant to Civil Local Rule 79-5." [ECF 695 at 15.] For the same reasons, the Court should grant Plaintiffs' motion to enforce and deny Uber's motion to quash the subpoena to Ms. Yakulic.

***Relevance.*** The scope of discovery under Rule 45 is the same as under Rule 26, [ECF 695 at 3], which permits "discovery concerning 'any nonprivileged matter that is relevant to any party's claim or defense.'" *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 528, 530–31 (N.D. Cal. 2015) (quoting Fed. R. Civ. P. 26(b)(1)). "The test for relevance is not overly exacting: evidence is relevant if it has any tendency to make more or less probable a fact that is of consequence in determining the action." [ECF 684 at 8 (quotations omitted)]. "On the other hand, the party opposing discovery, 'has the burden of showing that discovery should not be allowed.'" *Id.* (quoting *Sayta v. Martin*, 2019 WL 666722, at *1 (N.D. Cal. 2012)). In ruling on a subpoena to the Chertoff Group for materials related to its validation of the Sexual Misconduct and Violence Taxonomy, the Court stated, "What Uber knew about alleged incidents of sexual assault and harassment by its drivers and how it tracked and categorized such incidents, are potentially important issues in this litigation." [ECF 1771 at 3] Similarly, issues of "driver education, background checks, etc. [are] issues which are also relevant to this MDL." [ECF 695 at 6 n.5] Here, Uber makes much of the fact that the underlying incident in the *Drammeh* case was a carjacking, not a sexual assault. But the discovery obtained by Ms. Yakulic and requested by subpoena here pertains *directly* to issues of what Uber knew about safety incidents (including sexual assault), how it tracked

Nigh Goldenberg Raso & Vaughn, PLLC  
14 Ridge Square NW | Third Floor  
Washington, D.C  
20016  

T: (202) 792-7927  
D: (612) 424-9900  
F: (202) 792-7927  
nighgoldenberg.com  

Washington D.C.  
Kansas  
Florida  
Minnesota

**NGRV** NIGH GOLDENBERG RASO & VAUGHN

and categorized those incidents, and how it monitored Uber app drivers not just through background checks and education, but also through dash cameras.

It is evident from the excerpts of record publicly filed on the docket in the Ninth Circuit that these documents are highly relevant to the issues in this MDL. For example, the record in that case includes documents directly related to Uber's analysis of dash cameras as explicitly safety related tools:

- Uber Dashcam Safety Program, Nexar's Response (July 2018)
- Law Enforcement Response Team Community Response (December 14, 2020)
- Netradyne Dashcam Safety Proposal to Uber (June 22, 2018)
- Nauto Dascham Safety Proposal (June 22, 2018)
- Uber Dashcam Survey of Drivers (August 2018)
- Uber Dashcam Diary Study Learnings (October 2018)
- Uber Round Tables with Drivers re Using Phone as Dash Camera (November 18–22 2019)
- Nauto Dashcam Program Study Review (March 2020)
- Vodafone Dashcam Proposal for Uber (April 8, 2019)
- Uber email chain re Dashcams for Drivers (July 2019–November 24, 2020)
- Dashcam Update (June 2020)

Excerpts of Record Index, *Drammeh v. Uber Techs., Inc.*, 22-36038 [Dkt. 16-1 at 2–7] (9th Cir. Filed May 1, 2023). Additionally, viewing the record alone (as described *by Uber*), evidence in the *Drammeh* case related to Uber's Sexual Misconduct and Violence Taxonomy and Safety Reports, such as:

- "information regarding Uber's internal processes and proprietary technology relating to investigating reported safety incidents and detecting fraudulent account signups."
- "Uber's analysis of and proposed response to reported safety incidents" which "includes internal safety data Uber compiled, Uber's analysis of that data through its own software systems, and Uber's proposed business strategies for the development of processes, features, and tools in response to its findings."
- "Uber's business strategies for launching its dashcam partner program"
- "Uber's internal taxonomy for classifying reported safety incidents" which "contains descriptions of internal processes, policies, and procedures for identifying and classifying reported safety incidents."

Excerpted Williamson Decl., *Drammeh v. Uber Techs., Inc.*, 22-36038 [Dkt. 23-1 at 65–74]; *see also* Excerpts from Katy McDonald Dep., *Drammeh v. Uber Techs., Inc.*, 22-36038 [Dkt. 53-1 at 11] (discussing Uber Safety Report "data quality requirements"). Finally, Ms. Yakulic deposed Matthew Baker, Katy McDonald, and Cory Freivogel who are scheduled to be deposed by the MDL. *Id.* at [Dkt. 2–4]. Uber cannot seriously dispute the relevance of the documents and testimony in the *Drammeh* case to *this* case.

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota



***Availability of Discovery.*** Plaintiffs request to Ms. Yakulic to re-produce documents from the *Drammeh* case is procedurally proper, particularly given that Ms. Yakulic does not object. Parties are entitled to obtain discovery from cases involving the same defendants where there is "significant factual and legal overlap" by issuing subpoenas to parties involved in those cases. *E.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017); *see also Hall v. Marriott Int'l, Inc.*, 2021 1906464, at *8 (S.D. Cal. May 12, 2021) (granting requests for deposition transcripts, written discovery, and production of documents where causes of action were similar though based on different states' laws).

The subpoena to Ms. Yakulic seeks information directly relevant to this issue in the MDL. As the Court held when presented with a substantially similar subpoena to PSC Member Sara Peters, testimony concerning Uber's systems, data compilation, auditing and collection practices, and policies are "highly relevant." [ECF 695.] Ms. Peters' subpoena concerned on sexual assault policies and tools, the subpoena to Ms. Yakulic concerns the design and implementation of those tools (including the taxonomy, dashcams, and data analysis) more broadly, as well as applied to the specific issue of carjackings. Plaintiffs' ability to obtain this information from Ms. Yakulic, who already has it, and is willing to produce it, is essential. In this litigation, Plaintiffs have serious concerns about Uber's document retention practices. For example, Uber has disclosed that despite ongoing litigation (like the *Drammeh* case) it did not retain documents for more than six months. [ECF 190 at 7–8, ECF 345 at 17.] This relevant, available information should be produced due to the substantial overlap with the relevant facts and legal issues in this litigation. Plaintiffs seek documents from the *Drammeh* litigation to fill a (well documented) gap in Uber's production concerning the development and implementation of Uber's safety tools as a whole. That Ms. Yakulic also used this evidence to support claims concerning Uber's failure to protect drivers from carjackings does not render the requests for these documents improper.

***Protective Order.*** The existence of a protective order in the *Drammeh* case does not require a different outcome. Just as it failed to do when Plaintiffs sent a subpoena to PSC member Sara Peters, Uber has again failed to articulate why documents produced pursuant to a protective order in one case in which Uber was the defendant cannot be *re*-produced pursuant to a protective order in another case in which Uber is a defendant. Indeed, as the Court held previously, "Uber's confidentiality concerns can be sufficiently addressed by the Protective Order and clawback procedures in this MDL as well as by the Court's procedures for filing confidential material under seal pursuant to Civil Local Rule 79-5." [ECF 695 at 15]; *see also See Realtek Semiconductor Corp. v. LSI Corp.*, 2014 WL 4365114, at *2–3 (N.D. Cal. Sept. 3, 2014) (rejecting argument that "the subpoena seeks confidential information subject to a protective order" because "the protective order in place in both lawsuits provides sufficient protection for whatever confidential information is included in the materials at issue."); *see also Gonalzes v.*

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota



*Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) (requiring demonstration that protective order in litigation was insufficient to protect confidentiality of documents).[2]

**Burden.** Ms. Yakulic consented to producing the requested documents pursuant to the Protective Order in this case. To the extent Uber suggests, as an "alternate" proposal, that Ms. Yakulic should parse through its prior productions to identify only those limited categories of documents that relate to certain categories of topics, this proposal would impose a greater burden on Ms. Yakulic than the production she has already agreed to. Rule 45 does *not* require an evaluation of burden on a *party*; nor would there be any burden on Uber to inspect each document for attorney-client or work product privilege because, as the defendant in the *Drammeh* case, Uber did so when the documents were first produced.

### III.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion to enforce the subpoena to Ms. Yakulic in its entirety and deny Uber's motion to quash the subpoena.

---

[2] In addition, there is a presumption of public access to court records. *Kamakana v. City and Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). The *Drammeh* case has a well-developed record with numerous documents, relevant to this MDL, filed and used to support court decisions. The suggestion that those documents not only are *not public* but cannot be produced in this MDL *pursuant to a protective order* belies well-established law and principles of access

Nigh Goldenberg Raso & Vaughn, PLLC  
14 Ridge Square NW | Third Floor  
Washington, D.C  
20016

T: (202) 792-7927  
D: (612) 424-9900  
F: (202) 792-7927  
nighgoldenberg.com

Washington D.C.  
Kansas  
Florida  
Minnesota



Dated: November 19, 2024

Respectfully submitted,

By: /s/ Marlene J. Goldenberg
Marlene J. Goldenberg
Samantha V. Hoefs
**NIGH GOLDENBERG RASO & VAUGHN PLLC**
14 Ridge Square NW, Third Floor
Washington, D.C. 20016
Telephone: (202) 978-2228
Facsimile: (202) 792-7927
mgoldenberg@nighgoldenberg.com
shoefs@nighgoldenberg.com

By: /s/ Sarah R. London
Sarah R. London (SBN 267083)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com

By: /s/ Rachel B. Abrams
Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: /s/ Roopal P. Luhana
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Counsel for Plaintiffs*

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW | Third Floor
Washington, D.C
20016

T: (202) 792-7927
D: (612) 424-9900
F: (202) 792-7927
nighgoldenberg.com

Washington D.C.
Kansas
Florida
Minnesota