*Submitting counsel on signature page.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:23-md-03084-CRB-LJC<br><br>**DECLARATION OF BRET STANLEY** |
| This Document Relates to:<br><br>All Cases | Magistrate Judge: Honorable Lisa J. Cisneros |

1. I, Bret Stanley, hereby declare as follows:

2. I am an attorney at law, duly licensed to practice before this court and an attorney with Johnson Law Group. If called as a witness, I could competently testify to the facts set forth herein.

3. I am a member of the Plaintiffs' Steering Committee in this MDL, and I was also counsel for the Plaintiffs in two prior cases against Uber. First, I was counsel for the plaintiffs in *Jesse Saxton, Issac Taboda, & Nathan Stang v. Uber Technologies, Inc.*, Austin, TX (the "Saxton matter"). The Saxton matter does not have a JAMS reference number, but the arbitrator was Karl Bayer. Second, I was counsel for the plaintiffs in *Lucimar Da Silva v. Uber Technologies, Inc.*, JAMS Reference 1100112429, San Francisco, CA (the "Da Silva matter").

4. I am familiar with the facts, evidence, and testimony in the Da Silva and Saxton matters, as well as the allegations and issues in the present litigation.

5. Plaintiffs in this MDL have subpoenaed evidence from the DaSilva and Saxton matters that, in my opinion, is highly relevant to the issues raised in this MDL.

6. The DaSilva and Saxton matters related to driver classification and/or pay, which, in turn required an assessment of driver classification as employees or independent contractors.

7. The testimony and exhibits in the DaSilva and Saxton matters covered the following topic areas that are highly relevant to Plaintiffs' claims, theories, and allegations in this MDL:

   a. Status of Uber drivers as either employees or independent contractors;

   b. Uber's management of and exercise of control over its drivers;

   c. Uber's policies, procedures, and practices;

   d. Uber's Knowledge Base policies;

   e. Uber's policies and training for interacting with riders and accepting rides;

   f. Uber's recordkeeping policies;

   g. Uber's Safety Taxonomy, including categories and definitions;

   h. Background checks;

   i. Safety concerns;

   j. Long pickups and long drop-offs;

   k. Uber's recordkeeping and document retention policies and practices.

8. I have identified potential documents to produce in connection with this Subpoena that appear on the Exhibit Lists used in the Final Arbitration Hearing from the Saxton matter and the Exhibit Lists used in the Final Arbitration Hearing from the DaSilva matter.

9. In my role as a member of the PSC in this MDL, one repeated issue with Uber's productions has been Knowledge Base policies. I personally have in my possession versions of Uber's Knowledge Base policies and other documents, which, if permitted to comply with the subpoena, I could produce with no burden on Uber. This would allow Plaintiffs to cross-check the completeness of their productions and, more importantly, if these versions no longer exist in Uber's custody, possession, and control, will ensure that Plaintiffs can still access these policies. The alternate option would be for me to pretend these policies (and other documents) simply do not exist—all the while knowing they do—and that Plaintiffs are simply out of luck if Uber has not retained them.

10. I cannot "unknow" what I know from the prior litigation, and it hampers my ability to effectively coordinate and strategize in the present litigation that I have relevant knowledge that I cannot share.

Executed this 19th day of November, 2024 at Houston, Texas.

/s/ *Bret Stanley*

Bret Stanley