UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Filing Relates to:<br>*All Cases* | MDL No. 3084<br><br>MDL No.: 3:23-MD-03084 CRB<br><br><br>Judge: Hon. Charles R. Breyer<br>Magistrate Judge: Hon. Lisa J. Cisneros |

**DEFENDANTS' LETTER BRIEF
RE: PLAINTIFFS' SUBPOENA TO CORRIE YACKULIC**

Dear Judge Cisneros:

Attorney Corrie Yackulic represented the plaintiffs in *Drammeh v. Uber*, a wrongful death negligence suit arising from the tragic murder of an Uber driver in a failed carjacking attempt. The case turned on: (1) whether Uber's procedures for verifying rider accounts were negligent, and (2) whether Uber had a "special relationship" with the driver giving rise to a tort duty to protect him from the criminal acts of third parties. *Drammeh v. Uber Techs. Inc.*, No. 2:21-CV-202-BJR, 2022 WL 4482950, at *5 (W.D. Wash. Sept. 27, 2022). The case did not involve sexual assault or misconduct.

MDL Plaintiffs' initial subpoena to attorney Ms. Yackulic requested "all" documents, videos, audio, and deposition transcripts she "received in connection with litigation in which Uber was a part"—without any limitation to relevant subject matters. *See* Ex. A. In the parties' meet and confer prior to this briefing, Uber urged Plaintiffs to narrow the requests to documents on relevant subject matters that Ms. Yackulic might have from the *Drammeh* case. But Plaintiffs declined, ironically stating that the burden of reviewing documents would be too much for Ms. Yackulic, a position echoed in Plaintiffs' brief, *see* ECF 1892 at 5, and contrary to the Plaintiffs' argument that Ms. Yackulic does in fact know and wants to share with MDL Counsel. Plaintiffs did not alter their overbroad requests until they filed their brief on November 19, 2024. Plaintiffs have finally taken a first step towards narrowing and tailoring the scope of their requests to this litigation, a step that should have been taken in the conferral process. Yet certain requests remain substantially overbroad. As set forth below, Uber does not object to the production of certain categories of documents that are reasonably targeted to information relevant to this MDL.

### *Discovery Requests Must Be Reasonably Tailored to Relevant Information*

Courts have explained that "cloned discovery"—requests for document productions from separate litigations—are generally impermissible. The reason courts look skeptically at such requests is that they are, by definition, not tailored to seeking relevant information. *See King Cty. v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. 2011). Mere "similarity" between two cases is not enough to permit cloned discovery. *See Chen v. Ampco System Parking*, 2009 WL 2496729 at *2 (S.D. Cal. 2009); *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP 99-690-C-D/F, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000). Rather, a party seeking documents from a separate litigation must tailor the requests to seek relevant information, just as is required for any other discovery request. *See Emerson v. Iron Mountain Info. Mgmt. Servs., Inc.*, No. 20CV08607YGRAGT, 2021 WL 8085489, at *2 (N.D. Cal. Sept. 8, 2021) (concluding that while a category of documents requested "does include potentially relevant documents, [] it is [still] overbroad" and narrowing production); *Baxalta Inc. v. Genentech, Inc.*, No. 16-MC-80087-EDL, 2016 WL 11529803, at *8 (N.D. Cal. Aug. 9, 2016) (stating in burden and proportionality analysis that even if a request is "directed to relevant information," it cannot be "buried in overbroad" requests). Simply put, any request for documents from a separate case must be reasonably tailored to seeking relevant documents, considering the similarities and differences between the cases and the scope of the requests.

While the Court permitted re-production of documents from a prior case litigated by Plaintiffs' counsel Sara Peters, the Court's decision on that subpoena was based on the fact that Ms. Peters' prior case was "a prior sexual assault case involving Uber" subject to production pursuant to PTO 5. (*See* PTO 5, ECF 175 at 4, requiring re-productions of Uber's document productions in "other Uber sexual assault cases"). ECF 695 at 13-15. But the Court has expressed

agreement with the well-established legal principle that such requests must be reasonably tailored to relevant discovery. *See* 10/01/2024 Hr'g Tr. at 34-36 (the Court stating with respect to Plaintiffs' subpoena to attorney Bret Stanley that a "wholesale [re-production of] Uber's production" in other cases may not be appropriate, that Plaintiffs may need to identify relevant pieces of Uber's prior productions to request, and that even when two cases are similar the Court will "parse through what the claims are in the respective cases and . . . what the discovery is that's requested to make sure that it's not as simple as copy and dump.").

### *Plaintiffs' Requests Are Still Impermissibly Overbroad*

Plaintiffs' narrowed requests in their brief is a belated first step to appropriately narrow the scope of the requests to Ms. Yackulic. Plaintiffs no longer seek every single document from the *Drammeh* case, but now seek "documents related to dashcams," "documents related to the Taxonomy," "all deposition transcripts and associated exhibits of Uber's witnesses and any other witness who acted with or on Uber's behalf," "documents related to the safety report," and "all correspondence with the court." ECF 1892 at 2. However, some of these categories remain overbroad and not reasonably tailored to relevant discovery in this case.

These requests should be viewed in light of the nature of the *Drammeh* case, which had nothing to do with sexual misconduct or assault by a driver. Rather, it involved a driver killed in an attempted carjacking. The *Drammeh* plaintiffs' theory was that Uber owed a special duty to the driver and was negligent by not properly validating the *riders'* identities when creating an account. Given these differences, most of the documents in the case are likely to have no relevance to this litigation. Even topics that overlap at a surface level, such as "safety" issues, were focused on the safety of drivers from incidents like robberies and carjackings. Given the fundamental differences in the factual and legal basis of *Drammeh* and this litigation, Plaintiffs must provide a clear basis for their requests.

**Documents Related to Dashcams:** Certain documents were produced by Uber in the *Drammeh* case related to dashcams. Uber does not object to Ms. Yackulic producing documents directly related to dashcams, so long as they are produced with a "highly confidential" designation pursuant to the protective order in this MDL.

Uber objects to the production of a document referenced in Plaintiffs' brief labeled "Law Enforcement Response Team Community Response (December 14, 2020)." Plaintiffs assert that this document is "directly related to Uber's analysis of dash cameras"—but provide no evidentiary support for that assertion. ECF 1892 at 3. The *Drammeh* docket entry to which Plaintiffs cite contains an index of documents listing only the title and date. Yet, nothing in the title suggests this document relates to dashcams.

**Documents Related to the Taxonomy:** Uber's Global Safety Taxonomy is used to categorize safety incidents in three very broad categories: (1) motor vehicle crash fatalities; (2) physical assault fatalities, and (3) sexual assault. Within the category of sexual assault, Uber utilizes the Sexual Misconduct and Violence Taxonomy, which was developed by third party organizations in 2018 for use by Uber and other entities. The prior ruling by this Court that Plaintiffs cite (related to the Chertoff Group subpoena) addressed the Sexual Misconduct and Violence Taxonomy, not the much broader Global Safety Taxonomy. Given the breadth of the topic of "safety," documents that do not pertain to the Sexual Misconduct and Violence Taxonomy—and instead relate to motor vehicle accidents or physical assaults—have, at best, an attenuated connection to this litigation.

Plaintiffs refer to a sealed *Drammeh* case exhibit related to the broader Global Safety Taxonomy, but that document specifically related to the category of physical assault fatalities. Moreover, documents on the *Drammeh* docket indicate that Exhibit 53 to the plaintiffs' opposition to summary judgment is related in some way to the Global Safety Taxonomy, and that plaintiffs criticized Uber's Global Safety Taxonomy for not listing "carjacking" as a separate incident type.

Plaintiffs also quote a description of a document related to "Uber's internal taxonomy for classifying reported safety incidents," but incorrectly claim that this shows there are documents related to the Sexual Misconduct and Violence Taxonomy in *Drammeh*. Again, the *Drammeh* case was about carjacking. It has nothing to do with the Sexual Misconduct and Violence Taxonomy and only involved the Global Safety Taxonomy as it relates to carjacking. In any event, the document description Plaintiffs cite is likely the Exhibit 53 referenced above, though that much is not clear since the document from which Plaintiffs quote is under seal.

Uber does not object to Ms. Yackulic producing Exhibit 53 to the plaintiffs' opposition to summary judgment, so long as it is produced with a "highly confidential" designation pursuant to the protective order in this MDL. Other *Drammeh* Global Safety documents are outside of the sexual assault category of the taxonomy or otherwise have no relevance allegations in this litigation.

**All Deposition Transcripts and Exhibits for Uber Witnesses:** Despite some narrowing of their other requests, this category is still substantially overbroad, running afoul of the Court's admonition that a simple "copy and dump" is not appropriate. *See* 10/01/2024 Hr'g Tr. at 34-36

Uber does not object to Ms. Yackulic producing the transcript and exhibits for the depositions of Katherine McDonald, Matt Baker, and Cory Freivogel, so long as they are produced with a "highly confidential" designation pursuant to the protective order in this MDL. But Plaintiffs have provided no evidence that any other depositions might be relevant here. The *Drammeh* docket (as cited by Plaintiffs in their brief) contains descriptions of or excerpts from several depositions besides those of McDonald, Baker, and Freivogel. Unsurprisingly (given the differences between *Drammeh* and this litigation), it provides no indication that any other deposition contains any potentially relevant information, such as discussing dashcams, the Global Safety Taxonomy, or the U.S. Safety Report. The Court should limit production to the deposition transcripts and exhibits to those of McDonald, Baker, and Freivogel, and should further require Plaintiffs to comply with any orders in *Drammeh* sealing any documents or filings.

**Safety Report:** Like the Global Safety Taxonomy, which includes three broad "safety" topics–only one of which is sexual assault–the Safety Report contains broad categories not related to sexual misconduct or assault. The Court has previously recognized the important distinction between the relevant portion of Uber's U.S. Safety Reports and the portions dealing with the "two other categories of critical safety incidents analyzed in the Safety Reports: motor vehicle fatalities and fatal physical assault." ECF 684 at 9. The Court concluded that Plaintiffs' request for the safety data underlying the Safety Reports on these separate topics to be "patently overbroad" and "not related to the key issues in this case." *Id.* As a result, the Court ruled that "Uber … is not obligated to produce documents and data regarding reports that are not safety-related, or those that concern fatalities and do not involve sexual assault or sexual misconduct." *Id.* That same principle should guide the Court's limitations on the documents produced here.

Moreover, Plaintiffs have provided no support for the conclusion that documents related to the sexual assault portion of the Safety Reports were ever produced in *Drammeh*. And (outside of potentially the McDonald, Baker, and Freivogel deposition transcripts) Plaintiffs have provided no support for the conclusion that there are any documents related to the Safety Reports at even a very high level. They cite to documents on the *Drammeh* docket, but these documents do not indicate the production or use of any other documents related to Uber's U.S. Safety Report.

Despite this lack of evidentiary support by Plaintiffs, Uber does not object to Ms. Yackulic producing documents directly related to the sexual assault portion of Uber's U.S. Safety Reports, if related to sexual misconduct or assault by drivers against riders in the U.S., and so long as they are produced with a "highly confidential" designation pursuant to the protective order in this MDL.

**All Correspondence with the Court:** Plaintiffs provide no argument for why correspondence with the court in the *Drammeh* case is relevant to this litigation. It is not even clear whether this refers to correspondence from Uber to the court, such as sealed filings, or Ms. Yackulic's own correspondence. The Court should not allow production pursuant to this vague category because Plaintiffs have waived any argument as to its relevance. In the event the Court were to allow production of this category, it should further require Plaintiffs to comply with any orders in *Drammeh* sealing any documents or filings.

\* \* \* \* \*

Uber has a substantial interest in preventing the disclosure of its highly confidential documents that are irrelevant to this litigation and subject to protective order. Permitting plaintiffs' attorneys to bypass protective orders and pass around confidential documents by issuing collusive subpoenas to each other—without requiring the requests to be tailored to seeking only relevant documents—would violate the rights of litigants and undermine the effectiveness of protective orders. Placing firm guardrails on this practice is imperative.

Uber has proposed a reasonable compromise that is tailored in scope while allowing the production of potentially relevant documents. The Court should permit Ms. Yackulic to produce the following documents, stamped as highly confidential pursuant to the protective order in this litigation, and no others:

- Documents directly related to dashcams;

- Exhibit 53 to the *Drammeh* plaintiffs' opposition to summary judgment;

- Deposition transcripts and deposition exhibits for Katherine McDonald, Matt Baker, and Cory Freivogel; and

- Documents directly related to the sexual assault portion of Uber's U.S. Safety Reports that are related to sexual misconduct or assault by drivers against riders in the U.S.

The Court should further require Plaintiffs to comply with any orders in *Drammeh* sealing any documents or filings

Dated: November 26, 2024

Respectfully Submitted,

*/s/ Michael B. Shortnacy*

MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (Admitted *Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON L.L.P.**
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

VERONICA G. GROMADA (Admitted *Pro Hac Vice*)
vgromada@shb.com
**SHOOK, HARDY & BACON L.L.P.**
600 Travis St., Suite 3400
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
vgromada@shb.com

KYLE N. SMITH (*Pro Hac Vice* admitted)
ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

5
DEFENDANTS' LETTER BRIEF RE: PLAINTIFFS' SUBPOENA TO CORRIE YACKULIC