UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates To:

ALL CASES.

Case No. 23-md-03084-CRB (LJC)

**ORDER REGARDING FIRST SET OF CHALLENGES TO UBER'S PRIVILEGE CLAIMS**

Re: Dkt. Nos. 1812, 1858-2

## I. INTRODUCTION

In accordance with the process previously set by the Court, the parties have filed a joint letter addressing a sample of disputed privilege log entries. Dkt. No. 1858-2.[1] Plaintiffs have also proposed four "bright-line rules" regarding privilege assertions, and Uber has requested that the Court require the parties to comply with the document exchange deadlines set forth in Pretrial Order No. 8 for future privilege disputes. The Court resolves the parties' disputes as follows.

## II. LEGAL STANDARD

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. California law therefore applies to issues of privilege in this multi-district litigation, at least absent any showing that the law of some other state should apply. *See Holley v. Gilead Scis., Inc.*, No. 18-cv-06972 JST (JSC), 2021 WL 2371890, at *2 (N.D. Cal. June 10, 2021) (applying California choice-of-law rules to conclude that California privilege law applied in a case with "factual connections to multiple states," where no

[1] Dkt. No. 1858-2 is a minimally redacted version of the joint letter, filed after the Court ordered Uber to show cause why its request to seal more significant portions of the letter should not be denied. The original redacted version of the joint letter is filed as Dkt. No. 1812. An unredacted version of the joint letter is filed under seal as Dkt. No. 1811-3.

party introduced evidence of a conflict of laws or another state's governmental interest in applying its own law).

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code §§ 911, 954, 952. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege," then the privilege is presumed to apply, and "the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). Where the "dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Id.* "[T]he relevant inquiry is not the content of the communication but is instead the relationship of the communicators." *Id.* at 52. If "the communications were made during the course of an attorney-client relationship"—as opposed to a relationship with some other "dominant purpose"—then "the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means." *Costco*, 47 Cal. 4th at 740.

California courts have recognized that "that in order to implement the advice of lawyers, the advice must be communicated to others within the corporation," and "[i]t is neither practical nor efficient to require that every corporate employee charged with implementing legal advice given by counsel for the corporation must directly meet with counsel or see verbatim excerpts of the legal advice given" as a condition of maintaining privilege. *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1498 (2007). A communication between non-lawyer employees that conveys privileged attorney advice remains privileged so long as sharing that information with the recipient "further[s] the interest of the client in the consultation or . . . is reasonably necessary for

United States District Court
Northern District of California

the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." *Id.* at 1503 (quoting Cal. Evid. Code § 952).

> There are additional relevant limitations on the attorney-client privilege. It is established that otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is "copied in" on correspondence or memoranda. In addition, [a party] may not shield facts, as opposed to communications, from discovery. Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney. In addition, [i]t is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent.

*Zurich Am. Ins.*, 155 Cal. App. 4th at 1504 (cleaned up); *see also, e.g.*, *Chi. Title Ins. Co. v. Superior Ct.*, 174 Cal. App. 3d 1142, 1151 (1985)

Applying federal law, courts have held that "[n]o privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450-WHO (DMR), 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023) (quoting *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990), and citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (alteration in original). Under that standard, communications involving in-house counsel "warrant[] heightened scrutiny because in-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters." *Id.* (N.D. Cal. Mar. 29, 2023) (cleaned up). Although federal law does not govern the scope of privilege in this litigation, the Court funds that principle consistent with California law recognizing that privilege does not attach to communications where an attorney provides business advice rather than legal advice, or where an attorney is merely "copied in" on internal business communications. *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

## III. APPLICATION TO PARTICULAR DOCUMENTS

Uber has submitted ten documents for in camera review. The Court addresses those as follows.

**A. JCCP_MDL_PRIVLOG005897**

This document consists of an email chain in which attorney Nicole Benincasa provides legal advice—including discussing potential litigation risks—regarding a proposed communications strategy, and other Uber employees then respond to and disseminate that advice. Although Uber's privilege log perhaps could have been clearer as to the nature of the document, it is privileged, and Uber need not produce it.

**B. JCCP_MDL_PRIVLOG006370**

This is a draft message to two reporters authored by Uber's Chief Marketing Officer Jill Hazelbaker, and marked with the header "A/C privilege." Based on the parties' arguments and the Court's familiarity with this case, it appears that the document was stored in Google Docs, where certain other employees designated by Hazelbaker also had access to it. Plaintiffs assert (without citation to evidence) that no attorney is listed as a "Google Collaborator." Dkt. No. 1858-2 at 4. Uber's Associate General Counsel Scott Binnings states in a declaration that three in-house attorneys (Candace Kelly, Courtney Hoyt, Katherine Tassi) are listed as collaborators in the metadata. Dkt. No. 1811-8 (Binnings Decl.) ¶ 7. The privilege log included as collaborators three email addresses that appear to correspond to those names, but unhelpfully listed only "Uber Legal Department" in the "Privileged Name(s)" field. Dkt. No. 1811 6 at 2. Other Uber employees, whom Uber has not identified as lawyers, are also listed in the collaborators field.

Binnings states that the subject matter of the message posed legal risk and, "[i]n practice, drafts like this document which pose legal risk are marked as privileged and are expressly designed to receive legal advice and direction, and ultimately reflect and incorporate legal advice and work product provided by Uber's in-house counsel." Binnings Decl. ¶ 7. Notably, his declaration does not support the assertion in the privilege log that the document was "prepared at the direction of in-house counsel." Dkt. No. 1811-6 at 2; Dkt. No. 1858-4 at 2.

On its face, this is a draft of an email to a reporter, which would not typically be privileged. "[O]therwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda," and "the

attorney-client privilege is inapplicable where the attorney merely . . . gives business advice or otherwise acts as a business agent." *Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

If this draft had been created specifically for the purpose of seeking legal advice regarding potential risks of sending the email as written, it would likely be privileged. But in the absence of a declaration by Hazelbaker or contemporaneous documentation indicating such intent, and taking into account the fact that the document included non-lawyer collaborators, Uber has not met its burden to show that this document is a privileged attorney-client communication. Neither Binnings's declaration that documents of this type typically receive and incorporate legal advice, nor Hazelbaker's unexplained "A/C privilege" designation, is sufficient to show that this is anything more than an instance of "in-house . . . counsel . . . 'copied in' on" a business communication, *see Zurich Am. Ins.*, 155 Cal. App. 4th at 1504, or that the draft "would [not] have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice," *McCaugherty*, 132 F.R.D. at 238.

Having failed to establish that this document is privileged, Uber must produce it.

**C. JCCP_MDL_PRIVLOG007393**

This document is a draft update on safety issues, which begins with the heading "ATTORNEY CLIENT PRIVILEGED." Uber's privilege log indicates that it was authored by Chief Marketing Officer Jill Hazelbaker, Dkt. No. 1811-6 at 2, although the face of the document attributes it to a different Uber employee. The document includes digital margin comments, some of which were authored by attorneys Salle Yoo and Matt Burton, as well as "what appears to be another in-house counsel" whom Uber could not identify, "apparently because his or her account is no longer active." Binnings Decl. ¶ 6. Some of the comments plainly convey legal advice and discuss potential litigation risk. The privilege log lists also lists several other "Google Collaborators," and many of the margin comments are attributed to other Uber employees, not all of whom are attorneys.

As with the previous document discussed above, attorney Scott Binnings asserts that "[i]n practice, drafts like this document that are marked as privileged reflect and incorporate legal advice provided by Uber's in-house counsel and are used to obtain legal advice from counsel."

Binnings Decl. ¶ 6. Binnings does not indicate that he is personally familiar with the document or that it was created specifically for the purpose of seeking legal advice, and Uber has not offered a declaration by Hazelbaker addressing her intent in creating it. Also like the previous document, Uber's privilege log indicates that the document was "prepared at the direction of in-house counsel," Dkt. No. 1811-6 at 2, but neither Binnings's declaration nor any other evidence offered by Uber supports that assertion. On its face, the draft itself (as opposed to the margin comments) does not seek or convey legal advice.

Much like the previous document discussed above, Uber has not shown that this document is itself privileged. It appears to be a draft business-related communication that was subject to collaborative editing by both lawyers and non-lawyers, for both legal and non-legal reasons. A particular transmission of the draft directly to an attorney retained to provide legal advice would likely be privileged, but Uber's privilege log and the margin comments on the document indicate that the same document was shared contemporaneously with both lawyers and non-lawyers, who edited it for content, style, accuracy, and public relations concerns in addition to assessing legal risk. In determining the "dominant purpose *of the relationship*" in which that "communication" took place, *see Costco*, 47 Cal. 4th at 739–40, the Court therefore looks to the relationship among *all* of those collaborators, which was primarily a business relationship focused on public relations. To hold otherwise—and allow the attorney-client relationship of some participants to control despite the business relationship among others—would contravene the principle that merely copying an attorney in on business communications is not sufficient to claim privilege. *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504. Uber therefore must produce the draft, but may redact comments that seek or convey legal advice, which are themselves communications shared in the context of an attorney-client relationship. *See* Binnings Decl. ¶ 6 ("The primary purpose of the [attorney] comments was to provide legal advice and guidance.")

**D. JCCP_MDL_PRIVLOG007396**

Uber's privilege log asserts that this document is an "e-mail seeking legal advice from in-house counsel regarding driver background check policies and practices." Dkt. No. 1811-6 at 2. On its face, however, this email from Uber's Head of Safety and Insurance is directed to a

combination of lawyer and non-lawyer employees, and includes updates on background check processes and other compliance issues, primarily from a logistical and technological vantage point.

Binnings states in his declaration that this email is a draft (which is not reflected on the privilege log), and that Binnings was "part of the team that drafted and revised this communication." Binnings Decl. ¶ 3. Binnings also states that he and other lawyers were "part of the working group that met to develop the technical and operational recommendations referenced in the communication," and that he "reviewed and provided legal advice on the communication and related project recommendation list." *Id.*

For this and other documents, Uber appears to rely at least in part on a premise that any internal documents that "reflect" legal advice can be claimed as privileged. It is true that courts—including this Court—have used that term in the context of privileged internal communications. *See, e.g.*, *Zurich Am. Ins.*, 155 Cal. App. 4th at 1502. In context, however, the sort of "reflective" communications that courts have treated as privileged are those that effectively *convey* advice to other employees, or otherwise tend to *reveal* the substance of that advice. *See id.* ("If legal advice is *discussed or contained in* the communication between Zurich employees, then to that extent, it is presumptively privileged. A communication *reflecting* a discussion of litigation strategy which *expresses that the strategy is in response to advice of counsel* would come within the privilege." (emphasis added)). But the mere fact that an internal communication *benefited* from legal advice does not render it privileged.

For example, if a human resources director has received training from in-house counsel regarding subject matter that should or should not be addressed when drafting notices of termination of employment, any such notices that the director later writes could be said to "reflect" that advice, but the notices would not themselves be privileged. On the other hand, if the director wrote to a subordinate who also prepared termination notices that, for example, "in-house counsel has asked that grounds for termination be discussed only in general terms because any error in the details could increase the risk of litigation," that communication would likely be privileged.

Here, as with other drafts discussed above, this document appears to be a product of collaboration between lawyers and non-lawyers. Contrary to the privilege log entry, it does not on

its face seek legal advice. Nor does it appear to convey legal advice in any discernable sense. Although the language that appears in this draft may have been chosen to take into account legal advice from Binnings and other attorneys, a reader of the document would not be able to tell what that advice was. Binnings's declaration also does not establish that this particular draft of the email was written specifically for the purpose of soliciting legal advice on the proposed language, as opposed to being prepared as part the usual process of drafting an update addressing business issues. As with the draft addressed above, both the collaborative process of drafting this document and its intended dissemination[2] to a group of lawyers and non-lawyers appear to implicate relationships among many different employees. The dominant purpose of those broader relationships appears to have been managing the software systems and processes for driver background checks and other issues related to Uber's operations, not the provision of legal advice.

Uber has not shown that this document is privileged. The document must therefore be produced.

If—contrary to what the Court could discern from the face of the document—Uber believes that specific portions of this document convey legal advice, in a manner consistent with the discussion above of when privilege attaches to communications "reflecting" legal advice, Uber may redact those portions and provide a privilege log explaining its basis for doing so.

**E. JCCP_MDL_PRIVLOG008375**

This document is a Google Sheets notification indicating a reply to a comment in a collaboratively edited document. The notification email includes the comments at issue, in which an Uber employee requests advice from in-house counsel Daniel Kolta, and Kolta provides legal advice in response. *See* Dkt. No. 1811-9 (Kolta Decl.) ¶ 4. The document is privileged, and need not be produced.

Plaintiffs argue that it is not privileged because it is a "notification for Nick Silver (Uber's Head of Marketing) that Lizzie Ross (Uber's Safety Product Marketing manager at the time) left a

---

[2] An unsent draft that would be privileged in its anticipated final or delivered form can fall within the scope of the privilege. *People v. Gardner*, 106 Cal. App. 3d 882, 887 (1980) (holding that privilege applied to an unsent letter addressed to a public defender, when the author believed at the time that the public defender would represent him).

comment on a document," and it therefore "appears to be a comment made by a non-attorney that does not provide legal advice." Dkt. No. 1858-2 at 5–6. Plaintiffs' position is somewhat understandable, because Uber's privilege log lists the document as an email from "Lizzie Ross (Google Sheets)" to Nick Silver, and describes it as a "[c]onfidential e-mail providing legal advice from in-house counsel regarding in-app features to advance rider safety." Dkt. No. 1811-6 at 2. Although Kolta's name is included in the "Privileged Name(s)" column, it is difficult to tell from the privilege log what role, if any, Kolta had in this email, for which he was neither the sender nor a recipient.

Uber is ORDERED to review its privilege log entries for notifications from Google Sheets and Google Docs (as well as any other substantially similar notifications) about comments on documents and to provide updated privilege log entries that state the authors of any comments included in those emails, whether those comments seek or convey legal advice, and any other information Uber believes is necessary to support its assertion of privilege.

**F. JCCP_MDL_PRIVLOG009844**

This document, much like the document discussed immediately above, is a Google Docs notification email that includes several comments provided by Uber employees on a collaboratively edited document. The comments include a request for review by attorney Scott Binnings, and a response by Binnings discussing issues raised in the document. Although Binnings's response here does not necessarily provide legal advice, it is clear from context that other employees sought Binnings's review in his capacity as an attorney.

"[T]he relevant inquiry is not the content of the communication but is instead the relationship of the communicators," and the "dominant purpose of the relationship between the parties to [this] communication was one of attorney-client." *Clark*, 196 Cal. App. 4th at 51–52. The document is therefore privileged, and Uber need not produce it. As discussed above, however, the privilege log for this document provides little context for the substantive communications contained within it (the comments on the shared Google Doc), and reinforces the Court's conclusion that Uber must provide more detailed entries this sort of similar notification email.

**G. JCCP_MDL_PRIVLOG013948**

This document is an email conveying legal advice and analysis by in-house counsel Lisa Tse and in-house counsel Gail Levine. Levine is the author of the email, which forwards a longer email from Tse. Plaintiffs speculate that the document appears to be primarily business-related because attorneys are only listed in the "cc" field (apparently neglecting Levine's status as its author), and that Uber's description of it as an "incident report" suggests that it "contains underlying facts and not legal advice." Dkt. No. 1858-2 at 5. It is apparent from the face of the document, however, that it contains and conveys privileged legal advice. Uber need not produce this document.

Uber's privilege log failed to include Levine—the author of the email—in the "Privileged Name(s)" column, which perhaps contributed to Plaintiffs' skepticism that the document is privileged, although the Court would expect that could be clarified easily during the meet-and-confer process. Uber's description of the document as an "incident report provided for purposes of seeking legal advice from in-house counsel" is also confusing, and may be inaccurate. Going forward, Uber should ensure that its privilege log descriptions are accurate and that attorneys are clearly identified.

**H. JCCP_MDL_PRIVLOG014830**

This document is an internal slide deck regarding safety transparency reports. According to the privilege log, it was authored by then-Vice President of Safety and Insurance Gus Felder. It is labeled on its first page as "PRIVILEGED AND CONFIDENTIAL ATTORNEY WORK PRODUCT FOR DISCUSSION." Uber in-house attorney Scott Binnings asserts that it addresses "options for developing a safety transparency report, for which the safety team was seeking legal advice," that "at least five other Uber in-house counsel were included on the presentation to provide legal advice," and that presentation contains "legal advice from Uber's in-house counsel about legal and regulatory risk." Binnings Decl. ¶ 4. The document on its face discusses legal assessments like litigation risk (apparently conveying legal advice from counsel), and the list of collaborators on the privilege log indicates that it was provided to an audience largely consisting of in-house counsel, corroborating Binnings's declaration that the presentation was intended to

United States District Court
Northern District of California

seek further legal advice. The Court is satisfied that this document is privileged.

**I. JCCP_MDL_PRIVLOG019255**

This document is an email from Uber's Vice President of Safety and Insurance Gus Fuldner to two employees of Crawford Co., a third-party claims administrator, regarding an upcoming USA Today article regarding Crawford's work with Uber. Uber's in-house counsel Kathleen Waitzman and another Crawford employee are included in the "cc" line of the email, although Uber's privilege log does not identify Waitzman in the "Privileged Name(s)" column, *see* Dkt. No. 1811-6.

Uber argues that "[c]ourts regularly hold that communications with third-party claims administrators are privileged," and that this communication carried legal risk and was informed by advice Fuldner received from counsel. Dkt. No. 1858-2 at 9 (citing *Montes v. State Farm Mut. Auto. Ins. Co.*, No. CV 22-2551-FLA(EX), 2023 WL 639706, at *2 (C.D. Cal. Aug. 2, 2023)). Senior Legal Director Maureen Frangopoulos asserts that "Fuldner was aware that the subject matter of this email carried legal risk based on the advice of Uber in-house counsel and his email to Crawford Co. was informed by and based on that advice," and that "Crawford Co. was acting on behalf of Uber at the direction of its in-house counsel." Dkt. No. 1811-10, ¶ 7.

Disclosure of a privileged communication to a third person can waive attorney-client privilege, but when such disclosure is confidential and "reasonably necessary for . . . the accomplishment of the purpose for which the lawyer is consulted," it does not waive the privilege. *See* Cal Evid. Code § 952; *see also Zurich Am. Ins.*, 155 Cal. App. 4th at 1503–04 (applying California Evidence Code section 952 where the client is a corporation).

Even if Waitzman or another of Uber's in-house counsel directed Crawford to handle claims on Uber's behalf, this email is about how Crawford will respond to a media inquiry, and how a potential response from Crawford may affect the framing of an article. Uber does not assert that Fuldner (the sender of the email) is himself a lawyer, or that his communication to Crawford conveyed legal advice from an attorney. The communication advanced Uber's reputational concerns, but is not reasonably necessary to facilitate legal advice or to advance a litigation strategy.

That remains true even if Crawford was the "functional equivalent of an Uber employee." *Cf. Montes*, 2023 WL 6369706, at *2. If the Crawford employees here were replaced with Uber public relations employees, this communication between non-lawyer Uber employees regarding a response to a media inquiry still would not be privileged. *See* Dkt. No. 1727 at 5–6 & n.2 (previous Order denying a clawback motion regarding a document primarily focused on public relations) (citing *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628 (N.D. Cal. 2019); *Behunin v. Superior Ct.*, 9 Cal. App. 5th 833 (2017)). This case is therefore not analogous to *Montes*, where the Court was satisfied that the communications at issue where privileged, and primarily addressed whether disclosure of those privileged communications to a third-party claims administrator waived that privilege. *See Montes*, 2023 WL 6369706, at *2–3 ("*Defendant's counsel* should be permitted to confer confidentially with a 'third-party' workers' compensation administrator in the same manner as *Defendant's counsel* could confer confidentially with an 'in-house' workers' compensation claims administrator." (emphasis added)).

Finally, the fact that Waitzman was "copied in" on this communication does not render it privileged. *Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

Uber has not shown that this document is privileged, and therefore must produce it.

**J. JCCP_MDL_PRIVLOG019282**

This document is an email sent by Gus Felder in response to a Google Docs notification email that included several comments from a shared document. On its face, it is a discussion of public relations concerns with respect to a draft email to the Washington Post. Uber's privilege log does not identify any attorney in the "Privilege Name(s)" column. Although Uber now explains that one of the commenters, Maureen Frangopoulos, was an attorney who served at the time as Director for Safety & Insurance Litigation, the comments by her and other participants are oriented solely to public relations concerns. Frangopoulos's assertions that other participants were "seeking input from a legal perspective" and that her "comment was provided in light of [her] assessment of the legal implications," Dkt. No. 1811-10, ¶ 3, is not consistent with the actual comments included in this document. As with other collaboratively edited documents discussed above, the dominant purpose of the overarching relationship among the participants here appears

to have concerned business purposes rather than legal advice. Because this document includes only "communication[s] that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice," *McCaugherty*, 132 F.R.D. at 238, it is not privileged, and must be produced.

* * *

Uber shall produce documents as directed above no later than seven days after the date of this Order.

## IV. PLAINTIFFS' PROPOSED RULES

Based on the parties' discussions thus far regarding privilege disputes, Plaintiffs asks the Court to order Uber to comply with four "rules." Dkt. No. 1858-2 at 3.

Plaintiffs first propose that "**[a]fter resolution of each privilege dispute (whether by concession or by Court order), Uber must apply the lessons learned to all logs already produced, as well as any future logs.**" *Id.* In Pretrial Order No. 20, the Court has set a schedule for Uber to apply any rulings by the Court and/or concessions by Uber with respect to future samples of privilege disputes. Dkt. No. 1808 at 7–10. The Court sets a substantially similar schedule here, with additional time for the first deadline due to the intervening holiday: Uber must apply lessons learned from the meet-and-confer process and this Order to other privilege log entries from the first tranche of custodial document production no later than fourteen days from the date of this Order, must apply those lessons to any other existing privilege log entries no later than twenty-one days from the date of this Order, and must continue to apply those lessons going forward.

Second, Plaintiffs assert that "**[a]bsent individualized analysis and conclusion of privilege, documents should be produced**," noting that Uber's counsel has previously acknowledged taking a "conservative" and broad approach to privilege designations. Dkt. No. 1858-2 at 3. Plaintiffs are correct that Uber cannot withhold documents based on the mere possibility or suspicion that they are privileged, and that Pretrial Order No. 14's clawback process is available if Uber later determines that a document it produced is privileged. The Court expects that Uber will only withhold documents that it has actually determined are privileged. That said,

United States District Court
Northern District of California

Plaintiffs do not seek any particular relief with respect to this rule, and the Court declines to order any further action by Uber.

Third, Plaintiffs ask that "**[i]f an e-mail chain or thread includes a third party, it cannot be designated as privileged unless that document (or category of documents) absent [sic] a detailed explanation of the basis for the privilege assertion, including the role of the third party.**" Dkt. No. 1858-2 at 3. Uber responds, correctly, that disclosures to third parties do not necessarily waive privilege. *Id.* at 6–7. The Court agrees with Plaintiffs that some explanation of the role of third parties is appropriate if Uber believes disclosure to such a party does not waive privilege, and that Uber's privilege log entry for the only such document in the current sample—the email to Crawford Co. employees, where Uber's log entry does not acknowledge the presence of a third party or discuss its role—is inadequate.

Rather than including a detailed description in each log entry, Uber is ORDERED to prepare a digest of each third party Uber believes falls within the scope of its privilege with an explanation of each such party's role and Uber's position as to how that role furthers an attorney-client relationship or otherwise falls within the scope of attorney-client privilege.[3] Uber shall provide such a digest for already-served privilege logs no later than fourteen days from the date of this Order, and shall update the digest in conjunction with serving future privilege logs. Individual privilege log entries for communications that include third parties must be sufficient to understand Uber's claim of privilege when viewed in conjunction with the digest. If Uber would prefer to address the roles of some third parties (e.g., parties that appear in only a small number of documents) within individual log entries rather than in the digest, it may do so.

Fourth, Plaintiffs ask the Court to order Uber to "**individually review (and re-review) all privilege log entries where no attorney authors the document or is listed in the 'to' or 'from' fields.**" Dkt. No. 1858-2 at 3. Uber is correct that such documents may still be privileged, and the Court is not satisfied that the burden of substantively re-reviewing all such documents is

---

[3] This digest need not include outside counsel, so long as the privilege log otherwise makes clear when a non-Uber employee included on a purportedly privileged communication is an attorney or an employee of a law firm.

United States District Court
Northern District of California

warranted at this time. The Court nevertheless requires further review in certain instances, based on what appear to be potentially systemic errors in certain privilege log entries in the current sample:

(A) Multiple log entries indicated that documents were "prepared at the direction of in-house counsel," but Uber did not provide evidence to support those assertions. Uber therefore must review all entries that assert a document was prepared at the direction of counsel to determine whether they are accurate.

(B) Multiple log entries failed to list all attorneys involved in a document in the "Privileged Name(s)" column despite the apparent involvement of one or more attorneys, or failed to designate all attorneys listed in other fields with an asterisk. Uber shall review all log entries that do not include any attorneys in the "Privileged Name(s)" column to determine whether the lack of names in that column is accurate and whether any attorneys listed in other columns for those entries are properly designated.

Uber shall comply with those directives by the deadline set forth above to apply "lessons learned."

Plaintiffs also "propose a 1-2 day in person, *in camera* review process during which the Court can review samples and issue rulings from the first tranche of custodians." Dkt. No. 1858-2 at 3. That request is denied. The Court will consider options for further samples of disputed documents from the first tranche of custodians at a future discovery status conference, after Uber has had the opportunity to implement the rulings in this Order.

## V. APPLICATION OF PRETRIAL ORDER NO. 8

Uber seeks clarification that the deadlines set forth in Pretrial Order No. 8 apply to the exchange of joint letter related to privilege disputes, asserting that Plaintiffs have taken the position that they do not apply. Dkt. No. 1858-2 at 8. Plaintiffs contend that Uber's assertion that Plaintiffs failed to comply "is erroneous," but also contend that "PTO 8 does not purport to set out exchange deadlines where the submission date to the Court is set in advance." *Id.* at 2 n.5. The Court now clarifies that the exchange deadlines set forth in Pretrial Order No. 8 apply to any joint

United States District Court
Northern District of California

letter submitted to the undersigned magistrate judge, regardless of whether a filing date has been set by the Court, unless: (1) the parties agree otherwise; (2) the Court orders otherwise, including where a more specific order sets forth a process that conflicts with those deadlines; or (3) the Court sets a filing deadline with less than seven days' notice.[4]

## VI. CONCLUSION

Uber shall produce the specific documents addressed above that the Court determined not to be privileged no later than seven days from the date of this Order. Uber shall prepare a digest of third parties whose involvement it contends does not waive privilege no later than fourteen days from the date of this Order. Uber shall apply other directives in this Order and other lessons learned to first tranche of custodial discovery no later than fourteen days from the date of this Order, to other already-produced privileged logs no later than twenty-one days from the date of this Order, and to future privilege logs on an ongoing basis.

**IT IS SO ORDERED.**

Dated: November 27, 2024

LISA J. CISNEROS
United States Magistrate Judge

[4] The parties also dispute whether delays exchanging drafts were attributable to delay by Uber in providing information to Plaintiffs. The Court declines to resolve that dispute.