UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.  23-md-03084-CRB   (LJC) |
| This Document Relates To:<br><br>ALL CASES. | **ORDER REGARDING SUBPOENA TO CORRIE YACKULIC**<br><br>Re: Dkt. Nos. 1892, 1905 |

Pending before the Court is the parties' dispute concerning Plaintiffs' third-party subpoena to Corrie Yackulic.[1]  Dkt. Nos. 1892, 1905.  Plaintiffs seek to compel Yackulic to respond, over Uber's objections, to their subpoena for litigation records.  Yackulic is counsel of record in another case filed against Uber: *Drammeh v. Uber Technologies, Inc.*, No. 2:21-cv-00202 BJR (W.D. Wash.).  The case was filed on behalf of surviving family members, representing the estate of Cherno Ceesay, an Uber driver who was murdered by two passengers in a failed carjacking attempt.  *Drammeh v. Uber Techs., Inc.*, No. 22-36038, 2024 WL 4003548, at *1 (9th Cir. Aug. 30, 2024).  According to Plaintiffs, Yackulic plans to enter a notice of appearance on behalf of a plaintiff in this MDL, and she does not object to Plaintiffs' requests.  Dkt. No. 1892 at 1.  This Order assumes the parties' familiarity with the record and the applicable legal standard.  *See, e.g.*, Dkt. No. 695 (Order re Third-Party Subpoena Disputes) at 2–4.

Having reviewed the parties' letters, the record of the case, as well as the record in the *Drammeh* case, and the relevant legal authorities, the Court grants in part and denies in part Plaintiffs' request for discovery relief.

---

[1] Plaintiffs' brief and subpoena spell Yackulic's surname "Yakulic."  This Order uses the spelling apparent from the Ninth Circuit and district court records in *Drammeh*, which is consistent with the spelling in Uber's letter brief here.

United States District Court
Northern District of California

Relative to the broad requests that Plaintiffs included in their original subpoena, Dkt. No. 1905-1 at 11, Plaintiffs have substantially narrowed their requests in their discovery letter. On the face of their discovery letter, Plaintiffs are not seeking impermissible cloned discovery, that is, sweeping reproductions of all documents from separate litigation unrelated to the claims in this MDL. That said, the Court further examines the categories of records that Plaintiffs seek to determine whether they meet the threshold relevance requirement. *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG (KAW), 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017) (noting that courts will allow discovery when previous litigation or investigations and the present case "have significant factual and legal overlap" and involve the same legal claims).

Plaintiffs seek the following:

1. Documents related to dashcams;

2. Documents related to the Taxonomy;

3. All deposition transcripts and associated exhibits of Uber's witnesses and any other witness who acted with or on Uber's behalf;

4. Documents related to the safety report; and

5. All correspondence with the court.

Dkt. No. 1892 at 2.

Uber's primary objection is that the *Drammeh* case, from which Plaintiffs seek certain records, involves concerns about driver, rather than passenger safety.[2] In Uber's view, the case focused on the procedures for verifying rider accounts and whether Uber has a special relationship with its drivers. Although the roles of the alleged perpetrators and victims as passengers and drivers are reversed here as compared to in *Drammeh*, the Court is not persuaded that the evidence pertaining to risks to drivers is as distinct as Uber suggests from the issue of risk to passengers. Factual and legal issues regarding driver safety were of particular concern in the case, but—at least in the Ninth Circuit's view—the litigation also involved evidence of Uber's "exclusive control over all aspects" of the "digital interface" among drivers, passengers, and the company,

---

[2] Plaintiffs do not dispute Uber's standing to object to a subpoena seeking documents that it previously produced pursuant to a protective order in another case.

including that "Uber alone controlled" methods for verifying both drivers and passengers and what information it made available to passengers as well as to drivers. *Drammeh*, 2024 WL 4003548, at *2. Certain evidence collected in *Drammeh*, therefore, also bears on the passengers' claims in this MDL. The Court turns to the particular categories Plaintiffs seek.

### A.    Documents Related to Dashcams

Uber does not object to Yackulic producing documents "directly" related to dashcams, so long as they are produced with a "highly confidential" designation. Dkt. No. 1905 at 3. But it objects to producing the "Law Enforcement Response Team Community Response (December 14, 2020)" document that Plaintiffs included in a list of examples of dashcam-related documents, arguing that Plaintiffs have not shown any connection between that document and dashcams. *Id.*; *see* Dkt. No. 1892 at 3. Aside from only the most clear-cut examples—e.g., documents with "dashcam" in their titles—the present record does not include sufficient detail to adjudicate whether specific documents fall within this category of production. In light of Uber's non-objection to the category, Yackulic is ORDERED to produce documents related to dashcams to Plaintiffs in this action, notwithstanding the protective order entered in *Drammeh*.

Any disputes over whether individual documents fall within that category shall be resolved under the procedure set forth below. That said, because Uber has raised a specific objection to the "Law Enforcement Response Team" document, Yackulic is instructed to carefully review that document before producing it to determine whether it falls within the scope of production authorized by this Order.

### B.    Documents Related to Uber's Taxonomy

Plaintiffs seek documents related to Uber's "Taxonomy," which Uber uses to record and categorize safety incidents. Uber contends that its "Global Safety Taxonomy" is divided into "three broad categories" of: (1) vehicle crash fatalities; (2) physical assault fatalities; and (3) sexual assault. Dkt. No. 1905 at 3–4. Uber does not object to Yackulic producing one specific document related to the Taxonomy, but argues that any other documents related to the Taxonomy in *Drammeh* (a case about a killing) would involve physical assault fatalities rather than sexual assault, and are therefore not relevant here. *Id.*

United States District Court
Northern District of California

1    It is not obvious that the line between sexual assaults and fatal physical assaults is always

2 clear, or that concerns related to fatal physical assaults are wholly distinct from those related to

3 sexual assault.  The Court is satisfied that documents related to the fatal physical assault category

4 have sufficient potential relevance to warrant production under the circumstances of this

5 subpoena, which imposes minimal burden on Uber and involves only documents that have already

6 been disclosed to other litigation adversaries, and where the party on whom the subpoena was

7 served and who will bear the burden of production does not object to doing so.  *Cf.* Dkt. No. 684

8 at 9 (declining to order *Uber* to produce "documents and data related to all 800,000 user reports"

9 that related to categories other than sexual assault and sexual misconduct, including fatal physical

10 assault).  Vehicle crashes are, for the most part, a more distinct issue, but Uber has not argued that

11 documents in *Drammeh* pertain to the vehicle crash category, nor is any reason apparent why such

12 documents would likely appear in that case.  Yackulic is therefore ORDERED to produce

13 documents related to Uber's Taxonomy to Plaintiffs in this action, notwithstanding the protective

14 order entered in *Drammeh*.

15    **C.**      **Deposition Transcripts and Exhibits**

16    Plaintiffs seek all deposition transcripts and exhibits from the *Drammeh* case, but

17 specifically addresses only three witnesses who are also scheduled to be deposed in this case:

18 Katherine McDonald, Matthew Baker, and Cory Freivogel.  Dkt. No. 1892 at 2, 3.  Uber does not

19 object to Yackulic producing those deposition transcripts and accompanying exhibits, but argues

20 that Plaintiffs have not shown any other deposition to be relevant, and also asks the Court to

21 "require Plaintiffs to comply with any orders in *Drammeh* sealing any documents or filings."  Dkt.

22 No. 1905 at 4.

23    Uber has not sufficiently explained what sort of compliance with sealing orders it wishes

24 this Court to enforce.  If Uber is asking that Yackulic be barred from producing any document that

25 the *Drammeh* court previously allowed to be filed under seal, the Court declines to issue such an

26 order, because considerations relevant to public disclosure of filings are distinct from those

27

28

relevant to production to Plaintiffs' counsel under the protective order in place in this litigation.[3] If Uber meant something else by that request, the Court cannot discern its meaning, and it is denied on that basis.

The Court agrees with Uber that Plaintiffs have not demonstrated the particular relevance of deposition transcripts or exhibits beyond those of McDonald, Baker, and Freivogel. To the extent that other depositions and exhibits relate to Uber's control and management of its drivers through the app, an issue addressed in *Drammeh*, or fall within the categories of documents that the Court now orders produced, however, they are relevant for the reasons discussed earlier in this order.

Yackulic is therefore ORDERED to produce: (1) the complete transcripts and exhibits of the depositions of McDonald, Baker, and Freivogel; (2) any transcript from the deposition of an Uber witness that relates to dashcams, Uber's Taxonomy, Uber's Safety Report, or Uber's control and management of its drivers; and (3) any exhibit from a deposition of an Uber witness that relates to dashcams, Uber's Taxonomy, Uber's Safety Report, or Uber's control and management of its drivers, notwithstanding the protective order entered in *Drammeh*. To provide potentially relevant context and reduce burden on Yackulic, each transcript or exhibit that relates to those categories shall be produced in its entirety, without redactions for relevance. *See* Dkt. No. 1919 (Order Re Subpoena to Bret Stanley) at 3–4 & n.1.

Other than for the three witnesses who will also be deposed in this litigation, the Court declines to require any exception to the *Drammeh* protective order for transcripts and exhibits that do not relate to those specific categories.

### D.    Documents Related to Uber's Safety Report

Uber objects to the request for production of documents related to its Safety Report for reasons similar to its arguments regarding the Taxonomy: the Safety Report addresses other categories beyond sexual assault and misconduct, and Plaintiffs have not shown that any

---

[3] The Court also notes that the Ninth Circuit held that the district court abused its discretion in ordering certain documents to be filed under seal and remanded those decisions for further consideration. *Drammeh*, 2024 WL 4003548 at *3-4. The sealing orders limit the visibility into the records filed in the Drammeh case.

United States District Court
Northern District of California

documents were produced in *Drammeh* that related to the portions of the Safety Report most at issue in this litigation. Dkt. No. 1905 at 4–5. As with the Taxonomy, however, the Court finds even those portions of the Safety Report that do not relate specifically to sexual assault sufficiently potentially relevant to warrant production under the circumstances of this subpoena, which imposes minimal burden on Uber. Yackulic is therefore ORDERED to produce documents that relate to the Safety Report, notwithstanding the protective order entered in *Drammeh*.

### E.    Correspondence with the Court

Plaintiffs do not explain their request for production of "[a]ll correspondence with the court" from the *Drammeh* litigation. *See* Dkt. No. 1892 at 2. Filings in federal court are presumptively public and readily accessible. The protective order in *Drammeh* would not prevent Yackulic from sharing publicly filed documents if she wishes to do so, but Plaintiffs' counsel can also access those documents themselves. If Plaintiffs seek sealed filings, Plaintiffs have not shown why any such filings beyond the evidentiary materials addressed separately above are relevant to this litigation. *See* Dkt. No. 1919 at 2 ("The Court agrees with Uber that evidentiary materials are significantly more likely to be relevant here than arguments and other filings in the prior [matter]."). The Court therefore declines to order production of "correspondence with the court" in *Drammeh*, without prejudice to Plaintiffs making a specific showing of need for particular documents that are not publicly available.

### F.    Schedule for Production

Yackulic is ORDERED to produce to Plaintiffs and Uber no later than December 5, 2024 the documents that she believes fall within the scope of this Order. For an interim period between the date of production in this MDL and December 11, 2024, all documents produced pursuant to this Order shall be presumptively designated as "highly confidential" pursuant to the protective order. By December 11, 2024 Uber may confirm or change the presumptive "highly confidential" or other designation that applies to a given document, or identify any documents that it believes fall outside the scope of this Order and thus should not have been produced.

If Uber objects to the production of any documents produced by Yackulic, the parties shall meet and confer to determine whether they can reach agreement or compromise as to whether

1    those documents fall within the scope of production allowed by this Order.  If the parties cannot

2    resolve their disagreement, they shall file a joint letter consistent with Pretrial Order No. 8 no later

3    than December 18, 2024.  Any disagreement as to specific documents shall not delay any

4    deposition[4] or production of other documents whose status is not disputed.

5        **IT IS SO ORDERED.**

6    Dated: 12/2/2024

7

8    _____

9    LISA J. CISNEROS
     United States Magistrate Judge

United States District Court
Northern District of California

---

[4] An unresolved dispute regarding a document produced pursuant to this Order is not a reason for a witness to refuse to answer a question at a deposition.  If it is later determined that the document should not have been produced, Uber can seek relief from the Court, such as an order to disregard the exhibit or the related testimony.