# EXHIBIT G

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                  COUNTY OF SAN FRANCISCO

3    BEFORE THE HONORABLE ETHAN P. SCHULMAN, JUDGE PRESIDING

4                  DEPARTMENT NUMBER 304

5                      ---oOo---

6    COORDINATION PROCEEDING          ) No. CJC-21-005188
     SPECIAL TITLE (Rule 3.550)       )
7                                     )
     In Re Uber Rideshare Cases       )
8    _____ )

9

10

11

12          REPORTER'S TRANSCRIPT OF PROCEEDINGS

13   HEARING FOR MOTION FOR NEW HEARING DATE TO ENTER PROPOSED

14    COMMON BENEFIT ORDER, MOTION TO BE RELIEVED AS COUNSEL,

15      MOTION TO QUASH DEPOSITION SUBPOENA, and

16          CASE MANAGEMENT CONFERENCE

17              Tuesday, October 22, 2024

18

19

20

21

22

23   STENOGRAPHICALLY REPORTED BY:

24   Angela Pourtabib, CSR No. 13714, RPR

25   JOB NO. 10144932

1  APPEARANCES

2

3  FOR PLAINTIFFS:

4      LEVIN SIMES, LLP
       BY: WILLIAM A. LEVIN, Attorney at Law
5          LAUREL L. SIMES, Attorney at Law
           SAMIRA BOKAIE, Attorney at Law
6          DAVID M. GRIMES, Attorney at Law
       1700 Montgomery Street, Suite 250
7      San Francisco, California 94111
       (415) 429-0700
8      Wlevin@levinsimes.com
       Llsimes@levinsimes.com
9      Sbokaie@levinsimes.com
       Dgrimes@levinsimes.com
10
       WILLIAMS HART & BOUNDAS, LLP
11       BY: JOHN EDDIE WILLIAMS, Attorney at Law
           BRIAN ABRAMSON, Attorney at Law
12           WALT CUBBERLY, Attorney at Law
       8441 Gulf Freeway, Suite 600
13       Houston, Texas 77017
       (703) 230-2200
14       Jwilliams@whlaw.com
       Babramson@whlaw.com
15       Wcubberly@whlaw.com

16       CUTTER LAW P.C.
       BY: C. BROOKS CUTTER, Attorney at Law
17       401 Watt Avenue
       Sacramento, California 95864
18       (916) 290-9400
       Bcutter@cutterlaw.com
19
       ESTEY & BOMBERGER, LLP
20       BY: ANGELA J. NEHMENS, Attorney at Law
       2869 India Street
21       San Diego, California 92103
       (800) 260-7197
22       Angela@estey-bomberger.com

23

24

25

1    APPEARANCES (Continued)

2

3    FOR DEFENDANTS:

4       PAUL, WEISS, RIFKIND, WHARTON & GARRISON
        BY: ROBERT A. ATKINS, Attorney at Law
5          JACQUELINE P. RUBIN, Attorney at Law
           LOUIS A. MURRAY, Attorney at Law
6        1285 Avenue of the Americas
        New York, New York 10019
7        (212) 373-3000
        Ratkins@paulweiss.com
8        Jrubin@paulweiss.com
        Lmurray@paulweiss.com
9
        PAUL, WEISS, RIFKIND, WHARTON & GARRISON
10        BY: KYLE SMITH, Attorney at Law
           JESSICA E. PHILLIPS, Attorney at Law
11        2001 K Street, NW
        Washington, D.C. 20006
12        (202) 223-7300
        Ksmith@paulweiss.com
13        Jphillips@paulweiss.com

14        SHOOK, HARDY & BACON, L.L.P.
        BY: MICHAEL B. SHORTNACY, Attorney at Law
15        2121 Avenue of the Stars, Suite 1400
        Los Angeles, California 90067
16        (424) 285-8330
        Mshortnacy@shb.com

17

18

19

20

21

22

23

24

25

1   Tuesday, October 22, 2024                1:30 p.m.

2              P R O C E E D I N G S

3                   ---oOo---

4        THE COURT:  Good afternoon, everybody.  These are

5   the Uber Rideshare Cases.  We have a lot of participants,

6   but may I have appearances, at least, from those from whom

7   I can expect to hear this afternoon?

8        MR. LEVIN:  Bill Levin for the plaintiffs.

9        MR. CUTTER:  Brooks Cutter for the plaintiffs.

10       MR. CUBBERLY:  Walt Cubberly for the plaintiffs.

11       MR. WILLIAMS:  John Eddie Williams for the

12   plaintiffs.

13       MR. ATKINS:  Robert Atkins for Uber.

14       MS. RUBIN:  Jacqueline Rubin for Uber.

15       MS. PHILLIPS:  Jessica Phillips for Uber.

16       MR. SHORTNACY:  Michael Shortnacy for Uber.

17       MR. SMITH:  Kyle Smith for Uber.

18       THE COURT:  And please do remember to identify

19   yourself each time for the reporter's sake.  Each time you

20   speak.

21       So we have a lot to cover this afternoon.  Let me

22   tell you what is on my to-do list and the order in which I

23   intend to cover it.  But as always, I will accept friendly

24   amendments to the extent anybody wants to present any.

25       So there is an amended motion to quash a

1  deposition subpoena as to Plaintiff Jane Doe WHBE 5.  The

2  court circulated a tentative ruling on that motion

3  granting the motion, and I want to take that first, if we

4  may.

5       Actually, I'm going to already interrupt myself

6  and change the order.  Take it back.

7       There is a proposed common benefit order.  I want

8  to take that up quickly.  I don't think that will take

9  much time, but let's do that first and then turn to the

10  amended motion to quash.  There is, third, the question of

11  the bellwether selection.  The court, again, circulated a

12  written tentative ruling selecting four cases and the

13  order of trial and raising certain issues, and that, I

14  think, will probably take the bulk of our time today.

15       And then fourth and penultimate, there is a

16  motion, I think, by Mr. Levin's firm to withdraw as

17  counsel.  I'd like to take that up in camera at the very

18  end of the hearing so we can excuse everybody before we

19  take that up.  So I guess that is ultimate rather than

20  penultimate.

21       And then, finally, I just have a couple of

22  ministerial matters for the parties with respect to cases

23  that -- add-on cases, essentially.  Cases that have been

24  included in these proceedings.  And my review of the

25  already quite extensive docket suggests to me I may have

1    missed a couple, and I just want to ask for your help on

2    that.

3         So let's -- and then, of course, if there are

4    other items.

5         Mr. Atkins, do you want to offer an amendment

6    already?  Go ahead.

7         MR. ATKINS:  We have an issue pertaining to the

8    applicability of the forum non conveniens decision to

9    about 400 cases.  I think the parties are -- I think we're

10   in accord except with respect to maybe 15 or so.  And we'd

11   like to be heard on that and hopefully be able to resolve

12   that.

13        THE COURT:  All right.  Anybody else have

14   anything to add?

15        MR. LEVIN:  If we can get while we're all here,

16   perhaps, a report on where we are discovery wise since

17   we're all gathered.

18        THE COURT:  Certainly.

19        MR. LEVIN:  Okay.

20        THE COURT:  Yeah.  No, I certainly had that in

21   mind.

22        MR. LEVIN:  Okay.  Thank you.

23        THE COURT:  Thank you.

24        So with respect to the common benefit order,

25   the -- I've reviewed the common benefit order that is in

1  place and that Judge Breyer entered in the MDL litigation.

2  There was initially a motion to adopt a common benefit

3  order here and then an amended motion with an amended

4  proposed order that I received within the last few days if

5  I remember correctly.

6        I have not, in all candor, had a chance to

7  compare the amended order to the order that was previously

8  proposed, so what I'd like to know are two things.

9        Number 1, Uber, with respect to the previously

10  proposed order, took no position on that, and I'd like to

11  know whether that has changed and, for that matter,

12  whether anybody is opposing the proposed order.

13        And then, second, I'd like just a brief summary

14  if somebody is prepared to give it to me as to what the

15  recent changes were that were made because, as I say,

16  unfortunately, I've had -- I've not had an opportunity to

17  review the most recent version.

18        MR. SMITH:  Kyle Smith for the Uber defendants.

19        The Uber defendants are in the same boat as

20  Your Honor.  We're reviewing the revised order.  I think

21  there was a lot of red lining, if you will, but it was --

22  appeared to be stylistic.  But we're still going through

23  it to identify if there's any issues.  None identified as

24  yet.

25        I'd be a little bit surprised if there are any to

1  raise, but we just need a little more time to formulate a

2  position.

3        THE COURT:  Okay.  I guess what I'm going to

4  suggest, though, just to be very practical here, is that I

5  give you a deadline to do that by which if I haven't heard

6  anything, I will then enter the order because it's

7  something that's important that we get in place.  How long

8  do you need for that?

9        MR. SMITH:  Would a week be acceptable for

10  Your Honor?

11        THE COURT:  That's exactly what I was going to

12  suggest if that's acceptable to the plaintiffs' side.

13  Unless I receive written objections from Uber or, for that

14  matter, any counsel prior to October 29th, assuming that

15  I'm comfortable with it, the order will be entered at that

16  time.

17        MR. SMITH:  Thank you.

18        THE COURT:  So, Mr. Levin, did you want to tackle

19  whatever the most recent changes are?

20        MR. LEVIN:  Yes, Your Honor.

21        THE COURT:  Just by way of brief summary.

22        MR. LEVIN:  So the principal difference is the

23  original order had 4 percent to be held back for fees.

24        THE COURT:  The holdback.

25        MR. LEVIN:  And 1 percent for costs.

1      THE COURT:  Right.

2      MR. LEVIN:  After negotiations and discussions

3  with MDL leadership, we both in both courts agreed to

4  adjust that to 7 percent holdback for fees and 2 percent

5  costs, which is what's reflected in Judge Breyer's

6  Pretrial Order 19 and now in yours.

7      THE COURT:  Got it.

8      MR. LEVIN:  The other differences are -- I would

9  call them all administrative, but they didn't exist

10  before.  Have to do with how both leadership groups will

11  work together to review common benefit time and identify a

12  common special master to resolve disputes.  And the fact

13  that any work done in either forum will count if it's

14  truly common benefit, but that you shouldn't submit it

15  twice.  Just once.  Simple things like that.

16      And if it would be helpful to Your Honor, we

17  could, during this week, submit something that would save

18  you the trouble of reading everything.  Sort of like a red

19  line, but...

20      THE COURT:  If it's easy to submit a red line,

21  that would be great.  If not, I'm happy to defer, I mean,

22  frankly, to Judge Breyer and to you-all as a group.  I

23  take it, though, that what you're representing is all

24  plaintiffs' counsel are on board with this.

25      MR. LEVIN:  Well, the two leadership groups are

1   all on board, and counsel who are not within leadership

2   have gotten a copy of the proposed order and -- within the

3   JCCP and within the MDL, and as far as I know, there are

4   no objections.

5          THE COURT:  Okay.  Well, I'll just broaden what I

6   said earlier, which is if anybody has any objections,

7   whether it's Uber or anybody else, they have a week to get

8   them to me, and, otherwise, the order will be entered

9   October 29th.

10         MR. LEVIN:  And we'll provide a red line.  There

11  are a couple of other cosmetic changes.  When we did that

12  pretrial order, Judge Breyer's was Number 18, and now it's

13  Number 19.  And so I think if it would benefit Your Honor

14  to provide a red line --

15         THE COURT:  Actually, so the one that I read is

16  Pretrial Order Number 12.

17         MR. LEVIN:  There's a 12 and then a 19.  They're

18  companions.  They're not -- one didn't supersede the

19  other.

20         THE COURT:  I see.

21         MR. LEVIN:  They're, like -- we combined the

22  process points and the holdback in one order.  They did it

23  in two steps.

24         THE COURT:  Got it.

25         MR. LEVIN:  Which are now 12 and 19, not 12 and

1   18.  So if you'd like, Your Honor, within a matter of

2   days, we can give you a revised order with a red line.

3        THE COURT:  That would be great.  Thank you.

4        MR. LEVIN:  Okay.  Thank you.

5        THE COURT:  All right.  Well, you know, I'm going

6   to revise my order yet again.  Order of items just so that

7   we can get through the quick and easy ones.

8        As the -- and I'm going to go to this question of

9   add-on cases just to, again, elicit some help.  Mr. Smith

10  is standing up already.

11       As the case has gone on, as everybody is aware,

12  there have been stipulations and proposed orders regarding

13  add-on cases.  Many, many, many of them.  I've tried to

14  keep up with them, and in each case, to wait the

15  prescribed period under the Rules of Court to see if there

16  are any objections.  And if there are none -- and to date,

17  there has been, I believe, only one -- to then enter the

18  order.  And as I prepared for today's hearing, it looked

19  to me like I missed two.

20       You're agreeing.

21       MR. SMITH:  Yes, Your Honor.

22       THE COURT:  And those appear to be the stip and

23  orders that were filed on April 22nd and May 13 of 2024.

24       MR. SMITH:  That's what our records reflect,

25  Your Honor.  I have copies if that would be helpful.

1       THE COURT:  So I should enter those orders is the

2   bottom line.

3       MR. SMITH:  There were no objections filed to

4   those orders.  They were stipulated.

5       THE COURT:  That was what I found as well, but

6   I'm just trying to do my job here.

7       MR. SMITH:  We appreciate everything Your Honor

8   does in all respects.

9       THE COURT:  That was easy.  And I have those

10  orders, so I think I can deal with that.

11       Okay.  With respect to the amended motion to

12  quash, does Uber want to be heard on the tentative?

13       MR. ATKINS:  No, Your Honor.  We're going to

14  submit.  We're not contesting.

15       THE COURT:  All right.  Makes my job easier, and

16  makes Mr. Cubberly's job easier.

17       I guess the only thing I would add -- and please

18  regard this as an editorial comment and take it for what

19  it's worth -- is that in cases such as these that involve

20  some sensitivity regarding the alleged conduct, regarding

21  the emotional and physical and psychological state of the

22  plaintiffs regarding the claimed injuries, I think it's

23  particularly important that the court be sensitive to

24  concerns about overbreadth in discovery and that the

25  parties should be mindful of that as well.

1          I mean, we've all read about so-called scorched

2    earth discovery tactics.  I'm not suggesting that's what

3    happened here.  But line drawing is important, and I think

4    it's particularly important in these kinds of cases.

5          Hopefully it's not an issue we'll run up against

6    down the road in even more sensitive contexts, but that's

7    the gloss that I just want to proffer for your

8    consideration.

9          MR. ATKINS:  The only thing I'd say, Your Honor,

10   is we hear you.  We're mindful, and we've been selective

11   and judicious about it.  I mean, obviously, we felt this

12   one stood on different ground, but we really -- we have

13   been thoughtful in our -- you know, in our strategies on

14   discovery with that very much in mind.

15         THE COURT:  Okay.  I accept that.  As I say, I'm

16   not attacking anybody.  I'm not finger-pointing here.  But

17   I just thought it might be worth just adding that

18   observation.

19          Okay.  That, then, I guess, gets us to the main

20   event, which is the bellwether ranking.  I spent quite a

21   bit of time on this.  It's kind of an interesting

22   balancing process where both sides have proposed multiple

23   factors or variables or criteria, whatever you want to

24   call them, for me to consider.

25          And unlike a lot of the work that I do, there is

1  kind of no recipe book, if you will, that tells me in what

2  proportion those ingredients need to be added or what

3  weight they need to be given.  So it's really entirely or

4  almost entirely within my discretion.

5         That said, I do have in mind, and I hope the

6  order reflects this, that, you know, both parties'

7  statements were quite thoughtful.  Gave me a lot to work

8  with.  And I felt it was important, obviously, to give

9  both sides full input into where I come out here, and I

10  also thought it was important, and I tried as best I

11  could, in the time allotted, to explain my reason.

12         So before we get to the associated scheduling

13  issues -- which, as always, may be the most complicated

14  part of any hearing -- I wonder whether either side would

15  like to be heard with respect to the court's bellwether

16  ranking?

17         MR. CUTTER:  We accept the court's tentative,

18  Your Honor.

19         THE COURT:  Thank you, Mr. Cutter.

20         Mr. Williams?

21         MR. WILLIAMS:  John Eddie Williams for the

22  plaintiffs.

23         Judge, do you have a sense of whether you are

24  going to try one case at a time, or is there a chance that

25  we could consolidate some cases for judicial efficiency?

**Page 14**

1   Have you thought that through?

2        THE COURT:  I've thought about it.  Nobody has

3   raised it.  I think the received wisdom is that these

4   cases are -- like personal injury cases, generally are

5   individual and should be tried as such.  But I'm certainly

6   open to talking about anything that anybody wants to

7   raise.

8        There -- as I've suggested at the end of the

9   order, there may well be common evidentiary issues.  For

10  example, there may be in limine motions that are common to

11  all four cases or however many we end up trying.  There

12  may be other legal issues that it might make sense to have

13  some kind of consolidated hearing about.

14        But I had not contemplated a multi-plaintiff

15  trial if that's what you're asking.

16        MR. WILLIAMS:  Yes, sir.  Okay.  It would -- we

17  think that it would, of course, be very efficient -- more

18  efficient to do that.  It turns out that the liability

19  should be pretty much the same.  The only thing that would

20  change the liability case would be the date of the event

21  because some things that Uber did or didn't do were post

22  that date.

23        THE COURT:  Right.

24        MR. WILLIAMS:  So, you know, if we were to try

25  different people together, we would like them probably to

1    have similar time frames.  But I think that there is a lot

2    of efficiency to be gained there if the court would

3    entertain that and think about it.

4          THE COURT:  Interesting idea.

5          Mr. Atkins?

6          MR. ATKINS:  I think I fall on the side of

7    received wisdom in this instance.  I don't think liability

8    is common.  I think there are a lot of differences.

9    Causation is substantially different from case to case,

10   depending on what the conduct is.  What's the alleged act

11   that was the breach of the duty?  Is there some kind of

12   safety feature that they say would have prevented the

13   incident?  And we're going to say it wouldn't have.  It's

14   going to be different in each case.

15          So, you know, liability is certainly not common.

16   It's the same reason personal injury cases aren't suitable

17   to class action treatment.  Those issues aren't common.

18          I think Your Honor's idea that there may be

19   issues -- evidentiary issues, let's say.  Maybe even

20   challenges to experts that would run across the cases.  I

21   think that's an idea that I think we should collectively

22   pursue.

23          But were the court to consider the notion of

24   multi-plaintiff trials, we obviously would strongly object

25   and expect that to be, you know, a matter for briefing and

1    argument.  If Your Honor is even inclined to consider it.

2        THE COURT:  Well, I'm here to consider anything

3    anybody wants me to consider.  I think it's -- well, if

4    you-all think that it really makes a lot of sense and you

5    want to bring a motion, then, by all means, I'll hear it,

6    and I'll decide it.  But I'm sort of telling you where I'm

7    -- at least where I'm starting from absent some additional

8    information.

9        Did you want to address, from Uber's standpoint,

10   the ranking, or do you want to leave it, as Mr. Cutter

11   did?

12       MR. ATKINS:  We're prepared to leave it.

13       THE COURT:  Okay.

14       MR. ATKINS:  I think we have other issues.  I

15   think the plaintiffs want to raise some issues, and we'll

16   address those.  But the ranking, we're not going to

17   contest.

18       THE COURT:  Okay.  I mean, there was another

19   issue that I struggled a little bit with, frankly, and

20   that was whether, as Uber suggested, I should select six

21   cases on the theory that, you know, one or more of these

22   cases may settle or otherwise resolve at the last minute.

23       I do know from speaking with some of my

24   colleagues around the state that's a practice that some of

25   them follow.  Another practice that some of them follow

1  that strikes me as riskier, which I'm reluctant to

2  undertake, but I'll just throw it out as long as we're

3  here to discuss all these issues, is that of setting the

4  first two cases on the same day on the theory that one of

5  them will probably settle.  That makes me a little

6  nervous, but I suppose it's another approach that, at

7  least, some judges have taken.

8        It just seemed to me this was the cleanest way to

9  do it.  And I had enough trouble balancing and weighing

10  all of these different factors once I got to 1 through 4

11  that I didn't really want to tackle 5 and 6, in all

12  candor.  But let's see where we go.

13        Okay.  So with that, you know, the issue that I

14  raised at the end having to do with discovery really ties

15  very well into what we've just started discussing.  And

16  that is maybe it's too early to know now, but I think it's

17  worth starting to discuss the issue now.

18        What are the common issues that the parties think

19  are likely to be raised in these cases that might lend

20  themselves to some kind of a common resolution before the

21  first of the cases is set for trial?

22        Sort of in thinking about this, I sort of thought

23  about it as if we would be doing kind of a law and motion

24  month before the first trial date.  Whether, in fact,

25  there will be such overlapping issues.  You know, as

1   Mr. Atkins suggests, maybe there are evidentiary issues.

2   Or expert issues might be another common issue.

3       Maybe it's too early to say, but my concern in

4   looking at the schedule that you-all proposed -- which

5   admittedly -- well, only Uber proposed, which, at this

6   point, I regard as having been sort of sketched in, in

7   pencil.

8       I was concerned about the expedited briefing

9   schedule on dispositive motions and that, in turn, led me

10  to start thinking about this larger issue.

11      Now, I just circulated this -- yesterday?

12  Yesterday.  So you-all probably haven't had a chance to

13  talk with one another about these issues.  But I don't

14  know.  You're all here.  It struck me that it might be

15  useful to at least have you start an informal discussion

16  about your reactions to some of this and then set you free

17  at the end of the hearing to talk to one another and see

18  if you can reach a consensus.

19      Mr. Levin, you're nodding.  Do you want to take

20  the first shot?

21      MR. LEVIN:  Well, I'm not going into the

22  consolidated trials.  There are a lot of issues that are

23  common.

24      THE COURT:  Right.

25      MR. LEVIN:  And there will be legal issues that

1  are common.  There will be evidentiary issues that are

2  common.  And they will take time.  Your Honor's time.  A

3  lot of time.

4        THE COURT:  Yup.

5        MR. LEVIN:  And time in the courtroom.  And so I

6  think having something that takes cognizance of that now

7  is a -- will be very helpful for everyone.

8        I don't know what happens if the four cases

9  you've selected are resolved, but I do think we --

10  Your Honor's time is a precious resource.  And if you have

11  time to try these cases, we should have a plan for what

12  happens during the interim if the cases go away because it

13  would be a shame to not have your availability and the

14  court's availability as currently scheduled and

15  contemplated.

16        And we think we can do that because the corporate

17  discovery is what's the most time-consuming.

18        THE COURT:  Right.

19        MR. LEVIN:  And that's going to be ongoing no

20  matter what.  So that's my initial thought.

21        MR. ATKINS:  At the risk of repeating myself, I

22  think that it makes sense to think about perhaps there are

23  common evidentiary issues.  I could imagine in limine

24  motions perhaps.  I think they will likely seek to

25  introduce evidence regarding Uber that we will object to.

1  You know, historical facts, some of which were in the

2  pleading that Your Honor struck.  Some you didn't.

3        So I think there's going to be litigation of

4  what's going to be admitted.  That's just one example.

5        THE COURT:  Yup.

6        MR. ATKINS:  So I think it makes a lot of sense

7  to put time aside.  What exactly we would do -- and I

8  confess to having not, you know, thought it through.

9  Certainly not to the end.

10        THE COURT:  What about -- again, this is sort

11  of "I'm not going to hold you to it" mode; okay?

12  Dispositive motions.  I frankly thought when I -- well, I

13  had a question -- let's put it this way.  I had a question

14  mark when I saw it.  Are there really dispositive motions

15  here that would knock out one or more claims, or don't all

16  these claims, sort of by their nature, raise questions of

17  fact that are going to have to be decided at trial?  What

18  would that look like do you currently anticipate?

19        MR. ATKINS:  I can -- I do anticipate that we

20  will have -- that there will be facts admitted by

21  Plaintiffs such that there's no dispute that go directly,

22  for example, to an issue of causation.  In a particular

23  case.  Not across the cases.

24        THE COURT:  Right.

25        MR. ATKINS:  So there may be undisputed facts

1    that we say entitle us to judgment as a matter of law.

2         THE COURT:  I.e., it wouldn't have made a

3    difference to me had such and such a proposed safety

4    feature been adopted because of the way that the events

5    unfolded?

6         MR. ATKINS:  Right.  A good example is some

7    feature inside the car when what happened was far outside

8    the car after the ride, after the app is off.  Just by way

9    of example.

10        THE COURT:  Got it.

11        MR. ATKINS:  So I think there are sort of case

12   specific motions.  There may be issues about legal

13   questions about the duty of care and those sort of things

14   that might cut across.

15        THE COURT:  Okay.

16        MR. ATKINS:  So I think we should anticipate that

17   there will be individualized motions.

18        THE COURT:  Okay.  Well, it's early days

19   comparatively.  But I do think it's worth you-all talking

20   about this and, in particular, thinking about scheduling.

21   And I am -- you know, I appreciate the remarks about the

22   high value ascribed to my time.  That is one of the

23   reactions that I had to the briefing schedule, was it not

24   only looked demanding for you-all, but it looked demanding

25   for me if I'm getting a reply brief four days before a

1  hearing on something that is potentially case dispositive.

2  And it's not like the rest of my docket goes away; right?

3  So that was part of the reason for that comment.

4       But as I said in the tentative, I don't

5  anticipate, obviously, adopting any arbitrary deadlines at

6  this point before you-all have had a chance to kind of

7  thrash this through.

8       And it may be -- depending on how discovery goes,

9  it may be that what you end up suggesting is a more

10  extended dispositive motion briefing schedule.  A more

11  extended sort of pretrial motion schedule.  Whether it's

12  in limines, or it's Sargon.  Whatever it is.  On common

13  legal issues.

14       And then have jury selection in Case Number 1

15  start a bit later than we've already slotted it in.

16  Indeed, that may be kind of inevitably where this all goes

17  depending on how quick you are on the discovery.

18       So my schedule at this point remains what I told

19  you before, which is that these cases are set for trial

20  beginning in mid-May.  And at the moment, I don't have

21  anything else on my trial calendar until October.  That is

22  not necessarily going to remain the case.

23       But I do need to know -- and here is a question

24  that I'd like everybody's best answer to today.  Again,

25  recognizing that it's hard to know.  A rough estimate for

1  how long you think each of these individual trials is

2  going to take.  Because without knowing that, I don't know

3  how much time to block out on my calendar.

4        Mr. Williams, you got up first.

5        MR. WILLIAMS:  Judge, obviously, the first one

6  will take longer than the rest of them.  With that, we've

7  caucused amongst ourselves for the plaintiffs' side, and

8  best guess is 12 to maybe 15 days at first, and maybe ten

9  trial days later.

10        THE COURT:  Okay.  Want to take a guess,

11  Ms. Rubin?

12        MS. RUBIN:  Your Honor, we were, I think,

13  somewhat close.  We were saying two to three weeks.  So 10

14  to 15 days.  And I think at this point, that's probably

15  the best we can give you.

16        THE COURT:  Okay.  That's fair enough.

17        My -- I haven't had a lot of lengthy trials in

18  this courtroom.  The nature of the docket here is that

19  most cases -- not all of them, but most of them resolve.

20  My tentative inclination would be to be in trial four days

21  a week with Fridays dark so that I can handle other

22  matters on my docket.  But that's subject to negotiation

23  with you-all, and if that seems objectionable, we can talk

24  about that.

25        You know, two to three weeks is -- it's not eight

1  weeks or 14 weeks, so it's easier to deal with.

2      MR. CUTTER:  I think the other thing, Your Honor,

3  we wanted to take up was you reminded us of the

4  September 5th, 2023, scheduling order.

5      THE COURT:  Right.

6      MR. CUTTER:  And we certainly think that the --

7  you know, there can be overlap.  We agree with the court's

8  suggestion about following the code, obviously, in the new

9  statute on summary judgment briefing.  So backing that up.

10      But also, we think that the fact discovery

11  deadline needs to come -- be extended, particularly as we

12  try and coordinate with the MDL on some of these

13  depositions.  So it should go from January 15th out at

14  least 30 days and maybe 45.

15      And, similarly, expert disclosure should slide a

16  little bit too.  We don't need it that quickly.

17      THE COURT:  Well, I anticipate -- maybe I'm

18  wrong.  I anticipate you're not going to get much pushback

19  from the other side of the courtroom on those suggestions.

20  But they are part and parcel of what I'm suggesting the

21  parties meet and confer about.

22      And if you want to come back to me with a

23  proposed revised scheduling order or whatever you want to

24  call it, I'm happy to entertain that.  I think that makes

25  a lot of sense.  There are a lot of moving pieces here,

1   and it's a little bit difficult to figure out how to make

2   them all work together.

3       MS. RUBIN:  Your Honor, as you think that -- I

4   mean, we obviously haven't had a chance to talk together,

5   and I think if the parties can meet and talk about the

6   schedule, we'll be able to come back to you with something

7   that's a little bit more overarching and complete.

8       THE COURT:  Good.  Okay.

9       MR. LEVIN:  Your Honor, I do have one suggestion

10  as I've listened to this.  I think we could all benefit,

11  perhaps, from having a -- confer and have a session with

12  you where we sort of round table what really the motions

13  are going to be.

14      Just to give you an example, Mr. Atkins'

15  dispositive motion example -- I don't -- I'm not going to

16  argue the merits of it, but our position would be it

17  doesn't matter whether it happened inside or outside of

18  the car because the camera is a deterrent, and the camera

19  will have a record of whether the ride went as it was

20  supposed to be, and people won't necessarily commit these

21  acts if they know there's an operating camera recording

22  their absence from the car.

23      But, anyway, that's just an example.  So I don't

24  want the court, because of your time and resources and all

25  of our time, to just get, like, a lot of motions without

1   us having to discuss them among ourselves and maybe even

2   informally with Your Honor so that whatever briefing month

3   or whatever it is, is really focused on what we really

4   need to do.

5        THE COURT:  I think that makes all the sense in

6   the world, and I can't imagine you're going to disagree,

7   Mr. Atkins.

8        MR. ATKINS:  I would never refuse to speak to

9   Mr. Levin.  Whether we would agree is a different

10  question.

11       THE COURT:  Fair enough.  Or to me, I take it.

12       Yeah.  No, I'd be happy to do that.  I think that

13  makes a lot of sense.  I have a lot to learn here.  I

14  mean, I dealt with the pleading issues and various

15  procedural issues, but, you know, we're getting close to

16  the time where I'm going to have to start -- I'm going to

17  have to start dealing with some of the merits issues, and

18  I'm going to look to you-all to educate me on those.

19       And I can certainly anticipate there will be

20  difficult issues to be tackled.  I've already seen that --

21  well, I'll leave it at that.

22       What I was going to say is I've already seen some

23  of Judge Breyer's orders, and I have enormous respect for

24  Judge Breyer, and I can already anticipate that, you know,

25  there are likely to be common issues that arise in both

1  courts.  And I may be looking to see what he says.  I

2  don't think he's going to be looking to see what I say,

3  but -- so there is plenty of room for discussion here.

4       Okay.  Is there more -- well, just to flesh it

5  out, Mr. Levin, you suggested that we talk at least

6  briefly about where things stand on the discovery front,

7  and that would be useful to me to understand, at least, by

8  way of background for any later scheduling discussion that

9  we have.  Do you want to take a shot at surveying the

10  landscape?

11       It looks like a number but not all of the

12  plaintiffs in the bellwether discovery pool have had their

13  depositions taken.

14       MR. LEVIN:  I think that's true, but I don't

15  think that's going to cause any scheduling problems.  I

16  think we'll get them all --

17       THE COURT:  No.  It's all the documents and the

18  corporate stuff.

19       MR. LEVIN:  The documents -- they have produced

20  265,000 documents.  They continue to produce documents.

21  There's documents that are being produced to the MDL also.

22  That's an ongoing process, but I don't believe we need the

23  court's assistance at the moment.

24       Depositions -- and Mr. Abramson has been the

25  central person as a member of both leadership groups on

1  trying to coordinate the depositions.  And without being

2  critical of Uber, who I think is trying to get dates for

3  the deponents, the simple fact is that we've taken part of

4  three depositions in a universe where we could debate the

5  final number, but the final number is much higher than

6  that.  And at the current pace of, you know, one a week, I

7  don't see where we get where we need to be.

8         And I realize they're balancing their schedules

9  and the witness schedules and travel and all the rest of

10  it.  So it's not a criticism, but we do need a faster

11  pace, and we may need Your Honor's help to get there.

12         I don't know if you have anything to add to that.

13         MR. ABRAMSON:  Yeah, I can add.

14         You can respond to --

15         MR. ATKINS:  I just want to respond to --

16         THE COURT:  Well, I'll hear from Mr. Abramson

17  first, and then you can respond to both of them.

18         MR. ABRAMSON:  Okay.  So just a couple issues.

19  And, again, talking just about kind of general corporate

20  discovery as distinguished from case specific.

21         THE COURT:  Right.

22         MR. ABRAMSON:  So as Mr. Levin said, we've taken

23  parts of three depositions.  There are eight other

24  depositions that are currently set with dates that are

25  defined.  There are --

1          THE COURT:  In 2024?

2          MR. ABRAMSON:  In -- well, in 2024 or before the

3    current discovery cutoff of January 15.

4          THE COURT:  Right.

5          MR. ABRAMSON:  There are seven other witnesses

6    who we've sent notices to.  We are waiting on -- we

7    proposed dates more as placeholders to try to work with

8    Uber to find dates.

9          For four of those, we're waiting on dates.  For

10   three of them, just to flag other issues for Your Honor,

11   they've raised apex related issues.  That gets into the

12   kind of scheduling crunch with apex type arguments, as you

13   might imagine.  So flagging that for Your Honor.

14          We're supposed to meet and confer tomorrow.

15   Mr. Smith and I talked even before this hearing.  So we're

16   having an ongoing dialogue about that, but flagging it for

17   you.

18          We also have sent yesterday six PMK notices.  I

19   think that Uber would probably -- we tried to make them

20   topic focused.  So there's a PMK on stats.  There's a PMK

21   on the safety report.  There's a PMK on deactivation

22   policies.  And as you might imagine, within each PMK,

23   there are several topics.

24          We didn't even propose a date.  You know, the

25   thought was, "Here are the notices.  Let's meet and confer

1  about them.  Let's talk about topics.  If there is some,

2  you know, argument about the -- whether a particular topic

3  is ripe or, you know, can go forward, you know, we can

4  talk about that, and we're willing to."

5        But we wanted to give those plenty of time so we

6  could get those set.  So that's going to be of primary

7  importance.

8        I don't know if there's going to be issues with

9  that, but I wanted to flag that for Your Honor so that you

10  knew that those PMKs were out, and we're going to need to

11  get those taken care of before the discovery cutoff.

12        THE COURT:  I suppose it's possible that some of

13  the -- once you-all thrash out the topics, that some of

14  the PMK witnesses may overlap with the other witnesses

15  whom you've already noticed for deposition.  That might

16  boil some of this down a little bit.

17        MR. ABRAMSON:  Absolutely.  And we're willing to

18  talk to them about that.  We just gave them the topics

19  yesterday, so it's not to put them on the spot about that

20  because I'm sure they haven't even had time to look at

21  those.

22        But, yeah, the idea is if there are certain

23  witnesses who can cover certain topics, we can take them

24  individually and in their corporate capacity at the same

25  time to try to make it more efficient.

1          THE COURT:  Good.

2          MR. ABRAMSON:  The other issue to flag is

3    coordination.  So as Mr. Levin said, I am in leadership in

4    both litigations, and I think all parties really have been

5    trying to work to coordinate these depos.  The primary

6    issue right now is really not involving the JCCP.  It's

7    involving Uber and the MDL.

8          And the dispute is about privilege logs

9    primarily.  I'm not saying there is not other issues, but

10    the privilege logs that Uber has produced for deponents,

11    without going into the merits of them, they're voluminous,

12    and there are a lot of challenges from the MDL as to

13    privilege issues.

14          In the MDL, without a trial deadline looming, is

15    not of the mind that they want to move forward with

16    depositions prior to getting those issues worked out and

17    resolved by Judge Cisneros or Judge Breyer.

18          Whereas, in our situation, taking Your Honor's

19    guidance from the last time, we need to plow forward.  If

20    privilege issues come up and are de-designated, we'll come

21    back and revisit it, and maybe we get some more time with

22    those documents.  We figured, you know, we're just doing

23    the best -- everyone is doing the best they can with their

24    time.

25          THE COURT:  I'm sorry to interrupt.  Are there

1  trial dates set at this point in the MDL?

2        MR. ABRAMSON:  There are not.

3        THE COURT:  That's what I thought.  Okay.  I have

4  looked at the website occasionally, but --

5        MR. ABRAMSON:  Yeah.  So there are not currently,

6  but -- so for coordinating depos, right now, these depos,

7  while we're, the JCCP, open to coordinating any of these

8  depos if those issues can get worked out, what we're not

9  open to doing is pushing back these dates that may impact

10  our ability to move forward with trial dates.

11        And the MDL is very understanding of that.  And

12  so we have been -- these last few depos have been JCCP

13  only.  The ones that are set, at least, right now, they

14  may be coordinated.  They may not.  It's going to largely

15  depend on whether the MDL and Uber are able to work out

16  these privilege issues so that the MDL is comfortable

17  moving forward with these depositions at this time before

18  getting all the documents they feel they're entitled to.

19        So just flagging that.  I don't think it's an

20  issue right now because we do have dates, and, hopefully,

21  we're getting more dates, but I know it's something we've

22  all been trying to work towards and haven't -- just

23  haven't gotten there for a variety of reasons.

24        THE COURT:  Do you-all have a status conference

25  coming up with Judge Breyer or Judge Cisneros where some

1   of these issues might get surfaced?

2        MR. ABRAMSON:  There is a hearing with

3   Judge Cisneros tomorrow.  Mr. Shortnacy would probably

4   know better than I do if that's going to be discussed --

5   if those issues are going to be discussed tomorrow.  I

6   think they are.

7        MR. SHORTNACY:  I expect they will, Judge.  They

8   were in the joint status report we submitted to

9   Judge Cisneros.

10        MR. ABRAMSON:  So those issues will hopefully get

11   flagged and worked out, and to the extent that they can

12   get worked out in time, we can coordinate.  If they will.

13   If they can't, then we won't.

14        So that's kind of where we are on discovery

15   unless you have any other questions.

16        THE COURT:  I want to hear from Mr. Atkins, but

17   other than that, thank you.

18        MR. ATKINS:  I don't think we're terribly far

19   apart.  I just might put it a slightly different way.  So

20   there are -- with respect to every notice we've received,

21   save for the PMQ, which came in last night --

22        THE COURT:  Right.

23        MR. ATKINS:  -- or PMK.  We have -- they either

24   have been taken, will be taken, have been scheduled, or a

25   couple where we owe them dates.  And then, as Mr. Abramson

**Page 34**

1  said, there are a couple we're going to move on apex

2  grounds.

3       But every notice that we've gotten for a person

4  has been teed up for a deposition.  Or it's already

5  happened.  So we're in good shape there.

6       With respect to the MDL, it's disappointing

7  because we worked very hard to coordinate them, and then

8  at the last minute, over the last couple weeks, we heard

9  from the MDL that they're not going to show up.  We had

10  booked two days for all these witnesses, which took a lot

11  of effort to find two days that worked, and we suddenly

12  got a letter saying, you know, "We're not going to show

13  up."

14       So they've sort of, you know, decoupled,

15  de-coordinated, and we will deal with that.

16       But we are making progress with the JCCP lawyers

17  and leadership, and we've had one-day depositions of seven

18  hours, and it's been effective and productive.  And, you

19  know, in my point of view, those depositions are done.

20       And we'll deal with the MDL leadership if and

21  when they decide they're ready to take depositions.  We'll

22  have -- obviously, you know, we have issues there.  We

23  have objections there.  We're obviously having this tussle

24  about documents.

25       But just so I wanted Your Honor to understand, we

1  have been operating on a coordinated basis, but not

2  necessarily with a partner.  And it's unfortunate.  And,

3  you know, they have a different agenda, different

4  approach.

5          But in terms of the JCCP, everything is underway,

6  and I expect to tee up these apex motions either next week

7  or the week after.  Just a couple.

8          THE COURT:  Okay.

9          MR. ATKINS:  Okay.  Thank you, Your Honor.

10          THE COURT:  Are there -- so the other issues on

11  my list that we were going to talk about were the

12  forum non conveniens issue and then the motion to withdraw

13  as counsel, but before I go to those, are there other

14  issues that either side wants to raise or think it would

15  be productive to discuss at this point?

16          MR. LEVIN:  Well, I tried to allude to it earlier

17  with Your Honor's schedule, timing, resources, and the

18  like.  I think we should have a plan for what happens in

19  May when Your Honor is ready to try a case and we've

20  resolved all these MILs and evidentiary issues, if, for

21  some reason -- either on a dispositive motion or a

22  settlement -- we don't have four or we don't have three or

23  we don't have two, I mean, we do now have half a year to

24  identify replacements.  And we have not -- we don't have a

25  plan in place for that.  We don't have a disagreement

1    about a plan.

2         But I do think both sides are cognizant of the

3    fact that we should have something in place that will tell

4    everybody what happens in May if, for some reason, one or

5    more cases disappears.

6         And Your Honor has the summer, and the lawyers

7    have the summer, and we have rulings on legal issues, and

8    we're ready to go, it would be -- it would not be a good

9    thing, from our point of view, if the reason we're not

10   ready to go is because there isn't a plaintiff who has

11   been deposed, for example.

12        THE COURT:  Well, so, I mean, that raises a

13   couple of possibilities; right?  One is that I do select,

14   you know, cases 5 and 6 as sort backups here so that those

15   would rise in the ranking in the event that 1 and 2

16   resolve, hypothetically, and then you'd know where to go.

17        The other possibility, I suppose, would be

18   advancing trials.  Some of that's going to depend on the

19   availability of witnesses.

20        But to the extent, for example, there are

21   overlapping experts, presumably, the experts could make

22   themselves available.  The larger question might be

23   percipient witnesses or the plaintiffs themselves.

24        I mean, if both sides want me to.  As I say, I

25   sort of ran out of steam trying to balance your respective

1    submissions, but if you want me to, I can pick cases 5 and

2    6, and then we'll just know.  And maybe that would solve

3    the problem.

4          MS. RUBIN:  Your Honor --

5          MR. CUTTER:  I mean, I think the -- I think the

6    important principle the court establishes is if one of

7    Plaintiffs' picks is resolved or dismissed, then we

8    replace it.  Nominate replacements.  The defense nominates

9    if one of their picks is dismissed; right?

10         THE COURT:  Yeah, although, I suppose,

11   hypothetically -- right? -- picks 1 and 3 right now are

12   Plaintiffs' picks.  What if cases 1 and 3 resolve?  Then

13   what do we do?  I mean, I haven't thought these issues

14   through, frankly.

15         MR. CUTTER:  We would replace those.

16         THE COURT:  It depends on when; right?  And, you

17   know, part of Uber's point, I think, was to say, "Gee, if

18   we don't prioritize discovery on hypothetical cases 5 and

19   6 now, then if the case resolves on the courthouse steps,

20   we won't be ready to go on cases 5 and 6 because we don't

21   even know which ones those are."

22         (Reporter clarification.)

23         THE COURT:  I'm sorry.  Is somebody who is

24   appearing remotely speaking?  If so, please identify

25   yourself.

1        MR. CUTTER:  I think they muted themselves.

2        THE COURT:  Okay.  I mean, maybe this is worth a

3   couple more minutes discussion because it's a potential

4   problem, and it's not a purely hypothetical one.  It

5   happens; right?

6        MR. ATKINS:  Right.  The challenge is -- I think

7   this is what you're getting at -- is what 5 and 6 should

8   be.  If you want to call it the alternates --

9        THE COURT:  Right.

10         MR. ATKINS:  -- will depend on what cases, if

11  there are any, get resolved.  Because I think Your Honor

12  and the parties to some extent are trying to get a

13  representative spectrum of cases.

14        So, you know, let's just call it type A gets

15  resolved; right?  Substituting type C may not really serve

16  the purposes of bellwethers.

17        THE COURT:  Right.

18        MR. ATKINS:  So it's not obvious that what

19  Your Honor should do is simply pick, you know, two more

20  because they may not be the right mix.  So what I would

21  suggest at the risk of trying to dodge Your Honor's

22  question is that we spend some time together thinking

23  about it.  Maybe we can come up with a joint approach.

24  Maybe we can, and submit it to Your Honor for

25  consideration.  It's not a today issue.

1          THE COURT:  Okay.  Fair enough.

2          Other issues before we go to the forum non

3   conveniens problem?

4          MR. LEVIN:  I don't think so, Your Honor.

5          THE COURT:  Okay.  What is the problem, and how

6   are we going to decide it?

7          MR. SMITH:  Kyle Smith for the Uber defendants.

8          There is not much of a problem from our point of

9   view.  There were about 400 cases that involved incidents

10  outside the state of California which came into this

11  coordinated proceeding after Your Honor's rulings on forum

12  non conveniens.

13         THE COURT:  Okay.

14         MR. SMITH:  And the stipulated procedure was

15  everyone would get together once the appellate process is

16  done and determine, you know, whether there's a

17  stipulation that the prior rulings govern those cases or

18  not.

19         We've undertaken to confer with Mr. Cubberly and

20  made, I think it's fair to say, reasonable progress in

21  identifying about -- I'll call it 380 or so of those cases

22  where there's no argument that Your Honor's rulings

23  wouldn't govern.

24         There are 15 or 20 or so cases where Mr. Cubberly

25  has asserted, "Well, this plaintiff is actually -- was or

1  is now a California resident even though the incident took

2  place elsewhere," and so there may be a point of dispute

3  about whether Your Honor's analysis actually controls in

4  that circumstance.

5        I think in the end, there might only be a couple

6  cases where we really can't find agreement, but be that as

7  it may, it's sort of a maximum universe of about 20.

8        So what Uber proposes is to submit to Your Honor

9  the list of the -- call it the 380 where there's been no

10  ground for disputing the applicability of the order

11  articulated and ask Your Honor to enter an order deeming

12  the earlier rulings applicable to those cases.

13        And we would assume that would be an unopposed

14  application.  I haven't heard --

15        THE COURT:  Why don't you just make a joint

16  stipulation and proposed order and then there's no

17  question about it?

18        MR. CUBBERLY:  Judge, we will not stipulate to a

19  dismissal.  If the court orders it, that's one thing.  But

20  that's one of the lessons we learned on this appeal.  I

21  can't stipulate to that.

22        THE COURT:  Well, there was a prior stipulation,

23  which the Court of Appeal read pretty clearly, disagreeing

24  -- I recognize disagreeing with your position on appeal,

25  but there's now law of the case on this.

1      MR. CUBBERLY:  Understood, but what I'm saying is

2  if the court orders it, the court orders it.  I don't want

3  to stipulate to a dismissal of my client's case is all I'm

4  saying.

5      THE COURT:  Okay.  Well, can you at least agree

6  on the -- if it's 380, the 380 cases that fall within

7  certain criteria and then leave it to me to order what

8  happens to them?

9      MR. CUBBERLY:  We can.

10      THE COURT:  I'm happy to give you that leeway.

11      MR. CUBBERLY:  Thank you.

12      THE COURT:  I understand the concern.

13      MR. CUBBERLY:  Okay.

14      MR. SMITH:  So with that in mind, we'll plan to

15  get a submission to the court on the 380.  We'll continue

16  conferring with Mr. Cubberly on -- call it the 20.  Try to

17  whittle that down, ideally, to 0.  There may be a few

18  cases with fact patterns that no one can really agree on

19  how the court's prior rulings are going to apply to them

20  or not.  They may be matters that need to be -- just be

21  set off to the side given everything that's happening with

22  getting ready for trial.

23      But that was our proposed plan for dealing with

24  that part of the docket.

25      THE COURT:  Okay.  All right.  That sounds

1    reasonable to me.

2         MR. CUBBERLY:  Do you want to hear from me,

3    Your Honor, on this?

4         THE COURT:  I thought I just did.  I'm sorry.

5         MR. CUBBERLY:  Okay.  There are 12 -- there are

6    about, I think, 12 cases, maybe 15, that we think may not

7    -- that the court hasn't dealt with yet.

8         THE COURT:  Okay.

9         MR. CUBBERLY:  Of these; okay?  For various

10   reasons.  I think it was, like, two Venn diagrams with

11   some overlap between the two circles.

12        THE COURT:  All right.

13        MR. CUBBERLY:  What I don't know from Mr. Smith

14   yet is whether Uber will consent to them being back in the

15   JCCP and agree with us or not.  I think Uber hasn't taken

16   a position yet.

17        But I do think with respect to those 12, the

18   court may need to take that up at some point and whether

19   they are subject to the court's earlier evidentiary

20   motions.

21        MR. SMITH:  I can address them right now,

22   Your Honor.  I think there's 13 cases on the list we

23   received from Mr. Cubberly.  11 of them were already the

24   subject of the court's February 2023 order.  They're in

25   the list.  They're already governed by an order the court

1    already entered.  So no dispute on those 11.

2        There are two that were not in that bucket where

3    Mr. Cubberly has said the facts are a little bit

4    confusing.  There's -- the plaintiffs' residency situation

5    is different.  Those are the two that we're drilling down

6    on.

7        I've been assuming Mr. Cubberly is not going to

8    somehow seek to take 11 cases that are in an order already

9    out of an order.  I haven't heard otherwise, but maybe

10   he's saying that now.  If he takes that position, we

11   certainly disagree, and I wouldn't think it would be a

12   matter that takes much time to deal with.

13       But as far as I can tell, with Mr. Cubberly's

14   clients, we're down to the two cases where the factual

15   issue about where they live is coming up.

16       MR. CUBBERLY:  I am saying that, Your Honor.  So

17   the court knows, we filed these people in the MDL.  Uber

18   has said, "Look.  These are California residents.  They

19   live in California.  There is not subject matter

20   jurisdiction."

21       THE COURT:  There is not what?

22       MR. CUBBERLY:  Subject matter jurisdiction.

23       THE COURT:  Okay.

24       MR. CUBBERLY:  So what we're saying is, "Well,

25   these are all California residents.  They live in

1    California.  Some of these people lived in California and

2    were California residents at the time they were

3    assaulted."

4          So, for example, they were in college in another

5    state but California residents, or they just went to

6    another state for vacation.

7          The second part of the Venn diagram would be

8    these are people who do not have an adequate alternative

9    forum because under Stangvik, the statute of limitations.

10          So the court has addressed neither of those two

11    factual scenarios in the previous forum non conveniens

12    order, so I think the court hasn't considered those 11,

13    and they should come back for the court's consideration on

14    those.

15          THE COURT:  All right.  Let's do this.  I'm

16    obviously not in a position to decide anything today.

17          MR. CUBBERLY:  Understood.

18          THE COURT:  Let's talk in a minute about when

19    we're next going to meet, and to the extent that there

20    is -- you-all meet and confer and you can't reach a final

21    resolution as to some number of cases -- whether it's two

22    or 20 or something in between -- why don't you talk about

23    how you want me to try and resolve that, and we can talk

24    about that?

25          MR. CUBBERLY:  Fair enough, Your Honor.

1        MR. SMITH:  Thank you, Your Honor.

2        THE COURT:  So unless somebody else has something

3   else, I think the last thing remaining on my list was to

4   talk about the motion to withdraw as counsel.  I want to

5   do that in camera and excuse everybody else, but before we

6   do that, we should talk about when we next meet.

7        And maybe with your leave, we can go off the

8   record to spare the court reporter having to transcribe my

9   calendar over the next couple of months, and I can talk to

10   you about what some of my time constraints are if that's

11   all right with everybody.

12        Hearing no objection.

13        (Recess taken.)

14        THE COURT:  After a brief discussion with counsel

15   off the record, the court, with everybody's consent, is

16   setting the next case management conference for

17   December 20th at 1:30 p.m. Pacific time.  The hope is that

18   by that time, the parties will have met and conferred

19   regarding some of the scheduling issues that we've

20   discussed today, including a possible amendment to the

21   existing scheduling order, a possible revised -- I won't

22   call it revised, but a possible pretrial schedule that

23   will take into account dispositive motions in limine or

24   other common issues that may arise in the cases selected

25   for trial and the like.

1        And I've also committed to counsel that to the

2    extent there are at that point remaining -- well, there

3    are ripe discovery disputes that need to be addressed by

4    way of an informal discovery conference, I'll make every

5    effort to accommodate you in that regard.

6        MR. ATKINS:  The other thing I'd add is, you

7    know, I now know at this point we're going to be making

8    apex motions.

9        THE COURT:  Right.

10        MR. ATKINS:  And so, obviously, we defer to the

11    court in terms of the calendar for that.  We'll try to get

12    those teed up as quickly as possible, like I said.  But

13    that will -- that's something that will have to be

14    decided, I presume, by the end of the year, but that's --

15        THE COURT:  Well --

16        MR. ATKINS:  -- in the court's hands.

17        THE COURT:  This may be overly ambitious, but if

18    you already know what they are, Mr. Abramson has already

19    indicated that there are three deponents in question who

20    may be subject to such motions.  If you can get that on

21    file for hearing on December 20th, I'll make every effort

22    to decide it.  There's going to be a lot of caffeine

23    imbibed for the next one.

24        MR. ATKINS:  That makes a lot of sense.

25        THE COURT:  Okay.  All right.  Anything else that

1    anybody would like to raise?

2          MR. CUTTER:  Thank you, Your Honor.

3          THE COURT:  Thank you-all.  It's always a

4    pleasure.

5          And, Mr. Levin, please remain.

6          (The proceedings were adjourned at

7          2:34 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2

3    STATE OF CALIFORNIA )
                          ) ss.
4    COUNTY OF MARIN      )

5

6          I, ANGELA POURTABIB, hereby certify:

7          I am a duly qualified Certified Shorthand

8    Reporter in the State of California, holder of Certificate

9    Number CSR 13714 issued by the Court Reporters Board of

10   California, and which is in full force and effect.

11         I am not financially interested in this action

12   and am not a relative or employee of any attorney of the

13   parties, or of any of the parties.

14         I am the reporter that stenographically reported

15   the testimony in the foregoing proceeding and the

16   foregoing transcript is a true record of the testimony

17   given.

18

19

20   Dated:  October 23rd, 2024

21

22         _____

                  Angela Pourtabib
23                 Certified Shorthand Reporter
                  CSR No. 13714, RPR

24

25

**Transcript of Proceedings**                                    In re: Uber Rideshare Cases

**-**

**---ooo---**  4:3

**0**

**0**  42:17

**1**

**1**  7:9 8:25 18:10
23:14 37:15 38:11,
12

**10**  24:13

**11**  43:23 44:1,8 45:12

**12**  10:16,17,25 24:8
43:5,6,17

**13**  11:23 43:22

**14**  25:1

**15**  6:10 24:8,14 30:3
40:24 43:6

**15th**  25:13

**18**  10:12 11:1

**19**  9:6 10:13,17,25

**1:30**  4:1 46:17

**2**

**2**  9:4 37:15

**20**  40:24 41:7 42:16
45:22

**2023**  25:4 43:24

**2024**  4:1 11:23 30:1,2

**20th**  46:17 47:21

**22**  4:1

**22nd**  11:23

**265,000**  28:20

**29th**  8:14 10:9

**2:34**  48:7

**3**

**3**  38:11,12

**30**  25:14

**380**  40:21 41:9 42:6,
15

**4**

**4**  8:23 18:10

**400**  6:9 40:9

**45**  25:14

**5**

**5**  5:1 18:11 37:14
38:1,18,20 39:7

**5th**  25:4

**6**

**6**  18:11 37:14 38:2,
19,20 39:7

**7**

**7**  9:4

**A**

**ability**  33:10

**able**  6:11 26:6 33:15

**Abramson**  28:24
29:13,16,18,22 30:2,
5 31:17 32:2 33:2,5

34:2,10,25 47:18

**absence**  26:22

**absent**  17:7

**Absolutely**  31:17

**accept**  4:23 13:15
14:17

**acceptable**  8:9,12

**accommodate**  47:5

**accord**  6:10

**account**  46:23

**act**  16:10

**action**  16:17

**acts**  26:21

**add**  6:14 12:17 29:12,
13 47:6

**add-on**  5:23 11:9,13

**added**  14:2

**adding**  13:17

**additional**  17:7

**address**  17:9,16
43:21

**addressed**  45:10
47:3

**adequate**  45:8

**adjourned**  48:6

**adjust**  9:4

**administrative**  9:9

**admitted**  21:4,20

**admittedly**  19:5

**adopt**  7:2

**adopted**  22:4

**adopting**  23:5

**advancing**  37:18

**afternoon**  4:4,7,21

**agenda**  36:3

**agree**  25:7 27:9 42:5,
18 43:15

**agreed**  9:3

**agreeing**  11:20

**agreement**  41:6

**ahead**  6:6

**alleged**  12:20 16:10

**allotted**  14:11

**allude**  36:16

**alternates**  39:8

**alternative**  45:8

**ambitious**  47:17

**amended**  4:25 5:10
7:3,7 12:11

**amendment**  6:5
46:20

**amendments**  4:24

**analysis**  41:3

**answer**  23:24

**anticipate**  21:18,19
22:16 23:5 25:17,18
27:19,24

**anybody**  4:24 6:13
7:12 10:6,7 13:16
15:6 17:3 48:1

**anyway**  26:23

**apart**  34:19

**apex**  30:11,12 35:1
36:6 47:8

**app**  22:8

**appeal**  41:20,23,24

**appear**  11:22

**appearances**  4:6

appeared 7:22

appearing 38:24

appellate 40:15

applicability 6:8
41:10

applicable 41:12

application 41:14

apply 42:19

appreciate 12:7
22:21

approach 18:6 36:4
39:23

April 11:23

arbitrary 23:5

argue 26:16

argument 17:1 31:2
40:22

arguments 30:12

articulated 41:11

ascribed 22:22

aside 21:7

asking 15:15

assaulted 45:3

asserted 40:25

assistance 28:23

associated 14:12

assume 41:13

assuming 8:14 44:7

Atkins 4:13 6:5,7
12:13 13:9 16:5,6
17:12,14 19:1 20:21
21:6,19,25 22:6,11,
16 27:7,8 29:15
34:16,18,23 36:9
39:6,10,18 47:6,10,
16,24

Atkins' 26:14

attacking 13:16

availability 20:13,14
37:19

available 37:22

aware 11:11

**B**

back 5:6 8:23 25:22
26:6 32:21 33:9
43:14 45:13

background 28:8

backing 25:9

backups 37:14

balance 37:25

balancing 13:22 18:9
29:8

basis 36:1

beginning 23:20

believe 11:17 28:22

bellwether 5:11 13:20
14:15 28:12

bellwethers 39:16

benefit 5:7 6:24,25
7:2 9:11,14 10:13
26:10

best 14:10 23:24
24:8,15 32:23

better 34:4

Bill 4:8

bit 7:25 13:21 17:19
23:15 25:16 26:1,7
31:16 44:3

block 24:3

board 9:24 10:1

boat 7:19

boil 31:16

book 14:1

booked 35:10

bottom 12:2

breach 16:11

Breyer 7:1 9:22 27:24
32:17 33:25

Breyer's 9:5 10:12
27:23

brief 7:13 8:21 22:25
46:14

briefing 16:25 19:8
22:23 23:10 25:9
27:2

briefly 28:6

bring 17:5

broaden 10:5

Brooks 4:9

bucket 44:2

bulk 5:14

**C**

caffeine 47:22

calendar 23:21 24:3
46:9 47:11

California 40:10 41:1
44:18,19,25 45:1,2,5

call 9:9 13:24 25:24
39:8,14 40:21 41:9
42:16 46:22

camera 5:17 26:18,21
46:5

candor 7:6 18:12

capacity 31:24

car 22:7,8 26:18,22

care 22:13 31:11

case 11:11,14 14:24
15:20 16:9,14 21:23
22:11 23:1,14,22
29:20 36:19 38:19
41:25 42:3 46:16

cases 4:5 5:12,22,23
6:9 11:9,13 12:19
13:4 14:25 15:4,11
16:16,20 17:21,22
18:4,19,21 20:8,11,
12 21:23 23:19
24:19 37:5,14 38:1,
12,18,20 39:10,13
40:9,17,21,24 41:6,
12 42:6,18 43:6,22
44:8,14 45:21 46:24

caucused 24:7

causation 16:9 21:22

cause 28:15

central 28:25

certain 5:13 31:22,23
42:7

certainly 6:18,20 15:5
16:15 21:9 25:6
27:19 44:11

challenge 39:6

challenges 16:20
32:12

chance 7:6 14:24
19:12 23:6 26:4

change 5:6 15:20

changed 7:11

changes 7:15 8:19
10:11

circles 43:11

circulated 5:2,11
19:11

**Transcript of Proceedings**                    **In re: Uber Rideshare Cases**

circumstance 41:4

Cisneros 32:17 33:25
  34:3,9

claimed 12:22

claims 21:15,16

clarification 38:22

class 16:17

cleanest 18:8

clearly 41:23

client's 42:3

clients 44:14

close 24:13 27:15

code 25:8

cognizance 20:6

cognizant 37:2

colleagues 17:24

collectively 16:21

college 45:4

combined 10:21

come 14:9 25:11,22
  26:6 32:20 39:23
  45:13

comfortable 8:15
  33:16

coming 33:25 44:15

comment 12:18 23:3

commit 26:20

committed 47:1

common 5:7 6:24,25
  7:2 9:11,12,14 15:9,
  10 16:8,15,17 18:18,
  20 19:2,23 20:1,2,23
  23:12 27:25 46:24

companions 10:18

comparatively 22:19

compare 7:7

complete 26:7

complicated 14:13

concern 19:3 42:12

concerned 19:8

concerns 12:24

conduct 12:20 16:10

confer 25:21 26:11
  30:14,25 40:19
  45:20

conference 33:24
  46:16 47:4

conferred 46:18

conferring 42:16

confess 21:8

confusing 44:4

consensus 19:18

consent 43:14 46:15

consider 13:24 16:23
  17:1,2,3

consideration 13:8
  39:25 45:13

considered 45:12

consolidate 14:25

consolidated 15:13
  19:22

constraints 46:10

contemplated 15:14
  20:15

contest 17:17

contesting 12:14

contexts 13:6

continue 28:20 42:15

controls 41:3

conveniens 6:8 36:12
  40:3,12 45:11

coordinate 25:12
  29:1 32:5 34:12 35:7

coordinated 33:14
  36:1 40:11

coordinating 33:6,7

coordination 32:3

copies 11:25

copy 10:2

corporate 20:16
  28:18 29:19 31:24

correctly 7:5

cosmetic 10:11

costs 8:25 9:5

counsel 5:17 8:14
  9:24 10:1 36:13
  46:4,14 47:1

count 9:13

couple 5:21 6:1 10:11
  29:18 34:25 35:1,8
  36:7 37:13 39:3 41:5
  46:9

course 6:3 15:17

court 4:4,18 5:2,11
  6:13,18,20,23 8:3,
  11,18,21,24 9:1,7,20
  10:5,15,20,24 11:3,
  5,15,22 12:1,5,9,15,
  23 13:15 14:19 15:2,
  23 16:2,4,23 17:2,
  13,18 19:24 20:4,18
  21:5,10,24 22:2,10,
  15,18 24:10,16 25:5,
  17 26:8,24 27:5,11
  28:17 29:16,21 30:1,
  4 31:12 32:1,25
  33:3,24 34:16,22
  36:8,10 37:12 38:6,

  10,16,23 39:2,9,17
  40:1,5,13 41:15,19,
  22,23 42:2,5,10,12,
  15,25 43:4,7,8,12,
  18,25 44:17,21,23
  45:10,12,15,18 46:2,
  8,14,15 47:9,11,15,
  17,25 48:3

court's 14:15,17
  20:14 25:7 28:23
  42:19 43:19,24
  45:13 47:16

courthouse 38:19

courtroom 20:5
  24:18 25:19

courts 9:3 28:1

cover 4:21,23 31:23

criteria 13:23 42:7

critical 29:2

criticism 29:10

crunch 30:12

Cubberly 4:10 40:19,
  24 41:18 42:1,9,11,
  13,16 43:2,5,9,13,23
  44:3,7,16,22,24
  45:17,25

Cubberly's 12:16
  44:13

current 29:6 30:3

currently 20:14 21:18
  29:24 33:5

cut 22:14

cutoff 30:3 31:11

Cutter 4:9 14:17,19
  17:10 25:2,6 38:5,15
  39:1 48:2

## D

**dark** 24:21

**date** 11:16 15:20,22 18:24 30:24

**dates** 29:2,24 30:7,8, 9 33:1,9,10,20,21 34:25

**day** 18:4

**days** 7:4 11:2 22:18, 25 24:8,9,14,20 25:14 35:10,11

**de-coordinated** 35:15

**de-designated** 32:20

**deactivation** 30:21

**deadline** 8:5 25:11 32:14

**deadlines** 23:5

**deal** 12:10 25:1 35:15,20 44:12

**dealing** 27:17 42:23

**dealt** 27:14 43:7

**debate** 29:4

**December** 46:17 47:21

**decide** 17:6 35:21 40:6 45:16 47:22

**decided** 21:17 47:14

**decision** 6:8

**decoupled** 35:14

**deeming** 41:11

**defendants** 7:18,19 40:7

**defense** 38:8

**defer** 9:21 47:10

**defined** 29:25

**demanding** 22:24

**depend** 33:15 37:18 39:10

**depending** 16:10 23:8,17

**depends** 38:16

**deponents** 29:3 32:10 47:19

**depos** 32:5 33:6,8,12

**deposed** 37:11

**deposition** 5:1 31:15 35:4

**depositions** 25:13 28:13,24 29:1,4,23, 24 32:16 33:17 35:17,19,21

**determine** 40:16

**deterrent** 26:18

**diagram** 45:7

**diagrams** 43:10

**dialogue** 30:16

**difference** 8:22 22:3

**differences** 9:8 16:8

**different** 13:12 15:25 16:9,14 18:10 27:9 34:19 36:3 44:5

**difficult** 26:1 27:20

**directly** 21:21

**disagree** 27:6 44:11

**disagreeing** 41:23,24

**disagreement** 36:25

**disappears** 37:5

**disappointing** 35:6

**disclosure** 25:15

**discovery** 6:16 12:24 13:2,14 18:14 20:17 23:8,17 25:10 28:6, 12 29:20 30:3 31:11 34:14 38:18 47:3,4

**discretion** 14:4

**discuss** 18:3,17 27:1 36:15

**discussed** 34:4,5 46:20

**discussing** 18:15

**discussion** 19:15 28:3,8 39:3 46:14

**discussions** 9:2

**dismissal** 41:19 42:3

**dismissed** 38:7,9

**dispositive** 19:9 21:12,14 23:1,10 26:15 36:21 46:23

**dispute** 21:21 32:8 41:2 44:1

**disputes** 9:12 47:3

**disputing** 41:10

**distinguished** 29:20

**docket** 5:25 23:2 24:18,22 42:24

**documents** 28:17,19, 20,21 32:22 33:18 35:24

**dodge** 39:21

**Doe** 5:1

**doing** 18:23 32:22,23 33:9

**drawing** 13:3

**drilling** 44:5

**disclosure** 25:15

**duty** 16:11 22:13

## E

**earlier** 10:6 36:16 41:12 43:19

**early** 18:16 19:3 22:18

**earth** 13:2

**easier** 12:15,16 25:1

**easy** 9:20 11:7 12:9

**Eddie** 4:11 14:21

**editorial** 12:18

**educate** 27:18

**effective** 35:18

**efficiency** 14:25 16:2

**efficient** 15:17,18 31:25

**effort** 35:11 47:5,21

**eight** 24:25 29:23

**either** 9:13 14:14 34:23 36:6,14,21

**elicit** 11:9

**emotional** 12:21

**enormous** 27:23

**enter** 8:6 11:17 12:1 41:11

**entered** 7:1 8:15 10:8 44:1

**entertain** 16:3 25:24

**entirely** 14:3,4

**entitle** 22:1

**entitled** 33:18

**essentially** 5:23

**establishes** 38:6

Index: dark–establishes

**estimate** 23:25

**event** 13:20 15:20 37:15

**events** 22:4

**everybody** 4:4 5:18 11:11 37:4 46:5,11

**everybody's** 23:24 46:15

**evidence** 20:25

**evidentiary** 15:9 16:19 19:1 20:1,23 36:20 43:19

**exactly** 8:11 21:7

**example** 15:10 21:4, 22 22:6,9 26:14,15, 23 37:11,20 45:4

**excuse** 5:18 46:5

**exist** 9:9

**existing** 46:21

**expect** 4:7 16:25 34:7 36:6

**expedited** 19:8

**expert** 19:2 25:15

**experts** 16:20 37:21

**explain** 14:11

**extended** 23:10,11 25:11

**extensive** 5:25

**extent** 4:24 34:11 37:20 39:12 45:19 47:2

---

**F**

**fact** 9:12 18:24 21:17 25:10 29:3 37:3 42:18

**factors** 13:23 18:10

**facts** 21:1,20,25 44:3

**factual** 44:14 45:11

**fair** 24:16 27:11 40:1, 20 45:25

**fall** 16:6 42:6

**far** 10:3 22:7 34:18 44:13

**faster** 29:10

**feature** 16:12 22:4,7

**February** 43:24

**feel** 33:18

**fees** 8:23 9:4

**felt** 13:11 14:8

**figure** 26:1

**figured** 32:22

**file** 47:21

**filed** 11:23 12:3 44:17

**final** 29:5 45:20

**finally** 5:21

**find** 30:8 35:11 41:6

**finger-pointing** 13:16

**firm** 5:16

**first** 5:3,9 18:4,21,24 19:20 24:4,5,8 29:17

**flag** 30:10 31:9 32:2

**flagged** 34:11

**flagging** 30:13,16 33:19

**flesh** 28:4

**focused** 27:3 30:20

**follow** 17:25

**following** 25:8

**formulate** 8:1

**forum** 6:8 9:13 36:12 40:2,11 45:9,11

**forward** 31:3 32:15, 19 33:10,17

**found** 12:5

**four** 5:12 15:11 20:8 22:25 24:20 30:9 36:22

**fourth** 5:15

**frames** 16:1

**frankly** 9:22 17:19 21:12 38:14

**free** 19:16

**Fridays** 24:21

**friendly** 4:23

**front** 28:6

**full** 14:9

---

**G**

**gained** 16:2

**gathered** 6:17

**Gee** 38:17

**general** 29:19

**generally** 15:4

**getting** 22:25 27:15 32:16 33:18,21 39:7 42:22

**give** 7:14 8:5 11:2 14:8 24:15 26:14 31:5 42:10

**given** 14:3 42:21

**gloss** 13:7

**go** 6:6 11:8 18:12 20:12 21:21 25:13

31:3 36:13 37:8,10, 16 38:20 40:2 46:7

**goes** 23:2,8,16

**going** 5:5 7:22 8:3,11 11:5,8 12:13 14:24 16:13,14 17:16 19:21 20:19 21:3,4, 11,17 23:22 24:2 25:18 26:13,15 27:6, 16,18,22 28:2,15 31:6,8,10 32:11 33:14 34:4,5 35:1,9, 12 36:11 37:18 40:6 42:19 44:7 45:19 47:7,22

**good** 4:4 22:6 26:8 32:1 35:5 37:8

**gotten** 10:2 33:23 35:3

**govern** 40:17,23

**governed** 43:25

**granting** 5:3

**great** 9:21 11:3

**ground** 13:12 41:10

**grounds** 35:2

**group** 9:22

**groups** 9:10,25 28:25

**guess** 5:19 8:3 12:17 13:19 24:8,10

**guidance** 32:19

---

**H**

**half** 36:23

**handle** 24:21

**hands** 47:16

**happened** 13:3 22:7 26:17 35:5

**Transcript of Proceedings**                    **In re: Uber Rideshare Cases**

happening 42:21

happens 20:8,12
  36:18 37:4 39:5 42:8

happy 9:21 25:24
  27:12 42:10

hard 23:25 35:7

hear 4:7 13:10 17:5
  29:16 34:16 43:2

heard 6:11 8:5 12:12
  14:15 35:8 41:14
  44:9

hearing 5:18 11:18
  14:14 15:13 19:17
  23:1 30:15 34:2
  46:12 47:21

held 8:23

help 6:1 11:9 29:11

helpful 9:16 11:25
  20:7

high 22:22

higher 29:5

historical 21:1

hold 21:11

holdback 8:24 9:4
  10:22

Honor 7:20 8:10,20
  9:16 10:13 11:1,21,
  25 12:7,13 13:9
  14:18 17:1 21:2
  24:12 25:2 26:3,9
  27:2 30:10,13 31:9
  35:25 36:9,19 37:6
  38:4 39:11,19,24
  40:4 41:8,11 43:3,22
  44:16 45:25 46:1
  48:2

Honor's 16:18 20:2,
  10 29:11 32:18
  36:17 39:21 40:11,

22 41:3

hope 14:5 46:17

hopefully 6:11 13:5
  33:20 34:10

hours 35:18

hypothetical 38:18
  39:4

hypothetically 37:16
  38:11

---

**I**

I.e. 22:2

idea 16:4,18,21 31:22

ideally 42:17

identified 7:23

identify 4:18 7:23
  9:11 36:24 38:24

identifying 40:21

imagine 20:23 27:6
  30:13,22

imbibed 47:23

impact 33:9

importance 31:7

important 8:7 12:23
  13:3,4 14:8,10 38:6

incident 16:13 41:1

incidents 40:9

inclination 24:20

inclined 17:1

included 5:24

including 46:20

indicated 47:19

individual 15:5 24:1

individualized 22:17

individually 31:24

inevitably 23:16

informal 19:15 47:4

informally 27:2

information 17:8

ingredients 14:2

initial 20:20

initially 7:2

injuries 12:22

injury 15:4 16:16

input 14:9

inside 22:7 26:17

instance 16:7

intend 4:23

interesting 13:21
  16:4

interim 20:12

interrupt 5:5 32:25

introduce 20:25

involve 12:19

involved 40:9

involving 32:6,7

issue 6:7 13:5 17:19
  18:13,17 19:2,10
  21:22 32:2,6 33:20
  36:12 39:25 44:15

issues 5:13 7:23
  14:13 15:9,12 16:17,
  19 17:14,15 18:3,18,
  25 19:1,2,13,22,25
  20:1,23 22:12 23:13
  27:14,15,17,20,25
  29:18 30:10,11 31:8
  32:9,13,16,20 33:8,
  16 34:1,5,10 35:22
  36:10,14,20 37:7
  38:13 40:2 46:19,24

items 6:4 11:6

---

**J**

Jacqueline 4:14

Jane 5:1

January 25:13 30:3

JCCP 10:3 32:6 33:7,
  12 35:16 36:5 43:15

Jessica 4:15

job 12:6,15,16

John 4:11 14:21

joint 34:8 39:23 41:15

Judge 7:1 9:5,22
  10:12 14:23 24:5
  27:23,24 32:17
  33:25 34:3,7,9 41:18

judges 18:7

judgment 22:1 25:9

judicial 14:25

judicious 13:11

jurisdiction 44:20,22

jury 23:14

---

**K**

keep 11:14

kind 13:21 14:1 15:13
  16:11 18:20,23 23:6,
  16 29:19 30:12
  34:14

kinds 13:4

knew 31:10

knock 21:15

know 7:8,11 10:3
  11:5 13:13 14:6
  15:24 16:15,25

17:21,23 18:13,16,
25 19:14 20:8 21:1,8
22:21 23:23,25 24:2,
25 25:7 26:21 27:15,
24 29:6,12 30:24
31:2,3,8 32:22 33:21
34:4 35:12,14,19,22
36:3 37:14,16 38:2,
17,21 39:14,19
40:16 43:13 47:7,18

**knowing** 24:2

**knows** 44:17

**Kyle** 4:17 7:18 40:7

---

**L**

**landscape** 28:10

**largely** 33:14

**larger** 19:10 37:22

**law** 18:23 22:1 41:25

**lawyers** 35:16 37:6

**leadership** 9:3,10,25
10:1 28:25 32:3
35:17,20

**learn** 27:13

**learned** 41:20

**leave** 17:10,12 27:21
42:7 46:7

**led** 19:9

**leeway** 42:10

**legal** 15:12 19:25
22:12 23:13 37:7

**lend** 18:19

**lengthy** 24:17

**lessons** 41:20

**let's** 5:9 6:3 16:19
18:12 21:13 30:25
31:1 39:14 45:15,18

**letter** 35:12

**Levin** 4:8 6:15,19,22
8:18,20,22,25 9:2,8,
25 10:10,17,21,25
11:4 19:19,21,25
20:5,19 26:9 27:9
28:5,14,19 29:22
32:3 36:16 40:4 48:5

**Levin's** 5:16

**liability** 15:18,20
16:7,15

**limine** 15:10 20:23
46:23

**limines** 23:12

**limitations** 45:9

**line** 9:19,20 10:10,14
11:2 12:2 13:3

**lining** 7:21

**list** 4:22 36:11 41:9
43:22,25 46:3

**listened** 26:10

**litigation** 7:1 21:3

**litigations** 32:4

**little** 7:25 8:1 17:19
18:5 25:16 26:1,7
31:16 44:3

**live** 44:15,19,25

**lived** 45:1

**logs** 32:8,10

**long** 8:7 18:2 24:1

**longer** 24:6

**look** 21:18 27:18
31:20 44:18

**looked** 11:18 22:24
33:4

**looking** 19:4 28:1,2

**looks** 28:11

**looming** 32:14

**lot** 4:5,21 7:21 13:25
14:7 16:1,8 17:4
19:22 20:3 21:6
24:17 25:25 26:25
27:13 32:12 35:10
47:22,24

---

**M**

**main** 13:19

**making** 35:16 47:7

**management** 46:16

**mark** 21:14

**master** 9:12

**matter** 7:11 8:14 11:1
16:25 20:20 22:1
26:17 44:12,19,22

**matters** 5:22 24:22
42:20

**maximum** 41:7

**MDL** 7:1 9:3 10:3
25:12 28:21 32:7,12,
14 33:1,11,15,16
35:6,9,20 44:17

**mean** 9:21 13:1,11
17:18 26:4 27:14
36:23 37:12,24 38:5,
13 39:2

**means** 17:5

**meet** 25:21 26:5
30:14,25 45:19,20
46:6

**member** 28:25

**merits** 26:16 27:17
32:11

**met** 46:18

**Michael** 4:16

**mid-may** 23:20

**MILS** 36:20

**mind** 6:21 13:14 14:5
32:15 42:14

**mindful** 12:25 13:10

**ministerial** 5:22

**minute** 17:22 35:8
45:18

**minutes** 39:3

**missed** 6:1 11:19

**mix** 39:20

**mode** 21:11

**moment** 23:20 28:23

**month** 18:24 27:2

**months** 46:9

**motion** 4:25 5:2,3,10,
16 7:2,3 12:11 17:5
18:23 23:10,11
26:15 36:12,21 46:4

**motions** 15:10 19:9
20:24 21:12,14
22:12,17 26:12,25
36:6 43:20 46:23
47:8,20

**move** 32:15 33:10
35:1

**moving** 25:25 33:17

**multi-plaintiff** 15:14
16:24

**multiple** 13:22

**muted** 39:1

---

**N**

**nature** 21:16 24:18

Index: knowing–nature

**necessarily** 23:22
26:20 36:2

**need** 8:1,8 14:2,3
23:23 25:16 27:4
28:22 29:7,10,11
31:10 32:19 42:20
43:18 47:3

**needs** 25:11

**negotiation** 24:22

**negotiations** 9:2

**neither** 45:10

**nervous** 18:6

**never** 27:8

**new** 25:8

**night** 34:21

**nodding** 19:19

**Nominate** 38:8

**nominates** 38:8

**non** 6:8 36:12 40:2,12
45:11

**notice** 34:20 35:3

**noticed** 31:15

**notices** 30:6,18,25

**notion** 16:23

**number** 7:9 10:12,13,
16 23:14 28:11 29:5
45:21

**O**

**object** 16:24 20:25

**objection** 46:12

**objectionable** 24:23

**objections** 8:13 10:4,
6 11:16 12:3 35:23

**observation** 13:18

**obvious** 39:18

**obviously** 13:11 14:8
16:24 23:5 24:5 25:8
26:4 35:22,23 45:16
47:10

**occasionally** 33:4

**October** 4:1 8:14 10:9
23:21

**offer** 6:5

**okay** 6:19,22 8:3 10:5
11:4 12:11 13:15,19
15:16 17:13,18
18:13 21:11 22:15,
18 24:10,16 26:8
28:4 29:18 33:3
36:8,9 39:2 40:1,5,
13 42:5,13,25 43:5,
8,9 44:23 47:25

**once** 9:15 18:10
31:13 40:15

**one-day** 35:17

**ones** 11:7 33:13
38:21

**ongoing** 20:19 28:22
30:16

**open** 15:6 33:7,9

**operating** 26:21 36:1

**opportunity** 7:16

**opposing** 7:12

**order** 4:22 5:6,7,13
6:24,25 7:3,4,7,10,
12,20 8:6,15,23 9:6
10:2,8,12,16,22
11:2,6,18 14:6 15:9
25:4,23 41:10,11,16
42:7 43:24,25 44:8,9
45:12 46:21

**orders** 11:12,23 12:1,
4,10 27:23 41:19

42:2

**original** 8:23

**outside** 22:7 26:17
40:10

**overarching** 26:7

**overbreadth** 12:24

**overlap** 25:7 31:14
43:11

**overlapping** 18:25
37:21

**overly** 47:17

**owe** 34:25

**P**

**p.m.** 4:1 46:17 48:7

**pace** 29:6,11

**Pacific** 46:17

**parcel** 25:20

**part** 14:14 23:3 25:20
29:3 38:17 42:24
45:7

**participants** 4:5

**particular** 21:22
22:20 31:2

**particularly** 12:23
13:4 25:11

**parties** 5:22 6:9 12:25
18:18 25:21 26:5
32:4 39:12 46:18

**parties'** 14:6

**partner** 36:2

**parts** 29:23

**patterns** 42:18

**pencil** 19:7

**penultimate** 5:15,20

**people** 15:25 26:20
44:17 45:1,8

**percent** 8:23,25 9:4

**percipient** 37:23

**period** 11:15

**person** 28:25 35:3

**personal** 15:4 16:16

**pertaining** 6:7

**Phillips** 4:15

**physical** 12:21

**pick** 38:1 39:19

**picks** 38:7,9,11,12

**pieces** 25:25

**place** 7:1 8:7 36:25
37:3 41:2

**placeholders** 30:7

**plaintiff** 5:1 37:10
40:25

**plaintiffs** 4:8,9,10,12
12:22 14:22 17:15
21:21 28:12 37:23

**plaintiffs'** 8:12 9:24
24:7 38:7,12 44:4

**plan** 20:11 36:18,25
37:1 42:14,23

**pleading** 21:2 27:14

**please** 4:18 12:17
38:24 48:5

**pleasure** 48:4

**plenty** 28:3 31:5

**plow** 32:19

**PMK** 30:18,20,21,22
31:14 34:23

**PMKS** 31:10

**PMQ** 34:21

**point** 19:6 23:6,18
24:14 33:1 35:19
36:17 37:9 38:17
40:8 41:2 43:18
47:2,7

**points** 10:22

**policies** 30:22

**pool** 28:12

**position** 7:10 8:2
26:16 41:24 43:16
44:10 45:16

**possibilities** 37:13

**possibility** 37:17

**possible** 31:12 46:20,
21,22 47:12

**post** 15:21

**potential** 39:3

**potentially** 23:1

**practical** 8:4

**practice** 17:24,25

**precious** 20:10

**prepared** 7:14 11:18
17:12

**prescribed** 11:15

**present** 4:24

**presumably** 37:21

**presume** 47:14

**pretrial** 9:6 10:12,16
23:11 46:22

**pretty** 15:19 41:23

**prevented** 16:12

**previous** 45:11

**previously** 7:7,9

**primarily** 32:9

**primary** 31:6 32:5

**principal** 8:22

**principle** 38:6

**prior** 8:14 32:16
40:17 41:22 42:19

**prioritize** 38:18

**privilege** 32:8,10,13,
20 33:16

**probably** 5:14 15:25
18:5 19:12 24:14
30:19 34:3

**problem** 38:3 39:4
40:3,5,8

**problems** 28:15

**procedural** 27:15

**procedure** 40:14

**proceeding** 40:11

**proceedings** 5:24
48:6

**process** 10:22 13:22
28:22 40:15

**produce** 28:20

**produced** 28:19,21
32:10

**productive** 35:18
36:15

**proffer** 13:7

**progress** 35:16 40:20

**proportion** 14:2

**propose** 30:24

**proposed** 5:7 7:4,8,
10,12 10:2 11:12
13:22 19:4,5 22:3
25:23 30:7 41:16
42:23

**proposes** 41:8

**provide** 10:10,14

**psychological** 12:21

**purely** 39:4

**purposes** 39:16

**pursue** 16:22

**pushback** 25:18

**pushing** 33:9

**put** 21:7,13 31:19
34:19

---

## Q

**quash** 4:25 5:10
12:12

**question** 5:10 11:8
21:13 23:23 27:10
37:22 39:22 41:17
47:19

**questions** 21:16
22:13 34:15

**quick** 11:7 23:17

**quickly** 5:8 25:16
47:12

**quite** 5:25 13:20 14:7

---

## R

**raise** 8:1 15:7 17:15
21:16 36:14 48:1

**raised** 15:3 18:14,19
30:11

**raises** 37:12

**raising** 5:13

**ran** 37:25

**ranking** 13:20 14:16
17:10,16 37:15

**reach** 19:18 45:20

**reactions** 19:16

22:23

**read** 10:15 13:1 41:23

**reading** 9:18

**ready** 35:21 36:19
37:8,10 38:20 42:22

**realize** 29:8

**really** 13:12 14:3 17:4
18:11,14 21:14
26:12 27:3 32:4,6
39:15 41:6 42:18

**reason** 14:11 16:16
23:3 36:21 37:4,9

**reasonable** 40:20
43:1

**reasons** 33:23 43:10

**receive** 8:13

**received** 7:4 15:3
16:7 34:20 43:23

**recess** 46:13

**recipe** 14:1

**recognize** 41:24

**recognizing** 23:25

**record** 26:19 46:8,15

**recording** 26:21

**records** 11:24

**red** 7:21 9:18,20
10:10,14 11:2

**reflect** 11:24

**reflected** 9:5

**reflects** 14:6

**refuse** 27:8

**regard** 12:18 19:6
47:5

**regarding** 11:12
12:20,22 20:25
46:19

Transcript of Proceedings                                    In re: Uber Rideshare Cases

**related** 30:11

**reluctant** 18:1

**remain** 23:22 48:5

**remaining** 46:3 47:2

**remains** 23:18

**remarks** 22:21

**remember** 4:18 7:5

**reminded** 25:3

**remotely** 38:24

**repeating** 20:21

**replace** 38:8,15

**replacements** 36:24
  38:8

**reply** 22:25

**report** 6:16 30:21
  34:8

**reporter** 38:22 46:8

**reporter's** 4:19

**representative** 39:13

**representing** 9:23

**residency** 44:4

**resident** 41:1

**residents** 44:18,25
  45:2,5

**resolution** 18:20
  45:21

**resolve** 6:11 9:12
  17:22 24:19 37:16
  38:12 45:23

**resolved** 20:9 32:17
  36:20 38:7 39:11,15

**resolves** 38:19

**resource** 20:10

**resources** 26:24
  36:17

**respect** 5:22 6:10,24
  7:9 12:11 14:15
  27:23 34:20 35:6
  43:17

**respective** 37:25

**respects** 12:8

**respond** 29:14,15,17

**rest** 23:2 24:6 29:9

**review** 5:24 7:17 9:11

**reviewed** 6:25

**reviewing** 7:20

**revise** 11:6

**revised** 7:20 11:2
  25:23 46:21,22

**revisit** 32:21

**ride** 22:8 26:19

**Rideshare** 4:5

**right** 6:13 9:1 11:5
  12:15 15:23 19:24
  20:18 21:24 22:6
  23:2 25:5 29:21 30:4
  32:6 33:6,13,20
  34:22 37:13 38:9,11,
  16 39:5,6,9,15,17,20
  42:25 43:12,21
  45:15 46:11 47:9,25

**ripe** 31:3 47:3

**rise** 37:15

**risk** 20:21 39:21

**riskier** 18:1

**road** 13:6

**Robert** 4:13

**room** 28:3

**rough** 23:25

**round** 26:12

**Rubin** 4:14 24:11,12

26:3 38:4

**Rules** 11:15

**ruling** 5:2,12

**rulings** 37:7 40:11,
  17,22 41:12 42:19

**run** 13:5 16:20

---

**S**

**safety** 16:12 22:3
  30:21

**sake** 4:19

**Sargon** 23:12

**save** 9:17 34:21

**saw** 21:14

**saying** 24:13 32:9
  35:12 42:1,4 44:10,
  16,24

**says** 28:1

**scenarios** 45:11

**schedule** 19:4,9
  22:23 23:10,11,18
  26:6 36:17 46:22

**scheduled** 20:14
  34:24

**schedules** 29:8,9

**scheduling** 14:12
  22:20 25:4,23 28:8,
  15 30:12 46:19,21

**scorched** 13:1

**second** 7:13 45:7

**see** 10:20 11:15
  18:12 19:17 28:1,2
  29:7

**seek** 20:24 44:8

**seen** 27:20,22

**select** 17:20 37:13

**selected** 20:9 46:24

**selecting** 5:12

**selection** 5:11 23:14

**selective** 13:10

**sense** 14:23 15:12
  17:4 20:22 21:6
  25:25 27:5,13 47:24

**sensitive** 12:23 13:6

**sensitivity** 12:20

**sent** 30:6,18

**September** 25:4

**serve** 39:15

**session** 26:11

**set** 18:21 19:16 23:19
  29:24 31:6 33:1,13
  42:21

**setting** 18:3 46:16

**settle** 17:22 18:5

**settlement** 36:22

**seven** 30:5 35:17

**shame** 20:13

**shape** 35:5

**Shortnacy** 4:16 34:3,
  7

**shot** 19:20 28:9

**show** 35:9,12

**side** 8:12 14:14 16:6
  24:7 25:19 36:14
  42:21

**sides** 13:22 14:9
  37:2,24

**similar** 16:1

**similarly** 25:15

**simple** 9:15 29:3

Index: related–simple

**Transcript of Proceedings**                                    **In re: Uber Rideshare Cases**

| | | | |
|---|---|---|---|
| **simply** 39:19 | **standpoint** 17:9 | 12:14 39:24 41:8 | **take** 5:3,6,8,14,17,19 |
| **sir** 15:16 | **Stangvik** 45:9 | **submitted** 34:8 | 9:23 12:18 19:19 |
| **situation** 32:18 44:4 | **start** 19:10,15 23:15 | **subpoena** 5:1 | 20:2 24:2,6,10 25:3 |
| **six** 17:20 30:18 | 27:16,17 | **substantially** 16:9 | 27:11 28:9 31:23 |
| **sketched** 19:6 | **started** 18:15 | **Substituting** 39:15 | 35:21 43:18 44:8 |
| **slide** 25:15 | **starting** 17:7 18:17 | **suddenly** 35:11 | 46:23 |
| **slightly** 34:19 | **state** 12:21 17:24 | **suggest** 8:4,12 39:21 | **taken** 18:7 28:13 |
| **slotted** 23:15 | 40:10 45:5,6 | **suggested** 15:8 | 29:3,22 31:11 34:24 |
| **Smith** 4:17 7:18 8:9, | **statements** 14:7 | 17:20 28:5 | 43:15 46:13 |
| 17 11:9,21,24 12:3,7 | **stats** 30:20 | **suggesting** 13:2 23:9 | **takes** 20:6 44:10,12 |
| 30:15 40:7,14 42:14 | **status** 33:24 34:8 | 25:20 | **talk** 19:13,17 24:23 |
| 43:13,21 46:1 | **statute** 25:9 45:9 | **suggestion** 25:8 26:9 | 26:4,5 28:5 31:1,4, |
| **so-called** 13:1 | **steam** 37:25 | **suggestions** 25:19 | 18 36:11 45:18,22, |
| **solve** 38:2 | **steps** 10:23 38:19 | **suggests** 5:25 19:1 | 23 46:4,6,9 |
| **somebody** 7:14 | **stip** 11:22 | **suitable** 16:16 | **talked** 30:15 |
| 38:23 46:2 | **stipulate** 41:18,21 | **summary** 7:13 8:21 | **talking** 15:6 22:19 |
| **somewhat** 24:13 | 42:3 | 25:9 | 29:19 |
| **sorry** 32:25 38:23 | **stipulated** 12:4 40:14 | **summer** 37:6,7 | **tee** 36:6 |
| 43:4 | **stipulation** 40:17 | **supersede** 10:18 | **teed** 35:4 47:12 |
| **sort** 9:18 17:6 18:22 | 41:16,22 | **suppose** 18:6 31:12 | **tell** 4:22 37:3 44:13 |
| 19:6 21:10,16 22:11, | **stipulations** 11:12 | 37:17 38:10 | **telling** 17:6 |
| 13 23:11 26:12 | **stood** 13:12 | **supposed** 26:20 | **tells** 14:1 |
| 35:14 37:14,25 41:7 | **strategies** 13:13 | 30:14 | **ten** 24:8 |
| **sounds** 42:25 | **strikes** 18:1 | **sure** 31:20 | **tentative** 5:2,12 12:12 |
| **spare** 46:8 | **strongly** 16:24 | **surfaced** 34:1 | 14:17 23:4 24:20 |
| **speak** 4:20 27:8 | **struck** 19:14 21:2 | **surprised** 7:25 | **terms** 36:5 47:11 |
| **speaking** 17:23 38:24 | **struggled** 17:19 | **surveying** 28:9 | **terribly** 34:18 |
| **special** 9:12 | **stuff** 28:18 | | **thank** 6:22,23 8:17 |
| **specific** 22:12 29:20 | **stylistic** 7:22 | | 11:3,4 14:19 34:17 |
| **spectrum** 39:13 | **subject** 24:22 43:19, | **T** | 36:9 42:11 46:1 |
| **spend** 39:22 | 24 44:19,22 47:20 | | 48:2,3 |
| **spent** 13:20 | **submission** 42:15 | **table** 26:12 | **theory** 17:21 18:4 |
| **spot** 31:19 | **submissions** 38:1 | **tackle** 8:18 18:11 | **thing** 12:17 13:9 |
| **stand** 28:6 | **submit** 9:14,17,20 | **tackled** 27:20 | 15:19 25:2 37:9 |
| **standing** 11:10 | | **tactics** 13:2 | 41:19 46:3 47:6 |
| | | | **things** 7:8 9:15 15:21 |
| | | | 22:13 28:6 |

**Transcript of Proceedings**                                    **In re: Uber Rideshare Cases**

**think** 5:8,14,16 6:9
7:20 10:13 12:10,22
13:3 15:3,17 16:1,3,
6,7,8,18,21 17:3,4,
14,15 18:16,18 20:6,
9,16,22,24 21:3,6
22:11,16,19 24:1,12,
14 25:2,6,10,24
26:3,5,10 27:5,12
28:2,14,15,16 29:2
30:19 32:4 33:19
34:6,18 36:14,18
37:2 38:5,17 39:1,6,
11 40:4,20 41:5
43:6,10,15,17,22
44:11 45:12 46:3

**thinking** 18:22 19:10
22:20 39:22

**third** 5:10

**thought** 13:17 14:10
15:1,2 18:22 20:20
21:8,12 30:25 33:3
38:13 43:4

**thoughtful** 13:13 14:7

**thrash** 23:7 31:13

**three** 24:13,25 29:4,
23 30:10 36:22
47:19

**throw** 18:2

**ties** 18:14

**time** 4:19 5:9,14 8:1,
16 9:11 13:21 14:11,
24 16:1 20:2,3,5,10,
11 21:7 22:22 24:3
26:24,25 27:16 31:5,
20,25 32:19,21,24
33:17 34:12 39:22
44:12 45:2 46:10,17,
18

**time-consuming**
20:17

**timing** 36:17

**to-do** 4:22

**today** 5:14 23:24
39:25 45:16 46:20

**today's** 11:18

**told** 23:18

**tomorrow** 30:14 34:3,
5

**topic** 30:20 31:2

**topics** 30:23 31:1,13,
18,23

**transcribe** 46:8

**travel** 29:9

**treatment** 16:17

**trial** 5:13 15:15 18:21,
24 21:17 23:19,21
24:9,20 32:14 33:1,
10 42:22 46:25

**trials** 16:24 19:22
24:1,17 37:18

**tried** 11:13 14:10 15:5
30:19 36:16

**trouble** 9:18 18:9

**true** 28:14

**truly** 9:14

**try** 14:24 15:24 20:11
25:12 30:7 31:25
36:19 42:16 45:23
47:11

**trying** 12:6 15:11
29:1,2 32:5 33:22
37:25 39:12,21

**Tuesday** 4:1

**turn** 5:9 19:9

**turns** 15:18

**tussle** 35:23

**twice** 9:15

**two** 7:8 9:25 10:23
11:19 18:4 24:13,25
35:10,11 36:23
39:19 43:10,11 44:2,
5,14 45:10,21

**type** 30:12 39:14,15

---

**U**

**Uber** 4:5,13,14,15,16,
17 7:9,18,19 8:13
10:7 12:12 15:21
17:20 19:5 20:25
29:2 30:8,19 32:7,10
33:15 40:7 41:8
43:14,15 44:17

**Uber's** 17:9 38:17

**ultimate** 5:19

**understand** 28:7
35:25 42:12

**understanding** 33:11

**Understood** 42:1
45:17

**undertake** 18:2

**undertaken** 40:19

**underway** 36:5

**undisputed** 21:25

**unfolded** 22:5

**unfortunate** 36:2

**unfortunately** 7:16

**universe** 29:4 41:7

**unopposed** 41:13

**useful** 19:15 28:7

---

**V**

**vacation** 45:6

**value** 22:22

**variables** 13:23

**variety** 33:23

**various** 27:14 43:9

**Venn** 43:10 45:7

**version** 7:17

**view** 35:19 37:9 40:9

**voluminous** 32:11

---

**W**

**wait** 11:14

**waiting** 30:6,9

**Walt** 4:10

**want** 5:3,7 6:1,5 8:18
12:12 13:7,23 17:5,
9,10,15 18:11 19:19
24:10 25:22,23
26:24 28:9 29:15
32:15 34:16 37:24
38:1 39:8 42:2 43:2
45:23 46:4

**wanted** 25:3 31:5,9
35:25

**wants** 4:24 15:6 17:3
36:14

**way** 8:21 18:8 21:13
22:4,8 28:8 34:19
47:4

**we'll** 10:10 13:5 17:15
26:6 28:16 32:20
35:20,21 38:2 42:14,
15 47:11

**we're** 6:9,15,17 7:20,
22 12:13,14 13:10
16:13 17:12,16 18:2
27:15 30:9,14,15
31:4,10,17 32:22
33:7,8,21 34:18

35:1,5,12,23 37:8,9
44:5,14,24 45:19
47:7

**we've** 13:1,10 18:15
23:15 24:6 29:3,22
30:6 33:21 34:20
35:3,17 36:19 40:19
46:19

**website** 33:4

**week** 8:9 9:17 10:7
24:21 29:6 36:6,7

**weeks** 24:13,25 25:1
35:8

**weighing** 18:9

**weight** 14:3

**went** 26:19 45:5

**WHBE** 5:1

**whittle** 42:17

**Williams** 4:11 14:20,
21 15:16,24 24:4,5

**willing** 31:4,17

**wisdom** 15:3 16:7

**wise** 6:16

**withdraw** 5:16 36:12
46:4

**witness** 29:9

**witnesses** 30:5
31:14,23 35:10
37:19,23

**wonder** 14:14

**work** 9:11,13 13:25
14:7 26:2 30:7 32:5
33:15,22

**worked** 32:16 33:8
34:11,12 35:7,11

**world** 27:6

**worth** 12:19 13:17

18:17 22:19 39:2

**wouldn't** 16:13 22:2
40:23 44:11

**written** 5:12 8:13

**wrong** 25:18

---

**Y**

---

**yeah** 6:20 27:12
29:13 31:22 33:5
38:10

**year** 36:23 47:14

**yesterday** 19:11,12
30:18 31:19

**you-all** 9:22 17:4
19:4,12 22:19,24
23:6 24:23 27:18
31:13 33:24 45:20
48:3

**Yup** 20:4 21:5