UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No..: 3:23-MD-03084 CRB<br><br>JOINT LETTER BRIEF REGARDING DECEMBER 12, 2024 PRIVILEGE DISPUTE<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

Pursuant to PTO No. 20 (ECF No. 1808), the Parties submit this joint letter regarding Plaintiffs' second set of challenges to Uber's privilege claims.

## I. Plaintiffs' Position

**Second Round of Resolving Privilege Disputes**. Uber asserted privilege for approximately 13,900 entries regarding Tranche 2 Custodian documents, totaling approximately 40,000 privilege log entries as of December 1, 2024.[1] As before, assessing Uber's privilege claims is exceedingly difficult because Uber designates thousands of documents *en masse*, and only after Plaintiffs review tens of thousands of log entries within a short time span does Uber provide additional information to allow Plaintiffs to ascertain privilege claims.[2] Worse, since Uber first produced a log on April 16, 2024, it has withdrawn privilege assertions on just 677 documents, and has not changed its position on *any* proposed sample documents following this Court's November 27, 2024 Order.

To summarize the process preceding this second round of challenges: Uber produced its first Tranche 2 privilege logs on October 24, 2024 and October 31, 2024. Plaintiffs sent a challenge letter to Uber on November 14, 2024, which attached a chart detailing each of Plaintiffs' specific challenges to 5,611 of the ~13,900 entries. Along with the letter, Plaintiffs notified Uber of the 45 samples selected pursuant to PTO 20. The parties met and conferred over the course of two weeks, resolving general issues and addressing the samples. Of the 45 samples, Uber agreed to produce 21 documents in full, 12 documents with redactions, and maintained its claim of privilege over only 12 documents.[3]

In short, Uber agreed that approximately 73% of the Tranche 2 samples were erroneously designated as privileged. Uber made this same concession as to appropriately 84% of the samples Plaintiffs selected from the Tranche 1 privilege log.[4] *See* Dkt. 1812 at 1-2. It cannot and should not continue to remain Plaintiffs' burden to sift through thousands of plainly erroneous privilege designations to force Uber to conduct an appropriate and required privilege review. Plaintiffs challenged 5,611 entries on the Tranche 2 log. Assuming 73% of those are also mis-designated, there are 4,096 documents that Uber is improperly withholding.

Depositions of Tranche 1 and 2 custodians are already underway in the JCCP and rapidly approaching in the MDL. Efforts to advance this litigation—not to mention coordination with the JCCP— will stall if Plaintiffs do not have adequate time to digest thousands of potentially critical documents before taking depositions.[5] As such, Plaintiffs additionally request the Court order Uber to produce any de-designated documents either along with the revised privilege logs or within 7 days of producing the revised privilege logs, so that depositions might occur on schedule.

---

[1] Uber's claim that it has produced "over 540,000 documents on an expedited timeline" is misleading. First, Plaintiffs' records show fewer documents produced (approximately 535,000 documents). Second, approximately 24,000 documents relate to Defendant Fact Sheets and nearly 90,000 documents were produced under PTO 5 with the original privilege logs produced in the underlying litigation.

[2] The Court noted these issues in its November 27, 2024 Order (ECF No. 1908) whereby the Court ordered Uber to provide updated privilege log entries with additional information regarding certain entries (*id.* at 9) and required Uber to "ensure that its privilege log descriptions are accurate and that attorneys are clearly identified." *Id.* at 10. The Court also noted "systemic errors" in Uber's privilege log entries, stating that log entries indicated that documents were "prepared at the direction of in-house counsel," but Uber did not provide evidence to support those assertions" and failed to properly designate all attorneys involved with the document in the "Privileged Name(s)" column. *Id.* at 15. These issues remain in the logs at issue.

[3] Attached as Exhibit A is a copy of these privilege log entries as produced to Plaintiffs. Attached as Exhibit B is a comparison of Uber's log entries compared with Uber's detailed descriptions below.

[4] Plaintiffs have not made *en masse*, categorical privilege challenges without individualized support, as Uber alleges. Rather, Plaintiffs challenge each privilege entry where Uber failed to meet its burden that the document in question was privileged.

[5] To expedite Uber's "re-review", Plaintiffs provided a chart along with every challenge letter detailing their specific challenges to each privilege log entry.

**Specific Documents.**[6] As to privilege claims still at issue per PTO 20, Uber has not met its burden showing that these documents are privileged. Below are 13 privilege log entries currently at issue.

**JCCP_MDL_PRIVLOG028868**[7]
This is an October 26, 2021 email notification to Matt Baker (Uber's Community Operations Manager) notifying him that Margalit Kluger, (Uber's Senior Operations Manager[8]), left a comment on a document titled "US&C Safety Ops - Safety Media Business Standard." Uber asserts attorney-client privilege stating this is a "confidential e-mail seeking and providing legal advice from in-house counsel regarding use of cameras or recording devices in vehicles." But neither Matt Baker nor Margalit Kluger are attorneys, and it does not appear that legal advice was sought or provided. While in-house counsel Daniel Kolta and Jennifer Handley are noted in the "Privileged Names(s) column", Uber fails to state how they are involved with the non-attorney comment. Additionally, the title of the document suggests that the dominant purpose of this communication was not to secure or render legal advice.[9]

**JCCP_MDL_PRIVLOG029996**
This is a September 15, 2021 email with the subject line "Re: Survivor Support Fund/Broadspire updates." Uber claims attorney-client privilege arguing this is a "confidential e-mail thread provided for purposes of discussing legal advice from in-house counsel regarding collaboration with Uber's sexual assault prevention partner(s)." This is an email between two non-attorneys, Katherine Gaspar, Uber's Senior Regional Operations Manager[10], and Cory Freivogel, Uber's U.S. & Canada Safety Operations Lead.[11] In house counsel appear on the bcc line. In Uber's revised November 22, 2024 log, the attorneys appear in both the cc and bcc lines. From the information provided, it does not appear that the dominant purpose of this communication was to secure or render legal advice.

**JCCP_MDL_PRIVLOG036737**
This is an October 8, 2019 email with the subject line "Re: SA/SM - message to claimant re contact by Crawford." Uber claims attorney-client privilege stating this is a "confidential e-mail thread discussing legal advice from in-house counsel regarding reports of driver sexual assault or sexual misconduct." The email is from custodian Tracey Breeden (Uber's former Head of Global Women's Safety and Gender Based

---

[6] Tranche 2 documents JCCP_MDL_PRIVLOG029996, JCCP_MDL_PRIVLOG039270, and JCCP_MDL_PRIVLOG034111 are similar; counsel is added to the cc line on what appears to be a dominant business purpose communication. These are similar to Tranche 1 sample JCCP_MDL_PRIVLOG006370 where the Court found that Uber failed to show that these are "anything more than an instance of "in-house [] counsel [] 'copied in' on" a business communication, or that the draft "would [not] have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." ECF 1908 at 5 (internal citations omitted).

[7] This document is similar to Tranche 1 sample JCCP_MDL_PRIVLOG019282 which the Court found not privileged because "[a]s with other collaboratively edited documents discussed above, the dominant purpose of the overarching relationship among the participants here appears to have concerned business purposes rather than legal advice." ECF 1908 ps. 12-13.

[8] Margalit Kluger Tamir, LinkedIn, https://www.linkedin.com/in/margalit-kluger-tamir-6a2859a8/details/experience/ (last visited December 11, 2024).

[9] *See Los Angeles Cnty. Bd. of Supervisors v. Superior Court* (2016), 2 Cal.5th 28, 297 (holding court must look to the dominant purpose of the underlying communication or document); *Montebello Rose Co. v. Agricultural Lab. Relations Bd.*, (1981) 119 Cal.App.3d 1, 31-32 (same).

[10] Kat G. LinkedIn, https://www.linkedin.com/in/katgaspar/ (last visited December 11, 2024).

[11] Cory Freivogel, LinkedIn, https://www.linkedin.com/in/cory-freivogel-15a17495/ (last visited December 11, 2024).

Violence[12]) to Steffi Bryson, Uber' Senior Manager and Head of Safety and Consumer Protection Public Policy.[13] In-house counsel appear on the cc line. From the information provided, it does not appear that the dominant purpose of this communication was to secure or render legal advice.

**JCCP_MDL_PRIVLOG039363**
This is a January 13, 2017 document titled "Safety Notes (attorney/client privileged)." Uber asserts attorney-client privilege and argues this is a "confidential document prepared at the direction of in-house counsel regarding preparation and drafting of Uber's Safety Report." The only person shown on the privilege log's data for this entry is Travis Kalanick, Uber's CEO at the time. Uber only denotes "Uber Legal Department" in the Privileged Name(s) column, failing to specify who provided Kalanick notes regarding Uber's Safety Report. Since Kalanick is the only person listed in the "Google Collaborators" column, it appears no attorney authored the document or had the ability to edit or comment on it.[14]

**JCCP_MDL_PRIVLOG039270**
This is a June 25, 2015 email with the subject line "Re: Safety Report – Update." Uber claims attorney-client privilege asserting this is a "confidential e-mail thread seeking legal advice from in-house counsel regarding preparation and drafting of Uber's Safety Report." This is an email from Trais Kalanick (Uber's former CEO) to Betsy Masiello[15], Uber' Senior Director of Global Public Policy. Seven other non-attorneys are cc'd on the email, as well as two in-house counsel. No legal advice appears to have been sought or provided. Rather, Uber's CEO appears to be asking for an update regarding the preparation of Uber's safety report. From the information provided, it does not appear that the dominant purpose of this communication was to secure or render legal advice.

**JCCP_MDL_PRIVLOG039202**
This is a document dated March 29, 2016 titled "JIRA: Best Practices for GMs." Uber asserts attorney-client and work product privilege, arguing this is a "confidential document prepared in anticipation of litigation by in-house counsel regarding IRT policies and practices for handling allegations of sexual assault or sexual misconduct." Based on the title of the document, it appears to be a JIRA for Uber's general managers. The document does not appear to have been created in anticipation of litigation, but rather was a document created in the regular course of business.

**JCCP_MDL_PRIVLOG034111**
This is a September 26, 2017 email with the subject line "Re: Min Age Analysis." Uber claims attorney-client privilege and argues this is a "confidential e-mail thread seeking and providing legal advice from in-house counsel regarding Uber's policies and practices for responding to allegations of driver sexual assault or sexual misconduct." The email is from non-attorney Scott Dwyer, Uber's Regional Operations Manager,

---

[12] Tracey Breeden, LinkedIn, https://www.linkedin.com/in/tracey-breeden-68061b13/details/experience/ (last visited December 11, 2024).

[13] Stephanie (Bryson) Swartz, LinkedIn https://www.linkedin.com/in/steffibryson/details/experience/ (last visited December 11, 2024).

[14] Uber's reliance on *Clark v. Buffalo Wire Works Co.*, 190 F.R.D. 93, 95-96 (W.D.N.Y. 1999) is unavailing. The *Clark* Court found notes there privileged because an affidavit confirmed that "[t]he entire purpose of keeping notes [] was to provide these notes to my counsel to assist them in representing me. [] [I]t was always my intent that these notations would be used in a legal context." *Id*. at 94-96. Uber does not present a similar affidavit from Mr. Kalanick, and its argument as to his intentions is pure speculation. And Uber's reliance on *Gramercy Grp., Inc. v. D.A. Builders, LLC*, 2017 WL 5179530, at *3 (D. Haw. Nov. 8, 2017) fares no better. There, the court found attorney client privilege did not protect the communications at issue as they "do not exclusively concern attorney-client communications; they are largely factual and pertain to matters central to this case." *Id*.

[15] Betsy Masiello, LinkedIn, https://www.linkedin.com/in/betsym/ (last visited December 11, 2024).

whose background is in marketing,[16] to custodian Frank Chang, another non-attorney who was either Uber's Head of Safety and Insurance Analytics or Director of Insurance and Safety Analytics at the time of the email[17]. Several non-attorneys are cc'd on the email and only one in-house is noted on the log. From the information provided, it does not appear that the dominant purpose of this communication was to secure or render legal advice.

**JCCP_MDL_PRIVLOG039352**[18]
This is a document dated January 12, 2024 entitled "AC Privilieged: [sic] Safety Report Executive Update." Uber asserts attorney-client privilege claiming this is a "Confidential PowerPoint discussing legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety." Despite labeling the PowerPoint "AC Privilieged" (and it is unclear who added that designation), based on the title of the document, it appears its dominant purpose was not to secure or render legal advice, but instead was to provide Uber's executives with a Safety Report update. The "Google Collaborators" column only list emails and Plaintiffs cannot determine who owns each address, but it appears to include a dozen non-attorneys, including Uber's Executives Dara Khosrowshahi, Jill Hazelbaker, and Andrew Macdonald.

**JCCP_MDL_PRIVLOG039431**
This is a February 3, 2018 email notification that Kate Parker (Uber's Global Director of Product Marketing, Brand Management and Strategic Initiatives[19]), left Carley Lake (Uber's Global Product Marketing Manager[20]), a comment on a document titled "Women's Safety Education One-Pager." Uber asserts attorney-client privilege claiming this is a "confidential e-mail memorializing a communication made to facilitate the provision of legal advice from in-house counsel regarding safety training for drivers or riders." But the comment was left by non-attorney Kate Parker on a document that appears to have a dominant business purpose based on its title. Uber denotes in-house counsel Scott Binnings in the Privileged Names(s) column but does not assert that any comments were made in response to legal advice Mr. Binnings provided.

**JCCP_MDL_PRIVLOG039488**
This November 25, 2019 email has the subject line "Re: Safety Creative: Updated Creative Approvals." Uber claims attorney-client privilege stating this is a "confidential e-mail thread provided for purposes of discussing legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety." The email is from non-attorney Nima Ramazan-Nia, Uber's Global Head of Planning and Operations, Brand.[21] It was sent to four individuals, none of which are denoted as attorneys. This email appears to have a dominant business purpose related to marketing with no direct attorney involvement.[22]

**JCCP_MDL_PRIVLOG039513**

---

[16] Scott Dwyer, LinkedIn, https://www.linkedin.com/in/scott-dwyer-pmm/ (last visited December 11, 2024).

[17] Frank Chang, LinkedIn, https://www.linkedin.com/in/frankchang/details/experience/ (last visited December 11, 2024).

[18] This document is similar to Tranche 1 sample JCCP_MDL_PRIVLOG007393 the Court found was not privileged because it appeared to be "a draft business-related communication that was subject to collaborative editing by both lawyers and non-lawyers, for both legal and non-legal reasons." ECF 1908 at 6.

[19] Kate Parker, LinkedIn, https://www.linkedin.com/in/katepparker/ (last visited December 11, 2024).

[20] Carley Lake, LinkedIn, https://www.linkedin.com/in/carley-lake-205a432a/ (last visited December 11, 2024).

[21] Nima Ramazan-Nia, LinkedIn, https://www.linkedin.com/in/nima-ramazan-nia-2711281/ (last visited December 11, 2024).

[22] Uber contends this email is privileged based on the Binnings Decl. ¶ 5. But Mr. Binnings does not assert he had any personal involvement with or is familiar with this email; he only asserts that he "reviewed" the document.

This is a June 20, 2019 notification email with the subject line "Uber.com | Women's Safety Copy Doc." Here, Carley Lake, a non-attorney, is notified that another person, non-attorney Catherine Sweitzer, an Uber Content Manager[23], left a comment on a document. Uber asserts attorney-client privilege and argues this is a "confidential e-mail memorializing a communication made to facilitate the provision of legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety." This a comment left by a non-attorney on a document intended to be posted to Uber's website. Uber denoted in-house counsel in the Privileged Names(s) column but does not describe their involvement, if any. From the information provided, it does not appear that the dominant purpose of this communication was to secure or render legal advice.

JCCP_MDL_PRIVLOG033799
This is a March 7, 2018 email with the subject line "Fwd: Sexual Assault Prevention: Business Plan / Next Steps." Uber asserts attorney-client privilege claiming this is a "confidential e-mail thread provided for purposes of seeking legal advice from in-house counsel regarding Uber's policies and practices for responding to allegations of driver sexual assault or sexual misconduct." On December 4, 2024, Uber informed Plaintiffs it would produce this document with redactions and produced the redacted email chain on December 5, 2024. This is an email from non-attorney Kate Parker to Tony West, Uber's Senior Vice President, Chief Legal Officer, and Corporate Secretary[24], Meghan Joyce, Uber's Regional General Manager[25], and Gus Fuldner. Other attorneys cc'd is redacted. The email is a forward from non-attorney Kate Parker (Uber's Global Director of Product Marketing, Brand Management and Strategic Initiatives[26]), and non-attorney Danielle Sheridan (Uber's Director, Head of US&C Safety, Standards, and Quality[27]). The subject of the email, "business plan" indicates that Tony West and Megan Joyce were asked about a potential business plan indicating that the email has a dominant business purpose.

JCCP_MDL_PRIVLOG039242
This is a July 1, 2022 email with a subject line "Re: US Safety Report Update." Uber asserts attorney-client privilege and argues that it is a "confidential e-mail thread seeking legal advice from in-house counsel regarding preparation and drafting of Uber's Safety Report." This is an email from non-attorney Pierre-Dimitri Gore-Coty, Uber's Vice President of Delivery[28], to non-attorney Andrew Macdonald. Almost 20 people are included on the cc line, including in-house counsel. Uber, after receiving Plaintiffs' initial selection of 45 samples, produced the document with redactions. The redaction is non-attorney Andrew Hasbun's (Uber's Head of Safety Communications[29]) comments in an email dated June 27, 2022. This email was sent on behalf of "Emilie, Kristin, Katy, Elise, and Jen." During the conferral on December 4, 2024, counsel for Uber confirmed that 4 of 5 individuals identified are non-attorneys: non-attorney Emilie Boman, Uber's Director of Global Public Policy, Safety and Delivery[30], non-attorney Kristin Smith, Uber's Head of Global Road Safety Policy[31], non-attorney Katy McDonald, Uber's Director of Data Analytics[32],

---

[23] Catherine Sweitzer, LinkedIn, https://www.linkedin.com/in/catherine-sweitzer/details/experience/ (last visited December 11, 2024).

[24] Tony West's Bio, https://www.uber.com/us/en/about/leadership/tony-west/ (last visited December 11, 2024).

[25] Meghan Verena Joyce, LinkedIn, https://www.linkedin.com/in/meghanvjoyce/ (last visited December 11, 2024).

[26] Kate Parker, LinkedIn, https://www.linkedin.com/in/katepparker/ (last visited December 11, 2024).

[27] Danielle Sheridan, LinkedIn, https://www.linkedin.com/in/daniellepsheridan/ (last visited December 11, 2024).

[28] Pierre-Dimitri Gore-Coty, LinkedIn, https://www.linkedin.com/in/pierredimitri/?originalSubdomain=fr (last visited December 11, 2024).

[29] This is the title included on Hasbun's signature block on the redacted email.

[30] Emilie Boman, LinkedIn, https://www.linkedin.com/in/emilieboman/ (last visited December 11, 2024).

[31] Kristin Smith, LinkedIn, https://www.linkedin.com/in/kristin-smith-5009226/ (last visited December 11, 2024).

[32] Katherine McDonald, LinkedIn, https://www.linkedin.com/in/katherine-mcdonald-8816b182/ (last visited December 11, 2024).

non-attorney Elise Maiolino, Uber's Global Head of Women's and Personal Safety Policy[33], and in-house counsel Jennifer Handley. This email appears to be an update regarding Uber's Safety Report and therefore has a dominant business purpose.[34]

## II.    Uber's Position

### Uber Has Worked in Good Faith to Resolve Privilege Disputes

Throughout this litigation, Uber has worked diligently and in good faith to produce over 540,000 documents on an expedited timeline. Given the scope and pace of discovery, it is no surprise that there are a large number of privilege claims—each of which is made only after an individualized review of the document. (ECF 1812-3, ¶ 27.) This is especially true where, in light of the nature of many custodians' roles, they worked closely with Uber's in-house counsel and routinely sought and obtained legal advice. Throughout this litigation and at Plaintiffs' request, Uber has voluntarily provided additional information beyond what is required by this Court's orders (ECF 396) to allow Plaintiffs to better evaluate Uber's privilege claims. For example, Uber has provided over a dozen additional privilege log fields, such as the names of Google Collaborators and "privileged name(s)" for documents in which an attorney does not expressly appear on the metadata and a separate tab of "privileged name(s)" with Uber job titles of privileged actors. All this undermines Plaintiffs' claim that "assessing Uber's privilege claims is exceedingly difficult." In reality, some of Plaintiffs' purported difficulties stem from their own strategic litigation choices, such as pushing for an ESI Protocol provision that prohibits email threading, generating separate log entries for each iterative email. As a result of treating every email within the same chain as a separate document, Plaintiffs often view emails myopically and fail to appreciate that an attorney was an active participant in the discussion and was not in fact "merely copied." For its part, throughout this meet and confer, and more broadly, Uber has continued to re-assess its privilege claims in light of court orders,[35] conferrals with Plaintiffs, and on its own initiative, withdrawing privilege claims where appropriate. By contrast, Plaintiffs have made *en masse*, categorical privilege challenges without individualized support, such as challenging thousands of documents simply because an attorney was listed in the "cc" rather than "to" column (at least in the top-level email). Plaintiffs have not meaningfully revised their overbroad privilege challenges.

Plaintiffs misleadingly argue that there are systemic issues with Uber's privilege claims based on its good-faith de-designations. It should go without saying that the sample set on which the parties conferred for this letter brief is not representative. It was hand-selected by Plaintiffs. Extrapolating from this sample set to suggest that around 73% of Uber's privilege claims are improper strains credulity. It is also misleading because it lumps together de-designations with instances where Uber produces a document with privilege redactions—confirming the original privilege determination but reaching a different call on the feasibility of parsing out that privilege with redactions. Uber's good faith changes in position are an indication that the iterative process set up by the Court is working. For their part, Plaintiffs must begin to withdraw their *en masse*, categorical challenges that lack individualized bases.

### The Court Should Reject Plaintiffs' Challenges to the 13 Privilege Log Entries:

**JCCP_MDL_PRIVLOG028868**:   This document is an email communication that is automatically-

---

[33] Dr. Elise Maiolino, LinkedIn, https://www.linkedin.com/in/dr-elise-maiolino-272bab2b8/?originalSubdomain=ca (last visited December 11, 2024).

[34] Uber claims this communication is privileged because Ms. Handley assisted in drafting the language. But Uber did not assert work product privilege here.

[35] Contrary to Plaintiffs' claim, Uber has de-designated (in part) documents following the court's 11/27 order. And Uber will continue to do so as required by that order.

generated by Google Docs reflecting comments, edits, and revisions, being made at that time on a document titled "US&C Safety Ops – Safety Media Business Standard," maintained on Google Docs. The underlying document addresses how Uber employees should handle media submissions in conjunction with a safety incident reported to Uber. The underlying document was shared with Senior Legal Director, Global Safety, Jennifer Handley and Global Safety Legal Director Daniel Kolta for collaboration and for the purpose of seeking their legal advice concerning the potential legal risks of the policies and of any public statements that may be made based on them. In the comment threads on the underlying document and that were carried into this email, Ms. Handley and Mr. Kolta discussed the safety policies and practices outlined in the underlying document, receiving requests for, and providing, legal advice. *See* Handley Decl. ¶ 6. The fact that the legal advice was provided on a business decision does not mean it is not privileged—the primary purpose of the discussion with Uber's attorneys was to seek their legal advice, not their business judgment. *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021); *Staley v. Gilead Scis., Inc.*, No. 19-CV-02573-EMC, 2021 WL 4318403, at *2 (N.D. Cal. July 16, 2021).

**JCCP_MDL_PRIVLOG029996**: The document is an email communication chain discussing legal issues regarding the use of Uber's trade name in connection with a program operated by a third-party partner organization. In the first email in the chain, Katherine Gaspar, then-Uber Regional Operations Manager, U.S. and Canada Safety, specifically asked Jennifer Handley for her legal advice asking if she had any "legal concerns" about a specific topic. Ms. Handley then added another in-house lawyer, Laura McAdams, Senior Counsel, Safety and Insurance, to the email thread, who also weighed in to provide legal advice. The email communications in this thread that followed as between Ms. McAdams, Ms. Gaspar, and Cory Freivogel continued to discuss Ms. McAdams's legal advice. *See* Handley Decl. ¶ 2.

Plaintiffs challenge the privilege claim because Ms. Handley and Ms. McAdams were on the "cc" line on the top-level email. But an attorney being in the "cc" field in the top-level email, without more, is not a good faith basis for a privilege challenge. As Uber has explained to Plaintiffs numerous times, an attorney appearing in the "cc" line is not an indication of their importance to the communication—when someone hits "reply all" in the Gmail system used by Uber, everyone other than the immediately-prior sender are placed in the "cc" field. This does not mean that the attorneys were "merely copied" on the communication, yet Plaintiffs have erroneously challenged numerous privilege claims because of the supposed "placement" of an attorney in the "cc" field. *See Heartland Consumer Prods. LLC v. DineEquity, Inc.*, 2018 WL 3861648 (S.D. Ind. Aug. 14, 2018); *Bartholomew v. Avalon Capital Grp, Inc.*, 278 F.R.D. 441, 448 (D. Minn. 2011). Uber has not logged any documents as privileged solely because an attorney is copied, but only after determining the document is privileged through an individualized review of the document. ECF 1812-3, ¶ 27.

**JCCP_MDL_PRIVLOG036737**: The Court should reject Plaintiffs' challenge here for similar reasons. The dominant purpose of this communication was to provide and seek legal advice. This document is an email chain discussing proposed communications with potential claimants to be made by a third-party claims administrator. The email chain was initiated by former Uber in-house legal counsel Lauren Shapiro, Uber's Director, Safety & Insurance Litigation, Katie Waitzman, Uber's Vice President and Chief Deputy General Counsel, and Maureen Frangopoulos, Senior Legal Director, Central Strategy and Special Matters, Global. In her initial email, Ms. Shapiro provided her legal advice concerning the draft proposed communication with potential claimants and Ms. Shapiro expressly asked for thoughts from the other email participants, including legal counsel Ms. Waitzman and Ms. Frangopoulos. In the subsequent emails, the other participants discuss or relay Ms. Shapiro's legal advice when responding to questions and giving input back to counsel to form legal opinions and advice to Uber, in light of the many legal risks involved in communicating with a potential claimant. *See* Frangopoulos Decl. ¶ 3. Beyond the attorneys' location in the "cc" field in the top-level email, Plaintiffs provide no basis for challenging this privilege claim.

**JCCP_MDL_PRIVLOG039363**: The first line of this document states: "Document Prepared for Legal Analysis: attorney/client privileged." What follows is a set of notes on Uber's business structures, teams, plans, and goals on safety and other issues at Uber prepared for the purpose of providing information in furtherance of legal advice. The document mentions the role of the legal department in several places. The metadata on this document is very limited. It shows that this document, dated January 13, 2017, was stored on then-Uber CEO Travis Kalanick's secure Google Docs account and that he was the sole custodian and "collaborator" with access to the document. Based on this information, this document appears to be a set of personal notes created by Mr. Kalanick, or by someone on his behalf, such as an assistant, for the purpose of obtaining legal advice from Uber's in-house counsel regarding these safety issues and Uber's future plans on safety issues. There is no indication that these notes were ever shared with anyone or used for any non-legal purpose. Because Mr. Kalanick left his role as CEO in 2017 (the same year these notes are dated), the only evidence available to Uber is the direct and unambiguous words on the face of the document, the strongest available evidence of a contemporaneous intent to facilitate legal advice, and the limited metadata. *All available evidence* leads to the conclusion that it was prepared for the purpose of facilitating legal advice. Personal notes made for the purpose of seeking legal advice are privileged, even if never read by an attorney. *Clark v. Buffalo Wire Works Co.*, 190 F.R.D. 93, 95-96 (W.D.N.Y. 1999). And a non-lawyers' intent to seek legal advice need not be express. *Gramercy Grp., Inc. v. D.A. Builders, LLC*, 2017 WL 5179530, at *3 (D. Haw. Nov. 8, 2017).

**JCCP_MDL_PRIVLOG039270**: This communication is privileged because its dominant purpose was to seek legal advice. This document is an email chain from June 2015 that includes Uber's then-General Counsel Salle Yoo and then in-house counsel Keith Yandell. In the initial email in the chain, then-Uber Senior Director of Global Public Policy Betsy Masiello, expressly requested "legal advice" from Mr. Yandell on a draft safety report linked to the email. Ms. Masiello also requested Mr. Yandell's legal advice concerning her team's analysis of various aspects of the safety report, which she included in the body of the email. Moreover, the body of her email reveals legal advice previously provided by Uber in-house counsel, including the potential impact of the report on then-pending litigation and future litigation. In the top email, Travis Kalanick, Chief Executive Officer of Uber at the time, provided additional information that in-house counsel would have used to provide the requested legal advice. *See* Binnings Decl. ¶ 6. Even if this communication was not sent to counsel (as it was here), the fact that Ms. Masiello relayed legal advice previously provided makes it privileged. *OwLink Tech., Inc v. Cypress Tech Co., Ltd*, 2023 WL 4681543, at *2 (C.D. Cal. June 29, 2023); *Dolby Lab'ys Licensing Corp. v. Adobe Inc*., 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019).

**JCCP_MDL_PRIVLOG039202**: This document is privileged because in-house counsel created it to provide legal advice to Uber employees in anticipation of litigation. This is a document that Maureen Frangopoulos drafted in March 2016. The document conveys legal advice for Uber employees that receive safety-related incident reports. The document details best practices for documenting and communicating about incident reports. Ms. Frangopoulos also gives legal guidance in this document on contacting the legal department to seek further legal advice regarding particular incident reports. This document was created to provide legal guidance to Uber employees about how to handle incident reports in anticipation of litigation related to the incidents and not to reflect Ms. Frangopoulos's business advice or judgment. *See* Frangopoulos Decl. ¶ 4. The fact that this document does not relate to a specific case does not mean it was not prepared in anticipation of litigation or is not privileged or protected work product. *See Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for United States Att'ys*, 844 F.3d 246, 253 (D.C. Cir. 2016) (no requirement that work product requires "anticipation of litigating a specific claim."). All that is required is that there is "more than a remote possibility of litigation." *Fox v. California Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988); *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004).

**JCCP_MDL_PRIVLOG034111**:  This document is an email chain concerning insurance risks or exposure and a driver minimum age policy.  Before this email chain was created, Danielle Sheridan (né Portugal), then-Head of Business Policy & Safety Operations for U.S. and Canada, and Frank Chang, then-Director of Insurance and Safety Analytics, asked Associate General Counsel Scott Binnings to provide legal advice concerning potential changes to the driver minimum age policy and related liability risks.  Ms. Sheridan and Mr. Chang, included Mr. Binnings in this email communication and shared the data and analysis contained therein to seek and facilitate his legal advice per his prior discussions with them at the time.  He used these emails, including the analysis and data contained therein, to assess the various legal issues implicated by a driver minimum age policy, including the litigation and liability risks of potential changes to such policy.  The email chain contains his legal advice concerning these matters. *See* Binnings Decl. ¶ 3.

**JCCP_MDL_PRIVLOG039352**:  This document is a draft presentation titled "Safety Report Review Update," dated September 2019, around two months before Uber publicly released its first U.S. Safety Report in December 2019.  As an in-house attorney at Uber, Scott Binnings had responsibility for providing legal advice in connection with the preparation of the Safety Report. Uber's Executive Leadership Team, led by Mr. Dara Khosrowshahi, Chief Executive Officer, had asked Uber's in-house counsel to provide Uber with such legal advice in their capacity as legal counsel for Uber.  The bottom row in slide 12 contains the legal advice that Mr. Binnings and other in-house counsel provided regarding a qualitative assessment of the Safety Report vis-a-vis pending and future litigation.  *See* Binnings Decl. ¶ 4. Uber is willing to produce a redacted version of this presentation that redacts legal advice found on the bottom of slide 12[36] of the presentation.

**JCCP_MDL_PRIVLOG039431**:  This document is an email that is automatically-generated by Google Docs to reflect that comments, edits, and revisions were made on a document titled "Women's Safety Education One-Pager," maintained on Google Docs.  Kate Parker, then the Global Director, Product Marketing, Brand Management & Strategic Initiatives at Uber, shared the underlying Google Docs document with Scott Binnings and other Uber in-house legal counsel Bob O'Leary, Dalene Bramer and Maureen Frangopoulos for the purpose of seeking legal advice concerning the document's proposed language, project ideas, and policies.  Specifically, in the comment on the document that is reflected at the top of the email in question here, Mr. Binnings provided his legal assessment and advice concerning a particular proposal discussed within the underlying document.  In the second comment in the document that is reflected in the email, Ms. Parker responded to that advice.  In the other three comments, Ms. Parker reveals the legal advice that in-house counsel previously provided concerning various proposed policies discussed in the underlying document, and she requests further advice or approval from Mr. Binnings and former in-house counsel Bob O'Leary concerning those policies. *See* Binnings Decl. ¶2.  Plaintiffs incorrectly assert that the email contains only a comment from Ms. Parker directed to Carley Lake.  The automatically generated email was sent to Ms. Lake (perhaps because she was "tagged" in the underlying document), but Plaintiffs have no basis for assuming the email contains a comment directed to her and does not include a discussion with counsel.  To the contrary, Uber provided Plaintiffs with Mr. Binnings' name in the "Privileged Name(s)" field of the privilege log because he was not included in the other metadata, and stated in the log that it included communication with counsel.  The Court should reject Plaintiffs' challenge.

**JCCP_MDL_PRIVLOG039488**: This communication is privileged because its primary purpose is to seek legal advice.  Uber Head of Operations, Brand Experience, Nima Ramazan-Nia, addressed the initial email in the chain to then-in-house counsel Jane Pollack, then-in-house counsel Amos Davis, and Jodi Kawada

---

[36] The page numbers refer to slides 1-14 of the presentation and do not include the cover page.

Page, formerly on Uber's Communications team and currently the Chief of Staff for Uber's Chief Legal Officer, seeking legal review and approval of a separate presentation concerning safety-related marketing. After this initial email, Katie Waitzman was added to the email thread. Ms. Pollack, Mr. Davis, and Ms. Waitzman provided detailed legal advice through comments on the separate presentation, in light of the legal implications and risks related to Uber's public communications concerning safety issues and previous instances of litigation concerning the same. Other emails in the chain discuss or respond to the legal advice being provided by these Uber in-house lawyers. The final, top-level email in the chain does not include Ms. Pollack or Ms. Waitzman, but relays the legal advice to four recipients and continues to discuss the legal advice. *See* Binnings Decl. ¶ 5.

**JCCP_MDL_PRIVLOG039513**: This document is an email communication that is automatically-generated outlining the comments and revisions being made at that time on a document titled "Uber.com | Women's Safety Copy Doc," maintained on Google Docs. The underlying document was a draft public communication intended for Uber's website. Jennifer Handley was invited to review, edit, and collaborate on this document, as were then in-house lawyers Tracey Merwise, Monique McNellie, and Maureen Frangopoulos in order to provide legal advice in light of the legal risk implicated by any Uber public statements or policies related to rider safety. In the first comment in the email, Ms. Handley provided legal advice and asked two other in-house counsel, Ms. Frangopoulos and Ms. Merwise, to provide legal advice on any insurance litigation and employment issues. The other comments in the email also contain legal advice from Ms. Handley, Ms. Merwise, Ms. Frangopoulos, and Ms. McNellie related to the legal implications of various statements in the draft communication. *See* Handley Decl. ¶ 3.

**JCCP_MDL_PRIVLOG033799**: This document is an email chain concerning Uber's sexual assault prevention plan. The first of the two emails in the communication chain is redacted because it is privileged. Kate Parker, then-Head of Safety and Insurance Brand, addressed that email to Uber's Chief Legal Officer Tony West and to Uber's Regional General Manager, U.S. and Canada, Meghan Verena Joyce. Ms. Parker further included three in-house lawyers on that email: Katie Waitzman, then-Legal Director for Employment Dalene Bramer, and Scott Binnings. Ms. Parker copied only one non-attorney: Gus Fuldner, then the Vice President of Safety and Insurance. Prior to the now-redacted email, Ms. Parker requested that in-house counsel provide legal advice concerning the sexual assault prevention plan that Uber was developing during that time. To that end, Chief Legal Officer Mr. West hosted a meeting to discuss the plan days before Ms. Parker's email. Mr. West, Katie Waitzman, Dalene Bramer, and Scott Binnings attended the meeting to provide requested legal advice. Ms. Verena Joyce also attended that meeting. After the meeting, Ms. Parker sent the redacted email to Mr. West, and she copied Ms. Waitzman, Ms. Bramer, and Mr. Binnings for the purpose of requesting further legal advice from in-house counsel concerning Uber's sexual assault prevention plan. The redacted email discusses and contains the legal advice that Mr. West had provided during the meeting with Ms. Parker and Ms. Verena Joyce, and Uber's plans for seeking and receiving further legal advice from Mr. West and other in-house counsel concerning the sexual assault prevention plan. *See* Binnings Decl. ¶ 7.

**JCCP_MDL_PRIVLOG039242**: This document is an email communication chain that includes attorneys Jennifer Handley, Katie Waitzman, Scott Binnings, and former Chief Deputy General Counsel Tammy Albarran, and several other Uber employees. The first initiating email communication in the chain is redacted as privileged because it was created and shared for the purpose of providing legal advice to Uber employees. That email was sent by Andrew Hasbun, then Head of Safety Communications, on behalf of a small group of individuals, including Ms. Handley, and is marked as "ACP" for attorney-client privilege. The email concerns the release of Uber's Second U.S. Safety Report. Ms. Handley, along with several other Uber employees, led the strategy and drafting of the report. During this process, Ms. Handley provided legal advice related to the report's content and release, and public statements about it by Uber.

To provide this legal advice, Ms. Handley assessed various legal issues, including the implications the report, and public statements about the report, may have on pending and future litigation. Ms. Handley's purpose in asking Mr. Hasbun to send the redacted email on her behalf was to convey her legal advice to the recipients concerning the release of the report and public statements about it from Uber. Ms. Handley assisted in drafting the language used in the now-redacted email. *See* Handley Decl. ¶¶ 4-5.

cc:     All counsel of record via ECF

Dated: December 12, 2024                                    Respectfully Submitted,

By: */s/ Sarah R. London*                                   */s/ Michael B. Shortnacy*
Sarah R. London (SBN 267093)

**LIEFF CABRASER HEIMANN &**                                MICHAEL B. SHORTNACY (SBN: 277035)
**BERNSTEIN, LLP**                                          mshortnacy@shb.com
275 Battery Street, 29th Floor                              **SHOOK, HARDY & BACON L.L.P.**
San Francisco, CA 94111-3339                                2121 Avenue of the Stars, Ste. 1400
Telephone: (415) 956-1000                                   Los Angeles, CA 90067
Facsimile: (415) 956-1008                                   Telephone: (424) 285-8330
slondon@lchb.com                                            Facsimile: (424) 204-9093

                                                            PATRICK OOT (Admitted *Pro Hac Vice*)
By: */s/ Rachel B. Abrams*                                  oot@shb.com
Rachel B. Abrams (SBN 209316)                               **SHOOK, HARDY & BACON L.L.P.**
                                                            1800 K St. NW Ste. 1000
**PEIFFER WOLF CARR KANE CONWAY**                           Washington, DC 20006
**& WISE, LLP**                                             Telephone: (202) 783-8400
555 Montgomery Street, Suite 820                            Facsimile: (202) 783-4211
San Francisco, CA 94111
Telephone: (415) 426-5641                                   VERONICA G. GROMADA (Admitted *Pro*
Facsimile: (415) 840-9435                                   *Hac Vice*)
rabrams@peifferwolf.com                                     vgromada@shb.com
                                                            **SHOOK, HARDY & BACON L.L.P.**
By: */s/ Roopal P. Luhana*                                  600 Travis St., Suite 3400
Roopal P. Luhana                                            Houston, TX 77002
                                                            Telephone: (713) 227-8008
**CHAFFIN LUHANA LLP**                                      Facsimile: (713) 227-9508
600 Third Avenue, 12th Floor                                vgromada@shb.com
New York, NY 10016
Telephone: (888) 480-1123                                   KYLE N. SMITH (*Pro Hac Vice* admitted)
Facsimile: (888) 499-1123                                   ksmith@paulweiss.com
luhana@chaffinluhana.com                                    JESSICA E. PHILLIPS (*Pro Hac Vice*
                                                            admitted)
*Co-Lead Counsel for Plaintiffs*                            jphillips@paulweiss.com
                                                            **PAUL, WEISS, RIFKIND, WHARTON**
                                                            **& GARRISON LLP**
                                                            2001 K Street, NW

Washington DC, 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

Dated: December 12, 2024                    By: /s/Roopal P. Luhana
                                                Roopal P. Luhana