| Log No. | Uber's Description of document in 'Privileged Document Category' on Privilege Log | Uber's Description of Document on PTO 8 Brief |
|---|---|---|
| JCCP_MDL_PRIVLOG028868 | Confidential e-mail seeking and providing legal advice from in-house counsel regarding use of cameras or recording devices in vehicles. | This document is an email communication that is automatically-generated by Google Docs reflecting comments, edits, and revisions, being made at that time on a document titled "US&C Safety Ops – Safety Media Business Standard," maintained on Google Docs. The underlying document addresses how Uber employees should handle media submissions in conjunction with a safety incident reported to Uber. The underlying document was shared with Senior Legal Director, Global Safety, Jennifer Handley and Global Safety Legal Director Daniel Kolta for collaboration and for the purpose of seeking their legal advice concerning the potential legal risks of the policies and of any public statements that may be made based on them. In the comment threads on the underlying document and that were carried into this email, Ms. Handley and Mr. Kolta discussed the safety policies and practices outlined in the underlying document, receiving requests for, and providing, legal advice. See Handley Decl. ¶ 6. The fact that the legal advice was provided on a business decision does not mean it is not privileged—the primary purpose of the discussion with Uber's attorneys was to seek their legal advice, not their business judgment. In re Grand Jury, 23 F.4th 1089, 1091 (9th Cir. 2021); Staley v. Gilead Scis., Inc., No. 19-CV-02573-EMC, 2021 WL 4318403, at *2 (N.D. Cal. July 16, 2021). |
| JCCP_MDL_PRIVLOG029996 | Confidential e-mail thread provided for purposes of discussing legal advice from in-house counsel regarding collaboration with Uber's sexual assault prevention partner(s). | The document is an email communication chain discussing legal issues regarding the use of Uber's trade name in connection with a program operated by a third-party partner organization. In the first email in the chain, Katherine Gaspar, then-Uber Regional Operations Manager, U.S. and Canada Safety, specifically asked Jennifer Handley for her legal advice asking if she had any "legal concerns" about a specific topic. Ms. Handley then added another in-house lawyer, Laura McAdams, Senior Counsel, Safety and Insurance, to the email thread, who also weighed in to provide legal advice. The email communications in this thread that followed as between Ms. McAdams, Ms. Gaspar, and Cory Frievogel continued to discuss Ms. McAdams's legal advice. See Handley Decl. ¶ 2.<br>Plaintiffs challenge the privilege claim because Ms. Handley and Ms. McAdams were on the "cc" line on the top-level email. But an attorney being in the "cc" field in the top-level email, without more, is not a good faith basis for a privilege challenge. As Uber has explained to Plaintiffs numerous times, an attorney appearing in the "cc" line is not an indication of their importance to the communication—when someone hits "reply all" in the Gmail system used by Uber, everyone other than the immediately-prior sender are placed in the "cc" field. This does not mean that the attorneys were "merely copied" on the communication, yet Plaintiffs have erroneously challenged numerous privilege claims because of the supposed "placement" of an attorney in the "cc" field. See Heartland Consumer Prods. LLC v. DineEquity, Inc., 2018 WL 3861648 (S.D. Ind. Aug. 14, 2018); Bartholomew v. Avalon Capital Grp, Inc., 278 F.R.D. 441, 448 (D. Minn. 2011). Uber has not logged any documents as privileged solely because an attorney is copied, but only after determining the document is privileged through an individualized review of the document. ECF 1812-3, ¶ 27. |
| JCCP_MDL_PRIVLOG036737 | Confidential e-mail thread discussing legal advice from in-house counsel regarding reports of driver sexual assault or sexual misconduct. | The Court should reject Plaintiffs' challenge here for similar reasons. The dominant purpose of this communication was to provide and seek legal advice. This document is an email chain discussing proposed communications with potential claimants to be made by a third-party claims administrator. The email chain was initiated by former Uber in-house counsel Lauren Shapiro, Uber's Director, Safety & Insurance Litigation, Katie Waitzman, Uber's Vice President and Chief Deputy General Counsel, and Maureen Frangopoulos, Senior Legal Director, Central Strategy and Special Matters, Global. In her initial email, Ms. Shapiro provided her legal advice concerning the draft proposed communication with potential claimants and Ms. Shapiro expressly asked for thoughts from the other email participants, including legal counsel Ms. Waitzman and Ms. Frangopoulos. In the subsequent emails, the other participants discuss or relay Ms. Shapiro's legal advice when responding to questions and giving input back to counsel to form legal opinions and advice to Uber, in light of the many legal risks involved in communicating with a potential claimant. See Frangopoulos Decl. ¶ 3. Beyond the attorneys' location in the "cc" field in the top-level email, Plaintiffs provide no basis for challenging this privilege claim. |

Case 3:23-md-03084-CRB     Document 1952-3     Filed 12/12/24     Page 2 of 5

Joint Discovery Letter re: Tranche 2 Privilege Log Disputes, 12/12/2024                      EXHIBIT B                      In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation

Case No. 3:23-md-03084-CRB

| Log No. | Uber's Description of document in 'Privileged Document Category" on Privilege Log | Uber's Description of Document on PTO 8 Brief |
|---|---|---|
| JCCP_MDL_PRIVLOG039363 | Confidential document prepared at the direction of in-house counsel regarding preparation and drafting of Uber's Safety Report. | The first line of this document states: "Document Prepared for Legal Analysis:  attorney/client privileged."  What follows is a set of notes on Uber's business structures, teams, plans, and goals on safety and other issues at Uber prepared for the purpose of providing information in furtherance of legal advice.  The document mentions the role of the legal department in several places.  The metadata on this document is very limited.  It shows that this document, dated January 13, 2017, was stored on then-Uber CEO Travis Kalanick's secure Google Docs account and that he was the sole custodian and "collaborator" with access to the document.  Based on this information, this document appears to be a set of personal notes created by Mr. Kalanick, or by someone on his behalf, such as an assistant, for the purpose of obtaining legal advice from Uber's in-house counsel regarding these safety issues and Uber's future plans on safety issues.  There is no indication that these notes were ever shared with anyone or used for any non-legal purpose.  Because Mr. Kalanick left his role as CEO in 2017 (the same year these notes are dated), the only evidence available to Uber is the direct and unambiguous words on the face of the document, the strongest available evidence of a contemporaneous intent to facilitate legal advice, and the limited metadata.  All available evidence leads to the conclusion that it was prepared for the purpose of facilitating legal advice.  Personal notes made for the purpose of seeking legal advice are privileged, even if never read by an attorney.  Clark v. Buffalo Wire Works Co., 190 F.R.D. 93, 95-96 (W.D.N.Y. 1999). And a non-lawyers' intent to seek legal advice need not be express. Gramercy Grp., Inc. v. D.A. Builders, LLC, 2017 WL 5179530, at *3 (D. Haw. Nov. 8, 2017). |
| JCCP_MDL_PRIVLOG039270 | Confidential e-mail thread seeking legal advice from in-house counsel regarding preparation and drafting of Uber's Safety Report. | This communication is privileged because its dominant purpose was to seek legal advice.  This document is an email chain from June 2015 that includes Uber's then-General Counsel Salle Yoo and then in-house counsel Keith Yandell.  In the initial email in the chain, then-Uber Senior Director of Global Public Policy Betsy Masiello, expressly requested "legal advice" from Mr. Yandell on a draft safety report linked to the email. Ms. Masiello also requested Mr. Yandell's legal advice concerning her team's analysis of various aspects of the safety report, which she included in the body of the email.  Moreover, the body of her email reveals legal advice previously provided by Uber in-house counsel, including the potential impact of the report on then-pending litigation and future litigation.  In the top email, Travis Kalanick, Chief Executive Officer of Uber at the time, provided additional information that in-house counsel would have used to provide the requested legal advice.  See Binnings Decl. ¶ 6.  Even if this communication was not sent to counsel (as it was here), the fact that Ms. Masiello relayed legal advice previously provided makes it privileged.  OwLink Tech., Inc v. Cypress Tech Co., Ltd, 2023 WL 4681543, at *2 (C.D. Cal. June 29, 2023); Dolby Lab'ys Licensing Corp. v. Adobe Inc., 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019). |
| JCCP_MDL_PRIVLOG039202 | Confidential document prepared in anticipation of litigation by in-house counsel regarding IRT policies and practices for handling allegations of sexual assault or sexual misconduct. | This document is privileged because in-house counsel created it to provide legal advice to Uber employees in anticipation of litigation.  This is a document that Maureen Frangopoulos drafted in March 2016.  The document conveys legal advice for Uber employees that receive safety-related incident reports.  The document details best practices for documenting and communicating about incident reports.  Ms. Frangopoulos also gives legal guidance in this document on contacting the legal department to seek further legal advice regarding particular incident reports.  This document was created to provide legal guidance to Uber employees about how to handle incident reports in anticipation of litigation related to the incidents and not to reflect Ms. Frangopoulos's business advice or judgment. See Frangopoulos Decl. ¶ 4.  The fact that this document does not relate to a specific case does not mean it was not prepared in anticipation of litigation or is not privileged or protected work product.  See Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for United States Att'ys, 844 F.3d 246, 253 (D.C. Cir. 2016) (no requirement that work product requires "anticipation of litigating a specific claim.").  All that is required is that there is "more than a remote possibility of litigation." Fox v. California Sierra Fin. Servs., 120 F.R.D. 520, 524 (N.D. Cal. 1988);  In re Grand Jury Subpoena, 357 F.3d 900, 907 (9th Cir. 2004). |

| Log No. | Uber's Description of document in 'Privileged Document Category' on Privilege Log | Uber's Description of Document on PTO 8 Brief |
|---|---|---|
| JCCP_MDL_PRIVLOG034111 | Confidential e-mail thread seeking and providing legal advice from in-house counsel regarding Uber's policies and practices for responding to allegations of driver sexual assault or sexual misconduct. | This document is an email chain concerning insurance risks or exposure and a driver minimum age policy. Before this email chain was created, Danielle Sheridan (né Portugal), then-Head of Business Policy & Safety Operations for U.S. and Canada, and Frank Chang, then-Director of Insurance and Safety Analytics, asked Associate General Counsel Scott Binnings to provide legal advice concerning potential changes to the driver minimum age policy and related liability risks. Ms. Sheridan and Mr. Chang, included Mr. Binnings in this email communication and shared the data and analysis contained therein to seek and facilitate legal advice per his prior discussions with them at the time. He used these emails, including the analysis and data contained therein, to assess the various legal issues implicated by a driver minimum age policy, including the litigation and liability risks of potential changes to such policy. The email chain contains his legal advice concerning these matters. See Binnings Decl. ¶ 3. |
| JCCP_MDL_PRIVLOG039352 | Confidential PowerPoint discussing legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety. | This document is a draft presentation titled "Safety Report Review Update," dated September 2019, around two months before Uber publicly released its first U.S. Safety Report in December 2019. As an in-house attorney at Uber, Scott Binnings had responsibility for providing legal advice in connection with the preparation of the Safety Report. Uber's Executive Leadership Team, led by Mr. Dara Khosrowshahi, Chief Executive Officer, had asked Uber's in-house counsel to provide Uber with such legal advice in their capacity as legal counsel for Uber. The bottom row in slide 12 contains the legal advice that Mr. Binnings and other in-house counsel provided regarding a qualitative assessment of the Safety Report vis-a-vis pending and future litigation. See Binnings Decl. ¶ 4. Uber is willing to produce a redacted version of this presentation that redacts legal advice found on the bottom of slide 12 of the presentation. |
| JCCP_MDL_PRIVLOG039431 | Confidential e-mail memorializing a communication made to facilitate the provision of legal advice from in-house counsel regarding safety training for drivers or riders. | This document is an email that is automatically-generated by Google Docs to reflect that comments, edits, and revisions were made on a document titled "Women's Safety Education One-Pager," maintained on Google Docs. Kate Parker, then the Global Director, Product Marketing, Brand Management & Strategic Initiatives at Uber, shared the underlying Google Docs document with Scott Binnings and other Uber in-house legal counsel Bob O'Leary, Dalene Bramer and Maureen Frangopoulos for the purpose of seeking legal advice concerning the document's proposed language, project ideas, and policies. Specifically, in the comment on the document that is reflected at the top of the email in question here, Mr. Binnings provided his legal assessment and advice concerning a particular proposal discussed within the underlying document. In the second comment in the document that is reflected in the email, Ms. Parker responded to that advice. In the other three comments, Ms. Parker reveals the legal advice that in-house counsel previously provided concerning various proposed policies discussed in the underlying document, and she requests further advice or approval from Mr. Binnings and former in-house counsel Bob O'Leary concerning those policies. See Binnings Decl. ¶2. Plaintiffs incorrectly assert that the email contains only a comment from Ms. Parker directed to Carley Lake. The automatically generated email was sent to Ms. Lake (perhaps because she was "tagged" in the underlying document), but Plaintiffs have no basis for assuming the email contains a comment directed to her and does not include a discussion with counsel. To the contrary, Uber provided Plaintiffs with Mr. Binnings' name in the "Privileged Name(s)" field of the privilege log because he was not included in the other metadata, and stated in the log that it included communication with counsel. The Court should reject Plaintiffs' challenge. |

| Log No. | Uber's Description of document in 'Privileged Document Category" on Privilege Log | Uber's Description of Document on PTO 8 Brief |
|---|---|---|
| JCCP_MDL_PRIVLOG039488 | Confidential e-mail thread provided for purposes of discussing legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety. | This communication is privileged because its primary purpose is to seek legal advice.  Uber Head of Operations, Brand Experience, Nima Ramazan-Nia, addressed the initial email in the chain to then-in-house counsel Jane Pollack, then-in-house counsel Amos Davis, and Jodi Kawada Page, formerly on Uber's Communications team and currently the Chief of Staff for Uber's Chief Legal Officer, seeking legal review and approval of a separate presentation concerning safety-related marketing.  After this initial email, Katie Waitzman was added to the email thread. Ms. Pollack, Mr. Davis, and Ms. Waitzman provided detailed legal advice through comments on the separate presentation, in light of the legal implications and risks related to Uber's public communications concerning safety issues and previous instances of litigation concerning the same.  Other emails in the chain discuss or respond to the legal advice being provided by these Uber in-house lawyers. The final, top-level email in the chain does not include Ms. Pollack or Ms. Waitzman, but relays the legal advice to four recipients and continues to discuss the legal advice.  See Binnings Decl. ¶ 5. |
| JCCP_MDL_PRIVLOG039513 | Confidential e-mail memorializing a communication made to facilitate the provision of legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety. | This document is an email communication that is automatically-generated outlining the comments and revisions being made at that time on a document titled "Uber.com | Women's Safety Copy Doc," maintained on Google Docs.  The underlying document was a draft public communication intended for Uber's website.  Jennifer Handley was invited to review, edit, and collaborate on this document, as were then-in-house lawyers Tracey Merwise, Monique McNellie, and Maureen Frangopoulos in order to provide legal advice in light of the legal risk implicated by any Uber public statements or policies related to rider safety. In the first comment in the email, Ms. Handley provided legal advice and asked two other in-house counsel, Ms. Frangopoulos and Ms. Merwise, to provide legal advice on any insurance litigation and employment issues.  The other comments in the email also contain legal advice from Ms. Handley, Ms. Merwise, Ms. Frangopoulos, and Ms. McNellie related to the legal implications of various statements in the draft communication.  See Handley Decl. ¶ 3. |
| JCCP_MDL_PRIVLOG033799 | Confidential e-mail thread provided for purposes of seeking legal advice from in-house counsel regarding Uber's policies and practices for responding to allegations of driver sexual assault or sexual misconduct. | This document is an email chain concerning Uber's sexual assault prevention plan.  The first of the two emails in the communication chain is redacted because it is privileged.  Kate Parker, then-Head of Safety and Insurance Brand, addressed that email to Uber's Chief Legal Officer Tony West and to Uber's Regional General Manager, U.S. and Canada, Meghan Verena Joyce.  Ms. Parker further included three in-house lawyers on that email: Katie Waitzman, then-Legal Director for Employment Dalene Bramer, and Scott Binnings.  Ms. Parker copied only one non-attorney: Gus Fuldner, then the now-Vice President of Safety and Insurance.  Prior to the now-redacted email, Ms. Parker requested that in-house counsel provide legal advice concerning the sexual assault prevention plan that Uber was developing during that time.  To that end, Chief Legal Officer Mr. West hosted a meeting to discuss the plan days before Ms. Parker's email. Mr. West, Katie Waitzman, Dalene Bramer, and Scott Binnings attended the meeting to provide requested legal advice. Ms. Verena Joyce also attended that meeting.  After the meeting, Ms. Parker sent the redacted email to Mr. West, and she copied Ms. Waitzman, Ms. Bramer, and Mr. Binnings for the purpose of requesting further legal advice from in-house counsel concerning Uber's sexual assault prevention plan.  The redacted email discusses and contains the legal advice that Mr. West had provided during the meeting with Ms. Parker and Ms. Verena Joyce, and Uber's plans for seeking and receiving further legal advice from Mr. West and other in-house counsel concerning the sexual assault prevention plan.  See Binnings Decl. ¶ 7. |

Case 3:23-md-03084-CRB    Document 1952-3    Filed 12/12/24    Page 5 of 5
Joint Discovery Letter re: Tranche 2 Privilege Log Disputes, 12/12/2024                EXHIBIT B                                                                    In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation
Case No. 3:23-md-03084-CRB

| Log No. | Uber's Description of document in 'Privileged Document Category" on Privilege Log | Uber's Description of Document on PTO 8 Brief |
|---|---|---|
| JCCP_MDL_PRIVLOG039242 | Confidential e-mail thread seeking legal advice from in-house counsel regarding preparation and drafting of Uber's Safety Report. | This document is an email communication chain that includes attorneys Jennifer Handley, Katie Waitzman, Scott Binnings, and former Chief Deputy General Counsel Tammy Albarran, and several other Uber employees.  The first initiating email communication in the chain is redacted as privileged because it was created and shared for the purpose of providing legal advice to Uber employees. That email was sent by Andrew Hasbun, then Head of Safety Communications, on behalf of a small group of individuals, including Ms. Handley, and is marked as "ACP" for attorney-client privilege.  The email concerns the release of Uber's Second U.S. Safety Report.  Ms. Handley, along with several other Uber employees, led the strategy and drafting of the report.  During this process, Ms. Handley provided legal advice related to the report's content and release, and public statements about it by Uber.  To provide this legal advice, Ms. Handley assessed various legal issues, including the implications the report, and public statements about the report, may have on pending and future litigation.  Ms. Handley's purpose in asking Mr. Hasbun to send the redacted email on her behalf was to convey her legal advice to the recipients concerning the release of the report and public statements about it from Uber.  Ms. Handley assisted in drafting the language used in the now-redacted email.  See Handley Decl. ¶¶ 4-5. |