1  RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
2  **PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
3  535 Mission Street, 24th Floor
   San Francisco, CA 94105
4  Telephone: (628) 432-5100
   Facsimile:  (628) 232-3101

5  ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
6  CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
7  ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
8  **PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
9  1285 Avenue of the Americas
   New York, NY 10019
10 Telephone: (212) 373-3000
   Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DECLARATION OF SCOTT BINNINGS IN SUPPORT OF DEFENDANTS' DECEMBER 12, 2024 JOINT LETTER BRIEF ON PRIVILEGE SAMPLING DISPUTE**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |
|---|---|

# DECLARATION OF SCOTT BINNINGS

I, Scott Binnings, having personal knowledge of the following state:

1. I am the Associate General Counsel, Safety and Core Services, at Uber. I was first employed by Uber in April 2015 and have worked as in-house legal counsel for the past 9 years. My previous positions included Senior Counsel, Regulatory; Senior Counsel, Safety; Legal Director, Safety; Senior Legal Director, Safety; and Senior Legal Director, Safety, Payments, and Risk. In my current role, as has been the case throughout my tenure at Uber, I am responsible for providing legal advice to Uber's leadership and employees related to safety issues, procedures, and policy, among other legal advice. I offer this Declaration in the above-captioned matter in support of Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's submission in the December 12, 2024 privilege sampling dispute. In particular, I address herein documents referred by privilege log numbers as JCCP_MDL_PRIVLOG039431, JCCP_MDL_PRIVLOG034111, JCCP_MDL_PRIVLOG039352, JCCP_MDL_PRIVLOG039488, JCCP_MDL_PRIVLOG039270, and JCCP_MDL_PRIVLOG033799. The facts set forth herein are true and correct and are based on my own personal knowledge, and I could and would competently testify thereto if called.

2. I am familiar with the document referenced as JCCP_MDL_PRIVLOG039431. This document is an email that is automatically-generated by Google Docs to reflect that comments, edits, and revisions were made on a document titled "Women's Safety Education One-Pager," maintained on Google Docs. Kate Parker, then the Global Director, Product Marketing, Brand Management & Strategic Initiatives at Uber, shared the underlying Google Docs document with me and other Uber in-house legal counsel Bob O'Leary, Dalene Bramer and Maureen Frangopoulos for the purpose of seeking legal advice concerning the document's proposed language, project ideas, and policies. Specifically, in the comment on the document that is reflected at the top of the email in question here, I provided my legal assessment and advice concerning a particular proposal discussed within the underlying document. In the second comment in the document that is reflected in the email, Ms. Parker responded to that advice. In the other three comments, Ms. Parker reveals the legal advice that in-house counsel previously provided concerning various proposed policies discussed in the

1  underlying document, and she requests further advice or approval from me and former in-house
2  counsel Bob O'Leary concerning those policies.

3      3.   I am familiar with the document referenced as JCCP_MDL_PRIVLOG034111. It is
4  an email chain concerning insurance risks or exposure and a driver minimum age policy. To provide
5  context for the Court about this document, at some point before this email chain was created, Danielle
6  Sheridan (né Portugal), then-Head of Business Policy & Safety Operations for U.S. and Canada, and
7  Frank Chang, then-Director of Insurance and Safety Analytics, asked me to provide legal advice
8  concerning potential changes to the driver minimum age policy and related liability risks. Ms.
9  Sheridan and Mr. Chang included me in this email communication and shared the data and analysis
10 contained therein to seek and facilitate my legal advice per my prior discussions with them at the time.
11 I used these emails, including the analysis and data contained therein, to assess the various legal issues
12 implicated by a driver minimum age policy, including the litigation and liability risks of potential
13 changes to such policy. The email chain contains my legal advice concerning these matters.

14     4.   I am familiar with the document referenced as JCCP_MDL_PRIVLOG039352. This
15 document is a draft presentation titled "Safety Report Review Update," dated September 2019, around
16 two months before Uber publicly released its first U.S. Safety Report in December 2019. As an in-
17 house attorney at Uber, I had responsibility for providing legal advice in connection with the
18 preparation of the Safety Report. Uber's Executive Leadership Team, led by Mr. Dara Khosrowshahi,
19 Chief Executive Officer, had asked Uber's in-house counsel, including myself, to provide Uber with
20 such legal advice in our capacity as legal counsel for Uber. The bottom row in slide 12 contains the
21 legal advice that I and other in-house counsel provided regarding a qualitative assessment of the Safety
22 Report vis-a-vis pending and future litigation.

23     5.   I have reviewed the document referenced as JCCP_MDL_PRIVLOG039488. It is an
24 email chain that includes Uber Vice President and Chief Deputy General Counsel Katie Waitzman.
25 Uber Head of Operations, Brand Experience, Nima Ramazan-Nia, addressed the initial email in the
26 chain to then-in-house counsel Jane Pollack, then-in-house counsel Amos Davis, and Jodi Kawada
27 Page, formerly on Uber's Communications team and currently the Chief of Staff for Uber's Chief
28

1  Legal Officer, seeking legal review and approval of a separate presentation concerning safety-related
2  marketing. After this initial email, Ms. Waitzman, another in-house counsel, was added to the email
3  thread. Ms. Pollack, Mr. Davis, and Ms. Waitzman provided detailed legal advice through comments
4  on the separate presentation, in light of the legal implications and risks related to Uber's public
5  communications concerning safety issues and previous instances of litigation concerning the same.
6  Other emails in the chain discuss or respond to the legal advice being provided by the Uber in-house
7  lawyers identified herein. The final, top-level email in the chain does not include Ms. Pollack or Ms.
8  Waitzman, but relays the legal advice to four recipients and continues to discuss the legal advice.

9        6.      I have reviewed the document referenced as JCCP_MDL_PRIVLOG039270. It is an
10 email chain from June 2015 that includes Uber's then General Counsel Salle Yoo and then in-house
11 counsel Keith Yandell. In the initial email in the chain, then-Uber Senior Director of Global Public
12 Policy Betsy Masiello, expressly requested "legal advice" from Mr. Yandell on a draft safety report
13 linked to the email. I worked with Ms. Yoo and Mr. Yandell during their time on the legal team at
14 Uber. Ms. Masiello also requested Mr. Yandell's legal advice concerning her team's analysis of
15 various aspects of the safety report, which she included in the body of the email. Moreover, the body
16 of her email reveals legal advice previously provided by Uber in-house counsel, including the potential
17 impact of the report on then-pending litigation and future litigation. In the top email, Travis Kalanick,
18 Chief Executive Officer of Uber at the time, provided additional information that in-house counsel
19 would have used to provide the requested legal advice.

20       7.      I am familiar with the document referenced as JCCP_MDL_PRIVLOG033799. It is
21 an email chain concerning Uber's sexual assault prevention plan. The first of the two emails in the
22 communication chain is redacted on grounds of legal privilege for purposes of this litigation. Kate
23 Parker, then-Head of Safety and Insurance Brand and former Global Director, Product Marketing,
24 Brand Management & Strategic Initiatives at Uber, addressed that email to Uber's Chief Legal Officer
25 Tony West and to Uber's then-Regional General Manager, U.S. and Canada, Meghan Verena Joyce.
26 Ms. Parker further included three in-house lawyers on that email: Vice President and Chief Deputy
27
28

1  General Counsel Katie Waitzman, then-Legal Director for Employment Dalene Bramer, and me.  Ms.
2  Parker copied only one non-attorney: Gus Fuldner, then the Vice President of Safety and Insurance.
3        Prior to the now-redacted email, Ms. Parker requested that in-house counsel provide legal
4  advice concerning the sexual assault prevention plan that Uber was developing during that time.  To
5  that end, Chief Legal Officer Mr. West hosted a meeting to discuss the plan days before Ms. Parker's
6  email. I attended that meeting, along with Mr. West and Uber in-house counsel Katie Waitzman and
7  Dalene Bramer to provide requested legal advice. Ms. Verena Joyce also attended that meeting.  After
8  the meeting, Ms. Parker sent the redacted email to Mr. West, and she copied Ms. Waitzman, Ms.
9  Bramer, and me, for the purpose of and requesting further legal advice from in-house counsel
10 concerning Uber's sexual assault prevention plan.  The redacted email discusses and contains the legal
11 advice that Mr. West had provided during the meeting with Ms. Parker and Ms. Verena Joyce, and
12 Uber's plans for seeking and receiving further legal advice from Mr. West and other in-house counsel
13 concerning the sexual assault prevention plan.
14       The second, top-level email is not redacted.

16       I declare under penalty of perjury that the foregoing is true and correct.
17 Executed in San Anselmo, California on December 11, 2024.     By: _____
18                                                  Scott Binnings