*[Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br>**JOINT LETTER REGARDING UBER'S PRODUCTION OF DOCUMENTS POSTDATING NOVEMBER 27, 2023**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

Pursuant to the Court's November 18, 2024 Order (ECF No. 1879), the parties submit their proposals regarding Uber's production of custodial and non-custodial documents postdating November 27, 2023. As background, Uber has identified 28 custodians that possess post-November 27, 2023 documents. Of those 28 custodians, Plaintiffs have at this time requested deposition dates for 10 custodians to occur between January and April 2025. Additionally, Plaintiffs have requested deposition dates to occur within that same timeframe for an additional 11 custodians (former employees) who do not possess post-November 27, 2023 documents.

**Plaintiffs' Position**: Plaintiffs first raised the issue of Uber's post-November 27, 2023 document production to the Court on October 22, 2024 (ECF. No. 1783). Since then, this Court has issued three Orders on the topic, in addition to a fourth Order from Judge Breyer. (ECF Nos. 1816, 1875, 1996, 1938).

<u>Production Schedule:</u> Plaintiffs have attempted to reach a resolution with Uber to address Uber's burden and practicality concerns. Plaintiffs proposed that Uber produce documents on a rolling basis and prioritize production based on the deposition schedule. This would ensure that Plaintiffs can receive and review these documents in a timely manner in order to move forward with depositions in light of the Court's discovery and bellwether trial schedules. Specifically, Plaintiffs propose the following:[1]

---

[1] Plaintiffs first proposed a similar plan to Uber on December 3. By December 19, Uber had yet to accept or reject Plaintiffs' proposal or to provide an alternative proposal. Because dates in Plaintiffs' original proposal were no longer feasible, Plaintiffs provided the updated proposal stated herein to Uber on December 19. For the first time during a 2:00 pm PT call on December 20, Uber shared their proposed deadlines below with Plaintiffs. During that call, Uber's counsel indicated that if the parties could not agree, Uber intended to submit a declaration in support of their position. Plaintiffs requested that Uber provide a copy of the declaration immediately so that Plaintiffs could have an opportunity to review and respond prior to the filing deadline. However, Uber did not provide a copy of the declaration until 9:28 p.m. Pacific time on December 20. Therefore, if the Court is inclined to give weight to that declaration, Plaintiffs request the opportunity to respond to it.

Uber will produce documents that were created through December 1, 2024 by the following deadlines:

| Source | Production Deadline |
|---|---|
| Non-Custodial Sources | January 15, 2025[2] |
| ≤ 500 documents Custodial Documents | Three (3) days before the deposition |
| 500-1000 Custodial Documents | Seven (7) days before the deposition |
| 1001-5000 Custodial Documents | 14 days before the deposition |
| >5000 Custodial Documents | 21 days before the deposition |
| Custodial and Non-Custodial Documents created between 12/2/2024 – 4/16/2025 | April 16, 2025 |

For the first time on December 20, Uber shared its proposal to produce post-2023 documents, indicating that it would make a rolling document production to be completed by February 28 for the 10 custodians possessing post-November 27, 2023 documents who Plaintiffs have requested deposition dates for between January through April 2025, and by March 21, 2025 for the remaining 18 custodians at issue. However, although Uber agreed that documents would be produced on a rolling basis, Uber refused to commit to providing documents by a date certain for any particular witness. Uber's proposal is therefore unworkable because it does not guarantee that Plaintiffs will have the full custodial files of witnesses Plaintiffs are seeking to depose between January and April prior to those depositions.[3]

In a further good faith effort to reach a mutual resolution, after learning Uber's proposal,

---

[2] Uber indicated on December 20 that noncustodial production is to be addressed by a separate filing and therefore Uber would not address noncustodial production in this filing or provide a specific proposal to Plaintiffs. Plaintiffs maintain that production of these documents from both custodial and noncustodial sources needs to be resolved here, which was the Court's order and intention. (ECF No. 1879 at 5) ("No later than fourteen days after Judge Breyer resolves Uber's motion, the parties shall file either a stipulation or a joint letter addressing a plan for custodial and non-custodial documents postdating November 27, 2023, unless Judge Breyer orders otherwise.").

[3] For example, Plaintiffs are attempting to coordinate the deposition of Gus Fuldner with the JCCP on January 27, however, Uber has indicated that Fuldner possesses a significant number of post-2023 documents and Uber will not be able to complete production of Fuldner's documents sufficiently before January 27 to allow Plaintiffs time to review the documents before that date.

Plaintiffs offered an alternative plan. Specifically, Plaintiffs offered to work with Uber to create a deposition calendar by modifying Plaintiffs' preferred schedule to allow Uber to produce the documents at issue on a rolling basis sufficiently prior to the depositions. Indeed, Plaintiffs indicated they would agree to adjust Plaintiffs' preferred schedule by scheduling depositions for the 11 custodians (former employees) who do *not* possess post-2023 documents first, and then the 10 witnesses who *do* possess these documents later in time, to allow Uber sufficient time to produce post-November 2023 documents. To effectuate this plan, Plaintiffs indicated they would be agreeable to an extension until December 23, 2024 for the parties to file a stipulated proposal for the production of post-November 27, 2023 documents, but would need Uber's commitment to confirm workable deposition dates by December 23.[4] Uber would not commit to do so. Thus while it appears the parties may have an agreement in theory as to the schedule of production, for this schedule to work, Uber must commit to producing former employees for depositions at a reasonable cadence throughout January, February, and March on a timeline similar to what Plaintiffs proposed for depositions during those months.

End date: This Court, as well as Judge Breyer, have stated it is too soon to know what end date for document production is appropriate. (ECF Nos. 1879, 1938). Plaintiffs have made a reasonable proposal, that Uber first bring production up to date through December 1, 2024, and thereafter, produce documents created between December 2, 2024 through April 16, 2025 by May 16, 2025. This is based on the June 16, 2025 discovery cutoff. The Court has essentially already rejected Uber's current proposal to cut off discovery at December 1, recognizing that new cases

---

[4] Uber's response to Plaintiffs' December 13 proposed deposition dates is due December 23 per PTO 16. Based on Plaintiffs' review of the proposed deposition dates, the parties could easily modify the schedule so that only custodians without post-November 2023 documents could be deposed before March 21, 2025 and custodians with those documents would be deposed after March 21. This change in schedule would mean Uber could produce documents based on their proposal (February 28 for custodians to be deposed before May 2025) and Plaintiffs would have full productions at least three weeks before deposition dates.

4

continue to be filed for sexual assaults that occurred in 2024, and "[t]hose plaintiffs have a legitimate interest in discovering relevant information that concerns Uber's contemporaneous safety policies, decisions surrounding those policies, understanding of risks, and other matters generally within the scope of discovery in this litigation." (ECF No. 1816 at 3-4). Plaintiffs anticipate that cases will continue to be filed in 2025 for sexual assaults that occurred in late 2024 and into 2025, and those plaintiffs will likewise have the legitimate discovery interests the Court has indicated.

**Defendants' Position**: As the Court is aware, Defendants have substantially completed the production of custodial documents for Tranches 1 through 3 (the first 37 custodians) and will substantially complete the production of custodial documents for Tranche 4 (the final 18 custodians) by January 3. To date, Defendants have produced nearly 540,000 documents. The Court has ordered the Parties to map out a plan to perform the additional work of supplementing these productions with documents that postdate November 27, 2023. But because Defendants are still collecting and processing such custodial documents, key information is not yet available and Defendants are operating in something of a vacuum. Defendants explained this conundrum to Plaintiffs and requested additional time to meet and confer once actual numbers become available. Plaintiffs declined. Defendants have therefore done their best to come up with a reasonable proposal, based on experience in this litigation, in an effort to meet the expectation set by the Court that the Parties must move forward expeditiously toward the June 16 fact-discovery deadline.

Therefore, Defendants propose commencing rolling productions of November 28, 2023 to December 1, 2024[5] custodial data to be completed by **February 21, 2025**[6] for the 10 custodians Plaintiffs have requested on December 13 to depose. It is Defendants' position that none of this information is needed to proceed for the depositions, as Plaintiffs already have over a decades' worth

---

[5] December 1, 2024 is the date Plaintiffs proposed Defendants use for this collection.
[6] The February 21, 2025 production will include everything but Drive and Slack, which are still in the collection process and which Defendants expect to be able to produce by March 4, 2025 for these 10 custodians.

5

of data extending through the onset of this litigation. Plaintiffs have stated "they would agree to adjust Plaintiffs' preferred schedule by scheduling depositions for the 11 custodians who do *not* possess post-2023 documents first, and then the 10 witnesses who *do* possess these documents later in time, to allow Uber sufficient time to produce post-November 2023 documents."[7] Defendants accept and agree to this proposal, which Defendants believe moots this dispute. Further, Defendants propose completing rolling productions of November 28, 2023 to December 1, 2024 documents for the other 18 of the 55 custodians who have documents postdating November 27, 2023, but whom Plaintiffs have not sought to depose, **by March 14, 2025**.

By way of background, the Court stayed its Order as to post-November 27, 2023 discovery, pending resolution of Defendants' challenge. ECF 1879 at 3 ("Uber need not collect or produce documents postdating November 27, 2023 until after Judge Breyer resolves Uber's challenge[.]"). Once Judge Breyer resolved Defendants' challenge on December 6, ECF 1938, Defendants promptly began collecting documents postdating November 27, 2023. Significantly, Defendants had applied the November 27, 2023 collection cut-off only to custodial collections, not to non-custodial collections, which had no end-date cutoff for collections.

On December 19, Defendants finished collecting these 28 custodians' documents from November 28, 2023 to December 1, 2024, except for Drive and Slack documents.[8] Defendants estimate that the ongoing Slack collection will be completed by December 31 and that the ongoing Drive collection will be completed by January 3. Brown Decl. ¶ 6.[9] The collection time periods

---

[7] Plaintiffs raise the issue of coordination the Gus Fuldner deposition with the JCCP for a January sitting. But if coordination is to mean anything, small compromises on both sides may have to be made, including being flexible by a matter of days or weeks so that documents could be produced from his file if Plaintiffs believe they must have them before a deposition is to occur. This level of coordination should be expected in a case like this.

[9] During conferrals with Plaintiffs, they asked if Defendants had a declaration. Defendants responded that they did not because Defendants hoped and expected to reach agreement. But Defendants also told Plaintiffs any declaration would be based on information Defendants were provided by their vendor, the substance of which Defendants shared with Plaintiffs during the conferral.

cannot go any faster–they are simply reflective of how long the machines take to collect the data, and once computing power reaches a certain threshold, machine time required will not be reduced by adding more. *Id.* ¶ 5. Once the vendor receives these collections, it must process the documents. *Id.* ¶ 6.

Based on other custodial data from this litigation, Defendants anticipate, as best they can with incomplete data,[10] that there will be approximately 72,000 unique documents per custodian or approximately 2,016,000 unique documents for the 28 custodians. *Id.* Defendants further anticipate that approximately 635,443 of those documents will hit on Plaintiffs' search terms. *Id.* ¶ 7. Application of the search terms and promotion of the data to the TAR platform also requires machine time. *Id.* From there, the vendor must train the TAR model in an iterative process that, in this litigation, has taken weeks to complete. *Id.* ¶ 10. A portion of those documents then go to the review team for responsiveness and initial privilege review. *Id.* ¶ 8. After that, the review team will conduct a final privilege review of these documents that were created during the pendency of litigation and therefore may be part of a privileged communication or may have been created at the direction of counsel. *Id.* Once this review is complete, the documents proceed through final quality control and production. *Id.*

Plaintiffs mistakenly state that Defendants did not propose a production schedule for non-custodial documents. In its proposal to Plaintiffs, Defendants proposed a plan for producing post-November 27, 2023 Google Drive documents that the parties agreed to treat as "non-custodial" for purposes of the ESI protocol. ECF 1643 at 2. Specifically, Defendants will collect, review, and produce this data with the custodial Google Drive data. Knowledge Base documents are governed by a separate Order, and Defendants will be producing such documents according to the timelines in

---

[10] As data volumes and complete cost estimates come into focus when collections are complete, Defendants reserve the right and do not waive the ability to seek relief from the court under Rule 26 and Rule 1 for relief from the costs and burden of this oppressive discovery.

7

that Order. ECF 1996 at 2.

Based on this workflow, Defendants expect the following production completion deadlines for data for the November 28, 2023 to December 1, 2024 for these 28 custodians and the additional Google Drive data:

- **February 21, 2025**: Completion of rolling production of custodial data (except for Drive and Slack) for priority 10 custodians

- **March 4, 2025**: Completion of rolling production of Drive and Slack custodial data for priority 10 custodians

- **March 14, 2025**: Completion of rolling productions of custodial data for remaining 18 custodians, and Google Drive data the parties have agreed to treat as non-custodial data.

Significantly, while Plaintiffs have sought deposition dates for 10 of these 28 custodians, there are no depositions scheduled in the MDL specifically. And as to the depositions being scheduled in the JCCP matter, which should proceed on a coordinated basis, the parties are negotiating a calendar for those depositions that will take place in late February, March, and April, entirely consistent with this Court's discovery schedule. In any event, under Defendants' proposal, MDL Plaintiffs will have these supplemental productions for all of the 10 custodians they have requested to depose in advance of any coordinated depositions.

Defendants explained to Plaintiffs that their proposal to tie production deadlines to production volume does not make sense. Defendants will not know the volume of the production for any given custodian until the review process is complete. Plaintiffs have essentially proposed a Catch-22–Plaintiffs suggest Defendants decide the timing of a production based on a volume Defendants cannot know at the time such decision would be required.

Moreover, Plaintiffs do not need these documents in order to conduct depositions. Plaintiffs' own proposal illustrates this point. Plaintiffs have proposed yet a third custodial collection to occur in mid-April with a mid-May production deadline. But Plaintiffs of course will not have those

8

documents at the time of depositions occurring earlier this year, and yet Plaintiffs have not argued that they cannot proceed with the depositions without *those* additional documents. In other words, Plaintiffs' demand is inconsistent with basic logic and Rule 1. Further, PTO 16 and PTO 20 do not permit Plaintiffs to refuse to participate in a deposition until they have this supplemental production.

Additionally, Defendants do not believe there is a basis to go through this time-consuming and resource-draining effort again before the close of fact discovery to produce just a couple more months' worth of documents. This demand for multiple re-collections of custodial data after only a few months have passed is unusual and extraordinary. It is akin to the issue Defendants previously identified of "discovery without end," see ECF 1876 at 2, and the Court subsequently agreed that would not be appropriate and that this process needs an end. ECF 1879 at 4; ECF 1938. Moreover, Plaintiffs' proposal–that Defendants produce documents from December 2, 2024 to April 16, 2025 within 30 days on May 16, 2025–is impossible. As explained above, such documents might not even be capable of being collected within that timeframe–based on pure machine time–let alone processed, reviewed, and produced. *See* Brown Decl. ¶ 4. Indeed, if Defendants were to collect documents up through mid-April 2025, those productions would not be capable of being completed until approximately August 2025–well after the close of discovery. *See id.* ¶ 9. To meet the mid-June fact discovery deadline, Defendants would need to cap the collection at approximately the end of February 2025, meaning Defendants would be going through this laborious exercise to produce only less than three months of additional data (i.e., from December 2, 2024 to February 28, 2025). That sort of burdensome churn for a de minimis product is definitionally disproportionate to the needs of the case, and would result in a waste of resources for which Defendants alone will bear the burden.

By: */s/Roopal Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

By: */s/ Michael B. Shortnacy*
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (*Pro Hac Vice* admitted)
oot@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
1800 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

RANDALL S. LUSKEY (SBN: 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/  Roopal P. Luhana