UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No..: 3:23-MD-03084 CRB<br><br>**JOINT LETTER REGARDING PLAINTIFFS' REQUEST FOR PRODUCTION OF U.S. SAFETY REPORT DATA**<br><br>Judge:  Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

      Pursuant to the Court's December 19, 2024 Order (ECF No. 1996) the parties respectfully submit this joint discovery letter regarding disputes related to Uber's production of data related to its 2017-2018 and 2019-2020 U.S. Safety Reports. The parties reached an agreement on most outstanding issues, including the two issues the Court specifically requested the parties to address, "whether Defendants must produce the comment field data and data for incidents involving sexual assault or misconduct allegedly committed by individuals other than the Uber driver, such as passengers or other third parties." The parties have a disputes regarding attachments and links.

By: */s/Roopal Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

RACHEL B. ABRAMS (SBN 209316)

By: */s/ Michael B. Shortnacy*
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (*Pro Hac Vice* admitted)
oot@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
1800 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

RANDALL S. LUSKEY (SBN: 240915)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

I.     **Joint Statement**

The parties have reached a partial agreement regarding Defendants' production of safety data pursuant to the Court's July and August, 2024 Orders. (ECF 683, 706, 1068).[1] The parties agree on issues related to the Comments field, data fields more generally, and sexual assault and sexual misconduct incident reports where someone other than the driver was involved. Disputes remain regarding data contained in attachments and links in SAFE Jira and Bliss tickets from 2017 to 2022.

**Fields**. Defendants agree to produce the data from all fields in its Jira and Bliss databases that were used for sexual assault and sexual misconduct reports between 2017 to 2020, including the Comments field. Specifically, these agreed upon fields include the fields that Defendants identified to Plaintiffs on August 23, 2024[2] as "SAFE Jira Fields" in the Jira database and fields identified as "In Use" in the Bliss database, as well as any additional fields Uber identifies in its January 10 certification, discussed below, that Uber used to collect data about sexual assault or sexual misconduct incident reports during the timeframe at issue.

**Redactions**. The parties agree that Defendants may redact for privilege (including attorney comments) within the Comments field of Jira tickets, and Defendants are relieved of the obligation to produce a privilege log for those privilege redactions pursuant to Pretrial Order 14 (ECF. No. 396).[3]

Defendants have represented that they are not aware of any of their redactions of safety data that do not fully comply with Court orders and the parties' agreements. In particular, Defendants agree that they will redact this safety data only for Privilege or Personal Identifying Information. Defendants will not redact the names of Defendants' employees. If Defendants redact Driver, Rider, or Third Party names, Defendants will replace with de-identified "hashed" code (or similar unique key) and will use the same code (or key) to refer to such individuals in other data fields, where the same individual is at issue and even, to the extent feasible and practical, including data from unrelated events (i.e., events that occurred on a different day or involving different accused or reporting parties). To the extent Defendants have not already done so, Defendants will produce, by January 17, data sufficient to Plaintiffs to use the anonymized code.

**Supporting Documents**. Additionally, the parties have discussed whether Defendants' production of documents related to the U.S. Safety Reports (e.g., data collection and auditing procedures). Plaintiffs believe that the production is incomplete because the documents produced post-date 2020 and appear to be draft documents containing redlines and other edits. Defendants

---

[1] Pursuant to the Court's directives on December 19, the parties will address "the tools and functionality issues" for the data by January 10, 2025. ECF 1996 at 2.

[2] Identified by Bates Number UBER-MDL3084-000378343.

[3] This agreement applies only to the data at issue here and not to Defendants'    document production from custodial or noncustodial files. If redactions are made to a Jira ticket that is produced in document production, the requirements of PTO 14 continue to apply.

have identified additional documents for supplemental production, and deny that their production is materially deficient.

Pursuant to this agreement:

1) By January 10, 2025, Defendants will provide a signed certification that identifies all fields in the Jira and Bliss databases that were used, with reasonable certainty, for sexual assault and sexual misconduct incidents reported to Defendants related to rideshare between 2017 and 2020.

2) By January 17, 2025, Defendants will produce all data from the fields identified in part 1, including data where the accused party was a rider or third party.

3) By January 15, 2025, Defendants will provide a signed certification that it has produced documents sufficient to show:

   a. which Jira and Bliss fields frontline agents were instructed to use for reports received between 2017 and 2020, and the information that they were instructed to enter into those fields;

   b. the criteria provided to auditors for reviewing and categorizing reports; and

   c. the process and criteria for measuring the accuracy of the audits.

## II.     Attachments and Linked Data

The parties dispute whether Defendants must produce attachments and data linked within the Jira and Bliss systems.

**Plaintiffs' Position**:[4]

Uber's Jira and Bliss systems "link" to data and documents saved in other systems, for example, to each other and to other Uber databases like Safety Lens and Toolshed. Some of these data, such as GPA and audio, expressly fall within the Court's order. (ECF. No. 684 at 8-9) ("Plaintiffs have established relevancy not just in relation to the incident reports themselves, but also the underlying trip data for each incident (e.g., GPS information, trip date and time, etc. These data are important for Plaintiffs to detect patterns associated with claims of sexual assault and sexual misconduct."). They are also part of how Uber's agents use Jira and Bliss in the ordinary course of business, clicking "links" to access crucial information. (ECF No. 1068 at 2) (to guide the parties, offering "observation" regarding how "Uber maintains such data … in the ordinary course of business").

---

[4] During the December 19 status conference, the Court indicated frustration that issues related to the Court's July and August safety data Orders had not been resolved. Although the Court did not ask the parties to address attachments and linked data or the 2021 to 2022 data, Plaintiffs raise these issues to resolve all outstanding disputes on the scope of the Orders.

Plaintiffs have discussed Uber's burden issues at length, including on numerous calls with Plaintiffs' consulting expert, and have provided Uber with a declaration from Plaintiffs' expert on how Uber can feasibly produce this data with limited burden.

Plaintiffs respectfully request that Uber be ordered to produce, by January 10, the data contained in attachments and links in Jira tickets from 2017 to 2022 in a way that maintains the relationship between the data.

**Defendants' Position:**

Plaintiffs' inclusion of their new request for "attachments and linked data" is improper and prejudicial to Defendants' due process rights. Plaintiffs' insertion of this new request is inconsistent with the Court's Order setting an expedited deadline for the Parties to file a PTO 8 brief on certain specific issues discussed at the Discovery Status Conference. ECF 1996. Plaintiffs did not mention "attachments and linked data" during the Discovery Status Conference, nor did Plaintiffs mention "attachments and linked data" in the Joint Status Report. *See* ECF 1957 at 2. Nor did Plaintiffs raise this issue in the conferrals of counsel on December 21 and 22. Shortnacy Decl. ¶¶ 9-11. In fact, the topic of "attachments and linked data" is one that Plaintiffs have not mentioned to Defendants over the course of the past three months. *Id.* ¶ 11. Further, leading up to this submission, the Parties expressly agreed that the scope of this joint letter would be the two topics the Court ordered the Parties to address. *Id.* ¶ 10.

Plaintiffs cannot disregard the requirements of PTO 8 by adding a new issue into this expedited and limited-scope PTO 8 brief (which process is already an expedited variation from the due process afforded by the briefing schedules set out in the Local Rules of this Court). The Parties have participated in numerous meet-and-confers since the Court entered ECF 1996, during which Plaintiffs did not mention this additional topic to Defendants, but instead shoehorned this topic into a draft submission that they provided to Defendants for the first time on Sunday, December 22, at approximately 6 pm CT (the time zone location of Defendants' lead counsel for the holidays at the time, as known by Plaintiffs). *Id.* ¶ 11. In a conferral with Plaintiffs on December 23, Defendants requested that Plaintiffs remove this topic from this joint submission for the reasons outlined herein. *Id.* ¶ 12. Plaintiffs refused. *Id*.

Plaintiffs have indicated that they believe that not only can they get away with flouting the orders of the Court, but in fact Plaintiffs appear to believe they will be rewarded for it in the form of an order adverse to and incredibly onerous for Defendants, entered without a complete conferral process, briefing, or preparation of a complete evidentiary record and burden analysis. Defendants respectfully request that the Court disregard this inappropriate portion of Plaintiffs' submission, which seeks to deprive Defendants of their due process rights.

On December 19, the Court ordered the Parties to file a joint discovery letter "regarding safety data [that] shall address" two specific topics:

1. "whether Defendants must produce the comment field" and
2. whether Defendants must produce "data for incidents involving sexual assault or misconduct allegedly committed by individuals other than the Uber driver, such as passengers or other third parties."

ECF 1996 at 1. There is no dispute relating to either of those topics because the parties have reached agreement on both topics as reflected above.

To the extent Defendants are compelled, over their objection, to address this additional and improper topic here without the benefit of proper time or the ability to prepare evidence, Defendants respond as follows. The issue of "attachments and linked data" has been resolved since late August, when the parties reached agreements settling this issue that Plaintiffs now attempt to unravel. On July 24, Plaintiffs stated that the data Plaintiffs sought is limited to the data seen by the audit teams for the Safety Reports. Shortnacy Decl. ¶ 3. On August 22, Defendants confirmed for Plaintiffs that the attachments were not viewed by the audit team. *Plaintiffs* then proposed the compromise of turning the attachment field into a "yes/no" field (to indicate on a binary basis whether an attachment exists or not). *Id.* ¶ 5. That "yes/no" field was included in the September 30 production of safety data to Plaintiffs (by way of BDO), as agreed by the Parties. *Id.* ¶ 6. Over the course of the past three (3) months, Plaintiffs have not so much as mentioned, let alone requested production of these documents, until sending their submission to Defendants last night. *Id.* ¶ 9.

This new request by Plaintiffs for "all attachments and linked data" associated with any reported incident in the United States for a five-year period would require a massive undertaking wholly disproportionate to the needs of the case, the costs of which completely outweigh the probative nature of what any of the attachments would reveal about any particular report. Moreover, these attachments are beyond what Plaintiffs originally requested (which was limited to what the auditors saw at the time) and the action on the report would already be reflected on a statistical level through other fields. Fed. R. Civ. P. 26(b)(1) requires this new request be denied. "Among other uncomplimentary descriptions, modern day discovery has been called a 'runaway train,' a 'monster on the loose,' and the 'bane of modern litigation." *Dale v. Deutsche Telekom AG*, 2024 WL 4416761, at *2 (N.D. Ill. Oct. 4, 2024) (internal citations omitted). "In other words, all are agreed that discovery has gotten out of hand over the years and needs to be reined in." *Id.* ("just because counsel in this case believe that there are 50 or 60 stones to be looked under, does not mean they get to look under every one of them").

Fed. R. Civ. P. 26(b)(1) thus limits discovery to "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Therefore, relevance is not the end of the inquiry, but rather is only part of the equation for determining discoverability. The court must consider whether the discovery sought is also proportional to the needs of the case. *See Jones v. Sunbelt Rentals, Inc.*, 2023 WL 10691302 (N.D. Cal. Nov. 16, 2023).

For Plaintiffs' new request, Defendants would need to manually click on and open each link to try to collect these documents referenced in each of the approximately 400,000 nonparty incident reports. Notably, these referenced documents are located in various sources and systems; they are not stored together with the reports. The reports typically contain multiple links. Assuming an individual could manually collect documents stemming from all of the links from a given report in 10 minutes, it would take over 65,000 hours just to collect all of these documents related to nonparties that the auditors for the Safety Reports did not see, let alone review during the audit process.

And collection is only the beginning. Defendants would then need to devote substantial resources to address the significant amount of nonparty PII contained within these documents, which often are not in easily reviewable formats. For instance, Defendants would need to listen to audio and video recordings to determine whether nonparty identities and/or personal information is revealed, which Defendants would then need to redact. Defendants would need to review GPS reports to redact location information that would identify the nonparties. Defendants would need to review photos and videos to redact out identifying images of nonparties.

In short, Plaintiffs' request should not even be countenanced and should be denied out of hand as improper. Further, Plaintiffs' request–which is for Defendants to manually collect, laboriously review, and try to string back together numerous documents for each of the 400,000 incident reports in order to obtain these nonparty documents not reviewed by the audit team–is disproportionate to the needs of the case. "The discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts–and no more." *Dale*, 2024 WL 4416761, at *1 (quoting *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994)). Defendants request the ability to brief this issue properly with evidence if the Court is inclined to hear Plaintiffs' request made outside of the standard PTO 8 process.