RANDALL S. LUSKEY (SBN: 240915)
  rluskey@paulweiss.com
MARC PRICE WOLF
  mpricewolf@paulweiss.com (SBN: 254495)
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100

ROBERT ATKINS (*Admitted Pro Hac Vice*)
  ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Admitted Pro Hac Vice*)
  cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Admitted Pro Hac Vice*)
  akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DECLARATION OF MICHAEL B. SHORTNACY IN SUPPORT OF DEFENDANTS UBER TECHNOLOGIES, INC., RASIER LLC AND RASIER-CA, LLC'S POSITION IN THE JOINT LETTER REGARDING PLAINTIFFS' REQUEST FOR PRODUCTION OF U.S. SAFETY REPORT DATA**<br>Judge:       Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

**DECLARATION OF MICHAEL B. SHORTNACY**

I, Michael B. Shortnacy, declare as follows:

1. I am a partner at the law firm of Shook, Hardy & Bacon L.L.P., attorneys of record for Defendants, Uber Technologies, Rasier LLC, and Rasier-CA, LLC, ("Defendants"). I am a member in good standing of the Bar of the State of California, the Bar of the State of New York, and the Bar of the District of Columbia. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief, and if called to testify, I could competently do so.

2. I respectfully submit this declaration in support of Defendants' Position in the Joint Letter Regarding Plaintiffs' Request for Production of U.S. Safety Report Data.

3. Following the Court's July 18, 2024 Order (ECF 706), the parties conferred regarding U.S. Safety Report data on July 24, 2024. Plaintiffs stated then that the data they sought is limited to the data seen by the audit teams who worked in connection with the Safety Reports. Plaintiffs said they "wanted to see what the auditors saw." Further, the parties agreed that for the production of incident reports from 2017-2020, Defendants would produce data in a .csv table output, but the fields contained in the output would be subject to ongoing negotiations of the parties, given the propensity for many of the fields to contain sensitive personal identifying information and legally privileged material. Defendants stressed at this time the need to respect the identity and privacy of non-parties who reported a claim, who did not opt to be involved in litigation, and who may be survivors of sexual assault. Plaintiffs rightly acknowledged and understood this overarching concern for the protection and redaction of this personal identifying information.

4. On a subsequent conferral, on August 22, 2024, Plaintiffs indicated that the executive summary field was of the utmost importance to Plaintiffs, while Defendants communicated that attachments to Jira tickets are not stored in the same systems as the incident reports themselves and that those attachments were in any event not reviewed by the audit team.

5. After an additional conferral on August 28, 2024, the parties reached additional compromises regarding the scope and staging of Defendants' production of U.S. Safety Report data,

including the parties agreeing to Plaintiffs' proposal to convert a field containing the names of attachments to Jira tickets into a "yes/no" binary field choice in the data fields that Defendants produce to Plaintiffs.

6. After another month of lengthy negotiations about the vendor who could securely host the U.S. Safety Report data after it was produced by Defendants to Plaintiffs, on September 30, 2024, Defendants produced the safety data to Plaintiffs in .csv format, including the "yes/no" field pertaining to attachments as previously agreed by the parties. *See* Production Letter (Sept. 30, 2024), attached hereto as **Exhibit A**. The September 30 .csv files produced to Plaintiffs through BDO contained sexual misconduct and assault incident reports from U.S. rides trips from 2017 through 2022.

7. The September 30 letter to Plaintiffs' Leadership Counsel memorializes the agreement of the parties that the Big Five accounting firm BDO USA LLP would be used to securely host the data: "Per agreement of the parties, this data is being made available to Plaintiffs' Leadership and their designated experts through BDO USA LLP, which has been engaged as a third-party to securely host the safety data and manage and control access, as agreed by the parties. Please note that all data in this production has been designated as 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' consistent with the JCCP Protective Order entered by the Court on September 14, 2022 and the MDL Protective Order entered by the Court on December 28, 2023." Exhibit A at 2.

8. Leadership Counsel for the JCCP also participated in this conferral process, which culminated in the agreement of all parties that BDO would be the vendor to house the data.[1]

---

[1] At the December 19, 2024 Discovery Conference, Plaintiffs' counsel egregiously misled the Court by implying there was no agreement. Defendants will provide the Court with the true facts in the work up of the dispute relating to BDO on the January 10, 2025 submission, and will also address the supposed "issues" that Plaintiffs are keeping secret from Defendants through a confidentiality agreement Plaintiffs compelled BDO to enter. On December 19, 2024, Defendants asked Plaintiffs in writing to identify all "issues" they are having with BDO and requested a conferral with BDO and Plaintiffs at the same table the next day, on December 20, as the Court ordered. Plaintiffs claimed they were not available. To this date, Plaintiffs have still not identified to Defendants any "issues" Plaintiffs are experiencing with BDO.

9. Following entry of this Court's Order (ECF 1996), the parties met and conferred regarding the U.S. Safety Report data on December 21, 2024 and December 22, 2024. At no time during those conferrals, nor at any time over the past three months, have Plaintiffs requested Defendants produce attachments and any linked data.

10. Upon information and belief, during a December 21, 2024 conferral my colleague had with Plaintiffs' counsel, the parties expressly agreed that the scope of the joint letter regarding safety data pursuant to ECF 1996 would be limited to the two specific topics the Court ordered the parties to address.

11. Plaintiffs provided their draft submission of the Joint Letter Regarding Plaintiffs' Request for Production of Safety Data, which included the topic of attachments and linked data, on December 22, 2024 at 3:51 pm PT.

12. During the parties' conferral on December 23, 2024, Defendants requested that Plaintiffs remove their request for attachments and linked documents from the Joint Letter. Plaintiffs refused.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of December 2024, in Los Angeles, California.

By: */s/ Michael B. Shortnacy*
　　Michael B. Shortnacy