*[Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br>**JOINT STATUS REPORT REGARDING TRANCHE 2 AND TRANCHE 3 RANDOMLY SELECTED SAMPLES**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

**JOINT STATUS REPORT**

In accordance with this Court's Order Regarding Second Set of Challenges to Uber's Privilege Claims (Dkt. 2005), the parties respectfully submit this Joint Status Report addressing the disposition of documents from the randomized sample selection.

I.    **Process for Selection**

After a meet and confer held on December 23, 2024, the parties agreed on a Tranche 2 random selection process:

1. The parties started with a spreadsheet that contained all Tranche 2 log entries challenged by Plaintiffs on November 14, 2024,[1] from which the parties removed the following entries:
   - The forty-five (45) entries included in the PTO 20 dispute process;
   - All entries for which Uber (i) withdrew its privilege claims, (ii) produced with redactions, or (iii) stated it would withdraw its privilege claim or produce with redactions in its revised December 18, 2024 Privilege Log; and
   - Entries from which Plaintiffs removed their challenges on December 28, 2024 per the Court's guidance.

2. Plaintiffs did not agree to Uber's request to remove from the sample pool documents removed from Uber's December 24, 2024 privilege log or which Uber was considering or planning removing in its then-forthcoming January 10, 2025 privilege log.

3. From the remaining entries, the parties selected samples using a random number generator at www.calculator.net. The randomly generated numbers would correspond to the same numbered row on the spreadsheet.

4. Twenty (20) entries were selected for Tranche 2. The parties also selected five (5) back-up selections in case an entry that should have been removed as described above was inadvertently selected. The parties selected ten (10) entries from Tranche 3 following a similar process, and five (5) backup entries.

---

[1] Exhibit A to Plaintiffs' November 14, 2024 Challenge Letter to Uber's Tranche 2 Privilege Logs.

II.     **Disposition of Randomly Selected Tranche 2 Documents**

**Plaintiffs' Position:**

The twenty (20) Tranche 2 entries selected were JCCP_MDL_PRIVLOG025775; JCCP_MDL_PRIVLOG025966; JCCP_MDL_PRIVLOG026221; JCCP_MDL_PRIVLOG026377; JCCP_MDL_PRIVLOG026992; JCCP_MDL_PRIVLOG027325; JCCP_MDL_PRIVLOG028244; JCCP_MDL_PRIVLOG028378; JCCP_MDL_PRIVLOG028703; JCCP_MDL_PRIVLOG030622; JCCP_MDL_PRIVLOG031766; JCCP_MDL_PRIVLOG031851; JCCP_MDL_PRIVLOG032008; JCCP_MDL_PRIVLOG032247; JCCP_MDL_PRIVLOG033266; JCCP_MDL_PRIVLOG033301; JCCP_MDL_PRIVLOG034892; JCCP_MDL_PRIVLOG034998; JCCP_MDL_PRIVLOG038185; and JCCP_MDL_PRIVLOG039356.

On January 6, 2025, Uber provided its responses to the twenty (20) randomly selected Tranche 2 samples. Uber maintained its privilege claim on eight (8) samples, agreed to produce six (6) samples with redactions,[2] and withdrew their privilege claim in full on the remaining six (6) samples.[3] **In sum, Uber withdrew its privilege claims, in full or in part, for 60% of the randomly selected Tranche 2 documents**.

Privilege issues are now resolved for the six entries from which Uber withdrew its privilege claim. As to the six entries that Uber agreed to produce with redactions, Uber provided copies of the redacted entries on January 7, 2024.

Uber states below it withdrew its privilege claims because "[w]ith more time and upon closer review, Defendants determined these emails were not privileged." But, as previously stated numerous times, that is not how a privilege review works. Uber cannot provide privilege logs with approximately 57,600 entries (to date) and only properly review documents after entries are randomly selected or challenged by Plaintiffs. Uber's so-called privilege review "process" is highly

---

[2] JCCP_MDL_PRIVLOG026221; JCCP_MDL_PRIVLOG026377; JCCP_MDL_PRIVLOG026992; JCCP_MDL_PRIVLOG028244; JCCP_MDL_PRIVLOG038185; and JCCP_MDL_PRIVLOG039356.

[3] JCCP_MDL_PRIVLOG027325; JCCP_MDL_PRIVLOG032008; JCCP_MDL_PRIVLOG033266; JCCP_MDL_PRIVLOG033301; JCCP_MDL_PRIVLOG034892; and JCCP_MDL_PRIVLOG034998.

prejudicial to Plaintiffs, has wasted the parties' and the Court's time and resources, and interferes with Judge Breyer's stated trial schedule.

Of the entries Uber is producing with redactions (JCCP_MDL_PRIVLOG026221; JCCP_MDL_PRIVLOG026377; JCCP_MDL_PRIVLOG026992; JCCP_MDL_PRIVLOG028244; JCCP_MDL_PRIVLOG038185; and JCCP_MDL_PRIVLOG039356), redactions made for JCCP_MDL_PRIVLOG026377 appear improper and Plaintiffs will address the issue in the parties' PTO 8 letter regarding Tranche 2 disputes. Uber seems to argue that it can withhold entire emails for privilege, even if the entire email is not privileged, merely because the email may be one-page or otherwise not voluminous. No so. It is black letter law that an entire communication may only be deemed privileged "when it contains privileged portions that are so inextricably intertwined with the rest of the text that they cannot be separated." *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (citations and internal quotation marks omitted). "If the nonprivileged portions of a communication are distinct and severable, and their disclosure would not effectively reveal the substance of the privileged legal portions, the court must designate which portions of the communication are protected and therefore may be excised or redacted (blocked out) prior to disclosure." *Id*. Regardless, privilege issues for the other redacted entries appear resolved and Plaintiffs will remove their challenges once the documents are produced.

Uber maintained its privilege claim for the following eight (8) entries: JCCP_MDL_PRIVLOG028703; JCCP_MDL_PRIVLOG030622; JCCP_MDL_PRIVLOG031766;; JCCP_MDL_PRIVLOG032247; JCCP_MDL_PRIVLOG025775; JCCP_MDL_PRIVLOG025966; JCCP_MDL_PRIVLOG028378, and JCCP_MDL_PRIVLOG031851.

Of these eight entries, the first four entries remain in dispute and are addressed in the parties' PTO 8 letter addressing Tranche 2 disputed entries.

Plaintiffs are removing their challenge to the final four entries in response to new information provided by Uber[4]. Plaintiffs originally challenged JCCP_MDL_PRIVLOG025775 ("25775")

---

[4] Similarly, on January 11, 2025, in accordance with Dkt. 2005, Plaintiffs notified Uber it was removing their challenges to 2746 documents. The majority of challenges were removed because

4

because Uber erroneously denoted an attorney on the bcc line only, suggesting no legal advice was sought or conveyed. This issue was addressed in the Tranche 2 dispute process, and after correction from Uber, Plaintiffs agreed to withdraw their challenge for an email in the same chain as 25775 (JCCP_MDL_PRIVLOG025776). When creating the pool for the random sample, Plaintiffs inadvertently left 25775 on the list of selections. On January 2, 2025, Plaintiffs informed Uber of that issue and requested to replace 25775 with a back-up selection. Uber refused to add in a back-up selection. In order to proceed apace, Plaintiffs removed their challenge and the privilege issue for this entry is resolved.

Further, JCCP_MDL_PRIVLOG025966 ("25966") was originally challenged because Uber over-redacted the document. Plaintiffs' challenge noted that three other entries for the same email thread only redacted a portion of 25966's message, but 25966 was a fully redacted email. Uber re-produced this document on December 20, 2024, removing the extra redactions. In light of Uber's correction, the privilege issue has been resolved for this document and Plaintiffs removed their challenge.

Furthermore, JCCP_MDL_PRIVLOG028378 ("28378") was originally challenged because Uber failed to denote an attorney on the communication relating to Safety Compliance. During the parties' January 7, 2024 conferral, counsel for Uber stated that the Privilege Log failed to show that the author of the email is an attorney. Based on this new information, Plaintiffs removed their challenge and the privilege issue for this entry is resolved.

Finally, Plaintiffs are removing their challenge to JCCP_MDL_PRIVLOG031851 ("31851") after receiving additional information from Uber Scott Binnings's Declaration. Plaintiffs originally challenged 31851 as it was a Google Comment notification email regarding "Draft Press Release" that a non-attorney, Tracey Breeden received believing the document had a dominant business purpose.

---

Uber had produced redacted documents since Plaintiffs' original challenge or later provided additional information about the document or identity of attorneys.

5

**Defendants' Position:**

Of the 20 documents randomly selected from Tranche 2, Defendants' re-review as part of the conferral confirmed Defendants' initial privilege determinations on 70% of the samples (14 of 20), while the remaining six documents presented close privilege determinations that Defendants decided, in the spirit of compromise and narrowing issues in dispute, to withdraw after careful reconsideration. *See* Cummings Decl. ¶ 31.

***Privilege Redactions***

A fundamental flaw in Plaintiffs' arguments in this JSR and the letter briefs is their conflation of Defendants producing documents containing privilege redactions with Defendants withdrawing a privilege claim entirely. But these are not the same thing. As stated in the joint letter brief for the Tranche 2 dispute, Defendants redacted some of the documents due to the Court's prior rulings on similar issues. Defendants did this in the spirit of cooperation and to avoid rearguing issues that the Court has previously ruled on. Defendants should not be attacked or penalized in any way for making such redactions. If applying the Court's prior rulings to new documents and compromising during conferrals will be counted against Defendants, then Defendants will be forced to reargue issues that the Court has previously decided. That would be contrary to the purpose for the expedited dispute resolution process that the Court set up in PTO No. 20 (ECF 1808).

Moreover, when a document contains privileged communications or information, determining whether that information can be excised from the remainder of the document through redactions, or if the document should be withheld in full, is a fact-intensive judgment call on which reasonable attorneys can, and often do, disagree. As explained in the counsel declaration accompanying the joint letter briefs, Defendants have expended tremendous resources to make these judgment calls through a process that involves multiple layers of review on a document-by-document basis. *See* Cummings Decl. ¶¶ 2-3. Portions of a document containing privileged communications need only be produced if they are "distinct and severable" from the privileged communications, "and if their disclosure would not reveal the substance of the privileged portions." *In re Google RTB Consumer Priv. Litig.*, No. 21-CV-02155-YGR (VKD), 2024 WL 3642191, at *5 (N.D. Cal. Aug. 1, 2024). The level of granularity

at which this must be done is a context-specific determination. The Ninth Circuit has referred to separating "privileged *pages*" from "nonprivileged *pages*." *United States v. Christensen*, 828 F.3d 763, 804 (9th Cir. 2015) (emphases added). Another court has found that where privilege documents consist of "one-page email[s]," this "indicat[es] that there is no distinct and severable text." *Bruce v. Becerra*, No. 22-CV-00115-JES-JLB, 2023 WL 11893014, at *9 (S.D. Cal. Sept. 5, 2023) (citing *Christensen*, 828 F.3d at 803). Plaintiffs do not meaningfully engage with this case law in their arguments above. As these cases illustrate, whether information is feasibly "severable" and "distinct" is a question on which reasonable minds can and often do disagree. All this is to say that Uber's decisions in conferrals to produce some documents with privilege redactions after initially withholding a document in full, with a sound basis to do so, is not evidence of a flawed or bad faith privilege review process.

Plaintiffs' argument that Defendants producing documents with privilege redactions shows systemic flaws in their privilege determinations is wrong. Defendants' willingness to reconsider the feasibility of redactions, often at a high level of granularity shows Defendants' good faith in the parties' conferrals, not any systematic flaws. It is virtually always possible to redact a privileged document rather than withhold it in full, even if little content is left unredacted besides the information appearing on the privilege log like email senders, recipients, and subject lines. But that is not what the law requires. Privilege redactions are only required for content that is distinct and practically severable. In sum, for 6 of the 20 documents, Defendants determined that their initial privilege determination was correct, but that it was possible to produce a redacted version of the document. *See* Cummings Decl. ¶¶ 2-3. This is not evidence of systemic flaws, it simply illustrates the difficult fact-specific nature of redact-versus-withhold determinations in this litigation involving review of over a million documents, many including interactions with legal counsel, and tens of thousands of well-founded privilege claims (all on a very compressed timeline).

Moreover, the threshold privilege determinations for 5 of these 6 documents (where the privilege determination was confirmed, though precise redactions were applied, and the document produced) is not in dispute. After reviewing the privilege redactions, Plaintiffs challenge the privilege

status of only one redaction in one document (JCCP_MDL_PRIVLOG026377)—despite Plaintiffs' consistently over broad *en masse* approach to privilege challenges, challenging thousands of privilege claims with little more than a mouse click from a drop-down menu of challenges—and Defendants expect to prevail on that privilege challenge. *See* Cummings Decl. ¶¶ 2-3, 8-9.

### *Unchanged and Confirmed Privilege Claims*

For 8 documents of the 20 document sample, Defendants made no change to their privilege claims after careful review. *See* Cummings Decl. ¶ 31. In the parties' meet and confer, Defendants provided additional detail to Plaintiffs about these documents and why they are privileged, but Plaintiffs withdrew only three of these challenges. *See* Cummings Decl. ¶ 25. Defendants expect to prevail on the remaining five documents in dispute.

### *Challenges that Plaintiffs Withdrew*

This process demonstrated an issue that Defendants had previously raised with the Court: Plaintiffs' failure to meaningfully revise their privilege challenges in response to this Court's orders and the meet and confer process. For example, as Plaintiffs noted, JCCP_MDL_PRIVLOG025775 is from the same email chain as a document that was included in the Tranche 2 dispute process (2577**6**). During that prior dispute process, Plaintiffs did not withdraw their privilege challenge to 2577**6** in the conferral period, but also did not elect to brief the document despite having available selections. Plaintiffs eventually withdrew their challenge to document 2577**6** on December 28, 2024, but it was in response to the Court's December 21 order requiring Plaintiffs to withdraw challenges that were not warranted in light of lessons learned from the dispute process. Plaintiffs, however, did not withdraw their challenge to 25775 on December 28, so their baseless challenge to 25775 was pending when the parties randomly selected documents on December 30. During the random sampling conferral period, Plaintiffs asked to substitute 25775 with another document rather than simply withdrawing this patently invalid privilege challenge that they had not withdrawn to that point. Defendants did not agree to this proposal (as failure to withdraw a meritless challenge as ordered by the Court was not a valid basis to substitute a randomly selected document), just as Plaintiffs undoubtedly would not have agreed to a hypothetical request by Defendants to substitute documents

from the randomly selected set to avoid withdrawing privilege claims. *See* Cummings Decl. ¶ 15, 25.

Another example is JCCP_MDL_PRIVLOG025966. When documents were randomly selected on December 30, Plaintiffs had a challenge pending for this document even though Defendants had already produced the document with corrected redactions on December 20-–(the revised redactions were slight; they consisted of removing redactions of three sentences to make the redactions consistent with the redactions on other emails in the same email chain). In other words, on December 30, Plaintiffs had not withdrawn their challenge to this document despite withdrawing other Tranche 2 claims on December 28, 2024. But Plaintiffs correctly did so during this conferral period, having tied up the parties' and the Court's resources all the while. *See* Cummings Decl. ¶ 11, 25.

As to JCCP_MDL_PRIVLOG028378, the in-house counsel on that communication was not on Defendants' list of in-house counsel used to generate asterisks in privilege logs, but Defendants immediately addressed that issue for that document and across the board, as reflected on the privilege log served on January 10, 2025. *See* Cummings Decl. ¶¶ 24-25.

Plaintiffs withdrew their challenge to JCCP_MDL_PRIVLOG031851 for the first time in a draft of this Joint Status Report sent at 8:10 p.m. EST on the day of filing, purportedly based on information in Scott Binnings' declaration. But this same information was provided to Plaintiffs by Uber in the parties' January 7, 2025 conferral, yet Plaintiffs did not withdraw their challenge at any point until making day-of-filing edits. *See* Cummings Decl. ¶ 23(e). Plaintiffs offer no reason why they waited until the eleventh hour to withdraw their challenge to this document, having ignored this same information provided in the conferral designed to resolve such issues without taxing the Court's resources.

Finally, Plaintiffs state that they withdrew 2,746 challenges on January 11, 2025, "[t]he majority of [which] were removed because Uber had produced redacted documents since Plaintiffs' original challenge or later provided additional information about the document or identity of attorneys." This description of Defendants working to move the iterative privilege dispute process forward is inconsistent with Plaintiffs' constant attacks on Defendants.

*Withdrawals of Privilege Claims*

Defendants withdrew privilege claims for 6 of the Tranche 20 documents. These documents were emails that generally included attorneys and topics on which legal advice was regularly provided. With more time and upon closer review, Defendants determined these emails were not privileged. *See* Cummings Decl. ¶ 31. Given the small sample size, it is unlikely that the percentage from these 6 documents (30%) is representative of the larger set of privilege claims. In any event, Defendants will continue to apply lessons learned from the Court's order and conduct targeted re-reviews in order to refine its privilege claims where appropriate.

Plaintiffs' claim that Defendants "only properly review documents after entries are randomly selected or challenged by Plaintiffs" because Uber has withdrawn privilege claims in some instances is baseless. Uber has conducted a proper, individualized privilege review for every document on the privilege log. Refining privilege claims in light of the Court's guidance does not undercut this fact. Plaintiffs' narrative of Defendants conducting a meaningful review for the first time in conferrals is pure fiction.

### III.   Disposition of Randomly Selected Tranche 3 Documents

**Plaintiffs' Position:**

The Tranche 3 entries selected were JCCP_MDL_PRIVLOG044017; JCCP_MDL_PRIVLOG044456; JCCP_MDL_PRIVLOG044768; JCCP_MDL_PRIVLOG045031; JCCP_MDL_PRIVLOG048052; JCCP_MDL_PRIVLOG050377; JCCP_MDL_PRIVLOG052575; JCCP_MDL_PRIVLOG052655; JCCP_MDL_PRIVLOG052825; and JCCP_MDL_PRIVLOG056807.

When the random selection occurred, Plaintiffs noted that six (6) of the entries were automated emails that an Uber employee received when another employee left a message on a JIRA or incident ticket. Plaintiffs proposed replacing some of these entries with back-up selections. Uber stated that because the emails related to six separate incidents and were "representative" of Tranche

3,[5] it refused to replace the selections. In order to avoid continued delay, Plaintiffs agreed to proceed with these selections.

On January 6, 2025, Uber responded to the ten (10) Tranche 3 entries. Uber maintained its privilege claim for three (3) samples, agreed to produce three (3) samples with redactions,[6] and withdrew its privilege claim in full from the remaining four (4) samples.[7] **In sum, Uber withdrew its privilege claim, in full or in part, from 70% of the randomly selected Tranche 3 documents.**

Privilege issues are now resolved for the six entries from which Uber fully withdrew its privilege claim. As to the three entries that Uber agreed to produce with redactions, Uber provided Plaintiffs with copies of the redacted versions on January 7, 2024.

Of the redacted entries JCCP_MDL_PRIVLOG044017; JCCP_MDL_PRIVLOG052825; and JCCP_MDL_PRIVLOG056807, the redactions made for JCCP_MDL_PRIVLOG044017 are improper and Plaintiffs will address the issue on the parties' PTO Letter address Tranche 3 disputes. The privilege issues for the other redacted entries are resolved and Plaintiffs will remove their challenges once the documents are produced.

Uber maintained its privilege claim for: JCCP_MDL_PRIVLOG044768; JCCP_MDL_PRIVLOG050377; and JCCP_MDL_PRIVLOG052655. These entries are still in dispute and will be addressed in the parties' PTO 8 letter addressing Tranche 3 disputed entries.

**Defendants' Position:**

Of the 10 documents randomly selected from Tranche 3, Defendants' re-review as part of the conferral confirmed Defendants' initial privilege determinations on 60% of the samples (6 of 10), (*i.e.*, three with privilege redactions and three with no changes). *See* Cummings Decl. ¶ 30.

*Privilege Redactions*

Defendants redacted three documents, and Plaintiffs do not dispute those redactions. As explained above, a fundamental flaw in Plaintiffs' arguments in this JSR and the letter briefs is their

---

[5] Uber's Tranche 3 Privilege Log contained thousands of similar JIRA/Incident related emails.
[6] JCCP_MDL_PRIVLOG044017; JCCP_MDL_PRIVLOG052825; and JCCP_MDL_PRIVLOG056807.
[7] JCCP_MDL_PRIVLOG048052; JCCP_MDL_PRIVLOG044456; JCCP_MDL_PRIVLOG045031; and JCCP_MDL_PRIVLOG052575.

conflation of producing documents with privilege redactions with withdrawing a privilege claim. Plaintiffs' arguments for Tranche 3 rest on this same error.

### Unchanged and Confirmed Privilege Claims

For 3 documents, Defendants made no change to their privilege claims after careful review. In the parties' meet and confer, Defendants provided additional detail to Plaintiffs about these documents and why they are privileged, but Plaintiffs withdrew none of these challenges. Defendants expect to prevail on all three documents. *See* Cummings Decl. ¶¶ 23, 25, 30.

### Withdrawals of Privilege Claims

As noted by Plaintiffs, six of the ten randomly selected Tranche 3 privilege disputes involved JIRA incident report comment notification emails. Plaintiffs suggested replacing some of these selections from the randomly drawn sample. Defendants did not agree because these documents were selected using the random selection process agreed upon by the parties, as ordered by the Court.[8] Going down the path of re-selecting documents in an attempt to make the random selection more "representative" inevitably risks generating conflict about whether the set is sufficiently representative, which is why Defendants declined this suggestion and stuck with the direction from the Court to randomly select this set.

Of this set of JIRA emails, Defendants maintained in full their privilege claims as to 3 of the documents, and withdrew their privilege claim as to 3 of the documents. *See* Cummings Decl. ¶ 30. These emails typically contain a single comment within a JIRA file. Defendants do not take the position that JIRA files are categorically privileged in their entirety. However, the JIRA system is routinely used by Uber's in-house attorneys and employees working at their direction to provide legal advice on the incidents in light of the potential for litigation. As a result, some JIRA comment emails are privileged and others are not. Defendants have not categorically withheld all such emails. However, in light of the examples in this sample set, Defendants have on their own initiative begun re-reviewing all such JIRA emails (every email with "JIRA" in the subject line) on the privilege log,

---

[8] Plaintiffs state that in a conferral, Defendants did not agree to substitute JIRA emails because they "related to six separate incidents and were 'representative' of Tranche 3." What Defendants said was that the process ordered by the Court was to make random selections.

about 3,800 documents and will produce documents that Defendants determine can be produced with redactions or without a claim of legal privilege.

Defendants did not withdraw their privilege claims as to any non-JIRA documents in the Tranche 3 set, and respectfully request that the Court uphold all challenged privilege claims. *See* Cummings Decl. ¶ 25.

By: */s/Roopal Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

By: */s/ Michael B. Shortnacy*
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (*Pro Hac Vice* admitted)
oot@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
1800 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

RANDALL S. LUSKEY (SBN: 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: January 14, 2025                                    By: /s/Roopal Luhana

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

                                                                    By: /s/Roopal Luhana