

Tiffany R. Ellis | Partner
15 E Baltimore Ave., Detroit, MI, 48202
313-210-1559    504-608-1465    tellis@peifferwolf.com

December 17, 2024

<u>Sent via Email</u>

Michael Shortnacy
Shook, Hardy, & Bacon, L.L.P.
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
mshortnacy@shb.com

    Re: *Challenges to Uber's Tranche 3 Privilege Logs*

Dear Counsel:

  This letter addresses Plaintiffs' general issues with Uber's privilege log and specific challenges to Uber's claims of attorney-client privilege and/or work product privilege as the basis for withholding or redacting certain documents identified on Uber's Tranche 3 Privilege Log ("Tranche 3 log"). <u>Exhibit A</u>, attached to this letter, is the Tranche 3 log reproduced to include only Plaintiffs' challenged entries and/or those entries which include insufficient details to assess privilege. Plaintiffs have added column AH "Challenge" which notes the reason why the specific entry is being challenged, as well as columns AI to AT which note the categorical reason(s) an entry is challenged based on reasons below.

  Plaintiffs also designate sixty (60) entries from Tranche 3 log per PTO 20, see <u>Exhibit B</u>. Plaintiffs request that parties hold the first meet and confer per the PTO 20 dispute process on Friday, December 20, 2024.

## General Issues

  First, there are some general glaring issues with Uber's Tranche 3 log.

- Based on Plaintiffs' review of Uber's Tranche 3 log, it is apparent Uber has not followed the Court's directive in its November 27, 2024 Order to comply with the Court's "directives...to apply "lessons learned." The continued presence of these "systemic errors" in Uber's logs waste the parties resources and time and must be remedied.

New Orleans — Gravier St., Ste. 1600, NOLA, 70112 — (504) 523-2434 — PeifferWolf.com
Cleveland (216) 589-9280   Los Angeles (415) 766-3545   San Francisco (415) 766-3544   New York (585) 310-5140   Birmingham (205) 203-0363
Detroit (313) 572-4727   St. Louis (314) 669-3600   Chicago (312) 374-8261   Youngstown (330) 642-3925   Atlanta (404) 282-4806

- Uber's Tranche 3 log should have been provided to Plaintiffs on December 3, 2024 per PTO 20. Uber provided the Tranche 3 log on December 4, 2024 via email at 4:29 a.m. Eastern/1:29 a.m. Pacific.
- Uber's Tranche 3 log contains thousands of JIRA/Specific incident notification email chains. Uber inconsistencies with these entries appears formulaic. For example, once a sexual assault or sexual misconduct is reported to Uber, a wide range of Uber employees are notified of the incident and various Uber employees respond to the email thread. Occasionally an Uber attorney may provide limited legal input. Uber routinely provides these chains with redactions covering the legal input but occasionally it appears Uber over-reaches its privilege claim and fully withholds entire chains. Plaintiffs request that Uber maintain consistent practices regarding its privilege assertions.

### Challenges to Uber's privilege claims

Pursuant to Federal Rules of Civil Procedure 26(b)(5) and PTO 14, Uber must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." If the asserted basis for withholding or redaction is attorney-client privilege, the privilege log must be sufficiently detailed to allow Plaintiffs to conclude that the communication was "between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (quoting *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020)). If the asserted basis for withholding or redaction is work product, the privilege log must be sufficiently detailed to allow Plaintiffs to conclude that the communications were "prepared by a party or [their] representative in anticipation of litigation." *Sanmina*, 968 F.3d at 1119 (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)). As stated above and noted in Exhibit A, Plaintiffs believe numerous log entries fail to provide sufficient detail to allow Plaintiffs to assess Uber's privilege claim.

### Dual-purpose communications

These documents involve a lawyer but contain both legal and non-legal purpose. To determine whether these "dual-purpose" communications are protected by the attorney client privilege, courts determine whether the "primary purpose" was legal or non-legal. "Under the primary purpose test, 'courts look at whether the primary purpose of the communication is to give or receive legal advice, as opposed to business or tax advice.'" *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21CV02450WHODMR, 2022 WL 524065, at *4 n.3 (N.D. Cal. Feb. 22, 2022) (quoting *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021)). "Under California law, the communications of corporate employees with counsel, or with each other about legal advice, are privileged. However, the privilege extends only to communications regarding legal advice, not

corporate policy." *OwLink Tech., Inc v. Cypress Tech. Co., Ltd*, No. 8:21-cv-00717, 2023 WL 4681543, at *2 (C.D. Cal. June 29, 2023) (citing *Zurich Am. Ins. Co. v. Superior Court*, 155 Cal. App. 4th 1485, 1500-02 (2007)). Where employees "discuss what business policies [a] corporation[] should pursue in the light of [] legal advice," *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 865 (N.D. Cal. 2019) (citation omitted), such communications are not presumptively privileged.

Business communications are not protected merely because they follow the provision of legal advice. See, e.g., *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 865 (N.D. Cal. 2019) (where employees "discuss what business policies the corporation[] should pursue in the light of [counsel's] legal advice, [that] discussion would not be confidential under the attorney-client privilege and would be discoverable" (quoting *Ins. Co. of N. Am. v. Superior Ct.,* 108 Cal. App. 3d 758, 770-71 (1980))). These fully withheld documents and/or redactions are over-inclusive insofar as they concern routine corporate business, here concerning Uber issues. And "[i]t is established that otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *Zurich*, 155 Cal. App. 4th at 1504 (collecting cases).

Finally, "a particular transmission of [a] draft directly to an attorney retained to provide legal advice would likely be privileged, but [if] Uber's privilege log and the margin comments on [a] document indicate that the same document was shared contemporaneously with both lawyers and non-lawyers, who edited it for content, style, accuracy, and public relations concerns in addition to assessing legal risk"..it is not privileged. ECF No. 1908,

Plaintiffs challenge 3,201 of the 17,579 entries on the Tranche 3 log because the documents or communications appear to be dual purpose with a primary business purpose for Uber based on the details provided. Please see Exhibit A.

Additionally, Plaintiffs challenge 4 of the 17,579 entries on the Tranche 3 log because the documents or communications appear to be dual purpose with a primary purpose relating to regulatory or lobbying advice based on the details provided. Please see Exhibit A.

**Legal Advice not sought and/or an attorney is simply cc'd on communication**

To the extent Uber withheld such a document (which are a large share of the challenged entries noted in <u>Exhibit A</u>) because it was, at some point, "prepared at the direction of in-house counsel" or sent to an attorney in order to seek legal advice, that is wholly improper. See *Stirratt v. Uber Techs., Inc*., No. 19-CV- 06361-RS (DMR), 2024 WL 1723710, at *1 (N.D. Cal. Apr. 19, 2024) ("The privilege protects only communications, and not underlying facts."). Sending

Michael Shortnacy
December 17, 2024
Page 4

documents to Uber's counsel does not automatically render them privileged. See *Murray v. Mayo Clinic*, No. CV-14-01314-PHXSPL, 2016 WL 10646315, at *3 (D. Ariz. July 20, 2016) ("[C]ommunications do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer.") (citation omitted)). *See also* ECF No. 1908 ("Multiple log entries indicated that documents were "prepared at the direction of in-house counsel," but Uber did not provide evidence to support those assertions. Uber therefore must review all entries that assert a document was prepared at the direction of counsel to determine whether they are accurate.").

For documents or emails withheld on the basis of attorney-client privilege where one of the recipients is an attorney, it is not clear from the Privilege Document Category in connection to the other metadata field information, File Name, Email Subject, and the Email From/To lines that the author was soliciting legal advice, see *Stirratt, 2024 WL 1723710*, at *1 ("[F]or the privilege to apply, 'the communication must be between the client and lawyer for the purpose of obtaining legal advice.'") (quoting *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002)).

Plaintiffs challenge 6,892 of the 17,579 entries on the Tranche 3 log because entries for the documents or communications show no legal advice was actually sought or given based on the details provided. Please see Exhibit A.

Additionally, Plaintiffs challenge 1,486 of the 17,579 entries on the Tranche 3 log because it appears an attorney was simply cc'd or bcc'd on an email with many non-attorneys and no legal advice appears to have been sought or given based on the details provided. These entries give the appearance that an attorney played no or little role in a communication between non-attorneys. Please see Exhibit A.

> "Merely copying or 'cc-ing' legal counsel, in and of itself, is not enough to trigger the attorney-client privilege. Instead, each element of the privilege must be met when the attorney-client privilege is being asserted." *Stirratt v. Uber Techs., Inc.*, 2024 WL 1723710, at *3 (N.D. Cal. Apr. 19, 2024) (cleaned up, quotation omitted).

*Engurasoff v. Zayo Group LLC*, 2015 WL 335793, at *3 (N.D. Cal. Jan. 23, 2015):

However, the number of recipients, and the fact that the attorney is merely CC'd on emails, suggests the possibility that the emails could be communications regarding business strategy that do not involve the communication or solicitation of legal advice. *See N. Pacifica, LLC v. City of Pacifica*, 274 F.Supp.2d 1118, 1127 (N.D.Cal.2003) ("In the business world, a meeting is not automatically privileged simply because legal counsel is present. Moreover ... the mere fact that clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that everything said at the meeting is privileged.") (citations omitted). I*n re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, No. 09–md–2032–MMC (JSC), 2011 WL

3268091, at *4 (N.D.Cal. July 28, 2011) ("Merely labeling a communication as an 'attorney-client privileged draft' ... or adding an attorney as a recipient are insufficient to confer privilege when the communication is not otherwise for the purpose of facilitating legal advice or services."); *Oracle Am., Inc. v. Google Inc*., No. C 10–03561–WHA, 2011 WL 5024457, at *4 (N.D.Cal. Oct. 20, 2011) (finding that nothing in the content of an email indicated that it was prepared in anticipation of litigation or to further the provision of legal advice, where email was from an engineer, the salutation of the email addressed only a non-attorney, the attorney was "at most, was a mere 'To' " recipient, and "there was no evidence that the [attorney] actually read or responded to the email, much less used it in constructing any legal advice").

The fact that Yost is in-house counsel for Defendant, rather than outside counsel, also makes it more likely that the communications could have been made for a business purpose rather than for the purpose of obtaining legal advice. *See United States v. ChevronTexaco Corp*., 241 F.Supp.2d 1065, 1074–76 (N.D.Cal.2002) ("Communications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice .... [but] unlike outside counsel, in-house attorneys can serve multiple functions within the corporation. In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities. Accordingly, communications involving in-house counsel might well pertain to business rather than legal matters. The privilege does not protect an attorney's business advice. Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys. Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel.").

Here, Plaintiffs challenge entries, *see* <u>exhibit A</u>, on the Tranche 3 log that no legal advice appears to have been sought or given based on the totality of the information Uber provided on the log and entries where it appears an attorney was simply added to an email with many non-attorneys as the communication of document was business in nature.

**No apparent involvement of counsel**

As noted in Plaintiffs' general issues, it appears thousands of entries to Tranche 2 logs, *see* <u>Exhibit A</u>, have no apparent involvement of counsel or Uber did not denote an attorney on the communication. If the asserted basis for withholding or redaction is attorney-client privilege, the privilege log must be sufficiently detailed to allow Plaintiffs to conclude that the communication was "between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (quoting *United States v. Sanmina Corp*., 968 F.3d 1107, 1116 (9th Cir. 2020)). Here, without an attorney denoted, Plaintiffs cannot conclude that the communication was actually between an attorney and clients.

Michael Shortnacy
December 17, 2024
Page 6

Plaintiffs challenge 3,385 of the 17,579 entries on the Tranche 3 log because it appears no attorney was a part of the communication based on the details provided. This also includes entries where Uber denoted a person who is not an attorney and states that person is giving legal advice. Please see Exhibit A.

For privilege log entries where Uber didn't denote any attorneys, but simply listed "Uber Legal Department" as the basis for privilege, Uber must amend the log. See ECF No. 1908 (Uber's references only to "Uber Legal Department" are "unhelpful[ly]". *See* ECF No. 1908. ("Multiple log entries failed to list all attorneys involved in a document in the "Privileged Name(s)" column despite the apparent involvement of one or more attorneys, or failed to designate all attorneys listed in other fields with an asterisk. Uber shall review all log entries that do not include any attorneys in the "Privileged Name(s)" column to determine whether the lack of names in that column is accurate and whether any attorneys listed in other columns for those entries are properly designated."). *See also Palmer v. Cognizant Tech. Solutions Corp.*, 2021 WL 3145982, at *9, 12 (C.D. Cal. July 9, 2021) (ordering defendant to amend privilege log when "Cognizant Legal Department" is the only listed basis for privilege).

**Third Party Involvement**

Plaintiffs challenge 23 of the 17,579 entries on the Tranche 3 log where the communication included a non-uber employee, third party, based on the details provided. This is also after Plaintiffs' cross-referenced the "thirdparty" digest uber provided on December 14, 2024. These entries include third party domains not on the digest and/or no apparent legal advice was being discussed. Please see Exhibit A.

For example, JCCP_MDL_PRIVLOG052932 appears to be an email the LERT team received from an angry South African app user. The third-party emails include David Khasebe <david@dkmc.co.za>, Rea BabyMoma <rea.sebola@icloud.com>; khasebegomolemo@gmail.com; and capetownfcs@saps.org.za.

Based on the email addresses it appears these are non-Uber employees, and an attorney-client relationship would not exist. "Under the attorney-client privilege, it is a general rule that attorney-client communications made 'in the presence of, or shared with, third parties destroy the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality.' Similarly, as discussed below, the work-product privilege may be waived by disclosure to third parties which results in disclosure to an adversary party." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (quoting 1 Paul R. Rice, Attorney–Client Privilege in the United States § 4:35, at 195 (1999 ed.)). Please produce the documents and communications where Uber waived privileged by including a third party. In addition, please formally withdraw challenges to all entries including third parties whose e-mail addresses do not

end in domains listed on Uber's December 14 digest and produce these documents within fourteen (14) days.

Finally, with respect to the digest, Plaintiffs remind Uber that, the Court's November 27 Order reads in relevant part:

> *Rather than including a detailed description in each log entry, Uber is ORDERED to prepare a digest of each third party Uber believes falls within the scope of its privilege with an explanation of each such party's role and Uber's position as to how that role furthers an attorney-client relationship or otherwise falls within the scope of attorney-client privilege.3 Uber shall provide such a digest for already-served privilege logs no later than fourteen days from the date of this Order, and shall update the digest in conjunction with serving future privilege logs. Individual privilege log entries for communications that include third parties must be sufficient to understand Uber's claim of privilege when viewed in conjunction with the digest. If Uber would prefer to address the roles of some third parties (e.g., parties that appear in only a small number of documents) within individual log entries rather than in the digest, it may do so.*
>
> *This digest need not include outside counsel, so long as the privilege log otherwise makes clear when a non-Uber employee included on a purportedly privileged communication is an attorney or an employee of a law firm.*

The digest Uber provided does not comport with the Court's order nor serve the Court's intended purpose of allowing Plaintiffs to evaluate individual privilege log entries effectively. Without additional information, Plaintiffs are unable to sufficiently understand Uber's claims of privilege when "viewed in conjunction with the digest." For example, Uber lists "gmail.com" as a third-party domain over which it claims privilege but does not include any names or actual e-mail addresses in connection with this domain. Without more, Plaintiffs are unable to meaningfully even identify the entries over third parties which Uber claims privilege.

To that end Plaintiff request, again, an updated digest, in excel format, that includes:

1. The full list of names, titles, and e-mail addresses over which Uber asserts privilege affiliated with each third-party domain;
2. And the specific log entry(ies) implicated by each individual third party or domain.

## Work Product

F.R.C.P. 26(b)(3) provides the standard for work product doctrine for a case sitting in diversity jurisdiction in federal court. "Claims of privilege under the attorney work product doctrine are, on the other hand, governed solely by federal law. "[T]he work-product doctrine is

Michael Shortnacy
December 17, 2024
Page 8

governed by a uniform federal standard even in diversity cases." *Abbott Laboratories v. Alpha Therapeutic Corp.,* 200 F.R.D. 401, 405 (N.D. Ill. 2001) (quoting Dawson v. New York Life Ins. Co., 901 F. Supp. 1362, 1367 (N.D.Ill.1995)). Once challenged, the burden is first on the party claiming the privilege to demonstrate the materials for which privilege was claimed were prepared in anticipation of litigation, that is, that the work product doctrine is applicable. *Id.* at 409.

Codified in Federal Rule of Civil Procedure 26(b)(3), the work product doctrine shields from discovery documents and other tangible things that are prepared by or for a party or its representative in anticipation of litigation. Generally, a document should be "deemed prepared in anticipation of litigation" if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) (internal citation omitted). A litigation need not have commenced for a document to be protected by the work product doctrine, rather, "there must be more than a remote possibility of litigation" when the document was prepared. *Fox v. California Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988). That said, "[w]hen it is clear that documents would have been prepared independent of any anticipation of use in litigation (i.e., because some other purpose or obligation was sufficient to cause them to be prepared), no work product protection can attach." *First Pacific Networks, Inc. v. Atlantic Mut. Ins. Co.*, 163 F.R.D. 574, 582 (N.D. Cal. 1995).

Here, Plaintiffs challenge 889 of the 17,579 entries on the Tranche 3 log where Uber claimed an entry was protected by work product privileged but did not appear to have been created in anticipation of litigation based on the details provided or even created by an attorney. Please see Exhibit A.

Please produce the documents not created in anticipation of litigation in full or, should you maintain there is nevertheless some privileged content, with appropriate redactions.

## **Conclusion**

As to each challenged document identified on <u>Exhibit A</u>, it is our position that Uber cannot meet its burden to establish the document is protected under the attorney-client privilege and/or work-product privilege. As the majority of the documents on the Privilege Log were withheld in their entirety based on attorney-client privilege claims, the undersigned's review of Uber's claims is limited to Uber's descriptions of the subject matter. Yet, we are not required to accept Uber's interpretation of the communications as constituting privileged communications.

Finally, please be advised that although we presently note an entry's insufficient detail to assess privilege and or challenge 8,164 of the entries on the Tranche 3 log, we reserve the right to challenge additional documents on the Tranche 3 log and any additional Uber's Privilege Logs.

Michael Shortnacy
December 17, 2024
Page 9

Plaintiffs look forward to a meet and confer with Defendants with four days of this letter according to PTO 16 and to confer regarding the sixty (60) designated entries per PTO 20.

    Sincerely,

    Tiffany R. Ellis
    tellis@peifferwolf.com

    Rachel B. Abrams
    Peiffer Wolf Carr Kane Conway & Wise, LLP
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Rabrams@peifferwolf.com

    Sarah R. London
    Lieff Cabraser Heimann & Bernstein
    275 Battery Street, Fl. 29
    San Francisco, CA 94111
    Slondon@lchb.com

    Roopal P. Luhana, Esq.
    Chaffin Luhana LLP
    600 Third Avenue, F. 12
    New York, NY 10016
    Luhana@chaffinluhana.com

cc:
Robert A. Atkins
Patrick L. Oot
Bobbie E. Hooper
Kyle Smith
Jessica E. Phillips
Randall S. Luskey
Jacqueline P. Rubin
Christine M. Ray
*Counsel for Defendants*
*Uber Technologies, Inc., Rasier LLC, and Rasier-CA LLC*