UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No: 3:23-MD-03084 CRB <br><br> JOINT LETTER BRIEF REGARDING TRANCHE 2 RANDOM SELECTION SAMPLE DISPUTES |
| This Document Relates to: <br><br> ALL ACTIONS | Judge:      Hon. Lisa J. Cisneros <br> Courtroom: G – 15th Floor |

Pursuant to Order Regarding Second Set of Challenges to Uber's Privilege Claims (ECF No. 2005), the Parties submit this joint letter regarding Tranche 2 randomly selected samples still in dispute after Parties' meet-and-confer process.

## I.     Plaintiffs' Position

### Privilege Disputes

As discussed in the Joint Status Report regarding the random selection process, the parties met on December 30, 2024 and randomly selected 20 Tranche 2 entries. Of the 20 samples. Uber agreed to produce six entries in full, six entries with redactions, and maintained its claim of privilege over just eight samples. During the parties' January 7, 2024 meet-and-confer, Uber stated that it is still deciding if one of the eight samples over which it maintains its claim of privilege, JCCP_MDL_PRIVLOG031766, is responsive to Plaintiffs' discovery requests. Thus, <u>Uber withdrew its privilege claims, in full or in part, for 60% of the randomly selected Tranche 2 samples</u>.[1]

The parties also randomly selected 10 Tranche 3 entries as well. Of those, Uber agreed to produce four entries in full, produce three entries with redactions, and maintained its claim of privilege over just three entries. <u>So Uber withdrew its privilege claims, in full or in part, for 70% of the randomly selected Tranche 3 samples</u>.

Below, and in related privilege filings, Uber seems to argue that it can withhold entire emails for privilege, even if the entire email is not privileged, merely because the email may be one-page or otherwise not voluminous. No so. It is black letter law that an entire communication may only be deemed privileged "when it contains privileged portions that are so inextricably intertwined with the rest of the text that they cannot be separated." *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (citations and internal quotation marks omitted). "If the nonprivileged portions of a communication are distinct and severable, and their disclosure would not effectively reveal the substance of the privileged legal portions, the court must designate which portions of the communication are protected and therefore may be excised or redacted (blocked out) prior to disclosure." *Id*.

In short, this process has shown that the incredibly high rate of Uber's unjustified privilege assertions is not due to Plaintiffs "cherry-picking" samples, as Uber falsely claims, but rather due to Uber's unjustified privilege assertions and its failure to conduct a good faith privilege review. Many documents that Uber previously withheld contain critical evidence that would not have come to light if Uber's unsubstantiated privilege claims had not been challenged. To date, Uber's privilege log contains approximately 57,600 entries. Without substantial Court intervention, Uber would have successfully withheld critical evidence under unsubstantiated privilege assertions. Unfortunately, without continued Court intervention, Plaintiffs do not believe that all relevant, non-privileged discovery will be produced.

All told, approximately 84% of the samples from the Tranche 1 privilege log and approximately 73% of the samples from the Tranche 2 log were admitted by Uber or found by this Court to not be privileged, either in full or in part. And at least 60-70% of the random samples are now admittedly not privileged, in full or in part.

This requires sanctions. As a starting point, Plaintiffs should be awarded their fees and

---

[1] This rate grows to 65% if Uber deems JCCP_MDL_PRIVLOG031766 unresponsive.

costs pursuant to Rule 37(b)(2)(A) for the considerable time that Plaintiffs' counsel has spent to date reviewing Uber's inadequate logs. But compensation for time does not mitigate the harm to Plaintiffs' ability to prove their case. The Court should go further and find that Uber has waived its privilege claims for the logs it has produced to date and all documents on the logs should be produced, except for communications with outside counsel or communications directly related to any ongoing litigation. Alternatively, the Court should find that Uber's violation of discovery rules justifies an adverse inference instruction explaining to the jury that Uber has improperly withheld evidence materially favorable to Plaintiffs (leaving the ultimate judgment call of whether to give the instruction to Judge Breyer).

*LD v. United Behavioral Health*, 2022 WL 17408010, at *6-7, 18-19 (N.D. Cal. Dec. 2 2022) is instructive. In *LD*, Chief Magistrate Judge Spero addressed the plaintiffs' challenges to the adequacy of a defendant's privilege log and whether the defendant improperly withheld documents on the basis of privilege or under the work product doctrine. The Court found that, based on its review of the log and its *in camera* review of the sample documents, the log was inadequate, and that the vast majority of the documents were improperly withheld or should have been produced in redacted form. *Id*. As a result, the Court held that the defendant waived all privilege and work product protection as to the documents listed on its log. *Id*.

The *LD* Court further found that the defendant's "conduct has significantly increased the prejudice to Plaintiffs associated with its failure to produce an adequate privilege log as the length of the delay has almost doubled since Plaintiffs initially sought judicial intervention on this issue. [] The window for providing meaningful relief for Plaintiffs is fast closing [] and the district judge has made clear that avoiding further delay in this case is of paramount importance." *Id*. at 6.

Just so here. Uber's inadequate logs and unjustified privilege claims has significantly increased the prejudice to Plaintiffs. As Judge Breyer has made clear, these cases are proceeding to trial this year; thus, avoiding undue delay is critical and, with depositions fast approaching, the window for providing meaningful relief to Plaintiffs is fast closing. Just as in *LD*, Uber has "engaged in the sort of 'tactical manipulation of the rules and the discovery process' that warrants a finding of waiver []." *Id*. at 6 (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont*., 408 F.3d 1142, 1149 (9th Cir. 2005).[2]

**Specific Documents**

As to privilege claims still at issue for the random samples, Uber has not met its burden showing that these documents are privileged. Below are six privilege log entries currently at issue.

---

[2] The *LD* Court based its holding on the factors enumerated in *Burlington*, 408 F.3d at 1148. In *Burlington*, the court adopted a "holistic reasonableness test" for waiver, considering the following factors: 1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient);" 2) "the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient);" 3) "the magnitude of the document production;" and 4) "other particular circumstances of the litigation that make responding to discovery unusually easy ... or unusually hard." *Id*. The *Burlington* Court instructed that these factors were intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process. *Id*. For all the reasons previously presented to the Court and herein, all factors (except for factor 3, magnitude of the document production), favor waiver.

**JCCP_MDL_PRIVLOG026377**
This is a December 11, 2017 email with the subject "Notice to Insurers [ADD TO USL]." Uber asserts attorney-client privilege claiming this is a "Confidential e-mail thread discussing legal advice from in-house counsel regarding IRT policies and practices for handling allegations of sexual assault or sexual misconduct." The email is from Buddy Loomis (Uber's Senior Manager Special investigations[3]) to Matthew Baker; neither are attorneys. Nine individuals are included on the cc line with only two being in-house counsel. Uber provided Plaintiffs with a redacted version of the document on January 7, 2025. Plaintiffs dispute the redactions only as to Loomis's December 7, 2017 email at 12:48 MST. This email is from Loomis, a non-attorney, to the NorthAM SIU CSR team. This appears a communication with a team of non-attorneys regarding business practices, with in-house counsel merely copied on the email at a later in time. As such, it has a dominant business purpose and should be produced.

**JCCP_MDL_PRIVLOG028703**
This is a December 5, 2017 JIRA safety incident notification email with the subject "[JIRA] (SAFE-711682) 11-Nov-2017 - Chicago / 7 / United States / Midwest / US Central & Canada / US & Canada - L3 - Physical - Forced or Sexual Touching." Uber asserts attorney-client and work product privileged claiming this is a "Confidential e-mail prepared in anticipation of litigation by in-house counsel regarding reports of driver sexual assault or sexual misconduct." This email appears to be an automated notification email from "(JIRA) safety-case-management@uber.com" to non-attorney Matthew Baker. Uber claims that Laura Alioto and Mike Haas are the privilege holders but neither are attorneys. Alioto was Uber's Head of Global SIU and Large Loss and Legacy Insurance Claims[4], and Haas was a Claims Advocate[5]. This, and numerous similar log entries, appear to be notification emails that individuals from Uber's response team receive when someone leaves a comment on a JIRA ticket. Uber produced hundreds of similar JIRA notification emails in redacted form. Additionally, Uber produces JIRA tickets with its DFS productions. The JIRA tickets only redact comments made by attorneys or direct requests to an attorney. Here, Uber appears to have fully and improperly withheld the entire email instead of producing these with appropriate redactions, if any. As there does not appear to be any attorney comments on this email, it should be produced in full. Uber contends below that this communication is privileged per the Declaration of Maureen Frangopoulos which states that non-attorney Laura Alioto made a comment "in her role" and "worked at the direction and supervision of in-house counsel and would have made this comment in that capacity." *See* Frangopoulos Decl. ¶ 6. Uber does not identify the in-house counsel in question, nor provide a declaration from Ms. Alioto attesting that she was in fact commenting in response to directions from in-house counsel.[6]

---

[3] Buddy O'Connell (Loomis), LinkedIn, https://www.linkedin.com/in/buddy-loomis/ (last visited January 8, 2025).

[4] Laura M. Alioto, LinkedIn, https://www.linkedin.com/in/laura-m-alioto-26135798/ (last visited January 8, 2025).

[5] Mike Haas, LinkedIn, https://www.linkedin.com/in/michaelthaas/ (last visited January 8, 2025).

[6] Plaintiffs do not assert that communications by non-attorneys are categorically not privileged, as Uber states below. Rather, Uber must meet its burden to show that communications by non-attorneys were made in response to, in furtherance of, or were seeking, legal advice.

**JCCP_MDL_PRIVLOG030622**
This is a March 27, 2020 email with the subject of "[FYI] Removal of Driver Personal Data from Rider Trip History change Launching Soon." Uber claims attorney client privilege stating that this is a "Confidential e-mail thread seeking and providing legal advice from in-house counsel regarding Uber's policies and practices for responding to allegations of driver sexual assault or sexual misconduct." This email is from Johnathon Purcell (Uber's Program Manager, Women's Safety and Gender-based Violence Prevention[7]) to non-attorney Nick Murphy, Tracey Breeden (Uber's Head of Global Women's Safety and Gender-Based Violence[8]), and Brittany Anthony (Uber's Head of Global Women's Safety Policy[9]), none of whom are attorneys. Five other individuals are included on the cc line, including two in-house counsel. Based on the information provided, the email concerns numerous non-attorneys discussing a policy procedure change. As such, the document has a dominant business purpose and is not privileged.

**JCCP_MDL_PRIVLOG031766**
This is an October 26, 2017 email with the subject "HNewer Employment Policy Team Meeting." Uber asserts attorney-client privilege and argues this is a "Confidential e-mail thread provided for purposes of seeking legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety." This is an email from Kate Parker (Uber's then Global Director of Product Marketing, Brand Management and Strategic Initiatives[10]) to Jena Wuu (Uber's then Head of Safety and Consumer Protection, Global Public Policy[11]) and Tracey Breeden (Uber's Head of Global Women's Safety and Gender-Based Violence). None are attorneys. Uber describes this as a forwarded email, but did not log any other emails in this chain, including the original email. With no attorney on the email and the email appearing to concern a meeting regarding employment policy, this email has a dominant business purpose and is therefore not privileged. Uber states this email is privileged, in part, because Ms. Slocum and other in-house counsel provided legal advice during and after the meeting. But whether legal advice was provided at the meeting is immaterial. The question is simply if the email itself contains or sought legal advice. Further, during the parties January 7, 2025 conferral, Uber's counsel stated this document may be unresponsive and not related to "initiatives or campaigns to promote rider safety" which was how the document was described on Uber's privilege log.

**JCCP_MDL_PRIVLOG031851[12]**
This is a November 1, 2017 email with the subject "Draft Press Release." Uber asserts attorney client privilege claiming this is a "Confidential e-mail providing legal advice from in-house

---

[7] Johnathon Purcell, LinkedIn, https://www.linkedin.com/in/johnathonpurcell/ (last visited January 8, 2025).
[8] Tracey Breeden, LinkedIn, https://www.linkedin.com/in/tracey-breeden-68061b13/details/experience/ (last visited January 8, 2025).
[9] Brittany Anthony, LinkedIn, https://www.linkedin.com/in/brittany-anthony-816b55175/ (last visited January 8, 2025).
[10] Kate Parker, LinkedIn, https://www.linkedin.com/in/katepparker/ (last visited January 8, 2025).
[11] Jena Wuu, LinkedIn, https://www.linkedin.com/in/jenawuu/?originalSubdomain=de (last visited January 8, 2025).
[12] This appears similar to Tranche 1 dispute samples JCCP_MDL_PRIVLOG006370, JCCP_MDL_PRIVLOG007393, JCCP_MDL_PRIVLOG007396, and JCCP_MDL_PRIVLOG0019282 which the Court held where not privileged.

counsel regarding initiatives or campaigns to promote rider safety." The email is from "Google Docs d+mtexnjkymze0njq3ntc4ota3ntew@docs.google.com" to Tracey Breeden, Uber's Head of Global Women's Safety and Gender-Based Violence. It appears to concern providing Breeden access to a google document to review and edit. Based on the information provided, this email has a dominant business purpose where a non-attorney is given access to a draft press release. It is not privileged and should be produced.

**JCCP_MDL_PRIVLOG032247**
This is a redacted November 7, 2019 email with the subject "Mutombo 2-Strike Policy Update." Uber claims attorney client privilege stating this is a "Redacted confidential e-mail thread memorializing legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety." The redacted email is from Susan Muehrcke, Uber's Central Operations manager[13], Personal Safety, to Danielle Sheridan, Uber's US&C Central Ops Group Lead[14]. Neither are attorneys. No attorney is on the email chain, and it appears to be non-attorneys discussing an internal Uber business policy update. As such, it is not privileged.

## II.    Uber's Position
### Tranche 2 Randomly Selected Privilege Disputes

Plaintiffs criticize Defendants' privilege claims from the conferral on this set of randomly selected documents from Tranche 2. Defendants will respond to these arguments—which are in large part misleading, inaccurate, or incomplete—in the separate joint status report (JSR), but will address a few issues here.

First, Plaintiffs continue to improperly conflate producing documents with privilege redactions with withdrawals of privilege claims—in order to suggest that a similar proportion of documents across Uber's privilege claims are "improperly designated as privileged." To be clear, when Uber has re-reviewed documents in conferrals, as directed by the Court, (and on its own initiative) and determined it can parse out privileged portions of a document with redactions, this is a confirmation that Uber's initial privilege determination was correct, not that it was wrong. It is certainly not indicative of a bad faith privilege review as the *ad hominem* attacks from Plaintiffs' briefing suggests. The separate determination of whether it is feasible to segregate privileged portions of any particular document with redactions is a document-specific inquiry on which reasonable minds can and often do disagree. As explained in more detail in the JSR, a document need only be produced with privilege redactions (rather than withheld in full) if there are "distinct and severable" portions from the privileged communications, "and if their disclosure would not reveal the substance of the privileged portions." *In re Google RTB Consumer Priv. Litig.*, 2024 WL 3642191, at *5 (N.D. Cal. Aug. 1, 2024); *see also United States v. Christensen*, 828 F.3d 763, 804 (9th Cir. 2015) (referencing page-by-page redactions); *Bruce v. Becerra*, No. 2023 WL 11893014, at *9 (S.D. Cal. Sept. 5, 2023) (suggesting that documents being "one-page email[s]" "indicat[es] that there is no distinct and severable text").

---

[13] Susan Muehrcke, LinkedIn, https://www.linkedin.com/in/smuehrcke/ (last visited January 8, 2025).
[14] Danielle Sheridan, LinkedIn, https://www.linkedin.com/in/daniellepsheridan/ (last visited January 8, 2025).

Moreover, Uber redacted some of the documents based on the guidance provided in the Court's prior rulings on similar issues. Uber did this in the spirit of cooperation and to avoid rearguing issues that the Court has previously ruled on. Uber should not be attacked or penalized in any way for making such redactions that narrow the scope of the privilege assertions consistent with this Court's guidance. If applying the Court's prior rulings to new documents and compromising during conferrals will be counted against Uber, then Uber will be forced to reargue issues that the Court has previously decided. That would be contrary to the purpose for the expedited dispute resolution process that the Court set up in PTO No. 20 (ECF 1808).

Second, the Court should reject Plaintiffs' self-described "assumptions" about documents in issue and Plaintiffs' flawed lay person "statistics." But, if using the same logic that Plaintiffs incorrectly use to attack Defendants, the Court's December 21 order upholding Defendants' privilege claims in whole or in part for 12 of 13 documents means that 92% of Plaintiffs' privilege challenges are without merit.

Third, Plaintiffs accuse Defendants of a lack of good faith and accuse Defendants of attempting to "hid[e] critical evidence under unsubstantiated privilege assertions." These attacks are baseless and unprofessional. Even if Plaintiffs' criticisms of the merits of Defendants' privilege claims were correct (and they are not, as demonstrated by the Court's order upholding the majority of such claims), a lack of perfection is not evidence of bad faith, especially when considering the scale and aggressive deadlines for document review in this litigation. Uber has conducted a good faith privilege review and continues to work in good faith to refine its privilege claims in light of conferrals, the Court's rulings on prior challenges, and on its own initiative. On the contrary, as demonstrated below, Plaintiffs continue to make meritless challenges and seek in-camera review of privileged documents, even after Defendants provide information that sufficiently establishes privilege in the privilege log and during conferrals. The record clearly demonstrates Plaintiffs should be required to reevaluate the validity of their challenges.

Finally, the Court should not entertain Plaintiffs' improper "request" for sanctions. First, such a "request" is wrong on the merits, as Defendants have a good faith basis to assert each and every one of their privilege claims. In addition, Plaintiffs added their request to Plaintiffs' portion of the joint brief the day this filing was due, January 14, 2025, and sent it to Defendants at 5:10 p.m. Pacific Time (which is after the 5:00 p.m. Pacific Time filing deadline set out by this Court in PTO No. 8). Due process requires Defendants be allowed a fair opportunity to respond to such a motion, and Plaintiffs' sneaking such a thing into a joint letter brief at the eleventh hour on the day of filing without notice is beyond the pale. This improper, last-minute move shows Plaintiffs' lack of good faith and professionalism in this process. Moreover, Local Rule 7-8 provides the specific requirements a party must follow to file a sanctions motion, which Plaintiffs have failed to do here. For these reasons, the Court should disregard their improper and meritless request.

**Specific Documents**
**JCCP_MDL_PRIVLOG028703:** This is an automatically-generated email from December 2017 containing a comment made by Laura Alioto, then-Head of Global Special Investigation Unit & Large Loss & Legacy Insurance Claims, in a JIRA incident report file on behalf of legal counsel. In her role, Ms. Alioto worked at the direction and supervision of in-house counsel and would have made this comment in that capacity. Ms. Alioto's comment provides specific advice at the

direction of counsel about steps that have been taken and that need to be taken in light of the risk of litigation related to the reported incident. *See* Frangopoulos Decl. ¶ 6; *see also , e.g.*, *USA v. Shaw*, 2023 WL 4539849, at *2 (N.D. Cal. July 12, 2023) (agreeing "that the attorney-client privilege applies to investigations performed by non-attorneys working at the direction of counsel"…"[C]onduct and communications of non-attorney employees, agents and investigators undertaken at direction of counsel are work-product protected"); *United States v. Nobles*, 422 U.S. 225, 238–39 (1975) ("[T]he [attorney work product] doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself.").

Plaintiffs' basis for challenging this document, that the communication at issue is from a non-attorney investigator, is illustrative of Plaintiffs' overly broad, categorical challenges that lack any individualized analysis. Nor does their argument here make any sense. Just because some JIRA incident reports are produced with redactions does not mean that every email like this containing a single comment in a JIRA file is unprivileged. Nor have Plaintiffs provided any support for their apparent assumption that communications by non-attorneys are categorically not privileged, which is contrary to black letter law. Nor have Plaintiff provided any support for their implicit proposition that Uber must identify the specific attorney who directed Ms. Alioto's comment. Defendants' privilege log plainly states that this communication was "prepared at the direction of counsel" and so does Ms. Frangopoulos' declaration. And she provided that declaration based on her personal knowledge about how the JIRA system works. That evidence is sufficient to establish Uber's prima facie privilege claim. Defendants told Plaintiffs during conferrals that this document was a JIRA email with a substantive comment made at the direction of counsel about potential litigation, yet they persisted with their baseless challenge. *See* Cummings Decl. ¶ 23(b). The Court should order Plaintiffs to re-review all privilege challenges to similar JIRA emails to ensure they have an individualized basis for challenging each one beyond the fact that it is a JIRA comment email.

**JCCP_MDL_PRIVLOG030622:** This is an email chain concerning data privacy. It is privileged because it relays and seeks legal advice from counsel. Then-Product Manager, Privacy Engineering, Zach Singleton sent the first email in the email chain, which discusses previous legal advice by Uber's in-house attorneys on a data privacy issue and a proposal to implement that legal advice. Then-Manager of Driving Safety Tyler Spitz forwarded Mr. Singleton's email to then-Counsel Brandon Myers and then-Senior Counsel Jennifer Handley and expressly asked for the lawyers' legal advice on the proposal. In the subsequent emails, Mr. Myers and Ms. Handley provide legal advice on the matter, and in the last two emails in the chain, Uber employees relay and discuss that legal advice. *See* Handley Decl. ¶ 6.

Plaintiffs' argument in support of their challenge boils down to: (1) the fact that, in the top-level email, the two attorneys in the chain are in the "cc" field, and (2) the subject line suggests a topic of a policy change. This again illustrates the complete lack of foundation for this and thousands of other privilege challenges. Plaintiffs are well aware that an attorney being in the "cc" field of the top-level field is entirely irrelevant to a privilege analysis. As Defendants have explained numerous times, a "reply all" in Uber's email system places all recipients in the "cc" field other than the sender of the immediate prior email. Plaintiffs also knew that the first-in-time email relayed legal advice and that legal advice was subsequently requested and provided in the email chain by counsel Brandon Myers and Jennifer Handley—because Defendants told Plaintiffs

these facts during the conferral process. *See* Cummings Decl. ¶ 23(c). Plaintiffs apparently ignored this information and continued with this baseless challenge. Finally, Plaintiffs' business purpose argument based on the subject matter is similarly without merit. Obviously in the context of a business, legal advice will be sought and provided by in-house counsel on business topics, but this does not mean such communications are not privileged. *See Staley v. Gilead Scis., Inc.*, 2021 WL 4318403, at *2 (N.D. Cal. July 16, 2021).

**JCCP_MDL_PRIVLOG031766:** Regardless of whether this document on the whole is responsive and ultimately relevant, this communication is privileged. It is an email chain from then-Director of Ethics and Compliance Deanna Slocum, an attorney, to a group of individuals that included then-Legal Director, Employment, Achia Swift, then-Employment Counsel Alex Scherbatskoy, then-Vice President, Deputy General Counsel, Litigation, Employment & Government Investigations Angela Padilla, then-Head of Employment Legal Anu Ambikaipalan, then-Executive Assistant, Corporate Legal Raymond Galaviz, and then-Legal Director, Litigation, Labor & Employment (Latin America), Sergio Romero. The initial email contained the subject line "Employment Policy Team Meeting," and consisted of an agenda for an upcoming legal team meeting at which this group would discuss employment policies and company initiatives that then-Head of Safety and Insurance Brand Kate Parker would join as a guest speaker to discuss. The primary purpose of the email communication and the meeting (an internal meeting of one of Uber's legal teams) was to seek and provide legal advice concerning employment policies and topics. Ms. Slocum and other in-house counsel provided legal advice during and after the meeting. The second, top-level email in the chain is a forward of the prior email by Ms. Parker to two additional non-attorney employees. *See* Binnings Decl. ¶ 10; *see also* Cummings Decl. ¶ 23(d).

**JCCP_MDL_PRIVLOG031851[15]:** It is an automatically-generated email dated November 1, 2017 consisting of four comments made by Uber in-house attorney and then-Director, Global Insurance Katie Waitzman and Associate General Counsel Scott Binnings on a document stored on Google Docs. In the first comment, Mr. Binnings provided legal advice and "tagged" Uber in-house counsel, Maureen Frangopoulos and then-Legal Director Achia Swift, so they would also provide their own legal advice on that portion of the document. In the following comment, Ms. Waitzman provided legal advice about the wording of the draft and its potential impact on litigation. Mr. Binnings then "tagged" two non-attorneys in the next comment to bring their attention to the legal advice from Ms. Waitzman. In the fourth comment, Ms. Waitzman provided legal advice on a different portion of the draft. *See* Binnings Decl. ¶ 9. All these attorneys were identified in Defendants' privilege log.

Defendants established a prima facie privilege claim with the information provided in their privilege log. But yet again, Plaintiffs attempt to justify their challenge with a wholly baseless and entirely speculative argument: that the topic is somehow only business-related, here a draft press release. But obviously a business routinely seeks and receives legal advice from its in-house attorneys on matters related to its business, including legal advice on draft press releases. *See, e.g. In re Banc of California Sec. Litig.*, 2018 WL 6167907, at *2 (C.D. Cal. Nov. 26, 2018) ("When a client sends a draft disclosure document to an attorney for comment or input, the attorney-client

---

[15] Plaintiffs state in the joint status report that they are withdrawing their privilege claim, but include argument on it in this brief.

privilege attaches to the draft and remains intact even after the final document is disclosed."). Plaintiffs are challenging thousands of documents on their speculative "primary business purpose" basis (which is founded on a mere en masse statement in the privilege challenge log, without more). But as this challenge illustrates, the bases for these challenges are often non-existent. The Court should order Plaintiffs to re-review their challenges and articulate some basis (rather than rank speculation and assumption) that the information provided in the log or through the conferral process there is an actual reason to refute the prima facie showing in the log. *See* Cummings Decl. ¶ 23(e).

**JCCP_MDL_PRIVLOG032247:** This is an email chain from November 2019. This document was produced with a single privilege redaction of one section of one of the emails. In this section, an Uber employee tells another Uber employee that in order to implement a particular policy, she will need to review the guidance provided by Uber's in-house attorneys and approve the policy, and then relays specific legal advice from Legal Director Brandon Myers, Senior Counsel Claire Eagan, and Senior Legal Director Maureen Frangopoulos. The subsequent part of this email, which discusses the public communication about this policy change, is not redacted. The second, top-level email in this chain is not redacted. *See* Frangopoulos Decl. ¶ 2.

Plaintiffs' argument that this document cannot be privileged because there are not attorneys on it is contrary to black letter law. *See Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019) ("The attorney-client privilege 'may attach to communications between nonlegal employees where: [] the employees discuss or transmit legal advice given by counsel…"). And Plaintiffs are well aware from the Defendants' counsel's explanations and additional factual information (without waiver) during parties' conferral that the redacted material in this email relayed legal advice. *See* Cummings Decl. ¶ 23(f).

**JCCP_MDL_PRIVLOG026377[16]:** This is an email chain from December 2017. In the redacted portions of the December 7, 2017 email, non-attorney Uber employee Buddy Loomis, then-Senior Manager, Investigations, conveys legal advice that Associate General Counsel Scott Binnings and other Uber in-house attorneys had previously provided to Ms. Loomis and her team concerning deactivation of independent driver accounts in circumstances involving reported fatalities or sexual misconduct allegations. *See* Binnings Decl. ¶ 11.

cc:     All counsel of record via ECF

---

[16] Plaintiffs did not include this document in their selections of "up to twenty log entries from the initial sample of sixty for inclusion in a joint letter" on the January 7 deadline under PTO 20 (ECF 1808 at 8), but included it in its portion of the letter brief on the evening of January 9, without notice. *See* Cummings Decl. ¶ 27. Defendants, as the party with the burden to provide evidentiary support for the privilege disputes submitted to the Court, have been prejudiced by this late notice.

Dated: January 14, 2025

By: /s/ *Sarah R. London*

Sarah R. London (SBN 267093)

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**

275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
slondon@lchb.com


By: /s/ *Rachel B. Abrams*

Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**

555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com


By: /s/ *Roopal P. Luhana*

Roopal P. Luhana

**CHAFFIN LUHANA LLP**

600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com


*Co-Lead Counsel for Plaintiffs*

Respectfully Submitted,

/s/ *Michael B. Shortnacy*

MICHAEL B. SHORTNACY (SBN: 277035)

mshortnacy@shb.com

**SHOOK, HARDY & BACON L.L.P.**

2121 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093


PATRICK OOT (Admitted *Pro Hac Vice*)

oot@shb.com

**SHOOK, HARDY & BACON L.L.P.**

1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211


VERONICA G. GROMADA (Admitted *Pro Hac Vice*)

vgromada@shb.com

**SHOOK, HARDY & BACON L.L.P.**

600 Travis St., Suite 3400
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
vgromada@shb.com


KYLE N. SMITH (*Pro Hac Vice* admitted)

ksmith@paulweiss.com

JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)

jphillips@paulweiss.com

**PAUL, WEISS, RIFKIND, WHARTON**

                                    **& GARRISON LLP**

                                  2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: January 14, 2025                        By: <u>/s/Roopal P. Luhana          </u>.

JOINT LETTER BRIEF REGARDING TRANCHE 2 RANDOM SELECTION SAMPLE DISPUTES