RANDALL S. LUSKEY (SBN: 240915)
  rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
  ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
  cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
  akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' JANUARY 14, 2025 JOINT LETTER BRIEFS AND JOINT STATUS REPORT ON PRIVILEGE DISPUTE**<br><br>Judge:        Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' JANUARY 14, 2025 JOINT
LETTER BRIEFS AND JOINT STATUS REPORT ON PRIVILEGE DISPUTE  Case No. 3:23-MD-3084-CRB

# DECLARATION OF DANIEL CUMMINGS

I, Daniel Cummings having personal knowledge of the following state:

1. I am an attorney at the law firm of Shook, Hardy & Bacon LLP, attorneys of record for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC, (collectively, "Uber" or "Defendants"). I am a member in good standing of the Bars of the States of Missouri, Kansas, and Nebraska. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief, and if called to testify, I could competently do so. I offer this Declaration in the above-captioned matter in support of Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's submission in the January 14, 2025 privilege dispute letter briefs and joint status report.

2. Defendants' counsel assesses each individual document subject to production for privilege. After initial privilege determinations are made, Defendants employ quality control measures for productions and logging documents as privileged, pursuant to the applicable PTOs. Defendants have expended tremendous resources to make these judgment calls through a process that involves multiple layers of review on a document-by-document basis.

3. In this litigation, Uber has reviewed millions of documents for potential responsiveness, produced around 700,000 documents (through Tranche 3), and logged around 67,600 documents. But, while the total number of privilege log *entries* through Tranche 3 is around 57,600, the total number of thread-level privilege claims (*i.e.*, counting emails within each thread together, rather than counting each iterative individual email within the same email chain separately) is 16,327.

4. Throughout this litigation and at Plaintiffs' request, Uber has voluntarily provided additional information beyond what is required by this Court's orders (ECF 396) to provide more information to enable Plaintiffs to better evaluate Uber's privilege claims. For example, Uber has provided over a dozen additional privilege log fields, with additional information about documents such as the names of Google Collaborators and "privileged name(s)" (to identify attorneys in documents in which an attorney does not expressly appear on the metadata), and a separate tab of "privileged name(s)" that includes Uber job titles of privileged actors.

5.     In response to the Court's November 27, 2024 order on the first set of privilege challenges, Uber reviewed its privilege log entries for Google Docs and Google Sheets and other similar types of comment notifications emails and updated privilege log entries where appropriate; reviewed privilege log entries that asserted a document was prepared at the direction of counsel; reviewed privilege log entries without attorneys in the "privilege name(s)" field for accuracy; and produced a third party privilege digest, all consistent with the Court's order.

6.     In response to the Court's December 21, 2024 order on the second set of privilege challenges, Uber reviewed privilege log entries with attorneys in the "bcc" email field but no attorneys in the "from," "to," or "cc" fields, consistent with the Court's order. In fact, this inadvertent Excel spreadsheet exporting error was remedied in a revised privilege log served to Plaintiffs on November 22, 2024.

7.     Uber produced its Tranche 3 privilege log at around 1:30 a.m. PST on December 4, 2024. This privilege log, which includes entries for 21 custodians, including 4 senior level executives who interfaced frequently with counsel and who were added to the Tranche only on November 4, was served only an hour and half after the Court's deadline (not a "day late" as Plaintiffs claim). This privilege review required an enormous effort to review, produce, and log documents including over the Thanksgiving holiday shortly before the deadline.

8.     Plaintiffs have provided almost no individualized support for each of their privilege challenges. Rather, Plaintiffs largely provide only conclusory statements applying broad categories of challenges. For example, Plaintiffs' Tranche 3 challenge letter discusses these broad categories. In the section on Plaintiffs' "dual-purpose communications," under which category Plaintiffs note they are challenging over 3,200 log entries, Plaintiffs recite case law for the majority of the section before reporting the number of challenges under this category. A true and correct copy of Plaintiffs' Tranche 3 challenge letter is attached as Exhibit A.

9.     Plaintiffs' spreadsheet exhibit attached to their Tranche 3 challenge letter also provides little individualized basis for each challenge. This exhibit is a spreadsheet that appears to have been duplicated from Defendants' privilege log with additional columns added. It contains columns for

1  Plaintiffs' broad challenge categories, which is marked with an "x" if that category applies. While
2  there are 12 categories on this exhibit, the vast majority of challenges fall under "dual purpose –
3  primary business purpose," "legal advice not sought," or "attorney cc'd with many non-attorneys."
4  Under the "challenge" column, a narrative explanation is provided, generally consisting of a
5  conclusory recitation of the broad challenge categories deemed to apply. For example, for
6  JCCP_MDL_PRIVLOG043475, Plaintiffs provide this narrative: "Yes-attorney added to the cc line.
7  Does not appear legal advice was sought or given. Appears to be for a dominant business purpose
8  related to prevention of SA on Uber's App"; for JCCP_MDL_PRIVLOG057545, Plaintiffs provide
9  this narrative: "Yes-no attorney on email, does not appear legal advice was sought or given. Appears
10 to be for a dominant business purpose related to collecting data for safety report"; and for
11 JCCP_MDL_PRIVLOG040518, Plaintiffs provide this narrative: "Yes-no attorney on email, does not
12 appear legal advice was sought or given. Appears to be for a dominant business purpose-media
13 relations re Safety Report." This automated and en masse process has been used to generate many,
14 many thousands of privilege challenges.

15  10. On December 20 and 24, 2024, Uber produced documents which included previously-
16 withheld documents for which Uber had withdrawn its privilege claims, as well as documents
17 produced with privilege redactions. On December 24, 2024 served an updated privilege log. As
18 expressly stated in the Defendants' production transmittal cover letter, Uber withdrew its privilege
19 claims or produced documents with privilege redactions pursuant to the Court's November 27, 2024
20 order. These withdrawals or revisions of Uber's privilege claims were not made in response to
21 Plaintiffs' Tranche 3 challenge letter.

22  11. Uber's December 20, 2024 production included a re-production of
23 JCCP_MDL_PRIVLOG025966 with revised redactions, which was reflected on the December 24,
24 2024 privilege log. The revisions consisted of removing redactions of 3 sentences to make the
25 redactions consistent with those on other emails in the same email chain.
26 JCCP_MDL_PRIVLOG025966 was later selected as a part of the random privilege dispute selections
27 from Tranche 2.

28

12. In Uber's December 30, 2024 response to Plaintiffs' Tranche 3 privilege challenge selections, Uber explained that Uber had "already produced" 15 of these 63 documents "in full or with privilege redactions pursuant to 11/27 Order and PTO 20 timing, as reflected on the 12/24 privilege log." Because these 15 privilege claims had already been addressed, they were not included in the parties' conferral on Tranche 3 privilege disputes under PTO 20. The parties' conferral covered the remaining 48 privilege disputes.

13. In Uber's December 30, 2024 responses, out of the 48 documents at issue, Uber withdrew privilege claims for 21 documents; maintained its privilege claim but agreed to produce with privilege redactions 13 documents; and maintained its privilege claims in full for 11 documents. Uber provided responses to all but 3 of Plaintiffs' Tranche 3 selections: two documents it expressly noted it was continuing to review and investigate (JCCP_MDL_PRIVLOG040519 and JCCP_MDL_PRIVLOG057556) and one document it inadvertently did not provide a response for (JCCP_MDL_PRIVLOG045140).

14. On December 24, 2024, and January 3, 2025, Uber told Plaintiffs that it would provide its position on January 6, 2025 on the randomly selected documents from Tranche 2 and 3, which were selected on December 30, 2024.

15. On January 2, 2025, Plaintiffs asked Uber to remove JCCP_MDL_PRIVLOG025775 from the set of randomly selected Tranche 2 documents and replace it with the first alternate selection. Plaintiffs noted that 25775 was from the same email chain as JCCP_MDL_PRIVLOG025776, which was included in the conferrals for the second round of privilege briefing (on Tranche 2 privilege disputes). In that prior conferral, Plaintiffs did not withdraw their privilege challenge to 25776 nor elect to brief this challenge. On December 28, 2024, Plaintiffs did withdraw their challenge to 25776, but not to 25775—the Tranche 2 document randomly selected for this conferral. Plaintiffs' challenge to 25775 was pending at the time it was randomly selected and at the time Plaintiffs requested to substitute it. Uber responded to this request on January 3, 2024, stating that it did not agree to Plaintiffs' request, explaining that "Plaintiffs may withdraw their challenge to this document as part

of this conferral," but that substitution of 25775 was not proper as it was a pending challenge that had not been withdrawn.

16. On January 6, 2025, Uber provided Plaintiffs its position on the Tranche 2 and 3 documents that had been randomly selected on December 30, 2024.

17. In its January 6, 2025 response, for the 20 randomly selected Tranche 2 privilege disputes, Uber withdrew its privilege claims for 6 documents; maintained its privilege claim but agreed to produce with privilege redactions 6 documents; and maintained its privilege claims in full for 8 documents.

18. In its January 6, 2025 response, for the 10 randomly selected Tranche 3 privilege disputes, Uber withdrew its privilege claims for 4 documents; maintained its privilege claim but agreed to produce with privilege redactions 4 documents; and maintained its privilege claims in full for 3 documents.

19. In its January 6, 2025 response, Uber provided two outstanding responses for Plaintiffs' initial Tranche 3 selections (JCCP_MDL_PRIVLOG040519 and JCCP_MDL_PRIVLOG057556) no longer asserting the privilege claim, without intending a waiver, for one document and maintaining its privilege claim but agreeing to produce with privilege redactions the other.

20. In its January 6, 2025 response, Uber explained that, while JCCP_MDL_PRIVLOG053995 was privileged, Uber was removing it from the privilege log because it had incorrectly been coded as responsive and was not actually responsive. Uber did not waive or withdraw its privilege claim.

21. In its January 6, 2025 response, Uber informed Plaintiffs that it was no longer asserting, without intending a waiver, its privilege claim for JCCP_MDL_PRIVLOG057572, changing its prior position on that document.

22. On January 7, 2025, Plaintiffs emailed Uber, informing Uber that it had not provided a response to JCCP_MDL_PRIVLOG045140. Uber responded on January 7, 2025, informing Plaintiffs that it was withdrawing its privilege claim on that document.

23. On January 7, 2025, the parties met and conferred. Uber provided Plaintiffs additional information about the randomly selected documents from Tranches 2 and 3. Notwithstanding this additional information explaining document by document the contours of the legal advice being provided or its context, and the legal counsel providing or involved in providing or seeking advice, Plaintiffs nevertheless persisted in pursuing their challenges to most of these documents.

  a. JCCP_MDL_PRIVLOG028378 (Tranche 2): Uber told Plaintiffs that this email chain was initiated by in-house counsel Ashley Fillmore, included in-house attorney Jennifer Handley, and that the discussion was about legal advice on regulatory legal changes.

  b. JCCP_MDL_PRIVLOG028703 (Tranche 2): Uber told Plaintiffs that this email consisted of a comment on a JIRA incident report that was made at the direction of counsel and specifically discussed potential litigation.

  c. JCCP_MDL_PRIVLOG030622 (Tranche 2): Uber told Plaintiffs that the first email in this chain summarizes prior legal advice on a data privacy issue and that attorneys Brandon Myers and Jennifer Handley were then added to the chain and provide further legal advice. Uber explained to Plaintiffs, as it has many times before, that an attorney being in the "cc" field of an email is not a sound basis for a privilege challenge.

  d. JCCP_MDL_PRIVLOG031766 (Tranche 2): Uber told Plaintiffs that this email was sent from attorney Deanna Slocum, the director of ethics and compliance to a group of individuals, including attorneys, an upcoming employment policy meeting at which the attorneys would provide legal advice on employment policy.

  e. JCCP_MDL_PRIVLOG031851 (Tranche 2): Uber told Plaintiffs that this was is an automatically-generated email with comments from a document stored on Google Docs, and that there are only four comments in the email, all of which are from attorneys Scott Binnings and Kathleen Waitzman. Uber explained that each of the comments provided legal advice, asked other in-house attorneys for their legal advice, or "tagged" without comment non-attorneys to bring their attention to legal advice provided.

7

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' JANUARY 14, 2025 JOINT LETTER BRIEFS AND JOINT STATUS REPORT ON PRIVILEGE DISPUTE  Case No. 3:23-MD-3084-CRB

f. JCCP_MDL_PRIVLOG032247 (Tranche 2): Uber told Plaintiffs that this document was produced with one paragraph redacted, and that the redacted part summarizes for a decision maker the legal advice previously provided by counsel, as part of the review process for the policy change discussed.

g. JCCP_MDL_PRIVLOG044768 (Tranche 3): Uber told Plaintiffs that this email consisted of a comment on a JIRA incident report made by an employee working at the direction of counsel and that the comment discusses communications with an attorney representing the reporting party and specifically discusses potential litigation.

h. JCCP_MDL_PRIVLOG050377 (Tranche 3): Uber told Plaintiffs that this email consisted of a comment on a JIRA incident report made by attorney Stephanie Vitale and that the comment provided legal advice on a driver deactivation.

24. In the parties' January 7, 2025, conferral, Uber told Plaintiffs that the privilege log entry for JCCP_MDL_PRIVLOG028378 did not denote counsel Ashley Fillmore with an asterisk. Uber immediately remedied that issue, which was resolved in Uber's January 10, 2025 privilege log.

25. In the parties' January 7, 2025, conferral, Plaintiffs stated that they were withdrawing their privilege challenges to JCCP_MDL_PRIVLOG025775 and JCCP_MDL_PRIVLOG025966. Plaintiffs are withdrawing their challenge to JCCP_MDL_PRIVLOG028378 in the joint status report on the Tranches 2 and 3 random selection conferrals, but did not do so during the conferral period.

26. At the parties' January 7, 2025 conferral, Plaintiffs stated that they would "hold open" their potential selection for briefing of randomly selected documents from Tranches 2 and 3 that Uber had agreed to produce with privilege redactions on January 6, 2025, until the documents had been produced, uploaded by Plaintiffs' vendor onto their review platform, and they had some additional time to review. Uber did not agree to this proposal. Uber produced to Plaintiffs, by email and out of the ordinary vendor production process, redacted versions of these documents on January 7, 2025.

27. Plaintiffs provided Uber with their selections for briefing on January 7, 2025. Plaintiffs Selections did not include JCCP_MDL_PRIVLOG026377 or JCCP_MDL_PRIVLOG044017. Plaintiffs did not inform Uber that it intended to brief JCCP_MDL_PRIVLOG026377 or

1  JCCP_MDL_PRIVLOG044017 at any point, but included them in the draft of their portion of the
2  letter briefs provided to Uber on the evening of January 9, 2025.

3  28. On January 7, 2025, Uber sent Plaintiffs a chart providing Plaintiffs with privilege log
4  descriptions and attorney names for documents in the conferral for which Uber had maintained its
5  privilege claim in full or agreed to produce with privilege redactions. This chart included current log
6  information from Uber's December 24, 2024, privilege log, which Plaintiffs received on December
7  24, as well as any log information (denoted with yellow highlighting) that had been updated during
8  the conferral period and would be included in the then-forthcoming January 10, 2025 privilege log. A
9  true and correct copy of this chart is attached as Exhibit B.

10  29. At the end of the conferral period on the 48 Plaintiffs-selected Tranche 3 privilege
11  challenges, Uber withdrew privilege claims for 24 documents; maintained its privilege claim but
12  agreed to produce with privilege redactions 14 documents; and maintained its privilege claims in full
13  for 10 documents.

14  30. At the end of the conferral period on the 10 randomly-selected Tranche 3 privilege
15  challenges, Uber withdrew its privilege claims for 4 documents; maintained its privilege claim but
16  agreed to produce with privilege redactions 4 documents; and maintained its privilege claims in full
17  for 3 documents.

18  31. At the end of the conferral period on the 20 randomly-selected Tranche 2 privilege
19  challenges, Uber withdrew its privilege claims for 6 documents; maintained its privilege claim but
20  agreed to produce with privilege redactions 6 documents; and maintained its privilege claims in full
21  for 8 documents (or 7 out of 19 if JCCP_MDL_PRIVLOG053995 is removed from consideration).

23  I declare under penalty of perjury that the foregoing is true and correct.

25  Executed on January 14, 2025.                              By: */s/ Daniel Cummings*
26                                                                  Daniel Cummings