RANDALL S. LUSKEY (SBN: 240915)
  rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
  ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
  cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
  akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
  **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DECLARATION OF SCOTT BINNINGS IN SUPPORT OF DEFENDANTS' JANUARY 14, 2025 JOINT LETTER BRIEF ON PRIVILEGE DISPUTE**<br><br>Judge:    Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

---

SCOTT BINNINGS DECLARATION ISO DEFENDANTS' JANUARY 14, 2025 JOINT LETTER BRIEF
ON PRIVILEGE DISPUTE                                                       Case No. 3:23-MD-3084-CRB

## **DECLARATION OF SCOTT BINNINGS**

I, Scott Binnings, having personal knowledge of the following state:

1. I am the Associate General Counsel, Safety and Core Services, at Uber. I was first employed by Uber in April 2015 and have worked as in-house legal counsel for the past 9 years. My previous positions included Senior Counsel, Regulatory; Senior Counsel, Safety; Legal Director, Safety; Senior Legal Director, Safety; and Senior Legal Director, Safety, Payments, and Risk. In my current role, as has been the case throughout my tenure at Uber, I am responsible for providing legal advice to Uber's leadership and employees related to safety issues, procedures, and policy, among other legal advice. I offer this Declaration in the above-captioned matter in support of Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's submission in the January 14, 2025 privilege dispute. In particular, I address herein documents referred by privilege log numbers as JCCP_MDL_PRIVLOG040518, JCCP_MDL_PRIVLOG043475, JCCP_MDL_PRIVLOG053996, JCCP_MDL_PRIVLOG055904, JCCP_MDL_PRIVLOG056137, JCCP_MDL_PRIVLOG056148, JCCP_MDL_PRIVLOG057545, JCCP_MDL_PRIVLOG031851, JCCP_MDL_PRIVLOG031766, and JCCP_MDL_PRIVLOG026377. The facts set forth herein are true and correct and are based on my own personal knowledge, and I could and would competently testify thereto if called.

2. I am familiar with the document referenced by privilege log number as JCCP_MDL_PRIVLOG040518. It is an email chain with emails dated from November 18, 2019 to November 19, 2019. I sent the first email in the chain to Brittany Anthony, then Senior Program Manager, Safety & Transparency, and added Brooke Anderson, then Head of Global Safety Communications, in a second email in the same chain. In the initial email and the emails that followed, the participants in the email discussed sending a draft copy of the U.S. Safety Report to outside counsel Roberta Kaplan (then of the law firm Kaplan Hecker & Fink LLP) for her and her firm's legal review. The draft report attached to these emails is marked "AC_Privileged." As I stated in my initial email in the email chain at issue here, I decided to seek Ms. Kaplan's legal advice after discussing the matter with Uber Chief Legal Officer Tony West, and then-Uber Deputy General Counsel Tammy Albarrán. In the second to last and last emails in the chain, Ms. Anderson forwarded without comment the email

1  chain to Uber Communications specialists Jodi Kawada Page and Matt Kallman, who were involved
2  with drafting the U.S. Safety Report, and to then-Director, Product Communications, Chelsea
3  Maughan Kohler, who was involved in planning communications related to the Safety Report, which
4  I understood based on my involvement in this process to be for the purpose of making these individuals
5  aware of the plan to seek legal advice from Ms. Kaplan as there might be an eventual need for further
6  edits to the draft reflecting Ms. Kaplan and her firm's legal advice.  The purpose of this email chain
7  was to seek legal advice from outside counsel.

8    3.  I am familiar with the document referenced by privilege log number as
9  JCCP_MDL_PRIVLOG043475.  It is an email dated May 24, 2017 that I asked Uber data scientist
10 Sangick "Sunny" Jeon to draft and send on my behalf.  Mr. Jeon included me on this email.  I asked
11 Mr. Jeon to send this communication to relevant individuals who worked at Uber in the areas of
12 analytics, data science, and software engineering, including then-Director of Insurance and Safety
13 Analytics Frank Chang, to request information that I needed to provide legal advice to the company
14 concerning rider safety issues with legal liability risks that were resulting in lawsuits against the
15 company.  I also asked Mr. Jeon to set up a meeting to discuss such information and related legal
16 issues and legal strategies with the group, and I attended this meeting to continue providing legal
17 advice.  I asked Mr. Jeon to send this communication in my then-capacity as Senior Counsel, Safety
18 Legal for the purpose of providing legal advice and not for any non-legal business purpose.

19   4.  I am familiar with the document referenced by privilege log number as
20 JCCP_MDL_PRIVLOG053996.  It is a confidential and privileged draft document dated July 2018
21 regarding driver background checks policies and procedures.  As part of my responsibility at the time
22 as Legal Director, Safety Legal, I advised the business on complying with legal and regulatory
23 requirements related to safety issues such as background checks for independent drivers on the Uber
24 platform.  This draft manual was created at the direction of then-Regulatory Counsel Emily Madavo,
25 which is noted at the top of the draft document.  Ms. Madavo and other Uber in-house attorneys,
26 including Jason Burch, Legal Director, U.S. Regulatory, directed the creation of this draft manual to
27 provide legal guidance to Uber employees on complying with background check requirements of
28

1  various jurisdictions.  The draft manual explains, among other things, the substantive legal
2  requirements related to background checks, the role of Uber's legal department in approving changes
3  to background check criteria in response to changes in the law in different jurisdictions, and the
4  concrete steps for adhering to those legal requirements.  Additionally, this draft contains numerous
5  comments directed to or by Ms. Madavo in which legal advice is requested or provided.

6       5. I am familiar with the document referenced by privilege log number as
7  JCCP_MDL_PRIVLOG055904. It is an email chain dated January 8, 2016.  Then-Chief Security
8  Officer Joe Sullivan sent the first email in the chain to a small number of individuals, including then-
9  Director of Litigation Keith Yandell and then-Senior Counsel Jen Ghaussy.  In this initial email, Mr.
10  Sullivan explained that he had been deposed for then-pending litigation the day before and shared
11  ideas and questions on specific issues raised in that deposition, including Uber's background check
12  policy.  As Mr. Sullivan indicated at the end of his email, the purpose of this communication was to
13  defend Uber in that particular case and in other litigation.  The next email in the chain was from Ms.
14  Ghaussy, who provided legal advice on certain of the issues raised by Mr. Sullivan. Following this,
15  then-Head of Safety and Consumer Protection Dorothy Chou responded to Mr. Sullivan and Ms.
16  Ghaussy's emails.  In the latest, top-level email in the chain, Mr. Sullivan forwarded without comment
17  the email chain that contains legal advice to then-Head of Global Security Business Operations Pooja
18  Ashkok.

19       6. I am familiar with the document referenced by the privilege log as
20  JCCP_MDL_PRIVLOG056137.  It is an email chain dated July 30, 2015.  The first-in-time email was
21  sent by former non-attorney Uber employee Terence Lim to two other former Uber employees, Joe
22  Sullivan (a former prosecuting attorney but not in an attorney role at Uber) and Phillip Cardenas,
23  regarding background check policies for independent drivers, including their potential impact on
24  litigation and regulatory matters.  In the email chain, Joe Sullivan and Terence Lim discuss seeking
25  legal advice from then-General Counsel Salle Yoo, and then Philip Cardenas further on the email chain
26  added and sought legal advice from then in-house counsel Keith Yandell regarding the items
27  discussed.  The purpose of this email communication was to highlight litigation and other risks and to
28

1  seek legal advice, as shown by the references to litigation and regulatory impact in the first email, to
2  seeking guidance from Ms. Yoo in the second email, and in the direct request for legal advice from
3  Mr. Yandell in the last email.

4      7.   I am familiar with the document referenced by the privilege log as
5  JCCP_MDL_PRIVLOG056148. It is an email chain dated July 7 through July 9, 2015. The first in
6  time email was sent by Uber's then-Chief Security Officer, Joe Sullivan, to four Uber employees,
7  including then in-house attorney Keith Yandell. Mr. Sullivan copied two non-attorney Uber
8  employees, Philip Cardenas and Derek Seibert. In this email, Mr. Sullivan explicitly seeks legal advice
9  from Mr. Yandell pertaining to the company's background check policies. Thereafter, Mr. Yandell
10 forwarded Mr. Sullivan's email to then in-house attorney Seth Schreiberg to seek additional legal
11 views. Mr. Schreiberg responded, providing legal advice. Thereafter, Mr. Yandell forwarded Mr.
12 Schreiberg's response containing legal advice to the individuals on the first in time email, and also
13 added Mr. Schreiberg and another then in-house attorney, Jen Ghaussy, to the email chain directly.
14 Three non-lawyers go on to send emails discussing the implications of Mr. Schreiberg's legal advice
15 regarding the company's background check policies, including an email from Phillip Cardenas titled
16 "A/C Privilege." Mr. Schreiberg then responds with additional legal advice pertaining to Uber's
17 background check policies. The two latest in time emails go on to discuss the implementation of Mr.
18 Schreiberg's legal advice pertaining to such policies.

19     8.   I am familiar with the document referenced by the privilege log as
20 JCCP_MDL_PRIVLOG057545. It is an email chain dated January 20 to January 21, 2016. The first
21 in time email is from former Uber employee Sarah van Vilet to three other former employees, Dorothy
22 Chou, Betsy Masiello, and Robin Horton, regarding the collection of data from Uber's Legal team for
23 a planned data sharing transparency report. Ms. van Vilet's email conveys legal advice she received
24 from Uber's legal regulatory team, and in particular former Uber in-house attorney Bob O'Leary. In
25 the next email, former employee Dorothy Chou asks Ms. van Vilet to work with the legal department
26 on the issues raised in her email. Thereafter, Ms. Masiello forwards the email chain to then Uber in-
27 house counsel Curtis Scott, and explicitly seeks legal advice pertaining to the collection of regulatory
28

5
SCOTT BINNINGS DECLARATION ISO DEFENDANTS' JANUARY 14, 2025 JOINT LETTER BRIEF
ON PRIVILEGE DISPUTE                                                   Case No. 3:23-MD-3084-CRB

data. Ms. Masiello then forwards the email chain containing and seeking legal advice to then Uber employee Rachel Whetstone and current Uber Chief Marketing Officer Jill Hazelbaker. Thereafter, Betsy Masiello and Rachel Whetstone go on to exchange emails and Ms. Whetstone provides direction regarding how to seek further legal advice from then Uber in-house attorney Curtis Scott.

9. I am familiar with the document referenced as JCCP_MDL_PRIVLOG031851. It is an automatically-generated email dated November 1, 2017 consisting of four comments made by Uber in-house attorney and then-Legal Director, Global Insurance Katie Waitzman and me on a document stored on Google Docs. The underlying document was entitled "Draft Press Release." In the first comment, I provided legal advice and "tagged" Uber in-house counsel, Maureen Frangopoulos and then-Legal Director Achia Swift, so they would also provide their own legal advice on that portion of the document. In the following comment, Ms. Waitzman provided legal advice about the wording of the draft and its potential impact on litigation. I then "tagged" two non-attorneys in the next comment to bring their attention to the legal advice from Ms. Waitzman. In the fourth comment, Ms. Waitzman provided legal advice on a different portion of the draft.

10. I am familiar with the document referenced as JCCP_MDL_PRIVLOG031766. It is an email chain dated October 26, 2017. The initial email in the chain was sent by then-Director of Ethics and Compliance Deanna Slocum, an attorney, to a group of individuals that included then-Legal Director, Employment, Achia Swift, then-Employment Counsel Alex Scherbatskoy, then-Vice President, Deputy General Counsel, Litigation, Employment & Government Investigations Angela Padilla, then-Head of Employment Legal Anu Ambikaipalan, then-Executive Assistant, Corporate Legal Raymond Galaviz, and then-Legal Director, Litigation, Labor & Employment (Latin America), Sergio Romero. The initial email contained the subject line "Employment Policy Team Meeting," and consisted of an agenda for an upcoming legal team meeting at which this group would discuss employment policies and company initiatives that then-Head of Safety and Insurance Brand Kate Parker would join as a guest speaker to discuss. The primary purpose of the email communication and the meeting (an internal meeting of one of Uber's legal teams) was to seek and provide legal advice concerning employment policies and topics. Ms. Slocum and other in-house counsel provided legal

6

SCOTT BINNINGS DECLARATION ISO DEFENDANTS' JANUARY 14, 2025 JOINT LETTER BRIEF
ON PRIVILEGE DISPUTE                                         Case No. 3:23-MD-3084-CRB

advice during and after the meeting. The second, top-level email in the chain is a forward of the prior email by Ms. Parker to two additional non-attorney employees.

11. I am familiar with the document referenced as JCCP_MDL_PRIVLOG026377. It is an email chain with emails dated from December 7, 2017 to December 11, 2017. In the redacted portions of the December 7, 2017 email, non-attorney Uber employee Buddy Loomis, then-Senior Manager, Investigations, conveys legal advice that I and other Uber in-house attorneys had previously provided to Ms. Loomis and her team concerning litigation risk and deactivation of independent driver accounts in circumstances involving reported fatalities or sexual misconduct allegations. Ms. Loomis's email begins the process of implementing this legal advice within Uber's support organization.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in San Anselmo, California on January 13, 2025.  By: _____

Scott Binnings