UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No..: 3:23-MD-03084 CRB<br><br>JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:   G – 15th Floor |

Pursuant to PTO No. 20 (ECF No. 1808), the Parties submit this joint letter regarding Plaintiffs' third set of challenges to Uber's privilege claims.

## I.     Plaintiffs' Position

**Third Round of Resolving Privilege Disputes**. Uber asserted privilege for approximately 17,500 entries regarding Tranche 3 Custodian documents, totaling approximately 57,600 privilege log entries as of December 24, 2024. As before, only after Plaintiffs review thousands of log entries within a short time span did Uber provide additional information to allow Plaintiffs to ascertain privilege assertions.[1] Since Uber first produced a log on April 16, 2024, it has withdrawn privilege assertions on approximately 6,000 entries. Additionally, in response to new information Uber provided in its update Privilege Logs or Uber's later production of documents with redactions, Plaintiffs removed its challenges to over 2,700 entries on January 11, 2024.

To summarize the process preceding this third round of challenges: Uber produced its first Tranche 3 privilege logs on December 4, 2024 (one day after the Court's December 3 deadline). Plaintiffs sent a challenge letter to Uber on December 17, 2024, which attached a chart detailing each specific challenge or noting insufficient information to assess Uber's privilege claims. In total, Plaintiffs challenged 8,164 of the 17,579 entries. Plaintiffs also notified Uber of the 60 samples, and three attachments to emails, selected pursuant to PTO 20.[2] The parties met and conferred, resolving certain issues and addressing the samples. Of the 63 samples, Uber agreed to produce 37 documents in full and 15 documents with redactions, while only maintaining its privilege claims to 10 documents.[3]

In sum, Uber agreed that approximately 59% of the Tranche 3 samples were erroneously designated as privileged and altered their stance on approximately 84% of the samples. Uber made this same concession as to appropriately 84% of the samples from the Tranche 1 privilege log and approximately 73% of the samples from the Tranche 2 log. *See* Dkt. 1812 at 1-2. Again, it should not be Plaintiffs' burden to sift through thousands of plainly erroneous privilege designations to force Uber to conduct a good faith privilege review.[4] Plaintiffs challenged 8,164 entries on the Tranche 3 log. Assuming 84% of those are also mis-designated, there are approximately 6,800

---

[1] As previously noted, the Court ordered Uber to provide updated privilege log entries with additional information regarding certain entries (ECF No. 1908 at 9) and required Uber to "ensure that its privilege log descriptions are accurate and that attorneys are clearly identified." *Id.* at 10. The Court also noted "systemic errors" in Uber's privilege log entries, stating that log entries indicated that documents were "prepared at the direction of in-house counsel," but Uber did not provide evidence to support those assertions" and failed to properly designate all attorneys involved with the document in the "Privileged Name(s)" column. *Id.* at 15. As before. these issues remain.

[2] Attached as Exhibit A is a copy of these privilege log entries as produced to Plaintiffs. Attached as Exhibit B is a comparison of Uber's log entries compared with Uber's detailed descriptions below.

[3] This total does not include a document (JCCP_MDL_PRIVLOG053995) that Uber stated on January 7, 2025 was unresponsive. Uber stated the document relates to Uber's potential acquisition of a foreign company whereas on the Privilege Log it stated the document was "regarding in-app features to advance rider safety." The title of this document is "Project Atom." Uber has produced UBER_JCCP_MDL_000882834 which is a spreadsheet with a Tab titled "Moove | Project Atom." The tab includes entries related to safety policies and onboarding drivers.

[4] Uber continues to claim that Plaintiffs are engaging in *en masse* categorical challenges. Again, not so. Plaintiffs challenge privilege log entries whereby Uber has not met its burden, exemplified by the overwhelming privilege claim withdrawals Uber has made to date.

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

documents that Uber has improperly designated as privileged.[5]

      **Specific Documents.** As to privilege claims still at issue in Round 3 per PTO 20, Uber has not met its burden showing that these documents are privileged. Below are 13 privilege log entries currently at issue, which includes ten entries from Plaintiffs' samples and four entries from random sampling.[6]

      Below, and on in related privilege filings, Uber seems to argue that it can withhold entire emails for privilege, even if the entire email is not privileged, simply because the email may be one-page or otherwise not voluminous. No so. Again, it is black letter law that an entire communication may only be deemed privileged "when it contains privileged portions that are so inextricably intertwined with the rest of the text that they cannot be separated." *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (citations and internal quotation marks omitted). "If the nonprivileged portions of a communication are distinct and severable, and their disclosure would not effectively reveal the substance of the privileged legal portions, the court must designate which portions of the communication are protected and therefore may be excised or redacted (blocked out) prior to disclosure." *Id.*

## JCCP_MDL_PRIVLOG057545[7]

This is a January 21, 2016 email with the subject "Issues with Collecting Regulatory Data for Transparency Report." Uber asserts attorney-client privilege arguing it is a "Confidential e-mail thread seeking legal advice from in-house counsel regarding data or metrics collected and reviewed for Uber's Safety Report." The email is from Rachel Whetstone (Uber's Senior Vice President of Communications and Public Policy[8]) to Betsy Masiello (Uber's then Senior Director of Global Public Policy[9]) with Jill Hazelbaker (Uber's Chief Marketing Officer and Senior Vice President of Communications and Public Policy[10]) on the "cc" line. While an attorney appears as a "privileged name" on the log, no attorneys are on this email chain. Based on the information provided, this email has a dominant business purpose related to data collection for Uber's Safety Report and is not privileged.

## JCCP_MDL_PRIVLOG043475

This is a May 24, 2017 email with the subject "[A/C Privileged] Strategy for SA Prevention." Uber asserts attorney-client privilege arguing this is a "[c]onfidential e-mail thread providing legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety." The email is from Sunny Jeon (Uber's then Data Scientist[11]) to multiple non-attorneys, including Frank

---

[5] To expedite Uber's "re-review", Plaintiffs provided a chart along with every challenge letter detailing their specific challenges to each privilege log entry.

[6] Plaintiffs removed their challenge to JCCP_MDL_PRIVLOG055904 based on information provided by Uber on the date of this filing in its portion of the letter brief and supporting affidavits.

[7] This entry is similar to Tranche 2 dispute document JCCP_MDL_PRIVLOG03411 which the Court held was not privileged.

[8] Rachel Whetstone, LinkedIn https://www.linkedin.com/in/rachel-whetstone-497890127/ (last visited January 8, 2025).

[9] Betsy Masiello, LinkedIn https://www.linkedin.com/in/betsym/ (last visited January 8, 2025).

[10] Jill Hazelbaker, LinkedIn https://www.linkedin.com/in/jill-hazelbaker-3aa32422/ (last visited January 8, 2025).

[11] Sangick "Sunny" Jeon, LinkedIn https://www.linkedin.com/in/sangickjeon/ (last visited January 8, 2025).

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

Chang, Wayne Zhang, Neil Fernandes, Akankshu Dhawan, Misha Bosin, and David Purdy. The only in-house counsel on the email chain is Scott Binnings who was placed on the "cc" line and does not appear to have responded to any emails. Based on the information provided, this appears to be a strategy business email between non-attorneys on how to prevent sexual assault on Uber's App. It has a dominant business purpose and is not privileged.

## JCCP_MDL_PRIVLOG040099
This is a July 8, 2019 email between non-attorneys Sunny Wong (Uber's then Data Science Manager[12]) to Frank Chang (Uber's then Director of Insurance and Safety Analytics[13]) with the subject line "ACP - Safety Product Data Request." Uber claims attorney-client privilege and stated this is a "[c]onfidential e-mail thread seeking and providing legal advice from in-house counsel regarding drafting and implementation of Uber's Taxonomy." The only in-house counsel on the email is Jennifer Handley who is added to the "cc" line with two other non-attorneys. Ms. Handley does not appear to respond to any emails. Based on the information provided on Uber's Tranche 3 log, this appears to be a business data collection request with a dominant business purpose. It is therefore not privileged.

## JCCP_MDL_PRIVLOG053996[14]
This is a December 1, 2022 document entitled "National BGC Procedures Manual." Uber asserts attorney-client privilege and claims it is a "Draft Confidential document prepared at the direction of in-house counsel regarding driver background check policies and practices." The author is listed as zack.venema@uber.com, a non-attorney. Two in-house counsel and ten non-attorneys are listed as collaborators. Based on the document title, this appears to be a manual for Uber employees concerning Uber's background procedures with a dominant business purpose; it was drafted by non-attorneys for non-attorneys. As such, it is not privileged.

## JCCP_MDL_PRIVLOG056137
This is a July 30, 2015 email with the subject line "⬛⬛⬛⬛⬛⬛⬛⬛" Uber claims attorney-client privilege arguing this is a "Confidential e-mail thread seeking legal advice from in-house counsel regarding driver background check policies and practices." The email is from Phillip Cardenas (Uber's Safety and Security[15]) to Terence Lim (Uber's then Head of Trust and Safety of the Americas and EMEA[16]) with Joe Sullivan (Uber's then Chief Security Officer) and in-house counsel Keith Yandell on the "cc" line. Yandell does not respond to the email and it does not appear any legal advice was sought from him. The email appears to have a dominant business purpose relating to a pilot program ⬛⬛⬛⬛⬛⬛⬛. Moreover, the Declaration of Scott Binnings described parts of this email as "discuss[ing] seeking legal advice from then-General Counsel Salle Yoo." *See* Binnings Decl. ¶ 6. While a later direct request to an attorney for legal

---

[12] Sunny Wong, LinkedIn https://www.linkedin.com/in/sunnywong210/ (last visited January 8, 2025).
[13] Frank Chang, LinkedIn, https://www.linkedin.com/in/frankchang/details/experience/ (last visited January 8, 2025).
[14] This entry is similar to Tranche 1 disputed documents JCCP_MDL_PRIVLOG006370, JCCP_MDL_PRIVLOG007393, JCCP_MDL_PRIVLOG007396, and JCCP_MDL_PRIVLOG0019282 which the Court held were not privileged.
[15] Phillip Cardenas, LinkedIn https://www.linkedin.com/in/phillipcardenas/ (last visited January 8, 2025).
[16] Terence Lim, LinkedIn, https://www.linkedin.com/in/terencel1m/details/experience/ (last visited January 8, 2025).

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

advice may certainly be privileged, an employee merely discussing if they should seek legal advice is not. Based on the information provided, it is not privileged.

## JCCP_MDL_PRIVLOG040249

This is a July 16, 2021 email from Athanasia Giannetos (Uber's then Associate Program manager of Global Safety Support[17]) to Milton Lee (Uber's Senior Technical Program manager of Financial Products and Platform and Payments[18]) and Catherine Gibbons (Uber's Director, Global Head of Platform Safety and Identity, Community Operations[19]), all non-attorneys, with the subject line of "[ACP/AWP] Safety Data Healing <> DACT Process Question." Uber asserts attorney-client privilege and argues this is a "[c]onfidential e-mail thread seeking and providing legal advice from in-house counsel regarding Uber's policies and practices for responding to allegations of driver sexual assault or sexual misconduct." Based on the title, this appears to be a business process related email with a dominant business purpose. Additionally, the only legally associated person on the email is Mike Haas, who was added to the "cc" line with three other non-attorneys. Mike Haas is not an attorney, but rather is Manager of Safety Legal Global Investigations[20], and no attorney appears to provide legal advice on the email thread. Based on the information provided, this email is not privileged.

## JCCP_MDL_PRIVLOG056148

This is a July 9, 2015 email with the subject "background check safety principles." Uber claims attorney-client privilege stating this is a "Confidential e-mail thread seeking and providing legal advice from in-house counsel regarding driver background check policies and practices." The email is from Phillip Cardenas (Uber's Safety and Security) to Joe Sullivan (Uber's Chief Security Officer) with three in-house counsel and two non-attorneys on the "cc" line. This email appears related to Uber's background check policy and principles and, therefore, has a dominant business purpose. Based on the information provided, it is not privileged.

## JCCP_MDL_PRIVLOG040518 and Attachment JCCP_MDL_PRIVLOG040519

This is a November 19, 2019 email which appears to be non-attorney Brooke Anderson (Uber's Director of Communications[21]) forwarding non-attorney Chelsea Maughan Kohler (Uber's then Director of Product Communications[22]) a draft of Uber's Safety Report. Uber claims attorney-client privilege stating this is a "[c]onfidential e-mail seeking and providing legal advice from in-house counsel regarding media inquiry concerning Uber's Safety Report." While a name is listed as "privileged" on Uber's log, no attorney is included on this email. Additionally, a work in progress "[A_C Privileged, WIP] Uber Safety Report_MASTER DOC.docx" was attached to the email. For the attached document, Uber fails to list the author or collaborators of the document but

---

[17] Athanasia Giannetos, LinkedIn https://www.linkedin.com/in/athanasia-giannetos/ (last visited January 8. 2025).

[18] Milton Lee, LinkedIn https://www.linkedin.com/in/miltonlee/ (last visited January 8, 2025).

[19] Catherine Gibbons, LinkedIn https://www.linkedin.com/in/catherine-gibbons-a355a457/ (last visited January 8, 2025).

[20] Mike Haas, LinkedIn, https://www.linkedin.com/in/michaelthaas/ (last visited January 8, 2025).

[21] Brooke Anderon, LinkedIn https://www.linkedin.com/in/brookeandersonb/ (last visited January 8, 2025).

[22] Chelsea Kohler, LinkedIn https://www.linkedin.com/in/chelsea-kohler-60594511/ (last visited January 8, 2025).

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

asserts attorney-client privilege and argues it is a "[d]raft Confidential document seeking and providing legal advice from in-house counsel regarding preparation and drafting of Uber's Safety Report." The only metadata provided for this draft document on the log is the title of the draft and file, the non-attorney custodian, and date. This email appears to be nothing more than forwarding a draft copy of Uber's Safety Report to non-attorneys for edits or advice on how to respond to media inquiries. Even if Uber's if this document contains comments from attorneys, Uber cannot withhold the entire document that was drafted and published for business purposes.[23] Based on the information provided, nothing in the email or the attachment is privileged.[24]

### JCCP_MDL_PRIVLOG044017

This is a January 16, 2020 email with the subject "US BGC Audit Status Update." Uber asserts attorney client privilege and argues this is a "Confidential e-mail thread seeking legal advice from in-house counsel regarding driver background check policies and practices." On January 7, 2024, Uber provided a redacted version of this document. The redaction comes from Ben Busian's (Uber's Senior Central Operations Manager[25]) January 14, 2020 email. The thread does not show the recipients of the email, but there are 12 individuals on the cc line, only one of which (Megan Poonolly) is an in-house counsel. Based on the information provided, this appears to be an email between non-attorneys regarding a status update regarding Uber's BGC audit project. The redaction is a section of Busian's email regarding the value of continuous audit checks appearing related to background checks. Uber claims Busian is seeking legal advice, but it appears he is giving a business opinion. It therefore has a dominant business purpose and is not privileged.

### JCCP_MDL_PRIVLOG044768[26]

This is a JIRA notification email dated September 13, 2018 from (JIRA) safety-case-management@uber.com. The subject is "[JIRA] (SAFE-1141129) 09-Sep-2018 - Roanoke / 320 /

---

[23] "Nearly two years ago, Uber CEO Dara Khosrowshahi convened a dozen of the company's top executives in a room to discuss an important issue. What began that day was a 21-month effort that has included a review of hundreds of thousands of customer support requests; a complete rethink of how we categorize the most serious safety incidents that happen during Uber trips; an overhaul of how we train our support staff; and an even bigger investment in cutting-edge safety technology…. Confronting sexual violence requires honesty, and it's only by shining a light on these issues that we can begin to provide clarity on something that touches every corner of society... All of that work culminates in the Safety Report that we are sharing with you"
https://www.uber.com/en-GB/newsroom/2019-us-safety-report/ (last visited January 14, 2025).
[24] While unclear, it appears from below and Mr. Binnings's Declaration that this Safety Report draft was "intended to send to outside counsel for review", but was not actually sent.
[25] Benjamin Busian, LinkedIn https://www.linkedin.com/in/benjamin-busian-9a406467/ (last visited January 8, 2025).
[26] Uber contends below that this communication is privileged per the Declaration of Maureen Frangopoulos which states that non-attorney Mike Hass made a comment "in his role" and "worked under the supervision and direction of Uber's in-house legal counsel and would have made this comment in that capacity." See Frangopoulos Decl. ¶ 3. Uber does not identify the in-house counsel in question, nor provide a declaration from Mr. Hass attesting that he was in fact commenting in response to directions from in-house counsel.

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

United States / Southeast / US East / US & Canada - L4 - Non-Consensual Touching - Sexual Body Part." Uber asserts attorney client privilege claiming this is a "Confidential e-mail thread providing legal advice at the direction of in-house counsel regarding reports of driver sexual assault or sexual misconduct." This, and numerous similar log entries, appear to be notification emails that individuals on Uber's response team receive when someone leaves a comment on a JIRA ticket. Uber produced hundreds of similar JIRA notification emails in redacted form. Additionally, Uber produces JIRA tickets with its DFS productions. The JIRA tickets only redact comments made by attorneys or direct requests to an attorney. Here, Uber appears to have fully and improperly withheld the entire email instead of producing these with appropriate redactions, if any. As there does not appear to be any attorney comments on this email, it should be produced in full.

### JCCP_MDL_PRIVLOG050377
This is a JIRA notification email dated June 23, 2017 from (JIRA) safety-case-management@uber.com. The subject is "[JIRA] (SAFE-551050) 27-May-2017 - Los Angeles / 12 / United States / SoCal Pacific / US West / US & Canada - L4 - Non-Consensual Intercourse." Uber asserts attorney client privilege and states this is a "Confidential e-mail providing legal advice from in-house counsel regarding reports of driver sexual assault or sexual misconduct." As with the entry above, this appears to be notification email that an individual on Uber's response team receives when someone leaves a comment on a JIRA ticket. Again, Uber improperly withheld the entire email instead of producing it with appropriate redactions, if any.

### JCCP_MDL_PRIVLOG052655
This is a JIRA notification email dated September 21, 2018 from (JIRA) safety-case-management@uber.com. The subject is "[JIRA] (SAFE-1156437) 20-Sep-2018 - Louisville / 236 / United States / Midwest / US Central & Canada / US & Canada - L4 - Non-Consensual Sexual Penetration." Uber asserts attorney client and work product privilege claiming this is a "Confidential e-mail memorializing legal advice from in-house counsel regarding reports of driver sexual assault or sexual misconduct." As with the entries above, this appears to be notification email that an individual on Uber's response team receives when someone leaves a comment on a JIRA ticket. Again, Uber improperly withheld the entire email instead of producing it with appropriate redactions, if any.

## II.    Defendants' Position
### Tranche 3 Privilege Disputes
      Plaintiffs' criticisms of Defendants are in large part misleading, inaccurate, or incomplete (as discussed in the separate joint status report (JSR)).[27] First, Plaintiffs continue to improperly conflate producing documents containing privilege redactions with withdrawals of privilege claims—in order to suggest that Uber's privilege claims are "improperly designated." To be clear, when Uber has re-reviewed documents in conferrals, as directed by the Court (and on its own

---

[27] Plaintiffs state that "Uber produced its first Tranche 3 privilege logs on December 4, 2024 (one day after the Court's December 3 deadline)." This privilege log, which includes entries for 21 custodians, including 4 senior level executives who interfaced frequently with counsel and who were added to the Tranche only on November 4, was served an hour and half after the Court's deadline. It was not a "day late" as Plaintiffs misleadingly state. This privilege review required an enormous effort to review, produce, and log documents including over the Thanksgiving holiday shortly before the deadline.

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

initiative) and determined that privileged portions of a document can be parsed out with more surgical redactions, this is *confirmation* that Uber's initial privilege determination was correct, not that the designation was wrong. The separate determination of whether it is feasible to segregate privileged portions of any particular document with redactions is a document-specific inquiry on which reasonable minds can and often do disagree. As explained in more detail in the JSR, a document need only be produced with privilege redactions (rather than withheld in full) if there are "distinct and severable" portions from the privileged communications, "and if their disclosure would not reveal the substance of the privileged portions." *In re Google RTB Consumer Priv. Litig.*, 2024 WL 3642191, at *5 (N.D. Cal. Aug. 1, 2024); *see also United States v. Christensen*, 828 F.3d 763, 804 (9th Cir. 2015) (referencing page-by-page redactions); *Bruce v. Becerra*, No. 2023 WL 11893014, at *9 (S.D. Cal. Sept. 5, 2023) (suggesting that documents being "one-page email[s]" "indicat[es] that there is no distinct and severable text"). Plaintiffs do not meaningfully engage with this case law in their arguments above. As these cases illustrate, whether information is feasibly "severable" and "distinct" is a question on which reasonable minds can and often do disagree. All this is to say that Uber's decisions in conferrals to produce some documents with privilege redactions after initially withholding a document in full, with a sound basis to do so, is not evidence of a flawed or bad faith privilege review process.

Second, Plaintiffs say that, out of the 63 sample privilege disputes they selected for the Tranche 3 conferral, Defendants de-designated 37 documents. This is misleading. The parties conferred on 45 challenges, not 63. The reason for that is 15 of the documents that Plaintiffs selected had *already been* re-analyzed and produced by Defendants[28]—independent of this conferral process. Defendants made these 15 de-designations of their own initiative, as part of implementing the Court's guidance in its November 27 order (ECF 1908), and not as part of the Tranche 3 conferral process. *See* Cummings Decl. ¶¶ 10, 12.

Third, Plaintiffs criticize Defendants for "withdraw[ing] privilege assertions on approximately 6,000 entries" in total (roughly 10% of privilege claims). But this only undercuts Plaintiffs' baseless accusation that Defendants have not "conduct[ed] a good faith privilege review." Rather, it shows the extensive efforts Defendants have made to implement the Court's guidance from the Tranche 1 and 2 rulings and address other issues where appropriate. *See* Cummings Decl. ¶¶ 3-6. By contrast, as of January 10, 2024, Plaintiffs had withdrawn just 236 of their more than 30,000 privilege challenges (and an additional set on Saturday, January 11, 2025, which Uber is reviewing) in response to the Court's December 21 order (ECF 2005).[29] Plaintiffs have not made any meaningful withdrawals of privilege challenges until ordered by the Court to do so. Even after Defendants have produced over 3,200 documents with privilege redactions that had initially been withheld in full, Plaintiffs have withdrawn very few privilege challenges for these documents. In order to narrow disputes, and conserve judicial resources, the Court should order Plaintiffs to re-review their challenges for all such documents. As illustrated below and in the last round of privilege briefing, Plaintiffs wrongly continue to maintain nearly all of their *en masse* categorical challenges, such as challenging on the basis of attorneys being on the

---

[28] 14 documents were produced in full, one document was produced with redactions.

[29] Plaintiffs state that in the joint status report that they withdrew 2,746 privilege challenges on January 11, 2025, "[t]he majority of [which] were removed because Uber had produced redacted documents since Plaintiffs' original challenge or later provided additional information about the document or identity of attorneys." This description of Defendants working to move the iterative privilege dispute process forward is inconsistent with Plaintiffs' constant attacks on Defendants.

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

"cc" field and not in the "to" field of an email chain.

Fourth, the Court should reject Plaintiffs' self-described "assumptions" about documents in issue and Plaintiffs' flawed lay person "statistics." But, if using the same logic that Plaintiffs incorrectly use to attack Defendants, the Court's December 21 order upholding Defendants' privilege claims in whole or in part for 12 of 13 documents could be extrapolated to conclude that 92% of their privilege challenges are without merit.[30] This is yet another reason the Court should order Plaintiffs to reassess the broad and routinely-meritless categories of challenges implicated here, in order to avoid tying up judicial resources and those of the parties.

Finally, Plaintiffs accuse Defendants of a lack of good faith and in their Tranche 2 random selection brief Plaintiffs accuse Defendants of attempting to "hid[e] critical evidence under unsubstantiated privilege assertions." These *ad hominem* attacks are baseless and unprofessional. Even if Plaintiffs' criticisms of the merits of Defendants' privilege claims were correct (and they are not, as demonstrated by the Court's order upholding the majority of such claims in the last round), a lack of perfection is not evidence of bad faith, especially when considering the large scale and aggressive deadlines for document review in this litigation. *See* Cummings Decl. ¶ 3. Uber has devoted significant resources to conduct its privilege review that more than meets the good faith standard, and Defendants continue to work in good faith to refine privilege claims in light of conferrals, the Court's rulings on prior documents, and on Defendants' own initiative. On the contrary, as demonstrated below, Plaintiffs continue to make meritless challenges and seek *in camera* review of privileged documents, even after Defendants provide information that establishes privilege in the privilege log and during the conferral of counsel. The Court should not reward this behavior in which Plaintiffs ignore information on the log, information provided during the conferral, then make baseless assumptions and have no downside for raising meritless and unsustained challenges. Fairness requires such flimsy and incorrect challenges to stop.

## Specific Documents: Plaintiff Selections

**JCCP_MDL_PRIVLOG040099:** This communication is privileged, and Plaintiffs offered no valid reason for their challenge, which is based on baseless speculation. Plaintiffs challenged this document because Uber's in-house attorney Jennifer Handley appears in the "cc" field of the latest-in-time email in the chain. This type of meritless challenge has been previously rejected by the Court.[31] There appear to be thousands of similarly baseless privilege challenges, which Plaintiffs have failed to withdraw despite the Court's order for Plaintiffs to apply lessons learned. *See* Cummings Decl. ¶¶ 8-9. The Court should therefore specifically order Plaintiffs to conduct a full re-review of their privilege challenges based on attorneys appearing in the "cc" field, including reviewing all other documents or privilege log entries with the same subject line, and withdraw all challenges lacking an individualized basis for challenge beyond the mere fact that an attorney is in the "cc" field in the top-level email.

The first email in the chain was sent by Senior Legal Director Jennifer Handley. In her role as Senior Legal Director, Ms. Handley provides the company legal advice concerning safety

---

[30] Plaintiffs inaccurately summarize the Court's November 27, 2024 order. That order did not find that there *were* "systemic errors," but required Defendants to conduct "further review in *certain* instances, based on what appear to be *potentially* systemic errors in *certain* privilege log entries in the current sample." (ECF 1908 at 15 (emphases added)). Defendants complied with this order.

[31] The Court has previously rejected challenges based solely on attorneys being in the "cc" field (*e.g.,* ECF 2005 at 5-6, addressing JCCP_MDL_PRIVLOG036737), but Plaintiffs have apparently not applied this Court's guidance.

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

issues, including Uber's app safety features. Ms. Handley sent a request to two Uber employees requesting that they provide her with certain data concerning Uber's app safety features in order to facilitate her providing legal advice concerning these safety features and in anticipation of litigation–which she stated in this initial email. Ms. Handley instructed the recipients to maintain privilege in connection with this request by limiting access and marking documents for privilege and attorney work product. All of the subsequent emails in the chain discussed the scope, details, and logistics of Ms. Handley's data request. Ms. Handley did not request this data for any non-legal business purpose. *See* Handley Decl. ¶ 2.

**JCCP_MDL_PRIVLOG043475:** This is yet another example of Plaintiffs improperly challenging a privilege claim solely because of an attorney appearing to be in the "cc" field. This communication is privileged because it contains a request for information sent on behalf of counsel for the purpose of facilitating legal advice. The email was sent by Uber data scientist Sangick "Sunny" Jeon, but was expressly sent on behalf of Associate General Counsel Scott Binnings. Mr. Binnings asked Mr. Jeon to send the email on his behalf to six individuals who worked at Uber in the areas of analytics, data science, and software engineering. This email sent on behalf of Mr. Binnings requested information that Mr. Binnings needed to provide legal advice to the company concerning rider safety issues with legal liability risks and lawsuits against the company. Mr. Binnings also asked Mr. Jeon to send this communication to set up a meeting with Mr. Binnings to discuss such information and related legal issues and legal strategies with the group, which meeting Mr. Binnings attended in order to continue providing legal advice. Mr. Binnings asked Mr. Jeon to send this communication in Mr. Binnings' then-capacity as Senior Counsel, Director of Safety Legal, for the purpose of providing legal advice and not for any non-legal business purpose. *See* Binnings Decl. ¶ 3.

**JCCP_MDL_PRIVLOG057545:** Plaintiffs' assertion that "no attorneys are on this email chain" is wrong. Uber in fact did identify in its log in-house attorney Curtis Scott, and Plaintiffs either failed to review or glossed over this information in reaching the inexact conclusion the dominant purpose of the email must be "business" and not legal. Plaintiffs provide no reason to doubt Uber's entirely accurate description of the communication as a "[c]onfidential e-mail thread seeking legal advice from in-house counsel regarding data or metrics collected and reviewed for Uber's Safety Report." The privilege log provides sufficient information and there is no valid reason for Plaintiffs to have challenged this communication including legal counsel.

This document is privileged. In the first in time email, an Uber employee emails three other employees about the collection of information from Uber's legal team about a planned data sharing transparency report. This initial email conveys legal advice previously provided to the email author from Uber's in-house attorneys, in particular former Uber in-house attorney Bob O'Leary, about data collection and data sharing, as well as the process by which Uber's in-house attorneys provide legal advice on regulatory data sharing requirements. In the next email in the chain, two employees discuss seeking further legal advice on these issues. The email participants added to the email then-in house counsel Curtis Scott and expressly sought his legal advice concerning regulatory requests. The email chain is then forwarded to two other employees and includes discussions about continuing to seek legal advice from Mr. Scott on this issue. *See* Binnings Decl. ¶ 3.

**JCCP_MDL_PRIVLOG055904:** Plaintiffs withdrew their challenge to JCCP_MDL_PRIVLOG055904 for the first time in a draft sent at 8:10 p.m. EST on the day of filing, purportedly based on information in Scott Binnings' declaration and Defendants' portion of the letter brief. *See* Binnings Decl. ¶ 5. But it appears Plaintiffs did not read the privilege log,

which shows that attorneys were on this email chain (contrary to their claim prior to withdrawing this challenge), including then-Director of Litigation Keith Yandell and then-Senior Counsel Jen Ghaussy  Indeed, the brief Plaintiffs provided to Defendants on January 9, 2025 challenged this document "based on information provided in Uber's Tranche 3 privilege log, this email is dated before any in house counsel were first included on the chain on January 29, 2016," a false premise Plaintiffs should have known was inaccurate from the privilege log.

**JCCP_MDL_PRIVLOG053996:** This is a confidential and privileged draft document dated July 2018 regarding driver background checks policies and procedures.  It is privileged because it was created at the direction and under the supervision of counsel and served to provide legal advice. This draft manual was created at the direction of then-Regulatory Counsel Emily Madavo, which is expressly noted at the top of the draft document.  Ms. Madavo and other Uber in-house attorneys, including Jason Burch, Legal Director, U.S. Regulatory, directed the creation of this draft manual to provide legal guidance to Uber employees on complying with background check legal requirements of various jurisdictions.  The draft manual explains, among other things, the substantive legal requirements related to background checks, the role of Uber's legal department in approving changes to background check criteria in response to changes in the law in different jurisdictions, and the concrete steps for adhering to those legal requirements.  Additionally, this draft contains numerous comments directed to or by Ms. Madavo in which legal advice is requested and provided.  *See* Binnings Decl. ¶ 5.  Plaintiffs' claim, without explanation, that this document is similar to certain other documents the Court has found were not privileged, or should be produced with privilege redactions, is incorrect.  Defendants cannot discern what similarities Plaintiffs are pointing to, and Plaintiffs provide no explanation for their allegation.

**JCCP_MDL_PRIVLOG056137:** Again, Plaintiffs challenged this document because an attorney appears in the cc line of the email chain, and say without any basis that the email must have a dominant, non-legal business purpose.  The Court should reject this meritless challenge.  Plaintiffs further assert that while in-house counsel Mr. Yandell was on the email chain, "it does not appear any legal advice was sought from him."  This assertion has no factual basis, much like a large portion of Plaintiffs' privilege challenges.  Plaintiffs' argument that this communication has a "dominant business purpose" because of the email subject line is also meritless.  Obviously in the context of a business, legal advice will be sought and provided by in-house counsel on business topics, but this does not mean such communications are not privileged.  *See Staley v. Gilead Scis., Inc.*,2021 WL 4318403, at *2 (N.D. Cal. July 16, 2021).  Plaintiffs assertion, without authority, that "[w]hile a later direct request to an attorney for legal advice may certainly be privileged, an employee merely discussing if they should seek legal advice is not," is contrary to black letter law. *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019) ("The attorney-client privilege 'may attach to communications between nonlegal employees where … an employee discusses her intent to seek legal advice about a particular issue.").

    As indicated in Uber's privilege log, this communication is privileged because it involves a discussion about seeking legal advice and a request for legal advice. The first-in-time email was sent by an Uber employee to two other employees (including one attorney working in a non-legal role at Uber), regarding background check policies for independent drivers, including their potential impact on litigation and regulatory matters.  In the email chain, the participants discuss seeking legal advice from then-General Counsel Salle Yoo, and later added in-house counsel Keith Yandell to the email chain and sought his legal advice.  The purpose of this email communication was to highlight litigation and other risks and to seek legal advice, as shown by the references to litigation and regulatory impact in the first email, to seeking guidance from Ms. Yoo in the second

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

email, and in the direct request for legal advice from Mr. Yandell in the last email. *See* Binnings Decl. ¶ 6.

**JCCP_MDL_PRIVLOG040249:** This email chain from July 2021 is privileged because it was sent on behalf of counsel in anticipation of litigation. The first email was sent by Mike Haas, as part of his role at that time as Senior Legal Project Manager for Uber's Safety Legal Special Investigations team, to Katy McDonald, then Senior Manager for Uber's Safety and Insurance Data Science team, and other members of the Safety and Insurance team. In that email, Mr. Haas sought clarification regarding the policies and procedures concerning deactivation of independent drivers. Mr. Haas requested this information on behalf of Uber's in-house attorneys because of a threatened lawsuit and because the Insurance Litigation legal team wanted clarification on the items discussed, as stated in his email. As a result, he noted at the beginning of this email that it was "A/C Privileged & Confidential/Prepared at Direction of Counsel in Anticipation of Litigation" and "Confidential Attorney Work Product." Uber's in-house attorneys asked him to seek clarification on such policies and to facilitate their provision of legal advice regarding the potential litigation. The following emails in the email chain respond to or discuss the questions Mr. Haas asked at the direction of counsel. *See* Handley Decl. ¶ 3.

**JCCP_MDL_PRIVLOG056148:** This email chain from July 2015 is privileged because it seeks legal advice from counsel, as stated in Defendants' privilege log ("Confidential e-mail thread seeking and providing legal advice from in-house counsel regarding driver background check policies and practices."). The first in time email was sent by Uber's then-Chief Security Officer, Joe Sullivan, to four Uber employees, including then in-house attorney Keith Yandell, and two non-attorney Uber employees. In this email, Mr. Sullivan explicitly seeks legal advice from Mr. Yandell pertaining to the company's background check policies. Thereafter, Mr. Yandell forwarded Mr. Sullivan's email to then in-house attorney Seth Schreiberg to seek additional legal views. Mr. Schreiberg responded, providing legal advice. Thereafter, Mr. Yandell forwarded Mr. Schreiberg's response containing legal advice to the individuals on the first in time email, and also added Mr. Schreiberg and another then in-house attorney, Jen Ghaussy, to the email chain directly. Three non-lawyers go on to send emails discussing the implications of Mr. Schreiberg's legal advice regarding the company's background check policies, including an email from Phillip Cardenas titled "A/C Privilege." Mr. Schreiberg then responds with additional legal advice pertaining to Uber's background check policies. The two latest in time emails go on to discuss the implementation of Mr. Schreiberg's legal advice pertaining to such policies. See Binnings Decl. ¶ 7. Plaintiffs do not contest that Mr. Schreiberg, Mr. Yandell, and Ms. Ghaussy were identified in the privilege log for this document.

Again, Plaintiffs make meritless arguments based on attorneys being in the "cc" field on the top-level email in the chain and because the subject relates to a business topic (here, background checks). As explained above, and this document also illustrates, an attorney being in the "cc" field of the latest email within a chain says nothing about whether the chain contains legal advice in an email sent by counsel. And businesses will obviously seek legal advice from their in-house attorneys on business decisions, but legal advice is nevertheless privileged. *See Staley*, 2021 WL 4318403, at *2.

**JCCP_MDL_PRIVLOG040518:** This November 2019 email communication is privileged because its dominant purpose is to seek legal advice from outside counsel. Associate General Counsel Scott Binnings sent the first email in the chain about seeking legal advice on Uber's U.S. Safety Report from outside counsel after discussing the matter with Uber Chief Legal Officer Tony West, and then-Uber Deputy General Counsel Tammy Albarrán. This request for legal advice was

discussed and then the email chain was forwarded to two other Uber non-attorney employees to make them aware of the plan to seek legal advice from outside counsel as there might be an eventual need for further edits to the draft Safety Report reflecting the legal advice. *See* Binnings Decl. ¶ Plaintiffs assertion that it "appears … that this Safety Report draft was … was not actually sent" to counsel" is pure speculation. This draft was pulled for the purpose of sending to her, and was sent to her.

Plaintiff asserts that "no attorney is included in this email." Yet during the conferral period, Uber provided Plaintiffs with an updated privilege log description that supplemented the prior description of the document ("Confidential e-mail seeking and providing legal advice from in-house counsel regarding drafting and implementation of Uber's Safety Report") as well as an updated "privileged name(s)" field that included two additional attorneys besides Mr. Binnings, including the outside counsel. *See* Cummings Decl. ¶ 28. So the privilege log properly identified the attorneys involved in this email chain, yet Plaintiffs ignored this information in bringing yet another baseless claim to this Court. Additionally, if Plaintiffs did not believe the information in the privilege log, Plaintiffs could have easily looked at privilege log entries with the same subject line (with a simple "ctr+F" search") and found JCCP_MDL_PRIVLOG042490, the initial email in the chain sent by attorney Binnings. The fact that Plaintiffs pushed for an ESI protocol that does not permit email threading does not mean they can ignore the information provided in Uber's privilege log or view emails myopically without considering other emails in the same chain, also reflected on the log, when determining whether to challenge a privilege claim. The Court should order Plaintiffs to re-review all privilege challenges to email chains by reviewing privilege log entries for other emails in the same chain.

**JCCP_MDL_PRIVLOG040519:** This is a draft of Uber's first U.S. Safety Report. It is privileged because *this* draft was attached to a privileged email communication to provide to outside counsel to provide legal advice and because this draft includes comments and legal advice from Uber's in-house legal counsel. The date of this draft from the metadata is November 19, 2019. Given the legal risks of public statements regarding safety issues, a team of Uber's in-house attorneys, including Senior Legal Director Jennifer Handley, directed and coordinated the drafting of the report. The draft report was maintained confidentially in Uber's internal files throughout the drafting process. The purpose of the Safety Report drafting being directed and supervised by counsel was to facilitate the provision of legal advice on the statements in the then-draft Safety Report, and Uber's in-house legal counsel did, in fact, provide legal advice at every step of the way. This draft contains comments and legal advice from several attorneys, including Deputy General Counsel Elizabeth Abbene Coleman, Chief Legal Officer Tony West, Associate General Counsel Scott Binnings, then-Deputy General Counsel Tammy Albarrán, and Ms. Handley. Each non-attorney involved with drafting the report did so at the direction, and under the supervision, of counsel. *See* Handley Decl. ¶ 4; *see also* Binnings Decl. ¶ 4 (discussing JCCP_MDL_PRIVLOG040518, the email to which this draft was attached). As noted above, this draft was attached to an email (JCCP_MDL_PRIVLOG040518) Mr. Binnings intended to send to outside counsel for review. This draft is privileged because it was sent to counsel for review. *See, e.g. In re Banc of California Sec. Litig.*, 2018 WL 6167907, at *2 (C.D. Cal. Nov. 26, 2018) ("When a client sends a draft disclosure document to an attorney for comment or input, the attorney-client privilege attaches to the draft and remains intact even after the final document is disclosed."); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 664 (D. Or. 2019) ("[D]raft documents sent to or from counsel seeking the legal advice and input of counsel on those drafts are privileged"); *City of Roseville Employees' Ret. Sys. v. Apple Inc*., 2022

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

WL 3083000, at *23-*24 (N.D. Cal. Aug. 3, 2022) (finding that a draft version of a publicly available financial disclosure form, that was sent to in-house counsel, which reflects in-house counsel's legal advice is privileged).

**Specific Documents: Random Selections**

**JCCP_MDL_PRIVLOG044768:** This automatically-generated email from September 2018 contains a comment made in an incident report file by then-Senior Global Special Investigations Claims Advocate Mike Haas. It is privileged because it consists of a communication made at the direction of counsel about potential litigation. Uber's in-house legal counsel and employees working at the direction of legal counsel utilize the JIRA incident report system to convey legal advice related to incident reports. The email consists of a comment made in an incident report file by Mr. Haas, which provides information about communications between Uber and an attorney representing the reporting party, and also the potential for litigation against Uber. He also conveys direction on behalf of counsel based on the reporting party being represented by counsel. In his role, Mr. Haas worked under the supervision and direction of Uber's in-house legal counsel and would have made this comment in that capacity. The undisputed declaration from Ms. Frangopoulos, who knows how Uber's legal counsel and those working for them use the JIRA system, establishes that Mr. Haas was working at the direction of counsel. Plaintiffs provide no authority for the implicit proposition that a declaration must be provided by Mr. Haas or the specific attorney that provided him with direction. *See* Frangopoulos Decl. ¶ 3. Plaintiffs' argument that this document cannot be privileged because the comment was not directly made by an attorney is also meritless. Plaintiffs provided no basis for challenging the privilege log description that it "provid[ed] legal advice at the direction of in-house counsel." Moreover, Defendants specifically told Plaintiffs in the meet and confer process that this document consisted of a comment by a non-attorney made at the direction of counsel giving legal advice about the reporting party being represented by counsel and potential for litigation, yet Plaintiffs have proceeded with this meritless challenge. *See* Cummings Decl. ¶ 23(g).

**JCCP_MDL_PRIVLOG050377:** Plaintiffs' challenge is likewise unavailing. This is another automatically-generated email reflecting comments, in this case from an attorney, in a JIRA ticket. It is privileged because it contains legal advice from an attorney. The email consists of a comment made in an incident report file by then-Senior Counsel, Safety and Insurance Litigation, Stephanie Vitale. In the comment, Ms. Vitale provides legal advice on a deactivation decision regarding an independent driver. *See* Frangopoulos Decl. ¶ 4.

Ms. Vitale's name was in the "privileged name(s)" field for this privilege log entry and her job title was in the "Privilege Names" tab. Likewise, Defendants told Plaintiffs during conferrals that this document consisted of a comment made by an attorney providing legal advice on a driver deactivation. *See* Cummings Decl. ¶ 23(h). Plaintiffs provide no basis for why they maintain their challenge to this document and failed to withdraw their challenge during the conferral period, providing only a wholly conclusory statement that "Uber improperly withheld the entire email instead of producing it with appropriate redactions, if any." Plaintiffs' argument appears to be that because some JIRA incident report files or emails with comments on a JIRA file are not privileged, or not privileged in their entirety, this email must not be either. Plaintiffs must be held to a higher standard by the Court for asserting privilege challenges, and cannot be permitted to assert thousands of challenges on the basis that they *might* not be privileged without any specific reason to challenge the prima facie privilege claims in Defendants' privilege log. The Court should order Plaintiffs to re-review all privilege challenges to similar JIRA emails to ensure they have an individualized basis for challenging each one beyond the fact that it is a JIRA comment email.

**JCCP_MDL_PRIVLOG052655:** This is another automatically-generated email regarding a JIRA report from September 2018. It is privileged because it contains legal advice from an attorney. The email consists of a comment made in an incident report file by then-Senior Counsel, Safety and Insurance Litigation, Stephanie Vitale. In the comment, Ms. Vitale provides legal advice regarding handling the report. *See* Frangopoulos Decl. ¶ 4. Like the last document, Plaintiffs acknowledge that JIRA files often contain privileged attorney comments, but articulate no basis for challenging this particular document.

**JCCP_MDL_PRIVLOG044017:** This document was produced with privilege redactions and Plaintiffs challenge the privilege claim to the redacted materials. This is an email thread from January 2020. Plaintiff's challenge to the one redacted sentence in this email is meritless. It is self-evident from the document that in the redacted portion non-attorney Uber employee Brian Busian seeks legal advice from Uber in-house attorney Megan Poonolly—the only attorney in the email chain. Uber's privilege log identified Ms. Poonolly as an attorney, and Plaintiffs provided no valid reason to doubt Uber's explanation that Mr. Busian seeks legal advice. Indeed, in the very first paragraph of the email, Mr. Busian explicitly said "[w]e are requesting input on a few strategic decisions" and "please send along any feedback/questions you have." Plaintiffs assert that "it appears" the email sender is "giving a business opinion" rather than seeking legal advice, but this is pure speculation. The Court should reject Plaintiffs' baseless challenge.

cc:     All counsel of record via ECF

Dated: January 14, 2025                        Respectfully Submitted,

By: */s/ Sarah R. London*                      */s/ Michael B. Shortnacy*
Sarah R. London (SBN 267093)

                                               MICHAEL B. SHORTNACY (SBN: 277035)
**LIEFF CABRASER HEIMANN &**                    mshortnacy@shb.com
**BERNSTEIN, LLP**                              **SHOOK, HARDY & BACON L.L.P.**
275 Battery Street, 29th Floor                  2121 Avenue of the Stars, Ste. 1400
San Francisco, CA 94111-3339                    Los Angeles, CA 90067
Telephone: (415) 956-1000                       Telephone: (424) 285-8330
Facsimile: (415) 956-1008                       Facsimile: (424) 204-9093
slondon@lchb.com

                                               PATRICK OOT (Admitted *Pro Hac Vice*)
By: */s/ Rachel B. Abrams*                      oot@shb.com
Rachel B. Abrams (SBN 209316)                   **SHOOK, HARDY & BACON L.L.P.**
                                               1800 K St. NW Ste. 1000
**PEIFFER WOLF CARR KANE CONWAY**               Washington, DC 20006
**& WISE, LLP**                                 Telephone: (202) 783-8400
555 Montgomery Street, Suite 820                Facsimile: (202) 783-4211
San Francisco, CA 94111
Telephone: (415) 426-5641                       VERONICA G. GROMADA (Admitted *Pro*
Facsimile: (415) 840-9435                       *Hac Vice*)
rabrams@peifferwolf.com                         vgromada@shb.com
                                               **SHOOK, HARDY & BACON L.L.P.**
By: */s/ Roopal P. Luhana*                      600 Travis St., Suite 3400

JOINT LETTER BRIEF REGARDING TRANCHE THREE PRIVILEGE DISPUTES

Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508
vgromada@shb.com

KYLE N. SMITH (*Pro Hac Vice* admitted)
ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice*
admitted)
jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose

behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: January 14, 2025                    By: /s/Roopal P. Luhana          .