| Log No. | Privileged Document Category | Uber's Description of Document on PTO 8 Brief |
|---|---|---|
| JCCP_MDL_PRIVLOG057545 | Confidential e-mail thread seeking legal advice from in-house counsel regarding data or metrics collected and reviewed for Uber's Safety Report. | This document is privileged. In the first in time email, an Uber employee emails three other employees about the collection of information from Uber's legal team about a planned data sharing transparency report. This initial email conveys legal advice previously provided to the email author from Uber's in-house attorneys, in particular former Uber in-house attorney Bob O'Leary, about data collection and data sharing, as well as the process by which Uber's in-house attorneys provide legal advice on regulatory data sharing requirements. In the next email in the chain, two employees discuss seeking further legal advice on these issues. The email participants added to the email then-in house counsel Curtis Scott and expressly sought his legal advice concerning regulatory requests. The email chain is then forwarded to two other employees and includes discussions about continuing to seek legal advice from Mr. Scott on this issue. See Binnings Decl. ¶ 3. |

| | | |
|---|---|---|
| JCCP_MDL_PRIVLOG043475 | Confidential e-mail thread providing legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety. | This communication is privileged because it contains a request for information sent on behalf of counsel for the purpose of facilitating legal advice. The email was sent by Uber data scientist Sangick "Sunny" Jeon, but was expressly sent on behalf of Associate General Counsel Scott Binnings. Mr. Binnings asked Mr. Jeon to send the email on his behalf to six individuals who worked at Uber in the areas of analytics, data science, and software engineering. This email sent on behalf of Mr. Binnings requested information that Mr. Binnings needed to provide legal advice to the company concerning rider safety issues with legal liability risks and lawsuits against the company. Mr. Binnings also asked Mr. Jeon to send this communication to set up a meeting with Mr. Binnings to discuss such information and related legal issues and legal strategies with the group, which meeting Mr. Binnings attended in order to continue providing legal advice. Mr. Binnings asked Mr. Jeon to send this communication in Mr. Binnings' then-capacity as Senior Counsel, Director of Safety Legal, for the purpose of providing legal advice and not for any non-legal business purpose. See Binnings Decl. ¶ 3. |
| JCCP_MDL_PRIVLOG040099 | Confidential e-mail thread seeking and providing legal advice from in-house counsel regarding drafting and implementation of Uber's Taxonomy. | The first email in the chain was sent by Senior Legal Director Jennifer Handley. In her role as Senior Legal Director, Ms. Handley provides the company legal advice concerning safety issues, including Uber's app safety features. Ms. Handley sent a request to two Uber employees requesting that they provide her with certain data concerning Uber's app safety features in order to facilitate her providing legal advice concerning these safety features and in anticipation of litigation–which she stated in this initial email. Ms. Handley instructed the recipients to maintain privilege in connection with this request by limiting access and marking documents for privilege and attorney work product. All of the subsequent emails in the chain discussed the scope, details, and logistics of Ms. Handley's data request. Ms. Handley did not request this data for any non-legal business purpose. See Handley Decl. ¶ 2. |

| | | |
|---|---|---|
| JCCP_MDL_PRIVLOG053996 | Draft Confidential document providing legal advice from in-house counsel regarding driver background check policies and practices. | This is a confidential and privileged draft document dated July 2018 regarding driver background checks policies and procedures. It is privileged because it was created at the direction and under the supervision of counsel and served to provide legal advice. This draft manual was created at the direction of then-Regulatory Counsel Emily Madavo, which is expressly noted at the top of the draft document. Ms. Madavo and other Uber in-house attorneys, including Jason Burch, Legal Director, U.S. Regulatory, directed the creation of this draft manual to provide legal guidance to Uber employees on complying with background check legal requirements of various jurisdictions. The draft manual explains, among other things, the substantive legal requirements related to background checks, the role of Uber's legal department in approving changes to background check criteria in response to changes in the law in different jurisdictions, and the concrete steps for adhering to those legal requirements. Additionally, this draft contains numerous comments directed to or by Ms. Madavo in which legal advice is requested and provided. See Binnings Decl. ¶ 5. |
| JCCP_MDL_PRIVLOG056137 | Confidential e-mail thread seeking legal advice from in-house counsel regarding driver background check policies and practices. | As indicated in Uber's privilege log, this communication is privileged because it involves a discussion about seeking legal advice and a request for legal advice. The first-in-time email was sent by an Uber employee to two other employees (including one attorney working in a non-legal role at Uber), regarding background check policies for independent drivers, including their potential impact on litigation and regulatory matters. In the email chain, the participants discuss seeking legal advice from then-General Counsel Salle Yoo, and later added in-house counsel Keith Yandell to the email chain and sought his legal advice. The purpose of this email communication was to highlight litigation and other risks and to seek legal advice, as shown by the references to litigation and regulatory impact in the first email, to seeking guidance from Ms. Yoo in the second email, and in the direct request for legal advice from Mr. Yandell in the last email. See Binnings Decl. ¶ 6. |

| | | |
|---|---|---|
| JCCP_MDL_PRIVLOG040249 | Confidential e-mail thread seeking and providing legal advice from in-house counsel regarding Uber's policies and practices for responding to allegations of driver sexual assault or sexual misconduct. | As indicated in Uber's privilege log, this communication is privileged because it involves a discussion about seeking legal advice and a request for legal advice. The first-in-time email was sent by an Uber employee to two other employees (including one attorney working in a non-legal role at Uber), regarding background check policies for independent drivers, including their potential impact on litigation and regulatory matters. In the email chain, the participants discuss seeking legal advice from then-General Counsel Salle Yoo, and later added in-house counsel Keith Yandell to the email chain and sought his legal advice. The purpose of this email communication was to highlight litigation and other risks and to seek legal advice, as shown by the references to litigation and regulatory impact in the first email, to seeking guidance from Ms. Yoo in the second email, and in the direct request for legal advice from Mr. Yandell in the last email. See Binnings Decl. ¶ 6. |

| | | |
|---|---|---|
| JCCP_MDL_PRIVLOG056148 | Confidential e-mail thread seeking and providing legal advice from in-house counsel regarding driver background check policies and practices. | This email chain from July 2015 is privileged because it seeks legal advice from counsel, as stated in Defendants' privilege log ("Confidential e-mail thread seeking and providing legal advice from in-house counsel regarding driver background check policies and practices."). The first in time email was sent by Uber's then-Chief Security Officer, Joe Sullivan, to four Uber employees, including then in-house attorney Keith Yandell, and two non-attorney Uber employees. In this email, Mr. Sullivan explicitly seeks legal advice from Mr. Yandell pertaining to the company's background check policies. Thereafter, Mr. Yandell forwarded Mr. Sullivan's email to then in-house attorney Seth Schreiberg to seek additional legal views. Mr. Schreiberg responded, providing legal advice. Thereafter, Mr. Yandell forwarded Mr. Schreiberg's response containing legal advice to the individuals on the first in time email, and also added Mr. Schreiberg and another then in-house attorney, Jen Ghaussy, to the email chain directly. Three non-lawyers go on to send emails discussing the implications of Mr. Schreiberg's legal advice regarding the company's background check policies, including an email from Phillip Cardenas titled "A/C Privilege." Mr. Schreiberg then responds with additional legal advice pertaining to Uber's background check policies. The two latest in time emails go on to discuss the implementation of Mr. Schreiberg's legal advice pertaining to such policies. See Binnings Decl. ¶ 7. Plaintiffs do not contest that Mr. Schreiberg, Mr. Yandell, and Ms. Ghaussy were identified in the privilege log for this document. |

| | | |
|---|---|---|
| JCCP_MDL_PRIVLOG040518 | Confidential e-mail seeking and providing legal advice from in-house counsel regarding media inquiry concerning Uber's Safety Report. | This November 2019 email communication is privileged because its dominant purpose is to seek legal advice from outside counsel. Associate General Counsel Scott Binnings sent the first email in the chain about seeking legal advice on Uber's U.S. Safety Report from outside counsel after discussing the matter with Uber Chief Legal Officer Tony West, and then-Uber Deputy General Counsel Tammy Albarrán. This request for legal advice was discussed and then the email chain was forwarded to two other Uber non-attorney employees to make them aware of the plan to seek legal advice from outside counsel as there might be an eventual need for further edits to the draft Safety Report reflecting the legal advice. See Binnings Decl. ¶ Plaintiffs assertion that it "appears … that this Safety Report draft was … was not actually sent" to counsel" is pure speculation. This draft was pulled for the purpose of sending to her, and was sent to her. |

| | | |
|---|---|---|
| JCCP_MDL_PRIVLOG040519 | Draft Confidential document seeking and providing legal advice from in-house counsel regarding preparation and drafting of Uber's Safety Report. | This is a draft of Uber's first U.S. Safety Report. It is privileged because this draft was attached to a privileged email communication to provide to outside counsel to provide legal advice and because this draft includes comments and legal advice from Uber's in-house legal counsel. The date of this draft from the metadata is November 19, 2019. Given the legal risks of public statements regarding safety issues, a team of Uber's in-house attorneys, including Senior Legal Director Jennifer Handley, directed and coordinated the drafting of the report. The draft report was maintained confidentially in Uber's internal files throughout the drafting process. The purpose of the Safety Report drafting being directed and supervised by counsel was to facilitate the provision of legal advice on the statements in the then-draft Safety Report, and Uber's in-house legal counsel did, in fact, provide legal advice at every step of the way. This draft contains comments and legal advice from several attorneys, including Deputy General Counsel Elizabeth Abbene Coleman, Chief Legal Officer Tony West, Associate General Counsel Scott Binnings, then-Deputy General Counsel Tammy Albarrán, and Ms. Handley. Each non-attorney involved with drafting the report did so at the direction, and under the supervision, of counsel. See Handley Decl. ¶ 4; see also Binnings Decl. ¶ 4 (discussing JCCP_MDL_PRIVLOG040518, the email to which this draft was attached). As noted above, this draft was attached to an email (JCCP_MDL_PRIVLOG040518) Mr. Binnings intended to send to outside counsel for review. This draft is privileged because it was sent to counsel for review. See, e.g. In re Banc of California Sec. Litig., 2018 WL 6167907, at *2 (C.D. Cal. Nov. 26, 2018) ("When a client sends a draft disclosure document to an attorney for comment or input, the attorney-client privilege attaches to the draft and remains intact even after the final document is disclosed."); In re Premera Blue Cross Customer Data Sec. Breach Litig., 329 F.R.D. 656, 664 (D. Or. 2019) ("[D]raft documents sent to or from counsel seeking the legal advice and input of counsel on those drafts are privileged"); City of Roseville Employees' Ret. Sys. v. Apple Inc., 2022 WL 3083000, at *23-*24 (N.D. Cal. Aug. 3, 2022) (finding that a draft version of a publicly available financial disclosure form, that was sent to in-house counsel, which reflects in-house counsel's legal advice is privileged). |

| | | |
|---|---|---|
| JCCP_MDL_PRIVLOG044017 | Confidential e-mail thread seeking legal advice from in-house counsel regarding driver background check policies and practices. | This document was produced with privilege redactions and Plaintiffs challenge the privilege claim to the redacted materials. This is an email thread from January 2020. Plaintiff's challenge to the one redacted sentence in this email is meritless. It is self-evident from the document that in the redacted portion non-attorney Uber employee Brian Busian seeks legal advice from Uber in-house attorney Megan Poonolly—the only attorney in the email chain. Uber's privilege log identified Ms. Poonolly as an attorney, and Plaintiffs provided no valid reason to doubt Uber's explanation that Mr. Busian seeks legal advice. Indeed, in the very first paragraph of the email, Mr. Busian explicitly said "[w]e are requesting input on a few strategic decisions" and "please send along any feedback/questions you have." Plaintiffs assert that "it appears" the email sender is "giving a business opinion" rather than seeking legal advice, but this is pure speculation. The Court should reject Plaintiffs' baseless challenge. |

| | | |
|---|---|---|
| JCCP_MDL_PRIVLOG044768 | Confidential e-mail thread providing legal advice at the direction of in-house counsel in anticipation of litigation regarding reports of driver sexual assault or sexual misconduct. | This automatically-generated email from September 2018 contains a comment made in an incident report file by then-Senior Global Special Investigations Claims Advocate Mike Haas. It is privileged because it consists of a communication made at the direction of counsel about potential litigation. Uber's in-house legal counsel and employees working at the direction of legal counsel utilize the JIRA incident report system to convey legal advice related to incident reports. The email consists of a comment made in an incident report file by Mr. Haas, which provides information about communications between Uber and an attorney representing the reporting party, and also the potential for litigation against Uber. He also conveys direction on behalf of counsel based on the reporting party being represented by counsel. In his role, Mr. Haas worked under the supervision and direction of Uber's in-house legal counsel and would have made this comment in that capacity. The undisputed declaration from Ms. Frangopoulos, who knows how Uber's legal counsel and those working for them use the JIRA system, establishes that Mr. Haas was working at the direction of counsel. Plaintiffs provide no authority for the implicit proposition that a declaration must be provided by Mr. Haas or the specific attorney that provided him with direction. See Frangopoulos Decl. ¶ 3. Plaintiffs' argument that this document cannot be privileged because the comment was not directly made by an attorney is also meritless. Plaintiffs provided no basis for challenging the privilege log description that it "provid[ed] legal advice at the direction of in-house counsel." Moreover, Defendants specifically told Plaintiffs in the meet and confer process that this document consisted of a comment by a non-attorney made at the direction of counsel giving legal advice about the reporting party being represented by counsel and potential for litigation, yet Plaintiffs have proceeded with this meritless challenge. See Cummings Decl. ¶ 23(g). |

| | | |
|---|---|---|
| JCCP_MDL_PRIVLOG050377 | Confidential e-mail providing legal advice from in-house counsel regarding reports of driver sexual assault or sexual misconduct. | Plaintiffs' challenge is likewise unavailing. This is another automatically-generated email reflecting comments, in this case from an attorney, in a JIRA ticket. It is privileged because it contains legal advice from an attorney. The email consists of a comment made in an incident report file by then-Senior Counsel, Safety and Insurance Litigation, Stephanie Vitale. In the comment, Ms. Vitale provides legal advice on a deactivation decision regarding an independent driver. See Frangopoulos Decl. ¶ 4.<br><br>Ms. Vitale's name was in the "privileged name(s)" field for this privilege log entry and her job title was in the "Privilege Names" tab. Likewise, Defendants told Plaintiffs during conferrals that this document consisted of a comment made by an attorney providing legal advice on a driver deactivation. See Cummings Decl. ¶ 23(h). Plaintiffs provide no basis for why they maintain their challenge to this document and failed to withdraw their challenge during the conferral period, providing only a wholly conclusory statement that "Uber improperly withheld the entire email instead of producing it with appropriate redactions, if any." Plaintiffs' argument appears to be that because some JIRA incident report files or emails with comments on a JIRA file are not privileged, or not privileged in their entirety, this email must not be either. Plaintiffs must be held to a higher standard by the Court for asserting privilege challenges, and cannot be permitted to assert thousands of challenges on the basis that they might not be privileged without any specific reason to challenge the prima facie privilege claims in Defendants' privilege log. The Court should order Plaintiffs to re-review all privilege challenges to similar JIRA emails to ensure they have an individualized basis for challenging each one beyond the fact that it is a JIRA comment email. |

| | | |
|---|---|---|
| JCCP_MDL_PRIVLOG052655 | Confidential e-mail memorializing legal advice from in-house counsel regarding reports of driver sexual assault or sexual misconduct. | This is another automatically-generated email regarding a JIRA report from September 2018. It is privileged because it contains legal advice from an attorney. The email consists of a comment made in an incident report file by then-Senior Counsel, Safety and Insurance Litigation, Stephanie Vitale. In the comment, Ms. Vitale provides legal advice regarding handling the report. See Frangopoulos Decl. ¶ 4. Like the last document, Plaintiffs acknowledge that JIRA files often contain privileged attorney comments, but articulate no basis for challenging this particular document. |