# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No..: 3:23-MD-03084 CRB |
| | **JOINT LETTER REGARDING TAR VALIDATION** |
| | Judge:      Hon. Lisa J. Cisneros |
| | Courtroom:   G – 15th Floor |

Dear Judge Cisneros:

      Pursuant to Pretrial Order No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding the responsiveness of certain categories of documents within Uber's TAR Validation Set.

Dated: January 28, 2025                    Respectfully Submitted,

By: */s/ Roopal Luhana*                  */s/Michael Shortnacy*

ROOPAL P. LUHANA *(Pro Hac Vice)*       MICHAEL B. SHORTNACY (SBN: 277035)
**CHAFFIN LUHANA LLP**                  mshortnacy@shb.com
600 Third Avenue, Fl. 12                 **SHOOK, HARDY & BACON L.L.P.**
New York, NY 10016                   2121 Avenue of the Stars, Ste. 1400
Telephone: (888) 480-1123              Los Angeles, CA 90067
Email: luhana@chaffinluhana.com       Telephone: (424) 285-8330
*Co-Lead Counsel for Plaintiffs*             Facsimile: (424) 204-9093

SARAH R. LONDON (SBN 267083)       PATRICK OOT (Admitted *Pro Hac Vice*)
**LIEFF CABRASER HEIMANN &**         oot@shb.com
**BERNSTEIN**                        **SHOOK, HARDY & BACON L.L.P.**
275 Battery Street, Fl. 29                 1800 K St. NW Ste. 1000
San Francisco, CA 94111                 Washington, DC 20006
Telephone: (415) 956-1000             Telephone: (202) 783-8400
Email: slondon@lchb.com                Facsimile: (202) 783-4211

RACHEL B. ABRAMS (SBN 209316)     VERONICA G. GROMADA (Admitted *Pro*
**PEIFFER WOLF CARR KANE CONWAY**   *Hac Vice*)
**& WISE, LLP**                     vgromada@shb.com
555 Montgomery Street, Suite 820      **SHOOK, HARDY & BACON L.L.P.**
San Francisco, CA 94111                 600 Travis St., Suite 3400
Telephone: (415) 426-5641             Houston, TX 77002
Email: rabrams@peifferwolf.com       Telephone: (713) 227-8008
                                        Facsimile: (713) 227-9508
                                        vgromada@shb.com

                                        RANDALL S. LUSKEY (SBN: 240915)
                                        rluskey@paulweiss.com
                                        **PAUL, WEISS, RIFKIND, WHARTON**
                                        **& GARRISON LLP**
                                        535 Mission Street, 24th Floor
                                        San Francisco, CA 94105
                                        Telephone: (628) 432-5100
                                        Facsimile:  (628) 232-3101

                                        ROBERT ATKINS (Admitted *Pro Hac Vice*)
                                        ratkins@paulweiss.com

CAITLIN E. GRUSAUSKAS (Admitted *Pro Hac Vice*)
cgrusauskas@paulweiss.com
ANDREA M. KELLER (Admitted *Pro Hac Vice*)
akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

Attorney for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

I.    **Plaintiffs' Position**

As part of the TAR validation process, Plaintiffs conducted an independent review of approximately 4,500 documents. The purpose of this review was to analyze the responsiveness of documents selected for review by TAR, to assess documents coded by Defendants as "non-responsive," and to develop a set of documents that will be used to train Uber's TAR Model going forward.[1]

Plaintiffs' review showed that, even after Uber implemented initial remediation measures, Uber's review showed more than 62% of "responsive" documents from the Tranche 1 production were not coded "responsive".[2] This includes a large percentage of documents which had been previously coded by Uber's document reviewers as "non-responsive" and withheld from production that Uber now concedes are responsive and should be produced. Such improperly coded documents are related to, *inter alia*, Uber's "Stand for Safety" initiative, safety panels on intoxicated riders, campaigns for women's safety, and Uber's taxonomy. Although not part of the current dispute, Uber's position change that now the majority of these documents are responsive, where previously they were coded "unresponsive" by Uber to train the TAR model, is deeply concerning and wreaks havoc on the discovery schedule. The Court set deadlines for custodial productions to be complete by January 3, 2025 (ECF No. 1808) and depositions are set to begin February 5 (33 depositions have been scheduled). Now a new corpus set of documents will need to be used to retrain the TAR model, with documents re-reviewed, and inevitably hundreds of thousands of potentially responsive documents belatedly produced. This is extremely prejudicial to Plaintiffs and Plaintiffs intend to move for necessary relief from the Court.

As part of the agreed-upon process, the parties exchanged their list of documents which were either responsive or non-responsive, along with the parties' rationales for why these documents should be coded as such. While there were initially approximately 1,000 documents for which the parties had disagreement, after several meet and confers, the parties significantly closed the gap. Now approximately 125 documents remain in dispute, which fall generally into the below categories.

**A.  Documents Related to Uber Drivers Physically or Verbally Assaulting Riders**

Documents related to physical and verbal assaults of riders by drivers are relevant and

---

[1] Based on conservative calculations, Plaintiffs believe 30% or more of the documents previously designated "non-responsive" by Defendants are responsive and will need to be reviewed and produced expeditiously.

[2] For example, using the numbers from the parties' original exchanged dispute log pursuant to ECF 2009-1, Plaintiffs believe an estimated 416,191 out of 426,425 documents that were coded as "responsive" are actually responsive, 310,094 of 1,076,716 documents that were previously coded as "not responsive" are actually responsive, and 386,150 of 8,215,959 unreviewed documents are actually responsive, which results in estimated recall of 37.41% (416,191 divided by (416,191 + 310,094 + 386,150)), meaning that an estimated 62.59% of responsive documents (100 – 37.41 = 62.59) are being missed. Plaintiffs' estimate that at least 83% of responsive documents were missed is based on similar calculations using Plaintiffs' coding of the Samples.  Since the parties' initial exchange of the dispute log, the parties have changed their position on a small number of additional documents not at issue in this dispute.

responsive to numerous Document Requests (*e.g.*, Nos. 18, 20, and 21).[3] The at-issue documents include custodial and non-custodial JIRA report documents related to Uber Drivers with reported incidents of physical or verbal assault against passengers.[4] Judge Breyer previously found such documents to be generally relevant. (ECF No. 65)(ordering preservation of custodial files and documents including "passenger complaints about drivers").

Documents related to an Uber Driver's past violent or threatening actions are among the most serious red flags that put Uber on notice regarding a driver's capacity to engage in future harmful conduct, including sexual assault, particularly when such drivers are placed with vulnerable (often intoxicated) riders.[5] Psychological and behavioral patterns of physical violence, verbal abuse, and sexual violence often overlap.[6] And physical violence and sexual violence share common underlying traits, such as the use of force, disregard for personal boundaries, and disregard for safety. Uber's handling of these types of physical assaults or verbal harassment is relevant and related to how Uber handled responding to and preventing sexual assaults.

### B. Documents Related to Communications with Governmental Agencies

Documents containing communications with government agencies related to safety, background checks, and the duties Uber owed to passengers are relevant and responsive to numerous Document Requests, including Nos. 112, 121.[7]

The at-issue documents are relevant because they contain Uber's communications and representations about the safety of its platform. These documents relate to Plaintiffs' claims that Uber failed to implement adequate safety measures, deliberately misled users regarding their safety, and failed to adequately screen its drivers, thereby increasing the risk of sexual assault and sexual misconduct.

Additionally, unlike previous disputes into "lobbying," the documents at issue in this validation set do not include files belonging to, or communications with, registered lobbyists. They are custodial documents of Uber employees who were not primarily working in a lobbying capacity, but rather in a business development capacity. Such documents directly relate to Uber's

---

[3] These requests seek documents related to the vetting and criteria for determining whether an Uber Driver was eligible to continue to remain on Uber's platform.

[4] Contrary to Defendants' assertion, these documents do not relate to minor issues such as door slamming and the like. Rather, these documents relate to serious issues, such as Uber drivers taking inappropriate photographs of women, spitting on passengers, committing acts of domestic violence, and stalking riders.



[7] These requests seek production of documents related to local governmental communications, and other documents related to policies, procedures, or strategies regarding Transportation Network Companies.

attempts to remove precautions and/or implement measures that would have improved safety on its platform. And these documents relate to communications with governmental agencies on a more general, high-level basis, rather than the types of documents that a registered lobbyist might have.[8]

### C. Documents Related to Individual Background Checks

Documents related to individual background checks of Uber drivers,[9] as well as documents related to disclosure of prior criminal history, are relevant and responsive to the numerous Documents Requests, including Nos. 19, 22, and 23.[10] Such documents directly show Uber's hiring practices, screening practices, background checks, and any re-investigation of those drivers. The background checks are also probative of Uber's implementation of driver criteria, how such information was conveyed to Uber's employees, and how Uber processed such information internally (or failed to do so).

## II.    Defendants' Position

The Parties continue to work cooperatively through the TAR validation process, consistent with the ESI Protocol and the Parties' Christmas Eve compromise. The Parties have agreed on all but 125 of the 4,500 documents in the validation samples with both sides making reasonable concessions in the spirit of good faith and compromise. The Parties reached agreements at the end of last year defining the scope of discovery, and therefore Defendants' changes in these samples are primarily reflective of those agreements. As Defendants have explained, model adjustments are a normal part of the TAR process especially when the scope of discovery has changed, providing interim validation metrics is unusual, and any attempts to draw broad conclusions from midstream validation are unhelpful. Nevertheless, the documents Defendants agreed to produce as a result of the Parties' cooperative work, and the 125 that remain unresolved, are not core for this litigation.[11] Defendants have already produced the most relevant documents.

Plaintiffs improperly made substantial revisions to this letter hours before filing, adding fanciful "statistics" and citations to documents to support brand new arguments. Defendants are prejudiced and cannot respond to these late-hour additions on no notice, and therefore move to

---

[8] To the extent Uber claims that the *Noerr-Pennington* doctrine precludes discovery of evidence related to these mere communications with governmental bodies, Uber's argument fails. The *Noerr-Pennington* doctrine is "not a bar the discovery of evidence." *Wal-Mart Stores, Inc. v. City of Turlock*, 2005 WL 8176355, at *3 (E.D. Cal. Jan. 28, 2005); *Stalling v. Union Pac. R.R. Co.*, 2003 WL 21317297, at *20 (N.D. Ill. June 6, 2003)(production of documents related to legislation and law is discoverable for the purposes of establishing that a defendant knew it had a common law duty).

[9] In meet and confers, Uber has pointed out that some of the background checks are for individuals who solely drove for Uber Eats. Plaintiffs are not seeking those documents.

[10] These requests seek production of documents related to the use of third parties (such as Checkr), including background check companies and auditing such background checks.

[11] Plaintiffs' efforts to argue that Defendants changed important documents to responsive are wrong. The documents Plaintiffs appear to reference are irrelevant Google comments on documents Defendants have already produced, as well as calendar invites and Google News alerts. Again, Plaintiffs are not prejudiced in any event as they may make a good cause showing to take a deposition if a highly relevant document is produced.

strike footnotes 2, 5, and 6. The numbers in footnote 2 are manufactured and misleading at every turn. Plaintiffs ignore coding changes *they* made during this process, *e.g.*, for OUS incidents, non-Rideshare documents, spam emails, and other plainly irrelevant documents. Plaintiffs deliberately excluded their own changes *and* the 125 disputed documents to wrongly represent a fantasy that 83% of relevant documents are missed. Plaintiffs again used Defendants' good-faith efforts to compromise to willfully present false and misleading information to the Court.

**Incidents Unrelated to Sexual Assault or Misconduct:** Defendants are already producing countless documents discussing safety, including specific incidents, as well as policies, practices, analyses, and initiatives for keeping platform users safe – both drivers and riders. But incidents *solely* about, *e.g.*, a verbal argument or physical assault occurring on a trip are not responsive to any discovery request in this litigation[12] and are not relevant.[13]

The Court has already held that Defendants need not produce incidents that are not related to sexual assault or misconduct (finding that Plaintiffs' request for all incidents, including incidents involving physical assault, was "patently overbroad," and noting that those incidents "are not related to the key issues in this case."). ECF 683 at 9. The Court denied Plaintiffs' motion to compel *all* incident reports, "given that many of these incidents are not related to sexual assault or misconduct." *Id.* at 11. Plaintiffs now ask the Court to undo that ruling by requiring Defendants to produce the very documents (and more) that the Court already excluded.

The scope of Plaintiffs' ask compels production of non-responsive and irrelevant documents, *e.g.*, where a driver and rider are arguing about the radio volume, or the cleanliness of a vehicle, or the speed of the vehicle, or the route taken, or whether the rider slammed a door, or whether the correct pick-up location was on one corner or another, etc. Likewise, documents about "shoving incidents," or other forms of indisputably non-sexual physical contact are also not responsive or relevant. Discovery cannot be expanded so far beyond the facts of these cases.

Including these irrelevant documents will not help the TAR model unearth documents that are relevant to this litigation. Rather, quite the opposite. Training the model on irrelevant documents will only create confusion in the model and require a burdensome review and production of documents that Plaintiffs never requested and that are not relevant.

**Lobbying Documents:** This Court has already held that information about Defendants' lobbying efforts is not relevant to Plaintiffs' claims. ECF 1698 at 25 ("The Court agrees with Judge Schulman's ruling, rejecting the plaintiffs' contention that information about Uber's lobbying efforts is relevant to their negligence claims."). But Plaintiffs now seek to undo the Court's ruling by demanding that Defendants mark lobbying documents as responsive.[14] Plaintiffs are seeking discussions with legislative members and designated lobbyists (*e.g.*, Tusk Strategies) regarding

---

[12] Plaintiffs' cited RFPs do not seek these documents. RFP 18 requests documents relating to the driver application, vetting, and approval process; RFP 20 requests documents "containing the criteria" to determine driver eligibility; RFP 21 requests documents relating to contemplated changes "to the criteria or eligibility requirements."

[13] Judge Breyer did not state that any document involving any type of passenger complaint about a driver is discoverable under Fed. R. Civ. P. 26(b)(1), as Plaintiffs misleadingly suggest.

[14] In the Parties' TAR sample dispute log and during conferral, Plaintiffs said these documents are responsive "due to lobbying."[14] But after Defendants reminded Plaintiffs that the Court held that lobbying information is not discoverable, Plaintiffs abruptly stopped using the word "lobbying" to describe these documents. Plaintiffs cannot obtain discovery of lobbying documents by trying to rebrand them as "communications with governmental agencies."

http://... 

positions for pending bills, e-mails to councilmembers seeking support of airport rideshare services, and discussions with a D.C. councilmember about pending legislation. But the Court previously stated that it "agrees with Judge Schulman's decision that lobbying activity is not relevant to establish whether Uber violated a duty of care or a common carrier duty to warn its passengers, and such facts appear attenuated to attacking Uber's defense to such claims." *Id.*

Under the *Noerr-Pennington* doctrine, petitioning the government (*i.e.*, lobbying) is absolutely protected by the First Amendment and cannot be the basis for liability. *E.g.*, *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535-41 (9th Cir. 2022); *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1059-62 (9th Cir. 1998). As addressed the first time the Court ruled on this issue, it is true that the *Noerr-Pennington* doctrine is not a total bar on discovery, but as both this Court and the JCCP Court recognized, the doctrine bears on relevance, rendering lobbying outside the scope of discovery in the absence of an independent basis for relevance.[15] As noted above, training the model on these irrelevant and protected documents would hurt the process, not help.

**Background Checks for Driver Applicants Not Involved in the Litigation:** Consistent with the DFS obligations, Defendants are producing the individual background check reports for the accused drivers in each of the 1,574 individual cases. Further, Defendants are already producing discussions about background checks, including about individual applicants, as well as policies, procedures, practices, criteria, and e-mail discussions used to evaluate applicants. But Plaintiffs now want *every single background check* that exists within the custodians' files for driver applicants who were not the drivers in Plaintiffs' cases. Plaintiffs did not request these documents,[16] and regardless such documents are not relevant to this litigation.

A random assortment of background checks for non-party driver applicants not involved in any plaintiff's case has zero probative value. These reports do not provide recommendations for approval or denial and do not highlight any aspect of the applicant's reportable history. They are merely reports from third-party providers pertaining to the applicant, with no indication of what Defendants did with the information. Further, Defendants would need to undergo a time-consuming and costly redaction exercise to remove the PII (including protected credit information and other protected data) from these highly sensitive documents. Another category of documents are auto-generated Checkr e-mails indicating that a background check is being re-run. To the extent the reason for re-running is delineated and pertains to alleged sexual assault or misconduct, these are being produced. But that is not what the initial auto-generated Checkr e-mails provide. They merely state that a re-review is in progress for a driver, and are both non-responsive and irrelevant.

---

[15] Plaintiffs argue for an exception that would swallow the rule, as they state that, notwithstanding the *Noerr-Pennington* doctrine, lobbying is relevant to show knowledge of a common law duty. But the 2003 N.D. Ill. decision they cite (which has never been cited for its application of the *Noerr-Pennington* doctrine) conflated the *existence* of a common law duty with *knowledge* of a common law duty. Regardless, Plaintiffs have not identified with any specificity which lobbying activities are likely to show such knowledge. Nor have they identified which claim requires them to prove the element of *knowledge* of a common law duty for that duty to apply. Indeed, *knowledge* of a duty is not relevant – ignorance of the law is generally not a defense to liability. *See, e.g., Tanaka v. United Parcel Serv., Inc.*, 2024 WL 4993585, at *18 (N.D. Cal. Sept. 17, 2024).

[16] Plaintiffs' cited RFPs do not seek these documents. RFP 19 requests documents regarding use of third-party companies to provide background checks; RFP 22 requests auditing of background checks; RFP 23 requests incidents where a driver was granted access to the platform despite not meeting then-existing criteria for becoming a driver.

## **FILER'S ATTESTATION**

I, Roopal Luhana, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: January 28, 2025                    By:    */s/ Roopal Luhana*

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on January 28, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to registered parties.

*/s/Roopal Luhana*

6