1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT
LITIGATION

This Document Relates To:

ALL CASES.

Case No.  23-md-03084-CRB   (LJC)

**ORDER REGARDING THIRD SET OF
CHALLENGES TO UBER'S
PRIVILEGE CLAIMS**

Re: Dkt. Nos. 2088, 2089, 2090, 2091

## I.      INTRODUCTION

In accordance with the process previously set by the Court, the parties have filed two joint letters addressing samples of disputed privilege log entries.  Dkt. Nos. 2089, 2091.  The Court resolves the parties' disputes as follows.  This Order also resolves related motions to consider filing documents under seal.  Dkt. Nos. 2088, 2090.

As a housekeeping matter, the Court notes that the parties' filings at issue use a font smaller than size 12 in some footnotes—primarily in Plaintiffs' sections of joint filings—in violation of a previous Order.  *See* Dkt. No. 1996.  Those violations are excused in this instance, but future filings that fail to comply with that Order may be stricken.

## II.     LEGAL STANDARD

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.  California law therefore applies to issues of privilege in this multi-district litigation, at least absent any showing that the law of some other state should apply.  *See Holley v. Gilead Scis., Inc.*, No. 18-cv-06972 JST (JSC), 2021 WL 2371890, at *2 (N.D. Cal. June 10, 2021) (applying California choice-of-law rules to conclude that California privilege law applied in a case with "factual connections to multiple states," where no

1    party introduced evidence of a conflict of laws or another state's governmental interest in applying

2    its own law).

3           Under California law, the attorney-client privilege is governed by statute and applies to

4    confidential communications between client and lawyer during the course of the attorney-client

5    relationship.  *See* Cal. Evid. Code §§ 911, 954, 952.  "The party claiming the privilege has the

6    burden of establishing the preliminary facts necessary to support its exercise."  *Costco Wholesale*

7    *Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009).  "Once that party establishes facts necessary to

8    support a prima facie claim of privilege," then the privilege is presumed to apply, and "the

9    opponent of the claim of privilege has the burden of proof to establish the communication was not

10   confidential or that the privilege does not for other reasons apply."  *Id.*

11          "[T]o determine whether a communication is privileged, the focus of the inquiry is the

12   dominant purpose of the relationship between the parties to the communication."  *Clark v.*

13   *Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011).  Where the "dominant purpose of the relationship

14   between the parties to the communication was one of attorney-client, the communication is

15   protected by the privilege."  *Id.*  "[T]he relevant inquiry is not the content of the communication

16   but is instead the relationship of the communicators."  *Id.* at 52.  If "the communications were

17   made during the course of an attorney-client relationship"—as opposed to a relationship with

18   some other "dominant purpose"—then "the communications, including any reports of factual

19   material, would be privileged, even though the factual material might be discoverable by some

20   other means."  *Costco*, 47 Cal. 4th at 740.  Even when an attorney-client relationship is

21   established, however, "the inquiry turns on . . . the link between the content of the communication

22   and the types of communication that the attorney-client privilege was designed to keep

23   confidential.  In order for a communication to be privileged, it must be made for the purpose of the

24   legal consultation, rather than some unrelated or ancillary purpose."  *L.A. Cty. Bd. of Supervisors*

25   *v. Superior Ct.*, 2 Cal. 5th 282, 297 (2016) (adopting the reasoning of a concurring opinion in

26   *Costco*).

27          California courts have recognized that "that in order to implement the advice of lawyers,

28   the advice must be communicated to others within the corporation," and "[i]t is neither practical

United States District Court
Northern District of California

2

1   nor efficient to require that every corporate employee charged with implementing legal advice

2   given by counsel for the corporation must directly meet with counsel or see verbatim excerpts of

3   the legal advice given" as a condition of maintaining privilege.  *Zurich Am. Ins. Co. v. Superior*

4   *Ct.*, 155 Cal. App. 4th 1485, 1498 (2007).  A communication between non-lawyer employees that

5   conveys privileged attorney advice remains privileged so long as sharing that information with the

6   recipient "further[s] the interest of the client in the consultation or . . . is reasonably necessary for

7   the transmission of the information or the accomplishment of the purpose for which the lawyer is

8   consulted."  *Id.* at 1503 (quoting Cal. Evid. Code § 952).

9
10
11
12
13
14
15
> There are additional relevant limitations on the attorney-client
> privilege. It is established that otherwise routine, non-privileged
> communications between corporate officers or employees transacting
> the general business of the company do not attain privileged status
> solely because in-house or outside counsel is "copied in" on
> correspondence or memoranda. In addition, [a party] may not shield
> facts, as opposed to communications, from discovery. Any relevant
> fact may not be withheld merely because it was incorporated into a
> communication involving an attorney. In addition, [i]t is settled that
> the attorney-client privilege is inapplicable where the attorney merely
> acts as a negotiator for the client, gives business advice or otherwise
> acts as a business agent.

16   *Zurich Am. Ins.*, 155 Cal. App. 4th at 1504 (cleaned up); *see also, e.g.*, *Chi. Title Ins. Co. v.*

17   *Superior Ct.*, 174 Cal. App. 3d 1142, 1151 (1985).

18           Applying federal law, courts have held that "[n]o privilege can attach to any

19   communication as to which a business purpose would have served as a sufficient cause, i.e., any

20   communication that would have been made because of a business purpose, even if there had been

21   no perceived additional interest in securing legal advice."  *Wisk Aero LLC v. Archer Aviation Inc.*,

22   No. 21-cv-02450-WHO (DMR), 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023) (quoting

23   *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990), and citing *Fisher v. United*

24   *States*, 425 U.S. 391, 403 (1976)) (alteration in original).  Under that standard, communications

25   involving in-house counsel "warrant[] heightened scrutiny because in-house counsel may act as

26   integral players in a company's business decisions or activities, as well as its legal matters."  *Id.*

27   (N.D. Cal. Mar. 29, 2023) (cleaned up).  Although federal law does not govern the scope of

28   privilege in this litigation, the Court funds that principle consistent with California law

*United States District Court*
*Northern District of California*

3

recognizing that privilege does not attach to communications where an attorney provides business advice rather than legal advice, or where an attorney is merely "copied in" on internal business communications. *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

## III.    APPLICATION TO PARTICULAR DOCUMENTS

### A.    Tranche 2 Random Selections

The Court previously ordered the parties to randomly select a sample of disputed privilege claims from Tranche 2 of custodial discovery, and to file a joint letter addressing any documents for which they were not able to resolve their disputes through efforts to meet and confer.  The parties have identified six such documents, which Uber has submitted for in camera review.  The Court addresses those documents as follows.

#### 1.    JCCP_MDL_PRIVLOG026377

This document is an email chain that was produced with redactions during the meet-and-confer process.  It is not clear which portions of the document were or were not redacted,[1] but "Plaintiffs dispute the redactions only as to [Senior Manager Buddy] Loomis's December 7, 2017 email at 12:48 MST," the earliest email in the chain.  Dkt. No. 2089 at 4.  That email states rules for when certain consequences should be imposed on driver's accounts with Uber.

According to Uber, the email is privileged because it "conveys legal advice that Associate General Counsel Scott Binnings and other Uber in-house attorneys had previously provided to Ms. Loomis and her team concerning deactivation of independent driver accounts in circumstances involving reported fatalities or sexual misconduct allegations."  Dkt. No. 2089 at 10.  Binnings includes the same assertion in his declaration, and states that Loomis's email "begins the process of implementing this legal advice within Uber's support organization."  Dkt. No. 2089-9, ¶ 11.

Uber asserts in a footnote that it was prejudiced by the manner in which this dispute was raised.  According to Uber, Plaintiffs failed to include this document in an initial sample of log entries to be included in this joint letter, but "included it in [their] portion of the letter brief on the evening of January 9, without notice."  Dkt. No. 2089 at 10 n.16.  The Court is concerned about

---

[1] Going forward, the parties are encouraged to indicate any redactions to documents at issue in privilege disputes.

United States District Court
Northern District of California

1    whether Plaintiffs fully complied with the process previously ordered.  That said, the parties had

2    already begun to meet and confer about this document (as indicated by the fact that Uber first

3    produced a redacted version on January 7th as part of the meet-and-confer process, *see id.* at 4),

4    Uber had the better part of a week to address the document between Plaintiffs including it in a

5    draft joint letter on January 9th and the filing of that joint letter on January 15th, both parties

6    include substantive arguments regarding the document, and the principle at issue is relatively

7    straightforward.  The Court therefore proceeds to consider whether the document is privileged.

8        Contrary to Uber's assertions, the email does not on its face convey advice for the

9    recipients to consider in carrying out their duties.  It states a policy that they must follow, without

10   mentioning any involvement by Uber's attorneys in crafting that policy.  That this policy was

11   apparently informed by legal advice does not make the policy itself privileged.  If it did, virtually

12   all aspects of the functioning of any major corporation would be protected from disclosure.  The

13   Court has previously made clear that business records and communications are not privileged

14   merely because they were informed by legal advice.  *See, e.g.*, Dkt. No. 1908 at 7 ("[T]he mere

15   fact that an internal communication *benefited* from legal advice does not render it privileged.").

16   The disputed portion of this document (the December 7, 2017 email) is therefore not privileged,

17   and must be produced.

18       To account for Plaintiffs' apparently belated selection of this document, however, if Uber

19   believes additional evidence would establish that this document is privileged, Uber may file letter

20   brief seeking reconsideration no later than four days from the date of this Order.  That letter shall

21   not exceed two pages, but may attach declarations as needed.  Plaintiffs may respond with a two-

22   page letter brief three days later.  If Uber seeks reconsideration, Uber need not produce this

23   document until that issue is resolved.

24                **2.    JCCP_MDL_PRIVLOG028703**

25       This document is a 2017 email notification generated by Jira, a project management

26   platform used by Uber, and sent to Matthew Baker, a non-lawyer.  Uber's privilege log asserts

27   both attorney-client privilege and work product protection, and described this document as a

28   "[c]onfidential e-mail prepared in anticipation of litigation *by in-house counsel* regarding reports

                                         5

of driver sexual assault or sexual misconduct." Dkt. No. 2116-1 (emphasis added).

That description is false. The email conveys a Jira comment by Laura Alioto, a non-lawyer. The only "privileged names" identified on Uber's privilege log are Alioto and Mike Haas (who is tagged in Alioto's comment), neither of whom are attorneys. *See id.* There is also no indication in the record that Alioto's comment was directed to any attorney.

Uber asserts in the joint letter, and its in-house counsel Maureen Frangopoulos states in a declaration, that Alioto—who was then Uber's Head of Global Special Investigation Unit & Large Loss & Legacy Insurance Claims—"worked at the direction and supervision of in-house counsel and would have made this comment in that capacity." Dkt. No. 2089-8, ¶ 6; *see* Dkt. No. 2089 at 7–8. According to Frangopoulos, Alioto's "comment provides specific advice at the direction of counsel about steps that have been taken and that need to be taken in light of the risk of litigation related to the reported incident." Dkt. No. 2089-8, ¶ 6.

It is not clear from Frangopoulos's declaration whether she was personally involved in the matters at issue, which attorney(s) purportedly directed Alioto to make this comment or to conduct an investigation, or how Frangopoulos determined that the comment was made at the direction of an attorney. *See generally id.* In the joint letter, Uber asserts that Frangopoulos's declaration regarding this document is "based on her personal knowledge about how the JIRA system works." Dkt. No. 2089 at 8. It is not clear how Frangopoulos's knowledge of how a project management software platform functions would give her a sufficient basis to assert that Alioto's comment was privileged or protected as work product. Frangopoulos also states in her declaration that she is "familiar with the document" at issue, Dkt. No. 2089-8, ¶ 6, but it is not clear that she means anything more by that statement than that she reviewed the document before preparing her declaration.

Uber is correct that work by non-lawyers conducting investigations at the direction of counsel in anticipation of litigation can fall within work product protection. *See, e.g.*, *United States v. Shaw*, No. 22-cr-00105-BLF-1 (SVK), 2023 WL 4539849, at *2 (N.D. Cal. July 12, 2023). Lending some support to that basis for protection, Alioto (or perhaps the Jira system) labeled her message "AC Privileged & Confidential | Monitoring and investigating at legal

United States District Court
Northern District of California

1    directive in anticipation of potential litigation."

2         On its face, however, the comment states an operational directive for other Uber

3    employees to take action regarding a particular driver's account—not legal advice, or a

4    recommendation, or the findings of an investigation.  Even if that directive originated from an in-

5    house attorney, it likely would not be privileged.  The Court is highly skeptical that Uber could

6    cloak the conduct of its business under the attorney-client privilege simply by placing attorneys in

7    the chain of operational command.  *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504 ("[T]he

8    attorney-client privilege is inapplicable where the attorney . . . acts as a business agent.").  In any

9    event, Uber has failed to provide a sufficient evidentiary foundation to support Alioto's

10   characterization of her comment as part of an attorney-directed investigation through a declaration

11   by someone familiar with the circumstances of that comment, as opposed to Frangopoulos's mere

12   understanding of "how the JIRA system works."  *See* Dkt. No. 2089 at 8.

13        The Court recognizes that Uber may not be able to obtain declarations from former

14   employees directly involved in communications that occurred seven years ago.  In some

15   circumstances, a privilege claim might be supported by a current employee's involvement in the

16   events surrounding the communication, or their review of other contemporaneous documents that

17   provide sufficient context to support the claim (i.e., documents that demonstrate sufficient

18   involvement by attorneys).  Here, though, Frangopoulos's declaration does not offer any

19   meaningful foundation for her assertions about the nature of the document at issue.

20        The Court also does not expect Uber to provide declarations about every document at issue

21   at the time it serves a privilege log.  But once Plaintiffs have challenged a claim, the parties have

22   reached an impasse, and the dispute is submitted to the Court, Uber must provide evidentiary

23   support for at least "the preliminary facts necessary to support . . . a prima facia claim of

24   privilege."  *Costco*, 47 Cal. 4th at 733.[2]  It has not met that burden for this document, with respect

25   to either attorney-client privilege or the work product doctrine.  Uber must therefore produce this

26

27   _____

28   [2] If the document itself evinces privilege or work product protection, submission of the document for in camera review may be sufficient to meet Uber's burden.  Boilerplate labels of privilege, however, are not sufficient without extrinsic support.

United States District Court
Northern District of California

1    document.

2        Uber asserts that Plaintiffs should be required to re-review their privilege challenges

3    because they lack a sufficiently particularized basis to challenge this document.  Dkt. No. 2089 at

4    8.  But Uber does not acknowledge that its description of this document in its privilege log—the

5    primary information available to Plaintiffs in determining whether challenge a privilege

6    assertion—is flatly inaccurate, in that it falsely asserts that the document was an email prepared by

7    counsel.  Moreover, as discussed above, Uber did not sufficiently substantiate its privilege claim

8    after Plaintiffs challenged the document.  The Court declines to fault Plaintiffs for this challenge.

9                    **3.    JCCP_MDL_PRIVLOG030622**

10       This document is a chain of several emails, all but the earliest of which include in-house

11   counsel.  The third earliest email, sent at 1:38 PM by Tyler Spitz to in-house counsel Brandon

12   Myers and Jennifer Handley, specifically seeks legal advice, and subsequent emails convey and

13   discuss such advice.  Those emails are privileged, and may be redacted.

14       The earliest email was sent by Zach Singleton to a team of non-lawyers, and is addressed

15   "Hi Ops Leads."  It discusses a proposed operational change.  It is not specifically labeled as

16   privileged.  Uber asserts that it is nevertheless privileged because it "discusses previous legal

17   advice by Uber's in-house attorneys on a data privacy issue and a proposal to implement that legal

18   advice."  Dkt No. 2089 at 8; *see also* Dkt. No. 2089-7 (Handley Decl.) ¶ 5.

19       Based on the Court's in camera review, Singleton's email includes two references to legal

20   advice: (1) the sentence beginning "This is a" in the first paragraph; and (2) the sentence

21   beginning "I also" in the second-to-last paragraph.  Those sentences may be redacted.  The email

22   as a whole, however, is sent from a product manager to a group of "Ops Leads," discussing an

23   upcoming operational change, and requesting the ops leads' feedback.  That the operational

24   change may have been informed by legal advice does not render it privileged.  Other than the two

25   sentences addressed above, Uber has not shown that this original is anything other than a business

26   communication among non-lawyer employees, with the dominant purpose of both their

27   relationship and this particular email being Uber's business operations rather than seeking or

28   conveying legal advice.  The original email must therefore be produced with only those two

United States District Court
Northern District of California

United States District Court
Northern District of California

1    sentences redacted.

2          The email immediately following that is from Nick Murphy, apparently forwarding

3    Singleton's email to Spitz without significant commentary.  Uber has not asserted that Murphy is

4    an attorney, nor offered other evidence to show specifically that Murphy's email is privileged.

5    That email therefore also must be produced without redaction.  As discussed above, all subsequent

6    emails included in this document may be redacted.

7          Uber objects to Plaintiffs' challenge to this document, arguing that Plaintiffs lacked a

8    sufficiently particularized basis for the challenge.  The mere fact that the top-level email, as

9    logged, included attorneys only in the "cc" field is not a strong reason to believe that it is not

10   privileged—as indicated by the Court's ruling that the top-level email (like several other emails in

11   the chain) is privileged.  But when Plaintiffs' challenges continue to identify documents that Uber

12   has improperly over-designated as privileged, the Court declines to turn a blind eye to material

13   that should have been produced, regardless of any flaw in Plaintiffs reasons for choosing a

14   particular document.

15              **4.      JCCP_MDL_PRIVLOG031766**

16         This documents is an email from Kate Parker to Jenna Wuu and Tracey Breeden—all non-

17   lawyers—forwarding an email sent by Deanna Slocum, an in-house attorney, with a proposed

18   agenda for a meeting.  Uber's privilege log described this as a "[c]onfidential e-mail thread

19   provided for purposes of seeking legal advice from in-house counsel regarding initiatives or

20   campaigns to promote rider safety."  Dkt. No. 2116.  Uber contends that this document is

21   privileged because Slocum's email, to a group of recipients that included a large number of other

22   attorneys, "consisted of an agenda for an upcoming legal team meeting at which this group would

23   discuss employment policies and company initiatives," or in other words, "legal advice concerning

24   employment policies and topics."  Dkt. No. 2089-9 (Binnings Decl.) ¶ 10; *see* Dk. No. 2089 at 9.

25   Parker, who was then Uber's Head of Safety and Insurance Brand, was to participate in that

26   meeting as a guest speaker.  Dkt. No. 2089-9, ¶ 10.  Although not dispositive, the Court notes that

27   neither email was labeled by its author as privileged.

28         The Court assumes for the sake of argument that Slocum's email was privileged when she

United States District Court
Northern District of California

1    sent it, and that any actual proceedings at the meeting it discusses would also be privileged.  This

2    document, however, is (in Uber's words) "a forward of the prior email by Ms. Parker to two

3    additional non-attorney employees."  Dkt. No. 2089 at 9.  As both of this Court's previous orders

4    regarding privilege log disputes have stated, a "communication between non-lawyer employees

5    that conveys privileged attorney advice remains privileged *so long as* sharing that information

6    with the recipient 'further[s] the interest of the client in the consultation or . . . is reasonably

7    necessary for the transmission of the information or the accomplishment of the purpose for which

8    the lawyer is consulted.'"  Dkt. No. 1908 at 2–3 (quoting *Zurich Am. Ins.*, 155 Cal. App. 4th at

9    1503) (emphasis added); Dkt. No. 2005 at 2–3 (same).

10       Uber has not addressed why Parker forwarded this email to other non-lawyer employees,

11   and has made no showing that doing so furthered any interest in seeking or conveying legal

12   advice.  The Court is generally willing to infer that dissemination of legal *advice* within the

13   company furthers the purpose for which such advice was rendered, absent some indication to the

14   contrary.  Here, though, Slocum's original agenda email does not on its face convey any advice

15   that might inform how other Uber employees should do their jobs, and Uber has not offered any

16   evidence to show that Parker forwarding the email otherwise furthered an attorney-client

17   relationship.  Uber therefore has not met its burden to show that the document actually submitted

18   for review—Parker's email to Wuu and Breeden—is privileged.  On its face, and absent

19   explanation of how it furthers any interest in an attorney-client relationship, that email appears to

20   waive any privilege that might have attached to the forwarded material.[3]  This document must

21   therefore be produced in its entirety.

22                 **5.    JCCP_MDL_PRIVLOG031851**

23       This document is a notification email generated by Google Docs regarding comments on a

24   draft press release.[4]  This document was not included in the excerpt of Uber's privilege log

25   _____

26   [3] To be clear, this email does not appear to waive any privilege that might attach to the actual
     proceedings of the contemplated meeting, and Plaintiffs do not argue that it does.  *See* Dkt. No.
27   2089 at 5 (acknowledging Uber's position that the meeting included legal advice, and arguing that
     "whether legal advice was provided at the meeting is immaterial" to whether this document is
28   privileged).
     [4] The Court has previously addressed several other notification emails from Google Docs and

1    submitted to the Court, so it is not clear how Uber characterized it in its log.  *See* Dkt. No. 2116-1.

2    The document includes comments by Kathleen Waitzman and Scott Binnings, both of whom were

3    in-house attorneys.  Dkt. No. 2089-9 (Binnings Decl.) ¶ 9.  In the first comment, Binnings

4    "tagged" two other attorneys to seek their advice.  *See id.*  In the second comment, Waitzman

5    raised concerns regarding pending litigation.  In the third, Binnings "tagged" two non-lawyer

6    employees to make them aware of Waitzman's legal advice and concerns.  *Id.*  In the fourth and

7    final comment included in this email, "Waitzman provided legal advice on a different portion of

8    the draft."  *Id.*  The document on its fact comports with Binnings's description of it in his

9    declaration.  *See id.*

10           Plaintiffs contend that the document does not appear to be privileged because it was sent

11   to Breeden, a non-lawyer, regarding a press release.  Dkt. No. 2089 at 5–6.  For the reasons

12   explained in Binnings's declaration, however, this email conveys legal advice, and is privileged.

13   Uber need not produce this document.

### 6.    JCCP_MDL_PRIVLOG032247

15           This document is an email from non-attorney Danielle Sheridan providing feedback on a

16   proposed policy change in response to a request for such feedback by non-attorney Susan

17   Muehrcke.  Uber asserts that it has redacted a portion of the email conveying legal advice.  Dkt.

18   No. 2089 at 10.  The version of the document provided for in camera review does not indicate the

19   redaction, but based on Uber's description, the Court understands that the beginning of

20   Muehrcke's email up to (but not including) listed item number 2 has been redacted.  As Uber has

21   explained, that portion of the email describes Muehrcke's discussions with in-house counsel and

22   conveys their advice.  *Id.*; Dkt. No. 2089-8 (Frangopoulos Decl.) ¶ 2.  Plaintiffs do not address that

23   explanation.  *See* Dkt. No. 2089 at 6.

24           Muehrcke specifically asked Sheridan to consider the legal advice conveyed in

25   determining whether to implement the policy change, indicating that dissemination of that advice

26   to Sheridan was necessary to further the purpose for which the attorneys were consulted.  *See*

28   _____

similar platforms.

*Zurich Am. Ins.*, 155 Cal. App. 4th at 1503.  The redacted portion of the document is therefore privileged and may remain redacted.

### B.    Tranche 3 Documents

The parties submit disputes regarding thirteen documents from the third tranche of custodial discovery, consisting of nine documents selected by Plaintiffs and four documents randomly selected for review.  *See* Dkt. No. 2089 at 3.  Uber has submitted those documents for in camera review.  The Court addresses them as follows.

### 1.    JCCP_MDL_PRIVLOG040099

This document is an email chain that began with a 2019 request by in-house counsel Jennifer Handley for information about safety features in Uber's app, directed to two non-lawyer employees.  Handley explained both in that email and in her present declaration that she sought that information so that she could provide advice in anticipation of litigation.  Dkt. No. 2091-7, ¶ 2.  She also directed the non-lawyer employees to label any documents in connection with their response as privileged and work product.  The remainder of the email chain consists of discussion of Handley's request.

Plaintiffs challenge this assertion of privilege because Handley is only cc'd on the top-level email, she "does not appear to respond to any emails,"[5] and "based on Uber's [privilege] log, this appears to be a business data collection requestion with a dominant business purpose."  Dkt. No. 2091 at 4.  Plaintiffs do not address Handley's declaration.

Uber's privilege log described the document as a "[c]onfidential e-mail thread seeking and providing legal advice from in-house counsel regarding drafting and implementation of Uber's Taxonomy."  Dkt. No. 2116-2 at 2.  The characterization of the document as "seeking and providing legal advice" does not appear to be accurate.  It is not entirely clear whether the document relates to "drafting and implementation of Uber's Taxonomy," which Handley does not mention in her declaration.  *Cf.* Dkt. No. 2091-7, ¶ 2.  The Court remains concerned about the accuracy of Uber's privilege log descriptions.

---

[5] It is not clear how Plaintiffs reached this conclusion, which is inaccurate.

United States District Court
Northern District of California

That said, Uber has offered evidence that this document reflects an attorney's request for information to facilitate the provision of legal advice, and further discussion in response to that request. Plaintiffs have not rebutted that characterization, which is consistent with the Court's in camera review of the document. This document need not be produced.

### 2.    JCCP_MDL_PRIVLOG040249

This document is an email chain that begins with a request for information by Mike Haas, who served at the time as Senior Legal Project Manager on the Safety Legal Special Investigations team, to non-lawyer employees on the Safety and Insurance team. Haas's email includes a boilerplate notation reading "A/C Privileged & Confidential | Prepared at Direction of Counsel in Anticipation of Litigation" and "Confidential Attorney Work Product." Haas also noted specific anticipated litigation, and stated that "Insurance Litigation" was seeking the information at issue. Jennifer Handley, who served as in-house counsel at the time, states that Haas was acting at the direction of counsel to seek information to facilitate legal advice. Dkt. No. 2091-7, ¶ 3. That characterization is consistent with the face of Haas's email. The remainder of the document consists of further emails either responding to Haas's questions or adding other employees with relevant to knowledge to answer them.

Plaintiffs correctly note that Uber's privilege log description—"Confidential e-mail thread seeking and providing legal advice from in-house counsel regarding Uber's policies and practices for responding to allegations of driver sexual assault or sexual misconduct," Dkt. No. 2116-2 at 2—is not an accurate description of this document. Dkt. No. 2091 at 5. But Plaintiffs do not address Uber's arguments in the joint letter or the explanation in Handley's declaration, and do not dispute that the document would be privileged if Haas is acting at the direction of counsel to gather information for counsel in anticipation of litigation.

This document is privileged, and need not be produced.

### 3.    JCCP_MDL_PRIVLOG040518 (and Attachment -40519)

The primary document at issue here is an email chain that begins with a 7:47 PM email from in-house counsel Scott Binnings to a non-lawyer employee, Brittany Anthony, regarding sending a draft of Uber's U.S. Safety Report to outside counsel for review. *See* Dkt. No. 2091-9

13

United States District Court
Northern District of California

1    (Binning Decl.) ¶ 2.  Binnings then added another non-lawyer, Brooke Anderson, to the

2    conversation.  *See id.*  Anderson responded to Binnings within a short time and provided a copy of

3    the draft.  Soon afterwards, Anderson forwarded the email chain to three other non-lawyer

4    employees.[6]  According to Binnings, all of those employees were involved with the draft report,

5    and Binnings infers that Anderson forwarded these emails to them to make them aware of the plan

6    to seek additional legal advice and the possibility of further edits in response to that advice.  *Id.*

7    That inference is reasonable in context, and the Court is satisfied that these communications

8    sufficiently furthered the purposes of the attorney-client relationship (e.g., by ensuring that any

9    advice could be implemented properly before the document was released) to remain within the

10   scope of attorney-client privilege.

11           The document identified with a Bates number ending in -519 is the draft of Uber's Safety

12   Report that was attached to this email chain and shared with outside counsel for the purpose of

13   seeking legal advice.  The Court is satisfied that this draft, in this particular context where it

14   evinces the subject of a request for legal advice, is privileged.  That is not to say that other drafts

15   of this report, or even instances of the same draft, would necessarily be privileged.  Such

16   documents are not presently before the Court.

17           Uber's privilege log description characterizes the email chain as a "[c]onfidential e-mail

18   seeking and providing legal advice from in-house counsel regarding media inquiry concerning

19   Uber's Safety Report," and the attachment as a "[d]raft Confidential document seeking and

20   providing legal advice from in-house counsel regarding preparation and drafting of Uber's Safety

21   Report."  Dkt. No. 2116-2 at 3.[7]  It is not clear that those descriptions are entirely accurate—

22   particularly with respect to the purported media inquiry, which is not mentioned in Binnings's

23   declaration.  Based on those descriptions, Plaintiffs' concern that the "email appears to be nothing

---

25   [6] The final email included in this document bears a timestamp of "4:05:19 AM (UTC)," which
26   corresponds to 8:05 PM PST, suggesting that it was sent just a few minutes after the next most
     recent email in the chain.
27   [7] Uber revised its privilege log for this document during the meet-and-confer process, omitting the
     reference to a media inquiry and instead describing the email as "seeking and providing legal
     advice from in-house counsel regarding drafting and implementation of Uber's Safety Report."
28   *See* Dkt. No. 2091-6 at 2.

1    more than forwarding a draft copy of Uber's Safety Report to non-attorneys for edits or advice on

2    how to respond to media inquiries" is not entirely unreasonable.  *See* Dkt. No. 2091 at 6.

3        That said, Plaintiffs do not address Uber's explanation of its privilege claim in the joint

4    letter and in Binnings's declaration.  However reasonable Plaintiffs' concerns may have been in

5    response to the privilege log alone, they do not rebut Uber's present showing of privilege.  These

6    documents need not be produced.

7                        **4.    JCCP_MDL_PRIVLOG043475**

8        This document is an email from data scientist Sunny Jeong to several other non-lawyer

9    employees, with in-house counsel Scott Binnings cc'd.  Jeong labeled the email, which states that

10   Binnings had requested certain information, as privileged and as prepared at Binnings's direction.

11   Binnings states in his declaration that he "asked Mr. Jeon to send this communication to relevant

12   individuals who worked at Uber in the areas of analytics, data science, and software engineering,

13   . . . to request information that [Binnings] needed to provide legal advice to the company

14   concerning rider safety issues with legal liability risks that were resulting in lawsuits against the

15   company."  Dkt. No. 2091-1, ¶ 3.  Binnings also asked Jeong to set up a meeting to "discuss such

16   information and related legal issues and legal strategies with the group," and Binnings attended

17   that meeting "to continue providing legal advice."  *Id.*

18       Uber's privilege log description for this document—"Confidential e-mail thread providing

19   legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety,"

20   Dkt. No. 2116-2 at 2—is not accurate, because no advice is conveyed in this email.  Jeong's email

21   nevertheless reflects an investigation at the direction of counsel in order to gather information that

22   Binnings considered necessary to provide legal advice.  *See* Dkt. No. 2091-1, ¶ 3.  "[T]he

23   attorney-client privilege applies to investigations performed by non-attorneys working at the

24   direction of counsel."  <u>*Shaw*</u>, 2023 WL 4539849, at *2.  This email is distinguishable from a

25   previous document where Uber asserted somewhat similar arguments for privilege, but where

26   Binnings did not assert either that he specifically directed any of the employees involved, or that

27   the purpose of their data collection work was specifically to obtain legal advice.  *See* Dkt. No.

28   2005 (discussing JCCP_MDL_PRIVLOG034111).

United States District Court
Northern District of California

1    Plaintiffs challenged the privilege assertion primarily because the only attorney included in

2    the email (Binnings) was listed on the "cc" line and "does not appear to have responded to any

3    emails," without addressing Binnings's declaration or Uber's arguments in the joint letter.  Dkt.

4    No. 2091 at 3–4.  This document is privileged for the reasons stated by Binnings, and need not be

5    produced.  The Court remains concerned about the accuracy of Uber's privilege log descriptions.

6    ### 5.    JCCP_MDL_PRIVLOG044017

7    The parties' remaining dispute regarding this document concerns a single-sentence

8    redaction[8] to an email from non-lawyer Ben Busian, which appears in four-page email chain (not

9    counting two pages of signatures).  The Court's understanding is that Uber initially either withheld

10   this document in full or redacted other passages as well, but produced a version with only that

11   sentence redacted during the meet-and-confer process.  *See* Dkt. No. 2091 at 6, 15.

12   Uber contends that, in context, the redacted sentence is a request for legal advice from the

13   one attorney who was included as a recipient on the email.  Dkt. No. 2091 at 15.  Plaintiffs argue

14   that based on the subject line and the fact that the attorney is one of twelve people copied on the

15   email, "it appears [the author] is giving a business opinion."  Dkt. No. 2091 at 6.

16   It is perhaps not as clear as Uber suggests that this sentence seeks advice from Megan

17   Poonolly, the only lawyer included on the email thread.  At the very least, though, the redacted

18   sentence specifically discusses intent to seek legal advice.  Courts have held that such

19   communications among corporate employees fall within the scope of the privilege.  *OwLink Tech.,*

20   *Inc v. Cypress Tech. Co., Ltd*, No. 8:21-cv-00717-SPG (KESx), 2023 WL 4681543, at *2 (C.D.

21   Cal. June 29, 2023); *see also Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866

22   (N.D. Cal. 2019) (applying federal privilege law).  The Court is satisfied that the redacted sentence

23   is privileged and need not be produced.

24   ### 6.    JCCP_MDL_PRIVLOG044768

25   This document is a Jira notification email containing a single comment by Mike Haas, a

26   non-lawyer employee who worked on an Uber legal team as discussed above.  Haas's comment

27

28   ───────────────

[8] The Court appreciates Uber's inclusion of both the redacted and unredacted versions of this document in its submission for in camera review.

16

1    discusses outreach to counsel about potential litigation, and is therefore privileged.  Because all

2    substantive content in this document is privileged, Uber properly withheld at least that substantive

3    content.

4         Plaintiffs argue that this email should have been produced with redactions if it included

5    privileged content.  Dkt. No. 2091 at 7.  The Court understands that the parties will meet and

6    confer regarding treatment of similarly privileged Jira notifications, including whether it is

7    appropriate to produce such emails with redactions when all substantive content is privileged.

8                        **7.    JCCP_MDL_PRIVLOG050377**

9         This document is a Jira notification remail containing a single comment by Stephanie

10   Vitale, an attorney.  Vitale's comment appears on its face to provide legal advice, and is therefore

11   privileged.  Plaintiffs argue that this email should have been produced with redactions if it

12   included privileged content, Dkt. No. 2091 at 7, but because the only substantive content of the

13   email is privileged, it was reasonable and appropriate for Uber to withhold at least the substantive

14   content of this document.

15                        **8.    JCCP_MDL_PRIVLOG052655**

16        This document is a Jira notification email containing a single comment by Maureen

17   Frangopoulos, an attorney, providing legal advice.  As with the similar documents discussed

18   above, all substantive content in this email is privileged.

19                        **9.    JCCP_MDL_PRIVLOG053996**

20        This document is a draft procedures manual for driver background checks.  It includes a

21   header stating that it is privileged and confidential, and that it was "prepared at the direction of

22   counsel (E. Madavo)."  (Capitalization altered.)  According to Uber, "this draft contains numerous

23   comments directed to or by Ms. Madavo in which legal advice is requested and provided," Dkt.

24   No. 2091 at 11, although those comments are not apparent in the version of the document

25   submitted for in camera review.  In-house counsel Scott Binnings (who is mentioned in the

26   document as the "owner" of a small portion of it) describes this document as follows:

27            It is a confidential and privileged draft document dated July 2018
              regarding driver background checks policies and procedures. As part
28            of my responsibility at the time as Legal Director, Safety Legal, I

United States District Court
Northern District of California

advised the business on complying with legal and regulatory requirements related to safety issues such as background checks for independent drivers on the Uber platform. This draft manual was created at the direction of then-Regulatory Counsel Emily Madavo, which is noted at the top of the draft document. Ms. Madavo and other Uber in-house attorneys, including Jason Burch, Legal Director, U.S. Regulatory, directed the creation of this draft manual to provide legal guidance to Uber employees on complying with background check requirements of various jurisdictions. The draft manual explains, among other things, the substantive legal requirements related to background checks, the role of Uber's legal department in approving changes to background check criteria in response to changes in the law in different jurisdictions, and the concrete steps for adhering to those legal requirements. Additionally, this draft contains numerous comments directed to or by Ms. Madavo in which legal advice is requested or provided.

Dkt. No. 2091-9, ¶ 4.

This document presents a somewhat close call. On its face, it describes operational policies, not advice. The finished version of the policy would likely not be privileged for reasons similar to the first document discussed in this Order, JCCP_MDL_PRIVLOG026377. As Plaintiffs note, privilege log information indicates the document included several non-attorney collaborators (including its creator), and the Court has previously held that a number of collaboratively edited documents involving both attorneys and non-attorneys were not privileged. Dkt. No. 2091 at 4 & n.14.

This draft, however, was prepared at the direction of attorney Madavo, apparently for the specific purpose of obtaining feedback (in other words, advice) and approval from Madavo and other attorneys. *See* Dkt. No. 2091-9, ¶ 4. Uber's explanation of its attorneys' involvement in creating this document is supported by its subject matter, a topic with significant legal implications for which Uber would be expected to seek legal advice. The evidence Uber has offered that this document was prepared at the direction of counsel distinguishes it from other collaboratively edited documents that the Court has previously found not privileged. *Cf., e.g.,* Dkt. No. 1908 at 4 (noting that Binnings's "declaration [did] not support the assertion . . . that [another collaboratively edited document] was 'prepared at the direction of in-house counsel'"); *id.* at 6 (noting the lack of such evidence with respect to a different document).

The Court therefore concludes that this document is privileged and need not be produced.

18

United States District Court
Northern District of California

## 10.    JCCP_MDL_PRIVLOG056137

This document is an email chain among several Uber employees discussing a proposed driver authentication program.  The top-level email adds attorney Keith Yandell to the chain and requests his advice.  The fact that Yandell is on the "cc" line of the email is of no consequence.  That email is privileged.

As stated in Scott Binnings's declaration, another email in the chain (before Yandell was added) also "discuss[es] seeking legal advice from then-General Counsel Salle Yoo."  Dkt. No. 2091-9, ¶ 6.  Plaintiffs assert without citation to authority that "an employee merely discussing if they should seek legal advice is not" privileged.  Dkt. No. 2091 at 4–5.  Federal privilege law, at least, is to the contrary: "The attorney-client privilege 'may attach to communications between nonlegal employees where[] . . . an employee discusses her intent to seek legal advice about a particular issue.'"  *Dolby Labs. Licensing*, 402 F. Supp. 3d at 866 (N.D. Cal. 2019) (quoting *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011)).  At least one case has held the same under California law, and this Court is aware of no California authority to the contrary.  *See OwLink Tech.*, 2023 WL 4681543, at *2.  The sentence discussing seeking legal advice is therefore privileged, and may be redacted.  Because the focus of the discussion is on the non-lawyers' own assessment of the program under consideration rather than their intent to obtain advice from counsel, however, the reference to seeking legal advice is reasonably segregable from the rest of the email in which it appears.

Uber contends that the entire email chain is privileged, because the earliest email discusses potential legal risks and the subsequent emails evince intent to seek legal advice.  Dkt. No. 2091 at 11–12; *see also* Dkt. No. 2091-9 (Binnings Decl.) ¶ 6.  Uber cites no authority indicating that non-lawyers' discussion of legal risks is privileged, or that a subsequent discussion of seeking legal advice can retroactively render an earlier discussion among non-lawyers privileged.  The Court therefore concludes that all emails in this chain except for the last one (where attorney Keith Yandell was added) are not privileged, except for the sentence discussed above that addresses seeking legal advice.

United States District Court
Northern District of California

### 11.    JCCP_MDL_PRIVLOG056148

This document is an email chain that begins with an email by Joe Sullivan specifically seeking legal advice from in-house counsel Keith Yandell (as well as feedback from non-lawyer employees) regarding a proposed course of action.  Yandell forwarded the email to in-house counsel Seth Schreiberg, who provided advice, which Yandell then sent to the group of employees included on the email.  The group continued to discuss the issue, apparently seeking Schreiberg's and/or Yandell's opinions on their views, and Schreiberg continued to provide advice in two subsequent emails.  The Court is satisfied that this exchange consists primarily of requests for and provision of legal advice, and that it is privileged.

### 12.    JCCP_MDL_PRIVLOG057545

Uber describes this document on its privilege log as a "[c]onfidential e-mail thread seeking legal advice from in-house counsel regarding data or metrics collected and reviewed for Uber's Safety Report."  Dkt. No. 2116-2 at 2.  The privilege log accurately reflects that no attorneys are included as recipients or as the sender of the top-level email, but lists in-house counsel Curtis Scott in the "privileged names" field.  *Id.*

Uber argues in the joint letter that this document is privileged in its entirety because the earliest email in the thread "about a planned data sharing transparency report" (which does not include any attorneys) conveys legal advice previously given to the author, the next email "discuss[es] seeking further advice on these issues," the email after that added attorney Scott and "expressly sought his legal advice concerning regulatory requests," and subsequent emails that do not include Scott "include[] discussions about continuing to seek legal advice from Mr. Scott on this issue."  Dkt. No. 2091 at 10.[9]

The email chain begins with a message from non-lawyer Sarah van Vliet to non-lawyers Dorothy Chou and Betsy Masiello regarding data collection.  That message conveys legal advice from attorney Bob O'Leary.  Although O'Leary is not listed on the privilege log, the portions of

---

[9] Uber supports these arguments with Scott Binnings's declaration, but Binnings does not appear to have had any personal involvement in this 2016 email exchange, and describes only what is apparent from the face of the document.  Dkt. No. 2091-9, ¶ 8.

the email that convey his advice are privileged. That said, because this is an email entirely among non-lawyers, discussing preparation of a planned transparency report that Uber has not suggested is itself privileged, redactions are sufficient to protect O'Leary's advice. In the Court's view, the following redactions are appropriate to van Vliet's initial email:

> (1) A passage beginning with "Since October" in the first paragraph and running through "from them," two paragraphs below.

> (2) The sentence under the heading "Current Status" beginning with "Bob suggested."

> (3) The sentence towards the end of the email beginning with "As discussed."

Although portions of this email that will not be redacted discuss the general contours of a data collection maintained by Uber's legal department, Uber has not explained how that description would fall within attorney-client privilege, and has not asserted that any portion of this email is protected under the work product doctrine.

The next email in the chain, from Robin Horton, does not seek, provide, or discuss legal advice, and is not privileged.

The next email is from Betsy Masiello, forwarding the discussion to attorney Curtis Scott and requesting his help assembling the data needed for the report. This email does not on its face seek legal advice, but instead appears to discuss the purely logistical question of locating data for a public report. Uber has offered no evidentiary support to suggest that Masiello intended to seek legal advice from Scott, or that Scott understood the request as such. Scott's role in this exchange, as someone who might have access to business records relevant to an intended report, is not meaningfully distinguishable from a non-attorney employee. *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504 ("[T]he attorney-client privilege is inapplicable where the attorney . . . acts as a business agent."). The request in this email therefore appears to be only "ancillary" to the attorney-client relationship. *L.A. Cty. Bd. of Supervisors*, 2 Cal. 5th at 297 ("In order for a communication to be privileged, it must be made for the purpose of the legal consultation, rather than some unrelated or ancillary purpose."). That email must be produced, as well as the subsequent emails among the non-lawyer employees, none of which discuss legal advice.

United States District Court
Northern District of California

**IV.    REQUEST FOR SANCTIONS, AND PROCESS GOING FORWARD**

Plaintiffs ask the Court to deem all of Uber's privilege claims waived, and to order Uber to reimburse Plaintiffs' attorneys' "fees and costs pursuant to Rule 37(b)(2)(A) for the considerable time that Plaintiffs' counsel has spent to date reviewing Uber's inadequate logs." Dkt. No 2089 at 2–3. Uber asserts that Plaintiffs first raised this request on the eve of filing the joint letter. Dkt. No. 2089 at 7. As discussed at the hearing on January 28, 2025, the Court agrees that Plaintiffs' eleventh-hour addition to the letter is not an appropriate means to seek sanctions, particularly sanctions as significant as those sought here. The Court therefore DENIED Plaintiffs' request for sanctions without prejudice.

That said, the Court is concerned that for each sample of documents addressed by the parties thus far, Uber has conceded that a large portion of the documents at issue were not privileged at all or should be produced with redactions, at least based on this Court's interpretation of the scope of the privilege. The Court recognizes that some of those concessions reflect lessons learned from the Court's prior orders, which were not always available prior to the start of each meet-and-confer process. Uber's concessions therefore do not necessarily reflect blameworthiness in its initially broader privilege designations. Regardless of the extent to which Uber is or is not at fault, however, its consistently broad concessions raise a potential inference that a large amount of responsive and non-privileged material remains withheld that should be produced. The Court therefore directed the parties to meet and confer regarding next steps in this process to ensure that responsive material is not wrongfully withheld from production, and to file a status report no later than January 31, 2025 and either a stipulation or a joint letter as soon as possible thereafter.

The Court expects that after further re-review by Uber, the parties and (if necessary) the Court will review at least one further verification sample from the previous tranches of production to ensure that Uber's remaining privilege claims are well founded.

**V.    SEALING MOTIONS**

Plaintiffs filed administrative motions to consider whether certain documents related to these joint letters should be filed under seal. Dkt. Nos. 2088, 2090. Uber filed a response seeking sealing of portions of those documents, and attaching redacted version. Dkt. No. 2116. The

present discovery dispute is only tangentially related to the merits of this litigation, and Uber has shown good cause to seal the narrowly tailored redactions addressed in its response. Sealing is GRANTED as to those portions of the documents, and no further public filings are necessary to complete the record. This resolves the administrative motions filed as docket entries 2088 and 2090.

The Court does not reach the question of whether compelling reasons would support sealing the same material if it were filed in a context more closely related to the merits of this litigation.

**IT IS SO ORDERED.**

Dated: January 29, 2025

_____
LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

23