*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB **JOINT STATUS REPORT REGARDING MARKETING DOCUMENTS** |
| This Document Relates to:<br><br>ALL ACTIONS | Judge:  Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

Pursuant to the Court's January 15, 2025 Order (ECF 2095) and further guidance provided at the January 23, 2025 Discovery Conference, Plaintiffs, and Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively, "Defendants"), (jointly, "the parties"), respectfully submit this Joint Status Report.

## Marketing Background

The Court requested that in this submission the parties include direction to where Judge Breyer had "fleshed out… the theory of [what] that [marketing] claim is and require the Plaintiffs to go back and amend, because it seems like the purpose of the marketing material is to flesh out those claims in advance of the deadline to amend the complaint."

**Plaintiffs' Position**:

Uber's marketing is relevant to several claims and issues in this MDL. Most obviously, marketing is relevant to Plaintiffs' fraud claims. Judge Breyer determined that, to plead a fraud claim, a plaintiff must articulate "what representations a particular person saw and relied on." PTO 17 at 36; *see also id.* (applying the same standard to omissions claims arising from "half-truths"). Plaintiffs who allege reliance on fraudulent advertising should be able to identify which advertisements they saw and relied on. The parties will dispute whether that suffices for the pleadings. *See, e.g.*, *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009 at 1026, (D. Ariz. 2017) ("[W]here a fraud claim is based upon numerous misrepresentations, such as an advertising campaign that is alleged to be misleading, plaintiffs need not allege the specific advertisements the individual plaintiffs relied upon; it is sufficient for the plaintiff to provide a representative selection of the advertisements or other statements to indicate the language upon which the implied misrepresentations are based.") (citation omitted). But given the blizzard of advertising Uber directed at passengers through multiple mediums, *see* MC ¶¶ 187-238, Plaintiffs are unlikely to be able to reproduce the specific advertisements they saw. Those advertisements are information solely within Uber's possession.

Uber's marketing is also relevant to Plaintiffs' non-fraud claims. Marketing Uber's product as safe goes to, for example, whether Uber assumed a duty to protect passengers and whether Uber and its passengers had a special relationship. It also is relevant to Plaintiffs' product liability claims, because how a product is advertised goes to whether a use was foreseeable, and whether a warning would have mitigated or prevented Plaintiffs' injuries. Finally, it goes to punitive damages, because Uber's intentional marketing of its product as safe regardless of the circumstances goes to whether the company acted with malice, oppression, or fraud.

**Defendants' Position**: In PTO 17, the Court dismissed the fraud-based claims and explained, "[w]hile the [Master Complaint] contains numerous specific examples of [Defendants'] advertising that it says are fraudulent, Plaintiffs do not dispute that they have not pled any plaintiff-specific allegations about whether a given plaintiff saw certain alleged misrepresentations, how they relied on them, and so forth." PTO 17, ECF No. 1044 at 36. According to the Court, "it is not possible to assess any of the fraud claims without knowing what representations a particular person saw and relied on." *Id.* The Court further recognized that certain "case-specific facts are within Plaintiffs' knowledge," such as "what safety-related marketing plaintiffs saw." *Id.* at 10 n.2. Thus, while Defendants have committed to producing a sample communications log for conferral purposes regarding its distribution of marketing, the vast majority of Plaintiffs' marketing requests go beyond any safety-related marketing any individual plaintiff may have seen, which, as the Court recognized, would be within the individual plaintiff's knowledge.

Defendants acknowledge Plaintiffs' position that safety-related marketing is relevant to non-fraud claims. That said, Plaintiffs have not limited their requests in the same way. While Defendants have committed to providing discovery on marketing as outlined here and in prior submissions, Defendants maintain its position that discovery on general marketing campaigns and communications strain the bounds of relevance under Judge Breyer's Order.

In the context of the above the Parties respectfully submit:

On December 24, 2024 the Court Ordered the Parties to meet and confer to "address possible supplementation of Uber's discovery responses or other discovery requests that would provide [contextual information regarding the Exact Target templates]" and to "discuss the extent to which Uber's forthcoming supplemental production will cover other marketing-related information that Plaintiffs seek, including records that address the volume of messaging, its reinforcement across advertising mediums, analysis of marketing campaigns, and Uber's budgeting and finances on marketing." Dkt. No. 2015. The Parties have met and conferred on numerous occasions and submitted a status report on January 14, 2025, Dkt. No. 2086.  The court then ordered the parties to file a joint letter or status report by January 29, 2025.  On January 21, Defendants produced additional marketing related documents collected from Google drive.  Plaintiffs are in the process of reviewing these documents.

 During the parties most recent meet-and-confer on January 28, 2025, the Parties continued discussion of the topics outlined in the December 24, 2024 Order.  The following issues remain:

1) **Reporting from Bloc & Flow.** Bloc & Flow is Defendants' internally developed and managed e-mail and push communications system which distributes marketing messages to the public.  Defendants continue to investigate whether the system has ever or can track whether messages were opened or bounced (rejected by the recipient's email account provider), and whether reports including this information, as well as broader distribution and content related details can be run and provided to Plaintiffs.  Defendants have committed to providing Plaintiffs with an answer to these questions as well as a date by which reports may be produced by February 5, 2025.

2) **Communication Logs.**  The Parties continue to discuss the production of communication logs that document marketing sent directly to particular individuals, including those

people who may be selected as bellwether Plaintiffs.  On January 17, the parties agreed that Plaintiffs would select a sample Plaintiff for conferral purposes, and that evening Plaintiffs provided Defendants the name that evening. Plaintiffs have requested that the log provided by Defendants for this sample Plaintiff, and eventually those of bellwether plaintiffs, contain details not only about the existence and text of the communication but the content of the communications as it appeared to the recipient. Defendants have explained that the communications do not exist in the format Plaintiffs have requested, but Defendants continue to investigate how to best provide a comprehensive record of each marketing communication that has been sent to any recipient, to the extent available, and have committed to providing Plaintiffs a response by February 5.  Plaintiffs assert that the timely provision of these materials, in particular, is vital to individual plaintiffs' ability to amend their complaints by the March 14 deadline set by Judge Breyer.

3) **Declaration Regarding Marketing Materials.**  During the conferral process, Defendants identified over 60,000 marketing related documents they have produced.[1] The Parties discussed select documents in their most recent conferral on January 28, 2025. Plaintiffs continue review of these documents. To assist in their review of those documents, Plaintiffs have requested a declaration from Defendants similar to that discussed by this Court in the policy context.  Plaintiffs propose a declaration that mirrors the declaration the Court ordered Defendants to provide related to policies and related operational guidelines (Dkt. No. 1996), i.e. a declaration would include a description of,

---

[1] Plaintiffs assert that tens of thousands of the documents identified this month by Uber are from deprecated e-mail systems Mail Chimp and Exact Target and were produced in a manner that omits information critical to Plaintiffs' ability to review and understand these materials. *See* Dkt. No. 2013. Defendants point out that fewer than 20,000 email templates were produced from the above systems, and over 40,000 marketing related emails and Google Drive documents were produced to Plaintiffs.

5

at least, "over the life of the company where and how its [marketing materials and practices] have been stored" and what is specifically stored within each current and historical repository. Defendants are optimistic that they can provide the necessary information in a more efficient manner, however, the parties are continue to confer regarding Plaintiffs' request and Defendants will provide a response by February 7, 2025.

In consideration of continuing conferrals, the Parties suggest that, in the event disputes or uncertainty remain regarding Uber's Marketing materials, those disputes will be raised through a PTO 8 dispute letter by February 7, 2025.

By: */s/Roopal Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN &
BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

By: */s/ Michael B. Shortnacy*
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
2049 Century Park East, Suite 3000
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT *(Pro Hac Vice* admitted)
oot@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
1800 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

RANDALL S. LUSKEY (SBN: 240915)
rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS *(Pro Hac Vice* admitted)
ratkins@paulweiss.com

JOINT STATUS REPORT REGARDING MARKETING DOCUMENTS – Case No. 3:23-MD-3084-CRB

CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: January 29, 2025

By: */s/ Michael B. Shortnacy*
MICHAEL B. SHORTNACY

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Michael B. Shortnacy*
MICHAEL B. SHORTNACY

JOINT STATUS REPORT REGARDING MARKETING DOCUMENTS – Case No. 3:23-MD-3084-CRB