UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084 CRB<br><br>**JOINT LETTER REGARDING DEFENDANTS' PRODUCTION OF HYPERLINKED DOCUMENTS** |
| This Document Relates to:<br><br>ALL ACTIONS | Judge:        Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

Dear Judge Cisneros:

Pursuant to the Court's January 22, 2025 Order (ECF No. 2131), the Parties respectfully submit this joint letter regarding Defendants' production of hyperlinked documents.

Dated: January 31, 2025                    Respectfully Submitted,

/s/                                                          /s/

By: */s/Roopal Luhana*                              MICHAEL B. SHORTNACY (SBN: 277035)
ROOPAL P. LUHANA *(Pro Hac Vice)*          mshortnacy@shb.com
**CHAFFIN LUHANA LLP**                          **SHOOK, HARDY & BACON L.L.P.**
600 Third Avenue, Fl. 12                           2121 Avenue of the Stars, Ste. 1400
New York, NY 10016                                 Los Angeles, CA 90067
Telephone: (888) 480-1123                       Telephone: (424) 285-8330
Email: luhana@chaffinluhana.com              Facsimile: (424) 204-9093
*Co-Lead Counsel for Plaintiffs*

                                                              PATRICK OOT (Admitted *Pro Hac Vice*)
SARAH R. LONDON (SBN 267083)              oot@shb.com
**LIEFF CABRASER HEIMANN &**                 **SHOOK, HARDY & BACON L.L.P.**
**BERNSTEIN**                                           1800 K St. NW Ste. 1000
275 Battery Street, Fl. 29                          Washington, DC 20006
San Francisco, CA 94111                           Telephone: (202) 783-8400
Telephone: (415) 956-1000                       Facsimile: (202) 783-4211
Email: slondon@lchb.com

                                                              VERONICA G. GROMADA (Admitted *Pro*
RACHEL B. ABRAMS (SBN 209316)              *Hac Vice*)
**PEIFFER WOLF CARR KANE CONWAY**      vgromada@shb.com
**& WISE, LLP**                                         **SHOOK, HARDY & BACON L.L.P.**
555 Montgomery Street, Suite 820            600 Travis St., Suite 3400
San Francisco, CA 94111                           Houston, TX 77002
Telephone: (415) 426-5641                       Telephone: (713) 227-8008
Email: rabrams@peifferwolf.com                Facsimile: (713) 227-9508
                                                              vgromada@shb.com

**I. Plaintiffs' Position:** The ESI Order defines "attachments" to include hyperlinks and requires Uber to produce documents that contain hyperlinks in a way that preserves the relationship between the document containing the hyperlink (the "parent" document) and the document attached by hyperlink (the "child" document). (ECF 524, App'x 1 ¶¶1e, 4). Maintaining this relationship is critical to Plaintiffs' ability to understand Uber's internal emails and documents as they were intended to be understood by their readers. To maintain the relationship between hyperlinks and the documents they are contained in, Uber is required, to provide certain metadata that gives essential information to determine to which document a hyperlink is linked and to identify the linked document within the production. Despite Uber's claims otherwise, the parties have been conferring on these issues since October. Uber's claim that this letter is the first time Plaintiffs raised these issues to Uber is false. Plaintiffs provided Uber with a sample of 16 exemplar documents with these issues on January 2, and the parties discussed on January 24 (see Ex. G[1]). Hyperlink issues were previously raised with Uber in October and included in prior Joint Status Reports. While Uber committed in October to audit its production to ensure these issues had been resolved, the issues remain. Uber has not complied with the ESI Order in four material ways:

1. **Hyperlinks to Non-Google Drive Documents:** Uber refuses to produce metadata regarding linked documents unless the links are *to* a document housed in Google Drive. In violation of the ESI Order, Uber refuses to produce metadata for any links to a non-Google Drive stored document. The ESI Order requires that Uber preserve and produce metadata for all links, regardless of whether those links are from Google Drive documents: "Defendants shall use methods of collection and processing that preserve the integrity of document metadata, and of parent-child and family group relationships such as the association between attachments and parent documents, or between embedded documents and their parents, or between documents, ***including, but not limited to***, *emails (e.g., Outlook, Gmail) or messaging or communication posts… with document stubs or links or pointers to internal or non-public (e.g., Google Workspace, Zendesk) documents and those stubbed or internal or non-public documents so linked."*). (ECF 524, App'x 1, ¶ 4) (emphasis added). At a minimum, the ESI Order requires Uber to produce metadata showing the URLs for non-Google Drive documents attached by hyperlink. *Id.* at ¶17 ("Uber shall preserve and produce (*including, if necessary, as custom fields*) all metadata collected with respect to all cloud-stored documents. That includes, *but is not limited to*, all metadata output by Google Vault when exporting a matter.") (emphasis added); Ex. H, ¶¶ 13, 26-28.[2] Although there are defined metadata fields specific to Drive documents, the inclusion of those in the Order does not abrogate Uber's obligations to produce hyperlink-related metadata for non-Google Drive documents.

2. **Hyperlinks within Non-Google Email Documents:** Uber refuses to produce linked documents or metadata unless the link is contained within a Gmail document.[3] The ESI Order does

---

[1] Ex. G is offered in response to Uber's untruthful statements in its Jan. 30 draft (which Uber provided at 11:37 pm PT) claiming that Plaintiffs had not previously raised the issues herein.
[2] On Jan. 30 at 11:37 pm PT, Uber provided two expert declarations regarding issues that the parties had not previously discussed, necessitating this response from Plaintiffs' expert.
[3] See, for example, Ex. B, an Excel spreadsheet checklist of rules related to handling safety incidents. The spreadsheet contains links to reference documents titled "Incident Investigation and Reporting," "Investigation Guidelines," and "Incident Classification Guidelines" (among other links). Metadata that is available because this document is a spreadsheet (as opposed to Uber providing hyperlink metadata required by the ESI Order) indicates that the links go to Google

not contain such an extreme restriction. Rather, the definition of "attachments" in the ESI Protocol is broad; it explicitly covers "internal or non-public documents linked, hyperlinked, stubbed or otherwise *pointed to within or as part of other ESI* (including **but not limited to** email, messages, comments or posts, or other documents)." (ECF 524, ¶2h) (emphasis added). This definition encompasses hyperlinks without limitation based on whether the link is contained in a Gmail. (ECF 524 ¶¶2h, 17; App'x 1¶4); Ex. H at ¶¶ 13, 26-28. Uber must produce hyperlinks within non-Gmail documents per the terms of the ESI Order: If the link is to a Google Drive document, then that linked document must be produced, along with the requisite metadata (LinkGoogleDriveDocumentIds and either LinkBegBates or MissingGoogleDriveAttachments). If the link is to a non-Google Drive document, then Uber must produce the URL in a custom field.

3. **Links to Google Documents within Google Emails:** Even where Uber agrees that it is required to produce hyperlinked documents and corresponding metadata (Gmail documents linking to Google Drive documents), it has not done so consistently. Per the ESI Order, if a Gmail contains links to Google Drive documents, Uber is required to provide the following metadata fields: LinkGoogleDriveDocumentIds (to identify the Document ID of the linked document) and either LinkBegBates (the Bates number of the linked document), or MissingGoogleDrive-Attachments (if the linked Google document is not produced). However, in nearly 7400 emails that contain a Google Drive link (and LinkGoogleDriveDocumentIds metadata), Uber has omitted the metadata necessary to locate the hyperlinked document—the LinkBegBates field, and likewise has not provided MissingGoogleDriveAttachment metadata. Therefore, for these 7400 emails, Plaintiffs cannot identify the linked document within Uber's production (if it has been produced).[4] Additionally, Plaintiffs have identified numerous emails that contain links to Google Drive documents, yet Uber has not provided *any* metadata to identify those links.[5] Uber blames the missing metadata on delays between production of the parent and child document. However, the bulk of the documents were produced months ago and deadlines for production have long passed. Gaps in production dates of the parent and child do not explain these deficiencies.

4. **Email Threading Issues**: There are two disputes related to email threading. First, Uber argues it is required to produce only hyperlinked documents and metadata for the top-most recent in time email and not where the link is included in earlier-in-time (lower in thread) emails.[6] This is contrary to the ESI Order and requires Plaintiffs to do unnecessary leg-work to hunt for the

---

documents. However, because this document is a Microsoft Excel spreadsheet (and not a Gmail), Uber refuses to produce the linked Google documents and metadata.

[4] Including all document types, this number grows to more than 8400. The problem is bigger than just these 7400 or 8400 documents. This count does not include documents that have hyperlinks that Uber did not identify in the LinkGoogleDriveDocumentsIds field. Further, it does not consider that numerous of these documents contain multiple links to Google documents.

[5] Exhibit C provides an example of both issues. Although the email contains 7 links to Google documents, the LinkGoogleDriveDocumentsIds field identifies only 6 links. Further, the LinkBegBates field provides metadata for only one of these links. Therefore, Plaintiffs cannot identify six of the linked documents within the production.

[6] See, for example, Exhibit D. Uber did not provide any hyperlink-related metadata for this document. Although Uber provided the LinkGoogleDriveDocumentIds for the earliest in thread email, it did not provide the LinkBegBates metadata for that email. Therefore, even after hunting for and finding the first in thread email to contain the link, Plaintiffs still cannot identify the linked document within the production.

earlier in time email and determine whether Uber produced the hyperlinked document properly. Ex. H at ¶¶17-25. Moreover, the issue is compounded -- although Uber agrees it is required to produce *all* emails within a thread (ECF 524 at 16, ¶ 13), Uber has repeatedly *not* produced the earliest in time emails (or the hyperlinked documents and hyperlink metadata), even though they are clearly relevant and discoverable. (See, e.g., Ex.'s E, F).

The documents cited herein are just a few examples that illustrate the pervasive problem. It should not be Plaintiffs' burden to identify piecemeal Uber's non-compliance with Court Orders (the same could be said of the privilege disputes, the policy disputes, the safety data disputes, the deposition scheduling disputes, and others).[7] Therefore, Plaintiffs respectfully request that the Court Order Uber to: (1) Produce the link URL in a custom metadata field for hyperlinks to documents not stored on Google Drive; (2) Produce all Google Drive documents in Uber's possession that are attached by hyperlink, regardless of whether the hyperlinked document is linked in a Gmail or another document; (3) Produce all metadata required by the ESI Order (including, as appropriate, LinkGoogleDriveDocumentIds, LinkSourceBegBates, LinkBegBates, or custom fields) for all documents containing hyperlinks; (4) Produce all emails within an email thread, not just the most inclusive or most recent and produce hyperlinked documents and corresponding metadata regardless of where a hyperlink occurs within an email thread; and (5) By February 14, 2025, certify that it has complied with each of the above.

**II. Defendants' Position:** The ESI Order, which was litigated nearly a year ago, does not require what Plaintiffs now demand. But Plaintiffs now, through a 2.5-page letter brief (including speculative expert opinions improperly served after 9:00 pm PST on the night of filing (Ex. H)),[8] and without a showing of good cause, seek to upend the ESI Order to require Defendants to collect hyperlinks within non-email documents and other hyperlinks that require manual collection. This is an entirely new request,[9] and compliance would be a practical impossibility, imposing a burdensome manual collection process like that the Court previously declined to require last time this issue was litigated. ECF 511. ***This time, Plaintiffs do not even dispute (and there is no contrary evidence) that what they seek now is technologically impossible.*** Plaintiffs also now

---

[7] Discovery "is not a matter of gamesmanship nor conducted like a game of chess." *Gilead Scis., Inc. v. Safe Chain Sols*. LLC, 345 F.R.D. 22, 27 (E.D.N.Y. 2024). Uber "may not delegate to plaintiff[s] the duty to identify its relevant requested discovery." *Younes v. 7-Eleven, Inc*., 312 F.R.D. 692, 709 (D.N.J. 2015). The ordinary course of discovery "is premised on each party fulfilling its discovery obligations without direction from … opposing counsel," *VeroBlueFarms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021), because the "rules of discovery must necessarily be largely self-enforcing." *Lineberry v. Addshoppers, Inc*., 2024 WL 4707986, at *7 (N.D. Cal. Nov. 6, 2024).

[8] Plaintiffs violated the Court's Order by adding Ex. G, and H today. ECF 2167 (ordering the Parties to "***abid[e] by the agreed upon schedule***"); ECF 2164, 2 (Plaintiffs agreed to provide "***any exhibits***" by 1/28). Defendants had no opportunity to respond to the improper expert opinion which must be stricken. Defendants' Ex. 4 is an effort to respond to Plaintiffs' untimely Ex. G provided this afternoon, without Defendants having sufficient time or the ability to respond when Plaintiffs provided subsequent revisions to Ex. G after 8:30 pm PT.

[9] Plaintiffs did not raise ***these*** hyperlink issues in October or at any time before last week, and Defendants' agreement to review its production had ***nothing*** to do with these four newly raised issues. Even in the January 24 conferral, Plaintiffs did not raise two of these four issues.

demand that Uber redo collection and processing for all emails to produce them in a way that is inconsistent with how Plaintiffs have known for over a year that Defendants would be producing them. These belated new requests would require the document production process to start over again from scratch and force Defendants to undertake an incomprehensibly burdensome manual process that no party has ever been required to do at scale. Plaintiffs' requests must be rejected.

**1. <u>Hyperlinks to Non-Drive Documents</u>:** In the year since the ESI Order was entered, Plaintiffs have never requested production of non-Drive documents linked in Gmails, including during last week's Court-ordered conferral, and that PTO 8 violation alone requires denying the request. Moreover, the ESI Order does not require this production. Rather, all of the ESI Order's metadata fields for hyperlinks within Gmails require linking to *Drive* documents. ECF 524, App'x 2 pp. 32:5-10, 35:12-15, 41:4-12. These are the fields Plaintiffs requested. Further, the ESI Order expressly states that Defendants "shall preserve the metadata relationship between email messages with links to files *on Google Drive* to the extent feasible with existing technology." *Id.*, ¶ 17.a.

Moreover, the ESI Order plainly limits production of hyperlinked documents to what is "feasible with existing technology" and "reasonable." *See, e.g.*, *id.*, ¶¶ 17.a, 17.b. Nothing in the ESI Order expands the scope of discovery beyond the Rules (*e.g.*, beyond what is proportional). *Id.*, ¶ 1. Plaintiffs know that there is no technology to automate the process for collecting documents stored on different platforms, and have not suggested otherwise. Rather, someone would need to manually re-review all 517,000 custodial Gmails produced to date to identify a list of all non-Drive hyperlinks, determine whether each hyperlink is internal or public, and follow each such internal hyperlink manually to collect each document from various sources. *See* Ex. 1, ¶¶ 14-21; Ex. 2, ¶¶ 18-22. The Court has previously declined to require Defendants to produce hyperlinked documents when there is no technology solution and a manual process would be the only way to collect them. ECF 511. The Court should not reverse course here.

This sort of tremendous cost and time burden and is precisely why the law on the issue of hyperlinks has developed away from requiring their production <u>at all</u>, with other MDL courts ruling that parties need not collect and produce *any* hyperlinked documents as attachments. *See In re Stubhub Refund Litig.*, 2024 WL 2305604, *1-3 (N.D. Cal. May 20, 2024) (parties need not produce hyperlinks at all; "linked-to documents are *not* attachments") (emphasis in original); *In re Insulin Pricing Litig.*, 2024 WL 2808083, *7-8 (D.N.J. May 28, 2024) (same; "hyperlinks are not the same as traditional attachments"). Here, Defendants have already produced hyperlinked Drive documents for the over 517,000 custodial Gmails produced to date (at enormous cost and time spent). No other Court decision has required production of this volume of hyperlinked documents, and there is no basis to require, on top of that, an obligation to undergo an even more burdensome and technologically impossible process of trying to manually identify and collect documents from individual hyperlinks as a matter of course.

**2. <u>Hyperlinks within Documents, Not within Emails</u>:** The ESI Order does not require Defendants to collect and produce documents referenced by hyperlink in *all* documents, but rather requires the production only of documents referenced by hyperlink in *communications*. ECF 524, ¶ 17, App'x 1 ¶¶ 1(e), 4, pp. 32:5-10, 35:12-15, 41:4-12; *see also* ECF 345 at 1.[10] Plaintiffs never

---

[10] A definition does not impose obligations. There is simply no requirement in the ESI Order to produce hyperlinked documents that are in documents. Rather, every actual and express requirement is that Defendants produce documents that are hyperlinked within communications. That is how the Parties have conducted discovery and productions for the last year. Every

even asked for such a thing. The plain record of the disputes leading to the ESI Order demonstrates that the Parties, their experts, and the Court were always talking exclusively about hyperlinks that exist within emails/messages/communications (and not hyperlinks that exist in documents). *See* Ex. 3. And that is reflected in the ESI Order itself. Plaintiffs' belated (and outlandish) request for Defendants to restart the collection, processing, review, and production process – and to do something that is technologically impossible (and is never done in litigation) – must be denied.

Indeed, there is no feasible way for Defendants to collect and produce documents referenced by hyperlink in non-Gmail documents as a matter of course. *See* Ex. 1, ¶¶ 22-27; Ex. 2, ¶¶ 18-22. As Plaintiffs well know, Google Vault can export Drive documents referenced by hyperlink in Gmails, but cannot then export Drive documents (or any other documents for that matter) referenced by hyperlink in Drive documents. *See* Ex. 2, ¶ 24; Ex. 3, ¶ 18. There is no technology that can automate the process of collecting documents referenced by hyperlink in non-Gmail documents. *See* Ex. 1, ¶ 22; Ex. 2, ¶¶ 9, 17, 19. Rather, someone would need to *manually* re-review all 93,000 custodial non-Gmail documents produced to date to identify a list of all hyperlinks, make a judgment call about whether the link is to an internal or public document, try to follow each individual internal hyperlink to whichever source it leads, try to manually collect the document from that source, and then try to manufacture a linkage back to the document containing the hyperlink for each and every hyperlink.[11] *See* Ex. 1, ¶¶ 23, 25-26; Ex. 2, ¶¶ 18-22. This is not required and cannot be done. No party has been required to do that in any comparable litigation, and Plaintiffs' belated request that Defendants do so now, nearly a year after litigating the ESI Order and after the substantial completion of production, is audacious, impossible, and should not be countenanced.

**3. Gmail Metadata:** In what is becoming habitual, Plaintiffs again violated PTO 8, because they first raised this purported issue here, with no conferral. It is well past time the Court put a stop to this sandbagging. Regardless, because the association of a hyperlink to a produced Gmail cannot be made until the Gmail is produced, until production completes there will be some asynchronous linkage metadata. For example, if a Drive document is responsive on its own in Production A, there must necessarily be a look backward *after* a Gmail with a hyperlink to that Drive document is produced in Production B. In other words, the LinkBegBates field (for Gmail) will often be populated *after* a document is produced with a LinkGoogleDriveDocumentId field (for Drive) populated as part of the normal course of the production process. Ex. 3, ¶ 26. There will continue to be this tail until the document productions (accounting for expanded time scope and agreements on responsiveness) are complete. *See* Ex. 2, ¶¶ 24-26. There is no technological workaround for this process and Plaintiffs know this.

**4. Email Threading:** Defendants, per the ESI Order, **not** using email threading – Plaintiffs are receiving every responsive, non-privileged iteration of an email thread within the custodial files. Ex. 12, ¶¶ 11-12; Ex. 23, ¶¶ 34-37. Defendants are also not withholding any email "because it is included in whole or in part in a more inclusive email." ECF 524, ¶13. Plaintiffs are conflating *responsiveness* with *email threading*. The ESI Order does not require Defendants to produce wholly non-responsive emails (which are not discoverable under Rule 26(b)(1)), and in fact

---

requirement from the ESI Order Plaintiffs cited reflects this, which is also how the Parties, their experts, and the Court have always discussed producing hyperlinked documents. Ex. 3.

[11] Defendants are already providing "custom fields" as required by and identified in the ESI Order. Ex. 2, ¶¶ 24-25. Plaintiffs' new request, added today, for creation of unspecified "custom fields" would require a restart of the discovery process and re-processing of every document.

expressly permits Defendants to withhold non-responsive documents. ECF 524, ¶8(c)2. Further, the document productions are limited to the 55 custodians, and Defendants are not required to collect and produce the Gmail of every current and former employee for emails beyond the 55 custodians. Ex. 1, ¶ 12(a);, Ex. 2, ¶¶ 34-37. Defendants are producing email threads exactly as required by the ESI Order and exactly as producing parties do in any litigation where email threading is not permitted. Ex. 1, ¶ 12; Ex. 2, ¶¶ 34-37.

Further, Defendants are producing documents referenced by hyperlink in emails **exactly the same way** that producing parties produce traditional attachments in emails. Ex. 1, ¶¶ 11-13; Ex. 2, ¶ 29. Plaintiffs have known for over a year that Defendants would be connecting hyperlinks only for the top-most-portion of a Gmail, and Plaintiffs never argued for something different until now. *See* ECF 262-9, ¶ 10. When a traditional attachment appears in the oldest email in a thread with multiple replies, that attachment will not be included with the production of subsequent emails in the thread. The same is true with documents referenced by hyperlink in an email. And that is simply how the technology works as Plaintiffs have long known. Ex. 1, ¶¶ 12-13; Ex. 2, ¶¶ 30-33.

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing. Dated: January 31, 2025

By: /s/ Roopal P. Luhana

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2025 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ Roopal P. Luhana