[Submitting Counsel below]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | MDL No. 3084 CRB<br><br>**DECLARATION OF DOUGLAS FORREST IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL CUSTODIAN DISCOVERY** |

### **DECLARATION OF DOUGLAS FORREST**

I, Douglas Forrest, state and declare as follows:

1. I am the Senior Vice President, eDiscovery Analytics & Strategy, at International Litigation Services ("ILS"), which is located in Irvine, California (www.ilsteam.com). I have been retained as a consultant for the Plaintiffs in this action for my knowledge relating to Electronically Stored Information ("ESI") as it relates to creating an ESI Order. The facts stated in this Declaration, except as otherwise explicitly noted, are within my own personal knowledge and, if called as a witness to testify, I could and would competently testify to the facts contained in this Declaration.

2. This is my fourth declaration in this matter. The first was the Declaration of Douglas Forrest (February 12, 2024), submitted as Exhibit 6 to Plaintiffs' Brief in Support of Proposed ESI Order (Case 3:23-md-03084-CRB, Document 261, Filed 02/12/24). The second was the Declaration of Douglas Forrest (April 12, 2024), submitted as Exhibit A to the Joint Discovery

Letter dated April 12, 2024. The third was the Declaration of Douglas Forrest (April 12, 2024), submitted as Exhibit A to the Joint Discovery Letter dated August 19, 2024.

## I. QUALIFICATIONS

3. I am a graduate of Stanford Law School, where I was a Note Editor of the Law Review. I was admitted to the bar in 1977 (I currently have retired status), and, after practicing law at Breed, Abbott & Morgan and Cravath, Swaine & Moore, I developed expertise in computer technology and software design, programming, and implementation, both generally and with respect to litigation support and e-discovery.

4. As an attorney at Cravath, I relied on *Aquarius*, the first large-scale implementation of computerized litigation support, which was implemented on the IBM antitrust cases.

5. As Director of Litigation Services at Legal Information Technology, Inc. ("LIT"), I was instrumental in introducing imaging, coding, and search technology for discovery to Am Law 200 law firms, and I pioneered the practice of integrating imaging with legacy search systems such as BRS.

6. As a systems architect, application designer and programmer, I created case management, litigation support and document repository systems and applications (including *WIDE*, and *LIT CaseWorks for Lotus Notes*, developed for LIT), SaaS (Software as a Service) knowledge management applications (including *LexisNexis Total Alerts* and *LexisNexis Clipper* developed for Ozmosys (https://www.ozmosys.com/)), and e-discovery and production operation systems for Doar (https://www.doar.com/). The software that I designed, programmed, and implemented to produce *LexisNexis Total Alerts*, *LexisNexis Clipper*, *LexisNexis Legal Industry Monitor*, *Thompson Elite Daily Docket, and Institutional Investors' Mutual Fund Daily*, *Hedge Fund Daily and Compliance Daily*, traversed thousands of web sites and extracted thousands of URLs from those sites daily.

7. At ILS, I direct e-discovery analytics and strategy, providing technical advice, expertise and drafting and other assistance to counsel.

8. I have advised, consulted, or acted as a declarant or affiant with respect to ESI in many cases, including:

   a. *In re: Glucagon-like Peptide-1 Receptor Agonists (GLP-1 RAS) Products Liability Litigation,* MDL No. 3094 (E.D. Pa.)*;*

   b. *In re: Oral Phenylephrine Marketing and Sales Practices Litigation,* MDL No. 3089 (E.D. NY);

   c. *In re: Insulin Pricing Litigation*, MDL No. 3080 (D. N.J.);

   d. *In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, MDL No. 3047 (N.D. Cal.);

   e. *In Re: StubHub Refund Litigation*, Case No. 4:20-md-02951-HSG (N.D. Cal.);

   f. *In Re: Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-3580-WHO (N.D. Cal.);

   g. *In Re: Philips Recalled CPAP, Bi-Level Pap, and Mechanical Ventilator Products Litigation*, MDL No. 3014 (W.D. Pa.);

   h. *Nichols v. Noom Inc.,* No. 20-CV-3677 (LGS) (KHP), 2021 WL 948646, (S.D.N.Y.);

   i. *In re: Ethiopian Airlines Flight ET 302*, Lead Case: 1:19-cv-02170 (N.D. Ill.) (Boeing 737 Max Crashes);

   j. *In Re: 3M Combat Arms Earplug Product Liability Litigation*, MDL No. 2885 (N.D. Fla.) ("3M Combat Arms MDL");

   k. *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.) ("VW Clean Diesel MDL");

   l. *In Re: Intel Corp, CPU Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2828 (D. Or.);

   m. *In Re: Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2777 (N.D. Cal.);

   n. *Lafferty v. Alex Jones* (Conn. Super. Ct.);

   o. *Soto v. Bushmaster Firearms International* (Conn. Super. Ct.) (Sandy Hook parents);

   p. *In Re: Takata Airbags Product Liability Litigation*, MDL No. 2599 (S.D. Fla.);

    q. *In Re: Testosterone Replacement Therapy Products Liability Litigation*, MDL No. 2545 (N.D. Ill.);

    r. *In Re JCCP 4771, Zoloft Birth Defect Cases*, (Cal. Super. Ct.);

    s. *Da Silva Moore v. Publicis Groupe & MSL Group,* No. *11* Civ. 1279 (ALC)(AJP) (S.D.N.Y.) (seminal TAR case).

9. I have served as a speaker or panelist on many CLE webinars including *Balancing the Needs of Requesting and Producing Parties: Getting E-Discovery Right* (RAND Institute for Civil Justice Conference, October 3-4, 2023) ("RAND Conference"), *An Analysis of Today's Mass Tort Landscape Agenda* (HarrisMartin MDL Conference, March 27, 2019), *Current Mass Torts from E-Discovery Through Exit Strategies – Navigating "Game-Changing" Dynamics* (HarrisMartin MDL Conference, November 26, 2018),*The Mass Tort Litigation Landscape – A Critical Analysis Agenda* (HarrisMartin MDL Conference, September 26, 2018), *The State of E-Discovery in 2018: Analysis & Review* (West LegalEdCenter, September 27, 2018), *Lessons Learned from Recent eDiscovery Disasters* (West LegalEdCenter, February 26, 2018), and *Top ESI Mistakes Made in Mass Tort Disputes* (West LegalEdCenter, September 14, 2017).

10. Along with Uber's expert Dr. Maura Grossman, I was an advisor on and assisted in setting up the RAND Conference.

11. I am a member of the drafting team for forthcoming commentary of the Sedona Conference Working Group 1 (https://thesedonaconference.org/wgs/wg1) on *Conducting eDiscovery of Modern Communication and Collaboration* and was on the panel presenting the *Drafting Team Report: Discovery of Modern Communications and Collaboration Platforms* at the Sedona Conference Working Group 1 Annual Meeting in October 2023.

## II.    OPINIONS

12. The ESI Order states:

"Attachment(s)" shall be interpreted broadly and includes, e.g., traditional email attachments and documents embedded in other documents (e.g., Excel files embedded in PowerPoint files) as well as modern attachments, pointers, internal or non-public documents linked, hyperlinked, stubbed or otherwise pointed to within or as part of other ESI (including but not limited to email,

messages, comments or posts, or other documents)." ECF 524, Section 2.h. (emphasis added).

13. This definition encompasses hyperlinked documents within Google Drive without any limitation based on whether the link is to a Google document type such as Google Docs or Google Sheets or a non-Google document such as a Microsoft Word or Excel document.

14. The ESI Order further requires that

> "*Defendants shall use methods of collection and processing that preserve the integrity of document metadata*, *and of parent-child and family group relationships* s*uch as the association between* attachments and parent documents, or between embedded documents and their parents, or *between documents, including, but not limited to,* emails (e.g., Outlook, Gmail) or messaging or communication posts (e.g., Slack, Teams, Google Hangouts, Google Chat), with document stubs or links or pointers to internal or non-public (e.g., Google Workspace, Zendesk) documents and those stubbed or internal or non-public documents so linked". ECF 524, Section 2.h. (emphasis added). ECF 524, Appendix 1, Section 4.

15. Beyond the broad definition of attachments and the corresponding requirement to preserve the integrity of document metadata and family group relationships, the ESI Order has additional requirements for documents referenced by hyperlinks in emails and messages.

16. ECF 524 Section 17.a. states:

> "Producing party shall make all reasonable efforts to maintain and preserve the relationship between any message or email and any cloud-hosted document hyperlinked or referenced within the message or email. Thus, for instance, where a collected email links to or references by URL a document on Google Drive (or housed within Google vault,) the metadata for that message or email shall include the URLs and Google Document ID of *all* hyperlinked documents." (Emphasis added.)

17. Uber contends that the requirement for Uber to provide metadata, including the URLs and Google Document IDs of "*all* hyperlinked documents" in emails and messages doesn't mean that Uber is in fact required to provide *all* such metadata but rather that Uber is required to provide that metadata only for the top portion of an email or message because "this is how Lighthouse's Google Parser works". Supplemental Declaration of Jamie Brown ("Brown Declaration", dated January 30, 2025, attached as Exhibit 3 to the Joint Letter Regarding Defendants' Production of Hyperlinked Documents) ("Joint Letter"), paragraph 30.[1]

---

[1] *See also* Brown Declaration, paragraph 32.

18. Notably, the Brown Declaration does not point to any language in ECF 524 which states any such thing.

19. Even assuming the accuracy of the representation that Lighthouse's Google Parser looks for links only in the top portion of an email and leaving aside the question of how easily Lighthouse, which started developing its Google Parser in 2020[2], could modify it simply to not truncate an email thread to the top portion before identifying links, I note that there is no such limitation with Google Vault, which the Brown Declaration asserts "is Uber's system-of-record" (Brown Declaration, paragraph 7), and has had the capability to collect hyperlinked Google Drive documents referenced in emails since December 8, 2023.

20. Uber also submitted a Declaration of William Anderson ("Anderson Declaration", dated January 30, 2025, attached as Exhibit 2 to the Joint Letter). The Anderson Declaration states:

> "When the earlier-in-time or "nested" emails in an email chain contains one or more hyperlinks to Google Drive documents, hyperlinked Google Drive documents from those emails are not collected and associated via metadata to that email chain, just as traditional email attachments would not be collected or associated with it." Anderson Declaration, paragraph 11.

21. This comparison is unwarranted and misleading as is the accompanying illustration (Anderson Declaration, Figure 1). The reason that traditional attachments to in-thread emails aren't included when a top level email is processed is precisely because they are *not* hyperlinked documents and they are not packaged with a top-level email (unless a top level email has the same attachments itself) whereas a hyperlinked document in an in-thread email can be collected as long as the URL for that document is included in the in-thread email.

22. The Anderson Declaration illustration has two parts, A and B. Part A has a box representing a traditional email with an attachment connected to a box representing a reply to that email which includes the original email but doesn't contain the attachment. Part B has a box representing an email with a hyperlink to a document in its body and connected to a box representing a reply to that email where the hyperlink in its body has disappeared.

---

[2] Declaration of Jamie Brown (dated April 12, 2024, submitted as Exhibit F In Support of Defendants' Proposed ESI Protocol), paragraph 20.

23. However, as Uber's own documents show, *the in-thread hyperlink does not disappear*. For example, Uber's Exhibit 1 to the Joint Letter is the extracted text of a top level email which includes an in-thread email with a hyperlink which, contrary to the assertions and Figure 1 in the Anderson Declaration is plainly visible ("3. The {https://www.youtube.com/watch?v=4olg9QAqgzA}link to Travis' speech at the IAVA Gala.").

24. I directed ILS' Digital Forensics department to test this today and they confirmed that Google Vault collects existing hyperlinked Google Drive documents referenced in Google emails regardless of whether the hyperlinks appear in the top portion of an email.

25. Simply put, Uber could have collected the metadata for and populated the LINKEDGOOGLEDRIVEDOCUMNETIDS and LINKBEGBATES for Google Drive documents linked in email, and also collected and produced those documents, regardless of whether the links to them were in the top level thread or lower in an in-thread email.

26. Uber also should have collected and produced the URLs for all those hyperlinked Google Drive documents as well as for other hyperlinked cloud-stored documents (including, for example, documents on websites) in Google emails. While there is no URL metadata field listed in Appendix 2 of ECF 524, ECF directs that custom metadata fields, such as a metadata field for the URLs of hyperlinked documents, be created as necessary: "Uber shall preserve and produce (including, if necessary, as custom fields) all metadata collected with respect to *all* cloud-stored documents." ECF 524, Section 17.a (emphasis added).

27. I note that as shown by Lighthouse's development of Google Parser and its expertise in creating custom fields for the output of the Google Parser[3], Lighthouse should be capable both of identifying those URLs[4] and providing them in a custom metadata field.

---

[3] Per the Brown Declaration, referring to the LinkBegBates and LinkGoogleDriveDocumentID metadata fields, "these are *custom* metadata fields that Lighthouse generated using scripts. Brown Declaration, paragraph 24 (emphasis in original).

[4] Link extraction from documents has been a fundamental capability of programming languages, operating systems and standalone programs for decades. As I noted earlier, the software that I designed, programmed, and implemented to produce *LexisNexis Total Alerts*, *LexisNexis Clipper, LexisNexis Legal Industry Monitor, Thompson Elite Daily Docket, and Institutional Investors' Mutual Fund Daily, Hedge Fund Daily and Compliance Daily*, traversed thousands of web sites and extracted thousands of URLs from those sites daily.

28. ECF 524 Section 17.a.'s just-quoted directive that Uber should create custom fields as necessary "with respect to *all* cloud-stored documents" is not limited to links to Google Drive documents in Google email. Rather, it is equally applicable to hyperlinks to all cloud-stored documents contained in any Google Drive documents (including both native Google documents and non-Google documents such as Word and Excel documents).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: January 31, 2025

*[signature]*

Douglas Forrest
Senior VP, eDiscovery
International Litigation
Services, Inc.
dforrest@ilsteam.com