# EXHIBIT 1

| | |
|---|---|
| 1 | ROBERT ATKINS (*Admitted Pro Hac Vice*) |
| | ratkins@paulweiss.com |
| 2 | CAITLIN E. GRUSAUSKAS (*Admitted Pro Hac Vice*) |
| | cgrusauskas@paulweiss.com |
| 3 | ANDREA M. KELLER (*Admitted Pro Hac Vice*) |
| | akeller@paulweiss.com |
| 4 | **PAUL, WEISS, RIFKIND, WHARTON** |
| | **& GARRISON LLP** |
| 5 | 1285 Avenue of the Americas |
| | New York, NY 10019 |
| 6 | Telephone: (212) 373-3000 |
| 7 | RANDALL S. LUSKEY (SBN: 240915) |
| | rluskey@paulweiss.com |
| 8 | MARC PRICE WOLF |
| | mpricewolf@paulweiss.com (SBN: 254495) |
| 9 | **PAUL, WEISS, RIFKIND, WHARTON** |
| | **& GARRISON LLP** |
| 10 | 535 Mission Street, 24th Floor |
| | San Francisco, CA 94105 |
| 11 | Telephone: (628) 432-5100 |
| 12 | *Attorneys for Defendants* |
| | UBER TECHNOLOGIES, INC., |
| 13 | RASIER, LLC, and RASIER-CA, LLC |
| 14 | *[Additional Counsel Listed on Following Page]* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DECLARATION OF WILLIAM ANDERSON IN SUPPORT OF DEFENDANTS' POSITION IN JOINT LETTER REGARDING DEFENDANTS' PRODUCTION OF HYPERLINKED DOCUMENTS** |
| This Document Relates to: | |
| ALL ACTIONS | Judge:     Hon. Lisa J. Cisneros |
| | Courtroom: G – 15th Floor |

DECLARATION OF WILLIAM ANDERSON IN SUPPORT OF DEFENDANTS' POSITION IN JOINT LETTER
REGARDING DEFENDANTS' PRODUCTION OF HYPERLINKED DOCUMENTS
Case No. 3:23-MD-3084-CRB

| | |
|---|---|
| 1 | |
| 2 | MICHAEL B. SHORTNACY (SBN: 277035) |
| | mshortnacy@shb.com |
| 3 | **SHOOK, HARDY & BACON, L.L.P.** |
| | 2121 Avenue of the Stars, Suite 1400 |
| 4 | Los Angeles, CA 90067 |
| | Telephone: (424) 285-8330 |
| 5 | Facsimile: (424) 204-9093 |
| 6 | PATRICK OOT (*Pro Hac Vice* admitted) |
| | oot@shb.com |
| 7 | **SHOOK, HARDY & BACON, L.L.P.** |
| | 1800 K Street NW, Suite 1000 |
| 8 | Washington, DC 20006 |
| | Telephone: (202) 783-8400 |
| 9 | Facsimile: (202) 783-4211 |
| 10 | |
| 11 | *Attorneys for Defendants* |
| | UBER TECHNOLOGIES, INC., |
| 12 | RASIER, LLC, and RASIER-CA, LLC |

2

DECLARATION OF WILLIAM ANDERSON IN SUPPORT OF DEFENDANTS' POSITION IN JOINT LETTER
REGARDING DEFENDANTS' PRODUCTION OF HYPERLINKED DOCUMENTS
Case No. 3:23-MD-3084-CRB

## DECLARATION OF WILLIAM ANDERSON

I, William Anderson, declare as follows:

1. I am over 18 years of age and competent to make the statements in this declaration. This declaration and information is provided pursuant to and under the provisions of the protective order previously entered in this matter. I declare under penalty of perjury that the foregoing is true and correct.

2. This declaration is submitted in support of Defendants' Position in the joint letter brief regarding hyperlinked documents.

3. I am a Manager, eDiscovery at Uber Technologies, Inc. ("Uber"). I have been employed at Uber since October 2015, and I have held my current position since March 2024. I previously held the positions of Senior Discovery Analyst II, Senior eDiscovery Analyst, Executive Support Technician, and Computer Technician at Uber. Over the course of my employment at Uber, I have acquired personal knowledge of Uber's discovery capabilities concerning its communication tools and data sources, and follow latest developments in the legal technology industry at large.

4. The contents of this declaration are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge of Uber's discovery capabilities as they relate to Uber's communication tools and data sources and/or informed conversations with knowledgeable employees at Google and Lighthouse (Uber's eDiscovery vendor). If called upon as a witness in this action, I could and would testify competently to the matters discussed in this declaration.

5. Uber utilizes Google Workspace (formerly G Suite) to organize much of its business, including Gmail, Google Drive, and the Google Docs, Sheets, and Slides applications, as well as the Google Vault eDiscovery tool for Google Workspace. I described the Google Workspace suite and Google Vault more fulsomely in my April 12, 2024 Declaration, ECF 499-4 at ¶¶10-14. I have worked with Google Workspace since I started my employment at Uber over nine years ago. I have significant experience addressing the challenges of collecting Google Drive files

3
DECLARATION OF WILLIAM ANDERSON IN SUPPORT OF DEFENDANTS' POSITION IN JOINT LETTER REGARDING DEFENDANTS' PRODUCTION OF HYPERLINKED DOCUMENTS
Case No. 3:23-MD-3084-CRB

1   referenced in a URL, including both in emails or messages and in Google Drive files. However, I
2   understand the challenges discussed below are not unique to Google Workspace, but rather also
3   apply to the other major enterprise systems, including Microsoft M365.

4   6. Over the past several years, Uber has gone through a myriad of steps to develop a
5   process to collect hyperlinked Google Drive documents for production. I worked with Uber's
6   eDiscovery vendor Lighthouse to develop their proprietary "Google Parser," which is not a
7   document collection tool but is useful in attempting to identify linked documents within collected
8   documents for subsequent collection. That development and implementation process took well
9   over a year to complete.

**The Technical Challenges of Collecting Hyperlinked Documents**

11  7. Hyperlinks do not always reference other documents. Often, hyperlinks are used as
12  a navigational guide to point to *internal* references, i.e., as "bookmarks" that take the user to a
13  different section within the same document. In such cases, there is no "hyperlinked document" to
14  collect. Moreover, the difference between a navigational hyperlink and a hyperlinked document
15  will not be apparent until someone attempts to follow that hyperlink.

16  8. Hyperlinked documents are not attachments. Hyperlinked documents present
17  unique collection challenges that make them different from documents attached to emails and
18  messages, and also different from documents embedded in other documents (e.g., spreadsheets
19  embedded in presentations).

20  9. Hyperlinks may appear in emails and messages as well as in documents, and these
21  links may reference information that is internal to Uber (e.g., an email with a link to a Google
22  Drive document, or a document from another internal system) or external to the company (e.g., a
23  link to a YouTube video or a *New Yorker* article).

24  10. In my experience, and to the best of my knowledge, there is no discovery tool or
25  application (neither within Uber's technology, nor within the commercial marketplace generally)
26  that automatically identifies, collects, and associates all underlying documents referenced by
27  hyperlinks to emails, messages, or documents containing those hyperlinks regardless of source of

4
DECLARATION OF WILLIAM ANDERSON IN SUPPORT OF DEFENDANTS' POSITION IN JOINT LETTER
REGARDING DEFENDANTS' PRODUCTION OF HYPERLINKED DOCUMENTS
Case No. 3:23-MD-3084-CRB

the referenced document. Searching for, collecting, and linking underlying hyperlinked documents to documents containing those hyperlinks to unrelated systems must be done manually, on a source-by-source, hyperlink-by-hyperlink basis. Further, each source or system presents its own unique challenges when it comes to manually identifying and collecting hyperlinked documents.

**The Specific Challenges of Collecting Hyperlinked Documents**

**I. Google Drive Documents Referenced by Hyperlinks in Nested Gmail Messages.**

11. Uber has worked with its vendor, Lighthouse, to develop a process whereby hyperlinked Google Drive documents are identified, collected, and connected via metadata to the email containing the hyperlink, such that hyperlinked Google Drive documents are handled in exactly the same manner as traditional attachments. When the <u>latest-in-time,</u> or "top," email in an email chain contains one or more hyperlinks to Google Drive documents, any hyperlinked Google Drive documents are collected and associated via metadata to that top email, just as traditional email attachments would be. Likewise, When the <u>earlier-in-time</u> or "nested" emails in an email chain contains one or more hyperlinks to Google Drive documents, hyperlinked Google Drive documents from those emails are not collected and associated via metadata to that email chain, just as traditional email attachments would not be collected or associated with it. Thus, this parallels, as to Google Drive documents, how email systems treat traditional attachments, as illustrated by the following examples:

    a. Email 1 is sent from A to B and attaches a document. Email 2 is a reply from B to A. Email 2 will not include a copy of the attached document from Email 1.

    b. Email 1 is sent from A to B and includes a hyperlink to a Google Drive document. Email 2 is a reply from B to A. Email 2 will not include a copy of the hyperlinked document from Email 1.

5
DECLARATION OF WILLIAM ANDERSON IN SUPPORT OF DEFENDANTS' POSITION IN JOINT LETTER REGARDING DEFENDANTS' PRODUCTION OF HYPERLINKED DOCUMENTS
Case No. 3:23-MD-3084-CRB



Note that while the document or hyperlink in Email 1 above would not be collected *as an attachment or hyperlinked document* and associated via metadata to these emails, so long as that document is in the file of at least one document custodian, it will be collected for review.

12. While only Google Drive documents hyperlinked in the top email of a given email chain are collected and associated via metadata with that email chain, consistent with how traditional attachments would be collected and associated with an email chain, Uber is not using email threading in this litigation. In fact, I understand that the ESI Protocol in this litigation includes a paragraph titled "NO EMAIL THREADING." As a result, every sub-chain within an email chain, so long as that sub-chain is within a document custodian's file, is collected separately and independently as a document. For each such sub-chain, any available attachments or hyperlinked Google Drive documents in the top email will be collected, as illustrated by the following examples:

   a. Email 1 is sent from A to B, and attaches a document. Neither A nor B are document custodians. In Email 2, B replies to A, and copies X, who is a document custodian. As in the examples in Para. 11 above, the attachment to Email 1 is not

included in Email 2. Emails 3, 4, and 5 are between A, B, and document custodian Y. The following 4 email chains will be separately and independently collected as documents, and any attachments in the top email of each chain will be collected and associated via metadata with that email chain:

    i.    Emails 5+4+3+2+1

    ii.    Emails 4+3+2+1

    iii.    Emails 3+2+1

    iv.    Emails 2+1



Figure 2

Any hyperlinked Google documents would be collected and associated by metadata in exactly the same manner as the traditional attachment described above. Note that Email 1 will not be separately collected, because it was not sent to or received by a document custodian. Likewise, the attachment to Email 1 will not be collected, because it was never sent to or received by a document custodian.

b.    Email 1 is sent from X to Y, who are both document custodians. Email 2 is sent from Y to X, and attaches a document. Email 3 is sent from X to Y and

1  includes a hyperlink to a Google Drive document. Email 4 is sent from Y to X and
2  Z. In this scenario, the following 4 email chains are separately and independently
3  collected as documents:

    i.    Emails 4+3+2+1

    ii.    Emails 3+2+1, with the Google drive document hyperlinked in Email 3 included and associated via metadata.

    iii.    Emails 2+1, with the attachment to Email 2 included and associated via metadata.

    iv.    Email 1



21    13.    In my experience and to the best of my knowledge, Uber has never previously been required or asked–in litigation or otherwise–to produce hyperlinked documents referenced in nested emails, and associate them via metadata to all email threads containing the email with the hyperlink.

**II. Documents Outside of Google Drive Referenced by Hyperlinks in Gmail Messages.**

14.    In my experience and to the best of my knowledge, there is no discovery tool or application (neither within Uber's technology, nor within the commercial marketplace generally),

to collect hyperlinked documents from multiple data sources or systems on an automated basis, at scale or otherwise. There is no third-party system that would have access to every possible scenario of a hyperlinked document.

15. Collecting documents outside of Google Drive referenced by hyperlink in Gmail messages presents challenges and requires manual input at every step of the collections process: identification and sorting of links, identification of the sources or systems containing the hyperlinked documents, collection from those disparate sources, and association of those documents with the Gmail message containing the hyperlink.

16. While Google Vault now has a feature to collect available hyperlinked Google Drive documents referenced in Gmail messages on an automated basis at scale, it does *not* have a corresponding feature to collect hyperlinked documents from *outside* of the Google Workspace environment. Nor could it, as such a tool would have to be designed or configured to collect documents from multiple other systems, and include permission to access and retrieve information from multiple other systems that are themselves constantly evolving.

17. Once identified, hyperlinks referencing documents outside of Google Drive must be manually reviewed to identify the probable source or system containing the referenced document. In a litigation with document collections spanning over a decade, many hyperlinks may point to deprecated systems and require additional research to determine which source or system contains or once contained the hyperlinked documents. Depending on where the hyperlink leads, it could take a few minutes, or even days, to access a *single* hyperlinked document.

18. Once the relevant data sources or systems are identified, collecting the hyperlinked documents from those systems is a manual process that varies in difficulty depending on both the number of data sources or systems hosting the documents referenced by hyperlink, and the permissions and structure of each such data system or source.

19. Regardless, this process would be fully manual in that a person would need to follow each individual hyperlink in an effort to locate the referenced document to the extent such document exists. Some hyperlinks will lead to documents that require appropriate credentials to

1  access, creating yet another hurdle, which may or may not be capable of being overcome. Again,
2  these are issues that a person would need to work through manually for each hyperlink, and each
3  hyperlinked document in a given Gmail message may require a different workflow.

4  20.  Assuming the underlying document can be collected, there is no automated tool to
5  associate documents outside of Google Drive referenced by hyperlink with the Gmail message
6  containing the hyperlink. That is also a manual task, requiring individualized assessment *per*
7  *hyperlinked document.* Then, to associate these documents with the emails containing the links,
8  the vendor would need to create a custom workflow to associate the newly collected hyperlinked
9  documents with the referenced email message.

10  21.  Uber has never previously been asked or required–in litigation or otherwise–to
11  produce documents referenced by hyperlinks in Gmail from systems outside of Google
12  Workspace as a matter of course for every hyperlink in every Gmail. To do so, a custom
13  workflow would need to be created to associate the newly collected hyperlinked documents with
14  the referenced email message.

**III. Documents Referenced by Hyperlinks in Documents.**

16  22.  In my experience, and to the best of my knowledge, there is no discovery tool or
17  application (neither within Uber's technology, nor within the commercial marketplace generally)
18  that automatically identifies, collects, and associates underlying hyperlinked documents
19  referenced by hyperlink within documents to various data sources or systems, at scale or
20  otherwise.

21  23.  Searching for, collecting, and linking underlying hyperlinked documents to
22  documents containing embedded hyperlinks to unrelated systems must be done manually, on a
23  source-by-source, hyperlink-by-hyperlink basis. Further, each data source or system presents its
24  own unique challenges when it comes to manually identifying and collecting hyperlinked
25  documents. There is no third-party system that would have access to every possible scenario of a
26  hyperlinked document.

10
DECLARATION OF WILLIAM ANDERSON IN SUPPORT OF DEFENDANTS' POSITION IN JOINT LETTER
REGARDING DEFENDANTS' PRODUCTION OF HYPERLINKED DOCUMENTS
Case No. 3:23-MD-3084-CRB

24. While, as discussed above, Google Vault has a feature that collects Google Drive documents hyperlinked in Gmails consistently with the manner in which attachments would be collected, Google Vault does *not* have a corresponding feature to collect documents hyperlinked within Google Drive documents.

25. Once identified, Google Drive documents hyperlinked within other Google Drive documents must be collected manually, on a hyperlink-by-hyperlink basis. Further, once collected, each hyperlinked document must be manually associated with the original document containing the hyperlink.

26. The process for identifying, sorting, collecting, and associating hyperlinked documents outside of Google Drive is the same as discussed in ¶¶ 17-20 above.

27. Uber has never previously been asked or required–in litigation or otherwise–to produce documents referenced by hyperlinks in documents as a matter of course for every hyperlink in every document.

Executed on January 30, 2025, at Denver, Colorado.

*William Anderson*

WILLIAM ANDERSON

---

11

DECLARATION OF WILLIAM ANDERSON IN SUPPORT OF DEFENDANTS' POSITION IN JOINT LETTER REGARDING DEFENDANTS' PRODUCTION OF HYPERLINKED DOCUMENTS
Case No. 3:23-MD-3084-CRB