UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084 CRB<br><br>**DEFENDANTS' SUPPLEMENTAL LETTER IN SUPPORT OF THEIR POSITION REGARDING TAR VALIDATION**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

Pursuant to the Court's January 30, 2025 Order (ECF 2184), Defendants respectfully submit the following response to footnotes 2, 5, and 6 of the Parties' pending joint discovery letter (ECF 2166).

Dated: February 3, 2025                    Respectfully Submitted,

*/s/ Michael B. Shortnacy*

MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (Admitted *Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON L.L.P.**
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

VERONICA G. GROMADA (Admitted *Pro Hac Vice*)
vgromada@shb.com
**SHOOK, HARDY & BACON L.L.P.**
600 Travis St., Suite 3400
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508

JEREMY S. WIKLER (Admitted *Pro Hac Vice*)
jwikler@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

**Footnote 2:** The target of this exercise is not to build a perfect model of document categorization, it is to reasonably identify the documents that are within the scope of Rule 26(b)(1) and requested by Plaintiffs. A midstream validation exercise is very burdensome for the producing party, and it does nothing to improve the set of produced responsive documents when scope fluctuates in negotiation. This first wave of assessing document categorizations were all made prior to the Christmas Eve Compromise, which shifted the scope. Plaintiffs' footnote 2 statistics do not accurately portray the actual categorization status which shows:

- The Parties independently categorized a set of 4,362 documents pursuant to ECF 2009-1.
- After the Parties' blind review and exchange of the Validation Log, the Parties reached consensus (or "overlap") on 3,323 documents of 4,362 documents (i.e., **the parties agreed on 76.1% of the documents before reaching further agreements through the meet-and-confer process).** This is a significant achievement.
- In an effort to compromise, Defendants agreed to change responsiveness coding on 251 documents after the meet and confer (*e.g.*, Google Calendars, Google Alerts, certain Google Drive documents, etc.). Also, Defendants estimate that Plaintiffs conceded to Defendants' categorizations on at least 165 documents.[1]
- Combined, the Parties reached categorical consensus after meet-and-confer on an estimated 4,237 documents (97%). Leaving, as Plaintiffs' note in their portion of the joint letter brief, only 125[2] documents where consensus has not been reached – samples of which were provided to the court under seal pursuant to ECF 2172.

Though footnote 2 is rife with internal inconsistencies and misleading calculations prepared for apparent shock value, the current document categorization system is performing reasonably – 76% consensus is good – even by the standards set out by Plaintiffs' own expert in his research.[3]

Plaintiffs misrepresent the data, and their estimates in footnote 2 tell a one-sided story. For example, Plaintiffs' metrics factor in document concessions made by Defendants, but do not count the documents Plaintiffs acknowledged are not responsive. Plaintiffs then presented skewed and inaccurate metrics based only on Defendants compromises made during the conferral process. Significantly, in an effort to resolve unnecessary disputes, while not agreeing that the documents

---

[1] This is an estimate because Plaintiffs failed to provide an updated log identifying the documents they agreed were non-responsive, despite repeated requests to do so. This refusal has also prevented Defendants from continuing to incorporate the Parties' alignment on documents and concepts into further training the TAR model. Plaintiffs' delay in providing Defendants with this information will delay their receipt of documents. Plaintiffs cannot argue that they are prejudiced by delays they have created.

[2] The number is actually smaller than 125, as there are documents within this set that Plaintiffs have already agreed are not responsive (*e.g.*, Uber Eats documents).

[3] *See* William Webber, Bryan Toth, and Marjorie Desamito, *Effect of Written Instructions on Assessor Agreement*, Association for Computing Machinery, SIGIR '12, 1053–54 (2012).

fall within the scope of 26(b)(1), Defendants agreed to mark responsive certain documents that Plaintiffs never requested and that are of questionable relevance, if marginally relevant at all (*e.g.*, calendar invites and Google Alerts about general "safety" *unrelated to* sexual assault or sexual misconduct). Plaintiffs' speculation "that at least 83% of responsive documents were missed" must be read in the context of the key portion of that sentence: it is "based on *similar calculations using Plaintiffs' coding*," which as noted above presents metrics that are incomplete, inaccurate, and misleading.

**Footnotes 5 and 6:** The documents Plaintiffs untimely cited in footnotes 5 and 6 do nothing to change this simple fact: Plaintiffs have propounded 197 document requests, none of which calls for Defendants to produce specific incidents relating to verbal or physical assault. That fact alone ends the inquiry and mandates a finding that such documents are not responsive. Even if Plaintiffs had actually propounded requests for such documents, incidents of verbal or physical assault are not relevant to this litigation and therefore are not discoverable under Rule 26(b)(1). Nothing in the produced documents Plaintiffs cited in their untimely footnotes 5 and 6 alters that fact.

Even taking as true Plaintiffs' argument about safety predictions (with which Defendants disagree), that still does not support Plaintiffs new demand that Defendants produce whatever random reports of non-sexual assault or misconduct incidents just so happen to appear within the custodial files. The Court previously denied Plaintiffs broad request for non-sexual assault or misconduct incident reports related to the U.S. Safety Reports, as "patently overbroad" and "not related to the key issues in this case." ECF 683 at 9. Plaintiffs demand that the Court do the very opposite now and require production of the same incident reports previously denied – in other words, Plaintiffs demand that the Court undo the law of the case, which is nonsensical.

Defendants are already producing documents involving *discussions about* these types of incidents, *e.g.*, whether to deactivate a driver who has reports of verbal altercations. Further, Plaintiffs' citations in footnotes 5 and 6 to these same types of documents (that Defendants have long since produced) demonstrates that Defendants have produced internal presentations and e-mails containing analyses, metrics, considerations, and recommendations for identifying the potential for risks and improving community safety. These *produced* documents demonstrate that the TAR model is working and that Defendants are producing documents that are responsive and relevant. Defendants are also producing documents regarding policies and practices related to safety broadly, as well as responsive incident reports through TAR identification and review, the DFS process, and the Safety Data production. But a document specifically about an individual report of a non-sexual assault or misconduct incident is neither responsive to any request Plaintiffs have served nor is it relevant to the claims or defenses in this litigation.

2

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2025 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Michael B. Shortnacy*