*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br>**JOINT STATUS REPORT REGARDING MARKETING DISCOVERY**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**JOINT STATUS REPORT**

On December 24, 2024 the Court Ordered the Parties to meet and confer to "address possible supplementation of Uber's discovery responses or other discovery requests that would provide [contextual information regarding the Exact Target templates]" and to "discuss the extent to which Uber's forthcoming supplemental production will cover other marketing-related information that Plaintiffs seek, including records that address the volume of messaging, its reinforcement across advertising mediums, analysis of marketing campaign, and Uber's budgeting and finances on marketing." Dkt. No. 2015. The Parties have met and conferred on numerous occasions and submitted status reports on January 14, 2025, Dkt. No. 2086, and January 29, 2025. Dkt. No. 2170. On January 21, 2025 Defendants produced 3,228 additional marketing related documents collected from Google drive.[1] Plaintiffs are in the process of reviewing these documents.

On February 3, 2025, The Court ordered that the "Parties shall raise any remaining disputes regarding that issue by joint letter no later than February 7, 2025. If such a letter is filed, the parties are directed to attach the relevant requests for production and responses thereto." Dkt. No. 2213.

**Plaintiffs' Position**: Plaintiffs assert the discovery requests include RPD Nos. 6, 40, 55, 98-100, 102-103, and 145, as well as Interrogatory Nos. 23-49 and 53-58. These are attached as Exhibit A along with Uber's responses. Critically, Uber's responses to date have omitted relevant discovery sufficient to enable Plaintiffs to identify the communication channels Uber used to disseminate its various safety messages for the relevant timeframe, both for recruiting drivers and targeting riders, as well as identifying the audience for each applicable communication, the applicable dates of the communications, and the geographic regions targeted with the communications. Further, at each stage of the conferral process, Uber has represented to Plaintiffs and this Court that production is substantially complete (or will be so), yet continues to identify additional sources of noncustodial materials such as a Box.com repository of national marketing materials. This new source of relevant, discoverable information was only disclosed to Plaintiffs today, on February 7, 2025, after months of conferrals regarding noncustodial sources.

---

[1] None of the documents produced on January 21, 2025 predate 2014.

**Defendants' Position**: Plaintiffs have not, in conferrals with Defendants or in this Status Report, identified with any particularity the Requests for Production related to the specific topics that, on February 3, the Court ordered the Parties to address in this letter. (Dkt. No 2213). Further, in our many conferrals and joint submissions, Defendants have provided information to Plaintiffs regarding "communications channels" by name and date range, and indeed the Parties directly reference one such system in this Joint Status Report. Defendants also have agreed to provide a declaration along the lines Plaintiffs proposed in the prior Joint Status Report. To the extent that any disputes regarding marketing discovery remain, Defendants believe they are largely related to new asks outside the scope of Plaintiffs' requests for production, and outside of what the Court ordered on Feb. 3.

Defendants also do not agree with Plaintiffs' characterization of the national marketing materials as a "new source of relevant, discoverable information." Defendants have informed Plaintiffs that the national marketing materials may be duplicative of materials included in prior productions, which have been produced subject to Defendants' objections as to overbreadth and relevance. Plaintiffs are also mistaken on other points related to these marketing documents that Defendants, in the course of a diligent investigation, have recently identified for review. As a result, Defendants offered, *sua sponte*, to produce non-privileged documents responsive to Plaintiffs' requests, even though these documents are beyond our prior agreements. *See* Dkt. No. 2013. Moreover, Box is a *custodial* source, as Plaintiffs have long known. For example, on January 29, 2024, Plaintiffs sent Defendants a letter requesting information related to "…Box, or other parts of the custodial file." The particular Box was not part of any of the 55 agreed custodians' files, yet is being offered in the spirit of transparency and cooperation, to augment the agreed productions from Google Drive on a custodian-agnostic basis.

The Parties address the three subjects identified in the previous Joint Status Report on Marketing (Dkt. No. 2170) below.

1) **Reporting from Bloc & Flow.** Uber has agreed to produce reports from Bloc & Flow regarding messages sent related to safety and/or sexual assault over the lifetime of the system. These reports will include information regarding: 1) Template Identifier; 2) Count of Sends; 3) Count

1  Delivered; 4) Count Opened; 5) Count of Clicks; 6) Count Delivered. In addition, Defendants have
2  agreed to provide Plaintiffs a list of email addresses from which recipients would have received these
3  e-mails. Defendants have agreed to provide this information by February 14, 2025.

4       **Plaintiffs' Position:** During meet and confers Uber represented that fields available for
5  production include "Target City," "Author e-mail," "Open Rate," and "Bounce Rate." In edits to this
6  document, Uber informed Plaintiffs "Target City" was not populated and "Author e-mail" does not
7  provide "reliable information." Uber further informed Plaintiffs that while "Bounce rate" is not
8  captured, the "count delivered" shows how many of the communications were delivered (and the
9  remainder would have "bounced"). Uber provided no information about "Open Rate." To the extent
10 these (or similar) fields exist, with or without information contained therein, Plaintiffs ask that they be
11 produced. In addition, Plaintiffs request that information provided in conferrals be provided in verified
12 format in Uber's declaration, as discussed below.

13       **Defendants' Position**: Defendants have consistently told Plaintiffs that Defendants would
14 endeavor to provide reporting from Bloc and Flow related to specific information Plaintiffs seek,
15 including "open rate" and "bounce rate," which Plaintiffs have identified as fields they have seen in
16 prior productions in other cases from *MailChimp*. Defendants have identified fields available in Bloc
17 and Flow that provide equivalent or better information, e.g. the self-explanatory field names "Count
18 Opened" and "Count Clicked" compared to "open rate" in MailChimp, as characterized by Plaintiffs.
19 Additionally, regarding "Author e-mail," Plaintiffs clarified on February 5 that they wanted
20 information about the addresses that would appear in the "from" field of marketing emails, and
21 Defendants agreed to provide such a list.

22     2)    **Communication Logs.** As agreed, Defendants have informally produced a
23 communication log to Plaintiffs for a "sample" plaintiff to assist in discussions related to Plaintiff
24 specific records that shall be produced once bellwether Plaintiffs are determined.

25       **Plaintiffs' Position**: Plaintiffs have requested confirmation from Uber that productions for
26 future bellwether and potential bellwether Plaintiffs will mirror that for the sample Plaintiff as well as
27 any adjustments the Parties deem necessary. Plaintiffs have also requested that any logs provided by
28

Uber contain details not only about the existence and text of the communication but the content of the communications as it appeared to the recipient. Finally, Plaintiffs have requested that Uber produce logs for select Plaintiffs by March 1, to allow Plaintiffs to amend their complaints by the March 14 deadline set by Judge Breyer. Uber has not agreed to a date certain by which additional plaintiff-specific logs will be produced. Such logs are necessary for individual Plaintiffs to amend their claims, particularly given that Uber continues to produce national marketing on a rolling basis, despite its assurances to Plaintiffs and the Court that marketing materials were confined to custodial files, with the exception of three discrete electronic collections: deprecated systems Mail Chimp and Exact Target, and current system Bloc & Flow.[2]

**Defendants' Position**: Defendants remain open to discussing the format of future communication logs. Plaintiffs' new requests for production of logs for "future bellwether and *potential bellwether* Plaintiffs" (emph. added), i.e., bellwether discovery and then some, by March 1 is premature and inconsistent with both Judge Breyer's Order and the Parties' conferrals to date. Bellwether plaintiffs are not due to be submitted until February 14, 2025. *See* PTO 21 (Dkt. No 1950). Moreover, individual, plaintiff-specific communication logs are not necessary for Plaintiffs to plead their claims. As Judge Breyer recognized, certain "case-specific facts are within Plaintiffs' knowledge," such as "what safety-related marketing plaintiffs saw." PTO 17, Dkt. No. 1044 at 10 n.2. PTO 21 (Dkt. No 1950) contemplates that case-specific discovery for the bellwether cases would open on March 14, the date by which Plaintiffs should submit any amended complaint. Indeed, PTO 21 does not require (and, in fact, does not allow) case-specific discovery prior to the deadline for amended complaints. Defendants produced an exemplar log comprising over 1,600 pages, to better inform discovery that will occur after March 14, however, production of logs for all bellwether plaintiffs, let alone *potential* bellwether plaintiffs, even if feasible is not appropriate at this stage.

**3.     Declaration Regarding Marketing Materials.**  Defendants have agreed to provide Plaintiffs, by February 21, 2025, a declaration related to marketing materials including a description

---

[2] The "sample" plaintiff's communications log contains records beginning in September of 2016, despite Uber's sworn statement in its corresponding Defense Fact Sheet that the "sample" plaintiff's initial ride occurred in August of 2014.

1  of, at least, "over the life of the company where and how its [marketing materials] and practices have
2  been stored." Dkt. No. 1996.

3  **Plaintiffs' Position**: Plaintiffs have requested that the declaration additionally include details regarding the reporting capabilities of the systems which store or have stored, or distribute(d) marketing materials. In light of Uber's statement regarding the forthcoming production of additional "national marketing materials," Plaintiffs additionally request that Uber include in its declaration an itemized list of materials it has produced in response to each of Plaintiffs discovery request. In consideration of the above, Plaintiffs respectfully request that Uber be ordered to complete production of its national marketing materials, as well as communications logs for all bellwether Plaintiffs, no later than March 1, 2025 and to produce a comprehensive declaration regarding marketing materials by February 21, 2025.

**Defendants' Position**: Despite Plaintiffs' declared purpose that such a declaration is solely to "assist in their review of [Defendants'] documents," (Dkt. No 2170, at 5), in the spirit of cooperation and good faith, Defendants agreed to provide a declaration with the scope Plaintiffs requested in the previous Joint Status Report, i.e. a declaration "that mirrors the declaration the Court ordered Defendants to provide related to policies and related operational guidelines (Dkt. No. 1996)," to include, "'over the life of the company where and how its [marketing materials and practices] have been stored' and what is specifically stored within each current and historical repository." (Dkt. No 2170, at 5-6). However, Plaintiffs continue to make demands outside the scope requested by Plaintiffs in the previous Joint Status Report, and Defendants cannot agree to Plaintiffs' constantly escalating scope.

On February 5, after Defendants agreed to a declaration as along the scope proposed and reported to Court by Plaintiffs, Plaintiffs requested "details regarding the reporting capabilities" of depreciated systems. This is not appropriate. First, these systems are no longer in use, so Defendants cannot generate new reports from these systems. Further, the reporting capabilities of these systems *as used in the ordinary course of business* will be reflected in the marketing analyses produced in custodial and custodian-agnostic document productions. So there simply is no value to providing this

6

1 information to Plaintiffs for systems that were decommissioned before the commencement of this
2 litigation.
3 In the afternoon of filing this report, Plaintiffs added yet another new request: this time, for
4 "an itemized list of materials [Defendants have] produced in response to each of Plaintiffs['] discovery
5 request[s]." This is despite Plaintiffs conceding they have not reviewed the marketing-related
6 documents Defendants previously identified to Plaintiffs in the spirit of cooperation. (*See supra,* Dkt.
7 No 2170, at 4). Defendants, consistent with Rule 34, are producing documents as they are kept in the
8 usual course of business. Further, Plaintiffs' requests are both so broad and so overlapping that such a
9 list would have no meaning. *See* Ex. A. Defendants respectfully request the Court deny this improper
10 request, which is far outside the previously agreed scope of a marketing declaration as Plaintiffs
11 requested in the previous status report on marketing discovery submitted to the Court, and in any event
12 is simply inappropriate for a declaration.

| | |
|---|---|
| By: */s/Roopal Luhana*<br>ROOPAL P. LUHANA (*Pro Hac Vice*)<br>**CHAFFIN LUHANA LLP**<br>600 Third Avenue, Fl. 12<br>New York, NY 10016<br>Telephone: (888) 480-1123<br>Email: luhana@chaffinluhana.com<br>*Co-Lead Counsel for Plaintiffs* | By: */s/ Michael B. Shortnacy*<br>MICHAEL B. SHORTNACY (SBN: 277035)<br>mshortnacy@shb.com<br>**SHOOK, HARDY & BACON, L.L.P.**<br>2049 Century Park East, Suite 3000<br>Los Angeles, CA 90067<br>Telephone: (424) 285-8330<br>Facsimile: (424) 204-9093 |
| SARAH R. LONDON (SBN 267083)<br>**LIEFF CABRASER HEIMANN & BERNSTEIN**<br>275 Battery Street, Fl. 29<br>San Francisco, CA 94111<br>Telephone: (415) 956-1000<br>Email: slondon@lchb.com | PATRICK OOT (*Pro Hac Vice* admitted)<br>oot@shb.com<br>**SHOOK, HARDY & BACON, L.L.P.**<br>1800 K Street NW, Suite 1000<br>Washington, DC 20006<br>Telephone: (202) 783-8400<br>Facsimile: (202) 783-4211 |
| RACHEL B. ABRAMS (SBN 209316)<br>**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**<br>555 Montgomery Street, Suite 820<br>San Francisco, CA 94111<br>Telephone: (415) 426-5641<br>Email: rabrams@peifferwolf.com | RANDALL S. LUSKEY (SBN: 240915)<br>rluskey@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>535 Mission Street, 24th Floor<br>San Francisco, CA 94105<br>Telephone: (628) 432-5100<br>Facsimile: (628) 232-3101 |
| | ROBERT ATKINS (*Pro Hac Vice* admitted)<br>ratkins@paulweiss.com<br>CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)<br>cgrusauskas@paulweiss.com<br>ANDREA M. KELLER (*Pro Hac Vice* admitted)<br>akeller@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990 |

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: February 7, 2025                            By: /s/ Michael B. Shortnacy

Michael B. Shortnacy

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ Michael B. Shortnacy

Michael B. Shortnacy