**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **JOINT CASE MANAGEMENT STATEMENT** |
| This Document Relates To: | |
| ALL ACTIONS | Judge:     Hon. Charles R. Breyer |
| | Courtroom: 6 – 17th Floor (via videoconference) |
| | Date:      February 28, 2025 |
| | Time:      10:00 a.m. |

## JOINT CASE MANAGEMENT STATEMENT

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively "Uber"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for February 28, 2024.

### Proposed Agenda

    **I.**    **Status of Case Filings**

    **II.**    **Bellwether Selection Process**

    **III.**    **General Discovery Updates**

IV.    **Cutoff Date**

V.    **Privilege Log Disputes and Special Master**

VI.    **Settlement Special Master**

VII.    **Next Case Management Conference**

I.    **Status of Case Filings**

**Number of MDL Case Filings**

As of February 25, 2025, there are currently 1,785 cases in this MDL.  Since the last case management conference on January 24, 2025, 207 new cases have been filed.

**Status of JCCP**

There are approximately 524 cases pending in the JCCP.

**Other Cases and Proceedings**

Uber has provided a current list of civil actions and government investigations arising from sexual assault on the Uber platform in which Uber is a defendant, attached as Exhibit A.

II.    **Bellwether Selection Process**

On December 12, 2024, the Court issued PTO 21: Bellwether Selection Process and Scheduling Order.  ECF No. 1950.  The Court then granted a one-week extension of the bellwether selection deadline.  ECF No. 2353.  On February 21, 2025, the parties each submitted their 10 bellwether selections to the Court.  ECF Nos. 2373, 2375.

**Plaintiffs' Position:**

PTO 21 was designed to identify bellwether cases the Court could try. Uber selected four cases that, in their short form complaints, designated districts other than the Northern District of California, meaning the Court cannot try them. These four cases do not meet the criteria laid out in PTO 21 and should be struck as non-compliant. *See* ECF 1950. To be eligible as a bellwether, "a case must, as of January 31, 2025, (1) not have a *Lexecon* issue…; and (2) have completed their Plaintiff and Defense Fact Sheet exchanges." *Id.* at 2. The Court explained that there would be no *Lexecon* issue if the case was "either [] filed in the Northern District of California originally, or [] indicated in their short form or amended short form complaint that they would

JOINT CASE MANAGEMENT STATEMENT                                    3:23-md-03084-CRB

have filed in the Northern District of California in the absence of direct filing." *Id.* at 1. In so

ordering, the Court rejected arguments Uber made that the pool should be broader, both in terms

of where cases were filed and the status of their PFS and DFS exchanges.

Four of Uber's selections indicated they would have filed outside of this District absent

direct filing. These cases are:

| Plaintiff | Case No. | MDL Centrality ID | Forum Selected on Operative Short Form Complaint |
|---|---|---|---|
| K.E. | 3:24-cv-05281 | 2143 | W.D. Tex. |
| Jane Roe CL 68 | 3:24-cv-06669 | 2597 | W.D. Tex. |
| D.J. | 3:24-cv-07228 | 2620 | S.D. Miss. |
| A.L. | 3:24-cv-08937 | 2711 | S.D. Iowa |

Uber says that the Court's order, by referring to cases "filed in the Northern District of

California originally," included cases like these four, which utilized the direct filing procedure to

indicate which other district they would have filed in absent direct filing. *See* PTO 6. That is

clearly not what the Court meant in PTO 21. Uber's interpretation would mean *any* case that used

direct filing under PTO 6 would qualify as a bellwether candidate, but the Court distinguished

between cases filed here "originally"—meaning those (few) cases that filed long-form complaints

in this District before PTO 6 authorized direct filing—and those filed through direct filing under

PTO 6. For that latter group, the Court was clear that they needed to select this venue.

Uber suggests that the parties and the Court had a shared understanding that contradicted

the plain terms of the Court's order. But the aim of PTO 21 was to identify bellwether cases the

Court could try. Uber's interpretation would sweep in hundreds of cases that the Court cannot try,

because those Plaintiffs selected a different forum. Uber's citation of a stray exchange from the

November CMC cannot contradict PTO 21 or undermine its fundamental purpose.

Uber also cites a table from its portion of the bellwether briefing dividing cases into

"Categories," but Plaintiffs did not submit that table, and PTO 21 rejected Uber's arguments for

designing the bellwether pool based on it. ECF 1950 at 1. Regardless, PTO 21 says what it says.

If Uber found it confusing, disagreed with it, or thought it should have incorporated Uber's

1    "Categories," then Uber should have moved for clarification or reconsideration. And there was no

2    shortage of cases: at least 600 cases met the Court's requirements, but Uber chose four that did

3    not anyway.

4        Uber defends its violation of the order by saying that several of Plaintiffs' selections

5    amended their SFCs to change their chosen venue. This is, of course, irrelevant to whether Uber's

6    cases comply with the PTO 21 criteria. In any event, the Court's order was clear: the pool would

7    comprise cases in which an "amended" short form complaint identified N.D. Cal. as of January

8    31, 2025. Plaintiffs' ten selections met those criteria on that date; four of Uber's did not. Whether

9    Plaintiffs' picks fell into Uber's self-defined "Category 2" as of the date PTO 21 was entered is

10   irrelevant.

11       Uber argues that Plaintiffs' picks are inappropriate because Uber's "*Lexecon* rights

12   attached" at some earlier point to those cases. Uber cites no authority for this proposition other

13   than *Lexecon* itself, which did not deal with cases filed pursuant to a stipulated direct filing order,

14   let alone amendments of the complaints in those cases. Nothing says that Plaintiffs could not

15   amend their complaints; Rule 15 says they can do so liberally. And amendments are not done in

16   secret: every one was filed on the docket and served on Uber with no objection.

17       But this dispute about the implications of direct filing and amending is beside the point. If

18   Uber thought that PTO 21 failed to consider or otherwise impinged on its "*Lexecon* rights,"

19   "attached" or not, then it should have sought reconsideration. It did not. The only question before

20   the Court is whether the parties' bellwether selections complied with PTO 21. Plaintiffs' did.

21       Finally, Uber complains about "gamesmanship" and says that "Plaintiffs effectively had a

22   bellwether selection pool" larger than Uber's, and that Plaintiffs' picks are cases that "Uber had

23   no ability to select." This is false. The pool of eligible cases was set, as PTO 21 ordered, on

24   January 31, 2025. Both sides were free to pick any cases in that group for the February 14, 2025

25   bellwether selections.

26       The Court should strike Uber's four selections as non-compliant and proceed with a

27   bellwether pool of sixteen. Alternatively, if the Court is inclined to permit Uber to select

28   substitute picks, the Court should enter a modified schedule for those cases that trails the original

1  16 (even if doing so removes the belated four from the initial trial pool).

2  **Defendant's Position:**

3  Each of Uber's bellwether picks are eligible for selection.  Plaintiffs' read of PTO 21 is:

4  (a) inconsistent with Judge Breyer's statements to the parties and with a plain reading of PTO 21;

5  (b) requires that 6 of Plaintiffs' cases also be deemed ineligible; and (c) would result in differing

6  bellwether candidate selection pools for the parties and is, therefore, patently unfair.

7  PTO 21 defined the bellwether eligible pool as cases that were "**either** [] filed in the

8  Northern District of California originally, **or** [] indicated in their short form or amended short

9  form complaint that they would have filed in the Northern District of California in the absence of

10  direct filing." ECF 1950, at 1 (emphasis added).  Each of the four Uber selections about which

11  Plaintiffs complain were originally filed in the Northern District of California.  As each case

12  meets the first requirement set forth in PTO 21, it is a bellwether eligible case.

13  The parties and Court previously discussed this issue, and the number of eligible cases, at

14  the November 6, 2024, Case Management Conference.  At that hearing, the parties confirmed that

15  there were 1,400 bellwether eligible cases.  (Court: "Do we have a breakdown . . . [of] how many

16  [cases] have been directly filed here and how many have been transferred here?  The reason that

17  is of significance is it avoids the *Lexecon* problem with respect to the direct filed cases."  Uber:

18  Roughly "26 cases out of that 1,425" were transferred.  Court: "That leaves 1,400 cases to choose

19  from."  Plaintiffs: "Right."  November 6, 2024 CMC Tr., 5-6, 22.)

20  Following that hearing, the parties submitted a Joint Bellwether Submission, which

21  included the following table:

| Category | Description | # of Cases |
|---|---|---|
| 1 | Cases filed elsewhere and transferred by JPML | 27 |
| 2 | Cases directly filed in this district with short form complaints designating other forums | 436 |
| 3 | Cases alleging non-California incidents with short form complaints designating N.D. Cal. | 977 |
| 4 | Cases alleging California incidents | 25 |

1       None of the four cases that Plaintiffs now take issue with were in the 27 cases that were

2   transferred.  Reading PTO 21 in the manner that Plaintiffs' now proffer would mean that the

3   bellwether eligible pool would have been 1,000 cases, not 1,400 cases as the Court and Plaintiffs

4   agreed at the hearing.

5       To the extent that Plaintiffs are now claiming that these Category 2 cases are bellwether

6   ineligible, then six (6) of Plaintiffs' cases are ineligible, as well, as they were originally filed in

7   the Northern District of California and designated other forums in their short form complaints.  If

8   filing a short form complaint designating another jurisdiction creates *Lexecon* rights (as Plaintiffs

9   argue), then *both* Plaintiffs *and* Uber have the ability to assert that right and demand the case be

10  tried in the alternative jurisdiction.  *Lexecon* rights flow from 28 U.S.C. § 1407, which

11  "authorizes the Judicial Panel on Multidistrict Litigation to transfer civil actions with common

12  issues of fact 'to any district for coordinated or consolidated pretrial proceedings,' but imposes a

13  duty on the Panel to remand any such action to the original district 'at or before the conclusion of

14  such pretrial proceedings.'"  *Lexecon Inc.* v. *Milberg Weiss Bershad Hynes & Lerach*, 523 U.S.

15  26, 28 (1998) (citation omitted).  It is well understood that if there are *Lexecon* rights to be

16  asserted under § 1407,  either party can assert them, and the rights cannot be waived unilaterally.

17  *E.g.*, Eldon E. Fallon et al., Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323,

18  2358 (2008) ("For cases transferred to the transferee court by the MDL Panel pursuant to § 1407,

19  the parties *must each* waive their *Lexecon* objections before that case can be set for trial."

20  (emphasis added)); *In re Depuy Orthopaedics, Inc.*, 870 F.3d at 348 ("An MDL court can try a

21  case where venue is improper if *the parties* waive *their* objections.  Such waivers are known as

22  '*Lexecon* waivers.'" (emphasis added)); *see also* Pretrial Order No. 6, ECF 177 at 2 ("Plaintiff'

23  *and Defendants'* agreement to this Order does not constitute a waive of *any party's* rights under"

24  *Lexecon*. (emphasis added)).

25      These six choices of the Plaintiffs' were clearly in Category 2 at the time of the December

26  5 Joint Bellwether Submission.  Plaintiffs now apparently argue that these cases are no longer

27  Category 2 cases because Plaintiffs amended the short form complaints to change the jurisdiction

28  Plaintiffs would have filed absent direct filing to the Northern District of California.  But, if there

is any *Lexecon* issue with respect to Category 2 cases, Plaintiffs cannot unilaterally cure that *Lexecon* issue by amendment of a short form complaint. Under Plaintiffs' theory, Uber's *Lexecon* rights attached at the time the case was admitted into the MDL, and Plaintiffs cannot waive Uber's *Lexecon* rights. Therefore, if the Court accepts Plaintiffs' new position that Category 2 cases are ineligible for selection as bellwethers, and that regardless of Pretrial Order No. 21's text, the purpose was to select cases that the Court could try, then the Court should also strike the following Plaintiff bellwether selections *because they cannot be tried in this District either*:

| Plaintiff | Case No. | MDLC ID | Original Short Form Complaint |
|---|---|---|---|
| Jaylynn Dean | 3:23-cv-06708 | 1046 | Filed 4/8/2024<br><br>Designated **Eastern District of Oklahoma** |
| A.G. | 3:24-cv-01915 | 1305 | Filed 3/28/2024<br><br>Designated **District of Oregon** |
| J.E. | 3:24-cv-03335 | 1375 | Filed 6/4/2024<br><br>Designated **Eastern District of Michigan** |
| B.L. | 3:24-cv-07940 | 2699 | Filed 11/13/2024<br><br>Designated **Western District of Texas** |

| Jane Doe QLF 001 | 3:24-cv-08783 | 2742 | Filed 12/5/2024<br><br>Designated **Northern District of Texas** |
|---|---|---|---|
| T.L. | 3:24-cv-09217 | 2749 | Filed 12/19/2024<br><br>Designated **Northern District of Georgia** |

Finally, Plaintiffs should not be rewarded for their blatant gamesmanship.  Principles of fairness and equity preclude Plaintiffs' atextual read of PTO 21.  If Plaintiffs are allowed to transform cases from Category 2 into Category 3 by simply amending their short form complaints, Plaintiffs effectively had a bellwether selection pool of 1,438 cases (as of December 5, 2024), whereas Uber's bellwether selection pool was only 1,002 cases.  Not only is this contrary to the prior statements of the Court and Plaintiffs, the plain text of PTO 21, and the bilateral nature of *Lexecon* rights - - it is patently unfair.  This fairness concern is not merely theoretical.  Plaintiffs amended the short form complaints in all six of the cases referenced in the above chart *after* the Court entered PTO 21.  Over half of Plaintiffs' picks are the type of Category 2 cases that Plaintiffs now argue Uber had no ability to select.  The Court should not allow Plaintiffs to read PTO 21 in such a way that would allow for such unfair gamesmanship

In short, if "PTO 21 says what it says," then Uber's cases are eligible because they were originally filed in the Northern District of California.  But if the Court accepts Plaintiffs' atextual interpretation of PTO 21 and wants to exclude cases that implicate *Lexecon* beyond those that were transferred into the MDL from another district, then the Court must also strike Plaintiffs' six bellwether selections set forth in the chart above.

Finally, the Court should reject Plaintiffs' position that if it were to determine that certain bellwether cases are ineligible, the Court should proceed with a smaller bellwether pool.  Case-

1  specific discovery does not open in the bellwether selection cases until March 14, 2025, PTO 21

2  at 4, and the Court anticipated both that there may be challenges to the eligibility of certain

3  bellwethers, January 24, 2025, CMC Tr. 5-6, and that replacement cases may need to be selected

4  in the event the original bellwether picks do not proceed, ECF 1950, at 2.  If the Court determines

5  that any members of the proposed bellwether pool cannot proceed, the Court should order the

6  party that selected that case to declare a replacement within two weeks of the Court's Order and

7  permit case-specific discovery to begin immediately thereafter.

8  **III.    General Discovery Updates**

9      The parties continue to engage in robust discovery efforts. The parties are scheduled to

10  appear before Judge Cisneros for a discovery status conference on the morning of February 27,

11  2025.  A joint statement on the status of discovery was filed on February 24, and includes an

12  overview of ongoing disputes. ECF 2380.

13  **IV.    Cutoff Date**

14      On February 21, 2025, Uber filed its Motion for a Filing Cutoff, requesting that the Court

15  establish a deadline for the filing of any additional claims in the MDL no later than 30 days from

16  its ruling on that motion. (The Motion at least requests that the Court require all MDL Plaintiffs'

17  counsel to identify any as-yet-unfiled cases in which they represent the claimants). The Court

18  granted Uber's administrative motion to shorten time on the briefing schedule and hear the matter

19  at this upcoming Case Management Conference. Plaintiffs continue to oppose Uber's request and

20  filed their response on February 26, 2025. ECF 2398.

21  **V.    Privilege Log Disputes and Special Master**

22      The parties continue to work through disputes concerning Uber's privilege designations.

23  Such matters have been referred to Special Master Hon. Barbara Jones.  ECF No. 2326.

24  **VI.    Settlement Special Master**

25      The parties continue to meet and confer concerning the appointment of a Settlement

26  Master, and can provide an update to the Court.

27  **VII.    Next Case Management Conference**

28      The next case management conference has been set for March 28, 2025, at 10:00am, via

1  videoconference. ECF 1990.
2

3  Dated: February 26, 2025                    **PAUL, WEISS, RIFKIND, WHARTON &**
4                                                   **GARRISON LLP**

5                                              By: */s/ Randall S. Luskey*
                                                   ROBERT ATKINS
6                                                  RANDALL S. LUSKEY
                                                   KYLE N. SMITH
7                                                  JACQUELINE P. RUBIN
                                                   JESSICA E. PHILLIPS
8                                                  CAITLIN E. GRUSAUSKAS
                                                   ANDREA M. KELLER
9

10                                             **SHOOK, HARDY & BACON L.L.P.**

11                                             By: */s/ Michael B. Shortnacy*
                                                   MICHAEL B. SHORTNACY
12                                                 PATRICK OOT
                                                   JEREMIAH S. WIKLER
13
                                               *Attorneys for Defendants*
14                                             UBER TECHNOLOGIES, INC.,
                                               RASIER, LLC, and RASIER-CA, LLC
15

16  Dated: February 26, 2025                    By: */s/ Sarah R. London*
                                                   Sarah R. London (SBN 267083)
17                                                 **GIRARD SHARP LLP**
                                                   601 California St., Suite 1400
18                                                 San Francisco, CA 94108
                                                   Telephone: (415) 981-4800
19                                                 slondon@girardsharp.com

20                                             By: */s/ Rachel B. Abrams*
                                                   Rachel B. Abrams (SBN 209316)
21                                                 **PEIFFER WOLF CARR KANE**
                                                   **CONWAY & WISE, LLP**
22                                                 555 Montgomery Street, Suite 820
                                                   San Francisco, CA 94111
23                                                 Telephone: (415) 426-5641
                                                   rabrams@peifferwolf.com
24

25

26

27

28

- 10 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

- 11 -

1

## **<u>FILER'S ATTESTATION</u>**

2

I, Sarah London, am the ECF User whose ID and password are being used to file this

3

document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories

4

identified above has concurred in this filing.

5

6

7

Dated: February 26, 2025                              By:      */s/ Sarah London*

8

Sarah London

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28