[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' BRIEF REGARDING DISPUTED ENTRIES FOR SPECIAL MASTER REVIEW** |
| This Document Relates to:<br><br>All Cases | Judge: Honorable Barbara S. Jones<br>Date: TBD<br>Time: TBD<br>Via: TBD |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

To date, Uber has asserted privilege over approximately <u>73,077</u> documents (prior to Uber removing numerous privilege assertions in response orders from Magistrate Judge Cisneros and per the process described below). Assessing Uber's privilege claims has been a game of whack-a-mole.

The basic problem has been that Uber, on the front-end, designates thousands of documents *en masse*, and only on the back end—after Plaintiffs have been forced to review and object to tens of thousands of log entries in a short time frame—conducts the type of "investigating and speaking with individuals" actually necessary to support a privilege claim. *See* 10/23/24 H'rg Tr. at 39, attached to the March 4, 2025 Declaration of Tiffany Ellis ("Ellis Declaration"), as <u>Exhibit 1</u> (M. Shortnacy describing Uber's process); *see also id.* at 34 ("[T]he quicker that we're putting logs together, the more conservative we need to be, the less we risk waiver…"). When confronted with particular documents that are plainly not privileged, Uber has withdrawn its privilege claims but failed to fully apply the Court's instructions more broadly and appropriately to the existing privilege logs.

After numerous meet and confers regarding selected log entries, Uber has withdrawn or modified its privilege assertions as to approximately <u>78%</u> of Plaintiffs' selected privilege challenges. *See* Privilege Challenge Chart, attached to Ellis Declaration, <u>Exhibit 2</u>.   And the Court has found numerous other documents or communications not privileged after in-camera review (and after Uber re-reviewed the documents and still maintained its improper privilege assertions).

Uber's failure to provide sufficient information about the documents it withholds due to specious privilege assertions has led to unnecessary delay, a waste of Plaintiffs' and the Court's

time and resources, and prejudice to Plaintiffs. Now, with depositions underway, Plaintiffs have been deprived of the ability to meaningfully and timely analyze what may be some of the most important materials in this case, which should have been produced at the latest over two months ago, in sufficient time to question those witnesses who may have knowledge of these documents.

## BACKGROUND

In order to address privilege log disputes and inefficiencies created by Uber's numerous unsubstantiated privilege assertions, the Court entered Discovery Management Order (ECF No. 1732), which set out a process for challenging Uber's privilege claims. The Court subsequently issued Pretrial Order No. 20 (Modified Schedule and Directives Regarding Production and Privilege Disputes)(ECF No. 1808) which separated custodians into Tranches and streamlined the privilege log dispute process. The Court ordered the parties submit privilege challenges in four separate tranches (based on custodial productions) *via* joint letters, with associated meet and confers to potentially resolve disputed privilege claims.

After numerous meet and confers which took place between October 2024 and January 2025 regarding selected log entries, Uber withdrew or modified its privilege assertions as to approximately *78%* of Plaintiffs' privilege selections. *See* Ellis Declarations at ECF Nos. 1812-1, 1952-1, 2091-1, 2089-1. In the majority of these cases, Uber fully withdrew its privilege claims; in the remainder, it agreed to produce documents with redactions. And this is on top of numerous overruled privilege claims in the Court's Clawback Order (ECF No. 1727) and Privilege Determination Orders (ECF Nos. 1908, 2005, and 2168), all of which only went to the Court *after* Uber re-reviewed the challenged documents to reassess its prior privilege assertions, as described herein.

Since Uber produced its first privilege log on April 16, 2024, it has withdrawn privilege

assertions on approximately <u>11,799</u> entries.[1] At bottom, the privilege review process to date shows there is reasonable inference that Uber "has been grossly overbroad on designations" so as to "warrant a comprehensive review of certain categories of documents." *See* 10/23/24 H'rg Tr. at 29, Ellis Declaration, Ex. 1.

### A. Tranche 1 Privilege Challenges

Uber initially provided four privilege logs within Tranche 1. The first privilege log, provided on September 14, 2024, contained 4,395 entries regarding Katherine McDonald's custodial file. Plaintiffs challenged 3,282 of these entries because they contained insufficient detail for Plaintiffs to assess Uber's privilege claim and/or because Uber's descriptions did not establish that the document or communication at issue was in fact privileged.

The second Tranche 1 privilege log, provided to Plaintiffs on September 15, 2024, contained 1,183 entries regarding Andi Pimentel's custodial file. Plaintiffs challenged 771 of these entries. The third Tranche 1 privilege log, provided to Plaintiffs on September 20, 2024, contained 2,839 entries regarding multiple custodial files. Plaintiffs challenged 1,886 of these entries. The final Tranche 1 privilege log, provided to Plaintiffs on September 25, 2024, contained 17,122 entries regarding multiple custodial files. Plaintiffs challenged 10,634 of these entries.

The parties submitted multiple rounds of samples during the meet and confer process regarding these privilege logs. <u>After conferring over several selected log entries, Uber withdrew or modified its privilege assertions as to approximately *90%* of Plaintiffs' initial privilege selections (covering 13 log samples), *100%* of Plaintiffs' second round selections (covering five log samples), and nearly *80%* of Plaintiffs' third round selections (covering 33 log samples).</u> *See* Ellis Declaration

---

[1] After Uber finally provided new and more complete information in its updated Privilege Logs or later production of documents with redactions, Plaintiffs removed challenges to over 4,100 entries prior to this re-review process.

at ECF No. 1812-1 ¶¶ 18, 22. In the majority of these cases, Uber fully withdrew its claim of privilege; in the remainder, it agreed to produce documents with redactions.

Subsequently, Plaintiffs submitted six samples to this Court for *in camera* review. On November 27, 2024, <u>the Court found that *five of these six* samples submitted to the Court were not privileged and needed to be produced in full or in part.</u> (ECF No. No. 1908.)

### B. Tranche 2 Privilege Challenges

Uber asserted privilege for approximately 14,292 entries regarding Tranche 2 Custodian documents. Out of 14,292 Tranche 2 privilege log entries, Plaintiffs challenged 5,611 entries. As before, assessing Uber's privilege claims was exceedingly difficult because Uber designates thousands of documents *en* masse, and only after Plaintiffs review and challenge tens of thousands of log entries within a short time span does Uber provide additional information to allow Plaintiffs to ascertain privilege claims.[2]

Regardless, Plaintiffs provided Defendants with 45 entries in dispute per the sampling process laid out in PTO 20. Defendants withdrew their privilege claim in whole or in part to 33 of the 45 samples. (*See* Ellis Declaration at ECF No. 1952-1.) <u>Thus, Uber agreed that approximately *73%* of the Tranche 2 samples were erroneously designated as privileged. Uber made this same concession as to appropriately *84%* of the samples Plaintiffs selected from the Tranche 1 privilege log.</u> (*See* Ellis Declaration at ECF No. 1812 at 1-2.) Again, Plaintiffs challenged 5,611 entries on the Tranche 2 log. Assuming 73% of those are also mis-designated, there are 4,096

---

[2] The Court noted these issues in its November 27, 2024 Order (ECF No. 1908) whereby the Court ordered Uber to provide updated privilege log entries with additional information regarding certain entries (*id.* at 9) and required Uber to "ensure that its privilege log descriptions are accurate and that attorneys are clearly identified." *Id.* at 10. The Court also noted "systemic errors" in Uber's privilege log entries, stating that log entries indicated that documents were "prepared at the direction of in-house counsel," but Uber did not provide evidence to support those assertions" and failed to properly designate all attorneys involved with the document in the "Privileged Name(s)" column. *Id.* at 15.

documents that Uber is (or was) improperly withholding.

As part of the PTO 20 process, after Uber withdrew privilege claims as described above, Plaintiffs submitted 13 samples to the Court for *in camera* review. On December 21, 2024, the Court found that <u>eight of the thirteen samples</u> were not privileged and must be produced in full or in part, including one sample Uber stated they would produce with redactions in their briefing. (ECF No. 2005.) The Court also ordered the parties to randomly select 20 Tranche 2 entries and 10 Tranche 3 entries for inclusion in the dispute process. (*Id.* at 14.)

### C. Tranche 3 Privilege Challenges

Uber asserted privilege for approximately 17,500 entries regarding Tranche 3 Custodian documents. Plaintiffs challenged 8,164 of the 17,579 entries. Plaintiffs also notified Uber of the 60 samples, and three attachments to emails, selected pursuant to PTO 20. The parties met and conferred, resolving certain issues and addressing the samples. <u>Of the 63 samples, Uber agreed to produce 37 documents in full and 15 documents with redactions, while only maintaining its privilege claims to 10 documents</u>. (*See* Ellis Declaration at ECF 2091-1.)

In sum, Uber agreed that approximately <u>*59%*</u> of the Tranche 3 samples were erroneously designated as privileged and altered their stance on approximately <u>*84%*</u> of the samples. Again, Uber made this same concession as to appropriately <u>*84%*</u> of the samples from the Tranche 1 privilege log and approximately <u>*73%*</u> of the samples from the Tranche 2 log. (*See* Ellis Declarations at ECF 1812-1 and at ECF 1952-1.) Plaintiffs challenged 8,164 entries on the Tranche 3 log. Assuming 84% of those are also mis-designated, there are approximately 6,800 documents that Uber previously improperly designated as privileged.

Additionally, on or about December 30, 2024, the parties randomly selected 20 Tranche 2 samples and 10 Tranche 3 samples for privilege review per the Court's prior order. (ECF No. 2087.) Defendants withdrew their privilege claim in whole or in part to <u>*12 of the 20*</u> randomly selected

Tranche 2 samples. (ECF No. 2089-1.) Plaintiffs withdrew their challenges to four of these samples. (*Id.*) As to the randomly selected Tranche 3 samples, Defendants withdrew their privilege claim in whole or in part *to seven of the ten* samples. (*Id.*)

On January 29, 2025, after *in camera* review, the Court held that two of the thirteen Tranche 3 samples and four of the six randomly selected Tranche 2 samples still at issue (and after Uber re-reviewed their privilege assertions as to these documents) were not privileged and must be produced in full or in part. (ECF No. 2168.)

**D.  Tranche 4 Privilege Challenges**

On December 11, 2024, Defendants provided their Tranche 4 privilege log containing 9,968 entries. Plaintiffs challenged 1,893 of these entries. However, on February 7, 2025, the Court granted the parties' stipulation vacating certain deadlines related to Tranche 4. (ECF No. 2307.) Consequently, these entries did not go through the PTO 20 dispute process.

On February 6, 2025, the Court entered an order appointing the Special Master. (ECF No. 2289.) Defendants were also ordered to re-review their Tranche 1-4 privilege logs and produce revised privilege logs. (ECF No. 2357.)

From February 3, 2025 to February 18, 2025, pursuant to the Special Master Order No. 2 ("MO 2"), Uber produced revised privilege logs for eight of the first thirteen custodians as set forth in ECF No. 2344 and Appendix A to MO 2.[3]

On February 24, 2025, Plaintiffs provided the Special Master and Defendants with a list of 372 remaining challenges to the initial disputed privilege log entries for those eight custodians following Defendants' re-review of the disputed entries. During the meet and confer process, Defendants withdrew their privilege claim in full as to 98 entries, which includes a few entries

---

[3] These custodians are Chad Fogg, Cory Freivogel, Nairi Hourdajian, Kate Parker, David Richter, Megan Joyce, Jenny Luu, and Kayla Whaling.

PLS. BRIEF REGARDING DISPUTED ENTRIES FOR
SPECIAL MASTER REVIEW
NO. 3:23-MD-03084

previously withdrawn before the conferral process. Additionally, Defendants stated they will produce 60 entries with redactions. When Defendants provided an updated revised log for the redacted entries, they withdrew their privilege claim to one additional entry. Plaintiffs also removed challenges to 80 entries. Accordingly, 193 entries for these eight custodians are still in dispute. The spreadsheets Plaintiffs provided Uber and the Special Master on February 27, 2024 and March 3, 2025 provide detailed reasons why Plaintiffs challenge each entry based on the limited information provided by Uber to Plaintiffs.

## **LEGAL STANDARD**

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. The parties agree that California law applies to Uber's claim of privilege. (ECF No. 664 at 2, 5, n.7); *see also Holley v. Gilead Scis., Inc.*, No. 18-cv-06972, 2021 WL 2371890, at *2 (N.D. Cal. June 10, 2021)(applying California choice-of-law rules to conclude that California privilege law applied in a case with "factual connections to multiple states," where no party introduced evidence of a conflict of laws or another state's governmental interest in applying its own law).

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code §§ 911, 954, 952. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009).

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). Where the "dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the

privilege." *Id*. "[R]outine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1504 (2007). And a corporation cannot "shield facts, as opposed to communications, from discovery. Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney." *Id*. Finally, "the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent." *Chi. Title Ins. Co. v. Superior Ct.*, 174 Cal. App. 3d 1142, 1151 (1985)(citing *Aetna Cas. & Sur. Co. v. Superior Ct.*, 153 Cal. App. 3d 467, 475 (1984)).

"Under California law, the communications of corporate employees with counsel, or with each other about legal advice, are privileged [] only to communications regarding legal advice, not corporate policy." *OwLink Tech., Inc v. Cypress Tech. Co., Ltd,* No. 21-cv-00717, 2023 WL 4681543, at *2 (C.D. Cal. June 29, 2023)(citing *Zurich*, 155 Cal. App. 4th at 1500-02). Where employees "discuss what business policies [a] corporation[] should pursue in the light of [] legal advice," *AdTrader, Inc. v. Google LLC*, 405 F. Supp. 3d 862, 865 (N.D. Cal. 2019)(citation omitted), such communications are not presumptively privileged. Business communications are not protected merely because they follow the provision of legal advice.

"It is established that otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *Zurich*, 155 Cal. App. 4th at 1504 (collecting cases). Communications involving in-house counsel "warrant[] heightened scrutiny because in-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters." *Wisk Aero*

*LLC v. Archer Aviation Inc.*, No. 21-cv-02450, 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023) quoting *Oracle Am., Inc. v. Google, Inc.*, No. 10-cv-03561, 2011 WL 3794892, at *4 (N.D. Cal. Aug. 26, 2011). Indeed, "a particular transmission of [a] draft directly to an attorney retained to provide legal advice would likely be privileged, but [if] Uber's privilege log and the margin comments on [a] document indicate that the same document was shared contemporaneously with both lawyers and non-lawyers, who edited it for content, style, accuracy, and public relations concerns in addition to assessing legal risk" it is not privileged.  (ECF No. 1908 at 6.)

Further, an entire communication may only be deemed privileged "when it contains privileged portions that are so inextricably intertwined with the rest of the text that they cannot be separated." *U.S. v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015)(citations and internal quotation marks omitted). "If the nonprivileged portions of a communication are distinct and severable, and their disclosure would not effectively reveal the substance of the privileged legal portions, the court must designate which portions of the communication are protected and therefore may be excised or redacted (blocked out) prior to disclosure." *Id.*

Finally, "[i]f a party withholds material as privileged ... it must produce a privilege log that is sufficiently detailed for the opposing party to assess whether the assertion of privilege is justified." *Prado v. Equifax Info. Servs. LLC*, 2019 WL 88140, at *3 (N.D. Cal. Jan. 3, 2019). Pursuant to Federal Rules of Civil Procedure 26(b)(5) and PTO 14, a party must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." If the asserted basis for a withholding or redaction is attorney-client privilege, the privilege log must be sufficiently detailed to allow a party to conclude that the communication was "between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021)(quoting *U.S. v. Sanmina Corp.*, 968

F.3d 1107, 1116 (9th Cir. 2020)). If the asserted basis for a withholding or redaction is work product, the privilege log must be sufficiently detailed to allow a party to conclude that the communications were "prepared by a party or [their] representative in anticipation of litigation." *Sanmina*, 968 F.3d at 1119 (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989)).

## **ARGUMENT**

Plaintiffs' submission to the Special Master details Plaintiffs' basis for challenging remaining privilege log entries still in dispute based on the limited information that Uber has provided to date, and following the immense time and resource consuming efforts detailed above. As to privilege claims still at issue, Uber has not met its burden showing that these documents are privileged. Plaintiffs are not challenging communications made solely with outside counsel or communications that objectively share or discuss attorney advice. Rather, per Uber's limited description as to each communication or document at issue, each was either (i) created primarily for business purposes (as opposed to a legal purpose), (ii) does not appear to seek, convey, or discuss legal advice (and with in-house counsel simply added to an email's cc line), or (iii) was sent to a third party (and privilege was therefore waived).

*First*, Plaintiffs challenge entries because the documents or communications at issue appear to have a dominant business purpose. These documents involve in-house counsel but, from the descriptions provided, contain both legal and non-legal purpose, and appear to have a dominant business purpose. And while "a particular transmission of [a] draft directly to an attorney retained to provide legal advice would likely be privileged, [if] Uber's privilege log and the margin comments on [a] document indicate that the same document was shared contemporaneously with both lawyers and non-lawyers, who edited it for content, style, accuracy, and public relations concerns in addition to assessing legal risk" it is not privileged. (ECF No. 1908.)

<u>*Second*</u>, Plaintiffs challenge entries where it is not apparent legal advice was sought or provided, and it appears Uber in-house counsel was simply added to an email's cc line.[4] Of course, sending documents to in-house counsel does not automatically render them privileged. *See Murray v. Mayo Clinic*, 2016 WL 10646315, at *3 (D. Ariz. July 20, 2016)("communications do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer.")(citation omitted)); *see also* ECF No. 1908 ("Multiple log entries indicated that documents were "prepared at the direction of in-house counsel," but Uber did not provide evidence to support those assertions. Uber therefore must review all entries that assert a document was prepared at the direction of counsel to determine whether they are accurate."). And "[m]erely copying or 'cc-ing' legal counsel, in and of itself, is not enough to trigger the attorney-client privilege. Instead, each element of the privilege must be met when the attorney-client privilege is being asserted." *Stirratt v. Uber Techs., Inc.*, 2024 WL 1723710, at *3 (N.D. Cal. Apr. 19, 2024)(internal citation omitted).

For example, for numerous log entries it appears an in-house counsel was simply cc'd on an email along with numerous non-attorneys, with no legal advice sought or given provided -- not only on the individual log entry, but for every entry Defendants logged for a particular email chain. Hence, there are numerous entries with multiple non-attorney email recipients, but with only one in-house counsel on a cc line. Such communications are likely not privileged. *See, e.g., In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, No. 09–md–2032, 2011 WL 3268091, at *4

---

[4] According to one former senior executive, Uber employees were apparently instructed "to conceal documents [] by attempting to 'shroud' them with attorney-client privilege or work product protections. [I]f they marked communications as 'draft,' asked for a legal opinion at the beginning of an email, and simply wrote 'attorney-client privilege' on documents, they would be immune from discovery." *See Waymo LLC v. Uber Techs., Inc.*, Case No. 3:17-cv-00939-WHA, Dkt. 2401-1, at 6-7 (Dec. 15, 2017), Ellis Declaration, <u>Exhibit 3</u>.  So while the mere stamping of a document privileged does not make it so as a general matter, the Court should be especially skeptical of the prima facie validity of such assertions here.

(N. D. Cal. July 28, 2011)("Merely labeling a communication as an 'attorney-client privileged draft' ... or adding an attorney as a recipient are insufficient to confer privilege when the communication is not otherwise for the purpose of facilitating legal advice or services."); *Oracle Am., Inc. v. Google Inc*., 2011 WL 5024457, at *4 (N. D. Cal. Oct. 20, 2011)(finding that nothing in the content of an email indicated that it was prepared in anticipation of litigation or to further the provision of legal advice, where email was from an engineer, the salutation of the email addressed only a non-attorney, the attorney was "at most, was a mere 'To' " recipient, and "there was no evidence that the [attorney] actually read or responded to the email, much less used it in constructing any legal advice"); *U.S. v. ChevronTexaco Corp*., 241 F.Supp.2d 1065, 1074–76 (N.D. Cal. 2002)("[b]ecause in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel.").

*Third*, Plaintiffs challenge Defendants' privilege log entries where no attorney is associated or involved with the communication or document at issue. If the asserted basis for withholding or redaction is attorney-client privilege, the privilege log must be sufficiently detailed to allow Plaintiffs to conclude that the communication was "between attorneys and clients, which are made for the purpose of giving legal advice." *In re Grand Jury*, 23 F.4th at 1091 (internal citation omitted). In numerous instances, without an attorney denoted, Plaintiffs cannot conclude that the communication was actually between an attorney and clients where legal advice was sought or provided. Such entries include where Uber denoted a non-attorney as the person providing legal advice.

And for privilege log entries where Defendants did not denote any attorneys, but simply listed "Uber Legal Department", Defendants must amend these entries. *See* ECF No. 1908 (Uber's references only to "Uber Legal Department" are "unhelpful[ly]" ECF. No. 1908 at 15 ("Multiple

1    log entries failed to list all attorneys involved in a document in the "Privileged Name(s)" column

2    despite the apparent involvement of one or more attorneys, or failed to designate all attorneys listed

3    in other fields with an asterisk. Uber shall review all log entries that do not include any attorneys

4    in the "Privileged Name(s)" column to determine whether the lack of names in that column is

5    accurate and whether any attorneys listed in other columns for those entries are properly

6    designated."); *see also Palmer v. Cognizant Tech. Solutions Corp*., 2021 WL 3145982, at *9, 12

7    (C.D. Cal. July 9, 2021)(ordering defendant to amend privilege log when "Cognizant Legal

8    Department" is the only listed basis for privilege).

9

10        *Fourth*, Plaintiffs challenge entries where the communication included a third party. When

11    Defendants include a third party on a document or communication, the attorney-client relationship

12    no longer exists. "Under the attorney-client privilege, it is a general rule that attorney-client

13    communications made 'in the presence of, or shared with, third parties destroy the confidentiality

14    of the communications and the privilege protection that is dependent upon that confidentiality.'

15    Similarly, as discussed below, the work-product privilege may be waived by disclosure to third

16    parties which results in disclosure to an adversary party." *Nidec Corp. v. Victor Co. of Japan*, 249

17    F.R.D. 575, 578 (N.D. Cal. 2007) (quoting 1 Paul R. Rice, Attorney–Client Privilege in the United

18    States § 4:35, at 195 (1999 ed.)). These challenged third party entries involve parties that

19    Defendants did not identify on its "Third Party Digest" which it provided Plaintiffs on December

20    14, 2024 and, as such, no attorney-client relationship exists.

21

22        *Finally*, Plaintiffs challenge entries where Defendants claim work product privilege, but the

23    document or communication at issue was not created by an attorney or in anticipation of litigation.

24    F.R.C.P. 26(b)(3) shields attorney work product from discovery that is prepared by or for a party

25    or its representative in anticipation of litigation. Generally, a document must be "deemed prepared

26    in anticipation of litigation" if, "in light of the nature of the document and the factual situation in

27

28

the particular case, the document can be fairly said to have been prepared or obtained because of

the prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 907 (internal citation omitted).

"When it is clear that documents would have been prepared independent of any anticipation of use

in litigation (i.e., because some other purpose or obligation was sufficient to cause them to be

prepared), no work product protection can attach." *First Pacific Networks, Inc. v. Atlantic Mut. Ins.

Co.*, 163 F.R.D. 574, 582 (N.D. Cal. 1995). Here, Plaintiffs challenge entries where Uber claimed

work product privilege but did not support its assertions with details showing the document was

created in anticipation of litigation by an attorney.

## **CONCLUSION**

For the reasons stated herein and in Plaintiffs' other submissions to the Special Master, Uber

has not met its burden showing that disputed documents or communications at issue are privileged

and such documents or communications should be immediately produced.

Dated: March 4, 2025                     Respectfully Submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY
& WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

PLS. BRIEF REGARDING DISPUTED ENTRIES FOR
SPECIAL MASTER REVIEW
NO. 3:23-MD-03084

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/Roopal Luhana