Pages 1 - 51

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Lisa J. Cisneros, Magistrate Judge

IN RE: UBER TECHNOLOGIES,       )
INC., PASSENGER SEXUAL ASSAULT )
LITIGATION.                     )
                                )   **NO. 3:23-md-03084-CRB (LJC)**
                                )
_____)

San Francisco, California
Wednesday, October 23, 2024

**TRANSCRIPT OF PROCEEDINGS BY ZOOM WEBINAR**

**APPEARANCES BY ZOOM WEBINAR:**

For Plaintiffs:

        CHAFFIN LUHANA LLP
        600 Third Avenue  - 12th Floor
        New York, New York  10016
      **BY:  ROOPAL P. LUHANA, ATTORNEY AT LAW**

        PEIFFER WOLF CARR KANE CONWAY & WISE LLP
        555 Montgomery Street - Suite 820
        San Francisco, California  94111
      **BY:  RACHEL B. ABRAMS, ATTORNEY AT LAW**

        PEIFFER WOLF CARR KANE CONWAY & WISE LLP
        2229 Trumbull Street
        Detroit, Michigan  48216
      **BY:  TIFFANY R. ELLIS, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Stenographically Reported By:
Kelly Shainline, CSR No. 13476, RPR, CRR
Official Stenographic Reporter

1    **APPEARANCES BY ZOOM WEBINAR:   (CONTINUED)**

2    For Plaintiffs:

3                      NIGH GOLDENBERG RASO & VAUGHN, PLLC
                       14 Ridge Square, NW - Third Floor
                       Washington, D.C.  20016
4            BY:  **MARLENE J. GOLDENBERG, ATTORNEY AT LAW**

5                      JOHNSON LAW GROUP
                       2925 Richmond Avenue - Suite 1700
6                      Houston, Texas  77098
             BY:  **BRET D. STANLEY, ATTORNEY AT LAW**
7
                       WILLIAMS HART & BOUNDAS, LLP
8                      8441 Gulf Freeway - Suite 600
                       Houston, Texas  77017
9            BY:  **BRIAN A. ABRAMSON, ATTORNEY AT LAW**

10   For Defendants:

11                     SHOOK, HARDY & BACON LLP
                       2121 Avenue of the Stars - Suite 1400
                       Los Angeles, California  90067
12           BY:  **MICHAEL B. SHORTNACY, ATTORNEY AT LAW**
                  **VERONICA G. GROMADA, ATTORNEY AT LAW**
13
                       SHOOK, HARDY & BACON LLP
14                     1800 K Street, NW
                       Washington, D.C.  20006
15           BY:  **PATRICK L. OOT, ATTORNEY AT LAW**

16                     PAUL, WEISS, RIFKIND, WHARTON
                         & GARRISON LLP
17                     535 Mission Street - 24th Floor
                       San Francisco, California  94105
18           BY:  **MARC PRICE WOLF, ATTORNEY AT LAW**

19                     PAUL, WEISS, RIFKIND, WHARTON
                         & GARRISON LLP
20                     1285 Avenue of the Americas
                       New York, New York 10019
21           BY:  **LOUIS MURRAY, ATTORNEY AT LAW**

22

23

24

25

| | |
|---|---|
| 1 | **Wednesday - October 23, 2024**                          **9:41 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  The U.S. District Court is now in session. |
| 5 | The Honorable Magistrate Judge Lisa J. Cisneros presiding. |
| 6 | We are calling 23-md-03084, In Re: Uber Technologies, Inc. |
| 7 | We'll start with counsel for the plaintiffs.  Please state |
| 8 | your appearances, and we'll start with Ms. Luhana. |
| 9 | **MR. LUHANA:**  Good morning, Your Honor.  Roopal Luhana, |
| 10 | Chaffin Luhana, for the plaintiffs.  Nice to see you. |
| 11 | **THE COURT:**  Okay.  Good morning. |
| 12 | **MS. ABRAMS:**  Good morning, Your Honor.  Rachel Abrams |
| 13 | from Peiffer Wolf for the plaintiffs. |
| 14 | **THE COURT:**  Okay.  Good morning. |
| 15 | **MS. GOLDENBERG:**  Good morning, Your Honor.  Marlene |
| 16 | Goldenberg from Nigh Goldenberg Raso & Vaughn for the |
| 17 | plaintiffs. |
| 18 | **THE COURT:**  Good morning. |
| 19 | **MS. ELLIS:**  Good morning.  Tiffany Ellis from Peiffer |
| 20 | Wolf for the plaintiffs. |
| 21 | **THE COURT:**  Good morning. |
| 22 | **MR. STANLEY:**  Good morning.  Bret Stanley with Johnson |
| 23 | Law Group for the plaintiffs. |
| 24 | **THE COURT:**  Okay.  Good morning. |
| 25 | **MR. ABRAMSON:**  Good morning.  Brian Abramson with |

1    Williams Hart & Boundas for the plaintiffs.

2          **THE COURT:**  Okay.

3          **THE CLERK:**  And then we'll start with the defendants.

4    We'll go with Mr. Shortnacy.

5          **MR. SHORTNACY:**  Good morning, Your Honor.  Michael

6    Shortnacy from Shook, Hardy & Bacon appearing today for the

7    Uber defendants.  I have with me my colleagues from Shook,

8    Veronica Gromada and Patrick Oot; as well as my colleagues from

9    the Paul Weiss firm, Marc Price Wolf and Louis Murray.

10         **THE COURT:**  Okay.  Good morning, everyone.

11   So I want to start by talking about the production

12   schedule and the schedule for privilege log disputes and start

13   there.

14   So to begin with, you know, discovery is an iterative

15   process, so I don't see any problem with my revising what I

16   ordered previously in terms of schedule for privilege log

17   productions and the submission of disputes.  Especially I may

18   need to modify what the original plans were in those earlier

19   orders in light of how many disputes -- or I don't know exactly

20   how many disputes plaintiffs may wish to submit but, you know,

21   now that we have a bigger sense of the number of privilege log

22   entries, you know, it's quite significant so I think we'll have

23   to adjust accordingly.

24   But I am concerned that the approach that plaintiffs seem

25   to be proposing, which is let's have all of the privilege log

1  disputes resolved before depositions begin, is not -- is not

2  going to be practical to the extent that JCCP, they've got a

3  discovery cutoff in January, January 15th.  So it just may not

4  be feasible to -- it's not likely to be feasible that all of

5  the dispute -- the privilege log disputes will be resolved for

6  depositions before particular individuals are taken.

7      So all of that said, I think the trouble I'm having with

8  Uber's proposal is it seems to -- I don't know if this order in

9  terms of which custodians or in which tranche have been

10  informed at all by plaintiffs.

11     Plaintiffs should have some say as far as what witnesses

12  they're prioritizing.  And then, you know, plaintiffs should

13  have an opportunity to depose again for those -- to the extent

14  there's witnesses who don't have their privilege log disputes

15  resolved entirely before their deposition, I think plaintiffs

16  are in a strong position to ask for a second deposition if

17  there are ultimately documents that are dedesignated that they

18  didn't have an opportunity to question the witness about.

19     So anyhow, there's a lot of moving pieces here, but I'm

20  going to formulate some sort of order that's probably a -- that

21  is -- takes some of the ideas and the concerns that parties on

22  both sides have and then also gives me enough time to resolve

23  the disputes.

24     It should go without saying that any dispute that I've

25  resolved thus far as the sample of privilege log disputes, in

order for that exercise to be useful, Uber is going to have to take my order and should have taken the order from the -- on the clawback issue and applied it to all of the -- all of the privilege log entries, you know, that kind -- that present a similar type of issue.

So I don't know that Uber was really disputing what plaintiffs were saying in that regard, but if there was a dispute, you know what my thinking is now. You know, take my order and use that as a basis for understanding how I'm viewing how the privilege applies here and ensure that it's consistently applied to all of the custodians' records and the document discovery more generally.

**MR. SHORTNACY:** Would you like --

**THE COURT:** So --

**MR. SHORTNACY:** Judge, would you like me to speak to that or would you -- I didn't want to interrupt your flow as you're teeing up issues.

**THE COURT:** Well, I guess what I wanted to ask the plaintiffs is: The way -- you know, it sounds like you-all were potentially in a good position for at least the second tranche. Nine have been produced. The custodial records for nine individuals have been produced based on what I read that was filed yesterday. That new discovery letter seems to suggest that nine -- that there's been a production of the nine but the individuals Matt Baker to Kate Parker, this is -- so I

1  think -- I just want to know what the status is as far as what

2  productions were going to happen this week because Matt Baker,

3  Cory Freivogel -- there are a group of nine individuals who

4  Uber was prepared -- or who had proposed producing on

5  October 21st.

6      So what's the status?  I didn't impose an order to do

7  that, but it sounds like Uber was in a position to do that.

8      **MR. SHORTNACY:**  Yeah, Judge.  Michael Shortnacy

9  speaking for Uber.

10      Subject to being corrected on this phone call, I believe

11  that Uber did make a production yesterday that included those

12  tranche custodians.  And to clarify --

13      **THE COURT:**  That would have been a second tranche;

14  right?

15      **MR. SHORTNACY:**  Correct, the second tranche.

16      **THE COURT:**  Okay.

17      **MR. SHORTNACY:**  And to clarify, those tranches were

18  established with coordination with plaintiffs.  In other words,

19  they were, I think, originated with the JCCP counsel, but I

20  think every of the counsel of the leadership on MDL have now

21  bought in to sort of a common terminology.  So the tranches in

22  priority are not set by Uber but have been the process of an

23  ongoing meet and confer on both sides, JCCP and MDL, and are at

24  least within the tranche agreed upon across all sides.

25      **THE COURT:**  Okay.

1        **MR. SHORTNACY:**  And if I -- could I make one other

2    point, Judge?

3        We had -- we were before Judge Schulman yesterday for a

4    status conference, and so I think he expressed some willingness

5    to provide some movement to the cutoff date in January and

6    encouraged the parties to meet and confer on that.

7        And so I wanted to just raise that to the Court's

8    attention right away because I think some of the competing

9    provisions from both sides sort of kind of swirl around the sun

10   of a sacrosanct January 15th deadline in the JCCP that would be

11   driving elements of cooperation and coordination, and I

12   think -- I wanted the Court to be aware that there is the

13   possibility of some slight movement to that that may kind of

14   decompress some of the disputes swirling around kind of the

15   November, December, January time period that we're dealing

16   with; and that development just happened yesterday morning and,

17   you know, wanted you to be aware of it.

18           **THE COURT:**  Okay.

19       **MR. LUHANA:**  Judge, Roopal Luhana for the plaintiffs.

20       Can I address some of the things you've raised?

21       What the plaintiffs have proposed is two schedules.  The

22   first schedule is not only addressing the privilege log

23   disputes but resolving them and providing a timeline to do so.

24       And then the second critical part that we've raised is a

25   timeline for Uber to dedesignate privilege log designations

1    across the board before the prior logs as well as future logs

2    importantly.

3        So our timeline, the way it would work is we would tee up

4    on a monthly basis privilege log disputes to the Court; and if

5    the Court is agreeable, within three weeks of that timeline to

6    hear us and potentially, you know, issue an order to which Uber

7    10 days later would dedesignate documents in time two weeks

8    before the deposition.

9        And the critical issue here is, what we're seeing right

10    now with the productions, and we put it in Exhibit A to the JSR

11    we filed on October 17th, the productions as we're seeing them

12    are extremely anemic.  Right?  We had anticipated hundreds of

13    thousands of documents being produced in light of the initial

14    numbers that were presented to us previously.

15        However, what you're seeing is thousands -- so they go

16    through the documents -- the documents go through the process

17    of, like, the search terms being applied, this cloak process of

18    TAR that we're going to get transparency on, hopefully, later,

19    and then they come into a pool of documents.  And then what

20    we're seeing, even the pool of documents, which is thousands of

21    documents, sometimes tens of thousands of documents, 30 percent

22    of those documents are being placed on the log.

23        And these documents based on the scorecard that we've been

24    keeping since we've been teeing up these issues with the

25    defendants are largely improperly designated.  Every time we

1  raise this with Uber, and your clawback order is an example,

2  100 percent of those documents were dedesignated by Uber that

3  were teed up.

4      Then going forward we had other disputes.  There was a

5  September 25th log that Uber had submitted and we had

6  challenge; and if you look at that, 60 percent of the documents

7  were dedesignated and they're reassessing 40 percent.

8      Frankly, even the dispute that we're teeing up for this

9  Friday for you, we submitted ten documents to Uber and nine of

10  them have been dedesignated.  Then we sent them replacements,

11  five replacements, just yesterday or today; five of them have

12  been dedesignated.  All of them, 100 percent.

13      So what's going on right now is there are a lot of

14  designations that have been done and they're improper.  And

15  what we're seeing importantly, like, if you look at our

16  schedule, Exhibit A, that we included, if you look at Jill

17  Hazelbaker, she was at Uber for about nine years.  They

18  produced less than 3,000 --

19      **THE COURT:**  I want to -- I think you've made your

20  concerns very clear, and I understand your -- the plaintiffs'

21  skepticism about many of these privilege log entries, but I

22  think that what I want to focus on is:  What is a realistic

23  schedule?

24      And I think the principle that plaintiffs seem to be

25  pushing in how to schedule this is that for any particular

custodian who is deposed, that the privilege log disputes need
to be fully resolved.  I don't know that that is feasible here,
but what I think is feasible is for plaintiffs to identify
those custodians that they want at the front of the line.

And I think what I appreciate from the plaintiffs'
proposal is giving me some more time to decide the disputes but
also clarity for Uber as far as how quickly the dedesignations
need to happen before the depositions.

But whether or not that -- it seems we need to all be
cognizant of the possibility that there will be some custodians
for whom the privilege log disputes might not be finished by
the time that the deposition happens, and that's possibly
because of the schedule that is bounded by the deadline in the
JCCP, but I would be willing to give the MDL plaintiffs an
opportunity to do a second deposition.

That's still -- it's still messy.  I think I could see
problems for both sides, inefficiencies in that regard, so we
should try to avoid it.

But what -- can plaintiffs -- if we set the next tranche
for production for next month, can plaintiffs select who is
most important?  Because basically the order that Uber has
proposed just seems like the order of which custodians they
were agreeable and at the very back end are the ones that I
ruled on in my order deeming certain individuals custodians.

So, yeah.  And so what I would like to do is tee up, like,

1    the next tranche.  I'm assuming -- the second one got produced,

2    so those -- there should be some privilege logs submitted for

3    them and then there's November.  Nothing was proposed in Uber's

4    schedule as far as December productions, but I think we've got

5    to keep this moving.  So there's going to have to be

6    productions and privilege log -- a service of privilege logs in

7    December and, you know, a response from plaintiff.

8        So set the margins.  I'm going to set up a sequencing and

9    a timing that makes sense, but it's not going to be easy and

10   that's just the reality of litigation and particularly in

11   complex litigation.  So --

12       **MR. SHORTNACY:**  Judge, can I speak to some issues that

13   have been raised to help clarify a few things?

14       I think -- I don't want to get into a back and -- I

15   appreciate Your Honor is trying to be pragmatic and solve

16   disputes, but I do feel like I need to respond to a few things

17   Ms. Luhana has said.

18       There were two documents that Uber withdrew privilege

19   assertions on that were the subject of the clawback; and to say

20   that's 100 percent of two, I suppose that's true, but I want to

21   clarify that.

22       In connection with that exercise, Uber did go back and has

23   dedesignated out of the log 650 documents that were placed on

24   the log and sort of in light of some of the concepts of to the

25   extent there could be rules gleaned from the clawback order.

1    So that's something that we are doing and certainly doing going

2    forward.  Of course, it's much easier to implement things going

3    forward than to redo, but we're doing it on both sides.  So I

4    just want the Court to be aware of that.

5        Second, we were talking with plaintiffs in a

6    meet-and-confer today just in the minutes before this

7    conference to try to, you know, work together to choose

8    exemplars that the Court may rule on that can give clear

9    guidance.

10        And it's difficult in some cases because these documents

11    are unique.  They turn on very specific factual circumstances

12    that require us to kind of investigate behind the scenes.  If a

13    lawyer is not present on the communication, it doesn't make it

14    not privileged; like, it doesn't make it privilege.  There are

15    factors that -- and sort of behind the scenes maybe advice was

16    the genesis of the e-mail, and so on and so forth.

17        And so we were talking with plaintiffs about choosing

18    examples that may provide bright-line rules that could be

19    applied.  So that's an idea that we're talking about that I

20    think could be effective for the Court in moving this forward.

21        And the last thing I want to just clarify is the reason

22    that there appear to be numerous challenges on the front end is

23    at least twofold and maybe three.

24        One is, there are not as many challenges as plaintiffs say

25    because of the e-mail threading issue.  Plaintiffs say there

 1    are 30,000 log entries --

 2          **THE COURT:**  I think you wrote about this in --

 3          **MR. SHORTNACY:**  Okay.  Fair.  Okay.  So there's a

 4    numbers issue.

 5          It's also the beginning of the process and like any

 6    process, there's continuous improvement.  And so with

 7    privilege, it is necessary to err on the side of caution lest

 8    you risk waiver.  So there's going to be more at the beginning,

 9    and so this process of exemplar selecting and dedesignation I

10    think is important and contemplated in the pretrial orders.

11          The last thing I'll say, if you'll permit, is that the

12    reason -- the third reason that there are many privilege log

13    entries is because of the concentration of who the custodians

14    are.

15          The first custodians to be deposed, the first custodians

16    that the plaintiffs have focused on are the most likely to have

17    interacted with counsel.  And so because of their roles and

18    their involvement in the safety report and other aspects of the

19    business, they happen to be heavily involved with counsel in

20    their day-to-day jobs.

21          And so all of those things sort of swirl together I think

22    to kind of show why we are where we are; and I think to your

23    point, Judge, in sort of moving forward I think we're seeing a

24    process of dedesignation go forward and fewer entries being

25    placed on the log.  So I just wanted to clarify that for the

```
 1    Court.
 2              THE COURT:  Thank you.
 3              MR. LUHANA:  Judge, can I just say one --
 4              THE COURT:  Yeah.  My question for you, Ms. Luhana,
 5    is:  In terms of that schedule that plaintiffs proposed, the
 6    sequencing, the order of the custodians across these different
 7    tranches, does this reflect -- I was assuming that it doesn't
 8    reflect plaintiffs' preferred priority or which custodians you
 9    think are the most important on the production, but maybe I'm
10    wrong.
11              MR. LUHANA:  It doesn't.  Yeah, what we were thinking
12    is:  You've set a deadline for October 25th to proceed, and so
13    that's where the nine custodians.  And so how we set it up is
14    depositions for those nine can be scheduled post-December 9th
15    because presumably Uber -- I heard Mr. Shortnacy to say that
16    they're going to apply your orders going forward.  However,
17    they need to be applied going back as well because there are
18    categorical privilege designations that they are making.
19         And so the bright-line rules, once the Court adopts them
20    and agrees with us in terms of dedesignating documents, that
21    has to be done going back and forward.  So there has to be a
22    clear process for Uber to dedesignate docs -- documents once it
23    receives guidance from the Court.
24         In terms of how we were envisioning this process working,
25    Judge, so October 25th, as I said, we've teed up those nine
```

```
1   custodians.  That matter would be resolved after -- you know,

2   by December 9th.  Uber would produce all the -- by

3   November 25th, Uber would produce all the dedesignated

4   documents and then we have time to review them, and all those

5   depositions proceed by December 9th or thereafter.

6        And then the next --

7            THE COURT:  And you're talking about just -- you're

8   talking about the nine individuals, Katie McDonald through Nick

9   Silver --

10           MR. LUHANA:  Correct.

11           THE COURT:  -- on this list?

12           MR. LUHANA:  And then, Judge, there haven't been any

13  other logs that have been produced for any of the custodians

14  yet.  Uber has said for the two custodians it's going to

15  produce by October 24th, by tomorrow; and then the third

16  tranche, which would be nine custodians, aren't going to be

17  produced till November 15th.

18       And so then they have logs being produced November 15th,

19  logs being produced for 17 folks December 12th, and then logs

20  being produced further proposed schedule for 18 January 24th.

21       So as we are envisioning it, every month we tee up

22  privilege log disputes and focus them on individuals we want to

23  depose with the Court.

24       So November 25th would be another timeline for plaintiffs

25  to submit challenges.  December 16th would be another timeline.
```

1    January 22nd, February 24th.  So on a monthly basis we can

2    submit the proposal, and we'd alter it some in light of some

3    holidays to give all, you know, parties some time and

4    flexibility during the holidays, but that's how we would

5    envision it and teeing up disputes as appropriate for

6    custodians we want to depose.

7         And the concern, Judge, really for us is we don't want to

8    rush to coordinate to take depositions with incomplete

9    productions to the detriment of --

10        **THE COURT:**  I understand that.  But my question is:

11   For the next group -- you've got the nine and then there's

12   another set of nine --

13        **MR. LUHANA:**  That won't happen till -- the other set

14   of nine, the two plus nine, they're not producing privilege

15   logs until November 15th.

16        **THE COURT:**  Right.  But that's already underway, so

17   perhaps I don't disturb that group sort of like midway through

18   the process.

19        But for the December 12th service of privilege logs, and

20   that production would happen on November 26th, that's more than

21   a month away, perhaps for that group plaintiffs select who they

22   think ought to be prioritized.

23        **MR. LUHANA:**  Sure.  And the plan would be by

24   January 22nd to tee up all those, the folks that we want to

25   depose, and tee them up a month later.  That gives us time to,

1    you know, review the logs, meet and confer with defendants.

2    Because at that point by December 12th, you're looking at at

3    least 26, 27 custodians that are in the mix at that point --

4    right? -- that have been -- privilege logs have been produced

5    for because there are 2 that are being produced October 24th, 9

6    that are being produced November 15th, and then another 17 that

7    are being produced December 12th.

8         THE COURT:  Okay.  But the ones that are produced on

9    December 12th, do you have ready to go a list of people who you

10   would want?

11        MR. LUHANA:  We haven't even received their

12   productions.  I mean, we can speculate as to who we want, but

13   those productions are coming in November 26.  So this --

14        THE COURT:  Yeah, that's what I mean.  The productions

15   are based on kind of a list of people that Uber identified to

16   prioritize for November 26th.

17        MR. LUHANA:  Yes.

18        THE COURT:  Or did -- Mr. Shortnacy is shaking his

19   head.

20        MR. SHORTNACY:  Sorry.  No.  No.

21        MR. LUHANA:  I mean, it was --

22        MR. SHORTNACY:  We proposed the dates for completion

23   of production, yes, but the tranches in Uber's chart at

24   ECF 1774-2, the blue names are a tranche of custodians that I

25   believe the JCCP counsel had originated are sort of the strata

1    or tranches, and they have become adopted by the MDL.

2        Within that, Ms. Luhana may have a priority of the blue --

3    a subset of the blue custodians, but the genesis of the colors

4    on the chart is the JCCP counsel's priority in selection that

5    has been adopted by MDL.

6        **THE COURT:**  Okay.  Well, JCCP counsel is not running

7    this MDL.  Ms. Luhana and her colleagues are.

8        Are there a different set of custodians that ought to be

9    produced, Ms. Luhana, on November 26th?

10       **MR. LUHANA:**  Well, now that we have the 18 -- there

11   were 18 custodians that were previously disputed.  They're no

12   longer disputed, so I would have to confer with our team and

13   see if there are folks that we want to prioritize earlier on.

14       **THE COURT:**  Okay.

15       **MR. SHORTNACY:**  Judge --

16       **THE COURT:**  Go ahead.

17       **MR. SHORTNACY:**  -- if I could just say, I mean, the

18   reason that those custodians are last is because they were just

19   resolved by the Court's order; and so some of them were just

20   collected, and so they by default have to be in the tail end.

21   That's not to say we wouldn't consider working with Ms. Luhana

22   about a prioritization, but there's some limits because certain

23   of them were not collected until the order was resolved.  And

24   so I just offer that.

25       And, I mean, again, if we're talking about choosing

 1   priorities within the colored bands, that's certainly something

 2   that we're working -- or will be willing to work with

 3   plaintiffs on.  It's just that those bands were -- when I said

 4   they were chosen by the JCCP, I think they have informed a

 5   lexicon that both the JCCP and MDL counsel have adopted as sort

 6   of a framework to talk about the custodians.  That's what I

 7   meant.

 8       And I appreciate that the MDL counsel is a unique and

 9   separate entity running this litigation, but it has informed

10   all of the parties' discussions to date.  So I just didn't want

11   to leave the impression that this is like Uber's prioritization

12   or plan.  This is something that we have all been working

13   towards.

14           THE COURT:  Okay.  So now you-all know I want to do a

15   sampling approach here, and I issued an order to that effect

16   previously.  But, you know, how many -- given the number of log

17   entries for each custodian, I mean, there's thousands, how many

18   log entries are the parties proposing that I address per

19   witness or do I handle it per tranche, you know?

20           MR. LUHANA:  Judge, I believe -- can I speak?

21           THE COURT:  Go ahead, Ms. Luhana.

22           MR. LUHANA:  There were about 30,000 entries,

23   privilege log entries, for the first nine.  Plaintiffs have

24   challenged over 17,000 of those entries, and so we can tee --

25           THE COURT:  I can't decide 17,000.

1      **MR. LUHANA:** Of course.  No, no, no.  I understand

2  that.  But my point is we've teed up across the board.  These

3  are really privilege designations that can be handled across

4  the board.  They don't necessarily have to be custodian

5  specific because there are issues that we're seeing that should

6  apply across the board if you decide these documents should be

7  dedesignated.

8      So currently we have one document in dispute from the

9  plaintiffs' perspective for the October 25th submission because

10  Uber has decided to dedesignate all the documents.  And so we

11  continue to reup and send them more submissions; however, we've

12  asked for a simultaneous exchange of the PTO 8 letter by

13  tomorrow in light of the back and forth.

14      So we can tee up for Your Honor perhaps some bright-line

15  rules for documents that Uber has dedesignated and give you

16  those examples, and you can utilize that to make a decision on

17  where they stand.  And hopefully based on your order, Uber can

18  use that to narrow entries going forward as well as reviewing

19  entries of the past to dedesignate.

20      **MR. SHORTNACY:** Judge, I would just say, I mean, this

21  is putting a lot on your shoulders and on your plate in a way

22  that's teeing up multitudes of disputes over privilege logs

23  that seem to be being placed as a precondition to getting

24  depositions off the ground.

25      And I appreciate, Your Honor, what you've said, which is

that, you know, depositions can proceed at our peril if
documents are later dedesignated, and I understand that.  But
to say that we've got to have every deponent a series of
disputed documents before a deposition, it just doesn't seem
workable to me, and I think that's putting on your shoulders a
lot.

    And timing.  I mean, you know, this is demanding that you
issue rulings -- have hearings and issue rulings within
two weeks to make the plaintiffs' timeline workable.  It
just -- it seems untenable to Uber and unnecessary, and I would
think that an exemplary process would be the better process to
go.

    And we tried to lay that out in our chart with actual
dates where we had basically adopted the 45-day rule that
plaintiffs proposed through the meet-and-confer process and
sort of laid out in a very systematic way when challenges can
happen, and we would like to think that fewer challenges would
be required as this process plays out.

        **MR. LUHANA:**  Judge, we're charging ahead because we
are working to coordinate depositions, but it should not be to
the detriment of this litigation and the plaintiffs here, which
number over 1300 at this point and continue to grow.  And so
all we're asking for in terms of what we're going to tee up --

        **THE COURT:**  Ms. Luhana, like, how many disputes that
you think is -- should be presented to me?  Like, I've said I'm

1  doing sampling.  You haven't said it should be 5.  It should be

2  10.  It should be 20.  It should be 100.

3      **MR. LUHANA:**  We were just saying that -- what I was

4  proposing, Judge, is we have made submissions to Uber of ten,

5  and what they've done is they've dedesignated nine.  Then we

6  submitted five and they dedesignated all five.

7      So our proposal is just submitting the dedesignated

8  documents to you and creating hopefully some bright-line rules

9  that can be followed.  That's all we're looking for.

10      **THE COURT:**  It sounds like 10?

11      **MR. LUHANA:**  Yes.

12      **THE COURT:**  Okay.

13      **MR. OOT:**  Your Honor, it's Patrick Oot for the Uber

14  defendants.

15      One point, and I don't know if now is the time or we could

16  discuss this later on.  We have kind of an ongoing draft of the

17  coordination order.  I know you asked about it on sort of

18  multiple conferences.  I think it would be helpful to get that

19  before the Court.  I know the deposition protocol has language

20  around coordination.

21      We've had some back and forth.  I recently sent on

22  October 1st the last version of it back to plaintiffs and don't

23  have a response.

24      I think we're getting to a point where we can walk and

25  chew gum at the same time.  Meaning, that if there are

```
 1   privilege dedesignations or things that happen that supplement
 2   a custodial file later on, I think that there is an agreement
 3   that those particular documents could be the subject of further
 4   testimony versus, you know, the issue that we're having here
 5   where there would be two full depositions.
 6        So -- and seeking -- we were going to attach a draft of
 7   that to the joint status report and plaintiffs objected, but we
 8   would like to get that issue before the Court.
 9            MR. LUHANA:  And, Judge, we're happy to coordinate;
10   however, these issues, longstanding issues, just need to be
11   resolved in terms of a process to move forward.
12        And the goal and the hope is the order that you, for
13   example, have already issued, the clawback order of
14   October 8th.  Hopefully Uber is reviewing that and recognizes
15   that they can't retroactively apply privilege as you said in
16   your order.
17        So 650 is a small number of entries.  There are 30,000
18   entries that they've designated as privilege.  I hope they're
19   applying that across the board.  And so going forward, the goal
20   is with the sampling, Judge, that you're doing, that Uber apply
21   your rulings and your guidance and narrow, you know, the
22   privilege entries that they're designating moving forward.
23            MR. SHORTNACY:  And, in fact, we are and I've said
24   that repeatedly in this hearing.
25            THE COURT:  Yeah.  I have another question, though,
```

1    for Ms. Luhana.  I'm trying to understand this idea that she's

2    floating with me is, you know, submitting dedesignated

3    documents.

4        So these are documents Uber -- once plaintiff came forward

5    with their challenge, Uber dedesignated them, and then I'm

6    supposed to look at this dedesignated document and write some

7    sort of bright-line rule based on the characteristics of the

8    documents and the parties' respective briefings?  Am -- what --

9    how do you envision the dispute actually being presented to me

10   and my coming up with a bright-line rule?

11       **MR. LUHANA:**  Sure.  I would defer to my colleague,

12   Ms. Ellis, who has been very involved in the meet-and-confer

13   process and these privilege log disputes to provide further

14   guidance on this.

15       **MS. ELLIS:**  Thank you.

16       This is a conversation that we've been engaged in, as

17   Mr. Shortnacy said, up until the moments before this hearing

18   and asking Uber specifically how they are applying the Court's

19   guidance on the logs that they have produced thus far, and

20   we've gotten no clear-cut answers.

21       We've -- they've explained to us that they have to look

22   at -- they can look at an individual conversation or document

23   and the documents that surround that for dedesignation; but

24   anything else, there's no systemic way that they're applying

25   this guidance going back.

1    And so our attempts to propose samples that would make our

2    process for dedesignation and challenge more efficient have

3    proved not to do that.  And, quite frankly, we're left to

4    continue a document-by-document exchange with Uber without

5    bright-line rules that in most instances leads to either

6    complete withdrawal of their claim of privilege or production

7    with redactions.

8    We just received the documents that they produced with

9    redactions to even know in our reviewing those to determine

10   whether the plaintiff agrees with Uber's designations, but this

11   is the issue, Your Honor.

12   **THE COURT:**  What kind of, like, bright-line rules are

13   you thinking I would impose?  Is it, like, if a particular

14   third-party unaffiliated with Uber is in the entry, then by

15   definition that item should be dedesignated?  Something like

16   that?

17   **MS. ELLIS:**  Yes, Your Honor.  If there's a third

18   party, then it cannot be attorney-client privilege because then

19   that's waived.  If there are no attorneys on the chain or they

20   are -- it's not obvious from it that this is an exception

21   rather than the rule that Uber can designate these documents as

22   attorney-client privilege.

23   These are things that we discussed.  We asked Uber to come

24   up with rules themselves.  We've yet to hear what those might

25   be.  Instead, it's, again, just been document by document.

 1              **THE COURT:**  Okay.  Mr. Shortnacy?

 2         **MR. SHORTNACY:**  Judge, it's because documents that

 3    present claims of privilege or work product are factually

 4    unique, and so the issue is -- and this is why we explained to

 5    Ms. Ellis we have gone back to look, I mean, in applying

 6    Your Honor's clawback rule, but the clawback order sort of

 7    articulated the precept that just because a document -- I'm

 8    loosely paraphrasing -- but just because a document is prepared

 9    and then later shared with counsel does not make it privileged.

10    And that is a precept that we certainly have always been

11    applying to the privilege log, although it's not always

12    perfectly implemented with the number of people working on it.

13         But that is a truism that we've already been applying, but

14    the problem then is you can't then just say no document that

15    doesn't have an obvious genesis of counsel is, therefore, not

16    appropriate to log.  And so it's -- those issues present

17    difficulties in making bright-line rules.  And so we are taking

18    the Court's orders very seriously.

19         And I would say further, you know, to the example of the

20    third party, that could be a situation, but then it would be

21    difficult to make that into, like, a 100 percent bright-line

22    rule because you can imagine there are work product protections

23    that third parties would not necessarily waive if they're

24    working as an agent or sort of a vendor.  Right?

25         And so there are all these different factual scenarios,

1    and so we can choose examples that may have the most likelihood

2    to present bright-line rules, but they're never going to be

3    perfectly bright-line rules.

4         I mean, even Ms. Ellis is suggesting a rule that when

5    counsel is not present on an e-mail, just as it doesn't make it

6    not privilege, it doesn't make it privilege; it goes both ways.

7    And so it's very difficult to make that into a bright-line

8    rule.

9              **MS. ELLIS:**  Your Honor, if I --

10             **THE COURT:**  So right now we're talking about, you

11   know, how parties intend to raise these issues with me.  You

12   know, we covered for a while what the scheduling and sequencing

13   might be and how I could handle that potentially, and now we're

14   kind of digging into how these are going to be actually

15   presented to me.

16        You know, it strikes me from what I've seen so far, Uber

17   relied on third parties, consultants, partnerships with other

18   organizations for a variety of functions and purposes and

19   reasons.

20        It may be -- one approach maybe we ought to consider is,

21   you know, presenting if there's a particular person who's from

22   an outside organization, you know, there's agreements about

23   what their scope of work is, what their role is.  You know,

24   there are certainly case law that talks about dominant purpose

25   and then, you know, engagement with public relation companies

1    that are outside.

2         So I think maybe if we approach it by third-party

3    relationship, that gives you enough guidance.  It's not going

4    to be perfect because everything is its own particular set of

5    facts, but it's not all necessarily a unique set of facts.

6    There's patterns of engagement.

7         But there might be multiple different ways in which a

8    third party was engaged, and some of which might be privileged;

9    and then there's the other issues that Mr. Shortnacy started to

10   flag, which I don't -- I'm not in a position to really judge

11   right now.

12        So I think that if there is evidence, though, that, you

13   know, there's -- Uber has been grossly overbroad on

14   designations, then, you know, that might warrant a

15   comprehensive rereview of certain categories of documents.

16        So but this is an iterative process and so, you know,

17   there's going to be a certain amount of dedesignation that

18   happens as a matter of course; but I think that, you know,

19   there's -- there's certain extremes that might present

20   themselves, but I hope not.

21        So, in any event, I think that I've heard enough about how

22   these issues will be presented.  The only piece that I haven't

23   heard about is:  You know, is there going to be a systematic

24   submission of documents for me for in-camera review?  What do

25   you think about that issue?

1          **MR. SHORTNACY:**  I think there has to be, Judge, and I

2    think that's going to be burdensome to yourself and the clerk,

3    but I don't know that there's another way to do it, which is

4    what I see as a problem for these serial challenges for every

5    deponent --

6          **MS. ELLIS:**  Your Honor --

7          **MR. SHORTNACY:**  -- which is why a fewer number of

8    exemplars is a more pragmatic approach.

9          **MS. ELLIS:**  Your Honor, if I may, a couple of points.

10     Of the documents that we have provided to Uber to discuss,

11   all but one have been -- they've withdrawn their privilege

12   claims entirely or in part, and so we --

13         **THE COURT:**  You're pointing out privilege log entries.

14   You're not giving --

15         **MS. ELLIS:**  Correct.  Correct, the privilege log

16   entries.  All but one document they've withdrawn in part or

17   involved their privilege assertion.  So we know that there is

18   overdesignation.

19     I think we've got two issues here.  One is our submission

20   to the Court this Friday and how we are going to present these

21   issues for Your Honor to rule upon, and two is what our process

22   looks like going forward.

23     Plaintiffs suggest that we will produce documents where we

24   have reached an impasse.  We have a few that we believe are

25   ready.  Some -- most of them are defense picks.  But we also

1  suggest that as part of that submission, we are going to

2  include our suggestions for what these bright-line rules can be

3  both going forward and for entries that are already on the log.

4       And we would ask that Your Honor -- and we would ask that

5  Uber submit the same, and that Your Honor provide an order by

6  which -- which includes a time frame in which Uber has to

7  review their logs, dedesignate, and produce the documents

8  within that time frame.

9       Going forward for future logs, if Mr. Shortnacy's

10  statements are accurate, we would expect that these future logs

11  for deponents that -- or custodians that may not have been

12  involved as -- as involved in these types of discussions, that

13  these logs hopefully will be smaller and the disputes will get

14  smaller as we go forward.

15       That being said, we won't -- we don't know until we

16  receive them.  All we know is that we only have one log for one

17  deponent so far that is under a thousand -- or 750 documents or

18  under a thousand documents.

19       And so going forward, perhaps it's a tiered approach that

20  we adopt.  If logs include over a certain number of entries, we

21  will submit to the Court a certain percentage of those entries

22  or a number based on that tier, and that do that on a regular

23  basis, and we could bake in an in-camera review into that

24  process.

25       **MR. SHORTNACY:**  Your Honor, can I just stress again,

1   to say that all but one have been dedesignated I think leaves

2   out the fact that they have selected from thousands of entries,

3   you know, ones that they believe are most likely to be -- you

4   know, to least likely to involve counsel or the most likely to

5   be candidates for dedesignation from the first log that was

6   prepared under a short time period.

7        So in some sense, it's not surprising, and that's part of

8   the iterative process that Your Honor has pointed out, that

9   this is revealing, I think, process improvement points that

10  we're working on.

11       It is also true that 40 percent of the plaintiffs -- of

12  the exemplars that Uber has provided plaintiffs, plaintiffs

13  withdrew their objections to.  So it goes both ways.

14  Plaintiffs are objecting to log entries that are from lawyers

15  that say "Legal Advice" in the subject line.  So it's a problem

16  of both sides that I think an iterative process that we've

17  engaged in is helping to inform.

18       And so I would just say I would also object to providing,

19  you know, dedesignated documents as indicative of anything.

20  It's indicative of a process improvement.

21       So I just wanted to make that point.

22            **THE COURT:**  Okay.

23            **MS. ELLIS:**  Just --

24            **THE COURT:**  You know, this is a new phase of discovery

25  for us.  I mean, there's different pieces of it that we've been

1   tackling together, you know, since I was assigned the discovery

2   judge here.  So we're digging into privilege log issues now.

3   So this may just need to be an area where we iterate depending

4   on how things play out.

5       So I'm prepared to be adaptable, but my goal is, you know,

6   let's do this as efficiently as possible.  And, you know, of

7   course, where things are not actually privileged, we're dealing

8   with so many documents, there's going to have to be probably

9   additional efforts to go over what was initially thought to be

10  privileged to make sure that those calls are right or correct

11  them if they weren't.

12      So anyhow, I don't think -- there's so much information

13  that's at play.  As I get deeper into these issues in the

14  first -- you know, I'm going to get the October 25th

15  presentation of the disputes.  If it's not presented to me in a

16  particularly helpful way or I think I need something a little

17  bit different, I'll let the plaintiffs know.

18      But you-all have thought about this for a while and

19  there's been a lot of meet and confers back and forth, so we'll

20  just -- we'll start with whatever you present on August 25th.

21  If I find it's not working, I'll let the parties know that I

22  need something different.

23      But then I'm going to set a schedule for the productions

24  and the tranches.  I'm going to have plaintiffs give their

25  input and selections as far as what productions, what

1    custodians need to be prioritized.

2        And I think we've spent an hour in this area, but I'm

3    just -- everyone here is professional, I believe working in

4    good faith, and so I think, you know, we'll just -- we'll take

5    it from here and then see how things play out, and I'm going to

6    react based on what I actually see in the filings in the calls

7    I'm making.

8        There's a lot of other --

9        **MR. SHORTNACY:**  Can I make one point on timing just as

10   you're departing this topic?

11       I wanted to circle back.  The parties -- the JCCP

12   plaintiffs and counsel for defense are set to meet and confer

13   in connection with what Judge Schulman raised about the

14   possibility of moving deadlines on that end.  I just leave you

15   with that thought when you're thinking about the deadlines

16   here.

17       I think there's some movement on that side that may foster

18   coordination on this side, so -- and then the final thing I'll

19   say is compressed deadlines for perfecting these disputes are

20   actually -- can be counterproductive because the quicker that

21   we're putting logs together, the more conservative we need to

22   be, the less we risk waiver, the harder it is to grapple with a

23   number of challenges, and so forth.

24       It actually, I think, can be counterproductive, and so I

25   would just leave the Court with that thought in terms of when

1  you're considering the timelines that both sides have

2  presented.

3          THE COURT:  Okay.

4          MR. LUHANA:  Judge, can I just say one thing to what

5  Mr. Shortnacy just said?

6          THE COURT:  And I want to say one thing.

7          MR. LUHANA:  Okay.  I would just say, in terms of the

8  schedule they proposed, for the most part we're okay with it,

9  recognizing that we may not be able to coordinate with these

10  depositions as we don't have a trial date.

11      So we don't want to rush for the sake of rushing and for

12  the sake of pseudo-coordination, which has happened with some

13  of those depositions because they're nonconsecutive dates.

14      So if the MDL, which has over 1300 cases filed, and, as I

15  said, it's growing and it's national, we don't have to be

16  dictated by the JCCP's schedule.  And so we're happy to let

17  this play out and work through the process, and of course not

18  overwhelm the Court, and move forward, but we can't rush to do

19  it at a detriment to our clients and this litigation.

20  Leadership just can't do that.

21          THE COURT:  Okay.

22          MR. OOT:  Your Honor, Patrick Oot for the Uber

23  defendants.

24      Just a point is that 70 percent of the inventory is now

25  represented by the JCCP plaintiffs' lawyers in this MDL.  So

 1    our position here is we can walk and chew gum at the same time.

 2        Essentially there's going to be some depositions, sure,

 3    where there will have to be more than one sitting; but in this

 4    instance, you know, I think that we're -- I think the Court was

 5    suggesting in the beginning of this conference was there may be

 6    some outlier documents that may come in later on that need to

 7    be addressed.

 8        We've been pushing for this coordination order, as I

 9    mentioned previously.  We'd like a date that we would either

10    submit to Your Honor or -- either opposing or an agreed-upon

11    order related to coordination because it's -- there's been this

12    kind of ongoing shift of the willingness to coordinate and

13    there's just a tremendous amount of efficiencies, at least with

14    some of the witnesses here, that we shouldn't blow up the

15    opportunity to comply with Rule 1 just because of a few

16    documents that might come in after.

17        **THE COURT:**  Okay.  I will think about that further and

18    address it at a later order.

19        Let me -- as far as what's being filed on the 25th, if

20    plaintiff has brought some challenges and then Uber

21    dedesignated, are there another set of challenges that are

22    being briefed?  I mean --

23        **MR. SHORTNACY:**  Yeah.  Judge, I can speak to that.

24        I mean, the issue that we had is that I think both

25    sides -- your order -- Your Honor entered an order two weeks

1  ago, I think, setting the 25th, and the parties have had

2  probably three or four meet and confers in the intervening

3  time, and we had both proposed picks and selections and

4  dedesignations happened, withdrawals of challenges have

5  happened on the plaintiffs' side.

6      And where we're at right now is I believe we have eight

7  live impasses, if you will, and I think that plaintiffs have

8  today proposed sort of backfilling documents to fill slots that

9  have fallen away.

10      The issue is the briefing is due on Friday.  So we're

11  not --

12           THE COURT:  Well, I can extend that --

13           MR. SHORTNACY:  Okay.

14           THE COURT:  -- by a week if -- so that way if there's

15  some additional disputes, and then I can move the 25th.

16      What does plaintiff think about that?

17           MR. LUHANA:  Judge, that's acceptable, I believe, to

18  us.  It's just going to move the timeline further obviously for

19  these issues and for the depositions to be taken down the road,

20  yes.

21           THE COURT:  I mean, do you want to just, instead of

22  moving it by a week, just move it by a few days?

23           MR. LUHANA:  I will defer to Ms. Ellis.

24           MS. ELLIS:  A week is fine, Your Honor.  That would

25  be -- that's sufficient.

 1          **THE COURT:**  Is it too much?

 2          **MR. SHORTNACY:**  I mean, from my perspective -- from

 3    Uber's perspective, I don't think it is.  I think what -- I

 4    recognize that everything has ripple effects down the chain,

 5    which is really what Your Honor is driving at.

 6          But I think we want to try to get this right in the front

 7    end, and I think it will pay dividends down the line and that

 8    will be more important than the ripple -- the potential ripple

 9    effects into the schedule.  So I do think it's appropriate.

10          And I do think that Ms. Ellis and I and our respective

11    teams have worked cooperatively on this process.  I think we

12    need to just be mindful that we need to stop the backfilling

13    and lock a set in to brief.  I think both sides in this process

14    kind of allowed ourselves to play that forward a little too

15    far, a little too close to the briefing in good faith, and so

16    now I think with the extra week, we'll bake in the appropriate

17    time to get the briefing appropriately situated so that this is

18    a meaningful exercise for the Court.

19          **MS. ELLIS:**  Your Honor, I agree.

20          And I will just add that as part of this process, we will

21    be proposing our sort of categorical lessons from these

22    documents, but I think that we'll at least have a number of

23    documents to bring to your attention.

24          **THE COURT:**  Okay.  I mean, maybe there's random

25    selections that can be done to get a better sense of, like, if

1    there's a systemic issue.

2         **MS. ELLIS:**  And in producing the documents to Uber

3    that we did, identifying those documents, we did not choose the

4    ones that we thought were most likely to be dedesignated.  We

5    chose ones that we thought were exemplary of categories of

6    issues that we see on their logs; and we also chose documents

7    that were representative of all of the custodians in the first

8    nine logs that we received.

9         And so we have attempted to randomize these documents in a

10   way that would give us broader lessons to carry forward and

11   apply backwards, and we're going to continue to do that.

12        **THE COURT:**  Okay.  Can you get the briefing done by

13   the 30th rather than -- a week from the 25th but a week from

14   today?

15        **MS. ELLIS:**  I think if we can use this week to

16   conference and do our exchanges of briefing Monday and Tuesday,

17   I think that that probably works, yes.

18        **MR. SHORTNACY:**  I think from my perspective, from

19   Uber's perspective, Judge, the issue that we have is that, as I

20   said before, these challenges frequently are situations where

21   counsel is not present and so it requires us to actually do a

22   little investigating and speaking with individuals in many

23   cases.

24        And so I think if Your Honor would permit the full week to

25   the -- what is the full week?  I guess it's the 1st.

1          **THE COURT:**  Well, a full week from today.  Now you

2    know what the new deadline is.  They backfilled already.  So I

3    just -- I don't want to add a week and add a week and -- you're

4    getting almost a week, so --

5          **MS. ELLIS:**  Your Honor, we believe that -- I mean, we

6    would be ready to submit on Friday, and so we're happy to

7    submit on Monday, provide a draft -- or provide a draft to Uber

8    on Monday so that we can do our exchange.

9        You know, but I think Mr. Shortnacy's point is a good one,

10   that they do need to talk to these folks to assess the

11   privilege, and that's exactly what we would expect them to do

12   before they put these documents on the log; and, unfortunately,

13   it appears that that's just not what's happening.

14         **MR. SHORTNACY:**  Well, that's not correct, of course.

15         **THE COURT:**  Okay.

16         **MR. SHORTNACY:**  But I hear what Your Honor is saying

17   and we would abide by your timing.

18         **THE COURT:**  Yeah, let's -- the deadline that's

19   currently for October 25th is October 30th.  Okay.  That's a

20   week from today.

21         **MR. SHORTNACY:**  Thank you, Your Honor.

22         **THE COURT:**  Okay.

23       All right.  Now let's talk about a couple of other issues

24   and the status report.

25       As far as fact sheets go -- and I'm talking about

 1  defendants' fact sheets -- so my understanding is plaintiffs

 2  want Uber to certify the DF -- the defendants' fact sheet

 3  productions are complete at a point where the Uber defendants

 4  are confident that they're complete.  On the other hand, Uber

 5  would like to keep the conferrals more informal.

 6      How -- this is a question for the plaintiffs, but how are

 7  the background checks and the tax summaries and the prior

 8  incidents factoring into putting groups of cases into different

 9  liability buckets?  I mean, it does make sense that you're

10  trying to group -- you've got so many cases, you probably want

11  to group them in some ways.  And that type of information you

12  think is necessary?

13          **MS. ABRAMS:**  Yeah.  Rachel Abrams, Your Honor.  I can

14  address that.

15      We used approximately 100 cases, like the first DFSs that

16  were produced, in -- as sort of a test of seeing what -- on a

17  global basis what issues we were seeing.  It's kind of devolved

18  to an individual meet and confer on these cases, but what we

19  have seen is there are --

20          **THE COURT:**  I'm having a hard time hearing.

21          **MS. ABRAMS:**  I'm sorry.

22          **THE COURT:**  Can you speak up a little?

23          **MS. ABRAMS:**  Yeah.  Sorry.  Can you hear me now?

24  Better?

25          **THE COURT:**  Yes.

1      **MS. ABRAMS:**  Sorry about that.

2      But what we are doing now is we are assessing where we're

3   seeing holes in productions, so what we thought was complete,

4   and taken those DFS and the information we're gathering and

5   utilizing it for our benefit going forward.  We're now getting

6   new productions for those DFSs.  We're getting more

7   information, including tax summaries and other information from

8   defendants.

9      So we need to know when these cases are complete so that

10  we know that this production is complete for all DFSs going

11  forward.

12     So that's what we've suggested.  This is a little

13  premature.  We are still meeting and conferring about a

14  process, but right now we do seem to be at an impasse, but I

15  would say it's not ripe for Your Honor yet.

16     **THE COURT:**  Okay.  So do Mr. Oot or Mr. Shortnacy want

17  to respond?  So don't take any action on this particular issue?

18  You-all are meeting and conferring to sort it out?

19     **MS. ABRAMS:**  Your Honor, yes.  I believe right now we

20  have had several meet and confers, and we're narrowing the

21  issues; but --

22     **THE COURT:**  I think, Mr. Shortnacy, did you want to

23  say something?  I wasn't sure if I detected a shake of the

24  head.

25     **MR. SHORTNACY:**  Thank you, Your Honor.

1    I was going to defer to my colleague Ms. Gromada to

2    address that issue, but she may be having audio issues.

3    Can you speak?  I think she's having audio issues here

4    with the headset.

5                    (Pause in proceedings.)

6        **MS. GROMADA:**  This is Veronica Gromada for Uber.

7        Yeah, so it is premature, Your Honor.  We have not reached

8    an impasse.

9        I think the issue is we have made quite a bit of progress

10   in working through a number of issues during the conferral

11   discussions that we've had to date, and what we've done is

12   we've continued to do these very individualized collections for

13   each of the DFS responses for each of the drivers that requires

14   us to really take advantage of a bit of a learning curve.

15       For example, some of the things that we have learned

16   through this process is that some individuals may have had a

17   background check from Uber Eats work as opposed to Uber

18   rideshare-related work, and so it's those types of things that

19   we've been solving for.

20       So what we have proposed to allay any concerns that

21   plaintiffs have about there being any gaps or oversights is, on

22   a going-forward basis, as we identify any DFS where we think we

23   need time to do additional discrete research based on the

24   situation of a particular driver or whatever circumstance, we

25   will flag that upfront when we provide the DFS response and

1  production, and let them know that we are continuing to

2  research certain nuanced discrete issues.  So that should allay

3  their concerns, but otherwise we don't believe that there's a

4  reason to deviate from the current PTO 10 process.

5       **THE COURT:**  Okay.  Thank you.

6       So -- and I was able to hear you just fine.

7       As far as the plaintiffs' fact sheets, my understanding is

8  that there is going to be a PTO 8 letter that's coming by

9  October 28th.

10      Are you able to give me sort of a preliminary sketch of

11  what some of the issues are perhaps?  To the extent there are

12  certain PFS-related issues, we can talk about them now and

13  perhaps eliminate the need to brief all of those issues in case

14  it's helpful for you-all to simplify the dispute.

15      **MR. MURRAY:**  Yes.  Hi, Your Honor.  Louis Murray for

16  Uber defendants.

17      That's right.  That is the schedule we have outlined.  We

18  have sent our letter to plaintiffs regarding our PFS disputes,

19  and the plan is to send a PTO 8 letter to Your Honor on Monday.

20      But just to give Your Honor a brief sketch of what we

21  think will be disputed, of course waiting to see final word

22  from plaintiffs, is, first, an issue about verifications about

23  whether plaintiffs must submit amended verifications when

24  providing amended answers to a fact sheet.

25      The second issue is about -- is about third-party contact

information in the plaintiff fact sheets.  The plaintiff fact

sheet asks for this information and plaintiffs are asking to

provide it at a later time.

     And then the third issue will be about "Will supplement,"

whether plaintiffs may answer "Will supplement" for

questions -- or the answers within their control.

     That's our perspective.

          **THE COURT:**  Okay.

          **MS. ABRAMS:**  Your Honor, Rachel Abrams.

     That is correct that the briefing schedule Mr. Murray had

laid out, we are submitting the dispute to Your Honor on

Monday.  We have narrowed the issues to these three for the PFS

issues, and -- but I do believe Mr. Murray mischaracterized

some of the issues particularly regarding the third-party

contact information.

     We had stated to contact the plaintiffs' counsel in

regards to that issue, not to provide it at a later date; and

that we were meeting and conferring, and we did believe there

would be a process that we could come to, but Uber did not

believe that we could -- could continue -- should continue to

meet and confer for a process that would work and wanted to

bring the dispute before Your Honor.

     As to the "Will supplement," we believe this is a

case-by-case individualized firm issue that everyone's meeting

and conferring on, including my firm, and there are a very

1    small subset of cases involved with "Will supplement."  And I

2    think that is a proper response for a PFS in a few questions

3    where a plaintiff may need to look up or find some information,

4    and we don't believe this should be raised before Your Honor

5    but we are prepared to address it.

6         THE COURT:  What exactly -- like, the plaintiffs need

7    to provide some more information to amend their response and --

8         MS. ABRAMS:  Yes.  I mean, I believe -- sorry --

9         THE COURT:  -- then that amendment would be verified?

10   Like, what's -- why is that a dispute?

11        MS. ABRAMS:  The third issue, which I jumped to, is

12   the "will supplement."  It's that plaintiffs have to find

13   information.  If they, say, look up an old account

14   information -- I mean, it depends on the question.  Sometimes

15   it's regarding getting information that they have to look up;

16   or, you know, I'm speaking again basically regarding my firm's

17   meet-and-confer process with Uber and my cases, which are

18   substantial, but we're -- it is in one or two questions for the

19   majority of these cases where a plaintiff who has verified the

20   fact sheet has written "Will supplement."

21        And, you know, based on what Uber has said in meet and

22   confers, they would prefer us to write "I don't know," and then

23   maybe they'll get information and then it would be

24   substantially complete.  But by putting just the language "Will

25   supplement," that somehow makes it deficient.

1    And, again, we're not talking about multiple "will

2    supplements."  We're talking about a question or two within the

3    fact sheet that they're now alleging that makes it deficient.

4        But I did want to address the --

5            **MR. MURRAY:**  Your Honor?

6            **MS. ABRAMS:**  Okay.  Go ahead.

7            **MR. MURRAY:**  If I could just speak on that.

8        We don't think that that fairly characterizes the issue.

9    We have stated we are very willing to grant extensions, to meet

10   and confer where there are situations where information is not

11   within plaintiffs' control; but, quite candidly, the Court

12   created this PFS and the parties negotiated, so the information

13   is almost always within plaintiffs' power, possession, or

14   control.

15       And what we're seeing very often is "will supplements" to

16   basic information:  Education, employment, what happened in the

17   incident occasionally.  And plaintiffs are stating that's not a

18   deficiency; and our position is, if the information is within

19   their possession, power, or control, they should provide it

20   within 30 days after receiving a letter.

21           **THE COURT:**  Okay.  All right.  I've heard enough on

22   that.

23       As far as cases where Uber is not locating a matching

24   trip, the parties are meeting and conferring about that.

25       I guess what I'm wondering is if plaintiffs aren't able to

provide additional information about these trips, then I could

imagine it's difficult for Uber to identify information that

they need to provide as part of the defense fact sheets.  So I

would --

        **MR. MURRAY:**  We do think that's a shared issue to your

point, Your Honor.  We want to provide fulsome defense fact

sheets, and we obviously need information from plaintiffs in

order to locate the trip that's at the source of plaintiffs'

claims.

    And I can say that Ms. Abrams and I met and conferred

about this.  We are working through a process where we may get

to a point where the parties cannot find a trip.  Plaintiffs

have given all the information they can, which in many

instances, unfortunately, is not very specific and there's an

impasse.  And I think the parties will -- are discussing what

to do in that situation, but we do agree that with these cases

there needs to be further communications, additional

information, additional searching.

        **THE COURT:**  How many cases have this issue?

        **MR. MURRAY:**  It's quite substantial, particularly with

the new cases coming in.  There's -- we estimate that there

will be hundreds, unfortunately, of cases where Uber is not

able to locate a trip.

    And one issue that is raised in the JSR that I do want to

bring to the Court's attention is part of why this is important

1   for Uber is not just to confirm, of course, that it was an Uber

2   and not a taxi, not a Lyft, because that, unfortunately, does

3   happen where plaintiffs submit claims about other entities, but

4   there are instances we're seeing where submissions appear to be

5   doctored, appear to be potentially fraudulent.

6        And that's something, of course, we are meeting and

7   conferring, but it does -- it's something that informs our

8   concern about the vast majority of these unsubstantiated cases

9   just because it may not be as brazen.

10            **THE COURT:**  Yeah.  All right.  Go ahead.

11            **MS. ABRAMS:**  Leadership has only been informed of 75

12  cases that were unconfirmed by Uber, and many of those have not

13  even been met and conferred and alerted to plaintiffs' counsel

14  to provide more information to try to confirm those rides.

15       So as of now, leadership only knows about 75 cases and at

16  the time of filing of this JSR, only knew about one alleged

17  potential fraudulent issue with one case that they were meeting

18  and are meeting and conferring with plaintiffs' counsel on.

19       So this issue, again, you know, is being made into a

20  bigger issue, which we aren't -- we have no knowledge of as

21  leadership to speak about.  And if they have these -- more

22  information on these cases that they want to share, we are

23  willing to continue, but these are individualized issues with

24  regards to the individualized cases that need to be met and

25  conferred with plaintiffs' counsel.

1          **THE COURT:**  Okay.

2      All right.  I just have another minute with you-all, but I

3  want to touch on this final piece regarding contacting former

4  Uber employees.  I know plaintiffs have their perspective and

5  Uber's asked me to do certain things.

6      You know, here the former employees that plaintiff

7  contacts should indicate whether they're represented by Uber or

8  other counsel.  You know, Plaintiffs' Counsel, you're obligated

9  to ask whether or not they're represented.

10     I don't think there's any need for a court order that

11 plaintiffs preclear with Uber whom they contact, and I don't

12 think there is any need for court order for Uber to disclose

13 the list of former employee -- Uber employees whom they

14 represent.  So I'm not going to issue that order in either

15 direction.

16     But, you know, plaintiffs' counsel, you know, must inquire

17 when they're reaching out to these former employees whether or

18 not they're represented by counsel, and so I think that's clear

19 enough.

20     We've, you know, spent more than an hour and I've got

21 another court setting at 11:00, so we're done for the day.  But

22 I will get my order out as soon as I can on the production

23 schedule and how to present the privilege log disputes, the

24 scheduling in that regard.

25          **MR. LUHANA:**  Thank you, Your Honor.

1          **MR. SHORTNACY:**  Thank you.

2      **THE COURT:**  Okay.  Thank you, everyone.

3      **THE CLERK:**  Court is now adjourned.

4          (Proceedings adjourned at 10:55 a.m.)

5                  ---oOo---

1

2

3                    **<u>CERTIFICATE OF REPORTER</u>**

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Thursday, October 24, 2024

8

9

10

11    _____

12          Kelly Shainline, CSR No. 13476, RPR, CRR
                    U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25