[Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT STATUS REPORT REGARDING THE PARTIES' MEET AND CONFER EFFORTS CONCERNING ITEM 3 IN THE JOINT DISCOVERY LETTER (ECF NO. 2194)**<br><br>Judge:    Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

## JOINT STATUS REPORT

As ordered by the Court (ECF No. 2407), the parties submit this joint status report "indicating whether Item 3 in the Joint Discovery Letter has been resolved." On March 6, Defendants provided a spreadsheet identifying the documents "that received new metadata in the recent overlay." Defendants further identified LINKSOURCEBEGBATES, LINKBEGBATES, LINKGOOGLEDRIVEDOCUMENTIDS, MISSINGGOOGLEDRIVEATTACHMENTS, and NON-CONTEMPORANEOUS as updated fields. However, disputes remain.

---

JOINT STATUS REPORT REGARDING THE PARTIES' MEET AND CONFER EFFORTS CONCERNING ITEM 3 IN THE JOINT DISCOVERY LETTER (ECF NO. 2194)
Case No. 3:23-MD-3084-CRB

1 **Plaintiffs' Position**: Per Pretrial Order 20 (ECF 1808), Uber was to substantially complete production of custodial files between Sept. 2024 and Jan. 3, 2025, including production of metadata required by the ESI Order (ECF 524). Specifically, the ESI Order calls for Uber to provide metadata with every document when it is produced, including for the five fields above. (ECF 524 at 23-24 and App'x 2). Yet on Feb. 11, Uber produced metadata that it had not previously produced for nearly 40,000 custodial documents. Plaintiffs are concerned that the production seems to include metadata that should have been produced months ago pursuant to PTO 20 deadlines, and the failure to do so deprives Plaintiffs of discovery they should have had before taking custodial depositions.

In discussions, Uber asserted the overlay addressed only documents properly produced after PTO 20 deadlines (namely, productions delayed by Uber's own actions—pervasive and improper privilege designations, coding responsive documents as "nonresponsive" in its TAR model, and refusal to bring productions current without Court intervention). But Uber apparently will not confirm that on the record and further, has not provided sufficient information for Plaintiffs to verify Uber's position without a significant undertaking by Plaintiffs' ESI vendor, which would take approximately a week (and significant expense). Having received Uber's spreadsheet late yesterday, Plaintiffs are currently technologically unable to sufficiently analyze the list of 39,172 documents in the overlay to verify Uber's representations. Specifically, Uber has not provided information necessary to determine (without significant undertaking) that all newly-produced metadata was necessitated because a document properly produced after PTO 20 deadlines has a hyperlink relationship with a document required to be produced under PTO 20. Rather, from an initial review, it appears that this production includes metadata that should have been provided months ago per PTO 20 and the ESI Order.

Uber's claim that Plaintiffs had this metadata all along (in extracted text) is inaccurate and misleading. While Uber has often (but not always) provided Google Drive document IDs in extracted text, this does not fulfill the ESI Order's directives for numerous reasons. Chiefly, it does not allow Plaintiffs to match a document containing a hyperlink to the hyperlinked document by Bates number and instead requires a manual search. Second, document review is rarely done in text view, so searching the extracted text adds extra, unnecessary work (which Plaintiffs were not aware was even

2

JOINT STATUS REPORT REGARDING THE PARTIES' MEET AND CONFER EFFORTS
CONCERNING ITEM 3 IN THE JOINT DISCOVERY LETTER (ECF NO. 2194)
Case No. 3:23-MD-3084-CRB

warranted). Third, failure to provide metadata in the ordered fields prevents Plaintiffs from using that metadata to craft document review and searches. Fourth, nothing in the extracted text of a *linked* document indicates that the document is referenced by link in some other document (i.e., extracted text at best allows for one way, but not two-way, linking). Despite Uber's insistence otherwise, Plaintiffs should not have to request that Uber comply with the ESI Order and produce this metadata but rather, should have been able to rely on the absence of metadata to mean that Uber had not produced the hyperlinked document (and because Plaintiffs so relied, they did not make a practice of reviewing extracted text for every document).[1] Thus it did not become apparent that significant metadata was missing until review of documents for custodial depositions (see ECF 2194).

To determine the extent to which this overlay impacts past and upcoming depositions, Plaintiffs must ascertain whether and when complete and accurate metadata was provided for each of the documents in the overlay. As such, Plaintiffs ask the Court to order Uber to:

(a) Verify, under oath, that all metadata in the Feb. 11 production is associated with at least one document properly produced after PTO 20 deadlines, and that none of the metadata relates solely to documents sets where both the parent and child(ren) were produced prior to PTO 20 deadlines; or

(b) Provide the date that accurate and final metadata was produced for each of the five fields above for each of the documents affected by the Feb. 11 production; or

(c) Pay the cost of Plaintiffs' vendor analysis to perform the analysis in part (b).

Further, Uber's offer of monthly overlays does not comply with the ESI Order and would not provide Plaintiffs certainty that a document produced without metadata does not link to some other document. Thus, Plaintiffs further request the Court order Uber to provide all metadata required by the ESI Order within seven days of document production or seven days before a custodial deposition (whichever is sooner) and to state in future cover letters any custodial files impacted by overlays.

---

[1] Uber's claim that Uber's failure to produce an overlay since Sept. 24 should have informed Plaintiffs that Uber was not properly producing metadata with ongoing document productions is absurd; rather, Plaintiffs expected that Uber was complying with the ESI Order.

3
JOINT STATUS REPORT REGARDING THE PARTIES' MEET AND CONFER EFFORTS CONCERNING ITEM 3 IN THE JOINT DISCOVERY LETTER (ECF NO. 2194)
Case No. 3:23-MD-3084-CRB

**Defendants' Position:** Instead of indicating "whether Item 3 in the Joint Discovery Letter has been resolved," as the Court ordered, Plaintiffs' position is full of new requests that are far afield from anything they raised or requested in the Joint Discovery Letter. ECF 2407; *see* ECF 2194. Plaintiffs boldly admit that they did not review the metadata in the documents Defendants produced – Plaintiffs cannot attempt to penalize Defendants for Plaintiffs' decision not to review the productions they received. Further, Plaintiffs' insertion of these new issues and demands violates PTO 8, and should be denied on that basis alone.[2] Nevertheless, Defendants respond as follows.[3]

Per the ESI Order, Defendants provide current and accurate hyperlink metadata within every document production, which allows Plaintiffs to associate linked documents. For instance, if Plaintiffs are looking at a Gmail with a Drive link, they can find – based on the metadata within the extracted text – that Drive document to the extent it has been produced. The overlays simply provide, for a second time, that *same* information that Plaintiffs *already* have.[4] Locating a hyperlinked document using this same metadata is just as easy as searching for it using a Bates number. Significantly, at the time of each deposition, Plaintiffs already have the metadata that associates linked documents.

Plaintiffs know that they have received two hyperlink metadata overlays: one on Sept. 24 and one on Feb. 11. Plaintiffs cannot possibly think that the Sept. 24 overlay provided updates for documents produced *after* that date. And significantly, Defendants provided the Sept. 24 overlay at Plaintiffs' request. So Plaintiffs knew that Defendants were able and willing to produce hyperlink metadata overlays upon request. If Plaintiffs had needed another metadata overlay, including prior to a deposition, they would have requested one. They did not. Instead, after substantially completing the PTO 20 productions, as well as the expanded scope productions due by Jan. 31, Defendants promptly provided a hyperlinks metadata overlay on Feb. 11.[5] Now, after the fact, Plaintiffs argue that

---

[2] Plaintiffs' alternative request that Defendants pay for Plaintiffs' vendor's analyses is not only outside the bounds of the Joint Discovery Letter, but is wholly unsupported and must be denied.
[3] Plaintiffs sent a completely new position at 10:12 p.m. PT tonight.
[4] The overlays do not "correct" any metadata; they simply update metadata fields to reflect subsequent productions (by providing metadata again that Plaintiffs already have).
[5] To be clear, pursuant to PTO 20, Defendants substantially completed the production of documents by January 3rd with the associated metadata in those productions as of that date. The metadata overlay is not a document production, and the ESI Order does not address the timing of overlays.

Defendants should have done so sooner. But Defendants had no reason to believe that Plaintiffs wanted an overlay sooner because Plaintiffs already had the same metadata within the productions and because Plaintiffs did not request an interim overlay as they had done previously.

Plaintiffs' requested verification in part (a) above is nonsensical. They know that the Feb. 11 overlay updated documents that were produced before Jan. 3 because the previous overlay was provided on Sept. 24. Likewise, Plaintiffs' request in part (b) above is self-evident. The answer is that the metadata fields updated on Feb. 11 were current and accurate as of that date.

Already in this litigation, Defendants have been compelled to create customized scripts and workflows to provide the metadata demanded by Plaintiffs at considerable expense. With three months before discovery closes, Plaintiffs are now seeking to impose additional and technologically infeasible requests, *e.g.*, demanding that Defendants somehow extricate and segregate metadata overlays on a custodian-level, deposition schedule – which Plaintiffs do not attempt to explain and is simply not possible. Likewise, Plaintiffs cannot both demand overlays that require manual intervention to create (as they have) and that Defendants provide those overlays within seven days of each individual production – as Plaintiffs know, Defendants are often making multiple productions in a single day, rendering Plaintiffs' request unworkable. Because Defendants are still producing custodial documents from the ongoing TAR process (necessitated by Plaintiffs' demands for an expanded responsiveness scope), post-11/27/23 custodial documents (also necessitated by Plaintiffs' demands for an expanded temporal scope), custodial documents related to privilege challenges, etc. – not to mention that Plaintiffs propounded a new set of 80 requests for production last week – Plaintiffs know that custodial files will not be completed ahead of depositions. As has been extensively discussed, hyperlink metadata is dynamic until the last document production. Thus, Defendants have proposed a feasible cadence for providing interim hyperlink overlays – once per month through the close of fact discovery[6] – which would serve the purpose and provide certainty for Plaintiffs and Defendants alike.

---

[6] This proposed cadence is because Plaintiffs have requested that future hyperlink metadata overlays update only those documents receiving new metadata. To do this, Defendants' vendor must engage in time-consuming manual work, as catering to Plaintiffs' request is not an automated process.

| | |
|---|---|
| By: */s/ Roopal Luhana*<br>ROOPAL P. LUHANA *(Pro Hac Vice)*<br>**CHAFFIN LUHANA LLP**<br>600 Third Avenue, Fl. 12<br>New York, NY 10016<br>Telephone: (888) 480-1123<br>Email: luhana@chaffinluhana.com<br>*Co-Lead Counsel for Plaintiffs* | By: */s/ Michael B. Shortnacy*<br>MICHAEL B. SHORTNACY (SBN: 277035)<br>mshortnacy@shb.com<br>**SHOOK, HARDY & BACON, L.L.P.**<br>2049 Century Park East, Suite 3000<br>Los Angeles, CA 90067<br>Telephone: (424) 285-8330<br>Facsimile: (424) 204-9093 |
| SARAH R. LONDON (SBN 267083)<br>**LIEFF CABRASER HEIMANN & BERNSTEIN**<br>275 Battery Street, Fl. 29<br>San Francisco, CA 94111<br>Telephone: (415) 956-1000<br>Email: slondon@lchb.com | PATRICK OOT (*Pro Hac Vice* admitted)<br>oot@shb.com<br>**SHOOK, HARDY & BACON, L.L.P.**<br>1800 K Street NW, Suite 1000<br>Washington, DC 20006<br>Telephone: (202) 783-8400<br>Facsimile: (202) 783-4211 |
| RACHEL B. ABRAMS (SBN 209316)<br>**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**<br>555 Montgomery Street, Suite 820<br>San Francisco, CA 94111<br>Telephone: (415) 426-5641<br>Email: rabrams@peifferwolf.com | RANDALL S. LUSKEY (SBN: 240915)<br>rluskey@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>535 Mission Street, 24th Floor<br>San Francisco, CA 94105<br>Telephone: (628) 432-5100<br>Facsimile:  (628) 232-3101 |
| | ROBERT ATKINS (*Pro Hac Vice* admitted)<br>ratkins@paulweiss.com<br>CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)<br>cgrusauskas@paulweiss.com<br>ANDREA M. KELLER (*Pro Hac Vice* admitted)<br>akeller@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Facsimile:  (212) 757-3990 |

JOINT STATUS REPORT REGARDING THE PARTIES' MEET AND CONFER EFFORTS CONCERNING ITEM 3 IN THE JOINT DISCOVERY LETTER (ECF NO. 2194)

Case No. 3:23-MD-3084-CRB

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: March 8, 2025

By: /s/  Roopal P. Luhana

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/  Roopal P. Luhana

7

JOINT STATUS REPORT REGARDING THE PARTIES' MEET AND CONFER EFFORTS CONCERNING ITEM 3 IN THE JOINT DISCOVERY LETTER (ECF NO. 2194)
Case No. 3:23-MD-3084-CRB