RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI -- PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶III(6)** |

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB

Pursuant to Special Master Order No. 2 (ECF 2357) § III(6), Defendants submit this brief and attached declarations in support of their position on the remaining privilege challenges for custodians Mike Sullivan, Gus Fuldner, and Dennis Cinelli.  Through the course of this litigation, Uber has produced close to a million documents in response to Plaintiffs' expansive discovery requests, totaling nearly four million pages. Of that universe, Plaintiffs have lodged numerous challenges to documents that have been withheld, in whole or in part, based on Uber' assertion of privilege or work product protection.  Through many conferrals, the parties have narrowed their disputes to 150 challenges for the three custodians listed above.

While Plaintiffs have narrowed their challenges from their earlier position, they continue to pursue meritless challenges, which should be rejected.  This includes challenges that have already been rejected in substance by Judge Cisneros, challenges based on an incorrect and entirely speculative interpretation of the document's purpose (in contravention to the clear log description), and challenges based on an unjustifiably narrow and incorrect interpretation of the law.  Instead, the applicable legal standard, the relevant factual background, including additional factual support contained in declarations from Uber's in-house counsel, and examples from the common categories of documents and challenges, as set forth below, all support Uber' privilege and work product assertions.

## I.    LEGAL STANDARD

### A.    Attorney-Client Privilege

"The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years.  *Mitchell v. Superior Ct.*, 691 P.2d 642, 645–46 (Cal. 1984).  "The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client.  Clearly, the fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters." *Id.*; *see also, e.g.*, *Cohen v. Middletown Enlarged City Sch. Dist.*, 2007 WL 631298, at *1 (S.D.N.Y. Feb. 28, 2007).

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB

1   "The party claiming the privilege has the burden of establishing the preliminary facts necessary

2   to support its exercise." *Costco Wholesale Corp. v. Super Ct.*, 47 Cal. 4th 725, 733 (2009). "Once

3   that party established facts necessary to support a prima facie claim for privilege," the privilege is

4   presumed to apply, and the opponent "has the burden of proof to establish the communication was not

5   confidential or that the privilege does not for other reasons apply." *Id.*

6        The attorney-client privilege "attaches when (1) legal advice of any kind is sought (2) from a

7   professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4)

8   made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure

9   by himself or by the legal adviser, (8) unless the protection be waived." *Dolby Lab'ys Licensing Corp.*

10  *v. Adobe Inc.*, 402 F. Supp. 3d 855, 863 (N.D. Cal. 2019). A non-lawyers' intent to seek legal advice

11  need not be express. *See In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 1699536, at \*4 (N.D. Cal.

12  June 16, 2006) ("[T]he Court looks to the context of the communication and content of the document

13  to determine whether a request for legal advice is in fact fairly implied, taking into account the facts

14  surrounding the creation of the document and the nature of the document."). "The attorney-client

15  privilege attaches to a confidential communication between the attorney and the client and bars

16  discovery of the communication irrespective of whether it includes unprivileged material . . . not

17  merely information in the sole possession of the attorney or client." *Costco Wholesale*, 47 Cal. 4th at

18  734. "[B]ecause the privilege protects the *transmission* of information, if the communication is

19  privileged, it does not become unprivileged simply because it contains material that could be

20  discovered by some other means." *Id.* at 735.

21        i.   <u>Draft Documents</u>

22        Draft documents sent to counsel to review for the purpose of providing legal advice are

23  privileged, even if the final version of the document is ultimately made public. *See, e.g.*, *In re Banc*

24  *of California Sec. Litig.*, 2018 WL 6167907, at \*2 (C.D. Cal. Nov. 26, 2018) ("When a client sends a

25  draft disclosure document to an attorney for comment or input, the attorney-client privilege attaches

26  to the draft and remains intact even after the final document is disclosed."); *City of Roseville*

27

28
        3
        DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR
        CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2
        (ECF 2357) ¶ III (6)
                                                        Case No. 3:23-MD-3084-CRB

1    *Employees' Ret. Sys. v. Apple Inc*., 2022 WL 3083000, at *23-*24 (N.D. Cal. Aug. 3, 2022) (finding

2    that a draft version of a publicly available financial disclosure form, that was sent to in-house counsel,

3    which reflects in-house counsel's legal advice is privileged).  This is especially true where a document

4    involves a topic with "significant legal implications for which Uber would be expected to seek legal

5    advice." (*See* 1/29/25 Order, ECF 2168, p. 18, Doc. 53996).[1]

6                              ii.    Outside Counsel

7          Communications with outside counsel are "presumed to be made for the purpose of seeking

8    legal advice." *Dolby Lab'y Licensing Corp.*, 402 F. Supp. 3d at 866; *United States v. Chevron Corp*,

9    No. C-94-1885, 1996 WL 264769, at *4 (N.D. Cal. Mar. 13, 1996) (stating this presumption is "logical

10   since outside counsel would not ordinarily be involved in the business decisions of a corporation").  If

11   a person or business hires a lawyer for advice, there is a "rebuttable presumption that the lawyer is

12   hired as such to give legal advice, whether the subject of the advice is criminal or civil, business, tort,

13   domestic relations, or anything else." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)

14   (finding communications with outside counsel to be privileged even where outside counsel was

15   communicating legal advice regarding the client's business affairs).

16   **B.    Attorney Work-Product Privilege**

17         The attorney work-product privilege protects documents or things prepared in anticipation of

18   litigation or trial by a party or its representative, including documents created at the direction of

19   _____

20   [1] Plaintiffs' March 4, 2025, brief included allegations and an exhibit from a different case containing
     numerous false, salacious, and unproven claims—including related to the misuse of privilege claims
21   (ECF 2434 at 12, n.4 and ECF 2434-4).  Plaintiffs' allegations and exhibit should be disregarded as
     wholly irrelevant to the issues before the Special Master, hearsay, and unduly prejudicial for several
22   reasons.  First, this document arises from an entirely different case that is unrelated to the MDL, sexual
     assault, and/or the other issues at hand.  That case was filed by an employee who sued after he was
23   demoted for his job performance.  Second, Plaintiffs claim that this "former senior executive" said
     Uber instructed its employees on alleged improper uses of privilege labels.  However, reliance on this
24   document is improper given: (1) it is an unsworn letter; (2) quotes self-serving statements made by
     opposing counsel in an attempt to extract a settlement from Uber—not sworn statements made by the
25   former Uber employee's testimony; (3) it is stamped on its face as a confidential Rule 408 settlement
     communication; and (4) it is an out-of-court statement that is hearsay.  Further, the plaintiff in that
26   case worked in a different department than the Uber employees here and the letter provides no
     timeframe for the allegations.
27

28
     DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR
     CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2
     (ECF 2357) ¶ III (6)
     Case No. 3:23-MD-3084-CRB

counsel. *See* Fed. R. Civ. P. 26(b)(3); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1080-81 (N.D. Cal. 2002). A document can be protected by the work-product doctrine even if it does not relate to a specific case, so long as it was prepared in anticipation of litigation. *See Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for United States Att'ys*, 844 F.3d 246, 253 (D.C. Cir. 2016) (no requirement that work product requires "anticipation of litigating a specific claim."). All that is required is that there is "more than a remote possibility of litigation." *Fox v. California Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988); *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004).

### C. Privilege Redactions

"An entire document or set of documents may be privileged when it contains privileged portions that are 'so inextricably intertwined with the rest of the text that they cannot be separated.'" *United States v. Christensen*, 828 F. 3d 763, 803 (9th Cir. 2015) (citing <u>*United States v. Chevron Corp.*, 1996 WL 264769, *5 (N.D. Cal. Mar. 13,1996)</u>). Privilege redactions are required only where there are non-privileged portions that are "distinct and severable" from the privileged portions "and if their disclosure would not reveal the substance of the privileged portions." *In re Google RTB Consumer Priv. Litig.*, 2024 WL 3642191, at *5 (N.D. Cal. Aug. 1, 2024). Applying this standard, Uber has withheld in full documents that contain privileged portions so inextricably intertwined with the rest of the text that they cannot be separated, and has redacted documents if the non-privileged portions are feasibly severable from the privilege portions.

### D. Privilege Logs

When an otherwise-discoverable document is withheld on a claim of privilege, Federal Rule of Civil Procedure 26(b)(5)(A)(2) requires the withholding party to "describe the nature of the documents . . . not produced . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." "The Ninth Circuit has held a party can meet this burden by providing a privilege log that identifies '(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB

received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.'" *In re Meta Pixel Healthcare Litig.*, 2024 WL 3381029, at *2 (N.D. Cal. July 10, 2024) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)); *see also Spilker v. Medtronic, Inc.*, 2015 WL 1643258, at *6 (E.D.N.C. Apr. 13, 2015) (finding that privilege log descriptions were "sufficiently specific to allow Plaintiff to determine the basis for the privilege asserted with respect to each document" because they included "the following information for each document withheld: date, author, recipient (including any recipient copied or blind copied), description, and the privilege asserted … [and] a glossary of names and titles associated with the documents for which privilege was asserted").

Throughout this litigation, Uber has voluntarily provided additional information beyond what is required to enable Plaintiffs to better evaluate Uber's privilege claims. For example, Uber has provided over a dozen additional privilege log fields, with additional information about documents such as the names of Google Collaborators and "privileged name(s)" (to identify attorneys in documents in which an attorney does not expressly appear on the metadata), and a separate tab of "privileged name(s)" that includes Uber job titles of privileged actors. Uber's privilege logs exceed the information required to substantiate its privilege claims.

## II.    FACTUAL BACKGROUND

Plaintiffs have challenged 150 documents.[2]  Given this large number of challenges and the short time during which privilege claims will be assessed, it is impossible to fully address the complete history and unique factual circumstances for every challenged document.  However, as requested by the Special Master, Uber has provided (1) a glossary of terms commonly used in disputed documents, (2) a list of names and titles of relevant Uber inside and outside counsel, and (3) a digest of third-

---

[2] When the Special Master entered her Order on February 18, 2025, Plaintiffs had 1,520 challenges pending for the custodial files at issue in this brief.  On March 3, 2025, Plaintiffs only submitted 186 challenges to the Special Master for the same group of custodial files, so Plaintiffs withdrew approximately 88% of their challenges without Uber revising its log or otherwise providing additional information. Following the meet and confer process, Plaintiffs now challenge 150 documents.

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB

1   parties present in its privilege log.  These materials, when reviewed in conjunction with the challenged

2   documents, provide much of the necessary background to support Uber's privilege assertions.

3          Uber now submits additional evidence, through the attached declarations from Scott Binnings,

4   Uber's Associate General Counsel, Safety and Core Services (Ex. A), Jennifer Handley, Senior

5   Director, Safety Legal, Global (Ex. B), and Maureen Frangopoulos, Senior Legal Director, Central

6   Strategy and Special Matters, Global, at Uber (Ex. C), addressing documents for which additional

7   factual support helps to clarify Uber's privilege assertions. Uber's counsel will also be available to

8   assist with any questions the Special Master may have when reviewing the documents.[3]

9   **III.     PLAINTIFFS' CHALLENGES LACK MERIT**

10         **A.     Uber's Documents Are Privileged Even If They Are "Business Related."**

11         Plaintiffs have challenged approximately 101 entries in whole or in part on the basis that the

12  communication "appears" to be "business related" or appear to have a "primary business purpose."

13  Such challenges are meritless and should be rejected by the Special Master.  Judge Cisneros, in fact,

14  rejected similar challenges when she upheld, in whole or in part, 84-92% of Uber's privilege

15  claims.  Like any business, Uber regularly seeks legal advice from its in-house counsel on matters

16  pertaining to its business.  Indeed, all of Uber's documents are "business related."  And the subject

17  line or title of its emails and other communications will be on business topics, such as background

18  checks or marketing.  But that does not mean that the primary purpose of such communications is non-

19  legal.  *See, e.g.*, *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("A client is entitled to hire

20  a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs. This

21  principle has long been the law.").

22         When a communication involves multiple purposes, courts look to whether the "primary

23  purpose of the communication is to give or receive legal advice, as opposed to business" advice.  *In*

24  *re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021).  In the *Staley* case, the plaintiffs argued that

25  redacted portions of certain memoranda prepared for high-level company decision-makers on business

26

27  _____
    [3] Uber reserves its objections to the expedited timing and procedures outlined in Master Order No. 2.

28  DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR
    CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2
    (ECF 2357) ¶ III (6)

                                                                              Case No. 3:23-MD-3084-CRB

1   decisions about entering certain business deals could not be privileged because the primary purpose

2   of the memoranda was related to business advice.  The court directly rejected that argument, explaining

3   that "the attorney-client privilege can still obtain even where a business decision is implicated.

4   Specifically, if an attorney gives a client *legal advice on a business decision*, that communication is

5   protected by the privilege (assuming, *e.g.*, that the communication was made in confidence and in his

6   or her capacity as an attorney)." *Staley v. Gilead Scis., Inc.*, 2021 WL 4318403, at *2 (N.D. Cal. July

7   16, 2021) (citing cases).

8           For these reasons, the Court should reject Plaintiffs' challenges.

9           **B.      Privilege Attaches Where Attorneys Are CC'd.**

10          Throughout the privilege disputes in this litigation, Plaintiffs have unsuccessfully challenged

11   privilege claims on the basis that the attorney is in the "cc" field and that no legal advice "appears to

12   have been sought."  This time, Plaintiffs have challenged approximately 13 documents in whole or in

13   part on that basis.  While it is true (as Uber has always recognized) that *merely* copying an attorney

14   does not on its own make a communication privileged, this does not mean that an attorney being in

15   the "cc" field of an email means the document is not privileged.  Indeed, the Court has previously

16   rejected such "attorney-in-the-cc-field" challenges by Plaintiffs.  (ECF 2005 12/21/24 Order at 5-6,

17   Doc. 36737).

18          In email communications, "[t]he attorney being in the CC, rather than To or From, column is

19   not prima facie evidence that the email is not privileged.  Rather, the deciding issue is whether the

20   communications sought legal advice from a lawyer." *Heartland Consumer Prods. LLC v. DineEquity,*

21   *Inc.*, 2018 WL 3861648, at *1 (S.D. Ind. Aug. 14, 2018); *see also Bartholomew v. Avalon Cap. Grp.,*

22   *Inc.*, 278 F.R.D. 441, 448 (D. Minn. 2011) ("[T]he mere use of the carbon copy feature on e-mail

23   software is not prima facie evidence that the communication is not a privileged communication.").

24   Relatedly, "[t]he mere fact that a document includes multiple recipients or CC recipients does not

25   mean that the privilege cannot attach." *Engurasoff v. Zayo Grp. LLC*, 2015 WL 335793, at *2 (N.D.

26   Cal. Jan. 23, 2015).

27

28
DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR
CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2
(ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB

Two key facts are critical to consider when considering such privilege challenges.  First, under the Court's ESI order, email chains are not threaded—meaning that each separate email within a single email chain discussion is produced iteratively or placed on a privilege log as a separate document.  This has resulted in Plaintiffs challenging emails in which an attorney is in the "cc" field, even when the attorney sent prior emails in the same chain providing legal advice, or even initiated the entire email chain discussion.  Second, when the "reply all" feature is used on Uber's GMail system, the sender of the prior email is placed in the "to" field and all other recipients are placed in the "cc" field.  As a result, whether an attorney happens to be in the "cc" field within a given email within a larger email chain is almost entirely irrelevant to whether the attorney gave or sought advice in the overall discussion (*i.e.*, on other prior or later threads).  What matters is whether legal advice is sought, provided, or otherwise disclosed, not which email field is used to communicate with an attorney.

For example, Plaintiffs challenged JCCP_MDL_PRIVLOG016042 in part because the attorney was "cc'ed with many non-attorneys."  However, as described in Uber's privilege log, the e-mail thread related to anticipated litigation and reports of driver sexual assault or sexual misconduct.  The email chain was initiated by in-house counsel Scott Binnings and subsequent emails responded to Mr. Binnings' request.  The fact that Mr. Binnings was in the "cc" field in the final email in the chain does not change the privileged nature of the discussion.

## C.    Privilege Extends to Non-Attorney Communications.

Plaintiffs have also challenged approximately 18 privilege claims because no attorney is on the email or listed as author or collaborator of a document.  There are two primary reasons such challenges, without more, are fundamentally flawed.  First, under certain circumstances, communications between non-lawyers are privileged.  The attorney-client privilege protects communications seeking or providing legal advice.  *See, e.g.*, *Dolby Lab'ys*, 402 F. Supp. 3d at 863.  But importantly, it also "may attach to communications between nonlegal employees where: (1) the employees discuss or transmit legal advice given by counsel; and (2) an employee discusses her intent to seek legal advice about a particular issue."  *Id.* at 866; *see also OwLink Tech., Inc v.*

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB

1   *Cypress Tech. Co., Ltd*, 2023 WL 4681543, at *2 (C.D. Cal. June 29, 2023) ("Under California law,

2   the communications of corporate employees with counsel, *or with each other about legal advice*, are

3   privileged." (emphasis added)).  And documents "sent for the purpose of facilitating legal advice" are

4   privileged.  *United States ex rel. Schmuckley v. Rite Aid Corp.*, 2023 WL 425841, at *3 (E.D. Cal. Jan.

5   26, 2023). "[W]here the specific purpose of [a] document is to seek legal advice[, even if] the

6   document is sent to nonlegal business staff for the purpose of informing them that legal advice has

7   been sought or obtained, the attorney-client privilege obtains even though the document was provided

8   to nonlegal personnel."  *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 2585038, at *3 (N.D. Cal.

9   Aug. 30, 2006).  And "[c]ommunications containing information compiled by corporate employees

10  for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-

11  client privilege."  *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18,

12  2003).

13          Second, it is not uncommon that the final email in a chain does not include a lawyer—even

14  where an attorney is an integral part of the conversation lower in the thread and provides legal advice—

15  such as where an email chain is forwarded (without including the attorney) to someone else in the

16  company to make them aware of the legal advice provided.  Other times, an employee working at the

17  direction of in-house counsel may send an email or other communication on behalf of counsel.  *See*

18  *USA v. Shaw*, 2023 WL 4539849, at *2 (N.D. Cal. July 12, 2023) (agreeing "that the attorney-client

19  privilege applies to investigations performed by non-attorneys working at the direction of counsel.

20  . . .  [C]onduct and communications of non-attorney employees, agents and investigators undertaken

21  at direction of counsel are work-product protected"); *United States v. Nobles*, 422 U.S. 225, 238–39

22  (1975) ("[T]he [attorney work product] doctrine protect[s] material prepared by agents for the attorney

23  as well as those prepared by the attorney himself.").  Thus, whether a communication is protected by

24  the attorney-client privilege requires a careful analysis of the contents of the documents, as Uber has

25  done, rather than a mechanical or cursory review of log metadata fields as Plaintiffs have done.

26  Plaintiffs' challenges in this regard should be rejected.

27

28

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR
CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2
(ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB

1    For example, Plaintiffs challenged the privilege in JCCP_MDL_PRIVLOG019369 because

2    there was "no indication redacted portion is seeking legal advice [and] no attorney on [the] email."

3    That challenge is meritless, because as Uber's privilege log clearly indicates (and the Special Master's

4    review will confirm), the email thread "discuss[es] legal advice from in-house counsel regarding use

5    of cameras or recording devices in vehicles."  When non-attorneys discuss or relay legal advice from

6    counsel, even when counsel is not a part of that discussion, the discussion remains privileged.  *See,*

7    *e.g. Dolby Lab'ys*, 402 F. Supp. 3d at 866; *OwLink Tech.*, 2023 WL 4681543 at *2.

8

9    DATED: March 10, 2025                    Respectfully submitted,

10

11                                            **SHOOK HARDY & BACON L.L.P.**

12                                            By: */s/ Maria Salcedo*
                                              MARIA SALCEDO (Admitted *Pro Hac Vice*)
13                                                msalcedo@shb.com
                                              **SHOOK, HARDY & BACON L.L.P.**
14                                            2555 Grand Blvd.
                                              Kansas City, MO 64108
15                                            Telephone: (816) 474-6550
                                              Facsimile: (816) 421-5547
16

17                                            MICHAEL B. SHORTNACY (SBN: 277035)
                                                mshortnacy@shb.com
18                                            **SHOOK, HARDY & BACON L.L.P.**
                                              2121 Avenue of the Stars, Ste. 1400
19                                            Los Angeles, CA 90067
                                              Telephone: (424) 285-8330
20                                            Facsimile: (424) 204-9093

21
                                              PATRICK OOT (Admitted *Pro Hac Vice*)
22                                                oot@shb.com
                                              **SHOOK, HARDY & BACON L.L.P.**
23                                            1800 K St. NW Ste. 1000
                                              Washington, DC 20006
24                                            Telephone: (202) 783-8400
                                              Facsimile: (202) 783-4211
25

26                                            KYLE N. SMITH (*Pro Hac Vice* admitted)
                                                ksmith@paulweiss.com
27

28
DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR
CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2
(ECF 2357) ¶ III (6)
                                                                        Case No. 3:23-MD-3084-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
  jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile:  (202) 223-7420

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

---

12

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR
CUSTODIAL FILES SULLIVAN, FULDNER, AND CINELLI – PURSUANT TO SPECIAL MASTER ORDER NO. 2
(ECF 2357) ¶ III (6)