UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br>ALL CASES. | Case No. 23-md-03084-CRB   (LJC)<br><br>**ORDER REGARDING STATUS REPORT REGARDING METADATA OVERLAY**<br><br>Re: Dkt. No. 2450 |

Uber has provided two metadata overlays in the course of this litigation, consisting of additional or updated metadata for documents that Uber had previously produced. Uber provided the first overlay in September of 2024 and the second overlay in February of 2025. The parties dispute whether the February overlay included metadata that Uber should have produced sooner and how Uber should handle future metadata updates. The parties filed a status report on March 8, 2025 addressing this issue (Dkt. No. 2450), soon after Uber provided a list to Plaintiffs identifying around 40,000 documents that received updated metadata in the February overlay. This Order assumes the parties' familiarity with the history of the case and the course discovery.

The Court understands Uber's position to be that the overlays at least primarily added metadata to earlier-produced documents to indicate their relationships to later-produced documents. For example, if a Google Drive document was produced as part of the first tranche of custodial discovery (perhaps with one or more emails that linked to it), but another email that linked to the same document was later produced as part of the third tranche, the Tranche 1 Google Drive document would not and could not have had metadata indicating that the Tranche 3 email linked to it, because that email wasn't part of the production at the time the metadata was

created.[1]  The overlay would add that metadata to the Tranche 1 Google Drive document.

The parties appear to dispute both: (1) whether that was the sole or primary purpose of the overlay; and (2) whether Uber had an obligation to provide that sort of overlay in conjunction with each document production, rather than awaiting Plaintiffs' request for updated metadata.

The first question seems to require further investigation.  Plaintiffs assert that they have not had time to investigate fully, having only recently received the list of documents for which metadata was updated.  And Uber's portion of the Status Report never clearly asserts that the metadata overlay consisted solely of adding document relationship information that would have been logically impossible to include in an earlier production.  If so, then Uber likely met its obligations, as discussed further below.  Even if the overlay also included some de minimis correction of metadata erroneously omitted from an earlier production, that might be understandable for the scale of discovery in this litigation, although any such corrections should have been indicated clearly.  On the other hand, if the overlay included a significant amount of metadata that could and should have been included earlier, that might demonstrate a failure by Uber to meet its obligations under the ESI Protocol.  The parties are ORDERED to continue to investigate, and meet and confer regarding, the nature of the February metadata overlay.  The Court expects collaboration on this issue: Uber is in a better position to know what it produced; Plaintiffs are in a better position to explain their concerns and any reason for doubt as to Uber's explanation; and the parties will not reach a satisfactory resolution without working together.

As for the second question, the ESI Protocol does not appear to include a requirement that Uber update metadata for documents previously produced when the subsequent production of other documents creates relationships within the overall production that did not exist at the time of the first production.  The word "overlay" appears only once, in a subpart of the "Miscellaneous Provisions" section, which provides that the producing party must indicate "[o]ther relevant information about" a given production, "i.e., whether the production is an overlay file for a previous production."  Dkt. No. 524 at 20, § 19(f).  Neither that provision nor anything else in the

---

[1] The Tranche 3 email, in contrast, should from the start have had metadata identifying the Tranche 1 document as an attachment.

2

1  ESI Protocol appears to speak to the question of the circumstances or timing in which an overlay
2  should be provided. Instead, Appendix 1 to the ESI Protocol provides that the "metadata fields
3  detailed in Appendix 2 should be produced for each Document to the extent that such information
4  is available or . . . created at the time of collection and processing," *id.* at 24, which would not
5  include metadata that depends on a different document being included in a separate, subsequent
6  production set. If Uber provided metadata that was accurate and complete at the time it produced
7  a document, Uber likely not only met its obligations under the ESI Protocol at the time of that
8  production, but also did not breach any clear requirement of the ESI Protocol by failing to provide
9  a metadata overlay for earlier-produced documents each time it produced additional documents
10 with some relevant connection to them.

11     That said, providing a metadata overlay has obvious practical value to Plaintiffs' ability to
12 understand and review the documents Uber has produced—and seems particularly warranted when
13 many of Uber's most recent document productions have resulted from Uber initially withholding
14 documents that should have been produced sooner. Although Uber offers a plausible explanation
15 of how Plaintiffs could identify relationships among documents using Google Drive document
16 identification numbers and the extracted text of hyperlink URLs to such documents, that process
17 appears to be more cumbersome and less amenable to automation than the more direct linkage
18 contemplated by the metadata fields the parties agreed Uber would provide. It therefore seems
19 that Uber should provide metadata overlays corresponding to subsequent document productions in
20 as close to real time as is technologically practical, but Plaintiffs would not be left entirely without
21 ways to identify document families in the interim if it is not practical for Uber to provide
22 contemporaneous overlays at the time of each production. The parties are likely better situated
23 than the Court to determine a technologically feasible schedule for providing overlays that does
24 not impose an undue burden.

25     The parties are therefore ORDERED to continue to meet and confer, and to file a further
26 status report—or preferably a stipulation—no later than March 14, 2025 addressing: (1) whether
27 the February metadata overlay consisted of family relationship information that could not have
28 been included when documents were originally produced; and (2) the schedule for production of

3

1  overlays providing such family relationship information going forward.

2  Finally, the Court notes two issues in the Status Report that should not be repeated in
3  further briefing, both of which have also arisen in previous filings.  First, Plaintiffs appear to have
4  raised several requests for relief that had not been the subject of sufficient efforts to meet and
5  confer—even as to whether or how they would be presented to the Court, much less whether the
6  parties could resolve the issues on their own.  Second, Uber attributes difficulties in discovery to
7  "Plaintiffs' demands for an expanded . . . scope" of production, but the purported "expansions"
8  apparently refer in large part to Plaintiffs' unwillingness to acquiesce to Uber's unilateral and
9  mostly unwarranted withholding of documents.  Dkt. No. 2450 at 5.  Neither of those practices is
10 conducive to an effective and collaborative resolution of the issues presented, which may require
11 creativity and compromise to resolve.

12 **IT IS SO ORDERED.**

13 Dated: March 11, 2025

LISA J. CISNEROS
United States Magistrate Judge