# EXHIBIT 1

**FILED UNDER SEAL**

[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**<br><br>This Document Relates to:<br><br>All Cases | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF POLICY DOCUMENTS AND INSPECTION AND FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**FILED UNDER SEAL**<br><br>Judge:   Honorable Lisa J. Cisneros<br>Date:    TBD<br>Time:    TBD<br>Courtroom:  G – 15th Floor |

## MOTION TO COMPEL

Plaintiffs respectfully move the Court to (1) compel Uber to produce all relevant policies, underlying responsive hyperlinked documents, and operational guidelines in connection with the 40 policies Plaintiffs identified; (2) compel Uber to make available its Google Drive, Knowledge Base, and uKnowledge systems for inspection; and (3) order sanctions for Uber's repeated non-compliance with Court orders regarding policy production. Plaintiffs base this motion on the Declaration of Roopal P. Luhana and attached exhibits, as well as the Memorandum of Points and Authorities in support.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Uber has not complied with the Court's December 19 and January 23 Orders.

After months of back-and-forth about Uber's policies and its internal policies, contained in Google Drive, Knowledge Base, and uKnowledge systems, the Court ordered a simple solution. To cut through the noise about scope and completeness of production, the Court ordered Plaintiffs to identify "forty policies of particular importance to the case." ECF 1996 at 1. Uber, in turn, was required to "produce all versions of these policies and any related operational guidelines no later than January 10, 2025," with "production of other relevant policy documents no later than January 31, 2025." *Id.* The Court specifically understood the scope of production to include "whatever document those [40] policies link." 12/19/24 H'rg Tr. at 37:3-12. Then, when the parties disputed whether Uber had adequately produced documents linked to from within policies, the Court ordered Uber to "provide a letter … explaining the criteria Uber used to determine whether to produce documents hyperlinked from the policy-related documents Uber has produced." ECF 2138 at 1.

Uber has not complied with the Court's orders. In the January 27 letter the Court ordered, Uber did not "explain the criteria" for distinguishing between hyperlinked documents produced and those withheld; instead, Uber disclaimed any such production. Citing its views of "the priorities and guidance set forth in the Court's Order, Uber asserted that "The Court did *not* order Defendants to produce all links in those policies." Ex. A at 3-4.[1] Uber committed only to produce documents specifically identified by Plaintiffs and certain "related operational guidelines by subject matter." *Id.* at 3-5. (The 3.5-page declaration Uber provided on January 31, 2025 did not even mention hyperlinks. Ex. B.)

Uber sets up a strawman: of course the Court did not order Uber to produce "all" links; but the Court ordered Uber to explain which links it was producing, which it was not, and the "criteria" for distinguishing between the two. ECF 2138 at 1. Uber simply rejects the premise of the Court's order: "Defendants' inquiry did not primarily consist of looking for links within the policies, as that would have been both overinclusive and underinclusive." Ex. A at 5. Uber says

---

[1] All exhibits are attached to the Luhana Declaration.

1  that "the Court did not require Defendant to produce *all* related operational guidelines," *id.*
2  (emphasis in original), but that is exactly what the Court said: "Uber shall produce … *any* related
3  operational guidelines." ECF 1996 at 2 (emphasis supplied. Moreover, the Court expressly
4  criticized a "piece-meal process that places the burden on Plaintiffs to identify particular policies
5  and related operational protocols for production." ECF 1996 at 2.
6        Uber all but conceded at the February 27, 2025 Discovery Status Conference that,
7  whatever it did to identify "operational guidelines" by "subject matter," it did not produce all
8  relevant hyperlinked documents contained in the 40 policies Plaintiffs selected. Review of what
9  Uber has produced demonstrates the flaws in Uber's approach. The following are examples of
10 clearly relevant hyperlinked documents, contained in the 40 policies Plaintiff selected, that
11 Plaintiffs have been unable to locate in Uber's productions.

[Lines 12–19 redacted]

20  *Id.* at 2274070.

[Lines 21–28 redacted]

1 ██████████████████████████████████████
2 ██████████████████████████████████████
3 ████████████████████████████
4 ████████████████████████████
5 ████████████████████████████
6 ████████████████████████████
7 ████████████████████████████
8 ████████████████████████████
9 ████████████████████████████

*Id.* at 2563892. This document has not been produced.

Finally, **Exhibit F** is a policy titled ████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████

Process Overview

Full process can be found in this document.

*Id.* at 2267526. As far as Plaintiffs can tell, "this document" has not been produced.

Uber's reinterpretation of the Court's orders does not mitigate these production gaps; it exacerbates them. Uber claims it has identified "related operational guidelines by subject matter." Ex. A at 5. But those subject-matter determinations are clearly too constrictive, because they missed the obviously relevant documents discussed above. Uber distinguishes between "hyperlinks" and "operational guidelines and the policies," 2/27/25 H'rg Tr. at 47:6-12, but the above examples show that the two are not distinguishable.

And even where Uber has produced a relevant document—whether as part of a "subject matter" search or through custodial productions—Uber does not provide the necessary metadata to permit Plaintiffs to find linked documents and pair them with policies. Luhana Decl. ¶¶ 9-17. It is critical to preserve and maintain the relationship between the policies (the parent) and the

1  underlying hyperlinked documents or related operational guidelines (the children). Uber has not
2  produced the familial information that is critical to connect and give Plaintiffs the ability to
3  authenticate the documents in depositions and otherwise. *Id.*

4  It bears emphasis that it is not disputed that Uber *can* produce the hyperlinks the Court
5  ordered, and the associated metadata. These are not the "Hyperlinks to Non-Google Drive
6  Documents" addressed in the Court's March 3 Order. ECF 2432 at 2. Which respect to those
7  hyperlinks, the Court found that production was "not technologically feasible at scale." *Id.* The
8  policies at issue here, in contrast, exist either in Google Drive, or in self-contained Knowledge
9  Base or uKnowledge systems. With respect to each of those systems, production of metadata and
10 hyperlinks is technologically feasible and Uber has never maintained otherwise. *See* Ex. B (Uber
11 declaration) ¶ 9 (explaining that "guidelines and operating procedures" are stored to be "available
12 to support agents and employees who provide customer service and other support to the
13 business"); *id.* ¶ 13 ("[T]hese Knowledge Bases have been and are housed on a common cloud
14 computing infrastructure … [and] are accessible to employees on an as-needed basis, depending
15 on the employees' roles and responsibilities within the company.").

16  **II.    The Court should compel inspection of Uber's Google Drive, Knowledge Base, and uKnowledge systems.**

18  To solve the problems created by a "a piece-meal process that places the burden on
19  Plaintiffs to identify particular policies and related operational protocols for production," the
20  Court hypothesized the possibility of Uber "producing the entirety of its current and historical
21  repositories for policies and procedures" such that "Plaintiffs can simply review those repositories
22  to locate the relevant procedures and protocols." ECF at 3. Given Uber's ongoing failure to
23  complete adequate production despite numerous orders and production extensions, it is
24  appropriate for the Court to order Uber produce the entire Google Drive, as well as its later-used
25  Knowledge Base and uKnowledge systems, for inspection. *See, e.g.*, *S. Peninsula Hosp., Inc. v.
26  Xerox State Healthcare, LLC*, 2019 WL 1873297, at *6-7 (D. Alaska Feb. 5, 2019) (ordering
27  production of healthcare database, and overruling defendant's objection that plaintiff should seek
28  targeted data pulls instead).

### III. The Court should order sanctions.

In the December 19 Order, the Court warned that "if the production of policy-related document discovery remains incomplete despite court orders, consequences—such as sanctions—may be imposed." ECF 1996 at 3. On February 27, the Court reiterated: "[T]o the extent that there are hyperlinks that have not been produced, and to the extent that those hyperlinks are relevant policy documents that should have been produced by January 31, 2025, then there's going to be a problem." 2/27/25 H'rg Tr. at 47:13-19.

There is a problem. Plaintiffs first sought Uber's policies by requests for production served more than a year ago, with production ordered by complete by September. Plaintiffs first raised concerns with the Court about Uber's identification of policies for production in June 2024. ECF 588 at 8. Plaintiffs have spent countless hours seeking fulsome production, but have received only constantly shifting explanations and missed deadlines. This timeline of events leading up to the Court's December 19 Order is illustrative:

- May 17, 2024 – Plaintiffs provide Uber a list of 329 policies contained in Google Drive, Knowledge Base, and uKnowledge for production. Plaintiffs inform Uber that the 329 policies are not the total universe of policies sought but are policies that have been previously identified in other litigations.

- June 4, 2024 – Plaintiffs follow up with Uber on producing Uber Policies.

- July 15, 2024 – Plaintiffs follow up with Uber on producing Uber Policies.

- July 17, 2024 – Meet and confer with Uber concerning Policies, Policy Indexes and Table of Contents.

- July 18, 2024 – The Court orders Uber to produce any index, list, table of contents, or some other comparable record, of Uber's policies. The Court orders Uber to produce all related Homepages that operationalize the Policies. To the extent these polices are on web-based interfaces, the Court orders Uber to produce these Policies in a form the Parties agree on. All of these productions are to occur no later than July 26, 2024.

- July 22, 2024 – Plaintiffs follow up with Uber Counsel regarding production Uber Policies, Knowledge Base Homepages, and Policy Indexes.

- July 24, 2024 – Meet and confer with Uber regarding production of Uber Policies, Knowledge Base Homepages, and Policy Indexes. Uber agrees to begin producing Policies including Knowledge Base Documents on August 2, 2024. The Parties agree the policies should be produced with Headers/Footers that identify the name of the policy, version of the policy, date of the policy and managers who sign off on the policy.

- July 26, 2024 – Uber produces six Knowledge Base Homepages / Indexes.

- August 2, 2024 – Plaintiffs request a meet and confer with Uber regarding production of Uber Policies and Knowledge Base Documents.

- August 5, 2024 – Plaintiffs identify 15 other unproduced Knowledge Base Homepages / Indexes referenced in the Homepages/Indexes produced by Uber on July 26, 2024. Plaintiffs stress that Uber has not produced *any* Homepages/Indexes concerning Riders, only those concerning Drivers.

- August 15, 2024 – Plaintiffs follow up with Uber Counsel concerning additional production of Knowledge Base Homepages, indexes and Documents.

- August 16, 2024 – Uber's counsel states that they are continuing work to supplement productions to meet their September 1, 2024 deadline.

- September 13, 2024 – Parties meet and confer concerning the Joint Discovery Letter regarding Production of Uber Policies and Knowledge Base Documents. Uber MDL Counsel and Uber In-House Counsel are present. In-House Counsel commits that additional rolling productions of Knowledge Base Documents and other Policies will occur. In-House Counsel requests that Plaintiffs provide a list of policies for production.

- October 9, 2024 – Plaintiffs identify 860 Uber Policies by name. The list cites the Homepage/Index/Directory that refer to the 860 Polices being requested.

- October 15, 2024 – Plaintiffs ask Uber if it intends to withhold any Policy from the October 9, 2024 list.

- October 15, 2024 – Uber informs Plaintiffs that it is collecting these policies for production. Uber sends questions to PSC Counsel concerning the relevance of four Polices from the October 9 Policy List.

- October 15, 2024 – Plaintiffs follows up with additional information to Uber, informing Uber of the relevancy as to three of the four Policies in question. Plaintiffs agree to remove one of the four policies in question based on relevance. Plaintiffs provide Uber a short extension and requests Uber produce all other Policies by October 18, 2024.

- December 16, 2024 – Plaintiffs raise production issues with non-custodial documents, including policies, with the Court in a Joint Discovery Status Conference Statement.

Luhana Decl. ¶ 18.

Under Rule 37, the Court may issue sanctions where a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Sanctions may include directing that issues or facts be taken as established or prohibiting the disobedient party from offering defenses or introducing evidence. Further, "unless the failure was substantially justified or other circumstances make an award of expenses unjust," the Court "must order the disobedient party,

1  the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees,
2  caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). The "burden of showing substantial
3  justification and special circumstances is on the party being sanctioned." *Varney v. Cal. Hwy.*
4  *Patrol*, 2013 WL 2299544, at *3 (N.D. Cal. May 24, 2013).

     In this case, Uber has failed to comply with multiple Court orders for months. At minimum, the Court should (1) order Uber to incur all costs associated with Plaintiffs' receiving and reviewing the entire Knowledge Base database, as requested above (including reasonable expert fees), and (2) reimburse Plaintiffs for their fees and expenses incurred in pursing policy-related discovery from Uber that should have been produced long ago.

Dated: March 5, 2025

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: March 5, 2025               By:    */s/ Andrew R. Kaufman*
                                          Andrew R. Kaufman