RANDALL S. LUSKEY (SBN: 240915)
   rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
   **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
   ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
   cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
   akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
   **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF POLICY DOCUMENTS AND INSPECTION AND FOR SANCTIONS**<br><br>Judge:    Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

*Defendants timely produced all available versions of the 40 policies and other documents Plaintiffs identified*, other than two withheld and logged for privilege. This is not disputed. Defendants' productions consist of *over 7,800 documents comprising nearly 72,000 pages* of policies, related operational guidelines, and other requested materials. Defendants have made diligent efforts to identify and collect relevant policy materials, but Plaintiffs now demand indiscriminate production of a massive volume of hyperlinks and non-existent metadata for documents that are ancillary, at best, to the relevant policy materials. Plaintiffs' new demand is not proportional or technologically feasible at scale, as Defendants have conveyed during conferrals. Plaintiffs are misconstruing the Court's directions to wrongly insist that they are entitled to more. Defendants' position has now been confirmed by the Court after extensive briefing and argument on substantially the same issue. Plaintiffs' motion to compel and fatally defective motion for sanctions should be denied.

## BACKGROUND

The record shows the great efforts that Defendants have undertaken not only to explain and educate Plaintiffs' counsel on Defendants' structure and storage of policy-related documents (beyond what is required by Rule 34), but also to identify responsive materials.

On July 26, 2024, as directed by ECF No. 706, Defendants provided Plaintiffs with an index created by counsel that identified company policies for certain categories. Ex. 1.[1] Defendants also provided the homepages of its operational guidelines, known as Knowledge Bases.

On December 19, 2024, the Court directed Plaintiffs to "select no more than forty policies of particular importance to the case." ECF No. 1996 at 2. Defendants were ordered to "produce all versions of those policies and any related operational guidelines no later than January 10, 2025, along with a letter from counsel setting forth a timeline of operative versions of each policy, identified by Bates number." The Court also directed Defendants to "complete production of other relevant policy documents no later than January 31, 2025." ECF No. 1996 at 2. Defendants did exactly what the Court ordered. Of the 40 policies and other materials Plaintiffs identified, Defendants timely produced all available versions, with the exception of two legal guidelines that were withheld and logged for

---

[1] Ex. 1-3 are attached to the Declaration of Veronica Gromada (Mar. 11, 2025) ("Gromada Decl.") and Ex. 4-5 are attached to the Declaration of William Anderson (Mar. 11, 2025) ("Anderson Decl.").

1

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
Case No. 3:23-MD-3084-CRB

1  privilege, and also produced various guidelines that operationalize policies (Knowledge Bases) and
2  custodial documents, as requested by Plaintiffs. The January 10 production alone consisted of 572
3  documents comprising almost 7,300 pages. Gromada Decl. ¶ 3. Along with this production,
4  Defendants also provided an attorney letter with a 21-page timeline of the operative versions of each
5  policy, as well as a decoder prepared by counsel to tie Plaintiffs' requests to the specific titles of the
6  documents as stored by Defendants. Ex. 2.

7  Still unsatisfied, on January 23, 2025, Plaintiffs requested, and the Court ordered, Defendants
8  to provide a declaration, explaining "how its relevant policies, as well as its guidelines and operating
9  procedures implementing those policies, have been stored and organized during the relevant period in
10 this MDL, and when they have been updated." ECF No. 2138 at 1-2. The Court also ordered defense
11 counsel to provide a letter "explaining the criteria Uber used to determine ***whether*** to produce
12 documents hyperlinked from the policy-related documents Uber has produced." *Id.* (emphasis added).
13 On January 27, 2025, Defendants provided the required letter and explained that, consistent with prior
14 conferrals, "Defendants' inquiry did not primarily consist of looking for links within the policies, as
15 that would have been both overinclusive and underinclusive of 'related operational guidelines'"
16 contemplated by ECF No. 1996. Ex. 3. This is because Defendants' January 10 productions contained
17 ***more than 8,800 hyperlinks*** to various internal and external sources, including documents, tools, or
18 user interfaces that may link to global systems that may have restricted access, thus requiring even
19 further investigation to know whether the link could even be relevant. Rather than engaging in an
20 impossible, manual hyperlink-by-hyperlink assessment, "Defendants identified related operational
21 guidelines by subject matter," which was informed in significant part by the requests provided by
22 Plaintiffs' counsel. Defendants provided Plaintiffs with a 71-page chart listing policies and the related
23 operational guidelines produced through January 27. Ex. 3. Defendants then followed with the
24 required declaration (*see* Jan. 31 Anderson Decl. Ex. B) and additional policy documents on January
25 31. By this date, Defendants had produced over 72,000 pages of policy-related documents.

26 Plaintiffs then raised no issue with Defendants' productions until February 14, when they
27 suddenly claimed that the embedded link dispute was ripe for PTO 8 escalation. *See* Gromada Decl. ¶
28

2
DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
Case No. 3:23-MD-3084-CRB

6. During the conferral process, Plaintiffs declined (despite Defendants' repeated asks) to identify a single example of a link Plaintiffs believed was relevant and not produced (*see id.* at ¶¶ 7-8), choosing instead to cherry pick a handful of links for the first time in their motion to compel, one of which was withheld and logged for privilege and another link that originated in a document outside of the 40 Plaintiffs identified per ECF No. 1996, which does not appear to be relevant. *See* Pls.' Ex. F, E.

## ARGUMENT

### I.  Defendants Have Complied with the Court's Orders.

Defendants have timely complied with each of the Court's orders on this topic. Defendants' productions have included not only the policies that Plaintiffs' counsel identified as important to their claims, but also operational guidelines (Knowledge Bases), with the versions (as requested by Plaintiffs) covering all available dates. While Plaintiffs continue to suggest that they are entitled to all hyperlinked documents within the 40 policies and the other materials Defendants produced, Defendants have repeatedly explained that doing so is not technologically feasible as Plaintiffs demand. *See*, *e.g.*, ECF No. 499-4. As the Court found in the Order Regarding Discovery Letter Brief Regarding Hyperlinks (ECF No. 2432), Defendants have demonstrated with undisputed evidence that it is not technologically feasible to produce, at scale, hyperlinked documents other than Google Drive files when linked in a Google email. ECF No. 2432 at 2, 4; *see also* ECF No. 2194-10, ¶¶ 18-22. This is especially true as Plaintiffs continue to insist on receiving not only the linked document, but also the "metadata that permits Plaintiffs to review a policy (including each of its versions) and then locate the operational guidelines and other documents to which that policy links." ECF No. 2438-1, 11. This metadata cannot be provided because it does not exist. Anderson Decl. ¶¶ 14-16. The Court's guidance on the production of hyperlinked documents and metadata within non-Gmail documents applies to all of the policy and Knowledge Base documents at issue here. ECF No. 2194, at 4-5.

The bulk identification, collection, extraction, and association of over 8,800 hyperlinks–which requires manually clicking and accessing each hyperlink–is infeasible. Anderson Decl. ¶¶ 13-16. Instead, Defendants identified operational guidelines by subject matter, *i.e.*, related to safety and background checks, in keeping with what is technologically feasible. This approach was consistent

3

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
Case No. 3:23-MD-3084-CRB

with the Court's Order to produce "related operational guidelines" and proportional. *See Alivecor, Inc. v. Apple, Inc.*, 2023 WL 2224431 (N.D. Cal. Feb. 23, 2023) ("'[P]erfection in ESI discovery is not required; rather a producing party must take reasonable steps to identify and produce relevant documents.'").

## II. Plaintiffs' Interpretation of Prior Orders Is Inconsistent with the Hyperlinks Order and Demands Discovery that Is Not Proportional to the Needs of the Case.

Plaintiffs' motion is based on a fundamental misinterpretation of the Court's orders, which is evident in light of the Court's decision on hyperlinks and metadata. The Court has never required a hyperlink-by-hyperlink manual collection, review, and production, unlimited in volume, as Plaintiffs seem to expect. Similarly, the Court has not required Defendants to create metadata to associate a hyperlinked document to the document containing the hyperlink. *See* ECF Nos. 2432 & 524.

During the conferral process, Defendants reminded Plaintiffs of the technological difficulties associated with the bulk production of Knowledge Base documents, which is further complicated by Plaintiffs' unlimited request for hyperlinks throughout the history of the company. The Court recently gave clear guidance on this issue: Defendants have provided "undisputed evidence" that collection of "documents hyperlinked in other documents" is "not feasible," while "Plaintiffs have not since presented any evidence that it is technologically feasible to automate the production of hyperlinks within non-Google emails or chats." ECF No. 2432, at 4. Not only are the links at issue here "within non-Google emails or chats," but also there are more than 8,800 such links (*see* Anderson Decl. ¶ 13), a far cry from the individualized requests for "40 links" or "100 links" the Court anticipated Plaintiffs would request. Feb. 27, 2025 Disc. Status Conf. Tr. 42:17-24. Collecting links in this volume in any reasonable period of time requires automated processes, and as the Court has noted, none exists. Anderson Decl. ¶¶ 13-16. Just as the Court concluded on hyperlinks and metadata, "there is no obligation where it is technologically infeasible for Uber to do so at scale." ECF No. 2432 at 3.

Even if collecting, analyzing, and producing hyperlinks were technologically feasible at scale, such an effort would not be proportional to the needs of this case. As an initial matter, Plaintiffs have not demonstrated that all of the thousands of links, collectively, are relevant or responsive. In fact, many of the links are not "related operational guidelines," but rather internal bookmarks or other non-

responsive tools to help the user navigate the document. Significantly, Plaintiffs declined numerous offers by Defendants to investigate, and as appropriate, supplement its production with specific linked documents, as feasible. Yet, ***Plaintiffs did not identify a single link to Defendants until filing their Motion to Compel***. Every time Defendants requested Plaintiffs to provide specific hyperlinks and offered to investigate them for production, Plaintiffs rebuffed the offer and asserted that Defendants had to collect "all of them," despite the fact that the documents include links that are external or navigational. Gromada Decl. ¶ 8. This is inconsistent with the Court's guidance, impractical, and not proportional to the needs of the case.

### III.    Plaintiffs Are Not Entitled to Unfettered Access to Defendants' Internal Systems.

Because Defendants have complied with all of the Court's orders and Defendants have produced the requested 40 documents (except for the two privileged ones), and because Plaintiffs are unwilling to engage in any good faith discussion of relevant and proportional discovery they believe they are owed, Plaintiffs' brazen demand to be allowed to browse freely in Defendants' internal systems must be rejected. Moreover, such an inspection is simply not possible in a manner that would allow Plaintiffs to access hyperlinks from all corners of Defendants' internal databases and other sources. Even if it were possible, Plaintiffs have no justification for such a drastic measure, which would be unduly burdensome and invasive at a scale that is unparalleled in any similar litigation.

The Court can and should deny this request because it is infeasible. There is no practical way for Defendants to make their Google Drive documents or Knowledge Base system available for inspection in the way that Plaintiffs demand. Anderson Decl. at ¶¶ 8, 12. This is because Google Drive is a custodian-based system used by employees and teams across every line of business across the organization. Likewise, the Knowledge Base system is organized in a decentralized manner, with access granted only to employees who need to access subsets of Knowledge Bases relevant to their roles and scope of employment. *Id.* Even if there were a "skeleton key" that could unlock every linked file held by any custodian, this would leave Defendants' internal data completely exposed. There would be no guardrails to prevent access to private employee and customer data, communications of counsel, and commercially sensitive information. *Id.* at ¶ 8.

1    The federal rules are not meant to create a "routine right of direct access" to electronic information systems. *Moser v. Health Ins. Innov., Inc.*, 2018 WL 6735710, at *5 (S.D. Cal. Dec. 21, 2018) (denying an inspection of the plaintiff's electronic systems). Instead, courts "should guard against undue intrusiveness resulting from inspecting or testing such systems." *Id*. A requesting party must make "an initial showing of substantial discovery violations" before a request for direct database access can be granted. *GCIU-Emp'r Ret. Fund v. Quad/Graphics, Inc.*, 2017 WL 10399497, at *1 (C.D. Cal. Feb. 9, 2017); *see also In re Ford*, 345 F.3d 1315, 1317 (11th Cir. 2008) (district court abused its discretion in allowing direct access to a defendant's databases without a factual finding of noncompliance and protocols to protect confidentiality of non-discoverable matters). "[M]ere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *Moser*, 2018 WL 6735710 at *5 (*quoting John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008)). Likewise, courts have rejected similar requests for inspections of computer systems, finding them to be "overbroad," "improper 'fishing expedition[s]'" (*Crop Data Mgmt. Sys., Inc. v. Software Sol. Integrated, LLC*, 2012 WL 2571201, *1 (E.D. Cal. July 2, 20212), and burdensome "both in terms of business disruption and intrusion into [] proprietary business systems." *Terteryan v. Nissan Motor Accept. Corp.*, 2017 WL 10991656, *8 (C.D. Cal. Oct. 19, 2017).

There is no factual showing here that would come close to justifying the "drastic" remedy Plaintiffs propose.[2] *See John B.*, 531 F.3d at 460. Courts consistently find that the existence of a few nonproduced, responsive documents is not the basis for any discovery relief, let alone drastic type of relief Plaintiffs seek here. *See*, *e.g.*, *Davis v. Lockheed Martin Corp.*, 2023 WL 6845250, at *2 (M.D. Fla. Oct. 17, 2023) ("[I]t is commonly understood that discovery is not perfect," and in fact, the rules "do not require perfection.").[3] For the first time in their Motion, Plaintiffs identified four purportedly

---

[2] The lone case Plaintiffs cite to justify an inspection of Defendants' systems, *South Peninsula Hospital, Inc. v. Xerox State Healthcare, LLC*, is inapposite. 2019 WL 1873297 (D. Alaska Feb. 9, 2019). In that case, the plaintiff was allowed inspection of "a ***copy*** of the database" at issue. *Id*. at *6 (emphasis added). Here, Plaintiffs are demanding ***direct access*** to Defendants' internal systems.

[3] *See also Valentine v. Crocs, Inc.*, 2024 WL 2193321 (N.D. Cal. May, 15, 2024) ("[P]erfection in ESI discovery is not required; rather a producing party must take reasonable steps to identify and produce relevant documents."); *In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, 2016 WL 7336411 (N.D. Cal. Oct. 14, 2016) ("'[T]he standard is not perfection, or using the 'best' tool . . . , but whether the search results are reasonable and proportional.'").

missing links[4] from the **572 *documents and nearly 7,300 pages*** reflecting policies, operational guidelines, and other documents in Defendants' production. If a small subset of links was owed to Plaintiffs and not identified for production, this would be indicative of the practical impossibility of identifying and collecting all hyperlinks at scale. *See*, *e.g.*, Anderson Decl. at ¶¶ 13-16. This is an issue that reasonable counsel could have resolved without the Court's intervention, had Plaintiffs' counsel been willing to engage in a good faith discussion. Plaintiffs' belated identification of four hyperlinks does not approach the showing that would necessitate an invasive database inspection.

### IV.     Plaintiffs' Request for Sanctions Should Be Rejected.

Plaintiffs' request for sanctions should be denied because it is procedurally improper. Under Local Rule 7-8, "[a]ny motion for sanctions . . . must be separately filed and the date for hearing must be set in conformance with [Local Rule] 7-2." N.D. Cal. Civ. L.R. 7-8(a). Plaintiffs' failure to comply with this rule mandates denial.[5] *See Martinez v. City of Pittsburg*, 2012 WL 699462, at *4 (N.D. Cal. Mar. 1, 2012) ("[A]ll motions for sanctions must be filed as separately noticed motions, not as a part of a motion to compel… [Plaintiff] did not do so, and his motion for sanctions fails for this reason."). Moreover, there is no justification for imposing sanctions. Defendants have complied with the Court's orders, and Plaintiffs offer nothing but conclusory statements to suggest otherwise. Plaintiffs' declaration illustrates only that their discovery requests relating to policies have been broad and constantly shifting. Despite this, Defendants have produced thousands of pages of responsive materials regarding its policies and operational guidelines. Even if there were some technical non-compliance with the Court's orders on this topic, it would be substantially justified given the technical infeasibility of accessing and producing hyperlinked materials at scale in the manner that Plaintiffs demand.

### CONCLUSION

The Court should deny Plaintiffs' motion to compel, including their request for sanctions.

---

[4] One of the links originated in a document that was not part of the 40 documents for which Defendants were required to produce related operational guidelines, per ECF No. 1996. Gromada Decl. ¶ 3. One of those links was, in fact, withheld and logged as privileged. Gromada Decl. at ¶ 9.

[5] Plaintiffs have also failed to comply with Local Rule 37-4(b)(3), which requires a request for attorney fees or costs to be accompanied by a declaration that "itemize[s] with particularity" such expenses and sets forth "an appropriate justification for any attorney-fee hourly rate claimed."

1
2  DATED: March 11, 2024                    Respectfully submitted,
3                                           **SHOOK HARDY & BACON L.L.P.**
4                                           By: */s/ Veronica Hayes Gromada*
5                                               VERONICA HAYES GROMADA

6                                           Veronica Hayes Gromada *(Pro Hac Vice* admitted)
                                                vgromada@shb.com
                                            **SHOOK, HARDY & BACON L.L.P.**
7                                           600 Travis St., Suite 3400
                                            Houston, TX 77002
8                                           Telephone: (713) 227-8008
                                            Facsimile: (713) 227-9508
9
                                            MICHAEL B. SHORTNACY (SBN: 277035)
10                                              mshortnacy@shb.com
                                            **SHOOK, HARDY & BACON L.L.P.**
11                                          2121 Avenue of the Stars, Suite 1400
                                            Los Angeles, CA 90067
12                                          Telephone: (424) 285-8330
                                            Facsimile: (424) 204-9093
13
                                            PATRICK OOT (Admitted *Pro Hac Vice*)
14                                              oot@shb.com
                                            **SHOOK, HARDY & BACON L.L.P.**
15                                          1800 K St. NW Ste. 1000
                                            Washington, DC 20006
16                                          Telephone: (202) 783-8400
                                            Facsimile: (202) 783-4211
17
                                            KYLE N. SMITH (*Pro Hac Vice* admitted)
18                                              ksmith@paulweiss.com
                                            JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
19                                              jphillips@paulweiss.com
                                            **PAUL, WEISS, RIFKIND, WHARTON**
20                                              **& GARRISON LLP**
                                            2001 K Street, NW
21                                          Washington DC, 20006
                                            Telephone: (202) 223-7300
22                                          Facsimile:  (202) 223-7420
23                                          *Attorney for Defendants*
                                            UBER TECHNOLOGIES, INC.,
24                                          RASIER, LLC, and RASIER-CA, LLC
25
26
27
28

8
DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
Case No. 3:23-MD-3084-CRB

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Veronica Hayes Gromada*
VERONICA HAYES GROMADA