Roopal P. Luhana
**Chaffin Luhana LLP**
600 Third Ave., 12th Fl.
New York, NY 10016
Telephone: 888.480.1123
Facsimile: 888.499.1123
Email: luhana@chaffinluhana.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*A.R. v. Uber Technologies, Inc., et al.*, No. 24-cv-01827

Case 3:23-md-03084-CRB

MDL No. 3084

Honorable Charles R. Breyer

JURY TRIAL DEMANDED

**REDACTED**

**AMENDED BELLWETHER COMPLAINT AND DEMAND FOR JURY TRIAL**

Under PTO 21 (ECF 1950), Plaintiff A.R. [hereafter referred to as A.R.1] files this Amended Bellwether Complaint against the Defendants named below. Plaintiff incorporates the allegations set out in the Master Long-Form Complaint filed at ECF 269 in *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, No. 23-md-3084 (N.D. Cal.).

**I. DESIGNATED FORUM[1]**

1. Identify the Federal District Court in which the Plaintiff would have filed in the absence of direct filing: Northern District of California.

[1] *See* PTO No. 6, at II(C) (ECF 177).

## II. IDENTIFICATION OF PARTIES

### A. PLAINTIFF

2. *Injured Plaintiff:* Name of the individual sexually assaulted, battered, harassed, and/or otherwise attacked by an Uber driver with whom they were paired while using the Uber platform: A.R.1

3. At the time of the filing of this Amended Bellwether Complaint, Plaintiff resides at: Allenton, Lehigh County, Pennsylvania.

### B. DEFENDANT(S)

4. Plaintiff names the following Defendants in this action.

☑ UBER TECHNOLOGIES, INC.;[2]

☑ RASIER, LLC;[3]

☑ RASIER-CA, LLC.[4]

### C. RIDE INFORMATION

5. Plaintiff was sexually assaulted, harassed, battered, and/or otherwise attacked by an Uber driver in connection with an Uber ride in Allentown, Lehigh County, Pennsylvania on March 13, 2023.

6. Plaintiff A.R.1 was the owner of the Uber account used to request the relevant ride.

7. Plaintiff was 16 years old at the time of the assault.

8. Plaintiff used her Uber app and requested an Uber ride home from her workplace (a Wendy's restaurant) at approximately 10:29 p.m.

9. The driver's name was [redacted]

10. When the driver arrived at approximately 10:36 p.m., Plaintiff realized that it was the same driver who had picked her up one time before.

---

[2] Delaware corporation with a principal place of business in California.
[3] Delaware corporation with a principal place of business in California.
[4] Delaware corporation with a principal place of business in California.

11. He had previously given Plaintiff his phone number and asked her to call him if she needed a ride. Plaintiff never called him.

12. When Uber dispatched this same driver to Plaintiff again, Plaintiff got into the car, hoping the driver did not remember her.

13. The driver immediately recognized Plaintiff and started asking why she had not called him.

14. Plaintiff felt uncomfortable and awkwardly laughed while telling the driver “I don’t know.”

15. Shortly after the ride started, he driver insisted that Plaintiff sit in the front seat.

16. Plaintiff did not want to sit in the front seat, but did so because she was scared of the driver and wanted to get home.

17. The driver then resumed driving. Plaintiff put her work bag between the driver and herself to create some distance.

18. The driver told Plaintiff to put her bag in the back seat.

19. She did as he instructed because she was scared.

20. The driver started groping Plaintiff’s inner thighs and interlocking his and Plaintiff’s hands together to try and hold hands.

21. As he grabbed Plaintiff, the driver said: “I know you like me, but you can get me in so much trouble.”

22. When the vehicle pulled up to Plaintiff’s house, Plaintiff reached into the back seat for her bag.

23. As Plaintiff was turning to get her bag, the driver grabbed Plaintiff, pulled her toward him, and kissed her forcibly on the lips.

24. Plaintiff then exited the car.

[redacted]

30. The conduct described in the Master Long-Form Complaint and herein was a substantial factor in causing Plaintiff to suffer economic and non-economic harm.

## III. CAUSES OF ACTION ASSERTED

31. The following Causes of Action asserted in the Master Long-Form Complaint, including all allegations in support, are adopted in this Amended Bellwether Complaint by reference:

| Check if Applicable | Cause of Action Number | Cause of Action |
|---|---|---|
| ☑ | I | CLAIM B - NEGLIGENCE (excluding entrustment theory) |
| ☐ | II | CLAIM C - FRAUD AND MISREPRESENTATION |
| ☐ | III | CLAIM E - COMMON CARRIER'S NON-DELEGABLE DUTY TO PROVIDE SAFE TRANSPORTATION |

| Check if Applicable | Cause of Action Number | Cause of Action |
|---|---|---|
| ☐ | VI | CLAIM G.1 - VICARIOUS LIABILITY– EMPLOYEE |
| ☐ | VI | CLAIM G.2 - VICARIOUS LIABILITY– APPARENT AGENCY |
| ☐ | VII | CLAIM G.3 - VICARIOUS LIABILITY–RATIFICATION |
| ☑ | VIII | CLAIM H - STRICT PRODUCTS LIABILITY – DESIGN DEFECT |
| ☑ | IX | CLAIM H - STRICT PRODUCTS LIABILITY – FAILURE TO WARN |
| ☐ | X | CLAIM H - STRICT PRODUCTS LIABILITY – PRODUCTS LIABILITY ACTS |

## IV. ADDITIONAL ALLEGATIONS IN SUPPORT OF PRODUCTS LIABILITY CLAIMS

[redacted] **Safe Ride Matching.** [redacted]

[redacted]

[redacted]

40. **Gender Matching**. The Uber App was in a defective condition unreasonably dangerous to users or consumers, including Plaintiff, because the Uber app was designed with an algorithm that matched female passengers with male drivers and had no modification to allow female passengers the option to be matched only with female drivers.

41. Uber tracks the rates of sexual misconduct and assault committed by its drivers against its passengers and collects data on the gender of the driver and passenger involved in those incidents. At all relevant times, The risk of sexual assault associated with such pairings, while known to Uber based on its internal data collection and analysis, was beyond that contemplated by the ordinary user or consumer.

42. Uber could have, but did not, modify its matching algorithm on the backend to give female passengers the option to select female drivers. Such a modification is feasible because Uber has made such modifications in markets outside of the United States, such as Saudi Arabia. Uber has not modified the code of the matching algorithm on the backend for the version of the Uber App available in the United States market to allow for female Uber passengers, including Plaintiff, to choose gender-matched rides.

43. Uber knew that a gender-matching option would have prevented assaults like the one suffered by Plaintiff.

44. Had a gender-matching functionality been available, Plaintiff would have toggled it on for the ride in question.

45. Use of the gender-matching option would have prevented her assault by her male driver because Plaintiff never would have been in the car with this driver had a gender matching functionality been toggled on and would, instead, have been paired with an entirely different person.

46. **App-Based Ride Recording**. The Uber App was defective in its design because it could have been, but was not, designed to trigger automatic video recording of rides and the time period immediately around them, whether through using the camera already installed on a driver's cell phone during Uber trips, or through an external device linked to the App.

47. The presence of cameras serves a deterrent function that significantly reduces and prevents sexual assault and misconduct. Even the potential for a ride to be recorded serves a deterrent function that significantly reduces and prevents sexual assault and misconduct.

48. Uber is aware that the presence of cameras serves as a deterrent function that can and does significantly reduce sexual assault and sexual misconduct and, to that end, has explored the use of recording functionalities for the Uber App. But these recording functionalities (even if they were available during Plaintiffs' ride) are inadequately designed to address sexual assault or sexual misconduct committed by drivers against passengers.

49. For example, Uber developers modified the code of the Uber App on the back end to allow in-app video recording by the driver. That is, when toggled on by the driver, this

functionality allowed drivers to record internal footage of Uber trips using their phone's camera as a dash camera.

50. In addition to making the feature optional, rather than automatic, Uber coded its in-app video recording functionality so that all recordings are encrypted in the Uber App and locally stored on the driver's cell phone, meaning that recordings cannot be obtained by Uber, law enforcement, or any third party without the express authorization of the driver.

51. The result is that in-app video recording does not have any deterrent effect on sexual assault or sexual misconduct by drivers against passengers because drivers exercise absolute control over whether recording happens, and because drivers know that, even if the technology is on, third parties cannot access the recordings.

52. Had the Uber App included automatic video monitoring of rides, by definition that feature would have been engaged on Plaintiff's ride.

53. Automatic video monitoring would have deterred the driver from assaulting Plaintiff.

54. **Age-Gating**. Uber developed, designed, and coded the Uber App to require users (both drivers and passengers) to create individual accounts before any other functions of the Uber App could be used.

55. Uber created a sign-up flow that required users to input data into specified fields, created and selected by Uber. Riders were required to input data on their name, phone number, email, and payment method to generate a rider account. Drivers, on the other hand, were required to input some additional data, including their date of birth. Drivers were also required to upload a photo of their photo identification, which the Uber App would match to the birthdate input by drivers. If the Uber App detected a birth date input by a prospective driver or shown on the uploaded photo ID which identified that individual as younger than 21 years of age, they would be automatically blocked from generating a user account as a driver.

56. The Uber App was defective because Uber could have, but did not, code the Uber App to include age gating requirements for passengers during the sign-up flow coded into the

Uber App. Therefore, users could sign up to take Uber rides as long as they had a phone number, email address, and payment method.

57. As a result, unaccompanied minors could, and did, sign up for Uber accounts and take Uber trips, including Plaintiff. Uber was aware that minors signed up for Uber accounts and took Uber trips and that minors who used Uber were at risk of sexual misconduct and assault. The risk of sexual misconduct and assault experienced by minor users of the Uber App was beyond that reasonably contemplated by the ordinary user or consumer, who lacks access to Uber's internal data and analytics on the number of minors who report sexual misconduct or assault to Uber.

58. [REDACTED] Uber did not modify its code to change the sign-up flow for riders to block minor users automatically. [REDACTED]

59. Plaintiff signed up for her Uber account when she was underage. The account was a standard Uber account and not a teen or family account associated with her parent or guardian's existing Uber account, a function that had not been launched at the time of Plaintiff's account sign up or her trip described above. Had Uber coded the Uber app to include the same age verification processes to the sign-up flow for passengers, as it did for drivers, Plaintiff would never have been able to create an Uber account in the first place and would never have encountered the driver who assaulted her.

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendants for economic and non-economic compensatory and punitive and exemplary damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. At this time, Plaintiff does not seek injunctive relief, but reserves all rights to later seek such relief as appropriate under Fed. R. Civ. P. 15(b)(2) and Fed. R. Civ. P. 54(c).

**JURY DEMAND**

Plaintiff demands a trial by jury as to all claims in this action.

Dated: March 14, 2025

/s/ *Roopal P. Luhana*

Roopal P. Luhana
**Chaffin Luhana LLP**
600 Third Ave., 12th Fl.
New York, NY 10016
Telephone: 888.480.1123
Facsimile: 888.499.1123
Email: luhana@chaffinluhana.com

*Attorney for Plaintiff*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory above has concurred in this filing.

Dated: March 14, 2025

By: */s/ Annie M. Wanless*
Annie M. Wanless