RACHEL B. ABRAMS (SBN 209316)
ADAM B. WOLF (SBN 215914)
**Peiffer Wolf Carr Kane Conway & Wise, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: 415.766.3544
Facsimile: 415.840.9435
Email: rabrams@peifferwolf.com
Email: awolf@peifferwolf.com

TIFFANY R. ELLIS (*Admitted PHV*)
**Peiffer Wolf Carr Kane Conway & Wise, LLP**
2229 Trumbull St.
Detroit, MI 48216
Telephone: 313.210.1559
Facsimile: 415.840.9435
Email: tellis@peifferwolf.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case 3:23-md-03084-CRB <br><br> MDL No. 3084 <br><br> Honorable Charles R. Breyer <br><br> JURY TRIAL DEMANDED |
| This Document Relates to: <br><br> *A.G. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-01915 | **REDACTED** |

## AMENDED BELLWETHER COMPLAINT AND DEMAND FOR JURY TRIAL

Under PTO 21 (ECF 1950), Plaintiff files this Amended Bellwether Complaint against the Defendants named below. Plaintiff incorporates the allegations set out in the Master Long-Form Complaint filed at ECF 269 in *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, No. 23-md-3084 (N.D. Cal.).

**I.   DESIGNATED FORUM**[1]

1. Identify the Federal District Court in which the Plaintiff would have filed in the absence of direct filing: Northern District of California.

**II.   IDENTIFICATION OF PARTIES**

**A.   PLAINTIFF**

2. *Injured Plaintiff:* Name of the individual sexually assaulted, battered, harassed, and/or otherwise attacked by an Uber driver with whom they were paired while using the Uber platform: A.G.

3. At the time of the filing of this Amended Bellwether Complaint, Plaintiff resides at: Box Elder County, Utah.

**B.   DEFENDANT(S)**

4. Plaintiff names the following Defendants in this action.

☒ UBER TECHNOLOGIES, INC.;[2]

☒ RASIER, LLC;[3]

☒ RASIER-CA, LLC.[4]

**C.   RIDE INFORMATION**

5. Plaintiff was sexually assaulted, harassed, battered, and/or otherwise attacked by an Uber driver in connection with an Uber ride in Yamhill County, Oregon on April 22, 2023.

6. Plaintiff was not the owner of the Uber account used to request the relevant ride.

7. At Plaintiff's request, her ex-husband ordered the ride to take her home from a bar.

8. Plaintiff was intoxicated.

9. The driver's name was ▇▇▇▇▇▇▇▇▇▇

10. When the driver arrived, Plaintiff noticed that the car was different than what was showing on the App, but the license plate was correct.

---

[1] *See* PTO No. 6, at II(C) (ECF 177).
[2] Delaware corporation with a principal place of business in California.
[3] Delaware corporation with a principal place of business in California.
[4] Delaware corporation with a principal place of business in California.

1 | 11. Plaintiff asked to make one stop on the way home and the driver agreed and made the stop.

12. Once they were stopped, the driver told Plaintiff he would take her the rest of the way home free of charge. The driver turned off the App, and asked Plaintiff to give him directions the rest of the way.

13. When the driver arrived at Plaintiff's apartment, he drove past the building and pulled over.

14. The driver got into the backseat.

15. The driver attempted to kiss Plaintiff.

16. When she refused, he raped her.

17. While Plaintiff was being assaulted, Plaintiff's ex-husband, concerned about her, attempted to use the Uber App to track her location, and tried, without success, to contact Uber to report her location as unavailable. Plaintiff's ex-husband could no longer track Plaintiff's whereabouts through the Uber app because the Driver had ended the Uber Trip.

[paragraph 18 redacted]

19. From 2016 until the 2023 incident, it was a matter of public record that Mr. Drummond had been accused of abusing his official power to obtain sexual favors.

20. Until 2016, Mr. Drummond had been employed as a sworn police officer with the Sherwood Police Department. On May 9, 2016, a woman who had been charged with shoplifting reported that Mr. Drummond had requested that she meet with him in secret, give him a "big kiss," and do a "personal" favor from him in exchange for him not arresting her. Mr. Drummond was criminally investigated for first-degree official misconduct. The investigation revealed that Mr. Drummond's body worn camera had inexplicably turned off partway through the interaction in question. While an internal police investigation was still ongoing, Drummond resigned from

the Sherwood Police Department, and relinquished his police certification. On July 20, 2016, The Oregonian published a news article regarding the criminal investigation.[5]

███████████████████████████████████████
███████████████████████████████████████
████████████████████████

23.   The conduct described in the Master Long-Form Complaint and herein was a substantial factor in causing Plaintiff to suffer economic and non-economic harm.

### III. CAUSES OF ACTION ASSERTED

24.   The following Causes of Action asserted in the Master Long-Form Complaint, including all allegations in support, are adopted in this Amended Bellwether Complaint by reference:

| Check if Applicable | Cause of Action Number | Cause of Action |
|---|---|---|
| ☑ | I | CLAIM B - NEGLIGENCE (excluding entrustment theory) |
| ☑ | II | CLAIM C - FRAUD AND MISREPRESENTATION |
| ☐ | III | CLAIM E - COMMON CARRIER'S NON-DELEGABLE DUTY TO PROVIDE SAFE TRANSPORTATION |
| ☑ | VI | CLAIM G.1 - VICARIOUS LIABILITY– EMPLOYEE |
| ☑ | VI | CLAIM G.2 - VICARIOUS LIABILITY– APPARENT AGENCY |
| ☐ | VII | CLAIM G.3 - VICARIOUS LIABILITY–RATIFICATION |
| ☑ | VIII | CLAIM H - STRICT PRODUCTS LIABILITY – DESIGN DEFECT |
| ☐ | IX | CLAIM H - STRICT PRODUCTS LIABILITY – FAILURE TO WARN |
| ☐ | X | CLAIM H - STRICT PRODUCTS LIABILITY – PRODUCTS LIABILITY ACTS |

### IV. ADDITIONAL ALLEGATIONS IN SUPPORT OF NEGLIGENCE

25.   Although Plaintiff does not plead vicarious liability due to Uber's status as a common carrier, she does allege that Uber, as a common carrier, owed the highest degree of care for her safety. She further incorporates by reference all the factual allegations contained in Claim E of the Master Long-Form Complaint.

---

[5] https://www.oregonlive.com/sherwood/2016/07/sherwood_cop_steps_down_after.html

## V. ADDITIONAL ALLEGATIONS IN SUPPORT OF VICARIOUS LIABILITY CLAIMS

26. Plaintiff alleges that Defendants are vicariously liable for the following intentional torts committed by the driver in addition to being vicariously liable for the driver's negligence.

27. **Assault**. The driver acted, intending to cause a harmful or offensive contact with Plaintiff or cause Plaintiff apprehension that the driver was going to cause an imminent harmful or offensive contact with Plaintiff. Plaintiff reasonably believed a harmful or offensive contact would occur.

28. **Battery**. The driver acted, intending to cause harmful or offensive contact with Plaintiff. The driver's actions directly or indirectly caused a harmful or offensive contact with Plaintiff.

29. **False Imprisonment**. The driver confined Plaintiff. The driver intended the act of confinement. Plaintiff was aware of being confined. The confinement was unlawful.

## VI. ADDITIONAL ALLEGATIONS IN SUPPORT OF FRAUD AND MISREPRESENTATION CLAIM

30. Before she was assaulted, Plaintiff regularly saw ads stating that Uber provided "safe rides" and ads with the slogan "Don't drink and drive, call an Uber."

31. She saw the relevant ads in both social media and emails. Uber is in possession of Plaintiff's email address and can easily provide the advertisements directed to her in that medium.

32. Those ads were the reason Plaintiff started riding with Uber, and the reason she thought it would be so do so the night of the assault.

33. Because she heard these ads, Plaintiff believed that Uber was a safe option for people who had been drinking.

[REDACTED] Uber's marketing to Plaintiff did not disclose that [REDACTED]

[REDACTED] Uber's marketing to Plaintiff did not disclose [REDACTED]

36. The concealed information was in Uber's possession and not otherwise available to Plaintiff.

37. Uber's failure to disclose ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ made its marketing materially misleading and incomplete.

38. Had Plaintiff known that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ she would not have asked her ex-husband to order the Uber for her on April 22, 2023.

## VII. ADDITIONAL ALLEGATIONS IN SUPPORT OF PRODUCTS LIABILITY CLAIMS

39. **App-Based Ride Recording**. The Uber App was defective in its design because it could have been, but was not, designed to trigger automatic video recording of rides and the time period when riders and drivers remain in close proximity to one another and have not yet parted ways, whether through using the camera already installed on a driver's cell phone during Uber trips, or through an external device linked to the App.

40. The presence of cameras serves a deterrent function that significantly reduces and prevents sexual assault and misconduct. Even the potential for a ride to be recorded serves a deterrent function that significantly reduces and prevents sexual assault and misconduct.

41. Uber is aware that the presence of cameras serves as a deterrent function that can and does significantly reduce sexual assault and sexual misconduct and, to that end, has explored the use of recording functionalities for the Uber App. But these recording functionalities (even if they were available during Plaintiffs' ride) are inadequately designed to address sexual assault or sexual misconduct committed by drivers against passengers.

42. For example, Uber developers modified the code of the Uber App on the back end to allow in-app video recording by the driver. That is, when toggled on by the driver, this functionality allowed drivers to record internal footage of Uber trips using their phone's camera as a dash camera.

1       43.    In addition to making the feature optional, rather than automatic, Uber coded its in-app video recording functionality so that all recordings are encrypted in the Uber App and locally stored on the driver's cell phone, meaning that recordings cannot be obtained by Uber, law enforcement, or any third party without the express authorization of the driver.

      44.    The result is that in-app video recording does not have any deterrent effect on sexual assault or sexual misconduct by drivers against passengers because drivers exercise absolute control over whether recording happens, and because drivers know that, even if the technology is on, third parties cannot access the recordings.

      45.    Had the Uber App included automatic video monitoring of rides, by definition that feature would have been engaged on Plaintiff's ride.

      46.    Automatic video monitoring would have deterred the driver from assaulting Plaintiff.

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendants for economic and non-economic compensatory and punitive and exemplary damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. At this time, Plaintiff does not seek injunctive relief, but reserves all rights to later seek such relief as appropriate under Fed. R. Civ. P. 15(b)(2) and Fed. R. Civ. P. 54(c).

## **JURY DEMAND**

Plaintiff demands a trial by jury as to all claims in this action.

| | |
|---|---|
| 1    Dated: March 14, 2025 | /s/ *Rachel B. Abrams* |

RACHEL B. ABRAMS (SBN 209316)
ADAM B. WOLF (SBN 215914)
**Peiffer Wolf Carr Kane**
**Conway & Wise, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: 415.766.3544
Facsimile: 415.840.9435
Email: rabrams@peifferwolf.com
Email: awolf@peifferwolf.com

TIFFANY R. ELLIS (*Admitted PHV*)
**Peiffer Wolf Carr Kane**
**Conway & Wise, LLP**
2229 Trumbull St.
Detroit, MI 48216
Telephone: 313.210.1559
Facsimile: 415.840.9435
Email: tellis@peifferwolf.com

*Attorneys for Plaintiff*

## **FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory above has concurred in this filing.

Dated: March 14, 2025            By:   */s/ Annie M. Wanless*
                                            Annie M. Wanless