John Eddie Williams, Jr.
Brian Abramson
Margret Lecocke
Walt Cubberly (SBN 325163)
Batami Baskin
Myles Shaw
WILLIAM HART & BOUNDAS, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017-5051
Telephone: (713) 230-2200
Facsimile: (713) 643-6226
Email: jwilliams@whlaw.com
Email: babramson@whlaw.com
Email: mlecocke@whlaw.com
Email: wcubberly@whlaw.com
Email: bbaskin@whlaw.com
Email: mshaw@whlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case 3:23-md-03084-CRB <br><br> MDL No. 3084 <br><br> Honorable Charles R. Breyer <br><br> JURY TRIAL DEMANDED <br><br> **REDACTED** |
| This Document Relates to: <br><br> *WHB 1898 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05027 | |

## AMENDED BELLWETHER COMPLAINT AND DEMAND FOR JURY TRIAL

Under PTO 21 (ECF 1950), Plaintiff files this Amended Bellwether Complaint against the Defendants named below. Plaintiff incorporates the allegations set out in the Master Long-Form Complaint filed at ECF 269 in *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, No. 23-md-3084 (N.D. Cal.).

## I. DESIGNATED FORUM[1]

1. Identify the Federal District Court in which the Plaintiff would have filed in the absence of direct filing: Northern District of California.

## II. IDENTIFICATION OF PARTIES

### A. PLAINTIFF

2. *Injured Plaintiff:* Name of the individual sexually assaulted, battered, harassed, and/or otherwise attacked by an Uber driver with whom they were paired while using the Uber platform: WHB 1898

3. At the time of the filing of this Amended Bellwether Complaint, Plaintiff resides at: Lawrence, Essex County, Massachusetts

### B. DEFENDANT(S)

4. Plaintiff names the following Defendants in this action.

☑ UBER TECHNOLOGIES, INC.;[2]

☑ RASIER, LLC;[3]

☑ RASIER-CA, LLC.[4]

### C. RIDE INFORMATION

5. Plaintiff was sexually assaulted, harassed, battered, and/or otherwise attacked by an Uber driver in connection with an Uber ride in Middlesex County, Massachusetts on August 5, 2022.

6. Plaintiff was the owner of the Uber account used to request the relevant ride.

7. Shortly before 10:50 p.m., Plaintiff requested a ride from Lowell Beer Works to her home approximately 20 minutes away.

8. Uber matched Plaintiff with a driver named ███████████.

---

[1] *See* PTO No. 6, at II(C) (ECF 177).
[2] Delaware corporation with a principal place of business in California.
[3] Delaware corporation with a principal place of business in California.
[4] Delaware corporation with a principal place of business in California.

1
2
3
4
5
6
7
8
9
10
11

12    13.    The pickup occurred at about 10:56 p.m.

13    14.    The driver looked Plaintiff up and down, and told her she smelled really good.

14    15.    The driver then began asking Plaintiff personal questions like where Plaintiff was

15 from and if Plaintiff had a romantic partner.

16    16.    The driver told Plaintiff that, if they were partners, he would never leave her alone.

17    17.    The driver also said Plaintiff's legs were "so nice."

18    18.    The route required driving on a long and dark road.

19    19.    After Plaintiff exited the vehicle at her house, the driver further intimidated her by

20 waiting outside her house.

21    20.    The conduct described in the Master Long-Form Complaint and herein was a

22 substantial factor in causing Plaintiff to suffer economic and non-economic harm.

23 **III.    <u>CAUSES OF ACTION ASSERTED</u>**

24    21.    The following Causes of Action asserted in the Master Long-Form Complaint,

25 including all allegations in support, are adopted in this Amended Bellwether Complaint by

26 reference:

27

28 [5] The exception is Uber's "global watchlist search" which consists primarily of terrorists, international criminals, and countries' "most wanted" lists.

| Check if Applicable | Cause of Action Number | Cause of Action |
|---|---|---|
| ☑ | I | CLAIM B - NEGLIGENCE (excluding entrustment theory) |
| ☐ | II | CLAIM C - FRAUD AND MISREPRESENTATION |
| ☑ | III | CLAIM E - COMMON CARRIER'S NON-DELEGABLE DUTY TO PROVIDE SAFE TRANSPORTATION |
| ☐ | VI | CLAIM G.1 - VICARIOUS LIABILITY– EMPLOYEE |
| ☐ | VI | CLAIM G.2 - VICARIOUS LIABILITY– APPARENT AGENCY |
| ☑ | VII | CLAIM G.3 - VICARIOUS LIABILITY–RATIFICATION |
| ☐ | VIII | CLAIM H - STRICT PRODUCTS LIABILITY – DESIGN DEFECT |
| ☐ | IX | CLAIM H - STRICT PRODUCTS LIABILITY – FAILURE TO WARN |
| ☑ | X | CLAIM H - STRICT PRODUCTS LIABILITY – PRODUCTS LIABILITY ACTS [Alternate Massachusetts-specific common law claims] |

### IV. ADDITIONAL ALLEGATIONS IN SUPPORT OF VICARIOUS LIABILITY CLAIMS

22. Plaintiff alleges that Defendants are vicariously liable for the following intentional torts committed by the driver in addition to being vicariously liable for the driver's negligence.

23. **Assault**. The driver's objectively menacing conduct put Plaintiff in reasonable apprehension of imminent harmful or offensive contact.

24. **False Imprisonment**. The driver's conduct constituted intentional and unjustified confinement of Plaintiff. Plaintiff was conscious of, and harmed by, the confinement.

25. **Intentional Infliction of Emotional Distress**. The driver engaged in extreme and outrageous conduct, without privilege, causing Plaintiff severe emotional distress.

### V. ADDITIONAL ALLEGATIONS IN SUPPORT OF RATIFICATION CLAIM

26. Plaintiff reported the incident to Uber in September 2022. ████████████████████████████████████████████████████████████

### VI. ADDITIONAL ALLEGATIONS IN SUPPORT OF PRODUCTS LIABILITY CLAIMS

A. **Massachusetts-Specific Claim: Breach of Implied Warranty**

27. Defendants manufactured and sold the Uber App, which eventually injured Plaintiff.

1     28.     The Uber App had the defects or otherwise unreasonably dangerous conditions
2  described below, such that it was unsuited for the ordinary use for which it was sold.
3     29.     Defendants failed to warn of the defects or otherwise unreasonably dangerous
4  conditions described below.
5     30.     Plaintiff used the product as intended by Defendants or in a manner that was at
6  least foreseeable to Defendants.
7     31.     The defects or unreasonably dangerous conditions described below were a legal
8  cause of Plaintiff's injury.
9     **B.**     **Product Defects**
10          ▇  **Safe Ride Matching**. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
11  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
12  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
13  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
14  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
15          ▇  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
16  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
17  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
18  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
19  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
20  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
21  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
22  ▇
23          ▇  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
24  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
25  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
26  ▇▇▇▇▇▇▇▇▇▇▇▇
27          ▇  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
28  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1
2
3
4
5
6
7
8

9    37. ▇

10   ▇

11   ▇

12   38.    **Gender Matching**. The Uber App was in a defective condition unreasonably
13   dangerous to users or consumers, including Plaintiff, because the Uber app was designed with an
14   algorithm that matched female passengers with male drivers and had no modification to allow
15   female passengers the option to be matched only with female drivers.

16   39.    Uber tracks the rates of sexual misconduct and assault committed by its drivers
17   against its passengers and collects data on the gender of the driver and passenger involved in
18   those incidents. At all relevant times, ▇
19   ▇
20   ▇. The risk of sexual assault associated with such pairings,
21   while known to Uber based on its internal data collection and analysis, was beyond that
22   contemplated by the ordinary user or consumer.

23   40.    Uber could have, but did not, modify its matching algorithm on the backend to
24   give female passengers the option to select female drivers. Such a modification is feasible
25   because Uber has made such modifications in markets outside of the United States, such as Saudi
26   Arabia. Uber has not modified the code of the matching algorithm on the backend for the version
27   of the Uber App available in the United States market to allow for female Uber passengers,
28   including Plaintiff, to choose gender-matched rides.

41.     Uber knew that a gender-matching option would have prevented assaults like the one suffered by Plaintiff.

42.     Had a gender-matching functionality been available, Plaintiff would have toggled it on for the ride in question.

43.     Use of the gender-matching option would have prevented Plaintiff being subjected to sexual misconduct by her male driver because Plaintiff never would have been in the car with this driver had a gender matching functionality been toggled on and would, instead, have been paired with an entirely different person.

44.     **App-Based Ride Recording**.  The Uber App was defective in its design because it could have been, but was not, designed to trigger automatic audio and video recording of rides and the time period immediately around them, whether through using the camera and microphone already installed on a driver's cell phone during Uber trips, or through an external device linked to the App.

45.     The presence of recording devices serves a deterrent function that significantly reduces and prevents sexual assault and misconduct. Even the potential for a ride to be recorded serves a deterrent function that significantly reduces and prevents sexual assault and misconduct.

46.     Uber is aware that recording serves as a deterrent function that can and does significantly reduce sexual assault and sexual misconduct and, to that end, has explored the use of recording functionalities for the Uber App. But these recording functionalities (even if they were available during Plaintiffs' ride) are inadequately designed to address sexual misconduct committed by drivers against passengers.

47.     For example, Uber developers modified the code of the Uber App on the back end to allow in-app video recording by the driver. That is, when toggled on by the driver, this functionality allowed drivers to record internal footage of Uber trips using their phone's camera as a dash camera.

48.     In addition to making the feature optional, rather than automatic, Uber coded its in-app video recording functionality so that all recordings are encrypted in the Uber App and

1  locally stored on the driver's cell phone, meaning that recordings cannot be obtained by Uber, law
2  enforcement, or any third party without the express authorization of the driver.

3      49.    The result is that in-app video recording does not have any deterrent effect on
4  sexual assault or sexual misconduct by drivers against passengers because drivers exercise
5  absolute control over whether recording happens, and because drivers know that, even if the
6  technology is on, third parties cannot access the recordings.

7      50.    Had the Uber App included automatic video and audio monitoring of rides, by
8  definition that feature would have been engaged on Plaintiff's ride.

9      51.    Automatic audio monitoring would have deterred the driver from engaging in
10 sexual misconduct toward Plaintiff.

11     **WHEREFORE**, Plaintiff prays for relief and judgment against Defendants for economic
12 and non-economic compensatory and punitive and exemplary damages, together with interest,
13 costs of suit, attorneys' fees, and all such other relief as the Court deems proper. At this time,
14 Plaintiff does not seek injunctive relief, but reserves all rights to later seek such relief as
15 appropriate under Fed. R. Civ. P. 15(b)(2) and Fed. R. Civ. P. 54(c).

## JURY DEMAND

Plaintiff demands a trial by jury as to all claims in this action.

| | | |
|---|---|---|
| 1 | Dated: March 14, 2025 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| 2 | | John Eddie Williams, Jr. |
| | | Brian Abramson |
| 3 | | Margret Lecocke |
| | | Walt Cubberly (SBN 325163) |
| 4 | | Batami Baskin |
| | | Myles Shaw |
| 5 | | WILLIAM HART & BOUNDAS, LLP |
| | | 8441 Gulf Freeway, Suite 600 |
| 6 | | Houston, Texas 77017-5051 |
| | | Telephone: (713) 230-2200 |
| 7 | | Facsimile: (713) 643-6226 |
| | | Email: jwilliams@whlaw.com |
| 8 | | Email: babramson@whlaw.com |
| | | Email: mlecocke@whlaw.com |
| 9 | | Email: wcubberly@whlaw.com |
| | | Email: bbaskin@whlaw.com |
| 10 | | Email: mshaw@whlaw.com |

*Attorneys for Plaintiff*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory above has concurred in this filing.

Dated: March 14, 2025                    By:    */s/ Annie M. Wanless*
                                                Annie M. Wanless