1   [Submitting counsel below]

2

3

4

5

6

7

8                UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  IN RE: UBER TECHNOLOGIES, INC.,      No. 3:23-md-03084-CRB
    PASSENGER SEXUAL ASSAULT

13  LITIGATION                 **PLAINTIFFS' BRIEF IN OPPOSITION TO**
                       **DEFENDANTS' MOTION FOR**

14                       **PROTECTIVE ORDER**

15   This Document Relates to:        Judge: Honorable Lisa J. Cisneros
                       Date: March 26, 2025

16   ALL ACTIONS               Time: 10:00 am
                       Courtroom: G – 15th Floor

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Contents**

I.    INTRODUCTION ........................................................................................ - 1 -

II.   LEGAL STANDARD ................................................................................ - 2 -

III.  ARGUMENT ............................................................................................. - 4 -

A.   Each witness possesses first-hand knowledge of important, relevant facts. .................... - 4 -

    1.   Dara Khosrowshahi ............................................................................ - 4 -

    2.   Travis Kalanick .................................................................................. - 8 -

    3.   Jill Hazelbaker .................................................................................. - 10 -

    4.   Rachel Whetstone .............................................................................. - 12 -

    5.   Sachin Kansal ................................................................................... - 13 -

    6.   Frank Chang ..................................................................................... - 15 -

    7.   Sarfraz Maredia ............................................................................... - 17 -

    8.   Ryan Graves ..................................................................................... - 18 -

    9.   Joe Sullivan ...................................................................................... - 19 -

B.   Plaintiffs have adequately exhausted less intrusive means of discovery. .................... - 20 -

IV.   CONCLUSION ........................................................................................ - 21 -

1

**Table of Authorities**

2

**Cases**

3

*Affinity Labs of Texas v. Apple, Inc*., 2011 WL 1753982 (N.D. Cal. May 9, 2011) ...................... 11

*Apple Inc. v. Samsung Elec. Co*., 282 F.R.D. (N.D. Cal. 2012)...................................... 6, 9, 10, 13

*Boston Ret. Sys. v. Uber Tech., Inc*., 2023 WL 6132961 (N.D. Cal. Sept. 19, 2023)........... 5, 6, 10

*Celerity, Inc. v. Ultra Clean Holding, Inc*., 2007 WL 205067 (N.D. Cal. Jan. 25, 2007)............. 11

*Grateful Dead Prods. v. Sagan*, 2007 WL 2155693 (N.D. Cal. July 26, 2007) ........................... 14

*Hunt v. Continental Casualty Co*., 2015 WL 1518067 (N. D. Cal. Apr. 3, 2015).................. 10, 24

*In re Apple Iphone Antitrust Litig*., 2021 WL 485709 (N.D. Cal. Jan. 26, 2021).......... 6, 10, 13, 23

*In re Google Litig*., 2011 WL 4985279 (N.D. Cal. Oct. 19, 2011)............................................. 6, 7

*In re Transpacific Passenger Air Transp. Antitrust Litig*., 2014 WL 939287 (N.D. Cal. May 6, 2014) ...................................................................................................................... 5, 6, 7, 23

*In re Yosemite National Park Hantavirus Litig*., 2017 WL 2861162 (N.D. Cal. July 5, 2017) .... 10

*Jackson Fam. Wines, Inc. v. Zurich Am. Ins. Co*., 2024 WL 3325485 (N.D. Cal. July 8, 2024) . 10, 14, 23

*Kennedy v. Jackson Nat. Life Ins. Co*., 2010 WL 1644944 (N.D. Cal. Apr. 22, 2010)............. 9, 10

*Laatz v. Zazzle, Inc*., 2024 WL 448735 (N.D. Cal. Sept. 5, 2024) ................................................. 9

*Robertson v. McNeil-PPC Inc*., 2014 WL 12576817 (C.D. Cal. Jan 13, 2014) ........................... 10

*Schneider v. Chipotle Mexican Grill, Inc*., 2017 WL 4127992 (N.D. Cal. Sept. 19, 2017) .......... 10

*Symantec Corporation v. Zscaler, Inc*., 2019 WL 8331428 (N.D. Cal. Sept. 19, 2019) .............. 10

*Updateme Inc. v. Axel Springer SE*, 2018 WL 5734670 (N.D. Cal. Oct. 31, 2018)..................... 10

*Waymo LLC v. Uber Techs., Inc*., Case No. 3:17-cv-00939-WHA, Dkt. 2401-1 (Dec. 15, 2017) 23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.     INTRODUCTION**

2          Uber seeks to preclude the deposition of nine employees (nearly a quarter of the total

3    requested to date) on the basis that these employees held supposed "apex" positions at the

4    company.[1] But Uber's motion falls far short of supporting such sweeping relief.

5          To begin, Uber's motion fails to take into account the criticality of the information these

6    individuals possess. The scope of this litigation – arising from over 1,600 sexual assault cases

7    proceeding in this Court alone – spans over more than a decade of mismanaged policies and

8    practices, designed to prioritize corporate profit over women's safety. The development,

9    implementation, and modifications of these policies and practices over time are of utmost

10   importance. As one would expect, the key players on these issues are not low-level employees,

11   but rather mid- and high-level individuals, including CEOs, who had the seniority, authority, and

12   longevity to make the core decisions that lead to this MDL. For example,

13

14

15

16

17         Uber argues, without any support, that the selection of these individuals borders on

18   harassment. But in truth, the 37 deponents selected (out of more than 31,000 employees),

19   including the nine at issue, were carefully and judiciously selected. The parties are operating

20   under a compressed discovery schedule (ECF No. 195), as well as the "soft cap" of 45 total

21   depositions. ECF No. 771 at 4. Plaintiffs have neither the time nor resources to put forth any

22   deponents that they do not believe possess crucial information relevant to this MDL. As set forth

23   herein, each challenged employee (or former employee) possesses important (and unique)

24   _____

25   [1] Uber's motion for a protective order comes after custodians were heavily disputed and
     negotiated; the 55 agreed to custodians were all employees the parties recognized would be
26   deposed. As such, Uber should have raised any "apex" objections during the parties' seven-month
     custodial negotiations or in its response to the Motion to Compel, but it inexplicably failed to do
27   so. Indeed, this Court undertook the burden of reviewing numerous documents and exhibits to
     already opine that certain disputed witnesses have unique personal knowledge. ECF No. 1698 at
28   12, 16)(noting "Mr. Graves email, along with his own deposition testimony, provide strong
     support that his files will have unique, non-duplicative information" and rejecting Uber's
     argument that Plaintiffs did not "show that Mr. Chang has unique, non-duplicative information.").

1  knowledge into core issues in this case.

2          As it has done numerous times before, Uber suggests the Court follow the JCCP in

3  precluding Plaintiffs from deposing people Uber deems too "senior" until they have taken other

4  depositions first. But our discovery schedule does not allow it, nor does the law require it (as

5  explained below).[2] And Uber's motion stretches the concept of an "apex" witness beyond its

6  breaking point. For example, according to Uber, Vice President Frank Chang "sits immediately

7  below Uber's ELT", and "frequently participates in meetings with ELT members." But that is

8  hardly the CEO or President whom the apex doctrine was intended to protect from harassment.

9          Uber faces a heavy burden to limit or preclude depositions of its employees. Under the

10  unique circumstances of this case—national in scope, with an overwhelming amount of discovery

11  to complete in a remarkably short amount of time—Uber has not met that burden. Uber's motion

12  should be denied in its entirety.

13  **II.     LEGAL STANDARD**

14          Under Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an

15  order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

16  or expense," including prohibiting a deposition or limiting its scope. A party invoking this

17  provision to avoid the deposition of a high-level executive—a so-called "apex deposition"—

18  "bears the burden of showing good cause for why the deposition should not be allowed." *Boston*

19  *Ret. Sys. v. Uber Tech., Inc*., 2023 WL 6132961, at *2 (N.D. Cal. Sept. 19, 2023); *see also In re*

20  *Transpacific Passenger Air Transp. Antitrust Litig*., 2014 WL 939287, at *1 (N.D. Cal. May 6,

21  2014)("[T]he party seeking protection bears the burden of showing specific prejudice or harm.").

22          "[T]he apex doctrine [] is really just an application of Rule 26's requirements of relevance

23  and proportionality and protecting a person from abuse or harassment. When a lawsuit concerns

24  important aspects of a company's business model that are plainly the result of high-level

25

26  ────────────

[2] As the JCCP Court explained, its order was based not on applicable federal law, but on

27  California law which places the burden on the party seeking an apex deposition to show

"compelling reasons" for the deposition. *See* Luskey Decl., Ex. 1, at 6. *cf. Boston Ret. Sys. v.*

28  *Uber Tech., Inc*., 2023 WL 6132961, at *2-3 (applying federal law and ordering depositions of

Dara Khosrowshahi, Travis Kalanick, Jill Hazelbaker, Ryan Graves, and other Uber employees).

executive decisions, we should expect that high-level executives will be deposed []." *In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *4 (N.D. Cal. Jan. 26, 2021)("This is not a lawsuit by someone who slipped on a banana peel in the produce aisle at Safeway and now seeks to depose Safeway's CEO."). In particular, "it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *Apple Inc. v. Samsung Elec. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012)(internal quotation marks omitted).

In considering a motion to preclude or limit a deposition, "courts examine whether the proposed deponent possesses first-hand knowledge of important, relevant facts." *Boston Ret.*, 2023 WL 6132961, at *2 (internal quotation marks omitted). The "party seeking to take the deposition need not prove conclusively that the deponent certainly has unique non-repetitive information; rather, where the corporate officer *may* have any first-hand knowledge of relevant facts, the deposition should be allowed." *In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *5 (citation omitted)(emphasis in original).

"In general, the apex doctrine limits the length of a deposition, rather than barring it altogether, because of the heavy burden a party faces in blocking a deposition entirely." *Id.* at *3. (citation omitted). A "claimed lack of knowledge, by itself, is insufficient to preclude a deposition." *In re Google Litig.*, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011). And "[w]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Apple*, 282 F.R.D. at 263 (citation omitted).

Courts also consider "whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.* (citation omitted). But "formal 'exhaustion' [has not] been viewed as an absolute requirement." *In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *5 (citation omitted). Indeed, "[r]equiring that a party exhaust other discovery sources before taking an apex deposition creates a burden-shifting analysis not mandated by the Federal Rules of Civil Procedure or the relevant case law." *Transpacific*, 2014 WL 939287, at *5. Exhaustion "is an important consideration" only to the extent that it "shed[s] … light on whether the party is seeking the apex deposition for appropriate purposes." *Id.*

1  **III.    ARGUMENT**

2      **A.    Each witness possesses first-hand knowledge of important, relevant facts.**

3      Uber has not met its burden under the apex doctrine and Rule 26. First, the majority of

4  these witnesses are not subject to the apex doctrine. While Uber's former and current CEOs are

5  "apex" employees, Uber uses mere labels to paint with far too broad a brush an "apex" objection

6  onto witnesses who are not contemplated by the doctrine. Second, assuming that the apex

7  doctrine does apply, Plaintiffs have proffered more than sufficient evidence to conclude that each

8  witness possesses first-hand knowledge of important, relevant facts related to this MDL. While

9  Uber argues that each witness must have "unique, non-repetitive information," the Court has

10  broader discretion under the apex doctrine and Rule 26.[3] Regardless, each witness possesses

11  unique, non-repetitive information which is critical to the issues in this case, as described below.

12  Uber's motion should be denied.[4]

13

14          **1.    Dara Khosrowshahi**

15      Dara Khosrowshahi joined Uber as its CEO in September 2017.



22

23  _____

    [3] Further demonstrating that each witness has "unique, non-repetitive information," the following
24  is a count of how many documents each witness appears on with no other custodian:

25

        *See* March 14, 2025 Declaration of Roopal P. Luhana ("Luhana Decl."), at p. 2.
26  [4] To the extent any witness claims that their deposition should not proceed because of a busy
    schedule or a significant burden, courts have consistently rejected this excuse. *See In re*
27  *Transpacific*, 2014 WL 939287, at *3 ("that the apex witness has a busy schedule is simply not a
    basis for foreclosing otherwise proper discovery"); *In re Google Litig.*, 2011 WL 4985279, at *2
28  (permitting the deposition of Google CEO despite his busy schedule).



---
[5] All exhibits are attached to the Luhana Declaration.

1

2

3

4

5

6

7

8

9      While Uber proffers numerous substitutes for Khosrowshahi, any testimony to date has

10   left more questions than answers.

11

12

13

14

15

16

17

18

19

20

21

22

---

23   [6] Uber spends considerable ink arguing that Plaintiffs should depose other Uber employees
      besides these witnesses. But that is not the standard under the apex doctrine. And Uber's
24   proposed alternative witnesses cannot provide the information detailed herein, which is unique to
      these witnesses. For example, instead of deposing Dara Khosrowshahi, Uber claims that Plaintiffs
25   can get the same information from Gus Fuldner. But Fuldner did not join the ELT until 2021, and
      thus cannot speak to decisions made before then. And "just because another witness has testified
26   regarding the same facts does not mean such testimony would be repetitive." *Kennedy v. Jackson
      Nat. Life Ins. Co.*, 2010 WL 1644944, at *2 (N.D. Cal. Apr. 22, 2010)(internal citation omitted).
27   Nor would an alternative witness's testimony necessarily be admissible evidence. *See Laatz v.
      Zazzle, Inc.*, 2024 WL 4487355, at * 2-3 (N.D. Cal. Sept. 5, 2024)(denying motion for protective
28   order because even if another deponent could testify about what witness said, "such testimony
      would be inadmissible hearsay.")

1   Based on the above and more,[7] Khosrowshahi has first-hand knowledge of important,

2   relevant facts, including unique, non-repetitive information, that Plaintiffs can't obtain through

3   other means. Uber has not met its burden showing otherwise. *See*, *e.g.*, *Jackson Fam. Wines, Inc.*

4   *v. Zurich Am. Ins. Co.*, 2024 WL 3325485, at *2 (N.D. Cal. July 8, 2024)(denying motion for

5   protective order where "documents produced in discovery show that Johnson 'frequently

6   communicated with his subordinates [] and was involved with the decision-making on those

7   claims."); *In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *3 (same because "[t]here is

8   really no one like Apple's CEO who can testify about how Apple views competition in these

9   various markets that are core to its business model."); *see also Boston Ret. Sys. v. Uber Tech.,*

10  *Inc.*, 2023 WL 6132961, at *2-3 (denying Uber's motion for protective order under Apex doctrine

11  and ordering deposition of Dara Khosrowshahi, Travis Kalanick, Jill Hazelbaker, Ryan Graves).[8]

12      *Apple Inc. v. Samsung Electronics Co., Ltd*, 282 F.R.D. 259 (N.D. Cal. 2012) is

13  instructive. In *Apple*, the court permitted Samsung's CEO to be deposed because "Choi was at the

14  head of a strategic shift in Samsung's design mentality at precisely the time that certain accused

15  products were being developed, [so] Choi may have engaged in the type of hands-on action which

16  demonstrates the unique personal knowledge", which supports discovery "into Choi's role in

17  developing the policies or strategies identified as suspect by Apple." *Id*. at 264-66. Just so here.

18  ████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ██████[9]

---

[7] *See* Additional Evidence Related to Dara Khosrowshahi, Ex. 16.

[8] *Hunt v. Continental Casualty Co.*, 2015 WL 1518067, at *3 (N. D. Cal. Apr. 3, 2015)("[CEO's] declaration presents [defendant's] version of events, but that declaration is not a substitute for Plaintiff's entitlement under the Federal Rules to ask questions in person and obtain answers under oath."); *Kennedy*, 2010 WL 1644944, at *2 (ordering deposition because CEO "may have relevant personal knowledge regarding the facts of this case" as it appears he was a main-decision maker); *Updateme Inc. v. Axel Springer SE*, 2018 WL 5734670, at *2 (N.D. Cal. Oct. 31, 2018)(denying protective order because CEO was personally involved in product's strategy and development).

[9] Uber's cited authorities are readily distinguishable. *See Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 4127992, at *2-3, n.3 (N.D. Cal. Sept. 19, 2017)(denying deposition where "[p]laintiffs only state that [witness] has not been fully examined on issues relevant to this case, but do not specify what those issues are" and noting "[the Court also has some concerns over Plaintiffs' motivation for the deposition []."); *Symantec Corporation v. Zscaler, Inc.*, 2019 WL

**2.** **Travis Kalanick**

---

8331428, at *1 (N.D. Cal. Sept. 19, 2019)("[s]tatements in an earnings call about a general trend in the company's business, a trend that any number of people could testify to, are not enough to justify an apex deposition."); *Robertson v. McNeil-PPC Inc.*, 2014 WL 12576817, at *18 (C.D. Cal. Jan 13, 2014)(finding that witness had personal knowledge of relevant issues but simple information can be obtained through requests for admissions); *In re Yosemite National Park Hantavirus Litig.*, 2017 WL 2861162, at *3 (N.D. Cal. July 5, 2017)(denying deposition of company president because his involvement was "limited and pro forma", and he was "simply involved in funding, but exercised no oversight beyond that []."); *Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011)(fact that the witness is a CEO by itself is insufficient to justify taking his deposition); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *1 (N.D. Cal. Jan. 25, 2007)(denying deposition of CEO who was not with the company during the relevant time period).



<sup>12</sup> The Court previously rejected Uber's claim that these notes were protected by attorney-client privilege. ECF No. 2005 at 7.

1

2

3

4

5

6    Only Kalanick can answer questions regarding what these statements mean and how they

affected Uber's failure to prevent sexual assault on its platform.[14] Altogether, as Uber's co-

7    founder and CEO, Kalanick possesses unique first-hand knowledge about Uber's position on

8    safety issues, driver onboarding, consumer trust, and other relevant topics to this litigation that

9    only he can speak to what steps (and why) Uber has (or has failed) to take. His deposition should

10   proceed.

11

12              3.      **Jill Hazelbaker**

13       Jill Hazelbaker is Uber's Chief Marketing Officer and Senior Vice President,

14   Communications and Policy. She joined Uber in 2015, has been an ELT member since 2017, and

15   has been a central decision-maker regarding safety throughout her tenure.

16

17

18

19       While a senior level employee at Uber, Hazelbaker is not an apex witness. *See In re Apple*

20   *Iphone Antitrust Litig.*, 2021 WL 485709, at *4 (noting that senior vice presidents may have

21   important, high-ranking jobs, but they are "not a CEO or head of an agency" and therefore "less is

22   required to justify their depositions"); *Apple Inc.*, 282 F.R.D. at 263 ("In order that the 'apex'

23   designation as applied to multiple executives does not itself become a tool for evading otherwise

24   relevant and permissible discovery, [] the court must assess [] the person's degree of 'apex-

25   ness'[].). At a minimum, her lesser degree of "apex-ness" weighs heavily against a protective

26   _____

27   [13]

28   [14] *See* Additional Evidence Related to Travis Kalanick, Ex. 39.

1    order.

2        Regardless, Hazelbaker possesses unique, first-hand knowledge of important, relevant

3    facts to this MDL. [REDACTED]

4    [REDACTED]

5    [REDACTED]

6    [REDACTED]

7    [REDACTED]

8    [REDACTED]

9    [REDACTED]

10   [REDACTED]

11   [REDACTED]

12   [REDACTED]

13   [REDACTED]

14   [REDACTED]

15   [REDACTED]

16   [REDACTED]

17   [REDACTED]

18       Hazelbaker has relevant, first-hand knowledge, particularly about Uber's statements

19   regarding safety, that Plaintiffs cannot obtain through other means.[16] *See, e.g.*, *Jackson Family*

20   *Wines, Inc.*, 2024 WL 3325485, at *2-3 (denying protective order where it was not clear that the

21   witness was a true "apex" witness, and witness likely had first-hand knowledge of relevant facts

22   related to "critical decisions")(citing *Grateful Dead Prods. v. Sagan*, 2007 WL 2155693, at *1 n.

23   5 (N.D. Cal. July 26, 2007)("[W]here a corporate officer may have any first-hand knowledge of

24   relevant facts, the deposition should be allowed.")(citation omitted).

25       Finally, while Uber states that the Court has dismissed Plaintiffs' claims related to safety-

26

27   [15] [REDACTED]

28   [16] *See* Additional Evidence Related to Jill Hazelbaker, Ex. 54.

1    related statements, Plaintiffs' fraud claims were dismissed with leave to amend. *See* ECF No.

2    1044 at 37. Multiple bellwether Plaintiffs have now alleged such claims based on statements they

3    saw and relied upon. Moreover, Uber's safety statements are also relevant to Plaintiffs' non-fraud

4    claims, such as whether Uber assumed a duty to protect passengers, whether Uber and its

5    passengers had a special relationship, and punitive damages. Uber's motion for a protective order

6    for Hazelbaker should be denied.

7

8                **4.    Rachel Whetstone**

9           Rachel Whetstone was Uber's Senior Vice President, Communications and Public Policy,

10   from 2015 to 2017. At Uber, Whetstone was head of policy and communications, which

11   encompassed the company's media-strategy and its efforts to shape the regulatory and legislative

12   landscape to suit its needs. While an Uber SVP, Whetstone is not a true apex witness, and her

     "lesser degree of apex-ness" weighs heavily against a protective order.

13

14

15

16

17

18

19
                                                    And Whetstone was highly relevant to Uber's U.S.-

20   based communications and public relations work. *See*, *e.g.*, Business Insider, *Meet the Power*

21   *Players Who Really Run Uber* (Jan. 21, 2017), https://www.businessinsider.com/uber-top-

22   executives-power-players-2017-1#rachel-whetstone-controls-ubers-message-13 ("Whetstone has

23   been staffing up on more political talent to maintain good ties with policymakers and

24   regulators.").

25

26

27   [17] Kara Swisher, Uber's Head of Communications, Rachel Whetstone, is Leaving (April 11,
     2017), https://www.vox.com/2017/4/11/15265176/uber-communications-head-rachel-whetstone-
28   departs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20      At bottom, Whetstone possesses first-hand knowledge of important, relevant facts to this

21 MDL[18], and her deposition should proceed.

22

23      **5.    Sachin Kansal**

24      Sachin Kansal has worked at Uber since 2017. He held director-level positions in product

25 management before being promoted to Uber's Chief Product Officer. Throughout his tenure,

26 Kansal has played a critical role in overseeing safety product initiatives. As with the other non-

27 CEO witnesses, Kansal is not a true apex witness.

28
_____
[18] *See* Additional Evidence Related to Rachel Whetstone, Ex. 59.



OPP'N TO MOT. FOR PROTECTIVE ORDER
CASE NO. 3:23-MD-03084

1

2

3

4

5

6

7    In short, Kansal is not merely a "product" witness, as Uber paints him, but his work was

8    necessarily intertwined with a deep knowledge of safety issues at Uber and potential ways to

9    address safety concerns.[21] He has relevant, first-hand knowledge that Plaintiffs cannot obtain

10   through other means and Uber's motion for protective order should be denied.

11

12       **6.    Frank Chang**

13       Frank Chang is Uber's Vice President of Applied Science. ECF 1698 at 15 (ordering he be

14   included as a custodian).

15

16

17

18

19

20

21

22

23

24       Chang is not an apex witness. Uber states he "sits immediately below Uber's ELT", and

25   "frequently participates in meetings with ELT members." ECF No. 2425 at 19. That is far

26   removed from a company CEO whom the apex doctrine was intended to apply.

27

28
_____

[21] *See* Additional Evidence Related to Sachin Kansal, Ex. 98.

1       Nevertheless, Chang has first-hand knowledge of important, relevant facts that are unique

2 and non-repetitive. ███████████████████████████████████████████████

3 █████████████████████████████████████████████████████████

4 █████████████████████████████████████████████████████████

5 ██████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ██████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ██████████████████████████

10 ████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 █████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 █████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 █████████████████████████████████████████████████████████

19 ██████████

20 ███████████████████████████████████████████

21 ██████████████████████████████████████████

22 ██████████████████████████████████████████

23 ███████████████████████████ Only Chang can explain the ways in

24 which data plays into Uber's taxonomies, and the way in which data was analyzed, organized,

25 and patterns were recognized at Uber. Uber's motion should be denied.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 7.   Sarfraz Maredia

Sarfraz Maredia began working for Uber in 2014 and was previously its VP & Regional General Manager for U.S. & Canada Delivery and its VP & Regional General Manager for U.S. & Canada Mobility (Ridesharing). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As with numerous other witnesses identified herein, Maredia is not a true apex witness which weighs heavily against a protective order.

22 *See also* https://www.nytimes.com/2018/11/30/nyregion/uber-new-york-sarfraz-maredia.html

1

2

3

4

5

6

7       As with the other witnesses at issue, Maredia has relevant and unique first-hand

8   knowledge[23] and Uber's motion for protective order should be denied.

9

10          **8.      Ryan Graves**

11       Ryan Graves was Uber's first employee and served as Uber's CEO from February through

December 2010 before becoming the SVP of Global Operations from January 2011 through

12   September 2017. ECF 1698 at 11. He also served as a Member of Uber's Board of Directors from

13   March 2010 through May 2019.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
[23] *See* Additional Evidence Related to Sarfraz Maredia, Ex. 110.





As this Court previously found, Plaintiffs have a reasonable basis to believe Graves communicated with non-custodians while addressing and implementing safety measures for Uber. ECF No. 1698 at 12. Graves has unique and relevant knowledge since he was Uber's first employee, CEO, and head of operations.[25] Uber's motion should be denied.

### 9.    Joe Sullivan

Uber does not claim that Joe Sullivan is an apex witness. Instead, Uber argues that his deposition should be precluded because "Plaintiffs likely seek the deposition of Joseph Sullivan so they can use his criminal conviction to tarnish the company." ECF No. 2425 at 24. This is false. Plaintiffs have neither the time nor the resources to depose people they do not believe possess crucial information (and the conviction is a matter of public record in any event). Instead, Sullivan possesses unique knowledge about safety issues at Uber, and only he can speak to what steps were actually taken to address numerous rampant safety-related problems.

---

[24]

[25] *See* Additional Evidence Related to Ryan Graves, Ex. 119.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   deposition should proceed.[27]

17

18   **B.    Plaintiffs have adequately exhausted less intrusive means of discovery.**

19   Uber argues that its motion should be granted because Plaintiffs have not exhausted less

20   intrusive means of discovery. Uber's argument misses the mark. There is no formal exhaustion

21   requirement, and exhaustion is not even a relevant consideration where, as here, there is a

22   compressed discovery schedule and a "soft cap" of 45 total depositions. *See Jackson Fam. Wines,*

23   *Inc.*, 2024 WL 3325485, at *3 (denying apex motion because "[g]iven the timing, Zurich's offer

24   to meet and confer about the need for Johnson's deposition following the depositions of [] 'other

25   key witnesses' is unworkable."). As detailed above, Plaintiffs have a compelling basis for each

26   ─────────────────
[26] *See* Additional Evidence Related to Joe Sullivan, Ex. 125.

27   [27] According to Sullivan, Uber intentionally destroyed documents and improperly marked
documents as privileged. *See Waymo LLC v. Uber Techs., Inc.*, Case No. 3:17-cv-00939-WHA,
Dkt. 2401-1, at 6-7 (Dec. 15, 2017)(ECF No. 2434, Ex. 3). Uber has repeatedly objected to the

28   use of this document as hearsay. Deposing Sullivan on this issue moots Uber's objection.

deposition, making exhaustion irrelevant. *See Transpacific*, 2014 WL 939287, at *5 (exhaustion "is an important consideration" only to the extent that it "shed[s] … light on whether the party is seeking the apex deposition for appropriate purposes."); *In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, at *5 (exhaustion not an absolute requirement)(internal citation omitted);

Moreover, Plaintiffs have adequately exhausted less intrusive means of discovery without obtaining the information sought. Plaintiffs have served two sets of voluminous document requests and interrogatories and deposed nine witnesses to date (not including numerous depositions taken in the JCCP). Yet outstanding questions remain which can only be answered by these witnesses.[28] No further "exhaustion" should be required. *See Hunt*, 2015 WL 1518067, at *3 ("the Court is satisfied that Plaintiff has attempted less intrusive discovery methods. Plaintiff has deposed other CNA executives, but those depositions have not rendered [CEO's] deposition redundant, [].").

**IV.    <u>CONCLUSION</u>**

For the reasons stated above, Uber's motion should be denied.

---

[28] Placeholder dates for these depositions have mostly been set for May or June.

Dated: March 14, 2025                 Respectfully submitted,

By: */s/ Sarah R. London*
  Sarah R. London (SBN 267083)
  **GIRARD SHARP LLP**
  601 California St., Suite 1400
  San Francisco, CA 94108
  Telephone: (415) 981-4800
  slondon@girardsharp.com


By: */s/ Rachel B. Abrams*
  Rachel B. Abrams (SBN 209316)

  **PEIFFER WOLF CARR KANE CONWAY &**
  **WISE, LLP**
  555 Montgomery Street, Suite 820
  San Francisco, CA 94111
  Telephone: (415) 426-5641
  Facsimile: (415) 840-9435
  rabrams@peifferwolf.com


By: */s/ Roopal P. Luhana*
  Roopal P. Luhana

  **CHAFFIN LUHANA LLP**
  600 Third Avenue, 12th Floor
  New York, NY 10016
  Telephone: (888) 480-1123
  Facsimile: (888) 499-1123
  luhana@chaffinluhana.com

  *Co-Lead Counsel*

1

## **FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory above has concurred in this filing.

Dated:  March 14, 2025                    By:    */s/ Roopal P. Luana*
                                                                Roopal P. Luhana