RANDALL S. LUSKEY (SBN: 240915)
   rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
   ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
   cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
   akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES DING AND ANDERSON -- PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶III(6)** |

Pursuant to Special Master Order No. 2 (ECF 2357) § III(6), Defendants submit this brief and attached declarations in support of their position on the remaining privilege challenges for custodians Abbie Ding and Brooke Anderson. Through the course of this litigation, Uber has produced close to a million documents in response to Plaintiffs' expansive discovery requests, totaling nearly four million pages. Of that universe, Plaintiffs have lodged numerous challenges to documents that have been withheld, in whole or in part, based on Uber' assertion of privilege or work product protection. Through many conferrals, the parties have narrowed their disputes to 127 challenges for the two custodians listed above.

While Plaintiffs have narrowed their challenges from their earlier position, they continue to pursue meritless challenges, which should be rejected. This includes challenges that have already been rejected in substance by Judge Cisneros, challenges based on an incorrect and entirely speculative interpretation of the document's purpose (in contravention to the clear log description), and challenges based on an unjustifiably narrow and incorrect interpretation of the law. Instead, the applicable legal standard, the relevant factual background, including additional factual support contained in declarations from Uber's in-house counsel, and examples from the common categories of documents and challenges, as set forth below, all support Uber' privilege and work product assertions.

## I. **LEGAL STANDARD**

### A. **Attorney-Client Privilege**

"The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years. *Mitchell v. Superior Ct.*, 691 P.2d 642, 645–46 (Cal. 1984). "The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client. Clearly, the fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters." *Id.*; *see also, e.g.*, *Cohen v. Middletown Enlarged City Sch. Dist.*, 2007 WL 631298, at *1 (S.D.N.Y. Feb. 28, 2007).

2
DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES DING AND ANDERSON – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)
Case No. 3:23-MD-3084-CRB

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco Wholesale Corp. v. Super Ct.*, 47 Cal. 4th 725, 733 (2009). "Once that party established facts necessary to support a prima facie claim for privilege," the privilege is presumed to apply, and the opponent "has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

The attorney-client privilege "attaches when (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 863 (N.D. Cal. 2019). A non-lawyers' intent to seek legal advice need not be express. *See In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 1699536, at *4 (N.D. Cal. June 16, 2006) ("[T]he Court looks to the context of the communication and content of the document to determine whether a request for legal advice is in fact fairly implied, taking into account the facts surrounding the creation of the document and the nature of the document."). "The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material . . . not merely information in the sole possession of the attorney or client." *Costco Wholesale*, 47 Cal. 4th at 734. "[B]ecause the privilege protects the *transmission* of information, if the communication is privileged, it does not become unprivileged simply because it contains material that could be discovered by some other means." *Id.* at 735.

       i.    <u>Draft Documents</u>

Draft documents sent to counsel to review for the purpose of providing legal advice are privileged, even if the final version of the document is ultimately made public. *See, e.g.*, *In re Banc of California Sec. Litig.*, 2018 WL 6167907, at *2 (C.D. Cal. Nov. 26, 2018) ("When a client sends a draft disclosure document to an attorney for comment or input, the attorney-client privilege attaches to the draft and remains intact even after the final document is disclosed."); *City of Roseville*

3

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES DING AND ANDERSON – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB

*Employees' Ret. Sys. v. Apple Inc.*, 2022 WL 3083000, at *23-*24 (N.D. Cal. Aug. 3, 2022) (finding that a draft version of a publicly available financial disclosure form, that was sent to in-house counsel, which reflects in-house counsel's legal advice is privileged). This is especially true where a document involves a topic with "significant legal implications for which Uber would be expected to seek legal advice." (*See* 1/29/25 Order, ECF 2168, p. 18, Doc. 53996).

        ii.        <u>Outside Counsel</u>

Communications with outside counsel are "presumed to be made for the purpose of seeking legal advice." *Dolby Lab'y Licensing Corp.*, 402 F. Supp. 3d at 866; *United States v. Chevron Corp*, No. C-94-1885, 1996 WL 264769, at *4 (N.D. Cal. Mar. 13, 1996) (stating this presumption is "logical since outside counsel would not ordinarily be involved in the business decisions of a corporation"). If a person or business hires a lawyer for advice, there is a "rebuttable presumption that the lawyer is hired as such to give legal advice, whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (finding communications with outside counsel to be privileged even where outside counsel was communicating legal advice regarding the client's business affairs).

**B.    Attorney Work-Product Privilege**

The attorney work-product privilege protects documents or things prepared in anticipation of litigation or trial by a party or its representative, including documents created at the direction of counsel. *See* Fed. R. Civ. P. 26(b)(3); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1080-81 (N.D. Cal. 2002). A document can be protected by the work-product doctrine even if it does not relate to a specific case, so long as it was prepared in anticipation of litigation. *See Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for United States Att'ys*, 844 F.3d 246, 253 (D.C. Cir. 2016) (no requirement that work product requires "anticipation of litigating a specific claim."). All that is required is that there is "more than a remote possibility of litigation." *Fox v. California Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988); *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004).

4

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES DING AND ANDERSON – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB

### C. Privilege Redactions

"An entire document or set of documents may be privileged when it contains privileged portions that are 'so inextricably intertwined with the rest of the text that they cannot be separated.'" *United States v. Christensen*, 828 F. 3d 763, 803 (9th Cir. 2015) (citing *United States v. Chevron Corp.*, 1996 WL 264769, *5 (N.D. Cal. Mar. 13,1996)). Privilege redactions are required only where there are non-privileged portions that are "distinct and severable" from the privileged portions "and if their disclosure would not reveal the substance of the privileged portions." *In re Google RTB Consumer Priv. Litig.*, 2024 WL 3642191, at *5 (N.D. Cal. Aug. 1, 2024). Applying this standard, Uber has withheld in full documents that contain privileged portions so inextricably intertwined with the rest of the text that they cannot be separated, and has redacted documents if the non-privileged portions are feasibly severable from the privilege portions.

### D. Privilege Logs

When an otherwise-discoverable document is withheld on a claim of privilege, Federal Rule of Civil Procedure 26(b)(5)(A)(2) requires the withholding party to "describe the nature of the documents . . . not produced . . . and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." "The Ninth Circuit has held a party can meet this burden by providing a privilege log that identifies '(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.'" *In re Meta Pixel Healthcare Litig.*, 2024 WL 3381029, at *2 (N.D. Cal. July 10, 2024) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)); *see also Spilker v. Medtronic, Inc.*, 2015 WL 1643258, at *6 (E.D.N.C. Apr. 13, 2015) (finding that privilege log descriptions were "sufficiently specific to allow Plaintiff to determine the basis for the privilege asserted with respect to each document" because they included "the following information for each document withheld: date, author, recipient (including any recipient copied or blind copied), description, and the privilege

asserted … [and] a glossary of names and titles associated with the documents for which privilege was asserted").

Throughout this litigation, Uber has voluntarily provided additional information well beyond what is required to enable Plaintiffs to better evaluate Uber's privilege claims. For example, Uber has provided over a dozen additional privilege log fields, with additional information about documents such as the names of Google Collaborators and "privileged name(s)" (to identify attorneys in documents in which an attorney does not expressly appear on the metadata), and a separate tab of "privileged name(s)" that includes Uber job titles of privileged actors. Uber's privilege logs exceed the information required to substantiate its privilege claims.

## II.    FACTUAL BACKGROUND

Plaintiffs have challenged 127 documents.[1] Given this large number of challenges and the short time during which privilege claims will be assessed, it is impossible to fully address the complete history and unique factual circumstances for every challenged document. However, as requested by the Special Master, Uber has provided (1) a glossary of terms commonly used in disputed documents, (2) a list of names and titles of relevant Uber inside and outside counsel, and (3) a digest of third-parties present in its privilege log. These materials, when reviewed in conjunction with the challenged documents, provide much of the necessary background to support Uber's privilege assertions.

Uber now submits additional evidence, through the attached declarations from Scott Binnings, Uber's Associate General Counsel, Safety and Core Services (Ex. A) and Jennifer Handley, Senior Director, Safety Legal, Global (Ex. B) addressing the documents identified below for which additional factual support helps to clarify Uber's privilege assertions. Uber's counsel will also be available to assist with any questions the Special Master may have when reviewing the documents.[2]

---

[1] On March 6, 2025, when Defendants served their revised privilege log pursuant to Special Master Order No. 2, Plaintiffs had approximately 748 challenges pending for the custodial files at issue in this brief. On March 11, 2025, Plaintiffs only submitted 148 challenges to the Special Master for the same group of custodial files. Following the meet and confer process, Plaintiffs now challenge 127 documents.

[2] Uber reserves its objections to the expedited timing and procedures outlined in Master Order No. 2.

<u>Document Addressed in Scott Binnigs' Declaration:</u>

JCCP_MDL_PRIVLOG054651

<u>Documents Addressed in Jennifer Handley's Declaration:</u>

JCCP_MDL_PRIVLOG014737

JCCP_MDL_PRIVLOG015009

## III.   PLAINTIFFS' CHALLENGES LACK MERIT

### A.   Uber's Documents Are Privileged Even If They Are "Business Related."

Plaintiffs have challenged approximately 70 entries in whole or in part on the basis that the communication appears to have a "primary purpose" of "business operations or corporate policy." Such challenges are meritless and should be rejected by the Special Master. Judge Cisneros, in fact, rejected similar challenges when she upheld, in whole or in part, 84-92% of Uber's privilege claims. Like any business, Uber regularly seeks legal advice from its in-house counsel on matters pertaining to its business. Indeed, all of Uber's documents are "business related." And the subject line or title of its emails and other communications will be on business topics, such as background checks or marketing. But that does not mean that the primary purpose of such communications is non-legal. *See, e.g.*, *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs. This principle has long been the law.").

When a communication involves multiple purposes, courts look to whether the "primary purpose of the communication is to give or receive legal advice, as opposed to business" advice. *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021). In the *Staley* case, the plaintiffs argued that redacted portions of certain memoranda prepared for high-level company decision-makers on business decisions about entering certain business deals could not be privileged because the primary purpose of the memoranda was related to business advice. The court directly rejected that argument, explaining that "the attorney-client privilege can still obtain even where a business decision is implicated. Specifically, if an attorney gives a client *legal advice on a business decision*, that communication is

7

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES DING AND ANDERSON – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB

1  protected by the privilege (assuming, *e.g.*, that the communication was made in confidence and in his
2  or her capacity as an attorney)." *Staley v. Gilead Scis., Inc.*, 2021 WL 4318403, at *2 (N.D. Cal. July
3  16, 2021) (citing cases).

4     For these reasons, the Court should reject Plaintiffs' challenges.

5     **B.    Privilege Extends to Non-Attorney Communications.**

6     Plaintiffs have also challenged approximately 81 privilege claims because no attorney is on the
7  email or listed as author or collaborator of a document. There are two primary reasons such
8  challenges, without more, are fundamentally flawed. First, under certain circumstances,
9  communications between non-lawyers are privileged. The attorney-client privilege protects
10 communications seeking or providing legal advice. *See, e.g.*, *Dolby Lab'ys*, 402 F. Supp. 3d at
11 863. But importantly, it also "may attach to communications between nonlegal employees where:
12 (1) the employees discuss or transmit legal advice given by counsel; and (2) an employee discusses
13 her intent to seek legal advice about a particular issue." *Id.* at 866; *see also OwLink Tech., Inc v.*
14 *Cypress Tech. Co., Ltd*, 2023 WL 4681543, at *2 (C.D. Cal. June 29, 2023) ("Under California law,
15 the communications of corporate employees with counsel, *or with each other about legal advice*, are
16 privileged." (emphasis added)). And documents "sent for the purpose of facilitating legal advice" are
17 privileged. *United States ex rel. Schmuckley v. Rite Aid Corp.*, 2023 WL 425841, at *3 (E.D. Cal. Jan.
18 26, 2023). "[W]here the specific purpose of [a] document is to seek legal advice[, even if] the
19 document is sent to nonlegal business staff for the purpose of informing them that legal advice has
20 been sought or obtained, the attorney-client privilege obtains even though the document was provided
21 to nonlegal personnel." *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 2585038, at *3 (N.D. Cal.
22 Aug. 30, 2006). And "[c]ommunications containing information compiled by corporate employees
23 for the purpose of seeking legal advice and later communicated to counsel are protected by attorney-
24 client privilege." *AT&T Corp. v. Microsoft Corp.*, 2003 WL 21212614, at *3 (N.D. Cal. Apr. 18,
25 2003).

26
27
28

Second, it is not uncommon that the final email in a chain does not include a lawyer—even where an attorney is an integral part of the conversation lower in the thread and provides legal advice—such as where an email chain is forwarded (without including the attorney) to someone else in the company to make them aware of the legal advice provided. Other times, an employee working at the direction of in-house counsel may send an email or other communication on behalf of counsel. *See USA v. Shaw*, 2023 WL 4539849, at *2 (N.D. Cal. July 12, 2023) (agreeing "that the attorney-client privilege applies to investigations performed by non-attorneys working at the direction of counsel. . . . [C]onduct and communications of non-attorney employees, agents and investigators undertaken at direction of counsel are work-product protected"); *United States v. Nobles*, 422 U.S. 225, 238–39 (1975) ("[T]he [attorney work product] doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself."). Thus, whether a communication is protected by the attorney-client privilege requires a careful analysis of the contents of the documents, as Uber has done, rather than a mechanical or cursory review of log metadata fields as Plaintiffs have done. Plaintiffs' challenges in this regard should be rejected.

For example, Plaintiffs challenged the privilege claim for JCCP_MDL_PRIVLOG012786 because there was "[n]o attorney identified on the email and does not appear purpose of email was to provide or seek legal advice." That challenge is meritless, because as Uber's privilege log clearly indicates (and the Special Master's review will confirm), the "e-mail thread seek[s] legal advice from in-house counsel regarding initiatives or campaigns to promote rider safety." Specifically, the thread includes an extended discussion with Uber in-house counsel Jennifer Handley and Scott Binnings in which legal advice was sought and provided about the language that could be used in advertisements. At the conclusion of the discussion, then-Head of Global Safety Communications Brooke Anderson forwarded the email chain to Uber's Vice President of Communications Matt Kallman to let him know about the legal advice provided by Uber's in-house counsel. This email chain is privileged in its entirety—including the email forwarding the legal advice to a non-attorney—regardless of the fact

there was not an attorney in the final email in the thread. *See Dolby Lab'ys*, 402 F. Supp. 3d at 866; *OwLink Tech.*, 2023 WL 4681543, at *2 *In re CV Therapeutics*, 2006 WL 2585038, at *3.

DATED: March 17, 2025                             Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Maria Salcedo*
MARIA SALCEDO (Admitted *Pro Hac Vice*)
   msalcedo@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

MICHAEL B. SHORTNACY (SBN: 277035)
   mshortnacy@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

PATRICK OOT (Admitted *Pro Hac Vice*)
   oot@shb.com
**SHOOK, HARDY & BACON L.L.P.**
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

KYLE N. SMITH (*Pro Hac Vice* admitted)
   ksmith@paulweiss.com
JESSICA E. PHILLIPS (*Pro Hac Vice* admitted)
   jphillips@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP**
2001 K Street, NW
Washington DC, 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

10
DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES DING AND ANDERSON – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)
Case No. 3:23-MD-3084-CRB

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS FOR CUSTODIAL FILES DING AND ANDERSON – PURSUANT TO SPECIAL MASTER ORDER NO. 2 (ECF 2357) ¶ III (6)

Case No. 3:23-MD-3084-CRB