UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br>ALL CASES. | Case No. 23-md-03084-CRB   (LJC)<br><br>**ORDER REGARDING MOTION TO COMPEL AND TO IMPOSE SANCTIONS, AND RELATED MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 2438, 2439, 2476 |

This Order concerns a long-running dispute over Uber's production of policy documents, and assumes the parties' familiarity with the history of the case. *See*, *e.g.*, Dkt. No. 588 at 2, 8–9 (June 4, 2024 Joint Discovery Status Report illustrating the parties' disputes related to identifying Uber's relevant policies). In brief, Plaintiffs first sought Uber's policies through their requests for production over a year ago, and the deadline for substantial completion of Uber's production in response to Plaintiffs' First Set of Requests for Production passed on September 1, 2024. Dkt. No. 175 at 4. Since the passage of that date, the Court has redoubled efforts to ensure completion of document discovery, and directed the parties to begin their depositions. Presently, Plaintiffs move to:

> (1) compel Uber to produce all relevant policies, underlying responsive hyperlinked documents, and operational guidelines in connection with the 40 policies Plaintiffs identified; (2) compel Uber to make available its Google Drive, Knowledge Base, and uKnowledge systems for inspection; and (3) order sanctions for Uber's repeated noncompliance with Court orders regarding policy production.

Dkt. No. 2438 at 2.[1]

---

[1] To clarify the filings that relate to this motion, the Court notes that Plaintiffs filed a correction to their motion, and Uber filed a response to the correction. *See* Dkt. Nos. 2458 (Notice of

1    The purported delinquency primarily concerns production of documents hyperlinked from
2    forty policies that Plaintiffs selected for priority treatment in accordance with a previous order of
3    the Court. Specifically, the Court previously ordered as follows:

> Plaintiffs shall select no more than forty policies of particular importance to the case . . . . Uber shall produce all versions of those policies and any related operational guidelines no later than January 10, 2025, along with a letter from counsel setting forth a timeline of operative versions of each policy, identified by Bates number. The Court expects the parties in the meantime to continue to meet and confer regarding other policies at issue, and Uber to complete production of other relevant policy documents no later than January 31, 2025.

Dkt. No. 1996 at 2. In effect, the Court ordered Uber to produce *all* policy documents at issue by January 31, 2025. *Id.*

The Court had discussed at a discovery status conference the possibility of requiring production of all documents hyperlinked from those policies. Dkt. No. 2041 (Tr.) at 37:7–12. But Uber objected to the production of all hyperlinked documents as likely to snowball to an unmanageable scope, *id.* at 37:13–24, and the Court indicated that the issue would be resolved in a written order, rather than ruling from the bench, *id.* at 41:6–10. As quoted above, that subsequent order did not require production of all hyperlinked documents, but instead required "all versions of those policies and any related operational guidelines." Dkt. No. 1996 at 2.

In a January 21, 2025 status report, Plaintiffs asserted that Uber had not produced operational guidelines "embedded in the Polic[i]es," while Uber argued that it was not required to produce hyperlinked documents but had agreed to produce certain hyperlinked documents that Plaintiffs requested. Dkt. No. 2115 at 3–4. Uber argued at the subsequent status conference that the links were not necessarily relevant and might (for example) relate to policies for Uber Eats. Dkt. No. 2485 at 9:13–15.[2] Plaintiffs argued that Uber had refused to identify which hyperlinks it

---

Correction), 2478 (Response). The Court denies Uber's request to strike Plaintiff's Notice of Correction, but grants leave to allow Uber's response, and has considered both filings.

[2] This transcript was mistakenly filed under seal, apparently based on a discussion therein of sealing a future proceeding. *See* Dkt. No. 2485 at 5:10–6:16. The Court hereby orders it unsealed. The Court also notes that the transcript is not sequentially numbered with contemporaneous filings in the docket. For the convenience of the reader, the Court notes that the transcript (Dkt. No. 2485) appears between docket entries 2146 and 2147 when the ECF docket is viewed chronologically.

2

1    had or had not produced. *Id.* at 11:2–10.  Plaintiffs made a clear request that Uber identify the

2    hyperlinked documents referenced in the policies that it was willing to produce and which were

3    nonresponsive to its request for Uber's policy-related documents. *Id.* at 21:7–11.  The Court

4    asked Uber "to provide a letter [stating] the parameters for what hyperlinks [Uber] didn't chase

5    down and produce," *id.* at 21:19–21, and Uber agreed to do so, *id.* at 22:13–18.  "The Court

6    ordered defense counsel to provide a letter to Plaintiffs' counsel no later than Monday, January 27,

7    2025 explaining the criteria Uber used to determine whether to produce documents hyperlinked

8    from the policy-related documents Uber has produced." Dkt. No. 2138 (Jan. 23, 2025 Minutes) at

9    1.  After the issues arose again in yet another discovery status report, Dkt. No. 2380 at 9–10, the

10   Court ordered Plaintiffs to file a motion to compel and Uber to file an opposition brief, Dkt. No.

11   2409, which the parties have now done.

12         Emphasizing the Court's use of the word "*whether*" in requiring Uber to explain its

13   criteria for production of hyperlinked documents, Uber asserts that it complied with the January

14   23, 2025 minute order by explaining in a letter to Plaintiffs that it essentially disregarded

15   hyperlinks in its policies because it determined that manual review of those links would be unduly

16   burdensome, and instead conducted a search based on subject matter for relevant operational

17   guidelines.  Dkt. No. 2477 at 3; Dkt. No. 2477-6 at 6.  Uber wasted the Court's and Plaintiffs' time

18   by failing to disclose at the discovery status conference that it did not review any hyperlinked

19   documents.  Instead, when the Court asked if Uber could provide a letter identifying "the

20   parameters for what hyperlinks [Uber] didn't chase down and produce," posing as hypotheticals

21   that such hyperlinks might include documents related to Uber Eats or international operations,

22   Uber's counsel asserted Uber was "happy to explain that," but counsel would need to check with

23   the client about whether such a letter could be provided by the next day—strongly implying that

24   Uber had used *some* sort of criteria to determine which hyperlinks it would produce.  Dkt. No.

25   2485 at 21:19–22:25.

26         Uber also asserted in that letter that "the Court did not require Defendants to produce *all*

27   related operational guidelines," but instead "ordered the parties to *prioritize* production of

28   documents related to the policies 'of particular importance.'"  Dkt. No. 2477-6 at 6.  That is a

3

1    mischaracterization of the Court's order.  The Court ordered Plaintiffs to select forty policies to
2    prioritize, and ordered Uber to "produce all versions of those policies and *any* related operational
3    guidelines no later than January 10, 2025."  Dkt. No. 1996 at 2 (emphasis added).  Uber now
4    asserts that it has produced operational guidelines "related to safety and background checks," Dkt.
5    No. 2477 at 4, but that was not the Court's order.  Uber was required to produce any operational
6    guidelines related to the policies Plaintiffs had requested.  Based on Uber's representation that it
7    searched for guidelines related to certain self-selected major issues in the case, rather than those
8    related to the particular policies Plaintiffs requested, it appears that Uber has failed to comply fully
9    with the Court's order, although the scope of the omitted related guidelines is not clear.[3]

10   As summarized above, the Court's orders aimed to complete production of Uber's policy-
11   related documents by January 31, 2025, after the prior deadline for substantial production had
12   passed.  The parties persistently disputed the extent to which production of responsive policy
13   related documents was advancing, and operational guidelines and hyperlinked documents were a
14   focus of their dispute.  Hyperlinks are one obvious way to identify some of the related operational
15   guidelines, even if that approach is "both overinclusive and underinclusive" in some respects, as
16   Uber asserted in correspondence.  Dkt. No. 2477-6 at 6.  Although Uber indicated that not all links
17   in policies are directed to operational guidelines and not all operational guidelines are linked from
18   policies, *id.*, Uber notably stops short of asserting that its policies do not link to operational
19   guidelines, or even that it would be unusual for them to do so.  Nor does Uber contend that when
20   hyperlinks in the forty prioritized policies reference documents other than the operational
21   guidelines, those documents are always non-responsive to Plaintiffs' request for Uber's policy-
22   related documents.

23   Indeed, Plaintiffs have demonstrated that at least some of Uber's policy documents are
24   drastically incomplete, bordering on unintelligible, without reference to other documents

---

[3] The Court recognizes that Uber categorized the guidelines it produced as related to particular policies, and that Uber has produced a large number of guidelines.  *See* Dkt. No. 2476-3 at 8–78 (under seal).  But Uber's description of how it searched for and collected such guidelines does not indicate that Uber followed the Court's instructions as to what must be produced.  *See* Dkt. No. 2477 at 4.

hyperlinked therein—or at the very least an understanding of where such hyperlinks are directed. *See* Dkt. No. 2438 at 4–5 (redacted); Dkt. No. 2439-4 (sealed version of Plaintiffs' Motion) at 4–5. Even if the documents to which such links are directed have been produced, Plaintiffs seem to have no way to know *which* documents many of the hyperlinks at issue implicate, and thus no way to determine the full meaning of the policy documents that rely on those links to convey substantive information about how Uber employees should carry out their duties.

The Court therefore ORDERS Uber to provide additional access to hyperlinked documents through a combination of the following, with the parties to meet and confer as to a feasible approach:

(1) Plaintiffs may request Uber's production of specific hyperlinked documents from policy documents—or, if a document has already been produced, identification of that document—where they have a specific, good faith basis for anticipating that the hyperlinked document will be responsive to their request for policy-related documents, such as revealing the meaning of Uber's policy. Uber must produce the document or identify the already-produced document within five days of the request, or meet and confer with Plaintiffs within three days of the request if it is unable to fulfill it. These deadlines are consistent with the production timeline in protocol the parties have agreed to use for other hyperlinks besides the Gmail-to-Google-Drive links produced as a matter of course. *See* Dkt No. 2464. Based on the likely narrower universe of documents linked from policies, the Court is inclined to allow a larger number of requests per week for policy-related hyperlinks than the ten allowed for other hyperlinks, and would be prepared to order the production of at least fifty policy-related hyperlinks (not including the up-to-ten other hyperlinks) per week.

(2) For some number of specific policy documents (i.e., specific temporal versions of such policies), Uber shall provide sufficient documents and information for Plaintiffs to understand the destination of every hyperlink, whether that is to another part of the same document, another document previously produced, another document produced as part of this process, or a document withheld for an articulated reason.

5

(3) Uber shall provide Plaintiffs' counsel eight hours to inspect the policy documents Uber has produced, on Uber's network with full access to hyperlinks, including to additional hyperlinks within hyperlinked documents.  For each hyperlink Plaintiffs' counsel wishes to follow, defense counsel shall have a short but reasonable opportunity to preview the destination document.  The Court recommends that Judge Breyer amend the terms of the Special Master's appointment to include overseeing this inspection.  If defense counsel objects to Plaintiffs' counsel's access to the destination document, either the Special Master (or, if the parties agree, a representative of the Special Master) shall be available in real time and at Uber's expense to either uphold the objection and deny access, overrule the objection and grant access, or, if necessary, take the issue under submission to be resolved at a later date.  Denials of access may be based on privilege or similar protective doctrines (e.g., work product), or on a sufficient combination of irrelevance and commercial sensitivity that allowing access even under the terms of the protective order in this case would cause undue burden.

The Court has considered Uber's objections to an inspection, Dkt. No. 2477 at 6–8, and nevertheless finds such relief warranted under the circumstances of the case, given the vital importance of understanding Uber's safety-related policies and procedures, and the general conditions set forth above.  That said, the parties are encouraged to consider whether other methods of identifying hyperlinked documents are more efficient than the sort of mediated inspection ordered here.  The parties may negotiate and stipulate to an alternative approach whereby the inspection is not necessary to ensure a complete response to Plaintiffs' requests for discovery of Uber's policy documents.

The parties shall meet and confer and file no later than March 21, 2025 either: (1) a stipulation and proposed order setting forth protocols for each of the items above, including deadlines, numbers of documents, and terms of access for any inspection to address privacy and any other legitimate concerns; or (2) a joint statement setting forth each party's proposal, without argument.

The Court DENIES Plaintiffs' request for sanctions at this time, WITHOUT PREJUDICE

6

1  to Plaintiffs renewing that request in a separate motion consistent with Civil Local Rule 7-8 after
2  the protocol is resolved as set forth above, if Plaintiffs still believe such relief to be warranted.
3        Finally, the Court has reviewed the administrative motions to file under seal (Dkt. Nos.
4  2439, 2476) in relation to Plaintiffs' Motion to Compel and Uber's Opposition, and finds good
5  cause to GRANT those requests, as narrowed by Uber's response to Plaintiffs' administrative
6  motion (Dkt. No. 2475), *except* that with respect to Plaintiffs' Motion to Compel, *only* the first
7  screenshot at the top of page 3 (using the document's internal pagination) may remain redacted.
8  To complete the public record, Plaintiffs shall file a revised redacted version of that Motion no
9  later than one week from the date of this Order.
10        **IT IS SO ORDERED.**
11  Dated: March 18, 2025

LISA J. CISNEROS
United States Magistrate Judge