RANDALL S. LUSKEY (SBN: 240915)
    rluskey@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile:  (628) 232-3101

ROBERT ATKINS (*Pro Hac Vice* admitted)
    ratkins@paulweiss.com
CAITLIN E. GRUSAUSKAS (*Pro Hac Vice* admitted)
    cgrusauskas@paulweiss.com
ANDREA M. KELLER (*Pro Hac Vice* admitted)
    akeller@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON**
    **& GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile:  (212) 757-3990

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| ——————————————— | **DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]** |
| This Document Relates to: | |
| ALL ACTIONS | |
| | Judge:      Hon. Lisa J. Cisneros |
| | Courtroom:  G – 15th Floor |

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NO. 2439]

Case No. 3:23-MD-3084-CRB

## DECLARATION OF DANIEL CUMMINGS

I, Daniel Cummings, having personal knowledge of the following state:

1.     I am a partner at the law firm of Shook, Hardy & Bacon LLP, attorneys of record for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC, (collectively, "Uber"). I am a member in good standing of the Bars of the States of Missouri, Kansas, and Nebraska. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief, and if called to testify, I could competently do so.  I respectfully submit this declaration in support of Uber's Statement in Support of Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should Be Filed Under Seal, ECF No. 2518 and 2542, ("Uber's Statement").

2.     I have reviewed the unredacted version of Plaintiffs' Brief in Opposition to Defendants' Motion for Protective Order, filed under seal and in redacted form on March 14, 2025.  The redactions which Uber seeks to maintain are found on pages and lines 6:1-2, 9:21-10:5, 13:14-19, 14:3-4, 17:9-15, 17:18-18:6, 20:4-6, and 20:10-11, and on page 14, footnote 19.  The redacted material consists of confidential information about financial compensation, internal performance analyses, communication strategies, confidential research and product feature proposals, and background check and independent driver deactivation policies.  Uber has expended significant resources developing its internal policies, procedures, business strategies and plans, product proposals, and research.  Therefore, disclosure of this information risks harm to Uber through its competitors utilizing the information and copying processes.  Relatedly, the risk that communications and documents related to confidential internal business decisions and strategies will be unsealed (especially under the lower good cause standard) is likely to cause harm by chilling frank discussion and innovation if a business's legitimate interests in confidentiality are disregarded.

3.     I have reviewed Exhibits 1, 20, 25, 26, 28, 30, 42, 126, 127, 128, 130, 132, 139, 141, 147, 148, 154, 163, and 166 to the Declaration of Roopal Luhana in Support of Plaintiffs' Brief in Opposition to Defendants' Motion for Protective Order, and all other exhibits to this declaration. These specific exhibits, and other exhibits at issue in Plaintiffs' Motion, contain non-public email

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

1    addresses of Uber employees and other personal identifying information of Uber employees and third

2    parties.  Public disclosure of this information would violate the legitimate privacy interests of these

3    individuals.  Additionally, Exhibit 166 contains a link to Uber's internal JIRA system related to the

4    incident discussed in that email.  This link should be redacted in light of the potential cybersecurity

5    risk of including a link to Uber's internal systems on the public docket, and risk of disclosure of highly

6    sensitive information contained in the linked incident report in the event of a security breach.

7           4.     I have reviewed Exhibits 3, 4, 13, 14, 15, 17, 101, 112, 113, and 136 to the Declaration

8    of Roopal Luhana in Support of Plaintiffs' Brief in Opposition to Defendants' Motion for Protective

9    Order.  These documents are confidential deposition transcripts.  These deposition transcripts should

10   be maintained under seal for two primary reasons. First, documents should be sealed under the good

11   cause standard when they are already protected from disclosure in a separate court proceeding and

12   sealing is necessary to "avoid disparate treatment."  *In re Xyrem*, 2023 WL 3874024, at *2 (N.D. Cal.

13   June 6, 2023); *Netlist Inc.*, 2024 WL 2429346, at *1.  Each of the deposition transcript exhibits is from

14   a deposition in another litigation (including some that were cross-noticed in the JCCP and MDL).  And

15   each is marked as confidential or highly confidential pursuant to a protective order in that other

16   litigation.  For this reason alone, the Court should maintain these exhibits under seal, under the

17   applicable good cause standard, out of respect for those other courts and their the protective orders.

18   Second, these transcripts are independently sealable under the good cause standard.  The deposition

19   of Troy Stevenson (Exhibit 3) is marked as highly confidential and contains testimony regarding

20   internal company strategy and decision making.  The Roger Kaiser (Exhibit 13), Andi Pimentel

21   (Exhibit 14), and Jenny Luu (Exhibit 15) transcripts are marked as confidential or highly confidential

22   and contain discussion of internal business decisions and directives, such as internal deliberations on

23   topics such as dash cams.  The deposition of Brad Rosenthal (Exhibit 17) is marked as highly

24   confidential attorneys' eyes only, and has extensive discussions of Uber's internal structures, groups,

25   and individual roles and responsibilities.   Katy McDonald's transcript (Exhibit 101) contains

26   discussions of a chart of internal roles and responsibilities and non-public safety data.  The deposition

27

28

3

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF
PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS
SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

transcript for Ryan Graves (Exhibits 112 and 113) in litigation against Uber by taxi companies is marked as "Confidential – Attorneys' Eyes Only." Exhibit 113 is the *entire* deposition transcript, containing extensive testimony on confidential information about Uber. Uber has expended significant resources developing its business strategies, data, and plans. Uber's non-public internal organization, structure, and roles and responsibilities should likewise be protected from disclosure because its internal structures are a critical business decision, created strategically to reflect and achieve its priorities and goals. Therefore, disclosure of this information risks harm to Uber through its competitors utilizing the information and copying processes. Likewise, internal strategy deliberations on confidential business decisions must be protected to avoid harm by chilling open and honest discussion and innovation.

5.  I have reviewed Exhibits 2, 5, 6, 7, 8, 9, 10, 11, 12, 16 to the Declaration of Roopal Luhana in Support of Plaintiffs' Brief in Opposition to Defendants' Motion for Protective Order. These exhibits relate to Uber CEO Dara Khosrowshahi. These exhibits contain discussions and notes regarding confidential internal business strategy and decision-making processes, communications strategy, and other types of confidential business information. For example, Exhibit 12 is an email discussion marked confidential deliberating on a potential safety initiative. Exhibit 6 is a confidential internal chat about strategy and considerations for an audio recording product feature. Exhibit 10 is an email about a confidential compensation proposal for Uber's leadership. Exhibit 2 is a chat about communications strategy. Exhibit 5 is an email containing a detailed strategy discussion that includes detailed internal information on safety product features. Exhibit 7 is a set of notes from a strategy discussion with Uber's executive leadership team, containing confidential business information. Exhibit 9 is an email that also relates to an executive-level decision on a potential safety product feature, and Exhibit 8 similarly is an internal chat regarding strategic direction given by Uber's CEO on the business's priorities. And Exhibit 11 is a confidential email discussing Uber's internal tracking of safety data. Finally, Plaintiffs include as Exhibit 16 a document (apparently created by Plaintiffs) citing to and quoting from several other confidential documents, including the confidential deposition

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

transcript of Andi Pimentel, regarding strategic business decisions. The material in these documents consists of confidential information about financial compensation, communication strategies, confidential research and product feature proposals, and analysis of safety policies and procedures. Uber has expended significant resources developing its internal policies, procedures, business strategies and plans, product proposals, and research. Therefore, disclosure of this information risks harm to Uber through its competitors utilizing the information and copying processes. Relatedly, internal strategy deliberations on confidential business decisions must be protected to avoid harm by chilling open and honest discussion and innovation.

6. I have reviewed Exhibits 18, 19, 21, 22, 23, 24, 25, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 129, 131, 134, 135, and 136 to the Declaration of Roopal Luhana in Support of Plaintiffs' Brief in Opposition to Defendants' Motion for Protective Order. These exhibits relate to Uber founder and former CEO Travis Kalanick. They contain extensive information and discussion regarding internal company plans, priorities, deliberations, strategy, product design, and more. Exhibit 18 is a confidential email from Mr. Kalanick regarding internal Uber strategy and priorities, while Exhibit 19 is an email with notes from a meeting discussing internal strategy and business plans. Exhibit 21 is an email regarding a confidential product feature proposal. Exhibit 22 is an email about Uber's safety policy and data. Exhibit 23 is a chat discussing product design details. Exhibit 24 is a confidential email discussing Uber's response to a particular safety incident, which discloses details regarding internal company policy and strategy. Exhibits 29 and 31 are emails that dictate company strategy on public communications on regulatory and safety issues. Exhibit 32 is a confidential internal Q&A document with Mr. Kalanick that details company strategy and plans on a range of issues and Exhibit 33 is similarly an email from Mr. Kalanick regarding internal structure and roles and responsibilities that reveals internal company priorities and strategy. Exhibit 34 is an extensive discussion of company policy on independent driver eligibility. Exhibits 35, 36, and 37 are internal emails regarding strategy for public communications and media response. Exhibit 38 is an extensive set of notes detailing and evaluating all aspects of safety policy and structure at Uber and future strategic plans in that area.

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

1   Plaintiffs include as Exhibit 39 a document (apparently created by Plaintiffs) citing to and quoting

2   from several other confidential documents.  Among these are Exhibit 129, which is a confidential

3   email regarding business strategy for addressing potential city regulations.  Exhibit 131 is a

4   confidential email about strategy discussions with an executive candidate.  Exhibits 134 and 135 are

5   confidential emails discussing safety strategy, internal roles and responsibilities, operations,

6   organization, and company policy.  The material in these documents consists of confidential

7   information about confidential research and product design proposals, communication strategies, and

8   analysis of safety policies and procedures.  Uber has expended significant resources developing its

9   internal policies, procedures, business strategies and plans, product proposals, and research.

10  Therefore, disclosure of this information risks harm to Uber through its competitors utilizing the

11  information and copying processes.  Relatedly, internal strategy deliberations on confidential business

12  decisions must be protected to avoid harm by chilling open and honest discussion and innovation.

13      7.      I have reviewed Exhibits 40, 41, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 137, 138,

14  140, 142, 143, 145, and 146 to the Declaration of Roopal Luhana in Support of Plaintiffs' Brief in

15  Opposition to Defendants' Motion for Protective Order.  These exhibits relate to Uber's Chief

16  Marketing Officer and Senior Vice President Jill Hazelbaker.  They contain extensive confidential

17  information regarding internal company strategy on public communications, safety data, policies, and

18  procedures, and financial information regarding business partners.  For example, Exhibits 46, 47, 49,

19  50, and 51 are email discussions containing detailed internal data and financial information related to

20  background check policies and proposals.  Exhibits 40 and 53 are emails containing discussion of

21  internal strategy on safety issues and communication, as is Exhibit 41, which also contains data on

22  proprietary market research.  Exhibit 43 is an email discussing a confidential product feature proposal,

23  while Exhibit 44 is an email discussing a safety initiative, including internal details on product features

24  and strategy.  Exhibit 45 is another email that relates to internal company policy and strategy on

25  information sharing regarding independent driver deactivation.  Exhibit 48 is an internal chat

26  discussing background check policies.  Exhibit 52 discloses internal regulatory strategy and Exhibit

27

28

6

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

53 discloses strategy on communications related to safety issues.  Plaintiffs include as Exhibit 54 a document (apparently created by Plaintiffs) citing to and quoting from several other confidential documents.  Among these are Exhibit 137, which is a confidential chat disclosing strategy for communications on safety issues.  Exhibit 138 discusses business strategy and proprietary data on various safety issues and Exhibit 140 similarly includes internal proposals related to safety-related communications.  Exhibits 142, 143, and 144 include confidential strategy related to Uber's U.S. Safety Report.  Exhibit 145 discusses the strategy and implementation of the Safety Report and communications about this topic.  Finally, Exhibit 146 is a confidential internal document summarizing a meeting at which Uber's business strategies on policy and communication topics were discussed.  The material in these documents consists of confidential information about confidential communication strategies, proprietary data, and analysis of safety policies and procedures.  Uber has expended significant resources developing its internal policies, procedures, business strategies and plans, product proposals, and research.  Therefore, disclosure of this information risks harm to Uber through its competitors utilizing the information and copying processes.  Relatedly, internal strategy deliberations on confidential business decisions must be protected to avoid harm by chilling open and honest discussion and innovation.  Importantly, while communications strategy relates to public-facing statements, internal strategies and guidance on communications are nevertheless confidential and developed at great expense—communication strategy is entitled to confidentiality just as much as business strategy.

8.     I have reviewed Exhibits 55, 56, 57, 58, 59, 149, 150, 151, 152, 153, and 155 to the Declaration of Roopal Luhana in Support of Plaintiffs' Brief in Opposition to Defendants' Motion for Protective Order.  These exhibits relate to Uber's former Senior Vice President for Communications and Public Policy Rachel Whetstone.  They contain detailed information about internal confidential safety policies and procedures and communication strategy.  For example, Exhibit 55 is an email discussing company policies, strategy, organization, and communications on safety issues.  Exhibit 56 is an email with discussion of similar topics for the European market.  Exhibit 57 is marked as highly

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

confidential and includes internal research, company strategy, and policy discussions. Exhibit 58 is an internal confidential document providing guidelines on safety-related messaging. Plaintiffs include as Exhibit 59 a document (apparently created by Plaintiffs) citing to and quoting from several other confidential documents. Among these are Exhibit 149, which is a confidential document providing a strategic review of Uber's safety policies and communication strategy. Exhibit 150 is a document relating to policy and government relations, which discloses Uber's strategies and priorities on these topics, while Exhibit 155 is an email on the same topics. Exhibit 151 is an email about strategy for communicating about safety issues. Exhibit 152 details internal company strategy on driver community guidelines, and Exhibit 153 is a discussion of independent driver deactivation policies that discloses internal company strategies and roles and responsibilities. The material in these documents consists of confidential information about confidential communication strategies, policy issues, and analysis of safety policies and procedures. Uber has expended significant resources developing its internal policies, procedures, business strategies and plans, product proposals, and research. Therefore, disclosure of this information risks harm to Uber through its competitors utilizing the information and copying processes. Relatedly, internal strategy deliberations on confidential business decisions must be protected to avoid harm by chilling open and honest discussion and innovation. Importantly, while communications strategy relates to public-facing statements, internal strategies and guidance on communications are nevertheless confidential and developed at great expense—communication strategy is entitled to confidentiality just as much as business strategy.

9.      I have reviewed Exhibits 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89 90, 91, 92, 93, 94, 95, 96, 97, 98, 156, 157, 158, 159, 160, 161, and 162 to the Declaration of Roopal Luhana in Support of Plaintiffs' Brief in Opposition to Defendants' Motion for Protective Order. These exhibits relate to Uber's Chief Product Officer Sachin Kansal. The information in these documents includes proprietary and confidential information and data about product research and product proposals. For example, Exhibit 60 is a document discussing proprietary research and proposed safety features. Exhibit 61 is an email about

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

company strategy and a pilot program for a safety feature.  Exhibits 62, 64, 65, 69, 85, 86, 87, 88, 89, 95, 158, and 159 are presentations (or draft presentations) that contain internal proprietary research and data and confidential information about the details of safety product features and proposals. Exhibit 63 is a document that details a meeting to discuss internal business strategy and research on safety issues and proposals.  Exhibit 66 is an internal chat on business strategy, technology, and cost information.  Exhibit 67 is a document that details company information on technology and product usage.  Exhibit 68 is an email discussion detailing research, technology, and company policies on a safety product.  Exhibit 70 is a draft document about a strategy meeting on product design, detailing plans, proposals, and processes on product design.  Exhibits 71, 72, 73, 74, 75, 76, 77, and 93 are confidential emails on internal research, technology, and strategy on product feature proposals. Similarly, Exhibits 78, 79, and 80 are confidential emails on business strategy for policy and safety issues and proposals.  Exhibit 82 is a draft document on safety perception and incident reduction that details plans and proposals and policies on a broad range of safety issues.  Exhibits 83 and 84 are emails about strategy for communications on safety issues.  Exhibit 90 is an internal document related to a meeting on data and safety initiatives.  Exhibit 91 is an email that details safety categories, business priorities, research, and plans.  Exhibit 92 is an email that discloses strategy considerations for a safety feature proposal.  Exhibit 94 is a draft document on Uber's safety brand platform which details safety policy, strategy, and business plans from a brand perspective.  Exhibit 96 is a presentation that details confidential internal processes on safety incident report management.  And Exhibit 97 is a confidential email that includes detailed internal statistics and research on safety issues in various markets. Plaintiffs include as Exhibit 98 a document (apparently created by Plaintiffs) citing to and quoting from several other confidential documents.  Among these are Exhibit 156, which is a transcript of an internal presentation by Mr. Kansal regarding business strategy and potential new product features. Exhibit 157 is a confidential strategy document regarding communications strategy at a campus product demonstration.    Exhibit 160 is an internal email that discusses plans and internal considerations related to potential safety features.  Exhibit 161 is an internal chat discussing strategy

9

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

for an upcoming meeting about proposed product safety features.  Finally, Exhibit 162 is a confidential presentation entitled "Safety Product Overview" that discloses internal data on public perceptions and proposals for future safety features.  Uber has expended significant resources developing its product design, business strategies, proprietary data, and other business plans.  Uber's non-public internal organization, structure, and roles and responsibilities should likewise be protected from disclosure because its internal structures are a critical business decision, created strategically to reflect and achieve its priorities and goals.  Therefore, disclosure of this information risks harm to Uber through its competitors utilizing the information and copying processes.   Likewise, internal strategy deliberations on confidential business decisions must be protected to avoid harm by chilling open and honest discussion and innovation.   And while communications strategy relates to public-facing statements, internal strategies and guidance on communications are nevertheless confidential and developed at great expense—communication strategy is entitled to confidentiality just as much as business strategy.  Finally, while many product design features are publicly disclosed and marketed, Uber is entitled to maintain the confidentiality of its internal design, execution, and strategy behinds its proprietary product design and safety features.

10.   I have reviewed Exhibits 99, 100, and 102 to the Declaration of Roopal Luhana in Support of Plaintiffs' Brief in Opposition to Defendants' Motion for Protective Order.  These exhibits relate to Uber's Vice President of Applied Science Frank Chang.  The information in these documents includes confidential information about internal company policies and procedures and data on a range of safety and business issues.  For example, Exhibits 99 and 102 are confidential emails that detail proprietary policies and procedures for handling JIRA incident reports.  Exhibit 100 is a draft presentation designated as highly confidential regarding an internal strategy call for the Global Safety Support team, which contains information about internal confidential business strategy and priorities, including fraud detection, and internal roles and responsibilities.   Uber has expended significant resources developing its internal policies and procedures, business strategies, and product features.  Uber's non-public internal organization, structure, and roles and responsibilities should likewise be

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

1    protected from disclosure because its internal structures are a critical business decision, created

2    strategically to reflect and achieve its priorities and goals.  Therefore, disclosure of this information

3    risks harm to Uber through its competitors utilizing the information and copying processes.

4         11.    I have reviewed Exhibits 103, 104, 105, 106, 107, 108, 109, 110, 164, 165, 167, 168,

5    169, 170, 171, 172, and 173 to the Declaration of Roopal Luhana in Support of Plaintiffs' Brief in

6    Opposition to Defendants' Motion for Protective Order.  These exhibits relate to Uber's Vice President

7    and Head of Americas Delivery for Uber Sarfraz Maredia.   The information in these documents

8    includes confidential information about internal company policies and procedures and data on a range

9    of safety and business issues.  For example, Exhibit 103 is a presentation marked highly confidential

10   that discloses internal business structure and roles and responsibilities, and business strategies and

11   plans.  Exhibit 104 is an email related to policies for driver deactivations.  Exhibit 105 is an email that

12   discloses internal communications and press strategy.  Exhibit 106 a confidential email about driver

13   reinstatement that discloses internal processes for such determinations.  Exhibit 107 is an email with

14   comments from a confidential draft document that contains a discussion of background check and

15   fraud prevention.  Exhibits 108 and 109 are a confidential email chain about background check policies

16   and practices.  Plaintiffs include as Exhibit 110 a document (apparently created by Plaintiffs) citing to

17   and quoting from several other confidential documents.   Among these are Exhibit 164, which is a

18   document related to a meeting discussing confidential internal data and internal goals on incident

19   reports of safety issues.  Exhibit 165 is an email about strategy on driver classification.  Exhibit 167

20   is a confidential internal JIRA incident report which contains personal identifying information and

21   discloses details of Uber's confidential internal incident report system.  Exhibit 168 is a confidential

22   letter to a regulator providing information on Uber's internal policies, procedures, and data on safety

23   and background check issues, as well as internal operations and divisions.  Exhibit 169 is an email

24   discussing strategy for background check operations, including proprietary cost information and

25   business priorities.  Exhibit 170 is a confidential presentation that discloses proprietary research,

26   market perception data, and financial information.  Exhibits 171 and 173 are confidential emails about

27

28

11

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF
PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS
SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

1   internal strategies to implement business priorities, and Exhibit 172 is similarly about business

2   operations for a confidential strategic initiative. Uber has expended significant resources developing

3   its internal policies and procedures, business strategies, proprietary data, and safety features. Uber's

4   non-public internal organization, structure, and roles and responsibilities should likewise be protected

5   from disclosure because its internal structures are a critical business decision, created strategically to

6   reflect and achieve its priorities and goals. Therefore, disclosure of this information risks harm to

7   Uber through its competitors utilizing the information and copying processes. Likewise, internal

8   strategy deliberations on confidential business decisions must be protected to avoid harm by chilling

9   open and honest discussion and innovation. And while Uber provides public information about its

10  background check practices on its website and Safety Reports, its internal discussions and technical

11  policy details are nevertheless confidential and developed at great expense and entitled to

12  confidentiality.

13        12.    I have reviewed Exhibits 111, 114, 115, 116, 117, 118, 119, 174, 175, 176, 177, 178,

14  179, 180, 181, 182, 183, 184, and 185 to the Declaration of Roopal Luhana in Support of Plaintiffs'

15  Brief in Opposition to Defendants' Motion for Protective Order. These exhibits relate to Uber's first

16  employee, former CEO, board member, and Senior Vice President of Global Operations Ryan Graves.

17  The information in these documents includes confidential information about internal company policies

18  and procedures and business relationships. For example, Exhibit 111 is a confidential email about

19  safety feature proposals and strategy. Exhibits 114, 115, 116, and 117 are emails about background

20  check policies, procedures, proposals, and business partners. Exhibits 118 and 179 are an email with

21  a business investor partner. Plaintiffs include as Exhibit 119 a document (apparently created by

22  Plaintiffs) citing to and quoting from several other confidential documents. Among these are Exhibit

23  174, an email marked as highly confidential about a potential business acquisition. Exhibit 175 is a

24  highly confidential email regarding business terms with a foreign background check provider. Exhibit

25  176 is another highly confidential email which discusses business strategy regarding a competitor,

26  web design, and background check policies. Exhibit 177 is an email that details business strategies,

27

28
DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF
PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS
SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

goals, progress, operations, and finances.  Exhibit 178 is an email with a potential background check provider on terms and pricing.  Exhibit 180 is a confidential email summarizing a meeting discussing proposals and strategy for background check policy and practices.  Exhibit 181 is an email with proposals for product features and safety strategy.  Exhibit 182 is a presentation detailing Uber's crisis management strategy, including processes and implementation and business proposals.  Exhibit 183 is an email discussing strategy for driver feedback on the app.  Exhibit 184 is an email detailing communications strategy and priorities.   Finally, Exhibit 185 is a confidential email detailing background check policies and business partnerships.   Uber has expended significant resources developing its internal policies and procedures, business strategies, proprietary data, and safety features.  Therefore, disclosure of this information risks harm to Uber through its competitors utilizing the information and copying processes.  Likewise, internal strategy deliberations on confidential business decisions must be protected to avoid harm by chilling open and honest discussion and innovation.  And while Uber provides public information about its background check practices on its website and Safety Reports, its internal discussions and technical policy details are nevertheless confidential and developed at great expense and entitled to confidentiality. Similarly, while communications strategy relates to public-facing statements, internal strategies and guidance on communications are nevertheless confidential and developed at great expense—communication strategy is entitled to confidentiality just as much as business strategy.

13.     I have reviewed Exhibits 120, 121, 122, 123, 124, 125, 186, 187, 188, 189, 190, and 191 to the Declaration of Roopal Luhana in Support of Plaintiffs' Brief in Opposition to Defendants' Motion for Protective Order.  These exhibits relate to Uber's former Chief Security Officer Joe Sullivan. The information in these documents includes confidential information about strategy, proposals, research, data, and communication on safety policy and practices.  For example, Exhibit 120 is a draft communication about safety issues that reveals communication strategies.  Exhibit 121 is another draft document about internal strategy on safety policy issues at Uber.  Exhibit 122 is a confidential presentation that details Uber's strategy for business intelligence and other business

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

strategies. Exhibit 123 details a range of business priorities, plans, and strategies and includes proprietary data and information. Exhibit 124 is an email marked highly confidential discussing strategies on safety issues and proposals across the company. Plaintiffs include as Exhibit 125 a document (apparently created by Plaintiffs) citing to and quoting from several other confidential documents. Among these are Exhibits 186, 187, and 188, confidential emails detailing internal data collection and research requests, business strategies and proposals, and technical information. Exhibit 189 is an information discussing communication strategy on safety issues and product features. Exhibit 190 is an email discussion of a safety incident and broader strategy for safety policies and procedures. Finally, Exhibit 191 is a detailed set of confidential internal notes broadly analyzing safety at Uber, including internal data, operations, policy, product features and development, and business plans and goals. Uber has expended significant resources developing its internal policies and procedures, business strategies, proprietary data, and safety features. Therefore, disclosure of this information risks harm to Uber through its competitors utilizing the information and copying processes. Likewise, internal strategy deliberations on confidential business decisions must be protected to avoid harm by chilling open and honest discussion and innovation. And while Uber provides public information about its background check practices on its website and Safety Reports, its internal discussions and technical policy details are nevertheless confidential and developed at great expense and entitled to confidentiality. Similarly, while communications strategy relates to public-facing statements, internal strategies and guidance on communications are nevertheless confidential and developed at great expense—communication strategy is entitled to confidentiality just as much as business strategy.

14. The disclosure of the above-described documents could harm Uber's competitive standing and the legitimate privacy interests of Uber employees and third parties. Uber has expended significant resources developing its internal policies, procedures, business strategies and plans, product proposals, and research, and disclosure of these documents risks harm to Uber through its competitors utilizing the information and copying processes, and poses other risks. No less restrictive

14

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB

alternative to sealing the documents at issue is sufficient.  Uber has already narrowed its request to seal from the material in Plaintiffs' Motion by narrowing redactions, requesting limited redactions in place of fully sealing documents, or not requesting to seal or redact documents where appropriate. Actions short of sealing the documents requested by Uber would not protect Uber's competitive standing and the legitimate privacy interests of Uber employees and third parties.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 21, 2025.                    By: */s/ Daniel Cummings*

Daniel Cummings

15

DECLARATION OF DANIEL CUMMINGS IN SUPPORT OF DEFENDANTS' STATEMENT IN SUPPORT OF PLAINTIFFS' ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIALS SHOULD BE SEALED [ECF NOS. 2518, 2542]

Case No. 3:23-MD-3084-CRB