UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br>ALL CASES. | Case No. 23-md-03084-CRB (LJC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CORRECTED MOTION FOR PROTECTIVE ORDER BARRING APEX DEPOSITIONS**<br><br>Re: Dkt. No. 2428 |

Uber moves for a protective order preventing depositions of eight of its current and former officers and employees based on the apex doctrine.[1] That doctrine is essentially the courts' recognition that deposing high-level officers of large corporate and governmental entities imposes meaningful burdens on those entities and witnesses, in part because in the absence of any restrictions, sitting for depositions could quickly become a full-time job for leaders of entities that face extensive litigation. Rule 26's requirement of proportionality and avoidance of undue burden therefore warrant close oversight of such depositions. *See* Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i), (c)(1).

Both sides here rely entirely on district court authority. As far as this Court is aware, the Ninth Circuit has used the words "apex doctrine" exactly once, in a footnote making clear that a

---

[1] Uber also seeks a protective order barring the deposition of former Chief Security Officer Joe Sullivan on the basis that Plaintiffs would seek overly prejudicial testimony regarding Sullivan's criminal conviction, without specifically arguing in its Motion that the apex doctrine applies to Sullivan. Dkt. No. 2428 at 30. Plaintiffs have represented that they will not do so. Dkt. No. 2519 at 22. In any event, unduly prejudicial testimony would be excluded at trial under Rule 403 of the Federal Rules of Evidence. Uber also argues, primarily in its Reply, that Sullivan's testimony would be unduly cumulative, but Uber failed to develop that argument in its Motion and has not offered a declaration by Sullivan describing the scope of his knowledge or any burden that he would face in being deposed. Uber's Motion is DENIED as to Sullivan.

1  decision barring a deposition of cabinet secretary was *not* based on that doctrine. *In re U.S. Dep't*
2  *of Educ.*, 25 F.4th 692, 700 n.1 (9th Cir. 2022). As far as this Court is aware, the Supreme Court
3  has never used that term, and neither the Ninth Circuit nor the Supreme Court has ever used the
4  terms "apex witness," "apex deposition," or "apex testimony."[2] The lack of clear appellate
5  authority is not unusual for discovery issues, but cautions against treating past practice in non-
6  binding decisions as establishing inflexible rules of law.
7       In the absence of binding precedent or a clear instruction in Rule 26, this Court declines to
8  treat specific circumstances that courts have found appropriate to allow or bar "apex" depositions
9  in particular cases as establishing hard and fast rules for when such depositions are permissible,
10  including requirements of "unique" knowledge or exhaustion of other remedies.[3] The Court
11  respectfully disagrees with other district court decisions that have presented such tests as rules
12  required by law. *Cf. Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *2
13  (N.D. Cal. Feb. 2, 2012) (quoting *Affinity Labs of Tex. v. Apple, Inc.*, No. C 09-4436 CW (JL),

---

[2] Other circuits have discussed the doctrine, but those decisions are not binding on this Court, and do not favor strict rules as to when such deposition are or not permissible. The Sixth Circuit has rejected a per se requirement of unique relevant evidence. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 900–02 (6th Cir. 2012). The Fifth Circuit requires "extraordinary circumstances" to compel "apex testimony" (at least from heads of government agencies), but even that circuit's test requires balancing multiple factors at the discretion of the district court. *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023); *see also Salter v. Upjohn*, 593 F.2d 649, 651 (5th Cir. 1979) (affirming a protective order for an executive where the trial court exercised broad discretion to control the timing of discovery, while noting in general that "it is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, [and] such an order would likely be in error").

[3] On January 9, 2025, the Superior Court in the parallel JCCP proceeding granted Uber's motion to quash and for a protective order in part, directing the deferral of depositions of Uber Senior Executives, without prejudice to Plaintiffs later seeking to lift the protective order. The Court notes that the Superior Court's ruling on the matter was controlled by *Liberty Mutual Insurance Company v. Superior Court*, 10 Cal. App. 4th 1282, 1284 (1992). This decision by the First Circuit Court of Appeal concluded that "it amounts to abuse of discretion to withhold a protective order when a plaintiff seeks to depose a corporate president, or corporate officer at the apex of the corporate hierarchy, absent a reasonable indication of the officer's personal knowledge of the case and absent exhaustion of less intrusive discovery methods." *Id.* at 1287. *Liberty Mutual* requires the plaintiff to show "good cause that the official has unique or superior personal knowledge of discoverable information." *Id.* at 1288. That state law doctrine does not control here. In contrast, the Washington Supreme Court recently surveyed the application of this doctrine across a variety of jurisdictions and declined to amend discovery rules to include the apex doctrine. That court reasoned that the doctrine would conflict with the broad allowance of discovery and discovery rules already "adequately protect apex officials along with other witnesses." *Stratford v. Umpqua Bank*, 2 Wash. 3d 112, 124 (2023).

2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011)). Judge Grewal's discussion of the apex doctrine as a sliding scale of relevance and burden, where unique knowledge and alternative methods of discovery "form only part of a more nuanced equation," is more persuasive and consistent with Rule 26. *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). The Court further notes that an overemphasis on *unique* knowledge is inconsistent with otherwise common approaches to discovery and trial advocacy, where corroborating evidence and testing credibility through the testimony of more than one witness is often appropriate.

Turning to the circumstances present here, this multidistrict litigation involves nearly two thousand plaintiffs who allege they were sexually assaulted—some of them raped—by drivers hired through Uber's platform. This is not a slip and fall case where a single plaintiff seeks to depose the CEO of a grocery store chain; rather this is an aggregated litigation that "concerns important aspects of [Uber's] business model that are plainly the result of high-level executive decisions," and thus, it is more appropriate for high-level executives to be deposed. *In re Apple iPhone Antitrust Litig.*, Nos. 11-cv-06714-YGR (TSH) et al., 2021 WL 485709, at *4 (N.D. Cal. 2021). Plaintiffs allege, and have offered at least some evidence to support, that relevant decisions regarding Uber's safety policies and representations to the public were made at a very high level, including by witnesses at issue in the present Motion.

Plaintiffs' requests to depose certain senior executives within this vast corporation do not appear unreasonable. Judge Grewal recognized that in a company of global proportions there may be tens of high-level executives, reflecting a corporate mountain range with particular peaks alongside a leader at the summit. *Apple Inc.*, 282 F.R.D. at 263. Uber's highest level of corporate officers is referred to as its Executive Leadership Team (ELT). At the hearing, Uber's counsel represented that ten individuals sit on Uber's ELT, which is overseen by its CEO. The record does not detail the composition of the ELT over the relevant time period for this litigation, but it appears that Uber contests Plaintiffs' request to depose any ELT members, except for Gary Fuldner, whom Uber has made available for two days of deposition. In this dispute Plaintiffs seek to depose three current and former CEOs, and two other ELT members (Sachin Kansal and Jill Hazelbaker) in addition to Fuldner. Plaintiffs also request to depose a Senior Vice President and

3

Vice President, executives who do not sit at these peaks, but are high on the Uber's corporate slopes. Though there is a meaningful burden on Uber of having several senior leaders appear depositions, it is not disproportionate to the needs of this litigation.

Uber argues that testimony from other employees is sufficient to understand those decisions, including these "apex" witnesses' involvement in them. Among other considerations, however, the Court finds depositions of most of these witnesses to be appropriate because their personal, subjective intent may be relevant to Plaintiffs' claims for punitive damages. Counsel for Uber acknowledged at the hearing that corporate executives' subjective intent (counsel specifically noted "malice") can be relevant to punitive damages in at least some of the states whose laws govern certain member cases.[4] Defense counsel suggested that whether the executives held such an intent could be inferred from the information available to them, as demonstrated by documentary evidence and less senior employees' testimony. Perhaps so in some circumstances, but the executives' own testimony is also highly relevant to that issue, and provides a uniquely direct method to assess it. This is not to suggest that any claim for punitive damages, or even any MDL involving punitive damages, always warrants an "apex" deposition. But under the circumstances of this litigation, the unique capability of depositions to probe executives' subjective approach to relevant decisions, as may be relevant to claims for punitive damages, informs the Court's decision.

---

[4] *See, e.g.*, N.J. Rev. Stat. § 2A:15-5.12 (2024) 4.a ("Punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions."); *McNeal v. Whittaker, Clark & Daniels, Inc.*, 80 Cal. App. 5th 853, 875 (2022) (for purposes of punitive damages, examining whether "defendant's executives knew and deliberately ignored 'probable dangerous consequences'"); *Strenke v. Hogner*, 279 Wis. 2d 52, 70 (2005) (construing the Wisconsin punitive damages statute as requiring proof that a defendant acted with malice or was "aware that his or her conduct [was] substantially certain to result in the plaintiff's rights being disregarded"); *Dupree v. Giugliano*, 20 N.Y.3d 921, 924 (2012) (For an award of punitive damages there must be "aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." (citation omitted)); *Till v. Bennett*, 281 N.W.2d 276, 279 (S.D. 1979) ("[E]vidence indicating a 'wanton and reckless disregard' of plaintiff's rights is sufficient to warrant the jury instruction for exemplary damages and to support the verdict."). These citations are intended as a brief survey of general principles, and not as resolving the specific standard any particular plaintiff in this litigation must satisfy at trial.

4

As explained above, the exhaustion of other discovery sources prior to deposing an executive official is not expressly mandated by the Federal Rules of Civil Procedure, but Rule 26(c)(1) protects a party or a person from "oppression, or undue burden or expense," and "unreasonably cumulative or duplicative" discovery. Fed. R. Civ. P. 26(c), 26(b)(2)(C). Thus, the extent to which the requesting party has pursued other discovery routes is an important consideration that the Court evaluates in light of the particular circumstances in this litigation and the other principles that also apply pursuant to Rule 26. *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-cv-05634, 2014 WL 939287 (Mar. 6, 2014). The circumstances of this case favor proceeding with limited depositions of most of witnesses at issue, for reasons including that there is no evidence that the depositions are sought for harassing purposes, and Plaintiffs have gathered sufficient discovery through other means to demonstrate that the proposed deponents have relevant and superior knowledge.

The time limitations and avenues for further discovery relief ordered below are designed to address Uber's concerns and curb unreasonably duplicative discovery. Though this Order may not be tailored to perfection, it is calculated to balance the protections that Uber seeks under Rule 26, the rules' broad allowances for discovery, the proportionality requirement, and the command that our procedural rules be deployed to "secure the just, speedy, and inexpensive determination of every action and proceeding."

To the extent that Uber suggests that the Court should scrutinize on a granular, individualized basis each proposed executive or upper management witness against a series of other alternate witnesses, to determine whether other sources have been exhausted or whether testimony will be unique or superior, this approach is not suitable for the particular circumstances of this MDL given the number of depositions underway and the case schedule. The parties were unwilling to negotiate time limits for any of the nine proposed deponents that were originally the subject of this dispute. Had the parties' negotiated, the allocation of time could be further tailored to the relative importance of the witnesses' testimony, taking account of other deposition testimony. Refusing to negotiate and then litigating such disputes in bulk drives up costs for litigants and risks expending court resources, which in turn leads to delay and expenses that

outstrip the costs associated with having a set of executives testify for a very limited amount of time.

For the reasons stated herein and on the record at the March 21, 2025 hearing, and having considered the parties' briefs and evidence, and the relevant authorities, the Court ORDERS as follows.

Plaintiffs may depose each of the witnesses at issue, except for Rachel Whetstone. Plaintiffs conceded at the hearing that Whetstone's deposition may be redundant to depositions of Uber's current and former CEOs.[5] Uber's Motion is GRANTED as to Whetstone, and the parties shall meet and confer as to another appropriate witness for Plaintiffs to depose instead. As for the other executives at issue in the present Motion, the evidence Plaintiffs have submitted shows that each other witness's personal involvement in decisions at issue is sufficient to warrant at least a time-limited deposition, and the relevance of those depositions outweighs the undoubtedly meaningful burden that they impose on Uber and on the witnesses.[6]

Plaintiffs may depose current CEO Dara Khosrowshahi for no more than four hours. Plaintiffs may depose former CEO Travis Kalanick and former CEO (among other roles) Ryan Graves for no more than three hours each. If Plaintiffs would prefer to substitute any of those witnesses for a less senior employee whom Uber has suggested as an alternative, these limits would not apply to the substitute witness.

The remaining four witnesses (Chief Marketing Officer Jill Hazelbaker, Chief Product Officer Sachin Kansal, Vice President of Applied Science Frank Chang, and Head of Americas Delivery Sarfraz Maredia) are all high-ranking current officers of Uber responsible for overseeing

---

[5] At the hearing, defense counsel suggested that allowing the current and former CEOs' testimony and while precluding other witnesses' testimony reverses the considerations relevant to the apex doctrine. The Court is not allowing the CEOs' testimony *because* it obviates the need for other less senior witnesses, but instead because the evidence suggests the CEOs were personally involved in important decisions and the relevance of their testimony outweighs the burden to Uber and those individual witnesses. That their depositions render Whetstone's unnecessary does not mean that allowing Whetstone to be deposed would render the CEOs' depositions unnecessary.

[6] The Court's familiarity with the record of the case as a whole further reinforces this Order, but the evidence Plaintiffs have submitted in response to this Motion is sufficient to support this Order. In the interest of providing a timely and efficient disposition of the pending Motion, the Court declines to recite specifically the evidence supporting depositions of each witness.

6

large numbers of employees. The Court finds those witnesses' knowledge and personal involvement sufficiently relevant to warrant allowing their depositions, but recognizes that making several such senior leaders—including other witnesses Uber has agreed to produce, like Gus Fuldner—available for depositions collectively imposes a significant burden on Uber. Depositions deprive Uber of time that its executives could otherwise spend on other matters, unlike document discovery of the executives' files, which is mostly conducted by counsel. Plaintiffs may therefore depose those four witnesses for no more than a collective total of eighteen hours (excluding reasonable breaks), divided at Plaintiffs' discretion. If Plaintiffs would prefer to substitute one or more of those witnesses for a longer deposition of a less senior employee Uber whom has suggested as an alternative, the total time allowed for the remaining witnesses addressed in this paragraph shall be reduced by 4.5 hours per substitution. If Plaintiffs would prefer to omit one or two of those witness entirely, without substitution, and apply the full twenty hours to the remaining witnesses, they may do so.[7]

In setting limited time for these depositions to minimize the burden on Uber and the witnesses, the Court is cognizant that all of these witnesses are sophisticated business executives, represented by sophisticated counsel, who are presumably capable of effectively running the clock on their depositions if they wished to do so. The Court trusts they will not. Any such efforts to stall or stonewall may result in a witness being recalled for a further full day's deposition.

No later than March 28, 2025, the parties shall file a stipulated schedule for the depositions that Plaintiffs intend to take of these witnesses, or a joint letter on that subject in the unlikely event they cannot agree. That stipulation, or Uber's proposed schedule in a joint letter, will not be considered a waiver of any argument that a deposition should not go forward (or should be further limited in time) under the provisions below.

By the same deadline, the parties shall file either a joint letter or stipulation and proposed order as to whether the witnesses to be deposed or the amount of time allowed for depositions

---

[7] The Court is not aware of prior decisions applying this sort of collective time limit to apex depositions, but finds it to be an appropriate check against the overall burden that these depositions will impose on a corporate defendant. Most of the decisions the parties have cited addressed a challenge only to a single officer's deposition, where this approach would not apply.

7

should be altered in light of testimony available from transcripts recently produced from a securities case, as discussed at the March 21, 2025 hearing.

No later than three business days after the deposition of Gus Fuldner has concluded, the parties shall file either a joint letter or stipulation and proposed order as to whether Fuldner's deposition testimony warrants altering this Order in any way.

None of the above joint letters should be taken as opportunities to argue for reconsideration of this Order on any basis other than the narrow grounds addressed above.

The Court is aware that other former employee witnesses who are not represented by Uber's counsel have considered filing separate motions for protective orders. *See* Dkt. No. 2410 at 2–3. The parties are instructed to consider and negotiate whether time limits for depositions may be appropriate for any of those witnesses before seeking relief from the Court. That said, the Court is not familiar with the specific circumstances of all of those witnesses, and this Order should not be taken as prejudging that time-limited depositions would be appropriate as to any such witness.

**IT IS SO ORDERED.**

Dated: March 24, 2025

LISA J. CISNEROS
United States Magistrate Judge