PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

DIRECT DIAL: (212) 373-3000
EMAIL: ratkins@paulweiss.com

BEIJING          TOKYO
HONG KONG        TORONTO
LONDON           WASHINGTON, DC
LOS ANGELES      WILMINGTON
SAN FRANCISCO

April 1, 2025

**VIA ECF**

Hon. Charles R. Breyer
United States District Court for the Northern District of California

> RE:     *In re Uber Technologies, Inc., Passenger Sexual Assault Litig.* (MDL 3084)

Dear Judge Breyer:

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit this brief in response to the Court's question of "whether the Bellwether Cases should be tried individually or consolidated in some manner." ECF No. 1950, at 3. As explained below, the bellwether cases should proceed to trial on an individual basis. The goal of bellwether trials is to produce informative results that help the parties assess the strengths of their claims and defenses—and the value, if any, of different types of cases. By contrast, studies have shown that multi-plaintiff cases are far more likely to result in plaintiff verdicts and inflated damages awards, turning that purpose on its head. This prejudicial result is all the more likely in trials involving sexual assault, which will already be highly emotional for jurors, because consolidating cases will falsely suggest to jurors that sexual assaults are common in rides associated with the Uber platform, when they are, in fact, exceedingly rare. Frightening jurors in this manner would not yield informative verdicts. Combining cases would also obscure key factual differences among different claims, making it impossible to know how jurors would assess different cases with differing facts and evidence.[1]

## I.      MULTI-PLAINTIFF TRIALS WILL UNDERMINE THE GOALS OF THE BELLWETHER PROCESS AND SEVERELY PREJUDICE UBER.

The purpose of a bellwether trial is to give the parties clarity on how juries will assess their claims and defenses. Consolidating multiple plaintiffs into a single trial will preclude a representative result by combining cases with material factual differences and thus prejudice Uber. Consequently, the bellwether role is best served by holding trials on an individual basis.

**A.  Consolidated bellwether trials will produce uninformative results, defeating the purpose of the bellwether process.** Bellwether trials aim to perform a "value ascertainment

---

[1] Based on the Court's December 12, 2024 Order, the question at issue now is solely whether individual or multi-plaintiff trials are appropriate. Questions as to the appropriate ordering of individual plaintiff bellwethers, or how many and which cases should be selected for waves if the Court were to order multi-plaintiff trials, are to be addressed in briefing due July 3. The Court has already ruled that "for the purposes of discovery, all Bellwether Cases shall have the same deadlines." ECF No. 1950, at 3.

function for settlement purposes" by allowing the parties to assess how juries will resolve the many individual suits. *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).

This goal can be achieved only if the proceedings "reflect a representative sampling of cases which [would] provide meaningful information for the broader population of cases." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 919 (6th Cir. 2022); *see In re Chevron*, 109 F.3d at 1019 ("A bellwether trial . . . has as a core element representativeness[.]").

Because bellwether trials serve "to achieve valid tests, not to resolve large numbers of claims," such "[c]ases should generally not be consolidated for trial." Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* 25 (2d ed. 2018) (*Guidelines*). "Consolidation can tilt the playing field, undermining the goal of producing representative verdicts," by depriving the parties of clarity about "the contours of various types of claims within the litigation." *Id.* (quoting *In re Levaquin Prods. Liab. Litig.*, 2009 WL 5030772, at *3) (D. Minn. Dec. 14, 2009) (ellipsis omitted)). Consolidation is a deviation from the rule that cases in an MDL "remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over." *In re Korean Air Lines Co., Ltd., Antitrust Litig.*, 642 F.3d 685, 700 (9th Cir. 2011). And at the conclusion of pretrial proceedings, many cases will be returned to their home districts, where they will be tried individually. *See* 28 U.S.C. § 1407(a). Lumping cases together at the bellwether stage would not make a meaningful dent in the large number of MDL cases and would create the risk that "trials may not further settlement when attorneys for one side question verdict accuracy," if one party or the other thinks it will fare better in individual trials than in consolidated ones. *Guidelines*, *supra*, at 25.

The overwhelming majority of courts that have analyzed this issue in the MDL context have reached the same conclusion.[2] Judges considering requests to hold consolidated bellwether trials have written that "courts should proceed with extreme caution in consolidating claims." *In re Levaquin Prods. Liab. Litig.*, 2009 WL 5030772, at *3; *see In re Injectafer Prods. Liab. Litig.*, 2021 WL 3145729, at *1 (E.D. Pa. July 26, 2021) (explaining that separate bellwether trials are necessary to "define 'the exact factual and legal contours' of the claims and defenses . . . and [to] allow the parties to better assess the value and strength of the remaining matters." (quoting *In re Levaquin Prods. Liab. Litig.*, 2009 WL 5030772, at *3)); *Crabtree v. Livanova, PLC*, 2022 WL 19517407, at *4 (E.D. La. Mar. 30, 2022) (same). As one court noted, "[t]he joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims"; rather, "the joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims would obstruct and delay the adjudication process." *In re Diet Drugs Prods. Liability Litig.*, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999).[3]

---

[2] This Court planned to hold individual bellwether trials in *In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, No. 21-md-02996, ECF No. 539, at 2 (N.D. Cal. Apr. 28, 2023), before a settlement agreement was reached. While the Court held combined trials in *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-02672 (N.D. Cal.), it did so only because "liability [was not] contested," ECF No. 6692, at 7 (Sept. 16, 2019), and the defendants agreed that the court should set multi-plaintiff trials, *see* ECF No. 6649, at 3 (Sept. 6, 2019).

[3] *See also, e.g.*, *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14-cv-1748, ECF No. 1787 (N.D. Ill. Mar. 15, 2017) (providing sequence for individual plaintiff bellwether trials); *In re Xarelto*

Plaintiffs' request for consolidated trials would flout these principles and goals.  While Plaintiffs assert that consolidating bellwether trials "is common MDL practice," ECF No. 1934 at 8, most of their cited cases involve consolidation in non-MDL cases.  *See, e.g.*, *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987) (consolidation in bankruptcy cases); *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984) (consolidation in FOIA actions).  And the two MDL decisions they cite discussing consolidation are outliers.  In one, the court refused to consolidate all cases, "recogniz[ing] the benefit to trying some individual cases for the practical reasons Defendants point to" (reasons similar to those set out below).  *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 773018, at *2 (N.D. Fla. Jan. 5, 2021).  And in the other, *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litigation*, 2016 WL 10719395, at *1-2 (N.D. Tex. Jan. 8, 2016), the judge ordered consolidated trials after defendants prevailed in an individual trial, with the first consolidation resulting, unsurprisingly, in a gargantuan verdict that was overturned by the Fifth Circuit.[4]

**B. Uber will be highly prejudiced by multi-plaintiff trials.**  The risks that lead courts to "view any proposal for consolidated bellwether trials with skepticism" apply fully here.  *Guidelines*, *supra*, at 29.  Consolidating these matters would prejudicially undercut a key pillar of Uber's defense and efface the differing fact patterns of the cases within the MDL.

*1. Consolidating these cases would be extremely prejudicial to Uber in the context of personal injury litigation alleging liability for rare third-party assaults.*  Trying multiple cases together would create the false impression among jurors that safety incidents are a frequent occurrence for Uber app users.  "[P]eople assess the frequency of a class or the probability of an event by the ease with which instances or occurrences can be brought to mind."  Amos Tversky & Daniel Kahneman, *Judgment Under Uncertainty: Heuristics and Biases*, 185 Science 1124, 1127 (1974).  Because of this availability bias, social scientists find that combining plaintiffs into a single trial prejudices defendants and inflates plaintiff verdicts, making it impossible to know how a jury would have decided a case tried on an individual basis.  *See, e.g.*, Irwin A. Horowitz & Kenneth S. Bordens, *The Consolidation of Plaintiffs: The Effects of Number of Plaintiffs on Jurors' Liability Decisions, Damage Awards, and Cognitive Processing of Evidence*, 85 J. Applied Psychol. 909, 909, 916 (2000) ("defendant[s] [were] more likely to be judged as liable" as the number of plaintiffs increased); Matthew A. Reiber & Jill D. Weinberg, *The Complexity of Complexity: An Empirical Study of Juror Competence in Civil Cases*, 78 U. Cin. L. Rev. 929, 930 n.2, 932, 955, 962-63 (2010) (juror comprehension declines as complexity from the presence

(Rivaroxaban) Prods. Liab. Litig., No. 14-md-2592, ECF No. 3856 (E.D. La. Aug. 12, 2016) (selecting individual plaintiff bellwether cases); *In re Cook Medical, Inc.*, No. 14-ml-2570, ECF No. 2107 (S.D. Ind. July 19, 2016) (similar); *In re Propecia (Finasteride) Prods. Liab. Litig.*, No. 12-md-2331, ECF No. 295-1, at 7 (E.D.N.Y. Mar. 16, 2016) (similar); *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, No. 11-cv-5468, ECF No. 1826 (N.D. Ill. Mar. 11, 2016) (similar); *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, No. 13-md-2428, ECF No. 583, at 5 (D. Mass. Apr. 8, 2014) (similar); *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, No. 3:09-md-2087, ECF No. 1441, at 3 (S.D. Cal. June 29, 2012) (similar); *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 644 (E.D. La. 2010) (similar); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3:09-md-02100, ECF No. 1329 (S.D. Ill. Oct. 13, 2010) (similar).

[4] Subsequent verdicts were still on appeal when the litigation settled.  Plaintiffs also cite a handful of decisions noting that cases were consolidated but not analyzing the issue.  *See, e.g.*, *Campbell v. Bos. Sci. Corp.*, 882 F.3d 70, 72 (4th Cir. 2018) ("This case involves a consolidated trial of four products liability cases . . . ."); *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1310-11 (11th Cir. 2017) (similar); *Blount v. Bos. Sci. Corp.*, 2019 WL 3943872, at *1 (E.D. Cal. Aug. 21, 2019) (similar).

of multiple parties increases).  These concerns are particularly acute in a case involving  a highly emotional topic such as sexual misconduct.

    *2.  Combining trials will obscure the critical factual differences between plaintiffs' claims in this MDL and thus muddy the parties' case valuations.*  Courts must "take care that each individual . . . cause not be lost in the shadow of a towering mass litigation."  *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (quoting *In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d 831, 853 (2d Cir. 1992)).  Here, as the Court previously recognized, the incidents at issue in each case "may be different in kind and . . . in effect" and are "highly individualized."  11/3/2023 Status Conf. Tr. at 19:25-20:3.  Consolidated trials would group together different plaintiffs who suffered different alleged injuries with different facts at the hands of different drivers under different circumstances and in different times and places, and turning on the availability of different safety features within the Uber app.[5]  Such combinations create a risk not only of jury confusion but also of group verdicts that the parties cannot disentangle to confidently evaluate specific claims and defenses.

    Plaintiffs err in suggesting that they can avoid this problem by choosing whether to consolidate cases "depending on their commonalities."  ECF No. 1934, at 9.  Before any federal cases are tried, it is impossible to know how a jury would assess commonalities and differences between the wide range of inherently individualized claims in this MDL.  That is precisely why "mass torts with few prior verdicts or judgments" should be "be litigated first in smaller units even single-plaintiff, single-defendant trials until general causation, typical injuries, and levels of damages become established."  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996).  How a jury will assess similarities between different claims should be determined empirically through bellwether cases, not through the parties' pre-trial guesswork.

    *3.  Combining multiple plaintiffs will confuse issues relating to causation, another major issue to be litigated at these trials.*  Plaintiffs assert that Uber acted negligently by failing to adopt various safety measures, such as fingerprinting-based background checks and a requirement that drivers record the inside of their vehicles.  Uber will respond, *inter alia*, that those safety measures would not have prevented the assaults at issue.  A jury in a combined trial is unlikely to render split verdicts on such causation questions by, for instance, concluding that one driver's conduct would have been deterred by a recording requirement but another's would not have been.  The risk that jurors analyze inherently individualized causation questions at a group level would further erode the bellwethers' informational value.

    *4.  The subject matter of this case—sexual assault and sexual misconduct—accentuates the risk of prejudice.*  A party's alleged involvement in separate incidents of sexual misconduct is "among the most prejudicial types of information the jury could learn about [that party] in a civil suit."  *Scott v. Lawrence*, 36 F.3d 871, 874 (9th Cir. 1994).  This evidence "carries a unique stigma in our society," *Ortega v. O'Connor*, 146 F.3d 1149, 1165 (9th Cir. 1998) (internal quotation marks omitted), and is thus "very likely to inflame the passions of the jury sufficiently to distract them from the issues."  *Doe v. City of San Diego*, 2014 WL 11997809, at *4 (S.D. Cal.

---

[5] If the Court were to group together plaintiffs from different states, the confusion would be exacerbated by choice-of-law issues.  Grouping cases together could also raise *Lexecon* problems, an issue the Court reserved for later motion practice.

July 25, 2014) (internal quotation marks omitted).  For that reason, evidence of separate alleged sexual misconduct is routinely excluded from trial.  *See, e.g.*, *Tennison v. Circus Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001) (affirming exclusion of separate incidents of harassment because its introduction "would create a significant danger that the jury would base its assessment of liability on remote events involving other employees").  It is unsurprising that courts likewise refuse to consolidate claims of sexual misconduct involving separate incidents against different plaintiffs on prejudice grounds.  *E.g.*, *Denise S. v. Foreman*, 2024 WL 2002217, at *4 (C.D. Cal. Apr. 26, 2024).

In one particularly instructive case, *Fleites v. MindGeek S.A.R.L.*, 2022 WL 1314035 (C.D. Cal. Feb. 10, 2022), the court confronted a request to sever trials that featured tort claims against companies relating to sexual misconduct of non-parties.  *See id.* at *2.  As here, the plaintiffs argued that it would be convenient to try all claims together "because their claims all stem from a systemic pattern of misconduct."  *Id.* at *5.  But the court disagreed, explaining that "Defendants' alleged pattern and practice does not vitiate the Court's significant concerns about the vast factual distinctions between the individualized circumstances of Plaintiffs' claims," which "differ substantially in where the improper conduct allegedly occurred, how it occurred, and who perpetrated the conduct."  *Id.* at *4-5.  The same analysis is appropriate here.[6]

*5.  Holding multi-plaintiff trials would create artificial distinctions between this MDL and the parallel JCCP pending in California state court.*  The JCCP is holding four single-plaintiff trials.  As Judge Schulman explained, "these cases are -- like personal injury cases, generally [] individual and should be tried as such."  10/22/2024 JCCP Hr'g Tr. at 15:3-15.  Any procedural differences between the JCCP and this MDL will make it more difficult to consistently assess the strength of claims across these cases, and will thus undercut the assessment role that bellwether trials are supposed to play.

## II.    PLAINTIFFS IDENTIFY NO COUNTERVAILING EFFICIENCY GAINS.

There is little on the other side of the ledger.  Plaintiffs' main efficiency argument is that "if one or more cases resolves for any reason before trial, the parties and the Court can maintain the trial date and conserve resources."  ECF No. 1934, at 7-8.  But there are less prejudicial ways of addressing that risk, including by scheduling several bellwether trials in close proximity, as Judge Schulman has done with the JCCP.  By simultaneously preparing pools of individual bellwether cases, the parties will be able to move subsequently scheduled trials or at least ensure that any delay caused by losing a single bellwether trial is relatively minor.  And Plaintiffs' remaining arguments—that some of the liability witnesses will be similar, that they intend to present the same damages experts, and so on—do not justify the risk of prejudice to Uber, confusion of the issues by the jury, and impaired settlement valuation for the parties.  *See id.* at 7.

---

[6] It makes no difference that *Fleites* arose under Rule 20(b), while Plaintiffs here seek to join trials pursuant to Rule 42.  The question under both rules is how to "weigh the interest of judicial convenience against the potential for delay, confusion and prejudice."  *Hessefort v. Super Micro Computer, Inc.*, 317 F. Supp. 3d 1056, 1060 (N.D. Cal. 2018) (quoting *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010)); *Fleites*, 2022 WL 1314035, at *7 (similar).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                                6

III.    CONCLUSION

       The Court should hold bellwether trials on an individual basis and should not consolidate any cases for trial.

                       Sincerely,

                       PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

                       By: */s/ Robert A. Atkins*
                       Robert A. Atkins
                       Jacqueline P. Rubin
                       1285 Avenue of the Americas
                       New York, NY 10019-6064
                       (212) 373-3000
                       ratkins@paulweiss.com
                       jrubin@paulweiss.com

                       Randall S. Luskey
                       535 Mission Street, 25th Floor
                       San Francisco, CA 94105
                       (628) 432-5100
                       rluskey@paulweiss.com

                       Kyle N. Smith
                       Jessica E. Phillips
                       2001 K Street, NW
                       Washington DC, 20006
                       (202) 223-7300
                       ksmith@paulweiss.com
                       jphillip@paulweiss.com

                       O'MELVENY & MYERS LLP

                       By: */s/ Sabrina H. Strong*
                       Sabrina H. Strong
                       Jonathan Schneller
                       400 South Hope Street, 19th Floor
                       Los Angeles, CA 90071
                       (213) 430-6000
                       sstrong@omm.com
                       jschneller@omm.com