

**VIA ECF**

The Honorable Charles R. Breyer
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

        RE:    *In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation*,
                   MDL No. 3084 CRB

Your Honor:

      Plaintiffs respectfully submit this letter brief regarding whether the Bellwether Cases should be tried individually or consolidated in some manner. *See* PTO 21 (ECF 1950) at 3. The Court should consolidate the first trial in this MDL to include three or more bellwether Plaintiffs. There are numerous common questions of law and fact pervading through the bellwether pool, and consolidation would generate efficiencies for the litigation as a whole. Accordingly, the Court's wide discretion to consolidate is appropriately exercised here.

      Once the Court decides whether the first trial will be individual or consolidated, the Court should consider two modifications to the case schedule, both with the aim of ensuring timely, complete discovery in the trial case or cases, so that the bellwethers will be "meaningful." 3/28/25 H'rg Tr. at 26:3. Plaintiffs raised modifying the schedule with Uber's counsel, who proposed discussing the issue at the April 18 CMC.

      *First*, the Court should consider advancing the deadline for the parties to brief which case(s) should be tried in the first wave (currently July 1), and staging all subsequent discovery deadlines to prioritize the initial trial case(s). The parties and the Court will only benefit from knowing the identity of the cases earlier and ensuring timely completion of discovery in those cases.

      *Second*, whatever the Court decides on the discovery schedule as a whole, once the Court identifies the candidate or candidates for the first trial, the Court should stage completion of discovery (including expert discovery) and dispositive motions to reflect trial dates. That will permit the parties and the Court to complete the work required efficiently, without delaying the overall schedule at all.

**I.    The Court should order that the first trial in this MDL by consolidated to include three or more bellwether Plaintiffs.**

      As this Court has explained: "courts' managerial power is especially strong and flexible in matters of consolidation." PTO 15 (ECF 543) at 21 (internal quotation marks omitted). Where "actions before the court involve a common question of law or fact, the court may … join for

April 1, 2025
Page 2

hearing or trial any or all matters at issue in the actions." Fed. R. Civ. P. 42(a)(1). Consolidation "is within the broad discretion of the district court." *Schlaegel v. Palo Alto Networks Inc.*, 2024 WL 3747410, at *2 (N.D. Cal. Aug. 9, 2024) (quoting *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987)). In "determining whether consolidation is appropriate, a court should weigh the interest of judicial convenience against the potential for delay, confusion, and prejudice." *Schlaegel*, 2024 WL 3747410, at *2 (internal quotation marks omitted).

    A.    **There are common questions of law and fact.**

Here, all cases share common questions of fact, including "Uber's knowledge about the prevalence of sexual assault by Uber drivers, and whether Uber failed to conduct adequate background checks of its drivers, train drivers regarding sexual assault and harassment, implement adequate safety measures to protect passengers from sexual assault, and adequately respond to complaints about drivers." *Uber Techs., Inc. v. United States J.P.M.L.*, -- F. 4th --, 2025 WL 748135, at *4 (9th Cir. Mar. 10, 2025). Each trial will feature overlapping testimony and documents regarding those issues. There will also be overlap in damages evidence, with the same experts opining on the nature of sexual assault and its short and long-term effects.

For many bellwethers, the legal and factual overlap is even more acute. Each of the alleged assaults occurred between 2019 and 2024, and 15 of the 19 occurred in 2021-2023. In addition, there are multiple bellwethers from five states (Arizona, California, Georgia, North Carolina, and Texas).

**Table 1: Year and State of Assault**

| NAME | CASE NO. | YEAR | STATE |
| --- | --- | --- | --- |
| LCHB128 | 24-7019 | 2024 | AZ |
| Jaylynn Dean | 23-6708 | 2023 | AZ |
| B.L. | 24-7940 | 2022 | CA |
| A.R. | 24-7821 | 2023 | CA |
| T.L. | 24-9217 | 2023 | GA |
| WHB 407 | 24-5028 | 2021 | GA |
| Amanda Lazio [S.D. Iowa] | 24-8937 | 2022 | IA |
| WHB 1876 | 24-5230 | 2019 | IL |
| D.J. [S.D. Miss.] | 24-7228 | 2022 | IN |
| WHB 1898 | 24-5027 | 2022 | MA |
| C.L. | 23-4972 | 2023 | MD/VA |
| J.E. | 24-3335 | 2022 | MI |
| WHB 318 | 24-4889 | 2021 | NC |
| WHB 832 | 24-4900 | 2019 | NC |
| A.G. | 24-1915 | 2023 | OR |
| A.R.2 | 24-1827 | 2023 | PA |
| Jane Doe QLF 001 | 24-8783 | 2020 | TX |
| K.E. [W.D. Tex.] | 24-5281 | 2024 | TX |
| JaneRoeCL68 [W.D. Tex.] | 24-6669 | 2022 | TX |
| WHB 1486 | 24-4803 | 2021 | TX |

April 1, 2025
Page 3

Plaintiffs' negligence claims involve common questions of fact. In most or all bellwethers, Plaintiffs will assert that Uber was negligent for not requiring cameras in the vehicles. Those claims will involve in every case similar, or even identical, fact questions about what Uber did, failed to do, or could have done. The same is true of Plaintiffs' claims, present for many bellwethers, that Uber was negligent in not screening its drivers adequately. Those factual issues will, in turn, be decided against the familiar standards of duty, breach, causation, and damages, largely consistent between states (and, as between cases arising in the same state, identical).

There is substantial overlap in vicarious liability theories too. Certain vicarious liability issues—such as whether Uber drivers are employees in Arizona, or whether Uber operates as a common carrier in Georgia—will arise in multiple cases:

Table 2: Vicarious Liability Theories

| NAME | STATE | COMMON CARRIER | RESPONDEAT SUPERIOR | RATIFICATION |
|---|---|---|---|---|
| LCHB128 | AZ |  | X |  |
| Jaylynn Dean | AZ |  | X |  |
| B.L. | CA | X | X |  |
| A.R.2 | CA | X | X | X |
| T.L. | GA | X |  |  |
| WHB 407 | GA | X |  |  |
| Amanda Lazio [S.D. Iowa] | IA |  |  |  |
| WHB 1876 | IL |  |  |  |
| D.J. [S.D. Miss.] | IN |  |  |  |
| WHB 1898 | MA | X |  | X |
| C.L. | MD/VA | X | X | X |
| J.E. | MI |  |  |  |
| WHB 318 | NC | X |  |  |
| WHB 832 | NC | X |  |  |
| A.G. | OR |  | X |  |
| A.R.2 | PA |  |  |  |
| Jane Doe QLF 001 | TX |  |  |  |
| K.E. [W.D. Tex.] | TX |  |  |  |
| JaneRoeCL68 [W.D. Tex.] | TX |  |  |  |
| WHB 1486 | TX |  |  |  |

Those claims will also present common issues across different states. For example, Plaintiffs plead common carrier claims in Maryland, Georgia, California, North Carolina, and Massachusetts. The definition of common carrier is largely consistent between states. *See, e.g.*, Md. Pub. Util Code 1-101(e)(1) & (2)(viii) ("'Common carrier' means a person … engaged in the public transportation of persons for hire" and includes "a transportation network company"); *Saltis v. A.B.B. Daimler Benz*, 533 S.E.2d 772, 775 (Ga. App. 2000) ("A carrier of passengers is

April 1, 2025
Page 4

one that undertakes the transportation of persons; a person or corporation who undertakes to transport or convey persons from one place to another, gratuitously or for hire."); Cal. Civ. Code § 2168 ("Every one who offers to the public to carry persons, property, or messages, excepting only telegraphic messages, is a common carrier of whatever he thus offers to carry."), *Jackson v. Sancil*, 116 S.E.2d 817, 824 (N.C. 1960) ("A common carrier is one who holds himself out to the public as engaged in the public business of transporting persons for compensation from place to place…"); *Murray v. Uber Techs, Inc.*, 486 F. Supp. 3d 468, 476 (D. Mass. 2020) (A "common carrier … holds itself out as furnishing transportation to any and all members of the public who desire such service ….") (internal quotation marks and alterations omitted).

The same is true of respondeat superior claims as between California, Arizona, and Oregon. In each state, whether agents are employees is determined by "whether the employer reserves the right to supervise or control the method of performing the contracted service or whether the employer's control is limited to the result, leaving the method to the other party." *Simon v. Safeway, Inc.*, 173 P.3d 1031, 1036 (Ariz. App. 2007); *see also Viado v. Domino's Pizza, LLC*, 217 P.3d 199, 202 (Ore. App. 2009) ("An agent is an employee if the principal has the right to control the physical details of the work being performed by the agent; in other words, the principal directs not only the end result, but also controls how the employee performs the work."); *Carranza v. Premier Anesthesia Med. Grp.*, 2022 WL 873617, at *5 (Cal. App. Mar. 24, 2022) ("The principal test of an employment relationship is whether the person to whom the service is rendered has the right to control the manner and means of accomplishing the desired result.").[1]

Finally, Plaintiffs' strict products liability claims have significant legal and factual overlap. The Court held that Plaintiffs must plead specific product defects, and Plaintiffs have now done so in amended complaints. Across the 19 amended bellwether complaints, Plaintiffs plead one or more of five defects: Safe Ride Matching (9 cases),[2] Gender Matching (15 cases), App-Based Ride Recording (19 cases), GPS Route Deviation (5 cases), and Age-Gating (1 case). Cases alleging identical defects will necessarily raise common fact questions.

---

[1] Proposition 22, Cal. Bus. & Prof. Code § 7451, which designates Uber drivers as "independent contractor[s] … with respect to the app-based driver's relationship with a network company," is not pertinent to Uber's tort liability. Proposition 22 superseded California's statutory employment test that applied to driver wages, benefits, and workers' compensation. *See id.* § 7449 ("[R]ecent legislation has threatened to take away the flexible work opportunities of hundreds of thousands of Californians, potentially forcing them into set shifts and mandatory hours, taking away their ability to make their own decisions about the jobs they take and the hours they work."). But California applies a different test for common law tort liability, *see Dynamex Ops. W. v. Sup. Ct.*, 416 P.3d 1, 17 (Cal. 2018), and nothing in Prop. 22 reflects voter intent to modify that test. *See People v. Valencia*, 397 P.3d 936, 949 (Cal. 2017) ("We cannot presume that the voters intended the initiative to effect a change in law that was not expressed or strongly implied in either the text of the initiative or the analyses and arguments in the official ballot pamphlet.") (citation and alterations omitted); *see also* Cal. Sec. of State, Official Voter Information Guide, Cal. Gen. Elec., Nov. 3, 2020, at 56-59 (saying nothing about tort liability), *available at* https://vig.cdn.sos.ca.gov/2020/general/pdf/complete-vig.pdf.

[2] Plaintiff's "Safe Ride Matching" claims also include failure to warn claims.

April 1, 2025
Page 5

**Table 3: Product Defects**[3]

| NAME | STATE | SAFE | GENDER | RECORDING | GPS |
|---|---|---|---|---|---|
| LCHB128 | AZ | X | X | X | |
| Jaylynn Dean | AZ | X | X | X | X |
| B.L. | CA | X | X | X | X |
| A.R. | CA | X | X | X | X |
| T.L. | GA | X | X | X | X |
| WHB 407 | GA | | X | X | |
| Amanda Lazio [S.D. Iowa] | IA | | | X | |
| WHB 1876 | IL | X | | X | |
| D.J. [S.D. Miss.] | IN | | X | X | |
| WHB 1898 | MA | X | X | X | |
| C.L. | MD/VA | | X | X | |
| J.E. | MI | | X | X | |
| WHB 318 | NC | | X | X | |
| WHB 832 | NC | | | X | |
| A.G. | OR | | | X | |
| A.R.2 | PA | X | X | X | |
| Jane Doe QLF 001 | TX | X | X | X | |
| K.E. [W.D. Tex.] | TX | | X | X | X |
| JaneRoeCL68 [W.D. Tex.] | TX | | | | |
| WHB 1486 | TX | | X | X | |

The legal issues relating to strict products liability are largely the same between states. The threshold question in every case—whether the Uber App is a product—can and should be answered affirmatively across all states.[4] Resolving the remaining product liability questions, that is, whether Uber's product is defective, does not involve significant variation from case to case. The bellwether states follow either the Restatement (Second) § 402A approach or the Restatement (Third) of Torts: Products Liability approach (or its state law equivalent). Most states follow either the consumer expectations test endorsed by the Second Restatement,[5] the

---

[3] Not including the age-gating defect pleaded only by Plaintiff A.R.

[4] There are 11 bellwethers from Arizona, California, Illinois, Pennsylvania, Texas, and Virginia—states for which the Court has already resolved the issue on a common basis. ECF 1044 at 42-43; ECF 1932 at 3, 5. The remaining states, similar to those the Court has already considered, follow either the Third Restatement Third approach or the more traditional public policy approach, both of which are consistent with the Court's prior ruling. *See* ECF 1044 at 43 n.16.

[5] **Indiana**: *Kaiser v. Johnson & Johnson*, 2018 WL 739871, at *3 (N.D. Ind. Feb. 7, 2018). **Oregon**: *Chong v. STL Int'l, Inc.*, 152 F.Supp.3d 1305, 1317 (D. Or. 2016). For claims proceeding under the laws of these states, plaintiffs must prove that "the product was defective and dangerous to an extent beyond that which the ordinary consumer would have expected." *Chong*, 152 F.Supp.3d at 1317; *see also Gresser v. Dow Chem. Co., Inc.*, 989 N.E.2d 339, 344 (Ind. App. 2013).

April 1, 2025
Page 6

risk-utility test endorsed by the Third Restatement,[6] or both.[7] Plaintiffs plead facts consistent with both theories and anticipate introducing evidence and argument consistent with both theories at trial in each case.

A few states have, as a formal matter, rejected strict products liability, but each recognizes products liability claims based on negligent design or implied warranty theories that are functionally equivalent to strict products liability claims under the Third Restatement.[8] Just like states that use the Third Restatement risk-utility test for strict products liability claims, the determinative issue for negligent design and implied warranty claims in these four states centers on the availability of a reasonable alternative design.[9] Product liability claims from these states could be tried along with those from any of the eight other states that use the risk-utility test.

### B. Consolidation will advance efficient resolution of this MDL without causing delay, confusion, or prejudice.

A "joint trial is appropriate where there is clearly substantial overlap in the issues, facts, evidence, and witnesses required." *Allstate Ins. Co. v. Vizcay*, 826 F.3d 1326, 1333 (11th Cir. 2016)); Manual for Complex Litigation (MCL), Fourth § 11.631 ("Whether consolidation is permissible or desirable depends largely on the amount of common evidence among the cases.").

Here, consolidation has obvious benefits. It will eliminate the need to put on the same Uber witnesses and evidence multiple times rather than once, as well has having the same

---

[6] **Iowa**: *Wright v. Brooke Grp.*, 652 N.W.2d 159, 168–69 (Iowa 2002). **Georgia**: *Maynard v. Snapchat, Inc.*, 870 S.E.2d 739, 745 (Ga. 2022). **Texas**: *Smith v. Aqua Flow*, 23 S.W.3d 473, 476–77 (Tex. App. 2000). For claims proceeding under the laws of these states, plaintiffs must show "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design… and the omission of the alternative design renders the product not reasonably safe." *Wright*, 652 N.W.2d at 169 (quotations omitted); *see also Maynard*, 870 S.E.2d at 745; *Smith*, 23 S.W.3d at 477 (Tex. App. 2000).

[7] **Arizona**: *Long v. TRW Vehicle Safety Systs., Inc.*, 796 F.Supp.2d 1005, 1009-10 (D. Ariz. 2011). **California**: *Trejo v. Johnson*, 13 Cal.App.5th 110, 142–43 (2017). **Illinois**: *Hakim v. Safariland, LLC*, 410 F.Supp.3d 862, 869 (N.D. Ill. 2019). **Maryland**: *Parker v. Allentown, Inc.*, 891 F.Supp.2d 773, 791 (D. Md. 2012). **Pennsylvania**: *Wright v. Ryobi Techs., Inc.*, 175 F.Supp.3d 439, 450 (E.D. Pa. 2016). Plaintiff C.L.'s Uber ride began in Maryland—which uses either the consumer expectations or risk utility test—and ended in Virginia—which uses the risk utility test.

[8] **Massachusetts**: *Back v. Wickes Corp.*, 378 N.E.2d 964, 968-69 (Mass. 1978); *Taupier v. Davol, Inc.*, 490 F. Suppp.3d 430, 445 (D. Mass. 2020). **Michigan**: *Johnson v. Chrysler Corp.*, 254 N.W.2d 569, 571 (Mich. App. 1977). **North Carolina**: *Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 985-86 (E.D.N.C. 2015). **Virginia**: *Evans v. Nacco Materials Handling Grp., Inc.*, 810 S.E.2d 462, 469 (Va. 2018).

[9] *See Ducat v. Ethicon, Inc.*, 534 F.Supp.3d 152, 157 (D. Mass. 2021) (stating Massachusetts "adopted a risk-utility approach to defective product claims, which is set out in the Third Restatement of Torts"); *Gregory v. Cincinnati Inc.*, 538 N.W.2d 325, 329 (Mich. 1995) (requiring plaintiffs to show "whether a risk-utility analysis favored an available safer alternative"); *Teague v. Johnson & Johnson, Inc.*, 578 F.Supp.3d 743, 747 (E.D.N.C. 2022) (requiring proof that "manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design'" or that design "was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design"); *Evans*, 810 S.E.2d at 471 (stating plaintiff must "show that an alternative design is safer overall than the design used by the manufacturer").

April 1, 2025
Page 7

experts testify multiple times with nearly identical testimony. *See Atwood v. UC Health*, 2019 WL 6877643, at *5 (S.D. Ohio Dec. 17, 2019) (re-affirming decision to consolidate where each side's experts testified to all of the consolidated cases). It will provide the parties and the Court more information about the value of claims against Uber. It will reduce the salience of arguments about which case is more "representative" than another, because the Court can set more cases for trial faster. *See* 11/3/23 H'rg Tr. at 20:25-21:1 ("I don't want to spend a lot of time thinking about the perfect bellwether …."). And it will protect the process against risk that a Plaintiff does not proceed.

This is why consolidation is a common feature of MDLs and other similar coordinated proceedings. *See In re E. I. Du Pont De Nemours & Co. C-8 Pers. Inj. Litig.*, 2019 WL 2088768, at *16 (S.D. Ohio May 13, 2019) ("[C]onsolidating cases for trial is a regular practice in MDL litigation.") (citing many cases); ECF 1934-3 (setting joint trial of three plaintiffs in Lyft JCCP); ECF 1934-4—1934-6 (same); 9A Fed. Prac. & Proc. § 2384 (3d ed.) (collecting cases and noting that consolidation is "frequently" ordered in MDLs and cases involving "a common product"). *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 2016 WL 10719395, at *1-2 (N.D. Tex. Jan. 8, 2016) (consolidating for trial five of ten cases initially selected as bellwether cases); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 773018, at *2 (N.D. Fla. Jan. 5, 2021) (consolidating three of five cases for trial); *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 22010 WL 797273, at *3 (M.D. Ga. Mar. 3, 2010) ("Consolidation appears to be a particularly appropriate tool that should be seriously considered in modern-day multidistrict litigation.").

And Uber can show no prejudice. Clear jury instructions will ensure that the jury evaluates each case on its own merits and against its own evidence. *See Campbell v. Boston Sci Corp.*, 882 F.3d 70, 75 (4th Cir. 2018) (affirming judgments in consolidated MDL trial).[10] The company will argue that each sexual assault is unique—as it did in opposing the formation of the MDL in the first place. But, as a general matter, no one disputes that sexual assaults happen in Uber vehicles, and that those assaults are horrific. The disputed issues here, and the common core of Plaintiffs' cases-in-chief, go to Uber's policies and practices. That common core is unaffected by additional need to present case-specific issues. *See Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581, at *3 (N.D. Cal. Nov. 8, 2019) ("That the complaints differ slightly does not impede consolidation."). To the extent there is variation between the cases (such as severity of incident, or previous complaints about the driver to Uber), the verdict will only yield more information. *See* J. Eldon E. Fallon, *Bellwether Trials in Multidistrict Litigation*, 82 Tulane Law Review 2323, 2332 (2008) ("The ultimate purpose of holding bellwether trials in those settings was not to resolve the thousands of related cases pending in either MDL in one

---

[10] *See id.* at 74-75 ("At the outset of trial, the district court instructed the jury that the trial concerned four separate claims and informed them that they must treat each as 'as if each have been tried by itself.' During the trial, BSC had the opportunity to address each plaintiff's claims independently, and in fact pursued a comparative negligence defense as to one plaintiff that it did not pursue as to the other plaintiffs. Following trial and prior to jury deliberations, the district court emphasized that the jurors were not to 'even consider that more than one claim was brought' in weighing the evidence and that they must consider each case separately. To promote independent review of each case, the district court made use of special interrogatories on separate verdict forms for each plaintiff.") (record citations omitted).

April 1, 2025
Page 8

'representative' proceeding, but instead to provide meaningful information and experience to everyone involved in the litigations."); Edward F. Sherman, *Segmenting Aggregate Litigation: Initiatives and Impediments for Reshaping the Trial Process*, 25 Rev. Litig. 691, 697 (2006) ("[E]ven without preclusive effect, [bellwether trials] offer an accurate picture of how different juries would view different cases across the spectrum of weak and strong cases that are aggregated.").

**II.     The Court should consider two modifications to the case schedule.**

**A.     The Court should consider advancing the deadline to make initial trial pick or picks and prioritizing case-specific discovery for that case or cases.**

Once the Court has decided how many cases will be a part of the first trial, the Court should consider advancing the deadline—currently set for July 1—for the parties to argue for the initial selection(s)—and allow the parties to meet the June 16 substantial completion deadline for those cases only. That will allow the parties to prioritize the remaining short discovery period to focus on the case or cases set for the first trial. This will also save the Court and Judge Cisneros resources, because it will limit the large number of discovery disputes foreseeable from simultaneously substantially completing discovery in 20 bellwether cases.

Previously, the July 1 deadline made sense because Uber planned on filing transfer motions on June 2. *See* ECF 1956 at 5; 12/19/24 H'rg Tr. at 8:23-9:8. But now, the Court has made clear that venue has less importance than the parties placed on it. The Court has permitted non-N.D. Cal. cases to participate in the bellwether pool. *See* 2/28/25 H'rg Tr. at 14:15-15:2. And the Court has made clear that it will travel to oversee bellwether trials regardless of the outcome of transfer motions. *See id.* at 10:6-11:14. And the pool includes two California-incident cases, so even if there are delays due to the need to try a case in a different venue, it is undisputed the Court can try either or both of those cases here in December.

To the extent Uber's transfer motions carry lingering relevance, the Court could order Uber to give notice soon of which cases in which Uber intends to seek transfer. For example, the Court could order Uber to provide that notice on April 14, and the parties to file their trial-selection briefs on May 15. The parties will have made significant progress on written discovery by then, so each side should have sufficient information to make and advocate for their trial picks.

The parties have had some discussions about these issues, discussions that may be more fruitful after the Court decides the consolidation issue. Uber proposed to Plaintiffs that they discuss these issues at the April 18 CMC.

> **B. Regardless of the date for selecting initial trial candidates, the Court should stage completion of discovery and dispositive motion briefing to reflect trial waves.**

In PTO 21, the Court ordered that fact discovery be substantially complete by June 16, and all discovery, including expert work, close on September 22, 2025. Dispositive and *Daubert* motions are due on October 8.

Whatever the Court decides on consolidation, the Court should stage the latter two deadlines—completion of discovery and dispositive motions—to prioritize the case or cases selected for the first trial. Then, the Court can stagger those dates for subsequent cases as trial dates are assigned. (For example, if the second trial is in March 2026, then expert reports would be due in November, discovery close in December, and dispositive motions be due January.)

There are three good reasons to do this. First, the Court set an aggressive schedule, one that the Court has made clear it expects the parties to meet. That will not be easy, especially considering that Uber has still not completed discovery ordered completed long ago. *See* ECF 2545 (March 2025 order concerning policies that were ordered produced by January 10); ECF 2647 at 2 (March 2025 order concerning safety data that were ordered produced in a July 2024 order). Staging completion of discovery (including expert discovery) will make that goal much easier to achieve. The parties will have three months to clean up any lagging discovery in the trial case(s) between the June substantial completion deadline and September final completion date.

Second, long delays between the expert discovery and trial typically require updating of expert reports (especially treaters, independent medical examiners, and damages experts) and supplemental expert depositions. Staggering expert discovery to reflect trial dates will save the parties resources, both on the front end (in not completing expert work that may become stale), and the back, by eliminating or at least minimizing the need for supplementation. It will also save the Court (or Judge Cisneros) from hearing disputes about expert discovery that may be moot if expert opinion is rendered outdated.

And third, staggering discovery in this manner will have zero effect on the overall schedule. Cases will complete wrap-up fact discovery and expert work on a schedule dictated by their trial dates.

Respectfully,

*Sarah R. London*

## FILER'S ATTESTATION

I, Andrew R. Kaufman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that each of the signatories identified above has concurred in this filing.

Dated: April 1, 2025

By: */s/ Andrew R. Kaufman*