# FILED UNDER SEAL

## JANE DOE QLF 0001 AMENDED BELLWETHER COMPLAINT

M. Kevin Queenan (TX SBN 16427150)
Carlos Lopez (TX SBN 24083414)
**QUEENAN LAW FIRM, P.C.**
731 Station Drive
Arlington, Texas 76015
Phone: (817) 635-3333
Facsimile: (817) 635-4444
E-mail: service@queenanlaw.com
E-mail: carlos@queenanlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jane Doe QLF 0001 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-08387-CRB | Case 3:23-md-03084-CRB<br><br>MDL No. 3084<br><br>Honorable Charles R. Breyer<br><br>JURY TRIAL DEMANDED<br><br>**FILED UNDER SEAL** |

**AMENDED BELLWETHER COMPLAINT AND DEMAND FOR JURY TRIAL**

Under PTO 21 (ECF 1950), Plaintiff files this Amended Bellwether Complaint against the Defendants named below. Plaintiff incorporates the allegations set out in the Master Long-Form Complaint filed at ECF 269 in *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, No. 23-md-3084 (N.D. Cal.).

**I.     DESIGNATED FORUM[1]**

1. Identify the Federal District Court in which the Plaintiff would have filed in the absence of direct filing: Northern District of California.

**II.    IDENTIFICATION OF PARTIES**

   **A.    PLAINTIFF**

2. *Injured Plaintiff:* Name of the individual sexually assaulted, battered, harassed, and/or otherwise attacked by an Uber driver with whom they were paired while using the Uber platform: Jane Doe QLF 0001

3. At the time of the filing of this Amended Bellwether Complaint, Plaintiff resides at: Fort Worth, Tarrant County, Texas

   **B.    DEFENDANT(S)**

4. Plaintiff names the following Defendants in this action.

   ☒ UBER TECHNOLOGIES, INC.;[2]

   ☒ RASIER, LLC;[3]

   ☒ RASIER-CA, LLC.[4]

   **C.    RIDE INFORMATION**

5. Plaintiff was sexually assaulted, harassed, battered, and/or otherwise attacked by an Uber driver in connection with an Uber ride that began in Tarrant County, Texas on June 9, 2020.

6. Plaintiff was not the owner of the Uber account used to request the relevant ride.

7. Plaintiff needed a ride home to Cresson, Texas, about 40 minutes away from her location, from a bar in Arlington, Texas.

8. A local venue owner called an Uber for Plaintiff.

9. The driver's name was Victor Huynh Le.

---

[1] *See* PTO No. 6, at II(C) (ECF 177).
[2] Delaware corporation with a principal place of business in California.
[3] Delaware corporation with a principal place of business in California.
[4] Delaware corporation with a principal place of business in California.

10. Although the driver initially made light conversation, the tone soon shifted.

11. While Mr. Le was driving at freeway speeds, he told Plaintiff that, if she did not get into the front passenger seat of the car, he would not take her to her destination, would cancel the ride, and would abandon her on the side of the road.

12. Fearing the consequences threatened, Plaintiff climbed into the front passenger seat, risking her life as he drove at high speed.

13. While the Plaintiff was trapped in the front passenger seat, Mr. Le touched her legs.

14. He then took her hand and placed it on his genitals over his pants.

15. He then unzipped his pants and insisted Plaintiff insert his penis into her mouth and engage in oral sex with him. He pushed her head down toward his genitals.

16. Paralyzed by fear, Plaintiff complied with Mr. Le's command.

17. Mr. Le was a relatively new driver, having started driving for Uber on January 12, 2020.

18. Before Mr. Le became an Uber driver, he had a record of pretending to be an Uber driver in order to sexually assault at least one other woman.

19. On or about May 16, 2017, Mr. Le was cited with assault in the City of Fort Worth, Tarrant County, Texas. In June 2017, a criminal complaint was filed against Mr. Le in the Municipal Court for the City of Fort Worth, Texas, alleging that he had sexually assaulted a woman by touching her breasts.

20. Mr. Le had accomplished this 2017 sexual assault by pretending to be an Uber driver, so that his intended victim would get into his car. The victim of the 2017 sexual assault reported the assault to Uber, and sent Uber a photograph of Mr. Le, as well as his name.

21. Even though Uber receives regular reports of drivers posing as Uber drivers in order to assault Uber passengers, Uber does not keep track of these reports or act on them in any way. Instead, it classifies them as "invalid" since they do not arise out of a revenue-generating transaction.

==22.== On January 12, 2020, following the 2017 report of sexual assault, Mr. Le applied to be an Uber driver. He applied at 5:54 p.m. Uber finished its background check and made him an active driver that same day at 7:55 p.m., only two hours later.

==23.== One month later, on February 13, 2020, Uber received a report from an account holder about Mr. Le. The account holder reported that he had called an Uber for a female friend of his. When she got home, she called the account holder and told him that the driver had offered to come into her home to give her a massage. Uber interviewed Mr. Le who denied the interaction. Uber reactivated Mr. Le's account, describing the incident as "resolved sexual misconduct resulting in 2 notations."

24. The conduct described in the Master Long-Form Complaint and herein was a substantial factor in causing Plaintiff to suffer economic and non-economic harm.

## III. CAUSES OF ACTION ASSERTED

25. The following Causes of Action asserted in the Master Long-Form Complaint, including all allegations in support, are adopted in this Amended Bellwether Complaint by reference:

| Check if Applicable | Cause of Action Number | Cause of Action |
|---|---|---|
| ☑ | I | CLAIM B - NEGLIGENCE (excluding entrustment theory) |
| ☐ | II | CLAIM C - FRAUD AND MISREPRESENTATION |
| ☐ | III | CLAIM E - COMMON CARRIER'S NON-DELEGABLE DUTY TO PROVIDE SAFE TRANSPORTATION |
| ☐ | VI | CLAIM G.1 - VICARIOUS LIABILITY– EMPLOYEE |
| ☐ | VI | CLAIM G.2 - VICARIOUS LIABILITY– APPARENT AGENCY |
| ☐ | VII | CLAIM G.3 - VICARIOUS LIABILITY–RATIFICATION |
| ☑ | VIII | CLAIM H - STRICT PRODUCTS LIABILITY – DESIGN DEFECT |
| ☐ | IX | CLAIM H - STRICT PRODUCTS LIABILITY – FAILURE TO WARN |
| ☐ | X | CLAIM H - STRICT PRODUCTS LIABILITY – PRODUCTS LIABILITY ACTS |

## IV. ADDITIONAL ALLEGATIONS IN SUPPORT OF PRODUCTS LIABILITY CLAIMS

==26.== **Safe Ride Matching.** ==Uber had the capability to, and did,== [REDACTED]

███████████████████████████████████
███████████████████████████████████
████████████████

27. At all relevant times, the Uber App automatically collected data on ███
███████████████████████████████████
██████████████████ Uber had the capability to use data on ███
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████

28. Uber could have, but did not, ████████████████████
███████████████████████████████████
███████████████████████████████████
████████████████

29. ██████████████████████████████ known to Uber (notwithstanding that the ride was ordered by a third party) included but were not limited to:
███████████████████████████████████
███████████████████████████████████
████████████████

30. Had Uber ███████████████████████████
███████████████████████████████████
███████████████████████████████████
████████████████████████ Plaintiff would not have been sexually assaulted.

31. Had Uber designed the App to avoid high-risk matches, then the driver would not have been assigned to the ride called for Plaintiff, and Plaintiff would not have been sexually assaulted.

32. **Gender Matching**. The Uber App was in a defective condition unreasonably dangerous to users or consumers, including Plaintiff, because the Uber app was designed with an algorithm that matched female passengers with male drivers and had no modification to allow female passengers the option to be matched only with female drivers.

33. Uber tracks the rates of sexual misconduct and assault committed by its drivers against its passengers and collects data on the gender of the driver and passenger involved in those incidents. At all relevant times, ==Uber was aware that the risk of sexual misconduct or assault is greater during Uber rides in which the driver is male and the passenger is female, like the ride between the driver and Plaintiff.== The risk of sexual assault associated with such pairings, while known to Uber based on its internal data collection and analysis, was beyond that contemplated by the ordinary user or consumer.

34. Uber could have, but did not, modify its matching algorithm on the backend to give female passengers the option to select female drivers. Such a modification is feasible because Uber has made such modifications in markets outside of the United States, such as Saudi Arabia. Uber has not modified the code of the matching algorithm on the backend for the version of the Uber App available in the United States market to allow for female Uber passengers, including Plaintiff, to choose gender-matched rides.

35. Uber knew that a gender-matching option would have prevented assaults like the one suffered by Plaintiff.

36. Had a gender-matching functionality been available, the venue owner who ordered the ride for Plaintiff late at night would have toggled it on for the ride in question.

37. Use of the gender-matching option would have prevented Plaintiff's assault by her male driver because Plaintiff never would have been in the car with this driver had a gender matching functionality been toggled on and would, instead, have been paired with an entirely different person.

38. **App-Based Ride Recording**. The Uber App was defective in its design because it could have been, but was not, designed to trigger automatic video recording of rides and the time

1  period immediately around them, whether through using the camera already installed on a
2  driver's cell phone during Uber trips, or through an external device linked to the App.

3      39.     The presence of cameras serves a deterrent function that significantly reduces and
4  prevents sexual assault and misconduct. Even the potential for a ride to be recorded serves a
5  deterrent function that significantly reduces and prevents sexual assault and misconduct.

6      40.     Uber is aware that the presence of cameras serves as a deterrent function that can
7  and does significantly reduce sexual assault and sexual misconduct and, to that end, has explored
8  the use of recording functionalities for the Uber App. But even these recording functionalities are
9  inadequately designed to address sexual assault or sexual misconduct committed by drivers
10 against passengers.

11     41.     For example, Uber developers modified the code of the Uber App on the back end
12 to allow in-app video recording by the driver. That is, when toggled on by the driver, this
13 functionality allowed drivers to record internal footage of Uber trips using their phone's camera
14 as a dash camera.

15     42.     In addition to making the feature optional, rather than automatic, Uber coded its
16 in-app video recording functionality so that all recordings are encrypted in the Uber App and
17 locally stored on a driver's cell phone, meaning that recordings cannot be obtained by Uber, law
18 enforcement, or any third party without the express authorization of the driver.

19     43.     The result is that in-app video recording does not have any deterrent effect on
20 sexual assault or sexual misconduct by drivers against passengers because drivers exercise
21 absolute control over whether recording happens, and because drivers know that, even if the
22 technology is on, third parties cannot access the recordings.

23     44.     In any event, whatever the utility of Uber's driver-controlled video monitoring,
24 even that feature was not available when Plaintiff was assaulted.

25     45.     Had the Uber App included automatic video monitoring of rides, by definition that
26 feature would have been engaged on Plaintiff's ride.

27     46.     Automatic video monitoring would have deterred the driver from assaulting
28 Plaintiff.

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendants for economic and non-economic compensatory and punitive and exemplary damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. At this time, Plaintiff does not seek injunctive relief, but reserves all rights to later seek such relief as appropriate under Fed. R. Civ. P. 15(b)(2) and Fed. R. Civ. P. 54(c).

## JURY DEMAND

Plaintiff demands a trial by jury as to all claims in this action.

Dated: March 14, 2025

/s/ *M. Kevin Queenan*
M. Kevin Queenan (TX SBN 16427150)
Carlos Lopez (TX SBN 24083414)
**QUEENAN LAW FIRM, P.C.**
731 Station Drive
Arlington, Texas 76015
Phone: (817) 635-3333
Facsimile: (817) 635-4444
E-mail: service@queenanlaw.com
E-mail: carlos@queenanlaw.com

*Attorneys for Plaintiff*

## FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory above has concurred in this filing.

Dated: March 14, 2025          By:     */s/ Annie M. Wanless*
                                        Annie M. Wanless