# EXHIBIT 6



FILED
San Francisco County Superior Court
JAN 09 2025
CLERK OF THE COURT
BY: _____
                Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| COORDINATION PROCEEDING<br>SPECIAL TITLE [RULE 3.550]<br><br>IN RE UBER RIDESHARE CASES | Case No. CJC-21-005188<br>JUDICIAL COUNCIL COORDINATION<br>PROCEEDING NO. 5188<br><br>ORDER ON UBER'S MOTION TO QUASH<br>AND FOR PROTECTIVE ORDER |
|---|---|

Defendants Uber Technologies, Inc. and Rasier, LLC's (together, "Uber") motion to quash and for protective order came on for hearing on January 9, 2025. The Court circulated a tentative ruling in advance of the hearing, and the parties submitted on the tentative ruling, which is hereby adopted.

### BACKGROUND

On March 7, 2023, Plaintiffs filed a Master Long-Form Complaint against Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber"). Plaintiffs alleged sixteen causes of action: (1) general negligence; (2) common carrier negligence; (3) negligent misrepresentation; (4) intentional misrepresentation; (5) negligent infliction of emotional distress ("NIED"); (6) intentional infliction of

emotional distress ("IIED"); (7) vicarious liability/liability for the torts of Uber drivers; (8) vicarious liability for sexual assault; (9) vicarious liability for sexual battery; (10) vicarious liability for false imprisonment; (11) negligence by misfeasance; (12) negligence by nonfeasance; (13) intentional concealment; (14) strict product liability – design defect; (15) strict product liability – failure to warn; and (16) fraud. (Compl. ¶¶ 164-348.) On June 22, 2023, the Court sustained Uber's Demurrer to Plaintiffs' Master Long-Form Complaint. (June 22, 2023 Order, 1, 19.) In particular, the Court sustained Uber's demurrer as to Plaintiffs' vicarious liability, fraud, misrepresentation, and strict products liability claims without leave to amend. (*Id.* at 1, 12, 15, 19.) The Court sustained Uber's demurrer as to the negligent infliction of emotional distress claim with leave to amend. (*Id.* at 1, 16, 19.) On July 24, 2023, Plaintiffs filed a First Amended Master Long Form Complaint ("FAC") alleging causes of action for general negligence, common carrier negligence, negligence by misfeasance, and negligence by nonfeasance. Plaintiffs allege as follows.

Plaintiffs "are individuals who were raped, sexually assaulted, sexually battered, sexually harassed, falsely imprisoned, kidnapped, physically assaulted, and/or otherwise assaulted and/or harassed by their Uber driver." (FAC ¶ 6.) Uber is a transportation company that uses its app ("Uber App") to "connect riders looking for transportation to independent transportation providers…looking for riders." (*Id.* ¶¶ 1, 21-22.) Uber "drivers are largely nonprofessional, untrained individuals who use their own vehicles." (*Id.* ¶ 44.)

As early as 2014, Uber became aware that its drivers were engaging in sexual misconduct or sexual assault against its passengers. (*Id.* ¶ 3; see *id.* ¶ 27.) Uber has "publicly acknowledged this sexual assault crisis." (*Id.* ¶ 4; see *id.* ¶¶ 29, 121, 147, 149; see, e.g., *id.* ¶¶ 121-122 [approximately 250 reported sexual assaults per month in 2017 and 2018].) However, Uber "has actively chosen not to report instances of sexual assault that occur on the UBER App to the authorities" or other ridesharing companies. (*Id.* ¶¶ 84-86, 88, 134.) In addition, Uber does not proactively cooperate with law enforcement investigating cases passenger victims report to the police or participate in transportation network company ("TNC") safety hearings. (*Id.* ¶¶ 89-94, 116-120.) Moreover, after a victim reports a sexual assault, Uber often erases the victim's complaint and disables the victim's account, which

precludes the victim from accessing pertinent information such as the driver's name, driver's photo, make and model of the vehicle, ride time, ride distance, and route. (*Id.* ¶¶ 94-95, 100, 102.)

Despite marketing itself as a safe and better alternative to other transportation methods, Uber continues to hire drivers without conducting adequate background checks and screening procedures, allows culpable drivers to keep driving for Uber, and fails to adopt and implement reasonable monitoring and investigation procedures to protect passengers. (*Id.* ¶¶ 4, 24-25, 28, 30-31, 112-114, 131-133, 160-161, 164-168, 170-172, 189-190, 192, 209, 214-215, 218; see, e.g., *id.* ¶¶ 34-43, 66-69, 73-83, 130 [Uber Safe Rides Fee was a revenue source rather than a fund for implementing background checks, vehicle checks, driver safety education, development of safety features, and insurance]; but see *id.* ¶ 111 [the Uber App now includes an emergency button that allows a passenger to call 911].) Due to Uber's failure to implement changes, passengers continue to be victims of sexual assaults. (*Id.* ¶¶ 28, 127.)

By order filed February 5, 2024, this Court granted Plaintiffs' motion to compel discovery in part, ordering Uber to produce documents from three senior executive custodians and denying their request as to four others. (Feb. 5, 2024 Order.)

Uber now moves to quash the deposition subpoena for Travis Kalanick and seeks a protective order against Plaintiffs' deposition notices of Dara Khosrowshahi, Travis Kalanick, Jill Hazelbaker, Sachin Kansal, Mike Akamine, and Frank Chang (collectively "Senior Executives"). Plaintiffs oppose the motion.

## LEGAL STANDARD

"Before, during, or after a deposition, any party, any deponent, or any other affected natural person or organization may promptly move for a protective order . . . . to protect any party, deponent, or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense." (Code Civ. Proc. § 2025.420(a), (b).) The protective order may direct, among other things, "[t]hat the deposition not be taken at all" or that it "be taken at a different time." (*Id.* § 2025.420(b)(1), (2).) Further, a party or witness has the right to move to quash a deposition subpoena served on a third party, and the court "may make an order quashing the subpoena entirely, modifying it, or

- 3 -

directing compliance with it upon those terms or conditions as the court shall declare, including protective orders." (*Id.* § 1987.1(a), (b)(1), (2).)

"California law provides parties with expansive discovery rights." (*Ross v. Superior Court of Riverside County* (2022) 77 Cal.App.5th 667, 679 (cleaned up).) Unless otherwise limited by a court order, "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . , if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc. § 2017.010.)

"Despite the otherwise broad availability of discovery, the general rule in California and federal court is that agency heads and other top governmental executives are not subject to deposition absent compelling reasons." (Ross, 77 Cal.App.5th at 679-680 (cleaned up).) The same rule, often referred to as the "apex" doctrine, also applies to "corporate president[s] or other official[s] at the highest level of corporate management." (*Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282, 1284.) "The general rule is based upon the recognition that . . . an official's time and the exigencies of his everyday business would be severely impeded if every plaintiff filing a complaint against an agency [or corporate] head, in his official capacity, were allowed to take his oral deposition. Such procedure would be contrary to the public interest, plus the fact that ordinarily the head of an agency [or corporation] has little or no knowledge of the facts of the case." (*Contractors' State License Board v. Superior Court* (2018) 23 Cal.App.5th 125, 131 (cleaned up).) As the court explained in the seminal California case, "it would seem sensible to prevent a plaintiff from leap-frogging to the apex of the corporate hierarchy in the first instance, without the intermediate steps of seeking discovery from lower-level employees more involved in everyday corporate operations." (*Liberty Mutual Ins. Co.*, 10 Cal.App.4th at 1287.) Further, apex depositions, "when conducted before less intrusive discovery methods are exhausted, raise a tremendous potential for discovery abuse and harassment." (*Id.*)

"An exception will be made to this rule only when the deposing party makes two showings. First, the deposing party must show that the [corporate] official has direct personal factual . . . information pertaining to material issues in the action. Second, the deposing party must also show the information to be gained from the deposition is not available through any other source." (*Ross*, 77 Cal.App.5th at 680

- 4 -

(cleaned up).) "The rule applies regardless of whether the official is a named defendant or a third party, or whether the official gained the information sought while in his or her present position or while serving in prior, lower ranking positions at the agency." (*Id.*)

Thus, "when a plaintiff seeks to depose a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit the deposition, the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior personal knowledge of discoverable information. If not, as will presumably often be the case in the instance of a large national or international corporation, the trial court should issue the protective order and first require the plaintiff to obtain the necessary discovery through less-intrusive methods." (*Liberty Mutual Ins. Co.*, 10 Cal.App.4th at 1289.) Such methods may include "interrogatories directed to the high-level official to explore the state of his or her knowledge or involvement in plaintiff's case; the deposition of lower-level employees with appropriate knowledge and involvement in the subject matter of the litigation; and the organizational deposition of the corporation itself, which will require the corporation to produce for deposition the most qualified officer or employee to testify on its behalf as to the specified matters to be raised at the deposition. Should these avenues be exhausted, and the plaintiff make a colorable showing of good cause that the high-level official possesses necessary information to the case, the trial court may then lift the protective order and allow the deposition to proceed." (*Id.*)

## DISCUSSION

Plaintiffs seek to take the depositions of six of Uber's current and former executives:

- Dara Khosrowshahi, Uber's CEO, a position he has held since August 2017;
- Travis Kalanick, Uber's former CEO, who served in that role from 2010 until June 2017;
- Jill Hazelbaker, Uber's Chief Marketing Officer and Senior Vice President, Communications & Public Policy;
- Sachin Kansal, Uber's Chief Product Officer;
- Michael Akamine, Uber's Director of Product Management; and
- Frank Chang, Uber's Vice President of Applied Science.

- 5 -

Each of these Senior Executives is (or was) either a member of Uber's Executive Leadership Team ("ELT"), which represents the highest level of management at Uber and is equivalent to Uber's "C-Suite," or reports directly to it or to the CEO.

At the outset, Plaintiffs rely on federal cases for the proposition that it is Uber that bears the burden on the instant motion, asserting that "[t]he party seeking to avoid an apex deposition bears the burden of showing good cause for why the deposition should not be allowed." (Opposition, 3.) However, California authority is to the contrary: "the burden is on the deposing party to show that compelling reasons exist for permitting the deposition." (*Ross*, 77 Cal.App.5th at 680 (cleaned up); accord, *Contractors' State License Bd.*, 23 Cal.App.5th at 132, citing *Liberty Mutual Ins. Co.*, 10 Cal.App.4th at 1289.)[1] Nor does California law support Plaintiffs' assertion that apex protection is reserved for "extraordinary circumstances." (Opposition, 2-3, 20.)[2]

Further, Plaintiffs' reliance on the Court's February 5, 2024 Order on Plaintiffs' motion to compel discovery related to Uber's senior executive custodians (Opposition, 11, 18) is misplaced. While that Order addressed discovery related to the custodial files of three of the Senior Executives at issue here (Kalanick, Khosrowshahi, and Hazelbaker), it explicitly noted that "[c]ourts have declined to extend the apex rule outside the context of depositions, holding that it is not a protective shield that prohibits discovery from high-ranking officials." (Feb. 5, 2024 Order, 4 (cleaned up).) Rather, the Court applied a different standard to the document discovery sought by that motion, pursuant to which Plaintiffs had "the initial threshold burden of showing that the disputed custodian's ESI likely includes information relevant to the claims or defenses in the case." (*Id.* at 5 (cleaned up); compare *id.* at fn. 2 [declining to adopt higher standard which would require a showing that the executive's relevant ESI is unique and would not

---

[1] To be sure, the Court acknowledges that "[b]ecause of the similarity of California and federal discovery law, federal decisions have historically been considered persuasive absent contrary California decisions." (*Liberty Mutual Ins. Co.*, 10 Cal.App.4th at 1288.) Here, however, there *are* contrary California decisions, which are binding on this Court.

[2] Because decisions in this area turn on the facts of individual cases and the status of discovery in those cases, it is not persuasive, much less dispositive, that another court may have found the apex standard satisfied in a given case, such as the securities case against Uber cited in Plaintiffs' papers. (Opposition, 1 [contending that "the Northern District of California federal court recently recognized that these same witnesses don't warrant apex protection."].)

- 6 -

*In Re Uber Rideshare Cases* JCCP 5188
Order on Uber's Motion to Quash and for Protective Order

be available from other designated custodians].)[3] That "likely relevance" standard is far less demanding than the "unique or superior personal knowledge" standard that applies here. The Court finds that Plaintiffs have not met their burden at this stage of the litigation to justify the apex depositions they seek to take, although it intends to leave the door open to the parties to revisit these issues after the completion of substantial deposition discovery.

Each of the Senior Executives who are the subject of Uber's motion has submitted a declaration stating, in substantially similar language, that in their current (or former) position, they are "not directly or uniquely involved in the development, implementation, or execution of the safety policies or practices, technologies, or other measures that are the focus of Plaintiffs' lawsuits." (E.g., Khosrowshahi Decl. ¶ 9.) Declarants assert further that they do not possess unique or superior personal knowledge concerning the issues presented by Plaintiffs' lawsuits, such as driver background checks, alleged incidents of sexual misconduct, rider or driver account deactivations, and that to the extent they do have knowledge of those matters, "it is information that would have been reported to me by other executives or others directly responsible for those matters." (Id.; see also Kalanick Decl. ¶¶ 4, 6; Hazelbaker Decl. ¶ 7; Kansal Decl. ¶¶ 7, 12; Akamine Decl. ¶¶ 7, 11; Chang Decl. ¶ 9.) On its face, this showing would appear to be adequate to satisfy the first prong of the apex test in California.[4]

Plaintiffs take issue with Uber's showing, asserting that "Uber's documents and witness testimony prove these individuals personally issued directives, guided the development and implementation of Uber's safety measures and how those measures and Uber's claims of safety would be disclosed (or not disclosed) to the public, were ultimate decision-makers regarding safety measures Uber decided not to implement . . . , are percipient witnesses, and have unique knowledge that is unavailable from another source." (Opposition, 1.) They explain that the litigation "directly concerns executive-level decisions about whether to implement particular safety practices, policies, or technologies." (Id. at 8.) And they

---

[3] For similar reasons, the Court is unpersuaded that Judge Cisneros's order in the MDL litigation directing Uber to produce Chang's custodial file (Opp. (Dec. 30, 2024), 2) warrants a different conclusion. That order, too, applied a "likely [to have] relevant information" standard. (Id.)

[4] The Court disagrees with Plaintiffs' contention that it should disregard the Senior Executives' declarations as "conclusory." (Opposition, 7; see Liberty Mutual Ins. Co., 10 Cal.App.4th at 1290 ["we do not agree . . . that a high-level official's protestation of ignorance of a lawsuit is self-serving and automatically suspect"].)

- 7 -

assert that the limited number of depositions of Uber employees they have taken to date demonstrate that the Senior Executives "have personal knowledge of facts relevant to this litigation, were directly involved and served as ultimate decision-makers about key initiatives and decisions about safety, and the information is specific and unique to each of them." (*Id.* at 9.) Uber, for its part, responds that Plaintiffs' showing establishes only that "the Senior Executives have some knowledge of some relevant topics by virtue of being copied on documents, communicating with their reports, or making public statements—all of which could be said of almost any apex witness." (Reply, 6.)[5] Uber also asserts that none of Plaintiffs' voluminous exhibits points to the Senior Executives as "the only witnesses with the facts to answer Plaintiffs' questions or, at least, as witnesses with greater knowledge of those facts." (*Id.* at 7.)

The Court declines to second-guess the Senior Executives' sworn statements that they lack unique or superior personal knowledge of discoverable information. Further development of discovery in this case, such as by PMK depositions or depositions of lower level employees, may well shed light on that issue. Each of the Senior Executives lists multiple other high-ranking Uber employees or former employees who had direct personal involvement in and responsibility for the pertinent subject matters. (Khosrowshahi Decl. ¶ 10 [listing ten such employees]; Kalanick Decl. ¶ 7 [listing the same ten employees]; Hazelbaker Decl. ¶ 8 [listing six employees responsible for Uber's communications and marketing efforts relating to safety issues]; Kansal Decl. ¶¶ 8-11 [listing two employees responsible for safety measures as well as nine additional employees with knowledge and responsibility for safety-related issues]; Akamine Decl. ¶¶ 8-10 [similar]; Chang Decl. ¶¶ 10-15 [listing seven Uber employees responsible for Uber's data science and analytics relating to safety issues, Uber's Safety Reports, and related issues].) Many of those employees' depositions have yet to be taken.

At this stage of the case, the Court is not persuaded that it would be appropriate to allow Plaintiffs to take these high-level corporate officers' depositions without first requiring Plaintiffs to exhaust other avenues available to them. That should be feasible, given the current status and timing of discovery.

---

[5] See *Liberty Mutual Ins. Co.*, 10 Cal.App.4th at 1287 [rejecting argument that "the mere act of copying the chief executive officer with a few pieces of correspondence creates 'constructive notice' justifying the deposition."]; see also *Brown v. Google, LLC* (Apr. 4, 2022) 2022 WL 2289059, *2 [apex standard not satisfied as to Google's CEO where magistrate judge found only that "[a] few documents establish that specific relevant information was communicated to, and possibly from, [the CEO]." (cleaned up)].

When Uber's motion was filed, the January 15, 2025 deadline to complete fact discovery was fast approaching, although Plaintiffs had proposed extending that deadline by thirty days to February 28, 2025. (Opposition, 8-9; Abramson Decl. ¶ 5.) By stipulation of the parties, however, the Court recently extended the fact discovery cut-off date until May 30, 2025. (Dec. 23, 2024 Order.) To date, a relatively modest number of depositions of Uber employees (11, of 25 individual witnesses noticed by Plaintiff)[6] have been taken, and Plaintiffs have yet to commence the persons most knowledgeable depositions of Uber on a long list of topics. Further, many of the outstanding depositions are of employees who are likely to have more direct personal knowledge of the issues at stake than the Senior Executives, such that the completion of those depositions may obviate the need for Plaintiffs to take certain Senior Executives' depositions, or at least narrow the scope (and associated burden) of those depositions. Thus, as Uber suggests, there is sufficient time left in the schedule for the Court "to postpone the apex depositions until and if Plaintiffs can demonstrate that other less intrusive discovery methods are inadequate." (Reply, 9 (cleaned up).)

For the foregoing reasons, the Court declines to issue an order directing that the depositions of the Senior Executives "shall not be taken at all in this matter." (Uber's Proposed Orders.) Rather, it believes a definitive decision on whether some or all of those depositions should go forward should be deferred until after Plaintiffs have conducted the PMK depositions and a substantial number of depositions of lower-level Uber employees. (See *Liberty Mutual Ins. Co.*, 10 Cal.App.4th at 1288-1290 [citing with approval cases which "permit deferment of the depositions of higher executives until subordinates with supposedly equal or greater knowledge have been deposed" (cleaned up)].) At that point, the parties and the Court will be in a better position to ascertain whether the Senior Executives possess unique information that is not available from other sources. If so, upon "a colorable showing of good cause that the high-level official possesses necessary information to the case," Plaintiffs may request the Court to lift the protective order and allow the depositions to proceed. (See *id.* at 1289.)

---

[6] Plaintiffs' December 20, 2024 Supplement indicates that they have deposed two additional Uber witnesses since submitting their initial opposition to Uber's motion, when they represented that nine such depositions had been taken. (Supp., 3; Opposition, 8.)

- 9 -

## **CONCLUSION**

For the foregoing reasons, the Court grants Uber's motion to quash and for protective order in part. The depositions of the Senior Executives are to be deferred, without prejudice to Plaintiffs seeking to lift the protective order upon a showing of good cause after the parties have completed depositions of Uber's persons most knowledgeable on key topics and of lower-level Uber employees.

IT IS SO ORDERED.

Dated: January 9, 2025

Ethan P. Schulman
Judge of the Superior Court

# CERTIFICATE OF ELECTRONIC SERVICE
(CCP 1010.6(6) & CRC 2.260(g))

I, Edward Santos, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On January 9, 2025 , I electronically served:

ORDER ON UBER'S MOTION TO QUASH AND FOR PROTECTIVE ORDER

via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:

JAN 0 9 2025

Brandon E. Riley, Court Executive Officer

By: _____
Edward Santos, Deputy Clerk