LAURA VARTAIN (SBN: 258485)
    laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
    allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
    jessica.davidson@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION, | Case No. 3:23-md-03084-CRB |
| This Document Relates to: | **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; APPENDICES** |
| *A.R. v. Uber Technologies, Inc., et al.*, No. 24-cv-01827 | Judge:       Hon. Charles R. Breyer |
| *D.J. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07228 | Courtroom:  Courtroom 6 – 17th Floor |
| *A.G. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-01915 | |
| *A.R. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07821 | |
| *B.L. v. Uber Technologies, Inc., et al.*, No. 24- | |

cv-7940

*C.L. v. Uber Technologies, Inc., et al.*, No. 3:23-cv-04972

*J.E. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-03335

*Jane Doe QLF 0001 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-08387-CRB

*Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708

*K.E. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05281-CRB

*Amanda Lazio v. Uber Technologies, Inc.*, No. 3:24-cv-08937-CRB

*LCHB128 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-7019

*T.L. v. Uber Technologies, Inc., et al.*, No. 23-cv-9217

*WHB 318 v. Uber Technologies, Inc.*, No. 3:24-cv-04889

*WHB 407 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05028

*WHB 823 v. Uber Technologies, Inc.*, No. 3:24-cv-4900

*WHB 1486 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-04803

*WHB 1876 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05230

*WHB 1898 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05027

*Jane Roe CL 68 v. Uber Technologies Inc., et al.*, No. 3:24-cv-06669-CRB

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

SABRINA H. STRONG (SBN: 200292)
    sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
    jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT, JR. (*Pro Hac Vice* admitted)
    oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
    adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice* admitted)
    ccotton@shb.com
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 3

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 3

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 6

    A.      Master Complaint And Initial Motions To Dismiss ............................................ 6

    B.      Bellwether Selection And Amended Bellwether Complaints ............................... 8

III.    STATEMENT OF THE ISSUES TO BE DECIDED ..................................................... 10

IV.     ARGUMENT ................................................................................................................ 10

    A.      Plaintiffs Fail To Allege Fraud And Misrepresentation Claims ......................... 10

        1.      Plaintiffs fail to allege any actionable misrepresentation ....................... 12

        2.      Plaintiffs still fail to adequately allege reliance ....................................... 20

        3.      Plaintiffs fail to adequately allege intent to defraud via omission ........... 22

    B.      Plaintiffs Fail To Remedy Deficiencies In Their Product-Liability Claims ......... 23

        1.      Product-liability claims challenging services must fail ............................. 24

        2.      Failure to allege causation ....................................................................... 26

        3.      Plaintiffs inadequately allege negligent design and breach of warranty claims ........................................................................................ 27

    C.      Plaintiffs Fail To State A Claim For Vicarious Liability ..................................... 29

        1.      Plaintiffs fail to allege torts within the scope of employment .................. 29

        2.      Failure to allege ratification ..................................................................... 33

    D.      WHB 1876, WHB 1898, And WHB 407 Fail To Allege Any Tort Claims ......... 35

        1.      Failure to allege any physical harm ......................................................... 36

        2.      Failure to allege underlying tortious conduct by driver ........................... 37

V.      CONCLUSION ............................................................................................................. 38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*5504 Reuter, L.L.C. v. Deutsche Bank Nat. Tr. Co.*,
   2014 WL 7215197 (Mich. Ct. App. Dec. 18, 2014) ................................................................ 22

*A.H. by next friends C.H. v. Church of God in Christ, Inc.*,
   831 S.E.2d 460 (Va. 2019) .................................................................................................. 34

*Ahern v. Apple Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ..................................................................... 13, 16, 17

*Andren v. Alere, Inc.*,
   207 F. Supp. 3d 1133 (S.D. Cal. 2016) ................................................................................ 19

*Badger v. Paulson Inv. Co.*,
   803 P.2d 1178 (Or. 1991) .................................................................................................... 29

*Barrera v. Samsung Elecs. Am., Inc.*,
   2018 WL 10759180 (C.D. Cal. Dec. 7, 2018) .................................................................... 13

*Barrington ex rel. Barrington v. Sandberg*,
   991 P.2d 1071 (Or. Ct. App. 1999) ..................................................................................... 33

*Blessing v. Sandy Spring Bank*,
   2021 WL 653161 (Md. Ct. Spec. App. Feb. 19, 2021) ....................................................... 22

*Bohaboy v. Baxter Int'l, Inc.*,
   2024 IL App (1st) 230868 ............................................................................................... 6, 36

*Boyd v. SunButter, LLC*,
   2025 WL 84631 (C.D. Cal. Jan. 10, 2025) ......................................................................... 20

*Branford v. Washington Cnty.*,
   2019 WL 1957951 (D. Or. May 2, 2019) ............................................................................ 33

*Bryant v. Adams*,
   448 S.E.2d 832 (N.C. App. 1994) ....................................................................................... 28

*Cigna Ins. Co. v. Oy Saunatec, Ltd.*,
   241 F.3d 1 (1st Cir. 2001) ................................................................................................... 28

*Com. v. Gorassi*,
   733 N.E.2d 106 (Mass. 2000) ............................................................................................. 37

*Commonwealth v. Martins Maint., Inc.*,
   190 N.E.3d 1099 (Mass. App. Ct. 2022) ............................................................................. 37

*Conley v. Romeri*,
   806 N.E.2d 933 (Mass. App. Ct. 2004) ............................................................................... 37

*Crittenden v. Thompson-Walker Co.*,
   341 S.E.2d 385 (S.C. Ct. App. 1986) .................................................................................. 30

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ................................................................................................. 6

*Daugherty v. Am. Honda Motor Co.*,
    144 Cal. App. 4th 824 (2006) ............................................................................... 19

*Doe 1 v. Varsity Brands, LLC*,
    2023 WL 5901256 (D.S.C. Sept. 11, 2023) ......................................................... 31

*Doe v. Congregation of the Priests of the Sacred Heart, Inc.*,
    2024 WL 5186640 (D. Or. Dec. 20, 2024) .................................................... 32, 33

*Doe v. Holy See*,
    557 F.3d 1066 (9th Cir. 2009) ............................................................................. 32

*Doe v. S.C. State Budget & Control Bd.*,
    494 S.E.2d 469 (S.C. Ct. App. 1997) ................................................................... 32

*Eads v. Borman*,
    277 P.3d 503 (Or. 2012) ...................................................................................... 29

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ............................................................................... 13

*Edwards v. Akion*,
    279 S.E.2d 894 (N.C. Ct. App. 1981), *aff'd*, 284 S.E.2d 518 (N.C. 1981) .............................. 30

*Elias v. Hewlett-Packard Co.*,
    950 F. Supp. 2d 1123 (N.D. Cal. 2013) ........................................................ 19, 20

*Fearing v. Bucher*,
    977 P.2d 1163 (Or. 1999) ............................................................................... 32, 33

*Fernander v. Thigpen*,
    293 S.E.2d 424 (S.C. 1982) .................................................................................. 29

*Frazier v. Badger*,
    603 S.E.2d 587 (S.C. 2004) .................................................................................. 30

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ................................................................................. 13

*Friedman v. Mercedes Benz USA LLC*,
    2013 WL 12086788 (C.D. Cal. Apr. 9, 2013) ..................................................... 21

*Gallagher v. S. Shore Hosp., Inc.*,
    197 N.E.3d 885 (Mass. App. Ct. 2022) ............................................................... 37

*Gallant by Gallant v. Gorton*,
    581 F. Supp. 909 (D. Mass. 1984) ....................................................................... 36

*Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*,
    627 F. Supp. 2d 1187 (E.D. Cal. 2009) ......................................................... 34, 35

*Garnett v. Remedi Seniorcare of Virginia, LLC*,
    892 F.3d 140 (4th Cir. 2018) ............................................................................... 31

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

*GemCap Lending, LLC v. Quarles & Brady, LLP,*
  269 F. Supp. 3d 1007 (C.D. Cal. 2017) .................................................... 11

*Globe Indem. Co. v. Victill Corp.,*
  119 A.2d 423 (Md. 1956) ......................................................................... 34

*Haglund v. Philip Morris, Inc.,*
  847 N.E.2d 315 (Mass. 2006) .................................................................. 28

*Hammerling v. Google LLC,*
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................. 15, 16

*Heagerty v. Equifax Info. Servs. LLC,*
  447 F. Supp. 3d 1328 (N.D. Ga. 2020) .................................................... 20

*Henderson v. United Student Aid Funds, Inc.,*
  918 F.3d 1068 (9th Cir. 2019) ................................................................. 34

*Hendrix v. Town of W. Jefferson,*
  847 S.E.2d 903 (N.C. App. 2020) ............................................................ 31

*Hill v. Honey's, Inc.,*
  786 F. Supp. 549 (D.S.C. 1992) ......................................................... 29, 30

*Hobus v. Howmedica Osteonics Corp.,*
  699 F. Supp. 3d 1122 (D. Or. 2023) ........................................................ 26

*Hogan v. Forsyth Country Club Co.,*
  340 S.E.2d 116 ( N.C. App. 1986) ........................................................... 29

*Hosmane v. Univ. of Maryland,*
  2019 WL 4567575 (Md. Ct. Spec. App. Sept. 20, 2019) .......................... 22

*In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.,*
  2023 WL 4670291 (N.D. Cal. July 20, 2023) .......................................... 11

*In re MyFord Touch Consumer Litig.,*
  291 F. Supp. 3d 936 (N.D. Cal. 2018) ..................................................... 20

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.,*
  702 F. Supp. 3d 809 (N.D. Cal. 2023) ..................................................... 26

*Inn Foods, Inc. v. Equitable Co-op. Bank,*
  45 F.3d 594 (1st Cir. 1995) ..................................................................... 34

*Jackson v. Airbnb, Inc.,*
  639 F. Supp. 3d 994 (C.D. Cal. 2022) ..................................................... 25

*Jacobs v. Meta Platforms, Inc.,*
  2023 WL 2655586 (Cal. Super. Mar. 10, 2023) ...................................... 26

*Jacobson v. Kirn,*
  64 S.E.2d 755 (Va. 1951) ........................................................................ 34

iv

*Jane Doe B.E. v. Uber Techs., et al.*,
   Case No. 2024L003217 (October 3, 2024) .................................................................. 8

*Jane Doe L.W. v. Uber Techs., et al.*,
   Case No. 2024L003195 (October 3, 2024) .................................................................. 8

*Jane Doe M.B. v. Uber Techs., et al.*,
   Case No. 2024L003215 (Oct. 31, 2024) ...................................................................... 8

*Johnson v. Chrysler Corp.*,
   254 N.W.2d 569 (Mich. Ct. App. 1977) ..................................................................... 28

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................................... 11

*Knapp v. Dietrich*,
   No. 2023-CP-10-05080 (S.C. Court Comm. Pls. 9th Dist Mar. 27, 2025) .................... 5

*Kristensen v. Credit Payment Services Inc.*,
   879 F.3d 1010 (9th Cir. 2018) .................................................................................... 34

*Lavie v. Procter & Gamble Co.*,
   105 Cal. 4th 496 (2003) .............................................................................................. 13

*Lee v. Pfeifer*,
   916 F. Supp. 501 (D. Md. 1996) ................................................................................. 34

*Leigh-Pink v. Rio Properties, LLC*,
   849 F. App'x 628 (9th Cir. 2021) ......................................................................... 18, 19

*Longworth v. United States*,
   2022 WL 4587520 (E.D.N.C. Sept. 29, 2022) ..................................................... 29, 30

*Lourim v. Swensen*,
   977 P.2d 1157 (Or. 1999) ........................................................................................... 32

*Lynchburg Commc'ns Sys. Inc. v. Ohio State Cellular Phone Co.*,
   61 Va. Cir. 82 (2003) .................................................................................................. 22

*M.N.O. v. Magana*,
   2006 WL 559214 (D. Or. Mar. 6, 2006), *on partial reconsideration on other grounds*, 2006
   WL 1313374 (D. Or. May 3, 2006) ............................................................................. 33

*Martin v. First Advantage Background Servs. Corp.*,
   877 F. Supp. 2d 754 (D. Minn. 2012) ........................................................................ 20

*McEwen, McEwen v. Ortho Pharm. Corp.*,
   528 P.2d 522 (Or. 1974) ............................................................................................. 26

*Medlin v. Bass*,
   398 S.E.2d 460 (N.C. 1990) .................................................................................. 30, 31

*Modisette v. Apple Inc.*,
   30 Cal. App. 5th 136 (2018) ....................................................................................... 26

*Moncada v. Allstate Ins. Co.,*
 471 F. Supp. 2d 987 (N.D. Cal. 2006) ................................................................. 21

*Montell v. Diversified Clinical Servs., Inc.,*
 757 F.3d 497 (6th Cir. 2014)................................................................................. 38

*Moore v. Mars Petcare US, Inc.,*
 966 F.3d 1007 (9th Cir. 2020)............................................................................... 13

*Nalbandyan v. Citibank, NA,*
 777 F. App'x 189 (9th Cir. 2019) .......................................................................... 22

*Padgett v. S.C. Ins. Reserve Fund,*
 531 S.E.2d 305 (S.C. Ct. App. 2000) .................................................................... 31

*Phelps v. Vassey,*
 437 S.E.2d 692 (N.C. Ct. App. 1993) .............................................................. 31, 32

*Quackenbush v. Am. Honda Motor Co., Inc.,*
 650 F. Supp. 3d 837 (N.D. Cal. 2023) .................................................................. 22

*Rakestraw v. Rodrigues,*
 500 P.2d 1401 (Cal. 1972) .................................................................................... 33

*Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.,*
 530 S.E.2d 321 (N.C. Ct. App. 2000) ................................................................... 28

*Repro-Med Sys., Inc. v. EMED Techs. Corp.,*
 2019 WL 1427978 (E.D. Cal. Mar. 29, 2019) ...................................................... 13

*Rindlisbacher v. Steinway & Sons Inc.,*
 2019 WL 3767009 (D. Ariz. Aug. 9, 2019) ..................................................... 18, 19

*Robinson v. AirTran Airways, Inc.,*
 2009 WL 3822947 (N.D. Ga. Nov. 13, 2009) ...................................................... 36

*Robinson v. Uber Techs., Inc., et al.,*
 No. 2022CP4000496 (Ct. of Comm. Pls., Richland Cnty., Feb. 14, 2023) ............... 31

*Rodriguez v. Mondelez Glob. LLC,*
 703 F. Supp. 3d 1191 (S.D. Cal. 2023) ................................................................ 13

*Salameh v. Tarsadia Hotel,*
 726 F.3d 1124 (9th Cir. 2013)............................................................................... 11

*Sardis v. Overhead Door Corp.,*
 10 F.4th 268 (4th Cir. 2021) ................................................................................. 28

*Shepherd v. Costco Wholesale Corp.,*
 441 P.3d 989 (Ariz. Ct. App. 2019), *vacated on other grounds*, 482 P.3d 390 (2021) ............ 22

*Shultz Steel Co. v. Hartford Accident & Indem. Co.,*
 187 Cal. App. 3d 513 (1986)................................................................................. 35

vi

*Snyder v. Collura*,
   812 F.3d 46 (1st Cir. 2016) ................................................................................................ 37

*Social Media Cases*,
   2023 WL 6847378 (Cal. Super. Oct. 13, 2023) ........................................................... 26

*Sondag v. Pneumo Abex Corp.*,
   55 N.E.3d 1259 (Ill. App. Ct. 2016) ................................................................................ 36

*Soni v. Wespiser*,
   239 F. Supp. 3d 373 (D. Mass. 2017) ........................................................................ 37, 38

*Tassoudji v. Club Jenna, Inc.*,
   2011 WL 2176237 (Ariz. Ct. App. May 24, 2011) ...................................................... 22

*Terpin v. AT & T Mobility LLC*,
   118 F.4th 1102 (9th Cir. 2024) .............................................................................. passim

*Thigpen v. United States*,
   618 F. Supp. 239 (D.S.C. 1985), *aff'd*, 800 F.2d 393 (4th Cir. 1986) ....................... 32

*Tristan v. Bank of Am.*,
   2023 WL 4417271 (C.D. Cal. June 28, 2023) ............................................................. 14

*Universal Inv. Co. v. Sahara Motor Inn, Inc.*,
   619 P.2d 485 (Ariz. Ct. App. Div. 2 1980) ................................................................... 15

*Wegner v. Delly-Land Delicatessen, Inc.*,
   153 S.E.2d 804 (N.C. 1967) .............................................................................................. 31

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) .......................................................................................... 29

*Williams v. J.P. Morgan Chase Bank, N.A.*,
   704 F. Supp. 3d 1020 (N.D. Cal. 2023) ........................................................................ 22

*Wilson v. Hewlett–Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) .......................................................................................... 15

*Wise-Green v. Uber Techs., Inc., et al.*,
   Case No. 2024L003220 (Oct. 31, 2024) .......................................................................... 8

**Statutes**

15 U.S.C. § 1681a .................................................................................................................... 20

15 U.S.C. § 1681b .................................................................................................................... 20

NC Gen. Stat. § 20-280.1(5) ..................................................................................................... 5

NC Gen. Stat. § 20-280.8 ........................................................................................................... 5

Tex. Civ. Prac. & Rem. Code § 150E.002-003 ...................................................................... 8

Tex. Occ. Code § 2042.002 ....................................................................................................... 7

**Other Authorities**

1

2

3      CACI Ins. No. 3710 .................................................................................................... 34

4      Restatement (Second) of Torts (1965) ...................................................................... 36

5      Restatement (Second) of Torts (1977) ................................................................. passim

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, Uber) by and through their undersigned counsel, will and hereby does move the Court for an order partly dismissing the Amended Bellwether Complaints filed by Plaintiffs *A.R.1*, *A.R.2*, *A.G.*, *B.L.*, *C.L.*, *D.J.*, *J.E.*, *Jane Doe QLF 0001*, *Jaylynn Dean*, *K.E.*, *Amanda Lazio*, *LCHB128*, *T.K.*, *WHB 318*, *WHB 407*, *WHB 823*, *WHB 1486*, *WHB 1876*, *WHB 1898*, and the Short-Form Complaint filed by *Jane Roe CL 68*.

Uber seeks dismissal, with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(6), based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, and Appendices, any oral argument the Court may permit, and all pleadings and papers on file in this action and on such other matters as may be presented to the Court at or before the hearing.

Dated:  April 15, 2025

**O'MELVENY AND MYERS LLP**

By:  /s/ *Sabrina H. Strong*

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN
ALLISON M. BROWN
JESSICA DAVIDSON

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY & BACON, LLP**
PATRICK L. OOT, JR.
ALYCIA A. DEGEN

- 1 -

MICHAEL B. SHORTNACY
CHRISTOPHER V. COTTON

*Counsel for Defendants*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

3    The Court has previously considered and rejected many of the claims the 20 bellwether

4   Plaintiffs allege against Uber in their operative complaints.  To recount: under certain states'

5   laws, based on Plaintiffs' Master Long-Form Complaint (Dkt. 269 ("MC")), this Court already

6   dismissed Plaintiffs' (a) fraud and misrepresentation claims, for failure to allege actual reliance

7   on any safety-related advertising; (b) product-liability claims, for failure to plausibly allege a

8   causal connection between their injuries and any actionable defect in the Uber App; and

9   (c) ratification theory of vicarious liability, for failure to allege Uber's knowledge of, or specific

10   response to, any particular incident of independent driver misconduct, *see* Dkts. 1044, 1719; and

11   (d) the Court rejected certain Plaintiffs' claims for respondeat superior and apparent agency

12   liability, finding that independent drivers' intentional sexual torts fall outside the scope of any

13   employment or agency relationship as a matter of law in the jurisdictions where the alleged

14   incidents occurred, Dkt. 1719 at 8-9 (IL law); *see also* Dkt. 1044 at 14 (TX law).

15    The Court permitted these bellwether Plaintiffs leave to amend to correct these

16   deficiencies.  But nearly all of these previously identified pleading defects persist, requiring

17   partial dismissal of the amended complaints.  And for some claims, Plaintiffs' "additional

18   allegations in support," which presumably aimed to correct these defects, introduce additional

19   irremediable flaws meriting complete dismissal of their complaints.  To avoid unnecessary

20   repetition and burden on the Court, Uber brings this motion against the amended bellwether

21   complaints collectively, requesting: (a) dismissal with prejudice of all fraud and

22   misrepresentation claims;[1] (b) partial dismissal of product-liability claims based on previously

23   identified pleading deficiencies,[2] and (c) dismissal of all vicarious liability claims not previously

24

---

25   [1] These claims are asserted by the following Plaintiffs: (i) *A.R.2*, No. 3:24-cv-07821; (ii) *A.G.*,
      No. 3:24-cv-01915; (iii) *B.L.*, No. 3:24-cv-7940; (iv) *C.L.*, No. 3:23-cv-04972; (v) *J.E.*, No. 3:24-

26   cv-03335; (vi) *Jaylynn Dean*, No. 3:23-cv-06708; and (vii) *LCHB128*, No. 3:24-cv-7019.

27   [2] These claims are asserted by the following Plaintiffs: (i) *A.R.1*, No. 3:24-cv-01827; (ii) *A.R.2*;
      (iii) *Jane Doe QLF 0001*, No. 3:24-cv-08387; (iv) *B.L.*; (v) *C.L.*; (vi) *D.J.*, No. 3:24-cv-07228;

28   (vii) *J.E.*; (viii) *Jaylynn Dean*; (ix) *WHB 318*, No. 3:24-cv-04889; (x) *WHB 1898*, No. 3:24-cv-

addressed by stipulation, including respondeat superior, apparent agency, and ratification claims.[3] In addition, Uber moves to dismiss in full three amended complaints that are based exclusively on nonphysical injuries and nonactionable underlying conduct by independent drivers.[4]  The Court should grant the motion for the following reasons.

      1.  As to the fraud and misrepresentation claims, Plaintiffs' amendments offer no particularized allegations to back up the Master Complaint's abstract assertion that Uber somehow deceived them with "fraudulent safety advertising."  *See* MC ¶ 210.  Nor do they adequately identify any fraudulently omitted material information that Uber was obligated to disclose.  Dkt. 1044 at 35.  The few statements Plaintiffs collectively identify are facially non-misleading and nonactionable.  *Terpin v. AT & T Mobility LLC*, 118 F.4th 1102, 1110 (9th Cir. 2024).  No reasonable consumer would be misled by Uber's "Designated Driver" advertising, which merely promoted the uncontroversial proposition that rides facilitated via the Uber app avoid the safety risk associated with drunk driving ("Don't drink and drive, call an Uber"; "Stay safe tonight.  Use Uber.").  Nor would any reasonable consumer be plausibly misled by the "star ratings" Uber provided about independent drivers based on prior users' ratings.  In addition, Plaintiffs' fraudulent-omission claim fails because Plaintiffs do not plausibly allege Uber withheld any information with intent to deceive.  Finally, as in the Master Complaint, Plaintiffs still fail to adequately plead reliance on any of these purported statements—indeed, no Plaintiff alleges she even looked at, much less relied upon, the "star rating" of the driver who allegedly assaulted her.

---

05027; (xi) *K.E.*, No. 3:24-cv-05281; (xii) *LCHB128*; (xiii) *WHB 407*, No. 3:24-cv-05028; (xiv) *WHB 1487*, No. 3:24-cv-05028; and (xv) *A.G.*

[3] These claims are asserted by the following Plaintiffs: (i) *A.G.* (respondeat superior/apparent agency); (ii) *WHB 318* (same); (iii) *WHB 823*, No. 3:24-cv-4900 (same); (iv) *A.R.2* (ratification); (v) *C.L.* (same); and (vi) *WHB 1898* (same).  Pursuant to a so-ordered stipulation, Uber does not move to dismiss respondeat superior claims under Arizona and Virginia law or apparent-agency claims under Arizona law.  Dkt. 1932.  Under the same order, respondeat superior claims under Georgia law and apparent agency claims under Georgia and Virginia law have already been dismissed without leave to amend, so any such claims must be dismissed.  Dkt. 1932; *see also infra* note 49.

[4] These claims are asserted by the following Plaintiffs: (i) *WHB 1876*, No. 3:24-cv-05230; (ii) *WHB 1898*; and (iii) *WHB 407*.

2.  Plaintiffs' product-liability claims also repeatedly replicate flaws this Court has already identified.  First, they impermissibly challenge alleged deficiencies in Uber's services—such as an alleged lack of "Gender Matching" and "Safe Ride Matching"—as "product defects."  But this Court has already ruled that such allegations raise "a question of Uber's level of care with respect to its services, not with the design or functionality of the app."  Dkt. 1044 at 46.  Second, to the extent the product liability allegations address features of the app, some claimed "defects," such as alleged lack of in-app ride recording, have no plausible causal connection to some of the underlying incidents—which include alleged assaults that occurred after the app was turned off or the ride had ended.  By definition, in-app ride recording would not have "deterred" misconduct that took place after the app was turned off or the ride had ended.  In addition, some of Plaintiffs' product liability theories—such as negligent design defect and breach of warranty—rest on conclusory, boilerplate legal allegations insufficient to state a claim as a matter of law.

3.  Plaintiffs' various theories of vicarious liability also all are due to be dismissed.  Some amended pleadings assert vicarious liability, including respondeat superior and apparent agency theories, under state laws the Court has not previously considered.  Putting aside for now the fact that independent drivers are not Uber's employees, these vicarious-liability claims must be dismissed for the same reason that Plaintiffs could not state a claim under Illinois law.  *See* Dkt. 1719 at 8-9.  In North Carolina and South Carolina (*WHB 318* and *WHB 823*), intentional sexual torts categorically fall outside of the scope of any employment relationship as a matter of law; such criminal conduct is antithetical to what Uber expects of drivers and could not possibly further a principal's business ends.[5]  Under Oregon law (*A.G.*), the result is the same unless plaintiffs can allege the assailant obtained a position of trust from his purported employment that he directly used to commit his crime.  An arms-length driver-rider business relationship does not qualify.

---

[5] Under North Carolina's TNC statute, drivers are presumptively independent contractors and not employees.  NC Gen. Stat. §§ 20-280.1(5), 20-280.8; *see also* Order, *Knapp v. Dietrich*, No. 2023-CP-10-05080 (S.C. Court Comm. Pls. 9th Dist. Mar. 27, 2025) (granting summary judgment on vicarious liability claim because independent driver is an independent contractor as a matter of law).

The Court should also dismiss Plaintiffs *A.R.2*, *WHB 1898*, and *C.L.*'s claims of liability based on ratification because they still do not "plead facts showing that Uber ratified the misconduct of specific agents in connection with specific incidents." Dkt. 1044 at 30. They do not allege any facts supporting a plausible inference that Uber failed to take action after obtaining notice of a particular incident in a manner evincing intent to adopt the driver's alleged conduct as Uber's own.

4. Finally, some Plaintiffs (*WHB 1876*, *WHB 1898*, and *WHB 407*) plead tort claims based on exclusively nonphysical harms, such as emotional discomfort and offense.[6]  Neither negligence nor product-liability doctrines permit recovery without physical injury (including for alleged breach of common-carrier duties).  *See, e.g.*, *Bohaboy v. Baxter Int'l, Inc.*, 2024 IL App (1st) 230868, ¶ 20. And for similar reasons, allegations about mere offensive comments are insufficient to establish claims alleged, i.e., for assault, false imprisonment, or intentional infliction of emotional distress.

As in the Master Complaint, these basic pleading deficiencies foreclose many of Plaintiffs' claims against Uber.  The inadequately alleged fraud, product-liability, negligence, and vicarious-liability theories should now be dismissed with prejudice.[7]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Master Complaint And Initial Motions To Dismiss

Uber operates the Uber App, an "online and mobile application [that] connects persons seeking transportation with persons who use their personal vehicles," i.e., independent drivers, who "provide transportation in exchange for compensation." MC ¶ 49.[8]  Plaintiffs used the Uber App to arrange a ride, and each alleges she was sexually assaulted or harassed by her independent

---

[6] *Jane Roe CL 68*, who did not filed an amended complaint, *see infra* at 9, fails to state a negligence claim for the same reason, *see infra* note 55.

[7] Appendix A summarizes the relief Uber seeks by plaintiff and claim.

[8] For purposes of this Motion to Dismiss only, Uber assumes the truth of well-pleaded allegations of material fact.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (court does not accept "conclusory, unwarranted deductions of fact, or unreasonable inferences").

1    driver.[9]

2        After the Judicial Panel on Multidistrict Litigation created this multidistrict litigation,

3    Plaintiffs filed a Master-Long Form Complaint against Uber, seeking to impose liability for

4    drivers' alleged intentional sexual torts.  The Master Complaint pleaded the following claims: (B)

5    negligence, including negligent entrustment; (C) fraud and misrepresentation; (D) negligent

6    infliction of emotional distress ("NIED"); (E) "common carrier's non-delegable duty to provide

7    safe transportation"; (F) "other non-delegable duties to provide safe transportation"; (G) vicarious

8    liability for drivers' torts, including respondeat superior, apparent agency, and ratification; (H)

9    strict product liability; and (I) injunctive relief (under the California Unfair Competition Law

10   ("UCL")).  *See* MC ¶¶ 360-513.

11       Under the Court's case management plan, Dkt. 175, Uber moved to dismiss certain claims

12   under the laws of five states: California, Texas, Florida, Illinois, and New York.  In an initial

13   ruling addressing the California and Texas claims, the Court granted Uber's motions in part,

14   holding that the "B" negligent entrustment claims failed under both states' laws because they

15   were subsumed by the general negligence claims, Dkt. 1044 at 38-40; the "C" "fraud-related

16   claims" failed for lack of "particular allegations" supporting the element of reliance, *id.* at 35; the

17   "D" NIED claims failed because California does not recognize NIED as a separate cause of

18   action,[10] *id.* at 37-38; the "H" product-liability claims failed for lack of "individual allegations"

19   supporting a causal connection between any defect and a plaintiff's injuries, *id.* at 47-48; and the

20   "I" UCL claims failed because Plaintiffs failed to allege the risk of actual and imminent future

21   injury required for standing to pursue injunctive relief.  *Id.* at 49-52.

22       Under Texas law, the Court also dismissed the "E" claims for breach of common-carrier

23   duty as barred by Texas's Transportation Network Company ("TNC") statute, Tex. Occ. Code

24   § 2042.002; Dkt. 1044 at 31; and the "G" claims for apparent-agency liability, which lacked

25   supporting allegations, *id*. at 15, 28 (Plaintiffs' failure to plead respondeat superior under Texas

26

27   [9] In the Master Complaint, Plaintiffs labeled their claims using letters starting with "B," and they
     continue to follow that convention now.

28   [10] Plaintiffs withdrew their Texas NIED claim.  *Id.* at 37.

1    law "dooms" apparent agency as well.[11]  The Court granted leave to amend "[w]here the

2    pleadings [were] deficient but might be curable with additional allegations," and noted it would

3    confer with the parties about "the best way to manage the filing of amended pleadings and any

4    challenges to them."  Dkt. 1044 at 11.

5        Following that initial dismissal order, Plaintiffs "concede[d] that most of the claims

6    challenged by Uber's motions" under Florida, Illinois, and New York law "should be dismissed"

7    as well.  Dkt. 1719.  The Court then resolved the parties' remaining disputes on four claims,

8    ruling that: (1) Florida's TNC statute bars vicarious liability arising after its June 2020 effective

9    date, *id*. at 4-5; (2) Uber is a common carrier under Illinois and Florida law, except for periods

10   governed by the statutory exemptions in their respective TNC statutes, *id.* at 6-7; (3) Plaintiffs'

11   NIED claim was inadequately pleaded under Florida law, *id.* at 7; and (4) sexual assaults cannot

12   be considered within the scope of employment as a matter of Illinois law, *id.* at 9.[12]

13       On December 4, 2024, the Court entered the parties' stipulation to apply the Court's two

14   dismissal orders to the laws of Arizona, Georgia, Nevada, Pennsylvania, and Virginia, in lieu of

15   motions practice.  Dkt. 1932.  That resulted in, among other things, dismissal with leave to amend

16   of Plaintiffs' fraud and misrepresentation claims, product-liability claims, and ratification theories

17   of vicarious liability.[13]  *See* Appendix B & C (summarizing outcomes from dismissal orders and

18   stipulation).

19       **B.    Bellwether Selection And Amended Bellwether Complaints**

20       On December 12, 2024, the Court ordered the parties to select ten bellwether cases each,

21
22   [11] The Texas TNC statute also restricts vicarious liability for TNCs like Uber to gross negligence
     (which Plaintiffs did not allege), Tex. Civ. Prac. & Rem. Code § 150E.002-003, for claims after
23   its effective date of September 1, 2023.  Dkt. 1044 at 14.

24   [12] *See, e.g.*, *Jane Doe L.W. v. Uber Techs., et al.*, Case No. 2024L003195 (October 3, 2024)
     (granting motion to dismiss claim that Uber was vicariously liable for alleged intentional sexual
     assault by independent driver) ; *Jane Doe B.E. v. Uber Techs., et al.*, Case No. 2024L003217
25   (October 3, 2024) (same); *Jane Doe M.B. v. Uber Techs., et al.*, Case No. 2024L003215 (Oct. 31,
     2024) (same); *Wise-Green v. Uber Techs., Inc., et al.*, Case No. 2024L003220 (Oct. 31, 2024)
26   (same).

27   [13] Ratification was dismissed without leave to amend under Pennsylvania law.  Respondeat
     superior and apparent agency liability were dismissed without leave to amend under Georgia law.
28   And apparent agency liability was dismissed without leave to amend under Virginia law.

1   for a total of twenty, by February 14, 2025.  *See* Dkt. 1950 (Pretrial Order No. 21).  The parties

2   submitted their bellwether selections on February 21, 2025.  Dkts. 2373, 2375.

3       Plaintiffs filed nineteen amended bellwether complaints on March 14, 2025.  One of

4   Uber's bellwether selections, *Jane Roe CL 68*, "intends to proceed on her original complaint, and

5   d[id] not seek to amend."  *See* Dkt. 2629 (Joint Case Management Statement); *see also Jane Roe*

6   *CL 68 v. Uber Techns. Inc., et al.*, No. 3:24-cv-06669-CRB (N.D. Cal. Sept. 23, 2024), Dkt. 1.

7   Therefore, *Jane Roe CL 68*'s claims are limited by the Court's prior dismissal order applying

8   Texas law to the Master Complaint, *see id.* ¶ C.1 (alleging incident in Texas).  The remaining

9   nineteen amended bellwether complaints collectively implicate the laws of fifteen states:

10  California; Texas; Illinois; Arizona; Georgia; Pennsylvania; Virginia; Indiana; Iowa;

11  Massachusetts; Maryland; Michigan; North Carolina; South Carolina; and Oregon.[14]  The

12  bellwether Plaintiffs have pleaded what they label "Additional Allegations In Support,"

13  attempting to address the pleading deficiencies the Court previously identified in the Master

14  Complaint's fraud, product liability, and vicarious liability theories.  *See, e.g.*, *C.L.*, Am.

15  Compl.at 4-9 ("Additional Allegations In Support Of Fraud And Misrepresentation Claim,"

16  "Vicarious Liability," "Ratification," and "Product Liability").[15]

17      In support of their amended fraud claims, Plaintiffs broadly allege that Uber promoted its

18  services as a safer alternative to driving drunk, and that Uber provided information about its

19  independent drivers to prospective riders, including star ratings, without disclosing information

20

21  [14] Under the applicable conflict of laws principles, and the forum selection clause in Uber's
    Terms of Use, the law of the place of incident controls.  *See* Dkts. 385-388.  Two complaints
22  allege an incident that occurred during a ride between two states.  *See C.L.*, Am. Compl. ¶ 5 (ride
    that began in Virginia and ended in Maryland); *WHB 318*, Am. Compl. ¶ 5 (ride that began in
23  South Carolina and ended in North Carolina).  For these complaints that allege injuries crossing
    state lines, the Court need not perform a choice of law analysis because Plaintiffs' claims fail
24  under either—there is no conflict.  Finally, *D.J.* inaccurately invokes Mississippi law, because the
    alleged incident occurred in Indiana, the jurisdiction which must govern *D.J.*'s claims.  *D.J.*, Am.
25  Compl. ¶ 5.

26  [15] *A.G.* also purports to plead "Additional Allegations in Support of Negligence," but includes no
27  new factual allegation.  *A.G.*, Am. Compl. ¶ 25.  Instead, Plaintiff "incorporates by reference all
    the factual allegations contained in Claim E of the Master Long-Form Complaint" (i.e., the
28  common-carrier claim).

1   about their drivers' criminal background checks or complaint histories.  Plaintiffs' amended

2   product-liability claims allege that Plaintiffs' assaults were caused by the following purported

3   "defects": failure to provide "Safe Ride Matching"; failure to provide "Gender Matching"

4   allowing female riders to opt out of riding with male drivers; failure to provide "App-Based Ride

5   Recording"; failure to provide "GPS Route Discrepancy Alerts"; and failure to provide sufficient

6   "Age-Gating" to stop minors from using the Uber App.  Plaintiffs' amended ratification claims

7   broadly allege that Uber ratified its drivers' conduct by failing to "deactivate them."

8   **III.    STATEMENT OF THE ISSUES TO BE DECIDED**

9       1.    Plaintiffs do not adequately allege fraud and misrepresentation claims under any

10  relevant state's law (i.e., California, Oregon, Virginia, Maryland, Michigan, or Arizona), because

11  they fail to allege (a) any actionable conduct, (b) justifiable reliance on any specific statements,

12  and (c) intent to defraud via omission.

13      2.    Plaintiffs' product-liability claims should be dismissed to the extent they allege

14  (a) nonactionable "defects" in Uber's services, rather than a product-based design defect, (b) fail

15  to allege a plausible causal connection to their injuries, or (c) rely on boilerplate, legally

16  conclusory allegations of negligent design defect and/or breach of warranty.

17      3.    For vicarious liability, Plaintiffs (a) fail to allege that the independent driver's

18  conduct falls within the scope of any alleged employment or agency relationship under North

19  Carolina, South Carolina, or Oregon law (*WHB 318, WHB 823,* and *A.G.*), foreclosing any

20  vicarious liability as a matter of law ; and (b) Plaintiffs fail to adequately allege facts to support a

21  ratification theory under any applicable state law (*A.R.2*, *WHB 1898*, and *C.L.*).

22      4.    The negligence, product-liability, and vicarious liability claims pleaded by *WHB*

23  *1876*, *WHB 1898*, and *WHB 407* (including breach of common-carrier duty) must be dismissed

24  for failure to allege any physical harm or underlying tortious conduct by an independent driver.

25  **IV.    ARGUMENT**

26      **A.    Plaintiffs Fail To Allege Fraud And Misrepresentation Claims**

27      Seven Plaintiffs allege claims for fraud and misrepresentation: *A.R.2*, *A.G.*, *B.L.*, *C.L.*,

28  *J.E.*, *Jaylynn Dean*, and *LCHB128*.  Their fraud and misrepresentation claims fail for two

independent reasons: (1) Plaintiffs do not allege any actionable statement; and (2) Plaintiffs do not plausibly allege reliance.  In addition, Plaintiffs' fraudulent-omission claim fails because (3) Plaintiffs do not plausibly allege Uber withheld any information about its drivers' histories with intent to deceive them.

"To plead a common law fraud claim, a plaintiff must allege misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damages."  *In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.*, 2023 WL 4670291, at *6 (N.D. Cal. July 20, 2023) (Breyer, J.) (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1132 (9th Cir. 2013)); *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1039 (C.D. Cal. 2017) (same for intentional misrepresentation (collectively, with fraud claim, "fraud-related claims," Dkt. 1044 at 35-37)).[16]  Under Federal Rule of Civil Procedure 9(b), Plaintiffs must allege "the circumstances constitut[ing] fraud" with sufficient "particularity" to identify "the who, what, when, where, and how of the misconduct charged."  *In re McKinsey*, 2023 WL 4670291, at *6 (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).

The chart below summarizes the relevant pleading defects in each Plaintiff's fraud-related claims:

| Plaintiff | Pleads Nonactionable Designated Driver Ads | Pleads Nonactionable Driver Notifications | Fails to Adequately Allege Reliance on Designated Driver Ads | Fails to Adequately Allege Reliance on Driver Notifications | Fails to Allege Intent to Defraud for Driver Notifications |
|---|---|---|---|---|---|
| *Jaylynn Dean* | Dismiss | Dismiss | Dismiss | Dismiss | Dismiss |
| *A.G.* | Dismiss | N/A[17] | Dismiss | N/A | N/A |
| *B.L.* | Dismiss | N/A | Dismiss | N/A | N/A |
| *A.R.2* | N/A | Dismiss | N/A | Dismiss | Dismiss |
| *C.L.* | N/A | Dismiss | N/A | Dismiss | Dismiss |

---

[16] These elements govern fraud claims under every relevant state's law.  Appendix D.1.

[17] "N/A" signifies that Plaintiff did not allege the liability theory.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

| Plaintiff | Pleads Nonactionable Designated Driver Ads | Pleads Nonactionable Driver Notifications | Fails to Adequately Allege Reliance on Designated Driver Ads | Fails to Adequately Allege Reliance on Driver Notifications | Fails to Allege Intent to Defraud for Driver Notifications |
|---|---|---|---|---|---|
| *J.E.* | N/A | Dismiss | N/A | Dismiss | Dismiss |
| *LCHB128* | N/A | Dismiss | N/A | Dismiss | Dismiss |

### 1. *Plaintiffs fail to allege any actionable misrepresentation*

Like the Master Complaint, Plaintiffs' amended complaints assert "fraud-related claims . . . premised on allegations that Uber made both [a] fraudulent misrepresentations and [b] fraudulent omissions about the safety of its rides." Dkt. 1044 at 35. These allegations respectively may be grouped into two categories: (1) "Designated Driver" Advertising[18] and (2) Driver-Notifications. The "Designated Driver" allegations challenge Uber's advertisements warning against the dangers of drunk driving and suggesting calling a ride via Uber instead of driving after drinking, e.g., "Don't drink and drive, call an Uber,"[19] or "Stay safe tonight. Use Uber."[20] The Driver-Notifications allegations assert that Uber provided riders with "information about the driver, including his identity, his picture, and his 'star rating.'"[21] Both theories fail because Plaintiffs do not allege any misrepresentation that could have misled a reasonable consumer—the sine qua non of any fraud-related claim.

### a. **No affirmative misrepresentations are alleged**

The only affirmative statements Plaintiffs allege to be misleading are "Designated Driver" Advertisements, which are not likely to mislead any reasonable consumer.

---

[18] *Jaylynn Dean*, Am. Compl. ¶¶ 45-53 (AZ law); *A.G.*, Am. Compl. ¶¶ 30-38 (OR law); *B.L.*, Am. Compl. ¶¶ 38-49 (CA law).

[19] *A.G.*, Am. Compl. ¶ 30 (OR law); *B.L.*, Am. Compl. ¶¶ 40-41 (CA law).

[20] *Jaylynn Dean*, Am. Compl. ¶ 46 (AZ law).

[21] *Id.*, Am. Compl. ¶¶ 35-44 (AZ law); *A.R.2*, Am. Compl. ¶¶ 34-41 (CA law); *C.L.*, Am. Compl. ¶¶ 19-28 (VA & MD law); *J.E.*, Am. Compl. ¶¶ 19-28 (MI law); *LCHB128*, Am. Compl. ¶¶ 23-30 (AZ law).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

To state a claim, Plaintiffs must adequately allege conduct that would likely mislead the "reasonable consumer." *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1209 (S.D. Cal. 2023) (dismissing omission-based claims); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he reasonable person standard is well ensconced in the law in a variety of legal contexts in which a claim of deception is brought").[22]  The reasonable consumer test requires Plaintiffs to plausibly allege "members of the public are *likely* to be deceived," which requires "more than a mere possibility that the [statement] might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotations omitted; emphasis added); *Lavie v. Procter & Gamble Co.*, 105 Cal. 4th 496, 507-08 (2003); *accord Repro-Med Sys., Inc. v. EMED Techs. Corp.*, 2019 WL 1427978, at *6 (E.D. Cal. Mar. 29, 2019).  "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner*, 838 F.3d at 965 (quoting *Lavie*, 105 Cal. 4th at 508); *see also Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (same).  Courts thus dismiss fraud claims on the pleadings where "common sense would not lead" a reasonable consumer "to be misled." *Moore*, 966 F.3d at 1018.[23]

Promotional statements "that are vague or highly subject[ive]" are nonactionable because they cannot be misleading; the same goes for "statements of opinion." *Barrera v. Samsung Elecs. Am., Inc.*, 2018 WL 10759180, at *4 (C.D. Cal. Dec. 7, 2018) (collecting cases).  Instead, actionable statements must convey a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Id.*; *see also Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 555 (N.D. Cal. 2019) (requirement of "specific rather than general assertions" represents "common theme that seems to run through cases . . . in a variety of contexts").  To illustrate, a bank's marketing of its Zelle payment service as "simple," "fast," and "safe" is non-actionable as a matter of law—even if plaintiffs were allegedly defrauded through

---

[22] All relevant states apply the same rule.  Appendix D.2.

[23] Misleadingness can be determined on the pleadings under the laws of all relevant states. Appendix D.3.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

Zelle—because those "[a]dvertising statements" were "merely generalized, vague, and unspecified assertions rather than factual claims upon which a reasonable consumer would rely." *Tristan v. Bank of Am.*, 2023 WL 4417271, at *4-5 (C.D. Cal. June 28, 2023) (quotation marks omitted).

Uber's "Designated Driver" advertising statements are nonactionable for the same reasons. Generalized promotional statements like "Don't drink and drive, call an Uber" and that "us[ing] Uber" provides a way to "[s]tay safe tonight"[24] as compared to **driving drunk** present nothing more than "general descriptive statements as opposed to verifiable statements of fact." *Tristan*, 2023 WL 4417271, at *4-5. The statements contain no quantifiable, potentially misleading factual claims. A reasonable consumer would understand them to represent that requesting a ride via the Uber app is a way to avoid the safety risks associated with driving drunk, not as a representation about the measures Uber does or does not take to combat sexual misconduct by independent drivers. Similarly, Plaintiffs' general allegations that Uber generally promoted "safe rides" not only fail to identify any particularized statement, but also describe an abstract, nonactionable promotion of Uber's services. *E.g., A.G.*, Am. Compl. ¶ 30; *Tristan,* 2023 WL 4417271, at *4-5 ("generalized" statement of "safety" not actionable).[25]

> b.    **Uber's Driver Notifications do not constitute "fraudulent omissions"**

Plaintiffs' main fraudulent omission theory is that Uber failed to disclose "previous rider reports of driver misconduct" when the Uber App provided notifications with information "about the driver, including the driver's identity, the driver's photo, and the driver's 'star rating'" (the

---

[24] *E.g., Jaylynn Dean*, Am. Compl. ¶ 46 (AZ law).

[25] The Master Complaint alleges that Uber misrepresented the purpose of its Safe Rides Fee years before any of the incidents at issue. The Court already dismissed that theory as insufficient to allege any individualized reliance, Dkt. 1044 at 35-37, and no Plaintiff has alleged additional facts regarding that theory. Nevertheless, as Uber previously explained, "any claim[s] arising out of or relating to [Uber's] representations or omissions regarding . . . safety" that were released by the June 1, 2017 class-action settlement of *McKnight v. Uber Technologies, Inc.*, 14-cv-05615 (N.D. Cal.), must be dismissed as barred by release. Dkt. 384 at 15-17 & Dkt. 384-1.

"Driver-Notification" statements).  *E.g.*, *Jaylynn Dean* (AZ law), Am. Compl. ¶¶ 37, 41.[26]  But

Plaintiffs allege no facts supporting a duty for Uber to affirmatively disclose the drivers' histories.

*See* Dkt. 1044 at 37 (dismissing fraudulent omission claims for failure to plead facts supporting

"duties to disclose that arise from telling half-truths").

Liability for "nondisclosure" fails absent a duty of disclosure.  *See Terpin v. AT & T*

*Mobility LLC*, 118 F.4th 1102, 1110 (9th Cir. 2024); *Hammerling v. Google LLC*, 615 F. Supp.

3d 1069, 1084 (N.D. Cal. 2022) (Breyer, J.); *see also* Restatement (Second) of Torts § 551 (1977)

("Liability for Nondisclosure").[27]  Courts have generally "rejected a broad obligation to disclose,"

cabining disclosure duties to only narrow circumstances.  *See, e.g.*, *Wilson v. Hewlett–Packard*

*Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).[28]

Under the Second Restatement, a duty to disclose arises only if:

1.  "matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them";

2.  "matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading";

3.  "subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so";

4.  "the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him";

5.  "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

*See* Restatement (Second) § 551(2).  California caselaw has distilled the test for a disclosure-duty

---

[26] *See also A.R.2*, Am. Compl. ¶¶ 35, 38 (CA law); *C.L.*, Am. Compl. ¶¶ 19, 25 (VA & MD law); *J.E.*, Am. Compl. ¶¶ 20, 25 (MI law); *LCHB128*, Am. Compl. ¶¶ 24, 27 (AZ law).

[27] All relevant states apply a similar duty requirement.  Appendix D.4 & D.5.

[28] *See also Universal Inv. Co. v. Sahara Motor Inn, Inc.*, 619 P.2d 485, 487 (Ariz. Ct. App. Div. 2 1980) ("[G]enerally no duty to disclose exists between a buyer and seller, [but] certain circumstances may give rise to such a duty.").

1    further, recognizing "a duty to disclose" under four circumstances (the so-called *LiMandri*

2    factors): (1) "the defendant is in a fiduciary relationship with the plaintiff"; (2) "the defendant had

3    exclusive knowledge of material facts not known to the plaintiff"; (3) "the defendant actively

4    conceals a material fact from the plaintiff"; or (4) "the defendant makes partial representations

5    but also suppresses some material facts." *Terpin*, 118 F.4th at 1110-11; *Hammerling*, 615 F.

6    Supp. 3d at 1085 (explaining *LiMandri* factors); Dkt. 1044 at 36-37.

7          Both the Restatement and California thus recognize a duty to disclose based on (i) partial

8    omissions that render a representation misleading, or (ii) extreme information asymmetry about

9    material facts—i.e., where defendants have "superior" or "exclusive knowledge." *See*

10   Restatement (Second) § 551(2) (e), cmt. k ("superior information"); *see also Terpin*, 118 F.4th at

11   1110 (California duty to disclose "exclusive knowledge of material facts not known to the

12   plaintiff").[29]  Those are the only two exceptions to the ordinary rule against a duty of disclosure

13   that Plaintiffs appear to invoke.  But Plaintiffs fail to allege facts to support a duty to disclose

14   under either a partial omission or a superior/exclusive knowledge theory.

15         **i.  Plaintiffs fail to allege an actionable "partial omission."**  Plaintiffs' allegations that

16   "Uber's failure to disclose the rider reports made the information it conveyed about the driver

17   materially incomplete" do not plausibly support a duty to disclose because no reasonable

18   consumer would be misled by the driver-identifying information and star ratings Uber provided.

19   *Jaylynn Dean* (AZ law), Am. Compl. ¶¶ 43, 52.[30]

20         The reasonable consumer test remains the touchstone for partial omission claims, too.

21   "Alleged omissions are actionable if they are likely to deceive reasonable consumers, but

22   [g]eneric sales talk . . . is not actionable even if a consumer subjectively believes it means

23   something more specific."  *Ahern*, 411 F. Supp. 3d at 562 (quotations omitted) (CA, OR, AZ

24   partial-omissions claims dismissed).  So when "a statement has been made," a duty to disclose

25

26   _____

     [29] Appendix D.6.

27   [30] *A.G.*, Am. Compl. ¶ 37 (OR law); *A.R.2*, Am. Compl. ¶ 40 (CA law); *B.L.*, Am. Compl. ¶ 48
     (CA law); *C.L.*, Am. Compl. ¶ 27 (VA & MD law); *LCHB128*, Am. Compl. ¶ 29 (AZ law); *J.E.*,
28   Am. Compl. ¶ 27 (MI law); *Jaylynn Dean*, Am. Compl. ¶ 43 (AZ law).

1    arises only if there is "additional information necessary to prevent it from misleading the

2    recipient."  Restatement (Second) § 551, cmt. b; Dkt. 1044 at 37 ("California duty to disclose

3    where 'the defendant makes partial representations but also suppresses some material facts.'"

4    (quoting *Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1169 (C.D. Cal. 2023)).

5            Uber's alleged "partial representations"—the Driver-Notifications it provided to riders

6    with drivers' star ratings and identifying information—could not plausibly mislead a reasonable

7    consumer.  Uber's notifications allegedly provided "the driver's identity, the driver's photo, and

8    the driver's 'star rating.'"  *E.g.*, *A.R.2*, Am. Compl. ¶¶ 34-35.[31]  Composite star ratings are a

9    ubiquitous feature of the online economy, and a reasonable consumer would understand them for

10   what they are—an average of volunteered overall satisfaction ratings from other riders on a fixed

11   scale (e.g., "1" to "5").  No reasonable consumer would interpret that composite rating to convey

12   a comprehensive appraisal for every given driver, or to represent a predictive representation from

13   Uber about how an independent driver will behave in any particular ride.  *See Terpin*, 118 F.4th at

14   1111 (statement that a "six-digit code would give [account] heightened security" was not

15   rendered "misleading because AT&T did not disclose that a rogue employee could bypass the

16   code," as "partial disclosure in no way suggest[ed] that the heightened security would prevent all

17   fraud").  Because no reasonable consumer would misinterpret them, Uber could owe no duty to

18   supplement its star ratings with drivers' alleged criminal or complaint histories.

19           For similar reasons, Uber's "Designated Driver" advertisements did not create a duty to

20   disclose whether Uber had "sufficient information about its drivers . . . to determine whether its

21   drivers could be trusted to provide safe transportation to a drunk female rider traveling alone late

22   at night," or "that drunk people, especially women, are at a significantly elevated risk of being

23   sexually assaulted."  *E.g.*, *B.L.*, Am. Compl. ¶¶ 44-45.  No reasonable consumer would interpret

24   Uber's anti-drunk-driving advertisements to represent anything about the risks of sexual assault.

25   *See Ahern*, 411 F. Supp. 3d at 562 (subjective beliefs not actionable based on generic sales talk).

26   And Uber owed no duty to disclose the widely recognized risks inherent in becoming intoxicated.

27

28   ---
     [31] *C.L.*, Am. Compl. ¶¶ 19-21; *J.E.*, Am. Compl. ¶¶ 20-21; *Jaylynn Dean*, Am. Compl. ¶¶ 37-38;
     *LCHB128*, Am. Compl. ¶¶ 23-24.

1  *See Rindlisbacher v. Steinway & Sons Inc.*, 2019 WL 3767009, at *2 n.2 (D. Ariz. Aug. 9, 2019)

2  (a defendant is not liable for nondisclosure . . . when 'the facts are patent'" (quoting Restatement

3  (Second) of Torts § 551 cmt. k)).

4      **ii. Plaintiffs fail to allege Uber misleadingly withheld information within its superior**

5  **or exclusive knowledge.**  Likewise under both the Restatement test and California law, Uber had

6  no duty to disclose either "any information about [a driver's] criminal background" nor any

7  "previous rider report of driver misconduct" based on a theory of superior or exclusive

8  knowledge.  *E.g.*, *A.R.2*, Am. Compl. ¶ 38.[32]

9      Under the Restatement test, a defendant with superior knowledge may be obligated to

10  disclose "***facts basic to the transaction,*** if [a] he knows that the other is about to enter into it

11  under a mistake as to them, and [b] that the other, because of the relationship between them, the

12  customs of the trade or other objective circumstances, would reasonably expect a disclosure of

13  those facts."  Restatement (Second) § 551(2)(e) (emphasis added).  This duty applies only if the

14  seller "kn[o]w[s] that [the buyers] were about to enter into a business transaction under a mistake

15  of fact."  *Leigh-Pink v. Rio Properties, LLC*, 849 F. App'x 628, 630 (9th Cir. 2021).  In addition,

16  "the advantage taken of the plaintiff's ignorance [must be] so shocking to the ethical sense of the

17  community, and . . . so extreme and unfair, as to amount to a form of swindling, in which the

18  plaintiff is led by appearances into a bargain that is a trap, of whose essence and substance he is

19  unaware."  *Rindlisbacher*, 2019 WL 3767009, at *2 (quoting Restatement (Second) § 551(2)(e),

20  cmt. l).

21      Here, Plaintiffs do not allege either that Uber knew they entered a business transaction

22  under a mistake of fact, or any "objective circumstances" permitting a reasonable rider to expect

23  disclosure of their driver's entire complaint history or criminal background.  By providing a

24  driver's identity, photograph, and "star rating," Uber provided all the "basic facts" a prospective

25  rider would reasonably expect to assess the "essence and substance" of their transaction with

26

27  [32] *LCHB128*, Am. Compl. ¶ 28 (AZ law); *A.G.*, Am. Compl. ¶ 36 (OR law); *A.R.2*, Am. Compl.
    ¶ 39 (CA law); *B.L.*, Am. Compl. ¶ 47 (CA law); *C.L.*, Am. Compl. ¶ 26 (VA & MD law); *J.E.*,
28  Am. Compl. ¶ 26 (MI law).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

1    Uber, which cannot plausibly be said to have engaged in a "form of swindling" by not

2    affirmatively providing this information. *Rindlisbacher*, 2019 WL 3767009, at *2.  And if

3    Plaintiffs mistakenly expected more information, or misinterpreted the "star ratings" Uber

4    provided, they do not plead any facts suggesting Uber "knew that they were about to enter into a

5    business transaction under a mistake of fact." *See Leigh-Pink*, 849 F. App'x at 630.  No Plaintiff

6    pleads, for example, that Uber had actual knowledge that she accepted a ride under the mistaken

7    belief that her driver had no previous rider complaints, for example. *See id.* (not enough to allege

8    seller "should have known" about mistake of fact); *Jaylynn Dean*, Am. Compl. ¶ 41 (alleging

9    failure to "disclose the previous rider reports of driver misconduct").[33]

10    Plaintiffs' omission theory similarly fails under California's "exclusive knowledge" rule,

11    which imposes a duty when "the defendant had exclusive knowledge of ***material facts*** not known

12    to the plaintiff." *Terpin*, 118 F.4th at 1110-11 (emphasis added) (affirming dismissal).  "A fact is

13    deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a

14    'reasonable consumer' would deem it important in determining how to act in the transaction at

15    issue." *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1134–35 (N.D. Cal. 2013); *see also*

16    *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) ("members of the public

17    must have had an expectation or an assumption about the matter in question" to support

18    disclosure duty).[34]

19    The only California Plaintiff asserting a duty to disclose information about a driver, *A.R.2*,

20    alleges that Uber failed to disclose her driver's alleged criminal background and a previous "rider

21    report of misconduct." *A.R.2*, Am. Compl. ¶ 38.  But neither criminal backgrounds nor the

22    previous alleged rider report could plausibly constitute "material facts" that a reasonable

23    consumer would have expected Uber to disclose.  For starters, criminal background checks

24    qualify as "consumer reports" for purposes of the federal Fair Credit Reporting Act, which cannot

25    ───────────────

26    [33] It's important to note that a ride is requested and accepted by a rider prior to Uber providing any information regarding a driver, including name, photo, or star rating.

27    [34] The same principles determine whether a duty to disclose exists under California's UCL, Consumer Legal Remedies Act, and common law fraud doctrine.  *Id.*; *Andren v. Alere, Inc.*, 207

28    F. Supp. 3d 1133, 1143 (S.D. Cal. 2016) (dismissing for "fail[ure] to assert a duty to disclose based on exclusive knowledge of a material fact").

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

1    be "disclosed without a permissible purpose." 15 U.S.C. § 1681a (definition of consumer report);

2    15 U.S.C. § 1681b (impermissible uses of consumer report); *Martin v. First Advantage*

3    *Background Servs. Corp.*, 877 F. Supp. 2d 754, 757 (D. Minn. 2012) (criminal background check

4    is consumer report); *Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1337 (N.D. Ga.

5    2020) ("elaborate set of interlocking provisions that restrict the access to and dissemination of

6    consumer reports" to "protect consumer privacy").  State fraud law does not impose a duty on

7    Uber to broadly disclose criminal background reports in violation of FCRA.

8        That leaves *A.R.2*'s allegation that Uber bore a duty to disclose prior "rider reports"

9    alleging misconduct.  *A.R.2* alleges "one report of sexual misconduct" against the independent

10   driver that allegedly assaulted her.  The complainant reported that the driver's "vehicle felt

11   unsafe" and, when prompted by Uber to explain why, responded "rapist." *A.R.2*, Am. Compl.

12   ¶ 26.  *A.R.2* alleges no facts that would support a duty for Uber to disclose this complaint, which

13   described the driver as a rapist without actually reporting that he had assaulted anyone or

14   provided any additional information.  Such unverified accusations, lacking specifics, cannot rise

15   to the level of facts material to a transaction.  A reasonable consumer would not expect Uber to

16   disclose a subjective and unverified report of discomfort.  *Elias*, 950 F. Supp. 2d at 1134-35.

17   Imposing an obligation on Uber to affirmatively disclose all such unverified complaints would

18   not only confront riders with inflammatory information of unknown reliability, but also

19   potentially subject Uber to substantial risks of defamation liability.

20              2.    *Plaintiffs still fail to adequately allege reliance*

21       All of Plaintiffs' fraud-based claims fail for the additional reason that Plaintiffs do not

22   allege actual and reasonable reliance on any of Uber's alleged statements, Dkt. 1044 at 35-36, "a

23   critical element of [any] claim sounding in fraud."  *Boyd v. SunButter, LLC*, 2025 WL 84631, at

24   *5 (C.D. Cal. Jan. 10, 2025); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 978

25   (N.D. Cal. 2018) (same, "fraudulent omission"); Restatement (Second) § 537.

26       First, Plaintiffs do not allege "actual and reasonable reliance" on the Driver-Notifications

27   stating the driver's identity (with a photo) and star rating.  No Plaintiff alleges that she ever

28   "***actually saw and relied upon***" a notification with her driver's information and star rating.  *See*

Dkt. 1044 at 37.  Instead, all Plaintiffs repeat the same boilerplate allegations, speculating about what they "very likely saw" about their drivers, including the "star ratings," based on how the Uber App's ride-matching feature generally works.  *E.g.*, *C.L.*, Am. Compl. ¶ 19.[35]

Because Plaintiffs do not allege they actually ever looked at the "star ratings" and driver information on the night of incidents alleged, they cannot plead "actual reliance" on any omission to disclose additional information alongside the "star ratings" and driver information.  *Friedman v. Mercedes Benz USA LLC*, 2013 WL 12086788, at *1 (C.D. Cal. Apr. 9, 2013) ("Friedman never saw any MBUSA advertisement, and therefore cannot allege actual reliance on any alleged false advertisement."); *Moncada v. Allstate Ins. Co.*, 471 F. Supp. 2d 987, 997 (N.D. Cal. 2006) (similar).

Second, Plaintiffs cannot allege **reasonable** reliance on the "Designated Driver" Advertisements.  Plaintiffs seem to allege they interpreted the Designated Driver Advertisements as a representation that Uber could eliminate all safety risks inherent in drinking—for example, that "[b]ecause she heard these ads, Plaintiff believed that Uber was a safe option for people who had been drinking," and those "ads were . . . the reason she thought it would be [safe]" to "rid[e] with Uber" on "the night of the assault."  *A.G.*, Am. Compl. ¶¶ 32-33 (OR law).[36]  But subjective reliance on a particular statement must still be justifiable—that is, reasonable.  *See* Restatement (Second) § 537.  Plaintiffs cannot allege reasonable reliance on the Designated Driver Advertisements for the same reasons they fail to plead misleadingness—no reasonable person would rely on advertisements contrasting Uber rides with drunk driving as a promise about safety measures against sexual misconduct.  *See supra* at 17-18.  A promotional statement advising against one known and obvious danger—drunk driving—does not constitute a

---

[35] *J.E.*, Am. Compl. ¶ 20 ("As standard practice, Uber communicates to each passenger information about the driver, including his identity, his picture, and his 'star rating.'"); *Jaylynn Dean*, Am. Compl. ¶¶ 37-38 ("The App also included standard information about the driver, including his identity, his picture, and his 'star rating.' Plaintiff would have seen these messages too, given that she saw the messages described above."); *LCHB128*, Am. Compl. ¶¶ 23-24 (AZ law) ("When ordering Uber rides, Plaintiff regularly looked at messages Uber conveyed about the driver, including the driver's identity, the driver's photo, and the driver's 'star rating.'"); *A.R.2*, Am. Compl. ¶¶ 34-35 (CA law).

[36] *B.L.*, Am. Compl. ¶ 38 (CA law); *Jaylynn Dean*, Am. Compl. ¶ 48 (AZ law).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

1    guarantee that Uber can eliminate other risks.  Any subjective reliance on such a perceived

2    guarantee is not justifiable as a matter of law.

3                    3.    *Plaintiffs fail to adequately allege intent to defraud via omission*

4            Plaintiffs' "fraudulent omission" theory further fails because no Plaintiff plausibly alleges

5    that Uber withheld any information, about their drivers or anything else, with an "intent to

6    defraud."  *See, e.g.*, *Quackenbush v. Am. Honda Motor Co., Inc.*, 650 F. Supp. 3d 837, 845 (N.D.

7    Cal. 2023).[37]

8            Plaintiffs do not plead that Uber withheld independent drivers' background reports or

9    prior complaints with the intent to induce them to accept a ride.  The amended pleadings lack

10   even conclusory allegations of intent to deceive.  *Cf.* MC ¶ 378 ("Uber intended that every

11   passenger rely on its safety marketing.");  *see also Williams v. J.P. Morgan Chase Bank, N.A.*, 704

12   F. Supp. 3d 1020, 1026 (N.D. Cal. 2023) ("[m]ere conclusory allegations that representations or

13   omissions were intentional and for the purpose of defrauding and deceiving plaintiffs are

14   insufficient." (citation and quotations omitted) (collecting cases)).

15           Any allegations of intent to deceive would be implausible in any event.  *Terpin*, 118 F.4th

16   at 1111 (affirming dismissal for failure to adequately allege intent); *Nalbandyan v. Citibank, NA*,

17   777 F. App'x 189, 191 (9th Cir. 2019) (similar, where "Plaintiffs failed to plead facts sufficient to

18   support the . . . 'intent to defraud' element[] of their fraud claim" under Rule 12(b)(6)).[38]  As

19   earlier explained, disclosing independent drivers' criminal histories and complaint histories would

20   not only infringe the drivers' privacy interests but also potentially subject Uber to civil liability

21

22   [37] *See, e.g.*, *Jaylynn Dean*, Am. Compl. ¶¶ 35-44 (AZ law); *A.R.2*, Am. Compl. ¶¶ 34-41 (CA
23   law); *C.L.*, Am. Compl. ¶¶ 19-28 (VA & MD law); *J.E.*, Am. Compl. ¶¶ 19-28 (MI law);
     *LCHB128*, Am. Compl. ¶¶ 23-30 (AZ law).

24   [38] *See also 5504 Reuter, L.L.C. v. Deutsche Bank Nat. Tr. Co.*, 2014 WL 7215197, at *5 (Mich.
25   Ct. App. Dec. 18, 2014) (affirming dismissal of fraud claim for failure to allege intent); *Shepherd
     v. Costco Wholesale Corp.*, 441 P.3d 989, 994 (Ariz. Ct. App. 2019), *vacated on other grounds*,
26   482 P.3d 390 (2021) (similar); *Tassoudji v. Club Jenna, Inc.*, 2011 WL 2176237, at *4 (Ariz. Ct.
     App. May 24, 2011) (similar); *Hosmane v. Univ. of Maryland*, 2019 WL 4567575, at *7 (Md. Ct.
27   Spec. App. Sept. 20, 2019) (similar); *Blessing v. Sandy Spring Bank*, 2021 WL 653161, at *6
     (Md. Ct. Spec. App. Feb. 19, 2021) (similar); *Lynchburg Commc'ns Sys. Inc. v. Ohio State
28   Cellular Phone Co.*, 61 Va. Cir. 82, at *2 (2003) (similar, affirming demurrer).

1    under the FCRA and state defamation law.  Plaintiffs assert no facts supporting an inference that

2    Uber instead withheld such information because it intended to induce users to accept rides.

3            **B.**      **Plaintiffs Fail To Remedy Deficiencies In Their Product-Liability Claims**

4           The Court previously noted two fatal defects in the Master Complaint's product-liability

5    theories, and both persist in the amended complaints.  First, Plaintiffs have failed to overcome the

6    Court's holding that any "issues that go to the question of whether Uber breached the applicable

7    standard of care as a provider of services," rather than product-based defects, sound in negligence

8    rather than product liability.  Dkt. 1044 at 46.  Plaintiffs (i) *A.R.1*'s (PA), (ii) *A.R.2*'s (CA), (iii)

9    *Jane Doe QLF 001*'s (TX), (iv) *B.L.*'s (CA), (v) *C.L.*'s (VA/MD), (vi) *D.J.*'s (IN), (vii) *J.E.*'s

10    (MI), (viii) *Jaylynn Dean*'s, (ix) *WHB 318*'s (NC/SC), (x) *WHB 1898*'s (MA), (xi) *K.E.*'s (TX),

11    (xii) *LCHB128*'s (AZ), (xiii) *WHB 407*'s (CA), (xiv) *WHB 1486*' s (TX), and (xv) *WHB 1876*'s

12    (IL) product-liability claims must be dismissed insofar as they challenge Uber's driver-rider

13    matching service, which is not a product.[39]

14           Second, Plaintiffs (i) *A.G.,* (ii) *K.E.,* (iii) *A.R.2, and* (ix) *Jaylynn Dean* persist in failing to

15    "explain how the absence of" an "In-App Ride Recording" feature "caused any particular

16    assault."  Dkt. 1044 at 48.

17           Finally, and separately, Plaintiffs (i) *C.L.*, (ii) *WHB 1898*, (iii) *D.J.*, (iv) *J.E.*, (v) *WHB*

18    *318*, and (vi) *WHB 823* purport to plead alternative product-liability claims for negligent design

19    defect and/or breach of implied warranty, but allege no supporting facts.  Their purely conclusory

20    legal assertions fail to state any claim.

21           The chart below summarizes the pleading deficiencies in Plaintiffs' product-liability

22    claims:

| Plaintiff | "Safe Ride Matching" Is Not a Product Defect | "Gender Matching" Is Not a Product Defect | Failure to Allege Causal Connection to Defect | Failure to Allege Negligent Design and Breach of Warranty |
|---|---|---|---|---|
| *A.R.1* | Dismiss | Dismiss | | N/A |

---

[39] Many courts across the country have refused to apply product-liability to Uber's services, as offered via the Uber App.  Appendix D.7.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

| Plaintiff | "Safe Ride Matching" Is Not a Product Defect | "Gender Matching" Is Not a Product Defect | Failure to Allege Causal Connection to Defect | Failure to Allege Negligent Design and Breach of Warranty |
|---|---|---|---|---|
| A.R.2 | Dismiss | Dismiss | Dismiss | N/A |
| B.L. | Dismiss | Dismiss | | N/A |
| C.L. | N/A | Dismiss | | Dismiss |
| D.J. | N/A | Dismiss | | Dismiss |
| J.E. | N/A | Dismiss | | Dismiss |
| Jane Doe QLF 0001 | Dismiss | Dismiss | | N/A |
| Jaylynn Dean | Dismiss | Dismiss | Dismiss | N/A |
| K.E. | N/A | Dismiss | Dismiss | N/A |
| Amanda Lazio | N/A | N/A | N/A | N/A |
| A.G. | N/A | N/A | Dismiss | N/A |
| LCHB128 | Dismiss | Dismiss | | N/A |
| T.L. | Dismiss | Dismiss | | N/A |
| WHB 318 | N/A | Dismiss | | Dismiss |
| WHB 407 | N/A | Dismiss | | N/A |
| WHB 823 | N/A | N/A | | Dismiss |
| WHB 1486 | N/A | Dismiss | | N/A |
| WHB 1876 | Dismiss | N/A | | N/A |
| WHB 1898 | Dismiss | Dismiss | | Dismiss |

1.    *Product-liability claims challenging services must fail*

Several Plaintiffs' product-liability claims fail insofar as they allege only "problems with Uber's services (or with some other aspect of its business model)," which are not actionable in product liability.  Dkt. 1044 at 46.

a.    **Lack of "Safe Ride Matching" is not an actionable product defect**

*A.R.1, A.R.2, Jane Doe QLF 0001, T.L., WHB 1898, B.L., LCHB128, Jaylynn Dean*, and *WHB 1876* purport to assert product-liability claims in part on allegations about a "defect" based

24

on an alleged failure to employ "Safe Ride Matching," *i.e.*: "Uber had the capability to, and did, identify sets of factors that, when present, predict a substantially higher likelihood of sexual assault occurring during an Uber ride."[40]  This Court has already held that such allegations of a supposed "defect" cannot support product-liability claims: "failing[]. . . to detect known patter[ns] of sexual assault, . . . including by using Uber's GPS technology," presents "a question of Uber's level of care with respect to its services, not with the design or functionality of the app."  Dkt. 1044 at 46.  The "Safe Ride Matching" defect is indistinguishable from the purported defect the Court already rejected.

### b.    Lack of "gender matching" is not a product defect

For similar reasons, Plaintiffs' "Gender Matching" allegations challenge Uber's provision of services, not a defect in the app.  Specifically, several plaintiffs rest their claims in part on the allegation that "[t]he Uber App was in a defective condition unreasonably dangerous to users or consumers, including Plaintiff, because the Uber app was designed with an algorithm that matched female riders with male drivers and had no modification to allow female riders the option to be matched only with female drivers."[41]

These "Gender Matching" allegations also challenge Uber's level of care in algorithmically "matching . . . drivers with passengers."  *See* Dkt. 1044 at 3.  Recommending a transaction between two third parties is a service, not a product.  *See Jackson v. Airbnb, Inc.*, 639 F. Supp. 3d 994, 1011 (C.D. Cal. 2022) (A "platform that connects users . . . is more akin to a

---

[40] *A.R.2*, Am. Compl. ¶¶ 43-50; *see also Jane Doe QLF 0001*, Am. Compl. ¶¶ 26-30; *A.R.1*, Am. Compl. ¶ 35; *T.L.*, Am. Compl. ¶¶ 30-37; *WHB 1898*, Am. Compl. ¶¶ 32-37; *B.L.*, Am. Compl. ¶¶ 50-57; *Jaylynn Dean*, Am. Compl. ¶¶ 54-61; *LCHB128*, Am. Compl. ¶¶ 31-38; *WHB 1876*, Am. Compl. ¶¶ 19-24.  As a factual matter, sexual assaults are an extremely rare occurrence on the Uber platform; but regardless, product-liability claims based on the alleged "Safe Ride Matching" defect fail as a matter of law, as explained below.

[41] *E.g.*, *A.R.2*, Am. Compl. ¶¶ 51-56; *Jane Doe QLF 0010*, Am. Compl. ¶¶ 32-37; *B.L.*, Am. Compl. ¶¶ 60-63; *Jaylynn Dean*, Am. Compl. ¶¶ 62-67, *K.E.*, Am. Compl. ¶¶ 19-24, *T.L.*, Am. Compl. ¶¶ 38-43; *WHB 318*, Am. Compl. ¶¶ 25-30; *A.R.1*, Am. Compl. ¶¶ 40-45; *C.L.*, Am. Compl. ¶¶ 38-43; *D.J.*, Am. Compl. ¶¶ 14-19; *J.E.*, Am. Compl. ¶¶ 32-37; *LCHB128*, Am. Compl. ¶¶ 39-44; *WHB 407*, Am. Compl. ¶¶ 21-26; *WHB 1486*, Am. Compl. ¶¶ 15-20.

1    service than to a product.").[42]  Such allegations fail to support a product-liability claim as a matter

2    of law, and Plaintiffs' product-liability claims must be dismissed to the extent they are based on

3    the nonactionable "Gender Matching" defect.[43]

4                        2.    *Failure to allege causation*

5          Product-liability claims that fail to plausibly allege the "necessary element of causation"

6    must be dismissed as well.  *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 152 (2018); *see* Dkt.

7    1044 at 47-48 (dismissing for lack of causation); *Hobus v. Howmedica Osteonics Corp.*, 699 F.

8    Supp. 3d 1122, 1148 (D. Or. 2023) ("To prove causation, a plaintiff must show that the alleged

9    defect was 'a substantial factor in producing the damage complained of." (quoting *McEwen,*

10   *McEwen v. Ortho Pharm. Corp.*, 528 P.2d 522, 538 (Or. 1974)).  To plead causation, Plaintiffs

11   must allege both proximate (legal) causation, and factual causation.  Dkt. 1044 at 47-48.  As this

12   Court has explained, factual causation requires Plaintiffs to plausibly allege that the "absence of a

13   given feature ***caused*** any particular assault"—that the assault would not have occurred "but for"

14   the alleged defect.  *Id.* (emphasis added).[44]  Like the Master Complaint, some Plaintiffs' product

15   liability amended complaints still fail to assert individual allegations of factual or but-for

16   causation.

17         *A.G.* and *K.E.* both fail to allege a causal connection between the only defect—"App-

18   Based Ride Recording"—and the injuries inflicted by her independent driver.  According to *A.G.*,

19   _____

20   [42] *Social Media Cases*, 2023 WL 6847378, at *16 (Cal. Super. Oct. 13, 2023) ("algorithms . . .
     [that] tailor the user's experience to the individual consumer" are a service, not a product); *Jacobs*
21   *v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Mar. 10, 2023) ("as a social media
     ***platform that connects its users***, Facebook is more akin to a service than a product" (emphasis
22   added)); *cf. In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 702 F. Supp. 3d
     809, 831 (N.D. Cal. 2023) (47 U.S.C. § 230 immunizes user-matching and algorithmic content-
23   promotion).

24   [43] Plaintiffs' failure-to-warn claims must also be dismissed to the extent they rest on these
     nonactionable defects.  *In re Soc. Media*, 702 F. Supp. 3d at 855 ("defendants owe users the
25   duty . . . to warn about risks" posed by adequately alleged defects only).

26   [44] All relevant jurisdictions require similar causation allegations.  *Johnson v. Medtronic Inc.*, 2021
     WL 2669560, at *5 (D. Or. June 10, 2021), *report and recommendation adopted*, 2021 WL
27   2668793 (D. Or. June 29, 2021); *Haas v. Est. of Carter*, 502 P.3d 1144, 1148 (Or. 2021); *Alsadi*
     *v. Intel Corp.*, 519 F. Supp. 3d 611, 628 (D. Ariz. 2021); *Whitmire v. Terex Telelect, Inc.*, 390 F.
28   Supp. 2d 540, 554 (E.D. Tex. 2005).

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

for example, the "Uber App was defective in its design because it could have been, but was not, designed to trigger automatic video recording of rides and the time period when riders and drivers remain in close proximity to one another and have not yet parted ways, whether through using the camera already installed on a driver's cell phone during Uber trips, or through an external device linked to the App." *See A.G.*, Am. Compl. ¶ 39 (OR law).  This alleged theory of causation hypothesizes that "[a]utomatic video monitoring would have deterred the driver from assaulting Plaintiff." *Id.* ¶ 46.  But *A.G.*'s own factual allegations demonstrate that in-app ride recording would not plausibly have prevented the assault she alleges: (i) She allegedly "asked to make one stop on the way home and the driver agreed," then (ii) "[o]nce they were stopped, the driver told Plaintiff he would take her the rest of the way home free of charge," and (iii) "[t]he driver **turned off the App,** and asked Plaintiff to give him directions the rest of the way," which she did.  *Id.* ¶¶ 11-12 (emphasis added).  *A.G.* alleges no facts supporting an inference that in-app recording would have prevented an assault allegedly occurring *after* the App was shut off.  *See K.E.*, Am. Compl. ¶¶ 10-15 (TX law) (alleging that after arriving at plaintiff's originally specified destination, driver offered to "take her home for free," and committed assault in her home).

The same flaw requires dismissal of product-liability claims in *A.R.2* and *Jaylynn Dean*, to the extent they are based on "App-Based Ride Recording."  *See A.R.2*, Am. Compl. ¶¶ 57-64 (CA law); *Jaylynn Dean*, Am. Compl. ¶¶ 68-75 (AZ law).  Any such feature would not have prevented the alleged assaults, which occurred only after "[p]artway through the ride, the driver used Uber's Driver App to indicate that the ride had ended."  *A.R.*2, Am. Compl. ¶ 9; *Jaylnn Dean*, Am. Compl. ¶ 15 ("At that location, which was not near any buildings, the driver unilaterally marked the trip as completed using Uber's driver app" prior to assault.).

3.    *Plaintiffs inadequately allege negligent design and breach of warranty claims*

Under the law of several jurisdictions that have not adopted strict products liability (Michigan, Massachusetts, North Carolina, and Virginia), Plaintiffs (i) *WHB 318*, (ii) *WHB 823*, (iii) *D.J.*, (iv) *WHB 1898*, (v) *C.L.*, and (vi) *J.E.* have attempted to allege alternative claims for

breach of implied warranty and negligent design defect.[45] *See, e.g.*, *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 280 (4th Cir. 2021) ("Virginia has not adopted a strict liability regime for products liability.").[46]

In addition to the flaws discussed above in their defect and causation allegations,[47] *see supra* Sections IV.B.1-2, those Plaintiffs' negligent design defect and implied warranty claims fail for the additional reason that they are unsupported by any non-conclusory allegations of fact. All five relevant Plaintiffs plead nothing more than essentially identical, boilerplate legal conclusions of the claims' purported elements.[48] At most, some Plaintiffs "incorporate[] by reference the allegations in the Master Complaint pleaded under Claim H"—allegations the court already determined "founder on the absence of individual allegations that make the causation allegations plausible," Dkt. 1044 at 47. *See WHB 318*, Am. Compl. ¶ 22; *WHB 823*, Am. Compl. ¶ 15; *C.L.*, Am. Compl. ¶ 34. "[C]ourts need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;' and (2) only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the

---

[45] *C.L.*, Am. Compl. ¶¶ 36-37 (VA & MD law); *J.E.*, Am. Compl. ¶ 31 (MI law); *WHB 318*, Am. Compl. ¶¶ 23-24 (NC & SC law) (NC & SC law); *WHB 823*, Am. Compl. ¶¶ 16-17 (NC law); *WHB 1898*, Am. Compl. ¶¶ 27-31 (MA law); *D.J.*, Am. Compl. at 3 (IN law) (alleging design defect only.)

[46] *Johnson v. Chrysler Corp.*, 254 N.W.2d 569, 571 (Mich. Ct. App. 1977) ("In Michigan, two theories of recovery are recognized in product liability cases; negligence and implied warranty. Strict liability has not been recognized as a third theory of recovery."); *Bryant v. Adams*, 448 S.E.2d 832, 845 (N.C. App. 1994) ("North Carolina expressly rejects strict liability in products liability actions"); *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 530 S.E.2d 321, 325-26 (N.C. Ct. App. 2000) (recovery for a North Carolina products liability claim "is premised on either negligence or on the contract principles of warranty"); *Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 15 (1st Cir. 2001) ("Actions under Massachusetts law for breach of the implied warranty of merchantability are the functional equivalent of strict liability in other jurisdictions") (cited by *Haglund v. Philip Morris, Inc.*, 847 N.E.2d 315, 321-22 (Mass. 2006)).

[47] *See Sardis*, 10 F.4th at 280 ("To prevail on either theory, a plaintiff must prove '(1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands.'").

[48] *C.L.*, Am. Compl. ¶¶ 36-37 (VA & MD law) (VA & MD law); *J.E.*, Am. Compl. ¶ 31 (MI law); *WHB 318*, Am. Compl. ¶¶ 23-24 (NC & SC law); *WHB 823*, Am. Compl. ¶¶ 16-17 (NC law); *WHB 1898*, Am. Compl. ¶¶ 27-31 (MA law).

pleader's entitlement to relief can survive a motion to dismiss." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (affirming dismissal).

### C.     Plaintiffs Fail To State A Claim For Vicarious Liability

#### 1.     *Plaintiffs fail to allege torts within the scope of employment*

Several Plaintiffs allege that Uber is vicariously liable for drivers' alleged intentional torts (including battery, assault, false imprisonment, and intentional infliction of emotional distress).[49] Under any applicable doctrine, vicarious liability requires that an employee's tortious conduct fall within his "scope of employment." *See* Dkt. 1044 at 15 (respondeat superior); *id.* at 24 (apparent agency); *see also Hill v. Honey's, Inc.*, 786 F. Supp. 549, 551 (D.S.C. 1992) ("In order for an employer to be liable for the torts of its employee, the employee must be acting within the scope of his employment."); *Longworth v. United States*, 2022 WL 4587520, at *6 (E.D.N.C. Sept. 29, 2022) (NC law) (dismissing because "defendant cannot be held vicariously liable for tortious acts taken outside the scope of employment").[50]

To be clear: the alleged assailants were ***not*** employees—but that does not matter, because

---

[49] Any respondeat superior claims under Georgia law and apparent agency claims under Georgia and Virginia law have already been dismissed without leave to amend. *See* Dkt. 1932 (stipulation). The parties met and conferred about the three amended complaints that appear to be at odds with that stipulation: *C.L.*, Am. Compl. at 4 (apparent agency under VA law); *T.L.*, Am. Compl. at 3-4 (GA vicarious liability); *WHB 407*, Am. Compl. at 3-4 (GA vicarious liability). Plaintiffs represented that they will withdraw the Virginia apparent agency claim alleged in *C.L.*, Am. Compl. at 4. And Plaintiffs confirmed they do not intend to plead traditional vicarious liability theories (respondeat superior, apparent agency, or ratification) under Georgia law, but instead pleaded "Additional Allegations in Support of Vicarious Liability" in support of their "E" claim for "Common Carrier's Non-Delegable Duty To Provide Safe Transportation." Uber disputes that any alleged common-carrier duties support a form of "vicarious liability" under Georgia law, but pursuant to the parties' stipulation, Uber does not now move to dismiss "E" claims under Georgia law.

[50] *Badger v. Paulson Inv. Co.*, 803 P.2d 1178, 1186 (Or. 1991) ("We have held that the scope of employment includes acts of an agent that are within the apparent authority of the agent, if a third person acted in reliance on the apparent authority."); *Eads v. Borman*, 277 P.3d 503, 509-10 (Or. 2012) ("In general, a principal is liable for all torts committed by its employees while acting within the scope of their employment. But a principal ordinarily is not liable in tort for physical injuries caused by the actions of its agents who are not employees . . . [unless] the principal 'intended' or 'authorized the result [ ]or the manner of performance of that act.'" (internal citations omitted)); *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 122 (N.C. App. 1986) (discussing same); *Fernander v. Thigpen*, 293 S.E.2d 424, 426 (S.C. 1982) (treating scope of employment as part of apparent agency analysis).

1    Plaintiffs *A.G.*, *WHB 318,* and *WHB 823* fail to allege any misconduct falling within the scope of

2    any employment relationship under the relevant states' laws, i.e., North Carolina, South Carolina,

3    or Oregon.[51]

4        **North Carolina and South Carolina.**  Under the "the traditional common law rule," an

5    employee's or agent's "intentional torts can only be considered 'within the scope of employment'

6    where the alleged employee acts to serve the employer's interests." Dkt. 1044 at 15.  Plaintiffs

7    *WHB 318* and *WHB 823* allege vicarious liability for incidents that occurred in North Carolina or

8    South Carolina[52]—both of which apply this traditional rule limiting the "scope of employment" to

9    acts "in furtherance of the principal's business and for the purpose of accomplishing the duties of

10    his employment." *Medlin v. Bass*, 398 S.E.2d 460, 463 (N.C. 1990) (affirming summary

11    judgment against vicarious liability); *Frazier v. Badger*, 603 S.E.2d 587, 591 (S.C. 2004)

12    (applying same principles).  Simply because an assault occurs while a driver is conducting

13    transportation does not make it "in the [alleged] employer's interests" as employers do not

14    contemplate that individuals conduct intentional crimes in the course and scope of their alleged

15    employment. To illustrate: On one hand, a reasonable jury could infer that a store-foreman acted

16    to serve his employer's interest, within the scope of his employment, when he committed an

17    assault "to coerce [plaintiff] to pay a debt owed to the master," *Crittenden v. Thompson-Walker*

18    *Co.*, 341 S.E.2d 385, 387-88 (S.C. Ct. App. 1986); *Edwards v. Akion*, 279 S.E.2d 894, 899 (N.C.

19    Ct. App. 1981), *aff'd*, 284 S.E.2d 518 (N.C. 1981) (similar, municipal sanitation worker assaulted

20    _____

21    [51] *See A.G.* (OR law); *WHB 318* (NC & SC law); *WHB 823* (NC law).  Like *T.L.* and *WHB 407*, *supra* note 49, *WHB 318* and *WHB 823* do ***not*** plead "G" claims for "Vicarious Liability," but do

22    plead "Additional Allegations in Support of Vicarious Liability."  To the extent Plaintiffs purport to plead a common-carrier theory of vicarious liability under Claim "E," that is inconsistent with

23    applicable state law, as well as the face of their pleadings—which ***do not*** plead "Additional Allegations" in support of "Common Carrier" liability.  But regardless, ***any*** vicarious liability

24    claim must be dismissed for lack of alleged action within the scope of any employment relationship—whether under "common carrier," respondeat superior, apparent agency, or some

25    other vicarious-liability theory. *See Hill*, 786 F. Supp. at 551; *Longworth*, 2022 WL 4587520, at *6.

26
      [52] WHB 318 alleges an injury that occurred during an interstate ride, so the situs of the tort is not

27    clear.  For purposes of the motion to dismiss, the court need not decide whether North Carolina or South Carolina law governs, however, because there is no conflict on the scope of employment

28    rule.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

resident when picked up her trash after argument about whether obligated to take away certain trash from her home), but on the other hand, a school principal who "summoned the minor plaintiff to his office to discuss her truancy problem" during school hours was "*[c]learly*" acting outside the scope of employment as a matter of law, and "advancing a completely personal objective" by "proceeding to assault her sexually." *Medlin*, 398 S.E.2d at 464 (emphasis added).

"Intentional acts, such as sexual harassment, are rarely considered to be within the scope of employment." *Phelps v. Vassey*, 437 S.E.2d 692, 695 (N.C. Ct. App. 1993); *see Doe 1 v. Varsity Brands, LLC*, 2023 WL 5901256, at *4 (D.S.C. Sept. 11, 2023) ("South Carolina state courts and courts within the District of South Carolina have uniformly held that an employee's sexual misconduct falls outside the scope of employment."). "[I]f an assault is committed by the servant, not as a means or for the purpose of performing the work he was employed to do, but in a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own, then the master is not liable." *Medlin*, 398 S.E.2d at 464 (rejecting vicarious liability as a matter of law for employee's sexual assault).[53]  Applying these principles, a South Carolina court dismissed a vicarious-liability claim seeking to hold Uber liable for a delivery driver's violent criminal conduct, noting it was "simply inconceivable that such misconduct . . . could ever be in furtherance of, or to serve [Uber's] interests." *Robinson v. Uber Techs., Inc., et al.*, No. 2022CP4000496 (Ct. of Comm. Pls., Richland Cnty., Feb. 14, 2023).

Sexual assaults likewise epitomize action committed for personal reasons associated solely with the employee's own gratification, entirely disconnected from the scope of his employment. *See Phelps*, 437 S.E.2d at 695; *Padgett v. S.C. Ins. Reserve Fund*, 531 S.E.2d 305, 307 (S.C. Ct. App. 2000) (teacher's sexual assault of student outside scope of employment

---

[53] *Hendrix v. Town of W. Jefferson*, 847 S.E.2d 903, 907-08 (N.C. App. 2020) (affirming dismissal for failure to allege acts within scope of employment); *Garnett v. Remedi Seniorcare of Virginia, LLC*, 892 F.3d 140, 142 (4th Cir. 2018) (same, VA law); *Doe 1*, 2023 WL 5901256, at *4 (same, SC law); *Longworth*, 2022 WL 4587520, at *5 (granting motion to dismiss because employee "step[s] outside of the scope of her employment" when committing sexual assault); *Wegner v. Delly-Land Delicatessen, Inc.*, 153 S.E.2d 804, 809 (N.C. 1967) (a bus boy's attack on customer did not occur within the scope of his employment because arose from "undisclosed, personal motive").

1    because he was "not providing instruction, acting in his capacity as a faculty member, or

2    furthering [the appellant]'s education"); *Thigpen v. United States*, 618 F. Supp. 239, 245 (D.S.C.

3    1985) (granting motion to dismiss because sexual assault outside scope of employment), *aff'd*,

4    800 F.2d 393 (4th Cir. 1986).

5        Under this rule, the sexual assaults Plaintiffs *WHB 318* and *WHB 823* allege fall outside

6    the scope of any purported employment as a matter of law.  Plaintiffs allege no facts

7    "suggest[ing] that [any driver] was acting other than in his own interests" when committing an

8    assault against a Plaintiff.  *Phelps*, 437 S.E.2d at 695; *see also Doe v. S.C. State Budget &*

9    *Control Bd.*, 494 S.E.2d 469, 473 (S.C. Ct. App. 1997) ("[N]o cogent argument can be made that

10   Roberson was furthering the business of his employer at the time he sexually assaulted

11   Appellants.").  On the contrary, the drivers' alleged actions directly contravened Uber's business

12   interests, including its many efforts to reduce the risk of assault and enhance rider safety.

13       **Oregon**.  In addition to torts committed within the scope of employment, Oregon law

14   recognizes vicarious liability for intentional torts that are "a direct outgrowth" of conduct within

15   the scope of employment where such conduct was "a necessary precursor" for the tort. *Doe v.*

16   *Holy See*, 557 F.3d 1066, 1082 (9th Cir. 2009).  But to meet this test, "[t]he employment

17   relationship must do more than '[bring] the tortfeasor and the victim together in time and place.'"

18   *Doe v. Congregation of the Priests of the Sacred Heart, Inc.*, 2024 WL 5186640, at *6 (D. Or.

19   Dec. 20, 2024) (quoting *Fearing v. Bucher*, 977 P.2d 1163, 1168 (Or. 1999)).  Rather, the

20   assailant must bear a "***position of authority***" or "***fiduciary position***" toward plaintiff, which the

21   assailant gained through his employment with defendant.  *Holy See*, 557 F.3d at 1083 (emphases

22   added) ("position of authority"); *Fearing*, 977 P.2d at 1168 (assailant "us[ed] and manipulat[ed]

23   his fiduciary position, respect and authority"); *Sacred Heart*, 2024 WL 5186640, at *7 ("authority

24   as the plaintiff's advisor and proctor").

25       Examples of such "trust relationship[s]," that could support the "necessary precursor"

26   test," include: that between a troop leader and his scouts, *Lourim v. Swensen*, 977 P.2d 1157,

27   1159 (Or. 1999), or a priest and his parishioners, *Fearing*, 977 P.2d at 1167-68, or a police-

28   supervisor and his training cadets, *Barrington ex rel. Barrington v. Sandberg*, 991 P.2d 1071,

1073 (Or. Ct. App. 1999) (police cadet supervisor's assault during recreational trip he planned for cadets); *see also M.N.O. v. Magana*, 2006 WL 559214, at *5 (D. Or. Mar. 6, 2006) (fact issue existed whether police officer's assault fell within scope of employment where, "but for the power of authority [he] possessed by virtue of his uniform and patrol vehicle, he would not have been able to stop [plaintiff] to initiate the alleged assaults"), *on partial reconsideration on other grounds*, 2006 WL 1313374 (D. Or. May 3, 2006).

Those "trust relationships" are nothing like the driver-rider relationship alleged here. Independent drivers are "not hired to cultivate an intimate relationship with [riders], and an intimate relationship with [riders] would not further the interests of [Uber]." *Branford v. Washington Cnty.*, 2019 WL 1957951, at *22 (D. Or. May 2, 2019) (rejecting vicarious liability for sergeant's battery of sheriff's deputy). Instead, by allegedly matching drivers to riders, Uber's conduct amounts to nothing more than "br[inging] the tortfeasor and the victim together in time and place." *Fearing*, 977 P.2d at 1168; *see also Doe*, 2024 WL 5186640, at *6. Such allegations do not suffice to state a claim of vicarious liability under Oregon law.

### 2.    *Failure to allege ratification*

Three Plaintiffs allege Uber is vicariously liable for the intentional torts of its drivers because Uber impliedly "ratified" those acts by failing to "deactivate" the drivers.[54] But no Plaintiff plausibly alleges that Uber failed to take reasonable steps after receiving these Plaintiffs' reports.

"Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which . . . is to treat the act as if originally authorized by him." *Rakestraw v. Rodrigues*, 500 P.2d 1401, 1404-05 (Cal. 1972). "A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred." *Id.* at 1405.

Implied ratification of an agent's unauthorized acts has two essential elements: (a) actual

---

[54] *A.R.2*, Am. Compl. ¶¶ 25-27, 42; *C.L.*, Am. Compl. ¶¶ 12-13, 29-33; *WHB 1898*, Am. Compl. ¶ 26.

1    or constructive knowledge (i.e., "willful ignorance") of the agent's acts, and (b) conduct by the

2    principal amounting to approval of those acts. Dkt. 1044 at 29 (CA law), 29-30 (TX law);

3    *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) ("actual

4    knowledge" of "material facts" or "willful ignorance" can support ratification); CACI Ins. No.

5    3710 (Elements of Ratification); *Jacobson v. Kirn*, 64 S.E.2d 755, 760 (Va. 1951) (knowledge

6    element); *A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 478 (Va.

7    2019) (affirming dismissal of ratification absent conduct that "impl[ies] approval, confirmation,

8    and acceptance"); *Lee v. Pfeifer*, 916 F. Supp. 501, 508 (D. Md. 1996) (unauthorized acts requires

9    ratification "with the knowledge of all material facts" (quoting *Globe Indem. Co. v. Victill Corp.*,

10    119 A.2d 423, 427 (Md. 1956)); *id.* at 508 n.12 (conduct sufficient to "manifest[] . . . an election

11    . . . to treat the act as authorized); *Inn Foods, Inc. v. Equitable Co-op. Bank*, 45 F.3d 594, 597 (1st

12    Cir. 1995) (in Massachusetts, "ratification can be implied when a principal with knowledge

13    makes no effort to repudiate a transaction"); *see also Kristensen v. Credit Payment Services Inc.*,

14    879 F.3d 1010, 1014 (9th Cir. 2018) ("The principal is not bound by a ratification made without

15    knowledge of material facts about the agent's act unless the principal chose to ratify with

16    awareness that such knowledge was lacking.").

17        The conduct element may be satisfied where, "after being informed of the employee's

18    actions," the employer "does not fully investigate and fails to repudiate the employee's conduct

19    by redressing the harm done and punishing or discharging the employee," but the standard is

20    high—plaintiffs must allege conduct "deliberately indifferent to [plaintiff's] complaints." *Garcia*

21    *ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1202 (E.D. Cal. 2009)

22    (quotations and citation omitted) (dismissing ratification claim). Accordingly, "an employer need

23    not always terminate an employee in order to avoid ratification." *Id.*; *Church of God in Christ,*

24    *Inc.*, 831 S.E.2d at 479 & n.20 (mere "failure to discharge" does not suffice for ratification).

25        Here, to adequately allege ratification Plaintiffs must allege facts supporting (a) the

26    knowledge element—i.e., that Uber "knew about [a] given incident," or willfully ignored it; and

27    (b) the conduct element, i.e. "actions Uber took with respect to particular drivers" that manifest

28    an intent to treat the acts as authorized (ratifying conduct). Dkt. 1044 at 30.

1   No Plaintiff alleges that Uber responded with deliberate indifference after gaining

2   knowledge of a complaint against an independent driver:

3   *C.L.* alleges that she "reported the incident to Uber" on August 28, and Uber "waitlisted"

4   the driver, then "reactivated" his account after its "careful review of th[e] information available."

5   *C.L.*, Am. Compl. ¶¶ 30-31.  Plaintiff filed a lawsuit a month later on September 27, and Uber

6   deactivated the driver within days.  *Id.* ¶¶ 32-33.

7   *WHB 1898* alleges only that the plaintiff "reported the incident to Uber," and that Uber

8   "permitted the driver to remain on the platform" until learning of her lawsuit.  That single,

9   conclusory allegation, which does not specify what she reported to Uber or how it responded,

10  fails to plausibly establish Uber's knowledge of any misconduct or indifference to her complaint.

11  *WHB 1898*, Am. Compl. ¶ 26.

12  Finally, *A.R.2* likewise includes just one allegation to support her ratification claim, that

13  "Uber did not deactivate" the independent driver, "even after Plaintiff filed a lawsuit."  *A.R.2*,

14  Am. Compl. ¶ 42.  Plaintiff alleges no facts about what Uber knew of her driver's conduct, when

15  Uber first learned of her complaints, and whether Uber took any action in response.  The mere

16  fact that the driver was not deactivated "even after [her] lawsuit" was first filed does not plausibly

17  support an inference that Uber acted with responded to a complaint with deliberate indifference.

18  *Garcia*, 627 F. Supp. 2d at 1203 (mere non-termination does not suffice to adequately allege

19  ratification).

20  Collectively, Plaintiffs allegations show that Uber investigated reports whenever it

21  received actual or inquiry notice of misconduct, *C.L.*, 3:23-cv-04972, Am. Compl. ¶¶ 30-31,

22  waitlisted drivers pending its investigation, *id.* ¶¶ 32-33, and deactivated drivers when necessary

23  to repudiate credible allegations of misconduct, *id.*; *WHB 1898*, Am. Compl. ¶ 26.  Such

24  allegations cannot establish that Uber "learned of the [driver's bad act] and affirmed it, and thus

25  made it [Uber's] own."  *Shultz Steel Co. v. Hartford Accident & Indem. Co.*, 187 Cal. App. 3d

26  513, 519 (1986).

27  **D.      WHB 1876, WHB 1898, And WHB 407 Fail To Allege Any Tort Claims**

28  Three Plaintiffs—WHB 1876 (IL), WHB 1898 (MA), and WHB 407 (GA)—fail to state

35

1    any tort claim.  Their amended complaints must be dismissed.

2                    1.    *Failure to allege any physical harm*

3            WHB 1876, WHB 1898, and WHB 407 allege exclusively nonphysical harm, so their

4    negligence, common-carrier, and product-liability claims must be dismissed in full.[55]

5            Under Illinois, Massachusetts, and Georgia law, personal-injury claims for negligence or

6    product liability require a physical harm.  *See, e.g.*, *Bohaboy v. Baxter Int'l, Inc.*, 2024 IL App

7    (1st) 230868, ¶ 20 (dismissing negligence claim that alleged "no physical harm"); *Sondag v.*

8    *Pneumo Abex Corp.*, 55 N.E.3d 1259, 1263 (Ill. App. Ct. 2016) ("Physical harm is an essential

9    element of any action for products liability . . ., regardless of whether the action sounds in

10    negligence . . . or strict liability." (quotations and citations omitted) (applying Restatement

11    (Second) of Torts §§ 388, 402A (1965)).[56]  The same principle applies to claims for breach of any

12    "heightened duty of care as a common carrier," because "all negligence claims, regardless of their

13    standard of care, are subject to the physical impact rule."  *Robinson v. AirTran Airways, Inc.*,

14    2009 WL 3822947, at *3 (N.D. Ga. Nov. 13, 2009).[57]

15            These Plaintiffs' tort claims violate the physical impact rule.  *WHB 1876*, for example,

16    alleges that an independent driver made lewd comments, "asked Plaintiff uncomfortable

17    questions about sex," and "suggested Plaintiff have sex with one of the male passengers because

18    the driver would like to watch."  *WHB 1876*, Am. Compl. ¶¶ 12-15 (IL); *see also WHB 1898*,

19    Am. Compl. ¶¶ 14-19 (MA) (alleging nonphysical inappropriate commentary); *WHB 407*, Am.

20    Compl. ¶¶ 8-11 (GA)  (similar, "weird conversation").  The alleged comments made Plaintiffs

21    emotionally uncomfortable.  *WHB 1876*, Am. Compl. ¶¶ 15-16 ("uneasy the whole ride"); *see*

---

[55] Only *WHB 1898* and *WHB 407* allege common-carrier liability.  *Jane Roe CL 68*'s negligence claim must be dismissed for the same reason.  Her original short-form complaint mentions physical harm in only conclusory and disjunctive terms, and she has declined to amend.  *See Jane Roe CL 68*, Compl. ¶ C.1 ("The Plaintiff was sexually assaulted, harassed, battered, **or** otherwise attacked by an Uber driver in connection with a ride facilitated on the Uber platform in Travis County, Texas on September of 2022." (emphasis added)).

[56] Appendix D.8.

[57] Alternatively, common-carrier liability fails because Plaintiffs do not adequately allege any actionable tortious conduct by an independent driver.  *See Gallant by Gallant v. Gorton*, 581 F. Supp. 909, 910 n.1 (D. Mass. 1984); *see infra*, Section IV.D.2.

1    *also WHB 1898*, Am. Compl. ¶ 19 (Plaintiff "intimidated"); *WHB 407*, Am. Compl. ¶ 9 (Plaintiff

2    "did not care to hear" comments).  But none of these Plaintiffs alleges any physical harm,

3    requiring dismissal of Plaintiffs' negligence and product-liability claims, as well as the vicarious

4    liability claims resting on the same (non-tortious) driver conduct.

5              2.    *Failure to allege underlying tortious conduct by driver*

6         Plaintiff WHB 1898 also asserts vicarious liability for assault, false imprisonment, and

7    intentional infliction of emotional distress (IIED) based on a driver's inappropriate looks,

8    comments, and behavior after her ride ended.  *WHB 1898*, Am. Compl. ¶¶ 14-25 (MA).  Because

9    vicarious liability "is the imposition of liability on one person for the actionable conduct of

10    another, based solely on a relationship between the two persons," *Commonwealth v. Martins*

11    *Maint., Inc.*, 190 N.E.3d 1099, 192 n.15 (Mass. App. Ct. 2022), "plaintiff is . . .  required to prove

12    an underlying tort," *Snyder v. Collura*, 812 F.3d 46, 52 (1st Cir. 2016) (MA law).

13         Plaintiff's allegations of inappropriate looks and comments do not state a claim for assault

14    or false imprisonment, both of which require the use or threat of physical force.  *Compare WHB*

15    *1898*, Am. Compl. ¶¶ 14-19 ("driver looked Plaintiff up and down," told her that she "smelled

16    really good" and that her legs were "so nice," asked about her romantic partners, said he would

17    "never leave her alone" if they were involved, and lingered outside her home for an unspecified

18    time), *with Com. v. Gorassi*, 733 N.E.2d 106, 110 (Mass. 2000) ("[A]n assault is defined as either

19    an attempt to use physical force on another, or as a threat of use of physical force."), *and*

20    *Gallagher v. S. Shore Hosp., Inc.*, 197 N.E.3d 885, 909 (Mass. App. Ct. 2022) ("To establish a

21    claim for false imprisonment, a plaintiff must show that the defendant 'impos[ed] by force or

22    threats an unlawful restraint upon freedom of movement.'").

23         Likewise, to plead IIED Plaintiffs must allege intentional conduct that is "extreme and

24    outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized

25    community."  *Conley v. Romeri*, 806 N.E.2d 933, 937 (Mass. App. Ct. 2004).  "The standard for

26    making a claim of intentional infliction of emotional distress is very high."  *Soni v. Wespiser*, 239

27    F. Supp. 3d 373, 390 (D. Mass. 2017).  "[L]iability cannot be predicated upon 'mere insults,

28    indignities, threats, annoyances, petty oppressions, or other trivialities,' nor even is it enough 'that

1   the defendant has acted with an intent which is tortious or even criminal, or that he has intended

2   to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a

3   degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.*

4   (dismissing IIED claim based on finding "potential employers and t[elling] vicious lies about

5   [plaintiff] because she's a woman and a minority, which cost her two jobs" (ultimately quoting

6   Restatement (Second) § 46)).  Inappropriate comments of a sexual nature, while "offensive,"

7   "simply do not rise, as a matter of law, to this high standard."  *Montell v. Diversified Clinical*

8   *Servs., Inc.*, 757 F.3d 497, 510 (6th Cir. 2014) (rejecting IIED based on supervisor's harassing

9   comments about his "sexual arousal").

10         *WHB 1898*'s failure to allege an underlying tort requires dismissal of her vicarious

11  liability claim.[58]

12  **V.    CONCLUSION**

13         For the foregoing reasons, Uber respectfully requests that the Court dismiss with

14  prejudice:

15         1.    The fraud and misrepresentation claims of *A.R.2*, *A.G.*, *B.L.*, *C.L.*, *J.E.*, *Jaylynn Dean*,

16               and *LCHB128*;

17         2.    The vicarious-liability claims of *WHB 318*, *WHB 823*, and *A.G.* (including respondeat

18               superior, apparent agency, or any other theory); the ratification claims of *A.R.2*, *WHB*

19               *1898*, and *C.L.*; and the apparent agency claims of *C.L.*, *see* Dkt. 1932; *supra* note 49;

20         3.    The product-liability claims based on allegations about "Safe Ride Matching"[59] and

21

22

23

24  [58] *WHB 407* also pleads "additional allegations in support of vicarious liability claims," which
    arise under Georgia law.  *WHB 407*, Am. Compl. at 3-4.  Those claims must be dismissed.  Dkt.
25  1932; *see supra* note 49.

26  [59] The Plaintiffs who assert these claims are: (i) *WHB 1898*, Am. Compl. ¶¶ 32-37; (ii) *A.R.1*,
    Am. Compl. ¶¶ 32-39; (iii) *A.R.2*, Am. Compl. ¶¶ 43-50; (iv) *B.L.*, Am. Compl. ¶¶ 50-57; (v)
27  *Jane Doe QLF 0001*, Am. Compl. ¶¶ 26-31; (vi) *Jaylynn Dean*, Am. Compl. ¶¶ 54-61; (vii)
    *LCHB128*, Am. Compl. ¶¶ 31-38; (viii) *T.L.*, Am. Compl. ¶¶ 30-37; and (ix) *WHB 1876*, Am.
28  Compl. ¶¶ 19-24.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

"Gender Matching,"[60] as well as "In-App Ride Recording" claims lacking allegations of causation[61]; and all inadequately alleged negligent design defect and breach of warranty claims[62]; and

4. The *WHB 1876*, *WHB 1898*, and *WHB 407* complaints in their entirety for the reasons stated.

In addition, Uber requests dismissal of *Jane Roe CL 68*'s claims for negligent entrustment, fraud and misrepresentation, negligent infliction of emotional distress, breach of common-carrier duty and other non-delegable duties, vicarious liability, product liability, and UCL injunctive relief under Court's prior order on Texas-law claims, Dkt. 1044, and her negligence claim, because she alleges physical harm in her unamended complaint in only conclusory terms. *Jane Roe CL 68*'s unamended complaint should be dismissed in its entirety.

Dated:  April 15, 2025                                    **O'MELVENY AND MYERS LLP**


                                                         By:  /s/ *Sabrina H. Strong*


                                                         **KIRKLAND & ELLIS LLP**
                                                         LAURA VARTAIN
                                                         ALLISON M. BROWN
                                                         JESSICA DAVIDSON

                                                         **O'MELVENY AND MYERS LLP**
                                                         SABRINA H. STRONG
                                                         JONATHAN SCHNELLER

---

[60] The Plaintiffs who assert these claims are: (i) *WHB 1898*, Am. Compl. ¶¶ 38-43; (ii) *A.R.1*, Am. Compl. ¶¶ 40-45; (iii) *D.J.*, Am. Compl. ¶¶ 14-19; (iv) *A.R.2*, Am. Compl. ¶¶ 51-56; (v) *B.L.*, Am. Compl. ¶¶ 58-63; (vi) *C.L.*, Am. Compl. ¶¶ 38-43; (vii) *J.E.*, Am. Compl. ¶¶ 32-37; (viii) *Jane Doe QLF 0001*, Am. Compl. ¶¶ 32-37; (ix) *Jaylynn Dean*, Am. Compl. ¶¶ 62-67; (x) *K.E.*, Am. Compl. ¶¶ 19-24; (xi) *LCHB128*, Am. Compl. ¶¶ 39-44; (xii) *T.L.*, Am. Compl. ¶¶ 38-43; (xiii) *WHB 318*, Am. Compl. ¶¶ 25-30; (xiv) *WHB 407*, Am. Compl. ¶¶ 21-26; and (xv) *WHB 1486*, Am. Compl. ¶¶ 15-20.

[61] The Plaintiffs who assert these claims are: (i) *A.G.*; (ii) *K.E.*; (iii) *A.R.2*; and (iv) *Jaylynn Dean*.

[62] The Plaintiffs who assert these claims are: (i) *C.L.*; (ii) *J.E.*; (iii) *WHB 318*; (iv) *WHB 823*; (v) *WHB 1898*; and (vi) *D.J.*

39

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SHOOK, HARDY & BACON, LLP**
PATRICK L. OOT, JR.
ALYCIA A. DEGEN
MICHAEL B. SHORTNACY
CHRISTOPHER V. COTTON

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS