**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor (via videoconference)<br>Date: April 18, 2025<br>Time: 10:00 a.m. |

# JOINT CASE MANAGEMENT STATEMENT

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively "Uber"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for April 18, 2025.

**Proposed Agenda**

- **I. Status of Case Filings**
- **II. Bellwether Process and Case Schedule**
- **III. Hearing Schedule for Rule 12 Motions in Bellwether Cases**
- **IV. Bellwether Deposition Protocol**
- **V. Defendants' Motion to Seal Portions of Amended Bellwether Complaints**
- **VI. General Discovery Updates**
- **VII. Settlement Master**
- **VIII. Next Case Management Conference**

## I. Status of Case Filings

**Number of MDL Case Filings**

As of April 14, 2025 there are currently 2,000 cases in this MDL. Since the last case management conference on March 28, 2025, 72 new cases have been filed.

**Status of JCCP**

There are approximately 619 cases pending in the JCCP.

**Other Cases and Proceedings**

Defendants have provided a current list of civil actions and government investigations arising from sexual assault on the Uber platform in which Uber is a defendant, attached as Exhibit A.

## II. Bellwether Process and Case Schedule

On December 12, 2024, the Court issued PTO 21: Bellwether Selection Process and Scheduling Order. ECF No. 1950. This Order set forth the case schedule, including a June 16,

2025 deadline for the substantial completion of fact discovery, a July 3, 2025 deadline for parties to submit letter briefs identifying the order in which the Bellwether Cases should be tried, including wave assignments if the Court orders waves to be formed, and a September 22, 2025 close of all discovery. ECF No. 1950 at 3. The parties submitted letter briefs on whether the Bellwether Cases should be tried individually or in waves on April 1. ECF No. 2684, 2685. The parties have received the Court's Pretrial Order No. 24 and are prepared discuss the Court's tentative proposed trial waves. Preliminary comments of the parties are below.

**A. Plaintiffs' Position**

PTO 24 sets out a sensible alternative to consolidated trials. Plaintiffs support the designated waves and case order. Wave 1 includes two California cases for which N.D. Cal. venue will not be disputed, and two more (the Arizona cases) that the Court can most easily travel to try should a change of venue be necessary. Wave 1 also includes a broad representation of the different claims and product defects alleged in the bellwether complaints. Uber does not provide a viable alternative to PTO 24; it does not identify any cases that should be advanced or pushed—just asks the Court to arbitrarily pick some—and advocates for the status quo despite the apparent benefits of identifying the first group of trials now and staggering case-specific discovery.

Previously, Plaintiffs advocated for advancing (from July 3) the date for picking the first trial case, and staggering fact and expert discovery to reflect trial dates. Given that the Court has proposed proceeding in waves, Plaintiffs now suggest the following. *First*, the Court should stagger the remaining dates in the schedule (substantial completion of fact discovery, expert discovery, close of discovery, summary judgment) by trial wave. This will ensure that the parties meet the Court's requirement of timely preparing each case in each wave for trial. Plaintiffs propose that the parties provide joint or competing proposals within 5 days of the April 18 CMC. *Second*, since the Court has reduced the number of candidates for the first trial, the deadline for advocating the order of Wave 1 trials need not be advanced from July 3.

Uber objects to the Court selecting trial waves now, rather than waiting until July. But Uber never explains why more discovery is needed for the Court to select trial waves. Each Plaintiff has indicated an intent to proceed. The use of waves not only allows the parties to

stagger discovery, but also makes any plaintiff-specific issues that come up in the next two months immaterial, because the Court has instructed that every case will be ready for trial on the same date. And the parties have already had their say as to which cases are tried: each side picked 10. Plaintiffs understand the Court's proposal to be that every one of the 20 cases will eventually be tried, so arguing about which subset goes first is not very productive.

Uber also objects that the initial two waves do not include cases selected by Uber and that the injuries do not reflect the "taxonomies" of the MDL. But Uber does not advise which case (or cases) should be advanced, and which should be pushed to later waves. Nor does it argue that its picks are more representative, or even representative at all. Regardless, each of the 20 cases will be tried, so the particular order is not that important. Arbitrarily including defense picks only gives Uber an incentive to try to settle the Plaintiff picks so that Uber's picks—cases it presumably views as weaker—are tried. There is no basis to assume that Uber's self-serving "taxonomy" is a reasonable way to think about the variation of injuries in the MDL. More fundamentally, the nature of the injury does not go to the core issues this MDL can provide information about: Uber's conduct and causation. *See* 11/3/23 H'rg Tr. at 19:25-20:3 ("In this case it seems to me that damages are sort of highly individualized").

Uber's request to maintain the status quo frustrates, rather than advances the bellwether process. Uber complains that it has not yet deposed any Plaintiffs, but also objects to the Court providing relief by staggering discovery. It does not make sense to front load all Plaintiffs' depositions in all cases rather than focus on completing discovery in the first wave. Uber holds the keys for when Plaintiff depositions will be scheduled. At a minimum, Uber first will have to complete or certify it has completed over-due DFS productions (including things like audio recording of Plaintiffs). It must do so by April 30, per this Court's Order, but it could do so sooner. Additionally, Uber could expedite production of the other clearly relevant materials regarding Plaintiffs so that (1) Plaintiffs can be adequately prepared on the topics Uber may ask about; and (2) to avoid unfair surprise. Rather than streamline the number of cases where they can focus on prioritizing and advancing production of materials to facilitate earlier depositions, Uber seeks delay, process and court intervention.

**B. Defendants' Position**

Defendants respectfully submit that the Court's original proposal, which instructed the Parties to complete fact discovery in the 20 bellwether cases (*See* 2/28/25 H'rg Tr. at 23: 1-3), followed by briefing on case selection and ordering of cases on July 3, would provide for the most informative bellwether selection process. At this point, Defendants have not had the opportunity to depose any Bellwether Plaintiffs or conduct other critical fact discovery– fourteen Bellwether Plaintiffs have refused to provide deposition dates at all, and of the remaining six, none has offered a date sooner than May 20.[1] Nor has the Court ruled on the pending motion to dismiss, which implicates many of the liability theories and challenged safety features, or the forthcoming motions for transfer.

To the extent the Court nonetheless believes it is prudent to proceed with setting bellwether pools now, Defendants are concerned that the current proposal would not be representative of the MDL pool, undermining the very purposes of a bellwether trial procedure.

First and foremost, seven of the eight cases in Waves 1 and 2 are Plaintiff selections. This means the Waves are heavily skewed toward cases selected by Plaintiffs because they think those are the strongest cases in the pool.

Second (and relatedly), the cases do not proportionally reflect the taxonomy of the case pool more generally. Three of the eight cases in the first two waves (37.5%) involve alleged penetration, more than double the percentage of such cases in the MDL pool. *See* ECF No. 1934, at 31. Two of the eight (25%) involve alleged kissing, three times the percentage of such cases in the MDL pool. *Id.* Conversely, only two of the eight (25%) involve allegations of touching, but such claims reflect more than half of all cases in the MDL. *Id.* The goal of bellwether trials is to provide important insights on the issues and values presented in these cases for all

[1] The failure to provide timely deposition dates will be addressed with Judge Cisneros under PTO 8. Plaintiffs have attempted to justify their delay in providing deposition dates on the ground that Defendants' document productions in response to recently served requests are not yet complete, but there is no legitimate reason to tie the two together. The parties never agreed that one must be completed before the other is begun. In any event, Defendants' DFS productions were substantially complete in each Bellwether case long ago, and Defendants are on track to meet the April 30 deadline to certify completion of those productions.

parties. Prioritizing cases that are not reflective of the overall pool is not informative and defeats the purpose and goal of bellwether trials.

In order to address these issues, Defendants propose a more balanced approach: specifically, that Waves 1 and 2 each consist of 4 cases – and that half the cases in the two Waves consist of Defendants' picks. Courts administering MDL proceedings often sequence bellwether trials to "rotat[e]" between selections made by the plaintiffs and those made by the defendants. *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 791 (E.D. La. 2007); *see, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.,* 2016 WL 1441804, at *3 (S.D.N.Y. Apr. 12, 2016) (setting six "Early Trial Cases," consisting of three plaintiff and three defense selections). Such an approach ensures that the trial pool is not skewed in one direction or the other.

Defendants request clarification of the Tentative Order as to whether the Court intends to try all the cases in Wave 1 before turning to Wave 2 or whether the Court intends to try only one case from Wave 1 and then try the second case from Wave 2.

If the Court intends the prior approach, Defendants propose that the waves should be modified so that Cases 2 and 4 in Wave 1 and cases 1 and 3 in Wave 2 are defense picks, similar to Judge Schulman's approach in the JCCP. Such an approach would look like this:

**Wave 1**

1. Plaintiff Pick
2. Defense Pick
3. Plaintiff Pick
4. Defense Pick

**Wave 2**

1. Defense Pick
2. Plaintiff Pick
3. Defense Pick
4. Plaintiff Pick

If the Court intends the latter approach, then Defendants propose that Wave 1 consist of four Plaintiff selections and Wave 2 consist of four Defendant selections, as follows:

**Wave 1**

1. Plaintiff Pick
2. Plaintiff Pick
3. Plaintiff Pick
4. Plaintiff Pick

**Wave 2**

1. Defense Pick
2. Defense Pick
3. Defense Pick
4. Defense Pick

Defendants note there is no need to prioritize the California cases because the JCCP trials will already generate information on the values of the different types of cases in California. If anything, non-California cases should be prioritized here as more reflective of the MDL.

Finally, Defendants respectfully submit that discovery should be allowed to proceed in all Bellwether Cases, beginning with Plaintiff depositions. While full discovery would, of course, be prioritized for the first two waves of cases, Plaintiffs' depositions are a critical next step in all cases so that the parties can obtain critical information about the broader bellwether pool.

Defendants will be prepared to address these issues further at the hearing.

**III.   Hearing Schedule for Rule 12 Motions in Bellwether Cases**

Pursuant to PTO 21, Defendants filed its Rule 12 motions in the Bellwether Cases on April 15, 2025. ECF No. 1950, at 3. Defendants propose to set these motions for hearing in early June given the July 3 deadline to brief the order of trials.

**IV.   Bellwether Deposition Protocol**

The parties submitted separate letters with proposed MDL Bellwether Deposition Protocols on April 9, 2025. ECF Nos. 2738 & 2745. The Court referred the remaining disputes to Judge Cisneros. ECF No. 2767.

**V. Defendants' Request to Seal Portions of Amended Bellwether Complaints**

**A. Defendants' Position**

On April 4, 2025, Defendants filed a Statement in Support of Plaintiffs' Administrative Motion to Determine Whether Another Party's Materials Should be Sealed, requesting to seal select portions of nine of the Amended Bellwether Complaints that contained details regarding Defendants' proprietary technology. ECF No. 2712. The Court denied the motion on April 10, 2025, finding that Defendants had failed to show that the proposed redactions were "necessary to prevent competitive harm." ECF No. 2755. Due to the proprietary and competitively sensitive nature of the information proposed to be redacted, Defendants intend to seek reconsideration of the Court's order with further, very narrow redactions of descriptions of the proprietary technology. Such narrowed redactions will have no impact on the merits or specificity of Plaintiffs' allegations, which remain part of the pleading, as alleged. Defendants have also conferred with Plaintiffs about potential avenues of amending the nine Bellwether complaints at issue to describe this technology in more general terms without revealing specific aspects of the technology which are competitively sensitive. The parties are actively and cooperatively conferring while Defendants seek reconsideration or more practical, efficient, and mutually agreeable means of achieving protection of confidential material on consent that would also conserve judicial resources. Defendants respectfully request the opportunity to discuss this procedural matter with the Court during the conference.

**B. Plaintiffs' Position**

Plaintiffs did not object to Uber's request to seal the at-issue portions of the Bellwether Complaints. And they are happy to discuss with Uber and the Court any alternative proposals. But any solution of the sort Uber suggests must avoid any prejudice to Plaintiffs in terms of the scope of discovery and the resolution of their claims on the merits. Plaintiffs included the allegations at issue because the Court instructed them to identify specific product defects. These allegations also support negligence claims. They are relevant and important.

**VI. General Discovery Updates**

The parties continue to engage in robust discovery efforts. The parties are scheduled to appear before Judge Cisneros for a discovery status conference on the morning of April 24, 2025. A joint statement on the status of discovery will be filed in advance of the conference.

**VII. Settlement Master**

The Honorable Gail Andler has been appointed as Settlement Master, having provided her consent and disclosure. The parties are meeting with Judge Andler periodically.

**VIII. Next Case Management Conference**

The next case management conference has been set for May 30, 2025, at 10:00am, via videoconference. ECF 1990.

Dated: April 16, 2025

**SHOOK, HARDY & BACON L.L.P.**

By: */s/ Alycia A. Degen*

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN

**SHOOK, HARDY & BACON L.L.P.**
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

Dated: April 16, 2025

By: */s/ Sarah R. London*

Sarah R. London (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I, Sarah R. London, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: April 16, 2025                                   By:     */s/ Sarah R. London*
                                                                        Sarah R. London