**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084 CRB<br><br>**DEFENDANTS' SUPPLEMENTAL LETTER BRIEF IN SUPPORT OF NARROWED REDACTIONS OF BELLWETHER COMPLAINTS**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: G – 15th Floor |

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit the following letter brief, pursuant to the Court's direction during the April 18, 2025 Case Management Conference, regarding proposed redactions to Plaintiffs' Bellwether Complaints.

Dated: April 23, 2025                                    Respectfully Submitted,

**SHOOK, HARDY & BACON L.L.P.**

*/s/ Michael B. Shortnacy*
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
Alycia A. Degen (SBN 211350)
adegen@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

**KIRKLAND & ELLIS LLP**
Laura Vartain (SBN 258485)
Laura.vartain@kirkland.com
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1625

Allison M. Brown (*pro hac vice*)
Alli.brown@kirkland.com
Jessica Davidson (*pro hac vice*)
Jessica.davidson@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

**O'MELVENY AND MYERS LLP**
Sabrina H. Strong
sstrong@omm.com
Jonathan Schneller
jschneller@omm.com
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
(213) 430-6000

**SHOOK, HARDY & BACON L.L.P.**
Patrick Oot (*pro hac vice*)
oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

Christopher C. Cotton (*pro hac vice*)
ccotton@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, Missouri  64108
Telephone: (816) 474-6550

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LL

3

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully request that the Court seal a handful of limited allegations in three paragraphs of Plaintiffs' Amended Bellwether Complaints[1] concerning a confidential and proprietary Uber technology. The proposed redactions are much narrower than those originally proposed by Uber in its prior briefing and are strictly limited to allegations that constitute trade secrets under any fair reading of applicable Ninth Circuit law. In particular, the technology referenced in the Amended Bellwether Complaints is the result of many years of intense and costly research, development, and innovation that Uber has kept in the strictest confidence. If this material were publicly disclosed, Uber's competitors could implement similar systems without these substantial costs and efforts, giving them an unfair advantage. In addition, potential wrongdoers may seek to exploit insight into this technology to undermine or evade Uber's safety measures. The parties respectfully submit that these serious concerns constitute sufficiently "compelling reasons" for sealing under applicable Ninth Circuit law.

Not only are the proposed redactions modest, but their sealing would have little to no effect on the public's understanding of the nature of Plaintiffs' allegations in this litigation. This is particularly so because Uber has agreed (at Plaintiffs' request) to include substitute, explanatory language in the black boxes that cover the limited redactions. Exhibit A sets forth the redactions and Uber's proposed language for those boxes.[2]

1. **Background**

Plaintiffs initially redacted portions of 19 Amended Bellwether Complaints based on the inclusion of information gleaned from documents designated by Uber as confidential or highly confidential pursuant to the Protective Order that governs this litigation. Plaintiffs then filed an Administrative Motion to Consider Whether Another Party's Material Should be Sealed (ECF 2496) under Civil LR 79-5(f). In its response in support of sealing (ECF 2712), Uber narrowed redactions for 9 of the 19 complaints and jettisoned any redactions for the remaining 10 complaints. In support of its position, Uber submitted a declaration from Daniel Kolta, Legal Director for Global Safety, explaining that the redacted allegations discuss "the nature and details of a proprietary technology developed by Uber." (Decl. of Daniel Kolta, ECF 2712-1 ("Kolta Decl.") ¶ 3.) The declaration further attested that "Uber has expended significant time and money in the research and development of this technology and has maintained its research and development under strict confidentiality." (*Id.* ¶ 4.) On April 10, the Court issued an order finding that "Uber has failed to

---

[1] Plaintiffs filed unredacted versions of these complaints under seal at ECF 2496 and redacted versions at ECF 2497, 2499-2516.

[2] Exhibit A contains the paragraphs Uber proposes to redact from the A.R.1 Amended Bellwether Complaint and the proposed redactions. (ECF 2496-6, ¶¶ 32-33, 36.) Substantially similar allegations are made in, and redactions proposed for, the other 8 of the 9 bellwether complaints at issue: A.R.2 ¶¶ 43-44, 47 (ECF 2496-9); B.L. ¶¶ 50-51, 54 (ECF 2496-10); Jane Doe QLF 001 ¶¶ 26-27, 29 (ECF 2496-12); Jaylynn Dean ¶¶ 54-55, 58 (ECF 2496-13); LCHB128 ¶¶ 31-32, 35 (ECF 2496-15); T.L. ¶¶ 30-32, 34 (ECF 2496-16); WHB 1876 ¶¶ 19-20, 22 (ECF 2496-5); and WHB 1898 ¶¶ 32-33, 35 (ECF 2496-20).

show that its proposed redactions are necessary to prevent competitive harm." (Order, ECF 2755.)

In the wake of the Court's ruling, Uber reached out to Plaintiffs to explore the possibility of reaching an agreement regarding a handful of allegations that reference specific, highly sensitive aspects of the technology discussed above. At the status conference on April 18, the Court commended the parties for attempting to reach an agreement and indicated that it would entertain a "further refined" request for sealing portions of the Complaints. (4/18/2025 Hr'g Tr. 16:2-8.) Although the Court stated that the "public" has a right to "understand[] what the litigation is about," the Court also made clear that "they don't have a right to know what trade secrets are." (*Id.* 17:14-15.)³ In light of that pronouncement, Uber is requesting that the Court seal limited portions of just three paragraphs containing specific allegations regarding the confidential technology discussed above. As directed by the Court, Uber and Plaintiffs conferred as to these proposed redactions, and Plaintiffs indicated that they do not oppose this request.

2. **Argument**

As the Supreme Court has made clear, "the right to inspect and copy judicial records is not absolute"; rather, "the common-law right of inspection has bowed before the power of a court to [e]nsure that its records are not used . . . as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (citation omitted). Consistent with this principle, the Ninth Circuit has held that "'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (quoting *Nixon*, 435 U.S. at 598). Indeed, the Ninth Circuit has recognized that the potential harm resulting from public disclosure of trade secrets is so clear and irremediable that a litigant "has no adequate means, other than mandamus, to attain relief." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 570 (9th Cir. 2008).

A party seeking to seal portions of litigation materials (including complaints) under these principles must establish that: (1) the information constitutes trade secrets; and (2) the proposed redactions are "narrowly tailored" to the sealable material. *See Barnes v. Hershey Co.*, No. 3:12-cv-01334-CRB, 2015 U.S. Dist. LEXIS 52330, at *4-5, *10-11 (N.D. Cal. Apr. 21, 2015) (Breyer, J.); Civ. L.R. 79-5(c)(3). The very limited redactions being proposed by Uber satisfy this standard.

---

³ At the hearing, the Court indicated that its views on sealing are elaborated in a prior order denying an administrative motion to seal in litigation involving Hewlett-Packard. (*See* 4/18/2025 Hr'g Tr. 20:13-22.) (*See* Order Den. Pending Administrative Mot. to File Under Seal, *In re Hewlett Packard Co. Shareholder Deriv. Litig.*, No. 3:12-cv-06003-CRB, ECF 411 (July 28, 2015).) Although most of the ruling is itself sealed, Uber has considered the portion it was able to read: a footnote stating that "[n]o motion for reconsideration will be entertained unless HP identifies . . . 'a limited amount of exceptionally sensitive information that truly deserves protection' under the 'compelling reasons' standard of Kamakana v. City and Cty. of Honolulu . . . ." (*Id.* at 4 n.1.) Uber respectfully believes it has satisfied that Ninth Circuit standard, as discussed *infra*.

*First*, the information Uber seeks to protect from public disclosure qualifies as a trade secret. The Ninth Circuit broadly defines trade secrets as including "'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *In re Elec. Arts*, 298 F. App'x at 569-70 (granting writ of mandamus and directing district court to seal "pricing terms, royalty rates, and guaranteed minimum payment terms" of licensing agreements because terms were trade secrets) (quoting Restatement of Torts § 757, cmt. b). Accordingly, this Court has sealed litigation exhibits that "contain confidential and private information about [a defendant's] business strategy," including information about its internal operations, its clients, and revenues, because public disclosure would put that party "at a competitive disadvantage[.]" *Barnes*, 2015 U.S. Dist. LEXIS 52330, at *4-5, *10-11.

Courts within the Ninth Circuit have sealed analogous information regarding the inner workings of online platforms that, if publicly disclosed, could be copied, "caus[ing] competitive harm to" the party that created the proprietary information. *See, e.g.*, *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5366963, at *3 (N.D. Cal. Sept. 25, 2013) (granting motion to seal information about nonpublic features of Gmail); *Skillz Platform Inc. v. AviaGames Inc.*, No. 21-CV-02436-BLF, 2023 WL 8430420, at *2 (N.D. Cal. Dec. 4, 2023) (sealing portions of second amended complaint and the entirety of exhibits because they contain "confidential information relating to the backend operation of AviaGames' servers and source code"); *Mobileum Inc. v. Sarl*, No. 23-CV-01413-HSG, 2023 WL 8481802, at *2 (N.D. Cal. Dec. 7, 2023) (sealing portions of complaint addressing "operation of [plaintiff's] proprietary software platform" because the public information "could be used by competitors to undercut the litigant or by potential customers to demand more favorable terms in negotiations") (citation omitted); *Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2021 WL 2476916, at *6 (N.D. Cal. June 17, 2021) (sealing portions of exhibit addressing "the workings of iCloud's storage algorithm," the public disclosure of which "would harm Apple by revealing, for example, the algorithmic parameters that determine the upload priority and regional location of data").

For example, in *In re Google*, Judge Koh, over the objections of the plaintiffs, sealed portions of a complaint detailing how Gmail operates, including the structures that Google has in place and the order in which emails go through those structures. 2013 WL 5366963, at *3. In so doing, the court rejected the plaintiffs' argument that the information was "not specific enough" to pose any harm to Google's competitive advantage. The court "credited" Google's contention that its "competitors could copy its email delivery mechanisms if information about these mechanisms were made public." *Id.* The court also sealed a category of allegations concerning the relationship between users' interactions with the Gmail system and the manner in which messages are transmitted in light of Google's "concern" that "'Google's ability to combat spammers, hackers, and others who propagate these unwanted or harmful materials would be impaired if those individuals had visibility into Google's defenses." *Id.* (citation omitted).

The same logic applies with even greater force here given that Plaintiffs do not oppose Uber's request. The information Uber is seeking to redact concerns a proprietary program that uses data analyses and modeling to predict and prevent potentially concerning interactions between users and drivers on the platform. The specifics of this algorithmic risk feature are not known to others in the industry, and its disclosure could impact growth and user sentiment, which in itself

provides a competitive advantage. Although Uber has publicly disclosed its use of predictive modeling, the mechanics of how Uber performs predictive modeling have been closely guarded, both for competitive reasons and for user security reasons. The specific attributes of that program are the result of many years of development by Uber's engineers and millions of dollars of research and development. (Kolta Decl. ¶ 4.) If this information were disclosed, Uber's competitors "would be able to duplicate features of" the program, "which could cause competitive harm to" Uber. *In re Google*, 2013 WL 5366963, at *3. Moreover, if disclosed, "app users may also be able to manipulate their actions . . . to potentially undermine the program's effectiveness." (Kolta Decl. ¶ 4.) These concerns constitute "compelling reasons" for redacting the portions of the Amended Bellwether Complaints that attempt to detail specific factors Uber has developed to attempt to mitigate potential safety issues for users and drivers.

***Second***, the proposed redactions are also "narrowly tailored" to information constituting sealable material. *See Mobileum*, 2023 WL 8481802, at *2 (granting motion to seal and "observing that Plaintiff significantly reduced its proposed redactions as compared to its original request, and has narrowed these redactions to cover sensitive business information instead of mundane factual allegations"). This is the second time Uber has narrowed its request for sealing, winnowing it down to a very limited subset of allegations in just three paragraphs, addressing Uber's proprietary technology. In particular, the redactions are strictly limited to "specific" factors Plaintiffs contend this highly sensitive technology uses in Uber's predictive model. *In re Google*, 2013 WL 5366963, at *3 (finding that "Google has narrowly tailored its request" to "specific descriptions of how Gmail operates"). The redactions are far more limited than the ones upheld by the court in *In re Google* and comprise a very small fraction of Plaintiffs' allegations regarding this feature.

In addition, after conferring with Plaintiffs, Uber has proposed inserting certain language in the redacted portions of the amended complaints to let the public know that the very limited redactions pertain to proprietary trade secret information, thus reducing any confusion about the nature of the limited information that is redacted from the pleading. In short, Uber's proposal reflects a reasonable and proper balancing of the right of public access against Uber's competitive interests.

### 3. Conclusion

For the foregoing reasons, the Court should order that the unredacted versions of Plaintiffs' Amended Bellwether Complaints be maintained under seal, consistent with the narrowed redactions attached hereto.

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2025 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ <i>Michael B. Shortnacy</i>