# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

IN RE UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT
LITIGATION

Case No.: 3:23-MD-03084 CRB

**DEFENDANTS' LETTER BRIEF REGARDING BELLWETHER TRIAL WAVES AND DISCOVERY SCHEDULE**

Judge: Hon. Charles R. Breyer
Courtroom: G – 15th Floor

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit the following letter brief in response to the Court's request for the parties' positions on (i) what cases should be included in bellwether trial Waves 1 and 2, and (ii) how discovery should be staggered for the various Waves.

Dated: April 23, 2025

Respectfully Submitted,

**KIRKLAND & ELLIS LLP**

By: */s/ Laura Vartain Horn*
LAURA VARTAIN HORN (SBN 258485)
Laura.vartain@kirkland.com
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1625

Allison M. Brown (*pro hac vice*)
Alli.brown@kirkland.com
Jessica Davidson (*pro hac vice*)
Jessica.davidson@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

**O'MELVENY AND MYERS LLP**
Sabrina H. Strong
sstrong@omm.com
Jonathan Schneller
jschneller@omm.com
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
(213) 430-6000

**SHOOK, HARDY & BACON L.L.P.**
Patrick Oot (*pro hac vice*)
oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

Alycia A. Degen (SBN 211350)
adegen@shb.com
Michael B. Shortnacy (SBN: 277035)
mshortnacy@shb.com
SHOOK, HARDY & BACON L.L.P.
2121 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

Christopher C. Cotton (*pro hac vice*)
ccotton@shb.com
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, Missouri  64108
Telephone: (816) 474-6550

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LL

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit this brief in response to the Court's request for the parties' positions on: (i) what cases should be included in bellwether trial Waves 1 and 2; and (ii) how discovery should be staggered for the various Waves. The parties met and conferred on both issues but were not able to reach agreement.

As explained below, Defendants believe that the cases in Wave 1 should be adjusted to: (i) achieve a better balance of Plaintiff and Defense selections; and (ii) test the value, if any, of different categories of cases. In addition, the discovery schedule for Waves 2-4 should be adjusted to prioritize plaintiff depositions, while staggering deadlines for full case workup.

### Balancing of Cases in Bellwether Waves 1 and 2

The core purpose of a bellwether program is to generate information for the parties and the Court to understand the value of the case pool and the comparative strengths and weaknesses of different types of cases. *See In re Hydroxycut Mktg. & Sales Practice Litig.*, No. 3:09-md-2087-BTM(KSC), 2012 U.S. Dist. LEXIS 93282, at *51-52 (N.D. Cal. June 28, 2012) ("Test cases should . . . enable the parties and the court to determine the nature and strength of the claims . . . .") (citing Federal Judicial Center, Manual for Complex Litigation § 22.315 (4th ed. 2004)). Trying outlier cases that are not "representative[]" of the broader claims pool (even if they result in large verdicts) does not further that objective.[1] *Id.* ("'representativeness' is a 'core element' that must be present for a bellwether trial 'to achieve its value ascertainment function . . . to answer troubling causation or liability issues common to the universe of claimants'") (quoting *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997)); *see also In re E.I. Du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 529 F. Supp. 3d 720, 740-41 (S.D. Ohio 2021) ("Bellwether plaintiffs are purposely selected to exclude the most severely injured plaintiffs because it would frustrate the bellwether procedure's purpose.").

As the Court is aware, Plaintiffs in this litigation allege a wide range of improper driver conduct, from verbal comments (8% of the docket) and kissing (8% of the docket) to penetration (18% of the docket), but the majority of cases (59%) allege some other form of touching.[2] By contrast, Wave 1, as currently constructed, is heavily weighted toward cases involving penetration, because Plaintiffs presumably view those as their most valuable cases.

Uber believes that including an even number of Plaintiff and Defense selections in each of Waves 1 and 2 will most effectively and efficiently advance the purposes of a bellwether program. Plaintiffs proposed in the meet-and-confer that Wave 1 include 4 Plaintiff selections and 2 Defense selections, but that would still be unbalanced. Instead, Uber proposes that Wave 1

---

[1] For this reason, some MDL courts use random selection to choose bellwether cases, while others allow each side to strike one or more of the opposing party's selections that they view as an outlier.

[2] Attached as Exhibit A is a copy of the table submitted with the parties' bellwether briefing, ECF 1934 at 16, summarizing the range of incidents and their prevalence in the overall docket. As currently structured, 40% of the Wave 1 cases allege penetration.

be composed of 3 Plaintiff selections and 3 Defense selections to create a pool that is more balanced and reflective of the broader docket.

**Uber's Proposal**: For Plaintiffs' cases, Uber proposes to keep C.L. in Wave 1 plus *either* the two California cases *or* the two Arizona cases, and add three Defense cases: WHB 318 (as proposed by the Court), plus the other North Carolina case (WHB 832), and D.J.

Uber also proposes that cases alternate in each wave between Plaintiff and Defendant picks.[3] Assuming the Court keeps the California cases in Wave 1, the order of cases would be as follows, with the two Arizona cases moving to Wave 2:

| Proposed Wave 1 | | | | |
|---|---|---|---|---|
| **Name** | **Case No.** | **State** | **Alleged Incident** | **Party Choice** |
| B.L. | 24-cv-7940 | CA | Sexual Penetration | Plaintiffs |
| WHB 318 | 24-cv-4889 | NC | Touching of a Non-Sexual Body Part | Defendants |
| A.R. | 24-cv-7821 | CA | Kissing of a Sexual Body Part | Plaintiffs |
| WHB 832 | 24-cv-4900 | NC | Touching of a Non-Sexual Body Part | Defendants |
| C.L. | 23-cv-4972 | MD/VA | Touching of a Non-Sexual Body Part | Plaintiffs |
| D.J. (S.D. Miss.) | 24-cv-7228 | IN | Touching of a Sexual Body Part | Defendants |

This grouping has the benefit of including cases with a range of alleged incidents, causes of action and challenged safety features and including multiple cases from the same state, as suggested in PTO 24.

Uber further requests that in the event Plaintiffs dismiss one of the Defense selections, Uber be permitted to replace it with another of its selections. *See* PTO 21 (ECF 1950, at 2) ("In the event that a proposed Plaintiff refuses to participate as a bellwether, the Defendant may select a substitute Plaintiff.").

Uber acknowledges that it is proposing cases that may require the Court to travel for trial. Specifically, Plaintiff D.J. may assert *Lexecon* rights, and Uber will shortly be filing motions to transfer cases based on forum selection, forum non conveniens, or other grounds. Ultimately,

---

[3] This was Judge Schulman's approach in the JCCP.

however, even if the Court is unable to travel to all these venues for trial, working up cases for trial would generate important information relevant to assessing and valuing the docket at large.[4]

With respect to the remaining waves, Uber proposes the following groupings, which are intended to reflect both the Court's groupings in PTO 24, and to maximize the core purpose of the bellwether process by including a range of different alleged injuries:

| Proposed Wave 2 | | | | |
|---|---|---|---|---|
| Name | Case No. | State | Alleged Incident | Party Choice |
| WHB 1898 | 24-cv-5027 | MA | Verbal Threat of Sexual Assault | Defendants |
| LCHB128 | 24-cv-7019 | AZ | Touching of a Sexual Body Part | Plaintiffs |
| Amanda Lazio (S.D. Iowa) | 24-cv-8937 | IA | Touching of a Non-Sexual Body Part | Defendants |
| Jaylynn Dean | 23-cv-6708 | AZ | Sexual Penetration | Plaintiffs |
| WHB 1876 | 24-cv-5230 | IL | Verbal Comments | Defendants |
| A.G. | 24-cv-1915 | OR | Sexual Penetration | Plaintiffs |

| Proposed Wave 3 | | | | |
|---|---|---|---|---|
| Name | Case No. | State | Alleged Incident | Party Choice |
| Jane Doe QLF 001 | 24-cv-8783 | TX | Sexual Penetration: Oral | Plaintiffs |
| K.E. (W.D. Tex.) | 24-cv-5281 | TX | Touching of a Non-Sexual Body Part | Defendants |
| JaneRoeCL68 (W.D. Tex.) | 24-cv-6669 | TX | Touching of a Sexual Body Part | Defendants |
| WHB 1486 | 24-cv-4803 | TX | Touching of a Sexual Body Part | Defendants |

| Proposed Wave 4 | | | | |
|---|---|---|---|---|
| Name | Case No. | State | Alleged Incident | Party Choice |
| WHB 407 | 24-cv-5028 | GA | Verbal Threat of Sexual Assault | Defendants |
| A.R. 2 | 24-cv-1827 | PA | Kissing of a Non-Sexual Body Part | Plaintiffs |
| J.E. | 24-cv-3335 | MI | Touching of a Sexual Body Part | Plaintiffs |
| T.L. | 24-cv-9217 | GA | Sexual Penetration | Plaintiffs |

---

[4] Should the *D.J.* case nonetheless not be acceptable to the Court in Wave 1, Uber suggests WHB 1486, Case No. 24-cv-4803, instead.

**Bellwether Wave Discovery Schedules**

Uber proposes below a schedule for discovery in each wave that aims to balance efficiency, practicality and advancement of the bellwether process:

| Wave | Deadline to Complete Plaintiff Depositions | Substantial Completion of Discovery |
|---|---|---|
| 1 | 3 completed by 5/15/2025; and remaining 3 by 5/30/2025 | 07/16/2025[5] |
| 2 | 06/30/2025 | 08/31/2025 |
| 3 | 07/31/2025 | 09/30/2025 |
| 4 | 08/31/2025 | 10/30/2025 |

While Plaintiffs have suggested deferring Plaintiff depositions for Waves 2-4, the most important early deposition in each case is that of the Plaintiff. Not only will each Plaintiff provide her recollection of the alleged incident at issue, but Plaintiff depositions will also generate critical information for evaluating cases and identifying additional discovery needs, such as other potential deponents, including relevant eyewitnesses, investigators and treating physicians. Limiting Uber's discovery on the bulk of the Bellwether Plaintiffs to a paper record will not advance the resolution of the more than 2,000 cases in this MDL.

As set forth in the table above, the depositions of the Wave 1 Plaintiffs should be completed no later than the end of May, and the deadline for substantial completion of discovery in the Wave 1 cases should be extended to July 16, 2026. This deadline adjustment is needed because, to date, not one Plaintiff has sat for deposition. Indeed, most Plaintiffs still have not provided deposition dates, despite Uber's repeated requests, and none has provided a date sooner than May 20. In the meet-and-confer, Plaintiffs suggested that Wave 1 Plaintiff depositions should extend until *mid to late June*, but that timing is incompatible with the schedule the Court ordered in PTO 21.[6]

---

[5] The other deadlines in PTO 21 would apply to Wave 1.

[6] During the parties' meet-and-confer, Plaintiffs insisted that the deadline for the completion of Plaintiffs' depositions should be tethered to the timing of Defendants' responses to Plaintiffs' recently served discovery requests and to the timing of case-specific company witness depositions. That demand is not reasonable. Plaintiffs waited *weeks* to serve case-specific discovery requests in each Bellwether Case, and they *already have* substantially complete DFS productions, which contained extensive case-specific information and which will be certified by April 30. Plaintiffs' belated demand for more does not justify their refusal to timely sit for deposition.

Defendants also respectfully submit that it is important to complete the depositions of the Wave 2 Plaintiffs by June 30.  This schedule would ensure that the parties are able to expeditiously prepare cases for trial if the Court adjusts the waves after ruling on the pending motion to dismiss and forthcoming motions to transfer.

## EXHIBIT A



*From Dkt. No. 1934 at 16.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2025 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Laura Vartain Horn*