

**VIA ECF**

The Honorable Charles R. Breyer
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

        RE:    *In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation*,
                   MDL No. 3084 CRB

Your Honor:

Plaintiffs respectfully submit this letter following up on Pretrial Order No. 24 and the April 18 Case Management Conference. The parties met and conferred but were unable to reach agreement on the composition and discovery schedules for Waves 1 and 2.

**Wave 1 Composition**

The Court should amend PTO 24 to: (1) adopt its proposal made at the CMC, adding one defense pick to Wave 1 from Table 2 below; or (2) if the Court thinks it makes sense to have more defense picks, remove one plaintiff pick and add two defense picks, so that Wave 1 has no more than 6 cases.

The Court's Wave 1 selections made sense with respect to venue, schedule and the merits. They included two California cases, for which venue is not an issue, and two Arizona cases, which being in the Ninth Circuit are most amenable to the Court traveling for trial. And they included a broad range of liability theories, including common carrier (three cases), respondeat superior (four cases), and ratification (two cases), and product defect theories, including Safe Ride (four cases), Gender Match (five cases), Recording (five cases), and GPS (three cases). The size of the Wave (five cases) was appropriate and practical given the overall schedule. And the cases reflected a range of types of sexual assault, including kissing, exposure, groping, and rape (not that such a typology necessarily reflects the severity of the assault on the plaintiff). Moreover, Uber did not move to dismiss any of the Wave 1 cases in their entirety.

Although Wave 1 was well-constructed, Plaintiffs have no objection to the Court adding a defense pick to Wave 1. At the CMC, the Court proposed **WHB 318** (23-cv-4889). This is one of two cases from North Carolina (along with **WHB 832**, 24-cv-4900[1]), although it also involves conduct in South Carolina. If the Court prefers to keep cases from the same state together, the Court could choose to keep them as they are in Wave 3 and select another defense case, such as **WHB 1876** (24-cv-5230) or **WHB 1898** (24-cv-5027), which do not have *Lexecon* issues and involve other states (Illinois and Massachusetts). Adding one of these cases to the Court's initial

---

[1] WHB 832's amended complaint identifies the Plaintiff as 823, but 832 is correct. Regardless, the case number is 24-cv-4900.

April 23, 2025
Page 2

Wave 1 would be the optimal way to harmonize Uber's concerns with the Court's priorities set out in PTO 24.

To accommodate Uber's position that Wave 1 should have more than one "defense pick," Plaintiffs offered to accept a modified Wave 1 that moved one plaintiff pick to Wave 2 and added two defense picks to Wave 1. However, Uber insisted on either an even split (3 plaintiff, 3 defense) or an unwieldy seven-plaintiff Wave 1 (4 plaintiff, 3 defense). Uber's position is imprudent and unworkable and should be rejected.

*First*, increasing Wave 1 to seven cases makes an already difficult discovery schedule even more demanding for no real purpose, and in some ways defeats the point of having Waves in the first place. As laid out in more detail below, the parties are pressing to complete the general discovery of Uber, with dozens more witnesses (including Apex and 30(b)(6)) scheduled to be deposed in May and June. Stretching the parties too thin to adequately discover these Wave cases (including discovery of Uber on case-specific matters) will prejudice Plaintiffs (who have the burden of proof) and risk having less meaningful trials.

*Second*, Uber seems intent on including in Wave 1 one or more cases where the plaintiff selected a different forum (**Lazio**, 24-cv-8937, S.D. Iowa; **D.J.**, 24-cv-8227, S.D. Miss; **K.E.**, 24-cv-5281, W.D. Tex.; **JaneRoeCL68**, 24-cv-6669, W.D. Tex.). Although the Court intends to travel where necessary to try these cases, as a practical matter it will be difficult to do that for a December 8 trial. Uber had a large set of properly venued cases to select from, but instead chose these out-of-district cases. The Court permitted that election after the fact, but should not distort Wave 1 to accommodate Uber's violation of the limitations on the pool imposed by PTO 21.

*Third*, Uber is likely to propose including three cases represented by Williams Hart Boundas in Wave 1 (especially if wrong-venue cases are not eligible). But that firm is trying one of the JCCP bellwethers this summer; stacking accelerated bellwether discovery for three cases on top of that is impractical and unnecessary given the number of firms with bellwether cases.

In sum, Plaintiffs ask the Court to stick by its proposal at the CMC to add one defense pick to Wave 1, or alternatively, to move C.L. to Wave 2, and choose two defense picks. Regardless, the Court should choose any additional defense picks from **Table 2**. All of these cases are venued in this District. The only other defense picks without *Lexecon* issues are in Georgia and Texas, and the Court has already generated efficiencies by grouping those cases together with other cases from those states in other waves (and they are represented by Williams Hart in any event).

April 23, 2025
Page 3

**Table 1: Court Selections to Remain in Wave 1**

| PLAINTIFF | CASE NUMBER | FIRM | PARTY PICK | STATE |
|---|---|---|---|---|
| LCHB128 | 24-cv-7019 | Girard Sharp | Plaintiff | AZ |
| Jaylynn Dean | 23-cv-6708 | Peiffer Wolf | Plaintiff | AZ |
| B.L. | 24-cv-7940 | Wagstaff | Plaintiff | CA |
| A.R.2[2] | 24-cv-7821 | Peiffer Wolf | Plaintiff | CA |

**Table 2: Candidates for the Remaining One to Two Cases to include in Wave 1**

| PLAINTIFF | CASE NUMBER | FIRM | PARTY PICK | STATE |
|---|---|---|---|---|
| C.L. | 23-cv-4972 | Clarkson | Plaintiff | MD/VA |
| WHB 318 | 23-cv-4889 | Williams Hart | Defense | NC/SC |
| WHB 832 | 24-cv-4900 | Williams Hart | Defense | NC |
| WHB 1876 | 24-cv-5230 | Williams Hart | Defense | IL |
| WHB 1898 | 24-cv-5027 | Williams Hart | Defense | MA |

**Wave 2 Composition**

Wave 2 should include (1) the cases the Court already selected for that Wave (**A.G.**, 24-cv-1915; **A.R.1**,[3] 24-cv-1827) and (2) any cases in **Table 2** above that the Court elects not to include in Wave 1. This responds to Uber's concerns regarding queuing up defense picks for trial and including assaults and injuries that Uber considers to be lower in severity in the early trial waves.

**Wave 1 Discovery Schedule**

During their discussion, the parties agreed on two points:

- The current discovery and motions schedule should apply only to Wave 1 cases, given the need to prepare those cases for trial first.

- The date for substantial completion of fact discovery (June 16) should be extended by 30 days, to **July 16**.

Both proposals make sense. As the Court suggested during the CMC, it is not practical to complete discovery for all 20 bellwethers during this time period. In addition to the significant amount of common discovery remaining (including resolving privilege disputes, Apex depositions, a dozen fact witnesses, and all 30(b)(6) depositions), the 20 bellwethers together will require approximately **166 case-specific depositions** (20 plaintiff; 20 30(b)(6); at least 20

---

[2] PTO 24 mistakenly referred to this Plaintiff as "A.R."
[3] As noted, PTO 24 mistakenly referred to this case as "A.R.2."

April 23, 2025
Page 4

Uber fact witnesses; at least 66 case specific fact witnesses Uber expects to notice; at least 20 treating physicians; 20 drivers and uncapped number of third party depositions). It's not feasible to complete all of that by June or July, and it's not necessary to do so given that only the Wave 1 cases need to be ready for trial in December.

It also makes sense to move the June 16 deadline back by 30 days given the volume of depositions required even for the limited number of Wave 1 cases (and the Court potentially increasing Wave 1 to include six instead of five cases). The parties agreed that no other dates need to be adjusted to accommodate this change.

**Plaintiff and 30(b)(6) Deposition Scheduling**

Uber proposed sub-deadlines requiring Plaintiffs to be deposed significantly earlier, up to 45 to 60 days before the substantial-completion date (if moved to July 16). Those issues are being submitted to Judge Cisneros in a PTO 8 dispute letter today (and, in general, granular discovery sequencing is within the scope of her referral). So Plaintiffs do not think the Court needs to address the timing of any particular discovery tasks.

As Plaintiffs will argue to Judge Cisneros, this is a problem entirely of Uber's own making. Plaintiffs promptly served case-specific discovery falling into three buckets of documents and information: (1) the driver; (2) the Plaintiff herself; and (3) the ride. Nothing prevents Uber from producing these documents on an accelerated timetable. But Uber won't do that, and it won't even certify that the defense facts sheets are complete until April 30. Principles of orderly discovery and basic fairness require the core documentary record to be complete before Plaintiffs are deposed.

If the Court disagrees, and sets milestone deadlines, the same deadlines should apply to Plaintiffs' case-specific 30(b)(6) depositions of Uber. Uber argues that it needs Plaintiff depositions sufficiently early to permit additional discovery arising from those depositions (notwithstanding the extensive fact-sheet and written discovery it already has). The same is true of Plaintiffs' 30(b)(6) depositions, which will reveal facts and require follow-up concerning Uber's investigation and response to Plaintiffs' assaults and its background checks and onboarding of the Uber drivers involved.

**Wave 2 Discovery Schedule**

The Court should set a deadline for substantial completion of fact discovery for Wave 2 of **October 31, 2025**. The Court should set the remaining deadlines for that Wave once it becomes apparent when those cases will be tried. If, however, the Court intends on setting the entire Wave 2 schedule now, Plaintiffs propose the following:

April 23, 2025
Page 5

| EVENT | DATE |
|---|---|
| Substantial Completion of Fact Discovery | October 31, 2025 |
| Expert Reports | January 5, 2026 |
| Rebuttal Reports | February 5, 2026 |
| Close of Discovery | March 5, 2026 |
| *Daubert*/Dispositive Motions | March 23, 2026 |
| *Daubert*/Dispositive Oppositions | April 23, 2026 |
| *Daubert*/Dispositive Replies | May 7, 2026 |
| Pretrial Conference | May 14, 2026 |
| Trial | May 21, 2026 |

Respectfully,

Sarah R. London

ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

April 23, 2025
Page 6

## FILER'S ATTESTATION

I, Andrew R. Kaufman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory identified above has concurred in this filing.

Dated: April 23, 2025

By: /s/ *Andrew R. Kaufman*