# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL MATTERS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**JOINT LETTER REGARDING PLAINTIFF DEPOSITION SCHEDULING**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom: G - 15th Floor |
|---|---|

Dear Judge Cisneros:

Pursuant to PTO No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding Plaintiff deposition scheduling.

By: /s/ Rachel Abrams
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: /s/ Christopher V. Cotton
    CHRISTOPHER V. COTTON (*pro hac vice*)
    **SHOOK, HARDY & BACON L.L.P.**
    2555 Grand Blvd.
    Kansas City, Missouri 64108
    Telephone: (816) 474-6550
    ccotton@shb.com

    **KIRKLAND & ELLIS LLP**
    ALLISON M. BROWN (*pro hac vice*)
    Alli.brown@kirkland.com
    JESSICA DAVIDSON (*pro hac vice*)
    Jessica.davidson@kirkland.com
    LAURA VARTAIN
    Laura.vartain@kirkland.com

    **O'MELVENY AND MYERS LLP**
    SABRINA H. STRONG
    sstrong@omm.com
    JONATHAN SCHNELLER
    jschneller@omm.com

    **SHOOK, HARDY & BACON L.L.P.**
    PATRICK OOT (*pro hac vice*)
    ALYCIA A. DEGEN (SBN 211350)
    MICHAEL B. SHORTNACY (SBN 277035)

*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

**I.    Defendants' Position:**

Each Bellwether Plaintiff who has not yet provided proposed dates for a plaintiff deposition should be ordered to do so by April 28, 2025.

Case-specific fact discovery opened for the bellwether cases on March 14, 2025 (ECF No. 1950). Defendants served written discovery requests on each bellwether Plaintiff on March 15 and requested deposition dates for each Plaintiff on April 4, with the expectation of completing depositions of Plaintiffs by mid-May in light of the June 16, 2025 deadline for substantial completion of discovery set forth in PTO 21 (ECF No. 1950). Pursuant to the Parties' agreement and Proposed Deposition Protocol, Plaintiffs were to provide proposed deposition dates within five business days of Defendants' April 4 requests – i.e., by April 11, 2025. *See* ECF No. 2738-1 (memorializing agreement to provide deposition dates within five business days). *Only one* Plaintiff provided deposition dates by that agreed deadline.

On April 4, 2025, Plaintiffs' leadership objected to providing deposition dates for Plaintiffs, arguing that they were "premature" and "improper." The parties were in the process of preparing this PTO 8 submission when PTO 24 (ECF No. 2775) was entered by the Court on April 14, 2025. Among other things, PTO 24 directed that "there should be some organization for pretrial and trial proceedings to maintain efficiency." *See* PTO 24, at 1. PTO 24 further provided: "Once it is determined which bellwether cases will be in which trial waves, the Court shall instruct the parties to prepare to try each case within a given trial wave on the same designated date. Should the first case within a trial wave settle prior to the trial date, the parties will proceed to the second case, and so on down the line." *Id.* at 3.

In light of PTO 24 and direction received from the Court during an April 18, 2025 CMC with Judge Breyer, the parties discussed a proposed discovery schedule. During the parties' meet and confer, Plaintiffs insisted the deadline for completion of Plaintiffs' depositions in Trial Wave 1 cases should be further postponed until mid to late June (at the tail end of the discovery period), with the depositions of the Wave 2 Plaintiffs to occur in late summer and the remaining Plaintiffs' depositions postponed indefinitely. That timing is unworkable, particularly in light of the anticipated deadline (currently June 16, or possibly mid-July) to substantially complete discovery for Wave 1 cases. On April 23, 2025, the parties submitted letter briefs to Judge Breyer proposing Plaintiffs for each Trial Wave and setting forth their respective proposed discovery schedules. (ECF Nos. 2847 & 2848). Defendants seek to complete the depositions of the Wave 1 Plaintiffs by the end of May and the Wave 2 Plaintiffs by the end of June, to ensure that sufficient cases are being worked up for trial in light of potential motion practice and other eventualities.

Many depositions are contemplated in each of the bellwether cases, but the most important early deposition will be that of each individual Plaintiff. Each Plaintiff will of course provide her recollection of the alleged incident at issue. Beyond that, the testimony of each Plaintiff is expected to address key facts and lead to the identification of additional potential deponents, including relevant eyewitnesses, investigators, treating physicians, and others. Plaintiffs' testimony might also reveal additional avenues for discovery and lead to further written discovery, third-party requests, and other record collection and document requests that will need to be promptly developed and served. Completing depositions of Plaintiffs is essential to the workup and timely preparation of each bellwether case, and Defendants' assessment of the MDL docket.

During the parties' meet and confer, and again here, Plaintiffs insist that the timing of Plaintiffs' depositions should be tethered to Defendants' responses to Plaintiffs' recent case-specific discovery requests. That demand is not reasonable. As a practical matter, Plaintiffs' case-specific discovery requests (including most of the ones referenced below by Plaintiffs) are largely already satisfied through Defendants' robust DFS responses and productions, which were substantially complete long ago and will be certified as complete by April 30, 2025. Indeed, Plaintiffs have received loads of information from Defendants, including productions from 55 custodians, amounting to more than 1.4 million documents and over 5 million pages. In addition, Defendants' DFS productions in particular included case-specific information sought by Plaintiffs. In contrast, Plaintiffs' discovery responses and productions have been very limited to date. Those deficiencies will be addressed separately. In the meantime, depositions of Plaintiffs are an essential next step to continue the preparation of these cases for trial and Defendants' overall assessment of the MDL docket.

None of the points raised by Plaintiffs below justifies further delay in the scheduling of the remaining Plaintiffs' depositions. <u>First</u>, Defendants' DFS certification will be made no later than April 30, 2025, as previously ordered by the Court. *See* ECF No. 2655. In connection with the DFS process and pursuant to PTO 10, Defendants have previously addressed Plaintiffs' demands regarding audio recordings and several other follow up requests that have been similarly satisfied. <u>Second</u>, Defendants have already produced driver GPS data from the rides at issue in connection with the DFS process. With respect to *rider* GPS data, Defendants have previously informed Plaintiffs that, for privacy reasons, Uber only collects GPS data from a rider when the device is in use and the Uber app is in the foreground, *i.e.* the rider is not texting, catching up on email, listening to music or watching a video, etc. Thus, while Defendants are investigating what, if any, rider GPS data is available for these subject trips, the expectation is there will be little, if any. <u>Third</u>, while two issues related to the Proposed Deposition Protocol remain in dispute and are the subject of separate submissions (ECF Nos. 2738 & 2745), neither of those issues affects the scheduling of Plaintiffs' depositions. <u>Fourth</u>, the selection and timing of trial waves should not delay Plaintiff depositions. The bellwether process will be best served by obtaining information about all cases in the bellwether pool and not just those in the first wave.

If any Plaintiffs do not wish to sit for deposition, the proper solution is to dismiss their cases, not to evade discovery. For these reasons, Plaintiffs in Trial Wave 1 should provide dates for all of their depositions to be completed no later than May 30, and those in Trial Wave 2 should provide dates for all of their depositions to be completed no later than June 30.

## II.     Plaintiffs' Position:

Uber is insisting that all Bellwether ("BW") Plaintiffs' depositions for Wave 1 and 2 proceed immediately and be completed by May 30 and June 30, respectively, even though: (1) Uber's DFS certification is not due until April 30, 2025, (2) Uber's production of central case-specific BW documents, such as GPS data from the subject rides, remains outstanding, (3) the BW Deposition Protocol has not yet been entered and is currently in dispute before this Court (ECF No. 2655), and (4) Judge Breyer entered PTO No. 24 proposing BW trial waves, with cases he selected for each wave. During the April 18, 2025 CMC, Judge Breyer requested letter briefs with each parties'

proposal for the Trial Waves and setting forth proposed discovery schedules. The parties' briefs will be submitted today.

Despite these issues, Plaintiffs have provided dates for *all* Wave 1 BW Plaintiffs that Judge Breyer selected in PTO No. 24, with 4 of 5 selected Wave 1 Plaintiffs proposing deposition dates in mid to late May. Further, only one of the PTO 24 selected Wave 2 Plaintiffs has yet to provide deposition dates, but we are working with that BW Plaintiff's counsel to provide dates shortly. Plaintiffs have requested that Uber expedite production of pivotal BW data and documents to allow BW Plaintiff depositions to be set earlier within the discovery window, but Uber has refused.

Uber's above description of the parties' recent meet and confer regarding these issues is inaccurate. For Wave 1 BW cases, Plaintiffs stated the BW deposition dates would be provided but would be contingent upon Uber providing the primary missing BW discovery in advance of the depositions. Plaintiffs offered to provide the deposition dates on a rolling basis in an effort to get all Wave 1 depositions done by the end of May or early June. Uber also proposed a schedule that extends substantial completion of discovery to July 16. For Wave 2 BW cases, Plaintiffs maintained that the deposition dates should be based on trial dates and, of course, proceed once Uber produces the missing discovery. But the parties should prioritize the Wave 1 cases so this is all workable.

Central to this dispute is the fact that *Uber controls the data and documents regarding the subject trips, the subject BW Plaintiffs, and the subject Drivers*. Uber's proposal would force Plaintiffs to prepare for trial and take depositions on unequal footing and allow Uber to ambush vulnerable Plaintiffs at (already stressful) depositions with documents they have never seen. This strategy is antithetical to the policy of early and full discovery of relevant facts embodied in, for example, Rule 26. Indeed, while Uber states that its DFS productions "were substantially complete in each Bellwether case long ago," this is untrue. Uber's DFS productions remain substantially *incomplete*. For 12 of the 20 BW selections, Uber is still producing discovery, including recently producing **128 DFS supplemental productions** after the January 31, 2025 cutoff and, more troubling, after the Bellwether selections on February 21, 2005. Uber previously admitted that such discovery was not complete, stating delayed DFS productions have: "principally been audio recordings and some bits and bobs that sort of take longer to deal with because they're audio recording redactions that need to be applied." *See* 3/28/25 CMC hearing transcript at 23:12-17.

Plaintiffs' counsel should have already had ample time to review *all* DFS data and documents, but Uber's continued rolling productions has made this impossible, leaving uncertainty as to what documents and data Uber does or does not possess, which is why Plaintiffs requested that Uber certify DFS completeness for the BW Plaintiffs. Despite Plaintiffs request for an earlier DFS certification date, the Court granted Uber's request for April 30. Further, Uber must produce the driver "Safety Lens" data linked to each Ticket. (ECF No. 2825.) And there is another pending dispute (which the parties are meeting and conferring on) as to whether Defendants should produce the linked "Rider Tools," "Driver Tools," and "Voyager" GPS data. The parties recently resolved another dispute in which Uber agreed to produce the GPS data in its possession for the subject

3

rides, but so far only the Driver's GPS data (not the rider's location nor the corresponding Uber App status) has been produced for BW cases.[1]

Plaintiffs have repeatedly clarified in meet and confers that BW Plaintiffs' deposition dates should be set for dates that allow for reasonable deposition preparation *after* Uber fully produces very specific discovery, with the remaining discovery responses produced later, on a rolling basis but not *before* BW Plaintiff deposition dates. The necessary discovery includes but is not limited to:

(1) RFP Nos. 28-42, entitled "**Information about the Plaintiff**": These RFPs seek specific information about each BW Plaintiff, including Uber investigations and communications for the Plaintiff, Ticket-Related Documents involving allegations of Sexual Assault and/or Sexual Misconduct; and Uber documents reflecting Metrics Uber kept track of related to the Plaintiff.

(2) RFP Nos. 43-47, entitled "**Incident Location Data**": These RFPs seek specific information about each BW Plaintiff's Incident Location Data including: Uber's Location and Voyager Data reflecting the Driver's movements and/or proximity to the Rider from the time the Driver accepted the Subject Ride until two hours after the Subject Ride; Uber's Chronicle Trip map; and Uber's Location Data for the Plaintiff from 12 hours prior to 12 hours after the Subject Ride

(3) RFP. Nos. 48-53, entitled "**Other Incident Information**": These RFPs seek specific information about each BW Plaintiff Incident, including: User Interactions by Drivers related to the Subject Ride; User Interactions by the Plaintiff related to the Subject Ride; Communications related to the Subject Ride, including Communications with the Rider, third parties, third party witnesses, the Driver, Law Enforcement, Ride Receipts, refunds, and appeasements; and Uber's Investigation of the Subject Incident, including the complete, up-to-date Ticket and Ticket-Related Documents.

Conversely, Plaintiffs have already provided substantial BW case information to Defendants, including written discovery responses from all Wave 1 Plaintiffs (and the Court will rule shortly on Uber's pending notions to dismiss). This is on top of the numerous authorizations Plaintiffs have provided or will provide. And Defendants already know the identity of Plaintiffs' case witnesses per the PFS, so presumably Uber has already been investigating potential witnesses. Thus, the only issue regarding Plaintiff related discovery is depositions and that hinges on Uber's deficient discovery productions, as discussed above.

Again, many of Uber's proposed deposition dates are prior to the earliest date Plaintiffs would receive discovery pursuant to the FRCP. Such discovery (and Uber's certification due on April 30) must be produced at least 10 days prior to these depositions or Plaintiffs will be severely disadvantaged and unduly prejudiced by Uber's failure to adhere to its discovery obligations. *See,*

---

[1] In cases like K.E. (W.D. Tex.), where Plaintiff has alleged that the Driver was physically with her for a substantial amount of time after the subject ride, miles away from where the ride concluded, Defendants should be required to produce GPS data regarding that trip with enough time for Plaintiff to review it well before the deposition.

*e.g., Fausto v. Credigy Services Corp*. 251 F.R.D. 436, 439 (N.D. Cal. 2008) (ordering discovery to be produced prior to deposition because "[o]pen discovery is the norm. Gamesmanship with information is discouraged and surprises are abhorred. Adherence to these principles assists the trier of fact and serves efficiency in the adjudication of disputes.")(internal citation omitted).

Plaintiffs have proposed that Uber produce the specified, necessary discovery for Plaintiffs' depositions to proceed sooner, but Uber has refused. Any delay in moving forward with BW Plaintiff depositions is of Uber's own making. Once Uber adheres to its discovery obligations, BW Plaintiff depositions can soon follow.

## FILER'S ATTESTATION

I, Christopher V. Cotton, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: April 23, 2025

By: */s/ Christopher V. Cotton*
Christopher V. Cotton
