UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084 CRB<br><br>**JOINT LETTER REGARDING PLAINTIFFS' 30(b)(6) DEPOSITION NOTICES**<br><br>Judge:        Hon. Charles R. Breyer<br>Courtroom:   G – 15th Floor |

The Parties respectfully submit this joint letter regarding disputed issues related to Plaintiffs' Notices of 30(b)(6) Depositions.

Respectfully submitted,

DATED:  May 8, 2025

By: /s/ Roopal P. Luhana
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE**
    **CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

    *Co-Lead Counsel for Plaintiffs*

By: */s/ Laura Vartain*
    LAURA VARTAIN
    **KIRKLAND & ELLIS LLP**
    LAURA VARTAIN
    Laura.vartain@kirkland.com
    ALLISON M. BROWN (*pro hac vice*)
    Alli.brown@kirkland.com
    JESSICA DAVIDSON (*pro hac vice*)
    Jessica.davidson@kirkland.com

    CHRISTOPHER C. COTTON (*pro hac vice*)
    **SHOOK, HARDY & BACON L.L.P.**
    2555 Grand Blvd.
    Kansas City, Missouri  64108
    Telephone: (816) 474-6550
    ccotton@shb.com

    **O'MELVENY AND MYERS LLP**
    SABRINA H. STRONG
    sstrong@omm.com
    JONATHAN SCHNELLER
    jschneller@omm.com

    **SHOOK, HARDY & BACON L.L.P.**
    PATRICK OOT (*pro hac vice*)
    ALYCIA A. DEGEN (SBN 211350)
    MICHAEL B. SHORTNACY (SBN 277035)

    *Counsel for Defendants Uber Technologies,*
    *Inc., Rasier, LLC, and Rasier-CA, LLC*

## I.      Defendants' Position:

On March 19 and 21, 2025, Plaintiffs served Uber with a total of eight notices for corporate representative depositions encompassing 162 different topics. The parties' present dispute is limited to three discrete issues. First, Defendants object to topic 1 (which seeks testimony regarding purported spoliation many years ago) and topic 2 (which seeks testimony on whether Uber instructed employees to abuse the attorney-client privilege) of the "Recordkeeping" Notice (Ex. 1), as neither topic satisfies the standard for relevance or proportionality under Rule 26. Second, Plaintiffs have no legitimate basis for demanding that each deponent bring a computer to his or her examination. Third, Defendants seek an order limiting the depositions of three corporate witnesses to seven hours, given either the limited topics on which they have been designated or the extensive corporate representative testimony on substantially overlapping topics in the JCCP coordinated actions.

### A.  Topics 1 And 2 Of Plaintiffs' Recordkeeping Notice Seek Irrelevant Information That Is Disproportionate To The Needs Of This Litigation.

"While Rule 30(b)(6) allows for the deposition of an individual designated to testify on behalf of an organization, the scope of such discovery remains limited by Rule 26 which permits 'discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .'" *United States EEOC v. Sunshine Raisin Corp.*, No. 1:21-cv-01424-JLT-HBK, 2023 U.S. Dist. LEXIS 152294, at *4 (E.D. Cal. Aug. 29, 2023) (quoting Fed R. Civ. P. 26(b)(1)). As explained below, topics 1 and 2 of the "Recordkeeping" Notice do not satisfy this standard.

**Topic 1: Alleged Destruction of Data**

This topic seeks testimony on "[w]hether there was, in fact, a 'mass deletion of internal emails, group chats, and company data, carried out under an internal initiative to eliminate data waste throughout all levels of the company,' as stated by Mike Isaac in his book 'Super Pumped' at page 312[.]" (Recordkeeping Notice, at 6.) Mr. Isaac's unsubstantiated claim of data loss in his book published six years ago is not a legitimate topic of inquiry, and is foreclosed by Uber's production of more than 4.5 million pages of documents from the period 2013 to 2024.

First, Plaintiffs have not "made a preliminary showing of spoliation or any other showing sufficient to justify this discovery." *In re Google RTB Consumer Priv. Litig.*, No. 21-CV-02155-YGR (VKD), 2024 WL 3407069, at *4 (N.D. Cal. July 11, 2024) (denying request for spoliation-related discovery because "[a]t most, there is a dispute about what Google was required to preserve or produce"); *see also, e.g.*, *Deneke v. Menard, Inc.*, No. 5:21-CV-05068-LLP, 2022 U.S. Dist. LEXIS 112073, at *30 (D.S.D. June 22, 2022) ("Because spoliation has not been raised as an issue in this case, the court sees no reason why [defendant] should have to prepare its representative to field questions about [it] at the 30(b)(6) deposition."); *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019) ("[A] Rule 30(b)(6) deposition[] about retention policies and procedures . . . [is] permitted when there is a potential issue of spoliation.").

For example, although Plaintiffs contend that certain "sexual assault litigation began" as early as 2013, they do not claim that any information lost was subject to a legal hold. Instead, Plaintiffs highlight statements from Uber's counsel that unspecified emails were deleted pursuant to retention policies, which "is not actionable spoliation." *Boudreau v. Petit*, No. 17-301MSM, 2025 U.S. Dist. LEXIS 29274, at \*17 (D.R.I. Feb. 19, 2025). Plaintiffs also claim that there are supposed "gaps in Uber's production" because it has only produced 7,100 documents from the custodial file of Uber's former CEO, but that executive departed the company nearly a decade ago, prior to any relevant legal hold. Thus, most of his records would have similarly been handled in accordance with Uber's normal retention policies. And contrary to Plaintiffs' suggestion that the number of documents produced by Uber's current CEO is evidence of something nefarious, it merely reflects the reality that corporate executives tend to engage in less of the day-to-day messaging and drafting that lower-level employees do, and therefore have smaller custodial files of relevant documents.

Plaintiffs also rely on a couple of hearsay allegations of spoliation made outside this litigation, "but more is necessary to" justify spoliation-related deposition questioning. *Edwards*, 331 F.R.D. at 125 ("alleg[ation] that defendant failed to preserve" did not support 30(b)(6) deposition on spoliation). For example, Plaintiffs reference Mr. Isaac's 2019 book claiming that during an unspecified time, unnamed "[e]mployees were unnerved by mass deletion of internal emails, group chats, and company data[.]" (Recordkeeping Notice, at 6.) Even if there were any truth to these hearsay book claims, Plaintiffs fail to explain why Uber would have had a legal duty to preserve that information at the time. Nor have Plaintiffs suggested that any purported loss of information has prejudiced their ability to prove their claims. *See Edwards*, 331 F.R.D. at 125 (precluding examination on spoliation where "Plaintiff has failed to . . . show that any of the relevant communication on [employee's] phone was not available on plaintiff's own cell phone or from defendant's email searches."). Plaintiffs also point to a settlement demand letter sent by counsel for a former Uber employee asserting that two employees within "Uber's Director of Threat Operations (ThreatOps), led Uber's efforts to evade current and future discovery requests . . . ." (May 5, 2017 Letter from C. Halunen to A. Padilla re Richard Jacobs v. Uber ("Jacobs Letter"), at 5 (Ex. 2). Even if there were any truth to those allegations, Plaintiffs have not made the required showing of how any such alleged impropriety in Uber's ThreatOps department has any relevance to the safety-based claims being pressed in this litigation. Notably, plaintiffs do not point to any testimony of witnesses in this litigation that would support these claims.

Second, examining a corporate representative about speculations regarding spoliation would not be "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). To the extent Uber's recordkeeping practices and policies are relevant to Plaintiffs' claims, that subject is covered by the *13 different topics* set forth in the Recordkeeping Notice to which Uber is *not* objecting (e.g., Uber's recordkeeping systems, policies, and practices with respect to, *inter alia*, emails, internal messaging, app development, and marketing.) (*See* "Recordkeeping" Notice, at 7-8.) Any supposed concerns regarding the adequacy of those practices can be addressed under the auspices of those topics.

By contrast, questioning about Mr. Isaac's unfounded claims would invite an "unfocused Rule 30(b)(6) deposition" for which Uber could not even properly prepare. *See Lipari v. U.S. Bancorp, N.A*, No. CIVA 07-2146-CM-DJW, 2008 WL 4642618, at \*6 (D. Kan. Oct. 16, 2008) ("[T]he deposition notice is overly broad and does not define the topics of inquiry with 'reasonable

particularity' as required by Rule 30(b)(6).").  After all, the topic does not contain any temporal limits; nor does the book itself suggest when the alleged "mass deletion" supposedly occurred. And although the book contends that this happened "throughout all levels of the company," Defendants and their subsidiaries had more than 30,000 employees globally and operations in approximately 70 countries and 15,000 cities worldwide as of the end of 2024.[1]  Preparing a single witness to adequately address Mr. Isaac's claims under these circumstances would not only be disproportionate to the needs of this litigation; it would be virtually impossible to accomplish.

**Topic 2: Practices Regarding Uber's Privilege Designations**

Topic 2 of the "Recordkeeping" Notice seeks testimony on "[w]hether Uber employees were taught to engage in various practices designed to 'shroud' sensitive communications 'in attorney-client privilege,' as alleged by counsel for [former Uber employee] Richard Jacobs, in a May 5, 2017 letter attached hereto as Exhibit B[.]" ("Recordkeeping" Notice, at 6.)  Any examination on this subject would circumvent the procedures adopted by the Court for resolving privilege designations and inject thorny "legal issue[s]" into a deposition.  *See Crescent Point Energy Corp. v. Tachyus Corp.*, No. 20-cv-06850-MMC (AGT), 2023 U.S. Dist. LEXIS 125513, at *4-5 (N.D. Cal. July 20, 2023) (sustaining objection to 30(b)(6) topic on party's failure-to-properly-terminate theory because a "corporate representative won't be able to expound upon the basis for Tachyus's legal position without relying on legal advice and attorney-client communications"). As with topic 1, Plaintiffs do not cite any testimony from the many witnesses deposed in this matter that supports the existence of these supposed practices. Uber and its attorneys have made good-faith privilege determinations and withheld and/or redacted documents consistent with the law. If Plaintiffs believe any such designation is improper, the proper course is to request a privilege log describing the nature of the documents and challenge that designation in due course, *see Apple Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 237-38 (N.D. Cal. 2015); it is not to litigate the matter through a 30(b)(6) deposition.

Plaintiffs' reliance on the May 2017 letter does not compel a different conclusion. According to that letter, Craig Clark, Uber's former Legal Director for ThreatOps, improperly trained other employees on "how to use attorney-client privilege[.]"  (Jacobs Letter at 8 (Ex. 2).) However, the same letter expressly concedes that the "slides themselves did not depict or explain any unethical or illegal practices involving attorney-client-privilege[.]"  (*Id.*)  Although the letter alleges that one of the employees interpreted those slides differently based on what Mr. Clark supposedly said, a former employee's description of a decade-old presentation should not be a basis for transforming a 30(b)(6) deposition into an examination of Uber's decision-making process with respect to privilege.  This is particularly so because, as already discussed, the letter is focused on Uber's ThreatOps department, which has no relationship to the safety-based allegations in this litigation.

Although Plaintiffs assert that *Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 927 (N.D. Cal. 2023), supports their privilege argument, that case did not even

---

[1]    *Uber Technologies, Inc. 2024 Form 10-K Annual Report*. U.S. Securities and Exchange Commission.    Feb.    14,    2025,    https://d18rn0p25nwr6d.cloudfront.net/CIK-0001543151/a05d1617-4787-43eb-8018-5ccf90c7ecf8.pdf.

involve the discoverability of a party's approach to attorney-client privilege.  Rather, in *Facebook*, Judge Chhabria sanctioned Facebook and its lawyers for "repeatedly" advancing the same "blanket privilege argument" after another judge had rejected it, leading the court to "wonder[] if the lawyers on the other side began to question their own sanity."  *Id.* at 927.  Here, by contrast, Plaintiffs are essentially seeking to depose a corporate representative about Uber's approach to attorney-client privilege based on a single former employee's accusation made in the context of settlement negotiations.

### B.  <u>Plaintiffs' Demand That Deponents Bring A Laptop To The Examination Is Also Improper.</u>

Uber also objects to Plaintiffs' requests in three of the notices that the 30(b)(6) deponent bring "a laptop or other computer capable of logging into" Uber's platforms or systems.  Plaintiffs contend that this is a "proper" request for ESI inspections under Rule 34.  However, Uber is not aware of – and has not been able to find – *any* authority permitting a corporate deposition to be used in such a manner.  Notably, in *Dawe v. Corrections USA*, 263 F.R.D. 613, 619 (E.D. Cal. 2009) (a case cited by Plaintiffs), the court required a "threshold review of the information and data in order to identify privileged information and prepare a privilege log" *before* inspection, an exercise that would not be feasible during an oral deposition.

Even if an inspection were ever permissible during a 30(b)(6) examination, "Rule 34(a) . . . is not meant to create a routine right of direct access to a party's electronic information system" in light of the serious "confidentiality or privacy'" concerns surrounding such an inspection. *Moser v. Health Ins. Innovations, Inc.*, No. 17cv1127-WQH(KSC), 2018 U.S. Dist. LEXIS 215901, at *15-16 (S.D. Cal. Dec. 21, 2018) (citing Fed. R. Civ. P. 34 advisory committee's note). Rather, "requests to inspect an opposing party's computer 'are granted only under limited circumstances,' such as 'when there is reason to believe that a litigant has tampered with the computer or hidden relevant materials despite demand for them in the course of the lawsuit.'" *Uddin v. O'Brien Rest. Holding Co., LLC*, No. 16-cv-2098 (RJS), 2016 U.S. Dist. LEXIS 205600, at *6-7 (S.D.N.Y. Dec. 2, 2016) (citation omitted) (denying request to inspect defendants' computers because "there is no evidence at all that Defendants systematically failed to disclose" information; rather, "Plaintiffs' insinuations on that score seem founded on mere suspicion").

Plaintiffs' cases are in accord with these principles.  In one of those cases, the court ruled that a party would have to submit its computer to "an agreed-upon neutral inspector" "unless [the party] is able to produce the relevant documents" claimed to be included on that device.  *Ukiah Auto. Invs. v. Mitsubishi Motors of N. Am., Inc.*, 2006 WL 1348562, at *11-12 (N.D. Cal. May 17, 2006).  And in the other, the "Plaintiff need[ed] to access the hard drive of Defendant's computer only because Defendant's actions in deleting . . . e-mails made it . . . impossible to produce the information as a 'document.'"  *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050, 1055 (S.D. Cal. 1999).

Here, by contrast, Plaintiffs point to no such exceptional circumstances.  Instead, Plaintiffs claim that requiring each deponent to bring a laptop to the deposition "is a practical, non-intrusive means of facilitating complete and accurate testimony, particularly where witnesses may not recall or articulate system structure or content from memory."  But transforming these depositions into visual inspections of each deponent's laptop will have precisely the opposite effect, undermining

the flow of the examinations and causing unnecessary delays.  Moreover, there are other methods available to refresh a witness's memory of the system, including showing the deponent the document that is the subject of a particular question.

### C. Sunny Wong, William Anderson, And Mariana Esteves Should Each Sit For No More Than Seven Hours of Deposition.

Finally, Uber seeks an order limiting the depositions of Sunny Wong, William Anderson, and Mariana Esteves to seven hours.  Mr. Wong is designated to testify concerning only five topics across the "Knowledge of Sexual Assault" (15) and "Sexual Assault Prevention" (12-13, 15-16) Notices (Exs. 3-4).   Mr. Anderson is designated to testify regarding 13 topics in the "Recordkeeping" Notice.  And Ms. Esteves is designated on six topics from the "Knowledge of Sexual Assault" (Nos. 10-11) and "Sexual Assault Prevention" (Nos. 11, 14, 22-24) Notices.

Critically, Uber has already provided extensive corporate representative testimony concerning each of these topics in this MDL and in the significantly overlapping JCCP action. *See, e.g.*, *United States v. City of San Diego*, No.  23-cv-541-LL-BJC, 2024 U.S. Dist. LEXIS 234400, at *14 (S.D. Cal. Dec. 30, 2024) ("[T]he Court finds that an additional deposition on this topic would be duplicative of prior deposition topics."); *Corker v. Costco Wholesale Corp.*, No. C19-0290RSL, 2022 U.S. Dist. LEXIS 4696, at *7-8 (W.D. Wash. Jan. 10, 2022) (agreeing that a 30(b)(6) deposition "would be cumulative and unreasonable" since "many of the topics outlined in . . . [the] notice were already discussed in [the witnesses'] individual depositions").

For example, Mr. Wong has already testified as a corporate representative in the JCCP related to the topics he has been designated to address in the MDL.  (*Compare* MDL SA Prevention Topic 15 ("Risk Factors … [and the] associated rate or risk of [SA / SM]") and MDL Knowledge of SA Topic 12 (similar) *with* JCCP Safety Product Features Topic 1 ("risks or signals indicating a higher potential likelihood of [SA / SM]").) Similarly, another corporate witness, Rebecca Payne, has already testified as a corporate representative for two days (nearly 11 hours) in the JCCP related to the topics that Ms. Esteves is designated to speak to in the MDL, and next week, Ms. Payne is scheduled to testify for an additional two days as a corporate representative on those same topics. (*Compare* MDL Sexual Assault Prevention Notice Topics 11 and 14 (Uber's Safety Toolkit and each of its components, including RideCheck) *with* JCCP Safety Product Features Topic 11 (safety measures implemented by Uber).)  And Mr. Anderson testified for an entire day in the JCCP as a corporate representative concerning Uber's "electronic platforms, programs, databases, and information technology systems"; Uber's document preservation policies; and Uber's storage of information concerning sexual assault and sexual misconduct, topics addressed in Plaintiffs' Recordkeeping Notice (s*ee, e.g.*, Recordkeeping Notice, Topics 4-15, seeking information concerning systems and preservation policies).

In short, Uber does not dispute that MDL Plaintiffs are entitled to take their own corporate representative depositions. But the breadth of testimony already given by these representatives or others on the same subjects should be taken into account, making 7-hour depositions of Mr. Wong, Mr. Anderson and Ms. Esteves more than sufficient.  Although Plaintiffs contend that Defendants are improperly seeking reconsideration of the Court's Deposition Protocol setting forth 10.5 hours per examination, Defendants are merely requesting a modest deviation from that default standard given the unique circumstances surrounding these three specific depositions.

## II.    Plaintiffs' Position:

### A. Uber's Objections to Plaintiffs' Recordkeeping Deposition Notice, Topics 1 and 2, Are Meritless

Uber's objections to Topics 1 and 2 of Plaintiffs' Recordkeeping 30(b)(6) deposition notice (related to Uber's document destruction and improper privilege designations) are meritless and ignore this MDL's long and contentious history. *See* 30(b)(b) Deposition Notice (Recordkeeping), attached as <u>Exhibit 1</u>.

### 1.    Topic 1 (Uber's document destruction)

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). A party noticing a deposition pursuant to Rule 30(b)(6) must describe with reasonable particularity the matters on which the examination is requested. Fed. R. Civ. P. 30(b)(6). "Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored." *Louisiana Pacific Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012)(internal citation omitted).

Uber's failure to preserve documents and discovery has been a paramount and relevant issue in this litigation since its inception and has now been brought to the foreground via *significant gaps* in Uber's document production. Uber claims that Plaintiffs have no basis to argue that spoliation of evidence may have occurred. Not so. Uber has previously admitted that, even though passenger sexual assault litigation began no later than 2013, the company: (1) maintained only a six-month e-mail retention policy from September 2015 to January 2023; (2) since January 2023, destroyed emails after 24 months; and (3) in 2020, deleted all Slack messages more than 90 days old.[2] (ECF 57 at 7-8.) And Uber has been unable to identify its email destruction policy that would have been in place prior to September 1, 2015. (ECF No. 607, Ex. 10 at 4.).

Further, Uber previously told the Court that it has at least 5,500 litigation holds related to this matter. (ECF 190 at 3.) But despite Uber's knowledge and litigation relating to sexual assaults on its platform since at least 2013, nearly 5,100 of these sexual assault litigation holds were not placed until 2023 or later (primarily after this Court's PTO 2 Preservation Order) and only 63 custodians were placed on sexual assault hold prior to 2018. (ECF No. 607, Ex. A, ¶ 21.) Even Travis Kalanick, Uber's co-founder and former CEO, was not placed on sexual assault litigation hold until November 29, 2023. (*Id.*) Uber also admitted "[i]t is possible that if there was a period of time where an earlier hold was lifted but before a later hold went in place, some ESI dating before the later legal hold may not have been preserved." (ECF No. 607, Ex. 10 at 3.)

To be clear, Uber first became aware of sexual assault in 2013—its duty to preserve evidence related to sexual assault and corresponding issues therefore began in 2013. So any

---

[2]    On November 3, 2023, in response to concerns about document destruction and evidence spoliation, the Court issued PTO No. 2 which implemented broad preservation of ESI "to ensure the preservation of all documents and ESI that may be discoverable in relation to any of the issues in this litigation." (ECF 65 at 1.)

relevant information related to sexual assault and related issues not preserved by Uber from at least 2013 onward is spoliated evidence. *See In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006)("As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."); *Compass Bank v. Morris Cerullo World Evangelism*, 104 F.Supp.3d 1040, 1051 (S.D. Cal. 2015)("[T]he duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation."). Uber's duty to preserve evidence is not solely tied to when the company belatedly issued litigation holds 10 years later, as Uber erroneously suggests.

Uber's document production confirms that there are significant gaps in Uber's production. For example, Uber's document production for documents prior to 2016 is minuscule compared to later year productions. And when Plaintiffs have requested hyperlinked documents, Uber has responded that certain hyperlinks were associated with dead links and "Despite an exhaustive search, Defendants were unable to locate this document within the Google Vault."

Further, for example, Uber has only produced approximately 7,100 documents from Travis Kalanick's custodial file,[3] including only 116 emails that Kalanick authored during his entire time at Uber, 200 total documents from 2012, and 487 documents from 2013. And privilege logs do not explain the lack of documents produced, as Uber only marked 467 of Kalanick's documents as privileged. It's inconceivable that Travis Kalanick, who oversaw every aspect of Rideshare at Uber, would have so few responsive documents, let alone so few authored emails. As Uber's founder and former CEO, Kalanick's decisions and actions are central to this litigation; his custodial file would presumably be the largest, not the smallest.

The same is true for Dara Khosrowshahi's custodial file. Defendants have produced only 4,653 documents for Mr. Khosrowshahi's custodial, despite the fact that he has been Uber's CEO since September of 2017. In particular, after producing 861 documents created in 2018 and 911 documents created in 2019, the productions for subsequent years never exceeded 500 documents. As with Kalanick, Uber's privilege logs do not account for the minuscule document production, as there are only 218 entries on the privilege logs which have Mr. Khosrowshahi as a custodian. These issues exist for multiple custodians.

And Plaintiffs have more than a sufficient basis to believe Uber's document destruction was intentional. Journalist Mike Isaac in his book "Super Pumped" detailed a "mass deletion of internal emails, group chats, and company data, carried out under an internal initiative to 'eliminate data waste' throughout all levels of the company". Moreover, according to one former senior executive, Uber had "implemented a sophisticated strategy to destroy, conceal, cover up, and falsify records or documents with the intent to impede or obstruct government investigations as well as discovery obligations in pending and future litigation." *See Waymo LLC v. Uber Techs., Inc.*, Case No. 3:17-cv-00939-WHA, Dkt. 2401-1, at 6-7 (ECF No. 2434, Ex. 3).[4] Indeed, Uber implemented a program "for the express purpose of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential litigation." (*Id.*) While Uber asserts the company's document destruction scheme may have been limited to only certain departments,

---

[3]   Uber has represented that its custodial file productions, including Travis Kalanick's, is complete.

[4]   Uber has repeatedly objected to use of this document as hearsay. Uber's 30(b)(6) testimony on these issues will moot those objections.

Plaintiffs have a basis to believe Uber intentionally destroyed documents and should be permitted to explore this issue at a 30(b)(6) deposition. Simply put, Uber's vast array of missing documents spanning more than a decade is unquestionably relevant to this litigation.[5]

As to proportionality, the Court has already addressed Uber's objections multiple times. (ECF No. 345, Ex. 6). To reiterate, Uber is the largest rideshare company in the world. This litigation involves allegations by more than 2,000 sexual assault survivors that Uber has known for at least a decade that Uber users are at risk for sexual assault, but Uber has not done enough to limit that risk. The amount in controversy is undisputedly significant, and Uber generated $37.2 billion revenue in 2023 alone.[6] And Uber's burden to produce a witness on these topics is minimal. Any additional proportionality argument by Uber rings hollow.

### 2. Topic 2 (Uber's scheme to prevent discovery through improper confidentiality designations)

Topic 2, regarding Uber's scheme to prevent discovery in litigation through improper privilege designations, is also relevant and proportional to the needs of this litigation. Indeed, the privilege review process has confirmed that many documents Uber claimed were privileged had no basis for that designation; rather, numerous documents appear to have been simply stamped "privileged" with no basis, or an Uber in-house counsel was merely added to an email chain for no purpose. (ECF No. 2434, Ex. 3.) Importantly, according to one former senior executive, Uber employees were instructed "to conceal documents [] by attempting to 'shroud' them with attorney-client privilege or work product protections. [I]f they marked communications as 'draft,' asked for a legal opinion at the beginning of an email, and simply wrote 'attorney-client privilege' on documents, they would be immune from discovery." (*Id*.)

Such attempts to conceal documents through improper privilege designations is akin to destroying the document in question, as both methods prevent the information from being disclosed in litigation. Uber claims that any examination on this subject would circumvent the procedures adopted by the Court for resolving privilege designations. Not so. While there are procedures in place to review privilege assertions, Plaintiffs are nevertheless entitled to explore Uber's attempts to intentionally prevent documents from being produced in litigation (Uber has been on notice of driver sexual assault allegations since at least 2013), all of which is relevant to, at a minimum, sanctions. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 655 F.Supp.3d 899, 925 (N.D. Cal. 2023)(finding over-designation of documents by Facebook supported the conclusion that they operated in bad faith, which in turn supported sanctions for

---

[5]  It is also not clear what evidence Uber supposedly preserved. For example, Defendants stated that Uber issued litigation holds for "multiple Uber custodians who work on sexual assault or sexual misconduct Incidents." (ECF No. 38 at 8.) But discovery here is not limited to Uber custodians who worked on sexual assault/misconduct issues. Rather, discovery has encompassed, for example, Uber's alleged failure to implement appropriate safety precautions to protect passengers; whether Uber failed to conduct adequate background checks and training of its drivers, whether Uber adequately respond to complaints about drivers, and Uber's representations regarding safety.

[6]  Mansoor Iqbal, Uber Revenue and Usage Statistics (2024), Business of Apps (July 8, 2024), https://www.businessofapps.com/data/uber-statistics/

discovery misconduct). Otherwise, there would be no deterrent to corporations from intentionally abusing attorney client privilege to prevent documents from being disclosed in litigation.

In sum, Uber's document destruction and improper privilege designations (intended to conceal evidence) are clearly relevant and proportional to the claims and defenses in this litigation. Plaintiffs are entitled to explore these areas at a 30(b)(6) deposition (and they are not fully encompassed in other Recordkeeping topics, as Uber erroneously suggests). In turn, Plaintiffs may be entitled to sanctions under Fed. Rule. Civ. P. 37 and/or Uber's intentional spoliation may support Plaintiffs' claims for punitive damages. Certain Plaintiffs may also be able to bring stand-alone claims for intentional spoliation of evidence, which is an independent tort in numerous states. *See, e.g., Webb v. Raleigh County Sheriff's Dept*., 761 F.Supp.2d 378 (S.D. W. Va. 2010)(intentional spoliation of evidence a separate tort under West Virginia law). Uber's objections and refusal to produce a witness on these topics should be denied.

### B. Plaintiffs' Request That Certain 30(b)(6) Witnesses Bring Laptop Computers to Depositions is Narrowly Tailored and Appropriate Under Rule 30(b)(6) and Rule 34

Plaintiffs' request that certain of Uber's designated 30(b)(6) witnesses (Knowledge of Sexual Assault; Sexual Assault Prevention; and Recordkeeping) bring laptop computers to their depositions is narrowly tailored and appropriate under both Rule 30(b)(6) and Rule 34. Fed. R. Civ. P. 34(a)(1)(party may request that any other party "produce and permit the requesting party to inspect, copy, test, or sample" documents, including electronically stored information ("ESI"), and "designated tangible things"), (b)(2)(E)(procedures applicable to discovery of ESI). Specifically, Plaintiffs seek only that the witnesses access and demonstrate certain internal platforms used in the ordinary course of Uber's business—such as systems for investigating safety incidents or retrieving relevant ESI—on a read-only basis during deposition questioning. *See* relevant 30(b)(6) Depositions Notices, attached as <u>Exhibits 1, 3, 4</u>.

This is not a request for forensic inspection, data imaging, or file extraction at this time. Rather, it is a practical, non-intrusive means of facilitating complete and accurate testimony, particularly where witnesses may not recall or articulate system structure or content from memory. Courts have routinely recognized such limited inspections as valid under Rule 34 when tailored to support fact-finding without undue burden. *See, e.g., Dawe v. Corrections USA*, 263 F.R.D. 613, 619 (E.D. Cal. 2009)(granting motion to compel inspection of computer and its ESI); *Ukiah Automotive Investments v. Mitsubishi Motors of North America, Inc*., 2006 WL 1348562, at *11-12 (N.D. Cal. May 17, 2006)(granting request to produce computer for inspection); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1055 (S.D. Cal. 1999)(appointing computer expert to inspect and create a mirror image of the hard drive); *Dawe v. Corrections USA*, 263 F.R.D. 613,619-620 (E.D. Cal. 2009)(granting inspection of computer and its ESI).

To address any potential concerns about scope or confidentiality, Plaintiffs are not requesting access to unrestricted devices or company networks. Plaintiffs are not seeking screenshots, data copies, or exports at this time. Instead, this limited visual access will streamline deposition testimony, reduce post-deposition disputes, and avoid time-consuming supplemental production requests—particularly in light of the tight fact discovery deadlines. This request is proportional, efficient, and well within the scope of permissible discovery.

### C.  Uber Motion For Reconsideration of PTO 16 (Stipulated Deposition Protocol) to Limit Testify to 7 Hours Should Be Rejected

Uber's request for an order limiting certain 30(b)(6) depositions (witnesses Sunny Wong, William Anderson, and Mariana Esteves) to seven hours should be rejected. Per PTO 16, "[f]or depositions pursuant to Rule 30(b)(6), [] [e]very ten and one half (10.5) hours of Rule 30(b)(6) deposition testimony (or 14 hours, if Plaintiffs designate a Rule 30(b)(6) deposition for additional time pursuant to this Order) shall count as one (1) deposition against the overall "soft cap" of forty-five (45) depositions of Uber defendants. The ten and one half (10.5) hours (or 14 hours, if Plaintiffs designate a Rule 30(b)(6) deposition for additional time pursuant to this Order) shall not include questioning by the party defending or other opposing counsel, or time on re-direct or re-cross." (ECF No. 866 at 12.) Thus, Uber is actually seeking reconsideration of the Stipulated Deposition Protocol.

Under Northern District Civil Local Rule 7-9, a party may seek leave to file a motion for reconsideration any time before judgment. Civ. L.R. 7-9(a). A motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the Court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before entry of judgment. Civ. L.R. 7-9(b)(1)-(3). "[A] motion for reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2015 WL 8477293, at *2 (N.D. Cal. Dec. 10, 2015)(quoting *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

Uber's motion for the Court to reconsider the 10.5 30(b)(6) time limit in PTO 16 should be denied. The deposition time limits set out in PTO 16 was a heavily disputed provision which the parties briefed and argued extensively before the Court (with each party submitting separate proposed Deposition Protocols). Defendants have articulated no basis pursuant to Local Rule 7-9 for the Court to reconsider and now limit the deposition time limits while depositions are well underway. While these witnesses may have testified in the JCCP, as Plaintiffs have repeated to the Court multiple times, and the Court has repeatedly articulated, Plaintiffs' allegations in the MDL are broader than the JCCP (involving nationwide claims) and encompass different causes of action (for example, product liability). So MDL Plaintiffs' questions will be much more extensive. Moreover, Defendants are already getting huge efficiencies with more than 2000 Plaintiffs consolidating their questioning into 10.5 hours. And due to TAR and privilege disputes, many custodial documents have been produced late, so these depositions are likely Plaintiffs' only opportunity to ask Uber about them.

As Plaintiffs have informed Uber's counsel, Plaintiffs will endeavor to streamline the depositions and complete them in as short a time as possible, but this also depends on the witness (for example, how well prepared they are and not taking excessive time on the record reading documents). It is not Plaintiffs intention to use all 10.5 hours if that amount of time in not needed. But Plaintiffs should be afforded the 10.5 hours set out in PTO 16, and Defendants have not met their burden showing that the Court should modify its prior order.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/Laura Vartain