UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT
LITIGATION

This Document Relates to:
All Cases

No. 3:23-md-03084-CRB

**ALL PLAINTIFFS' NOTICE OF 30(b)(6)
DEPOSITION OF UBER TECHNOLOGIES,
INC., RASIER, LLC, AND RASIER-CA, LLC**

Judge: Honorable Charles R. Breyer

Pursuant to Federal Rules of Civil Procedure Rules 30(b)(6) and 45, all Plaintiffs will take the deposition by oral examination of Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively "Uber") through one or more of their designees on the topics listed below. This deposition will be taken before a duly qualified Notary Public, at the time and place specified, and continued from day to day thereafter, Sundays and holidays excepted, until completed, on behalf of all Plaintiffs. Pursuant to Federal Rules of Civil Procedure Rules 30(b)(3)(A) and 45(a)(1)(B), notice is given that the deposing party intends to record the testimony by audio and video technology in addition to the stenographic method.  Notice is hereby given that the video is intended for use at trial.

| | |
|---|---|
| **WITNESS:** | **Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC** |
| **DATE:** | **TBD** |
| **TIME:** | **9:00 a.m. Pacific Time** |
| | **LOCATION: TBD** |

Plaintiffs request that Uber identify in writing at least ten (10) business days in advance of the deposition the name(s) of the person(s) who will testify on their behalf and the subject(s) on which each person will testify. And if Uber intends to have a custodian whose deposition is already scheduled (in his or her personal capacity) testify on its behalf on any of these categories, Plaintiffs request that Uber provide notice of the same at least ten (10) business days in advance of that witness' deposition.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, deponent is directed to produce

and permit inspection and copying of the documents and/or tangible things specified in Attachment A to this notice at the time and place of deposition.

## INSTRUCTIONS

1.      For purposes of interpreting or construing the scope of this Notice, the terms shall be given their most expansive and inclusive interpretation unless otherwise specifically limited by the language of an individual topic or request. This includes, without limitation, the following:

    a.  The terms "each," "every," "any," and "all" are synonymous with one another and with "each and every" and "any and all;"

    b.  The connectives "and" and "or" are used inclusively and not exclusively and shall be construed either disjunctively or conjunctively as to require the broadest possible response;

    c.  Construing the singular form of the word to include the plural and the plural form to include the singular;

    d.  Construing the masculine to include the feminine, and vice-versa;

    e.  The use of any tense of any verb shall also include all other tenses of that verb;

    f.  A term or word defined herein is meant to include both the lower and uppercase reference to such term or word;

    g.   Any Bates number referenced herein shall be construed to refer not only to the specific page number identified but to the entirety of the document associated with that Bates number, including any family members;

    h.  Construing the term "including" to mean including but not limited to.

2.       Unless otherwise indicated, the name of any Person, party or business organization shall specifically include all past and present employees, officers, directors, agents, representatives, general partners, limited partners, successors, predecessors, and attorneys of the Person, party, or business organization.

3.     In construing this Notice, You should give effect to the Definitions set forth below. Undefined words and terms shall be given their common meaning.

4.     Unless otherwise indicated, the relevant time period for the topics in this Notice is from January 1, 2009, through the present time.

## DEFINITIONS

1.     "COMMUNICATION(S)," "COMMUNICATING," and "COMMUNICATED" are intended it their broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise).

2.     "DOCUMENT(S)" shall mean and include "writings" as defined in Federal Rules of Civil Procedure Rule 34(a) and include any written, recorded, or graphic material of any kind, prepared by anyone, so long as it is in the responding party's possession, custody, or control. Without limitation of the foregoing, a document is deemed to be in a person or entity's control if that person or entity has the right to secure the document or a copy thereof from another person. The term "DOCUMENT" includes agreements; contracts; letters; telegrams; inter-office communications; memoranda; reports; records; instructions; specifications; notes; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; electronic-mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs.  The term "DOCUMENT" also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document or writing is to be produced in a reasonably legible and usable form.  The term "DOCUMENT" includes all drafts of a "DOCUMENT" and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original.  The term also includes information stored

in, or accessible through, computer or other information retrieval systems (including any computer archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations.

3.    "DRIVER" means anyone other than a taxi driver, limo driver, or charter party carrier who uses or at any time has used the Uber Application to be connected with RIDERs for the purpose of providing rides to RIDERs. Where appropriate, "Driver" shall be interpreted to also include potential or prospective Drivers.

4.    "EPHEMERAL MESSAGING" means a type of COMMUNICATION or MESSAGING software where messages are temporary and designed to be automatically deleted after they have been viewed or after a specified period of time.

5.    "INCIDENT" means a reported SEXUAL ASSAULT, SEXUAL MISCONDUCT, or "serious interpersonal conflict" or "IPC" as Uber uses those terms.

6.    "INFORMATION" (about RIDERS and/or DRIVERS) includes all Documents and data of any kind whatsoever, including both raw data and analyses of that data, regarding RIDERS and/or DRIVERS.

7.    "INTERNAL MESSAGING" means COMMUNICATION between Uber's employees.

8.    "INVESTIGATION DOCUMENTATION" means Uber's DOCUMENTS reflecting, in part or whole, any aspect of its INVESTIGATION of an INCIDENT.

9.    "LOCATION DATA" means coordinates, GPS data, satellite data, and latitude-longitude data regarding RIDERS and/or DRIVERS.

10.    "RECORDKEEPING SYSTEM" means a method for capturing, storing, managing, databasing, sharing, editing, archiving, indexing, classifying, and/or retrieving information, data, and/or documents, including the way in which the information, data, and/or documents are queried, accessed, retrieved, searched, and viewed; whether and how the information, data, and/or documents are linked together, and whether and how audit trails are used and changes are tracked.

11.    "RESEARCH" means observation, focus groups, testing, reliability testing, usability testing, analyses, root cause analyses, hazard assessments, failure mode and effects analyses,

surveys, studies, experimentation, pilot programs, and the collection, interpretation, and evaluation of data, including data from use of Uber's Transportation Network in particular regions or countries.

12.     "REPORTS" or "RIDER REPORTS" mean COMMUNICATIONS from RIDERS to UBER.

13.     "RETENTION POLICIES" mean rules, guidelines, policies, protocols, procedures, and/or guidance for how long different types of Documents should be kept before they are destroyed and/or archived.

14.     "RETENTION PRACTICES" mean how long different types of Documents are actually kept before they are destroyed and/or archived.

15.     "RIDE" or "RIDES" refer to rides arranged via the Uber App, which do not involve a taxi or Charter Party Carrier.

16.     "RIDER" means any individual taking an Uber Ride, regardless of whether the Ride was coordinated through the Uber Application and regardless of whether the Rider was the person who ordered the ride or owner of the account used to order the ride.

17.     "RIDER APP," "UBER APP," "UBER APPLICATION," "UBER APP," or "APP" means Uber's mobile device application that is used by Drivers and Riders to coordinate, provide, or order Uber Rides, including apps used by both DRIVER or RIDER, and including the Uber Driver Application.

18.     "SAFETY" means bodily or physical safety, freedom from harm, freedom from bodily injury, including the freedom from unwanted touching, penetration, threats, imprisonment, harassment, and freedom from fear, terror, and other forms of emotional distress.

19.     "SAFETY INCIDENT" means a SEXUAL ASSAULT, SEXUAL MISCONDUCT, INTERPERSONAL CONFLICT, IPC, or other harm connected with a RIDE.

20.     "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent of the Rider, including but not limited to all acts addressed in Defendants' taxonomy and RALIANCE's Sexual Assault taxonomy.

21.     "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal or staring) of a sexual nature that is without consent or has the effect of threatening or

intimidating a Rider, including but not limited to all acts addressed in Defendants' taxonomy and RALIANCE's Sexual Misconduct taxonomy.

22.    "SUPPORT COMMUNICATIONS" are COMMUNICATIONS that UBER sends or receives with RIDERS and/or DRIVERS who report issues, make inquiries, and/or require assistance, guidance, and/or information.

23.    "UBER," "YOU," "YOUR," or "YOURSELF" shall mean and refer to Uber Technologies, Inc., Rasier LLC, and Rasier-CA, LLC, including each of their  parents, divisions, departments, subsidiaries, affiliates, predecessors, successors, present or former officers, directors, owners, members, partners, principals, agents, employees, contractors, subcontractors, administrators, attorneys, experts, investigators, consultants, joint venturers, licensors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

24.    "UBER APP DEVELOPMENT" means Uber's process for designing, creating, deploying, and maintaining its software applications and systems, including both the front end and the back end, and including but not limited to design, coding, testing, deployment, maintenance, documentation, and project management.

25.    Where specific software programs, such as Voyager, Chronicle, JIRA, Bliss, Zendesk, and Slack are referred to herein, those terms refer to the software programs by the same name(s) that UBER uses or used.

## DEPOSITION TOPICS

1. Whether there was, in fact, a "mass deletion of internal emails, group chats, and company data, carried out under an internal initiative to 'eliminate data waste' throughout all levels of the company," as stated by journalist Mike Isaac in his book "Super Pumped" at page 312, and, if so, the scope, contents, and circumstances of that deletion.

2. Whether Uber employees were taught to engage in various practices designed to "shroud" sensitive communications "in attorney-client privilege," as alleged by counsel for Richard Jacobs, in a May 5, 2017 letter attached hereto as Exhibit B, and, if so, the timing, scope, and circumstances of such teachings by Uber and practices by its employees.

3. Uber's use of Ephemeral Messaging, and its encouragement of Uber employees to use Ephemeral Messaging (including what Ephemeral Messaging was used for, when, and why).

4. Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to Emails (including the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices).

5. Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to Internal Messaging, including Slack Communications (including the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices).

6. Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to Support Communications including Bliss and Zendesk Communications (including the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices).

7. Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to Investigation Documentation, including JIRA tickets and data and documents attached and/or linked to JIRA tickets (including the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices ).

8. Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to Location Data, including Voyager and Chronicle data and Documents (including the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices).

9. Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to Information about Drivers (including the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices).

10. Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to Information about Riders (including the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices).

11. Uber's Recordkeeping System(s) for Uber App Development, including but not limited to its design description documents, implementation strategy documents, QA documentation, project management system, usability testing documents, performance testing documents, source code repositories, software test plans, internal memoranda regarding new features, documentation of the product development process, documentation of the software development life cycle, and documentation of its production rollout (if the software is web-based) and/or pushing of new versions (if the software is App-based).

12. Retention Policies, and Retention Practices with respect to Uber App Development (including the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices).

13. Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to Communications to Riders, including Warnings (including the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices).

14. Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to Marketing and Advertising Campaigns (including whether Uber worked with third parties, which third parties, and the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices).

15. Uber's litigation holds related to Sexual Assault and/or Sexual Misconduct allegations (including the nature, timing, and scope of such litigation holds).


## <u>SCHEDULE B</u>

### DOCUMENTS TO BE PRODUCED

1. Current curriculum vitae or resume for the witness(es) or, alternatively, if one of the foregoing items is not available, a printed and complete copy of his or her LinkedIn profile or similar.

2. All documents the deponent reviewed, referred to, considered, or relied upon in responding to the deposition topics described herein.

3. The custodial file of the deponent, to the extent s/he is not already a custodian.

4. The deponent must bring to the deposition a laptop or other computer capable of logging into Uber's Recordkeeping Systems that are at issue in this deposition notice, and displaying the architecture of those Recordkeeping Systems during the deposition.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the undersigned caused a copy of the foregoing to be served via electronic mail on March 21, 2025, to counsel for Defendants Uber Technologies, Inc., Rasier LLC and Rasier-CA, LLC, at the following email addresses:

jphillips@paulweiss.com
ratkins@paulweiss.com
ksmith@paulweiss.com
rluskey@paulweiss.com
cgrusauskas@paulweiss.com
akeller@paulweiss.com
mtriana@paulweiss.com
mamaru@paulweiss.com
mpricewolf@paulweiss.com
lmurray@paulweiss.com
ksmith@paulweiss.com
jrubin@paulweiss.com
cray@paulweiss.com
mshortnacy@shb.com
oot@shb.com
jhaider@shb.com
vgromada@shb.com
jwikler@shb.com
rlewis@shb.com
bhooper@shb.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

Case No. 3:23-MD-3084-CRB