RACHEL B. ABRAMS (SBN 209316)
ADAM B. WOLF (SBN 215914)
**Peiffer Wolf Carr Kane Conway & Wise, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: 415.766.3544
Facsimile: 415.840.9435
Email: rabrams@peifferwolf.com
Email: awolf@peifferwolf.com

TIFFANY R. ELLIS (*Admitted PHV*)
**Peiffer Wolf Carr Kane Conway & Wise, LLP**
2229 Trumbull St.
Detroit, MI 48216
Telephone: 313.210.1559
Facsimile: 415.840.9435
Email: tellis@peifferwolf.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case 3:23-md-03084-CRB <br><br> MDL No. 3084 <br><br> Honorable Charles R. Breyer <br><br> JURY TRIAL DEMANDED |
| This Document Relates to: <br><br> *K.E. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05281-CRB | |

### AMENDED BELLWETHER COMPLAINT AND DEMAND FOR JURY TRIAL

Under PTO 21 (ECF 1950), Plaintiff files this Amended Bellwether Complaint against the Defendants named below. Plaintiff incorporates the allegations set out in the Master Long-Form Complaint filed at ECF 269 in *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, No. 23-md-3084 (N.D. Cal.).

## I. DESIGNATED FORUM[1]

1. Identify the Federal District Court in which the Plaintiff would have filed in the absence of direct filing: Western District of Texas

## II. IDENTIFICATION OF PARTIES

### A. PLAINTIFF

2. *Injured Plaintiff:* Name of the individual sexually assaulted, battered, harassed, or otherwise attacked by an Uber driver with whom they were paired while using the Uber platform: K.E.

3. At the time of the filing of this Amended Bellwether Complaint, Plaintiff resides at: San Antonio, Bexar County, Texas

### B. DEFENDANT(S)

4. Plaintiff names the following Defendants in this action.

☒ UBER TECHNOLOGIES, INC.;[2]

☒ RASIER, LLC;[3]

☒ RASIER-CA, LLC.[4]

### C. RIDE INFORMATION

5. Plaintiff was sexually assaulted, harassed, battered, or otherwise attacked by an Uber driver in connection with an Uber ride in Bexar County, Texas on April 24, 2022.

6. Plaintiff was the owner of the Uber account used to request the relevant ride.

7. The driver's name was Hector Velis.

8. Plaintiff was clearly intoxicated.

9. The Uber ride was intended to be from a bar to Plaintiff's friends' house.

10. When the vehicle arrived at Plaintiff's friends' house, she was unable to get inside the house.

---

[1] *See* PTO No. 6, at II(C) (ECF 177).
[2] Delaware corporation with a principal place of business in California.
[3] Delaware corporation with a principal place of business in California.
[4] Delaware corporation with a principal place of business in California.

11. The Uber driver said he would take her home.

12. Plaintiff tried to request a different Uber ride, but the driver insisted he would take her home for free.

13. The driver kept asking Plaintiff if she thought he was attractive.

14. When the vehicle arrived at Plaintiff's home, the driver invited himself inside and refused to leave.

15. The driver repeatedly grabbed Plaintiff and attempted to pull her close to kiss her.

16. The driver eventually left Plaintiff's home.

17. The conduct described in the Master Long-Form Complaint and herein was a substantial factor in causing Plaintiff to suffer economic and non-economic harm.

### III. CAUSES OF ACTION ASSERTED

18. The following Causes of Action asserted in the Master Long-Form Complaint, including all allegations in support, are adopted in this Amended Bellwether Complaint by reference:

| Check if Applicable | Cause of Action Number | Cause of Action |
|---|---|---|
| ☑ | I | CLAIM B - NEGLIGENCE (excluding entrustment theory) |
| ☐ | II | CLAIM C - FRAUD AND MISREPRESENTATION |
| ☐ | III | CLAIM E - COMMON CARRIER'S NON-DELEGABLE DUTY TO PROVIDE SAFE TRANSPORTATION |
| ☐ | VI | CLAIM G.1 - VICARIOUS LIABILITY– EMPLOYEE |
| ☐ | VI | CLAIM G.2 - VICARIOUS LIABILITY– APPARENT AGENCY |
| ☐ | VII | CLAIM G.3 - VICARIOUS LIABILITY–RATIFICATION |
| ☑ | VIII | CLAIM H - STRICT PRODUCTS LIABILITY – DESIGN DEFECT |
| ☐ | IX | CLAIM H - STRICT PRODUCTS LIABILITY – FAILURE TO WARN |
| ☐ | X | CLAIM H - STRICT PRODUCTS LIABILITY – PRODUCTS LIABILITY ACTS |

### IV. ADDITIONAL ALLEGATIONS IN SUPPORT OF PRODUCTS LIABILITY CLAIMS

19. **Gender Matching**. The Uber App was in a defective condition unreasonably dangerous to users or consumers, including Plaintiff, because the Uber app was designed with an

1  algorithm that matched female passengers with male drivers and had no modification to allow
2  female passengers the option to be matched only with female drivers.

3        20.    Uber tracks the rates of sexual misconduct and assault committed by its drivers
4  against its passengers and collects data on the gender of the driver and passenger involved in
5  those incidents. At all relevant times, Uber was aware that the risk of sexual misconduct or
6  assault is greater during Uber rides in which the driver is male and the passenger is female, like
7  the ride between the driver and Plaintiff. The risk of sexual assault associated with such pairings,
8  while known to Uber based on its internal data collection and analysis, was beyond that
9  contemplated by the ordinary user or consumer.

10       21.    Uber could have, but did not, modify its matching algorithm on the backend to
11 give female passengers the option to select female drivers. Such a modification is feasible
12 because Uber has made such modifications in markets outside of the United States, such as Saudi
13 Arabia. Uber has not modified the code of the matching algorithm on the backend for the version
14 of the Uber App available in the United States market to allow for female Uber passengers,
15 including Plaintiff, to choose gender-matched rides.

16       22.    Uber knew that a gender-matching option would have prevented assaults like the
17 one suffered by Plaintiff.

18       23.    Had a gender-matching functionality been available, Plaintiff would have toggled
19 it on for the ride in question.

20       24.    Use of the gender-matching option would have prevented her assault by her male
21 driver because Plaintiff never would have been in the car with this driver had a gender matching
22 functionality been toggled on and would, instead, have been paired with an entirely different
23 person.

24       25.    **App-Based Ride Recording**. The Uber App was defective in its design because it
25 could have been, but was not, designed to trigger automatic video recording of rides and the time
26 period immediately around them, whether through using the camera already installed on a
27 driver's cell phone during Uber trips, or through an external device linked to the App.
28

26. The presence of cameras serves a deterrent function that significantly reduces and prevents sexual assault and misconduct. Even the potential for a ride to be recorded serves a deterrent function that significantly reduces and prevents sexual assault and misconduct.

27. Uber is aware that the presence of cameras serves as a deterrent function that can and does significantly reduce sexual assault and sexual misconduct and, to that end, has explored the use of recording functionalities for the Uber App. But these recording functionalities (even if they were available during Plaintiffs' ride) are inadequately designed to address sexual assault or sexual misconduct committed by drivers against passengers.

28. For example, Uber developers modified the code of the Uber App on the back end to allow in-app video recording by the driver. That is, when toggled on by the driver, this functionality allowed drivers to record internal footage of Uber trips using their phone's camera as a dash camera.

29. In addition to making the feature optional, rather than automatic, Uber coded its in-app video recording functionality so that all recordings are encrypted in the Uber App and locally stored on the driver's cell phone, meaning that recordings cannot be obtained by Uber, law enforcement, or any third party without the express authorization of the driver.

30. The result is that in-app video recording does not have any deterrent effect on sexual assault or sexual misconduct by drivers against passengers because drivers exercise absolute control over whether recording happens, and because drivers know that, even if the technology is on, third parties cannot access the recordings.

31. Had the Uber App included automatic video monitoring of rides, by definition that feature would have been engaged on Plaintiff's ride.

32. Automatic video monitoring would have deterred the driver from assaulting Plaintiff.

33. **GPS Route Discrepancy Alerts**. Using its own internal data, Uber was aware at all relevant times that the risk of sexual assault or sexual misconduct was greatest when a driver goes off route, when a driver stops for an unusual amount of time, or when the driver and rider stay in proximity after a ride has concluded. The increased risk of sexual assault associated with

1  these route deviations as well as the prevalence of their occurrence, were risks beyond that
2  contemplated by the ordinary user or consumer, who lacked access to Uber's internal data or
3  analytics.

4     34.  The Uber App is designed to receive, track, and monitor GPS data from riders and
5  drivers at all times while using the Uber App. Uber monitors GPS data from both driver and rider
6  phones. Specifically, while in use, the Uber App ingests GPS location information and telematics
7  data from driver and rider phones, which its algorithm uses to Uber uses these data to, for
8  example, automatically direct the driver to the rider's location, and monitor the speed, braking,
9  and other driving maneuvers, as well as to predict route times.

10    35.  The data Uber collects give it the capability to detect when a ride has deviated
11  from the expected route, including when a driver goes off route, when a driver stops for an
12  unusual amount of time, or when the driver and rider stay in proximity after a ride has concluded.

13    36.  Uber could have, and should have, designed the App to use the GPS technology
14  that it already built into the app to automatically trigger safety alerts in the event of route
15  deviations, unusually long stops, or excessive time spent with a passenger at the beginning or end
16  of a route.

17    37.  An appropriately-designed GPS Alert function would have triggered an alert
18  during Plaintiff's ride due to the excessive time spent in proximity with the driver at the
19  conclusion of the ride.

20    38.  An appropriately-designed GPS Alert function would have prevented or lessened
21  the severity of Plaintiff's assault, including by deterring the driver from engaging in the assault in
22  the first place or summoning an intervention.

23    **WHEREFORE**, Plaintiff prays for relief and judgment against Defendants for economic
24  and non-economic compensatory and punitive and exemplary damages, together with interest,
25  costs of suit, attorneys' fees, and all such other relief as the Court deems proper. At this time,
26  Plaintiff does not seek injunctive relief, but reserves all rights to later seek such relief as
27  appropriate under Fed. R. Civ. P. 15(b)(2) and Fed. R. Civ. P. 54(c).
28

## JURY DEMAND

Plaintiff demands a trial by jury as to all claims in this action.

Dated: March 14, 2025

/s/ *Rachel B. Abrams*
RACHEL B. ABRAMS (SBN 209316)
ADAM B. WOLF (SBN 215914)
**Peiffer Wolf Carr**
**Kane Conway & Wise, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: 415.766.3544
Facsimile: 415.840.9435
Email: rabrams@peifferwolf.com
Email: awolf@peifferwolf.com

TIFFANY R. ELLIS (*Admitted PHV*)
**Peiffer Wolf Carr**
**Kane Conway & Wise, LLP**
2229 Trumbull St.
Detroit, MI 48216
Telephone: 313.210.1559
Facsimile: 415.840.9435
Email: tellis@peifferwolf.com

*Attorneys for Plaintiff*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory above has concurred in this filing.

Dated: March 14, 2025			By:	/s/ Annie M. Wanless
						Annie M. Wanless