LAURA VARTAIN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANT UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC'S BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS PURSUANT TO SPECIAL MASTER ORDER NO. 4, § III, ¶ 2 (DKT. 2933)** |

Pursuant to Special Master Order No. 4, III, ¶ 2 (Dkt. 2933), Defendants submit this brief in support of Uber's privilege assertions for documents it has clawbacked pursuant to Pretrial Order No. 14. Uber respectfully requests that the Special Master uphold Uber's privilege claims for the 51 documents Plaintiffs have challenged.

Uber incorporates by reference the legal standard and arguments set forth in its prior briefing (Dkts. 2433, 2461, 2528, 2544, and 2580). As further support for its privilege claims, Uber provides the arguments and factual support listed below, including the declarations from three Uber in-house

attorneys: Jennifer Handley, Senior Legal Director, Global Safety (Ex. A), Scott Binnings, Uber's Associate General Counsel, Safety and Core Services (Ex. B), and Daniel Kolta, Legal Director, Global Safety (Ex. C). The applicable legal standard and arguments outlined below and in prior briefs, the attached declarations from in-house counsel, and the factual material previously provided to the Special Master,[1] when reviewed in conjunction with the challenged documents and the associated metadata fields, establish that the documents at issue are privileged.

### I. Uber Has Appropriately Exercised Its Right to Clawback Privileged Documents.

Each of the documents submitted for the Special Master's review should maintain protection as privileged, notwithstanding prior production. Uber has appropriately exercised its clawback rights under Stipulated and Pretrial Order No. 14: Federal Rule of Evidence 502(d) and Privilege Materials ("PTO 14") (Dkt. 396). PTO 14 provides that "the production of any privileged or otherwise protected or exempted information in this case ***shall not be deemed a waiver or impairment of any claim of privilege or protection in this case*** or in any other federal or state proceeding, including, but not limited to, the attorney-client privilege, the protection afforded to work product materials, statutory privileges and protections, or the subject matter thereof, as to the produced document and any related material." PTO 14, Sec. B.2 (emphasis added).

Uber timely notified Plaintiffs of its intention to clawback these documents. Plaintiffs concede that Uber has provided a privilege log and replacement images for all documents in this group and that the specific documents that are the subject of this specific set of challenges presently before the Special Master were not included on any Tranche 1-4 log, and therefore these documents are not the subject of Plaintiffs' arguments concerning waiver (*see* Pls.' Apr. 29, 2025, Resp. to Master's Requests at p. 7, Category 2). Thus, the Special Master should consider and decide the privilege claim for each document at issue in this set presented to the Master.

### II. Plaintiffs Did Not Timely Challenge the Privilege Claim for Three Documents.

---

[1] As requested by the Special Master, Uber has provided (1) a glossary of terms commonly used in disputed documents, (2) a list of names and titles of relevant Uber inside and outside counsel, and (3) a digest of third-parties present in its privilege log. Defense counsel will also be available for any questions the Special Master may have during the review process.

1    The Special Master should reject Plaintiffs' challenges as to three documents because they failed to raise any dispute until *after* the parties' May 8, 2025 meet and confer. JCCP_MDL_PRIVLOG072883, JCCP_MDL_PRIVLOG073003, and JCCP_MDL_PRIVLOG077627 were logged on March 3 and April 1 and produced with redactions on March 21 and April 19. While Plaintiffs challenged hundreds of documents during that time period, they raised no objection as to the redactions in these three documents until May 9, 2025, when they provided their list of challenges to the Special Master. Indeed, Defendants saw the challenges for the first time when they were emailed to the Special Master on May 9, despite Plaintiffs having represented to the Special Master that all of the documents in their Category 2 were subject to existing challenges as of April 29. Plaintiffs' challenges to these three documents are untimely and should be rejected.

### III. Additional Factual Information Supports Uber's Privilege Assertions.

#### A. Attached Declarations from Uber's In-House Counsel

To provide additional factual support for its privilege assertions for the documents identified below, Uber submits the attached declarations from Jennifer Handley, Senior Director, Safety Legal, Global (Ex. A), Scott Binnings, Uber's Associate General Counsel, Safety and Core Services (Ex. B), and Daniel Kolta, Legal Director, Global Safety (Ex. C).

<u>Jennifer Handley's Declaration:</u>

JCCP_MDL_PRIVLOG083040

JCCP_MDL_PRIVLOG083042

JCCP_MDL_PRIVLOG083044

As Ms. Handley explains in her declaration, these documents are automatically generated emails notifying the recipients that comments or edits have been made in a confidential and privileged Google document titled "US&C Mass Tort Playbook - T&S (A/C Priv & Confidential)." These automatically generated emails repeat verbatim part of the text of the underlying Mass Tort Playbook, as well as the edits and comments that the collaborators made concerning that specific part of the Playbook.

The Mass Tort Playbook is privileged because it was created with legal guidance and direction in response to, and in anticipation of, litigation provided by Uber's in-house attorneys, including then-Senior Counsel, Safety and Insurance Litigation, High Exposure, US & Canada Mariana Gerontides, then-Director Safety and Insurance Litigation, Special Matters, US & Canada Lauren Shapiro, then-Senior Counsel, Safety and Insurance Litigation, High Exposure, US & Canada Cameron Gordon, and Ms. Handley.  The Mass Tort Playbook reflects legal advice provided by Ms. Handley and other Uber in-house counsel and was maintained confidentially with only limited employees who needed to review the Playbook to perform their jobs receiving access.  Indeed, the draft Mass Tort Playbook from which the challenged Google email notifications were generated was included in Uber's privilege log as JCCP_MDL_PRIVLOG030364.  Just as the draft Mass Tort Playbook itself is privileged, the comments made in that document and repeated verbatim in the automatically generated emails identified as JCCP_MDL_PRIVLOG083040, JCCP_MDL_PRIVLOG083042, and JCCP_MDL_PRIVLOG083044 are also privileged.

Scott Binnings' Declaration:

JCCP_MDL_PRIVLOG083060

The redacted portions of this draft PowerPoint presentation are privileged because they reveal Mr. Binnings' and other in-house attorneys' analysis and conclusions concerning the potential legal implications of an initiative to promote rider safety in the United States.

As Mr. Binnings explains in his declaration, the presentation is stamped "Attorney-Client Privileged & Confidential," and six Uber in-house attorneys are identified as collaborators in the privileged PowerPoint document: Chief Legal Officer & Corporate Secretary, Tony West; then-Global Senior Counsel, Safety, Amos Davis; then-Legal Director, Global Safety, Daniel Kolta; then-Associate General Counsel, Safety & Insurance, Katie Waitzman; then-Chief Deputy General Counsel, Tammy Albarran; and Mr. Binnings. To provide the legal advice reflected in the redacted portions of this document, the legal counsel collaborators researched and analyzed various federal and state laws, as well analyzed the legal ramifications of prior litigation the company faced.  The redacted

1  portions of this document were created to facilitate, and in fact facilitated, the provision of legal advice
2  to Uber's executive leadership team concerning this initiative.
3  JCCP_MDL_PRIVLOG083064
4      As Mr. Binnings explains in his declaration, this is a confidential document that describes
5  Uber's United States and Canada Investigation ("USCAN Investigation") protocols for processing and
6  responding to issues reported by public health officials, reports received by the Law Enforcement
7  Response Team ("LERT"), and mass tort cases filed against the company.  The redacted portions of
8  this document are privileged because they were created in response to, and in anticipation of, litigation
9  against Uber involving allegations of sexual misconduct. Those redacted portions concern the steps
10 for processing, investigating, and responding to pending lawsuits against the company. For example,
11 the redacted Mass Tort Incident Severity Matrix reflects legal opinions regarding how to process and
12 respond to various types of allegations brought against the company.  Moreover, the redacted portions
13 of this document were created to facilitate, and in fact facilitated, the provision of legal advice to
14 Uber's employees concerning protocols following the filing of cases against Uber concerning safety
15 issues, and in fact supported the company's response to actual filed and threatened litigation.
16 Daniel Kolta's Declaration:
17 JCCP_MDL_PRIVLOG083074
18     Plaintiffs challenged this March 2021 chat because "no attorney a party to the chat – non-
19 attorneys discussing process."  The Special Master should reject this meritless challenge because under
20 well-settled California law the attorney-client privilege extends to communications between corporate
21 employees about legal advice. *See*, *e.g.*, *OwLink Tech., Inc v. Cypress Tech. Co., Ltd*, 2023 WL
22 4681543, at *2 (C.D. Cal. June 29, 2023) ("Under California law, the communications of corporate
23 employees with counsel, *or with each other about legal advice*, are privileged." (emphasis added)).
24 The chat at issue here is privileged because Uber non-attorney employees are conveying and
25 discussing the legal analysis and conclusion that Mr. Kolta and other Uber in-house attorneys provided
26 in anticipation of litigation related to a proposed rider safety program.
27
28

As Mr. Kolta explains and confirms in his declaration, he is the "Daniel" referenced in the initial message of the chat started by then-Senior Product Manager Rebecca Payne on March 23, 2021. Mr. Kolta confirms that he spoke with Ms. Payne before this chat was created and during that conversation he explained to her in his capacity as an attorney for Uber that Uber's legal department had performed an analysis to project the potential legal costs associated with implementing a proposed rider safety program that could face a variety of legal challenges. The estimated potential legal cost in light of potential future legal challenges referenced in JCCP_MDL_PRIVLOG083074 was a legal conclusion that required legal analysis and judgment of the types of potential causes of action and challenges, the number of potential claimants, and the merits of the potential lawsuits. To reach this legal conclusion, Mr. Kolta and other Uber in-house attorneys researched and analyzed various federal and state laws, along with case law interpreting and applying such laws, and Uber's prior litigation experience.

Ms. Payne's initial message in the chat is privileged because she relays the legal advice Mr. Kolta provided during her previous conversation with him. Indeed, her message specifically conveys what "Daniel said." The subsequent messages in the chat are also privileged because the four Uber employees reference, discuss, and comment on Mr. Kolta's legal conclusion. *See Zurich Am. Ins. Co. v. Superior Ct.,* 155 Cal. App. 4th 1485, 1502 (2007) ("If legal advice is discussed or contained in the communications between [corporate] employees, then to that extent, it is presumptively privileged. A communication reflecting a discussion of litigation strategy which expresses that the strategy is in response to advice of counsel would come within the privilege"); *see also*, *Staley v. Gilead Scis., Inc.*, 2021 WL 4318403, at *2 (N.D. Cal. July 16, 2021) ("the attorney-client privilege can still obtain even where a business decision is implicated. Specifically, if an attorney gives a client legal advice on a business decision, that communication is protected by the privilege").

### B. April 18, 2025 Declaration from Daniel Kolta

In support of the privilege assertions for the 20 documents listed below, Uber incorporates by reference the April 18, 2025 declaration of Daniel Kolta that was provided ex parte to the Special Master. Indeed, the documents at issue in this set are similar to the ones that were included in Mr.

Kolta's prior declaration and which the Special Master found to be privileged. *See* April 28, 2025 Master Privilege Determinations Custodian Kansal (finding JCCP_MDL_PRIVLOG079870, JCCP_MDL_PRIVLOG079712, JCCP_MDL_PRIVLOG079416, and JCCP_MDL_PRIVLOG079417 to be privileged). Mr. Kolta's April 18 declaration provides additional support for the privilege assertion as to the following 20 documents:

- JCCP_MDL_PRIVLOG084446
- JCCP_MDL_PRIVLOG084448
- JCCP_MDL_PRIVLOG084449
- JCCP_MDL_PRIVLOG084460
- JCCP_MDL_PRIVLOG084859
- JCCP_MDL_PRIVLOG084860
- JCCP_MDL_PRIVLOG085045
- JCCP_MDL_PRIVLOG085056
- JCCP_MDL_PRIVLOG085057
- JCCP_MDL_PRIVLOG085508
- JCCP_MDL_PRIVLOG085613
- JCCP_MDL_PRIVLOG085614
- JCCP_MDL_PRIVLOG085635
- JCCP_MDL_PRIVLOG085645
- JCCP_MDL_PRIVLOG085651

- JCCP_MDL_PRIVLOG085652
- JCCP_MDL_PRIVLOG085653
- JCCP_MDL_PRIVLOG085654
- JCCP_MDL_PRIVLOG085655
- JCCP_MDL_PRIVLOG085662

As explained in Mr. Kolta's April 18 declaration, he was intimately involved with the development of the feature referenced in these documents as Product Counsel since its inception. Product Counsel advises various Uber development teams on where tests can be conducted and the experimental parameters that may be included for evaluation. The dominant purpose of Product Counsel's relationship with the development teams is identifying, managing, and advising on legal risks associated with the development of new features. The documents identified below reflect his close involvement providing legal advice to the developers as Product Counsel and Mr. Kolta's role in managing legal risks based on experimental data and trends observed by the development team. Each of the challenged documents identified below are privileged because they were made during the course of an attorney-client relationship and were to facilitate the provision of legal advice. *See* Special Master's Ruling on Obj. (Apr. 11, 2025) (quoting *Costco v. Wholesale Corp. Sup. Ct.*, 47 Cal. 4th 725, 740 (2009) ("If 'the communications were made during the course of an attorney-client relationship'—as opposed to a relationship with some other 'dominant purpose'—then 'the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means.'")). The dominant purpose of the relationship between in-house counsel and the development team was attorney-client, rendering the challenged documents privileged. *See* Special Master's Ruling on Obj. (Apr. 11, 2025) (quoting *McAdam v. State Nat. Ins. Co.*, 15 F. Supp. 3d 1009, 1015 (S.D. Cal. 2014) ("If the dominant purpose of the relationship was attorney-client at the time of the communications, they are privileged.")).

For these reasons, the Special Master should uphold Uber's privilege claims as to each of the documents submitted for review.

DATED: May 13, 2025                     Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Maria Salcedo*
     MARIA SALCEDO

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN
ALLISON M. BROWN
JESSICA DAVIDSON

**O'MELVENY AND MYERS LLP**
SABRINA STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)
   oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
   adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
   mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
   ccotton@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
   msalcedo@shb.com
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547


*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS PURSUANT TO SPECIAL MASTER ORDER NO. 4, § III, ¶ 2 (DKT. 2933)
Case No. 3:23-MD-3084-CRB