UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br>ALL CASES. | Case No. 23-md-03084-CRB   (LJC)<br><br>**ORDER RESOLVING DISCOVERY LETTER REGARDING RULE 30(b)(6) DEPOSITIONS**<br><br>Re: Dkt. No. 2957 |

The parties have filed a joint discovery letter raising several disputes regarding depositions of Uber's corporate representatives under Rule 30(b)(6) of the Federal Rules of Civil Procedure. The Court held a hearing on May 13, 2025, and now resolves those disputes as follows.

### A.  Deposition Topics Related to Recordkeeping

#### 1.  Purported Mass Deletion

Topic 1 of Plaintiffs' deposition notice related to recordkeeping practices reads as follows:

> Whether there was, in fact, a "mass deletion of internal emails, group chats, and company data, carried out under an internal initiative to 'eliminate data waste' throughout all levels of the company," as stated by journalist Mike Isaac in his book "Super Pumped" at page 312, and, if so, the scope, contents, and circumstances of that deletion.

Dkt. No. 2957-1 at 6 (Topic 1).  Uber objects to that topic on a multiple grounds.

First, Uber contends that "Plaintiffs have not 'made a preliminary showing of spoliation or any other showing sufficient to justify this discovery.'"  Dkt. No. 2957 at 3 (quoting *In re Google RTB Consumer Priv. Litig.*, No. 21-cv-02155- YGR (VKD), 2024 WL 3407069, at *4 (N.D. Cal. July 11, 2024)).  In the *Google* litigation, however, Judge DeMarchi was addressing whether the plaintiffs had made a sufficient showing to overcome the normal application of attorney-client privilege to litigation holds and related communications.  2024 WL 3407069, at *3–4.  Whether Uber made an affirmative effort to delete internal documents and data is a different question from

how it implemented litigation holds, and Uber has not argued that any such effort would be protected by privilege.[1]

Some courts, including other decisions cited by Uber, have held "that ESI storage and retention discovery is improper when the requesting party has made no showing that spoliation is an issue." *Deneke v. Menard, Inc.*, No. 5:21-cv-05068-LLP, 2022 WL 2237827, at *10 (D.S.D. June 22, 2022). Uber does not take such a strong position in this case, where Uber specifically does not object to other such topics in the same deposition notice, including for testimony regarding "Uber's recordkeeping systems, policies, and practices with respect to, inter alia, emails, internal messaging, app development, and marketing. Dkt. No. 2957 at 4 (Uber's paraphrasing of Plaintiffs' requests). As a general matter, given the scope of this litigation and the parties' discovery disputes thus far, the Court finds that at least some discovery regarding Uber's recordkeeping and retention is relevant proportional to the needs of the case even if only to show what does or does not remain available for production, without reaching the question of whether Plaintiffs have made any showing of spoliation.

The Court agrees with Uber, however, that this particular deposition topic is potentially overbroad and duplicative of the other topics to which Uber does not object. Uber has apparently agreed to provide a witness to testify regarding, for example, "Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to Emails (including the timeline of changes to these Recordkeeping System(s), Retention Policies, and Retention Practices)." Dkt. No. 2957-1 at 7 (Topic 4). The same is true of policies and practices regarding the retention of internal messaging, support communications, investigation documentation, location data, driver and rider information, app development materials, and marketing campaigns. *Id.* at 7–8 (Topics 5–10 and 12–14). As the Court understands those topics and their references to "Retention Practices" (defined as "how long different types of documents are actually kept before they are destroyed and/or archived," *id.* at 5), Uber's witness(es) will need to be prepared to answer questions as to whether Uber engaged in company-wide deletion of any of *those categories* of

---

[1] Uber has not raised any dispute regarding Plaintiffs' separate topic seeking testimony regarding litigation holds. *See* Dkt. No. 2957-1 at 8 (Topic 15).

2

documents and data as part of any "internal initiative to 'eliminate data waste.'" *See id.* at 6 (Topic 1).

In answering questions in connection with Topic 3—another topic that Uber has not objected to—Uber's witnesse(es) shall be prepared to answer questions regarding the existence and implementation of any program of ephemeral and encrypted communications to conceal records or documents or otherwise avoid discovery obligations in litigation. Dkt. No. 2957 at 9 (citing Jacobs Letter). Though the Jacobs letter was written and filed in connection with separate legal matters, it raises the prospect that Uber may have adopted modes of communication that impacted its recordkeeping and retention of material relevant to this litigation. Plaintiffs' inquiry into this topic, including whether Uber employees' use or the company's encouragement of the use of ephemeral messaging has extended beyond the ThreatOps teams, is proportionate to this case.

Accordingly, it appears that Plaintiffs can get most if not all of the potentially relevant information they are seeking through topics that are not in dispute. To the extent that Topic 1 would require a witness to be versed in any potential mass deletion that may have occurred regarding any *other* categories of information, the Court agrees that it is overly vague and not sufficiently relevant to warrant the burden of preparing a witness to testify to it.[2] Uber's request for a protective order excusing it from producing a Rule 30(b)(6) witness to testify to Topic 1 is GRANTED, but this Order is not intended to carve out information that might also be responsive to that topic from the scope of other topics to which Uber has not objected. In this respect, Plaintiffs are still able to explore within more clearly defined, noticed topics whether broad deletions of data or concealment of information occurred, and Uber is able to reasonably prepare its 30(b)(6) witness(es) for such questions.

### 2. Purported Misuse of Attorney-Client Privilege

Uber also objects to the second topic in the same deposition notice, which reads as follows:

---

[2] At the May 13, 2025 hearing, Plaintiffs' counsel characterized the scope of this topic as "difficult to pin down precisely," underscoring the Court's concerns about the practical difficulty of preparing a witness for it.

3

> Whether Uber employees were taught to engage in various practices designed to "shroud" sensitive communications "in attorney-client privilege," as alleged by counsel for Richard Jacobs, in a May 5, 2017 letter attached hereto as Exhibit B, and, if so, the timing, scope, and circumstances of such teachings by Uber and practices by its employees.

ECF No. 2957-1 at 6 (Topic 2).

The Court shares Plaintiffs' concerns that Uber may have systematically over-designated documents as privileged, both in its original privilege logs in this litigation and in headers and similar markers included in documents at the time they were created. As Uber notes, however, the letter on which Plaintiffs rely alleges misuse of attorney-client privilege designations by Uber's "ThreatOps" team, a department that Plaintiffs have not argued is relevant to this litigation. *See* ECF No. 2957-2 at 8–9; *see also id*. at 3–4 (describing the role of the ThreatOps team, with no reference to rider safety or diver misconduct).

Plaintiffs have by now received a very large quantity of documents, engaged in extensive disputes regarding privilege designations before this Court and Special Master Jones, and identified witnesses with relevant knowledge for individually noticed depositions. Plaintiffs will have ample opportunity in those depositions to explore the training those witnesses may have received regarding purported misuse of attorney-client privilege, and to ask questions about particular documents that were marked as privileged but later de-designated or ordered produced, to the extent such training or guidance is not itself privileged. Those witnesses, and their immediate colleagues, are the Uber employees whose use of privilege markers (and perhaps other efforts to shield documents within attorney-client privilege) would be most relevant to this litigation. Under the circumstances, the Court agrees with Uber that preparing a Rule 30(b)(6) witness to testify generally regarding Uber's training of any of its tens of thousands its employees regarding attorney-client privilege is unduly duplicative, burdensome, and disproportionate to the needs of this litigation.

Uber's request for a protective order excusing it from producing a Rule 30(b)(6) witness to testify to Topic 2 is therefore GRANTED.

### B. Requests to Bring Laptops

Three of Plaintiffs' Rule 30(b)(6) deposition notices request that the deponents bring

laptops with access to Uber's systems to the depositions. Specifically, the notices include the following paragraphs:

> 4. The deponent must bring to the deposition a laptop or other computer capable of logging into Uber's Recordkeeping Systems that are at issue in this deposition notice, and displaying the architecture of those Recordkeeping Systems during the deposition.

Dkt. No. 2957-1 at 8 (deposition notice generally regarding recordkeeping and retention practices).

> 4. The witness must bring to the deposition a laptop or other computer capable of logging into Uber's platform(s) for storing current and past policies (including but not limited to playbooks, operational guidelines, protocols, and scripts), such that the witness is able to demonstrate the architecture of the platform(s), and the way in which the policies are organized, linked, accessed, viewed, and interacted with.

Dkt. No. 2957-3 at 13 (deposition notice generally regarding efforts to protect riders from sexual misconduct by drivers).

> 6. The witness must bring to the deposition a laptop or other computer capable of logging into the platform(s) that Uber's investigators use when they are investigating a reported Safety Incident, such that the witness is able to demonstrate the architecture of the platform(s), and the way in which the investigator's resources are organized, linked, accessed, viewed, and interacted with.
>
> 7. The witness must bring to the deposition a laptop or other computer capable of logging into Uber's platform(s) for storing current and past policies (including but not limited to playbooks, operational guidelines, protocols, and scripts), such that the witness is able to demonstrate the architecture of the platform(s), and the way in which the policies are organized, linked, accessed, viewed, and interacted with.

Dkt. No. 2957-4 at 9–10 (deposition notice generally regarding Uber's knowledge of sexual assault by drivers, among other topics).

Uber expresses concern that Plaintiffs might plan to use those depositions to conduct a free-ranging inspection of Uber's electronic systems and records. Dkt. No. 2957 at 6. The Court agrees with Uber that Plaintiffs have not shown sufficient cause for such an inspection.

Plaintiffs assert that they are neither "requesting access to unrestricted devices or company networks" nor "seeking screenshots, data copies, or exports at this time," but instead "seek only

that the witnesses access and demonstrate certain internal platforms used in the ordinary course of Uber's business—such as systems for investigating safety incidents or retrieving relevant ESI—on a read-only basis during deposition questioning." Dkt. No. 2957 at 11.  Uber asserts that Plaintiffs have not identified any authority requiring this sort of inspection at a Rule 30(b)(6) deposition, and that doing so introduces risks of exposing privileged communications, intruding on confidential or private information, and "undermining the flow of the examinations and causing unnecessary delays." *Id.* at 6–7.

Although Plaintiffs' requests are unusual, a laptop falls within the literal scope of "tangible things" that a party deponent can be required to produce at a deposition under Rule 30(b)(2).  That said, the degree of information contained within or accessible from a laptop, particularly when it is connected to a party's propriety networks, warrants caution before authorizing such request and safeguards as to how the laptop may be accessed.  In many cases, such a request would not be appropriate.

Here, though, some sort of demonstration of the operation and architecture of Uber's internal recordkeeping systems is likely an appropriate and proportional topic for discovery, particularly in light of the many disputes the parties have raised thus far regarding how Uber's documents are organized.  The Court's understanding is that the anticipated demonstrations would be less intrusive than the sort of inspections of electronically stored information that can, in appropriate circumstances, be authorized under Rule 34.[3]  These depositions could be an efficient opportunity to provide such demonstrations, so long as they can be done in a way that does not disclose privileged information.

Uber's concerns about confidentiality (other than for privileged information) also carry some weight, albeit more limited in light of the protective order in this litigation.  Uber's concerns about delay and "flow" ring hollow when—as discussed further in the following section of this Order—Plaintiffs' time for 30(b)(6) depositions is limited under Pretrial Order No. 16.

---

[3] *See* Dkt. No. 2545 at 6 (authorizing an inspection of Uber's policy documents as they are organized on Uber's network); Dkt. No. 2614 (referring the terms of that inspection to be resolved by the Special Master).

6

The Court therefore ORDERS as follows:

(1) Prior to each deposition for which Plaintiffs have asked the deponent to bring a laptop in the three deposition notices at issue, the parties shall meet and confer regarding the demonstrations that Plaintiffs anticipate requesting at that deposition, to determine whether they can agree to a format for the demonstration to occur either at the deposition or separately from the deposition.

(2) The deponents for the three deposition notices at issue shall each bring a laptop to their deposition with that deponent's normal level of access to Uber's systems, to the extent that such access is available outside of Uber's physical offices.

(3) If Uber does not already provide employees with remote access to certain systems outside its offices, this Order does not require Uber to create a method for such remote access.

(4) Plaintiffs' counsel may ask the deponent to demonstrate certain systems or platforms, regardless of whether such demonstrations were anticipated and discussed prior to the deposition.

(5) Although Plaintiffs may *ask* for demonstrations, Uber's counsel may instruct the witness not to provide a particular demonstration (or the witness may refuse to provide such demonstration) if Uber believes the demonstration: (a) would reveal privileged information; (b) would reveal extremely sensitive information that is not relevant to this litigation; or (c) should not be provided for some other compelling reason. This clause is deliberately broader than the otherwise permissible grounds for instructions not to answer questions at a deposition.

(6) In the event of such a dispute, the parties may file a joint letter consistent with Pretrial Order No. 8 after the deposition. If the Court determines that a disputed demonstration is warranted, the Court might allow Plaintiffs to reopen the deposition for that purpose, authorize an inspection under Rule 34, or grant any other relief the Court finds appropriate.

(7) The depositions must be conducted in a way that allows the deponents to control when

Plaintiffs' counsel can and cannot see the deponents' laptop screens.

(8) Neither Plaintiffs counsel nor anyone acting on their behalf may interact directly with the deponents' laptops, unless Uber expressly agrees otherwise.

### C. Time Limits for Certain Depositions

Uber seeks to limit Plaintiffs' questioning of certain Rule 30(b)(6) witnesses to no more than seven hours each, arguing that those witnesses will address topics that overlap with other witnesses produced in this litigation and the related California JCCP litigation. Dkt. No. 2957 at 7. Pursuant to Pretrial Order No. 16, "[e]very ten and one half (10.5) hours of Rule 30(b)(6) deposition testimony (or 14 hours, if Plaintiffs designate a Rule 30(b)(6) deposition for additional time pursuant to this Order) shall count as one (1) deposition against the overall 'soft cap' of forty-five (45) depositions of Uber defendants." Dkt. No. 866 at 12.

Assuming that Plaintiffs currently intend to depose each of the three 30(b)(6) witnesses at issue for ten and a half hours, Uber's request to reduce the time for those depositions by three and a half hours each (a total of ten and a half hours) would seem to free up enough time for Plaintiffs to take another deposition within the soft cap of forty-five. It is not clear if that is what Uber has in mind, but if so, the Court sees no reason why Uber should dictate how Plaintiffs may use the depositions (and hours of Rule 30(b)(6) depositions) available to them under Pretrial Order No. 16.[4] On the other hand, if Uber intended that Plaintiffs would simply *lose* these ten and a half hours that would otherwise have been available for depositions, Uber's disagreement with Plaintiffs as to the best use Plaintiffs' deposition time is no basis for such a modification to Pretrial Order No. 16.

Uber's request to limit the time for Rule 30(b)(6) depositions of Sunny Wong, William Anderson, and Mariana Esteves to seven hours each is DENIED.

### D. Previous Order Regarding Bellwether Depositions

Finally, the Court addresses sua sponte one issue unrelated to the present joint letter. The

---

[4] Unlike the "apex" depositions addressed in previous Orders, Uber has not argued that tying up these particular witnesses in depositions imposes a special and unwarranted burden, beyond the general burdens of employee depositions that the Court and the parties considered when crafting Pretrial Order No. 16.

1  Court's recent Order regarding bellwether depositions barred Uber from questioning Plaintiffs
2  about topics for which documents had not been produced at least four business days before a
3  Plaintiff's deposition.  Dkt. No. 2924 at 2–3.  On reflection, the Court is concerned that Order
4  could be construed as granting relief beyond what Plaintiffs requested, when Plaintiffs' arguments
5  had focused on sequencing document production before depositions rather than seeking limitations
6  on topics for questioning.  In the Court's view, however, that Order effectively requires Uber to
7  produce documents in advance of Plaintiffs' depositions for any topics Uber intends to address at
8  those depositions, thus partially granting Plaintiffs' request.

**IT IS SO ORDERED.**

Dated: May 14, 2025

LISA J. CISNEROS
United States Magistrate Judge