LAURA VARTAIN (SBN: 258485)
    laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
    allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
    jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

Attorneys for Defendants
UBER TECHNOLOGIES, INC., RASIER, LLC, and
RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION, | Case No. 3:23-md-03084-CRB |
| This Document Relates to: | **NOTICE OF MOTION AND MOTION TO TRANSFER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| *A.R. v. Uber Technologies, Inc., et al.*, No. 24-cv-01827 | Judge:  Hon. Charles R. Breyer |
| *D.J. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07228 | Courtroom:  Courtroom 6 – 17th Floor |
| *A.G. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-01915 | Hearing:    June 20, 2025, 10:00am |
| *A.R. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07821 | |

1
2
*B.L. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-7940

3
*C.L. v. Uber Technologies, Inc., et al.*, No. 3:23-cv-04972

4
5
*J.E. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-03335

6
7
*Jane Doe QLF 0001 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-08387-CRB

8
*Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708

9
10
*K.E. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05281-CRB

11
*Amanda Lazio v. Uber Technologies, Inc.*, No. 3:24-cv-08937-CRB

12
13
*LCHB128 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-7019

14
15
*T.L. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-9217

16
17
*WHB 318 v. Uber Technologies, Inc.*, No. 3:24-cv-04889

18
*WHB 407 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05028

19
20
*WHB 832 v. Uber Technologies, Inc.*, No. 3:24-cv-4900

21
22
*WHB 1486 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-04803

23
*WHB 1876 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05230

24
25
*WHB 1898 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05027

26
27
*Jane Roe CL 68 v. Uber Technologies Inc., et al.*, No. 3:24-cv-06669

28

SABRINA H. STRONG (SBN: 200292)
    sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
    jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT, JR. (*Pro Hac Vice* admitted)
    oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
    adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice* admitted)
    ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

3

Please take notice that on June 20, 2025, at 10:00am, or at any other date and time to be

4

set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of

5

the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue,

6

San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA,

7

LLC (collectively, Uber) by and through their undersigned counsel, will and hereby do move the

8

Court for an order under 28 U.S.C. § 1404(a) directing that, in accordance with the forum

9

selection clause in Uber's Terms of Use, the cases filed by Bellwether Plaintiffs LCHB128,

10

Jaylynn Dean, C.L., A.G., WHB 1898, A.R., T.L., WHB 407, WHB 318, WHB 832, WHB 1486,

11

WHB 1876, and J.E., after completion of coordinated pretrial proceedings in this Court, shall be

12

transferred for trial to the federal district courts in the states in which the alleged incidents

13

occurred.

14

Uber seeks transfer based upon this Notice of Motion, the accompanying Memorandum of

15

Points and Authorities, the Declaration of Peter Sauerwein and accompanying exhibits, any oral

16

argument the Court may permit, and all pleadings and papers on file in this action and on such

17

other matters as may be presented to the Court at or before the hearing.

18

19

20

21

22

23

24

25

26

27

28

1   Dated:  May 16, 2025                         **O'MELVENY AND MYERS LLP**

2

3

4                                               By:  /s/ Sabrina H. Strong

5
                                                **KIRKLAND & ELLIS LLP**
6                                               LAURA VARTAIN
                                                ALLISON M. BROWN
7                                               JESSICA DAVIDSON

8                                               **O'MELVENY AND MYERS LLP**
                                                SABRINA H. STRONG
9                                               JONATHAN SCHNELLER

10
                                                **SHOOK, HARDY & BACON, LLP**
11                                              PATRICK L. OOT, JR.
                                                ALYCIA A. DEGEN
12                                              MICHAEL B. SHORTNACY
                                                CHRISTOPHER V. COTTON
13

14                                              *Counsel for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   FACTUAL BACKGROUND .......................................................................................... 3

III.  PLAINTIFFS' AGREEMENT UNDER THE FORUM-SELECTION CLAUSE
      REQUIRES TRANSFER TO THE DISTRICTS WHERE THEIR INJURIES
      OCCURRED ................................................................................................................... 5

      A.    The Terms of Use Constitute A Valid And Enforceable Contract......................... 6

      B.    The Forum-Selection Clause Encompasses Plaintiffs' Claims .............................. 8

      C.    The Forum-Selection Clause Should Be Enforced ............................................... 10

IV.   CONCLUSION ............................................................................................................. 15

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Am. Online, Inc. v. Superior Court*,
 90 Cal. App. 4th 1 (2001).................................................................................. 12

5

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
 571 U.S. 49 (2013) ................................................................................... *passim*

6

7

*Berman v. Freedom Fin. Network, LLC*,
 30 F.4th 849 (9th Cir. 2022)................................................................................. 7

8

*Bloom v. Express Servs., Inc.*,
 2011 WL 1481402 (N.D. Cal. Apr. 19, 2011) .................................................... 13

9

10

*Chabolla v. ClassPass Inc.*,
 129 F.4th 1147 (9th Cir. 2025).......................................................................... 6, 7

11

*Christian v. Uber Techs., Inc.*,
 __ F. Supp. 3d __, 2025 WL 833130 (D.D.C. Mar. 17, 2025) ............................. 8

12

*Cordas v. Uber Techs., Inc.*,
 228 F. Supp. 3d 985 (N.D. Cal. 2017) ................................................................. 8

13

*Cubria v. Uber Techs., Inc.*,
 242 F. Supp. 3d 541 (W.D. Tex. 2017) ................................................................ 8

14

*Doe 1 v. AOL LLC*,
 552 F.3d 1077 (9th Cir. 2009) .............................................................................. 8

15

16

*Doe WHBE 3 v. Uber Techs., Inc.*,
 102 Cal. App. 5th 1135 (2024)......................................................................... 2, 13

17

*Drulias v. 1st Century Bancshares, Inc.*,
 30 Cal. App. 5th 696 (2018).............................................................................. 12

18

*Eclipse Consulting, Inc. v. BDO USA, LLP*,
 2018 WL 6735085 (D. Or. Nov. 13, 2018) .......................................................... 9

19

20

*Good v. Uber Techs., Inc.*,
 234 N.E.3d 262 (Mass. 2024) ........................................................................... 7, 8

21

*Grice v. Uber Techs., Inc.*,
 2020 WL 497487 (C.D. Cal. Jan. 7, 2020) ......................................................... 8

22

*Hamilton v. Uber Techs., Inc.*,
 2023 WL 5769500 (S.D.N.Y. Sept. 7, 2023) ...................................................... 8

23

24

*Hofer v. Emley*,
 2019 WL 4575389 (N.D. Cal. Sept. 20, 2019) ................................................... 9

25

*In re Howmedica Osteonics Corp*,
 867 F.3d 390 (3d Cir. 2017).............................................................................. 13

26

*In re Norplant Contraceptive Prods. Liability Litig.*,
 950 F. Supp. 779 (E.D. Tex. 1996) ................................................................... 14

27

28

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
    699 F. Supp. 3d 1396 (J.P.M.L. 2023) ............................................................. 4-5, 9

*In re Verisign, Inc., Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................................. 10

*Johnson v. Uber Techs., Inc.*,
    2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) ......................................................... 8

*Keebaugh v. Warner Bros. Ent. Inc.*,
    100 F.4th 1005 (9th Cir. 2024) ............................................................................... 6

*Lee v. Fisher*,
    70 F.4th 1129 (9th Cir. 2023) ....................................................................... 5, 6, 10

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998) ................................................................................... 1, 3, 14

*Losson v. Union des Ass'ns Europeennes de Football*,
    2024 WL 3406987 (N.D. Cal. July 11, 2024) ........................................................ 9

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ....................................................................................... 10, 11, 13

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale
    Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ....................... 12

*McGinty v. Zheng*,
    2024 WL 4248446 (N.J. Super. Ct. App. Div. Sept. 20, 2024), *cert. denied*, 260 N.J.
    291, 332 A.3d 1123 (2025) ................................................................................. 7, 8

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ................................................................................. 7, 8

*Nichols v. Nw. Mut. Life Ins. Co.*,
    487 F. App'x 339 (9th Cir. 2012) ........................................................................ 12

*O'Callaghan v. Uber Corp. of Cal.*,
    2018 WL 3302179 (S.D.N.Y. July 5, 2018) ........................................................... 10

*Petersen v. Boeing Co.*,
    715 F.3d 276 (9th Cir. 2013) ............................................................................... 11

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) ............................................................................. 11

*Salgado v. Carrows Rests., Inc.*,
    33 Cal. App. 5th 356 (2019) ............................................................................... 12

*Sanfilippo v. Tinder, Inc.*,
    2018 WL 6681197 (C.D. Cal. Dec. 18, 2018), *aff'd*, 2021 WL 4440337 (9th Cir. Sept.
    28, 2021) ............................................................................................................. 10

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Schouker v. Swarm Indus., Inc.*,
    2025 WL 948004 (N.D. Cal. Mar. 28, 2025) ......................................................... 14

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) ............................................................................. 12

*TradeComet.com LLC v. Google, Inc.*,
    435 F. App'x 31 (2d Cir. 2011) .......................................................................... 10

*Trudeau v. Google LLC*,
    349 F. Supp. 3d 869 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) ..................... 10

*Turner v. Uber Techs., Inc.*,
    2023 Cal. Super. LEXIS 62376 (Super. Ct., L.A. Cnty., Aug. 24, 2023) ................................. 8

*Verdugo v. Alliantgroup, L.P.*,
    237 Cal. App. 4th 141 (2015) ...................................................................... 11, 12

*Walters v. Famous Transps., Inc.*,
    488 F. Supp. 3d 930 (N.D. Cal. 2020) .................................................................. 11

*Waypoint Yachts v. Azimut-Benetti, S.p.A.*,
    2006 WL 8455420 (S.D. Cal. Feb. 27, 2006) ............................................................ 7

*Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc.*,
    32 Cal. App. 4th 1511 (1995) ........................................................................... 12

*Winningham v. Biomet Orthopedics, LLC*,
    2012 WL 3860806 (N.D. Cal. Aug. 31, 2012) .......................................................... 14

*Wu v. Uber Techs., Inc.*,
    __ N.E.3d __, 2024 WL 4874383 (N.Y. Nov. 25, 2024) ............................................. 7, 8

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ..................................................................... *passim*

**Statutes**

28 U.S.C. § 1391(b)(2) ...................................................................................... 5

28 U.S.C. § 1404(a) .................................................................................. *passim*

28 U.S.C. § 1407(a) ..................................................................................... 3, 14

**Rules**

Fed. R. Civ. P. 45(c)(1) ..................................................................................... 13

**Other Authorities**

Restatement (Second) of Contracts § 19 (1981) .............................................................. 6

United States Courts, *Table C-5—U.S. District Courts—Civil Statistical Tables* (Dec. 31, 2024) ........................................................................................................ 14

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

3        Uber's Terms of Use include a forum-selection clause providing that all personal injury

4    claims—including sexual assault or harassment claims like those alleged here—must be brought

5    "exclusively in the state or federal courts in the State in which the incident or accident occurred."

6    Sauerwein Decl. Ex. A, at 14.  In its May 20, 2024 Order addressing other provisions of the

7    Terms of Use, the Court deferred making any ruling on the enforcement of this clause, indicating

8    that it would adjudicate motions to transfer at an appropriate time nearer to the conclusion of

9    coordinated pretrial proceedings.  PTO 15 at 35.  The parties are now on the cusp of concluding

10   fact discovery and have identified 20 bellwether cases for trial.  Additionally, the Court has

11   selected six of those cases for inclusion in the initial "wave" of bellwether trials scheduled to

12   begin later this year.  *See* PTO 26.  Uber requests that the Court enter an order enforcing this

13   forum-selection clause in the bellwether cases.  Specifically, Uber requests that the Court enter an

14   order under 28 U.S.C. § 1404(a) directing that, after completion of the pretrial proceedings here,

15   the bellwether cases that assert venue in this District but allege claims based on incidents that

16   allegedly occurred outside of California shall be transferred for trial to federal courts in the

17   districts where the alleged incidents occurred.

18       Sixteen of the 20 bellwether cases assert venue in this District (some through complaints

19   filed here originally and others through amended complaints), while the remaining four assert

20   venue in the out-of-state districts from which they were transferred under 28 U.S.C. § 1407 for

21   pretrial proceedings.  As this Court previously recognized, the Supreme Court's decision in

22   *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), requires that after

23   conclusion of the coordinated pretrial proceedings, the latter cases must be remanded to the

24   districts where Plaintiffs filed them.  *See* Feb. 28, 2025 H'rg Tr. at 8:8-11.  This motion

25   accordingly concerns only the Plaintiffs asserting venue in this District and alleging incidents

26

27

28

1    occurring in other States.[1]  All but one of those Plaintiffs agreed to Uber's Terms of Use, forming

2    a valid and enforceable contract requiring that the claims asserted be brought in the state or

3    federal courts where the alleged incident occurred.[2]

4            Federal law does not allow Plaintiffs to renege on the parties' forum-selection agreement.

5    To the contrary, the "strong federal policy in favor of enforcing forum-selection clauses"

6    mandates transfer to the agreed-upon forums.  *Yei A. Sun v. Advanced China Healthcare, Inc.*,

7    901 F.3d 1081, 1090 (9th Cir. 2018).  No "extraordinary circumstances" exist to warrant

8    departure from that rule.  *Id.* at 1088.  Furthermore, any assertion that such transfers would

9    contravene public policy or the public interest would necessarily fail because the California courts

10   have already concluded that transfers of incidents that occurred outside of California are in the

11   public interest.  *See Doe WHBE 3 v. Uber Techs., Inc.*, 102 Cal. App. 5th 1135, 1149-64 (2024)

12   (affirming decision of court overseeing California's parallel JCCP to stay and dismiss all cases

13   arising outside of California under the doctrine of *forum non conveniens*).  Consequently, the

14   Court should order under 28 U.S.C. § 1404(a) that after completion of the pretrial proceedings

15   here, the cases subject to the forum-selection agreement shall be transferred for trial to federal

16   district courts in the states in which Plaintiffs agreed to litigate.

17           The chart below shows each case, its current venue, and the contractually required venue:

18

19

20

21

22

23

24

---

25   [1] The four Bellwether Plaintiffs asserting venue elsewhere—D.J., K.E., Amanda Lazio, and Jane Roe CL 68—have not sought to file amended complaints asserting venue in this District, and Plaintiffs' counsel informed Uber on May 5, 2025 that they do not intend to do so.

26

27   [2] One Bellwether Plaintiff asserting venue here, Jane Doe QLF 001, appears not to have an Uber account.  *See Jane Doe QLF 0001*, No. 3:24-cv-08387, Am. Compl. ¶ 8.  Uber does not seek to transfer her case at this time, but reserves the right to file a subsequent motion if case-specific discovery reveals that transfer is warranted under 28 U.S.C. § 1404(a), including because key witnesses reside outside of this Court's subpoena power.

28

| Plaintiff | Tentative Wave | Plaintiff-Selected Venue | Site of Injury | Forum-Selection-Clause-Required Venue |
|---|---|---|---|---|
| **Cases Not Subject To Transfer** | | | | |
| B.L. | 1 | N.D. Cal. | N.D. Cal. | N.D. Cal. |
| A.R. 2 | 1 | N.D. Cal. | N.D. Cal. | N.D. Cal. |
| **Cases That Require Transfer Under 28 U.S.C. § 1404(a)** | | | | |
| WHB 1486 | 1 | N.D. Cal. | S.D. Tex. | S.D. Tex. |
| WHB 1876 | 1 | N.D. Cal. | S.D. Ill. | S.D. Ill. |
| LCHB128 | 1 | N.D. Cal. | D. Ariz. | D. Ariz. |
| Jaylynn Dean | 1 | N.D. Cal. | D. Ariz. | D. Ariz. |
| C.L. | | N.D. Cal. | D. Md. | D. Md.[3] |
| A.G. | 2 | N.D. Cal. | D. Or. | D. Or. |
| WHB 1898 | 2 | N.D. Cal. | D. Mass. | D. Mass. |
| A.R. | 2 | N.D. Cal. | E.D. Pa. | E.D. Pa. |
| T.L. | 3 | N.D. Cal. | N.D. Ga. | N.D. Ga. |
| WHB 407 | 3 | N.D. Cal. | S.D. Ga. | S.D. Ga. |
| WHB 318 | 3 | N.D. Cal. | W.D.N.C. | W.D.N.C. |
| WHB 832 | 3 | N.D. Cal. | M.D.N.C. | M.D.N.C. |
| J.E. | 5 | N.D. Cal. | E.D. Mich. | E.D. Mich. |
| **Cases That Do Not Require Transfer At This Time** | | | | |
| Jane Doe QLF 001 | 4 | N.D. Cal. | N.D. Tex. | n/a (*see supra* n.2) |
| **Cases Subject To Remand Under 28 U.S.C. § 1407** | | | | |
| K.E. | 4 | W.D. Tex. | W.D. Tex. | W.D. Tex. |
| Jane Roe CL68 | 4 | W.D. Tex. | W.D. Tex. | W.D. Tex. |
| D.J. | 5 | S.D. Miss. | S.D. Ind. | S.D. Ind.[4] |
| Amanda Lazio | 5 | S.D. Iowa | S.D. Iowa | S.D. Iowa |

## II.    FACTUAL BACKGROUND

The Judicial Panel on Multidistrict Litigation transferred these cases to this Court for "coordinated or consolidated pretrial proceedings," 28 U.S.C. § 1407(a), finding that "[t]hese actions share complex factual questions arising from allegations that Uber failed to implement appropriate safety precautions to protect passengers, and that plaintiffs suffered sexual assault or harassment as a result," *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 699 F. Supp. 3d

---

[3] Plaintiff C.L. (who was tentatively assigned to Wave 1 but has not been assigned to a Wave following PTO 25) alleges that she was injured "in connection with a ride" that began in Virginia and ended in Maryland.  *C.L.*, No. 3:23-cv-04972, Am. Compl. ¶ 5.  Uber has no objection if Plaintiff elects instead to have her case transferred to the Eastern District of Virginia.

[4] Uber will move to transfer this case after remand to the Southern District of Mississippi. *See Lexecon*, 523 U.S. at 41 n.4 ("[T]he statutory language of § 1407 precludes a transferee court from granting any § 1404(a) motion . . . .").

1396, 1398 (J.P.M.L. 2023).  Many plaintiffs, including sixteen of the Bellwether Plaintiffs, seek to lay venue in the Northern District of California.  Others—including the four other Bellwether Plaintiffs—have selected other venues.

The Court has previously acknowledged that users assent to Uber's Terms of Use when registering to use the Uber App.  As the Court explained, "[w]hen a user registers for an Uber account, the user cannot proceed to use the Uber App until she indicates her assent to Uber's Terms of Use that are then in effect."  PTO 15 at 4.  The Court also recognized that "Uber periodically updates its Terms of Use, and users are likewise required to indicate their assent to the new terms in order to use the Uber App."  *Id.*  "The updated agreement is presented to users in the form of a clickwrap agreement": "the user cannot proceed past the pop-up screen unless she checks a box" agreeing to the Terms of Use.  *Id.* at 4-5; *see* Sauerwein Decl. Ex. R.  Those Terms of Use "contain a forum selection cause."  PTO 15 at 6.  Since January 2021, that clause has read as follows:

> Notwithstanding the foregoing, any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims) that you allege occurred in connection with your use of the Services, whether before or after the date you agreed to these Terms, shall be brought exclusively in the state or federal courts in the state in which the incident or accident occurred, notwithstanding that other courts may have jurisdiction over the parties and subject matter, and except as may be otherwise provided in the Arbitration Agreement in Section 2 or in Supplemental Terms applicable to your region, to the extent permitted by law.

*Id.*; *see* Sauerwein Decl. Ex. A, at 14.

In its earlier  Order concerning Uber's Terms of Use, this Court declined to rule on the forum-selection clause, stating that the Court "will adjudicate motions to transfer at the appropriate time—likely at the conclusion of the proceedings" contemplated by the multidistrict-litigation statute.  PTO 15 at 36; *see* PTO 25 at 2 (noting operative wave "assignments are subject to any forthcoming forum non conveniens motions by the parties").  With twenty bellwether cases now identified, an initial trial wave scheduled to commence later this year, and the precise ordering of the individual trials currently under consideration, the time is now ripe to address Uber's request that the forum-selection agreement be enforced in the bellwether cases.

III.    **PLAINTIFFS' AGREEMENT UNDER THE FORUM-SELECTION CLAUSE REQUIRES TRANSFER TO THE DISTRICTS WHERE THEIR INJURIES OCCURRED.**

Under the forum-selection agreement in Uber's Terms of Use, thirteen of the Bellwether cases asserting venue in this District must be transferred for trial to the districts where the alleged incidents occurred.

28 U.S.C. § 1404(a) allows a court to "transfer any civil action to any other district or division where it might have been brought."  In a typical case, "a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations" to determine whether a transfer would serve "the convenience of parties and witnesses" and "the interest of justice."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013) (quoting 28 U.S.C. § 1404(a)).

But "[w]hen the parties have agreed to a valid forum-selection clause," a simpler, more limited analysis controls: the "district court should ordinarily transfer the case to the forum specified in that clause."  *Lee v. Fisher*, 70 F.4th 1129, 1143 (9th Cir. 2023) (en banc) (quoting *Atl. Marine*, 571 U.S. at 62).  Courts "adjust their usual § 1404(a) analysis" accordingly in cases involving a valid forum-selection agreement.  *Atl. Marine*, 571 U.S. at 63.  "First, the plaintiffs' choice of forum merits no weight."  *Id.*  "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests."  *Id.* at 64.  And although courts "may consider arguments about public-interest factors only," those "factors will rarely defeat a transfer motion"—indeed, "[o]nly under *extraordinary* circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."  *Id.* at 62, 64 (emphasis added).

Under that framework, Uber's motion to transfer should be granted based on the parties' forum-selection agreement.  Each Plaintiff could have brought suit in the federal judicial district in which she was allegedly injured.  28 U.S.C. § 1404(a); *see* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.").  And the forum-selection-clause analysis requires transfer to those forums, because: (1) the parties agreed to a valid forum-selection clause; (2) that

- 5 -

1    agreement covers these actions and dictates they be "brought exclusively in the state or federal

2    courts in the state in which the incident or accident occurred"; and (3) Plaintiffs cannot show any

3    extraordinary circumstances to justify disregarding the forum-selection agreement.

4    **A.      The Terms of Use Constitute A Valid And Enforceable Contract.**

5         As the Court's prior order indicates, Uber's Terms of Use—including the forum-selection

6    clause—constitute a valid and enforceable contract, which each relevant Plaintiff executed.

7    Sauerwein Decl. Ex. D.  Accordingly, federal law presumptively requires transfer "to the forum

8    specified" in the Terms' "valid forum-selection clause." *Lee*, 70 F.4th at 1143 (quoting *Atl.*

9    *Marine*, 571 U.S. at 62).

10        Uber presents its Terms of Use to users through the Uber App, and users must agree to the

11   Terms before gaining access to Uber's services.  *See* Sauerwein Decl. Ex. R.  "[I]nternet

12   contracts" presented via online apps like Uber's "are subject to the same elemental principles of

13   contract formation as paper contracts."  Contract formation requires "actual or constructive notice

14   of the agreement and the parties must manifest mutual assent."  *Chabolla v. ClassPass Inc.*, 129

15   F.4th 1147, 1154 (9th Cir. 2025) (internal quotation marks omitted); *Keebaugh v. Warner Bros.*

16   *Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024); *see generally* Restatement (Second) of Contracts

17   § 19 (1981) (describing general rules for manifesting assent by conduct).  Contract formation

18   requires that "(1) the website provides reasonably conspicuous notice of the terms to which the

19   consumer will be bound; and (2) the consumer takes some action, such as clicking a button or

20   checking a box, that unambiguously manifests his or her assent to those terms." *Chabolla*, 129

21   F.4th at 1154-55 (internal quotation marks omitted).

22        To determine the validity of web-based contracts, courts classify the agreements based on

23   their "different assent mechanisms" into the following categories: "browsewrap, clickwrap,

24   scrollwrap, and sign-in wrap agreements." *Id.* at 1155.  "In a clickwrap, the website presents its

25   terms of use in a 'pop-up screen' and the user accepts those terms by clicking or checking a box

26   stating she agrees."  *Id.*  Because clickwraps require such objective manifestation of user assent

27   after "receiv[ing] notice of the terms being offered, … courts have routinely found clickwrap

28   agreements enforceable."  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir.

- 6 -

2022); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" (collecting cases)); *Good v. Uber Techs., Inc.*, 234 N.E.3d 262, 277 (Mass. 2024) ("Uber's interface focused the reasonably prudent consumer on the terms being offered by Uber for the continued use of its services."); *Wu v. Uber Techs., Inc.*, __ N.E.3d __, 2024 WL 4874383, at *9 (N.Y. Nov. 25, 2024) ("Uber's clickwrap process put plaintiff on inquiry notice of the January 2021 terms."); *McGinty v. Zheng*, 2024 WL 4248446, at *6 (N.J. Super. Ct. App. Div. Sept. 20, 2024) (similar), *cert. denied*, 260 N.J. 291, 332 A.3d 1123 (2025).

This Court previously recognized that the operative version of Uber's Terms of Use was presented to each relevant plaintiff in "clickwrap" form. *See* PTO 15 at 4 ("The updated agreement is presented to users in the form of a clickwrap agreement."). As the Court explained:

> Upon opening the Uber App, a blocking pop-up screen tells users that the terms have been updated and states, in large type: "We encourage you to read our Updated Terms in full." …. The pop-up contains hyperlinks to both the updated Terms of Use and Uber's Privacy Notice, and if the links are clicked, the user is taken to a page on the Uber website that displays the current version of each document. … Within the Uber App, the user cannot proceed past the pop-up screen unless she checks a box, next to which is text reading: "By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice." … After the box is checked, the user may click "Confirm" and proceed to use the App.

*Id.* at 4-5 (citations omitted). The pop-up screen presenting the Terms of Use is conspicuous, clear, and written in large, accessible typeface. Sauerwein Decl. Ex. R. Likewise, the forum-selection clause within the Terms is "clearly identified … and is clearly set under the heading [Choice of Forum]" in easily readable font. *Waypoint Yachts v. Azimut-Benetti, S.p.A.*, 2006 WL 8455420, at *7 (S.D. Cal. Feb. 27, 2006) (enforcing forum-selection clause); *see* Sauerwein Decl. ¶ 30 and Ex. A.

The "clickwrap" process for accepting Uber's Terms of Use (plus any updates) provides a "reasonably prudent Internet user" with "reasonably conspicuous notice of the terms," including the forum-selection clause, and requires sufficient user-action ("checking a box" and also clicking "Confirm") to "unambiguously manifest his or her assent." *Chabolla*, 129 F.4th at 1155. Because each Plaintiff manifested assent by checking the box and clicking confirm, Sauerwein

1  Decl. Exs. D-Q, she formed a binding contract to abide by the Terms of Use, as courts nationwide

2  have consistently concluded.  *Christian v. Uber Techs., Inc.*, __ F. Supp. 3d __, 2025 WL

3  833130, at *4 (D.D.C. Mar. 17, 2025) (noting "plethora of cases where other courts have upheld

4  'clickwrap' agreements such as the one at issue here").[5]

5  **B.**     **The Forum-Selection Clause Encompasses Plaintiffs' Claims.**

6         "By its terms, the forum-selection clause here applies to" the bellwether cases.  *Yei A. Sun*,

7  901 F.3d at 1086.  Federal courts "apply federal contract law to interpret the scope of a forum-

8  selection clause even in diversity actions," meaning "general principles for interpreting contracts"

9  govern.  *Id.*  That includes the rule that "[c]ontract terms are to be given their ordinary meaning."

10  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (internal quotation marks omitted).

11         Since January 2021, Uber's Terms of Use have included a forum-selection clause in a

12  section conspicuously labeled "Choice of Forum."  The clause governs "[a]ny dispute, claim, or

13  controversy arising out of or relating to incidents or accidents resulting in personal injury

14  (including but not limited to sexual assault or harassment claims)" that a plaintiff "allege[s]

15  occurred in connection with [her] use of the Services."  Sauerwein Decl. Ex. A, at 13-14.[6]  The

16  clause provides that those disputes "shall be brought exclusively in the state and federal courts in

17  the State in which the incident or accident occurred notwithstanding that other courts may have

18  jurisdiction over the parties and subject matter."  *Id.*  The clause makes clear that its forum-

19  selection rule applies to all disputes of this nature, "whether before or after the date [a plaintiff]

20  agreed to the Terms."  *Id.*

21

22

23         [5] *See also Good*, 234 N.E.3d at 282; *Wu*, 2024 WL 4874383, at *9; *McGinty*, 2024 WL
   4248446, at *6; *Turner v. Uber Techs., Inc.*, 2023 Cal. Super. LEXIS 62376, at *4 (Super. Ct.,
24  L.A. Cnty., Aug. 24, 2023); *Hamilton v. Uber Techs., Inc.*, 2023 WL 5769500, at *4 (S.D.N.Y.
   Sept. 7, 2023); *Grice v. Uber Techs., Inc.*, 2020 WL 497487, at *12 (C.D. Cal. Jan. 7, 2020);
25  *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *5 (N.D. Ill. Sept. 20, 2018); *Cordas v. Uber
   Techs., Inc.*, 228 F. Supp. 3d 985, 990 (N.D. Cal. 2017); *Cubria v. Uber Techs., Inc.*, 242 F.
26  Supp. 3d 541, 549 (W.D. Tex. 2017); *Meyer*, 868 F.3d at 80.

27         [6] The Terms of Use define "Services" to include "services rendered by Uber that facilitate
   your connection to independent third party providers, including drivers." Sauerwein Decl. Ex. A,
28  at 6.

This language clearly encompasses the Bellwether Plaintiffs' suits. Each suit alleges that an independent driver engaged in "sexual assault or harassment" in a ride facilitated by the Uber app. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 699 F. Supp. 3d at 1398. And each Bellwether Plaintiff alleges, at paragraph 5 of her complaint, that her assault or harassment occurred "in connection with an Uber ride." *See, e.g., C.L.*, Am. Compl. ¶ 5; *see* Master Long-Form Complaint, Dkt. 269, ¶ 36 (N.D. Cal. Feb. 15, 2024) ("Plaintiffs are individuals who suffered personal injuries as a result of their use of Uber's product and services."). That allegation tracks the Ninth Circuit case law interpreting the operative phrase, "in connection with," which requires only a "logical or causal connection" to Plaintiffs' claims. *Losson v. Union des Ass'ns Europeennes de Football*, 2024 WL 3406987, at *2 (N.D. Cal. July 11, 2024); *see Yei A. Sun*, 901 F.3d at 1087.[7] So Plaintiffs concede the facts necessary for the forum-selection clause to apply.

Finally, the forum-selection clause applies to all alleged injuries, "whether before or after the date [a plaintiff] agreed to the Terms." Sauerwein Decl. Ex. A, at 13. All but two of the relevant Plaintiffs allegedly suffered injuries "after" they executed the Terms of Use containing the forum-selection clause. And two Plaintiffs—WHB 832 and WBH 1876—allegedly suffered injuries "before" they agreed to the version of the Terms of Use with the forum-selection clause, but later executed the Terms of Use containing that clause. Sauerwein Decl. Ex. D. All of those claims thus fall within the scope of the forum-selection clause, "irrespective of whether it arose prior to or subsequent to the acceptance of the [TOU]," under the plain language of the

---

[7] One Bellwether Plaintiff subject to this motion—A.G.—alleges that her Uber account was not used to facilitate the ride on which she was allegedly injured. *A.G.*, No. 3:24-cv-01915, Am. Compl. ¶¶ 6-7. But that distinction makes no difference. A.G. had her own Uber account and agreed to the Terms of Use, including the forum-selection clause. Sauerwein Decl. Ex. D. And her alleged injury plainly occurred "in connection with" her use of Uber's "Services": She received "transportation" from an "independent driver" in the ride on which she was allegedly assaulted. *See supra* at 8 n.6. In addition, the "doctrine of equitable estoppel precludes [A.G.] from attempting to avoid" the forum-selection clause in her ex-husband's Terms of Use, as she knowingly "claim[ed] the benefits" of that contract by accepting a ride facilitated by Uber's Services. *Hofer v. Emley*, 2019 WL 4575389, at *7 (N.D. Cal. Sept. 20, 2019) (passenger in rental car bound to agreement signed by brother); *Eclipse Consulting, Inc. v. BDO USA, LLP*, 2018 WL 6735085, at *7 (D. Or. Nov. 13, 2018) (applying similar doctrine under Oregon law).

1    agreement. *TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34-35 (2d Cir. 2011)

2    (collecting cases). And courts have enforced such clauses in numerous contexts, including with

3    respect to Uber. *O'Callaghan v. Uber Corp. of Cal.*, 2018 WL 3302179, at *8 n.11 (S.D.N.Y.

4    July 5, 2018) (requiring driver to arbitrate claims because "arbitration provisions should be

5    applied to any preexisting claims provided the clauses are not expressly limited to future

6    disputes"); *see also, e.g.*, *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 878 (N.D. Cal. 2018)

7    (enforcing an arbitration agreement assented to after the claim accrued), *aff'd*, 816 F. App'x 68

8    (9th Cir. 2020); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal.

9    2007) (similar); *Sanfilippo v. Tinder, Inc.*, 2018 WL 6681197, at *5 (C.D. Cal. Dec. 18, 2018)

10   ("broad scope" of agreement not limited to "future claims" only), *aff'd*, 2021 WL 4440337 (9th

11   Cir. Sept. 28, 2021). So the forum-selection clause governs all of the relevant Bellwether

12   Plaintiffs' claims.

13        **C.    The Forum-Selection Clause Should Be Enforced.**

14        Because the forum-selection clause derives from a valid contract and covers Plaintiffs'

15   claims, it "represents the parties' agreement as to the most proper forum" and "should control

16   except in unusual cases." *Atl. Marine*, 471 U.S. at 63-64. That is because "enforcement of valid

17   forum-selection clauses, bargained for by the parties, protects their legitimate expectations and

18   furthers vital interests of the justice system." *Id.* at 63. Consequently, "only under extraordinary

19   circumstances unrelated to the convenience of the parties should a motion to enforce a forum-

20   selection clause be denied." *Yei A. Sun*, 901 F.3d at 1088 (quoting *Atl. Marine*, 471 U.S. at 62)

21   (alteration adopted and internal quotation marks omitted).

22        In *Yei A. Sun*, the Ninth Circuit concluded that three exceptional scenarios might justify

23   disregarding a forum-selection clause. 901 F.3d at 1088. Each requires "the plaintiff" to "ma[k]e

24   a strong showing." *Id.*; *see Lee*, 70 F.4th at 1143 ("The plaintiff bears the burden of showing why

25   the court should not transfer the case to the forum identified in the forum-selection clause."). The

26   first exception applies when "the clause is invalid due to fraud or overreaching." *Yei A. Sun*, 901

27   F.3d at 1088 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)) (internal

28   quotation marks omitted). The second exception applies when "enforcement would contravene a

- 10 -

1    strong public policy of the forum in which suit is brought, whether declared by statute or by

2    judicial decision." *Id.* (quoting *M/S Bremen*, 407 U.S. at 15).  The third exception applies when

3    "trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will

4    for all practical purposes be deprived of his day in court." *Id.* (quoting *M/S Bremen*, 407 U.S. at

5    18) (alteration adopted).  And there is a fourth basis for declining to enforce a forum-selection

6    clause—stated in dicta but never applied by the Supreme Court or the Ninth Circuit—for "rare[],"

7    "extraordinary," and "[un]common" circumstances where "public-interest factors" justify

8    disregarding the clause.  *Atl. Marine*, 571 U.S. at 62, 64; *see Yei A. Sun*, 901 F.3d at 1093 n.12.

9    Only in those circumstances can a plaintiff overcome the "strong federal policy of enforcing

10   forum-selection clauses." *Yei A. Sun*, 901 F.3d at 1090.

11          For the reasons set out below, Plaintiffs cannot make any showing—much less a "strong"

12   one—that any exception applies here.

13          ***No fraud or overreaching.***  "To establish the invalidity of a forum selection clause on the

14   basis of fraud or overreaching, the party resisting enforcement must 'show that 'the inclusion of

15   that clause in the contract was the product of fraud or coercion.'"  *Petersen v. Boeing Co.*, 715

16   F.3d 276, 282 (9th Cir. 2013) (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th

17   Cir. 1998)).  "[I]t is insufficient to allege that the agreement as a whole was improperly

18   procured."  *Walters v. Famous Transps., Inc.*, 488 F. Supp. 3d 930, 937 (N.D. Cal. 2020) (internal

19   quotation marks omitted).  No claim of fraud or coercion is plausible here: With clear and

20   objective notice of the Terms of Use, including the forum-selection clause, *supra* at 7, Plaintiffs

21   volitionally agreed in order to access Uber's services.

22          ***No contravention of public policy.***  Enforcing this clause would not contravene any

23   "strong public policy of the forum in which suit is brought"—here, California–grounded in "a

24   statute or judicial decision." *Yei A. Sun*, 901 F.3d at 1088, 1090.

25          To the contrary, "California favors contractual forum selection clauses so long as they are

26   entered into freely and voluntarily, and their enforcement would not be unreasonable." *Verdugo*

27   *v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 146 (2015).  "This favorable treatment is attributed

28   to our law's devotion to the concept of one's free right to contract, and flows from the important

- 11 -

1    practical effect such contractual rights have on commerce generally." *Am. Online, Inc. v.*

2    *Superior Court*, 90 Cal. App. 4th 1, 11 (2001).  Thus, "California appellate courts have

3    implemented this broader policy and enforced forum selection clauses" in multiple contexts,

4    whether the clause was executed before or "after the alleged wrongdoing." *Tompkins v.*

5    *23andMe, Inc.*, 840 F.3d 1016, 1028 (9th Cir. 2016); *Drulias v. 1st Century Bancshares, Inc.*, 30

6    Cal. App. 5th 696, 709 (2018) (collecting additional cases); *cf. Salgado v. Carrows Rests., Inc.*,

7    33 Cal. App. 5th 356, 361 (2019) ("[A]n arbitration agreement may be applied retroactively to

8    transactions which occurred prior to execution of the arbitration agreement.").

9        No exception to California's general presumption in favor of enforcing forum-selection

10    clauses even conceivably applies, as California courts depart from that presumption only to

11    protect "California residents" from being deprived of "substantive rights afforded under

12    California law." *Verdugo*, 237 Cal. App. 4th at 147-48 (quoting *Wimsatt v. Beverly Hills Weight*

13    *Loss Clinics Int'l, Inc.*, 32 Cal. App. 4th 1511, 1524 (1995)) (alteration adopted).  Here, none of

14    the relevant Plaintiffs are California residents, and none of their suits will be governed by

15    California substantive law.  Sauerwein Decl. Ex. A, at 13 ("laws of the state in which the incident

16    or accident occurred" shall govern any claim arising "in connection with" Uber's Services).[8] This

17    analysis is not inconsistent with this Court's prior holding that a different clause in Uber's Terms

18    of Use—the Non-Consolidation Clause—was unenforceable as applied to pretrial coordination

19    through the creation of an MDL.  *See id.* at 1.  The Court held that enforcing the Non-

20    Consolidation Clause against creation of an MDL would undermine the federal interest in

21    "coordinat[ing] or consolidat[ing] pretrial proceedings" expressed in 28 U.S.C. § 1407.[9]  But the

22    Court also acknowledged that transfer motions under 28 U.S.C. § 1404 raised "different"

23    considerations, *id.* at 18, such that "the parties' valid contractual choice of forum should be 'given

24

25    ────────────

      [8] The law of the place of injury, not California law, would govern under California's
      default choice-of-law rules as well.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 593
26    (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Coop., Inc. v.
      Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022); *Nichols v. Nw. Mut. Life Ins.*
27    *Co.*, 487 F. App'x 339, 341 (9th Cir. 2012) (choice-of-law rules of forum state govern in diversity
      actions).
28        [9] Uber respectfully disagrees with the Court's ruling and has filed a petition for rehearing
      en banc with the Ninth Circuit.

1    controlling weight in all but the most exceptional circumstances,'" *id.* at 16 n.4 (quoting *Atl.*

2    *Marine*, 571 U.S. at 60).  Thus, the policy concerns that animated the Court's ruling on the Non-

3    Consolidation Clause have no application here.

4         ***No deprivation of Plaintiffs' day in court.***  Finally, litigating these cases in another

5    federal district court would not "be so gravely difficult and inconvenient that the litigant will for

6    all practical purposes be deprived of his day in court." *Yei A. Sun*, 901 F.3d at 1088 (quoting *M/S*

7    *Bremen*, 407 U.S. at 18).  Plaintiffs cannot possibly show that they would have "no remedies

8    whatsoever" in another federal district court.  *Id.* at 1092.  On the contrary, they will receive a fair

9    trial in any federal court anywhere in the country.

10        Plaintiffs may assert that it is more convenient for them to litigate these cases in this

11   District.  But "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-

12   selection clause should not consider arguments about the parties' private interests." *Atl. Marine*,

13   571 U.S. at 64; *see In re Howmedica Osteonics Corp*, 867 F.3d 390, 406 (3d Cir. 2017) (granting

14   mandamus because "the District Court conflated public interests with private ones by considering

15   the parties' and witnesses' convenience, which are not public interests, but private ones").

16        "[W]hen parties agree to a forum-selection clause, they waive the right to challenge the

17   preselected forum as inconvenient or less convenient for themselves or their witnesses, or for

18   their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64.  And in any event, Plaintiffs' private-

19   convenience arguments would be wrong on their own terms: Two important factors,

20   "convenience of the witnesses" and "ease of access to evidence," favor transferring the cases to

21   their state of injury.  *Bloom v. Express Servs., Inc.*, 2011 WL 1481402, at *3-4 (N.D. Cal. Apr.

22   19, 2011) (Breyer, J.).  That is because many key witnesses—including the independent drivers

23   who allegedly committed these acts, law enforcement officials, treatment providers, and

24   associates of the Plaintiffs—are "nonparties who reside outside the subpoena radius of this

25   Court," and so could not be compelled to attend a trial here.  *Id.* at *3; *see* Fed. R. Civ. P.

26   45(c)(1).  Indeed, it is for these reasons that the California Court of Appeal affirmed Uber's *forum*

27   *non conveniens* motion to dismiss from the California state courts all cases involving alleged

28   sexual misconduct outside of the State.  *Doe WHBE 3*, 102 Cal. App. 5th at 1149-64.

***No public-interest factors overcoming forum-selection clause.***  Finally, this is not the "rare[] case" where the public-interest factors alone could "defeat a transfer motion." *Yei A. Sun*, 901 F.3d at 1088.  Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6.  Those factors all favor transfer; they certainly do not present the "extraordinary circumstances" that are required to disregard the parties' agreement.  *Id.* at 62.

"[T]he local interest in having localized controversies decided at home" favors transfer because the incidents at issue here occurred outside of this District.  The same is true for "the interest in having the trial of a diversity case in a forum that is at home with the law."  If the Court grants the transfer motion, these matters will be returned for trial to districts that sit in the States whose laws will likely apply, consistent with the MDL statute's design.  *Lexecon*, 523 U.S. at 32 (cases to be coordinated for pretrial proceedings, then "remanded for trial"); *see* 28 U.S.C. § 1407(a).  Thus, this Court's familiarity as the MDL transferee Court with the particulars of these cases does not create a public interest in keeping them here for trial.  *See, e.g.*, *Winningham v. Biomet Orthopedics, LLC*, 2012 WL 3860806, at *3 (N.D. Cal. Aug. 31, 2012) (granting motion to transfer where "trial venue is clearly improper in the Northern District of California, regardless of whether an MDL transfer takes place" for pre-trial proceedings); *In re Norplant Contraceptive Prods. Liability Litig.*, 950 F. Supp. 779, 780-81 (E.D. Tex. 1996) (similar).

Finally, the "court congestion" factor also favors transfer, given this District's comparatively high "median time from filing to disposition or trial"—20.4 months, which exceeds every district to which Uber requests transfer.  *Schouker v. Swarm Indus., Inc.*, 2025 WL 948004, at *6 (N.D. Cal. Mar. 28, 2025) (internal quotation marks omitted).[10]

---

[10] *See* United States Courts, *Table C-5—U.S. District Courts—Civil Statistical Tables* (Dec. 31, 2024), https://www.uscourts.gov/data-news/data-tables/2024/12/31/statistical-tables-federal-judiciary/c-5 (D. Ariz.: 6.5 months; D. Md.: 7.3 months; D. Or.: 9.9 months; D. Mass.: 7.5 months; E.D. Pa.: 4.8 months; N.D. Ga.: 5.0 months; S.D. Ga.: 6.4 months; W.D.N.C.: 5.7 months; M.D.N.C.: 7.8 months; S.D. Tex.: 7.5 months; S.D. Ill.: 11.5 months; S.D. Ind.: 10.3 months; and E.D. Mich.: 8.0 months).

1    In sum, the public-interest factors all support Uber's motion to transfer.  At a minimum,

2  this is not the "extraordinary" case where those factors would defeat a valid and enforceable

3  forum-selection clause.

4  **IV.    CONCLUSION**

5    The Court should grant the motion to transfer and enter the proposed order.

6

7

8  Dated:  May 16, 2025                                          **O'MELVENY AND MYERS LLP**

9

10                                                                           By:  /s/ Sabrina H. Strong

11                                                                           **KIRKLAND & ELLIS LLP**
12                                                                           LAURA VARTAIN
                                                                             ALLISON M. BROWN
13                                                                           JESSICA DAVIDSON

14                                                                           **O'MELVENY AND MYERS LLP**
15                                                                           SABRINA H. STRONG
                                                                             JONATHAN SCHNELLER
16
                                                                             **SHOOK, HARDY & BACON, LLP**
17                                                                           PATRICK L. OOT, JR.
                                                                             ALYCIA A. DEGEN
18                                                                           MICHAEL B. SHORTNACY
                                                                             CHRISTOPHER V. COTTON
19

20                                                                           *Counsel for Defendants*

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:23-MD-03084-CRB