*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT STATUS REPORT FOR MAY 22, 2025 DISCOVERY STATUS CONFERENCE**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

## JOINT STATUS REPORT

In advance of the discovery status conference set for Thursday, May 22, 2025, at 10:30 am PST, Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants") (jointly, "the parties"), respectfully submit this Joint Status Report.

I. **Defendants' Responses to Plaintiffs' Bellwether Discovery Requests**

**Plaintiffs' Position**: On or about March 26, 2025, Plaintiffs served case-specific discovery on Defendants. In response, Defendants only pointed to previously produced DFS productions and the general MDL production, which largely did not identify responsive Bates Ranges, and did not produce any new documents. Defendants also refused to answer a single interrogatory on the basis that Plaintiffs served "compound" interrogatories. After two weeks of extensive meet and confers, Plaintiffs sent a draft PTO 8. Only then did Defendants agree to complete production of documents and answer all served interrogatories by May 16. Unfortunately, Defendants' May 16 production includes only a handful of additional documents for each of the 20 BW Plaintiffs (1,200 documents in total). Defendants' responses are deficient, including in the following ways:

- Uber has not responded to any document request by identifying responsive documents by Bates number or otherwise. Additionally, Uber's responses are ambiguous as to whether no additional responsive documents exist or Uber objects to providing additional documents.
- Uber has not produced requested documents that directly concern Plaintiffs, such documents related to Uber investigations involving Plaintiffs, low credibility determinations of Plaintiffs made by Uber, and whether Uber has photographs, dashcam footage, etc. of Plaintiff, etc.
- Uber has not produced what information Uber requested from the drivers when they applied, nor what the drivers submitted.
- Uber has not identified advertising and communications targeted at Plaintiffs. Instead, Uber has produced voluminous communications logs (in some cases, 60,000+ line spreadsheets where the language of the communications and advertisements are undecipherable) but failed to identify which communications are actually responsive to which RPD.
- Uber has not produced the "offer card" Uber presented to plaintiffs (describing each driver at the time of the ride) or otherwise determined that they do not have it.
- Uber has not produced any decoder (despite the same being requested by Interrogatory) to allow plaintiffs to interpret the "code speak" (terms like "celery job" that obviously have code meanings) in the excel printouts.

- Uber has not produced any additional "tickets" for the bellwether drivers or Plaintiffs. Uber has also not produced any actual background checks nor even the adjudication criteria that applied to each driver.

Defendants' interrogatory responses are also deficient. For example, Plaintiff J.D. asked Uber to identify any information (App data, dash cam footage, location data, etc.) it contends contradicts Plaintiffs' allegations concerning the ride. Uber responded only that it is not liable for driver's actions (which is not relevant), and that discovery is ongoing (which is true, but discovery very soon will not be ongoing, and Plaintiffs need answers now).[1] Without going rog-by-rog, Uber's answers across the board are inadequate.[2] Plaintiffs are open to, as an alternative to some productions, either stipulations or issue sanctions to narrow the issues.

**Defendants' Position**: Plaintiffs first provided this topic to Defendants mid-morning on the day of filing. Nevertheless, Defendants will briefly respond to Plaintiffs' improper addition.

For a third time, Plaintiff served excess interrogatories without seeking leave of Court under FRCP 33(a)(1) or providing the required memorandum under LR 33-3. Nevertheless, Defendants agreed to respond, providing tailored responses to cookie-cutter discovery, as well as custom reports–some of which exceed 20,000 printed pages–i.e. Bellwethers' and independent drivers' interactions with Uber apps, all trip feedback or ratings, specific agreements entered into, updated account logs, and so on. Additionally, Defendants agreed to identify responsive documents within their productions. On a Sunday conferral, Plaintiffs clarified some requests related to the "offer card" and independent driver submissions, and Defendants have taken these new requests under advisement. As to marketing, Defendants have provided Plaintiffs "comms logs", as well as fulsome productions in corporate discovery. Defendants have agreed to produce all available tickets and communications related to Bellwethers and the related independent drivers, and are doing so. Lastly, Defendants are puzzled by Plaintiffs' claims about background checks: those were produced in DFS.

---

[1] Plaintiffs expect to bring a PTO dispute regarding the following BW specific interrogatory: "For any Rider who, before the date of the Subject Incident, reported Sexual Assault and/or Sexual Misconduct against the Subject Driver, which did not result in permanent Deactivation, Identify the Rider by name, email address, physical address, and phone number."

[2] The answers to two interrogatories related to motions to transfer (J.D. Rogs 2 and 3) are acceptable.

**III.    Plaintiffs' Responses to Defendants' Bellwether Written Discovery Requests**

**Defendants' Position**: The Parties have reached an impasse regarding Defendants' Requests for Production and Interrogatories relating to (i) social media; (ii) medical information; and (iii) use of rideshare applications after the alleged incidents, and anticipate filing a PTO 8.

<u>Social Media</u>. Courts across the country routinely require disclosure of social media accounts and information. Plaintiffs' objections of undue burden and irrelevance are contrary to the weight of authority. Plaintiffs allege emotional distress and other psychological damage, and Courts have repeatedly recognized social media content is reflective of a person's mental state, and may reveal whether onset of emotional distress occurred, and, if so, the degree of the distress. Further, social media content may contain information related to other stressors that could have produced the alleged emotional distress—reflecting alternative sources for Plaintiffs' alleged emotional and mental issues separate and apart from the alleged incidents at issue in this litigation.

<u>Medical Information</u>. Plaintiffs have objected to producing information about (i) insurance or benefits for injury in the past 10 years; (ii) medical treatment and diagnoses five years prior to the incidents; and (iii) prior mental health issues. Plaintiffs' objections that Defendants are not entitled to information about the Plaintiff's overall health and past medical history unless a physical injury has been alleged are contrary to applicable law, which recognizes that plaintiffs who allege only a mental injury nonetheless put their overall health at issue for purposes of discovery, as medical history bears directly on the questions of causation and the extent of the alleged injuries and damages. Further, Plaintiffs have put their mental health squarely at issue in this case, and there is no basis for limiting Defendants' ability to uncover all prior and current mental health issues and treatment.

<u>Continued Use of Rideshare</u>. Whether Plaintiffs have continued to use rideshare applications after the alleged incidents goes to the heart of the claimed mental injuries, including that Plaintiffs cannot take rideshares anymore and/or have developed of a deep distrust of strangers or fear of rideshares, and/or that their daily lives have otherwise been completely upended.

**Plaintiffs' Position:** Uber's requests for social media information and content, medical information, and post-incident rideshare use are overbroad and unduly burdensome. For example,

Uber seeks identification of *all* social media accounts, whether created or merely "used" by Plaintiffs (ROG 12), and production of *all* contents and communications, whether by a plaintiff or merely "mentioned in," that relate to numerous irrelevant issues. The requests for medical information and post-incident rideshares are equally expansive. *See, e.g.* RFP 5 (all documents and communications from last ten years "concerning ANY claims" submitted to insurance carrier for government agency for benefits). Even if these requests were somehow relevant, they are nevertheless overly burdensome, requiring Plaintiffs for example to review and compile all social media content and all medical information. Additionally, Uber's requests for *all* Lyft and other rideshare communications are overly burdensome and seek irrelevant information. Plaintiffs offered to provide documents sufficient to show whether the Plaintiff uses such services regularly or not, but Uber has refused, insisting it needs every communication—including every random marketing email Lyft has ever sent to the Plaintiffs since their respective sexual assaults.

### IV. Safety Incident Report Data

**Plaintiffs' Position:** Pursuant to the Parties' April 4 agreement, Uber agreed to provide responses to certain Interrogatories addressed below. Plaintiffs raised these below deficiencies to Uber on May 15 and have offered to meet and confer numerous times since, but Uber has not responded. These issues need to be resolved before the May 30 30(b)(6) deposition on this topic Plaintiffs propose the parties conclude conferrals by May 22 and raise remaining disputes to the Court by May 26.

Interrogatories 7 and 8: Uber failed to provide the number of sexual violence incidents in the United States that Uber categorized into each of the 21 categories in Uber's Sexual Misconduct and Sexual Violence Taxonomy or categorized as "Insufficient Information" or "Parent Category Usage Tracking" for years 2023-24 (ECF No. 2713). Instead, Uber served explanations for why Uber will not produce counts as requested by these interrogatories.

Interrogatories 16 and 29: Uber was to produce the UUID of all users of the Uber platform who were banned from the platform, as referenced in Uber's Safety Report, as well as UUIDs of all drivers deactivated as the result of a safety incident in the 21 categories in the Safety Reports. Uber only provided UUIDs of drivers, but not riders. Further, Uber provided 139 driver UUIDs for whom

Uber has not previously produced any incident data and provided UUIDs of drivers deactivated for <u>any</u> reason, not just the reasons requested in the interrogatory. It is thus difficult if not impossible for Plaintiffs to identify trips for which drivers were deactivated due to a sexual violence incident.

<u>Interrogatories 17 and 18</u>: Uber was to produce UUIDs for banned Drivers that Uber shared through ISSP. At least one driver UUID in Uber's response does not appear in the incident data. Additionally, Uber has not produced Jira data for a number of other drivers in Uber's response.

<u>Interrogatory 28</u>: This interrogatory sought payment for all trips that resulted in an incident counted in one of the safety reports. Uber's response apparently includes trips that Uber later determined not to be Uber-related, but Uber has not identified those trips. Additionally, Uber has not provided a data dictionary for fields Uber produced in its response. Plaintiffs request that Uber remedy both deficiencies by May 26.

**Defendants' Position**: This topic is not ripe because Plaintiffs only identified these purported issues for the first time via email shortly before sending this JSR to Defendants, and did not even request to confer. Only after Defendants raised this defect did Plaintiffs ask to confer while refusing to withdraw this improperly raised topic. This is contrary to the Court's instruction not to raise issues on which the Parties have not conferred. ECF 2470 at 4. Nevertheless, Defendants respond below.

<u>Interrogatories 7 and 8</u>: The portion of the Parties' April 4 agreement relating to interrogatories for which Defendants would provide numbers specifically **excluded** these interrogatories. Defendants explained in conferral their reasons for not providing these numbers, which Plaintiffs accepted as Defendants' position and asked Defendants to put those reasons in writing and verify it, which Defendants did. Plaintiffs now seek to undo that agreement.

<u>Interrogatories 16 and 29</u>**:** First, Plaintiffs agreed that Defendants would provide "Independent Driver UUIDs," not rider UUIDs. Second, Plaintiffs initially asserted that *none* of the UUIDs Defendants provided appears within the BDO data. That was false, which Defendants pointed out. Shortly before filing this JSR, Plaintiffs drastically revised their position to say instead that only 139 UUIDs, which Plaintiffs have not identified, do not appear within the BDO data. Defendants will discuss with Plaintiffs, but this demonstrates the impropriety of raising issues prematurely. Third,

Defendants provided UUIDs for *all* deactivated drivers (regardless of deactivation reason) because Defendants cannot determine the reason without a manual review for individual drivers.

<u>Interrogatories 17 and 18</u>: Plaintiffs initially asserted that *none* of the UUIDs Defendants provided appears within the BDO data. That was false, which Defendants pointed out. Shortly before filing this JSR, Plaintiffs drastically revised their position to say that only one UUID, which Plaintiffs have not identified, does not appear within the BDO data. Defendants will discuss with Plaintiffs.

<u>Interrogatory 28</u>: First, Plaintiffs state that Defendants have not identified which UUIDs that Defendants provided are not Uber-related. While Plaintiffs can determine this for themselves with the produced data, Defendants will provide this information to Plaintiffs. Second, while Plaintiffs never previously requested a description for these fields, Defendants can explain them to Plaintiffs.

Finally, there is no basis for a truncated schedule. Despite having Defendants' responses for weeks, Plaintiffs chose not to raise *any* purported issues until the end of last week. Plaintiffs cannot prejudice Defendants due to their own delay. If a dispute remains following conferral, Defendants will require the already limited briefing time under PTO 8.

## V. Plaintiffs' Redactions of Medical Records

**Defendants' Position**: Plaintiffs have claimed "privacy" as a basis to withhold information in their production of their own medical records and redact material within them. By claiming personal injuries, Plaintiffs have put at issue their mental and physical health. Defendants are entitled to discover Plaintiffs' medical and mental health records to test the allegations and Plaintiffs' theories of causation. Under these circumstances, "privacy" is not a legally valid basis to redact information.

**Plaintiffs' Position:** Courts routinely protect plaintiffs' privacy rights from undue discovery, balancing against parties' litigation interests. To the extent this is an issue, Defendants should raise it with individual bellwether plaintiffs' counsel and bring disputes to the Court as they become ripe.

## VI. Hyperlinks Status

**Plaintiffs' Position:** Plaintiffs have identified and requested missing hyperlinks, as well as policies and related operational guidelines. However, for over three dozen hyperlinks contained within documents created between 2018-2025, Defendants have advised that the links were dead or otherwise

unavailable, including, for example, hyperlinks regarding Uber's "proactive mandatory sexual assault/misconduct education course," "Deactivation Workflow," "Realtime ID Check."

**Defendants' Position:** This purported issue is also not ripe because Plaintiffs have not conferred, requested to confer, or even contacted Defendants about this topic. *See* ECF 2470 at 4; ECF 2473, ¶ 3 & 2607, ¶¶ I.3, II.4. If Plaintiffs were actually interested in these documents, they would have requested to confer, but they did not. In any event, Defendants already produced the "Deactivation Workflow" and "Realtime ID Check." The only other link Plaintiffs mention is to a third-party website, and Defendants already produced a lesson copy for that "education course" to Plaintiffs. Defendants have produced over 1.7 million documents in this litigation. That Defendants have identified a few dozen inactive links is not in any way surprising or unexpected – the Parties' agreements expressly anticipate such. ECF 2473, ¶ 2 & 2607, ¶¶ I.2, I.3.

### VII. Plaintiffs' Obligations Under the ESI Protocol

**Defendants' Position**: The ESI Protocol *requires* the following: "For the avoidance of doubt, Plaintiffs will disclose to Defendants their processes for preservation and collection of documents, including the sources from which such documents will be collected, and the parameters for search and review of documents. Plaintiffs will meet and confer with Defendants about these issues." ECF 524. To date, none of the Bellwether plaintiffs has made these required disclosures.

Plaintiffs' limited document productions to date raise serious concerns regarding the sufficiency of their preservation, collection, review, and production efforts. Plaintiffs – like Defendants – have discovery obligations. Plaintiffs seek to excuse their minimal productions on the grounds that the documents they possess are "limited." Yet Plaintiffs have refused to make the disclosures required by the ESI Protocol, which are necessary before any weight can be given to Plaintiffs' bald claims that they have limited documents. Plaintiffs' leadership agreed to recommend to Plaintiffs' counsel in Wave 1 cases to make the ESI Protocol disclosures by May 26, with disclosures for non-Wave 1 cases to follow later. Defendants requested ESI Protocol-compliant disclosures for Wave 1 cases by May 21, so the parties can promptly confer to address any issues.

**Plaintiffs' Position:** Plaintiffs have been producing, and continue to produce, relevant

8

documents. Defendants have pointed out no specific deficiencies other than those subject to separate briefing (and which are unrelated to the ESI order). That said, Defendants have asked to meet and confer regarding ESI (those letters just went out the week of May 12), and Plaintiffs will do so. There is no current, ripe dispute on Plaintiffs' ESI productions.

## VIII. Dates for Case Specific Rule 30(b)(6) Depositions

**Plaintiffs' Position:** Plaintiffs sent Defendants case specific 30b6 depositions notices approximately one month ago (between April 14 and April 18 for the six Wave 1 cases). The parties had agreed in a jointly proposed pretrial order regarding a bellwether deposition protocol that they would each provide deposition dates within five days of receiving a request. (ECF No. 2738-1.) Nonetheless, despite repeated requests, Defendants have failed to provide any dates for these depositions.

**Defendants' Position:** Defendants have identified four witnesses in response to the Wave 1 notices, who have also been designated on topics contained in general 30(b)(6) depositions. The Parties discussed these designations in great detail (by topic). And the dates for these depositions have been or are being set. Defendants are working to identify additional dates as appropriate for case-specific 30(b)(6) testimony by these same witnesses.

## IX. Clawbacks

**Plaintiffs' Position:** Under PTO 14, Sec. 4, a "Clawback Notice" shall include "(i.) the Bates range of the materials subject to the Clawback Notice, and (ii) a privilege log listing the item(s) subject to the Clawback Notice. []." (ECF No. 396.) While Uber often and increasingly claws back documents on the eve of or during depositions, the formal notice is regularly not sent until days later. Even after a formal notice is sent, Uber often does not provide a correlated privilege log and/or substitute materials until many days and sometimes more than a week later. Plaintiffs are unable to challenge these Clawback Notices until all materials are received. Plaintiffs seek a modification of PTO 14 that requires the parties to produce all materials required within two days of first asserting a clawback.

Plaintiffs additionally request modification of PTO 14 Sec. 10(b)(c). Under these provisions Uber instructs witnesses not to answer questions related to documents or portions of documents subject

to clawback. Plaintiffs request that Uber be ordered to allow testimony related to documents subject to clawback, subject to all other applicable conditions set out in PTO 14.

**Defendants' Position:** The Court should reject Plaintiffs' proposed modifications to PTO 14, which is procedurally improper and for which Plaintiffs have failed to show good cause.

First, it is improper to raise a request to modify a pretrial order in a status report, particularly when part of Plaintiffs' requested relief strips protections from privileged information. Such an extreme request has no sound legal basis. Plaintiffs are attempting to skip the briefing process to obscure the fact that there is no good cause to support their requested relief.

Second, Plaintiffs' cursory argument about the number of clawbacks ignores the merits of Defendants' clawbacks and privilege assertions. The Special Master has issued a schedule to resolve clawback challenges, which have already been submitted for review. That process will continue.

Third, Plaintiffs' procedural complaints do not require the Court's intervention. Defendants have issued clawback notices expeditiously and have otherwise complied with applicable pretrial orders. Defendants will not object to calculating Plaintiffs' time for challenging clawbacks as starting once they receive the privilege log and replacement images. Modification of PTO 14 is unwarranted because it is unlikely to result in the Special Master resolving disputes more expeditiously.

Lastly, PTO 14 allows a producing party that believes that a document being used at a deposition contains privileged information, to "instruct the witness not to answer questions concerning the parts of the document containing privileged or protected material." ECF 396 at 4. Plaintiffs have made no attempt to show good cause for stripping away this protection agreed to by the parties and enshrined in the Court's Order and Federal Rule of Civil Procedure 30.

X.  **Plaintiff Fact Sheet Responses**

**Defendants' Position**: Defendants continue to identify plaintiffs whose PFS are deficient or overdue. This Court's orders establish a clear timeline serves complete, verified PFS and associated documents, but do not establish an efficient process to address persisting deficiencies. For instance, on May 16, Defendants filed a Motion to Enforce Judge Breyer's Mar. 26, 2025 Order providing for dismissal of any of the 57 subject to the Order if the plaintiff failed to provide a PFS within 14 days.

This motion marks the fourth round of briefing, spanning eight months, related to these plaintiffs' failure to provide this bare-bones discovery. Simply put, Defendants believe that all parties and this Court would benefit from a streamlined process for addressing PFS deficiencies.

**Plaintiffs' Position:** Plaintiffs' leadership is not aware of which cases Defendants refer to when they describe "an increasing number of plaintiffs." The only cases Defendants identify are the 57 cases that have already been subject to motions practice and so presumably are not part of Defendants' ongoing concerns. Should Defendants identify any problem with particularity, Plaintiffs will meet and confer regarding any proposed modifications to PTO 10.

## XI. Deposition Conduct

**Plaintiffs' Position**: At depositions of Uber's witnesses, Defendants' counsel engaged in improper conduct, including improper coaching, improper objections, improper instructions to the witness not to answer questions, and attempted claw back of de-designated documents, among other conduct. Additionally, witnesses gave non-responsive answers and improper monologue responses to numerous questions. The parties are meeting and conferring on these issues but Plaintiffs expect to file a PTO 8 letter.

**Defendants' Position:** Defendants disagree that Defendants' counsel or witnesses engaged in improper conduct during depositions, but are conferring with Plaintiffs. Defendants are making best efforts to resolve any disputes regarding deposition conduct, including Plaintiffs' counsel's improper use of motions to strike and harassing lines of questioning, without further Court intervention.

## XII. Travis Kalanick Document Production

The parties are meeting and conferring to address custodial productions for Travis Kalanick. If the parties are unable to resolve the issue, they will submit a PTO 8 dispute.

## XIII. Defendants' RFA and Interrogatory Responses

The Parties will meet and confer regarding Defendants' responses and objections to Plaintiffs' First Set of Interrogatories and RFAs, which Defendants served to Plaintiffs on June 20, 2024.

| | |
|---|---|
| By: /s/ Roopal Luhana<br>ROOPAL P. LUHANA *(Pro Hac Vice)*<br>**CHAFFIN LUHANA LLP**<br>600 Third Avenue, Fl. 12<br>New York, NY 10016<br>Telephone: (888) 480-1123<br>Email: luhana@chaffinluhana.com<br>*Co-Lead Counsel for Plaintiffs*<br><br>SARAH R. LONDON (SBN 267083)<br>**GIRARD SHARP LLP**<br>601 California St., Suite 1400<br>San Francisco, CA 94108<br>Telephone: (415) 981-4800<br>Email: slondon@girardsharp.com<br><br>RACHEL B. ABRAMS (SBN 209316)<br>**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**<br>555 Montgomery Street, Suite 820<br>San Francisco, CA 94111<br>Telephone: (415) 426-5641<br>Email: rabrams@peifferwolf.com | By: /s/ Michael B. Shortnacy<br><br>**KIRKLAND & ELLIS LLP**<br>ALLISON M. BROWN<br>JESSICA DAVIDSON<br>LAURA VARTAIN<br><br>**SHOOK, HARDY & BACON L.L.P.**<br>MICHAEL B. SHORTNACY<br>PATRICK L. OOT, JR.<br>CHRISTOPHER V. COTTON<br>ALYCIA A. DEGEN<br><br>**O'MELVENY AND MYERS LLP**<br>SABRINA H. STRONG<br>JONATHAN SCHNELLER<br><br>*Attorneys for Defendants*<br>UBER TECHNOLOGIES, INC.,<br>RASIER, LLC, and RASIER-CA, LLC |

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: May 19, 2025

By: /s/ *Michael B. Shortnacy*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Michael B. Shortnacy*