# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL MATTERS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**JOINT LETTER REGARDING BELLWETHER PLAINTIFFS' RESPONSES TO DEFENDANTS' REQUEST FOR PRODUCTION NOS. 5, 14, 16, 17, 20, 29 & INTERROGATORY NO. 12**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom: G - 15th Floor |

Dear Judge Cisneros:

Pursuant to PTO No. 8 (ECF No. 323), the Parties respectfully submit this joint letter regarding Bellwether Plaintiffs' Responses to Defendants' First Requests for Production Nos. 5, 14, 16, 17, 20, 29, and Defendants' First Set of Interrogatories No. 12.

By: */s/ Roopal P. Luhana*
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: */s/ Christopher V. Cotton*
    CHRISTOPHER V. COTTON (*pro hac vice*)
    **SHOOK, HARDY & BACON L.L.P.**
    2555 Grand Blvd.
    Kansas City, Missouri 64108
    Telephone: (816) 474-6550
    ccotton@shb.com

    **KIRKLAND & ELLIS LLP**
    ALLISON M. BROWN (*pro hac vice*)
    Alli.brown@kirkland.com
    JESSICA DAVIDSON (*pro hac vice*)
    Jessica.davidson@kirkland.com
    LAURA VARTAIN
    Laura.vartain@kirkland.com

    **O'MELVENY AND MYERS LLP**
    SABRINA H. STRONG
    sstrong@omm.com
    JONATHAN SCHNELLER
    jschneller@omm.com

    **SHOOK, HARDY & BACON L.L.P.**
    PATRICK OOT (*pro hac vice*)
    ALYCIA A. DEGEN (SBN 211350)
    MICHAEL B. SHORTNACY (SBN 277035)

    *Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

**I.     Defendants' Position:**

Defendants move to compel Plaintiffs to provide certain (i) social media information and content; (ii) medical information; and (iii) information related to use of rideshare applications after the alleged incidents as set forth in Defendants' First Requests for Production Nos. 5, 14, 16, 17, 20, 29 and Defendants' First Set of Interrogatories No. 12 (exemplar responses attached as **Exhibit A**). This information is directly relevant to the claims and defenses in this multi-district litigation. Plaintiffs allege mental and physical harms, including severe psychological distress way beyond "garden variety" distress, such as overwhelming fears, PTSD, night terrors, and flashbacks, and seek both compensatory and punitive damages. *See* **Exhibit B** (composite sample interrogatory responses). In doing so, Plaintiffs have put the requested information squarely at issue.

It is well-established that a party is entitled to seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Moreover, the information sought does not need to be admissible in order to be discoverable. *Id.* Discovery requests are considered relevant if there is *any possibility* that the information sought may be relevant to the action. *See, e.g.*, *Positive Tech., Inc. v. Sony Electronics, Inc.*, No. 11-cv-2226 SI, 2013 WL 707914, *3, *6 (N.D. Cal. Feb. 26, 2013).

(1) <u>Social media information and content: Interrogatory 12 and RFPs 16 &17</u>

Interrogatory 12 seeks basic information regarding Plaintiffs' social media accounts. Courts across the country routinely require disclosure of such information, and Plaintiffs' objections of undue burden and irrelevance are contrary to the weight of authority and experience in other litigations. *See, e.g., Kellgren v. Petco Animal Supplies, Inc.*, No. 13-cv-644 L, 2016 WL 4097521, *2 (S.D. Cal. May 26, 2016) (compelling identification of social media websites and usernames, finding the burden in identifying them was "minor at best"); *Jiang v. Shogun Japanese Steak House, Inc.*, No. 21-11732-FDS, 2023 WL 9743751,*2 (D. Mass. June 20, 2023) (finding plaintiff failed to carry his burden of showing interrogatories requesting identification of social media accounts were "improper in any way"); *Rodriguez-Ruiz v. Microsoft Operations Puerto Rico, LLC*, No. 18-1806, 2020 WL 1675708, *5 (D. P.R. Mar. 5, 2020) (requiring plaintiff to identify all social media platforms on which he had an account or profile); *Anderson v. CentraArchy Restaurant Mgmt. Co.*, No. 1:14-CV-539-LMM-ECS, 2014 WL 13066216, *2-3 (N.D. Ga. Dec. 2, 2014) (compelling production of user names and emails for any social media account). Plaintiffs' objections that their social media information and content is also off-limits because it is "private" likewise ring hollow. *See, e.g., Rosales v. Crawford & Co.*, No. 2:20-cv-02530, 2021 WL 4429468, *6 (E.D. Cal. Sept. 27, 2021) (no right to privacy or privilege in social media content).

Requests for particular social media data (RFPs 16 & 17) are subject to the same broad scope of Rule 26, and courts have repeatedly found that social media content is relevant and discoverable, particularly when, as here, plaintiffs claim emotional distress. This is because "[i]t is reasonable to expect severe emotional or mental injury to manifest itself in some [social media] content, and an examination of that content might reveal whether onset occurred, when, and the degree of distress. Further, information that evidences other stressors that could have produced the alleged emotional distress is also relevant." *EEOC v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 435 (S.D. Ind. 2010). Thus, so long as the requests are narrowly tailored—as they are here—the information sought is discoverable. *See, e.g., Lin v. Solta Medical Inc.*, No. 21-cv-05062-PJH, 2024 WL 858750, *2 (N.D. Cal. Feb. 15, 2024) (compelling production of social media posts as relevant both to plaintiff's theories of economic damages and emotional injuries); *Lieberman v. Unum Group*, No. 5:20-cv-1798-JGB, 2021 WL 8154889, *9 (C.D. Cal. Oct. 14, 2021) (compelling social media posts as "relevant because they may contain objective and contemporaneous examples of plaintiff's activities and functionality"); *Rosales*, 2021 WL 4429468 at *6 (recognizing that social media activity is reflective of an individual's contemporaneous emotions and mental state); *Anderson*, 2014 WL 13066216 at *3-4 (compelling

production of social media activity and communications during relevant timeframe as reflective of plaintiff's emotional state and relevant to claims of emotional distress).

Plaintiffs contend that RFPs 16 &17 should be limited only to social media posts discussing the incidents, injuries, or use of rideshare services after the alleged incidents. Such limitations ignore the importance of social media discovery from Plaintiffs, and Plaintiffs' repeated suggestions that Defendants should accept less than what they are entitled to under the law should be rejected. In fact, in *Lin*, this Court rejected limitations similar to those Plaintiffs seek to impose here, when it overruled the plaintiff's objections that she did not need to produce any posts other than those that "mention[ed] the incident or Plaintiff's injuries, or that depict[ed] or discuss[ed] Plaintiff's injuries in any way." 2024 WL 858750, *2. This is because the law is well-settled that Defendants are entitled to discovery as to the extent of Plaintiffs' alleged damages; and social media before and after the alleged incidents will provide an important window and basis of comparison into that. Further, social media may lead to information regarding alternative sources for Plaintiffs' alleged emotional and mental issues which have nothing to do with the alleged incidents at issue in this litigation. To this point, other courts have recognized that social media "depicts a snapshot of the user's relationships and state of mind at the time of the content's posting. Therefore, relevance of the content of Plaintiff's [social media] usage as to both liability and damages in this case is more in the eye of the beholder than subject to strict legal demarcations, ***and production should not be limited to Plaintiff's determination of what may be 'reasonably calculated to lead to the discovery of admissible evidence***.'" *Bass v. Miss Porter's School*, No. 3:08cv1807, 2009 WL 3724968, *1 (D. Conn. Oct. 27, 2009) (emphasis added).

The data sought is subject to a narrow window of time (five years prior to the incident to the present) and tailored to specific content that is directly relevant to the claims and defenses, as well as Plaintiffs' credibility. The suggestion that these parameters constitute a "fishing expedition" is incredulous. In *Simply Storage*—a case involving workplace sexual harassment that is frequently-cited for its in-depth analysis on the discoverability of social networking data—the court held that "the appropriate scope of relevance is any profiles, postings, or messages (including status updates, wall comments, causes joined, groups joined, activity streams, blog entries) and SNS applications . . . that reveal, refer, or relate to any emotion, feeling, or mental state, as well as communications that reveal, refer, or relate to events that could reasonably be expected to produce a significant emotion, feeling, or mental state." 270 F.R.D. at 436. Defendants' requests fall squarely within these parameters.

(2) Requests for Production Nos. 5, 14, and 29

Through their objections to RFPs 5 (information about insurance or governmental agency benefits for injury in the past 10 years) and 14 (medical treatment and diagnoses five years prior to the incidents), Plaintiffs would hamstring Defendants' discovery of relevant medical information in this case bearing on key issues such as causation, credibility, and damages. Plaintiffs' objections mistakenly imply that mental health and overall physical health are mutually exclusive by suggesting that if the only harm claimed is mental distress, Defendants are not entitled to information about the Plaintiff's overall health and past medical history. But the law is not that restrictive, and certainly not at the discovery stage which is intended to help define and clarify the issues. Rather, even those Plaintiffs who have only alleged a mental injury and not a physical one have put their overall health at issue for purposes of discovery, as this information bears directly on the questions of causation and the extent of the alleged injuries and damages. *See, e.g.*, *Bashinski v. United States*, No. 23-cv-01026-JO-JLB, 2024 WL 239102, *3-*4 (S.D. Cal. Jan. 22, 2024) (finding records relating to specific injury, records relating to "general health," and records relating to mental health five years preceding incident were discoverable); *Rosales*, 2021 WL 4429468, *6 (recognizing there was "no question" under the law that the plaintiff's medical records were relevant and discoverable in light of claims for emotional distress and that the defendants were entitled to examine records from an earlier time to test allegations of causation); *Moore v. Chertoff*, No. 00-953, 2006 WL 1442447, *2 (D.D.C. May 22, 2006) ("Where a plaintiff alleges

emotional distress, a defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to plaintiff's claimed emotional distress, ***and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so***." (emphasis added).[1] Similarly, as to RFP 29 seeking all documents and communications about mental health issues, Plaintiffs have put their mental health squarely at issue in this case, and the objection that Defendants may have access to some of the discovery through other means is not a basis to deny the request. *See generally, Rosales*, 2021 WL 4429468 at *4; *Campbell v. Facebook, Inc.*, 310 F.R.D. 439, 445 (N.D. Cal. 2015). Plaintiffs' unsupported contentions that it would be a "burden" to produce this information fall flat when considered against the nature of the allegations, claims, and damages they assert.

(3) Request for Production 20: Post-incident rideshare use

RFP 20 seeks information pertaining to Plaintiffs' rideshare use after the alleged incidents. Whether Plaintiffs have continued to use rideshare applications after the alleged incidents is directly relevant to the claims and defenses in this case, contrary to Plaintiffs' objections otherwise. This discovery goes to the heart of the claimed injuries, including that Plaintiffs cannot take rideshares anymore and/or have developed a deep distrust of strangers or fear of rideshares, and/or that their daily lives have otherwise been completely upended. *See* **Exhibit B**. Finally, Plaintiffs' conclusory objections that producing this relevant information would be "burdensome" are insufficient and should be overruled as they have given no valid explanation in support. *See generally Diaz v. Heredia*, No. EDCV 20-2332-JWH, 2022 WL 2134967, *3 (C.D. Cal. Mar. 4, 2022) (conclusory objections of burden are insufficient).

---

[1] Plaintiffs' objection that five years of prior medical records is overly-broad and burdensome is without merit. *See Bashinski*, 2024 WL 239102 at *4 (finding "that a request for medical and mental health records beginning five years prior to the 2019 incident is appropriate").

## II.  Plaintiffs' Position

Uber's requests are facially overbroad and unduly burdensome. And they have remained so despite Plaintiffs' attempts to negotiate and narrow in good faith. The requests seek large swaths of irrelevant information and impose incredible burdens on Plaintiffs – in time, cost, and intrusions into protected and private areas of life. Uber's motion to compel should be denied.

### 1.  Requests for Irrelevant and Intrusive Social Media Content and Information

Uber seeks an invasive trawl through Plaintiffs' private social media information and content without any meaningful connection to the claims in this case. Uber demands identification of *all* social media accounts, whether created or merely "used" by Plaintiffs (ROG 12),[2] and production of *all* contents and communications, whether by a plaintiff or merely "mentioned in," that relate to issues as diffuse as "social gatherings," "hobbies," "alcohol," "drugs" (RFP 16), "mental OR emotional state OR condition" including *any* mental health diagnosis, traumatic experience, nonsexual assault or battery, depression, anxiety, PTSD, difficulty falling asleep and/or staying asleep, stress-related gastrointestinal disturbances, hypoactive sexual desire, suicidal ideation and/or planning, stress, headaches and/or migraines, difficulty concentrating, trauma, emotional pain, and suffering (RFP 17).[3] Exacerbating the breadth of these requests, is the insistence on a five-year lookback period, which predates the assaults by a significant margin and has no discernible connection to a Plaintiff's emotional state *before* the incidents or harm caused *by* the incidents. In short, the requests violate relevance and proportionality in Rule 26(b)(1) and represent an impermissible "fishing expedition." *See Mailhoit v. Home Depot, U.S.A., Inc.*, 285 F.R.D. 566, 572 (C.D. Cal. 2012) (party may not "engage in a proverbial fishing expedition, in the hope that there might be something of relevance" in social media account). Indeed, nothing in the Federal Rules permits such "a generalized right to rummage at will" through social media posts. *See id.* at 571. Instead, requests must be narrowed by websites/platforms, time, and *content related to the case*. *See Kellman v. Spokeo*, 2023 WL 411353, at *1 (N.D. Cal. Jan. 25, 2023).

Uber fails to meet those requirements here. *First*, the fact that Plaintiffs have alleged emotional distress does not open the door to every facet of a plaintiff's life. *See, e.g., Mailhoit,* 285 F.R.D. at 569-571 (claims of PTSD, depression, isolation does not entitle defendant to broad discovery of social media); *see also Rodriguez-Ruiz,* 2020 WL 1675708 at *4 (cited by Uber) (that a plaintiff's mental or emotional state is at issue does not "automatically justify sweeping discovery of social media content"); *Johnson v. PPI Tech. Servs., L.P.,* 2013 WL 4508128, at *2 (E.D. La. Aug. 22, 2013) ("[s]imply placing their mental and physical conditions at issue is not sufficient to allow PPI to rummage through [plaintiffs'] social media sites"). "The fact that an individual may express some degree of joy, happiness, or sociability on certain occasions sheds little light on the issue of whether he or she is actually suffering emotional distress." *Giacchetto v. Patchogue-Medford Union Free Sch. Dist.,* 293 F.R.D. 112, 116 (E.D.N.Y. 2013) (cautioning that "relationship of routine expressions of mood to a claim for emotional distress damages" is "tenuous"): *see also R.D. v. Shohola, Inc.*, 2019 WL 6211243 (M.D. Pa. Nov. 20, 2019) (granting motion in limine to exclude social media posts as irrelevant on emotional distress; "simply because an individual posts some snippets of his or her life on social media does not mean that he or she is not suffering from any emotional distress"). *Second*, Uber's broadly framed requests, *e.g.*, anything related to "mental OR emotional state OR condition," "gastrointestinal disturbances," "hobbies," "gatherings," "drugs," "alcohol," and "headaches," are not narrowed in scope, time and content related to Plaintiffs' claims. *See, e.g., Mailhoit*, 285 F.R.D. at 571-572 (denying analogous

---

[2] ROG 12 further demands identification of irrelevant "social media" accounts, *e.g.*, LinkedIn (vocational), NextDoor (neighborhoods), Yelp (business reviews), Twitch (gaming), SoundCloud (music), MixCloud (music/audio), Pinterest (digital pinboard). While Uber acknowledged that some of these may be irrelevant, it has refused to remove any from its interrogatory.

[3] Contrary to Uber's representations, Plaintiffs do not seek damages for identical conditions, *e.g.,* not every Plaintiff complains of "headaches" or "gastrointestinal issues." Nevertheless, Uber imposes the same scope for every Plaintiff without identifying *why* it is relevant across the broad; Uber instead stands on a shotgun approach.

requests for broad categories of social media content related to "emotion, feeling, or mental state" as "extremely broad description[s]"). Moreover, the burden on Plaintiffs to review and produce content touching on such amorphous and irrelevant categories is immense and vastly outweighs any speculative benefit to Uber. Plaintiffs cannot reasonably identify all content related to Uber's expansive categories without conducting an exhaustive, and likely impossible, review of *every* post, message, and interaction. Identification of responsive information is further complicated by Uber's lack of particularity. Terms like "mental," "emotional," "stress," "anxiety," "gatherings," "hobbies," do not put a reasonable person on notice of what is sought. *See Mailhoit*, 285 F.R.D. at 571 (categories fail to put a reasonable person on notice of what specific documents would be responsive and thus fail the reasonable particularity requirement of Rule 34(b)(1)(A)). Attempts to clarify these terms with Uber were to no avail, as Uber maintained an "everything" position.

Uber's cases do not justify the breadth of its requests. The scope of discovery in each were much more targeted than Uber's requests here.[4] *Compare, e.g. Rosales*, 2021 WL 4429478 at *5 (limited to posts "relating to defendants, their business, and their treatment of you, damages you seek from defendants, or the defenses asserted in defendant's answer") *with* RFP 16/17 (posts related to, *e.g.,* any and all mental/emotional distress, hobbies, drugs, alcohol, social gatherings, headaches, sleeping/staying asleep, difficulty concentrating). In the interest of compromise, Plaintiffs propose a reasonable scope for production. For ROG 12, Plaintiffs will identify accounts – created and operated by Plaintiffs – that were used in five years prior to the incident to post about Uber, and any accounts since the incident used to post about Uber, rideshare services, the incident, or their damages/injuries from the incident (including general posts about their mental states). For RFPs 16 & 17, Plaintiffs will produce posts they made that discuss the subject incident, their injuries caused by the subject incident and posts about Uber/Lyft/Rideshare that they have made since the subject incident. This approach tailors production of relevant information to that which is directly relevant to the alleged incidents and claimed damages, including the nature and extent of Plaintiffs' emotional distress proximately caused by Uber's negligence.

### 2. Requests for Irrelevant and Intrusive Medical Information

RFPs 5, 14, and 29 are similarly overbroad and unduly burdensome. *See* RFP 5 (all documents and communications from last ten years concerning any claims submitted to insurance carrier for government agency for benefits); RFP 14 (all documents relating to any medical treatment and diagnoses within five years pre-incident); RFP 29 (all documents and communications evidencing any instance or symptom of depression, anxiety, PTSD, or trauma at any time); *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D. Cal. 1995) (requests for "documents that concern or are at all relevant to, to any extent or degree, the mental, psychological, or physical conditions [of defendants] at any and all times up to and including the present time" overbroad). As examples of overbreadth, during meet and confers Uber maintained that claims for insurance/government benefits would include such irrelevant issues like food stamps and giving birth; medical treatment and diagnoses would include *any* injury no matter how slight; trauma would include such immaterial matters as any family dispute, *e.g.,* sibling disputes or childhood anger over divorcing parents (and would encompass production of childhood diaries discussing same). These requests go far beyond relevance into harassment and intimidation.

As with the social media requests, Uber seeks to justify its expansive discovery by pointing to claims of physical and mental injuries. For the same reasons stated above, these claims do not grant free reign into any and all protected medical information. *See, e.g., Soto, supra*; *Fitzgerald v. Cassil*, 216 F.R.D. 632, 634 (N.D. Cal. 2003) (requests for medical information should be tailored to specific injuries alleged, *e.g.,* medical records regarding physical conditions are not relevant where only emotional distress is alleged, and vice-versa); *Rosales,* 2012 WL 4429468 at *4 (cited by Uber) (medical records must be "appropriately limited in time and scope"). Moreover, the burden on Plaintiffs, including production of effectively all medical information for all time,

---

[4] *Lin* is particularly distinguishable as the plaintiff in that case alleged lost earnings as a *social media influencer*.

and gross infringement on recognized privacy interests into confidentiality of medical information, weighs against blanket discovery. *See, e.g., id.* at 618, *citing Whalen v. Roe*, 429 U.S. 589-600 (1977); *Caesar v. Mountanos,* 542 F.2d 1064, 1069 (9th Cir. 1976). And, while Uber argues that five-years is not overbroad (*see* fn. 1), it fails to acknowledge that RFP 5 seeks a decade of information and RFP 29 spans "any time." When coupled with an already expansive scope, these timeframes exacerbate the burdens rather than reduce.

Despite Uber's refusal to move beyond its all or nothing approach, in the interest of compromise, Plaintiffs have proposed a reasonable scope for production of medical information. For these requests, Plaintiffs will produce insurance/government benefits claims arising from the claimed physical or emotional injury alleged, will produce medical records for two years prior to the incident,[5] and mental health records for the past ten years.

### 3. Requests for Production of All Post-Incident Rideshare Use

Uber's blanket request for all documents related to post-incident rideshare is overbroad, cumulative, and unduly burdensome.[6] Uber argues this evidence is relevant to claims that Plaintiffs cannot take rideshares anymore, have developed a deep distrust of strangers or fear of rideshares, or that their daily lives have otherwise been completely upended. But Uber's request is not tailored to these issues; it does not seek evidence limited to rideshare use but rather *every* communication no matter how attenuated. Further, not every Plaintiff has made these claims and, even so, production of *every* communication is unnecessary to counter them. Uber can easily get to the heart of these issues through interrogatories or deposition testimony. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (court may limit discovery that is "unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Production of *every* rideshare communication is simply unwarranted. Moreover, responding to such request is no small feat. For example, the Lyft app does not allow downloads of ride history, let alone *every* communication ever received, so responding to RFP 20 would require manual review. For at least one Plaintiff, this would span seven years and thousands of emails. Uber's heavy-handed demands are improper.

---

[5] Plaintiffs make this offer in good faith and despite the fact that only two plaintiffs have alleged physical injury.
[6] Uber has confirmed that this request does not apply to use of the Uber app.

**FILER'S ATTESTATION**

I, Christopher V. Cotton, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: May 20, 2025

By: <u>*/s/ Christopher V. Cotton*</u>
     Christopher V. Cotton
