# EXHIBIT 1

Pages 1 - 36

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Lisa J. Cisneros, Magistrate Judge

IN RE: UBER TECHNOLOGIES,              )
INC., PASSENGER SEXUAL ASSAULT )
LITIGATION                             )   **No. 23-MD-03084 CRB (LJC)**
                                       )
_____ )


                                    San Francisco, California
                                    Tuesday, May 13, 2025

       **TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:
                        GIRARD SHARP, LLP
                        601 California Street, Suite 1400
                        San Francisco, California 94108-2819
               BY:  **ANDREW R. KAUFMAN, ATTORNEY AT LAW**

                        CHAFFIN LUHANA LLP
                        600 Third Avenue, 12th Floor
                        New York, New York 10016
               BY:  **STEVEN D. COHN, ATTORNEY AT LAW**

                        WALKUP, MELODIA, KELLY & SCHOENBERGER
                        650 California Street, 26th Floor
                        San Francisco, California 94108-2615
               BY:  **SARA M. PETERS, ATTORNEY AT LAW**

                        EDELSON PC
                        1728 16th Street, Suite 210
                        Boulder, Colorado 80302
               BY:  **MEREDITH D. STRATIGOPOULOS**
                        **ATTORNEY AT LAW**


             **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED REMOTELY BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
                        CSR No. 7445, Official U.S. Reporter

1    **APPEARANCES VIA ZOOM:**    (CONTINUED)

2    For Plaintiffs:

3                             CLARKSON LAW FIRM, P.C.
                              95 Third Street, Second Floor
                              San Francisco, California 94103
4                      BY:   **TRACEY B. COWAN, ATTORNEY AT LAW**

5

6    For Defendants:

7                             SHOOK, HARDY & BACON LLP
                              600 Travis Street, Suite 3400
                              Houston, Texas 77002
8                      BY:   **VERONICA H. GROMADA, ATTORNEY AT LAW**

9                             SHOOK, HARDY & BACON LLP
                              2555 Grand Boulevard
10                            Kansas City, Missouri 64108
                       BY:   **CHRISTOPHER V. COTTON, ATTORNEY AT LAW**

11                            KIRKLAND & ELLIS LLP
12                            601 Lexington Avenue
                              New York, New York 10022
13                     BY:   **CHRISTOPHER D. COX, ATTORNEY AT LAW**

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| **Tuesday - May 13, 2025** | **1:20 p.m.** |

<u>**P R O C E E D I N G S**</u>

---o0o---

**THE COURTROOM DEPUTY:**  U.S. District Court is now in session.  The Honorable Magistrate Judge Lisa J. Cisneros presiding.

We are calling 23-MD-03084, In Re Uber Technologies, Inc.

Counsel, please state your appearances for the record, beginning with plaintiffs.

**MS. PETERS:**  Good afternoon, Your Honor.  Sara Peters on behalf of the plaintiffs.

**THE COURT:**  Good afternoon.

**MR. COHN:**  Good afternoon, Your Honor.  Steven Cohn on behalf of plaintiffs.

**THE COURT:**  Good afternoon.

**MS. COWAN:**  Good afternoon, Your Honor.  Tracey Cowan on behalf of plaintiffs.

**THE COURT:**  Okay.  Good afternoon.

**MS. STRATIGOPOULOS:**  Good afternoon, Your Honor.  Meredith Drukker Stratigopoulos on behalf of plaintiffs.

**THE COURT:**  Okay.  Good afternoon.

**MR. KAUFMAN:**  Good afternoon, Your Honor.  Andrew Kaufman from Girard Sharp on behalf of the plaintiffs.

**THE COURT:**  Good afternoon.

**THE COURTROOM DEPUTY:**  And now we'll start with

```
 1   defense.
 2          MR. COX:   Good afternoon, Your Honor.   Christopher Cox
 3   on behalf of the Uber defendants.
 4          THE COURT:   Good afternoon.
 5          MR. COTTON:   Good afternoon, Your Honor.   This is
 6   Chris Cotton from Shook Hardy, also on behalf of the Uber
 7   defendants, and I'm joined by my partner Veronica Gromada.
 8          THE COURT:   Good afternoon.
 9      All right.   I've got the parties' joint discovery letter,
10   and I had a couple of questions that I wanted to ask before --
11   before we check in briefly about the bellwether depositions.
12      I don't think this will be a long hearing, but I did want
13   to run a few of these questions by the parties, starting with
14   the purported mass deletion of company data regarding the
15   30(b)(6) notice, where Uber says that that topic is simply too
16   broad and there needs to be some sort of threshold showing of
17   spoliation.
18      My question for the plaintiffs there is, when I think
19   about Rule 30(b)(6) notices, they need to be specific enough
20   for the witness that's put forward to prepare and answer
21   questions related to that topic.   So, you know, how broad is --
22   is the purported mass deletion of company data?   I mean,
23   this -- Uber is a very large -- it's a large corporation.   It
24   has a lot of different kinds of data and information.   It's
25   like where -- what are the parameters for that, the scope of
```

 1    this mass deletion?  There's a general reference to a book.

 2        So who wants to tackle that question?

 3        **MR. COHN:**  I'll take that, Your Honor.  Steven Cohn on

 4    behalf of plaintiffs.

 5        So, Your Honor, this has been an issue since before

 6    the Court issued PTO Number 2 related to potential evidence

 7    destruction.  This goes back a while, related to when

 8    litigation holds were put in place in 2023; and it's

 9    plaintiffs' position that should have been put in place much

10    earlier, going back to 2013.  It's come up during document

11    production, where plaintiffs have gone back and asked for

12    particular hyperlinks, that the defendants have come back and

13    said they can't find those particular issues.

14        So, really, what we want to explore on a -- on a 30(b)(6)

15    deposition on this topic is exactly what is missing, why it's

16    missing, and when it went missing.

17        We know that certain documents are missing.  We know that

18    there's gaps in production.  In the PTO 8 letter, we used

19    Mr. Kalanick as an example, related to just a minuscule amount

20    of emails that have been produced, and we'd expect to see a

21    much higher volume of documents produced.

22        So this particular topic, as we put in the notice, we

23    related it into sub -- some statements that were made in either

24    the book *Super Pumped* or in the Jacobs letter, which was filed

25    by another court in this district.  But I think really, at a

1    30(b)(6) deposition, we want to explore this topic broadly to

2    find out exactly what's missing, how it went missing, and then

3    potentially come back to the Court later on with a Rule 37

4    motion.

5              THE COURT:  Okay.  But what's missing?  I mean,

6    company information -- how does Uber identify an appropriate

7    witness and prepare that witness?  Because it's a very broad --

8    "what's missing" is not very particular.  Like, what type of

9    data --

10             MR. COHN:  Sure.

11             THE COURT:  -- are you talking about?

12        How would you propose that Uber prepare for something of

13   that scope, you know, a set of questions that could be

14   potentially very broad?

15        MR. COHN:  It's difficult to pin down precisely,

16   Your Honor, because at this point we don't know exactly what's

17   missing.  We know that when we requested relevant documents,

18   we've gotten responses that "They're missing"; and we know that

19   when, you know, we've sought different things, that they

20   weren't available; and from what we could see in the gaps, that

21   there are relevant documents missing.  But it's hard to -- I

22   understand why Your Honor is asking this question; but it's

23   hard, prior to actually taking the deposition, to know exactly

24   what that is.

25        You know, certainly, we want to narrow this as much as

possible; but, you know, I think it would be really related to

any relevant documents which were not preserved related to a

relevant issue from 2013 onward that's been described in the

book *Super Pumped*, also in the Jacobs letter.

And it's -- it's -- I understand why Your Honor is asking

that, but it's difficult to kind of narrow that down further

without really knowing the complete universe of what relevant

information is missing.

**THE COURT:**  I thought maybe -- it looked like,

Mr. Cox, maybe you wanted to speak up, or I don't know who from

Uber would like to respond to this point.

**MR. COX:**  I would like to respond, Your Honor.

Thank you.  This is my first time before you.  It's good to see

you, and thank you for the opportunity to be heard.

I think -- I think Your Honor identified the challenge

here, and Mr. Cohn, I think, acknowledged it, which is that

there hasn't been a threshold showing that relevant documents

are missing or that Uber has not met any obligation to retain

documents that are missing or lost.

And we've agreed to put up a witness on the other

13 topics in the notice that relate to recordkeeping

procedures, policies, and litigation holds.

But what Topic 1 is about, it's very vague; it's very

broad.  It's about a stray sentence in a book published a

number of years ago, and it does not identify with specificity

1  that documents related to this litigation, that are relevant to

2  this litigation were lost or destroyed, and that's the

3  challenge in preparing a witness on a topic like that.

4        MR. COHN:  And, Your Honor, if I could respond

5  briefly.

6        THE COURT:  Mm-hmm.

7        MR. COHN:  That's a separate issue regarding narrowing

8  the actual topic.  But we've certainly met our threshold

9  showing that relevant information is missing because we've

10  requested relevant documents from Uber and they've come back

11  and specifically told us "That's missing."  So we know it's

12  happening.  And we also have additional evidence because we've

13  seen gaps in production.  So it's really -- we've met that

14  threshold showing.  It's a question of narrowing the scope

15  potentially of that topic.

16        THE COURT:  Well, I guess one way that I'm thinking

17  about this issue is that there may not be a need for a strict

18  showing, a threshold showing on missing or destroyed evidence

19  to implicate spoliation.

20        Instead, these are types of questions -- at least where

21  they're more specific, these are types of questions that you

22  could ask, and it would be proportionate to the needs of the

23  case because it would be part of simply figuring out whether

24  production has been complete or to what extent production of

25  relevant information is complete, given all of the litigation

1  holds that were placed over 14 years.

2      So I'm thinking of this possibly as allowing at least

3  certain lines of inquiry, not because -- not necessarily

4  because it's dependent on some threshold showing that there's

5  been systematic destruction of evidence, but simply to ensure

6  that -- that production is as complete as it can be or to

7  understand what the scope of the production is.

8      So especially, I think particularly in this kind of case,

9  which is an MDL, it's not your -- I know it might be considered

10  sort of discovery on discovery, but this is not just one

11  individual case.  It's thousands of cases brought together in a

12  centralized, you know, proceeding for pretrial purposes; and --

13  and it covers many, many years with different employees and

14  different poli- -- you know, document retention policies over

15  the years.

16      So even -- I mean, there's some information here that

17  plaintiffs are putting forward regarding systemic destruction

18  of information.  But I think the reality here, though, is that

19  I think it may be well within Rule 26 to allow certain of these

20  topics simply to ensure that we've got complete production and

21  to understand the extent to which information was able to be

22  collected and produced.

23      But I'm still struggling with this -- the breadth of Topic

24  Number 1.  And I think as a practical matter, it presents some

25  difficulty in terms of preparing to answer questions, basic

1    questions.

2        But your other -- the other topics that plaintiffs have

3    listed, though, do -- you know, are more specific as far as

4    Uber's recordkeeping systems, retention policies and practices

5    with respect to emails, and that's Topic Number 4.  You know,

6    the Topic Number 5 is specific to Slack communications.  And I

7    don't understand Uber to be objecting to those topics as an

8    appropriate part of a 30(b)(6) deposition.  So why can't

9    plaintiffs simply ask the questions they want to ask within

10   these particular topics that are not objected to at this point

11   by Uber?

12       **MR. COHN:**  Your Honor, I think there might be some

13   overlap, but I think really -- and Your Honor, I think, nailed

14   it on the head.  When we're really looking at systemic failures

15   and systemwide failures at Uber, I don't think we're asking

16   Uber to prep a deponent to talk about any specific individual's

17   deficient production.  It's really systemic problems and

18   systemwide problems.  Those problems were documented not just

19   in the book, but also in the Jacobs letter.  And so some of

20   that might be overlapping with other topics in the notice, but

21   some might not, and some might come in just specifically under

22   that Topic 1.

23       **THE COURT:**  Well, systemwide, I mean, you could talk

24   about the whole company; but it seems like you have to think

25   about, you know, what data systems.  Are you talking about

1    email, the email system or the system for -- it's -- the

2    support communications and all the Bliss messages or the

3    investigatory documents that were maintained?  Because kind of

4    a broad reference to systemwide, I mean, unless you've got

5    something more specific that you can explain to me and explain

6    to Uber so that they can properly prepare and have a fair

7    opportunity to prepare; otherwise, it sounds just like a

8    behemoth of a topic.

9            **MR. COHN:**  Well, I mean, I think it was what was

10   articulated not just in the book, but in the Jacobs letter.

11   The Jacobs letter specifically goes through --

12           **THE COURT:**  Well, there's no excerpt of the book, I

13   mean, that's --

14           **MR. COHN:**  Yeah.

15           **THE COURT:**  -- attached in the records; right?

16       You want me to go and buy the book and --

17           **MR. COHN:**  No.  I'm certainly not suggesting that,

18   Your Honor.  I think the book -- the line in the book talks

19   about a system; but really, the Jacobs letter goes into it in

20   detail, efforts that were made to destroy documents or

21   improperly label them as attorney-client privileged.  And

22   I think that's really what we're looking to -- to explore under

23   Topic 1 and Topic 2.

24           **MR. COX:**  Your Honor --

25           **THE COURT:**  Well --

1          **MR. COX:** -- I would just -- oh, sorry.

2          **THE COURT:** Okay.  The Topic 1 didn't mention the

3    Jacobs letter.  I think it's -- it's in your discovery letter.

4        What did you want to say, Mr. Cox?

5          **MR. COX:** Exactly what you did, Your Honor, that

6    Topic 1 does not -- the Jacobs letter is not a part of Topic 1.

7          **MR. COHN:** That's true, Your Honor.  It's part of

8    Topic 2.  But the Jacobs letter does talk about, in addition to

9    improper privilege designations, also document destruction.

10       Of course, 30(b)(6), we want to try to put with as much

11   particularity and specificity as possible, but it's really a

12   minimum, not a maximum.  So it talks about document

13   destruction, but to really prep the witness and go from there.

14         **THE COURT:** Okay.  All right.  Let me move on to my

15   next question about the purported misuse of attorney-client

16   privilege.  What's the threat ops?  And how does that relate to

17   this case?

18         **MR. COHN:** I don't know if that question is for

19   plaintiffs or defendants, Your Honor.

20         **THE COURT:** It's for the plaintiffs.

21         **MR. COHN:** Well, the threat ops, we're still exploring

22   exactly how that fits in.  We know that's part of Uber.  But we

23   know that -- it appears, at least from that letter, that,

24   you know, there were improper instructions to mark things

25   attorney-client privileged.  We saw that also in our review of

1   Uber's privilege designations.

2       We previously went to Your Honor regarding a motion for

3   sanctions.  That was denied at that time.  But that's what led

4   to the appointment of the special master.  Our understanding is

5   that we could potentially come back to the Court under a

6   Rule 37 motion after we explore this further in discovery.

7       Topic 2 is really exploring this further in discovery to

8   understand exactly what was done with Uber regarding improper

9   designations of attorney-client privilege, which is, again,

10  something that we've seen in our review of the privilege logs.

11      **THE COURT:**  Okay.  I don't think I grasp exactly what

12  the threat ops was.

13      **MR. COHN:**  To be honest, Your Honor, it might be

14  something that Uber might be better able to explain.

15      **THE COURT:**  Yeah, or anybody who can tell me what --

16  which is mentioned in the --

17      **MR. COHN:**  I understand it, generally, as a department

18  in Uber.  I don't know if it even still exists in Uber.

19      But Uber's counsel might be able to answer that better.

20      **MR. COX:**  Sure, Your Honor.  I can -- our position is

21  that threat ops doesn't have anything to do with the issues in

22  this case.

23      You know, as a general matter -- and I think you can get

24  this from the letter a little bit, that this was a group that

25  did research on competition and opposition, almost like

1    opposition research in politics.  Do not believe that it

2    relates to the issues of sexual assault and sexual

3    misconduct -- alleged sexual assault and sexual misconduct in

4    this litigation.

5        So, again, that's part of the problem here is that

6    plaintiffs are taking a letter in a settlement demand context

7    from eight years ago, describing a hearsay statement by the

8    lawyer's client, a former Uber employee, and using that as sort

9    of a launching point for a deposition topic, which we believe

10   is inappropriate.

11       I think, in particular -- and Mr. Cohn alluded to this --

12   there is a very robust privilege process in this case.  And

13   regardless of any -- we're not conceding that any of these

14   allegations in the Jacobs letter related to the abuse of

15   privilege are accurate; but even if they were, even if banners

16   were inappropriately placed on documents, Uber and its counsel

17   in this case have an obligation to make good faith privilege

18   designations.  Plaintiffs have an opportunity to challenge

19   those designations, and there is a very rigorous process by

20   which those challenges are heard by the Court and adjudicated

21   on, and privileges are either maintained or rejected on that

22   basis.

23       So, again, we believe this is not an appropriate topic;

24   and, rather, privilege is being dealt with by the Court in a

25   way that makes sense apart from a 30(b)(6) deposition about,

1   again, a stray statement in a letter from a number of years

2   ago.

3          **MR. COHN:**  Your Honor, I would just add that

4   Mr. Jacobs was -- his direct report was Mr. Sullivan, who is

5   going to be a deponent in this case.  He was part of the

6   briefing related to which apex depositions would go forward.

7   And so we want to explore, obviously, to the extent he was a

8   direct report to Mr. Sullivan, what overlap that was with

9   documents being improperly marked privileged.

10          **THE COURT:**  Okay.  I'll give that some more thought.

11      As far as the request to bring laptops, I want to move

12   into that issue.  Can plaintiffs explain more clearly what you

13   intend to learn or what you think you might learn from the

14   demonstrations?

15      I know I authorized some inspection previously, but what

16   more do you need to learn through these particular

17   demonstrations?  The discovery letter describes how the request

18   is narrowly tailored and that it's not a full request for an

19   extension -- excuse me -- an inspection.  But what -- you know,

20   what's the purpose as far as information gathering?  Like --

21          **MS. PETERS:**  Your Honor --

22          **THE COURT:**  -- why is it important?

23          **MS. PETERS:**  Your Honor, Sara Peters for the

24   plaintiffs.

25      This is an issue that I'll try to address.

1           **THE COURT:**  Sure.

2           **MS. PETERS:**  An example may be helpful.

3       In Exhibit 4 to the joint brief -- that's one of the three

4    notices that were attached.

5           **THE COURT:**  Mm-hmm.

6           **MS. PETERS:**  There, we had request for -- Request

7    Number 6 for documents, which asks for the witness to bring a

8    laptop that's able to view the architecture of the

9    investigation platforms that are used by Uber's investigators

10   when they're investigating a reported safety incident.

11       And I'm happy to share my screen if that would be helpful

12   to Your Honor.

13          **THE COURT:**  If you could just give me the docket page

14   number.

15          **MS. PETERS:**  Yeah.  This is 2957-1 on page 6.

16          **THE COURT:**  Okay.

17          **MS. PETERS:**  I'm sorry.  I just switched to -- I

18   switched to follow along with the discussion you were just

19   having.  So, I apologize.  It's 2957-4 on page 9 through 10.

20          **THE COURT:**  Okay.  Yeah, this is a different

21   deposition notice.  Okay.

22       Okay.  I'm with you.

23          **MS. PETERS:**  Okay.  So both Request 6 and Request 7

24   ask for the witness to bring a laptop that's capable of logging

25   in and just showing certain -- the architecture of certain

1   platforms and systems.

2       One example is with Request Number 6, we're asking for the

3   witness to bring a computer that can log into the platforms

4   that the investigators are using when they're investigating a

5   reported safety incident so that the witness can show how the

6   investigators' resources are organized, linked, accessed,

7   viewed, and interacted with.

8       So this topic -- rather, this notice includes Category 12,

9   where we're asking for a witness who is knowledgeable, on

10  behalf of Uber, to talk about the process for investigating

11  reported sexual assault incidents.

12      And we have a lot of little pieces of the puzzle,

13  you know, where we have these screenshots of the safety lens or

14  a screenshot of something from the chronicle map or a

15  screenshot from something over here, but we don't really see

16  how those all fit together.

17      And especially, you know, now that companies are

18  increasingly not relying on just straightforward, old-fashioned

19  documents, but user interfaces that have interrelated systems

20  where you click here and then you jump here, you know, and you

21  open up a protocol or you open up a script that guides you

22  about what to do and how to respond, we really are flying blind

23  when we're asking questions of a witness without being able to

24  understand how that information links together.

25      It's sort of -- not to be -- I guess at the risk of being

1    hyperbolic -- a little bit like taking the deposition of a

2    pilot about a cockpit where you just have little screenshots or

3    zoom-ins of every button but you can't, like, zoom it out and

4    see the dashboard that the pilot would see.

5        This comes up frequently in other contexts, like medical

6    malpractice in state court where we have electronic medical

7    record systems that really can't be understood until they're

8    shared screen at a deposition to walk through the way that the

9    information is linked together.

10       So that's an example of the goals.  And there are really

11   just four of these categories, all of which are tailored to be

12   supportive of the questioning at the deposition.

13           THE COURT:  And none of the discovery that I've

14   authorized already helps you get at that information or

15   understand?

16           MS. PETERS:  It does.

17           THE COURT:  Because I thought I had authorized a prior

18   inspection.

19           MS. PETERS:  No, it does very much so, Your Honor.

20   And I think you may be referring to the knowledge base issue

21   where there was --

22           THE COURT:  Yeah, the policies.

23           MS. PETERS:  Yeah.  With the knowledge base policies,

24   there was sort of an initial option for the parties to work

25   together, and then there was a backup option for the plaintiff

1    to actually review on a computer some of those systems.

2        We didn't end up, in that context, getting to that backup

3    option, as the way that that order was, I think, crafted was to

4    provide kind of an Option 1 and then an Option 2.

5        But here, there's --

6            THE COURT:  Okay.

7            MS. PETERS:  -- a particularized relevance to --

8            THE COURT:  Right.  And then it went to Judge Jones,

9    I believe, but --

10           MS. PETERS:  Yeah.

11           THE COURT:  Okay.

12           MR. COX:  May I respond, Your Honor?

13           THE COURT:  Yes, of course.

14           MR. COX:  Thank you.

15       We believe this is a request without basis or authority,

16   and plaintiffs haven't cited any authority for this request.

17   It runs afoul of Rule 34.  I believe it would turn

18   well-accepted deposition -- 30(b)(6) deposition procedures on

19   their head.

20       In terms of Rule 34, the cases we've cited demonstrate

21   that that rule does not provide a routine right of direct

22   access to a party's ESI.  Rather, in terms of what you have

23   ordered in this case, exceptional circumstances must be shown:

24   data tampering, proven failure to disclose.  Those aren't

25   present here.

1          This is also not narrowly tailored.  I mean, this seeks

2   unfettered access to company systems.  And in terms of what

3   Ms. Peters pointed out, in the Request Number 6, in Exhibit 4

4   to the letter, Uber investigators may use a number of systems,

5   and this would allow access to --

6          **THE COURT:**  Okay.  Let me just pause you here because

7   it's not so much they want direct -- that plaintiffs want

8   direct access to Uber's networks, but they want to understand

9   the interface, as I understand it.  And why is that not like a

10  tangible thing under Rule 30(b)(2) that I can allow --

11  authorize to be produced as part of a deposition?

12         **MR. COX:**  Well, Your Honor, the -- you know, the

13  show-and-tell that plaintiffs are asking for here would be

14  without regard to relevance or privilege or confidential

15  information or private information that's part of those

16  systems.

17         And, typically, where these types of inspections are

18  allowed, there are safeguards in place that allow for the

19  protection -- you might have a monitor; you might have

20  something else -- but some safeguard in place to protect

21  against the disclosure of privileged or confidential or private

22  information; and those safeguards are not really feasible in

23  the context of an oral deposition.

24         And I guess I'll give a metaphor a shot.  I don't know if

25  it'll be as successful as Ms. Peters.  But, I mean, to us, this

1    is tantamount to holding a deposition not in a conference room

2    of outside counsel, but at Uber's headquarters, and not sort of

3    sitting down with the questioner asking the witness questions

4    but, rather, having the witness stroll through the company and

5    do show-and-tell with Uber's proprietary business information

6    and systems while answering questions.  We don't think that

7    that's appropriate.

8        **THE COURT:**  Well, obviously, counsel will be present

9    and could object if it went further than -- you know, into

10   proprietary or confidential information beyond simply,

11   you know, allowing the attorneys to see a demonstrative of,

12   like, the dashboard that an Uber employee might be looking at

13   when they're, you know, receiving and handling some sort of

14   passenger complaint.

15       **MR. COX:**  But, Your Honor, if the request is for a

16   dashboard, then let's have a discussion about what the request

17   is for, not sort of allowing access into a live system.

18       And as Your Honor indicated, inspections have been

19   allowed; or if there are requests for specific -- architecture

20   of specific systems, I mean, that's a conversation that we can

21   have.  We can have the safeguards in place so privileged or

22   confidential or private information isn't inadvertently

23   disclosed.  And there may be a way to do that in a way that

24   allows the step back in the cockpit that Ms. Peters was

25   suggesting they're looking for.

 1          But we submit that, again, there's no authority for sort

 2     of opening up Uber's internal company systems during a

 3     deposition, even if it's just to show the architecture of a

 4     system.  And we would meet and confer with plaintiffs if there

 5     are specific systems where screenshots may be helpful, but we

 6     strongly believe that, you know, allowing access to these

 7     systems would not -- doesn't have precedent, should not be

 8     allowed.

 9          **THE COURT:**  Yeah.  Well, site inspections are,

10     you know, an available discovery tool under the Federal Rules

11     of Civil Procedure.  So I think there's ways to safeguard

12     confidential information and -- so, anyhow, I think that some

13     of the arguments that you're making, Mr. Cox, may go a little

14     further than -- than, you know, what the rules contemplate.

15          **MR. COX:**  Can I try to put a finer point on it,

16     then --

17          **THE COURT:**  Sure.

18          **MR. COX:**  -- Your Honor?

19          Because I think -- I'm not disputing that inspections can

20     be permissible under the federal rules.  I'm focused on the

21     idea of doing that in the context of an oral deposition and

22     converting -- sort of upsetting the purpose of an oral

23     deposition, which is for the deponent to give oral testimony.

24          And if a plaintiff -- if the deponent cannot sufficiently

25     describe orally what the system looks like or the

architecture -- we, as litigants, deal with that all the
time -- there are ways to address that.  The plaintiffs can use
screenshots they have to refresh someone's recollection.  That
could be done during a deposition.

      After a deposition, we could deal with this issue if -- if
the witness was found not to be prepared or incapable of
describing the -- the systems with sufficient particularity.

      But right now, we're sort of dealing with speculation
about a witness's inability to describe something when that
hasn't been shown.

            **THE COURT:**  Okay.  All right.  Let me move on to my
final question here.

      I wanted to check in about the status of production of
case-specific documents in advance of the bellwether
depositions.

      So let's see.  You-all have scheduled many, but not all,
of the individual plaintiffs for deposition, it looks like,
based on the filings a few hours ago or just after lunch.

            **MR. COTTON:**  Yes.  Your Honor, this is Chris Cotton
for Uber.

      I do think we have all of the six Wave 1 plaintiffs
scheduled.  The parties have been understandably focusing on
the Wave 1 cases in the near term.  We do expect to turn to the
other cases in due course, but at least as to the Wave 1 cases,
each has been scheduled.

1            **THE COURT:**  Okay.  So are you all on track for

2    complete production -- for completing production for these

3    individual bellwether plaintiff depositions?  Like, producing

4    in advance -- previously, I had to address an order about what

5    questions could be asked or what topics could be covered or

6    whether a deposition could occur if location information hadn't

7    been turned over.

8            **MR. COTTON:**  Yes.

9            **MS. STRATIGOPOULOS:**  Your Honor --

10   Go ahead, Chris.  I apologize.

11           **MR. COTTON:**  Yeah, yeah.

12   At least with respect to the discovery we're following up

13   on with respect to plaintiffs, we've had conversations with

14   leadership for the plaintiffs' group on some plaintiffs'

15   discovery responses.  There are a handful of issues that

16   I think we'll need your direction on, and so I anticipate we'll

17   have a PTO 8 submission on some of plaintiffs' discovery

18   responses.

19   We're also following up separately with individual case

20   counsel for particular plaintiffs with respect to case-specific

21   responses.  We'll hold out hope that that meet-and-confer

22   process is productive and we can narrow any disputes there.

23   But all of that to say, we're addressing plaintiffs'

24   productions, I think narrowing disputes, and to the extent any

25   remain, we'll get them promptly addressed.

1          **MS. STRATIGOPOULOS:**  So, Your Honor, Meredith

2     Stratigopoulos for plaintiffs.

3          I do kind of want to reframe what Mr. Cotton was

4     discussing.  So we're on a little bit of an uneven playing

5     field right now, just from the outset.

6          Plaintiffs have all responded substantively and produced

7     the documents that are in their possession for at least some of

8     the requests for production that defendants have issued.  As

9     well, plaintiffs have substantively responded to defendants'

10    interrogatories and continue to supplement those responses, and

11    we continue to meet and confer with defendants to continue to

12    supplement the substantive responses that plaintiffs have

13    already provided.

14         Of course there are some finite disputes with some that

15    will ripen with a PTO 8 process that I don't think it's worth

16    going down those rabbit holes now.  But very big picture, the

17    plaintiffs, in good faith, have been attempting to comply with

18    the discovery that they can and continuing to supplement before

19    their depositions.

20         But the question that you asked was about, for example,

21    location information.  That's information that is more so in

22    the possession of Uber versus the plaintiffs.  Uber is in

23    possession of, for example, all of the GPS data that would show

24    where the plaintiffs are, as we've requested -- pardon me --

25    where the defense drivers are, as we've requested, between,

you know, 12 hours before the subject incident to 12 hours

after.  That's not something that the plaintiffs are currently

in possession of.  And that's just one example of something

that we've asked for that we hope we're getting.

The plaintiffs have issued requests for production that

very broadly cover information about the plaintiff that Uber's

in possession of, information about the ride and information

about the defense driver.  Uber has yet to substantively

respond to all of these requests.  We've only received

communication logs, I think, two weeks after they were due for

the bellwether plaintiffs.

With that said, we have had multiple meet and confers with

the defendants on plaintiffs' requests for production; and our

understanding, after the conclusion of those meet and confers

that was solidified in the letter that we received yesterday,

is that by May 16th, plaintiffs will be receiving substantive

responses to their first -- to their outstanding requests for

production that were due starting on April 26; that this

production will include -- if there are responsive documents

that have already been produced in response to the custodial

discovery, it will identify those documents by specific Bates

range that actually apply to the question that's been asked;

and that that production will be complete and that it will be a

search of -- for responsive documents wherever Uber thinks

those documents might be.  And to the extent that there's a

1    need for new production outside of identifying what may have

2    previously been produced in custodial files, Uber will be

3    making those productions.

4         That is our understanding for all of the requests for

5    production, I think it's 1 through 57, that we've discussed

6    with them but for one that, again, we're queuing up for PTO 8.

7    And so our understanding is that when we get to May 16th, we

8    should have a substantive answer to your question as to:  Has

9    Uber produced everything that we need to move forward with

10   individual plaintiff depositions?  We certainly hope that these

11   meet and confers will result in that, but we simply won't know

12   until we see what Uber produces.

13        The other thing to make sure that is just clear here is

14   that Uber -- our understanding is that Uber will be producing

15   these documents with the BrownGreer ID for each specific

16   bellwether plaintiff in the production so that plaintiffs can

17   identify which production -- which documents apply to which

18   case, which will also let us answer that question of how do we

19   move forward with the depositions as scheduled.

20        **THE COURT:**  Okay.  Well, first of all, you had said

21   that -- that plaintiffs had responded to at least some of

22   Uber's discovery requests.  You've got to respond to all of

23   them.  So --

24        **MS. STRATIGOPOULOS:**  I should have --

25        **THE COURT:**  -- that --

1      **MS. STRATIGOPOULOS:**  I should have been more clear.

2      We have responded to all of them.  There are some

3  objections that we are standing on that are being queued up for

4  PTO 8.  But plaintiffs have substantively responded to all of

5  them.  There are just some where there are some objections that

6  we believe the Court will have to address.

7      I apologize I was not clear on that.

8      **THE COURT:**  Yeah.  Okay.  And for the individual

9  plaintiffs, I'm not sure that -- is it the case for each of

10  these case- -- individual cases that drivers' locations

11  12 hours before and after the incident is necessary before you

12  go forward with the deposition?

13      **MS. STRATIGOPOULOS:**  So to the extent that they have

14  that information --

15      **THE COURT:**  I mean --

16      **MS. STRATIGOPOULOS:**  -- for --

17      **THE COURT:**  -- you might have some cases where that

18  just is not relevant at all, like there's no bearing on that.

19      **MS. STRATIGOPOULOS:**  Yes, Your Honor.  There might be

20  some bellwether cases where we have the GPS information that we

21  need.  But Uber also potentially has location information for

22  the plaintiffs that we'd also like to see, and I believe we

23  have a two-hour before-and-after -- or, pardon me -- a 12-hour

24  before-and-after window that we've requested there.

25      But we have six depositions set right now.  And once we

see what we get on May 16th, we can identify which one of those

may have missing information that could affect the deposition.

But you're correct, Your Honor.  To the extent that it's

irrelevant, we can address that when we -- we can address that

when we see what they do and don't produce.

**THE COURT:**  Okay.

**MS. GROMADA:**  Your Honor, if I may briefly reply.

This is Veronica Gromada for Uber.

It is correct -- counsel's correct that plaintiffs have

made very broad requests with respect to the riders, in this

instance, the plaintiffs and the drivers, but also with respect

to other individuals who may have taken rides with these

subject drivers.  And Uber has been meeting and conferring with

plaintiffs in good faith.

There are a number of requests where we have made it very

clear that that information is being collected.  And since

there have been some meet-and-confer discussions with

plaintiffs, we have further refined additional searches coming

out of those meet and confers and have updated plaintiffs on

the documents and information forthcoming, including

information, as was pointed out, about the location of the --

the drivers 12 hours before and after.

So I hope Your Honor can appreciate, with plaintiffs' own

example, why it has taken a bit of time to collect all of that

information.  But, again, we have elected to do so in order to

1    position the parties to move forward with what plaintiffs

2    purport as being necessary for them to move forward with the

3    depositions.

4        And plaintiffs have indicated throughout the conferral

5    process that a part of the reason that they have been both very

6    broad and specific with their requests is that they would like

7    to make sure that they don't have any surprises about there

8    being the possibility of some document or a bit of information

9    that Uber might have regarding their plaintiff that they don't

10   have, putting them at a disadvantage during depositions.  Well,

11   it feels as if we're almost trying to solve for every possible

12   scenario that may come up in a deposition before we even get

13   there.

14       And if I could say by giving yet another example, is that

15   we're even being asked to provide information with respect to

16   the -- all accounts, if you will, for the subject plaintiffs,

17   both with respect to them as riders who use the app and drivers

18   if they also drive for the company as an independent driver

19   who's using the app both -- in both respects from a marketplace

20   standpoint.

21       So, again, we have not been combative on those points.

22   Just making it clear it takes time.

23       But I can, if Your Honor would like, give an additional

24   update.  But I can assure you, beyond a number of documents

25   that have gone out already, including various versions of

```
 1    agreements between the defendants and the independent drivers

 2    with respect to the terms of use for the plaintiffs and other

 3    documents, there are a number of documents being uploaded to

 4    the vendor for production.  And, yes, they will be produced in

 5    a way that's compliant with the ESI protocol and that will

 6    enable the plaintiffs to download that information in a way

 7    that it can be given to each individual plaintiff's counsel

 8    with the identifiers intact so that they are clear about what's

 9    responsive to each of their pieces.

10         THE COURT:  Okay.  I guess with the reference to the

11    driver's location data and that getting produced before the

12    individual plaintiff's deposition, I just don't -- for the

13    range of time, I don't see why that's going to be necessary to

14    have 12 hours' worth of driver location data --

15         MS. STRATIGOPOULOS:  I misspoke.

16         THE COURT:  -- before the incident.

17         MS. STRATIGOPOULOS:  It's two hours after.  I

18    apologize, Your Honor.  It's two hours after the ride.

19         MS. GROMADA:  If I may, Your Honor, they've asked both

20    for two hours and 12 hours after the ride, before and after.

21         And, again, as I understand it, it is to just make sure

22    that they have full insight into whatever information Uber

23    might have with respect to the plaintiffs or the driver.

24         But, again, even if that information is discoverable, I

25    agree with Your Honor that some of what we're being asked to
```

 1    produce, I don't see it as being an impediment with moving

 2    forward with plaintiffs' depositions.  But, again, it is being

 3    collected for production --

 4            THE COURT:  Yeah.

 5            MS. GROMADA:  -- throughout this week.

 6            THE COURT:  Well, in my prior order about the

 7    sequencing of production relative to the depositions that are

 8    coming up, I really wanted to ensure that, you know, Uber isn't

 9    intentionally holding back documents that relate to questions

10    that it's going to be asking the individual plaintiff about;

11    and so all of that production needs to happen before -- of

12    those relevant documents needs to happen before the deposition

13    is held.

14        And that's really the intent of the order, although the

15    order -- the verbiage and the phrasing is really kind of more

16    like barring lines of questioning on topics if you haven't

17    produced the documents related to it; but really, I think the

18    ultimate practical effect is all of that production needs to

19    happen before the deposition is held.

20        If you haven't -- if Uber hasn't produced the related

21    documents on that topic and starts to ask questions about it,

22    then it seems like it's a representation that Uber looked for

23    these documents and they didn't exist, and so they're not going

24    to pop up later on in the case.

25            MS. GROMADA:  Your Honor, based on where we have

1   landed in the conferrals, I don't anticipate that being a

2   problem.

3       And, again, these are being uploaded to the vendor for

4   production throughout this week; and as previously stated, we

5   are working to get that complete by this Friday.

6       **THE COURT:** Right. Okay. And then, you know, on

7   plaintiffs' side, there is an abundance of data that Uber has,

8   and so there may be an inclination just to ask for the sun and

9   the moon and the stars and every piece of -- every ream of

10  digital data that the company has to avoid surprises. But

11  we've got a lot of bellwether cases. There's a lot of cases,

12  period, in this MDL; and then for the bellwethers, it's a

13  decent number when you look across the wave.

14      So, you know, be thoughtful about what's proportionate

15  under Rule 26, and be selective. It may not make sense to do a

16  cookie-cutter approach if the cases look very different and

17  have different sort of, you know, factual situations such that

18  certain information is just -- there's no way -- realistic way

19  or likelihood that it's going to be relevant. So --

20      **MS. STRATIGOPOULOS:** Yes. Your Honor, we have met and

21  conferred extensively on the scope of many of our requests.

22  And Uber has agreed to produce responsive documents within the

23  scopes that we've discussed for some requests. For others,

24  they did not elect to meet and confer on the requests and have

25  said that they will produce responsive documents.

1      And so, I mean, to the extent that any of these concerns

2   are true, we certainly would have hoped that they've been

3   resolved in our extensive meet-and-confer process where, again,

4   the scopes have been discussed at length and, we think, cleared

5   up appropriately such that this will be responsive production

6   as it relates to the individual bellwethers.  Of course we

7   think that the size of production in response to each question

8   may vary between bellwethers, but we do think that we have

9   resolved outstanding concerns by Uber for the scope.  That's

10  where we've landed as of today.

11          **THE COURT:**  Okay.

12          **MR. COTTON:**  Your Honor, may I add just a brief point?

13          **THE COURT:**  Sure.

14          **MR. COTTON:**  Yeah.  Just coming back to where I

15  started, so for similar reasons, obviously, we're going to have

16  an interest in getting plaintiffs' responses addressed well in

17  advance of the upcoming depositions.  As I mentioned earlier,

18  we have had productive meet and confers and narrowed the

19  issues; and to the extent any remain, the plan will be to get

20  those presented to you promptly so that we can, likewise, get

21  them addressed ahead of the plaintiffs' depositions, and any

22  supplemental productions can be similarly made well before.

23          **MS. COWAN:**  Your Honor, if I may?

24          **THE COURT:**  Sure.

25          **MS. COWAN:**  Tracey Cowan.  I don't believe I've been

in front of you before either.  So, very nice to be here in
your courtroom, so to speak.

    I just wanted to weigh in on plaintiffs' productions
because plaintiffs have produced pretty much everything that
they've been asked for, with the exception of a few discrete
requests that the parties have disputes about, and those are
being teed up per PTO 8 appropriately.

    Furthermore, defendants last night sent us a chart of
additional sort of one-offs that they thought might still be
deficient; and, again, a lot of those relate to deficiencies
that have nothing to do with withholding of documents.  They
have to do with Uber just asking "Can you say there's no more?"
or, you know, "Can you" -- "There seems to be a discrepancy
here."

    So it's not the case that Uber does not have plaintiffs'
documents.  I just want to make that clear.  Plaintiffs have
been meeting and conferring in good faith, and I think we've
come to a lot of really good agreements as to scope, really
meeting in the middle wherever we can, and supplemental
productions have been ongoing.

        **THE COURT:**  Okay.  All right.  Thank you very much for
your time this afternoon.  I will get an order out as soon as I
can.

        **MS. COWAN:**  Thank you, Your Honor.

        **MS. GROMADA:**  Thank you, Your Honor.

1          **MR. COX:**  Thank you, Your Honor.

2          **MR. COHN:**  Thank you, Your Honor.

3          **THE COURTROOM DEPUTY:**  Court is now adjourned.

4              (Proceedings adjourned at 2:10 p.m.)

5                        ---oOo---

6

7                  <u>**CERTIFICATE OF REPORTER**</u>

8          I certify that the foregoing is a correct transcript

9     from the record of proceedings in the above-entitled matter.

10

11    DATE:  Friday, May 16, 2025

12

13

14

15                    _Ana Dub_

16    _____

17          Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG

18       CSR No. 7445, Official United States Reporter

19

20

21

22

23

24

25