# EXHIBIT 2

LAURA VARTAIN (SBN: 258485)
   laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (Pro Hac Vice admitted)
   allison.brown@kirkland.com
JESSICA DAVIDSON (Pro Hac Vice admitted)
   jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL MATTERS | Case No. 3:23-md-03084-CRB<br><br>**DECLARATION OF VERONICA HAYES GROMADA IN SUPPORT OF DEFENDANTS' LETTER BRIEF REGARDING BELLWETHER WRITTEN DISCOVERY**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom: G - 15th Floor |

I, Veronica Hayes Gromada, declare:

1. I am an attorney in the law firm of Shook, Hardy & Bacon, L.L.P. I am a member of the State Bars of Texas and Washington, D.C. and am admitted to practice pro hac vice before this Court. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2. I respectfully submit this declaration in support of Defendants' Response to Plaintiffs' Letter Regarding Defendants' Responses to Plaintiffs' Bellwether Discovery Requests. ECF 3069.

3. Attached as **Exhibit A** is a true and correct copy of the Requests for Production served by Plaintiff B.L., containing 92 defined terms and 57 requests.

4. Attached as **Exhibit B** is a true and correct copy of the First Set of Interrogatories of Plaintiff B.L., containing 70 defined terms and a single-numbered interrogatory asking for voluminous marketing materials over a ten year period.

5. Attached as **Exhibit C** is a true and correct copy of the Second Set of Interrogatories of Plaintiff B.L., containing 70 defined terms and 21 interrogatories. Defendants agreed to treat this set of interrogatories as 21 requests for purposes of analysis under Rule 33(a)(1), despite the compound nature of many of them.

6. Attached as **Exhibit D** is a chart reflecting Plaintiffs' discovery requests *and Defendants' responses* along with Defendants' response to the deficiency Plaintiffs allege.

7. Attached are true and correct copies of the following transmittal letters:

    a. **Exhibit E:** May 15, 2025 transmittal letter identifying by Bates number "Driver and Rider rating and feedback documents, identified by MDL Centrality ID."

    b. **Exhibit F:** May 15, 2025 transmittal letter identifying by Bates number "Driver and Rider mobile events documents, identified by MDL Centrality ID."

    c. **Exhibit G:** May 16, 2025 transmittal letter identifying by Bates number "Snapshots of the following user interfaces: Rider Tools, Driver Tools, Safety Lens (not linked in Jiras), and Voyager, related to Bellwether plaintiffs as riders and independent drivers, as

well as independent drivers connected to subject trips, identified by MDL Centrality ID."

    d.    **Exhibit H:**    May 20, 2025 transmittal letter identifying by Bates number "Updated driver account status logs ('Driver Status and Flow') for the Bellwether plaintiffs who also worked as independent drivers, and independent drivers related to subject trips, produced as a supplement to the logs produced in Vol. MDL-BW007, and updated per Plaintiffs' request with the 'flow type' fields."

    e.    **Exhibit I:**    May 12, 2025 transmittal letter identifying by Bates number "Terms of Use to which Bellwether Plaintiffs assented, and Checkbox Consent History for the Bellwether Plaintiffs."

    f.    **Exhibit J:**    May 13, 2025 transmittal letter identifying by Bates number "Overlay file for communication log documents previously produced in volume MDL-BW001." This transmittal letter added the Bellwether Plaintiffs' MDL Centrality ID metadata for previously produced documents.

    g.    **Exhibit K:**    May 13, 2025 transmittal letter identifying by Bates number "Agreements identified in the Agreement Logs of independent drivers reported against in connection with subject trips, identified by MDL Centrality ID."

    h.    **Exhibit L:**    May 16, 2025 transmittal letter identifying by Bates number "Documents related to Plaintiffs as independent drivers including: agreements, account status logs as riders and independent drivers, updated independent driver account status logs, driver feedback and ratings, and mobile events, identified by MDL Centrality ID."

    i.    **Exhibit M:**    May 21, 2025 transmittal letter identifying by Bates number "Bliss communications related to Wave 1 Bellwether Plaintiffs, and independent drivers connected to Wave 1 Bellwether subject trips."

8. Plaintiffs' bellwether discovery requests have been the subject of numerous conferrals of counsel, including on April 2, April 11, April 16, May 2, May 8, May 15, May 16, and May 18, 2025.

9. I attended the April 2, 2025 conferral with Plaintiffs. In this conferral, I reiterated that

2

DECLARATION OF VERONICA HAYES GROMADA IN SUPPORT OF
LETTER BRIEF RE BELLWETHER WRITTEN DISCOVERY
                                    CASE NO. 3:23-md-03084-CRB

1  Defendants were processing communications logs for each of the Bellwether Plaintiffs and associated
2  independent drivers for production to Plaintiffs.

3       10.     During the April 11, 2025 conferral, Plaintiffs requested location data for riders, and
4  Defendants discussed the limits of available location data for riders. I was unable to attend this
5  conferral, but discussed it extensively with my colleague who was able to confer with Plaintiffs.

6       11.     During the April 16, 2025 conferral with Plaintiffs, the parties discussed Plaintiffs'
7  misinterpretations regarding Defendants' Voyager mapping software, and specifically requested
8  location data for the subject trip, along with associated information such as app status, and including
9  such information prior to the ride and following the ride. Plaintiffs also requested Defendants adjust
10 the format of the account status logs from the format provided in the Defendant Fact Sheet. I was
11 unable to attend this conferral, but discussed it extensively with my colleague who was able to confer
12 with Plaintiffs. Moreover, Defendants agreed and have already made this production.

13      12.     I attended the May 2, 2025 conferral with Plaintiffs. In this conferral, Plaintiffs
14 identified the following their top priorities, with a request for Defendants to produce this information
15 by May 16: communications logs for Plaintiffs and independent drivers, rides logs for Plaintiffs and
16 independent drivers, location information for Plaintiffs and independent driver along with associated
17 events (which Plaintiffs appear to refer to as "telematics"), Star ratings with associated well as user
18 feedback provided for independent drivers, and summary snapshots of user interfaces such as Safety
19 Lens. Defendants made these productions on a rolling basis through May 16, 2025.

20      13.     During the May 2, 2025 conferral Defendants also agreed to engage engineering efforts
21 to create custom reports reflecting Plaintiffs' requests, grounded in the data as stored in Defendants'
22 systems in the ordinary course of business, and produce this information on a rolling basis. Specifically
23 Defendants agreed, and Plaintiffs acknowledged over email, that Defendants' response to RFP 14
24 would consist of ride logs showing independent drivers' feedback and ratings, and the communications
25 logs. I was unable to attend this conferral, but discussed it extensively with my colleague who was
26 able to confer with Plaintiffs. Defendants made these productions on a rolling basis through May 16,
27 2025.

28

3
DECLARATION OF VERONICA HAYES GROMADA IN SUPPORT OF
LETTER BRIEF RE BELLWETHER WRITTEN DISCOVERY
CASE NO. 3:23-md-03084-CRB

1    14.     On this May 2, 2025 conferral, Plaintiffs also requested snapshots of user interfaces that provide summary information. Defendants reminded Plaintiffs that Safety Lens snapshots linked in Jiras produced with Defendant Fact Sheets were already produced pursuant to the Court's Order, and further agreed to produce this information for any Bellwether Plaintiff or independent driver whose Defendant Fact Sheet did not include a Jira containing hyperlinks to these user interfaces. The Parties also discussed the count of Plaintiffs' interrogatories, which were often compound such that the number of discrete requests exceeded the 25 interrogatories permitted without leave of Court under Rule 33(a)(1) and the associated motion and memorandum required under Local Rule 33-3, and potential approaches to address this defect without Defendants' objections.

15.     I attended the May 8, 2025 conferral with Plaintiffs. In this conferral, the Parties agreed Defendants would include the MDL Centrality ID in the metadata of each document, so Plaintiffs' vendor could track which documents relate to which individual Plaintiff. Plaintiffs noted that the communications logs produced did not include MDL Centrality ID metadata, and Defendants agreed to provide a metadata overlay, and have done so. In this conferral Plaintiffs also began asking for identification of documents by Bates number.

16.     I attended a May 15, 2025 conferral with Plaintiffs. While this conferral largely focused on 30(b)(6) deposition related responses and objections, Plaintiffs raised a clarification of what they meant by "offer card," and Defendants referenced that this information does not exist in the form Plaintiffs believe it to exist.

17.     I attended the May 16, 2025 conferral with Plaintiffs. While this conferral largely focused on interrogatories related to rider privacy subject to separate briefing already before the Court (ECF 3074) as well as issues the Parties agree have been resolved, Defendants did confirm that supplemental interrogatory responses will be provided that day, pursuant to the Parties' agreement.

18.     On the night of May 16, 2025, Plaintiffs emailed to request an "emergency meet and confer" on the afternoon or evening of Sunday, May 18, regarding Bellwether productions. I was unable to attend this conferral, but discussed it extensively with my colleagues who were able to confer with Plaintiffs. In this conferral, Plaintiffs asked for general information about terms in the account

4

DECLARATION OF VERONICA HAYES GROMADA IN SUPPORT OF
LETTER BRIEF RE BELLWETHER WRITTEN DISCOVERY

CASE NO. 3:23-md-03084-CRB

status log and mobile events logs, as well as background check adjudication and RideCheck. Plaintiffs also addressed their contention interrogatories. Plaintiffs also requested additional information in the account status logs, which Defendants agreed to provide (and have provided). Lastly, the Parties walked through the communications log and Plaintiffs confirmed that resolved their issues related to these logs. Plaintiffs also confirmed they had no issues with the trip log and feedback and ratings logs Defendants created for Plaintiffs in this litigation.

19. On Tuesday, May 20, 2025, Plaintiffs emailed Defendants asserting, inter alia, that Plaintiffs did not have "safety lenses." Defendants responded by, inter alia, attaching the production transmittal communication informing Plaintiffs of Defendants' production of these documents by volume and Bates range.

20. Defendants have produced numerous documents individualized to each Bellwether Plaintiff in response to their written discovery requests, in addition to the individualized documents previously produced in connection with the Defendant Fact Sheets.

21. Defendants have provided the following information for each bellwether Plaintiff: (a) all agreements, in every applicable version, entered into by Bellwethers; (b) a log indicating Bellwethers' date of assent to each agreement; and the subject independent drivers; (c) all agreements, in every applicable version, entered into by subject independent drivers; (d) an agreement log indicating the subject independent driver's asset to the above agreements (e) Safety Lens snapshots for Bellwethers and independent drivers that were not linked in a Jira produced in DFS; (e) Investigations Workbench (formerly Driver Tools and Rider Tools) snapshots for every Bellwether Plaintiff and independent driver connected to a subject trip, to the extent these interfaces were not previously produced;[1] (f) all available tickets and communications related to Wave 1 Bellwether plaintiffs, regardless of subject matter; (g) all available tickets and communications related to subject drivers in Wave 1 cases, that were not responsive to Defendant Fact Sheet questions (*e.g.* speeding,

---

[1] Defendants are following the Court's guidance as to Safety Lens user interface snapshots as provided in ECF 2825 in good faith, and producing snapshots of other user interfaces linked in Jiras as part of DFS as well.

5
DECLARATION OF VERONICA HAYES GROMADA IN SUPPORT OF
LETTER BRIEF RE BELLWETHER WRITTEN DISCOVERY
CASE NO. 3:23-md-03084-CRB

dangerous driving).

22. Defendants have generated for the following custom reports-in a filterable and searchable format-for each bellwether Plaintiff and the independent driver at issue: provided the following information: (a) a <u>communications log</u> containing all available inbound and outbound communications (email, push, text) between Defendants and the Bellwether, including marketing (and all in-app communications with their parties such as independent drivers; (b) if the Bellwether also accepted rides on the Uber platform as an independent driver (6 total), any related communications are also included (c) a <u>trip log</u> including all available trips completed, as well as Rides cancelled by either the Rider or the independent driver, Star rating for each trip, and any feedback from the independent driver; (d) a <u>mobile events</u> log including all interactions between the Plaintiff and the Uber App, covering a time span starting 24 hours prior to the start of the subject trip, and ending 24 hours after completion of the subject trip, which includes location data and speed at each interaction (e) a <u>Status and Flow</u> account status log showing the status of each independent driver over time; (f) a <u>communications log</u> containing all available inbound and outbound communications (email, push, text) between Defendants and the independent driver, including marketing (g) a <u>mobile events</u> log including all interactions between the independent driver and the Uber App, covering a time span starting 24 hours prior to the start of the subject trip, and ending 24 hours after completion of the subject trip, which includes location data for each event.

23. Further productions, which Defendants were able to gather after meet and confers in which requests were narrowed and explained, are forthcoming: (a) available audio recordings associated with Bliss tickets related to Wave 1 Bellwether Plaintiffs, not related to to the subject trip; (b) available audio recordings associated with Bliss tickets for the subject independent driver, that were out of the scope of the Defendant Fact Sheet, *i.e.* not related to the subject trip; (c) available Bliss tickets related to the other Bellwether Plaintiffs, not related to the subject trip; (e) available audio recordings associated with the Bliss tickets related to the other Bellwether Defendants, not related to the subject trip; (f) historical information related to subject independent drivers' device usage.

I declare under penalty of perjury that the foregoing is true and correct.

6

DECLARATION OF VERONICA HAYES GROMADA IN SUPPORT OF
LETTER BRIEF RE BELLWETHER WRITTEN DISCOVERY

CASE NO. 3:23-md-03084-CRB

Executed this 29th day of May, 2025 in Houston, Texas.

*/s/ Veronica Hayes Gromada*
Veronica Hayes Gromada

7
DECLARATION OF VERONICA HAYES GROMADA IN SUPPORT OF
LETTER BRIEF RE BELLWETHER WRITTEN DISCOVERY
CASE NO. 3:23-md-03084-CRB