[Counsel listed on signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL BELLWETHER ACTIONS | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING PLAINTIFFS' INTERROGATORIES 7 & 8**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

Dear Judge Cisneros:

      Pursuant to the Court's May 22, 2025 Order (ECF No. 3059), the Parties respectfully submit this joint letter regarding their dispute over the scope of Interrogatories 7 and 8 from Plaintiffs' Second Set of Interrogatories.

**Plaintiffs' Position**:

Interrogatories 7 and 8 request that for each month in 2023 and 2024 Uber specify by category the number of Sexual Violence Incidents in the United States that Uber categorized in its Sexual Misconduct and Sexual Violence Taxonomy (or as "Insufficient Information" or "Parent Category Usage Tracking").[1] *See* Ex. A. Uber claims there was an agreement that it did not have to provide these numbers. There was not.[2]

Uber objected to responding to these Interrogatories and Plaintiffs raised the issue to the Court. On March 27, 2025, the Court ordered Uber to file a motion for relief from this discovery by April 4. (ECF 2647 at 1). Additionally, the Court addressed separate disputes regarding Uber's production of safety incident data covering the years 2017 through 2022. *Id.* at 2. Thereafter, the Parties met and conferred with respect to both issues and, with respect to the 2023 and 2024 at-issue interrogatories, it was agreed that "Defendants will respond to Interrogatory Nos. 7 and 8." Ex. C at 4; Wilkins Decl. ¶¶ 9-15. Accordingly, in the Parties' April 4 submission to the Court, it was reported that the Parties had reached agreement on all but one Interrogatory (No. 28). *See* ECF No. 2713; Ex. C. at 4. Separately, the Parties reached an agreement about the dispute over the 2017 to 2022 data. Wilkins Decl. at ¶¶ 13-14. Uber conflates those agreements to argue that it should be relieved from responding to Interrogatories 7 and 8.

On May 1, 2025, Uber served its Amended responses to Interrogatories (*see* Ex. A), stating:

[Defendants] served Plaintiffs with information responsive to this Interrogatory on April 23, 2025 in a document titled "Information Provided by Defendants Pursuant to the Parties' Agreement, Dated April 4, 2025, Regarding Categorization of Reports of Sexual Assault or Sexual Misconduct Incidents Alleged to Have Occurred in 2023 or 2024," and incorporates it herein: On April 4, 2025, the Parties agreed that Defendants would provide numbers, with caveats, for the categorization of incident reports for the years 2017-2022, as requested by Interrogatories Nos. 1-6 from Plaintiffs' Second Set of Interrogatories. While Interrogatories Nos. 7-8 from Plaintiffs' Second Set of Interrogatories seek similar information for the years 2023 and 2024, the Parties' agreement did not include a similar requirement for Defendants to provide numbers for the years 2023 and 2024. Instead, during the Parties' conferrals, Defendants explained their objection to providing numbers for the years 2023 and 2024, and Plaintiffs requested, and the Parties agreed, that Defendants would provide that reason in writing, which Defendants provide here.

---

[1] "Insufficient Information" and "Parent Category Usage Tracking" encompass reports that are unable to be classified within Uber's Safety Taxonomy.

[2] Uber also argues that Plaintiffs' request for this information is an "end run around the Court's orders regarding indecent report data." But, as the Court has previously acknowledged, the Court's prior Orders on incident report data do not set the floor nor ceiling of discovery that Plaintiffs may conduct with respect to Uber's knowledge of sexual violence incidents on its platform and its tracking of those incidents. Indeed, those Orders do not address the discovery sought here as those Orders address incident data Plaintiffs sought from 2017 through 2020 in connection with Uber's U.S. Safety Reports and the discovery sought here relates to sexual violence incidents in 2023 and 2024 that have never been disclosed to the public.

The information provided on April 23, 2025 is attached as Exhibit B. Uber argues that this response – which merely reduces to writing a refusal to respond – was made in satisfaction of the Parties April 4 agreement. Moreover, late on the day before this letter brief was to be filed, Uber served Second amended responses to Interrogatories 7 & 8 (*see* Ex. F), and makes the additional argument that these eleventh-hour amendments – which just reframe preexisting objections – "moot" the issue. Uber's contentions are without merit.

It defies reason to suggest that Plaintiffs would accept a written refusal to respond as a satisfactory resolution to a written discovery request. To the contrary, the agreement was Uber would "respond to Interrogatories Nos. 7 and 8." *See* Wilkins Decl. ¶¶ 13-15. There is no dispute that the requested data is relevant. *See* Ex's. A, E. The interrogatories bear on the prevalence of sexual violence on Uber's platform, whether Uber had notice of such violence, and the adequacy of Uber's response and purported safety measures. Further, the Interrogatories call for a mere tallying of incidents in each category – a minimal burden considering the importance of the evidence. There is also no burden dispute. Uber has not asserted any burden associated with the Interrogatories. It has already provided the information for 2017 through 2022, and has agreed during meet and confer discussions that there is no technological obstacle to producing the numbers. *See* Wilkins Decl. ¶ 18. Instead, Uber's sole objection is that Uber may withhold evidence because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. A, E. To be clear, Plaintiffs are not presently requesting the raw data, just Uber's tally of the number of incidents. Based on the information and raw data that Uber produced for other years, Plaintiffs understand this ask should take a mere 15 minutes to tally, and certainly not more than an hour. Still, Uber refuses to answer these interrogatories because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Uber's objection is baseless. As this Court has already explained: "Uber fails to recognize that evidence is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence.' Fed. R. of E. 401. If ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, that may affect the strength of the evidence as to notice, but it does not preclude discovery." ECF 684 at 8. Indeed, it is contrary to core principles of discovery to allow Uber to withhold relevant evidence based on a self-imposed barrier ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The argument is tantamount to saying that a party may withhold discovery unless and until it has a chance to pre-screen and edit the evidence and may also withhold that discovery altogether by asserting some illusory deficiencies in its own process. Neither is supported by law or reason. Uber's belated amendments merely reiterate these baseless objections; they neither "moot" the dispute nor constitute a "compromise."[3] Uber's contention that its inability to respond to Interrogatories 7&8 is because it "cannot provide accurate or reliable numbers for 2023-2024 *and therefore are unable to provide such numbers or verify the same*" is also without merit. *See infra* (emphasis added). The verification requirement under Rule 33, does not, as Uber suggest, allow a party to withhold relevant discovery on the basis ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. To hold otherwise, would eradicate the ability of any party to obtain relevant discovery as defendants would be able to self-proclaim deficiencies in its record keeping practices to avoid discovery.

---

[3] Indeed, Uber's argument as to mootness and compromise are nonsensical. Reframing an existing objection does not moot the dispute, and standing on a refusal to provide relevant evidence is no compromise at all.

The discovery sought here is highly relevant, not privileged, and not burdensome to produce. Plaintiffs therefore respectfully request that the Court order Uber to produce, by June 20, 2025, numbers in response to Interrogatories 7 and 8 for each category of Uber's Sexual Violence Taxonomy as well as for incidents Uber categorized as "Insufficient Information" or "Parent Category Usage Tracking" for each month of 2023 and 2024 in a format consistent with the numbers Uber provided in response to Interrogatories 1 through 6.

**Defendants' Position**:

### Defendants' April 23 Responses Complied with Parties' Agreement

On March 27, the Court gave the Parties a deadline of April 4 to either reach agreement or file a motion regarding any remaining disputes over the U.S. safety data.[4] Following the Court's direction, the Parties then engaged in frequent and lengthy conferrals resulting in compromises reached to resolve *all* of their disputes on this topic, culminating on April 4 when the Parties reached an agreement that by its terms expressly and finally resolved the safety data disputes (the "Agreement", Shortnacy Decl. Ex . 2.). The Parties' Agreement was reduced to writing on April 4 and titled "Global Deal Resolving Current Discovery Disputes." The Parties then filed a Notice with the Court that they had resolved all of their disputes on this topic. ECF 2713. Relevant to the instant dispute, the Agreement provided that Defendants would, in compromise and over their objections, provide certain numbers in response to Interrogatories 1-6 (relating to 2017-2022 data). In contrast, in response to Interrogatories 7 and 8 (relating to 2023-2024 data), Defendants would memorialize what Defendants had previously explained in conferrals: ███████████████

███ This written response could then be used to question Defendants' Chief Data Scientist, who was (as of the date of the Agreement) scheduled to be deposed (and in fact was deposed) in two sittings after Defendants provided their written responses. Defendants complied with the Agreement by providing the agreed-upon information. Of course, Plaintiffs know this to be the Parties' agreement, as Plaintiffs' own conduct shows. Indeed, Plaintiffs waited three weeks after receiving all of the responsive information from Defendants under the Agreement to suddenly seek to undo the Agreement by improperly seeking relief through a Joint Status Report draft. When Defendants called out that the Parties' Agreement was clear, Plaintiffs removed from the draft their statement that Defendants had breached the Agreement (apparently unwilling to take a contrary and incorrect position in a statement to the Court in the Joint Status Report). This is because Plaintiffs know that Defendants' responses, including providing category data for six years from 2017-2022, complies with the Agreement. The Court should deny Plaintiffs' untimely request to leverage the Court to undo the Parties' Agreement.

---

[4] During the May 22, 2025 status conference, the Court instructed the Parties that the dispute over the April 4 joint submission alerting the Court the Parties had reached an agreement would be limited to the scope of the Parties' agreement. Plaintiffs' submission here, however, ignores this direction, disclaims any agreement and argues that regardless Plaintiffs are entitled to the 2023-2024 data on relevance grounds. These arguments are outside the scope of the present submission, and should the Court entertain these belated claims, Defendants respectfully posit that due process requires proper briefing on arguments of relevance and proportionality, which has not been afforded Defendants in the present motion posture.

**Defendants' Compliance with Their End of the Bargain and Plaintiffs' Conduct Confirm the Parties' Agreement**

During the April 4 conferrals, the Parties had specific discussions about their Agreement on Interrogatories 7 and 8. Shortnacy Decl. at ¶¶ 10-15. Defendants explained that, ███████████████████████████████████████████████████████████████ *Id.* at ¶ 12. For their part, Plaintiffs' counsel responded that they would agree, as part of a compromise and in consideration for receiving numbers in response to Interrogatories 1-6 (to which Defendants had objected), that the dispute relating to Interrogatories 7 and 8 is resolved if Defendants would put the articulated reasons in writing in response to discovery requests. *Id.* at ¶ 13. So while the Parties agreed that Defendants *would* provide numbers in response to Interrogatories 1-6 (which Defendants did in fact provide), the Defendants would *not* provide numbers in response to Interrogatories 7 and 8. Ex. B; Shortnacy Decl. at ¶¶ 3-15. Instead, the Parties agreed that, for Interrogatories 7 and 8, Defendants would provide their reasons in writing for not being able to provide numbers. Shortnacy Decl. at ¶ 14. Defendants also explained that the numbers Plaintiffs seek for 2023-2024 do not exist and would have to be created. Plaintiffs thereafter requested that Defendants provide that information by April 23, in advance of the April 25 Rule 30(b)(6) deposition of Uber's Chief Data Scientist. *Id.* at ¶ 17. It is telling that Plaintiffs never take the position, consistent with their obligations as officers of the Court, that the Parties had any agreement contrary to what Defendants recite in this motion. Rather, Plaintiffs say only (in a statement that they have since removed) that the agreement is "unclear." It is anything but, as the Agreement and the conduct of the Parties shows.[5]

Consistent with the Parties' conferrals and Agreement, on April 23, Defendants provided Plaintiffs with the agreed-upon information relating to Interrogatories 7 and 8, while also expressly reiterating *in the written response* that Defendants are *not* providing numbers for these interrogatories per the Agreement. Ex. C. After receiving that information, Plaintiffs proceeded with the April 25 Rule 30(b)(6) deposition, which included questioning and testimony regarding Uber's incident data and classification numbers. Shortnacy Decl. at ¶ 19. On April 30 and May 1, Defendants served Plaintiffs with Responses and Amended Responses to Plaintiffs' Second Set of Interrogatories, respectively, which included this same information for Interrogatories 7-8 that Defendants previously provided to Plaintiffs on April 23. Ex. A; Ex. 1. At no point did Plaintiffs say that the information Defendants provided (or Defendants' reiteration several times, in several writings, of the Parties' Agreement) was inconsistent with the Parties' April 4 Agreement. Shortnacy Decl. at ¶¶ 20-25. Then, on May 15, over three weeks after Defendants provided the agreed-upon information, Plaintiffs included a statement in a draft of the Joint Status Report, claiming that Defendants had agreed to provide numbers in response to Interrogatories 7 and 8 as

---

[5] Also, in the hour before filing this motion, Plaintiffs' counsel for the first time has made up new reasons about why they requested the response prior to the depositions of the Chief Data Scientist. But these post facto reasons are not true and are belied by the clear terms of the Agreement, and the Parties' conduct following that Agreement as set forth in the accompanying declaration, including the Plaintiffs waiting more than three weeks to raise any issue until they decided they wanted to make a run for it improperly including the request in the JSR submitted to this Court on May 19.

part of "the parties' agreement." *Id.* at 27. Defendants responded that Plaintiffs' statement was incorrect, and Plaintiffs then removed that portion of their statement from the Joint Status Report. *See* ECF 3033 at 5-6; Shortnacy Decl. at ¶¶ 28-29.

The Parties' April 4 Agreement specifically addressed Interrogatories 7 and 8 separately from Interrogatories 1-6 because Defendants cannot verify an interrogatory response that contains the information Plaintiffs are now seeking. ███████████████████████████████████████████████ Further, Plaintiffs' request for information on 2023 and 2024 incident reporting is an end run around the Court's orders regarding incident report data (*e.g.* ECF 683, 706, 1068), which limited Defendants' production of incident report data to 2017-2020, as well as the Parties' Dec. 23, 2024, agreement as to the time scope of the incident report data production (ECF 2011), which limited the scope of incident report production to 2017-2022.[6] As part of a compromise, Plaintiffs agreed that Defendants would provide this explanation in writing, which Defendants have done in verified form. Plaintiffs' attempts to renege on their agreement and seek to compel information, which is outside the prior Orders of this Court on safety data, should be denied.

**In Any Event, Defendants' May 29 Amended Responses Moot Any Issue**

In a further effort to resolve this dispute, Defendants served Second Amended Responses to Plaintiffs' Second Set of Interrogatories Nos. 7 and 8, which provide further factual information consistent with what Plaintiffs indicated they are seeking. In particular, Defendants stated the following: "███████████████████████████████████████████████." Ex. F. This amended response is also consistent with the sworn deposition testimony of Defendants' Rule 30(b)(6) witness, its Chief Data Scientist, who sat for more than 12 hours of testimony conducted by or attended by MDL Plaintiffs' counsel.

Plaintiffs declined to accept this compromise. Even though Plaintiffs expressly agreed in writing on April 4 that Defendants would provide numbers only for Interrogatories 1-6, not for Interrogatories 7 and 8, Plaintiffs continue to baselessly insist here that the Court undo the Parties' Agreement. Plaintiffs' prejudicial untimely request is improper and must be denied. Defendants

---

[6] Plaintiffs' bizarre statement that they think providing this information would take only 15 minutes or no more than an hour is not supported by any evidence and is flatly not true.

have gone above and beyond what the Parties agreed Defendants would do by providing amended interrogatory responses further explaining why Defendants cannot provide accurate or reliable numbers for 2023-2024 and therefore are unable to provide such numbers or verify the same.

Dated: May 29, 2025

Respectfully Submitted,

By: */s/ Roopal P. Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

*/s/ Michael B. Shortnacy*

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN

**SHOOK, HARDY & BACON L.L.P**.
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: May 29, 2025

By: */s/ Michael B. Shortnacy*