LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

[*Additional Counsel Listed on Following Pages*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANT UBER TECHNOLOGIES, INC., RAISER, LLC, AND RAISER-CA, LLC'S BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS PURSUANT TO SPECIAL MASTER ORDER NO. 4, § III, ¶ 4 (DKT. 2933)** |

Pursuant to Special Master Order No. 4, III, ¶ 4 (Dkt. 2933), Defendants submit this brief in support of Uber's privilege assertions for documents it clawed back on May 16, 2025 pursuant to Pretrial Order No. 14. Defendants respectfully request that the Special Master uphold Defendants' privilege claims for the 36 documents Plaintiffs have challenged.

Defendants incorporate by reference the legal standard and arguments set forth in Defendants' prior briefing (Dkts. 2433, 2461, 2528, 2544, and 2580). As further support for their privilege claims, Defendants provide the arguments and factual support listed below, including the May 13, 2025 declaration of Uber's Legal Director, Global Safety Daniel Kolta (Ex. A), and the March 17 and 24, 2025 declarations of Uber's Senior Legal Director, Global Safety Jennifer Handley (Ex. B & C). The applicable legal standard and arguments outlined below and in prior briefs, the declarations from in-house counsel, and the factual material previously provided to the Special Master,[1] when reviewed in conjunction with the challenged documents and the associated metadata fields, establish that the documents at issue are privileged.

### I. Uber Has Appropriately Exercised Its Right To Claw Back Privileged Documents.

The documents submitted for the Special Master's review should remain protected as privileged, and subject to other applicable protections, notwithstanding prior production. Uber has appropriately exercised its clawback rights under Stipulated Pretrial Order No. 14: Federal Rule of Evidence 502(d) and Privilege Materials ("PTO 14") (Dkt. 396). PTO 14 provides that "the production of any privileged or otherwise protected or exempted information in this case ***shall not be deemed a waiver or impairment of any claim of privilege or protection in this case*** or in any other federal or state proceeding, including, but not limited to, the attorney-client privilege, the protection afforded to work product materials, statutory privileges and protections, or the subject matter thereof, as to the produced document and any related material." PTO 14, Sec. B.2 (emphasis added).

---

[1] As requested by the Special Master, Uber has provided: (1) a glossary of terms commonly used in disputed documents, (2) a list of names and titles of relevant Uber inside and outside counsel, and (3) a digest of third-parties present in its privilege log. Defense counsel will also be available for any questions the Special Master may have during the review process.

Uber timely notified Plaintiffs of its intention to clawback these documents. Uber has provided a privilege log and replacement images for all documents subject to its clawback request. Plaintiffs have identified two documents at issue that were originally logged as part of Tranches 1-4 (JCCP_MDL_PRIVLOG007423 and JCCP_MDL_PRIVLOG009470). Uber is considering seeking relief and/or reconsideration from Judge Cisneros regarding any waiver claim. (ECF 2855). Accordingly, Uber respectfully requests that the Special Master defer ruling on these documents until the potential waiver issue is adjudicated and resolved before Judge Cisneros. The Special Master, however, should consider and resolve the privilege and work product claims applicable to the remainder of the documents at issue in this set, as set forth herein.

**II. Additional Factual Information Supports Uber's Privilege Assertions.**

Uber provides additional factual information for the following documents at issue in this set:

**A. Information Compiled at the Request of Uber's In-House Counsel and Documents Reflecting In-House Counsel's Legal Analysis and Conclusions Concerning a Proposed Rider Safety Program**

Uber properly clawed back JCCP_MDL_PRIVLOG090687, JCCP_MDL_PRIVLOG090093, JCCP_MDL_PRIVLOG074299, and JCCP_MDL_PRIVLOG096301 and provided replacement images with privilege redactions. The claw back redactions in these documents are privileged because the redacted material reflects information compiled at the request of Uber's in-house counsel, or it reflects Uber in-house counsel's legal advice, analysis, or conclusions, regarding a proposed rider safety program. To provide additional factual support for its privilege assertions for these documents, Uber incorporates by reference the May 13, 2025 declaration of Uber's Legal Director, Global Safety Daniel Kolta. (Ex. A, addressing JCCP_MDL_PRIVLOG083074). As Mr. Kolta explained in that declaration, Uber's legal department undertook an investigation and analysis concerning the legal risks, including the potential legal costs, of the proposed rider safety program in anticipation of litigation that is the issue discussed in this challenged material.

JCCP_MDL_PRIVLOG090687 is an email chain from March 2021 concerning this rider

safety program. Andrew McDonald, then-Senior Vice President, Mobility and Business Operations, sent the first email in the chain and in that email he indicated that he had just spoken with "Tony" from legal. The Tony he referenced is Tony West, Chief Legal Officer and Corporate Secretary at Uber. The redactions that were applied to subsequent emails in the chain reflect information gathered and analysis conducted at Mr. West's request concerning the implementation of the proposed rider safety program. Indeed, on the March 24, 2021 email, Andre Faircloth, then-Strategy and Planning Lead at Uber, indicates that the information was gathered "for a meeting with Tony." Therefore, the redactions in JCCP_MDL_PRIVLOG090687 are privileged. *See USA v. Shaw*, 2023 WL 4539849, at *2 (N.D. Cal. July 12, 2023) (agreeing "that the attorney-client privilege applies to investigations performed by non-attorneys working at the direction of counsel. . . . [C]onduct and communications of non-attorney employees, agents and investigators undertaken at direction of counsel are work-product protected").

JCCP_MDL_PRIVLOG074299 is a confidential PowerPoint presentation marked "A/C Privilege." Mr. Kolta is one of the collaborators for this presentation, along with Scott Binnings, Uber's Associate General Counsel, Safety and Core Services. The clawback redactions in JCCP_MDL_PRIVLOG074299 relate to a later in time legal analysis by Uber's in-house legal department concerning the same proposed rider safety program discussed in JCCP_MDL_PRIVLOG090687 and JCCP_MDL_PRIVLOG083074. Plaintiffs challenged the clawback redactions because the redactions purportedly "speak to risk/litigation costs that are part of the business decision." This challenge is meritless and should be rejected. As a preliminary matter, as the document itself indicates, the redactions pertain to legal analysis, advice, and conclusions on various aspects of the safety program. That a few of these redactions also address potential legal costs (which also themselves reflect legal analysis) does not change the fact that the information redacted is privileged and work-product protected. As Mr. Kolta explained in his May 13 declaration, Uber's legal department undertakes an investigation and analysis of proposed programs and analyzes the potential legal costs in anticipation of litigation, and this legal analysis involves evaluating types of potential

causes of action and challenges, the number of potential claims, and the merits of potential lawsuits. As Mr. Kolata explained, the legal department also conducts research and analyzes various federal and state laws, along with case law interpreting and applying such laws, and Uber's prior litigation experience. The legal analysis, advice, and conclusions reflected in the redactions, including those addressing legal costs, are therefore privileged and work-product protected. *See Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005) ("Opinion work product, including the mental impressions, conclusions, opinions, or legal theories of an attorney, is entitled to nearly absolute protection."); *Staley v. Gilead Scis., Inc.*, 2021 WL 4318403, at *2 (N.D. Cal. July 16, 2021) ("the attorney-client privilege can still obtain even where a business decision is implicated. Specifically, if an attorney gives a client legal advice on a business decision, that communication is protected by the privilege"); *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 614-15 (E.D. Pa. 1991) ("The litigation's ultimate cost to the client has great significance in determining whether a lawsuit will be tried or settled and, if settled, for what amount. Establishing the value of a claim is analytically complex, requiring an assessment of the body of evidence and the particular legal issues involved in each case, as well as an evaluation of the case's strengths and weaknesses. It is one of the more challenging and difficult tasks a lawyer confronts . . . . these documents should not be subject of discovery.") (citation omitted); *Zurich Am. Ins. Co. v. Superior Ct.,* 155 Cal. App. 4th 1485, 1502 (2007) ("If legal advice is discussed or contained in the communications between [corporate] employees, then to that extent, it is presumptively privileged. A communication reflecting a discussion of litigation strategy which expresses that the strategy is in response to advice of counsel would come within the privilege").

JCCP_MDL_PRIVLOG096301 is a spreadsheet dated September 20, 2023 that self-evidently contained a detailed analysis of legal risks and costs concerning the safety program in various geographic locations. This spreadsheet is therefore also privileged and work-product protected. *See id.*

JCCP_MDL_PRIVLOG090093 is a near duplicate of JCCP_MDL_PRIVLOG083074, which

was previously submitted to the Special Master and the subject of Daniel Kolta's May 13 declaration. The redactions to JCCP_MDL_PRIVLOG090093 relate to the legal cost analysis and conclusion described in Mr. Kolta's May 13 declaration, and are privileged for the same reasons described in Uber's brief submitted on May 13, 2025–*i.e*, Uber non-attorney employees are conveying and discussing the legal analysis and conclusion that Mr. Kolta and other Uber in-house attorneys provided in anticipation of litigation related to the proposed rider safety program.

### B. Communications Regarding Uber's Safety Reports

JCCP_MDL_PRIVLOG096992 is a draft confidential document dated February 16, 2024, and marked at the top of every page "Attorney-Client Privileged–prepared at the direction of Counsel." This draft document discusses Uber's strategy for the US Safety Report. Jennifer Handley, Senior Legal Director, Global Safety at Uber, is a collaborator of this document.

As Ms. Handley indicated in her declarations submitted on March 17 and 24, 2025 (Ex. B & C), given the legal risks of public statements regarding safety issues, a team of Uber's in-house attorneys, including Ms. Handley, directed and coordinated the drafting of the Safety Report. Uber's in-house attorneys directed and coordinated this effort to facilitate the provision of legal advice on the statements in the draft reports. Uber's in-house attorneys did, in fact, provide legal advice at every step of the way. The draft reports were maintained confidentially throughout the drafting process. Each non-attorney involved with drafting the report did so at the direction, and under the supervision, of counsel. Thus, Ms. Handley's prior declarations and the information contained within this document establish that JCCP_MDL_PRIVLOG096992 is privileged because it was created at the request of counsel and was shared with Ms. Handley for the purpose of obtaining and facilitating her legal advice concerning the Safety Report. *Costco v. Wholesale Corp. Sup. Ct.*, 47 Cal. 4th 725, 740 (2009) ("If 'the communications were made during the course of an attorney-client relationship'—as opposed to a relationship with some other 'dominant purpose'—then 'the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means.'"); *United States ex rel. Schmuckley v. Rite Aid Corp.*, 2023 WL 425841, at *3

(E.D. Cal. Jan. 26, 2023) (finding that documents "sent for the purpose of facilitating legal advice" are privileged.).

### C. Communications Concerning Potential Legal Challenges to Uber Launch in A New Jurisdiction

Uber appropriately clawed back JCCP_MDL_PRIVLOG096316, JCCP_MDL_PRIVLOG096317; JCCP_MDL_PRIVLOG096318; JCCP_MDL_PRIVLOG096319; JCCP_MDL_PRIVLOG096320; JCCP_MDL_PRIVLOG096321; JCCP_MDL_PRIVLOG096322; JCCP_MDL_PRIVLOG096323; JCCP_MDL_PRIVLOG096324; JCCP_MDL_PRIVLOG096313; JCCP_MDL_PRIVLOG096314; JCCP_MDL_PRIVLOG096315; and JCCP_MDL_PRIVLOG096312. These documents are email chains from November 2019, and they include Tony West, Uber's Chief Legal Officer and Corporate Secretary. The emails reflect discussions about how to position the company in anticipated litigation concerning safety issues in a new jurisdiction. Indeed, there are references in these emails to officers of the court and the appeal process. As such, these communications took place in anticipation of litigation.

### D. Document Reflecting a Liability Reserve Amount

JCCP_MDL_PRIVLOG096310 is an email chain from September 2017. Scott Binnings, then-Senior Counsel, Safety, is part of this email chain. The redacted portion references a liability reserve amount–*i.e.*, an amount that the company sets aside to cover potential liabilities. Calculating this amount requires the legal opinions and assessment of Uber's in-house counsel concerning the value of current and potential legal claims against the company after an investigation of facts during, or in anticipation of, litigation. Thus, the redaction in JCCP_MDL_PRIVLOG096310 is protected from disclosure because it includes and reveals the mental impressions of Uber's in-house counsel concerning the potential value of legal claims against the company. *United States ex rel. Everest Principals, LLC v. Abbott Labs.*, No. 3:20-cv-286-W-MSB, 2024 WL 2152455, at *3 (S.D. Cal. 2024) ("opinion work product (*i.e.*, mental impressions, conclusions, or legal theories" are "afforded near absolute protection from discovery") (citation omitted); *Rhone-Poulenc Rorer Inc.*, 139 F.R.D. at 613-

15 (E.D. Pa. 1991) (finding that risk management documents that contain "individual case reserves"—*i.e.*, funds set aside for liabilities—are protected when calculated by attorneys, as they reflect "an assessment of the value of the claim"); *United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999) ("Suppose a lawyer prepared an estimate of his client's damages; the estimate would be numerical, but insofar as it reflected the lawyer's professional assessment of what to ask the jury for it would be attorney work product"); *Schreib v. Am. Fam. Mut. Ins. Co.*, 304 F.R.D. 282, 286–87 (W.D. Wash. 2014) (refusing to compel production of loss reserve documents because "by definition [they] reflect the mental impressions, thoughts, and conclusions of attorneys or employees evaluating the merits and risk of a legal claim"); *Bondex Int'l, Inc. v. Hartford Acc. & Indem. Co.*, No. 1:03CV1322, 2006 WL 355289, at *2 (N.D. Ohio Feb. 15, 2006) ("The individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim. By their very nature they are prepared in anticipation of litigation, and consequently, they are protected from discovery as opinion work-product.").

For these reasons, the Special Master should uphold Uber's privilege claims as to each of the documents submitted for review.

DATED: June 2, 2025

Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Maria Salcedo*
     MARIA SALCEDO

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN
ALLISON M. BROWN
JESSICA DAVIDSON

**O'MELVENY AND MYERS LLP**
SABRINA STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)

oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
   adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
   mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
   ccotton@shb.com

MARIA SALCEDO (Admitted *Pro Hac Vice*)
   msalcedo@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*/s/ Maria Salcedo*
MARIA SALCEDO

DEFENDANTS' BRIEF IN SUPPORT OF UBER'S PRIVILEGE CLAIMS CHALLENGED BY PLAINTIFFS PURSUANT TO SPECIAL MASTER ORDER NO. 4, § III, ¶ 4 (DKT. 2933)
Case No. 3:23-MD-3084-CRB