UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br>ALL CASES. | Case No. 23-md-03084-CRB  (LJC)<br><br>**ORDER REGARDING BELLWETHER PLAINTIFF'S WRITTEN DISCOVERY REQUESTS**<br><br>Re: Dkt. Nos. 3069, 3093 |

In accordance with a schedule set by the Court, the parties filed separate discovery letter briefs addressing disputes regarding Plaintiffs' written discovery requests to Uber in the bellwether cases. Dkt. Nos. 3069, 3093. The scope of disputes at issue evinces a failure by both sides to cooperate sufficiently in discovery. The Court therefore issued an Order requiring the parties to meet and confer in person at the courthouse on June 9, 2025. Dkt. No. 3140.[1] This Order resolves or provides guidance regarding some, but not nearly all, of the disputes the parties have presented.

The Court directs the parties to continue their efforts to resolve their remaining disputes before the June 9th conference. The parties shall file a joint status report on June 6, 2025, no later than noon,[2] indicating (without argument) which disputes have been resolved and which remain active. The parties are welcome to file additional status reports before or after June 6th if they

---

[1] That text-only order provided that the parties could file a request to continue the in-person meeting consistent with Civil Local Rule 6, but did not set a deadline for such a request. The Court now sets that deadline: **any request to continue the June 9, 2025 meeting must be filed no later than June 6, 2025 at noon, and must include all parties' positions.**

[2] Uber's letter (Dkt. No. 3093), and a separate joint letter (Dkt. No. 3095) that has since been resolved by the parties' agreement, were each filed more than an hour after the applicable deadline. The parties are expected to comply with court-ordered and other applicable deadlines, and the Court reserves the right to strike untimely filings or impose other sanctions.

wish to apprise the Court of their progress.

The Court has considered the parties' briefing and relevant authorities. The Court presumes the parties' familiarity with the facts of the cases and the applicable law, and rules as follows on some of the parties' disputes.

### A.  Interrogatory No. 12: Explanations of Driver Status Changes

Interrogatory No. 12 reads as follows:

> For every status change in the Subject Driver's Account History, please identify the reasons for the status change including (1) identify the date and title of the status change, (2) identify the policy or program that governed the status change, if any, (2) [sic] identify any events or deadlines that triggered the status change, (4) if the status was the result of any Information Uber learned about the Subject Driver, any report by anyone regarding the Subject Driver, or any action or inaction of the Subject Driver, describe such Information, actions, and/or events.

Dkt. No. 3093-5 at 15.

The interrogatory is reasonably calculated to seek relevant information, and Uber has not shown that it is unduly burdensome. The incomplete response from a particular case that Uber has offered as an example, *see* Dkt. No. 3093 at 4, indicates that Plaintiffs could obtain further information from a deposition of a corporate representative. Plaintiffs are not required to choose Uber's preferred method of discovery, and preparing a corporate representative to testify to the full scope of information sought would seem to require at least as much burden on Uber as providing a written response. Uber must respond to this interrogatory in its entirety, with respect to each status change at issue.

If Uber no longer knows responsive information, such as the reason for a particular status change, it may state that in its response, but Uber must respond with particularity to each of Plaintiffs' requests for each status change at issue. For this and other requests, the Court expects Uber to prioritize its responses for the Wave 1 bellwether cases.

### B.  Interrogatory No. 13: Definitions of Terms of Art

Interrogatory No. 13 asks Uber to define acronyms and terms of art that appear in location data related to the rides at issue. *See* Dkt. No. 3069 at 3. Plaintiffs now indicate that they would prefer that Uber provide a complete "data dictionary." *Id.* Uber asserts that Plaintiffs have not

2

1  sufficiently identified the terms for which they seek definitions, and that Uber is willing to meet
2  and confer about specific requests.
3      This is an interrogatory, not a request for production, so Plaintiffs cannot use it to compel
4  Uber to produce a dictionary, which might or might not exist.  Defining every acronym or term of
5  art that appears in the location history at issue is unduly burdensome where Plaintiffs have not
6  identified which acronyms and terms need clarification.  The Court therefore rules as follows:
7  Plaintiffs must identify the acronyms and terms for which they seek definitions and the context
8  where those terms appear.  If Plaintiffs believe they understand a term from context but need
9  confirmation of its meaning, they are encouraged to include their understanding of the term in
10 their request (thus potentially reducing the burden on Uber), but Plaintiffs need not provide a
11 guess as to the meaning of every term.  Uber must provide those definitions promptly, and may
12 resolve requests for definitions, if it chooses, by providing a data dictionary for certain terms.
13 Before the June 9, 2025 conference at the courthouse, the parties shall meet and confer and
14 attempt to agree to a protocol for Plaintiffs to present those requests and Uber to respond to them.
15     Definitions should be sufficient to allow Plaintiffs to understand the general meaning of
16 the term within a particular document or communication where it appears, but where a term refers
17 to a complex concept or program, the definition need not include all possible details associated
18 with that subject.  As a purely hypothetical example, if Uber used an internal code name to refer to
19 a program offering discounts to riders in California in 2018, those basic facts would be a sufficient
20 definition of that term.  If further details were relevant—e.g., the formula or specific criteria that
21 Uber used to determine the amount of the discount and the riders to whom it was offered, the
22 number of riders who benefited from it, etc.—Plaintiffs could explore such issues through
23 depositions or other appropriate discovery tools.

    **C.**    **Request for Production No. 56: Communications Regarding Alcohol**

25     This request seeks communications that Uber sent to a particular plaintiff via text message,
26 email, or the Uber app regarding consumption of alcohol—e.g., promotional messages indicating
27 that Uber is a safe option for someone who is too intoxicated to drive.  Plaintiffs object that Uber
28 has provided such communications as "lengthy strings of code, with the user-facing English

3

hidden inside the code" and the "original format" obscured. *See* Dkt. No. 3093-6 at 7. Uber responds that the "information no longer exists in the format Plaintiffs seek." *Id.* It is not clear from either party's submissions what sort of code the messages appear in, whether Uber retains the ability to convert that code to a format that reproduces or more closely resembles the original messages, or whether the code is a commonly used standard (e.g., HTML) that Plaintiffs could reasonably convert to a more legible form without Uber's assistance. Rule 34 requires a producing party to "translat[e]" documents or ESI "into a reasonably usable form" when "necessary." Fed. R. Civ. P. 34(a)(1)(A). The ability of either or both parties to translate the code at issue appears to be relevant to whether Uber could or should be required to produce these messages in another format, and should inform the parties' negotiations on this request.

### D.     Request for Production No. 57: Historical Advertising Regarding Alcohol

Certain plaintiffs request that Uber produce all documents reflecting advertising or marketing related to alcohol (e.g., advertising that Uber is a safe option for someone who is too intoxicated to drive) "which are identified by Uber in response to Plaintiff's Special Interrogatories as having run in" a place and time relevant to the incident. Dkt. No. 3093-6 at 7.

There appears to be some dispute as to whether all of the plaintiffs making this request allege they were intoxicated at the time of the incidents in question. *Compare* Dkt. No. 3093 at 3 (Uber's letter, asserting that Plaintiff Jane Roe CL 68 requested such information despite stating in an interrogatory that she had not consumed alcohol) *with* Dkt. No. 3069 at 8 (Plaintiffs' letter characterizing this as a request "for Jaylenn Dean and B.L."). The parties should be able to agree on who is making this request, and should consider whether there is some case-specific justification for it in each case where it has been made.

According to Uber, Plaintiffs have requested up to twelve years of such documents in some cases. Dkt. No. 3093 at 3. Plaintiffs do not address the duration of their requests, but if Uber's characterization is accurate, the request is unduly burdensome and disproportionate to the needs of the case. Plaintiffs (for whom this request is relevant) may request advertising that ran in their geographic location up to two years before the incidents giving rise to their claim.

Uber also contends that Plaintiffs' geographic limitations are so narrowly targeted that it

1  "is unlikely these searches will yield any results because, to the extent historical advertising
2  related data still exists, it is not maintained in a way that makes the search Plaintiffs' want—
3  targeting hyper-specific geographic regions (i.e., 'hometown-specific')—feasible." Dkt. No. 3093
4  at 4.  The Court expects the parties to work cooperatively to determine a feasible geographic scope
5  for these requests.

6  Subject to reasonable bounds as discussed above, and to the extent responsive documents
7  exist, the Court finds that the advertising that a particular plaintiff—or someone else who ordered
8  a ride for the plaintiff, as the fact may be in a particular case—might reasonably have viewed prior
9  to an alleged sexual assault or harassment is a generally appropriate topic for discovery.

10  **IT IS SO ORDERED.**
11  Dated: June 5, 2025

LISA J. CISNEROS
United States Magistrate Judge

5