# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084 CRB |
| | **JOINT DISCOVERY LETTER BRIEF REGARDING BELLWETHER PLAINTIFF A.R.2 AND SOCIAL MEDIA PRODUCTION** |
| This Document Relates to: | |
| *Plaintiff A.R. v. Uber Technologies, Inc., et al.,* Case No. 3:24-cv-01827 | Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

The Court's Order Resolving Joint Discovery Letter Regarding Requests to Bellwether Plaintiffs (ECF 3136), which specifically addressed disputes regarding social media, directed the parties to raise any remaining disputes about the scope social media discovery through a joint letter. Pursuant to the Court's Order, the parties have met and conferred. The parties in this case have reached agreement as to some points but disagree as to a narrow set of issues, which are addressed below.

1

**Defendants' Position**

This Court has already decided that "plaintiff shall produce social media communications and documents that depict or describe the topics that are determined to be relevant to plaintiff's case." ECF 3136, at 5. The Court directed that a plaintiff's claimed injuries, or other reasonable grounds for inquiry into specific topics, might be discernable from Plaintiff Fact Sheets and interrogatory responses that further elaborate on the claimed injuries. ECF 3136, at 4-5.

To date, Plaintiff in this case has not produced any social media. On June 4, 2025, the parties in this case (A.R., MDLC ID 2659) met and conferred in light of the Court's direction. During the meet and confer, the parties agreed certain materials are in scope and will be produced by Plaintiff, including the following:

- As to RFP No. 16, Plaintiff shall produce images and written communications sent, posted, or received via social media that depict or make specific reference to Plaintiff's use of Uber, Lyft, or any other ridesharing service.

- As to RFP No. 17, Plaintiff shall produce images and written communications sent, posted, or received via social media that depict or make specific reference to Plaintiff's (1) mental health diagnosis, (2) depression, (3) anxiety, (4) difficulty falling asleep or staying asleep, (5) stress, (6) difficulty concentrating, and (7) emotional pain and suffering.

The parties, however, did not reach agreement on certain points, which are addressed below.

Disputed Discovery

First, Plaintiff objects to producing certain categories of social media that are relevant to this case in light of Plaintiff's allegations. In particular, in this case, Plaintiff specifically alleges that as a result of the alleged incident, she has and continues to experience numerous symptoms and afflictions, including but not limited to the following:

- Symptoms of ███████████████████████ since the date of the Alleged Incident and to this day;

- ████████████████████████, experienced for months following the Alleged Incident;

- ████████████████████████████████████████, experienced since the date of the Alleged Incident and to this day;

- ████████████████████████████ since the date of the Alleged Incident and to this day;

- ████████████████████████████████████ for weeks following the date of the Alleged Incident;

- █████████████████████, experienced for months following the Alleged Incident;

-  since the date of the Alleged Incident and to this day.

*See* Plaintiff's responses and Supplemental responses to Interrogatories Nos. 3, 4, and 7 (Exs. 1 and 2).

In light of Plaintiff's allegations, Defendants seek production of the following social media:

- Images and written communications sent, posted, or received via social media that depict or make specific reference to Plaintiff's attendance at "social gatherings," with the guiding principle that a gathering is more than three people for a social purpose. For example, work would not qualify (but a work social event would), and shopping would not qualify. A social event with family (e.g., a birthday party) would qualify.

- "Participation in hobbies," which is relevant to her ████████ and "█████████ ████████████████████████

Plaintiff's stated position as to RFP No. 16 is that the term "social gathering" and "hobbies" "are overbroad and unduly burdensome because they implicate every image posted, sent, or received in Plaintiff's social media." It is unclear what Plaintiff's counsel base this claim on. If the social media has been collected and reviewed, it should be readily producible. Further, if in fact a significant portion of Plaintiff's social media reflects Plaintiff in social settings, █████████ ██████████████████████, among other things, such materials are relevant to assessing Plaintiff's claims detailed above. Plaintiff incorrectly states below that she asked Uber to limit the scope of this request, but Uber refused. The truth is that Uber made the proposed limitation set forth above, which Plaintiff would not accept.

This Court has already recognized, "some of Uber's requests may be relevant to plaintiffs claiming particular harms after their alleged sexual assault or harassment – like a loss of interest in hobbies or social interaction, increased drug or alcohol use, reduced sexual desire, stress-induced headaches and gastrointestinal distress, or the like." ECF 3136. Plaintiff has placed her emotional state and a long list of emotional and mental health injuries (*see* Plaintiff's Responses and Supplemental Responses to Defendants' RFP No. 3 and 4 [Exhs. 1 and 2]), at issue, and it is reasonable that some social media communications may support, or undermine, her claims.

Communications and images making specific reference to or depicting the Plaintiff's participation in hobbies bears directly on her claim for damages. According to Plaintiff, as a result of the alleged incident, she ████████████████████████████████████ ███████████████████████████████████████████████████████████████. Any documents showing the Plaintiff engaged in and enjoying a hobby is directly relevant to her claimed injuries. Communications reflecting categories in RFP 16 (see Exh. 3) —namely, events that could produce an emotional or physical reaction—establish the presence or absence of

Plaintiff's alleged ██████████████ where it should have manifested. Likewise, images or messages documenting Plaintiff's continued engagement with hobbies demonstrate that she has ████████████████████████████████████████████. This discovery is fully consistent with Defendants' due process rights to discover the timing, extent, and cause of Plaintiff's alleged injuries; the social media requested will provide an important window into those claims.

Plaintiff protests that the term "hobbies" is not narrowly tailored, while at the same time insisting that her damages include a reduced ability to participate in the far broader category of "activities." It is of no consequence that plaintiff "has not alleged a . . . loss of interest in any *specific* hobby (emphasis added)." Plaintiff's alleged injuries are far broader than that. Plaintiff is welcome to amend her discovery responses, and Defendant has invited her proposal for an appropriate limitation, but Plaintiff has declined. The breadth of injuries plaintiff alleges warrants the discovery sought; Defendants' requests are directly proportional to the scope of plaintiff's allegations. And, it is not that Defendants have a "lack of understanding" of plaintiffs' injuries, it is merely that Defendants are entitled to discovery on the injuries and damages as they are alleged by plaintiff.

Finally, Plaintiff should be ordered to make her production **before her deposition noticed for June 11**. The requests for production were served on March 15. Plaintiff's counsel has indicated she is largely unavailable for the rest of the month and suggests responsive documents will not be produced before Plaintiff's deposition. There are several other fact witnesses identified by Plaintiff who need to be deposed following Plaintiff's deposition, so further delay is not acceptable.  With the July 16 close of discovery, Plaintiff must make her production prior to Plaintiff's deposition or make Plaintiff available for deposition the week of June 16 after the responsive documents and validation materials have been produced.

**Plaintiff A.R.2's Position**[1]

Plaintiff A.R. has already produced substantial responsive documents and has searched her social media for responsive posts. Pursuant to this Court's order [ECF 3136], Plaintiff's social media is being searched for additional responsive information, but Uber's requests are not narrowly tailored to Plaintiff's allegations and damages and thus are burdensome and disproportionate to the needs of the case.

Plaintiff will produce responsive documents from these additional searches as soon as possible, but due to additional searches and continued disputes regarding necessary case-specific discovery from Uber, Uber's insistence on Plaintiff's June 11 deposition is unreasonable. With a July 16 discovery cut-off, there is plenty of time to reschedule A.R.'s deposition which will afford both parties time to obtain and review discovery necessary for a meaningful deposition. Uber's request makes no sense given the company originally demanded all Plaintiffs sit for deposition in May, regardless of the status of document discovery. The production schedule (particularly the validation piece) is also outside the narrow scope of what the Court ordered the parties to meet and confer and submit a letter on.

---

[1] Plaintiff does not believe that the Court's order requiring "a further joint letter" envisioned lengthy letter briefs for each individual case. But Uber requested that the parties file individual letters for each case, and Plaintiffs deferred to Uber as the moving party.

Agreed to Social Media Topics:

16(d) Use of UBER, Lyft, OR ANY other ridesharing service,
17 (a) ANY mental health diagnosis,
17 (d) depression,
17 (e) anxiety,
17 (g) difficulty falling asleep AND/OR staying asleep,
17 (k) stress,
17 (m) difficulty concentrating,
17 (o) emotional pain AND suffering,

Disputed Social Media Topics:

Hobbies:

As the Court noted, "[s]ome of Uber's requests may be relevant to plaintiff's claiming particular harms after their alleged assault or harassment- like a loss of interest in hobbies or social interaction… But for a plaintiff not claiming those particular injuries, and whose cases do not otherwise implicate those issues… many of Uber's inquiries go toward inherently private subjects that may have nothing to do with plaintiff's case." [ECF 3136 at page 4].

Plaintiff A.R. has *not* alleged a decrease or loss of interest in any specific hobby. As discussed with Uber's counsel, there is no basis for this broad search given that Plaintiff has not alleged any impacted hobbies throughout this litigation or in her extensive discovery responses. Plaintiff A.R., like all sexual assault survivors, has ████████████████ which manifest in various ways at different times. Uber's states that "any documents showing the Plaintiff engaged in and enjoying a hobby is directly relevant to her claimed injuries." Further, Uber states that "events that could produce an emotion or physical reaction—establish the presence or absence of Plaintiff's alleged ███████████████ where it should have manifested." Uber's statements demonstrate a complete lack of understanding of how sexual assault survivors live their lives after such a devastating, life-altering assault. Uber implies that if a sexual assault survivor posts a happy picture on social media, this somehow implies that their trauma isn't real—this is a gross misunderstanding of sexual assault survivor trauma. Plaintiff A.R. is searching for and producing all social media reflecting her ████████████████████████████████████████████████.
Simply because there may be social media posts reflecting her engaging in normal life activities does not entitle Uber to go on a fishing expedition into all of her social media related to hobbies of which she hasn't claimed to be at issue in her case.

Social media relating to Plaintiff's attendance at social gatherings:

Request for Production No. 16(a) asks for "all documents and communications on social media. . . that depict, describe, or relate to. . . you attending social gatherings, public or private, with people you know or with strangers." This request is overly broad and not narrowly tailored to the needs of the case. "Social gatherings" encompass the vast majority of people's social media

presence. Indeed, any posting with another person could be considered a "social gathering." It is not clear to Plaintiff how to even search for this. Uber states that "if in fact, a significant portion of Plaintiff's social media reflects Plaintiff social settings, the absence of ███████████ ████████████████████ among other things, such materials are relevant to assessing Plaintiff's claims detailed above." Again, Uber demonstrates a lack of understanding of sexual assault survivors. Uber attempts to analogize these plaintiffs' injuries to a car accident case, seeking anything to prove an injured plaintiff is not injured. But these plaintiffs are not car accident victims, and their ████████████████ are vastly different. Uber's request for all social media relating to "social gatherings" is overly broad, burdensome, and not narrowly tailored to Plaintiff A.R.'s case. During meet and confers, Plaintiff's counsel requested that Uber's counsel limit the scope of this request, but they would not. We would agree to search and produce social gatherings if limited in time and scope.  This request could be limited to 3 months before and after the assault, and search social events, which would include, parties, concerts, weddings, birthday celebrations, and bridal and baby showers. We remain willing to continue to meet and confer on this topic.

By: */s/Rachel B. Abrams*_____

RACHEL B. ABRAMS (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**

555 Montgomery Street, Suite 820

San Francisco, CA 94111

Telephone: (415) 426-5641

Email: rabrams@peifferwolf.com

*Counsel for Plaintiff A.R.2*


*/s/ Alicia Donahue*_____

ALICIA DONAHUE (SBN 117412)

**SHOOK, HARDY AND BACON, L.L.P.**

555 Mission Street, Suite 2300

San Francisco, CA 94105

Telephone: (415) 544-1900

adonahue@shb.com

*Attorneys for Defendants*

UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC


## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, have authorized the filing.

Dated: June 6, 2025

By: */s/ Alicia Donahue*_____