UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>*WHB 1876 v. Uber Technologies, Inc.*, No. 24-cv-05230;<br><br>*WHB 1486 v. Uber Technologies, Inc.*, No. 24-cv-04803;<br><br>*A.R. v. Uber Technologies, Inc.*, No. 24-cv-01827;<br><br>*Jaylynn Dean v. Uber Technologies, Inc.*, No. 23-cv-06708. | Case No. 23-md-03084-CRB   (LJC)<br><br>**ORDER RESOLVING CASE-SPECIFIC DISCOVERY DISPUTES REGARDING SOCIAL MEDIA**<br><br>Re: Dkt. Nos. 3186, 3189, 3191, 3193 |

The parties have filed joint letters raising discovery disputes related to production of social media materials by Plaintiffs in four of the first wave of bellwether cases set for trial, including one case that is anticipated to be shifted to later wave. The parties report that they have resolved all disputes related to this issue in two other cases in the first wave. *See* Dkt. Nos. 3187, 3188. The Court presumes the parties' familiarity with the facts of the cases and the applicable law, and rules as follows.

The parties may stipulate to change any production deadline set by this Order without need to seek approval from the Court, *if and only if* such change does not alter the deadline of a deposition. This modifies Civil Local Rule 6-1(b).

**A.    *WHB 1876 v. Uber Technologies, Inc.*, No. 24-cv-05230 (Dkt. No. 3186)[1]**

The parties represent that they have reached an agreement on the categories of social media

---

[1] All citations herein to docket entry numbers refer to entries on the docket of the MDL, No. 23-md-3084.

1 materials to be produced, but their lists differ slightly. Dkt. No. 3186 at 2–3. It seems likely that
2 the differences are inadvertent, but to the extent there is any dispute, the Court adopts Plaintiff's
3 framing of the list, which limits certain categories to Plaintiff's own experiences and includes a
4 category related to a mental health diagnosis that is absent from Uber's list. The Court therefore
5 ORDERS Plaintiff to produce the following categories of social media materials, to the extent that
6 they are found to exist after a reasonably diligent search:

- Social media depicting Plaintiff gathering with friends in a similar environment to which she was in the night of the alleged incident;

- Social media posts (if any) that depict drug/alcohol use within 24 hours of the alleged incident;

- Social media that evidences the number or dates of rides taken with other rideshare services;

- Social media posts on the topic of Uber usage;

- Social media relating to any major traumatic experience or trauma Plaintiff experienced;

- Social media relating to major stressful experiences Plaintiff experienced;

- Social media that indicates Plaintiff experienced emotional pain and suffering; and

- Social media relating to Plaintiff's mental health diagnosis of anxiety.

19 *See* Dkt. No. 3186 at 3.
20     The parties dispute the timing of production, and of validation as required by the Court's
21 June 2, 2025 Order. *See* Dkt. No. 3136 at 6–7 (allowing Uber to select up to three weeks per year
22 for which Plaintiff will produce all social media activity for up to three accounts selected by
23 Uber). Uber proposes that Plaintiff produce responsive materials by June 11, 2025, that Uber
24 provide validation parameters by June 13th, and that Plaintiff produce validation materials by June
25 18th, in advance of Plaintiff's scheduled June 20, 2025 deposition. Dkt. No. 3186 at 2. Plaintiff
26 asserts that, as of the June 6, 2025 filing of the parties' letter, Plaintiff had been out of the country
27 and unreachable for two weeks, and was scheduled to return June 7, 2025. According to Plaintiff,
28 "undertaking a reasonable and diligent search of all her social media content before June 11th and

1  providing the proposed validation materials by June 13th [sic] is highly improbable," but
2  Plaintiff's counsel would "attempt to comply with the proposed schedule in good faith and keep
3  Defendants apprised of [their] progress after speaking with Plaintiff." *Id.* at 3.

4      Plaintiff's response appears to misunderstand Uber's proposal, which calls for *Uber* to
5  propose validation *parameters* by June 13th, and Plaintiff to produce the validations materials five
6  days later on June 18th—a facially reasonable amount of time to collect those materials, which
7  would not require any review for responsiveness. The Court recognizes that the June 11, 2025
8  deadline for production of responsive materials may be more burdensome, but finds it is likely
9  achievable and proportionate to the needs of the case in light of Plaintiff's upcoming deposition
10 date.

11     Plaintiff is therefore ORDERED to comply with Uber's proposed schedule, except that at
12 Plaintiff's option, Plaintiff may shift her deadline for production of responsive materials to Friday,
13 June 13, 2025 and Uber's deadline for providing validation parameters to Monday, June 16, 2025.
14 Plaintiff's deadline for production of validation materials would remain June 18, 2025. If Plaintiff
15 elects those alternative deadlines, Plaintiff shall notify Uber no later than twenty-four hours after
16 the filing of this Order.

17     **B.**     *WHB 1486 v. Uber Technologies, Inc.*, **No. 24-cv-04803 (Dkt. No. 3189)**

18     The parties to this case dispute both substantive aspects of Uber's requests (including
19 disputes regarding public transit, social gatherings, and mental health) and the timing of any
20 response in light of Plaintiff's request to remove this case from the first wave of bellwether trials.

21     Uber asserts that the parties reached an agreement for Plaintiff to produce social media
22 materials regarding her use of public transportation, as a subset of the agreed topic of rideshare
23 usage because Plaintiff has alleged that she uses public transportation more frequently in lieu of
24 rideshare services after the alleged incident. Dkt. No. 3189 at 2. Plaintiff disputes that an
25 agreement was reached previously, but now agrees that "to the extent that posts are found to exist
26 evidence Plaintiff's reliance on public transit following the incident," she will "produce those
27 posts upon a narrowly tailored discovery request for the same being propounded." *Id.* at 4.
28 Serving a new request for production would seem to serve no practical purpose. Plaintiff is

3

ORDERED to produce the posts she has agreed to produce (to the extent that any are found after a reasonably diligent search).

On the topic of social gatherings, Plaintiff is willing to produce social media materials (to the extent that any are found after a reasonably diligent search) regarding the specific family gathering that she was traveling to attend when the alleged incident occurred, but argues that documents related to other social gatherings are irrelevant and unduly burdensome. She asserted in a meet-and-confer letter that her "discovery responses do not implicate any change in her social behavior as a result of the incident." Dkt. No. 3189-3 at 3. Uber contends that social gatherings generally are relevant to Plaintiff's contention that she became distrustful of others and "bottled up her feelings"[2] after the incident. *See* Dkt. No. 3189-1 at 3 (Plaintiff's Response to Interrogatory No. 4); Dkt. No. 3189 at 3 (Uber's arguments).

Distrustfulness and bottling up feelings might, or might not, result in a person avoiding social gatherings that they otherwise would have attended. If Plaintiff is willing to provide a judicial admission—perhaps in the form of a declaration, or as a highly expedited response to a request for admission—that the alleged incident did not affect her social activities, then such discovery might be unnecessary. If not, some degree of discovery into Plaintiff's attendance at social gatherings might be relevant, although the parties should address an appropriate definition of that term, perhaps informed by the discussion below of the *A.R.* case. Plaintiff previously declined to meet and confer on this topic in detail until "such time as [her] status as a wave 1 Bellwether pick is either confirmed or deferred to a later wave." Dkt. No. 3189-3 at 3; *see also* Dkt. No. 3189 at 3.

Finally, Uber contends that social media materials related to Plaintiff's "mental health" or "mental health diagnoses" are relevant to her claimed "mental anguish." Dkt. No. 3189 at 3. On the more specific subject of "diagnoses," Plaintiff asserts "that she has not been diagnosed with any mental health condition." *Id.* at 6. More generally, however, she "recognizes a more narrowly tailored request could be proportional to the needs of this case." *Id.* It seems clear that

---

[2] Or—to quote Uber's portion of the joint letter—her "feels." Dkt. No. 3189 at 3.

4

the parties have not yet exhausted reasonable efforts to negotiate a resolution to this dispute.

As discussed by Judge Breyer at the June 6, 2025 case management conference, this case will be moved out of the first wave of bellwether trials. That said, it remains a bellwether case, and Plaintiff must continue to cooperate in discovery. Plaintiff must therefore produce social media materials responsive to Uber's requests, as limited by the parties' agreements and applicable orders of the Court. The parties shall meet and confer promptly in an effort to resolve their outstanding disputes regarding the scope of Uber's document requests. Uber need not serve new requests to account for the parties' negotiations. As a default deadline, Plaintiff must produce responsive documents no later than thirty days from the date of this Order, with a validation process to follow that production. The parties may modify that deadline by stipulation and proposed order. If the parties cannot agree, Plaintiff may seek to continue that deadline by filing an administrative motion consistent with Civil Local Rule 6-3 no later than fourteen days from the date of this Order, which must demonstrate good cause for the proposed delay.

**C.**   ***A.R. v. Uber Technologies, Inc.*, No. 24-cv-01827 (Dkt. No. 3191)**

The parties dispute the scope of requests for production related to hobbies and social gathering, and the timing of production and Plaintiff's deposition, which is currently scheduled for June 11, 2025.

The parties have agreed that Plaintiff will produce social media materials that depict or make specific reference to Plaintiff's use of any rideshare service and certain categories of materials related to mental health and emotional distress. Dkt. No. 3191 at 2, 5. Plaintiff is ORDERED to produce those materials promptly if she has not already done so.

Uber also seeks a relatively broad production of social media materials related to Plaintiff's participation in hobbies and social gatherings. Plaintiff objects to those requests as overly broad and not tied to her specific allegations.

### 1. Hobbies

With respect to hobbies, Plaintiff contends that she "has *not* alleged a decrease or loss of interest in any specific hobby," and that the possible existence of "social media posts reflecting her engaging in normal life activities" would not be inconsistent with her experiencing ongoing

5

1  trauma and severe emotional distress after a sexual assault.  Dkt. No. 3191 at 5.  Plaintiff is, of
2  course, correct that serious mental and emotional effects of sexual assault may "manifest in
3  different ways at different times," and that "if a sexual assault survivor posts a happy picture on
4  social media," that does not demonstrate "that their trauma isn't real."  *Id.*  Uber is correct,
5  however, that Plaintiff has asserted in this case a number of specific injuries to which evidence of
6  hobbies and other activities may be relevant, including but not limited to:

> - Symptoms of social anxiety and stress that have affected Plaintiff's ability to make new social connections and participate in daily activities, experienced since the date of the Alleged Incident and to this day;
>
> - Fear, nervousness, and symptoms of anxiety when Plaintiff is around strangers, . . . experienced since the date of the Alleged Incident and to this day; [and]
>
> - Decreased motivation for activities [and] isolation, . . . since the date of the Alleged Incident and to this day[.]

Dkt. No. 3190-4 at 4 (provisionally under seal[3]).

Any given social media post depicting Plaintiff engaging in hobbies or interacting with other people would not be dispositive of her claims.  But that is not the test for discovery.  Material may be "relevant to any party's claim or defense and proportional to the needs of the case" even if not dispositive.  *See* Fed. R. Civ. P. 26(b)(1).  Here, social media posts depicting or making specific reference to Plaintiff's hobbies, before or after her alleged sexual assault, could inform a jury's assessment of the degree to which that experience affected (for example) her "ability to make new social connections and participate in daily activities," her willingness to interact with strangers, her "motivation for activities," and her "isolation."  *See* Dkt. No. 3190-4.  Such material could also inform defense counsel's questions about the activities that Plaintiff engaged in and how the alleged incident affected her participation in them.

Plaintiff is therefore ORDERED to produce social media materials that depict or make

---

[3] The Court does not find sufficient cause to seal these particular responses that provide specific grounds for the Court's decision, and which discuss only in general terms injuries alleged by a plaintiff who is identified only by her initials.  The Court will address the propriety of sealing other material at issue in due course after Plaintiff files her response to Uber's administrative motion to consider whether it should be sealed.  *See* Dkt. No. 3190; Civ. L.R. 79-5(f).

United States District Court
Northern District of California

1  specific reference to Plaintiff's participation in hobbies.  The Court expects that Plaintiff and her

2  attorneys can identify her own hobbies--in other words her regular leisure time activities whether

3  they are creative, social, sporting, intellectual or some other type of pursuit--and does not find the

4  term unduly vague such that Uber should be required to identify specific hobbies in its request.

### 2. Social Gatherings

Uber seeks the following materials related to "social gatherings":

> Images and written communications sent, posted, or received via social media that depict or make specific reference to Plaintiff's attendance at "social gatherings," with the guiding principle that a gathering is more than three people for a social purpose. For example, work would not qualify (but a work social event would), and shopping would not qualify. A social event with family (e.g., a birthday party) would qualify.

Dkt. No. 3191 at 3.

To the extent Plaintiff disputes the relevance of such materials, the Court overrules such objections for substantially the same reasons as discussed above in the context of hobbies.

Plaintiff also contends that the request is unduly broad and burdensome, and proposes "to search and produce social gatherings if limited in time and scope," with the request "limited to 3 months before and after the assault, and search social events, which would include, parties, concerts, weddings, birthday celebrations, and bridal and baby showers." *Id.* at 5–6.

The Court finds Uber's request to be vague as to the meaning of "social gatherings," and Uber's proposal of "more than three people for a social purpose" unduly broad.  The Court adopts Plaintiff's proposed scope, with a commonsense interpretation of the term "parties"—references to Plaintiff attending a "housewarming" or "bachelorette," as hypothetical examples, should be considered "parties" even if that word is not used specifically.  The Court finds Plaintiff's proposed timeframe, however, unduly restrictive.

Plaintiff is therefore ORDERED to produce social media materials that depict or make specific reference to Plaintiff's attendance at social events (including parties, concerts, weddings, birthday celebrations, and bridal and baby showers) from two years before the alleged incident through the present.

### 3. Timing of Deposition and Production

Plaintiff is ORDERED to appear for deposition no later than June 23, 2025. The parties shall meet and confer regarding prompt deadlines for the production of social media materials and a date for Plaintiff's deposition. No later than June 11, 2025 at 8:30 am, the parties shall file either a stipulation and proposed order setting that schedule, or a joint statement of each party's position, without argument.

### D. *Dean v. Uber Technologies, Inc.*, No. 23-cv-06708 (Dkt. No. 3193)

Plaintiff Jaylynn Dean has agreed to produce social media materials depicting or referencing the following categories:

> 16(c) alcohol use;
> 16(d) use of UBER, Lyft, OR ANY other ridesharing service,
> 17 (a) ANY mental health diagnosis,
> 17 (b) ANY traumatic experience,
> 17 (d) depression,
> 17 (e) anxiety,
> 17 (f) PTSD,
> 17 (g) difficulty falling asleep AND/OR staying asleep,
> 17 (h) stress-related gastrointestinal disturbances,
> 17 (k) stress,
> 17 (m) difficulty concentrating,
> 17 (n) trauma, AND/OR
> 17 (o) emotional pain AND suffering[.]

Dkt. No. 3193 at 4–5. The parties dispute requests for materials related to drug use, romantic relationships, social gatherings, and hobbies, as well as the timing of production.

Uber seeks production of social media materials related to drug use based on a reference to a specific medication in the police report from Dean's alleged rape by an Uber driver. The Court agrees with Dean that Uber's request is overly broad. Dean asserts that she "has agreed to search for all mental health diagnoses and medication related thereto." Dkt. No. 3193 at 5. If that agreement does not already encompass the specific medication referenced in the police report, the Court ORDERS Dean to produce any social media materials that depict or specifically reference that medication within the relevant time period (two years before the incident to the present).

Uber seeks social media materials related to Dean's romantic relationships. Dkt. No. 3193 at 3. Uber does not explain if or how that request falls within the requests for production that it previously served. Dean characterizes it as falling outside of Uber's request for social media

8

1    materials related to social gatherings. *Id.* at 6.  To the extent Uber might have intended this new
2    request as component of that previous request, it is not.  Romantic relationships are not social
3    gatherings.  Uber therefore does not appear to have served a request for production that
4    encompasses social media materials regarding romantic relationships, and Dean need not produce
5    such materials at this time.[4]  That said, under the circumstances of this particular case, *see* ECF
6    No. 3192-4 at 16 (provisionally under seal), some discovery into that topic may be relevant.  If
7    Uber serves new discovery requests seeking documents or information regarding Dean's romantic
8    relationships, the parties are directed to meet and confer in an effort to balance Uber's interest in
9    defending this case against Dean's privacy interests.

10    The parties also dispute Uber's requests for social media materials related to social
11    gatherings and hobbies.  Dkt. No. 3193 at 3, 5–6.  For substantially the same reasons discussed
12    above with respect to the *A.R.* case, Dean is ORDERED to produce materials in response to these
13    requests, limited to the same extent as in *A.R.*

14    The parties dispute the timing of production in advance of Dean's June 27, 2025
15    deposition.  Uber has proposed that Dean produce responsive materials by June 11, 2025, Uber
16    provide validation parameters by June 13th, and Dean produce validation materials by June 18th.
17    Dkt. No. 3193 at 2.  Dean characterizes that schedule as "impracticable," noting that she was in
18    high school two years before the alleged rape and was active on social media at that time, but has
19    not proposed an alternative.  *Id.* at 4.  Absent agreement by the parties to the contrary, Dean is

20    //
21    //
22    //
23    //
24    //

---

[4] This case differs from the request for public transit information in the *WHB 1486* case discussed above in at least two ways.  In that case, Uber offered at least a colorable argument as to how the topic fell within a request for production it had served, and Plaintiff agreed to produce the materials at issue if served with a new request, thus rendering any new request a mere formality and vehicle for delay.  Neither of those conditions is true here.

9

ORDERED to produce responsive materials no later than June 17, 2025, Uber shall provide parameters for validation no later than June 20, 2025,[5] and Dean shall produce the required validation sample no later than June 24, 2025.

**IT IS SO ORDERED.**

Dated:

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

---

[5] As compared to Uber's proposed schedule, this schedule allows one additional day for Uber to provide parameters due to the Juneteenth holiday.