LAURA VARTAIN (SBN: 258485)
    laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
    allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
    jessica.davidson@kirkland.com
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION, | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |
| This Document Relates to: | Judge:      Hon. Charles R. Breyer |
| *A.R. v. Uber Technologies, Inc., et al.*, No. 24-cv-01827 | Courtroom:   Courtroom 6 – 17th Floor |
| *D.J. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07228 | |
| *A.G. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-01915 | |
| *A.R. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07821 | |
| *B.L. v. Uber Technologies, Inc., et al.*, No. 24- | |

1   cv-7940

2   *C.L. v. Uber Technologies, Inc., et al.*, No.
3   3:23-cv-04972

4   *J.E. v. Uber Technologies, Inc., et al.*, No.
    3:24-cv-03335
5
    *Jane Doe QLF 0001 v. Uber Technologies,*
6   *Inc., et al.*, No. 3:24-cv-08783-CRB

7   *Jaylynn Dean v. Uber Technologies, Inc., et al.*,
    No. 3:23-cv-06708
8
9   *K.E. v. Uber Technologies, Inc., et al.*, No.
    3:24-cv-05281-CRB
10
    *Amanda Lazio v. Uber Technologies, Inc.*, No.
11  3:24-cv-08937-CRB

12  *LCHB128 v. Uber Technologies, Inc., et al.*,
    No. 3:24-cv-7019
13
14  *T.L. v. Uber Technologies, Inc., et al.*, No. 24-
    cv-9217
15
    *WHB 318 v. Uber Technologies, Inc.*, No. 3:24-
16  cv-04889

17  *WHB 407 v. Uber Technologies, Inc., et al.*,
    No. 3:24-cv-05028
18
19  *WHB 823 v. Uber Technologies, Inc.*, No. 3:24-
    cv-4900
20
    *WHB 1486 v. Uber Technologies, Inc., et al.*,
21  No. 3:24-cv-04803

22  *WHB 1876 v. Uber Technologies, Inc., et al.*,
    No. 3:24-cv-05230
23
    *WHB 1898 v. Uber Technologies, Inc., et al.*,
24  No. 3:24-cv-05027

25  *Jane Roe CL 68 v. Uber Technologies Inc., et*
    *al.*, No. 3:24-cv-06669-CRB
26

27

28

SABRINA H. STRONG (SBN: 200292)
   sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
   jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT, JR. (*Pro Hac Vice* admitted)
   oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
   adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
   mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice* admitted)
   ccotton@shb.com
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT ................................................................................................... 1

    A.   Plaintiffs Fail To Allege Fraud And Misrepresentation Claims ............................ 1

        1.   Plaintiffs fail to allege any actionable misrepresentation ......................... 2

        2.   Plaintiffs fail to allege reliance on any representation ................................ 8

        3.   Plaintiffs fail to allege intent to defraud via omission ............................ 10

    B.   Plaintiffs Fail To Remedy Deficiencies In Their Product-Liability Claims ......... 11

        1.   Product-liability claims challenging services must fail ............................ 11

        2.   Failure to allege causation........................................................................ 12

        3.   Plaintiffs inadequately allege negligent design and breach of warranty......................................................................................................... 13

    C.   Plaintiffs Fail To State A Claim For Vicarious Liability ...................................... 13

        1.   Plaintiffs fail to allege torts within the scope of purported employment............................................................................................. 13

        2.   Failure to allege ratification ..................................................................... 15

    D.   WHB 1876, 1898, 407, And Jane Roe CL 68 Fail To Allege Any Tort Claims ............................................................................................................. 16

        1.   Negligence and product liability fail absent physical harm ..................... 17

        2.   Failure to allege underlying tortious conduct by driver ........................... 19

III.  CONCLUSION ............................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.H. by next friends C.H. v. Church of God in Christ, Inc.*,
    831 S.E.2d 460 (Va. 2019) ........................................................................... 19

*Ahern v. Apple Inc.*,
    411 F. Supp. 3d 541 (N.D. Cal. 2019) ...................................................... 3, 4, 6

*Anderson v. Apple Inc.*,
    500 F. Supp. 3d 993 (N.D. Cal. 2020) ............................................................ 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 7

*Azoulai v. BMW of N. Am. LLC*,
    2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ................................................. 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 11

*Bishop v. Farhat*,
    489 S.E.2d 323 (Ga. App. 1997) .................................................................. 21

*Boeken v. Philip Morris, Inc.*,
    26 Cal. Rptr. 3d 638 (Cal. App. 2005) ........................................................ 12

*Branford v. Washington Cnty., Or.*,
    2019 WL 1957951 (D. Or. May 2, 2019) ..................................................... 18

*Camenzind v. Cal. Expo. & State Fair*,
    84 F.4th 1102 (9th Cir. 2023) ...................................................................... 17

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d (N.D. Cal. 2010) .................................................................. 4

*Clark v. Children's Mem'l Hosp.*,
    955 N.E.2d 1065 (Ill. 2011) ......................................................................... 23

*Cochran v. Securitas Sec. Servs. USA, Inc.*,
    93 N.E.3d 493 (Ill. 2017) ............................................................................. 23

*Cork v. CC-Palo Alto, Inc.*,
    534 F. Supp. 3d 1156 (N.D. Cal. 2021) .................................................... 20, 24

*D'Ambrosio v. Rajala*,
    2025 WL 1383286 (N.D. Ill. May 13, 2025) ................................................ 14

ii

1

## TABLE OF AUTHORITIES
### (Continued)

2

Page(s)

3

*Davidson v. Sprout Foods, Inc.*,
  106 F.4th 842 (9th Cir. 2024) ................................................................. 11

4

*Doe 130 v. Archdiocese of Portland in Oregon*,
  2010 WL 11579746 (D. Or. Oct. 12, 2010) ............................................. 17

5

6

*Doe ex rel. Christina H. v. Medford Sch. Dist. 549C*,
  2011 WL 1002166 (D. Or. Feb. 22, 2011), *report and recommendation adopted*, 2011 WL
  976463 (D. Or. Mar. 18, 2011) ................................................................. 18

7

8

*Doe v. Holy See*,
  557 F.3d 1066 (9th Cir. 2009) .................................................................. 17

9

10

*Dziokonski v. Babineau*,
  380 N.E.2d 1295 (Mass. 1978) ................................................................. 22

11

*EFK Invs., LLC v. Peerless Ins. Co.*,
  2014 WL 4802920 (N.D. Cal. Sept. 26, 2014) ......................................... 12

12

13

*Elias v. Hewlett-Packard Co.*,
  950 F. Supp. 2d 1123 (N.D. Cal. 2013) ..................................................... 8

14

15

*Enovative Grp., Inc. v. Advanced Conservation Tech. Distribut., Inc.*,
  2014 WL 13130386 (C.D. Cal. Nov. 12, 2014) ................................... 11, 12

16

*Fearing v. Bucher*,
  977 P.2d 1163 (Or. 1999) .................................................................. 17, 19

17

18

*Foley v. Polaroid Corp.*,
  508 N.E.2d 72 (Mass. 1987) ..................................................................... 25

19

20

*Freeman v. Holy Cross Hosp.*,
  2011 WL 1559208 (N.D. Ill. Apr. 25, 2011) ............................................ 24

21

22

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ....................................................................... 4

23

*Friedman v. Mercedes Benz USA LLC*,
  2013 WL 12086788, (C.D. Cal. Apr. 9, 2013) ......................................... 11

24

25

*Garcia ex rel. Martin v. Clovis Unified Sch. Dist.*,
  627 F. Supp. 2d 1187 (E.D. Cal. 2009) ................................................ 19, 20

26

27

*Ginsberg v. Blacker*,
  852 N.E.2d 679 (Mass. App. 2006) .......................................................... 25

28

iii

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Gov't Emps. Ins. Co. v. Super. Ct.*,
    79 Cal. App. 4th 95 (2000) ....................................................................................... 7

*Gresh v. Waste Servs. of Am., Inc.*,
    311 F. App'x 766 (6th Cir. 2009) ............................................................................. 8

*Guido v. Koopman*,
    1 Cal. App. 4th 837 (1991) ....................................................................................... 12

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D.Cal. 2022) ..................................................................... 10

*Hennessey v. Pendrick Cap. Partners LLC*,
    2025 WL 671861 (W.D. Wash. Mar. 3, 2025) ........................................................ 9

*In re Apple Inc. Device Performance Litig.*,
    386 F. Supp. 3d 1155 (N.D. Cal. 2019) ................................................................... 5

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
    753 F. Supp. 3d 849 (N.D. Cal. 2024) ..................................................................... 3

*In re Uber Rideshare Cases*,
    No. CJC-21-005188 (Super. Ct., San Fran. Cnty., June 22, 2023) ....................... 14

*Jerman v. Woolsey Operating Co., LLC*,
    2021 IL App (5th) ...................................................................................................... 24

*Lee v. State Farm Mut. Ins. Co.*,
    533 S.E.2d 82 (Ga. 2000) ........................................................................................ 21

*Leprino Foods Co. v. DCI, Inc.*,
    727 F. App'x 464 (10th Cir. 2018) .......................................................................... 8

*Luna v. Uber Techs., Inc., et al.*,
    No. 22STCV10806 (Super. Ct., Los Angeles Cnty., Sept. 27, 2022) ..................... 15

*Malibu Boats, LLC v. Batchelder*,
    819 S.E.2d 315 (Ga. App. 2018) ............................................................................. 21

*Moncada v. Allstate Ins. Co.*,
    471 F. Supp. 2d 987 (N.D. Cal. 2006) ..................................................................... 11

*Nayab v. Cap. One Bank (USA), N.A.*,
    942 F.3d 480 (9th Cir. 2019) .................................................................................... 9

*Olson v. Major League Baseball*,
    29 F.4th 59, 81 (2d Cir. 2022) ............................................................................. 8, 10

iv

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Parker v. Brush Wellman, Inc.*,
377 F. Supp. 2d 1290 (N.D. Ga. 2005) .................................................................... 22

*Payton v. Abbott Labs*,
437 N.E.2d 171 (Mass. 1982) .................................................................................. 22

*Pemberton v. Nationstar Mortg. LLC*,
331 F. Supp. 3d 1018 (S.D. Cal. 2018) .................................................................... 13

*Ramos v. Uber Techs., Inc. et al.*,
No. 22STCV33007 (Super. Ct., Los Angeles Cnty., June 1, 2023) .......................... 15

*Rickey v. Chicago Transit Auth.*,
457 N.E.2d 1 (Ill. 1983) .......................................................................................... 23

*Rindlisbacher v. Steinway & Sons, Inc.*,
2019 WL 3767009 (D. Ariz. Aug. 9, 2019) ............................................................... 8

*Rodgers v. Christie*,
795 F. App'x 878 (3d Cir. 2020) .............................................................................. 14

*Rodriguez v. Cambridge Hous. Auth.*,
823 N.E.2d 1249 (Mass. 2005) ........................................................................ 22, 23

*Rossitto v. Safeway, Inc.*,
2014 WL 1047729 (N.D. Cal. Mar. 17, 2014) ............................................................ 9

*Schmidt v. Archdiocese of Portland in Oregon*,
234 P.3d 990 (Or. Ct. App. 2010) ...................................................................... 17, 18

*Select Specialty Hosp. - Sioux Falls, Inc. v. Brentwood Hutterian, Brethren, Inc.*,
81 F.4th 793 (8th Cir. 2023) ..................................................................................... 8

*Sepanossian v. Nat'l Ready Mixed Concrete Co.*,
97 Cal. App. 5th 192 (2023) ..................................................................................... 4

*Snider v. Wells Fargo Bank, N.A.*,
2019 WL 1473459 (N.D. Cal. Feb. 12, 2019) ........................................................... 16

*Social Media Cases*,
2023 WL 6847378 (Cal. Super. Oct. 13, 2023) ........................................................ 14

*Sullivan v. Boston Gas Co.*,
605 N.E.2d 805 (Mass. 1993) .................................................................................. 23

*Sweeney v. F.W. Woolworth Co.*,
142 N.E. 50 (Mass. 1924) ....................................................................................... 25

v

1

## TABLE OF AUTHORITIES
### (Continued)

2

Page(s)

3

*Swetala v. Quten Rsch. Inst., LLC*,
   2025 WL 950627 (E.D. Cal. Mar. 28, 2025) ............................................... 5

4

*Tabler v. Panera LLC*,
   2020 WL 3544988 (N.D. Cal. June 30, 2020) ........................................... 10

5

6

*Terpin v. AT&T Mobility LLC*,
   118 F.4th 1102 (9th Cir. 2024) .................................................................. 2

7

8

*Tynes v. Shoney's Inc.*,
   867 F. Supp. 330 (D. Md. 1994) ............................................................... 19

9

*U. S. Nat. Bank of Or. v. Fought*,
   630 P.2d 337 (Or. 1981)........................................................................ 8, 10

10

11

*Vitt v. Apple Computer, Inc.*,
   469 F. App'x 605 (9th Cir. 2012) ............................................................. 5

12

13

*Weiss v. Trader Joe's*,
   838 F. App'x 302 (9th Cir. 2021) ............................................................. 7

14

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021)................................................................... 11

15

16

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012).................................................................... 2

17

18

**Other Authorities**

19

H.B. 339, 158th Gen. Assemb., Reg. Sess. (Ga. 2025)...................................... 17

**Rules**

20

Fed. R. Civ. P. 12 (h)(2)....................................................................................... 11

21

22

**Treatises**

23

Restatement (Second) of Torts § 31 (1965) ...................................................... 20

24

Restatement (Second) of Torts § 551 (1977) ............................................... 5, 6, 8

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

Plaintiffs' opposition[1] cannot overcome the numerous fatal deficiencies in their amended fraud, product-liability, negligence, and vicarious liability claims. Their amended pleadings not only fail to revive those claims, but also add fresh defects requiring dismissal.

On the fraud claims, Plaintiffs do not allege any actionable misrepresentations or omissions in connection with the two categories of communications they attack: Uber's Designated Driver ads, which promote the use of Uber-facilitated rides to avoid the risks of drunk driving, and Uber's star-rating notices, which compile consumer-assigned satisfaction rankings for independent drivers. Nor do Plaintiffs plausibly allege the separate elements of justifiable reliance and intent to defraud.

On the product-liability and negligence claims, Plaintiffs continue to challenge aspects of Uber's rider-driver "matching" services that do not implicate product-liability law at all, and fail to allege facts plausibly establishing the essential element of causation.

On the vicarious liability and ratification claims, Plaintiffs allege no actionable driver misconduct within the scope of employment under the applicable states' laws, and no facts that would support an inference of ratification by deliberate indifference or otherwise.

Finally, multiple Plaintiffs also have no actionable claims because they allege no physical harm. *See* Dkt. 2791-1, App'x A (summarizing case-by-case requested relief).

## II.    ARGUMENT

### A.    Plaintiffs Fail To Allege Fraud And Misrepresentation Claims

Plaintiffs do not allege that Uber made any affirmatively misleading statements, but instead claim to "plead two fraud claims, arising from omission[s]" from (1) Uber's Designated Driver Ads, and (2) Uber's "Driver Notifications" (including star ratings) to riders. Opp. 4. Both claims fail for lack of three necessary elements: actionable misrepresentation or omission; actual and justifiable reliance; and intent to defraud.[2] MTD 10-22.

---

[1] Citations to "Opp. __" refer to Plaintiffs' opposition brief (Dkt. 3002), and "MTD __" refer to Uber's motion to dismiss (Dkt. 2791). Other defined terms take the meaning given in the MTD.
[2] Jaylynn Dean, A.G., B.L., A.R. 2, C.L., J.E., and LCHB 128 plead deficient fraud claims.

1

1           1.     *Plaintiffs fail to allege any actionable misrepresentation*

Plaintiffs' omission-based claims first fail for lack of any duty of disclosure. MTD 15; *Terpin v. AT&T Mobility LLC*, 118 F.4th 1102, 1009-10 (9th Cir. 2024). Plaintiffs allege nothing suggesting that any of Uber's supposed partial statements were objectively misleading without additional disclosures, nor do they allege any other circumstance that would obligate Uber to speak further. *Terpin*, 118 F.4th at 1110-11.

           a.     **Plaintiffs do not and cannot allege that Uber's "Designated Driver" ads were objectively misleading**

Plaintiffs challenge two specific "designated-driver ads" counseling against drinking and driving: (1) "Stay safe tonight. Use Uber"; and (2) "Don't drink and drive. Call an Uber." Opp. 5.[3] Plaintiffs contend that these "statements were rendered misleading by the omission of material facts," namely: that "intoxicated people, especially women, and especially late at night, are at significantly elevated risk of being sexually assaulted" by independent drivers, and that Uber allegedly lacked "information about [independent] drivers to determine [whether] they could be trusted to provide safe transportation." Opp. 5-6. By claiming Uber's anti-drunk-driving advice required accompanying disclosures about alleged risks unrelated to drinking and driving, Plaintiffs would impose an all-encompassing duty to warn of every imaginable risk whenever a company makes a safety-related statement. But courts uniformly "reject [such] a broad obligation to disclose." *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).

Uber had no duty to make any and all disclosures unless, without them, its Designated Driver ads were "likely to deceive reasonable consumers." MTD 16 (quoting *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 562 (N.D. Cal. 2019) (quotations omitted)). And no reasonable consumer could be misled by these ads' message that arranging a ride through Uber is a way to avoid the well-known dangers of driving after drinking alcohol. Plaintiffs claim they subjectively "understood it" differently—as a representation that using Uber's service for "getting a ride home late, alone, after drinking" provides a safer "alternative to *any* other option." Opp. 8 (emphasis in

---

[3] As Plaintiffs allege, Uber advocated against driving drunk in partnership with Mothers Against Drunk Driving (MADD). MC ¶ 233; *see* Opp. 5.

1    original). But such an understanding is not objectively reasonable: a general promotional

2    statement about the dangers of drunk driving is "not actionable even if a consumer subjectively

3    believes it means something more specific." *Ahern*, 411 F. Supp. 3d at 562 (quoting *Azoulai v.*

4    *BMW of N. Am. LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017)).

5         Plaintiffs' attempted arguments to the contrary all fail. They contend first that only

6    "outrageous generalized statements" can be deemed non-misleading to reasonable persons,

7    drawing a supposed contrast between Uber's ads and other promotional, descriptive phrases

8    courts have held are non-actionable. Opp. 6. But the non-misleading comparators Plaintiffs quote

9    ("safe," "reliable," "highest quality," etc.) are indistinguishable from Uber's promotions ("Stay

10   safe"; "don't drink and drive"). *See id.* Like those promotional claims, Uber's two ads do not

11   contain any "specific factual message[s]." *Id.* Plaintiffs cite no authority that "vague" or

12   "subjective" statements like Uber's can mislead consumers. MTD 13 (collecting citations).

13        Second, Plaintiffs attempt to analogize to cases where a defendant allegedly withheld

14   "actual knowledge of [an] alleged safety defect." Opp. 6. For example, in the *Social Media* MDL,

15   the Court concluded a "representation of [an app's] negative impact as 'quite small'" may be

16   actionable "when some of [defendant's] own researchers are alleged to have determined that its

17   average net impact on *all* users was negative." *In re Soc. Media Adolescent Addiction/Pers. Inj.*

18   *Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 891 (N.D. Cal. 2024) (emphasis in original); Opp. 6.

19   Putting aside that the representation in question was an empirical claim about the magnitude of

20   the app's impact (i.e., "quite small")—unlike Uber's ads, which merely stated that its app offers a

21   way to reduce the dangers of drunk driving—Plaintiffs allege no comparable knowledge by Uber

22   rendering its Designated Driver ads misleading. Indeed, even with the benefit of years of

23   discovery, Plaintiffs do not dispute the ads' message that Uber-facilitated rides reduce the risks

24   associated with drunk driving.[4]

25   ─────────────────────
     [4] Plaintiffs invoke the outlier decision in *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111
26   (N.D. Cal. 2010), but the case is inapposite. Opp. 5-6. In the context of the food industry,
     "wholesome" is a specific factual claim that "arguably *could* mislead a reasonable consumer" if
27   the "product [contained] (allegedly) dangerous additives." *Id.* at 1125-26 (emphasis in original).
     Neither "stay safe" nor "don't drink and drive" connote any such industry-specific contextual
28

1  Third, Plaintiffs contend that Uber's ads "target a particularly sensitive audience"—people

2  deciding "whether to go out and consume alcohol and how to get home"—and that capacity to

3  mislead "must be measured by [the ads'] impact to th[at] subgroup." Opp. 7. But even assuming

4  this were a distinct "audience" (which Uber disputes), Plaintiffs do not and cannot explain why a

5  "reasonable … ordinary consumer within th[at] target population" would interpret these

6  promotional statements as a representation about safety from sexual assaults. *Sepanossian v. Nat'l*

7  *Ready Mixed Concrete Co.*, 97 Cal. App. 5th 192, 200 (2023).

8  Finally, Plaintiffs argue that the "reasonable consumer" test for actionable

9  misrepresentations applies only to statutory fraud claims and not common-law fraud claims,

10  discounting *Ahern* and other cases as merely "dismissing statutory claims." *E.g.*, Opp. 12.

11  Plaintiffs are incorrect. "[T]he reasonable person standard is well ensconced ... in a variety of

12  legal contexts in which a claim of deception is brought." *Freeman v. Time, Inc.*, 68 F.3d 285, 289

13  (9th Cir. 1995). That includes not only statutory "claims arising under California's CLRA, UCL,

14  and FAL," where plaintiffs must show that "reasonable consumers are likely to be deceived," but

15  also "common law fraud, intentional misrepresentation, and negligent misrepresentation claims,"

16  where the same "standard also applies." *Swetala v. Quten Rsch. Inst., LLC*, 2025 WL 950627, at

17  *3 (E.D. Cal. Mar. 28, 2025) (collecting cases); *see Anderson v. Apple Inc.*, 500 F. Supp. 3d 993,

18  1011 (N.D. Cal. 2020) (applying "reasonable consumer" test to statutory claims and "fraud by

19  concealment under California law"); *Vitt v. Apple Computer, Inc.*, 469 F. App'x 605, 608 (9th

20  Cir. 2012) (rejecting "duty to disclose" defect "based on subjective consumer expectations";

21  noting "common law fraud ... reasoning [applies to] the California consumer protection laws" at

22  issue); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1174 (N.D. Cal. 2019)

23  ("the elements of common law fraud are essentially identical to the statutory claims").

24  b.  **Driver Notifications are not fraudulent omissions**

25  Plaintiffs next contend that Uber failed to disclose "reported prior misconduct, red flags,

26  or failures in Uber's background checks" about its independent drivers. Opp. 11. Again, any

27  _____

28  meaning that could transform them into objectively misleading statements about the risk of sexual assault.

4

1  omission-based fraud claim fails for lack of a duty to disclose. MTD 15. Plaintiffs put forward the

2  same two duty theories: (1) "incomplete representations" and (2) "superior knowledge of material

3  facts." Opp. 12, 14. Neither applies here.

4  **<u>No misleading partial representation</u>.** Plaintiffs' partial-representation theory fails

5  because the challenged representation—Uber's star ratings—were not "likely to deceive

6  reasonable consumers," with or without "additional information." *Ahern*, 411 F. Supp. 3d at 562;

7  Restatement (Second) of Torts § 551, cmt. b (1977).

8  Plaintiffs again argue that the reasonable-consumer standard governs only statutory fraud

9  cases and not "common law fraud cases," Opp. 13, but as just discussed, the authorities foreclose

10  that contention, *see supra* 4, and Plaintiffs cite nothing to the contrary.[5] Their challenge to "star

11  ratings" accordingly fails because no reasonable consumer would interpret star ratings as a

12  representation about a driver's criminal history or a representation that a driver had no prior rider

13  complaints. Plaintiffs also argue that a reasonable consumer would understand "the inclusion of a

14  star rating" not as a composite average of voluntary customer rankings, but rather as a

15  representation "that Uber has conveyed all material facts about the driver's qualifications to

16  provide safe transportation." Opp. 12. But that facially unreasonable understanding of "star

17  ratings" ignores what virtually every participant in the online economy understands "star ratings"

18  are—composites of consumer-assigned satisfaction scores. Plaintiffs try to discount that reality as

19  "extra record" information. Opp. 13-14.[6] But even at the pleading stage, applying the reasonable

---

[5] Plaintiffs' citations to cases articulating the standard for *reliance* are inapposite. Opp. 13. "[M]isrepresentation" and "justifiable reliance" are separate, independently necessary elements of a common law fraud claim, *In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.*, 2023 WL 4670291, at *6 (N.D. Cal. July 20, 2023), even if both have "objective component[s]." Opp. 13 n.13 (contending "materiality (the objective component of reliance) is easily satisfied"). In any event, both misleadingness and common-law materiality are likewise evaluated from the perspective of the "reasonable consumer." *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1176-77 (N.D. Cal. 2019) (same materiality standard, from reasonable consumer's perspective, for UCL, common law, CLRA, and FAL).

[6] Jaylynn Dean's additional allegation (¶ 35) that "Uber communicated to her, through the App, that the driver was a dad and that he had previously worked at a domestic violence shelter for women" makes no difference. Plaintiff alleges that she was subjectively "comforted by these messages; they made her feel safe." *Id.* ¶ 36. But Plaintiff does not allege that she interpreted

5

consumer test means neither the court nor consumers leave "common sense at the door." *Gov't Emps. Ins. Co. v. Super. Ct.*, 79 Cal. App. 4th 95, 102 (2000); *cf. Weiss v. Trader Joe's*, 838 F. App'x 302, 303 (9th Cir. 2021) ("Simply put, a reasonable consumer does not check her common sense at the door of the store."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("context-specific" plausibility analysis "draw[s] on … judicial experience and common sense").[7]

**<u>No duty based on "exclusive knowledge of material facts."</u>** Plaintiffs' alternative argument that Uber had a duty to supplement the "star ratings" based on "exclusive knowledge" of driver histories similarly fails. First, under the Restatement test (which all agree applies), no reasonable consumer would consider a comprehensive pre-ride disclosure of past "passenger complaints" to constitute "facts basic to the transaction." Opp. 14-15; MTD 18 (quoting Restatement (Second) § 551(2)(e)). Second, if Plaintiffs nevertheless mistakenly believed that star ratings encompassed all driver-related information rather than a snapshot of past consumer ratings, Uber had no reason to know of that mistake. Opp. 15; MTD 18. Under Restatement § 551, both of those flaws—(1) objectively unreasonable expectations of all-encompassing information disclosure, and (2) Uber's lack of knowledge of Plaintiffs' unreasonable expectations—foreclose any claim that Uber owed Plaintiffs a duty to disclose.

Plaintiffs' contrary arguments are unpersuasive. Despite their apparent disagreement with certain "colorful," but accurate, articulations of the law, Opp. 14,[8] Plaintiffs agree on the relevant

---

those communications to contain a comprehensive disclosure of that driver's social history, let alone a representation about "previous rider reports of driver misconduct." *Jaylynn Dean*, ¶¶ 41-43. And any such interpretation would be unreasonable: a father and shelter-volunteer might still have received negative rider reviews—no reasonable consumer would assume otherwise.

[7] Plaintiffs do not explain why they think Uber's explanation of star ratings "contradicts Uber's own public statements." Opp. 13. Star ratings *do* provide heuristic information that helps you "[g]et to know your driver" and can "help keep riders and drivers safe." Opp. 12 (quoting MC ¶ 289). But the fact that star ratings based on consumer-assigned scores are relevant to past customer-satisfaction and safety does not mean that reasonable consumers would expect them also to disclose every piece of information Uber has concerning particular independent drivers.

[8] The language Plaintiffs criticize from *Rindlisbacher v. Steinway & Sons, Inc.*, 2019 WL 3767009 (D. Ariz. Aug. 9, 2019), not only appears in the Restatement commentary all agree applies, Opp. 14, but their own Oregon authority also cites it approvingly. *U. S. Nat. Bank of Or. v. Fought*, 630 P.2d 337, 345 n.14 (Or. 1981) (quoting Restatement (Second) § 551, cmt. l). Plaintiffs observe that the courts of "other states at issue" do not recite the comment, Opp. 14, but

test for disclosure-duty: "A fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a 'reasonable consumer' would deem it important in determining how to act in the transaction at issue." MTD at 19 (quoting *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1135 (N.D. Cal. 2013)); Opp. 14 (similar, "reasonable man would attach importance"). Plaintiffs assert that reasonable consumers would expect "allegations of improper comments [and] sexual assault"—even if unverified—and "criminal history" reports to be disclosed alongside star ratings. Opp. 15. But Plaintiffs offer no basis for that expectation, much less for why it would be objectively reasonable.

The implications of such an expectation underscore its unreasonableness: Must Uber disclose alongside the star ratings every instance in which a previous rider reported, "idk just made me uncomfortable," *A.R. 1*, ¶ 28; *Jaylynn Dean*, ¶ 25 ("made me uncomfortable"); or complained about how the car "smelled"; or perceived a driver as "very rude" and asking "a ton of questions," *J.E.*, ¶ 16? To require Uber to publish every such rider complaint as a matter of course, regardless of whether it could be proven true, would be unworkable and potentially risk claims for defamation. *Contra* Opp. 16; *Rossitto v. Safeway, Inc.*, 2014 WL 1047729, at *9 (N.D. Cal. Mar. 17, 2014) (defamation elements include falsity, publication, defamatory nature).

Likewise, requiring Uber to publish criminal background checks to its users would violate FCRA. MTD 19-20. Plaintiffs assert that FCRA § 1681b(a)'s permissible-purpose limitation on disclosures applies only to "consumer reporting agenc[ies]," Opp. 16 & n.18, but that ignores § 1681b(f), which restricts ***any*** "person" from "us[ing] or obtain[ing] a consumer report for any purpose unless ... obtained for a purpose for which the consumer report is authorized to be furnished under [§ 1681b(a)]." *See Hennessey v. Pendrick Cap. Partners LLC*, 2025 WL 671861, at *3 (W.D. Wash. Mar. 3, 2025) ("FCRA prohibits not only credit reporting agencies from furnishing credit reports absent a permissible purpose; it also prohibits third parties from using or

---

several federal courts of appeal do so approvingly as well. *See Olson v. Major League Baseball*, 29 F.4th 59, 81 (2d Cir. 2022) ("Basic facts go beyond 'those that are simply material.'" (citation omitted)); *Select Specialty Hosp. - Sioux Falls, Inc. v. Brentwood Hutterian, Brethren, Inc.*, 81 F.4th 793, 800 (8th Cir. 2023); *Leprino Foods Co. v. DCI, Inc.*, 727 F. App'x 464, 477 (10th Cir. 2018); *Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 772 (6th Cir. 2009).

obtaining consumer reports without an enumerated purpose."); *see also Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 487, 499 (9th Cir. 2019) (Plaintiff adequately alleged FCRA violation against third party where "credit report was obtained for a purpose not authorized by the statute"). Disclosing criminal background checks to riders would not comply with any permissible or enumerated purpose under FCRA. This federal prohibition only underscores why no reasonable person would expect a ride-facilitation service to disclose independent drivers' criminal background reports.

Plaintiffs also do not dispute that Uber lacked notice of their idiosyncratic interpretation of star ratings. Opp. 15. Instead, they contend "there is no such [notice] requirement." *Id.* But that requirement is clearly stated in the Restatement provision that Plaintiffs agree applies: a duty to disclose "facts basic to the transaction" arises only "if [Uber] ***knows*** that the other [party] is about to enter into it under a ***mistake*** as to them," regardless of whether one party holds "exclusive knowledge," Opp. 14; Restatement (Second) § 551(e) (emphasis added).[9] Plaintiffs themselves quote Restatement commentary negating any disclosure duty when "the defendant has *no* reason to think that the plaintiff is acting under a misapprehension." Opp. 15 n.16 (quoting Restatement § 551, cmt. k) (emphasis in original).[10] And the reason for the notice requirement is both obvious and compelling: imposing a categorical legal duty to disclose facts (even if material) where defendant had no reason to know of plaintiffs' mistaken belief about them would risk "endless litigation" over "every type of undisclosed fact" that "plaintiffs could argue would have altered their decision." *Olson*, 29 F.4th at 82 (affirming dismissal under, *inter alia*, CA law).

2.    *Plaintiffs fail to allege reliance on any representation*

**Driver Notifications.** Plaintiffs' Driver Notification allegations also fail for lack of

---

[9] Plaintiffs suggest that a different rule governs if the claim implicates "the plaintiff's interest in the security of his person," but neither the case they cite nor the Restatement commentary it discusses actually says that. *Fought*, 630 P.2d at 345 n.14 (Or. 1981) (noting actions for "deceit" generally remedy "pecuniary loss").

[10] Plaintiffs attempt to equate § 551's notice requirement to a materiality requirement, Opp. 15 n.16, but that conflates two distinct concepts. As explained above, materiality is assessed from the plaintiff's perspective, and requires that reasonable consumers would deem a particular fact important. Notice of misapprehension of fact, assessed from the defendant's perspective, has nothing to do with materiality. *Contra* Opp. 15 n.16.

8

1    reliance, as no Plaintiffs allege they ever "actually saw" the star ratings of the independent drivers

2    whom they accuse of assault. *See Tabler v. Panera LLC*, 2020 WL 3544988, at *7 (N.D. Cal.

3    June 30, 2020) (dismissing complaint where "unclear as to which specific advertisements Plaintiff

4    actually saw"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 n.7 (N.D. Cal. 2022)

5    (Breyer, J.) (Plaintiffs "could not have relied on [alleged] 'partial omission'" from Policy that

6    "Plaintiffs do not allege that they ever read…"). Merely pleading at "'a speculative level'" that

7    Plaintiffs must have seen the ratings because Uber "makes it nearly impossible not to," Opp. 17,

8    does not satisfy Rules 8 and 9(b), *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir.

9    2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Davidson v. Sprout Foods,*

10   *Inc.*, 106 F.4th 842, 853 (9th Cir. 2024) (speculative fraud allegations failed Rule 9(b)),

11   regardless of whether some Plaintiffs allege they previously "checked the App" or previously saw

12   different information before getting in different rides (or even different information about the

13   driver now accused), Opp. 16-17 & n.19.[11]

14        **<u>Designated Driver Ads.</u>** Plaintiffs' alleged reliance on the Designated Driver Ads

15   likewise fails because relying on those promotional statements as a categorical guarantee of safety

16   from ***any risks*** (rather than just drunk-driving risks) would be objectively unjustifiable.

17        Plaintiffs acknowledge that reliance "has an objective component" of reasonableness, in

18   "light of [plaintiffs'] *own* knowledge and experience" (unlike misleadingness, *supra* 2-3). Opp. 9-

19   10 (quoting *Enovative Grp., Inc. v. Advanced Conservation Tech. Distribut., Inc.*, 2014 WL

20   13130386, at *3 (C.D. Cal. Nov. 12, 2014)). But unless some particular vulnerability rendered

21   these individual Plaintiffs "[e]xceptionally gullible or ignorant," reliance still fails where "persons

22   of normal intelligence would not have been misled." *Id.* (quoting *Boeken v. Philip Morris, Inc.*,

23   26 Cal. Rptr. 3d 638, 658 (Cal. App. 2005)). That normal-intelligence standard governs here.

24   Plaintiffs allege no unusual susceptibility to unreasonably misinterpreting Uber's promotions.

25

---

[11] Plaintiffs fail to distinguish *Friedman v. Mercedes Benz USA LLC*, 2013 WL 12086788 (C.D.
26   Cal. Apr. 9, 2013), where plaintiff could not rely on an advertisement "that [he] never saw," Opp.
17 n.20. Plaintiffs inability here to "recall looking at the driver information in question" does not
27   excuse their obligations to plead facts plausibly supporting reliance. Opp. 16. Nor do Plaintiffs
explain why they think plaintiffs can "rely" on statements they never saw in fraud cases, but not
28   in warranty cases, *see Moncada v. Allstate Ins. Co.*, 471 F. Supp. 2d 987, 997 (N.D. Cal. 2006).

Claiming that they belong to a "sensitive audience" of those deciding to "to go out and consume alcohol" who will eventually need to decide "how to get home" does not plausibly support a vulnerability below "normal intelligence," Opp. 7, 9-10, and no cited case supports the idea that social drinkers represent a uniquely vulnerable, sensitive population.

Plaintiffs also observe that "whether reliance is justified is generally a question of fact," Opp. 13; but like any other fact question, courts resolve reliance as a matter of law where, as here, "reasonable minds can come to only one conclusion." *Enovative*, 2014 WL 13130386, at *3; *Guido v. Koopman*, 1 Cal. App. 4th 837, 843 (1991) (same).[12]

### 3.    *Plaintiffs fail to allege intent to defraud via omission*

Plaintiffs' fraud claims also fail for lack of any allegation that Uber **intended** to defraud them by failing to disclose either (a) information about independent drivers; or (b) the potential risks of "riding intoxicated" rather than "staying home, drinking less, finding alternative transportation, etc." Opp. 11. Plaintiffs argue that they need only allege intent to "influence [plaintiffs] to enter into … transactions," i.e., intent to "induce reliance." Opp. 17-18. But pleading "intent 'to induce reliance,'" while necessary, is not enough. *EFK Invs., LLC v. Peerless Ins. Co.*, 2014 WL 4802920, at *7 (N.D. Cal. Sept. 26, 2014) ("claim for fraud or misrepresentation" requires "'intent to defraud,' which **includes** an intent 'to induce reliance'" (emphasis added; citation omitted)). "[I]ntent to defraud" requires plausible allegations of "intent to induce reliance on a knowing misrepresentation or omission," which "w[as] intentional and ***for the purpose of defrauding and deceiving*** plaintiffs." *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1047 (S.D. Cal. 2018) (emphasis added; citation omitted). Without factual allegations supporting an inference that Uber intended the alleged omissions to deceive them, Plaintiffs "cannot plausibly allege that [Uber] knowingly and intentionally intended to defraud them." *Id.* (dismissing for lack of intent). Plaintiffs assert that Uber published anti-drunk-driving promotions and provided star ratings with intent to "influence [plaintiffs] to enter into …

---

[12] Again, Plaintiffs' suggestion that "statutory-fraud" cases impose some higher reliance standard lacks basis in law. *See Enovative*, 2014 WL 13130386, at *3 (common-law case); *Koopman*, 1 Cal. App. 4th at 844 (rejecting common-law fraudulent misrepresentation claim).

transactions," Opp. 18 (alterations in original). But Plaintiffs do not and cannot plausibly allege that Uber omitted information from those communications with intent to defraud them.[13] That independently requires dismissal.

**B.    Plaintiffs Fail To Remedy Deficiencies In Their Product-Liability Claims**

1.    _Product-liability claims challenging services must fail_

Plaintiffs' "Safe Ride Matching" and "Gender Matching" allegations fail to state a product-liability claim because they challenge the quintessential service of matching users with specific independent drivers, not the App _qua_ "product." PTO 17 at 46; MTD 24-26.[14] The Court has already held that "[f]ailing to appropriately monitor rides to detect known patter[n]s of sexual assault, … including by using Uber's GPS technology, is … a question of Uber's level of care with respect to its services, not with the design or functionality of the app." PTO 17 at 46 (citation omitted).[15] Asserting that "monitoring is key" to that holding, Plaintiffs argue that "Safe Ride Matching" is not a service because it does not require employees to "monitor rides" to detect "patterns of sexual assault" but would instead "automatically" use an "algorithm" to "block[] certain rider-driver pairings." Opp. 20-21. But Plaintiffs offer no argument for why service status should turn on whether an algorithm or a human does the monitoring. No less than human-performed risk monitoring, an "'algorithm' or 'formula' using various factors to estimate a [particular] risk" is "**_not [a] 'product[.]'_**" _Rodgers v. Christie_, 795 F. App'x 878, 880 (3d Cir. 2020) (emphasis added); _see also D'Ambrosio v. Rajala_, 2025 WL 1383286, at *12 (N.D. Ill. May 13, 2025) (dismissing product-liability allegations challenging "problems with Meta's app and algorithm").[16] That Uber "**_uses an algorithm_** to match riders and drivers for trips based on

---

[13] As explained, _see supra_ 2-4, Uber had no reason to think Plaintiffs expected Uber to explain the general risks of going out, drinking alcohol, and traveling home alone.

[14] Uber never "conced[ed]" that "Ride Recording," "GPS Route Discrepancy Alerts," or "Age-Gating" are product defects. _Contra_ Opp. 20; _see_ Fed. R. Civ. P. 12 (h)(2).

[15] The following Complaints allege a "Safe Ride Matching" defect: _A.R. 1_, _A.R. 2_, _Jane Doe QLF 0001_, _T.L._, _WHB 1898_, _B.L._, _LCHB128_, _Jaylynn Dean_, and _WHB 1876_.

[16] Plaintiffs rely on a Section 230 case, _A.M. v. Omegle_, for the proposition that "defects in [a] matching algorithm" can support product liability. Opp. 21 & n.25. Courts have repeatedly rejected that outlier decision, which is likely no longer good law after _Doe v. Grindr Inc. See_ 709 F. Supp. 3d 1047, 1057 (C.D. Cal. 2023) (disagreeing with _Omegle_), _aff'd_, 128 F.4th 1148 (9th Cir. 2025).

1    proximity," Opp. 21 (emphasis added), so as to "tailor the user's experience to the individual

2    consumer," does not transform Uber's core ridesharing service into a product. *See Social Media*

3    *Cases*, 2023 WL 6847378, at *16 (Cal. Super. Oct. 13, 2023).[17] California's and other states'

4    courts have agreed. *See, e.g.*, *In re Uber Rideshare Cases*, No. CJC-21-005188 (Super. Ct., San

5    Fran. Cnty., June 22, 2023); *Ramos v. Uber Techs., Inc. et al.*, No. 22STCV33007 (Super. Ct.,

6    Los Angeles Cnty., June 1, 2023); *Luna v. Uber Techs., Inc., et al.*, No. 22STCV10806 (Super.

7    Ct., Los Angeles Cnty., Sept. 27, 2022); *see also* Dkt. 2791-1, at 16-17, App'x D.1.[18]

8         Plaintiffs' "Gender Matching" allegations fail to state a product-liability claim for the

9    same reasons.[19] MTD 25. Plaintiffs contend that even if algorithmic matching is a service, the

10   "lack of an 'option' in the app 'to allow female passengers … to be matched only with female

11   drivers'" addresses "a 'functionality of the app.'" Opp. 21-22 (citations omitted). But whether

12   inside or outside of the App, that "functionality" relates to Uber's ***service*** of pairing riders with

13   independent drivers (here, female independent drivers for female riders). As the Court has already

14   held, "just because a user's interactions with Uber and Uber drivers are facilitated by the Uber

15   app" does not mean "every injury arising out of those interactions can be traced to a design defect

16   in the Uber app." PTO 17 at 46.[20]

17              2.    *Failure to allege causation*

18        A.G., K.E., A.R. 2, and Jaylynn Dean's "App-Based Ride Recording" allegations fail for

19   —————————————————

20   [17] Plaintiffs' analogy to a tangible "real-world" shutoff valve fails—they are not challenging a
     product that cuts off activity beyond a certain safety threshold (e.g., based on temperature); the

21   better analogy is to a dispatcher who sends drivers to riders based on convenience, thereby
     performing a service.

22   [18] Plaintiffs criticize these authorities as inconsistent with the Court's conclusion that the Uber
     App is a product. Dkt 3002-1 at 12-13, App'x B.6 (citing PTO 17 at 45). "But it does not follow

23   from th[o]se conclusions that strict liability applies to everything that might go wrong in relation
     to the use of the app," as this Court also previously observed. PTO 17 at 45. And the authorities

24   rejecting product liability based on allegations concerning Uber's App weigh persuasively against

25   imposing liability for the service-related defects at issue in this motion.
     [19] The following allege a "Gender Matching" defect: A.R. 2, Jane Doe QLF 0001, B.L., Jaylynn

26   Dean, K.E., T.L., WHB 318, A.R. 1, C.L., D.J., J.E., LCHB128, WHB 407, WHB 1898, and
     WHB 1486.

27   [20] When PTO 17 rejected Plaintiffs' inadequate causation allegations, the Court did not hold that
     "gender matching" represented a product defect. *Contra* Opp. 25; PTO 17 at 47-48 (gender-

28   matching claim would lack causation for hypothetical "same gender" assault).

lack of causation because they do not plausibly allege that in-app recording would have prevented their alleged assaults, all of which allegedly occurred after the rides finished or the App was turned off. MTD 26-27. Plaintiffs point to the allegation that the App "was not designed to trigger automatic video recording of rides *and the time period immediately around them*" (Opp. 23). That allegation, however, is not only "too vague to survive a 12(b)(6) motion to dismiss," *Snider v. Wells Fargo Bank, N.A.*, 2019 WL 1473459, at *9 (N.D. Cal. Feb. 12, 2019), but also fails to causally connect any Plaintiff's injuries to the absence of recording. Prior to any assault: (1) A.G.'s "driver ***turned off the App***," asked Plaintiff for directions, and drove her "the rest of the way" home, *A.G.*, ¶¶ 11-16 (emphasis added); (2) K.E. and her driver left the car and went inside Plaintiff's home, *K.E.*, ¶¶ 14-16; (3) Jaylynn Dean's driver marked the trip as complete and committed an assault within "the next twenty minutes," *Jaylynn Dean*, ¶¶ 13-20; and (4) A.R. 2's driver "indicate[d] that the ride had ended" and "drove about 3 or 4 blocks." *A.R. 2*, ¶¶ 9-11. Plaintiffs allege no facts supporting an inference that recording of the period "immediately around" rides would have prevented those alleged incidents.

3.    <em>Plaintiffs inadequately allege negligent design and breach of warranty</em>

WHB 318, WHB 832, D.J., WHB 1898, C.L., and J.E purport to plead claims under the subheadings "Breach of Implied Warranty" and/or "Negligent Design," but allege nothing more than conclusory recitals of the legal elements of those claims. MTD 28. Plaintiffs say that the missing factual allegations appear in some combination of: (i) the Master Complaint's previously dismissed "H" claim for product liability, (ii) its "B" claim for negligence, and (iii) the "Product Defects" sections of their amended complaints. Opp. 24. But the mere existence of the Master Complaint does not allow Plaintiffs to plead legal conclusions, nor "excuse Plaintiffs from the obligation to plead the facts that are necessary…." PTO 17 at 9. And if Plaintiffs intended to incorporate their "Product Defects" allegations into their alternative "[State]-Specific Common Law Claims," *e.g.*, *C.L.*, ¶¶ 34-37, then they should have pleaded incorporation by reference.

**C.    Plaintiffs Fail To State A Claim For Vicarious Liability**

1.    <em>Plaintiffs fail to allege torts within the scope of purported employment</em>

<u>**Oregon law**</u>. Plaintiffs do not dispute that, under Oregon law, intentional torts such as

13

1    sexual assault fall outside the scope of purported employment unless conduct "within the scope of

2    employment" was a "necessary precursor" to the intentional tort, and the tort "was 'a **direct**

3    **outgrowth** of … conduct that was within the scope of employment.'" *Doe v. Holy See*, 557 F.3d

4    1066, 1083 (9th Cir. 2009) (emphasis added; citation and alterations omitted)); Opp. 25-26 (citing

5    same). Nor do they appear to dispute that intentional torts fall outside the scope where the

6    purported employment merely "brought the tortfeasor and the victim together in time and place."

7    *Fearing v. Bucher*, 977 P.2d 1163, 1168 (Or. 1999). Those concessions preclude Plaintiffs'

8    argument that vicarious liability attaches because an independent driver's "responsibilities

9    included ensuring the safety of and exercising authority over an intoxicated woman by

10   transporting her in a confined space." Opp. 26 (citing MC ¶ 424).

11           Plaintiffs assert that under *Schmidt v. Archdiocese of Portland in Oregon*, 234 P.3d 990

12   (Or. Ct. App. 2010), a "trust relationship" or a "pattern of extended grooming over a lengthy

13   period" is not necessary for vicarious liability. Opp. 26-27. But even assuming *Schmidt* correctly

14   applies *Fearing*,[21] its reasoning only confirms why Plaintiffs' allegations do not satisfy Oregon's

15   "necessary precursor" and "direct outgrowth" requirements. In *Schmidt*, a priest who was a

16   proctor with "authority over" a freshman seminarian "summoned plaintiff to his office," "began

17   questioning plaintiff as to what he knew about sexuality and reproduction," "asked plaintiff

18   whether he had ever masturbated," and began masturbating. 234 P.3d at 991-93. The Oregon

19   Court of Appeals found a fact question on scope of employment **not** because the priest's job

20   brought about the face-to-face encounter but because: (1) "the act of counseling plaintiff on the

21   subjects of sexuality and reproduction was within the scope of [the priest's] authority" such that

22   the priest could have been "partially motivated, at least initially, to fulfill those employment

23   duties," and (2) a jury could find that the "the alleged abusive conduct resulted from the

24   ―――――――――――――――

25   [21] The Oregon Court of Appeals' observation is not "controlling authority." Opp. 4 (quoting
     *Camenzind v. Cal. Expo. & State Fair*, 84 F.4th 1102, 1114 (9th Cir. 2023)). And cases applying
26   *Schmidt* are likewise limited to close trust relationships or grooming. *See Doe 130 v. Archdiocese
     of Portland in Oregon*, 2010 WL 1579746, at *12 (D. Or. Oct. 12, 2010) (priest-parishioner);
27   *Doe ex rel. Christina H. v. Medford Sch. Dist. 549C*, 2011 WL 1002166, at *8 (D. Or. Feb. 22,
     2011), *report and recommendation adopted*, 2011 WL 976463 (D. Or. Mar. 18, 2011) (teacher-
28   student).

employment-related conduct." *Id.* at 933.

A.G. alleges nothing of the sort here. Although she maintains that her independent "driver *was* in a 'position of authority'" over her (Opp. 27), she alleges no facts supporting that claim. The Uber-facilitated driver-rider relationship is an arms' length business transaction. Her independent driver "was not hired to cultivate an intimate relationship with [her], and an intimate relationship with [her] would not further the interests of [Uber]." *Branford v. Washington Cnty., Or.*, 2019 WL 1957951, at *22 (D. Or. May 2, 2019). On the contrary, the independent driver broke any connection to Uber's interests by allegedly "turn[ing] off the app," telling "Plaintiff he would take her the rest of the way home free of charge," and proceeding to commit a tort not in any way motivated by Uber's interests, in violation of the driver's agreement with Uber and Uber's Community Guidelines for the platform. *A.G.*, ¶ 12. Treating conduct so directly at odds with Uber's interests as a "direct outgrowth" of an independent driver's responsibilities would nullify the requirement that the "employee must have been motivated, at least partially, by a purpose to serve the employer," contradicting *Fearing's* teaching that it is not enough for an employment relationship to "g[i]ve the tortfeasor the 'opportunity' to commit the assaults." 977 P.2d at 1168.

**North Carolina Law.** Plaintiffs WHB 318 and WHB 832 have confirmed that they "did not plead" "respondeat superior claims in North Carolina," or any other claim styled as "vicarious liability," so the Court need not address vicarious liability on a respondeat superior, agency, or ratification theory under North Carolina law. Opp. 2, 27.[22]

2.    *Failure to allege ratification*

A.R. 2, C.L. and WHB 1898's ratification claims fail because they do not plausibly allege that "after being informed of the [purported] employee's actions," Uber failed to "fully investigate" or "punish[] or discharg[e] the [purported] employee" such that it was "deliberately indifferent to [plaintiffs'] complaints." *Garcia ex rel. Martin v. Clovis Unified Sch. Dist.*, 627 F.

---

[22] WHB 318's assault occurred during a ride from South Carolina to North Carolina. Because the alleged assault occurred after "the ride had crossed into North Carolina," *WHB 318*, ¶ 9, and the vicarious-liability and scope of employment doctrines of the two states do not in any event differ, North Carolina law should govern.

Supp. 2d 1187, 1202-03 (E.D. Cal. 2009) (actions negating "deliberate indifference … show a lack of ratification") (citations omitted); *see* Opp. 30 (quoting *Garcia*). C.L. does not allege a deliberate failure to investigate, but rather concedes Uber promptly investigated and decided against deactivating the independent driver after "careful review." Opp. 31; *C.L.*, ¶¶ 30-31. With no allegation that Uber's investigation was inadequate, her ratification claim boils down to the contention that Uber was obliged to deactivate the independent driver to avoid ratification, which Virginia, Maryland, and California law uniformly reject. *A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 479 & n.20 (Va. 2019); *Tynes v. Shoney's Inc.*, 867 F. Supp. 330, 333 n.2 (D. Md. 1994); *Garcia*, 627 F. Supp. 2d at 1202.

A.R. 2 relies exclusively on the allegation that Uber "did not deactivate the driver after a lawsuit was filed," contending her lawsuit is particularly credible because of the independent driver's background and a prior complaint against him. Opp. 29, 31. But the law does not and should not impose an immediate termination requirement to avoid ratification. *See supra* 15-16. A.R. 2 does not allege that Uber delayed in investigating her Complaint or that its investigation was inadequate. She therefore fails to allege deliberate indifference. Finally, WHB 1898 faults Uber for failing to deactivate her driver after she "reported the incident to Uber," without specifying what she reported or how Uber responded. Opp. 31; *WHB 1898*, ¶ 26. She cannot cure that pleading failure by observing that "internal communications about each incident are in Uber's exclusive possession." Opp. 31. WHB 1898 identifies no reason why she could not describe her own report to Uber. Her failure to allege any facts about that report precludes her from pleading that Uber's response was deliberately indifferent.

**D.    WHB 1876, 1898, 407, And Jane Roe CL 68 Fail To Allege Any Tort Claims**

Plaintiffs concede that WHB 1876, 1898, and 407 allege exclusively nonphysical harm. Those three Plaintiffs have based their claims against Uber on the alleged "aggressive sexual solicitations" of independent drivers who "did not touch them." Opp. 31. The lack of alleged physical harm forecloses these Plaintiffs' negligence and product-liability claims against Uber. MTD at 35-36 (physical harm required for negligence and product liability).

Plaintiffs respond that "these are intentional tort cases," and "[n]one of the three states at

16

1    issue require physical impact or physical harm stemming from intentional torts." Opp. 31-32. But

2    Plaintiffs do not allege intentional-tort claims **against Uber** and therefore cannot sustain their

3    negligence and product-liability claims in the absence of physical injuries.[23]

4               1.    *Negligence and product liability fail absent physical harm*

5         Under the laws of Georgia (WHB 407), Massachusetts (WHB 1898), and Illinois (WHB

6    1876), claims for negligence or product liability require physical harm. MTD 36-37.

7         **Georgia law.** Plaintiffs contend that "emotional distress" can satisfy the "injury to his

8    person" requirement for product-liability claims under Georgia law. Opp. 33. That is incorrect:

9    "In Georgia, 'the impact which will support a claim for damages for emotional distress must

10   result in a physical injury.'" *Bishop v. Farhat*, 489 S.E.2d 323, 325-26 (Ga. App. 1997)

11   (affirming dismissal of negligent infliction of emotional distress claim in "complex products

12   liability action"); *see Malibu Boats, LLC v. Batchelder*, 819 S.E.2d 315, 318 (Ga. App. 2018) (in

13   product-liability action, lack of "physical impact [that] causes physical injury to the plaintiff …

14   will preclude recovery" (quoting *Lee v. State Farm Mut. Ins. Co.*, 533 S.E.2d 82 (Ga. 2000)). And

15   Plaintiffs' contention that Georgia requires no physical impact for **intentional torts** is irrelevant to

16   their negligence and product-liability claims, as no Plaintiff alleges that **Uber** committed an

17   intentional tort. Opp. 32-33.[24]

18        Plaintiffs request an exemption from the physical-impact requirement for negligence

19   claims involving "physical confinement," but that request lacks any grounding in Georgia law,

20   including in their sole cited case. Opp. 33 (citing *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d

21   1290, 1300 (N.D. Ga. 2005) (precedent "underscores the Georgia Supreme Court's strong

22   inclination to retain the impact rule as a 'bright line' test for recovery")). In the absence of

---

[23] Plaintiffs also contend Jane Roe CL 68 alleged physical harm, pointing to her "Plaintiff Fact Sheet" for the specific allegations. Yet they acknowledge that a "PFS is of course not a complaint," Opp. 40, and "allegations in a [PFS], however, cannot rectify insufficiencies in a complaint" for the same reasons allegations in a brief cannot suffice. *Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1180 n.7 (N.D. Cal. 2021).

[24] Effective July 1, 2025, Georgia law bars treating an "internet network used by a ride share network service … as a product," and bars "vicarious liability or product liability" claims against a "ride share network service" that meets certain regulatory requirements (absent negligence or criminal misconduct by the [service]"). H.B. 339, 158th Gen. Assemb., Reg. Sess. (Ga. 2025).

17

physical impact, Georgia law requires dismissal of all WHB 407's negligence and product claims against Uber, leaving only her common-carrier claim.[25]

**Massachusetts law**. Plaintiffs assert that WHB 1898's negligence and product-liability claims survive because Massachusetts "abandoned" the "so called 'impact rule.'" Opp. 33 (quoting *Dziokonski v. Babineau*, 380 N.E.2d 1295, 1296 (Mass. 1978)). But as the Supreme Judicial Court has clarified, "No Massachusetts case," including *Dziokonski*, "has yet concluded that a plaintiff who alleges that she was a direct victim of a defendant's negligent conduct, but who does not allege that she has suffered resulting physical harm, can recover for emotional distress." *Payton v. Abbott Labs*, 437 N.E.2d 171, 174 (Mass. 1982). Later cases reaffirm that a plaintiff seeking recovery for emotional distress must still "prove . . . physical harm manifested by objective symptomatology." *Rodriguez v. Cambridge Hous. Auth.*, 823 N.E.2d 1249, 1253 (Mass. 2005) (quotation marks and citation omitted). The Supreme Judicial Court thus "did not eliminate the physical harm requirement," but merely recognized that physical harm may encompass symptoms such as "posttraumatic stress disorder, tension headaches, sleeplessness, [and] gastrointestinal distress" (among others). *Id.* But an emotional-distress plaintiff still "must do more than allege 'mere upset, dismay, humiliation, grief and anger.'" *Id.* (quoting *Sullivan v. Boston Gas Co.*, 605 N.E.2d 805 (Mass. 1993)). WHB 1898 pleads only that she was "intimidated," *WHB 1898*, ¶ 19, and alleges no "physical harm manifested by objective symptomatology" as required for negligence. *Rodriguez*, 823 N.E.2d at 1253 (citation omitted). And because WHB 1898's vicarious liability claim fails for reasons already explained, *infra* at 19-20, the Court should dismiss her Complaint in its entirety.

**Illinois law**. WHB 1876 concedes her claim for Illinois product-liability fails for lack of physical harm, Opp. 40, but asks the Court to "predict" that Illinois would not apply the impact rule to "emotional-distress claims" for negligence. Opp. 37. Decades of Illinois law foreclose that request. "In [Illinois] recovery for negligently caused emotional distress suffered by the direct

---

[25] In limiting its physical-injury arguments to negligence and product liability, Uber does not waive and fully reserves the argument that emotional injuries do not suffice to state a common carrier claim under Georgia law. *See* Dkt. 1932 (stipulating to refrain from Rule 12 motion addressing Georgia common carrier claim).

1    victim … has been consistently denied unless it was accompanied by a contemporaneous physical

2    injury to or impact on the plaintiff." *Rickey v. Chicago Transit Auth.*, 457 N.E.2d 1, 2 (Ill. 1983).

3    Plaintiffs get no further contending that the physical-impact rule does not apply to injuries that

4    "arise from the driver's intentional torts that Uber negligently caused." Opp. 37. Plaintiffs

5    concede that "Uber is *not* vicariously liable" for the conduct of WHB 1876's independent driver.

6    Opp. 38 (emphasis added). Whether the independent driver's conduct amounted to "Assault,"

7    "IIED," or "False Imprisonment" is legally irrelevant to whether WHB 1876 adequately alleges

8    *negligence against Uber*.[26] WHB 1876's failure to allege physical injury caused by Uber or any

9    basis for vicarious liability requires dismissal of her claims against Uber in their entirety.

10                    2.    *Failure to allege underlying tortious conduct by driver*

11            WHB 1898's vicarious-liability claim fails because the independent driver's alleged

12    conduct—inappropriate looks, comments, and behavior after the ride, which Plaintiffs term

13    "aggressive sexual solicitations"—cannot support underlying tort claims. MTD 37-38.[27]

14            **IIED.** Whether or not "words can constitute IIED," the independent driver's alleged

15    looks, questions, and insinuations do not rise above "mere insults, threats, or annoyances."

16    *Contra* Opp. 35-36; *see WHB 1876*, ¶¶ 13-19. Without quoting the pleading, Plaintiffs describe

17    the driver's conduct as "aggressive propositioning … in a confined space under the driver's

18    control and accompanied by the implied threat that the driver would assault Plaintiff." Opp. 35.

19    Unwelcome sexual propositioning, though obviously objectionable, is not actionable as IIED.[28]

20    _____

21    [26] That also distinguishes Plaintiffs' cited cases involving claimed "emotional distress damages"
      where "a tort has already been committed" *by the defendant* "against the plaintiffs." *Cochran v.*
22    *Securitas Sec. Servs. USA, Inc.*, 93 N.E.3d 493, 502 (Ill. 2017) (tortious interference with
      remains) (quotations omitted); *Clark v. Children's Mem'l Hosp.*, 955 N.E.2d 1065, 1087 (Ill.
23    2011) (wrongful birth) (both cited by Opp. 38). Where defendant has not committed "another tort
      such as a wrongful-birth claim, tortious interference with a deceased's remains claim, defamation
24    claim, conversion claim, or misappropriation of identity claim," lack of physical impact bars
      negligence liability. *Jerman v. Woolsey Operating Co., LLC*, 2021 IL App (5th) 210007-U, ¶ 32.
25    [27] The lack of an underlying tort renders irrelevant Plaintiffs' discussion of Massachusetts
      common-carrier doctrine. Opp. at 34-35. Plaintiffs' discussion of Georgia law is also irrelevant,
26    Opp. 32-33, because no Plaintiff pleads Georgia vicarious liability and the parties stipulated
      against dismissal of Georgia common-carrier claims at the pleadings stage. MTD 29 n.49.
27    [28] Even if it were, Plaintiffs' descriptive gloss does not match the Complaint, which "may not be
      amended by the brief[] in opposition to a motion to dismiss." *Cork*, 534 F. Supp. 3d at 1180 n.8.
28

                                            19

*See, e.g.*, *Freeman v. Holy Cross Hosp.*, 2011 WL 1559208, at *2 (N.D. Ill. Apr. 25, 2011) (No IIED for "comments of a sexual nature, ask[ing] her out on dates, sen[ding] sexually suggestive and explicit links …, attempt[ing] to grab her buttocks, and rub[bing] his hands on her thigh"; collecting cases).

**Assault**. Plaintiffs argue that "words may create liability for assault," Opp. 35, if "uttered 'together with other acts or circumstances … [that] put the other in reasonable apprehension of an imminent harmful or offensive contact with his person,'" when "viewed objectively." *Ginsberg v. Blacker*, 852 N.E.2d 679, 683 n.7 (Mass. App. 2006) (quoting Restatement (Second) § 31 (1965) (husband with "violent streak" was "totally out of control, … c[oming] right up into [plaintiff's] face, screaming … so close to her that she could feel his spit" (quotation marks and alterations omitted)) (quoted by Opp. 35). But WHB 1898's allegations do not remotely meet this standard; she pleads no facts suggesting the independent driver's alleged innuendos and "look[s]" were "menacing." *Contra* Opp. 35.

**False imprisonment**. Under Massachusetts law, "[a] plaintiff who relinquishes his right to move about freely as the only available alternative to relinquishment of another right, such as the right to an unsullied reputation, is restrained, or imprisoned," but a plaintiff who objectively retains a "free choice" to leave is "not imprisoned" even if she subjectively believes otherwise. *Foley v. Polaroid Corp.*, 508 N.E.2d 72, 77 (Mass. 1987) (quoted by Opp. 37). WHB 1898 never alleges that she requested or attempted to leave the car or cancel the trip, and does not allege she was "prevented by acts of physical force, threats or otherwise from leaving the [car] at any time." *Sweeney v. F.W. Woolworth Co.*, 142 N.E. 50, 51 (Mass. 1924). Even if the driver's comments "intimidated" or subjectively "terrified" her, WHB 1898, ¶ 19; Opp. 35, 37 (requesting leave to amend), that does not mean his "words or conduct … induced a reasonable apprehension" of restraint on freedom to move. *Sweeney*, 142 N.E. at 51.

III.    **CONCLUSION**

For the foregoing reasons, Uber respectfully requests that the Court dismiss Plaintiffs' claims, with prejudice, as set forth in "Appendix A – Requested Relief," (Dkt. 2791-1 at 1-3).

DEFENDANTS' REPLY ISO MTD—No. 3:23-md-03084-CRB

1    Dated: June 9, 2025                              **O'MELVENY AND MYERS LLP**

2

3                                                     By:    _/s/ Sabrina H. Strong_

4                                                            Sabrina H. Strong

5                                                     **KIRKLAND & ELLIS LLP**
                                                      LAURA VARTAIN
6                                                     ALLISON M. BROWN
                                                      JESSICA DAVIDSON
7

8                                                     **O'MELVENY & MYERS LLP**
                                                      SABRINA H. STRONG
9                                                     JONATHAN SCHNELLER

10                                                    **SHOOK, HARDY & BACON, LLP**
                                                      PATRICK LEO OOT, JR.
11                                                    ALYCIA A. DEGEN
                                                      MICHAEL B. SHORTNACY
12                                                    CHRISTOPHER V. COTTON

13
                                                      *Counsel for Defendants*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY ISO MTD—No. 3:23-md-03084-CRB