*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **JOINT STATUS REPORT FOR JUNE 26, 2025 DISCOVERY STATUS CONFERENCE** |
| This Document Relates to: | Judge:      Hon. Lisa J. Cisneros |
| ALL ACTIONS | Courtroom:  G – 15th Floor |

## JOINT STATUS REPORT

In advance of the discovery status conference set for Thursday, June 26, 2025 at 10:30 a.m., Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants") (jointly, "the parties"), respectfully submit this Joint Status Report.

## I.    Status of Company and Case-Specific Depositions

### 1.    Company

Plaintiffs have taken 35 depositions of Defendants' current or former employees, including 31 witnesses who testified in their individual capacity and four (4) noticed under FRCP 30(b)(6). Eight (8) depositions have been confirmed, with the last deposition currently scheduled on July 16, 2025. One (1) 30(b)(6) deposition has yet to be scheduled.

**Plaintiffs' Position:** Plaintiffs ask the Court to schedule a deadline for Uber to provide a date, as Plaintiffs have made multiple requests for Defendants to identify a witness and confer on the scope of objections, without response.

**Defendants' Position**: Plaintiffs' request is not ripe. Defendants responded to the notice in question (which relates to financials) with an invitation to confer on June 16.

### 2.    Case-Specific

For the five Wave 1 Bellwether Plaintiffs ("BWs") originally selected by the Court, the Parties have scheduled 36 depositions and are in process of scheduling another 35 (most of which were noticed by Uber). There will likely be several more. The first of the depositions was conducted on June 12, 2025, and the final deposition is currently scheduled to occur on July 16, 2025.

**Plaintiffs' Position:** Plaintiffs seek the Court's assistance in resolving an impasse created by Uber's continued delay in scheduling depositions of the remaining case-specific witnesses—a delay that threatens to derail the bellwether schedule.

On June 9, 2025, Plaintiffs served notices for the depositions of 16 current or former Uber employees who have first-hand knowledge regarding case-specific topics in the Wave 1 cases.[1] As agreed by the Parties, Plaintiffs intend to focus questions for these witnesses on the more specific liability and causation issues that will driver resolution of the BW trials, including more granular regional and city-level data, company decision-making, marketing, policies and practices that contributed to BWs' assaults—topics that were not contemplated to be covered (and could not have been covered) comprehensively for all MDL Plaintiffs during the general corporate liability discovery. Under the parties' agreed-upon Bellwether Deposition Protocol (ECF 2745-1), a party receiving a

---

[1] Plaintiffs will serve promptly deposition notices in WHB 823, the case just added to Wave 1.

deposition notice must supply two deposition dates within five business days. But Uber provided dates for only six witnesses. Uber states they are still attempting to schedule another six of the witnesses (over two weeks after Plaintiffs' requests), Uber states they are still attempting to schedule them (over two weeks after Plaintiffs' requests). Yesterday, June 22, Uber asserted for the first time that the remaining four witnesses are "not relevant." Plaintiffs promptly supplied case-specific explanations of each witness's unique knowledge.[2]

**David Brightman**: In one Wave 1 case (B.L.), the BW relied on Uber's marketing that it provided a safe and responsible way to get home after a night of drinking (and was intoxicated when she was assaulted). This BW lived in Texas when she heard and saw the marketing in question. According to his LinkedIn profile,[3] Mr. Brightman led Uber's Austin Texas relaunch, managed major marketing operations at events like Mardis Gras, and negotiated marketing partnerships. He therefore likely has relevant information regarding the local marketing.

**Michael Azulay & Blaine Light**: Two Wave 1 cases (Jaylynn Dean and LCHB128) arise from incidents in the Phoenix, AZ region. The subject drivers were onboarded in 2016 and 2017. The driver for LCHB128 appears to have only lived in the U.S. for about a year, calling into question the efficacy of a U.S. criminal background check. Mr. Azulay's LinkedIn profile[4] shows that he was the Phoenix Operations & Logistics Manager from 2015-2017, responsible for "growing and optimizing the supply-side…of the marketplace" (onboarding lots of drivers rapidly). Mr. Azulay appears to be the person who developed the onboarding processes that applied to the subject drivers. Similarly, Blaine Light was Sr. Operations and Logistics Manager for the Desert Region, including Phoenix,[5] who brags he was "responsible for onboarding and maintaining 25,000+ drivers to power Uber in the Desert." He is expected to have relevant information about the regional pressures that led to rapid onboarding.

**Varun Kaushal**: In two cases (A.R.2 and LCHB128), there had been prior negative reports

---

[2] Defendants erroneously assert that Plaintiffs agreed to exclude any substantive information regarding the disputed Uber witnesses in this update to the Court. To the contrary, Plaintiffs explicitly agreed to exclude any chart or exhibit regarding the witnesses—consistent with the Court's previous guidance regarding Joint Status Reports—not to exclude substantive information entirely.
[3] https://www.linkedin.com/in/david-j-brightman/
[4] https://www.linkedin.com/in/mgazulay/details/experience/
[5] https://www.linkedin.com/in/blainelight/

about the subject drivers, including reports of sexual misconduct between 2018-2023. It appears that, during this time period, Uber centralized control over its City-specific operations. Uber's documents indicate that, by 2021, Varun Kaushal was tracking City Ops (including City-specific driver onboarding and retention numbers) for a number of cities, including San Francisco and Phoenix. He is expected to testify about City-specific pressures that led to Uber retaining these drivers.

Each day of delay compresses the schedule, limits Plaintiffs' ability to prepare experts, and risks last-minute disputes that burden the Court. Plaintiffs therefore request that the Court (a) order Uber to provide, within three (3) business days, two firm and mutually acceptable deposition dates for each of the ten outstanding witnesses; or (b) set an expedited briefing schedule on this issue.

**Defendants' Position:** On June 9, 2025, Plaintiffs for the first time served requests for 16 total "case specific" witness depositions all to be deposed during the final two weeks preceding the substantial completion deadline. Defendants informed Plaintiffs that, consistent with past practice, their outside counsel will represent and defend both current and former employees, assuming all of the former employees can be located and each accepts representation. Defendants also agreed to work to schedule the depositions consistent with the desired order and dates requested by Plaintiffs, to the extent possible, and identified to Plaintiffs which witnesses are current employees and which are formers. Defendants have been working diligently to contact and schedule the requested depositions, and have provided regular updates to Plaintiffs to keep them apprised of these efforts. To date, six depositions have been confirmed, with most agreed to occur on Plaintiffs' preferred date. It is anticipated that several more depositions will be confirmed this week. Moreover, Defendants explained to Plaintiffs both that certain of the requested witnesses who have not yet responded to outreach were contractors who can be more difficult to track down, and that some of the more common names led to the wrong individuals in the first instance, but assured Plaintiffs they are making all efforts to locate each and every requested deponent as quickly as possible. In short, Defendants cannot provide a deposition date until the relevant deponent is located.

In addition, during its initial meet and confer regarding the 16 depositions, Defendants identified certain requested deponents who did not appear to qualify as a "case specific" witness consistent with the agreement defining the same. Defendants requested additional information

concerning Plaintiffs' selection of these particular witnesses to further examine the issue, and consult internally. Upon review of the information provided, Defendants reported to Plaintiffs that disputes as to certain deponents were resolved. However, for some witnesses Plaintiffs' proffered information was not accurate (which continues to be the case in this filing where, for example, Plaintiffs' have mischaracterized the plain language of public LinkedIn profiles in an to attempt to fit their arguments), and for others there was no explanation or justification that would bring those witnesses within the agreed scope for "case specific" testimony. The parties further met and conferred on Sunday, June 22, 2025, and, in light of the remaining disputes, Plaintiffs' requested (and Defendants agreed) that the Parties set an expedited briefing schedule to seek judicial guidance on those witnesses still in dispute. Despite this agreement, in the near final turn of this JSR, plaintiffs inserted substantive arguments concerning various witnesses (many of which are inconsistent with the arguments Plaintiffs made during the parties' meet and confers) and suggested, for the first time, that they made no such agreement to separately letter brief this issue. Defendants will address this 11th hour about face in its own letter briefing and request that this Court bar Plaintiffs from responding to Defendants' letter brief based on their decision to improperly submit briefing to this Court through the Joint Status Report. For now, Defendants have committed to securing deposition dates for the disputed witnesses in order to avoid delay and continue to meet the substantial completion date.

## II.     PFS Deficiencies and Expected Cure Dates

**Plaintiffs' Position:** Plaintiffs are committed to working cooperatively with Defendants to address any PFS deficiencies, but it does not appear that there are any issues ripe for the Court's resolution, nor any basis for an additional case management order. For example, in the Peiffer Wolf cases, all deficiency letters were sent within the past few weeks and are not yet due. Similarly, for Cutter Law, all notices were sent within the past four days, and responses remain timely. Based on an initial review, the vast majority of the alleged deficiencies appear immaterial and are unlikely to require amendments. Individual Plaintiffs are timely responding as required, and to the extent any disputes remain after the meet-and-confer process, Defendants may raise them with the Court pursuant to PTO 10.

**Defendants' Position:** As Defendants have flagged in the last several JSRs, PFS delinquencies

and deficiencies are a pervasive and growing problem across the entire litigation. While Defendants'
review of PFS for deficiencies is ongoing, the chart below illustrates the overwhelming number of
plaintiffs represented by firms with substantial case inventories that have failed to comply with this
Court's orders (including PTO 10, ECF 348) that require the submission of a complete and verified
fact sheet. PTO 10 provides 30 days from date of notice for the deficient party to cure the alleged
deficiency(ies). Defendants have expressed (and continue to express via letters) a willingness to meet
and confer to the extent that the deficient party has questions or requires an extension.

| | Williams Hart & Boundas, LLP | Levin Simes, LLP | Peiffer Wolf Carr Kane Conway & Wise | Cutter Law PC | Chaffin Luhana LLP |
|---|---|---|---|---|---|
| **No. of Active / Pending Cases** | 460 | 424 | 388 | 171 | 88 |
| **No. of PFSs** | 445 | 310 | 348 | 82 | 76 |
| **No. of PFS Deficiency Notices** | 335 | 91 | 140 | 77 | 74 |
| **Deficiencies Identified** | 838 | 169 | 294 | 312 | 306 |
| **Amended PFS Post Notice** | 28 | 1 | 1 | 0 | 0 |
| **PFS without Amendment Post Notice** | 307 | 90 | 139 | 77 | 74 |
| **Ps with 6-10 Days to Cure** | 270 | 0 | 0 | 0 | 0 |
| **Ps with Fewer Than 5 Days to Cure** | 0 | 85 | 0 | 0 | 0 |

*Cases per Firm and PFS per Firm are based upon the firm documented as having filed the PFS.*
**Statistics continue to change in real time and are provided in advance of the Discovery Status
Conference to demonstrate approximately the deficiencies identified across the inventory.*

Given the status, Defendants may seek an additional case management order or additional
non–BW discovery, and to ensure that plaintiffs are providing supporting documentation. Plaintiffs'
assertion that "most of the alleged deficiencies appear immaterial" disregards the underlying purpose
of the PFS, *i.e.* to provide Defendants complete and accurate information regarding a plaintiff so

1   Defendants may assess the potential merits of each individual case.

2   **III.    Wave 1 Replacement Bellwether Selection**

3           Plaintiffs and Defendants have jointly agreed that Substantial Completion of Fact Discovery

4   for the new Wave 1 case, WHB 823, is August 8, 2025. *See* ECF 3301.

5   **IV.    Status of Board of Directors Meeting Minutes**

6           The parties and Special Master Jones are working diligently to resolve the remaining disputes

7   over the BOD meeting minutes. On June 19, the parties appeared before Special Master Jones's team

8   to request that Special Master Jones conduct an expedited review of Plaintiffs' privilege challenges of

9   Uber's production of Board of Directors (BOD) meeting materials that were produced on June 16 and

10  will be produced on June 19 with accompanying privilege logs. The Plaintiffs further requested that

11  the Special Master issue her rulings by June 26 and that Uber produce unredacted versions of such

12  documents to the extent applicable by June 27 (during EST business hours) which would afford the

13  Plaintiffs at least a couple days to review the materials before the upcoming July 1 deposition of Mr.

14  Khosrowshahi and subsequent July 3 deposition of Mr. Kalanick. Defendants represented that the

15  entire production of BOD meeting materials would consist of about 19,000 pages with approximately

16  1800 pages of privilege redactions. Special Master Jones in her ruling stated: After consideration of

17  the parties' agreements and respective proposals, the review shall proceed as follows:

18  ● Uber has agreed to produce all remaining documents at issue to plaintiffs by the end of

19      the day today, June 19, 2025. Uber is encouraged to finalize production as

20      expeditiously as possible.

21  ● Plaintiffs have agreed to issue their challenges to privilege claims on Friday, June 20,

22      2025, pending receipt of the documents. Plaintiffs have also agreed to identify priority

23      challenges for our review.

24  ● Uber has agreed to make all challenged documents available on the Master's review

25      platform on a rolling basis beginning Friday, June 20, 2025. The production shall be

26      complete by Noon PT on Sunday, June 22, 2025.

27  ● The parties may submit briefs by 4pm PT on Tuesday, June 24, 2025.

28  ● Uber shall produce documents within two days after my determinations are issued.

1      ●     In order to resolve all objections quickly, the parties may raise their objections at any

2  time after a determination is made.

3         Consistent with the parties' June 12 agreement, Defendants made productions (and re-

4  productions) of BOD materials on June 16 and 19, consisting of a total of 119 documents and

5  approximately 19,000 pages. 94 of those documents contained privilege redactions and Plaintiffs have

6  challenged at least some privilege redactions in 58 of those documents. Those 58 documents have

7  been made available for in camera review by the Special Master in accordance with the schedule set.

8  The parties are hopeful that Special Master Jones can review the materials and rule quickly to allow

9  the production of unredacted materials, to the extent applicable, in advance of Mr. Khosrowshahi's

10  and Mr. Kalanick's depositions. However, to the extent, this does not happen, Plaintiffs anticipate the

11  need to seek leave from the Court to have Mr. Khosrowshahi and Mr. Kalanick reproduced for a

12  limited time to address the BOD materials, while Defendants reserve the right to object to any further

13  time sought based on specific information, if any, that is not available to Plaintiffs prior to the

14  depositions.[6]

15  **V.     Defendants' Subpoenas to Plaintiffs' Firms Seeking Litigation Funding Documents**

16         On June 13, 2025, Uber gave notice of intent to serve subpoenas on nine law firms that are

17  members of MDL or JCCP leadership. ECF 3250, 3252, 3253, 3255, 3257, 3258, 3259, 3262, 3263.

18  The subpoenas, identical as to each firm, generally seek documents related to third-party litigation

19  funding and include a compliance date of June 24. Uber agreed to extend the compliance date until

20  July 1 to allow the parties to meet and confer.

21         The parties agree it makes sense to address certain global issues concerning the appropriateness

22  of these subpoenas, preserving any other objections any particular law firm may have (and preserving

23  both Uber's and law firms' rights, if any, to adjudicate the appropriateness of the subpoenas in a

24  different venue). Plaintiffs intend to move to quash the subpoenas as (1) untimely; (2) seeking

25

26  ---

[6] To provide the Court context, while Plaintiffs acknowledge that Defendants made prior redacted productions of BOD materials on May 16, May 28, and June 4, Plaintiffs believed Defendants'

27  redactions of such materials for what Defendants described as commercially sensitive information were improper and unnecessary in light of the robust Protective Order. Nevertheless, the Plaintiffs

28  have worked with Defendants over the past several weeks to negotiate and try to narrow the scope of redactions and reached agreement on June 12 on a production schedule as set out above.

irrelevant information; and (3) seeking protected work product.

Subject to the Court's approval, the parties propose the following briefing schedule (consistent with the timing and format of the briefing ordered at ECF 574):

- July 1, 2025, Plaintiffs' motion to quash [4-page letter brief]
- July 8, 2025, Uber's opposition [4-page letter brief]
- July 15, 2025, Plaintiffs' reply [2-page letter brief]

Defendants agree to extend the compliance date to two weeks after the Court's order on the motion to quash (unless the subpoenas are quashed in their entirety).

## VI.   Previous Rider Report Interrogatory

Each Bellwether Plaintiff served an interrogatory seeking the identity and contact information of passengers who, before Plaintiffs were assaulted, reported sexual assault or sexual misconduct on the part of the relevant drivers, but whose reports did not result in permanent deactivation of the driver. Defendants objected to the interrogatory in full. On May 28, the parties filed a joint letter brief under PTO 8. ECF 3074.

## VII.   Bellwether Plaintiffs' Social Media Productions

On June 9, 2025, the Court entered an Order (ECF 3209) addressing the scope of Plaintiffs' social media production obligations and setting deadlines for those productions, including the validation productions separately ordered by the Court on June 2, 2025 (ECF 3136). Plaintiffs are in the process of making social productions pursuant to the Court's orders. The parties will meet and confer with respect to those productions as needed and will address any remaining issues with respect to Wave 1 Plaintiffs' social media production obligations on a case-by-case basis.

## VIII.   Bellwether Plaintiffs' Disclosures Pursuant to the ESI Protocol

On May 22, 2025, the Court ordered Wave 1 Plaintiffs to make disclosures required by the ESI Protocol (ECF 524) by May 27, 2025, and the Court ordered non-Wave 1 Plaintiffs to make those disclosures by May 30, 2025. ECF 3059. The parties in the Wave 1 cases have met and conferred regarding Wave 1 Plaintiffs' ESI disclosures and will continue to do so in light of recent and forthcoming productions by Plaintiffs. Any disputes will be promptly presented to the Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Rachel B. Abrams*
RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

By: */s/ Michael B. Shortnacy*

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN

**SHOOK, HARDY & BACON L.L.P.**
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: June 23, 2025

By: */s/ Rachel B. Abrams*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Rachel B. Abrams*