1   LAURA VARTAIN (SBN: 258485)
        laura.vartain@kirkland.com
2   **KIRKLAND & ELLIS LLP**
3   555 California Street, 30th Floor
    San Francisco, CA 94104
4   Telephone: (415) 439-1625

5   ALLISON M. BROWN (Pro Hac Vice admitted)
        allison.brown@kirkland.com
6   JESSICA DAVIDSON (Pro Hac Vice admitted)
        jessica.davidson@kirkland.com
7   **KIRKLAND & ELLIS LLP**
8   601 Lexington Avenue
    New York, NY 10022
9   Telephone: (212) 446-4723

10  *Attorneys for Defendants*
11  UBER TECHNOLOGIES, INC.,
    RASIER, LLC, and RASIER-CA, LLC
12
13  *[Additional Counsel Listed on Following Pages]*

14

15

16

17              **UNITED STATES DISTRICT COURT**

18              **NORTHERN DISTRICT OF CALIFORNIA**

19                  **SAN FRANCISCO DIVISION**

20  IN RE: UBER TECHNOLOGIES, INC.,      Case No. 3:23-md-03084-CRB
21  PASSENGER SEXUAL ASSAULT
    LITIGATION                           **DEFENDANT UBER TECHNOLOGIES,**
22                                       **INC., RASIER, LLC, AND RASIER-CA,**
    ─────────────────────────────        **LLC'S BRIEF IN SUPPORT OF**
23                                       **PRIVILEGE CLAIMS RELATING TO**
    This Document Relates to:            **BOARD OF DIRECTORS MATERIALS**
24
    ALL ACTIONS
25

26

27

28

─────────────────────────────────────────────────────────────────────────

Pursuant to the Special Master's instruction from June 19, 2025, Defendants submit this brief in support of their position on the privilege claims made as to materials relating to Uber's Board of Directors.[1]

This dispute concerns privilege claims asserted for materials relating to Uber's Board of Directors, including meeting minutes, presentations, and related materials shared or discussed with the Board. By their nature, these materials include significant swaths of information that reflect communication with or legal advice from in-house and outside counsel, necessitating redactions. The redactions essentially fall into four categories. The first category (comprising the majority of redactions) includes communications made, or information shared, by attorneys with the Board as part of an attorney-client relationship. The second category encompasses references to ongoing or past litigation as part of attorney-client communications and/or work-product in evaluating legal risks in anticipation of litigation. The third category includes references to insurance reserves, loss amounts, legal costs and settlements–which constitute paradigmatic work-product, as Plaintiffs have previously recognized in this litigation. And the final category of redactions consists of communications between Uber and its outside counsel, which Plaintiffs have similarly recognized are protected by the attorney-client privilege. Because the redactions within each of these categories satisfies the applicable standards governing attorney-client privilege and work-product doctrine, the Special Master should affirm Defendants' privilege claims.[2]

## LEGAL STANDARD

Defendants incorporate by reference the legal attorney-client and work-product standards set forth in their prior briefing (Dkts. 2433, 2461, 2528, 2544, and 2580). Those standards boil down to

---

[1] Following conferrals with Plaintiffs on the scope of the redaction of irrelevant materials, Defendants offered to reproduce certain documents with fewer redactions of irrelevant material that, in turn, would otherwise reveal material that now requires privilege redactions. Out of 94 documents with redactions to privileged content, Plaintiffs have challenged various redactions in 58 documents. These 58 documents have now been submitted for the Special Master's review. While Defendants have also applied redactions to non-responsive, commercially sensitive content, these redactions are not before the Special Master for resolution.

[2] As requested by the Special Master, Uber has provided (1) a glossary of terms commonly used in disputed documents, (2) a list of names and titles of relevant Uber inside and outside counsel, and (3) a digest of third-parties present in its privilege log. Defense counsel will also be available for any questions the Special Master may have during the review process.

DEFENDANTS' BRIEF IN SUPPORT OF PRIVILEGE CLAIMS RELATING TO BOARD OF DIRECTORS MATERIALS

Case No. 3:23-MD-3084-CRB

the longstanding principle that a corporation's confidential communications with its attorneys are entitled to protection just as the communications of a natural person. *See D.I. Chadbourne, Inc. v. Superior Ct. of City & Cnty. of San Francisco*, 60 Cal. 2d 723, 732-36 (1964) ("[T]he public policy behind the attorney-client privilege requires that an artificial person be given equal opportunity with a natural person to communicate with its attorney, within the professional relationship, without fear that its communication will be made public."). That principle applies equally to board meetings minutes and accompanying materials where legal issues are discussed. *See*, *e.g.*, *S.E.C. v. Roberts*, 254 F.R.D. 371, 383 (N.D. Cal. 2008) (communications between attorneys and special committee within the board of directors formed to conduct internal investigation into securities law violations are protected by attorney-client privilege); *Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*, 2019 WL 4929930, *2 (E.D. Cal. Oct. 7, 2019) (finding Board minutes entitled to be redacted for attorney-client privilege where it was a special meeting "called to specifically discuss, seek legal advice, and develop a legal strategy related to settlement"); *Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193 (D. Kan. 1993) (portions of board meeting during which legal issues were discussed were held privileged). *Welch v. Board of Directors of Wildwood Golf Club*, 146 F.R.D. 131, 139 (W.D. Pa. 1993) (privilege successfully asserted for portions of board minutes in which legal advice regarding potential litigation was discussed). Even when assessing documents that may be a mix of privileged and non-privileged material, courts may lean towards finding the document as a whole privileged. *Aerojet Rocketdyne, Inc.*, 2019 WL 4929930, at *3 (finding the chart as a whole was entitled to privilege protection even if every fact or number it contained was not independently privileged).

## ARGUMENT

### I.     The Special Master Should Reject Plaintiffs' Non-Specific, Boilerplate Challenges.[3]

For nearly every document, Plaintiffs repeat the same generic challenge, claiming that "the redacted content appears to concern business strategy, operational decision-making, and corporate risk

---

[3] Defendants submit that Plaintiffs have failed to sufficiently challenge JCCP_MDL_PRIVLOG110047, JCCP_MDL_PRIVLOG110059 & JCCP_MDL_PRIVLOG110063. Plaintiffs highlighted JCCP_MDL_PRIVLOG110047 and JCCP_MDL_PRIVLOG110063 as priority challenges but their chart sets forth "no" challenge in column AL. Column AL for JCCP_MDL_PRIVLOG110059 sets forth that Plaintiffs

3

assessments—not legal advice sought or provided in a confidential attorney-client communication or legal work product." The Special Master should reject these boilerplate challenges, because Defendants have satisfied their burden of establishing that the redacted content is privileged. Indeed, as the party claiming privilege, Defendants need only "establish[] the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Johnson v. Dept. of Transportation*, 109 Cal. App. 5th 917, 936 (2015). Defendants have done so through the privilege log, list of inside and outside counsel, and documents provided for the Special Master's review. Thus, Plaintiffs must come forward with some particularized basis for challenging privilege. *See id.* ("Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply."). Plaintiffs' boilerplate challenges are insufficient.

## II. Common Types of Privilege Claims Present in the Board Materials Should Be Upheld.

While the documents in question lack full metadata that is ordinarily present with documents produced from their native versions, meeting agendas and/or meeting minutes often provide the necessary framework for evaluating the privilege redactions. Those agendas and minutes typically identify the attorney who presented certain topics to the Board. Beyond that, the majority of Uber's privilege redactions largely fall within commonly occurring categories. Plaintiffs have not offered any sufficient basis to dispute these types of redactions.

### A. Communications or Information Shared By Counsel with the Board

The majority of redactions reflect communications made, or information otherwise shared, by attorneys with the Board as part of an attorney-client relationship. These communications were memorialized as part of meeting minutes or memoranda to the Board. Information shared by attorneys with the Board are often reflected in slide presentations and "pre-read" background materials. For some documents, Plaintiffs have indicated that they are not challenging certain redactions to

---

"DO NOT CHALLENGE CORPORATE COMPENSATION MATERIALS OR PRIVATE PLANE USE POLICY" and the entirety of the "2021.11.1 Comp Materials" relates to corporate compensation.

DEFENDANTS' BRIEF IN SUPPORT OF PRIVILEGE CLAIMS RELATING TO BOARD OF DIRECTORS MATERIALS
Case No. 3:23-MD-3084-CRB

1    information shared by in-house attorneys with the Board. *See* JCCP_MDL_PRIVLOG108930 (not

2    challenging pages 65-87 regarding CLO Update), JCCP_MDL_PRIVLOG108935 (not challenging

3    pages 88 and 138-52 regarding litigation updates).  However, Plaintiffs are inexplicably challenging

4    other redactions reflecting information communicated between Uber's in-house counsel and its Board.

5    *See* JCCP_MDL_PRIVLOG110193 (challenging all redactions, including "Antitrust Training" by

6    Tony West and Tammy Albarran at pages 196-204 and "CLO Board of Directors Update" at pages

7    206-215).

8            The only explanation for Plaintiffs' inconsistent approach appears to be their view that the

9    *content* of the redactions falling within the latter category are related to business issues, rather than

10   legal advice. That fundamentally misapprehends the relevant standard. As the Special Master has

11   recognized, "the focus of the inquiry is the dominant purpose of the relationship between the parties

12   to      the      communication."      Special      Master's      Ruling      on      Objection      Regarding

13   JCCP_MDL_PRIVLOG020615 (Apr. 11, 2025) (quoting Dkt. 2168 at 2 and *Clark v. Superior Ct.*,

14   196 Cal. App. 4th 37, 51 (2011)). "[I]t is not the dominant purpose of a particular communication that

15   dictates whether the attorney-client privilege is applicable; rather the issue is what *was the dominant*

16   *purpose of the relationship*. . . . If the dominant purpose of the relationship was attorney-client at the

17   time of the communications, they are privileged." *Id.* (quoting *McAdam v. State Nat. Ins. Co.*, 15 F.

18   Supp. 3d 1009, 1015 (S.D. Cal. 2014)).  Accordingly, it makes no difference whether, as Plaintiffs

19   claim, the content "appears to concern business strategy, operational decision-making, and corporate

20   risk assessments." This is because "[n]either the statutes articulating the attorney-client privilege nor

21   the cases which have interpreted it make any differentiation between 'factual' and 'legal'

22   information." *DP Pham, LLC v. Cheadle*, 246 Cal. App. 4th 653, 664 (2016).

23           The Board materials submitted for the Special Master's review are protected under these

24   principles because they reflect attorney-client privileged communications (through meeting minutes

25   and memoranda) and information that was transmitted from Uber's in-house and outside counsel to

26

27

28
                                                          5

the Board (through slide presentations and appendices[4]). "The dominant purpose of the relationship" between Uber's in-house counsel and the Board was an attorney-client relationship, therefore the communications should remain privileged.[5]

### B. Discussions of Ongoing or Past Litigation or Claims that Reflect Work Product

Defendants have made appropriate redactions to certain references to ongoing or past litigation or legal claims.[6] Not only are these references often part of attorney-client communications and information shared by counsel with the Board, but they should also be protected as work product. As the Special Master has seen through review of other privileged content over the past several months, one of the key functions of Uber's in-house counsel team is to advise the company and assess and manage legal risks in anticipation of litigation. As demonstrated by the volumes of documents already made available to the Special Master, this work includes reporting on ongoing litigation, managing legal risks based on the regulatory environment impacting Uber's business, and facilitating internal investigations and audits. Some of this work product is reflected in the redactions now pending before the Special Master.

For example, several redactions relate to a Special Matters Committee ("SMC") of the Board of Directors.[7] The SMC was created to provide oversight of investigations into possible incidents of non-compliance with laws and regulations and potential or actual litigation. John Dwyer, outside counsel at Cooley LLP, has previously explained the genesis of the SMC and legal counsel's involvement in the SMC as part of a declaration submitted in *Boston Retirement Sys. v. Uber Technologies, Inc.*, No. 3:19-cv-06361-RS (Dkt. 380-2). As Mr. Dwyer explained, as outside counsel,

---

[4] *See*, *e.g.*, JCCP_MDL_PRIVLOG110048 at 7 (Minutes Item 6); JCCP_MDL_PRIVLOG110050 at 1 (T. West presenting on Board Nominations and Governance Review), 17-19 (Board Nomination slides), 21-26 (Governance Review slides); JCCP_MDL_PRIVLOG110060 at 2-3, 5 (T. West presenting on Corporate Matters, Risk Management & Oversight, and Legal Updates), 3-4 (Ms. Zefo co-presenting on Privacy & Cybersecurity).

[5] Work product protection may also apply to provide additional basis for redactions. For example, assessments of claim values and settlement amounts prepared by or at the direction of counsel should be protected as work product even when that information is conveyed to the Board through non-lawyers.

[6] *See*, *e.g.*, JCCP_MDL_PRIVLOG110046 at 2 (Minutes Item 5), 40-42 (litigation discussion in Final Valuation Report).

[7] *See e.g.*, JCCP_MDL_PRIVLOG108929 at 18-24, 621-25.

6

1   he was responsible for providing updates to the Board and the SMC and for providing legal analyses

2   and attorney mental impressions to PricewaterhouseCoopers LLP ("PwC"), Uber's outside auditor.

3   Dwyer Decl. at ¶¶ 2-3. These mental impressions are one example of the work product that Defendants

4   have redacted to protect.

5          **C.      References to Insurance Reserves and Loss Amounts, Legal Costs, and**

6                    **Settlements**

7          Uber has also redacted references to insurance reserves, loss amounts, legal costs, and

8   settlements. This information is protected as attorney work product. Courts across the country have

9   recognized that attorney impressions of the value of potential claims are "protected from discovery as

10  opinion work-product" because such "figures reveal the mental impressions, thoughts, and

11  conclusions, of an attorney in evaluating a legal claim." *Rhone-Poulenc Rorer Inc. v. Home Indem.*

12  *Co.*, 139 F.R.D. 609, 613-15 (E.D. Pa. 1991) (finding that risk management documents that contain

13  "individual case reserves"—i.e., funds set aside for liabilities—are protected when calculated by

14  attorneys, as they reflect "an assessment of the value of the claim"); *United States v. Frederick*, 182

15  F.3d 496, 501 (7th Cir. 1999) ("Suppose a lawyer prepared an estimate of his client's damages; the

16  estimate would be numerical, but insofar as it reflected the lawyer's professional assessment of what

17  to ask the jury for it would be attorney work product"); *Schreib v. Am. Fam. Mut. Ins. Co.*, 304 F.R.D.

18  282, 286–87 (W.D. Wash. 2014) (refusing to compel production of loss reserve documents because

19  "by definition [they] reflect the mental impressions, thoughts, and conclusions of attorneys or

20  employees evaluating the merits and risk of a legal claim"); *Bondex Int'l, Inc. v. Hartford Acc. &*

21  *Indem. Co.*, No. 1:03CV1322, 2006 WL 355289, at *2 (N.D. Ohio Feb. 15, 2006) ("The individual

22  case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in

23  evaluating a legal claim. By their very nature they are prepared in anticipation of litigation, and

24  consequently, they are protected from discovery as opinion work-product.").

25         As explained in *Rhone-Poulenc*, a party "should not be forced to provide materials to its

26  opponent that necessarily reflect its lawyers' mental impressions regarding the litigation and contain[]

27  its agents' mental impressions concerning the cost of the litigation" because such a rule could make it

28

DEFENDANTS' BRIEF IN SUPPORT OF PRIVILEGE CLAIMS RELATING TO BOARD OF DIRECTORS
MATERIALS

Case No. 3:23-MD-3084-CRB

difficult for defendants to plan for their defense and could lead litigants to not "properly document and consider all the factors that bear upon the decision to try or settle lawsuits." 139 F.R.D. at 615. For similar reasons, courts regularly apply work-product protection to materials that contain attorney mental impressions regarding potential and completed settlements. *See Dairyland Power Co-op. v. United States*, 79 Fed. Cl. 709, 722 (2007) ("Determining acceptable settlement amounts can be part of an attorney's planning for litigation, thereby making such deliberations qualify as attorney work product."); *see also Chemcentral/Grand Rapids Corp. v. US EPA*, No. 91 C 4380, 1992 WL 724965, at *9 (N.D. Ill. Aug. 20, 1992) ("[D]ocuments relating to settlement negotiations and the avoidance of anticipated litigation are also protected by work product immunity."); *Nationwide Mut. Ins. Co. v. LaFarge Corp.*, No. H–90–239, 1994 U.S. Dist. LEXIS 3851, at *29–30 (D. Md. Jan. 3, 1994) ("Settlement strategy is obviously based on the mental impressions and conclusions of a party and on the legal theories on which such conclusions are based."); *McCook Metals LLC v. Alcoa Inc.*, 192 F.R.D. 242, 263 (N.D. Ill. 2000) (finding documents concerning settlement of a separate litigation, including letters between in-house counsel and management regarding litigation and licenses, to be protected by attorney-client privilege and as work product).

The same principles apply here. Indeed, Plaintiffs have essentially recognized as much in previously agreeing that they would presumptively not challenge Uber's clawback of privileged information reflecting insurance loss or reserve amounts or settlements. While Plaintiffs seem to acknowledge that this type of information is protected (*see* JCCP_MDL_PRIVLOG108930 (no challenge to redactions to settlement amount)), to the extent that they maintain any of their challenges as to insurance reserves, loss amounts, legal costs, and settlements, Defendants' work product claims should be upheld.

### D.    References to Communications Between Uber and Outside Counsel

As part of the agreement between the parties to facilitate the expedited review of these documents by the Special Master, Plaintiffs have agreed that they do not dispute privilege claims based on outside counsel communications. This agreement is reflected in several of Plaintiffs' challenges.

DEFENDANTS' BRIEF IN SUPPORT OF PRIVILEGE CLAIMS RELATING TO BOARD OF DIRECTORS MATERIALS

Case No. 3:23-MD-3084-CRB

*See* JCCP_MDL_PRIVLOG108929 (not challenging redactions relating to Covington[8]) and JCCP_MDL_PRIVLOG108930 (not challenging redactions relating to outside counsel). To the extent Plaintiffs' challenges inadvertently include redactions based on outside counsel communications, those redactions should be upheld, consistent with the parties' agreement and the applicable law.[9] For clarity, Defendants are providing an updated list of in-house and outside counsel for the Special Master's review.

**III.    Additional Reasons Support Redactions as to JCCP_MDL_PRIVLOG097384.**

As further support for the privilege claims before the Special Master, Defendants provide a declaration from Katie Waitzman, Chief Deputy General Counsel (attached as Exhibit A). Ms. Waitzman provides additional factual information regarding a slide contained in JCCP_MDL_PRIVLOG097384. As Ms. Waitzman's declaration confirms, this slide was prepared by counsel in response to, and in anticipation of, litigation and should remain protected.

<b>CONCLUSION</b>

Defendants' privilege redactions should be upheld. To the extent that there is any other factual context that the Special Master requires as part of this expedited review, Defendants request the opportunity to confer with the Special Master's team on an *ex parte* basis or respond to any discrete issue or redaction in writing.

---

[8] In 2017, Uber retained Eric Holder and Tammy Albarran (then-outside counsel at Covington & Burling) to conduct a review of certain internal policies and procedures in light of allegations of harassment, discrimination and retaliation made by a former engineer at Uber. Uber employees, such as Liane Hornsey (Senior Vice President and Chief Human Resources Officer), then implemented the recommendations made by Covington. The resulting work and report is referred to in certain Board documents as the "Holder report." *See*, *e.g.*, UBER_JCCP_MDL_005767105. In this context, "Holder" references work or communications with outside counsel Eric Holder and should not be subject to challenge, per the parties' agreement and the applicable law.
[9] JCCP_MDL_PRIVLOG110055 at 68-87 (BOD, Committee and Individual Director Performance Evaluations by Wachtell Lipton), 96-114 (Uber Governance Risk Assessment by Covington & Burling); JCCP_MDL_PRIVLOG110062 at 50-68 (BOD, Committee and Individual Director Performance Evaluations by Wachtell Lipton), 70-100 (Uber Governance Risk Assessment by Covington & Burling); JCCP_MDL_PRIVLOG110066 at 44-58 (BOD, Committee and Individual Director Performance Evaluations by Wachtell Lipton).

DEFENDANTS' BRIEF IN SUPPORT OF PRIVILEGE CLAIMS RELATING TO BOARD OF DIRECTORS MATERIALS

Case No. 3:23-MD-3084-CRB

DATED: June 24, 2025

Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**

By: */s/ Jennifer Hill*
    Jennifer Hill

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN
ALLISON M. BROWN
JESSICA DAVIDSON

**O'MELVENY AND MYERS LLP**
SABRINA STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)
    oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
    adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
    ccotton@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
    msalcedo@shb.com
JENNIFER HILL (Admitted Pro Hac Vice)
    jshill@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

10

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' BRIEF IN SUPPORT OF PRIVILEGE CLAIMS RELATING TO BOARD OF DIRECTORS
MATERIALS

Case No. 3:23-MD-3084-CRB