UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL BELLWETHER ACTIONS | Case No.: 3:23-MD-03084 CRB<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING CASE-SPECIFIC DEPOSITIONS OF UBER EMPLOYEES**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

Dear Judge Cisneros:

    Pursuant to Pretrial Order No. 8 (ECF No. 323), the parties respectfully submit this joint letter regarding certain case-specific depositions of current or former Uber employees.

**Defendants' Position**:

For the last several months, Plaintiffs have taken far-reaching general discovery of Defendants, exploring Uber's technology, business policies, operations, growth, safety measures and features, marketing, communications, approach to driver onboarding and education, and other topics that Plaintiffs allege have overarching relevance to all of the cases and theories of liability asserted therein.[1] Separately, the parties agreed to a process for deposing "case-specific" witnesses; that is, witnesses with unique knowledge about the facts specific to the individual, Wave 1 plaintiffs' allegations. That distinction must have a meaning.[2]

On June 9, Plaintiffs noticed 16 "case specific" depositions. Defendants agree that 12 of the 16 depositions Plaintiffs seek are fairly considered "case specific" (e.g., safety investigators who handled an incident ticket for the subject case) and are working diligently to schedule those depositions, not only before the substantial completion deadline but on the dates unilaterally set by Plaintiffs.[3] For the other four witnesses, Plaintiffs have failed to provide any legitimate explanation as to why these witnesses are "case-specific." To the contrary, Plaintiffs' own explanations leave no doubt that the witnesses' work touched on general matters equally applicable to thousands of Uber riders, and not the sort of unique knowledge that defines a "case specific" witness. Plaintiffs should not be permitted to prolong general discovery, retread ground, or attempt second bites at the proverbial apple under the guise of "case specific" discovery. Defendants thus request the Court quash each of the notices for the below deponents.[4]

**David Brightman**: Mr. Brightman worked at Uber from 2016 to 2020, first serving as the General Manager for Texas, Louisiana, and Oklahoma (2016-2018) and then moving to an unrelated non-

---

[1] Across the MDL and JCCP (MDL counsel have participated in or have access to all JCCP depositions), Plaintiffs' have deposed more than 40 Uber witnesses on general topics, some for multiple days, with more depositions scheduled to occur before the July 16 deadline.

[2] Viewed through the lens of the parties' agreement, which separated and placed limits on the volume of "general" and "case-specific" testimony, Plaintiffs' generic case law regarding relevance and apex witnesses is misplaced and does not move the needle.

[3] Several of the witnesses are either former employees, who long ago departed the Company, or employees who worked for Uber as contractors. Defendants have been unable to make contact with every witness as of the date of this letter, though continue to reach out to the individuals in question, both in writing and telephonically. Defendants cannot provide dates for all 16 requested witnesses until the relevant deponent is located and/or responds.

[4] On Sunday June 22, the parties agreed to an expedited CMO 8 briefing process to ensure this dispute would be adjudicated with ample time to meet the substantial completion deadline. However, without warning or justification, Plaintiffs inserted their substantive arguments into the near final turn of the JSR. Defendants request that Plaintiffs' gamesmanship not be rewarded, and the Court ignore the additional arguments Plaintiffs advance in this submission.

Mobility business line (2018-2020). The only argument Plaintiffs advance as to why Mr. Brightman is a "case-specific" witness is that he *may* have had involvement with Texas-specific marketing that a Wave 1 Plaintiff (B.L.) *may* have seen or relied upon when choosing to use Uber. But this argument misses the mark for several reasons.

*First*, marketing is general discovery topic – a fact with which Plaintiffs appear to agree, having spent several days deposing multiple marketing witnesses, including Elizabeth Ross who recently sat for a two-day deposition as a 30(b)(6) on marketing topics. During that deposition, Plaintiffs' counsel specifically asked Ms. Ross whether marketing messages provided through the Uber home screen are generally consistent across different geographic regions and Ms. Ross explained that they are. If Plaintiffs had additional questions about differences across geographic regions (to the extent any exist), they should have asked Ms. Ross. *Second,* Plaintiff B.L. was deposed on 6/25 (the day this brief was filed) and testified that the only marketing or advertising related to Uber that she could recall was a flyer in a local business that had a beer bottle on it saying "Uber is here, take a ride" and a radio ad saying "Don't drink and drive, take Uber." Plaintiffs have already questioned general Uber witnesses, including Ms. Ross, about these types of marketing messages which are nationwide in scope. And the only document Plaintiffs pointed this Court to as evidence of Mr. Brightman's involvement in Texas-specific marketing references a "nationwide campaign for drinking and driving," further emphasizing that any questions for Mr. Brightman are plainly not case-specific. *Finally*, Plaintiffs have not provided any evidence that Mr. Brightman was involved with "marketing" efforts in Austin. While Plaintiffs point to Mr. Brightman's LinkedIn profile,[5] which they deceptively edited in the JSR, the profile makes *no* reference to marketing.

**Driver Onboarding:** Plaintiffs also noticed three "case specific" deponents on the theory that all were somehow involved in onboarding the drivers at issue in Dean and LCHB 128. As an initial matter, Plaintiffs already have taken extensive general deposition testimony regarding Uber's driver onboarding and validation processes.[6] More importantly, Plaintiffs have offered illogical explanations for why the witnesses noticed would have any "case specific" knowledge.

**Varun Kaushal:** Mr. Kaushal has served in multiple roles since he joined Uber in 2018, including Head of Midwest and New England Rides (Feb-Dec 2022) and Head of Midwest and South Rides (Jan-Dec 2023). During meet and confer, Plaintiffs argued they needed Mr. Kaushal's deposition because he allegedly onboarded the drivers at issue in Dean and LCHB 128. But the drivers in those cases were onboarded in Arizona, a state that Mr. Kaushal has never worked in or overseen. What's more, they were onboarded in October 2016 and October 2017 *before* Mr. Kaushal joined Uber. In their final turn of the JSR, Plaintiffs appeared to realize the flaw in their

---

[5]   https://www.linkedin.com/in/david-j-brightman/.

[6]   For example, across the JCCP and MDL, Greg Brown has been deposed on several occasions as a corporate representative on issues such as driver investigations, deactivations, and onboarding. And on May 29, Hannah Niles sat for a PMK deposition where she testified about the driver onboarding process.

prior argument, pivoting to the theory that Mr. Kaushal tracked "city-specific driver onboarding and retention numbers." But seeking to understand how or why Uber centralized the control of certain functions across numerous cities, or why it kept statistics regarding those functions, will not lead to a better understanding of the case specific facts underlying the alleged incidents.[7]

**Blaine Light:** Plaintiffs arguments as to Mr. Light are similar and do not line up temporally. Here, Plaintiffs only support for their theory that Mr. Light is a "case specific" witness is his LinkedIn profile[8], which notes that from *January 2016 to November 2016* Mr. Light was "responsible for onboarding and maintaining 25,000+ drivers to power Uber in the Desert." But the drivers at issue in Dean and LCHB 128 were onboarded in December 2016 and October 2017, *after* the time Mr. Light worked in onboarding. As a result, Mr. Light is unlikely to have any testimony that is "case specific" for the drivers at issue.

**Michael Azulay:** The argument that Mr. Azulay was involved with onboarding is inconsistent with his role at the company. As an Operations & Logistics Manager, Mr. Azulay focused on driver growth and supply, not onboarding or even policy related to driver onboarding (a general discovery topic). Nor did Mr. Azulay regularly approve drivers. And Plaintiffs have provided no evidence to the contrary - the only thing Plaintiffs have cited is Mr. Azulay's LinkedIn[9] that does not support the proposition that Mr. Azulay "developed the onboarding processes that applied to the subject drivers." Further, even if he had, that issue would be cross cutting across all cases and would have been a matter to be explored as part of general discovery.

---

[7] It appears Plaintiffs are requesting Mr. Kaushal's case specific deposition in four different bellwether cases, which underscores why any testimony Plaintiffs are seeking is generally applicable and not case-specific.

[8] https://www.linkedin.com/in/blainelight/

[9] https://www.linkedin.com/in/mgazulay/details/experience/

**Plaintiffs' Position**:

A "party seeking a protective order must make a strong showing of good cause before a party is denied the right to take a deposition." *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 2025 WL 1557598, at *3 (S.D. Cal. June 2, 2025). In "demonstrating good cause, broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id*. at *3 (internal quotation marks and alterations omitted).

Uber argues that witnesses must be neatly sorted in general and case-specific discovery, and that overlap in their knowledge precludes a deposition. But nothing in the case management orders imposes such a dichotomy. And Uber does not claim that these individuals have *no* knowledge related to the individual cases for which they were noticed, only that they may *also* have knowledge going beyond that. There is no precedent for prohibiting a deposition on the basis that the witness knows too much.

It would be one thing if Uber could credibly say that the testimony these witnesses will offer would be entirely cumulative of general discovery already taken. But Uber does not say that, nor could it. None of these people has been deposed. Nor have the subjects of their testimony been explored. For example, Plaintiffs have no testimony specifically related to the Phoenix market in which two Plaintiffs were assaulted. These depositions will concern Uber's practices and policies, including onboarding, supply, and retention, in specific places during specific timeframes—the definition of "case-specific" discovery.

Uber's contention that these are universal inquiries contradicts its earlier insistence that this case did not involve common discovery at all because the relevant corporate witnesses were region-specific. *See* Uber's Response to Pls.' Mot. for Transfer of Actions Under 28 U.S.C. § 1407, *In re: Uber Techs., Inc. Passenger Sexual Assault Litigation*, J.P.M.L. MDL 3084, ECF 65 at 16 (Aug. 18, 2023) ("Uber's executives – whom Plaintiffs allege to be relevant witnesses – are located all over the nation, as are heads of various teams and regional leadership.") And Uber's claim that Plaintiffs "should have asked" these questions in general discovery lacks citation or reason.

Although Plaintiffs respond to each of Uber's arguments below, it is not Plaintiffs' burden to justify each deposition, but Uber's burden to make "a strong showing of good cause" why each should be disallowed. Uber has failed to carry its burden.

**David Brightman**. Plaintiff B.L. relied on Uber's marketing promoting its product as a safe way to get home after a night of drinking. B.L. Compl. ¶¶ 38-49. In particular, Plaintiff heard relevant ads when she was living in Austin, TX before and in 2021. *Id.* ¶¶ 40-41. According to his LinkedIn profile, Mr. Brightman, as a "General Manager" responsible for "Texas," led Uber's "Austin relaunch," managed "operations" at "major events" and "negotiated" partnerships "with universities, professional sports team, and airports."[10] Brightman

---

[10] https://www.linkedin.com/in/david-j-brightman/ (last visited June 24, 2025)

likely has relevant knowledge about Uber's local marketing efforts in the Austin area, including targeting intoxicated women.

Uber says that Brightman only "*may*" have such knowledge, but even that is sufficient to support a deposition even of an "apex" witness, let alone middle management. *See, e.g.*, *Hunt v. Cont. Cas. Co.*, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015) ("[W]here a corporate officer may have *any* first-hand knowledge of relevant facts, the deposition should be allowed.") (citation omitted). Uber says that "marketing messages provided through the Uber home screen are generally consistent across different geographic regions." But Plaintiff's allegations are not about in-App messages, but rather "advertisements placed in venues and advertisements where drinking was popular" and on the "radio." B.L. Compl. ¶¶ 39-41.

Finally, Uber says that there is "no legitimate evidence that Mr. Brightman was actually involved with 'marketing' efforts in Austin," but it is not Plaintiffs' burden to "prove conclusively" a witness's knowledge, even where that witness is a company CEO. *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *1 (N.D. Cal. June 30, 2015). In the ordinary case, parties do not make particularized showings of what a deposition will reveal before taking it. In any event, what evidence Plaintiffs have does make such a showing. For example, when Uber planned a "press event … in Austin … to push out the designated driver message," Brightman was involved in "includ[ing] specific Austin partners" in the event. Pls.' Ex. 1.

**Michael Azulay & Blaine Light**. Two Wave 1 cases (Dean and LCHB128) arise from incidents around Phoenix, AZ and drivers onboarded in 2016 and 2017. Plaintiffs aim to show that region-specific business pressures led to rapid driver on-boarding with less regard for safety risks. Both witnesses are likely to have information relevant to both Wave 1 cases. Mr. Azulay's LinkedIn profile shows that he was the Phoenix Operations & Logistics Manager from 2015-2017, responsible for "growing and optimizing the supply-side ... of the marketplace" (onboarding lots of drivers rapidly).[11] Mr. Azulay likely has relevant information about the process through which the at-issue drivers were onboarded, as well as Uber's Phoenix-area rapid growth goals when these drivers were brought on.

Uber argues that Mr. Azulay was only "focused on driver growth and supply," but that focus is fundamental to Plaintiffs' claims in these Phoenix-area cases: in one of the markets with the highest rates of sexual assault, Uber faced and responded to business pressures to maximize the "supply side" without due regard for the consequences. Uber says that Mr. Azulay did not "regularly approve drivers." This is irrelevant. Plaintiffs are not seeking this deposition because Mr. Azulay pushed a button to approve a specific driver, but instead because he was involved in the recruitment, onboarding, and retention programs that those drivers were connected to.

Similarly, Mr. Light was Senior Operations and Logistics Manager for the Desert Region, including Phoenix, "responsible for onboarding and maintaining 25,000+ drivers to power Uber in the Desert."[12] He is expected to have relevant information about the regional pressures that led

---

[11] https://www.linkedin.com/in/mgazulay/details/experience/ (last visited June 24, 2025)
[12] https://www.linkedin.com/in/blainelight/ (last visited June 25, 2025)

to rapid onboarding. Uber argues that Mr. Light's "Uber in the Desert" role ended shortly before these two drivers were onboarded, and so he will not have any relevant testimony. This is really splitting hairs. Mr. Light can testify to the Phoenix-specific policies for recruitment and onboarding and the business pressures attendant to them in the time period immediately (for one driver, less than a month) before these drivers were hired into that same ecosystem.

**Varun Kaushal**. In three Wave 1 cases (A.R.2, LCHB128, and Dean) Uber received reports of prior sexual misconduct on the part of the relevant drivers. In another case (B.L.), Uber knew its background check was missing the vast majority of the driver's adult life. Yet Uber retained each driver. During the relevant time period time, Mr. Kaushal tracked "City Ops" (including city-specific driver onboarding and retention numbers) for a number of cities, including San Francisco, around which A.R.2 and B.L. were assaulted. Plaintiffs believe the City Ops team also had Phoenix-related responsibilities (where LCHB128 and Dean were assaulted). For any city for which he was responsible, Mr. Kaushal will be able to testify about city-specific pressures that led to Uber retaining these drivers.

Uber argues that "seeking to understand how or why Uber centralized the control of certain functions across numerous cities, or even why it kept statistics regarding those functions, will not lead to a better understanding of the case specific facts underlying the incidents alleged." Why not? These facts will support or undermine Plaintiffs' claims connected to the onboarding and continued support of the subject drivers in these markets during this time for these cases. Uber does not get to decide how Plaintiffs prove their cases.

Dated: June 25, 2025

By: */s/ Roopal P. Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820

Respectfully Submitted,

*/s/ Laura Vartain Horn*
**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN HORN

**SHOOK, HARDY & BACON L.L.P**.
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

# ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, have authorized the filing.

Dated: June 25, 2025

By: /s/ *Laura Vartain Horn*
Laura Vartain Horn