LAURA VARTAIN (SBN: 258485)
    laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
    alli.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
    jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

Attorneys for Defendants
UBER TECHNOLOGIES, INC., RASIER, LLC, and
RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION, | Case No. 3:23-md-03084-CRB |
| | **REPLY IN SUPPORT OF MOTION TO TRANSFER** |
| This Document Relates to: | Judge: Hon. Charles R. Breyer |
| *A.R. v. Uber Technologies, Inc., et al.*, No. 24-cv-01827 | Courtroom: Courtroom 6 – 17th Floor<br>Hearing: TBD |
| *D.J. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07228 | |
| *A.G. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-01915 | |
| *A.R. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-07821 | |

*B.L. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-7940

*C.L. v. Uber Technologies, Inc., et al.*, No. 3:23-cv-04972

*J.E. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-03335

*Jane Doe QLF 0001 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-08387-CRB

*Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708

*K.E. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05281-CRB

*Amanda Lazio v. Uber Technologies, Inc.*, No. 3:24-cv-08937-CRB

*LCHB128 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-7019

*T.L. v. Uber Technologies, Inc., et al.*, No. 3:24-cv-9217

*WHB 318 v. Uber Technologies, Inc.*, No. 3:24-cv-04889

*WHB 407 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05028

*WHB 832 v. Uber Technologies, Inc.*, No. 3:24-cv-4900

*WHB 1486 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-04803

*WHB 1876 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05230

*WHB 1898 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-05027

*Jane Roe CL 68 v. Uber Technologies Inc., et al.*, No. 3:24-cv-06669

SABRINA H. STRONG (SBN: 200292)
    sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
    jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT, JR. (*Pro Hac Vice* admitted)
    oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
    adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice* admitted)
    ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT .......................................................................................................... 3

    A.    The Forum-Selection Clause Unambiguously Governs Plaintiffs' Claims. ........... 3

    B.    The Forum-Selection Clause Is Not The Product Of Fraud Or Overreaching. .................................................................................................. 6

    C.    The Public-Interest Factors Do Not Overcome The Forum-Selection Clause. ...................................................................................................... 8

    D.    Plaintiffs' Case-Specific Contentions Lack Merit. ............................................. 10

        1.    Irrelevance of WHB 407, 1876, and 823's Date of Consent ................... 10

        2.    The clause applies regardless of which Uber app prompted the agreement ....................................................................................... 11

        3.    A.R. 1 assented to the Terms of Use and never disaffirmed ................... 13

        4.    The clause is not vague as applied to WHB 318 or C.L... ...................... 13

        5.    A.G. is bound by the Terms of Use she signed. ....................................... 14

III.  CONCLUSION .................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co. v. Duncan*,
   972 F.2d 523 (3d Cir. 1992).................................................................................. 14

*Appling v. State Farm Mut. Auto. Ins. Co.*,
   340 F.3d 769 (9th Cir. 2003)................................................................................. 6

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
   571 U.S. 49 (2013) ..................................................................................... 8, 9, 10

*Campbell v. Sears, Roebuck & Co.*,
   161 A. 310 (Pa. 1932) ........................................................................................ 14

*Canters Deli Las Vegas, LLC v. Banc of Am. Merch. Servs., LLC*,
   2019 WL 3017662 (D. Nev. July 10, 2019)........................................................ 4

*Castro v. Budget Rent-A-Car Sys., Inc.*,
   154 Cal. App. 4th 1162 (2007).......................................................................... 9, 10

*City & Cnty. of S.F. v. Purdue Pharma L.P.*,
   No. 3:18-cv-07591-CRB ..................................................................................... 10

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009)............................................................................. 7

*Doe 1 v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir.2009 ................................................................................. 12

*Doe WHBE 3 v. Uber Techs., Inc.*,
   102 Cal. App. 5th 1135 (2024)............................................................................ 2

*Eclipse Consulting, Inc. v. BDO USA, LLP*,
   2018 WL 6735085 (D. Or. Nov. 13, 2018) ........................................................ 17

*Ehrman v. Cox Commc'ns, Inc.*,
   932 F.3d 1223 (9th Cir. 2019)............................................................................. 8

*Georgia-Pac. v. Officemax Inc.*,
   2013 WL 5273007 (N.D. Cal. Sept. 18, 2013) ................................................... 5

*Golden Gate Way, LLC v. Enercon Servs., Inc.*,
   572 F. Supp. 3d 797 (N.D. Cal. 2021) ............................................................... 12

*Greer ex rel. Greer v. Penn Cent. Transp. Co.*,
   1981 WL 207409 (Pa. Common Pleas Apr. 20, 1981) ...................................... 14

*Hernandez v. Burger*,
   102 Cal. App. 3d 795 (1980)............................................................................... 9

*Hofer v. Emley*,
   2019 Wl 4575389 (N.D. Cal. Sept. 20, 2019) .................................................... 17

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Huddleston v. John Christner Trucking, LLC*,
2017 WL 4310348 (E.D. Cal. Sept. 28, 2017) ................................................................. 7

*In re Clorox Consumer Litig.*,
894 F. Supp. 2d 1224 (N.D. Cal. 2012) ...................................................................... 10

*In re Heller Ehrman LLP*,
2010 WL 2653301 (Bankr. N.D. Cal. July 1, 2010) ...................................................... 12

*Intelligent Bus. Innovations, LLC v. All. Computing, Inc.*,
2016 WL 4524722 (E.D. Mich. Aug. 29, 2016) ............................................................. 15

*Laasko v. Xerox Corp.*,
566 F. Supp. 2d 1018 (C.D. Cal. 2008) ........................................................................ 7

*Lee v. Fisher*,
70 F.4th 1129 (9th Cir. 2023) ........................................................................................ 3

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) .......................................................................................................... 6

*Marullo v. Apollo Associated Servs., LLC*,
515 S.W.3d 902 (Tex. Ct. App. 2017) ......................................................................... 11

*McGinty v. Zheng*,
2024 WL 4248446 (N.J. Super. Ct. App. Div. Sept. 20, 2024) ............................... 12

*McKee v. Audible, Inc.*,
2017 WL 4685039 (C.D. Cal. July 17, 2017) ......................................................... 13, 14

*Mezyk v. U.S. Bank Pension Plan*,
2009 WL 3853878 (S.D. Ill. Nov. 18, 2009) ............................................................... 12

*Molina v. Scandinavian Designs, Inc.*,
2014 WL 1615177 (N.D. Cal. Apr. 21, 2014) ................................................................. 8

*Omega IM Grp., LLC v. Louidar, LLC*,
2018 WL 1069446 (S.D. Fla. Feb. 16, 2018) ............................................................... 15

*Petersen v. Boeing Co.*,
715 F.3d 276 (9th Cir. 2013) .................................................................................... 7, 12

*Richards v. Centripetal Networks, Inc.*,
709 F. Supp. 3d 914 (N.D. Cal. 2024) ......................................................................... 5

*Sarah v. Google LLC*,
2023 WL 6618266 (W.D. Mich. Oct. 11, 2023) ......................................................... 11

*Schertzer v. Bank of Am., NA*,
109 F.4th 1200 (9th Cir. 2024) .................................................................................. 4, 5

*Simmons v. Himmelreich*,
578 U.S. 621 (2016) ...................................................................................................... 6

- iii -

# TABLE OF AUTHORITIES
**(Continued)**

Page(s)

*Thomas v. Facebook, Inc.*,
  2018 WL 3915585 (E.D. Cal. Aug. 15, 2018) .......................................................................... 7

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016)................................................................................................. 7

*Warwick v. Schneider Nat'l, Inc.*,
  2020 WL 5891407 (N.D. Ill. Oct. 5, 2020)............................................................................ 11

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018).................................................................................... 1, 6, 8, 9

*ZPC 2000, Inc. v. SCA Grp., Inc.*,
  86 F. Supp. 2d 274 (S.D.N.Y. 2000)...................................................................................... 16

**Statutes**

28 U.S.C. § 1407(a) ..................................................................................................................... 10

Cal. Civ. Code § 1641 .................................................................................................................... 4

1    **I.    INTRODUCTION**

2           There is a "strong federal policy in favor of enforcing forum-selection clauses," and a

3    party seeking to avoid such a clause bears a "heavy burden of showing the sort of exceptional

4    circumstances that would justify disregarding" it.  *Yei A. Sun v. Advanced China Healthcare, Inc.*,

5    901 F.3d 1081, 1084, 1090 (9th Cir. 2018).  Plaintiffs fall far short of meeting that bar.  The

6    forum-selection clauses to which they agreed require transferring thirteen bellwether Plaintiffs'

7    cases to the districts where the alleged incidents underlying their claims occurred.[1]

8           Plaintiffs' opposition leaves much of Uber's transfer argument uncontested: Plaintiffs do

9    not dispute that (1) Uber's Terms of Use (TOU) constitute a valid and enforceable contract which

10   each Plaintiff executed (Mot. 6-8); (2) the TOU committed each Plaintiff to litigate "any dispute,

11   claim, or controversy arising out of or relating to incidents or accidents resulting in personal

12   injury (including but not limited to sexual assault or harassment claims)" in "the state or federal

13   courts in the state in which the incident or accident occurred," (Mot. 4 (quoting PTO 15 at 6));

14   and (3) Plaintiffs venued their pleadings in violation of that TOU provision (Mot. 1-2).  Nor do

15   Plaintiffs attempt any showing that some "strong public policy" of California or risk of

16   "depriv[ation] of [their] day in court" would justify the extraordinary and exceptional step of

17   judicially negating their forum selection clauses.  Mot. 11-13.

18          Instead, in a brief that exceeds this Court's page limits by nine pages, *see* General

19   Standing Order R. I.C, Plaintiffs offer several meritless arguments for disregarding their valid and

20   enforceable forum selection clauses.  Every one of these arguments should be rejected.

21          First, Plaintiffs argue that another TOU provision, in which Uber agrees to honor elections

22   by users claiming injury from sexual assault or sexual harassment to pursue those claims in

23   litigation rather than *arbitration*, renders the forum-selection clause for claims pursued in

24   litigation ambiguous and inapplicable.  But the TOU cannot bear that untenable reading, which

25   would violate multiple established rules of contractual interpretation.  Uber never asserted

26   (publicly or in the governing TOU) that users could choose any court forum they desired–only

27   _____

     [1] *See* Dkt. 3020 (Mot.) at 3 (table listing cases requiring transfer under 28 U.S.C. § 1404(a)).

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER
CASE NO. 3:23-MD-03084-CRB

that Uber's arbitration clause could be waived by survivors of sexual assault and harassment. Uber's TOUs say the exact opposite—that incidents must be brought in the state forum where the incident occurred.

Second, Plaintiffs assert that Uber overreached in bad faith by conditioning the use of its services on users' agreement to sue where they are injured.  But no authority supports the notion that Uber overreached or acted in bad faith by conditioning services on a clause that applies the same choice-of-forum principles that courts typically do—*i.e.*, a preference for the place of injury in tort litigation.  In fact, even under the standard Section 1404(a) forum non conveniens analysis, the place of injury is generally seen as the most appropriate forum considering that the forum has the most interest in the dispute, as that forum-state's laws would apply, Sauerwein Decl. Ex. A, at 13, and the witnesses and evidence are likely located in that forum.  *See* Mot. 13; *see also Doe WHBE 3 v. Uber Techs., Inc.*, 102 Cal. App. 5th 1135, 1149-64 (2024) (affirming stay and dismissal under forum non conveniens).  This is especially true for tort matters and where transportation network companies are heavily regulated at a local level.

Third, Plaintiffs suggest that this is the rare and extraordinary case where the Rule 1404 public-interest factors negate enforcement of a valid forum-selection clause.  But Plaintiffs concede that one of the factors cuts against them, and muster no persuasive argument on the other two, which also favor transfer.

Lastly, Plaintiffs' argue that some of them should be excused from the TOU for certain Plaintiff-specific reasons.  Each of those contentions also fails:

**Timing of Execution.**  It does not matter that some Plaintiffs agreed to the TOU after they were allegedly injured, because the forum-selection clause—by its express terms—applies to all incidents occurring *before or after* the agreement was signed.

**"Uber Eats."**  The TOU's plain terms govern Plaintiffs' "access or use" of "any content and services" related to any service on Uber's multi-sided digital platform, so it similarly makes no difference whether Plaintiffs were first prompted to agree to Uber's TOU on the Uber Rides app or the Uber Eats app.

**Age.**  One plaintiff who allegedly agreed to the TOU while still a minor (A.R. 1) cannot avoid the TOU because she has not disaffirmed her contract with Uber.

**"Too Vague."**  The forum-selection clause's requirement that Plaintiffs must litigate in the State where their injuries occurred is not "vague" when applied to Plaintiffs whose rides crossed state lines (WHB 318 and C.L.).

**Guest Rider.**  Finally, A.G., who signed the TOU but was allegedly assaulted during a ride called by her ex-husband, is still bound by the forum-selection clause that she signed.

In sum, the forum-selection clause is valid and enforceable as to each of the thirteen Plaintiffs in issue, and Uber's transfer motion should be granted as to all of them.

## II.    ARGUMENT

"When the parties have agreed to a valid forum-selection clause," the "district court should ordinarily transfer the case to the forum specified in that clause." *Lee v. Fisher*, 70 F.4th 1129, 1143 (9th Cir. 2023) (en banc).  None of Plaintiffs' arguments warrants an exception to that basic rule.

### A.    The Forum-Selection Clause Unambiguously Governs Plaintiffs' Claims.

By agreeing to the forum-selection clause, each Plaintiff agreed to litigate "any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury (including but not limited to sexual assault or harassment claims)" in "the state or federal courts in the state in which the incident or accident occurred."  Mot. 4, 8-10.  That language clearly and unambiguously prevents these thirteen Plaintiffs from litigating their cases in the Northern District of California, far from their places of injury.[2]

Attempting to conjure "ambigu[ity]" where none exists, Plaintiffs argue that different language in the TOU included as "part of the 'Arbitration Agreement'"—providing that "[w]here

---

[2] Plaintiffs briefly argue that they lacked "adequate notice" of the forum-selection clause.  Opp. 10 & n.5.  That argument is insubstantial.  As the case that they cite explains, "[a] person who signs a contract has a general duty to read it," and a "forum-selection clause is not invalid simply because it appeared as part of a form-contract or because the plaintiff did not specifically negotiate those terms."  *Canters Deli Las Vegas, LLC v. Banc of Am. Merch. Servs., LLC*, 2019 WL 3017662, at *5-6 (D. Nev. July 10, 2019); *see* Mot. 6-7 (collecting additional cases).

1    your claims are brought and litigated to completion … in a court of competent jurisdiction, Uber

2    agrees to honor your election"—"controls over" the forum-selection clause.  Opp. 10-11 (quoting

3    Sauerwein Decl. Ex. A, at 4) (ellipsis in original).  In other words, Plaintiffs contend that the

4    quoted sentence from the Arbitration Agreement (Section 2)—which addresses an "election"

5    between arbitration and litigation—means that Uber would consent not only to users' election to

6    litigate rather than arbitrate, but also to users' selection of a non-compliant litigation forum, in

7    violation of the forum-selection clause.  That reading is untenable for multiple reasons.

8         First, Plaintiffs' reading ignores the structure of the contract as a whole and would

9    impermissibly render the forum-selection clause null and superfluous.  *See Schertzer v. Bank of*

10   *Am.*, *NA*, 109 F.4th 1200, 1208 (9th Cir. 2024) (California "contract interpretation principles"

11   consider, *inter alia*, "whether a proffered interpretation: … gives effect to all of a contract's

12   provisions or renders some superfluous" and "is supported by reading the contract as a whole");

13   Cal. Civ. Code § 1641 (similar).  Consider the structure: the phrase "honor your election" appears

14   in subsection 2.b, titled "Exceptions to Arbitration," in which Uber promises that "this Arbitration

15   Agreement shall not require arbitration of … individual claims of sexual assault or sexual

16   harassment…."  Sauerwein Decl. Ex. A, at 4.  Separately, the conspicuously labeled "Choice of

17   Forum" subsection of Section 7 ("Other Provisions") embodies a different promise—this one by

18   the user—that dictates where ***any*** litigated claims will be brought, *i.e.*, in the district where the

19   injury occurred.  *Id*. at 13-14.  Plaintiffs argue that "honor your election" in subsection 2.b means

20   that sexual assault victims may not only choose between arbitration and litigation, but also may

21   choose "where to sue Uber" if they opt for the latter.  Opp. 11.  But that interpretation would

22   nullify the Choice of Forum provision specifically applicable to claims for "personal injury

23   (including but not limited to sexual assault or harassment claims)," Sauerwein Decl. Ex. A, at 14,

24   which unambiguously requires users to litigate any such claims in the place of injury.  Plaintiffs'

25   reading cannot supplant Uber's structurally coherent reading, which gives effect to both

26   provisions: the parties agreed to defer to Plaintiffs' "election" between arbitration and litigation,

27

28

1    but with any litigation to occur in the place of injury.  *Schertzer*, 109 F.4th at 1208.[3]

2          Second, Uber's plain-language interpretation better coheres with the principle (endorsed

3    by Plaintiffs) that "specific terms control over general ones."  Opp. 11 (quoting *Richards v.*

4    *Centripetal Networks, Inc.*, 709 F. Supp. 3d 914, 920 (N.D. Cal. 2024)).  The clause in Section 7

5    titled "Choice of Forum" represents the parties' specific agreement as to the choice of forum for

6    disputes brought in "*courts*," as the contract itself makes clear.  Sauerwein Decl. Ex. A at 13-14

7    (personal injury claims "shall be brought exclusively in the *state and federal courts* in the State in

8    which the incident or accident occurred.... (emphasis added)); *see also Georgia-Pac. v.*

9    *Officemax Inc.*, 2013 WL 5273007, at *8 (N.D. Cal. Sept. 18, 2013) ( "a heading or title" can

10   "assist in interpreting a contract").  That specific and clearly labeled language prevails over

11   Plaintiffs' strained and overbroad reading of the general phrase "honor your election" in the

12   separately labeled "Exceptions to Arbitration" clause to "supersede[] ... the forum-selection

13   clause," which expressly dictates where any litigation claims must be brought.  Opp. 11.

14         Finally, Plaintiffs cannot salvage their argument by invoking a prior version of the TOU

15   or public statements by Uber.  Plaintiffs are correct that a prior version of the TOU did not

16   contain a forum-selection clause.  Opp. 4.  But they do not contest that clause's addition validly

17   amended the contract (which already included "honor your election" in the separate Arbitration

18   Agreement section, *see* Opp. 1-2).  And the public statements on which Plaintiffs rely are simply

19   irrelevant: they predate the forum-selection clause by three years, *see* Opp. 3-4, 14, and therefore

20   shed no light on the meaning of the forum-selection clause that Uber later added.  Indeed, the

21   public statements are inadmissible in any event: they are extrinsic to the TOU, and under

22   California law, "extrinsic evidence is not admissible to add to, detract from, or vary the terms of a

23   written contract."  *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 777 (9th Cir. 2003).

24

25   [3] Indeed, Uber's public statements in *Turning the Lights On*—which Plaintiffs reference
     repeatedly—only confirm that the revisions to the Arbitration Agreement, including the phrase
26   "honor your election," deferred to survivors' choice of dispute-resolution process (whether "in a
     mediation where they can choose confidentiality; in arbitration, where they can choose to
27   maintain their privacy while pursuing their case; or in open court"), not geographic location.  Dkt.
     3264-3 at 2.
28

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER
CASE NO. 3:23-MD-03084-CRB

1    The forum-selection clause "says what it means and means what it says," *Simmons v.*

2    *Himmelreich*, 578 U.S. 621, 627 (2016): all personal injury claims against Uber, including for

3    sexual assault or harassment that users like Plaintiffs have elected to litigate rather than arbitrate.

4         **B.    The Forum-Selection Clause Is Not The Product Of Fraud Or Overreaching.**

5         Plaintiffs' fallback unenforceability argument similarly fails.  Ninth Circuit precedent

6    requires Plaintiffs to identify an "exceptional reason" or "extraordinary circumstances" to

7    disregard a forum-selection clause.  *Yei A. Sun*, 901 F.3d at 1088.  Drawn from *M/S Bremen v.*

8    *Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the Ninth Circuit's test authorizes disregard of such a

9    clause only (1) if there was "fraud or overreaching"; (2) if "enforcement would contravene a

10   strong public policy of the forum" or (3) if trial "in the contractual forum" would "for all practical

11   purposes" deprive plaintiffs of their day in court.  *Id.* at 15, 17-18.

12        Plaintiffs spend much of their brief resisting this Ninth Circuit test.  They insist that,

13   because "the clause is contained in a form consumer contract," this Court should apply a more

14   freewheeling analysis, asking more generally whether enforcement would be "unreasonable under

15   the circumstances."  Opp. 6-10.  But they cite no cases declining to enforce contractually valid

16   forum-selection clauses for reasons other than the three set out in *Sun* and *M/S Bremen*.  And

17   many of the cases that Plaintiffs cite only *reiterate* the three-part test.  *See, e.g.*, *Thomas v.*

18   *Facebook, Inc.*, 2018 WL 3915585, at *2 (E.D. Cal. Aug. 15, 2018) ("There are three

19   circumstances under which enforcement of a forum selection clause would be unreasonable ….");

20   *Huddleston v. John Christner Trucking, LLC*, 2017 WL 4310348, at *3 (E.D. Cal. Sept. 28, 2017)

21   (listing the same three circumstances); *Laasko v. Xerox Corp.*, 566 F. Supp. 2d 1018, 1021 (C.D.

22   Cal. 2008) ("Fundamental fairness is determined by three considerations….").  Nor are Plaintiffs

23   correct that the test set out in *Sun* and *M/S Bremen* does not apply to "consumer contracts," Opp.

24   7: the Ninth Circuit regularly applies "the directives of the Supreme Court in *Bremen*" to online-

25   consumer-contract cases.  *See, e.g.*, *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009); *see*

26   *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1030 (9th Cir. 2016) (similar).

27        Plaintiffs cannot satisfy that test. They do not argue that enforcement would contravene

28

any "strong public policy" of California.  They do not (and obviously could not) suggest that trial in the place of injury would deprive them of their day in court.  And while they purport to invoke "improper overreach," Opp. 13-15, they fall far short of the requisite showing.  They do not contest that they voluntarily agreed to Uber's TOU.  They do not claim (as in the sole Ninth Circuit case finding a dispute as to fraud or overreaching) that they were not "permit[ted] … time to read the agreement" or told that any adverse consequences would follow from "failure to sign it."  *Petersen v. Boeing Co.*, 715 F.3d 276, 283 (9th Cir. 2013).  If Plaintiffs preferred not to use Uber's services rather than agree to the forum-selection clause, they were entirely free not to use those services.  And while Plaintiffs argue that they should not be expected to "read terms and conditions" and that it is unfair of Uber to have such terms, Opp. 13, they concede that "prevailing law" rejects that argument, *id.* at 14.  *See, e.g.*, *Molina v. Scandinavian Designs, Inc.*, 2014 WL 1615177, at *3 (N.D. Cal. Apr. 21, 2014) ("[O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it." (collecting cases)).

Plaintiffs' other arguments (purported unreasonableness, inadequate communication, and "bad faith") are all unmoored from fraud/overreach or any other recognized "exceptional reason" for non-enforcement.  *Yei A. Sun*, 901 F.3d at 1088.  The Court therefore need not consider them.  And even if the Court were to address those arguments, it should reject them.  Plaintiffs have no principled basis, for example, for their argument that it is somehow unfair, "unreasonable," or "bad faith" for Uber to require Plaintiffs to sue where they are injured instead of directing all litigation to its home forum.  Opp. 12-13.  Seeking to litigate sensitive sexual-assault claims where the relevant evidence is likely most readily available is not in any sense unfair.  *See* Mot. 13 (noting that key witnesses, including the independent drivers, reside outside this Court's subpoena authority).  And it hardly disadvantages Plaintiffs.  To the contrary, injured parties often prefer to litigate where they are injured, especially if they also reside there.  *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1226 (9th Cir. 2019) ("a party bringing suit in its own State's courts might (seem to) enjoy . . . a home court advantage against outsiders").  Plaintiffs

- 7 -

1   themselves admit this.  Opp. 5 (acknowledging potential "home-town" advantage).

2          Uber's forum-selection clause also mirrors the general legal principles governing forum

3   selection and choice of law.  "[T]he local interest in having localized controversies decided at

4   home" should be considered in every forum analysis under Supreme Court precedent.  *Atl.*

5   *Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013).  And

6   conflict-of-laws doctrine has long recognized that "[t]he state with the 'predominant' interest in

7   controlling conduct normally is the state in which such conduct occurs and is most likely to cause

8   injury."  *Castro v. Budget Rent-A-Car Sys., Inc.*, 154 Cal. App. 4th 1162, 1180 (2007); *see*

9   *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980) (similar).  The forum-selection clause in

10  Uber's TOU reenforces these well-established principles, providing that the forum with the "local

11  interest in having localized controversies decided at home" will be the forum for trial.  *Atl.*

12  *Marine*, 571 U.S. at 62 n.6.  Plaintiffs' argument that the forum-selection clause somehow

13  violates "the parties' settled expectations, or that "[n]o Plaintiff could read this clause and

14  evaluate how its inclusion should affect her decision to ride with Uber," therefore lacks merit.

15  Opp. 9.  There is nothing "unforeseeable" about requiring users to sue where they are injured,

16  which mirrors the typical forum-selection rules applicable even without a contract clause.  *Id.*[4]

17         **C.    The Public-Interest Factors Do Not Overcome The Forum-Selection Clause.**

18         Plaintiffs also briefly assert that, even if the forum-selection clause is valid and

19  enforceable under *Sun* and *M/S Bremen*, this is an "exceptional case[]" where the Rule 1404

20  public-interest factors nevertheless warrant denying transfer.  Opp. 23-24.  It is not.

21         To start, Plaintiffs fail to address one of the three public-interest factors: "the interest in

22  having the trial of a diversity case in a forum that is at home with the law."  *Atl. Marine*, 571 U.S.

23  at 62 n.6.  That factor plainly favors transfer to the forums where the alleged injuries occurred,

24  *see* Mot. 14, and confirms that this is not the "rare[] case" where the public-interest factors alone

25  could "defeat a transfer motion."  *Yei A. Sun*, 901 F.3d at 1088.

26  _____

    [4] As explained above, *supra* at 5-6, the premise of Plaintiffs' unreasonable communication
27  argument against enforcement fails: that Uber changed the TOU over time does not render the
    clear terms of the forum-selection clause "ambiguous."  Opp. 10-12.

28

- 8 -

Plaintiffs misstate the law concerning a second factor, "the local interest in having localized controversies decided at home." *Atl. Marine*, 571 U.S. at 62 n.6.  As already explained, the place of the alleged injury is the forum with the greatest interest in the matter.  *See Castro*, 154 Cal. App. 4th at 1180 ("The accident and Castro's injury occurred within Alabama's borders, thus giving Alabama a presumptive interest in controlling the conduct of those persons who use its roadways….").  Plaintiffs' single case citation—*In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237-38 (N.D. Cal. 2012) (cited by Opp. 24)—is inapposite.  The court did not deny that local interest but merely declined to undertake "a detailed choice-of-law analysis" in the context of motion to strike class allegations.  The "local interest" factor fully aligns with Uber's forum selection clause and favors transfer of Plaintiffs' cases here.

That leaves "the administrative difficulties flowing from court congestion." *Atl. Marine*, 571 U.S. at 62 n.6.  As this District is one of the nation's busiest, this factor also favors transfer.  Mot. 14.  Plaintiffs assert that it would be more convenient for trials to stay in this District because the Court "has stated it will oversee trial in each of the bellwether cases, no matter where that trial occurs."  Opp. 23.  But the Court made clear that it would first decide the venue issues on their merits.  *See* Feb. 28, 2025 Hr'g Tr. 10:17-18 ("If I ultimately rule that the venue is elsewhere, then I will go.").  And even if traveling to try cases ultimately were to prove too burdensome for the Court, that is not a reason to keep the cases in this district—it is a reason to transfer the cases to their home forums, where other able district judges can oversee their trials.

At bottom, Plaintiffs' arguments are inconsistent with the MDL statute's design.  Congress determined that cases should be consolidated for pretrial purposes but tried across the country.  Mot. 14; *see* 28 U.S.C. § 1407(a).  This Court has experienced both sides of that dynamic, having tried a bellwether case transferred here from MDL proceedings in the Northern District of Ohio.  *See City & Cnty. of S.F. v. Purdue Pharma L.P.*, No. 3:18-cv-07591-CRB.  So when Plaintiffs claim that the cases should remain in this District because this is a "mature MDL," Opp. 24, they defy Congress's decision about how MDLs are supposed to proceed.

### D.    Plaintiffs' Case-Specific Contentions Lack Merit.

Plaintiffs fare no better when they argue that individual Plaintiffs' circumstances warrant departure from their forum-selection clauses.

#### 1.    *Irrelevance of WHB 407, 1876, and 823's Date of Consent*

Plaintiffs contend that the forum-selection clause does not apply to three Plaintiffs (WHB 407, 1876, and 823) who were allegedly injured prior to agreeing to the clause.  Opp. 15-16.[5]  But the clause's text could not be clearer: it governs all disputes arising out of Uber's services, "whether *before or after* the date you agreed to the Terms."  Sauerwein Decl. Ex. A, at 14 (emphasis added).  Plaintiffs do not dispute the plain meaning of that text, to which they agreed.

Plaintiffs urge the Court to ignore that plain contractual language, arguing that applying it "retroactively" would be "neither reasonable nor fundamentally fair."  Opp. 15.  But as they recognize, all pertinent authority rejects their argument.  In both the forum-selection-clause and arbitration contexts, courts regularly apply contracts retroactively where their terms so provide. Mot. 10 (collecting cases).  And while Plaintiffs complain that Uber cited only "an unpublished Second Circuit decision" applying this rule to a forum-selection clause rather than an arbitration agreement, Opp. 16, multiple additional cases confirm the rule for forum-selection clauses, *see, e.g.*, *Sarah v. Google LLC*, 2023 WL 6618266, at *4 (W.D. Mich. Oct. 11, 2023); *Warwick v. Schneider Nat'l, Inc.*, 2020 WL 5891407, at *2-4 (N.D. Ill. Oct. 5, 2020); *Marullo v. Apollo Associated Servs., LLC*, 515 S.W.3d 902, 904-06 (Tex. Ct. App. 2017).  Plaintiffs cite no basis for departing from that consensus.

One Plaintiff, WHB 823, additionally argues that the forum-selection clause should not be enforced against her because she had filed a state-court complaint against Uber before agreeing to it.  Opp. 16.  But Plaintiffs cite no case suggesting that a forum-selection clause becomes inoperative simply because a plaintiff has initiated litigation. The only authority they cite, *Mezyk v. U.S. Bank Pension Plan*, 2009 WL 3853878 (S.D. Ill. Nov. 18, 2009), declined to apply a

---

[5] Although WHB 407's alleged injuries occurred after Uber added the forum-selection clause to the TOU, Plaintiffs are correct that it does not appear she signed the clause before the incident.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER
CASE NO. 3:23-MD-03084-CRB

forum-selection clause because plaintiffs "were not reasonably notified" that the defendant had amended an ERISA plan, *Mezyk*, 2009 WL 3853878, at \*4. Here, by contrast, WHB 823 received notice of the TOU through an in-app blocking screen and affirmatively indicated her consent to the TOU. *See* Mot. 7; Sauerwein Decl. ¶¶ 6-7, 30-31, Ex. R. And even if there were some general rule that a forum-selection clause does not apply after a case is filed, Plaintiffs do not claim that WHB filed *this federal suit*—as opposed to a distinct state-court action—before agreeing to the forum-selection clause.

>        2.      The clause applies regardless of which Uber app prompted the agreement

Plaintiffs next argue that Plaintiffs Dean, T.L., A.R. 1, and WHB 1898 and 1486's forum-selection agreements should be ignored because Uber's records show those Plaintiffs agreed to the relevant TOU through the Uber Eats app. Opp. 16-20.[6] The plain text of the TOU refutes Plaintiffs' arguments, even if these five users agreed to the TOU when they opened Uber Eats.

As another court that faced the same issue has recognized, the TOU repeatedly states that they govern *all* of the services Uber provides through its platform, including rides facilitated by the Uber app. *See McGinty v. Zheng*, 2024 WL 4248446, at \*1 (N.J. Super. Ct. App. Div. Sept. 20, 2024) (per curiam) ("Prior to requesting an Uber platform, such as Uber Rides or Uber Eats, the user must agree to Uber's Terms of Use."). The very first sentence of the contract reads: "These Terms of Use (Terms) govern your access or use … of the multi-sided digital marketplace platform ('Uber Marketplace Platform') and *any* related content or services (…as more fully

---

[6] Plaintiffs suggest that the Court must conduct an evidentiary hearing on whether these forum-selection clauses apply to other services besides Uber Eats. Opp. 17 n.11. On the contrary, because the text of the TOU unambiguously applies to all of Uber's services, *see infra* at 11-12, "extrinsic evidence cannot be received," *see supra* at 5, no hearing can be needed. *See Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 812-13 (N.D. Cal. 2021); *see also In re Heller Ehrman LLP*, 2010 WL 2653301, at \*1 (Bankr. N.D. Cal. July 1, 2010) ("'[c]ontract interpretation is a question of law[.]' … [T]he contract term at issue here is unambiguous, and the court can resolve the dispute without an evidentiary hearing." (quoting *Doe 1 v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.2009)). Plaintiffs improperly invoke *Petersen v. Boeing Co.* to support their request for an evidentiary hearing. That case required a hearing where the plaintiff introduced "specific evidence sufficient to demonstrate" one of the *Bremen/Sun* exceptions to enforcing a valid forum-selection clause might apply (discussed *supra*), i.e., "that he would be wholly foreclosed from litigating his claims." 715 F.3d 276, 281 (9th Cir. 2013). As explained above, Plaintiffs do not introduce evidence sufficient to invoke any such exception here.

defined in Section 3)." Sauerwein Decl. Ex. A, at 3 (emphasis added). And Section 3 ("The Marketplace Platform & Services") further defines "services" to include "services rendered by Uber that facilitate your connection to independent third party providers, including drivers and restaurants … for the purchase of services or goods, such as transportation." *Id.* at 6. Finally, the TOU contain numerous clauses specific to riding with independent drivers—even when presented via Uber Eats. *See, e.g.*, *id.* at 9 ("If you request a ride option with a car seat…."); *id.* ("[Y]ou may be allowed to bring a small animal, such as a dog or cat, on a ride requested…."); *id.* ("[S]ervice animals are generally permitted to accompany riders without extra charge."); *id.* at 11 ("Uber may charge you a fee if, during your use of the Services, you have caused damage to a vehicle…."); *id.* at 13 (Uber not liable for "improper installation or use of child restraint systems for guests on rides requested through the services"). In short, no reader could doubt that the agreement covers—just as it says—"any" of Uber's services, including ride-facilitation. And each Plaintiff here alleges she was "the owner of the Uber account used to request the relevant ride." *Dean*, Am. Compl. ¶ 6; *A.R. 1*, Am. Compl. ¶ 6 (similar); *WHB 1898*, Am. Compl. ¶ 6; *WHB 1486*, Am. Compl. ¶ 6 (similar).

Plaintiffs' contrary argument rests on a single case, *McKee v. Audible, Inc.*, 2017 WL 4685039 (C.D. Cal. July 17, 2017), which has no application here. *McKee* considered whether a plaintiff who used an Amazon Echo device agreed to be bound by Audible's terms of use. *Id.* at *10-11. The court thought not, because the contractual language did not clearly state that plaintiff agreed to Audible's conditions of use and no "reasonable consumer registering the Amazon Echo expects to be presented with terms of use governing his or her contractual relationship with separate corporate entities, let alone one he or she has never dealt with." *Id.* at *11 ("[T]hough the Alexa Sign in page may afford notice of Alexa's Terms, it does not necessarily afford notice of Audible's [Conditions of Use].").[7] Here, by contrast, a single corporate entity—Uber—plainly

---

[7] In addition, *McKee* concluded that the defendants' "sign-in-wrap, or clickwrap" agreement did not suffice to establish mutual assent to the arbitration clause at issue because it failed to put reasonable consumers on notice of "any contractual consequences to clicking th[e] particular button," and was plagued by "linguistic imprecision" and "small, undifferentiated font." *Id.* at

1    stated that its TOU applied to all of its "services," including "connection to … drivers."

2    Sauerwein Decl. Ex. A, at 3.  On its face, Uber's terms "afford notice" that they apply to all of

3    Uber's services, so *McKee* is inapposite.  2017 WL 4685039, at *11.

4                    *3.    A.R. 1 assented to the Terms of Use and never disaffirmed*

5            Plaintiffs assert that Plaintiff A.R. 1 is not bound by the TOU because she assented as a

6    minor.  Opp. 20.  But if A.R. 1 indeed assented as a minor, she violated the TOU.  *See* Sauerwein

7    Decl. Ex. A, at 8 ("You must be at least 18 years of age … to obtain an Account.").  And

8    regardless, Plaintiffs are wrong that A.R. 1's minority voids her assent.  In Pennsylvania,

9    "[c]ontracts of a minor, other than contracts for necessities, are *voidable* by the minor, not void."

10   *Aetna Cas. & Sur. Co. v. Duncan*, 972 F.2d 523, 526 (3d Cir. 1992) (emphasis added); *see*

11   Restatement (Second) of Contracts § 14.  "This means that a minor can render a contract a nullity

12   by disaffirming it at any point up until a reasonable time after the minor attains his or her

13   majority"—"[i]t does not mean a contract with a minor is a nullity prior to any such

14   disaffirmance."  *Aetna*, 972 F.2d at 526.  Plaintiffs identify no evidence that A.R. 1 has

15   disaffirmed her TOU, or that a "reasonable time" remains to do so.  *Cf. Campbell v. Sears,*

16   *Roebuck & Co.*, 161 A. 310, 312 (Pa. 1932) ("thirteen months" not "reasonable time … to

17   disaffirm"); *see Greer ex rel. Greer v. Penn Cent. Transp. Co.*, 1981 WL 207409 (Pa. Common

18   Pleas Apr. 20, 1981) ("more than one year" not reasonable).  A.R. 1 remains bound by the TOU.

19                   *4.    The clause is not vague as applied to WHB 318 or C.L.*

20           Nor are Plaintiffs correct when they assert that the TOU are "vague" as to two Plaintiffs

21   whose rides crossed state lines.  Opp. 20.  Again, the TOU are clear: Plaintiffs agreed to litigate

22   against Uber in "the state or federal courts in the state in which the incident or accident occurred."

23   Sauerwein Decl. Ex. A, at 14.  Plaintiffs know where their injuries allegedly occurred, and the

24   forum-selection clause unambiguously states that they must litigate in those forums.

25           For WHB 318, the analysis is straightforward.  She alleges that she was assaulted "[a]fter

26

27   *8-10.  The "clickwrap" process for assenting to Uber's TOU, by contrast, suffers from none of
     these flaws, Mot. at 7-8; nor do Plaintiffs contend otherwise.

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER
CASE NO. 3:23-MD-03084-CRB

the ride had crossed into North Carolina." *WHB 318*, Am. Compl. ¶ 9.  So the proper venue is North Carolina.  As for C.L., her ride allegedly traversed Maryland and Virginia, but she does not allege in which of those States her independent driver's alleged misconduct occurred.  *C.L.*, Am. Compl. ¶ 5.  C.L. is positioned to know the answer to that question, and should elect venue accordingly; if she is unsure, Uber is willing for her to litigate in either forum.  But C.L. cannot simply *avoid* the forum-selection clause through imprecisely pleading place of injury—otherwise, any Plaintiff could decline to allege place-of-injury, and circumvent the agreement by strategic omission.  Just because C.L.'s place-of-injury allegations may be vague does not render her forum-selection clause impermissibly vague—on the contrary, courts routinely adjudicate place of injury as part of the default common-law choice-of-law analysis.  *See supra* at 2, 8.

Plaintiffs' authorities only underscore the weakness of their argument.  In *Omega IM Group, LLC v. Louidar, LLC*, the forum-selection clause placed the venue determination "at the sole and absolute discretion of Omega's counsel."  2018 WL 1069446, at *7 (S.D. Fla. Feb. 16, 2018).  Neither party retains such "absolute discretion" under the forum-selection clause here.  In *Intelligent Business Innovations, LLC v. Alliance Computing, Inc.*, 2016 WL 4524722 (E.D. Mich. Aug. 29, 2016), the clause provided that the contract would be "enforced according to the laws of the state of Florida, Orange County, Orlando and any dispute under this Agreement must be brought in this venue and no other," and so failed to "give any direction as to the appropriate court or level of court."  *Id.* at *4.  And in *ZPC 2000, Inc. v. SCA Group, Inc.*, 86 F. Supp. 2d 274 (S.D.N.Y. 2000), the clause "refer[red] obliquely to the 'Court of New York' and d[id] not distinguish between state and federal courts, or between districts within the state."  *Id.* at 277.  Here, by contrast, the forum-selection clause specifies an easily ascertainable venue: the "state or federal courts in the State in which the incident or accident occurred."  Sauerwein Decl. Ex. A, at 14.  So the problems in Plaintiffs' cited cases are entirely absent here.

### 5.    *A.G. is bound by the Terms of Use she signed.*

Finally, Plaintiffs assert that A.G. is not bound by the TOU she signed for her own account because the particular ride during which she was allegedly assaulted was requested

through her ex-husband's account. Opp. 21. Again, the TOU foreclose this argument. A.G. undisputedly agreed to a forum-selection clause that governs "any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury … that you allege occurred in connection with your use of the Services." Sauerwein Decl. Ex. A, at 13-14. Plaintiff asserts that she was sexually assaulted during an Uber-facilitated ride. That ride was a "use" of Uber's "Services"—defined to include "services rendered by Uber that facilitate your connection to independent third party providers, including drivers … for the purchase of services or goods, such as transportation"—regardless whose Uber account was used to request the ride. *Id.* at 3. And while Plaintiffs assert that A.G. did not herself "purchase … transportation," Opp. 21 (ellipsis in original), that makes no difference: Uber facilitated A.G.'s connection to a driver—a "service" under the TOU A.G. signed—regardless of who "purchase[d]" the services or which account they used to pay. In addition, A.G. would still be equitably estopped to the terms of her ex-husband's agreement with Uber.[8]  "The 'direct benefits' requirement of the equitable estoppel analysis requires a nonsignatory to have obtained a benefit flowing directly from an agreement." *Eclipse Consulting, Inc. v. BDO USA, LLP*, 2018 WL 6735085, at *8 (D. Or. Nov. 13, 2018).[9] A.G. received just such a benefit—a ride—here. *See Hofer v. Emley*, 2019 Wl 4575389, at *6 (N.D. Cal. Sept. 20, 2019) ("Jonathan Hofer knowingly received a direct benefit as a result of the Agreement—the ability to travel as a passenger in a rental car to visit family for Thanksgiving."). Having benefited from Uber's services, she cannot avoid the TOU directly through her own account or from the use of services through her husband's account.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant the motion to transfer and enter the proposed order.

---

[8] As Plaintiffs recognize (Opp. 21 n.12), the ex-husband must have agreed to the Terms of Use in order to facilitate the relevant ride.
[9] Plaintiffs claim that this case does not apply Oregon law, Opp. 21, but the decision makes clear that the relevant agreement was to be "enforced in all respects in accordance with the laws of the State of Oregon," *Eclipse Consulting*, 2018 WL 6735085, at *2.

1

2    Dated:  June 27, 2025                    **O'MELVENY AND MYERS LLP**

3

4

5                                            By:  ___*/s/ Sabrina H. Strong*___

6                                            **KIRKLAND & ELLIS LLP**
                                             LAURA VARTAIN
7                                            ALLISON M. BROWN
                                             JESSICA DAVIDSON
8
                                             **O'MELVENY AND MYERS LLP**
9                                            SABRINA H. STRONG
                                             JONATHAN SCHNELLER
10
                                             **SHOOK, HARDY & BACON, LLP**
11                                           PATRICK L. OOT, JR.
                                             ALYCIA A. DEGEN
12                                           MICHAEL B. SHORTNACY
                                             CHRISTOPHER V. COTTON
13

14                                           *Counsel for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28