

**VIA ECF**

The Honorable Lisa J. Cisneros
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

        RE:    *In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation*, MDL No. 3084 CRB; Motion to Quash Law Firm Subpoenas

Your Honor:

      Plaintiffs respectfully request that the Court quash the subpoenas Uber served on nine law firms representing Plaintiffs in this MDL.[1] This briefing concerns only certain global issues; any law-firm-specific objections on substance or venue are preserved. ECF 3328 at 8.

    **I.**    **Background**

      On June 13, 2025, one business day before the deadline for substantial completion of common fact discovery, Uber gave notice of intent to serve subpoenas on nine law firms appointed to MDL or JCCP leadership. The subpoenas are substantively identical. Each seeks documents from the named law firm as well as "any co-counsel." Each includes six categories of documents relating to any "Funding" or "Third-Party Funding" the law firm received. Although Uber has stated its intent is to discover information related to third-party litigation funding and settlement authority, the subpoenas sweep broadly, potentially encompassing, for example, ordinary referral arrangements. *See* ECF 3263 at Ex. A p. 3 (defining "Third Party Funding" to "relate[] to any benefit received from any Person that is not a party … that provides support for, or incentive to continue, the Litigation"). Further, the subpoenas vaguely and intrusively demand "All Documents, Communications, or Agreements that concern the authority to settle or otherwise resolve the Litigation and/or claims that have or may be asserted therein." *Id.*

      During meet-and-confer, Uber's counsel stated that Uber seeks to understand the role third-party funding might play in settlement decisions. Plaintiffs asked if Uber has any particularized concerns along those lines in this MDL. Uber's counsel conceded the answer was 'no' but stated that the subpoenas were justified by counsel's experience in other MDLs.

    **II.**    **Legal Standards**

      This Court previously articulated the general legal standard under Rule 45:

---

[1] ECF 3250, 3252, 3253, 3255, 3257, 3258, 3259, 3262, 3263.

July 1, 2025
Page 2

> Rule 45 governs motions to quash or modify a subpoena and provides that a court must modify or quash a subpoena that, among other things, 'fails to allow a reasonable time to comply,' 'requires disclosure of privileged or other protected matter, if no exception or waiver applies,' or 'subjects a person to undue burden.' Fed. R. Civ. P. 45(c)(3)(A)(i), (iii), (iv). 'Although irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor [related to undue burden] when determining motions to quash a subpoena.'

ECF 695 at 3. In addition, "discovery sought from opposing counsel is universally disfavored." *PlayUp, Inc. v. Mintas*, 2024 WL 1285670, at *4 (D. Nev. Mar. 25, 2024) (internal quotation marks omitted; collecting cases). Recognizing the chilling effect of discovery on opposing counsel, as well as the attendant potential for harassment and time-waste, courts permit such discovery only where "the information is crucial to the preparation of the case." *Silver v. BA Sports Nutrition, LLC*, 2020 WL 6342939, at *2 (N.D. Cal. Oct. 29, 2020) (citation omitted; collecting cases).

### III.    Argument

The subpoenas should be quashed for three independent reasons: relevance, work product, and timeliness.

#### A.    The subpoenas seek information that is not relevant, let alone "crucial to the preparation of the case."

Even ordinary subpoenas are limited to seeking relevant information, i.e., information bearing on a material fact. *See* ECF 695 at 3; Fed. R. Civ. P. 26(b)(1); Fed. R. of Evid. 401. As noted above, subpoenas on opposing counsel are permissible only if they seek information "crucial to the preparation of the case." *Silver*, 2020 WL 6342939 at *2 (citation omitted).

Here, Uber's subpoenas do not meet the lesser standard of relevance, let alone surmount the "difficult burden" of cruciality. *PlayUp*, 2024 WL 1285670 at *3 (citation omitted). Law firms' financing arrangements do not make "more or less probable" any fact "of consequence in determining the action." Fed. R. Civ. 401. They do not show that Uber was or was not negligent, do not help or hinder Plaintiffs' agency, fraud, common-carrier, or products-liability theories, and do not support or detract from Plaintiffs' compensatory or punitive damages.

For that reason, courts overwhelmingly hold that even a *party's* litigation funding is not relevant. *See, e.g., MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019) ("Micron is not entitled to the discovery it seeks because it is not relevant."); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (stating "[t]he Court agrees with the plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant," and collecting cases); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 311-12 (D. Nev. 2019) ("Outside of special litigation contexts … courts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a

July 1, 2025
Page 3

case.") (citation omitted). Courts permit such discovery only in patent cases, "given their unique standing requirements," and class actions, given the Rule 23(a)(4) adequacy requirement. *V5 Techs*, 334 F.R.D. at 312 n.5.[2] This case is neither.

During meet-and-confer, Uber expressed concern about hypothetical third-party funders having a say in settlement. This does not establish relevance. *See Fulton v. Foley*, 2019 WL 6609298, at *2-3 (N.D. Ill. Dec. 5, 2019) ("Even if the documents could somehow be relevant for settlement discussions, settlement considerations are a wholly distinct concept and not a proper basis to obtain discovery under Rule 26(b)(1). More specifically, the litigation funding documents have no bearing on evidence that is needed to prove a claim or defense at a trial or establish the amount of damages that a jury should award.").

But even courts that recognize settlement authority as a potential reason for disclosure have refused to permit discovery based on pure speculation—which is all Uber offers here. *See Valsartan*, 405 F. Supp. 3d at 615 (even in a class action, holding that: "[D]iscovery will be ordered where there is a sufficient showing that a non-party is making ultimate litigation or settlement decisions, the interests of plaintiffs or the class are sacrificed or are not being protected, or conflicts of interest exist. However, no such evidence has been raised by defendants and, to date, the Court has not seen anything of the sort."); *MLC*, 2019 WL 118595, at *2 (denying discovery absent "specific, articulated reason to suspect bias or conflicts of interest."); *V5 Techs.*, 334 F.R.D. at 311-12 ("Defendant attempts to poke holes in that showing of irrelevance by grabbing its baton, trumpets, and costumes to put on its own parade of horribles here.").[3] Even if there were a thin reed of relevance here, Uber's unsupported speculation cannot show that the information sought is crucial to preparation of its case.

Finally, discovery in support of Uber's settlement strategy is procedurally improper. Judge Breyer, with the consent of the parties, appointed the Hon. Gail Andler (ret.) as Settlement Master. PTO 22 (ECF 2459). There is no indication that Uber has shared these concerns with Judge Andler or that she has identified them as barriers to effective settlement negotiations. The Court should not permit Uber to use formal discovery to circumvent Judge Andler. *See Fulton*, 2019 WL 6609298 at *2-3 ("Defendant's argument is better suited for a discussion in the context of a settlement conference with the Court, where the parties can exchange information only for use in settlement discussions.").

---

[2] *See also* Standing Order for All Judges of the Northern District of California ¶ 17 (requiring disclosure of funding only in "any proposed class, collective, or representative action").

[3] *Cf. MSP Recovery Claims Series, LLC v. Sanofi-Aventus U.S. LLC*, 2024 WL 4100379, at *6 (D.N.J. Sept. 6, 2023) (allowing "limited discovery" into specific litigation funders where "Defendants have identified documents suggesting that these three entities have intimate involvement in Plaintiffs' litigation decision-making").

July 1, 2025
Page 4

### B. The subpoenas seek protected work product.

A party may not discover work product absent a showing of "substantial need" and "undue hardship." Fed. R. Civ. P. 26(b)(3)(A). To "qualify for work-product protection, documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotation marks omitted).

Courts "generally h[o]ld that litigation funding documents are protected by the work product doctrine." *Fulton*, 2019 WL 6609298, at *3 (collecting cases). By definition, agreements and related communications were prepared "during a period when" Plaintiffs or their attorneys "actually and reasonably foresaw litigation" and "were primarily, perhaps exclusively, for the purpose of preparing for litigation." *Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, 2018 WL 466045, at *5-6 (W.D. Pa. Jan. 18, 2018); *see also Taction Tech., Inc. v. Apple Inc.*, 2022 WL 18781396, at *6-7 (S.D. Cal. Mar. 16, 2022) ("It is clear to the Court these documents were created by or for Plaintiff in anticipation of litigation."); *In re Nat'l Prescription Opiate Litig.*, 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018) (holding that "[a]bsent extraordinary circumstances, the Court will not allow discovery into 3PCL financing," and citing work-product authority). Here, the documents Uber seeks are work product and Uber has made no showing of substantial need, so discovery is unwarranted.

### C. The subpoenas are untimely.

More than six months ago, Judge Breyer ordered that "[f]act discovery will be substantially complete by June 16, 2025." PTO 21 (ECF 1950) at 3. Uber did not give notice of these subpoenas until one business day before the deadline.[4] And each subpoena selected a response deadline of June 24. So, no effort was made to have this discovery "substantially complete" by the deadline. The subpoenas should be quashed on that basis alone. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) ("Attempting to secure discovery after a discovery cutoff date does not cure a party's failure to conduct diligent discovery beforehand."); *Stone Brewing Co., LLC v. Millercoors, LLC*, 2020 WL 1905342, at *34 (S.D. Cal. Apr. 17, 2020) (denying a motion for sanctions arising from attempts to enforce subpoena where, "[a]lthough Plaintiff served the subpoena on [the third party] about three months before fact discovery ended, Plaintiff did not diligently seek to obtain production by [the deadline]"); *Thompson v. CoreLogic Rentral Prop. Sols., LLC*, 2022 WL 16753141, at *3 (S.D. Cal. Oct. 13, 2022) (denying request to extend discovery cutoff to allow for deposition, and finding party not diligent where it "languished and serve the deposition subpoena two weeks before the fact discovery cut-off"); *Cave Consulting Grp., Inc. v. OptumInsight , Inc.*, 2018 WL 1938555, at *2 (N.D. Cal. Apr. 225, 2018) (striking non-party witness declaration disclosed after close of fact discovery where party "has provided no explanation for waiting until nearly the close of fact discovery … to serve its subpoena" on the witness).[5]

---

[4] The notices identify service dates of June 2 or June 11, but Rule 45(a)(4) requires notice "before" a subpoena "is served," so Uber could not serve any earlier than June 13.

[5] Uber subpoenaed JCCP leadership firms, even though JCCP fact discovery closed on May 30.

July 1, 2025
Page 5

      To be sure, sometimes courts permit subpoenas served during the discovery period to be enforced after discovery closes. But such an allowance would not be appropriate in this case. The parties have litigated this matter on a tight schedule designed to permit the first trial in December 2025. Both Judge Breyer and this Court have reiterated the importance of the June 16 cutoff in keeping the litigation on schedule. Accordingly, the Court has permitted late discovery only sparingly and upon a showing of particularized need. *See* 5/22/25 H'rg Tr. at 20-22; ECF 3059.

      During meet-and-confer, Uber asserted that the subpoenas were timely because they came in advance of the July 16 deadline for "case-specific fact discovery." PTO 26 (ECF 2894) at 3. But the subpoenas are not tailored to the Wave 1 cases, and include law firms that do not even represent any Wave 1 bellwethers. Through these subpoenas, Uber seeks common, global discovery, and so needed to at least try for "substantial[] complet[ion]" by June 16. It did not.

Respectfully,

*[signature]*

Sarah R. London

ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

## FILER'S ATTESTATION

I, Andrew R. Kaufman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory identified above has concurred in this filing.

Dated: July 1, 2025

By: /s/ Andrew R. Kaufman