# Exhibit B

**Pages 1 - 25**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Lisa J. Cisneros, Magistrate Judge

| | |
|---|---|
| IN RE:  UBER TECHNOLOGIES,       )<br>INC., PASSENGER SEXUAL ASSAULT )<br>LITIGATION                                        )<br>                                                                   )<br>_____)  | **NO. C 23-md-03084-CRB (LJC)** |

San Francisco, California
Thursday, April 24, 2025

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**: (via videoconference)

For Plaintiffs:
        CHAFFIN LUHANA LLP
        600 Third Avenue - 12th Floor
        New York, New York  10016
  **BY:** **ROOPAL LUHANA, ATTORNEY AT LAW**
      **ELIZABETH M. WILKINS, ATTORNEY AT LAW**

        PEIFFER WOLF CARR KANE CONWAY & WISE
        555 Montgomery Street - Suite 820
        San Francisco, California 94111
  **BY:** **RACHEL B. ABRAMS, ATTORNEY AT LAW**

        GIRARD SHARP LLP
        601 California Street - Suite 1400
        San Francisco, California  94108
  **BY:** **SARAH R. LONDON, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Remotely Reported:  Marla F. Knox, RMR, CRR
                  CSR No. 14421, Official U.S. Reporter

```
 1   APPEARANCES:   (CONTINUED, VIA VIDEOCONFERENCE)

 2
     For Defendants:
 3                         SHOOK, HARDY & BACON LLP
                           2121 Avenue of the Stars - Suite 1400
 4                         Los Angeles, California  90067
                      BY:  MICHAEL B. SHORTNANCY, ATTORNEY AT LAW
 5                         ALYCIA A. DEGEN, ATTORNEY AT LAW

 6                         SHOOK, HARDY & BACON LLP
                           600 Travis Street - Suite 3400
 7                         Houston, Texas  77002
                      BY:  VERONICA H. GROMADA, ATTORNEY AT LAW
 8                         KATHLEEN FRAZIER, ATTORNEY AT LAW

 9                         SHOOK, HARDY & BACON LLP
                           2555 Grand Boulevard
10                         Kansas City, Missouri  64108
                      BY:  JEREMIAH WIKLER, ATTORNEY AT LAW
11                         CHRISTOPHER V. COTTON, ATTORNEY AT LAW

12                         KIRKLAND & ELLIS LLP
                           601 Lexington Avenue
13                         New York, New York  10022
                      BY:  JESSICA DAVIDSON, ATTORNEY AT LAW
14

15

16

17

18

19

20

21

22

23

24

25
```

1        **THE COURT:** Sure.

2        **MS. DEGEN:** Thank you. They served 162 30(b)(6) topics. A lot of those overlap with topics that are moving forward in the JCCP. We have had lawyers who participate in both the JCCP and the MDL involved in the meet-and-confers and the coordination. In fact, we have a gentleman who is -- you know, his job in this is to coordinate amongst the two jurisdictions.

    If we -- we need to be speaking with MDL and JCCP Counsel right away to get these issues figured out. In fact, some of the deposition dates -- you know, they are not following through on placeholder dates that have been -- that we have been holding for quite some time. So --

14       **THE COURT:** All right. Let's do this. Finish your meet-and-confer effort by Friday, May 2nd; and then submit the dispute by May 8th to the Court if you haven't resolved it entirely or if there is some remaining disputes that I need to address; but May 2nd is the deadline for the meet-and-confer process and then the submission will be by May 8th.

    In terms of the page limits and the like, PTO 8 sets the default; but if the parties stipulate to some other format that doesn't give me more than ten pages to read as a letter, that will be fine with me. Given the number of topics that have been noticed, you-all may need some more pages.

    So, all right. So let's move on. Clawback procedures.

1  So, I -- when I looked at this issue, I tend to agree with Uber
2  that -- to the extent that these clawback disputes are
3  privilege disputes, then they ought to be addressed by Special
4  Master Judge Barbara Jones.
5      However, I have a problem with allowing clawback notices
6  concerning documents that were de-designated over the course of
7  the fall months, winter when -- before Judge Jones was
8  appointed as Special Master; and when I was overseeing a -- you
9  know, tranches of privilege log disputes, and I specifically
10 ordered in multiple orders -- in October, November, December --
11 Uber to rereview and de-designate based on what my rulings had
12 been.
13     So, essentially if I allow Uber to serve clawback notices
14 as to documents that were de-designated during that process
15 after they had been posted on a privilege log that was then
16 re-reviewed, then we are seriously turning this into a
17 merry-go-round process.
18     And so, I consider those de-designation decisions to be
19 waiver of -- of the privilege assertion. So, those -- I don't
20 know how many -- I think the status report referenced 30.  It
21 may not be a lot that are at issue in that regard, but at least
22 to cabin this process so that it's focused on documents that
23 were not previously on the privilege log that Uber may view
24 that it inadvertently disclosed them as part of the discovery
25 process, then those seem to me fair game for a clawback notice

1   unless there is something that Judge Jones has done in her --
2   in her handling of the privilege logs dispute.  I will leave
3   that to her.
4        But at least for the time period in which privilege
5   assertions were withdrawn, documents were de-designated and
6   taken off the privilege log while I was handling the privilege
7   log process and ordering rereviews on multiple occasions, then
8   those privilege assertions are waived and they should not be
9   part of clawback -- new clawback notices and disputes that are
10  submitted to Judge Jones.
11          **MS. LUHANA:**  Thank you, Your Honor.
12          **MR. SHORTNANCY:**  May I speak to that, Your Honor?
13  This is Michael Shortnancy speaking for the Uber Defendants.
14          **THE COURT:**  Yes.
15          **MR. SHORTNANCY:**  I hear what you are saying, Judge.  I
16  absolutely understand that.  Let me offer some additional, I
17  think, color.  When we were in the process before Your Honor
18  for the privilege log challenges, there were a number of
19  documents that we reviewed on very tight timelines.  I don't
20  have the exact dates in front of me; but as Your Honor was
21  entering orders, we were directed to go back -- and we did go
22  back -- to re-review documents on the log to apply lessons
23  learned.  Plaintiffs also were ordered to apply lessons learned
24  to their challenges but -- the parties did that.
25          Uber was required to do that in very compressed

1   timeframes.  And so, to the extent a document may have been
2   de-designated -- and there are very few of them.  So, we are
3   talking about 30 at this point, give or take -- but in the rare
4   instance that I think some of those documents may have come off
5   of the privilege logs or assertions of privilege over them --
6   over the passage of time and with rulings subsequent by
7   Your Honor and by Judge Jones and as we learn additional
8   information that may not have been apparent at the time we were
9   working under those deadlines to apply the Court's lessons
10  learned -- there may be cases where we believe a clawback is
11  appropriate and supportable.
12      And so, I would just urge Your Honor -- you know, the
13  attorney-client privilege is a very important privilege.  I
14  would urge the Court to consider not imposing a blanket waiver
15  in that -- and permitting because the circumstances are quite
16  few.  We are not trying to redo or get everybody back on the
17  merry-go-round.  We are very sincerely asserting what we
18  believe is a privilege that we have a foundation to assert in a
19  rare instance in these cases where information may have become
20  apparent later through the course of our discovery and
21  investigation about, perhaps, the -- that a lawyer who was not
22  apparent on the face of the document actually asked the
23  business person to prepare the presentation or something like
24  that, to use a hypothetical, those are the instances where we
25  would be asserting a clawback.

1    I would respectfully request that the Court permit the
2    parties to bring that to Judge Jones.  It is not something that
3    we have, you know, used in bad faith to encourage a
4    merry-go-round and let Judge Jones decide; was that a waiver,
5    was it not.  Was that part of lessons learned or was it not.
6    It is such a small number of documents, Judge, and the
7    privilege is so important that I think that it militates in
8    favor in this case allowing Judge Jones to be sort of the
9    arbiter of that decision.

10    **THE COURT:**  I'm not inclined to do that.  To me it
11    sounds like a motion for reconsideration based on newly
12    discovered evidence, so it would be submitted to me since I
13    made the decision.  And for Judge Jones it was, you know, would
14    be within her purview to address new privilege log disputes
15    that couldn't have been raised in front of me.  And I think
16    it's a bad -- if I went in that direction that you are
17    proposing, it sets up, I think, a -- some real procedural
18    problems in the way it incentivizes parties to maybe not do a
19    thorough review in the first instance; and really, the
20    re-review process was a second opportunity for Uber to do the
21    due diligence that it needed to do to appropriately assert
22    attorney-client privilege and any other privilege that may --
23    or protection that might have been applicable.

24    So, I was serious about the re-review process.  The
25    timeframes for what they were -- if there was concern that

1    there were individuals that you were not able to talk to and
2    that you needed to, you know, follow-up with for a certain
3    subset of documents, that could have been raised at that time.
4         And so, I think also what -- I'm thinking about too is the
5    extent to which there was broad de-designations of thousands of
6    documents that were then -- where the assertions were then
7    withdrawn.  And so, that to me -- struck me as substantial
8    over-designation.  And so, you know, that's just also why I'm
9    skeptical of any further efforts to turn this process into
10   another trip around a carousel.  It felt like we already took
11   one trip around the merry-go-round.
12            **MR. SHORTNANCY:**  Your Honor --
13            **THE COURT:**  And -- go ahead, sir.
14            **MR. SHORTNANCY:**  Sorry, I didn't want to interrupt,
15   Judge.  Are you --
16            **THE COURT:**  No.  I'm done.  What did you want to --
17            **MR. SHORTNANCY:**  Thank you.  I would just clarify a
18   couple of points.  I mean, we are not suggesting that we take a
19   document the Court has specifically ruled on and redoing that
20   document.  I think that is a fair point, Judge.
21        I think what we are suggesting is that in a situation
22   where you have many thousands of documents and many thousands
23   of privilege log entries where we were asked to have lawyers
24   sitting in -- you know, in a room apply the Court's thinking
25   and reasoning on one document that was ruled on and applying it

1  to a larger set of documents, that is the situation I think
2  that we are talking about.
3      **THE COURT:**  It is a larger set of documents that were
4  already on privilege logs that had already been served to the
5  Plaintiffs that were already part of the process of involving a
6  series of tranches of documents that were sampled.  And so,
7  that's a process that I instituted and oversaw and utilized
8  everyone's time and resources as we focused in on that.
9      And so, I'm not going to have that process redone.  Even
10 if I didn't adjudicate a particular document, it still feels
11 like we are going back to that prior corpus of -- of ESI or
12 documents that we worked through over the fall.  And it seems
13 inefficient and inconsistent.  And then if I'm willing to
14 re-open the process, then that undercuts the Court's efforts to
15 do things as efficiently as possible and also not reintroduce a
16 whole new set of privilege disputes for Judge Jones that we at
17 least -- were a portion of.
18     So, I don't think that it's a good use of my discretion
19 and oversight of the process to re-open that.  I think, you
20 know, obviously attorney-client privilege and other privileges
21 are, you know, incredibly, exceptionally important and
22 foundational to how litigation happens and how people and
23 companies seek representation.  And that's why at the outset,
24 that attention and care needs to be taken to get -- make the
25 right calls.  And essentially Uber -- for the body of documents

1  that we worked through, Uber had two opportunities.  So, that's
2  where -- how I'm handling this.
3          **MS. LUHANA:**  Your Honor, can I say one thing?
4          **THE COURT:**  Well, we don't have a lot of time today
5  because I have also got --
6          **MS. LUHANA:**  It's just -- sorry.  It is just a quick
7  request.  We just had requested that we submit the dispute to
8  Judge Jones by April 28th because these clawbacks were
9  happening on the eve of depositions during depositions, so the
10 process just needs to be addressed.  So, we want to submit our
11 dispute.  And so, we just wanted to ensure that --
12         **THE COURT:**  I'm not going to control the timeline for
13 when she handles these disputes.  I don't know how she is going
14 to want them worked up or what timeframe that would be.  So, I
15 would leave that to the parties to, you know, meet and confer
16 and to propose to her a timeframe and she can respond to that
17 how she sees fit.
18         **MS. LUHANA:**  Understood, Your Honor.
19         **MR. SHORTNANCY:**  Judge, just so you know, the parties
20 met ex parte separately with the Special Master yesterday to
21 discuss gaming out a plan for this, just so you are aware.
22         **THE COURT:**  Okay.  All right.  Thank you.
23      All right.  Safety data.  Okay.  So, the interrogatory
24 request looks pretty straightforward.  To the extent that
25 Plaintiffs are asking for the number of sexual violent