LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (admitted Pro Hac Vice)
allison.brown@kirkland.com
JESSICA DAVIDSON (admitted Pro Hac Vice)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S MOTION TO ENFORCE PROTECTIVE ORDER**<br><br>Judge:     Honorable Charles R. Breyer<br>Courtroom:  6 - 17th Floor<br><br>Date: August 22, 2025<br>Time: 10:00 a.m.<br>Location: 17th Floor, Courtroom 6 |

**NOTICE OF MOTION AND MOTION TO ENFORCE PROTECTIVE ORDER**[1]

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on August 22, 2025, or as soon as the Court is available for hearing following the completion of briefing, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants") will and hereby do move the Court to enforce the Protective Order entered in this action. [ECF 176] Specifically, Defendants seek entry of an Order: (a) finding the Confidential Information is covered by the Protective Order, which requires the Confidential Information be used "only for prosecuting, defending, or attempting to settle this Action or the [related JCCP] consolidated action…" [ECF 176, ¶7.1]; (b) requiring Bret Stanley, within three days of the date of the Order, to identify all persons outside of the MDL or JCCP to whom he has disclosed, or with whom he has discussed, any information covered by the Protective Order, including without limitation, the Confidential Information; and (c) requiring Bret Stanley, within three days of the date of this Order, to provide a copy of this Order to all persons identified pursuant to paragraph (b) of the Order.[2]

The Motion to Enforce Protective Order (the "Motion") is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the accompanying Declaration of Veronica Hayes Gromada, dated July 18, 2025; and the pleadings and papers on file herein.

---

[1] This Motion is being filed and noticed for hearing before the Honorable Charles R. Breyer because he is the issuing Court who entered the Protective Order at issue in this Motion.

[2] Defendants reserve the right to seek appropriate sanctions for violations of the Protective Order as the facts may develop in connection with this Motion and following based on any Orders by the issuing court.

1    DATED: July 18, 2025                    **SHOOK, HARDY & BACON L.L.P.**

2
                                            By: */s/ Michael B. Shortnacy*
3                                               MICHAEL B. SHORTNACY

4                                           **KIRKLAND & ELLIS LLP**
                                            ALLISON M. BROWN
5                                           JESSICA DAVIDSON
                                            LAURA VARTAIN HORN
6
                                            **O'MELVENY AND MYERS LLP**
7                                           SABRINA H. STRONG
                                            JONATHAN SCHNELLER
8
9                                           **SHOOK, HARDY & BACON L.L.P.**
                                            ALYCIA A. DEGEN
10                                          MICHAEL B. SHORTNACY
                                            PATRICK L. OOT, JR.
11                                          CHRISTOPHER V. COTTON
12
                                            *Attorney for Defendants*
13                                          UBER TECHNOLOGIES, INC.,
                                            RASIER, LLC, and RASIER-CA, LLC
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    Introduction and Summary of Argument ................................................................1

II.    Facts ....................................................................................................................3

    A.    The Protective Order restricts the use and disclosure of Protected Material. ..........................................................................................3

    B.    Defendants produce policy related documents designated Confidential and Highly Confidential/AEO ...................................................4

    C.    Mr. Stanley compiles a list of policy related resources and their related homepages by reviewing Defendants' Confidential and Highly Confidential/AEO MDL production. ...........................................4

    D.    Mr. Stanley uses his October 2024 Spreadsheet to prosecute other cases ......................5

    E.    Defendants demand that Mr. Stanley cease violating the Protective Order.........................................................................................6

    F.    Defendants recently learned that Mr. Stanley's October 2024 Spreadsheet is being disseminated among counsel for plaintiffs in other litigation against Defendants ...................................................6

    G.    Mr. Stanley did not know the Confidential Information before Defendants produced Confidential and Highly Confidential/AEO documents in the MDL documents. ...............................................7

III.    Argument ..............................................................................................................7

    A.    Mr. Stanley's use of information extracted from Protected Material to prosecute other cases violates the Protective Order .......................7

    B.    Mr. Stanley's disclosure of information extracted from Protected Material violates the Protective Order.............................................8

    C.    By its plain language, the Protective Order covers the policy related resources ............................................................................9

MEMORANDUM SUPPORTING MOTION TO ENFORCE PROTECTIVE ORDER

Case No. 3:23-MD-3084-CRB

D.     A compilation of 587 of Defendants' policy related resources, along with the homepage on which each resource is maintained, is not "general knowledge and experience" Mr. Stanley gained by litigating the MDL......................10

E.     Attorneys cannot disregard the Protective Order to promote "efficiency ....................12

IV.     Conclusion ........................................................................................................................14

NOTICE OF MOTION AND MOTION TO ENFORCE PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-CV-00007 (CBA)

    (TAM), 2024 WL 5168734 (E.D.N.Y. Dec. 19, 2024)............................................................8

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,

    10 F.3d 693 (9th Cir. 1993) ...............................................................................................11

*Gonzales v. Charter Commc'ns, LLC*,

    No. 2:20-CV-08299-SB-AS, 2022 WL 570003 (C.D. Cal. Jan. 26, 2022) ..........................2, 7

*Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*,

    1999 WL 528545 (N.D. Ill. July 19, 1999).........................................................................12

*Mahboob v. Educ. Credit Mgmt. Corp.*,

    No. 15-CV-0628-TWR-AGS, 2021 WL 818971 (S.D. Cal. Mar. 2, 2021), report

    and recommendation adopted, No. 15-CV-628 TWR (AGS), 2021 WL 7448532

    (S.D. Cal. Mar. 31, 2021)..............................................................................................2, 7

*MKS Instruments, Inc. v. Advanced Energy Indus., Inc.*,

    No. CV 03-469 JJF, 2005 WL 8170603 (D. Del. June 27, 2005) .............................................7

*MPI Tech A/S v. Int'l Bus. Machines Corp.*,

    No. 15CV4891 (LGS) (DF), 2017 WL 11896263 (S.D.N.Y. Apr. 18, 2017) ..........................7

*On Command Video Corp. v. LodgeNet Ent. Corp.*,

    976 F. Supp. 917 (N.D. Cal. 1997) ....................................................................................2, 7

*Rsch. & Diagnostic Sys., Inc*, 250 F.R.D. 426, 427-433 (D. Neb. 2008) ......................................11

*Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*,

    No. 22-CV-04986-JSC, 2023 WL 6882749 (N.D. Cal. Oct. 18, 2023) (Corley, J.)..............2, 8

NOTICE OF MOTION AND MOTION TO ENFORCE PROTECTIVE ORDER
Case No. 3:23-MD-3084-CRB

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction and Summary of Argument

This Court entered a Protective Order to facilitate MDL discovery by ensuring confidential information would be used "*only* for prosecuting, defending, or attempting to settle this Action or the [related JCCP] consolidated action…" ECF 176, ¶7.1 (emphasis added). Of course, the Protective Order also requires that confidential information "be disclosed only to the categories of persons and under the conditions described in this Order." *Id*. Unfortunately, a member of Plaintiffs' Steering Committee ("PSC"), Bret Stanley, is violating both of these restrictions. Mr. Stanley has shared information from Protected Material with persons unrelated to this litigation who are not permitted to receive it and have not agreed to be bound by the Protective Order. Mr. Stanley is also using material covered by the Protective Order to prosecute cases unrelated to this MDL or the JCCP.

Mr. Stanley *admittedly* used the content of MDL documents designated Confidential and Highly Confidential/Attorneys' Eyes Only ("AEO") to create a spreadsheet listing 587 of Defendants' internal policy related resources and identifying the repository where each resource is maintained (the "Confidential Information"). Mr. Stanley has now violated the Protective Order by: (1) using this information to prosecute non-MDL or JCCP cases; and (2) disclosing this information to persons not entitled to receive it.

Specifically, Mr. Stanley has: (1) disclosed the list of 587 policy related resources, and the repository (or "homepage") where each resource is maintained, to his co-counsel (not counsel of record in the MDL or JCCP) in two cases against Defendants involving car accidents, *Lord v. Uber Technologies, Inc.* ("*Lord*") and *Smith v. Uber Technologies, Inc.* ("*Smith*"); (2) propounded discovery in *Lord* listing and requesting 473 resources that he admittedly identified by reviewing Confidential and Highly Confidential/AEO MDL documents; and (3) propounded discovery in *Smith* listing and requesting 19 resources that he admittedly identified by reviewing Confidential and Highly Confidential/AEO MDL documents. Moreover, another partner at the law firm of Mr. Stanley's *Lord* co-counsel propounded a request for production in yet another case, *Casey Jones v. Uber Technologies, Inc.* ("*Jones*") that is nearly identical to the *Lord* discovery and again lists and requests 473 resources that Mr. Stanley admittedly identified by reviewing Confidential and Highly

Confidential/AEO MDL documents. Finally, counsel in yet another case against Defendants, *Soto v. Uber Technologies, Inc.* ("*Soto*"), which is pending in New Jersey state court like *Lord* and *Jones*, issued a request for production nearly identical to those in *Lord* and *Jones*.

Mr. Stanley's use and disclosure of material covered by the Protective Order to prosecute other cases is a violation of this Court's Protective Order. *On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 923 (N.D. Cal. 1997) (finding the protective order was violated where covered information was used to prosecute another lawsuit); *Gonzales v. Charter Commc'ns, LLC*, No. 2:20-CV-08299-SB-AS, 2022 WL 570003, at *4-5 (C.D. Cal. Jan. 26, 2022) (finding counsel's use of confidential policies to file another case violated protective order); *Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-CV-0628-TWR-AGS, 2021 WL 818971, at *3 (S.D. Cal. Mar. 2, 2021), report and recommendation adopted, No. 15-CV-628 TWR (AGS), 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021); *Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*, No. 22-CV-04986-JSC, 2023 WL 6882749, at *3 (N.D. Cal. Oct. 18, 2023) (Corley, J.) (holding party in contempt for using information derived from a confidential document to file another case). When confronted with his violations, Mr. Stanley and the PSC claimed that the names of Defendants' "policies"[3] are not confidential without further explanation. This argument is belied by the plain language of the Protective Order, which states that its "protections…cover…any information copied or extracted from" Protected Material (i.e., documents designated Confidential or Highly Confidential/AEO). ECF 176, ¶3.

Notwithstanding Mr. Stanley's clear violation, Defendants attempted to resolve this dispute by asking Mr. Stanley and the PSC to: (1) confirm that there had been no disclosure of confidential information beyond *Smith* and *Lord* cases; and (2) agree that Mr. Stanley and the PSC would not use policy related resources or other information from confidential documents without requesting permission from Defendants or the Court as required by the Protective Order. Mr. Stanley represented

---

[3] Mr. Stanley calls the resources listed on his spreadsheet "policies." This is a misnomer and a sleight of hand. The spreadsheet does not list static documents one would typically associate with a "policy." Rather, the spreadsheet identifies and/or references specific resources within Defendants' internal computer systems. In some cases, the resource contains one document. In other cases, the resource is a folder containing multiple documents. In other cases, the resource contains an interface or tool used by Defendants' agents. As a result, Mr. Stanley's spreadsheet is best described as containing "policy related resources."

there had been no disclosures beyond *Smith* and *Lord* but rejected the compromise proposal maintaining that he had "not shared…any confidential documents, summaries, or other substantive information from Uber documents…" The PSC did not separately respond to the compromise proposal. After Mr. Stanley's representation, Defendants learned about the further disclosure and use of the Confidential Information in *Jones* and *Soto*.

As a result, facing the risk of competitive harm from the repeated improper disclosure, Defendants are left with no choice but to file the instant motion, respectfully requesting that the Court enforce its Protective Order.

## II.    Facts

### A.    The Protective Order restricts the use and disclosure of Protected Material.

On December 28, 2023, this Court entered a Protective Order governing the disclosure of confidential information outside this MDL. ECF 176. The purpose of this Court's Protective Order is to provide confidential, proprietary, or private information "special protection from public disclosure and from use for any purpose other than prosecuting this litigation…." ECF 176, ¶1. Consistent with this purpose, the Protective Order requires that a Receiving Party use covered material "*only* for prosecuting, defending, or attempting to settle this Action or the [related JCCP] consolidated action…" ECF 176, ¶7.1 (emphasis added). In addition to the use restriction, Protected Material "may be disclosed only to the categories of persons and under the conditions described in" the Protective Order. ECF 176, ¶7.1.[4]

The Protective Order "cover[s] not only Protected Material" but also "any information copied or *extracted* from Protected Material," and "all copies, *excerpts, summaries, or compilations* of Protected Material," and any "conversations…by Parties or their Counsel that might reveal Protected Material." ECF 176, ¶3 (emphasis added). Protected Material is material designated Confidential or

---

[4] Aside from a few narrow exceptions (*e.g.*, the Court, court personnel, attorneys of record), Confidential and Highly Confidential/AEO material can only be disclosed: (a) to persons identified in the Protective Order *after* they execute the Acknowledgement and Agreement to be Bound; (b) with the permission of the Disclosing Party; or (c) by Court Order. ECF 176, ¶¶7.2, 7.3.

Highly Confidential/AEO. ECF 176, ¶2.16. A Party is required to follow the procedure outlined by the Protective Order to challenge a confidentiality designation. ECF 176, ¶6.[5]

**B.      Defendants produce policy related documents designated Confidential and Highly Confidential/AEO.**

Because Plaintiffs did not believe Defendants had produced all documents responsive to their discovery requests, the Magistrate Judge ordered Defendants, over their objection, to produce an "index, list, table of contents, or some other comparable record…of Uber's policies" and "homepages that operationalize those policies." ECF 706 at 2:7-11. At the conference that led to this Order, the Magistrate Judge explained that the purpose of ordering the production of such information was to enable Plaintiffs to "participate in the identification of relevant policies…." *See*, Ex. A, Declaration of Veronica Hayes Gromada ("Gromada Dec."), Ex. 2 (June 11, 2024 transcript) at 25:15-26:4; 28:19-29:1.

In response to this Order, on July 26, 2024, August 30, 2024, August 31, 2024, and September 6, 2024, Defendants produced documents reflecting indexes or lists of policy related resources drawn from different business units throughout the company, along with homepages related to those resources. Ex. A, Gromada Dec., ¶7. Defendants designated these documents Confidential or Highly Confidential/AEO pursuant to the Protective Order. *Id*.

**C.      Mr. Stanley compiles a list of policy related resources and their related homepages by reviewing Defendants' Confidential and Highly Confidential/AEO MDL production.**

On October 9, 2024, Mr. Stanley emailed a list of policy related resources to Defendants' counsel–a spreadsheet listing 860 resources and related homepages (the "October 2024 Spreadsheet"). Ex. A, Gromada Dec., ¶9-11 & Ex. 3. Mr. Stanley admitted that the October 2024 Spreadsheet was created largely from MDL documents and explained: "[i]f the Policy on this spreadsheet was identified from documents produced in the MDL, then you will find Beg Bates and Source information identifying where the policy name was pulled from." *Id*., Ex. 3.

---

[5] The first stage of the challenge process is to initiate a meet and confer with a written notice of each designation being challenged and the basis for each challenge. ECF 176, ¶6.2. A Party may proceed to the next stage "only" if it has conferred or establishes that the Designating Party will not do so. *Id*.

At a December 19, 2024 status conference, Mr. Stanley confirmed that he created the October 2024 Spreadsheet by reviewing Defendants' Confidential and Highly Confidential/AEO MDL production. *Id*., ¶14 & Ex. 4 at 32:6-12 (December 19, 2024 transcript). Mr. Stanley said his October 2024 Spreadsheet listed the MDL document in which he identified a policy related resource "by Bates label." *Id*., Ex. 4 at 36:12-16.

Mr. Stanley's October 2024 Spreadsheet contains 587 policy related resources identified by the MDL Bates number of the document where it was identified. Ex. A, Gromada Dec., ¶10 & Ex. 3. All of the source documents listed on the October 2024 Spreadsheet by MDL Bates number were designated Confidential or Highly Confidential/AEO. *Id*., ¶12 and Ex. 3.

Plaintiffs have not challenged Defendants' designation of these documents through the process required by the Protective Order. *Id*., ¶13.

### D.    Mr. Stanley uses his October 2024 Spreadsheet to prosecute other cases.

Mr. Stanley recently appeared as additional counsel in two state court cases involving alleged vehicle accidents:[6] *Smith v. Uber Technologies, Inc., et al.* (Bexar County, Texas) and *Lord v. Uber Technologies, Inc., et al.* (Mercer County, New Jersey). Ex. A, Gromada Dec., ¶ 18.

On April 16, 2025, Mr. Stanley's co-counsel in *Lord* served a 12th Supplemental Notice to Produce containing 41 requests including for "the Documents accessible via the hyperlinks shown in Appendix A." *Id*., ¶20 & Ex. 6 at Req. No. 41. Appendix A is a spreadsheet listing 891 policy related resources. *Id*., ¶20 & Ex. 6. *Of the 891 documents listed in Appendix A to the Lord Notice to Produce, 473 were identified by MDL Bates number on the October 2024 Spreadsheet. Id*. at ¶21.[7]

Similarly, on April 17, 2025, Mr. Stanley served a Fifth Set of Requests for Production in *Smith* seeking, *inter alia*, the prior two and subsequent two versions of the "Articles/Policies identified in Exhibit A." Ex. A, Gromada Dec., ¶27 & Ex. 7 at Req. Nos. 80-82. Exhibit A is a spreadsheet identifying 180 policy related resources. *Id*. at Ex. 7. Of the 180 resources on Exhibit A, nineteen were identified by MDL Bates number on the October 2024 Spreadsheet. *Id*. at ¶28.

---

[6] Ex. A, Gromada Dec., Ex. 8 at p. 4 (reflecting that *Smith* involves an Uber Eats trip that resulted in a collision) & Ex. 5 at 19:5-9 (reflecting that *Lord* involves "an automobile accident…").

[7] Defendants excluded any document appearing on Mr. Stanley's May 2024 Spreadsheet from this comparison because those are not governed by the MDL Protective Order.

### E.    Defendants demand that Mr. Stanley cease violating the Protective Order.

On May 26, 2025, Defendants demanded that Mr. Stanley cease violating the Protective Order. *Id*., ¶31 & Ex. 10. Mr. Stanley and the PSC responded separately denying any violation. *Id*., ¶32-33 & Exs. 11 & 12. The parties conferred in an attempt to resolve this dispute on June 30, 2025. *Id*. at ¶35. During that conferral, Mr. Stanley argued that the names of Defendants' policies are not confidential and it "promotes efficiency" for him to use policy names identified in the MDL in other litigation. *Id*. Mr. Stanley and the PSC representative were asked (twice) whether it was their position that the content on the face of one Confidential MDL document identified as a source on the October 2024 Spreadsheet, UBER_JCCP_MDL_000250806, was not confidential. *Id*. They refused to answer saying it would not be productive to review specific documents. *Id*. However, Mr. Stanley and the PSC confirmed that they are not contending that any particular document was improperly designated as Confidential or Highly Confidential/AEO by Defendants. *Id*. at ¶36.

While Defendants vehemently disagreed with Mr. Stanley and the PSC's position, it proposed an "agreement to disagree" whereby: (a) Mr. Stanley and the PSC "confirm that the only cases in which the names of [Defendants'] policies identified in the MDL have been used are the *Smith* and *Lord* cases identified in our letter;" and (b) "agree that before using the names of [Defendants'] policies or other information from confidential documents identified in the MDL in any other case, you will seek either [Defendants'] permission or permission from the MDL Court." *Id*. at ¶37 & Ex. 14.

Mr. Stanley and the PSC refused. *Id*. at ¶38 & Ex. 15. Notably, Mr. Stanley's response states, "I confirm that the only matters I have made requests for production of KB Policies / Articles specifically by name are the *Smith* and *Lord* matters." *Id*.

### F.    Defendants recently learned that Mr. Stanley's October 2024 Spreadsheet is being disseminated among counsel for plaintiffs in other litigation against Defendants.

Defendants recently discovered that Mr. Stanley's co-counsel in *Lord*, Bruce Stern of Stark and Stark, publicly filed the Notice to Produce that included a spreadsheet of policy related resources and refused to remove it from the New Jersey filing. *Id*. at ¶39. Defendants also discovered that another attorney with Stark and Stark had served the *Jones* request to produce, which is nearly identical to the *Lord* Notice to Produce. *Id*. at ¶40 & Ex. 16. Defendants also discovered that, on July 11, 2025, the

same day Mr. Stanley rejected Defendants' proposed agreement, counsel in another case against Defendants in New Jersey, *Soto*, served a request to produce nearly identical to those in *Lord* and *Casey* but with certain resources related to sexual assault and sexual misconduct redacted. *Id*. at ¶42 & Ex. 17.

> ### G.     Mr. Stanley did not know the Confidential Information before Defendants produced Confidential and Highly Confidential/AEO documents in the MDL documents.

In rejecting Defendants' proposed compromise, Mr. Stanley referenced his knowledge of some policy related information from other litigation against Defendants. Ex. A, Gromada Dec., Ex. 15. While Mr. Stanley had a list of policy related information that he compiled in non-MDL cases against Defendants (the "May 2024 Spreadsheet"), that list contains only 326 policy related resources and does not include the homepages on which any of these resources are maintained. Ex. A, Gromada Dec., ¶¶2-3 & Ex. 1. Defendants do not claim any MDL Protective Order violation from Mr. Stanley's use of his May 2024 Spreadsheet.[8]

## III.    Argument

> ### A.     Mr. Stanley's use of information extracted from Protected Material to prosecute other cases violates the Protective Order.

Mr. Stanley violated the Protective Order by using information extracted from Protected Material to prosecute other cases. ECF 176, ¶¶3, 7.1 (prohibiting use of covered information for any purpose other than "prosecuting, defending, or attempting to settle" the MDL or JCCP).

This language unambiguously bars the use of material covered by the Protective Order to prosecute other cases. *On Command Video Corp.*, 976 F. Supp. 917, 923 (N.D. Cal. 1997) (finding the magistrate judge erred by failing to recommend a contempt finding because, where protective order prohibits all uses of confidential information except for "analysis of issues presented in this litigation," an argument that the protective order "could reasonably be interpreted as permitting the filing of a

---

[8] Protective orders were entered in some, if not all, of Mr. Stanley's previous cases against Defendants. However, Defendants are unable to presently identify the case in which Mr. Stanley learned of each document on his May 2024 Spreadsheet and thus cannot prove yet other protective order violations at this time.

completely *separate lawsuit* in state court strains credulity") (emphasis in original); *Gonzales*, 2022 WL 570003, at *4-5 (C.D. Cal. Jan. 26, 2022) (finding counsel's use of confidential policies to file another case violated protective order); *Mahboob*, 2021 WL 818971, at *3 (S.D. Cal. Mar. 2, 2021), *report and recommendation adopted*, No. 15-CV-628 TWR (AGS), 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021) (imposing sanctions where counsel used confidential information to file a separate action).[9]

Similarly, the *Silicon Genesis Corp.* court held a party in contempt for using information derived from a confidential document to file another case finding that, "[b]ecause the Protective Order's plain language protects confidential information produced in this action 'from use for any purpose other than prosecuting this litigation,' there exists no good faith and reasonable interpretation…permitting EVG's use of SiGen's confidential information to instigate a foreign action." 2023 WL 6882749, at *3 (N.D. Cal. Oct. 18, 2023) (Corley, J.).

Mr. Stanley used extensive specific information extracted from Confidential and Highly Confidential/AEO documents produced by Defendants in this MDL in order to draft the discovery requests propounded in *Lord* and *Smith*. Thus, as in the above decisions, Mr. Stanley violated the Protective Order by using covered information to prosecute other cases.

**B.     Mr. Stanley's disclosure of information extracted from Protected Material violates the Protective Order.**

Mr. Stanley also disclosed information in violation of the Protective Order. ECF 176, ¶7.2-7.3. Nothing in the Protective Order allows disclosure of covered information to counsel prosecuting other cases against Defendants. ECF 176, ¶7.2-7.3. Importantly, where the Protective Order permits disclosure of covered material, recipients are generally required to sign the Acknowledgement and

---

[9] *See also MPI Tech A/S v. Int'l Bus. Machines Corp.*, No. 15CV4891 (LGS) (DF), 2017 WL 11896263, at *6-10 (S.D.N.Y. Apr. 18, 2017) (recommending contempt finding where counsel used confidential material to file new claims); *MKS Instruments, Inc. v. Advanced Energy Indus., Inc.*, No. CV 03-469 JJF, 2005 WL 8170603, at *1-3 (D. Del. June 27, 2005) (finding party violated protective order when it attached its expert report from one case, which "relied upon confidential documents," in its petition for injunction in another case); *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-CV-00007 (CBA) (TAM), 2024 WL 5168734, at *5 (E.D.N.Y. Dec. 19, 2024).

Agreement to be Bound to protect against further dissemination of confidential material. ECF 176, ¶7.2-7.3.

Here, covered material was disclosed to persons not entitled to receive it who did not agree to be bound by the Protective Order. The predictable result - which the MDL Protective Order was intended to prevent - is that the covered material has apparently been shared by Mr. Stanley's *Lord* co-counsel with a colleague at his firm and other counsel prosecuting cases against Defendants. Ex. A, Gromada Dec., ¶40-42. Notably, Mr. Stanley has also publicly disclosed information covered by the Protective Order because his co-counsel in *Lord* included his 12th Supplemental Notice to Produce in a public filing and, as of the date of filing, refuses to remove it. *Id.* at ¶39. Moreover, to date, Mr. Stanley's co-counsel in *Lord* has refused to agree to the entry of a protective order. *Id.* at ¶39.

**C.    By its plain language, the Protective Order covers the policy related resources.**

The policy related resources on Mr. Stanley's October 2024 Spreadsheet are covered by the Protective Order. Mr. Stanley and the PSC declined to explain why they believe information contained on the face of Confidential and Highly Confidential/AEO documents is not covered by the Protective Order, likely because the plain language of the Protective Order forecloses this position.

The restrictions of the Protective Order apply to Protected Material *and* "any information copied or extracted from Protected Material" and "all copies, excerpts, summaries, or compilations of Protected Material…" ECF 176, ¶¶3, 7.1. Protected Material is material designated Confidential or Highly Confidential/AEO. ECF 176, ¶2.16. Thus, if information is contained on a document designated Confidential or Highly Confidential/AEO, it is covered by the Protective Order. If Plaintiffs disagreed with Defendants' designations, they were required to follow the Protective Order challenge process.

Here, Mr. Stanley admittedly extracted the policy related resources and the homepage in which the resources are maintained from Confidential and Highly Confidential/AEO documents. The Protective Order therefore covers this information. Moreover, if Mr. Stanley or the PSC believed that information on documents marked Confidential or Highly Confidential/AEO was not confidential, they were required to challenge the designation. They failed to do so. Nor did Mr. Stanley ask this Court to modify the Protective Order to permit the use of information covered by the Protective Order

in his motor vehicle accident cases. Instead, Mr. Stanley unilaterally decided that information on documents marked Confidential and Highly Confidential/AEO was not confidential.[10] Allowing such conduct would render protective orders meaningless.

The Court should not sanction any request to analyze whether the documents containing the policy related resources were properly designated confidential *after* Mr. Stanley and the PSC failed to challenge these designations and *after* Mr. Stanley violated the Protective Order. Doing so would encourage counsel to violate protective orders and challenge confidentiality designations only if and when they are caught.

However, parties routinely - and properly - designate this type of information as confidential. The Protective Order identifies "confidential…business or commercial information" as confidential. ECF 176, ¶2.3. The Confidential and Highly Confidential/AEO documents not only reflect policy related resources, which are confidential, they also identify the homepages on which these resources are located effectively creating a roadmap of Defendants' information infrastructure. Ex. A, Gromada Dec., ¶30. Moreover, the way these resources are organized reveals how they are used within Defendants' business, including what resources are available to what personnel. *Id.* Defendants developed their information infrastructure over a long period of time at significant cost. *Id.* Knowledge of these resources and the manner in which Defendants organize them should not be public, as they are even restricted by roles and responsibilities within the business. *Id.*

Thus, the documents were properly designated Confidential or Highly Confidential/AEO.

**D.    A compilation of 587 of Defendants' policy related resources, along with the homepage on which each resource is maintained, is not "general knowledge and experience" Mr. Stanley gained by litigating the MDL.**

Defendants agree with the PSC's contention that counsel are permitted to use "general knowledge" and experience gained by litigating other cases because they cannot achieve "total amnesia." Ex. A, Gromada Dec., Ex. 12 (PSC letter). But this principle is irrelevant here.

---

[10] Mr. Stanley's apparent interpretation of the Protective Order, which would allow him to keep (and use) the October 2024 Spreadsheet even though it was created by extracting information from Protective Material, would render the requirement to return or destroy Protected Material, and all "abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material," within 90 days of the disposition of the MDL, a nullity. ECF 176, ¶13.

1    Mr. Stanley is not using "general knowledge" and no one is asking him to achieve "total

2    amnesia." Instead, Mr. Stanley is using his October 2024 Spreadsheet, which lists 587 policy related

3    resources and the homepage on which each resource is maintained within Defendants' systems. This

4    is information Mr. Stanley admittedly extracted from Confidential and Highly Confidential/AEO

5    documents produced in the MDL that he identified by Bates number. Mr. Stanley did not claim that

6    he has a photographic recollection of these materials and thus cannot seriously argue that the details

7    on his October 2024 Spreadsheet are "general knowledge." Instead, he claimed the information was

8    not confidential.

9    Unsurprisingly, in conferrals, Mr. Stanley and the PSC cited no legal authority suggesting a

10    party can compile detailed information from documents covered by a protective order then claim this

11    is "general knowledge" that can be used to prosecute other cases. Instead, they cited a case observing

12    that counsel need not achieve "total amnesia," which involved a protective order prohibiting the use

13    of "all information produced in discovery" whether confidential or not. *In re Dual-Deck Video*

14    *Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 694 (9th Cir. 1993). Because of its breadth, that order

15    would require counsel to achieve total amnesia "if taken literally…." 10 F.3d 693, 695.

16    That is not the situation here. *Dual-Deck* involved counsel's knowledge of a few specific facts

17    revealed in discovery. Namely, the plaintiff's counsel learned of an antitrust violation by the defendant

18    and filed a second lawsuit based on this information. 10 F.3d at 694. Unlike the extensive and detailed

19    list at issue here, counsel in *Dual-Deck* was not going to forget this specific antitrust violation and the

20    supporting documents.[11] The *Dual-Deck* court also found that enforcing the strict terms of its (much

21    broader) protective order would have improperly resulted in "immunity from suit." *Id.* at 696. Here,

22

23

---

24    [11] Further, the party seeking sanctions in *Dual-Deck* did not claim that confidential information was

25    disclosed or that the purposes of the protective order were violated. 10 F.3d 693, 694. The court found that the plaintiff technically violated the protective order. *Id*. at 695. The court, however, declined to

26    impose contempt sanctions because the moving party failed to meet its burden of proving a lack of substantial compliance with a reasonable interpretation of the order by clear and convincing evidence

27    considering the breadth of the order, the purpose of the order, and the lack of disclosure of confidential information. *Id*. Here, Mr. Stanley has not substantially complied with the Protective Order,

28    information within Confidential and Highly Confidential/AEO documents has been disclosed, and the purposes of the Protective Order have been violated.

no one is preventing any party from filing suit against Defendants (indeed, the *Lord* and *Smith* plaintiffs filed suit long before Mr. Stanley appeared and propounded his discovery).

Other cases cited by Mr. Stanley and the PSC are also inapposite. In *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, counsel in a patent infringement case "general[ly] reference[d]" confidential documents, without disclosing them, to impeach a witness in a related PTO proceeding. 250 F.R.D. 426, 427-433 (D. Neb. 2008). Here, Mr. Stanley has disclosed the content of Confidential and Highly Confidential/AEO MDL documents. Moreover, Mr. Stanley is not making "general reference" to documents. Instead, Mr. Stanley specifically listed 473 policy related resources and the homepage in which each resource is kept in the *Lord* Notice to Produce. *Streck* might be relevant if Mr. Stanley heard a witness in other litigation testify that a certain document does not exist when he recalled that it does. The facts here are obviously - and fundamentally - different from that scenario.[12]

Mr. Stanley is not using general knowledge. Instead, he is using extensive detailed information that he extracted from documents marked Confidential and Highly Confidential/AEO. The Protective Order does not allow this conduct. As a practical matter, allowing MDL discovery to serve as a litigation war chest that plaintiffs attorneys could use in future litigation involving *any* type of claim-without seeking permission from any court-would significantly hinder the flow of information that protective orders are meant to facilitate.

**E.    Attorneys cannot disregard the Protective Order to promote "efficiency."**

Efficiency in litigating other, unrelated matters is not an excuse to violate a Protective Order.[13] If Mr. Stanley truly believed it was efficient and appropriate to request large portions of confidential

---

[12] In *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, cited by the PSC, the defendant argued that a law firm could not represent its opponent because the firm previously represented a party with a similar claim and would therefore "inevitably use" confidential information from the prior case and have an unfair "head start" in understanding discovery materials. No. 99 C 0762, 1999 WL 528545, at *1-2 (N.D. Ill. July 19, 1999). The defendant in *Hu-Friedy Mfg.* did not even identify any confidential information that was used. *Hu-Friedy Mfg.* bears no resemblance to the facts here.

[13] Perhaps Mr. Stanley relies on an "efficiency" argument because the Magistrate Judge cited efficiency as a reason to allow Mr. Stanley, *in response to a subpoena*, to produce documents in the MDL that he possessed from other litigation against Defendants. Ex. A, Gromada Dec., Ex 13 at 34:13-35:12 (October 1, 2024 transcript). Initially, in that instance, Plaintiffs followed the *process* of issuing a subpoena which gave Defendants *notice* and an opportunity to challenge. Here, the required process was ignored. Moreover, while recognizing efficiency concerns, the Magistrate Judge also explained the importance of analyzing relevance and proportionality on a case by case basis when parties seek

MDL discovery in car accident cases, he could have asked this Court to allow that. He did not. Mr. Stanley has been telling the same story-which he reiterated at the conferral-for years. He claims Defendants are not producing relevant information and his "policy" list can identify information that should have been produced.  Public policy and the public's trust in the judicial system, binding orders of the Court, and the rule of law, all require enforcement of the Protective Order in these circumstances.

The *Lord* Notice to Produce debunks this story. In a 12th Supplemental Notice to Produce in a car accident case, Mr. Stanley's co-counsel propounded 41 requests including requests for 891 policy related resources (473 of which were identified in Confidential and Highly Confidential/AEO MDL documents). Ex. A, Gromada Dec., ¶21 & Ex. 6. Many of these resources are self-evidently irrelevant to the driver classification issue.[14] Moreover, the *Lord* Notice to Produce is largely copied from MDL discovery and thus completely divorced from the issues presented. The seventy-nine defined terms in the *Lord* Notice to Produce include "Woman to Woman Matching" and "Date of Uber's Safety Taxonomy Implementation." Ex. A, Gromada Dec., Ex. 6. These are MDL definitions that have nothing to do with the car accident in *Lord*. Ex. A, Gromada Dec., compare Ex. 6 (*Lord* Notice to Produce) with Ex. 9 (MDL Bellwether WHB 823 request).

There is nothing efficient about this type of discovery - it is meant to drive up the cost of litigation to extort settlements. The discovery requests in *Lord*, *Jones*, *Soto*, and *Smith* are not attempts to propound proportionate discovery related to relevant issues. These are cut and paste jobs seeking the same burdensome discovery regardless of the facts of the individual case.

Ultimately, it does not matter whether the discovery propounded by Mr. Stanley, attorneys at his co-counsel's firm, and other attorneys to whom the confidential information has been disclosed, is

---

to obtain discovery from other cases. *Id*. at 35:20-36:3 ("[I]n other cases where I've handled this issue, even where you're talking about two antitrust cases, I still parse through what the claims are in the respective cases and what the -- what the discovery disputes -- or what the discovery is that's requested to make sure that it's not as simple as copy and dump."). Here, Mr. Stanley did not allow any court to parse through the propriety of using information covered by the Protective Order to seek discovery in other cases. Moreover, it is obviously improper to request hundreds of policy related resources-including resources related to sexual assault and misconduct and other topics that govern Defendants' employees but have nothing to do the driver classification issue-in car accident cases.

[14] For example, an individual employee's transition material (Ex. 6 at Row 605) or resources for Defendants' employees that could not be relevant to driver classification (Ex. 6 at Rows 738 and 15).

1    appropriate in those cases. It is a violation of the Protective Order regardless. However, Mr. Stanley's

2    attempt to use Defendants' alleged lack of disclosure to excuse his violation of the Protective Order is

3    not only legally irrelevant, it is also factually inaccurate.

4    **IV.**      **Conclusion**

5         Defendants' internal company-policy related resources and the homepages on which these

6    resources are maintained, which were identified by Mr. Stanley by reviewing the content of

7    Confidential and Highly Confidential/AEO MDL documents, are covered by the Protective Order.

8    Thus, Mr. Stanley's use of this information to prosecute other cases, and his disclosure of this

9    information to other unauthorized counsel and non-parties to this MDL, violates the Protective Order.

10    Mr. Stanley maintains his conduct is not a violation. As a result, Court intervention is required to

11    enforce the Protective Order, stop Mr. Stanley's ongoing violations, and prevent further use and

12    dissemination of this Confidential Information.

13

14    DATED: July 18, 2025          **SHOOK, HARDY & BACON L.L.P.**

15

16             By: */s/ Michael B. Shortnacy*
               MICHAEL B. SHORTNACY

17

18             **KIRKLAND & ELLIS LLP**
            ALLISON M. BROWN

19             JESSICA DAVIDSON
            LAURA VARTAIN HORN

20             **O'MELVENY AND MYERS LLP**

21             SABRINA H. STRONG
            JONATHAN SCHNELLER

22             **SHOOK, HARDY & BACON L.L.P.**

23             ALYCIA A. DEGEN
            MICHAEL B. SHORTNACY

24             PATRICK L. OOT, JR.
            CHRISTOPHER V. COTTON

25

26             *Attorney for Defendants*

27             UBER TECHNOLOGIES, INC.,
            RASIER, LLC, and RASIER-CA, LLC

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28