# EXHIBIT A

LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (admitted Pro Hac Vice)
allison.brown@kirkland.com
JESSICA DAVIDSON (admitted Pro Hac Vice)
jessica.davidson@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

Attorneys for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DECLARATION OF VERONICA HAYES GROMADA SUPPORTING MOTION TO ENFORCE PROTECTIVE ORDER**<br><br>Judge:   Hon. Charles R. Breyer<br>Courtroom:   6 - 17th Floor |

I, Veronica Hayes Gromada, declare:

1. I am a partner at the law firm of Shook, Hardy & Bacon, L.L.P. I am a member in good standing of the Bars of the State of Texas and of the District of Columbia and am admitted to practice pro hac vice before this Court. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief. If called upon to testify, I could and would testify competently to the truth of the matters stated herein. I respectfully submit this declaration in support of Defendants' Motion To Enforce Protective Order.

<u>PSC Member Bret Stanley's First List of</u>

<u>Defendants' Internal Policy Related Resources Outside the MDL</u>

2. In a May 17, 2024 email to myself and other recipients, Plaintiff's Steering Committee ("PSC") member Bret Stanley explained that he began compiling a list of Defendants' internal company policy-related resources from and through his participation in non-MDL litigations. Mr. Stanley's email attached a spreadsheet (the "May 2024 Spreadsheet") listing Defendants' internal resources that Mr. Stanley said he compiled from discovery in other cases against Defendants. Attached as **Exhibit 1** is a true and correct copy of the May 17, 2024 email (including its attachment).

3. The May 2024 Spreadsheet lists 326 of Defendants' internal policy related resources. Ex. 1.

<u>MDL Plaintiffs Request a List of Defendants' Internal Policy Related Resources</u>

<u>So They Can Pick Relevant Documents for Production in the MDL</u>

4. Defendants' internal policy related resources were discussed at a June 11, 2024 discovery conference in the MDL. Attached as **Exhibit 2** is a true and correct copy of the transcript of the June 11, 2024 discovery conference. At the June 11, 2024 discovery conference, Defendants explained that they were in the process of collecting "specific policies in place for relevant areas of inquiry that the plaintiffs have raised in their requests for production." Ex. 2 at 12:15-24.

5. Instead of relying on Defendants to identify and produce relevant documents

responsive to Plaintiffs' requests, Plaintiffs wanted to "look at an index or a table of contents of policies and make some determination based on the titles of the policies or how they're organized or situated in categories that the policies might be relevant." Ex. 2 at 28:6-9. Therefore, the Magistrate Judge ordered Defendants, over objection, to produce information and documents related to their internal policy related resources so that Plaintiffs could "participate in the identification of relevant policies as opposed to relying on Uber's just unilateral decision-making about what's relevant or having to rely on search terms…" Ex. 2 at 28:19-24.

6. A related written order was entered on July 18, 2024. ECF 706. This Order required production of "an index, list, table of contents, or some other comparable record, to the extent such records exist, of Uber's policies" and "related homepages that operationalize those policies." Defendants refer to guidelines and operating procedures developed to implement company safety policies and standards as "Knowledge Bases." Knowledge Bases are available to support agents, and employees who provide customer service and other support to the business. Knowledge Bases may be grouped thematically into landing pages called "Homepages" or "Repositories." These Knowledge Bases are accessible to employees on an as-needed basis, depending on the employees' roles and responsibilities within the company. Moreover, Knowledge Bases are organized in a decentralized manner, and access is given to employees subject to role-based credentials and is limited to a subset of Knowledge Bases relevant to the scope of their jobs due to data security and proprietary concerns about access within company systems.

<u>Defendants Produce Confidential and Highly Confidential/AEO</u>
<u>Documents Reflecting Internal Policy Related Resources</u>

7. In response to the Magistrate Judge's comments at the discovery conference and the July 18, 2024 Order that followed, Defendants produced documents reflecting indexes or lists of policy related resources drawn from different business units throughout the company, along with homepages related to those resources. These productions occurred on July 26, 2024, August 30, 2024, August 31, 2024, and September 6, 2024. Defendants designated these internal company documents as

1. Confidential or Highly Confidential-Attorneys' Eyes Only ("AEO") pursuant to the Protective Order at the time of production.

8. To date, Defendants have produced over 1.7 million documents in the MDL.

9. After Defendants' production discussed above, Mr. Stanley emailed me and other recipients on October 9, 2024 demanding production of additional internal policy related resources that he identified in Defendants' MDL production. Attached as **Exhibit 3** is a true and correct copy of Mr. Stanley's October 9, 2024 email (including its attachment). Mr. Stanley's email attached a new spreadsheet (the "October 2024 Spreadsheet") listing Defendants' internal policy related resources, organized in part by Knowledge Base Homepage.

10. The October 2024 Spreadsheet lists 860 internal policy related resources. Of these, 587 resources are specifically identified by the Bates number of Confidential or Highly Confidential/AEO MDL documents.

Mr. Stanley's Creation of the October 2024 Spreadsheet

11. Mr. Stanley's email explained that he created his October 2024 Spreadsheet largely from MDL documents. In fact, he explained "[i]f the Policy on this spreadsheet was identified from documents produced in the MDL, then you will find Beg Bates and Source information identifying where the policy name was pulled from."

12. The October 2024 Spreadsheet lists, by Bates number, the following MDL documents as the "source information" from which Mr. Stanley identified the internal policy related resources listed on his spreadsheet:

| | |
|---|---|
| UBER_JCCP_MDL_000250803-19 | CONFIDENTIAL |
| UBER_JCCP_MDL_000366558 | CONFIDENTIAL |
| UBER_JCCP_MDL_000352858 | CONFIDENTIAL |
| UBER-MDL3084-000368056 | HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY |
| UBER-MDL3084-000368124 | HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY |
| UBER-MDL3084-000368088 | HIGHLY CONFIDENTIAL - ATTORNEYS' |

|  | EYES ONLY |
|---|---|
| UBER-MDL3084-000367960 | HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY |
| UBER-MDL3084-000367953 | HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY |
| UBER-MDL3084-000368018 | HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY |
| UBER-MDL3084-000367993 | HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY |

13.     As reflected above, all of the "source information" MDL documents were marked either Confidential or Highly Confidential/AEO. Plaintiffs have not challenged Defendants' designation of any of the Confidential or Highly Confidential/AEO documents listed above through the process required by the Protective Order.

14.     An MDL discovery conference was held on December 19, 2024. Attached as **Exhibit 4** is a true and correct copy of the transcript of the December 19, 2024 discovery conference. At the December 19, 2024 conference, Mr. Stanley again stated that he created the October 2024 Spreadsheet by reviewing Defendants' Confidential and Highly Confidential/AEO MDL production. Ex. 4 at 32:6-12 (December 19, 2024 transcript). Mr. Stanley again said that his October 2024 Spreadsheet listed the MDL document in which he identified a policy related resource "by Bates label." Ex. 4 at 36:12-16.

15.     Mr. Stanley's October 2024 Spreadsheet is not an index of documents produced by Defendants in the MDL. Instead, the October 2024 Spreadsheet *compiles* substantive information extracted from Confidential and Highly Confidential/AEO MDL source documents. For example, UBER_JCCP_MDL_000250806, which was produced in the MDL and designated as Confidential, includes the following content:

[Paragraphs 1–24 redacted]

25  16. Mr. Stanley identified internal policy related resources from the face of this
26  Confidential MDL document and listed those resources on his October 2024 Spreadsheet. Mr. Stanley
27  also listed the repository in which each resource is located, which is also information extracted from

1  content of Confidential and Highly Confidential/AEO MDL documents. For example, Mr. Stanley
2  placed the information on the Confidential MDL document shown in Paragraph 15 above on the

[redacted]

12 See, Ex. 3.

13  17. The policy related resources listed on UBER_JCCP_MDL_000250806, which were then extracted and compiled in the October 2024 Spreadsheet, are not simply the title of a static "policy" document. Instead, the October 2024 Spreadsheet identifies and/or references specific resources within Defendants' internal systems. In some cases, the resource contains one document. In other cases, the resource is a folder containing multiple documents. In other cases, the resource contains an interface or tool used by Defendants' agents.

Mr. Stanley's Disclosure and Use of the October 2024 Spreadsheet in Other Litigation

18. Mr. Stanley recently appeared as counsel for plaintiffs in two state court cases arising from motor vehicle accidents in which Uber Technologies, Inc. is a defendant: *Smith v. Uber Technologies, Inc., et al.* (Bexar County, Texas) and *Lord v. Uber Technologies, Inc., et al.* (Mercer County, New Jersey) (the "*Smith*" and "*Lord*" cases, respectively).

19. A hearing related to various discovery disputes was held in one of those cases, *Lord*, on April 3, 2025. Attached as **Exhibit 5** is a true and correct copy of the transcript of the April 3, 2025 hearing in the *Lord* case. At the hearing, Mr. Stanley's co-counsel told the court that the reason he

1  "moved Mr. Stanley as pro hac" was because of "confidentiality agreements" that prevented him from
2  specifically identifying Defendants' internal policy related resources:

> And the problem is that they put confidentiality agreements in all -- in many of their cases. So, I'm not able to get the name of the document, and that's why I moved Mr. Stanley as pro hac because it's kind of -- to give an analogy, I'm out in the desert. I know there are bodies buried here. I just don't know where they're buried. **Mr. Stanley knows where the bodies are**. [Ex. 5 at 53:16-24] (emphasis supplied)

20. On April 16, 2025, the plaintiff in *Lord* served a 12th Supplemental Notice to Produce ("Notice to Produce"), a true and correct copy of which is attached as **Exhibit 6**. The Notice to Produce contains 41 requests including for "the Documents accessible via the hyperlinks shown in Appendix A." Ex. 6, p. 22. Appendix A is a spreadsheet listing 891 of Defendants' internal policy related resources.

21. The 891 resources identified on Appendix A to the *Lord* Notice to Produce were compared to the 587 resources identified by MDL Bates number on the October 2024 Spreadsheet. That comparison revealed that 473 of the resources listed on Appendix A to the *Lord* Notice to Produce were identified by MDL Bates number on the October 2024 Spreadsheet (which, according to Mr. Stanley, means he identified them in Confidential and Highly Confidential/AEO MDL documents). Any resources listed on Mr. Stanley's May 2024 Spreadsheet were excluded from this comparison since Mr. Stanley identified those resources outside the MDL.

22. Mr. Stanley's use of his October 2024 Spreadsheet to create the Appendix to the *Lord* Notice to Produce is illustrated by comparing an excerpt of the October 2024 Spreadsheet:

[redacted]

to the below excerpts from the Appendix to the Notice to Produce in *Lord*:

[REDACTED]

See, Exs. 3 & 6. As shown above, the policy related resources, and the homepage where they were identified ("New Hire Onboarding" in this case) were copied from Mr. Stanley's October 2024 Spreadsheet onto the *Lord* Notice to Produce.

23.   Another example demonstrating that the October 2024 Spreadsheet is not simply an index of documents produced in the MDL is shown by UBER-MDL3084-000367984-85. That document, which Defendants designated Highly Confidential/AEO (without challenge), includes the following content:



24. Mr. Stanley took the policy related resources listed on the face of this Highly Confidential/AEO MDL document and put them on his October 2024 Spreadsheet, along with an identification of the homepage where they are maintained. This is reflected in the below excerpt of the

See, Ex. 3.

25. The policy related resources, and the homepage in which they are maintained, that Mr. Stanley collected on his October 2024 Spreadsheet, were then used to create the Appendix to the *Lord* Notice to Produce. This is reflected in the below excerpt of the *Lord* Notice to Produce:

See, Ex. 6.[1]

26. On April 17, 2025, the plaintiff in *Smith*, through Mr. Stanley, served a Fifth Set of Requests for Production, a true and correct copy of which is attached as **Exhibit 7**.

27. The *Smith* Fifth Set of Requests for Production contains an Exhibit A listing 180 policy related resources. See, Ex. 7. The Fifth Set of Requests for Production seeks, *inter alia*, the prior two and subsequent two versions of the "Policies identified in Exhibit A…" Ex. 7 at Req. Nos. 81-82. Exhibit A is a spreadsheet listing 180 policy related resources.

28. The 180 resources identified on Exhibit A to the Fifth Set of Requests for Production in *Smith* were compared to the 587 documents identified by MDL Bates number on the October 2024 Spreadsheet. That comparison revealed that 19 of the resources listed on Exhibit A to the Fifth Set of Requests for Production in *Smith* were identified by MDL Bates number on the October 2024 Spreadsheet (which, according to Mr. Stanley, means he identified them in Confidential and Highly Confidential/AEO MDL documents). Again, any resources listed on Mr. Stanley's May 2024 Spreadsheet were excluded from this comparison.

29. On April 30, 2025, the plaintiff in *Smith*, through Mr. Stanley, filed a Motion for Continuance, a true and correct copy of which is attached to this Declaration as **Exhibit 8**. The Motion for Continuance notes that Mr. Stanley recently made an appearance and served two requests for

---

[1] The Notice to Produce in *Lord* is drawn largely from MDL Bellwether requests for production. For comparison, attached as **Exhibit 9** is a true and correct copy of the First Set of Requests for Production of Documents served by Bellwether plaintiff WHB 823 (incorrectly identified as WHB 832). While Defendants do not claim the Bellwether request for production is subject to the Protective Order, this demonstrates the scope of Mr. Stanley's discovery requests in the unrelated car accident cases.

production "that identify specific information" that was not previously produced. According to the Motion for Continuance, Mr. Stanley has a long history of litigation against Defendants "including many hearings before Judge Breyer and Magistrate Judge Cisneros in MDL 3084" and "[t]hese litigation efforts have allowed Mr. Stanley significant experience and knowledge concerning Uber's internal systems, documents, tracking of data, and employee witnesses with relevant and discoverable information."

30. As demonstrated above, however, Mr. Stanley is not simply using the general knowledge and experience he gained through litigation against Defendants. Rather, he is using a spreadsheet listing 587 resources identified in Confidential and Highly Confidential/AEO MDL documents and identifying the homepage (i.e., how the information is organized internally within Defendants' system) in which each resource is maintained. Identification of the homepages into which these resources are organized effectively creates a roadmap of Defendants' information infrastructure. Moreover, the organization of these resources into homepages reveals the way each resource is used within the business, including what resources are available to which personnel. Defendants developed their information infrastructure over a long period of time at significant cost. Knowledge of these resources is even restricted within Defendants by roles and responsibilities within the business.

<u>Defendants Demanded that Mr. Stanley Cease</u>

<u>Use and Disclosure of Information Covered by the Protective Order</u>

31. Attached as **Exhibit 10** are true and correct copies of Defendants' May 26, 2025 letters to Mr. Stanley and the PSC demanding that Mr. Stanley cease violating the Protective Order.

32. Attached as **Exhibit 11** is a true and correct copy of Mr. Stanley's June 2, 2025 response to Defendants' May 26, 2025 letter.

33. Attached as **Exhibit 12** is a true and correct copy of the Plaintiffs' Steering Committee's June 4, 2025 letter related to Mr. Stanley's conduct.

34. Attached as **Exhibit 13** is a true and correct copy of the transcript of the October 1, 2024 discovery conference in the above captioned MDL.

35. The parties conferred in an attempt to resolve this dispute on June 30, 2025. During that conferral, Mr. Stanley stated that the names of Defendants' policies are not confidential. Mr. Stanley and the PSC representative were asked (twice) whether it was their position that the content on the face of one Confidential MDL document identified as a source on the October 2024 Spreadsheet, UBER_JCCP_MDL_000250806, was not confidential. They refused to answer saying they did not believe it would be productive to review specific documents. Based on the above, Mr. Stanley and the PSC apparently contend (though they would not confirm when asked) that the names of Defendants' policies are not confidential even if the policy name was found in the content of documents marked Confidential or Highly Confidential/AEO. Mr. Stanley and the PSC representative invited Defendants to file a motion if it disagreed with their position that Defendants' policy names are not confidential.

36. During the conferral, Mr. Stanley and the PSC confirmed that they are not contending that any particular document was improperly designated as Confidential or Highly Confidential/AEO by Defendants.

37. While Defendants vehemently disagreed with Mr. Stanley and the PSC's position, it proposed an "agreement to disagree" whereby: (a) Mr. Stanley and the PSC "confirm that the only cases in which the names of [Defendants'] policies identified in the MDL have been used are the *Smith* and *Lord* cases identified in our letter;" and (b) "agree that before using the names of [Defendants] policies or other information from confidential documents identified in the MDL in any other case, you will seek either [Defendants'] permission or permission from the MDL Court." Attached as **Exhibit 14** is a July 8, 2024 email memorializing the conferral and offering this compromise.

38. Mr. Stanley and the PSC rejected this compromise proposal. Attached as **Exhibit 15** is Mr. Stanley's July 11, 2025 response. Notably, Mr. Stanley's response states, "I confirm that the only matters I have made requests for production of KB Policies / Articles specifically by name are the *Smith* and *Lord* matters."

Mr. Stanley's October 2024 Spreadsheet is Being

Disseminated Among Plaintiffs' Counsel In Unrelated Cases

12
DECLARATION OF VERONICA HAYES GROMADA SUPPORTING MOTION TO ENFORCE PROTECTIVE ORDER   Case No. 3:23-MD-03084-CRB

39. Shortly after receiving Mr. Stanley's July 11, 2025 email, the undersigned learned that Mr. Stanley's co-counsel in *Lord*, Bruce Stern of Stark and Stark, publicly filed the list of policy related resources attached to the 12th Notice to Produce and refused to remove it. Upon information and belief, to date, Mr. Stern has also refused to agree to entry of a protective order in *Lord*.

40. I also learned that another attorney with Stark and Stark, the law firm of Mr. Stanley's co-counsel in *Lord*, served a request to produce in another New Jersey state court matter, *Casey Jones v. Uber Technologies, Inc. et al.*, on or about April 4, 2025. A true and correct copy of the *Jones* request to produce is attached as **Exhibit 16**. The request to produce in *Jones* is nearly identical to the Notice to Produce that would be served by Mr. Stanley's co-counsel in *Lord* twelve days later. *Compare* Ex. 6 to Ex. 16. As in *Lord*, the *Jones* request to produce contains an Exhibit A listing Defendants' internal resources that Mr. Stanley admittedly identified in Confidential and Highly Confidential/AEO MDL documents.

41. Mr. Stern's law firm served the notices to produce containing Exhibit A in *Jones* and *Lord* despite the fact that Mr. Stern apparently knew these requests used confidential information. Specifically, at an April 3, 2025 hearing in *Lord*, Mr. Stern told the court that the reason he "moved Mr. Stanley as pro hac" was because of "confidentiality agreements" that prevented him from learning Defendants' internal policy related resource descriptors:

> And the problem is that they put confidentiality agreements in all -- in many of their cases. So, I'm not able to get the name of the document, and that's why I moved Mr. Stanley as pro hac because it's kind of -- to give an analogy, I'm out in the desert. I know there are bodies buried here. I just don't know where they're buried. Mr. Stanley knows where the bodies are. [Ex. 5, *Lord* transcript, 53:16-24]

42. It also appears that information from Mr. Stanley's October 2024 Spreadsheet has been further disseminated among plaintiffs' counsel prosecuting cases against Defendants. Specifically, on July 11, 2025, counsel in another case against Defendants in New Jersey state court, *Soto v. Uber Technologies, Inc. et al.*, served a nearly identical Notice to Produce which includes the same Exhibit A as was attached to the *Lord* and *Jones* notice to produce but with certain information related to

sexual assault and sexual misconduct redacted. A true and correct copy of the *Soto* Notice to Produce is attached as **Exhibit 17**. Just as in *Lord* and *Jones*, the *Soto* Notice to Produce requests "the Documents accessible via the hyperlinks shown in Exhibit A" and attaches the same Exhibit A listing 891 of Defendants' internal resources (but with 19 rows redacted).

43. In other words, the plaintiffs' counsel are apparently cutting and pasting Confidential Information in order to request 473 of the resources listed identified by MDL Bates number on the October 2024 Spreadsheet, which Mr. Stanley admittedly compiled by reviewing Confidential and Highly Confidential/AEO MDL documents. The first page of the 22-page Exhibit A in *Jones* appears:

[redacted]

The first page of the 22-page Exhibit A in *Lord* appears:



The first page of the 22-page Exhibit A in *Soto* appears:

15

DECLARATION OF VERONICA HAYES GROMADA SUPPORTING MOTION TO ENFORCE PROTECTIVE ORDER                                                                Case No. 3:23-MD-03084-CRB



I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of July, 2025 in Houston, Texas.

                                          */s/ Veronica Hayes Gromada*
                                          Veronica Hayes Gromada

DECLARATION OF VERONICA HAYES GROMADA SUPPORTING MOTION TO ENFORCE PROTECTIVE ORDER        Case No. 3:23-MD-03084-CRB