# EXHIBIT 5

```
                              SUPERIOR COURT OF NEW JERSEY
                              LAW DIVISION, CIVIL PART
                              MERCER COUNTY
                              DOCKET NO. MER-L-000360-24
                              APP. DIV. NO. _____
```

```
CHAYA LORD AND BRANDON          :
LORD,                           :
                                :              TRANSCRIPT
          Plaintiffs,           :
                                :                 OF
     v.                         :
                                :           MOTION HEARING
UBER TECHNOLOGIES, INC,         :
RASIER, LLC, JUAN R.            :
ESCOBAR, JOHN DOES 1-           :
10 (fictitious                  :
designations), and ABC          :
COMPANIES 1-10 (fictitious      :
designations),                  :
                                :
          Defendants.           :
```

```
              Place: Mercer County Civil Courthouse
                     175 South Broad Street
                     Trenton, New Jersey 08650

              Date:  April 3, 2025
```

BEFORE:

     HONORABLE DOUGLAS H. HURD, P.J.Cv.

TRANSCRIPT ORDERED BY:

     CHRISTOPHER R. CARTON, ESQ. (Bowman & Brooke, LLP)

APPEARANCES:

     BRUCE H. STERN, ESQ. (Stark & Stark, P.C.)
     Attorney for the Plaintiffs


          Transcriber: Holli J. McGhee, AOC 702

              Agency: KLJ Transcription Service, LLC
                      P.O. Box 352
                      Oakland, NJ  07436
                      (201) 703-1670
                      www.kljtranscription.com

                      Digitally Recorded
                      Operator - Heather Vitoritto

APPEARANCES (CONT.):

        CHRISTOPHER R. CARTON, ESQ. (Bowman & Brooke, LLP)
        Attorney for the Defendants Uber Technologies,
        Inc., and Rasier, LLC

        MINAL J. ACHARYA, ESQ. (Zarwin Baum DeVito Kaplan
        Schaer Toddy P.C.)
        Attorney for Defendant Juan R. Escobar

I N D E X

ARGUMENT:                                    PAGE
      By Mr. Stern. . 4, 10, 33, 35, 41, 42, 43, 46, 53
      By Mr. Carton . 6, 16, 34, 37, 42, 43, 46, 58, 59

RULING:
      By the Court . . . . . . . . . .8, 34, 57, 58, 59

```
 1              (Proceedings commenced at 9:34:30 a.m.)
 2              THE COURT:  Okay.  All right.  We're on the
 3    record.  This is docketed 360-24.  Can I get your
 4    appearances, please?
 5              MR. STERN:  Good morning, Your Honor.  Bruce
 6    Stern of the law firm Stark & Stark on behalf of the
 7    plaintiffs.
 8              MR. CARTON:  Good morning, Your Honor.
 9    Christopher Carton, Bowman & Brooke, on behalf of Uber
10    Technologies, Inc., and Rasier, LLC.
11              MS. ACHARYA:  Good morning, Your Honor.
12    Minal Acharya (indiscernible) on behalf of defendant
13    Escobar.
14              THE COURT:  Okay.  Thank you.  And I
15    appreciate you talking and, you know, trying to work
16    through these issues, so thank you for that.
17              So, you know, I understand there's still some
18    issues to address, and we can start -- you know, I have
19    no specific order.  We could start with the request for
20    admissions if you want.
21              MR. STERN:  Sure.
22              THE COURT:  Okay.  You can go ahead.
23              MR. STERN:  So, Your Honor, I've sent two
24    requests for admissions asking whether Uber's CEO, and
25    I can't pronounce his last name so I'll just refer to
```

```
 1    him as Uber's CEO made (indiscernible) Uber a
 2    transportation company, and then second, that he
 3    described it as 50 percent mobility, 50 percent
 4    something else.
 5              Under the rules, Uber needs to either admit
 6    it, deny it, or say it's made a reasonable effort to
 7    try to determine the truth or falsity of the statement.
 8    In reading the papers, speaking with Mr. Meyer,
 9    speaking with Mr. Carton, when someone says did
10    somebody say something, the reasonable thing is to go
11    ask that person, did you ever say X, Y, or Z.
12              Here, no one has spoken, as I understand it,
13    to the Uber CEO.  Mr. Carton (indiscernible) we're not
14    going to bother the Uber CEO.  As Mr. Meyer advised
15    Your Honor in an e-mail with regard to my pro hac vice
16    motion, he had to go to Uber.  Mr. Meyer has made those
17    comments to me before that he has to go to Uber to get
18    permission whether to do something.
19              So, clearly behind the scenes, this
20    litigation is being run by Uber, so send an e-mail to
21    your contact in San Francisco who can then just send an
22    e-mail to Uber's CEO, and he either can admit or deny
23    the statement.
24              Instead, they say, well, send us an article,
25    send us a -- a TED Talk, whatever it may be, and then
```

Argument                                6

1    we can either admit or deny it, but they've made no
2    reason -- but there's nothing in the rule that requires
3    me to provide them with anything.  I said admit or deny
4    these statements, and they've made no effort whatsoever
5    to admit or deny them.
6             THE COURT:  Thank you.  You can go ahead,
7    Counsel.
8             MR. CARTON:  Your Honor, good morning.
9    Counsel's calling them statements.  They're not
10   statements.  A statement would be a quote from a
11   newspaper article or something attributing it saying is
12   this true, is this an accurate quote.  It would come
13   from somewhere.
14            These are just words in a complete vacuum
15   that counsel with no background whatsoever says admit
16   your CEO said quote, you know, Uber is a transportation
17   -- let's -- I'm paraphrasing, Your Honor.
18            THE COURT:  Has stated that --
19            MR. CARTON:  Something along the lines of
20   Uber is a transportation company.  So, to send somebody
21   a request to admit with a quote, with no attribution
22   and alleging that somebody said something is not a
23   statement.  It could be for real.  Counsel could have
24   made it up.  It could be anything.
25            And so, all we've asked is said we're unable.

Argument                                7

1    And I haven't said I'm not willing to go to Uber's CEO,
2    but what I have said is I'm not willing to go the Uber
3    CEO with a complete vacuum, because this is a person
4    who's interviewed thousands of times.  They've made
5    millions of statements in millions of capacities.  They
6    do it every day.
7             So, to go to that person, even if I did, and
8    say did you ever say did you ever say these exact
9    words, Uber is a transportation company, that's not
10   enough for the person even reliably, even if the CEO
11   said to me I never said that, that's not enough.
12            We have to know, well, did you say it in this
13   context or that.  You can't just go to somebody in a
14   vacuum and say have you ever said in your life these
15   four words?  It's not enough.
16            So, all we have said is if it's a statement,
17   provide the background of what it is, and we will run
18   it down.  We will -- we've searched the internet,
19   Judge, for those statements.  We've searched seeing if
20   we can retrace where they might be coming from.
21            THE COURT:  Mm-hmm.
22            MR. CARTON:  Nothing.  So, we're not -- this
23   isn't -- we're not refusing to talk to the CEO in
24   discovery about something.  All we're saying is you
25   can't just send something in a vacuum, an alleged

Argument/Decision                    8

1    quote, and claim that it is a statement of somebody and
2    put them in a situation of admitting or denying it.  We
3    need some context.
4              So, if it was where it came from, in this
5    article, is it true or not, that's what we're trying to
6    get to.  So, that's -- to be clear, we have not simply
7    said we're not bothering the CEO.  What we have said is
8    it is -- is practically impossible even to go to him
9    now with that statement and in any way get a reliable
10   request to admit about it.
11             His -- even the CEO's response wouldn't be
12   reliable, because you can't be expected to remember.
13   So, we need some context.  So, that's all, Your Honor.
14   We just need something of where that statement
15   allegedly comes from so we can more appropriately say
16   to the CEO when you gave this -- you're attributed to
17   this quote in this article that appeared in this paper.
18   Is it an accurate quote or not?  Something like that.
19   That's all, Your Honor.
20             THE COURT:  Mm-hmm.  Okay.  Listen, I -- I'm
21   going to grant the motion, but you know, I completely
22   understand the points you're making, and I think
23   they're valid ones, but you know, just a plain reading
24   of 4:22 doesn't prohibit what plaintiff is asking for
25   here.

Decision                          9

1              I -- I mean, I -- it just seems to me that a
2    certification from counsel or something that -- at Uber
3    about their efforts they made to make a determination
4    whether this statement was made or not, and if you're
5    unable to come up with that, the rule provides that
6    after I think a reasonable inquiry, you know, you can,
7    you know, state that in the response, that you're
8    unable to admit or deny after a reasonable inquiry.
9              You know, we -- we all talk all day long.  I
10   talk all the day -- all day long on the record.  I have
11   no idea what I said weeks ago.  I may have said
12   something weeks ago that I didn't -- I -- I don't know,
13   and I'm sure it's even more so, and I guarantee it's
14   even more so with somebody like the -- the head of
15   Uber.
16             So, I mean, if he can confirm it, great.  If
17   he can't, that's fine, but the alternative is, if after
18   a reasonable inquiry you can't admit or deny, that's
19   acceptable under the rule.
20             MR. CARTON:  Okay.  Thank you, Your Honor.
21             THE COURT:  So, I left the form of -- of
22   orders on my desk, so just give me one second.  I just
23   want to grab them, okay?
24        (Off the record from 9:41:39 a.m. to 9:42:01 a.m.)
25             THE COURT:  Okay.  So, the form of order says

1    that defendant shall provide responses to 91 and 92
2    within 10 days.  So, you know, the response could be
3    that he made a reasonable inquiry.  That -- that's, you
4    know, acceptable.  So, I'll -- I'll sign the order as
5    submitted.
6              THE COURT:  Okay.  We could -- let me just
7    look at Mr. Stern's letter.  So, the Erin O'Keefe
8    deposition transcripts?
9              MR. STERN:  Yes, Your Honor.  (Indiscernible)
10   all the deposition requests.
11             THE COURT:  Mm-hmm.
12             MR. STERN:  So, Uber doesn't -- I made a
13   request for deposition transcripts of Erin O'Keefe in
14   her capacity as a corporate designee for Uber.  I've
15   also requested the deposition transcript of Peter
16   Sauerwein, again, a corporate -- Uber corporate
17   designee in a specific Pennsylvania case, and then
18   thirdly, the deposition transcript of the corporate
19   designee in the Razak matter.
20             In both the Pennsylvania case and Razak was a
21   federal case in Pennsylvania, the Court denied summary
22   judgment motions based on the testimony of Mr.
23   Sauerwein and the corporate designee in Razak.
24             With regard to Ms. O'Keefe, Uber produced
25   seven transcripts of Mr. -- Ms. O'Keefe that she gave

1    in New Jersey Uber cases.  Two of them were in the same
2    case.  They were depositions taken by my partner, Mike
3    Donahue.  The other five were not cases handled by my
4    office.
5              None of those deposition transcripts were,
6    quite frankly, of any use because the attorneys, other
7    than my partner, had no appreciation of the issue
8    regarding control.  So, they really weren't helpful at
9    all.
10             But nevertheless, Uber says, well, we're not
11   going to provide you with deposition transcripts of Ms.
12   O'Keefe that are subject to confidentiality or
13   protective orders or any that are outside of New
14   Jersey.
15             I'll take the outside of New Jersey first.
16   Uber's position is, well, other states have -- others
17   have different statutes, have different regulations,
18   different case law, so therefore it's not relevant.
19             I say to them, well, say Pennsylvania, how is
20   New Jersey different than Pennsylvania?  The agreement
21   that the driver signs is the same in Pennsylvania as it
22   is in New Jersey.  It's the same in Texas as it is in
23   New Jersey.  It's the same in 50 states in the United
24   States.
25             There are some differences.  So, for

Argument                        12

1    instance, one of the forms that my -- that they've
2    produced has to do with insurance.  Pennsylvania has a
3    different amount of insurance they provide -- Uber
4    provides its drivers than New Jersey.  But in terms of
5    the issues of control, the law appears to be --
6    statutes all appear to be relatively the same.
7           But Uber's made no effort to explain to the
8    Court or to me how those rules and regulations are
9    different.  More importantly, I've provided Your Honor
10   with two summary judgment briefs or portions that Uber
11   filed, one in-state and one in a Pennsylvania case.
12   They're the same briefs.
13          And in those same briefs, there is a footnote
14   that's probably a page-and-a-half in length in which
15   Uber cites decisions from around the United States
16   where courts or arbitrators have found that Uber
17   drivers were not employees.
18          So, here they come and say the rules are
19   different in other states, but when they move for
20   summary judgment, they seem to ignore that they may be
21   different and cite all these different cases.
22          Secondly, they say, well, some of these are
23   covered by confidentiality agreements or protective
24   orders.
25          THE COURT:  And just so I'm clear, and sorry

Argument                        13

1    to interrupt, but for O'Keefe, Sauerwein, and -- and
2    the Razak case, their contention is all of those are
3    subject to protective orders; am I correct?  Because
4    you -- you said some.
5           MR. STERN:  No, I -- Sauerwein and Razak are
6    subject to protective orders or confidentiality
7    agreements.
8           THE COURT:  Okay.  Right.
9           MR. STERN:  The ones -- O'Keefe -- I don't
10   know that they're all covered by protective orders or
11   not.
12          THE COURT:  Okay.
13          MR. STERN:  They're simply saying they're
14   from out of state, therefore they're not relevant.
15          THE COURT:  Okay.
16          MR. STERN:  With regard to the
17   confidentiality agreements, I've supplied Your Honor
18   with two orders, either confidentiality agreements or
19   protective orders, both of which -- one says that Uber
20   controls its own information.  They can do whatever
21   they want with it.
22          The second one says if these are supplied to
23   attorneys outside of the litigation, those attorneys
24   must sign a protective order.  I've said to Uber, you
25   say there are these protective orders or

Argument                                  14

```
 1    confidentiality orders.  Provide it.  They've provided
 2    none.  They haven't given us any.  So, they just say,
 3    well, there's protective orders, confidentiality
 4    orders, but they haven't produced any of them.
 5            But more importantly is Uber is the entity
 6    that's requesting the confidentiality agreements and
 7    the protective orders.  Plaintiffs aren't asking courts
 8    to enter into confidentiality or protective orders
 9    because they want to protect Uber.  It's Uber
10    requesting that either an attorney -- either a law firm
11    agree, and some law firms say, yeah, I'll sign a
12    confidentiality agreement, I don't want it to be a
13    hassle, I don't want to have to go to court, fight over
14    whether there should or shouldn't be confidentiality.
15    All I really want is the documents.  Give me the
16    documents.  I'll sign whatever you want.
17            But Uber has created its own shield and now
18    wants to hide behind it to say, well, we don't have to
19    produce it because there's a confidentiality agreement
20    or there's a protective order.  Uber can do whatever it
21    wants with its own documents, with its own depositions.
22            Plaintiffs' attorneys would be thrilled to be
23    able to have those and -- and share them.  It's Uber
24    that wants the confidentiality.  It's not the
25    plaintiffs.  And to say, oh, we would be violating a
```

Argument                                  15

```
 1    confidentiality agreement, it's nonsense.
 2            THE COURT:  And -- and why is it nonsense
 3    that --
 4            MR. STERN:  It's nonsense because they're the
 5    ones that have asked for it.  Again, it's not the
 6    plaintiffs that said we want a confidentiality
 7    agreement so that Uber doesn't have -- so that we can't
 8    share Uber documents.  Part of --
 9            THE COURT:  But -- but what gives me the
10    right or the ability?
11            MR. STERN:  Because they control their own
12    documents.  These are just depositions of corporate
13    designees, and they haven't supplied Your Honor with
14    any confidentiality agreements.
15            THE COURT:  I -- yeah, and that -- that's a
16    fair point.  But I guess my -- my question is they've
17    entered into a confidentiality protective order with
18    another counsel, and it's been approved by the Court in
19    another jurisdiction.  What gives me the ability to,
20    you know, violate that or overrule it or somehow breach
21    --
22            MR. STERN:  Because you're not -- well,
23    you're not covered by a protective order of
24    confidentiality, and it's Uber.  Uber comes in -- for
25    instance, Uber could come here and say we'll turn over
```

```
 1      X if there's a confidentiality agreement, and I may
 2   really need that document.  I'm saying fine.  Or they
 3   may file a motion asking for a protective order to
 4   protect their data from -- from me disclosing it to
 5   other attorneys.  That's why they want, obviously, the
 6   protective order or the confidentiality.
 7              They don't want me taking their documents and
 8   giving it to the plaintiffs (indiscernible).  That's
 9   what they don't want.  So, they say to the Court, we
10   want a protective order or they say to the law firm we
11   want a confidentiality agreement so that I can't then
12   share the documents.
13              But it's their documents.  They can do
14   whatever they want with them.  It's their deposition
15   transcript.  They can do whatever they want with them.
16              THE COURT:  Okay.  And -- and let me first
17   ask, which -- are all of these subject to
18   confidentiality protective orders?
19              MR. CARTON:  No, Your Honor.  Just to be
20   clear --
21              THE COURT:  Okay.
22              MR. CARTON:  -- Sauerwein and Razak, yes.
23              THE COURT:  Okay.
24              MR. CARTON:  What we have produced are seven
25   transcripts of Erin O'Keefe as a corporate
```

```
 1   representative in New Jersey.
 2              THE COURT:  Mm-hmm.
 3              MR. CARTON:  So, every time she has appeared
 4   in New Jersey as a corporate representative, we've
 5   produced those.
 6              THE COURT:  Mm-hmm.
 7              MR. CARTON:  Those were not subject to
 8   confidentiality orders.
 9              THE COURT:  Mm-hmm.
10              MR. CARTON:  So, what's being requested are
11   every other time Erin O'Keefe has ever testified as a
12   corporate rep in any -- irrespective of jurisdiction
13   and irrespective of confidentiality.  So --
14              THE COURT:  Okay.
15              MR. CARTON:  -- he's got seven transcripts of
16   her appearing as a company witness deposition -- a
17   company witness rep, and he wants every time, anywhere,
18   in all jurisdictions, and regardless of
19   confidentiality.
20              THE COURT:  But just for these type of cases
21   I -- well, not say just -- I shouldn't say just, but
22   for these type of cases, not any deposition that's ever
23   been provided by O'Keefe, correct?
24              MR. CARTON:  I don't know it's so -- it's so
25   limited, but it would be she's appeared as a corporate
```

Argument                                18

```
 1      rep for Uber in -- I don't think it says --
 2                THE COURT:  Okay.
 3                MR. CARTON:  -- issues where control are at
 4      issue or anything.  I just think it says any time she's
 5      been corporate rep of (indiscernible) we want the
 6      testimony.
 7                THE COURT:  But -- but you would want the
 8      testimony only with respect to issues of corporate
 9      control, correct?
10                MR. STERN:  Yes, Your Honor.
11                THE COURT:  Okay.  And -- okay, so put --
12      let's go in the same order that Mr. Stern went.
13      Putting aside the protective order confidentiality
14      issue, what would be the basis if there wasn't some
15      such order in, say, Pennsylvania, and she gave that
16      testimony?  What would be the basis?
17                MR. CARTON:  Yeah.  Yeah, so Your Honor, the
18      -- the basis, assuming -- putting the confidentiality
19      order aside, it is normal, relevant proportionality,
20      primarily proportionality.
21                THE COURT:  Mm-hmm.
22                MR. CARTON:  Here's the reason, Your Honor.
23      This case, it gets sidetracked by damages, because
24      (indiscernible) important case of traumatic brain
25      injury.  So, put those aside.  Everything we're talking
```

Argument                                19

```
 1      about today, all these motions have nothing to do with
 2      damages.  They don't go to that issue at all.  It is
 3      about liability and about control, okay?
 4                THE COURT:  Mm-hmm.
 5                MR. CARTON:  This was an -- an automobile
 6      accident, garden variety, stop sign case in which Mr.
 7      Escobar, the driver, allegedly didn't stop at a stop
 8      sign and hit a car and came -- driven by the plaintiff,
 9      okay?  So, we're talking about -- about as
10      uncomplicated a liability case as can exist.
11                THE COURT:  Mm-hmm.
12                MR. CARTON:  It's a red light case.  The
13      issues then for a jury or for a fact finder are going
14      to be did Mr. Escobar cause the accident?  Was he
15      negligent?  And number two, was he acting in the scope
16      of employment for Uber at the time?
17                That's what this is all about, okay?  That's
18      -- and I say that because counsel says that, too.
19      That's what it really all comes down to, so counsel is
20      going to have to prove his burden that Mr. Escobar was
21      acting in the scope of employment for Uber.  That's --
22      and that analysis, Your Honor, is not wildly
23      complicated either.  It's a standard that's in the
24      Restatement, and it's been picked up by the U.S.
25      Supreme Court and the -- most courts of most states,
```

1    and it's usually some factor test of control where
2    elements of control are laid out.
3              And it's not especially complicated.  And so,
4    the issue in this case is this isn't a trial against
5    Uber.  This isn't discovery.  Counsel just slipped up -
6    - I would say slipped up by acknowledging plaintiff's
7    lawyers would love to have a massive amount of Uber
8    documents for future -- other cases that aren't in
9    existence yet so that they can build their best case.
10             But the point of discovery is not to set up
11   plaintiff's counsel with that -- to set them up for
12   future cases so they can be a repository for their
13   colleagues to obtain information.
14             Discovery is whether, in this case, for
15   plaintiff to set plaintiff up, Mr. Stern, to prove that
16   Escobar was an employee.  So, the only issue is whether
17   Escobar was an employee.
18             Now, when you look at it in that fashion,
19   Your Honor, and then you talk about proportionality and
20   proper rules of discovery, it's not -- it's not simply
21   focused on the size (indiscernible).  Proportionality
22   isn't about that.  It's about whether the complexities
23   of the case -- the discovery starts proportional to
24   resolving issues (indiscernible).
25             So, really the question is for the Court,

1    respectfully, is -- is every single corporate
2    deposition that's ever been given by Erin O'Keefe fair
3    and reasonable proportionality in the context to answer
4    the simple question of whether Escobar was an employee
5    of Uber at the time?
6              And the answer is no, Your Honor.  The answer
7    is absolutely no.  Seven corporate rep --
8    representative depositions Counsel already has.
9    However many more, what clearly is being pursued, what
10   -- we cite the Berrie case in -- in -- in a lot of
11   objections.  It's a chancery case from 1983 that says,
12   Your Honor, Berrie v. Berrie, 188 N.J. Super. 274, and
13   at 286 the Court said, "It is contrary to first
14   principles of justice to allow a search of all
15   respondents' records, relevant or irrelevant, in the
16   hopes that something will turn up."
17             That is exactly what's happening.  We -- this
18   is a request for all of Uber's records, for every
19   deposition that Erin O'Keefe has ever given anywhere in
20   all jurisdictions, and it is not for the purpose of --
21   if counsel were to say I have reason to believe that
22   she's testified differently or that the standards --
23   Uber's changing it on the fly and getting -- nothing.
24   There's been no proffer whatsoever how the eighth or
25   ninth or tenth or twelfth, et cetera, deposition of

Argument                                          22

1   Erin O'Keefe would in any way resolve or even
2   potentially put plaintiff in a position to resolve an
3   issue in this case.
4            What is being done, absolutely, pretty much
5   admittedly, Your Honor, is if -- if plaintiff gets
6   every deposition this witness gave, then they can scour
7   them and hopefully find some inconsistencies.  In other
8   words, hope that something turns up.
9            But the missing piece here is any proffer
10  that there's any possibility that might happen, and so
11  what's really being done is we're being asked to allow
12  a search of all of our records, meaning every single
13  record that Erin O'Keefe generated in -- in a
14  deposition, not because there's any suggestion of why.
15  This entire record of these motions is devoid of any
16  proffer as to why that would be justified and why
17  beyond seven would be required.
18           So, Your Honor, this is about really
19  proportionality because -- and it does involve actual
20  work, because it does mean -- companies don't
21  necessarily track or have an ability -- they don't
22  anticipate needing somehow ready access to every -- you
23  know, this is a company because it gets involved in a
24  lot of accident cases, it would kind of like go to --
25  it would be like going to NJM, Your Honor, or Allstate

Argument                                          23

1   and saying produce every single deposition that an
2   adjuster has given, you know, in any case, anywhere.
3            You -- the company is in a complete vacuum
4   and has to -- it doesn't track that necessarily.  It
5   has to go to search.  It might or might not have
6   records of when Erin versus another company -- I mean,
7   Uber is a company, Your Honor, that operates in all 50
8   states and all over the world.
9            And so, to -- to just -- it seems like no big
10  deal, but it actually is to go -- to have the company
11  perform and try to determine every single time.
12  There's no time, scope, limitations whatsoever.
13           And in a really shoddy way, the -- the --
14  when the requests for production come to us, they
15  literally say, open bracket, insert date range in them.
16  Like, most of these requests to produce say all this,
17  that, and the other thing, all -- insert date range.
18           I mean, there's no date range.  So, Your
19  Honor, the point is this is a request for all Uber's
20  documents, relevant or irrelevant, in the hope that
21  something will turn up.
22           So, it -- it -- seven -- in -- in
23  proportionality to this case, Your Honor, a red-light
24  auto accident in which the question is, was this guy an
25  employee of Uber, seven is more than enough, and it

Argument                                  24

1    would be violative of all the discovery principles and
2    rules to say we're going to give every single corporate
3    rep (indiscernible) search all 50 states every time
4    this woman has appeared as a company witness and
5    produce those in all jurisdictions.  That is a massive
6    amount of work.
7           And it doesn't -- there's been no
8    demonstration or even suggestion of why it's being done
9    other than scour the mall, maybe have a repository that
10   counsel just admitted.  Other plaintiffs' attorneys, it
11   would be a goldmine.  I forget the word he used.
12          But what is going on here?  And there's a --
13   the Court's protective role as a gatekeeper here, one
14   of the things that needs to go on here is -- what I
15   think this case has evidenced, Your Honor, with 128
16   requests for production, 92 (indiscernible), and an
17   admission in a letter to the Court yesterday that,
18   well, I've done 128 RFPs, but I just associated with
19   new counsel from a different state from Texas who's
20   going to associate in, and we're going to do a whole
21   new round of RFPs because this guy knows where the
22   bodies are buried, and now we're going to do some
23   targeted ones.
24          That's an actual -- that's an admission that
25   what's happened so far isn't targeted whatsoever, and


Argument                                  25

1    we've got counsel admitting this would be a goldmine
2    for other plaintiffs' lawyers if somebody had every
3    single corporate rep that the Court has given.  That
4    would be a goldmine.
5           That's what this is about.  It cannot be
6    about proving whether Escobar was an employee on --
7           THE COURT:  Do -- do you know how many -- I'm
8    sorry to interrupt.  Do you know how many other
9    depositions -- it's -- it's Ms. O'Keefe, right, Erin?
10          MR. CARTON:  Yes.
11          THE COURT:  Ms. O'Keefe has given in other
12   jurisdictions on the issue of control?
13          MR. CARTON:  No, Your Honor.  I know we've
14   given every single one in New Jersey, which was seven.
15          THE COURT:  Okay.
16          MR. CARTON:  And I -- but as I explained,
17   it's a -- it would be a -- a large undertaking and
18   process to determine of the 50 states that Uber
19   operates in --
20          THE COURT:  Mm-hmm.
21          MR. CARTON:  -- every other time she has
22   appeared in -- as a corporate witness, Your Honor, for
23   the company.
24          THE COURT:  And I mean, obviously --
25          MR. CARTON:  But it would be certainly dozens

```
 1    and dozens more, if not hundreds.
 2              THE COURT:  Okay.  Well, that -- that's what
 3    I'm trying to find out.
 4              MR. CARTON:  Yeah.
 5              THE COURT:  I mean, because, you know, one of
 6    the analyses in -- in a discovery request is, you know,
 7    the defendant or the plaintiff could say, listen,
 8    there's an undue burden to produce this information.
 9              When that is, you know -- you know, given as
10    a response to a discovery request, you may be right,
11    you may be wrong about it, but the fact is I need a
12    certification from somebody at Uber to say this is
13    impossible for us to do, because we don't keep track of
14    these things or -- or there's just too many of them or
15    -- I -- I mean -- I mean, if she's given eight in other
16    jurisdictions -- I mean, we don't even know how many
17    she's given to say -- for me to say it's an undue
18    burden.
19              MR. CARTON:  Well, (indiscernible).  What I
20    would request, Your Honor, I think the proportionality
21    question does away with that.  I think that the Court
22    is in a position to say seven is enough --
23              THE COURT:  Mm-hmm.
24              MR. CARTON:  -- to determine.  Every single
25    deposition she's given for the company in New Jersey
```

```
 1    ever has been produced.
 2              THE COURT:  I -- I understand.
 3              MR. CARTON:  You have enough.  So, I would
 4    say that this request should be denied based on that.
 5    If Your Honor is inclined to go further, then I would
 6    request that we be given the opportunity to make the
 7    argument of burden and besides proportionality.
 8              THE COURT:  Mm-hmm.
 9              MR. CARTON:  Because I do know it's a major
10    undertaking.  And I would like to be able to explore
11    that to give some color to the Court to say it looks
12    like from what we can tell under these records we
13    maintain so far 50, you know, or whatever it is before
14    Your Honor makes a decision, because --
15              THE COURT:  Yeah, I -- I -- and I -- yeah, so
16    I -- I would need that information because I do -- I
17    understand the (indiscernible) analysis (indiscernible)
18    analysis done in federal court than state court,
19    because we have 4:10, which is -- is a broader
20    discovery rule, but you know, it can be used in state
21    court as well.
22              I'm going to get beyond that issue and ask
23    that, you know, I don't know, some type of corporate
24    person look into how many times she's given depositions
25    and if they can narrow it down by how many of those
```

Argument                          28

```
 1    depositions were done on issues of control and then why
 2    it would be such an undue burden to produce, say, you
 3    know, 30 deposition transcripts or something, whatever
 4    it is.
 5             Because, you know, listen, I know some states
 6    have different statutes and regulations on the issue
 7    we're dealing with here, but I do know some states have
 8    similar ones.
 9             So, you know, to the extent some of those
10    similar states she's given a deposition on control in,
11    you know, under 4:10, I think the plaintiff should have
12    that document.
13             But you know, if -- if Uber has -- can prove
14    to me that there's an undue burden, then I'll take
15    another look at it.  So, I'll -- I'll, you know, wait -
16    - wait and let you get that information.
17             MR. CARTON:  Yeah, I -- I would like that
18    opportunity to explore that, Your Honor.  If -- if
19    beyond proportionality burden aspect, I would like to
20    explore that and --
21             THE COURT:  Okay.
22             MR. CARTON:  -- under some reasonable time
23    frame come back to Your Honor (indiscernible).
24             THE COURT:  Okay.  But you know, one option
25    is obviously, you know -- you know, we -- we looked
```

Argument                          29

```
 1    into it.  You know, she only gave 20 depositions.
 2    Eight of -- eight of them were on issues of control,
 3    and we're going to produce them because it's not a big
 4    deal, right?
 5             MR. CARTON:  Right.  Well, once we've done
 6    that work, maybe it is, Your Honor.
 7             THE COURT:  Yeah.
 8             MR. CARTON:  I just don't know.
 9             THE COURT:  I understand.
10             MR. CARTON:  I honestly --
11             THE COURT:  And I don't know either, so I --
12    I think that's a -- that's a fair way to handle it.
13             MR. CARTON:  Okay.
14             THE COURT:  So -- so, that just dealt with
15    the non-protective order confidentiality, so you can
16    move on to that issue.
17             MR. CARTON:  So, turning to the protective
18    order, this is probably one of the most important
19    issues here, Your Honor.  Everything counsel said about
20    these protective orders just about is completely
21    unsupported of any actual evidence in the record.
22             In other words, to say that confidentiality
23    orders are entered at Uber's request in every instance
24    completely unsupported, and our experience tells us,
25    I'm sure Your Honor's own does, I know mine does,
```

1    that's absolutely not the case.
2              And I can think of, Your Honor, to my own
3    personal knowledge, situations where protective orders
4    are entered in Uber cases because the plaintiff wanted
5    them for various reasons:  the nature of their
6    employment, where they work, what they do.
7              So, it's absolutely, factually wrong to say
8    that protective orders only arise because Uber wants to
9    cover its documents and Uber -- that's just -- there's
10   no support for that.
11             So, we cannot accept and start from that
12   proposition, Your Honor.  We have to start from the --
13   an actual proposition of what is a protective order.
14   All we do know about a protective order is they're
15   entered never unilaterally, always by an -- either an
16   agreement by a plaintiff and a defendant, and then
17   authorized and ordered by a Court, or at the objection
18   of a plaintiff, but nevertheless ordered -- or a
19   defendant and ordered by a Court.
20             So, every protective order we do know
21   factually, they're never unilateral.  We know there are
22   a myriad of reasons why they might be entered.  They
23   could be requested by any party, and they could be
24   entered by the courts.
25             So, it's impossible, Your Honor, to sit here

1    and understand within any protective order situation
2    whether or not, you know, they were at the impetus of
3    Uber or not.  And it shouldn't matter, Your Honor, what
4    - this is just a factual point.
5              But beyond that, the fact is they're entered.
6    That means there's court orders in place in every one
7    of these circumstances, including other jurisdictions,
8    where the Court has said the document cannot be
9    produced or whatever the terms of the order are, and
10   what is being asked in this motion is that -- by
11   counsel -- and this is so brazen, Your Honor, it's --
12   it's amazing, that Your Honor is going to enter an
13   order, and Your Honor hit it on the head, on what
14   authority, on what basis, ordering Uber to breach
15   contracts, because that's what these are, they're
16   confidentiality agreement, often, to breach contracts
17   that they've entered with adversaries and to violate
18   court orders by producing things that have been ordered
19   not to be produced.
20             So, respectfully, I would say Your Honor is
21   right.  You do -- this Court does not have the
22   authority to enter an order ordering Uber to produce
23   what could be done potentially almost like issuing a
24   subpoena or something from another jurisdiction.  I
25   suppose this Court could enter some sort of order to

Argument                                    32

1    take to another jurisdiction.  It's just -- Your --
2    Your Honor, it's -- there is absolutely no basis for
3    this Court to order Uber to produce documents or
4    transfers that are subject to protective orders.
5    There's no basis in law for the Court to do that.
6             It would create massive problems.  Like I
7    said, you'd be ordering Uber to breach contracts and
8    violate court orders.  And it's just -- and there's --
9    again, it all comes back to, to what end?  To show that
10   Escobar was an employee on July 11, 2022?  We really
11   need to go around the country, potentially hundreds and
12   -- if not thousands?  So.
13            THE COURT:  Let's -- let's not -- I -- I do
14   agree -- respectfully, Mr. Stern, I do agree with the -
15   - the defendant on the issue of the protective order
16   and confidentiality order.  So, you know, where those
17   depositions are subject to a confidentiality or
18   protective order in another jurisdiction -- I mean, at
19   -- at the end of the day, you know, I get it.  I mean,
20   defendants a lot of times ask for this information.
21   Plaintiffs don't have to agree to it, but a lot of
22   times they do, as you said, for expedience purposes so
23   they don't have to file motions and things of that
24   nature.
25            But it's -- it's a document that's binding on

Argument                                    33

1    the parties that the Court approves and enters in a
2    case jacket in another jurisdiction.  And frankly, I
3    mean, I'll accept counsel's representation as to what
4    these orders say.  I'm not going to go through, you
5    know, hundreds of confidentiality or protective orders
6    in other jurisdictions.  If he's saying, you know, that
7    -- that that's what these orders say, I respect his
8    representation as an officer of the court.
9             But you know, if you look at the
10   Hoffman-LaRoche case, the language in that case, I just
11   -- I'm not aware of any case law that -- that would
12   give me the ability to -- to go in and order the
13   production of a deposition transcript that's subject to
14   a -- an order somewhere else.
15            MR. STERN:  My only point, Your Honor, and I
16   understand your ruling, is I supplied Your Honor with
17   two either protective orders or confidentialities where
18   Uber was permitted to share information.
19            One, it specifically said Uber can do
20   whatever it wants with its own stuff, and the second
21   said you can give it to other -- in other cases, but
22   that lawyer needs to sign a protective order.
23            THE COURT:  Mm-hmm.
24            MR. STERN:  I -- I'm sure Mr. Carton is not
25   representing to your court that he knows what the other

Argument/Decision                              34

```
 1    confidentiality agreements or protective orders state.
 2    I'm pretty sure he doesn't.  I don't think he would
 3    stand up and say I know what the other confidentiality
 4    agreements are.
 5              So, there are many confidentiality
 6    agreements, I supplied Your Honor with two, where Uber,
 7    under those orders, would be permitted to provide the
 8    deposition transcripts.
 9              THE COURT:  Mm-hmm.  I -- and I agree.  I
10    mean, that's -- that's not uncommon, but that's --
11    that's a discretionary call on their part whether they
12    want to do that or not.
13              I mean, you know, if the request is for me to
14    review every order, I'll -- I mean, I don't know how
15    many orders there are.  I mean --
16              MR. CARTON:  Again, Your Honor, this is
17    basically -- this is even worse than trying to find out
18    how many times Erin -- in other words, you're talking
19    about a company --
20              THE COURT:  Yeah, I get it.  Listen, I --
21              MR. CARTON:  -- you can search
22    (indiscernible) thousands of cases in New Jersey, so.
23              THE COURT:  I -- yeah, I -- I've made my
24    ruling.  So, you know, I understand your point, but to
25    the extent you're representing they're subject to these
```

Decision/Argument                              35

```
 1    agreements or orders, I'm going to deny the request.
 2              But as I said, that doesn't apply to the ones
 3    we talked about with respect to Ms. O'Keefe.  Counsel
 4    is going to look into that some more, okay?  So --
 5              MR. STERN:  Next could we address the DOL?
 6              THE COURT:  Sure.
 7              MR. STERN:  That's the third big topic.
 8              THE COURT:  Yeah.  Yeah.  Go ahead.
 9              MR. STERN:  And Your Honor, we've been in
10    front of Your Honor once and -- once with the earlier
11    motion, so Your Honor is aware of the documents that
12    I'm seeking.  Your Honor is aware that I'm not seeking
13    any tax information, anything specifically to do with
14    the drivers and -- and their financial situation or tax
15    situation.
16              We issued a subpoena to the Department of
17    Labor, as Your Honor permitted us when we were last
18    here in front of you.  The only thing that the attorney
19    general representing DOL would provide to us were
20    publicly available documents that DOL had obtained from
21    Uber's website.  They would not provide us with any
22    other documents, specifically the questionnaires or the
23    interview notes, et cetera.
24              So, when that occurred, we then issued the
25    notice to produce to Uber saying give us what you have
```

Argument                        36

```
 1      from DOL, and they just object.  They could say, as Mr.
 2      Burns (ph.) said when I served his law firm, we don't
 3      have those documents, and Uber could say we don't have
 4      those documents.  They don't have them, they don't have
 5      them, but they haven't said that.  They just object to
 6      -- to providing them.
 7              So, we've really argued this motion before.
 8      Whatever documents they have that are not privileged,
 9      they should provide to us.
10              THE COURT:  Okay, and just -- just so I
11      understand the request again, because I -- I know we
12      had an argument on it, but I -- I don't remember the
13      details.
14              But the specific request is the -- the
15      documents that Uber has that are Uber documents or
16      documents that they produced?
17              MR. STERN:  Well, either Uber -- well, Uber
18      documents or DOL documents --
19              THE COURT:  Mm-hmm.
20              MR. STERN:  -- that they supplied to Uber.
21      So, I don't know if -- I mean, like I said, the auditor
22      talked about questionnaires that were provided.  I
23      don't know if they gave those questionnaires to -- to
24      Uber or not.
25              THE COURT:  Mm-hmm.
```

Argument                        37

```
 1              MR. STERN:  You know, Mr. Burns says he
 2      doesn't have them.  DOL says I'm not -- we're not going
 3      to turn them over.  I didn't want to go fight with the
 4      attorney general over that.
 5              THE COURT:  Mm-hmm.
 6              MR. STERN:  But if Uber has them, then they
 7      have them.  They should supply them.  If they don't
 8      have them, they don't have them.  It's a pretty simple
 9      request.
10              I don't know what other documents -- the only
11      document I have from DOL is the initial audit
12      investigation report and then the settlement that was
13      entered into for $100 million, but there may be other
14      documents from DOL to Uber as well.
15              MR. CARTON:  Your Honor, there's a problem
16      here in that in all these motions, the DOL was not even
17      raised.  In other words, it was not an issue that was
18      before the Court today in any motion to compel Uber to
19      produce DOL documents.
20              THE COURT:  Okay.  I'm glad you said --
21      because I -- I've read through these papers --
22              MR. CARTON:  (Indiscernible) --
23              THE COURT:  -- a couple of times.  I'm like
24      trying to see where it is.
25              MR. CARTON:  Yeah --
```

Argument                              38

1    THE COURT:  -- but I -- I'm like maybe I
2    missed something.
3            MR. CARTON:  You -- you didn't miss it, Your
4    Honor.
5            THE COURT:  Okay.
6            MR. CARTON:  It arose yesterday in the letter
7    when Counsel said, oh, so here's the issues that are
8    left, DOL --
9            THE COURT:  Okay.
10           MR. CARTON:  -- and I did the same thing Your
11   Honor probably did was go, wait, what -- what happened
12   with DOL?
13           Your Honor, that was (indiscernible).  Just
14   to go back, Counsel subpoenaed Uber's outside counsel
15   that handled that at first.  That was eventually
16   withdrawn.  Uber -- I'm sorry.  Plaintiff subpoenaed
17   the DOL for all their documents.  We were in here on
18   that, Your Honor.  If you recall at that time, DOL
19   hadn't appeared and Your Honor sort of said, well,
20   what's their position on this?  So, they finally took
21   one and they responded.  And Your Honor, that was the
22   end of it.
23           We haven't had deficiency letters.  It wasn't
24   a subject to a motion, so there is no issue.  And
25   respectfully, if there is going to be a true ruling on

Argument                              39

1    this, and I don't think there -- there will be, maybe
2    we can get to a point where there doesn't need to be,
3    but then it really should be briefed, because we're
4    just all sort of making this up about what is out
5    there.
6            But -- but just to set it, because maybe
7    Counsel will realize there's not -- I'll -- I'll do it
8    in this order, Your Honor.  Here -- the reason the DOL
9    did -- produced what they did is they said, "Hi,
10   Bruce."  I'm quoting.  I'm looking at my phone.  I'm
11   not checking my messages, Your Honor.
12           THE COURT:  That's okay.  That's all right.
13           MR. CARTON:  "Hi, Bruce.  Thank you for your
14   e-mail.  Following up on our conversation, it is the
15   State's position that it cannot release any materials
16   demanded under Items 1 through 3 of the subpoena
17   because of restrictions of N.J.S.A. 43:21-11G, which
18   states in relevant part, 'All records, reports, and
19   other information obtained from employers and employees
20   under this chapter, except -- except to the extent
21   necessary or proper, shall be confidential and shall
22   not be published or open to public inspection other
23   than to public employees in the performance of their
24   duties and shall not be subject to subpoena or
25   admissible in evidence in any civil action or

1   proceeding other than what arises in this chapter.'"
2           So, the DOL said -- they pointed to a statute
3   that, quote, all records, reports, or other information
4   that the DOL obtains from employers are confidential,
5   never admissible in court.
6           So, what is basically counsel seeking?  He
7   said, okay, I struck out at DOL.  They don't have to.
8   What he's asking Uber for is what did you supply to the
9   DOL?  In other words, all records that the DOL obtained
10  from Uber.  So, it's just another way of saying
11  (indiscernible) he's asking for Uber, what did the DOL
12  obtain from you?  I want it from you.
13          The statute still applies, Your Honor.  It's
14  confidential.  We all know why.  Because obvi -- look,
15  we can assume it's because to promote these types of
16  investigations (indiscernible) everybody can't be
17  thinking that they're going to have Mr. Stern subpoena
18  them or do discovery requests.
19          So, we would contend, Your Honor, that for
20  the same reasons under that same statute, we don't --
21  we -- we cannot produce to counsel the -- what Uber
22  produced to the -- the DOL.
23          But that said, Your Honor, and why I think
24  this goes away anyway, Uber does not -- and I can make
25  this clear if it wasn't from our responses, I thought

1   it was, we did raise objections about confidentiality,
2   et cetera.  All Uber has -- does not have any of these
3   questionnaires; it doesn't have any of that.  It has
4   financial records that were submitted for individual
5   drivers, which would be -- with personal information,
6   and settlement communications, and we talked about that
7   last time with Your Honor.
8           That would absolutely be privileged under
9   this statute, but also just under the normal
10  settlement.  So, I don't -- you know, Your Honor, I
11  believe our objection that -- is proper, Uber does not
12  have an obligation to supply counsel with everything it
13  can supply.
14          But at the end of the day, we don't -- and --
15  and maybe that will just be the end of it, but we do
16  not have any of the things that I think Counsel is
17  looking for.  We don't have these questionnaires.  We
18  don't have any of this -- interviews I think was the
19  other thing that they thought might be in there.
20          We -- Uber does not have that.  So, I just
21  don't think there's really anything here at the end of
22  the day.
23          MR. STERN:  Well, it would have been easier
24  if Uber just said we don't have it instead of sending
25  pages and pages of objections, they just said we don't

```
                           Argument                       42
 1      have the documents.
 2               THE COURT:  Okay.
 3               MR. STERN:  It would have been the end of it.
 4               THE COURT:  Okay.
 5               MR. CARTON:  Your Honor, maybe I amend the
 6      responses.  I think most -- as is the practice, there's
 7      always an objection to responses, but then it usually
 8      does CFI or it says none.  And if I need to add none
 9      responses, I'll do that.  But I think we can --
10               THE COURT:  Okay.
11               MR. CARTON:  -- take this off the table by
12      doing that.
13               THE COURT:  Okay.
14               MR. STERN:  I'll accept his representation.
15      I'm just saying --
16               THE COURT:  I understand.
17               MR. STERN:  -- it would have saved us a lot
18      of trouble.
19               THE COURT:  Okay.  Anything else?
20               MR. STERN:  The only other -- (indiscernible)
21      think they would disagree with me -- well, two things.
22      One was Mr. Escobar testified that he doesn't speak
23      English, doesn't read English.
24               He said when he went on, there were Spanish
25      forms.  I just want the forms that they sent him.  You
```

```
                           Argument                       43
 1      know, when he went on, there were Spanish forms.
 2               MR. CARTON:  There are no Spanish forms, Your
 3      Honor.  So --
 4               THE COURT:  Okay.  Well, I mean --
 5               MR. CARTON:  -- he's mistaken.  We -- we've
 6      produced every form that we have with him.  There are
 7      none in Spanish versions.  So, whether he said that or
 8      not, he might have in his deposition, we do not have
 9      any documents in Spanish.
10               THE COURT:  Okay.
11               MR. STERN:  Again, you just have to say that.
12               THE COURT:  Okay.  I understand.
13               MR. CARTON:  And the other issue, I think,
14      was -- well, I think that's (indiscernible).
15               MR. STERN:  No, no.  I don't know if they
16      have it.  They've sent -- they've sent me a list of
17      documents they said that Mr. Escobar, I guess, clicked,
18      because there's no way to sign.
19               THE COURT:  Mm-hmm.
20               MR. STERN:  But I'm like, well, what proof do
21      you have that he ever clicked those?
22               THE COURT:  Mm-hmm.
23               MR. STERN:  And I just want whatever proof
24      they have.
25               MR. CARTON:  The proof's just on the
```

Argument                        44

```
 1    documents themselves, Your Honor.  This is in the
 2    context of RFP.  It's not an interrogatory, not a
 3    deposition.  They're -- they're called, I think, it's
 4    click box or check box documents.  They have a
 5    timestamp on the documents that were produced to Mr.
 6    Stern.
 7               THE COURT:  Okay.
 8               MR. CARTON:  That is if a corporate records
 9    custodian of Uber was to testify, the answer would be
10    that it is on the document itself.
11               THE COURT:  Mm-hmm.
12               MR. CARTON:  When it says 11.37 a.m., it's
13    captured as a timestamp.
14               THE COURT:  Mm-hmm.
15               MR. CARTON:  That is a common check box,
16    meaning Mr. Escobar clicked it at that time and
17    acknowledged acceptance.  So, that -- that's just as --
18    there is no document that Uber maintains.  It's --
19               THE COURT:  It's the timestamp on it.
20               MR. CARTON:  That would show -- yeah, it's on
21    -- the documents themselves are the evidence that it
22    was accepted.
23               THE COURT:  Okay.
24               MR. STERN:  Well, I'm just trying to figure
25    out how they would ever prove that he acknowledged
```

Argument                        45

```
 1    that.
 2               THE COURT:  I guess the timestamp.
 3               MR. STERN:  I mean, they have a piece of
 4    paper, but that's not best evidence.
 5               THE COURT:  Well, you could -- I mean --
 6               MR. CARTON:  It's -- it's --
 7               THE COURT:  Certification from their IT
 8    person.  I don't know.
 9               MR. CARTON:  Well, yeah, I mean, it would be
10    -- it's a business record, Your Honor.  And if -- and
11    if -- if counsel wants to attack it at trial, I don't
12    know what it goes to here in this case.  Is he really
13    hoping that the guy's not working and his cousin signed
14    up for him and the guy's not even a driver?  I don't
15    think so.
16               I think the counsel wants him to be a driver
17    and he wants him to have accepted those documents.
18    Maybe not.  But the point is it's -- this is not an
19    uncommon practice.  There's 30 years of case law on
20    check box documents, Your Honor.
21               A records custodian would say that -- the way
22    that the system works, explain the system, explain how
23    the app works, explain when somebody clicks the
24    timestamp is generated.
25               THE COURT:  Mm-hmm.
```

Argument                                    46

1       MR. STERN:  And that is the -- that is the
2   proof that it was accepted.  Whether you can say
3   somebody was sitting at the guy's desk and did it for
4   him at the time, I guess you could, but the point is
5   somebody, presumably Escobar, clicked it at that time
6   and that was -- and they acknowledged accepting those
7   terms at that time.
8       MR. STERN:  (indiscernible) they acknowledge
9   there's no other document then that would be
10  responsive.
11      THE COURT:  Okay.  Okay.  All right.
12  Anything else we need to address?
13      MR. STERN:  That's all I have.
14      THE COURT:  Okay.  Anything from Uber?
15      MR. CARTON:  Well, Your Honor, we have this -
16  - we have our own motion, as Your Honor is aware.
17      THE COURT:  Mm-hmm.
18      MR. CARTON:  And I do believe it's for a
19  protective order, and it's -- as stated so far, Your
20  Honor, this case is -- was filed in February a year
21  ago.  It's one year old.  It started February 21, 2024.
22      THE COURT:  Can I interrupt you one second?
23  I'm sorry.  I just need to respond to something.
24  Sorry.
25              (Pause in proceedings)

Argument                                    47

1       THE COURT:  I'm sorry.  Go ahead.
2       MR. CARTON:  So, the -- the -- Uber's motion,
3   Your Honor, is for a protective order under 4:10-3,
4   which, Your Honor, is under good cause, the Court does
5   have the ability on demonstration of good cause to
6   control basically discovery and order none
7   (indiscernible) no more be taken, et cetera.
8       So, I think, Your Honor, this case being a
9   year old, so we've had (indiscernible) interrogatories.
10  We've had 10 or I think it's 11 supplemental
11  interrogatories.  Over a hundred -- at the time this
12  motion started, and we've received more since, 128
13  requests for production, 92 requests for admissions,
14  and 11 supplemental interrogatories, the subpoena to
15  the DOL and all of that, and all that motion practice,
16  and all this motion practice.
17      And now, what Your Honor was told yesterday
18  in a letter is, well, I've got counsel from Houston
19  now, and then I got an e-mail from that counsel
20  yesterday, Your Honor, that said -- his name is Bret
21  Stanley, and he basically -- I'm not going to read the
22  entire e-mail, but he says I've been admitted pro hac.
23  I'll be working with Mr. Stern.  Soon you will receive
24  a new request for production of documents served on
25  Uber.  To date, many documents have not been produced

Argument                                              48

1    in this matter that are known to exist in Uber's
2    systems.  I firsthand knowledge of the existence of
3    these documents through prior and current litigation
4    efforts against Uber in various jurisdictions.
5            So, the point is, a new -- and -- and Mr.
6    Stern told me just this morning outside that yeah,
7    we'll be getting a new request for production of
8    documents.
9            So, as I stated earlier, Your Honor, we
10   essentially have an admission in the letter to --
11   Counsel's letter to Your Honor yesterday where Counsel
12   said I will be able to make now specific targeted RFA -
13   - RFPs, you know, because I have this counsel that
14   knows how to do that.
15           So, we have an acknowledgment that 128 RFPs
16   so far were sort of shooting from the hip and really
17   what we've been saying all along not targeted, not
18   really intelligible, frankly, in many respects.
19           And now we're being told -- and we've said
20   this in our motion, Your Honor, this -- this makes
21   things worse.  Now we're being told forget that all
22   happened.  Forget all this motion practice that I've
23   come down here twice now on all these motions, and
24   forget the 128.  Now we've got a new guy and we're
25   going to start all over again.  That has real problems,

Argument                                              49

1    Your Honor.  So, we believe a protective order of some
2    kind needs to be entered to control that.
3            Our motion was specifically to say no more
4    discovery.  I doubt Your Honor is inclined to do that.
5    But what I would suggest, Your Honor, is in light of
6    this e-mail that we're going to get anew, it should be
7    limited.
8            You can't get 128 new as if this never
9    happened.  That's massively wasteful.  And again, this
10   is just was Mr. Escobar an employee -- under the
11   control of Uber such that he was an employee.
12           Anybody -- if this gentleman, Mr. Stanley,
13   knows where - what the documents are and more
14   importantly what Uber's systems are so he can ask them
15   and say I want from that computer system -- I want
16   this, it should be very targeted.  We should be able to
17   do it.  So, there should be some limit.  It should be
18   10 more.  It shouldn't be 120 more requests for
19   production, Your Honor.  It should be limited, because
20   there's an acknowledgment we just wasted a year on 128
21   and in motion practice and everything.
22           That is an acknowledgment that those were not
23   targeted demands.  And now we're being told we have new
24   counsel and we're going to start all over again.  So,
25   there -- it needs to be limited somehow.

Argument                                    50

```
 1          The other issue we raised was the special
 2   master, Your Honor.  This case, even though it's a
 3   garden variety red light case, it clearly is not being
 4   prosecuted by plaintiff as a normal, garden-variety
 5   case.
 6          And I understand in a normal variety case,
 7   parties manage their own discovery with hopefully no --
 8   not much intervention of the Court at all, but
 9   absolutely under our rules, in complex cases when
10   discovery especially gets complicated, special masters
11   are routinely employed.
12          And they're a way to buffer, Your Honor, and
13   Your Honor knows so we don't have to do this with you
14   on these motions and come back.  So, I think the case
15   would benefit from a special master to -- so when this
16   Bret Stanley comes in and gives 150 new demands,
17   hopefully Your Honor will have limited that.
18          But let's say it's 20 new ones and it could
19   be filtered through a special master about -- there
20   should be a first cut where somebody will understand
21   the very limited issues, all about control, is the
22   person an employee, does this go to that issue, so that
23   Uber isn't being made to run through, you know, an
24   entire restarting this -- what -- what has become a
25   complex discovery.  The way it's being treated by
```

Argument                                    51

```
 1   Counsel is -- is a complex matter.
 2          So, we would propose, Your Honor -- we had
 3   said it should be at plaintiff's cost.  If Your -- if
 4   Your Honor is not inclined to appoint a special master
 5   at plaintiff's cost, it should be like in a normal
 6   case, a special master should be appointed at a 50/50
 7   cost sharing and it's a buffer.  It's no big deal.
 8          This -- if this case is truly important
 9   enough to go get a lawyer from Houston who's going to
10   now pepper us with new demands, it's important enough
11   to have a special master preside over that.
12          So, Uber would request that, number one, Your
13   Honor put some limit on the request for production of
14   this -- we're told one's coming.  It shouldn't be 128
15   again, Your Honor.  It should be a dozen I'd say at
16   most if this -- there's only eight factors to decide
17   somebody's control.  So -- or some sort of proffer by
18   counsel about categories that justify more than a
19   dozen, Your Honor.
20          In other words, if this person knows Mr.
21   Stanley truly, these systems, then -- and he needs 100
22   more documents, then he should be able to say pretty
23   simply off the top of his head, I know these systems.
24   There's 100 documents out there (indiscernible)
25   control.  Here they are.
```

Argument                                    52

1       So, either we should just pick a number, 10,
2   12, that I think is reasonable for remaining requests
3   for production, or counsel should have to proffer why
4   he would need more than that.
5       And on top of that, I do think we need a
6   special master 50/50 split between defense, because
7   this case is clearly, Your Honor, a complex -- it's
8   being treated as a complex discovery matter, and
9   Counsel is on record saying how important it is, what a
10  serious case it is, the person has a traumatic brain
11  injury, we've got to get these discovery issues right.
12      So, that's Uber's motion, Your Honor --
13      THE COURT:  Okay.
14      MR. CARTON:  -- and we would - we also did
15  have a chain - a cross-motion to compel, Your Honor.
16  That was just about -- there are many documents that
17  plaintiff -- we've simply said any document you're
18  going to use at trial, we would like the chain of
19  custody of where it comes from.
20      We shouldn't be confronted with documents at
21  trial that we have no understanding of their origin
22  whatsoever, and -- and we've gotten none.  Counsel has
23  given none and said those are qualified and privileged,
24  where (indiscernible) my lawyer worked to find these
25  documents that I sent to you.

Argument                                    53

1       But it's a little different if you're going
2   to use them at trial.  So, that issue, Your Honor, is
3   for any documents that Counsel's going to use at trial,
4   that it's not self-evident.  We -- we would like an
5   order that -- to understand the chain of custody of
6   where Counsel received them if they're going to be used
7   at trial.  That was the extent of our motion.
8       THE COURT:  Okay.
9       MR. CARTON:  Thank you.
10      MR. STERN:  First of all, the -- the
11  characterization that our notice to produce, and mostly
12  it's notice to produce number three, is bad, is not
13  true, we -- we targeted the different topics that we
14  believe have relevant documents in them, but I just
15  don't know the names of those documents.
16      And when Your Honor asked us to confer, Mr.
17  Carton said, well, what's the name -- what's the
18  document that you want?  And the problem is that they
19  put confidentiality agreements in all -- in many of
20  their cases.  So, I'm not able to get the name of the
21  document, and that's why I moved Mr. Stanley as pro hac
22  because it's kind of -- to give an analogy, I'm out in
23  the desert.  I know there are bodies buried here.  I
24  just don't know where they're buried.
25      Mr. Stanley knows where the bodies are.  He

Argument                                54

1    knows what documents he wants.  And more importantly,
2    Uber has already supplied all of the documents we're
3    going to be requesting.  They -- they have them all.
4    They've all been supplied.
5           They were supplied in -- in <u>Razak</u>.  They were
6    -- they've been supplied -- they supplied hundreds or
7    thousands of pages of documents in the MDL in
8    California.  They could just give me -- I'd be happy,
9    just give me all the documents Uber turned over in the
10   MDL in one fell swoop that I have to go through, but
11   that would be easy.
12          It wouldn't require a master, but Mr. --
13   we're working on a draft of the next -- where
14   (indiscernible) here's the topics, there's I think
15   eight, ten, twelve different topics, and then there's
16   some documents requested.
17          But in our notes (indiscernible) and I've
18   only seen a draft that we're both working on, they
19   named the computer programs.  They named the names of
20   -- many of the times, they named the specific document
21   that we want, and which, as I said, have all been
22   supplied by Uber in previous litigation.
23          So, there's no difficulty to Uber to produce
24   them.  They keep saying, oh, this is just a -- a stop
25   sign case.  They've got three partners working on the

Argument                                55

1    case and one associate.  Your Honor just has to look at
2    summary judgment motions (indiscernible) cases.  This
3    is getting litigated all over the country.  People are
4    taking 10, 20, 30 depositions in these Uber cases, in
5    these simple automobile cases.
6           I'm not looking to take 30 depositions, but
7    we have a right to specifically get to the documents
8    that we need, which will make your job certainly
9    easier.  I don't see that we need a -- a special
10   master.  If they've produced all the documents before,
11   there shouldn't be any problem producing them now.
12          With regard to their cross-motion, they
13   haven't asked for a chain of custody of every document
14   we want to submit.  What they want -- what their motion
15   specifically was, they want to name the person that
16   gave me the DOL audit.  That's -- that's all that
17   they've requested in their motion.  And my answer
18   (indiscernible) question is, number one, where I got it
19   is none of their business.  I didn't subpoena it, and I
20   didn't get it from an OPRA request.  So, there was an
21   allegation that maybe I issued a subpoena that I didn't
22   send to them.  I did not go to DOL and get that
23   document.  So, make that clear.
24          But if I said to them, you know, John Doe
25   gave me that document, well, what's the relevance of

1    that?  In speaking with Mr. Carton the other day, he
2    said, well, you need to authenticate the document.  I
3    said, well, I don't even know if it's admissible.
4    They'd argue it's not, and I think they may be right.
5    But putting that issue aside, you know, what -- what
6    are they going to do with that?  Why do they need that
7    information?  That doesn't authenticate it.  If Mr. X
8    somehow got that document, that's not authenticating.
9          If they want me to tell them who's going to
10   authenticate the DOL, if -- if I were going to use it,
11   my answer would be I'm going to subpoena a
12   representative from DOL to authenticate a document, but
13   where I got it isn't relevant to anything in this case.
14   I don't know why they want it, why they need it.
15         They haven't expressed why they need it, why
16   they want it.  They just want to harass me or whoever
17   gave it to me.
18         THE COURT:  So, you're saying that there was
19   -- the request pending isn't for all -- a chain of
20   custody of all documents you --
21         MR. STERN:  I've never seen a request for all
22   documents.  The only Uber documents that I -- you know,
23   if I had a document, I would send it to them and with a
24   request for admission to admit that this is authentic
25   or not if -- if it was an Uber document.  It's the only

1    way I think I could authenticate it.  Or if I had a
2    document, I could show it to Ms. O'Keefe or anyone else
3    from Uber, I suppose.  Is this an authentic document?
4    That's how I would have to authenticate something.
5          THE COURT:  All right.  Let -- yeah.  I --
6    I'm not going to enter a protective order.  I mean, I
7    think it's premature.  I'll -- I'll have to see what
8    the -- you know, what the request is, and if it's
9    something that justifies, you know, the request for a
10   protective order, I think I'll be in a better position
11   to decide it at that point.
12         But I don't feel comfortable doing it without
13   knowing what the request is.  I understand the history
14   and the requests that you've gone through to get to
15   this point, but you know, that happens in litigation
16   sometimes.
17         Requests are made, requests are revised, and
18   -- and here we are.  I'm not going to appoint a
19   discovery master.  I think, you know -- unless the
20   parties consent to one.  I don't think I've ever in my
21   career ordered one to be required where the parties
22   don't consent.
23         I mean, you know, I'd like somebody else to
24   do it, but that's what I'm here for, and if the parties
25   aren't going to agree to it, it would be highly

Argument/Decision                              58

```
 1   unlikely for me to -- to order one to be required given
 2   the expense.  So, the last issue is this chain of
 3   custody issue.
 4              MR. CARTON:  It sounds like, Your Honor, what
 5   we're trying to get at was documents that Counsel would
 6   like -- intends to use at trial.  We know their origin,
 7   and they're not typically Uber documents.
 8              They're -- there's documents from -- that are
 9   alleged to be Uber, but we don't recognize them.  So,
10   maybe we have another meet-and-confer.  I don't want to
11   trouble the Court's time with that.
12              THE COURT:  Okay.
13              MR. CARTON:  But it sounds like there's a
14   little misunderstanding about what exactly we're
15   talking about here.
16              THE COURT:  Okay.
17              MR. CARTON:  So, I don't want to trouble Your
18   Honor with it.
19              THE COURT:  All right.
20              MR. CARTON:  I think we can try and pick this
21   one up on ourselves --
22              THE COURT:  Okay.
23              MR. CARTON:  -- and probably work it out.
24              THE COURT:  All right.  I'll just deny it,
25   but it's without prejudice, obviously.
```

Argument/Decision                              59

```
 1              So, now it also says plaintiff must respond
 2   to discovery request issued by defendants on December
 3   30th and March 20th, by no later than March 20th.
 4   What's that?  Is that the same issue or is there
 5   anything else I'm missing here?  I'm running out of
 6   time.  I just need to -- to move along.
 7              MR. CARTON:  Yeah.  That was -- sorry, Your
 8   Honor.
 9              THE COURT:  It's okay.
10              MR. CARTON:  If you can bear with me one
11   second.  We -- there are outstanding requests for
12   discovery from Counsel, Your Honor, that remain
13   outstanding.  And -- but I'm just trying to remember
14   the nature of those two requests and what specifically
15   was outstanding, and I'm sorry it's not -- I'm not
16   coming to it right now.
17              THE COURT:  No problem.
18              MR. CARTON:  Maybe that's one we meet and
19   confer as well, Your Honor, and --
20              THE COURT:  That's fine with me.
21              MR. CARTON:  -- we'll talk about it.
22              THE COURT:  Like I said, I'll deny it, but
23   it's -- you know, obviously without prejudice.
24   Anything else?
25              MR. STERN:  Nothing from plaintiff, Your
```

Colloquy                                    60

```
 1    Honor.
 2              THE COURT:  Okay.  And let me just ask that
 3    the -- the one form of order here, I mean, obviously
 4    I'll put together the order with respect to the -- the
 5    dep -- the deposition transcripts on my rulings on
 6    that.  I have the order for the request for admissions,
 7    but there's another order here.
 8              Defendants shall provide all documents
 9    requested in the plaintiff's notice to produce 3 to 6
10    and 9 to 11.  Is that -- is that the one that's
11    withdrawn in light of Mr. Stanley?
12              MR. STERN:  Most -- well --
13              THE COURT:  I'm not sure what this --
14              MR. STERN:  Most of -- yeah.  Well, most of
15    those had to do with each of the deposition
16    transcripts.
17              THE COURT:  Oh, okay.
18              MR. STERN:  Which --
19              THE COURT:  So, there's over -- there's
20    overlap then with some of the evidence?
21              MR. STERN:  Yes.
22              THE COURT:  Okay.  So, I'll just upload the
23    same order for that, too.  Okay.  Understood.  Okay.
24    We can go off the record.  Thank you.
25              MR. STERN:  Thank you for your time and
```

Colloquy                                    61

```
 1    effort, Your Honor.
 2              THE COURT:  Yeah, thanks.
 3              (Proceedings concluded at 10:40:08 a.m.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

62

<u>CERTIFICATION</u>

    I, HOLLI J. McGHEE, the assigned transcriber, do hereby certify the foregoing transcript of proceedings on CourtSmart, Index No. from 9:34:30 to 9:41:39 and 9:42:01 to 10:40:08 is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate compressed transcript of the proceedings, as recorded.

*/s/ Holli J. McGhee*           AOC 702
Holli J. McGhee            AOC Number

KLJ Transcription Service       04/08/25
Agency Name              Date