# EXHIBIT 10



May 26, 2025

Veronica Hayes Gromada<br>
600 Travis St., Suite 3400<br>
Houston, Texas 77002<br>
<b>t</b> 713.546.5683<br>
<b>f</b> 713.227.9508<br>
vgromada@shb.com

**VIA EMAIL**

**Plaintiffs' Steering Committee**

Rachel B. Abrams (rabrams@peifferwolf.com)
Sarah R. London (slondon@girardsharp.com)
Meredith Stratigopoulos (mdrukker@edelson.com)
Sara M. Peters (speters@walkuplawoffice.com)
Roopal P. Luhana (Luhana@chaffinluhana.com)
Marlene Goldenberg (mgoldenberg@nighgoldenberg.com)
Ellyn H. Hurd (ehurd@simmonsfirm.com)
Bret Stanley (BStanley@johnsonlawgroup.com)
Khaldoun A. Baghdadi (kbaghdadi@walkuplawoffice.com)
Alexandra M. Walsh (awalsh@anapolweiss.com)
Brian A. Abramson (babramson@whlaw.com)

> Re:   Ongoing Violations of Protective Order
> *In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation (*Case No. 2:23-md-03084-CRB)

Counsel:

On behalf of Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), we write to remind Plaintiffs and counsel of their obligations under the Protective Order entered in the above matter (the "MDL") and call your attention to ongoing violations of the Protective Order by a member of Plaintiffs' Steering Committee, Bret Stanley.

On December 28, 2023, Judge Breyer entered a Protective Order in the MDL (the "Protective Order"). ECF 176. The Protective Order restricts the use of Protected Material as well as information "extracted from" Protected Material and "excerpts, summaries, or compilations" of Protected Material:

> The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2)



all copies, excerpts, summaries, or compilations of Protected Material; and (3) any Testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

ECF 176, ¶ 3.

The Protective Order requires that a Receiving Party, *i.e.* a Party that receives discovery from a Producing Party in the MDL (ECF 176, ¶ 2.17), may use covered material "*only* for prosecuting, defending, or attempting to settle this Action or the [related JCCP] consolidated action…" ECF 176, ¶ 7.1 (emphasis added).

In order for a Receiving Party to disclose information designated as "Confidential" to persons other than the Court, court personnel, attorneys of record, special masters, and mediators, the Protective Order requires, first, an Order of the Court or permission in writing from the Designating Party. Those persons must then execute the Acknowledgement and Agreement to be Bound (Exhibit A, ECF 176-1). ECF 176, ¶ 7.2. In other words, aside from permitted recipients specified in the Protective Order, covered material can be disclosed only to persons who agree to be bound by confidentiality obligations, and only *after* the Receiving Party obtains either the consent of the Designating Party or a Court Order.

The importance of the Protective Order in the MDL is particularly apparent. Uber has produced over 1.7 million documents, often over its objections to the relevance, breadth, and proportionality of Plaintiffs' requests, related to all aspects of Uber's business. Of particular significance here, Uber objected that many of Plaintiffs' requests in the MDL related to policies that were not relevant or proportional to the issues in dispute.

As detailed in the attached letter, Mr. Stanley's use of information derived from and summarizing material covered by the Protective Order to prosecute other cases is a clear violation. Please confirm in writing that Plaintiffs' counsel other than Mr. Stanley are not using, and will not use, information covered by the Protective Order in this manner. Further, please detail all steps Plaintiffs' Steering Committee has taken, or plans to take, to ensure that use of covered material to prosecute other cases by Mr. Stanley and others will immediately cease.



May 26, 2025<br>Page 3

Sincerely,

Veronica H. Gromada
Partner


Encl.



May 26, 2025

Veronica Hayes Gromada
600 Travis St., Suite 3400
Houston, Texas 77002
**t** 713.546.5683
**f** 713.227.9508
vgromada@shb.com

**VIA EMAIL**

Bret D. Stanley
Johnson Law Group
2925 Richmond Avenue, Suite 1700
Houston, TX 77098
(BStanley@johnsonlawgroup.com)

>   Re:   Ongoing Violations of Protective Order
>         *In re: Uber Technologies, Inc. Passenger Sexual
>         Assault Litigation*
>         Case No. 2:23-md-03084-CRB

Mr. Stanley:

On behalf of Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), we demand that you immediately cease and desist your violations of the Protective Order entered in the above matter (the "MDL").

As detailed below, you are a Receiving Party of information produced by Uber in response to discovery in the MDL, and are using material derived from that information and designated as "Confidential" to pursue discovery in unrelated cases without notice to, let alone consent of, the Designating Party. That conduct plainly violates the Protective Order.

Moreover, you appear to be using your access to information covered by the Protective Order to market your ability to contribute as co-counsel in unrelated cases. As Plaintiffs have hardly used the extensive policy information they argued was critical to the MDL to date, it appears the true reason for insisting on production of this information was to build ammunition for use in other litigation. Regardless of motive, your actions have violated, and continue to violate, the Protective Order.

The Protective Order

On December 28, 2023, Judge Breyer entered a Protective Order in the MDL (the "Protective Order"). ECF 176. The Protective Order restricts the use of



Protected Material as well as information "extracted from" Protected Material and "excerpts, summaries, or compilations" of Protected Material:

> The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any Testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

ECF 176, ¶ 3.

The Protective Order requires that a Receiving Party, *i.e.*, a Party that receives discovery from a Producing Party in the MDL (ECF 176, ¶ 2.17), may use covered material "*only* for prosecuting, defending, or attempting to settle this Action or the [related JCCP] consolidated action…" ECF 176, ¶ 7.1 (emphasis added).

In order for a Receiving Party to disclose information designated as "Confidential" to persons other than the Court, court personnel, attorneys of record, special masters, and mediators, the Protective Order requires, first, an Order of the Court or permission in writing from the Designating Party. Those persons must then execute the Acknowledgement and Agreement to be Bound (Exhibit A, ECF 176-1). ECF 176, ¶ 7.2. In other words, aside from permitted recipients specified in the Protective Order, covered material can be disclosed only to persons who agree to be bound by confidentiality obligations, and only *after* the Receiving Party obtains either the consent of the Designating Party or a Court Order.

The importance of the Protective Order in the MDL is particularly apparent. Uber has produced over 1.7 million documents, often over its objections to the relevance, breadth, and proportionality of Plaintiffs' requests, related to all aspects of Uber's business. Of particular importance here, Uber objected that many of Plaintiffs' requests in the MDL related to policies that were not relevant or proportional to the issues in dispute.



May 26, 2025
Page 3

Conduct Violating the Protective Order

As detailed below, your recent use of information covered by the Protective Order in other litigation violates the Protective Order. Significantly, your recent conduct appears to continue a pattern and practice of using information covered by protective orders to pursue discovery in unrelated cases evidencing a general disregard for confidentiality obligations imposed by court orders.

*Your Use of a "Policy List," Containing 326 Policies Compiled from Other Litigation, in the MDL*

In a May 17, 2024 email related to MDL discovery disputes, you represented that you obtained substantial information related to Uber by litigating "many cases" against it, including *Razak, et al. v. Uber Technologies, Inc., et al.* (Case No. 2:16-cv-00573, Eastern District of Pennsylvania) and the arbitration matter *Saxton, et al. v. Uber Technologies, Inc.* (Austin, TX). You noted that, through these cases, you obtained "hours of testimony from Brad Rosenthal and Matthew Baker on [documents from Uber's Knowledge Base] and other matters." You suggested that Uber's counsel review Mr. Baker's deposition in *Saxton* but said you "cannot share this deposition…due to protective order."

You then sought to use the information Uber produced in prior cases to pursue discovery in the MDL. Specifically, your May 17, 2024 email attached an "Uber Policy List" containing 326 "policies." You described your creation of this list as follows:

> I have pulled the names of all the KB Platform Policies that have been produced to me as well as the names of all KB Platform Policies that are listed in the 'Related Resources' section of these Policies. Attached is a spreadsheet with the names of all Policies that I'm aware of. If the policy is highlighted in red, then it is duplicated on my list due to multiple versions of the same policy.

You used this "policy list," created from confidential information provided in unrelated cases, to argue that Uber's MDL production was deficient. Contrary to your suggestion, Uber had appropriately responded to vague, overly broad, and disproportionate requests in the MDL and was regularly conferring with Plaintiffs' counsel to resolve any confusion regarding its production.



*Your Use of Information Produced in the MDL, and Covered by the Protective Order,*
*To Create a New "Policy List" with 860 Policies*

While your original "policy list" contained 326 policies, you subsequently used information produced in the MDL to create a new list with 860 "policies."

On October 9, 2024, you emailed Uber's counsel attaching the new "policy list." You represented that you created this list by identifying policies "from the Homepages/Repositories/Directories produced in this MDL or from other sources" and "[i]f the Policy on this spreadsheet was identified from documents produced in the MDL, then you will find Beg Bates and Source information identifying where the policy name was pulled from."

You then demanded that Uber produce the documents on this list. Uber objected that your request for all documents on the list of 860 "policies" sought irrelevant information and was disproportionate to the needs of the case. In fact, Uber was specifically concerned that seemingly irrelevant policies might be used in other cases despite the Protective Order.

At the December 19, 2024 hearing addressing this issue, you argued that production of *all* the requested "policies" was necessary because they "are relevant as to the control that Uber has over drivers and how they treat riders" and go "to the employment status question that we have for the Uber drivers." [Dec. 19, 2024 Hearing Transcript, p. 32:25-33:2; 33:20-21]

Notably, the Court expressed skepticism that all policy related documents were relevant and/or proportionate and encouraged Plaintiffs to focus on policies relevant to the "core issues" in the MDL. [Dec. 19, 2024 Hearing Transcript, p. 9:25-10:1 ("I mean, are there requests for policies related to scooter rentals and car seats?"); p. 35:11-14 ("And I'm not going to be overtechnical about what I mean by 'policy,' but we obviously understand what the core issues are in the case."); 37:3-7 ("But what I'm saying is identify those policies that are most important and then they've got to produce all of the associated versions of that policy, plus the internal operating procedures, guidelines that operationalize those policies."); 35:8-11 ("So I want the plaintiffs to focus and identify by Monday the 40 policies that you think are most important and that you are concerned and want to prioritize getting complete production on.")] It now appears the Court's skepticism was warranted and there was an ulterior motive for requesting "policies" related documents on issues with no apparent relation to the MDL.



You also represented to the Court that you created the list of 860 "policies" using Uber's MDL production that is subject to the Protective Order:

> MR. STANLEY: Judge, Bret Stanley on behalf of the plaintiffs. As you know, you ordered on July 18th the indexes, home pages, and those documents that put them into operation. In the wake of that, **we finally got some of the home pages and list of documents from Uber, and I supplied them with a list of 860 policies from those -- their documents**.

[Dec. 19, 2024 Hearing Transcript, p. 32:6-12 (emphasis added)]

You noted that your new list included MDL production Bates numbers. [Dec. 19, 2024 Hearing Transcript, p. 36:12-16 ("on that index that I gave them, I did identify where in the production that these names of the policies came from by Bates label.")]

Thus, you represented to both Uber's counsel and the Court that you created the "policy list" containing 860 documents from Protected Material. As a result, the Protective Order restrictions apply because the list contains information "derived from" Protected Material and is an excerpt, summary, or compilation of Protected Material.

You are now using the list of 860 "policies," which you admittedly created from the MDL production subject to the Protective Order, to pursue and prosecute unrelated cases in other courts.

*Your Use of Information Subject to the Protective Order to Pursue Discovery in Other Cases*

You recently associated with counsel for plaintiffs in at least two cases: *Ivan Smith v. Uber Technologies, Inc.*, Case No. 2022CI11011 (Bexar County, Texas) and *Lord v. Uber Technologies, et al.*, Docket No. MER-L-360-24 (Mercer County, New Jersey). The *Smith* and *Lord* cases involve motor vehicle collisions.

You are using material covered by the Protective Order to pursue discovery in these cases. This conduct plainly violates the Protective Order.



May 26, 2025
Page 6

The *Smith* pleadings admit that you acquired the information being used to pursue additional discovery through the MDL and suggest that your access to that information is the reason you were added as counsel in that matter:

> Bret Stanley was brought into this matter due to his long history of litigation against Uber and based on current litigations with Uber around the country, **most notably the litigation ongoing in the Northern District of California, San Francisco Division— styled Multidistrict Litigation 3084,** *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*. In the Fall of 2023, Mr. Stanley was named to MDL 3084's Plaintiff's Steering Committee and executive leadership. Since then, Mr. Stanley has undertook [sic] extensive discovery efforts against Uber, including many hearings before Judge Breyer and Magistrate Judge Cisneros in MDL 3084.
>
> **These litigation efforts have allowed Mr. Stanley significant experience and knowledge concerning Uber's internal systems, documents, tracking of data, and employee witnesses with relevant and discoverable information.** The information known to Mr. Stanley is especially relevant to this matter before the District Court in Bexar County, Texas.

[Plaintiff's First Opposed Motion for Continuance (emphasis added)]

The actual discovery requests propounded in *Smith* and *Lord* confirm your use of the "policy list" containing 860 documents, which you admittedly created from the MDL production, in those cases.

In *Lord*, the plaintiff's April 16, 2025 12th Supplemental Notice to Produce requests *inter alia*:

> All Materials reflecting Uber's Investigation of the Subject Incident, including the complete, up-



May 26, 2025
Page 7

> to-date Ticket and Ticket-Related Documents. (Ticket Related Documents includes but is not limited to the Documents accessible via the hyperlinks shown in Appendix A.)

[12th Supplemental Notice to Produce, Req. No. 41]

Appendix A is a twenty-two-page spreadsheet listing 849 documents. Of the 849 listed documents, *at least* 473 were discovered in the MDL and are subject to the Protective Order. In fact, Appendix A even includes the names of the "Source KB Homepage / Index Title" produced pursuant to Court Order in the MDL from which each requested "policy" is sourced.

In *Smith*, the plaintiff's Fifth Set of Requests for Production contains 82 requests including for "Articles/Policies identified in Exhibit A." Exhibit A is a four-page spreadsheet identifying 180 "policies" or articles from Knowledge Base. Of the listed documents, *at least* 19 were discovered in the MDL and are subject to the Protective Order.

Uber has confirmed that 473 of the documents listed in the *Lord* discovery request and 19 of the documents listed in the *Smith* discovery request were not identified in your original May 2024 "policy list" containing 326 documents. Uber has further confirmed that the 473 *Lord* documents and 19 *Smith* documents were identified as sourced from MDL Bates numbered documents on your October 2024 "policy list" containing 860 documents. According to your own representation, the fact that these documents were identified by MDL Bates number in your October 2024 list means they were identified from documents produced in Uber's MDL production and designated as "Confidential Material" pursuant to the Protective Order.

<u>Your Conduct Violates the Protective Order</u>

Using the names of specific policies contained in Uber's MDL production to pursue discovery in other cases violates the Protective Order. Information subject to the Protective Order may be used "*only* for prosecuting, defending, or attempting to settle this Action or the consolidated action…" You represented to the Court that you needed policy related documents for litigating employee status issues in the MDL. Instead, you are using the policy documents to pursue discovery in other cases. Based on the above, it appears that using Uber's documents in other unrelated litigation may have motivated Plaintiffs' broad requests for unrelated "policy" documents in the first place.



May 26, 2025
Page 8

Courts have repeatedly found violations where information subject to a protective order was used to prosecute other cases. *See Gonzales v. Charter Commc'ns, LLC*, No. 2:20-CV-08299-SB-AS, 2022 WL 570003, at *4-5 (C.D. Cal. Jan. 26, 2022) (counsel's use of policies designated as confidential in the complaint filed in another case violated protective order); *Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*, No. 22-CV-04986-JSC, 2023 WL 6882749, at *3 (N.D. Cal. Oct. 18, 2023) (Corley, J.) (defendant violated protective order by using information derived from a confidential document produced in discovery to pursue another lawsuit in a different forum); *Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-CV-0628-TWR-AGS, 2021 WL 818971, at *3 (S.D. Cal. Mar. 2, 2021), *report and recommendation adopted*, No. 15-CV-628 TWR (AGS), 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021) (counsel violated protective order by using a confidential list of phone calls placed by putative class members and their "hold times" to file a separate action).

Your use of material subject to the Protective Order to pursue discovery in other cases is a violation of the Order. This violation has allowed persons who have no confidentiality obligations to access Uber's confidential information. We insist that you immediately cease and desist this conduct, and Uber reserves all rights to pursue further action to address these violations.

Sincerely,

*Veronica Gromada*

Veronica H. Gromada
Partner