# KIRKLAND & ELLIS LLP

Laura Vartain
To Call Writer Directly:
+1 415 439 1625
laura.vartain@kirkland.com

555 California Street
San Francisco, CA 94104
United States

+1 415 439 1400

www.kirkland.com

Facsimile:
+1 415 439 1500

July 21, 2025

**VIA ECF**

The Honorable Lisa J. Cisneros
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation*,
MDL No. 3084 CRB; Motion to Quash Law Firm Subpoenas

Your Honor:

Defendants Uber Technologies, Inc., Raiser, LLC and Raiser-CA, LLC (together, "Defendants") respectfully oppose Plaintiffs' motion to quash subpoenas seeking information related to third-party litigation funding ("TPLF") entities. Plaintiffs do not appear to dispute that TPLF is being used to fund cases in this MDL proceeding, and the ubiquity of attorney advertising for claims against Uber strongly suggests it is. Instead, Plaintiffs argue that: (1) the requested information is irrelevant; (2) the information is protected work product; and (3) the subpoenas are untimely. These arguments lack merit.

## I.     Background

***TPLF***. "Litigation finance is the practice where a third party provides capital to a litigant or law firm in connection with a legal claim." Suneal Bedi & William C. Marra, *The Shadows of Litigation Finance*, 74 Vand. L. Rev. 563, 570 (2021). "For at least the past decade, multidistrict litigations . . . have attracted the attention of third-party litigation funding entities, some with ill motives aimed at preying on litigants." *In re Depo-Provera*, *(Depot Medroxyprogesterone Acetate) Prods. Liab. Litig.*, No. 3:25-md-3140, 2025 WL 1860996, at *1 (N.D. Fla. July 1, 2025). According to a December 2022 report by the U.S. Government Accountability Office, such funding may improperly "deter plaintiffs from accepting a settlement offer because they may want to make up the amount they will" be forced to "repay the funder."[1] Unfortunately, "this growing industry is shrouded in secrecy." Maya Steinitz, *The Litigation Finance Contract*, 54 Wm. & Mary L. Rev. 455, 461 (2012).

To increase the transparency of TPLF, a growing number of MDL judges are requiring varying forms of TPLF disclosure. For example, Judge Yvonne Gonzalez Rogers asked each attorney in the teen social media MDL proceeding to divulge whether they are using third-party

---

[1] U.S. Gov't Accountability Off., GAO-23-105210, *Third-Party Litigation Financing: Market Characteristics, Data, and Trends* (Dec. 2022), available at https://www.gao.gov/assets/gao-23-105210.pdf.

KIRKLAND & ELLIS LLP

July 21, 2025
Page 2

litigation funding. Hr'g Tr. 12:21-24, *In re Soc. Media Adolescent Addiction/Pers. Injury Prods. Liab. Litig.*, MDL No. 3047 (N.D. Cal. Nov. 9, 2022) (Ex. 1). Other MDL judges have required greater disclosure, including the identity of the funders, the nature of the funding and (in some cases) the actual agreements. *In re Depo-Provera*, 2025 WL 1860996, at *1 (ordering disclosure of identity of the funder, the nature of the funding and the actual funding agreement under seal); Case Mgmt. Order No. 61, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 3:19-md-02885 (N.D. Fla. Aug. 29, 2023), ECF 3815 ("*3M* CMO 61") (Ex. 2) (requiring disclosure of pre-settlement litigation funding agreements); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 U.S. Dist. LEXIS 84819, at *45 (N.D. Ohio May 7, 2018) (ordering disclosure of third-party contingent litigation financing agreements to the court in opioid MDL); Case Mgmt. Order Regarding Model Leadership Applications for the Consumer Track at 2-3, *In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 8:19-md-02879 (D. Md. Apr. 11, 2019), ECF 171 (Ex. 3) (requiring counsel to disclose intention of using TPLF and whether funders will have any "control" over litigation decisions).

**The subpoenas**. On June 13, 2025, Defendants provided notice of intent to serve substantially identical subpoenas on nine law firms appointed to MDL or JCCP leadership.[2] The subpoenas include six documents requests tailored to the circumstances surrounding TPLF received by Plaintiffs, encompassing three narrow categories of documents: (1) documents and communications relating to any TPLF received in this litigation; (2) TPLF agreements; and (3) documents, communications and/or agreements that concern the authority to settle or resolve this litigation. (*See, e.g.*, ECF 3250, at 6.)

## II.     Argument

"[T]he party seeking to quash the subpoena has the burden of persuasion," while "[t]he party issuing the subpoena" need only demonstrate that the requested discovery is relevant. *Strike 3 Holdings, LLC v. Doe*, No. 2:23-CV-03022-TLN-CKD, 2024 WL 873052, at *1 (E.D. Cal. Feb. 29, 2024). Plaintiffs have not carried their burden.[3]

### a.     The Requested Third-Party Litigation Funding Information Is Relevant.

"[F]ederal judges can and do [] obtain information about third-party litigation funding arrangements in cases filed in their courts. For example, the Advisory Committee on Civil Rules has observed that judges can obtain information about third-party funding when it is relevant in a particular case." *In re Depo-Provera*, 2025 WL 1860996, at *1. TPLF disclosure is relevant here.

**First**, disclosure of TPLF arrangements will enable the Court to ascertain whether Plaintiffs are controlling the lawsuit. As one court noted in requiring disclosure, "[h]e who pays the piper

---

[2]     ECF 3250, 3252, 3253, 3255, 3257, 3258, 3259, 3262, 3263.

[3]     Plaintiffs erroneously assert that a heightened standard of relevance applies because the subpoenas have been served on opposing counsel. (Pls.' Letter at 2.) But this is not a situation where Defendants are seeking disclosure of work product that would have a "'chilling effect' on attorney-client representations." *PlayUp, Inc. v. Mintas*, No. 2:21-CV-02129-GMN-NJK, 2024 WL 1285670, at *3 (D. Nev. Mar. 25, 2024) (cited in Pls.' Letter at 2).

may not always call the tune, but he'll likely have an influence on the playlist." *Conlon v. Rosa*, Nos. 295907, 295932, 2004 Mass. LCR LEXIS 56, at *5-8 (Mass. Land Ct. July 21, 2004); *see also FastShip, LLC v. United States*, 143 Fed. Cl. 700, 717 (2019) ("*disclosure*" of TPLF-related information "encourage[s] transparency and ensure[s] a shadow broker is not using litigation as a form of harassment"). Unsurprisingly, TPLF entities frequently have the right to control and influence the litigation matters in which they invest. *See Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 579 (6th Cir. 2019) (invalidating funding agreements on state-law champerty grounds because they "effectively g[a]ve [the TPLF entity] substantial control over the litigation" by limiting the plaintiff's right to change counsel).

**Second**, TPLF disclosure also guards against conflicts of interest by revealing the persons/entities with a direct financial stake in the outcome of the litigation. *See FastShip*, 143 Fed. Cl. at 717 ("Disclosure also enables judges to appropriately evaluate potential recusal due to conflicts of interest."); *Nunes v. Lizza*, No. 20-CV-4003-CJW, 2021 WL 7186264, at *2, *5 (N.D. Iowa Oct. 26, 2021) (compelling response to discovery requests regarding TPLF, which are "pertinent to the Court's assessment of conflicts"). Absent disclosure, a federal judge could unwittingly sit in judgment of a case in which he or she has a financial or personal interest, creating a conflict of interest or the appearance of impropriety.

**Third**, TPLF disclosure promotes more meaningful and efficient settlement discussions. As the MDL judge overseeing the 3M earplug litigation observed in ordering the production of funding agreements, mass tort claimants may prolong litigation or reject reasonable settlement offers to ensure that they are able to pay off both the lawyer and outside investor. *See 3M* CMO 61 (requiring disclosure of pre-settlement litigation funding agreements); *see also MSP Recovery Claims v. Sanofi-Aventis U.S. LLC*, No. 2:18-CV-2211(BRM)(LHG), 2024 WL 4913662, at *12 (D.N.J. Apr. 2, 2024) (ordering discovery regarding relationship between plaintiffs and TPLF entities because "there is adequate evidence that a known litigation funding company may have some degree of control or input into litigation or settlement decisions"). Indeed, funders have even boasted that litigation funding "make[s] it **harder and more expensive** to settle cases." Jacob Gershman, *Lawsuit Funding, Long Hidden in the Shadows, Faces Calls for More Sunlight*, Wall St. J. (Mar. 21, 2018) (emphasis added).

While Plaintiffs cite to a handful of decisions finding that TPLF documents were not relevant (Pls.' Letter at 2-3), "those cases . . . are heavily fact-centric[.]" *MSP Recovery Claims*, 2024 WL 4913662, at *11; *Nunes*, 2021 WL 7186264, at *4 (distinguishing cases prohibiting third-party funding discovery as "run-of-the-mill personal injury case[s] or commercial dispute[s]"). This proceeding, of course, has never been approached by Plaintiffs as a "run of the mill" personal injury case; to the contrary, Plaintiffs have taken an extremely expansive approach to document production and depositions, including deposing more than 40 company witnesses. The enormous breadth and scope of this discovery is the antithesis of "run of the mill" personal injury cases. Plaintiffs should not and cannot have it both ways. Moreover, Plaintiffs' failure to deny the existence of TPLF in this MDL strongly suggests that it is being used. *See Nunes*, 2021 WL 7186264, at *4 (rejecting relevancy objection to third-party litigation funding documents and noting that "[p]laintiffs have not denied that the litigation is being funded by others"). TPLF disclosure will allow the Court and Defendants to accurately evaluate ongoing settlement prospects

KIRKLAND & ELLIS LLP

July 21, 2025
Page 4

and to better calibrate settlement initiatives.

### b. The Subpoenas Do Not Seek Production Of Work Product.

Plaintiffs also contend that the subpoenas should be quashed under the work-product doctrine. But Plaintiffs "bear[] the burden of demonstrating that the protection applies," *Entangled Media, LLC v. Dropbox Inc.*, No. 23-CV-03264-PCP (VKD), 2025 WL 1069896, at *2 (N.D. Cal. Apr. 8, 2025), and have failed to do so for multiple reasons. As an initial matter, work-product objections must be specified on an individual basis. *See Eclat Pharms., LLC v. W.-Ward Pharm. Corp.*, No. 13-cv-6252, 2014 WL 12591094, at *2 (C.D. Cal. Apr. 3, 2014) ("An entity that withholds discovery materials based on a privilege must provide sufficient information (i.e., a privilege log) to enable the requesting party to evaluate the applicability of the privilege or other protection."). Plaintiffs have failed to do so.

Their argument is also substantively meritless. While documents pertaining to TPLF "may have been prepared in anticipation of litigation," they "reveal[] no legal advice or mental processes of [the] attorney about the litigation"; rather, they are a mere "'by-product'" of "a business relationship between [the litigation-funding entity] and" Plaintiffs. *Mize v. Kai, Inc.*, No. 17-CV-00915-NYW, 2018 WL 1035084, at *6, *8 (D. Colo. Feb. 23, 2018) ("to the extent that Plaintiff has generally asserted a blanket attorney-client privilege or work product doctrine, this court finds no basis for upholding such invocation"); *see also Combs v. Bridgestone Ams., Inc.*, No. 2:22-CV-00130-DCR-EBA, 2023 U.S. Dist. LEXIS 233193, at *21 (E.D. Ky. Nov. 27, 2023) ("[The] Court does not agree that agreements between a third-party litigation funding company and plaintiffs' counsel are privileged work product."), *adopted by*, 2024 U.S. Dist. LEXIS 7575 (E.D. Ky. Jan. 16, 2024); *Acceleration Bay LLC v. Activision Blizzard, Inc.,* Nos. 16-453-RGA et al., 2018 WL 798731, at *1-2 (D. Del. Feb. 9, 2018) (rejecting claims of work-product protection with respect to emails and other communications exchanged between a plaintiff and funder).

Plaintiffs' cases applying work-product protection are inapposite because the documents in question reflected "counsel's description of the case and counsel's assessment of the strengths and weaknesses of the case." *Fulton v. Foley*, No. 17-CV-8696, 2019 WL 6609298, at *3 (N.D. Ill. Dec. 5, 2019) (cited in Pls.' Letter at 4). Here, by contrast, Defendants are merely seeking documents or communications regarding the terms of the funding arrangements and the actual agreements. If Plaintiffs believe that any portions of those documents qualify as attorney work product, the proper course is to redact those specific portions rather than withhold their production entirely. *See LD v. United Behavioral Health*, No. 20-cv-02254-YGR (JCS), 2022 U.S. Dist. LEXIS 217629, at *62-63 (N.D. Cal. Dec. 2, 2022) ("vast majority of the sample documents reviewed by the Court were improperly withheld or should have been produced in redacted form"). Certainly, when it came to Uber's work product, Plaintiffs demanded redacted documents, rather than suggesting that Uber could simply withhold documents that contained both business-related assessments and attorney work product.

### c. The Subpoenas Were Timely Served.

Finally, the subpoenas were timely. Judge Breyer's orders required that "corporate discovery" for the bellwether cases be "substantially complete[d] by June 16, 2025" (ECF 1950,

KIRKLAND & ELLIS LLP

July 21, 2025
Page 5

at 3). This is not corporate discovery. In any event, Defendants provided a notice of intent to serve subpoenas on June 13, 2025—i.e., before that date. While Plaintiffs complain that their compliance with the subpoena would need to occur after the substantial completion deadline, they have provided no indication that production will be a lengthy or arduous process.

            Respectfully submitted,

DATED:  July 21, 2025

          By: */s/ Laura Vartain*
            LAURA VARTAIN
            **KIRKLAND & ELLIS LLP**
            LAURA VARTAIN
            Laura.vartain@kirkland.com
            ALLISON M. BROWN (*pro hac vice*)
            Alli.brown@kirkland.com
            JESSICA DAVIDSON (*pro hac vice*)
            Jessica.davidson@kirkland.com

            CHRISTOPHER C. COTTON (*pro hac vice*)
            **SHOOK, HARDY & BACON L.L.P.**
            2555 Grand Blvd.
            Kansas City, Missouri 64108
            Telephone: (816) 474-6550
            ccotton@shb.com

            **O'MELVENY AND MYERS LLP**
            SABRINA H. STRONG
            sstrong@omm.com
            JONATHAN SCHNELLER
            jschneller@omm.com

            **SHOOK, HARDY & BACON L.L.P.**
            PATRICK OOT (*pro hac vice*)
            ALYCIA A. DEGEN (SBN 211350)
            MICHAEL B. SHORTNACY (SBN 277035)

            *Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*