# EXHIBIT 1

```
1                  UNITED STATES DISTRICT COURT

2              FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                        OAKLAND DIVISION

4
                                    CASE NO.  MD-22-3047 YGR
5       IN RE: SOCIAL MEDIA ADOLESCENT
        ADDICTION/PERSONAL INJURY         OAKLAND, CALIFORNIA
6       PRODUCTS LIABILITY LITIGATION
                                          NOVEMBER 9, 2022
7       THIS DOCUMENT RELATES: ALL
        CASES                             PAGES 1 - 135
8

9                     TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS
10                  UNITED STATES DISTRICT JUDGE

11      A-P-P-E-A-R-A-N-C-E-S

12      FOR THE PLAINTIFFS:   DIANDRA S. DEBROSSE ZIMMERMANN
                              DICELLO LEVITT GUTZLER LLC
13                            BY:  DIANDRA S. DEBROSSE ZIMMERMANN
                              420 20TH STREET, SUITE 255
14                            BIRMINGHAM, ALABAMA 35203

15                            LIEFF CABRASER HEIMANN AND BERNSTEIN
                              BY:  LEXI J. HAZAM
16                            275 BATTERY STREET, 29TH FLOOR
                              SAN FRANCISCO, CALIFORNIA 94111
17
                              BEASLEY ALLEN
18                            BY:  JOSEPH G. VANZANDT
                              234 COMMERCE STREET
19                            MONTGOMERY, ALABAMA 36103

20                            MORGAN & MORGAN
                              BY:  EMILY C. JEFFCOTT
21                            220 W. GARDEN STREET, 9TH FLOOR
                              PENSACOLA, FLORIDA 32502
22

23             (APPEARANCES CONTINUED ON THE NEXT PAGE.)

24      OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, RMR, CRR
                                   CERTIFICATE NUMBER 8074
25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
        TRANSCRIPT PRODUCED WITH COMPUTER.
```

```
 1   A P P E A R A N C E S: (CONT'D)

 2       FOR THE PLAINTIFFS:          MORGAN & MORGAN
                                      BY:  CHRISTOPHER SEEGER
 3                                    220 W. GARDEN STREET, 9TH FLOOR
                                      PENSACOLA, FLORIDA 32502
 4
                                      ANDRUS ANDERSON LLP
 5                                    BY:  JENNIE ANDERSON
                                      155 MONTGOMERY STREET, SUITE 900
 6                                    SAN FRANCISCO, CALIFORNIA 94104

 7                                    SIMMONS HANLY CONROY
                                      BY:  JAYNE CONROY
 8                                    112 MADISON AVENUE, 7TH FLOOR
                                      NEW YORK, NEW YORK 10016
 9
                                      SOCIAL MEDIA VICTIMS LAW CENTER
10                                    PLLC
                                      BY:  MATTHEW P. BERGMAN
11                                    821 2ND AVENUE, SUITE 2100
                                      SEATTLE, WASHINGTON 98104
12
                                      WAGSTAFF & CARTMELL LLP
13                                    BY:  THOMAS P. CARTMELL
                                      4740 GRAND AVENUE, SUITE 300
14                                    KANSAS CITY, MISSOURI 64112

15                                    GOZA HONNOLD TRIAL LAWYERS
                                      BY:  KIRK J. GOZA
16                                    9500 NALL AVENUE, SUITE 400
                                      OVERLAND PARK, KANSAS 66207
17
                                      WATTS GUERRA LLP
18                                    BY:  PAIGE N. BOLDT
                                      70 STONY POINT ROAD, SUITE A
19                                    SANTA ROSA, CALIFORNIA 95401

20                                    MARSH LAW FIRM PLLC
                                      BY:  JAMES R. MARSH
21                                    31 HUDSON YARDS, 11TH FLOOR
                                      NEW YORK, NEW YORK 10001
22
                                      AYLSTOCK WITKIN KREIS &
23                                    OVERHOLTZ, PLLC
                                      BY:  SIN-TING MARY LIU
24                                    17 EAST MAIN STREET, SUITE 200
                                      PENSACOLA, FLORIDA 32502
25
                  (APPEARANCES CONTINUED ON THE NEXT PAGE.)
```

```
 1      A P P E A R A N C E S: (CONT'D)

 2

 3      FOR THE PLAINTIFFS:         HACH ROSE SCHIRRIPA & CHEVERIE
                                    BY:  HILLARY M. NAPPI
 4                                  112 MADISON AVENUE
                                    NEW YORK, NEW YORK 10016
 5
                                    RON AUSTIN LAW
 6                                  BY:  RON A. AUSTIN
                                    400 MANHATTAN BOULEVARD
 7                                  HARVEY, LOUISIANA 70058

 8                                  THE CARLSON LAW FIRM, P.C.
                                    BY:  RUTH THI RIZKALLA
 9                                  1500 ROSECRANS AVENUE, SUITE 500
                                    MANHATTAN BEACH, CALIFORNIA 90266
10
                                    BARON BUDD, P.C.
11                                  BY:  ROLAND K. TELLIS
                                    15910 VENTURA BOULEVARD
12                                  ENCINO PLAZA, SUITE 1600
                                    ENCINO, CALIFORNIA 91436
13
                                    GIBBS LAW GROUP LLP
14                                  BY:  ANDRE M. MURA
                                    1111 BROADWAY, SUITE 2100
15                                  OAKLAND, CALIFORNIA 94607

16                                  LEVIN PAPANTONIO RAFFERTY
                                    BY:  EMMIE PAULOS
17                                  316 SOUTH BAYLEN STREET
                                    SUITE 600
18                                  PENSACOLA, FLORIDA 32502

19                                  WALSH LAW PLLC
                                    BY:  ALEXANDRA M. WALSH
20                                  1050 CONNECTICUT AVENUE, NW
                                    SUITE 500
21                                  WASHINGTON, DC 20036

22                                  WEITZ AND LUXENBERG
                                    BY:  JAMES BILSBORROW
23                                  700 BROADWAY
                                    NEW YORK, NEW YORK 10003
24

25             (APPEARANCES CONTINUED ON THE NEXT PAGE.)
```

```
 1    A P P E A R A N C E S:  (CONT'D)

 2    FOR THE PLAINTIFFS:          C.A. GOLDBERG, PLLC
                                   BY:  CARRIE GOLDBERG
 3                                 16 COURT STREET, 33RD FLOOR
                                   BROOKLYN, NEW YORK 11241
 4
                                   MOTLEY RICE
 5                                 BY:  PREVIN WARREN
                                   401 9TH ST. NW, SUITE 630
 6                                 WASHINGTON, DC  20004

 7    BY ZOOM VIDEO:               LEVIN, SEDRAN AND BERGMAN LLP
                                   BY:  MICHAEL M. WEINKOWITZ
 8                                 510 WALNUT STREET, SUITE 500
                                   PHILADELPHIA, PENNSYLVANIA 19106
 9

10
      FOR DEFENDANT META PLATFORMS: COVINGTON AND BURLING LLP
11                                 BY:  PAUL W. SCHMIDT
                                        PHYLLIS A. JONES
12                                 ONE CITY CENTER
                                   850 TENTH STREET, NW
13                                 WASHINGTON, DC 20001

14                                 BY:  ASHLEY M. SIMONSEN
                                   1999 AVENUE OF THE STARS
15                                 SUITE 3500
                                   LOS ANGELES, CALIFORNIA 90067
16
      FOR SNAP, INC.:              MUNGER, TOLLES & OLSON, LLP
17                                 BY:  JONATHAN H. BLAVIN
                                   560 MISSION STREET, 27TH FLOOR
18                                 SAN FRANCISCO, CALIFORNIA
                                   94105
19
                                   BY:  LAUREN BELL
20                                 601 MASSACHUSETTS AVE NW
                                   SUITE 500 EAST
21                                 WASHINGTON, DC 20001

22    FOR TIKTOK, INC.:            FAEGRE DRINKER BIDDLE & REATH LLP
                                   BY:  ANDREA PIERSON
23                                 300 NORTH MERIDIAN STREET
                                   SUITE 2500
24                                 INDIANAPOLIS, INDIANA 46204

25            (APPEARANCES CONTINUED ON THE NEXT PAGE.)
```

```
1    A P P E A R A N C E S: (CONT'D)

2    FOR BYTEDANCE, INC., &        WILSON SONSINI GOODRICH AND
     GOOGLE:                       ROSATI, PC
3                                  BY:  LAUREN G. WHITE
                                   ONE MARKET PLAZA
4                                  SPEAR TOWER, SUITE 3300
                                   SAN FRANCISCO, CALIFORNIA 94105
5
                                   BY:  GEOFFREY DRAKE
6                                  1180 PEACHTREE STREET
                                   ATLANTA, GEORGIA 30309
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

|       |                                                                      |
|-------|----------------------------------------------------------------------|
| 1     | OAKLAND, CALIFORNIA                    NOVEMBER 9, 2022               |
| 2     |                 P R O C E E D I N G S                                |
| 3     |     (COURT CONVENED AT 9:04 A.M.)                                    |
| 4     |          THE COURT:  ALL RIGHT.  LET'S CALL THE CASE.                |
| 5     |          THE CLERK:  WE'RE CALLING MDL CASE 22-3047-YGR,             |
| 6     | IN RE SOCIAL MEDIA ADOLESCENT ADDICTION PERSONAL                     |
| 7     | INJURY/PRODUCTS LIABILITY LITIGATION.                                |
| 8     |          THE COURT:  OKAY.  EVERYBODY HAS SIGNED IN ON THE           |
| 9     | SHEETS OUTSIDE.  IF YOU HAVE NOT SIGNED IN, MR. GARCIA WILL GO       |
| 10    | AND COLLECT THOSE.  YOU NEED TO CONNECT WITH HIM AFTER THESE         |
| 11    | PROCEEDINGS AND MAKE SURE YOU'RE ON THE LIST.                        |
| 12    |     WE HAVE A LOT TO DO TODAY.                                       |
| 13    |     I'M NOT GOING TO WASTE TIME HAVING EVERYBODY STATE THEIR         |
| 14    | APPEARANCE, BUT WE WILL HAVE EVERYBODY WHEN THEY FIRST APPROACH      |
| 15    | THE COURT TO STATE THEIR APPEARANCE, AT LEAST WITH RESPECT TO        |
| 16    | THE PLAINTIFFS.                                                      |
| 17    |     WITH RESPECT TO THE DEFENDANTS, THE FIRST PART OF THIS           |
| 18    | YOU'RE GOING TO SIT AND LISTEN FOR QUITE A WHILE BECAUSE I HAVE      |
| 19    | A LOT TO TALK ABOUT WITH THE PLAINTIFFS.                             |
| 20    |     BUT WHY DON'T YOU GO AHEAD AND COME TO THE MIC AND STATE         |
| 21    | YOUR APPEARANCE.                                                     |
| 22    |     WITH RESPECT TO MASKS, MY RULE IS THAT YOU DON'T HAVE TO         |
| 23    | WEAR THEM IF YOU DON'T WANT.  YOU'RE WELCOME TO WEAR THEM IF         |
| 24    | YOU WANT.                                                            |
| 25    |     AND JUST WHEN YOU'RE AT THE MIC, IF YOU ARE WEARING ONE          |

Timestamps (left margin): 09:04AM (lines 2-10), 09:05AM (lines 11-25)

| | | |
|---|---|---|
| 09:05AM | 1 | AND I CAN'T HEAR YOU, THEN I MIGHT ASK YOU TO TAKE IT OFF. |
| 09:05AM | 2 | ALL RIGHT. SO LET ME UNDERSTAND WHO IS HERE ON THE |
| 09:05AM | 3 | DEFENSE SIDE, IF YOU'LL COME FORWARD. |
| 09:06AM | 4 | MS. JONES: GOOD MORNING, YOUR HONOR. |
| 09:06AM | 5 | PHYLLIS JONES OF COVINGTON AND BURLING ON BEHALF OF META. |
| 09:06AM | 6 | THE COURT: OKAY. HOLD ON JUST A MINUTE. |
| 09:06AM | 7 | THANK YOU. |
| 09:06AM | 8 | MS. JONES: NICE TO SEE YOU. |
| 09:06AM | 9 | THE COURT: YOU, TOO. |
| 09:06AM | 10 | MR. SCHMIDT: GOOD MORNING, YOUR HONOR. |
| 09:06AM | 11 | PAUL SCHMIDT, COVINGTON AND BURLING ON BEHALF OF META. |
| 09:06AM | 12 | THE COURT: OKAY. GOOD MORNING. |
| 09:06AM | 13 | MS. BELL: GOOD MORNING, YOUR HONOR. |
| 09:06AM | 14 | LAUREN BELL FROM MUNGER, TOLLES & OLSON ON BEHALF OF SNAP. |
| 09:06AM | 15 | THE COURT: LAURA BOWELL DID YOU SAY? |
| 09:06AM | 16 | MS. BELL: LAUREN BELL, B-E-L-L, BELL. |
| 09:06AM | 17 | THE COURT: BELL. FROM MUNGER TOLLES? |
| 09:06AM | 18 | MS. BELL: YES, YOUR HONOR. |
| 09:06AM | 19 | THE COURT: AND YOU'RE HERE -- IS MR. BLAVIN HERE? |
| 09:06AM | 20 | MR. BLAVIN: I AM, YOUR HONOR. |
| 09:07AM | 21 | THE COURT: SO YOU'RE MR. BLAVIN AND YOU'RE BELL. |
| 09:07AM | 22 | OKAY. THANK YOU. |
| 09:07AM | 23 | MS. WHITE: GOOD MORNING, YOUR HONOR. |
| 09:07AM | 24 | LAUREN WHITE FROM WILSON SONSINI ON BEHALF OF |
| 09:07AM | 25 | DEFENDANT GOOGLE. |

| | | |
|---|---|---|
| 09:07AM | 1 | THE COURT: OKAY. |
| 09:07AM | 2 | MR. DRAKE: GOOD MORNING, YOUR HONOR. |
| 09:07AM | 3 | JEFFREY DRAKE FROM KING & SPALDING ON BEHALF OF TIKTOK AND |
| 09:07AM | 4 | BYTEDANCE. |
| 09:07AM | 5 | THE COURT: OKAY. GREAT. THANK YOU. |
| 09:07AM | 6 | MR. DRAKE: GOOD MORNING. |
| 09:07AM | 7 | MS. PIERSON: GOOD MORNING, YOUR HONOR. |
| 09:07AM | 8 | ANDREA PIERSON FROM FAEGRE DRINKER ALSO ON BEHALF OF |
| 09:07AM | 9 | TIKTOK AND BYTEDANCE. |
| 09:07AM | 10 | THE COURT: OKAY. GREAT. |
| 09:07AM | 11 | IRENE, DO WE NOT HAVE REALTIME SET UP? |
| 09:08AM | 12 | OKAY. SO I HAVE YOUR AGENDA. I HAVE MY OWN. THANK YOU |
| 09:08AM | 13 | FOR SUBMITTING ALL OF THAT IN ADVANCE. |
| 09:08AM | 14 | AND WHO IS THE ASSOCIATE THAT I CAN THANK FOR THE |
| 09:08AM | 15 | SPREADSHEET ON THE DEFENSE SIDE BECAUSE I KNOW IT WASN'T A |
| 09:08AM | 16 | PARTNER? |
| 09:08AM | 17 | MS. JONES: OUR COLLEAGUE, ALICE PHILLIPS, HAS BEEN |
| 09:08AM | 18 | LEADING THE CHARGE ON THAT, YOUR HONOR, AT COVINGTON. |
| 09:08AM | 19 | THE COURT: OKAY. |
| 09:08AM | 20 | MS. JONES: WE WILL CONVEY THE COURT'S THANKS. |
| 09:08AM | 21 | THANK YOU FOR NOTING THAT. |
| 09:08AM | 22 | THE COURT: IS SHE NOT HERE? |
| 09:08AM | 23 | MS. JONES: SHE'S NOT. SHE'S ACTUALLY IN |
| 09:08AM | 24 | LOS ANGELES. |
| 09:08AM | 25 | THE COURT: OKAY. WELL, YOU SEE, THAT'S WHAT |

9

| | | |
|---|---|---|
| 09:08AM | 1 | HAPPENS IS THEY DO ALL OF THE WORK AND THEY DON'T GET TO COME. |
| 09:08AM | 2 | (LAUGHTER.) |
| 09:08AM | 3 | THE COURT:  SO, YES, PLEASE THANK HER FOR THAT. |
| 09:08AM | 4 | I KNEW THAT I WOULD NEED SOMETHING LIKE THAT AND IT |
| 09:08AM | 5 | OCCURRED TO ME I WAS SURE YOU WERE ALL DOING IT AND IT WOULD BE |
| 09:08AM | 6 | EASY FOR YOU TO SEND IT ON. |
| 09:08AM | 7 | WITH RESPECT TO COUNSEL, MR. SEEGER, IS HE HERE? |
| 09:08AM | 8 | MR. SEEGER PRESENTED TO THE JUDGES AT THE MDL CONFERENCE |
| 09:09AM | 9 | LAST WEEK.  I WAS INTERESTED, ONE, I'D LIKE TO KNOW DID THE |
| 09:09AM | 10 | PARTY HAPPEN YESTERDAY? |
| 09:09AM | 11 | MR. SEEGER:  I'M SORRY, YOUR HONOR?  MAY I APPROACH? |
| 09:09AM | 12 | THE COURT:  YOU MAY. |
| 09:09AM | 13 | MR. SEEGER:  THE PARTY, I'M SORRY? |
| 09:09AM | 14 | THE COURT:  YOU SAID AT THE MDL CONFERENCE THAT THE |
| 09:09AM | 15 | DAY BEFORE THESE FIRST APPEARANCES THAT THERE'S A PARTY. |
| 09:09AM | 16 | (LAUGHTER.) |
| 09:09AM | 17 | THE COURT:  MY LAW CLERKS WONDERED WHY WE WEREN'T |
| 09:09AM | 18 | INVITED. |
| 09:09AM | 19 | (LAUGHTER.) |
| 09:09AM | 20 | MR. SEEGER:  WELL, I PROMISE NOT TO EVER LEAVE YOU |
| 09:09AM | 21 | OUT AGAIN.  I DIDN'T GET IN UNTIL ABOUT 2:00 IN THE MORNING.  I |
| 09:09AM | 22 | HAD DELAY ISSUES, SO NO PARTY FOR ME. |
| 09:09AM | 23 | THE COURT:  NO PARTY FOR YOU.  BUT ONE DID OCCUR? |
| 09:09AM | 24 | MR. SEEGER:  I DON'T THINK SO.  THERE MIGHT HAVE |
| 09:09AM | 25 | BEEN A DINNER OR TWO, BUT GOING FORWARD WE'LL WORK WITH THE |

09:09AM 1    DEFENDANTS ON SETTING UP PARTIES.

09:09AM 2         (LAUGHTER.)

09:09AM 3         THE COURT:  THE OTHER THING, THOUGH, THAT I FOUND

09:09AM 4    INTERESTING IS THAT YOU HAVE ALL TAKEN THIS APPROACH OF GIVING

09:09AM 5    US THIS SLATE.

09:09AM 6         NOW, THE FIRST TIME I HAD AN MDL IT WAS WITHIN ABOUT A

09:09AM 7    YEAR OF BEING CONFIRMED AS A FEDERAL JUDGE.  AND WHEN I ASKED

09:10AM 8    MY COLLEAGUES, YOU KNOW, WHAT ARE YOUR THOUGHTS ON APPOINTING,

09:10AM 9    THEY SAID, OH, DON'T WORRY, EVERYBODY WILL FIGURE IT OUT AMONG

09:10AM 10   THEMSELVES AND IT'S USUALLY A GOOD SLATE.

09:10AM 11        WHEN I TALKED TO MY COLLEAGUES THIS TIME, THEY SAID, YEAH,

09:10AM 12   THEY DO IT AND NO ONE LIKES IT.

09:10AM 13        SO WE, AS JUDGES, DON'T LIKE IT, AND I'M NOT GOING TO DO

09:10AM 14   IT.  I HAVE A LOT TO TALK TO YOU ABOUT, BUT I THINK, YOU KNOW,

09:10AM 15   IF WE'RE EVER GOING TO MIX THINGS UP, WE NEED PEOPLE TO NOT

09:10AM 16   GIVE US SLATES SO MUCH.

09:10AM 17        SO YOU MAY WANT TO THINK ABOUT IT.  MAYBE I'M THE ONLY

09:10AM 18   JUDGE WHO THINKS THAT, BUT I CAN TELL YOU I WASN'T.  BUT MAYBE

09:10AM 19   SOME OTHER JUDGES LIKE IT.

09:10AM 20        SO LET'S START WITH YOU, MR. SEEGER.  WHY DON'T YOU COME

09:10AM 21   BACK TO THE MIC.

09:10AM 22        ONE OF THE THINGS THAT I'M INTERESTED IN, AND I'VE READ

09:10AM 23   ALL OF YOUR BIOGRAPHIES, I'VE READ THEM BEFORE I WENT TO THE

09:11AM 24   CONFERENCE, I READ THEM AFTER I WENT TO THE CONFERENCE.  WHEN

09:11AM 25   YOU WERE INTRODUCED AT THE CONFERENCE ITSELF, THE JUDGE WHO

```
09:11AM    1    INTRODUCED YOU SAID YOU NEED NO INTRODUCTION, AND I SAT THERE

09:11AM    2    AND I THOUGHT, WELL, I DON'T KNOW HIM.  AND I DON'T KNOW HIM

09:11AM    3    BECAUSE I HAVEN'T DONE A PRODUCTS CASE.  I'VE ONLY DONE

09:11AM    4    ANTITRUST, AIRPLANE CRASHES, AND INSURANCE, AMONG THE OTHER

09:11AM    5    THINGS THAT I DO HERE.

09:11AM    6         SO I DON'T KNOW YOU AT ALL.  I'D LIKE TO HEAR FROM YOU IN

09:11AM    7    TERMS OF -- AGAIN, I'VE ALREADY READ SO YOU DON'T HAVE TO

09:11AM    8    REPEAT WHAT IS IN YOUR FILING.  LET ME ASK ALL OF YOU TO THINK

09:11AM    9    ABOUT THE FOLLOWING:  I WOULD LIKE TO KNOW -- I THINK THAT WHAT

09:11AM   10    YOU HAVE RECOMMENDED IS PRETTY HEAVY IN TERMS OF A LEADERSHIP

09:12AM   11    STRUCTURE.  SO IF YOU WANT TO STICK WITH THAT, THEN I'D LIKE TO

09:12AM   12    UNDERSTAND BETTER YOUR JUSTIFICATION FOR STICKING WITH IT.

09:12AM   13    THAT'S ONE THING.

09:12AM   14         TWO, I'D LIKE TO UNDERSTAND HOW YOU AS A CO-LEAD, AND

09:12AM   15    FIRST I WANT TO GO THROUGH THE PEOPLE WHO HAVE ASKED TO BE

09:12AM   16    CO-LEADS, HOW YOU WOULD STRUCTURE, IF YOU WERE THE ONLY -- IF I

09:12AM   17    APPOINTED ONE, HOW WOULD YOU STRUCTURE THE PLAINTIFFS' LAW FIRM

09:12AM   18    AS YOU CLASSIFIED IT FOR THIS PARTICULAR CASE?

09:12AM   19         THE OTHER THING THAT I'M THINKING ABOUT DOING, AND WE'LL

09:12AM   20    GET TO THIS IN A WHILE, THIS IS, AS I THINK WE ALL RECOGNIZE

09:12AM   21    AND IT'S ONE OF THE REASONS THAT I TOOK IT BECAUSE, OF COURSE,

09:12AM   22    YOU ALL KNOW, WE GET NO EXTRA PAY FOR DOING ALL OF THIS EXTRA

09:12AM   23    WORK.

09:13AM   24         (LAUGHTER.)

09:13AM   25              THE COURT:  ONE, IT'S VERY IMPORTANT FOR OUR
```

09:13AM 1    CHILDREN, FOR OUR COUNTRY, BUT IT'S ALSO PRETTY NOVEL, AND

09:13AM 2    THERE IS SECTION 230 OUT THERE.

09:13AM 3       SO IT APPEARS TO ME THAT ONE OF THE WAYS THAT I HAVE

09:13AM 4    THOUGHT ABOUT MANAGING THIS IS TO DEAL UP-FRONT WITH THE MOTION

09:13AM 5    TO DISMISS WORK THAT IS GOING TO COME, TO DO THAT IN PHASES

09:13AM 6    STARTING WITH YOUR BEST CASE.

09:13AM 7       AND IF YOU SURVIVE THAT, THEN I'LL OPEN DISCOVERY, AND

09:13AM 8    WE'LL PARALLEL TRACK WITH ALL OF THE OTHER CAUSES OF ACTION

09:13AM 9    THAT MAY OR MAY NOT SEE THE LIGHT OF DAY OR MAY OR MAY NOT EVER

09:13AM 10   GET TO A JURY.

09:13AM 11      SO THAT'S WHAT I'M THINKING.

09:13AM 12      AND IN THAT REGARD IT WOULD SEEM TO ME THAT PERHAPS ONE OF

09:13AM 13   THOSE THINGS THAT I CAN DO IS CREATE A MUCH SMALLER STRUCTURE

09:14AM 14   IN THE BEGINNING AND THEN IF WE GET PAST -- IF YOU GET PAST THE

09:14AM 15   GATE AND DISCOVERY OPENS, WELL, THEN I CAN REVISIT IT AND WE

09:14AM 16   CAN EXPAND THE GROUP.

09:14AM 17      ALL RIGHT.  SO THOSE ARE SOME OF THE ISSUES THAT I'D LIKE

09:14AM 18   YOU TO TALK ABOUT, WHERE YOU SEE THIS LITIGATION GOING AND HOW

09:14AM 19   YOU THINK IT WILL SURVIVE IN LIGHT OF THE THINGS THAT THE

09:14AM 20   DEFENDANTS ARE SAYING.

09:14AM 21      ARE YOU USING LITIGATION FUNDING?

09:14AM 22      NOT EVERYBODY ADDRESSED THAT ISSUE HEAD ON, AND I WANT TO

09:14AM 23   KNOW EXPLICITLY WHETHER YOU USE IT OR INTEND TO USE IT IN THIS

09:14AM 24   CASE.

09:14AM 25      AND ALSO, YOUR THOUGHTS ON WHAT IF YOU NEVER GET DAMAGES

09:14AM 1   BUT ONLY INJUNCTIVE RELIEF?

09:14AM 2      OKAY.  LAY IT OUT THEN.

09:14AM 3        MR. SEEGER:  A LOT.  DO YOU WANT ME TO START AT THE

09:14AM 4   TOP, YOUR HONOR?

09:14AM 5        THE COURT:  OKAY.

09:14AM 6        MR. SEEGER:  OKAY.  SO I'D LIKE TO TAKE 30 SECONDS

09:14AM 7   ON THE -- WHAT WE -- THE MESSAGE THAT I THINK WE WERE TRYING TO

09:14AM 8   CONVEY BY SUBMITTING EXHIBITS TO OUR APPLICATION THAT ARE

09:15AM 9   IDENTICAL.  IT WAS OBVIOUSLY SUGGESTIVE OF A SLATE.  I DON'T

09:15AM 10   THINK WE WERE REALLY ATTEMPTING TO SAY TO YOUR HONOR, "HERE IS

09:15AM 11   OUR SLATE.  COULD YOU RUBBER STAMP IT?"

09:15AM 12      THE IDEA WAS TO TRY TO SEND A MESSAGE THAT WE HAVE BEEN

09:15AM 13   WORKING TOGETHER FOR MANY MONTHS NOW.  SO WE WERE ALL SEPARATE

09:15AM 14   GROUPS AT ONE POINT THAT KIND OF ORGANICALLY CAME TOGETHER, AND

09:15AM 15   THE GROUP HAS BEEN WORKING VERY WELL TOGETHER.  AND EVERY NAME

09:15AM 16   THAT WE HAVE -- EVERY PERSON THAT HAS SUPPORTED US AND THAT WE

09:15AM 17   HAVE SUPPORTED THAT JUST -- IT JUST, IT JUST TURNED OUT THAT,

09:15AM 18   YOU KNOW, THERE WAS A LOT OF CONSISTENCY.

09:15AM 19        THE COURT:  WELL, THERE WERE A COUPLE OF PEOPLE WHO

09:15AM 20   WERE NOT.

09:15AM 21        MR. SEEGER:  YEAH, THERE WERE A COUPLE, RIGHT.

09:15AM 22        THE COURT:  AND IS THAT BECAUSE YOU DIDN'T KNOW

09:15AM 23   THEM, BECAUSE YOU WEREN'T WORKING WITH THEM, OR BECAUSE YOU

09:15AM 24   DON'T LIKE THEM?

09:15AM 25        MR. SEEGER:  NO.  I LIKE EVERYBODY.  I CAN SAY FOR

09:15AM 1     MYSELF IT WOULD BE BECAUSE I DIDN'T KNOW THEM AND I HADN'T

09:15AM 2     WORKED DIRECTLY WITH THEM IN THIS CASE.  I MAY KNOW THEM FROM

09:15AM 3     OTHER CASES, BUT ON THIS ONE THAT WOULD BE IT.

09:15AM 4         SO, YEAH, TO THE EXTENT THAT WE LOOK LIKE WE WERE TRYING

09:16AM 5     TO PUT A SLATE IN FRONT YOU, WE WEREN'T REALLY NECESSARILY

09:16AM 6     TRYING TO DO IT.  WE KNEW THAT YOUR ORDERS SUGGESTED YOU WANTED

09:16AM 7     INDIVIDUAL APPLICATIONS.  WE WERE JUST TRYING TO SHOW YOU THAT

09:16AM 8     WE HAD BEEN WORKING VERY COHESIVELY TOGETHER.

09:16AM 9         THE STRUCTURE.  SO I THINK ON YOUR SECOND POINT THAT YOU

09:16AM 10     RAISED, YOU'RE ASKING, SO IF YOU APPOINT FEWER CO-LEADS OR EVEN

09:16AM 11     A SMALLER COMMITTEE, HOW WOULD YOU GO ABOUT ORGANIZING THE

09:16AM 12     CASE?

09:16AM 13         THE COURT:  IF I APPOINTED ONE -- IF I APPOINTED

09:16AM 14     YOU, HOW WOULD YOU STRUCTURE IT?

09:16AM 15         MR. SEEGER:  I OBVIOUSLY WOULD NOT BE ABLE TO DO THE

09:16AM 16     CASE ALONE.  AND EVERY PERSON ON THAT LIST THAT I HAVE BEEN

09:16AM 17     WORKING WITH FOR THE PAST SEVERAL MONTHS, INCLUDING PEOPLE FROM

09:16AM 18     MY FIRM, OBVIOUSLY IT'S NOT JUST ME, I HAVE TREMENDOUS SUPPORT

09:16AM 19     AT MY FIRM AND THERE ARE MANY PEOPLE WORKING ON THIS CASE, IT

09:16AM 20     WOULD PROBABLY LOOK LIKE -- IT WOULDN'T PROBABLY, IT WOULD LOOK

09:16AM 21     A LOT LIKE EXHIBIT A.

09:16AM 22         THE COURT:  I'M NOT -- EXHIBIT A TELLS ME NOTHING

09:16AM 23     OTHER THAN PEOPLE.

09:16AM 24         MR. SEEGER:  YES.

09:16AM 25         THE COURT:  I'M ASKING ABOUT A LITTLE BIT MORE THAN

```
09:16AM   1    THAT.

09:16AM   2              MR. SEEGER:  SO WHAT I WOULD -- HERE ARE MY THOUGHTS

09:16AM   3    ON IT, AND THIS IS VERY SIMILAR TO THE JUDGE WHO INTRODUCED ME

09:17AM   4    AT THE CONFERENCE.  WE HAD A CASE THAT WAS SIMILAR IN THE SENSE

09:17AM   5    THAT WE HAD A LOT OF DEFENDANTS.  AND IT WAS ONE OF THE

09:17AM   6    QUESTIONS THAT JUDGE KENNELLY ASKED US IN THE TRT, WHY DO I

09:17AM   7    NEED SO MANY LAWYERS?  WHY DO YOU HAVE SO MANY?  AND THE REASON

09:17AM   8    WHY WAS BECAUSE WE HAD SO MANY DEFENDANTS.  AND WHAT WE TEND TO

09:17AM   9    DO IN ORGANIZING THE CASES IS TURN PEOPLE INTO SPECIALISTS AS

09:17AM   10   TO CERTAIN DEFENDANTS.

09:17AM   11        BY DOING THAT, WHEN WE REPORT TO EACH OTHER AND WE HAVE

09:17AM   12   OUR WEEKLY DISCOVERY CALLS, LEADERSHIP CALLS, SCIENCE CALLS,

09:17AM   13   THERE'S A LOT OF CROSS-CHECKING AND OVERLAP.  EVERYBODY GETS TO

09:17AM   14   LEARN THE CASE FROM PEOPLE WHO ARE REALLY FOCUSSED ON IT.

09:17AM   15        WE THINK THAT JUST TENDS TO BE THE MOST EFFICIENT WAY TO

09:17AM   16   DO IT.

09:17AM   17        SO, FOR EXAMPLE, IF THERE WAS A PARTICULAR MOTION DEALING

09:17AM   18   WITH SNAPCHAT, YOU WOULD LIKELY HAVE THE LAWYER WHO IS MOST

09:17AM   19   FAMILIAR WITH THAT ISSUE AND THE LEGAL ISSUES AND THE FACTS

09:17AM   20   ARGUING IN FRONT OF YOU ON THAT.  AND THAT'S THE WAY THAT WE

09:17AM   21   WOULD DELEGATE.

09:17AM   22        NOW, THAT MAY NOT HAPPEN IN EVERY INSTANCE, BUT THAT'S

09:17AM   23   KIND OF THE WAY THAT I SEE THE CASE BEING ORGANIZED.

09:17AM   24        IF IT WERE ONE DEFENDANT, IT WOULD -- IT COULD POTENTIALLY

09:18AM   25   BE VERY DIFFERENT.  BUT IN A CASE LIKE THIS WHERE THE RESOURCES
```

| | | |
|---|---|---|
| 09:18AM | 1 | ARE GOING TO BE REQUIRED OF THE FIRMS THAT ARE HERE, NOT JUST |
| 09:18AM | 2 | THE BODIES BUT ALSO THE FINANCIAL RESOURCES, AND IT'S LIKELY TO |
| 09:18AM | 3 | BE A VERY EXPENSIVE CASE, AS THESE MDL'S TEND TO BE. |
| 09:18AM | 4 | SO WE WOULD NEED TO RECRUIT PEOPLE WHO WOULD HELP CARRY |
| 09:18AM | 5 | THE LOAD ON ALL OF THOSE ISSUES. |
| 09:18AM | 6 | ON THE -- I'LL GO BACK TO ANY ISSUE YOU WANT, YOUR HONOR. |
| 09:18AM | 7 | I JUST WANT TO HIT ALL OF THESE. |
| 09:18AM | 8 | ON THE MOTION TO DISMISS, ON YOUR POINT ABOUT THAT, THE |
| 09:18AM | 9 | ONLY THING THAT IS IMPORTANT TO US IS THAT WE HAVE AN |
| 09:18AM | 10 | OPPORTUNITY TO MEET AND CONFER WITH THE DEFENDANTS ON THE IDEA |
| 09:18AM | 11 | OF A MASTER COMPLAINT BECAUSE OTHERWISE WHAT WILL HAPPEN, YES, |
| 09:18AM | 12 | THEY WILL -- |
| 09:18AM | 13 | THE COURT: I'M GOING TO ORDER A MASTER COMPLAINT. |
| 09:18AM | 14 | MR. SEEGER: I'M SORRY, YOUR HONOR? |
| 09:18AM | 15 | THE COURT: I'M GOING TO ORDER A MASTER COMPLAINT. |
| 09:18AM | 16 | WE'RE NOT GOING TO HAVE A LOT OF DEBATE ABOUT THAT. |
| 09:18AM | 17 | MR. SEEGER: OKAY, GOOD. WELL, THAT'S GOING TO BE |
| 09:18AM | 18 | VERY HELPFUL. |
| 09:18AM | 19 | THE COURT: AND I HAD SOME QUESTIONS ABOUT WHAT THAT |
| 09:18AM | 20 | WILL LOOK LIKE, BUT ONE WILL BE ORDERED. |
| 09:18AM | 21 | MR. SEEGER: RIGHT. AND IT WILL BE VERY HELPFUL |
| 09:18AM | 22 | BECAUSE I THINK THAT WHAT YOU'LL WIND UP WITH THEN IS A LIST OF |
| 09:19AM | 23 | THE CLAIMS THAT THE PLAINTIFFS REALLY WANT TO PURSUE. RIGHT |
| 09:19AM | 24 | NOW THERE ARE A LOT OF COMPLAINTS OUT THERE. SOME OF THOSE |
| 09:19AM | 25 | CLAIMS MAY GO AWAY JUST THROUGH THE PROCESS. |

09:19AM 1       THE COURT:  WELL, THERE'S SOME OF THESE WITH OVER 20

09:19AM 2  CAUSES OF ACTION.

09:19AM 3       MR. SEEGER:  YES, EXACTLY.

09:19AM 4     WE WOULD LIKE TO PARE THAT DOWN.  WE WOULD LIKE TO BOIL IT

09:19AM 5  DOWN.  I THINK WE CAN DO THAT IN THE PROCESS OF CREATING A

09:19AM 6  MASTER COMPLAINT.  LIKELY YOU WOULD WANT A MASTER ANSWER.

09:19AM 7     IF PEOPLE WANT TO DEVIATE FROM THE MASTER COMPLAINT, YOU

09:19AM 8  CAN CREATE A SHORT FORM COMPLAINT WITH ALMOST CHECK THE BOX,

09:19AM 9  YOU KNOW, SETUP, WHICH WE HAVE DONE IN PAST CASES, THAT WILL

09:19AM 10  SIMPLIFY THAT PROCESS.  I THINK IT WILL SIMPLIFY THEIR MOTION

09:19AM 11  TO DISMISS AND OUR OPPOSITION TO IT AND THE COURT'S DECISIONS.

09:19AM 12     ON LITIGATION FUNDING, I CAN REPRESENT TO YOU WHY IT

09:19AM 13  DOESN'T HAPPEN WITH LITIGATION FUNDING.

09:19AM 14     I'M SORRY, YOUR HONOR.  I MIGHT HAVE MISSED ONE OF YOUR

09:19AM 15  QUESTIONS.  I THINK YOU WERE ASKING ABOUT --

09:19AM 16       THE COURT:  -- RELIEF.

09:19AM 17       MR. SEEGER:  OH, THE RELIEF.

09:19AM 18       THE COURT:  I WANT TO UNDERSTAND HOW YOU THINK YOU

09:20AM 19  GET DAMAGES FOR THESE INDIVIDUALS IN THIS KIND OF A CASE.

09:20AM 20       MR. SEEGER:  IF WE WERE TO PREVAIL ON THE PRODUCT

09:20AM 21  LIABILITY CLAIMS AND LET'S SAY -- I'LL JUST SAY -- I'LL TAKE A

09:20AM 22  HYPOTHETICAL CASE OF A TEENAGE SUICIDE, THERE WOULD BE -- THERE

09:20AM 23  WOULD BE DAMAGES AWARDED ON THE PRODUCT LIABILITY CLAIMS.  WE

09:20AM 24  OBVIOUSLY WANT THEM TO CHANGE THEIR PRACTICES, THAT'S A BIG

09:20AM 25  PART OF THIS AS WELL.

| | | |
|---|---|---|
| 09:20AM | 1 | THE COURT: THE WAY THE COMPLAINTS ARE CURRENTLY |
| 09:20AM | 2 | STRUCTURED, THIS COULD IMPLICATE EVERY SINGLE PERSON. I DON'T |
| 09:20AM | 3 | UNDERSTAND HOW THAT IS DOABLE. |
| 09:20AM | 4 | MR. SEEGER: UNDERSTOOD, YOUR HONOR. |
| 09:20AM | 5 | I THINK THAT ONCE A COMMITTEE IS FORMED AND WE BEGIN TO |
| 09:20AM | 6 | WORK ON SOME OF THESE PROJECTS, I THINK THAT WE WOULD BE ABLE |
| 09:20AM | 7 | TO REPORT ON A VERY CONSISTENT BASIS TO YOU THAT WE WOULD |
| 09:20AM | 8 | PROBABLY BE ABLE TO NARROW THIS CASE DOWN A LITTLE BIT MORE |
| 09:21AM | 9 | THAN IT APPEARS TO BE RIGHT NOW. |
| 09:21AM | 10 | I DON'T WANT TO GET OUT AHEAD OF MY SKIS, AND I DON'T WANT |
| 09:21AM | 11 | TO MAKE REPRESENTATIONS FOR PEOPLE SITTING IN THE COURTROOM |
| 09:21AM | 12 | THAT MAY DISAGREE WITH ME. |
| 09:21AM | 13 | THE COURT: IF THEY DISAGREE WITH YOU, I WANT TO |
| 09:21AM | 14 | HEAR IT. THAT'S WHY I'M ASKING YOU THIS QUESTION. YOU'RE |
| 09:21AM | 15 | UNFORTUNATELY THE FIRST ONE, BUT YOU GOT TO PRESENT TO ALL OF |
| 09:21AM | 16 | THE JUDGES, SO I FIGURED THAT WORKS. |
| 09:21AM | 17 | MR. SEEGER: I WAS ASKED. |
| 09:21AM | 18 | THE COURT: YOU COULD HAVE DECLINED. THAT'S OKAY. |
| 09:21AM | 19 | IT'S NOT BAD. IT'S JUST THAT'S WHY YOU'RE FIRST. AND THEY'RE |
| 09:21AM | 20 | THINKING ABOUT IT WHILE YOU'RE UP HERE. |
| 09:21AM | 21 | MR. SEEGER: YES, YES, I KNOW. I WISH I WAS THEM. |
| 09:21AM | 22 | (LAUGHTER.) |
| 09:21AM | 23 | THE COURT: IT'S OKAY. THAT'S WHY, YOU KNOW, I'M |
| 09:21AM | 24 | THINKING ABOUT ALL OF YOU, AND THAT'S WHY I WOULD LIKE YOUR |
| 09:21AM | 25 | THOUGHTS, AND THAT'S WHY I'M ASKING THESE QUESTIONS. |

```
09:21AM   1              MR. SEEGER:  SO I WOULD JUST SAY ON THE LAST POINT,
09:21AM   2    YOUR HONOR, YOU KNOW, WE HAD BEGUN TO DISCUSS SOME OF THESE
09:21AM   3    THINGS INFORMALLY WHEN WE WERE WORKING SORT OF LOOSELY
09:21AM   4    TOGETHER.  THAT IS GOING TO INTENSIFY GOING FORWARD NO MATTER
09:22AM   5    WHO YOU SELECT, AND I DO THINK THAT THE LAST ISSUE THAT YOU
09:22AM   6    RAISED ABOUT RELIEF IS GOING TO BE A VERY BIG ISSUE FOR US TO
09:22AM   7    DISCUSS AND DECIDE ON.
09:22AM   8         IT WILL -- ULTIMATELY THOSE DECISIONS WILL GET BUILT INTO
09:22AM   9    THE MASTER COMPLAINT OBVIOUSLY, AND THAT'S WHY -- AND YOU'VE
09:22AM  10    ALREADY ORDERED THAT'S GOING TO HAPPEN, AND THAT'S WHY IT'S
09:22AM  11    SUCH AN IMPORTANT DOCUMENT FOR THIS CASE.
09:22AM  12              THE COURT:  OKAY.  ANYTHING ELSE YOU WANT ME TO
09:22AM  13    CONSIDER?
09:22AM  14              MR. SEEGER:  NO.  AND I'M GOING TO BE HERE THE WHOLE
09:22AM  15    TIME IF YOU THINK OF ANYTHING YOU WANT TO ASK ME, YOUR HONOR.
09:22AM  16    OBVIOUSLY, I'M GOING TO --
09:22AM  17              THE COURT:  SO THIS IS THE OTHER THING I'M GOING TO
09:22AM  18    HAVE YOU DO.
09:22AM  19         MR. GARCIA -- YOU'RE GOING TO COME ON OVER TO THIS PODIUM.
09:22AM  20              MR. SEEGER:  I AM?
09:22AM  21              THE COURT:  YES, GO ON OVER TO THAT PODIUM.
09:22AM  22    MR. GARCIA IS GOING TO HAND YOU A PIECE OF PAPER.
09:22AM  23              MR. SEEGER:  OKAY.
09:22AM  24              THE COURT:  THIS IS A CLOSED BALLOT, STAND RIGHT
09:22AM  25    THERE, DON'T LEAVE.  I WANT YOU TO FILL THAT FORM OUT AND HAND
```

|        |    |                                                           |
|--------|----|-----------------------------------------------------------|
| 09:22AM | 1  | IT BACK TO HIM.                                           |
| 09:22AM | 2  |     MR. SEEGER:  OKAY.               |
| 09:22AM | 3  |     THE COURT:  AND WHILE HE'S DOING THAT, LET'S HAVE |
| 09:22AM | 4  | MS. HAZAM UP NEXT.                                        |
| 09:22AM | 5  |     MS. HAZAM:  GOOD MORNING, YOUR HONOR. |
| 09:23AM | 6  | LEXI HAZAM OF LIEFF CABRASER.                             |
| 09:23AM | 7  |     THE COURT:  GOOD MORNING.  SAME QUESTIONS. |
| 09:23AM | 8  |     MS. HAZAM:  YES, YOUR HONOR.     |
| 09:23AM | 9  | FIRST, ADDRESSING YOUR QUESTION ABOUT LEADERSHIP          |
| 09:23AM | 10 | STRUCTURE, I WOULD SAY THAT GIVEN THE GROUNDBREAKING NATURE OF |
| 09:23AM | 11 | THIS MDL, AS YOUR HONOR HAS NOTED, AND ITS BROAD SCOPE, IT WILL |
| 09:23AM | 12 | ULTIMATELY CALL FOR ROBUST LEADERSHIP WITH DIVERSE SKILLS AND |
| 09:23AM | 13 | FORMIDABLE RESOURCES, AND THAT'S PARTICULARLY THE CASE GIVEN |
| 09:23AM | 14 | THE NUMBER OF DEFENDANTS AND THE VARIETY OF CLAIMS AND INJURIES |
| 09:23AM | 15 | AT ISSUE.                                                 |
| 09:23AM | 16 | YOUR HONOR HAS POSED THE QUESTION OF WHETHER SUCH A LARGER |
| 09:23AM | 17 | STRUCTURE IS NECESSARY IMMEDIATELY, PARTICULARLY IF WE WERE TO |
| 09:23AM | 18 | PROCEED TO MOTIONS.  A FEW COMMENTS ON THAT.              |
| 09:23AM | 19 | FIRST OF ALL, I DO BELIEVE THAT THERE ARE ASPECTS OF WHAT |
| 09:23AM | 20 | YOU MIGHT CALL DISCOVERY OR MIGHT MORE FITTINGLY CALL FIRST DAY |
| 09:23AM | 21 | ORDERS THAT DO REQUIRE ATTENTION IMMEDIATELY EVEN IF WE WERE TO |
| 09:23AM | 22 | PROCEED QUICKLY TO MOTION PRACTICE, AND THOSE HAVE TO DO WITH |
| 09:23AM | 23 | MATTERS OF PRESERVATION OF ESI IN PARTICULAR, WHICH WILL BE |
| 09:24AM | 24 | QUITE COMPLEX AND QUITE BROAD IN SCOPE POTENTIALLY IN THIS |
| 09:24AM | 25 | LITIGATION AND CANNOT WAIT.                               |

09:24AM 1    WE DON'T WANT TO END UP HAVING TO LITIGATE PROBLEMS WITH

09:24AM 2 THAT AFTER THE FACT.  WE WANT TO SET IT UP PROPERLY FROM THE

09:24AM 3 OUTSET, AND I THINK OTHER FIRST DAY ORDERS LIKE PROTECTIVE

09:24AM 4 ORDERS WOULD ALSO BE APPROPRIATE HERE.

09:24AM 5    SO I DO THINK THAT THERE NEEDS TO BE A TEAM TASKED WITH

09:24AM 6 TAKING THOSE CHALLENGES ON EARLY IN THIS LITIGATION.

09:24AM 7    I ALSO THINK THAT THERE ARE CONSIDERATIONS OF TIMING WITH

09:24AM 8 REGARDS TO MOTIONS TO DISMISS THAT THE COURT SHOULD TAKE INTO

09:24AM 9 ACCOUNT INCLUDING THE PENDENCY OF THE GONZALEZ CASE BEFORE THE

09:24AM 10 UNITED STATES SUPREME COURT WHICH REACHES ISSUES OF THE SCOPE

09:24AM 11 OF 230 MAY ALSO HAVE A NEXUS TO QUESTIONS IN THE

09:24AM 12 FIRST AMENDMENT.  THESE ARE SOME OF THE ISSUES THAT THE

09:24AM 13 DEFENDANTS HAVE ARGUED SHOULD BE DEALT WITH IMMEDIATELY IN

09:24AM 14 MOTION PRACTICE AND HAVE SAID ARE CROSS-CUTTING ISSUES.

09:25AM 15    I THINK PLAINTIFFS WOULD SUBMIT THAT THEY'RE NOT AS

09:25AM 16 CROSS-CUTTING AS DEFENDANTS BELIEVE, THAT THEY MAY VARY

09:25AM 17 SOMEWHAT WITH THE CLAIMS AND THE FACTS OF THE CASE, BUT WE

09:25AM 18 WOULD ALSO SUBMIT THAT THEY ARE LIKELY TO BE SHAVED

09:25AM 19 SIGNIFICANTLY BY THE SUPREME COURT'S DECISION SUCH THAT IF

09:25AM 20 MOTION PRACTICE DOES SUCCEED IMMEDIATELY, WHICH OF COURSE WE

09:25AM 21 ALL CAN DO AND ARE PREPARED TO DO IF THAT'S THE COURT'S

09:25AM 22 PREFERENCE, IT MAY RESULT IN AMENDMENTS TO PLEADINGS AND

09:25AM 23 BRIEFING BEING REDONE AND EVEN UNDER THE SCHEDULE THAT THE

09:25AM 24 DEFENDANTS PROPOSE, A HEARING ON THOSE MOTIONS MAY NOT OCCUR

09:25AM 25 UNTIL THE GONZALEZ DECISION HAS COME DOWN OR IS IMMINENT.

09:25AM 1       SO THAT'S AN ISSUE WITH REGARDS TO SCHEDULING.

09:25AM 2       BUT REGARDLESS, I THINK WE NEED TO WORK ON THOSE ISSUES OF

09:25AM 3   PRESERVATION AND FIRST DAY ORDERS IN THE MEANTIME.

09:25AM 4       WITH REGARDS TO HOW ONE WOULD STRUCTURE LEADERSHIP IN THIS

09:25AM 5   CASE, I THINK THERE'S A QUESTION OF WHETHER YOU HAVE TRACKING

09:25AM 6   FROM THE GET-GO AT THE SORT OF TOP LEVEL.  DO YOU TRACK INTO

09:26AM 7   DEFENDANTS' AND/OR INJURIES?

09:26AM 8       MY OWN PREFERENCE AND RECOMMENDATION WOULD BE TO FIRST

09:26AM 9   TRACK INTO COMMITTEES THAT DEAL WITH SUBJECT AREAS OF THE CASE

09:26AM 10  AND PHASES OF THE CASE LIKE DISCOVERY, PLEADINGS, LAW AND

09:26AM 11  BRIEFING, SETTLEMENT.  BUT WITHIN THOSE KINDS OF COMMITTEES, I

09:26AM 12  THINK YOU ABSOLUTELY WILL NEED PEOPLE WHO ARE TASKED WITH

09:26AM 13  PARTICULAR DEFENDANTS AND PARTICULAR INJURIES AS MR. SEEGER

09:26AM 14  SUGGESTED.

09:26AM 15          THE COURT:  ONE OF THE WAYS THAT AT LEAST I

09:26AM 16  UNDERSTAND IT FROM THE COMPLAINTS THAT HAVE BEEN FILED THAT

09:26AM 17  YOU'RE SEEKING TO AVOID THE IMMUNITIES THAT COME WITH

09:26AM 18  SECTION 230 IS TO MAKE ALLEGATIONS OF THE ACTUAL ALGORITHMS

09:26AM 19  THAT ARE BEING USED TO CREATE THE ADDICTIVE BEHAVIORS.

09:26AM 20      AM I WRONG?

09:26AM 21          MS. HAZAM:  NO, YOU'RE NOT, YOUR HONOR.  THERE ARE

09:26AM 22  ALLEGATIONS IN MANY COMPLAINTS OF DEFECTIVE DESIGNS OF THESE

09:27AM 23  PLATFORMS, INCLUDING THEIR ALGORITHMS.

09:27AM 24      THE ALLEGATIONS ARE NOT LIMITED TO THE ALGORITHMS.  THEY

09:27AM 25  ALSO TOUCH UPON OTHER ASPECTS OF DESIGN SUCH AS LACK OF

SUFFICIENT PARENTAL CONTROLS AND WHAT WE CALL AGE GATING,

ESSENTIALLY AGE VERIFICATION SYSTEMS, ALSO DESIGNS THAT CONNECT

CHILDREN OR MINORS TO ADULTS INCLUDING PREDATORY ADULTS THAT

MAY HAVE CONSEQUENCES WITH REGARDS TO CHILD SEXUAL ABUSE.

        THE COURT:  IT WOULD SEEM TO ME IF THAT'S THE CASE,

THEN THE ALLEGATIONS AS TO THE INDIVIDUAL DEFENDANTS HAVE TO BE

DIFFERENT.

        MS. HAZAM:  THEY ARE TO SOME EXTENT.  THERE ARE

COMMONALITIES OF DESIGN.  IN OTHER WORDS, MANY, IF NOT ALL OF

THESE PLATFORMS, ARE SUSCEPTIBLE TO PLAINTIFFS' ALLEGATIONS

REGARDING DEFECTIVELY DESIGNED ALGORITHMS.

    THE ALGORITHMS USED ARE PROPRIETARY AND PRESUMABLY

DIFFERENT IN VARIOUS WAYS, BUT THERE IS A COMMONALITY THERE

THAT WOULD, I THINK, INVOLVE CROSS-POLLINATION OF DISCOVERY

SUCH THAT YOU WANT A DISCOVERY COMMITTEE THAT HAS PEOPLE WITHIN

IT LOOKING AT EACH DEFENDANT BUT ALSO TALKING TO EACH OTHER

ABOUT THE WAYS THAT THOSE ALGORITHMS WORK ACROSS DEFENDANTS.

    ALSO --

        THE COURT:  HOW CAN WE DO THAT WITHOUT IMPACTING THE

DEFENDANTS' ABILITY TO HAVE THEIR PROPRIETARY INFORMATION NOT

SHARED ACROSS DEFENDANTS?

        MS. HAZAM:  IT'S A VERY GOOD QUESTION, YOUR HONOR,

AND I THINK IT GOES TO THOSE FIRST DAY ORDERS.

    IN THE FIRST PLACE, WE HAVE TO TALK ABOUT PROTECTIVE

ORDERS NOT ONLY IN THE TRADITIONAL SENSE OF IF YOU HAD A

09:28AM 1    DEFENDANT -- ONE DEFENDANT IN YOUR CASE AND YOU WANTED TO

09:28AM 2    PROTECT ITS TRADE SECRETS FROM PUBLICATION TO THE WIDER PUBLIC

09:28AM 3    AND THE SAME FOR YOUR CLIENT SENSITIVE INFORMATION, THERE MAY

09:28AM 4    BE CONCERNS BETWEEN DEFENDANTS IN THIS CASE AS WELL, AND I

09:28AM 5    THINK THOSE SHOULD ALSO BE DEALT WITH UP-FRONT IN DISCUSSIONS

09:28AM 6    OF PROTECTIVE ORDERS.

09:29AM 7         THE COURT:  HOW MUCH -- TO WHAT EXTENT DO YOU HAVE

09:29AM 8    WHISTLEBLOWER INFORMATION THAT HAS GIVEN YOU MORE INSIGHTS

09:29AM 9    ABOUT ONE DEFENDANT VERSUS ANOTHER?

09:29AM 10        MS. HAZAM:  I THINK THAT WE DO HAVE MORE INSIGHT

09:29AM 11   THROUGH WHISTLEBLOWERS FOR SOME OF DEFENDANTS, PARTICULARLY

09:29AM 12   META WHICH ALSO OWNS INSTAGRAM, THROUGH FRANCES HAUGEN'S

09:29AM 13   ALLEGATIONS, AND MANY OF WHICH HAVE BEEN MADE PUBLIC, CERTAIN

09:29AM 14   DOCUMENTS HAVE BEEN MADE PUBLIC.

09:29AM 15        THERE MAY BE OTHER WHISTLEBLOWERS.  I THINK SHE IS THE

09:29AM 16   MOST PROMINENT ONE TO DATE, AND, THEREFORE, THE MOST

09:29AM 17   INFORMATION EXISTS AS TO THAT DEFENDANT.  THERE MAY BE OTHERS

09:29AM 18   AND OTHERS MAY COME FORWARD.

09:29AM 19        THE COURT:  OKAY.  OTHER THOUGHTS?

09:29AM 20        MS. HAZAM:  SURE.  YOUR HONOR, JUST TO ADDRESS THE

09:29AM 21   OTHER TWO POINTS YOU RAISED.

09:29AM 22        MY FIRM DOES NOT USE LITIGATION FUNDING IN THIS CASE OR

09:29AM 23   ANY CASE.

09:29AM 24        AND ALSO YOUR QUESTION WITH REGARDS TO DAMAGES AND

09:29AM 25   INJUNCTIVE RELIEF, I WOULD ECHO MR. SEEGER IN SAYING THAT THE

09:30AM  1  PLAINTIFFS SEEK BOTH IN THIS LITIGATION.  THERE ARE CASES

09:30AM  2  INVOLVING VERY SEVERE PHYSICAL INJURIES SUCH AS THERE ARE

09:30AM  3  EATING DISORDERS, ATTEMPTED SUICIDES THAT RESULT IN

09:30AM  4  HOSPITALIZATIONS.  THOSE ARE THE KINDS OF CLAIMS FOR WHICH

09:30AM  5  PLAINTIFFS IN MASS TORT CASES TYPICALLY SEEK COMPENSATORY

09:30AM  6  DAMAGES SO THEY ARE AT ISSUE, BUT WE LIKEWISE DO BELIEVE THAT

09:30AM  7  CHANGES IN PRACTICES WOULD BE AN APPROPRIATE TYPE OF RELIEF IN

09:30AM  8  THIS CASE AND ONE THAT WE HOPE TO WORK ON.

09:30AM  9           THE COURT:  OKAY.  THANK YOU.

09:30AM 10           MS. HAZAM:  THANK YOU, YOUR HONOR.

09:30AM 11           THE COURT:  IF YOU'LL COME OVER HERE.

09:30AM 12      MR. GARCIA WILL GIVE YOU THAT SLIP, AND HAND IT UP TO ME.

09:30AM 13      ALL RIGHT.  NEXT, MS. JEFFCOTT.

09:30AM 14        MS. JEFFCOTT:  GOOD MORNING, YOUR HONOR.

09:30AM 15      EMILY JEFFCOTT OF MORGAN & MORGAN.

09:30AM 16      TO ADDRESS YOUR QUESTIONS AND BEGINNING WITH WHY DO WE

09:30AM 17  NEED A LEADERSHIP STRUCTURE THAT IS ADMITTEDLY ON THE LARGER

09:31AM 18  SIDE?

09:31AM 19      AND I THINK STEPPING BACK AND LOOKING AT WHAT HAS BEEN

09:31AM 20  ENCOMPASSED BY THIS MDL, AT THIS POINT WE HAVE AT LEAST FIVE

09:31AM 21  PRODUCTS AT ISSUE:  FACEBOOK, INSTAGRAM, TIKTOK, SNAP, GOOGLE

09:31AM 22  AND POTENTIALLY OTHERS BASED ON HOW THE MDL HAS DESCRIBED THIS

09:31AM 23  LITIGATION.

09:31AM 24      AND EACH ONE OF THOSE PRODUCTS IMPLICATES A NUMBER OF

09:31AM 25  DEFENDANTS.

|   |   |   |
|---|---|---|
| 09:31AM | 1 | AND WE KNOW JUST BASED ON THE PLEADINGS THAT HAVE BEEN |
| 09:31AM | 2 | FILED IN THIS CASE THAT THERE ARE UNDERLYING FACTUAL |
| 09:31AM | 3 | ALLEGATIONS AND SCENARIOS THAT VARY FROM PLAINTIFF TO |
| 09:31AM | 4 | PLAINTIFF. |
| 09:31AM | 5 | AND SO BASED ON THE BREADTH AND SCOPE OF THIS LITIGATION, |
| 09:31AM | 6 | WE BELIEVE THAT A LARGER LEADERSHIP STRUCTURE IS WARRANTED. |
| 09:31AM | 7 | AND IN PARTICULAR, WHEN IT COMES TO CO-LEAD STRUCTURE, |
| 09:31AM | 8 | WHEN IT COMES TO A LITIGATION THAT IS AS BROAD AS THIS, WE KNOW |
| 09:31AM | 9 | THAT FOUR CO-LEADS WORKED.  I POINT YOUR HONOR TO THE |
| 09:32AM | 10 | JUUL LITIGATION.  THERE FOUR CO-LEADS WERE APPOINTED BY |
| 09:32AM | 11 | JUDGE ORRICK, AND IN THAT CASE THE CO-LEADS WERE ABLE TO |
| 09:32AM | 12 | MANAGEABLY BREAK DOWN THE RESPONSIBILITIES. |
| 09:32AM | 13 | THE COURT:  SO HOW WOULD YOU BREAK THEM DOWN HERE? |
| 09:32AM | 14 | MS. JEFFCOTT:  YOUR HONOR, I WOULD SUBMIT THAT |
| 09:32AM | 15 | SIMILAR TO WHAT MR. SEEGER PROPOSED TO THE COURT, THAT ONE WAY |
| 09:32AM | 16 | TO BREAK THIS DOWN IS ON A DEFENDANT-BY-DEFENDANT BASIS. |
| 09:32AM | 17 | ANOTHER WAY TO BREAK THIS DOWN IS ON THE TYPE OF CLAIM |
| 09:32AM | 18 | ALLEGED, WHETHER IT'S FOUNDED ON SEXUALLY EXPLICIT MATERIAL, |
| 09:32AM | 19 | WHETHER IT'S BASED ON A SPECIFIC DEFENDANT.  THERE ARE A NUMBER |
| 09:32AM | 20 | OF DIFFERENT WAYS THAT ONCE LEADERSHIP IS APPOINTED, THAT THE |
| 09:32AM | 21 | PARTIES COULD ASSESS WHAT IS THE BEST WAY TO BREAK UP |
| 09:32AM | 22 | LEADERSHIP? |
| 09:32AM | 23 | ANOTHER OPTION AND ONE THAT WAS PURSUED IN THE JUUL MDL IS |
| 09:32AM | 24 | BASED UPON THE SPECIFIC EXPERTISE OF THE CO-LEAD.  SOME |
| 09:33AM | 25 | CO-LEADS HAVE MORE EXPERIENCE IN THE SCIENCE AND TECHNICAL |

09:33AM 1    REALM WHILE OTHERS IN THE LAW AND BRIEFING.  I THINK THAT IS

09:33AM 2    ONE WAY THAT WE COULD ALSO DIVIDE UP RESPONSIBILITIES HERE.

09:33AM 3         NOW, YOUR HONOR, FOR YOUR SECOND POINT, YOU KNOW, WHY

09:33AM 4    NOT -- WHY START WITH FOUR CO-LEADS AS OPPOSED TO A SMALLER

09:33AM 5    LEADERSHIP STRUCTURE?

09:33AM 6         AND, YOUR HONOR, I WOULD POINT TO THE FACT THAT AS

09:33AM 7    MS. HAZAM EXPLAINED, THAT IN ADDITION TO, IF YOUR HONOR WANTS

09:33AM 8    TO PROCEED WITH MOTIONS TO DISMISS, THERE IS STILL THE

09:33AM 9    PRESERVATION WORK IN THOSE FIRST DAY GATING ORDERS THAT WILL

09:33AM 10   TAKE TIME TO PUT INTO PLACE AND ESSENTIALLY THE LEG WORK THAT

09:33AM 11   WILL BE REQUIRED NOT ONLY TO MAKE SURE THAT WE ARE PROTECTING

09:33AM 12   THE DEFENDANT BY DEFENDANT -- DEFENDANT TECHNICAL WORK PRODUCT,

09:33AM 13   BUT ALSO ENSURING THAT WE HAVE DEVELOPED THE PROTOCOLS FOR ESI

09:33AM 14   AND FOR TARP TO MAKE SURE THAT WE ARE SETTING OURSELVES UP FOR

09:33AM 15   A SECTION OF DISCOVERY.

09:34AM 16        AND THE NORTHERN DISTRICT OF CALIFORNIA ALREADY HAS GATING

09:34AM 17   ORDERS THAT WOULD HELP US FACILITATE AND GUIDE US THROUGH THAT

09:34AM 18   PROCESS, BUT THAT PROCESS IS GOING TO TAKE TIME AND A LOT OF

09:34AM 19   WORK.

09:34AM 20        FURTHERMORE, YOUR HONOR HAS ALREADY ORDERED A MASTER

09:34AM 21   COMPLAINT, AND THAT PROCESS TO DEVELOP A MASTER COMPLAINT WILL

09:34AM 22   ALSO TAKE TIME BECAUSE OF THE BREADTH OF THIS LITIGATION AND

09:34AM 23   THE NUMBER AND THE DIVERSE CLAIMS THAT HAVE BEEN KIND OF

09:34AM 24   SUBSUMED BEFORE YOUR HONOR.

09:34AM 25        NOW, YOUR NEXT POINT OF HOW WOULD YOU STRUCTURE THE

09:34AM 1    LEADERSHIP?  IN GOING BACK TO THAT FOUR CO-LEAD STRUCTURE, HOW

09:34AM 2    I WOULD ENVISION IT, YOUR HONOR, IS DIVIDING IT UP OF SPECIFIC

09:34AM 3    CO-LEADS, HAVING OVERSIGHT OVER UNDERLYING COMMITTEES.

09:34AM 4        AND I THINK THAT'S IMPORTANT TO ENSURE THAT THERE IS

09:34AM 5    EFFICIENCY AND EFFECTIVENESS WITH RESPECT TO THE COMMITTEE WORK

09:34AM 6    SO THERE'S NOT NECESSARILY DUPLICATIVE EFFORTS GOING ON ACROSS

09:34AM 7    COMMITTEES.

09:34AM 8        AND WE'VE SEEN THAT IN JUUL AND IN THE CPAP LITIGATION AND

09:34AM 9    OTHER LITIGATIONS WHERE THERE'S THIS FOUR CO-LEAD STRUCTURE

09:35AM 10   THAT ALLOWS THE CO-LEADS TO HAVE THE TIME TO BE ABLE TO PROVIDE

09:35AM 11   THAT NECESSARY OVERSIGHT ON THE COMMITTEES.

09:35AM 12       THE COURT:  SO IF YOU ALREADY ARE CO-CHAIRING ONE OF

09:35AM 13   THOSE SUBCOMMITTEES, HOW COULD YOU HAVE THE TIME TO CO-LEAD

09:35AM 14   THIS MDL?

09:35AM 15       MS. JEFFCOTT:  YOUR HONOR, RESPECTFULLY, I'M NOT

09:35AM 16   SUGGESTING THAT A CO-LEAD WOULD ALSO CO-CHAIR WITH THE THREE

09:35AM 17   BUT RATHER BE AN EFFECTIVE PARTICIPANT.

09:35AM 18       THE COURT:  SO YOU SAID THAT YOU'RE A MEMBER OF THE

09:35AM 19   JUUL SCIENCE AND EXPERTS COMMITTEE AS CO-CHAIR, THAT'S WHAT I

09:35AM 20   READ?

09:35AM 21       MS. JEFFCOTT:  YES, YOUR HONOR.  I APOLOGIZE.

09:35AM 22       THE COURT:  GIVEN THAT YOU HAVE THAT COMMITMENT

09:35AM 23   ALREADY, HOW CAN YOU BE A CO-LEAD IN THIS MDL?

09:35AM 24       MS. JEFFCOTT:  YES, YOUR HONOR.

09:35AM 25       RESPECTFULLY, THE POSITION OF THE JUUL MDL, IT'S IN A VERY

| 09:35AM | 1 | MATURE STANDPOINT. AND IN TERMS OF MY WORK ON THE SCIENCE AND |
| 09:35AM | 2 | EXPERTS COMMITTEE THERE, THAT HAS LARGELY CONCLUDED, |
| 09:35AM | 3 | YOUR HONOR. |
| 09:35AM | 4 | SO AT THIS POINT AND AT THIS TIME I AM FULLY DEVOTED TO |
| 09:36AM | 5 | THIS MATTER AND ENSURING THAT I COULD CO-LEAD OR LEAD IT FOR |
| 09:36AM | 6 | THAT MATTER IN THE WAY THAT YOUR HONOR SEES FIT. |
| 09:36AM | 7 | NOW, YOUR HONOR, I WOULD REPRESENT THAT MORGAN & MORGAN |
| 09:36AM | 8 | DOES NOT USE FUNDING LITIGATION, WE HAVEN'T, AND WE WON'T IN |
| 09:36AM | 9 | THE FUTURE. |
| 09:36AM | 10 | IN TERMS OF DAMAGES AND INJUNCTIVE RELIEF, I, I -- IN |
| 09:36AM | 11 | ADDITION TO WHAT MS. HAZAM AND MR. SEEGER SAID, I THINK A |
| 09:36AM | 12 | NATURAL POINT IS THAT YOU HAD MENTIONED THAT THIS LITIGATION |
| 09:36AM | 13 | AND THE WAY THAT THE CLAIMS ARE FRAMED HAVE THE POTENTIAL TO |
| 09:36AM | 14 | IMPLICATE BROAD SWATHS OF PEOPLE. AND I THINK THAT THE NATURAL |
| 09:36AM | 15 | PART OF THE MDL PROCESS AND THE ROLE OF THE MDL JUDGE IS BEING |
| 09:36AM | 16 | ABLE TO NARROW THOSE POINTS THROUGH MASTER COMPLAINTS, AND MORE |
| 09:36AM | 17 | IMPORTANTLY, THROUGH THE DAUBERT PROCESS AND ENSURING THAT THE |
| 09:36AM | 18 | LEADING SCIENTIFIC AND TECHNICAL EVIDENCE EXISTS TO PUT FORTH |
| 09:36AM | 19 | THE VALID CLAIMS. |
| 09:36AM | 20 | SO THAT'S A NATURAL CHECK AND BALANCE TO ENSURE THAT THE |
| 09:36AM | 21 | CLAIMS BEFORE THE COURT AND THE EVIDENCE SUPPORTS IT. |
| 09:37AM | 22 | YOUR HONOR, I'M HAPPY TO ADDRESS ANY OTHER QUESTIONS THAT |
| 09:37AM | 23 | YOU MAY HAVE. |
| 09:37AM | 24 | THE COURT: DID YOU GROW UP IN SAN ANTONIO? |
| 09:37AM | 25 | MS. JEFFCOTT: I DIDN'T. I WENT TO LAW SCHOOL IN |

| | | |
|---|---|---|
| 09:37AM | 1 | SAN ANTONIO. |
| 09:37AM | 2 | THE COURT: I SEE THAT, THAT'S WHY I ASKED. |
| 09:37AM | 3 | MS. JEFFCOTT: MY UNCLE STILL LIVES THERE. I'M |
| 09:37AM | 4 | ACTUALLY HEADED THERE TOMORROW MORNING FOR A WEDDING, FOR MY |
| 09:37AM | 5 | COUSIN'S WEDDING. |
| 09:37AM | 6 | THE COURT: I GREW UP THERE, THAT'S WHY I ASKED. |
| 09:37AM | 7 | OKAY. IF YOU'LL STAND OVER -- COME OVER HERE |
| 09:37AM | 8 | (INDICATING). |
| 09:37AM | 9 | MS. JEFFCOTT: THANK YOU, YOUR HONOR. |
| 09:37AM | 10 | THE COURT: NEXT I HAVE JOSEPH VANZANDT. |
| 09:37AM | 11 | MR. VANZANDT: GOOD MORNING, YOUR HONOR. |
| 09:37AM | 12 | JOSEPH VANZANDT FROM THE BEASLEY ALLEN LAW FIRM. |
| 09:37AM | 13 | I'M GOING TO GO THROUGH THE QUESTIONS THAT YOU'VE ASKED |
| 09:37AM | 14 | AND TRY NOT TO REPEAT EVERYTHING MY COLLEAGUES HAVE SAID. |
| 09:38AM | 15 | CERTAINLY I DO AGREE WITH A LOT OF THE POINTS THAT THEY HAVE |
| 09:38AM | 16 | MADE AND CERTAINLY WON'T WASTE THE COURT'S TIME WITH RESTATING |
| 09:38AM | 17 | A LOT OF THE SAME STUFF. |
| 09:38AM | 18 | BUT IN TERMS OF THE LEADERSHIP STRUCTURE, I DO BELIEVE |
| 09:38AM | 19 | THAT WE NEED A LARGE TEAM TO MANAGE THIS CASE REALLY FROM DAY |
| 09:38AM | 20 | ONE. THE SCOPE OF THE MDL THAT THE JPML CREATED HERE IS LARGE |
| 09:38AM | 21 | ALREADY AND THAT'S POTENTIAL TO EVEN GROW FURTHER IN THE |
| 09:38AM | 22 | FUTURE. |
| 09:38AM | 23 | THE COURT: RIGHT. BUT IF YOU THROW IT OUT ON A |
| 09:38AM | 24 | MOTION TO DISMISS, THEN WHAT? THEN IT'S GONE, RIGHT? SO WHY |
| 09:38AM | 25 | DO I NEED ALL OF THOSE PEOPLE IN THE FIRST INSTANCE? |

09:38AM 1          MR. VANZANDT:  RIGHT.  THAT'S CERTAINLY A RISK THAT

09:38AM 2 WE FACE IN ANY CASE IS THAT IT BEING DISMISSED IN MOTIONS TO

09:38AM 3 DISMISS, BUT IT'S REALLY IMPORTANT FROM DAY ONE TO HAVE A

09:38AM 4 COHESIVE TEAM WORKING TOGETHER AND PLANNING FOR THE ENTIRE

09:38AM 5 LITIGATION.

09:38AM 6          OBVIOUSLY THERE ARE GOING TO BE PEOPLE FOCUSSING ON THE

09:38AM 7 MOTION TO DISMISS ASPECT, BUT SIMULTANEOUSLY, WE NEED TO BE

09:38AM 8 WORKING ON PRESERVATION ISSUES, PLANNING FOR DISCOVERY, HAVING

09:38AM 9 A TEAM WITH AN EYE TOWARDS TRIAL.

09:38AM 10         I MEAN, FROM DAY ONE, WE WILL BE PLANNING OUT A SCOPE AND

09:38AM 11 FOR THE ENTIRE COURSE OF THIS LITIGATION, AND OBVIOUSLY WE ARE

09:38AM 12 HOPEFUL THAT WE WOULD GET PAST THE MOTION TO DISMISS STAGE, BUT

09:39AM 13 AT THAT POINT WE WANT TO BE FAR AHEAD IN TERMS OF OUR PLAN AND

09:39AM 14 OUR WORK PLAN THAT WILL CARRY THE ENTIRE COURSE OF THIS

09:39AM 15 LITIGATION.

09:39AM 16         AND IT IS IMPORTANT THAT IT BE A COHESIVE TEAM FROM DAY

09:39AM 17 ONE AS OPPOSED TO PHASING IT TO WHERE YOU MAY HAVE A TEAM THAT

09:39AM 18 GETS IN-DEPTH KNOWLEDGE DRAFTING THE PLEADINGS, OPPOSING

09:39AM 19 MOTIONS TO DISMISS, AND GETS INSTITUTIONAL KNOWLEDGE OF THE

09:39AM 20 CASE, AND THEN LATER ON BRINGING IN NEW PEOPLE WHO HAVE MISSED

09:39AM 21 MAYBE MONTHS, OR EVEN MAYBE OVER A YEAR OF INSTITUTIONAL

09:39AM 22 KNOWLEDGE ABOUT THE CASE, ABOUT THE FACTS, AND ABOUT THE LEGAL

09:39AM 23 ISSUES IN THE CASE.  SO IT IS IMPORTANT TO HAVE THAT STRUCTURE

09:39AM 24 MOVING FORWARD FROM DAY ONE.

09:39AM 25         A LARGER STRUCTURE IS ALSO IMPORTANT TO ENSURE THAT

09:39AM 1     THERE'S DIVERSITY AMONG THE LEADERSHIP TEAM WITH EXPERIENCE.

09:39AM 2          THE COURT:  HOW DIVERSE?  WHAT DIVERSITY DO YOU

09:39AM 3     BRING?

09:39AM 4          MR. VANZANDT:  MYSELF?

09:39AM 5          THE COURT:  YOU RAISED THE ISSUE SO.

09:39AM 6          MR. VANZANDT:  SURE.  YEAH.  YOUR HONOR, WHAT I'M

09:39AM 7     TALKING ABOUT IS DIVERSITY IN BACKGROUND AND EXPERIENCE.

09:39AM 8          THE COURT:  THAT'S WHAT I'M ASKING.

09:39AM 9          MR. VANZANDT:  SURE.  MY DIVERSITY WOULD INCLUDE

09:40AM 10    OBVIOUSLY HAVING WORKED PREVIOUSLY AS A DEFENSE LAWYER AND NOW

09:40AM 11    WORKING IN THE MDL SETTING FOR THE LAST SIX YEARS AND HAVING A

09:40AM 12    LOT OF EXPERIENCE IN THE MDL SETTING.

09:40AM 13         THE COURT:  OKAY.  SO EVERYBODY HAS EXPERIENCE

09:40AM 14    EXCEPT FOR I THINK TWO IN THE MDL SETTING.

09:40AM 15     SO I DON'T KNOW WHAT YOU MEAN BY THAT.

09:40AM 16         MR. VANZANDT:  RIGHT.

09:40AM 17         THE COURT:  IN TERMS OF YOUR DIVERSITY AS I

09:40AM 18    INTERVIEW EVERYBODY ON THIS SIDE HERE.

09:40AM 19         MR. VANZANDT:  RIGHT.  I THINK EVERYONE HERE,

09:40AM 20    WHETHER OR NOT THEY HAVE MDL EXPERIENCE OR NOT, HAVE DIVERSE

09:40AM 21    BACKGROUNDS AND EXPERIENCES, DIFFERENT TYPES OF CASES,

09:40AM 22    DIFFERENT TYPES OF LITIGATION, DIFFERENT EXPERTISE RELATED TO

09:40AM 23    THE SPECIFIC TYPES OF CASES.

09:40AM 24         THE COURT:  MR. VANZANDT, I UNDERSTAND IT.  I COULD

09:40AM 25    PROBABLY FIGURE IT OUT.  I'M ASKING YOU ABOUT YOU.

| | | |
|---|---|---|
| 09:40AM | 1 | MR. VANZANDT: RIGHT. OKAY. |
| 09:40AM | 2 | WELL, I WOULD SAY THEN THAT THE DIVERSE ASPECT I BRING TO |
| 09:40AM | 3 | THIS CASE IN TERMS OF THE LEGAL WORK IS PROBABLY MY WORK THAT |
| 09:40AM | 4 | I'VE DONE ON THE JUUL LITIGATION REPRESENTING THOUSANDS OF |
| 09:40AM | 5 | YOUNG INDIVIDUALS, MOSTLY ADOLESCENT PLAINTIFFS, AND HAVING |
| 09:40AM | 6 | THAT EXPERIENCE OF REPRESENTING THAT CLIENT POPULATION, THE |
| 09:41AM | 7 | ISSUES THAT ARE INVOLVED WITH CONDUCTING DISCOVERY ON YOUNG |
| 09:41AM | 8 | PEOPLE WITH VERY SENSITIVE ISSUES RELATED TO SOCIAL MEDIA, AND |
| 09:41AM | 9 | THOSE ARE ALL ISSUES THAT ARE GOING TO BE FRONT AND CENTER IN |
| 09:41AM | 10 | THIS CASE, AND SO THAT'S SOMETHING THAT I HAVE SPENT THE LAST |
| 09:41AM | 11 | THREE YEARS OF MY PROFESSIONAL LIFE DOING AND DEVOTED TO |
| 09:41AM | 12 | REPRESENTING THAT CLIENT POPULATION, AND IT'S CERTAINLY A WAY |
| 09:41AM | 13 | THAT MY BACKGROUND BRINGS DIVERSITY TO THE LEGAL EXPERIENCE OF |
| 09:41AM | 14 | THIS TEAM. |
| 09:41AM | 15 | THE COURT: ARE YOU STILL WORKING ON THAT CASE? |
| 09:41AM | 16 | MR. VANZANDT: YES, YOUR HONOR, I AM. |
| 09:41AM | 17 | THE COURT: SO HOW DO YOU HAVE TIME TO WORK ON THAT |
| 09:41AM | 18 | CASE AND THIS CASE? |
| 09:41AM | 19 | MR. VANZANDT: SURE. SO AS MS. JEFFCOTT NOTED, THAT |
| 09:41AM | 20 | CASE IS CERTAINLY VERY MATURE IN WHERE IT STANDS, BUT THE GOOD |
| 09:41AM | 21 | PART ABOUT THAT CASE, THE JUUL LITIGATION, THERE IS A LARGE |
| 09:41AM | 22 | LEADERSHIP TEAM. |
| 09:41AM | 23 | EACH COMMITTEE THAT I WORK ON HAS NOT JUST A CHAIR BUT A |
| 09:41AM | 24 | CO-CHAIR AND ALSO HAS A CO-LEAD OVERSEEING THAT COMMITTEE, SO |
| 09:41AM | 25 | IT DOES ALLOW FOR OTHER ATTORNEYS TO WORK ON OTHER PROJECTS AND |

```
09:41AM   1    HAVE THE TIME TO, IN CAPACITY, TO REALLY SHARE THE WORKLOAD
09:41AM   2    BECAUSE OVER THE COURSE OF A LITIGATION THAT COULD TAKE THREE,
09:41AM   3    FOUR, FIVE, YEARS.  THERE'S GOING TO BE TIMES WHERE CERTAIN
09:42AM   4    ATTORNEYS HAVE DIFFERENT CAPABILITIES AND AN ABILITY TO DEVOTE
09:42AM   5    TO THAT CASE CERTAINLY NOT GOING TO --
09:42AM   6            THE COURT:  AND WHAT IS THE PROCEDURAL STATUS OF
09:42AM   7    JUUL?
09:42AM   8            MR. VANZANDT:  THE PROCEDURAL STATUS?
09:42AM   9       SO AT THIS POINT WE ARE ON THE VERGE OF OUR FIRST
09:42AM  10    BELLWETHER TRIAL.
09:42AM  11            THE COURT:  AND AREN'T YOU CO-CHAIR OF THAT
09:42AM  12    COMMITTEE?
09:42AM  13            MR. VANZANDT:  I'M CO-CHAIR OF THE PERSONAL INJURY
09:42AM  14    BELLWETHER COMMITTEE.
09:42AM  15            THE COURT:  WELL, IT SEEMS LIKE EVEN THOUGH IT'S IN
09:42AM  16    AN ADVANCED STAGE, IT'S JUST GETTING TO THE POINT WHERE WHAT
09:42AM  17    YOU'RE DOING IS THE MOST IMPORTANT THING.
09:42AM  18            MR. VANZANDT:  MOST OF THE -- I'D SAY THE MOST
09:42AM  19    IMPORTANT WORK I'VE DONE HAS BEEN IN THE LAST YEAR AND A HALF
09:42AM  20    AND ACTUALLY WORKING UP BELLWETHER CASES, SELECTING THE
09:42AM  21    BELLWETHER CASES AND WORKING THROUGH MOTIONS TO DISMISS AND
09:42AM  22    SUMMARY JUDGMENT.  I CERTAINLY DO INTEND TO BE ONE OF THE
09:42AM  23    COCOUNSEL TRYING THE FIRST BELLWETHER CASE THAT IS CURRENTLY
09:42AM  24    SCHEDULED FOR JANUARY, BUT THERE'S A WHOLE SERIES OF BELLWETHER
09:42AM  25    CASES THAT WILL HAPPENING IN THAT LITIGATION AND THEY'RE ALL
```

```
09:42AM   1    NOT MY CLIENTS.  I'M NOT ON THE TRIAL TEAM FOR ALL OF THOSE
09:42AM   2    CASES.
09:42AM   3        AGAIN IT'S A VERY LARGE TEAM TO WHERE THE WORK IS DIVIDED
09:43AM   4    OUT EVENLY, AND SO THERE IS CERTAINLY ROOM TO TAKE ON OTHER
09:43AM   5    PROJECTS.
09:43AM   6        I'M CERTAINLY COMMITTED TO JUDGE ORRICK AND THE JUUL MDL,
09:43AM   7    AND I CERTAINLY DON'T INTEND TO ABANDON THAT, BUT I CERTAINLY,
09:43AM   8    IF GIVEN THE OPPORTUNITY, I WILL DO WHATEVER IT TAKES TO GIVE
09:43AM   9    THE PROFESSIONAL TIME NEEDED TO GIVE THIS MDL THE FULL
09:43AM  10    ATTENTION THAT IS NEEDED.
09:43AM  11        THE COURT:  OKAY.  STEP OVER AND SIGN THAT LITTLE
09:43AM  12    SHEET OR FILL OUT THAT LITTLE SHEET, I SHOULD SAY.
09:43AM  13        I THOUGHT THERE WERE A COUPLE OF OTHERS WHO IN THEIR
09:43AM  14    APPLICATIONS SUGGESTED THAT THEY MIGHT BE INTERESTED IN A
09:43AM  15    CO-LEAD.
09:43AM  16        DIANDRA DEBROSSE ZIMMERMANN, WOULD YOU COME FORWARD.
09:43AM  17        MS. DEBROSSE ZIMMERMANN:  YES, YOUR HONOR.
09:43AM  18        THE COURT:  AND YOU CAN ANSWER MY QUESTIONS BUT ALSO
09:43AM  19    LET ME KNOW WHAT YOUR STATUS IS GIVEN THAT I THOUGHT YOU ASKED
09:43AM  20    FOR CO-LEAD AND THEN LATER YOU HAD A CONVERSATION WITH SOMEONE
09:44AM  21    AND NOW YOU ARE NOT ASKING FOR CO-LEAD.
09:44AM  22        MS. DEBROSSE ZIMMERMANN:  YES, YOUR HONOR.  THANK
09:44AM  23    YOU FOR ALLOWING ME TO SPEAK TODAY.  IT'S AN HONOR TO BE IN
09:44AM  24    YOUR COURT.
09:44AM  25        I DID SEEK A CO-LEAD POSITION INITIALLY, AND I KNOW YOU
```

09:44AM 1   HAVE MY NAME FOR THE RECORD, DIANDRA DEBROSSE ZIMMERMANN, BUT

09:44AM 2   IF I DON'T SAY DICELLO, LEVITT & GUTZLER, MY PARTNERS ARE UPSET

09:44AM 3   SO I MAKE SURE I SAY MY FIRM NAME ON THE RECORD.

09:44AM 4       I DID SEEK THE CO-LEAD POSITION BECAUSE OF OUR FIRM'S

09:44AM 5   SPECIALTY IN A LOT OF THESE DIFFERENT AREAS.  WE HAVE WORKED

09:44AM 6   WITH MANY OF THE FIRMS IN LEADERSHIP.  WE KNOW MANY OF THEM

09:44AM 7   PERSONALLY.  WE CONSIDER THEM TO BE EXCEPTIONAL LAWYERS WHO

09:44AM 8   HAVE FOUGHT WARS AGAINST THIS COUNTRY'S BIGGEST DEFENDANTS, AND

09:44AM 9   WE KNOW THEY'RE GOING TO DO A GREAT JOB, AND I DECIDED I COULD

09:44AM 10  EQUALLY LEAD AND CONTRIBUTE WITH MY FIRM'S RESOURCES IN AN

09:44AM 11  EXECUTIVE COMMITTEE OR STEERING COMMITTEE POSITION.

09:44AM 12      SO I DON'T ALWAYS HAVE TO BE THE BOSS.  I DO LIKE BEING

09:44AM 13  THE BOSS, BUT I DON'T ALWAYS HAVE TO BE THE BOSS AND THOUGHT I

09:45AM 14  WOULD BE HONORED TO WORK WITH THEM IN A DIFFERENT CAPACITY.

09:45AM 15          THE COURT:  YOU TOO, IT SEEMED TO ME IN ANY EVENT,

09:45AM 16  YOU WERE CO-LEAD IN THE ABBOTT LABS.

09:45AM 17          MS. DEBROSSE ZIMMERMANN:  YES, YOUR HONOR.

09:45AM 18          THE COURT:  THAT'S A 2022 CASE, RIGHT?  SO IT'S JUST

09:45AM 19  STARTING.

09:45AM 20          MS. DEBROSSE ZIMMERMANN:  IT IS JUST STARTING.  I

09:45AM 21  THINK I MAY HAVE AN UNORTHODOX RESPONSE FOR YOU.  I CO-CHAIR

09:45AM 22  THE MAST TORT PRACTICE AND I DO CO-LEAD IN THAT CASE THE ABBOTT

09:45AM 23  AND GOOGLE LITIGATION.  I'M ALSO ON THE PEC OF THE PARAQUAT

09:45AM 24  MDL, BUT I DON'T LEAD THOSE CASES.

09:45AM 25          THE COURT:  PARAQUAT IS SPELLED P-A-R-A-Q-U-A-T, AND

09:45AM 1    SHEN SHE SAYS PEC WHICH IS SHORT FOR PLAINTIFFS' EXECUTIVE

09:45AM 2    COMMITTEE.

09:45AM 3              MADAM COURT REPORTER:  THANK YOU.

09:46AM 4              MS. DEBROSSE ZIMMERMANN:  YOUR HONOR, I DON'T DO IT

09:46AM 5    IN A VACUUM.  I DO TOUCH ON A LOT OF THINGS AND WORK ON A LOT

09:46AM 6    OF THINGS.  I HAVE A LOT OF AMAZING PARTNERS, SENIOR COUNSEL,

09:46AM 7    SUPPORT STAFF, AND I WILL MAKE MYSELF AVAILABLE TO BE VERY

09:46AM 8    PRESENT.  FOR THOSE WHO HAVE WORKED WITH ME, THEY KNOW I AM

09:46AM 9    EDITING AND DRAFTING AND WESTLAW AND DEFENDING DEPOSITIONS AND

09:46AM 10   TAKING DEPOSITIONS, AND I'M NOT JUST A FIGUREHEAD.

09:46AM 11       I MAKE MYSELF AVAILABLE, AND I HAVE DONE SO WHILE TOTING

09:46AM 12   TWO VERY DIFFICULT CHILDREN.  SO I CAN GET IT DONE BECAUSE I'VE

09:46AM 13   GOTTEN IT DONE, ALTHOUGH I HOLD OTHER LEADERSHIP POSITIONS.

09:46AM 14             THE COURT:  AND CAN YOU TELL ME ABOUT SHADES OF

09:46AM 15   MASS?

09:46AM 16             MS. DEBROSSE ZIMMERMAN:  YES, YOUR HONOR.

09:46AM 17       I FOUNDED SHADES OF MASS ALONGSIDE BEN CROMPTON AND A

09:46AM 18   NUMBER OF OTHER FIRMS.  I'VE BEEN IN THIS RODEO, I WON'T SAY

09:46AM 19   THE YEARS, BUT RIGHT COMING IN AND FOUND IT CHALLENGING ON SOME

09:46AM 20   LEVELS TO BE AT THE TABLE AND WHITTLED MY WAY INTO THESE

09:46AM 21   POSITIONS THROUGH A SMALLER FIRM, THEN THROUGH MY OWN LAW FIRM,

09:47AM 22   THEN AT GRANT & EISENHOFER, AND ULTIMATELY WITH THE GOOD FOLKS

09:47AM 23   AT DICELLO, LEVITT AND FELT AS A WOMAN OF COLOR, AS A CHILD OF

09:47AM 24   IMMIGRANTS I WAS PRACTICING LAW FOR A VERY PERSONAL REASON AND

09:47AM 25   CONTRIBUTED SOMETHING A LITTLE BIT DIFFERENT TO THE MANNER IN

09:47AM 1    WHICH CERTAIN TYPES OF MASS CASES HAD BEEN HANDLED, AND I FELT

09:47AM 2    THAT FOLKS WITH THE DIFFERING LIFE EXPERIENCES, THAT WE BROUGHT

09:47AM 3    SOMETHING VERY UNIQUE TO THE TABLE.

09:47AM 4        SO I WANTED TO MAKE THE PATH A LITTLE SIMPLER AND LESS

09:47AM 5    HOSTILE FOR THOSE BEHIND ME, EVEN AGAINST DEFENSE COUNSEL AS

09:47AM 6    WELL, AND I'VE HAD A LOT OF GREAT FIRMS, INCLUDING BEASLEY

09:47AM 7    ALLEN AND OTHERS HERE TODAY WHO ARE ON THAT BOARD.  AND IT'S

09:47AM 8    BEEN A REAL PLEASURE TO SEE THE WAY THAT THE LEGAL PROFESSION

09:47AM 9    HAS RECEIVED IT AND IN SOME SUCCESS SHADES OF MASS HAS ALREADY

09:47AM 10   HAD IN ENCOURAGING NONTRADITIONAL LAWYERS IN THIS SPACE TO GET

09:48AM 11   INVOLVED.

09:48AM 12           THE COURT:  WHERE DID THE NAME COME FROM?

09:48AM 13           MS. DEBROSSE ZIMMERMAN:  MY ITALIAN AMERICAN LAW

09:48AM 14   PARTNER, MARK DICELLO, WE CREATED IT AND WE WERE TRYING TO GO

09:48AM 15   THROUGH NAMES AND HE SAID WHAT ABOUT SHADES OF MASS.  I WOULD

09:48AM 16   LOVE TO TAKE CREDIT FOR IT, BUT IT WAS HIS IDEA.

09:48AM 17           THE COURT:  OKAY.  ANYTHING ELSE YOU WOULD LIKE ME

09:48AM 18   TO THINK ABOUT?

09:48AM 19           MS. DEBROSSE ZIMMERMAN:  I WOULD JUST WEIGH IN ON

09:48AM 20   THE SIZE OF THE LEADERSHIP STRUCTURE.

09:48AM 21       EVEN TO THE EXTENT THAT YOUR HONOR RIGHTFULLY SAYS, LOOK,

09:48AM 22   WE MAY ADDRESS THESE DISPOSITIVE ISSUES EARLY ON, EVEN THE

09:48AM 23   RESPONSE TO MOTIONS TO DISMISS, WHICH I KNOW YOUR HONOR KNOWS

09:48AM 24   BETTER THAN I DO, IS AN EXTRAORDINARY TASK.  THERE ARE SO MANY

09:48AM 25   DEFENDANTS HERE.

09:48AM 1    THESE ISSUES ARE AMONGST THE MOST SIGNIFICANT IN OUR

09:48AM 2    COUNTRY FOR THOSE US OF WHO HAVE CHILDREN FOR SURE, AND I THINK

09:48AM 3    AS THE PLAINTIFFS CARRYING THE BURDEN, WHICH IS A HEAVY BURDEN,

09:49AM 4    WE SHOULD BE AVAILED OF A LEADERSHIP STRUCTURE THAT BRINGS THE

09:49AM 5    BEST TO THE TABLE WITH ALL OF THEIR RESOURCES TO BE ABLE TO

09:49AM 6    FIGHT IN THE EARLY HOURS OF THE LITIGATION, AND THOSE ARE MY

09:49AM 7    THOUGHTS.

09:49AM 8        I THANK YOU, YOUR HONOR, VERY MUCH FOR ALLOWING ME THE

09:49AM 9    OPPORTUNITY TO SAY A FEW WORDS.

09:49AM 10           THE COURT:  THANK YOU.

09:49AM 11           MS. ZIMMERMAN:  THANK YOU.

09:49AM 12           THE COURT:  AGAIN, ANYONE WHO COMES TO THE MIC HAS

09:49AM 13    TO COME TO THIS MIC AND RECEIVE THAT SHEET FROM MR. GARCIA.

09:49AM 14        NEXT, JAYNE CONROY.

09:49AM 15           MS. CONROY:  GOOD MORNING, YOUR HONOR.

09:49AM 16        JAYNE CONROY FROM SIMMONS, HANLY & CONROY.

09:49AM 17           THE COURT:  MS. CONROY, SO I HAD YOU IN THIS BLOCK

09:49AM 18    IN PART BECAUSE I MAY HAVE MISREAD YOUR APPLICATION.

09:50AM 19        SO IF YOU JUST WANT TO BE A MEMBER OF THE STEERING

09:50AM 20    COMMITTEE AND YOU'RE NOT INTERESTED IN BEING CO-LEAD, BUT LET

09:50AM 21    ME KNOW.  BUT WHY DON'T YOU GO AHEAD AND ANSWER MY QUESTIONS.

09:50AM 22           MS. CONROY:  I'M SURE YOU DIDN'T MISREAD ANYTHING.

09:50AM 23    I'M SURE IT WAS SOME INAPPROPRIATE WAY THAT I PHRASED

09:50AM 24    SOMETHING, BUT I AM ONLY LOOKING FOR -- I SHOULDN'T SAY "ONLY"

09:50AM 25    -- I AM LOOKING FOR A PSC SEAT, NOT A CO-LEAD SEAT.

|  |  |  |
|---|---|---|
| 09:50AM | 1 | THE COURT: OKAY. AND DO YOU HAVE THE TIME? IT |
| 09:50AM | 2 | SEEMS TO ME THAT YOU'RE ONE OF THE THREE CO-LEADS IN THE OPIOID |
| 09:50AM | 3 | CASE, RIGHT? |
| 09:50AM | 4 | MS. CONROY: THAT'S CORRECT, YOUR HONOR. |
| 09:50AM | 5 | THE COURT: SO TALK TO ME ABOUT YOUR ABILITY TO |
| 09:50AM | 6 | ACTUALLY ENGAGE ON THIS ONE GIVEN YOUR OTHER COMMITMENTS. |
| 09:50AM | 7 | MS. CONROY: SURE. IT'S SOMEWHAT GOOD NEWS FOR |
| 09:50AM | 8 | MYSELF AND MANY OTHERS, AS WELL AS AT THE DEFENSE TABLE WE |
| 09:50AM | 9 | ARE -- WE'VE PROGRESSED. THAT CASE IS NOW FIVE YEARS OLD, AND, |
| 09:51AM | 10 | IN FACT, I WAS STARTING TRIAL ON MONDAY HERE IN -- WELL, IN |
| 09:51AM | 11 | SAN FRANCISCO BEFORE JUDGE BREYER, AND THAT CASE HAS RESOLVED |
| 09:51AM | 12 | AND SO -- |
| 09:51AM | 13 | THE COURT: WHICH OF THOSE? |
| 09:51AM | 14 | MS. CONROY: THAT WAS THE DAMAGE PHASE FOR THE |
| 09:51AM | 15 | OPIOID CASE AGAINST WALGREENS. |
| 09:51AM | 16 | THE COURT: OKAY. |
| 09:51AM | 17 | MS. CONROY: SO WE'VE MADE TREMENDOUS PROGRESS IN |
| 09:51AM | 18 | THAT MDL. SO JUDGE POLSTER IN CLEVELAND IS SITTING IN A VERY |
| 09:51AM | 19 | DIFFERENT PLACE THAN WHERE YOU'RE SITTING RIGHT NOW. |
| 09:51AM | 20 | THE COURT: YOU HAVE SIGNIFICANT EXPERIENCE IN |
| 09:51AM | 21 | MDL'S. |
| 09:51AM | 22 | AS I TALKED TO MY COLLEAGUES ABOUT THIS CASE, WE ALL SEEM |
| 09:51AM | 23 | TO THINK THAT IT'S -- THAT THE SLATE OR NON-SLATE THAT WAS |
| 09:51AM | 24 | SUGGESTED SEEMS TO BE QUITE HEAVY. |
| 09:51AM | 25 | WHAT ARE YOUR THOUGHTS ON KIND OF THE OPTIMAL SIZE OF A |

09:51AM   1    LEADERSHIP STRUCTURE?

09:52AM   2              MS. CONROY:  THANK YOU FOR ASKING THAT BECAUSE I

09:52AM   3    HAVE VERY STRONG OPINIONS ON IT.

09:52AM   4        PRIMARILY BECAUSE I'VE BEEN ON SO MANY MDL'S AND I'VE

09:52AM   5    WATCHED THESE PROGRESS OVER THE YEARS, AND OPIOIDS WAS AN

09:52AM   6    ENORMOUS WAKE-UP CALL I THINK FOR PLAINTIFFS' FIRMS THAT ARE

09:52AM   7    INVOLVED IN MDL'S, IN PARTICULAR WHEN THERE ARE SEVERAL

09:52AM   8    DEFENDANTS THAT ARE ACTIVE IN THE LITIGATION.

09:52AM   9        I, MYSELF, WAS A PROPONENT OF SMALLER MDL'S -- I'M SORRY,

09:52AM  10    SMALLER EXECUTIVE COMMITTEES.  I FELT THAT THEY WERE MORE

09:52AM  11    NIMBLE EARLY ON, AND I HAVE COME TO LEARN THAT WITH ELECTRONIC

09:52AM  12    DISCOVERY, THE ENORMOUS EXPENSE OF THESE CASES AND THE

09:52AM  13    TREMENDOUS EFFORT THAT IT TAKES ALL OF THE COUNSEL AND THEIR

09:52AM  14    LAW FIRMS, YOU JUST NEED A BIGGER GROUP TO MAKE THIS WORK.

09:52AM  15        THESE ARE NATIONAL LITIGATIONS.  YOU NEED GEOGRAPHIC

09:52AM  16    SCOPE.  YOU NEED INDIVIDUALS THAT ARE SPECIALIZED IN SO MANY

09:52AM  17    DIFFERENT AREAS, AND YOU HAVE TO TAKE INTO CONSIDERATION THAT A

09:53AM  18    LITIGATION IS GOING TO LAST, IF YOU GET THROUGH THE HURDLES,

09:53AM  19    FOR FIVE TO SIX YEARS.  THAT IS NOT UNCOMMON.

09:53AM  20        AND SO YOU NEED TO BE ABLE TO HAVE FIRMS THAT ARE RELIABLE

09:53AM  21    AND THAT ARE GOING TO BE AROUND AND LAWYERS THAT ARE -- YOU'RE

09:53AM  22    GOING TO GROW WITH AS THE CASE GROWS.

09:53AM  23        EVEN WITH RESPECT TO YOUR CONCEPT OF STARTING SMALL AND

09:53AM  24    THEN GETTING BIGGER, YOU'RE ASKING US TO FACE WHAT COULD BE OUR

09:53AM  25    GREATEST HURDLE IN THE NEXT FEW MONTHS.  AND, FRANKLY, WE'RE

| | |
|---|---|
| 09:53AM | 1 |

GOING TO NEED ALL OF THE BRAINS IN THE ROOM TO DEAL WITH THAT.

09:53AM  2      THE COURT:  LOOK, DO YOU NEED 20 BRAINS IN THE ROOM

09:53AM  3  OR DO YOU NEED JUST THE BEST 6?  OR NOT EVEN 20, MAYBE IT'S 40.

09:53AM  4  WRITING BY COMMITTEE IS NOT FUN, THAT'S WHY I LIKE THIS JOB.

09:54AM  5      (LAUGHTER.)

09:54AM  6      MS. CONROY:  YOU KNOW, I HAVE FOUND -- AND THIS IS

09:54AM  7  SOMETHING, AGAIN, THAT I HAVE LEARNED OVER THE YEARS IS THAT WE

09:54AM  8  MUST WRITE BY COMMITTEE, WE MUST DO THAT.  AND WE MUST VET

09:54AM  9  EVERYTHING WE WRITE BASED ON THE FACTS THAT ARE COMING AT US

09:54AM  10  FROM DIFFERENT PERSPECTIVES WITH DIFFERENT CLIENTS, DIFFERENT

09:54AM  11  LAWYERS THAT ARE REPRESENTING DIFFERENT ASPECTS, PEOPLE WHO

09:54AM  12  KNOW SOMETHING MORE.

09:54AM  13      YOU KNOW, BRIEFING IS LOADED WITH POSITIONS THAT WE ARE

09:54AM  14  GOING TO TAKE NOW THAT WE'RE GOING TO HAVE TO LIVE WITH FIVE

09:54AM  15  YEARS FROM NOW.  THAT'S WHY WE NEED ALL OF THE BRAINS, BECAUSE

09:54AM  16  WE CAN'T MAKE A MISSTEP.  WE CAN'T EVER MAKE A MISSTEP.

09:54AM  17      THE COURT:  AND DO YOU FIND -- I MEAN, I'M SURE THAT

09:54AM  18  THE OPIOIDS HAD MOTIONS TO DISMISS, RIGHT?

09:54AM  19      MS. CONROY:  WE DID, YES.

09:54AM  20      (LAUGHTER.)

09:54AM  21      THE COURT:  AND HOW MANY WERE ON THAT COMMITTEE?

09:55AM  22  WHAT WAS THE NUMBER?

09:55AM  23      MS. CONROY:  WE HAD -- IN A LAW AND BRIEFING

09:55AM  24  COMMITTEE, WE HAD THREE CHAIRS OF THE LAW AND BRIEFING

09:55AM  25  COMMITTEE, AND THEY HAD ACCESS TO PROBABLY ANOTHER TEN WRITERS.

09:55AM 1    WE THEN HAD THE CO-LEADS AS WELL AS A LEAD FOR EACH ONE OF

09:55AM 2    THE INDIVIDUAL DEFENDANTS THAT VETTED EACH DRAFT OF THOSE

09:55AM 3    OPPOSITIONS TO THE MOTION TO DISMISS.

09:55AM 4    THIS WAS, THIS WAS A MAJOR WARTIME OPERATION, AND I KNOW

09:55AM 5    IT SOUNDS CRAZY.

09:55AM 6         THE COURT:  SO LET'S SAY THAT YOU HAD THE LAW AND

09:55AM 7    BRIEFING COMMITTEE, YOU HAD A SCIENCE COMMITTEE, AND YOU HAD

09:55AM 8    ALL OF THESE OTHER COMMITTEES, AND SO YOU HAVE 20, 30 PEOPLE

09:55AM 9    WHO ARE ON THESE COMMITTEES.

09:55AM 10   DO YOU REALLY GET SUBSTANTIVE RESPONSES FROM ALL 20 OR 30?

09:55AM 11   AND IS THE CLASS, THE ULTIMATE CLASS REALLY PAYING FOR ALL OF

09:55AM 12   THESE 20 OR 30 TO READ THE BRIEFS?

09:56AM 13        MS. CONROY:  NOPE.  YOU DON'T GET A REACTION FROM

09:56AM 14   EVERYONE.  YOU DON'T GET EVERYONE TO READ.

09:56AM 15   BUT I DON'T KNOW WHO THOSE PEOPLE ARE YET, AND I DON'T

09:56AM 16   KNOW WHAT IS HAPPENING IN THEIR LIVES, WHETHER THEY'RE

09:56AM 17   AVAILABLE.  THAT'S WHY WE NEED LARGER COMMITTEES.

09:56AM 18   OBVIOUSLY TIME IS AUDITED.  EVERY MONTH WE HAVE PEOPLE

09:56AM 19   THAT OVERSEE EXACTLY WHO IS BILLING FOR WHAT.  ALL OF THOSE ARE

09:56AM 20   PART OF THE MANAGEMENT STRUCTURE.

09:56AM 21        THE COURT:  AND SO IF SOMEONE IS NOT REALLY

09:56AM 22   CONTRIBUTING BUT PUTTING IN THE TIME, THAT'S OKAY?

09:56AM 23        MS. CONROY:  NO.  THEIR TIME WILL NOT BE ACCEPTED.

09:56AM 24        THE COURT:  OKAY.

09:56AM 25        MS. CONROY:  WE ALSO -- AND ONE OTHER THING WE HAVE

09:56AM    1      DONE, AND YOU'VE PROBABLY DONE THIS ALREADY, A YEARLY REVIEW OF

09:56AM    2      WHO IS ON EACH COMMITTEE BASED ON THE KIND OF WORK THAT THEY

09:56AM    3      HAVE DONE.

09:56AM    4          THE COURT:  WELL, IN THE BATTERIES CASE I RECEIVED

09:57AM    5      QUARTERLY REPORTS, SO I DIDN'T GET ANNUAL, BUT THAT WAS A

09:57AM    6      LITTLE BIT DIFFERENT.

09:57AM    7          MS. CONROY:  JUDGE POLSTER DIDN'T DO THAT IN

09:57AM    8      OPIOIDS, BUT THE CO-LEADS WE RECEIVED MONTHLY REPORTS ON

09:57AM    9      ACTIVITY.

09:57AM   10          THE COURT:  OKAY.  OTHER THOUGHTS, MS. CONROY?

09:57AM   11          MS. CONROY:  I THINK --

09:57AM   12          THE COURT:  AND DOES YOUR FIRM USE LITIGATION

09:57AM   13      FUNDING?

09:57AM   14          MS. CONROY:  WE DO NOT.

09:57AM   15          THE COURT:  GO FUNDERS?  OKAY.  ALL RIGHT.  THANK

09:57AM   16      YOU.

09:57AM   17          MS. CONROY:  THANK YOU.

09:57AM   18          THE COURT:  MS. ANDERSON.  MS. ANDERSON, YOU ARE

09:57AM   19      HEREBY APPOINTED LIAISON COUNSEL.  ONE, NO ONE ELSE WANTED THE

09:57AM   20      JOB.

09:57AM   21       (LAUGHTER.)

09:57AM   22          THE COURT:  TWO, YOU AND I HAVE WORKED TOGETHER ON

09:58AM   23      BATTERIES, AND YOU'RE LOCAL, WHICH IS NICE TO BE ON THE SAME

09:58AM   24      TIME ZONE.

09:58AM   25          SO YOU HAVE THE JOB.

09:58AM 1          MS. ANDERSON:  THANK YOU, YOUR HONOR.

09:58AM 2          THE COURT:  AS SOON AS WE FINISH HERE, YOU CAN HELP

09:58AM 3   ME DEAL WITH ALL OF THE STUFF THAT IS GOING TO HAPPEN AFTER

09:58AM 4   TODAY.

09:58AM 5          MS. ANDERSON:  IT WILL BE A PLEASURE.

09:58AM 6          THE COURT:  ANYTHING THAT YOU WANT TO SAY FOR THE

09:58AM 7   RECORD?

09:58AM 8          MS. ANDERSON:  NOT UNLESS YOUR HONOR HAS PARTICULAR

09:58AM 9   QUESTIONS.  I CONCUR WITH PRETTY MUCH EVERYTHING THAT MY

09:58AM 10  COLLEAGUES HAVE SAID TODAY.

09:58AM 11         THE COURT:  I WOULD LIKE YOU TO FILL OUT THIS LITTLE

09:58AM 12  FORM HERE.

09:58AM 13         MS. ANDERSON:  OKAY.

09:58AM 14         THE COURT:  LET'S SEE.  HAVE I GOTTEN EVERYBODY?

09:58AM 15  YES, I'VE GOTTEN EVERYBODY AT THAT TABLE.

09:58AM 16     ALL RIGHT.  SO LET'S GO AHEAD, AND WE'LL START WITH THIS

09:58AM 17  GROUP HERE ON THE BENCH.

09:58AM 18     MY, MY -- I THINK THAT THESE ARE ALL FOLKS WHO WANT TO BE

09:58AM 19  ON THE STEERING COMMITTEE.  OKAY.

09:58AM 20     I DON'T KNOW WHO EVERYBODY ELSE IS IN THE BACK, BUT WE'LL

09:59AM 21  FIND THAT OUT LATER, TOO.

09:59AM 22     SO WHY DON'T WE START HERE.  WE WILL TAKE ONE AT A TIME.

09:59AM 23     IF YOU'LL COME TO THE MIC.  WE'LL TAKE ONE AT A TIME.

09:59AM 24  COME TO THE MIC AND TELL ME WHO YOU ARE, AND RESPOND TO MY

09:59AM 25  QUESTIONS GENERALLY THAT I'VE ALREADY PREPARED.  I MAY HAVE

| | | |
|---|---|---|
| 09:59AM | 1 | SOME QUESTIONS BASED UPON MY REVIEW OF YOUR APPLICATION. |
| 09:59AM | 2 | GO AHEAD. |
| 09:59AM | 3 | MS. RIZKALLA:  GOOD MORNING, YOUR HONOR. |
| 09:59AM | 4 | MY NAME IS RUTH RIZKALLA.  I'M WITH THE CARLSON LAW FIRM, |
| 09:59AM | 5 | AND, YES, I AM APPLYING FOR A PLAINTIFFS' STEERING COMMITTEE |
| 09:59AM | 6 | POSITION. |
| 09:59AM | 7 | I WILL GO IN ORDER.  I BELIEVE YOU HAD SIX QUESTIONS THAT |
| 09:59AM | 8 | YOU WANTED US TO RESPOND TO. |
| 09:59AM | 9 | THE COURT:  WELL, ONE OF THE THINGS I WOULD LIKE TO |
| 09:59AM | 10 | KNOW FROM YOU, BECAUSE YOU WERE NOT ON A SLATE. |
| 09:59AM | 11 | MS. RIZKALLA:  THAT'S CORRECT, YOUR HONOR. |
| 09:59AM | 12 | THE COURT:  AND SO WHY DO YOU -- DID YOU ASK TO BE |
| 09:59AM | 13 | ON THE SLATE? |
| 09:59AM | 14 | MS. RIZKALLA:  I DID ASK TO BE ON THE SLATE. |
| 09:59AM | 15 | THE COURT:  ALL RIGHT.  WHO DID YOU ASK? |
| 09:59AM | 16 | MS. RIZKALLA:  SO I HAVE BEEN ON THE CALLS, I |
| 10:00AM | 17 | BELIEVE, SINCE AUGUST OF THIS YEAR, AND I EMAILED A COUPLE OF |
| 10:00AM | 18 | THE FOLKS LETTING THEM KNOW THAT I WAS INTERESTED IN A PSC |
| 10:00AM | 19 | SPOT. |
| 10:00AM | 20 | MY UNDERSTANDING IS THAT THERE WERE SO MANY FOLKS WHO |
| 10:00AM | 21 | WANTED TO BE IN LEADERSHIP, AND I THINK, LIKE YOUR HONOR SAID |
| 10:00AM | 22 | EARLIER, THAT THIS SLATE WAS ALREADY SO BIG, WHICH IS |
| 10:00AM | 23 | COMPLETELY FINE WITH ME. |
| 10:00AM | 24 | I LOOKED AT THE SLATE.  THESE ARE VERY HIGHLY RESPECTED |
| 10:00AM | 25 | EXPERIENCED LAWYERS ON THE SLATE.  I DON'T FEEL SLIGHTED IN THE |

| | | |
|---|---|---|
| 10:00AM | 1 | LEAST.  I AM USED TO NOT BEING INVITED TO EVERY PARTY THAT I'D |
| 10:00AM | 2 | LIKE TO GO TO, AND I THINK THAT'S JUST ONE OF THESE SITUATIONS. |
| 10:00AM | 3 | THE COURT:  OKAY.  GO AHEAD AND TELL ME WHY YOU |
| 10:00AM | 4 | SHOULD BE ADDED TO THE SLATE. |
| 10:01AM | 5 | MS. RIZKALLA:  YOUR HONOR, I THINK I SHOULD BE ADDED |
| 10:01AM | 6 | TO THE SLATE FOR THREE REASONS, THREE MAIN REASONS: |
| 10:01AM | 7 | THE FIRST BEING THAT I HAVE THE RELEVANT EXPERIENCE.  I'VE |
| 10:01AM | 8 | BEEN PRACTICING LAW NOW FOR ALMOST TWO DECADES, THE LAST DECADE |
| 10:01AM | 9 | OF WHICH HAS BEEN PRIMARILY PRODUCTS LIABILITY LITIGATION.  AND |
| 10:01AM | 10 | DESPITE THE FACT THAT DEFENDANTS ARE SAYING THIS IS NOT A |
| 10:01AM | 11 | PRODUCT CASE, IT IS.  I THINK IF I CAN SHOW YOUR HONOR THIS |
| 10:01AM | 12 | THROUGH THIS LITIGATION, I WOULD LOVE TO DO THAT. |
| 10:01AM | 13 | I HAVE BEEN JUDGE APPOINTED TO THREE MDL'S IN THE PAST, |
| 10:01AM | 14 | ALL PRODUCTS LIABILITY MDL'S AND FOUR JCCP'S.  SO I THINK THIS |
| 10:01AM | 15 | IS IN MY WHEELHOUSE AS FAR AS EXPERIENCE GOES. |
| 10:01AM | 16 | ADDITIONALLY, THIS IS A LITIGATION THAT I CARE ABOUT.  I |
| 10:01AM | 17 | KNOW OTHER COUNSEL HAVE BROUGHT UP THE FACT THAT THEY HAVE |
| 10:01AM | 18 | CHILDREN WHO ARE TEENAGERS.  I HAVE THREE KIDS, AND THEY ARE |
| 10:01AM | 19 | 11, 14, AND 16.  SO THE STRUGGLE WITH SOCIAL MEDIA, THE DANGERS |
| 10:02AM | 20 | THAT LURK WITHIN SOCIAL MEDIA USE IS VERY, VERY REAL FOR ME. |
| 10:02AM | 21 | SO THE OPPORTUNITY TO WORK IN THIS LITIGATION THAT IS |
| 10:02AM | 22 | ABSOLUTELY CUTTING EDGE AND I THINK WILL BE LIFE CHANGING NOT |
| 10:02AM | 23 | JUST FOR THE PLAINTIFFS INVOLVED, BUT I THINK THERE ARE |
| 10:02AM | 24 | RAMIFICATIONS THAT COME FOLLOWING THIS, TOO, AS FAR AS |
| 10:02AM | 25 | REGULATING SOCIAL MEDIA PLATFORMS AND THE PEOPLE WHO HAVE |

```
10:02AM   1        BECOME VICTIMS.

10:02AM   2             THIRDLY, I THINK THAT I ALSO BRING A DIFFERENT KIND OF

10:02AM   3        DIVERSITY AND PERSPECTIVE.  AS I NOTED IN MY APPLICATION -- AND

10:02AM   4        I DON'T WANT TO REPEAT THE EXACT SAME THINGS, BUT, YOU KNOW, I

10:02AM   5        AM SOMEONE WHO COMES FROM AN IMMIGRANT FAMILY, WHO HAS OVERCOME

10:02AM   6        ADVERSITY, HARDSHIP, AND I DON'T GIVE UP.  AND I DON'T GIVE UP.

10:02AM   7        I AM HERE TODAY BECAUSE I DON'T GIVE UP.  I AM HERE TODAY

10:03AM   8        BECAUSE I HAVEN'T GIVEN UP.  I WANT TO BE IN FRONT OF

10:03AM   9        YOUR HONOR AND SAY I AM THE PERSON TO DO THIS AND IF YOU

10:03AM  10        APPOINT ME, I WILL NOT LET YOU DOWN, AND I WILL NOT LET THE

10:03AM  11        PLAINTIFFS DOWN.

10:03AM  12             THE COURT:  THE CASES WHERE YOU HAVE ALREADY BEEN

10:03AM  13        APPOINTED, DO YOU HAVE TIME FOR THIS CASE?

10:03AM  14             MS. RIZKALLA:  I ABSOLUTELY DO.  RIGHT NOW I HAVE A

10:03AM  15        PSC POSITION IN THE 3M COMBAT ARMS EARPLUGS CASE.  THAT

10:03AM  16        ESSENTIALLY HAS GONE THROUGH THE BELLWETHER TRIAL PHASE AND NOW

10:03AM  17        WE'RE IN WAVE CASES, WHICH ESSENTIALLY MEANS CASES WILL GET

10:03AM  18        REMANDED TO THE FIRMS THAT INITIALLY FILED THEM, AND SO THOSE

10:03AM  19        FIRMS WILL BE TRYING THEIR OWN CASES.

10:03AM  20             I AM ALSO IN TWO OTHER MDL PSC POSITIONS, AND I'VE BEEN

10:03AM  21        ABLE TO MANAGE.  I'VE ALWAYS MANAGED.  THAT'S KIND OF WHAT I

10:03AM  22        DO.

10:03AM  23             THE COURT:  YOU'RE A SOLO PRACTITIONER?

10:03AM  24             MS. RIZKALLA:  NO.  I AM 1 OF APPROXIMATELY

10:03AM  25        40-SOMETHING LAWYERS.
```

| | | |
|---|---|---|
| 10:04AM | 1 | AND AS FAR AS THE LITIGATION FINANCE QUESTION GOES, MY |
| 10:04AM | 2 | FIRM IS NOT, IS NOT -- WE DON'T EVEN HAVE DEBT VERY HONESTLY, |
| 10:04AM | 3 | SO NO LITIGATION FINANCING, NO DEBT WHATSOEVER. |
| 10:04AM | 4 | THE COURT: AND WHICH ARE THE OTHER CASES THAT ARE |
| 10:04AM | 5 | STILL ONGOING? |
| 10:04AM | 6 | MS. RIZKALLA: SO I'M ALSO PART OF THE PARAGUARD |
| 10:04AM | 7 | MDL, AND THAT'S JUST BEGUN. SO WE ARE IN DISCOVERY AND, YOU |
| 10:04AM | 8 | KNOW, I AM PART OF THE TEAM. I'VE GOT -- OH, GOSH. HOW MANY |
| 10:04AM | 9 | DO I HAVE? I HAVE ASSOCIATES, I HAVE STAFF, AND I'VE BEEN ON |
| 10:04AM | 10 | TOP OF THAT. AND THEN -- I'M SORRY. |
| 10:04AM | 11 | THE COURT: AND THEN THE THIRD? |
| 10:04AM | 12 | MS. RIZKALLA: THE THIRD ONE IS THE ELMIRON |
| 10:04AM | 13 | LITIGATION, AND SO THAT IS HEADING INTO BELLWETHER TRIALS. I |
| 10:04AM | 14 | WILL BE A PART OF THAT TEAM, BUT I AM NOT THE HEAD TRIAL |
| 10:04AM | 15 | ATTORNEY. |
| 10:04AM | 16 | THE COURT: OKAY. IN TERMS OF ASSIGNMENTS, WHAT WAS |
| 10:04AM | 17 | YOUR ASSIGNMENTS IN EARPLUGS? WERE YOU ASSIGNED TO A |
| 10:05AM | 18 | SUBCOMMITTEE OR A COMMITTEE? |
| 10:05AM | 19 | MS. RIZKALLA: SURE. I WAS GENERAL. I DIDN'T HAVE |
| 10:05AM | 20 | A SUBCOMMITTEE THAT I WAS ASSIGNED TO, SO I DID A LITTLE BIT OF |
| 10:05AM | 21 | EVERYTHING, AND I WAS ABLE TO PARTICIPATE IN THE FIRST |
| 10:05AM | 22 | BELLWETHER TRIAL THAT TOOK PLACE. |
| 10:05AM | 23 | THE COURT: OKAY. AND WHAT ABOUT ELMIRON? |
| 10:05AM | 24 | MS. RIZKALLA: I'M NOT ON ANY ASSIGNED |
| 10:05AM | 25 | SUBCOMMITTEES. SO KIND OF THE SAME THING, I'M GENERAL. AND |

| | |
|---|---|
| 10:05AM | 1 |
| 10:05AM | 2 |
| 10:05AM | 3 |
| 10:05AM | 4 |
| 10:05AM | 5 |
| 10:05AM | 6 |
| 10:05AM | 7 |
| 10:05AM | 8 |
| 10:05AM | 9 |
| 10:05AM | 10 |
| 10:06AM | 11 |
| 10:06AM | 12 |
| 10:06AM | 13 |
| 10:06AM | 14 |
| 10:06AM | 15 |
| 10:06AM | 16 |
| 10:06AM | 17 |
| 10:06AM | 18 |
| 10:06AM | 19 |
| 10:06AM | 20 |
| 10:06AM | 21 |
| 10:06AM | 22 |
| 10:06AM | 23 |
| 10:06AM | 24 |
| 10:06AM | 25 |

WHEN I'M NEEDED OR IF I WANT TO VOLUNTEER FOR SOMETHING THAT IS
UPCOMING IN THE LITIGATION, I CAN DO THAT.

THE COURT:  OKAY.  IF YOU COULD PICK A COMMITTEE
THAT YOU WOULD LIKE TO SERVE ON IN THIS CASE, WHAT WOULD IT BE?

MS. RIZKALLA:  I THINK IT WOULD HAVE TO BE PROBABLY
THE MASTER COMPLAINT AND ALSO KIND OF NARROWING DOWN WHAT OUR
REAL CAUSES OF ACTION ARE.

THE COURT:  GREAT.  THANKS.

MS. RIZKALLA:  THANK YOU, YOUR HONOR.

THE COURT:  NEXT.

MR. GOZA:  GOOD MORNING, YOUR HONOR.

THE COURT:  GOOD MORNING.

MR. GOZA:  MY NAME IS KIRK GOZA.  I'M WITH THE LAW
FIRM OF GOZA HONNOLD, AND I'VE APPLIED FOR A PSC POSITION IN
THIS CASE.

I'M HAPPY TO ADDRESS THE QUESTIONS THAT YOUR HONOR HAS.
FIRST, I GUESS, STARTING WITH LEADERSHIP STRUCTURE.  I KNOW THE
COURT HAS SOME CONCERNS ABOUT THE SIZE OF LEADERSHIP.  AND I
WOULD SAY THIS, YOU KNOW, I THINK THAT WHAT ALL OF THESE
LITIGATIONS NEED IS PEOPLE WITH VARYING EXPERIENCE AND
EXPERTISE.  THE COURT IS ALWAYS LOOKING TO PROVIDE NEW PEOPLE
OPPORTUNITIES TO GET INVOLVED IN MDL, AND, OF COURSE,
DIVERSIFICATION IS IMPORTANT AS WELL.

AND I THINK THAT IN THESE KINDS OF CASES IT IS MUCH BETTER
TO ERR ON THE SIDE AND LESS HARM MAKING THE PSC BIGGER THAN ONE

10:07AM 1    MIGHT ABSOLUTELY NEED IN ORDER TO ACCOMMODATE SOME OF THOSE

10:07AM 2    THINGS.  SO I THINK THOSE ARE ALL WORTHWHILE GOALS TO CONSIDER

10:07AM 3    AS THE COURT EVALUATES PEOPLE COMING TO THE TABLE.

10:07AM 4        AND I THINK THE HARM OF MAKING IT TOO SMALL FAR OUTWEIGHS

10:07AM 5    THE BENEFITS THAT COME WITH OPENING UP THE PSC OPPORTUNITIES TO

10:07AM 6    PEOPLE AND OBVIOUSLY THEN EVERYONE HAS THEIR OWN AREA OF

10:07AM 7    EXPERTISE.

10:07AM 8            THE COURT:  AND WHAT IS YOURS?

10:07AM 9            MR. GOZA:  WHAT IS MINE?  WELL, LET ME SAY FIRST

10:07AM 10   I -- THE REALITY IS THE LAW FIRM HAS BEEN INVOLVED IN A LOT OF

10:07AM 11   DIFFERENT KINDS OF MDL'S LITIGATIONS AND TAKEN A LOT OF

10:07AM 12   DIFFERENT ROLES.  MOST OF THAT HAS BEEN THROUGH MY PARTNER,

10:07AM 13   BRAD HONNOLD.

10:07AM 14           THE COURT:  SO HE'S NOT HERE.  I'M ASKING ABOUT YOU.

10:07AM 15           MR. GOZA:  RIGHT.  I GUESS WHAT I WOULD SAY IS THIS,

10:07AM 16   I HAVE OVER THE YEARS DONE A TREMENDOUS AMOUNT OF WORK WITH

10:07AM 17   EXPERTS, WITH DAUBERT MOTIONS, WITH DEPOSING CORPORATE

10:07AM 18   REPRESENTATIVES, WITH BEING SELECTED TO BE ON VARIOUS TRIAL

10:08AM 19   TEAMS INCLUDING, AS PEOPLE HAVE MENTIONED, THE JUUL TRIAL TEAM

10:08AM 20   FOR A CASE THAT IS COMING UP.

10:08AM 21       SO MY ROLE HAS BEEN NARROW IN TERMS OF WHAT MY EXPERTISE

10:08AM 22   IS.  MY POINT IN BRINGING UP THE FACT THAT I HAVEN'T BEEN

10:08AM 23   ASSIGNED ON PSC'S IN MANY OF THOSE INSTANCES, IS PEOPLE HAVE

10:08AM 24   ASKED ME TO COME AND BE INVOLVED IN CASES AND DO THAT KIND OF

10:08AM 25   WORK IN THAT SPECIFIC AREA, AND I'VE DONE THAT IN I HOPE A

10:08AM 1    COOPERATIVE FASHION WHERE PEOPLE KNOW I'M WILLING TO DO KIND OF

10:08AM 2    WHATEVER IT TAKES TO HELP MOVE THINGS FORWARD.

10:08AM 3         SO THAT WOULD BE MY AREA OF EXPERTISE, I GUESS.

10:08AM 4         THE COURT:  HOW MUCH WORK, IF ANY, HAVE YOU DONE IN

10:08AM 5    TERMS OF SOCIAL MEDIA OR TECH RELATED TOPICS?

10:08AM 6         MR. GOZA:  SO IN SOCIAL MEDIA, I GUESS I WOULD

10:08AM 7    EXPAND JUST A LITTLE WAY TO SAY IN MARKETING IN SOCIAL MEDIA I

10:08AM 8    HAVE ACTUALLY DONE A LOT OF WORK.

10:08AM 9         PEOPLE HAVE TALKED ABOUT THE JUUL CASE.  I ACTUALLY WORKED

10:08AM 10   HAND IN HAND WITH OUR -- BOTH THE DEVELOPMENTAL AND CLINICAL

10:09AM 11   PSYCHOLOGIST THAT DEALT NOT ONLY WITH THE ADDICTION OF THE

10:09AM 12   DEVELOPING ADOLESCENT AND YOUNG ADULT BRAIN AND THE DIFFERENCE

10:09AM 13   BETWEEN THAT AND A MATURE BRAIN, BUT TALK ABOUT THE IMPACT OF

10:09AM 14   MARKETING, SOCIAL MEDIA AND PEER PRESSURE WITH RESPECT TO KIDS,

10:09AM 15   AND ALL OF THOSE WERE RELATED TO EXPERTS IN THE AREA OF YOUTH

10:09AM 16   PSYCHOLOGY AND ADOLESCENT PSYCHOLOGY, AND I'VE SPENT THE LAST

10:09AM 17   TWO OR THREE YEARS WORKING IN THAT AREA.

10:09AM 18         THE COURT:  OKAY.

10:09AM 19         MR. GOZA:  I'M HAPPY TO SAY THAT WE DON'T USE ANY

10:09AM 20   LITIGATION FUNDING, SO I DON'T THINK THAT THAT IS AN ISSUE.

10:09AM 21         IN TERMS OF MY AVAILABILITY, I DO THINK THAT, YOU KNOW, IN

10:09AM 22   TERMS OF WHAT I GENERALLY AM LOOKED AT TO BE INVOLVED IN,

10:09AM 23   THAT'S PROBABLY NOT SOMETHING THAT IS GOING TO HAPPEN

10:09AM 24   IMMEDIATELY.

10:09AM 25         WE DO HAVE TRIALS SCHEDULED IN JUUL IN THE EARLY PART OF

10:09AM  1   THIS -- OR NEXT YEAR.  PRESUMABLY MY ROLE IN THOSE WILL BE

10:10AM  2   EITHER TO TRY THEM OR NOT TRY THEM COME JANUARY OF NEXT YEAR,

10:10AM  3   AND SO I EXPECT THAT BY THE TIME WE GET TO THAT POINT IN

10:10AM  4   DISCOVERY AND DOING EXPERT WORK AND DOING THOSE KINDS OF THINGS

10:10AM  5   IN THIS LITIGATION, I HOPEFULLY WILL BE IN A POSITION TO

10:10AM  6   HOPEFULLY COMMIT FULL TIME TO DOING THAT.

10:10AM  7          THE COURT:  SO IF YOU COULD CHOOSE A SUBCOMMITTEE,

10:10AM  8   IT WOULD BE A TRIAL TEAM?

10:10AM  9          MR. GOZA:  IT WOULD BE A TRIAL OR EXPERT COMMITTEE

10:10AM  10  OR A COMBINATION OF THOSE THINGS, YES.

10:10AM  11         THE COURT:  AND YOU'RE, RIGHT NOW, YOU'RE SCHEDULED

10:10AM  12  TO GO TO TRIAL IN JUUL IN JANUARY?

10:10AM  13         MR. GOZA:  THE FIRST TRIAL IS IN JANUARY AND THE

10:10AM  14  SECOND IN APRIL, I BELIEVE.

10:10AM  15         THE COURT:  THESE ARE IN FRONT OF JUDGE ORRICK?

10:10AM  16         MR. GOZA:  YES, THEY ARE, MA'AM.

10:10AM  17         THE COURT:  AND YOU FOUND A GOOD HOTEL TO LIVE IN?

10:10AM  18         MR. GOZA:  YOU KNOW, THE ANSWER TO THAT QUESTION IS,

10:10AM  19  NO, WE APPARENTLY HAVE NOT FOUND A GREAT HOTEL.  BUT WE'VE GOT

10:11AM  20  A HOTEL.

10:11AM  21      (LAUGHTER.)

10:11AM  22         MR. GOZA:  THAT'S ALL I COULD SAY ABOUT THAT.

10:11AM  23         THE COURT:  WELL, HERE IN OAKLAND I HAD ONE TRIAL

10:11AM  24  LAWYER WHO DID TRIALS IN FRONT OF ME LIKE IN JUNE AND THEN IN

10:11AM  25  SEPTEMBER, AND UNTIL RECENTLY THE ONLY THING WE HAD WAS THE

| | |
|---|---|
| 10:11AM | 1 |
| 10:11AM | 2 |
| 10:11AM | 3 |
| 10:11AM | 4 |
| 10:11AM | 5 |
| 10:11AM | 6 |
| 10:11AM | 7 |
| 10:11AM | 8 |
| 10:11AM | 9 |
| 10:11AM | 10 |
| 10:11AM | 11 |
| 10:11AM | 12 |
| 10:11AM | 13 |
| 10:11AM | 14 |
| 10:11AM | 15 |
| 10:12AM | 16 |
| 10:12AM | 17 |
| 10:12AM | 18 |
| 10:12AM | 19 |
| 10:12AM | 20 |
| 10:12AM | 21 |
| 10:12AM | 22 |
| 10:12AM | 23 |
| 10:12AM | 24 |
| 10:12AM | 25 |

MARRIOTT THAT IS RIGHT HERE.

WE NOW HAVE ANOTHER ONE HERE DOWN ON BROADWAY.

MR. GOZA:  I THINK THE MARRIOTT MIGHT BE ABOVE A STEP WHERE WE'RE SAYING.

THE COURT:  WELL, HE SAID HE WOULD NEVER TRY A CASE HERE AGAIN BECAUSE HE HATED THAT.  OKAY.

(LAUGHTER.)

MR. GOZA:  THANK YOU, YOUR HONOR.

THE COURT:  THANK YOU.  NEXT.

MR. CARTMELL:  GOOD MORNING, YOUR HONOR.

MY NAME IS TOM CARTMELL, AND I'M A LAWYER AT WAGSTAFF & CARTMELL AND IN KANSAS CITY, MISSOURI.

THE COURT:  HOLD ON A SECOND.  LET ME JUST GET YOUR TAB.

ALL RIGHT.  GO AHEAD.

MR. CARTMELL:  I'M ALSO SEEKING A POSITION ON THE STEERING COMMITTEE.  I WOULD VERY MUCH LIKE TO HAVE YOUR PERMISSION TO BE ON THE STEERING COMMITTEE.

I THINK I CAN OFFER AND CONTRIBUTE A LOT TO THIS CASE. SOME OF THE MORE RECENT CASES THAT I THINK ARE RELEVANT EXPERIENCE HAVE BEEN TALKED ABOUT ARE THE OPIOIDS CASE THAT I WORKED UNDER MS. CONROY ON THAT CASE, AND THEN MOST RECENTLY IN THE JUUL CASE IN JUDGE ORRICK'S COURT.  I THINK THEY'RE BOTH RELEVANT BECAUSE THEY DO OBVIOUSLY DEAL WITH PUBLIC HEALTH ISSUES, THEY DEAL WITH ADDICTION, ESPECIALLY BOTH OF THEM, AND

10:12AM 1    THAT'S A LARGE PART OF THIS CASE AND HAVE LOTS OF

10:12AM 2    CHARACTERISTICS IN THOSE CASES THAT ARE SIMILAR AND OVERLAP,

10:12AM 3    AND I'VE LEARNED A TON AND WORKED VERY HARD IN THOSE, AND I

10:12AM 4    THINK THEY WOULD APPLY TO THIS CASE AS WELL.

10:13AM 5        I DO THINK THE SOCIAL MEDIA ASPECT I HAD NOT DONE A TON IN

10:13AM 6    THAT AREA, AND I HAVE LEARNED A TON IN THE JUUL CASE ABOUT

10:13AM 7    SOCIAL MEDIA AND HAVE BEEN RESPONSIBLE FOR THE EXPERTS THAT WE

10:13AM 8    WERE PLANNING TO PUT ON AT TRIAL NOVEMBER 7TH, BUT THAT TRIAL

10:13AM 9    WAS MOVED FOR A PERIOD OF TIME.

10:13AM 10       I THINK I CAN COMMIT FULLY TO THIS CASE AND WOULD LOVE TO

10:13AM 11   COMMIT, YOU KNOW, FULLY TO THIS CASE TO THE EXTENT POSSIBLE AND

10:13AM 12   ALSO MY LAW FIRM AS WELL.  I WOULD COMMIT TO YOU THAT WE WOULD

10:13AM 13   COMMIT ALL OF OUR RESOURCES TO THE EXTENT POSSIBLE.

10:13AM 14           THE COURT:  SO YOU'VE GOT JUUL GOING.  IN YOUR

10:13AM 15   RESUME YOU'VE LISTED 11 DIFFERENT MDL'S.  ARE ALL OF THEM

10:13AM 16   CURRENT?

10:13AM 17           MR. CARTMELL:  NO.  THE MAJORITY OF THEM ARE OVER

10:13AM 18   AND DONE.

10:13AM 19       THE 3M CASE IN FRONT OF JUDGE CASEY RODGERS IS STILL

10:14AM 20   PENDING.  I'M ON THE EXECUTIVE COMMITTEE AND HAVE TRIED -- MY

10:14AM 21   LAW FIRM HAS TRIED THREE OF THOSE CASES.

10:14AM 22           THE COURT:  OKAY.  DID YOU TRY ANY?

10:14AM 23           MR. CARTMELL:  I TRIED TWO, AND MY PARTNER TRIED

10:14AM 24   ONE.

10:14AM 25           THE COURT:  OKAY.

10:14AM  1    MR. CARTMELL:  THE FIRST BELLWETHER IN THAT CASE AND

10:14AM  2    THEN ONE OTHER TWO MONTHS LATER.  THOSE CASES, THE BELLWETHER

10:14AM  3    TRACKS HAVE BEEN SUSPENDED AND THEY'RE IN THE WAVE.  SO I THINK

10:14AM  4    MY WORK IN THAT CASE IS PRIMARILY DONE.

10:14AM  5    YOU NEVER KNOW FOR SURE OBVIOUSLY, BUT IT'S A VERY MATURE

10:14AM  6    CASE, AND I WAS IN CHARGE OF HANDLING EXPERTS, DEFENDING IN

10:14AM  7    DAUBERT AND THE TRIAL TEAM, AND THAT HAS ALL BEEN DONE.

10:14AM  8    THE JUUL CASE, YOU KNOW, OTHERS HAVE TALKED ABOUT, AND

10:14AM  9    THAT CASE IS STILL PENDING.

10:14AM  10    I AM ON THE TRIAL TEAM.  THE FIRST CASE THAT IS SCHEDULED

10:14AM  11    TO GO NOW IN JANUARY AND THERE WAS -- THERE IS ONE IN APRIL AS

10:15AM  12    WELL, AND I'M ON THAT TRIAL TEAM AS WELL.

10:15AM  13    AGAIN, MY WORK TYPICALLY IN THESE CASES IS ON THE TRIAL

10:15AM  14    TEAMS AND DEALING WITH DAUBERT AND THE EXPERTS.  THAT'S MOSTLY

10:15AM  15    BEEN DONE IN THAT CASE, I THINK.  SO I, I FEEL LIKE, OTHER THAN

10:15AM  16    THOSE TRIALS, WHICH OBVIOUSLY I WILL BE COMMITTED TO AND DOING

10:15AM  17    THOSE, BUT I FEEL LIKE OTHER THAN THAT, I CAN COMMIT OTHERS

10:15AM  18    FROM MY FIRM WHO ARE GOING TO BE AVAILABLE TO FILL ANY SPOTS,

10:15AM  19    BUT I ALSO FEEL LIKE GIVEN YOUR CURRENT PLAN, WHICH I

10:15AM  20    UNDERSTAND IS NOT OBVIOUSLY FINAL, BUT WITH THE UP-FRONT MOTION

10:15AM  21    PRACTICE HERE AND A PERIOD OF TIME OBVIOUSLY IN DISCOVERY, THAT

10:15AM  22    MY INVOLVEMENT MAY NOT BE AS MUCH AS EARLY IN THIS CASE.

10:16AM  23    THE COURT:  HAVE YOU TRIED CASES IN NORTHERN

10:16AM  24    CALIFORNIA?

10:16AM  25    MR. CARTMELL:  NO.  I'VE TRIED CASES IN SOUTHERN.

10:16AM 1      ACTUALLY, MY FIRST --

10:16AM 2               THE COURT:  I'M ASKING SPECIFICALLY ABOUT NORTHERN

10:16AM 3      CALIFORNIA.

10:16AM 4               MR. CARTMELL:  I HAVE NOT.

10:16AM 5          I ACTUALLY SETTLED A CASE ON THE SUNDAY NIGHT BEFORE WE --

10:16AM 6      I WAS GOING TO GIVE THE OPENING STATEMENT IN FRONT OF

10:16AM 7      JUDGE BREYER ON MONDAY MORNING IN THE CELEBREX MDL.

10:16AM 8               THE COURT:  OKAY.

10:16AM 9          MR. GOZA, HAVE YOU TRIED ANY CASES IN NORTHERN CALIFORNIA?

10:16AM 10              MR. GOZA:  NO, MA'AM.  NO, YOUR HONOR.

10:16AM 11              THE COURT:  SO I TAKE IT, MR. CARTMELL, THAT IF YOU

10:16AM 12     COULD CHOOSE A ROLE FOR A SUBCOMMITTEE, IT WOULD BE A TRIAL OR

10:16AM 13     AN EXPERT TEAM?  IS THAT WHAT YOU WOULD ASK FOR?

10:16AM 14              MR. CARTMELL:  YES, YOUR HONOR.

10:17AM 15              THE COURT:  OKAY.  LITIGATION FINANCE?

10:17AM 16              MR. CARTMELL:  OUR FIRM HAS NEVER BEEN INVOLVED WITH

10:17AM 17     LITIGATION FINANCE.

10:17AM 18              THE COURT:  OKAY.  THANK YOU, SIR.

10:17AM 19              MR. CARTMELL:  THANK YOU.

10:17AM 20              MS. LIU:  GOOD MORNING, YOUR HONOR.

10:17AM 21              THE COURT:  GOOD MORNING.

10:17AM 22              MS. LIU:  MY NAME IS SIN-TING MARY LIU, AND I'M WITH

10:17AM 23     THE LAW FIRM OF AYLSTOCK, WITKIN, KREIS & OVERHOLTZ.

10:17AM 24          EXCUSE ME.  YOUR HONOR, I APPLIED FOR THIS PSC POSITION

10:17AM 25     BECAUSE I AM -- I'VE BEEN -- MY PASSION, MY DEVOTION TO CHILD

| 10:17AM | 1 | ADVOCACY WORK DATES BACK TO RIGHT OUT LAW SCHOOL IN 2010, AND I |
| 10:18AM | 2 | WANT TO CONTINUE WORKING IN THAT FIELD.  I CURRENTLY REPRESENT |
| 10:18AM | 3 | CLIENTS WHO HAVE BEEN ASSAULTED AS CHILDREN, AND MY WORK, MY |
| 10:18AM | 4 | EXPERIENCE WITH SECTION 230 ALSO HAS -- GIVES ME THE |
| 10:18AM | 5 | OPPORTUNITY TO COMBINE BOTH OF MY PASSIONS INTO THIS WORK. |
| 10:18AM | 6 | I'M HAPPY TO ANSWER ANY QUESTIONS THAT YOU MAY HAVE AS FAR |
| 10:18AM | 7 | AS THE STRUCTURE OF THE PSC.  I DO THINK THAT A LARGE GROUP |
| 10:18AM | 8 | WOULD BE BENEFICIAL IN THIS PARTICULAR CASE WITH THE NUMBER OF |
| 10:18AM | 9 | DEFENDANTS AND WITH THE VARIOUS LEGAL ISSUES THAT WILL BE |
| 10:18AM | 10 | PRESENTED, EVEN DURING A MOTION TO DISMISS PHASE THAT YOU WERE |
| 10:18AM | 11 | TALKING ABOUT, I DO THINK THAT HAVING A LARGE BRAINPOWER WOULD |
| 10:18AM | 12 | BE BENEFICIAL. |
| 10:18AM | 13 | AS FAR AS LITIGATION FUNDING, WE DO NOT USE ANY LITIGATION |
| 10:18AM | 14 | FUNDING AT MY FIRM. |
| 10:18AM | 15 | AS FAR AS THE -- YOU HAD MENTIONED THE DAMAGES VERSUS THE |
| 10:19AM | 16 | INJUNCTIVE RELIEF, I THINK THAT BOTH OF THOSE APPLY IN THESE |
| 10:19AM | 17 | CASES, DEPENDING ON THE SPECIFIC CAUSES OF ACTION.  OF COURSE, |
| 10:19AM | 18 | IN CERTAIN ONES WE'D HAVE TO HAVE SOME PROXIMATE CAUSATION |
| 10:19AM | 19 | ISSUES, AND ALL OF THOSE ISSUES WOULD BE BEFORE THE COURT. |
| 10:19AM | 20 | ANY OTHER SPECIFIC QUESTIONS THAT YOU HAVE FOR ME, I'M |
| 10:19AM | 21 | HAPPY TO ANSWER. |
| 10:19AM | 22 | THE COURT:  SO IN TERMS OF YOUR CURRENT WORKLOAD, IT |
| 10:19AM | 23 | LOOKS LIKE YOU'VE GOT SOME CONSOLIDATED CASES IN CALIFORNIA |
| 10:19AM | 24 | STATE COURT. |
| 10:19AM | 25 | MS. LIU:  CORRECT, YOUR HONOR.  I AM -- I CURRENTLY |

| | |
|---|---|
| 10:19AM | 1 |
| 10:19AM | 2 |
| 10:19AM | 3 |
| 10:19AM | 4 |
| 10:20AM | 5 |
| 10:20AM | 6 |

1    LEAD OUR FIRM'S CHILDHOOD SEXUAL ABUSE CASES IN THE JCCP, AND

2    THERE ARE THREE CASES IN JCCP, 5101, 5105, AND 5108.  IT'S ONLY

3    FOR MY FIRM.  I'M NOT ON THE PLAINTIFF LIAISON COUNSEL OR

4    ANYTHING LIKE THAT BEFORE THE JCCP.  I DO HAVE A TEAM OF

5    ATTORNEYS AND A FAIRLY LARGE STAFF THAT ARE ASSISTING ME ON

6    THOSE CASES.

7         THE COURT:  OKAY.  ARE YOU ON ANY OF OR HAVE YOU

8    BEEN APPOINTED TO PARTICIPATE IN ANY YOURSELF?  ANY MDL'S OR

9    STATE CO-LEADS OR STATE STEERING COMMITTEES?

10        MS. LIU:  WHILE I HAVE WORKED EXTENSIVELY IN JCCP'S

11   AND MDL'S, I HAVE NOT EVER ACTUALLY APPLIED FOR A POSITION

12   UNTIL THIS ONE, AND THAT'S BECAUSE OF MY PASSION FOR THIS

13   PARTICULAR CASE.

14        THE COURT:  IF YOU COULD BE ON A SUBCOMMITTEE, WHAT

15   WOULD IT BE?

16        MS. LIU:  CURRENTLY I WOULD LOVE TO BE ON THE MASTER

17   COMPLAINT COMMITTEE.  MY PAST EXPERIENCE IS I DID A LOT OF

18   DISCOVERY AND DEPOSITIONS AND ALSO EXPERT HANDLING.  SO THOSE

19   WOULD BE THE TEAMS THAT I WOULD BE MOST INTERESTED IN,

20   YOUR HONOR.

21        THE COURT:  AND WHAT IS YOUR BACKGROUND ON THE

22   EXPERTS?

23        MS. LIU:  I RECRUITED A LOT OF THE EXPERTS IN OUR

24   TRANSACTIONAL MESH LITIGATION.  I HANDLED PREPARING THEM FOR

25   DEPOSITIONS, I ALSO TOOK A LOT OF DEFENSE EXPERT DEPOSITIONS.

10:21AM 1   SO THAT WOULD BE MORE OF MY EXPERTISE WITH THE EXPERTS.

10:21AM 2            THE COURT:  OKAY.  ANYTHING ELSE YOU WOULD LIKE ME

10:21AM 3   TO CONSIDER?

10:21AM 4            MS. LIU:  NO, YOUR HONOR.  THANK YOU.  THANK YOU FOR

10:21AM 5   YOUR TIME AND CONSIDERATION.

10:21AM 6            THE COURT:  THANK YOU.

10:21AM 7            MR. MURA:  GOOD MORNING, YOUR HONOR.

10:21AM 8       ANDRE MURA OF GIBBS LAW GROUP HERE IN OAKLAND, CALIFORNIA.

10:21AM 9            THE COURT:  GOOD MORNING.

10:21AM 10           MR. MURA:  I APPLIED FOR A PSC POSITION.  IF THERE'S

10:21AM 11  A PARTICULAR COMMITTEE THAT I THINK WOULD BEST SUIT ME, IT

10:21AM 12  WOULD BE A LAW AND BRIEFING COMMITTEE OR ANY EARLY PLEADING

10:22AM 13  PREPARATION COMMITTEE.

10:22AM 14       I HAVE DONE EXTENSIVE WORK IN VARIOUS MDL'S IN THAT

10:22AM 15  CAPACITY BOTH IN TEXAS, HERE, AND IN 3M WHERE I BOTH SERVED ON

10:22AM 16  THE PSC AND LONG BRIEFING, AND IN 3M I WAS APPOINTED AND

10:22AM 17  APPLIED ONLY FOR THE LONG BRIEFING COMMITTEE.

10:22AM 18       AND IN THAT CAPACITY I'VE ARGUED MAJOR DISPOSITIVE

10:22AM 19  MOTIONS, PREPARED EARLY COMPLAINTS, MASTER COMPLAINTS, SHORT

10:22AM 20  FORM COMPLAINTS, DONE A LOT OF RESEARCH AND HAVE A LOT OF

10:22AM 21  EXPERIENCE MANAGING LARGE WRITING TEAMS IN THAT CAPACITY, WHICH

10:22AM 22  I THINK WOULD BE VERY HELPFUL HERE.

10:22AM 23       I ALSO HAVE AN APPELLATE BACKGROUND.  BEFORE COMING TO

10:22AM 24  GIBBS LAW GROUP, I WORKED IN WASHINGTON, D.C., THE CENTER FOR

10:22AM 25  CONSTITUTIONAL LITIGATION WHERE MY FOCUS WAS ON CUTTING EDGE

ISSUES THAT WERE AFFECTING THE PLAINTIFFS' BAR, AND WE ALSO

REPRESENTED THE AMERICAN ASSOCIATION FOR JUSTICE WHEN IT

APPEARED AS AMICUS BEFORE THE U.S. SUPREME COURT.  SO I HAD A

BIRD'S-EYE VIEW OF ALL SORTS OF CUTTING EDGE, NOVEL ISSUES THAT

WERE AFFECTING THE PLAINTIFFS' BAR.

    I ALSO HAVE EXPERIENCE BRIEFING SECTION 230 AND

ANTI-SLAPP.  I HAVE A CASE PENDING NOW BEFORE JUDGE CHEN

AGAINST THOMSON REUTERS WHICH INVOLVED THOSE ISSUES AT THE

MOTION TO DISMISS STAGE, AND WE PREVAILED ON BOTH OF THOSE

ISSUES, AND THE CASE HAD PROCEEDED TO CLASS CERTIFICATION AND

WHICH IS ACTUALLY DUE TODAY AND WHICH WE WILL FILE LATER TODAY.

    SO I THINK ALL OF THOSE EXPERIENCES PARTICULARLY DEALING

WITH VERY COMPLEX LEGAL BRIEFING ARE ISSUES THAT I'M INTERESTED

IN IN WORKING ON THIS CASE AND WHERE I THINK I CAN CERTAINLY

ADD VALUE.

        THE COURT:  AND HOW DID YOU GET -- HOW DID YOU LEARN

ABOUT THIS?  HOW IS IT THAT YOU BECAME INVOLVED?

        MR. MURA:  I LEARNED ABOUT THIS CASE IN TALKING TO

SOME OF MY COLLEAGUES WHO I KNOW HERE WHO HAVE PRESENTED TODAY.

WE'VE WORKED ON OTHER MDL'S BEFORE, AND SO WE ALWAYS TALK ABOUT

WHAT THE OTHER IS WORKING ON, AND I WAS VERY INTERESTED AND

SORT OF ASKED TO PARTICIPATE BECAUSE OF MY LEGAL BRIEFING

BACKGROUND, AND I HAD TALKED TO THEM ABOUT MY EXPERIENCE

RESEARCHING AND WRITING ABOUT SECTION 230.

    AND ALSO, I'VE ARGUED A LOT OF PREEMPTION MOTIONS BOTH IN

THE PHARMACEUTICAL CONTEXT AND JURISDICTIONAL ISSUES.  WHEN I
WAS AT THE CENTER ONE OF MY LEAD CASES WAS A CASE THAT WENT UP
TO THE SUPREME COURT WHERE I DID THE MERITS BRIEFING AT THAT
STAGE, IT WAS IN THE CATHETER CASE AND SO ALL OF THAT, I THINK,
MADE ME A NATURAL FIT FOR SORT OF BEING ASKED IF I WAS
INTERESTED IN WORKING ON THIS CASE, AND I WAS VERY EXCITED BY
THE INDIVIDUALS WHO WERE WORKING ON THIS CASE.  I HAVE WORKED
WITH THEM BEFORE.

     I WAS EXCITED TO SEE A YOUNG DIVERSE GROUP.  I HAVE SPOKEN
ABOUT DIVERSITY MOST RECENTLY AT A SYMPOSIUM HELD BY THE CIVIL
JUSTICE RESEARCH INITIATIVE HERE AT BERKELEY LAW SCHOOL WHERE I
WAS A PANELIST AND TALKED ABOUT THE IMPORTANCE OF DIVERSITY IN
LEADERSHIP IN MULTIDISTRICT LITIGATION.  I TRIED TO BE ACTIVE
IN MY OWN BACKGROUND.

          THE COURT:  AND WHY DO YOU THINK IT'S IMPORTANT?

          MR. MURA:  I THINK DIVERSITY IS IMPORTANT BECAUSE IT
BRINGS A BROAD SET OF EXPERIENCES AND IT ALSO -- I THINK IT'S
IMPORTANT IN MULTIDISTRICT LITIGATION TO HAVE ATTORNEYS WHO ARE
REPRESENTING SORT OF THESE NATIONAL PROBLEMS TO REFLECT THE
CLIENT BASE THAT THEY'RE REPRESENTING.

          THE COURT:  HOW?  CAN YOU EXPLAIN TO ME YOUR
DIVERSITY?

          MR. MURA:  I'M A FIRST GENERATION AMERICAN.  I'M
ALSO LGBTQ, AND I MOST RECENTLY, FOR EXAMPLE, SERVED AS THE
CO-CHAIR OF THE AMERICAN ASSOCIATION FOR JUSTICES LBGTQ

10:25AM 1    COMMITTEE.  SO I VERY MUCH TRY TO SORT OF WORK WITH OTHER

10:25AM 2    MEMBERS OF THAT COMMUNITY, TO PROMOTE THEM, AND TO PROVIDE THE

10:25AM 3    OPPORTUNITIES IN THE LEGAL FIELD AND SO TO SORT OF LEARN AND

10:26AM 4    NETWORK AS WELL.

10:26AM 5         MY FIRM DID WORK ON A WHITE PAPER THAT WAS PRESENTED

10:26AM 6    THROUGH G.W. LAW SCHOOL, WHICH IS ALSO MY ALMA MATER, THAT

10:26AM 7    TALKED ABOUT THIS AS WELL AND UNDERREPRESENTATION FOR GENDER

10:26AM 8    AND PEOPLE OF COLOR AND LGBTQ.  SO I TRY TO DO WORK IN THAT

10:26AM 9    AREA, AND I'M VERY PROUD OF THAT WORK.

10:26AM 10            THE COURT:  OKAY.  LITIGATION FINANCING?

10:26AM 11            MR. MURA:  OUR FIRM DOES NOT USE LITIGATION

10:26AM 12   FINANCING.

10:26AM 13            THE COURT:  OKAY.  ANYTHING ELSE YOU WANT ME TO

10:26AM 14   THINK ABOUT?

10:26AM 15            MR. MURA:  NO, YOUR HONOR.  UNLESS YOUR HONOR HAS

10:26AM 16   ANY QUESTIONS, I'M HAPPY TO --

10:26AM 17            THE COURT:  NO.

10:26AM 18            MR. MURA:  OKAY.  THANK YOU SO MUCH.

10:26AM 19            THE COURT:  THANK YOU.

10:26AM 20            MS. BOLDT:  GOOD MORNING, YOUR HONOR.

10:26AM 21       PAIGE BOLDT FROM THE LAW FIRM OF WATTS GUERRA.

10:26AM 22            THE COURT:  OKAY.  GOOD MORNING.

10:26AM 23            MS. BOLDT:  GOOD MORNING.  AS I'VE MENTIONED IN MY

10:27AM 24   PAPERS, I HAVE BEEN PRACTICING MASS TORT IN MULTIDISTRICT

10:27AM 25   LITIGATION FOR PRODUCT LIABILITY CASES FOR TEN YEARS,

| | | |
|---|---|---|
| 10:27AM | 1 | REPRESENTING CLIENTS ACROSS THE COUNTRY IN SEVERAL MDL'S BUT |
| 10:27AM | 2 | ONLY APPOINTED IN ONE FOR THE ZANTAC LITIGATION WHERE I AM |
| 10:27AM | 3 | CURRENTLY WORKING ON BOTH DEPOSITION DISCOVERY AND BELLWETHER |
| 10:27AM | 4 | LITIGATION OR COMMITTEE STRATEGY AND WOULD PRIMARILY SEE MY |
| 10:27AM | 5 | ROLE, AS A CO-LEAD APPLICANT MENTIONED, YOU GET EXPERTS IN |
| 10:27AM | 6 | CERTAIN DEFENDANTS, YOU GET PEOPLE WHO SPECIALIZE IN CERTAIN |
| 10:27AM | 7 | DISCOVERY MATTERS AND GOING THROUGH THE DOCUMENTS THEMSELVES |
| 10:27AM | 8 | AND BECOMING THE GO-TO PERSON ON THOSE TOPICS, AND I COULD |
| 10:27AM | 9 | DEFINITELY SEE MYSELF DOING THAT FOR EITHER DISCOVERY OR I |
| 10:27AM | 10 | IMAGINE THERE'S GOING TO BE A LOT OF ESI DISCUSSIONS AS WELL |
| 10:27AM | 11 | AND I WOULD ASSIST IN THAT IN THIS LITIGATION. |
| 10:27AM | 12 | THE COURT: AND YOU SAID YOU'RE ON THE ZANTAC |
| 10:27AM | 13 | COMMITTEE? |
| 10:27AM | 14 | MS. BOLDT: I AM. |
| 10:27AM | 15 | THE COURT: OKAY. AND WHAT IS YOUR CURRENT ROLE |
| 10:27AM | 16 | THERE AND DO YOU HAVE TIME? |
| 10:28AM | 17 | MS. BOLDT: YES. I'M ON THE BELLWETHER COMMITTEE, |
| 10:28AM | 18 | AND I'M A MEMBER OF ASSISTING WITH THE SCIENCE TEAM AS WELL AS |
| 10:28AM | 19 | THE DISCOVERY TEAM. AND I CERTAINLY HAVE TIME. |
| 10:28AM | 20 | WE HAVE GONE THROUGH SOME OF THE DAUBERT ISSUES, AND WE'RE |
| 10:28AM | 21 | WAITING ON MOTIONS THERE, BUT WE HAVE A WHOLE COMMITTEE PEOPLE |
| 10:28AM | 22 | ON THE BELLWETHER GROUP. AS WE GET INTO MORE CASE SPECIFIC |
| 10:28AM | 23 | TOPICS, I IMAGINE THAT WORK WILL BE DISTRIBUTED EVENLY AMONGST |
| 10:28AM | 24 | THAT FULL COMMITTEE. |
| 10:28AM | 25 | THE COURT: SO YOU SAID THAT YOU HADN'T BEEN |

APPOINTED EXCEPT FOR <u>ZANTAC</u>?

       MS. BOLDT:  I'VE ONLY BEEN POINTED BY THE COURT IN

<u>ZANTAC</u>.  I'VE DONE A LOT AD HOC PROJECTS FOR OTHER COMMITTEES

OR FOR OTHER MDL'S.

       THE COURT:  OKAY.  SO THE OTHER FOUR THAT ARE LISTED

ARE JUST AD HOC WORK?

       MS. BOLDT:  CORRECT.

       THE COURT:  I'M SORRY, YOU SAID WHAT?

       MS. BOLDT:  AD HOC WORK, YES, YOUR HONOR.

       THE COURT:  LITIGATION FINANCE?

       MS. BOLDT:  WE DO NOT HAVE LITIGATION FINANCE FOR

THIS CASE, YOUR HONOR.  MY UNDERSTANDING IS WE DON'T HAVE ANY

CURRENTLY, BUT I DON'T KNOW IF WE'VE DONE THAT IN THE PAST.

       THE COURT:  AND YOU DO LIVE IN SAN ANTONIO.

       MS. BOLDT:  I DON'T ANYMORE.  I MOVED UP TWO YEARS

AGO.  I WAS IN FORT WORTH.

       THE COURT:  YOUR LETTERHEAD SAYS THAT.

       MS. BOLDT:  YES.  I WORK REMOTELY, SO I TRY NOT TO

PUT MY HOME ADDRESS.

       THE COURT:  THAT MAKES SENSE.

   ALL RIGHT.  ANYTHING ELSE THAT YOU WANT ME TO CONSIDER IN

TERMS OF YOUR APPLICATION?

       MS. BOLDT:  NO, YOUR HONOR.  IT SEEMS LIKE YOU'VE

REVIEWED IT EXTENSIVELY.

       THE COURT:  ALL RIGHT.  THANK YOU.

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
| 10:30AM  | 1  | MR. BILSBORROW:  GOOD MORNING, YOUR HONOR.                |
| 10:30AM  | 2  | JAMES BILSBORROW OF WEITZ AND LUXENBERG.                  |
| 10:30AM  | 3  | THE COURT:  GOOD MORNING.  OKAY.  GO AHEAD.               |
| 10:30AM  | 4  | MR. BILSBORROW:  YOUR HONOR, I'M APPLYING FOR A           |
| 10:30AM  | 5  | POSITION WITH THE PLAINTIFFS STEERING COMMITTEE IN THIS CASE. |
| 10:30AM  | 6  | I HAVE EXPERIENCE PLAYING A ROLE ON THE PLAINTIFFS' STEERING |
| 10:30AM  | 7  | COMMITTEE IN THE DICAMBA HERBICIDES LITIGATION.  D-I-C-A-M-B-A, |
| 10:30AM  | 8  | HERBICIDES LITIGATION.                                    |
| 10:30AM  | 9  | IN THAT LITIGATION I WAS A MEMBER OF THE PLAINTIFFS'      |
| 10:30AM  | 10 | EXECUTIVE COMMITTEE.  I OVERSAW AND ORGANIZED ALL OF THE  |
| 10:30AM  | 11 | PERCIPIENT COMPANY DEPOSITIONS OF THE DEFENDANTS, I TOOK MANY |
| 10:30AM  | 12 | OF THOSE DEPOSITIONS MYSELF, BUT I ALSO ORGANIZED THAT EFFORT |
| 10:30AM  | 13 | ON THE PLAINTIFFS' SIDE.  I ALSO NEGOTIATED MANY OF THE EARLY |
| 10:30AM  | 14 | DISCOVERY ORDERS, THE SAME TYPES OF ORDERS THAT WOULD BE  |
| 10:30AM  | 15 | RELEVANT HERE IN THIS CASE, PROTECTIVE ORDERS, ESI PROTOCOLS, |
| 10:30AM  | 16 | TARP PROTOCOLS, I WAS PART OF THAT TEAM, I CO-LED THAT TEAM. |
| 10:31AM  | 17 | IN ADDITION, I HAVE EXTENSIVE EXPERIENCE IN LAW AND       |
| 10:31AM  | 18 | BRIEFING COMMITTEES.  I CLERKED FOR TWO FEDERAL JUDGES, AND |
| 10:31AM  | 19 | DURING MY CLERKSHIP IN THE UNITED STATES DISTRICT COURT IN |
| 10:31AM  | 20 | PENNSYLVANIA, WE HAD A LARGE ANTITRUST MDL, SO I'M PRETTY |
| 10:31AM  | 21 | FAMILIAR WITH HOW JUDGES THINK ABOUT THESE THINGS BEHIND THE |
| 10:31AM  | 22 | SCENES.                                                   |
| 10:31AM  | 23 | IN ANY OF THOSE ROLES, I THINK I WOULD BE VALUE ADDED IN  |
| 10:31AM  | 24 | AN MDL CASE SUCH AS THIS.                                 |
| 10:31AM  | 25 | I WOULD ALSO SAY THAT I THINK THE LEADERSHIP STRUCTURE    |

| | | |
|---|---|---|
| 10:31AM | 1 | THAT HAS BEEN PROPOSED HERE, WHILE IT MAY BE LARGE, IT IS |
| 10:31AM | 2 | APPROPRIATE.  MY FIRM HAS BEEN INVOLVED IN MANY OF THE LARGEST |
| 10:31AM | 3 | MASS TORT LITIGATIONS OVER THE LAST TWO DECADES AND THEY |
| 10:31AM | 4 | REQUIRE A LOT OF WORK, EVEN IF THEY DON'T SEEM LIKE THAT AT THE |
| 10:31AM | 5 | FOREFRONT, I KNOW IN THIS CASE EACH ONE OF THE PROPOSED |
| 10:31AM | 6 | CO-LEADS HAS BEEN ON THE PHONE, HAS SPENT COUNTLESS HOURS ON |
| 10:31AM | 7 | THE PHONE WITH PLAINTIFFS' COUNSEL TRYING TO ENSURE THAT WE |
| 10:31AM | 8 | HAVE A UNIFIED STRATEGY, WE'RE NOT ONE LAW FIRM, WE CAN'T -- WE |
| 10:32AM | 9 | DON'T GET MARCHING ORDERS FROM ONE OR TWO MANAGING PARTNERS. |
| 10:32AM | 10 | AND SO IT TAKES A LOT OF WORK FOR THE STRATEGY TO COME TOGETHER |
| 10:32AM | 11 | AND TO COALESCE. |
| 10:32AM | 12 | I KNOW EACH -- I'VE PERSONALLY SPOKEN WITH EACH ONE OF THE |
| 10:32AM | 13 | CO-LEADS IN THIS CASE AND STRATEGIZED WITH THEM, AND SO I THINK |
| 10:32AM | 14 | THEY'VE DONE A TREMENDOUS JOB UP-FRONT, AND I KNOW THEY'LL |
| 10:32AM | 15 | CONTINUE TO DO A TREMENDOUS JOB IF APPOINTED. |
| 10:32AM | 16 | MY FIRM DOES NOT TAKE LITIGATION FUNDING. |
| 10:32AM | 17 | AND I'M HAPPY TO ANSWER ANY QUESTIONS THAT YOUR HONOR HAS. |
| 10:32AM | 18 | THE COURT:  HAVE YOU LITIGATED IN THE NORTHERN |
| 10:32AM | 19 | DISTRICT? |
| 10:32AM | 20 | MR. BILSBORROW:  YES, YOUR HONOR.  MY LAW PARTNER, |
| 10:32AM | 21 | ROBIN GREENWALD, IS CO-LEAD COUNSEL IN A ROUNDUP LITIGATION. |
| 10:32AM | 22 | I'VE WORKED EXTENSIVELY ON THAT LITIGATION.  I WORKED UP |
| 10:32AM | 23 | SEVERAL OF THE SCIENTIFIC EXPERTS, AND I'M VERY FAMILIAR WITH |
| 10:32AM | 24 | AT LEAST JUDGE CHHABRIA'S OR HIS PRACTICES IN HIS COURTROOM. |
| 10:33AM | 25 | THE COURT:  OKAY.  AND WHY THIS CASE? |

|         |    |                                                                    |
|---------|----|--------------------------------------------------------------------|
| 10:33AM | 1  | MR. BILSBORROW:  YOUR HONOR, THIS CASE IS                          |
| 10:33AM | 2  | INTERESTING TO ME FOR A LOT OF THE REASONS THAT IT'S BEEN          |
| 10:33AM | 3  | ENUNCIATED HERE ALREADY.  I THINK IT'S AN INCREDIBLY IMPORTANT     |
| 10:33AM | 4  | ISSUE.                                                             |
| 10:33AM | 5  | WHILE I PERSONALLY HAVEN'T DONE A LOT OF LITIGATION IN THE         |
| 10:33AM | 6  | SOCIAL MEDIA SPACE, I HAVE A LOT OF EXPERIENCE IN PRODUCTS         |
| 10:33AM | 7  | CASES AND THAT COVER A WIDE RANGE OF DIFFERENT PRODUCTS, CROP      |
| 10:33AM | 8  | PROTECTION PRODUCTS, CARS, COSMETICS, AND I SEE SIMILARITIES       |
| 10:33AM | 9  | WITH THIS AND THOSE CASES, BIG DEFENDANTS, A GROUNDBREAKING        |
| 10:33AM | 10 | PRODUCT THAT IS HAVING HUGE IMPACTS ON SOCIETY, AND THAT'S THE     |
| 10:33AM | 11 | REASON THAT I BECAME A PLAINTIFFS' LAWYER, TO WORK AND             |
| 10:33AM | 12 | REPRESENT CLIENTS WHO GOT INJURED BY THOSE TYPES OF PRODUCTS.      |
| 10:33AM | 13 | THE COURT:  THE DEFENDANTS SAY IT'S NOT A PRODUCT.                 |
| 10:33AM | 14 | WHY DO YOU THINK IT IS A PRODUCT?                                  |
| 10:33AM | 15 | MR. BILSBORROW:  WELL, IT'S A PRODUCT BECAUSE, YOU                 |
| 10:34AM | 16 | KNOW, IT'S REALLY NO DIFFERENT THAN ANY OTHER "THING," FOR LACK    |
| 10:34AM | 17 | OF A BETTER WORD, THAT INDIVIDUALS USE, RIGHT, AND INTERACT        |
| 10:34AM | 18 | WITH AND IT'S SOMETHING THAT BECOMES AN INTEGRAL PART OF THEIR     |
| 10:34AM | 19 | LIFE?                                                              |
| 10:34AM | 20 | SO I THINK THERE'S CASE LAW IN VARIOUS STATES THAT HAVE           |
| 10:34AM | 21 | HELD THAT THIS TYPE OF PRODUCT IS A PRODUCT.                       |
| 10:34AM | 22 | THE DEFENDANTS CALL THEMSELVES PRODUCT ENGINEERS, THEY            |
| 10:34AM | 23 | REFER TO THIS AS A PRODUCT, AND I THINK THROUGH THE BRIEFING WE    |
| 10:34AM | 24 | WILL SHOW THAT THIS IS A PRODUCT.                                  |
| 10:34AM | 25 | THE COURT:  OKAY.                                                  |

10:34AM 1      MR. BILSBORROW:  THANK YOU, YOUR HONOR.

10:34AM 2      MR. BERGMAN:  MAY IT PLEASE THE COURT, I'M

10:34AM 3  MATTHEW BERGMAN, AND I'M FOUNDER OF THE SOCIAL MEDIA VICTIMS

10:34AM 4  LAW CENTER.

10:34AM 5      I FOUNDED THIS LAW FIRM A LITTLE OVER A YEAR AGO IN

10:35AM 6  RESPONSE TO THE MENTAL HEALTH CRISIS THAT OUR CHILDREN ARE

10:35AM 7  EXPERIENCING.  I WANTED TO TAKE MY 25 YEARS OF EXPERIENCE

10:35AM 8  REPRESENTING VICTIMS OF PRODUCT LIABILITY AND TRY TO DO

10:35AM 9  SOMETHING SO WE STOP HAVING THE KIND OF VICTIMS THAT WE HAVE.

10:35AM 10      I'M DEEPLY INVOLVED IN THE LITIGATION.  I CURRENTLY

10:35AM 11  REPRESENT 1,163 PARENTS WHOSE CHILDREN HAVE EITHER PASSED AWAY

10:35AM 12  THROUGH SOCIAL MEDIA OR HAVE HAD A DIAGNOSIS AND SEEN BY A

10:35AM 13  MENTAL HEALTH OR A MEDICAL PRACTITIONER IN REGARD TO THAT.

10:35AM 14      I FILED THE FIRST CASE INVOLVING YOUTH MENTAL HEALTH AND

10:35AM 15  SOCIAL MEDIA, THE FIRST PRODUCT LIABILITY CASE IN THIS

10:35AM 16  DISTRICT.  THAT WAS THE RODRIGUEZ CASE.  OUR FIRM WAS

10:35AM 17  RESPONSIBLE FOR DEVELOPING THE PRODUCT LIABILITY THEORIES THAT

10:35AM 18  WE BELIEVE ARE RESONANT, AND WE'VE BEEN ABLE TO, THROUGH THIS

10:35AM 19  WORK, RETAIN SOME OF THE LEADING EXPERTS IN THE FIELD.  WE'RE

10:36AM 20  WORKING VERY CLOSELY WITH THESE EXPERTS ALREADY IN DEVELOPING

10:36AM 21  VARIOUS FORMS OF EXPERT TESTIMONY FROM ALGORITHMIC DESIGN TO

10:36AM 22  SUICIDALITY TO YOUTH MENTAL HEALTH TO ADDICTION.

10:36AM 23      TOGETHER WITH MY PARTNER, LAURA MARQUEZ-GARRETT, WE HAVE

10:36AM 24  DEVELOPED A SPOKE COMPUTER PLATFORM THAT CAN AMALGAMATE

10:36AM 25  MULTIPLE SOCIAL MEDIA PLATFORMS INVOLVING A CHILD'S SOCIAL

10:36AM 1    MEDIA DATA AND PULL OUT MALIGN CONTENT AND VARIOUS OTHER THINGS

10:36AM 2    THAT DEMONSTRATE CAUSATION.

10:36AM 3        YOU KNOW, MY BACKGROUND IS NOT IN MASS TORT PER SE.  MY

10:36AM 4    BACKGROUND HAS BEEN AS A PRODUCT LIABILITY LAWYER ESSENTIALLY

10:36AM 5    POURING NEW WINE IN OLD BOTTLES ADAPTING THE LAW.  WE'RE IN A

10:36AM 6    NEW FIELD OF LAW THAT IS GOING TO BE CHALLENGING FOR MY

10:36AM 7    COLLEAGUES ON THE OTHER SIDE, AND IT'S GOING TO BE CHALLENGING

10:37AM 8    FOR THE COURT, AND IT'S GOING TO BE CHALLENGING FOR US.

10:37AM 9        I THINK THAT MY 25 YEARS OF WORK THAT HAS BEEN

10:37AM 10   DEMONSTRATED BY MY APPELLATE RECORD INDICATES THAT I HAVE THE

10:37AM 11   ABILITY TO BE CREATIVE AND ADAPT TRADITIONAL CONCEPTS OF

10:37AM 12   PRODUCT LIABILITY TO THIS VERY UNIQUE PROBLEM THAT WE HAVE AS A

10:37AM 13   SOCIETY.

10:37AM 14       I AM DEEPLY COMMITTED TO THIS WORK, JUDGE.  I HAVE NEVER

10:37AM 15   IN 30 YEARS CONFRONTED AND DEALT WITH PLAINTIFFS LESS CONCERNED

10:37AM 16   ABOUT MONEY AND MORE CONCERNED ABOUT DOING SOMETHING, AND SO

10:37AM 17   I'VE DEVOTED -- I'VE TAKEN UP COUNSEL STATUS WITH MY FORMER LAW

10:37AM 18   FIRM AND WOULD LIKE TO DEVOTE THE NEXT 5 TO 10 YEARS OF MY

10:37AM 19   CAREER MAKING A DIFFERENCE.

10:37AM 20       THE COURT:  THANK YOU, MR. BERGMAN.

10:37AM 21       YOUR APPLICATION IS DIFFERENT THAN OTHERS, BUT IT SEEMS

10:37AM 22   LIKE THIS IS ALL YOU DO.

10:37AM 23       MR. BERGMAN:  I AM DOING A LITTLE BIT OF NEGOTIATING

10:37AM 24   FOR MY PRIOR FIRM, BUT, YEAH, THIS IS ALL I DO.

10:37AM 25       THE COURT:  OKAY.  THANK YOU, SIR.

10:37AM  1          MR. BERGMAN:  JUDGE, I DO NOT -- WELL, I AM MY OWN

10:38AM  2    LITIGATION FUNDING.

10:38AM  3          THE COURT:  THAT WAS MY SENSE.

10:38AM  4       (LAUGHTER.)

10:38AM  5          THE COURT:  GOOD MORNING.

10:38AM  6          MS. GOLDBERG:  GOOD MORNING, YOUR HONOR.

10:38AM  7       I'M CARRIE GOLDBERG OF C.A. GOLDBERG PLLC IN BROOKLYN.

10:38AM  8    I'M APPLYING FOR A PSC POSITION.

10:38AM  9          SIX MONTHS AGO I DIDN'T EVEN KNOW WHAT THE LETTERS MDL

10:38AM  10   STOOD FOR, BUT REPRESENTING VICTIMS AGAINST BIG TECH IS MY

10:38AM  11   LIFE'S WORK.  I FOUNDED MY LAW FIRM IN 2014 AFTER I HAD BEEN

10:38AM  12   THE VICTIM OF A MAN WHO WAS AGGRESSING AGAINST ME ON SOCIAL

10:38AM  13   MEDIA.  AND I BASICALLY GO TO SLEEP EVERY NIGHT THINKING ABOUT

10:38AM  14   SECTION 230, AND I WAKE UP EVERY MORNING THINKING ABOUT IT.

10:39AM  15          MY CASE HERRICK V. GRINDR IN 2017 WAS THE FIRST IN THE

10:39AM  16   COUNTRY TO BRING -- TO SUE A PLATFORM FOR DEFECTIVE DESIGN AND

10:39AM  17   MANUFACTURE, AND WE LOST UNDER SECTION 230 IN A REALLY MAJOR

10:39AM  18   WAY.  WE WENT UP AND APPEALED IT TO THE SECOND CIRCUIT, TRIED

10:39AM  19   TO GET CERT FROM THE SUPREME COURT, LOST THAT, BUT THEN THAT

10:39AM  20   CASE WAS CITED IN THE MALWAREBYTES DISCUSSION BY

10:39AM  21   JUSTICE CLARENCE THOMAS AS ONE OF THE REASONS THAT SECTION 230

10:39AM  22   HAS BEEN BLOATED WELL BEYOND WHAT THE PEOPLE INTENDED IN 1996.

10:39AM  23          SINCE THEN MY CASE A.M. VERSUS OMEGLE OVERCAME A

10:39AM  24   SECTION 230 12(B)(6) MOTION, AND IT'S ONE OF THE ONLY ONES IN

10:39AM  25   THE COUNTRY THAT HAS.

| | | |
|---|---|---|
| 10:39AM | 1 | THE COURT:  SO YOU'VE -- AND THAT WAS JUDGE MOSMAN'S |
| 10:40AM | 2 | DECISION? |
| 10:40AM | 3 | MS. GOLDBERG:  YES.  AND BY THE WAY, WE'RE GOING TO |
| 10:40AM | 4 | BE ARGUING THE PRODUCT VERSUS SERVICE ISSUE IN ABOUT A MONTH |
| 10:40AM | 5 | BECAUSE DEFENDANTS FORGOT TO BRING THAT IN THE ORIGINAL |
| 10:40AM | 6 | 12(B)(6). |
| 10:40AM | 7 | AND I WILL ADD ON TO MY COLLEAGUE'S STATEMENT THAT THESE |
| 10:40AM | 8 | COMPANIES ARE BEING SUED AS PRODUCTS.  THEY MAY ALSO BE |
| 10:40AM | 9 | SERVICES, BUT THESE ARE TANGIBLE THINGS THAT WE CAN SEE AND |
| 10:40AM | 10 | HEAR AND MOVE AND WE'RE TALKING ABOUT -- AND THEY'RE |
| 10:40AM | 11 | DOWNLOADABLE -- I'LL SAVE THAT FOR THE BRIEFING BUT -- |
| 10:40AM | 12 | THE COURT:  OKAY.  LITIGATION FUNDING? |
| 10:40AM | 13 | MS. GOLDBERG:  NO LITIGATION FUNDING. |
| 10:40AM | 14 | LIKE MR. BERGMAN, I OWN MY OWN SHOP AND FUND EVERYTHING |
| 10:40AM | 15 | MYSELF. |
| 10:40AM | 16 | THE COURT:  AND IN TERMS OF SUBCOMMITTEE WORK, WHAT |
| 10:40AM | 17 | WOULD YOU DO? |
| 10:40AM | 18 | MS. GOLDBERG:  I'D LIKE TO BE WORKING ON THE LAW AND |
| 10:41AM | 19 | THE MOTIONS AND MAKING THE MOST GORGEOUS MASTER COMPLAINT |
| 10:41AM | 20 | IMAGINABLE. |
| 10:41AM | 21 | AND BY THE WAY, I ALSO THINK WE NEED THIS BIG GROUP. |
| 10:41AM | 22 | WE'RE DEALING WITH THE BIGGEST COMPANIES IN THE HISTORY OF THE |
| 10:41AM | 23 | WORLD, AND WE NEED THIS KIND OF POWER ON OUR SIDE. |
| 10:41AM | 24 | THE COURT:  OKAY.  THANK YOU. |
| 10:41AM | 25 | MS. GOLDBERG:  THANK YOU. |

| | | |
|---|---|---|
| 10:41AM | 1 | THE COURT: WE'LL GO THROUGH THIS NEXT SET, AND |
| 10:41AM | 2 | WE'LL TAKE A BREAK SO MY COURT REPORTER GETS A BREAK. |
| 10:41AM | 3 | MS. PAULOS: MY NAME IS EMMIE PAULOS, AND I'M FROM |
| 10:41AM | 4 | LEVIN, PAPANTONIO & RAFFERTY. |
| 10:41AM | 5 | THE COURT: GOOD MORNING. |
| 10:41AM | 6 | MS. PAULOS: HI. GOOD MORNING. |
| 10:41AM | 7 | I AM APPLYING FOR THE PLAINTIFFS' STEERING COMMITTEE |
| 10:41AM | 8 | POSITION BECAUSE I BELIEVE AND HOPE THAT MY BACKGROUND COULD |
| 10:41AM | 9 | LEND ITSELF USEFUL TO THIS PARTICULAR LITIGATION. |
| 10:42AM | 10 | FOR SEVERAL YEARS NOW I'VE BEEN WORKING WITH VICTIMS OF |
| 10:42AM | 11 | HUMAN TRAFFICKING AND IN THOSE CASES WE DO COME ACROSS ISSUES |
| 10:42AM | 12 | CONCERNING SECTION 230 OF THE C.D.A. |
| 10:42AM | 13 | ADDITIONALLY, I'VE HAD EXPOSURE AND A PRETTY SOLID |
| 10:42AM | 14 | UNDERSTANDING OF HOW TO DEAL WITH VERY SENSITIVE ISSUES. IN |
| 10:42AM | 15 | TERMS OF DISCOVERY, OFTENTIMES THE CASES THAT DO INVOLVE SEXUAL |
| 10:42AM | 16 | EXPLOITATION YOU'LL COME ACROSS WHAT IS CALLED CSAM, THAT'S |
| 10:42AM | 17 | CHILD SEXUAL ABUSE MATERIALS, AND WE WORK WITH VARIOUS |
| 10:42AM | 18 | ORGANIZATIONS IN THAT RESPECT, SO I FEEL LIKE THAT IS A UNIQUE |
| 10:42AM | 19 | QUALIFICATION THAT I WOULD BE ABLE TO BRING. |
| 10:42AM | 20 | ADDITIONALLY, WE DO WORK WITH VICTIMS OF HUMAN |
| 10:42AM | 21 | TRAFFICKING, SO WE DO HAVE A VERY TRAUMA INFORMED APPROACH WITH |
| 10:42AM | 22 | DEALING WITH OUR CLIENTS. |
| 10:43AM | 23 | HERE THE MAJORITY OF THE CLIENTS ARE EITHER CHILDREN OR |
| 10:43AM | 24 | YOUNG ADOLESCENTS AND THEY HAVE VERY SEVERE INJURIES IN TERMS |
| 10:43AM | 25 | OF SUICIDE OR SUICIDE IDEATION, SELF-CUTTING, EATING DISORDERS, |

| | | |
|---|---|---|
| 10:43AM | 1 | AND I DO FEEL THAT EXPERTISE OF HAVING THAT TRAUMA INFORMED |
| 10:43AM | 2 | APPROACH IS -- WOULD LEND ITSELF WELL TO THIS DEMOGRAPHIC OF |
| 10:43AM | 3 | CLIENTS, ESPECIALLY THE CHILDREN THAT WE ARE WORKING WITH IN |
| 10:43AM | 4 | THIS LITIGATION. |
| 10:43AM | 5 | ADDITIONALLY, I DO HAVE THE TIME TO FULLY COMMIT MYSELF, |
| 10:43AM | 6 | MY SKILLS AND MY RESOURCES, TO THIS LITIGATION. |
| 10:43AM | 7 | TO ANSWER YOUR QUESTION ABOUT LEADERSHIP STRUCTURE, I DO |
| 10:43AM | 8 | FEEL LIKE HAVING THE VARIOUS COMMITTEES WITHIN THE ORGANIZATION |
| 10:43AM | 9 | WOULD BE BENEFICIAL. |
| 10:43AM | 10 | I KNOW IF WE WERE TO PUT IN THE FOREFRONT THE MOTION TO |
| 10:43AM | 11 | DISMISS, THERE WAS WORK THAT STILL REMAINS TO BE DONE. I THINK |
| 10:44AM | 12 | MY COLLEAGUES HAVE ADDRESSED DISCOVERY, BUT I ALSO THINK THAT |
| 10:44AM | 13 | WORKING WITH EXPERTS IS VERY IMPORTANT. |
| 10:44AM | 14 | I THINK THAT IT WILL HELP NARROW THE ISSUES IN THIS |
| 10:44AM | 15 | LITIGATION. |
| 10:44AM | 16 | ADDITIONALLY, I THINK THAT THE WORK NEEDS TO BE DONE IN |
| 10:44AM | 17 | CASE WE DO, AND HOPEFULLY WE WILL, OVERCOME THE MOTION TO |
| 10:44AM | 18 | DISMISS SO THAT THERE ISN'T ANY DELAY TIME IN THAT THE WORK HAS |
| 10:44AM | 19 | BEEN DONE AND WE ARE READY TO CHARGE FORWARD BECAUSE THIS IS A |
| 10:44AM | 20 | VERY SENSITIVE MATTER. WE CAN'T WASTE A SECOND TO HELP THESE |
| 10:44AM | 21 | INDIVIDUALS AND TO EFFECTUATE CHANGE IF CHANGE IS POSSIBLE. |
| 10:44AM | 22 | THE COURT: AND THEN YOU REPRESENT TWO OF THE CASES |
| 10:44AM | 23 | OR MORE THAN TWO? |
| 10:44AM | 24 | MS. PAULOS: TWO OF THE CASES. I DO HAVE -- OUR |
| 10:45AM | 25 | FIRM HAS ACTIVELY BEEN INVOLVED FOR SEVERAL MONTHS. I AM |

| | | |
|---|---|---|
| 10:45AM | 1 | ACTIVELY WORKING WITH OTHER FAMILIES CAREFULLY VETTING CASES |
| 10:45AM | 2 | AND SEEING IF THEY'RE A GOOD FIT FOR THIS LITIGATION, SO I DO |
| 10:45AM | 3 | ANTICIPATE THAT WE WILL BE FILING MORE CASES IN THE FUTURE. |
| 10:45AM | 4 | THE COURT:  LITIGATION FUNDING? |
| 10:45AM | 5 | MS. PAULOS:  NO LITIGATION FUNDING, YOUR HONOR. |
| 10:45AM | 6 | THE COURT:  COMMITTEE PREFERENCE? |
| 10:45AM | 7 | MS. PAULOS:  COMMITTEE?  I WOULD LIKE TO PARTICIPATE |
| 10:45AM | 8 | ON THE DISCOVERY COMMITTEE AND EXPERT COMMITTEE. |
| 10:45AM | 9 | THE COURT:  OKAY. |
| 10:45AM | 10 | MS. PAULOS:  YOUR HONOR, CAN I JUST RAISE ONE MORE |
| 10:45AM | 11 | ISSUE? |
| 10:45AM | 12 | WE DO HAVE A COLLEAGUE WHO IS ON ZOOM, MICHAEL WEINKOWITZ. |
| 10:45AM | 13 | HE WAS SUPPOSED TO BE HERE IN PERSON.  UNFORTUNATELY, HE TESTED |
| 10:45AM | 14 | POSITIVE FOR COVID. |
| 10:45AM | 15 | I WOULD JUST LIKE TO RELAY THAT HE IS AVAILABLE IN CASE |
| 10:45AM | 16 | YOUR HONOR WOULD LIKE TO HAVE HIM RESPOND AS WELL TO HIS |
| 10:45AM | 17 | APPLICATION FOR LEADERSHIP. |
| 10:46AM | 18 | THE COURT:  OKAY. |
| 10:46AM | 19 | MS. PAULOS:  THANK YOU. |
| 10:46AM | 20 | THE COURT:  NEXT. |
| 10:46AM | 21 | MR. WARREN:  GOOD MORNING, YOUR HONOR. |
| 10:46AM | 22 | MY NAME IS PREVIN WARREN WITH THE LAW FIRM MOTLEY RICE. |
| 10:46AM | 23 | IT'S MY PRIVILEGE TO BRING UP THE REAR OF THIS MORNING'S CONGA |
| 10:46AM | 24 | LINE. |
| 10:46AM | 25 | I THINK I HAVE THE DISTINCTION OF BEING THE NEWEST MEMBER |

10:46AM  1    OF THE PLAINTIFFS' BAR IN THE COURTROOM.  AFTER A STINT IN THE

10:46AM  2    FEDERAL GOVERNMENT AND A CLERKSHIP ON THE D.C. CIRCUIT FOR

10:46AM  3    MERRICK GARLAND, I SPENT MOST OF MY CAREER AT A CORPORATE STINT

10:46AM  4    FROM JENNER & BLOCK.

10:46AM  5         THESE CASES AND THE IMPACT THAT THEY'RE HAVING ON KIDS

10:46AM  6    LIKE MY KIDS ARE THE REASON I SWITCHED SIDES AND THE REASON I

10:46AM  7    JOINED MOTLEY RICE.

10:46AM  8         MY HOPE IS THAT MY PERSPECTIVE AS A FORMER BIG LAW PARTNER

10:46AM  9    WILL BRING ADDED DIVERSITY OF EXPERIENCE TO THE PSC, WILL HELP

10:46AM  10   ME WORK WITH MY COLLEAGUES ON THE OTHER SIDE AND IN AS

10:46AM  11   ECONOMICAL AND EXPEDITIOUS MANNER AS POSSIBLE CONSISTENT WITH

10:46AM  12   THE GUIDELINES OF PROFESSIONAL CONDUCT IN THIS COURT.

10:47AM  13        I KNOW HOW TO DESIGN A WINNING LEGAL STRATEGY IN COMPLEX

10:47AM  14   TECH CASES.  THAT'S WHAT I DID IN MY LAST JOB.  I TRIED AND I

10:47AM  15   WON NINE FIGURE CASES AGAINST TECH GIANTS LIKE GOOGLE,

10:47AM  16   IHEART MEDIA, AND SIRIUSXM, AND I REPRESENTED CORPORATE CLIENTS

10:47AM  17   IN THE TECH SPACE LIKE GENERAL DYNAMICS INFORMATION TECHNOLOGY

10:47AM  18   IN EQUALLY SIGNIFICANT MATTERS.

10:47AM  19        I THINK OUR SIDE CAN PREVAIL ON THIS MDL IF WE KEEP THREE

10:47AM  20   THINGS IN MIND:

10:47AM  21        FIRST ARE CAUSES OF ACTION.  WE NEED TO CHART A PATH

10:47AM  22   THROUGH SECTION 230 ON THE ONE HAND, BUT ALSO THE

10:47AM  23   FIRST AMENDMENT ON THE OTHER.

10:47AM  24        THESE ARE NOT CASES ABOUT THE SPEECH OF THIRD PARTIES ON

10:47AM  25   SOCIAL MEDIA PLATFORMS, AND THEY'RE ALSO NOT CASES ABOUT THE

10:47AM 1    EDITORIAL JUDGMENT OR EXPRESSIONS OF THE DEFENDANTS.

10:47AM 2        THEY'RE CASES ABOUT BAD CODE, PLAIN AND SIMPLE, AND THE

10:47AM 3    DEFENDANTS' FAILURE TO WARN THE PUBLIC ABOUT THE CONSEQUENCES

10:47AM 4    THAT THAT BAD CODE HAS HAD FOR OUR CHILDREN.  MOTLEY RICE'S

10:48AM 5    COMPLAINT ON BEHALF OF NICHOLAS AND ROSEMARY CHOBANI HAS PLED

10:48AM 6    THAT UNEQUIVOCALLY AND ANY MASTER COMPLAINT THAT I'M INVOLVED

10:48AM 7    IN WOULD DO THE SAME.

10:48AM 8        SECOND, OUR SIDE NEEDS TO STAY FOCUSSED ON THE BIGGER

10:48AM 9    PICTURE, AND THAT'S WHAT THE TEAM OF 20 ATTORNEYS AT

10:48AM 10   MOTLEY RICE AND I HAVE BEEN DOING SINCE WE GOT INVOLVED IN

10:48AM 11   THESE CASES.

10:48AM 12       WE WERE THE ONLY FIRM GRANTED ACCESS TO THE NORTH LONDON

10:48AM 13   CORONER'S INQUEST OF MOLLY RUSSELL WHICH HELD THAT THAT

10:48AM 14   14-YEAR-OLD GIRL DIED NOT ONLY BY SUICIDE BUT BY THE

10:48AM 15   CONSEQUENCES OF HER ADDICTION TO SOCIAL MEDIA.  THAT GAVE US A

10:48AM 16   VERY UNIQUE OPPORTUNITY TO OBSERVE THAT AS WITNESSES AND SEE

10:48AM 17   EVIDENCE AND WHICH HAS GIVEN US AN ABILITY TO PREPARE FOR THIS

10:48AM 18   CASE.

10:48AM 19       TO MY KNOWLEDGE, WE'RE ALSO THE ONLY FIRM TO SUCCESSFULLY

10:48AM 20   SUBPOENA THE COMPLETE UNREDACTED SET OF FRANCES HAUGEN'S

10:48AM 21   DOCUMENTS WHICH WERE OBTAINED FROM META, AND WE'RE HOPEFUL THAT

10:48AM 22   WE'LL BE IN THE POSITION TO NEGOTIATE A PROTECTIVE ORDER WITH

10:48AM 23   THE OTHER SIDE AND SHARE THOSE WITH OUR CO-COUNSEL IN THIS CASE

10:49AM 24   AS SOON AS POSSIBLE.

10:49AM 25       AND THE LAST THING I'LL SAY IS THAT WE ARE LOOKING AHEAD

10:49AM  1    TO DEVELOPMENTS IN THE LAW.  I'VE BEEN WORKING TO COORDINATE

10:49AM  2    AMICUS BRIEFING ON BEHALF OF THE PETITIONER IN GONZALEZ VERSUS

10:49AM  3    GOOGLE, WHICH I'M SURE YOUR HONOR KNOWS WILL HAVE A POTENTIAL

10:49AM  4    IMPACT ON THE LAW IN THIS CASE AROUND 230, AND MY EXPECTATION

10:49AM  5    IS THAT THOSE BRIEFS WILL HELP EXPLAIN TO THE SUPREME COURT WHY

10:49AM  6    A TEXTUAL READING OF THAT STATUTE COULD HAVE SERIOUS UNINTENDED

10:49AM  7    CONSEQUENCES FOR OUR KIDS.

10:49AM  8        THE LAST THING I'LL SAY IS THAT I THINK EVERYONE ON OUR

10:49AM  9    SIDE NEEDS TO REMAIN FOCUSSED ON COLLEGIALITY RATHER THAN

10:49AM  10   CONFRONTATION.  THIS IS AN EXTRAORDINARILY BIG CASE WITH

10:49AM  11   EXTRAORDINARILY BIG CONSEQUENCES NOT JUST FOR OUR CLIENTS AND

10:49AM  12   OUR KIDS, BUT ALSO POTENTIALLY FOR THE DEFENDANTS.  AND I THINK

10:49AM  13   KEEPING TEMPERS COOL AND WORKING RESPECTFULLY WITH ONE ANOTHER

10:49AM  14   IS SOMETHING THAT I KNOW HOW TO DO, HAVING WORKED ON THE OTHER

10:50AM  15   SIDE FOR AS LONG AS I DID, AND I'M HOPING TO BRING THAT VIRTUE

10:50AM  16   TO THE TABLE.

10:50AM  17        THE COURT:  DO YOU HAVE A REASON TO ANTICIPATE THAT

10:50AM  18   TEMPERS -- ARE YOU TALKING ABOUT TEMPERS BETWEEN THE SIDES OR

10:50AM  19   WITHIN THE SIDE?

10:50AM  20        MR. WARREN:  WELL, I SUPPOSE IT COULD HAPPEN EITHER

10:50AM  21   WAY.  I HOPE IT WON'T.  BUT I THINK STAYING RESPECTFUL,

10:50AM  22   COLLEGIAL HAS TO BE THE REALM IN HOW WE APPROACH THIS.

10:50AM  23        THE COURT:  I HAD A NOTE.  I THOUGHT AT ONE POINT, I

10:50AM  24   BELIEVE, YOU WERE APPLYING TO BE A CO-LEAD?

10:50AM  25        MR. WARREN:  YOUR HONOR, I THINK MY INITIAL

```
10:50AM  1      APPLICATION MAY HAVE BEEN AMBIGUOUS ON THAT POINT.

10:50AM  2          AT THIS POINT I'M SEEKING TO SERVE ON THE PSC AND, OF

10:50AM  3      COURSE, WILL SERVE IN WHATEVER CAPACITY THE COURT THINKS IS

10:50AM  4      MOST APPROPRIATE.  THAT IS WHAT WE'RE SEEKING.  WE DO SUPPORT

10:50AM  5      THE LEADERSHIP STRUCTURE THAT HAS BEEN PUT FORWARD ON A

10:50AM  6      CONSENSUS BASIS, AND I'VE HAD REALLY THE PRIVILEGE OF REALLY

10:50AM  7      WORKING WITH MOST OF THE LAWYERS HERE ON THESE CASES, AND IT'S

10:50AM  8      AN EXCEPTIONALLY TALENTED DIVERSE GROUP.

10:50AM  9              THE COURT:  OKAY.  SO YOU WERE OR YOU WEREN'T?

10:51AM  10             MR. WARREN:  I WAS APPLYING TO BE ON THE PSC BUT

10:51AM  11     ALSO TO SORT OF STATE THAT WHATEVER YOUR HONOR DEEMS

10:51AM  12     APPROPRIATE IS WHAT WE'RE PREPARED TO DO.  THESE CASES ARE 80,

10:51AM  13     85 PERCENT OF MY TIME RIGHT NOW.

10:51AM  14             THE COURT:  LITIGATION FINANCING?

10:51AM  15             MR. WARREN:  NONE, YOUR HONOR.

10:51AM  16             THE COURT:  AND THEN WHAT ABOUT COMMITTEES?

10:51AM  17             MR. WARREN:  WELL, YOUR HONOR, I THINK THERE WON'T

10:51AM  18     BE A LOT OF WORK FOR THE OTHER COMMITTEES TO DO UNLESS THE

10:51AM  19     MASTER COMPLAINT IS STRUCTURED THE RIGHT WAY AND WE SURVIVE THE

10:51AM  20     MOTION TO DISMISS.  I WOULD LIKE TO BE INVOLVED IN THOSE

10:51AM  21     EFFORTS.

10:51AM  22             THE COURT:  OKAY.

10:51AM  23             MR. WARREN:  THANK YOU, YOUR HONOR.

10:51AM  24             MS. NAPPI:  GOOD MORNING, YOUR HONOR.

10:51AM  25         HILLARY NAPPI.
```

10:51AM 1          THE COURT:  GOOD MORNING.

10:51AM 2          MS. NAPPI:  FIRST, THANK YOU FOR ALLOWING ME TO

10:51AM 3     SPEAK AND BE HEARD TO DAY.  IT'S AN HONOR TO BE IN YOUR

10:51AM 4     COURTROOM AS I'M PRO HAC'D IN.

10:51AM 5          THE COURT:  WAIT.  WAIT.  YOUR NAME AGAIN.

10:52AM 6          MS. NAPPI:  HILLARY NAPPI.

10:52AM 7          THE COURT:  OKAY.  MS. NAPPI, I'LL SAY AS WE START

10:52AM 8     HERE, YOU WEREN'T IN THIS GROUP?

10:52AM 9          MS. NAPPI:  NO, YOUR HONOR, I'M NOT.

10:52AM 10         THE COURT:  SO GO AHEAD.

10:52AM 11         MS. NAPPI:  YOUR HONOR, THE EXPERTISE I'VE HAD IN MY

10:52AM 12    CAREER BOTH WITH COMPLEX LITIGATION AND SPECIFICALLY

10:52AM 13    REPRESENTING CHILD SURVIVORS OF BOTH SEXUAL EXPLOITATION,

10:52AM 14    SPECIFICALLY CSAM, IS EXTREMELY RELEVANT AND WILL BE HELPFUL TO

10:52AM 15    THIS MDL.  AND ON BEHALF OF THE PEOPLE THAT I REPRESENT, BOTH

10:52AM 16    THEIR FAMILIES AND THESE CHILDREN, THEY ABSOLUTELY MUST BE

10:52AM 17    HEARD IN THIS LITIGATION.

10:52AM 18         WHILE I UNDERSTAND THAT THE PREDOMINANT ISSUE BEING PUT

10:52AM 19    FORTH IN THIS MDL IS THE ADDICTION COMPONENT, MOST OF THESE

10:52AM 20    CHILDREN WILL HAVE SOME SORT OF CSAM ON THEIR DEVICES, AND IT

10:52AM 21    HAS TO BE ADDRESSED HERE.  IT'S PARTICULARLY RELEVANT WITH

10:52AM 22    RESPECT TO THE COMMUNICATIONS DECENCY ACT.

10:52AM 23         THE VIEW THAT I TAKE WITH MY CASES, YOUR HONOR, IS THAT

10:53AM 24    THE CREATION OF CSAM IS AN INJURY AND UNDER THE LAW IT IS AN

10:53AM 25    INJURY.

10:53AM 1      AND IT HAS IMMUNITIES FROM THE COMMUNICATIONS DECENCY ACT.

10:53AM 2   AND, IN FACT, WITH MR. MARSH, WE ARE ARGUING NEXT WEEK BEFORE

10:53AM 3   THE ELEVENTH CIRCUIT IN THE CASE AGAINST OMEGLE FOR THIS EXACT

10:53AM 4   ISSUE.

10:53AM 5      MY FIRM DOES NOT USE LITIGATION FUNDING, AND WHILE I HAVE

10:53AM 6   NOT BEEN APPOINTED TO AN MDL LEADERSHIP POSITION, I HAVE NEVER

10:53AM 7   APPLIED FOR ONE BEFORE, YOUR HONOR.  SO, YOU KNOW, I THINK MY

10:53AM 8   EXPERIENCE LEADS TO EXACTLY WHY I'M HERE TODAY.

10:53AM 9      MY FIRM, THOUGH, HAS BEEN INVOLVED IN MDL'S ACROSS THE

10:53AM 10  COUNTRY.  THEY HAVE THE FINANCES AND THE SUPPORT AND ARE

10:53AM 11  WILLING TO HIRE INTO THIS CASE BECAUSE WE BELIEVE IN IT.

10:53AM 12     THE THING THAT I CAN TELL YOUR HONOR IS THAT THEY HAVE

10:53AM 13  ALSO COMMITTED RESOURCES TO GUIDE ME TO APPROPRIATELY

10:53AM 14  CONTRIBUTE TO WHATEVER COMMITTEE THIS COURT ASKS ME TO BE PART

10:53AM 15  OF IF THE COURT SEES FIT TO DO SO.

10:53AM 16     IT'S ABSOLUTELY IMPORTANT THAT WE ALL COLLABORATE, AND MY

10:53AM 17  CAREER IN EVERY LITIGATION I'VE PARTICIPATED IN, AND I'VE

10:53AM 18  COLLABORATED AT EVERY LEVEL.  PRIOR TO BEING AN ATTORNEY, I WAS

10:54AM 19  A PARALEGAL FOR OVER A DECADE.  I WORKED ON COMPLEX CASES

10:54AM 20  ACROSS THE COUNTRY AND TRAVELLED FOR MONTHS AT A TIME GIVING UP

10:54AM 21  MY LIFE.  I UNDERSTAND WHAT THE COMMITMENT IS, AND I'M PREPARED

10:54AM 22  TO DO THAT IN ANY ROLE THAT THIS COURT SEES FIT TO APPOINT ME

10:54AM 23  TO.

10:54AM 24     I HAVE WORKED WITH THE LOVELY ATTORNEYS AT THIS TABLE IN

10:54AM 25  COLLABORATING PRIOR TO THE PETITION FOR THE MDL TALKING

10:54AM 1    SPECIFICALLY ABOUT THE EXPERT ISSUES AND THE COMMUNICATIONS

10:54AM 2    DECENCY ACT AND THE ISSUES WE SAW LEGALLY.

10:54AM 3         IF THE COURT WOULD ALLOW ME, I WOULD LOVE TO BE ON A

10:54AM 4    MASTER COMPLAINT COMMITTEE OR ON A LEGAL BRIEFING COMMITTEE.  I

10:54AM 5    THINK MY EXPERTISE AND THE KNOWLEDGE THAT I'VE GAINED THROUGH

10:54AM 6    MY CURRENT WORK WOULD HELP, BUT I'D ALSO LIKE TO COLLABORATE ON

10:54AM 7    THE DISCOVERY ISSUES.

10:54AM 8         I THINK YOU'VE HEARD TODAY, YOUR HONOR, THAT THERE ARE

10:54AM 9    SERIOUS CONCERNS ABOUT PRESERVATION, BUT THAT ALSO GOES TO

10:54AM 10   EVERYONE'S OBLIGATION WITH RESPECT TO CSAM.

10:54AM 11        CSAM IS CONTRABAND.  WE ALL HAVE AN OBLIGATION ABOUT

10:54AM 12   REPORTING, AND IF THE LAWYERS IN THIS ROOM DON'T DO THAT

10:55AM 13   APPROPRIATELY, WE WILL ALL BE IN A BOWL THAT NO ONE WANTS TO

10:55AM 14   BE.

10:55AM 15        SO IT IS EXTREMELY IMPORTANT THAT EVERYONE HERE MEET AND

10:55AM 16   CONFER AND COLLABORATE, AND I THINK THAT MY EXPERIENCE LEADS TO

10:55AM 17   ME BEING ABLE TO DO THAT SEAMLESSLY.

10:55AM 18            THE COURT:  AND DID YOU TALK TO THE GROUP ABOUT

10:55AM 19   BEING ON THE SLATE?  AND WHAT IS YOUR UNDERSTANDING ABOUT WHY

10:55AM 20   YOU'RE NOT ON THE SLATE?

10:55AM 21            MS. NAPPI:  SO AT ONE POINT, YOUR HONOR, I THINK I

10:55AM 22   WAS GOING TO BE PROPOSED TO BE ON THE SLATE, AND MY

10:55AM 23   UNDERSTANDING WAS THAT THERE WERE CONCERNS ABOUT THE SIZE OF

10:55AM 24   THE SLATE AND EVERYONE WAS TRYING TO NAVIGATE THAT

10:55AM 25   APPROPRIATELY.

| | |
|---|---|
| 10:55AM 1 | YOU KNOW, I'M HAPPY TO WEIGH IN.  I THINK MY COLLEAGUES |
| 10:55AM 2 | HAVE SPOKEN ACCURATELY ABOUT THE NEED OF HAVING EVERYONE COME |
| 10:55AM 3 | TO THE TABLE. |
| 10:55AM 4 | AND SO I THINK THAT THAT WAS JUST THE ISSUE.  YOU KNOW, WE |
| 10:55AM 5 | DEFINITELY NEED ALL OF THE RESOURCES THAT WE CAN PUT TOGETHER |
| 10:55AM 6 | BECAUSE IT IS VERY COMPLEX. |
| 10:55AM 7 | AND, YOU KNOW, EACH INJURY HERE WILL LEAD TO DIFFERENT |
| 10:55AM 8 | EXPERTS AND DIFFERENT DISCOVERY ISSUES WHICH HAVE TO BE I THINK |
| 10:55AM 9 | ADDRESSED PROPERLY PLEADING A COMPLAINT, AND, OF COURSE, |
| 10:56AM 10 | ADDRESSING THOSE ISSUES IN A BRIEFING.  EXCUSE ME. |
| 10:56AM 11 | THE COURT:  OKAY.  ANYTHING ELSE YOU WOULD LIKE ME |
| 10:56AM 12 | TO KNOW? |
| 10:56AM 13 | MS. NAPPI:  NO, YOUR HONOR.  THANK YOU VERY MUCH FOR |
| 10:56AM 14 | ALLOWING ME TO BE HEARD. |
| 10:56AM 15 | THE COURT:  THANK YOU. |
| 10:56AM 16 | MR. MARSH:  GOOD MORNING, YOUR HONOR. |
| 10:56AM 17 | MY NAME IS JAMES MARSH FOUNDER OF THE MARSH LAW FIRM, AND |
| 10:56AM 18 | IT'S AN HONOR TO BE BACK IN NORTHERN CALIFORNIA IN THE OAKLAND |
| 10:56AM 19 | COURTHOUSE. |
| 10:56AM 20 | I'M HERE PRIMARILY TODAY TO REPRESENT THE INTERESTS OF |
| 10:56AM 21 | VICTIMS OF CHILD PORNOGRAPHY OF WHAT WE CALL NOW CSAM, |
| 10:56AM 22 | SOMETHING THAT I'VE BEEN DOING FOR 17 YEARS, SINCE 2005. |
| 10:56AM 23 | IN ANSWERING YOUR QUESTIONS, I THINK ONE OF THE QUESTIONS |
| 10:56AM 24 | THAT YOU POSITED ABOUT INJUNCTIVE RELIEF AND DAMAGES REALLY |
| 10:56AM 25 | HASN'T BEEN ADDRESSED BY ANY OF THE APPLICANTS HERE TODAY, BUT |

10:56AM 1    I THINK IT'S A VERY IMPORTANT ISSUE, AND I LEND A TREMENDOUS

10:57AM 2    AMOUNT OF EXPERIENCE ON THIS ISSUE, INCLUDING MY CASE IN THE

10:57AM 3    UNITED STATES SUPREME COURT IN UNITED STATES VERSUS PAROLINE,

10:57AM 4    WHICH WAS AN EFFORT TO DETERMINE HOW CHILDREN ARE DAMAGED BY

10:57AM 5    THINGS THAT HAPPEN ONLINE, THINGS THAT HAPPEN ON THE INTERNET.

10:57AM 6         AND I THINK THAT'S GOING TO BE A VERY IMPORTANT ISSUE IN

10:57AM 7    THIS CASE GIVEN, AS YOUR HONOR RECOGNIZED, THE POTENTIAL SIZE

10:57AM 8    OF THE NUMBER OF POTENTIAL PLAINTIFFS AND THE NEED TO REALLY

10:57AM 9    ARTICULATE AND DETERMINE EXACTLY WHAT DAMAGES THOSE INDIVIDUALS

10:57AM 10   HAVE EXPERIENCED.

10:57AM 11        I'VE ALSO BEEN INVOLVED IN ISSUES NOT ONLY OF ISSUES

10:57AM 12   INVOLVING CSAM, CHILDREN VICTIMIZED ON THE INTERNET, BUT ALSO

10:57AM 13   IN THE ISSUE OF SECTION 230.

10:57AM 14        AND AS HILLARY SAID, WE ARE ARGUING THAT CASE NEXT WEEK

10:57AM 15   BEFORE THE ELEVENTH CIRCUIT.  IT OVERLAPS A LOT WITH SOME OF

10:57AM 16   THE ISSUES HERE TODAY IN TERMS OF WHETHER SOMETHING IS A

10:57AM 17   PRODUCT, WHETHER SOMETHING IS A SERVICE, AND THE EXTENT AND

10:58AM 18   IMPORTANCE OF A LAW THAT I HELPED WRITE, SECTION 18 U.S.C. 2255

10:58AM 19   DEALING SPECIFICALLY WITH VICTIMS OF CHILD PORNOGRAPHY AND

10:58AM 20   ONLINE EXPLOITATION.

10:58AM 21        IN TERMS OF THE STRUCTURE OF THE LEADERSHIP, I THINK FROM

10:58AM 22   MY PERSPECTIVE, IT'S MORE IMPORTANT WHO YOU CHOOSE THAN HOW

10:58AM 23   MANY PEOPLE YOU CHOOSE.  I KNEW WHICH TWO WOMEN I WOULD CHOOSE

10:58AM 24   FOR LEADERSHIP.  I DON'T KNOW THEM PERSONALLY, BUT I HAVE HEARD

10:58AM 25   THEM IN COURT, AND I'VE BEEN VERY IMPRESSED WITH THEIR

10:58AM   1    RESPONSES.

10:58AM   2         IN TERMS OF LITIGATION FUNDING, WE DON'T HAVE ANY

10:58AM   3    LITIGATION FUNDING IN OUR FIRM, AND I'M VERY HAPPY TO DEVOTE

10:58AM   4    THE RESOURCES OF MY FIRM TO THIS CASE.

10:58AM   5              THE COURT:  AND YOU SAID NO LITIGATION FUNDING,

10:58AM   6    RIGHT?

10:58AM   7              MR. MARSH:  NO, WE DO NOT.

10:58AM   8              THE COURT:  SO YOU'VE WORKED WITH MS. NAPPI?

10:58AM   9              MR. MARSH:  I DO WORK VERY CLOSELY WITH MS. NAPPI

10:58AM  10    AND HER FIRM, YES.

10:58AM  11              THE COURT:  ANY ISSUES WORKING WITH THEM?

10:58AM  12              MR. MARSH:  I DON'T HAVE ANY ISSUES WORKING WITH

10:58AM  13    ANYONE, YOUR HONOR.

10:58AM  14         AT ONE POINT IN TIME IN WORKING ON SECTION 2255 IN

10:59AM  15    CONGRESS, I WAS ASKED TO BRIDGE THE GAP BETWEEN THE REPUBLICANS

10:59AM  16    AND THE DEMOCRATS, AND WE PASSED A UNANIMOUS BILL.  SO I THINK

10:59AM  17    IF I CAN WORK WITH THE DEMOCRATS AND THE REPUBLICANS AND THE

10:59AM  18    REPUBLICANS OF THE HOUSE AND THE REPUBLICANS OF THE SENATE, I

10:59AM  19    COULD PROBABLY WORK WITH JUST ABOUT ANYONE IN THIS ROOM

10:59AM  20    INCLUDING DEFENSE COUNSEL.

10:59AM  21         (LAUGHTER.)

10:59AM  22              THE COURT:  MAYBE YOU SHOULD HAVE STARTED THERE.

10:59AM  23              MR. MARSH:  I'M SORRY?

10:59AM  24              THE COURT:  YOU SHOULD HAVE STARTED WITH THAT.

10:59AM  25         (LAUGHTER.)

```
10:59AM   1            MR. MARSH:  I WILL ALSO ADD AN INTERESTING ASIDE,
10:59AM   2    THAT MY FIRST TRIAL WAS BEFORE JUDGE JUDY, SO THAT IS ANOTHER
10:59AM   3    DISTINCT, I GUESS, BENEFIT I HAVE IN DEALING WITH LITIGATION
10:59AM   4    LIKE THIS SO.
10:59AM   5        (LAUGHTER.)
10:59AM   6            THE COURT:  ALL RIGHT.  THANK YOU, SIR.
10:59AM   7            MR. MARSH:  THANK YOU VERY MUCH.
10:59AM   8            MR. TELLIS:  GOOD MORNING, YOUR HONOR.
10:59AM   9        ROLAND TELLIS WITH BARON BUDD.
10:59AM  10            THE COURT:  MR. TELLIS, YOU'RE THE ONLY ONE OF THESE
10:59AM  11    PEOPLE WHO I KNOW.
10:59AM  12            MR. TELLIS:  IT'S A PLEASURE TO BE BACK IN YOUR
11:00AM  13    COURTROOM AGAIN.  I HOPE YOU FEEL THE SAME WAY.
11:00AM  14            THE COURT:  I LIKE TO BE IN MY COURTROOM.
11:00AM  15            MR. TELLIS:  I HAVE APPLIED FOR A POSITION ON THE
11:00AM  16    PLAINTIFFS' STEERING COMMITTEE, YOUR HONOR.  MY APPLICATION
11:00AM  17    ADDRESSES THE CRITERIA THAT YOUR HONOR ARTICULATED FOR
11:00AM  18    MEMBERSHIP.  IN A NUTSHELL, I HAVE THE COMPLEX LITIGATION
11:00AM  19    EXPERIENCE, I HAVE THE TIME, AND I'M A TEAM PLAYER.
11:00AM  20            THE COURT:  MR. TELLIS, TELL ME ABOUT WHAT IS
11:00AM  21    HAPPENING WITH YOUR ROLE ON THE OPIOID LITIGATION AND IF THAT
11:00AM  22    IS STILL ONGOING.
11:00AM  23            MR. TELLIS:  SURE.
11:00AM  24        MY ROLE STARTED -- I HAD THE FORTUNE, OR PERHAPS THE
11:00AM  25    MISFORTUNE, OF PETITIONING TO FORM THAT MDL AND IT HAS BEEN A
```

11:00AM  1      SUCCESS I HOPE.

11:00AM  2          I WAS PRIMARILY INVOLVED IN DISTRIBUTOR LITIGATION, WHICH

11:00AM  3      HAS SINCE SETTLED.  SINCE THEN MEMBERS OF MY FIRM HAVE BEEN

11:00AM  4      INVOLVED IN BELLWETHER TRIALS IN THE PHARMACY DEPENDENT AND SO

11:00AM  5      FORTH, BUT MY ROLE WAS PRIMARILY ON THE DISTRIBUTOR WHICH HAS

11:00AM  6      SETTLED.

11:00AM  7          THE COURT:  OKAY.

11:00AM  8          MR. TELLIS:  I'VE BEEN PRACTICING FOR 27 YEARS.

11:00AM  9      YOUR HONOR HAD A CHANCE TO VIEW MY LITIGATION ABILITIES IN THE

11:01AM 10      CASE THAT SPANNED YEARS AND HAD A SUCCESSFUL ENDING.

11:01AM 11          I DON'T HAVE SOCIAL MEDIA EXPERIENCE PER SE, BUT THAT WAS

11:01AM 12      TRUE WHEN THE COURTS APPOINTED ME TO LEAD DEFECTIVE AIRBAG

11:01AM 13      CASES, AND METHANE GAS CASES, COLLATERAL INSURANCE CASES, AND

11:01AM 14      WE EXTRACTED BILLIONS FOR CONSUMERS.

11:01AM 15          I'D BE HONORED TO BE SELECTED BY THE COURT.  I WILL SERVE

11:01AM 16      ON ANY SUBCOMMITTEE THAT YOUR HONOR THINKS I SHOULD, ALTHOUGH

11:01AM 17      IF I HAD A PREFERENCE, I WOULD BE INVOLVED IN LAW AND BRIEFING

11:01AM 18      AND DISCOVERY OR EXPERTS.

11:01AM 19          THE COURT:  HOW DID YOU GET INVOLVED, MR. TELLIS, IN

11:01AM 20      THIS PARTICULAR CASE?

11:01AM 21          MR. TELLIS:  I WAS APPROACHED BY THE LIEFF CABRASER

11:01AM 22      FIRM.  OUR FIRMS HAVE A CLOSE WORKING RELATIONSHIP.

11:01AM 23          THIS ISSUE IS EQUALLY IMPORTANT TO ME.  SOCIAL MEDIA HAS

11:01AM 24      PERMEATED OUR LIVES.  IT HAS ITS POSITIVES, BUT IT CERTAINLY

11:01AM 25      HAS ITS NEGATIVES.

11:02AM 1         WHEN I READ ABOUT THE WHISTLEBLOWER ALLEGATIONS INVOLVING

11:02AM 2    META AND THINKING ABOUT MY OWN TEENAGE DAUGHTER, I FELT LIKE I

11:02AM 3    HAD TO GET INVOLVED.

11:02AM 4         THE COURT:  OKAY.  NO LITIGATION FINANCING?

11:02AM 5         MR. TELLIS:  NO LITIGATION FINANCING, YOUR HONOR.

11:02AM 6         THE COURT:  HOW MANY CASES HAVE YOU TRIED IN THIS

11:02AM 7    DISTRICT?

11:02AM 8         MR. TELLIS:  ZERO.

11:02AM 9         THE COURT:  ANYWHERE ELSE?

11:02AM 10         MR. TELLIS:  AS A DEFENSE LAWYER, I TRIED CASES IN

11:02AM 11    LOS ANGELES WHERE I AM BASED, SEVERAL TO VERDICT.  BUT I HAVE

11:02AM 12    NEVER TRIED A CASE IN THE NORTHERN DISTRICT, BUT I'VE BEEN

11:02AM 13    APPOINTED BY COURTS HERE TO VARIOUS STEERING COMMITTEE

11:02AM 14    INCLUDING JUDGE BREYER IN THE VOLKSWAGEN DIESEL CASE, JUDGE

11:02AM 15    CHEN IN A SIMILAR CASE INVOLVING AUDI, FIAT AUDI.

11:02AM 16         AND I'VE BEEN APPOINTED BY THE COURTS IN SOUTHERN

11:02AM 17    CALIFORNIA, THE CENTRAL DISTRICT, CO-LEAD AND MEMBERS OF THE

11:03AM 18    PLAINTIFFS' STEERING COMMITTEE, BUT I'VE NEVER TRIED A CASE IN

11:03AM 19    THE NORTHERN DISTRICT.

11:03AM 20         THE COURT:  HOW MANY JURY TRIALS TOTAL?

11:03AM 21         MR. TELLIS:  THREE.  SEVERAL ARBITRATIONS.

11:03AM 22         THE COURT:  YES.  A JURY TRIAL IS A LITTLE BIT

11:03AM 23    DIFFERENT.

11:03AM 24         MR. TELLIS:  A LITTLE BIT DIFFERENT.

11:03AM 25         THE COURT:  OKAY.  THANK YOU.

|         |    |                                                        |
|---------|----|--------------------------------------------------------|
| 11:03AM | 1  | MR. TELLIS:  THANK YOU.                                 |
| 11:03AM | 2  | THE COURT:  DO I HAVE EVERYBODY?                        |
| 11:03AM | 3  | MR. VANZANDT:  YOUR HONOR, MAY I ADDRESS ONE THING?     |
| 11:03AM | 4  | JOSEPH VANZANDT.                                        |
| 11:03AM | 5  | I FAILED TO MENTION WHEN I WAS UP HERE THAT BEASLEY ALLEN |
| 11:03AM | 6  | DOES NOT USE LITIGATION FINANCING.  I JUST WANTED TO MAKE SURE |
| 11:03AM | 7  | THAT WAS ON THE RECORD.                                 |
| 11:03AM | 8  | MS. ZIMMERMAN:  YOUR HONOR, IF I MAY, NOR DOES          |
| 11:03AM | 9  | DICELLO, LEVITT.  I'M TRYING TO SAVE TIME, YOUR HONOR.  AND |
| 11:03AM | 10 | DICELLO, LEVITT DOES NOT USE LITIGATION FINANCING FOR THIS |
| 11:03AM | 11 | CASE.  THANK YOU.                                       |
| 11:03AM | 12 | THE COURT:  MR. GARCIA, DO YOU HAVE ACCESS TO THIS      |
| 11:04AM | 13 | OTHER PERSON OR NOT?                                    |
| 11:04AM | 14 | THE CLERK:  SO THE ZOOM IS UP RIGHT NOW, BUT I CAN      |
| 11:04AM | 15 | CHECK IF HE'S IN THERE.                                 |
| 11:04AM | 16 | THE COURT:  ALL RIGHT.  WHY DON'T YOU FIND HIM          |
| 11:04AM | 17 | DURING THE BREAK.                                       |
| 11:04AM | 18 | MR. AUSTIN:  GOOD MORNING, YOUR HONOR.                  |
| 11:04AM | 19 | MAY IT PLEASE THE COURT, RON AUSTIN.                    |
| 11:04AM | 20 | THE COURT:  OH, I DIDN'T HAVE YOU YET.  GO AHEAD.       |
| 11:04AM | 21 | MR. AUSTIN:  BY WAY I GUESS OF THE LEADERSHIP           |
| 11:04AM | 22 | STRUCTURE, I DO BELIEVE THAT THE LEADERSHIP STRUCTURE THAT WE |
| 11:04AM | 23 | HAVE IN PLACE THAT IS PROPOSED IS NECESSARY AND ACTUALLY BY WAY |
| 11:04AM | 24 | OF COMMENTING, IT PROBABLY CAN EXPAND TO A LEADERSHIP   |
| 11:04AM | 25 | DEVELOPMENT COMMITTEE.  MOST TIMES YOUNG LAWYERS OR LAWYERS WHO |

| 11:04AM | 1 | ARE LEFT ON THE OUTSIDE OF THE MDL'S NEVER HAVE AN OPPORTUNITY |
|---------|---|---|
| 11:04AM | 2 | TO PARTICIPATE, AND SO ACTUALLY A LEADERSHIP DEVELOPMENT |
| 11:04AM | 3 | COMMITTEE PROBABLY WOULD BE HELPFUL HERE AS WELL AS THE |
| 11:04AM | 4 | PROPOSED 20 OR 21 OR 22 SLATES OF PEOPLE JUST BECAUSE OF THE |
| 11:04AM | 5 | SIZE AND THE MAGNITUDE OF THIS LITIGATION.  SO FROM THAT |
| 11:04AM | 6 | STANDPOINT, I WOULD SUPPORT A LARGER RATHER THAN SMALLER SLATE. |
| 11:05AM | 7 | I DON'T USE LITIGATION FUNDING.  I HAVE TRIED SEVERAL JURY |
| 11:05AM | 8 | TRIALS, TWO VERDICTS AND INCLUDING ONE AGAINST EXXON MOBILE IN |
| 11:05AM | 9 | 2001 FOR OVER A BILLION DOLLARS, AND IT WAS AN ENVIRONMENTAL |
| 11:05AM | 10 | CASE. |
| 11:05AM | 11 | I THINK YOUR HONOR ENJOYS OR INTENDS TO PROMOTE DIVERSITY. |
| 11:05AM | 12 | I'M A BLACK MAN, OWN MY OWN FIRM.  MY FIRM IS RELATIVELY |
| 11:05AM | 13 | DIVERSE INCLUDING ONE OF OUR MAIN GUYS INSIDE OF OUR MASS TORTS |
| 11:05AM | 14 | IS A PUERTO RICAN YOUNG MAN, I HAVE A COLUMBIAN WOMAN, AND THE |
| 11:05AM | 15 | WOMAN WHO MANAGES MY FIRM IS A BLACK FEMALE, AND MY CHIEF LEGAL |
| 11:05AM | 16 | OFFICER IS A WHITE FEMALE, ALL SUPPORT OF MY MASS TORTS AND OUR |
| 11:05AM | 17 | CLASS ACTION SECTION. |
| 11:05AM | 18 | THE COURT:  AND DO YOU HAVE -- I SEE IN YOUR |
| 11:05AM | 19 | APPLICATION THAT YOU'RE LEAD COUNSEL IN A NUMBER OF MASS TORTS. |
| 11:05AM | 20 | DO YOU HAVE TIME TO FOCUS ON THIS ONE? |
| 11:06AM | 21 | MR. AUSTIN:  I BELIEVE I DO, YOUR HONOR.  I WOULD |
| 11:06AM | 22 | NOT STAND BEFORE YOUR HONOR AND ASK FOR PERMISSION TO |
| 11:06AM | 23 | PARTICIPATE IN THIS LITIGATION IF I DID NOT. |
| 11:06AM | 24 | THE COURT:  WELL, A LOT OF TIMES WHAT I SEE ARE |
| 11:06AM | 25 | PEOPLE WHO DON'T ACTUALLY HAVE AS MUCH TIME, AND THEN THEY WANT |

```
11:06AM   1    TO GIVE THE FIRM CREDIT FOR IT, AND IT DOESN'T MATTER SO MUCH

11:06AM   2    IF YOU'RE RUNNING YOUR FIRM AND THEN FEED IT DOWN THE CHAIN.

11:06AM   3         I'M INTERESTED TO KNOW WHO HAS GOT ACTUAL TIME VERSUS --

11:06AM   4             MR. AUSTIN:  I'M BOOTS ON THE GROUND, YOUR HONOR.

11:06AM   5    I'M A MASSIVE TRIAL GUY, AND I ENJOY THE WORK.  AND FOR THOSE

11:06AM   6    WHO HAVE WORKED WITH ME KNOW THAT I'M PRESENT AND IN IT.

11:06AM   7             THE COURT:  AND HOW DID YOU GET INVOLVED IN THIS

11:06AM   8    LITIGATION?

11:06AM   9             MR. AUSTIN:  SOMEONE APPROACHED ME, A POTENTIAL

11:06AM  10    CLIENT APPROACHED ME ABOUT DIFFICULTIES THAT THEY WERE HAVING

11:06AM  11    WITH THEIR CHILD.  AND WE SOUGHT A SOMEWHAT DISMISSIVE --

11:06AM  12    ACTUALLY, JOSEPH VANZANDT, I CALLED HIM FROM BEASLEY ALLEN, AND

11:06AM  13    WE JUST STARTED TALKING ABOUT IT, AND THIS IS A LITIGATION THAT

11:06AM  14    WE'RE PUTTING TOGETHER NOW, AND SO THAT WAS SORT OF MY ENTRE

11:07AM  15    INTO IT.

11:07AM  16             THE COURT:  OKAY.  THANK YOU, SIR.

11:07AM  17             MR. AUSTIN:  THANK YOU.

11:07AM  18             MS. WALSH:  YOUR HONOR, I THINK I HAVE THE DISTINCT

11:07AM  19    PLEASURE OF BEING LAST BUT HOPEFULLY NOT LEAST.

11:07AM  20         MY NAME IS ALEXANDRA WALSH OF WALSH LAW FROM WASHINGTON,

11:07AM  21    D.C.  AND THANK YOU FOR HAVING US ALL HERE TODAY AND TAKING THE

11:07AM  22    TIME THAT YOU'RE TAKING TO HEAR FROM EACH OF US.

11:07AM  23         LIKE MR. WARREN, WHO YOU HEARD FROM PREVIOUSLY, I AM A

11:07AM  24    FORMER DEFENSE LAWYER.  I'VE SPENT 20 YEARS ON THE DEFENSE

11:07AM  25    SIDE.  I'VE WORKED WITH MANY OF THE FIRMS AND MY COLLEAGUES
```

| | | |
|---|---|---|
| 11:07AM | 1 | SITTING TO MY RIGHT. |
| 11:07AM | 2 | I ALSO HAVE LITIGATED WITH AND ALSO AGAINST MANY OF MY |
| 11:08AM | 3 | FRIENDS SITTING BEHIND ME. |
| 11:08AM | 4 | I ALSO JOIN MR. WARREN IN SAYING THAT THIS LITIGATION AND |
| 11:08AM | 5 | THE OPPORTUNITY TO PARTICIPATE IN THIS LITIGATION EPITOMIZES |
| 11:08AM | 6 | WHY I MADE THE DECISION TWO YEARS AGO TO LEAVE BIG LAW AND |
| 11:08AM | 7 | START MY OWN FIRM. |
| 11:08AM | 8 | I GOT INVOLVED IN THE LITIGATION BECAUSE I HAVE VERY GOOD |
| 11:08AM | 9 | FRIENDS AT BEASLEY ALLEN, AND I WAS CONTACTED BY MR. VANZANDT |
| 11:08AM | 10 | ABOUT GETTING INVOLVED. |
| 11:08AM | 11 | I'M THE MOTHER OF FOUR CHILDREN, INCLUDING THREE TEENAGE |
| 11:08AM | 12 | GIRLS, AND I'VE SEEN FIRST HAND THE EFFECTS OF SOCIAL MEDIA |
| 11:08AM | 13 | PARTICULARLY DURING THE COVID PERIOD. |
| 11:08AM | 14 | I FEEL STRONGLY THAT I COULD CONTRIBUTE MEANINGFULLY TO |
| 11:08AM | 15 | THIS LITIGATION, INCLUDING BECAUSE OF MY DEFENSE BACKGROUND, |
| 11:08AM | 16 | AND MY ABILITY TO UNDERSTAND THE CHALLENGES THAT EXIST HERE. |
| 11:08AM | 17 | MY MAIN EXPERTISE THAT I WOULD OFFER TO THIS LITIGATION, I |
| 11:08AM | 18 | AM A TRIAL LAWYER, I'M A FIRST YEAR TRIAL LAWYER, BUT I ALSO |
| 11:09AM | 19 | HAVE EXTENSIVE BACKGROUND AND EXPERTISE IN LAW AND BRIEFING, |
| 11:09AM | 20 | AND I BELIEVE VERY STRONGLY AND I THINK THAT MY SUCCESS HAS |
| 11:09AM | 21 | BEEN INFORMED BY THE FACT THAT I BRING THOSE TWO AREAS OF |
| 11:09AM | 22 | EXPERTISE TOGETHER. |
| 11:09AM | 23 | I THINK THE LEADERSHIP STRUCTURE THAT HAS BEEN PROPOSED IN |
| 11:09AM | 24 | SIZE IS CRITICAL, AND THAT RELATES TO THE POINT THAT I JUST |
| 11:09AM | 25 | MADE.  THERE WILL BE A LOT OF WORK TO BE DONE TO CRAFT THIS |

11:09AM 1    MASTER COMPLAINT.  THERE WILL BE A LOT OF WORK THAT WILL BE

11:09AM 2    DONE IN THE MOTIONS PRACTICE, BUT IT'S CRITICAL THAT THE PEOPLE

11:09AM 3    WHO WILL BE TRYING THESE CASES AND UNDERSTAND HOW THEY NEED TO

11:09AM 4    BE TRIED HAVE A HAND IN THAT AND HAVE CONTRIBUTED TO THAT.  I

11:09AM 5    WOULD LIKE, IF APPOINTED, TO BE PART OF BOTH OF THOSE EFFORTS.

11:09AM 6        I CLERKED FOR JUDGE GARLAND, AGAIN, LIKE MR. WARREN.  I

11:09AM 7    ALSO CLERKED FOR RETIRED JUSTICE STEPHEN BREYER.  I THINK THAT

11:10AM 8    GIVES ME AN ABILITY TO HELP CONFRONT THE VERY INTENSE LEGAL

11:10AM 9    ISSUES THAT EXIST HERE.

11:10AM 10       I UNDERSTAND HOW THE APPELLATE PROCESS WORKS.  I

11:10AM 11   UNDERSTAND HOW THE SUPREME COURT IS LIKELY TO ADDRESS ISSUES

11:10AM 12   LIKE THESE, AND I WOULD LIKE TO BE PART OF THE PROCESS OF

11:10AM 13   CRAFTING THE COMPLAINT TO BE PREPARED TO WITHSTAND WHAT IS AN

11:10AM 14   ALMOST INEVITABLE APPEAL, BUT I FEEL REALLY STRONGLY THAT THE

11:10AM 15   TRIAL TEAMS THAT I HOPE TO BE A PART OF PRESENTING TO THE JURY

11:10AM 16   BE REFLECTED IN THOSE EARLY PROCESSES AS WELL.

11:10AM 17       I WOULD ADD THAT I UNDERSTAND THE COURT'S COMMITMENT TO

11:10AM 18   DIVERSITY, AND I RESPECT IT VERY MUCH.  A LARGE PART OF MY

11:10AM 19   PRACTICE ON THE DEFENSE SIDE WAS HELPING TO PROMOTE DIVERSITY.

11:10AM 20   A BIG PART OF THE REASON THAT I -- BEFORE I MADE MY SWITCH TO

11:10AM 21   THE PLAINTIFFS' SIDE, I ACTUALLY LEFT BIG LAW WITH MY PARTNER,

11:10AM 22   BETH WILKINSON, TO FORM WILKINSON WALSH, AND A HUGE REASON THAT

11:11AM 23   WE DID THAT WAS THAT WE UNDERSTOOD WHILE ALL OF THE EFFORTS

11:11AM 24   THAT BIG LAW MAKES TO PROMOTE YOUNGER LAWYERS AND DIVERSE

11:11AM 25   LAWYERS, THERE ARE CERTAIN SYSTEMIC INSTITUTIONAL ISSUES WITH

Case 3:22-md-03084-CRB Document 353-1 Filed 11/07/22 Page 95 of 136

11:11AM  1    BIG LAW FIRMS THAT MAKE THAT VERY DIFFICULT TO ACCOMPLISH, AND

11:11AM  2    WE DECIDED THAT IT WAS IMPORTANT TO US TO LEAVE THE COMFORTS OF

11:11AM  3    A BIG POWERFUL LAW FIRM AND START OUR OWN FIRM SO THAT WE COULD

11:11AM  4    STRUCTURE OUR PRACTICE AND STRUCTURE OUR BUSINESS IN A WAY THAT

11:11AM  5    ALLOWED US TO PROMOTE THE NEXT GENERATION OF TRIAL LAWYERS,

11:11AM  6    INCLUDING WOMEN TRIAL LAWYERS AND INCLUDING DEFENSE TRIAL

11:11AM  7    LAWYERS, AND THE SUCCESS THAT WE HAD IN THAT ARENA WILL ALWAYS

11:11AM  8    BE ONE OF MY GREATEST ACCOMPLISHMENTS PROFESSIONALLY.

11:11AM  9         I HAVE HUGE RESPECT FOR THE PLAINTIFFS' BAR, PARTICULARLY

11:11AM  10   -- I HAD IT BEFORE I LEFT, BEFORE I LEFT BIG LAW AND JOINED

11:11AM  11   THIS BAR.  IT HAS MULTIPLIED TREMENDOUSLY SINCE I CAME TO THIS

11:12AM  12   SIDE, BUT I THINK THAT EVERY -- ALL OF MY FRIENDS ON THIS SIDE

11:12AM  13   WOULD AGREE THAT THE PLAINTIFFS' BAR HAS WORK TO DO IN TERMS OF

11:12AM  14   DIVERSITY, RACIAL DIVERSITY, GENDER DIVERSITY, SEXUAL

11:12AM  15   ORIENTATION DIVERSITY ACROSS THE GAMUT.

11:12AM  16        MY FIRM, WHICH IS RUN BY ME, I HAVE ONE PARTNER WHO IS

11:12AM  17   ALSO A WOMAN, WE ARE COMMITTED TO BRINGING SOME OF THE LESSONS

11:12AM  18   THAT WE LEARNED FROM PROMOTING DIVERSITY ON THE DEFENSE SIDE TO

11:12AM  19   THE PLAINTIFFS' SIDE.

11:12AM  20        AND I KNOW THAT THAT IS SHARED BY MANY OF MY COLLEAGUES ON

11:12AM  21   THIS SIDE AS WELL.

11:12AM  22        MR. WEINKOWITZ, WHO UNFORTUNATELY TESTED POSITIVE FOR

11:12AM  23   COVID AND I HOPE WILL HAVE A CHANCE TO ADDRESS THE COURT, I

11:12AM  24   LITIGATED AGAINST HIM IN A LARGE MDL INVOLVING XARELTO, AND WE

11:12AM  25   WERE FIERCE ADVOCATES.  WE BOTH ADVOCATED ZEALOUSLY FOR OUR

11:12AM 1    CLIENTS, BUT WE ALWAYS HAD PROFESSIONALISM AND COURTESY WAS A

11:13AM 2    HUGE PART OF OUR RELATIONSHIP, AND WE HAD A CHANCE TO TALK

11:13AM 3    ABOUT ISSUES THAT WERE IMPORTANT TO US, AND ONE OF THOSE WAS

11:13AM 4    DIVERSITY.

11:13AM 5       SO I KNOW FIRST HAND THAT THERE'S A COMMITMENT TO THAT

11:13AM 6    AMONG THIS GROUP HERE, AND IF APPOINTED, I COMMIT TO THIS COURT

11:13AM 7    THAT I WILL PAY FORWARD THE MENTORING AND THE SUPPORT THAT I

11:13AM 8    RECEIVED AS A YOUNG LAWYER THAT ALLOWED ME TO ACHIEVE MY DREAM

11:13AM 9    OF BEING A FIRST CHAIR TRIAL LAWYER TO THE YOUNGER LAWYERS WHO

11:13AM 10   I KNOW WILL BE CRITICAL IN MOVING THIS LITIGATION FORWARD.

11:13AM 11      YOUR HONOR, I ALSO FUND MY LAW FIRM MYSELF.  I HAVE TRIED

11:13AM 12   A CASE HERE IN THE NORTHERN DISTRICT OF CALIFORNIA.  I TRIED A

11:13AM 13   CASE IN FRONT OF JUDGE ORRICK SHORTLY BEFORE THE PANDEMIC.

11:13AM 14           THE COURT:  OKAY.  THANK YOU.

11:13AM 15           MS. WALSH:  THANK YOU, YOUR HONOR.

11:14AM 16           THE COURT:  CAN WE GET HIM ON?

11:14AM 17           THE CLERK:  I SEE HIM ON, BUT I HAVE TO REBOOT THE

11:14AM 18   SYSTEM.

11:14AM 19           THE COURT:  ALL RIGHT.  WE'LL GO AHEAD AND REBOOT,

11:14AM 20   AND WE WILL BREAK AND START AT 11:30.  SO WE WILL START

11:14AM 21   PROMPTLY AT 11:30, SO DO NOT GO FAR.  THANK YOU.

11:14AM 22     (RECESS FROM 11:14 A.M. UNTIL 11:30 A.M.)

11:30AM 23           THE COURT:  WE'RE BACK ON THE RECORD.

11:30AM 24      THE RECORD WILL REFLECT THAT THE COURT BELIEVES EVERYONE

11:30AM 25   IS HERE.  I'M NOT TAKING ROLL CALL.

| 11:30AM | 1 | I HAVE ONE MORE PERSON WHO WOULD LIKE TO BE CONSIDERED WHO |
| 11:30AM | 2 | IS ON ZOOM, MR. WEINKOWITZ. |
| 11:30AM | 3 | MR. WEINKOWITZ:  YES, YOUR HONOR.  GOOD MORNING, |
| 11:30AM | 4 | YOUR HONOR.  THANK YOU FOR ALLOWING ME TO APPEAR BY ZOOM.  I |
| 11:30AM | 5 | TESTED POSITIVE FOR COVID YESTERDAY.  I INTENDED TO BE THERE |
| 11:30AM | 6 | LIVE, BUT I THOUGHT IT WISE NOT TO COME. |
| 11:30AM | 7 | I'M A PARTNER AT LEVIN, SEDRAN AND BERGMAN IN |
| 11:30AM | 8 | PHILADELPHIA, PENNSYLVANIA.  WHAT I WOULD LIKE TO DO IS START |
| 11:30AM | 9 | WITH, IS TO TELL YOU WHY I THINK THIS CASE IS IMPORTANT AND WHY |
| 11:30AM | 10 | I WANT TO BE INVOLVED. |
| 11:30AM | 11 | THIS CASE IS ABOUT ADOLESCENTS WHO ARE VICTIMS OF A |
| 11:30AM | 12 | SEEMINGLY INNOCUOUS AND SOMEWHAT UBIQUITOUS PRODUCT, ONE THAT |
| 11:31AM | 13 | CAN CAUSE GREAT HARM.  I HAVE A NINE-YEAR-OLD DAUGHTER WHO WILL |
| 11:31AM | 14 | SOON BE IN ADOLESCENCE.  IN MANY WAYS, SHE ALREADY IS IN |
| 11:31AM | 15 | ADOLESCENCE.  BUT BEFORE I LEARNED WHAT I NOW KNOW FOR |
| 11:31AM | 16 | INVESTIGATING AND BEING INVOLVED IN THIS CASE, I MIGHT HAVE |
| 11:31AM | 17 | ALLOWED HER TO USE SOCIAL MEDIA MUCH EARLIER THAN I WILL NOW. |
| 11:31AM | 18 | HER FRIENDS ARE STARTING TO USE IT.  SHE COMES HOME, SHE |
| 11:31AM | 19 | ASKS, I RESIST.  SHE ASKS FIVE MORE TIMES.  SHE ASKS MY |
| 11:31AM | 20 | HUSBAND.  WE RESIST. |
| 11:31AM | 21 | THIS LITIGATION IS IMPORTANT BECAUSE PARENTS DON'T KNOW |
| 11:31AM | 22 | WHAT WE KNOW, WHAT THE PEOPLE IN THE COURTROOM KNOW, AND IN MY |
| 11:31AM | 23 | MIND THIS IS A PUBLIC HEALTH, MENTAL HEALTH ISSUE THAT I HOPE |
| 11:31AM | 24 | TO BE PART OF THE SOLUTION. |
| 11:31AM | 25 | MY CURRENT -- MY FIRM CURRENTLY HAS THREE CASES ON FILE, |

1    YOUR HONOR, AND WE REPRESENT A GROWING NUMBER OF PLAINTIFFS,

2    MANY OF WHOM ARE LGBTQ YOUTH.

3         AS A MEMBER OF THAT COMMUNITY, I BELIEVE I'M IN A UNIQUE

4    POSITION OF UNDERSTANDING THE NEEDS OF THE LGBTQ PLAINTIFFS

5    THAT WILL BE INVOLVED IN THIS CASE.

6         I HAVE HAD THE HONOR OF WORKING WITH MANY OF THE LAWYERS

7    THAT ARE BEFORE YOU TODAY.  SOME WITH MR. SEEGER.  I THINK THE

8    FIRST LITIGATION I WORKED WITH MR. SEEGER WAS THE PPA

9    LITIGATION.  I WAS A YOUNG ATTORNEY IN THE TRENCHES.  HE WAS MY

10   BOSS.

11        ALEX WALSH, WHO YOU JUST HEARD FROM, SHE WAS ONE OF THE

12   TOUGHEST ADVERSARIES THAT I'VE EVER FACED IN A VERY HARD FOUGHT

13   LITIGATION WHERE I WAS HONORED TO BE THE LEAD IN THE XARELTO

14   STATE COURT LITIGATION.  WE ZEALOUSLY FOUGHT AGAINST EACH

15   OTHER.  I'M GLAD NOW THAT ALEX IS A PLAINTIFFS' LAWYER.

16        AS SHE SAID, WE WERE PROFESSIONAL, WE WERE ABLE TO RESOLVE

17   MANY ISSUES TOGETHER, AND I HOPE TO BE ABLE TO CONTRIBUTE THAT.

18        SHOULD I BE SO LUCKY TO BE APPOINTED BY YOUR HONOR, I LOOK

19   FORWARD TO WORKING WITH THOSE THAT I HAVEN'T WORKED WITH THAT

20   MIGHT BE ON THE TEAM.

21        MY BACKGROUND AND HOW I THINK I CAN CONTRIBUTE TO THIS

22   CASE.  I THINK THIS IS A VERY COMPLEX CASE.  IT HAS GOT VERY

23   WELL FINANCED DEFENDANTS ON THE OTHER SIDE, AND IT REQUIRES A

24   HIGHLY ORGANIZED AND EXPERIENCED LEADERSHIP TEAM.

25        TO YOUR FIRST QUESTION, YOUR HONOR, WHICH IS WHY SHOULD I

| | | |
|---|---|---|
| 11:33AM | 1 | APPOINT SUCH A LARGE TEAM UP-FRONT?  MAYBE I SHOULD WAIT. |
| 11:33AM | 2 | I THINK IT'S VERY, VERY IMPORTANT FOR HAVING A COHESIVE |
| 11:33AM | 3 | TEAM ON THE GROUND READY TO GO RIGHT AWAY. |
| 11:33AM | 4 | THERE'S A LOT OF WORK THAT GOES ON BEHIND THE SCENES EVEN |
| 11:33AM | 5 | WHEN A MASTER COMPLAINT IS BEING DRAFTED, EVEN WHEN A MOTION TO |
| 11:33AM | 6 | DISMISS IS BEING DRAFTED, AND I THINK THAT IT BENEFITS BOTH |
| 11:33AM | 7 | PARTIES, THE DEFENSE TO HAVE A TEAM IN PLACE RIGHT AWAY READY |
| 11:33AM | 8 | TO GO THE MOMENT THAT I HOPE YOU DENY THE MOTION TO DISMISS. |
| 11:33AM | 9 | VERY IMPORTANT, I THINK, PARTICULARLY, SINCE WE'RE ALL FROM |
| 11:33AM | 10 | DIFFERENT LAW FIRMS, THAT COHESION IS ABSOLUTELY ESSENTIAL, AND |
| 11:33AM | 11 | I HAVE BEEN INVOLVED IN A LOT OF MDL CASES AND STATE COURT |
| 11:33AM | 12 | CASES, AND THAT REALLY IS, I THINK, VERY, VERY IMPORTANT. |
| 11:33AM | 13 | WHAT CAN I CONTRIBUTE?  I HAVE 20 YEARS OF EXPERIENCE |
| 11:33AM | 14 | WORKING IN MASS TORT ARENAS BOTH IN MASS MDL'S AND STATE COURT. |
| 11:33AM | 15 | I WOULD BRING TO THIS CASE, I HOPE, EXPERIENCES FOR EVERY |
| 11:34AM | 16 | FACET.  I'VE WORKED ON SCIENCE COMMITTEES DEVELOPING EXPERTS, |
| 11:34AM | 17 | I'VE WORKED ON BELLWETHER COMMITTEES SELECTING CASES, I'VE LED |
| 11:34AM | 18 | DISCOVERY COMMITTEES, I'VE TAKEN KEY DEPOSITIONS OF COMPANY |
| 11:34AM | 19 | WITNESSES.  THOSE DEPOSITIONS HAVE BEEN PLAYED AT TRIAL IN MANY |
| 11:34AM | 20 | MDL CASES. |
| 11:34AM | 21 | I HAVE BEEN ON MANY BELLWETHER TRIAL TEAMS IN VARIOUS |
| 11:34AM | 22 | CAPACITIES, AND I'VE HAD THE HONOR TO BE APPOINTED ON SEVERAL |
| 11:34AM | 23 | SETTLEMENT TEAMS THAT HAVE NEGOTIATED AND IMPLEMENTED VERY |
| 11:34AM | 24 | LARGE GLOBAL SETTLEMENTS. |
| 11:34AM | 25 | ONE OF THE THINGS I DEVELOPED AN EXPERTISE IN AS A RESULT |

11:34AM 1     OF BEING APPOINTED TO BE A LEADER IN MASS TORTS IN STATE COURT

11:34AM 2     IS WORKING WITH MDL LAWYERS.  SOMETIMES STATE LAWYERS AND MDL

11:34AM 3     LAWYERS HAVE VERY DIVERGING INTERESTS AND BEING A LEADERSHIP IN

11:34AM 4     A STATE COURT WORKING WITH AN MDL COURT DEALING WITH

11:34AM 5     PLAINTIFFS' LAWYERS THAT HAVE DIVERGING INTERESTS IS SOMETHING

11:34AM 6     THAT IS DIFFICULT TO DO AT TIMES.

11:34AM 7         I CURRENTLY SERVE ON THE PSC IN THE JUUL LITIGATION BEFORE

11:34AM 8     JUDGE ORRICK.  THERE I AM CO-CHAIR OF DISCOVERY, AND I AM CHAIR

11:35AM 9     OF THE LONG BRIEFING COMMITTEE.

11:35AM 10         THE COURT:  SO LET ME INTERRUPT YOU BECAUSE THAT'S

11:35AM 11    THE QUESTION I HAD ABOUT YOUR APPLICATION.  AND IF YOU'VE BEEN

11:35AM 12    LISTENING, IT'S NOT GOING TO BE A SURPRISE, WHICH IS, HOW DO

11:35AM 13    YOU HAVE THE TIME IN LIGHT OF THE JUUL LITIGATION STILL GOING

11:35AM 14    ON?

11:35AM 15         MR. WEINKOWITZ:  I'VE THOUGHT ABOUT THIS A LOT, AND

11:35AM 16    I WOULDN'T HAVE APPLIED TO THIS CASE, APPLIED TO BE A MEMBER OF

11:35AM 17    THE LEADERSHIP IN THIS CASE IF I DIDN'T THINK THAT I HAD THE

11:35AM 18    TIME.

11:35AM 19         CASES HAVE LIFECYCLES.  I BELIEVE THAT THE JUUL LIFECYCLE,

11:35AM 20    THE JUUL CASE IS IN A VERY MATURE STATE.  THAT LEAVES ME READY,

11:35AM 21    WILLING, AND ABLE TO DEVOTE TIME TO THIS CASE.

11:35AM 22         THE LONG BRIEFING -- I'M CHAIR OF THE LONG BRIEFING.  MUCH

11:35AM 23    OF THE LONG BRIEFING IN THE JUUL CASE HAS ALREADY BEEN DONE AND

11:35AM 24    COMPLETED.  WE'VE OBVIOUSLY GOTTEN THROUGH THE MOTIONS TO

11:35AM 25    DISMISS, WE'VE GOTTEN THROUGH DAUBERT, WE'VE GOTTEN THROUGH THE

11:35AM  1    SUMMARY JUDGMENT PHASE, NOT THAT THERE'S NOT A LOT MORE

11:36AM  2    BRIEFING TO DO IN TRIAL, WE EVEN GOT THROUGH THE MOTION IN

11:36AM  3    LIMINE STAGE.

11:36AM  4        MY ROLE IN THE TRIALS IS UNFORTUNATELY, OR FORTUNATELY, I

11:36AM  5    GOT TAGGED WITH DEPOSITION DESIGNATIONS.  SO MY JOB IS IN LARGE

11:36AM  6    MEASURE CUTTING AND NEGOTIATING WITH THE OTHER SIDE ON WHAT THE

11:36AM  7    DEPOSITION DESIGNATIONS ARE.  A LOT OF THAT WORK IS ALREADY

11:36AM  8    DONE, AND WE'RE READY FOR TRIAL IN JANUARY, AND THAT DEPOSITION

11:36AM  9    DESIGNATION WORK IS WELL UNDERWAY.

11:36AM  10       SO I THINK THAT I HAVE TIME NECESSARY TO DEVOTE TO THIS

11:36AM  11   CASE, AND I WILL GIVE IT EVERYTHING THAT I HAVE.

11:36AM  12       MY FIRM HAS THE WHEREWITHAL TO MAKE THE NECESSARY

11:36AM  13   SUSTAINED AND LONG-TERM COMMITMENT OF NOT JUST TIME BUT OF

11:36AM  14   RESOURCES.  AND IN THAT REGARD, WE ARE -- WE DO NOT TAKE THIRD

11:36AM  15   PARTY FUNDING.  WE ARE SELF-FUNDED.

11:36AM  16       I BASICALLY, UNLESS YOUR HONOR HAS ANY MORE QUESTIONS OF

11:36AM  17   ME, I'M READY TO GIVE EVERYTHING I HAVE TO THIS CASE AND TO

11:36AM  18   CONTRIBUTE TO THE BEST OF MY ABILITY.

11:37AM  19            THE COURT:  NO, I DON'T.  THANK YOU VERY MUCH.  I

11:37AM  20   APPRECIATE YOU NOT GETTING THE REST OF US SICK.

11:37AM  21       (LAUGHTER.)

11:37AM  22            MR. WEINKOWITZ:  THANK YOU, YOUR HONOR.  THANK YOU

11:37AM  23   FOR THE COURTESY.

11:37AM  24            THE COURT:  YOU'RE WELCOME.

11:37AM  25       OKAY.  JUST A COUPLE MORE QUESTIONS.  IF THERE'S ANYBODY

11:37AM  1    IN THE AUDIENCE WHO IS A PLAINTIFFS' LAWYER WHO WANTS TO BE

11:37AM  2    HEARD ON ANY OF THESE TOPICS, THIS IS YOUR OPPORTUNITY TO STAND

11:37AM  3    AND COME FORWARD AND IDENTIFY YOURSELF.

11:37AM  4         NO?  SOMEONE HAS GOT A PHONE ON THOUGH.  YOU SHOULD TURN

11:37AM  5    IT OFF IF YOU DO.

11:37AM  6         OKAY.  FROM THE DEFENSE SIDE -- WHEN I FIRST -- I BELIEVE

11:37AM  7    IN ACTING PROFESSIONALLY, THE RULES OF PROFESSIONAL CONDUCT.

11:38AM  8         WHEN I FIRST GOT TO THIS BENCH I USED A PROTOCOL,

11:38AM  9    PROFESSIONAL GUIDELINES FOR MY STATE COURT CASES.  THERE WAS NO

11:38AM  10   SUCH THING HERE IN THE FEDERAL COURT, AND I WAS TOLD WHEN JUDGE

11:38AM  11   BREYER CONVINCED ME TO TAKE THAT MDL THAT I SHOULDN'T WORRY

11:38AM  12   BECAUSE I HAVE THE BEST LAWYERS IN THE DISTRICT AND IN THE

11:38AM  13   COUNTRY WHO LITIGATE THESE CASES, WHICH WAS PART OF HIS WAY TO

11:38AM  14   GET ME TO SAY YES.

11:38AM  15        BUT WHAT I DECIDED TO DO WAS TO REQUIRE THAT THE LAWYERS

11:38AM  16   IN THAT MDL, GIVEN THAT THEY WERE THE BEST I WAS TOLD, REQUIRED

11:38AM  17   THEM TO WRITE A DOCUMENT WHICH THEY COULD LIVE WITH WHICH WERE

11:38AM  18   RULES FOR PROFESSIONAL CONDUCT.  I GAVE THEM SAMPLES, AND THOSE

11:38AM  19   LAWYERS CREATED THAT DOCUMENT, WHICH IS NOW THE RULES FOR

11:38AM  20   PROFESSIONAL CONDUCT FOR OUR DISTRICT.

11:39AM  21        I REQUIRE THEM.  I ENFORCE THEM.

11:39AM  22        I HAVE SANCTIONED LAWYERS WHEN I READ LOST -- NOT LOST

11:39AM  23   TRANSCRIPTS -- WHEN I READ DEPOSITION TRANSCRIPTS AND I'VE

11:39AM  24   NOTICED THAT PEOPLE HAVE INSTRUCTED WITNESSES NOT TO ANSWER AND

11:39AM  25   HAVE NO JUSTIFIABLE BASIS FOR IT.  I DON'T TOLERATE

11:39AM 1    GAMESMANSHIP.

11:39AM 2         AND IF YOU DON'T KNOW ME, I WOULD SUGGEST THAT YOU NOT

11:39AM 3    TEST ME BECAUSE I'LL DO IT.  I USED TO DO IT A LOT.  I THINK I

11:39AM 4    HAD A REPUTATION IN WHICH CASE NOW I DON'T HAVE TO SANCTION

11:39AM 5    BECAUSE NO ONE WANTS TO TEST ME ANYMORE.  THAT'S KIND OF WHAT I

11:39AM 6    LEARNED.  SO I HAVEN'T SANCTIONED IN A LONG TIME, BUT I WILL IF

11:39AM 7    I HAVE TO.

11:39AM 8         WHAT I WOULD LIKE TO KNOW FROM THE DEFENSE IS WHETHER ANY

11:39AM 9    OF YOU HAVE EVER FELT COMPELLED TO FILE A MOTION FOR SANCTIONS

11:39AM 10   AGAINST ANY OF THE PLAINTIFFS WHO ARE ASKING FOR COURT

11:40AM 11   APPOINTED -- FOR -- TO BE APPOINTED BY THE COURT BECAUSE I

11:40AM 12   DON'T TOLERATE IT ON EITHER SIDE?

11:40AM 13        AND I DON'T KNOW HOW YOU EXPECT ME TO KNOW IF I'M NOT

11:40AM 14   TOLD, RIGHT?  I'M NOT OUT THERE IN THE HALLWAYS.  I'M NOT THERE

11:40AM 15   IN THE DEPOSITIONS.

11:40AM 16        WE HAVE A LOT OF CASES.  WE HAVE A LOT OF WORK.  I FOCUS

11:40AM 17   ON WHAT I NEED TO DO.  AND BY THE WAY, I HAVE KIDS TOO.  I'M

11:40AM 18   NOW AN EMPTY NESTER, BUT I USED TO THEN GO HOME AND SEE MY

11:40AM 19   KIDS, RIGHT?

11:40AM 20        SO I DON'T KNOW UNLESS I'VE HAD TO RULE ON THESE ISSUES OR

11:40AM 21   DEAL WITH THEM IN SOME OTHER CONTEXT.

11:40AM 22        AND I WANT TO KNOW.

11:40AM 23        SO NOW IS YOUR OPPORTUNITY ON THE DEFENSE SIDE TO LET ME

11:40AM 24   KNOW.

11:40AM 25        ANYONE FROM COVINGTON?

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
| 11:40AM | 1  | MS. JONES:  THANK YOU, YOUR HONOR. |
| 11:40AM | 2  | JUST IN THE INTEREST OF STREAMLINING OUR PRESENTATION, I'M |
| 11:41AM | 3  | GOING TO LIKELY BE TAKING THE LEAD AS THE SPOKESPERSON FOR THE |
| 11:41AM | 4  | DEFENSE SIDE, BUT OBVIOUSLY I INVITE MY COLLEAGUES TO JOIN IF |
| 11:41AM | 5  | THEY HAVE SOMETHING SPECIFIC THAT THEY NEED TO RAISE. |
| 11:41AM | 6  | THE COURT:  AND THIS IS MS. JONES, RIGHT? |
| 11:41AM | 7  | MS. JONES:  YES, YOUR HONOR, PHYLLIS JONES FROM |
| 11:41AM | 8  | COVINGTON. |
| 11:41AM | 9  | WE DIDN'T FILE AN OBJECTION TO THE PROPOSED LEADERSHIP |
| 11:41AM | 10 | STRUCTURE WITH THE COURT, AND THAT'S BECAUSE AT THE END OF THE |
| 11:41AM | 11 | DAY WE DEFERRED TO THE COURT'S JUDGMENT ON THE APPROPRIATE SIZE |
| 11:41AM | 12 | OF THE LEADERSHIP STRUCTURE AND WHO SHOULD COMPRISE IT. |
| 11:41AM | 13 | I'M DRAWING ON MY OWN KIND OF MEMORY AND EXPERIENCE HERE |
| 11:41AM | 14 | IN SAYING THAT WITH RESPECT TO THE FOLKS WHO HAVE BEEN |
| 11:41AM | 15 | PROPOSED, I HAVE NO REASON TO THINK THAT THERE'S EVER BEEN ANY |
| 11:41AM | 16 | OCCASION WHERE THERE'S BEEN A NEED FOR A MOTION FOR SANCTIONS |
| 11:41AM | 17 | OR EVEN ANYTHING APPROACHING THAT. |
| 11:41AM | 18 | THERE ARE FOLKS ON THE PLAINTIFFS' SIDE WHOM I KNOW |
| 11:41AM | 19 | PERSONALLY, AND THERE ARE FOLKS WHO I DON'T NECESSARILY KNOW, |
| 11:41AM | 20 | BUT WE'VE ALL HAD AN OPPORTUNITY TO REVIEW THE APPLICATIONS |
| 11:41AM | 21 | VERY CAREFULLY. |
| 11:41AM | 22 | AS YOUR HONOR NOTED, IT'S A LARGE GROUP WHOSE BEEN |
| 11:41AM | 23 | PROPOSED, AND FROM OUR PERSPECTIVE, THE HIGHEST PRIORITY IS |
| 11:42AM | 24 | GETTING MOTIONS ON FILE WITH THE COURT SO THAT THESE |
| 11:42AM | 25 | CROSS-CUTTING DISPOSITIVE ISSUES CAN BE RESOLVED. |

11:42AM  1      WE CERTAINLY WOULD NOT WANT A LEADERSHIP STRUCTURE ON THE

11:42AM  2   PLAINTIFFS' SIDE THAT SOMEHOW IMPAIRS OUR ABILITY TO DO THAT,

11:42AM  3   BUT BEYOND THAT BIG PICTURE CONCERN, WE'RE HAPPY TO DEFER TO

11:42AM  4   YOUR HONOR'S JUDGMENT ON THE CONSTITUTION OF THE LEADERSHIP

11:42AM  5   STRUCTURE.

11:42AM  6      THE COURT:  ALL RIGHT.  MR. SCHMIDT, ANY -- DO YOU

11:42AM  7   HAVE ANY INFORMATION ABOUT THE PLAINTIFFS' ATTORNEYS?

11:42AM  8      MR. SCHMIDT:  NO, YOUR HONOR.  I'VE WORKED WITH A

11:42AM  9   NUMBER OF THE PLAINTIFFS' ATTORNEYS, AND I'VE WORKED WITH A

11:42AM  10   NUMBER OF THEM, BUT NOT IN TERMS OF THE SANCTIONABLE CONDUCT AS

11:42AM  11   YOUR HONOR IDENTIFIED.

11:42AM  12      THE COURT:  ANYONE FROM MUNGER, TOLLES, ANY

11:42AM  13   INFORMATION?

11:42AM  14      MR. BLAVIN:  NO, YOUR HONOR, WE'RE NOT AWARE OF ANY

11:42AM  15   SANCTIONS MOTIONS THAT WE FILED AGAINST ANY OF THE FIRMS.

11:42AM  16      THE COURT:  OKAY.  KING & SPALDING?  MR. DRAKE?

11:42AM  17      MR. DRAKE:  NO, YOUR HONOR, WE DON'T HAVE ANY

11:43AM  18   INFORMATION TO REPORT IN THAT REGARD.

11:43AM  19      THE COURT:  OKAY.

11:43AM  20      MR. DRAKE:  THANK YOU, YOUR HONOR.

11:43AM  21      THE COURT:  MS. PIERSON?

11:43AM  22      MS. PIERSON:  NO, YOUR HONOR, NO INFORMATION TO

11:43AM  23   REPORT.

11:43AM  24      THE COURT:  THANK YOU.  FINALLY, MS. WHITE?

11:43AM  25      MS. WHITE:  LIKEWISE, NO INFORMATION FROM GOOGLE.

11:43AM 1     THE COURT:  GREAT TO HEAR.  I DIDN'T ANTICIPATE THAT

11:43AM 2 THERE WOULD BE, BUT I DO LIKE TO ASK, DOT MY I'S, CROSS MY T'S.

11:43AM 3   FOR PURPOSES OF THIS CASE, MAGISTRATE JUDGE HIXSON WILL

11:43AM 4 MANAGE ANY AND ALL DISCOVERY DISPUTES IF WE GET THERE.  HE IS

11:43AM 5 APPOINTED.

11:43AM 6   I WILL ISSUE A WRITTEN ORDER WITH MY DECISIONS ON

11:43AM 7 PLAINTIFFS' COUNSEL.  I DO THINK, THOUGH, WE CAN MAKE A LITTLE

11:44AM 8 BIT OF PROGRESS.  I DO PLAN ON APPOINTING BOTH MR. SEEGER AND

11:44AM 9 MS. HAZAM.

11:44AM 10   SO I'LL HAVE -- MS. HAZAM, WHY DON'T YOU COME TO THE MIC

11:44AM 11 TO DEAL WITH THE NEXT SET OF ISSUES.

11:44AM 12   AND THEN I TAKE IT -- MS. JONES, YOU'RE AT THE MIC.

11:44AM 13    MS. JONES:  I AM, YOUR HONOR.  THANK YOU.

11:44AM 14    THE COURT:  OKAY.  I DO WANT TO TALK ABOUT HOW TO

11:44AM 15 GET -- THE FIRST TOPIC SEEMS TO ME HOW TO GET A COMPLAINT UP

11:45AM 16 AND ISSUED SO THAT WE CAN HAVE BRIEFING ON A MOTION TO DISMISS.

11:45AM 17   I OUTLINED IN A KIND OF VERY SKELETAL WAY WHAT MY INITIAL

11:45AM 18 THOUGHTS WERE WITH RESPECT TO THIS TOPIC.  IT COULD BE THAT I

11:45AM 19 SHOULD JUST SET ANOTHER MEETING TO GIVE PLAINTIFFS' COUNSEL AN

11:45AM 20 OPPORTUNITY TO PULL SOMETHING TOGETHER BEFORE WE STRUCTURE WHAT

11:45AM 21 THE MOTION PRACTICE WILL LOOK LIKE.

11:45AM 22   BUT I DO WANT TO HAVE A MASTER COMPLAINT BECAUSE WHATEVER

11:45AM 23 DECISIONS I MAKE, I WANT THEM TO BE -- I WANT THEM TO BE ON AN

11:45AM 24 OPERATIVE COMPLAINT.

11:45AM 25   THE WHOLE POINT OF THE MDL PROCESS IS TO STREAMLINE, AND

|  |  |  |
|---|---|---|
| 11:45AM | 1 | IF THE PLAINTIFFS HAVEN'T ADOPTED THE COMPLAINT ON WHICH THERE |
| 11:46AM | 2 | IS MOTION PRACTICE, THEN IT'S NOT BINDING. SO IT SEEMS TO ME |
| 11:46AM | 3 | THAT THERE HAS TO BE SOME KIND OF MASTER APPROACH. |
| 11:46AM | 4 | THE DEFENDANTS ARE ENTITLED TO KNOW WHICH SPECIFIC CLAIM |
| 11:46AM | 5 | EACH SPECIFIC PLAINTIFF IS BRINGING AS AGAINST EACH SPECIFIC |
| 11:46AM | 6 | DEFENDANT. |
| 11:46AM | 7 | THE DEFENDANTS ARE ENTITLED TO KNOW WHAT SPECIFIC |
| 11:46AM | 8 | ALLEGATIONS RELATE TO THEM, AND PERHAPS THERE ARE THREE MASTER |
| 11:46AM | 9 | COMPLAINTS AGAINST EACH OF THE DEFENDANTS. |
| 11:46AM | 10 | AS MR. TELLIS KNOWS, HE TRIED TO BRING A CLAIM AGAINST |
| 11:46AM | 11 | THREE BANKS AND I SAID, NO, I NEED THREE SEPARATE COMPLAINTS. |
| 11:46AM | 12 | AND WE WORKED THROUGH THAT, BUT IT TURNED OUT, YOU KNOW, TWO |
| 11:46AM | 13 | WERE DEALT WITH IN ONE WAY AND A THIRD WAS DEALT WITH IN AN |
| 11:47AM | 14 | ENTIRELY SEPARATE WAY BECAUSE THE DEFENDANTS ARE SEPARATE |
| 11:47AM | 15 | ENTITIES. |
| 11:47AM | 16 | SO I CAN ENVISION LOTS OF DIFFERENT WAYS TO BOTH IDENTIFY |
| 11:47AM | 17 | WAYS THAT I CAN DEAL WITH THE INDIVIDUAL DEFENDANTS AND THEIR |
| 11:47AM | 18 | NEEDS PLUS GET EFFICIENCIES IN TERMS OF BRIEFING ON COMMON |
| 11:47AM | 19 | ISSUES. |
| 11:47AM | 20 | AS I ALSO SAID, I DO THINK THAT IF YOU'RE GOING TO END UP |
| 11:47AM | 21 | WITH SOME MASTER COMPLAINT THAT HAS 20 CAUSES OF ACTION, IT |
| 11:47AM | 22 | MAKES NO SENSE TO ME -- BECAUSE REMEMBER, I HAVE A SMALL |
| 11:47AM | 23 | TEAM -- IT MAKES NO SENSE TO ME TO HAVE EVERYTHING BRIEFED IN |
| 11:47AM | 24 | THE FIRST ORDER. |
| 11:47AM | 25 | WHAT I'D LIKE TO HAVE YOU DO IS IDENTIFY THE STRONGEST |

| 11:47AM | 1 | ONES THAT YOU THINK YOU HAVE FROM THE PLAINTIFFS' SIDE AND THEN |
| 11:47AM | 2 | HAVE THE DEFENDANTS TAKE -- YOU KNOW, MAKE A MOTION AS TO |
| 11:47AM | 3 | THOSE.  AND IF YOU SURVIVE THAT, THEN I'M WILLING TO OPEN |
| 11:48AM | 4 | DISCOVERY. |
| 11:48AM | 5 | SO THOSE WERE MY INITIAL THOUGHTS. |
| 11:48AM | 6 | WE'LL START WITH YOU, MS. HAZAM. |
| 11:48AM | 7 | MS. HAZAM:  THANK YOU, YOUR HONOR. |
| 11:48AM | 8 | WE AGREE THAT A MASTER COMPLAINT WILL SERVE TO STREAMLINE |
| 11:48AM | 9 | THE CLAIMS IN THIS LITIGATION.  THERE'S A REASON IT'S A TOOL |
| 11:48AM | 10 | THAT IS USED UNIVERSALLY IN MASTER MDL'S. |
| 11:48AM | 11 | AS TO WHETHER THAT COMPLAINT SHOULD BE ONE OMNIBUS |
| 11:48AM | 12 | COMPLAINT THAT INCLUDES ALL DEFENDANTS AND ALL CLAIMS, OR |
| 11:48AM | 13 | PERHAPS BROKEN INTO SEPARATE COMPLAINTS AGAINST EACH DEFENDANT, |
| 11:48AM | 14 | I THINK THE PLAINTIFFS WOULD APPRECIATE THE OPPORTUNITY TO |
| 11:48AM | 15 | DISCUSS THAT AND PERHAPS DISCUSS IT WITH DEFENDANTS TO THE |
| 11:48AM | 16 | EXTENT THAT IT MAKES SENSE. |
| 11:48AM | 17 | I HAVE SEEN IT DONE BOTH WAYS.  IT COULD BE A SINGLE |
| 11:48AM | 18 | COMPLAINT THAT BREAKS OUT ALLEGATIONS BY DEFENDANT WHERE |
| 11:48AM | 19 | NECESSARY. |
| 11:48AM | 20 | EACH INDIVIDUAL PLAINTIFF COULD THEN JOIN THAT MASTER |
| 11:48AM | 21 | COMPLAINT THROUGH A SHORT FORM COMPLAINT THAT WOULD IDENTIFY, |
| 11:48AM | 22 | AMONG OTHER THINGS, THE INFORMATION THAT YOUR HONOR JUST |
| 11:49AM | 23 | MENTIONED, THE DEFENDANTS BEING ACCUSED, THE CLAIMS BEING |
| 11:49AM | 24 | RAISED, THE PRODUCTS THAT HAVE BEEN USED, AND THE CAUSES OF |
| 11:49AM | 25 | ACTION THAT WOULD BE ASSERTED.  THERE MAY BE OTHER -- |

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 11:49AM  | 1  | THE COURT:  AND I DO AGREE WITH THE DEFENSE THAT THE          |
| 11:49AM  | 2  | INDIVIDUAL PLAINTIFFS MUST SPECIFICALLY IDENTIFY WHICH PORTIONS |
| 11:49AM  | 3  | OF THE OPERATIVE COMPLAINT AND CLAIMS THEY AGREE UPON AND WHICH |
| 11:49AM  | 4  | ONES THEY DECLINE.                                            |
| 11:49AM  | 5  | OBVIOUSLY, IT SEEMS TO ME THAT IT IS IMPORTANT TO ADD IN      |
| 11:49AM  | 6  | THERE ANY FACTS THAT ARE GOING TO BE UNIQUE TO THAT INDIVIDUAL |
| 11:49AM  | 7  | PLAINTIFF.                                                    |
| 11:49AM  | 8  | AND IT COULD ALSO BE THAT AT THE TIME THAT THEY DO THAT,      |
| 11:49AM  | 9  | WE HAVE AN INITIAL FACT SHEET WHICH WILL IDENTIFY KEY THINGS  |
| 11:49AM  | 10 | THAT WILL BE UP -- KEY INFORMATION ABOUT THAT PLAINTIFF WHICH |
| 11:49AM  | 11 | WILL BE IDENTIFIED OR UPDATED, I MEAN, OVER THE COURSE OF TIME. |
| 11:50AM  | 12 | MS. HAZAM:  YES, YOUR HONOR.  PLAINTIFF FACT SHEETS          |
| 11:50AM  | 13 | ARE COMMON IN MDL'S AS WELL.  THEIR USE TYPICALLY TRIGGERS A  |
| 11:50AM  | 14 | DEFENDANT FACT SHEET, SO THERE'S A RECIPROCAL EXCHANGE OF BASIC |
| 11:50AM  | 15 | INFORMATION.                                                 |
| 11:50AM  | 16 | SO IF WE'RE PROCEEDING TO THAT STEP, WHICH IS OFTEN AN        |
| 11:50AM  | 17 | EARLY STEP IN DISCOVERY IN CASES, YOU COULD CHARACTERIZE IT   |
| 11:50AM  | 18 | DIFFERENTLY, BUT THAT IS OFTEN WHEN IT BEGINS AND HOW IT      |
| 11:50AM  | 19 | BEGINS.                                                      |
| 11:50AM  | 20 | THEN PLAINTIFFS WOULD SUBMIT THAT THE DEFENDANT SHOULD        |
| 11:50AM  | 21 | HAVE OBLIGATIONS IN RETURN TO IDENTIFY CERTAIN INFORMATION THAT |
| 11:50AM  | 22 | THEY HAVE ABOUT THE PARTICULAR PLAINTIFFS' USE OF THEIR       |
| 11:50AM  | 23 | PRODUCT, NONUSE, ET CETERA.                                  |
| 11:50AM  | 24 | THE COURT:  OKAY.  KEEP GOING.                               |
| 11:50AM  | 25 | MS. HAZAM:  I UNDERSTAND WHAT YOUR HONOR WAS SAYING          |

| | |
|---|---|
| 11:50AM | 1 |
| 11:50AM | 2 |
| 11:50AM | 3 |
| 11:50AM | 4 |
| 11:51AM | 5 |
| 11:51AM | 6 |
| 11:51AM | 7 |
| 11:51AM | 8 |
| 11:51AM | 9 |
| 11:51AM | 10 |
| 11:51AM | 11 |
| 11:51AM | 12 |
| 11:51AM | 13 |
| 11:51AM | 14 |
| 11:51AM | 15 |
| 11:51AM | 16 |
| 11:51AM | 17 |
| 11:51AM | 18 |
| 11:51AM | 19 |
| 11:52AM | 20 |
| 11:52AM | 21 |
| 11:52AM | 22 |
| 11:52AM | 23 |
| 11:52AM | 24 |
| 11:52AM | 25 |

1 WITH REGARD TO THE PORTIONS OF THE MASTER COMPLAINT THAT WOULD

2 BE JOINED OR DECLINED NEEDING TO BE IDENTIFIED.

3 WITH REGARDS TO BRIEFING AND POTENTIAL PHASING OF

4 BRIEFING, I THINK PLAINTIFFS ARE OPEN TO SEEKING TO PROPOSE

5 SOME FORM OF PHASING AND TAKING INTO CONSIDERATION YOUR HONOR'S

6 INSTRUCTION REGARDING THE STRONGEST OF CLAIMS.

7 I THINK THERE IS AN ISSUE OF TIMING, AS I IDENTIFIED

8 EARLIER, THAT WE WOULD LIKE THE COURT'S GUIDANCE REGARDING

9 BECAUSE THERE ARE ISSUES PENDING BEFORE THE SUPREME COURT AND

10 IT COULD HAVE A SHAPING EFFECT ON BRIEFING ON AT LEAST SOME OF

11 THE ISSUES.

12 THERE ARE ALSO ISSUES THAT THE DEFENDANTS HAVE SUGGESTED

13 THAT ARE CROSS CUTTING ACROSS PLAINTIFFS, AND PLAINTIFFS WOULD

14 RESPECTFULLY DISAGREE THAT THEY ARE CROSS-CUTTING IN THE MANNER

15 IN WHICH THE DEFENDANTS DESCRIBE, SPECIFICALLY WHETHER THE

16 DEFENDANTS' PLATFORM IS A PRODUCT, IS A SUBJECT OF STATE LAW.

17 STATE LAW AND THE STATE CASE LAW DO DIFFER IN THAT REGARD.  AND

18 THAT, WE WOULD SUBMIT, IS MORE APPROPRIATE ONCE WE GET TO A

19 PHASE OF CULLING PLAINTIFFS FOR BEING POTENTIAL BELLWETHERS TO

20 ADDRESS IT ON A STATE-BY-STATE BASIS.

21 THE FEDERAL LAW QUESTIONS ARE MORE CROSS-CUTTING.

22 CERTAINLY, THEY WILL APPLY TO MORE PLAINTIFFS.  THEY MAY NOT BE

23 DISPOSITIVE.  THEY MAY STILL TURN ON CLAIMS OR FACTS THAT ARE

24 ASSERTED, BUT THOSE ISSUES, AT LEAST THOSE IDENTIFIED BY THE

25 DEFENDANTS, NAMELY, SECTION 230 AND THE FIRST AMENDMENT, MAY BE

11:52AM 1    SHAPED BY THE COURT'S DECISION IN GONZALEZ, WHICH MAY BE COMING

11:52AM 2    AT AROUND THE TIME THAT WE WOULD GET TO A HEARING ON THOSE

11:52AM 3    MOTIONS.

11:52AM 4         THE COURT:  WELL, IT SEEMS TO ME THAT THERE ARE

11:52AM 5    GOING TO BE PLENTY OF ISSUES TO BRIEF.

11:52AM 6    SO ONE OF THE THINGS -- AND I UNDERSTAND THAT THE

11:52AM 7    PLAINTIFFS OR THE DEFENDANTS DON'T BELIEVE THAT THIS IS A

11:52AM 8    PRODUCT.

11:52AM 9    I ALSO UNDERSTAND THAT AT LEAST SOME OF THE PLAINTIFFS'

11:52AM 10   LAWYERS HAVE GONE TO GREAT PAINS TO SAY THAT THEY ARE NOT

11:53AM 11   BRINGING ACTIONS BASED UPON THE CONTENT OF THE PLATFORMS, AND I

11:53AM 12   ASSUME THAT THE DEFENDANTS DISAGREE, BUT THAT IS THEIR

11:53AM 13   COMPLAINT, AND I TAKE THAT AT FACE VALUE.

11:53AM 14   SO I THINK THE NOTION THAT THE DEFENDANTS' ATTEMPT TO

11:53AM 15   RECAST THE PLAINTIFFS' COMPLAINT IN THEIR OWN PREFERRED MANNER

11:53AM 16   WILL BE JUST REJECTED UNLESS THE SUPREME COURT PROVIDES SOME

11:53AM 17   GUIDANCE TO THE CONTRARY.

11:53AM 18   AND YOU CAN ALSO DO IT, YOU KNOW, TO PRESERVE THE ISSUE.

11:53AM 19   BUT YOU DON'T GET TO CONTROL THE COMPLAINT.  AND I'VE

11:53AM 20   THROWN OUT A CASE RELUCTANTLY, AND I UNDERSTAND HOW PARENTS

11:54AM 21   FEEL ABOUT THESE ISSUES.

11:54AM 22   BUT WHAT THE PLAINTIFFS HERE ARE TRYING TO DO IS SOMETHING

11:54AM 23   DIFFERENT, AND IT IS DIFFERENT WHETHER OR NOT THE DEFENDANTS

11:54AM 24   LIKE IT.  SO THAT IS THE ISSUE THAT I THINK NEEDS TO BE

11:54AM 25   ADDRESSED.

11:54AM  1       AND IT'S NOT ENTIRELY CLEAR TO ME THAT WAITING UNTIL LATER

11:54AM  2   TO DECIDE WHETHER OR NOT SOMETHING IS A PRODUCT IS HELPFUL.  IF

11:54AM  3   IT IS A PRODUCT IN 25 STATES AND NOT A PRODUCT IN ANOTHER 25

11:54AM  4   STATES, OR WHATEVER, MAYBE SOME STATES DON'T EVEN HAVE LAW, I

11:54AM  5   DON'T KNOW, THEN PERHAPS CERTAIN CLAIMS FOR CERTAIN PEOPLE GET

11:54AM  6   TO GO THROUGH AND OTHERS DO NOT.

11:54AM  7       BUT I ALSO DON'T KNOW WHAT THE LAW IS IN THE VARIOUS

11:55AM  8   STATES, AND I WOULD EXPECT THAT AN OPERATIVE COMPLAINT WOULD

11:55AM  9   INDICATE WHAT LAW YOU'RE PROCEEDING UNDER.

11:55AM  10      SO PERHAPS YOU'VE GOT A CLAIM THAT IS BASED ON A MAJORITY

11:55AM  11  RULE.  PERHAPS YOU HAVE A CLAIM THAT IS BASED ON A MINORITY

11:55AM  12  RULE.  IT'S NOT ENTIRELY CLEAR TO ME.  BUT THAT IS WHAT IS NEW

11:55AM  13  ABOUT THIS CASE.

11:55AM  14      AND IT SEEMS TO ME THAT THAT'S THE ISSUE THAT NEEDS TO BE

11:55AM  15  ADDRESSED OFF THE BAT.

11:55AM  16      COMMENTS?

11:55AM  17          MS. JONES:  YOUR HONOR, I THINK MUCH OF WHAT YOU

11:55AM  18  JUST SAID IS VERY MUCH IN LINE WITH THE DEFENDANTS' THINKING ON

11:55AM  19  HOW THESE CASES SHOULD PROCEED.

11:55AM  20      THERE REALLY IS A FUNDAMENTAL QUESTION AROUND WHETHER

11:55AM  21  THESE PLAINTIFFS CAN SURVIVE A MOTION TO DISMISS ON THE

11:56AM  22  PLEADINGS, AND WE'RE FULLY COMFORTABLE MOVING AGAINST WHATEVER

11:56AM  23  PLEADING HAPPENS TO BE IN PLACE AND TAKING THAT ON ITS FACE.

11:56AM  24      BUT AT THE RISK OF SOUNDING A LITTLE BIT TOO EXISTENTIAL,

11:56AM  25  THERE'S REALLY A QUESTION ABOUT WHETHER ANY OF US SHOULD BE

| 11:56AM | 1 | HERE GIVEN THE LAW ON THE SUBJECT THAT YOU JUST ADDRESSED, |
| 11:56AM | 2 | WHETHER THESE COMMUNICATION SERVICES ARE IN FACT PRODUCTS AS A |
| 11:56AM | 3 | MATTER OF LAW.  I WAS STRUCK BY WHAT YOU SAID EARLIER THAT YOU |
| 11:56AM | 4 | HAVE NOT YET HAD A PRODUCTS CASE IN THE MDL SETTING, AND OUR |
| 11:56AM | 5 | VIEW IS THAT THESE ARE NOT PROPERLY PLED PRODUCT LIABILITY |
| 11:56AM | 6 | CASES.  THIS IS NOT, AS THE PLAINTIFFS HAVE DESCRIBED IT, A |
| 11:56AM | 7 | MASS TORT BECAUSE THESE ARE COMMUNICATION SERVICES AND THE |
| 11:56AM | 8 | CLAIMS ARE REALLY DRIVEN BY ALLEGATIONS OF HARM ARRIVING FROM |
| 11:56AM | 9 | THIRD PARTY CONTENT.  EVERY INDIVIDUAL WHO USED THESE |
| 11:56AM | 10 | APPLICATIONS WILL HAVE HAD A DIFFERENT EXPERIENCE WITH THE |
| 11:56AM | 11 | SERVICE. |
| 11:56AM | 12 | THE COURT:  I THINK THE QUESTION, THOUGH, THAT |
| 11:56AM | 13 | YOU'RE ULTIMATELY GOING TO HAVE TO GRAPPLE WITH IS WHETHER IT |
| 11:57AM | 14 | IS A PRODUCT THAT CREATES ADDICTIVE BEHAVIOR. |
| 11:57AM | 15 | AND IF YOU DON'T GRAPPLE WITH IT, IF YOU CHOOSE TO JUST |
| 11:57AM | 16 | IGNORE IT, THEN A RULING IS GOING TO -- WE'LL NOT BE ABLE TO |
| 11:57AM | 17 | TAKE YOUR THOUGHTS INTO CONSIDERATION IF YOU DON'T GIVE THEM TO |
| 11:57AM | 18 | ME. |
| 11:57AM | 19 | MS. JONES:  AND WE FULLY UNDERSTAND THAT, |
| 11:57AM | 20 | YOUR HONOR.  WE PROBABLY VIEW THAT AS KIND OF TWO DISTINCT |
| 11:57AM | 21 | PIECES. |
| 11:57AM | 22 | ONE IS JUST THE BASIC QUESTION OF WHETHER THESE ARE |
| 11:57AM | 23 | PRODUCTS THAT SHOULD BE SUBJECT TO STRICT PRODUCT LIABILITY |
| 11:57AM | 24 | DOCTRINE.  WE THINK THE LAW IN EVERY STATE IS SUPPORTIVE OF OUR |
| 11:57AM | 25 | POSITION ON THESE FACTS. |

| | | |
|---|---|---|
| 11:57AM | 1 | THE COURT:  IS THE LAW THE SAME? |
| 11:57AM | 2 | MS. JONES:  INSOFAR AS THERE ARE A VARIETY OF COURTS |
| 11:57AM | 3 | AROUND THE COUNTRY WHO HAVE DETERMINED THAT THESE TYPES OF |
| 11:58AM | 4 | APPLICATIONS ARE NOT PRODUCTS. |
| 11:58AM | 5 | I MEAN, YOU, OF COURSE, ARE FAMILIAR WITH YOUR OWN |
| 11:58AM | 6 | DECISION IN THE NETFLIX CASE FROM EARLIER THIS YEAR, THERE WAS |
| 11:58AM | 7 | A DECISION IN HARRIS COUNTY, TEXAS WITH RESPECT TO INSTAGRAM, |
| 11:58AM | 8 | AND THERE HAVE BEEN DECISIONS WITH RESPECT TO VIDEO GAMES AND |
| 11:58AM | 9 | OTHER TYPES OF MEDIA SERVICES. |
| 11:58AM | 10 | THE COURT:  BUT EVEN IN THE NETFLIX CASE, IF THE |
| 11:58AM | 11 | CONTENT WAS CENTRAL TO THAT CASE, THAT IS NOT WHAT IS BEING |
| 11:58AM | 12 | ALLEGED. |
| 11:58AM | 13 | MS. JONES:  I THINK, YOUR HONOR, RESPECTFULLY, THAT |
| 11:58AM | 14 | WE WOULD TAKE A DIFFERENT VIEW AT LEAST OF THE PLEADINGS AS |
| 11:58AM | 15 | THEY EXIST TODAY. |
| 11:58AM | 16 | IN FACT, IF YOU JUST LISTEN TO WHAT SOME OF PLAINTIFFS' |
| 11:58AM | 17 | COUNSEL SAID WHEN THEY APPROACHED THE BENCH TO DISCUSS THEIR |
| 11:58AM | 18 | LEADERSHIP APPLICATIONS, MR. BERGMAN SPECIFICALLY REFERRED TO |
| 11:58AM | 19 | CAUSATION BY MALIGN CONTENT.  THAT'S -- THOSE ARE THE CASES |
| 11:58AM | 20 | THAT THEY'VE PLED. |
| 11:58AM | 21 | NOW, WE'VE HEARD DIFFERENT -- |
| 11:58AM | 22 | THE COURT:  THOSE ARE THE CASES THAT MOTIVATE THEM. |
| 11:58AM | 23 | THAT'S NOT NECESSARILY WHAT IS PLED. |
| 11:58AM | 24 | I'M JUST SAYING THAT THE QUESTION OF WHETHER OR NOT A |
| 11:59AM | 25 | PLATFORM'S ALGORITHM CAN, IN FACT, BE A PRODUCT, WHICH IS THE |

NEW TWIST, IT IS A NEW TWIST, THAT'S THE ISSUE.  THAT SEEMS TO

ME TO BE THE GATEWAY ONE WAY OR THE OTHER.

AND WE'RE NOT GOING TO DECIDE IT HERE.  YOU DON'T NEED TO

ARGUE IN FRONT OF ME BECAUSE I DON'T KNOW THE ANSWER YET.

MS. JONES:  UNDERSTOOD, YOUR HONOR.

AND I THINK WE'RE ACTUALLY VERY MUCH ON THE COURT'S PAGE

IN TERMS OF WANTING THAT ISSUE TO BE TEED UP AND ADDRESSED VERY

PROMPTLY BECAUSE TO THE POINT THAT YOU MADE EARLIER, IT WILL BE

DISPOSITIVE OF WHAT, IF ANY, OF THE CLAIMS MIGHT ACTUALLY

PROGRESS.

NOW, THERE'S -- OBVIOUSLY THERE ARE OTHER SEPARATE ISSUES,

INCLUDING SECTION 230, WHICH RAISES A SEPARATE INDEPENDENT

CROSS-CUTTING DISPOSITIVE QUESTION THAT THE COURT, WE BELIEVE,

ALSO SHOULD RESOLVE AT THE OUTSET.  THERE IS THEIR

FIRST AMENDMENT PROBLEMS WITH THE WAY THAT THESE CLAIMS HAVE

BEEN PLED.

BUT I DON'T THINK WE'RE ACTUALLY DISAGREEING WITH EACH

OTHER, YOUR HONOR, INSOFAR AS WE AGREE THAT IT MAKES GOOD SENSE

TO TAKE THOSE ISSUES ON AT THE OUTSET.

WITH RESPECT TO A MASTER COMPLAINT IN PARTICULAR, WE'RE

MINDFUL OF YOUR INCLINATION TO PROCEED IN THAT WAY.  WE

APPRECIATE YOUR GUIDANCE THAT THE PLEADINGS NEED TO BE

SUFFICIENTLY SPECIFIC FOR THE DEFENDANTS TO UNDERSTAND THE

NATURE OF THE CLAIMS THAT HAVE BEEN BROUGHT AGAINST THEM.  IN

PARTICULAR, WE THINK IT'S IMPORTANT THAT ANY MASTER COMPLAINT

```
12:00PM   1    NOT ADOPT THE SAME APPROACH THAT MANY OF THE EXISTING

12:00PM   2    COMPLAINTS HAVE TAKEN, WHICH IS TO LUMP ALL OF THE DEFENDANTS

12:00PM   3    AND THEIR APPLICATIONS TOGETHER IN TERMS OF HOW SPECIFIC CLAIMS

12:00PM   4    HAVE BEEN PLED.

12:00PM   5         IF THE COURT IS INCLINED TO PURSUE SOME SORT OF SHORT FORM

12:00PM   6    OR INDIVIDUAL COMPLAINT PROCESS, WE THINK IT'S CRITICALLY

12:00PM   7    IMPORTANT THAT IT NOT BE A CHECK-THE-BOX EXERCISE.

12:00PM   8         WE THINK WE ARE ENTITLED TO KNOW WHAT APPLICATIONS DID

12:00PM   9    THESE INDIVIDUALS USE, WHAT PARTICULAR CONTENT DO THEY CLAIM

12:01PM  10    THEY WERE SUPPOSED TO, WHAT INJURIES THEY'RE ALLEGING.

12:01PM  11              THE COURT:  SO NOTICE PLEADING STILL APPLIES.  THIS

12:01PM  12    IS A -- UNLESS I HAVE FRAUD.  IF THERE'S FRAUD, THEN WE'RE NOT

12:01PM  13    RULING, BUT THE POINT IS TO STREAMLINE.

12:01PM  14         SO THE NOTION -- IF IT'S A 100 PAGE COMPLAINT WITH 15

12:01PM  15    CAUSES OF ACTION, AND A PLAINTIFF ADOPTS 10 BUT NOT 5, NO, I

12:01PM  16    DON'T AGREE THAT IT CAN'T BE SOME JUST CHECK THE BOX.  THAT'S

12:01PM  17    THE POINT.

12:01PM  18         THE POINT IS THAT THEY'RE ADOPTING THE ALLEGATIONS OF THE

12:01PM  19    MASTER COMPLAINT, OTHERWISE IT WOULD JUST BE WE ARE BACK TO

12:01PM  20    EXACTLY WHERE WE ARE, WHICH I'M NOT INCLINED TO HAVE HAPPEN.

12:01PM  21              MS. JONES:  WELL, IF YOU CHECK-THE-BOX APPARATUS IS

12:01PM  22    JUST A MECHANISM FOR THE PLAINTIFF TO IDENTIFY WHAT ARE THEIR

12:01PM  23    PARTICULAR CLAIMS IN THE MASTER COMPLAINT, THAT'S FINE.

12:01PM  24         BUT WE THINK WE ALSO NEED TO HAVE AS TO ANY INDIVIDUAL

12:02PM  25    PLAINTIFF INFORMATION ABOUT WHAT SPECIFIC APPLICATIONS THEY
```

| | | |
|---|---|---|
| 12:02PM | 1 | CLAIMED TO HAVE USED AND WHAT SPECIFIC CONTENT THEY CLAIM TO |
| 12:02PM | 2 | HAVE BEEN THE SOURCE OF ANY HARM THAT THEY SUFFERED, AND WHAT |
| 12:02PM | 3 | PARTICULAR INJURIES THEY'VE CLAIMED. |
| 12:02PM | 4 | THE COURT:  THEY MAY NOT BE CLAIMING CONTENT, BUT |
| 12:02PM | 5 | WE'LL SEE.  WE'LL SEE. |
| 12:02PM | 6 | MS. JONES:  I THINK THE COMPLAINTS TO DATE HAVE |
| 12:02PM | 7 | SUGGESTED THAT THEY'RE ALL GROUNDED IN CONTENT, YOUR HONOR. |
| 12:02PM | 8 | THE COURT:  WE'LL SEE.  ALL RIGHT. |
| 12:02PM | 9 | MS. HAZAM:  YOUR HONOR, IF I MAY, JUST GOING BACK TO |
| 12:02PM | 10 | THE QUESTION ABOUT THE PRODUCTS ISSUE. |
| 12:02PM | 11 | WE AGREE THAT THAT IS WHAT IS NEW ABOUT THIS LITIGATION, |
| 12:02PM | 12 | THAT THESE CASES ARE PLED AS PRODUCT DEFECT CLAIMS. |
| 12:02PM | 13 | AND WHETHER THESE PLATFORMS ARE PRODUCTS AS DEFENDANTS |
| 12:02PM | 14 | THEMSELVES HAVE CALLED THEM ON MANY OCCASIONS, OR COMMUNICATION |
| 12:02PM | 15 | SERVICES, AS THEY'RE REFERRING TO IT IN THIS MDL, OR BOTH, IS A |
| 12:02PM | 16 | CRITICAL ISSUE.  IT IS GOING TO BE GOVERNED BY STATE LAW, AND |
| 12:02PM | 17 | WE'LL HAVE SOME VARIABILITY IN THAT REGARD.  SOME OF THE |
| 12:02PM | 18 | PRECEDENT THAT HAS BEEN CITED IS QUITE OLD AND NOT ABOUT SOCIAL |
| 12:02PM | 19 | MEDIA.  IT'S ABOUT OTHER KINDS OF PRODUCTS. |
| 12:02PM | 20 | IN TERMS OF HOW TO STRUCTURE THAT, IF THE COURT WANTS THAT |
| 12:03PM | 21 | TO GO FIRST, WE COULD DISCUSS AND THINK ABOUT WHETHER WE COULD |
| 12:03PM | 22 | ADDRESS CERTAIN STATES INITIALLY AND PUT THOSE FORWARD FOR THE |
| 12:03PM | 23 | COURT TO CONSIDER RATHER THAN TACKLING EVERY STATE AT ISSUE IN |
| 12:03PM | 24 | THIS LITIGATION, WHICH IS MOST STATES IN THE COUNTRY. |
| 12:03PM | 25 | SO IF YOUR HONOR WOULD LIKE TO PHASE THAT ISSUE IN SOME |

| | |
|---|---|
| 12:03PM | 1 |
| 12:03PM | 2 |
| 12:03PM | 3 |
| 12:03PM | 4 |
| 12:03PM | 5 |
| 12:03PM | 6 |
| 12:03PM | 7 |
| 12:03PM | 8 |
| 12:03PM | 9 |
| 12:03PM | 10 |
| 12:03PM | 11 |
| 12:04PM | 12 |
| 12:04PM | 13 |
| 12:04PM | 14 |
| 12:04PM | 15 |
| 12:04PM | 16 |
| 12:04PM | 17 |
| 12:04PM | 18 |
| 12:04PM | 19 |
| 12:04PM | 20 |
| 12:04PM | 21 |
| 12:04PM | 22 |
| 12:05PM | 23 |
| 12:05PM | 24 |
| 12:05PM | 25 |

MANNER, I THINK IT'S AT LEAST POTENTIALLY FEASIBLE TO DO AND IT

WOULD BENEFIT US TO MEET AND CONFER ABOUT IT.

        THE COURT:  AND THAT'S FINE.

    I THINK, AGAIN, THE POINT IS THAT MDL JUDGES ARE

CRITICIZED FOR HAVING THINGS GO INTO A BLACK HOLE.  WE'RE

CRITICIZED FOR THAT.

    SO NOT ONLY DO WE TAKE ON THE ADDITIONAL WORK, WE'RE

CRITICIZED FOR HOW WE DO IT.

    (LAUGHTER.)

        THE COURT:  SO IT SEEMS TO ME THAT IN ORDER TO MOVE

THIS ALONG, I NEED TO TEE UP YOUR BEST CASE BECAUSE THEY'RE

GOING TO ATTACK EVERYTHING.  I'M GOING TO ASSUME THAT THE

DEFENDANTS WILL ATTACK EVERYTHING.  THEY DON'T WANT A SINGLE

CLAIM TO PROCEED.

    SO IF IT IS -- WHATEVER RULE IT IS, MAJORITY, MINORITY, I

DON'T CARE, WHOEVER'S STATE IT IS, I DON'T CARE.

    WHAT I NEED YOU TO DO IS CREATE A MASTER COMPLAINT AND

IDENTIFY THE STRONGEST CLAIMS THAT YOU HAVE SO THEY CAN ATTACK

THOSE, AND I'M THINKING NO MORE THAN FIVE OR SIX SO I CAN GET

AN ANSWER TO YOU.  BECAUSE ONCE YOU HAVE SOMETHING, THEN I CAN

PARALLEL TRACK.  THEN I CAN OPEN DISCOVERY WHILE HAVING MOTION

WORK TO FIGURE OUT HOW TO NARROW ANY CLAIMS THAT MAY STILL BE

OUT THERE.

        MS. HAZAM:  ONE COMMENT ON THAT, YOUR HONOR.

    I APPRECIATE THE COURT SEEKING TO PRIORITIZE MOTION

12:05PM  1     PRACTICE BEFORE OPENING DISCOVERY WIDE UP, THERE ARE, HOWEVER,

12:05PM  2     THESE ISSUES OF EVIDENCE PRESERVATION THAT I BELIEVE ARE OF

12:05PM  3     CRITICAL IMPORTANCE.

12:05PM  4         THE COURT:  I AGREE THAT THEY ARE, TOO, AND I

12:05PM  5     EXPECT -- YOU'RE ORDERED TO MEET AND CONFER ON THEM, AND I

12:05PM  6     EXPECT THAT I DON'T HAVE TO GET INVOLVED, THAT YOU WILL FIGURE

12:05PM  7     OUT HOW TO PRESERVE DISCOVERY, THAT YOU WILL SEND ME A PROPOSED

12:05PM  8     FORM OF ORDER WITH RESPECT TO YOUR AGREEMENT, AND THEN I'LL

12:05PM  9     SIGN THE ORDER.  SO I AGREE, EVIDENCE HAS TO BE PRESERVED.

12:05PM  10    BUT WITH RESPECT TO THE SPECIFICS -- AND THAT'S WHY YOU'LL

12:05PM  11    HAVE YOUR TEAM, BUT I DON'T EXPECT THAT I'LL HAVE TO THEN

12:05PM  12    MICROMANAGE THAT.

12:05PM  13        MS. HAZAM:  WE ARE PREPARED TO DO THAT, YOUR HONOR,

12:05PM  14    AND PROPOSE THAT THE PARTIES HAVE A RULE 26 CONFERENCE IN ORDER

12:06PM  15    TO DO SO.  WE DON'T BELIEVE IT'S SELF-EXECUTING IN THIS

12:06PM  16    CONTEXT, SO WE DO BELIEVE THAT WE NEED TO ACTIVELY ENGAGE.

12:06PM  17        MS. JONES:  YOUR HONOR, IF I MAY?

12:06PM  18    WE'RE CERTAINLY HAPPY TO MEET AND CONFER AROUND THE

12:06PM  19    SUBJECTS OF EVIDENCE PRESERVATION, A BROADER ESI PROTOCOL, A

12:06PM  20    PROTECTIVE ORDER.

12:06PM  21    WE DON'T, AS WE NOTED IN THE CMC STATEMENT, BELIEVE THAT

12:06PM  22    DISCOVERY SHOULD BE OPEN ANY TIME SOON.  WE THINK IT'S

12:06PM  23    PREMATURE TO HAVE A RULE 26(F) CONFERENCE.

12:06PM  24        THE COURT:  I AM NOT ORDERING DISCOVERY OPEN.  I AM

12:06PM  25    ORDERING YOU TO MEET AND CONFER AND TO PROVIDE ME -- IF I HAVE

| | |
|---|---|
| 12:06PM | 1 |
| 12:06PM | 2 |
| 12:06PM | 3 |
| 12:06PM | 4 |
| 12:06PM | 5 |
| 12:06PM | 6 |
| 12:06PM | 7 |
| 12:06PM | 8 |
| 12:07PM | 9 |
| 12:07PM | 10 |
| 12:07PM | 11 |
| 12:07PM | 12 |
| 12:07PM | 13 |
| 12:07PM | 14 |
| 12:07PM | 15 |
| 12:07PM | 16 |
| 12:07PM | 17 |
| 12:07PM | 18 |
| 12:07PM | 19 |
| 12:07PM | 20 |
| 12:07PM | 21 |
| 12:07PM | 22 |
| 12:08PM | 23 |
| 12:08PM | 24 |
| 12:08PM | 25 |

TO GIVE YOU A DEADLINE, I WILL -- A PROTOCOL AND ORDER TO DEAL
WITH EVIDENCE PRESERVATION.  THAT IS TOTALLY DOABLE AND TOTALLY
APPROPRIATE.

          MS. JONES:  WE'RE HAPPY TO DO THAT, YOUR HONOR.

          THE COURT:  HOW MUCH TIME DO YOU NEED?

          MS. HAZAM:  I WOULD APPRECIATE COMING BACK TO THE
COURT WITHIN A MONTH, IF NECESSARY, IF THERE ARE DISPUTES.  SO
HAVING A DEADLINE IN ADVANCE OF THAT.

          MS. JONES:  AND WE'RE CERTAINLY HAPPY TO DO THAT.  I
SUSPECT, YOUR HONOR, JUST AS AN INTERIM STEP, WE'LL BE GUIDED
BY THE COURT'S DIRECTION ON WHAT THE LEADERSHIP, THE BROADER
LEADERSHIP TEAM WILL BE ON THE PLAINTIFFS' SIDE SO WE'LL KNOW
WITH WHOM WE'LL BE COORDINATING, BUT TRIGGERING SOME KIND OF
MEET AND CONFER DEADLINE OFF OF THAT SEEMS JUST FINE TO US.

          THE COURT:  RIGHT NOW YOU CAN MEET AND CONFER WITH
MR. SEEGER AND MS. HAZAM, AND YOU'LL HAVE A BIGGER TEAM VERY
SOON.

     OKAY.  THERE ARE SOME OTHER THINGS I WANT TO TALK ABOUT,
BUT IT SEEMS TO ME IT PROBABLY MAKES SENSE TO HAVE YOU ALL COME
BACK IN DECEMBER AND HAVE ANOTHER CONFERENCE.

     UNTIL I HAVE THIS CASE OPERATING, I EXPECT THAT WE WILL
MEET MONTHLY.  I HATE ZOOM.  I'M SORRY.  I MEAN, I SURVIVED
WITH ZOOM.  I TRIED CASES WITH ZOOM.

     BUT WE'RE NOT IN A PERIOD WHERE THAT IS NECESSARY ANY
MORE, AND ONCE I -- AGAIN, MAYBE DOWN THE LINE AND WHEN I KNOW

| 12:08PM | 1 | YOU ALL VERY WELL AND WHEN YOU CAN READ MY EXPRESSIONS TO STOP |

YOU ALL VERY WELL AND WHEN YOU CAN READ MY EXPRESSIONS TO STOP

TALKING AND THINGS LIKE THAT, THEN WE CAN MOVE TO ZOOM, BUT

RIGHT NOW I'M NOT THERE.

    I'M GOING TO BE IN A CRIMINAL TRIAL, AND WE START OPENING

STATEMENTS RIGHT AFTER THANKSGIVING.  SO BASICALLY I HAVE --

WELL, THE 16TH WOULD BE THE BEST IN THE MORNING OR I COULD DO

IT THE 14TH, BUT IF I HAVE A JURY VERDICT THAT DAY, YOU'RE

GOING TO SIT AND WAIT.

        MS. JONES:  YOUR HONOR, I'M JUST CONSULTING WITH

FOLKS ON SCHEDULE.

    (DISCUSSION OFF THE RECORD.)

        MS. JONES:  YOUR HONOR, EITHER OF THOSE DATES WILL

WORK FOR THE DEFENSE.

        MS. HAZAM:  YOUR HONOR, THE 14TH WOULD WORK BETTER

FOR PLAINTIFFS.

        THE COURT:  OKAY.  I'LL SET YOU FOR 8:30 A.M.

    BUT, AGAIN, IF I HAVE A JURY VERDICT, YOU COME SECOND.

        MS. HAZAM:  UNDERSTOOD.

        THE COURT:  OKAY.  DECEMBER 14TH, 8:30 A.M.

    OTHER ISSUES THAT OCCUR TO ME, THERE SHOULD BE SOME JOINT

AGREEMENT THAT WHENEVER WE GET THIS MASTER COMPLAINT AND THE

ADDENDUMS BY THE PLAINTIFFS, THE INDIVIDUAL PLAINTIFFS THAT WE

SHOULD HAVE SOME ORDER THAT HAS THE DEFENDANTS' MOTION OR THE

DEFENDANT PERHAPS CAN JUST FILE A NOTICE THAT THEY HAVE

ACCEPTED SERVICE OF PROCESS FOR ALL OF THESE SO THAT ALL OF THE

| | | |
|---|---|---|
| 12:10PM | 1 | MOTION WORK DEALS WITH RESPECT TO ALL OF THEM.  NO ONE SHOULD |
| 12:10PM | 2 | HAVE TO SERVE INDIVIDUAL ONES FOR THE DEFENDANTS WHO ARE |
| 12:10PM | 3 | ALREADY HERE.  SO I'D LIKE TO HAVE YOU WORK ON THAT, MS. JONES. |
| 12:10PM | 4 | APPOINTMENTS OF GUARDIANS AD LITEM, THESE ARE ALL MINORS. |
| 12:10PM | 5 | I NEED TO HAVE ADULTS, AND I NEED ORDERS FOR THAT. |
| 12:10PM | 6 | AND, MS. ANDERSON, I WAS HOPING YOU COULD MANAGE WITH THIS |
| 12:10PM | 7 | IN PARTICULAR BECAUSE IT'S JUST A LOGISTICAL ISSUE. |
| 12:11PM | 8 | THE CALIFORNIA STATE COURTS HAVE A I THINK PRETTY |
| 12:11PM | 9 | COMPREHENSIVE FORMAT FOR WHAT IS REQUIRED. |
| 12:11PM | 10 | I'M HAPPY TO ISSUE AN ORDER THAT SAYS THAT I WILL |
| 12:11PM | 11 | PRESUMPTIVELY APPOINT A PARENT OR A LEGAL GUARDIAN. |
| 12:11PM | 12 | ANYBODY ELSE I WOULD REVIEW TO UNDERSTAND WHY A PARENT OR |
| 12:11PM | 13 | LEGAL GUARDIAN IS NOT BEING REPRESENTATIVE, BUT EVERY PLAINTIFF |
| 12:11PM | 14 | WHO IS NOT AN ADULT MUST HAVE THE APPOINTMENT. |
| 12:11PM | 15 | DO YOU HAVE A SENSE NOW OR DID YOU ALL TALK IN ADVANCE |
| 12:11PM | 16 | ABOUT HOW MUCH TIME YOU WOULD NEED FOR A MASTER COMPLAINT TO |
| 12:11PM | 17 | GET ONE ON FILE? |
| 12:12PM | 18 | MS. HAZAM:  YOUR HONOR, WE DID NOT MEET AND CONFER |
| 12:12PM | 19 | ABOUT IT. |
| 12:12PM | 20 | THE DEFENDANTS HAVE PROPOSED, I BELIEVE, DECEMBER 9TH. |
| 12:12PM | 21 | PLAINTIFFS DO NOT BELIEVE THAT THAT IS A PRACTICABLE DATE, BUT |
| 12:12PM | 22 | I THINK COULD DO SO BY EARLY NEXT YEAR IN ALL LIKELIHOOD, FOR |
| 12:12PM | 23 | EXAMPLE, 90 DAYS, YOUR HONOR. |
| 12:12PM | 24 | MS. JONES:  AND, YOUR HONOR, FROM OUR PERSPECTIVE, |
| 12:12PM | 25 | IF DISCOVERY IS STAYED IN THE MEANTIME, THAT'S ACCEPTABLE TO |

| 12:12PM | 1 | US. |

12:12PM    1    US.

12:12PM    2          THE COURT:  OKAY.  THEN WHAT WE'LL DO IS I'LL GIVE

12:12PM    3    YOU BETWEEN NOW AND OUR NEXT CONFERENCE TIME TO THINK ABOUT

12:12PM    4    WHAT THE PLAN IS GOING TO LOOK LIKE, DATES CERTAIN FOR THE

12:12PM    5    FILING OF ALL OF THESE THINGS, AND THEN WE CAN COME UP WITH A

12:12PM    6    BRIEFING SCHEDULE.

12:12PM    7        IN MY VIEW THE BRIEFING SCHEDULE SHOULD NOT BE ALL THAT

12:13PM    8    LONG, BECAUSE WHAT I'M TRYING TO DO IS CABIN HOW MUCH IS BEING

12:13PM    9    BRIEFED SO THAT I CAN, IN FACT, GET YOU SOME ANSWER BACK.

12:13PM    10       AND THAT MEANS THAT, YOU KNOW, IF I DO THESE SERIALLY, WE

12:13PM    11    SHOULD BE ABLE TO MOVE THIS.

12:13PM    12       WITH RESPECT TO THE SECTION 230, MAYBE WE'LL HAVE MORE

12:13PM    13    INFORMATION ON GONZALEZ BY THEN.  I DON'T KNOW.

12:13PM    14       OKAY.  I HAVE SOME OTHER LITTLE TINY THINGS, BUT WHAT ELSE

12:13PM    15    DO YOU WANT TO TALK ABOUT TODAY?

12:13PM    16         MS. HAZAM:  YOUR HONOR, ONE ISSUE PLAINTIFFS RAISED

12:13PM    17    IN OUR STATUS CONFERENCE STATEMENT THAT WE WOULD LIKE TO

12:13PM    18    ADDRESS IS PRODUCTION OF MATERIALS PREVIOUSLY PRODUCED IN OTHER

12:13PM    19    LITIGATION AND IN RESPONSE TO INVESTIGATIONS BY DEFENDANTS.

12:13PM    20       THIS IS SOMETHING THAT HAS BEEN ORDERED VERY EARLY ON IN

12:13PM    21    A NUMBER OF MDL'S, AND BECAUSE THESE HAVE ALREADY BEEN

12:13PM    22    PRODUCED, WE DO NOT BELIEVE THAT THERE IS A BURDEN ASSOCIATED

12:13PM    23    AND WOULD TAKE IT IN THE FORM IT WAS PRODUCED PREVIOUSLY.

12:14PM    24       WE WOULD LIKE TO PROCEED EXPEDITIOUSLY ON THAT FRONT

12:14PM    25    BECAUSE IT'S SOMETHING THAT CAN BE DONE.

| | | |
|---|---|---|
| 12:14PM | 1 | MS. JONES:  AND, YOUR HONOR, YOU CAN PROBABLY |
| 12:14PM | 2 | ANTICIPATE MY RESPONSE TO THAT, WHICH IS BEFORE THERE'S BEEN A |
| 12:14PM | 3 | DETERMINATION ABOUT WHETHER OR NOT THIS MATTER SHOULD PROCEED, |
| 12:14PM | 4 | WE THINK IT'S NOT EFFICIENT.  WE DON'T THINK IT'S APPROPRIATE |
| 12:14PM | 5 | FOR DEFENDANTS TO BE PUT IN A POSITION TO PRODUCE THINGS THAT |
| 12:14PM | 6 | WERE PRODUCED IN OTHER MATTERS.  SO -- |
| 12:14PM | 7 | THE COURT:  SO WHICH MATTERS ARE WE TALKING ABOUT |
| 12:14PM | 8 | SPECIFICALLY? |
| 12:14PM | 9 | WHAT PAGE OF YOUR STATEMENT ARE THOSE IDENTIFIED IF AT |
| 12:14PM | 10 | ALL? |
| 12:14PM | 11 | MS. HAZAM:  THE INVESTIGATIONS THAT WE ARE AWARE OF |
| 12:14PM | 12 | THROUGH PRESS REPORTS ARE IDENTIFIED IN A FOOTNOTE TO THE |
| 12:14PM | 13 | STATUS CONFERENCE STATEMENT.  IT'S FOOTNOTE 13 ON PAGE 18. |
| 12:14PM | 14 | PLAINTIFFS, OF COURSE, MAY NOT BE AWARE OF ALL SUCH |
| 12:14PM | 15 | INVESTIGATIONS OR ALL OTHER LITIGATION. |
| 12:14PM | 16 | THE COURT:  ARE THERE LAWSUITS AS OPPOSED TO |
| 12:15PM | 17 | ATTORNEY GENERAL INVESTIGATIONS? |
| 12:15PM | 18 | MS. HAZAM:  THERE HAVE BEEN OTHER LAWSUITS, |
| 12:15PM | 19 | INCLUDING SOME CASES THAT HAVE BEEN CITED TODAY TO YOUR HONOR. |
| 12:15PM | 20 | THERE ALSO, I BELIEVE, HAVE BEEN BOTH INVESTIGATIONS AND |
| 12:15PM | 21 | SOME LITIGATION ABROAD, INCLUDING, FOR EXAMPLE, THE CORONER'S |
| 12:15PM | 22 | INVESTIGATION IN THE UNITED KINGDOM THAT WAS REFERENCED |
| 12:15PM | 23 | EARLIER. |
| 12:15PM | 24 | THE COURT:  RIGHT, WHICH IS CURRENTLY ALREADY IN THE |
| 12:15PM | 25 | POSSESSION OF ONE OF THE PLAINTIFF'S ATTORNEYS. |

| | | |
|---|---|---|
| 12:15PM | 1 | MS. HAZAM: I BELIEVE SO. IT IS NOT YET |
| 12:15PM | 2 | DISCLOSABLE, BUT I BELIEVE IT IS. |
| 12:15PM | 3 | THE COURT: RIGHT. |
| 12:15PM | 4 | MS. JONES: AND I THINK PART OF OUR CHALLENGE, |
| 12:15PM | 5 | YOUR HONOR, IS THE EXTENT OF WHAT WE KNOW ABOUT WHAT THEY'RE |
| 12:15PM | 6 | EVEN SEEKING IS INCLUDED IN FOOTNOTE 13 TO THE CMC, BUT MORE |
| 12:15PM | 7 | FUNDAMENTALLY FROM OUR PERSPECTIVE THIS DISCUSSION IS WILDLY |
| 12:15PM | 8 | PREMATURE IN THE FACE OF THE MOTIONS THAT THE COURT WILL TAKE |
| 12:15PM | 9 | ON AT THE OUTSET OF THE LITIGATION. |
| 12:15PM | 10 | THE COURT: WELL, I'M NOT SURE THAT IT IS WILDLY |
| 12:15PM | 11 | PREMATURE. IT MAY BE PREMATURE. |
| 12:15PM | 12 | MS. JONES: FAIR ENOUGH. FAIR ENOUGH. |
| 12:16PM | 13 | THE COURT: I DON'T KNOW THAT IT'S WILDLY PREMATURE, |
| 12:16PM | 14 | IN PART BECAUSE WHAT I DON'T WANT TO RECEIVE IS NEW INFORMATION |
| 12:16PM | 15 | WHICH LEADS US TO -- FORCES US TO HAVE TO RE-DO EVERYTHING THAT |
| 12:16PM | 16 | HAS BEEN DONE BEFORE. |
| 12:16PM | 17 | IN THE ANTITRUST CASES, ROUTINELY EVIDENCE THAT HAS BEEN |
| 12:16PM | 18 | PRODUCED IS REPRODUCED BEFORE THE MOTION TO DISMISS IS |
| 12:16PM | 19 | RESOLVED. IT'S A LITTLE BIT DIFFERENT BECAUSE IN THOSE CASES |
| 12:16PM | 20 | THERE ARE ALSO CRIMINAL MATTERS GOING ON. |
| 12:16PM | 21 | BUT WHAT I WOULD NEED TO KNOW MORE SPECIFICALLY IS THE |
| 12:16PM | 22 | SPECIFIC CASES WHICH THE PLAINTIFFS ARE AWARE OF AND FOR WHICH |
| 12:16PM | 23 | THEY WOULD LIKE THE DISCOVERY. |
| 12:16PM | 24 | THE INVESTIGATIONS, IT'S NOT CLEAR TO ME THAT YOU WOULD BE |
| 12:16PM | 25 | ENTITLED TO THAT. I DON'T KNOW WHAT THE ATTORNEYS GENERAL ARE |

12:17PM 1     DOING.  I DON'T KNOW IF YOU HAVE CONTACTED THEM, IF THEY ARE

12:17PM 2     GOING TO SEEK TO INTERVENE IN THESE CASES OR NOT, AND I DON'T

12:17PM 3     KNOW WHAT THEY'VE ASKED FOR.  SO I DON'T KNOW HOW BROAD OR -- I

12:17PM 4     DON'T KNOW HOW BROAD IT IS, AND IT MAY NOT BE APPROPRIATE.  I

12:17PM 5     DON'T KNOW WHAT THE AGE -- I JUST DON'T HAVE ENOUGH

12:17PM 6     INFORMATION.  SO I WOULD BE PREPARED TO ORDER IT AT THE NEXT

12:17PM 7     HEARING, BUT I DO NEED TO KNOW SPECIFICALLY WHAT IT IS THAT

12:17PM 8     YOU'RE ASKING FOR AND WHAT THE SCOPE OF THOSE PRODUCTIONS WERE.

12:17PM 9              MS. JONES:  FROM OUR PERSPECTIVE, IF YOU WERE

12:17PM 10    INCLINED TO CONSIDER THIS REQUEST BEFORE THE MOTION TO DISMISS

12:17PM 11    HAS EVEN BEEN FILED, WE WOULD REQUEST AN OPPORTUNITY TO BRIEF

12:17PM 12    THAT ISSUE FOR THE COURT, BECAUSE FROM OUR PERSPECTIVE, THERE'S

12:17PM 13    JUST A BASELINE REASON TO STAY DISCOVERY BROADLY, INCLUDING

12:18PM 14    PRODUCTION OF THE MATERIALS THAT WE'RE DISCUSSING RIGHT NOW

12:18PM 15    UNDER THE LAW OF THIS COURT, THE LAW OF THE NINTH CIRCUIT, BUT

12:18PM 16    IMPORTANTLY, THE LAW THAT SAYS THAT SECTION 230 PROVIDES BROAD

12:18PM 17    IMMUNITY, NOT JUST FROM LAWSUITS AND LIABILITY, BUT ALSO FROM

12:18PM 18    THE BURDENS OF LITIGATION, INCLUDING DISCOVERY.

12:18PM 19              THE COURT:  YEAH, BUT THIS ISN'T A BURDEN.  IT'S NOT

12:18PM 20    A BURDEN.

12:18PM 21              MS. JONES:  WELL, YOUR HONOR --

12:18PM 22              THE COURT:  IT'S AN INCONVENIENCE.  IT'S SOMETHING

12:18PM 23    THAT YOU DON'T WANT TO DO, BUT IT'S NOT WHAT WE WOULD CALL A

12:18PM 24    BURDEN.

12:18PM 25              MS. JONES:  YOUR HONOR, WITHOUT STANDING HERE TODAY

12:18PM 1    HAVING THE FULL SENSE OF EVERY POTENTIAL LITIGATION OR

12:18PM 2    INVESTIGATION THEY'RE CONTEMPLATING, I SUSPECT THAT THIS IS A

12:18PM 3    MORE COMPLICATED ISSUE THAN HAS BEEN PRESENTED TO THE COURT

12:18PM 4    THIS MORNING.  THERE MAY WELL NEED TO BE AN ASSESSMENT OF WHAT

12:18PM 5    EXACTLY HAS BEEN PRODUCED ELSEWHERE AND WHETHER ANY OF THAT

12:19PM 6    WOULD BEAR ON THESE CASES, AND THAT IS MEANINGFUL DISCOVERY

12:19PM 7    RELATED ACTIVITY DURING A PERIOD WHEN SECTION 230 IMMUNITY

12:19PM 8    SUGGESTS THAT DISCOVERY SHOULD BE STAYED UNTIL THAT ISSUE HAS

12:19PM 9    BEEN RESOLVED BY THE COURT.

12:19PM 10    THE COURT:  LIKE I SAID, I DON'T HAVE ENOUGH

12:19PM 11    INFORMATION.

12:19PM 12    MS. HAZAM:  YOUR HONOR, PLAINTIFFS CAN SEEK TO

12:19PM 13    PROVIDE YOU WITH THAT INFORMATION.  WE HAVE LESS AWARENESS, OF

12:19PM 14    COURSE, THAN THE DEFENDANTS ABOUT OTHER LITIGATION OR

12:19PM 15    INVESTIGATIONS THAT THEY ARE FACING, SO WE WILL REACH OUT TO

12:19PM 16    THEM TO SEE IF ANY SHARING OF THAT INFORMATION IS POSSIBLE, AND

12:19PM 17    WE WILL PROVIDE YOU WITH THE INFORMATION THAT WE DO HAVE IN

12:19PM 18    ADVANCE OF THE NEXT HEARING.

12:19PM 19    I WOULD JUST NOTE AGAIN, THIS HAS BEEN DONE FREQUENTLY

12:19PM 20    EVEN IN CASES WHERE THEIR PREEMPTION MOTIONS ARE GOING TO BE

12:19PM 21    BROUGHT, ET CETERA.  IT WAS DONE IMMEDIATELY IN 3M, JUUL, AND

12:19PM 22    IN OPIOIDS.

12:19PM 23    THE COURT:  ALL RIGHT.  WELL, I'LL TALK TO THOSE

12:19PM 24    JUDGES AS WELL.

12:19PM 25    MS. HAZAM:  THANK YOU, YOUR HONOR.

| | | |
|---|---|---|
| 12:19PM | 1 | MS. JONES:  YOUR HONOR, WOULD IT BE -- IF WE'RE |
| 12:19PM | 2 | GOING TO BE DISCUSSING THIS ISSUE AGAIN AT OUR CONFERENCE IN |
| 12:20PM | 3 | DECEMBER, WOULD IT BE OF USE TO THE COURT TO HAVE SHORT |
| 12:20PM | 4 | BRIEFING ON THE TOPIC SO WE'VE AT LEAST HASHED OUT THE ISSUE |
| 12:20PM | 5 | MORE CONCRETELY? |
| 12:20PM | 6 | THE COURT:  IT WOULD BE.  IT WOULD BE EVEN MOST |
| 12:20PM | 7 | HELPFUL IF IT'S ONE DOCUMENT. |
| 12:20PM | 8 | MS. JONES:  I THINK WE CAN DO THAT, YOUR HONOR. |
| 12:20PM | 9 | THE COURT:  EXCELLENT. |
| 12:20PM | 10 | MS. HAZAM:  WE HAVE DONE IT ONCE ALREADY.  WE CAN |
| 12:20PM | 11 | TRY IT AGAIN. |
| 12:20PM | 12 | THE COURT:  OTHER ISSUES? |
| 12:20PM | 13 | MS. HAZAM:  THIS MAY BE ON YOUR LIST BUT DIRECT |
| 12:20PM | 14 | FILING IN THE MDL, PLAINTIFFS WOULD SEEK SUCH AN ORDER WHICH IS |
| 12:20PM | 15 | GENERALLY STANDARD PRACTICE IN THESE CASES. |
| 12:20PM | 16 | MS. JONES:  EXCUSE ME, YOUR HONOR.  I THINK, AGAIN, |
| 12:20PM | 17 | FROM OUR PERSPECTIVE, THAT'S A STEP THAT WE DON'T LIKELY NEED |
| 12:20PM | 18 | TO TAKE RIGHT OUT OF THE GATE GIVEN THE NEED TO ADDRESS THE |
| 12:20PM | 19 | DISPOSITIVE MOTIONS THAT WE'VE BEEN DISCUSSING FOR SOME TIME AT |
| 12:20PM | 20 | THIS POINT. |
| 12:20PM | 21 | WE'RE CERTAINLY HAPPY TO DISCUSS WITH PLAINTIFFS THE |
| 12:20PM | 22 | POTENTIAL FORM OF A DIRECT FILING ORDER, BUT, AGAIN, THAT WOULD |
| 12:20PM | 23 | FALL INTO THE CATEGORY OF THE TYPE OF APPARATUS AND |
| 12:21PM | 24 | INFRASTRUCTURE THAT WE DON'T THINK RESOURCES NEED TO BE DEVOTED |
| 12:21PM | 25 | TOWARDS WHILE THE COURT FIRST HAS TO RESOLVE THE QUESTION OF |

12:21PM  1    WHETHER THESE CASES CAN PROCEED AT ALL.

12:21PM  2              MS. HAZAM:  YOUR HONOR, I WOULD JUST RESPOND THAT I

12:21PM  3    DON'T THINK ONE HAS ANYTHING TO DO WITH THE OTHER, AND, IN

12:21PM  4    FACT, THE GREATER USE OF RESOURCES IS TO FORCE ALL PLAINTIFFS

12:21PM  5    TO HAVE TO GO THROUGH THE TRANSFER PROCESS, BURDEN THE PANEL

12:21PM  6    WITH TAKING ACTION IN THAT REGARD WHEN WE CAN HAVE A DIRECT

12:21PM  7    FILING ORDER.

12:21PM  8         THE CASES ARE GOING TO BE FILED, IT'S JUST A MATTER OF

12:21PM  9    ADMINISTRATIVE EFFICIENCY, AND THAT'S ONE OF THE MAIN REASONS

12:21PM  10   FOR CREATING AN MDL TO STREAMLINE SUCH MATTERS.

12:21PM  11             THE COURT:  OKAY.  SO WHAT I'M NOT -- AND MAYBE I'M

12:21PM  12   NOT UNDERSTANDING EXACTLY WHAT YOU ENVISION GIVEN THAT THERE'S

12:21PM  13   GOING TO BE A MASTER COMPLAINT AND THEN PLAINTIFFS ARE GOING TO

12:21PM  14   ADOPT WITH, I WOULD HAVE THOUGHT, THEIR OWN PLEADING, SO WHAT

12:21PM  15   IS THE -- HOW DOES DIRECT FILING THEN IMPACT THAT?

12:22PM  16             MS. HAZAM:  IN TWO WAYS, YOUR HONOR.

12:22PM  17        ONE IS COMPLAINTS THAT ARE BEING FILED IN ADVANCE OF A

12:22PM  18   MASTER COMPLAINT, WHICH MAY TAKE 90 DAYS, THERE MAY BE QUITE A

12:22PM  19   FEW COMPLAINTS THAT ARE FILED IN THE MEANTIME, AND THEN ALSO TO

12:22PM  20   ENSURE THAT THE SHORT FORM ADOPTION PROCEDURE PROCEEDS THROUGH

12:22PM  21   THAT SAME MANNER.

12:22PM  22             THE COURT:  AND ALL YOU'RE ASKING IS THAT THEY BE

12:22PM  23   ABLE TO FILE IT IN 22-MD-3047 AS OPPOSED TO SUBMITTING OR

12:22PM  24   FILING IT AS A SEPARATE ACTION OR BEING TRANSFERRED THROUGH THE

12:22PM  25   MDL?

| | | |
|---|---|---|
| 12:22PM | 1 | MS. HAZAM: YEAH. WE COULD PROVIDE OTHER MODEL |
| 12:22PM | 2 | ORDERS TO THAT EFFECT FOR YOUR HONOR TO REVIEW, AND WE COULD |
| 12:22PM | 3 | MEET AND CONFER WITH THE DEFENDANTS ABOUT THE PROPER FORM OF IT |
| 12:22PM | 4 | HERE. |
| 12:22PM | 5 | THE COURT: I THINK THAT'S FINE. |
| 12:22PM | 6 | SO I'LL EXPECT A FORM OF ORDER ON THAT TOPIC. |
| 12:22PM | 7 | OKAY. WHAT ELSE DID YOU HAVE? |
| 12:23PM | 8 | MS. JONES: YOUR HONOR, JUST ON THE DIRECT FILING |
| 12:23PM | 9 | POINT, AND I AGREE THAT WE CAN CERTAINLY TALK ABOUT THAT IN |
| 12:23PM | 10 | ADVANCE OF OUR NEXT CONFERENCE, AND WE CAN BUILD THIS INTO |
| 12:23PM | 11 | WHATEVER WE SUBMIT TO THE COURT, BUT OUR VIEW IS TO THE EXTENT |
| 12:23PM | 12 | THAT THERE IS A DIRECT FILING ORDER THAT IS ADOPTED BY THE |
| 12:23PM | 13 | COURT, THAT ADDITIONAL PLAINTIFFS SHOULD BE DEEMED FILED WITHIN |
| 12:23PM | 14 | THEIR STATE OF RESIDENCE AS OPPOSED TO THE LOCATION OF THE MDL, |
| 12:23PM | 15 | AND WE WOULD OBVIOUSLY WANT TO BAKE INTO ANY ORDER THE |
| 12:23PM | 16 | UNDERSTANDING THAT IT DOESN'T RESPECT -- IT DOESN'T AFFECT ANY |
| 12:23PM | 17 | OF THE DEFENDANTS' LEXICON RIGHTS. |
| 12:23PM | 18 | MS. HAZAM: YOUR HONOR, AS TO THE LATTER, WE'RE |
| 12:23PM | 19 | CERTAINLY WILLING TO MEET AND CONFER. WE'RE WILLING TO MEET |
| 12:23PM | 20 | AND CONFER ON ALL MATTERS, BUT IMPORTANTLY, PLAINTIFFS HAVE THE |
| 12:23PM | 21 | RIGHT TO FILE WHERE VENUE AND JURISDICTION IS PROPER. |
| 12:23PM | 22 | THE COURT: I AGREE. |
| 12:23PM | 23 | MS. HAZAM: THEY SHOULDN'T BE FORCED TO FOREGO AN |
| 12:23PM | 24 | OPTION -- |
| 12:23PM | 25 | THE COURT: I AGREE. YOU CAN'T TELL THE PLAINTIFFS |

| | | |
|---|---|---|
| 12:23PM | 1 | WHERE TO FILE.  IF THEY CHOSE TO FILE AN ACTION HERE IN THE |
| 12:24PM | 2 | NORTHERN DISTRICT, AND YOU HAD A BASIS TO TRANSFER IT, YOU |
| 12:24PM | 3 | COULD MAKE THAT MOTION, BUT YOU DON'T GET TO DICTATE TO THE |
| 12:24PM | 4 | PLAINTIFF WHERE TO FILE A COMPLAINT. |
| 12:24PM | 5 | MS. JONES:  WE UNDERSTAND, YOUR HONOR.  I JUST |
| 12:24PM | 6 | WANTED TO NOTE OUR POSITION ON THAT ISSUE. |
| 12:24PM | 7 | THE COURT:  I REMEMBER READING THAT, BUT IT'S NOT |
| 12:24PM | 8 | YOUR RIGHT. |
| 12:24PM | 9 | OKAY.  SO YOU ALL WILL MEET AND CONFER ON THOSE OTHER |
| 12:24PM | 10 | TOPICS, AND TO THE EXTENT THAT YOU HAVE DISAGREEMENTS ON THE |
| 12:24PM | 11 | FORM OF ORDER, YOU KNOW, SOMETHING LIKE THAT I CAN DO, I COULD |
| 12:24PM | 12 | DO A QUICK ZOOM HEARING OR YOU CAN SEND ME THE PROPOSED FORM OF |
| 12:24PM | 13 | ORDER WITH BRIEF STATEMENTS.  JUST REMEMBER THAT I'M HEADING |
| 12:24PM | 14 | INTO TRIAL SOON SO -- OKAY? |
| 12:24PM | 15 | MS. HAZAM:  YES, YOUR HONOR. |
| 12:24PM | 16 | MS. JONES:  AND AM I CORRECT HEARING, YOUR HONOR, |
| 12:24PM | 17 | THAT TO THE EXTENT THAT WE CAN SUBMIT JOINT STATEMENTS ON THESE |
| 12:24PM | 18 | TYPES OF ISSUES, THAT'S OF USE TO YOUR HONOR? |
| 12:24PM | 19 | THE COURT:  IT IS PREFERABLE, YES. |
| 12:24PM | 20 | MS. JONES:  OKAY. |
| 12:24PM | 21 | THE COURT:  THESE DOCKETS GET TO BE VERY BIG. |
| 12:24PM | 22 | MS. JONES:  YES.  UNDERSTOOD. |
| 12:24PM | 23 | THE COURT:  SO THAT WAY I DON'T HAVE TO GO, YOU |
| 12:25PM | 24 | KNOW, SEARCHING TO SEE DID THEY RESPOND?  DID THEY NOT RESPOND? |
| 12:25PM | 25 | ET CETERA. |

12:25PM  1              MS. JONES:  WE'LL DO OUR BEST TO MAKE THAT WORK,
12:25PM  2    YOUR HONOR.
12:25PM  3              THE COURT:  OKAY.  AT THIS POINT -- OH, ANYTHING
12:25PM  4    ELSE?
12:25PM  5              MS. HAZAM:  I DON'T HAVE ANYTHING ELSE, YOUR HONOR.
12:25PM  6              MS. JONES:  I THINK YOU'VE COVERED EVERYTHING ON OUR
12:25PM  7    LIST, YOUR HONOR.
12:25PM  8              THE COURT:  OKAY.  SO AT THIS POINT, MS. ANDERSON,
12:25PM  9    YOU'RE TAKING OVER THE SPREADSHEET.
12:25PM 10              MS. ANDERSON:  YES, YOUR HONOR.
12:25PM 11              MS. JONES:  WITH OUR THANKS, MS. ANDERSON.
12:25PM 12              THE COURT:  IF COVINGTON WILL SEND IT TO HER.
12:25PM 13              MS. JONES:  OF COURSE.
12:25PM 14              THE COURT:  SO I DON'T WANT HER TO RETYPE ANYTHING.
12:25PM 15              MS. JONES:  AND, YOUR HONOR, IF IT'S USEFUL TO HAVE
12:25PM 16    A KIND OF ANALOGOUS DESIGNEE ON THE DEFENSE SIDE, WE CAN
12:25PM 17    CERTAINLY PROPOSE SOMEONE TO THE COURT.  WE'LL BE GUIDED BY
12:25PM 18    WHAT YOUR PREFERENCE IS, BUT IF IT WOULD BE USEFUL TO THE COURT
12:25PM 19    AND MS. ANDERSON TO HAVE OUR OWN COMPARABLE PERSON, WE'RE HAPPY
12:26PM 20    TO DO THAT.
12:26PM 21              THE COURT:  IT WOULD BE.  IT WOULD BE USEFUL TO ME
12:26PM 22    JUST BECAUSE THERE ARE SOMETIMES LITTLE THINGS LIKE PERHAPS I
12:26PM 23    NEED TO TALK TO YOU, AND IF I CAN JUST SEND IT TO TWO PEOPLE,
12:26PM 24    IT WOULD MAKE IT A LOT EASIER FOR ME.  SO IF YOU HAVE A DEFENSE
12:26PM 25    LIAISON, I WOULD APPRECIATE THAT.

| 12:26PM | 1 | MS. JONES:  YES.  LET ME ACTUALLY USE THIS |
| 12:26PM | 2 | OPPORTUNITY TO INTRODUCE MY PARTNER WHO IS IN THE GALLERY, |
| 12:26PM | 3 | ASHLEY SIMONSEN, WHO IS IN OUR LOS ANGELES OFFICE AND WHO HAS |
| 12:26PM | 4 | GRACIOUSLY AGREED TO SERVE IN THAT ROLE FOR THE DEFENSE TEAM. |
| 12:26PM | 5 | THE COURT:  ASHLEY? |
| 12:26PM | 6 | MS. JONES:  SIMONSEN, S-I-M-O-N-S-E-N. |
| 12:26PM | 7 | THE COURT:  SIMONSEN? |
| 12:26PM | 8 | MS. JONES:  S-I-M-O-N-S-E-N. |
| 12:26PM | 9 | THE COURT:  GREAT.  TERRIFIC.  OKAY.  DO NOT GET |
| 12:26PM | 10 | UPSET WITH ME ON THE DEFENSE SIDE. |
| 12:26PM | 11 | MS. JONES:  THAT'S QUITE THE LEAD IN, YOUR HONOR. |
| 12:26PM | 12 | (LAUGHTER.) |
| 12:26PM | 13 | THE COURT:  BECAUSE AFTER BEING AT THE MDL |
| 12:26PM | 14 | CONFERENCE, I WAS ADVISED BY A VERY WELL-RESPECTED DEFENSE |
| 12:27PM | 15 | LAWYER AND PLAINTIFFS' LAWYERS THAT I SHOULD SAY I KNOW IT'S |
| 12:27PM | 16 | NOT TIME TO TALK SETTLEMENT, BUT WE REALLY SHOULD TRY TO FIND A |
| 12:27PM | 17 | MEDIATOR WHO YOU COULD ALL START TALKING TO WHO YOU CAN START |
| 12:27PM | 18 | GETTING TO UNDERSTAND WHAT IS GOING ON TO THE EXTENT THAT |
| 12:27PM | 19 | ANYTHING ULTIMATELY GETS PAST THE GATES. |
| 12:27PM | 20 | SO I DO WANT TO HAVE SOMEBODY OUT THERE THAT YOU CAN ALL |
| 12:27PM | 21 | AGREE ON, AND WITH NO EXPECTATION. |
| 12:27PM | 22 | LOOK, I UNDERSTAND.  I HAVE A LOT OF WORK TO DO BETWEEN |
| 12:27PM | 23 | NOW AND THEN, BUT IN ANY EVENT, AND ONE DAY WHEN AND IF THIS IS |
| 12:27PM | 24 | ALL GONE, I'LL LET YOU KNOW WHO THE DEFENSE LAWYER WAS. |
| 12:27PM | 25 | MS. JONES:  WE WILL BE WAITING WITH BATED BREATH, |

```
12:27PM    1        YOUR HONOR.

12:27PM    2            (LAUGHTER.)

12:27PM    3            THE COURT:  GIVEN WHO THIS DEFENSE LAWYER IS, YOU

12:27PM    4    WILL NOT BE ABLE TO BE MAD AT HIM.

12:27PM    5            MS. HAZAM:  OKAY.  WE WILL PROMPTLY RECRUIT THEM.

12:27PM    6            MS. JONES:  FAIR ENOUGH.

12:27PM    7            THE COURT:  THAT PERSON IS STILL ACTIVE.

12:27PM    8            MS. JONES:  WE'RE CERTAINLY HAPPY TO PUT THAT ON OUR

12:28PM    9    LIST OF THINGS TO CHAT ABOUT.  I THINK WE BOTH SAID OR AT LEAST

12:28PM   10    WE WOULD HAVE SAID IN THE STATEMENT WE THINK IT'S PREMATURE TO

12:28PM   11    DISCUSS SETTLEMENT, BUT WE UNDERSTAND YOUR HONOR'S INCLINATION.

12:28PM   12            THE COURT:  OR IF YOU CAN'T AGREE, GIVE ME A LIST OF

12:28PM   13    A COUPLE AND I'LL PICK SOMEONE.

12:28PM   14        BUT JUST LIKE I'M NOT -- I'M NOT HOPING FOR ANY DISCOVERY

12:28PM   15    DISPUTES, BUT I DID RECRUIT JUDGE HIXSON TO DEAL WITH THAT, AND

12:28PM   16    I'M JUST TRYING TO GET ALL OF MY DUCKS IN ORDER.  OKAY.

12:28PM   17            MS. HAZAM:  I APPRECIATE THAT.  AND WHILE MS. JONES

12:28PM   18    ACCURATELY REPRESENTED WHAT WE SAID IN THE STATEMENT, I KNOW

12:28PM   19    THIS HAS BEEN DONE IN SEVERAL RECENT MDL'S, INCLUDING IN JUUL,

12:28PM   20    WHERE SEVERAL REFEREES OR MASTERS WERE IDENTIFIED EARLY ON, I

12:28PM   21    THINK IT'S USEFUL.

12:28PM   22            THE COURT:  ONE LAST LITTLE THING.  ALMOST ALL OF

12:28PM   23    YOU GOT IT RIGHT, BUT NOT EVERYBODY DID.

12:28PM   24        MY LAST NAME AND THE NAME THAT I GO BY IS GONZALEZ ROGERS.

12:28PM   25    IT IS NOT HYPHENATED.
```

12:29PM 1     SO I'LL TELL YOU A LITTLE STORY AND THAT WAY MAYBE YOU

12:29PM 2  WILL REMEMBER.  IT IS NOT HYPHENATED BECAUSE I GOT VERY TIRED

12:29PM 3  OF GOING TO FORMAL EVENTS WITH MY HUSBAND IN THE R LINE AND I

12:29PM 4  WAS IN THE G LINE.

12:29PM 5     MS. JONES:  YEAH.

12:29PM 6     THE COURT:  AND IT'S LIKE, OKAY, ENOUGH ALREADY.

12:29PM 7     SO I USE IT.  I'M VERY PROUD TO BE MEXICAN AMERICAN, BUT

12:29PM 8  MY OFFICIAL LAST NAME IS ROGERS, BUT I USE GONZALEZ ROGERS, NOT

12:29PM 9  HYPHENATED.  GONZALEZ, IT'S EASY TO REMEMBER, IT'S EASY, NOT

12:29PM 10  E-S, RIGHT, E-Z, AND ROGERS DOESN'T HAVE A D.

12:29PM 11     I KNOW IT'S VERY LONG.  IN FACT, IN THE LAW FIRM THEY USED

12:29PM 12  TO USE MY NAME TO DO THE NAME PLATES BECAUSE IT WAS THE LONGEST

12:29PM 13  ONE.

12:29PM 14     (LAUGHTER.)

12:29PM 15     THE COURT:  SO IF YOU WANT TO AND YOU'RE EMAILING OR

12:29PM 16  WHATEVER, YOU CAN EVEN SAY JUDGE YGR, THAT'S FINE WITH ME, I

12:30PM 17  DON'T CARE, BUT DON'T FORGET THE GONZALEZ PART.

12:30PM 18     MS. JONES:  UNDERSTOOD.

12:30PM 19     THE COURT:  OKAY.  LIKE I SAID, MOST EVERYBODY DID

12:30PM 20  IT CORRECTLY, BUT I JUST THOUGHT IF YOU CAN FIX YOUR TEMPLATES

12:30PM 21  AND MAKE SURE YOU HAVE IT RIGHT.

12:30PM 22     OKAY.  I THINK THEN -- IS --

12:30PM 23     MR. WARREN:  MAY I QUICKLY BE HEARD?

12:30PM 24     PREVIN WARREN WITH MOTLEY RICE.  I JUST WANTED TO TAKE AN

12:30PM 25  OPPORTUNITY TO MAKE SURE THE RECORD WAS CLEAR ON ONE ISSUE

```
12:30PM   1        CONCERNING THE INQUEST RECORD.

12:30PM   2            SO MOTLEY RICE, MY FIRM, DID HAVE ACCESS TO THAT INQUEST

12:30PM   3        MEETING, AND WE WERE PERMITTED TO ATTEND THAT AND WATCH THE

12:30PM   4        HEARINGS LIVE AND SEE IT, BUT WE DO NOT HAVE POSSESSION OF THAT

12:30PM   5        RECORD.  I JUST WANTED TO MAKE SURE THE RECORD WAS CLEAR ON

12:30PM   6        THAT POINT.

12:30PM   7                THE COURT:  OKAY.  I APPRECIATE THAT CLARIFICATION.

12:30PM   8        THANK YOU.

12:30PM   9                MR. WARREN:  THANK YOU.

12:30PM  10                THE COURT:  ALL RIGHT.  THEN I WILL SEE -- WELL, I

12:30PM  11        DON'T KNOW THAT I WILL SEE EVERYBODY, BUT I WILL SEE ALL OF YOU

12:30PM  12        ON DECEMBER 14TH AT 8:30 A.M.  CHECK THE DOCKET.

12:30PM  13            IF I HAVE SOME SENSE THAT I MIGHT BE GETTING A JURY

12:31PM  14        VERDICT THAT MORNING, THEN I'LL TRY TO LET YOU KNOW IN ADVANCE

12:31PM  15        SO WE CAN PUSH IT OFF UNTIL LATER THAT DAY.  BUT, AGAIN, IT'S A

12:31PM  16        CRIMINAL TRIAL SO THAT WILL TAKE PRECEDENCE.

12:31PM  17            I WISH EVERYBODY A HAPPY THANKSGIVING.

12:31PM  18                MS. JONES:  AND TO YOU, YOUR HONOR.  THANK YOU SO

12:31PM  19        MUCH.

12:31PM  20                MS. HAZAM:  THANK YOU, YOUR HONOR.

12:31PM  21            (COURT CONCLUDED AT 12:31 P.M.)

         22

         23

         24

         25
```

```
 1
 2
 3                      CERTIFICATE OF REPORTER
 4
 5
 6
 7         I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE
 8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
 9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO
10    HEREBY CERTIFY:
11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
13    ABOVE-ENTITLED MATTER.
14
15
16    _____
      IRENE RODRIGUEZ, CSR, RMR, CRR
17    CERTIFICATE NUMBER 8074
18
         DATED:  NOVEMBER 17, 2022
19
20
21
22
23
24
25
```