*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT STATUS REPORT FOR JULY 24, 2025 DISCOVERY STATUS CONFERENCE**<br><br>Judge:   Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

## JOINT STATUS REPORT

In advance of the discovery status conference set for Thursday, July 24, 2025 at 10:30 am PDT, Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the Parties"), respectfully submit this Joint Status Report.

I. **Case Specific Witnesses**

**Joint Statement:** The Parties previously briefed the propriety of depositions of several Uber current or former employees. ECF 3344, 3412, 3510. Given the large amount of case-specific discovery remaining to complete, Plaintiffs have decided to withdraw those deposition notices and instead pursue the information sought through the remaining case-specific 30(b)(6) depositions. The Court can therefore deny the relief sought in the three pending letter briefs as moot.

II. **Plaintiffs B.L. and Dean Document Production**

**Plaintiffs' Position:** On July 10 (for B.L.), and July 16 (for Dean), Uber informed Plaintiffs that certain documents it produced in connection with these Plaintiffs' cases were inaccurate. But Uber has not produced corrected documents or provided a sufficient explanation of how the problem occurred or how widespread it is. All Uber has said is that there was a "copy/paste clerical error." Plaintiffs sent their portion of a PTO 8 brief on July 16. Under the PTO 8 schedule, the brief will be filed on July 22. Plaintiffs will request that the Court order (1) prompt production of all assertedly "corrected" documents in B.L.'s and Dean's cases; (2) provision of a declaration identifying and describing the source of any other errors in bellwether productions; (3) identification and deposition of the individuals involved in creating any incorrect or corrected documents; and (4) prompt production of the PSG data for the subject drivers and any other accounts associated with them.

**Defendants' Position:** In connection with ongoing case-specific 30(b)(6) depositions, Defendants have been working diligently to address issues related to certain documents produced regarding the B.L. and Dean cases. Defendants have been conferring with Plaintiffs regarding such issues and are making productions and re-productions of case-specific documents in advance of the completion of case-specific 30(b)(6) depositions. As to further information regarding Defendants' inadvertent production error and correction of same, as referenced in Section IV. below, Defendants have agreed to meet-and-confer with Plaintiffs regarding their new case-specific 30b6 deposition notice regarding document retention and production issues (which includes this topic) and Defendants submit that these issues be addressed in the context of that notice.

### III. Issues Arising from Case Specific 30(b)(6) Depositions

**Plaintiffs' Position:** The Parties are discussing a large number of narrow but crucial issues in connection with ongoing case-specific 30(b)(6) depositions. For each upcoming deposition, Plaintiffs have requested that Uber produce certain documents a reasonable time before the deposition, that the Parties enter into certain stipulations, and that the witness be prepared to answer certain questions that were not answered at earlier depositions. Uber has indicated its general willingness to accommodate Plaintiffs' requests. In order to complete discovery expeditiously, however, it is important that documents be produced and material disputes be resolved sufficiently in advance of depositions. Otherwise, as has already happened repeatedly, deposition preparation will be chaotic, limited time on the record will be wasted trying to understand confusing documents that were produced at the last minute, and depositions will need to be rescheduled at the last minute or held open pending resolution of last-minute disputes.

Plaintiffs request that the Court order Uber to produce all documents and identify any scope disputes **no later than 9 am pacific time three (3) business days before each 30(b)(6) deposition**, that the Parties meet and confer by Zoom (if needed) that same day. If there are any disputed issues remaining, the Parties file a joint discovery letter brief no later than **two (2) business days before the deposition**.

**Defendants' Position:** While Defendants disagree with Plaintiffs' characterizations as to the reasons for certain rescheduled depositions, Defendants have agreed to meet and confer with Plaintiffs in advance of each deposition to attempt in good faith to resolve any outstanding issues. Indeed, multiple meet and confer calls have already occurred in advance of depositions scheduled in the next two weeks and the parties are in continuous communication regarding outstanding issues. Given the large number of issues raised (including entirely new requests and new levels of specificity that Plaintiffs now seek regarding broad topics that Defendants are working diligently to address), Defendants do not agree that it will be productive to bring issues to the Court two business days prior to a deposition. As a practical matter, given the schedule, the majority of new information sought will be provided between that time and the deposition. Defendants suggest instead that any issues that

cannot be resolved in good faith by the parties be brought to the Court two calendar days prior to the scheduled deposition.

### IV. Deposition Scheduling Updates

**Joint Statement**: There are two other deposition updates other than the 30(b)(6) issues discussed above. First, due to attorney illness, the Parties agreed to cancel the July 17 case-specific 30(b)(6) deposition of Mariana Esteves and rescheduled it for August 28. Second, Plaintiffs served a case-specific 30(b)(6) notice concerning the document issues in the B.L. case (discussed above) and similar issues in any other Wave 1 bellwethers. The Parties will meet and confer on that notice.

### V. LCHB128 Driver Issue

**Plaintiffs' Position:** In a call between the driver at issue in LCHB128 and an Uber investigator, the driver claimed to have a dashcam in a different vehicle that he used to drive for Uber. Uber has not produced information regarding which car the driver was driving for which rides. In advance of the LCHB128-specific portions of the July 15-16 30(b)(6) deposition concerning driver misconduct and rider complaints, Plaintiffs asked Uber to produce: (1) documents showing which vehicle the driver was driving for all rides in his history; (2) documents reflecting his dash cam registration with Uber; and (3) documents reflecting dash cam use and footage. Uber did not respond.

**Defendants' Position:** Defendants have indicated to Plaintiffs that they are looking into these requests and will continue to meet-and-confer in advance of Greg Brown's case-specific 30b6 deposition (which by agreement will continue on July 29 and 30). No impasse has been reached.

### VI. Scheduling of Mental Examinations

**Joint Statement:** Defendants are forgoing IMEs of Plaintiffs Dean and B.L. The Parties have been meeting and conferring and working towards a joint stipulation regarding the procedure and timing for the remaining mental examinations and anticipate submitting that stipulation soon.

### VII. Plaintiffs' Privilege Assertions Regarding Preservation Measures

**Defendants' Position**: Throughout the course of fact depositions in the Wave 1 Cases, Plaintiffs' counsel have repeatedly instructed Plaintiffs not to answer questions that sought objectively factual information regarding witnesses' efforts to preserve or collect documents—information that cannot be protected by privilege. *See State Farm Fire & Casualty Co. v. Super. Ct.*, 54 Cal. App. 4th

625, 639 (Cal. Ct. App. 1997) ("[T]he attorney-client privilege only protects disclosure of *communications* between the attorney and the client; it does not protect disclosure of the underlying facts which may be referenced within a qualifying communication.") (emphasis in original); *accord Zimmerman v. Super Ct.*, 220 Cal. App. 4th 389, 396 (Cal. Ct. App. 2013).

By way of example, during the June 25, 2025 deposition of LCHB128, counsel prevented the witness from answering simple yes or no questions regarding whether certain events took place. *See, e.g.*, LCHB128 Dep. at 70:7-71:13 ("Q. Did you provide your smartphone to anyone so that it could be searched for messages and other records? MS. LONDON: I'm going to object and instruct the witness not to answer that question… [Q.] Has your smartphone been searched for messages and records concerning the incident? MS. LONDON: I'm going to instruct you not to answer the question.").[1] Counsel gave similar instructions to LCHB128's husband in his recent deposition. Questions regarding this type of underlying factual information do not call for attorney communications, thoughts, or mental impressions, and are well within the ambit of fair and free discovery. *See State Farm Fire & Casualty*, 54 Cal. App. 4th at 639.

Likewise, during the deposition of Plaintiff B.L., counsel made similar, unfounded objections. *See* B.L. Dep. at 253:16-21 ("Q. Did you personally put documents on your phone to provide in this lawsuit? MS. LUTHER: I'm going to object to form. I'm also going to instruct the client not to answer about attorney-client privilege or attorney work product information and conversations in this case.").[2] Plaintiffs' continued attempts to prevent Uber from obtaining proper discovery are prejudicial and

---

[1] There are many additional questions that counsel improperly prevented the witness from answering, including: "Did you meet with any health care providers to prepare for your deposition?," *id.* at 23:13-23:6; "[Y]ou don't recall being presented with a copy of this document before it was filed by your attorneys?," *id.* at 25:19-26:7; "[D]uring the break, did you discuss any of your answers with anybody?," *id.* at 26:19-24; "Have you personally gone through your smartphone to look for messages, records, or any information that relates to the incident?," *id.* at 71:15-72:15; "I'm not interested in any conversations with your lawyers. Did you and your husband ever discuss trying to bring legal claims against the driver?," *id.* at 236:5-20.

[2] Counsel also improperly instructed the witness not to answer several other questions, including, "When did you meet Summer in Manhattan?," L.B. Dep. at 15:25-16:10; "Did you fill out a form?," *id.* at 205:5-11; "[C]licking that ad on Instagram took you directly to the Wagstaff Law Firm, correct?," *id.* at 205:22-206:2; "What could Uber have done differently in your mind to keep what happened from happening?," *id.* at 208:1-8; "What is it that Uber could have done differently?," *id.* at 208:15-18; "What was your understanding of what documents you needed to turn over in this lawsuit?," *id.* at 254:17-255:3; "Did you personally provide e-mails and text messages related to this lawsuit to your attorneys?," *id* at 256:10-259:18.

1  contrary to both the law and the Court's directive. *See* ECF 2168 (quoting Cal. Evid. Code § 952) (A party "may not shield facts, as opposed to communications, from discovery. Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney.").

Indeed, these tactics have already prejudiced Uber as Uber has been left unable to verify how or whether Plaintiffs BL and LCHB128 have made a good faith effort to comply with their preservation obligations under PTO2. Uber has requested that Plaintiffs in both cases provide a verified accounting of what they did to preserve documents. If that accounting is not provided, Uber will seek to have these depositions re-opened to allow for appropriate questioning.

**Plaintiffs' Position:** Uber sent a letter on these issues on July 16, 2025. As they are specific to individual bellwether cases, respective counsel for those Plaintiffs are handling the resolution of these issues. Counsel for Plaintiffs specifically identified in the correspondence met and conferred with Defendants on July 18, 2025. The Parties will submit any disputes pursuant to PTO 8.

### VIII. Plaintiffs' Evidence Preservation and Document Collection

**Defendants' Position**: Plaintiff Jaylynn Dean has failed to preserve evidence that is clearly relevant to her claims. At Dean's deposition, she testified that she was asked to tape with the Dr. Phil show by her counsel and that she took proactive steps to do so in June 2024, including attending a taping at the Dr. Phil Show. J. Dean Dep. at 245:7-250:10. Yet, to date, Plaintiff has failed to produce any documents regarding her participation in the Dr. Phil Show, nor even disclose her participation in the show in any written discovery responses. *See*, e.g., [Fourth] Am. Pl.'s Fact Sheet (verified on Feb. 24, 2025); Pl. Jaylynn Dean's Resp. to Defs.' Interrogs. (verified on Apr. 11, 2025). More generally, Plaintiff admitted to losing messages from her social media and "general storage" on her phone. *See* J. Dean Dep. at 280:10-281:18.

Similarly, four fact witnesses (all of whom were represented by Plaintiff Dean's lawyers for purposes of their deposition) testified that they, too, failed to preserve relevant communications with Plaintiff Dean. Each of these friends testified that they communicated with Ms. Dean about the lawsuit via Snapchat – a service where messages disappear and are not preserved. Ms. Dean's repeated use of Snapchat to communicate about the litigation is in clear violation of PTO2. Counsel has claimed that such messages are unlikely to be responsive, but because those messages disappear there is no way

6

JOINT STATUS REPORT FOR THE JULY 24, 2025 DISCOVERY STATUS CONF. Case No. 3:23-MD-3084-CRB

for her to know that. Because of Plaintiff's failure to preserve relevant communications – both related to the Dr. Phil show and these Snapchat communications – Uber is considering all available remedies and wanted the Court to be aware of these issues as Uber may need to seek a second deposition of Ms. Dean. Plaintiff LCHB128 has similarly failed to comply with her discovery obligations, conceding the existence of certain records from her primary mental health provider (LCHB128 Dep. at 192:1-10) and documents related to her use of rideshare applications (*id.* at 199:10-12), among other documents, that have not been produced.

**Plaintiffs' Position:** Uber sent a letter on these issues on July 16, 2025. As they are specific to individual bellwether cases, respective counsel for those Plaintiffs are handling the resolution of these issues. Counsel for Plaintiffs specifically identified in the correspondence met and conferred with Defendants on July 18, 2025. The Parties will submit any disputes pursuant to PTO 8.

IX. **Plaintiffs' Fact Sheets**

**Defendants' Position**: While some plaintiff firms have taken affirmative action to cure the deficiencies in their plaintiffs' submissions, PFS deficiencies remain pervasive across the inventories of most plaintiff firms in the litigation. In fact, within the last 30 days, Defendants have sent deficiency notices to 750 plaintiffs who have not yet provided a response. Defendants have been and continue to be willing to meet and confer with any deficient party that has questions or requires an extension in order to remedy deficiencies with their client. In light of the deficiencies identified across a significant portion of the docket on a near-daily basis, Defendants reserve the right to seek an additional case management order or additional non-bellwether discovery to address Plaintiffs' failure to meet their PTO 10 obligations.

**Plaintiffs' Position:** Plaintiffs' leadership is not aware of what "pervasive" issue exists. Should Defendants identify any problem with particularity, Plaintiffs will meet and confer regarding any proposed modifications to PTO 10.

//

//

| | | |
|---|---|---|
| 1 | By: */s/ Roopal P. Luhana* | By: */s/ Laura Vartain Horn* |
| 2 | ROOPAL P. LUHANA *(Pro Hac Vice)* | LAURA VARTAIN HORN (SBN 258485) |
| | **CHAFFIN LUHANA LLP** | **KIRKLAND & ELLIS LLP** |
| 3 | 600 Third Avenue, Fl. 12 | 555 California Street, |
| | New York, NY 10016 | San Francisco, CA 94104 |
| 4 | Telephone: (888) 480-1123 | Telephone: (415) 439-1400 |
| | Email: luhana@chaffinluhana.com | laura.vartain@kirkland.com |

By: */s/ Roopal P. Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: */s/ Laura Vartain Horn*
LAURA VARTAIN HORN (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street,
San Francisco, CA 94104
Telephone: (415) 439-1400
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

MICHAEL B. SHORTNACY (SBN: 277035)
**SHOOK, HARDY & BACON, L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093
mshortnacy@shb.com

PATRICK OOT (*Pro Hac Vice*)
**SHOOK, HARDY & BACON, L.L.P.**
1800 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211
oot@shb.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: July 21, 2025

By: */s/ Laura Vartain Horn*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Laura Vartain Horn*