UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br>ALL CASES. | Case No. 23-md-03084-CRB   (LJC)<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 3442 |

## I.    INRODUCTION

Pending before the Court is Defendants Uber Technologies, Inc., Raiser, LLC, and Raiser-CA, LLC's (collectively, Uber's) motion for leave to file a motion for reconsideration of the Court's April 24, 2025 order that foreclosed Uber's ability to claw back certain documents that had been subject to a re-review for privilege designation. Dkt. No. 3442. Since the summer of last year, the parties to this multidistrict litigation have engaged in extensive disputes over Uber's assertions of privilege. In the course of those disputes, which required a series of orders by this Court on samples of documents submitted for in camera review, Uber withdrew its designations as to thousands of documents. As the discovery process advanced, aided in part by a Special Master appointed to resolve privilege disputes, the Court restrained Uber from exercising a clawback provision as to a subset of its documents. On July 9, 2025, Uber moved for leave from the Court to file a motion for reconsideration of that order. Because Uber failed to exercise diligence in seeking leave to file a motion for reconsideration, Uber's motion is DENIED.

## II.   BACKGROUND

Overall, the Court has managed discovery in this MDL through a series of Pretrial Orders and regular status reports and monthly status conferences with the parties. The Court entered

Pretrial Order No. 14, Dkt. No. 396, regarding the handling of privileged and otherwise protected material that may be the subject of discovery and related disputes. Pretrial Order 14 included clawback provisions. *Id.* at 2–4. A subsequent Deposition Protocol, Pretrial Order 16, required the production of custodial files generally within twenty-one days in advance of a confirmed deposition date, and a privilege log ten days after that production of documents. Dkt. No. 866 at 3–4.

The parties first raised a dispute regarding privilege in a letter brief filed June 24, 2024, which addressed three documents that Uber inadvertently produced and asserted its right to claw back. Dkt. No. 664. The parties narrowed their dispute, and the Court ultimately held that Uber had not established that the one document that remained in dispute before the Court was privileged. Dkt. No. 1727. On August 30, 2024, in response to a dispute as to when Uber was required to produce privilege logs, the Court underscored Pretrial Order No 16's requirement to produce logs no later than ten days after producing a custodial document file. Dkt. No. 1622; *see* Dkt. No. 866 at 3–4.

On September 10, 2024, the Court observed that the September 1 deadline had expired for substantial completion of Uber's production of documents in response to Plaintiffs' first set of requests, and set new deadlines. ECF No. 1629. On September 14, 2024, the Court granted a stipulation to extend time for Uber to produce certain privilege logs. ECF No. 1644. At a status conference October 23, 2024, the Court extended the deadline for the parties' joint letter presenting the first sample of privilege disputes, and "advised the parties that Uber is expected to apply rulings on privilege disputes to other previous designations of privilege. ECF No. 1785. On October 25, 2024, the Court adopted (in part) a proposal to phase document production into four tranches of custodians, with each tranche ranging from nine to seven custodians. *See* ECF Nos. 1774, 1797. On October 30, 2024, as the parties prepared to file a joint letter regarding privilege disputes from the first tranche, the Court set a schedule providing—for each subsequent tranche— deadlines for Uber to produce documents and privilege logs, for the parties to present a sample of disputed privilege log entries to the Court, and for Uber's re-review and de-designation of documents based on the Court's resolution of those sample disputes. Dkt. No. 1808 (Pretrial

Order No. 20). That Order was intended to "promote[] the efficient resolution of this litigation," recognizing that "in general discovery of custodial records should be completed before a custodian is deposed, and that "discovery of custodial records necessarily calls for, to the extent feasible, the resolution of related privilege disputes." *Id.* at 5.

The parties' letter regarding privilege disputes from the first tranche of document production indicated that Uber had withdrawn or modified its privilege designations for the vast majority of documents that Plaintiffs selected for discussion and possible presentation to the Court. Dkt. No. 1858-2 at 1–2. In resolving that letter, the Court determined that five of the ten documents submitted for resolution by the Court must be produced either in full or with redactions. Dkt. No. 1908. The Court ordered Uber to apply lessons learned from that Order to other documents on an ongoing basis. *Id.* at 13.

On December 16, 2024, the Court set a schedule for Uber to produce de-designated documents after it produced revised privilege logs, noting the Court's intent to "reduce delays to other aspects of discovery." Dkt. No. 1954. In a status report filed later the same day, as the Court continued to resolve the parties' privilege disputes, Uber represented that "*each* document [had undergone] independent privilege review," and that Uber "continue[d] to revisit documents to apply lessons learned" from the parties' meet-and-confer efforts and the Court's decisions. Dkt. No. 1957 at 7.

The sampling process from Tranche 2 echoed the first tranche. As Plaintiffs selected documents for discussion, Uber withdrew its privilege designations either in whole or in part as to most such documents. *See* Dkt. No. 1952 at 2. Uber asserted that "[g]iven the scope and pace of discovery, it is no surprise that there are a large number of privilege claims—each of which is made only after an individualized review of the document," and that it "has continued to re-assess its privilege claims in light of court orders, conferrals with Plaintiffs, and on its own initiative, withdrawing privilege claims where appropriate." *Id.* at 7 (footnote omitted). Uber presented its "good faith changes in position" as "an indication that the iterative process set up by the Court is working," in contrast to Plaintiffs' "*en masse*, categorical challenges that lack individualized bases." *Id.* The Court determined that the majority of the thirteen documents that the parties

3

1  submitted for review must be produced either in full or with narrower redactions than Uber had
2  proposed.  *See generally* Dkt. No. 2005.  The Court ordered the parties to include a random
3  sample of documents in the meet-and-confer process for their next joint letter.  *Id.* at 13–14.
4        In privilege disputes from Tranche 3 and from a random sample of documents from
5  Tranche 2, Uber fared better with respect to documents actually submitted for the Court's
6  resolution, but as the Court noted in its January 29, 2025 Order, Uber still conceded during the
7  meet-and-confer process "that a large portion of the documents at issue were not privileged at all
8  or should be produced with redactions."  Dkt. No. 2168 at 22.  Uber touted its "extensive efforts
9  . . . to implement the Court's guidance from the Tranche 1 and 2 rulings and address other issues
10 where appropriate," Dkt. No. 2091 at 8, asserting that it "continue[d] to work in good faith to
11 refine its privilege claims in light of conferrals, the Court's rulings on prior challenges, and on its
12 own initiative," Dkt. No. 2089 at 7.  Plaintiffs sought sanctions, which the Court denied as a
13 procedurally improper "eleventh-hour addition to the [joint] letter."  Dkt. No. 2168 at 22.  But the
14 Court expressed concern about Uber's apparent over-designation and "directed the parties to meet
15 and confer regarding next steps in this process to ensure that responsive material is not wrongfully
16 withheld from production."  *Id.*
17       On January 31, 2025, the parties proposed that Uber would re-review privilege log entries
18 and produce revised logs and any de-designated documents only two days before certain
19 depositions.  Dkt. No. 2191.  In response, this Court notified the parties that it was considering
20 appointing a special master to handle further disputes regarding privilege.  Dkt. No. 2196.  On
21 February 6, 2025, Judge Breyer appointed the Honorable Barbara Jones as Special Master to
22 "assist the Court with all disputes relating to privilege logs and the assertion of attorney client and
23 work product privileges in this MDL, as well as deal with any other matters at the Court's
24 direction."  Dkt. No. 2289 at 3, ¶ 6.
25       In preparation for a discovery status conference on April 24, 2025, the parties noted
26 disputes over Uber's efforts to claw back (based on assertions of privilege) documents that it had
27 previously produced in discovery, including some documents that Uber had originally withheld as
28 privileged but later produced when it withdrew privilege designations.  The Court deferred to the

4

1  Special Master on the merits of particular clawback disputes, but ruled that Uber had waived any
2  claim to privilege for documents that it specifically de-designated and agreed to produce during
3  the period when the Court was overseeing privilege disputes, before the Special Master was
4  appointed. Dkt. No. 2907 at 8:25–15:2. In response to Uber's arguments that it was faced with
5  reviewing a large number of documents on a tight timeline, the Court found that to be a problem
6  of Uber's own making due to its substantial over-designation of documents as privileged, and
7  concluded that Uber had a sufficient opportunity to determine whether those documents were or
8  were not privileged. *Id.* at 13:17–15:2. The Court memorialized its ruling in minute order filed
9  the same day. Dkt. No. 2855.

10  The parties have since participated in two further discovery status conferences, filing status
11  reports in advance of each of them. Dkt. Nos. 3033, 3328. Despite the May 19, 2025 status report
12  addressing in detail several issues related to the clawback process, neither filing suggested that
13  Uber would ask the Court to reconsider its May April 24, 2025 order regarding waiver.[1]

14  Two and a half months after the Court's order, Uber moved on July 9, 2025 for leave to
15  file a motion for reconsideration of that decision. Dkt. No. 3442. Uber does not dispute that the
16  Court issued a sufficiently clear and enforceable order both on the record and in the minute order,
17  but argues that the Court's finding of waiver was erroneous, and the Court improperly raised the
18  issue sua sponte. *See id.* Uber asserts that Plaintiffs' delay in presenting certain disputes to the
19  Special Master justifies Uber's timing in bringing this Motion. *Id.* at 4.

20  The Court directed the parties to file additional briefs on the question of whether Uber was
21  reasonably diligent in bringing its Motion for Leave, as required by this Court's Local Rules. Dkt.
22  No. 3475. Plaintiffs argue that the delay of around ten week's between the Court's Order and
23  Uber's present Motion does not reflect diligence, that Uber had all information that it needed to
24  seek reconsideration immediately after the Court issued its Order, and that granting
25  reconsideration would risk delaying trial. Dkt. No. 3490. Uber argues that there is no fixed

---

[1] A June 26, 2025 brief to the Special Master—not to this Court—asserted that Uber was "considering seeking relief and/or reconsideration from Judge Cisneros regarding any waiver claim," without discussing any basis on which Uber might seek such relief. Dkt. No. 3363 at 3.

5

1  deadline for bringing a motion for leave to file a motion for reconsideration, and that because the
2  Court ruled sua sponte, Uber required time to "investigate the legal and factual issues for the first
3  time *after* receiving the transcript[2] of the Court's Order," including conferring with Plaintiffs to
4  determine which documents were actually in dispute. Dkt. No. 3505 at 2–3.

### III.    ANALYSIS

This Court's Local Rules require a party to seek and obtain leave of court before filing a motion for reconsideration. Civ. L.R. 7-9(a). Among other requirements, the "moving party must specifically show reasonable diligence in bringing the motion." Civ. L.R. 7-9(b). Uber argues that it was diligent in bringing this motion because it did not have sufficient opportunity to brief and argue the Court's sua sponte ruling on waiver at the April 24 status conference, and because Plaintiffs have been slow to identify particular clawback disputes for resolution by the Special Master.

Whatever might be said of Uber's argument that it was not sufficiently prepared to address this issue at the April 24 status conference, it does not explain why Uber did not challenge the Court's ruling in the days or weeks following that conference. As a point of comparison, if Uber had sought relief from the presiding district judge rather than reconsideration by this Court, the deadline for it to do so would have been fourteen days later: May 8, 2025, more than two months before Uber brought its present Motion. Fed. R. Civ. P. 72(a); *cf. also* Fed. R. App. P. 4(a)(1)(A) (requiring a notice of appeal of a final judgment to be filed within thirty days under most circumstances). Uber's argument that it required time to research and respond to a sua sponte ruling is unpersuasive, when Uber took far longer to bring its present Motion than it would have been allowed to respond to any motion Plaintiffs might have filed seeking the same relief.

The Court finds Plaintiffs' purported delay in raising specific disputes about specific documents to the Special Master to be of little consequence to Uber's delay in seeking reconsideration of an order issued months ago. The Court's ruling—that Pretrial Order No. 14's

---

[2] Uber's focus on the *transcript* is questionable, when Uber's attorneys were present for the status conference and the Court memorialized its ruling in minutes filed the same day. Dkt. No. 2855. In any event, the transcript was filed on May 2, 2025—still more than two months before Uber filed its present Motion. *See* Dkt. No. 2907.

1  clawback mechanism was no longer available for documents that Uber de-designated during this
2  Court's oversight of privilege disputes and re-review—was sufficiently clear when it was issued
3  that Uber could have challenged it at that time, without needing to wait for developments
4  regarding particular documents that might be submitted to the Special Master. Even if
5  proceedings before the Special Master were relevant, which they do not appear to be, Uber
6  identifies no relevant developments since a communication by Plaintiffs on May 19, 2025—well
7  over a month before Uber filed its present Motion.[3]

8  Cases Uber cites as allowing longer delays between an order and a motion for leave to seek
9  reconsideration are inapposite and not persuasive here. In *Senne v. Kansas City Royals Baseball
10 Corp.*, "the focus of the Motion [was] new evidence," which Uber has not asserted here. No. 14-
11 CV-00608-JCS, 2016 WL 1623913, at *4 (N.D. Cal. Apr. 25, 2016). The question of diligence
12 was also not material to the outcome: Judge Spero denied leave to file a motion for reconsideration
13 because the moving party failed to establish "new material facts," which is one of the several
14 potential grounds for reconsideration that Civil Local Rule 7-9(b) requires *in addition to*
15 reasonable diligence. *See id.* at *5. Judge Orrick's decision in *Huawei Technologies Co. v.
16 Samsung Electronics Co.* comes closer, in that Judge Orrick allowed a four-month belated motion
17 for reconsideration of a claim construction order, with no explanation for the delay beyond "the
18 case's complexity and extended schedule." 2018 U.S. Dist. LEXIS 34793, *15–16, 2018 WL
19 1116738. There, however, Judge Orrick specifically relied on the Federal Circuit's endorsement
20 of "a 'rolling claim construction, in which the [district] court revisits and alters its interpretation of
21 the claim terms as its understanding of the technology evolves.'" *Id.* at *16 (quoting *Jack
22 Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002)) (alteration in
23 original).

24 Here, this Court's ruling at issue was decidedly not intended as part of a rolling process, or

---

[3] Uber's arguments regarding the large number of privilege disputes still pending before the Special Master, Dkt. No. 3505 at 4, also do not land as intended. To the extent such issues might be marginally relevant to the dispositive question of Uber's diligence, the Special Master's already significant workload does not counsel in favor of allowing reconsideration of other privilege disputes after the substantial completion deadline (although it would not preclude referral of additional privilege disputes under appropriate circumstances).

7

as an interim measure subject to further consideration at an unspecified later date. The Court made clear at the April 24 status conference its interest in not letting these clawback disputes further delay discovery and other proceedings in this litigation, an interest the Court emphasized throughout several months of overseeing the parties' disputes over Uber's privilege designations. The deadline for substantial completion of fact discovery common to the MDL was June 16, 2025, Dkt. No. 2028 at 1–2, after the parties failed to meet a deadline for substantial completion of certain document production in September of last year, *see* Dkt. No. 175 (Pretrial Order No. 5) at 4. Uber waiting to seek leave to file a motion for reconsideration until more than two months after the Court's ruling on waiver, nearly a month after the substantial completion deadline, in a case that has already faced substantial delays and where both this Court and Judge Breyer have repeatedly emphasized adherence to the case schedule, is not consistent with reasonable diligence as required by Civil Local Rule 7-9(b). That is enough to end the inquiry, and the Motion for Leave is DENIED on that basis.

The Court does not reach Uber's remaining arguments, but notes that the clawback protocol on which Uber relies in Pretrial Order No. 14 did not contemplate Uber serially designating, de-designating, and re-designating documents as privileged in a manner that undermines the completion of discovery on any reasonable schedule.

## IV.     CONCLUSION

Uber was not diligent in raising any challenge to the Court's April 24, 2025 order on the record that Uber waived its right to claw back documents that it had previously designated as privileged but de-designated while this Court was overseeing the parties' privilege disputes. The Court therefore DENIES Uber leave to file a motion for reconsideration.

**IT IS SO ORDERED.**

Dated: July 22, 2025

LISA J. CISNEROS
United States Magistrate Judge