UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*B.L. v. Uber Technologies, Inc., et al.,* Case No. 24-cv-7940 | Case No.: 3:23-MD-03084 CRB<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING UBER'S DOCUMENT PRODUCTIONS IN B.L. BELLWETHER CASE**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

      The parties respectfully submit this letter brief under PTO 8 concerning Uber's production of documents. Plaintiffs allege that Uber failed to timely produce relevant identifying information for the subject driver and accounts related to him in Uber's systems, failed to provide a sufficient explanation for purported errors and inaccuracies in documents produced regarding the subject driver, and failed to produce witnesses with knowledge as to these issues for deposition.

1

**Plaintiffs' Position**

This letter brief addresses a potentially serious issue that recently came to light in the B.L. bellwether case that impacts the Court's schedule. In June 2025, Uber produced documents and data concerning the subject driver in B.L. Among other things, that production showed that the subject driver was recently active in Uber's system, notwithstanding the incident involving B.L. and the warrant currently out for his arrest in connection with B.L.'s assault. This information is relevant to, among other things, potential ratification and punitive damages claims. Weeks later, and moments before Plaintiffs were to begin questioning Uber's corporate designee about this fact, Uber abruptly informed Plaintiffs that the information the company had provided was inaccurate. Uber attributed this supposed inaccuracy to an issue in its production of case-specific information. On July 16, Uber informed Plaintiffs that it had also produced inaccurate "driver account information" in another bellwether case (Dean).[1]

Uber's counsel assured Plaintiffs that Uber is attempting to understand the extent of potential issues in its production and to identify the cause of those issues. To date, Plaintiffs have not received that explanation other than an email stating there was a "copy/paste clerical error" and that Uber's counsel "is not aware of any other Wave 1 case-specific documents impacted." And belated substituted productions raise only more questions. Plaintiffs need a declaration from the appropriate person concerning the foregoing issues and additional discovery, including depositions and production of additional identifying information for the driver in B.L's case.

Uber plays off these problems as a run-of-the-mill discovery mistake that Plaintiffs are blowing out of proportion. But it is July 23 and Plaintiffs do know the basic facts about the driver that allegedly assaulted B.L. Uber's slow-rolling response to Plaintiffs' questions, including a belated July 22 document production after PTO 8 briefing was initiated, are insufficient. This has already had a cascading effect on the schedule, delaying completion of 30(b)(6) depositions. Plaintiffs request that the Court, in addition to ordering the specific discovery needed, actively oversee the process of running down these issues, with required periodic updates on the parties' agreements, disputes, and progress, so as to keep these cases on schedule.

**July 10, 2025 "Corrections"**

In June 2025, Uber produced account status logs and mobile events data that showed that the subject driver in B.L.'s case was driving for Uber as recently as June 2025. Plaintiffs' counsel spent hours reviewing and analyzing the complex production and preparing to depose the 30(b)(6) witness (Hannah Nilles) Uber designated to testify about this (and other) information. Based on this information, counsel also researched a ratification theory and prepared a motion for leave to amend B.L.'s complaint with this theory.

Then, at approximately 6:42 am PST on July 10, 2025, the day of the Nilles deposition, Uber's counsel informed Plaintiffs' counsel that the "incorrect name of the driver was inadvertently placed on various status and flows in connection with the production" in B.L.'s case. An hour later, Uber produced a document titled "B.L. Status and Flow Clarifications" that

---

[1] Plaintiffs agree with Uber that the Dean document issues are not the subject of this letter brief.

purported to "correct" the discovery by identifying which Account Status Flows actually applied to the subject driver in B.L.'s case and which, according to defense counsel, applied to entirely different drivers.

In attempting to clarify the information provided, Uber has informed Plaintiffs that they should look to the filenames for produced documents to determine the driver to which those documents apply. But those filenames are not evidence kept by Uber in the ordinary course of business. They are created for purposes of litigation. Moreover, they raise more questions than they answer: for example, in at least one document produced in B.L.'s case the name of a driver from another Bellwether case is in the filename. If this driver is somehow related to B.L.'s case, Plaintiffs are entitled to learn why and how. If this driver name was placed on the filename in error, this is also concerning—triggering concerns that other similar errors exist in other file names.

**July 11 and 13 Meet and Confers.** On July 11 and 13, 2025, Uber's counsel represented that by Monday, July 14, Uber would produce "corrected" documents and provide an affidavit explaining how the purported production problems could have occurred. Plaintiffs received documents more than a week after the promised date (July 22), but no affidavit.

**July 15 30(b)(5) Deposition**. The 30(b)(6) deposition of Greg Brown, set to cover, among other things, driver misconduct and rider complaints, was scheduled for July 15 and 16. The day before, Uber stated that it would not produce the corrected B.L. documents and explanations relating to the same before the deposition, and proposed delaying the deposition indefinitely. Given the other material to be covered in the Brown deposition, and the tight discovery schedule, Plaintiffs elected to proceed on July 15 and 16, but to not ask questions about the relevant B.L. topics until these issues were resolved.

**July 16 Email**. On July 16, Uber's counsel emailed Plaintiffs once again promising to produce documents in B.L.'s case in the future, but with no documents attached and no declaration explaining how and why this happened. Uber also disclosed for the first time that purportedly inaccurate "driver account information" was also produced in the Dean case. Uber's counsel stated that it was "not aware of any other Wave 1 bellwether case-specific documents impacted by the copy/paste clerical error." Uber has declined to provide any further information on the "clerical error."

**July 22 Production**. On July 22, Uber produced 300-400 documents (based on bates range) in the B.L. case. These documents raise more questions than answers. They continue to identify multiple driver names and UUIDs without explanation of who these people are and how they relate to B.L.'s case. One driver name is one Uber earlier told Plaintiffs was not related to B.L.'s case. The documents show, for the first time, that the driver has been driving for Uber in Colombia (under a different UUID) after the subject incident, potentially supporting a ratification theory that apparently has been never before disclosed (and contradicts Uber's RFA responses). (This after Uber earlier told Plaintiffs that documents showing B.L.'s driver still driving for Uber were "inaccurate.") This belated production only underscores the need for full, prompt, and

judicially-supervised discovery into the purported errors and corrections.[2]

**Relief Requested**

Uber claims it has now produced all corrected documents. But Plaintiffs need to understand both the true facts in the B.L. case as well as how this purported "error" occurred. Furthermore, Plaintiff long ago served extensive discovery on what should be a simple issue, but Uber's own documents and representations contradict themselves and create confusion. As Uber notes below, Plaintiffs served a 30(b)(6) notice on recordkeeping, but more is necessary.

Plaintiffs respectfully request that the Court order (1) a sworn declaration identifying and describing the source of the errors in the BL case and any other errors in bellwether productions; (2) a 30(b)(6) deposition concerning the identity and account history of the driver in B.L.'s case, with a hard deadline to produce any additional documents related to those issues (such as all documents associated with the newly-identified Columbia driver with apparently the same name as the subject driver including the background check performed on him); (3) identification and deposition of the individuals involved in creating any incorrect or corrected documents; and (4) a mandatory schedule for the parties to update the Court on their progress.

**Defendants' Position**

Other than a desire to mire this Court in the salacious details of an unfortunate discovery-related error that has largely been resolved, Defendants remain confused as to why Plaintiffs are insisting on this briefing moving forward – and have relayed as much to Plaintiffs' counsel. To be clear, Defendants have taken this issue seriously and have been working – and will continue to work – diligently to provide Plaintiffs with sworn information from the company regarding the genesis of these issues. But in seeking not only a declaration that has been the subject of prior discussions but apparently two 30(b)(6) depositions (one of which has not even been served and the other of which the parties have yet to meet-and-confer on) as well as fact witness depositions, Plaintiffs are not only grossly overreaching but attempting an improper end-run around meet-and-confer requirements. In essence, none of Plaintiffs' complaints represent live disputes and/or ripe for Court intervention.[3]

*First*, Uber does not dispute that it agreed to produce documentation that corrects a prior production error in the BL case that was recently identified in connection with preparation for the deposition of a 30(b)(6) witness (Hannah Nilles). Those corrected documents were produced on

---

[2] Defendants criticize Plaintiffs for raising concerns with the July 22 production in this brief, but Plaintiffs have spent nearly two weeks trying to run these issues to ground while the deadline for substantial completion has come and gone. More delay is prejudicial to Plaintiffs and detrimental to the litigation.

[3] Since this letter process began, documents relative to the Dean case have been produced and, as such, Defendants believe even Plaintiffs agree this letter is related only to the BL matter.

4

July 22.[4] While Plaintiffs attempt to portray this all as a "simple issue", the data extracts called for required significant efforts on the part of the company to identify and validate. Defense counsel continuously and diligently followed up with Defendants' discovery vendor as to the ongoing production process and pressed the need for expedited production, and counsel kept Plaintiffs informed about their best understanding of timing throughout this process.

*Second*, immediately upon discovering the relevant production error, Defendants' counsel not only informed Plaintiffs but also explained their best understanding of how the error occurred. Defense counsel also continued to provide additional details concerning the scope and origin of the error as more information was learned. More importantly, Defendants do not dispute that Plaintiffs are entitled to information and an explanation above and beyond the representations of Defendants' counsel as to how and why the prior production error occurred and have made that agreed position clear to Plaintiffs time and again during meet and confers that began on July 11 (and are continuing on a near daily basis).

Additionally, the issue of how and why the prior production error occurred is now the subject of a specific request for 30(b)(6) deposition served late in the evening of July 16. ("Topic 6. Uber's Recordkeeping System(s), Retention Policies, and Retention Practices with respect to exporting data for litigation production, including addressing Uber's alleged inadvertent misplacement of another driver's name on various status and workflows in connection with Plaintiff bellwether production. See July 10, 2025 email correspondence from Mark W. Premo-Hopkins to Meredith Drukker Stratigopoulos."). Defendants immediately acknowledged receipt of the deposition notice, including specifically Topic 6, and have since agreed to meet and confer with Plaintiffs **this Friday** as to the scope of Topic 6 and whether the topic can instead be resolved through a declaration or other certified statement. As a result, given that (a) this issue is subject to ongoing meet and confer, and (b) Defendants have agreed that there will be some version (based on the outcome of the Friday meet and confer) of a sworn statement provided to Plaintiffs, this issue is not even ripe for Court intervention. There simply is no live dispute at this time and there is no reason for the Court to presume that the parties will not reach accord during the scheduled meet and confer.

*Finally*, while Defendants regret the production error and agree that Plaintiffs are entitled to further information by way of explanation, Plaintiffs' apparent position that such information needs to be provided in three forms – declaration, 30(b)(6) testimony and fact witness testimony – borders on the absurd. Given that Plaintiffs served a 30(b)(6) deposition notice encompassing topics related to the production error, which Defendants are willing to address through either a declaration or testimony following an imminent meet-and-confer, the sworn statements that will be provided in connection with that notice are sufficient.

In summary, as previously stated, these issues are well on their way to complete resolution and/or do not represent a live dispute warranting your Honor's intervention. Defendants have

---

[4] Plaintiffs' questions related to the July 22 production are being raised with Defendants for the first time in connection with this briefing. While Defendants will meet and confer with Plaintiffs regarding their questions, these issues, too, are prematurely and improperly presented to the Court here.

asked repeatedly that Plaintiffs stand down on pressing this briefing and apologize to the extent that the Court has expended any resources on this non-existent dispute. While it is no doubt satisfying for Plaintiffs to inform the Court that a discovery error occurred, that is no justification for an unfounded PTO 8 brief and wasting this Court's already highly taxed time.

By: */s/ Roopal P. Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

*/s/  Christopher D. Cox*
**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
CHRISTOPEHR D. COX
JESSICA DAVIDSON
LAURA VARTAIN

**SHOOK, HARDY & BACON L.L.P**.
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, have authorized the filing.

Dated: July 23, 2025

By: */s/ Andrew R. Kaufman*