Bret Stanley (TX SBN 24075116)
bstanley@johnsonlawgroup.com
**Johnson Law Group**
2925 Richmond Ave, Suite 1700
Houston, TX 77098
Telephone: (713) 626-9336

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:23-md-03084-CRB<br><br>**PLAINTIFF'S RESPONSE TO UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S MOTION TO ENFORCE PROTECTIVE ORDER** |
| This Document Relates to:<br><br>All Cases | Judge: Honorable Lisa J. Cisneros<br>Courtroom: 6 – 17th Floor |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   LEGAL STANDARD ............................................................................................. 2

III.  FACTS ................................................................................................................. 3

    A.    *Chaya Lord vs. Uber Technologies, Inc., et al.* ...................................... 4

    B.    *Ivan Smith vs. Uber Technologies, Inc., et al.* ..................................... 10

IV.   ARGUMENT ...................................................................................................... 13

    A.    Uber's Argument Concerning Use Knowledge Base Policy Names in
    Discovery is Inconsistent With Prior Discovery Efforts in MDL 3084. .............. 14

    B.    Uber's Discovery Practice in Litigations Outside of MDL Mischaracterizes
    Evidence Sought and Seeks to Use MDL 3084's Protective Order to
    Obstruct Discovery ................................................................................. 15

V.    CONCLUSION .................................................................................................... 17

1  **I.    <u>PRELIMINARY STATEMENT</u>**

2        Bret Stanley, individually and on behalf of the PSC, respectfully submits Plaintiffs'

3  response in opposition to Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA,

4  LLC.'s (hereinafter referred to as "Uber") Motion to Enforce Protective Order, whereby Uber

5  alleges that Bret Stanley is in breach of the Protective Order entered in this MDL. *See* ECF 3512.

6  In its Motion, the Uber alleges that Bret Stanley violated the Protective Order (ECF 176) by using

7  confidential information to prosecute non-MDL or JCCP cases and by disclosing confidential

8  information to persons not entitled to receive it. *See* ECF 3512 at p. 7 of 21.

9        Uber's motion is meritless. Mr. Stanley has not violated this MDL's Protective Order

10  (ECF 176), has not disclosed confidential documents to individuals outside of the litigation, and

11  has not disclosed information designated as confidential under the Protective Order with people

12  not bound by its terms.

13        Due to Uber's refusal to produce relevant and discoverable documents in matters outside

14  of this MDL, Bret Stanley specifically requested production of Knowledge Base Policies by

15  *name*. No confidential documents were disclosed. Plaintiff's Requests for Production in matters

16  outside of this MDL that merely identify the *names* of Uber's Policy documents does not amount

17  to any breach of this MDL's Protective Order and is not a substantive disclosure of confidential

18  information.

19

20

21

22

23

24

25

26

27

28

RESPONSE TO DEFENDANTS' MOTION TO ENFORCE
PROTECTIVE ORDER
CASE NO. 3:23-MD-03084

## II.    **LEGAL STANDARD**

The Protective Order in this matter does not confer blanket protections on all disclosures or responses to discovery and the Protective Order extends protection to limited information or items that are entitled to confidential treatment under applicable legal principles. See ECF 176, ¶1. The Protective Order defines Confidential Information as material that contains "financial or business plans or projections; proprietary business information, or other confidential research, design, development, financial, business or commercial information; information regarding or relating to a Party's insurance program; personnel information; personal information about any Party to this lawsuit or employees (current or former) or board members (current or former) of any Paty to this lawsuit; the personal information and any identifying information of any Non-Party; non-public incidents reports; executive committee selection; and any information regarding any Party or Non-Party not otherwise available to the public that is protected from disclosure by law, regulation, or contract." See ECF 176 at ¶2.3.

The Protective Order requires each Party or Non-Party to take care to limit confidentiality claims "so that other materials, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of [the] Order." *See* ECF 176 at ¶5.1.

Uber's assertion that the mere reference to the names of Uber's internal policies constitutes a breach lacks merit and stretches the Order beyond its intended scope. Courts have consistently held that attorneys may use general knowledge and experience gained in one matter in subsequent litigation, provided that confidential materials themselves are not disclosed. See, e.g., *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)(finding no violation of protective order when using knowledge of confidential information in a subsequent matter against the same party: "lawyers cannot achieve total amnesia", those "who learn from and use their experience obtained in discovery under such an order would have to change fields, and never do work again, lest they 'use' what they learned in a prior case 'in any

way whatsoever' in any 'other action.' For the protective order to comply with common sense, a

reasonable reading must connect its prohibitions to its purpose."); *see also Streck, Inc. v. Rsch. &*

*Diagnostic Sys., Inc.*, 250 F.R.D. 426, 435 (D. Neb. 2008) (finding no violation of order because

a "general reference to protected documents [in subsequent] proceedings [was] insufficient"); *Hu-*

*Friedy Mfg. Co. v. Gen. Elec. Co.*, 1999 WL 528545, at *3 (N.D. Ill. July 19, 1999) (declining to

interpret order "barring future use of confidential information that is independently relevant and

discoverable in a subsequent action into a restriction on an attorney's right to practice law").

It is "well-established" that California courts "strongly favor[] access to discovery materials"

for individuals engaged in other litigation because "[a]llowing the fruits of one litigation to facilitate

preparation in other cases advances the interests of judicial economy by avoiding the wasteful

duplication of discovery." *Cordero v. Stemilt AG Services, LLC.*, 2:22-cv-00013-TOR, 2025 WL

1902292, 9th Cir., July 10, 2025 at  4; *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131

(9th Cir. 2003). Despite a presumption of public access, courts can issue protective orders to "protect

a party or person from annoyance, embarrassment, oppression, or undue burden or expense" resulting

from public disclosure of information obtained during discovery. Fed. R. Civ. P. 26(c)(1).

## III.    **FACTS**

Undersigned counsel Bret Stanley has litigated various claims against Uber since 2019.

*See* Exhibit A, Declaration of Bret Stanley at ¶9.  Between 2019-2023, Bret Stanley tried

individual arbitrations through final arbitration hearing on behalf of ten (10) different Uber

Drivers, including the *DaSilva* matter where a California arbitrator found employee status for Mr.

DaSilva, a long-standing driver for Uber. *See* Exhibit A, Declaration of Bret Stanley at ¶9. In

2024, Bret Stanley tried the *Ali Razak, et al. vs. Uber Technologies, Inc. et al.* before Judge

Baylson in the Eastern District of Pennsylvania. *See* Exhibit A, Declaration of Bret Stanley at

¶10. On information and belief, *Razak* was first ever jury trial against Uber concerning the

employee status of Uber Drivers and was tried to a hung jury. *See* Exhibit A, Declaration of Bret

Stanley at ¶10.  In 2023, Bret Stanley presented Oral Argument before the United States Judicial

Panel on Multidistrict Litigation to petition the JPML to create MDL NO. 3084, *In Re Uber*

*Technologies Inc., Passenger Sexual Assault Litigation. See* Exhibit A, Declaration of Bret

1  Stanley at ¶11.   Since 2019, Bret Stanley has filed or made appearances many in additional cases

2  outside of MDL 3084 against Uber concerning car jackings, murders, and physical assault on the

3  Uber Platform, sexual assault on the Uber platform, and traumatic injuries related to Uber

4  Platform motor vehicle collisions. *See* Exhibit A, Declaration of Bret Stanley at ¶12.

5  Unfortunately also since 2019, Uber has refused to produce internal documents, obstructed the

6  discovery process, sought to overturn consolidation efforts, or otherwise required court

7  intervention to compel discoverable information in every single case that Bret Stanley has

8  litigated. *See* Exhibit A, Declaration of Bret Stanley at ¶13.

9      Uber's current Motion to Enforce the Protective Order is yet another attempt to obstruct

10  discovery efforts and withhold relevant and discoverable documents in matters outside of MDL

11  3084.

12      **A.     _Chaya Lord vs. Uber Technologies, Inc., et al._**

13      The *Chaya Lord* matter is filed in the Superior Court of New Jersey, Mercy County Law

14  Division and is a catastrophic brain injury case against Uber concerning a motor vehicle collision

15  on the Uber Platform. In the *Lord* matter, Uber is defended by Bowman and Brooke, LLP, with

16  lead attorneys being Christopher Carton, John Mayer, Erica Meckles, and Edward O'Toole. In

17  February of 2025, Bret Stanley made an appearance in the *Lord* Matter.

18      Prior to Bret Stanley making an appearance in the *Lord* Matter, Plaintiff's Counsel

19  requested Uber's internal policies and procedures concerning many different relevant issues in the

20  *Lord* Matter.

21      For example, Plaintiff's in the *Lord* matter requested from Uber "policies with regard to

22  hiring/approving drivers *[sic]* to drive for Uber who have prior motor vehicle violations and/or

23  convictions." *See Exhibit 1*, Uber's Sept. 16, 2024 Response to Plaintiff Lord's Notice to Produce

24  No. 3 at p. 5.  In response to this Notice to Produce documents, Uber responded:

25

26

27

28

1

2

3

4

5

6

7

8

9

> **ANSWER:** Responding Defendant objects to the terms "hiring" and "drive for Uber" to the extent those terms are misleading and mischaracterize the nature of Uber's business and Uber's relationship to independent drivers and riders that utilize its proprietary technology and applications and/or falsely suggests the existence of an employment relationship between Uber and independent drivers. Uber is a transportation network company (TNC) within the meaning of New Jersey law. Uber does not employ or "hire" drivers. Instead, Uber licenses the driver version of the Uber Application (Driver App) to independent transportation providers in business for themselves. Riders download the rider version of the Uber Application (Rider App) and independent drivers download the Driver App; together the Apps allow users to access the platform that facilitates the connection of individuals in need of transportation with independent drivers willing to provide transportation services. Subject to and without waiving these objections, Responding Defendant directs Plaintiff to N.J.S.A. 39:5H-20(b) which dictates moving violates which if satisfied results in prohibition "from utilizing the transportation network company's digital network as a transportation network company driver or from providing a prearranged ride as a transportation network company driver . . . ."

10

11  *See* Exhibit 1, Uber's Sept. 16, 2024 Response to Plaintiff Lord's Notice to Produce No. 3 at p. 5.

12  Despite having relevant Knowledge Base Articles and Policies associated with this Request, Uber

13  did not produce any such internal Knowledge Base Policies or Articles.

14          In addition to the above, Plaintiff's received the following responses to discovery requests

15  seeking information that is housed in manuals and policies at Uber:

16

17

18

19

20

21

22

23

24

> 2.  **Driver and Vehicle Requirements** All documents, manuals, or electronic records that detail the qualifications or requirements drivers and their vehicles must meet in order to register or remain active on the Uber platform for any Uber service brand, including UberX, UberBLACK, UberEATS, and UberRUSH, from [insert date range].
>
> **RESPONSE:** Responding Defendants object to this Request to the extent it assumes facts not in evidence. Responding Defendants further object to this Request on the grounds the Request is vague, overbroad, ambiguous, unduly burdensome, and by virtue of the Request's inclusion of the time frame "[insert date range]" is not reasonably bounded by scope or time. Moreover, Responding Defendants object to this request to the extent it seeks irrelevant information. UberX, UberBLACK, Uber[] Eats, and UberRUSH have no bearing on the instant matter as none of these "service brand[s]" were involved in this accident. Subject to and without waiving these objections, Responding Defendants direct Plaintiff to N.J.S.A. 39:5H-22, et seq.

25

26   *See* Exhibit 2, Uber's December 10, 2024 Responses to Plaintiff Lord's Notice to Produce No. 2 at p. 4.

27

28

RESPONSE TO DEFENDANTS' MOTION TO ENFORCE
PROTECTIVE ORDER
CASE NO. 3:23-MD-03084

1
2
3
4
5
6
7

> 3.  **Control Over Driver Accounts** Copies of Uber's "Terms of Use" and any internal policies or communications that govern driver account requirements, including but not limited to: Maintenance of accurate driver information; Account suspension, termination, or other penalties for failure to comply with Uber's terms; Control of account access based on payment method validation or expiration.
>
> **RESPONSE:** Responding Defendants object to this Request to the extent it assumes facts not in evidence. Responding Defendants further object to this Request on the grounds the Request is vague, overbroad, ambiguous, and unduly burdensome. Subject to and without waiving these objections, Responding Defendants direct Plaintiffs to documents produced at Uber_000202-80.

8    *See* Exhibit 2, Uber's December 10, 2024 Responses to Plaintiff Lord's Notice to Produce No. 3
9    at p. 4.

10
11
12

> 4.  **Uber's Rights to Establish or Modify Charges** All documents, communications, policies, or procedures relating to Uber's right to establish, remove, or revise charges for services provided through the platform, including any changes to charges for both drivers and passengers, from [insert date range].

13
14
15
16

> **RESPONSE:** Responding Defendants object to this Request to the extent it assumes facts not in evidence. Responding Defendants further object to this Request on the grounds the Request is vague, overbroad, ambiguous, unduly burdensome, and by virtue of the Request's inclusion of the time frame "[insert date range]" is not reasonably bounded by scope or time. Moreover, Responding Defendants object to this request to the extent it seeks irrelevant information. Subject to and without waiving these objections, Responding Defendants direct Plaintiffs to documents produced at Uber_000202-80.

17    *See* Exhibit 2, Uber's December 10, 2024 Responses to Plaintiff Lord's Notice to Produce No. 4
18    at p. 4-5.

19
20

> 5.  ** Driver-Platform Relationship and Communication** Any internal communications, policies, or procedures regarding Uber's level of control over the actions, conduct, and performance of drivers, including: Driver onboarding process; Training materials; Monitoring or evaluation of driver performance (e.g., driver ratings, trip cancellations, acceptance rates, etc.).

21
22
23
24
25
26

> **RESPONSE:** Responding Defendants object to this Request to the extent it assumes facts not in evidence. Responding Defendants further object to this Request on the grounds the Request is vague, overbroad, ambiguous, unduly burdensome, and not reasonably bounded by scope or time. Moreover, Responding Defendants object to this request to the extent it seeks irrelevant information. Defendant Escobar was an independent contractor at the time of the accident, and there is no employment, agency, or servant relationship between Responding Defendants and Escobar. Subject to and without waiving these objections, Responding Defendants respond as follows: With respect to "Driver onboarding process," please see Uber's publicly available website. With respect to "training materials," none. for "[m]onitoring or evaluation of driver performance" please see documents previously produced at Uber_000202-80.

27    *See* Exhibit 2, Uber's December 10, 2024 Responses to Plaintiff Lord's Notice to Produce No. 5
28    at p. 5.

RESPONSE TO DEFENDANTS' MOTION TO ENFORCE
PROTECTIVE ORDER
CASE NO. 3:23-MD-03084

> 6. **Payment and Earnings Adjustments** All communications, internal guidelines, or records indicating when and how Uber has modified, reduced, or withheld payments to drivers, including any changes to payment structures, deductions, or penalties for failure to comply with platform rules, from [insert date range].
>
> **RESPONSE:** Responding Defendants object to this Request to the extent it assumes facts not in evidence. Responding Defendants further object to this Request on the grounds the Request is vague, overbroad, ambiguous, unduly burdensome, and by virtue of the Request's inclusion of the time frame "[insert date range]" is not reasonably bounded by scope or time. Additionally, this Request is irrelevant as it pertains to the current controversy, and exceeds the scope of discovery as contemplated by **R.** 4:10-2, and implicates production of sensitive financial information not related to this matter. Subject to and without waiving these objections, Responding Defendants direct Plaintiff to the documents previously produced at Uber_000202-80.

*See* Exhibit 2, Uber's December 10, 2024 Responses to Plaintiff Lord's Notice to Produce No. 6 at p. 5-6.

> 8. **Payment Methods and Account Information Requirements** Documents detailing Uber's requirements for drivers to maintain accurate payment methods and account information, including policies or internal guidelines regarding the consequences for drivers' failure to comply, from [insert date range].
>
> **RESPONSE:** Responding Defendants object to this Request to the extent it assumes facts not in evidence. Responding Defendants further object to this Requests on the grounds the Request is vague, overbroad, ambiguous, unduly burdensome, and by virtue of the Request's inclusion of the time frame "[insert date range]" is not reasonably bounded by scope or time. Subject to and without waiving these objections, Responding Defendants directs Plaintiffs to the documents produced at Uber_000202-280, including the Platform Access Agreement.

*See* Exhibit 2, Uber's December 10, 2024 Responses to Plaintiff Lord's Notice to Produce No. 8 at p. 6.

Uber's December 10, 2024 Responses to Plaintiff Lord's Notice to Produce Numbers 2, 3, 4, 5, 6, and 8 did not include **any** production from Uber's Knowledge Base Policies or Articles. However, the internal Knowledge Base platform contains Polices and Articles responsive to each of these discovery requests.

After Bret Stanley made his appearance in the *Lord* matter and reviewed discovery in the matter, it was apparent that Uber had no intention of producing documents from its Knowledge Base Policy platform. Therefore, to provide specificity and seek judicial efficiency, on April 16, 2025, Plaintiffs' Counsel on behalf of Ms. Lord served Uber a Notice to Produce Knowledge

RESPONSE TO DEFENDANTS' MOTION TO ENFORCE
PROTECTIVE ORDER
CASE NO. 3:23-MD-03084

1    Base Policies and Articles and identified the policies sought for production specifically by name.

2    *See* ECF 3512 - Exhibit 6 to Uber's Motion (filed under seal), Plaintiff Chaya Lord's April 16,

3    2025, 12th Notice to Produce Documents, Request 30 at p. 21, Exhibit A to Request at pp 24-45.

4    On June 16, 2025, Uber Responded to Plaintiff Lord's 12th Notice to Produce. *See* Exhibit

5    3, Uber's June 14, 2025 Responses to Plaintiff Lord's 12th Notice to Produce. Concerning

6    Plaintiff Lord's request for Uber to produce relevant and discoverable Knowledge Base Policies

7    and Procedures, Uber responded:

> **REQUEST NO. 30:** Produce all Knowledge Base Articles, documents and/or Policies identified in Exhibit A, attached hereto.
>
> **RESPONSE:** Objection. Defendants object to this Request as it is vague, ambiguous, and not reasonably calculated to lead to the discovery of relevant evidence. Defendants further object to this Request to the extent it is duplicative, harassing and not proportionate to the needs of this case per <u>R.</u> 4:10-2(g). Further objecting, Defendants object to this Request to the extent it assumes facts not in evidence, and otherwise presumes factual or legal information not present on the record. Defendants also object to this Request to the extent it seeks proprietary or trade secret information. Moreover, this Request appears to seek proprietary/trade secret documents that were exchanged in discovery in multi-district litigation ("MDL") arising from alleged incidents of sexual misconduct and/or violence committed by unrelated individuals, in violation of a governing Protective Order in the Northern District of California. Similar to another matter in Texas, Plaintiffs' Counsel is improperly attempting to utilize information derived and/or created from materials subject to that Protective Order to "clone" the MDL discovery in unrelated motor vehicle accident cases for other purposes including their own business and personal marketing.
>
> Finally, this violative Request seeks information entirely irrelevant to this motor vehicle accident litigation because it does not relate to any of Plaintiffs' vicarious liability or direct claims because they solely relate to materials used for processes and training of customer support agents. See https://help.uber.com/. See also https://www.uber.com/blog/personalized-customer-support-experiences/. Therefore, no response is required.

22    *See* Exhibit 3, Uber's June 16, 2025 Responses to Plaintiff Lord's 12th Notice to Produce No 30,

23    pp. 14-15. Uber and its Counsel made similar arguments to the above response in MDL 3084,

24    seeking to withhold these documents. However, Bret Stanley (and others) argued before the

25    Northern District of California in MDL 3084 the relevance of this production based on prior

26    experience in litigating against Uber.  In the wake of these arguments, the MDL Court Ordered

27    these documents to be produced as responsive to requests for company-wide policies and

28    procedures relating to vicarious liability, control, and other claims arising from injuries that occur

on the Uber Platform. *See* ECF 706 at 2, Order of Production of Knowledge Base Index or List of Policies and Related Homepages, July 18, 2024.

In the *Lord* Matter, Plaintiffs' Counsel moved to compel production of the Knowledge Base Policies and Articles sought in Plaintiff's 12 Notice for Production.  On July 9, 2025, Uber's Counsel Christopher Carton characterized the Knowledge Base Policies and Articles sought in *Lord* as:

```
 6            MR. CARTON:  Well, Your Honor, the way that
 7     these policies in this motion appear are knowledge-
 8     based documents.  And what Mr. Stern did is he attached
 9     as exhibit A to his motion a spreadsheet with 856
10     alleged policies.  They -- they have weird -- not full
11     names, no description, that Mr. Stanley I don't -- I
12     don't think had committed to memory, so he obtained
13     that information from the MDL, on which he's the
14     steering committee, and of that 856, 200 of them I
15     believe are policies.  Every single one of those is a
16     policy that is utilized by Uber customer support for --
17     to counsel victims of alleged sexual assault.
18            MR. STANLEY:  Absolutely not true.  That is
19     absolutely not true.  And so what I -- here, Judge --
20            MR. CARTON:  It is true.
```

*See* Exhibit 4, July 9, 2025 Motion to Compel Transcript, 62:7-19 (highlights added for emphasis). In the above statements by Uber's Counsel to the Court in the *Lord* matter, Mr. Carton, paints the Knowledge Base Policies sought by Plaintiff's Counsel as only policies used by customer support to counsel victims of alleged sexual assault. Mr. Carton doubles down on this on this assertion the Court later in the hearing:

```
23            MR. CARTON:  Your Honor, what -- the Notice
24     to Produce number 30: produce all knowledge-based
25     articles, documents, and policies identified in Exhibit
```

(Testimony continues on next page)

```
 1    A attached hereto.  Exhibit A is the document I've
 2    referenced, 864 things, let's just say, of which
 3    apparently, according to Mr. Stanley, in there are
 4    contained policies.  I don't believe all 856 claims are
 5    policies, but policies.  And my -- my -- the response
 6    from Uber to that was that the -- I'm sorry.  The --
 7    those policies all relate to customer service.  They're
 8    all available to customer service representatives from
 9    Uber to counsel sexual assault victims in sexual --
10    allegations of sexual assault cases, not motor vehicle
11    accidents, not accidents where, such as this, Mr.
12    Escobar is driving without even a passenger and having
13    not even been summoned by a passenger of Uber.  They're
14    not applicable, Your Honor.
15         And so, you know, it's stated on here, this
16    is my point, oh, it's -- as if it was so simple, Mr.
17    Carton hasn't produced activation documents --
18    policies.  Well, the request is to produce 854 in
19    exhibit a, Your Honor, and -- and we've represented
20    those are not related to motor vehicle, so --
21         MR. STANLEY:  That's false.
22         THE COURT:  Okay.
23         MR. STANLEY:  That is false.
```

*See* Exhibit 4, July 9, 2025 Motion to Compel Transcript, 64:23 – 65:23. (highlights added for emphasis).

### B.    *Ivan Smith vs. Uber Technologies, Inc., et al.*

The *Ivan Smith* matter is filed in the 131st Judicial District Court of Bexar County, Texas and is a catastrophic paralysis case against Uber concerning a motor vehicle collision on the Uber Platform. In the *Smith* matter, Uber is defended by Bowman and Brooke, LLP, with lead attorneys being Angela Angotti, Paige Cheung, Nicole Bechet, Jamie Giron and Brianna Leo. In April of 2025, Bret Stanley made an appearance in the *Smith* Matter.

Prior to Bret Stanley making an appearance in the *Smith* Matter, Plaintiff's Counsel requested Uber's internal policies and procedures concerning many different relevant issues in the motor vehicle collision case, however Uber only provided publicly facing policies from their website and the Community Guidelines. Knowledge Base Policies and Articles were neither identified in disclosures or produced whatsoever.

On April 17, 2025 in the *Smith* matter, Bret Stanley served Plaintiff's Fifth Request for Production on Uber. *See* ECF 3512 – Exhibit 7 to Uber's Motion (filed under seal), Plaintiff's Fifth Request for Production (April 17, 2025). Requests for Production Numbers 80 – 81 seek production of relevant and discoverable Knowledge Base Policies and Articles from Uber's internal system. *See* ECF 3512 – Exhibit 7 to Uber's Motion (filed under seal), Plaintiff's Fifth

Request for Production (April 17, 2025) at Requests 80 – 81, pp. 32-33. Included with these requests, Bret Stanley attached Exhibit A, which identified 181 Knowledge Base Policies and Articles for production by name. *See* ECF 3512 – Exhibit 7 to Uber's Motion (filed under seal), (April 17, 2025) at pp. 34-37.

In Uber's Motion to Enforce the Protective Order filed in MDL 3084, Uber makes the duplicitous argument that the Knowledge Base policies identified by name by Bret Stanley on the May 24 Spreadsheet (based on prior work performed *outside* of MDL 3084) do not amount to any breach of MDL 3084's Protective Order:

| | |
|---|---|
| 5 | **G.    Mr. Stanley did not know the Confidential Information before Defendants** |
| 6 | **produced Confidential and Highly Confidential/AEO documents in the MDL** |
| 7 | **documents.** |
| 8 | In rejecting Defendants' proposed compromise, Mr. Stanley referenced his knowledge of some |
| 9 | policy related information from other litigation against Defendants. Ex. A, Gromada Dec., Ex. 15. |
| 10 | While Mr. Stanley had a list of policy related information that he compiled in non-MDL cases against |
| 11 | Defendants (the "May 2024 Spreadsheet"), that list contains only 326 policy related resources and |
| 12 | does not include the homepages on which any of these resources are maintained. Ex. A, Gromada |
| 13 | Dec., ¶¶2-3 & Ex. 1. Defendants do not claim any MDL Protective Order violation from Mr. Stanley's |
| 14 | use of his May 2024 Spreadsheet.[8] |

*See* ECF 3512 at II(G), p. 7 (highlight added).

| | |
|---|---|
| 12 | **D.    Mr. Stanley uses his October 2024 Spreadsheet to prosecute other cases.** |
| 13 | Mr. Stanley recently appeared as additional counsel in two state court cases involving alleged |
| 14 | vehicle accidents:[6] *Smith v. Uber Technologies, Inc., et al.* (Bexar County, Texas) and *Lord v. Uber* |
| 15 | *Technologies, Inc., et al.* (Mercer County, New Jersey). Ex. A, Gromada Dec., ¶ 18. |
| 16 | On April 16, 2025, Mr. Stanley's co-counsel in *Lord* served a 12th Supplemental Notice to |
| 17 | Produce containing 41 requests including for "the Documents accessible via the hyperlinks shown in |
| 18 | Appendix A." *Id.*, ¶20 & Ex. 6 at Req. No. 41. Appendix A is a spreadsheet listing 891 policy related |
| 19 | resources. *Id.*, ¶20 & Ex. 6. *Of the 891 documents listed in Appendix A to the Lord Notice to Produce,* |
| 20 | *473 were identified by MDL Bates number on the October 2024 Spreadsheet. Id. at ¶21.[7]* |

*See* ECF 3512 at 5 (highlights added).

> Similarly, on April 17, 2025, Mr. Stanley served a Fifth Set of Requests for Production in *Smith* seeking, *inter alia*, the prior two and subsequent two versions of the "Articles/Policies identified in Exhibit A." Ex. A, Gromada Dec., ¶27 & Ex. 7 at Req. Nos. 80-82. Exhibit A is a spreadsheet identifying 180 policy related resources. *Id.* at 7. Of the 180 resources on Exhibit A, nineteen were identified by MDL Bates number on the October 2024 Spreadsheet. *Id.* at ¶28.
>
> ---
> [6] Ex. A, Gromada Dec., Ex. 8 at p. 4 (reflecting that *Smith* involves an Uber Eats trip that resulted in a collision) & Ex. 5 at 19:5-9 (reflecting that *Lord* involves "an automobile accident…").
> [7] Defendants excluded any document appearing on Mr. Stanley's May 2024 Spreadsheet from this comparison because those are not governed by the MDL Protective Order.
>
> 5

*See* ECF 3512 at 5 (highlights added). Uber's Counsel acknowledges that Bret Stanley provided a similar list of Knowledge Base Articles identified by name to Uber in May of 2024. This list was used to identify policies by name for production and Uber was ordered by this Court to produce the Knowledge Base Policies identified by name on the May 24 Spreadsheet. The names of these policies were identified by Bret Stanley through litigation efforts prior to and outside of MDL 3084. *See* Exhibit A, Declaration of Bret Stanley at ¶14. Uber has never claimed any breach of any Protective Order to Mr. Stanley or MDL Plaintiffs' Leadership based on the list of Knowledge Base Policies provided to Uber in May of 2024. *See* Exhibit A, Declaration of Bret Stanley at ¶15.

However, Uber's tactics are not the same in the *Smith* Matter as compared to the MDL and Uber is now claiming, for the first time, that **all** Knowledge Based Policies listed on Plaintiff Smith's Fifth Request for Production amount to a breach of MDL 3084's Protective Order.

On June 2, 2025 in the *Smith* matter, Uber filed a Motion for Protective Order from Plaintiffs Fifth Requests for Production. *See* Exhibit 5, Uber's Motion for Protective Order from Plaintiff's Request for Production (June 2, 2025). In *Smith*, Uber's Counsel claims the following:

> **A. Requested Discovery is Subject to a Federal Protective Order**
>
> Plaintiff's Fifth and Sixth Requests for Production contain information only known to Plaintiff's counsel through his involvement in the ongoing multidistrict litigation *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation* in the Northern District of California, San Francisco Division ("MDL 3083"). The discovery within that MDL was strictly protected under a federal protective order. *Exh. 1*; MDL 3083 Protective Order. Now, Plaintiff's counsel seeks to violate that protective order

*See* Exhibit 5, Uber's Motion for Protective Order from Plaintiff's Request for Production (June 2, 2025) at p. 3 (highlights added). Uber's Counsel in *Smith* went on to claim that **all** Knowledge Base Policies and Articles identified by the Plaintiff's in the *Smith* matter are documents discovered in MDL 3084, sourced from MDL 3084 production, and are policies pulled from the MDL 3084 discovery subject to the Protective in place in MDL 3084:

> Plaintiff has also attached "Exhibit A" to his Fifth Requests for Production, which contains a four-page spreadsheet identifying 180 document titles, articles, and "policies" from Uber's Knowledge Base. A multitude of Plaintiff's 180 identified documents in this exhibit were discovered in MDL 3048

> and were sourced from the MDL production. Those documents, articles, and policies pulled from the MDL 3048 discovery were subject to the Protective Order in place in that litigation. *Exh.* 1; MDL 3083 Protective Order. Additionally, the scope of Plaintiff's requests for documents, articles, and

*See* Exhibit 5, Uber's Motion for Protective Order from Plaintiff's Request for Production and Deposition Requests (June 2, 2025) at pp 12-13 (highlights added).

Unsurprisingly, Uber made incorrect representations to the Court in the *Smith* matter about the nature of these internal Policies and the breadth of MDL 3084's Protective Order.

In MDL 3084 filings, Counsel for Uber in this MDL only make the shaky argument that 19 of the 181 Policies Identified by name in Plaintiff's Requests for Production in *Smith* are breaches of the MDL Protective Order; however, Counsel for Uber in *Smith* enlarge the argument claiming that all of the named policies in Plaintiff's Request for Production are breaches of MDL 3084's Protective Order.

## IV.    ARGUMENT

Uber argues that Bret Stanley violated MDL 3084's Protective Order by requesting specific Uber Policies by *name* in Requests for Production made in litigations outside of this MDL. Uber's motions is an improper attempt to enlarge the MDL's Protective Order to such an extent that it unjustifiably sweeps all MDL information into the ambit of the Protective Order in order to obstruct counsel from obtaining discovery in litigations outside of MDL 3084

1    proceedings. As such, Uber's Motion should be denied.

2        A.    **Uber's Argument Concerning Use Knowledge Base Policy Names in Discovery is Inconsistent With Prior Discovery Efforts in MDL 3084.**

As acknowledged by Uber's Counsel in this MDL, Bret Stanley learned of Uber's Knowledge Base Articles and Policies prior to and/or outside of MDL 3084 discovery efforts. *See* ECF 3512 – Exhibit A – Declaration of Gromada at ¶2. In May of 2024, Bret Stanley provided Uber with a list of Knowledge Base Policies and Articles that identified policies by *name* to be produced in this MDL. The May 2024 List provided to Uber was not based on MDL 3084 production of Knowledge Base Policies and Articles but obtained by Bret Stanley in other matters. The MDL Counsel for Uber specifically excluded any resources on Bret Stanley's May 2024 Spreadsheet as those being challenged "since Mr. Stanley identified those resources outside the MDL. *See* ECF 3512 – Exhibit A – Declaration of Gromada at ¶21.   Uber has never argued that Bret Stanley's use of the *names* of Knowledge Base Policies in the May 2024 list amounted to a breach of any protective order.

Clearly when the *names* of these policies were used on Stanley's May 2024 List, the names became known to other plaintiff lawyers working in Plaintiffs' Leadership in MDL 3084. However, the May 2024 List did not disclose any other information from the policy documents to other MDL Plaintiff lawyers. Indeed, Bret Stanley never provided other Plaintiffs' counsel with confidential documents from other litigations outside of MDL 3084 until this Court entered an Order regarding a subpoena to Bret Stanley for production of documents on December 2, 2024. *See* ECF 1919, Order Regarding Subpoena to Bret Stanley. On December 2, 2024, Stanley was ordered to produce "Knowledge Base policies produced by Uber to Mr. Stanley from the *DaSilva* and *Saxton* matters." *See* ECF 1919 at 2-3. Included with Stanley's subpoena production were many of the Knowledge Base Policies and Articles *named* in Stanley's May 2024 List.

At no point between May 2024 and December 2024 did Uber claim that Stanley's use of the *names* of Knowledge Base Policies on the May 2024 List breached any protective order. To this day the Uber does not claim that the May 2024 List naming Knowledge Base Policies and Articles used for discovery efforts in MDL 3084 amounted to a breach of the Protective Order

1    here.

2        But now Uber claims that any Knowledge Base Policy *name* added to the May 2024 List

3    and sought in litigations outside of MDL 3084 is somehow a breach of the MDL Protective

4    Order. This argument is inconsistent with the discovery history within MDL 3084 and

5    inconsistent with Uber's prior position on Mr. Stanley providing names of these Policies.

6    Plaintiff's use of the *names* of Knowledge Base Policies "advance the interests of judicial economy

7    by avoiding the wasteful duplication of discovery." See *Cordero v. Stemilt AG Services, LLC.*, 2:22-

8    cv-00013-TOR, 2025 WL 1902292, 9th Cir., July 10, 2025 at 4; *Foltz v. State Farm Mut. Auto. Ins.*

9    *Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003).

10       **B.    Uber's Discovery Practice in Litigations Outside of MDL Mischaracterizes**
             **Evidence Sought and Seeks to Use MDL 3084's Protective Order to Obstruct**
11           **Discovery.**

12       This Court is well aware that Knowledge Base Policies and Articles are relevant and

13   discoverable to a myriad of claims concerning the Uber Platform, including personal injury,

14   motor vehicle collisions, sexual assault, employment actions, many others. Despite these

15   documents being independently relevant and discoverable in multiple different litigation types,

16   the Knowledge Base Platform is never disclosed by Uber in other litigations (unless compelled

17   to).

18       As shown above, when policy documents were sought in the *Lord* matter, Uber did not

19   identify or produce Knowledge Base Policies and Articles. Thereafter, once Bret Stanley made an

20   appearance and made specific requests to Uber to produce Knowledge Base Policies and Articles,

21   counsel for Uber mischaracterized these policies in discovery responses.  At the Motion to

22   Compel hearing in the *Lord* matter, Uber's Counsel stated that the Knowledge Base Policies

23   sought were, "available to customer service representatives from Uber to counsel sexual assault

24   victims in…allegations of sexual assault cases, not motor vehicle accidents…" *See* Exhibit 4, July

25   9, 2025 Motion to Compel Transcript, 65:8-14. (highlights added for emphasis).

26       Simply put, if Bret Stanley cannot specifically identify Knowledge Base Policies and

27   Articles by *name*, it is virtually impossible to rebut misstatements like those made by Uber's

28   Counsel in *Lord* that mischaracterize Knowledge Base Policies and Articles. Presumably the only

1   alternative would be to seek judicial intervention from this MDL requesting documents produced

2   under seal to the *Lord* Court in order to rebut material misrepresentations made on the record by

3   attorneys.

4           Similarly, in the *Smith* matter, Counsel Uber has sought shelter under MDL 3084's

5   Protective Order and has made even broader claims of its protection than Uber's Counsel in MDL

6   3084.  Again, Uber Counsel in this MDL does not claim that Bret Stanley has breached the

7   Protective Order by requesting Knowledge Based Policies and Articles by name that were

8   discovered outside of MDL 3084. However, Uber's Counsel in *Smith* argue in the District Court

9   of Bexar County Texas that the MDL 3084's Protective Order shields *all* discovery of these

10  Policies because they are, "only known to Plaintiff's counsel through his involvement in the

11  ongoing multidistrict litigation."

12          This mischaracterization by Uber's Counsel in the *Smith* Matter will require yet another

13  Court to attempt to decipher truth between counsel.[1]

14          Said plainly, Uber uses Defense Counsel in other litigations who do not have experience

15  with Knowledge Base Policies or the experience in MDL 3084 to justifiably prevent the

16  production of these documents.

17          For MDL 3084's Protective Order to comply with common sense, a reasonable reading

18  must connect its prohibitions to its purpose. *In re Dual-Deck Video Cassette Recorder Antitrust*

19  *Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Uber argues that simply seeking confidential documents

20  by name in another venue, without actually disclosing the document itself, violates the Protective

21  Order here. But the purpose of MDL 3084's Protective Order is not to bar the discovery of

22  independently relevant and discoverable information in subsequent actions. Additionally, the

23  purpose of MDL 3084's Protective Order is not to restrict an experienced attorney's practice of

24  law in such a way that is prejudicial to Plaintiffs who bring claims outside of MDL 3084 when

25  seeking independently relevant and discoverable information in those actions. Bret Stanley cannot

26  unlearn that these policies exist, and it is proper for him to seek these policies by name if Uber is

27

28  ──────────────────────────

[1] Hearing on Uber's Motion for Protection and Plaintiff's Motion to Compel Production  in the *Smith* matter has not occurred, but will be scheduled in near term.

1    not forthcoming in producing them in other matters.

2         In short, the use of the *names* alone in making requests for production of independently

3    relevant and discoverable information in litigations outside of MDL 3084 does not amount to a

4    substantive breach of MDL 3084's Protective Order.

5    **V.    <u>CONCLUSION</u>**

6         Bret Stanley has never disclosed any contents or substantive information of any

7    Confidential or Highly Confidential Documents produced in MDL 3084 to any person not party

8    to MDL 3084's Protective Order. Bret Stanley has sought discovery of Knowledge Base Policies

9    and Articles by providing the *names* of these documents to assist in discovery efficiencies, speedy

10   production, and to inform the Court of the nature of the documents sought. This does not amount

11   to a substantive breach of MDL 3084's Protective Order, and Uber's motion should be denied.

12

13   Dated: July 25, 2025                          Respectfully Submitted,

14

15                                                 JOHNSON LAW GROUP, LLP

16

17                                      By:    */s/ Bret Stanley*
                                               _____

18                                             Individually and on behalf of the
                                               Plaintiff's Steering Committee

19

20

21

22

23

24

25

26

27

28

RESPONSE TO DEFENDANTS' MOTION TO ENFORCE
PROTECTIVE ORDER
CASE NO. 3:23-MD-03084