# EXHIBIT 5

CAUSE NO. 2022CI11011

| | | |
|---|---|---|
| IVAN SMITH, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| UBER TECHNOLOGIES, INC.; PORTIER, | § | 57TH JUDICIAL DISTRICT |
| LLC d/b/a UBER EATS; RASIER, LLC; | § | |
| CARLA REYES TREVINO; JOSHUA | § | |
| ALDANA and | § | |
| RUBEN MALDONADO JR., | § | |
| | § | |
| *Defendants.* | § | BEXAR COUNTY, TEXAS |

**DEFENDANT UBER TECHNOLOGIES, INC.'S
MOTION FOR PROTECTIVE ORDER FROM PLAINTIFF'S
REQUESTS FOR PRODUCTION AND DEPOSITION REQUESTS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant Uber Technologies, Inc. ("Defendant" or "Uber") files this Motion for Protective Order under Texas Rule of Civil Procedure 192.6, and in support thereof would show the Court as follows:

**INTRODUCTION**

Uber respectfully requests this Court grant its Motion for Protective Order as to the 159 requests for production from Plaintiff's Fifth and Sixth Sets because the requests are overbroad, irrelevant, harassing, and improper. Plaintiff's Fifth and Sixth Sets of Requests for Production also seek specifically identified and named documents, articles, and policies that were sourced directly from discovery in a federal Multidistrict Litigation ("MDL") involving Uber. Plaintiff's counsel is subject to that federal protective order ("The Protective Order") in the MDL litigation. The identification and use of such documents in this litigation violates the protective order. *Exh. 1*; MDL 3083 Protective Order. Further, following Court's sanctions against Plaintiff, these requests appear retaliatory.

1

## FACTUAL BACKGROUND AND SUMMARY

On April 5, 2022, Plaintiff Ivan Smith drove his Mustang GT at 75 mph, nearly double the speed limit, leading to a collision with Defendant Carla Trevino's vehicle. EDR data and witness reports confirm both Smith's excessive speed and his failure to wear his seatbelt. Plaintiff Smith's medical records confirm cannabis in his system at the time of the crash. Plaintiff sued Uber because Defendant Joshua Aldana, a passenger, had accessed the Uber Eats platform to make a delivery. Neither Plaintiff nor Ms. Trevino, the driver of the vehicle Plaintiff crashed into, used or accessed Uber platforms during the accident.

## I.    RELEVANT DISCOVERY BACKGROUND

On April 17 and April 21, 2025, Plaintiff served his Fifth and Sixth Requests for Production to Uber, respectfully. *Exh.* 4; Plaintiff's 5th and 6th RFPs to Uber. Plaintiff has now propounded 159 new requests for production contained within those Fifth and Sixth sets of requests. Additionally, on April 29, 2025, Plaintiff requested deposition dates for the following persons Plaintiff's counsel identified as "Uber Employee Witnesses:" *Exh.* 3; Plaintiff's Deposition Requests.

"A person from whom discovery is sought, and any other person affected by the discovery request, may move within the time permitted for response to the discovery request for an order protecting that person from the discovery sought." TEX. R. CIV. P. 192.6(a). Plaintiff's numerous and redundant discovery requests, both for production and for the depositions of Uber employee witnesses who have <u>no personal knowledge or connection to the facts of this case</u> are (1) overbroad; (2) irrelevant; (3) improper; (4) harassing; (5) seek confidential and proprietary business information and trade secrets (6) burdensome due to the sheer volume of the requests; and (7) duplicative because many of Plaintiff's requests simply regurgitate discovery requests already propounded and long since answered.

## A. Requested Discovery is Subject to a Federal Protective Order

Plaintiff's Fifth and Sixth Requests for Production contain information only known to Plaintiff's counsel through his involvement in the ongoing multidistrict litigation *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation* in the Northern District of California, San Francisco Division ("MDL 3083"). The discovery within that MDL was <u>strictly protected under a federal protective order</u>. *Exh. 1*; MDL 3083 Protective Order. Now, Plaintiff's counsel seeks to violate that protective order and backdoor knowledge and information obtained from MDL 3083 into this completely unrelated case. Plaintiff's 159 requests for production and request for the depositions of ten Uber employee witnesses constitutes a fishing expedition where Plaintiff seeks to manufacture information to support an extraordinary weak theory that a navigation application caused the accident—not his own reckless driving at 75 miles per hour down Broadway (speeding 40 miles over the posted speed limit) without a seatbelt on and with cannabis in his system.

## B. Federal Protective Orders Apply to Discovery Within Texas State Court Actions

Texas recognizes laws and judicial decisions of other states on the basis of comity, expecting that those states will extend to Texas the same consideration. *K.D.F. v. Rex,* 878 S.W.2d at 593-94; *see also Keene Corp. v. Caldwell,* 840 S.W.2d 715, 720 (Tex. App.-Houston [14th Dist.] 1992, no writ); *Pittsburgh Corning Corp. v. Caldwell,* 861 S.W.2d 423, 426 (Tex. App.-Houston [14th Dist.] 1993, no writ).

In *Keene Corp.,* the plaintiffs attempted to force the defendants to produce a number of depositions and exhibits that had been given in another case. 840 S.W.2d at 717. The depositions that plaintiffs sought were among the documents subject to a protective order entered by a federal district court in Pennsylvania. *Id.* In refusing to compel defendants to turn over the protected documents, the court noted that reliance on a protective order is a factor that should be given weight and the court of appeals concluded that *it would be patently improper to compel production of the depositions subject to a protective*

3

*order entered by a court in another jurisdiction.* "The full faith and credit clause of the United States Constitution requires that the federal protective order be enforced. The full faith and credit clause of the United States Constitution applies to enforcement of federal judgments in state courts." *Bigelow v. Old Dominion Copper Mining and Smelting Co.*, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912). "A protective order, especially one that is relied on by the parties, is entitled to full faith and credit protection. *Keene Corp. v. Caldwell,* 840 S.W.2d 715, 720 (Tex. App.—Houston [14th Dist.] 1992, no writ).

Additionally, in *Rogers*, a trial court's order for the blanket production of documents subject to confidentiality agreements or protective orders in other lawsuits was held as an abuse of discretion. "Production of documents in one lawsuit does not mean the documents may be produced without restriction in an entirely different lawsuit. Some of the documents ordered produced are subject to confidentiality agreements or protective orders in the other lawsuits. *In re Rogers,* 200 SW.3d 318, 324 (Tex. App.—Dallas 2006, no pet.). The court in Rogers held that a party "cannot obtain production of the documents in this lawsuit *without regard to the limitations imposed in the other lawsuits*, and the trial judge clearly abused his discretion in concluding he could. *Id.*

## TIMELINE

The following is a timeline of the extensive and lengthy discovery that has been served on Uber to date:

| Date | Discovery Request Served on Uber by Plaintiff | Number of Requests |
|---|---|---|
| **August 3, 2023** | First Set of Interrogatories (ROGs) | 7 ROGs |
| **August 3, 2023** | First Set of Requests for Production (RFPs) | 7 RFPs |
| **August 10, 2023** | First Set of Requests for Admission (RFAs) | 95 RFAs |
| **September 20, 2023** | Second Set of Requests for Production (RFPs) | 23 RFPs |

| September 26, 2023 | Second Set of Requests for Admission (RFAs) | 280 RFAs |
|---|---|---|
| June 21, 2024 | Third Set of Requests for Admission (RFAs) | 69 RFAs |
| June 28, 2024 | Third Set of Requests for Production (RFPs) | 3 RFPs |
| October 7, 2024 | Fourth Set of Requests for Production (RFPs) | 8 RFPs |
| April 17, 2025 | Fifth Set of Requests for Production (RFPs) | 82 RFPs |
| April 21, 2025 | Sixth Set of Requests for Production (RFPs) | 77 RFPs |

Plaintiff has served **7** Interrogatories, **200** requests for production, and **444** requests for admission. Uber has produced over 6,100 pages worth of documents in discovery as well as over 200 pages of written discovery responses.

## II.     ARGUMENT AND AUTHORITIES

The Texas Rules of Civil Procedure authorize a trial court to grant an order of protection to "protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights." *In re K.L. & J. Ltd. P'ship*, 336 S.W.3d 286, 293 (Tex. App.—San Antonio 2010, no pet.). Trial courts are afforded broad discretion in the granting of protective orders. *In re Eurecat US, Inc.*, 425 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2014, no pet.)

Parties are not entitled to unlimited discovery. *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (per curiam) (orig. proceeding). Generally, discovery is permitted into any matter, not privileged, that is relevant to the subject matter, and is "reasonably calculated to lead to the discovery of admissible evidence." Although "relevant to the subject matter" is broadly construed, there are limits. *In re UPS Ground Freight, Inc.*, 646 S.W.3d 828, 832 (Tex. 2022) (per curiam) (orig. proceeding) (citation omitted). For instance, "[i]nformation is 'patently irrelevant' when reasonable minds would

not differ that it has no tendency to prove or disprove any issue involved in the subject matter of the suit and the information's irrelevancy is apparent from the face of the record." *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citation omitted). Tex. R. Civ. P. 192.3(a). Requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998). Thus, discovery requests must be "reasonably tailored" to include only relevant matters. *Id.*

This broad grant is also limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information in keeping with the understanding that discovery is a means to an end, rather than an end in itself. *See Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984) (orig. proceeding). Discovery, even of potentially relevant or admissible evidence, may not be used as a costly fishing expedition. *See K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996) (orig. proceeding) (per curiam). As such, requests must be reasonably tailored to include only matters relevant to the case and must be limited to the relevant time. *See Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 814-15 (Tex. 1995) (orig. proceeding) (per curiam); *In re Xeller*, 6 S.W.3d 618, 626 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). Even when a party seeks "information that is relevant and not privileged, courts should 'make an effort to impose reasonable discovery limits,' particularly when 'the burden or the expense of the proposed discovery outweighs its likely benefit.'" *Id.* (citations omitted).

The Texas Supreme Court has also repeatedly prohibited plaintiffs from taking apex depositions, i.e. "a corporate president or other high level corporate official." See Crown Cent. Petroleum Corp. v. Garcia, 904 S.W.2d 125, 128 (Tex. 1995); In re Alcatel USA, Inc., 11 S.W.3d 173, 175 (Tex. 2000) (orig. proceeding); In re Daisy Mfg. Co., 17 S.W.3d 654, 656 (Tex. 2000) (per curiam). Texas courts have further rejected plaintiffs' attempt to limit that apex depositions to the very top

6

corporate officials. See In re El Paso Healthcare Sys., 969 S.W.2d 68, 73, (Tex. App.—El Paso 1998 orig. proceeding). In El Paso Healthcare, the court explained:

> Nothing in Crown Central Petroleum Corp. suggests that its rule applies only to the highest level corporate official of a corporation. Instead, the Supreme Court expressly stated that corporate presidents and other high level corporate officials who do not have discoverable personal knowledge may seek a protective order.

Other courts have specifically applied apex status to vice-presidents and other high level corporate officials, such as those involved here. *See Tillman v. Advanced Pub. Safety, Inc.*, 2017 U.S. Dist. LEXIS 26549, *6-7 (S.D. Fla 2017)(finding plaintiff failed to meet the requirement for taking an apex deposition of the company's vice president, general counsel, and compliance officer); Apple Inc. v. Corellium, LLC, 2020 U.S. Dist. LEXIS 65650, *9, 2020 WL 1849404 (S.D. Fla. 2020)(finding Senior Vice President of Software Engineering for Apple met apex threshold; however, Corellium met its burden, particularly exhaustion of other employee depositions, and court expressly limited deposition in time and in scope of deposition to 3 very narrow topics); *Schmidt v. Goodyear Tire & Rubber Co.*, 2003 U.S. Dist. LEXIS 28130, *2 (E.D. Tex. 2003)(quashing apex deposition of Goodyear's vice-president who reported to a senior vice-president); *cr* 2008 U.S. Dist. LEXIS 145335, *1-2 (S.D. Miss. 2008)(quashing deposition of vice-president of claims despite argument she had personal knowledge of the post-Katrina fraudulent claims adjusting practice at issue in the case).

Plaintiff's counsel has indicated, both in communications with Defense counsel and in his motion for continuance, that this additional discovery is necessary because of Uber's prior objections to previous discovery requests, or because Uber has allegedly resisted or withheld responsive documents and information. But "a circular argument that the mere act of objecting to requests that are beyond the scope of permissible discovery can itself serve as the basis for obtaining discovery on the same irrelevant issues would, if permitted, render discovery requirements meaningless." *In re Liberty Cnty. Mut. Ins. Co.*, 537 S.W.3d 214, 222 (Tex. App.—Houston [14th Dist.] 2017). Plaintiff is

attempting to justify his latest discovery requests with precisely that same circular argument. These requests for production should be stricken or limited, and Plaintiff's request for the depositions of Uber employee witnesses <u>should be limited to a corporate representative deposition on topics that are relevant to this case, which has already been offered to Plaintiff since 2024.</u>

A.    **Plaintiff's 159 requests for production are unduly burdensome and harassing.**

The sheer volume of Plaintiff's 159 requests for production is unduly burdensome and harassing. Prior to Plaintiff's latest requests for production, Plaintiff had already served 49 Requests for Production to Uber over the course of four successive sets of requests for production. Now, nearly two years into this litigation, Plaintiff's counsel has more than tripled that amount with the two recent sets of requests for production served in April 2025. The requests sent by Plaintiff, make no effort to avoid duplicative requests already answered by the Uber Defendants, and are overly and unnecessarily burdensome for the Uber Defendants and not proportionate to the needs of this case.

"Although sheer volume does not make discovery overbroad as a matter of law… proportionality requires a fact-intensive, complex balancing of many relevant factors." *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 252 (Tex. 2021) Additionally, when a party has objected to a large set of discovery requests on the ground that the volume of the requests is unduly burdensome and harassing, requiring that party to file more specific objections to each request would defeat the purpose of filing a motion for a protective order, as is expressly authorized by the Texas Rules of Civil Procedure. *See Reynolds v. Murphy*, 188 S.W.3d 252, 260 (Tex. App.—Fort Worth 2006).

B.    **Plaintiff's 159 requests for production are irrelevant.**

Plaintiff has made no effort to limit his requests for production to the relevant facts of this case. Plaintiff's Sixth Set of Requests for Production are largely the same as Plaintiff's Fifth Set, except that they almost exclusively apply the same requests to Carla Reyes Trevino instead of Joshua Aldana. Request for Production Nos. 1-64 and 67-77 within Plaintiff's Sixth Set all apply exclusively to Carla

Trevino. These requests are wholly irrelevant and contain no bearing on this case – <u>Carla Trevino did</u> <u>not have access to the Uber Platform nor was Carla Trevino using the Uber Platform at the time of</u> <u>the incident,</u> a fact that Plaintiff has already been informed of repeatedly in prior discovery responses, including Uber's response to Plaintiff's 2nd Requests for Production, RFP No. 27:

> **REQUEST FOR PRODUCTION NO. 27:**
>
> Please produce screenshots, images, printouts, copies, or other documents, whether electronically stored, on paper, or through the Uber Application which contain information relating to electronic communications between Uber's customer support agents and Defendant Trevino.
>
> **RESPONSE:** Uber objects to this Request as overly burdensome and seeking irrelevant information, as it seeks all screenshots, images, printouts, copies, or other documents, whether electronically stored, on paper, or through the Uber Application, which contain information relating to electronic communications between Uber's customer support and Defendant Trevino without regard to whether the aforementioned are relevant to the claims and defenses at issue in this litigation, and it therefore lacks reasonable particularity.  Objection, vague, overbroad, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence, and to the extent it seeks information protected under attorney client privilege and work product protection. Subject to these objections and without waiving them, Defendant has no responsive documents as Trevino did not have access to the Uber Platform at any point prior or on the date of the incident.

*Uber's Objections and Responses to Plaintiff's Second Requests for Production, RFP No. 27* (highlights added).

The requests seek, among other things, exhaustive documents regarding Carla Trevino's agreements with Uber, every communication with Uber, all background checks on Ms. Trevino conducted by Uber, location and speeding data for Ms. Trevino maintained and stored by Uber, and more. Nearly every single request for production within Plaintiff's Sixth Set that pertains to Carla Trevino requests documents relating entirely to any supposed access Ms. Trevino had to the Uber Platform. These requests are not reasonably calculated to lead to further discoverable information either. There are no documents that exist within Uber's possession and control pertaining to Carla Trevino that are responsive to these requests, because Ms. Trevino did not have access to the Uber Platform nor was she using the Uber Platform when the subject incident occurred.

9

**C.     Plaintiff's requests for production are duplicative and disproportionate to the needs of the case.**

A trial court should limit discovery if:

> (a) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; or
>
> (b) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

TEX. R. CIV. P. 192.4. Determinations on the proportionality of requested discovery "requires case-by-case balancing." *In re State Farm Lloyds*, 520 S.W.3d 595, 607 (Tex. 2017). Proportionality acts as a "guard against redundant or disproportionate discovery by giving [a trial] court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Id.* at 614. A party's proportionality objections may be "supported by reference to 'previously disclosed documents providing the information in its possession.'" *In re Home State Cnty. Mut. Ins. Co.*, No. 05-21-00873-CV, 2022 WL 1467984, at *4 (Tex. App.—Dallas May 10, 2022, no pet.) (reh'g denied) (citing *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 793 (Tex. 2021) (orig. proceeding)).

Trial courts should limit otherwise permissible discovery if, "the discovery sought is unreasonably cumulative or duplicative." *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 788 (Tex. 2021). If a party's proposed discovery would be duplicative of documents already produced from prior discovery, a trial court may consider the proposed discovery to be unreasonably cumulative or duplicative. *See In re State Farm Mut. Auto. Ins. Co.*, 23-0755, 2025 WL 1197532, *11 (Tex. Apr. 25, 2025).

Plaintiff's requests for production are disproportionate to the needs of the case because the discovery sought is unreasonably cumulative, duplicative, and obtainable from documents already in

Plaintiff's possession. *See* Tex. R. Civ. P. 192.4.(a). The expense and burden for Uber to respond to over 150 requests for production would be substantial, and any responses would provide no benefit to Plaintiff, because Plaintiff already has the information sought in the requests for production. TEX. R. CIV. P. 192.4(b). Plaintiff's counsel himself admits to the unreasonably cumulative and duplicative nature of his latest requests for production in his motion for continuance:

> Since making an appearance in this matter, Mr. Stanley has served two sets of Requests for Production on the Uber Defendants that identify specific information that has been withheld in production to date. Previously, Plaintiff's Counsel requested much of this information in more general written discovery requests, however Mr. Ramos did not have information about Uber's internal workings that would allow a high degree of specificity in prior written discovery. While Mr. Ramos's requested were reasonably calculated to cause Uber to properly respond and provide information and documents, Uber's Counsel has withheld information and documents and has hidden behind onerous discovery objections.

*Pltf's Motion for Continuance*, at pg. 2.

Plaintiff's counsel is correct in his statement that Plaintiff has already requested "much of this information." *Id.* Indeed, the vast majority of Plaintiff's latest requests for production have already been sought by Plaintiff's counsel in this litigation and have already been answered by the Uber Defendants. For example, Plaintiff's Request for Production No. 1 from their Fifth and Sixth Requests for Production request "each Agreement between Uber" and Joshua Aldana and Carla Trevino. *See Exh.* 4. Uber has already produced all such contractual agreements, including Community Guidelines, Direct Fare Addendum, Indemnity Agreement, and the Platform Access Agreement, all of which were produced in their entirety (produced as UBER 001196-001277).

Plaintiff's counsel has also requested numerous documents pertaining to tracking the movements, location, speed, etc., of Joshua Aldana during deliveries . *Exh. 4*; *See* Plaintiff's Fifth RFPs

to Uber; RFP No. 13, 19, 20, 37, 38, 61, 63; *see also* Plaintiff's Sixth RFPs to Uber (containing the same requests but for Carla Trevino). The Uber Defendants have already produced Joshua Aldana's app status and GPS data from the day of the incident and for the full two weeks preceding the incident (nearly 3,000 pages worth of GPS and speed data) despite the fact that Joshua Aldana was not even driving at the time of the subject accident. Plaintiff's requests include telematics data for Defendant Aldana, including speed data. That data was included in the Uber Defendants' production of Defendant Aldana's GPS and Speed Data for the date of the incident and for a full two weeks preceding the incident (previously produced as UBER 001162 and UBER 001781-004626).

Plaintiff's RFPs also contain numerous requests for documents related to background checks, screening, and investigations into Defendant Aldana in connection to his access to the Uber Platform. *Exh. 4*; *See* Plaintiff's Fifth RFP to Uber; RFP Nos. 22-27; *see also* Plaintiffs Sixth RFPs to Uber (containing the same requests but for Carla Trevino). Again, the Uber Defendants have long since produced these documents, including the full background check for Joshua Aldana (previously produced as UBER 001278-001285).

**D. Plaintiff's requests violate the MDL 3084's existing protective order and therefore, necessitate a protective order in this case.**

Plaintiff's counsel's requests contain a staggering amount of pointed requests for proprietary, confidential data, documents, trade secrets, and other information from the Uber Defendants. Plaintiff's requests refer to numerous aspects of proprietary and confidential Uber software, data, policies, and Uber's corporate inner-workings, including references to "Bliss Communication," "Uber's Law Enforcement Response Team," "Offer Cards," "Screen grabs of the Safety Lens page," "Voyager Data," "Chronicle Trip map," "Zendesk messages," "JIRA software," and more.

Plaintiff has also attached "Exhibit A" to his Fifth Requests for Production, which contains a four-page spreadsheet identifying 180 document titles, articles, and "policies" from Uber's Knowledge Base. A multitude of Plaintiff's 180 identified documents in this exhibit were discovered in MDL 3048

and were sourced from the MDL production. Those documents, articles, and policies pulled from the MDL 3048 discovery were subject to the Protective Order in place in that litigation. *Exh.* 1; MDL 3083 Protective Order. Additionally, the scope of Plaintiff's requests for documents, articles, and policies is incredibly broad: Plaintiff's Request for Production Nos. 80-82 requests production not only of "each of the Knowledge Base or uKnowledge Articles / Policies identified in Exhibit A…" but also of the two prior and two subsequent versions of each of the 180 identified articles, documents, and policies identified in Plaintiff's "Exhibit A."

Defendant is a technology company engaged in a highly competitive industry. Its internal data and business policies are an important part of Defendant's ability to compete in the market. Exposing the proprietary policies and/or rate information for that risk would result in competitive harm to the insurer and to the insured, and diminish its competitive advantage.  Production of information sought in these discovery requests invades business trade secrets which are sensitive and which could  be exploited  if  disclosed, shared  with, or obtained by  Uber's  business competitors.

In addition, Plaintiff's requests are predicated on knowledge of specific document titles, policy names, and articles within Uber's Knowledge Base that Plaintiff's counsel could only have obtained through his involvement and receipt of discovery in MDL 3084. On December 28, 2023, Judge Breyer of the MDL court entered a Protective Order in the MDL. *Exh.* 1; MDL 3083 Protective Order. The Protective Order restricts the use of Protected Material as well as information "extracted from" Protected Material and "excerpts, summaries, or compilations" of Protected Material. *Id.* at 4-5:26-2. The Protective Order requires that a Party receiving discovery from a Producing Party in the MDL may use covered material "only for prosecuting, defending, or attempting to settle this Action or the [related JCCP] consolidated action…" *Id.* at 12:10-20. Under the language of that MDL Protective Order, covered material can be disclosed only to persons who agree to be bound by confidentiality obligations, and *only after* the Receiving Party obtains either the consent of the Designating Party or a

Court Order. *Id.* at 12-13:21-26. Therefore, Plaintiff's requests are in direct violation of the MDL Protective Order.

Plaintiff's counsel admits to utilizing information, documents, and discovery obtained in MDL 3084 in his motion for continuance, filed on April 30, 2025. In his motion, Plaintiff's counsel suggests that his unique access to this protected information is a reason why he was added as counsel in the present case:

> On April 4, 2025, Plaintiff's Counsel Bret Stanley made an appearance in this matter. Bret Stanley was brought into this matter due to his long history of litigation against Uber and based on current litigations with Uber around the country, most notably the litigation ongoing in the Northern District of California, San Francisco Division— styled Multidistrict Litigation 3084, *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation.* In the Fall of 2023, Mr. Stanley was named to MDL 3084's Plaintiff's Steering Committee and executive leadership. Since then, Mr. Stanley has undertook extensive discovery efforts against Uber, including many hearings

*Pltf's Motion for Continuance*, at pg. 1 (highlights added).

Plaintiff's counsel also freely admits in that same motion that the discovery Plaintiff is currently

seeking is predicated on knowledge obtained from the Uber MDL:

> before Judge Breyer and Magistrate Judge Cisneros in MDL 3084. These litigation efforts have allowed Mr. Stanley significant experience and knowledge concerning Uber's internal systems, documents, tracking of data, and employee witnesses with relevant and discoverable information. The information known to Mr. Stanley is especially relevant to this matter before the District Court in Bexar County, Texas.

*Pltf's Motion for Continuance*, at pg. 2 (highlights added).

Plaintiff's counsel now seeks to violate the federal protective order in place in MDL 3084 to conduct an impermissible fishing expedition in this *Smith* litigation using knowledge and discovery obtained through the Protective Order. To the Uber Defendants' knowledge, Plaintiff has also attempted this same strategy of sourcing confidential information from MDL 3084 to support similar, extensive discovery through production requests in another separate litigation, *Lord v. Uber Technologies, et. al.,* pending in Mercer County, New Jersey (also a motor vehicle collision case), where Plaintiff's counsel included a similarly expansive appendix of named documents, policies, and articles sourced from MDL discovery pursuant to the protective order.

Not only does Plaintiff's counsel seek confidential and proprietary information through his requests for production, but Plaintiff's counsel is also attempting to apply the same discovery standards and scope that govern a sprawling federal multidistrict litigation to the present case. The discovery required for a motor vehicle collision case where a single passenger of one of the involved vehicles had access to the Uber Platform is *not* comparable to the proportional discovery needs of a large, federal multidistrict litigation.

While Plaintiff's requests and attached Exhibit A violate the MDL Protective Order, they also

seek documents that have no relation to the facts of this *Smith* case. Plaintiff's "Exhibit A" attached to his Fifth Requests for Production, for example, requests documents, articles, and policies such as "Alleged Food Tampering," "Food Poisoning or Illness," "Delivery Upfront Pricing & Base Fare Pricing," and "Theft/Robbery or Property Damage." *See Exh.* 4 at Pg. 34. There is no possible or reasonable connection between documents or policies regarding food safety and food tampering and the motor vehicle collision at issue in this case.

Due to Plaintiff's improper use of protected information obtained through discovery in separate litigation, the Uber Defendants seek protection in the form of a protective order against Plaintiff's Fifth and Sixth Requests for Production.

### E. Plaintiff's Deposition Requests include Apex Depositions.

When a party seeks to depose a high-level corporate official and the corporate-defendant files a motion for a protective order to prohibit the deposition, the trial court should "first determine whether the party seeking the deposition has arguably shown that the official has any unique or superior personal knowledge of discoverable information." *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995). If the party seeking the deposition cannot show that "the official has any unique or superior personal knowledge of discoverable information, the trial court should grant the motion for protective order and first require the party seeking the deposition to obtain the discovery through less intrusive means." *Id.*

Plaintiff's request for the depositions of ten Uber employee witnesses is overly broad, unduly burdensome, and disproportional to the needs of the present case. The depositions of these employees will not reveal any discoverable information in this case that is not obtainable by less intrusive and less costly means. Nor will these depositions lead to any discoverable evidence that is not already available to Plaintiff. Uber's tangential involvement in this case does not warrant ten depositions of its corporate personnel for Plaintiff to have sufficient discovery to make his case at trial. Ten depositions of Uber

employees would also nearly double the number of depositions already taken in this litigation.

Additionally, Plaintiff's deposition requests include two apex corporate officers – Frank Chang and Joe Navin. Frank Chang is the Vice President of Applied Science at Uber. Joe Navin is the Director and Head of Delivery Safety at Uber. Both Frank Chang and Joe Navin do not possess any unique or superior *personal* knowledge of the facts of this case. Any discoverable information that Plaintiff contends either of these officers possesses would be equally accessible through less intrusive means. Indeed, the topics for which Plaintiff's counsel has marked in their request for these depositions have nothing to do with the facts of this case. Instead, Plaintiff's topics are extremely broad, generalized topics that pertain exclusively to the inner workings of Uber, including vague topics such as "Bike Safety" and "Road Safety."

Additionally, counsel for the Uber Defendants has repeatedly offered a corporate representative deposition for Plaintiff to ask questions regarding Uber's corporate practices and knowledge that *would* be relevant to this litigation. This Court has repeatedly directed Plaintiff to pursue a corporate representative deposition rather than permitting Plaintiff to pursue further (and

seemingly endless) cumulative discovery.

> THE COURT: You're willing to provide a corporate rep
> to answer these nine questions specifically on top of other
> stuff?
>
>         MS. ANGOTTI: That's what I'm saying, Your Honor, if

> THE COURT: I don't want to go back to what happened
> before today. Are you willing to take the questions up on a
> corporate rep deposition?
>
>         MR. RAMOS: Your Honor, it's something I certainly need
> to do, but these requests for admission are absolutely
> appropriate and we should -- this is relevant discovery that
> we're entitled to. Uber's position --
>
>         THE COURT: So that's a no?
>
>         MR. RAMOS: No, Your Honor. I'm happy to take a
> corporate rep. And I've attempted to get corporate rep
> depositions --
>
>         THE COURT: Well, I'm about -- she's offered one so I'm
> about to schedule one if you are willing to take it. That's
> what I'm asking you.
>
>         MR. RAMOS: I am willing to take it, Your Honor, but I

*Transcript from September 19, 2024 Hearing on Pltf's Motion to Compel*; 24:22-25, 26:11-25 (highlights added).

Plaintiff's deposition requests not only implicate the depositions of apex corporate employees, but also former employees and employees who are not located in the United States. This would be immensely time consuming, impose needless costs on all parties, and only serve to delay this litigation to permit Plaintiff to continue with his fishing expedition and continue to avoid litigating the actual facts and issues in this case.

**F. Plaintiff's discovery is retaliatory in nature**

Finally, Plaintiff's latest discovery requests for production, depositions, and motion for continuance are retaliatory against the Uber Defendants and were, therefore, upon information and belief submitted for an improper purpose. Plaintiff was sanctioned by this Court for failure to produce 10 hours of critical, material fact witness footage. *Exh.* 5; Court Order Granting in Part Defendant Uber's Motion for Sanctions. Those sanctions required Plaintiff's counsel to prepare and tender to Defendants "proof of all tangible items produced in discovery by Plaintiff to date." *Id.* at ¶ 4. To date, Plaintiff has yet to comply with this portion of the sanctions order.

Since this Court ordered the depositions of multiple fact witnesses as part of sanctions related to Plaintiff's failure to produce body camera footage, Defense counsel immediately sought availability for those depositions on April 25, 2025, one day after the Court ordered those depositions. *Exh.* 2; Emails between counsel; at 2-3. That same day, counsel for the Uber Defendants also requested revised topics for a corporate representative deposition so that availability for a potential witness could be determined. *Id* at 2. The week immediately following the sanctions hearing and subsequent Court order from April 24, 2025, Plaintiff's counsel indicated his intention to seek a continuance and delay these Court-ordered depositions. *Exh.* 2; at Pg. 1.

Plaintiff's requests for ten Uber employee depositions, 159 discovery requests, purposeful delay, and motion for continuance were retaliatory in nature because they sought to inflict needless increase in the cost of litigation to the Uber Defendants, in direct response to the sanctions sought and obtained against Plaintiff's counsel.

## CONCLUSION

Plaintiff's counsel has propounded redundant and duplicative discovery that is irrelevant, broad, and burdensome, such that it ought to be considered harassing. The Uber Defendants are being prejudiced by Plaintiff's violation of a federal Protective Order in an ongoing multidistrict litigation.

As a result, this Court should grant Uber's Motion for Protective Order on Plaintiff's 159 requests for production and the request for ten Uber employee witnesses. In the alternative, this Court should limit or strike the requests for production that are irrelevant, duplicative, or disproportionate to the needs of the case, as well as those that violate the MDL Protective Order, and this Court should direct Plaintiff to seek a corporate representative deposition with revised, narrowed topics rather than a shotgun approach of seeking multiple Uber apex employee depositions.

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By: */s/ Angela L. Angotti*

Angela L. Angotti
Texas Bar No. 24112893
Angela.angotti@bowmanandbrooke.com
Jack J. Shea
Texas Bar No. 24142489
Jack.shea@bowmanandbrooke.com
2901 Via Fortuna Drive, Suite 500
Austin, TX  78746
Telephone:  (512) 874-3800
Facsimile:    (512) 874-3801

*Counsel for Defendant Uber Technologies Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 2, 2025, a true and correct copy of the foregoing document was served electronically upon all counsel of record pursuant to the Texas Rules of Civil Procedure.

<u>/s/ Angela L. Angotti</u>
Angela L. Angotti

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION _____/ This Order Relates To: ALL ACTIONS | MDL No. 3084 CRB **PROTECTIVE ORDER** |

Pursuant to Pretrial Order No. 4, the parties filed a Stipulated Protective Order and a letter brief outlining certain outstanding disputes on December 21, 2023. Dkt. No. 170. This Protective Order adopts those provisions on which the parties agreed and resolves the disputes identified in the parties' letter brief.

1.    PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.5, below, that this Stipulated

Protective Order does not entitle them to file CONFIDENTIAL or HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY Information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a Party seeks permission from the court to file material under seal.

2.    DEFINITIONS

2.1    Action: MDL No. 3084 and all related cases that have been or later are filed in, transferred to, or removed to MDL No. 3084.

2.2    Challenging Party: A Party or Non-Party that challenges the designation of information or items under this Order.

2.3    "CONFIDENTIAL" Information or Items: Any Discovery Material that the Producing Party believes in good faith contains financial or business plans or projections; proprietary business information, or other confidential research, design, development, financial, business or commercial information; information regarding or relating to a Party's insurance program; personnel information; personal information about any Party to this lawsuit or employees (current or former) or board members (current or former) of any Party to this lawsuit; the personal information and any identifying information of any Non-Party; non-public incident reports; executive committee selection; and any information regarding any Party or Non-Party not otherwise available to the public that is protected from disclosure by law, regulation, or contract.

2.4    Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

2.5    Designating Party: A Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

2.6    Disclosure or Discovery Material: All items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, Testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2

2.7     Expert: A person with specialized knowledge or experience in a matter pertinent to the litigation, along with his or her employees and support personnel, who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this Action.

2.8     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items: Extremely sensitive "CONFIDENTIAL" Information or Items as defined in Section 2.3 that the Designating Party reasonably believes to be economically or competitively sensitive and warrants the extra layer of protection described below. By way of example, and not limitation, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information includes non-public information reflecting: transactional sales data; technical, sales, product and design research or analysis; research or analysis pertaining to drivers who use Uber's platform; sales information related to specific customers or classes of customers; financial, marketing, or strategic business planning information; trade secrets; pricing information; information related to government or regulatory investigations; information relating to research, development, testing of, or plans for existing or proposed future products; information representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs; and communications that constitute, incorporate, summarize, or reference any "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information. In designating Discovery Material as Highly Confidential Information, the Producing or Designating Party shall do so in good faith consistent with the provisions of this Protective Order and rulings of the Court. Nothing herein shall be construed to allow for global designations of all documents as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.9     In-House Counsel: Attorneys who are employees of a party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

3

United States District Court
Northern District of California

2.10 <u>Non-Party</u>: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

2.11 <u>Outside Counsel of Record</u>: Attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.12 <u>Party</u>: Any party to this Action, including all of its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staff).

2.13 <u>Privileged Material</u>: Disclosure or Discovery Material subject to a claim of attorney-client privilege, work-product protection, or any other legally recognized privilege or immunity from production.

2.14 <u>Producing Party</u>: A Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.15 <u>Professional Vendors</u>: Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16 <u>Protected Material</u>: Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

2.17 <u>Receiving Party</u>: A Party that receives Disclosure or Discovery Material from a Producing Party.

2.18 <u>Testimony</u>: All depositions, declarations, or other testimony taken, provided or used in this Action.

3. <u>SCOPE</u>

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected

4

United States District Court
Northern District of California

1    Material; and (3) any Testimony, conversations, or presentations by Parties or their

2    Counsel that might reveal Protected Material. However, the protections conferred by this

3    Stipulation and Order do not cover the following information: (a) any information that is in

4    the public domain at the time of disclosure to a Receiving Party or becomes part of the

5    public domain after its disclosure to a Receiving Party as a result of publication not

6    involving a violation of this Order, including becoming part of the public record through

7    trial or otherwise; and (b) any information known to the Receiving Party prior to the

8    disclosure or obtained by the Receiving Party after the disclosure from a source who

9    obtained the information lawfully and under no obligation of confidentiality to the

10   Designating Party. Any use of Protected Material at trial shall be governed by a separate

11   agreement or order. Nothing in this Protective Order shall modify or abrogate the rights or

12   responsibilities of the Parties under HIPAA or any other existing data privacy statute.

13       This Stipulation and Protective Order is without prejudice to the right of any Party

14   to object to disclosing or producing any information or item. Similarly, no Party waives

15   any right to object on any ground to use in evidence any of the material covered by the

16   Stipulation and Protective Order. This stipulation and Protective Order is without prejudice

17   to the right of any Party to seek further or additional protection of any materials or to

18   modify this Stipulation and Protective Order in any way, including, without limitation, an

19   Order that certain materials not be produced at all. This stipulation and Protective Order

20   does not alter, waiver, modify, or abridge any right, privilege or protection otherwise

21   available to any Party with respect to the discovery of matters, including, but not limited

22   to, any Party's right to assert the attorney-client privilege, the attorney work product

23   doctrine, or other privileges, or any Party's right to contest any such assertion.

24       In the event that additional parties join or are joined in this Action, they shall not

25   have access to the materials designated as "CONFIDENTIAL" or "HIGHLY

26   CONFIDENTIAL – ATTORNEYS' EYES-ONLY" pursuant to this Stipulation and

27   Protective Order unless and until the additional parties have executed and, at the request of

28   any Party, filed with the Court, their agreement to be bound by this Stipulation and

Protective Order in the form of their signing the Acknowledgment and Agreement to Be Bound (Exhibit A).[1]

Nothing in this Stipulation and Protective Order shall be construed to preclude any Party from asserting in good faith that certain Protected Materials require additional protection, such as protection of one Party's sensitive personal information from being disclosed to other Parties. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

4. DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5. DESIGNATING PROTECTED MATERIAL

5.1 Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to material that qualifies under the appropriate standards. The Designating Party must designate for protection only those materials, documents, items, or oral or written communications that qualify—so that other materials, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order. If only a limited and clearly delineated part of

---

[1] If additional non-natural persons are later added as parties to this action and this Protective Order is insufficient to address a party's needs for protection, the party may seek a modification of this Protective Order at that time.

United States District Court
Northern District of California

United States District Court
Northern District of California

the materials, documents, items, or oral or written communications qualify for protection, The Designating Party shall, to the extent practicable, make all reasonable efforts to designate for protection only those parts that qualify.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions, just as disclosure of Protected Material in violation of this order would do. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2     Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

(a)     For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has

indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES-ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES-ONLY" legend to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b)     For Testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party designates within thirty (30) days after receipt of a final transcript, all protected Testimony and specify the level of protection being asserted by giving written notice to the court reporter and all Parties. A Designating Party may specify at the deposition, hearing, or other proceeding, or up to 30 days after receipt of the transcript, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be marked as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" by the court reporter. All rough or final Testimony transcripts shall be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" until thirty (30) days after receipt of the final transcript. After that period ends, only Testimony that has been properly designated for protection consistent with the provisions of this Section 5.2(b) shall be covered by the provisions of this Order. Should a pending motion or procedural requirement necessitate an earlier date, the parties shall meet and confer as to a reasonable

date for provision of the confidentiality designation notice.

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. For paper copies of transcribed deposition Testimony, pages of transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order. The Designating Party shall inform the court reporter of these requirements. Any failure of or refusal by the court reporter to comply with these procedures will not invalidate the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" designation.

(c)     For information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s). When possible, in order to minimize the likelihood of inadvertent disclosure of information protected by this Order transmitted by electronic means, the Producing Party shall make a good faith effort to place the appropriate confidentiality designation in the subject of the electronic mail conveying the Protected Material and on the title of the digital document or media through which it is conveyed, or otherwise notify the Receiving Party of the fact that Protected Material is being conveyed. A failure to place the appropriate confidentiality designation in the subject of the electronic mail conveying the information and on the title of the digital document or media through which it is conveyed, or to otherwise notify the Receiving Party of the fact that information protected by this Order is being conveyed, does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. However, a Designating Party cannot seek sanctions against the

Receiving Party if the Receiving Party fails to treat the produced information as "CONFIDENTIAL" until such time as the Designating Party corrects any error or omission as the confidential nature of said information or electronic mail in writing to the Receiving Party, unless the Receiving Party is otherwise on notice that the information is "CONFIDENTIAL" through, for example, a confidentiality stamp on the document.

5.3 <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If any Producing Party inadvertently produces or disclosed Protected Material without marking it with an appropriate designation, the Producing Party or a Designating Party shall promptly notify the Receiving Party that the Protected Material should be treated in accordance with the terms of the Stipulated Protective Order, and shall forward appropriately stamped copies of the items in question. Within five (5) days of the receipt of the appropriately stamped copies of the items in question, the Receiving Party shall return or destroy the previously unmarked versions of the items and all copies thereof, and, additionally, must make all other reasonable efforts to assure that the material is treated in accordance with the provisions of this Order. The inadvertent disclosure shall not be deemed a waiver of confidentiality.

If any information was disclosed by a non-Designating Party to any person other than in the manner authorized by this Stipulation and Protective Order prior to notice of the inadvertent failure to designate, the non-Designating Party responsible for the disclosure shall bring all pertinent facts relating to such disclosure of such Protected Materials, to the extent such facts are known or reasonably knowable to the non-Designating Party, to the immediate attention of the Designating Party.

6. <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

6.1 <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party

10

does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     <u>Judicial Intervention</u>. If the Parties cannot resolve a challenge without court intervention, the Parties may agree to seek informal conference with the Court. If the Parties still cannot resolve the challenge or do not have such a conference, the Designating Party must file and serve a motion to retain or challenge confidentiality within 14 days of conferring on the challenged designation or an informal conference with the court, whichever is later. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Unless prompt intervention to resolve a dispute over a confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to seek an informal conference with the Court promptly after the Parties have completed the procedure set forth above. The procedures set out in this provision shall be procedural

only, and shall not affect the burden on challenging or maintaining a designation as established under applicable law.

6.4     Frivolous challenges. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties), may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this Action or the consolidated action captioned In re Uber Rideshare Cases, Case No. CJC-21-005188, so long as such use is permitted herein. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2     Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)     The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)     The officers, directors, and employees, including current and former employees, as well as In-House Counsel, of the Receiving Party to whom disclosure is

United States District Court
Northern District of California

1  reasonably necessary for this litigation and who have signed the "Acknowledgment and
2  Agreement to Be Bound" (Exhibit A);

3         (c)      Experts (as defined in this Order) or insurers of the Receiving Party to whom
4  disclosure is reasonably necessary for this litigation and who have signed the
5  "Acknowledgment and Agreement to Be Bound" (Exhibit A);

6         (d)      The court and its personnel, and any appellate court in this litigation;

7         (e)      Court reporters, stenographers, or videographers and their staff and
8  Professional Vendors to whom disclosure is reasonably necessary for this litigation.

9         (f)      Professional jury or trial consultants, mock jurors, and Professional Vendors
10 to whom disclosure is reasonably necessary for this litigation and who have signed the
11 "Acknowledgment and Agreement to Be Bound" (Exhibit A);

12        (g)      During their depositions, potential or actual witnesses in the Action to whom
13 disclosure is reasonably necessary and who have signed the "Acknowledgment and
14 Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or
15 ordered by the court. If a potential or actual witness refuses to sign Exhibit A, the witness
16 shall be permitted to see Protected Material, but will not be permitted to retain such
17 material. Pages of transcribed deposition testimony or exhibits to depositions that reveal
18 Protected Material must be separately bound by the court reporter and may not be
19 disclosed to anyone except as permitted under this Order.

20        (h)      The author or recipient of a document containing the information or a
21 custodian or other person who otherwise possessed or knew the information, or any current
   employee of the Designating Party.

22        (i)      Special masters or discovery referees appointed by the Court.

23        (j)      Mediators or settlement officers, and their supporting personnel, mutually
24 agreed upon by the Parties engaged in settlement discussion.

25        (k)      Any other person as to whom the Designating Party has consented to
26 disclosure in advance.

27        7.3    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-
28 ONLY" Information or Items. Unless otherwise ordered by the court or permitted in

13

writing by the Designating Party, a Receiving Party may disclose any information or item designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" to:

(a)     The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b)     Designated In-House Counsel of the Receiving Party who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts of the Receiving Party who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     The Court and its personnel, and any appellate court in this litigation.

(e)     Court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to be Bound." (Exhibit A);

(f)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(g)     Special masters, mediators, or other third parties retained by the parties for settlement purposes or resolution of discovery disputes or mediation;

(h)     During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

8.     PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that

14

compels disclosure of any information or items designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY," that Party must:

(a)     Promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)     Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c)     Cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material– and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.     A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)     The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Protected Material in its possession, and the Party is subject to an agreement

15

with the Non-Party not to produce the Non-Party's Protected Material, then the Party shall:

(1)     Promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)     Promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)     Make the information requested available for inspection by the Non-Party.

(c)     If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's Protected Material responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use reasonable efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.     INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

11.1.   Pursuant to Federal Rule of Evidence 502(d), if a Producing Party inadvertently discloses information (including both paper documents and electronically

stored information) subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, such disclosure shall not constitute a waiver or forfeiture of any privilege or other protection in this or any other action, provided that the Producing Party notifies the Receiving Party of the inadvertent production, in writing, within a reasonable amount of time of the discovery of the inadvertent production; however, if the discovery is made after the final Pretrial Conference is held, the Producing Party may seek protection for the privileges and doctrines contained in the paragraph for produced information only by further order of the Court.

11.2    When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

11.3    This stipulated Order set forth in this section and its subparts does not constitute a concession by any Party that any documents are subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege. This agreement also is not intended to waive or limit in any way any Party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

12.    MISCELLANEOUS

12.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2    Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    Right to Additional Protection. Nothing in this Order shall be construed to preclude either Party from asserting in good faith that certain Protected Material requires

17

additional protection. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

12.4 This Order shall be binding upon the Parties to this action, upon their attorneys, and upon the Parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, and other persons or organizations over which they have control. The Parties, their attorneys and employees of such attorneys, and their expert witnesses, consultants and representatives retained in connection with this Action each expressly stipulates to the personal jurisdiction of this Court for the purpose of any proceeding brought by a Party to this Action to enforce this Stipulation and Protective Order.

12.5 Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action, or any other action, any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving Party may file the information in the public record pursuant to Civil Local Rule 79-5 unless otherwise instructed by the court. While a motion to seal is pending before the Court, no Party shall make use in open court, in public, or in any way inconsistent with the protection in this order of any Disclosure or Discovery Material that is subject to that motion to seal without the consent of the Designating Party or the permission of the Court.

United States District Court
Northern District of California

13. <u>FINAL DISPOSITION</u>

Within 90 days after the final disposition of this Action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all reasonably accessible copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, Expert reports and work product, attorney work product, and consultant work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute as Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

Dated: December 28, 2023

_____

CHARLES R. BREYER
United States District Judge

# EXHIBIT 2

**Jack Shea**

| | |
|---|---|
| **From:** | Bret Stanley <bstanley@johnsonlawgroup.com> |
| **Sent:** | Monday, April 28, 2025 8:30 AM |
| **To:** | Angela Angotti; Eric Ramos; Ronald Ramos; Sandra Robouin; Nicole Bechet; Jamie Giron; Jack Shea; Randy Jeffries; Jherrera@herreralaw.com |
| **Cc:** | Brianna Leo; Eva DeLeon; Erica Suarez; Sierra Flores; Cade Connors; Amanda Salvador; Clerk; Ida Montalvo; Larry J. Goldman; Paige Cheung; Sara Margo; David Plaut; Irene Silva; Lisa Chapa; Erika Coignet; Chelsea Ramos; Jacob Przada |
| **Subject:** | Smith v. Trevino et al - Continuance |

Thanks, Angela. I will attempt to assist you, but as discussed previously, we expect Uber to make a fulsome search of their documents for responsive production. I have already identified prior ROGs/RFPs that I believe Uber should have produced documents. Also, our 5th and 6th Sets of RFPs provide specific document requests.

We intend to seek a brief continuance of the current Docket Control Order, hopefully only pushing the current deadlines 60 days or so. Uber has informed the Court that 4 depositions concerning the 10 hours of video at issue of the utmost importance and potentially dispositive in the case. Based on Uber's claim of the importance of this testimony, we must have these deposition transcripts to properly inform experts and litigate the case. I did not intend to move these deadlines, but this additional work requires it.

We are looking at the Court's future trial settings now to find the appropriate date for the resetting and will get back to you.

Will Uber and the other defendants join in the Motion for Continuance or will Uber and the other defendants be opposed?

Please let me know what your position is as soon as possible on joining in a motion for continuance.

Thanks,



**Bret Stanley** | Senior Counsel

Johnson Law Group | 2925 Richmond Ave., Suite 1700 | Houston, Texas 77098
Toll Free (800) 230-7700 | Phone (713) 626-9336 | Fax (713) 583-9460
BStanley@johnsonlawgroup.com | www.johnsonlawgroup.com

The information contained in this email is confidential and/or privileged. This email is intended to be reviewed initially by the recipient or a representative of the recipient, you are hereby notified that any review, dissemination or copying of this email or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by telephone and return this email to the sender at the above address. Thank you.

**From:** Angela Angotti <Angela.Angotti@bowmanandbrooke.com>
**Sent:** Friday, April 25, 2025 4:25 PM
**To:** Bret Stanley <bstanley@johnsonlawgroup.com>; Eric Ramos <eric@ericramoslaw.com>; Ronald Ramos <ronramospc@yahoo.com>; Sandra Robouin <SRobouin@RonRamos.com>; Nicole Bechet <Nicole.Bechet@bowmanandbrooke.com>; Jamie Giron <Jamie.Giron@bowmanandbrooke.com>; Jack Shea

<Jack.Shea@bowmanandbrooke.com>; Randy Jeffries <rjeffries@ericramoslaw.com>; Jherrera@herreralaw.com
**Cc:** Brianna Leo <Brianna.Leo@bowmanandbrooke.com>; Eva DeLeon <edeleon@hannaplaut.com>; Erica Suarez
<erica@ljglaw.com>; Sierra Flores <sflores@hannaplaut.com>; Cade Connors <CConnors@dorsettjohnson.com>;
Amanda Salvador <amanda@ericramoslaw.com>; Clerk <Clerk@ronramos.com>; Ida Montalvo <Ida@RonRamos.com>;
Larry J. Goldman <Larry@ljglaw.com>; Paige Cheung <Paige.Cheung@bowmanandbrooke.com>; Sara Margo
<Sara.Margo@bowmanandbrooke.com>; David Plaut <dplaut@hannaplaut.com>; Irene Silva <Irene@ronramos.com>;
Lisa Chapa <LisaC@ljglaw.com>; Erika Coignet <Erika@ljglaw.com>; Chelsea Ramos <chelsea@ericramoslaw.com>;
Jacob Przada <Jacob.Przada@bowmanandbrooke.com>
**Subject:** RE: Smith v. Trevino et al DO NOT REPLY-MRWeb: Online Notification- IVAN ROSS SMITH-77301.021-
UNIVERSITY OF THE INCARNATE WORD HEALTH SERVICES - BILLING


[EXTERNAL]

Bret,

Just a reminder the quicker you get me your revised list of corporate rep topics, the quicker I can get
availability for potential deposition dates so we can all include that scheduling in the below. Also it would really
help me if you could get me the list of documents you believe Uber has that are relevant and responsive to
Plaintiff's prior discovery requests at the same time so I can run that by the client asap and let you know as
soon as possible if there is disagreement so we can get a ruling from the court and keep things moving.

**Angela L. Angotti**
Partner
+1 512-874-3836 | Angela.Angotti@bowmanandbrooke.com

---

**From:** Angela Angotti
**Sent:** Friday, April 25, 2025 4:01 PM
**To:** Bret Stanley <bstanley@johnsonlawgroup.com>; Eric Ramos <eric@ericramoslaw.com>; Ronald Ramos
<ronramospc@yahoo.com>; Sandra Robouin <SRobouin@RonRamos.com>; Nicole Bechet
<nicole.bechet@bowmanandbrooke.com>; Abagail Carrier <acarrier@dorsettjohnson.com>; Jamie Giron
<jamie.giron@bowmanandbrooke.com>; Jack Shea <Jack.Shea@bowmanandbrooke.com>; Randy Jeffries
<rjeffries@ericramoslaw.com>; Jherrera@herreralaw.com
**Cc:** Brianna Leo <brianna.leo@bowmanandbrooke.com>; Eva DeLeon <edeleon@hannaplaut.com>; Erica Suarez
<erica@ljglaw.com>; Sierra Flores <sflores@hannaplaut.com>; Cade Connors <CConnors@dorsettjohnson.com>;
Amanda Salvador <amanda@ericramoslaw.com>; Clerk <Clerk@ronramos.com>; Ida Montalvo <Ida@RonRamos.com>;
Larry J. Goldman <Larry@ljglaw.com>; Paige Cheung <paige.cheung@bowmanandbrooke.com>; Sara Margo
<sara.margo@bowmanandbrooke.com>; David Plaut <dplaut@hannaplaut.com>; Irene Silva <Irene@ronramos.com>;
Lisa Chapa <LisaC@ljglaw.com>; Erika Coignet <Erika@ljglaw.com>; Chelsea Ramos <chelsea@ericramoslaw.com>;
Jacob Przada <jacob.przada@bowmanandbrooke.com>
**Subject:** RE: Smith v. Trevino et al DO NOT REPLY-MRWeb: Online Notification- IVAN ROSS SMITH-77301.021-
UNIVERSITY OF THE INCARNATE WORD HEALTH SERVICES - BILLING

Thanks Bret,

We also need to work together to select dates to hold for production of Plaintiff and Defense experts for
depositions. Plaintiff's expert designations are due on May 16th, 2025.  Will you please let us know as soon
as possible what dates from May 20th through June 27th that we can hold reserve for depositions of
Plaintiff's experts? Unless you have an objection to this we will go ahead and get availability for Plaintiff's
depositions of our Defense experts for the months of July and August and provide those dates so you can
reserve the time and send out notices as well as soon as we disclose as well.

Could you also provide additional availability for Plaintiff for the below depositions? We don't know when the deponents are available at this point, so I think it makes sense for Plaintiff's counsel to provide additional availability for some blocks of time in June, and then we can work with the co-defendants to get their availability and see where it matches up and propose sets of deposition days that work for everyone while we work together to get these noticed and set:

Deponents: Phillip Cervantes, Aaron Terrazas, Noah DeLuna, Christopher Bazany, Ivan Smith, Alfonso Saenz, Philip Gonzales, Marquis Williams, Mathias Rocha, Jonas Andersson, Gary Smith, Anita Smith, Euliterio Rendon, and selected treating physicians.

Also could you check on the production of Plaintiff's medical records? We don't show any updated treatment records produced by Plaintiff since June of last year, and we assume that Plaintiff is making claims for additional and continuing treatment past June 2024?

**Angela L. Angotti**
Partner
+1 512-874-3836 | Angela.Angotti@bowmanandbrooke.com

---

**From:** Bret Stanley <bstanley@johnsonlawgroup.com>
**Sent:** Friday, April 25, 2025 3:33 PM
**To:** Angela Angotti <Angela.Angotti@bowmanandbrooke.com>; Eric Ramos <eric@ericramoslaw.com>; Ronald Ramos <ronramospc@yahoo.com>; Sandra Robouin <SRobouin@RonRamos.com>; Nicole Bechet <Nicole.Bechet@bowmanandbrooke.com>; Abagail Carrier <acarrier@dorsettjohnson.com>; Jamie Giron <Jamie.Giron@bowmanandbrooke.com>; Jack Shea <Jack.Shea@bowmanandbrooke.com>; Randy Jeffries <rjeffries@ericramoslaw.com>; Jherrera@herreralaw.com>
**Cc:** Brianna Leo <Brianna.Leo@bowmanandbrooke.com>; Eva DeLeon <edeleon@hannaplaut.com>; Erica Suarez <erica@ljglaw.com>; Sierra Flores <sflores@hannaplaut.com>; Cade Connors <CConnors@dorsettjohnson.com>; Amanda Salvador <amanda@ericramoslaw.com>; Clerk <Clerk@ronramos.com>; Ida Montalvo <Ida@RonRamos.com>; Larry J. Goldman <Larry@ljglaw.com>; Paige Cheung <Paige.Cheung@bowmanandbrooke.com>; Sara Margo <Sara.Margo@bowmanandbrooke.com>; David Plaut <dplaut@hannaplaut.com>; Irene Silva <Irene@ronramos.com>; Lisa Chapa <LisaC@ljglaw.com>; Erika Coignet <Erika@ljglaw.com>; Chelsea Ramos <chelsea@ericramoslaw.com>
**Subject:** RE: Smith v. Trevino et al DO NOT REPLY-MRWeb: Online Notification- IVAN ROSS SMITH-77301.021-UNIVERSITY OF THE INCARNATE WORD HEALTH SERVICES - BILLING

Thank you, Angela.

Let me take a look and I'll get back with you soon.

Sincerely,



**Bret Stanley** | Senior Counsel

Johnson Law Group | 2925 Richmond Ave., Suite 1700 | Houston, Texas 77098
Toll Free (800) 230-7700 | Phone (713) 626-9336 | Fax (713) 583-9460
BStanley@johnsonlawgroup.com | www.johnsonlawgroup.com

The information contained in this email is confidential and/or privileged. This email is intended to be reviewed initially by the recipient or a representative of the recipient, you are hereby notified that any review, dissemination or copying of this email or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by telephone and return this email to the sender at the above address. Thank you.

**From:** Angela Angotti <Angela.Angotti@bowmanandbrooke.com>
**Sent:** Friday, April 25, 2025 3:25 PM
**To:** Eric Ramos <eric@ericramoslaw.com>; Ronald Ramos <ronramospc@yahoo.com>; Sandra Robouin
<SRobouin@RonRamos.com>; Nicole Bechet <Nicole.Bechet@bowmanandbrooke.com>; Abagail Carrier
<acarrier@dorsettjohnson.com>; Bret Stanley <bstanley@johnsonlawgroup.com>; Jamie Giron
<Jamie.Giron@bowmanandbrooke.com>; Jack Shea <Jack.Shea@bowmanandbrooke.com>; Randy Jeffries
<rjeffries@ericramoslaw.com>; Jherrera@herreralaw.com
**Cc:** Brianna Leo <Brianna.Leo@bowmanandbrooke.com>; Eva DeLeon <edeleon@hannaplaut.com>; Erica Suarez
<erica@ljglaw.com>; Sierra Flores <sflores@hannaplaut.com>; Cade Connors <CConnors@dorsettjohnson.com>;
Amanda Salvador <amanda@ericramoslaw.com>; Clerk <Clerk@ronramos.com>; Ida Montalvo <Ida@RonRamos.com>;
Larry J. Goldman <Larry@ljglaw.com>; Paige Cheung <Paige.Cheung@bowmanandbrooke.com>; Sara Margo
<Sara.Margo@bowmanandbrooke.com>; David Plaut <dplaut@hannaplaut.com>; Irene Silva <Irene@ronramos.com>;
Lisa Chapa <LisaC@ljglaw.com>; Erika Coignet <Erika@ljglaw.com>; Chelsea Ramos <chelsea@ericramoslaw.com>
**Subject:** RE: Smith v. Trevino et al DO NOT REPLY-MRWeb: Online Notification- IVAN ROSS SMITH-77301.021-
UNIVERSITY OF THE INCARNATE WORD HEALTH SERVICES - BILLING


[EXTERNAL]

Bret,

We have not received a response to the below, could you please advise?

**Angela L. Angotti**
Partner
+1 512-874-3836 | Angela.Angotti@bowmanandbrooke.com

**From:** Brianna Leo <Brianna.Leo@bowmanandbrooke.com>
**Sent:** Monday, March 24, 2025 2:39 PM
**To:** Eric Ramos <eric@ericramoslaw.com>; Ronald Ramos <ronramospc@yahoo.com>; Sandra Robouin
<SRobouin@RonRamos.com>
**Cc:** Angela Angotti <Angela.Angotti@bowmanandbrooke.com>
**Subject:** RE: Smith v. Trevino et al DO NOT REPLY-MRWeb: Online Notification- IVAN ROSS SMITH-77301.021-
UNIVERSITY OF THE INCARNATE WORD HEALTH SERVICES - BILLING
**Importance:** High

Good afternoon, Counsel –

I am following up on the below e-mail from Angela. Is a confidential designation requested for the attached
documents?

Best,

**Brianna M. Leo**
Legal Administrative Assistant
+1 512-874-3807 | Brianna.Leo@bowmanandbrooke.com

**From:** Angela Angotti <Angela.Angotti@bowmanandbrooke.com>
**Sent:** Thursday, March 20, 2025 5:54 PM
**To:** Eric Ramos <eric@ericramoslaw.com>; Ronald Ramos <ronramospc@yahoo.com>; Sandra Robouin
<SRobouin@ronramos.com>

# EXHIBIT 3

## (April 29, 2025, E-Mail Requesting for Uber Employee Depositions; To Be Filed Under Seal)

# EXHIBIT 4

## (Plaintiff's 5th and 6th Requests for Production to Uber Technologies, Inc.; To Be Filed Under Seal)