1 | LAURA VARTAIN HORN (SBN: 258485)
2 | laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
3 | 555 California Street, 30th Floor
San Francisco, CA 94104
4 | Telephone: (415) 439-1625

5 | ALLISON M. BROWN (admitted *Pro Hac Vice*)
6 | allison.brown@kirkland.com
JESSICA DAVIDSON (admitted *Pro Hac Vice*)
7 | jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
8 | 601 Lexington Avenue
New York, NY 10022
9 | Telephone: (212) 446-4723

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC
*[Additional Counsel Listed on Following Pages]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S REPLY SUPPORTING MOTION TO ENFORCE PROTECTIVE ORDER**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  6 - 17th Floor |

# **TABLE OF CONTENTS**

Page

I. Summary ..................................................................................................................................1

II. The undisputed facts establish Mr. Stanley's repeated violation of the Protective Order in this case. ..........................................................................................................................2

    A. The plain terms of the Protective Order cover documents as well as information copied or extracted from Protected Material. ..................................................... 2

    B. Disclosure of information extracted from Protected Material in non-MDL litigation is a breach of the Court's Protective Order. ............................................. 4

    C. Mr. Stanley's list of 587 policy related resources identified from Defendants' internal systems is not generalized knowledge. ...................................................... 4

III. The information at issue is confidential. ..............................................................................5

    A. The Court ordered production of more than "mere" policy names and recognized the information provided strategic insight. ............................................. 6

    B. The confidential information, as this Court recognized and intended, provides a roadmap of Defendants' information infrastructure ................................................ 6

    C. Defendants internally restrict the confidential information by role and responsibility. ........................................................................................................... 7

    D. The confidential information reveals Defendants' strategies. ................................ 8

    E. Mr. Stanley fails to explain or support his conclusion that the information is not confidential. ............................................................................................................. 9

    F. Mr. Stanley did not challenge the designation as required. ................................... 9

IV. Mr. Stanley seeks to blame Defendants for his violation through legally irrelevant and misleading arguments. ..............................................................................................................9

    A. Mr. Stanley admittedly used and disclosed confidential MDL information in non-MDL cases. ..................................................................................................... 10

    B. Mr. Stanley cannot unilaterally decide it is "efficient" to ignore the Protective Order. ..................................................................................................................... 11

Conclusion ....................................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cordero v. Stemilt AG Services, LLC*,
    2:22-cv-00013-TOR, 2025 WL 1902292 (9th Cir. July 10, 2025) ................................... 11, 12

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
    10 F.3d 693, 695 (9th Cir. 1993) ........................................................................................ 4, 5

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122, 1131 (9th Cir. 2003) ................................................................................ 11, 12

*Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, 1999 WL 528545, at *3 (N.D. Ill. July 19,
    1999) ........................................................................................................................................ 4

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 250 F.R.D. 426, 435 (D. Neb. 2008) ....................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Summary

Mr. Stanley admits that he took extensive, specific information from Confidential and Highly Confidential/Attorneys' Eyes Only ("AEO") MDL documents and disclosed that information in discovery requests issued in non-MDL cases and served it on numerous parties who are not subject to the Protective Order.[1] In fact, in at least one of the cases, the discovery requests containing the confidential MDL information were filed on a public docket by Mr. Stanley's co-counsel, who refuses to take them down. These facts establish a plain violation of the Protective Order.

Despite failing to challenge the Confidential and Highly Confidential/AEO designation of the MDL documents through the process required by the Protective Order before disclosing such information, Mr. Stanley now argues that information in these documents is not confidential because he says so. Mr. Stanley is wrong. This Court ordered Defendants to produce a "taxonomy of policies" which would reveal "not only discrete policies within [the Knowledge Base] system… but also how the policies are organized …[and] what the different issues are that Uber has to contend with…." *See* Court's statement at June 11, 2024 hearing, Ex. 3 to Gromada Declaration Supporting Motion to Enforce ("Gromada Dec."), at 23:8-19. Accordingly, Defendants produced documents reflecting snapshots of Defendants' internal systems revealing a "virtual file cabinet" in which policy related resources are kept by business units throughout the organization—all of which were designated Confidential and Highly Confidential/AEO.

As explained in the Motion and below, the information Mr. Stanley copied from Defendants' confidential production and is now using and disclosing in non-MDL litigation reveals insight into Defendants' internal organizational structure as well as the policy related resources for each specific business unit. This is "confidential…business or commercial information." ECF 176, ¶2.3. Moreover, Mr. Stanley should not be able to argue at the eleventh hour, *after* he violates the Court's Protective Order, that the information he took from documents designated as Confidential and Highly Confidential/AEO is not itself confidential when he never challenged the confidentiality designation.

---

[1] Mr. Stanley filed his Response both "individually" and "on behalf of the PSC," but no other PSC members signed the brief. ECF 3584.

Mr. Stanley's other arguments are red herrings, as they are legally irrelevant and largely inaccurate. Essentially, Mr. Stanley seeks to blame Defendants for his repeated violations of the Protective Order. Discovery disputes in non-MDL cases have nothing to do with whether Mr. Stanley violated the Protective Order. Further, Mr. Stanley's belief that using confidential MDL information in unrelated cases is "efficient" does not excuse violations of the Court's Protective Order.

Under the plain language of the Protective Order, information from Confidential and Highly Confidential/AEO documents cannot be disclosed to persons outside the MDL and cannot be used for "any purpose other than prosecuting this litigation…." ECF 176, ¶1, 7.1. Plaintiffs agreed to this prohibition. On numerous occasions throughout this litigation, the Court has ordered Defendants to produce confidential information and documents. Both the Court and Plaintiffs pointed to the Protective Order to allay Defendants' concerns about the scope of discovery and suggest Defendants did not need to dispute Plaintiffs' extensive requests. *See, e.g.*, ECF 1919, p. 2 (where this Court noted "the protective order in this litigation provides strong confidentiality protections"); *see also* ECF 1996, p. 3 (where the Court discussed an "alternate, simplified approach" to discovery of requiring explanatory declarations from Defendants that could be appropriate "coupled with the existing protective order…."); *see also* ECF 695, p. 15 ("And the Court is satisfied that Uber's confidentiality concerns can be sufficiently addressed by the Protective Order….").

Defendants relied on the safeguards set forth in the Protective Order in producing confidential information pursuant to this Court's Orders. Mr. Stanley chose to willfully and repeatedly violate the Protective Order. Moreover, despite his belated claim that the information is not confidential, Mr. Stanley was apparently not planning to seek such a finding from this Court as required. Defendants therefore ask this Court to enter their requested relief so the ongoing violations can be stopped and future violations prevented.

**II.   The undisputed facts establish Mr. Stanley's repeated violation of the Protective Order in this case.**

  **A.  The plain terms of the Protective Order cover documents as well as information copied or extracted from Protected Material.**

Mr. Stanley has not, and cannot, dispute that he violated the Protective Order by extracting information from MDL documents designated as Confidential and Highly Confidential/AEO for use in other litigation. Although Mr. Stanley claims that "[n]o confidential *documents* were disclosed," Resp. at 1 (emphasis supplied), his argument misses the mark as the plain wording of the Protective Order prohibits not only the use and disclosure of documents, but also "any information copied or *extracted* from Protected Material," ECF 176,¶ 3 (emphasis added). Mr. Stanley admitted at the December 19, 2024 status conference that he obtained the information at issue from Confidential and Highly Confidential/AEO MDL documents. Ex. A, Gromada Dec., Ex. 4 (December 19, 2024 transcript) at 32:6-12; 36:12-16.

Mr. Stanley likewise does not deny that he disclosed this protected information in non-MDL cases. That is a violation. Under the Protective Order, "Protected Material" is defined as "[a]ny Disclosure or Discovery Material that is designated as 'CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY.'" ECF 176, ¶2.16. Moreover, the Protective Order "cover[s] not only Protected Material" but also "any information copied or *extracted* from Protected Material," and "all copies, *excerpts, summaries, or compilations* of Protected Material," and any "conversations…by Parties or their Counsel that might reveal Protected Material." ECF 176,¶ 3 (emphasis added). The Court's definition of Protected Material is both intentional and necessary. If only the documents themselves were protected, counsel could simply copy information from the documents into another format (as Mr. Stanley did here), rendering the Protective Order meaningless.

In this case, it is undisputed that Mr. Stanley extracted information from Protected Material and used it to create the October 2024 Spreadsheet listing 587 of Defendants' internal policy related resources and their associated locations. Ex. A, Gromada Dec., Ex. 3 (Stanley Email) and Ex. 4 (December 19, 2024 transcript) at 32:6-12; 36:12-16.  Mr. Stanley then used that Protected Material to join unrelated cases and propound extensive discovery resulting in disclosure of the Protected Material to other counsel and in at least one publicly filed document. [2]

Such disclosures are *ipso facto* violations of the Protective Order that require swift action from

---

[2] Mr. Stanley's *Lord* co-counsel refuses to remove this material from the public docket despite a demand that he do so and knowing that Defendants filed this Motion to Enforce Protective Order.

the Court to ensure its orders are followed and parties' confidential information is protected.

**B. Disclosure of information extracted from Protected Material in non-MDL litigation is a breach of the Court's Protective Order.**

Unable to dispute the fact that he extracted confidential information from Protected Material and both used and disclosed the confidential information in violation of the Protective Order, Mr. Stanley argues that his actions are not a "*substantive* breach of MDL 3084's Protective Order." Resp. at 1:17-18; 17:2-4 (emphasis added). Whether Mr. Stanley frames his actions as a "substantive breach" or not is wholly irrelevant to the Court's inquiry.

The Protective Order makes no distinction between minor or substantive breaches, nor does it take into consideration a Party's subjective belief as to the magnitude of the violation. Rather, as outlined above, the Protective Order protects "[a]ny Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." ECF 176, ¶2.16. Accordingly, Mr. Stanley's argument that his use and disclosure of confidential information "does not amount to a *substantive* breach of MDL 3084's Protective Order" is without merit. Resp. at 17:2-4 (emphasis added).

**C. Mr. Stanley's list of 587 policy related resources identified from Defendants' internal systems is not generalized knowledge.**

Mr. Stanley cites case law for the unobjectionable proposition that he may use "general knowledge and experience gained in one matter in subsequent litigation, provided that confidential materials themselves are not disclosed." Resp. at 2:21-3:7; *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).[3] In *Dual-Deck*, unlike here, the protective order prohibited the use of "all information produced in discovery" *whether confidential or not*. 10 F.3d at 694. The expansive nature of the protective order itself raised concerns regarding counsel's ability to use "general knowledge and experience." *Id.* Moreover, unlike here, the allegedly confidential information in *Dual-Deck* was not disclosed to outside parties. *Id.* Rather, it was used in another case

---

[3] Mr. Stanley also cites two out of Circuit cases to support his proposition, but both are inapposite: *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 250 F.R.D. 426, 435 (D. Neb. 2008) and *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, 1999 WL 528545, at *3 (N.D. Ill. July 19, 1999). Defendants addressed and distinguished these cases in their Motion to Enforce the Protective Order. *See* Motion at 12.

4
DEFENDANTS' REPLY SUPPORTING MOTION TO ENFORCE PROTECTIVE ORDER
Case No. 3:23-MD-3084-CRB

between the same parties and there was no accusation that any confidential information was revealed. *Id.* at 694-695. Indeed, the discovery information was referenced in a filing "under seal." *Id.* at 694.

The information that Mr. Stanley is now using in unrelated litigation simply is not generalized knowledge and experience. Notably, Mr. Stanley is silent as to how the extensive, detailed, categorical list of confidential policy, strategy, and pilot program information structured, in part, by scope and purpose, could possibly be termed "general knowledge and experience."

**III.     The information at issue is confidential.**

Even if it were appropriate to evaluate Mr. Stanley's unilateral determination that the information at issue is somehow not confidential *after* his willful disclosure of such information, his argument fails. In fact, this Court recognized on the record that the information it was ordering Defendants to produce would provide insight into Defendants' strategies and organizational structure. This Court was correct.

A tour through the October 2024 Spreadsheet clearly shows how this information provides a "virtual file cabinet" which invites viewers into the confidential, access-restricted, internal indices developed and used by various business units across the company. For example, the information in Column C of the October 2024 Spreadsheet[4] shows the organization's repository or Knowledge Base, which is the virtual file cabinet where Defendants maintain a resource. *See* Ex. A, Gromada Dec., Ex. 3. Column B of the October 2024 Spreadsheet[5] describes the specific resource within the virtual file cabinet–repository or Knowledge Base–in Column C. *Id*.

Aggregating this information creates a vast index of Defendants' virtual file cabinets, revealing the resources accessible to various business units. As explained below, this index of virtual file cabinets did not even exist until Defendants were ordered to produce dozens of Knowledge Base Homepages from various business units across the U.S. Rides business. Mr. Stanley then admittedly compiled that information from these Confidential and Highly Confidential/AEO documents and has now disclosed it numerous times to counsel not bound by the Protective Order. Collecting resources

---

[4] This information was transferred to Column A of the *Lord*, *Jones*, and *Soto* discovery requests.
[5] This information also appears in Column B of the *Lord*, *Jones*, and *Soto* discovery requests.

from across business units and organizing them by source reveals the issues that arise in Defendants' business, how Defendants classify and analyze those issues, and their resulting strategic choices.

**A. The Court ordered production of more than "mere" policy names and recognized the information provided strategic insight.**

This Court ordered Defendants to produce a "taxonomy of policies" which would reveal "not only discrete policies within [the Knowledge Base] system…but also how the policies are organized …[and] what the different issues are that Uber has to contend with…." Ex. A, Gromada Dec., Ex. 3 (June 11, 2024 transcript) at 23:8-19. Defendants produced the information as ordered. Mr. Stanley's post-violation attempts to minimize the sensitivity of the information he copied and then publicly disclosed by insisting it is "merely…the names of Uber's Policy documents" seeks to re-write history and thwart this Court's authority. Resp. at 1-2.

The "taxonomy" of a company's policy related resources, which business units have access to particular resources, and the insight into the "different issues" a company faces, reveals "confidential…business or commercial information" covered by the Protective Order. ECF 176, ¶2.3. This is precisely the type of information protective orders are designed to shield and Mr. Stanley improperly and unnecessarily disclosed.

**B. The confidential information, as this Court recognized and intended, provides a roadmap of Defendants' information infrastructure.**

The documents Defendants produced do not simply reflect policy related resources, but also how and where those resources are organized. Notably, Defendants did not even have the comprehensive "taxonomy" showing "how the policies are organized" that this Court ordered Defendants to produce. Ex. A, Gromada Dec., Ex. 3 (June 11, 2024 transcript) at 23:8-19. As a result, Defendants produced screenshots reflecting the internal resources available to certain business units. This production created a literal snapshot of Defendants' policy-related (Knowledge Base) information taxonomy that did not previously exist and was produced on a rolling basis as it was collected from the various business units.

Mr. Stanley extracted this information and compiled his October 2024 Spreadsheet by MDL Bates numbers. Notably, much of that same information, without MDL Bates numbers, was copied

onto the spreadsheet attached to the discovery requests in *Lord*, *Jones*, and *Soto*. Ex. A to Motion, Gromada Dec., Exs. 3, 6, 16 & 17. The spreadsheets attached to these discovery requests list 473 of Defendants' policy related resources that Mr. Stanley copied from confidential MDL documents. Then, for each resource, the spreadsheets identify the virtual file cabinet in which it is maintained (necessarily revealing which resources are grouped together). *Id.*, Gromada Dec., Exs. 6, 16 & 17 (discovery requests showing the "Source KB Homepage" associated with each resource).

This information (*i.e.*, the "taxonomy" of Defendants' policy resources) is confidential and provides insight into Defendants' strategic choices. For example, by listing resources found in the "New Hire Onboarding" Knowledge Base, Mr. Stanley reveals what information Defendants use to onboard new employees. Similarly, by listing resources found within the "agent, earner account, and payment homepage," Mr. Stanley discloses information about Defendants' payment processes and procedures. As discussed below, most of Defendants' employees do not even have access to all Knowledge Bases and thus would never be able to visualize Defendants' policy-related information taxonomy in the way Mr. Stanley's October 2024 Spreadsheet allows.

**C.  Defendants internally restrict the confidential information by role and responsibility.**

Mr. Stanley's October 2024 Spreadsheet, and the discovery requests in *Lord*, *Jones*, and *Soto*, aggregate resources found in different Knowledge Bases used by different business units within Defendants. To comply with the Court's Order, Defendants had to gather this information from the different business units precisely because it is not centrally located. Defendants' employees only have access to the Knowledge Bases that are relevant to their role and responsibilities. Ex. A to Motion, Gromada Dec., ¶6.

As a result, Defendants' own employees are not able to see the "names" of resources available to employees in different divisions and roles. Ex. A to Motion, Gromada Dec., ¶6 ("These Knowledge Bases are accessible to employees on an as-needed basis, depending on the employees' roles and responsibilities within the company. Moreover, Knowledge Bases are organized in a decentralized manner, and access is given to employees subject to role-based credentials and is limited to a subset of Knowledge Bases relevant to the scope of their jobs due to data security and proprietary concerns about access within company systems"). This segregation prevents employees from one business unit

7

from, for example, revealing to a competitor what resources Defendants provide to other business units.

Defendants' efforts to take the kinds of affirmative measures recognized as confidentiality-preserving–such as, limiting access to the information to certain employees only; digitally housing the information only within the business units who are permitted access to it; objecting to the production of this information in discovery; and once ordered to produce it, doing so only under the protection of the Court's Protective Order and with Confidentiality stamps–underscores the confidential nature of this information.

**D. The confidential information reveals Defendants' strategies.**

As this Court recognized, the very fact that a company promulgates a policy about a given topic reveals information about the company's strategies. Ex. A, Gromada Dec., Ex. 3 (June 11, 2024 transcript) at 23:8-19 (observing that the information would show "what the different issues are that Uber has to contend with….").

For example, if a resource is identified as being part of a "pilot" program, that information reveals Defendants believe it relates to a topic of emerging importance and provides insight into the timing of policy development. Several resources identified on the October 2024 Spreadsheet and in discovery requests in *Lord*, *Jones*, and *Soto* are identified as being part of pilot programs. Similarly, when a company subdivides a topic and provides different resources for each subtopic, such categorization reveals how the company conceptualizes the issue and when the company believes factual differences require different resources. In several instances, the October 2024 Spreadsheet and discovery requests in *Lord*, *Jones*, and *Soto* reflect how Defendants conceptualize issues and when different resources are provided.[6]

Here, Mr. Stanley did not disclose just a few of Defendants' resources and their related Knowledge Base. Instead, the *Lord* discovery requests identify 473 policy related resources that he

---

[6] *See e.g.*, Ex. A, Gromada Dec., Ex. 3 (October 2024 Spreadsheet) at rows 208-221 and Exs. 6, 16 and 17 (non-MDL discovery requests) at rows 142-150; *see also* Ex. A, Gromada Dec., Ex. 3 (October 2024 Spreadsheet) at rows 251-259 and Exs. 6, 16 and 17 (non-MDL discovery requests) at rows 179-184.

copied from confidential MDL documents and their associated Knowledge Bases.[7] Collectively, this information reveals significantly more about Defendants' strategies than disclosure of an isolated resource. For a myriad of reasons, companies do not publicly reveal all resources they provide to employees. Rather, companies protect such information as "confidential…business or commercial information" covered by the Protective Order. ECF 176, ¶2.3.

### E. Mr. Stanley fails to explain or support his conclusion that the information is not confidential.

The Protective Order is meant to protect "confidential…business or commercial information." ECF 176, ¶2.3. Mr. Stanley provides no explanation at all-much less a cogent one-for his assertion that hundreds of Defendants' internal resources, and information reflecting how Defendants categorize and organize those resources, do not fall into this category.

### F. Mr. Stanley did not challenge the designation as required.

If Mr. Stanley believed information extracted from Confidential or Highly Confidential/AEO documents was not confidential, he was required to follow the Protective Order challenge process. In the absence of a challenge, Defendants rightly assumed that no adverse party in the MDL was using or disseminating information contained in its Confidential or Highly Confidential/AEO MDL documents. Allowing counsel to unilaterally decide that information contained within Confidential or Highly Confidential/AEO documents is not confidential undermines the trust parties place in protective orders and usurps this Court's authority.

### IV. Mr. Stanley seeks to blame Defendants for his violation through legally irrelevant and misleading arguments.

Mr. Stanley attempts to blame Defendants for his violation by devoting ten pages of his Response to alleged discovery disputes in non-MDL cases.[8] The only relevant fact before this Court is that Mr. Stanley admittedly used confidential MDL information to propound discovery in unrelated

---

[7] The identical discovery requests issued in *Soto* and *Jones* also reveal this information. Mr. Stanley does not explain how another attorney at his *Lord* co-counsel's firm apparently gained access to confidential MDL information to issue the requests in Jones or whether his *Lord* co-counsel further promulgated this information to the plaintiff's counsel in *Soto*.

[8] Defendants' MDL counsel are not counsel in any of the non-MDL cases at issue.

1  cases. Mr. Stanley's subjective belief about "efficiency" is not an excuse to violate the Protective

2  Order. Mr. Stanley's conduct is neither efficient nor justifiable and must be remedied.

### A. Mr. Stanley admittedly used and disclosed confidential MDL information in non-MDL cases.

Discovery disputes in non-MDL cases are entirely irrelevant to the question of whether this Court's Protective Order was violated. Mr. Stanley's focus on this is purely a distraction from his own misconduct.[9] The parties in various non-MDL cases are engaged in motion practice related to the discovery disputes referenced by Mr. Stanley.[10] The New Jersey and Texas courts are entirely capable of handling the issues before them and are best positioned to do so since they know the facts at issue[11] and the relevant discovery history.

The only facts related to non-MDL cases relevant to the Protective Order violation before this Court are: (1) Mr. Stanley admitted that he used confidential MDL information to propound discovery requests in other matters, resulting in disclosure (in the requests and their attachments) to several parties including non-MDL plaintiffs' counsel; (2) some of these cases do not have protective orders (and Mr. Stanley's co-counsel in *Lord* has thus far refused to agree to a protective order that would cover the documents Mr. Stanley requested); and (3) confidential MDL information has now been publicly filed in at least one case.

The issue before this Court is Mr. Stanley's disclosure of confidential MDL information. Confidential MDL information is now "making the rounds" among non-MDL plaintiffs' counsel who

---

[9] Another distraction is Mr. Stanley's claim that because Defendants did not challenge his use of the May 2024 Spreadsheet, the information from which he created the October 2024 Spreadsheet is not confidential under the Protective Order. Defendants' response to Mr. Stanley's May 2024 Spreadsheet was different for good reason. First, the October 2024 Spreadsheet represents a significantly more egregious violation because, unlike the May 2024 Spreadsheet, it identifies the Knowledge Base or repository where each resource is kept. As explained above, the Knowledge Base/source information is significant. Moreover, it contains over 500 more resources. Second, Defendants had no knowledge of the specific litigation from which Mr. Stanley obtained the information on his May 2024 Spreadsheet; thus, Defendants could not identify the appropriate forum in which to raise such a dispute.

[10] The plaintiffs' counsel in all non-MDL cases (that are currently known to Defendants' MDL counsel) have been informed of the Motion pending before this Court.

[11] For example, *Smith* involves an automobile accident where neither driver was using the Uber App and the EDR from the plaintiff's vehicle showed he was going double the speed limit. Defendants were sued because a passenger was making an Uber Eats delivery.

are requesting enormous amounts of confidential policy related information in cases, some of which are without protective orders. Indeed, convincing a court to order production of that information in cases without any protection may be the ultimate goal. *See* Ex. A, Gromada Dec., Ex. 5 at 15:22-16:12 (Mr. Stanley's *Lord* co-counsel argued that Defendants request protective orders "to protect their data from -- from me disclosing it to other attorneys. That's why they want, obviously, the protective order or the confidentiality").

**B. Mr. Stanley cannot unilaterally decide it is "efficient" to ignore the Protective Order.**

Mr. Stanley argues that it is "efficient" and promotes judicial economy for him to use information identified in Confidential and Highly Confidential/AEO MDL documents to propound discovery in unrelated car accident cases, citing C*ordero v. Stemilt AG Services, LLC*, 2:22-cv-00013-TOR, 2025 WL 1902292 (9th Cir. July 10, 2025) and *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). Resp. at 3, 15.

Neither case supports Mr. Stanley's argument. To begin with, counsel in those cases *asked* the court for relief rather than unilaterally violating protective orders and then asking for relief after being called to answer for their improper disclosure. *Cordero*, 2025 WL 1902292 at *1 ("Columbia now appeals in its own name to challenge a broad protective order entered by the district court"); *Foltz*, 331 F.3d at 1127 (interveners appealed denial of their request to unseal court records and modify protective order). These cases confirm the obvious - judges decide whether information subject to protective orders can be used for other purposes. Parties cannot and should not unilaterally decide such matters.

Leaving aside Mr. Stanley's failure to seek this Court's permission, neither case bears any resemblance to the facts at issue. In *Cordero*, an order required the plaintiffs' counsel to seek leave of court before using information from discovery *even if that information was not confidential under the protective order*. 2025 WL 1902292 at *2.[12] Unlike in *Cordero*, this Court did not "enter[] a broad and undifferentiated order prohibiting [counsel] from using any information and documents obtained

---

[12] The District Court in *Cordero* entered a narrower protective order at the plaintiffs' behest but, to address the defendant's "concerns about use of discovered information outside the suit at issue," ordered that "[b]efore Plaintiffs or Plaintiffs' counsel utilize discovery from this matter in other advocacy, Plaintiffs must seek leave of this Court." 2025 WL 1902292, at *2.

11

DEFENDANTS' REPLY SUPPORTING MOTION TO ENFORCE PROTECTIVE ORDER
Case No. 3:23-MD-3084-CRB

1  in discovery…without prior approval from the district court" with "no finding of good cause to support
2  this prohibition." 2025 WL 1902292 at *5. *Cordero* is plainly inapposite.

3        In *Foltz*, parties engaged in collateral litigation against the defendant intervened and requested
4  unsealing of the court record and modification of the protective order so they could access discovery
5  materials. 331 F.3d at 1128-1129. The District Court refused to modify the protective order. *Id*. at
6  1129. The Ninth Circuit remanded, finding the District Court failed to analyze whether allowing
7  collateral litigants access to discovery was appropriate before denying the request. *Id*. at 1134. Unlike
8  in *Foltz*, Mr. Stanley is not seeking to use documents produced in the MDL in other cases. Instead, he
9  is using information extracted from Confidential and Highly Confidential/AEO MDL documents to
10 propound discovery in other cases. In so doing, Mr. Stanley is demanding production of more policy
11 related resources in motor vehicle accident cases than this Court ordered produced in the MDL. That
12 is not "efficient." It is a clear violation of the Court's Protective Order for which Defendants seek this
13 Court's intervention.

## CONCLUSION

15       Plaintiffs told this Court that they were "not asking for all [of Defendants'] policies" but
16 wanted to participate in the identification of relevant policy related information. Ex. A to Motion,
17 Gromada Dec., Ex. 3 (June 11, 2024 transcript) at 25:19-24. As a result, this Court ordered Defendants
18 to provide a "taxonomy of policies" which would reveal "not only discrete policies within [the
19 Knowledge Base] system… but also how the policies are organized …[and] what the different issues
20 are that Uber has to contend with…." *Id*. at 23:8-19. The Court explained that Plaintiffs would use this
21 information to identify information they believed was relevant and should be produced. *Id*. at 25:19-
22 24. The Court understood that "there's bound to be policies that have nothing to do with -- with the
23 claims here in the case." *Id*. at 29:20-22.

24       Over their objection, but in good faith compliance with the Orders of this Court, Defendants
25 produced documents reflecting their internal resources as ordered and marked the documents
26 Confidential and Highly Confidential/AEO. Mr. Stanley used that information to create his October
27 2024 Spreadsheet. Not only did Plaintiffs request all of the resources listed on Mr. Stanley's October
28 2024 Spreadsheet in this case (Gromada Dec., Ex. 3), which this Court did *not* order (ECF 1996), but

Mr. Stanley also requested nearly all of the resources identified through this process in the *Lord* matter, and the exact same information has been requested in the *Jones* and *Soto* matters.

Mr. Stanley's conduct plainly and willfully violates the Protective Order. Moreover, it is an abuse of the process this Court ordered, which was meant to allow Plaintiffs to identify information relevant to this case. General knowledge related to these resources is one thing. But Mr. Stanley's use of extensive, specific information extracted from Confidential and Highly Confidential/AEO and sharing it with attorneys in non-MDL cases is a clear violation of the Protective Order and must be remedied.

DATED: July 29, 2025                    SHOOK, HARDY & BACON L.L.P.


By: */s/ Michael B. Shortnacy*
    MICHAEL B. SHORTNACY

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN HORN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY & BACON L.L.P.**
ALYCIA A. DEGEN
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON


*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC