Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com
Jessica Davidson (Admitted *Pro Hac Vice*)

Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**MOTION FOR ENTRY OF (1) AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE AND (2) A CASE MANAGEMENT ORDER ADDRESSING CERTAIN PLAINTIFFS WHO HAVE NOT SUBMITTED RECEIPTS**<br><br>Judge:      Hon. Charles R. Breyer<br>Date:       September 19, 2025<br>Time:       10:00 a.m.<br>Courtroom:  6 – 17th Floor |

## NOTICE OF MOTION AND MOTION FOR ENTRY
## OF TWO ORDERS RELATED TO RECEIPTS

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on September 19, 2025 at 10:00 a.m. before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, Uber) will and hereby do move for Entry Of (1) An Order To Show Cause Why Plaintiffs Who Have Submitted Non-Bona Fide Receipts Should Not Be Dismissed With Prejudice And (2) A Case Management Order Addressing Certain Plaintiffs Who Have Not Submitted Receipts.

This motion is made pursuant to Federal Rule of Civil Procedure 37(b) and seeks relief under that Rule and the Court's inherent authority. Uber seeks (1) entry of an order to show cause why the claims of those Plaintiffs listed in the Proposed Order to Show Cause who have submitted non-bona-fide receipts should not be dismissed with prejudice; and (2) entry of a case management order requiring those Plaintiffs listed in the Proposed Case Management Order who have not produced bona fide receipts to do so if they seek to proceed with their lawsuits, or provide a detailed, non-boilerplate reason why they cannot, or else face dismissal.

This motion is based on this notice, the accompanying memorandum of points and authorities, the declarations of Laura Vartain, Brett D. Harrison, Chad Dobbs, and Kristin Fournier, and their accompanying exhibits, any oral argument the Court may permit, and all pleadings and papers on file in this action and on such other matters as may be presented to the Court at or before the hearing.

A meet and confer certification is being filed herewith.

DATED: July 30, 2025                     Respectfully submitted,


                                         */s/ Laura Vartain Horn*
                                         _____

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice*) ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**

2

NOTICE OF MOTION

Case No. 3:23-md-03084-CRB (LJC)

255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorneys for Uber*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

NOTICE OF MOTION
Case No. 3:23-md-03084-CRB (LJC)

## **TABLE OF CONTENTS**

I.    SUMMARY OF ARGUMENT ................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

      A.    PTO #5 ....................................................................................................... 2

      B.    NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS...... 2

III.  ARGUMENT ....................................................................................................... 10

      A.    THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER RULE 37(B)
            TO ORDER PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE
            RECEIPTS TO SHOW CAUSE WHY THEIR CLAIMS SHOULD NOT BE
            DISMISSED WITH PREJUDICE. ........................................................... 10

      B.    THE COURT SHOULD ENTER A NEW CASE MANAGEMENT ORDER
            GOVERNING RIDE RECEIPTS .............................................................. 14

IV.   CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adriana Int'l Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir. 1990) ...................................................................................10

*Anheuser-Busch, Inc. v. Nat. Beverage*,
   69 F.3d 337 (9th Cir. 1995) .....................................................................................11

*In re Cook Med., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*,
   MDL No. 2440, 2018 WL 4698953 (S.D. W. Va. Sept. 28, 2018) ...........................15

*In re Deepwater Horizon*,
   907 F.3d 232 (5th Cir. 2018) ...................................................................................13

*Freeman v. Wyeth*,
   764 F.3d 806 (8th Cir. 2014) ...................................................................................15

*Garcia v. Berkshire Life Ins. Co. of Am.*,
   569 F.3d 1174 (10th Cir. 2009) ..........................................................................11, 13

*IV Sols., Inc. v. Off. Depot Emp. Welfare Benefit Plan*,
   No. EDCV 07-1603-VAP, 2009 U.S. Dist. LEXIS 133650 (C.D. Cal. May 13,
   2009) ...............................................................................................................11, 12, 13

*Malone v. U.S. Postal Serv.*,
   833 F.2d 128 (9th Cir. 1987) ...........................................................................11, 12, 13

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) ..........................................................................2, 11, 15

*Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*,
   727 F.2d 1470 (9th Cir. 1984) ..............................................................................1, 10

*In re Silica Prods. Liab. Litig.*,
   398 F. Supp. 2d 563 (S.D. Tex. 2005) ...............................................................12, 13

*Singh v. Hancock Nat. Res. Grp., Inc.*,
   No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893 (E.D. Cal. Feb.
   21, 2017) .............................................................................................................11, 13

*Thompson v. Hous. Auth. of City of L.A.*,
   782 F.2d 829 (9th Cir. 1986) ...................................................................................10

*United States v. W.R. Grace*,
   526 F.3d 499 (9th Cir. 2008) ...................................................................................15

*Wyle v. R.J. Reynolds Indus.*,
   709 F.2d 585 (9th Cir. 1983) ...................................................................................10

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ...................................................................................11

**Rules**

Fed. R. Civ. P. 16(f) ...................................................................................................10

Fed. R. Civ. P. 16(f)(C) .............................................................................................10

Fed. R. Civ. P. 37 .................................................................................................10, 11

Fed. R. Civ. P. 37(b)(2)(A)(v) ...................................................................................10

Fed. R. Civ. P. 37(b)(2)(C) ..........................................................................................1

Fed. R. Civ. P. 60(b) ...................................................................................................4

## I.    SUMMARY OF ARGUMENT

Nothing is more critical to the integrity of our judicial system than honesty. Unfortunately, Uber has discovered that certain Plaintiffs in this MDL proceeding have submitted non-bona-fide receipts to support their lawsuits. Other Plaintiffs have failed to provide any ride receipts in support of their claims, raising the question in some circumstances whether the ride even occurred. Accordingly, Uber respectfully moves for an order to show cause why the claims of those Plaintiffs who have submitted non-bona-fide receipts should not be dismissed. Uber also seeks entry of a case management order requiring Plaintiffs who have not produced bona fide receipts to do so if they seek to proceed with their lawsuits, or else face dismissal.

As the Ninth Circuit has recognized, dismissal of claims is warranted where a party, "[p]ursuant to a discovery order," "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses." *See Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1472, 1474 (9th Cir. 1984) (upholding dismissal under Fed. R. Civ. P. 37(b)(2)(C) where "[p]ursuant to a discovery order, [a party] produced documents" that were "falsified," including "photocopies of checks"). Here, the Plaintiffs discussed in Section II.B either: (1) generated phony receipts using websites designed for that purpose (*e.g.*, Makereceipt.com); (2) produced receipts containing evidence of alterations including glaring math errors and formatting inconsistencies; (3) provided receipts that contained alterations from an actual receipt (*e.g.*, the actual receipt shows a female driver and the receipt produced in this litigation is otherwise identical but altered to show a male driver); or (4) produced two different versions of the same receipt, both altered from the original. The Court should issue an order to show cause why these plaintiffs' claims should not be dismissed with prejudice.

In addition to the Plaintiffs in the MDL who have altered their receipts, over 300 Plaintiffs in the MDL have failed to produce any ride receipts whatsoever. Of those, this motion focuses on 90 who have either provided no reason for not submitting a receipt or have provided only a boilerplate reason. For these 90 Plaintiffs, Uber respectfully requests that the Court enter Uber's proposed case management order, requiring that Plaintiffs either (1) produce a receipt for the trip

1

that is the basis for their allegations (and verify under penalty of perjury that the receipt is authentic and they took the trip covered by the receipt); (2) provide a detailed, non-boilerplate reason why no receipt is available and the reasonable search efforts taken to identify such receipt (also under penalty of perjury); or (3) be dismissed with prejudice.[1] *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226, 1240 (9th Cir. 2006).

## II.    BACKGROUND

### A.    PTO #5

The Court's PTO #5 required Plaintiffs to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident[.]" PTO #5, ECF 175, ¶ 4; *see also* PTO #10, ECF 348, ¶ 2.

### B.    NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS

At least 21 Plaintiffs listed in this Section II.B (and Exhibit 1 of the proposed order to show cause) have violated the Court's Order by submitting receipts that are not bona fide. There are likely to be additional such Plaintiffs, including but not limited to Plaintiffs who purchased the "Pro" or "Enterprise" membership from Makereceipt.com (discussed below), which makes receipt alteration more difficult to detect. This motion addresses only certain Plaintiffs whose alterations Uber has been able to identify through its manual, line-by-line review process thus far.

#### 1.    Fake Receipts Generated Through Third-Party Websites

Makereceipt.com is a website that assists users in creating phony receipts. Although it advertises itself as "[t]rusted by thousands of people in 84 countries," Makereceipt.com used fictitious names and addresses in its California Secretary of State filings. Vartain Dec. ¶2.[2]

With just a few basic inputs, Makereceipt.com can generate receipts that otherwise appear to have been generated by Uber (or other companies). Harrison Decl. at 3. The website offers users different levels of membership, including "Standard," "Pro," and "Enterprise" plans:

---

[1] Although not addressed in this Motion, Uber does not concede that the reasons for not providing a receipt offered by all of the remaining Plaintiffs are valid.

[2] The company that owns the Makereceipt.com website (Express Digital Services LLC) no longer resides at its registered address - 340 S. Lemon Ave., Ste. 1544, Walnut, CA 91789-2706. Vartain Decl., Par. 2. The registered agent and only officer listed—Justin Taster—is not a real person. *Id.*

| Standard | PRO | Enterprise |
|---|---|---|
| Limited Receipt Styles | Most Popular Plan | PRO + API Access |
| 20% OFF DISCOUNT | 20% OFF DISCOUNT | 20% OFF DISCOUNT |
| $7.99 ~~$9.99~~ / Month | $12.79 ~~$15.99~~ / Month | $39.99 ~~$49.99~~ / Month |
| or SAVE 38% annual | or SAVE 38% annual | or SAVE 40% annual |
| ● Make Custom Receipts | ● Make Custom Receipts | ● All PRO Plan Features |
| ● Basic Receipt Styles | ● ALL Receipt Styles (60+) | ● Quickbooks Integration |
| ● Custom Fonts | ● Custom Fonts | ● API Access for Batch Receipts |
| ● Mobile App Access | ● Mobile App Access | ● Mobile App Access |
| Choose Plan | Choose Plan | Choose Plan |

Makereceipt.com's Plans available at https://makereceipt.com/signup-now.php

The FAQ section in the website states: "[Q:] Help! I am a member and still see watermarks on my receipt. [A:] Many of our receipts are for PRO or Enterprise members only. You will see a watermark stating 'For Pro or Enterprise Members Only' on these receipts. . . . Standard members need to upgrade their account from the ACCOUNT page to access these PRO-level receipts." In other words, users who buy the lower-cost Standard Plan get receipts with watermarks, and users who buy Pro and Enterprise Plans get receipts without watermarks. Harrison Decl. at 3.

The receipts below, submitted by Plaintiffs with MDL ID 2812 and MDL ID 1914, include watermarks stating "FOR PRO OR ENTERPRISE MEMBERS ONLY," indicating that the receipts were generated on Makereceipt.com using the Standard Plan. *Id.* at 12–13, 30–31.

**Ex. 1-A (MDL ID 2812)[3]**



**Ex. 2-A (MDL ID 1914)**



---

[3] The 22 receipt exhibits are attached to the Vartain Declaration.

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

As discussed in the attached declaration of Brett Harrison, a forensic expert at FTI, these receipts, like others listed in this Motion, also contain other indicators that they have been altered, including significant variations from Uber's standard receipt formats. *Id.*[4]

Because Pro and Enterprise Memberships permit users to generate receipts without the watermark (*id.* at 3), there may well be additional receipts created by such members of Makereceipt.com (or similar websites) that Uber has not yet been able to identify. For example, the first receipt discussed in the section immediately below does not contain a Makereceipt.com watermark but does contain a telltale sign that it was generated using Makereceipt.com.

### 2.    Receipts With Math Errors And Other Internal Inconsistencies

Other Plaintiffs have produced receipts with math errors, internal inconsistencies, and errors in the way that times, addresses, and payments are displayed. For example, some of Plaintiffs' receipts, like the one pictured below, miscalculate the total ride time. The ride in the receipt below, which does not contain a watermark, is shown as lasting 23 hours and 45 minutes, while the ride occurred from 11:46 p.m. until 12:01 a.m. *Id.* at 4. This miscalculation results from an error using Makereceipt.com. FTI has confirmed, by purchasing a Makereceipt.com account, that users who input a ride-start time shortly before midnight and a ride-end time shortly after midnight generate a ride receipt showing a ride time close to 24 hours. *Id.*

**Ex. 3 (MDL ID 1194)**



---

[4] MDL 1914 was previously dismissed without prejudice on June 2, 2025 due to failure by the plaintiff to file a notice indicating whether they intended to pursue their action following the withdrawal of their counsel, but given the seriousness of the conduct at issue the dismissal should be converted to with-prejudice pursuant to Federal Rule of Civil Procedure 60(b).

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

The above receipt also contains other indicators it was altered. For example, it does not capitalize street names in the pick-up and drop-off addresses, does not use commas to separate the street name from the city, does not have a space between the city and state, and includes a period after the state abbreviation—all of which is inconsistent with Uber's formatting. *Id.* at 4.

Other Plaintiffs have produced receipts with math errors. In the below examples, the line-item charges add up to different totals than what is reflected on the receipts. *Id.* at 5-7, 9-10, 19. Below, the numbers on the receipt add up to $7.03, but "Total" is listed as $7.12.

**Ex. 4 (MDL ID 2918)**



MDL ID 3425's receipt's numbers add up to $14.49, but the listed "Total" is $14.99.

**Ex. 5 (MDL ID 3425)**



MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

Below, the numbers add up to $37.15, but the listed "Total" is $36.79.

**Ex. 7 (MDL ID 3038)**



Bona fide Uber receipts also do not reflect "surcharges" and "benefits" for a given state unless a ride occurs in that state. Dobbs Decl. ¶ 3. But certain Plaintiffs, including MDL ID 2723, produced receipts erroneously showing fees that are charged in certain states on receipts for trips allegedly completed in a different state, as shown in Appendix A.6.[5] App.A.6; Ex. 6.

Plaintiffs have also produced receipts with timestamp errors, including receipts showing purported payments made months before the alleged ride. Regardless of when the ride was requested, the payment timestamp on bona fide receipts is published after the trip is completed. An example in Appendix A (A.5), for MDL ID 3425, shows a payment timestamp an *entire year* before the trip-start timestamp. Harrison Decl. at 6; App.A.5; Ex.5.

The same payment timing issue occurs in receipts submitted by MDL ID 3286 (*i.e.,* payment time of 9:20PM which was 14 minutes prior to the 9:34PM pickup and 30 minutes prior to the 9:50PM drop-off), MDL ID 2734 (*i.e.,* payment time of 3:31PM which was 1 hour and 11 minutes prior to the pickup and 1 hour and 28 minutes prior to the 4:59PM drop-off), MDL ID 2918 (*i.e.,* payment time of 12:11PM which was 17 minutes prior to the 12:28PM pickup and 24 minutes prior to the 12:35PM drop-off), and MDL ID 2959 (*i.e.,* payment time of 6:54PM which was 1 hour and 33 minutes prior to the 7:47PM drop-off). Harrison Decl. at 5-6, 10–11, 14–15, 18–19; *see also* Exs. 4, 9-B, 10, 14.

---

[5] Appendix A attached to this brief contains screenshots from various receipt exhibits. The complete exhibits are attached to the Vartain Declaration.

MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

### 3.    Receipts Inconsistent with Uber's Formatting

Other receipts submitted by Plaintiffs are inconsistent with the standard formatting used in Uber's system. For example, in addition to having a "FOR PRO OR ENTERPRISE MEMBERS ONLY" stamp indicating that Makereceipt.com was used, the receipt submitted by MDL ID 2812 (App.A.1) is missing the street indicators and commas included in Uber's receipts. Harrison Dec. 12-13; Ex. 1.  The receipt submitted by MDL ID 3422 (App.A.13) is also missing punctuation. Harrison Decl. 17-18; Ex. 13. Appendix A (App.A.1) also includes an example receipt showing what the address on a bona fide Uber receipt looks like.

Other Plaintiffs have submitted receipts that reference "cash" payments, even though at the time of the alleged incident, cash payment options were not available via the Uber app. An example of a receipt submitted by Plaintiffs with a reference to "cash" (in an area where cash was not accepted by Uber at the relevant time) is shown at Appendix A.2. *See also* Dobbs Decl., ¶ 8; Ex. Harrison Decl. at 31; Ex. 2.

Another Plaintiff, MDL ID 2350, submitted a receipt where the "X" in "UberX" was not capitalized. A bona fide Uber receipt with the correct capitalization of "UberX" is shown in the Appendix 11.B. Harrison Dec. at 15; Ex. 11.B. Moreover, the receipt submitted by MDL ID 2350 uses forward slashes between the timestamps and addresses, rather than vertical lines. It also does not include "AM" or "PM," does not capitalize the street name in the drop-off address, and does not include commas in either address - all inconsistent with Uber's formatting. Harrison Decl. 15.

Another inconsistency exists where the line-item charges are not uniformly right-justified in accordance with Uber's standard formatting. The MDL ID 3078 receipt included at Appendix A.12 shows the wrong justification, while the below Uber receipt in Appendix A shows correct justification. Harrison Decl. at 16-17. The MDL ID 3078 receipt also includes a line-item charge with a leading zero ("$02.60"), which is inconsistent with Uber's formatting. *Id.*; *see also* Ex. 12

Other Plaintiffs produced receipts that contain extraneous "0s" in the timestamps and dates. Receipts incorrectly formatted with these extraneous "0s," as well as Uber receipts showing standard formatting without any extraneous "0s" are shown in Appendix A.14.  For example, MDL

ID 2959's receipt (App.A.14) shows a start time of "7:018 pm." The receipt submitted by Plaintiff with MDL ID 2959 also does not include commas between the street name and city or the city and state in the pick-up address. Harrison Decl. at 18–19; App.A.14; Ex. 14.

The receipt submitted by MDL 3198 (App.A.15) contains a reference to "0 hour," but bona fide Uber receipts do not "0 hour." Harrison Decl. at 20-21; App'x A.15, Ex. 15. And the receipt submitted by MDL 1194 does not state the rider's name as a bona fide Uber receipt would; it only says, "Here's your updated ride receipt." Harrison Decl. at 15; AppA.3; Ex. 3.

### 4. Receipts with Stray Marks

Other receipts were produced with stray marks, indicating alteration. One example of such a stray mark is the gray circle pictured in the middle of the receipt for MDL 3047 shown in Appendix A.21-B. Harrison Decl. at 32-33; App.A.21-B; Ex. 21-B.

### 5. Two Different Receipts Produced in the MDL by One Plaintiff.

The receipts MDL ID 2103 and 2277 were both submitted by the same Plaintiff. The name of the rider, time of the trip, origin and destination addresses and distance between them (*see* App.A.16-B, 16-C), and payment date are identical between the two versions. *Id.* at 21-23. But the date of the ride and name of the driver are different. The Plaintiff who submitted these receipts dismissed (without prejudice) the claim associated with MDL 2277, but kept the claim associated with MDL 2103. *See* App.A.16-B, 16-C; Exs. 16-B, 16-C.

### 6. Two Plaintiffs Submitting Different Versions of the Same Receipt.

In another example, two Plaintiffs, MDL ID 3510 and 3521, represented by the same law firm submitted different versions of the same original receipt (App.A.17-B, 17-C). The two produced receipts have the same request time, start/end times, locations, fare, and driver name. However, the receipts have different rider names and PayPal info. In one part of the MDL 3521 receipt, the trip date is "July 19, 2021," although another part of the receipt inexplicably lists a different date "July 7" for the same ride. Harrison Decl. 23-26; Ex. 17-B, 17-C.

1    Uber has also identified the original authentic receipt (which has not been produced by any

2    Plaintiff) from which both of these two above receipts were adapted. Vartain Decl. 23.

3    **7.    The Alteration of Actual Receipts, Including to Change Female Driver**
     **Names to Male Driver Names.**
4

5    On the below left is the original receipt of an actual ride that occurred on August 9, 2024,

6    with a female driver name. On the below right is the version of the receipt produced in the

7    litigation, which was altered to change the name from a female drive ▮▮▮▮ to a male driver ▮▮▮▮.

8    All other details in the receipt remained the same. Harrison Decl. at 28–29.

9    **Original:**                            **Ex. 19-B (MDL ID 3303)**




18    Another example submitted by Plaintiff with MDL ID 3048 (at App.A.18-B) is from an

19    actual ride on August 9, 2024. *Id.* at 27. The version of the receipt produced in the litigation was

20    altered, changing the name from a female driver ▮▮▮▮▮ to a male driver ▮▮▮▮ and changing

21    the date of the ride. All other details in the receipt remained the same. *Id.*; App.A.18-B; Ex. 18-B.

22    Yet another example, MDL ID 3047, is from an actual ride (App.A.21-A) that occurred on March

23    29, 2024.  Harrison Decl. 32-33. The version of the receipt produced in the litigation (App.A.21-

24

25

26

27

28
MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

B) was altered, such that the name of the rider is different (changing the name from █████ to

█████), but all other details are identical. *Id.*; *see also* Ex. 21A, 21B.

In another example, MDL ID 312, an actual receipt (App.A.20-A) with another female

driver █████ was changed to name a male driver █████ (App.A.20-B). Once again, all

other details in the receipt remained the same. Harrison Decl. 31-32; *see also* Exhibit 20A, 20B.

## III.    ARGUMENT

### A.    THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER RULE 37(B) TO ORDER PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS TO SHOW CAUSE WHY THEIR CLAIMS SHOULD NOT BE DISMISSED WITH PREJUDICE.

At least the 21 Plaintiffs listed in Section II.B have not complied with this Court's order to

provide "a bona fide ride receipt from an Uber trip connected to the alleged incident[.]" PTO #5,

ECF 175, ¶ 4; PTO #10, ECF 348, ¶ 2. The Court should order these Plaintiffs to show cause why

their claims should not be dismissed with prejudice.

Federal Rule of Civil Procedure 16(f) provides that "the [C]ourt may issue any just orders"

when a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(C). Such

"just orders" may include, for example, "dismissing the action[.]" Fed. R. Civ. P. 37(b)(2)(A)(v);

*Wyle v. R.J. Reynolds Indus.*, 709 F.2d 585, 592 (9th Cir. 1983) ("By its terms, Rule 37 authorizes

the sanction of dismissal[.]"). The production of "falsified" discovery in response to a "discovery

order" is grounds for dismissal under Rule 37. *Pro. Seminar*, 727 F.2d at 1472-73 (affirming

default judgment against defendant that "did not assert that the documents were genuine.").

Courts may also impose sanctions as part of their "inherent power to control their dockets,"

including their "inherent power to dismiss an action when a party has willfully deceived the

court[.]"[6] *Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986); *Wyle*, 709

F.2d at 589. "Where a party has engaged deliberately in deceptive practices that undermine the

---

[6] "[D]ismissal sanctions under Rule 37 and a court's inherent powers are similar." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990). The Ninth Circuit therefore "use[s] cases involving dismissal under Rule 37 and inherent powers interchangeably." *Id.*

integrity of judicial proceedings"—such as "fabricat[ing]" evidence during discovery—"[i]t is well settled that dismissal is warranted" under the Court's inherent authority. *IV Sols., Inc. v. Off. Depot Emp. Welfare Benefit Plan*, No. EDCV 07-1603-VAP (JWJx), 2009 U.S. Dist. LEXIS 133650, at *2, *14 (C.D. Cal. May 13, 2009) (dismissing action where plaintiff "fabricated an invoice" during discovery) (citing *Anheuser-Busch, Inc. v. Nat. Beverage*, 69 F.3d 337, 348 (9th Cir. 1995)).[7]

Regardless of whether a district court is acting pursuant to Rule 37 or its inherent authority, the Ninth Circuit has held that "[a] district court must weigh five factors in determining whether to dismiss a case for failure to comply with a court order: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (citation and internal quotations omitted). Each of the *Malone* factors support dismissal here.

***Public interest and the Court's docket***. The first two factors—"the public's interest in expeditious resolution of litigation" and "the court's need to manage its docket"—both "strongly support the court's dismissal" of the claims of Plaintiffs who deliberately fail to comply with court orders or engage in fraudulent discovery. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226, 1240 (9th Cir. 2006). "[T]he public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). "Sound management of the court's docket also counsels in favor of sanctions as a deterrent to others, particularly in the context of an MDL proceeding where there are thousands of plaintiffs and tag-along cases are continually being added." *Id.* at 1234.

---

[7] *See also, e.g.*, *Singh v. Hancock Nat. Res. Grp., Inc.*, No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893, at *24 (E.D. Cal. Feb. 21, 2017) (plaintiffs "falsified documents to respond to discovery requests," which "demonstrate bad faith and . . . willful abuse of the judicial process and support the issuance of terminating sanctions."); *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1176, 1179 (10th Cir. 2009) (affirming dismissal where plaintiff "fabricated a number of discovery documents in an effort to win her case.").

Deterrence is especially important here. There are now more than 2,455 Plaintiffs in this proceeding, resulting in part from aggressive online advertising from plaintiffs' counsel, such as the following ads offering a "Free Compensation Check!" or "**Significant Compensation**":

 

At the same time, Makereceipt.com and even Reddit users have provided suggestions on creating Uber receipts, advertised as "UnethicalLifeProTips." https://www.reddit.com/r/UnethicalLifeProTips/comments/1f0zvt2/ulpt_need_someone_to_creat e_an_uber_receipt/ (providing a link to Makereceipt.com). Prospective plaintiffs need to understand there is a consequence for alteration of evidence, and that doing so will not result in monetary compensation.

***Prejudice***. Courts "examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131. Here, Plaintiffs' fabrication of receipts means that Uber has "been forced to defend this case from the outset – despite its basis in fraud," which is the paradigmatic form of prejudice. *See IV Sols.*, 2009 U.S. Dist. LEXIS 133650, at *20; *see also In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636 (S.D. Tex. 2005) (filing claims based on false diagnoses forced defendants to "pay significant costs litigating meritless claims."). This misconduct also calls into question the "veracity" of all of these Plaintiffs' other discovery responses, which will require Uber to "attempt

12

independent corroboration of each submission, at substantial expense or time and money, or to accept the real possibility that those discovery documents . . . are inaccurate." *Garcia*, 569 F.3d at 1180 ("submission of falsified evidence substantially prejudices an opposing party"). Moreover, allowing these claims to proceed would also prejudice the rights of claimants who have complied with their discovery obligations and undermine their "full and meaningful access to the courts." *In re Silica*, 398 F. Supp. 2d at 636; *see also In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018) (such conduct "hamper[s] the resolution of meritorious claims by real plaintiffs.").

   ***Public policy***. Where Plaintiffs have "purposefully and defiantly violated a court order"— in this case, by submitting non-bona-fide receipts—"it is unnecessary … to discuss why alternatives to dismissal are infeasible." *Malone*, 833 F.2d at 132. Nor is any further warning to Plaintiffs necessary. There is no concern that the receipts at issue were somehow generated in good faith by unsophisticated people. For example, in the case of receipts generated from Makereceipt.com, it takes a level of sophistication and consciousness of wrong-doing to know that the internet provides the ability to falsify receipts and to go to that website for such a purpose. Dismissal is thus very strongly in the public interest.

   ***Availability of lesser sanctions***. "It is difficult to conceive an act of misconduct graver than the outright fabrication of evidence that Plaintiffs here undertook[.]" *IV Sols.*, 2009 U.S. Dist. LEXIS 133650, at *23. Such actions "demonstrate bad faith and Plaintiffs' willful abuse of the judicial process and support the issuance of terminating sanctions." *Singh*, 2017 U.S. Dist. LEXIS 24893, at *24. Lesser sanctions would not sufficiently deter other current (or potential) Plaintiffs from engaging in similar conduct.

   For these reasons, the Court should enter Uber's proposed order attached hereto, requiring the 21 Plaintiffs listed in Section II.B (and Exhibit 1 to the proposed show cause order) to show cause why their claims should not be dismissed with prejudice.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.    THE COURT SHOULD ENTER A NEW CASE MANAGEMENT ORDER GOVERNING RIDE RECEIPTS

Separate and apart from the Plaintiffs in Section II.B who have submitted non-bona-fide receipts, over 300 Plaintiffs in this MDL have failed to submit a receipt at all. PTO #5 provides that "[f]or those cases where a receipt is not readily available, Plaintiffs' counsel must disclose to Defendants . . . why the receipt is unavailable." PTO #5, ECF 175, ¶ 4. But 92 Plaintiffs have either provided no reason for not submitting a receipt or have provided boilerplate reasons.

For example, 21 Plaintiffs represented by Levin Simes have submitted an identical, boilerplate reason for not providing a receipt: "Plaintiff's counsel is working with Plaintiff to obtain the ride receipt." For some Plaintiffs, that boilerplate justification was provided in February 2024, meaning Plaintiffs have been "working" with "Plaintiff's counsel" to provide a receipt for 18 months. These Plaintiffs should be required to provide a receipt promptly, to provide a detailed reason why they cannot, or be dismissed with prejudice.[8]

At this stage, Uber does not ask this Court to apply the new case management order to all the Plaintiffs who have not provided a receipt. For example, Plaintiff ID 1331 (who is not the subject of this Motion) alleges that "Friend requested Uber for her." Putting aside for now the issue of whether Plaintiffs such as this one could obtain receipts from their friends, Uber does not ask that the Case Management Order apply at this stage to Plaintiffs who allege that others ordered their Uber, or who have provided reasons other than the boilerplate, non-detailed reasons those set forth in Exhibit 25 to the Vartain Declaration. Rather, Uber only asks that the order apply to the 90 Plaintiffs listed Uber's Proposed Case Management Order who have provided only boilerplate reasons—or none at all—for not providing a receipt.

---

[8] Another 42 Plaintiffs represented by Williams Hart & Boundas, LLP all stated: "Plaintiff is unable to obtain receipt for the ride at issue." Other Plaintiffs' firms provided reasons that are lengthier, but that are still classic boilerplate. For example, no fewer than 18 Plaintiffs represented by Nachawati Law Group submitted exactly the same boilerplate reason for not providing a receipt: "Despite a diligent search of Plaintiff's email address that she believes was associated with her Uber account at the time of the subject ride, Plaintiff cannot locate a ride receipt and does not recall whether she ever received a receipt of the ride. Plaintiff has been unable to access her account and locate the receipt despite a diligent effort to do so. Additionally, while Plaintiff believes the below phone number and email address were associated with this ride and account, it is **possible** that an older or now expired number or email address may have instead been associated with this ride or account, any details of which she does not recall at this time." (__) (emphasis added).

The Court has authority to enter such an order. "[A]ll federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders." *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (internal citation omitted). This authority is especially important in the MDL context given the "enormous" task of "mov[ing] thousands of cases toward resolution on the merits while at the same time respecting their individuality." *In re PPA*, 460 F.3d at 1231. Pretrial orders—and the parties' compliance with those orders and their deadlines—"are the engine that drives disposition on the merits." *Id.* at 1232. "A [court's] 'willingness to resort to sanctions' in the event of noncompliance" with pretrial orders "can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation." *In re Cook Med., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2440, 2018 WL 4698953, at *2 (S.D. W. Va. Sept. 28, 2018) (citing *Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.")).

The Ninth Circuit has approved case management orders in the context of MDL proceedings that "implement[] progressively more severe penalties and issu[e] warnings" and, ultimately, dismiss non-complying parties. *In re PPA*, 460 F.3d at 1240. The Court should thus enter Uber's proposed case management order, attached hereto, which requires the Plaintiffs listed therein to either (1) produce a receipt, submitted under penalty of perjury, or (2) provide a detailed reason why no receipt is available (including information about the most recent Uber receipts available in the Plaintiff's email and Uber app), also under penalty of perjury. To the extent Plaintiffs fail to comply with this order, their claims should be dismissed with prejudice.

## IV.    CONCLUSION

Uber respectfully requests that the Court (1) enter the order attached hereto requiring the Plaintiffs listed therein to show cause why their claims should not be dismissed for providing a non-bona-fide receipt; and (2) enter the case management order attached hereto addressing certain Plaintiffs who have not produced receipts.

DATED: July 30, 2025

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice*) ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorneys for Uber*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC