UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean c. Uber Technologies, Inc., et al.*, 3:23-cv-06708-CRB | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING SANCTIONS FOR MISCONDUCT BY PLAINTIFFS AND COUNSEL**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

The Parties respectfully submit this joint letter regarding disputed issues related to Plaintiffs' failure to preserve and produce documents and instructions by Plaintiffs' counsel to withhold or spoliate evidence.

DATED:   August 8, 2025

By: /s/ *Roopal P. Luhana*
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

  *Co-Lead Counsel for Plaintiffs*

By: */s/  Laura Vartain Horn*
    LAURA VARTAIN HORN
    **KIRKLAND & ELLIS LLP**
    laura.vartain@kirkland.com
    ALLISON M. BROWN (*pro hac vice*)
    Alli.brown@kirkland.com
    JESSICA DAVIDSON (*pro hac vice*)
    Jessica.davidson@kirkland.com

    *Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

## I.    Defendants' Position:

### A.    Background

Uber writes to apprise the Court of serious, repeated, and ongoing discovery misconduct by Wave 1 Bellwether plaintiffs and counsel. Such misconduct includes ***purposeful suppression of evidence by the Peiffer Wolf*** Carr Kane Conway & Wise LLP ("Peiffer Wolf") law firm. In fact, an email from Peiffer Wolf's *own client* confirms that Peiffer Wolf, through their attorney Sara Craig, instructed witnesses to: ignore Uber's document requests; terminate in-progress collection efforts; and hide from counsel documents that had been collected already. That email, which is reproduced in full below and attached here as Exhibit 1, exposed Craig's misconduct and provided clear proof that Plaintiff's productions in the A.R. cases are intentionally deficient.

> Hi Sara,
>
> I wanted to follow up regarding my recent deposition in the A.R. v. Uber Technologies matter. After some reflection, I'm feeling increasingly uncomfortable with how my involvement in the case was handled.
>
> To be candid, I don't feel I was fully informed about the implications of participating, and I now have serious concerns about the way my deposition was managed. Specifically, yesterday I was asked not to provide / search for certain documents (the text messages I showed you regarding the text Alice sent to me regarding the litigation) that were directly requested in the deposition notice, which in hindsight feels inappropriate and misleading. That doesn't sit right with me.
>
> Although I've already provided testimony, I no longer wish to be involved in this matter or to have my deposition used in any capacity. Please let me know what steps can be taken to formally communicate that objection or limit further use of my statements.
>
> RS_000030

As detailed below, Peiffer Wolf lawyers similarly obstructed discovery in additional Wave 1 Bellwethers, including the Dean case. As a result of this pervasive misconduct, which is described in more detail below, Uber is seeking a variety of relief including sanctions against Peiffer Wolf and the immediate production of all documents that have been improperly withheld.[1]

**A.R. Case.** Ms. Craig represented A.R. Plaintiff's friend and non-party witness, referred to here as I.E., at her July 8, 2025 deposition. Shortly after her deposition concluded, I.E. contacted her and Plaintiff's mutual friend, R.S., whose deposition was scheduled for July 29. I.E confided that she was very uncomfortable with Craig's conduct around I.E.'s deposition. I.E. also shared the above draft note detailing Craig's misconduct, including Craig's instruction ***"not to provide / search for certain documents… that were directly requested in the deposition notice" served by Uber***, such as text messages from Plaintiff about the litigation, at least some of which I.E. showed to Craig before Craig gave her obstructionist command to suppress evidence. *See* Ex. 1 (emphasis added); *see also* Ex. 2 (R.S. Dep. 119-123) at 121:4-122:12 (discussing the improper instruction). R.S., who produced the draft note, testified that she discussed I.E.'s concerns about Craig's conduct at length during numerous telephone and video calls with I.E. *Id.* at 119:3-123:2. R.S. also testified that it is her understanding that I.E. began to search for responsive documents but Craig made no effort to review or produce such documents. *See id.* at 121:14-122:4 ("… my understanding was that [I.E.] had shared her screen with Sara, and… was told just to not share her screen, and then I don't think it was discussed further"); *id.* at 122:5-12 (similar). In fact, Plaintiff did not produce any of the text messages that I.E. ostensibly discussed with Craig (nor were they produced by I.E.). Craig's instructions violate basic discovery rules, as well as the Rules of Professional Conduct.[2]

---

[1]   Tellingly, Plaintiffs made a production at the eleventh hour hoping to moot this issue. The production did not contain all of the wrongfully withheld material and does not adequately remedy Uber's prejudice.

[2]   *See, e.g.,* ABA Model Rules of Professional Conduct ("MPC"), Rule 3.4 ("A lawyer shall not: (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value" nor "assist another" with the same; *see also* MPC, Rule 8.4.

In conferrals among counsel, Peiffer Wolf argued that I.E's withheld documents merely duplicate Plaintiff's. This argument fails for numerous levels. *First*, neither I.E. nor Plaintiff produced the relevant messages that I.E. discussed with Craig. *Second*, Peiffer Wolf lawyers cannot know that I.E's collection duplicates Plaintiff's because they specifically instructed I.E. not to share or even complete her collection. As Plaintiff's counsel admits below, it is not for "counsel who have not seen [a] document" to make relevance determinations about that document. And, relevance is not the standard for the production of documents. Besides, R.S. production includes text messages shared only with I.E., and not Plaintiff, proving that collecting from Plaintiff alone is not sufficient. *Third*, potential duplication of another party's production provides no basis to withhold responsive documents. *See Simon & Simon, PC v. Align Tech. Inc.*, 2022 WL 15523532, at *4 (N.D. Cal. Oct. 27, 2022) (collecting cases). Also, given the pattern of Peiffer Wolf clients failing to preserve ESI (*see infra*) one cannot reasonably assume A.R.'s production is complete.

**Dean case.** In the Jaylynn Dean case, Peiffer Wolf again represented numerous non-party witnesses acquainted with Plaintiff. Here, four friends of Plaintiff Dean—each represented by Peiffer Wolf—failed to preserve communications with Plaintiff concerning the alleged incident. *See, e.g.*, Ex. 3 (Dep. of E.G. 78-81) at 78:7-18; Ex. 4 (Dep. of B.F. 14-17) at 16:10-17:12; Ex. 5 (Dep. of J.P. 170-173) at 171:11-18; Ex. 6 (Dep. of D.S. 42-45, 70-73) at 44:7-10; 72:24-73:1. Moreover, Plaintiff Dean admitted at her deposition that she, too, failed to preserve responsive and relevant communications. For example, Plaintiff testified that a substantial amount of her smartphone's storage, including Snapchat messages (her primary communication medium), was deleted. Plaintiff was aware that she was under an obligation to preserve documents after bringing her lawsuit, yet failed to take reasonable steps to preserve her messages. Instead, Plaintiff retained settings that ensured that her messages would be erased systematically. *See* Ex. 7 (Dep. of J. Dean 277-280) at 280:10-14 ("Q. Do you know if… any of the accounts automatically delete messages after a period of time? A. Snapchat…"); *cf.* Chats With Friends, SNAPCHAT (last accessed July 28, 2025)[3] (A user "can set Chats to delete automatically right after viewing them, 7 days after viewing them, or never[.]"). Plaintiff also "traded [her phone] in" (twice) after the alleged incident without "tak[ing] any efforts to make sure and preserve information that was on [her] old phones." *See id.* at 277:17-278:9; 280:25-281:18. Plaintiff's assertions that she produced *some* documents are of no moment. Witnesses under preservation obligations admittedly deleted relevant documents. These pervasive issues with the preservation and production of evidence spanning multiple witnesses across cases are clear indications of systemic discovery abuse by Plaintiffs and counsel.

### B. Legal Standard

Parties must comply with the discovery obligations set forth in the Federal Rules of Civil Procedure (*see, e.g.*, *Brooks v. Shaw*, 2022 WL 22211535, at *1 (C.D. Cal. Aug. 5, 2022), including the "obligation to preserve [evidence] … as soon as the potential claim is identified" (*Gay v. Parsons*, 2024 U.S. Dist. LEXIS 167574, at *8 (N.D. Cal. Sep. 17, 2024)). And, in fact, under PTO2, all parties and counsel are under an obligation to preserve all evidence that "may be relevant to this litigation." ECF No. 65. Whenever parties or counsel shirk their discovery obligations, "federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases,'" including "the ability to fashion an appropriate sanction." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 at 107 (2017). The Federal Rules also provide for an array of sanctions. *See* Fed. R. Civ. P. 26, 37. Indeed, "*Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.*" *Wiideman v. Bayer*, 1993 U.S. App. LEXIS 16158, at *4 (9th Cir. June 18, 2993) (quoting Fed. R. Civ. P. 26(g), advisory committee note). Additionally, "[i]f full compliance with Rule 26(a) is not made, Rule 37(c)(1) mandates some sanction, the degree and severity of which are within the discretion of the trial judge." *Wiersema v. Target Corp.*, 2025 U.S. Dist. LEXIS 119090, at *9-10 (C.D. Cal. May 27, 2025). Also, "Rule 37(e) applies when a party 'failed to take reasonable steps to preserve' ESI" (*id.*), and "[a] court may impose harsher sanctions if the party that failed to preserve the ESI did so 'with the intent to deprive another party of the

---

[3] Available at https://tinyurl.com/43f2mdhf.

information's use in the litigation'" (*id.*). "The party facing sanctions bears the burden of proving that its failure to disclose was substantially justified or is harmless." *Id.* (citation omitted).[4]

### C. Discussion

Counsel's instructions to I.E. flout numerous discovery rules and run afoul of MPC, Rule 3.4, which prohibits, among other things, the "obstruct[ion] [of] another party's access to evidence[,]" "assist[ing] a witness to testify falsely[,]"and "fail[ing] to make reasonably diligent efforts to comply with a legally proper discovery request." The record from the Dean case likewise reflects a consistent pattern of ignoring production obligations and failing to preserve discoverable material. At a minimum, Plaintiffs' productions are deficient, as they certainly omit Plaintiffs' communications about the litigation and underlying allegations. Worse, in some cases such communications certainly have been destroyed by Plaintiffs and other Peiffer Wolf clients. As these violations are ongoing, so too, is Uber's prejudice. In light of these abuses of the discovery process, Defendants respectfully request that the Court order Plaintiffs to: (i) immediately produce all documents discussed above that have been wrongfully withheld; (ii) replace, wherever feasible, lost documents obtainable through third-party sources such as Snapchat; and (iii) compel further depositions of I.E. and Plaintiff A.R. Additionally, given that this motion and further depositions of I.E. and Plaintiff A.R. were hampered by Plaintiffs' and Counsel's wrongful actions, the Court should order that Plaintiffs and their Counsel bear all of Defendants' costs associated with the supplemental discovery needed to cure these discovery abuses. Such costs likely will include: preparing for and taking supplemental depositions, including additional third-party depositions; preparing and arguing the instant motion; and additional attorney time necessary to review and respond to any related disputes. Additional remedies likely will be necessary, and Uber respectfully reserves all rights to seek additional relief, including after its review of any supplemental discovery which Peiffer Wolf and its clients continue to withhold improperly.

## II.    Plaintiffs' Position:

This issue is a red herring. If Uber's objective was to obtain additional copies of already produced, irrelevant, or non-existent materials it would have agreed to Plaintiffs' offer for additional collection and production. Yet, during the parties' meet and confers, Uber declined this offer. Plaintiffs additionally are willing to provide signed declarations certifying their reasonable and proportional efforts to preserve, identify, search, collect, and produce materials and information that is relevant and responsive to Defendants' requests. All relevant, responsive information related to A.R. and Dean has been produced. There has been no misconduct. Uber's attack on a single law firm is not just a distraction from the merit of these cases, but malicious, unfounded harassment of a single attorney.

### A. Uber's Request for Sanctions is Procedurally Improper

Uber's request for sanctions is procedurally improper. A motion for sanctions must be brought on motion after notice to the opposing party. Fed. R. Civ. P. 37; N.D. Cal. Civ. L.R. 7-2, 7-8. Because Uber fails to satisfy this threshold procedural requirement its request should be denied as to both A.R. and Dean cases.

### B. Uber's Request for Sanctions Should be Denied on the Merits

<u>AR:</u> Defendants claim the failure to produce irrelevant, duplicative documents is sanctionable. Not so. In the A.R. Case, Peiffer Wolf represented six (6) non-party witnesses acquainted with Plaintiff including four (4) friends and her parents. An additional acquaintance– R.S. – was deposed and represented by her own counsel. In advance of these depositions, Plaintiff herself was deposed for 4 hours and 56 minutes and produced 1,154 pages of records, including

---

[4]   Notice was provided to Plaintiffs during a meet and confer on July 31, 2025 that Uber would be seeking sanctions for this misconduct.

over 650 pages of social media and text messages, that included all relevant and responsive communications, and more, between herself and these non-party witnesses.[5]

At best the draft e-mail included by Uber is misleading. In reality, it is a misrepresentation of privileged, irrelevant conversations between a non-party witness and Plaintiffs' counsel. The message is a draft that the author considered sending, but never actually sent to Plaintiff's counsel. It was drafted as part of discussion between two non-party friends about their emotions related to the process of being deposed. The friends are acquaintances of Plaintiff who were each being deposed for the first time ever in a matter about the sexual assault of someone they know. Subsequent testimony from the recipient of the e-mail, wholly ignored by Uber, conflicts with the content of the unsent message. *See* Dep. of R.S. 121:24-25-122:1-4 ("My understanding was that [I.E.] had shared her screen…but felt she was told just not to share her screen, and then I don't think it was discussed further."). All the purported materials to which this draft email referred have already been either 1) produced by the Plaintiff herself, or 2) deemed irrelevant by Plaintiff's counsel.

*First*, failing to produce irrelevant evidence is not sanctionable. "Rule 37(e) sanctions are available when '[ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and [the ESI] cannot be restored or replaced through additional discovery.'" *Newberry v. Cnty. Of San Bernardino*, 750 Fed. App'x 534, 537 (9th Cir. 2018But the "deletion of irrelevant evidence does not support a spoliation claim." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013). Defendants' "speculation that other deleted documents may exist that might be helpful to a party's case is also an insufficient basis for a finding of spoliation." *Id.*

Defendants point to a witness who stated she did not need to produce certain documents as definitive proof that Plaintiffs intentionally withheld evidence. But it is not for a lay witness (or opposing counsel who have not seen the document) to speculate as to its relevance. Plaintiff's counsel made the reasoned decision that the communications were not pertinent to the claims or defenses at issue in the case because they had nothing to do with Plaintiff's claims or damages.

*Second*, sanctions are not appropriate where (as here) there is no prejudice to the opposing party. *Newberry*, 750 Fed. App'x at 537 (finding sanctions not warranted where defendants were not prejudiced due to gap in production where documents at issue were insignificant). Here, there is no prejudice to Defendants because the communications at issue are duplicative of communications Plaintiff already produced. *See* Fed. R. Civ. P. 26(c)(i).

**Dean:** Defendants disingenuously cite Plaintiff Dean's and third-party witness's depositions to allege Plaintiff failed to comply with discovery obligations to preserve responsive documents. Plaintiff Dean has complied with her obligations. Plaintiff Dean produced 857 pages of social media, encompassing hundreds of posts and over a thousand private messages, and third-party witnesses produced responsive documents to Defendants' Requests. Plaintiff Dean even permitted Defendants to take deposition testimony in excess of what the Deposition Protocol permits. Defendants deposed Plaintiff Jaylynn Dean for 6 hours and 18 minutes and deposed seven (7) Plaintiff third-party witnesses for almost 17 hours, totaling over 23 hours of deposition time.

---

[5] *See also* BW-A_R-000111-113 (screenshot of conversations between Plaintiff A.R. and J.M.); BW-A_R-S.M.-000120-122 (Direct messages on social media between Plaintiff A.R., I.E., J.M., and E.M.); BW-A_R-S.M.-000273-296, BW-A_R-S.M.-000349-355, BW-A_R-S.M.-000419-428, BW-A_R-S.M.-000541-551, and BW-A_R-S.M.-000613-618 (non-responsive DMs with these third-party witnesses); and BW-A_R-000346-000361 (Additional text messages between Plaintiff A.R. and E.M.).

This far exceeds the 19-hour and 4 deposition caps for Plaintiff and third party-witnesses per the Deposition Protocol [ECF 2745-1].

As an initial matter, Rule 37 "does not apply when information is lost before a duty to preserve arises." Fed. R. Civ. P. 37, Comment to 2015 Amendment. While Uber points to Plaintiff Dean replacing her phone twice after the *incident*, her duty to preserve did not arise until she knew she had a claim against Uber. *See also* [ECF 65] (Nov. 3, 2023). While Defendants fault Plaintiff for upgrading her cell phone after the incident, Defendants didn't ask the follow up questions about when the phone was upgraded and simply assume it was done after litigation ensued. Defendants further point to Plaintiff's testimony that a substantial amount of data was "deleted" when she updated her phone. In fact, Plaintiff testified that she backed up her phone (to iCloud) when she replaced them but not all of her phone's data would have transferred over due to a lack of storage. (Pl. Dean Dep. Tr. 280:25–281:18.). To the extent data was not retained through this process, this occurred before Plaintiff's preservation obligations were triggered. In any event, Plaintiff acted reasonably in attempting to back up her phone and there is no evidence that Plaintiff intentionally deleted evidence through this process or that any evidence was deleted at all; Plaintiff's new phone simply lacked the storage space for data on prior devices and did not complete the backup to ensure materials were available locally on the phone. (*Id.*) Everything relevant and responsive that was on any phone owned by Plaintiff and backed up in iCloud storage was produced in this litigation.

Defendants argue that Plaintiff Dean ran afoul of Rule 37 because she did not modify the default retention settings for social media apps, specifically SnapChat – an app for which "delete is [the] default."[6] Defendants cannot show that Plaintiff Dean "acted with intent to deprive another party of the information's use in the litigation" as necessary under Rule 37(e). *See Meta Platforms, Inc. v. BrandTotal Ltd.*, 605F.Supp.3d 1218, 1239 (N.D. Cal. 2022). That Plaintiff Dean did not take affirmative steps to alter those settings does not amount to an intentional effort to deprive Defendants of potential evidence; at most, Plaintiff Dean "merely negligently failed to take steps to counteract the automatic deletion process" and even if she "should have recognized [her] obligation to preserve those records" "[n]egligence—even gross negligence—in failing to retain evidence is not sufficient" to warrant Rule 37 sanctions. *Id.*; *see also Pelishek v. City of Sheboygan*, 2025 WL 325782, at *2 (E.D. Wis. Jan. 29, 2025) (holding that the loss of data due to the "failure of [a party] to change its retention settings" is not evidence that the "data was consciously destroyed" and declining to impose sanctions). To the extent Dean had screenshots or records of any SnapChats that may have been deleted by default, those were produced.

---

[6] https://help.snapchat.com/hc/en-us/articles/7012334940948-When-does-Snapchat-delete-Snaps-and-Chats(last accessed Aug. 7, 2025).

**FILER ATTESTATION**

      I, Laura Vartain Horn, am the ECF user whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above have consented to this filing.

DATED: August 8, 2025

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Laura Vartain Horn*

Laura Vartain Horn

## CERTIFICATE OF SERVICE

On August 8, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Laura Vartain Horn*
Laura Vartain Horn