# KIRKLAND & ELLIS LLP

Laura Vartain Horn
To Call Writer Directly:
+1 415 439 1625
laura.vartain@kirkland.com

555 California Street
San Francisco, CA 94104
United States

+1 415 439 1400

www.kirkland.com

Facsimile:
+1 415 439 1500

August 12, 2025

**VIA CM/ECF**

Hon. Charles R. Breyer
Senior U.S. District Court Judge
Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
Courtroom 6, 17th Floor
San Francisco, CA 94102

Re: In re Uber Technologies, Inc. Passenger Sexual Assault Litigation, 23-md-03084

Dear Judge Breyer:

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively "Uber") submit this letter relating to scheduling of the Bellwether Trial Wave 1 Cases ("Wave 1 Cases").

By way of background, the Court issued Pretrial Order No. 26 identifying six cases as Wave 1 Cases on May 1, 2025. *See* ECF No. 2894 at 2. Since that date, two of the identified cases, WHB 1486 and WHB 1876,[1] were removed from Wave 1 (*see* ECF Nos. 3189, 3441) and replaced with WHB 318 and WHB 832, respectively (*see* ECF Nos. 3228, 3542). The Wave 1 Cases are now comprised of Plaintiffs B.L., A.R., LCHB 128, Jaylynn Dean, WHB 318, and WHB 832. *See* ECF No.3674 at 2. On July 25, 2025, the Court ordered the parties to submit "a letter brief re the order of cases to be tried[.]" *See* ECF No. 3575 (the "July 25 Order").

In response to the Court's July 25 Order, and in an effort to promote judicial efficiency, the parties met and conferred to determine whether any agreements could be reached as to the order of trials for the Wave 1 cases. As a result of those discussions, the parties have agreed to mutually propose that Jaylynn Dean and WHB 823 (the "Initial Cases") as the first and second

---

[1] The Court dismissed WHB 1876's complaint in full. *See* ECF No. 3441.

1

## KIRKLAND & ELLIS LLP

Hon. Charles R. Breyer
August 12, 2025
Page 2

Wave 1 Cases to proceed to trial, with Jaylynn Dean going first and WHB 823 going second.[2] With respect to the trial order for the remaining Wave 1 Cases. the parties will present their opposing views in letter briefs as requested by the July 25 Order.[3]

To that end, Uber submits the following proposed order ("Proposed Trial Order") which best represents the Plaintiffs' collective claims and therefore—as addressed more fully herein—facilitates the objectives of an MDL bellwether program:  Namely, to gauge the likely outcomes of the broader litigation, assist in valuation of the cases, and inform global settlement discussions:

| TRIAL ORDER | PLAINTIFF | PARTY'S PICK | TAXONOMY | INCIDENT STATE | LAW FIRM |
|---|---|---|---|---|---|
| Wave 1 Trial 1 | Jaylynn Dean | Plaintiff | Intercourse | AZ | Peiffer Wolf |
| Wave 1 Trial 2 | WHB 823 | Defense | Touching of a Non-Sexual Body Part | NC | Williams Hart |
| Wave 1 Trial 3 | WHB 318 | Defense | Touching of a Non-Sexual Body Part | NC | Williams Hart |
| Wave 1 Trial 4 | LCHB 128 | Plaintiff | Touching of a Sexual Body Part (Over the Clothes) | AZ | Lieff Cabraser |
| Wave 1 Trial 5 | A.R. | Plaintiff | Kissing | CA | Peiffer Wolf |
| Wave 1 Trial 6 | B.L. | Plaintiff | Intercourse | CA | Wagstaff |

---

[2]  By entering into this agreement, Uber does not make any concessions as to the adequacy of Jaylynn Dean's case as representative of the MDL Plaintiffs' collective claims nor the relative merit of it or any other case as compared to the other Wave 1 Cases.

[3]  If the United States District Court, Phoenix, can not make a courtroom available consistent with the ultimate trial schedule in the first trial matter, Uber requests that – for all the reasons set forth in this letter brief – the Court proceed to Case 2 (WHB 823) and continue the sequence of cases proposed herein.  Put more directly, there is no reason to leap either A.R. or B.L. to the front of the pack as early trial cases as neither are representative of the Wave 1 Cases or larger MDL population across any relevant data point.

KIRKLAND & ELLIS LLP

Hon. Charles R. Breyer
August 12, 2025
Page 3

I. **TRIAL SELECTIONS MUST BE REPRESENTATIVE OF PLAINTIFFS' COLLECTIVE CLAIMS**

"[T]he purposes of selecting certain plaintiffs as bellwethers is to 'highlight the strength and weaknesses of the parties' respective cases' to bring resolution to the litigation." *Wash. v. United Air Lines, Inc.*, No. 15-cv-00471-VC, 2016 U.S. Dist. LEXIS 137961, at *13 (N.D. Cal. Oct. 4, 2016) (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F. 3d 986, 995 (9th Cir. 2007). To that end, "Bellwether trial picks should be "typical of the rest of the plaintiff group such that the results of the bellwether trials represent the likely outcome of their cases as well." Alexandra D. Lahav, *Bellwether Trials*, 76 GEO. WASH. L. REV. 576, 581 (2008); *see also* MANUAL FOR COMPLEX LITIG. (FOURTH) § 22.315 (2004) ("If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass torts cases, the specific plaintiffs and their claims should be representative of the range of cases.").

To select plaintiffs who are outliers would defeat the function of bellwether trials—to provide data that would inform the parties' settlement discussions and encourage resolution. *See In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 1441804, at *9 (S.D.N.Y. Apr. 12, 2016) ("[B]ecause the primary purpose of bellwether trials is to provide data points for settlement discussions with respect to the universe of cases, the goal is to select the 'best' representatives of the universe of cases, not outliers likely to result in victory for one side or the other."); *see also Collazo v. WEN by Chaz Dean, Inc.*, 2:15-CV-01974-ODW-AGR, 2018 WL 3424957, at *4 (C.D. Cal. July 12, 2018) (use of an "outlier" case could compromise the objective of bellwether procedure, resulting in a party "refus[ing] to negotiate settlements... based on that verdict").

II. **UBER'S PROPOSED SCHEDULE PROMOTES CASES REPRESENTATIVE OF PLAINTIFFS' COLLECTIVE CLAIMS**

As part of the Plaintiff Fact Sheet process, Plaintiffs have provided data about their claims. Uber analyzed that data to ensure its Proposed Trial Order best promotes the goal of informing the Parties and the Court about representative issues and facilitating settlement discussions. As a result, following trial of the Initial Cases, Uber proposes WHB 318 (third) and LCHB 128 (fourth) as the next two trial cases, which both involve the most common taxonomies, incident states, and law firms with the largest numbers of filed cases within the remaining Wave 1 Cases. Conversely, the B.L. case is an outlier with regard to all three of those categories.

A. **Plaintiffs' Collective Taxonomies Support The Proposed Trial Order**

As this Court is well aware, the scope of this MDL is broad, encompassing any type of sexual assault or sexual misconduct alleged to have occurred over the course of more than a

# KIRKLAND & ELLIS LLP

Hon. Charles R. Breyer
August 12, 2025
Page 4

decade. As a result, the MDL includes claims ranging from inappropriate comments to alleged non-consensual penetration. The categorization applied to each claim is known as the "taxonomy," which defines the type of sexual assault or misconduct that was alleged to have occurred in a particular case. One of the key facts to consider in determining the Trial Order is thus the taxonomy alleged by the Plaintiff and how common that taxonomy is amongst the overall pool of cases within the MDL. The full range of taxonomies is laid out below.

| TAXONOMY | NO. OF CASES |
|---|---|
| Attempted Sexual Penetration (Digital/ Oral/Intercourse) | 53 |
| Digital Penetration | 64 |
| Inappropriate Sexual Comments (Flirting/Soliciting/Threats) | 137 |
| Indecent Exposure | 56 |
| Intercourse | 242 |
| Investigating | 233 |
| Kidnapping | 40 |
| Kissing | 106 |
| Masturbation | 199 |
| Oral Sex | 81 |
| Physical Assault | 15 |
| Touching of a Non-Sexual Body Part | 479 |
| Touching of a Sexual Body Part (Over the Clothes) | 543 |
| Touching of a Sexual Body Part (Direct Contact) | 232 |

The most common taxonomy among Plaintiffs across the entire MDL is "Touching of a Sexual Body Part (Over the Clothes)" followed closely by "Touching of a Non-Sexual Body Part." The two cases selected by Uber as the third and fourth trial picks—WHB 318 and LCHB 128—bring a claim under these two most prevalent taxonomies, making those cases representative of the typical claims asserted by Plaintiffs in this MDL. Indeed 21.9% of Plaintiffs assert a claim within the "Touching of a Sexual Body Part (Over the Clothes)" taxonomy (LCHB128) and 19.3% of Plaintiffs assert a claim within the "Touching of a Non-Sexual Body Part" taxonomy (WHB 813).

## KIRKLAND & ELLIS LLP

Hon. Charles R. Breyer
August 12, 2025
Page 5

On the other hand, only 9.8% of Plaintiffs (approximately half of those under the referenced "touching" taxonomies) assert a claim of "Intercourse" taxonomy, as does B.L., and only 4.3% of Plaintiffs assert a claim of "Kissing" taxonomy, as does A.R.



This disparity is only made clearer when viewing the MDL Plaintiffs' claims more broadly. For example, the *three* categories of "touching" claims, which together make up 50.6% of the total claims in the MDL, dwarf the remaining *ten* taxonomies (excluding claims still being investigated), which constitute only 40% of the MDL.



## KIRKLAND & ELLIS LLP

Hon. Charles R. Breyer
August 12, 2025
Page 6

    Widening the gap, only 27.1% of "touching" claims include allegations of direct contact with a Plaintiff's sexual body part. Conversely, 63.5% of touching claims are more adequately represented by those which do not involve direct contact with a sexual body part.



    Likewise, only 17.4% of cases involve attempted penetration of a bodily orifice, as opposed to 72.9% of cases that do not involve such an attempt.



    Accordingly, trying WHB 318 and LCHB 128—which each assert a "touching" claim with no direct contact or attempted penetration—will be more informative regarding "the strength and weaknesses of the parties' respective cases'" across all MDL claims, and therefore better facilitate

## KIRKLAND & ELLIS LLP

Hon. Charles R. Breyer
August 12, 2025
Page 7

efficient resolution of this MDL, than trying additional cases that involve direct touching of a sexual body part or penetration. *See United Air Lines, Inc.*, 2016 U.S. Dist. LEXIS 137961, at *13 (quoting *In re Hanford Nuclear*, 534 F. 3d at 995).

### B. Plaintiffs' Incident States Support The Proposed Trial Order

The cases in the Wave 1 Pool have incidents that occurred in only three states: Arizona, North Carolina, and California. Based on an evaluation of the overall pool of claims filed in the MDL, cases with venue in Arizona or North Carolina are more representative than cases where the alleged incident occurred in California.[4] In fact, only 1.5% of Plaintiffs across the MDL allege that the incident at issue occurred in the state of California, making a claim based in California, applying California law, less representative of the overall pool of cases. Conversely, the other two states at issue – Arizona and North Carolina – each have approximately double the number of claims as California.



As a result, WHB 813 (North Carolina) and LCHB 128 (Arizona) are better choices to represent the collective claims of Plaintiffs in this MDL. B.L. and A.R., on the other hand, both allege incidents in California and will not provide helpful data points to the parties regarding case values or possible settlements given that the alleged incidents (and thus the proper forum) of the cases occurred in California. *See In re Gen. Motors*, 2016 WL 1441804, at *9.

---

[4]  The Court previously indicated that travel would not present an issue for cases outside of California. *See* July 25, 2025 Status Conference Tr. at 11:2-25.

# KIRKLAND & ELLIS LLP

Hon. Charles R. Breyer
August 12, 2025
Page 8

### C.    Plaintiffs' Collective Representation Supports The Proposed Trial Order

Finally, because resolutions often occur at a law-firm level, it is important to also consider the law firm at issue when determining the appropriate Trial Order. Uber's third trial pick, WHB 318, is represented by the law firm that holds the most substantial number of Plaintiffs cases in the MDL, Williams Hart & Boundas LLP ("Williams Hart"). Williams Hart is counsel of record for 18.4% of the Plaintiffs' cases.[5] Meanwhile, B.L., which Uber understands Plaintiffs propose go third, is one of only 36 cases represented by the Wagstaff Law Firm ("Wagstaff") as compared to the 2,444 cases being handled by other law firms. Prioritizing such a case makes no sense within the rubric of bellwether trials and their purpose.



## III.    B.L. IS AN OUTLIER THAT SHOULD NOT BE PRIORITIZED

As demonstrated in Part II, out of all the Wave 1 Cases, B.L. is the most prominent outlier. B.L. is a California claim, represented by the Wagstaff Law Firm, which falls in an "Intercourse" taxonomy. Among Plaintiffs' collective claims, the probability of finding those three deviations together is 0.002% (or 0.05 out of 2480). This makes it a near impossibility that any other

---

[5] While A.R. is represented by Peiffer Wolf Carr Kane Conway & Wise LLP ("Peiffer Wolf") who also represents a substantial number of Plaintiffs (including Jaylynn Dean whose trial is first by agreement of the parties), that case is an outlier in every other category discussed herein. In contrast, LCHB 128, who is represented by a less prominent Plaintiffs' firm, is more representative of Plaintiffs' collective taxonomy classes and incident states. Given that the parties have already given a Peiffer Wolf case the very first trial spot, LCHB should take the fourth trial spot and the second Peiffer Wolf case, A.R., should take the fifth.

**KIRKLAND & ELLIS LLP**

Hon. Charles R. Breyer
August 12, 2025
Page 9

Plaintiff's claim would align with B.L. WHB 318 however, is almost 45 times more likely to have all three factors in common with another plaintiff.

  Along the same lines, while Uber understands the utility in trying bellwether cases that represent the breadth of Plaintiffs' collective claims (*see* Lahav, *supra*, at 2), that goal already has been accomplished by agreeing that Jaylynn Dean, which is an "Intercourse" taxonomy claim, proceeds as the first trial case. It is nonsensical to try *another* case under a taxonomy which is not representative of the Plaintiffs' collective claims. Indeed, for every one "Intercourse" case, there are *over four* MDL cases which fall under the "touching" taxonomies that WHB 318 and LCHB 128 fall under (1.98 for WHB 318 and 2.24 for LCHB 128). Thus, it is the most logical choice to set all "touching" cases for trial before *another* "intercourse" case (B.L.). The touching cases will provide effective data points to the parties and this Court.

### IV.    TRAVEL

  The Court has separately requested that the parties report on whether they would agree to have non-California cases tried in locations other than the location of alleged incident within the relevant state. Uber declines to agree to such an arrangement. To that end, Jaylynn Dean and LCHB 128 should be tried in Phoenix, AZ, and WHB 823 and WHB 318 should be tried in Raleigh, NC.

### V.    CONCLUSION

  The Proposed Trial Order sets forth the best way for the bellwether process to gauge the likely outcomes of the broader litigation, assist in valuation of the cases, and inform global settlement discussions. Indeed, the objective data is clear that the prioritized cases in the Proposed Trial Order are the most representative of the broader Plaintiffs' claims in this MDL. Consequently, the Court should implement the Proposed Trial Order.

Respectfully submitted,

_____
Laura Vartain Horn