# M. Premo-Hopkins Decl. Exhibit 1

# KIRKLAND & ELLIS LLP

Mark W. Premo-Hopkins, P.C.
To Call Writer Directly:
+1 312 862 2706
mark.premohopkins@kirkland.com

555 California Street
San Francisco, CA 94104
United States

+1 415 439 1400

www.kirkland.com

Facsimile:
+1 415 439 1500

August 8, 2025

**Via E-Mail & Federal Express**

Diane Brayton
Executive Vice President & Chief Legal Officer
**NEW YORK TIMES**
620 Eighth Avenue
New York, NY 10018

Dear Ms. Brayton:

  We are writing in connection with the story entitled "Uber's Festering Sexual Assault Problem" that was published in the *New York Times* on August 6, 2025. The first sentence of the story acknowledges that it is based on "sealed" documents that, due to protective orders entered by courts in ongoing litigation, are accessible only to select groups of individuals for litigation purposes only.[1] Uber is concerned that there has been a violation of these court orders, a matter which Uber takes seriously.

  We understand and respect that, on matters related to the protection of sources, the *New York Times* is guided by deeply-rooted principles grounded in the First Amendment as well as state shield laws and we are not asking the *Times* to stray from them. Rather, we write in the hope that you will assist us — in a manner consistent with those foundational principles — to better understand the circumstances surrounding these documents that the *Times* itself has described as "sealed." As indicated above, the sealed records on which the *Times* relied for its story are available only to a small number of categories of individuals, which include principally attorneys, their agents including expert witnesses, and the claimants in the referenced litigation. Nevertheless, we are not asking that you identify any source by name or even point to a category of individuals.

  Rather, we are aware that for a certain period of time, counsel for the *New York Times* was inappropriately registered for File&Serve (a filing and service platform utilized in California state court litigation involving Uber) and inadvertently received access via File&Serve certain confidential (or "sealed") materials. We also understand that counsel downloaded and/or viewed at least one document as a result of that registration. We further acknowledge that when the

---

[1] The story later confirms the "sealed" status of the documents: "As part of the ongoing litigation, a judge in California last week said in a preliminary ruling that some of the documents should be unsealed, though the records have yet to be released."

# KIRKLAND & ELLIS LLP

Diane Brayton
August 8, 2025
Page 2

lawyer for the *New York Times* discovered that she was receiving apparently sealed material, she sent an email notifying counsel for Uber of this and stating:

> This afternoon, I started receiving from File and ServeXpress links to several filings in connection with Defendants' motions to seal records and/or filings in connection with the upcoming motion for summary judgment. On review of only one such link and only one paragraph of one exhibit (exhibit G) it became apparent that I was being provided access to both redacted and unredacted versions of exhibits that Defendants are attempting to seal. Upon this discovery, I stopped reviewing any links provided by File and ServeXpress, and will refrain from reviewing or accessing the links until the matter can be resolved. I did not share the links with my client The New York Times Company.

Uber has no reason to question the statements of the *Times* counsel. However, we note that Plaintiffs' counsel in litigation has suggested that the *Times* may have obtained the confidential information on which it relied by accessing sealed documents through File&Serve. Accordingly, we request only that you inform us whether the *Times* accessed sealed records through File&Serve (or any other public court docket) and if so, how that was accomplished.

Finally, we note that in attempting to understand how violations of these court orders could have occurred, Uber has not ignored the possibility of involvement by its own current or former employees or attorneys. To the contrary, while Uber has sought information from plaintiffs and their attorneys and now the *Times*, Uber is conducting an investigation into whether the sealed documents could have come from Uber current or former employees, or Uber attorneys or other agents. Uber is focusing its investigation on the set of documents that comprise the record of the state coordinated proceeding (JCCP) summary judgment opposition materials, because based on the documents cited in the *Times* story as well as the reference to sealed court documents, it is clear that the *Times* reporter received at least those documents as a collection. In the spirit of transparency, we do not believe that Uber current employees, former employees or attorneys sent confidential information from that sealed set of materials (plaintiffs' JCCP summary judgment opposition) to the *New York Times* or to any other party not authorized under applicable protective orders. If you have information to the contrary, please let us know.

We appreciate your attention to this important matter and look forward to your response.

Sincerely,

Mark W. Premo-Hopkins, P.C.