# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084-CRB **JOINT DISCOVERY LETTER BRIEF REGARDING PLAINTIFFS' INTERROGATORIES 7 & 8** |
| This Document Relates to: ALL BELLWETHER ACTIONS | Judge: Hon. Lisa J. Cisneros Courtroom: G – 15th Floor |

Dear Judge Cisneros:

Pursuant to Pretrial Order No. 8 (ECF No. 323), the Parties respectfully submit this letter seeking the Court's assistance in resolving the parties' dispute regarding Defendants' production of sexual assault and sexual misconduct incident data.

DATED: August 14, 2025                                    Respectfully submitted,

By: */s/ Roopal P. Luhana*                                  *s/ Christopher D. Cox*
ROOPAL P. LUHANA *(Pro Hac Vice)*          **KIRKLAND & ELLIS LLP**
**CHAFFIN LUHANA LLP**                          ALLISON M. BROWN
600 Third Avenue, Fl. 12                            CHRISTOPEHR D. COX
New York, NY 10016                                  JESSICA DAVIDSON
Telephone: (888) 480-1123                          LAURA VARTAIN
Email: luhana@chaffinluhana.com

                                                              **SHOOK, HARDY & BACON L.L.P.**
SARAH R. LONDON (SBN 267083)              MICHAEL B. SHORTNACY
**GIRARD SHARP LLP**                              PATRICK L. OOT, JR.
601 California St., Suite 1400                        CHRISTOPHER V. COTTON
San Francisco, CA 94108                            ALYCIA A. DEGEN
Telephone: (415) 981-4800
Email: slondon@girardsharp.com                  **O'MELVENY AND MYERS LLP**
                                                              SABRINA H. STRONG

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY**
**& WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**Plaintiffs' Position:**

For more than a year, Plaintiffs have sought production of documents and data related to Defendants' tracking and categorization of sexual assault and misconduct incidents, requiring the Court to at least 10 Orders on this matter (ECF Nos. 683, 706, 1068, 1996, 2016, 2067, 2647, 2855, 3059, and 3129). But recent testimony suggests that Uber did not produce relevant, responsive data that Uber uses and relies upon in the ordinary course of business. Specifically, Uber withheld data from its "Flack" database and from the internal Dashboard that Uber relies upon to analyze sexual assault and sexual misconduct safety incident data.

Plaintiffs therefore respectfully request that Uber be ordered to provide a declaration confirming that the incident numbers Uber produced are the same numbers that would have been displayed in Flack and/or the Dashboard; if not, then Uber should produce the numbers as they existed in those systems as of the dates Uber produced the discovery responses. Additionally, Plaintiffs request that the Court set dates for the Parties to raise disputes with the Court regarding whether Uber will provide additional data or documents from Flack or the Dashboard.

### 1. Background

On July 9, 2024, the Court ordered Uber to produce data and documents related to sexual assault and sexual misconduct incidents occurring in the United States, as well as all underlying trip data (e.g., GPS information, trip date and time, etc. (ECF No. 683 at 11-12). Throughout the months-long process of Plaintiffs' seeking Uber's compliance with the Court's Orders, Uber maintained that the appropriate (and *only*) sources of responsive data are Uber's Bliss and Jira databases. Wilkins Decl. (Ex. A) at ¶3; *see also, e.g.*, ECF Nos. 693, 708, 764, 779, 1050, 1521, 1681, 1957, 2011, 2063. Further, Uber has stated that to the extent any safety data or information responsive to Plaintiffs' related discovery requests exists outside of Jira and Bliss, production would be unduly burdensome. Ex. A at ¶3.

After months of receiving partial, incomplete, and error-ridden productions of safety data, Plaintiffs served interrogatories on February 26, 2025 seeking the number of incidents, per month, that Uber categorized. *Id*. at ¶4; *see also* ECF Nos. 1681, 1777, 1957, 2041, 2115, 2380. Plaintiffs were forced to seek the Court's involvement numerous times before Uber finally agreed to provide responses. (*See* ECF Nos. 2647, 2713, 2823, 2855, 2895, 3059, 3096, 3125, 3129). On April 23, 2025, Uber provided a chart showing the number of incidents for each of the 23 categories for each month from January 2017 through December 2022. Ex. A at ¶5. Uber provided a similar chart for January 2023 through December 2024 on June 20, 2025. *Id.* at ¶6. However, every entry on the 2017-2022 chart (1,656 entries) is followed by an asterisk indicating that each "data point is not equivalent to the number of incidents [and] does not and cannot accurately reflect the volume of incidents by category…". *Id*. at ¶5. Further, Uber's response notes that any given entry may include incidents that were counted in as many as four other data points and there is no way for Plaintiffs to deduplicate these numbers. *Id*. Every page of the 2023-2024 chart carries this disclaimer, and every entry in the 2023-2024 chart is overlaid

by a watermark (repeated three times per page) indicating "UNAUDITED AND UNVALIDATED CANNOT ACCURATELY REFLECT INCIDENT VOLUME OR CATEGORIZATION." *Id*. at ¶6. Uber represented that the numbers in both charts are derived from the Jira and Bliss databases. *Id*. at ¶¶ 5, 6.[1]

### 2. Hannah Nilles' Testimony

On July 23, Uber's corporate witness, Hannah Nilles, testified that in her role as Uber's Head of Safety for the Americas, she regularly reviews current and historic incident rates for sexual assault. *Id*. at ¶10. She testified that she obtains that information from Uber's Flack database (and potentially other sources including a Dashboard that she uses to access Flack) and that the incident rates (including the specific incident rates for critical sexual assaults) from Flack and/or the Dashboard are accurate, reliable, and up to date. *Id*. Further, she testified that she can easily pull and easily view current and historic incident rates for sexual assaults (including critical sexual assaults) using Flack and/or a Dashboard that shows information from Flack. *Id*.

Ms. Nilles' testimony is contrary to ongoing representations by Uber and Uber's counsel regarding the availability and ease of identifying accurate and reliable information regarding the numbers and rates of sexual assaults, including the specific numbers and rates for particular categories of sexual assaults. **Therefore, Plaintiffs request that Uber provide a declaration, under oath, certifying that the incident numbers Uber produced on April 23 and June 20 are the same numbers that would have been displayed in Flack and/or the Dashboard on those dates**. If the numbers are not the same, then Uber should produce the numbers as they existed in those systems as of the dates Uber produced the prior discovery responses.

Additionally, Ms. Nilles' testimony is contrary to Uber's ongoing representations that Jira and Bliss are the only sources of safety data responsive to the Courts' Orders and Plaintiffs' discovery requests. At the time of this filing, Uber has agreed to provide, by August 15, 2025, a list of all fields (and accompanying descriptors/definitions) in Flack that Uber uses or has used in connection with alleged sexual assault and sexual misconduct incidents reported to Uber. **Plaintiffs request that the Court order the Parties to complete meet and confer discussions regarding whether Uber will provide any additional data from Flack and/or the Dashboard by August 19 and to raise any remaining disputes with the Court by August 21.** Further, because any data produced from Flack will necessarily be produced after the current deadline for expert reports, Plaintiffs request leave to serve supplemental expert reports incorporating any additional data produced. To the extent this request is appropriately directed to Judge Breyer, Plaintiffs will promptly seek leave to serve such reports upon receiving guidance from the Court.

---

[1] Uber's argument that "Plaintiffs are now making a different request than the one in their interrogatories. Plaintiffs' interrogatories" is disingenuous. Plaintiffs conferred with Uber about these requests numerous times during the nearly two months after Plaintiffs served them and immediately raised this issue to the Court upon receiving Uber's responses. Ex. A at ¶7.

Uber argues that this brief comes too late.[2] It does not. Plaintiffs aim to close the loop on discovery that should have been produced ages ago, not open new avenues. July 16 was the deadline only for "substantial completion"; discovery does not close until October. *See Whitewaer W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2018 WL 2979575, at *4 (S.D. Cal. June 8, 2018) ("[W]hile the CMC Order requires that the substantial completion of fact discovery occur by January 15, 2018, it does not require that all fact discovery be completed by that date which is why there is a separate deadline for the completion of fact discovery.").

Uber criticizes Plaintiffs for not briefing this issue on May 1, but omit that Uber objected to briefing until after a 30(b)(6) deposition then-scheduled for May 6 but later, at Uber's request, re-scheduled for July 11. Ex. A at ¶¶8-9. At the deposition, the witness testified that Bliss and Jura are the only sources from which Uber gathered data, leaving Plaintiffs with no reason to follow up on Flack until the new testimony provided by Ms. Nilles two weeks later. *Id.* at ¶9. Finally, regarding the additional fields in Flack, Plaintiffs' request for a deadline to wrap up discussions on this long-running issue should not be controversial.

**Defendants' Position:**

Plaintiffs' requests should be denied because substantial completion of general fact discovery closed two months ago and contrary to Plaintiffs' assertions, no new information has come to light since that time. PTO 21 at 3 (ECF 1950) ("Fact discovery will be substantially complete by June 16, 2025."). The Local Rules prohibit the filing of "motions related to fact discovery . . . more than 7 days after the fact discovery cut-off." L.R. 37-3. This court regularly enforces this Local Rule and denies untimely requests relating to fact discovery. *See, e.g.*, *Scalp v. Timber Prods. Trucking, LLC*, 2025 WL 2104803, at *3 (N.D. Cal. July 28, 2025) (denying discovery motion filed one month after close of fact discovery pursuant to Local Rule 37-3); *Eagle Eyes Traffic Indus. USA Holdings LLC v. E-Go Bike LLC*, 2023 WL 6629802, at *1 (N.D. Cal. Oct. 10, 2023) (denying plaintiff's "motion related to fact discovery," which plaintiff filed over one month after the close of fact discovery: "Untimely motions related to fact discovery are not permitted under Local Rule 37-3."); *Finjan, LLC v. Qualys Inc.*, 2020 WL 6581836, at *1, *4 (N.D. Cal. Nov. 10, 2020) (denying a letter brief filed over one month after the close of fact discovery as untimely per Local Rule 37-3).

Plaintiffs' feigned ignorance regarding Defendants' incident data does not form the basis to reopen document discovery and disregard the Local Rules. Plaintiffs have known about Flack for **over a year**. Defendants have produced thousands of documents that discuss what Flack is, how Uber uses Flack, and the information contained within Flack, including documents Plaintiffs have had since August 2024. Plaintiffs have reviewed those documents and even questioned Defendants' 30(b)(6) witness about Flack and its capabilities back in April, **nearly four months**

---

[2] On the merits, Uber suggests that Flack merely collates multiple events from one ride. But if that is true, then the declaration Plaintiffs seek will resolve the issue.

*ago* and well before the substantial completion deadline. *See, e.g.*, *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) ("Attempting to secure discovery after a discovery cutoff date does not cure a party's failure to conduct diligent discovery beforehand."); *Stone Brewing Co. v. Millercoors, LLC*, 2020 WL 1905342, at *34 (S.D. Cal. Apr. 17, 2020) ("Although Plaintiff served the subpoena on [the third party] about three months before fact discovery ended, Plaintiff did not diligently seek to obtain production by [the deadline].").

Indeed, Defendants' corporate designee, Katherine McDonald, sat for two days of depositions on April 24 and 25, during which she was questioned about Flack and documents discussing Flack. For instance, Plaintiffs here suggest that they only just learned about additional fields in Flack, but Ms. Nilles did not testify about additional fields. Rather, it was Ms. McDonald who testified back in April that Flack contains fields that do not exist within Jira or Bliss. Ms. McDonald explained that these fields are *not* the incident data itself, but rather that these fields use the Bliss and Jira data. For instance, Ms. McDonald testified about a reported-against field, explaining that Flack identifies which individuals are possibly or probably reported against by looking at the Bliss and Jira data to determine which party was first to report. The existence of this reported-against Flack field was long ago disclosed in many produced documents, including documents produced in August 2024. Ms. McDonald also testified that Flack uses a logic to combine multiple Jira and Bliss tickets into a single event.

Plaintiffs' claim that Flack is "new information" is further contradicted by the fact that they prepared and sent to Defendants a draft PTO 8 brief *three-and-half-months ago, on April 30*, in which Plaintiffs acknowledged that Ms. McDonald had testified that "Uber uses a system called Flack to logically 'combine multiple tickets on the same trip UUID to a single event'" and that Flack "also has additional fields upon which Uber relies to determine whether violence was, for example, committed on a rider or driver." But Plaintiffs chose not to pursue that PTO 8 brief or to seek further discovery about Flack before the June 16 deadline or in the intervening months that have passed. Notably, Plaintiffs received the document they quoted about Flack combining multiple tickets from the same trip into a single event on August 12, 2024 – over a year ago. That is one of the thousands of documents describing Flack and its capabilities that Defendants long ago disclosed to Plaintiffs.

Moreover, Plaintiffs are now making a different request than the one in their interrogatories. Plaintiffs' interrogatories asked Defendants to, "[f]or each month in the year[s] [2017 through 2024], specify by category, the number of Sexual Violence Incidents in the United States that YOU categorized into each of the [23 Taxonomy categories]." ECF 3096-2 at 3-9. Per the parties' agreement, Defendants answered those questions with reference to two charts. *See id* at 3-7; ECF 3125. Plaintiffs had opportunities to depose – and did depose – two corporate witnesses designated to speak about those charts – Katherine McDonald and Todd Gaddis. In fact, Defendants provided the second chart in mid-June *after* Plaintiffs had already deposed Ms. McDonald about Flack. And even though Ms. McDonald had testified about Flack's ability to

combine incident tickets, Plaintiffs still agreed, and Defendants provided, the second chart with **non-combined** numbers. Further, even though Plaintiffs deposed Mr. Gaddis after receiving both charts and having Ms. McDonald's testimony about Flack, Plaintiffs did not ask Mr. Gaddis a single question about Flack.[3] Now, in August, Plaintiffs say for the first time that they seek **not** "the number of Sexual Violence Incidents in the United States that YOU categorized into each the [23 Taxonomy categories]," but rather only the number of incident categorizations for dominant tickets after Flack combines multiple tickets for the same trip into a single event. And Plaintiffs want Defendants to disregard and exclude the other incident categorizations. That is a different request altogether. Despite having information about Flack's ability to combine tickets for over a year, Plaintiffs never served a discovery request seeking this information or even informally requested this production. After Ms. McDonald's April 24 and 25 depositions about Flack (and after Plaintiffs' April 30 abandoned PTO 8 brief), Plaintiffs never asked Defendants to provide any further information about what fields are available in Flack until now, well after the substantial completion deadline. While Defendants have agreed to provide a list of Flack fields in the spirit of cooperation, Defendants do not agree – and the Court should reject – any request by Plaintiffs to reopen general discovery to require Defendants to create new charts that do not currently exist or to produce data that Plaintiffs could have sought long ago.[4]

Nothing Ms. Nilles said in her deposition testimony contradicts the information set out in the categorization charts Defendants produced. Indeed, Plaintiffs did not question, and Ms. Nilles did not testify, about the information in the categorization charts. To the extent Plaintiffs were interested in whether Ms. Nilles agreed with the information presented in those charts, they could have asked her. They did not. Moreover, nothing in Ms. Nilles's testimony contradicts that Jira and Bliss are the systems that actually capture incident reporting data.

Plaintiffs' request now for a declaration stating that the numbers of **combined** ticket categorizations are the same as the numbers for **non-combined** categorizations is nonsensical. They are obviously not, and Plaintiffs' claims of confusion at this late date strain credulity. Plaintiffs' alternative (informal) request for production of the combined Flack numbers must be denied as untimely.

In the face of these facts, Plaintiffs have manufactured a straw man. Plaintiffs are now saying that Defendants objected to producing Flack information on the basis of burden, but that did not happen – Plaintiffs never even requested the production of Flack information (and still have not), despite having documents about Flack for more than a year and questioning Defendants'

---

[3] Defendants strongly disagree with the mischaracterizations about the parties' conferrals made in Plaintiffs' declaration. Indeed, several of the representations supposedly made by Uber's counsel are contradicted by the sworn testimony given by Uber's corporate representative just days earlier. The notion that Plaintiffs decided to forego pursuing this issue in May – based on alleged oral representations of counsel – is further undercut by the tenacity with which they have pursued incident data information throughout the past year, as recounted by Plaintiffs themselves above.

[4] Defendants do not agree to an expedited briefing schedule as Plaintiffs propose.

30(b)(6) witness regarding the same four months ago. Plaintiffs' request is untimely and should be denied.

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: August 14, 2025                                    By: /s/ Roopal P. Luhana

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ Roopal P. Luhana