IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | Case No. 23-md-03084-CRB<br><br>**DECLARATION OF BETH WILKINS IN SUPPORT OF PLAINTIFFS' PORTION OF JOINT LETTER REGARDING DEFENDANTS' PRDOCUTION OF SEXUAL ASSAULT AND SEXUAL MISCONDUCT INCIDENT DATA**<br><br>Judge: Honorable Lisa J. Cisneros |

- 1 -

DECLARATION OF BETH WILKINS IN SUPPORT OF
PLAINTIFFS' PORTION OF JOINT LETTER RE
DEFENDANTS' PRODUCTION OF SEXUAL ASSAULT AND
SEXUAL MISCONDUCT INCIDENT DATA

I, Beth Wilkins, hereby declare as follows:

1. I am a partner in the law firm of Chaffin Luhana LLP. I am a member of the State Bars of Illinois and Missouri and duly admitted to practice before this Court, representing Plaintiffs in the above caption action. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2. I submit this declaration in support of Plaintiffs' portion of the parties' Joint Letter Regarding the Parties' dispute regarding Defendants' production of sexual assault and sexual misconduct incident data.

3. For well over a year, Plaintiffs have sought discovery of documents and data related to Uber's collection, categorization, and analysis of sexual assault and sexual misconduct incidents reported to Uber. During that entire time, Uber has consistently maintained during meet and confer discussions as well as to the Court that the appropriate and *only* sources of responsive data are Uber's Bliss and Jira databases. Further, Uber has represented during numerous meet and confer discussions that to the extent any safety data or information responsive to Plaintiffs' related discovery requests exists outside of Jira and Bliss, it would be unduly burdensome to produce that information. As a few examples, Plaintiffs have requested information related to Uber's deactivations of Drivers accused of sexual assault, gender of Drivers and Riders involved in sexual assault incidents, and the involvement of alcohol in sexual assault incidents. Uber has repeatedly represented that this and other similar data is not available and/or would require a manual process that is unduly burdensome and not proportional to the needs of the litigation.

4. After months of receiving partial, incomplete productions of safety data containing numerous errors and omissions in purported response to the Court's July 9 and subsequent Orders, Plaintiffs served interrogatories on this issue on February 26, 2025. (*See* ECF Nos. As relevant here, Plaintiffs requested:
> "For each month in the year[s] [2017 through 2024], specify by category, the number of Sexual Violence Incidents in the United States that YOU categorized into each of the 21 categories in Uber's Sexual Misconduct and Sexual Violence Taxonomy or categorized as "Insufficient Information" or "Parent Category Usage Tracking."

- 2 -

DECLARATION OF BETH WILKINS IN SUPPORT OF PLAINTIFFS' PORTION OF JOINT LETTER RE DEFENDANTS' PRODUCTION OF SEXUAL ASSAULT AND SEXUAL MISCONDUCT INCIDENT DATA

5.  Although Uber initially objected to these interrogatories, the Parties conducted a series of meet and confer discussions throughout March and April led to Uber's agreement to respond. On April 23, 2025, Uber provided a chart showing the number of incidents for each of the 23 categories for each month from January 2017 through December 2022. However, every entry on the 2017-2022 chart (1,656 entries) is followed by an asterisk indicating that each "data point is not equivalent to the number of incidents [and] does not and cannot accurately reflect the volume of incidents by category…". Further, Uber's response notes that any given entry may include incidents that were counted in as many as four other data points and there is no way for Plaintiffs to deduplicate these numbers. Uber represented during numerous meet and confer discussions that the numbers in this chart are derived from the Jira and Bliss databases.

6.  Uber provided a similar chart for January 2023 through December 2024 on June 20, 2025. Every page of the 2023-2024 chart carries the same disclaimer, and everyone that chart is overlaid by a watermark (repeated three times per page) indicating "UNAUDITED AND UNVALIDATED CANNOT ACCURATELY REFLECT INCIDENT VOLUME OR CATEGORIZATION." Uber represented during numerous meet and confer discussions that the numbers in this chart are derived from the Jira and Bliss databases.

7.  On April 21, 2025, Plaintiffs notified the Court that Uber's responses to Plaintiffs' interrogatories were insufficient and that Uber had violated the Parties' agreement with respect to these interrogatories. (ECF No. 2823 at 4-6). On April 24, the Court ordered the parties to meet and confer and to file PTO 8 letter on this dispute by May 1, 2025. (ECF No. 2855).  That letter was to address the issue of Uber's responses to the interrogatories, but was unrelated to issues regarding Flack (indeed, Plaintiffs did not learn about Uber's use of Flack related to safety data until the April 24, 2025 deposition of Uber's corporate witness, Katy McDonald, who testified in response to the Court's March 27, 2025 Order that Uber produce a witness to testify about its process for identifying and producing safety data to Plaintiffs). (ECF No. 2647).

8.  The parties met and conferred on April 28 to address the May 1 filing and Uber maintained that it is impossible for Uber to provide more accurate or reliable responses to

- 3 -

DECLARATION OF BETH WILKINS IN SUPPORT OF
PLAINTIFFS' PORTION OF JOINT LETTER RE
DEFENDANTS' PRODUCTION OF SEXUAL ASSAULT AND
SEXUAL MISCONDUCT INCIDENT DATA

Plaintiffs' interrogatories than it had already provided. During that conference, in addition to discussing Uber's insufficient responses to Plaintiffs' interrogatories, Plaintiffs separately raised concern about Ms. McDonald's April 24 testimony regarding Flack. In response, Uber's counsel represented that there is no responsive data in Flack that Uber had not already produced and, to the extent Flack contained any additional fields or data, it would be too burdensome for Uber to produce. Additionally, Uber objected to including the dispute regarding Ms. McDonald's testimony in the PTO 8 letter as being beyond the scope of the Court's order and Uber's counsel indicated that Plaintiffs' concerns regarding additional fields and data that may be in Flack would be addressed in a subsequent 30(b)(6) deposition, which at that time was scheduled for May 6.

9. Based on Uber's representations, Plaintiffs reached an agreement with Uber in lieu of filing a PTO 8 letter on May 1. Had Uber provided truthful information regarding Uber's ability to use Flack and/or its Dashboard to provide reliable incident numbers during the Parties' discussions between April 28, 2025 and May 1, 2025, Plaintiffs would not have agreed to forgo the May 1 filing. Notably, the May 1 agreement addressed only the matter of whether Uber could reasonably de-duplicate the incident numbers it produced in response to Plaintiffs' interrogatories and was not intended to not address any matters related to Flack or the fields in Flack. The issues regarding the fields in Flack were to be addressed in the subsequent corporate witness deposition. However, that deposition did not occur until July 11, 2025 and the witness testified that Bliss and Jira are the only sources from which Uber gathered data to be produced to Plaintiffs.

10. On July 23, 2025 Uber's corporate witness, Hannah Nilles, testified that in her role as Uber's Head of Safety for the Americas, she regularly reviews current and historic incident rates for sexual assault. (Jul. 23, 2025 testimony of Hannah Nilles at 64-70; 302-304). Ms. Nilles testified that she obtains that information from Uber's Flack database (and potentially other sources including a Dashboard that she uses to access Flack) and that the incident rates, including the specific incident rates for critical sexual assaults from Flack and/or the Dashboard, are accurate, reliable, and up to date. *Id*. Further, she testified that she can easily pull and easily view current

- 4 -

DECLARATION OF BETH WILKINS IN SUPPORT OF PLAINTIFFS' PORTION OF JOINT LETTER RE DEFENDANTS' PRODUCTION OF SEXUAL ASSAULT AND SEXUAL MISCONDUCT INCIDENT DATA

and historic incident rates for sexual assaults, including critical sexual assaults, using Flack and/or a Dashboard that shows information from Flack. *Id.*

11.  To date, the data Uber has produced in response to the Court's July 9, 2024 and subsequent Orders consists solely of data from Uber's Jira and Bliss databases. *Id*.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th Day of August, 2025 in Lebanon, Illinois.

/s/ *Beth Wilkins*
Beth Wilkins

- 5 -

DECLARATION OF BETH WILKINS IN SUPPORT OF PLAINTIFFS' PORTION OF JOINT LETTER RE DEFENDANTS' PRODUCTION OF SEXUAL ASSAULT AND SEXUAL MISCONDUCT INCIDENT DATA