**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:    Hon. Charles R. Breyer<br>Courtroom:  6 – 17 Floor (via videoconference)<br>Date:    August 22, 2025<br>Time:    10:00 a.m. |

## JOINT CASE MANAGEMENT STATEMENT

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively "Uber"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for August 22, 2025.

### Proposed Agenda

I.      **Status of Case Filings**

II.     **General Discovery Updates**

III.    **B.L. Amended Complaint**

IV.     **Wave 1 Trial Order**

V.      **Discovery Schedule for WHB 318**

VI.     **Bellwether Trial Wave 2 Participants and Schedule**

VII.    **Case Schedule**

VIII.   **Settlement / Mediation**

IX.     **Next Case Management Conference**

## I.      STATUS OF CASE FILINGS

### 1.      Number of MDL Case Filings

As of July 22, 2025, there are 2,511 cases in this MDL, with approximately 73 new filings since the last case management conference.

### 2.      Status of JCCP

There are approximately 679 cases pending in the JCCP. The first trial is scheduled for September 8, 2025.

### 3.      Other Cases and Proceedings

Defendants have provided a current list of civil actions and government investigations arising from sexual assault on the Uber platform in which Uber is a defendant, attached as Exhibit A.

## II.    GENERAL DISCOVERY UPDATES

The deadline for substantial completion of common fact discovery was on June 16. That discovery is largely completed. There is an ongoing dispute, pending before Judge Cisneros, related to Uber's safety data. ECF 3700. In addition, Defendants' Motion for Enforcement of the Protective Order is set for September 30, 2025. ECF 3710. There is also one 30(b)(6) deposition scheduled for August 28.

The deadline for substantial completion of Wave 1 case-specific discovery was on July 16. The parties are wrapping up discovery in five of the six Wave 1 cases. A few 30(b)(6) depositions remain in the next two weeks. One dispute regarding document productions in A.R.2 and Jaylynn Dean remains pending before Judge Cisneros. ECF 3669. Uber recently served a set of interrogatory responses meant to substitute for case-specific 30(b)(6) depositions; the parties continue to discuss those responses and will present any disputes to Judge Cisneros.

## III.    B.L. AMENDED COMPLAINT

In light of discovery recently produced by Uber, Wave 1 Bellwether Plaintiff B.L. intends to amend her complaint to assert a ratification claim. Plaintiff has sought Uber's consent for the amendment, and Uber expects to oppose.  The parties will meet and confer on a briefing schedule.

## IV.    WAVE 1 TRIAL ORDER

The parties submitted their proposals for Wave 1 trial order. ECF 3686, 3688. As stated in those briefs, the parties agree on the following:

- Jaylynn Dean (AZ) should be the first trial.
- WHB 823 (NC) should be the second trial.
- The Court should stagger the remaining pretrial deadlines according to trial date, so that, if the parties' above agreements are accepted by the Court, the existing deadlines would apply to Dean only; once WHB 823 has a trial date, the expert and pretrial deadlines would be calendared backwards from the trial date; and so on.

## V.    DISCOVERY SCHEDULE FOR WHB 318

After adding WHB 318 to Trial Wave 1, the Court ordered the parties to propose a discovery schedule for that case. ECF 3706. The parties propose that fact discovery in WHB 318 be substantially completed by November 3. The parties also agreed to stagger expert and other pretrial deadlines according to each Wave 1 trial date as they are assigned. If the Court accepts that agreement, then the November 3 deadline is the only one needed for WHB 318 at this time. If the Court instead requires a full pretrial schedule for WHB 318, the parties' proposals follow.

### A.    Plaintiffs' Position

| Event | PTO 26, as modified by ECF 3533 & 3705 | Proposal for WHB 318 |
|---|---|---|
| Substantial Completion of Fact Discovery | July 16, 2025 | November 3, 2025 |
| Exchange Expert Reports | August 29, 2025 | December 8, 2025 |
| Rebuttal Expert Reports | September 29, 2025 | January 9, 2026 |
| Close of discovery | October 6, 2025 | January 23, 2026 |
| Daubert/dispositive motions | October 8, 2025 | January 26, 2026 |
| Oppositions to Daubert and dispositive motions | November 11, 2025 | February 9, 2026 |
| Replies in support of any Daubert and dispositive motions | November 24, 2025 | February 23, 2026 |

For no apparent reason, Defendants propose an accelerated schedule for expert discovery over the holidays. The parties have already agreed that Dean and WHB 823 should be the first two trials, so there is no need to race WHB 318 to be trial-ready the beginning of February rather than the end. And there is good reason to allow more time between the substantial-completion date and service of expert reports. In the other Wave 1 cases, significant discovery occurred after the July 16 substantial-completion date (and, indeed, some discovery still remains). Defendants suggest that no time is needed because the plaintiff's deposition is scheduled, but it is not plaintiff-side discovery that has caused delays. Rather, inadequate document productions and unprepared witnesses have

required the rescheduling and retaking of numerous case-specific 30(b)(6) depositions after July 16. Relatedly, the parties have, by agreement, repeatedly extended the expert discovery deadlines. This is not to cast blame, only to illustrate that Defendants' proposal does not reflect the reality of how discovery in Wave 1 has proceeded. Plaintiffs' proposal reflects an aggressive but realistic schedule (should the Court choose to set out a full schedule for WHB 318 at this time).

**B.      Defendants' Position**

Defendants recommend the following schedule, which incorporates WHB318 into the pool such that it can be available for trial selection and not lag behind the other Wave 1 picks. This schedule is feasible, and in fact Plaintiff is already set for deposition on September 10, reflecting the work the parties have already done to get this case incorporated into the Wave 1 schedule.

| Event | PTO 26, as modified by ECF 3533 & 3705 | Defendants' Proposal for WHB 318 |
|---|---|---|
| Substantial Completion of Fact Discovery | July 16, 2025 | November 3, 2025 |
| Exchange Expert Reports | August 29, 2025 | November 17, 2025 |
| Rebuttal Expert Reports | September 29, 2025 | December 15, 2025 |
| Close of discovery | October 6, 2025 | December 30, 2025 |
| Daubert/dispositive motions | October 8, 2025 | January 5, 2026 |
| Oppositions to Daubert and dispositive motions | November 11, 2025 | January 19, 2026 |
| Replies in support of any Daubert and dispositive motions | November 24, 2025 | February 2, 2026 |

**VI.     BELLWETHER TRIAL WAVE 2 PARTICIPANTS AND SCHEDULE**

On August 11, 2025 the Court ordered the parties to include in this joint submission, (1) their proposals for five bellwether cases for Trial Wave 2 and (2) a discovery schedule for Trial Wave 2. PTO 30. The parties' proposals are below.

A.      **Plaintiffs' Position on Wave 2 Case Selection**

Plaintiffs propose the following three cases be included in Wave 2: **A.R.1**, 24-cv-1827; **Jane Doe QLF 001**, 24-cv-08783; and **C.L.**, 23-cv-4972. Below, Defendants propose the following two cases be included: **Jane Roe CL 68**, 24-cv-06669, and **Amanda Lazio**, 24-cv-089137. Therefore, the Court should compose Wave 2 of the parties' five chosen cases:

| Name | Case No. | Firm | Alleged Incident | State |
|---|---|---|---|---|
| A.R.1 | 24-cv-01827 | Chaffin Luhana | Kissing of a Sexual Body Part | PA |
| Jane Roe CL 68 | 24-cv-6669 | Cutter Law | Touching of a Sexual Body Part | TX |
| Jane DoeQLF001 | 24-cv-08783 | Queenan | Sexual Penetration | TX |
| C.L. | 23-cv-4972 | Clarkson | Touching of a Sexual Body Part | MD/VA |
| Amanda Lazio | 24-cv-8937 | Peiffer Wolf | Touching of a Non-Sexual Body Part | IA |

Below, Uber argues why Plaintiffs' picks should not be selected. The Court should reject those arguments. To start, two of the three cases are properly venued in this District (the Court denied the motion to transfer as to **A.R.1** and Uber did not move as to **Jane Doe QLF 0001**), making trial scheduling easier. On the merits, each of these four cases adds valuable diversity to the bellwether pool and allows for trial of facts and in contexts not present in Wave 1. **A.R.1**, was a minor when she was assaulted; not only does her status put Uber's duties and conduct in a different light, but also it supports a product defect (Age Gating) not present in adult cases. **Jane Doe QLF 001**, like many others in the MDL but unlike the Wave 1 cases, did not order her own ride. **Jane Doe QLF 001**, as a Texas case, pleads only negligence and strict products liability claims, without the vicarious liability elements present in the Wave 1 cases. And **C.L.** was assaulted on a ride home from the airport in the morning, unlike the alcohol- or late-night-involved circumstances of most of the Wave 1 bellwethers.

Uber argues that the Court should focus exclusively on how bellwether cases fit into Uber's overly stratified "taxonomy." But the proposed compromise Wave 2 reflects a range of incidents.

And MDL trials will provide data on damages across all kinds of variables of impact and harm, not just Uber's chosen way of looking at cases in the aggregate. More to the point: the primary purpose of this MDL is to see how juries evaluate *Uber's liability* for its drivers' sexual misconduct. As discussed above, Plaintiffs' picks aim to determine fact questions and contexts absent from Wave 1. For example, Uber defends its safety record in part on its expressed concern about "leav[ing] many people stranded on the street" instead of taking Uber "from bars late at night."[1] So how does Uber defend the fact that sexual assaults also happen in broad daylight, as in **C.L.**'s case? Are those assaults *more* Uber's fault because it has no "limited supply late at night" defense? Or *less*, because that assault presumably involved fewer risky red flags? Similarly, Uber touts its safety tools to help limit assault. But what do juries think of the fact that Uber knowingly or recklessly provides rides to minors like **A.R.1**, who cannot be presumed to access or use such tools? Trial on those facts are especially urgent now that Uber openly promotes its product for kids.[2] Similarly, a plaintiff taking a ride ordered by someone else (like **Jane Doe QLF 0001**) is a common fact pattern, but how those circumstances affect Uber's liability will not be tested by Wave 1.

The rest of Uber's arguments are head scratchers. What difference does it make which law firm represents a plaintiff? Uber says that trying cases represented by firms with large filed inventories "facilitates settlement" but does not explain why. The number of cases each firm has right now does not determine how many a firm may file in the future. Uber (despite picking an Iowa case) says that **A.R.1** arises in an "atypical venue," but there are more than 80 MDL cases from Pennsylvania (a state no Wave 1 case reflects), and the fact that **A.R.1** may be tried in N.D. Cal. only makes trial easier to schedule and more convenient for the Court.

---

[1] Hannah Nilles, *Uber's record on safety is clear*, Uber (Aug. 6, 2025),
    https://www.uber.com/newsroom/ubers-safety-record/.

[2] *Teen accounts on Uber*, Uber, https://www.uber.com/us/en/ride/teens/ (last visited Aug. 20, 2025).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.     Defendants' Position on Wave 2 Case Selection

Uber proposes adding Jane Roe CL 68, 24-cv-06669 ("JRCL") and A.L., 24-cv-089137 to two of the Wave 2 Cases already selected by the Court.[3] These additional cases are representative of the Plaintiffs' collective claims. Plaintiffs' suggested additions—Jane Doe QLF 0001 ("JDQLF") and C.L.—are not. *Cf.* Alexandra D. Lahav, *Bellwether Trials*, 76 Geo. Wash. L. Rev. 576, 581 (2008) ("Bellwether trial picks should be "typical of the rest of the plaintiff group such that the results of the bellwether trials represent the likely outcome of their cases as well.").

As set forth in Uber's letter regarding the Wave 1 trial order (ECF 3688), claims falling under the *three* "touching" taxonomies[4] (50.6%)—such as JRCL and A.L.—dominate over the *eleven* other taxonomies (40%), particularly those involving penetration of a bodily orifice (17.7%), such as JDQLF. In fact, this disparity is so great that for every *one* case involving penetration, there are approximately *three* cases from the "touching" taxonomies. Yet, Plaintiffs' proposed selections would place *two* penetration claims in Wave 2 and only *one* "touching" claim. In combination with the Wave 1 Cases already selected, this would mean an equal number (four) of each type of taxonomy will ultimately be tried, when from a proportionality perspective, a more representative trial lineup would be twelve "touching" cases.  It is for this reason that Uber suggests JRCL ("Touching of a Sexual Body Part (Over the Clothes)") and A.L. ("Touching of a Non-Sexual Body-Part"), which represent 21.9% and 19.3% respectively of Plaintiffs' collective claims.  By contrast, Plaintiffs' suggested case, JDQLF ("Oral Sex"), would bring one of the most marginal claims filed

---

[3] The Court already selected three cases - A.G., 24-cv-1915, A.R.1, 24-cv-1827, and WHB 1898, 24-cv-050207 -  as Wave 2 Cases. Notwithstanding, Uber urges the Court to reconsider its selection of A.R.1 given that it is a notable outlier to Plaintiffs' collective claims. First, Plaintiffs tout A.R.1's minor plaintiff as a reason the case should be included in Wave 2, it is for that *exact* reason it should not be included as a trial case at all. Only 1.5% of Plaintiffs' claims involve a plaintiff who was a minor at the time of the alleged incident, making such cases complete outliers to the larger collection of cases in the MDL. Second, A.R.1 involves an atypical taxonomy (4.3%), atypical legal representation (4.3%), and an atypical incident venue (3.3%).

[4] Of the MDL claims, 9.4% of Plaintiffs' claims fall under the "Investigating" taxonomy.

in the MDL, representing only 3.3% of claims, to the forefront of the cases.[5] Thus, Uber's proposed cases are more representative of the Plaintiffs' collective claims.

Moreover, the legal representation in JDCL (Cutter Law PC) and A.L. (Peiffer Wolf Carr Kane Conway & Wise LLP) represent 187 and 417 Plaintiffs, respectively. Accordingly, these claims better facilitate settlement than Clarkson Law, P.C. (C.L.) which represents only 38 Plaintiffs, and Queenan Law, P.C. (JDQLF) which has only one—*0.04% of the collective claims*.

Plaintiffs' arguments regarding the minute factual details of their proposed Wave 2 Cases are of no moment, particularly in light of the glaring distinctions between those cases and Plaintiffs' claims as a whole. Indeed, Plaintiffs do not even offer an explanation as to *how* those facts are representative of the collective claims. *Cf. In re Chevron U.S.A.*, 109 F.3d 1016, 1020 (5th Cir. 1997) (A "find[ing] that the cases tried are representative of the larger group of cases or claims from which they are selected[] [t]ypically… must be based on competent, scientific, statistical evidence that identifies the variables involved[.]"). For example, Plaintiffs contend that C.L. should be chosen for its "*diversity*" in factual circumstance—that the alleged incident occurred in the morning—but that makes C.L. *less* representative of Plaintiffs' collective claims, which mostly involve inebriated passengers during late-night rides.

Lastly, Uber's selected Wave 2 Cases would be a fair division of case selections between the parties. Assuming Uber's proposed two cases are selected, Wave 2 would consist of three cases selected by Uber and two cases selected by Plaintiffs. This is equitable given that Plaintiffs had four Wave 1 selections compared to Uber's two. Plaintiffs' proposal on the other hand, would leave Wave 2 completely comprised of Plaintiffs' own case selections, giving them 80% of the selected bellwethers between Wave 1 and Wave 2. Such a process does not facilitate settlement or a fair evaluation of the strength and value of claims as it represents a disproportionate number of cases Plaintiffs clearly believe lean in their favor.

---

[5] Plaintiffs attempt to conceal this distinction by conflating three taxonomies ("Intercourse," "Oral Sex," and "Digital Penetration") into one ("Sexual Penetration"), but as explained above, the claim is still an outlier.

For the above reasons, this Court should approve Uber's proposed Wave 2 Case selections—JRCL and A.L.

### C.    Joint Position re: Discovery Schedule

**Discovery Schedule**. The Court should set a deadline for substantial completion of fact discovery for Wave 2 of June 16, 2026. The Court should set the remaining deadlines for that Wave once it becomes apparent when those cases will be tried. If, however, the Court intends on setting the entire Wave 2 schedule now, the parties propose the following:

| Event | Deadline |
| --- | --- |
| Substantial completion of fact discovery | June 16, 2026 |
| Exchange Expert Reports | July 9, 2026 |
| Rebuttal Expert Reports | August 9, 2026 |
| Close of discovery for Trial Wave 2 | August 26, 2026 |
| Daubert and dispositive motions | September 9, 2026 |
| Oppositions to Daubert and dispositive motions | October 7, 2026 |
| Replies to Daubert and dispositive motions | October 21, 2026 |
| First Wave 2 Trial Date | November 4, 2026 |

### VII.    CASE SCHEDULE

The parties stipulated, and the Court approved, to extend by one week the expert-report deadlines set out in PTO 26 and subsequently modified. ECF 3705. The parties wait the Court's guidance on whether those deadlines apply to all Wave 1 cases or will be, as the parties requested, staggered by trial date.

### VIII.    SETTLEMENT / MEDIATION

The parties continue to meet periodically with Judge Andler to discuss the potential for resolution.

### IX.    NEXT CASE MANAGEMENT CONFERENCE

The next case management conference is set for September 26, 2025 at 10:00am, via videoconference. ECF 1990.

Dated:  August 20, 2025

By: /s/ Sarah R. London

Sarah R. London (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: /s/ Rachel B. Abrams

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: /s/ Roopal P. Luhana

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

Dated:  August 20, 2025

**KIRKLAND & ELLIS LLP**

By: _/s/ Laura Vartain Horn_
    **KIRKLAND & ELLIS LLP**
    ALLISON M. BROWN
    JESSICA DAVIDSON
    LAURA VARTAIN

    **SHOOK, HARDY & BACON L.L.P**.
    MICHAEL B. SHORTNACY
    PATRICK L. OOT, JR.
    CHRISTOPHER V. COTTON
    ALYCIA A. DEGEN

    **O'MELVENY AND MYERS LLP**
    SABRINA H. STRONG
    JONATHAN SCHNELLER

    _Attorneys for Defendants_
    UBER TECHNOLOGIES, INC.,
    RASIER, LLC, and RASIER-CA, LLC

## <u>FILER'S ATTESTATION</u>

I, Sarah R. London, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: August 20, 2025

*/s/ Sarah R. London*
Sarah R. London