# EXHIBIT A

1

**WAGSTAFF LAW FIRM**
Sommer D. Luther, CO 35053
940 Lincoln Street
Denver, CO 80203
Tel: (303) 263-8949
Fax: (303) 376-6361
sluther@wagstafflawfirm.com

2

3

4

5

*Attorney for Plaintiff*

6

7

8                        UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12   | IN RE: UBER TECHNOLOGIES, INC., | Case 3:23-md-03084-CRB |
PASSENGER SEXUAL ASSAULT

13   LITIGATION                        MDL No. 3084

14                                     Honorable Charles R. Breyer

15                                     JURY TRIAL DEMANDED

16

This Document Relates to:

17

*B.L. v. Uber Technologies, Inc., et al.*,
18   No. 24-cv-7940

19

20           **[PROPOSED] SECOND AMENDED BELLWETHER COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

21

Under PTO 21 (ECF 1950), Plaintiff files this Second Amended Bellwether Complaint
22

against the Defendants named below. Plaintiff incorporates the allegations set out in the Master
23

Long-Form Complaint filed at ECF 269 in *In re: Uber Technologies, Inc., Passenger Sexual*
24

*Assault Litigation*, No. 23-md-3084 (N.D. Cal.).
25

26

27

28

**I.    DESIGNATED FORUM**[1]

1.    Identify the Federal District Court in which the Plaintiff would have filed in the absence of direct filing: Northern District of California.

**II.    IDENTIFICATION OF PARTIES**

    **A.    PLAINTIFF**

2.    *Injured Plaintiff:* Name of the individual sexually assaulted, battered, harassed, and/or otherwise attacked by an Uber driver with whom they were paired while using the Uber platform: B.L.

3.    At the time of the filing of this Amended Bellwether Complaint, Plaintiff resides at: Austin, Travis County, Texas

    **B.    DEFENDANT(S)**

4.    Plaintiff names the following Defendants in this action.

        ☑ UBER TECHNOLOGIES, INC.;[2]

        ☑ RASIER, LLC;[3]

        ☑ RASIER-CA, LLC.[4]

    **C.    RIDE INFORMATION**

5.    Plaintiff was sexually assaulted, harassed, battered, and/or otherwise attacked by an Uber driver in connection with an Uber ride in San Jose, California, on August 12, 2022.

6.    Plaintiff was the owner of the Uber account used to request the relevant ride.

7.    Plaintiff called an Uber from her aunt's house at about 3:30 a.m.

8.    Plaintiff was emotional and intoxicated.

9.    The driver was Edwin Castaneda Orozco.

10.    Mr. Castaneda Orozco had been driving for Uber for approximately one and a half months.

---

[1] *See* PTO No. 6, at II(C) (ECF 177).
[2] Delaware corporation with a principal place of business in California.
[3] Delaware corporation with a principal place of business in California.
[4] Delaware corporation with a principal place of business in California.

1      11.     When Mr. Castaneda Orozco had applied to drive for Uber, it appeared to Uber that

2      he had only been living in the United States for less than three years and he had only had a

3      driver's license for less than two years. He was, as Uber knew, 47 years old. Therefore, Uber did

4      not have access to any records related to potential criminal activity during 26 years of his 29-year

5      adulthood.

6      12.     During the ride, Plaintiff told the driver she had had a hard night and was very

7      intoxicated.

8      13.     During the ride, the driver reached into the back seat and touched Plaintiff under

9      her clothes.

10     14.     The driver digitally penetrated Plaintiff's vagina.

11     15.     Plaintiff was alarmed but she froze.

12     16.     When the car arrived at the destination (an apartment complex), the driver parked.

13     17.     Plaintiff tried to open the door, but it was locked.

14     18.     The driver walked around the car to where Plaintiff was sitting and opened the

15     door.

16     19.     The driver moved to give Plaintiff a hug. In her intoxicated state, she thought that

17     he was offering a hug because she was so emotional.

18     20.     Plaintiff hugged the driver back as she stood in the car doorway.

19     21.     When Plaintiff released the hug to move away, the driver continued holding her.

20     22.     The driver was bigger than she was.

21     23.     The driver laid Plaintiff down in the back seat of the car.

22     24.     The driver groped Plaintiff under her clothes, pulled her pants down, moved her

23     bathing suit to the side, and raped her. He inflicted vaginal and anal injuries, including an anal

24     fissure and hemorrhoid.

25     25.     Plaintiff was in shock and scared and did not move, hoping it would end soon.

26     26.     Plaintiff was also worried the driver would hurt her if she moved too much.

27     27.     The driver ejaculated inside of Plaintiff.

28     28.     The driver took a half step back, and Plaintiff pushed him aside.

SECOND AMENDED BELLWETHER COMPLAINT
MDL NO. 3084 CRB, CASE NO. 24-CV-7940

1     29.    Plaintiff took off running into the apartment complex and did not look back.

2     30.    From the time the driver arrived at the destination, at about 4:01 a.m., until he

3 departed from that location at about 4:10 a.m., Uber was receiving GPS pings from the driver's

4 phone and the Plaintiff's phone showing that they were still together at the same location. Uber

5 did not act on this information.

6     31.    The conduct described in the Master Long-Form Complaint and herein was a

7 substantial factor in causing Plaintiff to suffer economic and non-economic harm.

8 **III.    CAUSES OF ACTION ASSERTED**

9     32.    The following Causes of Action asserted in the Master Long-Form Complaint,

10 including all allegations in support, are adopted in this Amended Bellwether Complaint by

11 reference:

| Check if Applicable | Cause of Action Number | Cause of Action |
|---|---|---|
| ☑ | I | CLAIM B - NEGLIGENCE (excluding entrustment theory) |
| ☐ | II | CLAIM C - FRAUD AND MISREPRESENTATION |
| ☑ | III | CLAIM E - COMMON CARRIER'S NON-DELEGABLE DUTY TO PROVIDE SAFE TRANSPORTATION |
| ☑ | VI | CLAIM G.1 - VICARIOUS LIABILITY– EMPLOYEE |
| ☑ | VI | CLAIM G.2 - VICARIOUS LIABILITY– APPARENT AGENCY |
| ☑ | VII | CLAIM G.3 - VICARIOUS LIABILITY–RATIFICATION |
| ☑ | VIII | CLAIM H - STRICT PRODUCTS LIABILITY – DESIGN DEFECT |
| ☐ | IX | CLAIM H - STRICT PRODUCTS LIABILITY – FAILURE TO WARN |
| ☐ | X | CLAIM H - STRICT PRODUCTS LIABILITY – PRODUCTS LIABILITY ACTS |

**IV.    ADDITIONAL ALLEGATIONS IN SUPPORT OF VICARIOUS LIABILITY CLAIMS**

23     33.    Plaintiff alleges that Defendants are vicariously liable for the following intentional

24 torts committed by the driver in addition to being vicariously liable for the driver's negligence.

25     34.    **Assault**. The driver acted intending to cause harmful or offensive contact. Plaintiff

26 reasonably believed that she was about to be touched in a harmful or an offensive manner.

27 Alternatively, the driver threatened to touch Plaintiff in a harmful or an offensive manner. It

1    reasonably appeared to Plaintiff that driver was about to carry out the threat. Plaintiff did not

2    consent to the driver's conduct. Plaintiff was harmed.

3         35.    **Battery**. The driver touched Plaintiff with the intent to harm or offend her. Plaintiff

4    did not consent to the touching. Plaintiff was harmed and offended by the driver's conduct. A

5    reasonable person in Plaintiff's situation would have been offended by the touching.

6         36.    **False Imprisonment**. The driver intentionally deprived Plaintiff of her freedom of

7    movement by use of force, threats of force, and menace. The restraint compelled Plaintiff to stay

8    somewhere for some appreciable time. Plaintiff did not knowingly or voluntarily consent.

9    Plaintiff was harmed.

10   **V.    ADDITIONAL ALLEGATIONS IN SUPPORT OF RATIFICATION CLAIM**

11        37.    Local law enforcement reported Plaintiff's assault to Uber on August 13, 2022, one

12   day after it occurred.

13        38.    At least as late as July 11, 2025, Uber permitted Mr. Orozco to continue driving for

14   Uber on its platform in Colombia even though there is a warrant out for his arrest.

15   **VI.   ADDITIONAL ALLEGATIONS IN SUPPORT OF PRODUCTS LIABILITY
         CLAIMS**
16
         39.    **Gender Matching**. The Uber App was in a defective condition unreasonably
17
     dangerous to users or consumers, including Plaintiff, because the Uber app was designed with an
18
     algorithm that matched female passengers with male drivers and had no modification to allow
19
     female passengers the option to be matched only with female drivers.
20
         40.    Uber tracks the rates of sexual misconduct and assault committed by its drivers
21
     against its passengers and collects data on the gender of the driver and passenger involved in
22
     those incidents. At all relevant times, Uber was aware that the risk of sexual misconduct or
23
     assault is greater during Uber rides in which the driver is male and the passenger is female, like
24
     the ride between the driver and Plaintiff. The risk of sexual assault associated with such pairings,
25
     while known to Uber based on its internal data collection and analysis, was beyond that
26
     contemplated by the ordinary user or consumer.
27

28

SECOND AMENDED BELLWETHER COMPLAINT
                                      MDL NO. 3084 CRB, CASE NO. 24-CV-7940

41.     Uber could have, but did not, modify its matching algorithm on the backend to give female passengers the option to select female drivers. Such a modification is feasible because Uber has made such modifications in markets outside of the United States, such as Saudi Arabia. Uber has not modified the code of the matching algorithm on the backend for the version of the Uber App available in the United States market to allow for female Uber passengers, including Plaintiff, to choose gender-matched rides.

42.     Uber knew that a gender-matching option would have prevented assaults like the one suffered by Plaintiff.

43.     Had a gender-matching functionality been available, Plaintiff would have toggled it on for the ride in question.

44.     Use of the gender-matching option would have prevented her assault by her male driver because Plaintiff never would have been in the car with this driver had a gender matching functionality been toggled on and would, instead, have been paired with an entirely different person.

45.     **App-Based Ride Recording**. The Uber App was defective in its design because it could have been, but was not, designed to trigger automatic video recording of rides and the time period immediately around them, whether through using the camera already installed on a driver's cell phone during Uber trips, or through an external device linked to the App.

46.     The presence of cameras serves a deterrent function that significantly reduces and prevents sexual assault and misconduct. Even the potential for a ride to be recorded serves a deterrent function that significantly reduces and prevents sexual assault and misconduct.

47.     Uber is aware that the presence of cameras serves as a deterrent function that can and does significantly reduce sexual assault and sexual misconduct and, to that end, has explored the use of recording functionalities for the Uber App. But these recording functionalities (even if they were available during Plaintiffs' ride) are inadequately designed to address sexual assault or sexual misconduct committed by drivers against passengers.

48.     For example, Uber developers modified the code of the Uber App on the back end to allow in-app video recording by the driver. That is, when toggled on by the driver, this

SECOND AMENDED BELLWETHER COMPLAINT
MDL NO. 3084 CRB, CASE NO. 24-CV-7940

1    functionality allowed drivers to record internal footage of Uber trips using their phone's camera

2    as a dash camera.

3        49.    In addition to making the feature optional, rather than automatic, Uber coded its in-

4    app video recording functionality so that all recordings are encrypted in the Uber App and locally

5    stored on the driver's cell phone, meaning that recordings cannot be obtained by Uber, law

6    enforcement, or any third party without the express authorization of the driver.

7        50.    The result is that in-app video recording does not have any deterrent effect on

8    sexual assault or sexual misconduct by drivers against passengers because drivers exercise

9    absolute control over whether recording happens, and because drivers know that, even if the

10   technology is on, third parties cannot access the recordings.

11       51.    Had the Uber App included automatic video monitoring of rides, by definition that

12   feature would have been engaged on Plaintiff's ride.

13       52.    Automatic video monitoring would have deterred the driver from assaulting

14   Plaintiff.

15       53.    **GPS Route Discrepancy Alerts**. Using its own internal data, Uber was aware at all

16   relevant times that the risk of sexual assault or sexual misconduct was greatest when a driver goes

17   off route, when a driver stops for an unusual amount of time, or when the driver and rider stay in

18   proximity after a ride has concluded. The increased risk of sexual assault associated with these

19   route deviations as well as the prevalence of their occurrence, were risks beyond those

20   contemplated by the ordinary user or consumer, who lacked access to Uber's internal data or

21   analytics.

22       54.    The Uber App is designed to receive, track, and monitor GPS data from riders and

23   drivers at all times while using the Uber App. Uber monitors GPS data from both driver and rider

24   phones. Specifically, while in use, the Uber App ingests GPS location information and telematics

25   data from driver and rider phones, which its algorithm uses to Uber uses these data to, for

26   example, automatically direct the driver to the rider's location, and monitor the speed, braking,

27   and other driving maneuvers, as well as to predict route times.

28

SECOND AMENDED BELLWETHER COMPLAINT
                    MDL NO. 3084 CRB, CASE NO. 24-CV-7940

55.     The data Uber collects give it the capability to detect when a ride has deviated from the expected route, including when a driver goes off route, when a driver stops for an unusual amount of time, or when the driver and rider stay in proximity after a ride has concluded.

56.     Uber could have, and should have, designed the App to use the GPS technology that it already built into the app to automatically trigger safety alerts in the event of route deviations, unusually long stops, or excessive time spent with a passenger at the beginning or end of a route.

57.     An appropriately-designed GPS Alert function would have triggered an alert during Plaintiff's ride due to the excessive time spent in proximity with the driver at the conclusion of the ride.

58.     An appropriately-designed GPS Alert function would have prevented or lessened the severity of Plaintiff's assault, including by deterring the driver from engaging in the assault in the first place or summoning an intervention.

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendants for economic and non-economic compensatory and punitive and exemplary damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. At this time, Plaintiff does not seek injunctive relief, but reserves all rights to later seek such relief as appropriate under Fed. R. Civ. P. 15(b)(2) and Fed. R. Civ. P. 54(c).

**JURY DEMAND**

Plaintiff demands a trial by jury as to all claims in this action.

Dated: August XX, 2025

/s/ *Sommer D. Luther*
**WAGSTAFF LAW FIRM**
Sommer D. Luther, CO 35053
940 Lincoln Street
Denver, CO 80203
Tel: (303) 263-8949
Fax: (303) 376-6361
sluther@wagstafflawfirm.com

*Attorney for Plaintiff*