*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT STATUS REPORT FOR AUGUST 28, 2025 DISCOVERY STATUS CONFERENCE**<br><br>Judge:       Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

## JOINT STATUS REPORT

In advance of the discovery status conference set for Thursday, August 28, 2025 at 10:00 am PST, Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants" or "Uber") (jointly, "the Parties"), respectfully submit this Joint Status Report.

I.      **Documents Subject to Existing Privilege Orders**

**Plaintiffs' Position**: <u>Tranche 1 - Privilege Documents</u>. On July 22, 2025, the Court denied Uber's motion for leave to file a motion for reconsideration of the Court's April 24, 2025 order regarding documents de-designated during the period when Your Honor was overseeing privilege disputes. ECF 3545. Despite this ruling, and to Plaintiffs' prejudice, Uber persists in delaying resolution of this issue. At its core, this is about the scope of documents subject to the Court's earlier rulings: 1) Tranche 1-4 logged documents Uber did not de-designate in re-review but now claims it is entitled to claw back; 2) Tranche 1-4 logged documents Uber de-designated in part during re-review but now claims it is entitled to claw back entirely; and 3) Documents on Tranche 1-4 logs that Uber de-designated after February 6, 2025 and now seeks to clawback. Plaintiffs' position is that the Judge Cisneros's Orders required Uber to re-review all documents on its privilege logs to apply "lessons learned." This would include all documents that appeared on tranche 1-4 logs and that by failing to change their position during re-review, it waived its right to do so under the Court's orders. Uber's position is that even if documents appeared on those logs, and were subject to the Court's orders to re-review, it was still entitled to clawback documents after the re-review period ending March 10. As to documents on Tranche 1-4 logs that Uber de-designated after February 6, 2025, Plaintiffs understand Uber to argue that, because it took longer than the Court ordered to complete its tranche privilege log re-review and de-designation of documents on those logs, Uber should escape the consequences of the Court's rulings regarding the waiver of its right to clawback.

A brief history of the instant portion of this continuing dispute is illustrative. On July 23, Special Master Jones ordered the Parties provide a list, on or before July 28, 2025, of all clawback documents subject to the April 24, 2025 order and the July 22, 2025 order. Plaintiffs submitted their list of disputed documents on July 28. Plaintiffs have raised the issue of clawing back Tranche 1-4 documents post the Court-ordered re-review for months. Plaintiffs provided a list to Uber on May 5, 2025, identifying documents Uber had clawed back after the March 10, 2025, re-review deadline. On August 8, Uber requested a meet and confer to discuss the "scope" of Plaintiffs' list. Uber never submitted its own list. A conference was scheduled for August 11, which Uber cancelled with a commitment to follow up and reschedule. It never did. On August 15, Plaintiffs followed up to

1  reschedule the conference and requested additional information about Uber's "scope" issues. Rather
2  than provide such information, Uber submitted a request to Special Master Jones, seeking to defer
3  ruling on Plaintiffs' challenges to afford Uber an opportunity to appeal the Court's ruling and/or
4  respond to Plaintiffs' challenges. Plaintiffs objected. On August 18, Special Master Jones held ex-
5  parte calls with both Parties and then ordered the Parties to submit a status report by August 20.

6      On August 19, Plaintiffs again requested that Uber provide clarity on positions by identifying
7  specific documents from Plaintiffs' July 28 list with which they take issue, as well as specific
8  explanations for their concerns. Uber did not provide the requested information. Instead, during the
9  August 19 meet and confer Uber proposed general compromises but Plaintiffs had no way to
10 understand or assess without knowledge of the specific documents at issue. Following the conference,
11 Plaintiffs heard nothing from Uber on the specifics of its position until Plaintiffs, at the same time as
12 Special Master Jones, received details from Uber. In its first document-specific response, Uber,
13 without elaboration, offered to withdraw clawback assertions as to 37 documents if Plaintiffs withdrew
14 challenges to all other disputed documents. Plaintiffs rejected this proposal absent further detail and
15 information in a response to Uber and an update to Special Master Jones on August 21, 2025. Plaintiffs
16 later held another ex-parte call with Special Master Jones on August 25, in advance of a further update
17 with respect to approximately 74 documents due on August 26. Plaintiffs' position is that disputes
18 related to these documents have long been resolved by Court order and questions of whether
19 documents fall under the Court order is properly within the jurisdiction of Magistrate Cisneros. The
20 Court should not allow Uber's continued failure to comply with Court-ordered deadlines to work to
21 Uber's advantage.

22     **Defendants' Position**: Consistent with the Court's prior referral of this issue to Judge Jones,
23 the Special Master is already actively engaged with the parties and is advancing this dispute as to
24 clawback documents towards resolution. Indeed, Defendants have already submitted their position on
25 this matter to the Special Master at her request and the Special Master has requested the parties' "final"
26 positions on these documents by Tuesday, August 26. Defendants expect that the Special Master will
27 resolve the issue promptly. Accordingly, Defendants see no reason to depart from this Court's referral
28 to the Special Master for resolution of these issues.

Contrary to Plaintiffs' suggestion and as demonstrated below, over the past several weeks, Defendants have been working diligently to evaluate the documents Plaintiffs' claim are subject to the Court orders, which have ballooned in number to 112 (as compared to the 30 documents that Plaintiffs previously represented to the Court in a joint status report on this issue) (Dkt. 2823). Nevertheless, the pace of progress has accelerated in the last week, during which (1) on August 19, the Special Master held ex parte calls with each of the parties to discuss their positions on the documents at issue; (2) on August 20, Defendants both made a compromise offer to Plaintiffs (which contrary to Plaintiffs' representation included specific documents) and separately later that day submitted a detailed status report to the Special Master, identifying the specific categories of documents that they do not believe are within the scope of the Court's order and the bases for their positions; and (3) on August 22, Defendants sent an email to Plaintiffs following up on Defendants' compromise offer and reiterating their invitation for Plaintiffs to identify any documents for priority discussion and/or resolution.

Plaintiffs' most recent actions reveal that if any party is slowing resolution of this issue before the Special Master it is Plaintiffs rather than Defendants. On August 22, the parties submitted further status reports to the Special Master. Per the Special Master's earlier instruction, Plaintiffs' status report was to include their responses to the positions presented in Defendants' letter dated August 20, 2025. But Plaintiffs failed to provide those responses, as indicated by the Special Master's August 25 email to the parties, which reiterated the previous instruction: "The status report should also include plaintiffs' response to the positions presented in defendants' letter dated August 20, 2025, as applicable to the remaining disputes." This status report is due to be filed to the Special Master on August 26. Plaintiffs' claims that the pace of progress is causing them prejudice ring hollow given their own delay in responding to the Special Master with their positions (and to Uber's invitation to identify documents for priority resolution).

In other words, while Defendants remain hopeful that a compromise with Plaintiffs may be reached regarding this issue that will spare the time and resources of both the parties and the Special Master, the Special Master already has (or will soon have) the information regarding the parties' positions with respect to the documents at issue and can engage with the parties as needed to reach a ruling promptly.

## II. SRAD Table and Related Materials

**Plaintiffs' Position**: Plaintiffs' have requested certain data and tables related to SRAD, following the 30(b)(6) testimony of Sunny Wong, a Sr. Manager of Applied Science at Uber, who testified that material information about Uber's application of SRAD is "readily available" to Uber. Wong Dep. (7/23/2025) at 18:11-21:18. This includes information about Uber's application of SRAD to specific trips, including bellwether trips. *Id.* Previously, Plaintiffs had been told this information was not easily accessible and may not even exist. *See* Akamine Dep. (5/20/2025) at 399:24-402:18.

As a result of this testimony, Plaintiffs have significant concerns about Uber's responses to Plaintiffs' requests for discovery of measures Uber considered, tested, or took to prevent or deter Sexual Assault or Sexual Misconduct. In particular, Plaintiffs believe that Uber maintains, in "readily available" tables, and potentially other sources, more accurate, reliable, easily accessible, and detailed data about its Safety Risk Assessed Dispatch program than it had previously represented and produced to Plaintiffs. In light of this new information, obtained through Mr. Wong's July 23 deposition, Plaintiffs made their requests of Uber on August 11. The key issue is that, while Uber may have provided SRAD scores for the bellwether trips where available, Uber has not produced in any form the information necessary to contextualize those scores. The Parties have had one meet and confer, after which Uber provided Plaintiffs some information in response to basic, non-substantive questions. The Parties have yet to reach an agreement regarding the substance of Plaintiffs' request and continue to confer.

**Defendants' Position:** Plaintiffs' request for SRAD data is not limited in time, geography, or connection to the bellwether cases. Uber has *hundreds of billions* of SRAD records. Even just a thirty-day snapshot of one category of the requested tables would make up 84 terabytes of data. Complying with Plaintiffs' sweeping requests as written would be overbroad, unduly burdensome, and frankly infeasible.

Uber has already produced SRAD data for the bellwether trips prior to Mr. Wong's July 23 deposition. Further, Uber has quickly responded to every question posed by Plaintiffs about the remaining data, and continues to meet and confer with Plaintiffs in good faith to understand what

information they seek that is relevant to the bellwether cases so that Uber can consider whether there is a feasible way to provide it.

III. **Sunny Wong Deposition Scheduling**

**Plaintiffs' Position:** The continued deposition of Sunny Wong (case specific 30b6 regarding S-RAD) is set for September 9. Document requests and meet and confer discussions have arisen from the first session with Sunny Wong and remain ongoing. Uber has asked Plaintiffs to commit to taking no more than two hours. Plaintiffs are concerned about a last-minute time limit dispute, especially since Mr. Wong is a uniquely difficult witness, who must be asked questions repeatedly before he will give an answer.

**Defendants' Position:** Plaintiffs have had more than sufficient time with Mr. Wong, having deposed him already for 6 hours about general SRAD topics and more than 6.5 hours on case-specific SRAD topics. At the July 23 deposition, Plaintiffs spent much of their time asking out-of-scope questions and objecting to Mr. Wong's answers whenever he provided information or context beyond a one-word "yes" or "no." SRAD is a very complex machine learning program, and the majority of Mr. Wong's answers thus far have been not only responsive but critical to an accurate and non-misleading understanding of how it works. Uber has agreed to extend the deposition yet again, but requests firm parameters around what remains to be covered so that the parties do not continue re-treading old ground. When Plaintiffs rejected Uber's 2 hour parameter, Uber asked Plaintiffs on August 19 what they believe is left for Mr. Wong to cover and how long they anticipate needing, and Plaintiffs did not respond.

IV. **Discovery related to Uber's recent launch of Women Preferences Program.**

**Plaintiffs' Position:** Plaintiffs have asked Uber to confirm that it will not elicit trial testimony related to a recently launched Women Preferences program (facilitates female rider-female driver matching in certain U.S. cities). If Uber intends to elicit such testimony, Plaintiffs request supplemental productions and the opportunity to question witnesses on this topic. At this time, Uber has provided no clear response. The Parties continue to confer and will file a joint brief if needed.

**Defendants' Position:** Plaintiffs raised this issue for the first time with Defendants' counsel after 6:00 pm ET on the date of this filing. Plaintiffs first added it as an issue to be included in this

JSR after 10:00 pm ET on the date of this filing, leaving no meaningful opportunity to respond. Defendants object to Plaintiffs' misuse of the JSR process established by the Court and their flagrant disregard of timelines agreed by the parties for the identification and exchange of topics, conferral on those topics, and exchanges of drafts for the joint filing. As there has been no opportunity to meet and confer on this newly raised, eleventh-hour issue, there is no issue ripe for adjudication.

### V. Deposition Scheduling Updates

**Joint Statement**: Attached as Exhibit A is a chart listing completed and upcoming depositions.

### VI. Pending PTO 8 Disputes

**Joint Statement:** The following PTO 8 briefs are currently pending before the Court: (1) Joint Letter Regarding Defendants' Production of Sexual Assault and Sexual Misconduct Incident Data (ECF 3700); and (2) Joint Letter Regarding Sanctions for Misconduct by Plaintiffs and Counsel (ECF 3669). The Parties will be prepared to discuss these Joint Letters at the Discovery Status Conference.

### VII. Bellwether Plaintiff Case-Specific Discovery

#### A. B.L. – Deposition of Health Care Provider.

**Defendants' Position**: Uber writes to notify the Court about delay and gamesmanship related to scheduling of clearly relevant fact depositions in the B.L. case which has had impacts of Uber's ability to prepare its expert defense in this case. Specifically, since July 7, Uber has been following up with Plaintiffs to have a deposition set with Plaintiff's colorectal surgeon Dr. Fleegler. This deposition is highly relevant for Plaintiff's alleged damages, because Plaintiff alleges that in May 2025, Dr. Fleegler repaired an anal fissure, which Plaintiff claims was caused by the alleged assault by her Uber driver (which allegedly took place nearly three years prior). Despite being in contact with Dr. Fleegler and her counsel, Plaintiff's counsel both refused to provide any dates for Dr. Fleegler's or provide counsel from Uber with contact information for Dr. Fleegler's counsel until August 20, the day Defendants identified this issue as a topic for the Joint Status Report. While Uber is now working with counsel for Dr. Fleegler to get this deposition scheduled, it is troubling that Plaintiff delayed in acting on Uber's repeated requests to arrange this deposition, all of which has directly impacted Uber's ability to prepare its expert defense in this case. As a result, Uber reserves the right to extend Defendants' expert deadline in the B.L. case due to what appears to be scheduling gamesmanship on

1  Plaintiff's part.

2  **Plaintiffs' Position:** There is no gamesmanship on Plaintiff's part. For inexplicable reasons, Uber waited until July 7, 2025 to request the deposition of Dr. Fleeger and now complains that the delay in scheduling Dr. Fleeger's deposition is the fault of the Plaintiff. Not so. Dr. Fleeger is a colon and rectal surgeon at Texas Oncology. It is believed that Texas Oncology operates close to 300 facilities in the State of Texas. Upon receiving Uber's delayed request for deposition, Plaintiff contacted Dr. Fleeger's office and left a message regarding the request. That same day, Plaintiff received a return call from Dr. Fleeger's office indicating that the message had been received, and the call would be returned. On July 9, 2025, Dr. Fleeger indicated that the deposition request should go through the legal department. Between July 10, 2025 and July 15, 2025, Plaintiff's counsel made 7 attempts to contact the Legal Department (1 message on July 10, 2025; 4 messages on July 11, 2025; 1 message on July 14, 2025, and 1 message on July 15, 2025). On July 21, 2025, Plaintiff's counsel reached out to the General Counsel for Texas Oncology, finally receiving a response and providing said counsel with a copy of Uber's Notice of Deposition and Subpoena. On July 30, 2025, Plaintiff's counsel received an email communication from an attorney representing Dr. Fleeger, advising that the attorney would be in trial during the week of August 4, 2025, but would follow up the week after. On August 13, 2025, Plaintiff obtained additional information during a telephone call with Dr. Fleeger's counsel and on August 20, 2025, Plaintiff sent a joint email to Dr. Fleeger's counsel and Uber to schedule the deposition. Importantly, the Parties have been informed that Dr. Fleeger has been out of the country, with limited access to email, and will be returning on August 25. On August 25, 2025, the Parties agreed to schedule Dr. Fleeger's deposition for September 3.

B.  **B.L. – Document Preservation Verifications.**

**Defendants' Position**: As part of the last Joint Status Report, Uber raised an issue regarding Plaintiff's improper privilege objections related to document preservation in the B.L. and LCHB128 cases. During the July 25, 2025 Discovery Status Conference, the Court provided its preliminary assessment that "some of these instructions not to answer appear improper" and Uber notified the Court that Plaintiff's in both B.L. and LCHB128 had agreed to provide Uber with verified statements related to their preservation efforts. While LCHB 128 has provided such a statement (which the parties

continue to meet and confer on), counsel in B.L. waited for nearly a month to provide any documentation of Plaintiff's preservation obligations, first giving Uber a draft on August 20, after Uber identified this issue as a topic for this Joint Status Report. Because Uber has only just received this information, which Plaintiffs agreed to provide over a month ago, Uber has been unable to confirm whether the provided statement is adequate and reserves its right to re-raise this issue with the Court.

**Plaintiffs' Position:** Both B.L. and her counsel have provided Declarations to Uber that establish that both B.L. and her attorneys took consistent, documented, and comprehensive measures to preserve and produce relevant electronic evidence, while highlighting concerns about defense counsel's misuse of sensitive material. On August 20, 2025, Plaintiff's counsel produced a Declaration detailing the steps taken to enforce B.L.'s preservation duties, including sending written notices, repeated discussions regarding obligations, hiring experts to extract ad review social media and text data and producing 34 page of social media and 29 pages of text messages. Further, on August 21, 2025, Plaintiff's counsel produced a Declaration from B.L. describing her receipt of preservation notices and monthly reminders from her attorneys, following instructions to prevent deletion of data, and working with expert consultants and her attorneys to extract and revie her phone, email and social media records (Snapchat, Instagram, LinkedIn, TikTok, Meetup) to ensure complete preservation and production. Plaintiff's counsel remains available to meet and confer as needed.

C. **WHB 823 – Medical Records.**

**Defendants' Position:** Defendants requested documents from the Plaintiff's former medical provider, Old Vineyard Behavioral Health Services, on August 6, 2025. On August 14th, 2025, Plaintiff's counsel withheld all documents from this medical provider on the grounds of scope, relevance, "right to privacy," PII, and the fact that WHB 823 was a minor at the time. Given that Plaintiff is alleging here that she is suffering from PTSD and other medical issues due to the alleged incident, records related to her mental health and potential traumas she suffered (regardless of whether those occurred when she was a minor) are directly relevant to her alleged damages in this case. After Defendants raised this issue, Plaintiffs produced a version with modified, but still overbroad redactions. The parties intend to meet and confer on this and will raise any disputes with the Court through a PTO 8 letter brief.

**Plaintiffs' Position:** Plaintiff WHB 823 reproduced medical records with modified redactions on August 21, 2025. Plaintiffs have offered to meet and confer with Uber regarding these modifications should that be necessary.

### VIII. Plaintiff Fact Sheets and Ride Receipt Update

**Defendants' Position**: In the last 90 days, Defendants have sent nearly 1,700 plaintiffs a PFS deficiency notice. While some plaintiff firms have taken affirmative action by submitting amended productions in an attempt to cure the deficiencies in their plaintiffs' submissions, almost 25% of the amended submissions Defendants have reviewed to date remain deficient. Moreover, more than 560 plaintiffs who have received a deficiency notice have failed to respond altogether within 30 days of receipt. The table below highlights the plaintiff firms that are working to satisfy their Court-ordered obligations as well as those that continue to disregard this Court's orders.

| Plaintiff Law Firm Name | Plaintiffs Controlled Per Firm | % of Inventory with a Deficient PFS | % of Inventory with Uncured PFS Deficiencies 30 Days Post Notice | % of Inventory with No Ride Receipt | % of Inventory with Not Substantiated Ride |
|---|---|---|---|---|---|
| **MDL (all plaintiffs)** | **2,525** | **33.15%** | **24.12%** | **27.41%** | **19.37%** |
| Williams Hart & Boundas, LLP | 458 | 6.33% | 4.15% | 37.55% | 29.69% |
| Peiffer Wolf Carr Kane Conway & Wise | 427 | 29.04% | 13.82% | 16.63% | 7.73% |
| Levin Simes, LLP | 379 | 73.61% | 65.70% | 29.82% | 19.79% |
| Nachawati Law Group | 218 | 17.43% | 13.76% | 49.08% | 40.83% |
| Cutter Law PC | 195 | 38.46% | 33.33% | 57.44% | 30.26% |
| Pulaski Law Firm, PLLC | 168 | 39.29% | 31.55% | 4.17% | 13.69% |
| Chaffin Luhana LLP | 113 | 15.04% | 1.77% | 0.00% | 12.39% |
| Kherkher Garcia | 87 | 37.93% | 19.54% | 28.74% | 19.54% |
| Slater Slater Schulman LLP | 57 | 0.00% | 0.00% | 0.00% | 0.00% |
| Lieff Cabraser Heimann & Bernstein, LLP | 30 | 33.33% | 23.33% | 10.00% | 6.67% |

The deficiencies Defendants have identified (and that remain uncured) across a significant portion of the docket continue to prejudice Defendants' ability to assess the merits of these Plaintiffs' claims. While Defendants appreciate that Plaintiffs' counsel—like Defendants and its counsel—are preparing for trial, that does not excuse Plaintiffs (any more than it excuses Defendants) from

satisfying their discovery obligations. Like any other counsel, Plaintiffs' counsel must assign appropriate resources and supervise cases to comply with this court's orders. *See, e.g., Holley v. Gilead Sciences, Inc.*, No. C-18-6972 JST (N.D. Cal. Jan. 21, 2021), Tr. at 12:13-24 (***"It is just a fact in cases like that are not class actions. You have 1,000 clients, roughly. You have 1,000 clients with 1,000 individual cases. You're going to have to litigate a thousand individual cases. There it is. That's a burden you willingly accepted because you thought it was a good strategy and, because you're a profit-making enterprise, you thought you would make more money that way, I guess."***). Moreover, the staggering number of Plaintiffs that have failed to produce a ride receipt and whose rides Defendants remain unable to substantiate cast serious doubt not only on the validity of those Plaintiffs' claims but on the validity of Plaintiffs' claims across the litigation as a whole, particularly in light of Uber's Fraudulent Receipts Motion which includes 21 Plaintiffs identified by Uber to date. *See* ECF 3604.

Contrary to Plaintiffs' assertion that many of the alleged PFS deficiencies that are the subject of Defendants' Deficiency Notices are not material, on August 22, 2025, Defendants' moved to dismiss 179 plaintiffs' cases based on several categories of material PFS deficiencies, including failure to submit a Court-ordered PFS verification, failure to submit Court-ordered record release authorizations, and failure to submit Court-ordered supporting documentation. *See* ECF 3731. Defendants' motion only concerns a few of the categories of material PFS deficiencies identified by Uber to date and Defendants will continue to seek dismissals in the coming weeks and months.

Defendants also reserve the right to seek an additional case management order or additional non-bellwether discovery to address Plaintiffs' failure to meet their Court ordered obligations.

**Plaintiffs' Position:** Plaintiffs continue to work with Uber to address alleged deficiencies in Plaintiff Fact Sheets and Ride Receipts/Ride Information Forms in compliance with PTO 10 and PTO 5, respectively. Individual law firms are meeting and conferring to resolve the alleged deficiencies. Of note, many of Uber's alleged PFS "deficiencies" are not material and do not warrant PFS amendments, per PTO 10. Individual counsel will continue to meet and confer with Uber and supplement PFS as needed, as well as working with Uber to confirm rides, pursuant to PTO 5. These issues are being addressed and are not ripe for the Court.

| | |
|---|---|
| By: */s/ Roopal Luhana* <br> ROOPAL P. LUHANA *(Pro Hac Vice)* <br> **CHAFFIN LUHANA LLP** <br> 600 Third Avenue, Fl. 12 <br> New York, NY 10016 <br> Telephone: (888) 480-1123 <br> Email: luhana@chaffinluhana.com <br><br> SARAH R. LONDON (SBN 267083) <br> **GIRARD SHARP LLP** <br> 601 California St., Suite 1400 <br> San Francisco, CA 94108 <br> Telephone: (415) 981-4800 <br> Email: slondon@girardsharp.com <br><br> RACHEL B. ABRAMS (SBN 209316) <br> **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP** <br> 555 Montgomery Street, Suite 820 <br> San Francisco, CA 94111 <br> Telephone: (415) 426-5641 <br> Email: rabrams@peifferwolf.com <br><br> *Co-Lead Counsel for Plaintiffs* | By: */s/ Christopher Cox* <br> **KIRKLAND & ELLIS LLP** <br> ALLISON M. BROWN <br> JESSICA DAVIDSON <br> LAURA VARTAIN <br><br> **SHOOK, HARDY & BACON L.L.P**. <br> MICHAEL B. SHORTNACY <br> PATRICK L. OOT, JR. <br> CHRISTOPHER V. COTTON <br> ALYCIA A. DEGEN <br><br> **O'MELVENY AND MYERS LLP** <br> SABRINA H. STRONG <br> JONATHAN SCHNELLER <br><br> *Attorneys for Defendants* <br> UBER TECHNOLOGIES, INC., <br> RASIER, LLC, and RASIER-CA, LLC |

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: August 25, 2025

By: */s/ An Truong*
An Truong
Simmons Hanly Conroy LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ An Truong*
An Truong
Simmons Hanly Conroy LLP