1  [Submitting counsel below]

UNITED STATES DISTRICT COURT

OF NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**<br><br>This Document Relates to:<br><br>ALL ACTIONS | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ENFORCEMENT OF THE PROTECTIVE ORDER**<br><br>Judge:  Honorable Lisa J. Cisneros<br>Date:   August 28, 2025<br>Time:   10:30 A.M.<br>Corm.:  G-15th Floor (zoom)<br><br>**REDACTED** |

# INTRODUCTION

Uber's motion to enforce the protective order should be denied. Uber has not demonstrated MDL counsel violated the order.

MDL Plaintiffs' Co-Lead Counsel have no knowledge of any transmission of confidential material to the New York Times. London Decl. ¶¶ 2-3. Co-Lead Counsel asked the PSC to report to them any knowledge of confidential material sent to the New York Times; no knowledge was reported. *Id.* ¶¶ 4-5. Co-Lead Counsel made the same ask to all counsel; no knowledge was reported. *Id.* ¶¶ 6-7. Co-Lead Counsel acknowledged Uber's concerns, conducted an appropriate investigation, and have no knowledge of the identity of any individual who transmitted confidential information to the New York Times. That should end the matter.

The most that Uber establishes is that it suspects someone transmitted the JCCP summary judgment opposition and its compilation of exhibits to the New York Times. Uber strains to tie the alleged disclosure to MDL counsel by citing certain deposition transcripts and exhibits, but fails to do so persuasively. Uber should raise its concerns regarding violation of the JCCP protective order in connection with JCCP court filings in the proper forum—the JCCP.

Should the Court grant Uber relief, the order should be tailored to be more reasonable and less burdensome. This Court should order certifications only from the PSC, the attorneys responsible in this MDL for using common work product. To the extent Uber's motion targets conduct in the JCCP by attorneys who happen to have a handful of MDL cases, such broader relief should be sought in the JCCP. Uber's proposal is also unduly burdensome in requiring individual affirmative responses from every attorney, staff member, client, and third party before any certification can be made. Counsel are officers of the Court and should be trusted to conduct reasonable investigations and certify accordingly.

For these reasons, the Court should deny Uber's motion or grant only more limited relief.

# BACKGROUND

On July 31, the JCCP held a hearing on Uber's motion for summary judgment in the impending bellwether trial cases. At the end of the hearing, Uber's counsel alerted the JCCP court that it appeared the New York Times had received confidential documents related to the litigation

and Uber, and that Uber had determined plaintiffs' counsel were to blame: "[W]e cannot conceive of another source." Ex. A at 35-36. Uber reported to Judge Schulman that it "intend[ed] to serve … subpoenas on plaintiffs' counsel to understand whether to what extent the information that was supplied to the New York Times – how it was there, how it got to them." *Id.* at 36. Judge Schulman rejected Uber's fishing expedition:

> I did read in at least two of the motions before me of Uber's concerns that confidential information has been leaked or maybe leaked to the press.
>
> This is the first I'm hearing of some kind of concrete evidence of that. I'm not quite sure why you're bringing it to my attention. I am not going to allow discovery of counsel. That is not what we're here for. You all have plenty of discovery to do of parties and third-party witnesses and expert witnesses.
>
> Counsel have represented to me that they take their responsibilities seriously and that they are complying with the protective order, and I take them at their word. If you want to bring this up privately with counsel, you're free to do that, but there's far too much to do here to have a lawyer start fighting among themselves. Absent some evidence that somebody has violated the protective order, which I will take seriously, this is not the way to go about prosecuting this litigation or defending it.

*Id.* at 37-38.

Rebuffed by Judge Schulman, Uber turned to the MDL. *See* Primo-Hopkins Decl., Ex. 4 (Letter to MDL Co-Lead Counsel). MDL Co-Lead Counsel responded the next business day indicating that they took Uber's claims seriously and were looking into the issues raised. *Id.*, Ex. 5. Co-Lead Counsel promptly directed the PSC, and then all counsel, to inform the Co-Leads of any knowledge they had of transmissions of confidential information to the New York Times. London Decl. ¶¶ 4-7. Counsel then promptly informed counsel for Uber that "[t]o the best of our knowledge, the PSC has complied with its obligations under the Protective Order and has not disclosed confidential information to the New York Times." Primo-Hopkins Decl., Ex., 10. That was and remains true. London Decl. ¶¶ 2-3.

Unsatisfied, Uber then demanded certifications from "every firm that had access to the relevant documents" reporting that every individual in or connected to those firms affirmatively denied communicating with the New York Times. Primo-Hopkins Decl., Ex. 14. Despite MDL Co-Lead Counsel's expressed openness for further dialogue, *id.*, Ex. 16, Uber filed this motion against *all* MDL counsel.

# ARGUMENT

## I. Uber has the burden to show why the Court should order further investigation or certifications.

Uber does not propose any legal standard the Court should apply when considering whether to order an investigation to ensure compliance with Court order. The only case Uber cites involved an actual, proven violation of a protective order. *See Apple Inc. v. Samsung Elec. Co., Ltd.*, 2013 WL 9768650, at *1 (N.D. Cal. Oct. 2, 2013) (noting undisputed facts that outside counsel sent "Attorney Eyes' Only" material to their client). Other cases decline to order relief based on one party's suspicions. *See In re eBay Seller Antitrust Litig.*, 2010 WL 2106004, at *2 (N.D. Cal. May 25, 2010) (denying relief for asserted violations of protective order based on the defendant's "suspicions" where "it is not clear whether an actual violation occurred here"); *Fla. Ex rel. Butterworth v. Jones Chem., Inc. (Fla.)*, 1993 WL 388645, at *3-4 (M.D. Fla. Mar. 4, 1993) (same, where defendants' "suspicions" were based on limited "evidence").

Uber asks the Court to order an investigation, certification, and then unspecified "further investigations, discovery, or proceedings" based on the finding that the "protective order has been violated." Mot. at 15; ECF 3695-1 (proposed order). Respectfully, that is insufficient. Counsel are officers of the Court and are presumed to know and comply with their obligations under Court orders and the rules of professional conduct. That is why courts do not ordinarily require investigation into and certification of compliance with Court orders. At minimum, the Court should require Uber to prove that *MDL counsel*—not "someone" and or even "some plaintiff's lawyer"—disclosed confidential information.

## II. Uber does not show that MDL counsel violated the protective order.

Uber asked MDL Co-Lead Counsel to certify that they were not involved in disclosing confidential information to the New York Times, and to investigate whether others were involved. Primo-Hopkins Decl., Ex. 4. MDL Co-Lead Counsel did so, including asking members of the PSC and all counsel to report any such knowledge: none did. London Decl. ¶¶ 2-7. Uber derides Co-Lead Counsel's statements as "carefully crafted" and "danc[ing] around the issue," Mot. at 10, but those statements are direct and probative evidence that MDL counsel complied

with the protective order. Uber cites no case requiring further investigation or certification.

### III. Uber shows only that it believes someone disclosed a JCCP court filing, a concern properly directed to the JCCP.

At bottom, all Uber can show is that it matched portions of the NYT article to components of a summary judgment opposition filed in the JCCP, while disregarding that article's reliance on "interviews with more than a dozen current and former employees" as well as "internal documents" distinct from "court records." Vartain Decl., Ex. 1. From those snippets, Uber concludes the Court should order an investigation of MDL counsel and certification, followed by unspecified discovery. Uber's analysis is flawed.

#### A. Uber's motion concerns alleged disclosures of confidential material assembled and filed in the JCCP.

Uber's motion is about a JCCP filing. At times, Uber admits this: "[T]hese opposition materials were very likely provided to the *Times* as a single set of sealed, collected documents." Mot. at 11. And Uber's declarations report its own investigation into whether someone internal disclosed the "compilation of sealed documents/exhibits … submitted in connection with Plaintiffs' summary judgment opposition in the JCCP." *E.g.*, Vartain Decl., Ex. 2. Perhaps recognizing that a motion to this Court based on JCCP filings is misdirected, Uber strains to tie the alleged disclosure to MDL counsel. These efforts fail.

*First*, Uber says that "details that the reporter" had "appear to come from" a "confidential document that was hyperlinked to" an exhibit used in the July 23, 2025, deposition of Hannah Nilles. *Id.* at 8. This attempt to implicate MDL counsel falls apart under even modest scrutiny. The exhibit at issue (No. 1731) ███████████████████████████████
███████████, and Uber does not point to any other exhibit in that deposition (or elsewhere) that contains the details. Ex. B. Further, ████████████████████████
████████████████████████████ *Id.* ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████. London Decl. ¶ 11; *see* ECF 524 (requiring hyperlink metadata). ████████████████████

1   [REDACTED]. Uber's claim that
2   Plaintiffs' use of this exhibit for a few minutes in a deposition somehow proves they leaked a
3   *different* document to the New York Times is implausible.
4       *Second*, Uber says that "quoted language" in the email from the reporter "comes from
5   [Rachel] Holt's December 12, 2024 deposition." Mot. at 9. Uber does not mention that Ms. Holt's
6   deposition was taken by *JCCP counsel*, with no involvement by the MDL. Ms. Holt was
7   separately deposed by MDL counsel on April 9, 2025. Uber does not suggest that any testimony
8   or information from MDL Plaintiffs' deposition of Ms. Holt was used in the article. This
9   example, too, does not tie MDL counsel to any unauthorized disclosure.
10      **B.   Concerns about disclosure of JCCP material should be heard by the JCCP.**
11      Because Uber's motion is based on an asserted unauthorized disclosure of JCCP material,
12  it should have been filed in the JCCP. To be sure, the MDL protective order covers discovery
13  produced simultaneously in both the MDL and the JCCP. But the MDL protective order does not
14  address the sealing or appropriate use of JCCP court filings. And Uber points to zero evidence
15  that any confidential material was disclosed by MDL counsel in particular.
16      Practical reasons also support Uber directing its request for relief to the JCCP, not to the
17  MDL. For example, MDL Co-Lead Counsel are charged with "coordination of the plaintiffs'
18  pretrial activities," including "the authority and duty to coordinate and oversee the PSC's
19  responsibilities." PTO 4 at 2, 4. The Court "intend[ed] and expect[e]d that," within reason,
20  "pretrial proceedings shall be conducted by and through the PSC." *Id.* at 5. But MDL Co-Lead
21  Counsel do not know the distribution of sealed JCCP filings; only the filing parties and the JCCP
22  know that. It would be passing strange for this Court, with the assistance of Court-appointed
23  Plaintiffs' leadership, to investigate an unauthorized disclosure of a document compiled and
24  distributed under the auspices of a different court. In addition, Judge Schulman has before him a
25  pending motion to seal the allegedly disclosed material, so he is in the best position to decide
26  whether a violation occurred and, if so, the appropriate consequences.
27      Indeed, it seems so obvious that this motion should have been filed in the JCCP, one
28  might conclude that Uber, discouraged by Judge Schulman's lukewarm reaction to its plan, is

judge-shopping. The Court should not reward such tactics. *See Hernanez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) ("Judge-shopping clearly constitutes conduct which abuses the judicial process.") (citation omitted).

IV.   **Uber's proposal is overbroad, vague, and unreasonably burdensome.**

Should the Court determine relief is justified, Uber's proposal should be narrowed to address four ways it is overbroad or vague.

**Overbroad set of law firms**. During meet and confer, Uber sought relief only from firms with access to the JCCP filings. But its motion seeks relief from all MDL counsel. Neither approach makes sense. To the extent the Court entertains the motion, relief should be limited to the PSC, i.e., the firms with access to Uber's document productions, taking the depositions, and otherwise actively using confidential material on a daily basis. It makes little sense for the Court to order an investigation into random firms for their conduct in connection with entirely different proceedings in state court solely because, by happenstance, they have one or MDL cases filed in the MDL. Any such investigation should be ordered and supervised by the JCCP.

**Unduly burdensome certification**. Uber's motion asks that each firm certify that no one at their firm (or clients or agents) provided JCCP filings to the New York Times. But the company's proposed order goes much further, requiring certification that every individual who "may" have had access to the confidential material provide affirmative confirmation of no disclosure. The Court should permit certification based on knowledge after reasonable investigation without allowing Uber to micromanage that investigation. (During meet and confer after Uber filed its motion, Uber's counsel expressed openness to this modification.) Counsel are officers of the Court and should be trusted to conduct reasonable investigations and certify accordingly.

**Redundant contact of third parties**. Any order should clarify that a firm need not contact a contractor, consultant, or expert if the person signing the certification knows that another firm is contacting that third party. (During meet and confer after Uber filed its motion, Uber's counsel expressed openness to this modification.)

**Lack of clarity concerning certification**. Uber's proposed order does not make clear

what a firm is supposed to do after signing a certification. The Court should decide whether certifications are to be submitted to the Court or just to counsel.

## CONCLUSION

For these reasons, Uber's motion to enforce the protective order should be denied, or relief appropriately limited.

Dated: August 27, 2025                         Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

## FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: August 27, 2025                  By:   */s/ Andrew R. Kaufman*
Andrew R. Kaufman