# EXHIBIT A

Transcript of Proceedings

July 31, 2025

In re: Uber Rideshare Cases



```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                      COUNTY OF SAN FRANCISCO

 3     BEFORE THE HONORABLE ETHAN P. SCHULMAN, JUDGE PRESIDING

 4                       DEPARTMENT NUMBER 304

 5                            ---oOo---

 6    COORDINATION PROCEEDING            ) No. CJC-21-005188
      SPECIAL TITLE (Rule 3.550)         )
 7                                       )
      In Re Uber Rideshare Cases         )
 8                                       )
                                         )
 9    _____  )

10

11

12

13

14

15                REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                      Thursday, July 31, 2025

17

18

19

20

21

22    Stenographically Reported By:

23    Peggy Tsujimoto, RPR, CSR No. 5229

24    Job No. 10168666

25
```

```
 1                MS. CUTTER:  Yes.
 2                THE COURT:  And everything else would not?
 3                MS. CUTTER:  That is our proposal.
 4                THE COURT:  As to that exhibit?
 5                MS. CUTTER:  Correct.
 6                THE COURT:  Let me ask you all to sweep that
 7   into your meet and confer.  And if you can agree on it,
 8   great.
 9                MR. PREMO-HOPKINS:  Will do, Your Honor.  I
10   will say that I'm happy to talk to plaintiffs about
11   that.  This is the first time that I heard this
12   proposal, but we are happy to include that in what
13   we're discussing.
14                MS. CUTTER:  The same issue with respect to
15   plaintiff's Exhibit 239 and 245, which are duplicates,
16   but there's only one paragraph of those exhibits which
17   talks about dash cams.  I think that is the only
18   portion which should be sealed.  It's paragraph 4 or
19   bullet point 4 of those emails.
20                THE COURT:  Okay.
21                MS. CUTTER:  Thank you, Your Honor, for your
22   patience.
23                THE COURT:  Thank you.
24                MR. PREMO-HOPKINS:  Your Honor, before we move
25   off of issues related to confidentiality and sealing, I
```

1    wanted to alert Your Honor to an emerging issue.  On
2    July 30th -- and it relates to Your Honor's question
3    particularly with regard to the Court and trial being
4    public and the press.
5              Your Honor, Uber received a lengthy email from
6    the New York Times on July 30th asking questions and
7    quoting in detail from documents that we understood
8    were produced as part of this litigation.
9              Given the contents of what we received, Your
10   Honor, we have concerns that there may be -- we don't
11   know, but there may have been documents subject to a
12   protective order that were supplied to the New York
13   Times.
14             I have an email from the New York Times, Your
15   Honor, if you would like a copy of it to see.  Your
16   Honor, the email says they reviewed thousands of pages
17   of internal Uber documents, and it includes specific
18   quotes from documents and from deposition testimony,
19   including issues that we have talked to Your Honor
20   about today, particularly with regard to the sealing
21   orders, whether that's initiatives that were unlaunched
22   or computer algorithms and how those computer
23   algorithms work.
24             It was both surprising and troubling, Your
25   Honor, to get that outreach from a media outlet, given

```
 1   the -- not because there was outreach from a media
 2   outlet, but because of the content of the outreach and
 3   the level of specificity and detail that was provided,
 4   Your Honor, and I have some examples, but I think all I
 5   wanted to make Your Honor aware of is that the issue
 6   has arisen.
 7            We take Your Honor's protective order very
 8   seriously.  And the concern is that prior to any of
 9   Your Honor's rulings on sealing that there were
10   documents that were confidential otherwise subject to a
11   protective order that somehow wind up in the hands of
12   the New York Times.
13            And with regard to Uber, we are not aware of
14   any other source of those pieces of information other
15   than being supplied through this litigation.  I want --
16   the reason I'm bringing it to Your Honor's attention is
17   that we intend to serve very narrow, very tailored
18   subpoenas on plaintiffs' counsel to understand whether
19   and to what extent the information that was supplied to
20   the New York Times -- how it was there, how it got to
21   them.
22            We have done the diligence that we can do in
23   the last 36 hours, Your Honor, since the request came
24   in.  Frankly, we cannot conceive of another source.  It
25   may be that there is, but what we would like to do,
```

```
 1   Your Honor, is to be able to make sure we understand
 2   how those documents got to be in the possession of the
 3   New York Times so that we can understand whether and to
 4   what extent next steps need to be taken with regard to
 5   Your Honor's orders.
 6            THE COURT:  Okay.
 7            MR. CUTTER:  Your Honor, counsel is new to the
 8   litigation, so perhaps doesn't understand that we have
 9   a procedure here.  This is the first we have heard of
10   it.  If they want to meet and confer with us about it
11   and set IDC, they certainly can.
12            We, for example, identified a serious breach
13   by Kirkland in a deposition this week, and we haven't
14   brought it to the Court.  We've met and conferred and
15   have written a letter about it.  That would be the
16   first procedure.
17            I assure you that we all on this side of the
18   table take our responsibilities of the protective order
19   seriously.
20            THE COURT:  I did read in at least two of the
21   motions before me of Uber's concerns that confidential
22   information has been leaked or maybe leaked to the
23   press.
24            This is the first I'm hearing of some kind of
25   concrete evidence of that.  I'm not quite sure why
```

```
 1   you're bringing it to my attention.  I am not going to
 2   allow discovery of counsel.  That is not what we're
 3   here for.  You all have plenty of discovery to do of
 4   parties and third-party witnesses and expert witnesses.
 5           Counsel have represented to me that they take
 6   their responsibilities seriously and that they are
 7   complying with the protective order, and I take them at
 8   their word.
 9           If you want to bring this up privately with
10   counsel, you're free to do that, but there's far too
11   much to do here to have a lawyer start fighting among
12   themselves.  Absent some evidence that somebody has
13   violated the protective order, which I will take
14   seriously, this is not the way to go about prosecuting
15   this litigation or defending it.
16           MR. PREMO-HOPKINS:  Understood, Your Honor.
17   To the extent we need to take any steps, we can connect
18   with the plaintiffs on that.  And if anything needs to
19   be submitted to Your Honor, we will do that with
20   appropriate procedure.  Thank you.
21           THE COURT:  Thank you.  We got through the
22   motions much more quickly than I had expected.
23           Would you like a break now?
24           CERTIFIED REPORTER:  Any time Your Honor feels
25   a break is good, I'm good with that.
```

1           THE COURT:  We are at a natural breaking point
2    here.  The court reporter certainly deserves a break.
3    It is 2:20.  Why don't we take about ten minutes and
4    resume at 2:30 and get into the hard part of the
5    hearing, which is all the scheduling.
6           (Recess taken from 2:21 to 2:31 p.m.)
7           THE CLERK:  Please remain seated and come to
8    order.  Court is now back in session.
9           MR. PREMO-HOPKINS:  Briefly just on the last
10   topic that we addressed, I understood and heard Your
11   Honor with regard to subpoenas.  What I can represent
12   to Your Honor is that the correspondence from the New
13   York Times includes information that I think can only
14   be from protected materials.
15          So I want to comply with Your Honor's wishes,
16   but in order to understand how and who, if anyone,
17   created an issue with Your Honor's protective order, I
18   just want to make sure we understand.  If I can't find
19   out who sent information to the New York Times, I
20   understand Your Honor is taking the representation of
21   Mr. Cutter here, and I don't want to impugn that or
22   suggest in any way that there is a problem there.
23          All I know is I have a set of stuff that was
24   protected that is in the hands of someone who shouldn't
25   have it.  And without some mechanism to figure out how

1  that occurred, Your Honor, it feels like we're stuck
2  and unable to take the protections of the protective
3  order seriously at this point.
4            THE COURT:  What are you asking me to do?
5            MR. PREMO-HOPKINS:  Your Honor, I think I
6  would make sure that at this point in time that I think
7  we're going to be filing a motion of some sort.  I'm
8  not exactly sure how it will be styled, put at some
9  point, there has to be a judicial mechanism whereby my
10 client can understand that Your Honor's protective
11 order was complied with, and I hear Mr. Cutter.
12           Again, I am not -- all I know is that I've got
13 a reporter quoting to me documents that were protected
14 material, and I have no other information with regard
15 to how they could have gotten them.  I only know the
16 people who I gave them to -- my client gave them to.
17 That was as part of this litigation.
18           In order to ensure that we can do that, Your
19 Honor, I just would -- if I can't serve a subpoena or
20 Your Honor is telling me I shouldn't serve a subpoena,
21 I'm wondering if Your Honor has anything in mind with
22 regard to the process for figuring this out.
23           THE COURT:  Counsel, it's up to you in the
24 first instance to figure out what you want to do.  I
25 strongly suggest that you meet and confer with counsel.

```
 1  I would fully expect that they will make the same
 2  representation to you that they have made to me, but if
 3  you want to hear it from them and insist that each firm
 4  go through that process, that's up to you, but what I'm
 5  telling you is at least as a first option, your option
 6  is not to start serving subpoenas on opposing counsel.
 7          You're going to need to think about, after you
 8  have met with your friends across the aisle here, what,
 9  if anything, you want to do, and then you bring it to
10  me, and that's the way the process works.
11          MR. PREMO-HOPKINS:  Thank you, Your Honor.
12          THE COURT:  I don't advise you on what to do.
13          MR. PREMO-HOPKINS:  Thank you, Your Honor.
14          THE COURT:  Sometimes I advise you on what not
15  to do.
16          MR. CUTTER:  I would just like to add, Your
17  Honor, that before counsel stands up in court and
18  accuses us of violating the protective order, I would
19  like to see a representation that they have
20  investigated their 30,000 employees as potential
21  sources of these documents.
22          THE COURT:  Look, Mr. Cutter, this is exactly
23  why I didn't want to get into this today.  This is not
24  constructive.
25          MR. CUTTER:  Understood, Your Honor.
```