Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**REPLY IN SUPPORT OF MOTION FOR ENFORCEMENT OF THE PROTECTIVE ORDER**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Date:        August 28, 2025<br>Time:       10:30 a.m.<br>Courtroom: G – 15th Floor |

Uber's Motion for Enforcement of the Protective Order (ECF 3695, the "Motion") seeks a certification *from each and every MDL Plaintiff's firm*—all of whom are subject to this Court's Protective Order—that they were not involved in communicating Protected Material to the *New York Times*, and that they have no knowledge of who was involved. The three MDL Leadership firms (Girard Sharp, Chaffin Luhana, and Peiffer Wolf) have already agreed to provide such a certification. Premo-Hopkins Reply Decl., ¶ 7. So far as Uber understands it, none of the other 34 MDL Plaintiffs' firms have agreed to provide the certification. *Id.* ¶ 19.

On August 25, MDL Leadership also indicated that they would not coordinate with the other firms to obtain such certifications.[1] *Id.* ¶¶ 9, 14–15, Ex. 10. Before Uber filed its Motion on August 13, three firms collectively representing over 1,000 Plaintiffs in the MDL—Levin Simes, Williams Hart & Boundas, and Cutter Law—had expressly told Uber's counsel that they refused to provide a certification or to do anything further related to the *Times* article. *Id.* ¶ 16, Ex. 11. Their position is concerning. If they know nothing and were not involved in providing confidential protected information, it is straightforward to conduct the investigation and make the certification.

Although MDL Leadership parties and Uber were able to reach an agreement whereby the three MDL leadership firms agreed to the certification language attached in Exhibit A, that agreement only applied to the three Leadership firms. Uber's motion and this dispute is about the refusal of MDL Plaintiffs' firms outside MDL Leadership—including some MDL Plaintiffs' firms collectively representing over 1,000 Plaintiffs (well in excess of "a handful of MDL cases," Opp'n at 1)—to provide the requested certification. That dispute urgently needs to be addressed by a Court order.

Accordingly, Uber seeks an order from this Court requiring all 34 MDL Plaintiffs' firms, as well as the three MDL Leadership firms, to provide by next Tuesday, September 2, 2025, the certification that the three MDL Plaintiffs' Leadership firms agreed to provide on August 21.[2] Premo-Hopkins Reply Decl., ¶ 7. That certification is as follows:

---

[1] It is unclear whether Lead Counsel have also committed to providing certifications from the PSC firms, given they later disclaimed any willingness to coordinate.

[2] Although those three MDL Plaintiffs' Leadership firms agreed to provide the certifications in a phone conversation on August 21, Uber has not yet received them. Premo-Hopkins Reply Decl., ¶ 7.

1. I contacted each employee, contractor, consultant or agent (including expert witnesses) working with [INSERT FIRM NAME HERE], as well as any client who, to best of my knowledge and based on a reasonable investigation, had access to the compilation of sealed documents/exhibits (or a significant subset thereof) submitted in connection with Plaintiffs' summary judgment opposition in the JCCP. Each of the individuals confirmed to me they did not share or in any way provide access, directly or indirectly, to any of the documents referenced in the Article to the *New York Times* or its agents, either directly or indirectly. I did not contact consultants, contractors, agents, or experts that I knew were contacted by another law firm.

2a. I do not have any knowledge or information relating to the identity of any person, entity or organization that was involved in any way—either directly or indirectly—in sharing confidential information with the New York Times.

or

2b. The investigation described in paragraph 1 revealed information concerning the source of this unauthorized disclosure to the New York Times [and then describe the circumstances of the disclosure].

## I.   ARGUMENT

### A.   The Protective Order Applies to All Counsel in the MDL.

The Protective Order entered by this court is "*binding upon the Parties to this action, upon their attorneys,* and upon the Parties' [enumerated agents]." ECF No. 176 ¶ 12.4 (emphasis added). "The Parties, their attorneys and employees of such attorneys, and [their agents] each expressly stipulates to the personal jurisdiction of this Court for the purpose of any proceeding brought by a Party to this Action to enforce this Stipulation and Protective Order." *Id.* Thus, there is no basis for limiting the reach of the the Protective Order to only MDL Lead Counsel or only the PSC.

Nor is there any requirement that Uber must seek relief in the JCCP to the extent that counsel and issues involved in the two litigations overlap. A violation of its Protective Order is a serious matter for any Court to confront, and the Court should not ignore its obligation just because another Court may also have jurisdiction over some of the same parties and issues. Uber chose the MDL Court in which to bring

its Motion for a number of reasons—including the greater number of plaintiffs and plaintiffs' firms in this proceeding—2,532 (434 new in the last 90 days) versus 763 plaintiffs (78 new in the last 90 days) and 47 versus 41 firms, this Court's recent experience dealing with a previous protective order violation issue, ECF No. 3708, and the fact that the JCCP Court is preparing for an imminent Uber bellwether trial on September 8 and has expressed its preference to focus primarily on Uber matters related to that trial.

### B. The Court Should Require Certifications From All Plaintiffs' Firms in the MDL.

Much of Plaintiffs' response focuses on the supposed impropriety of seeking certifications from every MDL Plaintiffs' firm. But the firms that are most willing to voluntarily provide certifications may be the ones that are least likely to have violated the Protective Order. Other firms—including some firms that have refused to provide certifications—should not be permitted to hide behind those firms that are willing to provide the certifications voluntarily.

In this regard, on August 1, 2025, Uber wrote to Plaintiffs' counsel—including MDL Leadership and JCCP Leadership counsel from Levin Simes (379 cases in the MDL), Williams Hart & Boundas (458 cases in the MDL), and Cutter Law (195 cases in the MDL)—asking that they "***certify by Monday, August 4 that they, or others at their firm, were not involved in disclosing confidential information to the New York Times and have no knowledge of how the New York Times came into possession of the information referenced.***" 8/13/25 Premo-Hopkins Decl. Ex. 4.

The Williams Hart firm responded on August 4: "I've spoken with my co-counsel in the JCCP leadership, and none of us *have any personal knowledge* of any breach of the Protective Order. If you have any solid evidence, we'll be happy to investigate further." *Id.* Ex. 6 (emphasis added). The Levin Simes and Cutter firms purported to "confirm" on August 5 and 6 that neither their "law firms nor anyone acting at [their] direction or on [their] behalf communicated confidential information to the New York Times." *Id.* Exs. 8, 11.

But none of these responses answered Uber's core inquiry—whether the firms had any "***knowledge of how the New York Times came into possession of the information.***" *Id.* Ex. 4. Importantly, the responses also do not appear to have been based on any actual investigations. For example, Williams Hart Firm's use of the term "personal knowledge" seems deliberate. This raises the question: what information "not based on personal knowledge," if any, did they have? Moreover, Mr. Levin stated only that he "d[id]

not believe" anyone at Levin Simes has communicated with the *Times* at all, and that "*no one would*, or has, communicated confidential information to the Times." *Id.* Ex. 8 (emphasis added). By contrast, Uber and its own law firms conducted investigations and certified to the outcome of such investigations (as described in the Motion and the declarations attached to the Motion). Importantly, Uber's outside counsel also investigated whether communications with the Times could have occurred through direct or indirect means, including through disclosures from experts.

On August 12, the Williams Hart firm told Uber that it would not provide Uber's requested certification: "We don't believe there is anything else to discuss on that front. The leadership firms have all already responded to your prior emails and requests." Premo-Hopkins Reply Decl. Ex. 11. Moreover, in a meet and confer call on August 13, attorneys from Williams Hart, Levin Simes, and Cutter Law all made unequivocally clear that they would not provide Uber's requested certification. *Id.*, ¶ 19.

The MDL Plaintiffs' Leadership firms, by contrast, reached an agreement with Uber to provide the requested certification. *Id.*, ¶ 7. Thus, the certification currently proposed by Uber (attached as Exhibit A) differs slightly from what it initially proposed in its Motion. *See* 8/13/25 Certification of Investigation Facts, ECF 3695-31 at 3. That is because the current certification is the one to which MDL Plaintiffs' Leadership firms ultimately agreed (and addresses some of the concerns they raise, Opp'n at 6-7).[3]

Uber also gathered a list of 34 non-leadership firms and provided it to MDL Leadership firms, asking them to coordinate the requested certification. Premo-Hopkins Reply Decl. Ex. 6. But the MDL Leadership firms have now declined to coordinate certifications from non-leadership plaintiffs' firms, stating: "We did not state we would undertake to contact them [non-leadership firms] individually [to provide the requested certification]." *Id.* Ex. 10. Thus, Uber respectfully asks this Court to order MDL non-leadership firms to conduct appropriate investigations and provide the same certifications that MDL Leadership has agreed to provide. Ex. A.

Plaintiffs suggest that Uber has not shown that a violation of the Protective Order occurred. Opp'n at 3. But Uber has shown much more than mere "suspicions" of a violation. The first sentence of the *Times*

---

[3] As argued throughout, Uber disagrees with Plaintiffs' criticism that its proposal addresses an "[o]verbroad set of law firms." Opp'n at 6. With respect to Plaintiffs' request that the Court should decide whether certifications are to be submitted to the Court or just to counsel, Uber proposes that the certifications be filed with the Court, just as Uber filed its own certifications.

article references the "sealed" records to which the *Times* had access, which confirms that a violation of the Protective Order occurred, as Uber more thoroughly detailed in its opening brief. The sealed and confidential nature of the records was again revealed in the podcast with the NYT reporter that followed the article's launch (available at https://www.nytimes.com/2025/08/08/podcasts/the-daily/uber-sexual-assault.html?showTranscript=1 ("Obviously, I can't say how I got this information …. but over the course of this reporting, I was able to get my hands on literally thousands of pages of internal company documents. These are emails. They are Slack messages. They are PowerPoint presentations. They are reports and other documents. *Hundreds of these documents have been filed in court under seal*.") (emphasis added)). Moreover, contrary to Plaintiffs' suggestion, Opp'n at 4-5, the fact that an Uber witness was questioned *about a particular incident* that occurred in connection with Uber *at her deposition a mere week before the Times reporter sent an email describing the same incident* is certainly highly suggestive as well.

In conclusion, requiring certifications from only the MDL Leadership would fail to address the serious violations of the Protective Order raised by Uber in the Motion. To address those violations of the Protective Order, all MDL Plaintiffs' firms must provide the same certification. Those certifications will enable both Uber and the Court to either (1) confirm that none of those 34 non-leadership firms were involved in sharing sealed information to the *New York Times* or have knowledge of who was involved, or (2) if any of those 34 firms were involved in the sharing of the sealed information, identify exactly how and by whom such information was shared. It is vital to the integrity of the judicial system that the Court require a thorough and complete investigation and certification process by *all* Plaintiffs' counsel, not just the Leadership firms. All counsel are subject to the Court's Protective Order. And all counsel with access to the JCCP summary judgment sealed opposition materials[4] had the opportunity to share those materials, directly or indirectly, with the *New York Times*. Entering such an order and requiring investigation and

---

[4] Several MDL Counsel had access to the JCCP summary judgment opposition exhibits directly through File&Serve, including Clarkson Law Firm; Girard Sharp; Levin Simes; Nachawati Law Group; Peiffer Wolf; Pulaski Law Firm; Simon Greenstone Panatier; Slater Slater Schulman; Walkup, Melodia, Kelly & Schoenberger; and Williams Hart & Boundas. It is Uber's understanding that additional MDL counsel had access to the materials through depositories maintained by MDL Leadership that they had mentioned in correspondence with Uber, or possibly through other means.

certification will ensure that any and every firm involved in violating the Protective Order is identified and held accountable for that violation.

The integrity of the Court process and its orders are at stake. The judicial process must be protected and upheld. For all these reasons, Uber asks that all MDL Plaintiffs' firms be required to conduct the same investigation and provide the same certification that the MDL Leadership firms have agreed to provide (attached as Exhibit A hereto).

DATED: August 27, 2025

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER,LLC, And RASIER-CA, LLC