Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street,
San Francisco, CA 94104
Telephone: (415) 439-1400
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**REPLY DECLARATION OF MARK PREMO-HOPKINS IN SUPPORT OF MOTION FOR ENFORCEMENT OF PROTECTIVE ORDER**<br><br>Magistrate Judge:   Hon. Lisa J. Cisneros<br>Courtroom:           G – 15th Floor<br>Hearing Date:        August 28, 2025<br>Hearing Time:        10:30 a.m. |

I, Mark Premo-Hopkins, declare as follows:

1. I am an attorney at Kirkland & Ellis L.L.P., counsel of record for Defendants Uber Technologies, Inc., Raiser, LLC, and Raiser-CA, LLC (collectively, "Uber" or "Defendants"). I offer this Reply Declaration in the above-captioned matter in support of Uber's Motion for Enforcement of the Protective Order (the "Motion").

2. Following the filing of the Motion on August 13, 2025, Roopal Luhana, MDL Co-Lead Counsel, sent an email to me asking to discuss Uber's Motion further. Attached as **Exhibit 1** is a true copy of that email.

3. On August 19, 2025, I responded via email and asked counsel to send the "proposal for what plaintiffs' leadership counsel would be willing to do." Attached as **Exhibit 2** is a true copy of that email.

4. On August 20, 2025, Ms. Luhana sent an email with a proposal for what "[e]ach PSC law firm with access to MDL shared document and work product depositories" was willing to agree to. Attached as **Exhibit 3** is a true copy of that email.

5. On August 21, 2025, I sent a response to Ms. Luhana with proposed alternative language, and also reiterated that "[w]e maintain that we will ultimately need to obtain certifications from all counsel on the plaintiffs' side that had access to the materials." Attached as **Exhibit 4** is a true copy of that email.

6. I sent a follow-up email later that day concerning Uber's proposal, as well as to ask if Plaintiffs would agree to a request to move the hearing on the Motion from September 30, 2025 to an earlier date. Attached as **Exhibit 5** is a true copy of that email.

7. On the evening of August 22, 2025, I engaged in a meet-and-confer via Zoom with Plaintiffs' Lead Counsel. During that meet-and-confer, Plaintiffs' Counsel agreed that leadership would provide in writing the certification language requested by Uber. That language is set forth below:

> 1. I contacted each employee, contractor, consultant or agent (including expert witnesses) working with [INSERT FIRM NAME HERE], as well as any client who, to best of my knowledge and based on a reasonable investigation, had access to the compilation of sealed documents/exhibits (or a significant subset thereof) submitted in connection with Plaintiffs' summary judgment opposition in the JCCP. Each of the individuals confirmed to me they did

      not share or in any way provide access, directly or indirectly, to any of the documents referenced in the Article to the *New York Times* or its agents, either directly or indirectly. I did not contact consultants, contractors, agents, or experts that I knew were contacted by another law firm.

      2a. I do not have any knowledge or information relating to the identity of any person, entity or organization that was involved in any way—either directly or indirectly—in sharing confidential information with the New York Times.

      Or

      2b. The investigation described in paragraph 1 revealed information concerning the source of this unauthorized disclosure to the New York Times [and then describe the circumstances of the disclosure].

8. Counsel also asked Uber to provide a list of the other firms that Uber would want Plaintiff leadership to ask for certification. Counsel further asked that Uber withdraw the Motion in its entirety. During the Zoom call, I responded that we could discuss the issue for specific firms who agreed to provide the requested information, but could not agree to withdraw the motion in its entirety, because certain attorneys subject to the Motion had expressly told me before filing they would not provide the information requested by Uber. I agreed to discuss this with my client, but told counsel I was not confident that the client would be willing to do so. During the meet-and-confer, I also asked about advancing the hearing date on the Motion, and they indicated that they would defer to the Court's schedule.

9. On August 22, 2025, I emailed Plaintiffs' Lead Counsel the list of firms from whom Uber would expect the same certification language that Plaintiffs' Lead Counsel had agreed to. Attached as **Exhibit 6** is a true copy of that email.

10. Also on August 22, 2025, I emailed Plaintiffs' Lead Counsel Uber's draft motion to shorten time to hearing on the Motion. Attached as **Exhibit 7** is a true copy of that email.

11. Also on August 22, 2025, Andrew R. Kaufman emailed to provide Plaintiffs' position on the motion to shorten the time for hearing. Plaintiffs' position was that "Plaintiffs defer to the Court on the timing of the hearing, but respectfully request that the Court not advance the due date for Plaintiffs' response to the motion, currently set for August 27." Attached as **Exhibit 8** is a true copy of that email.

12. Uber filed its motion to shorten time to hearing on the Motion on August 22, 2025. ECF No. 3733.

13. Magistrate Judge Cisneros granted Uber's motion to shorten time to hearing on August 25, 2025. ECF No. 3739. The order stated that "[a]t the August 28, 2025 status conference, the parties should be prepared either to argue the merits of the motion or to discuss setting a later hearing date, at the discretion of the Court."

14. Also on August 25, 2025, I followed up by email concerning the list of firms that I had previously provided on August 22. Attached as **Exhibit 9** is a true copy of that email.

15. Also on August 25, 2025, Plaintiffs' counsel responded that it would not undertake to contact the firms individually. Attached as **Exhibit 10** is a true copy of that email.

16. This coordination could serve to narrow the scope of the parties' dispute, although Court intervention would still be necessary because at least some counsel have explicitly refused to provide any further certifications or assurances. For example, I met and conferred with non-leadership counsel, including William Levin, David Grimes, Brian Abramson, and Celine Cutter who represent plaintiffs in this MDL, on August 13, 2025, at which point they had stated that they would not do anything further to certify their non-involvement in providing sealed materials to the *New York Times*. Brian Abramson also sent an email to similar effect on August 12. Attached as **Exhibit 11** is a true copy of that email.

17. At this point, only MDL Leadership Counsel have agreed to provide the requested certification; none of the other MDL plaintiffs' firms have done so.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  August 27, 2025

Respectfully submitted,

By: */s/ Mark Premo-Hopkins*
    Mark Premo-Hopkins (Admitted *Pro Hac Vice*)
    **KIRKLAND & ELLIS LLP**
    333 West Wolf Point Plaza
    Chicago, IL 60654
    Telephone: (312) 862-2706
    mark.premohopkins@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.; RASIER, LLC; and RASIER-CA, LLC