**LEVIN SIMES LLP**
William A. Levin (CA Bar No. 98592)
Laurel L. Simes (CA Bar No. 134637)
David M. Grimes (CA Bar No. 324292)
Samira J. Bokaie (CA Bar No. 332782)
700 Montgomery Street, Suite 250
San Francisco, CA 94111
Phone: (415) 426-3000
Fax: (415) 426-3001
Email: wlevin@levinsimes.com
Email: llsimes@levinsimes.com
Email: dgrimes@levinsimes.com
Email: sbokaie@levinsimes.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case 3:23-md-03084-CRB<br><br>MDL No. 3084<br><br>Honorable Charles R. Breyer<br><br>JURY TRIAL DEMANDED |
| This Document Relates to:<br><br>*Jane Doe LS 60 v. Uber Techs., Inc.*, No. 3:24-cv-05618 | |

**AMENDED BELLWETHER COMPLAINT AND DEMAND FOR JURY TRIAL**

Under PTO 21 (ECF 1950) and PTO 28 (3441), Plaintiff files this Amended Bellwether Complaint against the Defendants named below. Plaintiff incorporates the allegations set out in the Master Long-Form Complaint filed at ECF 269 in *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, No. 23-md-3084 (N.D. Cal.).

I.   **DESIGNATED FORUM**[1]

1. Identify the Federal District Court in which the Plaintiff would have filed in the absence of direct filing: Northern District of California

II.  **IDENTIFICATION OF PARTIES**

   A.   **PLAINTIFF**

2. *Injured Plaintiff:* Name of the individual sexually assaulted, battered, harassed, and/or otherwise attacked by an Uber driver with whom they were paired while using the Uber platform: Jane Doe LS 60

3. At the time of the filing of this Amended Bellwether Complaint, Plaintiff resides at: Forth Worth, Tarrant County, Texas

   B.   **DEFENDANT(S)**

4. Plaintiff names the following Defendants in this action.
   - ☑ UBER TECHNOLOGIES, INC.;[2]
   - ☑ RASIER, LLC;[3]
   - ☑ RASIER-CA, LLC.[4]

   C.   **RIDE INFORMATION**

5. Plaintiff was sexually assaulted, harassed, battered, and/or otherwise attacked by an Uber driver in connection with an Uber ride in Tarrant County, Texas on July 26, 2019.

6. Plaintiff was the owner of the Uber account used to request the relevant ride.

7. Plaintiff ordered an Uber ride in the evening to take her and her friend home from the bus station.

8. The driver's name was Qutbudin Nadish.

9. Before the driver began the ride, he kicked Plaintiff's friend out of the vehicle because, he claimed, he was allowed to drive only one person at a time.

---

[1] *See* PTO No. 6, at II(C) (ECF 177).
[2] Delaware corporation with a principal place of business in California.
[3] Delaware corporation with a principal place of business in California.
[4] Delaware corporation with a principal place of business in California.

10. While her friend exited the car, Plaintiff got into an argument with the Uber driver.

11. Plaintiff was about to exit the vehicle herself when the Uber driver suddenly began driving, causing Plaintiff to slam her head against the backseat.

12. Plaintiff pleaded for the Uber driver to let her out, but he refused and made inappropriate comments.

13. The driver exposed his genitals and made verbal threats of sexual assault.

14. When the vehicle neared the destination, the driver drove around in circles in the surrounding neighborhood and berated Plaintiff.

15. The conduct described in the Master Long-Form Complaint and herein was a substantial factor in causing Plaintiff to suffer economic and non-economic harm.

### III.  CAUSES OF ACTION ASSERTED

16. The following Causes of Action asserted in the Master Long-Form Complaint, including all allegations in support, are adopted in this Amended Bellwether Complaint by reference:

| Check if Applicable | Cause of Action Number | Cause of Action |
| --- | --- | --- |
| ☑ | I | CLAIM B - NEGLIGENCE (excluding entrustment theory) |
| ☐ | II | CLAIM C - FRAUD AND MISREPRESENTATION |
| ☐ | III | CLAIM E - COMMON CARRIER'S NON-DELEGABLE DUTY TO PROVIDE SAFE TRANSPORTATION |
| ☐ | VI | CLAIM G.1 - VICARIOUS LIABILITY– EMPLOYEE |
| ☐ | VI | CLAIM G.2 - VICARIOUS LIABILITY– APPARENT AGENCY |
| ☑ | VII | CLAIM G.3 - VICARIOUS LIABILITY–RATIFICATION |
| ☑ | VIII | CLAIM H - STRICT PRODUCTS LIABILITY – DESIGN DEFECT |
| ☐ | IX | CLAIM H - STRICT PRODUCTS LIABILITY – FAILURE TO WARN |
| ☐ | X | CLAIM H - STRICT PRODUCTS LIABILITY – PRODUCTS LIABILITY ACTS |

### IV.  ADDITIONAL ALLEGATIONS IN SUPPORT OF RATIFICATION CLAIM

17. Plaintiff promptly reported the incident to both Uber and law enforcement.

18. Uber did not deactivate the driver or even open a full investigation into the incident.

## V. ADDITIONAL ALLEGATIONS IN SUPPORT OF PRODUCTS LIABILITY CLAIMS

19. **Gender Matching**. The Uber App was in a defective condition unreasonably dangerous to users or consumers, including Plaintiff, because the Uber app was designed with an algorithm that matched female passengers with male drivers and had no modification to allow female passengers the option to be matched only with female drivers.

20. Uber tracks the rates of sexual misconduct and assault committed by its drivers against its passengers and collects data on the gender of the driver and passenger involved in those incidents. At all relevant times, Uber was aware that the risk of sexual misconduct or assault is greater during Uber rides in which the driver is male and the passenger is female, like the ride between the driver and Plaintiff. The risk of sexual assault associated with such pairings, while known to Uber based on its internal data collection and analysis, was beyond that contemplated by the ordinary user or consumer.

21. Uber could have, but did not, modify its matching algorithm on the backend to give female passengers the option to select female drivers. Such a modification is feasible because Uber has made such modifications in markets outside of the United States, such as Saudi Arabia. Uber has not modified the code of the matching algorithm on the backend for the version of the Uber App available in the United States market to allow for female Uber passengers, including Plaintiff, to choose gender-matched rides.

22. Uber knew that a gender-matching option would have prevented assaults like the one suffered by Plaintiff.

23. Had a gender-matching functionality been available, Plaintiff would have selected a female driver for the ride in question.

24. Use of the gender-matching option would have prevented Plaintiff's assault by her male driver because Plaintiff never would have been in the car with this driver had a gender matching functionality been toggled on and would, instead, have been paired with an entirely different person.

25. **App-Based Ride Recording**. The Uber App was defective in its design because it could have been, but was not, designed to trigger automatic video recording of rides and the time period immediately around them, whether through using the camera already installed on a driver's cell phone during Uber trips, or through an external device linked to the App.

26. The presence of cameras serves a deterrent function that significantly reduces and prevents sexual assault and misconduct. Even the potential for a ride to be recorded serves a deterrent function that significantly reduces and prevents sexual assault and misconduct.

27. Uber is aware that the presence of cameras serves as a deterrent function that can and does significantly reduce sexual assault and sexual misconduct and, to that end, has explored the use of recording functionalities for the Uber App. But even these recording functionalities are inadequately designed to address sexual assault or sexual misconduct committed by drivers against passengers.

28. For example, Uber developers modified the code of the Uber App on the back end to allow in-app video recording by the driver. That is, when toggled on by the driver, this functionality allowed drivers to record internal footage of Uber trips using their phone's camera as a dash camera.

29. In addition to making the feature optional, rather than automatic, Uber coded its in-app video recording functionality so that all recordings are encrypted in the Uber App and locally stored on a driver's cell phone, meaning that recordings cannot be obtained by Uber, law enforcement, or any third party without the express authorization of the driver.

30. The result is that in-app video recording does not have any deterrent effect on sexual assault or sexual misconduct by drivers against passengers because drivers exercise absolute control over whether recording happens, and because drivers know that, even if the technology is on, third parties cannot access the recordings.

31. In any event, whatever the utility of Uber's driver-controlled video monitoring, even that feature was not available when Plaintiff was assaulted.

32. Had the Uber App included automatic video monitoring of rides, by definition that feature would have been engaged on Plaintiff's ride.

33. Automatic video monitoring would have deterred the driver from kidnapping, berating, and exposing himself to Plaintiff.

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendants for economic and non-economic compensatory and punitive and exemplary damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. At this time, Plaintiff does not seek injunctive relief, but reserves all rights to later seek such relief as appropriate under Fed. R. Civ. P. 15(b)(2) and Fed. R. Civ. P. 54(c).

## JURY DEMAND

Plaintiff demands a trial by jury as to all claims in this action.

Dated: September 2, 2025

/s/ *William A. Levin*
**LEVIN SIMES LLP**
William A. Levin (CA Bar No. 98592)
Laurel L. Simes (CA Bar No. 134637)
David M. Grimes (CA Bar No. 324292)
Samira J. Bokaie (CA Bar No. 332782)
700 Montgomery Street, Suite 250
San Francisco, CA 94111
Phone: (415) 426-3000
Fax: (415) 426-3001
Email: wlevin@levinsimes.com
Email: llsimes@levinsimes.com
Email: dgrimes@levinsimes.com
Email: sbokaie@levinsimes.com

*Attorneys for Plaintiff*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatory above has concurred in this filing.

Dated: September 2, 2025             By:   */s/ Andrew R. Kaufman*
                                            Andrew R. Kaufman