UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br>ALL CASES. | Case No. 23-md-03084-CRB<br><br>**ORDER REGARDING JOINT DISCOVERY LETTER CONCERNING FLACK DATA**<br><br>Re: Dkt. No. 3700 |

Pending before the Court is the parties' Joint Discovery Letter, filed on August 14, 2025, in which Plaintiffs assert that Uber has provided deficient responses to interrogatories that seek certain sexual assault and sexual misconduct incident data. Dkt. No. 3700. Specifically, Plaintiffs argue that Uber has withheld data from its "Flack" database and from an internal dashboard that Uber relies upon to assess safety data. Uber opposes the request on the grounds that it is untimely because the deadline for the substantial completion of fact discovery passed on June 16, 2025, no new information has arisen, and Plaintiffs are seeking information different from the data sought in their earlier interrogatories. On August 28, 2025 the Court held a hearing on the dispute in conjunction with its monthly discovery status conference. Dkt. No. 3776. For the reasons explained below, Plaintiffs' request is GRANTED.

As an initial matter, the Court clarifies Plaintiffs' request. The caption for the parties' letter states, "Joint Discovery Letter Brief Regarding Plaintiffs' Interrogatories 7 & 8". These two interrogatories seek incident data from 2023 and 2024. Dkt. 3096-2 at 7–9. In the letter, however, Plaintiffs appear to seek incident data from 2017 to 2024. Plaintiffs recount serving a set of interrogatories to identify the number of incidents per month that Uber categorized, and they describe a chart that Uber provided in late April purportedly showing the number of incidents for

each of the twenty-three categories from January 2017 to December 2022, and a similar chart produced in late June for data from January 2023 through December 2024. Uber quotes the relevant interrogatories as asking it to "[f]or each month in the year[s] [2017 through 2024], specify by category, the number of Sexual Violence Incidents in the United States that YOU categories into each of the [23 Taxonomy categories]." Dkt. No. 3700 at 6 (quoting Dkt. No. 3096-2 at 3–9) (alterations in original). Plaintiffs' declarant describes the relevant interrogatories similarly. Dkt. No. 3700-1 at 2 (Wilkins Decl. ¶ 4).

Plaintiffs' specific request for relief is that the Court order Uber "to provide a declaration confirming that the incident numbers Uber produced are the same numbers that would have been displayed in Flack and/or the Dashboard; if not, then Uber should produce the numbers as they existed in those systems as of the dates Uber produced the discovery responses. Additionally, Plaintiffs request that the Court set dates for the Parties to raise disputes with the Court regarding whether Uber will provide additional data or documents from Flack or the Dashboard." Dkt. No. 3700 at 3. Accordingly, the Court construes Plaintiffs' request for discovery relief as requesting supplementation of Uber's responses to Interrogatories 1 through 8 (in Plaintiffs' second set of interrogatories), which cover the categorization of sexual assault and sexual misconduct incident data from 2017 to 2024, Dkt. 3096-2 at 3–9, notwithstanding the more limited caption of the parties' letter.

As the parties know well, in federal litigation discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Uber does not contend that the supplemental information that Plaintiffs seek is irrelevant, but rather, it asserts that given the late stage of the litigation, and the passage of the substantial production discovery cutoff, Plaintiff's request should be denied. Over a year ago, in early July 2024, the Court granted in part Plaintiffs' request to compel Uber to produce data and documents

concern incidents of sexual assault and misconduct. Dkt. No. 684. One of the arguments that the Court rejected was Uber's contention that this information should not be produced because it was unaudited, and thus, unreliable or lacking in importance. However, a central concern in this case has been Uber's knowledge with respect to the occurrences of sexual assault and misconduct committed by its drivers against its passengers and the company's responses based on such knowledge.

The history of Plaintiff's quest to discover Uber's knowledge of the rate of sexual assault and sexual misconduct incidents is convoluted. After the Court's July 9, 2024 order, the parties engaged in related discovery efforts that were regularly recounted in their Joint Discovery Status Reports and at monthly discovery status conferences. *See, e.g.*, Dkt. Nos. 1521, 1622, 2608. The focus of the parties' and the Court's attention was on such information maintained and organized in Jira, Bliss, and to a lesser extent, Zendesk systems. *See, e.g.*, Dkt. No. 1608. The disputes concerning the way this information was produced dragged on, *see, e.g.*, Dkt. Nos. 2608, 2647, and to force a resolution and clarification of the issues, the Court set a deadline for the parties to either resolve their disputes via agreement or file a joint discovery letter. Dkt. No. 2647. In early April 2025, the parties indicated to the Court that they had reached an agreement, Dkt. Nos. 2715, 2753, though later that month, it appeared that the parties had different views as to whether the agreement has been fulfilled. Dkt. Nos. 2823, 2895. Still later, on May 30, 2025, the parties filed a joint discovery letter seeking resolution of a dispute concerning discovery related to the categorization of incidents from 2023 to 2024. Dkt. No. 3096.

Against this backdrop, Uber contends, and Plaintiffs do not dispute, that Plaintiffs have been aware of Flack for over a year, as documents produced by Uber have discussed Flack. Plaintiffs' argument, however, focuses on testimony from Hannah Nilles, Uber's Head of Safety for the America, during her deposition on July 23, 2025, after the substantial completion deadline. Plaintiffs describe Nilles as having testified that she "obtains information from Uber's Flack database (and potentially other sources included a Dashboard that she uses to access Flack), and that the incident rates (including the specific incident rates for critical sexual assaults) from Flack and/or the Dashboard are accurate, reliable, and up to date." Dkt. No. 3700 at 4 (paraphrasing

3

Nilles's testimony). Plaintiffs contend that this testimony contradicts repeated representations by Uber and Uber's counsel that the numbers and rates by which sexual assaults, and particular categories of such misconduct, occur are not available or easily identified accurately and reliably. Uber does not dispute Plaintiffs' characterization of Nilles's testimony except to counter that she did not testify about additional fields in Flack, which has been revealed in Katherine McDonald's depositions earlier on April 24 and 25, 2025. Uber disputes Plaintiffs' characterization of its own prior representations, but it does not assert that it previously disclosed Nilles's reliance on Flack data as an accurate source of incident rates. The Court need not and does not otherwise resolve the parties' disputes regarding the nature of Uber's prior representations.

Plaintiffs' discovery request concerning Flack data is not precluded by the substantial completion deadline, which is distinct from the complete cutoff of fact discovery. The parties have previously acknowledged that distinction. *See, e.g.*, Dkt. No. 3056 at 3 (joint argument by the parties that "[p]ostponing [a] deposition until just two weeks after the date for substantial completion of fact discovery will not delay the September 22, 2025 close of discovery or otherwise delay the progress of this litigation to trial"). Nor does Plaintiff's request violate any Local Rule, as Uber contends, because fact discovery remains open.

To the extent Uber is asking that the Court hold Plaintiffs to its earlier agreements not to pursue further information regarding Flack and/or to drop its objections as to the sufficiency of Uber's responses to the interrogatories at issue here, the Court declines, given the importance of the information as evidence of what Uber knew about the number and rates of sexual assault and sexual misconduct incidents. *See In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 994 (2023) (in the context of a dispute over sanctions, declining to give a litigant the benefit of an agreement concerning discovery that was "made on incomplete information"). Furthermore, the record does not reflect a lack of diligence on the part of Plaintiffs. They persisted in engaging Uber regarding the incident data issues throughout the spring in advance of McDonald's deposition and the substantial completion deadline, and as they uncovered relevant information from subsequent depositions after the substantial completion deadline. Under the circumstances of this litigation, where the substantial completion deadline has passed but fact discovery remains

open, new testimony by a relevant Uber decisionmaker revealing her reliance on Flack data for some of the same purposes for which Plaintiffs served the interrogatories at issue is sufficient new information to warrant revisiting the issue and allowing at least some discovery into the data.

For the foregoing reasons, Plaintiffs' request for relief is granted. Uber shall produce no later than September 9, 2025, either: (1) a declaration confirming that the incident numbers that Uber produced in response the interrogatories at issue are the same numbers that would have been displayed in Flack and/or the Dashboard;[1] or (2) if the numbers are different, the numbers as they existed in those systems as of the dates that Uber produced its previous responses. If Plaintiffs believe additional discovery is warranted, then by September 12, 2025, the parties shall meet and confer regarding a limited set of discovery requests, seeking additional data or documents from Flack or the Dashboard. If the parties are unable to reach an agreement, they shall file a Joint Discovery Letter by September 15, 2025.

**IT IS SO ORDERED.**

Dated: September 5, 2025

LISA J. CISNEROS
United States Magistrate Judge

---

[1] Uber represents that the numbers "are obviously not" the same, Dkt. No. 3700 at 7, so the Court does not expect Uber to avail itself of this first option (as presented by Plaintiffs), but includes it nevertheless in an abundance of caution.

5