Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Uber*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| | **REPLY IN SUPPORT OF MOTION FOR ENTRY OF (1) AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE AND (2) A CASE MANAGEMENT ORDER ADDRESSING CERTAIN PLAINTIFFS WHO HAVE NOT SUBMITTED RECEIPTS** |
| This Document Relates to: | |
| ALL ACTIONS | |
| | Complaint Filed Date: |
| | Judge:      Hon. Charles R. Breyer |
| | Date:       September 19, 2025 |
| | Time:       10:00 a.m. |
| | Courtroom:  6 – 17th Floor |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   BACKGROUND ........................................................................................................ 3

III.  ARGUMENT ............................................................................................................. 6

    A.    THE 21 PLAINTIFFS WHO SUBMITTED FRAUDULENT RECEIPTS
    SHOULD BE DISMISSED WITH PREJUDICE, FOLLOWING A SHOW
    CAUSE PROCESS ..................................................................................... 6

        1.    Plaintiffs' Arguments that Uber Was Required to "Compromise" as
        Part of the Meet and Confer Process Are Meritless .................................. 8

        2.    Plaintiffs' Firms Claim to Be Unable to Contact Their Clients, But
        Have Had Years to Investigate the Receipt Deficiencies at Issue .......... 10

    B.    THE COURT SHOULD ENTER A CASE MANAGEMENT ORDER
    ADDRESSING ALL PLAINTIFFS WHO DID NOT PROVIDE
    RECEIPTS AND WHOSE RIDES UBER HAS NOT BEEN ABLE TO
    SUBSTANTIATE ..................................................................................... 11

        1.    Uber's Request for a Case Management Order is Distinct from, but
        Still Related to, the 21 Plaintiffs that Provided Non-Bona Fide
        Receipts ..................................................................................... 11

        2.    The Court Should Establish New Procedures Related to PTO 5, as
        Plaintiffs' Leadership Agrees ................................................................. 13

IV.   CONCLUSION ....................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Goldwater Bank, N.A. v. Elizarov,*
  Case No. 5:21-cv-00616-JWH, 2022 WL 17078950 (C.D. Cal. Oct. 7, 2022) ....................................9

*IV Sols., Inc. v. Off. Depot Emp. Welfare Benefit Plan,*
  Case No. EDCV 07-1603-VAP, 2009 U.S. Dist. LEXIS 133650 (C.D. Cal. May 13,
  2009) ........................................................................................................................................................6

*Palmer v. Hatton,*
  No. C 05-358 SI, 2006 WL 3365596 (N.D. Cal. Nov. 20, 2006) ..............................................9

*Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.,*
  727 F.2d 1470 (9th Cir. 1984) ..................................................................................................6

*Ruiz v. Law Offs. of John E. Bouzane,*
  Case No. SA CV 16- 0323 FMO, 2016 WL 9223779 (C. D. Cal. July 11, 2016) .................9

*Valley Eng'rs Inc. v. Elec. Eng'g Co.,*
  158 F.3d 1051 (9th Cir. 1998) ..................................................................................................6

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' responses highlight serious issues relating to (i) fraud and (ii) individuals in this MDL who are nominally "Plaintiffs" but are neither responsive nor participating in the litigation:

- Of the 21 non-bona fide receipts included in Uber's Motion, Plaintiffs' counsel do not dispute in their response briefs that 19 are non-bona fide.

- Plaintiffs argue that 21 Plaintiffs is a small percentage of the docket, but do not dispute that Makereceipt.com provides the option to pay extra to generate receipts without telltale watermarks, meaning that there could be more fraud than what has been detected by Uber thus far.

- Of the 21 Plaintiffs who submitted non-bona fide receipts, Plaintiffs claim they have been unable to contact over 75 percent (16 of 21). This reinforces that a significant percentage of "Plaintiffs" in this MDL (i) are not in touch with their counsel; (ii) do not participate in this litigation; and (iii) may not even be aware they are "Plaintiffs." Case management orders are needed to address this issue.

- Plaintiffs claim that "*Uber faces no risk* from those cases *where the plaintiff never resurfaces,*" because "no case can go to trial nor settle without the involvement of the plaintiff." ECF 3771 at 4 (emphasis added). But there is no Federal Rule permitting someone to (i) click on an internet ad; (ii) remain submerged as a non-bellwether Plaintiff, in some cases while committing fraud or violating Court orders; and (iii) "resurface" for a settlement check. Plaintiffs who fail to respond to Court orders, or commit fraud, should not be included in any inventories and should be dismissed promptly with prejudice.

- Some of these non-responsive, non-participating "Plaintiffs" have been lured by ads such as the one below, promising a "**Significant Compensation**" with "No Paperwork" and "No Hassle." Available at https://www.rideshareassaultjustice.com/.



**ATTENTION:**

Uber & Lyft Rideshare Assault **Significant Compensation**

- No Paperwork
- No Hassle
- No Upfront Cost

**Time is limited - See if you qualify TODAY!**

1

- Other non-responsive, non-participating Plaintiffs have likely been signed up through "lead generation" firms like Blue Sky, which, as seen below, boasts that it is "already helping law firms acquire Uber and Lyft sexual assault plaintiffs at a performance-based cost of $3,600 to $4,800." Available at https://blueskylegal.com/case-types/uber-and-lyft-sexual-assault/)?.



Blue Sky Legal is already helping law firms acquire Uber and Lyft sexual assault plaintiffs at a performance-based cost of **$3,600 to $4,800**, depending on the complexity of the criteria. We deliver signed retainers at a targeted price range, helping law firms enter or scale into this litigation with predictable, high-quality case acquisition.

- For two out of the 21 Plaintiffs with non-bona fide receipts, Plaintiffs' counsel argue that their clients "assure us their receipts are authentic." ECF 3771 at 2. Both failed to provide a declaration or affidavit. As detailed below, these two receipts are not authentic. Uber requested that Plaintiffs' counsel provide native versions of the receipts, but Plaintiffs' counsel have not done so.

- Plaintiffs incorrectly claim that Uber never verified that it cannot find the challenged receipts in its system and argue that Uber should be required to provide more information. In fact, in response to the Court's orders, for *every* Plaintiff who is the subject of Uber's Motion, Uber conducted a search for the receipt and, prior to filing this Motion, verified under oath in a Defendant Fact Sheet, that it could not substantiate *every* one of these trips. Cotton Decl., ¶¶ 17-18.

- For the 90 Plaintiffs who failed to provide receipts (as distinct from the 21 Plaintiffs who provided non-bona fide receipts), Plaintiffs claim that Uber "disingenuously merges two distinct issues – the failure to provide any ride receipt and the provision of a fraudulent ride receipt – and uses the latter to tarnish the former." ECF 3771 at 1. In fact, there is fraud in the group of 90. For example, under one name, Plaintiff with MDL ID 1384 gave a boilerplate excuse for a missing receipt and, under a different name, submitted a fraudulent receipt. Although providing a boilerplate reason for not having a receipt (*e.g.*, 19 Nachawati Firm Plaintiffs made the identical assertion that "*it is possible* that an older or now expired number *or* email address *may* have instead been associated with this ride *or* account") does not guarantee fraud, it is certainly a potential indicator.

- None of the 90 Plaintiffs with missing receipts have provided one since Uber filed its Motion.

REPLY IN SUPPORT OF MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

The response brief filed by Plaintiffs' Leadership (ECF 3768) is by far the most reasonable in terms of acknowledging the problems discussed above. Plaintiffs' Leadership agrees that (1) "fraud has no place in this MDL" and (2) "PTO 5 does not set out a process for dealing with the kinds of deficiencies Uber alleges here; the Court should establish one." *Id.* at 2. However, the remedies proposed by Leadership are insufficient. With respect to the non-bona fide ride receipts, Leadership contends that "*Uber, too, should declare that it cannot locate the ride at issue*, and detail the process it has used." *Id.* (emphasis added). But, prior to filing its motion, Uber *already did* state under oath, as part of the Defendant Fact Sheet process, that it cannot locate *any one* of the rides at issue. Cotton Decl., ¶¶ 17-18. The fraud committed by the 21 subject Plaintiffs necessitates dismissal with prejudice, not additional burdens imposed on Uber.

With respect to the PTO 5 process, Plaintiffs' Leadership similarly proposes a back-and-forth process that would take several months. But some Plaintiffs have already claimed *for over eighteen months* that "Plaintiff's counsel is working with Plaintiff to obtain the ride receipt," and Uber has long ago confirmed under oath (for all 90 Plaintiffs) that it cannot locate the receipt. Cotton Decl., ¶¶ 17-18. Consistent with Uber's proposed order, Plaintiffs should be required to provide a receipt within 30 days or give a non-boilerplate reason why they cannot (and specify the earliest and latest dates of Uber receipts available in their email and Uber app), or be dismissed with prejudice. Uber agrees with Plaintiffs' Leadership, however, that the Order should cover more than just the 90 no-receipt Plaintiffs; it should extend to all Plaintiffs who claim to have ordered their own ride but have failed to provide a receipt.

## II.   BACKGROUND

The material statistics relating to Uber's Motion are below:

**Non-Bona Fide Receipts**

| | |
|---|---|
| Number of Plaintiffs Who Uber Claimed Provided Non-Bona Fide Receipts | 21 |
| Number of Receipts Plaintiffs' Counsel Claim Are Bona Fide (Out of 21) | 2 |
| Number Who Plaintiffs' Counsel Claim to Be Unable to Contact (Out of 21) | 16 |
| Number of Receipts Uber Certified in DFS It Could Not Locate, Pre-Filing (Out of 21) | 21 |

**Missing Receipts**

| | |
|---|---|
| Number of Plaintiffs with Missing Receipts Addressed in Uber Motion | 90 |
| Number of Plaintiffs Who Have Since Provided Receipts (Out of 90) | 0 |
| Number of Receipts that Uber Certified in DFS It Could Not Locate, Pre-Filing (Out of 90) | 90 |

3

Multiple factors are responsible for the fraud and non-participation in this docket. First, Plaintiffs' counsel have engaged in aggressive online click-bait style advertising. The number of Plaintiffs has increased by over 90 just since Uber filed this Motion, resulting, in part, from ads like the following "Free Compensation Check!" promise from the Nachawati Firm:



Lead generation firms like Blue Sky, meanwhile, boast that they have "help[ed] law firms acquire Uber and Lyft sexual assault plaintiffs at a performance-based cost of $3,600 to $4,800," and "deliver signed retainers at a targeted price range, helping law firms enter or scale into this litigation." Available at https://blueskylegal.com/case-types/uber-and-lyft-sexual-assault/)?.

Once Plaintiffs click on the "Free Compensation Check!" ad and enter into the litigation, they are required to fill out a Plaintiff Fact Sheet (hereinafter "PFS"). Unfortunately, Uber has learned that many Plaintiffs do *not* actually fill out the PFS themselves, or even participate meaningfully in the process. Instead, many PFS are systemically "auto-populated" by law firms without verification prior to upload. One example is MDL ID 2770. First, Plaintiff's verification submitted to MDLC on 1/14/2025 only includes a typed signature. Cotton Decl., Ex. 1. Next, the PFS submitted on 1/14/2025 shows that this Plaintiff's response to PFS Question No. 7 (Employment) was "Not Applicable" and the response to PFS Question No. 8 (Education) was "High School Graduate/GED." *Id.*, Ex. 2. However, this Plaintiff's publicly available NPI information indicates that she has worked as a Mental Health Counselor since at least May 2017. *Id.* ¶ 3. Beyond this, the ride receipt uploaded on 01/02/2025 originates from *Lyft* and not Uber, yet its details match the incident details in the PFS. *Id.*, Ex. 3.

Under PTO 5 and PTO 12, Plaintiffs are required to provide a ride receipt or ride information form. Again, Plaintiffs' law firms "auto-populate" or "mass populate" the reason for not providing ride receipts. 52 Plaintiffs represented by Williams Hart, 22 Plaintiffs represented by Levin Simes, and 19 Plaintiffs represented by Nachawati Law Group submitted exact-same or near-exact-same boilerplate reasons for why they could not provide a receipt within the ride information form.

4

While certain Plaintiffs provided no receipt whatsoever, other Plaintiffs submitted fraudulent receipts. Contrary to Plaintiffs' claim that the fraud problem is limited, Uber does not believe it has identified all fraudulently created receipts, including those created by third-party websites. For example, Pro or Enterprise level Makereceipt.com memberships permit users to generate receipts without the watermark (Harrison Decl., at 4), such that there may well be additional receipts produced by Plaintiffs created using Makereceipt.com (or similar websites) that Uber has not yet been able to identify.

Plaintiffs' counsel makes baseless claims that Uber "has made no attempt to" identify a ride without a receipt. ECF 3771 at 3; *see also* ECF 3768 at 2 ("Uber, too, should declare that it cannot locate the ride at issue"). The record shows this is false. Prior to filing its Motion, Uber complied with PTO 10 and its DFS requirement, which requires that Uber conduct a reasonable investigation consistent with the Federal Rules of Civil Procedure upon a Plaintiff's submission of a ride receipt (bona fide or not) or ride information form. For every DFS provided with respect to the subject Plaintiffs—both the 21 Plaintiffs who submitted non-bona fide receipts and the 90 Plaintiffs who submitted boilerplate excuses for their failure to provide a receipt—Uber was unable to substantiate the rides in question, as it already certified in the DFS. For example:

MDL ID 2682: DFS served on 12/27/2024 via MDLC (MDLC Doc. ID 41066)



Uber's search methods to substantiate rides as part of the Defendant Fact Sheet process are robust and involve substantial manual search efforts. Harrison Decl., at 3–4. For the receipts submitted by the 21 Plaintiffs, those methods required at least 10 hours, long before Uber filed its motion, to (unsuccessfully) attempt to substantiate the 21 receipts. Harrison Decl., at 4. Following those robust, industry-standard searches, Uber was not able to locate any of the alleged receipts submitted by the 21 Plaintiffs and, therefore, could not substantiate their alleged rides. *Id.*

To the extent Uber is able to substantiate Plaintiff's ride, it then produces numerous documents consistent with this Court's orders, including: (a) the Chronicle Trip map for the Subject Trip; (b) the Background Check Results for *each and every* background check conducted on the driver; (c) a complete log of Agreements the Driver accepted with Uber; (d) a complete Account Status Log for the Driver; (e) the Driver "Tax Summary" for *every* year the Driver accepted any rides using the Uber Driver App; (f) all Tickets for the Driver; (g) all Communications exchanged between Uber and various third parties related to alleged misconduct and/or crimes by the Driver; and (h) all Communications, regarding the incident, between Uber and Plaintiff, Uber and the Driver, or Uber and any other witness to the Incident.

## III.    ARGUMENT

### A.    THE 21 PLAINTIFFS WHO SUBMITTED FRAUDULENT RECEIPTS SHOULD BE DISMISSED WITH PREJUDICE, FOLLOWING A SHOW CAUSE PROCESS.

Plaintiffs' Leadership claim to agree that "fraud has no place in this MDL." ECF 3768 at 2. Yet even if a court were to find "actual, intentional fraud," they only go so far as to concede that appropriate action "*may include* dismissal with *or without* prejudice." *Id.* at 2 (emphasis added). A Plaintiff who submitted a fraudulent receipt to join this lawsuit should not be permitted to "try again." As the cases cited by Uber in its opening brief demonstrate, terminating sanctions—*with* prejudice—are a necessary response to actual fraud.[1] Such fraud undermines the judicial process by "mak[ing] it impossible for a court to be confident that the parties will ever have access to the true facts," which are "the foundation for any just result."[2] Dismissal with prejudice is therefore the only appropriate sanction for Plaintiffs who submitted non-bona fide receipts.

---

[1] *See Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1472, 1474 (9th Cir. 1984) (dismissal of claims is warranted where a party, "[p]ursuant to a discovery order," "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses"); *IV Sols., Inc. v. Off. Depot Emp. Welfare Benefit Plan,* Case No. EDCV 07-1603-VAP (JWJx), 2009 U.S. Dist. LEXIS 133650, at *2, *14 (C.D. Cal. May 13, 2009) ("Where 'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings'"—such as "fabricat[ing]" evidence during discovery—"'[i]t is well settled that dismissal is warranted'" under the Court's inherent authority.).

[2] *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998).

1    Tellingly, counsel for 19 out of the 21 Plaintiffs do not even dispute that the receipts submitted by

2    their clients are inauthentic. Only Levin Simes asserts that "[b]oth Plaintiffs assure us their receipts are

3    authentic." ECF 3771 at 2. Levin Simes does not provide any signed declarations, from themselves or

4    their clients, nor do they attempt to explain the facially obvious discrepancies identified in Uber's Motion.

5    For example, as explained in the Motion, the receipt submitted by Plaintiff with Levin Simes

6    Plaintiff MDL ID 1194 shows a ride time of 23 hours 45 minutes for a ride occurring from 11:46 p.m.

7    until 12:01 a.m. This error is consistent with a programming issue in Makereceipt.com that causes a receipt

8    to show a near 24-hour-ride when a user inputs a start time before midnight and end time after midnight.

9    Harrison Decl., at 7. Further, the receipt does not capitalize street names, use commas to separate the street

10   name from the city, or have a space between the city and state, and it includes a period after the state—all

11   of which is inconsistent with Uber's formatting. It also does not include the rider's name.

12   **MDL ID 1194**



20   The receipt submitted by Plaintiff with MDL ID 2350 also has clear formatting errors. For

21   example, the "X" in "UberX" is not capitalized. This receipt contains forward slashes between the

22   timestamps and addresses, rather than vertical lines. Further, it does not include "AM" or "PM" in the

23   timestamps, does not capitalize the entire street name in the drop-off address, and does not include commas

24   in either address. All of these are inconsistent with Uber's formatting.

**MDL ID 2350**



These discrepancies are the result of human error in attempting to manufacture a receipt. Rather than address these discrepancies and why they were not identified by Levin Simes before service, Levin Simes critiques the analysis of Uber's experts as relying on "unidentified and unpresented" receipts produced by Uber for other Plaintiffs' substantiated rides. ECF 3771 at 2. That claim is false. The Declaration of Brett D. Harrison and FTI Consulting, Inc., which Uber filed in support of its Motion, expressly identifies each of the 206 comparator receipts produced by Uber through MDLC as part of the DFS Process that Uber's experts reviewed. ECF 3604-38 at 39–52.

Uber asked Levin Simes to provide native versions of the receipts to support the claims of its clients that their receipts are authentic. Levin Simes did not respond. Uber is not, contrary to Levin Simes' accusation, trying to "do violence to due process." ECF 3771 at 1. Uber did not seek the immediate imposition of terminating sanctions, relief which would not be unusual under these circumstances given relevant case law. Instead, Uber asked the Court to enter a show cause order to give the Plaintiffs an opportunity to argue why their claims should not be dismissed. This is an appropriate process.

For the two Levin Simes Plaintiffs who have doubled down on their claims that the receipts are "authentic," Uber has modified its proposed show cause order to also provide that these two Levin Simes Plaintiffs be required to: (1) produce native versions of the receipts in question; (2) produce any documents or communications relating to the production or creation of their receipts or to Makereceipt.com; and (3) sit for a deposition not to exceed 3 hours relating to the authenticity of their receipts.

       **1.**       **Plaintiffs' Arguments that Uber Was Required to "Compromise" as Part of the Meet and Confer Process Are Meritless.**

Plaintiffs' counsel do not dispute in their briefs that 19 of the 21 Plaintiffs have submitted non-bona-fide receipts. For these Plaintiffs, counsel argue only that Uber (but not Plaintiffs) should have been

required to "compromise" as part of the meet-and-confer, and that Uber should have backed down from its position that the 21 Plaintiffs should be dismissed with prejudice. This argument is without merit.

As an initial matter, Plaintiffs ignore the timeline of the meet-and-confer process.

- On July 22, eight days before its July 30, 2025 filing, Uber sent a letter to Plaintiffs' counsel specifically requesting that 21 Plaintiffs be dismissed with prejudice for not providing bona fide receipts, and that a case management order be entered for missing receipts.

- By July 23, Plaintiffs did not respond. On July 24, Uber sent a follow up email. Plaintiffs' counsel responded later on July 24.

- Uber set a meet-and-confer Zoom call for July 25 and invited all Plaintiffs' counsel. Only the Levin Simes firm appeared. Levin Simes did not agree to dismissal with prejudice.

- Only July 27, Uber agreed to remove two Peiffer Wolf cases from the no-receipt list.

- Uber set a second meet-and-confer Zoom call for July 29. Only the Nigh Goldenberg firm appeared. Uber agreed to remove two Nigh Goldenberg cases from its Motion.

- Uber set another meet-and-confer Zoom call for July 30. The Nachawati and Chaffin Luhana firms appeared. Although Uber's July 22 letter specifically asked Plaintiffs' counsel to agree to dismissal with prejudice, neither the Nachawati firm (three fraud plaintiffs) nor the Chaffin Luhana firm (two fraud plaintiffs) agreed to dismissal with prejudice on that call.

Indeed, more than one month later, no Plaintiffs' counsel has agreed to dismiss a single one of the subject cases with prejudice, as Uber has requested throughout the meet-and-confer process.

That the Plaintiffs' firms did not agree to Uber's requested relief (dismissal with prejudice) when requested in a letter, or on the Zoom calls, and *still* do not agree, distinguishes this case from Plaintiffs' cited cases.[3] Plaintiffs claim that Uber should "compromise" from its dismissal with prejudice position but cite no caselaw requiring a compromise in connection with the meet-and-confer process, much less

---

[3] *See Goldwater Bank, N.A. v. Elizarov*, Case No. 5:21-cv-00616-JWH (SPx), 2022 WL 17078950, at *2 (C.D. Cal. Oct. 7, 2022) (party communicated intent at meet-and-confer to provide other side's requested relief of supplemental discovery responses); *see Palmer v. Hatton*, No. C 05-358 SI (pr), 2006 WL 3365596, at *1 (N.D. Cal. Nov. 20, 2006) (counsel filed motion to compel after sending meet-and-confer letter without engaging or attempting to engage in conference with other side); *Ruiz v. Law Offs. of John E. Bouzane*, Case No. SA CV 16- 0323 FMO (MRWx), 2016 WL 9223779, at *1 n. 1 (C. D. Cal. July 11, 2016) (noting that "simply advising counsel's paralegal that a party desires to have the court rule on the issues addressed in the Motion … does not constitute a good faith meet and confer").

requiring the unreasonable compromise Plaintiffs seek here. ECF 3764 at 3. They cannot do so because such a requirement does not exist.

> **2.** **Plaintiffs' Firms Claim to Be Unable to Contact Their Clients, But Have Had Months or Years to Investigate the Receipt Deficiencies at Issue**.

The Pulaski (seven fraud Plaintiffs), Chaffin Luhana (two fraud Plaintiffs), Cutter Law (three fraud Plaintiffs), and Nachawati (three fraud Plaintiffs) law firms each represent that counsel have been "unable" to contact their clients despite "diligent" outreach efforts and therefore are "not in the position to respond." ECF 3769 at 5; 3764 at 2; 3770 at 2. Counsel never explain how they were purportedly able to communicate with their clients enough to file complaints seeking thousands of dollars from Uber, yet now seek to force Uber to bear costs in defending against their claims, investigating their (fraudulent) receipts, and filing this Motion. This lack of explanation is especially concerning given that the MDL docket of over 2,500 Plaintiffs has been built in part using click-bait ads, which allows some individuals to become "Plaintiffs" in name only without actually participating in the litigation. Counsel have provided no assurances that the clients they apparently can no longer reach were not acquired through these click-bait ads or that they had good (or any) communication with these clients previously. The fact that counsel is unable to reach 16 of 21 non-bona-fide-receipt Plaintiffs[4] when they became at issue in this motion suggests that many similar absentee Plaintiffs linger on this MDL docket.

The Chaffin Luhana firm urges the Court to enter an order that would give these firms an additional "45 days" to make contact with the Plaintiffs. Plaintiffs' counsel have had months or years to vet and investigate the receipts at issue before Uber filed its Motion. Uber served the Defense Fact Sheets in question from May 29, 2024, to July 16, 2025. Through these Defendant Fact Sheets, Plaintiffs had been made aware that Uber was unable to substantiate Plaintiffs' trips, based on the submitted "receipts." These law firms waited months after receiving Uber's DFS forms—at least until Uber raised this issue in its July 22, 2025 meet-and-confer letter—before starting to investigate these receipts.

Nor is there any basis to adopt Plaintiff Leadership's suggestion that Uber should "declare that it cannot locate the ride at issue, and detail the process it … undertook to reach that determination." ECF 3768 at 2-3. Uber already "declare[d] that it cannot locate the ride at issue" when it served its Defendant

---

[4] Counsel for Plaintiffs with MDL IDs 1914 and 2734 withdrew on February 3 and July 21, 2025, respectively.

Fact Sheets for these rides. Leadership need only review the record to see that "the process [Uber] undertook to reach that determination" has already been provided in the Defendant Fact Sheets and by FTI. Cotton Decl., ¶¶ 17–18. There is no reason Uber should have to make the same declaration twice.

**B.     THE COURT SHOULD ENTER A CASE MANAGEMENT ORDER ADDRESSING ALL PLAINTIFFS WHO DID NOT PROVIDE RECEIPTS AND WHOSE RIDES UBER HAS NOT BEEN ABLE TO SUBSTANTIATE**

  **1.     Uber's Request for a Case Management Order is Distinct from, but Still Related to, the 21 Plaintiffs that Provided Non-Bona Fide Receipts**.

Plaintiffs incorrectly claim that Uber "disingenuously merges two distinct issues – the failure to provide any ride receipt and the provision of a fraudulent ride receipt – and uses the latter to tarnish the former." ECF 3771 at 1. In fact, Uber seeks two distinct forms of relief for the two issues: (1) terminating sanctions (following a show cause process) for the Plaintiffs that submitted fraudulent receipts, and (2) entry of a case management order designed to address the distinct—although not unrelated—issue of Plaintiffs that did not provide any receipt at all.

The issues of the submission of fraudulent receipts and the failure to provide any receipt are, however, interrelated and connected. First, the inability of Uber to substantiate the rides in question, despite diligent reasonable attempts to do so, is a cross-cutting issue among both sets of Plaintiffs. Some of the rides claimed by some of these Plaintiffs did not actually occur.

The fact that so many of the Plaintiffs' lawyers whose clients submitted fraudulent receipts cannot even get in touch with their clients for weeks shows that issues with this docket—based in part upon click-bait ads—are pervasive. The same lack of attorney-client contact also applies to the Plaintiffs that have not provided any receipt at all. Some PTO 5 responses even stated that counsel were attempting (apparently unsuccessfully) to communicate with their client to obtain the receipt. *E.g.*, Cotton Decl. Ex. 13, MDL IDs 1184 and 1189 ("Plaintiffs' counsel is working on contacting Plaintiff to obtain the ride receipt"). Other PTO 5 responses contemplated additional follow up, although no follow-up has ever occurred. *E.g.*, *id.*, MDL IDs 2293 and 2294 ("Plaintiff's counsel is working with Plaintiff to obtain the ride receipt."); MDL ID 2774 ("Plaintiff is not able to provide the ride receipt at this time. Will supplement if available."); MDL ID 2850, 2854 ("At this time, Plaintiff is unable to obtain the receipt for the ride at issue.").

Although Uber does not claim that *all* 90 no-receipt Plaintiffs committed fraud, there is fraud in the no-receipt population as well. Plaintiff with MDL ID 1384, now known (under a different name) as MDL ID 2774, is an example. As evidenced in Uber's second motion regarding non-bona-fide receipts filed on August 28, ECF 3784, that Plaintiff (a) submitted a fraudulent receipt through one law firm on June 13, 2024,[5] and then (b) on January 14, 2025, using a slightly different name, submitted only a ride information form through another Plaintiffs' firm[6] with the boilerplate statement that "Plaintiff is not able to provide the ride receipt at this time." Cotton Decl., Exs. 8–9.

**MDL ID 1384**




---

5   On January 8, 2025, Peiffer Wolf moved to withdraw as counsel for MDL ID 1384 because Plaintiff "failed to establish useful communication with Peiffer Wolf" and "failed to provide Peiffer Wolf with sufficient or adequate information to confirm [Plaintiff's] claim." Case No. 3:24-cv-03441-CRB, ECF 7 at 2. The Court granted that motion. Case No. 3:24-cv-03441-CRB, ECF 8 at 1.
6   While still being represented by Peiffer Wolf, Plaintiff also retained Kherker Garcia and filed a duplicate complaint on December 31, 2024. Kherker Garcia set-up an MDLC profile under MDL ID 2774 and uploaded the ride information form on January 14, 2025 without further investigation.

**MDL ID 2774**

> **1. Why the receipt is unavailable:**
> Plaintiff is not able to provide the ride receipt at this time. Will supplement if available.

In their August 27 response brief, Plaintiffs' Leadership claimed that "[p]articularized allegations of fraud must be taken seriously, investigated, and resolved." ECF 3768 at 2. But Kherker Garcia, the second law firm to have represented MDL ID 2774, failed to respond to Uber's multiple attempts to meet and confer prior to the August 28 filing of its second receipts motion, which included a non-bona fide receipt. Uber is faced with not only defending against thousands of lawsuits, but also doing the lion's share of the work to investigate their legitimacy, despite Plaintiffs' counsel's claims to take fraud "seriously" and "investigate" it.

### 2. The Court Should Establish New Procedures Related to PTO 5, as Plaintiffs' Leadership Agrees.

Plaintiffs' Leadership concedes that "PTO 5 should be modified," ECF 3768 at 2. But Plaintiffs, including Leadership, incorrectly assert that the sole purpose of PTO 5's receipt requirement was "to allow Uber to identify the trip." ECF 3768 at 3; ECF 3771 at 3. That may be the purpose Plaintiffs are focused on, but, as shown by the example of the Plaintiff formerly known as MDL ID 1384 and now known as MDL ID 2774 (discussed above), weeding out fraud is another essential purpose. Uber proposes that each Plaintiff who claims to be unable to identify a receipt must provide a non-boilerplate explanation and must specify the oldest and newest Uber receipt available in their email and their Uber app. No part of this request is onerous, given that a simple inbox search would yield these basic results.

In addition to fraud, this litigation faces another critical issue: Plaintiff non-participation. Hundreds of Plaintiffs have failed to provide a receipt or other information sufficient to permit Uber to substantiate their ride, preventing Uber from preparing any defense whatsoever while simultaneously allowing an empty claim to remain active. For all 90 of the no-receipt Plaintiffs included in its Motion, Uber already served a Defendant Fact Sheet indicating its inability to substantiate *every* ride in question. Indeed, of the Plaintiffs that have not provided a ride receipt (including those not discussed in Uber's Motion), Uber has been unable to substantiate less than 24 percent of rides. Substantiated rides have been excluded from Uber's Motion from the beginning.

Other Plaintiffs' counsel, however, departed from Plaintiffs' Leadership's approach, pointing to their supposed compliance with PTO 5 as ending the matter. For example, 45 Plaintiffs represented by Williams Hart & Boundas claim that they "have provided Uber with all information in their possession about the accountholder who ordered the ride." ECF 3766 at 4. Six Plaintiffs represented by Cutter Law likewise focus on whether their responses were deficient under PTO 5. ECF 3770 at 3. But the fact remains that (1) Uber has been able to validate *none* of the rides submitted by those Plaintiffs; and (2) none of those Plaintiffs have specified the earliest and latest dates of receipts available in their email and Uber app. And the issue is not just whether Plaintiffs' responses are sufficient under PTO 5, but whether, as Plaintiffs' Leadership correctly propose, "PTO 5 should be modified." ECF 3768 at 2-3.[7]

Uber does not dispute that the issues that led to its request for a case management order may occur beyond the population of Plaintiffs addressed in Uber's original Motion, as Plaintiffs' Leadership suggest. ECF 3768 at 3. In light of Plaintiffs' Leadership's recommendation that these issues not be addressed piecemeal, *id.* at 2, Uber is submitting a revised proposed case management order that will extend its procedures to *any* Plaintiff who has not submitted a ride receipt where Uber has not been able to substantiate the ride.[8] The procedures will apply immediately to the 90 Plaintiffs subject to the Motion, and within 30 days of Uber providing notice to any other plaintiffs.

---

[7] While Plaintiffs' Leadership do not dispute that there is a need for additional case management with respect to receipts (ECF 3768 at 3), their proposed modifications ignore Uber's prior searches. For example, MDL ID 2703 claimed that the ride receipt is unavailable because she "cannot access account" and provided the name, phone number, and email address of the account holder who allegedly ordered the ride and approximate date and starting and ending location of the ride. Cotton Decl., Ex. 10. Uber conducted a reasonable search based upon this information, provided a DFS on February 1, 2025 for MDL ID 2703, and certified that it was unable to locate the ride. *Id.*, Ex. 11. Four months after Uber's declaration, Plaintiff submitted an amended ride information form that only updated the "████████████████████████████████████████████████" and further noted: "The driver was kind of skinny, he had hair, she thinks he was causation [sic]." *Id.*, Ex. 12. Despite the lack of a meaningful amendment, Uber conducted another search, and again confirmed that it was unable to substantiate the ride. Cotton Decl., ¶ 15. Plaintiffs' Leadership's modifications to Uber's proposed PTO 5 are premised upon the false notion that Uber is wasting its own, Plaintiffs', and the Court's time by badgering Plaintiffs to provide receipts in cases where Uber has already been able to substantiate the Plaintiff's ride. As discussed above, Uber has served notices verifying that it has not been able to substantiate the rides associated with *any* of the Plaintiffs that are the subject of the Motion.

[8] As in its prior motion, Uber excludes from the CMO Plaintiffs who state that someone else besides them ordered the ride—a distinct situation. Uber may later request a CMO as to these Plaintiffs.

Plaintiffs inexplicably suggest that Uber's proposed procedures are "one-sided." ECF 3768 at 3. As Plaintiffs are aware, the Defendant Fact Sheet process already addresses Uber's side of the procedure. Should Plaintiffs need information concerning the status of Uber's search results for any of the subject rides, they need only review the existing Defendant Fact Sheets. Moreover, by its express terms, Uber's proposed CMO would apply only to Plaintiffs for whom Uber has not been able to substantiate the ride.

The issue with no-receipt Plaintiffs is not just that they have not provided enough information to substantiate rides, but also, as discussed above, fraud deterrence. For some Plaintiffs, counsel has provided such threadbare, boilerplate information as to blur the line. For example, 19 Nachawati Plaintiffs submitted responses with an identical boilerplate phrase: "*it is possible* that an older *or* now expired number *or* email address *may* have instead been associated with this ride *or* account." Cotton Decl., Ex. 13. (emphasis added). The Nachawati Firm does not assert that it interviewed all 19 of these Plaintiffs and that all 19 said they *may* have used "an older or now expired phone number" *or* an "old email address" associated with the ride *or* account and cannot recall which. The chances that 19 different Plaintiffs, following a reasonably diligent investigation, each swore under oath to this verbatim and highly conditional explanation are so low as to be practically non-existent.

Thus, the Court should enter the revised case management order attached as Exhibit B, which addresses all Plaintiffs who produced no receipt and whose alleged rides cannot be substantiated by Uber.

## IV.    CONCLUSION

Uber respectfully requests that the Court (1) enter the revised show cause order attached to this reply as Exhibit A, requiring the Plaintiffs listed therein to show cause as to why their claims should not be dismissed for providing a non-bona fide receipt; and (2) enter the revised proposed case management order attached to the this reply as Exhibit B, addressing all Plaintiffs who have not produced receipts and as to which Uber has been unable to substantiate a ride.

DATED: September 5, 2025                    Respectfully submitted,

                                           */s/ Laura Vartain Horn*
                                           Laura Vartain Horn (SBN 258485)
                                           **KIRKLAND & ELLIS LLP**
                                           555 California Street, Suite 2700
                                           San Francisco, CA 94104
                                           Telephone: (415) 439-1625
                                           laura.vartain@kirkland.com

                                           Allison M. Brown (Admitted *Pro Hac Vice*)
                                           **KIRKLAND & ELLIS LLP**
                                           2005 Market Street, Suite 1000
                                           Philadelphia, PA 19103
                                           Telephone: (215) 268-5000
                                           alli.brown@kirkland.com

                                           Jessica Davidson (Admitted *Pro Hac Vice*)
                                           **KIRKLAND & ELLIS LLP**
                                           601 Lexington Avenue
                                           New York, NY 10022
                                           Telephone: (212) 446-4800
                                           jessica.davidson@kirkland.com

                                           SABRINA H. STRONG (SBN: 200292)
                                           sstrong@omm.com
                                           JONATHAN SCHNELLER (SBN: 291288)
                                           jschneller@omm.com
                                           **O'MELVENY & MYERS LLP**
                                           400 South Hope Street, 19th Floor
                                           Los Angeles, CA 90071
                                           Telephone: (213) 430-6000
                                           Facsimile: (213) 430-6407

                                           PATRICK L. OOT, JR. (*Pro Hac Vice*)
                                           oot@shb.com
                                           **SHOOK, HARDY & BACON, LLP**
                                           1800 K Street NW, 10th Floor
                                           Washington, DC 20006
                                           Telephone: (202) 783-8400
                                           Facsimile: (202) 783-4211

REPLY IN SUPPORT OF MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac
Vice*) ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*Attorneys for Uber*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

REPLY IN SUPPORT OF MOTION FOR ENTRY OF TWO ORDERS RELATED TO RECEIPTS
Case No. 3:23-md-03084-CRB (LJC)

# CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.


By: */s/ Laura Vartain Horn*
Laura Vartain Horn