UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084 CRB **JOINT DISCOVERY LETTER BRIEF REGARDING 30(b)(6) TOPICS AND WRITTEN DISCOVERY** |
| This Document Relates to: ALL ACTIONS | Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**REDACTED**

Dear Judge Cisneros:

Pursuant to Pretrial Order No. 8 (ECF No. 323), the parties respectfully submit this joint letter regarding Uber's Responses to Interrogatories and Requests for Admission served in lieu of seeking 30(b)(6) deposition testimony. Uber's responses to particular Interrogatories and Requests for Admission is attached as **Exhibit A**.

**Plaintiffs' Position**:

Plaintiffs served a 30(b)(6) deposition notice on February 26, 2025 concerning Uber's transportation business and another on May 16, 2025 concerning Uber's revenue. As of July 21, 2025 (well past the June 16, 2025 deadline for substantial completion of common fact discovery), Defendants had not provided witnesses or dates for these depositions. Instead, Defendants proposed Plaintiffs reformulate the outstanding topics as written discovery requests. Plaintiffs agreed to consider written responses in lieu of seeking deposition testimony. The parties agreed that Plaintiffs reserved their rights to pursue a deposition if Defendants' responses were deficient. Plaintiffs served interrogatories and RFAs on July 30 and Defendants completed their responses on August 18. After meeting and conferring, the parties dispute whether certain of Defendants' responses are deficient. Plaintiffs respectfully request the Court order Uber to answer the below interrogatories/RFAs or provide a witness and date for a 30(b)(6) deposition on these topics within 3 days.

**Interrogatory No. 2 - Female Ride Data**: Plaintiffs requested that Uber provide the total number of rides provided to female riders.  Ex. D; Ex. E. If Uber is able to use inference methodology in estimating female ridership for its own business purposes, there is no reason it cannot do the same in responding to Plaintiffs' discovery requests.

Plaintiffs are not requesting that Uber conduct a new analysis, but rather query existing databases based on regularly used gender inference methodology. Querying an existing database to generate a report is not equivalent to creating a new document. *See 4WEB, INC. & 4WEB, LLC, Plaintiffs, v. NUVASIVE, INC., Defendant.*, 2025 WL 2495243, at *5-6 (S.D. Cal. Aug. 28, 2025) (holding that the technical burden of creating a new dataset based on an existing database does not excuse production.); *see also United States v. Dish Network, LLC*, 2011 WL 98951, at *4 (C.D. Ill. Jan. 10, 2011) ("Interrogatories ask questions. The recipient of the interrogatory must prepare a written answer. That necessarily requires creating a document."); *Johnson v. Cmty. Corr. of Marion Cnty.*, 2018 WL 11468386, at *1 (S.D. Ind. Aug. 28, 2018) ("[T]he fact that a litigant does not, in the ordinary course of its operations, compile data in a fashion that would serve as a ready-made answer to an interrogatory does not excuse it from answering.") Notably, Uber does not challenge the relevance of this data or identify any burden in running the relevant queries. The interrogatory must be answered.

**Interrogatory No. 8 - Driver/Uber Fare Split Data**: Plaintiffs asked Defendants to identify the average percentage of each fare that (a) the driver received and (b) Uber received for each year from 2012 to present. This information is relevant because it goes to the nature of Uber's business; in particular, it responds to the company's contentions that it is simply a matching service, not a transportation company, and so potentially goes to whether Uber is a common carrier and the existence and scope of its duties to its passengers. Uber responded, ▇▇▇ Ex. A at 12. ▇▇▇ Ex. B at 109:2-110:24; Ex. C.

As demonstrated by the case law cited above, the fact that responding to an interrogatory may necessitate querying and compiling existing data does not excuse Defendants from responding. Should the Court agree that the request is overbroad, Plaintiffs agree to limit the request to a response based on the payment averages that Uber has calculated in the past.

**Interrogatory No. 10 - Executive Compensation**: Plaintiffs requested that Defendants identify the annual compensation for each member of Uber's Executive Leadership Team. Defendants provided this information for 2024. On August 25, Plaintiffs requested that Defendants supplement their response to cover annual compensation for each member of Uber's Executive Leadership Team for each year going back to 2021. Defendants have refused to do so.

Discovery is permitted for "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). Plaintiffs do not seek this information to embarrass or harass the individuals at issue, as Defendants suggest. Executive compensation is relevant to Plaintiffs' claims because it goes to how Uber incentivized its team for business success as opposed to safety. In cases where compensation is relevant, courts have held that a protective order is sufficient to address any privacy concerns related to confidentiality. *Cervantes v. CEMEX, Inc.*, 2014 WL 4104200, at *11 (E.D. Cal. Aug. 18, 2014) (overruling privacy objections because a stipulated protective order was sufficient to address confidentiality concerns regarding employee pay records). Given the protective order in place here, Defendants' privacy argument does not pass muster. Relevant information that is sought in accordance with the law is further not objectionable on the grounds of harassment. Plaintiffs' request is distinguishable from *Pennington*, where evidence related to executive compensation was not relevant. *Pennington v. Clayton Indus.*, 2002 WL 34357428, at *2 (C.D. Cal. Apr. 18, 2002).

**Request for Admission No. 1**: Plaintiffs requested that Defendants admit that Uber controls the fare charged to a rider and the portion of the fare that the Uber driver and Uber itself receives for each ride. ▇▇▇ By this logic, a convertible owner does not "control" whether the roof is down or up because he does not "control" whether it is raining. These word games make no sense and only illustrate that the RFA compromise approach Uber proposed did not work. The Court should

3

order a brief deposition. Uber criticizes Plaintiffs for "seeking to keep discovery open indefinitely," but these deposition topics were noticed nearly *seven months ago*. Plaintiffs agreed to try written discovery as a compromise, but without waiver of their rights to a deposition where necessary.

**Defendants' Position**:

     **Interrogatory No. 2 - Female Rider Data**:  Very simply, the data that Plaintiffs seek – reliable, comprehensive information regarding the numbers of all U.S. female riders from 2012 to present – does not exist at Uber.  For *drivers* who use the platform, Uber collects documentation, including driver's licenses, that provides reliable information regarding the gender.  As anyone who has signed up to use the Uber app as a *rider* understands, riders are not required to submit such documentation.  In response to Interrogatory No. 2, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

What Plaintiffs are seeking is not data at all but rather *inferences* that are based on, among other information, riders' self-described first names.  While Uber acknowledges that it has used gender inferences to characterize the gender of U.S. riders, such inferences are subject to significant accuracy limitations, especially for gender-neutral names and for older trips. Accordingly, the inferences cannot be used to accurately quantify the number of trips in the U.S. with female riders.

This Court should not compel Uber to conduct ***new***, extensive and unnecessary additional analyses that would yield nothing more than extremely speculative numbers cloaked in the imprimatur of "data."  Uber does not have an obligation to create or perform such analyses at the direction of Plaintiffs. As federal courts in this District and across the country have repeatedly held, a party "is not required to create a document where none exists."  *Ujhelyi v. Vilsack*, No. C 12-04282 JSW, 2014 WL 4983550, at *4 (N.D. Cal. Oct. 6, 2014), *aff'd*, 659 Fed. App'x 285 (9th Cir. 2017) (quoting *Goolsby v. Carrasco*, No. 1:09–cv–01650 JLT (PC), 2011 WL 2636099, at *7-8 (E.D. Cal. July 5, 2011)); *see also Auto. Fin. Corp. v. DZ Motors, LLC*, No. 16-7955 (MAS) (DEA), 2018 WL 11446277, at *6 (D.N.J. Dec. 17, 2018) ("It has been long and widely held that the Court cannot compel a party to create new documents for the purpose [of] responding to a Request for Production.").  Moreover, courts have recognized that this long-held principle applies to data requests styled as interrogatories, like the one at issue here.  In *Lerblance v. Calyx Energy III, LLC*, No. CIV-23-47-JFH-GLJ, 2024 WL 3275789, at *3–4 (E.D. Okla. July 2, 2024), in connection with a request for production, the court refused to compel Defendant to "create a report from [a] data base by extracting certain information from it and creating a report that does not otherwise already exist."  The Court also refused to compel Defendant to answer a similar interrogatory, finding that "[a]lthough styled as an interrogatory, it is best described as a hybrid interrogatory/request for production because it specifically asks Defendant to provide the requested information 'in searchable electronic spreadsheet form.'" Plaintiffs' interrogatory – which seeks new analysis and output relating to tens of millions of riders – is accurately described as a similar hybrid request.  Notably, Plaintiffs have not cited any authority that would support their demand for Uber to conduct ***new*** analyses that do not already exist and then produce those newly created inferences for this litigation. The reason for this is simple: Plaintiffs' request is contrary to law and must be denied.

**Interrogatory No. 8 - Driver/Uber Fare Split Data**: Plaintiffs' description above provides no sense of the enormous complexities and burdens of their request, which seeks Uber to perform calculations regarding *more than 10 billion rides* across 13 years, over which the methods by which drivers are paid have changed and for which, at any given time, such payments are affected by other factors, including changing regulatory fees and policies and practices regarding adjustments and refunds. Uber has already provided Plaintiffs with significant, reasonably available data regarding payments by riders and amounts received by drivers and Uber in connection with rides. In connection with these interrogatories and in 30(b)(6) testimony, Uber has provided detailed information regarding those amounts for each of the trips in the Wave 1 bellwether cases. In addition, in connection with prior discovery requests, Uber provided information regarding amounts received by Uber for the thousands of trips included in Uber's three U.S. Safety Reports. But because Plaintiffs now seek average amounts related to *billions of trips*, Interrogatory No. 8 is unreasonable, overly broad, and unduly burdensome, and Uber's response that it is ████████████████████ ████████████████████████████████ is accurate. Uber does not readily possess the data requested and contrary to Plaintiffs' suggestion, the recent 30b6 testimony of Mr. Dobbs does not indicate otherwise. ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████ His testimony does not and cannot render Plaintiffs' request that Uber analyze more than 10 billion trips with even greater numbers of underlying data points reasonable or proportional. Further, based on the authority cited above, Uber should not be required to create such data at Plaintiffs' whim.

**Interrogatory No. 10 - Executive Compensation**: Through its responses to other interrogatories, documents previously produced in this litigation, and extensive testimony of 30(b)(6) witnesses, Defendants have provided abundant information regarding the executive compensation process, the components of its executives' compensation, and the role that achieving certain metrics (relating to growth as well as other company values and priorities, including safety) may have on certain components of compensation. Such information is also included in Uber's public filings. Accordingly, to the extent that Plaintiffs claim that they need information to show "how Uber incentivized its team for business success as opposed to safety" (which Uber denies), they have it.

Through Interrogatory No. 10, Plaintiffs seek something different: non-public information showing the total compensation of non-parties, the disclosure of which would violate the privacy rights of those individuals, some of whom have responsibilities unrelated to Uber's Rides business or the safety issues that are the subject of this litigation. While Plaintiffs claim that a protective order is sufficient to protect privacy interests, that is a particularly specious argument in this litigation, where the Court has recognized that *at least one violation of the MDL protective order has already taken place*, by a member of Plaintiffs' MDL leadership, Mr. Stanley, see ECF 3708, and deferred ruling on another motion to enforce the protective order relating to a leak of documents produced in the MDL to the New York Times. See ECF 3822. Moreover, while Plaintiffs disclaim any intent to embarrass or harass the individuals, they will no doubt seek to use this private information at trial. Such use would not only embarrass and harass these individuals but also inflame the passions of the jury, which courts have found improper. *Pennington v. Clayton Indus.*, No. CV00-12266FMC (Ex), 2002 WL 34357428, at *2

(C.D. Cal. Apr. 18, 2002) (excluding evidence of executive compensation, finding that it would distract jurors from legitimate issues in the case).  And Plaintiffs already have extensive written responses and sworn testimony that addresses how safety is taken into account in compensation and total compensation for Uber's named executive officers.  In the spirit of cooperation and in addition to the 2024 information already provided, Defendants have agreed to provide, for 2021, 2022 and 2023, total compensation information for its named executive officers and Gus Fuldner, who has had significant safety responsibilities.  Plaintiffs have thus refused this proposed compromise, which Uber urges the Court to adopt.  Anything more is neither relevant nor proportional.

**Request for Admission No. 1**:  Plaintiffs propounded an overreaching request for Uber to admit that Uber "controls" amounts paid by or to various parties associated with a ride (rider, driver, Uber).  As a comparison of ride receipts will show (and as further illustrated by Greg Brown's 30b6 deposition testimony and aids provided in connection with his deposition), numerous factors – from supply and demand to local taxes and fees to events or circumstances associated with a particular ride – all impact those amounts; therefore, Uber cannot be said to control them.  While Uber's response may not serve Plaintiffs' purposes, it is accurate and complies with the Federal Rules.  Moreover, these issues have been addressed at multiple prior 30b6 depositions, including those of Greg Brown and Chad Dobbs.  The Court should reject Plaintiffs' argument that the basic economic principles raised in Uber's answer somehow warrant further testimony.

\*\*\*

As demonstrated above, Uber has provided or agreed to provide Plaintiffs reasonable and responsive information in connection with these written requests.  Plaintiffs' sweeping requests – including for large-scale unreliable "data" and irrelevant non-public compensation information – raise concerns about further improper disclosure to media outlets, given prior protective order violations.  These requests and their unfounded effort to take additional deposition testimony – nearly three months after the substantial completion deadline for fact discovery – further manifest an intent to keep discovery open indefinitely, undermining the Court's case management efforts.

Dated: September 8, 2025                                          Respectfully Submitted,

By: /s/ Sarah R. London                                           By: /s/ Christopher Cox

ROOPAL P. LUHANA *(Pro Hac Vice)*  
**CHAFFIN LUHANA LLP**  
600 Third Avenue, Fl. 12  
New York, NY 10016  
Telephone: (888) 480-1123  
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)  
**GIRARD SHARP LLP**  
601 California St., Suite 1400  
San Francisco, CA 94108  
Telephone: (415) 981-4800  
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)  
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**  
555 Montgomery Street, Suite 820  
San Francisco, CA 94111  
Telephone: (415) 426-5641  
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

**KIRKLAND & ELLIS LLP**  
ALLISON M. BROWN  
JESSICA DAVIDSON  
LAURA VARTAIN  
CHRISTOPHER COX

**SHOOK, HARDY & BACON L.L.P**.  
MICHAEL B. SHORTNACY  
PATRICK L. OOT, JR.  
CHRISTOPHER V. COTTON  
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**  
SABRINA H. STRONG  
JONATHAN SCHNELLER

*Attorneys for Defendants*  
UBER TECHNOLOGIES, INC.,  
RASIER, LLC, and RASIER-CA, LLC

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: September 8, 2025

By: /s/ *Maya R. Kalonia*  
Maya R. Kalonia