UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL BELLWETHER CASES | Case No. 3:23-md-03084-CRB (LJC)<br><br>**MOTION FOR RELIEF FROM MAGISTRATE JUDGE'S ORDER REGARDING JOINT DISCOVERY LETTER CONCERNING FLACK DATA**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: Courtroom 6 – 17th Floor |
|---|---|

By: /s/ LAURA VARTAIN HORN
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

MOTION FOR RELIEF FROM MAGISTRATE JUDGE'S ORDER REGARDING JOINT DISCOVERY LETTER CONCERNING FLACK DATA; Case No. 3:23-md-03084-CRB (LJC)

# **INTRODUCTION**

Plaintiffs' request for "Flack data" and the Magistrate Judge's Order requiring production of these data are the latest chapter in a long series of harassing discovery requests seeking materials that Plaintiffs do not legitimately need to advance this litigation.

Uber has already expended enormous time and effort to provide Plaintiffs with data regarding the rate of alleged sexual assault incidents on rides arranged through the Uber platform. In particular, and in accordance with the parties' agreement, Uber produced in chart form the number of alleged incidents for each of 21 taxonomy categories for each month from January 2017 through December 2024. As early as August 2024, Plaintiffs were aware that Uber used a system called "Flack" that combined multiple incident tickets on the same trip into a single event. At no point during the next 11 months did Plaintiffs ever request data from this system, which merely uses information from two other systems (Jira and Bliss) that Plaintiffs already have. Nonetheless, the Magistrate Judge recently granted Plaintiffs' request (made two months after the deadline for substantially completing fact discovery) that Uber produce the number of alleged incidents displayed in the "Flack" system on the asserted grounds that: (1) fact discovery is still open; and (2) Uber's Head of Safety for the Americas, Hannah Nilles, gave "new testimony" about "Flack" in July. Uber respectfully submits that neither ground justifies Plaintiffs' belated discovery request.

*First*, the fact that the discovery window has not closed does not render Plaintiffs' discovery request timely. Rather, the purpose of a substantial completion deadline is to ***preclude*** last-minute requests that could have been propounded earlier. As the Magistrate Judge expressly recognized, Plaintiffs "have been aware of Flack for over a year[.]" Order at 3. There is no reason why Plaintiffs could not have sought their requested discovery earlier.

*Second*, Ms. Nilles' testimony did not add anything "new" to the documents Plaintiffs already possess pertaining to "Flack." And nothing in Ms. Nilles' testimony contradicts that Jira and Bliss are the systems that actually capture incident reporting data—the very data that

Plaintiffs already possess.

## BACKGROUND

### A. Uber Timely Produced Data Regarding Its Tracking Of Alleged Incidents.

Plaintiffs' interrogatories requested that Uber produce "[f]or each month in the year[s] [2017 through 2024], specif[ied] by category, the number of Sexual Violence Incidents in the United States that YOU categorized into each of the [Taxonomy categories]." ECF 3096-2 at 3-9. Uber produced that information in two charts, *see id.* at 3-7; ECF 3125, and Plaintiffs deposed two corporate witnesses, Katherine McDonald and Todd Gaddis, about the subject.

### B. Plaintiffs Knew About The "Flack" System But Never Timely Pursued Discovery.

Beginning in August 2024, Uber produced thousands of documents that discuss what "Flack" is, the information it contains and how Uber uses that system. Eight months later, Uber's 30(b)(6) witness, Katherine McDonald, confirmed that "Flack" contains fields that are not the alleged incident data itself, but rather use the Bliss and Jira information captured by Uber's prior discovery responses. 4/24/2025 McDonald Dep. 42:20-43:25, 45:14-46:8. For example, Ms. McDonald explained that a reported-against field in "Flack" identifies which individuals are possibly reported against by looking at the Bliss and Jira data to determine which party was first to report. 4/25/2025 McDonald Dep. 110:13-113:6.

### C. Plaintiffs Seek New Discovery After The Substantial Completion Deadline.

Under PTO 21, fact discovery was required to be "substantially complete by June 16, 2025." PTO 21 at 3-4, ECF 1950. Nonetheless, in August 2025, Plaintiffs sought data pertaining to the number of incident categorizations after "Flack" combined multiple tickets for the same trip into a single event. Although Uber (in the spirit of cooperation) provided Plaintiffs with a list of "Flack" fields, Uber objected to producing new data on the ground that Plaintiffs' request was untimely. On September 5, 2025, the Magistrate Judge ordered Uber to produce by September 9, 2025 "numbers" from the "Flack" database. Order at 5.

## ARGUMENT

The Magistrate Judge's ruling granting Plaintiffs' belated discovery request "is clearly erroneous" and "contrary to law." Fed. R. Civ. P. 72(a).

***First***, as the Magistrate Judge expressly recognized, Plaintiffs' request for "Flack" data was made well after "the substantial completion deadline ha[d] passed[.]" Order at 4. The Magistrate Judge nonetheless reasoned that Plaintiffs' discovery request "is not precluded" by that deadline because "fact discovery remains open[.]" *Id.* at 4-5.[1] However, "[d]iscovery is meant to be a balanced and, hopefully, front-loaded process," and discovery "[d]eadlines do not grant the parties carte blanche rights to demand sizeable discovery requests up to the last possible minute." *Haviland v. Cath. Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005) (denying motion to compel discovery filed "on the last day of discovery"). Accordingly, a party must diligently pursue discovery as it learns of its existence; any other rule would render substantial completion deadlines a dead letter. *See Terramar Retail Ctrs., LLC v. Marion #2-Seaport Tr. U/A/D June 21, 2002*, No. CV 12875-VCL, 2018 WL 6331622, at *1 (Del. Ch. Dec. 4, 2018) (finding party "engaged in discovery misconduct" where it produced "a limited number of documents by the deadline for substantial completion of production" and produced the remainder "just ten days before the discovery cutoff").

The fact that the "parties have previously acknowledged th[e] distinction" between the substantial completion deadline and "the complete cutoff of fact discovery," Order at 4, does not dictate a different conclusion. The sole example highlighted by the Magistrate Judge concerned an agreement by the parties to postpone a fact deposition until two weeks after the substantial completion deadline. But as the Magistrate Judge recognized, a modest (jointly

---

[1] Although the Magistrate Judge referred to Plaintiffs' requests as a "supplementation" of Uber's responses to Plaintiffs' interrogatories, Order at 2, Plaintiffs never requested the "Flack" data prior to August 2025. Thus, Plaintiffs are seeking entirely new discovery rather than supplemental information.

agreed-upon) delay of a single fact deposition would "not delay the September 22, 2025 close of discovery or otherwise delay the progress of this litigation to trial[.]" *Id.* (citing ECF 3056 at 3). Here, by contrast, sustaining Plaintiffs' request would not only effectively force Uber to redo prior fact discovery that was fully responsive to Plaintiffs' previous interrogatories; it would detour Uber from the time-consuming expert discovery that is supposed to be the focus of this phase of the litigation. As this Court has repeatedly stated, the parties should be focused on preparing for the imminent January 2026 trial date. Plaintiffs' attempt to continue harassing Uber with unnecessary, abusive discovery is contrary to that objective. Moreover, if history is repeated, it may prove that the real goal of this discovery is to feed protected material produced by Uber to the media, detracting from the real issues in this litigation. In short, the isolated deposition example referenced by the Magistrate Judge only serves to highlight why Plaintiffs' discovery request is untimely and improper.

Requiring Uber to produce this information would be especially prejudicial at this stage of the proceedings because Uber had reasonably relied on Plaintiffs' "earlier agreements ***not*** to pursue further information regarding Flack[.]" Order at 4 (emphasis added). Although the Magistrate Judge reasoned that those prior agreements are outweighed by "the importance of the information as evidence of what Uber knew about the number and rates of sexual assault and sexual misconduct incidents," *id.*, Uber has already produced information pertaining to this topic. Indeed, when Ms. McDonald testified in April 2025 that "Uber uses a system called Flack to logically 'combine multiple tickets on the same trip [] to a single event'" 4/24/2025 McDonald Dep. 45:14-17 (citation omitted), Uber was in the midst of compiling data and creating charts showing the number of alleged incidents for each of the 21 categories for each month from January 2017 through December 2024 in accordance with the parties' agreement. ECF 3096-2 at 3-9; ECF 3125. Plaintiffs never pursued production of Flack data or requested that Uber produce the data with combined numbers. And when Uber provided its second chart to Plaintiffs in mid-June (after Ms. McDonald's deposition testimony), Plaintiffs still agreed to

Uber's production of data with non-combined numbers. If data pertaining to "Flack" were truly important, the onus was on Plaintiffs to diligently pursue it prior to the substantial competition deadline rather than mislead Uber into believing that such information need not be produced.

**Second**, the Magistrate Judge also reasoned that "new testimony" by Uber's Head of Safety for the Americas, Hannah Nilles, on July 23, 2025 "revealing her reliance on Flack data" was "sufficient new information to warrant revisiting the issue and allowing at least some discovery into the data." Order at 5. But as set forth in detail above, Plaintiffs knew about "Flack" and its capabilities long before Ms. Nilles' deposition, as exemplified by their receipt of thousands of documents produced by Uber discussing this system, their questioning of Ms. McDonald in April of this year and their own draft PTO 8 brief that summarized some of Ms. McDonald's testimony. *See, e.g.*, *Moriarty v. Am. Gen. Life Ins. Co.*, No. 17-CV-1709-BTM-WVG, 2021 WL 6197289, at *8 (S.D. Cal. Dec. 31, 2021) ("Plaintiff had ample opportunity to probe further into the witnesses and meetings at issue while the discovery period remained open and could have moved the Court for additional time, if needed, before fact discovery closed on January 31, 2019. Plaintiff did not do so, and the consequence of that is hers to bear."). Ms. Nilles' testimony did not add anything new to the evidence already within Plaintiffs' possession, much less contradict any of the information set forth in the categorization charts previously produced by Uber. Indeed, Plaintiffs did not even question Ms. Nilles about the information in the categorization charts, confirming that Plaintiffs are using her testimony as a pretext to evade the substantial competition deadline.

## CONCLUSION

For the foregoing reasons, the Court should reverse the Magistrate Judge's order requiring Uber to produce Flack data.

## FILER'S ATTESTATION

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the

signatories identified above has concurred in this filing.

DATED: September 9, 2025                    Respectfully submitted,

By: */s/ Laura Vartain Horn*
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC

6
MOTION FOR RELIEF FROM MAGISTRATE JUDGE'S ORDER REGARDING JOINT DISCOVERY LETTER CONCERNING FLACK DATA; Case No. 3:23-md-03084-CRB (LJC)

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

*/s/ Laura Vartain Horn*