### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT DISCOVERY LETTER BRIEF PURSUANT TO ECF NO. 3848** |
| This Document Relates to:<br><br>ALL BELLWETHER ACTIONS | Judge:        Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

Dear Judge Cisneros:

Pursuant to the Court's September 5, 2025 Order Regarding Joint Discovery Letter Concerning Flack Data (ECF No. 3848), the Parties respectfully submit this letter regarding additional discovery Plaintiffs believe is warranted from Flack and/or Uber's Dashboard.

DATED: September 15, 2025

Respectfully submitted,

By: */s/ Roopal P. Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)

*s/ Christopher D. Cox*
**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
CHRISTOPEHR D. COX
JESSICA DAVIDSON
LAURA VARTAIN

**SHOOK, HARDY & BACON L.L.P.**
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

**PEIFFER WOLF CARR KANE CONWAY
& WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**Plaintiffs' Position:**

Plaintiffs respectfully request that Uber be ordered to produce: (1) by September 19, 2025, all data in Flack related to sexual assault or sexual misconduct ("sexual violence") incidents between January 1, 2012 through December 1, 2024,[1] including from all fields identified in Exhibit A; and (2) a corporate witness, no later than October 3, 2025, for a Rule 30(b)(6) deposition up to four hours on Uber's use of Flack and the process by which Uber identified, exported, and produced the Flack data. Additionally, Plaintiffs notify the Court that Plaintiffs intend to file a motion under Rule 37(b)(2)(A)(ii) and ask that the Court set a briefing schedule for that motion.

**Plaintiffs' Request for Flack Data**

Uber's claim that Plaintiffs did not serve a discovery request for the data at issue is blatantly false. More than 18 months ago, on February 28, 2024, Plaintiffs served Requests for Production seeking, in relevant part, any and all data related to (1) the total number of reports or claims of sexual violence that Uber received in each year from 2009 to present, including the dates and geographical locations; and (2) Uber's Safety Reports, including unpublished and draft reports, and (3) Uber's reviews and studies related to sexual violence against riders. (Ex. B, Request Nos. 73, 83, 84) (the definition of "documents" included "data").[2] Initially, Uber insisted it did not keep responsive data beyond what might be located in a custodial file using search terms and refused to produce data beyond its U.S. Safety Reports. (*Id.*; ECF No. 592-5). Despite the Court's Order requiring Uber to disclose non-custodial data sources by May 10, 2024, Uber did not identify Bliss, Jira, Flack, or any other non-custodial source of this data. (*Id.*; ECF. No. 524). But given that Uber had published two Safety Reports, Plaintiffs suspected that Uber *did* house this data in a non-custodial location, at very least for the years included in the Safey Reports. (ECF No. 651). Uber finally admitted to the existence of Bliss and Jira only after the Court ordered Uber to produce data related to the Safety Reports (ECF. No. 684). Then for a year—through countless meet and confer discussion and numerous depositions, and until Hannah Nilles' July 23 deposition—Uber maintained that the *only* responsive sources of responsive data were Bliss and Jira. (Ex. C.; ECF Nos. 3700; 3700-1).[3]

Uber's representations were untrue: On August 18, when Uber finally disclosed the Flack

---

[1] While Plaintiffs do not presently anticipate conducting additional discovery related to incident data in connection with the Wave 1 bellwethers, Plaintiffs reserve the right to seek additional discovery from any of Uber's databases for additional timeframes (including Bliss and Jira data from incidents before 2017 and after 2022, and Flack data after December 1, 2024).

[2] The original draft of this letter relied on Request 73 and also cited to ECF No. 592-5, which identifies Request Nos. 83 and 84 as the foundation for the Court's initial safety data order, ECF No. 684 (see ECF. No. 592-5).

[3] Uber's argument that Plaintiffs did not request Flack data until August 21 is disingenuous. First, Uber's regurgitated claim—which the Court has already rejected (ECF No. 3848)— that Plaintiffs knew that Flack existed at some point prior to Nilles' July 23 deposition, is a red herring. Whether Uber acknowledged before then that Flack exists, Uber and its counsel maintained, repeatedly, that Flack does not contain any data not already produced in Bliss/Jira. (ECF No. 3700-1; *see also,* Ex. C). Further, Uber's claim that "Plaintiffs did not follow up in any way with Defendants after [the] April depositions" is entirely false, as previously addressed. *Id*.

fields *for the first time in this litigation*, Plaintiffs learned that Flack houses data in numerous fields that are not in Bliss and Jira. *Compare* Ex. A (Flack fields) *with* Ex. D (Bliss/Jira fields).[4] Flack has fields indicating which party the incident was reported against; Bliss/Jira do not. Flack trip requests are in local time; Bliss/Jira are in UTC, which requires Plaintiffs to convert 400,000 plus incidents to local time—and for the many incidents where Uber did not provide Bliss/Jira data indicating where the incident occurred, Plaintiffs cannot make that conversion. Flack also provides the name of the city where the incident occurred; Bliss/Jira provide only a code to identify the city and the code is meaningless unless Uber also provided both a "trip_uuid" for that incident and a decoder for that code in a separate decoder list (in many instances, Uber did not).[5] Uber's argument distills to faulting Plaintiffs for not specifically requesting the Flack data, by name, sooner. But the reality is that despite Court Orders to identify non-custodial data sources and to produce safety incident data that date back well over a year, Uber concealed Flack.

Similarly, although Uber repeatedly maintained that it could not de-duplicate incident data, those representations were also untrue. Apr. 24, 2025 Conf. Tr. at 15-19; Aug. 28, 2025 Conf. Tr. at 25-30; ECF No. 3700. Now, in response to the Court's Order,[6] Uber has produced de-duplicated incident counts from Flack. Ex.'s E, F, G. Unfortunately, the counts do not resolve this issue because Uber still claims the 2023 and 2024 Flack data is "unaudited and unvalidated" and therefore unreliable, despite Ms. Nilles' testimony that she relies on the same data for making safety decisions. (ECF No. 3700). Notably, Flack contains data indicating the status of the audit of the ticket (Bliss/Jira do not, and even if they did, Uber refused to produce Bliss/Jira data for 2023 and 2024). Plaintiffs are entitled to this data, particularly in light of Uber's reliability claims.

Plaintiffs request that Uber produce all Flack data related to sexual violence incidents, from all fields in Exhibit B. Although Plaintiffs previously indicated (during the 8/28 status conference) that Plaintiffs might agree to discovery of only a limited number of the Flack fields, Plaintiffs seek full discovery in an effort to close the book this issue (and in light of Uber's history of producing safety data in ways that are incomplete or ambiguous).[7] Uber certified that it uses all of the Flack fields to store and analyze data related to sexual violence incidents and has not claimed that the data in any field is irrelevant here. Likewise, Uber has not claimed that producing the data in all fields is unduly burdensome. Moreover, this Court and Judge Breyer have already rejected Uber's arguments that Plaintiffs' demand for this data is untimely. (ECF Nos. 3848, 3899).

### Plaintiffs' Request for a Briefing Schedule for their Rule 37 Motion

Plaintiffs' experts have done extensive analyses using the data Uber has produced to date

---

[4] Uber's claim that "[t]he August 18 declaration did not identify ***any*** new Flack fields, but rather simply listed out the Flack fields that Uber had ***already*** disclosed before the substantial completion deadline," is patently false. Uber does not (and cannot) identify any prior disclosure of these fields.

[5] These are only examples, not a comprehensive summary of all Flack data that is not in Bliss/Jira. Further, Flack data from fields that *are* in Bliss/Jira is necessary to remedy gaps in the Jira/Bliss data, as well as to join Jira/Bliss and Flack data (without certain fields, it would be impossible to know which trip or incident the Flack data connects to in the Bliss/Jira data).

[6] Uber belatedly produced a chart of the incident numbers from Flack on September 12.

[7] Plaintiffs may also need to supplement their expert reports to address any data that is produced but cannot presently determine a timeframe for supplementation.

from Jira and Bliss, in reliance on Uber's numerous representations that the data was complete and accurate and that no additional data exists. Until July 23, Uber concealed that in addition to Bliss and Jira, Uber uses Flack to store this data and relies on the Flack data for making safety decisions, and until August 18, Uber concealed that Uber maintains numerous additional relevant information fields in Flack that do not exist in Bliss and Jira. *Compare* Ex. A (Flack fields) *with* Ex. D (Bliss/Jira fields); ECF No. 3700 (Uber's representations regarding the same). It appears that the data in many of the Flack fields will resolve gaps in the Bliss and Jira data that limit Plaintiffs' experts' ability to analyze Uber's safety data.

Given the advanced stage of the Wave 1 bellwether litigation and Uber's violations of numerous Court Orders related to this data, it is necessary and appropriate to preclude Uber from challenging Plaintiffs' experts for their use of Bliss or Jira data instead of Flack data. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) (Sanctions "may include … prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence …"). Uber may not conceal relevant data and then criticize Plaintiffs' experts for relying on the less fulsome data the company did produce. Plaintiffs therefore intend to seek an Order that Uber be precluded from challenging Plaintiffs' or Plaintiffs' experts' reliance on Bliss or Jira data rather than Flack data, as well as Plaintiffs' and their experts' interpretation of particular Bliss or Jira fields and data where the issue could have been remedied by timely and fulsome production of Flack data. *See* Ex. H (Plaintiffs' proposed preclusions).

**Uber's Position:**

This Court recently ordered Uber to supplement its responses to Plaintiffs' second set of interrogatory nos. 1-8 and supply Plaintiffs with sexual assault and sexual misconduct reported incident classifications from the Flack database, *see* ECF 3848, 3898, which Uber has done.

In ordering that supplementation, the Court indicated that "the scope of further discovery requests should be ***calibrated and tailored***" (ECF 3776 at 2 (emphasis added)) and "***limited***." ECF 3848 at 5 (emphasis added). Plaintiffs' informally-requested and new demand for production of the entire Flack database itself, as well as a 4-hour 30(b)(6) deposition, runs afoul of the Court's guidelines as well as the Federal Rules, and should be rejected because: (1) in contrast to their prior request for supplementation of Rule 33 interrogatories, Plaintiffs did not serve a formal Rule 34 discovery request seeking this data and any attempt to compel production of such data is improper and (2) Plaintiffs' informal request for voluminous data months after the substantial completion deadline is untimely as it is not based on any new information.[8] The Court should also deny Plaintiffs' request for a Rule 37 briefing schedule because Uber has not violated any order compelling the production of the Flack database (Plaintiffs have not even requested it until now).

***First***, Plaintiffs' informal new request for voluminous additional data is procedurally improper. While Plaintiffs' request for Flack classifications of sexual assault and sexual misconduct reported incidents was grounded in their second set of interrogatories nos. 1–8,

---

[8] For the same reasons, Plaintiffs' additional request for a 4-hour 30(b)(6) deposition regarding this data (raised for the first time at 4:30 p.m. ET today) should be denied.

Plaintiffs' request for fielded data from the Flack database itself is not set forth in any prior discovery request. And Plaintiffs have not served a Rule 34 request for production of the Flack data. Instead, Plaintiffs' informal request was first made in an August 21 email and expanded in today's letter. For this reason alone, Plaintiffs' attempt to compel production of this data runs afoul of the Federal Rules. A court cannot compel production of documents that the moving party never requested under Rule 34. *See, e.g.*, *Yourga v. City of Northampton*, 2018 WL 4268894, at *1 (D. Mass. Sept. 6, 2018) ("Because Plaintiff never served a document request on the defendants requesting the documents whose production he now seeks to compel, the court cannot enter an order compelling their production."); *Hernandez v. Tregea*, 2009 WL 10705566, at *1 (M.D. Fla. Apr. 3, 2009) ("Plaintiffs never requested production of these documents under Rule 34, so the Court is therefore powerless under Rule 37 to compel such disclosure.").

In a failed effort to remedy this fatal defect, Plaintiffs point to three broad, catch-all requests that do not seek production of the Flack database.[9] The first, Request No. 73, sought "DOCUMENTS RELATED TO the ***total*** number of reports and claims . . . by DRIVERS on RIDERS," which Uber has already produced (and then some) through the Bliss and Jira incident reports. The Flack database would not show "the total number of reports and claims" but rather only a limited subset of the reports and claims because Flack reduces each trip into a single event. Further, Plaintiffs' current request is also more expansive than Request No. 73, which was limited to reports "by DRIVERS on RIDERS." The second, Request No. 83, also does not seek production of the Flack data, which are not "DOCUMENTS RELATED TO [Uber's] Safety Reports." The third, Request No. 84, likewise does not seek production of the Flack database. The Flack data are not "DOCUMENTS RELATED TO [Uber's] reviews, studies, surveys, or risk or hazard assessments." Like with Request No. 73, Plaintiffs' current request is also more expansive than Request No. 84. This Court should reject Plaintiffs' attempt – 18 months later – to shoehorn a request for the Flack database itself into document requests that sought something different. *See, e.g.*, *Heilman v. Cook*, 2017 WL 491737, at *1-2 (S.D. Cal. Feb. 6, 2017) (a court cannot convert a party's request for certain documents into a request for different documents that the party subsequently identifies). Rule 34 requires document requests to describe the documents sought with "reasonable particularity," and the Court should therefore deny what amounts to a motion to compel because Plaintiffs never served a Rule 34 request for production of the Flack database.

***Second***, Plaintiffs' improper request for this voluminous data (amounting to tens of millions of data fields) and a 30(b)(6) deposition – which continues a pattern of overly broad and unduly burdensome ad hoc general corporate discovery requests months after the substantial completion deadline (despite the fact that Plaintiffs have known about Flack for at least a year) – should be denied for the independent reason that it is untimely. As courts including in this District have repeatedly recognized, if "substantial completion" is to have any meaning, a party must

---

[9] Notably, Plaintiffs' original draft of this letter relied on only Request No. 73. After Plaintiffs saw Uber's explanation of how that request does not apply, they added Request No. 84 after 11:30 p.m. ET, and then at 1:30 a.m. ET, added a third inapposite request. Plaintiffs' whack-a-mole approach only underscores that there is no prior Rule 34 request seeking production of the Flack database.

diligently pursue discovery as it learns of its existence. *See, e.g.*, *Cook v. Meta Platforms, Inc.*, 2025 WL 251942, at *3 (N.D. Cal. Jan. 21, 2025) (denying request for significant document discovery after the substantial completion deadline but before the fact discovery deadline because "the purpose of a substantial completion deadline is to allow the parties to move forward with depositions because they know by when most of the documents will be produced").

Discovery deadlines "do not grant the parties carte blanche rights to demand sizable discovery requests up to the last possible minute." *Haviland v. Cath. Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010). "The enforcement of discovery deadlines is absolutely essential in promoting the just and efficient administration of justice." *IBM Corp. v. Fasco Indus., Inc.*, 1995 WL 115421, at *4 (N.D. Cal. Mar. 15, 1995).

Plaintiffs were aware since *at least* Uber's document production in August 2024 that Uber uses a system called Flack to combine multiple incident reports using its logic into a single event and draw certain inferences from the incident report data in Jira and Bliss.[10] Moreover, every single data field that Plaintiffs now seek was disclosed during document discovery. The August 18 declaration did not identify ***any*** new Flack fields, but rather simply listed out the Flack fields that Uber had ***already*** disclosed in documents produced before the substantial completion deadline. The only depositions about Flack fielded data took place in April, nearly five months ago. That deponent (Katherine McDonald) testified in detail about specific Flack fields that Plaintiffs now seek. There has been no additional testimony about Flack fields since then (including at the July deposition of Hannah Nilles, which Plaintiffs used to attempt to justify their prior request for interrogatory supplementation), and no additional disclosures or discovery about Flack fields.

Following those April depositions, Plaintiffs did not follow up with Uber to claim that the Flack fielded data was responsive to the February 2024 document request they now point to or serve a new discovery request seeking production of this data. By no measure does Plaintiffs' conduct add up to reasonable diligence in pursuing this discovery by the June 16 substantial completion deadline. Plaintiffs should not be permitted to seek this discovery now.

Plaintiffs' request for a briefing schedule on a Rule 37 motion is entirely without basis. As demonstrated above, with the Court's awareness, Uber has produced extensive data regarding sexual assault and sexual misconduct incident reports, including Flack classifications of such incident reports on September 12. Prior to August 21, Plaintiffs never requested fielded data from Flack, despite Ms. McDonald's April testimony about such fielded data. Uber has neither concealed the existence of Flack fielded data nor violated any order to produce it. If this Court finds that Flack fielded data should be produced in response to any prior or current request (which it should not), the only appropriate remedy is to order production of such data.

---

[10] Uber disputes Plaintiffs' repeated assertion that Uber represented that Flack does not contain any data from Bliss/Jira. ECF 3700 at 7 n.3. Plaintiffs cite Mr. Gaddis's testimony to support this claim, but Mr. Gaddis was not asked about Flack and ***did not say anything about Flack during his deposition***. That claim is also contradicted by Ms. McDonald's testimony in late April and by Mr. Gaddis's declaration, which states only that there is no data in Flack ***from the incident reports themselves*** that is not also within Bliss/Jira from 2017 to present.

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: September 15, 2025                                    By: /s/ *Roopal P. Luhana*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Roopal P. Luhana*