# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*A.R. v. Uber Technologies, Inc., et al.*, 3:24-cv-07821-CRB | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING FURTHER DEPOSITIONS**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

The Parties respectfully submit this joint letter, pursuant to the Court's August 29, 2025 Order (Doc. 3786 at 3), regarding Defendants' request for further depositions of plaintiff A.R. and non-party I.E.

DATED: September 19, 2025

By: /s/ Rachel Abrams
ROOPAL P. LUHANA (*Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: /s/ Laura Vartain
LAURA VARTAIN
**KIRKLAND & ELLIS LLP**
LAURA VARTAIN
Laura.vartain@kirkland.com
ALLISON M. BROWN (*pro hac vice*)
Alli.brown@kirkland.com
JESSICA DAVIDSON (*pro hac vice*)
Jessica.davidson@kirkland.com

*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

**I.    Defendants' Position:**

Defendants write pursuant to the Court's August 29, 2025 Order (Doc. 3786, hereinafter "Order") to request further depositions of non-party, I.E., and Plaintiff A.R. Counsel conferred on Defendants' request on September 11 and 15, 2025. Although Defendants simply request reasonably tailored depositions into issues expressly contemplated by the Court's Order (such as "late produced records" and "what records these witnesses were required to preserve, collect, and produce" (*see* Order at 3)), Plaintiff's counsel refuse to present either witness for further questioning on any subject. As such, the parties are at impasse, and Defendants respectfully request an order directing I.E. and A.R. to appear for further depositions of reasonable scope and duration.

**Background.** Defendants explained in the August 8, 2025 Joint Letter (Doc. 3669, hereinafter "Joint Letter") why compelling evidence suggests that Plaintiff's counsel, Peiffer Wolf, flouted their discovery obligations and ethical rules by obstructing discovery. *See generally id.* at 3-5. Most notably, following her deposition, I.E. emailed her and A.R.'s friend, R.S., expressing I.E.'s discomfort with counsel's instruction "not to provide/ search for certain documents… that were directly requested in the deposition notice" served by Uber. *Id.* at 3. This instruction violated obligations set forth in the Federal Rules of Civil Procedure and ran afoul of ABA Model Rules of Professional Conduct, Rule 3.4, which prohibits any lawyer from "unlawfully obstruct[ing] another party's access to evidence," or "unlawfully alter[ing], destroy[ing] or conceal[ing] a document, and "counsel[ing] or assist[ing] another person to do any such act" (*see id.* at 3).

In response to the Joint Letter, the Order rejected Plaintiff's counsel's objections based on relevance. *See* Order at 2 ("objections based on relevance are overruled"). Indeed, the Court found that "***I.E.'s stated discomfort with her attorneys' purported instruction*** not to review or produce documents further ***counsels in favor of fulsome disclosure*** of relevant material[.]" Order at 3 (emphasis added). In addition to ordering the production of responsive documents, the Order addressed the possibility of further depositions of I.E. and A.R., noting that "Uber may intend to ask both individuals about late-produced records and what records they were required to preserve, collect, and produce" (Order at 3). As to these subjects, the Court found that Uber "is entitled to know what kinds and categories of ESI [I.E. and A.R.] were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end" (*id.* (citations omitted)). Yet, in response to the Order, Plaintiff's counsel merely produced a few text message exchanges between I.E. and A.R. while refusing to consent to any further depositions.[1]

**Further deposition of I.E.** Plaintiff A.R.'s close friend, I.E., was deposed remotely on July 8, 2025. As discussed in detail in the Joint Letter, following her deposition, I.E. wrote an email to fellow non-party and mutual friend of Plaintiff, R.S., expressing I.E.'s extreme discomfort with counsel's conduct around I.E.'s deposition—specifically including counsel's instructions not to collect, share, or produce information that, in I.E.'s own words, was "directly requested in the deposition notice." *See* Joint Letter at 3-4. Also following I.E.'s deposition, hours before the July 28, 2025 deposition of R.S., R.S. produced 38 documents through her own counsel. Many of these documents reflect written and oral communications with I.E. about this litigation and/or the conduct of Plaintiff's counsel—as confirmed by R.S.'s sworn testimony on such documents. *See*

---

[1] Although Plaintiff's counsel characterizes this production as "hundreds of written communications," it is, in fact, 17 pages of screenshots capturing a few text message threads. The only way to find "hundreds" of communications is to label each text bubble (typically a few words in a conversation) a separate "communication." Plaintiff's counsel also argues erroneously that I.E. need only produce texts *with Plaintiff*; yet, the subpoena to I.E. seeks responsive communications with persons "including, but not limited to PLAINTIFF … friends … or any potential witness[.]"

3

Exhibit A, R.S. Dep. Tr. at 114:18-115:23, 116:14-119:9; 121:14-123:2; *see* Joint Letter at 3. The records produced by R.S. (but never by Peiffer Wolf client, I.E.) also reflect roughly a dozen telephone and video calls between R.S. and I.E. concerning this litigation and I.E.'s concerns about her deposition experience with her counsel at Peiffer Wolf. Uber should be permitted to examine I.E. concerning these late-produced records and conversations involving I.E. At her deposition, R.S. also provided testimony suggesting that Craig directed I.E. to cease all efforts to collect responsive documents, including text messages relevant to this litigation, and that documents that I.E. likely did collect were not reviewed by counsel for production. *See* Exhibit A, R.S. Dep. Tr. at 122:5-12. ("Q. Do you have any understanding whether [I.E.] conducted a search for documents and files similar to the search you testified that you undertook? A. I believe she did and after she started sharing her screen and was told to sort of stop sharing her screen I don't know that that search was evaluated."). Answers to these preservation, collection, and production issues comprise information which the Court already found that Uber "is entitled to know."

Conspicuous omissions in I.E.'s productions through Peiffer Wolf also appear to confirm the suggestion in the testimony of R.S. that I.E.'s responsive documents were never systematically collected, searched, reviewed, and produced. Tellingly, I.E. *still* has not produced from her own files *any* of the responsive communications she exchanged with R.S. and that were produced by R.S. through her own counsel—notwithstanding the Court's ruling that "the mere prospect that production of certain of I.E.'s messages may be duplicative … does not justify a refusal to produce documents responsive to the subpoena[.]" Order at 2 (ruling that duplication of Plaintiff's produced documents could not justify I.E.'s failure to produce responsive documents).[2] Although on September 5, 2025, Peiffer Wolf produced on I.E.'s behalf a few text message exchanges between I.E. and A.R., that production neither completes I.E.'s deficient productions nor obviates the need for further examination into "what kinds and categories of ESI [I.E.] w[as] instructed to preserve and collect, and what specific actions [she] w[as] instructed to undertake to that end" (*see* Order at 3). Moreover, Uber should be entitled to question I.E. about her impression that counsel's instructions were improper, her personal knowledge of the numerous late-produced records from R.S. which involve I.E., and I.E.'s many conversations with R.S. concerning this litigation.

**Further deposition of A.R.** Plaintiff A.R. was deposed on July 1, 2025—four weeks prior to R.S.'s deposition and production. As Plaintiff's counsel acknowledge, A.R. was deposed for fewer than five hours. *See* Joint Letter at 5. At no time before or after her deposition has A.R. produced the known, responsive communications that she exchanged with I.E. and R.S. For example, A.R. has not produced her own copy of the text message exchanges that I.E. produced on September 5. Similarly, whereas R.S. produced numerous notes that she sent to A.R. concerning conditions that A.R. has placed at issue in this litigation, none of these notes have been produced by A.R..[3] These omissions raise serious questions concerning discovery from A.R. produced at Peiffer Wolf's direction—questions to which the Court has found that Uber is entitled to answers.

**Request for relief.** Reasonably tailored further depositions of I.E. and A.R. are the most appropriate, proportional, and efficient means to obtain discovery into the above-described, late-produced records and improper collection and preservation instructions of counsel at Peiffer Wolf. Live cross-examination is the most effective and efficient means of discovery and where, as here,

---

[2] R.S.'s production confirms that I.E. and A.R. failed to produce communications *with R.S.*, but this neither confirms nor refutes there being additional documents *not* shared with R.S., underscoring the need for further depositions.
[3] Plaintiff's counsel incorrectly argues that none of the messages in R.S.'s production were sent to A.R. when, in fact, some notes were internal to R.S. and others were sent to (but never produced by) A.R.

4

a compelling basis exists to suspect interference and impropriety by counsel, written discovery such as formulaic and self-serving witness declarations—which almost certainly would be prepared by counsel—cannot suffice where "I.E.'s stated discomfort with her attorneys' purported instruction … counsels in favor of fulsome disclosure" (Order at 3). Any burden to the witnesses from such depositions should be minimal, as Uber is prepared to proceed remotely at a mutually convenient time and anticipates needing no more than two hours on the record with each witness.

Plaintiff's position statement below argues that "Uber seeks documents that are already within its possession" and "about which it had the opportunity to depose Plaintiff A.R. and I.E." Neither is true. *First*, Uber refers to documents in its possession from R.S. merely as one, of many, indications that A.R. and I.E. have failed to produce responsive documents. Moreover, counsel's argument that produced messages from A.R. and I.E. are "overwhelmingly duplicative" of one another does not address what records have *not* been produced by either client. *Second*, it defies logic to argue that Uber had the opportunity to depose I.E. and A.R. on the requested issues when both late-produced records and a strong likelihood of interference by counsel only came to light *after* depositions of I.E. and A.R. It also simply is not true that "[t]here are no potential outstanding questions remaining regarding [I.E.'s] draft email" to R.S. Indeed, Plaintiff's counsel contradicts this self-serving assertion by characterizing that email as "misleading"— suggesting outstanding questions best clarified through a live examination of I.E. Finally, Plaintiff's counsel purports to oppose "burden" and "harassment" for I.E. and A.R., but reasonably tailored depositions present no such threats, and counsel's objection seems calculated rather to protect itself.

**Plaintiffs' Position:**

Uber mischaracterizes not only I.E.'s testimony and the September 5, 2025 production, but also Plaintiff A.R.'s preservation, collection, review, and production measures undertaken throughout this litigation's discovery process. Uber continues to move the goalpost as to its demands of Plaintiff A.R. and her third-party witness I.E., further increasing its attack on a single law firm and wasting the parties' and this Court's time and resources. In so doing, Uber seeks documents that are already within its possession and about which it had the opportunity to depose Plaintiff A.R. and I.E. Plaintiff and her counsel have fully complied with their discovery obligations and this Court's orders, including ECF 3786 (the "Order"), and there is no testimony or evidence showing that further depositions of either Plaintiff A.R. or I.E. is appropriate.

As Plaintiff detailed in the August 8, 2025 Joint Letter (ECF 3669), this issue is a red herring. The additional – and overwhelmingly duplicative – text messages between I.E. and Plaintiff A.R. produced on September 5, 2025 pursuant to the Order show exactly that. Prior to the Joint Letter filing, plaintiff's counsel offered to collect additional records from I.E. including her communications with Plaintiff A.R., which counsel for plaintiff had previously determined as being either irrelevant or duplicative of material already produced by A.R. Uber refused this offer and insisted on submitting this issue to the Court.

Further, the crux of Uber's motion is based on communications between two of Plaintiff A.R.'s third-party witnesses, I.E. and R.S. Uber states, "[t]he records produced by R.S. (but never by Peiffer Wolf client, I.E.)[4] also reflect roughly a dozen telephone and video calls between R.S.

---

[4] Further, I.E. is not a client of Peiffer Wolf, and counsel represented I.E. solely for her deposition in this case.

and I.E. concerning this litigation and I.E.'s concerns about her deposition experience with her counsel at Peiffer Wolf. Uber should be permitted to examine I.E. concerning these late-produced records and conversations involving I.E." None of the communications Uber seeks involve Plaintiff A.R., nor does she even know whether they exist. Uber's request to re-open I.E.'s deposition is clearly overbroad, harassing, and should be denied.

In the Joint Letter, Doc. 3669 at 4, Uber argues that neither I.E. nor Plaintiff A.R. "produced the relevant messages that I.E. discussed with Craig," that "Peiffer Wolf Lawyers cannot know that I.E.'s collection duplicated Plaintiff's," and that "potential duplication of another party's production provides no basis to withhold responsive documents." The Court ordered A.R. and I.E. to produce the above-mentioned communications, even though all responsive communications were produced on August 8, 2025. Third-party witness I.E. fully complied. Now, after reviewing the September 5, 2025 production, Uber is no longer interested in the content of the communications but is allegedly concerned about "preservation, collection, and production issues." However, during meet and confer on September 15, plaintiff's counsel suggested preservation declarations, but Uber's counsel refused.

**A. Discussion**

The September 5, 2025 production addresses all of Uber's concerns.

1) Uber alleges that neither I.E. nor A.R. "produced the relevant messages that I.E. discussed with Craig," Joint Letter at 4: On August 8, 2025, **plaintiff A.R. produced all of her written communications with I.E.** related to her claims and/or the present litigation. On September 5, 2025, **I.E. produced all responsive communications with A.R.**
2) Uber alleges that "Peiffer Wolf Lawyers cannot know that I.E.'s collection duplicated Plaintiffs" *id.*: The productions August 8, 2025 and September 5, 2025 productions reveal **overwhelming duplication**, as previously determined by plaintiff's counsel.
3) Potential duplication of another party's production provides no basis to withhold responsive documents" *id*.: **Plaintiff and I.E. complied with this Court's Order, and Uber is in possession of all responsive material.**

**Further deposition of I.E.:** After receiving the September 5, 2025 production from I.E., Uber now seeks to further examine the witness about "what kinds and categories of ESI [I.E.] w[as] instructed to preserve and collect, and what specific actions [she] w[as] instructed to undertake to that end" (*see* Order at 3). However, Uber failed to explain in its conferral with plaintiff's counsel on September 15, 2025 and in the present letter what additional information prompts the present request. If, as Uber contends, the additional deposition of I.E. would be narrowly tailored to inquire about ESI preservation and collection, then Uber already had the opportunity to do so at I.E.'s July 8, 2025 deposition, and further deposition of I.E. would be unreasonable, overly burdensome and harassing of the witness. In fact, I.E.'s deposition already contains questioning by Uber's counsel about 1) all text message threads she reviewed in preparation for her deposition, including her text message threads with plaintiff A.R.,[5] 2) any other

---

[5] Exhibit B, I.E. Deposition Transcript page 10, at 12-25

6

communications exchanged with Plaintiff A.R. on other platforms,[6] 3) any other writings she may have found with Plaintiff A.R.,[7] and 4) her search efforts in response to the request for production attached to her notice of deposition.[8]

Furthermore, Uber alleged that I.E. "merely" produced a "single text message exchange" on September 5, 2025, ignoring the fact that this "single text message exchange" contains hundreds of written communications spanning from September 2023 to the end of July 2025. Additionally, Uber refers to a misleading draft e-mail I.E. sent to third-party R.S. containing irrelevant conversations so as to further harass the witnesses. The Order clearly states that the only thing this draft e-mail proves is the potential relevance of communications between I.E. and A.R., which plaintiff's counsel had previously determined as duplicative and/or irrelevant. Pursuant to that determination, I.E. indeed produced this "relevant material" despite being duplicative of A.R.'s August 8, 2025 production. There are no potential outstanding questions remaining regarding this draft e-mail which warrant a further deposition of I.E.

**Further deposition of A.R.:** As previously noted, A.R. produced all of her written communications with I.E. on August 8, 2025, including hundreds of text messages spanning from September 2023 to July 25, 2025, despite plaintiff's counsel having previously deemed these to be unresponsive or irrelevant to this litigation. After several conferrals and filing of the Joint Letter, Uber argued that I.E. should produce the same communications, **which I.E. did on September 5, 2025**. Now, Uber seeks to reopen the deposition of plaintiff A.R., who already sat for a 4 hour and 56-minute deposition and produced over 1,200 pages of records including social media records and text message communications. Uber fails to explain why a further deposition is necessary.

As is the case for I.E., Uber already had the opportunity inquire about ESI preservation and collection at A.R.'s July 1, 2025 deposition, and further deposition of A.R. would be unreasonable, overly burdensome and harassing of the plaintiff. In fact, A.R.'s deposition already contains questioning by Uber's counsel about 1) all documents she reviewed in preparation for her deposition, including social media, text messages, and communications A.R. had with Uber, 2) conversations she had with several friends including I.E. and R.S., and 3) the search method that A.R. applied in response to the request for production attached to her notice of deposition.[9]

Finally, in another attempt to mischaracterize the parties' productions and create a false necessity for overly burdensome discovery requests and additional depositions, Uber contends that "whereas R.S. produced numerous notes that she sent to A.R. concerning conditions that A.R. has placed at issue in this litigation, none of these notes have been produced by A.R. herself." It is clear that notes written by third-party R.S., represented by her own counsel at deposition, which were not shared with Plaintiff A.R, are not within Plaintiff A.R.'s possession, custody, or control. Therefore, Plaintiff A.R. could not have searched for, preserved, or produced such materials. For the reasons so outlined, Uber has made no valid showing as to the reasonableness or necessity for further deposing Plaintiff A.R., and such request should be denied.

---

[6] *Id.*
[7] I.E. testified that she searched and did not find any additional writings or communications between herself and A.R. related to this litigation. Exhibit B, I.E. Deposition Transcript page 11, at 18-20.
[8] Exhibit B, I.E. Deposition Transcription page 51, at 11-25.
[9] Exhibit C, A.R. Deposition Transcript page 234 at 18-25; 235 at 1-19.

**CERTIFICATE OF SERVICE**

On 9/19/2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Laura Vartain Horn*
Laura Vartain Horn