# EXHIBIT C

CONFIDENTIAL - ATTORNEYS' EYES ON1Y

Page 15

CONFIDENTIAL - ATTORNEYS' EYES ON15

1  documents?
2      A.   Yes.
3      Q.   What documents did you review?
4      A.   Social media documents, as well as
5  documents of communications to and from Uber,
6  text messages.
7      Q.   Were all of the documents that you
8  reviewed, in preparation for today's
9  deposition, documents that you had in your
10 possession?
11     A.   Yes, for the text messages and the
12 social media.
13     Q.   The communications with Uber, are
14 those communications that you were a party to?
15     A.   Yes.
16     Q.   In preparation for today's
17 deposition, have you met with anyone other
18 than your attorneys at those two meetings that
19 you mentioned?
20     A.   Yes.
21     Q.   Who else have you met with?
22          MS. CRAIG:  Objection.  This is
23 attorney-client privilege and work product
24 protected material.
25 BY MS. POWER:

CONFIDENTIAL - ATTORNEYS' EYES ON1Y

Page 18

CONFIDENTIAL - ATTORNEYS' EYES ON18

1  Q.  Were they selected for you by your
2  attorneys?
3  A.  Yes.
4  Q.  Did you take any notes during your
5  preparation for today's deposition?
6  A.  No.
7  Q.  Other than your attorneys, have you
8  discussed this deposition with any family or
9  friends?
10  A.  Yes.
11  Q.  Who have you discussed it with?
12  A.  ▮▮▮▮▮▮▮▮▮▮▮.
13  Q.  Is that ▮▮▮▮▮▮▮▮▮▮▮?
14  A.  Yes.
15  Q.  Anyone else?
16  A.  No.
17  Q.  And what have you told Ms. ▮▮▮▮▮▮▮
18  about today's deposition?
19  A.  Just that I would be having today's
20  deposition and that I would take the full day.
21  Q.  At the June meeting in which a
22  consulting expert was present, did you undergo
23  a medical examination?
24  A.  No.
25  Q.  Did you undergo a mental health

CONFIDENTIAL - ATTORNEYS' EYES ON76

1  time you were in the car?
2      A.   Not the entire time that I was in the
3  car.
4      Q.   What other apps or uses were on your
5  phone while you were in the car?
6      A.   Google Maps.
7      Q.   Why did you have Google Maps open
8  while you were in the car?
9      A.   I opened Google Maps when he entered
10 the ride while we were still driving.
11     Q.   Did you take a phone call while you
12 were in the car?
13     A.   No.
14     Q.   Did you speak with ▮▮▮▮▮▮▮▮▮▮
15 late the night of August 9th or early morning
16 August 10th?
17     A.   To the best of my recollection, yes.
18     Q.   What conversation do you recall
19 having with ▮▮▮▮▮▮▮▮ that night?
20     A.   I remember calling when I got out of
21 the car, I believe, because I wanted to be on
22 the phone with someone because it was late at
23 night and I was by myself.
24     Q.   When you were in the car, you had the
25 Uber app on.  You switched to Google Maps.

CONFIDENTIAL - ATTORNEYS' EYES ON83

1   A.   I -- to the best of my recollection,
2   that's when I called my friend and I waited
3   for the -- that bus to come.  I just kind of
4   was in shock and numb.
5       Q.   When you called ▮▮▮▮▮▮▮▮▮▮, this
6   would have been sometime after 12:40 a.m.;
7   correct?
8       A.   Yes.
9       Q.   Did she pick up?
10      A.   I don't think so.  To -- yeah, I
11  don't know.  I think I may have left her a
12  voicemail, but I just wanted to be on my
13  phone.
14      Q.   Were you familiar with the bus route
15  that ran down Van Ness?
16      A.   Yes.
17      Q.   How often do you take the bus in San
18  Francisco?
19      A.   Quite frequently.  Multiple times a
20  week.
21      Q.   How often would you take the bus home
22  after being out with your friends at night?
23      A.   Very rarely.  I would usually take
24  Uber or Lyft or later a Waymo, because that
25  felt safer than being on the bus.

CONFIDENTIAL - ATTORNEYS' EYES ON1Y

Page 92

CONFIDENTIAL - ATTORNEYS' EYES ON92

1   A.   Honestly, I was just kind of in
2   shock/denial about it.  I was trying to just
3   focus on having fun at the music festival.
4   Q.   Besides ▮▮▮ and Ms. ▮▮▮▮▮, did you
5   tell -- did you -- let me start that question
6   over again.
7        Besides Ms. ▮▮▮▮▮, did you tell
8   anyone else about what happened the 24 hours
9   after the incident?
10  A.   I don't think so, but within
11  48 hours, I told ▮▮▮▮▮▮▮ and ▮▮▮
12  ▮▮▮▮▮.
13  Q.   How did you tell them?
14  A.   I -- I was at the music festival and
15  I shared it with her then, and then later
16  after the festival, we had dinner together
17  where we talked more about it.
18  Q.   And what about ▮▮▮▮▮▮▮▮?
19  A.   I talked to her on the phone about
20  what had happened, and then again on multiple
21  occasions in person.
22  Q.   Do you recall telling anyone else
23  about what happened in the 48 hours after the
24  incident?
25  A.   No.

CONFIDENTIAL - ATTORNEYS' EYES ON1Y

Page 136

CONFIDENTIAL - ATTORNEYS' EYES O136

1  　　　　MS. POWER:  We are on Exhibit 15.
2  There you go.  And this is BW-A_R-S.M.-121.
3  BY MS. POWER:
4  　　Q.  Is this one of the messages that you
5  were referring to?
6  　　A.  Yes.
7  　　Q.  This is a direct message in
8  Instagram; correct?
9  　　A.  Yes.
10 　　Q.  It's dated August 19th, 2023;
11 correct?
12 　　A.  Yes.
13 　　Q.  The user at the top is ▇▇▇▇
14 correct?
15 　　A.  Yes.
16 　　Q.  Is that ▇▇▇▇▇▇▇▇▇?
17 　　A.  Yes.
18 　　Q.  The ▇▇▇ referenced here is
19 yourself; correct?
20 　　A.  Yes.
21 　　Q.  Beginning in the second to bottom
22 message, it looks like it's the most recent at
23 the top, so the conversation starts at the
24 bottom.
25 　　　　In the second to bottom message,

CONFIDENTIAL - ATTORNEYS' EYES ON1Y

Page 137

CONFIDENTIAL - ATTORNEYS' EYES O137

1  it says, ▓▓▓ sent a message and then it has
2  a paragraph of text.
3          Do you see that?
4     A.   Yes.
5     Q.   The paragraph of text under ▓▓▓
6  sent a message, that is text posted by a
7  different account on Uber -- on Instagram;
8  correct?
9     A.   I think so, yeah.  It was like a --
10 an ad basically.
11    Q.   Gotcha.
12         And then you responded to ▓▓▓
13 "Mimi sent me this"; is that right?
14    A.   Yes.
15    Q.   ▓▓▓ is ▓▓▓▓▓▓▓?
16    A.   Correct.
17    Q.   You responded "I'm gonna fill it
18 out"; correct?
19    A.   Yep.
20    Q.   And ▓▓▓ put a heart on your
21 message?
22    A.   Yes.
23    Q.   And then you noted that, "It won't
24 let me click on it though"; is that right?
25    A.   Yes.  Correct.

CONFIDENTIAL - ATTORNEYS' EYES ON1Y

Page 139

CONFIDENTIAL - ATTORNEYS' EYES O139

1  Q. The date of this message is
2  August 19th, 2023; is that correct?
3  A. Yes.
4  Q. So this is the same day that ▇
5  messaged you; right?
6  A. Yes.
7  Q. This is a conversation with ▇
8  ▇
9  A. Yes.
10 Q. She sent you the same exact ad as
11 ▇; correct?
12 A. Yes.
13 Q. She wrote "Omg this just popped up
14 for me. You can probs get some dollar signs";
15 correct?
16 A. Yes.
17        MS. CRAIG: Object to the form.
18        MS. POWER: What's the objection?
19        MS. CRAIG: You said -- you
20 misquoted it.
21        MS. POWER: Okay.
22 BY MS. POWER:
23 Q. So ▇, that's ▇
24 ▇ writes to you "Omg this just popped
25 up for me. You can probs get $$$?"; is that

CONFIDENTIAL - ATTORNEYS' EYES ON1Y

Page 234

CONFIDENTIAL - ATTORNEYS' EYES O234

1    don't know.  When we were planning to schedule
2    it.
3        Q.    If you turn to page 3, it says
4    "Attachment A" at the top.
5              Do you see that?
6        A.    Yes.
7        Q.    Have you seen Attachment A
8    previously?
9        A.    Yes.
10       Q.    And if you'd turn the page, it has a
11   list of categories of documents that have been
12   requested from you.
13             Have you seen that previously?
14       A.    Yes.
15       Q.    Were you involved in collecting
16   documents responsive to this document?
17       A.    Yes.
18       Q.    How did you go about searching for
19   documents in response to this request?
20       A.    I searched my text messages on my
21   phone.  I did a blanket search for Uber
22   incident and lawsuit.  I did the same for
23   email.  I searched for the words "Uber."  When
24   trying to find previous emails, I searched the
25   Uber email address to search my email.

CONFIDENTIAL - ATTORNEYS' EYES ON1Y

Page 235

CONFIDENTIAL - ATTORNEYS' EYES O235

1         I helped change my passwords for
2   my social media to provide for a firm to gain
3   access to do like the data search of my social
4   medias.
5         I reached out to LifeStance to
6   authorize the collection of my medical and
7   mental health records by a third party and
8   signed a release form.
9         Yeah, that, I think -- I'm trying
10  to think if there's other -- what other
11  documents there are.
12        To try to find my psychologist in
13  San Francisco prior to Psychiatric
14  Alternatives' name.  I tried to search by
15  specialty in the Psychology Today database and
16  tried to search by the location in San
17  Francisco that she was based, from what I
18  remember, yeah.  That's pretty much the bulk
19  of it, I think.
20      Q.   Do you have access to like a patient
21  interface through your health insurance?
22      A.   I have access to, like -- I had
23  access to One Medical's patient's database.  I
24  do now, I think, have access through my health
25  insurance to something called Included Health.

Veritext Legal Solutions
800-567-8658                                973-410-4098

CONFIDENTIAL - ATTORNEYS' EYES O240

1   -- it was requested of me and when I was doing
2   that, so that would have been a couple months
3   ago.
4        Q.   Have you had text messages about this
5   lawsuit or about the incident since you did
6   that search collection?
7        A.   Yes.
8        Q.   Who have you texted with since then?
9        A.   ▇▇▇ ▇▇▇ ▇▇▇ and ▇▇▇
10       Q.   What have you told them about the
11  lawsuit or the incident since then?
12       A.   I let them know that they may be --
13  somebody may be reaching out to them to talk
14  to them about me and about what they knew
15  about the incident.  Other than that, I've
16  just talked to them kind of about the general
17  timeline of different sort of things that I
18  have been, like, scheduled to do, so just
19  events like this, for example, letting them
20  know that this was going on and that I might
21  be exhausted or in a difficult mental state
22  afterwards or might, like, just not be super
23  responsive via text.  That kind of thing.
24       Q.   Other than this deposition, what
25  other events have you highlighted for them?