UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br>ALL CASES. | Case No. 23-md-03084-CRB   (LJC)<br><br>**ORDER REGARDING JOINT DISCOVERY LETTER BRIEF REGARDING 30(B)(6) TOPICS AND WRITTEN DISCOVERY**<br><br>Re: Dkt. No. 3867 |

The parties filed a joint discovery letter brief on September 8, 2025 regarding written discovery requests that Plaintiffs have made in lieu of topics for Rule 30(b)(6) depositions to which Uber previously objected. Dkt. No. 3867. Having carefully considered the letter, the record, and applicable authorities, for the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' request for relief.

I.  **LEGAL STANDARD**

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed R. Civ. P. 26(b)(1). "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a). If a party is a corporation, the interrogatories must be answered "by any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). Rule 33(d) permits a responding party to produce business records in lieu of providing a narrative answer to

an interrogatory. Fed. R. Civ. P. 33(d). "The grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4) "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3).

## II.     ANALYSIS

### A.     Interrogatory No. 2

Plaintiffs seek an order requiring Uber to "provide the total number of rides provided to female drivers," which is a narrower request from the information sought in Interrogator No. 2. *See* Dkt. No. 3868-3 at 2; Dkt. No. 3868-4 at 3. Uber has declined provide the number of rides taken by female riders because it "does not collect or maintain comprehensive documentation confirming the gender of riders." Dkt. No. 3868-4 at 3. Uber, however, acknowledges and the record indicates that the company uses a methodology to infer the gender of riders, including in relation to safety risk assessments. Dkt. No. 3868-8 at 4.

Uber does not dispute the relevance of this information but asserts that its inference methodology cannot be used to accurately quantify the number of U.S. trips with female passengers. Dkt No. 3867 at 4. Uber has not disputed that it relies on this methodology in contexts relevant to this litigation. That the information is not comprehensive and confirmed documentation of riders' gender may bear on its probative value with respect to establishing the gender breakdown. Uber's concerns about the accuracy do not merit excusing it from responding to the interrogatory when it uses its gender inference methodology for its own business practices.

Uber also contends that Plaintiffs' interrogatory amounts to an improper "hybrid interrogatory/request for production," and that courts have rejected such requests. *See Lerblance v. Calyx Energy III, LLC*, No. CIV-23-JFH-GLJ, 2024 WL 3275789, at *4 (E.D. Okla. July 2, 2024). There, the plaintiffs moved for a court order compelling the defendant to answer an interrogatory by providing the requested information "in searchable electronic spreadsheet form." *Id.* Plaintiffs have not made a comparable request.

Next, Uber objects to Interrogatory 2 the grounds that it requires a new analysis. This objection is not well taken. Rule 33 contemplates that a responding party will need to research and examine its own business records to provide a response. Embedded in Rule 33 is an

2

acknowledgement that "the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information)." Fed. R. Civ. P. 33(d); *see also* Fed. R. Civ. P. 33 advisory committee's note to 1970 amendment subdivision (c) (recognizing that a party may be required to "research into its own business records in order to give an answer," though the rule permits, in certain circumstances, for the "burden of research" to be placed on the party who seeks the information). In *4WEB, Inc. v. NuVasive, Inc.*, the court rejected the argument that Rule 33 does not require the responding party to conduct a financial calculation using the data and information that it maintains. No. 24-cv-1021-JLS-MMP, 2025 WL 2495243, *5–6 (S.D. Cal. Aug. 28, 2025) ("NuVasive's assertion it cannot be required to create or compile data to answer an interrogatory is incorrect.").

Rule 33 requires answering parties to respond with "the information available" to it, and "'[a]vailability' is necessarily an elastic concept, because what is 'available' cannot be determined without reference to the effort made to secure it.'" *Law v. Nat'l Collegiate Athletic Ass'n*, 167 F.R.D. 464, 477 (D. Kan. 1996), *vacated on different grounds sub. nom. Univ. of Tex. at Austin v. Vratil*, 96 F.3d 1337 (10th Cir. 1996). Of course, a responding party's obligation pursuant to Rule 33 to research and examine its records to provide an answer to an interrogatory is not limitless. This obligation to respond is constrained by Rule 26(b)'s limitations against discovery requests that are disproportionate to the needs of the case, where the burdens or expense of the proposed discovery outweigh the benefits, or where information is not reasonably accessible. Here Uber has not made such arguments or presented a record to justify allowing it to forgo responding this interrogatory. Therefore, Uber shall provide the number of rides taken by female riders using its gender inference methodology to the extent feasible with the information it possesses. Uber remains free to argue on the merits of any case that such metrics are not based on perfect knowledge of riders' genders.

### B. Interrogatory No. 8

Through Interrogatory No. 8, Plaintiffs have requested "[f]or each year from 2012 to present, [that Uber] identify for the United States the average percentage of each fare that (a) the

3

1  Driver received, and (b) Uber received," and that Uber "[i]dentify the same information ((a) and
2  (b)) for each state within the United States. Dkt. No. 3868-4 at 5. In its response Uber provided
3  its reasoning why it is "unable to provide the requested 'average' percentage of fares received by
4  drivers and Uber, on either a global level or in individual state markets." Dkt. No. 3868-4 at 5–6.
5  With respect to the data concerning the United States as a whole, Uber did not disclaim its ability
6  to provide such information. Uber nevertheless objected to all additional information sought by
7  the interrogatory on the grounds that the request was overbroad, unduly burdensome, and not
8  reasonably proportionate to the needs of the case. In the parties' discovery letter Uber emphasizes
9  its contention that the interrogatory is burdensome and contends that it has already given Plaintiffs
10 significant, reasonably available data.

   Plaintiffs, for their part, have not narrowed in any fashion the scope of the information
requested by their interrogatory. Plaintiffs seek such information for all fifty states, though it is
not clear that such information is needed for each state. The temporal scope of Plaintiffs'
interrogatory is broad, seeking data from 2012 to the present, and the request is broadened further
where it seeks state-by-state analysis. There is no record detailing what information Uber has
provided thus far, nor any argument by Plaintiffs as to why that information is insufficient, given
the needs of the case. Though Uber does not dispute that the information is relevant, it objects on
proportionality grounds and Plaintiffs say nothing to directly address the concerns regarding the
breadth of their request.

   Three days after Uber responded to the interrogatory, an Uber employee testified regarding
a chart that he agreed reflected the amount of fare that goes to the driver. The chart referenced by
the witness indicated an "Avg Fare" amount and a "Partner Payments" amount. The witness was
asked whether Uber calculates internally "average fare data points," and in response, he testified
that "periodically" such data points would be calculated, and he went on to testify that Uber is
capable of calculating the average amount of a fare that goes to a driver for an Uber ride. Dkt. No.
3868-5 at 8–9 (Dobbs Tr. 109:2–110:1-24). This testimony casts doubt on Uber's contention that
the interrogatory is unduly burdensome because it necessitates calculations based on billions of
rides. It appears that Uber periodically calculates the average fare amounts based on a significant

number of rides that are taken nationally. To the extent that Uber has already made certain calculations, there is no unreasonable burden for the company to respond with the information available to it. At the same time, it is not apparent to the Court that Plaintiffs need the full extent of the information sought by Interrogatory No. 8.

As discussed above, Rule 33 provides that interrogatories must be answered with information available to the party, and Uber may be required to conduct calculations based on the information that it has internally to answer Plaintiffs' interrogatories when such calculations are not unduly burdensome or expensive. *See* Fed. R. Civ. P. 33(b)(1)(B); 26(b)(1). Furthermore, when an attorney or party responds to a discovery request, the response must be formed "after a reasonable inquiry." Fed. R. Civ. P. 26(g)(1). Accordingly, Uber shall undertake a reasonable inquiry to locate existing analyses that calculate, for the United States or any state at issue in this action, either : (1) the average trip fare amount, and the average amount of the fare received by the driver versus Uber; or (2) the average percentage of the fare received by the driver versus Uber. For the analyses that Uber identifies, it may produce them to Plaintiffs or supplement its response to Interrogatory No. 8 based on that available information, or some combination. *See* Fed. R. Civ. P. 33(d) (responding party may produce records in lieu of an answer).

To the extent that Plaintiffs seek additional analysis by Uber to answer this interrogatory, the parties shall meet and confer regarding the scope of Plaintiffs' requests and they shall endeavor to reach an agreement to resolve this interrogatory. As part of the meet and confer process, an Uber representative shall provide a declaration that addresses whether there is a dashboard or existing database or application that allows Uber to readily conduct analyses that allow it to answer Plaintiffs' interrogatory. If Uber opts to respond to the interrogatory solely by producing or specifying already produced records, it must satisfy the requirements set forth in Rule 33(d), such as establishing that "the burden of deriving or ascertaining the answer will be substantially the same for either party[.]" Fed. R. Civ. P. 33(d). Furthermore, "the identified documents must contain all the information to actually answer the interrogator[y]." *4WEB*, 2025 WL 2495243, *5.

### C.  Interrogatory No. 10

Next, Plaintiffs request an order requiring Uber to supplement its response to Interrogatory No. 10, in which it asked that Uber "identify the annual compensation of each member of the Executive Leadership Team." The interrogatory did not specify a time period for the requested compensation information. Uber provided the information for its named executive officers, as well as for Gus Fuldner, for 2024. To the extent that Plaintiffs are seeking the annual compensation for individuals other than Gus Fuldner and the named executive officers, Plaintiffs have not explained who from the Executive Leadership Team has not had their annual compensation produced, and why that information is important at this late stage of the litigation. At the outset, Plaintiffs' Interrogatory did not specify the time period, and thus, Uber's proposed compromise to provide such data for 2021, 2022 and 2023 is reasonable and adopted by this Court. Uber shall produce the information that it agreed to provide as part of its proposed compromise, and Plaintiffs' request is otherwise DENIED.

### D.  Plaintiffs' Request for Admission No. 1

Plaintiffs object to Uber's response to its Request for Admission No. 1 and seek an order requiring a Rule 30(b)(6) deposition regarding to the topic addressed by this request for admission. Plaintiffs have not cited the text of Rule 36 or any persuasive or controlling authority to establish that it served a proper request for admission. Even setting aside that concern, given that the parties agreed that Plaintiffs would submit this request for admission to Uber to resolve Plaintiffs' noticed deposition, Plaintiffs have not made any argument that Uber's response was legally deficient, such that any court-ordered relief is required. Plaintiffs' mere lack of satisfaction with Uber's response without the support of legal argument will not justify Court ordered discovery relief. Plaintiffs' request is DENIED.

## III.  CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART Plaintiffs' requests for relief as to Interrogatory Nos. 2 and 8.

With respect to Interrogatory No. 2, by October 6, 2025, unless the parties stipulate to a different date, Uber shall provide the number of rides taken by female riders using its gender

6

inference methodology.

With respect to Interrogatory No. 8, by September 29, 2025, unless the parties stipulate to a different date, Uber shall undertake a reasonable inquiry to locate existing analyses that calculate for the United States or any state at issue in this action, the average trip fare amount, the amount of the average fare received by the driver versus Uber, and/or the average percentage of the fare received by the driver versus Uber.  For the analyses that Uber identifies, it may produce them to Plaintiffs or supplement its response to Interrogatory No. 8 based on that available information, or some combination of both approaches to respond to the discovery request with the information available to it.  In addition, by October 6, 2025, the parties shall meet and confer and endeavor to reach an agreement regarding the scope of information requested by Interrogatory No. 8 and any additional analyses that Uber shall conduct to answer the interrogatory.  If the parties are unable to reach an agreement, they shall file a joint discovery letter and shall appear in person for a hearing, during which the Court may elect to send them to meet and confer further.

With respect to Plaintiffs' Interrogatory No. 10 and Request for Admission No. 1, Plaintiffs' requests for discovery relief are DENIED, except that Uber must provide information for 2021, 2022, and 2023 consistent with its proposed compromise for Interrogatory No. 10.

**IT IS SO ORDERED.**

Dated: September 22, 2025

LISA J. CISNEROS
United States Magistrate Judge