# EXHIBIT J

1                                    **Pages 1 - 57**

2                       UNITED STATES DISTRICT COURT

3                     NORTHERN DISTRICT OF CALIFORNIA

4    Before The Honorable Lisa J. Cisneros, Magistrate Judge

5    IN RE: UBER TECHNOLOGIES,       )
     INC., PASSENGER SEXUAL ASSAULT )
6    LITIGATION.                     )
                                     )     **NO. 3:23-MD-03084-CRB**
7    _____    )

8                                         San Francisco, California
                                          Thursday, June 13, 2024
9
                        **TRANSCRIPT OF REMOTE ZOOM PROCEEDINGS**
10
     **APPEARANCES VIA ZOOM:**
11
     For Plaintiffs:
12                            CHAFFIN LUHANA, LLP
                              600 Third Avenue, 12th Floor
13                            New York, NY 10016
                        BY:  **ROOPAL P. LUHANA**
14                           **ATTORNEY AT LAW**

15                            LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                              275 Battery Street, 29th Floor
16                            San Francisco, CA 94111
                        BY:  **SARAH R. LONDON**
17                           **ATTORNEY AT LAW**

18                            PEIFFER, WOLF, CARR, KANE, CONWAY & WISE
                              555 Montgomery Street, Suite 820
19                            San Francisco, CA 94111
                        BY:  **RACHEL B. ABRAMS**
20                           **ATTORNEY AT LAW**

21   (Appearances continued on page 2.)

22

23   REPORTED REMOTELY BY:  Stephen W. Franklin, RMR, CRR, CPE
                             Official United States Reporter
24

25

1    most serious five taxonomy categories and things that might be

2    close to that, in a 21-month effort of dozens of employees who

3    are highly trained and cross-checked against -- audited and

4    cross-checked against what the experts say, was able to kind of

5    categorize those in the five categories reliably and publish

6    the data.  Everything else is awash of other tickets and

7    incidents that are, like as I said, both safety and non-safety

8    related.

9         And so there is no sort of data, as the plaintiffs

10   suggest, is not really what that is; those are tickets.  And so

11   what they're seeking to compel is for Uber to effectively

12   generate and compile statistics about the tickets and incidents

13   that might fall arguably into categories 6 through 21, or no

14   category, like lost keys.  And they're seeking to compel Uber

15   to generate some kind of statistics which it does not do in the

16   ordinary course, because it does not report on them and because

17   the experts are saying that they cannot be reliably categorized

18   to make them useful information for the public to report on.

19        And so that's why we're saying that the plaintiffs are

20   seeking to compel us to do something that doesn't exist.

21             **THE COURT:**  Okay.  When I read the letter I didn't

22   understand plaintiffs to be asking defendants to generate some

23   sort of new set of statistics based on the categories 6 through

24   21 that weren't presented in the data trends that are set forth

25   in the report.  The data trends that are set forth in the

1    verified, or have you verified something like that, since it's

2    so subjective.  But I don't -- I think that there is -- that

3    the data that exists in these other categories, 6 through 21,

4    is a broader range of type of information or types of

5    incidents.  I think one category that was left out consisted

6    of, you know, drivers touching passengers' legs without

7    consent.  You know, that seems to me to be a pretty

8    straightforward type of conduct that was not included in the

9    data trends, and plaintiffs are asking for the underlying data

10   that reflects those incidents.

11       So I understand the concerns about what the implications

12   are of turning over some incident tickets or data that reflects

13   the incident tickets that concern something highly subjective,

14   like did somebody leer at me, give me a, you know, sexualized

15   glance or stare that caused the passenger to have concerns

16   about their safety, to, on the other hand, the group of

17   incident reports, which we don't know how many, involved driver

18   reportedly touching passengers' legs without consent.  So my

19   understanding is that was left out.

20       So, but does that data exist in a dataset?

21            **MR. SHORTNACY:**  The answer is "no."  And I think let

22   me try to clarify what I mean by that.

23       The leg example that Your Honor is using I think does

24   still implicate subjective meaning and was it in a sexualized

25   way or not, but I agree with you it's certainly more clear than

1          **THE COURT:**  Of course.

2          **MR. SHORTNACY:**  I think this -- you know, I

3    appreciate the position Ms. Wilkins is in, in that Uber has

4    superior knowledge about its data systems and processes, but I

5    think that the comments being made from plaintiffs' counsel

6    about things being thrown away and GPS data being associated

7    with these tickets, which they're not in this reportable data,

8    so let me just make that very clear.  What Ms. Wilkins is

9    asking for is not in the G' -- the GPS data is not part of the

10   tickets in the way that I think that Ms. Wilkins imagines or

11   maybe has seen from the defense fact sheet productions, which

12   have been made for I think 90 percent of the filed cases in the

13   MDL, of which at this point they're like 234 cases.  And so

14   that information's being provided.

15        And what we're -- we're getting a lot of questions from

16   plaintiffs' counsel assuming things about the data, assuming

17   about how things might work, and if it were that way, how they

18   might be able to be used to provide trends.  But I have --

19   hopefully we set out in our papers, hopefully I'm setting it

20   out here, because I hear, you know, counsel's reverting back to

21   central sources again, and I have explained that the tickets

22   reside in separate sources, and I'm trying to explain that to

23   the extent there is a review done on the other categories, it

24   is not a rigorous review, because it's not the five taxonomy

25   categories.  And so it isn't fair to even say that those cases