# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION | MDL No. 3084 CRB |
| | The Honorable Charles R. Breyer |
| This Document Relates to: | **PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT UBER TECHNOLOGIES, INC., RASIER LLC AND RASIER-CA, LLC** |
| ALL ACTIONS | |

**PROPOUNDING PARTY:**          **MDL Plaintiffs**

**RESPONDING PARTIES:**          **Uber Technologies, Inc., Rasier LLC and Rasier-CA, LLC and their attorneys of record.**

**SET:**                                        **1**

**DATE OF SERVICE:**              **February 28, 2024**

      Pursuant to Rules 26 and 24 of the Federal Rules of Civil Procedure, PLAINTIFFS, through their counsel, propound this First Set of Document Request ("Requests") to Defendants UBER TECHNOLOGIES INC., RASIER LLC and RASIER-CA, LLC (hereinafter referred to as "DEFENDANT" or "DEFENDANTS"). Responses to these Requests for Productions, or objections in lieu thereof, shall be served within 30 days from service of this document.

I.      <u>**INSTRUCTIONS**</u>

      The following instructions and definitions apply to each of the Requests set forth below and are deemed to be incorporated therein:

      1.      With respect to each Request for Production, You are required to provide all Documents in Your possession, custody, or control that are known or that You can locate or

discover through reasonably diligent efforts.

2.     Documents should be produced as they are maintained in the normal course of business, and thus if Documents are maintained in electronic form, they should be produced in electronic form and in accordance with the ESI Order governing the format of production of documents in this matter.

3.     Hard copies of Documents shall be produced as they are kept in the usual course of business. All hard copies of Documents shall be produced with a copy of the file folder, envelope, or other container in which the Documents are kept or maintained. All hard copy Documents shall be produced intact in their original files, without disturbing the organization of Documents employed during the conduct of the ordinary course of business and during the subsequent maintenance of the Documents. See Fed. R. Civ. P. 34(b)(2)(E). To the extent a hard copy responsive Document has been electronically scanned (for any purpose), that Document must be produced in a readable and accessible electronic format in accordance with the ESI Order governing the format of production of documents in this matter, with the opportunity provided to review the original Document(s).

4.     You are not required to organize and label responsive Documents to correspond to the categories in any request, but each Response shall Identify the Documents responsive to that Request by Bates label/number.

5.     When producing Documents:

a.   indicate the Request, including paragraph and subparagraph, to which a produced Document or thing is responsive;

b.   furnish Documents or things within Your control, regardless of whether such Documents or things are possessed directly by You or Your representatives; and

c.   if any requested Documents or things cannot be produced in full, produce to the extent possible, specifying each reason for Your inability to produce the remainder and stating whatever information, knowledge or belief You do have concerning the portion not produced.

6.      Each document request shall be construed to include Documents within the knowledge, possession, or control of the Defendant, its attorneys, investigators, agents, owners, officers, employees, or other representatives of the party and/or its attorneys, as of the date of the answers given to those document requests and any supplemental information, knowledge, data, Documents, or Communication responsive to these document requests which is subsequently obtained or discovered.

7.      If, to Your knowledge, a responsive Document was never in Your possession, custody, or control but has been in the possession, custody, or control of any other Person or entity, You shall Identify such Person or entity.

8.      If any responsive Document was formerly in Your possession, custody, or control but is no longer available, whether because it was lost, destroyed, transmitted, or discarded,  or is unavailable for any other reason, You shall submit a written statement as follows:

    a.  Describe in detail the nature of the Document and its contents;

    b.   Identify the Person or Persons who authored, prepared, or edited the Document any Person or Persons to whom the Document was sent or shared;

    c.  List all dates when the Document was created or modified;

    d.  List all dates when the Document was lost, destroyed, or made unavailable;

    e.  State any reason(s) the Document was lost, destroyed, or made unavailable;

    f.  List all Persons known or reasonably believed by YOU to have or formerly have had possession of the Document or have had knowledge of its contents;

    g.  State the name and address of each person who destroyed or made the document unavailable; and

    h.  State the name and address of each person who directed or approved of destroying the document or making it unavailable.

9.      If You make any assumption of fact or law in responding to any request, state each assumption and the basis for each assumption.

10.     If the response to any document request consists, in whole or in part, of any objection(s), state with specificity the full objection(s) and the particularized basis for each objection. You must also state whether any responsive materials are being withheld on the basis of any objection(s). To the extent that You object to any portion of a document request, You must respond to the remaining portion of the request to which You do not object.

11.     If You object to a request for production on the basis of any claim of privilege, then You must produce any and all information required by the Privilege Order for this matter.

12.     If any Documents or information cannot be produced in full, You are required to specify, to the extent possible, the reasons for Your inability to produce the remainder, and the approximate date when You expect to produce such Documents, if at all.

13.     Whenever a Document is not produced in full, or is produced in redacted form, then said Document must be produced in accordance with the Privilege Order for this matter.

14.     Responsive Electronically Stored Information ("ESI") shall be produced in accordance with the ESI Order for this matter.

15.     If no Documents responsive to a particular Request exist, you must state that no responsive Documents exist.

16.     You are required to timely supplement Your responses when appropriate or necessary under the Federal Rules of Civil Procedure to make them correct or complete. If, after producing Documents or information responsive to these Requests, additional responsive information or Documents become available to You, You are required to produce such additional Documents or information.

17.     Each request is considered continuing, if You obtain information that renders any response incomplete or inaccurate, You are obligated to serve amended answers and/or Documents on the undersigned.

18.    All information is requested dating from the earliest date of Your retention through the date of Your response.

19.    For purposes of interpreting or construing the scope of these requests, the terms shall be given their most expansive and inclusive interpretation unless otherwise specifically limited by the language of an individual request. This includes, without limitation, the following:

    a.    The terms "each," "every," "any," and "all" are synonymous with one another and with "each and every" and "any and all;"

    b.    The connectives "and" and "or" are used inclusively and not exclusively and shall be construed either disjunctively or conjunctively as to require the broadest possible response;

    c.    Construing the singular form of the word to include the plural and the plural form to include the singular;

    d.    Construing the masculine to include the feminine, and vice-versa;

    e.    The use of any tense of any verb shall also include all other tenses of that verb;

    f.    A term or word defined herein is meant to include both the lower and uppercase reference to such term or word.

    g.    Any Bates number referenced in these Requests shall be construed to refer not only to the specific page number identified but to the entirety of the document associated with that Bates number, including any family members.

    h.    Construing the term "including" to mean including but not limited to.

20.    Unless otherwise indicated, the name of any Person, party or business organization shall specifically include all past and present employees, officers, directors, agents, representatives, general partners, limited partners, successors, predecessors, and attorneys of the Person, party, or business organization.

21.    In construing these requests, You should give effect to the Definitions set forth below. Undefined words and terms shall be given their common meaning. If You are unsure about the definition of a particular term or word, use the definition that You believe to be the most accurate and state that definition in Your response. If, in responding to any of these requests, You

encounter any other ambiguity in construing either the request or an instruction, then set forth the matter You deem ambiguous and the construction You use in answering the request.

22.    Unless otherwise indicated, the relevant time period for the information sought is from January 1, 2009 through the present time.

## II.    **DEFINITIONS**

In this Request for Production of Documents the following words and terms shall bear the meanings as identified below. For any undefined term, the standard dictionary definition of the term applies.

1.    "COMMUNICATION(S)" is intended it its broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise), including:

a. correspondence, letters, memoranda, notes, comments, faxes, and "post-its," whether handwritten or otherwise;

b. emails;

c. text messages, whether sent via SMS, MMS, iMessage, or any other text-messaging platform or protocol, including without limitation end-to-end encrypted platforms such as Signal and WhatsApp;

d. messages posted to or transmitted via any online collaborative system, hub, or resource, whether network- or cloud-based, and whether that system, hub, or resource is made available by a third party or is proprietary to You, including but not limited to Google Chat, Slack, uChat, and HipChat;

e. user(s)-to-user(s) messages sent via any social media platform including Sprinklr, X (formerly Twitter), Facebook, LinkedIn, YouTube, Instagram, SnapChat,

Reddit, Tumblr, Bluesky, Mastodon, Twitch, Discord, and TikTok, including messages

sent "directly" or "privately;"

f. posts (whether public or otherwise) on any social media platform including but

not limited to those referenced immediately above;

g. voicemails and voice messages;

h. any handwritten, printed, typed, photographed, recorded, computer-generated,

or computer-stored representation or writing that memorializes, transcribes, or records the

substance or occurrence of any meeting, conference, seminar, discussion, conference call,

or videoconference call, including calendar invites, minutes, notes, memoranda, briefing

materials, decks, presentations, letters, postings, circulars, bulletins, agenda, instructions,

audio recordings, and video recordings.

2.      "DOCUMENT" and "DOCUMENTS" shall have the broadest possible meaning

and interpretation and refers to any material or information discoverable under Fed. R. Civ. P.

34(a) and applicable Local Rules, including ESI and communications, and any original (or, if the

information requested cannot be provided as to the original, each and every copy, duplicate or

reproduction) of any medium upon which information can be recorded or retrieved. Consistent

with the above definition, the term DOCUMENT shall include, without limitation, any written,

printed, recorded, typed, photostatic, photographed, computer-generated, computer-stored,

graphic matter, or otherwise maintained or reproduced communication or representation, any data

compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, or

bytes, including those in any language, whether produced or reproduced or stored on paper, cards,

tape, film, computer, electronic storage devices or any other media. The definition of

DOCUMENTS includes papers, trade letters, envelopes, telegrams, cables, messages,

correspondence, memoranda, notes, email, text messages, instant messages, communications on

any collaborative system or hub (including but not limited to Google Chat, Slack, uChat, and HipChat), electronic signals, electronic data, active files, deleted files, file fragments, reports, studies, press releases, comparisons, books, accounts, checks, audio and video recordings, pleadings, testimony, articles, bulletins, pamphlets, brochures, magazines, questionnaires, surveys, charts, newspapers, calendars, lists, logs, publications, notices, diagrams, instructions, diaries, meeting minutes, orders, resolutions, agendas and memorials or notes of oral Communications, together with all notations on any of the foregoing, all originals, file copies or other unique copies of the foregoing and all versions of drafts thereof, whether used or not. A request for all Documents Concerning a particular subject matter includes within its scope all Communications Concerning that subject matter.

3.      "DRIVER" means anyone who uses or at any time has used the Uber Application to be connected with RIDERs for the purpose of providing rides to RIDERs. Where appropriate, "Driver" shall be interpreted to also include potential or prospective Drivers.

4.      IDENTITY," IDENTIFICATION," or "IDENTIFY" means:

    a.   When used in reference to a Person, shall mean to state her/his full name, address, telephone number, business affiliation, and relationship, if any, to the party answering the request;

    b.   When used in reference to a business entity, shall mean to state the full name, address, telephone number of the entity, and the address of its principal place of business;

    c.   When used in reference to a Document, shall mean to state the type of Document, date, author, addressee, recipient, title, its present location, the name and address of its custodian, and the substance of its contents. In lieu of the foregoing, a copy of the Document may be attached as an exhibit to Your answers; and

    d.   When used in reference to a Communication, shall mean to Identify the Persons making and receiving the Communication, and to state the mode of the Communication (i.e.: verbal, written, etc.), the date and place of the Communication, and the contents of the Communication.

5.      "LONG DROP-OFF" means any Uber ride that took longer than calculated by

GPS, Google Maps, or other mapping application used by Uber to estimate the expected length of time of an Uber ride, or otherwise deviated from the expected route as determined by GPS, Google Maps, or other mapping application used by Uber to define the ride route.

6.      "PERSON" or "PERSON" means any natural person, corporation, company, partnership, proprietorship, association, governmental or nongovernmental entity, agency, organization, group, or any other business entity or association.

7.      "POLICY" or "POLICIES" means all formal and informal policies, practices, guidelines, protocols, procedures, plans, systems, customs, or manners of conducting a specific task that are or were adopted, implemented, considered, or used by YOU; and for each of the foregoing terms, the methods and means of implementation.

8.      "REGARDING," "REFERRING TO," "REFER TO," "REFLECTING," "REFLECT," "CONCERNING," "CONCERN," "RELATE(S)," "RELATE(S) TO," "RELATED TO" or "RELATING TO" are used in their broadest sense and mean anything that, in whole or in part, analyzes, comments upon, concerns, contains, considers, constitutes, contradicts, comprises, deals with, describes, discusses, embodies, evidences, evaluates, indicates, identifies, involves, mentions, memorializes, pertains to, provides, refers to, reflects, regards, relates to, reports on, responds to, reviews, shows, states, summarizes, supports, or is in any way factually, legally, or logically pertinent to or connected with the subject matter or topic in question, either in whole or in part.

9.      "RELEVANT TIME PERIOD" shall mean and refer to January 1, 2009 through the present time, unless otherwise specified.

10.      "RIDE" means transportation provided by a Driver to a Rider after the Driver and Rider were initially connected to each other through the Uber App, regardless of whether the Ride was coordinated through the Uber Application.

11.     "RIDER" means any individual taking an Uber Ride, regardless of whether the Ride was coordinated through the Uber Application and regardless of whether the Rider was the person who ordered the ride or owner of the account used to order the ride.

12.     "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent of the Rider, including but not limited to all acts addressed in Defendants' taxonomy and RALIANCE's Sexual Assault taxonomy.

13.     "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal or staring) of a sexual nature that is without consent or has the effect of threatening or intimidating a Rider, including but not limited to all acts addressed in Defendants' taxonomy and RALIANCE's Sexual Misconduct taxonomy.

14.     "UBER," "YOU," "YOUR," or "YOURSELF" shall mean and refer to Uber Technologies, Inc., Rasier LLC, and Rasier-CA, LLC, including each of their parents, divisions, departments, subsidiaries, affiliates, predecessors, successors, present or former officers, directors, owners, members, partners, principals, agents, employees, contractors, subcontractors, administrators, attorneys, experts, investigators, consultants, joint venturers, licensors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

15.     "UBER APPLICATION" or "UBER APP" means Uber's mobile device application that is used by Drivers and Riders to coordinate, provide, or order Uber Rides, including apps used by both DRIVER or RIDER, and including the Uber Driver Application.

### III. **DOCUMENT REQUESTS**

**REQUEST NO. 1:** Any and all corporate organization charts that identify YOUR corporate organizational structure from 2009 to the present, including, but not limited to, charts that set forth the organization of corporate management and departments related to the design, engineering, product management, investigations, communications, research, development, testing, marketing, advertising, regulatory compliance, safety, driver activity, commercial activity and/or data collection related to YOUR Uber Application.

**REQUEST NO. 2:** Documents sufficient to identify the number, positions, job duties, and responsibilities of YOUR employees who were assigned to the departments identified in Request No. 1 and the geographic locations of said departments for each of the years 2009 to the present.

**REQUEST NO. 3:** YOUR employee and/or telephone and/or e-mail directory for each of the years 2009 to the present.

**REQUEST NO. 4:** Organizational charts and corporate directories in effect sufficient to identify YOUR departments, officers, and employees whose principal responsibilities are to protect the Safety of RIDERS and/or DRIVERS who use YOUR Uber Application for each of the years 2009 to the present.

**REQUEST NO. 5:** Documents sufficient to show the relationship between and among the named Defendants.

**REQUEST NO. 6:** Any and all agreements among or between any or all named Defendants RELATING TO the design, research, development, testing, marketing, advertising, public relations, lobbying, regulatory compliance, driver activity, data collection, and/or safety of YOUR Uber Application.

**REQUEST NO. 7:** Any and all DOCUMENTS RELATED TO YOUR document retention/destruction policies before September 1, 2015, including, but not limited to, the policies themselves and any communications concerning changes to the policies.

**REQUEST NO. 8:** Any and all DOCUMENTS RELATED TO YOUR document retention/destruction policies from September 1, 2015 to present, including, but not limited to, the policies themselves and any communications concerning changes to the policies.

**REQUEST NO. 9:** Any and all DOCUMENTS RELATED TO YOUR implementation and utilization of Google Vault, including all documents related to the scope of contract including functionality for Google Vault, the backup of Google Vault, user manuals for Google Vault.

**REQUEST NO. 10:** Any and all DOCUMENTS RELATED TO YOUR 180-day email retention policy from September 1, 2015 to January 31, 2023, including communications concerning changes to the policies and/or discussing reasons to implement.

**REQUEST NO. 11:** Any and all DOCUMENTS RELATED TO YOUR retention policy for your communication platforms, including GoogleChat, Slack, HipChat, uChat and/or Wikcr, including communications concerning changes to the policies and/or discussing reasons to

implement.

**REQUEST NO. 12 :** All documents sufficient to identify YOUR data or sources of data that are not reasonably accessible and the reasons therefor.

**REQUEST NO. 13 :**  Any and all DOCUMENTS sufficient to identify Uber's computer systems, databases (including warehouses), hardware, software, cloud storage or other electronic storage, and workplace communication platforms (e.g., Slack, GoogleChat, HipChat) including when each was used, during what time period, for what and by whom.

**REQUEST NO. 14:** Any and all DOCUMENTS RELATED TO YOUR insurance costs for each year of YOUR operations.

**REQUEST NO. 15 :** Any and all DOCUMENTS RELATED TO all insurance policies and applications, underwriting analysis, and insurance claim files for policies that cover or may cover YOU in the event that a DRIVER commits an act of SEXUAL MISCONDUCT or SEXUAL ASSAULT on a RIDER.

**REQUEST NO. 16:** Any and all DOCUMENTS RELATED TO any investigatory file related to claims made on any insurance policies that cover YOU in the event that a DRIVER commits SEXUAL MISCONDUCT or SEXUAL ASSAULT on a RIDER.

**REQUEST NO. 17:** Any and all DOCUMENTS RELATED TO the relationship between insurance costs and the implementation of Safe Rides Fees.

**REQUEST NO. 18:** Any and all DOCUMENTS RELATED TO YOUR DRIVER application, vetting, and approval process, including any modifications YOU made and any related discussions.

**REQUEST NO. 19:** Any and all DOCUMENTS REGARDING YOUR use of third-parties, including background check companies, for conducting background checks and/or screening on DRIVERS, including all changes of companies.

**REQUEST NO. 20:** Any and all DOCUMENTS (including but not limited to spreadsheets) containing the criteria YOU use to determine whether a potential DRIVER would be eligible to operate as a DRIVER for YOU, including all versions thereof and identifying effective dates and geographic scope.

**REQUEST NO. 21:** Any and all DOCUMENTS RELATING TO all potential or proposed changes YOU considered to the criteria or eligibility requirements, if any, YOU use to determine whether a potential DRIVER will be eligible to act as a DRIVER for YOU.

**REQUEST NO. 22:** Any and all DOCUMENTS RELATED to any auditing of DRIVER background checks and/or screening YOU performed or obtained for DRIVERS.

**REQUEST NO. 23:** Any and all DOCUMENTS RELATED TO each and every instance where, an individual did not meet YOUR then-existing criteria for becoming a DRIVER, including due to prior criminal history, yet YOU permitted the individual to be a DRIVER, whether because YOUR background check did not disclose the prior history or because the

individual was permitted to be a DRIVER despite the background check not meeting YOUR criteria for DRIVERS.

**REQUEST NO. 24** : Any and all of YOUR training materials, including audio or visual materials, provided to DRIVERS.

**REQUEST NO. 25** : Any and all DOCUMENTS YOU provided to DRIVERS and/or RIDERS reflecting agreements or instructions YOU required DRIVERS and/or RIDERS to agree to and/or comply with (including but not limited to Terms of Use and Community Guidelines), including all versions thereof and identifying the effective date and geographic scope applicable to each.

**REQUEST NO. 26:** Any and all DOCUMENTS YOU have RELATED TO the effectiveness of background checks of any type, including those YOU considered and/or implemented, in identifying types of information, including incidents and/or convictions that would bar a potential DRIVER from driving for YOU.

**REQUEST NO. 27:** Any and all DOCUMENTS RELATED TO reasons YOU decided not to operate in a particular geographic market, including based on requiring certain background checks.

**REQUEST NO. 28:** Any and all DOCUMENTS RELATING TO research YOU conducted regarding the risk of SEXUAL ASSAULT OR SEXUAL MISCONDUCT among users or potential users of the Uber Application.

**REQUEST NO. 29:** Any and all DOCUMENTS RELATING TO measures YOU have taken, implemented, or considered taking or implementing, to prevent or deter SEXUAL ASSAULT OR SEXUAL MISCONDUCT.

**REQUEST NO. 30:** Any and all DOCUMENTS RELATING TO YOUR policies and procedures regarding DRIVER interaction with RIDERS, including physical contact with RIDERS.

**REQUEST NO. 31:** Any and all DOCUMENTS REGARDING the feasibility or potential efficacy of monitoring of audio through the Uber Application for the purpose of preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 32:** Any and all DOCUMENTS REGARDING the feasibility or potential efficacy of monitoring of DRIVERS' or RIDERS' estimated time of arrival through the Uber Application for the purpose of preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 33:** Any and all DOCUMENTS REGARDING the feasibility or potential efficacy monitoring DRIVER routes through the Uber Application, through GPS, or otherwise, including but not limited to whether the DRIVER took the RIDER "off-route," for the purpose of preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 34:** Any and all DOCUMENTS REGARDING the feasibility or efficacy of use of DRIVER or RIDER mobile phone camera functions for the purpose of preventing or

deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 35:** Any and all DOCUMENTS REGARDING the feasibility or efficacy of monitoring time spent between DRIVERS and RIDERS before or after a Ride for the purpose of preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 36:** Any and all DOCUMENTS REGARDING Long Drop-Off detection or notification.

**REQUEST NO. 37:** Any and all DOCUMENTS REGARDING the feasibility or potential efficacy of monitoring RIDERS' messaging functions on their phones for the purpose of preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 38:** Any and all DOCUMENTS REGARDING YOUR inappropriate message detection feature, including but not limited to the feasibility or effectiveness of this feature in relation to preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 39:** Any and all Documents Regarding the use of the Uber Application to share real-time RIDER location with others, including but not limited to the feasibility or efficacy of this feature in relation to preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 40:** Any and all DOCUMENTS REGARDING any and all marketing or safety-related communications displayed or communicated to RIDERS through the Uber App.

**REQUEST NO. 41:** Any and all DOCUMENTS REGARDING YOUR use of YOUR Uber Application by RIDERS to contact YOU if they feel unsafe and its effectiveness at preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 42:** Any and all DOCUMENTS REGARDING YOUR use of the Uber Application by RIDERS to contact law enforcement or the police if they feel unsafe and its effectiveness at preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 43:** Any and all DOCUMENTS REGARDING the feasibility or efficacy of allowing RIDERS to use the Uber Application to report DRIVER SEXUAL MISCONDUCT or SEXUAL ASSAULT, whether to YOU or to police or law enforcement, in RELATION TO preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 44:** Any and all DOCUMENTS REGARDING any Safety Tools, including the Safety Tool Kit, on the Uber Application.

**REQUEST NO. 45:** Any and all DOCUMENTS REGARDING YOUR Ride Check support feature on the Uber Application.

**REQUEST NO. 46:** Any and all DOCUMENTS REGARDING YOUR Emergency Assistance Button feature on the Uber Application.

**REQUEST NO. 47:** Any and all DOCUMENTS REGARDING YOUR Real Time

Identification feature on the Uber Application.

**REQUEST NO. 48:** Any and all DOCUMENTS REGARDING YOUR anonymous call feature on the Uber Application.

**REQUEST NO. 49:** Any and all DOCUMENTS REGARDING YOUR route-check feature on the Uber Application.

**REQUEST NO. 50:** Any and all DOCUMENTS REGARDING YOUR PIN verification feature on the Uber Application.

**REQUEST NO. 51:** Any and all DOCUMENTS REGARDING the use of dash cameras in DRIVER vehicles, including but not limited to the feasibility of offering this function through the Uber Application and the effectiveness at preventing or deterring SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 52:** Any and all DOCUMENTS REGARDING a RIDER'S ability to select a Female or Non-binary DRIVER preference, including but not limited to the feasibility of offering this function through the Uber Application.

**REQUEST NO. 53:** Any and all DOCUMENTS REGARDING YOUR policies, practices, and procedures RELATING TO preventing SEXUAL MISCONDUCT or SEXUAL ASSAULTS by DRIVERS.

**REQUEST NO. 54:** Any and all DOCUMENTS REGARDING YOUR consideration of policy changes that may prevent or deter SEXUAL MISCONDUCT or SEXUAL ASSAULTS by DRIVERS.

**REQUEST NO. 55:** Any and all DOCUMENTS RELATED TO YOUR "Safe Rides Fee," including but not limited to the decision to implement the Safe Rides Fee, the reason for implementing the Safe Ride Fee, all communications to YOUR DRIVERS or RIDERS REGARDING the Safe Rides Fee, and advertising or marketing REGARDING the Safe Rides Fee.

**REQUEST NO. 56:** Any and all DOCUMENTS REGARDING the total dollar amount of Safe Rides Fees that YOU collected from date of implementation though present.

**REQUEST NO. 57:** Any and all DOCUMENTS REGARDING how YOU used the funds that YOU collected from the Safe Rides Fees.

**REQUEST NO. 58:** Any and all DOCUMENTS REGARDING YOUR policies and procedures REGARDING spending of funds collected from Safe Rides Fees.

**REQUEST NO. 59:** Any and all DOCUMENTS IDENTIFYING each instance YOU communicated with a RIDER REGARDING complaints or reports RELATED TO SEXUAL MISCONDUCT or SEXUAL ASSAULT that YOU received about a DRIVER with whom the RIDER is paired.

**REQUEST NO. 60:** Any and all DOCUMENTS IDENTIFYING each instance YOU communicated with a RIDER regarding a DRIVER'S criminal history RELATED TO SEXUAL MISCONDUCT, SEXUAL ASSAULT, crimes involving violence, crimes involving weapons, or any felony charge or conviction.

**REQUEST NO. 61:** Any and all DOCUMENTS IDENTIFYING each instance in which YOU informed a RIDER that a DRIVER had previously been disciplined by YOU, including but not limited to the issuance of a "strike" by YOU.

**REQUEST NO. 62:** Any and all DOCUMENTS IDENTIFYING each instance in which YOU informed a RIDER that a DRIVER had received a one-star rating or no rating from another RIDER due to DRIVER SEXUAL MISCONDUCT or SEXUAL ASSAULT of another RIDER.

**REQUEST NO. 63:** Any and all DOCUMENTS RELATED TO YOUR policies REGARDING communications to RIDERS about prior complaints YOU received about DRIVERS and or disciplinary actions by YOU against DRIVERS, including "strikes," suspensions, and terminations.

**REQUEST NO. 64:** Any and all DOCUMENTS RELATED TO a RIDER'S ability to select, modify, or provide criteria REGARDING the DRIVER with whom the RIDER is paired, or YOUR consideration of allowing this feature or function through the Uber Application.

**REQUEST NO. 65:** Any and all DOCUMENTS IDENTIFYING penalties or consequences a RIDER may incur if choosing not to accept a RIDE from a DRIVER with whom the RIDER was paired, whether by rejecting or cancelling the RIDE, or ending the RIDE early.

**REQUEST NO. 66:** Any and all DOCUMENTS RELATED TO YOUR DRIVER rating system, including but not limited to: the impact on the DRIVER rating of the rating assigned by an individual RIDER, the impact on the DRIVER rating when an individual RIDER does not rate the DRIVER, notification to the DRIVER of a RIDER'S rating of the DRIVER, the ability for a RIDER to submit anonymous DRIVER ratings, and what DRIVER rating information is available to RIDERS including but not limited to how the displayed DRIVER ratings are calculated, the length of time that an individual RIDER'S rating affects the DRIVER'S displayed rating, and what information is available to RIDERS regarding one-star ratings of a DRIVER by prior RIDERS. This request includes DOCUMENTS RELATED TO all procedures, policies, and processes that were actually used, as well as procedures, policies, and processes that YOU considered and any discussions thereof.

**REQUEST NO. 67:** Any and all DOCUMENTS RELATED TO warnings that YOU provided to RIDERS of the risk of SEXUAL MISCONDUCT or SEXUAL ASSAULT to RIDERS using the Uber Application.

**REQUEST NO. 68:** Any and all DOCUMENTS RELATING TO YOUR current or former policies, practices, procedures, templates and forms, for receiving, investigating, responding to customer complaints or customer support requests (including but not limited to DOCUMENTS provided to or related to YOUR Incident Response Team and Your Special Investigations Unit), including but not limited to a report made by or on behalf of a RIDER of SEXUAL ASSAULT or SEXUAL MISCONDUCT by a DRIVER.

1

2          **REQUEST NO. 69:**  Any and all DOCUMENTS RELATING TO YOUR current and
former policies and procedures for reporting to, responding to, or cooperating with law
3   enforcement or criminal or civil justice systems regarding to claims or reports of SEXUAL
ASSAULT or SEXUAL MISCONDUCT.
4
5          **REQUEST NO. 70:** Any and all DOCUMENTS that identify the employees,
departments, contracted or hired third parties, or other persons, current and former, that receive
6   and investigate complaints YOU receive of SEXUAL ASSAULT or SEXUAL MISCONDUCT.

7          **REQUEST NO. 71:** Any and all DOCUMENTS RELATED TO training of YOUR
employees who respond to reports or claims of SEXUAL MISCONDUCT or SEXUAL
8   ASSAULT by DRIVERS or RIDERS.

9          **REQUEST NO. 72:** Any and all DOCUMENTS RELATED TO the employment
requirements (including but not limited to educational background and training) for YOUR
10  employees/agents responsible for receiving, investigating, and responding to claims or reports of
SEXUAL MISCONDUCT or SEXUAL ASSAULT by DRIVERS or RIDERS.
11
12         **REQUEST NO. 73:** Any and all DOCUMENTS RELATED TO the total number of
reports or claims of SEXUAL MISCONDUCT or SEXUAL ASSAULT by DRIVERS on
13  RIDERS that YOU received in each year from 2009 to present, whether received from a RIDER
or any other source, including the dates and geographical locations of the alleged SEXUAL
14  MISCONDUCT or SEXUAL ASSAULT.

15         **REQUEST NO. 74:**  Any and all DOCUMENTS RELATING TO DRIVERS who have
been accused by a RIDER of SEXUAL ASSAULT or SEXUAL MISCONDUCT more than once,
16  e.g., with respect to more than one RIDE.

17         **REQUEST NO. 75:** Any and all DOCUMENTS RELATED TO YOUR investigation
and/or response to individual reports or claims made by or on behalf of a RIDER of SEXUAL
18  MISCONDUCT or SEXUAL ASSSAULT by a DRIVER that YOU received, whether from a
RIDER or any other source, including but not limited to any suspension, deactivation, or other
19  disciplinary action taken.
20
21         **REQUEST NO. 76:**  Any and all DOCUMENTS RELATED TO SEXUAL ASSAULT
OR SEXUAL MISCONDUCT by DRIVERS with RIDERS that YOU identified or obtained as
22  the result of YOUR monitoring of online platforms including social media, blog posts, news
outlets, or other media.
23
24         **REQUEST NO. 77:**  Provide a list of all claims, filed or unfiled, that YOU settled related
to SEXUAL ASSAULT or SEXUAL MISCONDUCT  alleged against DRIVERS.
25
26         **REQUEST NO. 78:**  Provide a list of all claims, filed or unfiled, that YOU settled related
to SEXUAL ASSAULT or SEXUAL MISCONDUCT alleged against RIDERS.
27
28         **REQUEST NO. 79:** Any and all DOCUMENTS RELATED TO YOUR investigation,
analysis, or attempts to identify trends in SEXUAL MISCONDUCT or SEXUAL ASSSAULT
claims or reports made against DRIVERS, including but not limited to, the day of the week or

time of day that the claimed SEXUAL MISCONDUCT or SEXUAL ASSAULT occurred, the geographical location (including population density) of the location where the claimed SEXUAL MISCONDUCT or SEXUAL ASSAULT occurred, the type of pick-up or drop-off location involved in the claim of SEXUAL MISCONDUCT OR SEXUAL ASSAULT (for example, businesses that sell alcohol or college campuses), and demographics RELATED to the RIDER or DRIVER involved in claims of SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 80:** Any and all DOCUMENTS REGARDING any analysis YOU have conducted or directed to be conducted to identify which DRIVERS only accept ride requests from female RIDERS.

**REQUEST NO. 81:** Any and all DOCUMENTS REGARDING any analysis YOU have conducted or directed to be conducted to identify which DRIVERS only accept ride requests on Thursday, Friday, and/or Saturday nights.

**REQUEST NO. 82:** Any and all DOCUMENTS REGARDING any analysis YOU have conducted or directed to be conducted to identify which DRIVERS only accept ride requests in geographical locations proximate to bars, nightclubs, and/or college campuses.

**REQUEST NO. 83:** Any and all DOCUMENTS RELATED TO YOUR Safety Reports, including ones you have published and/or considered publishing, including drafts.

**REQUEST NO. 84:** Any and all DOCUMENTS RELATED TO YOUR reviews, studies, surveys, or risk or hazard assessments related to SEXUAL MISCONDUCT or SEXUAL ASSAULT of RIDERS.

**REQUEST NO. 85:** Any and all DOCUMENTS REALTED TO any of YOUR meetings convened to discuss SEXUAL ASSAULT or SEXUAL MISCONDUCT in connection with the Uber Application, including meetings convened to discuss ways to prevent or eliminate SEXUAL ASSAULT or SEXUAL MISCONDUCT, specifying when the meetings took place and who attended, along with a copy of any agendas, summaries, or minutes to those meetings.

**REQUEST NO. 86:** Any and all DOCUMENTS RELATED TO the employment status of DRIVERS generally, including but not limited to as YOUR employees, agents, or independent contractors and including but not limited to the ramifications to YOU of DRIVERS' employment status classification.

**REQUEST NO. 87:** Any and all DOCUMENTS RELATED TO all orders, rulings, or findings (whether tentative or final), or decisions by any mediator, arbitrator, special master, or judge at any level wherein any DRIVER was classified as YOUR employee or agent.

**REQUEST NO. 88:** Any and all DOCUMENTS RELATED TO DRIVERS as YOUR "partners" or YOUR "investors."

**REQUEST NO. 89:** Any and all DOCUMENTS RELATED TO YOUR branding materials that YOU required or provided to DRIVERS to use or display on or in their vehicles.

**REQUEST NO. 90:** Any and all DOCUMENTS RELATED TO DRIVER'S ability to set,

adjust, or participate in setting the fare for an offered matched RIDE.

**REQUEST NO. 91:** Any and all DOCUMENTS REGARDING a DRIVER'S ability to control, limit, or define criteria for the RIDE offered or RIDERS he or she is matched with.

**REQUEST NO. 92:** Any and all DOCUMENTS REGARDING a DRIVER'S ability to reject an offered and/or matched RIDE, including but not limited to penalties or discipline for rejecting an assigned RIDE.

**REQUEST NO. 93:** Any and all DOCUMENTS REGARDING a DRIVER'S ability to cancel an accepted RIDE, including but not limited to penalties or discipline for canceling and/or rejecting an assigned RIDE(S).

**REQUEST NO. 94:** Any and all DOCUMENTS REGARDING monitoring of DRIVER speed through the Uber Application, including but not limited to policies and procedures RELATED TO DRIVER'S speed.

**REQUEST NO. 95:** Any and all DOCUMENTS REGARDING monitoring of DRIVER acceleration through the Uber Application, including but not limited to policies and procedures RELATED TO DRIVER'S acceleration.

**REQUEST NO. 96:** Any and all DOCUMENTS RELATED to the strike, suspension and/or deactivation policies YOU used for DRIVERS accused of SEXUAL ASSAULT or SEXUAL MISCONDUCT, including but not limited to DRIVER notification of strikes, DRIVER ability to appeal, any exceptions you made to these policies for individual DRIVERS or groups or categories of DRIVERS.

**REQUEST NO. 97:** Any and all DOCUMENTS REGARDING any policies, procedures, and/or practices YOU considered adopting or implementing REGARDING deactivation or suspension of DRIVERS as a consequence of actual or alleged misconduct but did not elect to adopt or implement.

**REQUEST NO. 98:** Any and all DOCUMENTS RELATED TO marketing specifically to current or potential male RIDERS.

**REQUEST NO. 99:** Any and all DOCUMENTS RELATED TO marketing specifically to current or potential female RIDERS.

**REQUEST NO. 100:** Any and all DOCUMENTS RELATED TO marketing efforts or campaigns that portray YOU as "safe" or as providing "safe" RIDES.

**REQUEST NO. 101:** Any and all DOCUMENTS REGARDING YOUR analysis or assessments by YOUR safety marketing department.

**REQUEST NO. 102:** Any and all DOCUMENTS REGARDING marketing directed to RIDERS who choose to use the Uber Application because they may have consumed alcohol.

**REQUEST NO. 103:** Any and all DOCUMENTS REGARDING marketing directed

specifically to RIDERS under the age of 18 or their families.

**REQUEST NO. 104:** Any and all DOCUMENTS REGARDING YOUR annual marketing and advertising budgets.

**REQUEST NO. 105:** Any and all DOCUMENTS REGARDING YOUR public communications, including but not limited to advertising and marketing, about SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 106:** Any and all DOCUMENTS RELATING TO the discussion of and decision to use "UberX" to refer peer-to-peer RIDES, including but not limited to the reasons for using the name "UberX" in reference to the peer-to-peer network and notification to RIDERS regarding the changes in UberX Driver qualifications when moving to a peer-to-peer network.

**REQUEST NO. 107:** Produce any and all agreements between YOU or any other named Defendant with any third party related to advertising, marketing, promotion, communications and/or public relations for YOUR Uber Application.

**REQUEST NO. 108:** Any and all DOCUMENTS that identify, reflect, or describe each actual, proposed, or projected instance of financial support (by grant, donations, or otherwise) by YOU to any external organization concerning Sexual Assault, including:
   a. RAINN (Rape, Abuse & Incest National Network)
   b. National Sexual Violence Resource Center
   c. Urban Institute
   d. Mothers Against Drunk Driving
   e. Respect Together
   f. Pennsylvania Coalition to Advance Respect
   g. California Commission Against Sexual Assault
   h. National Network to End Domestic Violence

**REQUEST NO. 109:** Any and all DOCUMENTS that identify, reflect, or describe communications YOU had with any external organization concerning Sexual Assault, including:
   a. RAINN (Rape, Abuse & Incest National Network)
   b. National Sexual Violence Resource Center
   c. Urban Institute
   d. Mothers Against Drunk Driving
   e. Respect Together
   f. Pennsylvania Coalition to Advance Respect
   g. California Commission Against Sexual Assault
   h. National Network to End Domestic Violence

**REQUEST NO. 110:** Any and all DOCUMENTS sufficient to identify each person(s) or entity outside YOUR organization YOU have engaged to lobby, influence, advise, coordinate with, or communicate with any legislative or regulatory body in the United States, including individual lobbyists, persons, consulting firms, or agencies.

**REQUEST NO. 111:** Any and all DOCUMENTS that identify, reflect, or describe each payment made by YOU or on YOUR behalf to lobby, influence, advise, coordinate with, or

communicate with any legislative or regulatory body in the United States.

**REQUEST NO. 112:** Any and all DOCUMENTS REGARDING YOUR state or local government lobbying efforts or activities, including but not limited to communications with any lobbyist, public policy entity, trade association, or representatives of state, local, or federal governmental entities.

**REQUEST NO. 113:** Any and all DOCUMENTS sufficient to identify each person(s) or entity outside YOUR organization that YOU have engaged to mobilize public and/or grassroots support for Uber, including persons, consulting firms, or agencies.

**REQUEST NO. 114:** Any and all DOCUMENTS that identify, reflect, or describe each payment made by YOU or on YOUR behalf to mobilize public and/or grassroots support for Uber.

**REQUEST NO. 115:** Any and all DOCUMENTS REGARDING YOUR creation of or involvement in efforts to mobilize the public or Uber users to oppose state, federal, or local laws or regulations, including but not limited to "Save Uber" campaigns.

**REQUEST NO. 116:** Any and all DOCUMENTS RELATED TO YOUR involvement in and/or funding related to voter referenda efforts.

**REQUEST NO. 117:** Any and all DOCUMENTS RELATED TO SCRB Strategies.

**REQUEST NO. 118:** Any and all DOCUMENTS RELATED TO California Prop 22.
**REQUEST NO. 119:** Any and all COMMUNICATIONS with any competitor concerning SEXUAL ASSAULT and SEXUAL MISCONDUCT in connection with rideshare applications.

**REQUEST NO. 120:** Any and all DOCUMENTS where YOU discuss seeking forgiveness rather than or in lieu of permission, including but not limited to all documents containing the phrases, "forgiveness [and] not permission" or "forgiveness rather than permission."

**REQUEST NO. 121:** Any and all DOCUMENTS RELATING TO YOUR policies, procedures, practices or strategies REGARDING governmental rules or regulations REGARDING Transportation Network Companies ("TNC's"), livery companies, taxis, and/or common carriers.

**REQUEST NO. 122:** Any and all DOCUMENTS RELATING TO YOUR "model regulations."

**REQUEST NO. 123:** Any and all DOCUMENTS where YOU discuss whether state, federal, or local laws or regulations REGARDING livery companies, common carriers, or taxi companies apply to YOU or whether you will abide by or comply with such laws or regulations.

**REQUEST NO. 124:** Any and all DOCUMENTS RELATED TO "Greyball."

**REQUEST NO. 125:** Any and all DOCUMENTS RELATED TO the "Kill Switch."

1

2      **REQUEST NO. 126:** Any and all DOCUMENTS RELATED TO the "Dawn Raid Manual."

3
       **REQUEST NO. 127:** Any and all DOCUMENTS RELATED TO fines; notification of
4      violations of local or state laws, rules, regulations, or requirements; cease and desist
       communications; or legal action from local, state, or federal government entities.
5
       **REQUEST NO. 128:** Any and all DOCUMENTS RELATED TO the 2014 Nairi
6      Hourdajian's statement, "Sometimes we have problems because, well, we're just fucking illegal,"
7      including but not limited to the referenced illegality of Your actions.

8      **REQUEST NO. 129:** Any and all DOCUMENTS REGARDING to any of the following
       investigation of YOU:
9

10         a.  Rape, Abuse & Incest National Network (RAINN)
           b.  Raliance
11         c.  Urban Institute
           d.  National Sexual Violence Resource Center
12         e.  Cheretoff Group LLC
           f.  Perkins Cole
13         g.  Covington & Burling/Eric Holder Report

14     **REQUEST NO. 130:** Any and all DOCUMENTS RELATED TO any lawsuits or
15     investigations undertaken by, objections to, or concerns from district attorneys or government
       officials from any jurisdiction (including international) about YOUR operations or practices
16     including but not limited to:
       a. Federal Bureau of Investigations
17     b. Equal Opportunity Employment Commission
       c. California Public Utilities Commission
18     d. Colorado Public Utilities Commission
       e. State of Connecticut or Congresswoman Rosa DeLauro
19     f. State of Illinois or Congresswoman Jennifer Gong-Gershowitz
       g. Iowa Department of Transportation
20     h. Massachusetts Department of Public Utilities
       i. The State of Missouri or Senator Josh Howley
21     j. New Jersey Department of Labor
       k. State of New York or New York Attorney General Letitia James
22     l. City of Los Angeles, California
       m. City of San Francisco, California
23
       n.  City of San Jose, California or Sam Liccardo
24     o. King County, Washington
       p. Santa Clara County, California or Terry Harman
25     q. Ending Forced Arbitration of Sexual Assault and Harassment Act
       r. Sami's Law
26     s. Stop Sexual Assault and Harassment in Transportation Act
       t. Congressman Joseph Crowley
27     u. Congressman Peter DeFazio

28

v. Congressman Christopher Smith
w. Congressman Tom Suozzi
x. Senator Marsha Blackburn
y. Senator Richard Blumenthal
z. Senator Jon Ossoff

**REQUEST NO. 131** : Any and all DOCUMENTS RELATED TO any requests for federal or state public records (*e.g.*, FOIA and CPRA requests) that concern RIDER safety, including but not limited to SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 132:** Any and all DOCUMENTS RELATED TO the California Public Utilities Commission's investigations or inquiries of YOU related to RIDER or DRIVER safety, SEXUAL MISCONDUCT, or SEXUAL ASSAULT.

**REQUEST NO. 133:** Any and all DOCUMENTS RELATED TO lawsuits or claims in the United States that concern safe-rides fee, whether filed in state or federal court, arbitration or mediation, including but not limited to the discovery produced in *McKnight, et al. v. Uber Technologies, Inc.*, et al., 3:14-cv-05615-JST (N.D. California) and *Mena, et al. v. Uber Technologies, Inc.*, 4:15-cv-00064 (N.D. California).

**REQUEST NO. 134:** Any and all DOCUMENTS RELATED TO *Cao v. Uber Technologies, Inc., et al.*, 3:22-cv-04688-YGR (N.D. California), including but not limited to the discovery produced in the lawsuit.

**REQUEST NO. 135:** Any and all DOCUMENTS RELATED TO "Jacobs materials," as referenced in *Waymo LLC v. Uber Technologies, Inc*., No. C 17-00939 WHA, (N.D. Cal. Jan. 29, 2018).

**REQUEST NO. 136:** Any and all DOCUMENTS RELATED to YOUR claims that the background checks used to screen DRIVERS are "gold standard" or "industry leading.".

**REQUEST NO. 137:** Any and all DOCUMENTS that IDENTIFY all Patents YOU have RELATED TO the Uber Application.

**REQUEST NO. 138:** Any and all DOCUMENTS YOU have REGARDING the percentage of SEXUAL MISCONDUCT or SEXUAL ASSAULT in the United States that is actually reported by the victim and the reasons why victims may not report.

**REQUEST NO. 139:** Any and all DOCUMENTS YOU have REGARDING Situational Vulnerability.

**REQUEST NO. 140:** Any and all DOCUMENTS YOU have REGARDING Hitchhiking.

**REQUEST NO. 141:** Any and all DOCUMENTS YOU have REGARDING sexual assault or misconduct in any form of transportation other than Uber.

**REQUEST NO. 142:** Documents that constitute, identify, or reflect the Policies, process, and criteria used by YOU to evaluate or determine compensation for employees responsible in

whole or part for issues related to Safety, SEXUAL ASSAULT, and SEXUAL MISCONDUCT.

**REQUEST NO. 143:** Any and all DOCUMENTS RELATED TO providing RIDER photographs to DRIVERS, including but not limited to documents related to RIDER safety.

**REQUEST NO. 144:** Any and all DOCUMENTS RELATED TO how the Uber Application pairs DRIVERS and RIDERS.

**REQUEST NO. 145:** Any and all DOCUMENTS RELATING TO YOUR recruitment of DRIVERS, including but not limited to marketing and incentives.

**REQUEST NO. 146:** Any and all DOCUMENTS RELATING TO YOUR retention of DRIVERS, including but not limited to incentives and bonuses.

**REQUEST NO. 147:** Any and all DOCUMENTS RELATING TO YOUR partnerships or contracts with car rental companies or other entities to facilitate DRIVERS' vehicle rentals or leases.

**REQUEST NO. 148:** Any and all DOCUMENTS provided to RIDERS RELATED TO safety, including but not limited to SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 149:** Any and all DOCUMENTS RELATED TO the process(es) by which a RIDER can report DRIVER SEXUAL MISCONDUCT or SEXUAL ASSAULT to YOU, including any information provided to RIDERS.

**REQUEST NO. 150:** All DOCUMENTS REFLECTING what YOU published in any app store including but not limited to YOUR title, byline, description, and screenshots.

**REQUEST NO. 151:** Any and all DOCUMENTS created or stored on the Google platform, including but not limited to e-mails, Google Sheets, Google Docs, Google Presentations, and Google Hangouts related to SEXUAL ASSAULT or SEXUAL MISCONDUCT.

**REQUEST NO. 152:** Any and all DOCUMENTS RELATED TO communications on any platforms YOU have used, including GoogleChat, Slack, HipChat, uChat and/or Wikcr, regarding SEXUAL ASSAULT or SEXUAL MISCONDUCT.

**REQUEST NO. 153:** Any and all DOCUMENTS REGARDING the 2018 Article by C. Sniffen, J. Durnan, & J. Zweig, "Helping industries to classify reports of sexual harassment, sexual misconduct, and sexual assault."

**REQUEST NO. 154:** Any and all DOCUMENTS RELATING to the following statements:
    a. "Uber is committed to helping to end gender-based violence on our platform and in the communities we serve. Uber is committed to helping to end gender-based violence on our platform and in the communities we serve."
    b. "Staying accountable means numbers matter."
    c. "We do the right thing, period."

d. "Before anyone can drive with Uber, they must undergo a multi-step safety screen, including being checked for driving violations, impaired driving, violent crime, and other checks. In addition, Uber rescreens drivers every year and uses technology to look for issues in between."

e. "Every ridesharing and livery driver is thoroughly screened through a rigorous process we've developed using industry-leading standards…[which]… "includes a three-step criminal background screening for the U.S.—with country, federal and multi-state checks that go back as far as the law allows—and ongoing reviews of drivers' motor vehicle records throughout their time on Uber."

f. "Our commitment to your safety"

g. "Focused on safety, wherever you go."

h. "we're committed to helping to create a safe environment for our users."

i. "Ride with confidence—The Uber experience was built with safety in mind. Through incident prevention tools, insurance coverage, and technology that keeps you connected, we're dedicated to helping you move safely and focus on what matters most."

j. "Designing a safer ride"

k. "features to help keep you safe"

l. "ride with confidence"

m. "Before anyone can drive with Uber in the US, they must complete a background check. Current drivers continue to be vetted every year."

n. "Designing a safer ride—An inclusive community— Through our joint efforts with cities and safety experts and by working together, we're helping to create safe journeys for everyone."

o. "safest ride(s) on the road"

p. "From the moment you request a ride to the moment you arrive, the Uber experience has been designed from the ground up with your safety in mind."

q. "We're confident that every ride on the Uber platform is safer than a taxi."[1]

**REQUEST NO. 155:** Any and all DOCUMENTS RELATING TO YOUR statement, "within each city we operate, we aim to go above and beyond local requirements to ensure your comfort and security – what we are doing in the US is an example of our standards around the world."

**REQUEST NO. 156:** Produce DOCUMENTS sufficient to show the total number of RIDES in the United States that occurred on the Uber Application, including by timeframe and geographical region.

**REQUEST NO. 157:** Produce DOCUMENTS sufficient to show the total number of RIDES globally that occurred on the Uber Application, including by timeframe and geographical region.

**REQUEST NO. 158:** Produce DOCUMENTS that show YOUR annual revenue and profits for each year, including your complete financial statements with line item expenditures.

---

[1] http://www.nbcbayarea. com/investigations/SF-DA-Wants-Stricter-Rules-for-Rideshare-Companies-261754071.html

**REQUEST NO. 159:** Produce DOCUMENTS with a detailed transaction list for all costs and expenses for the Relevant Time Period by year, summarized by vendor, including dates, transaction descriptions, monthly general ledger, general ledger account and cost and expenses type per YOUR Consolidated Statements of Operations.

**REQUEST NO. 160:** Any and all DOCUMENTS RELATING TO YOUR Board of Directors, including but not limited to meeting minutes, agendas, attendees, takeaways, presentations and all materials supplied to the Board and any drafts of the same where safety measures including driver background checks, training, or other safety checks, SEXUAL ASSAULT or SEXUAL MISCONDUCT were discussed.

**REQUEST NO. 161:** Produce DOCUMENTS constituting or reflecting pitch decks, presentations, slideshows, or other similar presentations made to current or prospective investors in YOU or YOUR Uber Application.

**REQUEST NO. 162:** Produce DOCUMENTS that constitute, identify, or reflect YOUR annual budget and annual expenditures for the marketing or promotion of YOUR Uber Application to RIDERS.

**REQUEST NO. 163:** Produce DOCUMENTS that constitute, identify, or reflect YOUR annual budget and annual expenditures for the marketing or promotion of YOUR Uber Application to DRIVERS.

**REQUEST NO. 164:** Produce DOCUMENTS that constitute, identify, or reflect YOUR annual budget and actual expenditures for trust and safety with respect to YOUR Uber Application.

**REQUEST NO. 165:** Produce DOCUMENTS that constitute, identify, or reflect YOUR annual budget and actual expenditures for research and development with respect to YOUR Uber Application.

**REQUEST NO. 166:** Documents sufficient to show Your annual budget and actual expenditures for lobbying and government relations with respect to Your Uber Application.

**REQUEST NO. 167:** Produce DOCUMENTS that constitute, identify, or reflect YOUR annual budget and actual expenditures for sexual assault detection and reporting for YOUR Uber Application.

**REQUEST NO. 168:** Produce DOCUMENTS that constitute, identify, or reflect YOUR annual budget and actual expenditures for employees, departments, or operations primarily directed toward protecting the wellbeing and safety of RIDERS on YOUR Uber Application.

**REQUEST NO. 169:** Produce DOCUMENTS REALTING TO YOUR business plans projecting or targeted goals for the numbers of users of YOUR Application (RIDERS and DRIVERS), number of rides per RIDER, number of rides per DRIVER, and Documents measuring actual performance relative to such plans.

**REQUEST NO. 170:** Produce DOCUMENTS RELATING TO YOUR business plans or strategies for revenue, earnings and market share.

**REQUEST NO. 171:**  Produce and all DOCUMENTS REGARDING competitive research about competitors, including Lyft, relating to safety measures, driving training, driver background checks, drivers, friction, rider experience, and growth.

**REQUEST NO. 172:**  Produce and all DOCUMENTS REGARDING sharing of DRIVER information with competitors, including Lyft, relating to DRIVER conduct and removal from the Uber platform.

**REQUEST NO. 173:**  DOCUMENTS sufficient to identify the information and/or data YOU collect from DRIVERS and/or RIDERS though the Uber Application, including but not limited to YOUR use of, sale(s) of, or consideration of sale(s) of that information to third parties.

**REQUEST NO. 174:**  DOCUMENTS sufficient to identify YOUR tracking of or collection of data from RIDERS, including RIDER locations, interests, or any other data or information you collected from RIDERS outside of the use of the Uber Application itself, including but not limited to YOUR use of, sale(s) of, or consideration of sale(s) of that information to third parties.

**REQUEST NO. 175:**  DOCUMENTS sufficient to identify YOUR access to or collection of information or data from any of the following through the Uber Application, including but limited to the purposes of YOUR usage or sales or considered sales of information or access: audio monitoring, estimated time of arrival, DRIVER route, DRIVER or RIDER mobile phone camera, monitoring of DRIVER or RIDER text messaging, or real-time location.

**REQUEST NO. 176:** Any and all DOCUMENTS RELATED TO "digital fingerprinting" of DRIVERS and/or RIDERS, including but not limited to YOUR use of information collected through "digital fingerprinting" and YOUR sale(s) of or consideration of sale(s) of information collected through "digital fingerprinting" to third parties.

**REQUEST NO. 177:** Any and all DOCUMENTS RELATED TO InAuth, including but not limited to YOUR use of information collected through InAuth and YOUR sale(s) of or consideration of sale(s) of information collected through InAuth to third parties.

**REQUEST NO. 178:** Any and all DOCUMENTS RELATED TO YOUR "Heaven" or "God View" tool functions.

**REQUEST NO. 179:** All DOCUMENTS REGARDING Travis Kalanick's departure from/discontinuation of employment with YOU, including but not limited to the reasons for his departure and discussions Regarding his departure among YOUR officers, directors, employees, and/or agents.

**REQUEST NO. 180:** Any and all DOCUMENTS RELATED TO Travis Kalanick's departure from YOUR Board of Directors, including but not limited to the reasons for his departure and discussions REGARDING his departure among YOUR officers, directors, employees, and/or agents.

**REQUEST NO. 181:** Any and all DOCUMENTS RELATING to Dara Khosrowshahi and his replacement of Travis Kalanick.

**REQUEST NO. 182:** Any and all DOCUMENTS in which Dara Khosrowshahi discusses Travis Kalanick.

**REQUEST NO 183.:** Any and all DOCUMENTS in which Dara Khosrowshahi discusses the need for or plans to change YOUR policies, strategies, public perception, and/or attitudes.

**REQUEST NO. 184:** Any and all DOCUMENTS RELATING to Tony West's replacement of Salle Yoo as Chief Legal Officer.

**REQUEST NO. 185:** Any and all DOCUMENTS REGARDING Eric Alexander's departure from/discontinuation of employment with YOU, including but not limited to the reasons for his departure and discussions REGARDING his departure among YOUR officers, directors, employees, or agents.

**REQUEST NO. 186:** Any and all DOCUMENTS REGARDING Emil Michael's departure from/discontinuation of employment with YOU, including but not limited to the reasons for his departure and discussions REGARDING his departure among YOUR officers, directors, employees, or agents.

**REQUEST NO. 187:** Any and all DOCUMENTS REGARDING David Bonderman's resignation or departure from the YOUR Board of Directors, including but not limited to the reasons for his departure and discussions REGARDING his resignation or departure among YOUR officers, directors, employees, or agents.

**REQUEST NO. 188:** Any and all DOCUMENTS containing the phrase "innocent until proven guilty."

**REQUEST NO. 189:** Any and all DOCUMENTS evidencing YOUR responses, including your reaction and/or celebrations REGARDING criminal charges or claims by law enforcement not to bring criminal charges against DRIVERS accused of SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 190:** Any and all DOCUMENTS REGARDING YOUR policies and procedures RELATED TO SEXUAL MISCONDUCT or SEXUAL ASSAULT in YOUR employment offices.

**REQUEST NO. 191:** Any and all DOCUMENTS REGARDING reports or claims of SEXUAL MISCONDUCT or SEXUAL ASSAULT by YOUR employees, including but not limited to your investigations and responses to those reports or claims.

**REQUEST NO. 192:** Any and all DOCUMENTS REGARDING workplace retaliation by YOU RELATED TO reports of SEXUAL MISCONDUCT or SEXUAL ASSAULT.

**REQUEST NO. 193:** Any and all DOCUMENTS RELATING to YOUR June 12, 2017 company-wide meeting.

**REQUEST NO 194:** Any and all DOCUMENTS YOU have REGARDING Sarah Lacy, journalist and founder of the PandoDaily website.

1
2
   **REQUEST NO. 195:** Any and all DOCUMENTS YOU have REGARDING Susan Fowler Rigetti, journalist and former Uber employee, and the Delete Uber/Delete Campaign.

3
   **REQUEST NO. 196:** Any and all DOCUMENTS RELATED TO DeleteUber.

4
5
6
7
8
   **REQUEST NO. 197:** Any and all DOCUMENTS RELATED TO whistleblower or potential whistleblowers, including but not limited to DOCUMENTS RELFECTING YOUR policies, discussions, or other communications related to whistleblowers, either generally or with regard to a specific employee or former employee and the disclosure of information about alleged SEXUAL ASSAULT or SEXUAL MISCONDUCT by YOUR employees or DRIVERS or information about other allegedly illegal, immoral, illicit, fraudulent, or corrupt actions by YOU or YOUR employees, officers, or directors.

9
10
   **REQUEST NO. 198:** Any and all DOCUMENTS RELATED TO monitoring of online platforms (*e.g.*, blogs, social media, and media and news outlets) for information on RIDER safety, SEXUAL MISCONDUCT or SEXUAL ASSAULT.

11
12
   **REQUEST NO. 199:** Any and all DOCUMENTS RELATED TO uberpeople.net.

13
   **REQUEST NO. 200:** Any and all DOCUMENTS RELATED TO YOUR hiring of or consideration of hiring opposition research RELATED TO media criticism.

14
15
   **REQUEST NO. 201:** Any and all DOCUMENTS RELATED TO Jeff Jones' departure from/discontinuation of employment with YOU.

16
17
18
   **REQUEST NO. 202:** Any and all DOCUMENTS RELATED TO the resignation or termination of employees in YOUR legal department RELATED TO the contemplated change in the "information governance" policy in late 2017 (*see* https://www.theinformation.com/articles/uber-fired-lawyers-amid-debate-over-data-retention-policy).

19
20
21
22
23
24
25
26
27
28

1

## CERTIFICATE OF SERVICE

2    The undersigned hereby certifies that the undersigned caused a copy of the foregoing to be served

3    via electronic mail on February 28, 2024, to counsel for Defendants Uber Technologies, Inc.,

4    Rasier LLC and Rasier-CA, LLC, at the following email addresses:

5    email addresses:

6

7        jphillips@paulweiss.com
        ratkins@paulweiss.com

8        ksmith@paulweiss.com
        rluskey@paulweiss.com

9        cgrusauskas@paulweiss.com
        akeller@paulweiss.com

10       mtriana@paulweiss.com
        mamaru@paulweiss.com

11       lmurray@paulweiss.com

12

13

14                                          By: */s/ Roopal P. Luhana*
                                            Roopal P. Luhana

15                                          **CHAFFIN LUHANA LLP**
                                            600 Third Avenue, 12th Floor

16                                          New York, NY 10016
                                            Telephone: (888) 480-1123

17                                          Facsimile: (888) 499-1123
                                            luhana@chaffinluhana.com

18
                                            *Co-Lead Counsel for Plaintiffs*
19

20

21

22

23

24

25

26

27

28