Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com
Jessica Davidson (Admitted *Pro Hac Vice*)

Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

*Attorneys for Uber*

UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION <br><br> This Document Relates to: <br><br> ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC) <br><br> **MOTION FOR (1) ENTRY OF AN ORDER TO SHOW CAUSE WHY 7 PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE AND (2) ALLOWING LIMITED DEPOSITIONS OF TWO PLAINTIFFS REFERENCED HEREIN** <br><br> Judge: Hon. Charles R. Breyer <br> Courtroom: 6 – 17th Floor |

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|

I.      INTRODUCTION ...............................................................................................1

II.     BACKGROUND ...............................................................................................2

A.      PTO #5 ...............................................................................................2

B.      NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS..................2

        1.      Uber Has Identified the Alteration of Additional Actual Receipts..........................3

III.    ARGUMENT ...............................................................................................14

A.      THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER RULE 37(B) TO DISMISS THE CLAIMS OF PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS. ...............................................................................................14

B.      THE COURT SHOULD ALLOW DEFENDANTS TO TAKE LIMITED AND NARROWLY TAILORED DEPOSITIONS OF MDL IDS 3621 AND 3962..................18

IV.     CONCLUSION...............................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adriana Int'l Corp. v. Thoeren,*
913 F.2d 1406 (9th Cir. 1990) ............................................................................15

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.,*
69 F.3d 337 (9th Cir. 1995) ...............................................................................15

*Estate of Arroyo v. Cnty. of San Diego,*
No. 21-cv-1956, 2025 WL 1914399 (S.D. Cal. April 14, 2025) ...........................18

*Barton v. Delfgauw,*
No. 3:21-cv-05610, 2025 WL 814484 (W.D. Wash. March 13, 2025)...................18

*In re Deepwater Horizon,*
907 F.3d 232 (5th Cir. 2018) ..............................................................................17

*Garcia v. Berkshire Life Ins. Co. of Am.,*
569 F.3d 1174 (10th Cir. 2009) ......................................................................15, 17

*Goodyear Tire & Rubber Co. v. Haeger,*
581 U.S. 101 (2017).............................................................................................18

*IV Solutions, Inc. v. Office Depot Emple. Welfare Benefit Plan,*
Case No. EDCV 07-1603-VAP, 2009 U.S. Dist. LEXIS 133650 (C.D. Cal. May 13,
2009) ...........................................................................................................15, 16, 17

*Malone v. U.S. Postal Serv.,*
833 F.2d 128 (9th Cir. 1987) ........................................................................16, 17

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,*
460 F.3d 1217 (9th Cir. 2006) .............................................................................16

*Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.,*
727 F.2d 1470 (9th Cir. 1984) ..........................................................................1, 15

*In re Silica Prods. Liab. Litig.,*
398 F. Supp. 2d 563 (S.D. Tex. 2005) .................................................................17

*Singh v. Hancock Natural Res. Grp., Inc.,*
Case No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893 (E.D. Cal. Feb. 21,
2017) ...........................................................................................................15, 17

*Thompson v. Hous. Auth. of City of Los Angeles,*
782 F.2d 829 (9th Cir. 1986) ..............................................................................15

*Wood v. Cnty. of Los Angeles,*
  No. 16-cv-7451, 2018 WL 6332275 (C.D. Cal. May 16, 2018) ..............................................18

*Wyle v. R.J. Reynolds Indus., Inc.,*
  709 F.2d 585 (9th Cir. 1983) ..............................................................................................15

*In re Yasmin, and Yaz (Drospirenone) Marketing, Sales Practices and Products Liab.*
  *Litig.,*
  No. 3:09-md-02100-DRH-PMF, 2011 WL 3035087 (S.D. Ill. July 25, 2011) ......................18

*Yourish v. Cal. Amplifier,*
  191 F.3d 983 (9th Cir. 1999) ..............................................................................................16

**Rules**

Fed. R. Civ. P. 16(f) .......................................................................................................................15

Fed. R. Civ. P. 16(f)(C) ..................................................................................................................15

Fed. R. Civ. P. 37 ...........................................................................................................................15

Fed. R. Civ. P. 37(b)(2)(A)(v) .......................................................................................................15

Fed. R. Civ. P. 37(b)(2)(C) ..............................................................................................................1

**Other Authorities**

https://www.rideshareassaultjustice.com/ ......................................................................................16

L.A. TIMES (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-
  02/settlement-story-ab218-sex-abuse ..............................................................................2, 16

## I.    INTRODUCTION

In response to Uber's first Fraud Motion, Plaintiffs' Leadership stated in a brief filed on August 27, 2025 that "fraud has no place in the MDL." ECF 3768. Unfortunately, these statements by Plaintiffs' Leadership have not been backed by action by other Plaintiffs' Counsel in the MDL. To this day, Plaintiffs' attorneys continue to submit fraudulent receipts provided by their clients.

Uber has discovered that at least 7 additional Plaintiffs have submitted non-bona fide receipts to support their lawsuits. 4 out of 7 Plaintiffs filed their lawsuit and submitted a non-bona fide receipt *after* Uber filed its First Fraudulent Receipts Motion on July 30, 2025 (ECF 3604). Even more surprisingly, of those 4 Plaintiffs, *3 out of 4* Plaintiffs filed their lawsuit and *submitted a non-bona fide receipt after Plaintiffs' Leadership stated that "fraud has no place in this MDL."* ECF 3768.

Uber respectfully moves for an order to show cause why the claims of these 7 Plaintiffs who have submitted non-bona fide receipts should not be dismissed with prejudice. *See* Exhibit A. Moreover, in light of the apparently coordinated use of bona-fide Uber receipts as the basis for Plaintiffs' PTO #5 submissions, Uber respectfully moves for an order to allow Uber to conduct targeted depositions of Plaintiffs with MDL IDs 3621 and 3962. Uber has a good-faith basis for its concern that there may be a larger issue with third parties working with Plaintiffs to commit fraud in this litigation. Thus, Uber seeks a 3-hour deposition of these Plaintiffs on the topics of how the Plaintiffs became involved in the litigation, how the fraudulent receipt was generated and distributed, and who else was involved in or aware of the fraud at issue here.

As the Ninth Circuit has recognized, dismissal of claims is warranted where a party, "[p]ursuant to a discovery order," "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses." *See Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1472, 1474 (9th Cir. 1984) (upholding dismissal under Fed. R. Civ. P. 37(b)(2)(C) where "[p]ursuant to a discovery order, [a party] produced documents" that were "falsified," including "photocopies of checks," without holding an evidentiary hearing). This relief is consistent with the Court's two prior orders on the issue of submission of fraudulent receipts. ECF 3876 and 3972.

## II.    BACKGROUND

### A.    PTO #5

The Court's PTO #5 required Plaintiffs to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident." PTO #5, ECF 175, ¶ 4; *see also* PTO #10, ECF 348, ¶ 2.

### B.    NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS

At least an additional 7 Plaintiffs listed in Exhibit A1 have violated the Court's Order by submitting receipts that are non-bona fide. 4 Plaintiffs are represented by law firms included in Uber's First (Pulaski Law Firm, PLLC) and Second (Pulaski Law Firm, PLLC and Peiffer Wolf Carr Kane Conway & Wise) Fraudulent Receipts Motions. ECF 3604 and 3784. Based on these recent filings, it is clear that Plaintiffs' counsel have not implemented additional processes to vet their clients' allegations and/or detect fraudulent behavior prior to the filing of additional lawsuits. These processes are particularly important to prevent fraud where, as here, mass tort cases are brought "through social media campaigns promising payouts and privacy." Rebecca Ellis, *In the biggest sex abuse settlement in U.S. history, some claim they were paid to sue*, L.A. TIMES (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-02/settlement-story-ab218-sex-abuse.[1] These fundamental case intake measures are crucial at a time when so many cases filed in mass torts are unsupported, involve manufactured or exaggerated injuries, or stem from outright fraud.

Since July 30, 2025 (*i.e.*, the filing of Uber's First Fraudulent Receipts Motion), Plaintiffs have submitted at least 4 additional fraudulent receipts. There are likely to be additional such Plaintiffs moving forward, including but not limited to Plaintiffs who purchased the "Pro" or "Enterprise" membership from Makereceipt.com (discussed in Uber's Receipts Motion), which makes receipt alteration more difficult to

---

[1] This article primarily discusses Downtown LA Law Group, which has not filed cases on behalf of any clients in this MDL. Downtown LA Law Group has filed 13 claims in the coordinated JCCP proceeding.  The article also discusses Slater Slater Schulman's "pattern of 'irregularities' and 'procedural and factual problems' among its plaintiffs" in its "avalanche of sex abuse cases against the Boy Scouts of America."  *See* Rebecca Ellis, *In the biggest sex abuse settlement in U.S. history, some claim they were paid to sue*, L.A. TIMES (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-02/settlement-story-ab218-sex-abuse.  Beyond this, Slater Slater Schulman has filed 58 cases in this MDL and 14 in the JCCP and previously represented a Plaintiff (MDL ID 1914) that is currently subject to Uber's First Fraudulent Receipts Motions. ECF 3604.

2

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

detect. The present motion addresses only those that Uber has been able to identify through its manual, line-by-line review process thus far, but adds to the growing population already subject to a Motion.

### 1. Uber Has Identified the Alteration of Additional Actual Receipts

The below is a version of the original receipt identified by Uber for an actual ride that occurred on November 9, 2023 not September 20, 2023 as Plaintiff with MDL ID 3962 alleges. Cotton Decl., Ex. 1.

**Real Receipt (Cotton, Decl. Ex. 1[2])**



The version of the receipt produced in the litigation was altered to match the allegations made by Plaintiff with MDL ID 3962. Specifically, the name of the rider was changed from "█" (as it appears in Uber's system) to "████" (as it appears in the fraudulent receipt), the date on the ride receipt was changed from "November 9, 2023" to "September 20, 2023", and the "3" in "2023" is cut-off. Harrison Decl. at 8, § 12 – 24; Exs. 1-2. Further, the PTO #5 submission includes a timestamp error showing purported payment made before the alleged ride occurred. Harrison Decl. at 8, § 19 – 20; Ex. 2. Regardless of when the ride was requested, the payment timestamp on bona fide receipts is published after the trip is completed. Further, and most telling of the fraudulent nature of this receipt, the Trip ID in MDL ID 3962's

---

[2] References to exhibits in the Cotton Declaration will be marked by exhibit number.

PTO #5 submission matches that of the bona-fide receipt (in Uber's system) *and* the PTO #5 submission for an entirely different MDL ID (3286). Harrison Decl. at 8, § 15 – 17; Ex. 2. The real receipt (as reflected in Uber's system) and associated Trip ID is now the basis of *two* fraudulent receipts in the above captioned litigation – one of which (MDL ID 3286) is already subject to the Court's Order to Show Cause issued on September 9, 2025. ECF 3876. Based on this, MDL ID 3962 should also be ordered to show cause.

**MDL ID 3962 (Ex. 2)**



**Real Receipt (Ex. 1)**          **MDL ID 3286 (Ex. 2)**



The below is a version of the original receipt identified by Uber for an actual ride that occurred on August 30, 2023 not on August 16, 2023 as the Plaintiff with MDL ID 3666 alleges. Ex. 4.

**Real Receipt (Ex. 4)**

Uber

Total **$38.91**
August 30, 2023

**Thanks for riding,**

We hope you enjoyed your
ride this morning.

**Total**          **$38.91**

Trip fare                                    $27.74

Subtotal                                    $27.74
NV Recovery Surcharge                         $0.04
Booking Fee 🛈                               $10.00
Transportation Recovery Tax                   $1.13

Download PDF

This is not a payment receipt. It is a trip summary to acknowledge the completion of the trip. You
will receive a trip receipt when the payment is processed with payment information.

You rode with

4.91 ★ Rating                    👍  Has passed a multi-step safety screen

Drivers are critical to communities  right now. Say thanks with a tip.

Rate or tip

When you ride with Uber, your trips are insured in case of a covered accident .
Learn more ›

UberX   25.89 miles | 32 min

1:54 AM

2:27 AM

The version of the receipt production in the litigation was altered to match the allegations made by Plaintiff with MDL ID 3666. Specifically, the date on the ride receipt was changed from "August 30, 2023" to "August 16, 2023". Harrison Decl. at 4, § 8. In addition, there are three stray black lines under the total of $38.91, the presence of a white line above the altered date of August 16, 2023, and use of a dollar sign character ($) that is inconsistent with Uber's standard formatting. *Id.* at 4, § 1 – 19; Ex. 5.

**MDL ID 3666 (Ex. 5)**



5

The below is a version of the original receipt identified by Uber for an actual ride that occurred on August 31, 2024 with an actual rider ("███████"). Ex. 6.

**Real Receipt (Ex. 6)**



August 31, 2024

# Thanks for riding, ██████

| Total | **$12.94** |
|---|---|
| Trip fare | $5.88 |
| | |
| **Subtotal** | $5.88 |
| Booking Fee ❓ | $6.48 |
| City of New Orleans per trip fee | $0.50 |
| State Assessment Fee | $0.08 |

**Payments**

| ⁣Pay **Apple Pay Visa** ••••████ 8/31/24 1:59 AM | $12.94 |
|---|---|

The version of the receipt production in the litigation was altered to match the allegations made by Plaintiff with MDL ID 3699. Specifically, the name of the rider was changed from "██████" to "██████". Harrison Decl. at 4, § 27; Ex. 7. All other details within the ride receipt remain the same.

**MDL ID 3699 (Ex. 7)**



Further, MDL ID 3699 appears to have *received* a copy of this non-bona fide receipt via text message (SMS) as indicated via her PTO #5 submission. Ex. 7.

**MDL ID 3699**



7

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

The below is a version of the original receipt identified by Uber for an actual ride that occurred on July 29, 2023, with a rider named " ████ ". Ex. 8. Another lawsuit was filed and a receipt was submitted by the Plaintiff with MDL ID 3621 (" ██████████ ") on June 26, 2025. Ex. 9.

**Real Receipt (Ex. 8)**                    **MDL ID 3621 (Ex. 9)**



The receipt submitted by MDL ID 3787 in the litigation was altered as compared to another receipt that appears in Uber's system. Specifically, the name of the rider was changed from " ████ " to " ████ ". Harrison Decl. at 5, § 18 – 19; Ex. 10. All other details within the ride receipt remain the same, including, e.g., the form of payment (i.e., the last four digits of the credit card), driver, and trip duration.

**MDL ID 3787 (Ex. 10)**



Further, the receipt previously submitted by MDL ID 3621 shares similar visual elements to the receipt submitted by MDL ID 3787. Specifically, the cell phone (Apple iOS) user interface in both submissions share identical timestamps ("6:26"), call length ("10m"), Wi-Fi strength, and battery life, indicating that the screenshots for both PTO #5 submissions were likely captured at the same time.

9

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

**MDL ID 3621 (Ex. 9)**          **MDL ID 3787 (Ex. 10)**

  

The below is the original receipt identified by Uber for an actual ride that occurred on May 25, 2024, with an actual rider ("███████"). Ex. 11. This version includes the $3 tip provided by ███████.

**Real Receipt (Ex. 11)**

  

10

The version submitted by MDL ID 3877 in this litigation was altered to match the allegations made by Plaintiff with MDL ID 3877. Specifically, the name of the rider was changed from " █████ " to " ████ " and the month was changed from "May" to "August". Harrison Decl. at 6, § 14 – 25; Ex. 12.

**MDL ID 3877 (Ex. 12)**



The below is the original receipt identified by Uber for an actual ride that occurred on May 29, 2024, with an actual rider (" █████ "). Ex. 13. The unique Trip ID is included at the bottom.



The version submitted by MDL ID 3977 in this litigation was altered to match the allegations made by Plaintiff with MDL ID 3977. Specifically, the name of the rider was changed from "▮▮▮▮" to "▮▮▮▮", the date of the ride was changed from "May 29, 2024" to "September 29, 2024", and the PTO #5 submission includes a timestamp error showing purported payment made before the alleged ride occurred. Harrison Decl. at 9, § 10 – 23; Ex. 14. Regardless of when the ride was requested, the payment

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

timestamp on bona fide receipts is published after the trip is completed. Further, and most telling of the fraudulent nature of the receipt, the Trip ID in MDL ID 3977's PTO #5 submission matches that of the Trip ID contained in the bona-fide receipt. Harrison Decl. at 9, § 13 – 15; Ex. 14.

**MDL ID 3977 (Ex. 14)**



Uber has also identified an additional receipt submitted by a Plaintiff that is inconsistent with the standard formatting used in Uber's system. Exhibit A1. Specifically, the receipt submitted by MDL ID 3921 contains several indicators that it was altered or fabricated altogether. Harrison Decl. at 7, § 13 – 24; Exhibit 15. For example, the font weight and text spacing are anomalous throughout the receipt (i.e., bold font, font type, font spacing), the trip duration is displayed as "21 mins" not "21 min" as expected within bona fide receipts, and the "Visit the trip page…" statement is indented rather than left-justified as expected within bona fide receipts. Harrison Decl. at 7, § 13 – 24; Ex. 15. Further, the receipt submitted

by MDL ID 3921 includes a timestamp error showing purported payment made before the alleged ride occurred. Harrison Decl. at 7, § 20 – 21; Ex. 15. Regardless of when the ride was requested, the payment timestamp on bona fide receipts is published after the trip is completed.

**MDL ID 3921 (Ex. 15)**



### III. ARGUMENT

**A. THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER RULE 37(B) TO DISMISS THE CLAIMS OF PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS.**

An additional 7 Plaintiffs included in Exhibit A1 have not complied with this Court's order to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident." PTO #5, ECF 175, ¶ 4; PTO #10, ECF 348, ¶ 2. These Plaintiffs' claims should be dismissed with prejudice.

14

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

Rule 16(f) provides that "the [C]ourt may issue any just orders" when a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(C). Such "just orders" may include, for example, "dismissing the action." Fed. R. Civ. P. 37(b)(2)(A)(v); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983) ("By its terms, Rule 37 authorizes the sanction of dismissal."). The production of "falsified" discovery in response to a "discovery order" is grounds for dismissal under Rule 37. *Pro. Seminar Consultants, Inc.*, 727 F.2d at 1472 (affirming default judgment against defendant that "did not assert that the documents were genuine"). Courts may impose sanctions as part of their "inherent power to control their dockets," including their "inherent power to dismiss an action when a party has willfully deceived the court."[3] *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986); *Wyle, Inc.*, 709 F.2d at 589. "Where a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings'—such as "fabricat[ing]" evidence during discovery— '[i]t is well settled that dismissal is warranted" under the Court's inherent authority. *IV Solutions, Inc. v. Office Depot Emple. Welfare Benefit Plan*, Case No. EDCV 07-1603-VAP (JWJx), 2009 U.S. Dist. LEXIS 133650, *14 (C.D. Cal. May 13, 2009) (dismissing action where plaintiff "fabricated an invoice" during discovery) (citing *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)); *see also, e.g.*, *Singh v. Hancock Natural Res. Grp., Inc.*, Case No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893, *24 (E.D. Cal. Feb. 21, 2017) (plaintiffs "falsified documents to respond to discovery requests," which "demonstrate "bad faith and . . . willful abuse of the judicial process and support the issuance of terminating sanctions"); *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1176 (10th Cir. 2009) (affirming dismissal where plaintiff "fabricated a number of discovery documents in an effort to win her case.").

Regardless of whether a district court is acting pursuant to Rule 37 or its inherent authority, the Ninth Circuit has held that "[a] district court must weigh five factors in determining whether to dismiss a case for failure to comply with a court order: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy

---

[3] "[D]ismissal sanctions under Rule 37 and a court's inherent powers are similar." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990). The Ninth Circuit t "use[s] cases involving dismissal under Rule 37 and inherent powers interchangeably." *Id.*

favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (internal quotations omitted).

Each of the *Malone* factors support dismissal with prejudice here.

***Public interest and the Court's docket***. The first two factors— "the public's interest in expeditious resolution of litigation" and "the court's need to manage its docket"—both "strongly support the court's dismissal" of the claims of Plaintiffs who deliberately fail to comply with court orders or engage in fraudulent discovery. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1247 (9th Cir. 2006). "The public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999). Plaintiffs' failure to comply honestly with their discovery obligations or even conduct the most basic of investigations has also consumed scarce judicial time and resources. "Sound management of the court's docket also counsels in favor of sanctions as a deterrent to others, particularly in the context of an MDL proceeding where there are thousands of plaintiffs and tag-along cases are continually being added." *Id. at 1234.* Given the already rampant fraud, deterrence is vital here. There are now more than 2,700 Plaintiffs in this proceeding, resulting in part from aggressive online advertising from Plaintiffs' counsel, such as the ad promising "Significant Compensation" with "No Paperwork" and "No Hassle." *See* https://www.rideshareassaultjustice.com/; *see also* Rebecca Ellis, *In the biggest sex abuse settlement in U.S. history, some claim they were paid to sue*, L.A. TIMES (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-02/settlement-story-ab218-sex-abuse. (stating that in Instagram attorney advertisement for L.A. County sex abuse lawsuit, "a representative for the firm's intake department called" a Times reporter who entered their phone number in the ad "more than 38 times"). Prospective plaintiffs need to understand there is a consequence for falsifying evidence and that doing so will not result in monetary compensation.

***Prejudice***. Courts "examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131. Here, Plaintiffs' fabrication (and Plaintiffs' firms' failure to conduct a reasonable investigation) of receipts means that Uber has "been forced to defend this case from the outset – despite its basis in fraud," which is the paradigmatic form of prejudice. *See IV Solutions Inc.*, 2009 U.S. Dist. LEXIS 133650, *20; *see also*

16

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

*In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636 (S.D. Tex. 2005) (filing claims based on false diagnoses forced defendants to "pay significant costs litigating meritless claims[.]") This misconduct also calls into question the "veracity" of all of these Plaintiffs' other discovery responses, which will require Uber to "attempt independent corroboration of each submission, at substantial expense or time and money, or to accept the real possibility that those discovery documents . . . are inaccurate." *Garcia*, 569 F.3d at 1180 ("submission of falsified evidence substantially prejudices an opposing party). Allowing these claims to proceed would also prejudice the rights of claimants who have complied with their discovery obligations and undermine their "full and meaningful access to the courts[.]" *In re Silica*, 398 F. Supp. 2d at 636; *see also In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018) (explaining that non-bona-fide lawsuits "hamper the resolution of meritorious claims by real plaintiffs").

**Public policy**. Where Plaintiffs have "purposefully and defiantly violated a court order"—in this case, by submitting non-bona-fide receipts— "it is unnecessary … to discuss why alternatives to dismissal are infeasible." *Malone*, 833 F.2d at 132. Nor is any further warning to Plaintiffs necessary. There is no concern that the receipts at issue were somehow generated in good faith by unsophisticated people. For example, in the case of receipts altered utilizing bona-fide Uber receipts, it takes a level of sophistication and consciousness of wrong-doing to know how to edit certain aspects of an image (even if doing so on a mobile device like an Apple iPhone). Dismissal is thus very strongly in the public interest.

**Availability of lesser sanctions**. "It is difficult to conceive an act of misconduct graver than the outright fabrication of evidence that Plaintiffs here undertook[.]" *IV Solutions Inc.*, 2009 U.S. Dist. LEXIS 133650, *23. Such actions "demonstrate bad faith and Plaintiffs' willful abuse of the judicial process and support the issuance of terminating sanctions." *Singh*, 2017 U.S. Dist. LEXIS 24893, *24. Lesser sanctions would not sufficiently compensate Uber for having to defend against these claims. Nor would lesser sanctions deter other current (or potential) Plaintiffs from engaging in similar conduct.

For these reasons, the Court should enter Uber's proposed order attached as Exhibit A, requiring the 7 Plaintiffs listed above to show cause why their claims should not be dismissed with prejudice.

### B.    THE COURT SHOULD ALLOW DEFENDANTS TO TAKE LIMITED AND NARROWLY TAILORED DEPOSITIONS OF MDL IDS 3621 AND 3962.

In addition, this Court should allow Uber to take limited depositions of Plaintiffs with MDL IDs 3621 and 3962 in light of the use of bona-fide receipts as the basis for Plaintiffs' PTO #5 submissions. Courts have recognized that additional discovery may be an appropriate remedy for violations of court orders. *See, e.g., Estate of Arroyo v. Cnty. of San Diego,* No. 21-cv-1956, 2025 WL 1914399, at *12 (S.D. Cal. April 14, 2025) (ordering deposition to permit exploration of late-produced evidence); *Barton v. Delfgauw,* No. 3:21-cv-05610, 2025 WL 814484, at *4 (W.D. Wash. March 13, 2025) (ordering limited discovery after late disclosure of evidence that "call[s] into question the veracity of Plaintiff's claim"); *Wood v. Cnty. of Los Angeles,* No. 16-cv-7451, 2018 WL 6332275, at *4 (C.D. Cal. May 16, 2018) (ordering limited discovery to mitigate prejudice from production violating scheduling order). Given the substantial "questions about the credibility of the information that has been obtained" through the PFS, depositions would be doubly helpful for counsel on both sides to assess the quality of these claims and whether they "should proceed to trial, settlement, or dismissal." *In re Yasmin*, *and Yaz (Drospirenone) Marketing, Sales Practices and Products Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2011 WL 3035087, at *3 (S.D. Ill. July 25, 2011). Courts and litigants alike have reason to be concerned about potential fraud in the discovery process and to explore whether a plaintiff has "initiate[d] a case in complete bad faith." *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 110 (2017). Ordering limited depositions of just these 2 Plaintiffs with non-bona fide receipts based on their coordination with an MDL Plaintiff (MDL ID 3621) and a non-party (whose receipt is also the basis of another fraudulent receipt) to create their PTO #5 submissions would help safeguard the credibility of Plaintiffs' allegations without substantial inconvenience or expense.

## IV.    CONCLUSION

Uber respectfully requests that the Court (1) enter the order attached as Exhibit A requiring the Plaintiffs listed to show cause why their claims should not be dismissed with prejudice; and (2) enter the order attached as Exhibit A allowing for limited depositions of Plaintiffs with MDL IDs 3621 and 3962.

18

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

DATED:  October 13, 2025                    Respectfully submitted,


                                            */s/ Laura Vartain Horn*
                                            _____

19

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT (*Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**

20

2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice*) ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*Attorneys for Uber*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

21

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)