1  [*Submitting counsel below*]

UNITED STATES DISTRICT COURT

OF NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB (LJC) <br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXTEND TIME TO SERVE REBUTTAL EXPERT REPORTS** |
| This Document Relates to: <br><br>ALL WAVE 1 BELLWETHER ACTIONS | Judge: Honorable Charles R. Breyer <br>Date: TBD <br>Time: TBD <br>Ctrm.: 6-17th Floor (zoom) |

**OPPOSITION**

This Court made clear countless times that the pretrial deadlines and the trial date will not move: "[T]he Court is not willing to grant any type of continuance or not honor the dates that have already been established." 4/18/25 Hr'g Tr. at 6:1-2. Now, Uber seeks to extend the deadline for its rebuttal expert reports to November 6, a mere 8 days before Plaintiffs must file *Daubert* motions against the 4-5 new experts Uber intends to produce, and 4 days before Plaintiffs must file *Daubert* motions against any experts previously produced who also serve a rebuttal report. Uber demands an unconditional right to take expert depositions before submitting rebuttal reports, even though Uber, for most of its own experts, provided deposition dates that fell *after* the rebuttal deadline.

Uber cannot show good cause for modifying the schedule. Moving the rebuttal deadline would jeopardize the schedule for filing *Daubert* motions and threaten the January trial date. It would also prejudice Plaintiffs by reducing the time for them to depose Uber's large number of rebuttal experts and providing barely any time to file motions. *See Mosgrove v. Cnty. of Santa Clara*, 2024 WL 5011612, at *1 (N.D. Cal. Dec. 6, 2023) (no extensions that cause "prejudice to the adverse party") (citation omitted). Uber never explains why it is consistent with good cause to give Uber *six weeks* to prepare *Daubert* motions for the bulk of Plaintiffs' experts served on September 26, while giving Plaintiffs mere *days* to move against Uber's expert case (the bulk of which it apparently has reserved for rebuttal). The Court's schedule is very tight:

| | |
|---|---|
| **Opening Reports** | September 26, 2025 |
| **Rebuttal Reports** | October 24, 2025 |
| **Daubert for Experts Disclosed on 9/26** | November 10, 2025 |
| **Summary Judgment Motions** | November 10, 2025 |
| **Daubert for Experts Disclosed on 10/24** | November 14, 2025 |
| **Summary Judgment / Daubert Oppositions** | December 10, 2025 |
| **Summary Judgment / Daubert Replies** | December 23, 2025 |
| **Jury Selection for First Trial** | January 6, 2026 |

Uber's motion and supporting declaration concede that, once the rebuttal deadline moves, the *Daubert* deadlines are next. *See* Mot. at 6 (stating that doing so "may make sense"); Caritis Decl. ¶ 5 (same). Plaintiffs are already concerned with the limited amount of time to respond to what they anticipate will be extensive *Daubert* motions from Uber. (Indeed, the Court should consider severely curtailing the pages available for such motions, to encourage efficient use of the parties' and the Court's time.)

There is no rule or reason that Uber needs to first depose Plaintiffs' experts before it can prepare rebuttal reports. *See In re AME Church Emp. Ret. Fund Litig.*, 2025 WL 1243075, at *1 (W.D. Tenn. Apr. 29, 2025) (denying expert-deposition deadline sought on this basis); *Procongps, Inc. v. Skypatrol, LLC*, 2013 WL 11261327, at *1 (N.D. Cal. May 22, 2012) (rejecting argument that "defendants' experts should be able to take [plaintiff's] experts' depositions into account when preparing their own reports").

Uber claims that Plaintiffs agreed to move the rebuttal deadlines, but that is false. Plaintiffs have always been open to limited extensions based on specific extenuating circumstances, but Uber has declined to articulate any. Never once did the parties discuss the idea of a *wholesale two-week* modification of the deadline. The only evidence Uber offers is an email *from Uber's counsel* proposing rebuttal deadlines, most on October 31 (not November 6). Mot., Ex. B. And, as Uber concedes, Plaintiffs firmly told Uber on October 15 that they would not agree to the requested extension. *Id.* Yet, for some reason, Uber waited until October 21 to file this motion.

Uber's requested extension undermines the case schedule, has no logical basis, is not justified by the parties' negotiation history, and should be denied for lack of good cause.

**A.   The case schedule does not require, and never has required, expert depositions be completed before rebuttal reports are served.**

Leading up to PTO 26, Plaintiffs argued for a defined period for expert depositions. ECF 1934 at 5-6. Uber not only rejected this proposal, but declined to provide any dates or structure for expert discovery at all. *Id.* at 25. In PTO 26, the Court ordered that "[t]he parties shall exchange expert reports by August 8, 2025. The parties shall exchange rebuttal expert reports by

September 8, 2025." PTO 26 at 3. PTO 26 did not say when expert depositions needed to be taken, and certainly did not condition the service of a rebuttal report on the completion of the deposition of the expert being rebutted.

Then, the parties stipulated to extend the opening and rebuttal report deadlines several times. ECF 3533, 3705, 3757, 3895, 3997. None of those stipulations discussed any required sequencing of expert depositions, nor was any such requirement ever discussed by the parties when negotiating those agreements. Abrams Decl. ¶ 2. The final schedule ordered by the Court provided for opening expert reports September 26; rebuttal October 24; *Daubert* motions of experts disclosed on 9/26 due November 10; and *Daubert* motions for rebuttal-only experts due on November 14. ECF 3997. These deadlines must stick—there is no time before the January trial for further extensions.

Uber wants more time for its rebuttal reports, but does not explain how that extension is consistent with the remainder of the case schedule, including *Daubert* motions due November 10 and 14. The current expert deposition schedule (Abrams Decl. ¶ 10) includes depositions (on both sides) into the first weeks of November and even later. A rule that rebuttal reports follow depositions is unworkable. No doubt, if the Court grants Uber this relief, the next domino to fall will be the November 10 or 14 *Daubert* deadlines. *See* Mot. at 6 (conceding as much); Caritis Decl. ¶ 5 (same).

### B. There is no compelling reason Uber needs to take depositions before serving rebuttal reports.

There is no rule or reason Uber needs to depose an expert before rebutting his or her opinions—a fact that alone makes an extension unnecessary. *See, e.g.*, *Impossible Foods Inc. v. Impossible LLC*, 2025 WL 1900327, at *1 (N.D. Cal. June 27, 2025) (extension permissible only if schedule "cannot reasonably be met") (citation omitted). Uber says that it must "fully explore the plaintiff's expert's theories through a deposition … before making [its] own disclosures." Mot. at 5 (citation omitted). But "the purpose of expert depositions is to develop cross-examination for trial or for a *Daubert* motions, not to build a case for one's own expert." *Procongps*, 2013 WL 11261327, at *1 (accepting a party's argument on this point); *see also In re*

1  *AME*, 2025 WL 1243075, at *1 (denying request to order depositions before rebuttals, and
2  explaining that "[t]he Federal Rules contemplate that the determination as to whether a rebuttal
3  expert reports is necessary be based on the opposing party's expert report—not the expert's
4  deposition") (citation omitted); *Enns Pontiac, Buick & GMC Truck v. Flores*, 2011 WL 2787729,
5  at *3 (E.D. Cal. July 11, 2011) (rejecting the plaintiffs' request to depose opposing experts before
6  filing their own reports and finding insufficient the plaintiffs' justification that they needed the
7  depositions "in order to prepare their own expert reports").

8        Uber has Plaintiffs' expert reports that set out the experts' opinions. To the extent that a
9  deposition reveals some bombshell evidence that materially alters Uber's rebuttal opinions, then
10  Uber may supplement the relevant rebuttal report under Fed. R. Civ. P. 26(a)(2)(E). And, of
11  course, Uber may raise any relevant facts revealed in the depositions in its *Daubert* motions.

12        In support of this blanket request, Uber relies on *Booker v. P.A.M. Transp., Inc.*, 2024 WL
13  4664420 (D.N.M. Nov. 4, 2024). But *Booker* stated the general rule that it is "not necessarily
14  required[] that a plaintiffs' expert also be deposed before the defendant makes his own expert
15  disclosures." *Id.* at *10. Indeed, the case noted that "[s]cheduling and other issues may prevent an
16  expert's deposition from occurring prior to the defendant's disclosure deadline, and that situation
17  might not always be a reason to extend the latter's deadline." *Id. Booker* granted the requested
18  extension only because "[n]o trial date ha[d] been set for the case," and there were still
19  "outstanding fact depositions, … fact discovery the expert needs to form his opinion." *Id.* at *9,
20  *11. Here, trial has been long-set and is rapidly approaching, and Uber has not pointed to any
21  outstanding fact discovery it needs for rebuttal reports.[1]

---

[1] Uber also cites *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 652 (C.D. Cal. 2007), but that case ordered an additional expert deposition, and a related extension, as a Rule 37 sanction to "ameliorate the prejudice to defendant from relators' failure to comply with Rule 26(a)" in serving their expert report. *Id.* at 656; *see also id.* at 654 ("[T]he two-page letter does not contain a complete statement of opinions to be expressed, as required; does not contain the basis and reasons for the opinions, as required; does not contain any statement of the data or information considered in forming any opinions, as required; does not contain any exhibits used as a summary or to support the opinions, as required; and does not contain a sufficient statement of Mr. Contreras's qualifications as required."). Nothing like that has happened here.

### C. Plaintiffs never agreed to the requested extension, and Uber has not demonstrated diligence.

Plaintiffs have acted in good faith throughout; there is no "gamesmanship" here. When Plaintiffs served their opening expert reports on September 26, they provided multiple deposition dates for 13 of their 17 experts. Abrams Decl. ¶ 3. Of those dates, all but a few fell before the October 24 rebuttal deadline. *Id.* Uber accepted only one of the dates Plaintiffs offered (some of which were pulled down due to the potential for supplemental reports given outstanding discovery), and did not provide any dates for its own experts until October 3. *Id.* ¶ 4. Of the dates Uber provided, many came after October 24—meaning from the jump, Uber *assumed* that depositions would follow rebuttals. *Id.*

The parties proceeded to negotiate dates over dozens of calls and emails. Scheduling proved exceedingly difficult given the need to find availability (often multi-day) for (1) the expert, (2) defending counsel, and (3) taking counsel. Uber declined numerous dates to depose Plaintiffs' experts that fell before October 24. *Id.* ¶ 6. The emails Uber attaches to its motion only demonstrate the difficulty of this process. *See* Mot., Ex. A. The result is the only dates the parties could find for many experts (including nearly all of Plaintiffs' depositions of Uber's opening experts) come after October 24. There is no "refusal to accommodate a scheduling request for purely strategic reasons" here, *Booker*, 2024 WL 4664420, at *10, but instead two parties working together to schedule a large number of depositions in a compressed amount of time.

The parties discussed the potential for limited extensions of the rebuttal deadline where absolutely necessary for some experts. Abram Decl. ¶ 7. But Plaintiffs never agreed to wholesale, long extension of the Court-ordered deadline, and never would have so agreed given the prejudice to themselves stemming from reduced time for depositions and *Daubert* motions. *Id.* At no time did Uber even hint at a blanket extension to November 6, as its own exhibits confirm. Discussions culminated on October 14, when Plaintiffs learned that Uber intends to rebut nearly all of Plaintiffs' experts, including serving 4-5 new rebuttal experts. *Id.* ¶ 8. At that point, it was indisputable that moving the rebuttal deadline in the way Uber proposed was not workable, as Plaintiffs promptly notified Uber. *Id.* ¶ 9.

The reality is that, given the tight case schedule and large number of experts, it is not feasible to (1) find workable dates; (2) schedule every deposition before the *Daubert* deadline (one of Uber's experts, Sara West, is available *only* on November 14, 4 days *after* the deadline); *and* (3) accommodate Uber's requirement that every expert be deposed before their opinions are rebutted. Plaintiffs tried hard to work with Uber, but the result of this arbitrary requirement would be—at best—rebuttals being served immediately before *Daubert* deadlines, leaving no time for depositions at all, and barely any, if that, time to prepare motions.

Finally, any extension requires diligence. *See, e.g.*, *Mosgrove*, 2024 WL 5011612, at *1. Uber contends that Plaintiffs agreed to a wholesale modification of the rebuttal deadline. That is not true. Regardless, however, even Uber must acknowledge that Plaintiffs dispelled any confusion on October 15. *See* Mot., Ex. B. Yet, Uber inexplicably delayed in filing this motion until October 21, three days before the deadline. That is not diligent.

The Court should stick to the schedule it ordered, with rebuttal reports due October 24. Plaintiffs will serve their rebuttals that day (even though most of Uber's experts will not yet have been deposed). Uber must do the same. That leaves ample time for depositions of rebuttal experts before the November 14 deadline for moving against those experts. That ensures timely *Daubert* motions, which in turn protects the January 6 trial date.

Dated: October 22, 2025                    Respectfully submitted,

By: */s/ Sarah R. London*
    Sarah R. London (SBN 267083)

    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
    Rachel B. Abrams (SBN 209316)

    **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641

Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

## FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: October 22, 2025                    By:   */s/ Andrew R. Kaufman*
                                                  Andrew R. Kaufman