[*Submitting counsel below*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17 Floor (via videoconference)<br>Date: October 31, 2025<br>Time: 11:00 a.m. |

**JOINT CASE MANAGEMENT STATEMENT**

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively "Uber"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for October 31, 2025.

**Proposed Agenda**

| | |
|---|---|
| I. | **Status of Case Filings** |
| II. | **Page Limits for Motions for Summary Judgment and Daubert Briefs** |
| III. | **Pretrial Conference Timing and Substance** |
| IV. | **Motions in Limine** |
| V. | **Trial Schedule and Logistics** |
| VI. | **Jury Selection Timing and Questionnaires** |
| VII. | **Mini-Openings** |
| VIII. | **Juror and Witness Data in Uber's Possession** |
| IX. | **Sequencing of Affirmative Deposition Designations** |
| X. | **Corporate Witness Trial Testimony** |
| XI. | **Exchange of Opening / Closing Demonstratives** |
| XII. | **Proposed Stipulated Amendments to PTO No. 10** |
| XIII. | **Motions to Withdraw as Counsel** |
| XIV. | **Settlement / Mediation** |
| XV. | **Next Case Management Conference** |

**I.     STATUS OF CASE FILINGS**

     **A.     Number of MDL Case Filings**

As of October 27, 2025, there are 2,804 cases in this MDL, with approximately 125 new filings since the last case management conference.

  **B.**  **Status of JCCP**

Approximately 750 cases are pending in the JCCP. The first bellwether trial ended on September 30. The next trial has been set for May 4, 2026.

  **C.**  **Other Cases and Proceedings**

Defendants have provided a current list of civil actions arising from allegations of sexual assault on the Uber platform in which Uber is a defendant, attached as Exhibit A.

**II.** **PAGE LIMITS FOR MOTIONS FOR SUMMARY JUDGMENT AND DAUBERT BRIEFS**

Summary judgment motions (in five cases: A.R.2, B.L., Jaylynn Dean, LCHB 128 and WHB 823) as well as Daubert motions for experts disclosed on September 26 are due on November 10. Daubert motions for experts disclosed on October 24 are due on November 14. All oppositions are due on December 10, and all replies on December 23. The parties agree to the following page limits for summary judgment:

- Summary Judgment motions/oppositions: 60 aggregate pages
- Summary Judgment replies: 30 aggregate pages

  **A.**  **Plaintiffs' Position**

On September 26, Plaintiffs disclosed 17 opening experts and Defendants disclosed 9, offering a mix of general and case-specific opinions. On October 24, Plaintiffs disclosed one new rebuttal expert and served one rebuttal report from a previously disclosed expert, and Defendants disclosed seven new rebuttal experts and served six rebuttal reports from previously disclosed experts. While Plaintiffs are continuing to evaluate whether all of these new experts and new reports are proper rebuttal, and whether to move to strike them, the parties are nevertheless proceeding with scheduling depositions for all of them over the next four weeks.

Given the schedule, Plaintiffs request that the Court set a reasonable cap on pages for *Daubert* briefing, in order to focus the parties on the most important issues and use their and the Court's time efficiently. Given the potential volume of briefing and the staggered *Daubert* deadlines, it makes sense for the Court to impose aggregate page-limit caps for *Daubert*, which the parties may use in omnibus or individual papers as they deem appropriate. Plaintiffs suggest the following:

- *Daubert* motions/oppositions: 75 aggregate pages
- *Daubert* replies: 30 aggregate pages

Uber makes no counterproposal, evidently believing it is reasonable to file (and expect the Court to read) more than 250 pages of *Daubert* motions (15 pages per expert). It is not.

Uber complains that Plaintiffs have more experts than Defendants do and suggests extending the schedule, which is impossible. 75 pages should be sufficient to raise any meritorious challenges Defendants have. But Plaintiffs do not object if the Court elects to apportion 75 pages to Defendants' motions and oppositions thereto (with 30 pages for reply), and 50 pages to Plaintiffs' motions and oppositions thereto (and 22 pages for reply).

### B. Defendants' Position

Defendants strongly oppose any shortening of the N.D. Cal. standard page limits for the parties' Rule 702 motions.

These are the first (and thus most important) bellwether cases in an MDL proceeding, and resolution of the parties' motions will have repercussions for numerous other cases. Moreover, any problem plaintiffs have responding to plenary briefing under the current schedule is one of their own making. Plaintiffs sought multiple postponements of the expert disclosure deadline, necessitating corresponding changes to the Daubert schedule, moving it closer to the trial date. They then chose to disclose 17 experts—a number they presumably knew they intended to disclose at the time they pushed to compress the disclosure and Daubert deadlines. Thereafter, Plaintiffs refused to negotiate a more workable expert schedule. Uber should not be punished for Plaintiffs' strategic decisions and gamesmanship. If Plaintiffs wanted to respond to fewer expert motions, they should have disclosed fewer experts. But it cannot be the case that a party can avoid full Rule 702/Daubert briefing on its experts by simply flooding the other side with a large number of experts. This is all the more true in light of amended Rule 702, which clarified the importance of the Court's gatekeeping role. If Plaintiffs do not feel they can respond to Rule 702 motions on the deadlines set forth in the CMC, they should either withdraw some of their experts or agree to extend the current schedule. Having just strenuously objected to even a modest extension of expert deadlines, Plaintiffs cannot credibly argue that full-length Rule 702 motions would be too great a strain on their time and resources.

Accordingly, Uber requests that the Court decline to shorten the standard 15-page limit for Rule 702/D*aubert* briefing and permit the parties to use their discretion on how to most efficiently brief Rule 702 issues.

### III.    PRETRIAL CONFERENCE TIMING AND SUBSTANCE

The parties propose that the pretrial conference be scheduled for January 5, 2026, in whichever courthouse makes sense given the trial schedule.

The parties respectfully request that the Court clarify (as the parties have assumed) that the pretrial conference (and various deadlines that flow backwards from it) will pertain to the first-scheduled trial (the Jaylynn Dean case).

Given all the work ahead (*Daubert* motions on a large number of experts; summary judgment in five cases) and the unique details of the assaults in each bellwether case, it is not practical for the parties to also complete the remaining pretrial work (exhibit lists, deposition designations, witness lists, jury instructions, including for laws in other states, jury questionnaire) on the same schedule for cases not yet set for trial. For the first bellwether to be meaningful and efficient, the parties need to focus their resources on narrowing evidentiary disputes, streamlining witness and exhibit lists, carefully drafting jury charges, and simplifying presentations. Prioritizing the Dean case for the final lap of pretrial workup allows the parties to most effectively accomplish this critical work, rather than spreading everyone too thin-- especially during the holidays. Undoubtedly this exercise will be useful in future bellwether cases and make the process more efficient going forward.

In the unlikely event that the Dean case resolves, and another case is set for trial in short order, the parties will complete that work for the new case on whatever timeline the Court deems necessary.

### IV.    MOTIONS IN LIMINE

The parties dispute the number and length of permitted motions in limine.

#### A.    Plaintiffs' Position

The Court's default rule is five motions in limine per side at seven pages per motion. Uber's proposal of 20 motions for this first trial is excessive and unworkable given the tight schedule (one week) for responding to such motions. As the Court recalls, Plaintiffs proposed that the parties brief

certain motions in limine early to ensure adequate time to brief and address "cross-cutting" issues, but Uber opposed. Uber's proposal also makes little sense given the Court's stated preference against many motions in limine: "[T]he problem with motions in limine is that they are decided in a vacuum" and "three-quarters of the time I get motions in limine, I say: it depends." 6/6/25 H'rg Tr. at 15:13-16.

Plaintiffs propose the Court set a page limit for omnibus motions in limine (20-25 pages makes sense), and reasonable limits on the number of motions to be contained in those pages (if not 5, then 10 at most). Plaintiffs also request, in line with the above discussion of the pretrial conference, and to make it feasible to accomplish the work in the time allotted, that the motions in limine be limited to the Dean case.

**B.    Defendants' Position**

The Court's Standing Order on Civil Jury Trials states that five or fewer motions in limine *generally suffice*. Given the complexities of these cases and the number of cases at issue, it is necessary to file significantly more than five motions per side per case. Further, the parties are filing motions in multiple cases here, rather than for a single case. In the recent California JCCP proceedings, Plaintiffs filed 36 motions in limine in the four bellwether cases combined. Uber filed 32 total. Uber intends to be judicious with respect to both the number and length of motions in limine, and requests that the Court relax the guidelines of five motions in light of the multiple cases at issue. Specifically, Uber requests permission to file up to 15 cross-cutting motions plus 5 case-specific motions per bellwether case.

**V.    TRIAL SCHEDULE AND LOGISTICS**

The parties agree that the trial should be 80 hours (or two weeks), divided 48 hours to Plaintiff (who has the burden of proof on most issues) and 32 hours to Uber (who does not). The parties agree that time should be strictly kept pursuant to a chess-clock method, such that all time that a party (i.e., crosses and rebuttals) is counted towards the party using the time. Additional time may be needed in the event of a Phase 2.

The parties seek guidance on the Court's anticipated daily schedule, and whether there will be any dark days. The parties also respectfully request the Court's direction on: (a) who to contact

with questions regarding courtroom technology; and (b) the availability of workrooms in the courthouse.

### A.     Plaintiffs' Position.

The time requested for the first phase of the trial is warranted because this trial involves a "case within the case"—Plaintiffs anticipate that Uber will argue that Jaylynn Dean and the driver engaged in consensual sex. In addition to evaluating evidence supporting the causes of action asserted by Jaylynn Dean, the jury will need enough time to assess evidence on whether there was harmful conduct by the driver. Uber has not yet decided whether it will request a bifurcated trial. Plaintiffs request that the Court set a deadline for Uber to state its position as to bifurcation.

## VI.    JURY SELECTION TIMING AND QUESTIONNAIRES

The Court scheduled voir dire for the week of January 6, 2026. ECF 3725. The parties suggest that, if permitted by local logistical requirements, voir dire be rescheduled for January 13, 2026, the day before the trial, rather than a week before, to use jurors' times efficiently and limit disruptions to their personal schedules. The parties also request that the Court administer juror questionnaires and provide counsel at least overnight (or optimally over the weekend) to review them before jury selection begins. The parties will confer and endeavor to agree on a proposed questionnaire and work with the Court to streamline administration (i.e. secured web-based or online formatting). The parties also jointly request that attorneys be permitted a reasonable amount of time to question the jurors.

## VII.   MINI-OPENINGS

The parties agree that counsel should make brief opening statements to the jurors before voir dire, as permitted by A.R.S. Rules of Civil Procedure, Rule 47(c)(4) and California Code of Civil Procedure Section 222.5(d). Mini-openings will provide jurors with enough background to understand the relevance of upcoming questions and assist them in assessing whether they can be fair and impartial. Mini-openings are more effective than a neutral statement from the Court in prompting meaningful and complete responses to questioning. They will reduce the amount of time needed on jury selection.

**VIII. JUROR AND WITNESS DATA IN UBER'S POSSESSION**

Uber possesses data and information of any kind on potential jurors and witnesses, namely whether they have an Uber account and their use of it. This information is not public and not equally available to Plaintiffs. Uber disagrees with the statements by plaintiffs' counsel that it possesses data and information "of any kind", but in the spirit of good faith and cooperation, the parties agree that during voir dire and trial, Uber's counsel will never access Uber's company data of any kind concerning potential or selected jurors. The parties disagree, however, on Uber's use and sharing of data on witnesses who testify live at trial.

### A. Plaintiffs' Position

At the JCCP bellwether trial, Uber repeatedly solicited testimony from its corporate witnesses concerning their and their family's personal Uber use, testimony that the plaintiff could not challenge or rebut, because she did not have access to Uber's data. This kind of personal vouching testimony has little to no relevance to the matter, but can be powerful—and unfairly— effective. It conveys that Uber's employees, who supposedly should know how often and under what conditions Uber drivers assault passengers, apparently let their own daughters use it, so it must be safe! Plaintiffs expect Uber to attempt to do the same in this trial, and also to do the same with its experts and potential third-party witnesses. Uber knows with exquisite detail whether and in what ways those people use Uber. Uber can examine and even cross those witnesses using that information, while Plaintiffs are in the dark, and cannot meaningfully test or explore this testimony and ensure the jury gets the whole story.

To level the playing field and allow for meaningful cross, Plaintiffs have served discovery seeking Uber ride history for Uber's employee and expert witnesses (as well as anyone else Uber's employees and experts claim to use it—including their wives, daughters, and sisters), including whether they use UberX vs. Uber Black (the professional driver option), when they use it (at night? After drinking? Alone?), but Uber has refused.[1] Uber has also refused to stipulate that it will not

---

[1] Uber cannot affirmatively offer any *documentary* evidence regarding its employees' and their families' personal Uber use, since it did not produce any such documents by the Court's deadline for production of materials any party intends to use at trial. ECF No. 2745.

elicit this testimony. So, Plaintiffs seek relief from the court to either (1) strike or preclude personal vouching testimony from Uber witnesses; or (2) require Uber to produce all relevant data and information regarding that person's Uber use sufficiently in advance of trial for potential cross.

### B. Defendants' Position

Plaintiffs' position on use of rider history data on the Uber platform is better suited for a motion *in limine* than a case management conference statement. To the extent Plaintiffs wish to brief whether any of their hypothetical scenarios warrants their requested relief, they should file a motion identifying the evidence at issue and asking for a ruling, and Uber will respond to it once the issues are identified and closer to trial.

## IX. SEQUENCING OF AFFIRMATIVE DEPOSITION DESIGNATIONS

The parties disagree on whether both sides' affirmative deposition designations should be played together in one party's case-in-chief (usually Plaintiff's), or instead whether each side should play their own designations (even of the same witness) in their own case-in-chief.

### A. Plaintiffs' Position

Plaintiffs respectfully request an order that (1) only counter-designations for completeness under Federal Rule of Evidence 106 or Fed. R. Civ. P. 32(a)(6) may be played with affirmative designations, and (2) each side's affirmative designations should be played separately during its own case-in-chief.

The "court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to ... make those procedures effective for determining the truth." Fed. R. Evid. 611(a)(1). In the exercise of that discretion, courts have recognized that it can be most effective to play deposition designations designated by each side in its own presentation, to avoid the inherent prejudice and risk of confusion if one party is able to present much of its case during its opponent's case-in chief. *See, e.g., In re Pac. Fertility Ctr. Litig.*, 2021 WL 2075560, at *1 (N.D. Cal. May 24, 2021), *In re: 3M Combat Arms Earplug Products Liab. Litig.*, No. 3:19-md-02885-MCR-GRJ, Pretrial Order No. 64 Trial Time Allocation For The First Bellwether Trial, Dkt. 1640 at 6 (N.D. Fla. Jan. 21, 2021); *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, Order Regarding Trial Matters, Dkt. 2594 at 2 (N.D. Ohio Sept. 12, 2019).

     Testimony beyond that required by Rules 106 and 32 for fairness may, and often should, be offered at a separate time. Courts routinely limit counter-designations to completeness while requiring that all other testimony offered by an adverse party be presented to the jury separately. *In re Yasmim & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prod. Liab. Litig.*, 2011 WL 6740391, at *18-19 (S.D. Ill. Dec. 22, 2011) ("[T]he Court will follow Rule 32(a)(6), however, as the rule reads *only* so much counter-designation will be read as is necessary to allow for a *fair* reading of the testimony.") (emphasis in original); *In re Pac. Fertility Ctr. Litig.*, 2021 WL 2075560, at *1 (N.D. Cal. May 24, 2021) (same). As Judge Corley noted in her order in Pacific Fertility Center, "[i]f testimony [Defendant] designated does not come in during Plaintiffs' presentation as a matter of fairness, [Defendant] may offer deposition testimony in its own case-in-chief." 2021 WL 2075560, at *1 (citing Fed. R. Civ. P. 32(b)(6)).

     Alternatively, the Court should order designations be played separately where Uber's designation time exceeds that of Plaintiff's. *See In re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, No. 19-md-02913-WHO, Dkt. 3170 at 2 (N.D. Cal. May 9, 2022) ("In the few instances where defendants' designations exceed the time of plaintiff's designations, only the designations for completeness will be allowed during plaintiff's case-in-chief."). At minimum, highly disproportionate designations should be played separately. Specifically, the Court could adopt a rule similar to the one used in *In re: National Prescription Opiate Litigation*. There, Judge Polster ordered first, "if one party's designations are very short and the other party's designations are much longer, the Court may allow the first party to present only the short designation by itself," and second, "when the plaintiff wants to play in its case-in-chief portions of a videotaped deposition of a party opponent on cross-examination, the defendant may not force the plaintiff to present concurrently the defendant's own designations." *In re: National Prescription Opiate Litigation*, No. 1:17-MD-2804 (N.D. Ohio), Order Regarding Trial Matters, Dkt. 2594 at 2 (Sept. 12, 2019). This procedure is fair because it balances the common impulse to hear from a witness all at once against the advantages of playing designations separately when they are disproportionate in length, and the inherent prejudice in allowing an adverse party to put on their best testimony in the middle of their opponent's case.

Uber's proposal to load up Plaintiffs' case-in-chief with any and all testimony they want to designate—regardless of whether responsive or not to Plaintiffs' cross—stokes confusion and frustrates efficiency. Uber's corporate witnesses often made long speeches throughout depositions, often rattling off defense talking points. Allowing Uber to play this testimony regardless of whatever evidence Plaintiffs seek to offer—no matter how narrow, or how limited the topic—obscures and buries Plaintiffs' evidence, leaving the jury unclear about what evidence Plaintiffs are offering in their case. Further, this process incentivizes Uber to designate lengthy, boring testimony to frustrate the effective presentation of evidence in Plaintiffs' case. Either of Plaintiffs' proposals remove this temptation and keep things moving along in an orderly, fair and efficient way.

### B.  Defendants' Position

Uber recommends that all designations for a particular witness be handled together, regardless of the offering party.  This approach will make sense to the jury because it most closely mirrors live testimony with direct and cross-examination and avoids the confusion that can easily come from a witness "appearing" on multiple occasions within a trial. It is also the most efficient approach, particularly because the parties have agreed to a "chess clock" format, and the parties will have (or at least need to) factored designations into the time allocations.

## X.   CORPORATE WITNESS TRIAL TESTIMONY

The parties have agreed to exchange preliminary lists of which company witnesses each desire to bring to trial to testify live. Uber has agreed to make reasonable efforts to produce witnesses Plaintiffs identify, assuming Plaintiffs provide a reasonably narrowed list, and subject to appropriate objections on whether the witness should be called for live testimony based on relevant considerations including role in the organization, relevance, and availability.

## XI.   EXCHANGE OF OPENING / CLOSING DEMONSTRATIVES

The parties disagree on whether to exchange opening demonstratives before they are used.

### A.   Plaintiffs' Position

In order to avoid unfair surprise, advantage, and interruption of lawyer presentation with objections, the Court should order that opening and closing demonstratives be exchanged by 5pm the night before they are to be used, with any disputes presented to the Court before openings begin.

**B.  Defendants' Position**

It is in both parties' interest to adhere to all pretrial rulings and to avoid objectionable statements during opening. Accordingly, Uber believes that the parties should exchange slides at 10PM the night before Opening Statements and raise and resolve any objections in the morning, prior to delivering Opening Statements.

## XII. PROPOSED STIPULATED AMENDMENTS TO PTO NO. 10.

The parties have been negotiating certain amendments to PTO No. 10's provisions concerning Plaintiff Fact Sheets and similar issues. The parties expect to submit a stipulated proposed order requesting the entry of Amended PTO No. 10 shortly.

## XIII. MOTIONS TO WITHDRAW AS COUNSEL

As the Court is aware, certain individual Plaintiff's counsel have filed motions to withdraw from representation. Defendants request, and the PSC does not oppose, that the Court provide Defendants an opportunity to assess the potential prejudice from permitting counsel to withdraw from any individual representation within this MDL and inform the Court of its assessment before any motion to withdraw is granted. The parties are conferring regarding a proposed standing order that would allow Defendants 14 days following the filing of a motion to withdraw to submit any opposition to the motion, and anticipate providing a proposed order to the Court.

## XIV. SETTLEMENT / MEDIATION

The parties continue to meet periodically with Judge Andler to discuss the potential for resolution.

## XV. NEXT CASE MANAGEMENT CONFERENCE

The next case management conference has not been scheduled.

Dated:  October 29, 2025                              By: */s/ Sarah R. London*

                                        Sarah R. London (SBN 267083)
                                        **GIRARD SHARP LLP**
                                        601 California St., Suite 1400
                                        San Francisco, CA 94108
                                        Telephone: (415) 981-4800
                                        slondon@girardsharp.com

|   |   |
|---|---|
|   | By: */s/ Rachel B. Abrams* |
|   | Rachel B. Abrams (SBN 209316)<br>**PEIFFER WOLF CARR KANE<br>CONWAY & WISE, LLP**<br>555 Montgomery Street, Suite 820<br>San Francisco, CA 94111<br>Telephone: (415) 426-5641<br>rabrams@peifferwolf.com |
|   | By: */s/ Roopal P. Luhana* |
|   | Roopal P. Luhana<br>**CHAFFIN LUHANA LLP**<br>600 Third Avenue, Floor 12<br>New York, NY 10016<br>Telephone: (888) 480-1123<br>luhana@chaffinluhana.com |
|   | *Co-Lead Counsel for Plaintiffs* |
| Dated:  October 29, 2025 | **KIRKLAND & ELLIS LLP** |
|   | By: */s/ Laura Vartain Horn*<br>**KIRKLAND & ELLIS LLP**<br>ALLISON M. BROWN<br>JESSICA DAVIDSON<br>LAURA VARTAIN |
|   | **SHOOK, HARDY & BACON L.L.P.**<br>MICHAEL B. SHORTNACY<br>PATRICK L. OOT, JR.<br>CHRISTOPHER V. COTTON<br>ALYCIA A. DEGEN |
|   | **O'MELVENY AND MYERS LLP**<br>SABRINA H. STRONG<br>JONATHAN SCHNELLER |
|   | *Attorneys for Defendants*<br>UBER TECHNOLOGIES, INC.,<br>RASIER, LLC, and RASIER-CA, LLC |

**FILER'S ATTESTATION**

I, Sarah R. London, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: October 29, 2025                     */s/ Sarah R. London*
                                                         Sarah R. London