# Exhibit A

1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT
LITIGATION

This Document Relates to:

ALL ACTIONS

MDL No. 3084 CRB

**[PROPOSED AMENDED]**
**PRETRIAL ORDER NO. 10: FACT**
**SHEET IMPLEMENTATION**
**ORDER**

This Pretrial Order ("PTO" or "Order") governs the form, schedule for completion, and service of personal injury Plaintiff Fact Sheets ("PFS") and Defendant Fact Sheets ("DFS") in this MDL. This Order applies to Defendant Uber Technologies Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), and all Plaintiffs and their counsel in: (a) all actions transferred to In re: Uber Technologies, Inc. Passenger Sexual Assault Litigation ("MDL-3084") by the Judicial Panel on Multidistrict Litigation ("JPML") and (b) to all related actions directly filed in or removed to this MDL in this Court.

In entering this order and the appended fact sheets, the Court resolves the parties' numerous disputes over the form and content of the PFS and DFS. A few general observations are in order. With respect to the PFS, the Court has resolved some disputes in Plaintiffs' favor and others in Uber's. The Court has tried to avoid questions that are potentially confusing, questions that ask for duplicative information or information not readily available to a given plaintiff, and questions asking for

1

information of limited relevance or that are unlikely to be useful at the stage in the proceedings. Much of what Uber asks for in the PFS may ultimately be discoverable, but the appropriate question—for the PFS and DFS alike—is whether including a given question in a fact sheet will efficiently advance these coordinated proceedings, or whether that information might be better sought later, when individual cases are being worked up for trial. The Court regarded requests going to common issues, or issues that might otherwise help the parties and the Court to manage the litigation at this relatively early stage, as more appropriate for inclusion in the fact sheets.[1]

With respect to the DFS, the Court largely rejects Uber's contention that the DFS is a categorically inappropriate vehicle for document production. MDL fact sheets frequently include requests for production, as Plaintiffs correctly point out. Here, although the same documents could certainly be sought through Rule 34, there are advantages to including the requests in the DFS. Doing so ensures that the production of certain key documents occurs early in each case and on a rolling basis as new cases join the MDL. It can thereby facilitate more effective coordination of these proceedings— for example, the possible division of the cases into sub-categories or the selection of bellwethers. The Court notes that the parties are basically in agreement on the substance of the information that should be addressed in the DFS, although they diverge on how the DFS should address itself to a given category of information. For example, Uber's proposal would simply have it check "yes" or "no" as to whether Uber conducted a background check on a given driver. Plaintiffs' proposal, by contrast, would require Uber to produce all the background checks it conducted on the drivers. The latter is a superior solution for the background checks, which, where they exist, will be highly relevant, and which nothing in the record suggests would be unduly difficult for Uber to produce. The same is true of the customer support tickets about given drivers (although the Court has narrowed the language of this request

---

[1]    These principles also explain why the Court has included certain document requests in the DFS but has excluded the disputed document requests from the PFS.

somewhat) and the driver account status logs. By contrast, the same cannot be said for information like pre- and post-trip GPS data, whose relevance to a given case will likely depend on the specific contours of the alleged incident. And some requests, like Plaintiffs' request for "communication logs," are simply too broad for inclusion in the fact sheets, given their potential utility.

This said, the Court's decision to <u>exclude</u> any given request or category of information from the PFS or DFS does not reflect a ruling on that information's discoverability. In some instances, information that the Court has left out of the fact sheets may be highly relevant to certain cases, or even to most cases. The exclation of any question or request from the fact sheets should be taken to mean <u>only</u> that the Court determined that requiring such information in a fact sheet would not, on balance, serve to resolve the coordinated cases before it efficiently, promptly, and fairly. On the other hand, the Court has not ordered the <u>inclusion</u> in the fact sheets of any information that is not discoverable.

### 1. Online Platform

The Court hereby appoints BrownGreer, PLC ("BrownGreer") to serve as the online platform for the data management of the PFS and DFS. The parties are directed to utilize BrownGreer's platform, "MDL Centrality," to fulfill their PFS and DFS obligations as detailed below and also, directly or through their designated representatives, to enter into a contract with the company specifying the services to be provided, the costs of such services, and the parties' payment obligations. BrownGreer shall work with the parties to compile all necessary data. The parties shall serve their respective PFS, DFS, and responsive documents to the requests for production of documents by uploading them to MDL Centrality. Uploading the responsive discovery to MDL Centrality shall constitute effective service.

### 2. Production of Bona Fide Ride Receipts

As previously ordered, Plaintiffs will either submit bona fide ride receipts or the ride information detailed in PTO No. 5 (dkt. 175 at 2–3) by February 15, 2024, for cases on file in this MDL

as of February 1, 2024, and within 14 days of filing, transfer, or removal to this Court for all cases filed, transferred, or removed after February 1, 2024. Plaintiffs shall serve the bona fide ride receipt, if located, or all ride information required by PTO Nos. 5 and 31, if the receipt is not located, by uploading the bona fide ride receipt or ride information to MDL Centrality, identifying each with the name of the Plaintiff to whom the bona fide ride receipt or ride information applies, and by the associated case number.

### 3.  Plaintiff Fact Sheets

The Court has approved a PFS that includes a variety of written authorizations for the release of records ("Authorizations"). <u>See</u> Exhibit 1. Each Plaintiff must submit a completed PFS, and executed Authorizations, through MDL Centrality pursuant to the terms of this Order.

As part of the PFS requirements, each Plaintiff shall have thirty (30) days from the date of this revised order, or from the deadline to submit a completed PFS, whichever is later, to produce the below documents to Uber via MDL Centrality  (with the exception of the documents that Marker has notified Plaintiffs as of October 25, 2025 that Marker has already collected through authorizations available to both parties) that are in the plaintiff's possession, custody or control:

(a) All medical and/or therapy records from each Health Care Provider who treated the Plaintiff in connection with the Incident. If Plaintiff does not have such records, counsel must order these records within 30 days of this Order (which may be accomplished using a third-party ordering service) and produce records within 14 days of receipt via MDL Centrality.  Within 30 days of this Order, or from the deadline to submit a completed PFS, whichever is later, counsel will confirm via MDL Centrality that all records have been uploaded, ordered by Plaintiffs' counsel (including using a third-party ordering service), or that no records exist.  If a Plaintiff has an expired authorization, such that Plaintiff's counsel need to obtain a new authorization to obtain the records, Plaintiff may offer proof of such expired

authorization and shall have another 30 days to confirm via MDL Centrality that all records have been uploaded, ordered by Plaintiffs' counsel (including using a third-party ordering service), or that no records exist.

(b) Police report, law enforcement and forensic records relating to the Incident, including any witness statements provided to law enforcement, any victim impact statement provided to law enforcement, and any DNA evidence. If Plaintiff does not have such records, counsel must order these records within 30 days of this Order and produce records within 14 days of receipt via MDL Centrality.

The obligation to comply with this PTO and to provide a PFS, executed Authorizations, and supplemental documentation included in Section 3(a) – (b) shall fall solely on the individual counsel representing a Plaintiff. As with all case-specific discovery, Plaintiffs' Lead Counsel and the members of the Plaintiffs' Steering Committee are not obligated to conduct case-specific discovery for Plaintiffs by whom they have not been individually retained. In addition, Plaintiffs' Lead Counsel and the members of the Plaintiffs' Steering Committee have no obligation to notify counsel for Plaintiffs whom they do not represent of Defendants' notice of overdue or deficient discovery nor to respond to any motion practice pertaining thereto.

### 4. Defendant Fact Sheets

The Court has approved a DFS that includes document requests. See Exhibit 2. Uber must submit a completed DFS and documents responsive to the requests in the DFS ("Responsive Documents") pursuant to the terms of this Order. However, if the ride receipt or ride information submitted by a Plaintiff is insufficient to allow Uber Defendants to identify a specific trip associated with the Plaintiff's alleged incident, and Uber had conducted its own search, and after a meet and confer session with Plaintiff's counsel (provided that the parties are not required to meet and confer again if Uber has already filed any receipts motion relating to that Plaintiff) , Uber Defendants

nevertheless have been unable to locate the ride at issue, then the Uber Defendants need not complete Section II (Uber Trip Information). Likewise, if the ride receipt or ride information submitted by a Plaintiff is insufficient to allow Uber Defendants to identify a driver associated with the Plaintiff's alleged incident, and Uber had conducted its own search, and after a meet and confer session with Plaintiff's counsel (provided that the parties are not required to meet and confer again if Uber has already filed any receipts motion relating to that Plaintiff), Uber Defendants nevertheless have been unable to identify the driver at issue, then the Uber Defendants need not complete Section III (Driver Information) and Section IV (Incidents).

If a Plaintiff for whom Uber was previously unable to identify a specific trip and/or driver provides, via service via MDL Centrality, supplemental ride information, or a ride receipt not previously produced, and if this supplemental ride information or ride receipt allows Uber Defendants to identify a specific trip and/or driver not previously identified, Uber Defendants shall, within 90 days of receipt of this supplemental information, complete and serve a supplemental DFS, which includes the information previously lacking.

### 5. Discovery Mechanism

The effect of a Party's response to the questions contained in the PFS and DFS shall be considered the same as interrogatory responses, and where documents are requested, as responses to requests for production under the Federal Rules of Civil Procedure, and these responses will be governed by the standards applicable to written discovery under the Federal Rules of Civil Procedure.

A PFS or DFS is served without prejudice to the Parties' right to propound additional discovery. The Parties do not waive their rights to assert objections permitted under the Federal Rules of Civil Procedure to any additional discovery.

### 6. PFS and DFS Deadlines

The following PFS and DFS deadlines shall apply:

6

### a. Cases filed on or before the date of March 26, 2024:

For cases directly filed in this judicial district and entered on the MDL 3084 docket on or before March 26, 2024, and for cases the JPML transfers to MDL 3084 on or before March 26, 2024, each Plaintiff must complete and submit a PFS and execute applicable Authorizations, and Uber Defendants must complete and submit a DFS and produce responsive documents, within 60 days after March 26, 2024. A case shall be deemed transferred to MDL 3084 either: (a) on the date the Clerk enters a certified copy of the JPML's Conditional Transfer Order on the docket of this Court, or (b) where transfer is contested, the date of transfer in any subsequent order from the JPML.

### b. Cases filed after the date of March 26, 2024:

For cases directly filed in this judicial district and entered on the MDL 3084 docket, and for cases the JPML transfers to MDL 3084 after March 26, 2024, each Plaintiff must complete and submit a PFS and execute applicable Authorizations within 30 days of the case being filed in, removed to, or transferred to MDL 3084. The Uber Defendants must complete and submit a DFS and produce Responsive Documents, within 30 days after a given plaintiff serves the ride receipt or ride information form in accordance with PTO No. 5 and this Order.

### 7. Procedures for Serving Completed Plaintiff and Defendant Fact Sheets and Associated Documents

Within the deadlines prescribed for the PFS in the prior section, Plaintiffs shall serve the completed PFS and Authorizations upon Uber's counsel. Service shall be accomplished by uploading the verified PFS to MDL Centrality in the relevant Plaintiff's case file and by producing all Authorizations and Responsive Documents in the same manner and format as detailed in the ESI protocol, with a cover letter identifying the Plaintiff and case number to which the production applies.

Within the deadlines prescribed for the DFS in the prior section, Uber shall serve the completed DFS and Responsive Documents upon Plaintiff's counsel. Service shall be accomplished by uploading the verified DFS to MDL Centrality in the relevant Plaintiff's case file and by producing all Responsive

Documents in the same manner and format as detailed in the ESI protocol, with a cover letter identifying the Plaintiff and case number to which the production applies.

### 8. Substantial Completeness of PFS and DFS

The PFS and DFS submission must be substantially complete, which means a Party must:

1. Answer all applicable questions (Parties may answer questions in good faith by indicating "not applicable," "I don't know," or "unknown");

2. Include a signed Declaration (for a PFS) or Certification (for a DFS);

3. Provide duly executed record release Authorizations (for a PFS); and

4. Produce the requested documents to the extent such documents are in the Party's possession, custody, or control.

If a Party considers a PFS or DFS to be materially deficient, a deficiency notice outlining the purported deficiency(ies) shall be served on the deficient Party's attorney of record via MDL Centrality. The deficient party will have thirty (30) days to correct the alleged deficiency(ies).

### 9. Procedures for a Plaintiff's Failure to Comply

(a) If Plaintiff fails to timely and substantially comply with this Order (i.e. if a PFS is not submitted by Plaintiff's deadline or a submitted PFS is materially deficient), Uber may serve on Plaintiff (if pro se) or Plaintiff's counsel a "Notice of Overdue Discovery" identifying the discovery that is overdue and stating that, unless the Plaintiff complies with this Order, the case may be subject to dismissal.  Such Notice of Overdue Discovery shall be served by Uber via MDL Centrality.

(b) If Plaintiff fails to submit a PFS or submits a PFS that fails to substantially comply with this Order within thirty (30) days after service of the "Notice of Overdue Discovery," and any deficiencies are material (e.g., not merely missing maiden name), Uber may move the Court for an Order dismissing the relevant Complaint without prejudice.  With respect to material deficiencies in a submitted PFS, the parties shall meet and confer during this 30-day period regarding the deficiencies.  Plaintiff shall have

fourteen (14) days from the date of Uber's motion to file a response either (a) certifying that the Plaintiff has submitted the information required under this Order; or (b) opposing Uber's motion for other reasons. Uber shall file a reply, no later than seven (7) days following the deadline for certification or opposition to Uber's motion, indicating which of Plaintiff's claims (if any) it still moves to dismiss. If a Plaintiff certifies that he or she has submitted the information required under this Order, the Plaintiff's claims shall not be dismissed (unless the Court finds that the certification is false or incorrect).

(c) If the Court dismisses a Complaint without prejudice under the previous paragraph, the Order will be converted to a dismissal with prejudice upon Uber's motion—to be filed no earlier than thirty (30) days after the Court's entry of the Order of Dismissal Without Prejudice—unless (1) a Plaintiff submits the information required under this Order; or (2) moves to vacate the dismissal without prejudice within that same time period. If any Plaintiff files a motion to vacate the dismissal of his or her claims, Uber shall file a consolidated opposition to any motions arising out of the same dismissal without prejudice fourteen (14) days after the Plaintiff's deadline for submitting such motions (thirty (30) days after the Court granted the motion to dismiss). Each Plaintiff's reply, if any, shall be due seven (7) days thereafter. If the Court denies any Plaintiff's motion, the claims of that Plaintiff shall be dismissed with prejudice. If the Plaintiff serves Uber with a completed PFS before the filing of Defendants' motion to convert a dismissal without prejudice to a dismissal with prejudice, the parties shall submit a stipulated motion to vacate the dismissal without prejudice order.

**10. Objections Reserved to PFS and DFS**

All objections to the admissibility of information contained in the PFS and DFS are reserved; therefore, no objections shall be lodged in the responses to the questions and requests contained therein. This paragraph, however, does not prohibit a Party from withholding or redacting information based upon a recognized privilege. Documents withheld on the basis of privilege shall be logged in

9

accordance with the Court's Privileged Materials Order, Rule 502(d), and all parties shall continue to comply with the Protective Order (dkt. 176) regarding produced information and documents.

### 11. Confidentiality of Data

To the extent that the PFS or DFS requires the responding party to provide confidential documents or information, the disclosure shall be governed by the Protective Order and Stipulation and Order Re: Plaintiffs Who Wish to Proceed Anonymously (dkt. 174).

### 12. Scope of Depositions and Admissibility of Evidence

Nothing in the PFS or DFS shall be deemed to limit the scope of inquiry at depositions and admissibility of evidence at trial. The scope of inquiry at depositions shall remain governed by the Federal Rules of Civil Procedure. The Federal Rules of Evidence shall govern the admissibility of information contained in responses to the PFS and DFS and no objections are waived by virtue of providing information in any PFS or DFS.

### 13. Rules Applicable to Plaintiffs' Authorizations

As set forth above, Authorizations together with copies of such records, to the extent that those records or copies thereof are in a Plaintiff's possession, custody, or control, shall be provided with the PFS at the time that the Plaintiff is required to submit a PFS pursuant to this Order.

In addition to the addressed Authorizations, Plaintiff's counsel shall also maintain in their file unaddressed, executed Authorizations. Plaintiff's counsel shall provide executed Authorizations to counsel for the MDL Defendants (or communicate an objection to said request for authorizations) within 14 days of a request for such Authorizations.

Should Plaintiffs provide Authorizations that are undated, this shall not constitute a deficiency or be deemed to be a substantially non-complete PFS. Defendants (or the applicable records vendor) have permission to date (and where applicable, re-date) undated Authorizations before sending them to records custodians.

If an agency, company, firm, institution, provider, or records custodian to whom any Authorization is presented refuses to provide records in response to that Authorization, Uber (or the applicable records vendor) shall notify a Plaintiff's individual representative counsel and a designated individual from MDL Liaison Counsel. Upon notification, counsel shall work together in good faith to resolve the records issue.

In the event a records custodian requires a proprietary authorization or other particular form, Uber (or the applicable records vendor) will provide it to Plaintiff's individual representative counsel who shall thereafter execute and return the proprietary authorization or other particular form within 14 days.

Uber or its designees (including the applicable records vendor) shall have the right to contact agencies, companies, firms, institutions, or providers to follow up on record copying or production.

Counsel for each Plaintiff will have the right to obtain copies of all documents Uber receives pursuant to Authorizations provided by that Plaintiff. The Parties will meet and confer regarding the process and terms of Uber (and/or the applicable records vendor) providing copies of documents obtained.

### 14. Stipulated Revisions

If, in light of the Court's rulings, the parties wish to stipulate to limited amendments of the fact sheets or amendments to this Pretrial Order, they may do so by filing a stipulation on the docket. Revisions will be subject to the Court's approval. The Court will not revise either this Order or the fact sheets unless the parties agree on a given change. The Courtroom Deputy will email Word versions of the fact sheets to the parties.

**IT IS SO ORDERED.**

Dated:  October ___, 2025

_____
CHARLES R. BREYER
United States District Judge

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

# Exhibit 1

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION | MDL No. 3084 CRB |
| | **PLAINTIFF FACT SHEET** |
| This Document Relates to: | |
| ALL ACTIONS | |

## <u>PLAINTIFF FACT SHEET</u>

**CASE NUMBER:** _____

**PLAINTIFF NAME:** _____
*on behalf of (if applicable):* _____
*relationship (if applicable):* _____

## <u>GENERAL INSTRUCTIONS</u>

Pursuant to the Order Regarding Fact Sheet Implementation entered in the above-captioned litigation, a completed Plaintiff Fact Sheet ("PFS") shall be provided for each individual asserting legal claims in the above captioned lawsuit. Each question must be answered in full. If you do not know or cannot recall the information needed to answer a question, please explain that in the response to the question and include the diligent efforts you have made to obtain the information. **<u>Please do not leave any questions unanswered or blank.</u>**

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Additional Space for Completeness

In filling out any section or sub-section of this form, additional sheets of paper should be used and submitted as necessary to provide complete and accurate information.

Accuracy and Supplementation

The Plaintiff completing this Plaintiff Fact Sheet is under oath and must provide information that is true and correct to the best of her or his knowledge, information, and belief. Plaintiff is under an obligation to supplement these responses consistent with the Federal Rules of Civil Procedure.

Use of this Information

All responses herein are CONFIDENTIAL and subject to the Protective Order entered in this matter. **Defendants will not contact any health care provider identified in this Plaintiff Fact Sheet, other than for the purpose of seeking records pursuant to authorizations signed by Plaintiff, without Plaintiff's consent or Court Order.**

## <u>DEFINITIONS</u>

The following definitions shall apply to this PFS:

"You" and "Your" refers to the Plaintiff, listed above, who is completing this fact sheet, as well as her/his/their agents, representatives, and all other natural persons or entities acting on her/his behalf; provided that if the Plaintiff has filed this lawsuit on behalf of another (e.g., a decedent or a minor), then "You" and "Your" refers to the person on whose behalf this lawsuit was filed. In such a case, the Plaintiff should identify at the top of this page the person on whose behalf the case was filed and the Plaintiff's relationship to that person (e.g., guardian, administrator of estate, etc.).

"Driver" refers to the person who You allege, in the complaint filed in this action, committed sexual misconduct or assault against You.

"Incident" refers to all events that You allege, in the complaint filed in this action, constituted sexual misconduct or assault against You.

"Trip" refers to any ride that You, or another person on Your behalf or for Your benefit, requested through the rider version of the Uber Application around the time of the Incident.

"Health Care Provider" means any facility or person involved in the evaluation, diagnosis, care, or treatment of You, including without limitation any such hospital; clinic; medical center; physician's office; infirmary; medical or diagnostic laboratory; pharmacy; counselor; x-ray department; physical therapy department; rehabilitation specialist; physician; psychiatrist; physical therapist; osteopath; homeopath; chiropractor; psychologist; occupational therapist; nurse; herbalist; emergency responder including EMT, paramedic, or firefighter; social worker; or other facility or person that provides medical, dietary, psychiatric, mental, emotional, or psychological evaluation,

3

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

diagnosis, care, treatment, or advice. This definition also includes professionals and facilities that may have treated, examined, evaluated, diagnosed, or otherwise cared for You as part of a Sexual Assault Response Team exam, a Sexual Assault Forensic Exam, or a Sexual Assault Nurse Exam.

## CASE INFORMATION

1.    Please state the following for the civil action that Plaintiff filed:

    a.  Case number: _____

    b.  Pseudonym used in the Complaint: _____

    c.  Name of principal attorney representing Plaintiff: _____
    _____

## YOUR PERSONAL INFORMATION

2.    Name (Last, First, Middle): _____

3.    Maiden name (if applicable) or other names used and dates You used those names: _____
_____

4.    Current address: _____

5.    City and state of residence at time of Incident: _____

6.    Date of birth: _____

7.    From two years prior to the Incident through the present, please identify the employers for whom You worked; Your job title; Your responsibilities or duties; as well as the city, state, and dates of employment for each employer (use additional pages as necessary):

**Employer No. 1**
       i.    Name of Employer: _____
      ii.    Location of Employer (city, state): _____
    iii.    Dates of Employment: _____
    iv.    Job Title: _____
     v.    Responsibilities or Duties: _____

**Employer No. 2**
       i.    Name of Employer: _____
      ii.    Location of Employer (city, state): _____
    iii.    Dates of Employment: _____
    iv.    Job Title: _____
     v.    Responsibilities or Duties: _____

8.    Check the box for the highest level of education You attained:

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

☐ Some High School

☐ High School Graduate/GED

☐ Some College

☐ Bachelor's Degree

☐ Associate Degree

☐ Master/Doctorate/Postgraduate Degree

☐ Other: _____

## **INFORMATION AS TO THE INCIDENT**

9.  Date of the Incident (Please provide the day, month, and year. If You do not recall the day, month, and year, please provide as much information as You can remember): _____
    _____

10. State the name, phone number, and email address associated with the Uber account through which the ride at issue was arranged, if known:

    a.  Name (last, first, middle): _____

    b.  Phone Number: _____

    c.  Email Address: _____

11. To the best of Your recollection, did the Driver take You to the requested destination for the Trip? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

If No, please explain: _____

12. Did You and the Driver communicate about the route the Driver took during Your ride? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

    a.  If You recall You and the Driver communicating about the route, please describe those communications here: _____
        _____
        _____

13. If You know or recall, did the Driver make any stops or pull over, other than at the requested destination for the Trip? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

    a.  If *yes*, if You know or recall, where did the Driver stop or pull over? _____
_____

    b.  If *yes*, if You know or recall, did You and the Driver discuss stopping or pulling over before the Driver did so? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

    c.  If You and the Driver did communicate about stopping or pulling over at a location other than the requested destination, if You know or recall, please describe those communications here: _____
_____

14.    Did the Driver end the Trip at a location other than the requested destination? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

    a.  If *yes*, if You know or recall, where did the Driver end the Trip?_____
_____

    b.  If *yes*, if You know or recall, did You and the Driver communicate about ending the Trip at a location other than the requested destination before the Driver did so? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

    c.  If You and the Driver did communicate about ending the Trip at a location other than the requested destination, if You know or recall, please describe those communications here: _____
_____

15.    Did You communicate with the Driver in a written form outside of the Uber App, including text messages, social media messages or email? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

    a.  **If you answered *yes* to this question, please provide all of these communications to your lawyer for production.**

16.    If You know or recall, state the time and location (including, city, state, zip, and nearest street address or, if unknown, the closest intersection) of the Incident: _____
_____

17.    If You know the first or last name of the Driver (or both), please state them: _____
_____
_____

18.    Did you see a camera inside the Driver's vehicle? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

19.    Did you take any videos or audio recording or photos of the Driver, the inside or outside of the Driver's Vehicle, or of any part of the Subject Incident? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

    a.    **If you answered *yes* to this question, please provide all of these photos and recordings to your lawyer for production.**

## **THE INCIDENT**

20.    Please describe the Incident in Your own words (attach additional sheets as needed): ____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

21.    Which of the following acts occurred during the Incident? Please select all that apply and where relevant select whether contact was over or under clothing:

    ☐ Lewd and/or Inappropriate Comments or Questions or Gestures[1]

    ☐ Verbal Threat of Sexual Assault[2]

    ☐ Masturbation and/or Indecent Exposure[3]

---

[1] This category is defined to include, but is not limited to, the following: asking specific, probing, and personal questions of the user; making uncomfortable comments on the user's appearance; making sexually suggestive gestures at the user; and asking for a kiss, displays of nudity, sex, or contact with a sexual body part.

[2] This category is defined to include directing verbal explicit/direct threats of sexual violence at a user.

[3] This category is defined to include exposing genitalia and/or engaging in sexual acts in the presence of a user.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

☐ Attempted Touching of a Non-Sexual Body Part[4]

    ☐ Over the Clothes[5]

    ☐ Under the Clothes[6]

☐ Attempted Kissing of a Non-Sexual Body Part[7]

☐ Attempted Touching of a Sexual Body Part Not Involving Penetration[8]

    ☐ Over the Clothes

    ☐ Under the Clothes

---

[4] This category is defined to include, without consent from the user, attempting to touch, but failing to come into contact with, any non-sexual body part (hand, leg, thigh) of the user.

[5] This category is defined to include any attempted touch over any piece of clothing on the user (e.g., pants, shirt, bra, underwear) as well as any attempted touch on an area that in no way has clothing covering it (e.g., parts of the thigh when wearing shorts).

[6] This category is defined to include any attempted touch on a part of a user's body which is covered by clothing. It does not include an attempted touch on an area that does not have clothing covering it in the first instance (e.g., parts of the thigh when wearing shorts).

[7] This category is defined to include, without consent from the user, attempting but failing to kiss, lick, or bite any non-sexual body part (e.g., hand, leg, thigh) of the user.

[8] This category is defined to include, without explicit consent from the user, attempting to touch, but failing to come into contact with, any sexual body part (i.e., breast, genitalia, mouth, buttocks) of the user. It does not include attempts at penetration.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

☐ Attempted Kissing of a Sexual Body Part[9]

☐ Touching of a Non-Sexual Body Part[10]

    ☐ Over the Clothes[11]

    ☐ Under the Clothes[12]

☐ Kissing of a Non-Sexual Body Part[13]

☐ Attempted Sexual Penetration Including Oral Copulation[14]

☐ Touching of a Sexual Body Part Not Involving Penetration[15]

    ☐ Over the Clothes

    ☐ Under the Clothes

☐ Kissing of a Sexual Body Part[16]

---

[9] This category is defined to include, without consent from the user, attempting but failing to kiss, lick, or bite on either the breast or buttocks of the user. This also includes attempts to kiss on the lips and attempts to kiss while using tongue.

[10] This category is defined to include, without explicit consent from the user, touching or forcing a touch on any non-sexual body part (e.g., hand, leg, thigh) of the user.

[11] This category is defined to include any touch over any piece of clothing on the user (e.g., pants, shirt, bra, underwear) as well as any touch on an area that in no way has clothing covering it (e.g., parts of the thigh when wearing shorts).

[12] This category is defined to include any touch under clothing which causes contact with the user's skin. It does not include a touch on an area that does not have clothing covering it in the first instance (e.g., parts of the thigh when wearing shorts).

[13] This category is defined to include, without consent from the user, any kiss, lick, or bite, or forced kiss, lick, or bite on any non-sexual body part (e.g., hand, leg, thigh) of the user.

[14] This category is defined to include, without explicit consent from a user, attempting but failing to penetrate, no matter how slight, the vagina or anus of a user with any body part or object. This includes attempted penetration of the user's mouth with a sexual organ or sexual body part. This excludes kissing and attempted kissing with tongue.

[15] This category is defined to include, without explicit consent from the user, touching or forcing a touch on any sexual body part (i.e., breast, genitalia, mouth, buttocks) of the user. It does not include penetration.

[16] This category is defined to include, without consent from the user, any kiss, lick, or bite, or forced kiss, lick, or bite on either the breast or buttocks of the user. This also includes kissing on the lips and kissing while using tongue.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

☐ Sexual Penetration Including Oral Copulation[17]

☐ Kidnapping[18]

☐ Other. If *other*, please describe: _____

22.  If You know or recall, did the Driver engage in any of the conduct described in Questions 16 and 17 while you were inside the vehicle? Yes: ☐ No: ☐:  Do Not Know/Do Not Recall: ☐

    a.  If *yes*, where in the vehicle were you located during the Incident? Front Seats: ☐ Back Seats: ☐ Both: ☐ Do Not Know/Do Not Recall: ☐

    b.  If *no*, if You know or recall, did all conduct described in Questions 19 and 20 occur only before You entered and/or after you exited the Driver's vehicle?

    Only before entering the Driver's vehicle: ☐

    Only after exiting the Driver's vehicle: ☐

    Both before and after exiting the Driver's vehicle: ☐

### **WITNESSES**

23.  If You know or recall, was there another passenger in the vehicle with You at the time of the Incident? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

    a.  If *yes*, if You know or recall, please identify the other passenger(s) by name, full address and phone number, if known: _____
_____
_____
_____

    b.  If *yes*, if You know or recall, did You know the other passenger(s) before You or someone on Your behalf requested the Trip? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

---

[17] This category is defined to include, without explicit consent from a user, penetration, no matter how slight, of the vagina or anus of a user with any body part or object. This includes penetration of the user's mouth with a sexual organ or sexual body part. This excludes kissing with tongue.

[18] This category is defined to include abduction, child abduction, false imprisonment, human trafficking, unlawful restraint, and unlawful/forcible detention.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

24.    If You know or recall, did anyone besides You and the Driver hear, see, or otherwise witness the Incident at the time it occurred? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

25.    If You know or recall, did You or someone on Your behalf notify any of the following entities of the Incident (Please check all that apply): Uber: ☐ Law Enforcement: ☐ Healthcare Professional (non-therapist/counselor/psychiatrist/psychologist): ☐ Therapist/Counselor/Psychiatrist/Psychologist: ☐

26.    If You notified Uber, or if You know or recall someone on Your behalf notifying Uber, please answer the following questions:

    a.    If You know or recall, when did You or someone on Your behalf notify Uber of the Incident? _____

    b.    If You know or recall, how did You or someone on Your behalf notify Uber? Phone Call☐ Email: ☐
       In-App Notification: ☐ Do Not Know/Do Not Recall: ☐ Other: ☐. If *other*, please describe: _____
_____
_____

    c.    If You know or recall someone who notified Uber on Your behalf, state that person's name, address, and phone number, if known: _____
_____

11

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

27.  A report to law enforcement is not necessary to pursue your claim, but if You or someone on Your behalf notified law enforcement, please answer the following questions to the best of Your ability:

   a. To the best of Your recollection, when did You or someone on Your behalf notify law enforcement of the Incident? _____

   b. If You know someone who notified law enforcement on Your behalf, state that person's name and phone number to the best of Your ability: _____
   _____

   c. To the best of Your recollection, list all law enforcement agencies that were notified about the Incident: _____
   _____

   d. To the best of Your recollection, please state whether You testified in any criminal hearing(s) or trial(s) in connection with the Incident: _____
   _____

28.  Have You spoken to any of the following about the Incident (Please check all that apply): Spouse: ☐ Romantic Partner (unmarried): ☐ Family Member: ☐ Friend: ☐ Other: ☐

29.  Have You posted information regarding the Incident on a website or on social media (e.g., a social media site, a blog, a personal website, etc.), including anonymously? Yes: ☐ No: ☐ Do Not Know/Do Not Recall: ☐

   a. If *yes*, list all such websites or social media, and, where applicable, specify the username/account handle You used to make the post: _____
   _____
   _____
   _____
   _____

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

30. Have You communicated with any of the following about the Incident (Please check all that apply): Spouse: ☐ Romantic Partner (unmarried): ☐ Family Member: ☐ Friend: ☐ Other: ☐

    a. If You checked any of the above boxes, please fill out the following chart to identify each individual or other entity You have communicated with about the Incident and their last known contact information. Attach additional sheets as necessary. Do not list the attorneys representing you in this case or Uber. To the extent that You do not know the name of any of the individuals or other entities You have communicated with, please provide any identifying information that You are aware of (e.g., neighbor, coworker, business colleague). As discovery is ongoing, You must supplement this form if and when You communicate with additional individuals about the Incident.

| Name or Other Identifying Information of Individual or Other Entity You Have Communicated with About the Incident |
| --- |
| |
| |
| |
| |
| |
| |
| |

### INJURIES AND DAMAGES

31. Did You suffer mental or emotional harm caused in whole or in part by the Incident? Yes: ☐ No: ☐

    a. If you answered *yes* to Question 31, please describe:_____
_____
_____
_____
_____
_____
_____
_____
_____

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

_____

_____

32.     Have You  disclosed the Subject incident to any Health Care Providers? Yes: ☐ No: ☐

33.     Have you sought treatment from a psychologist, therapist, psychiatrist or other mental healthcare provider for any of the above listed conditions that were caused in whole or in part by the subject Incident? Yes: ☐ No: ☐

34.     Have you been diagnosed with any psychiatric, mental or behavioral conditions that were caused in whole or in part by the subject Incident by a Healthcare Provider?  Yes: ☐ No: ☐

35.     Have you been diagnosed with or treated for an aggravation of any pre-existing  psychiatric, mental or behavioral conditions that were caused in whole or in part by the subject Incident by a Healthcare Provider?  Yes: ☐ No: ☐

36.     Did You suffer physical harm caused in whole or in part by the subject incident? Yes: ☐ No: ☐

        a. If you answered _yes_ to Question 36, please describe: _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____

37.     Were You treated by emergency responders, including police officers, EMT, fire fighters, or paramedics, as a result of the Incident? Yes: ☐ No: ☐

38.     Did You undergo a medical exam to determine any physical injuries or the presence of any evidence (e.g., a Sexual Assault Response Team "SART" exam, a Sexual Assault Forensic Exam ("SAFE"), or a Sexual Assault Nurse Exam ("SANE"))? Yes: ☐ No: ☐

39.     Have You disclosed the Subject incident to any Health Care Providers that did not treat you for injuries caused by the Subject Incident ? Yes: ☐ No: ☐

40.     Have You ever been diagnosed and/or treated by any Health Care Provider for any injury or condition caused by the Subject Incident, including mental health conditions such as depression or PTSD  Yes: ☐ No: ☐

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

    a. If You answered *Yes* to questions 32, 33, 34, 35, 37, 38, 39 or 40 please identify the providers who diagnosed You with any conditions caused in whole or part by the subject incident, treated You for any injuries or conditions caused by the incident, or to whom You disclosed the subject incident. Please continue to supplement this form if and when You are treated by additional providers.

| Name of Health Care Provider and Facility | Diagnosis Treatment, or Examination (if known) | Approximate Date(s) of Diagnosis, Treatment, or Examination | Please check this box for any conditions that pre-existed the Subject Incident that have been aggravated by the Subject Incident |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

41. Do You claim or expect to claim that You lost earnings or suffered impairment of earning capacity as a result of any physical, mental, or emotional injury You allege? Yes: ☐ No: ☐

42. Do You seek or expect to seek to recover any out-of-pocket costs, including medical expenses covered by insurance, that You have incurred relating to the diagnoses and/or treatment of any physical, mental, or emotional injuries You allege You sustained as a result of the Incident? Yes: ☐ No: ☐

## **AUTHORIZATIONS**

Plaintiff agrees to produce copies of signed and dated authorizations for the releases listed below. Plaintiff agrees that this PFS shall not be considered complete unless and until signed authorization forms are submitted. Plaintiff agrees that any document request for records to be produced by Plaintiff will not preclude Defendant from also collecting such records directly from the source pursuant to these signed authorizations.

Attach the following documents to this PFS as instructed below, making certain that all releases are signed and dated:

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

1) If You answered *yes* to Question 36, please execute the Limited Authorization to Disclose Health Information (Ex. A). Leave the "To" field blank.

2) If You answered *yes* to Questions 33, 34, or 35, please execute the Authorization to Disclose Psychiatric, Psychotherapy, and Mental Health Information (Ex. B). Leave the "To" field blank.

3) If You indicated that You or someone on Your behalf notified law enforcement of the Incident in Question 27, please execute the Authorization to Disclose Law Enforcement Records (Ex. C). Leave the "To" field blank.

## **<u>VERIFICATION</u>**

I, _____, hereby state that I have reviewed the Plaintiff Fact Sheet. The statements set forth therein are true and correct to the best of my knowledge, information, and belief. I make this verification based on my personal knowledge. I also declare that I have completed and submitted all required authorizations listed above. I declare under penalty of perjury that the foregoing is true and correct. I understand that I am under an obligation to supplement these responses.

Executed on the _____ day of _____, 2024.


_____

# Exhibit A

(Limited Authorization to Disclose Health Information)

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

**<u>AUTHORIZED IN CONNECTION WITH</u>**

*IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION*
Northern District of California
No. 3:23-md-3084-CRB

**<u>LIMITED AUTHORIZATION TO DISCLOSE HEALTH INFORMATION</u>**
(Pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"))

TO: _____
(Health Care Provider)

Please complete all sections of this release form below. Please leave the "To" field above blank.

Patient's Name: _____

Former/Alias/Maiden Name of Patient: _____

Patient's Date of Birth: _____

Patient's Social Security Number: _____

Patient's Address: _____

<u>Ordering Period: Date of Subject Incident: _____ to Present.</u>

I, _____, hereby authorize any Health Care Provider,[1] including the one listed above, to disclose and furnish to Uber Technologies, Inc. ("Uber") and/or

_____

[1] "Health Care Provider" means any facility or person involved in the evaluation, diagnosis, care, or treatment of You, including without limitation any such hospital; clinic; medical center; physician's office; infirmary; medical or diagnostic laboratory; pharmacy; counselor; x-ray department; physical therapy department; rehabilitation specialist; physician; psychiatrist; physical therapist; osteopath; homeopath; chiropractor; psychologist; occupational therapist; nurse; herbalist; emergency responder including EMT, paramedic, or firefighter; social worker; or other facility or person that provides medical, dietary, psychiatric, mental, emotional, or

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

its duly assigned agents, including Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss") and its attorneys, employees, and agents, the protected medical and/or insurance information listed below for the purpose of review and evaluation in connection with a legal claim.

## I.     Health Information to Be Disclosed

Disclose any and all protected medical and/or insurance information and records within the requested time period . For the purposes of this authorization "medical and/or insurance information and records" shall be given the broadest definition allowed under applicable federal and state law, including but not limited to:

- Records of inpatient, outpatient and emergency room treatment, all clinical charts, reports, documents, correspondence, phone notes, test results, statements, questionnaires/histories, office and doctor's handwritten notes, and letters or records received by other physicians.

- All laboratory, histology, cytology, pathology, radiology, CT Scan, MRI, echocardiogram, and catheterization reports, pathology/cytology/histology/autopsy/immunohistochemistry specimens, cardiac catheterization videos/CDs/films/reels, and echocardiogram videos.

- All pharmacy/prescription records, including NOC numbers and drug information handouts/monographs.

- All billing records, including all statements, itemized bills, and insurance records.

- All records of any samples of prescription medicines provided.

- **Notwithstanding the broad scope of the above disclosure requests, this authorization form does not authorize the disclosure of notes or records pertaining to psychiatric, psychological, or mental health treatment or diagnosis, including psychotherapy notes, as such terms are defined by HIPAA, 45 CFR § 164.501.**

I expressly request that any Health Care Provider identified above disclose full and complete protected medical information. I authorize disclosure of the above-specified information to Paul, Weiss and to its attorneys, employees, and agents, who have agreed to pay reasonable charges incurred by the Health Care Provider to supply copies of such records.

---

psychological evaluation, diagnosis, care, treatment, or advice. This definition also includes professionals and facilities that may have treated, examined, evaluated, diagnosed, or otherwise cared for You as part of a Sexual Assault Response Team exam, a Sexual Assault Forensic Exam, or a Sexual Assault Nurse Exam.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

1. To the Health Care Provider: **this authorization is being forwarded by, or on behalf of, attorneys for the defendants. You are not authorized to discuss any aspect of the above-named person's medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on his or her medical or physical condition, unless you receive an additional authorization permitting such discussion. Subject to all applicable legal objections, this restriction does not apply to discussing my medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on my medical or physical condition at a deposition or trial.**

2. I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the Health Care Provider at the Health Care Provider's address. I understand the revocation will not apply to information that has already been released in response to this authorization. Cancellation, revocation, or modification will be valid only once the Health Care Provider receives written notification of such cancellation, revocation, or modification. A copy of said notification shall also be sent to Paul, Weiss. I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.

3. I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I need not sign this form in order to assure treatment, payment, enrollment, or eligibility for benefits.

4. I understand I may inspect or copy the information to be used or disclosed as provided in 45 CFR § 164.524.

5. I understand that any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules, including HIPAA. If I have questions about disclosure of my health information, I can contact the Health Care Provider.

6. A notarized signature is not required. 45 CFR § 164.508. A copy of this authorization may be used in place of an original.

**II.    Form of Disclosure**

_____ An electronic record
_____ Hard copy

**III.    Duration of Authorization**

This authorization shall be effective until January 1, 2028, or until the conclusion of my case in *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 3:23-md-03084-CRB (MDL No. 3084), whichever date is later in time.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

**IV.     Signature**

Signature: _____        Date: _____

Print your name: _____

If this form is being completed by a person with legal authority to act on an individual's behalf, such a legal guardian or health care agent, please complete the following information:

Name of person completing this form:        _____

Signature of person completing this form:        _____

Describe how this person has legal authority to sign this form:

_____

# Exhibit B

(Authorization to Disclose Psychiatric, Psychotherapy, and Mental Health Information)

**AUTHORIZED IN CONNECTION WITH**

*IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION*
Northern District of California
No. 3:23-md-3084-CRB

**AUTHORIZATION TO DISCLOSE PSYCHIATRIC, PSYCHOTHERAPY, AND
MENTAL HEALTH INFORMATION**
(Pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"))

TO: _____
(Health Care Provider)

Please complete all sections of this release form below. Please leave the "To" field above blank.

Patient's Name: _____

Former/Alias/Maiden Name of Patient: _____

Patient's Date of Birth: _____

Patient's Social Security Number: _____

Patient's Address: _____

Requested Period: Date of Incident:_____ to present and ten (10) years prior to
Date of Incident.

I, _____, hereby authorize any Health Care Provider,[1]
including the one listed above, to disclose and furnish to The Marker Group the protected medical

_____

[1] "Health Care Provider" means any facility or person involved in the evaluation, diagnosis, care, or treatment of You, including without limitation any such hospital; clinic; medical center; physician's office; infirmary; medical or diagnostic laboratory; pharmacy; counselor; x-ray department; physical therapy department; rehabilitation specialist; physician; psychiatrist; physical therapist; osteopath; homeopath; chiropractor; psychologist; occupational therapist; nurse; herbalist; emergency responder including EMT, paramedic, or firefighter; social worker; or other facility or person that provides medical, dietary, psychiatric, mental, emotional, or psychological evaluation, diagnosis, care, treatment, or advice. This definition also includes

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

and/or insurance information listed below for the purpose of review and evaluation in connection with a legal claim. The Marker Group will maintain all records available via a secure share file site. Notification of the records received shall be made to both Plaintiff's Identified Counsel and to Uber Technologies, Inc. ("Uber") and/or its duly assigned agents, including Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss") at the following addresses:

Plaintiff's Identified Counsel: [Insert Plaintiff's Counsel name and contact information, including email address where record notification will be sent]

Uber's Counsel, Paul Weiss: [Insert name and contact information, including email address where record notification will be sent.]

Plaintiff's counsel shall have immediate and sole access to these records through The Marker Group's secure share file site to review for privilege. If Plaintiff's counsel asserts privilege in whole or in part to the records, they will notify The Marker Group to hold the records from release to Uber's Counsel. Through The Marker Group's secure share file site, Plaintiff's counsel shall redact privileged records and produce a Privilege Log within 10 days of notification from The Marker Group of receipt of the records. The redacted records and Privilege Log shall then be accessible to Uber's Counsel via The Marker Group's secure share file site.

## I.    Health Information to Be Disclosed

Disclose any and all psychiatric, psychotherapy, and mental health records, notes, and information within the Requested Period. For the purposes of this authorization "psychiatric, psychotherapy, and mental health records, notes, and information" shall be given the broadest definition allowed under applicable federal and state law, including but not limited to:

> Complete copies of all psychotherapy notes as defined by 45 CFR § 164.501, psychiatric records and psychotherapy notes reports, therapist's notes, social worker's records, all medical records, physicians' records, surgeons' records, pathology/cytology reports, laboratory reports, discharge summaries, progress notes, consultations, prescriptions, records of drug abuse and alcohol abuse, physicals and histories, nurses' notes, correspondence, insurance records, consent for treatment, statements of account, itemized bills, invoices, or any other papers concerning any treatment, examination, periods or stays of hospitalization, confinement, diagnosis or other information pertaining to and concerning the physical or mental condition of this patient, or documents containing information regarding amendment of protected health information in the medical records. This listing is not meant to be exclusive.

---

professionals and facilities that may have treated, examined, evaluated, diagnosed, or otherwise cared for You as part of a Sexual Assault Response Team exam, a Sexual Assault Forensic Exam, or a Sexual Assault Nurse Exam.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

I expressly request that any Health Care Provider identified above disclose full and complete protected medical information. I authorize disclosure of the above-specified information to Paul, Weiss and to its attorneys, employees, and agents, who have agreed to pay reasonable charges incurred by the Health Care Provider to supply copies of such records.

1. To the Health Care Provider: **this authorization is being forwarded by, or on behalf of, attorneys for the defendants. You are not authorized to discuss any aspect of the above-named person's medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on his or her medical or physical condition to anyone other than those identified in this Authorization, unless you receive an additional authorization permitting such discussion. Subject to all applicable legal objections, this restriction does not apply to discussing my medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on my medical or physical condition at a deposition or trial.**

2. I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the Health Care Provider at the Health Care Provider's address. I understand the revocation will not apply to information that has already been released in response to this authorization. Cancellation, revocation, or modification will be valid only once the Health Care Provider receives written notification of such cancellation, revocation, or modification. A copy of said notification shall also be sent to Plaintiff's Counsel at the following address: _____

   _____
   and Paul, Weiss. I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy.

3. I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I need not sign this form in order to assure treatment, payment, enrollment, or eligibility for benefits.

4. I understand I may inspect or copy the information to be used or disclosed as provided in 45 CFR § 164.524.

5. I understand that any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules, including HIPAA. If I have questions about disclosure of my health information, I can contact the Health Care Provider.

6. A notarized signature is not required. 45 CFR § 164.508. A copy of this authorization may be used in place of an original.

**II.    Form of Disclosure**

_____ An electronic record uploaded to The Marker Group's secure share file site at:

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

[Insert Share Site Information]
_____ Hard copy, mailed to The Marker Group at: [Insert The Marker Group's mailing address]

**III.    Duration of Authorization**

This authorization shall be effective until January 1, 2028, or until the conclusion of my case in *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 3:23-md-03084-CRB (MDL No. 3084), whichever date is later in time.

**IV.    Signature**

Signature: _____     Date: _____

Print your name: _____

If this form is being completed by a person with legal authority to act on an individual's behalf, such a legal guardian or health care agent, please complete the following information:

Name of person completing this form: _____

Signature of person completing this form: _____

Describe how this person has legal authority to sign this form:

_____

# Exhibit C

(Authorization to Disclose Law Enforcement Records)

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

## **AUTHORIZED IN CONNECTION WITH**

*IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION*
Northern District of California
No. 3:23-md-3084-CRB

## **AUTHORIZATION TO DISCLOSE LAW ENFORCEMENT RECORDS**

TO: _____

(Law Enforcement Agency)

Please complete all sections of this release form below. Please leave the "To" field above blank.

Plaintiff's Name: _____

Former/Alias/Maiden Name of Plaintiff: _____

Plaintiff's Date of Birth: _____

Plaintiff's Social Security Number: _____

Plaintiff's Address: _____

I, _____, hereby authorize any Law Enforcement Agency, including the one listed above, to disclose and furnish to Uber Technologies, Inc. ("Uber") and/or its duly assigned agents, including Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss") and its attorneys, employees, and agents, the information listed below for the purpose of review and evaluation in connection with a legal claim.

**I. Information to Be Disclosed**

Disclose any and all law enforcement records related to the report I or someone on my behalf made regarding all the events that I allege constituted sexual misconduct or assault against me.

For the purposes of this authorization "law enforcement records" shall be given the broadest definition allowed under applicable federal and state law, including but not limited to intake forms, interview notes and recordings, crime scene reports, witness reports, case management documents, criminal complaints, and legal filings. This listing is not meant to be exclusive.

1

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

I expressly request that any Law Enforcement Agency identified above disclose full and complete protected information. I authorize disclosure of the above-specified information to Paul, Weiss and to its attorneys, employees, and agents, who have agreed to pay reasonable charges incurred by the Law Enforcement Agency to supply copies of such records.

## II.    Form of Disclosure

_____ An electronic record or access through an online portal

_____ Hard copy

## III.    Duration of Authorization

This authorization shall be effective until January 1, 2028, or until the conclusion of my case in *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, 3:23-md-03084-CRB (MDL No. 3084), whichever date is later in time.

## IV.    Acknowledgement

I understand that the information used or disclosed pursuant to this authorization carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules.

## V.    Revocation

I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the Law Enforcement Agency at the Law Enforcement Agency's address. I understand the revocation will not apply to information that has already been released in response to this authorization. Cancellation, revocation, or modification will be valid only once the Law Enforcement Agency receives written notification of such cancellation, revocation, or modification. A copy of said notification shall also be sent to Paul, Weiss.

## VI.    Copies

A photocopy of this authorization is to be considered as valid as the original.

## VII.    Signature

Signature: _____    Date: _____

Print your name: _____

2

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

If this form is being completed by a person with legal authority to act on an individual's behalf, such a legal guardian or health care agent, please complete the following information:

Name of person completing this form: _____

Signature of person completing this form: _____

Describe how this person has legal authority to sign this form:

_____

3

# Exhibit 2

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION | MDL No. 3084 CRB |
| ———————————————— | **DEFENDANT'S FACT SHEET** |
| This Document Relates to: | |
| ALL ACTIONS | |

Pursuant to the Fact Sheet Implementation Order entered in the above-captioned litigation, a completed Defendant Fact Sheet ("DFS") shall be provided for each Plaintiff.

Uber must provide information that is true and correct to the best of Uber's knowledge. Uber is under an obligation to supplement these responses consistent with the Federal Rules of Civil Procedure. In the event the DFS does not provide Uber with enough space for it to complete its responses or answers please attach additional sheets. The information in the DFS may, at Uber's discretion, be provided by reference to the Ride Receipt or other documentation. Please identify any documents that Uber is producing as responsive to a question or request by Bates-stamp identifiers. Please do not leave any questions unanswered or blank except as allowed by the instructions below.

## **DEFINITIONS**

The following definitions shall apply to this DFS:

"Account Status Log" means a log or report that includes (to the extent available) the complete history of the driver's status with Uber, including the driver name, status (e.g. applied, active, deactivated, suspended, etc.), status note(s), whether status is current, time and date status began, time and date status ended, flow type (e.g. P2P), time and date flow began and ended.

"Agreements" means any contracts or agreements consented to by the Driver, including, without limitation, any Technology Services Agreements, Platform Access Agreements, Software Licensing Agreements, as well as Service Fee Schedules, driver addenda, and state or local specific addenda.

"Communications," as used herein, includes but is not limitedr to Bliss communications, Exact Target communications, voicemail recordings, recorded calls, and other messages and communications.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

"Communications Log" (aka Comm Log) refers to a spreadsheet log of communications concerning a Driver while logged into the Uber Driver App including (to the extent available) columns entitled timestamp, datstr, message uuid, to user uuid, from user uuid, direction, medium, content summary, and content.

"Driver," unless otherwise specified, refers to the person with registered access to the Driver App who was identified by the Uber App as the driver during the Subject Trip.

"Incident" refers to all events that Plaintiff alleges, in the complaint filed in this action, constituted sexual misconduct or assault against Plaintiff.

"Plaintiff" means the allegedly injured party who has filed the complaint in this action, provided that if the Plaintiff has filed the complaint on behalf of another (e.g., a decedent or a minor), then "Plaintiff" shall refer to the person on whose behalf the lawsuit was filed.

"Ride Receipt" means the standard trip summary and payment receipt generated by Uber, summarizing information related to the Subject Trip, including e.g., the Chronicle map snapshot, the start and end date and time, the location that the Plaintiff entered the vehicle, the end location, the name (or first name) of the Driver, the license plate of the vehicle (though the appearance and information on the receipt may vary depending on when and where the trip occurred).

"The Date of Your Safety Taxonomy Implementation" as used herein shall refer to the date by which Uber had fully implemented its Sexual Misconduct and Violence Taxonomy (which implementation is described in Uber's 2018 Safety Report as occurring sometime in late 2018).

"Subject Trip" means the ride or trip the Plaintiff has identified as connected with Plaintiff's legal claims in the above captioned lawsuit.

"Ticket" as used herein means a customer support interaction or series of related customer support interactions (including but not limited to those which Uber sent, received, tracked, or organized via Uber's Zendesk software, JIRA software, Bliss software, or another software program). Production of a Ticket, where required by this form, must include production of all information attached or linked to the Ticket, including without limitation the Chronicle map snapshot, Voyager data, comments, names of Uber personnel reflected in the tickets, and all Communications connected with the ticket.

"Trip History Report" refers to the log of all past ride requests a Driver has accepted, including (to the extent available) the date and time of each action (ride request, ride acceptance, begin trip, drop off), the status of the trip (whether completed, canceled, failed, etc.), the rating if any given by the rider to the Driver, the driver tools link, trip tools link, business line, city name, gross driver original fare, gross driver adjusted fare, all tags, and any feedback given by the rider via the App.

"Uber," "You," "Your" or "Yours" includes Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC, and their predecessors.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

## I.    CASE INFORMATION

1.    Case Number:

2.    Pseudonym and Real Name of Plaintiff (if known):

## II.    PLAINTIFF INFORMATION

3.    Has Uber identified an account for Plaintiff (Yes/No)?

   If Your answer to the above question is "Yes," please answer the following:

   a.    What was the rider UUID (or other unique identifying number) for Plaintiff:

   b.    What was the date of Plaintiff's first trip pairing:

   c.    What was the date of Plaintiff's last trip pairing:

   d.    What was Plaintiff's total number of Uber Trips:

4.    Has Plaintiff ever been a driver on the Uber Platform (Yes/No)?

   If Your answer to the above question is "Yes," please answer the following:

   a.    What was the date of Plaintiff's first trip pairing as a driver:

   b.    What was the date of Plaintiff's last trip pairing as a driver:

   c.    What was Plaintiff's total number of trips as a driver:

## III.    UBER TRIP INFORMATION

5.    Were You able to confirm that the Subject Trip occurred (Yes/No)?

   **If Your answer to the above question is "No," You need not answer any of the other questions on this DFS.**

6.    If Plaintiff submitted ride information required by PTO No. 5 in lieu of a bona fide ride receipt, please provide either:

   a.    a copy of the bona fide ride receipt, or

   b.    a written explanation as to: (1) why the specific ride receipt cannot be located by Uber; (2) if available, (a) the date of the ride, (b) the full name of the driver; (c) the starting and ending locations of the ride; and (3) what additional information Uber needs to locate the subject missing ride receipt, if applicable.

7.    Trip UUID (or other internal identifying number) used by Uber to identify the Subject Trip:

8.    Please provide all GPS data in Uber's possession relating to the Subject Trip.

9.    Produce (if available) the Chronicle Trip map for the Subject Trip displaying (to the extent available) the date, time, and location where the Subject Trip began and ended, the Driver acceptance location, the Preferred Route, the Actual Route, and the time and location the trip was cancelled (if applicable).

3

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

10. Was the Subject Trip a Pool Ride (i.e., a ride in which multiple riders requested an Uber ride) (Yes/No)?

11. If the Subject Trip was a Pool Ride, were any other passengers picked up (Yes/No)?

12. Did Uber obtain statements from anyone about the Subject Trip (Yes/No)?

## IV.    **DRIVER INFORMATION**

13. Full name of the Driver:

14. Date of Birth of the Driver:

15. Last two digits of the SSN of the Driver:

16. Driver UUID (or other unique identifying number used by Uber if UUID was not used):

17. Driver's License Number of the Driver:

18. Address of the Driver as indicated on Driver's license at time the Driver was approved to drive:

19. Last known address of the Driver:

20. Was the person driving during the Subject Trip the same person identified by Uber on the Ride Receipt (Yes/No)?

    a. If Your answer to the above question is "No," please state (if known) the Driver's license number, last known address, date of birth, and last two digits of the SSN of the person who was actually driving during the Subject Trip.

21. Was the vehicle used during the Subject Trip the same vehicle identified by Uber on the Ride Receipt (Yes/No)?

    a. If Your answer to the above question is "No," what was the license plate number (if known) of the vehicle actually used during the Subject Trip:

22. Was the Subject Trip an Uber Black ride (Yes/No)?

    a. If Your answer to the above question is "Yes," please state the Company that operated the Uber Black account and whether the driver was part of an Uber Black Fleet.

    a. Produce the complete Background Check Results in Your possession for each and every background check conducted on the Driver.

23. Produce a complete log of Agreements the Driver accepted with Uber, including the name of each Agreement and the date and time each Agreement was accepted (if known).

24. Produce a complete Account Status Log for the Driver.

25. Produce the Driver "Tax Summary" for every year the Driver accepted

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

any rides using the Uber Driver App.

26.  Produce all Tickets for the Driver which post-date the Date of Your Safety Taxonomy Implementation and which relate to any of the following categories from Uber's Safety Taxonomy: (1) Sexual Assault, (2) Vehicle Crash or Claim, (3) Theft or Robbery, (4) Sexual Misconduct, (5) Physical Altercation, (6) Verbal Altercation, (7) Substance Abuse, (8) Inappropriate Post-Trip Contact, (9) Law Enforcement / Regulatory, (10) Potential Safety Concern.

27.  Produce all Tickets for the Driver which predate the Date of Your Safety Taxonomy Implementation, initiated by a Rider or by a third party on the Rider's behalf, that relate to any form of misconduct or inappropriate behavior involving the Driver, including driving under the influence and complaints of interpersonal conflict (e.g., verbal altercations, theft, sexual misconduct, sexual assault, etc.), but excluding speeding and other forms of unsafe driving.

28.  Produce all Communications exchanged between Uber and LERT, Uber and law enforcement, Uber and prosecutors, and/or Uber and Lyft, related to alleged misconduct and/or crimes by the Driver.

29.  What is the total number of trips the Driver has completed using the Uber Driver App?

30.  What is the Driver's average star rating on the Uber Driver App?

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

V.    **INCIDENT**

31. Did Plaintiff or someone on Plaintiff's behalf report the Incident to Uber (Yes/No)?

If Your answer to the above question is "Yes," please answer the following.

   a.   On what date was the report made:

   b.   What is the name of the person who reported the Incident to Uber?

   c.   What was reported to Uber, including the category of conduct-based taxonomy of the Incident as first reported (if applicable)?

   d.   Please produce all Communications, regarding the Incident, between Uber and Plaintiff, Uber and the Driver, or Uber and any other witness to the Incident.

32.   Did You receive any message, report, or transmission from any law enforcement agency regarding the Subject Trip or the Driver of the Subject Trip relating to the Incident (Yes/No)?

33.   Was legal process submitted by any law enforcement agency regarding the Subject Trip or the Driver of the Subject Trip relating to the Incident (Yes/No)?

## CERTIFICATION

The foregoing answers were prepared with the assistance of a number of individuals, including counsel, upon whose advice and information I relied. I declare under penalty of perjury subject to 28 U.S.C. 1746 that all of the information provided in this Defendant's Fact Sheet is true and correct to the best of my knowledge.

_____    _____    _____
Signature                              Print Name/Title                      Date