Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*, No. 23-cv-06708 | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN CHANDLER; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Judge:     Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Judge:     Mag. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

## NOTICE OF MOTION AND MOTION TO EXCLUDE

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, excluding the opinions of Plaintiffs' expert John Chandler.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated:  November 10, 2025                        KIRKLAND & ELLIS LLP


By:  */s/ Laura Vartain Horn*

*Counsel for Uber*

2
DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN CHANDLER
Case No. 3.23-md-03084-CRB (LJC)

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.    INTRODUCTION ................................................................................................................1

II.   BACKGROUND ................................................................................................................1

III.  STATEMENT OF THE ISSUES TO BE DECIDED ........................................................2

IV.   LEGAL STANDARD ........................................................................................................2

V.    ARGUMENT ......................................................................................................................3

      A.    Dr. Chandler's Expert Report Is Unreliable And Should Be Excluded...................3

      B.    Dr. Chandler's Rebuttal Expert Report Is Unreliable And Should Be Excluded. .....12

VI.   CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Corellium, LLC*,
  No. 19-81160-CV, 2020 WL 5417197 (S.D. Fla. July 30, 2020), *report and
  recommendation adopted*, No. 19-81160-CIV, 2020 WL 7385752
  (S.D. Fla. Dec. 16, 2020) .......................................................................................................14

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  613 F. Supp. 3d 1308 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) ............................7

*Burrows v. 3M Co.*,
  No. C19-1649-RSL, 2022 WL 3346419 (W.D. Wash. Aug. 12, 2022) ...................................3

*Cabrera v. Cordis Corp.*,
  134 F.3d 1418 (9th Cir. 1998) .............................................................................................11

*In re Cessna 208 Series Aircraft Prods. Liab. Litig.*,
  No. 05-md-1721-KHV, 2009 WL 1357234 (D. Kan. May 12, 2009) ......................................6

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .......................................................................................................6, 11

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000) ...................................................................................................9

*Gier By and Through Gier v. Educ. Serv. Unit No. 16*,
  66 F.3d 940 (8th Cir. 1995) .................................................................................................10

*Guillory v. Domtar Indus. Inc.*,
  95 F.3d 1320 (5th Cir. 1996) ...............................................................................................11

*In re Hanford Nuclear Rsrv. Litig.*,
  894 F. Supp. 1436 (E.D. Wash. 1995) ....................................................................................7

*Henricksen v. ConocoPhillips Co.*,
  605 F. Supp. 2d 1142 (E.D. Wash. 2009) .............................................................................13

*Hutchinson v. United States*,
  838 F.2d 390 (9th Cir. 1988) ..................................................................................................4

*Insolia v. Philip Morris Inc.*,
  53 F. Supp. 2d 1032 (W.D. Wis. 1999), *aff'd in part, rev'd in part on other grounds*,
  216 F.3d 596 (7th Cir. 2000) ..................................................................................................4

ii

*Johns v. Bayer Corp.*,
    No. 09CV1935 AJB DHB, 2013 WL 1498965 (S.D. Cal. Apr. 10, 2013)...............................5

*Liberty Life Ins. Co. v. Myers*,
    No. CV 10-2024-PHX-JAT, 2013 WL 524587 (D. Ariz. Feb. 11, 2013) ...............................6

*Lightell v. State Farm Fire & Cas. Co.*,
    No. CIV. A. 08-4393, 2009 WL 5217087 (E.D. La. Dec. 31, 2009)...................................8

*Moller v. Cnty. of San Bernardino*,
    No. 5:22-CV-01306-DSF-MARX, 2024 WL 5185640 (C.D. Cal. Jan. 2, 2024)....................7

*Morrison v. Quest Diagnostics Inc.*,
    No. 2:14-CV-01207-RFB-PAL, 2016 WL 3457725 (D. Nev. June 23, 2016)......................11

*Norman v. State Farm Fire & Cas. Co.*,
    No. 13-CV-01643-PAB-CBS, 2014 WL 6477889 (D. Colo. Nov. 19, 2014).........................8

*O'Bryant v. Johnson & Johnson*,
    No. 20-2361 (MAS) (DEA), 2022 WL 7670296 (D.N.J. Oct. 13, 2022) .................................4

*Ono v. Head Racquet Sports USA, Inc.*,
    No. 13-CV-4222 FMO, 2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) ...................................12

*Pascal v. Nissan N. Am., Inc.*,
    No. 820CV00492JLSJDE, 2022 WL 19076763 (C.D. Cal. Dec. 21, 2022).........................10

*Patterson v. Six Flags Theme Parks Inc.*,
    No. 2:21-CV-02398-KJM-AC, 2024 WL 2112376 (E.D. Cal. May 9, 2024).........................7

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
    461 F. Supp. 2d 271 (D.N.J. 2006) ....................................................................................4

*Repa v. Napierkowski*,
    No. 1:19-CV-00101-RAL, 2022 WL 1522360 (W.D. Pa. May 13, 2022) ..............................4

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)..................................................................................6

*Sanchez v. Boston Sci. Corp.*,
    No. 2:12-cv-05762, 2014 WL 4851989 (S.D. W. Va. Sept. 29, 2014)...................................4

*Siqueiros v. Gen. Motors LLC*,
    No. 16-CV-07244-EMC, 2022 WL 74182 (N.D. Cal. Jan. 7, 2022)........................................4

*Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*,
    927 F. Supp. 2d 1069 (D. Or. 2013) ...................................................................................7

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN CHANDLER

Case No. 3.23-md-03084-CRB (LJC)

*Stephens v. Union Pac. R.R. Co.*,
   935 F.3d 852 (9th Cir. 2019) ....................................................................11

*Townsend v. Monster Beverage Corp.*,
   303 F. Supp. 3d 1010 (C.D. Cal. 2018) ...................................................12

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)................................................................13

*Watson v. Shalala*,
   No. CIV. 92-1178-FR, 1993 WL 192979 (D. Or. June 2, 1993), *aff'd*, 50 F.3d 18
   (9th Cir. 1995)..........................................................................................11

*In re Welding Fume Prods. Liab. Litig.*,
   No. 1:03-CV-17000, 2005 WL 1868046 (N.D. Ohio Aug. 8, 2005).........6

*Wolfe v. McNeil-PPC, Inc.*,
   No. 07-348, 2011 WL 1673805 (E.D. Pa. May 4, 2011).........................7

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
   644 F. Supp. 3d 1075 (S.D. Fla. 2022) ....................................................9

*Zetz v. Bos. Sci. Corp.*,
   644 F. Supp. 3d 684 (E.D. Cal. 2022)......................................................6

**Rule**

Fed. R. Evid. 702 ............................................................................................2, 11

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN
CHANDLER

Case No. 3.23-md-03084-CRB (LJC)

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Dr. John Chandler, an Assistant Professor of Data Science at the University of St. Thomas, seeks to offer "expert" opinions about a wide variety of topics: (1) Uber's "branding strategies"; (2) Uber's supposed ethical duties; (3) Uber's knowledge pertaining to the risk of sexual assault; (4) the "true" rate of sexual assault incidents after statistically accounting for under-reporting of incidents; and (5) Uber's messages sent to Plaintiffs. These opinions are unreliable and speculative for several reasons. Dr. Chandler's branding opinions merely regurgitate Uber's documents, public statements, and other evidence; his ethics opinions are rooted in ethical codes and standards that do not apply to Uber; his "knowledge" opinions amount to legal conclusions; his statistical analysis utilizes a methodology based on a single, disparate article (that Dr. Chandler did not even apply faithfully); and his analysis of Uber's messages and their supposed impact is premised on incomplete data and pure speculation that any of those messages actually "reached" Plaintiffs.

In addition, Dr. Chandler submitted a "rebuttal" report that attacks Dr. Victoria Stodden's finding that the rate of reported incidents for riders on Uber's platform is lower than rates reported for public transportation. Dr. Chandler's rebuttal report is based on a fundamental distortion of the purpose of Dr. Stodden's report. He also fails to account for the objective evidence that supports Dr. Stodden's conclusion, and his rebuttal report is rife with legal arguments that are appropriately reserved for the attorneys and the finders of fact in this litigation.

For all of these reasons, described in detail below, Dr. Chandler's opinions should be excluded from trial.

### II.    BACKGROUND

Dr. Chandler's degree is in mathematics, with a focus on statistics, and he is an Assistant Professor of Data Science at the University of St. Thomas. Chandler Rep. at 1 (Ex. 1); *see also* 11/6/2025 Chandler Dep. 24:3-13 (Ex. 2). Dr. Chandler also has professional experience in advertising, marketing, marketing analytics, and data science consulting. Chandler Rep. at 1-2.

Dr. Chandler was "retained by Plaintiffs' counsel to provide expert opinions regarding Uber's branding strategies, execution, and communications around safety." *Id.* at 5. Specifically, Dr. Chandler seeks to opine that: (1) Uber's "branding strategy" placed an "emphasis on safety," *id.* at 22-23; (2) "Uber's deployment of safety messaging fell below industry ethical norms," *id.* at 8; (3) Uber knew (but failed to disclose) the risk of sexual assault and sexual misconduct incidents, *id.* at 80, 98; (4) the true rate of sexual assault incidents was higher than the numbers reported by Uber due to under-reporting of incidents, *id.* at 91; and (5) "an extraordinary volume of messages sent to plaintiffs across multiple channels" "demonstrates the central role of communications in Uber's business strategy," *id.* at 99.

Dr. Chandler also submitted a rebuttal expert report that criticizes Dr. Victoria Stodden—an Associate Professor in the Department of Industrial and Systems Engineering at the University of Southern California who conducted postdoctoral research at MIT, has published 50 papers in scientific journals and conference proceedings and is internationally recognized "as a leader in improving the reliability of scientific results." Stodden Rep. at 1-2 (Ex. 3). Although Dr. Chandler's rebuttal report does not call into question Dr. Victoria Stodden's qualifications, Chandler Rebuttal Rep. at 3 (Ex. 4) (noting "types of materials that Dr. Stodden and I have both learned and taught"), or the methodology on which her calculations are based, *id.*, he nonetheless disputes Dr. Stodden's finding that "the rate of reported incidents for rides on Uber's platform is *orders of magnitude lower* than rates reported for public transportation," Stodden Rep. at 3.

## III.    STATEMENT OF THE ISSUES TO BE DECIDED

1.    Have Plaintiffs failed to demonstrate by a preponderance of evidence that John Chandler's proffered testimony satisfies the requirements of qualification, reliability, and relevance that are enumerated in Federal Rule of Evidence 702?

## IV.    LEGAL STANDARD

The standard for admissibility under Fed. R. Evid. 702 is set forth in Uber's Motion to Exclude the Opinions of Plaintiffs' Expert Minette Drumwright and incorporated herein by reference.

1  **V.      ARGUMENT**

2      **A.      Dr. Chandler's Expert Report Is Unreliable And Should Be Excluded.**

3          1.      <u>Dr. Chander's "Branding Strategies" Opinions Are Inadmissible.</u>

4          Dr. Chandler purports to opine on Uber's "branding strategies," Chandler Rep. at 5-6, claiming

5  that "[t]he emphasis on safety was foundational to Uber's brand identity," *id.* at 23; *see also id.* ("Safety

6  was essential to the formation of Uber's brand."); *id.* at 6 ("Uber developed branding messaging intimately

7  tied to safety"). Dr. Chandler also seeks to opine that Uber "[d]efend[ed]" its brand by publishing

8  "misleading" safety reports. *Id.* at 73-74; *id.* at 7. These "opinions" are inadmissible for multiple reasons.

9          ***First***, Dr. Chander's "branding" opinions amount to nothing more than a regurgitation of various

10  documents and evidence. Most of Dr. Chandler's report consists of narrative reviews of documents and

11  evidence, including internal company emails, *e.g.*, *id.* at 25-26, 44, internal documents, *e.g.*, *id.* at 29, 31,

12  33-34, published articles referring to Uber, *e.g.*, *id.* at 26, 51, 52, recitations of podcast interviews, *e.g.*,

13  *id.*, blog posts, *e.g.*, *id.* at 28, and deposition testimony of Uber employees, *e.g.*, *id.* at 40. Importantly, Dr.

14  Chandler provides no independent or original analysis of the company documents and evidence he

15  discusses in his report. For example, Dr. Chandler simply pastes an excerpt from an Uber internal email

16  chain into his report, and writes that "[he] can see Uber employees discussing the way that safety is part

17  of branding and brand image" in the document. *Id.* at 44-45. Dr. Chandler similarly "observes [] in the

18  highlighted section from" another document pasted into his report that "Uber developed a defensive brand

19  campaign . . . to begin in the U.S. and expand globally, use a female spokesperson when possible, and

20  feature vetted riders and drivers with personal safety narratives." *Id.* at 48. However, Dr. Chandler's so-

21  called "observ[ations]" are merely recitations of text lifted directly from the internal document. *Id.*; *see*

22  *also id.* at 62-63 ("In the following document, I observe Uber noting headlines that depict reporting on

23  sexual harassment allegations concerning its platform"). Dr. Chandler's descriptions of Uber's branding

24  merely seek to put an expert spin on documents and evidence the jurors are "equally capable" of reviewing

25  themselves; accordingly, these so-called "opinions" are "not helpful as required by *Daubert*[.]" *Burrows*

26  *v. 3M Co.*, No. C19-1649-RSL, 2022 WL 3346419, at *5 (W.D. Wash. Aug. 12, 2022) (expert "invade[d]

27

28

. . . province" of jury where his opinion was based on review of defendant's promotional materials).[1]

To make matters worse, Dr. Chandler's review of these documents was cursory, at best. Dr. Chandler claims to have reviewed "over 10,000 documents in this case," Chandler Rep. at 9, but he conceded at his deposition that "among those 10,000 documents are documents that have only been opened programmatically, like, via computer code and analyzed that way," 11/6/2025 Chandler Dep. 86:1-12. Similarly, instead of reading depositions, Dr. Chandler testified that he "did just text searches" or "analyzed [them] programmatically." 11/6/2025 Chandler Dep. 86:14-87:9. Such a "selective summary of party and witness testimony and other evidence [in an expert report] will not assist the jury." *Repa v. Napierkowski*, No. 1:19-CV-00101-RAL, 2022 WL 1522360, at *3 (W.D. Pa. May 13, 2022).

**Second**, Dr. Chandler's "branding" opinions are entirely speculative and not grounded in any hard evidence. Courts have repeatedly acknowledged that expert testimony about the impact of marketing or advertising on consumers must be grounded in "reliable evidence." *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 461 F. Supp. 2d 271, 277 (D.N.J. 2006) (excluding expert's "testimony regarding what physicians in general think/know" because such testimony is "speculative and not based on reliable evidence"); *see also Insolia v. Philip Morris Inc.*, 53 F. Supp. 2d 1032, 1041 (W.D. Wis. 1999) (excluding marketing expert's "sweeping assertions" that tobacco industry's advertising caused consumers to underappreciate the risks of smoking absent citations to "hard evidence," such as "citations to public opinion surveys, anthropological, market or sociological studies" or other evidence "that would demonstrate the actual impact of . . . advertising"), *aff'd in part*, *rev'd in part on other grounds*, 216 F.3d 596 (7th Cir. 2000).

---

[1] *See also Hutchinson v. United States*, 838 F.2d 390, 392 n.1 (9th Cir. 1988) ("Expert evidence is not needed when the type of conduct required by the particular circumstances is within the common knowledge of laymen.") (citation omitted); *Siqueiros v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022) (an expert "may not restate or summarize record evidence and then state a conclusion without applying a methodology that is reliable and which evinces his/her expertise."); *O'Bryant v. Johnson & Johnson*, No. 20-2361 (MAS) (DEA), 2022 WL 7670296, at *13 (D.N.J. Oct. 13, 2022) (testimony that "simply parrot[s] [d]efendant's corporate documents or offer[s] a narrative account of events from them will not be helpful to the jury") (citation omitted); *Sanchez v. Boston Sci. Corp.*, No. 2:12-cv-05762, 2014 WL 4851989, at *32 (S.D. W. Va. Sept. 29, 2014) ("narrative review of corporate documents" is "not helpful to the jury.").

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN CHANDLER

1   Dr. Chandler claims that Uber's Safety Reports are a "case study in misleading data presentations,"

2   Chandler Rep. at 73, quibbling with the "organization of the reports" and how "Uber . . . frames statistics,"

3   *id.* at 74. But Dr. Chandler has no objective evidence to demonstrate that any of the data in the report is

4   actually misleading because he admittedly performed no "separate analyses" "to determine the impact or

5   the effectiveness of a particular ad or a particular campaign." 11/6/2025 Chandler Dep. 77:5-19; *id.* 75:13-

6   24; *id.* 79:21-80:1 (Dr. Chandler admitting he "did not do a consumer" survey); *id.* 80:2-15 ("I did not

7   carry out a survey as part of my work in this case"). And although Dr. Chandler pointed to "Uber doing

8   consumer surveys to understand consumer sentiment around their brand or the perceived value of their

9   product," *id.* 53:1-8, courts within the Ninth Court have made clear that mere reliance on "third-party

10  market research reports and [a defendant]'s own internal documents" is not a sufficiently reliable

11  methodology to opine on "the impact of marketing on consumer behavior." *Johns v. Bayer Corp.*, No.

12  09CV1935 AJB DHB, 2013 WL 1498965, at *27-28 (S.D. Cal. Apr. 10, 2013). For all of these reasons,

13  Dr. Chandler's "branding" opinions should be excluded.

14              2.   Dr. Chandler's Ethics Opinions Are Inadmissible.

15  Dr. Chandler also opines that "Uber's deployment of safety messaging fell below industry ethical

16  norms," Chandler Rep. at 8, and accuses Uber of "appear[ing] to make light of rape," *id*. at 28. Dr.

17  Chandler's ethics opinions are inadmissible for multiple reasons.

18  ***First***, they are irrelevant. Dr. Chandler purports to cite to the American Marketing Association

19  ("AMA") and Association of National Advertisers ("ANA") ethical standards to "illustrat[e]" his so-called

20  ethics opinions, *see* Chandler Rep. at 20-22; 11/6/2025 Chandler Dep. 131:25-132:3, but those standards

21  do not apply to Uber, *e.g.*, 11/6/2025 Chandler Dep. 35:6-21; *id.* 131:14-133:19. Judge Schulman recently

22  excluded substantively similar expert testimony from another Plaintiffs' expert witness in the JCCP,

23  holding that "if Uber had a duty to warn [] of the risks of sexual assault on its platform, that duty would

24  not stem from the standards of marketing and advertising associations" "of which Uber concededly is not

25  even a member" and thus, any "opinions that these disparate organizations' gave rise to duties or

26  obligations on Uber's part in relation to its marketing, advertising, or corporate social responsibility

27  practices is inadmissible." JCCP Order at 39-40 (Ex. 5). Dr. Chandler's opinions are irrelevant and

28

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN
CHANDLER

1    inadmissible for these same reasons. *See Liberty Life Ins. Co. v. Myers*, No. CV 10-2024-PHX-JAT, 2013

2    WL 524587, at *4 (D. Ariz. Feb. 11, 2013) (opinions that rely solely on data that "does not relate to any

3    issue in the case [and thus] is not relevant" should be excluded) (citation omitted); *Daubert v. Merrell*

4    *Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the

5    case is not relevant and, ergo, non-helpful.") (citation omitted).

6           Dr. Chandler's ethics opinions are also irrelevant because Plaintiffs' claims necessarily turn on

7    legal standards, not ethical ones. As one court explained in rejecting ethics testimony, "[w]hile the

8    defendants may be liable in the court of public opinion, or before a divine authority for any ethical lapses,

9    expert opinion as to the ethical character of their actions simply is not relevant to th[is] lawsuit[]." *In re*

10   *Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004) (precluding plaintiffs from offering

11   any testimony concerning ethical standards or application of ethical standards to alleged conduct of

12   defendant manufacturers); *see also Zetz v. Bos. Sci. Corp.*, 644 F. Supp. 3d 684, 703 (E.D. Cal. 2022)

13   (agreeing with other courts that "matters related to corporate conduct and ethics are not appropriate

14   subjects of expert testimony because opinions on these matters will not assist the jury" and thus excluding

15   experts' testimony to the extent they attempted to do so) (citation omitted); *Liberty Life Ins.*, 2013 WL

16   524587, at *7 ("Legal conclusions are not relevant for an expert witness to solely testify about.").[2] And

17   as Dr. Chandler conceded, ethical standards set by ethical organizations (such as the AMA and ANA) "are

18   not regulatory bodies or law-making bodies." 11/6/2025 Chandler Dep. 36:19-37:6. For this reason, too,

19   Dr. Chandler's ethics opinions are irrelevant and thus inadmissible.

20          **Second**, Dr. Chandler's ethics opinions "would not assist the [jury] in determining any factual

21   dispute in this case" because Uber's "ethical character . . . is not relevant to these lawsuits." *See In re*

---

23   [2] *See also In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, No. 05-md-1721-KHV, 2009 WL 1357234,
24   at *3 (D. Kan. May 12, 2009) (excluding expert opinion that company "failed to act as a conscientious
     corporation, maintained a defective corporate culture, violated fundamental principles of ethics and
25   compromised basic moral rights" because the "opinions would not assist the jury" and "are not directly
     relevant to plaintiffs' product liability claims"); *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-
26   17000, 2005 WL 1868046, at *20 (N.D. Ohio Aug. 8, 2005) ("[T]he critical question for the jury in this
     case is whether the defendant corporations did what the law required them to do, not whether, from a
27   societal perspective, they did what an 'ethical corporation' should have done.") (emphasis omitted).

*Rezulin*, 309 F. Supp. 2d at 544. Moreover, any tenuous probative value of Dr. Chandler's testimony would be "vastly outweighed by the tendency of such testimony to encourage the jury to impose liability on an improper basis." *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *9 (E.D. Pa. May 4, 2011) (expert's testimony about defendant's "social responsibility and ethical obligations" was alternatively inadmissible). After all, these opinions boil down to accusations that Uber engaged in wrongful and immoral conduct. Such incendiary claims from a so-called "expert" would be highly prejudicial and confusing and should be excluded for this reason as well.

### 3.    Dr. Chandler's Opinions Regarding Uber's Knowledge Should Be Excluded.

Dr. Chandler's opinions about Uber's supposed knowledge, *e.g.*, Chandler Rep. at 96, 11/6/2025 Chandler Dep. 131:9-11, should be excluded because such questions pertaining to "state of mind are properly for the trier of fact." *Patterson v. Six Flags Theme Parks Inc.*, No. 2:21-CV-02398-KJM-AC, 2024 WL 2112376, at *3 (E.D. Cal. May 9, 2024).[3] Dr. Chandler backed away from these inadmissible knowledge opinions at his deposition, claiming he was "not offering opinions on Uber's state of mind or the state of mind of Uber's employees" but was "reporting what [he] s[aw] in the documents." 11/6/2025 Chandler Dep. 191:10-17. The Court should hold him to his word.

### 4.    Dr. Chandler's Safety Report "Estimates" Are Fundamentally Flawed.

Dr. Chandler's safety report "estimates" are also unreliable, and thus inadmissible, for multiple reasons.

***First***, Dr. Chandler's safety report "estimates" are, at best, "educated guesswork." *In re Hanford Nuclear Rsrv. Litig.*, 894 F. Supp. 1436, 1449 (E.D. Wash. 1995) (excluding expert where "[t]he degree of uncertainty present in his estimates on this critical figure singularly reveals Dr. Welsh's conclusion as

---

[3] *See also Moller v. Cnty. of San Bernardino*, No. 5:22-CV-01306-DSF-MARX, 2024 WL 5185640, at *7 (C.D. Cal. Jan. 2, 2024) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind."); *Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury."); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020) (expert's state-of-mind conclusions were inadmissible because such "testimony intrudes on the province of the jury, who is capable of evaluating the same evidence and drawing conclusions without [the expert's] proffered testimony"), *aff'd*, 9 F.4th 1102 (9th Cir. 2021).

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN CHANDLER

Case No. 3.23-md-03084-CRB (LJC)

nothing more than educated guesswork"); *Lightell v. State Farm Fire & Cas. Co.*, No. CIV. A. 08-4393, 2009 WL 5217087, at *1 (E.D. La. Dec. 31, 2009) (holding "[p]laintiffs' expert testimony and estimates should be excluded as irrelevant and unreliable"). Even Dr. Chandler "did not want to give the impression that this was an exact number that I knew with infinite precision" because "it is merely an estimate[.]" 11/6/2025 Chandler Dep. 198:7-12; 11/7/2025 Chandler Dep. 371:11-372:19 (Ex. 6) (admitting estimates are "not going to always . . . be exactly right"; "my model can misstate[] the number of incidents"). But as Dr. Chandler also recognizes, Uber has already produced the data pertaining to sexual assault incident reports. Chandler Rep. at 91. That is the relevant data for purposes of Uber's knowledge and alleged liability in this case, not any "estimates" or figures cobbled together by Dr. Chandler. *See, e.g.*, *Norman v. State Farm Fire & Cas. Co.*, No. 13-CV-01643-PAB-CBS, 2014 WL 6477889, at *4 (D. Colo. Nov. 19, 2014) (holding "[a]bsent a causal link between [expert]'s estimates and the Waldo Canyon Fire, [expert]'s estimates are irrelevant and likely to confuse the jury").

Dr. Chandler estimated that the true count of incidents that were categorized as "Sexual Assault – Parent Category Usage Tracking" in 2017 was 470.[4] However, Uber's data indicates that the actual total was 633 incidents reported in this category in 2017.[5] Thus, although Dr. Chandler estimates that the under-reporting rate for this category was approximately 62% from 2017-2024,[6] his model suggests that incidents in this category were over-reported by almost 35%. *See* Stodden Rebuttal Rep. at 38 (Ex. 7). Similarly, although Dr. Chandler estimated that the "true" number of "Sexual Assault – Parent Category Usage Tracking" incidents in 2022 was 492,[7] the number of such incidents reported to Uber in 2022 was actually 0.[8] This estimate implies an under-reporting rate of 100%, with no justification or explanation from Dr. Chandler as to why such a high level of under-reporting may exist for this specific category. And Dr. Chandler was aware of—but wholly failed to include in his analysis—incidents of "fraudulent

---

[4] Chandler Rep., Appendix D, Data Table 1.

[5] Uber Incident Report Classification of Dominant Tickets for 2017-2024 (Flack Data), p. 8 (Ex. 8).

[6] Chandler Rep., Appendix D, Figure 67.

[7] Chandler Rep., Appendix D, Data Table 1.

[8] Uber Incident Report Classification of Dominant Tickets for 2017-2024 (Flack Data).

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN CHANDLER

Case No. 3.23-md-03084-CRB (LJC)

reporting[ or] reporting that is fabricated." 11/6/2025 Chandler Dep. 198:23-200:1; *id.* 200:11-18. This is textbook evidence of unreliability. *See, e.g.*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 747-48 (3d Cir. 2000) ("If such testing did not generate consistent results, [the challenged expert's] method would be exposed as unreliable because it is subjective and unreproducible.").

**_Second_**, Dr. Chandler explained that he relied on a technique advanced by a single academic article, Bradshaw et al. (2024), which attempted to estimate under-reporting for sexual assault on college campuses.[9] But a methodology specific to college campus study data "is not readily applicable to the rideshare app context where there are substantial data collection differences," including differences in "report processing times, burdens of proof, and victim-perpetrator relationships." Stodden Rebuttal Rep. at 30-33. The Bradshaw authors also spell out "limitations" to the analysis, which are wholly ignored by Dr. Chandler. For example, the Bradshaw authors explicitly note that "the Bureau of Justice Statistics has acknowledged the difficulty of accurately incorporating series victimization in its national crime estimates."[10] The authors also point out that "the estimated degree of under-reporting varies widely" among schools (and by extension, other locations). For these reasons, the Bradshaw authors cautioned that "variation" in data "has implications for how [to] . . . interpret their reported crime statistics"[11] and lamented "a one-size-fits-all approach to interpreting [sexual assault] reports over time."[12] Dr. Chandler, in purporting to guess at the true number of sexual assault events using a "one-size-fits-all approach," thus "deviate[d] from the study authors' conclusions" and employed an unreliable methodology. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1253-54, 1273 (S.D. Fla. 2022) (excluding experts that "omit[ted] and all but ignore[d] the study authors' conclusions in the studies [they] relie[d] upon, the majority of which contradict [their] opinion and, at the very least, do not support [their] opinion").

---

[9] Casey Bradshaw & David M. Blei, *A Bayesian Model of Underreporting for Sexual Assault on College Campuses*, 18 The Annals of Applied Statistics 3146 (2024) (Ex. 9).

[10] *Id.* at 3162.

[11] *Id.* at 3146.

[12] *Id.* at 3161.

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN CHANDLER

Dr. Chandler, in any event, departed from the Bradshaw article's methodology in a number of respects. For example, while the Bradshaw authors estimated the number of sexual assault incidents for each individual school (recognizing that schools have different characteristics and composition), Dr. Chandler estimated the number of incidents for each incident category; Dr. Chandler did not discuss alternative approaches that may be more aligned with the Bradshaw methodology, including estimating the number of incidents for each vehicle or geographical location. Although the Bradshaw authors incorporated "covariates to account for demographic differences,"[13] Dr. Chandler considered different covariates in his methodology. *See* 11/7/2025 Chandler Dep. 366:21-367:21. And Dr. Chandler's specific statistical model of underreporting used a negative binomial distribution, even though the Bradshaw authors used a Poisson distribution. *Id.* 360:2-361:11. Because Dr. Chandler "did not follow a reliable methodology faithfully," "there is too large an analytical gap between the data and his conclusions." *Pascal v. Nissan N. Am., Inc.*, No. 820CV00492JLSJDE, 2022 WL 19076763, at *17 (C.D. Cal. Dec. 21, 2022); *Gier By and Through Gier v. Educ. Serv. Unit No. 16*, 66 F.3d 940, 943-44 (8th Cir. 1995) (excluding proposed psychological testimony when the experts "departed significantly" from the proposed methodology).

**Third**, Dr. Chandler's methodology purported to utilize data on under-reporting to the police from the Department of Justice's National Criminal Victimization Survey ("NCVS") report and inappropriately apply that to Uber data, but this methodology necessitates a number of unsupported assumptions, including: (1) that reporting sexual assaults to Uber is substantially similar to reporting sexual assaults to the police, despite admitting that he could "think of reasons that might make it easier to report to Uber [than the police]," 11/6/2025 Chandler Dep. 205:3-13; (2) that survivors are more likely to report a crime if the perpetrator is a stranger (such as drivers on the Uber platform); and (3) that the same NCVS data could be applicable for all incident categories, even though Dr. Chandler acknowledged that "the scale of under-reporting varies by incident type." Chandler Rep. at 96; *see also* Stodden Rebuttal Rep. at 30; 11/6/2025 Chandler Dep. 200:20-201:5 (Dr. Chandler did not "compare[] the rate of underreporting on

---

[13] Bradshaw, at 3148.

Uber versus the rate of underreporting on college campuses versus the rate of underreporting to police departments"). Courts have made clear that opinions such as this "should be excluded when [they are] based on assumptions which are speculative and are not supported by the record." *Morrison v. Quest Diagnostics Inc.*, No. 2:14-CV-01207-RFB-PAL, 2016 WL 3457725, at *4 (D. Nev. June 23, 2016) (citing cases); *Watson v. Shalala*, No. CIV. 92-1178-FR, 1993 WL 192979, at *3 (D. Or. June 2, 1993), *aff'd*, 50 F.3d 18 (9th Cir. 1995) ("If the assumptions of the [] expert are incomplete or lack support in the record, an opinion based on such assumptions has no evidentiary value."); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (holding "the district court properly excluded Dr. Reed's expert testimony, which was not based upon the facts in the record but on altered facts and speculation designed to bolster Deere's position").

5.    Dr. Chandler's Analysis Of Uber's Communications With Plaintiffs Is Unreliable.

Dr. Chandler's final opinion in his opening report is that "an extraordinary volume of messages sent to plaintiffs across multiple channels" "demonstrates the central role of communications in Uber's business strategy." Chandler Rep. at 99.[14] Dr. Chandler candidly concedes, however, that he does not have information pertaining to the content of all the relevant messages. *See, e.g.*, *id.* at 101-102 (stating "the content and subject of all in-app communications for [Plaintiff] are missing"); *id.* at 99 ("Both push notifications and voice messages . . . do not include any information on the content of the communication."). Remarkably, this did not stop Dr. Chandler from making sweeping conclusions about their content. And even for the messages that Dr. Chandler did have and presumably analyzed, he candidly admitted that what he considered "safety messages" could include "false positives" because he did not do a "line by line review" of the messages. 11/7/2025 Chandler Dep. 430:13-23, 439:6-13. Expert testimony "based on such unsubstantiated and undocumented information is the antithesis of the [] reliable expert opinion admissible under *Daubert* and Rule 702." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir.

---

[14] Dr. Chandler testified that he did not produce certain underlying "process data" that he relied on in forming these opinions. Uber has requested production of the data and reserves the right to seek a supplemental deposition or amend this motion if and when they are produced.

1998); *see also Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (an "expert's opinion must rest on facts or data . . . not merely assumptions and speculation") (citation omitted).

Dr. Chandler also has no idea if any Plaintiffs saw any messages from Uber through push notifications, in-app messaging, email or text messages. This is fatal to Dr. Chandler's opinion because, although Dr. Chandler opines that Uber's messages "reached Plaintiffs in high volume and at high frequency, with safety themes permeating much of the ongoing digital CRM engagement," Chandler Rep. at 111, Dr. Chandler can only speculate that any of those messages actually "reached" Plaintiffs. *See Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1032 (C.D. Cal. 2018) ("Plaintiffs fail to show that Dr. Maronick's assumption that energy drink consumers are energy drink purchasers is grounded in anything other than his unsupported speculation."); *Ono v. Head Racquet Sports USA, Inc.*, No. 13-CV-4222 FMO, 2016 WL 6647949, at *11 n.10 (C.D. Cal. Mar. 8, 2016) (describing expert's opinion as "unpersuasive" where "his declaration describes general marketing principles and ideas but fails to provide any evidence that the class members in this action were exposed to defendant's advertising").

### B.     Dr. Chandler's Rebuttal Expert Report Is Unreliable And Should Be Excluded.

Dr. Chandler's rebuttal report does not call into question Dr. Victoria Stodden's qualifications, Chandler Rebuttal Rep. at 3 (noting "types of materials that Dr. Stodden and I have both learned and taught"), or the methodology on which her calculations are based, *id.* ("The [Stodden] Report cites a reasonable guide to statistical practice, 'Reference Guide on Statistics' from *Reference Manual on Scientific Evidence*"). Dr. Chandler's rebuttal opinions are flawed and should be excluded for multiple reasons.

*First*, Dr. Chandler concludes that "Uber rides are statistically riskier," Chandler Rebuttal Rep. at 2, but he makes no effort to clarify *what* "Uber rides" are risker *than*. To reach this conclusion, Dr. Chandler (and Plaintiffs) would have to analyze the risks of sexual assaults in rides arranged on the Uber platform compared to other appropriate comparators, such as other forms of transportation. He did not do so. Dr. Stodden, on the other hand, did. She acknowledged that "there are methodological differences

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN CHANDLER

between Uber's and public transportation providers' reports," but she conducted a detailed analysis of the reports on the basis that "the public transportation providers' reports [are] relevant and informative benchmarks for Uber's reported incident rates." Stodden Rep. at 9. Dr. Chandler conclusion, which is untethered to any analysis of appropriate comparators, concludes that "Uber rides" are "riskier" seemingly because there is a greater than zero-percent chance of sexual assault. This is not an appropriate baseline, as society is not an assault-free environment. For this reason alone, Dr. Chandler's opinion is "fundamentally flawed" and would be unhelpful to the jury. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("Beginning from a fundamentally flawed premise . . . results in a fundamentally flawed conclusion.").

*Second*, Dr. Chandler's rebuttal report is rife with errors, underscoring the unreliability of his work. For example, although Dr. Chandler criticizes Dr. Stodden's numerical comparisons as "manifestly invalid," claiming that "the fact that Uber's SA rate is 25% higher than Lyft's [wa]s elided," Chandler Rebuttal Rep. at 20, the information Dr. Chandler cited in support of this allegation actually shows that Lyft's rate is 25% ***higher than Uber's***, *see id.* at 20 n.62, as Dr. Chandler admitted at his deposition, 11/7/2025 Chandler Dep. 328:10-329:3 ("I [misreported] that 25 percent number"). Dr. Chandler also criticizes Dr. Stodden's analysis as being "grossly misleading" because Uber respondents felt "more unsafe than any of the municipal surveys, except for the specific 'unsafe at night' questions." Chandler Rebuttal Rep. at 29. But the questions he considered for this "more unsafe" comparison are about perceived safety, ***not*** sexual assaults—i.e., include unsafe driving, fear of equipment failure, fear of being mugged and other events wholly unrelated to sexual assault incidents. This distinction is important because, as Dr. Chandler's own rebuttal report makes clear, a majority of respondents (54%) reported the safety issue as "driver drove dangerously" and only 3% reported "[d]river[s] [who] made a sexual advance or touched me inappropriately." *Id.* at 25, Fig. 2. These errors, too, compel the exclusion of Dr. Chandler's rebuttal report. *See Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1165 (E.D. Wash. 2009) (finding "errors enhance the court's initial conclusion . . . that Dr. Sawyer's opinion lacks precision and is unreliable science").

***Lastly***, Dr. Chandler's rebuttal report is rife with arguments and conclusions that are appropriately reserved for the attorneys and the finders of fact in this case. Indeed, Dr. Chandler's rebuttal report often reads like a legal motion, including his arguments that Dr. Stodden's analysis does not "[f]it [] the [f]acts" of the case, Chandler Rebuttal Rep. at 2, and that Dr. Stodden employed an "improper methodology," *id.* at 7. Dr. Chandler goes even further, arguing that Dr. Stodden's opinions would "deceive" and "mislead[] . . . finders of fact." *Id.* at 6-7 (claiming Dr. Stodden's opinions "are then deployed with attempted rhetorical force, in ways that could deceive an audience of average numeracy, such as a finder of fact"); *id.* at 7 ("This Report is materially misleading to any non-statistician including finders of fact."). These types of legal arguments should be made by Plaintiffs' counsel in the appropriate setting, and are plainly not within the scope of expert testimony. *See, e.g.*, *Apple Inc. v. Corellium, LLC*, No. 19-81160-CV, 2020 WL 5417197, at *5 (S.D. Fla. July 30, 2020), *report and recommendation adopted*, No. 19-81160-CIV, 2020 WL 7385752 (S.D. Fla. Dec. 16, 2020) (excluding expert report that "consist[ed] of almost entirely legal opinions and conclusions" and "read like legal argument from co-counsel in support of Corellium's positions in this lawsuit, not properly admissible expert testimony").

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant Uber's Motion and exclude Dr. John Chandler's opinions in their entirety.

DATED: November 10, 2025                   Respectfully submitted,

                                           */s/ Laura Vartain Horn*
                                           Laura Vartain Horn (SBN 258485)
                                           **KIRKLAND & ELLIS LLP**
                                           555 California Street, Suite 2700
                                           San Francisco, CA 94104
                                           Telephone: (415) 439-1625
                                           laura.vartain@kirkland.com

                                           Allison M. Brown (Admitted *Pro Hac Vice*)
                                           **KIRKLAND & ELLIS LLP**
                                           2005 Market Street, Suite 1000
                                           Philadelphia, PA 19103
                                           Telephone: (215) 268-5000

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN CHANDLER
Case No. 3.23-md-03084-CRB (LJC)

alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT DR. JOHN
CHANDLER
Case No. 3.23-md-03084-CRB (LJC)