Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*, No. 23-cv-06708 | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT CYNTHIA RANDO, CHFP; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Judge:   Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Judge:   Mag. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

**NOTICE OF MOTION AND MOTION TO EXCLUDE**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, excluding the opinions of Plaintiffs' Expert Cynthia Rando, CHFP.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated: November 10, 2025                                KIRKLAND & ELLIS LLP


                                                        By: */s/ Laura Vartain Horn*
                                                        *Counsel for Uber*

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.   INTRODUCTION ...............................................................................................................1

II.  BACKGROUND .................................................................................................................1

III. STATEMENT OF THE ISSUES TO BE DECIDED..........................................................2

IV.  LEGAL STANDARD..........................................................................................................2

V.   ARGUMENT.......................................................................................................................2

    A.   Ms. Rando Is Not Qualified To Opine On The Adequacy Of Uber's In-App Reporting Systems. ................................................................................................2

    B.   Ms. Rando's Opinions Are Irrelevant To Ms. Dean's Claims (Or Those Of Any Other Bellwether Plaintiff). ...................................................................................4

    C.   Ms. Rando's Opinions Are Unreliable...................................................................6

    D.   Ms. Rando's Opinions Regarding Uber's Alleged Knowledge Should Also Be Excluded. .............................................................................................................10

VI.  CONCLUSION..................................................................................................................11

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
   613 F. Supp. 3d 1308 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) ...........................11

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
   No. 21-CV-08787-TSH, 2024 WL 5483606 (N.D. Cal. Oct. 22, 2024) ....................................3

*Cole v. Keystone RV Co.*,
   No. C18-5182RBL, 2020 WL 3969993 (W.D. Wash. July 14, 2020) ......................................6

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) .......................................................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ..............................................................................................................4, 10

*Fair v. King Cnty.*,
   No. 2:21-cv-1706-JHC, 2025 WL 1031274 (W.D. Wash. Apr. 7, 2025) ...................................4

*Farmers Ins. Co. of Ariz. v. DNS Auto Glass Shop LLC*,
   No. CV-21-01390-PHX-DGC, 2024 WL 1256042 (D. Ariz. Mar. 25, 2024), *opinion clarified*, 2024 WL 1961837 (D. Ariz. May 3, 2024) ..............................................................9

*Graves v. Mazda Motor Corp.*,
   675 F. Supp. 2d 1082 (W.D. Okla. 2009), *aff'd*, 405 F. App'x 296 (10th Cir. 2010) ...............7

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
   340 F. Supp. 3d 934 (N.D. Cal. 2018) ........................................................................................8

*Johnson v. Ridge Tool Mfg. Co.*,
   No. 21 C 1939, 2025 WL 2430567 (N.D. Ill. Aug. 22, 2025) .............................................5, 10

*Lewis v. Kern Cnty.*,
   No. 1:21-CV-00378-KES-CDB, 2025 WL 821895 (E.D. Cal. Mar. 13, 2025) ........................8

*McCalla v. ACE Am. Ins. Co.*,
   No. CV-20-01561-PHX-JAT, 2022 WL 2290552 (D. Ariz. June 24, 2022) ...........................11

*Moller v. Cnty. of San Bernardino*,
   No. 5:22-CV-01306-DSF-MARx, 2024 WL 5185640 (C.D. Cal. Jan. 2, 2024) .....................10

*Near v. Enerco Grp., Inc.*,
   No. CV 3:23-3483-SAL, 2025 WL 1865224 (D.S.C. Mar. 25, 2025) .......................................7

*O'Bryant v. Johnson & Johnson*,
  No. 20-2361 (MAS) (DEA), 2022 WL 7670296 (D.N.J. Oct. 13, 2022) .................................8

*Palantir Techs., Inc. v. Abramowitz*,
  No. 19-cv-06879-BLF, 2022 WL 22913842 (N.D. Cal. Nov. 3, 2022) ....................................4

*Patterson v. Six Flags Theme Parks Inc.*,
  No. 2:21-CV-02398-KJM-AC, 2024 WL 2112376 (E.D. Cal. May 9, 2024) ........................10

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
  461 F. Supp. 2d 271 (D.N.J. 2006) ........................................................................................7

*Plunkett v. Best Buy, Inc.*,
  745 F. App'x 725 (9th Cir. 2018) ..........................................................................................10

*Rogers v. Raymark Indus., Inc.*,
  922 F.2d 1426 (9th Cir. 1991) ................................................................................................3

*Salinero v. Johnson & Johnson*,
  No. 1:18-CV-23643-UU, 2019 WL 7753453 (S.D. Fla. Sept. 5, 2019) ..................................9

*Siqueiros v. Gen. Motors LLC*,
  No. 16-CV-07244-EMC, 2022 WL 74182 (N.D. Cal. Jan. 7, 2022) .........................................8

*Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*,
  927 F. Supp. 2d 1069 (D. Or. 2013) .....................................................................................11

*State Farm Fire & Cas. Co. v. Electrolux N. Am.*,
  No. 2:10-cv-01147-RSM, 2012 WL 161821 (W.D. Wash. Jan. 4, 2012) ................................4

*United States v. Chang*,
  207 F.3d 1169 (9th Cir. 2000) ................................................................................................3

*Valentine v. Pioneer Chlor Alkali Co.*,
  921 F. Supp. 666 (D. Nev. 1996) ..........................................................................................10

*Willard v. City of Everett*,
  637 F. App'x 441 (9th Cir. 2016) ............................................................................................6

**Rule**

Fed. R. Evid. 702 ................................................................................................2, 2, 4, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' expert, Cynthia Rando, is a "human factors professional" who seeks to testify at trial that Uber's in-app reporting features for sexual assault ("SA") and sexual misconduct ("SM") are inadequate and unnecessarily complex. Her opinions are inadmissible for a host of reasons.

*First*, Ms. Rando does not have any relevant experience regarding the rideshare industry or application design that would allow her to comment on Uber's user interface ("UI") or user experience ("UX") with respect to reporting safety issues. *Second*, Ms. Rando's opinions are not relevant to this action because neither Ms. Dean nor any other bellwether Plaintiff alleges that she was unable to easily or timely report her alleged safety incident due to Uber's in-app reporting procedures. *Third*, Ms. Rando's opinions regarding the "usability" of Uber's reporting features and "Uber's safety programs, reporting systems, and testimony" are not based on a reliable methodology, such as a survey of users or objective means of evaluating user experience, but are instead premised entirely on her own speculative "say so." *Fourth*, Ms. Rando's purported review of "Uber's safety programs, reporting systems, and testimony" invades the province of the jury by purporting to summarize Uber documents and testimony that the jury is just as qualified to interpret. *Fifth*, and finally, Ms. Rando's opinions concerning Uber's knowledge or state of mind are not proper expert testimony.

For all of these reasons, elaborated below, Ms. Rando's opinions should be excluded from trial.

## II. BACKGROUND

Ms. Rando is "the Founder/CEO of Sophic Synergistics, LLC, a human centered design consulting firm[,]" a role she has held since 2015. Rando Rep. ¶¶ 1, 7 (Ex. 1). She claims to "possess 20+ years of experience in the field of Human Factors and Human Safety as a Subject Matter Expert and Educator[,]" including "10+ years of service at NASA's Johnson Space Center[.]" *Id*. ¶ 7. She also claims to "provide consulting services to industry, academia, non-profit organizations, and government[,]" which includes working with them "to design, develop, and implement human factors and human safety programs[.]" *Id*. ¶¶ 8-9. But Ms. Rando is not a "software engineer" with any experience designing UI/UX software for apps such as Uber's. *See* Rando Dep. 35:25-36:11 (Ex. 2). Indeed, the only time Ms. Rando has assessed

1

Uber's app (and other similar apps) has been in the context of previous litigations. *See id*. 8:5-13, 24:24-25:13 (referring to her work with respect to Lyft in the context of a litigation). She is also not an expert in "sexual assault." *Id*. 37:1-4; *see also id*. 41:18-42:7, 43:4-10, 44:2-8 (referencing Ms. Rando's lack of publications and experience concerning "sexual assault or sexual misconduct").

Even so, Ms. Rando seeks to testify in this litigation that "Uber failed to implement fundamental Human Factors and Human Safety design standards in its in-app reporting procedures and did not address known issues based on user data it possessed." Rando Rep. ¶ 16. In particular, she asserts that Uber's in-app reporting features for sexual assault and misconduct ("SA/SM") are inadequate because: (i) they are "obscure and overcomplicated—conditions that predictably depress reporting for a task already prone to underreporting"; and (ii) "the post-trip 'rate the driver' pathway" for reporting "routed sexual assault/misconduct experiences into tagged feedback" that was "treated as nominal rating feedback" and not "monitored for escalation" through a direct reporting system. *Id*.

## III.    STATEMENT OF THE ISSUES TO BE DECIDED

1.    Have Plaintiffs failed to demonstrate by a preponderance of evidence that Ms. Rando's proffered testimony satisfies the requirements of qualification, reliability, and relevance that are enumerated in Federal Rule of Evidence 702?

## IV.    LEGAL STANDARD

The standard for admissibility under Fed. R. Evid. 702 is set forth in Uber's Motion to Exclude the Opinions of Plaintiffs' Expert Minette Drumwright and incorporated herein by reference.

## V.    ARGUMENT

### A.    Ms. Rando Is Not Qualified To Opine On The Adequacy Of Uber's In-App Reporting Systems.

According to Ms. Rando, "human factors" is "a scientific discipline" concerned with the "understanding and application of Human Safety engineering principles and risk mitigation efforts in the design and implementation of human-technology and interaction with interfaces." Rando Rep. ¶ 14. Ms. Rando claims that her team's "expertise includes working with both consumer-facing platforms and regulated technologies" and therefore "[e]valuating applications like the Uber rideshare platform falls

2

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT CYNTHIA RANDO
Case No. 3:23-md-03084-CRB (LJC)

squarely within [her] expertise and standard of practice." *Id.* ¶ 11. But Ms. Rando's general experience in "human factors" does not qualify her to reliably analyze or comment on Uber's in-app reporting procedures for SA/SM incidents. Her only professional experience prior to starting her consulting firm was at NASA, where she did not address issues relating to app design or safety reporting. *See id.*, Appx. A. Ms. Rando has no experience in the rideshare industry, has never been involved in designing UI/UX interface of mobile applications, or *any* other product, and does not have any training or experience related to reporting sexual assaults or sexual misconduct. As a result, her general qualifications in the field of "human factors" do not qualify her to opine on whether Uber's in-app reporting procedures concerning sexual assaults and sexual misconduct were inadequate.

The law is well settled that "[a] person qualified to give an opinion on one subject is not necessarily qualified to opine on others." *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991). In addition, "[w]hile a witness 'can qualify as an expert through practical experience in a particular field,' it must be shown that the experience relates to issues in dispute such that the expertise would be helpful to the trier of fact." *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-08787-TSH, 2024 WL 5483606, at *9 (N.D. Cal. Oct. 22, 2024) (citation omitted); *see also United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (district court did not abuse its discretion in determining that expert's "'practical experience in international finance' did not amount to practical experience determining whether a particular security is counterfeit, the fact at issue").

Ms. Rando lacks the needed expertise here. Her CV fails to specify the "consumer-facing platforms and regulated technologies" she has worked with previously as a "human factors professional." *See* Rando Rep., Appx. A. While Ms. Rando clarified at her deposition that she had assessed apps in the "medical software domain space" and in the "aerospace sector under government contracts," Rando Dep. 24:8-23, her only assessment of Uber's app and of any app similar to Uber was admittedly in the context of prior litigation, *id.* 24:24-25:13 (referring to her work with respect to Lyft in the context of a litigation); *see also id.* 8:5-13. Further, while Ms. Rando claims to have an expertise in "Software Applications Ergonomics," *see* Rando Rep., Appx. A, she never identifies the specific software applications she has assessed and the purpose of those assessments. And she admitted that she has never "specifically" assessed

a "sexual assault reporting process in any sort of mobile application." Rando Dep. 25:14-21, 26:7-12. As such, Ms. Rando has never assessed *any* technology company's app—let alone another *ridesharing* company's app—for its "design and implementation of [its] reporting procedures for" SA/SM, outside of a litigation context. Rando Rep. ¶ 12. Thus, while Ms. Rando may have *generalized* experience as a human-factors expert, there is no evidence that she has the *specific* experience necessary for her proffered opinions regarding Uber and its in-app reporting procedures concerning sexual assault and sexual misconduct.

### B. Ms. Rando's Opinions Are Irrelevant To Ms. Dean's Claims (Or Those Of Any Other Bellwether Plaintiff).

"Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (citing Fed. R. Evid. 702(a)). As the Ninth Circuit has explained, expert testimony must satisfy a "fit" requirement, whereby it "logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995); *see also, e.g.*, *Fair v. King Cnty.*, No. 2:21-cv-1706-JHC, 2025 WL 1031274, at *14 (W.D. Wash. Apr. 7, 2025) (excluding expert testimony about the accuracy of DNA testing generally where the accuracy of the DNA tests in the case was not at issue); *Palantir Techs., Inc. v. Abramowitz*, No. 19-cv-06879-BLF, 2022 WL 22913842, at *8 (N.D. Cal. Nov. 3, 2022) (excluding expert opinion on a topic "not at issue in this litigation"); *State Farm Fire & Cas. Co. v. Electrolux N. Am.*, No. 2:10-cv-01147-RSM, 2012 WL 161821, at *3-4 (W.D. Wash. Jan. 4, 2012) (excluding expert's opinion about risk of dryers causing fires generally as irrelevant to the question of whether the particular dryer at issue in the case caused a fire).

The adequacy of Uber's in-app reporting procedures is not at issue in any of the bellwether cases, including Ms. Dean's. Neither Ms. Dean nor any other bellwether Plaintiff has alleged that she wanted to report her alleged incident—during or after a ride—but was unable to do so as a direct consequence of the inadequacy of Uber's in-app reporting procedures.[1] Indeed, *four* of the Plaintiffs acknowledge that they

---

[1] While Ms. Rando referenced a "general sentiment" that Plaintiffs had difficulty reporting their alleged incidents to Uber during her deposition, she could not support her belief with specific deposition

were able to report their alleged incidents to Uber. *See* B.L. Fifth Amend. PFS at 13; A.R.2 Second Amend. PFS at 14; LCHB128 Amend. PFS at 13; Dean PFS at 13 [**TBC**].[2] But Ms. Rando herself essentially ignores Plaintiffs' cases, noting that her report is "not specific to the Plaintiffs." Rando Dep. 63:18-22. Her report does not "identify any of the[] Plaintiffs who could not report their sexual assault to Uber" or "Plaintiffs who found anything about Uber's reporting flow to be misleading or confusing[.]" *Id*. 51:18-52:5. That is likely because the report does not cite to Plaintiffs' deposition testimony, or any documents produced by any of the Plaintiffs. Not only that, but testimony from Plaintiffs' depositions is also conspicuously missing from Ms. Rando's "Materials Considered" list, which otherwise includes **67** depositions of Uber's witnesses. *See* Rando Rep., Appx. D. Ms. Rando also admittedly did not conduct any interviews with Plaintiffs concerning their experience with Uber's in-app reporting procedures. *See* Rando Dep. 46:22-24. Consequently, she could not remember the "specific reporting channel" that Plaintiffs used or tried to use to report their alleged incidents to Uber, or how long any of the Plaintiffs spent trying to make such a report. *Id*. 49:13-16; 50:3-8. Indeed, she admitted that she could not "take [one] through each of these Plaintiffs and tell . . . what their reporting experience was like" because "that wasn't where [her] focus was." *Id*. 52:12-18.

Consequently, the alleged inadequacy of Uber's in-app reporting procedures does not move the needle on whether any specific injuries were caused to Plaintiffs due to Uber's conduct. Hence, Ms. Rando's opinions on Uber's in-app reporting procedures are completely untethered from any relevant facts of these bellwether cases and should be excluded—as they have been previously, in similar circumstances. *See Johnson v. Ridge Tool Mfg. Co.*, No. 21 C 1939, 2025 WL 2430567, at *6 (N.D. Ill. Aug. 22, 2025) (holding that because "Plaintiff did not read the user manual prior to operating the machine . . . any opinion from Rando related to the user manual is irrelevant and therefore inadmissible"); *see also Willard v. City of Everett*, 637 F. App'x 441, 442 (9th Cir. 2016) (upholding exclusion of "human factors expert" because "[h]er proposed testimony wasn't relevant"); *Cole v. Keystone RV Co.*, No. C18-5182RBL, 2020 WL

---

testimony from Plaintiffs—testimony which was admittedly missing from her "Materials Considered." Rando Dep. 48:18-49:12.

[2]   The only remaining bellwether Plaintiff addressed by Ms. Rando—WHB 832—voluntarily chose to not report the incident to Uber. *See* WHB 832 Third Amend. PFS at 14.

3969993, at *9 (W.D. Wash. July 14, 2020) (excluding human factors expert's opinion "about the risks of formaldehyde exposure" because "there is no evidence of any formaldehyde exposure in this case").

### C. Ms. Rando's Opinions Are Unreliable.

Ms. Rando's report contains two parts: (i) "usability assessment[s] of Uber's reporting options for SA/SM" conducted by her; and (2) her evaluation of "Uber's safety programs, reporting systems, and testimony" based on "Human Factors and Safety principles that govern sound human factors and human safety design" identified by her. Rando Rep. ¶¶ 17-18. Both are inadmissible.

#### 1. Ms. Rando's "Usability Assessments" Lack A Methodology.

Ms. Rando's "usability assessments" are inadmissible because they purport to speak for user experiences with Uber's in-app reporting procedures without any objective support.

In multiple instances, Ms. Rando's report claims to speak **on behalf of "Uber riders"** and their experiences with Uber's in-app reporting procedures. *See, e.g.*, Rando Rep. ¶ 83 ("Based on established human factors and behavioral science principles, Uber riders—like most users—can be expected to select the options that are made most obvious in the default user flow, rather than exploring hidden or non-default paths."). But she acknowledges that the "primary source of [her] information . . . was *[her] own* systematic exploration of the user interfaces within the Uber app to identify how an Uber passenger could report an incident of SA/SM to Uber." *Id*. ¶ 18 (emphasis added). Put differently, Ms. Rando did not speak to or interview *any* user of Uber's app—let alone any of the bellwether Plaintiffs—in order to understand *their* experiences with Uber's in-app reporting procedure. Nor did she conduct consumer surveys or additional research to understand user experiences before forming conclusions about how users respond to Uber's in-app reporting procedures, since she believed "[i]t wasn't necessary to what [she] was doing." Rando Dep 74:4-9; *see also id*. 82:12-16, 83:1-6, 83:17-84:2. Instead, Ms. Rando and her team conducted their own private assessment of Uber's in-app reporting procedures—a process during which they took no notes, did not record themselves, and only documented screenshots of what they saw. *See id*. 15:6-16:11.

This means that Ms. Rando's "opinions appear based on her own 'say so' without supporting evidence or proof." *Near v. Enerco Grp., Inc.*, No. CV 3:23-3483-SAL, 2025 WL 1865224, at *8 (D.S.C. Mar. 25, 2025) (excluding human factors expert's opinion when the expert "did not engage in a reliable

6

methodology" and whose "opinions are not based on research conducted independent of this litigation"). The lack of communication with real users is particularly troubling with respect to the "usability assessment[s]" since Ms. Rando had to imitate "users' mental and emotional states" since she "assumed user[s] had a need to report a sexual assault/misconduct event." Rando Rep. ¶ 169. Ms. Rando does not explain how she accounted for "users' mental and emotional states," other than to state that she did. Accordingly, her usability assessments are unreliable and inadmissible.

### 2. Ms. Rando's Evaluation Of Uber's Safety Programs Is Subjective Narrative, Not Expert Opinion.

Ms. Rando's opinions regarding Uber's safety programs are also inadmissible because they are not grounded in "reliable evidence." *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 461 F. Supp. 2d 271, 277 (D.N.J. 2006) (excluding expert's "testimony regarding what physicians in general think/know" because such testimony is "speculative and not based on reliable evidence"). Courts have been clear that "[a]lthough human factors engineering is a legitimate discipline . . . the application of human factors principles can be highly subjective and thus conveniently malleable. Human factors testimony which is proffered **without a showing of objective support (testing or, at least, independent support in relevant literature)** invites close scrutiny to determine whether the expert's work is an exercise in facile advocacy (*e.g.* the "ipse dixit of the expert")." *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1103 (W.D. Okla. 2009), *aff'd*, 405 F. App'x 296 (10th Cir. 2010) (excluding expert's testimony because "his human factors evaluation . . . is not founded on any analysis of objective data") (emphasis added). Ms. Rando's opinions on safety programs fail that requirement for at least two reasons.

*First*, as in *Graves*, Ms. Rando's opinions have no "objective support," and are thus clearly "an exercise in facile advocacy." For starters, Ms. Rando's assessment of Uber's in-app reporting procedures comes from her analysis of deposition testimony of Uber witnesses and a handful of Uber's internal documents. *See* Rando Rep., Appx. D. But in those instances, her "analysis" is nothing more than a regurgitation of Uber testimony and documents accompanied by her unsupported opinions. *See, e.g.*, Rando Rep. ¶¶ 78-85 (relying on Uber's internal documents to show that "Uber should have expected riders to provide safety information in the familiar form"). An expert "may not restate or summarize record

7
DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT CYNTHIA RANDO
Case No. 3:23-md-03084-CRB (LJC)

evidence and then state a conclusion without applying a methodology that is reliable and which evinces his/her expertise." *Siqueiros v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022); *see also O'Bryant v. Johnson & Johnson*, No. 20-2361 (MAS) (DEA), 2022 WL 7670296, at *13 (D.N.J. Oct. 13, 2022) (testimony that "simply parrot[s] [d]efendant's corporate documents or offer[s] a narrative account of events from them will not be helpful to the jury") (citation omitted). That is because "the jury is in as good a position as the expert to draw conclusions from the evidence, and is capable of drawing its own inferences" from Uber's materials. *Siqueiros*, 2022 WL 74182, at *9 (quoting *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 992 (N.D. Cal. 2018)). But Ms. Rando admitted multiple times that she did not have independent data supporting her conclusions because "Uber didn't provide" it. Rando Dep. 84:22-85:5; *see also id*. 193:22-194:4, 210:8-25, 227:16-25, 228:10-16. This highlights her failure to conduct any independent research, other than summarizing Uber's internal documents.

      Plaintiffs will no doubt argue that Ms. Rando's analysis is based on her "experience" and her analysis of the "relevant literature" regarding human factors. *See* Rando Rep. ¶ 20. But that is not enough. "While [Ms. Rando] provides a summary of the 'relative literature,' [s]he fails to connect h[er] opinions with any methodology and fails to bridge the gap between the literature and h[er] opinions and conclusions." *Lewis v. Kern Cnty.*, No. 1:21-CV-00378-KES-CDB, 2025 WL 821895, at *3 (E.D. Cal. Mar. 13, 2025) (excluding opinion of human factors expert). Similarly, while Rule 702 contemplates that an expert witness may rely on his or her experience, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." 2000 Advisory Committee Notes. As a result, even a highly qualified expert "must still outline what specific evidence [s]he is relying on in forming h[er] opinions and why [her] experience is a sufficient basis for h[er] conclusions." *Farmers Ins. Co. of Ariz. v. DNS Auto Glass Shop LLC*, No. CV-21-01390-PHX-DGC, 2024 WL 1256042, at *8, *10 (D. Ariz. Mar. 25, 2024) (excluding expert who "offer[ed] no more explanation for his opinions than his general experience in the industry, coupled with vague references to conversations he's had over the years"), *opinion clarified*, 2024 WL 1961837 (D. Ariz. May

3, 2024). Ms. Rando fails to do so, except to rely on Uber's testimony and documents, regarding which the jurors can draw their own conclusions.

Ms. Rando has also stated that her report "appl[ies] rigorous, standards-aligned methodologies, grounded in established ISO standards," which "reflect decades of applied research and global consensus, have widespread adoption across industries, and establish baseline expectations." Rando Rep. ¶¶ 11, 23. But mere reference to ISO standards is insufficient since Ms. Rando does not have any relevant experience in the rideshare industry or in app design. *See Salinero v. Johnson & Johnson*, No. 1:18-CV-23643-UU, 2019 WL 7753453, at *14 (S.D. Fla. Sept. 5, 2019) (Expert "is [not] qualified to testify about the Defendants' failure to follow regulatory standards ('ISOs'). Even if [the expert] himself followed ISOs when conducting his *in vitro* polypropylene oxidative degradation testing, this does not render him qualified to opine that [d]efendants failed to follow the standards, as he is not a regulatory expert."). In any event, ISO standards are "voluntary," *see* Rando Dep. 149:11-150:3, and Ms. Rando has failed to explain how the violation of a **voluntary standard** could lead to **legal liability** for Uber in the present case. *See id*. 145:24-146:10 (acknowledging that there is a "difference[] between laws and ISO standards"). For that reason alone, Ms. Rando's opinions on Uber's safety programs do not constitute reliable expert opinion.

**Second**, and relatedly, Ms. Rando's opinions regarding Uber's safety programs are inadmissible because they are speculative. She opines that "[i]n order to gather accurate, thorough, and reliable data regarding driver SA/SM of riders, it is necessary for Uber . . . to make sure they are receiving" such data from its users, but that it does not do so due to its "failure to properly design and review its reporting flow[.]" Rando Rep. ¶¶ 90, 151. But this is pure speculation because, as noted above, Ms. Rando has no evidence from **actual** users of Uber's app. She therefore can only speculate that instances of sexual assault and sexual misconduct are not being reported to Uber due to its allegedly inadequate in-app reporting procedure. Such "speculation [and] conjecture [is] inadmissible[.]" *Valentine v. Pioneer Chlor Alkali Co.*, 921 F. Supp. 666, 672 (D. Nev. 1996) (citing *Daubert*, 509 U.S. at 589-90); *see also Plunkett v. Best Buy, Inc.*, 745 F. App'x 725 (9th Cir. 2018) (upholding exclusion of human factors expert's opinions because they "would not assist the trier of fact and were based on speculation"). The hollowness of Ms. Rando's

9

DEFENDANTS' MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT CYNTHIA RANDO

Case No. 3:23-md-03084-CRB (LJC)

argument becomes particularly pronounced due to her failure to provide any alternatives to Uber's in-app reporting procedures, which show increased user reporting. *See* Rando Dep. 102:7-12 (noting that she did not propose an "alternative design flow" since "[t]hat wasn't the objective."), 102:16-23 (noting that she did not conduct testing with an alternative design flow to determine if it "would have been better"). Failure to propose alternatives has previously been considered fatal to Ms. Rando's expert opinion—an outcome that is particularly appropriate here as well. *See Ridge Tool*, 2025 WL 2430567, at \*7 (excluding Ms. Rando's expert opinion since "her failure to draft or test any proposed alternative warnings . . . renders any such opinion unreliable"). For this reason, too, her opinions are unreliable and inadmissible.

### D. Ms. Rando's Opinions Regarding Uber's Alleged Knowledge Should Also Be Excluded.

Ms. Rando also improperly speaks to Uber's knowledge based on witness testimony and internal documents. *See* Rando Rep. ¶ 143 ("Uber knew that feedback submitted via the ratings and feedback tags screen was relevant to SA/SM, and that people reporting SA/SM would have difficulty knowing they were \*supposed to\* report via a different channel."); *id.* ¶ 145 ("In 2020, Uber still knew that its rider reporting processes were problematic."); *id.* ¶ 160 ("Uber knew as of 2017 that sexual assaults caused by drivers are nearly three times more likely to be caused by a driver with a 1-star rate greater than the mean.").

Ms. Rando's opinions about Uber's supposed knowledge should be excluded because questions pertaining to "state of mind are properly for the trier of fact." *Patterson v. Six Flags Theme Parks Inc.*, No. 2:21-CV-02398-KJM-AC, 2024 WL 2112376, at \*3 (E.D. Cal. May 9, 2024); *see also Moller v. Cnty. of San Bernardino*, No. 5:22-CV-01306-DSF-MARx, 2024 WL 5185640, at \*7 (C.D. Cal. Jan. 2, 2024) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind."); *Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury."); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020) (expert's state-of-mind conclusions were inadmissible because such "testimony intrudes on the province of the jury, wh[ich] is capable of

evaluating the same evidence and drawing conclusions without [the expert's] proffered testimony"), *aff'd*, 9 F.4th 1102 (9th Cir. 2021); *McCalla v. ACE Am. Ins. Co.*, No. CV-20-01561-PHX-JAT, 2022 WL 2290552, at *9-10 (D. Ariz. June 24, 2022) ("To the extent that Flood's testimony is based on his view of the corporate motivation of CorVel, expert testimony as to such matters is ordinarily inappropriate."). Ms. Rando's opinions on this topic are therefore improper and inadmissible.

## VI. CONCLUSION

For the foregoing reasons, the Court should grant Uber's Motion and exclude Ms. Rando's opinions in their entirety.

DATED: November 10, 2025                    Respectfully submitted,

/s/ Laura Vartain Horn
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC