Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*, No. 23-cv-06708 | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFFS' EXPERT DR. MINETTE DRUMWRIGHT; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Judge:      Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor<br><br>Judge:      Mag. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

**NOTICE OF MOTION AND MOTION TO EXCLUDE**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on a date and time to be set by the Court, before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") by and through their undersigned counsel, will and hereby do move the Court for an order, pursuant to Federal Rule of Evidence 702, excluding the opinions of Plaintiffs' expert Minette E. Drumwright.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings, papers, and records filed in this action, and such further arguments and matters as may be offered at the time of the hearing of this Motion.

Dated: November 10, 2025                KIRKLAND & ELLIS LLP


                                         By: */s/ Laura Vartain Horn*

                                         *Counsel for Uber*

**TABLE OF CONTENTS**

**Page**

I.   BACKGROUND ...................................................................................................................2

II.  LEGAL STANDARD............................................................................................................2

III. ARGUMENT ........................................................................................................................3

    A.   Dr. Drumwright's Marketing Opinions Are Inadmissible. ......................................3

    B.   Dr. Drumwright's Ethics Opinions Are Inadmissible..............................................5

    C.   Dr. Drumwright's Failure-To-Warn Opinions Should Be Excluded........................9

    D.   Dr. Drumwright's Opinions Regarding Uber's Knowledge
        Should Be Excluded................................................................................................10

IV.  CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abarca v. Merck & Co.*,
  No. 1:07-CV-0388 OWW DLB, 2010 WL 4643642 (E.D. Cal. Nov. 9, 2010) .........................8

*In re Actimmune Mktg. Litig.*,
  No. C 08-02376 MHP, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F.
  App'x 651 (9th Cir. 2011) ..................................................................................................4

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
  613 F. Supp. 3d 1308 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) ........................7, 10

*In re Baycol Prods. Litig.*,
  532 F. Supp. 2d 1029 (D. Minn. 2007) ................................................................................7

*Boyer v. City of Simi Valley*,
  No. 2:19-cv-00560-DSF-JPR, 2024 WL 993316 (C.D. Cal. Feb. 13, 2024) .............................3

*In re Cessna 208 Series Aircraft Prods. Liab. Litig.*,
  MDL No. 1721, 2009 WL 1357234 (D. Kan. May 12, 2009) .....................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .........................................................................................................3, 6

*Engilis v. Monsanto Co.*,
  151 F.4th 1040 (9th Cir. 2025) ..........................................................................................3

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) .............................................................................................................3

*Holman Enters. v. Fid. & Guar. Ins. Co.*,
  563 F. Supp. 2d 467 (D.N.J. 2008) .........................................................................................9

*Insolia v. Philip Morris Inc.*,
  53 F. Supp. 2d 1032 (W.D. Wis. 1999), *aff'd in part*, *rev'd in part on other grounds*,
  216 F.3d 596 (7th Cir. 2000) ...............................................................................................4

*Johns v. Bayer Corp.*,
  No. 09CV1935 AJB (DHB), 2013 WL 1498965 (S.D. Cal. Apr. 10, 2013) .........................5, 7

*Johnson v. Wyeth LLC*,
  No. CV 10-02690-PHX-FJM, 2012 WL 1204081 (D. Ariz. Apr. 11, 2012) ...........................7

*Keams v. Tempe Tech. Inst., Inc.*,
  993 F. Supp. 714 (D. Ariz. 1997) .....................................................................................2, 10

*King v. DePuy Orthopaedics Inc.*,
 No. CV-23-00196-PHX-SMB, 2023 WL 5624710 (D. Ariz. Aug. 31, 2023).........................11

*Liberty Life Ins. Co. v. Myers*,
 No. CV 10-2024-PHX-JAT, 2013 WL 524587 (D. Ariz. Feb. 11, 2013) ............................6, 7

*Martinez v. Cnty. of Alameda*,
 No. 20-CV-06570-TSH, 2024 WL 1117952 (N.D. Cal. Mar. 13, 2024)..................................9

*Moller v. Cnty. of San Bernardino*,
 No. 5:22-CV-01306-DSF-MARx, 2024 WL 5185640 (C.D. Cal. Jan. 2, 2024)....................10

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
 523 F.3d 1051 (9th Cir. 2008) ...............................................................................................9

*In re Norplant Contraceptive Prods. Liab. Litig.*,
 MDL No. 1038, 1997 WL 81092 (E.D. Tex. Feb. 21, 1997) ..................................................4

*Optical Sols., Inc. v. Nanometrics, Inc.*,
 No. 18-cv-00417-BLF, 2023 WL 8101885 (N.D. Cal. Nov. 21, 2023) ...................................3

*Patterson v. Six Flags Theme Parks Inc.*,
 No. 2:21-CV-02398-KJM-AC, 2024 WL 2112376 (E.D. Cal. May 9, 2024)........................10

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
 461 F. Supp. 2d 271 (D.N.J. 2006) ....................................................................................4, 5

*Pritchett v. I-Flow Corp.*,
 No. 09-CV-02433-WJM-KLM, 2012 WL 1059948 (D. Colo. Mar. 28, 2012).......................7

*In re Rezulin Prods. Liab. Litig.*,
 309 F. Supp. 2d 531 (S.D.N.Y. 2004)............................................................................6, 7, 8

*Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*,
 927 F. Supp. 2d 1069 (D. Or. 2013) ....................................................................................10

*Snyder v. Bank of Am., N.A.*,
 No. 15-CV-04228-KAW, 2020 WL 6462400 (N.D. Cal. Nov. 3, 2020) ..............................10

*United States v. 99.66 Acres of Land*,
 970 F.2d 651 (9th Cir. 1992) .................................................................................................2

*In re Welding Fume Prods. Liab. Litig.*,
 MDL No. 1535, 2005 WL 1868046 (N.D. Ohio Aug. 8, 2005) .............................................9

*Wolfe v. McNeil-PPC, Inc.*,
 No. 07-348, 2011 WL 1673805 (E.D. Pa. May 4, 2011).......................................................8

*Zetz v. Bos. Sci. Corp.*,
    644 F. Supp. 3d 684 (E.D. Cal. 2022)..........................................................................................6

**Rule**

Fed. R. Evid. 702 ................................................................................................................2, 2, 3, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

Minette E. Drumwright, a marketing professor, seeks to offer speculative opinions untethered to her expertise. In particular, Dr. Drumwright seeks to testify about: (1) Uber's marketing and its supposed impact on riders who use the Uber platform; (2) Uber's ethical duties and so-called "unethical" behavior; (3) Uber's supposed failure to warn riders who use the Uber platform about sexual assault; (4) various safety features; and (5) Uber's supposed knowledge of sexual assaults involving riders who use the Uber platform.[1] Dr. Drumwright's opinions should be excluded because they are not grounded in a reliable methodology. Instead, she speculates about the effects of Uber's marketing, roots her ethics opinions in a plethora of ethical codes and standards that do not apply to Uber, offers impermissible legal conclusions, and makes unsubstantiated claims about Uber's safety features, safety outcomes, and knowledge.

Dr. Drumwright previously sought to offer substantially similar opinions in the California state court JCCP, but Judge Schulman determined they were "largely inadmissible." As Judge Schulman explained, Dr. Drumwright's ethics opinions, "based in large part on the 'professional norms and standards' of numerous organizations" "of which Uber is concededly not even a member," are inadmissible because "if Uber had a duty to warn of the risks of sexual assault on its platform, that duty would not stem from the standards of marketing and advertising associations." JCCP Order at 39-40 (Ex. 1). Judge Schulman also explained that because "this is not a broad-based class or other challenge to Uber's overall marketing and advertising practices," Dr. Drumwright's marketing opinions lacked relevance, and Dr. Drumwright would not be permitted to "testify that any given Plaintiff relied on a specific advertisement or marketing practice, or speculate that she reasonably could have done so, in choosing to utilize Uber's platform." *Id*. at 39. In addition, Dr. Drumwright's "opinions that Uber had a duty to warn female passengers of the risk of sexual assault on its platform and that it breached that duty" "amount[s] to [] an inadmissible" legal opinion." *Id.* at 40-41. Dr. Drumwright's opinions "regarding Uber's alleged use of its 'soft power' to 'kill' or 'squash and fog' media stories that would negatively impact public perceptions of Uber's safety are irrelevant" and "threaten an undue consumption of the

---

[1] Dr. Drumwright submitted a supplemental expert report 26 days after the expert disclosure deadline, which Uber moved to strike as untimely. *See* ECF No. 4271. Because the supplemental report is procedurally improper, Uber has not substantively addressed that report in this motion.

DEFENDANTS' MOT. TO EXCLUDE THE OPINIONS OF PLAINTIFFS' EXPERT DR. MINETTE DRUMWRIGHT
Case No. 3.23-md-03084-CRB (LJC)

jury's time." *Id.* at 41. And Judge Schulman also ordered Dr. Drumwright to "refrain[] from offering improper opinions regarding Uber's state of mind (e.g., what it intended or was motivated by)." *Id.* at 41. Uber respectfully urges this Court to adopt the same approach.

## I. BACKGROUND

Minette E. Drumwright, a marketing professor and frequent plaintiffs' witness, seeks to broadly opine on how Uber "marketed the safety [of] its rideshare business with respect to sexual assault and sexual misconduct occurring on its platform, and to offer an opinion as to how Uber's conduct compared to its own internal, as well as industry and other, standards." Drumwright Rep. at 5 (Ex. 2). Specifically, Dr. Drumwright seeks to testify that "Uber's marketing and strategic communications were unreasonable, reckless, and irresponsible" and "failed to meet the norms, guidelines, and standards Uber had set for itself, as well as those described by numerous leading professional organizations." *Id.* at 5-6.

## II. LEGAL STANDARD

Under Federal Rule of Evidence 702, the party offering testimony of a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" must demonstrate to the Court by a preponderance of the evidence that (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. A witness may only offer opinion testimony if she qualifies as an expert "by knowledge, skill, experience, training, or education[.]" *Id.*; *see also Keams v. Tempe Tech. Inst., Inc.*, 993 F. Supp. 714, 721 (D. Ariz. 1997) (quoting Rule 702 and explaining that witness's "expert status would not survive the close scrutiny demanded by Rule 702"); *United States v. 99.66 Acres of Land*, 970 F.2d 651, 657 (9th Cir. 1992) (affirming expert's exclusion and noting that "testimony is properly excluded when foundational facts demonstrating qualification are absent").

Because expert testimony "can be both powerful and quite misleading," the Court plays an important "gatekeeping role" in ensuring that the requirements of Rule 702 are satisfied. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595, 597 (1993); *see also Gen. Elec. Co. v. Joiner*, 522 U.S.

2
DEFENDANTS' MOT. TO EXCLUDE THE OPINIONS OF PLAINTIFFS' EXPERT DR. MINETTE DRUMWRIGHT
Case No. 3.23-md-03084-CRB (LJC)

136, 142 (1997) (emphasizing the trial court's "'gatekeeper' role" in "screening" expert evidence for relevance and reliability). Recent amendments to Rule 702 underscore the importance of that gatekeeping role and emphasize that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology" go to the admissibility of expert evidence, not its weight. *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (quoting Fed. R. Evid. 702 advisory committee's note to 2023 amendment).

The U.S. Court of Appeals for the Ninth Circuit has unequivocally held that, under amended Rule 702, there is no longer a "liberal thrust favoring admission" or any "categorical preference for admitting expert testimony." *Engilis*, 151 F.4th at 1050 (citation omitted); *see also Optical Sols., Inc. v. Nanometrics, Inc.*, No. 18-cv-00417-BLF, 2023 WL 8101885, at *1 (N.D. Cal. Nov. 21, 2023) (describing the newly amended Rule 702 as a "more stringent standard"); *Boyer v. City of Simi Valley*, No. 2:19-cv-00560-DSF-JPR, 2024 WL 993316, at *1 (C.D. Cal. Feb. 13, 2024) (noting that, under the 2023 amendments to Rule 702, "[t]he Court is required to analyze the expert's data and methodology at the admissibility stage more critically than in the past"). Rather, "a proponent of expert testimony must always establish the admissibility requirements of Rule 702 by a preponderance of the evidence," or the Court must exclude the testimony. *Engilis*, 151 F.4th at 1050.

## III. ARGUMENT

### A. Dr. Drumwright's Marketing Opinions Are Inadmissible.

Dr. Drumwright seeks to opine broadly on Uber's marketing practices, claiming that Uber "misle[d] the public regarding the safety of Uber's rides." Drumwright Rep. at 5; *id.* at 86 ("Uber has addressed safety and background checks with misleading marketing[.]"). Dr. Drumwright also claims that Uber "target[ed]" the "vulnerable" population—i.e., women, intoxicated individuals, and individuals alone at night—through its marketing. *Id.* at 5, 117. Dr. Drumwright's various opinions about the supposed purpose and effect of Uber's marketing practices should be excluded because they are irrelevant and based entirely on speculation.

First, Dr. Drumwright has made no effort to connect these opinions to any individual Plaintiff's case, and they are therefore irrelevant. As Judge Schulman noted in excluding substantively similar marketing opinions, "this is not a broad-based class or other challenge to Uber's overall marketing and advertising practices." JCCP Order at 39. Thus, Dr. Drumwright should not be permitted to "testify that any given Plaintiff relied on a specific advertisement or marketing practice, or speculate that she reasonably could have done so, in choosing to utilize Uber's platform." *Id*.

Although Dr. Drumwright claims to "have read [Plaintiffs'] depositions," Drumwright Dep. 3:17-25 (Ex. 3), she does not cite to any deposition testimony from any of the Plaintiffs discussing Uber's advertising because she did not think such evidence was "necessary or -- or relevant to the opinions that [she] was giving," *id.* 47:20-48:7, and she could only state that Plaintiffs "were recalling [advertising] themes in ads and not specific ads," *id.* 45:6-14. This does not suffice to render her opinions relevant. *See In re Norplant Contraceptive Prods. Liab. Litig.*, MDL No. 1038, 1997 WL 81092, at *1 (E.D. Tex. Feb. 21, 1997) ("Absent evidence that the physician[] [was] exposed to [these] materials . . . the promotional and advertising materials are not relevant evidence."); *see also In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009) ("That plaintiffs' doctors had access or were potentially exposed to defendants' misrepresentations is not sufficient to establish causation . . . ."), *aff'd*, 464 F. App'x 651 (9th Cir. 2011).

Second, Dr. Drumwright's marketing opinions are separately inadmissible because they are not grounded in "reliable evidence." *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 461 F. Supp. 2d 271, 277 (D.N.J. 2006) (excluding expert's "testimony regarding what physicians in general think/know" because such testimony is "speculative and not based on reliable evidence"); *see also Insolia v. Philip Morris Inc.*, 53 F. Supp. 2d 1032, 1041 (W.D. Wis. 1999) (excluding marketing expert's "sweeping assertions" that tobacco industry's advertising caused consumers to underappreciate the risks of smoking absent citations to "hard evidence," such as "citations to public opinion surveys, anthropological, market or sociological studies" or other evidence "that would demonstrate the actual impact of . . . advertising"), *aff'd in part, rev'd in part on other grounds*, 216 F.3d 596 (7th Cir. 2000). Dr. Drumwright admitted that she did not

conduct any consumer research or survey to support her marketing opinions. Drumwright Dep. 119:2-6; *id.* 122:7-14. Dr. Drumwright also did not conduct any interviews of riders or drivers who use the Uber platform. *Id.* 122:19-24. For example, Dr. Drumwright has no basis to classify Uber's marketing and advertisement as "problematic" based on how the riders who use the Uber platform supposedly perceive the advertisements, given her admission that she "ha[s] not done consumer surveys" about how consumers perceive those advertisements and that "there's room for interpretation" with respect to the ads. *Id.* 217:6-218:6.

Dr. Drumwright apparently believes that objective evidence to support her marketing opinions is not "necessary" because the information she had—which includes Uber's internal documents, case depositions and news reports—was "a rich data set." *Id.* 114:21-115:2, 119:2-6, 121:14-122:11; *see also id.* 207:22-208:11; *id.* 210:23-211:5. But courts within the Ninth Court have made clear that mere reliance on "third-party market research reports and [a defendant]'s own internal documents" is not a sufficiently reliable methodology to opine on "the impact of marketing on consumer behavior." *Johns v. Bayer Corp.*, No. 09CV1935 AJB (DHB), 2013 WL 1498965, at *27-28 (S.D. Cal. Apr. 10, 2013). This, too, requires exclusion of her opinions. *Pfizer*, 461 F. Supp. 2d at 277.

**B.     Dr. Drumwright's Ethics Opinions Are Inadmissible.**

Dr. Drumwright's proposed testimony includes extensive commentary on Uber's so-called ethical obligations. For example, Dr. Drumwright opines that Uber "fell short" of "conduct[ing] business ethically" by "creat[ing] and perpetuat[ing] false and misleading marketing messages about its safety and background checks," Drumwright Rep. at 96, and "target[ing] vulnerable segments (e.g., young women) in dangerous contexts," *id.* at 125. Similarly, she opines that Uber acted "unreasonab[ly], reckless[ly], and irresponsib[ly]" by focusing "on the perception of Uber's safety and user safety" as opposed to "actual safety," *id.* at 5, 14, 77, and "in doing so, Uber fell below" ethical standards "reflected by many other organizations," *id.* at 83. She also claims that "Uber's PR fell short of [ethical] norms, guidelines, and standards when it used dark-PR tactics to attempt to 'kill' and 'squash and fog' negative news stories because it was not interjecting ethics into its communications." *Id.* at 154-56; *see id.* at 148, 152.

Judge Schulman previously excluded these opinions, explaining that they are "based in large part on the 'professional norms and standards' of numerous organizations" and "if Uber had a duty to warn [] of the risks of sexual assault on its platform, that duty would not stem from the standards of marketing and advertising associations." JCCP Order at 39-40. Judge Schulman also held that "Dr. Drumwright's opinions regarding Uber's alleged use of its 'soft power' to 'kill' or 'squash and fog' media stories that would negatively impact public perceptions of Uber's safety are irrelevant" "and "threaten an undue consumption of the jury's time." *Id.* at 41. Uber respectfully urges this Court to reach the same conclusion.[2] *See Liberty Life Ins. Co. v. Myers*, No. CV 10-2024-PHX-JAT, 2013 WL 524587, at *4 (D. Ariz. Feb. 11, 2013) (excluding expert opinion that relied on data that "does not relate to any issue in the case [and thus] is not relevant"); *see also Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.") (citation omitted).

Dr. Drumwright's ethics opinions are inadmissible for other reasons, too. First, they are irrelevant because Plaintiffs' claims turn on legal standards, not ethical ones. As one court explained in rejecting ethics testimony, "[w]hile the defendants may be liable in the court of public opinion, or before a divine authority for any ethical lapses, expert opinion as to the ethical character of their actions simply is not relevant to th[is] lawsuit[]." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004) (precluding plaintiffs from offering any testimony concerning ethical standards or application of ethical standards to alleged conduct of defendant manufacturers); *see also Zetz v. Bos. Sci. Corp.*, 644 F. Supp. 3d 684, 703 (E.D. Cal. 2022) (agreeing with other courts that "matters related to corporate conduct and ethics are not appropriate subjects of expert testimony because opinions on these matters will not assist the jury" and thus excluding experts' testimony to the extent they attempted to do so) (citation omitted); *Liberty Life Ins.*, 2013 WL 524587, at *7 ("Legal conclusions are not relevant for an expert witness to solely testify about."). Even Dr. Drumwright conceded that there is not "necessarily overlap completely"

---

[2] Although Dr. Drumwright opines that "Uber's standards were very much in sync with those [of] other organizations," Drumwright Dep. 132:2-10, 142:2-25, she has no objective basis for this opinion, *id.* 172:13-173:1 (Dr. Drumwright conceding that she does not "know what Uber's interactions with these codes have been"). But even if that were true, it would not provide any legal basis to hold Uber liable.

between advertising law and advertising ethics. Drumwright Dep. 66:5-20; *see also* Drumwright Dep. 84:2-4 (Ex. 4) (Dr. Drumwright conceding that it is "a mistake to assume that because something is unethical it is illegal[.]"). This is so because "you could say . . . this is legal, [even] if unethical[.]" Drumwright Dep. 71:10-72:1; *see also* Drumwright JCCP Dep. 95:3-7. For this reason, too, Dr. Drumwright's ethics opinions should be excluded.

Second, Dr. Drumwright's report regurgitates cherry-picked statements from Uber related to so-called ethical obligations, including corporate values statements and passages from Uber's "codes of conduct," employee handbooks, and community guidelines. Drumwright Rep. at 40-67. But such evidence "is better presented through introduction of documents or non-expert testimony," rather than expert testimony that simply "regurgitat[es] factual information" with the false imprimatur of some special knowledge of the subject. *Pritchett v. I-Flow Corp.*, No. 09-CV-02433-WJM-KLM, 2012 WL 1059948, at *7 (D. Colo. Mar. 28, 2012); *see also Johns*, 2013 WL 1498965, at *28 ("None of this evidence or testimony requires the providence of an expert."); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1322 (S.D. Cal. 2020) (excluding expert because, *inter alia*, "expert testimony cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence"), *aff'd*, 9 F.4th 1102 (9th Cir. 2021); *Johnson v. Wyeth LLC*, No. CV 10-02690-PHX-FJM, 2012 WL 1204081, at *3 (D. Ariz. Apr. 11, 2012) ("To be clear, this court will not permit either Dr. Parisian or Dr. Blume to merely recite or summarize documents.").

Third, Dr. Drumwright's ethics opinions are also speculative. Courts have recognized that expert testimony "concerning the ethical obligations of . . . companies and whether the defendants' conduct was ethical [is] inadmissible" because it rests on "personal, subjective views." *In re Rezulin*, 309 F. Supp. 2d at 542-43; *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1053, 1057-58 (D. Minn. 2007) (excluding expert testimony that the defendant "was unethical" because "[p]ersonal views on corporate ethics and morality are not expert opinions"). The opinions offered here are no different. Dr. Drumwright "compared what Uber did or did not do to address sexual violence" and compared those actions to "the norms, guidelines, and standards set by" a number of non-binding "professional organizations." Drumwright Rep.

at 14. This so-called "methodology" is not sufficient. For example, Dr. Drumwright seeks to opine that Uber acted unethically by using "dark-PR to attempt to 'kill' . . . media stories" and to "press its nonprofit partners to reinforce Uber's brand image[.]" *Id.* at 76. But Dr. Drumwright admitted that she was not aware of any specific instances in which Uber used dark PR to "kill" news stories, Drumwright Dep. 287:8-288:13; she could not cite to any direct communications between Uber and media personnel that evidence Uber's so-called use of dark PR, *id.* 289:20-290:12, 291:7-14; and she did not have any indication that Uber's nonprofit partners decided to work with Uber due to use of dark PR, *id.* 299:8-23, 301:6-11.[3] Similarly, although Dr. Drumwright seeks to advocate for the inclusion of certain safety features, such as the female pairing option, she admittedly was "unaware of that specific option -- the female pairing option being tested in the U.S." and thus has no idea if it even improves safety. *Id.* 273:8-19. Thus, Dr. Drumwright's ethics opinions are "not supported by sufficient facts," further requiring their exclusion. *Abarca v. Merck & Co.*, No. 1:07-CV-0388 OWW DLB, 2010 WL 4643642, at *4 (E.D. Cal. Nov. 9, 2010) (citation omitted).

Finally, Dr. Drumwright's opinions are unduly prejudicial. *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *9 (E.D. Pa. May 4, 2011) (expert's testimony about defendant's "social responsibility and ethical obligations" was inadmissible under Rule 403).[4] The JCCP court recently recognized the undue prejudice inherent in Dr. Drumwright's proposed ethics opinions, holding that Dr. Drumwright's testimony "regarding Uber's alleged use of its 'soft power' to 'kill' or 'squash and fog' media stories that would negatively impact public perceptions of Uber's safety" would "threaten an undue

---

[3]  Of course, it is a standard (indeed, required) practice for a corporation to monitor and respond to media inquiries and publications and otherwise manage public perception related to media coverage. This makes Dr. Drumwright's opinions all the more inadmissible because she does not have a basis for suggesting that Uber's media relations were somehow unethical or not in line with industry practices.

[4]  *See also In re Rezulin*, 309 F. Supp. 2d at 545 ("likely unfairly . . . prejudice and confuse the trier by introducing the 'experts' opinions and rhetoric concerning ethics as alternative and improper grounds for decision on bases other than the pertinent legal standards"); *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, MDL No. 1721, 2009 WL 1357234, at *3 (D. Kan. May 12, 2009) (recognizing that testimony that a company "failed to act as a conscientious corporation, maintained a defective corporate culture, violated fundamental principles of ethics and compromised basic moral rights" "may tend to mislead or confuse the jury"); *In re Welding Fume Prods. Liab. Litig.*, MDL No. 1535, 2005 WL 1868046, at *20 (N.D. Ohio Aug. 8, 2005) (testimony about what an "'ethical corporation' should have done" was inadmissible because it would "tend to misdirect the finder of fact") (emphasis omitted).

consumption of the jury's time." JCCP Order at 41. Additionally, Dr. Drumwright's opinions boil down to accusations that Uber engaged in immoral, reprehensible conduct. Such inflammatory assertions from a so-called "expert" would be highly prejudicial and confusing to jurors, and should be excluded.

### C. Dr. Drumwright's Failure-To-Warn Opinions Should Be Excluded.

Dr. Drumwright also seeks to testify that Uber failed to "provide any warnings or information to passengers or the public about the factors that increase the likelihood of sexual violence on Uber." Drumwright Rep. at 165; *see id.* at 6; Drumwright Dep. 224:15-19. At the same time, Dr. Drumwright refused to opine "about specifically what Uber should have said." Drumwright Dep. 224:4-13. These opinions should be excluded.

As the JCCP court recently held, Dr. Drumwright's "opinions that Uber had a duty to warn female passengers of the risk of sexual assault on its platform and that it breached that duty" "amount to [] an inadmissible" legal opinion. JCCP Order at 40-41. The Ninth Circuit has similarly made it clear that "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (holding "the district court did not err in excluding [the expert]'s legal conclusions"); *Martinez v. Cnty. of Alameda*, No. 20-CV-06570-TSH, 2024 WL 1117952, at *1 (N.D. Cal. Mar. 13, 2024) (excluding expert opinions that "amount[ed] to a legal conclusion about ultimate factual issues in this case"); *Holman Enters. v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008) (citations omitted) ("prohibition on experts testifying as to their own legal conclusions is 'so well established that it is often deemed a basic premise or assumption of evidence law'" that has been adopted by "every circuit"; striking expert report that was "replete with legal conclusions and speculations that ultimately render [expert's] entire report deficient.").

Even if Dr. Drumwright's opinions were not inadmissible legal opinions, she is not qualified to offer them. Dr. Drumwright made clear at a deposition earlier this year that she is not a "warnings expert." JCCP Drumwright Dep. 275:16-24. That admission should control and warrant exclusion of her warning opinions in this case. *See* Fed. R. Evid. 702; *Keams*, 993 F. Supp. at 721 (quoting Rule 702 and explaining that witness's "expert status would not survive the close scrutiny demanded by Rule 702."). Although Dr. Drumwright switched gears at her most recent deposition, claiming "I feel like I am qualified with respect

9
DEFENDANTS' MOT. TO EXCLUDE THE OPINIONS OF PLAINTIFFS' EXPERT DR. MINETTE DRUMWRIGHT
Case No. 3.23-md-03084-CRB (LJC)

to warnings," Drumwright Dep. 88:20-21, such "contradiction[s]" in an expert's testimony "render[] h[er] opinions unreliable." *Snyder v. Bank of Am., N.A.*, No. 15-CV-04228-KAW, 2020 WL 6462400, at *6 (N.D. Cal. Nov. 3, 2020).

### D. Dr. Drumwright's Opinions Regarding Uber's Knowledge Should Be Excluded.

Finally, Dr. Drumwright's report is littered with references to what Uber "knew" and when it knew it. Drumwright Rep. at 86 ("Since at least December 2014, Uber executives have known its background checks are not adequate when it comes to passenger safety."); *id.* at 141 ("Despite the known impact of a female-pairing option on reducing sexual assault and sexual misconduct incidents, Uber executives have consistently rejected this option[.]"); *id.* at 167 ("[D]espite its knowledge of its sexual violence problem, Uber's marketing and strategic communications failed to be transparent about, disclose, or warn of the risks and dangers of sexual violence on Uber[.]").

Dr. Drumwright's opinions about Uber's supposed knowledge should be excluded because such questions pertaining to "state of mind are properly for the trier of fact." *Patterson v. Six Flags Theme Parks Inc.*, No. 2:21-CV-02398-KJM-AC, 2024 WL 2112376, at *3 (E.D. Cal. May 9, 2024); *see also Moller v. Cnty. of San Bernardino*, No. 5:22-CV-01306-DSF-MARx, 2024 WL 5185640, at *7 (C.D. Cal. Jan. 2, 2024) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind."); *Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case . . . and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury."); *Aya Healthcare Servs.*, 613 F. Supp. 3d at 1322 (expert's state-of-mind conclusions were inadmissible because such "testimony intrudes on the province of the jury, wh[ich] is capable of evaluating the same evidence and drawing conclusions without [the expert's] proffered testimony").

Dr. Drumwright's opinions have been repeatedly excluded from trial on this basis. In the JCCP, Judge Schulman held that Dr. Drumwright must "refrain from offering improper opinions regarding Uber's state of mind (e.g., what it intended or was motivated by)." JCCP Order at 41. Similarly, another district court in the Ninth Circuit excluded Dr. Drumwright's opinions regarding a corporation's alleged

knowledge on the ground that "[w]hat [a company] purportedly knew, intended, or was motivated by falls outside the scope of expert testimony" because "[t]he jury is capable of drawing its own inferences from the evidence regarding [the company]'s state of mind." *King v. DePuy Orthopaedics Inc.*, No. CV-23-00196-PHX-SMB, 2023 WL 5624710, at *6 (D. Ariz. Aug. 31, 2023) ("[T]he Court finds that Dr. Drumwright is not permitted to opine on [defendant's] state of mind by giving opinions on the company's supposed knowledge, intent, or motivations."). Uber respectfully urges this Court to do the same.

## IV. CONCLUSION

For the foregoing reasons, the Court should exclude the opinions of Plaintiffs' expert Dr. Minette Drumwright.

DATED: November 10, 2025                    Respectfully submitted,

*/s/ Laura Vartain Horn*
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC