# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

IN RE: EXACTECH POLYETHYLENE :
ORTHOPEDIC PRODUCTS LIABILITY :
LITIGATION :
                                       :          22-MD-3044 (NGG)(MMH)
                                         :
                                         :

This Document Applies to: ALL CASES :

------------------------------------------------------------------ x

## SECOND AMENDED DISCOVERY CASE MANAGEMENT ORDER GOVERNING MASTER DISCOVERY BETWEEN PERSONAL INJURY PLAINTIFFS AND THE EXACTECH DEFENDANTS[1]

This Order Governing Master Discovery was submitted jointly by the Personal Injury Plaintiffs ("Plaintiffs") and Defendants Exactech, Inc. and Exactech U.S., Inc. ("Defendants") (together, "the Parties") and proposes to amend the First Amended Discovery Case Management Order Governing Master Discovery between Personal Injury Plaintiffs and the Exactech Defendants ("First Amended Discovery Order") dated August 22, 2023 (ECF No. 400), amended in part by Minute Entry and Order dated October 12, 2023 (ECF No. 454). (*See* ECF No. 502.)[2] After careful review of the Parties' submission, the Court orders and supersedes the First Amended Discovery Order as follows:

1. **Electronic Document Depository.** Consistent with Case Management Order No. 1, the MDL Plaintiffs' Executive Committee ("PEC") will maintain a single electronic

---

[1] As alleged, the Personal Injury Plaintiffs are "individuals who underwent joint replacement surgeries in which they received one or more defective Exactech Hip, Knee, or Ankle Devices that ultimately failed, causing them to suffer" damages. (Am. Master Compl., ECF No. 164 ¶ 17.)

[2] In two text orders on May 30, 2023, the Court stayed discovery as to the following pending motions to dismiss: (1) third-party payer issues generally and Plaintiff MSP Recovery Claims, Series LLC specifically; and (2) Defendants' TPG Inc.; Osteon Holdings, Inc.; Osteon Merger Sub, Inc.; and Osteon Intermediate Holdings II, Inc.

document depository ("MDL Document Depository") for the use of the Plaintiffs in the MDL and the cases coordinated on the Exactech Master Case Docket (Case No. 01-22-CA-2670) in the Eighth Judicial Circuit of Florida, Alachua County ("Florida Coordinated Actions"). (ECF No. 87.) Production to the MDL Document Depository by Defendants shall constitute production to the Plaintiffs in the MDL, the Florida Coordinated Actions, and any other state court actions that agree to coordinate discovery fully and formally with these proceedings.

2. **Service.** Production to the MDL Document Depository or service of any other discovery by Defendants will be accomplished by serving and providing a cover letter to the Lead Counsel in the MDL and Florida Coordinated Actions stating what Bates stamped documents are being produced on a given date and identifying the document request(s) to which they are responsive.

3. **Use of Discovery.** All discovery conducted in the MDL, including documents, data, and deposition transcripts, may be used in the MDL Proceeding, the Florida Coordinated Actions, and any other state court actions that agree to coordinate discovery fully and formally with these proceedings, in accordance with this Order, as if conducted in the proceeding in which the discovery is sought to be used. This provision is not intended to and does not supersede applicable discovery or other procedural orders entered in each separate proceeding.

4. **PLC's Role.** All discovery propounded to Defendants and non-party witnesses by Plaintiffs in the MDL shall be undertaken by, or under the direction of, the PLC on behalf of all Plaintiffs with cases in the MDL.

5. **Applicable Discovery Rules.** Discovery in the MDL shall be conducted in accordance with the Federal Rules of Civil Procedure and the Local Rules and Orders of the MDL Court, including the MDL Discovery Orders, as interpreted by the MDL Court.

6.	**Production at an Indeterminate Time.**  Federal Rule of Civil Procedure 34(b)(2)(B) states that a production must be "completed no later than the time for inspection specified in the request or another reasonable time specified in the response."  Therefore, unless otherwise agreed between the Parties, and unless all unobjectionable materials are being produced contemporaneously with the written response, the response must specify a date by which production will be completed.  The respondent may adopt the date proposed in the request or may propose its own reasonable time, after consultation with opposing counsel.

7.	**Rolling Production.**  Absent compelling circumstances, the Parties shall engage in the rolling production of documents.  Exhibit A to this Order includes a production schedule, including the order in which categories of documents will be produced, and a good faith estimate of the date by which production will be completed.  The parties may agree to a longer period for production than what is stated in the Federal Rules of Civil Procedure or the Local Civil Rules of this district, without leave of Court, provided that the parties are <u>certain</u> they can still meet the discovery completion deadline.  The discovery completion date may be adjourned only with leave of the Court upon a showing of good cause.

8.	**Claiming Privilege in Response to Discovery Requests.**  If a Party objects to a discovery request based on privilege providing a privilege log, the objection of privilege may be deemed waived.  The production of non-privileged materials should not be delayed while a party is preparing a privilege log.  Within thirty (30) days after a production of documents, the Producing Party shall produce a privilege log for any documents withheld from that production based on an assertion of privilege.

9. **Disclosure Forms and Fact Sheets.**  Plaintiff Preliminary Disclosure Forms, Plaintiff Sheets, Supplemental Plaintiff Fact Sheets, Defendant Fact Sheets, and Supplemental Fact Sheets are governed by separate order.  (*See* ECF Nos. 90, 166, and 168.)

10. **Discovery Schedule.**  See Exhibit A attached hereto.

11. **Discovery Disputes.**  If the parties cannot resolve disputes arising in the coordinated pretrial discovery conducted in the MDL, including disputes regarding the interpretation of the MDL Discovery Orders, such disputes shall be presented to the MDL Court pursuant to the Court's Individual Practice Rules.  Resolution of such disputes shall be pursuant to the applicable federal or state law, as required, and such resolution may be sought by any party permitted to participate in the discovery in question.

12. **Admissibility at Trial.**  Nothing contained herein shall constitute or be deemed to constitute a waiver of any objection of any Defendant or Plaintiff to the admissibility at trial of any documents, deposition testimony or exhibits, or written discovery responses provided or obtained in accordance with this Order and all such objections are specifically preserved. The admissibility into evidence of any material provided or obtained in accordance with this Order shall be determined by the Court in which such action is pending.

## EXHIBIT A – SECOND AMENDED DISCOVERY CASE MANAGEMENT ORDER[1]

**A.     Actions Required before the Initial Status Conference**

1.     Fed. R. 26(f) Conference to be held:     <u>June 13, 2023</u>

2.     Parties to exchange Fed. R. 26(a)(1)(A)(i), (ii), and (iv) disclosures:     <u>June 13, 2023</u>

3.     Medical records authorization: <u>March 23, 2023, and on a rolling basis as new cases are filed (ECF Nos. 166, 198)</u>

4.     Procedures for producing Electronically Stored Information (ESI) discussed: <u>January 26, 2023 (ECF No. 88)</u>

5.     Protective Order to be submitted for Court approval:     <u>January 26, 2023 (ECF No. 89)</u>

**B.     General Deadlines**

1.     Motion to join new parties or amend master pleadings: <u>*See* Case Management Order for Bellwether Trials Between Personal Injury Plaintiffs and the Exactech Defendants ("MDL Bellwether Order") (ECF No. 521 ¶ 12)</u>

2.     Plaintiffs' preliminary disclosure forms:     <u>March 13, 2023; 30 days from filing Short Form Complaint ("SFC"); or 30 days from transfer into MDL (ECF No. 168)</u>

3.     Plaintiffs' Fact Sheets:     <u>*See* MDL Bellwether Order (ECF No. 521 ¶ 5a)</u>

4.     Defendant Fact Sheets:     <u>*See* MDL Bellwether Order (ECF No. 521 ¶ 5c)</u>

5.     Defendant to produce the document production in the Florida Coordinated Actions:     <u>February 27, 2023 and April 20, 2023 (ECF No. 87)</u>

6.     Plaintiffs' initial document requests and interrogatories:  <u>June 5, 2023</u>

---

[1] The dates in this Scheduling Order constitute deadlines—i.e., the last day to complete a stated action.  The Parties are encouraged to complete the stated actions in advance of the deadlines.

7.      Defendants' response to Plaintiffs' initial document requests and interrogatories:      June 30, 2023

8.      The Parties shall agree upon search terms and, if not agreed, shall request a discovery dispute conference with the Court:      June 30, 2023

9.      Depositions may commence:      July 28, 2023

10.     Fed. R. Civ. P. 30(b)(6) deposition on ESI issues to be completed: August 18, 2023

11.     Defendants' initial production of 12 agreed upon custodial files: September 22, 2023

    a.  The parties shall agree upon a proposed TAR 2.0 protocol for production of the remaining custodial files: within 45 days after the Court's decision on the parties' dispute regarding same (see ECF Nos. 447 and 458)

12.     Defendants to complete production of 12 agreed upon custodial files: November 20, 2023

13.     All fact discovery must be completed (including disclosure of medical records for filed cases):      December 31, 2024

14.     Joint status report certifying close of FACT discovery:      January 10, 2025; later filed cases will have later fact discovery deadlines (ECF Nos. 166 and 168).

## C.      Core Discovery / Bellwether Deadlines

1.      See MDL Bellwether Order (ECF No. 521 ¶ 13)

### SO ORDERED.

Brooklyn, New York
January 26, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

IN RE: PARAGARD IUD )　MDL DOCKET NO. 2974
PRODUCTS LIABILITY )
LITIGATION )　1:20-md-02974-LMM
　　　　　　　　　　　　 )　**This Document Relates to All Cases**

## CASE MANAGEMENT ORDER AND
## FOURTH AMENDED SCHEDULING ORDER

Except as stated otherwise in this Order, nothing herein (1) is intended to eliminate any applicable provisions of the Federal Rules of Civil Procedure or local court rules; or (2) can or should be interpreted as waiving, abridging, modifying, or limiting any Parties' rights under *Lexecon v. Milberg Weiss*, 523 U.S. 26 (1998).

| Event | DATE |
|---|---|
| Deadline for Defendants to file answers in each individual bellwether case. | January 31, 2025 |
| Deadline for Plaintiffs' Counsel and Defendants' Counsel to meet and confer regarding the one additional fact witness to be deposed. *See*, Section A.4. for additional details. | January 31, 2025 |
| Deadline for Plaintiffs to request company witness depositions.[1] | January 15, 2025 (for custodians identified prior to May 1, 2024) |

---

[1] These deadlines are subject to the caveats articulated by Judge May at the CMC on December 20, 2024 and in prior conferences. Namely, Plaintiffs may request the depositions of additional witnesses on the basis of documents produced on or after December 1, 2024 and/or new deposition testimony. Nothing in this agreement will limit

|  | February 10, 2025 (for Custodians identified after May 1, 2024) |
| --- | --- |
| Deadline for Defendants to Complete Production of all Outstanding Document and Written Discovery, subject to Defendants' obligations to supplement their discovery responses as set forth in Rule 26(e) of the Federal Rules of Civil Procedure and the right of any party to seek leave for additional discovery.<br><br>Deadline For Defendants to Provide Deposition Dates for All Requested Deponents (dates must be in advance of the deadline for the close of depositions) | March 3, 2025 |
| Close of case-specific fact discovery in first BELLWETHER POOL, subject to Plaintiffs and Defendants' obligations to supplement their discovery responses as set forth in Rule 26(e) of the Federal Rules of Civil Procedure and the right of any party to seek leave for additional discovery. | April 11, 2025 |
| The parties will meet and confer to make alternate strikes of the BELLWETHER POOL cases until five (5) cases remain (TRIAL ELIGIBLE POOL). Defendants collectively will make strikes 1 and 3, and Plaintiffs collectively will make strikes 2 and 4. | April 14, 2025 |

---

Plaintiffs' ability to request a previously known witness' deposition so long as the request is based on newly produced documents (i.e. documents produced after December 1, 2024) or testimony.

| | |
|---|---|
| Then the parties will meet and confer to select the TRIAL CASES, making alternate picks from the 5 cases in the TRIAL ELIGIBLE POOL. The Defendants will make pick 1 and the Plaintiffs will make pick 2. | April 15, 2025 |
| The parties will provide a two-page position paper to the Court concerning which 1 of the remaining 3 cases should be selected by the Court for inclusion as a TRIAL CASE. The Court shall select 1 of the remaining 3 cases for inclusion as a TRIAL CASE. | April 16, 2025 |
| Close of general corporate discovery in all cases, subject to Defendants' obligations to supplement their discovery responses as set forth in Rule 26(e) of the Federal Rules of Civil Procedure and the right of any party to seek leave for additional discovery. | April 7, 2025 |
| Deadline for Defendants to respond to Bellwether Plaintiffs First Set of Interrogatories and for Plaintiffs to respond to Defendants' Contention Interrogatories | May 15, 2025 |
| Deadline for Plaintiffs to serve all Rule 26 expert disclosure and expert reports for the TRIAL CASES; to include 3 dates each designated expert witness may be deposed and the proposed location(s) | June 6, 2025 |
| Deadline for Defendants to serve all Rule 26 expert disclosure and expert reports for the TRIAL CASES; to include 3 dates each designated expert witness may be deposed and the proposed location(s) | July 7, 2025 |

| | |
|---|---|
| Deadline for rebuttal experts under Rule 26(a)(2)(D)(ii) in TRIAL CASES; to include 3 dates rebuttal expert may be deposed and the proposed location(s) | July 18, 2025 |
| Close of expert discovery in TRIAL CASES | August 15, 2025 |
| Daubert Motion and Dispositive Motion deadline in TRIAL CASES | September 5, 2025 |
| Responses in opposition to Daubert Motions and Dispositive Motions in TRIAL CASES | October 3, 2025 |
| Replies to Daubert Motions and Dispositive Motions in TRIAL CASES | October 24, 2025 |
| Consolidated pretrial order deadline in TRIAL CASES | |
| Motion in limine deadline in TRIAL CASES | |
| Responses to motions in limine in TRIAL CASES | |
| Pretrial Conference in First Bellwether Trial[2] | |
| Final Pretrial Conference in First Bellwether Trial | |
| First Bellwether Trial | January 12, 2026 |
| Second Bellwether Trial | March 3, 2026 |
| Third Bellwether Trial | May 11, 2026 |

**A.** **CERTAIN ASPECTS OF THE BELLWETHER PROCESS.**

    **1.** **Number and General Description of Case-Specific Fact Witnesses.**

---

[2] Pretrial Conference dates for Second and Third Bellwether Trials to be added later.

The following depositions may occur in each of the cases in the initial pool of Bellwether cases:

1. Plaintiff and, if applicable, Plaintiff's spouse;

2. Plaintiff's placing healthcare provider(s);

3. Plaintiff's removing healthcare provider(s);

4. One additional fact witness to plaintiff's claim for injuries, said witness as agreed to by the parties (if applicable)

5. One sales representative (if applicable).[3]

The Court recognizes that there may be more than one placing healthcare provider and/or removing healthcare provider, or more than one applicable sales representative. The parties will meet and confer in an attempt to agree upon whether more than one deposition each of placing and/or removing healthcare providers and/or whether more than one sales representative deposition should be taken, and any unresolved disputes may be brought to the Court by way of simultaneously provided two-page, single-spaced letter briefs.

The Court also recognizes that there may be more than one additional fact witness to plaintiff's claim for injuries. The parties will meet and confer in an attempt to agree upon whether more than one deposition of additional fact witnesses to

---

[3] Subject to witness availability, the general order of depositions will be (1) Plaintiffs and Spouses; (2) Health Care Providers and Additional Fact Witnesses; (3) and Sales Representatives (if any).

plaintiff's claim for injuries should be taken as part of the bellwether selection process, and any unresolved disputes may be brought to the Court by way of simultaneously provided two-page, single-spaced letter briefs.

**2.    BELLWETHER POOL Sales Representative Depositions.**

Within 14 days after Plaintiffs' counsel makes a request to Defendants' counsel to take the deposition of a sales representative who called on a BELLWETHER POOL Plaintiff's placing or removing healthcare provider, if such individual is in the employ of or under the control of the Defendants, Defendants' counsel will provide 2 proposed dates and the location at which that individual will be deposed. If the individual is not in the employ of or under the control of the Defendants, Defendants' counsel will so advise Plaintiffs' counsel within 4 business days of a request to take an individual sales representative's deposition. For clarity and to avoid confusion in the event multiple sales representatives may have called on a BELLWETHER POOL Plaintiff's placing or removing healthcare provider, Plaintiffs' counsel must specify the name of the one sales representative to be deposed in each BELLWETHER POOL Plaintiff's case, if applicable. Plaintiffs shall be entitled to take these depositions in-person at Plaintiffs' election. Defendants' counsel reserves the right to appear in-person at all sales representative depositions.  Plaintiffs will notice these depositions and arrange (and pay) for the

court reporter and videographer. Any party desiring remote access is responsible for arranging and paying for remote access.

### 3. **BELLWETHER POOL Healthcare Provider Depositions**.

Plaintiffs' Counsel and Defendants' Counsel shall meet and confer about (1) the name(s) of the Plaintiff's placing healthcare provider(s) to be deposed; (2) the name(s) of the Plaintiff's removing healthcare provider(s) to be deposed; and (3) mutually-agreeable date(s) or date ranges the parties are available for such depositions. After and in accordance with the required meet and confer, Plaintiffs' Leadership will contact the healthcare providers to obtain their availability (including the dates, times, and location), and thereafter Plaintiffs' Leadership shall coordinate with Defendants' Lead Counsel to schedule the deposition at a date, time, length, duration, and location mutually convenient to the parties and the healthcare provider. If the healthcare provider requests to be compensated for his/her deposition time, Plaintiffs' Leadership shall obtain the healthcare provider's requested hourly rate and promptly provide that information to Defense counsel. The parties shall split equally [50/50] the examination time given by the healthcare provider for the deposition, and the party who notices the deposition will question first. The party who selected the Plaintiff's case into the BELLWETHER POOL shall issue a notice of videotaped deposition and arrange for the court reporter and/or videographer, as follows:

7

| Plaintiff | Case Number | Noticing Party |
|---|---|---|
| Garcia-Malene | 1:22-cv-01053 | Plaintiff |
| Power | 1:22-cv-02326 | Plaintiff |
| Rickard | 1:21-cv-03861 | Defense |
| Smith | 1:21-cv-03111 | Defense |

For the Court's random selections, the parties will alternate, by case number, which party notices the deposition as follows:

| Plaintiff | Case Number | Noticing Party |
|---|---|---|
| Adhami | 1:21-cv-00303 | Plaintiff |
| Mulvey-Morawiecki | 1:21-cv-00483 | Defense |
| Braxton | 1:22-cv-00490 | Plaintiff |
| Pedrioli | 1:22-cv-01514 | Defense |
| Robere | 1:22-cv-01583 | Defense[4] |

Either or both parties may elect to participate in-person or remotely. In the event that Plaintiffs or Defendants decide not to notice the deposition of the placing or removing healthcare provider for one of that party's respective picks (including assigned random selections as previously specified), the party declining to notice the deposition shall promptly notify the other party so that that other party may decide whether to notice the deposition. The party who notices a deposition shall be responsible for paying the healthcare provider's hourly rate, court reporter costs, and videographer costs.

## 4.     BELLWETHER POOL – Additional Witness Deposition.

---

[4] Defendants will notice the HCP depositions for the Robere matter, due to Plaintiff Dallas Smith's case having been removed from the Bellwether Pool

Plaintiffs' Counsel and Defendants' Counsel shall meet and confer about (1) the one additional fact witness to Plaintiff's claim for injuries; (2) mutually-agreeable date(s) or date ranges the parties are available for such depositions; and (3) the time for such depositions, up to a total of 7 hours. The parties will also meet and confer about contacting and scheduling those witnesses and the order of questioning of those witnesses, depending on the identity of the witness and circumstances. Either or both parties may elect to participate in person or remotely. If the parties cannot reach agreement, the dispute will be brought to the Court.

## 5. Communications with BELLWETHER POOL Plaintiffs' Healthcare Providers.

Plaintiffs' counsel shall copy Defendants' counsel on all written and email communications with a BELLWETHER POOL Plaintiff's placing or removing healthcare provider or such provider's staff.

Defendants' counsel (including anyone employed by Defendants' counsel or acting on their behalf) shall not contact any of the BELLWETHER POOL Plaintiff's healthcare providers without prior written permission from Plaintiffs' Counsel and/or Plaintiffs' Leadership.

Prior to a BELLWETHER POOL Plaintiff's placing or removing healthcare provider's deposition, the BELLWETHER POOL Plaintiff may not show, provide to, or otherwise disclose to a BELLWETHER POOL Plaintiff's placing or removing healthcare provider the contents of any document produced by Defendants in this

litigation that is not otherwise publicly available, any internal documents produced by Defendants, or any transcripts/videos of any depositions.

Prior to a BELLWETHER POOL Plaintiff's placing or removing healthcare provider's deposition, Plaintiffs' Counsel (including anyone employed by Plaintiffs' counsel) may not show, provide to, or otherwise disclose to a BELLWETHER POOL Plaintiff's placing or removing healthcare provider the contents of any document produced by Defendants in this litigation that is not otherwise publicly available, any internal documents produced by Defendants, or any transcripts/videos of any depositions, with the sole exception that a transcript or video of one healthcare provider in the specific BELLWETHER POOL Plaintiff's case may be shown to another healthcare provider in that same specific BELLWETHER POOL Plaintiff's case. If a scientific study is shown or provided to a BELLWETHER POOL Plaintiff's placing or removing healthcare provider, (or any other of the BELLWETHER POOL Plaintiff's healthcare providers who may be an additional fact witness) at any time before the healthcare provider's deposition, then as soon as practicable after such study is provided or shown to the healthcare provider, Plaintiffs' counsel must provide a copy of the study (or studies) to Defendants' counsel.

Any *ex parte* communications by Plaintiffs' counsel with a Plaintiff's healthcare provider before that provider's deposition shall be limited to the facts of

the specific Plaintiff's medical history and treatment. Plaintiffs' counsel may have a pre-deposition, *ex parte* communication with the Plaintiff's healthcare provider about the following: (1) the healthcare provider's understanding of the risks and benefits of Paragard as they pertained to the Plaintiff; (2) the healthcare provider's past and present use of Paragard; (3) any risk and benefit information the healthcare provider received from sales representatives of the Defendants; and (4) scientific literature, seminars, warnings or other tools the doctor used to obtain knowledge about the risks and benefits of Paragard. Plaintiffs' counsel may not have a pre-deposition, *ex parte* communication with the Plaintiff's healthcare provider about the theories of liability in the Paragard litigation.

IT IS SO ORDERED this <u>11th</u> day of <u>February</u>, 2025.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | : | **MDL NO. 3023** |
| EYE INJURY PRODUCTS | : | |
| LIABILITY LITIGATION | : | **SECTION "H" (5)** |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | **HON. JANE TRICHE MILAZZO** |
| | : | **MAG. JUDGE MICHAEL NORTH** |
| **All Cases** | : | |

**CASE MANAGEMENT ORDER NO. 16**
**(MDL SCHEDULING ORDER)**

The Court hereby Orders as follows:

The following Case Management Orders, procedures, and schedules shall govern discovery on Plaintiffs and Defendants (collectively referred to as "Parties"). The Federal Rules of Civil Procedure shall apply to these proceedings, subject to provisions permitting Court orders or stipulations by the Parties to make appropriate modifications.

I. **CASE MANAGEMENT ORDERS AND SUBMISSIONS**

1. **Protective Order.** An agreed upon Protective Order is included as Addendum A and will be identified as CMO 12.

2. **ESI Protocol.** An agreed upon ESI Order is included as Addendum B and will be identified as CMO 13.

3. **PFS and DFS Implementation and Service Order.** An agreed upon PFS and DFS Implementation and Service Order is included as Addendum D and will be

1

identified as CMO 14. The Parties agree to complete and serve Fact Sheets, and attachments thereto, using the online MDL Centrality System.

4.    **Plaintiff Fact Sheet.** An agreed upon Plaintiff Fact Sheet ("PFS") is included as Addendum C.

5.    **Defendant Fact Sheet.** An agreed upon Defendant Fact Sheet ("DFS") is included as Addendum C.

6.    **Product Identification Order.** An agreed upon Product Identification Order is included as Addendum E and will be identified as CMO 15.

7.    **Deposition Protocol.** The Parties shall provide a deposition protocol to the Court by November 1, 2023.

## II.    INITIAL DISCOVERY RELATING TO ALL PLAINTIFFS.

1.    **Plaintiff Fact Sheets.** Each Plaintiff shall complete and serve a PFS pursuant to CMO 14 [PFS and DFS Implementation and Service Order]. Eligibility for inclusion in any bellwether discovery pool will be based, in part, on each Plaintiff's compliance with CMO 14 [PFS and DFS Implementation and Service Order].

2.    **Collection of Records.** Defendants may begin collecting medical, employment, and/or mental health records for Plaintiffs in MDL 3023 upon the production by Plaintiffs of properly executed authorizations pursuant to CMO 14 [PFS and DFS Implementation and Service Order].

3.    **Product ID Evidence.** Each Plaintiff shall produce product ID evidence pursuant to the Product Identification Order. Eligibility for inclusion in any bellwether discovery pool will be based, in part, on each Plaintiff's compliance with the

Product Identification Order with respect to each infusion of docetaxel Plaintiff received.

## III.    DISCOVERY RELATING TO DEFENDANTS.

1.    **Applicability of Order.** The following procedures and schedules will govern general, non-case-specific discovery on Defendants Sanofi US Services, Inc. and Sanofi-Aventis U.S. LLC (collectively "Sanofi"), and Accord Healthcare, Inc., Actavis LLC f/k/a Actavis Inc., Actavis Pharma, Inc., Eagle Pharmaceuticals, Hospira, Inc., Hospira Worldwide, LLC, Pfizer Inc., Sandoz Inc., Sun Pharmaceutical Industries, Inc., Teikoku Pharma USA, Inc. (collectively "505(b)(2) Defendants"). No Party may conduct any discovery of Defendants not expressly authorized by this Order absent further Order of this Court or express agreement of the Parties.

2.    **Defendant Fact Sheets.** Each Defendant shall complete and serve a DFS pursuant to CMO 14 [PFS and DFS Implementation and Service Order].

3.    **ESI Protocol Obligations.** The Parties shall exchange in writing the information listed in Section IV(E) (1-5) of the ESI Protocol by May 12, 2023. The parties shall meet and confer pursuant to Section V of the ESI Protocol by June 16, 2023.

4.    **Written Discovery.** Written discovery requests propounded on Defendants shall be proportional to the needs of the cases in which Defendants are named consistent with Rule 26(b)(1). Unless otherwise ordered by the Court or agreed to by the Parties, the numerical limitations on written discovery requests set forth in the Federal Rules of Civil Procedure shall apply. Defendants shall respond to written discovery requests served by Plaintiffs prior to the entry of this MDL Scheduling

Order within 30 days after Product ID identification pursuant to the Product ID Order is provided for a particular Defendant for any single Plaintiff.

5.    **Production of Documents.**  Defendants shall begin producing documents no later than June 16, 2023 in accordance with the CMO 13 [ESI Order] and CMO 12 [Protective Order]. Defendants may produce documents on a rolling basis until productions are complete in accordance with Rule 26(g).  Absent agreement of the Parties or Court Order, each Defendant's production of documents shall be completed no later than February 15, 2024, subject to (1) the deadlines set forth in the ESI Order for the production of privilege logs and (2) resolution of potential technical issues (e.g., unsupported file types) and/or foreign language documents, if any.

6.    **Document Custodians**.  Plaintiffs may seek up to fifteen (15) custodial files from Sanofi and up to five (5) custodial files from each 505(b)(2) Defendant. For good cause shown, and with Court Order, Plaintiffs may seek additional custodians.

7.    **Depositions.**  Depositions of Defendants' witnesses may begin on March 1, 2024 Plaintiffs may take up to twelve (12) depositions of Sanofi witnesses, including current and former employees.  Of the twelve (12) depositions, Plaintiffs may utilize up to two (2) of their depositions of Sanofi for Rule 30(b)(6) depositions. Plaintiffs may take up to six (6) depositions of each 505(b)(2) Defendant, which may include up to two (2) Rule 30(b)(6) depositions.  The Parties will meet and confer regarding the timing of such depositions.  For good cause shown, Plaintiffs may seek additional depositions.  Depositions shall be limited to no more than 7 hours per deposition without leave from the Court or agreement of the Parties.

8.    **Completion of General Discovery on Defendants.** General discovery directed to Defendants shall close by June 3, 2024. No further discovery on Defendants shall be permitted absent agreement of the Parties or Court Order.

## IV.    GENERAL LIABILITY ISSUES

1.    **Scope**. The Parties shall address general dispositive issues associated with some or all of the cases in MDL 3023, including but not limited to preemption, adequacy of the label, and general causation.

2.    **General Expert Reports.** The following schedule shall apply to expert reports on general liability issues:

   a)    <u>Plaintiffs' General Expert Reports</u>: On or before July 16, 2024, Plaintiffs shall designate and provide reports for experts on general liability issues.

   b)    <u>Defendants' General Expert Reports</u>: On or before October 16, 2024, Defendants shall designate and provide reports for experts on general liability issues.

3.    **Limitations**: The limitations on expert discovery set forth in Rule 26, including the provision of Rule 26(b)(4)(A)-(D) limiting discovery with respect to draft reports, communications with experts, and depositions of consulting experts, shall apply to all cases subject to this order.

4.    **Expert Depositions.** The following schedule shall apply to expert depositions on general liability issues:

a) <u>Scheduling</u>: At the time of the submission of the expert report, the Party shall indicate no fewer than three dates the expert is available for deposition.

b) <u>Production Obligations</u>: At least ten (10) days prior to any expert deposition, the expert shall produce all files, reference materials, and documents subject to discovery under the Federal Rules.

c) <u>Plaintiff Experts</u>: Depositions of Plaintiffs' general experts shall be completed by September 17, 2024.

d) <u>Defendant Experts</u>: Depositions of Defendants' general experts shall be completed by December 16, 2024.

5. **Motion Practice.** The following schedule shall apply to dispositive and/or *Daubert* motions with respect to general liability issues and experts:

a) <u>Motions and Briefs</u>**:** February 28, 2025.

b) <u>Opposition Briefs</u>: April 10, 2025.

c) <u>Reply Briefs</u>: April 30, 2025.

d) <u>Argument</u>: On or around May 16, 2025.

## V. SELECTION OF BELLWETHER POOL CASES.

1. **Eligibility Criteria.** By February 1, 2024, the Parties shall meet and confer to establish criteria for cases to be eligible for inclusion in the Bellwether Pool. At minimum, all Bellwether Pool Cases must (1) involve a single manufacturer of docetaxel for all such infusions, and (2) comply with CMO 15 [Product Identification Order] and CMO 14 [PFS and DFS Implementation and Service Order]. Any disputes shall be submitted to the Court by letter brief for resolution.

2. **Selection Process**.  By March 15, 2024, six (6) cases that satisfy the eligibility criteria and proportionality considerations set forth herein shall be selected as Bellwether Pool Cases.  Plaintiffs shall select three (3) cases.  Defendants shall select three (3) cases.

3. **Proportionality Considerations.**  Prior to selecting any cases for inclusion in the Bellwether Pool, the Parties shall consider which Defendants are associated with such cases (based on product ID evidence) and the relative proportionality of the total number of cases involving such Defendants.  Bellwether Pool case selections shall reflect these proportionality considerations.  Plaintiffs and Defendants are not permitted to use all three (3) of their respective Bellwether Pool selections for cases involving the same Defendant.

## VI.  BELLWETHER POOL DISCOVERY.

1. **Phase I – Discovery Period.**  Phase I discovery in Bellwether Pool Cases shall begin when the Court enters an Order identifying the cases selected for inclusion in the Bellwether Pool.  Phase I discovery shall conclude by March 3, 2025.

2. **Phase I – Written Discovery.**  Defendants in Bellwether Pool cases may serve written discovery on Bellwether Pool Plaintiffs to the extent such written discovery is not duplicative of discovery sought as part of the PFS process.  Written discovery requests shall be proportional to the needs of the case consistent with Rule 26(b)(1).  Unless otherwise ordered by the Court or agreed to by the Parties, the numerical limitations on written discovery requests set forth in the Federal Rules of Civil Procedure shall apply.

3.   **Phase I – Depositions.**  Absent a showing of good cause, or unless otherwise agreed upon, depositions in each Bellwether Pool Case shall be limited to the following: Defendants may depose the Plaintiff and select three (3) additional witnesses to depose; and Plaintiffs may select two (2) witnesses to depose.

4.   **Prescriber Deposition Priority.**  Defendants shall take priority for scheduling, noticing, and taking prescriber depositions in all Plaintiff-pick Bellwether Pool Cases.  Plaintiffs shall take priority for scheduling, noticing, and taking prescriber depositions in all Defendant-pick Bellwether Pool Cases.

## VII.   TRIAL POOL NOMINATION.

1.   **Nomination Process.**  Following Orders on general liability issues, the Parties involved in Bellwether Pool cases shall meet and confer to select a date by which to submit trial pool nominations. The submissions shall be submitted via email to the Court by letter brief no longer than five (5) pages in length describing: (i) the names and ranking in order of preference the plaintiffs that party is nominating for trial setting, (ii) the reasons supporting these selections and suggested rankings, and (iii) the reasons why the other potential candidates are not appropriate selections.  These letter briefs shall be submitted simultaneously on an *ex parte* basis at 5:30pm CT and each party shall serve the other with a copy of their submission no later than 5:45pm CT that same day.  After considering the Parties' submissions, the Court shall (i) set a trial date and (ii) select one Trial Plaintiff and one Alternate Trial Plaintiff for the First Trial.

2.   **Meet and Confer.**  Within 30 days of the selection of the Trial Plaintiff, the Parties shall meet and confer to develop a schedule for (1) completing case-specific fact

discovery, (2) completing case-specific expert discovery, (3) submitting case-specific dispositive and *Daubert* motions, and (4) exchanging pretrial materials including, but not limited to witness lists, exhibit lists, deposition designations, and motions *in limine*.

New Orleans, Louisiana, this 1st day of May, 2023.

_____

**HON. JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

# ADDENDUM A

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

---

| | |
|---|---|
| **IN RE: TAXOTERE (DOCETAXEL)** : | **MDL NO. 3023** |
| **EYE INJURY PRODUCTS** : | |
| **LIABILITY LITIGATION** : | **SECTION "H" (5)** |

---

| | |
|---|---|
| **THIS DOCUMENT RELATES TO:** : | **HON. JANE TRICHE MILAZZO** |
| **ALL CASES** : | **MAG. JUDGE MICHAEL NORTH** |

---

## CASE MANAGEMENT ORDER NO. 12
### PROTECTIVE ORDER

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the following Protective Order is issued to govern certain disclosures in this case:

1. **Scope**. All materials produced or adduced in the course of discovery, including initial disclosures, responses to discovery requests, deposition testimony and exhibits, pleadings and motions, and information derived directly therefrom (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential Information as defined below. This Order is subject to the Local Rules of the Eastern District of Louisiana and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods.

2. **Confidential Information.** As used in this Order, "Confidential Information" means unredacted information designated as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" by the producing party that falls within one or more of the following categories: (a) information prohibited from disclosure by law; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical and protected health information ("PHI") concerning any individual; (e) personal identifying information

("PII"); (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; and/or (g) personnel or employment records of a person who is not a party to the case.

3. **Designation.**

a. <u>Procedure</u>. A party may designate a document as Confidential Information for protection under this Order by placing or affixing the words "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, the term "copies" includes electronic images, duplicates, extracts, summaries or descriptions that contain the Confidential Information. Except as otherwise set forth in paragraph 3.b, the marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall be applied prior to or at the time that the documents are produced or disclosed. Applying the marking "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Any copies made of any documents marked "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" shall also be so marked, except that indices, electronic databases or lists of documents that do not contain substantial portions or images of the text of Confidential Information and do not otherwise disclose the substance of the Confidential Information are not required to be marked.

b. <u>Inadvertent Failure to Designate</u>. An inadvertent failure to designate a document, testimony, or other information as Confidential Information does not, standing alone, waive the right to subsequently so designate the information. A party may designate a document or ESI as Confidential Information following production, provided that such new designation is made promptly after discovery of inadvertent failure to designate. Upon such

designation, the receiving party shall: treat such document or information as designated pursuant to the terms of this Order; take reasonable steps to return or destroy all previously-received copies of the information and provide certification of same; notify any persons known to have possession of such material of such new designation under this Order; and promptly endeavor to procure all copies of such materials from persons known to have possession of such material who are not entitled to receipt of it pursuant to this Order. No party shall be found to have violated this Order for failing to maintain the confidentiality of material during a time when that material has not been designated Confidential Information. Should any motion be filed concerning information designated as Confidential Information after production, the receiving party shall not assert in support of its position the fact or circumstances of the inadvertent disclosure of the Confidential Information.

      c.    <u>Inspection of Materials Prior to Production.</u> In the event that documents, materials or other information are made subject to inspection prior to their production, no marking of those materials need be made by the producing party at the time of that inspection. For purposes of such an inspection, all materials made available for the inspection shall be considered Confidential Information and subject to this Order at the time of the inspection. Thereafter, if any materials subject to that inspection are produced and the producing party wishes those materials to be considered Confidential Information under this Order, the producing party shall so designate them in accordance with the procedures set forth in this Order.

d.     Certification by Counsel or Party. The designation of materials as Confidential Information is made pursuant to Fed. R. Civ. P. 26(g).[1]

4.     **Depositions.**  Deposition testimony and exhibits are protected by this Order if the testimony or exhibit is designated as confidential when the deposition is taken or within thirty (30) business days after receipt of the transcript. Such designation shall be specific as to the portions that contain Confidential Information. Until the expiration of the 30-day period, the deposition testimony, transcript, and all exhibits shall be treated as confidential. The failure to serve a timely Notice of Designation waives any designation of deposition testimony as Confidential Information that was made on the record of the deposition, unless otherwise ordered by the Court.

5.     **Protection of Confidential Material.**

a.     General Protections. Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation, which includes any appeal thereof.

b.     Limited Third-Party Disclosures. The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information to any third person or entity  except as set forth in subparagraphs (1)-(9) below. Subject to these requirements, the following categories of persons may be allowed to review Confidential Information: (1) Counsel for the parties and employees of counsel who have responsibility for the action; (2) individual parties and officers, directors, employees, agents or representatives of a party but only to the extent counsel determines in good faith that the employee's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed;

---

[1] By designating documents as confidential pursuant to this Order, counsel submits to the jurisdiction and authority of this Court concerning such designations and the enforcement of this Order.

(3) the Court and its personnel; (4) court reporters and recorders engaged for depositions and/or hearings; (5) those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents; (6) consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have completed the certification contained in Attachment A ("Acknowledgment of Understanding and Agreement to Be Bound by Protective Order"); (7) during their depositions, or in preparation for their trial or deposition testimony, witnesses in this action to whom disclosure is reasonably necessary. While a deponent is being examined about any Confidential Information, persons to whom disclosure is not authorized under this Order shall be excluded from the deposition. Witnesses may receive copies of exhibits in connection of review of the transcripts, but shall not retain a copy of documents containing Confidential Information. Pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential Information pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order; (8) the author or recipient of the document in the regular course of business (not including a person who received the document in the course of litigation); and (9) other persons only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed upon or ordered. The parties agree that this provision does not preclude the producing party from objecting to or moving to preclude disclosure to any person or to seek amendment of this provision in the future, if it believes it has a good faith basis for such objection or motion.

c.      Non-Disclosure to Competitors. Notwithstanding the foregoing, without express written consent or Court Order, a receiving party shall not disclose a defendant's confidential information to any current employee of any other manufacturer of, or manufacturer involved in the sale or distribution of, any taxane, irrespective of whether such person is retained as an expert in this action. If a party seeks to disclose confidential information to such person, the party seeking disclosure shall follow the notice provisions set forth in paragraph 11 below.

d.      Control of Documents. Counsel for the parties shall make reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information. Counsel shall maintain the originals of the forms signed by persons acknowledging their obligations under this Order for a period of three (3) years after the termination of the case.

e.      Storage and Transmission of Documents. To avoid security risks, a receiving party agrees to abide by existing HIPAA data protection provisions (e.g., Business Association Agreements) when handling Confidential Information and other ESI protected by federal or state law.

6.      **Filing of Confidential Information.** This Order does not, standing alone, authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information in connection with a motion, brief or other submission to the Court must comply with Local Rule 5.6.

7.      **No Greater Protection of Specific Documents.** Except on grounds of privilege not addressed by this Order or other orders of the Court, no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order or other orders of the Court unless the party moves for an order providing such special protection.

8.      **Challenges by a Party to Designation as Confidential Information.** The designation of any material or document as Confidential Information is subject to challenge by any party. The following procedure shall apply to any such challenge.

a.      <u>Meet and Confer.</u> A party challenging the designation of Confidential Information must do so in good faith and must begin the process by conferring directly with counsel for the designating party, or directly with a party who is appearing *pro se*. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the designation, and, if no change in designation is offered, to explain the basis for the designation. The designating party must respond to the challenge within fourteen (14) days.

b.      <u>Judicial Intervention.</u> A party who elects to challenge a confidentiality designation may file and serve a motion that identifies the challenged material and sets forth <u>in detail</u> the basis for the challenge. Each such motion must be accompanied by a competent certification that affirms that the movant has complied with the meet-and-confer requirements of this Order. The burden of persuasion in any such challenge proceeding shall be on the designating party. Until the Court rules on the challenge, all parties shall continue to treat the materials as Confidential Information under the terms of this Order.

9.      **Action by the Court.** Applications to the Court for an order relating to materials or documents designated Confidential Information shall be by motion. Nothing in this Order or any action or agreement of a party under this Order shall limit the Court's authority to make orders concerning the disclosure of documents produced in discovery or at trial.

10. **Use of Confidential Documents or Information at Trial.** Nothing in this Order shall be construed to affect the use of any document, testimony, or information at any trial or hearing. A party who intends to present or who anticipates that another party may present Confidential Information at a hearing or trial, following a meet and confer, shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum without disclosing the substance of the Confidential Information. The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.

11. **Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**

a. If a receiving party is served with a request, subpoena, or order issued by another court, administrative agency, legislative body, or any other person or organization that directs disclosure of any material or document designated in this action as Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three (3) court days after receiving the request, subpoena, or order. Such notification must include a copy of the request, subpoena or court order. The recipient of the request, subpoena, or order shall not disclose any Confidential Information pursuant to the same prior to the date specified for production in the request, subpoena, or order.

b. The receiving party also must immediately inform, in writing, the person or entity that issued the request, subpoena, or order that some or all of the material covered by the request, subpoena, or order is the subject of this Order. In addition, the receiving party must deliver a copy of this Order promptly to the party, person, or other entity that issued the request, subpoena or order.

c. The purpose of imposing these duties is to alert the issuing person or entity to the existence of this Order and to afford the designating party in this case an opportunity to

make attempts to protect its Confidential Information in the court from which the subpoena or order issued. The designating party shall bear the burden and the expense of seeking protection of its Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court or authority. The obligations set forth in this paragraph remain in effect while the party has in its possession, custody or control Confidential Information by the other party to this case.

12.      **Obligations upon Conclusion of Litigation.**

a.      <u>Order Continues in Force.</u> Unless otherwise agreed upon or ordered, this Order shall remain in force after dismissal or entry of final judgment not subject to further appeal.

b.      <u>Obligations upon Conclusion of Litigation.</u> Within sixty (60) days after dismissal or entry of final judgment not subject to further appeal, the producing party may make demand upon the receiving party for return or destruction of all materials considered Confidential Information under this Order, including "copies" as defined above. No party shall have any obligation to return or destroy Confidential Information if such a demand is not timely made. Where the demand for return or destruction is timely made, the subject documents shall be returned to the producing party unless: (1) the document has been offered into evidence or filed without restriction as to disclosure; (2) the parties agree to destruction to the extent practicable in lieu of return; or (3) as to documents bearing the notations, summations, or other mental impressions of the receiving party (*i.e.*, attorney work product), that party elects to destroy the documents and certifies to the producing party that it has done so; or (4) to the extent retention is required by other laws, rules or regulations, including those of the Louisiana State Bar Association and Louisiana Supreme Court. The parties may choose

to agree that the receiving party shall destroy documents containing Confidential Information and certify the fact of destruction, and that the receiving party shall not be required to locate, isolate and return e-mails (including attachments to e-mails) that may include Confidential Information or Confidential Information contained in deposition transcripts or drafts or final expert reports.

        c.      <u>Retention of Work Product and One Set of Filed Documents.</u> Notwithstanding the above requirements to return or destroy documents, counsel may retain: (1) attorney work product, including an index that refers or relates to designated Confidential Information, so long as that work product does not duplicate verbatim substantial portions of Confidential Information, and (2) one complete set of all documents filed with the Court including those filed under seal.  Any retained Confidential Information shall continue to be protected under this Order. An attorney may use his or her own work product in subsequent litigation, provided that its use does not disclose or use Confidential Information or otherwise violate this Order.

        d.      <u>Deletion of Documents Filed under Seal from Electronic Case Filing (ECF) System.</u> Filings under seal shall be deleted from the ECF system only upon order of the Court

13.     **Order Subject to Modification.** This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

14.     **No Prior Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery.  Nothing herein shall be construed or presented as a judicial determination that any document or material designated Confidential Information by counsel or the parties is entitled to protection under Rule 26(c) of the

Federal Rules of Civil Procedure or otherwise until such time as the Court may rule on a specific document or issue.

15. **Persons Bound.** This Order shall take effect when entered and shall be binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

New Orleans, Louisiana, this 1st day of May, 2023.

_____

**HON. JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

## ATTACHMENT A

## ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND

The undersigned hereby acknowledges that he/she has read the Protective Order dated May 1, 2023, in the above-captioned action and attached hereto, understands the terms thereof and agrees to be bound by those terms. The undersigned submits to the jurisdiction of the United States District Court for the Eastern District of Louisiana in matters relating to the aforementioned and attached Protective Order and understands that the terms of the Order obligate him/her to use materials designated as Confidential Information in accordance with the Order solely for the purposes of the above-captioned action, and not to disclose any such Confidential Information to any other person, firm or concern. The undersigned acknowledges that violation of the Protective Order may result in penalties for contempt of court.

Name (printed)         _____

Job Title:             _____

Employer:              _____

Business Address:      _____

                       _____

Date:                  _____

Signature:             _____

# ADDENDUM B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | : | |
| IN RE: TAXOTERE (DOCETAXEL) | : | **MDL NO. 3023** |
| EYE INJURY PRODUCTS | : | |
| LIABILITY LITIGATION | : | **SECTION "H" (5)** |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | **HON. JANE TRICHE MILAZZO** |
| | : | **MAG. JUDGE MICHAEL NORTH** |
| All Cases | : | |
| | : | |

**CASE MANAGEMENT ORDER NO. 13**
**ESI PROTOCOL**

Requesting Party and Producing Party, by and through undersigned counsel, have conferred regarding the production of electronically stored information ("ESI") in their possession, custody, or control, agree to the following, and respectfully move the Court to enter an Order approving the same.

**I.    GENERAL**

    A.    As used herein, "Requesting Party" means the party requesting production of documents. As used herein, "Producing Party" means the party that may be producing documents in response to the request of Requesting party. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Party.

    B.    This Protocol applies to the ESI provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Insofar as it relates to ESI, this Protocol also applies to Fed. R. Civ. P. 45, if agreed to by the recipient of any document request issued pursuant to that rule, in all instances in which the provisions of Fed R. Civ. P. 45 are the same as, or substantially similar to, the provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Nothing contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Rule 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

    C.    The Parties agree that this Protocol will serve as a guideline for any document request issued to a Producing Party in this matter. The Parties shall meet and

0 = 1 5464478

confer regarding the appropriateness of this Protocol with respect to any document requests to a Producing Party. Nothing in this Protocol shall be deemed to prevent any Parties from agreeing to terms different than or inconsistent with the terms of this Protocol.

D.   Nothing in this protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

E.   Nothing in this Protocol shall be deemed to prevent a Party from seeking the Court's intervention with respect to any issues that may arise regarding the application of this Protocol to a document request issued to Producing Party and/or any objections Producing Party may have with respect to any such request if the Parties are unable to resolve any such issues or objections without the Court's assistance. Likewise, nothing in this Protocol shall be deemed to prevent any other Party from opposing relief sought from the Court.

F.   To the extent documents or information, including, but not limited to, written responses, ESI, metadata, load files, and accompanying text files, from *In re: Taxotere (Docetaxel) Products Liability Litigation* (MDL No. 16-2740) ("MDL 2740") are produced in this litigation, they may be identified and re-produced in the same method and format in which they were previously provided in MDL 2740.

## II.   COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's E-discovery Guidelines. In particular, Guideline 2.03 states:

> The Court strongly encourages an informal discussion about the discovery of ESI at the earliest reasonable state of the discovery process. Counsel, or others knowledgeable about the Parties' electronic systems, including how potentially relevant data is stored and retrieved, should be involved or made available as necessary. Such a discussion will help the Parties be more efficient in framing and responding to ESI discovery issues, reduce costs, and assist the Parties and the Court in the event of a dispute involving ESI issues.

## III.   E-DISCOVERY LIAISON

To promote communication and cooperation between the Parties, each Party shall designate an individual through whom all e-discovery requests and responses are coordinated ("e-discovery liaison"). Regardless of whether the e-discovery liaison is an attorney (in-house

or outside counsel) he or she must be: (a) Familiar with the Party's electronic systems and capabilities in order to explain these systems and answer relevant questions; (b) Knowledgeable about the technical aspects of e-discovery, including but not limited to electronic document storage, organization, and format issues; (c) Prepared to participate in eDiscovery dispute resolutions; and (d) Responsible for organizing the Party's eDiscovery efforts to insure consistency and thoroughness. To that extent:

- Plaintiffs' Steering Committee's e-discovery liaison is Laura Fellows
- Sanofi's e-discovery liaison is Matt DePaz and Adam Shoshtari
- Hospira's e-discovery liaison is Richmond Moore
- Pfizer's e-discovery liaison is Richmond Moore
- Sandoz's e-discovery liaison is Beth Toberman
- Accord's e-discovery liaison is Brenda Sweet and Julie Callsen
- Actavis's e-discovery liaison is Jeffrey R. Schaefer
- Sagent's e-discovery liaison is Jeffrey R. Schaefer
- Sun Pharmaceutical's e-discovery liaison is Robert Buchholz
- Eagle's e-discovery liaison is Julia Harper
- Teikoku's e-discovery liaison is Julia Harper

## IV. <u>SCOPE OF ESI</u>

A. This ordered ESI Protocol is consistent with Rule 26(b)(1) and limits the scope of discovery to discovery regarding any non-privileged data that is relevant to any Party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

B. The Parties agree that Producing Party may redact information relating solely to other products and need not produce other-products attachments. For each other-products attachment not produced, the producing party will provide a slip sheet with the basis for non-production either on the face of the document or in a data field (e.g., other products, privilege).

C. Data Sources do not include ESI outside the custody and/or control of the Producing Party.

D. Data Sources do not include discovery regarding ESI that is not reasonably accessible.

1.     One example of not reasonably accessible data includes Orphaned Data; which may include unknown or unindexed orphaned data which could be unknown or unindexed materials retained in tape, floppy disk, optical disk, or similar formats primarily for back-up or disaster recovery purposes as well as archives stored on computer servers, external hard drives, notebooks, or personal computer hard drives that are not used in the ordinary course of a party's business operations (e.g. archives created for disaster recovery purposes).

2.     Accordingly, the categories of ESI deemed not reasonably accessible or outside the scope of permissible discovery need not be preserved by the Parties. Parties need not preserve the following categories of ESI for this litigation:

   a.     Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, data or system mirrors or shadows unless it is the only known source of potentially relevant data;

   b.     Information deemed as junk and/or irrelevant ESI outside the scope of permissible discovery in this or other matters;

   c.     Server, system, or network logs, electronic data temporarily stored by scientific equipment or attached devices;

   d.     Documents collected from custodians that cannot be processed with known or available processing tools;

   e.     ESI sent to or from mobile devices provided a copy of that data is routinely saved elsewhere; and

   f.     Data stored on photocopiers, scanners, and fax machines.

3.     Nothing in this order shall require a party to preserve data that is routinely deleted or over-written in accordance with an established routine records management information governance or system maintenance practice.

4.     Nothing in this order shall relieve a party from their obligation to preserve data sources accessed in the ordinary course of business, including disaster recovery media and systems used for archival purposes where such data source is the unique source of that data.

E.     Pursuant to a scheduling order of the Court, the Parties agree to exchange in writing the information listed in items (1) through (5) below. The Parties agree and understand that their respective responses are based on their knowledge and understanding as of the date of the response, and each Party agrees to amend or

supplement its responses in a timely manner if it learns that in some material respect its response is incomplete or incorrect.

1. A list of custodians (including current employees, former employees and any other individuals or companies) likely to have discoverable information, including job title and a brief description of job responsibilities and employment period for each individual to the extent that it exists and is reasonably accessible.

2. A general description of systems for electronic communications and ESI storage ("non-custodial sources") likely to contain discoverable information (e.g. shared network storage and shared electronic work spaces). For databases identified, the Producing Party should provide the following information (to the extent that it is reasonably available):

   Database Name
   Type of Database Software
   Platform Software Version
   Business Purpose
   A list of existing relevant reports used in the ordinary course of business
   Currently known Database Owner or Administrator's Name
   Field List within the scope of permissible discovery

   The Parties will meet and confer to discuss Field Definitions (including field type, size and use) for fields within the scope of permissible discovery.

3. A general description or, at the Producing Party's option, copies of the Party's operative document retention policies, throughout the relevant time period, pertaining to known data within the scope of discovery.

4. If unique, non-duplicative ESI within the scope of discovery is lost or destroyed after the legal hold obligations have been triggered in this case, if known.

5. A description of any ESI within the scope of discovery that the Producing Party contends is inaccessible or only of limited accessibility and, hence, not producible by that Party without undue burden and/or expense, including:

   a. The reasons for the Party's contention regarding accessibility; and

   b. The proposed capture and retrieval process available (if any) for identification and/or recovery of the information deemed inaccessible (including cost estimates if readily available).

F. After a reasonable inquiry, the Parties will exchange a suggested list of Sources that may be searched depending upon the scope of RFPs and the Producing Party's specific objections to certain requests.

G.   Nothing in this protocol shall obligate a Party to preserve ESI outside the scope of permissible discovery under 26(b)(1).

## V.   <u>SEARCH METHODOLOGY</u>

A.   The Parties will meet-and-confer to discuss and attempt to reach an agreement on the appropriate scope and limitations of both preservation and production of ESI. The Parties will discuss possible options for ensuring an efficient discovery process, such as the possible use of search terms or technology assisted review, the possible use of testing and sampling, relevant date ranges, possible custodians that may have potentially discoverable information, any obstacles to accessing and producing ESI, and the timing of productions. This section governs materials that have been collected for processing and review.

B.   The Parties may employ an electronic search to locate potentially relevant electronic documents. The Producing Party may use a reasonable electronic search of the electronic documents so long as such searches meet the standard of care promulgated in FRCP 26(g).

C.   The Parties recognize the intrinsic value of available tools to expedite review and minimize the expenses associated with eDiscovery. These tools include, but are not limited to, limiting the scope of the electronic search (through the use of search terms, cull terms, time frames, fields, document types, and custodian limitations), predictive coding, technology-assisted review ("TAR"), de-duplication and near de-duplication, e-mail threading, date restrictions, and domain analyses. The Producing Party may deploy these tools and technological methodologies to speed up document review, including global de-duplication within their own productions, using near de-duplication technology, predictive coding and computer assisted review. Producing Parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.

D.   Subject to the limitation in Paragraph V.C., the Parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the Parties. Agreement on a search methodology does not relieve a Party of its obligations under the Federal Rules to conduct a reasonable search and produce all known relevant and responsive documents of which it is aware. The Parties agree that there may be certain categories of relevant ESI that may not require automated searches. Nothing herein waives a Party's ability to object under Rule 34.

E.   <u>Keyword Search Terms</u>.

1.   If used, prior to implementing search terms against collected ESI, the Producing Party will provide a list of proposed search terms to the Requesting Party.

2.    The Parties will meet and confer regarding any additional terms proposed by the Requesting Party.

3.    If there is no dispute as to the terms, the Producing Party may proceed. If the Parties are unable to resolve any disputes over search terms through the meet and confer process (which may include statistical sampling of disputed terms), the Parties will submit the dispute to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with the search terms in dispute.

4.    The Producing Party agrees to quality check the data for an agreed set of custodial documents that do not hit on any terms (the Null Set) by selecting a statistically valid random sample of the Null Set. The Producing Party agrees to produce the responsive documents from the QC review separate and apart from the regular review, if any. The Parties will then meet and confer to determine if any additional terms, or modifications to existing terms, are needed to ensure substantive, responsive documents are not missed.

F.    <u>Technology Assisted Review</u>.

1.    If used, prior to using predictive coding/technology-assisted-review for the purpose of identifying or culling the documents to be reviewed or produced, or deciding not to use such technology, the Producing Party will notify the Requesting Party with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies or alternatives.

2.    While no specific benchmarks or stabilization percentages are agreed to by the parties undertaking TAR processes, it is agreed that the Producing Party has an obligation to make their best efforts to ensure that the process meets a Rule 26(g) standard.

G.    <u>Deficiency Procedure</u>. If the Requesting Party has good cause to believe that a Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

1.    As used in this section, "good cause" requires more than mere speculation; the Requesting Party must offer some concrete evidence of a deficiency in the Producing Party's discovery process.

2.    The Parties will consider appropriate means to assess the reasonableness of a Producing Party's discovery efforts, including, but not limited to, one or more of the following:

a. The Producing Party providing high-level process descriptions demonstrative of the quality controls employed as part of its preservation, collection and review efforts.

b. The Producing Party conducting a quality control evaluation of its responsiveness review process.

c. If technology-assisted review was employed, the Producing Party disclosing the particular application used.

d. If search terms were used to identify responsive documents, the Producing Party providing the search terms used and considering reasonable requests for additional search terms proposed by the Requesting Party.

e. If technology-assisted review was employed, a high level description of the sampling/testing procedure to validate the search method.

3. If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties will submit the dispute to the Court in the form of a joint discovery letter.

H. A Producing Party may also utilize search methodology to identify and redact certain documents and page ranges that otherwise require HIPAA redactions, redactions of personally protected information (e.g. tax identification numbers or materials that would permit identity theft) or redactions pursuant to 21 C.F.R. § 314.430(e) and 21 C.F.R. § 20.63(f) for documents produced.

I. If a Party contends that the production of materials sought from one or more sources are outside the scope of Rule 26(b)(1), the Parties agree, if necessary, to meet and confer to attempt to resolve the issue. Nothing in this Protocol shall prevent a party from seeking the Court's intervention with respect to any such issue if the Parties are unable to resolve it themselves or from preventing any other Party from opposing any relief sought.

## VI. TIMING OF DISCOVERY

Discovery of documents shall proceed in the following fashion:

A. After receiving requests for document production and upon reaching agreement regarding the scope, the Parties shall search and review their documents and produce responsive electronic documents on a rolling basis, until such production is complete.

B. The Parties will meet and confer at least monthly regarding production status.

## VII. FORMAT OF PRODUCTION

The Parties will produce ESI in accordance with the following protocol:

A. Non-Database ESI.

1. All non-database ESI shall be produced in TIFF format, subject to section VII B.1, below. All TIFF formatted documents will be single page, black and white, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11 inch page size, except for documents requiring different resolution or page size. Logically unitized document-level PDF may also be acceptable subject to the Parties meeting and conferring provided that agreed upon metadata fields (see paragraph VII.A.8), if they exist, and associated extracted text (see paragraph VII.A.4) are included in the production.

2. A unitization file, in standard format (*e.g.*, Opticon, Summation DII) showing the Bates number of each page, the appropriate unitization of the documents and the entire family range, will accompany each TIFF document.

3. A delimited text file that contains agreed upon metadata fields (see paragraph VII.A.8), if those fields exist, and associated extracted (or OCR for paper-based or redacted documents) text (see paragraph VII.A.4) should also be produced and use the following delimiters:

> Field Separator, ASCII character 020: ""
> Quote Character, ASCII character 254 "þ"
> Multi-Entry Delimiter, ASCII character 059: ";"

If the Producing Party requests alternate delimiters, the Parties shall agree on alternate delimiters.

4. Extracted, searchable full text will be produced for each non-redacted electronic document having extractable text. Each extracted full text file will be named according to the first Bates number of the corresponding electronic document.

5. Each TIFF or .TIF version of an unredacted electronic document will be created directly from the corresponding native file.

6. Unredacted spreadsheets.

a. All unredacted spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e. emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields.

9

       b.     The file name should match the Bates number assigned to the file.

       c.     The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form.

       d.     A slipsheet with the words "File Produced Natively" with Bates number and Confidentiality designation shall be placed to mark where the original Native file was found in the normal course.

       e.     The Parties agree to work out a future protocol governing the use and format of documents produced pursuant to paragraph VII.A.6 at trial, depositions or hearings (such as converting to tiff images in accordance with paragraphs VII.A.1-5).

7.    <u>Redacted spreadsheets</u>.

       a.     For redacted spreadsheet files (*e.g.*, Microsoft Excel), TIFF or .TIF versions, if produced, shall include all hidden rows, cells, worksheets as well as any headers or footers associated with the spreadsheet file.

       b.     A Party may elect to produce spreadsheet files as native rather than image files. In the event that a Producing Party has native redaction capability or seeks to remove a column or row from a spreadsheet for redaction purposes, the Producing Party will identify the natively redacted spreadsheet as redacted in the associated "Redacted" field.

8.    <u>Metadata</u>.

       a.     The following metadata fields associated with each electronic document will be produced, to the extent they exist as electronic metadata associated with the original electronic documents. No Party will have the obligation to manually generate information to populate these fields.

       b.     The following fields will be produced by the Parties:

| FIELD | FORMAT | DESCRIPTION |
|---|---|---|
| BEGDOC | Fixed-Length Text | Beginning Bates number |
| ENDDOC | Fixed-Length Text | Ending Bates number |
| BEGATTACH | Fixed-Length Text | Beginning of family range, first number of first family member |
| ENDATTACH | Fixed-Length Text | End of family range, last number of last family member |
| CUSTODIAN | Multiple Choice | Custodian name |

| ALL CUSTODIANS | Multiple Choice | If global deduplication is used, this field will be populated with the custodians who also had a copy of this document or document family, but which is not being produced because of deduplication. |
| DATE_CREATION | Date (date:time) | Creation Date File System |
| DATESENT | Date (date:time) | Sent Date for email |
| Date Received | Date (date:time) | Received Date for email |
| DATELASTMOD | Date (date:time) | Last Modified File System |
| FILEEXT | Fixed-Length Text | File Extension |
| FILENAME | Fixed-Length Text | File Name (efiles) |
| File Size | Number field | File size (in bytes, kilobytes, or megabytes) |
| HASHVALUE | Fixed-Length Text | Algorithmic based Hash Value generated by accepted method such as MD5 or SHA1 (or CONTROL_ID for scanned paper) |
| Original File Path | Long Text | Location where the document was kept in the normal course of business |
| Email Folder Path | Long Text | Location where the email was kept in the normal course of business |
| FILEPATH | Fixed-Length Text | Relative Path to any natively produced documents |
| BCC | Long Text | BCC Recipient Combined |
| CC | Long Text | CC Recipient Combined |
| FROM | Fixed-Length Text | Sender Combined |
| SUBJECT | Fixed-Length Text | Subject |
| TO | Long Text | Recipient Combined |
| PAGECOUNT | Whole Number | Page count, except any file produced natively will have a page count of 1 |
| CONFIDENTIALITY | Fixed-Length Text | Confidentiality |
| Redacted | Yes or No | Indicates whether the file has been redacted |
| Conversation Index | Fixed-Length Text | The conversation index value for email (e.g. MS Exchange message id) |
| Embedded | Yes or No | File embedded in native file |
| TEXTPATH | Fixed-Length Text | Relative path to the produced text file |

    c.    The Parties agree that system metadata dates may or may not be accurate, but Parties will do their best to preserve accuracy of system metadata (e.g. forensics are not required).

d.    A Producing Party may withhold metadata fields for redacted documents.

9.    <u>Embedded Files.</u>

a.    If a document has another responsive file embedded in it, (*e.g.*, PowerPoint with a spreadsheet in it), the Producing Party may extract and produce the documents as a separate document and treat such documents as attachments to the document.

b.    The Producing Party may also choose to have the Requesting Party request that the embedded file be produced as a standalone file pursuant to the following protocol:

i.    The Requesting Party shall provide a list referencing, by Bates numbers, files they believe contain responsive embedded files.

ii.    The Producing Party shall have 10 days to produce the requested embedded files as standalone files, or respond in writing why it will not produce the requested files.

iii.    A Party will have no obligation to produce any embedded file as a standalone file if the embedded file was not processed as a standalone file through the normal processes of the Producing Party's vendor.

iv.    The Parties will not object to the authenticity or admissibility of an embedded document produced pursuant to paragraph VII.A.9.b on grounds relating to the process used to produce the embedded document. All other objections shall be preserved, including but not limited to completeness.

v.    The Producing Party need not produce embedded files as separate files that do not have user created content, including but not limited to irrelevant inline image files (e.g., signatures and company logos).

B.    <u>Native Files.</u>

1.    The Parties agree that documents will be produced in the imaged format as set forth in paragraph VII.A and that no Requesting Party may request or seek to compel the production of ESI in native format on a wholesale basis, with the exception of spreadsheets as detailed in paragraphs VII.A.6 and 7, although the Producing Party retains the option to produce ESI in native file format.

12

2.      Subsequent to the production of the imaged documents, however, and according to the following protocol, a Requesting Party may request for good cause from a Producing Party that certain imaged files be produced in native format because the files are not reasonably usable in an imaged form.

   a.      The Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format.

   b.      The Producing Party shall have 10 days to produce the native files previously identified as not reasonably usable, or it may object to the demand as unreasonable as follows:

      i.      Within 10 days of receiving a request to produce native files, the Producing Party will respond in writing, setting forth its objection(s) to the production of the files.

      ii.     The Parties will meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of such files in native format within 10 days of submission of the Responding Party's objection(s), the Parties will submit the matter to the Court.

   c.      Any produced native files will be assigned a unique file name and hash value and will include a cross reference to the Bates number it was originally produced with.

C.      <u>Production Of Documents Collected as Paper.</u> For documents that have been collected in paper format, the same specifications should be used as the production of ESI in paragraph VII.A with the following clarifications:

1.      A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages.

2.      To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document.

3.      A text cross reference load file should also be included with the production delivery that lists the beginning Bates number of the document and the relative path to the text file for that document on the production media.

4.      A Producing Party will make best efforts to unitize documents collected as paper prior to scanning. However, the Parties agree that legacy scanned

documents in electronic form scanned prior to this litigation will be unitized as they are collected in the ordinary course of business.

D.     <u>Production of Databases and Other Structured Data.</u>

1.     Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format.

2.     The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured data source. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable TIFF-image format described in paragraph VII.A. If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable report form.

3.     Nothing herein shall obligate a Producing Party to create custom reporting. The Parties shall meet and confer to discuss the associated cost and proportionality of any custom reporting should this be contemplated.

E.     <u>Other.</u> The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

## VIII.   <u>DE-DUPLICATION</u>

A.     <u>De-Duplication and Near De-Duplication.</u>

1.     Parties may de-duplicate globally. If Parties de-duplicate globally, it is agreed that for each production, an updated metadata overlay file will be produced with "All Custodians" data provided as detailed in paragraph VII.A.8.b.

2.     The Parties agree that an e-mail that includes content in the "bcc" or other blind copy field shall not be treated as a duplicate of an otherwise identical e-mail that does not include content in the "bcc" or other blind copy field.

3.     The Parties also agree that the use of near-de-duplication protocols can reduce the cost of the review and production of ESI.

4.     A Party may also de-duplicate "near duplicate" email threads as follows:

a.     In an email thread, only the final-in-time document need be produced, provided that:

   i.  All previous emails in the thread are contained within the final message.

   ii.  The software used to identify these "near-duplicate" threads is able to identify any differences to the thread such as changes in recipients (e.g., side threads, subject line changes), dates, selective deletion of previous thread content by sender, etc. To the extent such differences exist, documents with such differences shall be produced.

   iii.  Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate."

  5.  To the extent that deduplication is used, the Parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial.

**B.**  <u>E-mail Threads & Attachments</u>.

  1.  Producing Party may produce non-inclusive e-mail solely as part of an inclusive e-mail thread, even though such e-mail were transmitted by themselves or as part of another non-inclusive e-mail thread, provided that any otherwise duplicate e-mail thread having a previous e-mail in the thread deleted or modified will be identified as a separate inclusive e-mail.

  2.  Requesting Party agrees that Producing Party may produce only inclusive e-mail items, provided that:

   a.  Producing Party will make reasonable efforts to correct any errors that occur as part of its efforts to produce e-mail chains, as described above, including but not limited to incomplete production of attachments.

   b.  If any issues arise from Producing Party's production of only inclusive e-mail items, even if not strictly production "errors," Producing Party and the Requesting Party will meet and confer in good faith to resolve or address such issues.

  3.  E-mails (with or without attachments) may be introduced into evidence as separate documents without other e-mails or attachments in the e-mail chain or with other e-mails or attachments in the chain redacted:

   a.  Without an objection based on authenticity or admissibility on the grounds that the e-mails or attachments have been excerpted from a produced inclusive e-mail item removed from an e-mail chain in the process of producing ESI; and

      b.     Without prejudice to an objection based on Federal Rule of Evidence (FRE) 106 that additional documents or e-mails should be admitted in evidence as the remainder of or related writings or statements.

The Parties reserve all other objections to the relevance, authenticity or admissibility of ESI.

## IX.    PRIVILEGE AND REDACTIONS

A.    <u>Privileged Information and Attorney Work Product.</u> Electronic documents that contain  privileged information or attorney  work product shall be returned or destroyed if they reasonably appear to have been inadvertently produced or if there is notice of the inadvertent production. The Parties will meet and confer to the extent there is a disagreement on the privileged nature of the document. Otherwise, all copies shall be returned or destroyed by the Requesting Party. To the extent that there is a conflict of law in regards to the Requesting Party's obligation to return or destroy privileged documents, the law most favorable to the inadvertent Producing Party shall apply. Nothing herein will prevent a receiving Party's right to object to the privileged nature of the document.

B.    <u>Redactions</u>.

    1.    The  Parties need not log redacted documents  on  a  privilege log. The privilege designation will be available on the face of the document. A Requesting Party may request additional information if the nature of the privilege is not apparent on the face of the document.

    2.    A Producing Party may redact ESI that the Producing Party claims is subject to attorney client privilege, work product protection, contains information that relates to other products, or any ESI for which there is a legal prohibition against disclosure.

    3.    The Producing Party shall mark each redaction with the bases for each redaction (e.g., other products, privilege).

    4.    The Producing Party shall preserve an un-redacted version of the item.

C.    <u>Claims of Privilege and Privilege Log</u>.

    1.    The Producing Party must furnish a log of all documents withheld from production on the basis of attorney-client or work-product privilege ("Privilege Log") within seventy-five (75) days of completion of each production.  To the extent a Producing Party needs more time, the Parties will meet and confer.

    2.    Consistent with Fed. R. Civ. P. 26(b)(5), the Producing Party's Privilege Log will contain the following information:

      i.      Date of document or communication (including month, day, and year)

      ii.     Type of document

      iii.    Author of document

      iv.    Sender of document (if different from author), including email address

      v.     Recipient names (including email addresses)

      vi.    CC names (including email addresses)

      vii.   BCC names (including email addresses)

      viii.  Bates range of the privileged documents

      ix.    Indication of the privilege

      x.     File name

      xi.    If produced, family member designation within the production

      xii.   A description of the subject matter of the document or communication with information sufficient to demonstrate the existence of a privilege

3.      A Party need only log the topmost e-mail in a thread so long as the description of the subject matter includes enough information sufficient to demonstrate the privilege.

4.      To the extent a Party seeks to use categorical logs in lieu of providing the information above, the Producing Party will initiate a meet and confer with the Requesting Party. However, documents comprising attorney- client communications and/or attorney work product relating to the litigation and dated after the start of the litigation need not be included on a privilege log.

5.      To the extent available, individuals should be identified with enough information to identify why the privilege attaches, such as name and job title or other justification for assertion of privilege.

6.      If the Requesting Party objects to a document (or part of it) being withheld or redacted as privileged, it shall meet and confer with the Producing Party. Should the Parties not be able to agree to a resolution of the dispute, the Requesting Party shall submit the dispute to the Court.

## X.     FEDERAL RULE OF EVIDENCE 502.

A.     The production of privileged or work-product protected documents, ESI or other information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other state or federal proceeding.

B.     This ESI Protocol shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence (FRE) 502 and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S. Code § 1738. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

C.     Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

## XI.    COSTS

The Parties agree that the Producing Party bears the burden of discovery costs absent

agreement or court order pursuant to Rule 26(c)(1)(B).

## XII.   DESTRUCTION AND RETURN OF ESI

A.     Within sixty (60) days after dismissal or entry of final judgment not subject to further appeal, all discovery materials produced must be either destroyed or returned to the Producing Party.

B.     If destroyed, an affidavit by the Requesting Party with an attached certificate of destruction must be produced to the Producing Party no later than 30 days after the termination of this MDL. Failure to provide the affidavit and certificate of destruction shall be deemed as a violation of the Court's order.

**SO ORDERED**.

New Orleans, Louisiana this 1st day of May, 2023.

_____

**HON. JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

18

# ADDENDUM C

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: TAXOTERE (DOCETAXEL)** | ) | **MDL NO. 3023** |
| **EYE INJURY PRODUCTS** | ) | |
| **LIABILITY LITIGATION** | ) | **SECTION "H" (5)** |
| | ) | |

## PRETRIAL ORDER NO. 4

The parties have submitted an agreed upon Plaintiff Fact Sheet ("PFS") and accompanying authorizations, as well as an agreed upon Defendant Fact Sheet ("DFS").

**IT IS ORDERED** that the documents attached to this Order as Exhibit A will be the operable Plaintiff Fact Sheet and authorizations in this matter; and

**IT IS FURTHER ORDERED** that the document attached to this Order as Exhibit B will be the operable Defendant Fact Sheet in this matter.


New Orleans, Louisiana this 1st day of May, 2023.


_____
**HONORABLE JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: TAXOTERE (DOCETAXEL)   )      MDL NO. 3023
EYE INJURY PRODUCTS          )
LIABILITY LITIGATION           )      SECTION "H" (5)
                         )

## PLAINTIFF FACT SHEET

This Fact Sheet must be completed by each plaintiff who has filed a lawsuit related to the use of Taxotere® (docetaxel) by the plaintiff or a plaintiff's decedent. Please answer every question to the best of your knowledge. In completing this Fact Sheet, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can. You must supplement your responses if you learn that they are incomplete or incorrect in any material respect.

In filling out this form, please use the following definitions: (1) "healthcare provider" means any hospital, clinic, medical center, physician's office, infirmary, medical or diagnostic laboratory, or other facility that provides medical, dietary, psychiatric, or psychological care or advice, and any pharmacy, weight loss center, x-ray department, laboratory, physical therapist or physical therapy department, rehabilitation specialist, physician, psychiatrist, osteopath, homeopath, chiropractor, psychologist, nutritionist, dietician, or other persons or entities involved in the evaluation, diagnosis, care, and/or treatment of the plaintiff or plaintiff's decedent; (2) "document" means any writing or record of every type that is in your possession, including but not limited to written documents, documents in electronic format, cassettes, videotapes, photographs, charts, computer discs or tapes, and x-rays, drawings, graphs, phone-records, non-identical copies, and other data compilations from which information can be obtained and translated, if necessary, by the respondent through electronic devices into reasonably usable form.

**Information provided by plaintiff will only be used for purposes related to this litigation. This Fact Sheet is completed pursuant to the Federal Rules of Civil Procedure governing discovery (or, for state court cases, the governing rules of civil procedure of the state in which the case is pending).**

I.         **GENERAL INFORMATION**

### A.  Attorney and Case Information

Provide the following information for the lawsuit you filed:

| | | |
|---|---|---|
| 1. | Case Caption: | |
| 2. | Court and Docket Number: | |
| 3. | MDL Docket No. (if different): | |
| 4. | Date Lawsuit Filed: | |
| 5. | Plaintiff's Attorney Name: | |
| 6. | Plaintiff's Law Firm Name: | |
| 7. | Attorney's Address (Street, City, and State): | |
| 8. | Attorney's Phone: | |
| 9. | Attorney's Email: | |

### B.  Plaintiff Information

Provide the following information for the individual on whose behalf this action was filed (i.e., the injured person):

| | | | | |
|---|---|---|---|---|
| 1. | Full Name: | | | |
| | | First | Middle | Last |
| 2. | Current Address: | | | |
| 3. | City: | | | |
| 4. | State: | | | |
| 5. | Zip: | | | |
| 6. | Prior address(es) in the five (5) years before filing this lawsuit: | | | |
| 7. | Date of Birth: | | | |
| 8. | City and State of Birth: | | | |

| 9. | Social Security Number: | |
|---|---|---|
| 10. | Maiden or other name(s) used or by which have been known (including dates of same): | |
| 11. | Sex: | □ Male       □ Female |

### C. Representative Information:

| 1. | On whose behalf are you completing this questionnaire? | □ On behalf of myself (I am the injured person) <br><br> □ On behalf of someone else (e.g., in behalf of the estate of a deceased person or an incapacitated person) |
|---|---|---|

**If you responded to Question C.1. that you are completing this "On behalf of myself (I am the injured person)," please move to Section II. If you answered you are completing this, "On behalf of someone else" in response to Question C.1., please state the following. Please respond with your information.**

| 2. | Full Name: | | | |
|---|---|---|---|---|
| | | First | Middle | Last |
| 3. | Street Address: | | | |
| 4. | City, State, Zip: | | | |
| 5. | Capacity in which you are representing the individual (e.g., executor, surviving spouse, power of attorney): | | | |
| 6. | Have you been appointed as a representative by a court? | | | |
| 7. | If you were appointed as a representative by a court, identify the following: | | | |
| | State: | | | |
| | Court: | | | |
| | Case Number: | | | |
| 8. | Relationship to the Represented Person: | | | |
| 9. | Date of death of the decedent: | | | |
| 10. | City and state of death of the decedent: | | | |

## II.          PERSONAL INFORMATION

*If you are completing this questionnaire in a representative capacity, please respond to these questions with respect to the person whose medical treatment involved Taxotere® or docetaxel.*

### A.  Relationship Information

| 1. | Are you currently: | □ Married          □ Single              □ Engaged<br>□ Divorced       □ Significant Other   □ Widowed |
|----|--------------------|---|

| 2. | Have you been married within two years prior to the cancer diagnosis at issue in this litigation? | □ Yes        □ No |
|----|---|---|

| **If you answered "yes" to Question A.2.,** for EACH marriage, within two years prior to the cancer diagnosis at issue in this litigation, state the following: ||||
|---|---|---|---|
| Spouse's name | Date of Marriage | Date Marriage Ended | Nature of Termination (i.e. Divorce or Death of Spouse) |
|  |  |  |  |
|  |  |  |  |

| 3. | Do you have children? | □ Yes      □ No |
|----|---|---|

| **If you answered "yes" to Question A.3.,** for EACH child, state the following: |||
|---|---|---|
| Child's Name | Child's Address | Child's Age |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

### B.  Education

| 1. | For each level of education you completed, check: | □ High School       □ Vocational School<br><br>College:  □ A.A.  □ B.A./B.S.    □ Masters    □ Ph.D.  □ M.D.<br><br>Other: |
|----|---|---|

5

### C. Employment

| | | |
|---|---|---|
| 1. | Are you currently employed: | □ Yes      □ No |
| | **If you answered "yes" to Question C.1.,** please state the following: | |
| 2. | Current Employer Name: | |
| 3. | Street Address: | |
| 4. | City, State, Zip: | |
| 5. | Telephone: | |
| 6. | Your position there: | |
| 7. | Are you making a claim for lost wages or lost earning capacity? | □ Yes      □ No |

**If you answered "yes" to Question C.7.,** please state the following for EACH employer for the last five (5) years before you started chemotherapy with Taxotere or docetaxel.

| Name of Employer | Address (City and State) | Dates of Employment | Annual Gross Income | Your Position |
|---|---|---|---|---|
| | | To <br><br> □ Present | | |
| | | To <br><br> □ Present | | |
| | | To <br><br> □ Present | | |

### D. Military

| | | |
|---|---|---|
| 1. | Have you ever served in the military? | □ Yes      □ No |
| | **If you answered "yes" to Question D.1.,** please state the following: | |
| 2. | Division: | |
| 3. | Years served: | |

### E. Disability Claims

| | | |
|---|---|---|
| 1. | Have you ever filed for social security, and/or state or federal disability benefits? | □ Yes      □ No |
| | **If you answered "yes" to Question E.1.,** please state the following: | |
| 2. | Year Claim Filed: | |
| 3. | Court: | |
| 4. | Nature of Claimed Injury: | |

| 5. | Period of Disability: | |
|----|------------------------|---|
| 6. | Award Amount: | |
| | | |
| 7. | Year Claim Filed: | |
| 8. | Court: | |
| 9. | Nature of Claimed Injury: | |
| 10. | Period of Disability: | |
| 11. | Award Amount: | |

### F. Other Lawsuits

| 1. | Have you filed a lawsuit, relating to any bodily injury OTHER THAN the present suit? | □ Yes    □ No |
|----|------------------------|---|
| | **If you answered "yes" to Question F.1.,** please state the following: | |
| 2. | Year Claim Filed: | |
| 3. | Court: | |
| 4. | Nature of Claimed Injury: | |
| 5. | Outcome: | |
| | | |
| 6. | Year Claim Filed: | |
| 7. | Court: | |
| 8. | Nature of Claimed Injury: | |
| 9. | Outcome: | |

| 10. | Have you filed a claim in the Taxotere (docetaxel) Products Liability Litigation MDL 2740? | □ Yes    □ No |
|----|------------------------|---|
| | **If you answered "yes" to F.10.,** please identify the case number: | |

### G. Social Media/Electronic Communication

| 1. | Has Plaintiff used or maintained any of the following five (5) years prior to Taxotere or docetaxel treatment or any time since treatment: (1) any email accounts; (2) any electronic devices (e.g., desktop or laptop computers, tablets, mobile phones, digital cameras); (3) any other hardware storage devices (e.g., external hard drives, memory cards, USB or thumb drives, CDs/DVDs); (4) any social media (e.g., Facebook, Instagram, TikTok, LinkedIn, Twitter, YouTube, Pinterest, or other online collaboration tools such as Google+ or Yahoo! groups); (5) any website where Plaintiff made online postings (e.g., on a blog, message board, etc.); (6) any cloud storage (e.g., DropBox, Microsoft Office365 Account, Google Drive, iCloud, Amazon Drive, etc.). | □ Yes    □ No |
|----|------------------------|---|

    **If you answered "yes" to Question G.1.,** Plaintiff shall conduct reasonably diligent searches of the above Electronically Stored Information ("ESI") sources. Reasonably diligent searches may require running search terms; reviewing files, communications, videos, and photographs; or otherwise conducting an actual, physical search of the sources. Plaintiff's counsel shall take an active role in identifying, preserving, collecting, reviewing, and producing all responsive ESI.

    Where feasible, Plaintiff or her attorney shall run the following terms through any available search function on the sources identified above. Each term should be run separately: (a) breast cancer; (b) cancer; (c) chemotherapy; (d) chemo; (e) eye; (f) tearing; (g) duct; (h) stenosis; (i) obstruction; (j) lacrimation; (k) conjunctivitis; (l) cataract; (m) vision; (n) taxotere; (o) docetaxel; (p) taxane; (q) sanofi; (r) pharmaceutical; (s) side effect; and (t) warning.

**For EACH such piece of electronically stored information, please produce it with your responses to Section IX, DOCUMENT REQUESTS AND AUTHORIZATIONS.**

## III.         PRODUCT IDENTIFICATION

**YOU MUST UPLOAD RECORDS DEMONSTRATING USE OF TAXOTERE® OR DOCETAXEL CONCURRENT WITH SUBMISSION OF THIS FACT SHEET**.

| | | | |
|---|---|---|---|
| 1. | I have records demonstrating use of Taxotere® or docetaxel: | ☐ Yes | ☐ No |
| 2. | Please select the name of the drug with which you were treated. Please select all that apply: | | |

| Name of Drug | Yes |
|---|---|
| Taxotere – Sanofi-Aventis U.S. LLC | ☐ |
| Docetaxel – Accord Healthcare, Inc. | ☐ |
| Docetaxel – Actavis LLC f/k/a Actavis Inc. / Actavis Pharma, Inc. | ☐ |
| Docetaxel – Eagle Pharmaceuticals, Inc. | ☐ |
| Docetaxel – Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc. / Hospira, Inc. | ☐ |
| Docetaxel – Pfizer Inc. | ☐ |
| Docetaxel – Sagent Pharmaceuticals, Inc. | ☐ |
| Docetaxel – Sandoz Inc. | ☐ |
| Docetaxel – Sanofi-Aventis U.S. LLC d/b/a Winthrop US | ☐ |
| Docefrez – Sun Pharma Global FZE | ☐ |
| Docefrez – Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Laboratories, Ltd. | ☐ |
| Docetaxel – Teikoku Pharma USA, Inc. | ☐ |
| Unknown | ☐ |
| Other (Please Describe): | ☐ |

**IF YOU SELECTED "UNKNOWN" YOU MUST CERTIFY AS FOLLOWS:**
**I certify that I have made reasonable, good faith efforts to identify the manufacturer of the Taxotere® or docetaxel used in my treatment, including requesting records from my infusion facility, and the manufacturer/labeler either remains unknown at this time or I am awaiting the records: ☐**

## IV.       CANCER DIAGNOSIS AND TREATMENT WITH TAXOTERE® OR DOCETAXEL

| | | |
|---|---|---|
| 1. | When were you first diagnosed with the cancer for which you were prescribed Taxotere® or docetaxel? | |
| 2. | What was the diagnosis for which you were prescribed Taxotere® or docetaxel? | |

| Diagnosis | Diagnosed |
|---|:---:|
| Breast Cancer | ☐ |
| Non-small cell lung cancer | ☐ |
| Prostate cancer | ☐ |
| Gastric adenocarcinoma | ☐ |
| Head and neck cancer | ☐ |
| Other (describe):_____ | ☐ |
| **Tumor Size** | **Yes** |
| TX | ☐ |
| TO | ☐ |
| Tis | ☐ |
| T1 | ☐ |
| T2 | ☐ |
| T3 | ☐ |
| T4 (T4a, T4b, T4c, T4d) | ☐ |
| Unknown | ☐ |
| **Metastasis** | **Yes** |
| Metastasis | ☐ |
| **Node** | **Yes** |
| Node + NX | ☐ |
| Node + NO | ☐ |
| Node + N1 | ☐ |
| Node + N2 | ☐ |
| Node + N3 | ☐ |
| Node — (negative) | ☐ |
| Other (specify): _____ | |
| Unknown | ☐ |
| **IF BREAST CANCER**, please specify: | |
| **HER2 Status** | **Yes** |
| HER2 + (positive) | ☐ |
| HER2 - (negative) | ☐ |
| HER2 Status Unknown | ☐ |
| **Estrogen Status** | **Yes** |
| Estrogen Positive ER+ (positive) | ☐ |
| Estrogen Negative ER- (negative) | ☐ |
| Estrogen Status Unknown | ☐ |

9

| Progesterone Status | Yes |
|---|---|
| Progesterone Positive PR+ (positive) | ☐ |
| Progesterone Negative PR- (negative) | ☐ |
| Progesterone Status Unknown | ☐ |

| 3. | Please provide the following information regarding your use of Taxotere® or docetaxel: | |
|---|---|---|
| | Number of Cycles: | |
| | Frequency: | ☐ Weekly     ☐ Every 3 weeks<br><br>☐ Other:_____ |
| | First treatment date: | |
| | Last treatment date: | |
| | Dosage (for each cycle): | |
| | Combined with another chemotherapy drug(s): | ☐ Yes   ☐ No |
| | Sequential with another chemotherapy drug(s): | ☐ Yes   ☐ No |
| | If used in combination or sequentially with other chemotherapy, specify other chemotherapy drug(s) and prescriber(s): | |
| | Was your Taxotere® or docetaxel treatment part of a clinical trial? | ☐ Yes   ☐ No |
| | **If yes**, please provide the name and location of the trial site: | |

| 4. | Please identify the Physician(s) who prescribed you Taxotere® or docetaxel: | | |
|---|---|---|---|
| **Prescribing Physician Name**<br>**(First, Last)** | **Address**<br>**(Street Address)** | **Address**<br>**(City and State)** | |
| | | | |
| | | | |
| | | | |

| 5. | Please identify the Treatment Facility(ies) where you were treated with Taxotere® or docetaxel | | |
|---|---|---|---|
| **Treatment Facility Name** | **Address**<br>**(Street Address)** | **Address**<br>**(City and State)** | |
| | | | |
| | | | |

| 6. | Identify EACH state where you resided when you were prescribed Taxotere® or docetaxel: | | |
|---|---|---|---|
| **State** | | **From Date** | **To Date** |
| | | | |
| | | | |
| | | | |

| 7. | If the state in which you took Taxotere or docetaxel is different from the state where you resided when you were prescribed Taxotere or docetaxel, please identify EACH state where you resided while you were taking Taxotere® or docetaxel at any time: | | |
|---|---|---|---|
| **State** | | **From Date** | **To Date** |
| | | | |
| | | | |
| | | | |

| 8. | Are you currently taking Taxotere® or docetaxel? | □ Yes   □ No |
|---|---|---|
| 9. | **Please specify your current cancer status**: | |

| | |
|---|---|
| Not currently receiving treatment and cancer free | □ |
| In remission | □ |
| Currently receiving chemotherapy | □ |
| Currently receiving radiation | □ |
| Currently hospitalized for cancer or cancer related complications | □ |
| Currently in home health or hospice for cancer or cancer related complications | □ |
| Cancer returned | □ |
| Metastatic disease | □ |

## V.        OTHER CANCER DIAGNOSES AND TREATMENT(S)

| 1. | Have you ever been diagnosed with cancer other than the one described above? | □ Yes       □ No |
|---|---|---|
| 2. | Have you been diagnosed with cancer more than once? | □ Yes       □ No |
| 3. | Did you undergo any of the following for cancer? | |
| | Surgery | □ Yes       □ No |
| | Radiation | □ Yes       □ No |
| | Chemotherapy | □ Yes       □ No |
| 4. | When was the last (most recent) date you consulted with an oncologist: | |

| 5. | Please state the following for EACH cancer diagnosis: | |
|---|---|---|
| Type of Cancer: | | |
| Date of Diagnosis: | | |
| | | |
| Primary Oncologist: | | |
| Treatment Dates: | To                              □ Present |
| Name (First, Last): | | |
| Street Address: | | |

11

| | |
|---|---|
| City, State, Zip: | |
| | |
| Primary Treatment Facility: | |
| Treatment Dates: | To ☐ Present |
| Treatment Type(s): | |
| Facility Name: | |
| Street Address: | |
| City, State, Zip: | |
| | |
| Type of Cancer: | |
| Date of Diagnosis: | |
| Primary Oncologist: | |
| Treatment Dates: | To ☐ Present |
| Name (First, Last): | |
| Street Address: | |
| City, State, Zip: | |
| | |
| Primary Treatment Facility: | |
| Treatment Dates: | To ☐ Present |
| Treatment Type(s): | |
| Facility Name: | |
| Street Address: | |
| City, State, Zip: | |

| For EACH cancer diagnosis identified in response to question 5: | | | |
|---|---|---|---|
| 6. | Did you take any chemotherapy drugs? | | ☐ Yes ☐ No ☐ Unknown |
| | **If you answered "yes" to Question 6**, please specify for EACH chemotherapy drug: | | |

| Drug Name | Date(s) of Use | For what cancer type(s) | Prescriber(s) Name and Address |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## VI.     PRIOR MEDICAL INFORMATION

| | | |
|---|---|---|
| 1. | Do you now or have you ever worn glasses? | ☐ Yes ☐ No |
| | **If you answered "yes" to Question 1**, from what year to what year have you worn glasses: | to |
| 2. | Do you now or have you ever worn contacts? | ☐ Yes ☐ No |
| | **If you answered "yes" to Question 2**, from what year to what year have you worn contacts: | to |
| 3. | Excluding your routine vision examination, have you ever seen a healthcare provider for any eye condition other than the injury alleged in this lawsuit? | ☐ Yes ☐ No |

| If you answered "yes" to Question 3, please fill out below: | | |
|---|---|---|
| **Name of Healthcare Provider and Facility** | **Reason for Visit** | **Approximate Date(s)** |
| | | |
| | | |
| | | |
| | | |
| | | |

| | | |
|---|---|---|
| 4. | Did you experience tearing before your chemotherapy treatment? | □ Yes  □ No |
| | **If you answered "yes" to Question 4,** please fill out below: | |
| | Date(s) of tearing: | |

| | | |
|---|---|---|
| 5. | Did you receive treatment? | □ Yes  □ No |
| | **If you answered "yes" to Question 5,** please fill out below: | |
| | **Date of treatment:** | |
| | **Type of Treatment:** | |
| | **Healthcare Provider Name:** | |
| | **Healthcare Facility** | |

| | | |
|---|---|---|
| 6. | Were you diagnosed with lacrimal obstruction, including but not limited to punctal stenosis and/or canalicular stenosis before your chemotherapy treatment? | □ Yes  □ No |
| | **If you answered "yes" to Question 6,** please fill out below: | |
| | Date(s): | |
| 7. | Did you receive treatment? | □ Yes  □ No |
| | **If you answered "yes" to Question 7,** please fill out below: | |
| | **Date of treatment:** | |
| | **Type of Treatment:** | |
| | **Healthcare Provider Name:** | |
| | **Healthcare Facility** | |

13

| 8. | Have you ever experienced or been diagnosed with any of the following eye conditions | | | |
|---|---|---|---|---|
| **Eye Condition** | | **Yes** | **No** | **Date Range** |
| Blurred Vision | | ☐ | ☐ | |
| Cloudy Vision | | ☐ | ☐ | |
| Dacryoadenitis Acquired/ Inflammation of lacrimal gland | | ☐ | ☐ | |
| Ocular hyperemia/bloodshot eyes | | ☐ | ☐ | |
| Visual impairment | | ☐ | ☐ | |
| Keratoconjunctivitis sicca/dry eye | | ☐ | ☐ | |
| Vision loss | | ☐ | ☐ | |
| Visual disturbances | | ☐ | ☐ | |
| Macular edema | | ☐ | ☐ | |
| Edema/swelling of the eye | | ☐ | ☐ | |
| Eye irritation | | ☐ | ☐ | |
| Eye infection | | ☐ | ☐ | |
| Light sensitivity | | ☐ | ☐ | |
| Eyes feeling gritty | | ☐ | ☐ | |
| Painful/sore eyes | | ☐ | ☐ | |
| Eyelid swelling | | ☐ | ☐ | |
| Blindness/partial blindness | | ☐ | ☐ | |
| Cataracts | | ☐ | ☐ | |
| Glaucoma | | ☐ | ☐ | |
| Eyelid skin cancer | | ☐ | ☐ | |
| Canaliculitis | | ☐ | ☐ | |
| Altered color vision | | ☐ | ☐ | |
| Ectropion/eyelid drooping | | ☐ | ☐ | |
| Canalicular laceration | | ☐ | ☐ | |
| Chemical or thermal burn on eye | | ☐ | ☐ | |
| Eyelid malposition (trichiasis) | | ☐ | ☐ | |
| Conjunctivitis | | ☐ | ☐ | |

| 9. | Have you ever received any of the following treatments for an eye condition before your first use of Taxotere® or docetaxel: | | | |
|---|---|---|---|---|
| **Treatment** | | **Yes** | **No** | **Date Range** |
| Steroid drops | | ☐ | ☐ | |
| Lasik | | ☐ | ☐ | |
| Stents/intubation | | ☐ | ☐ | |
| Prescribed eyedrops | | ☐ | ☐ | |

14

| 9. | Have you ever received any of the following treatments for an eye condition before your first use of Taxotere® or docetaxel: | | | |
|---|---|---|---|---|
| **Treatment** | **Yes** | **No** | **Date Range** | |
| Prescribed artificial tears | ☐ | ☐ | | |
| Probing and irrigation | ☐ | ☐ | | |
| LipiFlow | ☐ | ☐ | | |
| Punctal plugs | ☐ | ☐ | | |
| Punctal cauterization | ☐ | ☐ | | |
| Eye surgery | ☐ | ☐ | | |
| Eyelid surgery | ☐ | ☐ | | |
| Punctoplasty | ☐ | ☐ | | |
| DCR/Dacryocystorhinostomy | ☐ | ☐ | | |
| CDCR/ Conjunctivodacryocystorhinostomy/ Jones Tube | ☐ | ☐ | | |
| Sinus surgery | ☐ | ☐ | | |
| Other: _____ | ☐ | ☐ | | |

| 10. | If you answered "yes" to Question 8 and/or 9, please specify: |
|---|---|
| **Name(s) of healthcare provider who diagnosed and/or provided treatment for each eye condition** | **Healthcare provider(s)' practice location and address** |
| | |
| | |
| | |

| 11. | Have you ever had any of the following health conditions: | | | |
|---|---|---|---|---|
| **Condition** | **Yes** | **No** | **Date Range** | |
| Allergies (e.g. allergic rhinitis, seasonal allergies) | ☐ | ☐ | | |
| Bell's palsy | ☐ | ☐ | | |
| Facial trauma | ☐ | ☐ | | |
| Broken bones near the eye | ☐ | ☐ | | |
| Broken nose | ☐ | ☐ | | |
| Sinus disease | ☐ | ☐ | | |
| Rosacea | ☐ | ☐ | | |
| Ocular rosacea | ☐ | ☐ | | |
| Nasal polyps | ☐ | ☐ | | |

| 11. | **Have you ever had any of the following health conditions:** | | | |
|---|---|---|---|---|
| **Condition** | | **Yes** | **No** | **Date Range** |
| Hypertension | | ☐ | ☐ | |
| Diabetes | | ☐ | ☐ | |
| High cholesterol | | ☐ | ☐ | |

## VII.    CLAIM INFORMATION

### A.  Injury Alleged

| 1. | Did you experience tearing during the chemotherapy regimen that included Taxotere® or docetaxel? | ☐ Yes   ☐ No |
|---|---|---|
| | **If you answered "yes" to Question A.1.,** please fill out below: | |
| | Describe when the tearing started: | |
| | Did the tearing resolve after finishing the chemotherapy regimen that included Taxotere® or docetaxel? | ☐ Yes   ☐ No |
| 2. | What injuries do you allege in this lawsuit: | |

| Alleged Injury | Yes | No | Right Eye | Left Eye | Both Eyes | From | To |
|---|---|---|---|---|---|---|---|
| Stenosis of lacrimal canaliculi | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ Present |
| Stenosis of lacrimal punctum | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ Present |
| Stenosis of lacrimal sac | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ Present |
| Stenosis of lacrimal duct | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ Present |
| Obstruction of Lacrimal Duct | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ Present |
| Obstruction of Nasolacrimal Duct | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ Present |
| Stenosis of nasolacrimal duct | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ Present |
| Epiphora | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ Present |
| Excessive tearing or epiphora due to obstruction or insufficient drainage | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ Present |
| Other: | ☐ | ☐ | ☐ | ☐ | ☐ | | ☐ Present |

16

| 3. | If you allege that you currently experience tearing/epiphora, please specify whether it occurs: | | | | |
|---|---|---|---|---|---|
| **Less than once a day** | **1-2 times a day** | **3-5 times a day** | **>5 times a day** | **Other (please describe):** | |
| ☐ | ☐ | ☐ | ☐ | | |

| 4. | If you allege that you currently experience tearing/epiphora, please specify whether it is accompanied by (check all that apply): | ☐ Itching<br>☐ Pain<br>☐ Discharge<br>☐ Redness<br>☐ Other symptom(s) (please specify): |
|---|---|---|

| 5. | Were you diagnosed by a healthcare provider for the injury you allege in this lawsuit? | ☐ Yes  ☐ No | | | |
|---|---|---|---|---|---|
| **If you answered "yes" to Question A.5.,** please fill out below: | | | | | |
| **Diagnosing Physician Name** | **Facility Address** (Street Address) | **Facility Address** (City and State) | **Date of Diagnosis** | **Diagnosis** | |
| | | | | | |
| | | | | | |

| 6. | Have you discussed with any healthcare provider whether your use of Taxotere or docetaxel caused or contributed to your alleged injury? | ☐ Yes  ☐ No | | |
|---|---|---|---|---|
| **If you answered "yes" to Question A.6.,** please fill out below: | | | | |
| **Physician Name** | **Facility Address** (Street Address) | **Facility Address** (City and State) | **Date of Discussion** | **Nature of Discussion** |
| | | | | |
| | | | | |

| 7. | Were you ever given any written instructions, including any prescriptions, packaging, package inserts, literature, medication guides, or dosing instructions regarding Taxotere® and/or docetaxel? | ☐ Yes  ☐ No | |
|---|---|---|---|
| **If you answered "yes" to Question A.7.,** please describe the document(s), if you no longer have them. If you have the documents, please produce them: | | | |
| **Description of Document(s)** | | **I have the Document** | **I Do Not Have the Document** |
| | | ☐ | ☐ |

17

| 8. | Were you given any oral instructions from a healthcare provider regarding your use of Taxotere® or docetaxel? | □ Yes  □ No |
|---|---|---|
| | **If you answered "yes" to Question A.8.,** please identify each healthcare provider who provided the oral instructions: | |
| | **Name of Healthcare Provider:** | |

| 9. | Have you ever seen any advertisements (e.g., in magazines or television commercials) for Taxotere® or docetaxel? | □ Yes  □ No |
|---|---|---|
| | **If you answered "yes" to Question A.9.,** please identify the advertisement or commercial, and approximately when you saw the advertisement or commercial: | |

| Type of Advertisement or Commercial | Date of Advertisement or Commercial |
|---|---|
| | |
| | |

| 10. | Have you filed a MedWatch Adverse Event Report to the FDA related to the injury you allege in this lawsuit? | □ Yes  □ No |
|---|---|---|

## B. Treatment History

| 1. | Have you ever received treatment for the injury you allege in this lawsuit? | | | | | □ Yes  □ No |
|---|---|---|---|---|---|---|

**If you answered "yes" to Question B.1.,** please fill out below:

| Question | Yes | No | Name of Healthcare Provider and Facility Name (First, Last) | Date(s) | Did the treatment improve your tearing |
|---|---|---|---|---|---|
| Have you had a probing and irrigation examination? | □ | □ | | | |
| Have you had placement of stents in your lacrimal system? | □ | □ | | | |
| Have you undergone a DCR (dacryocystorhinostomy)? | □ | □ | | | |
| Have you undergone a CDCR (conjunctiveodacryocystorhinostomy)? | □ | □ | | | |
| Have you taken or been prescribed steroids? | □ | □ | | | |

| Have you ever taken or been prescribed eye drops? | ☐ | ☐ | | | |
|---|---|---|---|---|---|
| Other treatment received (specify): _____ | ☐ | ☐ | | | |

### C. Mental and/or Emotional Damages

| 1. | Do you claim that your use of Taxotere® or docetaxel caused or aggravated any psychiatric or psychological condition? | ☐ Yes ☐ No |
|---|---|---|
| 2. | **If you answered "yes" to Question C.1.,** did you seek treatment for the psychiatric or psychological condition? | ☐ Yes ☐ No |
| | **If you answered "yes" to Question C.1.,** please complete the following: | |

| Provider Name (First, Last) | Facility Name and Address | Date | Condition |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

### D. Medical Expenses

| 1. | Do you claim that you incurred medical expenses for the alleged injury that you claim was caused by Taxotere® or docetaxel? | ☐ Yes ☐ No |
|---|---|---|
| | **If you answered "yes" to Question D.1.,** list all of your medical expenses, including amounts billed or paid by insurers and other third-party payors, which are related to any alleged injury you claim was caused by Taxotere® or docetaxel: | |

| Provider (First, M.I., Last) | Date | Expense |
|---|---|---|
| | | |
| | | |
| | | |

19

### E. Out-of-Pocket Expenses

| 1. | Are you making a claim for lost out-of-pocket expenses? | □ Yes  □ No |
|---|---|---|
| | If you answered "yes" to Question E.1., please identify and itemize all out-of-pocket expenses you have incurred: | |

| Expense | Expense Amount |
|---|---|
| | |
| | |
| | |
| | |

## VIII.      RECORD HOLDER IDENTIFICATION

### A. Healthcare Providers

1.      Identify each physician, doctor, or other healthcare provider who has provided cancer related or eye treatment to you for any reason in the period of five (5) years before your first treatment with Taxotere® or docetaxel to present and the reason for consulting the healthcare provider or mental healthcare provider.

**YOU MUST INCLUDE YOUR ONCOLOGIST, RADIOLOGIST, OPHTHALMOLOGIST, OCULOPLASTIC SURGEON, GYNECOLOGIST (IF APPLICABLE), OBSTETRICIAN (IF APPLICABLE), AND PRIMARY CARE PHYSICIAN, ALONG WITH ANY OTHER HEALTHCARE PROVIDERS IDENTIFIED ABOVE**

| Name (First, M.I., Last) | Address | Dates | Reason for Consultation |
|---|---|---|---|
| | | to □ Present | |
| | | to □ Present | |
| | | to □ Present | |
| | | to □ Present | |
| | | to □ Present | |
| | | to □ Present | |
| | | to □ Present | |

| Name (First, M.I., Last) | Address | Dates | Reason for Consultation |
|---|---|---|---|
| | | to ☐ Present | |
| | | to ☐ Present | |

### B. Hospitals, Clinics, and Other Facilities

2.      Identify each hospital, clinic, surgery center, physical therapy or rehabilitation center, or other healthcare facility where you have received inpatient or outpatient treatment (including emergency room treatment) in the period of five (5) years before your first treatment with Taxotere® or docetaxel to present and the reason you received treatment:

**YOU MUST INCLUDE THE LOCATIONS FOR SURGERIES, RADIOLOGY, IMAGING, BIOPSIES, CHEMOTHERAPY, CHILD BIRTH OR GYNECOLOGIC PROCEDURES OR TREATMENT, ALONG WITH ANY OTHER HEALTHCARE FACILITIES**

| Name | Address | Dates | Reason for Treatment |
|---|---|---|---|
| | | to ☐ Present | |
| | | to ☐ Present | |
| | | to ☐ Present | |
| | | to ☐ Present | |
| | | to ☐ Present | |
| | | to ☐ Present | |
| | | to ☐ Present | |

### C. Pharmacies

4.      Identify each pharmacy, drugstore, and/or other supplier (including mail order) where you have had prescriptions filled or from which you have ever received any prescription medication within five (5) years prior to your first treatment with Taxotere® to present:

| Name | Address | Dates | Medications |
|---|---|---|---|
| | | to | |

21

| Name | Address | Dates | Medications |
|------|---------|-------|-------------|
|  |  | ☐ Present |  |
|  |  | to<br>☐ Present |  |
|  |  | to<br>☐ Present |  |
|  |  | to<br>☐ Present |  |

### D. Insurance Carriers

6.     Identify each health insurance carrier which provided you with medical coverage and/or pharmacy benefits for your cancer or the injuries alleged in this lawsuit:

| Carrier | Address | Name of Insured and SSN | Policy Number | Dates of coverage |
|---------|---------|-------------------------|---------------|-------------------|
|  |  |  |  | to<br>☐ Present |
|  |  |  |  | to<br>☐ Present |
|  |  |  |  | to<br>☐ Present |
|  |  |  |  | to<br>☐ Present |
|  |  |  |  | to<br>☐ Present |
|  |  |  |  | to<br>☐ Present |

IX.        DOCUMENT REQUESTS AND AUTHORIZATIONS

*Please state which of the following documents you have in your possession. If you do not have the following documents but believe they might exist in the possession of others, please state who you believe has possession of the documents. Produce all documents in your possession (including writings on paper or in electronic form) and sign authorizations and attach a copy of them to this Fact Sheet.*

| Type of Document(s) | Yes | No | If No, who do you believe may have the document(s)? |
|---|---|---|---|
| Documents you reviewed to prepare your answers to this Plaintiff Fact Sheet. | ☐ | ☐ | |
| Medical records or non-privileged other documents related to the use of Taxotere® or docetaxel. | ☐ | ☐ | |
| Medical records showing proof of injury. | ☐ | ☐ | |
| Medical records or non-privileged other documents related to your treatment for cancer or any ocular disease, condition or symptom referenced in this Fact Sheet. | ☐ | ☐ | |
| Documents reflecting your use of any prescription drug or medication at any time. | ☐ | ☐ | |
| Documents identifying all chemotherapy drugs that you have taken. | ☐ | ☐ | |
| Documents for any workers' compensation, social security or other disability proceeding at any time. | ☐ | ☐ | |
| Instructions, product warnings, package inserts, handouts or other materials that you were provided or obtained in connection with your use of Taxotere® or docetaxel. | ☐ | ☐ | |
| Advertisements or promotions for Taxotere®. | ☐ | ☐ | |
| Articles discussing Taxotere® or docetaxel. | ☐ | ☐ | |
| Any packaging, container, box, or label for Taxotere® or docetaxel that you were provided or obtained in connection with your use of Taxotere® or docetaxel. *Plaintiffs or their counsel must maintain the originals of these items.* | ☐ | ☐ | |
| Non-privileged documents which mention Taxotere® or docetaxel or any alleged health risks related to Taxotere® or docetaxel. | ☐ | ☐ | |
| Communications or correspondence between you and any representative of the Defendants. | ☐ | ☐ | |

| Type of Document(s) | Yes | No | If No, who do you believe may have the document(s)? |
|---|---|---|---|
| Photographs, drawings, slides, videos, recordings, DVDs, or any other media that show your alleged injury or its effect in your life. | ☐ | ☐ | |
| Journals or diaries related to the use of Taxotere® or docetaxel related to your cancer treatment and/or the injuries you allege in this case. . | ☐ | ☐ | |
| Electronically Stored Information ("ESI") sources responsive to Section II.G., Question No. 18. | ☐ | ☐ | |
| Social media or internet posts to or through any site (including, but not limited to, Facebook, TikTok, LinkedIn, Flickr, Google Plus, Windows Live, YouTube, Twitter, Instagram, Pinterest, blogs, and Internet chat rooms/message boards), emails, text messages, and any other electronic communications relating to Taxotere® or docetaxel or any of your claims in this lawsuit. | ☐ | ☐ | |
| If you claim any medical expenses, bills from any physician, hospital, pharmacy or other healthcare providers. | ☐ | ☐ | |
| Records of any other expenses allegedly incurred as a result of your alleged injury. | ☐ | ☐ | |
| If you are suing in a representative capacity, letters testamentary or letters of administration. | ☐ | ☐ | |
| If you are suing in a representative capacity on behalf of a deceased person, decedent's death certificate. | ☐ | ☐ | |
| If you claim that the injury alleged in this lawsuit has in any way altered your physical appearance, Photographs of you that are representative of you before treatment with Taxotere® or docetaxel. | ☐ | ☐ | |
| If you claim that the injury in this lawsuit has in any way altered your physical appearance, Photographs of you that are representative of you after conclusion of treatment with Taxotere® or docetaxel. | ☐ | ☐ | |
| Signed authorizations for medical records related to any cancer treatment identified herein and all pharmacy records from five (5) years before your first treatment with Taxotere® or docetaxel to present in the forms attached hereto. | ☐ | ☐ | |

X.          **PLAINTIFF'S DECLARATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that all of the information provided in connection with this Plaintiff Fact Sheet is true and correct to the best of my knowledge, information, and belief at the present time, and on reasonable and diligent searches conducted pursuant to Section II.G., Question No. 18.

_____          _____
Signature                                                        Date

**LIMITED AUTHORIZATION TO DISCLOSE HEALTH INFORMATION**
**Pursuant to the Health Insurance Portability and Accountability Act "HIPAA" of 4/14/03**
**(Excluding Psychiatric, Psychological, and Mental Health Treatment Notes/Records)**

TO:
Patient Name:
DOB:
SSN:

       I, _____ , hereby authorize you to release and furnish to: <u>Shook Hardy & Bacon LLP, Tucker Ellis LLP, Ulmer & Berne LLP, Greenberg Traurig LLP, Arnold & Porter Kaye Scholer LLP, Williams & Connolly LLP, Chaffe McCall LLP, Hinshaw & Culbertson LLP, Kirkland & Ellis LLP and/or their duly assigned agents,</u> copies of the following records and/or information **<u>from the time period of five (5) years prior to Date of Treatment [ _____ ] to the present:</u>**

\* All medical records, including inpatient, outpatient, and emergency room treatment, all clinical charts, reports, documents,
   correspondence, test results, statements, questionnaires/histories, office and doctor's handwritten notes, and records received by other
   physicians. Said medical records shall include all information regarding AIDS and HIV status.
\* All autopsy, laboratory, histology, cytology, pathology, radiology, CT Scan, MRI, echocardiogram and cardiac catheterization reports.
\* All radiology films, mammograms, myelograms, CT scans, photographs, bone scans,
   pathology/cytology/histology/autopsy/immunohistochemistry specimens, cardiac catheterization videos/CDs/films/reels, and
   echocardiogram videos.
\* All pharmacy/prescription records including NDC numbers and drug information handouts/monographs.
\* All billing records including all statements, itemized bills, and insurance records.
**\*\*Notwithstanding the broad scope of the above disclosure requests, the undersigned does not authorize the disclosure of notes or records pertaining to psychiatric, psychological, or mental health treatment or diagnosis as such terms are defined by HIPAA, 45 CFR §164.501**.

1. To my medical provider: **this authorization is being forwarded by, or on behalf of, attorneys for the defendants for the purpose of litigation. You are not authorized to discuss any aspect of the above-named person's medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on his or her medical or physical condition, unless you receive an additional authorization permitting such discussion. Subject to all applicable legal objections, this restriction does not apply to discussing my medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on my medical or physical condition at a deposition or trial.**

2. I understand that the information in my health record may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV).

3. I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the health information management department. I understand the revocation will not apply to information that has already been released in response to this authorization. I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy. Unless otherwise revoked, this authorization will expire in one year.

4. I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I need not sign his form in order to assure treatment. I understand that I may inspect or copy the information to be used or disclosed as provided in CFR 164.524. I understand that any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules. If I have questions about disclosure of my health information, I can contact the releaser indicated above.

5. A notarized signature is not required. CFR 164.508. A copy of this authorization may be used in place of an original.

Print Name:_____ (plaintiff/representative)


Signature: _____ Date

4096" = "1" "7977065 v3" ""

## LIMITED AUTHORIZATION TO DISCLOSE EMPLOYMENT
## RECORDS AND INFORMATION (HIPAA COMPLIANT
## AUTHORIZATION FORM PURSUANT TO 45 CFR 164.508)

TO: _____

Name of Employer

_____

Address, City State and Zip Code

RE:    Employee Name: _____ AKA: _____

Date of Birth: _____ Social Security Number: _____

Address: _____

I authorize the limited disclosure of my employment records including medical information protected by HIPAA, 45 CFR 164.508, for the purpose of review and evaluation in connection with a legal claim.

**This authorization only authorizes release of records and/or information from the time period of five (5) years prior to the date on which this authorization is signed.** I expressly request that all entities identified above disclose full and complete records from the time period of five (5) years prior to the date on which this authorization is signed, including the following:

This will authorize you to furnish copies of all applications for employment; resumes; records of all positions held; job descriptions of positions held; wage and income statements and/or compensation records; wage increases and decreases; evaluations, reviews and job performance summaries; W-2s; employee health files, and correspondence and memoranda regarding the undersigned.

I authorize you to release the information to:

_____

Name (Records Requestor)

_____

Street Address                        City                     State and Zip Code

I intend that this authorization shall be continuing in nature. If information responsive to this authorization is created, learned or discovered at any time in the future, either by you or another party, you must produce such information to the Records Requestor at that time.

I acknowledge the right to revoke this authorization by writing to you at the above referenced address. However, / understand that any actions already taken in reliance on this authorization cannot be reversed, and my revocation will not affect those actions. Any facsimile, copy or photocopy of the authorization shall authorize you to release the records herein.

_____

Signature of Employee or Personal Representative    Date    Name of Employee or Personal Representative

_____

Description of Personal Representative's Authority to Sign for Employee (attach documents that show authority)

# LIMITED AUTHORIZATION FOR
# RELEASE OF WORKERS'
# COMPENSATION RECORDS

T o:

_____

Name

_____

Address

_____

City, State and Zip Code

This will authorize you to furnish copies of any and all workers' compensation records of any sort **for any workers' compensation claims filed within the last ten (10) years**, including, but not limited to, statements, applications, disclosures, correspondence, notes, settlements, agreements, contracts or other documents, concerning:

_____

*Name of Claimant*

whose date of birth is _____ and whose social security number is _____

You are authorized to release the above records to the following representatives of defendants in the above-entitled matter, who have agreed to pay reasonable charges made by you to supply copies of such records.

_____

**Name of Representative**

Records Requestor

**Representative Capacity (e.g., attorney, records requestor, agent, etc.)**

_____

**Street Address**

_____

**City, State and Zip Code**

This authorization only authorizes release of documents and records from the period of ten (10) years prior to the date on which this authorization is signed. This authorization does not authorize you to disclose anything other than documents and records to anyone.

4096" = "1" "7977065 v3" ""

This authorization shall be considered as continuing in nature and is to be given full force and effect to release information of any of the foregoing learned or determined after the date hereof. It is expressly understood by the undersigned and you are authorized to accept a copy or photocopy of this authorization with the same validity as through the original had been presented to you.

Date: _____        _____
                                     Claimant Signature
                                     *[NAME]*


Date: _____        _____
                                     Witness Signature

## LIMITED AUTHORIZATION FOR RELEASE OF
## <u>DISABILITY CLAIMS RECORDS</u>

To:

_____
Name

_____
Address

_____
City, State and Zip Code

This will authorize you to furnish copies of any and all records of disability claims of any sort **for any disability claim(s) filed within the last ten (10) years**, including, but not limited to, statements, applications, disclosures, correspondence, notes, settlements, agreements, contracts or other documents, concerning:

_____
*Name of Claimant*

whose date of birth is _____ and whose social security number is _____

You are authorized to release the above records to the following representatives of defendants in the above-entitled matter, who have agreed to pay reasonable charges made by you to supply copies of such records.

You are authorized to release the above records to the following representatives of defendants in the above-entitled matter, who have agreed to pay reasonable charges made by you to supply copies of such records.

_____
**Name of Representative**

Records Requestor
_____
**Representative Capacity (e.g., attorney, records requestor, agent, etc.)**

_____
**Street Address**

_____
**City, State and Zip Code**

This authorization only authorizes release of documents and records from the period of ten (10) years prior to the date on which this authorization is signed. This authorization does not authorize you to disclose anything other than documents and records to anyone.

Date: _____

_____
Claimant Signature
*[NAME]*

Date: _____

_____
Witness Signature

# FOR RELEASE OF
## <u>HEALTH INSURANCE RECORDS</u>

To:

_____
Name

_____
Address

_____
City, State and Zip Code

This will authorize you to furnish copies of any and all insurance claims applications and benefits, and all medical, health, hospital, physicians, nursing or allied health professional reports, records or notes, invoices and bills, in your possession that pertain to the named insured identified below. **This authorization only authorizes release of Health Insurance records and/or information from the time period of ten (10) years prior to the date on which this authorization is signed.**

_____
*Name of Claimant*

whose date of birth is _____ and whose social security number is _____

You are authorized to release the above records to the following representatives of defendants in the above-entitled matter, who have agreed to pay reasonable charges made by you to supply copies of such records.

_____
**Name of Representative**

Records Requestor
_____
**Representative Capacity (e.g., attorney, records requestor, agent, etc.)**

_____
**Street Address**

_____
**City, State and Zip Code**

4096" = "1" "7977065 v3" ""

This authorization only authorizes release of documents and records from the period of ten (10) years prior to the date on which this authorization is signed. This authorization does not authorize you to disclose anything other than documents and records to anyone.

This authorization is not valid unless the record requestor named above has executed the acknowledgement at the bottom of this authorization.

This authorization shall be considered as continuing in nature and is to be given full force and effect to release information of any of the foregoing learned or determined after the date hereof. It is expressly understood by the undersigned and you are authorized to accept a copy or photocopy of this authorization with the same validity as through the original had been presented to you.

Date: _____          _____
                                              Claimant Signature
                                              *[NAME]*

Date: _____          _____
                                              Witness Signature

**LIMITED AUTHORIZATION TO DISCLOSE PSYCHIATRIC,**
**PSYCHOLOGICAL AND/OR MENTAL HEALTH TREATMENT NOTES/RECORDS**
(Pursuant to the Health Insurance Portability and Accountability Act "HIPAA" of 4/14/03)

TO:
Patient Name:
DOB:
SSN:

I, _____ , hereby authorize you to release and furnish to: Shook Hardy & Bacon LLP, Tucker Ellis LLP, Ulmer & Berne LLP, Greenberg Traurig LLP, Williams & Connolly LLP, Chaffe McCall LLP, Hinshaw & Culberston LLP, Kirkland & Ellis LLP and/or their duly assigned agents, copies of the following records and/or information **from the time period of ten (10) years prior to the date on which the authorization is signed:**

- All "psychotherapy notes", as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR §164.501. Under HIPAA, the term "psychotherapy notes" means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversations during a private counseling session or a group, joint or family counseling session and that are separated from the rest of the individual's record. This authorization does not authorize ex parte communication concerning same.

1.  To my medical and/or mental health provider: **this authorization is being forwarded by, or on behalf of, attorneys for the defendants for the purpose of litigation. You are not authorized to discuss any aspect of the above-named person's medical history, mental health history, care, treatment, diagnosis, prognosis, information revealed by or in the medical or mental health records, or any other matter bearing on his or her medical, psychological, or physical condition, unless you receive an additional authorization permitting such discussion. Subject to all applicable legal objections, this restriction does not apply to discussing my medical history, mental health history, care, treatment, diagnosis, prognosis, information revealed by or in the medical or mental health records, or any other matter bearing on my medical, psychological, or physical condition at a deposition or trial.**

2.  I understand that the information in my health record may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV). It may also include information about behavioral or mental health services, and treatment for alcohol and drug abuse.

3.  I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the health information management department. I understand the revocation will not apply to information that has already been released in response to this authorization. I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy. Unless otherwise revoked, this authorization will expire in one year.

4.  I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I need not sign his form in order to assure treatment. I understand I may inspect or copy the information to be used or disclosed as provided in CFR 164.524. I understand that any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules. If I have questions about disclosure of my health information, I can contact the releaser indicated above.

5.  A notarized signature is not required. CFR 164.508. A copy of this authorization may be used in place of an original.

Print Name: _____ (plaintiff/representative)

Signature: _____ Date _____

4096" = "1" "7977065 v3" ""

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) EYE INJURY PRODUCTS LIABILITY LITIGATION | MDL NO. 3023 |
| | SECTION "H" (5) |
| | HON. JANE T. MILAZZO |
| This Document Relates to: | |
| *All Cases* | |

### DEFENDANT FACT SHEET

### PRODUCT IDENTIFICATION

Within seventy-five (75) days of receiving a substantially completed Plaintiff Fact Sheet ("PFS"), the relevant[1] Defendant or Defendants (collectively referred to as "Defendants") must complete and serve this Defendant Fact Sheet ("DFS") and identify or provide DOCUMENTS and/or data responsive to the questions set forth below for each such Plaintiff. Defendants must supplement their responses to the extent that additional information is provided by Plaintiff in a supplemental PFS, within sixty (60) days of receiving the supplemental information. In the event the DFS does not provide YOU with enough space to complete YOUR responses or answers, please attach additional sheets if necessary. Please identify any DOCUMENTS that YOU are producing as responsive to a question or request by bates number.

### DEFINITIONS AND INSTRUCTIONS

As used herein, "YOU," "YOUR," or "YOURS" means the responding DEFENDANTS.

"DEFENDANTS" or "DEFENDANT" shall mean and refer to those companies involved in the development, manufacture, and distribution of the drugs known as Taxotere (Docetaxel) named in the operative Master Long Form Complaint against Sanofi US Services Inc. and Sanofi-Aventis U.S. LLC and/or Sandoz Inc., Accord Healthcare, Inc., Hospira Worldwide, LLC f/k/a Hospira Worldwide, Inc., Hospira, Inc., Sun Pharma Global FZE, Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Laboratories Ltd., Pfizer Inc., Actavis LLC f/k/a Actavis Inc., Actavis Pharma, Inc., Sagent Pharmaceuticals, Inc., Eagle Pharmaceuticals, Inc., and Teikoku Pharma USA, Inc. The relevant DEFENDANT or DEFENDANTS shall each answer each document request and question that not only calls for YOUR knowledge, but also for all knowledge that is available to YOU by reasonable inquiry, including inquiry of YOUR "officers," "directors," "agents," "employees," and attorneys.

---

[1] As set forth in Case Management Order No. 14 ("Service of Plaintiff Fact Sheet and Defendant Fact Sheets"), Defendants are not required to submit a DFS absent the production of product identification evidence pursuant to the Product Identification Order. *See id.* ¶ 12.

As used herein, the phrase "HEALTHCARE PROVIDER" means: any physician or other individual healthcare provider, health care facility, clinic, hospital or hospital pharmacy identified by full name and address in PFS Section IV who administered, prescribed, and/or dispensed Taxotere (Docetaxel) to the Plaintiff.

"REMUNERATION" means anything of value, directly or indirectly, overtly or covertly, in cash or in kind, including but not limited to monetary payment, compensation, incentives, preceptorship fees, gifts, entertainment, sports and/or concert tickets, speaker fees, grants, SAMPLES, reimbursement assistance, beneficiary inducements, wellness programs, patience assistance programs, transportation and/or lodging assistance, adherence to treatment regimen programs, incentives or inducements to remain in network, navigator/care coordination programs, end of life and/or palliative care programs, third party payments of premiums, or any other inducements or programs.

As used herein, the term "DOCUMENT" shall, consistent with Federal Rule of Civil Procedure 34(a)(1)(A), refer to any "designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form."

If YOU are aware that any DOCUMENT that was, or might have been, responsive to any sections of this DFS which concern or relate to Plaintiff or Plaintiff's Named Facilities was destroyed, erased, surrendered or otherwise removed from YOUR possession, custody or control, at any time, provide, to the maximum extent possible, the following information: (a) the nature of the DOCUMENT (e.g., letter, memorandum, contract, etc.,) and a description of its subject matter; (b) the author or sender of the DOCUMENT; (c) the recipient(s) of the DOCUMENT; (d) the date that the DOCUMENT was authored, sent and received; (e) the circumstances surrounding the removal of the DOCUMENT from YOUR custody, possession or control; and (f) the identity of the person(s) having knowledge of such removal from YOUR custody, possession or control.

As used herein, "KEY OPINION LEADER" or "THOUGHT LEADER" shall mean and refer to physicians, often academic researchers, who are believed by DEFENDANTS to be effective at transmitting messages to their peers and others in the medical community. This term shall mean and refer to any doctors or medical professionals hired by, consulted with, or retained by DEFENDANTS to, amongst other things, consult, give lectures, respond to media inquiries, conduct clinical trials, write articles or abstracts, sign their names as authors to articles or abstracts written by others, sit on advisory boards and make presentations on their behalf at regulatory meetings or hearings.

The phrase "SAMPLES" refers to any medication or unit of a prescription drug not intended to be sold, which is given to promote the drug's sales. This includes any vouchers or coupons that provide for the HEALTHCARE PROVIDERS or patients access to the medication for a specified period of time.

3

"PATIENT ASSISTANCE PROGRAM" means programs created by drug companies, such as Sanofi, to offer free or low cost drugs to individuals who are unable to pay for their medication. These Programs may also be called indigent drug programs, charitable drug programs or medication assistance programs.

The phrase "SALES REPRESENTATIVE" means any person presently or formerly engaged or employed by YOU whose job duties include calling on physicians or other health care professionals, healthcare facilities, hospitals, and/or physician practice groups; promoting drugs manufactured or licensed by YOU to physicians or other HEALTH CARE PROVIDERS; and/or distributing drug SAMPLES to physicians or other HEALTH CARE PROVIDERS. "SALES REPRESENTATIVE" also includes those who occupy positions titled "Professional Sales Representative," "Sales Professional," "Specialty Sales Representative," "Senior Sales Representative," "Senior Health Care Representative," "Professional Representative," "Health Care Representative," "Institutional" or "Managed Care" sales representative, "Oncology Sales Representative," "Medical Service Representative," and "Medical Sales Representative" or any other titles used by DEFENDANTS and any of their divisions SALES REPRESENTATIVE also includes any contract employees or SALES REPRESENTATIVES from other companies involved in the promotion or co-promotion of Taxotere (Docetaxel) .

The phrase "SALES MANAGER" means any person presently or formerly engaged or employed by YOU whose job duties include managing SALES REPRESENTATIVES and/or the promotion or marketing of pharmaceutical products in a specific geographic region. "SALES MANAGER" includes those who occupy positions titled "District Sales Manager," "Senior Regional Sales Manager," "Regional Sales Manager," "Area Business Manager", "Business Manager," or any other titles YOU use or have used in the past for managers involved in the promotion or marketing of Taxotere (Docetaxel).

The phrase "MEDICAL SCIENCE LIAISON(S)" means any person presently or formerly engaged or employed by YOU for the purpose of sales support and direct field communication with physicians or other HEALTH CARE PROVIDERS about medical and science information related to Taxotere (Docetaxel), and opinion leader management.  This includes employees with the titles of "Medical Science Liaison (MSL)," "Clinical Education Consultant (CEC)" or any other titles YOU use or have used in the past for these employees.

The phrase "MARKETING ORGANIZATION REPRESENTATIVE" means any person presently or formerly engaged or employed by YOU for the purpose of generating interest in Taxotere (Docetaxel) by creating and implementing a marketing campaign(s) to reach physicians or other HEALTHCARE PROVIDERS. This includes employees with the title of "Marketing Representative" or any other titles YOU use or have used in the past for these employees.

The phrase "CALL NOTES" means any and all writings, notations, electronically stored information, memoranda, DOCUMENTS, emails, database entries and reports or records, internal communications and any other information reflecting any contact with HEALTHCARE PROVIDERS, and/or information about or referring to HEALTHCARE PROVIDERS related to Taxotere (Docetaxel), oncology, or the treatment of cancer and chemotherapy.

The phrase "TARGETING INFORMATION" means any information YOU use to identify a particular person, group of people, type of health care provider or demographic within a larger audience regarding the promotion of Taxotere (Docetaxel). This includes documentation, including electronically stored information, designating particular campaigns, PROMOTIONAL MATERIAL and/or other promotional efforts directed toward particular types or specialties of healthcare providers (e.g., oncologists) and/or specifically identified healthcare providers.

## I. CASE INFORMATION

This DFS pertains to the following case:

Case Caption:_____

Civil Action No._____

Court in which action was originally filed:_____

Date this DFS was completed:_____

## II. SALE OF TAXOTERE (DOCETAXEL) TO DISPENSER (HOSPITAL/PHARMACY) DIRECTLY AND/OR THROUGH GROUP PURCHASING ORGANIZATIONS

A. Did YOU sell, distribute, deliver or otherwise provide Taxotere (Docetaxel) to, any HEALTHCARE PROVIDER, either directly or pursuant to a Group Purchasing Organization ("GPO"), identified by the Plaintiff in Sections IV.47 and IV.48 of the PFS, during the time period of twenty-four (24) months preceding Plaintiff's first administration of Taxotere (Docetaxel) through the Plaintiff's last administration of Taxotere (Docetaxel)?

Yes _____    No _____

B. If YOUR answer is "Yes" to Question A. above, please provide a list of all deliveries or shipments of Taxotere (Docetaxel) sold, distributed or otherwise provided to each of the HEALTHCARE PROVIDERS, as identified by the Plaintiff in Sections IV.47 and IV.48 of the PFS, for the time period spanning from twenty-four (24) months prior to Plaintiff's first administration of Taxotere (Docetaxel) through Plaintiff's last administration of Taxotere (Docetaxel). Please include the name of each HEALTHCARE PROVIDER, the date of shipment/distribution of Taxotere (Docetaxel), and the amount of Taxotere (Docetaxel) distributed on said date.

| Name of Healthcare Provider | Date of Shipment Distribution | Amount of Taxotere Distributed |
|---|---|---|

| | | |
|---|---|---|
| | | |
| | | |
| | | |

C. Please provide all DOCUMENTS reflecting sale or purchase agreements regarding Taxotere (Docetaxel) between DEFENDANTS and the HEALTHCARE PROVIDERS identified by Plaintiff in Section Sections IV.47 and IV.48 of the PFS in effect during the time period spanning from twenty-four (24) months prior to plaintiff's first administration of Taxotere (Docetaxel) through Plaintiff's last administration of Taxotere (Docetaxel).

D. Please provide all DOCUMENTS, including product labels, patient information packets, order forms, purchase orders, billing records, invoices, and other DOCUMENTS related to the shipments of Taxotere (Docetaxel) shipped to the HEALTHCARE PROVIDERS identified by Plaintiff in Sections IV.47 and IV.48 of the PFS for the time period spanning from twenty-four (24) months prior to Plaintiff's first administration of Taxotere (Docetaxel) through to Plaintiff's last administration of Taxotere (Docetaxel), and associate each label with the code numbers to which they are applicable. With regard to product labels, identification of the labels that applied to applicable lot numbers or dates is acceptable.

## III. COMMUNICATIONS AND CONTACTS WITH PLAINTIFF'S HEALTHCARE PROVIDERS

A. For each DEFENDANT'S SALES REPRESENTATIVES, MARKETING ORGANIZATION REPRESENTATIVES, MEDICAL SCIENCE LIAISONS, and/or any other detail persons who came in contact with any of Plaintiff's HEALTHCARE PROVIDER(S) in connection with Taxotere (Docetaxel) during the timeframe for which such records are available, please produce the following:

1. His/her complete CALL NOTES for each such contact that relates to (a) Taxotere (Docetaxel); and/or (b) ocular injuries; and/or (c) epiphora/excessive tearing; and/or (d) "lacrimal duct obstruction."

2. Produce all emails or other written correspondence with the HEALTHCARE PROVIDER(S) that relates to (a) Taxotere (Docetaxel); and/or (b) ocular injuries; and/or (c) epiphora and/or excessive tearing; and/or (d) "lacrimal duct obstruction."

3. Produce any and all TARGETING INFORMATION related to the HEALTHCARE PROVIDER(S) identified by Plaintiff in Sections V.13 and V.14 of the PFS.

B. For the HEALTHCARE PROVIDERS identified by Plaintiff in Sections V.13 and V.14 of the PFS, please provide the following information related to SAMPLES of Taxotere (Docetaxel):

1. The date(s) on which such SAMPLES of Taxotere (Docetaxel) were provided;

2. The date(s) on which the Taxotere (Docetaxel) was provided through a PATIENT ASSISTANCE PROGRAM;

3. The amount, dosage, and lot numbers of such SAMPLES and/or Taxotere (Docetaxel) provided through a PATIENT ASSISTANCE PROGRAM**;**

4. The name(s) of the DEFENDANT representative(s) and/or department who provided such SAMPLES of Taxotere (Docetaxel);

5. The name(s) of the DEFENDANT representative(s) and/or department who provided Taxotere (Docetaxel) through a PATIENT ASSISTANCE PROGRAM.

| HEALTHCARE PROVIDER | Date(s) Shipped and/or Provided | Amount and Dosage | Lot Number | Representative Who Provided |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

## IV. CONSULTING WITH PLAINTIFF'S HEALTHCARE PROVIDER

For each HEALTHCARE PROVIDER identified in Plaintiff's PFS, please answer the following:

A. If the HEALTHCARE PROVIDER has been consulted, retained, or compensated by Defendants as a "KEY OPINION LEADER," "THOUGHT LEADER," member of a "speaker's bureau," "clinical investigator," "consultant," advisory board member or in a similar capacity or otherwise has or had a financial relationship with or has been provided REMUNERATION by DEFENDANTS, please state the following for each:

1. Identify the HEALTHCARE PROVIDER.

2. Identify the date(s) that the HEALTHCARE PROVIDER was consulted, retained, or compensated.

3. State the nature of the affiliation.

4. State the amount of REMUNERATION provided to the HEALTHCARE PROVIDER.

| HEALTHCARE PROVIDER | Date(s) Consulted, Retained or Compensated | Nature of Affiliation | REMUNERATION |
|---|---|---|---|
| | | | |

| | | | |
|---|---|---|---|
| | | | |
| | | | |

5. Please identify and produce any and all consulting agreements/contracts and/or retainer agreements/contracts entered into by DEFENDANTS with the HEALTHCARE PROVIDERS identified in Sections IV.47 and IV.48 of the PFS.

## V.  PLAINTIFF'S HEALTHCARE PROVIDER PRACTICES

A. Provide all chemotherapy related prescriber-level data designed to track prescribing or treating practices that YOU obtained on Plaintiff's HEALTHCARE PROVIDERS identified in Sections IV.47 and IV.48 of the PFS.

B. Did the Plaintiff's HEALTHCARE PROVIDER ever report any adverse events to DEFENDANTS as they pertain to Taxotere (Docetaxel)?

_____ Yes  _____ No

If yes, provide all DOCUMENTS related to the adverse event report/MedWatch form.

## **CERTIFICATION**

I am authorized by _____ [name of other DEFENDANTS] to execute this certification on each corporation's behalf. The foregoing answers were prepared with the assistance of a number of individuals, including counsel for DEFENDANTS, upon whose advice and information I relied. I declare under penalty of perjury subject to 28 U.S.C. § 1746 that all of the information provided in this Defendant Fact Sheet is true and correct to the best of my knowledge and that I have supplied all requested DOCUMENTS to the extent that such DOCUMENTS are in my possession, custody and control (including the custody and control of my lawyers).

_____   _____   _____
Signature                           Print Name                      Date

# ADDENDUM D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: TAXOTERE (DOCETAXEL) EYE INJURY PRODUCTS LIABILITY LITIGATION | MDL NO. 3023 |
| | SECTION "H" (5) |
| | HON. JANE T. MILAZZO |
| This Document Relates to: | |
| *All Cases* | |

**CASE MANAGEMENT ORDER NO. 14**
**PFS AND DFS IMPLEMENTATION AND SERVICE ORDER**

This Order governs the form and schedule for service of Plaintiff Fact Sheets ("PFS"), *see* Pretrial Order No. 4, and Defendant Fact Sheets ("DFS"), *see* Pretrial Order No. 4, in cases that were: (1) transferred to this Court by the Judicial Panel on Multidistrict Litigation, pursuant to its Order of February 1, 2022; (2) subsequently transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to Rule 7.4 of the Rules of Procedure of that Panel; and (3) originally filed in this Court or transferred or removed to this Court.

1.     The Parties may agree to extensions of the below deadlines for the completion and service of PFSs, executed Authorizations, and DFSs.  If the Parties cannot agree on an extension of time after meeting and conferring, the requesting Party may apply to the Court for such relief upon a showing of good cause.

**PLAINTIFF FACT SHEETS**:

2.     Plaintiffs shall each complete and serve upon Defendants a PFS and Authorizations for Release of Records of all healthcare providers and other sources of information and records (*e.g.* pharmacies, employers, etc.) using MDL Centrality in the form set forth in PFS.  Any Plaintiff asserting a claim for lost wages must complete an authorization for release of employment records and any Plaintiff asserting a claim for mental and/or emotional injuries or damages must complete an authorization for release of mental health records.  Those Plaintiffs shall also produce with their PFS all documents responsive to the document requests contained therein.

3.    A complete and verified[1] PFS, signed and dated Authorizations, and all responsive documents in Plaintiff's possession shall be submitted to the Defendants using MDL Centrality on the following schedule: (a) within seventy-five (75) days from the date of this Order for any Plaintiff whose case has been docketed in this MDL on or before the date of this Order; (b) within seventy-five (75) days of the date the case is docketed in this MDL for any Plaintiff whose case is docketed in the MDL after the date of this Order. The Authorizations are set forth in PFS Attachment A.

4.    Plaintiffs who fail to provide a complete and verified PFS, signed and dated Authorizations, and all responsive documents requested in the PFS within the time periods set forth herein shall be given notice of deficiency[2] via MDL Centrality within forty-five (45) days of services of the PFS,[3] and shall be given thirty (30) additional days from the date the notice of deficiency is submitted through MDL Centrality to cure such deficiency. In any such instance where thirty (30) days have passed, Defendants may serve a Notice of Non-Compliance upon Plaintiffs' Liaison Counsel. The Notice of Non-Compliance shall be in spreadsheet format and shall include columns for the last name of the Plaintiff, the first name of the Plaintiff, the case number, the date the complaint was filed, the name and contact information of the Plaintiff's counsel, the Plaintiff's MDL Centrality number, and a description of the alleged discovery non-compliance.

5.    Within thirty (30) days of being identified on a Notice of Non-Compliance, each Plaintiff must serve Defendants with the complete and verified disclosures. Each Plaintiff shall at the same time confirm compliance by email to the counsel identified in attached Exhibit A and Plaintiffs'

---

[1] Plaintiffs may verify a PFS by their handwritten signature or through the use of an electronic signature using an application such as DocuSign, and all subsequent amendments or supplements to the PFS may be verified by signature of the plaintiff's attorney.

[2] Each party shall bring any and all deficiencies to the attention of the opposing counsel in one letter, and shall be barred from raising any additional deficiencies that were apparent at that time, absent good cause shown, except those arising from the response to/cure of the deficiency.

[3] Service of a completed Fact Sheet and Records Authorizations shall be deemed to occur when the submitting party has performed each of the steps required by the MDL Centrality System to execute the online submission of the materials, and the submitting party has received confirmation on screen that the materials have been successfully submitted, and the receiving party has received notification of the submission via the MDL Centrality System.

Liaison Counsel. During this thirty (30) day period, the parties shall meet and confer through Plaintiffs' Liaison Counsel, or their designee, with Defendants' Liaison Counsel, or their designee.

6.     Any Plaintiff who remains non-compliant with Paragraph 4 above, may be placed on the call docket by Defendants subject to possible dismissal with prejudice or other appropriate relief. The call docket will be taken up after the status conferences, which date will be published by the Court on the Court's website and through ECF notification. No later than fourteen days before the call docket, Defense Liaison Counsel shall file the list of the cases by name and number subject to dismissal under this order. There shall be no briefing by any party. At the hearing, Liaison Counsel or their designees will advise the Court of any cases that may be removed from the list by agreement. At the call docket, each party will have the opportunity to address the Court, in person or via telephone, or through Liaison Counsel or its designee, regarding the matter. Any Plaintiff who fails to appear at the call docket and establish good cause for the failure to make discovery disclosures as required herein, may have his or her case dismissed with prejudice, or be subject to any other such relief as the Court may order.

7.     If Plaintiff answers "yes" to VII. A. 5. and has received a diagnosis by a healthcare provider, medical records of such diagnosis shall be provided with the complete and verified PFS. If Plaintiff answers "yes" to VII. B. 1 and has received treatment by a healthcare provider for the alleged injury, medical records of the treatment shall be provided with the complete and verified PFS.[4]

8.     Authorizations shall be dated and signed. Defendants may use the Authorizations for all healthcare providers and other sources of information and records (e.g., pharmacies, employers, etc.) identified in the PFS, without further notice to Plaintiff's counsel. Within twenty (20) days of receipt of records by Defendants, upon request, Defendants shall make said records received pursuant to the Authorizations available to Plaintiffs' Liaison Counsel and Plaintiff's counsel by

---

[4] The Parties will continue meeting and conferring regarding any proposed medical diagnosis order for Plaintiffs who have not been diagnosed of their alleged injury.

uploading a copy to MDL Centrality at a reasonable cost to the requesting Plaintiff of electronically reproducing records received by Defendants.

8.     If Defendants wish to use an Authorization to obtain medical records from a source that is not identified in the PFS, Defendants shall provide the Plaintiff's counsel for that particular case with fourteen (14) days' notice of the intent to use an authorization to obtain records from that source. If Plaintiff's counsel fails to object to the request within fourteen (14) days, Defendants may use the authorization to request the medical records from the source identified in the notice. If Plaintiff's counsel objects to the use of the authorization to obtain records from the source identified in the notice within said fourteen (14) day period, Plaintiff's counsel and Defendants' counsel shall meet and confer in an attempt to resolve the objection. If counsel are unable to resolve the objection, Plaintiff shall file a motion for a protective order within thirty (30) days of the Defendants' notice of intent to use the authorization.

9.     Plaintiffs' responses to the PFS shall be treated as answers to interrogatories under Fed. R. Civ. P. 33 and responses to requests for production of documents under Fed. R. Civ. P. 34 and shall be supplemented in accordance with Fed. R. Civ. P. 26.

10.     Defendants' use of the PFS and Authorizations shall be without prejudice to Defendants' right to serve additional discovery, if authorized in further Orders of the Court.

**DEFENDANT FACT SHEETS**:

11.     No defendant is required to complete a DFS absent evidence of Product Identification information ("PID") that satisfies the requirements of the PID pretrial order.

12.     No defendant is required to submit a DFS until a substantially complete PFS has been served. Solely for the purpose of triggering the DFS submission deadline, the term "substantially complete" in this Order and in the DFS is defined as service on Defendants of the PFS with Plaintiff's signed verification and the documentation required by PFS Sections III., i.e., prescription and/or pharmacy records demonstrating use of Taxotere (or docetaxel).

13.     Because of the naming of multiple defendants in individual cases and questions of product identification, the following limitations shall apply to which Defendant(s) serve DFSs, in the form set forth in DFS, in which cases:

    a.     ***Pre-March 9, 2011 – Sanofi Defendants only:***

        i.     If the first treatment date and last treatment date identified by a Plaintiff in PFS Section IV. is March 8, 2011 or earlier and the PFS is submitted with the documentation required by PFS Section III. 1. (records demonstrating use of Taxotere®), only Defendants sanofi-aventis U.S. LLC and Sanofi US Services Inc. (collectively "Sanofi Defendants") must complete and serve a corresponding DFS. Sanofi Defendants need not complete and serve a DFS in any case where it has not been properly served either with process and summons consistent with the Federal Rules of Civil Procedure or by service through procedures for Streamlined Service by Orders in this MDL.

    b.     ***Post-March 8, 2011 with Product Identification – That Defendant Only:***

        i.     If the first treatment date and last treatment date the Plaintiff identified in PFS Section IV. is March 9, 2011 or later; and the Plaintiff has provided the information request by PFS Section III.2 and provided evidence of product identification, Defendant(s) must complete and serve a DFS.  Only the Defendant(s) whose product the Plaintiff identified in PFS Section III.2 and for whom documentation of product identification was provided must complete and serve a DFS. No Defendant must complete and serve a DFS in any case where it has not been properly served either with process and summons consistent with the Federal Rules of Civil Procedure or by service through procedures for streamlined service as approved by Orders in this MDL.

    c.     ***Post-March 8, 2011 without Product Identification***

        i.     Defendants subject to the provisions of this section need not complete any DFS unless and until the product used in the Plaintiff's care is identified by

supplementation of PFS Section III. 2. and documentation of product identification has been provided. However, once the above-stated condition is met, Defendant must complete and submit a DFS in accordance with the time period and requirements set forth herein.

14. Subject to the limitations set forth in Paragraph 13, Defendants shall submit a DFS to the Plaintiff using MDL Centrality within seventy-five (75) days of the date the Defendants receive a substantially complete PFS from a Plaintiff.

15. If Defendants fail to provide a complete and verified DFS within the time period set forth hereinabove, Defendants shall be given notice of the deficiency[5] via MDL Centrality within forty-five (45) days of service of the DFS and shall be given thirty (30) additional days from the date the notice of deficiency is received through MDL Centrality to cure such deficiency. In any such instance where thirty (30) days have passed, Plaintiff may serve a Notice of Non-Compliance upon Defendants' Liaison Counsel. No briefing is required. Any Defendant who remains deficient will be subject to an Order to Show Cause, which will require Defendant to show cause why its defenses should not be stricken in that case. Failure to timely comply may result in a dismissal of defenses. The Notice of Non-Compliance and show cause procedure to be employed will be the same as set forth above for Plaintiffs in Paragraphs 4-6.

16. Defendants' responses on a DFS shall be treated as answers to interrogatories under Fed. R. Civ. P. 33 and responses to requests for production of documents under Fed. R. Civ. P. 34 and shall be supplemented in accordance with Fed. R. Civ. P. 26.

17. It will be the responsibility of the counsel for the particular plaintiffs or defendants involved, as well as in coordination with Liaison Counsel for plaintiffs and defendants, to attempt to cure deficiencies and get a PFS/DFS served prior to raising the issue with the Court.

---

[5] Each party shall bring any and all deficiencies to the attention of the opposing counsel in one letter and shall be barred from raising any additional deficiencies that were apparent at that time, absent good cause shown, except those arising from the response to/cure of the deficiency.

18.    Plaintiffs' use of the DFS shall be without prejudice to the right of the Plaintiffs in a specific case to serve additional discovery, if authorized in further Orders of the Court.

**IT IS SO ORDERED.**

New Orleans, Louisiana this 1st day of May, 2023.


_____
**HONORABLE JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT A

Brenda Sweet
Connor Doughty
Giuseppe W. Pappalardo
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
T:  (216) 592-5000
F:  (216) 592-5009
E: brenda.sweet@tuckerellis.com
connor.doughty@tuckerellis.com
giuseppe.pappalardo@tuckerellis.com

*Counsel for Defendant
Accord Healthcare  Inc.*

Lori G. Cohen
R. Clifton Merrell
Evan C. Holden
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
T:  (678) 553-2100
F:  (678) 553-2212
E: cohenl@gtlaw.com
merrellc@gtlaw.com
holdene@gtlaw.com

*Counsel for Defendant Sandoz Inc.*

Nicholas A. Insogna
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, MA 02110
T:  (617) 310-6231
F:  (617) 279-8416
E: insognan@gtlaw.com

Nanette E. Decea
ARNOLD & PORTER
250 West 55th Street
New York, New York 10019-9710
T: 212-836-8615
F: 212-836-6469
E: nanette.decea@arnoldporter.com

Richmond T. Moore
Neelum J. Wadhwani
WILLIAMS & CONNOLLY, LLP
680 Maine Avenue, SW
Washington, DC 20024
T: (202) 434-5000
F: (202) 434-5029
E: rmoore@wc.com
nwadhwani@wc.com

Harley V. Ratliff
Torrey Michelle Peterson
Matt DePaz
Christopher J. Kaufman
SHOOK, HARDY& BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
T: (816) 474-6550
F: (816) 421-5547
E: hratliff@shb.com
tpeterson@shb.com
mdepaz@shb.com
ckaufman@shb.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc., and Pfizer Inc.*

*Counsel for Defendants Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

Julia D. Harper
KIRKLAND & ELLIS, LLP
601 Lexington Ave.
New York, NY 10022
T: (212) 446-4800
F: (212) 446-4900
E: julia.harper@kirkland.com

**Counsel for Defendants**
**Eagle Pharmaceuticals, Inc. and**
**Teikoku Pharma USA, Inc.**

Geoffrey M. Coan
Robert M. Buchholz
HINSHAW & CULBERTSON LLP
53 State Street, 27th Floor
Boston, MA 02109
T:  (617) 213-7000
F:  (617) 213-7001
E: gcoan@hinshawlaw.com
rbuchholz@hinshawlaw.com

**Counsel for Defendant Sun**
**Pharmaceutical Industries, Inc.**
**f/k/a Caraco Pharmaceutical**
**Industries, Ltd.**

Jennifer Snyder Heis
Michael J. Suffern
Thomas G. McIntosh
ULMER & BERNE, LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
T: (513) 698-5064
F: (513) 698-5065
E: jheis@ulmer.com
msuffern@ulmer.com
tmcintosh@ulmer.com

**Counsel for Defendants**
**Actavis LLC f/k/a Actavis,**
**Inc., Actavis Pharma,  Inc. and**
**Sagent Pharmaceuticals, Inc.**

# ADDENDUM E

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | : | **MDL NO. 3023** |
| EYE INJURY PRODUCTS | : | |
| LIABILITY LITIGATION | : | **SECTION "H" (5)** |
| | : | |
| THIS DOCUMENT RELATES TO: | : | **HON. JANE TRICHE MILAZZO** |
| ALL ACTIONS | : | **MAG. JUDGE MICHAEL NORTH** |
| | : | |

**CASE MANAGEMENT ORDER NO. 15**
**(PRODUCT IDENTIFICATION ORDER)**

This Order delineates the parties' obligations and the procedures governing the discovery of Product ID Information and subsequent dismissal of defendants whose product was not used. This Order applies to all present and future cases docketed in MDL 3023 as well as all parties in the litigation. Each party must discharge the obligations of this Order in a diligent, good faith, and documented manner.

Recognizing the importance of determining product identification in MDL 3023, **IT IS ORDERED** that:

1. Within sixty (60) days after filing a Short Form Complaint, or entry of this Order for Short Form Complaints already filed, each Plaintiff must: (a) determine the facility, center, hospital, or clinic (hereinafter "infusion facility") in which the Plaintiff was infused with docetaxel; (b) determine the time frame Plaintiff was treated with docetaxel at such infusion facility; and (c) request, order, and ultimately pay for medical, pharmacy, billing (*i.e.*, a patient itemized statement), insurance billing records from such infusion facility containing the National Drug Code ("NDC") number(s) for the docetaxel Plaintiff received, other evidence of the identity of the manufacturer or labeler of the docetaxel Plaintiff received as provided in Paragraph 4 of this Order ("Product ID Information"), or completion of the attached Exhibit B form entitled "Statement

1

Regarding Chemotherapy Drug Administered" as provided in Paragraph 5 of this Order. All initial requests for records containing Product ID Information shall be in writing and accompanied by a valid medical authorization signed by the Plaintiff. Plaintiff is strongly encouraged to contact the infusion facility by telephone before sending such written request to determine where and/or to whom such written request(s) should be sent.[1] The written request shall request production of such Product ID Information no more than thirty (30) days after the written request.

If a Plaintiff has already obtained Product ID Information, uploaded it in accordance with this Order, and dismissed any defendant named which, according to the Product ID Information received did not manufacture or label the product Plaintiff received, in accordance with the presumption in Paragraph 4 of this Order, the Plaintiff has no further obligations under this Order. If all of Plaintiff's infusions of docetaxel occurred prior to March 8, 2011, the Plaintiff shall have no obligations under this Order.

2.      If records are not received within thirty (30) days of the issuance of the written request, Plaintiff shall make a diligent, good faith, and documented effort to follow-up with the infusion facility in writing and/or by phone to obtain (i) Product ID Information; or (ii) written notice that the infusion facility either does not possess Product ID Information or will not provide Product ID Information to Plaintiff. In particular, if Plaintiff receives written notice from the infusion facility that Plaintiff has requested Product ID Information from the incorrect entity and identifies the appropriate facility or facilities, Plaintiff shall request Product ID Information from the other facilities/record holders identified by the infusion facility pursuant to Paragraph 1.

3.      If Plaintiff has not received Product ID Information within sixty (60) days of the

---

[1]    Plaintiffs should recognize that infusion facilities may maintain and/or store patient records in different departments and/or locations. For instance, medical records may be maintained in the records department while billing records may be maintained in the billing department.

initial written request, Plaintiff shall issue a subpoena[2] requiring the infusion facility to release Product ID Information.[3]  Plaintiff shall provide a copy of the subpoena pursuant to FRCP 45 to the contact person[4] for the Defendant(s) named and served in the lawsuit.  If the infusion facility fails to comply with the subpoena, the Court shall take appropriate action including a Show Cause Order and/or setting a hearing on a motion to compel.

4.      The following information is presumed sufficient evidence to establish the identity of the manufacturer(s) or labeler of the docetaxel used in plaintiff's treatment:

a.      National Drug Code ("NDC") numbers contained in a patient's medical, pharmacy, billing, or insurance records; or

b.      Medical and/or billing records showing that docetaxel was administered prior to March 8, 2011, is evidence that the docetaxel was manufactured by sanofi.

c.      A signed statement from an authorized person at Plaintiff's infusion or treatment facility: (i) describing the facility's customary purchase and dispensing practices during the relevant months before and during Plaintiff's chemotherapy treatment, including a description of the volume and frequency of docetaxel purchases; the period of time a docetaxel product would typically spend "on the shelf" at a facility between purchases and infusion; and the customary relationship between purchases and infusions, if any (e.g. was product purchased periodically and kept on hand,

---

[2]    Without waiver of any protections afforded third parties under FRCP 45 and upon prior confirmation from the facility of consent to alternate service, the subpoena may be served via both Express Courier which has tracking information (i.e., FedEx or UPS) or and certified mail, as a satisfaction of in lieu of personal service.

[3]    Without waiver of any protections afforded third parties under FRCP 45 and in an effort to reduce the costs of this process, the infusion facility may be encouraged by the Plaintiff to produce responsive documents via electronic production to Plaintiffs' counsel, rather than physical production within 100 miles of the infusion facility.

[4]    Exhibit A provides the e-mail addresses for each Defendant in this litigation.

or purchased upon prescription for a specific patient) ("purchasing and
infusion timeframe"); and (ii) attaching the facility's complete purchasing
records showing that within the purchasing and infusion timeframe before
one or more of Plaintiff's chemotherapy infusions, only a single
manufacturer's medication was purchased.

d. A signed statement from an authorized person at the Plaintiff's infusion or
treatment facility: (i) describing the facility's customary purchase and
dispensing practices during the relevant months before and during
Plaintiff's chemotherapy treatment, including the relevant purchasing and
infusion timeframe; (ii) identifying all distributors of docetaxel to the
facility within the purchasing and infusion timeframe before one or more of
the Plaintiff's chemotherapy infusions; and (iii) attaching complete
distribution records showing that within that purchasing and infusion
timeframe before one or more of plaintiff's chemotherapy infusions, only a
single manufacturer's medication was distributed to the facility.

e. Lot numbers in the Plaintiff's chemotherapy administration medical records
reflecting the lot numbers of docetaxel used in Plaintiff's chemotherapy
treatments.

5. Should the Product Identification information set forth above in 4 a-e not be
available, then a Statement Regarding Chemotherapy Drug Administered ("Statement")
identifying the manufacturer(s) or labeler of the drug(s) administered to Plaintiff and the correct
dates of treatment, certified and signed by an authorized person on behalf of the patient's infusion
pharmacy, treatment facility, or other authorized health care professional, provider, or insurance
carrier may be obtained. Such Statement should be accompanied by the document(s) relied upon
by the infusion pharmacy, treatment facility, or other authorized health care professional, provider,

or insurance carrier completing such Statement which need not be notarized and can be in the form attached hereto as Exhibit B. An "authorized person" must be an infusion pharmacist or other person who regularly keeps or reviews records of patient treatment in the course of employment by the Plaintiff's infusion facility, medical facility, or health insurance company. Any Statement submitted without accompanying documents containing the information set forth above in 4 a-e shall not be presumed sufficient to establish the identity of the manufacturer(s) or labeler of the docetaxel used in a plaintiff's treatment; such an unaccompanied Statement is subject to rebuttal by the Defendant(s) identified therein and the parties agree to meet and confer with respect to any disputes raised.

6. If any party obtains Product ID Information at any time during this MDL proceeding, that party shall notify all other named parties within thirty (30) days of receipt of obtaining the Product ID Information. Within thirty (30) days of obtaining Product ID Information, Plaintiff shall upload such evidence to MDL Centrality under the "Product Identification" document type field of MDL Centrality.

7. Where Plaintiff has submitted Product ID Information as defined in Paragraph 4, Defendants in MDL 3023 will not dispute such evidence without offering testimonial or documentary evidence to rebut the presumption.

8. Within thirty (30) days of the date Plaintiff uploads the Product ID Information for all docetaxel infusions to MDL Centrality, Plaintiff shall voluntarily dismiss any and all named Defendants not identified by the Product ID Information.

  a. The Form Dismissal to be used by Plaintiffs is attached as Exhibit C. This form, which requires a signature by plaintiffs' counsel only, shall be used solely to effectuate dismissals pursuant to this Order.

  b. Plaintiffs should also submit an Amended PFS to update Section III. 2 to reflect the correct defendant(s) and remove the defendants that are

dismissed in connection with this Order.

      c.      Defendants previously named and/or served in Plaintiff's Short Form Complaint hereby reserve any and all defenses that existed up to the time of filing such dismissal.

      d.      Plaintiffs acknowledge that Defendants have not confirmed the sufficiency of any product identification obtained and agree that Defendants retain their right to dispute product identification pursuant to Paragraph 7 above. Defendants acknowledge that if a Defendant disputes Product ID Information pursuant to Paragraph 7 above, the Plaintiff retains the right to reinstate his/her claims against any dismissed Defendant pursuant to Federal Rule of Civil Procedure 60(b)(6).

9.      Plaintiffs agree to meet and confer with the applicable Defendants in connection with the information and procedures above, particularly as set forth in Paragraphs 4, 5, and 8. Plaintiff should use the contact information provided for each Defendant in Exhibit A.

10.      If Plaintiff fails to seek voluntary dismissal of any Defendant not identified by the Product ID Information within thirty (30) days of the date Plaintiff uploads such evidence for all docetaxel infusions to MDL Centrality, such Plaintiff's claims against said Defendants not identified by the Product ID information may be subject to dismissal after any required procedural steps are satisfied.

11.      Any Plaintiff who has served or will serve a PFS and failed or fails to comply with the requirements of Paragraphs 1-3 or Paragraph 4 or 5, may be subject to dismissal after any required procedural steps are satisfied.

12.      Any Plaintiff who lacks Product ID Information after complying with Paragraphs 1-3 of this Order shall be authorized to conduct discovery to the relevant infusion facility, distributor, and healthcare providers, limited in scope solely to determine Product ID Information,

for a period of no more than one-hundred and twenty (120) days from the issuance date on the subpoena issued pursuant to Paragraph 3 of this Order.  If any firm needs to conduct discovery pursuant to this provision for more than 25 Plaintiffs, it shall identify to Defendants sets of 25 Plaintiffs whose deadlines shall be extended by successive 30-day periods so that no firm is required to take more than 25 depositions pursuant to this Order in a calendar month.

13.     If Product ID Information is not determined following the 120-day (or staggered, if applicable) period set forth above in Paragraph 12, the issue may be brought to the attention of the Court for appropriate adjudication.

New Orleans, Louisiana, this 1st day of May, 2023.

**HON. JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT A

Brenda A. Sweet                                    ***Counsel for Defendant***
Connor Doughty                                     ***Accord Healthcare  Inc.***
Giuseppe W. Pappalardo
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
T:  (216) 592-5000
F:  (216) 592-5009
E: noproductid@tuckerellis.com


Lori G. Cohen                                      ***Counsel for Defendant Sandoz Inc.***
R. Clifton Merrell
Evan C. Holden
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
T:  (678) 553-2100
F:  (678) 553-2212

Nicholas A. Insogna
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, MA 02110
T:  (617) 310-6231
F:  (617) 279-8416

E: Sandoz-Taxotere-ProdID@gtlaw.com

Jeffrey Horowitz
Joan Goddard
Nanette E. Decea
ARNOLD & PORTER
250 West 55th Street
New York, New York 10019
T: (212) 836-7429
F: (212) 836-6659

Richmond T. Moore
WILLIAMS & CONNOLLY, LLP
680 Maine Avenue, SW
Washington, DC 20024
T: (202) 434-5000

E: xProductID@arnoldporter.com

*Counsel for Defendants Hospira, Inc., Hospira Worldwide, LLC, formerly doing business as Hospira Worldwide, Inc., and Pfizer Inc.*

Jay P. Lefkowitz
Devora W. Allon
Julia D. Harper
KIRKLAND & ELLIS, LLP
601 Lexington Ave.
New York, NY 10022
T: (212) 446-4800
F: (212) 446-4900
E: noproductid@kirkland.com

*Counsel for Defendants Eagle Pharmaceuticals, Inc. and Teikoku Pharma USA, Inc.*

Geoffrey M. Coan
Robert M. Buchholz
HINSHAW & CULBERTSON LLP
53 State Street, 27th Floor
Boston, MA 02109
T:  (617) 213-7000
F:  (617) 213-7001
E: docenoprodid@hinshawlaw.com

*Counsel for Defendant Sun Pharmaceutical Industries, Inc. f/k/a Caraco Pharmaceutical Industries, Ltd.*

Jennifer Snyder Heis
Michael J. Suffern
Thomas G. McIntosh
ULMER & BERNE, LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
T: (513) 698-5064
F: (513) 698-5065
E: jheis@ulmer.com
msuffern@ulmer.com
tmcintosh@ulmer.com

*Counsel for Defendants Actavis LLC f/k/a Actavis, Inc., Actavis Pharma, Inc., and Sagent Pharmaceuticals, Inc.*


Douglas J. Moore
Kelly E. Brilleaux
IRWIN FRITCHIE URQUHART & MOORE, LLC
400 Poydras Street, Suite 2700
New Orleans, LA 70130
T: (504) 310-2100
F: (504) 310-2120
E: dmoore@irwinllc.com
kbrilleaux@irwinllc.com

*Counsel for Defendants Sanofi-Aventis U.S. LLC and Sanofi U.S. Services Inc.*

Harley V. Ratliff
Christopher J. Kaufman
Torrey Michelle Peterson
Matt DePaz
SHOOK, HARDY& BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
T: (816) 474-6550
F: (816) 421-5547
E: noproductid_3023@shb.com

### EXHIBIT B

### STATEMENT REGARDING CHEMOTHERAPY DRUG ADMINISTERED

PATIENT NAME: _____

DATE OF BIRTH: _____/_____/_____ SSN: _____

### TO BE COMPLETED BY REPRESENTATIVE OF ONCOLOGIST/INFUSION CENTER

**\*\*\*PLEASE MARK THE NDC FOR THE TAXOTERE/DOCETAXEL ADMINISTERED AND ATTACH THE DOCUMENTS REVIEWED TO MAKE THAT DETERMINATION\*\*\***

**SANOFI AVENTIS US LLC**
- ☐ 0075-8001-80
- ☐ 0075-8001-20
- ☐ 0075-8003-01
- ☐ 0075-8004-04

**SANOFI AVENTIS US LLC d/b/a WINTHROP US**
- ☐ 0955-1020-01
- ☐ 0955-1021-04
- ☐ 0955-1022-08

**HOSPIRA, INC.**
- ☐ 0409-0201-02
- ☐ 0409-0201-10
- ☐ 0409-0201-20
- ☐ 0409-0201-25
- ☐ 0409-0201-26
- ☐ 0409-0201-27
- ☐ 0409-0366-01
- ☐ 0409-0367-01
- ☐ 0409-0368-01
- ☐ 0409-0369-01

**SANDOZ INC.**
- ☐ 66758-050-01
- ☐ 66758-050-02
- ☐ 66758-050-03
- ☐ 66758-950-02
- ☐ 66758-950-03
- ☐ 66758-950-04

**ACCORD HEALTHCARE, INC.**
- ☐ 16729-120-49 KIT
- ☐ 16729-228-50 KIT
- ☐ 16729-231-63
- ☐ 16729-231-64
- ☐ 16729-231-65
- ☐ 16729-267-63
- ☐ 16729-267-64
- ☐ 16729-267-65

**SAGENT PHARMACEUTICALS**
- ☐ 25021-222-01
- ☐ 25021-222-04
- ☐ 25021-222-07
- ☐ 25021-245-01
- ☐ 25021-245-04

**PFIZER LABORATORIES**
- ☐ 0069-9141-11
- ☐ 0069-9141-22
- ☐ 0069-9141-33
- ☐ 0069-9142-11
- ☐ 0069-9142-22
- ☐ 0069-9142-33
- ☐ 0069-9144-11
- ☐ 0069-9144-22
- ☐ 0069-9144-33

**ACTAVIS PHARMA, INC.**
- ☐ 45963-734-52
- ☐ 45963-734-54
- ☐ 45963-734-74
- ☐ 45963-765-52
- ☐ 45963-781-74
- ☐ 45963-790-56

**McKESSON PACKAGING SERVICES**
- ☐ 63739-932-11
- ☐ 63739-971-17

**DR REDDYS LAB LTD.**
- ☐ 43598-258-11
- ☐ 43598-259-40

**TEVA PHARMS USA**
- ☐ 0703-5720-01
- ☐ 0703-5730-01

**NORTHSTAR RX LLC**
- ☐ 16714-465-01
- ☐ 16714-500-01

**EAGLE PHARMACEUTICALS**
- ☐ 42367-121-25
- ☐ 42367-121-29

**SUN PHARMACEUTICAL INDUSTRIES, INC.**
- ☐ 47335-285-41
- ☐ 47335-286-41

**OTHER**
- ☐ _____
- ☐ _____

☐ **PATIENT WAS NOT ADMINISTERED TAXOTERE/DOCETAXEL**

**PATIENT ☐ WAS / ☐ WAS NOT ADMINISTERED TAXOL/PACLITAXEL**

_____/_____/_____
DATE OF FIRST TREATMENT

_____/_____/_____        _____
DATE OF LAST TREATMENT            # OF DOSES

_____
SIGNATURE OF REPRESENTATIVE OF
PRACTICE/INFUSION CENTER

_____
NAME OF PRACTICE/INFUSION CENTER

_____
PRINTED NAME & TITLE OF REPRESENTATIVE

_____
ADDRESS

_____
DATE

_____
CITY, STATE, ZIP

11

**EXHIBIT C**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | : | |
| IN RE: TAXOTERE (DOCETAXEL) | : | MDL NO. 3023 |
| EYE INJURY PRODUCTS | : | |
| LIABILITY LITIGATION | : | SECTION "H" (5) |
| | : | |
| THIS DOCUMENT RELATES TO: | : | HON. JANE TRICHE MILAZZO |
| | : | MAG. JUDGE MICHAEL NORTH |
| Case Name, Case Number | : | |
| | : | |

**NOTICE OF PARTIAL DISMISSAL WITH PREJUDICE AS TO ALL EXCEPT [Defendant(s) for whom Plaintiffs have obtained product identification]**

Pursuant to CMO 15, Plaintiff dismisses with prejudice all previously named defendants in this matter except [defendant(s) for whom plaintiffs have obtained product identification], each party to bear its own costs. Plaintiff seeks this partial dismissal pursuant to Paragraph 8 of Case Management Order No. 15 (Rec. Doc. 114). Plaintiff's claims against the remaining defendants are not dismissed, or otherwise affected, by this Notice of Partial Dismissal with Prejudice. If warranted under the circumstances, Plaintiff may seek relief from this dismissal of claims pursuant to Federal Rule of Civil Procedure 60(b)(6).

Dated this _____ day of _____, 2023

[Plaintiff's counsel's signature block]

[Certificate of service]

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: T-MOBILE CUSTOMER DATA | ) | |
| SECURITY BREACH LITIGATION, | ) | MDL No. 3019 |
| | ) | |
| | ) | Master Case No. 4:21-MD-03019-BCW |
| ALL ACTIONS | ) | |

### SCHEDULING ORDER

On March 23, 2022, the Court held a status conference in this matter. Pursuant to Fed. R. Civ. P. 16 and consistent with the status conference discussion and rulings on the record, the Court hereby enters the following Scheduling Order. The parties shall adhere to all deadlines and requirements set forth herein unless otherwise modified by Court Order upon extraordinary circumstances and good cause shown.

**1.** Any motion for extension of time shall be filed at least three (3) days before the deadline established by rule or Court Order. Any motion for extension of time shall set forth the position of opposing counsel regarding the requested extension. Any motion for extension of time shall set forth why additional time is needed.

**2.** The page limitations for legal arguments set forth in L.R. 7.0 apply. Any motion to exceed the usual page limit shall be filed at least three (3) days before the filing deadline. Any motion to exceed the page limit shall set forth the position of opposing counsel regarding the request for additional pages.

**3.** All discovery disputes will be resolved consistent with L.R. 37.1 and chambers internal procedures. To arrange a discovery dispute conference call, or to otherwise contact the Court, counsel shall contact the Courtroom Deputy, Tracy Diefenbach, at Tracy_Diefenbach@mow.uscourts.gov.

1

**4.** At least three (3) days before any discovery dispute telephone conference or hearing at which a discovery dispute is scheduled to be addressed, counsel for each party shall submit a Position Letter to the Court.

Each party's Position Letter shall not exceed one (1) typewritten page with one-inch margins and 12-point, Arial font. Each Position Letter shall set forth a brief recitation of the facts and a discussion of the party's respective arguments, including anticipated opposing arguments.

**To ensure candor, Position Letters are <u>not</u> to be filed with the Court nor shared with opposing counsel. Rather, each party shall email its Position Letter in PDF form to chambers only, at Tracy_Diefenbach@mow.uscourts.gov. All Position Letters will be kept confidential.**

**5.** The parties shall file their proposed Protective Order and Electronically-Stored Information Protocol by **April 6, 2022**. While disputes relating to Protective Orders and ESI are typically resolved consistent with L.R. 37, the Court makes an exception under the circumstances presented here in light of the Court's discussion with the parties during the status conference on March 23, 2022.

**6.** The master consolidated complaint shall be filed by **May 11, 2022**. Discovery shall commence immediately upon the filing of the master consolidated complaint. Pursuant to the parties' agreement, the parties shall exchange initial disclosures under Fed. R. Civ. P. 26(a) by **June 1, 2022**.

**7.** The deadline to answer or otherwise respond to the master consolidated complaint is **July 11, 2022**. Suggestions in opposition to any motion to dismiss shall be filed by **August 25, 2022**. Any reply suggestions to any motion to dismiss shall be filed by **September 26, 2022**.

**8.** The deadline to add parties without seeking separate leave of Court is **August 11, 2022**, unless a motion to dismiss is filed. If a motion to dismiss the master consolidated complaint is

filed, the deadline to add parties without seeking separate leave of Court is extended to 30 days after Court rules on Defendants' motion to dismiss.

**9.** The deadline to file any motion to compel arbitration is **September 12, 2022**.

**10.** All fact discovery shall be completed on or before **July 31, 2023** ("Closure Date"). All fact discovery shall be completed, not simply submitted, by the Closure Date. Accordingly, all discovery requests and depositions shall be submitted and/or scheduled before the Closure Date and with sufficient time for completion within the time specified by the Federal Rules of Civil Procedure, Local Rules, and/or Court Orders. Nothing contained herein shall excuse a party from the continuing obligation to update responses to discovery or to respond to discovery requests made before the Closure Date. The deadline for filing any motions pertaining to fact discovery is **August 15, 2023**.

**11.** Plaintiffs shall designate any expert witness they intend to call at trial on or before **August 15, 2023**. Defendants shall designate any expert witness they intend to call at trial on or before **October 9, 2023**. Plaintiffs shall designate any rebuttal expert witness on or before **November 8, 2023**. This paragraph applies to all witnesses from whom expert opinions will be elicited, regardless of whether the witness was specially retained to provide trial testimony. The parties shall ensure compliance with Fed. R. Civ. P. 26(a)(2)(B) at the time of designation. Expert discovery shall close on **December 8, 2023**. The deadline for filing any motions pertaining to expert discovery is **December 15, 2023**.

**12**. Any motion for class certification shall be filed by **December 15, 2023**. Suggestions in opposition to any motion for class certification shall be filed by **January 29, 2024**. Reply suggestions shall be filed by **February 28, 2024**.

**13.** Any dispositive motion, except those under Fed. R. Civ. P. 12(h)(2) or (3), shall be filed within 45 days of the Court's ruling on any motion for class certification. Opposition

suggestions to any motion for summary judgment or other similar dispositive motion are due 45 days thereafter. Reply suggestions are due 30 days thereafter. All motions for summary judgment shall comply with L.R. 7.1 and 56.1.

**14.** All motions to strike expert witness designations or to preclude expert testimony premised on Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) shall be filed within 45 days of the Court's ruling on any motion for class certification. Failure to file a Daubert motion before the expiration of this deadline constitutes waiver of any argument based on Daubert. Opposition suggestions to any Daubert motion are due 45 days thereafter. Reply suggestions are due 30 days thereafter.

**15.** Within 14 days of the Court's ruling on any dispositive motion, to the extent any issues remain for trial, the parties shall contact the Courtroom Deputy to arrange a telephone conference with the Court for scheduling purposes to discuss trial, venue, remand, and/or pretrial deadlines and requirements.

**16.** This matter is set for status conference by telephone on **April 26, 2022 at 2:00 p.m. CST**. Appointed leadership counsel for Plaintiffs and counsel for Defendants shall participate. The Courtroom Deputy will arrange participation in the conference call.

IT IS SO ORDERED.


DATED: April 18, 2022

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT

4

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| IN RE: SMITTY'S/CAM2 303 TRACTOR HYDRAULIC FLUID MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) | MDL No. 2936<br><br>Master Case No. 4:20-MD-02936-SRB<br><br>ALL ACTIONS |

### DISCOVERY PLAN AND SCHEDULING ORDER

Pursuant to Fed. R. Civ. P. 16(b) and 26(f), and upon consideration of the parties' proposals in the matter, the Court hereby enters the following discovery plan and scheduling order.

**1. Briefing on the Nature of the Consolidated Amended Complaint**. On or before July 15, 2020, Plaintiffs shall file a motion regarding whether the Consolidated Amended Complaint should be administrative or substantive in nature. Defendants' response to the motion shall be filed on or before July 22, 2020. Plaintiffs' reply shall be filed on or before July 27, 2020.

**2. Motion for Protective Order Regarding Greg Sandfort**. Any motion for a protective order regarding Greg Sandfort, the former president and CEO of Tractor Supply, and current board member, shall be filed on or before July 15, 2020. Any response shall be filed on or before July 22, 2020, and any reply shall be filed on or before July 31, 2020.

**3. Consolidated Amended Complaint and Answer**. Plaintiffs shall file the Consolidated Amended Complaint on or before September 1, 2020. Defendants' Answer or other response shall be filed on or before October 1, 2020.

**4. Alternative Dispute Resolution/Mediation and Assessment Program**. This case will be included in the Western District of Missouri's Mediation and Assessment Program. The parties shall conduct a mediation on or before September 30, 2020.

**5.  Amendment of Pleadings and Joinder of Parties**.  Any motion to amend the pleadings and any motion to join additional parties shall be filed on or before December 1, 2020.

**6.  Discovery**.  Discovery shall be completed on or before September 1, 2021.  The Court will not entertain any discovery motion absent full compliance with Local Rule 37.1.  In the event that a teleconference is needed, email your request to the Courtroom Deputy at tracy_diefenbach@mow.uscourts.gov.  A memorandum of the discovery dispute, not to exceed two pages in length, should be electronically submitted by each party no later than twenty-four hours prior to the teleconference.

**7.  Expert Deadlines**.   Plaintiffs shall designate any expert witnesses on or before April 1, 2021.  Defendants shall designate any expert witnesses on or before June 1, 2021.  Each party shall ensure compliance with Fed. R. Civ. P. 26(a)(2)(B) at the time of the party's expert witness designations.

**8.  Class Certification Briefing; Hearing Date**.   Plaintiffs' motion for class certification shall be filed on or before August 1, 2021.  Defendants' opposition brief shall be filed on or before September 15, 2021.  Plaintiffs' reply shall be filed on or before October 1, 2021.  A class certification hearing will be held on October 7, 2021 at 9:00 a.m.

**9.  Dispositive and *Daubert* Motions; Hearing Date**.  Dispositive and *Daubert* motions shall be filed on or before January 18, 2022.  Any opposition to such a motion shall be filed on or before March 1, 2022.  Any reply brief in support of such a motion shall be filed on or before April 1, 2022.  A hearing on dispositive and *Daubert* motions will be held on April 18, 2022 at 9:00 a.m.

**10.   Monthly Telephonic and Quarterly In-Person Status Conferences**.   Monthly telephonic and quarterly in-person status conferences are hereby set for the following dates and times:

2

**a. Monthly Telephonic Conferences**:

| | |
|---|---|
| August 5, 2020 | 9:00 a.m. |
| September 8, 2020 | 9:00 a.m. |
| November 3, 2020 | 9:00 a.m. |
| December 8, 2020 | 9:00 a.m. |
| February 4, 2021 | 9:00 a.m. |
| March 4, 2021 | 9:00 a.m. |

**b. In-Person Quarterly Conferences**:

| | |
|---|---|
| October 7, 2020 | 10:00 a.m. |
| January 7, 2021 | 10:00 a.m. |
| April 1, 2021 | 10:00 a.m. |

**11.  Pretrial Conference; Trial Date**.  A final pretrial conference is set for May 6, 2022 at 10:00 a.m.  A two-week trial is set for June 6, 2022.

**12.  Pretrial Conference Document Deadlines.**  The documents listed below shall be filed prior to the pretrial conference.

**a.** Motions in Limine.  Motions in limine shall be filed at least ten (10) business days prior to the final pretrial conference.  Responses to motions in limine shall be filed within the time limit allowed by Local Rule 7.0 or at least three (3) business days prior to the final pretrial conference whichever is earlier.  In order to ensure efficient use of trial time, the parties are encouraged to file motions in limine relating to key evidentiary issues.

**b.** Stipulation of Uncontroverted Facts.  At least three (3) business days prior to the final pretrial conference, the parties may file a stipulation of any uncontroverted facts.

**c.** Witness List.  At least ten (10) business days prior to the final pretrial conference, each party shall file and serve a list of all witnesses who may be called to testify at trial.  If a witness is not listed by a party, that witness will not be permitted to testify absent leave of Court and then only for the purpose of unanticipated rebuttal or impeachment.

**d.** Exhibit Index.  At least five (5) business days prior to the final pretrial conference, each party shall file and serve an exhibit index of all exhibits that may

3

be offered at trial. If an exhibit is not listed by a party, that exhibit will not be admitted absent leave of Court.  The exhibit index should be prepared on a form provided by the Clerk's office that can be found at http://www.mow.uscourts.gov/forms.html#district.  Each exhibit will be designated as either "Plaintiff's" or "Defendant's," numbered with an Arabic numeral, and described following the enumeration.  If an exhibit consists of more than one (1) page or part, the number of pages or parts shall be included in the description.  The exhibit number must be marked on each exhibit at the time of listing.  It is not necessary to include exhibits to be used only for impeachment or rebuttal purposes. After the time for filing the exhibit index has expired, no supplemental or amended index will be filed without leave of Court for good cause shown.

**e.**    Stipulation as to the Admissibility of Evidence.  At least three (3) business days prior to the final pretrial conference, the parties shall file a stipulation as to the admissibility of evidence, listing the exhibits for which authenticity and foundation are not contested.

**f.**    Designation of Deposition Testimony. Fifteen (15) business days prior to the final pretrial conference, each party shall file and serve a designation, by page and line number, of any deposition testimony to be offered in evidence by that party.

**g.**    Objections to Designated Deposition Testimony and Counter Designation. At least ten (10) business days prior to the final pretrial conference, each party shall file and serve:

  **i.**    Any objections to proposed deposition testimony designated by any other party; and

  **ii.**   A designation, by page and line number, of any deposition testimony to be offered as counter-designation to deposition testimony designated by other parties.

**h.**    Objections to Counter Designations.  At least seven (7) business days prior to the final pretrial conference, each party shall file and serve any objections to proposed deposition testimony offered as a counter-designation by other parties.

**i.**    Submission of Deposition Designations. At least seven (7) business days prior to the final pretrial conference, the Court should receive deposition designations in the following manner:

  **i.**    The parties are to jointly submit one mini-script copy of each designated deposition.

4

    **ii.** Each party is to highlight the portion of the deposition they want to designate, including counter-designations.

    **iii.** Each party should use a different highlight color to indicate their designations (for example, plaintiff uses yellow; defendant uses blue).

    **iv.** Each party should also indicate their objections on the actual deposition by bracketing those portions in the margin of the deposition, again using a different color to indicate the portion to which each party objects.

    **v.** Each party should submit to the Court a Word version document of the Objections to Deposition Designations that the party filed in CM/ECF. Send that via email to the Courtroom Deputy at [tracy_diefenbach@mow.uscourts.gov](mailto:tracy_diefenbach@mow.uscourts.gov).

**j.** Jury Instructions.

    **i.** At least ten (10) business days prior to the final pretrial conference, the parties shall jointly file an original (without sources) set and an annotated (with sources) set of proposed jury instructions. Proposed instructions shall reflect the authorities upon which the instruction is based and should be taken from or drawn in the manner of *Model Civil Jury Instructions for the District of Courts of the Eighth Circuit* and/or *Missouri Approved Instructions* (MAI) where available and appropriate. All instructions shall be designated as Instruction No. ____.

    **ii.** The Court prefers to receive joint instructions from the parties. Separate instructions are appropriate only when the parties cannot agree upon a specific instruction. In that instance, the parties shall jointly submit the instructions upon which they agree. Each party shall submit its proposed version of the instructions upon which the parties do not agree, along with a written objection to the other party's version.

    **iii.** The instructions should also be submitted to the Court electronically, in Word format. Instructions should be sent via email to the Courtroom Deputy at [tracy_diefenbach@mow.uscourts.gov](mailto:tracy_diefenbach@mow.uscourts.gov).

## 13.  Trial Document Deadline and Trial Procedure.

**a.** Trial Brief. At least five (5) business days prior to trial, counsel for each party may file a trial brief stating the party's factual and legal contentions in the case. The trial brief should address any important evidentiary issues.

**b.** Jury Statement.  At least five (5) business days prior to trial, counsel for each party shall agree upon a statement to be read to the jury setting forth the background of the case and the claims to be asserted.  This statement will be read to the jury panel prior to voir dire.  The jury statement shall be emailed in Word format to the Courtroom Deputy at tracy_diefenbach@mow.uscourts.gov.

**c.** The Court may place time limits on opening statements, and direct and cross-examination of all witnesses.  Counsel should be prepared to support their representations as to the length of trial.

### 14.  Miscellaneous.

**a.** All motions for extension of time pursuant to Fed. R. Civ. P. 6(b), 31, 33, 34, or 36 should be filed at least seven (7) days before the date of the original deadline and must state:

> i.  The date when the pleading, response, or other action is/was first due;

> ii.  The number of previous extensions and the date the last extension expires;

> iii.  The cause for the requested extension, including a statement as to why the action due has not been completed in the allotted time; and

> iv.  Whether the requested extension is approved or opposed by opposing counsel (agreement by counsel of a requested extension is not binding on the Court).

**b.** All motions requesting leave to depart from Local Rule 7.0(f) page limitation must state:

> i.  The number of previous requests for leave;

> ii.  The particular reason for the request for leave, including a specific statement as to why the action due cannot be completed within the allotted page limit; and

6

iii. Whether the request for leave is approved or opposed by opposing counsel (agreement by counsel of a request for leave is not binding on the Court).

c. The parties should not submit proposed orders in conjunction with routine motions, *e.g.* motions for extension of time and motions to modify the scheduling order. The parties shall submit proposed orders in conjunction with all motions, other than dispositive motions, in which a specific, substantive ruling is sought by the Court, *e.g.* motions for entry of consent judgment, motions for temporary restraining order, motions for entry of a preliminary injunction, and motions for entry of a protective order. Such proposed orders shall be emailed in Word format to the Courtroom Deputy at tracy_diefenbach@mow.uscourts.gov.

d. The dispositive motion date, final pretrial conference date, and trial date shall be changed only by leave of Court.

e. Any questions about this scheduling order or the procedures to be followed when practicing in this division should be directed to the Courtroom Deputy, Tracy Diefenbach, at tracy_diefenbach@mow.uscourts.gov.

**15. Hearing and Trial Location**. Absent a subsequent order to the contrary, all hearings and the trial in this case shall take place in Courtroom 7B in the United States District Courthouse, Kansas City, Missouri.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
Dated: July 8, 2020                    UNITED STATES DISTRICT JUDGE

7

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: TAXOTERE (DOCETAXEL) | ) | MDL No. 2740 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION: "N" (5) |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| ALL ACTIONS | ) | |

**CASE MANAGEMENT ORDER NO. 5**
**(GENERAL DISCOVERY PROTOCOL – SANOFI DEFENDANTS)**

In an effort to coordinate discovery and meet the Court's scheduling order for trials, the Parties submitted competing drafts of a proposed General Discovery Order to govern the captioned litigation. After convening two status conferences at which counsel for the Parties were heard on their respective positions regarding the conduct of general discovery, the Court now hereby Orders as follows:

1. **Applicability of Order.** The following procedures and schedules will govern general discovery on Defendants Sanofi S.A., Aventis Pharma S.A., sanofi-aventis U.S. LLC, Sanofi US Services Inc. (hereinafter collectively "Sanofi Defendants"). No Party may conduct any discovery of Defendants not expressly authorized by this Order absent further Order of this Court or express agreement of the Parties. The Federal Rules of Civil Procedure shall apply to these proceedings, subject to provisions permitting Court orders or stipulations by the Parties to make appropriate modifications. Pretrial Order Number 49 (Electronically Stored Information Protocol) and Pretrial Order Number 50 (Protective Order) shall apply to all discovery under this Order. The discovery authorized by this Order is hereinafter referred to as "general discovery," and is subject to the limitations set forth below.

2. **General Provisions.**

a. Except as expressly set forth herein, this Order shall not limit or prejudice any Party's rights under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or the Local Rules of this Court. However, the Court specifically notes that the provisions of this Order obviate (1) any applicable specifications on timing and sequencing of discovery set forth in FRCP Rule 26(d), and (2) any applicable obligation of a Party to this proceeding to comply with the conference and planning requirements of FRCP Rule 26(f).

b. The Parties may modify this Order by written agreement without Court order or, absent written agreement, seek to modify this Discovery Plan by motion for good cause after making a good faith effort to meet and confer.

c. The Parties may agree to, and the Court may enter, Trial Scheduling Orders from time to time for specific trials. These scheduling orders are meant to govern the circumstances of particular trials only and are in addition to the provisions contained herein.

d. **Discovery Conferences.** The Parties shall promptly meet and confer in good faith regarding any discovery disputes before seeking the Court's intervention. To facilitate this process, the Parties shall employ the procedures set forth in this Paragraph.

   i. A monthly discovery meet and confer call among Plaintiffs and the Sanofi Defendants shall take place on the second Thursday of every month at 3:00 p.m. CT. At or before noon on Wednesday preceding each such call, the Parties shall each submit a written list of topics to be addressed on that call.

ii. A separate monthly status call with the Magistrate Judge shall be scheduled to address and resolve discovery issues discussed among the Parties, and to keep the Court generally advised on the progress of discovery. The Parties may request more frequent conferences, as necessary, or advise the Magistrate Judge that a separate monthly status call is not necessary. To avoid surprise, and absent extreme circumstances, the Parties agree to only introduce issues to the Court that have been previously discussed during a meet and confer with opposing counsel.

iii. At least three business days before each monthly status call, the Parties must jointly provide the Magistrate Judge with a list of topics being submitted for decision, discussion, or informal guidance, or provide notice that the call is not needed.

iv. The Party seeking guidance may provide the Magistrate Judge and all Parties a letter, not to exceed three pages single-spaced, outlining the issues and the Party's position on those issues no later than three business days prior to the status call. Any Party may respond by letter, not to exceed three pages single-spaced, outlining that Party's position no later than noon CT on the business day prior to the telephone conference. The letters should not be filed with the Court, but should be e-mailed to all Parties when they are provided to the Magistrate Judge. No further submissions regarding an issue may be submitted without leave of the Court.

e. **Coordination of Discovery.** The Parties shall coordinate discovery to the extent reasonably possible.

3

f.   All general discovery propounded to the Sanofi Defendants by Plaintiffs in this MDL proceeding pursuant to this Order, including deposition notices, interrogatories, requests for admission, and production requests, shall be undertaken by, or under the direction of, the Plaintiffs' Steering Committee on behalf of all Plaintiffs with cases in these MDL proceedings. Any discovery not limited to a specific Plaintiff shall be assigned by the PSC.

3.   **Electronically Stored Information and Information Exchange.** The ESI Protocol established in Pretrial Order No. 49, entered on July 5, 2017, shall govern the production of ESI documents and data in this litigation. The Parties subject to a trial scheduling order shall exchange the specific information identified in Section IV.E. of the ESI Protocol within 30 days of a scheduling order of the Court.

4.   **Written Discovery.** Unless otherwise ordered by the Court or agreed to by the Parties, the numerical limitations on written discovery requests set forth in the Federal Rules of Civil Procedure shall apply to discovery conducted under this Protocol.

5.   **Numerical Limits on Deposition of Defendants.** Plaintiffs may take up to thirty (30) depositions of the Sanofi Defendants, including depositions of current and former employees and Rule 30(b)(6) depositions. Trial depositions related to any Case Management Order scheduling a trial date are not counted against this limitation on the number of depositions. The Parties will meet and confer regarding the identification of such witnesses and the scheduling of their depositions. For good cause shown, Plaintiffs may seek additional depositions. The Parties may agree to additional depositions if conducting those depositions will not upset any schedule set by the Court. Any additionally noticed 30(b)(6) deposition shall count as one witness provided the topics

included within the 30(b)(6) Notice of Deposition are sufficiently related. Depositions shall be limited to no more than 7 hours on the record per deposition without leave from the Court or agreement of the Parties.

a. Defendants' deposition allowance shall be governed by Pretrial Order No. 22 and the individual trial scheduling orders. Unless good cause is shown, Defendants should not commence discovery of Plaintiffs not subject to a trial scheduling order. The seven-hour on the record time limit shall apply to depositions taken by Defendants unless altered by the Court or by agreement of the Parties.

b. The Parties shall establish a deposition protocol. The agreed protocol, or absent agreement competing protocols, shall be submitted to the Magistrate Judge. A protocol not having been entered will not delay the taking of depositions in this matter.

6. **Timing of Discovery.**

a. Within ten days after the date of this Order, Defendants shall produce without further request:

- Organizational charts for the years 1999 – 2015 that include all persons with direct responsibility for Taxotere (Docetaxel); and

- A complete list of distributors to whom each defendant sold Taxotere or Docetaxel for the years 1999 to present.

i. With respect to the jurisdictional discovery propounded upon Sanofi S.A. and Aventis Pharma S.A. by Plaintiffs, within 7 days after the Court rules on the protective order/objections to Plaintiffs' motion to compel discovery based on the French Blocking statute, Hague service, and French data production, as applicable, these

foreign entities (the "French Defendants") shall make their productions as ordered by the Court.

ii. The Plaintiffs may propound merits discovery at any time, subject to any additional deadlines set by the Court. The Sanofi Defendants shall produce (non-case-specific) documents and information to the PSC for use of Plaintiffs in this MDL proceedings.

iii. Subject to any objections, the Sanofi Defendants shall produce materials responsive to requests on a rolling basis, and the Parties shall meet and confer at least monthly regarding production status (PTO 49, Section V.), until productions are complete in accordance with FRCP 26(g). Such productions shall be substantially completed no later than sixty (60) days from the service of the requests, or (1) within such reasonable time to be determined by Plaintiffs and the Defendants after any objections to specific requests are resolved or (2) within such time as determined by the Court.

iv. Pretrial Order Number 49, Section IX, governs procedures regarding claims of privilege and redactions and the content and timing of privilege logs, with one exception. Due to the Court-ordered time period for the initial trials to begin in September 2018, this Order amends Section IX.C.1. to shorten the timing of service of the privilege logs from 75 days to within 45 days of production.

v. A Party wishing to challenge an asserted privilege may do so at any time by notifying the asserting Party that the privilege is being challenged. If no agreement is made with regard to the disputed privilege, either Party may bring the issue up for the next regularly scheduled conference or call with the Magistrate Judge or request expedited consideration if the Party in good faith deems such consideration necessary.

vi. **Documents Produced by Parties – Presumption of Authenticity**.  In order to reduce the number of requests for admission, this Order establishes a rebuttable presumption that documents produced by the Parties are authentic, if said documents were either created or authored by the producing Party, or any of its employees, agents or contractors, so long as the agent or contractors' work was performed in connection with a project, assignment or clinical trial sponsored by the producing Party.  No further evidence to establish authenticity need be provided.

9. **Third-Party Discovery.**  Third-party discovery initiated by any Party subject to this Protocol may commence immediately and is not limited by this Order.  The requesting Party shall produce to all other Parties any responses and productions received by them during the course of third-party discovery at a reasonable cost of reproducing them, accounting for the form in which the initial production is received.

10. **Fact Discovery Deadline.**  The Parties are cognizant of the first trial date in this MDL is September 24, 2018.  *See* CMO No. 3.  Completion of fact discovery for any Plaintiff selected for trial shall be governed by the individual trial scheduling orders.  The Parties are reminded by the Court of their respective obligations to conduct general discovery in a manner proportional to the needs of all cases, including those set for trial, consistent with the provisions of this Order.  With this is mind, general liability fact discovery shall be completed by **December 15, 2018**.  This deadline may be extended by the Court for good cause shown by any Party.

11. **Resolution of Disputes under this Protocol.**  If a dispute arises under this Protocol that the Parties cannot resolve after good-faith efforts in a meaningful meet-and-confer session or sessions, they are to immediately contact the chambers of the Magistrate

Judge, who will thereafter resolve the matter with the Parties' input consistent with sections 2(D)(iii-iv) of this Protocol.

New Orleans, Louisiana, this ___23rd___ day of _____August_____, 2017.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

8