UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL MATTERS | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING THE SUPPLEMENTAL REPORT OF MINETTE E. DRUMWRIGHT, PH.D.**<br><br>Judge:    Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

The Parties respectfully submit this joint letter regarding disputed issues related to the Supplemental Report of Dr. Minette E. Drumwright.

DATED:

By: /*Roopal P. Luhana*
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

    *Co-Lead Counsel for Plaintiffs*

By: /*Laura Vartain Horn*
    LAURA VARTAIN HORN
    **KIRKLAND & ELLIS LLP**
    LAURA VARTAIN
    Laura.vartain@kirkland.com
    ALLISON M. BROWN (*pro hac vice*)
    Alli.brown@kirkland.com
    JESSICA DAVIDSON (*pro hac vice*)
    Jessica.davidson@kirkland.com

    *Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

Dear Judge Cisneros:

On November 6, 2025, the Court ordered the parties to file a joint statement, pursuant to Pretrial Order No. 8 (ECF No. 323), by November 14, 2025, concerning Uber's request to strike the October 22, 2025 supplemental report of Plaintiffs' expert, Dr. Minette E. Drumwright ("Drumwright Supplemental Report," attached hereto as **Exhibit 1**). ECF No. 4324 at 1. Below is the parties' joint statement.

**Uber's Position:** Plaintiffs served Dr. Drumwright's 194-page, 511-paragraph opening expert report on September 26, 2025. Uber reasonably understood the report to contain the entirety of Dr. Drumwright's opinions. After some back-and-forth between the parties, Dr. Drumwright's deposition was set for October 26, 2025. Only four days prior to Dr. Drumwright's scheduled deposition, Plaintiffs—with *no* advance notice—served the Drumwright Supplemental Report. According to Dr. Drumwright, her 38-page, 71-paragraph untimely "supplemental" expert report "provides new evidence and additional bases for [her initial] opinions," Ex. 1 ¶ 1, but *most* of the report's 129 footnote citations are from sources available prior to September 26, 2025—i.e., the original expert report deadline. Indeed, Dr. Drumwright only cites one document that was produced after Plaintiffs served her opening report: a deposition aid produced by Uber on October 1, 2025, prior to the deposition of Emilie Boman. Ex. 1 ¶ 7 n.8 (citing Boman Dep. Ex. 2059). And, contrary to Plaintiffs' suggestion below, Dr. Drumwright's supplemental report *does not* cite to any substantive deposition testimony by Ms. Boman, but instead relies on underlying exhibits used at the deposition (all but one of which—the deposition aid—were available to Plaintiffs prior to the submission of Dr. Drumwright's initial report).[1]

Federal courts have routinely held that "supplementary disclosures do not permit a party to introduce new opinions after the disclosure deadline under the guise of a 'supplement.'" *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (granting motion to exclude supplemental report); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *7 (N.D. Cal. Dec. 15, 2014) (same). This is because while "Rule 26(e)(1) imposes a *duty* to supplement . . . disclosures to reveal incomplete or incorrect information to an opposing party," that is "not a *right* to extend discovery deadlines." *Carter v. Finely Hosp.*, No. 01 C 50468, 2003 WL 22232844, at *2 (N.D. Ill. Sept. 22, 2003) (granting motion to strike supplemental expert disclosures). The Drumwright Supplemental Report should be excluded under these principles. Further, because Plaintiffs cannot show that Dr. Drumwright's belated supplementation was substantially justified or harmless, the Drumwright Supplemental Report should be excluded in accordance with Rule 37(c)(1).

*First*, the Drumright Supplemental Report does not meet the standard for proper supplementation under the Federal Rules. Dr. Drumwright attempts to shoehorn her report into the standard by noting that "[t]he additional material does not change my initial opinions, but it provides new evidence and additional bases for my opinions[.]" Ex. 1 ¶ 1. Merely saying that, however, does not make it true. As explained above, the majority of the report's 129 footnote citations are from sources available prior to the original expert report deadline of September 26, 2025. It would be "disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court under Rule 26(a)(2)(C). This is particularly true where, as

---

[1] To the extent the Court concludes that the portions of Dr. Drumwright's supplemental report that specifically cite to and quote from the deposition aid used at Ms. Boman's deposition are appropriate, it should strike all other portions of the report citing to or referencing documents that were available at the time Dr. Drumwright disclosed her affirmative opinions.

3

here, all but one of the documents on which the new expert opinions are based were available" to Dr. Drumwright prior to her opening report. *Carter*, 2003 WL 22232844, at *2.

**Second**, Plaintiffs cannot establish that the belated disclosure was either substantially justified or harmless. Plaintiffs incorrectly assert that the late disclosure is justified because the 30(b)(6) deposition of Emilie Boman took place after Dr. Drumwright's opening report was submitted. But Dr. Drumwright does not cite to any substantive deposition testimony by Ms. Boman. *See* Ex. 1. Instead, she cites to exhibits used during Ms. Boman's deposition, all but one of which was available to her prior to the September 26 opening report deadline. As such, the Drumwright Supplemental Report is merely Dr. Drumwright's effort to belatedly "strengthen or deepen opinions expressed in the original expert report" without relying on any "new" information and is thus unjustified. *Plumley*, 836 F. Supp. 2d at 1062 (citation and quotations omitted).

For these reasons, Dr. Drumwright's supplemental report should be stricken, If, however, any portion of the supplemental report is allowed to stand, Uber requests an additional 1.5 hours of deposition time, prior to the deadline for the submission of Rule 702 motions, to question Dr. Drumwright about this report.[2]

**Plaintiffs' Position:**

Dr. Drumwright's supplemental report (Ex. 1) contains no new opinions and is based entirely on a 30(b)(6) deposition that occurred after the deadline for her primary report, and critically, a document prepared by Uber and produced just before that deposition. Accordingly, the report is a timely and proper supplement under the Federal Rules. Although Uber was on notice that Dr. Drumwright would supplement her report, and Uber received the supplement well in advance of Dr. Drumwright's deposition, Uber declined to ask any questions about it. No additional deposition is warranted. The motion to strike should be denied.

**Dr. Drumwright's primary report**. Dr. Drumwright is an expert in marketing, strategic communications, ethics, corporate social responsibility, and corporate governance. ECF 4352 (Drumwright Primary Rpt.). In her primary report, Dr. Drumwright opines that "Uber's [public relations strategy] was unreasonable, reckless, and irresponsible in using dark-PR tactics to get its nonprofit partners to 'safetywash' its brand image, and in doing so, Uber's marketing and strategic communications fell short of the norms, guidelines, and standards Uber set for itself, as well as those described by numerous leading professional organizations." *Id.* at 6; *see also id.* at 158-166 (describing how Uber used nonprofits in this way). Dr. Drumwright's opinions are relevant to whether Uber sought to promote safety, or instead merely the perception of safety, and therefore assist the jury in evaluating whether the company was negligent or reckless. Dr. Drumwright's opinions also respond to Uber's reliance on these very same nonprofits in its defense. *See* Ex. 2 (excerpts from JCCP trial relying on non-profit vouching).

---

[2] Plaintiffs' assertion that Uber raised no objection to Dr. Drumwright's supplemental report at the time of her deposition, and simply failed to ask Dr. Drumwright about it, is false. Uber's counsel expressly held open Dr. Drumwright's October 26, 2025 deposition to address the supplemental report at a later date in the event that its then-forthcoming motion to strike the report was not granted. *See* **Exhibit 6**, Drumwright Dep. 305:2-17.

**The October 1, 2025 30(b)(6) Emilie Boman Deposition**. After months of negotiations, the parties agreed that a 30(b)(6) deposition concerning Uber's relationships with non-profits would occur on October 1, 2025. In the hours prior to the deposition, Uber provided a sixty-page "deposition aid" (Ex. 3) aimed at addressing Topic No. 3 from the deposition notice:" "Uber's payments to nonprofit organizations whose work involves combatting sexual violence (including the amount(s), date(s), and circumstances of the payment(s)." The sixty-page document was consulted extensively by the witness during the deposition. *See, e.g.*, Ex. 4 (dep. excerpts). The deposition, deposition aid, and other exhibits used during the Boman deposition laid out the depth and breadth of Uber's relationship with non-profits, both financially and in terms of Uber's influence over the non-profits, including ghostwriting for them.

**Dr. Drumwright's Supplemental Report.** Following the Bowman deposition, Dr. Drumwright served her supplemental report. Uber claims it had "no advance notice" of the supplement, but that is not true. Plaintiffs notified Defendants that Dr. Drumwright would supplement her report based on new evidence, which Defendants acknowledged. *See* Ex. 5 (10/10/25 email). The report offers no new opinions; instead, it only accounts for additional, new evidence concerning Uber's relationships with non-profits. Ex. 1 at 1. The report addresses the specific amounts of money Uber paid to the non-profits, and the ethical implications of the same, as made clear by the Boman deposition, Deposition Aid, and other exhibits introduced, authenticated, and discussing during the deposition. The vast majority of footnotes to the report are to the deposition, its exhibits (including the Deposition Aid), and to relevant related published literature supporting the points Dr. Drumwright makes concerning those documents.

**Argument.** Dr. Drumwright's supplemental report is a timely and appropriate supplemental report. Experts routinely supplement their reports to account for new evidence. *See, e.g.*, *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 2020 WL 8621524, at *8 (S.D. Cal. June 12, 2020) (denying motion to strike supplement report that was "limited in scope to the new survey evidence"); *Sherwood v. BNSF Rwy. Co.*, 2018 WL 3340571, at *7 (D. Idaho July 6, 2018) (same).

Upon receipt of the new evidence—the Boman 30(b)(6) deposition and exhibits—Dr. Drumwright undertook her review to determine whether a Supplemental Report was needed. The Supplemental Report does not offer any new opinions, rather it provides additional basis for her opinions. The details of Uber's payments to non-profits, information not available prior to the deposition, provided further support for the opinions she offered in her Opening Report. The Boman deposition and exhibits also demonstrated the transactional nature of Uber's relationships with nonprofits, and the impact Uber's payments had on the non-profits, including the impact on their public statements about Uber. Further, Dr. Drumwright worked diligently to complete her report in advance of her deposition such that counsel for Uber would have sufficient time to review it prior to her deposition.

Uber argues that the documents used in the Boman deposition were available to Dr. Drumwright before the deposition, making the supplement inappropriate. That is incorrect. The Boman deposition covered topics that were directly relevant to the opinions offered in Dr. Drumwright's opening report. To assist the witness in her testimony, Uber created a deposition aid (Ex. 3), to which Dr. Drumwright cites extensively in her supplemental report. The 60-page deposition aid details the amounts of money Uber paid to each non-profit (to the extent Uber has records), and for which programs. This information was not knowable prior to the deposition. To the contrary, the Deposition Aid explains that it was created by "multiple individuals from Uber's finance, legal, and policy teams," who reviewed "finance databases and databases containing purchase orders." Ex. 3 at 1.The information is not only relevant standing alone, but also provides crucial context to documents showing the extent to which Uber

controlled the non-profits' amplification of Uber's message. *See, e.g.*, Ex. 1 at 19 (showing ghostwriting).

None of the cases Uber cites reflects the facts here. *See Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) ("opinions in [expert's] most recent declaration depart substantially from the ones he submitted" before); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *7 (N.D. Cal. Dec. 15, 2014) (expert did not even "claim that" the "new … analysis" was "based on information previously unavailable or unknown."); *Carter v. Finely Hosp.*, 2003 WL 22232844, at *3 (N.D. Ill. Sept. 22, 2003) (court rejected claim that the other party "improperly withheld" evidence).

Uber asserts that the supplement is untimely, but that is incorrect. Supplements are due with pretrial disclosures, which are not due until December 2. Fed. R. Civ. P. 26(e)(2); Breyer Civil Trial Standing Order. Finally, even if the Court assumes the disclosure was belated, any late disclosure was harmless. *See* Fed. R. Civ. P 37(c)(1). The supplemental report was disclosed in advance of Dr. Drumwright's deposition and the rebuttal date. *See Intex Rec. Corp. v. Bestway USA Inc.*, 2023 WL 9687197, at *6 (C.D. Cal. Nov. 27, 2023) (late report disclosure harmless where opposing party had opportunity to depose and rebut). In confirming Dr. Drumwright's deposition, Plaintiffs expressly stated that the deposition was meant to cover both Dr. Drumwright's opening report and supplemental report. Uber never objected. Instead, during Dr. Drumwright's deposition, counsel for Uber declined to ask any questions about the Supplement Report. Nor did Uber serve rebuttal opinions in response to either of Dr. Drumwright's reports (indeed, Uber disclaimed any intent to rebut Dr. Drumwright, ECF 4193 at 3). Uber now requests an additional 90-minute deposition, but offers no explanation for why it did not take advantage of the deposition time it already had.

**CERTIFICATE OF SERVICE**

On November 14, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

<u>/s/Laura Vartain Horn</u>

1

## ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

DATED: November 14, 2025

<u>*/s/ Laura Vartain Horn*</u>

KE 130515728.6