# EXHIBIT 3

# Fiscal Note

**BILL #** HB 2652  **TITLE:** independent contractors; criteria

**SPONSOR:** Norgaard  **STATUS:** Senate Engrossed

**PREPARED BY:** Hans Olofsson

**Description**

If specific conditions are met, the bill provides that for purposes of all state and local laws, regulations and ordinances, including employment security and workers' compensation laws, a "qualified marketplace contractor" will be treated as an independent contractor relative to a "qualified marketplace platform."

A qualified marketplace contractor is a person that enters into an agreement with a qualified marketplace platform to use its digital platform in order to obtain access to third-party customers. A qualified marketplace platform refers to a business that operates a digital website or smartphone application that facilitates the provision of services by qualified marketplace contractors to their customers. One example of such "on-demand economy," is a business that allows users to find and order food from restaurants in their vicinity that deliver the food to them via a smartphone app or digital website. Another example is a business that provides a mobile app that connects passengers with drivers for hire.

**Estimated Impact**

The bill could have both positive and negative impacts on the state General Fund, but they are difficult to quantify in advance. The bill does not directly affect General Fund revenue collections but may potentially have secondary impacts.

The Arizona Department of Revenue (DOR) has not provided a fiscal impact estimate of the bill.

**Analysis**

The website "The On Demand Economy" lists a total of 676 companies that provide on-demand services through digitally based marketplaces (primarily mobile) listed in 14 categories, including delivery, home services, and transportation. The exact number of such companies operating in Arizona is unknown. However, based on information provided by representatives of the on-demand industry, there are at least 9 such companies currently operating in the state.

Insofar as on-demand businesses currently operating in Arizona already hire independent contractors that would meet the bill's definition of a "qualified marketplace contractor," there would be no fiscal impact. The JLBC Staff does not have the required data or legal expertise, however, to determine to what extent that would occur.

The bill could have several indirect effects. Potential negative impacts could come from existing businesses that would change their operations from being an employee-based model to an independent-contractor based model using a digital platform, as result of the legislation. While businesses are required to withhold part of an employee's paycheck for income tax purposes, the same requirement does not apply to independent contractors. Instead, independent contractors are responsible for making their own estimated payments in 4 installments prior to filing their tax return. However, without the tax being automatically paid to the state through a system of withholding, there is a potential risk that some independent contractors may choose to underreport their actual earnings to the state. Insofar as this would occur, the state would likely incur a reduction in income tax collections. However, to quantify such revenue loss would be difficult.

(Continued)



Potential positive impacts could come from growth in the on-demand economy that would not occur absent the proposed legislation. Proponents of the legislation argue that the lack of clarity under current "worker classification statutes" could serve to inhibit growth of the on-demand economy since such "legal uncertainty" could increase the risk of lawsuits. Therefore, they argue that by removing such uncertainty, the bill would promote growth of the on-demand economy. Thus, to the extent that such businesses and their independent contractors generate taxable income for the state that would not exist without the bill, there would be revenue gains for the state. However, such gains are difficult to determine in advance.

As noted above, while the bill does not appear to have any direct impact on the General Fund, it could have several indirect (positive and negative) impacts. However, whether the overall impact would be a "net positive" or "net negative" for the state General Fund remains uncertain. As noted in a recent publication by the Centre for European Policy Studies (CEPS): "Although the sharing economy has been extensively treated in journalistic literature, the academic literature is rather limited." This is due to the lack of available data for the academic community to analyze this new and rapidly growing segment of the economy. For this reason, it is also difficult for the JLBC Staff to ascertain whether the bill would result in a net increase or decrease of the General Fund relative to current law.

**Local Government Impact**

Each year, incorporated cities and towns receive 15% of income tax collections from 2 years prior. Insofar as the bill would change state income tax collections relative to current law, local government would also be affected.

5/4/16