# EXHIBIT 4

Clerk of the Superior Court
*** Electronically Filed ***
03/15/2023 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2018-005515                              03/14/2023

| | |
|---|---|
| HONORABLE JOAN M. SINCLAIR | CLERK OF THE COURT<br>S. Motzer<br>Deputy |
| GABRIEL JAMES COSLETT | NATHANIEL B PRESTON |
| v. | |
| YURIC ALEXANDER HANNART, et al. | ADAM B CAMPBELL |
| | BRIAN DEL GATTO<br>JENNIFER R REBHOLZ<br>JUDGE SINCLAIR |

UNDER ADVISEMENT RULING

      Defendants Uber Technologies, Inc., and Rasier, LLC (a subsidiary of Uber) (jointly "Uber") filed a Motion for Summary Judgment on October 7, 2022. The matter has been fully briefed. Oral argument was held on February 24, 2023, and the matter was taken under advisement. The Court now rules.

      Under Rule 56(a) of the Arizona Rules of Civil Procedure "[t]he court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating both absence of any factual conflict and right to judgment. *Nat'l Bank of Ariz. v. Thurston*, 218 Ariz. 112, 114-115, ¶ 12 (App. 2008).

      Uber asserts that it is entitled to summary judgment because driver Hannart is an independent contractor. Motion, p. 2. Plaintiff Coslett ("Coslett") claims that Hannart is an "employee, agent, and/or representative" of Uber (Complaint, ¶¶ 7-8) and therefore, both companies are "vicariously and jointly and severally liable" for the vehicular accident. Complaint ¶¶ 24, 30. The Court agrees with Uber for the reasons noted below.

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2018-005515                                                                03/14/2023

A.R.S. 1603(E)(2)(a)-(b) defines a qualified marketplace platform as an entity that both:

> (a) Operates a digital website or digital smartphone application that facilitates the provision of services by qualified marketplace contractors to individuals or entities seeking such services.
>
> (b) Accepts service requests from the public only through its digital website or digital smartphone application, and does not accept service requests by telephone, by facsimile or in person at physical retail locations.

This is what Uber does. Uber is a qualified marketplace platform. Hannart, therefore, is a qualified marketplace contractor. By statute, "[a] qualified marketplace contractor shall be treated as an independent contractor for all purposes under state and local laws, regulations and ordinances... ." A.R.S. §23-1603.

The Technology Services Agreement ("TSA") between Uber and Hannart identifies Hannart as an independent contractor, although the language of the contract is not controlling here. Motion, Exhibit E. Even under common law, the distinction between an independent contractor and an employee "rests on the extent of control the employer may exercise over the details of the work." *Munoz v. Indus. Comm'n of Arizona*, 234 Ariz. 145, 150, ¶15 (App. 2014) (internal quotations and citations omitted).

Many of Coslett's asserted proofs of Uber's control over Hannart are mandated by the statutes. Response, pp. 11-12. A.R.S. § 28-9555 requires the potential driver for a digital network company to submit an application to the company, and the company must conduct a criminal background check, obtain a driving history, and ensure the vehicle meets safety standards through periodic inspection. Despite all of these requirements, these drivers are still considered independent contractors under A.R.S. § 23-1603(A).

The fact that "Uber requires its drivers to fill out incident reports in the event of an accident," (Response, p. 12) is not significant, because transportation network companies like Uber are required to provide insurance coverage under A.R.S. § 28-4038. Similarly, the Uber Community Guidelines (Response, Exhibit 26) are basic guidelines and rules for both riders and drivers, and also do not show control by Uber over Hannart.

Hannart signed the TSA with Rasier in 2016 and accepted the Arizona addendum 2017 which allowed him to use the Driver App. Motion SOF, § 5, 9. His pay was dependent on the riders he picked up as opposed to any salary or hourly wage received. Exhibit A-1 (TSA, §§ 4.1—4.5). He had complete control over his work hours and days as well as which riders to accept or decline. Motion SOF, ¶¶21, 26, 28. Hannart was free to pursue employment with other driving services,

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2018-005515 03/14/2023

and he apparently did. Motion SOF, ¶ 18; Reply SOF, ¶ 19; Defendants' Controverting SOF Exhibit 1 ("Deposition of Yuric Hannart"), p. 32. He used his own vehicle and received a 1099 tax form. Motion SOF, ¶¶ 22, 30.

Uber does not independently evaluate driver performance, like conducting a supervisor ride along, but instead bases any performance feedback on customer ratings. Motion SOF, § 31. There is no boss or supervisor from Uber to whom Hannart reports his results. Defendants' Controverting SOF Exhibit 1 ("Deposition of Yuric Hannart"), p. 31, 38. Either contracting party was free to terminate the TSA without cause at any time. Exhibit A-1 (TSA § 12.2). Uber does not set a quota for the number of rides a driver must provide within a certain period. All of these facts demonstrate that Hannart was an independent contractor, not an employee.

Because Hannart was an independent contractor, Uber cannot be vicariously liable for Hannart's actions. In addition to these arguments, Coslett also argues that Uber has a non-delegable duty, there was a joint venture between Uber and Hannart, and there is independent negligence based on Uber's business model. These latter arguments do not appear in the Complaint and so the Court could summarily dismiss them. Nevertheless, those arguments also do not support Coslett's claims.

The TSA clearly states that Uber and Hannart are not establishing a joint venture. Defendants' Exhibit A, Section 13.1. A joint venture requires "(1) a contract; (2) a common purpose; (3) a community of interest: (4) an equal right to control; and (5) participation in the profits and losses." *Tanner Companies v. Superior Ct.,* 144 Ariz. 141, 143 (1985) (citation omitted). In this situation, Uber and Hannart do not share an equal right to control and there is no participation in the profits and losses. Uber does not control the time or manner of how Hannart provides transportation for riders. Hannart has no control over how Uber manages its business. Hannart is paid based on the rides he provides; he has no share in the overall profits or losses of Uber. This is not a joint venture.

Nor is driving an inherently dangerous activity such that it creates a non-delegable duty in Uber. Non-delegable duties are imposed by "statute, by contract, by franchise or charter, or by the common law." *Santorii v. MartinezRusso, LLC,* 240 Ariz. 454, 458, ¶14 (App. 2016) (citation omitted). An activity is inherently dangerous "(1) if the risk cannot be eliminated through the exercise of reasonable care; and (2) the risk is to the person, land or chattels of another." *Pride of San Juan, Inc. v. Pratt*, 221 Ariz. 337, 340, ¶11 (App. 2009) (internal quotations and citations omitted). Coslett has provided no evidence to support the claim that driving is an inherently dangerous activity. Additionally, Coslett has also provided no evidence to support the claim that Uber's business model presents a special danger to motorists.

Therefore,

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2018-005515                                                      03/14/2023


**IT IS ORDERED** granting Uber's motion for summary judgment.

**IT IS FURTHER ORDERED** that Defendants shall submit a proposed order of judgment to the Court by April 3, 2023.