*[Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br>**JOINT STATUS REPORT FOR NOVEMBER 20, 2025 DISCOVERY STATUS CONFERENCE**<br><br>Judge:     Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

# JOINT STATUS REPORT

In advance of the discovery status conference set by the Court for Thursday, November 20, 2025, Plaintiffs and Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Defendants") (jointly, "the parties"), respectfully submit this Joint Status Report.

## I. Clawback Cut-off Date

**Plaintiff's Position:**

On November 17, 2025, Plaintiffs requested a meet and confer with Defendants regarding Plaintiffs' request for an order establishing a clawback cut-off across this MDL, after which Uber may not assert additional clawbacks of documents. As discovery for the Wave I Bellwether cases has ended and the pretrial conference for the first Bellwether case is set for January 6, 2025, Plaintiffs believe an order establishing a clawback cut-off across this MDL is appropriate at this time, after which Uber may not assert additional clawbacks of documents.

Uber's repeated and extensive clawbacks have consumed substantial party and judicial resources, delayed proceedings, and imposed unnecessary burdens. Over the past year, this Court and Special Master Jones have provided extensive guidance on privilege issues, including Uber's repeated efforts to claw back documents previously de-designated during the Court-ordered re-review process. Uber should be applying this Court's prior guidance to appropriately designate materials and thus eliminate the need for further clawbacks.

To date, Uber has issued more than 30 clawback notices covering over 800 documents. Given this history, a firm cutoff date is warranted to prevent additional disruption and delay as this litigation proceeds to trial. Otherwise, Uber may attempt to clawback additional documents on the eve of trial, potentially delaying trial. As such, Plaintiffs believe a clawback cut-off is appropriate at this time. Plaintiffs will meet and confer with Defendants in an attempt to resolve this issue and intend to bring the issue to the Court if unable to reach a resolution.

**Defendants' Position:**

Plaintiffs' position would contravene existing orders of this Court by effectively creating a blanket waiver of privilege as to more than 1.5 million documents Uber produced in this litigation.

The Court should not entertain Plaintiffs' proposal to significantly revise Pretrial Order No. 14 and undo a substantive legal protection in the context of a status conference, without a conferral or briefing. It is not ripe for resolution. Plaintiffs raised this topic via email for the first time on November 12, and Defendants did not receive Plaintiffs' position on this matter until the night of November 13. An issue of this magnitude, which would have lasting repercussions for Defendants, cannot be appropriately resolved based on truncated position statements contained in a joint status report. The fact that Plaintiffs would try to seek an impromptu decision to foreclose Defendants' clawback rights under PTO 14, and the Federal Rules, without the benefit of conferral, full briefing, and argument, speaks to the flaws in their position. Even a superficial examination of Plaintiffs' request reveals that it is legally untenable for many reasons, including:

- *First*, "the attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). The Court should not indulge Plaintiffs' attempt to blanketly and permanently abrogate this sacrosanct protection in the name of supposed expediency.

- *Second*, the relief Plaintiffs seek would upend the protections afforded under Federal Rule of Evidence 502, as enacted by Congress, and stipulated to by the parties in Pretrial Order No. 14. Dkt. 396.

- *Third*, a wealth of cases, including from the Ninth Circuit, dictate that waiver of privilege should be analyzed in a fact-specific manner. *See, e.g.*, *U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). Any waiver of privilege must be "narrowly construed." *See, e.g.*, *Garcia v. Progressive Choice Ins. Co.*, 2012 WL 3113172, at *3 (S.D. Cal. July 30, 2012). Plaintiffs' request for a cutoff date for all clawbacks in this case cannot be squared with this authority. The effect of such a cutoff date would be a prospective blanket waiver of privilege for anything not clawed back by an arbitrary deadline, which is incompatible with the fact-specific analysis that the Ninth Circuit requires.

- *Fourth*, Defendants produced documents in this case in reliance upon the parties' agreement and the Court's order that privileged content could be clawed back under Pretrial Order No. 14. Plaintiffs cannot reap the benefits of Defendants' comprehensive (and, in some ways, overly

comprehensive) document production and the speed with which it was produced and then later attempt to undo the negotiated protections that made the scope and timing of the document production possible.

- *Fifth*, Pretrial Order No. 14 already dictates the timeline for exercising clawback rights. It requires a producing party to issue a clawback notice "within twenty-one (21) calendar days, in writing, upon discovery that a document has been produced for which the Producing Party asserts privilege and/or other protection." Dkt. 396, para. 4. Logically, it sets no outer limit for issuing clawback notices, because there is no finite period during which a party might discover that a privileged document has been produced.

- *Sixth*, the relief that Plaintiffs seek is unnecessary. In the past three months (including through trial in the JCCP matter), Defendants have clawed back only 13 documents. Plaintiffs did not even challenge seven of the 13 recent clawbacks. Challenges as to the six remaining clawbacks were quickly resolved – the parties resolved two through the conferral process, and the Special Master found that the other four were privileged in whole or in part. Plaintiffs' claim that Defendants may clawback additional documents, potentially delaying trial, is not only pure speculation, but it is contradicted by the recent JCCP trial experience. There was no delay as a result of the handful of clawbacks leading up to trial, with the small handful of challenges that were arguably at all material resolved by the Special Master in a matter of days. Moreover, Plaintiffs' speculative claims of "delay" miss the point, because Plaintiffs are not entitled to use privileged and protected documents at trial.

The Court can and should reject this request outright, which is not ripe for decision when raised for the first time through a status conference report. If the Court is nevertheless inclined to consider Plaintiffs' improper request further, Defendants respectfully request the opportunity to provide full briefing and argument on this consequential issue.

II. **A.R Bellwether Case Discovery**

**Defendants' Position:**

Pursuant to the Court's Order dated September 29, 2025, the parties conducted additional depositions of Plaintiff A.R. and her friend, I.E., on the sufficiency of Plaintiff Counsel Peiffer Wolf's document collection and production pursuant to earlier discovery requests and deposition. The

4

testimony made clear that Peiffer Wolf failed to instruct I.E. to conduct appropriate collections of responsive documents, failed to provide instructions on preservation, failed to renew collections prior to deposition pursuant to notice requirements, and in fact explicitly instructed I.E. not to share responsive documents for collection and production. Peiffer Wolf reassured I.E. that they would simply represent to Defense Counsel that I.E. had no responsive documents, when I.E. in fact had collected many. A.R.'s testimony indicated that A.R. timely provided responsive materials to her counsel, yet those materials were not produced until September 5, after the depositions of A.R. and other witnesses. In light of these apparent discovery deficiencies, and in an effort to assess and remedy the prejudice they have caused, Peiffer Wolf agreed to re-collect, re-review, and re-produce documents responsive to discovery requests and deposition notices from each fact witness they represented in A.R.'s case, including A.R. Peiffer Wolf agreed to conduct this discovery pursuant to a discovery protocol negotiated and agreed upon by the parties. To that end, Defense Counsel provided Peiffer Wolf with a draft protocol on October 27. Despite numerous follow-ups, Peiffer Wolf has not substantively responded to Defendants' proposed protocol. While the parties do intend to meet and confer on the issue, we raise it to the Court's attention as an ongoing discovery effort that may require future intervention.

**Plaintiffs' Position:**

Pursuant to the Court's Order dated September 23, 2025 [ECF No. 3985], further depositions of Plaintiff A.R. and her friend, I.E., occurred. Despite these further depositions which made clear that Plaintiff and her friend I.E. had fully complied with preservation and production requirements, Plaintiff's counsel agreed to negotiate a discovery protocol to satisfy Uber's lingering concerns. The parties continue to meet and confer on the issue but given that this case is not set for trial, and Plaintiff's counsel represents the trial case, Plaintiff Jaylynn Dean, this issue is not pressing and not ripe for Court intervention.

### III. Ongoing Discovery

**Plaintiff's Position:**

Counsel are meeting and conferring regarding outstanding issues following the October 14

continued 30(b)(6) deposition of Sunny Wong (re S-RAD), as well as the November 7 30(b)(6) deposition of Todd Gaddis (re Flack data). There are overlapping issues regarding (a) new data sources that had not formerly been disclosed but came to light during Mr. Gaddis' deposition, (b) outstanding items Mr. Wong agreed to provide after his deposition, and (c) information about alternative drivers who could have been matched with the bellwether plaintiffs. Counsel are working together on these issues, but Plaintiffs request an expedited briefing schedule should those efforts prove unsuccessful. Plaintiffs propose that the parties complete the meet and confer process by November 20, 2025 and file a joint letter brief by November 26, 2025.

Additionally, on October 6, 2025, Plaintiffs asked Uber to supplement its prior responses to Plaintiffs' document requests regarding Women-to-Women ride-matching ("W2W") and to produce W2W-related discovery from December 1, 2024 through October 1, 2025. Plaintiffs also requested that Uber search the files of additional individuals identified during the Esteves Rule 30(b)(6) deposition as being involved in W2W.

On October 28, 2025, Uber agreed to conduct custodial collections for Mariana Esteves, Sachin Kansal, Mike Akamine, Roger Kaiser, and Greg Brown for the December 1, 2024–October 1, 2025 period, and to produce non-privileged, responsive documents on a rolling basis. Defendants also stated on October 28 that they would begin collecting W2W documents that week and would provide a production timeline. To date, Defendants have not yet provided a date by which they will begin and finish producing this discovery on a rolling basis.

**Defendants' Position:**

After Plaintiffs unsuccessfully sought more S-RAD discovery, the Court outlined the process to be followed if Mr. Wong was "unable to confirm or correct" any "specific representations by Uber" through sworn testimony. See ECF 4060. The Court ordered Plaintiffs to "identify any such representations no later than 2 business days after Wong's deposition, and Uber shall provide verifications no later than three business days after Plaintiffs' identification of the representations at issue." Instead, Plaintiffs sent a list of follow up questions for the first time on November 11, **nearly a full month after** Mr. Wong's October 14 deposition. Nonetheless, Uber responded in good faith to

clarify any of Plaintiffs' questions that were already answered in the testimony (and directed them to that testimony) or to provide information that Mr. Wong testified that he would obtain. Ignoring the Court's prior ruling on this issue, Plaintiffs are now demanding answers to questions that are completely untethered to "confirm[ing] or correct[ing]" any "specific representations by Uber," such as calculations of new data points that Mr. Wong testified are not calculated in the ordinary course of business. Plaintiffs are not entitled to this new information, and even if they were, they have waived their opportunity to request it by not doing so by the October 16 deadline set by the Court.

As to the 30(b)(6) deposition regarding Flack (which was taken on November 7 after Plaintiffs' counsel canceled a prior date (October 30) due to illness), Plaintiffs waited a full week before asking to meet and confer for the first time on the afternoon of Friday, November 14. Defendants will confer with Plaintiffs regarding these just-identified requests, although note that many seek information or documents that are plainly beyond the scope of the Court's October 3 order that permitted the limited Flack deposition. Moreover, given Plaintiffs' delay, any purported need to address these requests urgently is one of Plaintiffs' making and Defendants object to setting an abbreviated schedule for conferral and briefing on issues that have only just been identified.

Defendants agreed to conduct *new* W2W collections from 5 identified custodians for the period December 1, 2024 to October 1, 2025. Defendants commenced these new collections promptly at the end of October, onboarded and trained a review team, and are beginning to review materials. Defendants expect that they will be able to begin their rolling production with an initial tranche of documents in early December. The Court already determined that Plaintiffs' W2W-related discovery requests served on October 6 are untimely as to Wave 1 cases (ECF 4123 at 2) so to the extent Plaintiffs seek any further expedited schedule, it is unwarranted.

### IV. B.L. Bellwether Case Discovery

**Defendants' Position:**

Due to Plaintiff's recent disclosures, Defendants expect to seek additional case-specific discovery in this bellwether case, including (1) depositions of three of Plaintiff's friends (all of whom Plaintiff's expert Dr. Mechanic interviewed and relied on in her evaluation); (2) depositions of new

mental health providers Plaintiff began to see in August; and (3) depending on information from the depositions of the treaters, potentially another deposition of Plaintiff. In addition, Plaintiff's counsel has produced heavily redacted versions of text messages, social media messages, and emails. Plaintiff's counsel claims these are between Plaintiff and witnesses. Defendants have requested Plaintiff's counsel provide unredacted versions, and Plaintiff's counsel has partially complied. Defendants will seek the Court's assistance in compelling production of unredacted versions of non-privileged information to the extent the parties are not able to resolve remaining issues over redacted materials.

**Plaintiffs' Position:**

The parties are continuing to meet and confer regarding the issues raised by Defendants. As discussed with Defendants, it is Plaintiffs position that it is not appropriate to reopen discovery on these issues at this time. Plaintiff has advised Defendants that the information they seek can be obtained through the deposition of Dr. Mechanic, which is scheduled to take place in the next few weeks. If, after conducting Dr. Mechanic's deposition, Defendants continue to believe that more depositions are necessary, the parties can meet and confer regarding the scope of those depositions, and any additional discovery can be set on a schedule based on the discovery deadlines and assigned trial date in the B.L. case. This case is not yet set for trial and B.L. continues to receive medical treatment. Finally, Defendants have not raised any concerns regarding redactions and the parties should be directed to meet and confer on those issues.

**Defendants' Response:**

The issue regarding redactions was raised in Defendants' email on October 28, 2025 to Rachel Abrams, Sommer Luther, and Tara Doyle. Defendants followed up on November 17 to request unredacted versions of the messages prior to Dr. Mechanic's deposition, as the heavily redacted messages include messages with the collateral source witnesses Dr. Mechanic claims to have interviewed, and who Plaintiffs' counsel objects to Defendants deposing. Dr. Mechanic's deposition

is scheduled to take place in B.L. on November 22. Defendants have also requested Dr. Mechanic provide her invoices and notes from her work in B.L. by November 19. Defendants request Plaintiffs' counsel provide the invoices, notes, and unredacted messages no later than November 19 to allow Defendants time to prepare for Dr. Mechanic's deposition.

V.   **WHB 318 Bellwether Case**

The parties have mutually agreed to extend the deadlines in WHB 318 per a Stipulation that was filed on November 17, 2025. Should there be any issues with the revised deadlines, the parties will meet and confer in good faith to resolve said issues.

VI.   **PTO 8 Letter Briefs Update**

The following PTO 8 letter briefs are currently pending before the Court: 1) Joint letters regarding supplemental/rebuttal reports of Plaintiff's experts (Dr. Drumwright and Dr. Cameron) (ECF Nos. 4392, 4398), and 2) Joint letters regarding rebuttal reports of Defendants' experts (Dr. Orchowski and Dr. Zgoba). (ECF Nos. 4384, 4386). The Parties will be prepared to discuss these letter briefs at the Discovery Status Conference.

VII.   **Updates on Deposition Scheduling**

Attached as Exhibit A is a chart listing the completed and upcoming depositions.

By: */s/ Roopal P. Luhana*
ROOPAL P. LUHANA *(Pro Hac Vice)*
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*

SARAH R. LONDON (SBN 267083)
**LIEFF CABRASER HEIMANN & BERNSTEIN**
275 Battery Street, Fl. 29
San Francisco, CA 94111
Telephone: (415) 956-1000
Email: slondon@lchb.com

By: */s/ Christopher Cox*
**KIRKLAND & ELLIS LLP**
CHRISTOPHER D. COX
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN

**SHOOK, HARDY & BACON L.L.P.**
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON
ALYCIA A. DEGEN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG

| | |
|---|---|
| RACHEL B. ABRAMS (SBN 209316) **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP** 555 Montgomery Street, Suite 820 San Francisco, CA 94111 Telephone: (415) 426-5641 Email: rabrams@peifferwolf.com *Co-Lead Counsel for Plaintiffs* | JONATHAN SCHNELLER *Attorneys for Defendants* UBER TECHNOLOGIES, INC., RASIER, LLC, and RASIER-CA, LLC |

## ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: November 17, 2025         By: /s/Roopal P. Luhana

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

Dated: November 17, 2024         By: /s/Roopal P. Luhana