Bret Stanley (TX SBN 24075116)
bstanley@johnsonlawgroup.com
**Johnson Law Group**
2925 Richmond Ave, Suite 1700
Houston, TX 77098
Telephone: (713) 626-9336

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFF COUNSEL BRET STANLEY'S RESPONSE IN OPPOSITION TO UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S MOTION FOR SANCTIONS**<br><br>Judge: Honorable Lisa J. Cisneros<br>Courtroom: 6 – 17th Floor |
| This Document Relates to:<br><br>All Cases | |

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. LEGAL STANDARD .................................................................................................. 1

    A. Sanctions not to be awarded if Attorney is Substantially Justified or if the attorney does not act in bad faith, vexatiously, wantonly, or for oppressive reasons. ............................................................................................................. 1

    B. Sanctions sought connected to the alleged violation must be reasonable. ............... 2

III. FACTS ......................................................................................................................... 3

IV. ARGUMENT ............................................................................................................. 11

    A. Bret Stanley had substantial justification for any non-compliance with this Court's Order and did not act in bad faith, vexatiously, wantonly, or for oppressive reasons ................................................................................................. 11

    B. Uber's Claimed Fees are not Causally Connected to the Alleged Violation, are not "Reasonably Incurred" and not Based on What Defendants Actually Paid. ........................................................................................................................ 12

V. CONCLUSION .......................................................................................................... 15

I.  **PRELIMINARY STATEMENT**

Bret Stanley, individually, respectfully submits Plaintiffs' Response in Opposition to Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC.'s (hereinafter referred to as "Uber") Motion to for Sanctions against Bret Stanley, whereby Uber seeks sanctions against Bret Stanley due to this Court's finding that Bret Stanley breached Protective Order entered in this MDL. *See* Order at ECF 3708.  In Uber's Motion for Sanctions against Bret Sanley, Uber seeks Sanctions in the amount of $168,572.97 for the time and hours associated to this Court's finding the Protective Order was breached on August 18, 2025. *See* ECF 4233 at 13.

Prior to this court's August 18, 2025 Order, a legal question existed as to whether the use of the *names alone* of Uber's internal policies outside of this litigation was a breach of confidentiality. This Court answered that question in its Order. *See* ECF 3708. In the wake of this Order, Bret Stanley had substantial justifications for his actions in compliance, and did not act in bad faith, vexatiously, wantonly, or for oppressive reasons. Finally, Uber has not met its burden of being awarded sanctions because they seek fees from prior to this Court's August 18, 2025 Order, have not shown their fees are reasonable, and have not provided invoices or proof of payment related to Uber's actual economic loss.

II. **LEGAL STANDARD**

   A.  <u>Sanctions not to be awarded if Attorney is Substantially Justified or if the attorney does not act in bad faith, vexatiously, wantonly, or for oppressive reasons.</u>

Rule 37(b)(2) provides for a range of sanctions based on a party's failure to comply with a court order, including protective orders. *United States v. Nat'l Med. Enters., Inc.,* 792 F.2d 906, 910 (9th Cir. 1986). Further, under Rule 37(b)(2)(C) "unless the failure was substantially justified or other circumstances make an award of expenses unjust," the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." *United States v. Nat'l Med. Enters., Inc.,* 792 F.2d 906, 910 (9th Cir. 1986).

An assessment of attorney's fees is a "less severe sanction" that is "undoubtedly within a

-1-

court's inherent power as well." *Chambers v. NASCO*, Inc., 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (*citing Hutto v. Finney*, 437 U.S. 678, 689, n.14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)). This narrowly defined power can be exercised in certain circumstances. *Id.* (citation omitted). One such circumstance is assessing attorney's fees as a sanction for the "willful disobedience of a court order." *Id.* (*citing Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Another circumstance is awarding attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46, 111 S.Ct. 2123 (citation omitted). In this last instance, if a Court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party." *Id*. at 46, 111 S.Ct. 2123 (citation omitted). This circumstance also extends to when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Id.*

"A district court has the inherent power to sanction for: (1) willful violation of a court order; or (2) bad faith." *Id.* Attorney's fees are appropriate for an attorney's willful violation of a protective order. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). In *Fink v. Gomez*, 239 F.3d 989, 991–93 (9th Cir.2001), it was found that a district court may levy sanctions pursuant to its inherent power for "willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 989 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Id.* at 994.

**B.**   <u>Sanctions sought connected to the alleged violation must be reasonable.</u>

Sanctions must be compensatory, not punitive, and must be limited to fees actually caused by the specific conduct at issue. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108, 137

S.Ct. 1178, 1186 (2017). A sanctions award may redress only the "losses sustained," and may not impose an additional amount as punishment. *Id.* A movant may recover "only the portion of his fees that he would not have paid but for the sanctioned conduct." *Id.* at 110.

If sanctions are granted, the number of hours granted excludes "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S.Ct. 1933 (1983). The moving party bears the initial burden of providing relevant documentation. *Id.* at 433, 103 S.Ct. 1933. Furthermore, while the lodestar amount provides guidance, "[t]here is no precise rule or formula for making these determinations." *Id.* at 436, 103 S.Ct. 1933. A court "necessarily has discretion in making this equitable judgment." *Id.* at 437, 103 S.Ct. 1933. As such, as part of its assessment of the reasonable hours, the Court considers "whether a given legal fee ... would or would not have been incurred in the absence of the sanctioned conduct." *Flowerider Sur*, 2020 WL 5645331, at *5.

**III.   FACTS**
- <u>A true and valid legal issue relating to the confidentiality of the names of Knowledge Base Articles and Policies existed until August 18, 2025.</u>

On May 17, 2024, as a member of the Plaintiff Steering Committee, I began discovery efforts with Uber concerning the production of Knowledge Base Articles and Policies. *See* Exhibit 1, Stanley Declaration at ¶2. Included with the May 17, 2024 email to Uber's Counsel was a spreadsheet listing the names of Knowledge Base Articles and Policies that had been learned about in prior litigation efforts by Bret Stanley. *Id.* Discovery efforts related to Knowledge Base Articles and Polices continued over the course of more than a year, with the parties corresponding regularly over this period, maintaining conferrals, and attending many hearings before Judge Cisneros concerning the production of Knowledge Base Articles and Policy information. *See* Exhibit 1, ¶¶ 2-13. From May 17, 2024 to May 26, 2025, Uber never claimed that my efforts of supplying the names of Knowledge Base Articles and Polices discovered outside of MDL 3084 were a breach of any protective orders. *See* Exhibit 1, ¶¶12-13

Over a year later, on May 26, 2025, for the first time Uber notified Bret Stanley and the

Plaintiffs' Steering Committee of Uber's legal argument that the Protective Order in MDL 3084 had been breached. *See* ECF 4233-2 at ¶2, *See also* 3512-11. On June 2, 2025, I responded to Uber's letter and informed them of the legal bases under MDL 3084's Protective Order that I believed allowed me to use the names of the policies in discovery efforts. *See* Exhibit C, June 2, 2025 Letter. On June 4, 2025, Co-Lead Roopal Luhana responded to Ubers' accusations that Bret Stanley was breaching MDL 3084's Protective Order on behalf of the PSC and provided additional legal analyses and justification for use of the names of policies in discovery efforts. *See* Exhibit D, June 4, 2025 Letter.

Uber claims to have made an offer to "compromise" the dispute concerning Uber's allegations that Bret Stanley breached the protective order. ECF 4233-2 at ¶5-6. On July 11, 2025, Bret Stanley provided extensive details as to why the "compromise" was not workable. *See* Exhibit 1 at ¶20; *See also* Exhibit E at 001-002.

On July 17, 2025, Ms. Gromada replied to my response informing me that Uber intended to file a Motion to Enforce the MDL Protective Order on July 18, 2025. Uber claimed that it was making the filing, "[b]ased on *additional information* we have learned regarding the use of confidential information since our meet and confers." Exhibit E at 001, emphasis added. Presumably the "additional information" learned by Uber was information from Uber's defense counsel in the *Jones* and *Soto* matters that these lawyers had made requests for production related to the lists of Knowledge Base Articles that accompanied a motion to compel by Bruce Stern, lead counsel in the *Lord* matter. *See* Exhibit 1 at ¶22. However, Uber did not inform me who the attorneys in *Soto* and *Jones* were that sought Knowledge Base Materials using the lists of the names of these policies. *Id.* Had Uber informed me that the attorneys in *Soto* and *Jones* were seeking this information, Bret Stanley would have informed these attorneys to not use the materials that were involved in a current confidentiality dispute. *Id.*

Bret Stanley never used or disclosed any protected information in the *Jones* or *Soto* Matters. *See* Exhibit 1 at ¶23. No public disclosure of any protected information was ever filed or used in any hearing in the *Smith, Jones,* or *Soto* matters. *See* Exhibit 1 at ¶24-26.

The only case where material found to be in breach of MDL 3084's Protective Order was filed publicly was in the *Lord* matter. Bruce Stern, Counsel in the *Lord* Matter filed a list of named Knowledge Base Policies and Articles in connection with a Motion to Compel prior to the hearing in MDL 3084 on August 12, 2025.

On August 18, 2025 this court entered an order on Defendant Uber's Motion to Enforce Protective Order requiring Counsel. *See* ECF 3708 at 2; *See* also Exhibit 1 at ¶28 for Order Requirements.

- <u>Compliance Related to the *Smith* Matter</u>

On August 20, 2025, Bret Stanley made notice to all counsel in the *Smith* matter regarding this Court's finding of the breach of the Protective Order. *See* Exhibit F.

On August 21, 2025, Bret Stanley made notice to the Court in the *Smith* matter regarding this Court's finding of the breach of the Protective Order. *See* Exhibit G, August 21, 2025 Email to Judge Gonzales.

- <u>Compliance Related to the *Lord* Matter</u>

Lead Counsel in the *Lord* matter, Bruce Stern, attended the August 12, 2025 MDL 3084 Hearing relating to Uber's Motion to Enforce the Protective Order Against Bret Stanley. *See* Exhibit 1 at ¶31. After witnessing the hearing, Bruce Stern took immediate action. *See* Exhibit 1 at ¶31-32. On August 12, 2025, Bruce Stern filed a Consent Order in the *Lord* matter to remove the material from the Court's Docket that was found to be in breach of MDL 3084's Protective Order. *See* Exhibit I, August 12, 2025 Consent Order Filing. On August 13, 2025, the Court in the *Lord* matter signed the Consent Order and caused Exhibit A to Plaintiff Lord's Motion to Compel Production (the material found to be in Breach of MDL 3084's Protective Order) to be removed

from the Public Docket. *Id.*

On August 20, 2025, Bret Stanley notified opposing counsel in the *Lord* matter of this court's ruling concerning the breach MDL 3084's Protective Order. *See* Exhibit J a 001. This email included instructions for **all counsel** to destroy the previously received version of Exhibit A to Plaintiff's 12 Notice to Produce. *Id.* The email also indicates Bret Stanley's intention to send the notice to the court in the *Lord* matter by email. *See* Exhibit J at 002.

Bret Stanley intended to notify the Court in *Lord* and attempted to deliver an email to Judge Hurd on August 21, 2025. *See* Exhibit 1 at ¶35. However, Bret Stnaley learned later that the email attempted to be sent to the court in the *Lord* matter had not been delivered, but was still in his outbox folder. *Id.* The email was not sent to the court in *Lord* due to my hurried attempt to travel across Texas in the wake of someone close to me passing away on October 20, 2025. *Id.; See also infra* regarding Death of a loved one of Bret Stanley. On August 26, 2025, Bret Stanley notified Uber of this technological error and delivered the Order from MDL 3084 to Judge Hurd in the *Lord* matter. *See* Exhibit K at 001, *See* also Exhibit L, August 26, 2025 Email to *Lord* Court.

- <u>Second Disclosure of Protected Information in the Lord Matter by Bruce Stern</u>

On October 9, 2025, Bret Stanley received an email from Ms. Gromada that lead Plaintiff's attorney Bruce Stern in *Lord* had once again publicly filed the table containing information found to be in breach of MDL 3084's Protective Order. *See* Exhibit M at 001-002. Bret Stanley was shocked to hear this information and had no notice from Bruce Stern that the pleading that was to be filed. *See* Exhibit 1 at ¶37. After being informed by Ms. Gromada of the filing, Bret Stanley immediately contacted Mr. Stern and had a heated conversation with him. *Id.* Mr. Stern claimed that the exhibit with information found to be breach of MDL 3084's Protective Order was filed by mistake and was not intentional. *Id.* Mr. Stern was remined that he should have deleted the offending material as previously requested and that he must take all immediate measures to ensure the filing is removed. *See* Exhibit 1 at ¶37-38. Mr. Stern then contacted the clerk and made a filing

to have the confidential information removed from the docket. *See* Exhibit 1 at ¶37-38.

Bret Stanley was not a signatory to Mr. Stern's second filing, did not review the filing, and took all measures to make sure that Mr. Stern immediately corrected the error. *See* Exhibit 1 at ¶39.

- Compliance in the *Jones* Matter

On August, 20, 2025, Bret Stanley provided notice to Even Lide and Uber's Counsel in the *Jones* matter of this Court's Order. *See* Exhibit N at 001.

On August 14, 2025, prior to this Court entering the Order finding breach of the MDL 3084, Uber's MDL Counsel unilaterally notified Attorney Evan Lide and other counsel in the *Jones* matter of the hearing whereby Judge Cisneros found a Breach of MDL 3084's Protective Order. *See* Exhibit N at 002. Uber did not include Bret Stanley on the August 14, 2025 Communication. *Id.* On August 14, 2025, Attorney Evan Lide withdrew portions of his Notice to Produce Records containing the portions of the Notice to Produce that were found to be in breach of the Protective Order. *See* Exhibit N at 002.

Bret Stanley contacted the Court in the *Jones* Matter about providing a copy of this Court's Order finding Breach of the Protective Order, but was told that since he was not counsel of record, Bret Stanley could not directly email the Court, but a filing would have to be made. *See* Exhibit O at 001-002; *See also* Exhibit 1 at ¶44. On August 28, 2025, Bret Stnaley was informed that Counsel of Record the *Jones* matter made a filing that supplied the Court with the Order. *Id.*

- Compliance in the *Soto* Matter

Concerning the *Soto* Matter, Bret Stanley emailed Uber on August 20, 2025 and twice on August 22, 2025 inquiring about information relating to the attorneys involved and the court presiding over *Soto*. *See* Exhibit 1 at ¶44-50; *See also* Exhibits P, Q, and R. Despite these requests, Uber did not provide me with the attorney information in the *Soto* matter. *See* Exhibit 1 at ¶51.

However, on July 21, 2025 prior to this Court's Order, Uber's Counsel delivered Plaintiff's Counsel in *Soto* a letter concerning Uber's claim that Mr. Corey Gaul was using information that

breached MDL 3084's Protective Order. *See* Exhibit S, referencing July 21, 2025 Letter. On August 14, 2025, Uber's Counsel delivered counsel in *Soto* another letter on the issue. *See* Exhibit S. Uber did not copy me on any of the letters to Mr. Corey Gaul. *See* Exhibit 1, ¶52.

On August 27, 2025, Bret Stanley informed Uber that he had left a voice message for Attorney Gaul, but that Mr. Gaul's email is not listed on any materials that Uber has identified and that Mr. Gaul's email is not listed on his website. *See* Exhibit 1, ¶53; *See also* Exhibit O at 002. On August 28, 2025, Mr. Gaul filed the MDL Order with the Court in the *Soto* Matter. *See* Exhibit 1, ¶54; *See also* Exhibit T.

- <u>Substantial Personal Loss to Bret Stanley on August 20, 2025.</u>

On August 20, 2025, the mother of Bret Stanley's closest lifelong friend passed away after many years of suffering with Parkinson's disease. *See* Exhibit 1, ¶55. She was a substantial mother figure in Bret Stanley's life. *Id.* This loss of life required Bret Stanley to travel across Texas to attend family visitations, assist the needs of loved ones, and participate in the funeral. *Id.*

On August 27, 2025, Bret Stanley informed Ms. Gromada and the Uber Defendants concerning the funeral attended the prior. *See* Exhibit 1, ¶56-57; *See* Exhibit O, 001-002. Additionally, Bret Stanley provided additional information to Ms. Gromada about the failure of the email that was intended to be sent to the court in the *Lord* matter. *Id.*

Ms. Gromada graciously responded with an email to me offering condolences, thanking me for the update, and requesting to be sent confirmation from me concerning filing of the Order in the *Soto* matter. Exhibit O *at 001*.

This loss of life caused a substantial emotional toll on Bret Stanley personally and a disruption professionally. *See* Exhibit 1, ¶59.

- <u>Facts Associated to the Attorney Fee Submission made by Uber.</u>

The overwhelming majority of the fees claimed to have been incurred relate to Uber

Counsel's work performed *before* this Court's August 18, 2025 Order. *See* ECR 4233-3, Exhibit A pp. 9-21. However, as early as May 14, 2025, █████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████████ ███████████. *See* ECF 4233-3 at 10 of 21, regarding the May 14, 2025 Entry by Gromada regarding "████████████████████████████████████████████████████████████████████████ ████████████████████████████████."

The Defendants seek fees dating back to May 6, 2025—more than three months before the Order was entered related to the finding of Protective Order Breach on August 18, 2025. *See* ECF 4233-3 at 10 of 21.

Of the ███ hours Defendants claim ($187,303.30 in purported fees), only ███ ($3,656.70) were incurred after August 18, 2025. After this Court's Order on August 18, 2025, Uber's exhibit reports the following attorneys performed the following tasks:

- Michael Shortnacy:
  - August 19, 2025 - ████████████████████████████████
  - August 20, 2025 - ████████████████████████████████.
- Veronica Gromada:
  - August 19, 2025 - ████████████████████████████████
  - August 20, 2025 – ███████████████████████████████.
  - August 21, 2025 - ████████████████████████████████ ████████████████████████████████
- Kimberly Johnson Priest
  - August 20, 2025 - ████████████████████████████████.
- Brittany E. Kirk –
  - August 21, 2025 - ████████████████████████████████ ████████████████████████████████.

*See* ECF 4233-3 at 20-21.

Defendants staffed this narrow procedural issue with four to seven attorneys continually—

partners, senior associates, junior associates, and support staff—who repeatedly reviewed, revised, and re-revised the same documents. *See* ECF 4233-3, Exhibit A – pp. 9-21. Partners Michael Shortnacy, Veronica Gromada, Kimberly Johnson Priest, and Daniel E. Cummings all billed time in relation to Uber's Motion for Sanctions. *Id.* Additionally, Counsel Brittany Kirk and Arianna Berg billed time in relation to Uber's Motion for Sanctions. *See* ECF 4233-3, Exhibit A – pp. 9-21.

Numerous attorneys redundantly billed for the same calls, drafts, and revisions, sometimes on the same day.  The billing records reveal extensive duplication, including repeated research on the same protective-order issues, serial internal discussions, multiple reviews of identical filings, and repeated rounds of revisions even after senior counsel "finalized" drafts.   *See* ECF 4233-3, Exhibit A – pp. 9-21.

Defendants also billed substantial hours for simple, routine filings that ordinarily require minimal time—motions to seal, administrative motions, notices, cover letters, and exhibit compilation.  In federal practice, particularly MDLs, these tasks are boilerplate. Defendants billed ▇ hours ($91,146.70) for motion drafting alone. *See* ECF 4233-3 at p. 6.

Defendants billed for clerical tasks such as reviewing ECF notices, calendaring deadlines, uploading and formatting filings, and internal administrative coordination—all non-compensable regardless of who performs them. *See* ECF 4233-3, Exhibit A – pp. 9-21.

Defendants also included block billing in their fee submission. Large entries that combine multiple separate tasks obscure whether the time spent on any individual component is reasonable. *See* ECF 4233-3, Exhibit A – pp. 9-21; *See* specifically ECF 4233-3, Exhibit A - July 17, 2025 entries by Michael Shortnacy and Kimberly Priest Johnson and July 18, 2025 entries by Michael Shortnacyand Kimberly Priest Johnson.

Defendants have presented no evidence of whether they have actually been paid on the fees they seek to recover. Uber's internal time entries reflect only what counsel *claims* to have done –

not what has been agreed to be paid, were billed, actually paid, or what Uber is obligated to pay to these attorneys. Uber has presented no invoices, proof of payment, or other evidence of the actual cost.

IV. **ARGUMENT**

    A. **Bret Stanley had substantial justification for any non-compliance with this Court's Order and did not act in bad faith, vexatiously, wantonly, or for oppressive reasons**

As shown above, Bret Stanley caused compliance to occur with this Court's August 18, 2025 Order, although due to personal loss and not being an attorney of record on two of the matters (*Jones* and *Soto*), compliance did not occur by October 22, 2025.

There is no claim that Bret Stanley failed to comply with the Court's Order pertaining to the *Smith* Matter.

Pertaining to the *Lord* Matter, Bret Stanley provided the August 18, 2025 Order to all counsel of record timely. Prior to the Court's August 18, 2025 Order, Attorney Bruce Stern caused the material that was publicly available that was found to be in breach of MDL 3084's Protective Order to be removed from the Docket. *See* Exhibit 1 at ¶32; *See* also Exhibit I. As shown, Bret Stanley sought to send the Order to Judge Hurd in the *Lord* matter, but did not understand that the email had not been delivered. *See* Exhibit 1 at ¶35-36. On August 26, 2025, Bret Stanley remedied this error by delivering the Order to Judge Hurd in the *Lord* matter. *See* Exhibit L.

Relating to the second disclosure made in the *Lord* Matter, Bret Stanley had no notice or control over the document that was filed and by October 9, 2025, Bret Stanley had fully complied with this Court's Order. Bret Stanley informed all counsel that they should destroy the material found to be in breach of MDL 3084's Protective Order and should not use it. The use of breaching material was just as surprising to Bret Stanley as it was to Uber's Counsel and was not the result of acting in bad faith, vexatiously, wantonly, or for oppressive reasons. When Attorney Bruce Stern realized his error, he took immediate action to cure the error and have the offending material removed from the Docket in *Lord*.

As it relates to the *Jones* matter, on August 20, 2025, Bret Stanley provided notice to

1  Plaintiff's Counsel Even Lide of this Court's Order finding a breach of MDL 3084's Protective
2  Order. *See* Exhibit N. Thereafter, Bret Stanly contacted the *Jones* Court about providing the Judge
3  and Parties this court's Order by email, but was informed that emails are not allowed from outside
4  attorneys and that a filing was required. *See* Exhibit 1 at ¶44; *See also* Exhibit O at 001-002.

5  On August 28, 2025, Counsel of Record made the filing in the *Jones* matter and supplied
6  the *Jones* Court with this Court's Order. *See* Exhibit O at 001-002.

7  As it relates to the *Soto* matter, Plaintiff's Attorney Corey Gaul's email was not listed on
8  the exhibit provided by Uber or on the Attorney's website. Bret Stanley asked for additional
9  information from Uber relating to the *Soto* matter on three different occasions; however, Uber did
10 not provide this information. *See* Exhibit 1, ¶46-54; *See* also Exhibits P, Q, and R. Bret Stanley
11 Plaintiff's Attorney Corey Gaul filed the Order with the court in the *Soto* matter. *See* Exhibit T.

12 As it relates to complying with this Court's Order by October 22, 2025, the loss of an
13 extremely close loved one on October 20, 2025 had a substantial effect personally and
14 professionally to Bret Stanley. The loss required travel across Texas, assistance to other loved ones,
15 and participation in the funeral. *See* Exhibit 1, ¶55-59. This loss amounts to a substantial
16 justification for failure to meet the strict deadlines of this Court's Order and once Bret Stanley
17 returned to Houston compliance with the Order was obtained. There are no facts alleged that show
18 Bret Stanley acted in bad faith, vexatiously, wantonly, or for oppressive reasons relating to strict
19 compliance with this Court's Order from August 18, 2025.

20 For these reasons, Uber's Motion for Sanctions Relating to Compliance with the August 18,
21 2025 Order on Uber's Motion to Enforce the Protective Order should be denied.

22      **B.   Uber's Claimed Fees are not Causally Connected to the Alleged Violation, are
              not "Reasonably Incurred" and not Based on What Defendants Actually Paid**
23
24 Defendants ask the Court to award more than three months of attorneys' fees for work that
25 overwhelmingly **predates** the Court's August 18, 2025 Order and bears no causal connection to
26 the alleged noncompliance. That defect is dispositive. Sanctions must be compensatory, not
27 punitive, and must be limited to fees actually caused by the specific conduct at issue. *Goodyear
28 Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108, 137 S.Ct. 1178, 1186 (2017). A sanctions

award may redress only the "losses sustained," and may not impose an additional amount as punishment. *Id.* A movant may recover "only the portion of his fees that he would not have paid but for the sanctioned conduct." *Id.* at 110. Here, fees incurred before the alleged noncompliance with the August 18 Order—even fees incurred before the Order existed—are unrecoverable as a matter of law. Even setting aside this threshold defect, Defendants' fee request suffers from numerous independent problems: it is grossly overstaffed, duplicative, padded with administrative and clerical tasks, and inflated by excessive hours on routine filings. The submission reflects no exercise of billing judgment and appears instead to be a pass-through of every internally recorded hour, regardless of necessity or relevance. Further, Defendants provide no evidence of what they actually paid their lawyers, a requirement for any compensatory sanctions award.

- <u>Defendants Seek Fees That Cannot Be Awarded as a Matter of Law Because They Precede the August 18 Order</u>

The alleged misconduct here is Mr. Stanley's purported failure to comply with the August 18, 2025 Order directing him to provide that Order to certain tribunals. Any noncompliance necessarily would have occurred after August 18. Yet Defendants seek fees dating back to May 6, 2025—more than three months before the Order was entered.

Of the ▓▓▓▓ Defendants claim ($187,303.30 in purported fees), only ▓ hours (▓▓▓▓) were incurred after August 18, 2025. *See* Exhibit 1, ¶ 64 for Post Aug. 18, 2025 Hours. Awarding fees for time incurred before the Order allegedly violated existed would convert a compensatory sanction into a punitive one, in direct conflict with *Haeger* and well-settled sanctions doctrine. All pre–August 18 time entries must therefore be excluded.

- <u>Only "Reasonably Incurred" Fees Are Recoverable, and Defendants' Submission Fails That Standard</u>

Even when sanctions are appropriate, courts may award only those fees that are proportional, necessary, non-duplicative, free of clerical work, and consistent with what a reasonable paying client would accept. Defendants bear the burden of proving reasonableness; their submission fails on every metric.

Defendants staffed this narrow procedural issue with four to seven attorneys—partners,

Case 3:23-md-03084-CRB    Document 4421    Filed 11/17/25    Page 16 of 17

senior associates, junior associates, and support staff—who repeatedly reviewed, revised, and re-revised the same documents. Numerous attorneys billed for the same calls, drafts, and revisions, sometimes on the same day. Courts routinely reject fees inflated through overstaffing and redundancy. *See* Exhibit 1, ¶65-71.

The billing records reveal extensive duplication, including repeated research on the same protective-order issues, serial internal discussions, multiple reviews of identical filings, and repeated rounds of revisions even after senior counsel "finalized" drafts. Such reworking is a hallmark of unreasonable billing and is routinely reduced or rejected.

Defendants also billed substantial hours for simple, routine filings that ordinarily require minimal time—motions to seal, administrative motions, notices, cover letters, and exhibit compilation. In federal practice, particularly MDLs, these tasks are boilerplate. Time entries spanning 10–40+ hours for such work are facially excessive. Defendants billed ▮ hours (▮) for motion drafting alone; that figure is facially unreasonable. *See* Shortnacy Declaration, ECF 4233-3 at 4.

In addition, Defendants billed for clerical tasks such as reviewing ECF notices, calendaring deadlines, uploading and formatting filings, and internal administrative coordination—all non-compensable regardless of who performs them. Courts consistently exclude such tasks from fee awards.

Block billing further prevents meaningful review. Large entries that combine multiple separate tasks obscure whether the time spent on any individual component is reasonable, and courts typically reduce such entries.

These defects and those outlined in <u>Exhibit 1, ¶65-71</u> independently warrant substantial reduction or outright denial of the request.

- <u>A Sanctions Award Must Be Based on What Defendants Actually Paid, Not on the Time Their Attorneys Chose to Record</u>

Even if some fee-shifting were proper, Defendants' request fails for an additional and independently dispositive reason: they present no evidence of what they actually paid their attorneys. Internal time entries reflect only what counsel claims to have done—not what Defendants agreed to pay, were billed, actually paid, or are obligated to pay. Sanctions must be compensatory

-14-

RESPONSE TO DEFENDANTS' MOTION FOR
SANCTIONS AGAINST BRET STANLEY
CASE NO. 3:23-MD-03084

and may not exceed the moving party's actual economic loss. A fee claimant must therefore provide invoices, proof of payment, or other evidence of actual costs. Defendants provide none.

Internal time entries reflect only what counsel claims to have done—not what Defendants agreed to pay, were billed, actually paid, or are obligated to pay. Sanctions must be compensatory and may not exceed the moving party's actual economic loss. A fee claimant must therefore provide invoices, proof of payment, or other evidence of actual costs. Defendants provide none.

Without proof of actual payment, Defendants cannot meet their burden. Awarding fees based solely on attorney-created time entries would risk granting Defendants a windfall, which sanctions doctrine forbids.

Defendants attempt to avoid scrutiny by asserting that they applied a "voluntary reduction of 10%." Shortnacy Decl. ¶ 13. This does not cure the fundamental defects in their request. A self-selected across-the-board haircut cannot substitute for the Court's obligation to scrutinize causation, necessity, and reasonableness. It merely applies a percentage reduction to whatever entries counsel chose to include—duplicative work, excessive hours, clerical tasks, block billing, and months of pre-Order time that are legally unrecoverable. Defendants must justify each hour they seek to shift. They have not done so.

## V.  **CONCLUSION**

For the reasons provided above, Bret Stanley asks this Court to deny Uber's Motion for Sanctions against Bret Stanley.

Dated: November 17, 2025

Respectfully Submitted,

JOHNSON LAW GROUP, LLP

By:  */s/ Bret Stanley*