Bret Stanley (TX SBN 24075116)
bstanley@johnsonlawgroup.com
**Johnson Law Group**
2925 Richmond Ave, Suite 1700
Houston, TX 77098
Telephone: (713) 626-9336

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**DECLARATION OF BRET STANLEY SUPPORTING BRET STANLEY'S RESPONSE TO MOTION TO ENFORCE PROTECTIVE ORDER**<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 6 – 17th Floor |
| This Document Relates to:<br><br>All Cases | |

I, Bret Stanley, declare:

1. I am a Senior Counsel at the law firm of Johnson Law Group, LLP. I am a named member of the Plaintiffs' Steering Committee of MDL 3084, IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION. I am a member in good standing of the Bar of the State of Texas am admitted to practice before this Court. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief. If called upon to testify, I could and would testify competently to the truth of the matters stated herein. I respectfully submit this declaration in support of Bret Stanley's Response to Defendants' Motion for Sanctions Against Bret Stanley. I have reviewed Uber's Motion for Sanctions Against Bret Stanley, including its attached Exhibits A, B, and C. Importantly, Uber's Motion for Sanctions and Exhibits attached thereto have relevant omissions to the factual record and the facts provided here are intended to provide the full procedural history related to this Court's finding that Bret Stanley breached MDL 3084's Protective Order (ECF 176). This evidence is provided to show that Bret Stanley had substantial justifications for actions this Court's August 18, 2025 Order (ECF 3708) and Bret Stanley did not act with willful disobedience, bad faith, vexatiously, wantonly, or for oppressive reasons in relation to this Court's Order finding breaches of MDL 3084's Protective Order.

    A. A valid legal dispute of whether using the names of Knowledge Base Policies in discovery efforts outside of MDL 3084 amounted to breach of MDL 3084's Protective Order.

2. On May 17, 2024, I emailed Ms. Gromada, Mr. Shortnacy, Mr. Winkler and other lead counsel for Uber for the first time to assist in discovery efforts about the production of Knowledge Base Artiles and Policies. *See* Exhibit A at 003-004. At this point, the conferral process between the parties on Plaintiffs' Written Discovery had been ongoing for at least a month. *Id.* At 14; *see also Id.* 004-014. Included with my May 17, 2024 Email, I provided counsel with the names of Knowledge Base Articles and Polices for production. *Id.*

3. As the email indicates, I informed Uber that it had not complied with this Court's prior Order of identifying the Knowledge Base Platform as a Non-Custodial Source by April 26, 2024. *Id.* at 004. I provided information to Uber describing the Knowledge Base System and Identified a 30b6 Deposition of Matthew Baker from the *Taboada & Saxton vs. Uber Technologies, Inc.* arbitration that could assist Uber's Counsel in understanding what Knowledge Base is and for Uber to identify Knowledge Base as a Non-Custodial Source. *See* Exhibit A, at 003. I informed Uber that, "I cannot share this deposition with you due to *[the]* protective order." *Id.*

4. Additionally, I informed Uber that I had obtained information of the Knowledge Base Platform from prior litigation, including the *Razak* matter and the *Saxton & Taboada vs. Uber Technologies* arbitration in Austin Texas. *Id.* Exhibit A at 3. To assist in discovery efforts and efficiency, I attached a spreadsheet to the May 17, 2025 email with the known names of all Policies I was aware of at the time. *See* Exhibit A at 3.

5. On May 29, 2024, nearly two weeks after the initial email, I followed up with Ms. Gromada and Uber's counsel asking if Uber intended to produce the Knowledge Base Articles identified in the May 17, 2024 email. *See* Exhibit A at 001-002. Ms. Veronica informed me that she was, "reviewing [my] list and comparing it to the log of policies included in the JCCP and MDL Productions." *Id.* at 001. Ms. Gromada claimed that the work she was performing "includes review of the discovery requests and identifying policies that are responsive." *Id.* at 001.

6. After producing the list of names of Knowledge Base Policies on May 17, 2024, Uber did

1  not claim that providing the names of Knowledge Base Policies known from prior litigations was
2  a breach of any protective order. In fact Uber used the list provided to assist in comparing
3  documents produced in the JCCP and MDL Productions and to identify policies sought that Uber
4  claimed to be responsive to Plaintiff's Request for Production in MDL 3084. The intention of the
5  list was to assist in efficiency, and it appeared to be doing just that.

6      7. On July 15, 2024, nearly a month after the initial information was provided to Uber's
7  counsel, I emailed Mr. Shortnacy and Ms. Gromada to request a meeting to discuss production of
8  the Knowledge Base Index / Homepages and KB policies. *See* Exhibit B, at 007-008. I informed
9  Uber's Counsel that we intended to discuss these issues at the upcoming status conference before
10 Judge Cisneros. *Id.*

11     8. On July 17, 2024, Attorney Michael Sweet with Chaffin Luhana, provided a summary of
12 the conferral that occurred with Uber's counsel and that it was Plaintiffs Leadership's
13 understanding that uber was to produce or update Plaintiffs' counsel about producing homepages
14 from Knowledge Base in MDL 3084. *Id.* at 006. Also on July 17, 2024, I reminded Uber's
15 counsel of the four KB Homepages that were identified during our conferral and that these four
16 KB Homepages were not the universe of all KB Homepages for production. *See* Exhibit B at 005-
17 006. Ms. Gromada replied to my July 17, 2024 email with, "Thank you, Bret. We'll circle back
18 on these." *Id* at 005.

19     9. On July 18, 2024, I emailed Uber's counsel and asked Ms. Gromada if Uber considered
20 Knowledge Base as a non-custodial Source. *See* Exhibit B, at 004-005.  In response to this email,
21 Ms. Gromada replied on July 19, 2024 claiming that Uber was continuing to investigate
22 Knowledge Base Homepages and policies and Uber's counsel acknowledges that "the court
23 expects the parties to meet and confer regarding the manner of production." *Id.* at 006-007. On
24 July 22, 2024, I responded to Ms. Gromada and Uber's counsel to confirm a further conferral on
25 Knowledge Base Homepages and Articles and discussed the manner of production in which
26 Plaintiffs Leadership expected these documents to be produced. Exhibit B at 005-006. In this
27 response, I informed Uber's counsel that I intended to share the Baker Deposition with our team,
28 "since Uber has shared the Baker Deposition" with their own team. *Id.*

1   10. Ms. Gromada replied to my July 22, 2024 email, thanking me for the information provided and informing Plaintiffs Leadership that she intended to discuss our requested approach with Uber. Ms. Gromada asked that, "[i]n the interim, please do not share the Baker Deposition, which is Uber's confidential information, with your team." *Id.* at 005.

11. On July 23, 2024, I responded to Ms. Gromada and informed her that I would hold the Baker Deposition and materials from being shared with the Plaintiffs Leadership Team. Exhibit B at 001. Ultimately, I never shared these materials with the team until I was ordered to due to the subpoena that was served on me individually.

12. At no point, any of the conferrals or email communications during the conferrals or email communications relating to production of Knowledge Base Articles did Uber's Counsel inform me that Uber believed that I was breaching any protective order by providing the list of names of Knowledge Base Articles to assist in discovery.

13. The parties continued to confer concerning use of the named policies listed over the course of several months, including multiple hearings before Magistrate Judge Cisneros. During these hearings, conferrals, and emails, the Uber Defendants never raised the issue that Bret Stanley was breaching any protective orders by using the names of policies in lists that Bret Stanley discovered from litigations outside of MDL 3084.

14. On May 26, 2025, for the first time Uber notified Bret Stanley and the Plaintiffs Steering Committee of their legal argument that the Protective Order had been breached. *See* ECF 4233-2 at ¶2, *See also* 3512-11.

15. On June 2, 2025, I responded to Uber's letter and informed them of the legal bases under MDL 3084's Protective Order that I believed allowed me to use the names of the policies in discovery efforts. *See* Exhibit C, June 2, 2025 Letter.

16. On June 4, 2025, Co-Lead Roopal Luhana responded to Ubers' accusations that Bret Stanley was breaching MDL 3084's Protective Order on behalf of the PSC and provided additional legal analyses and justification for use of the names of policies in discovery efforts. *See* Exhibit D, June 4, 2025 Letter.

17. As cited in Ms. Gromada's Declaration, Uber claims to have made an offer to

"compromise" the dispute concerning Uber's allegations that Bret Stanley breached the protective order. ECF 4233-2 at ¶5-6. Uber asked that I identify the cases that the Knowledge Base policies name list were used and to agree that before using the names of Uber policies or other information claimed confidential by Uber, that Bret Stanley should seek Uber's permission or permission from the MDL Court. *See* Gromada Declaration, ECF 4233-2 at ¶5-6.

18. Ms. Gromada's declaration leaves out key discussion points made by Bret Stanley in response to Uber's offer of "compromise." I did not summarily deny Uber's compromise, but provided additional details as to why the compromise was not workable.

19. On July 8, 2024, Ms. Gromada sent an email with her compromise concerning Uber's claim that the Protective Order had been breached. *See* Exhibit E at 004-005.

20. On July 11, 2024, I responded to Ms. Gromada's email and informed her of the following:

   i. No disclosure of confidential documents, summaries, or other substantive information from uber documents had been made to any individual.
   ii. *Smith* and *Lord* matters were the only matters in which I have made requests for production of KB Policies / Articles specifically by name.
   iii. A requirement to seek permission from Uber before making discovery requests on relevant and discoverable information is not workable.
   iv. A requirement to seek court intervention from the Northern District of California every time discovery on relevant and discoverable documents are sought is not workable.
   v. Ms. Gromada's "compromise" assumes that Uber will make productions of Knowledge Base Polices and Articles in connection with a general request for Knowledge Base Policies. However, Uber refused in the MDL to make productions from Knowledge Base Articles under both general requests and after being supplied the names of policies. Uber refused to make productions in *Smith* and *Lord* in connection with prior general requests for policy production.
   vi. Uber's counsel in the *Lord* matter made patent misstatements in a hearing concerning production of Knowledge Base Polices and mischaracterized Knowledge Base Policies to the Court in the *Lord* matter.
   vii. Uber was actively using claims that I breached the MDL Protective Order to prevent production of documents in both the *Smith* and *Lord* Matters.

*See* Exhibit E at 001-002.

21. On July 17, 2025, Ms. Gromada replied to my response informing me that Uber intended to file a motion to enforce the MDL Protective Order on July 18, 2025. Uber claimed that it was making the filing, "[b]ased on additional information we have learned regarding the use of confidential information since our meet and confers." Exhibit E at 001.

22. Presumably the "additional information" learned, was information from its defense counsel in the *Jones* and *Soto* matters that these lawyers had made requests for production related to the lists of Knowledge Base Articles that accompanied a motion to compel by Bruce Stern, lead counsel in the *Lord* matter. However, Uber did not inform me at this time who the attorneys in *Soto* and *Jones* were that sought Knowledge Base Materials using the lists of the names of these policies. Had Uber informed me that the attorneys in *Soto* and *Jones* were seeking this information, I would have informed these attorneys to not use the materials that were involved in a current confidentiality dispute.

23. Ms. Gromada's claims that Bret Stanley "used and/or disclosed protected information across *four* matters." *See* Gromada Declaration, ECF 4233-2 ¶8. This statement is false. The only cases I am associated with where an offending disclosure was found based on my actions are the *Smith* and *Lord* matters. I had no connection with the *Jones* or *Soto* matters and made no disclosures whatsoever in these cases.

24. No information subject to the court's order finding that Bret Stanley breached MDL 3084's Protective Order was used in any motion filed or court hearing in the *Smith* matter.

25. No information subject to the court's order finding that Bret Stanley breached MDL 3084's Protective Order was used in any motion filed or court hearing in the *Jones* matter.

26. No information subject to the court's order finding that Bret Stanley breached MDL 3084's Protective Order was used in any motion filed or court hearing in the *Soto* matter.

27. The only court proceeding that I am aware of that included the filing of information found to be a breach of MDL 3084's protective order is in the *Lord* matter. As will be discussed below, Lead Counsel in *Lord,* Mr. Bruce Stern, accidently made a second public filing of the information found to be in breach of MDL 3084's protective order, but quickly removed from the docket. Concerning the second disclosure, I had no notice of this filing and was not a signatory to the

filing of the second disclosure. *See infra.*

**B. Compliance with this Court's Order Regarding Uber's Motion for Protection**

28. On August 18, 2025, this Court entered an Order on Defendant Uber's Motion to Enforce Protective Order requiring Bret Stanley to do the following:

> (c) Within three days of the date of this Order, Mr. Stanley shall identify to Defendants' counsel all persons outside of the MDL Litigation to whom Mr. Stanley has disclosed any information covered by the Protective Order, including without limitation, the Confidential Information, and Mr. Stanley shall identify to Defendants' counsel all court proceedings in which Mr. Stanley is aware that the Confidential Information has been used or disclosed in discovery or otherwise;
>
> (d) Within three days of the date of this Order, Mr. Stanley shall provide a copy of this Order to all persons and courts identified pursuant to paragraph (c) of this Order with notice to Defendants' Counsel of same; and
>
> (e) Mr. Stanley shall take reasonable efforts to retrieve or ensure the destruction of all unauthorized Confidential Information to all persons identified pursuant to paragraph (c) of this Order.

See ECF 3708 at 2.

- ***Smith* Matter**

29. On August 20, 2025, I made notice to all counsel in the *Smith* matter regarding this Court's finding of the breach of the Protective Order. *See* Exhibit F, August 20, 2025 Email to Smith Counsel.

30. On August 21, 2025, I made notice to the Court in the *Smith* matter regarding this Court's finding of the breach of the Protective Order. *See* Exhibit G, August 21, 2025 Email to Judge Gonzales.

- ***Lord* Matter**

31. Based on listening to the hearing and Magistrate Cisneros's decision during the hearing on Uber's Motion to Enforce the Protective Order, on August 12, 2025, lead Plaintiff's counsel Bruce Stern in the *Lord* matter emailed Uber's Counsel seeking permission to remove from the public docket Exhibit A to Plaintiff's 12th Notice to Produce. *See* Exhibit H. The Exhibit that

Bruce Stern sought to remove from the docket contained the offending information that this Court found to be breach of MDL 3084's Protective Order. *Id.*

32. On August 12, 2025, Bruce Stern filed a Consent Order to remove the material from the Court's Docket in the *Lord* matter that was found to be in breach of MDL 3084's Protective Order. *See* Exhibit I, August 12, 2025 Consent Order Filing. On August 13, 2025, the Court in the *Lord* matter signed the Consent Order and caused Exhibit A to Plaintiff Lord's Motion to Compel Production to be removed from the Public Docket. *Id.*

33. Prior to this court issuing a written order related to the Breach of the Protective Order, Counsel Bruce Stern moved the court in *Lord* to remove the portions of the publicly filed Notice to Produce that were found to be a breach of MDL 3084's Protective Order from the court's docket.

34. On August 20, 2025, I notified opposing counsel in the *Lord* matter of this court's ruling concerning the breach MDL 3084's Protective Order. *See* Exhibit J a 001. This email included instructions for all counsel to take efforts to destroy the previously received version of Exhibit A to Plaintiff's 12 Notice to Produce. *Id.* The email also indicates my intention to send the notice to the court in the *Lord* matter by email. *Id.* at 002.

35. I intended to notify the Court in *Lord*, just as I notified the Court in the *Smith* matter, and in fact thought that an email was delivered to Judge Hurd on August 21, 2025. However, I learned later that the email attempted to be sent to the court in the *Lord* matter had not been delivered, but was still in my outbox folder. The email was not sent to the court in *Lord* due to my hurried attempt to travel across Texas in the wake of someone close to me passing away on October 20, 2025. *See infra.*

36. On August 26, 2025, I notified Uber of this technological error and delivered the Order from MDL 3084 to Judge Hurd in the *Lord* matter. *See* Exhibit K at 001, *See* also Exhibit L,

August 26, 2025 Email to *Lord* Court.

- **Second Disclosure of Protected Information in the *Lord* matter by Bruce Stern**

37. On October 9, 2025, I received an email from Ms. Gromada informing me that lead Plaintiff's attorney Bruce Stern had once again publicly filed the table containing information found to be in breach of MDL 3084's Protective Order. *See* Exhibit M at 001-002. I was shocked to hear that this had occurred and had no notice from Bruce Stern of the pleading that was to be filed. *Id.* After being informed by Ms. Gromada of the filing, I immediately contacted Mr. Stern and had a heated conversation with him. *Id.* at 001. I was informed by Mr. Stern that including the exhibit with information found to be breach of MDL 3084's Protective Order was a mistake and was not intentional. *Id.* I informed Mr. Stern that he should have deleted the offending material as previously requested and that he must take all immediate measures to ensure the filing is removed. Mr. Stern then contacted the clerk and made a filing to have the confidential information removed from the docket. *Id.*

38. Mr. Stern should have destroyed the spreadsheet found to be in breach of MDL 3084's Protective Order previously (as requested) and has now destroyed the material. However, appending the breaching material to the motion appears to be harmless error that was removed from the docket immediately. *See* Exhibit M at 001, attaching the filing to remove the offending exhibit from the public docket.

39. I was not a signatory to Mr. Stern's filing, did not review the filing, and took all measures to make sure that Mr. Stern immediately corrected the error.

- ***Jones* Matter**

40. I am not counsel of record in the *Jones* matter and have no interest in this case. I do not have filing privileges into this matter and am not barred in New Jersey to make filings.

41. On August, 20, 2025, I provided notice to Even Lide and Uber's Counsel in the *Jones* matter

1  of this Court's Order finding that I breached the Protective Order in MDL 3084. *See* Exhibit N at 001. I instructed counsel to destroy the table with the names of the policy found to be in breach of MDL 3084's Protective Order. *Id.*

42. On August 14, 2025, prior to this Court entering the Order finding breach of the MDL 3084, Uber's MDL Counsel unilaterally notified Attorney Evan Lide and other counsel in the *Jones* matter of the hearing whereby Judge Cisneros found a Breach of MDL 3084's Protective Order. *See* Exhibit N at 002. Uber did not include Bret Stanley on the August 14, 2025 Communication. *Id.*

43. On August 14, 2025, Attorney Evan Lide withdrew portions of his Notice to Produce Records containing the portions of the Notice to Produce that were found to be in breach of the Protective Order. *Id.* 001-002.

44. I contacted the Court in the *Jones* Matter about providing a copy of this Court's Order finding Breach of the Protective Order by email, but was told since I am not counsel of record I cannot send the Order directly to the Court myself, but a filing would have to be made. *See* Exhibit O at 001-002, August 28 Email. On August 28, 2025, I was informed that Counsel of Record made the filing in the *Jones* matter, supplying the Court with the Order. *Id.*

45. I am not aware of any public filing of the material found to be in breach of the MDL Protective Order.

- **_Soto_ Matter**

46. On August 20, 2025, I emailed Ms. Gromada and Mr. Cox relating to the *Soto* matter and informed them that I had no connection to any counsel in the *Soto* matter and did not disclose anything to any firm involved in *Soto*. *See* Exhibit P at 001. Uber did not respond to this email until August 22, 2025.

47. On August 22, 2025, Ms. Gromada responded that "as you are aware from Uber's

submission to the court, Confidential information has been used or disclosed in discovery or otherwise in Soto." *See* Exhibit Q at 001.

48. I responded quickly to Uber's August 22, 2025 email and informed them that I did not know the lawyers in the Soto matter and did not disclose the documents to any lawyers in Soto. Exhibit Q at 001. I informed Uber that I know nothing about the case or who the firms involved are. *Id.* At 001. I informed Uber that I have instructed all attorneys to delete what they have seen in volition according to Cisnero and provided the Order to the Courts subject to my disclosure. *Id.* At 001. I informed Ms. Gromada that I was, "happy to talk about this and this email should not be construed with a negative tone." It was not my intention to be combative concerning the *Soto* matter. I did not know the contact information of the attorneys in charge of *Soto*. I sought additional information from Uber about counsel in *Soto*.

49. In response to my August 22, 2025 email about *Soto*, Ms. Gromada sent me a threatening email discussing Uber's reading of the MDL 3084 Order finding a breach of the Protective Order. *See* Exhibit R at 001-002.

50. By this point, I had requested information about the *Soto* matter on two different occasions and Uber's Counsel clearly were choosing to withhold the information. Frustrated by this, I responded to Ms. Gromada to remind her that I had never disclosed anything to any attorneys in *Soto* and that I had no knowledge of which court the case was in. *Id.* at 001. Through my frustration, I implored Ms. Gromada to "stop playing games" and asked once again for her to provide information about the *Soto* matter and counsel for *Soto*. *Id.* at 001.

51. Uber did not provide me with the contact information of the Attorney in connection with my request for this information.

52. Naturally, Uber's Counsel knew who the Plaintiff's attorney was in *Soto* and had contacted counsel in *Soto* on July 21, 2025 and August 14, 2025. *See* Exhibit S, Uber Letter to

Corey Gaul. Prior to this Court's Order on August 18, 2025 concerning a finding that Bret Stanley had breached the protective order, Uber contacted counsel in *Soto directly* informing counsel to cease use and disclosure of the protected information that Mr. Gaul had obtained. *Id.* Ms. Gromada did not carbon copy me on any correspondence to Mr. Gaul, including Uber's letters from July 21, 2025 or August 14, 2025.

53. On August 27, 2025, I informed Ms. Gromada by email my position relating to the *Soto* Matter:

> Concerning the *Soto* matter, my position remains that I did not disclose any information to the attorneys who are claimed to have made the requests subject to Cisneros's Order. I'm not counsel of record and no attorney connected to me claims to know who the attorneys are. I have called Corey Gaul and left a voicemail, but his email is not on Exhibit 17 and is not on their website. I am working to find information about which judge is handling the matter. I believe my intervention in the *Soto* matter is beyond the scope of the Order but I am making efforts today to notify the attorneys involved and the Court.

*See* Exhibit O at 002.

54. On August 28, 2025, Mr. Gaul filed the Order concerning breach of the Protective Order with his court in the *Soto* Matter. *See* Exhibit T. I was not able to file into the *Soto* matter because I am not an attorney on this matter and do not have filing privileges.

**C. Substantial personal loss to Bret Stanley on August 20, 2025.**

55. On August 20, 2025, the mother of my closest lifelong friend passed away after many years of suffering with Parkinson's disease. She was very dear to me and was a substantial mother figure in my life. This loss of life required me to travel across Texas to attend family visitations, assist the needs of my friend, and participate in the funeral.

56. On August 27, 2025, I informed Ms. Gromada and the Uber Defendants concerning the funeral that I attended the prior week. *See* Exhibit O, 001-002. Additionally, I provided information to Ms. Gromada about the failure of the email that was intended to be sent to the court in the *Lord* matter. *Id.*

57.   Concerning the failure to provide the Court in *Lord* the Order by August 21, as I was rushing to leave town, I did not realize at the time that my email actually had not been delivered to the court in *Lord*. I did not recognize that my email had not gone out to the Court in *Lord* until Uber made their own filing. Exhibit O at 001-002.

58.   Ms. Gromada graciously responded with an email to me offering condolences, thanking me for the update, and requesting to be sent confirmation from me concerning filing of the Order in the *Soto* matter. Exhibit O *at 001*.

59.   This loss of life caused a substantial emotional toll on me personally and a disruption professionally.

D.   **Analysis of Attorney Fee Submission by Uber.**

60.   I have reviewed the fees requested by Uber in connection with Uber's allegations that Bret Stanley breached this Court's August 18, 2025 Order relating to a finding that Bret Stanley breached MDL 3084's Protective Order.

61.   The overwhelming majority of the fees claimed to have been incurred relate to Uber Counsel's work performed *before* this Court's August 18, 2025 Order. However, as early as May 14, 2025, Uber was contemplating filing Sanctions against Bret Stanley, even though a true legal dispute existed as to the confidentiality of the names of Knowledge Base Articles. *See* ECF 4233-3 at 1, regarding the May 14, 2025 Entry by Gromada regarding "█████████████████████████████████████████████████"

62.   Additionally, Defendants' fee request suffers from numerous independent problems: it is grossly overstaffed, duplicative, padded with administrative and clerical tasks, and inflated by excessive hours on routine filings. The submission reflects no exercise of billing judgment and appears instead to be a pass-through of every internally recorded hour, regardless of necessity or

relevance. Further, Defendants provide no evidence of what they actually paid their lawyers, a requirement for any compensatory sanctions award.

63.     The Defendants seek fees dating back to May 6, 2025—more than three months before the Order was entered. Their request includes time spent on the Motion to Enforce the Protective Order, an administrative motion, a motion to seal, internal communications, and ordinary litigation tasks.

64.     Of the ▇▇ hours Defendants claim ($187,303.30 in purported fees), only ▇▇ (▇▇) were incurred after August 18, 2025. After this Court's Order on August 18, 2025, Uber's exhibit reports the following attorneys performed the following tasks:

   a. Michael Shortnacy:
        i. August 19, 2025 - ▇▇
        ii. August 20, 2025 - ▇▇
   b. Veronica Gromada:
        i. August 19, 2025 - ▇▇
        ii. August 20, 2025 – ▇▇
        iii. August 21, 2025 - ▇▇
   c. Kimberly Johnson Priest
        i. August 20, 2025 - ▇▇
   d. Brittany E. Kirk –
        i. August 21, 2025 - ▇▇

See ECF 4233-3 at 20-21.

65.     The above referenced billings are the **only** billings that Uber has submitted related to work performed **after** this Court entered its August 18, 2025 Order on Defendant's Motion to Enforce Protective Order (ECF 3708).

66. Defendants staffed this narrow procedural issue with four to seven attorneys—partners, senior associates, junior associates, and support staff—who repeatedly reviewed, revised, and re-revised the same documents. *See* ECF 4233-3, Exhibit A – pp. 9-21. Partners Michael Shortnacy, Veronica Gromada, Kimberly Johnson Priest, and Daniel E. Cummings all billed time in relation to Uber's Motion for Sanctions. *Id.* Additionally, Counsel Brittany Kirk and Arianna Berg billed time in relation to Uber's Motion for Sanctions. *See* ECF 4233-3, Exhibit A – pp. 9-21.

67. Numerous attorneys redundantly billed for the same calls, drafts, and revisions, sometimes on the same day. The billing records reveal extensive duplication, including repeated research on the same protective-order issues, serial internal discussions, multiple reviews of identical filings, and repeated rounds of revisions even after senior counsel "finalized" drafts. *See* ECF 4233-3, Exhibit A – pp. 9-21.

68. Defendants also billed substantial hours for simple, routine filings that ordinarily require minimal time—motions to seal, administrative motions, notices, cover letters, and exhibit compilation. In federal practice, particularly MDLs, these tasks are boilerplate. Defendants billed ▇▇▇ hours ($91,146.70) for motion drafting alone. *See* ECF 4233-3 at p. 6.

69. Defendants billed for clerical tasks such as reviewing ECF notices, calendaring deadlines, uploading and formatting filings, and internal administrative coordination—all non-compensable regardless of who performs them. *See* ECF 4233-3, Exhibit A – pp. 9-21.

70. Defendants also included block billing in their fee submission. Large entries that combine multiple separate tasks obscure whether the time spent on any individual component is reasonable. As examples, *See* ECF 4233-3, Exhibit A – pp. 9-21; *See* specifically ECF 4233-3, Exhibit A - July 17, 2025 entries by Michael Shortnacy and Kimberly Priest Johnson and July 18, 2025 entries by Michael Shortnacyand Kimberly Priest Johnson.

71. Defendants have presented no evidence of whether they have actually been paid on the fees

they seek to recover. Uber's internal time entries reflect only what counsel *claims* to have done – not what has been agreed to be paid, were billed, actually paid, or what Uber is obligated to pay to these attorneys. Uber has presented no invoices, proof of payment, or other evidence of the actual cost.

E. **Uber continually uses MDL 3084's Motion to Enforce Order to obstruct discovery and attempt to prohibit Bret Stanley from participating as counsel in matters outside MDL 3084.**

72. Uber has not produced any Knowledge Base Articles in *Smith* or *Lord* despite being served requests that ask for Knowledge Base Articles generally.

73. In *Smith*, MDL Counsel for Uber was asked permission to use the names of the policies in discovery efforts and Ms. Gromada responded that Uber does not agree with to Plaintiff's using materials found to be in breach of MDL 3084's protective order. *See* Exhibit U at 001-002.

74. In *Lord*, the Court has ordered Plaintiff's Counsel to provide Uber with the names of 200 Knowledge Base Articles for production. *See* Exhibit V, Nov. 6, 2025 Order from Court in *Lord*.

75. Despite this Order, Uber's counsel continues to refuse to participate in discovery of the Knowledge Base System. On November 10, 2025, Counsel for Uber responded to the Court's Order requiring the production of policies and maintained that the documents are confidential, proprietary, and/or trade secret, and Uber does not waive enforceability of any existing Court Orders in other jurisdictions to that effect. *See* Exhibit W at 001-002.

76. No additional list has been sent to Uber in the *Lord* Matter at this time. Bret Stanley intends to follow portions of MDL 3084's Protective Order that require providing notice to Uber's Counsel in MDL 3084 of the Order to compel Knowledge Base materials and to work through the process. However, it is clear that Uber and its counsel in *Lord* do not intend to comply with the November 6, 2025 *Lord* Order and are obstructing discovery.

77. Bret Stanley filed a claim on behalf of Uber Driver Shawna Sycoc who was raped by an

Uber Rider in the Middle District of Tennessee, *Scyoc vs Uber Technologies, Inc.*, 3:25-cv-01012, Middle District of Tennessee. In this matter, immediately after the filing was made, Uber filed a Motion to Prohibit Participation of Counsel Bret Stanley. *See* Exhibit X, ECF 18, *Scyoc vs Uber Technologies, Inc.*, 3:25-cv-01012, Middle District of Tennessee.

78. In *Scyoc,* Uber incorrectly states in their motion that Bret Stanley did not properly gain admission to the Middle District of Tennessee, even though Bret Stanley had gained full admission to the district by the deadline. Uber goes on in their motion to state that Bret Stanley should be prohibited from being a counsel of record in the *Scyoc* matter due to concerns that Bret Stanley may "use Uber's confidential information that he has previously obtained access to in the MDL in this litigation…and would fail to honor any confidentiality obligations imposed by this Court, either of which would prejudice Uber and may constitute further violations." *See* Exhibit X at ECF 18, page 3.

79. Uber's Motion to Prohibit Counsel required a response from Bret Stanley. *See* Exhibit Y, ECF 20, Stanley Response to Uber's Motion to Prohibit Participation of Bret Stanley.

80. After reviewing the papers, the *Scyoc* court denied Uber's Motion to Prohibit Participation of Counsel Bret Stanley because Uber's Motion "fail[ed] to cite or analyze the legal standard to disqualify counsel." *See* Exhibit Z, ECF 21, Nov. 10, 2025 Order Denying Uber's Motion to Prohibit Participation of Counsel in *Scyoc*.

81. Uber's actions indicate that it is not acting in good faith concerning the discovery process in either *Lord* or *Smith* and Uber's personal attacks on Bret Stanley in *Scyoc* are clear bad faith measures.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 17th day of November, 2025 in Houston, Texas.

_____
Bret Stanley