Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
And RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER LLC AND RASIER-CA, LLC'S ADMINISTRATIVE MOTION TO SEAL CERTAIN MATERIALS ATTACHED TO THE PARTIES' MOTIONS TO EXCLUDE EXPERTS**<br><br>Judge:      Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor |

Pursuant to Northern District of California Civil Local Rules 7-11 and 79-5(f)(3), Defendants Uber Technologies Inc., Rasier LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit this Administrative Motion ("Motion") to Seal Certain Materials Attached to the Parties' Motions to Exclude Experts. Uber has conferred with Plaintiffs, who do not oppose Uber's proposed redactions. *See* Declaration of Kristen Renee Fournier in Support of the Administrative Motion to Seal, ¶ 2. For the reasons set forth herein, there are compelling reasons to seal the narrowly-tailored proposed redactions in the following Exhibits[1]:

| Document | Description |
|---|---|
| Ex. 1 to Uber's Motion to Exclude Bruce Weiner (Fournier Decl. Ex. A) | Redacted Report of Bruce Weiner[2] |
| Ex. 2 to Uber's Motion to Exclude Bruce Weiner (Fournier Decl. Ex. B) | Redacted Deposition of Bruce Weiner |
| Ex. 1 to Uber's Motion to Exclude Cynthia Rando, CHFP (Fournier Decl. Ex. C) | Redacted Expert Report of Cynthia Rando, CHFP |
| Ex. 1 to Uber's Motion to Exclude John Chandler, Ph.D. (Fournier Decl. Ex. D) | Redacted Expert Report of John Chandler, Ph.D. |
| Ex. 4 to Uber's Motion to Exclude John Chandler, Ph.D. (Fournier Decl. Ex. E) | Redacted Rebuttal Expert Report of John Chandler, Ph.D. |
| Ex. 7 to Uber's Motion to Exclude John Chandler, Ph.D. (Fournier Decl. Ex. F) | Redacted Rebuttal Report of Victoria Stodden, Ph.D. |
| Ex. 8 to Uber's Motion to Exclude John Chandler, Ph.D. (Fournier Decl. Ex. G) | Redacted Incident Report Classification of Dominant Tickets for 2017-2024 |
| Ex. 1 to Uber's Motion to Exclude Lacey Keller (Fournier Decl. Ex. H) | Redacted Expert Report of Lacey R. Keller |
| Ex. 2 to Uber's Motion to Exclude Lacey Keller (Fournier Decl. Ex. I) | Redacted Deposition of Lacey Keller |

---

[1] Uber is also seeking narrow conforming redactions to one page of Plaintiffs' *Daubert* brief (Fournier Decl. Ex. O).

[2] In each case, Uber is the party claiming confidentiality.

| Document | Description |
|---|---|
| Ex. 1 to Uber's Motion to Exclude Thomas R. Tremblay (Fournier Decl. Ex. J) | Redacted Expert Report of Thomas R. Tremblay |
| Ex. 1 to Uber's Motion to Exclude Veronique Valliere (Fournier Decl. Ex. K) | Redacted Expert Report of Veronique Valliere |
| Ex. 3 to Uber's Motion to Exclude Veronique Valliere (Fournier Decl. Ex. L) | Redacted Deposition of Veronique Valliere |
| Ex. 1 to Uber's Motion to Exclude Lindsay D. Cameron, Ph.D. (Fournier Decl. Ex. M) | Redacted Rebuttal Report of Lindsay D. Cameron, Ph.D. |
| Ex. C to Plaintiffs' Motion to Exclude Expert Testimony (Fournier Decl. Ex. N) | Redacted Export Report of Vida Thomas |
| Ex. B to Plaintiffs' Motion to Exclude Orchowoski (Fournier Decl. Ex. P) | Redacted Deposition of Lindsay Orchowoski, Ph.D. |

## I. LEGAL STANDARD

In the Ninth Circuit, courts use one of two standards to decide whether a document supporting a motion should remain under seal—the "compelling reasons" standard or the "good cause" exception. *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, 2024 WL 4487404, at *1 (N. Cal. Aug. 13, 2024) (internal citations omitted). When a motion is dispositive, the compelling reasons standard applies. *Id. Daubert* motions are generally considered dispositive for purposes of a sealing motion. *E.g.*, *United States v. Rite Aid Corp.*, No. 2:12-CV-1699-KJM-EFB, 2019 WL 1923234, at *2 (E.D. Cal. Apr. 30, 2019).

"'[B]usiness information that might harm a litigant's competitive standing [if disclosed]' meets the compelling reasons standard for sealing." *Miller v. RP On-Site, LLC*, No. 19-CV-02114-LHK, 2021 WL 624175, at *2 (N.D. Cal. Jan. 8, 2021) (citing *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008)); *see also Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2015 WL 13673842, at *2 (N.D. Cal. Aug. 4, 2015) ("common-law right of inspection has bowed before the power of a court to insure that its records" are not used as "sources of business information that might harm a litigant's competitive standing'") (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)); *Lawson v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2017 WL 2951608, at *9 (N.D. Cal. July 10, 2017) ("Sources of business information that might harm a litigant's competitive strategy may also give rise to a compelling reason to

seal, as may pricing, profit, and customer usage information kept confidential by a company that could be used to the company's competitive disadvantage.") (internal alterations and citations omitted); *Bold Ltd. v. Rocket Resume, Inc.*, No. 22-cv-01045-BLF, 2024 WL 1329921, at *2 (N.D. Cal. Mar. 27, 2024) ("The Court finds compelling reasons to seal" the requested documents, which "discuss non-public information about Bold's corporate structure and finances, which if released would cause Bold competitive harm."); *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2019 WL 1767158, at *2 (N.D. Cal. Apr. 22, 2019) (noting that under the compelling reasons standard, courts have upheld the sealing of "trade secrets, marketing strategies, product development plans, detailed product-specific financial information, customer information, internal reports and other such materials that could harm a party's competitive standing").

## II.     ARGUMENT

Uber has a compelling interest in redacting the requested portions of the Exhibits. Release of the redacted materials described below to Uber's competitors and the public would result in competitive harm to Uber, which outweighs the public interest in disclosure here.

<u>Redactions concerning Uber's S-RAD Technology</u>. The redacted materials contain specific details concerning Uber's confidential and proprietary trip-matching safety assessment technology called Safety Risk Assessment Dispatch, or S-RAD. *See* Declaration of Sunny Wong ("Wong Decl."). The materials "describe specific variables that are programmed into the S-RAD technology, inputs and data points utilized by the technology, detailed product development and testing information such as results of internal experiments evaluating precision and recall metrics at different settings, details of the technology's development process and design trials, historical information regarding features and variables utilized in different iterations of S-RAD models over time, reasons and internal business rationales for certain design decisions related to S-RAD, and confidential information about how the S-RAD technology functions." *Id.* ¶ 4; *see also id.* ¶¶ 12-25 (describing the specific competitively sensitive information in the Exhibits concerning S-RAD).

Details concerning S-RAD are kept confidential, even within Uber. *Id.* ¶ 7. Indeed, Plaintiffs' own experts have noted that, until very recently, Uber kept even the very existence of S-RAD confidential. Chandler Rpt. ¶ 159 (S-RAD "considered confidential"); Valliere Rpt. at 21 ("Uber disclosed S-RAD to

the public for the first time in August 2025 in response to the *New York Times* article"); Keller Dep. at 151:16-21 ("Uber has chosen to do a number of things behind closed doors, including developing the S-RAD program … but they have told the public nothing about that"). Its existence was disclosed only recently in connection with this and related litigation, including via a leak of the sealed JCCP summary judgment opposition materials to the *New York Times* in violation of the Protective Order. *See* Fournier Decl., Ex. Q, 10/22/25 JCCP Order Granting Uber's Motion to Enforce the Protective Order. Moreover, Uber's investment of time and resources in developing and refining the S-RAD technology has been significant. Wong Decl. ¶ 7.

Disclosure of the details concerning S-RAD would cause competitive harm to Uber by allowing its competitors to use that information to Uber's competitive disadvantage and to potentially reverse-engineer the S-RAD technology for their own use. *Id.* ¶¶ 8-10; *see E. W. Bank v. Shanker*, No. 20-CV-07364-WHO, 2021 WL 3112452, at *17 (N.D. Cal. July 22, 2021) (granting motion to seal "proprietary, confidential, and trade secret information, which if made public, would harm [party's] business by, e.g., allowing competitors to replicate [party's] development of [its digital banking service] without expending the resources it invested"); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 7911651, at *4 (N.D. Cal. Apr. 6, 2016) (sealing information when "there could be a risk that competitors would reproduce or recreate features of Defendants' products"); *Ashcraft v. Welk Resort Grp., Corp.*, No. 2:16-CV-02978-JAD-NJK, 2019 WL 12518367, at *2 (D. Nev. Sept. 26, 2019) (sealing information that "a competitor could [use to] reverse-engineer" Experian's systems); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *2 (N.D. Cal. June 1, 2020) (granting motion to seal when "public release of these documents could give non-party competitors an unfair advantage in the development or marketing of rival products"); *CertainTeed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*, No. 19-CV-00802-LHK, 2021 WL 6621061, at *2 (N.D. Cal. Dec. 13, 2021) (granting motion to seal "company's internal report about the efficacy of the company's products" because it "is a 'compilation of information which is used in [the company's] business' and gives the company 'an opportunity to obtain an advantage over competitors who do not know or use it'") (citations omitted); *Kowalsky v. Hewlett-Packard Co.*, No. 5:10-CV-02176-LHK, 2012 WL 892427, at *4 (N.D. Cal. Mar. 14, 2012) (granting motion to seal information concerning party's "product testing, development, and evaluation processes");

*Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2021 WL 2476916, at *4 (N.D. Cal. June 17, 2021) (granting motion to seal "exhibits that comprise internal Apple documents on iCloud's development and technical metrics").

Release of the information could also allow users of the Uber platform or other individuals to take steps to undermine or circumvent S-RAD's effectiveness. *See, e.g.*, *Ashcraft*, 2019 WL 12518367, at *2 (sealing information that "identity thieves could use [ ] to develop methods to circumvent Experian's protections"); *Campbell v. Facebook, Inc.*, No. 13-cv-05996-PJH (MEJ), 2015 WL 12965295, at *2 (N.D. Cal. Oct. 15, 2015) (finding good cause to seal documents that could cause Facebook competitive harm and compromise the technology of the products, harming Facebook and Facebook's end users).

<u>Redactions concerning Uber's strategic resource allocation and prioritization.</u> The redacted materials contain confidential information about Uber's strategic resource allocation decisions, including technology investment priorities and phases. *See* Declaration of Greg Brown ("Brown Decl.") ¶ 11. They include specific percentages and dollar figures, representing Uber's feature investment decisions and strategy over multiple years. *Id.* They also contain figures outlining Uber's marketing budget and strategy, including specific dollar allocation. *Id.* Disclosure of Uber's resource allocation decisions, financial priorities, and budgeting numbers and strategies would provide competitively sensitive information to Uber's competitors that they could use to gain insight into Uber's allocation of resources and financial position, providing competitors with an unfair competitive advantage over Uber. *See E. W. Bank*, 2021 WL 3112452, at *17 (granting motion to seal "financial investment and budget" information under compelling reasons standard); *Aerodynamics Inc. v. Caesars Ent. Operating Co.*, No. 2:15-CV-01344-JAD-PAL, 2015 WL 5679843, at *14 (D. Nev. Sept. 24, 2015) (sealing budget analysis and financial model under compelling reasons standard).

<u>Redactions concerning safety feature performance and experimentation.</u> The redacted materials contain internal assessments of Uber's Real Time ID ("Mutombo") safety product. Brown Decl. ¶ 12. They also include information concerning Uber's methodology for conducting product testing and experimentation, as well as the results of those tests and experiments. *Id.* Publicly disclosing this information would provide Uber's competitors with the benefits of the insights of Uber's proprietary research, assessments, product testing, and experiments without investing the same resources or efforts.

Uber's competitors could use this information to develop strategies and programs to counter, preempt, or differentiate themselves from Uber's initiatives and features. *See CertainTeed Gypsum, Inc.*, 2021 WL 6621061, at *2 (granting motion to seal "company's internal report about the efficacy of the company's products"); *Kowalsky*, 2012 WL 892427, at *4 (granting motion to seal information concerning party's "product testing, development, and evaluation processes").

Risk Assessments. The redacted materials contain confidential information about Uber's internal risk assessment approaches, including the factors and data inputs to a particular risk assessment model and methodology. Brown Decl. ¶ 13. Public disclosure of the information would cause competitive harm to Uber by providing its competitors with confidential information regarding Uber's internal approaches to risk assessment, which competitors could utilize and implement to their own competitive advantage. Additionally, disclosure would cause competitive harm to Uber by providing its competitors with confidential information regarding the data points and specific factors that Uber uses to create new metrics, which Uber's competitors could leverage against Uber to its competitive disadvantage. *See In re Qualcomm Litig.*, No. 3:17-CV-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (sealing information to "prevent competitors from gaining insight into the parties' business model and strategy").

Driver screening and retention. The redacted materials contain confidential internal details about Uber's driver screening and retention policies, including concerning the impact of screening procedures on risk assessment and compliance, the economic impact that each driver has on Uber, and internal strategies for retaining drivers. Brown Decl. ¶ 14. Disclosure of this information would result in competitive harm to Uber by providing its competitors with confidential information that Uber's competitors could leverage against Uber to its competitive disadvantage. Information concerning how Uber is obtaining and retaining drivers is of great interest to Uber's competitors in screening and retaining their own work force and could be leveraged against Uber to its competitive disadvantage. *Lawson*, 2017 WL 2951608, at *10 (sealing information that "discuss[es] how drivers receive orders and how Grubhub manages drivers"); *Laatz v. Zazzle, Inc.*, No. 22-CV-04844-BLF, 2025 WL 405702, at *3 (N.D. Cal. Feb. 5, 2025) (granting motion to seal information about party's "internal technical operations, technical search processes, [and] internal business processes" under compelling reasons standard).

  Cerebro and uSights. The redacted materials include details concerning Cerebro and uSights, two iterations of an in-house psychometric assessment that could be used in driver screening. Brown Decl. ¶ 15. They include information about Uber's testing and results, as well as its strategy concerning the deployment of those tools. *Id.* Public disclosure of this competitively sensitive information would harm Uber, because the information could be leveraged by Uber's competitors in developing their own psychometric screening tools and strategies. *See CertainTeed Gypsum, Inc.*, 2021 WL 6621061, at *2 (granting motion to seal "company's internal report about the efficacy of the company's products"); *Kowalsky*, 2012 WL 892427, at *4 (granting motion to seal information concerning party's "product testing, development, and evaluation processes").

  Deactivation and investigation processes. The redacted materials include confidential details concerning Uber's deactivation and investigation procedures following its receipt of various incident reports, including screenshots of Uber's "Investigations Workbench." Brown Decl. ¶ 16. Unsealing these documents would result in competitive harm to Uber because Uber's main competitors could replicate Uber's investigative and deactivation processes, which Uber has invested significant human and financial capital to develop and operationalize. *Laatz*, 2025 WL 405702, at *3 (granting motion to seal information about party's "internal technical operations, technical search processes, [and] internal business processes" under compelling reasons standard); *E. W. Bank*, 2021 WL 3112452, at *17 (granting motion to seal "proprietary, confidential, and trade secret information, which if made public, would harm [party's] business by, e.g., allowing competitors to replicate [party's] development of [its digital banking service] without expending the resources it invested"); *Finjan, Inc.*, 2016 WL 7911651, at *4 (sealing information when "there could be a risk that competitors would reproduce or recreate features of Defendants' products."); *Rite Aid Corp.*, 2019 WL 1923234, at *2 (granting motion to seal "'detailed, non-public information' regarding [party's] 'internal data systems, processes, and practices,'… consisting primarily of the layout, organization, and content of [party's] internal computer system"); *id.* (compelling reasons existed to seal exhibit where public dissemination "'may allow Defendants' competitors to reap the benefit of the [content] without having to incur the costs associated with developing the[m]'") (citing *Esquivel v. Bank of Am., N.A.*, No. 2:12-CV-02502-GEB, 2015 WL 4224712, at *4 (E.D. Cal. July 10, 2015)). Moreover, revealing Uber's investigative and deactivation processes to the public could allow third-party

users of the Uber app to undermine and exploit Uber's methodologies for investigating and deactivating riders and drivers, including through fraudulent activity, compromising safety to the detriment of users and drivers. *Ashcraft*, 2019 WL 12518367, at *2 (sealing information that "identity thieves could use [ ] to develop methods to circumvent Experian's protections").

Survey data. The redacted materials describe the results of Uber's confidential research studies and survey data reflecting user safety experiences, perceptions, and beliefs. Brown Decl. ¶ 17. Publicizing this information could put Uber at a competitive disadvantage by providing Uber's competitors with the benefits of Uber's proprietary research insights, enabling competitors to modify or tweak their own safety experiences by free-riding on Uber's investment of time and financial resources. The information could also allow Uber's competitors to assess weak spots in the Uber experience from users' perspectives, and tailor their own products to differentiate themselves or compete with Uber in those specific areas. *See Rodman*, 2015 WL 13673842, at *2 (granting motion to seal materials concerning "business decision-making" and "customer research").

Uber's relationships with non-profit organizations. The redacted materials discuss internal documents concerning Uber's strategies involving and relationships with non-profit organizations. Brown Decl. ¶ 18. Publicizing this information would provide Uber's competitors with valuable confidential information about Uber's confidential strategies in this area, which the competitors could potentially leverage in competing with Uber and use in their own relationships with non-profits. *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-CV-03844-JST, 2015 WL 12976921, at *3 (N.D. Cal. Mar. 31, 2015) (granting motion to seal, under compelling reasons standard, "information about [party's] consulting relationships and other confidential agreements").

Data re Reports of Sexual Assault/Sexual Misconduct. The redacted materials contain certain raw data (as well as calculations using that data) from Uber's internal systems, in particular Uber's Flack system. Brown Decl. ¶ 19. Certain top-level raw data (total annual counts of sexual assault and sexual misconduct reports) from Uber's internal systems have been made public through the JCCP trial, as well as prior to that via a leak of sealed JCCP records to the *New York Times* in violation of the Protective Order. Uber is therefore not seeking to seal any of its raw top-level annual data. However, data concerning the breakdown of those topline numbers into taxonomy categories has not been made public and has

instead been kept confidential within Uber. Moreover, these category data (which were produced from Uber's Flack system) are particularly sensitive, because the data reflect not merely how the reports come into Uber or how a human decisionmaker would classify them, but also the logic employed by the Flack system to choose a dominant category and eliminate duplication. The release of this data to Uber's competitors would provide them with insight that they could leverage in competing with Uber.

Importantly, after the top-line annual data in the sealed JCCP records were leaked to a reporter and published in the *Times*, Consumer Attorneys of California ("CAOC"), a plaintiffs' counsel advocacy group with which certain plaintiffs' counsel in this case are affiliated, launched "a robust ad campaign" seeking to leverage the *Times*' reporting on the leaked information. *See CAOC Launches New Campaign: Every 8 Minutes*, J. Gossett, CAOC News, https://www.caoc.org/?pg=Blog&blAction=showEntry&blogEntry=133206 (Oct. 27, 2025). The initial version of the ad falsely attributed to the *New York Times* a statistic that "[a] sexual crime was reported to Uber almost every eight minutes." Fournier Decl. ¶ 20. After Uber sent a cease-and-desist letter, the ad was revised to omit that particular false claim. The ad continues to misleadingly conflate Uber's receipt of a report of sexual misconduct or assault with silencing victims, by claiming "every 8 minutes, Uber tries to silence victims." The willingness of the CAOC—which has officers and members that represent Plaintiffs' counsel here—to make these false and misleading statements supports sealing the non-top-level data that is still confidential so as to protect Uber from further libelous statements and further potential contamination of the juror pool. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to … circulate libelous statements") (citing *Nixon*, 435 U.S. at 598).

The redacted materials also contain related information about how the data is stored, labeled, organized, and classified, and the fields of information that are maintained by Uber. Brown Decl. ¶ 20. This is also sensitive and confidential information that would be valuable to Uber's competitors to copy in their own data collection, organization, and analysis. *See Rite Aid Corp.*, 2019 WL 1923234, at *2 (granting motion to seal information about "the layout, organization, and content of [party's] internal computer system").

In addition, Uber is not seeking to seal any of the exhibits in full, but only to redact limited excerpts that are necessary to seal in order to protect Uber from competitive harm. *See Rodman*, 2015 WL 13673842, at *2 (granting motion to seal when company "has proposed to redact only the portions of the documents containing the confidential information"); *In re Qualcomm*, 2017 WL 5176922, at *2 (granting motion to seal when parties sought "to only redact the portions of the filings and the precise exhibits that implicate such confidential business information"). Moreover, to the extent information was already made public in connection with the JCCP trial and other proceedings, Uber is also not seeking to protect that information. Thus, Uber's approach is the least restrictive alternative and is narrowly tailored to protect Uber's competitive and other interests.

Accordingly, compelling reasons exist for the Court to redact the Exhibits as described above. Uber therefore respectfully requests that the Court order that the redacted Exhibits be maintained on the docket under seal.

DATED: November 24, 2025            Respectfully submitted,

*/s/ Laura Vartain Horn*
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER,LLC, And RASIER-CA, LLC