**Exhibit Q**

FILED
San Francisco County Superior Court

OCT 22 2025

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| COORDINATION PROCEEDING<br>SPECIAL TITLE [RULE 3.550]<br><br>IN RE UBER RIDESHARE CASES<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Cases.* | Case No. CJC-21-005188<br>JUDICIAL COUNCIL COORDINATION<br>PROCEEDING NO. 5188<br><br>ORDER GRANTING UBER'S MOTION TO<br>ENFORCE THE PROTECTIVE ORDER |

Uber's motion to enforce the protective order came on for hearing on October 21, 2025. Having considered the pleadings and papers on file in the action, and the arguments of counsel presented at the hearing, the Court hereby grants the motion.

## BACKGROUND

The parties are familiar with the procedural and factual background to this motion, which the Court will not reiterate here in detail. In brief, on August 8, 2025, *The New York Times* published an article entitled "Uber's Festering Sexual Assault Problem" that, according to the author, was based in part on "sealed court records." (Vartain Horn Decl. Ex. 1, 1; see also *id.* ["interviews with more than a dozen current and former employees, internal documents and court records. Hundreds of the records

- 1 -

have been under seal as part of large-scale sexual assault litigation."]; *id.* Ex. 1, 17 ["As part of the ongoing litigation, a judge in California last week said in a preliminary ruling that some of the documents should be unsealed, though the records have yet to be released."].)[1]

Uber makes a detailed and convincing showing that the records in question were those filed by Plaintiffs under seal in this Court in opposition to Uber's motion for summary judgment, as well as from deposition testimony or documents produced in discovery. (See Opening Brief, 3-10; Reply, 3-5 & Ex. 27; Vartain Horn Decl. Ex. 8 [Uber's counsel "identified the vast majority of the confidential documents quoted and described in the Article as matching the sealed materials submitted by Plaintiffs in connection with their opposition to Uber's summary judgment motion in the JCCP."].)

Thus, Uber shows, and Plaintiffs do not contest, that documents and other materials filed under seal with the Court were disclosed to third parties in violation of the parties' stipulated amended protective order, which was entered as an order of the Court on March 5, 2025. (Vartain Horn Decl. Ex. 2.)[2] That Order prohibits the disclosure of discovery materials marked as confidential or highly confidential-attorneys' eyes-only to parties not involved in the litigation. (*Id.* ¶¶ 7.1, 7.2.) It also provides that the parties may use such Protected Material "only for litigating or attempting to settle this litigation, including through mediation." (*Id.* ¶ 7.1.) The Order provides that it "shall be binding upon the Parties, upon their attorneys," and upon various agents of the Parties and their attorneys. (*Id.* ¶ 12.4.) "The Parties, their attorneys and employees of such attorneys, and their Expert witnesses, consultants and representatives retained in connection with this Action each expressly stipulates to the personal jurisdiction of this Court for the purposes of any proceeding brought by a Party to this Action to enforce this Stipulation and Order." (*Id.*; see also *id.* ¶ 15 [Court's retention of jurisdiction to enforce order even after the action has concluded].)

Uber took a number of steps to determine the source of the leak. First, it directed correspondence

---

[1] On July 29 and 30, 2025, the Court issued its tentative rulings on Uber's motions to seal confidential materials filed in connection with the summary judgment motion, which was heard and decided on July 31, 2025. Plaintiffs' opposition to that motion was filed on May 23, 2025, and was accompanied by a voluminous compendium of supporting evidence.

[2] An earlier stipulated protective order was filed on September 14, 2022.

- 2 -

*In Re Uber Rideshare Cases* JCCP 5188
Order Granting Uber's Motion To Enforce The Protective Order

to Plaintiffs' lead counsel in this proceeding and the MDL. (Vartain Horn Decl. Exs. 13, 16.) Several of Plaintiffs' lead counsel responded, albeit not in the comprehensive and unequivocal terms that Uber asserts would be appropriate. (*Id.* Exs. 14, 15, 17.) Second, Uber sought and obtained the *Times*' assurance that it did not obtain access to the materials through File&ServeXpress, the Court's e-service vendor. (*Id.* Exs. 9-10.) Third, Uber looked into whether the sealed materials could have been disclosed by its own employees, attorneys, or other agents. It represents that "[o]nly Uber's legal department, a few other selected employees, and its outside counsel had access" to the complete set of Plaintiffs' opposition exhibits, and that "certain documents within the set (and quoted in the article) are generally unavailable at Uber outside of the legal department." (Opening Brief, 12-13.) It has filed with its motion declarations certifying that Uber and each of its outside counsel contacted each employee, attorney and staff member who, "based on a reasonable investigation, may have had access to the compilation of sealed documents/exhibits (or a significant subset thereof) submitted in connection with Plaintiffs' summary judgment opposition in the JCCP," and that each such person "confirmed that they had not shared or in any way provided access to any of the documents referenced in the Article to the *New York Times* or its agents, either directly or indirectly." (Vartain Horn Decl. Exs. 4-9.)

Uber now moves to enforce the protective order. In particular, it requests the Court to order each Plaintiffs' counsel subject to the protective order "to conduct an investigation and to certify that they have no knowledge relating to how sealed information protected as confidential under the Protective Order was communicated to the *New York Times*," or in the alternative to submit a declaration "indicating that their investigation revealed information concerning the source of this unauthorized disclosure to the Times and describing the circumstances of such disclosure." (Motion, 1; Proposed Order, 2.) In particular, Uber asks the Court to order each Plaintiffs' counsel to sign a certification reciting as follows:

### CERTIFICATION OF INVESTIGATION FACTS

1. I contacted each employee, contractor, consultant or agent (including expert witnesses) working with [INSERT FIRM NAME HERE], as well as any client who, to [the] best of my knowledge and based on a reasonable investigation, had access to

- 3 -

> the compilation of sealed documents/exhibits (or a significant subset thereof) submitted in connection with Plaintiffs' summary judgment opposition in the JCCP. Each of the individuals confirmed to me they did not share or in any way provide access, directly or indirectly, to any of the documents referenced in the Article to the *New York Times* or its agents, either directly or indirectly. I did not contact consultants, contractors, agents, or experts that I knew were contacted by another law firm.
>
> 2. I do not have any knowledge or information relating to the identity of any person, entity, or organization that was involved in any way—either directly or indirectly—in sharing confidential information with the New York Times.
>
> [OR]
>
> 3. The investigation described in paragraph 1 revealed information concerning the source of this unauthorized disclosure to the New York Times [and then describe the circumstances of the disclosure].

(Proposed Order, 3.)[3] Plaintiffs oppose the motion.

## **LEGAL STANDARD**

The Discovery Act authorizes a court to issue orders that justice requires to protect any party, deponent, or other natural person or organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and expense, including an order directing that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only to specified persons or only in a specified way." (Code Civ. Proc. § 2025.420(b)(13).) Similar authority exists for document production under section 2031.060, which allows courts to order that the items produced be sealed and thereafter opened only on order of the court. (*Id.* § 2031.060.)

If a party or attorney violates a protective order by improperly disclosing materials filed under seal to third parties, such as the press, the violation is enforceable by contempt or monetary sanctions. (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 317.) Federal courts follow the same rule. (*See, e.g., Lyn-Lea Travel Corp. v. American Airlines, Inc.* (5th Cir. 2002) 283 F.3d 282, 290-292 [$18,404 in sanctions awarded against party and counsel for violating protective orders by revealing

---

[3] The proposed certification is substantially similar to one that Uber and the MDL Plaintiffs' Leadership have been discussing for use in that proceeding. (Vartain Horn Decl. ¶¶ 25, 27-29 & Exs. 23, 25, 26.)

- 4 -

contents of sealed documents to the press, together with finding of contempt against counsel for filing complaint that quoted portions of the sealed documents]; *Ross v. University of Tulsa* (N.D. Okla. 2016) 225 F.Supp.3d 1254 [in action against university for failing to protect plaintiff from sexual assault by student athlete, finding of civil contempt and sanctions against plaintiff's counsel for violating protective order by disclosing sealed deposition and other materials to journalist]; *Grove Fresh Distributors, Inc. v. John Labatt Ltd.* (N.D. Ill. 1995) 888 F.Supp. 1427, 1445-1447 [finding counsel in civil and criminal contempt for disclosing information under seal, in violation of court orders, in correspondence to intervenor organization of journalists and in conversation with New York Times reporter].)

## DISCUSSION

On the record before the Court, there appears to be little room for doubt that sealed filings from this proceeding were improperly disclosed to third parties in violation of the protective order.[4] Further, Uber has filed declarations with the Court that provide a substantial showing that neither Uber itself nor any of its outside counsel was responsible for the disclosure. Uber now seeks to require Plaintiffs' counsel in this proceeding to provide a similar written certification.[5] Plaintiffs oppose the motion on several grounds. None is well-taken.

First, Plaintiffs contend that Uber lacks evidence to support its allegations. (Opposition, 3-4.) In particular, Plaintiffs point to the *Times* reporter's statement that her reporting was based on "thousands of pages of Uber documents, court records, and interviews with more than a dozen current and former Uber employees," and complain that Uber "has not provided any specifics on whether it investigated its own direct, substantial participation in the Times' reporting and, if so, any detail of what it found." (*Id.* at 4.) They also complain that the declarants conducted their investigations only after the *Times* article ran. (*Id.*) The Court is not persuaded. Whether or not Uber's current or former employees made themselves

---

[4] The MDL Court reached the same conclusion. (See Vartain Horn Decl. Ex. 22, 1-2.)
[5] The Court previously declined to allow Uber to serve subpoenas on Plaintiffs' counsel shortly before trial. For any number of reasons, Uber's current request for written certifications by counsel is far less problematic.

- 5 -

available for interviews is besides the point, which is who disclosed the "thousands of pages of Uber documents," many of them filed under seal with this Court. So is the timing of Uber's investigation.

Second, Plaintiffs claim that Uber's only legal authority does not support its position, and attempts to distinguish on their facts the two unpublished federal opinions on which it relies, which they contend "provide neither applicable authority nor underlying rationale to support Uber's motion." (Opposition, 1, 5-6.) However, there can be no dispute that under controlling California law, this Court has broad authority to "compel obedience to its judgments, orders, and process." (Code Civ. Proc. § 128(a)(4); see also *id.* § 1209(5) [contempt of the authority of the court includes "[d]isobedience of any lawful judgment, order, or process of the court"]; *In re Nolan W.* (2009) 45 Cal.4th 1217, 1230 ["It is well settled that the court has inherent power to enforce compliance with its lawful orders through contempt."].) That principle necessarily implies that the Court also must have the authority to investigate suspected violations of its orders when they are brought to its attention. It does, as one California decision (which neither party cites) squarely held:

> Clearly, the trial court has the authority and duty to investigate possible violations of its protective and seal orders by those subject to their provisions in order to protect the integrity of the judicial process, to assure the proper administration of justice and to perfect the record pertaining to an issue likely to raise on appeal. To this end the court is empowered to require the attendance of witnesses, including those not subject to the orders, and to compel nonprivileged testimony germane to the objects of the hearing.

(*Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, 210 [court conducted hearing regarding source of leak of sealed grand jury transcript to The Fresno Bee newspaper at which 13 witnesses with access to the transcript, including counsel, testified];[6] see also, e.g., *Lyn-Lea Travel Corp.*, 283 F.3d at 290 & fn. 14 [magistrate judge made findings after hearing testimony of plaintiff's president, who admitted that he spoke with numerous reporters during the course of the litigation, was quoted in one publication regarding

---

[6] In *Rosato*, the court also compelled journalists to testify and affirmed the trial court's orders finding them in contempt for refusing to answer certain questions, holding that the shield law (Evidence Code section 1070) protected the press from revealing "any source other than those court officers subject to the orders issued by the court." (51 Cal.App.3d at 224.) While that aspect of the court's opinion is open to doubt (see, e.g., *In re Willon* (1996) 47 Cal.App.4th 1080, 1096-1097), it is not pertinent here, as Uber has not sought any relief against the *New York Times* or its reporter.

- 6 -

the contents of sealed documents, and acknowledged making such statements]; *Ross*, 225 F.Supp.3d at 1260-1261 [after newspaper published article which defendant university contended contained factual information that could only have been obtained through documents produced in the litigation, university filed motion for contempt and requested evidentiary hearing, following which plaintiff stipulated that plaintiff's counsel provided the materials in question to the journalist based on his interpretation of the protective order].) If Plaintiffs' apparent position that the Court lacks any authority to look into violations of its own orders were to be accepted, it would render any such order a dead letter, not even worth the paper it is printed on. The Court flatly rejects that position. (See, e.g., *Branson v. Sharp Healthcare* (2011) 193 Cal.App.4th 1467, 1476 fn. 4 ["The power to enforce their decrees is necessarily incident to the jurisdiction of courts. Without such power, a decree would, in many cases, be useless. All courts have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it, they would be utterly powerless." (cleaned up)].)

Third, Plaintiffs protest that Uber's suspicion is based on a "bizarre premise": that Plaintiffs' counsel would have engaged in such a violation of the Court's Order, despite the years of litigation that preceded the *Times* article, the Court's tentative ruling on Uber's motions to seal, and the timing of the apparent disclosure, shortly before the September 8, 2025 trial date. (Opposition, 1, 6.) The Court disagrees. As Uber points out, it is plausible that the disclosure may have been intended to taint the jury pool, or perhaps to attract additional clients as plaintiffs. (Reply, 7-8.) Regardless, the fact remains that numerous documents filed under seal with the Court were improperly disclosed in violation of the Court's protective order. The Court will not close its eyes to that violation, which it takes seriously, merely because the Court is currently unaware of the responsible party's identity or motivation for violating its order.[7]

---

[7] Plaintiffs complain that Uber's motion is targeted at the JCCP Plaintiffs' Leadership Counsel (PLC). (Opposition, 1; see also *id.* at 7 ["an outlandish allegation launched at the entirety of Plaintiffs' Leadership Counsel."].) However, Uber has not accused any particular firm or group of firms of having violated the Court's protective order. Rather, it points out that there are 41 plaintiffs' firms involved in the JCCP. (Opening Brief, 11.)

- 7 -

*In Re Uber Rideshare Cases* JCCP 5188
Order Granting Uber's Motion To Enforce The Protective Order

Fourth and finally, Plaintiffs argue that Uber's decision not to file its motion with any substantive redactions or to lodge it under seal "compounds any problem it has, exposes additional sensitive information of non-parties, and demonstrates Uber is not actually concerned with protecting sensitive or confidential information," but rather that "the real purpose behind its motion is to harass Plaintiffs and their counsel." (Opposition, 2, 7.) Uber responds that it is obviously too late to seal the information already published by the *Times*, and that the Court has already tentatively denied its motion to seal certain of the exhibits in question. (Reply, 9-10.) The Court is unconvinced by Plaintiffs' attempt at deflection.

For these reasons, the Court hereby orders that each Plaintiffs' counsel in this proceeding who had access to the sealed materials at issue (including those who may no longer be counsel of record) shall conduct a reasonable investigation and either sign the certification attached as an exhibit to this Order or else submit a declaration indicating that their investigation revealed information concerning the source of this unauthorized disclosure to the Times and describing the circumstances of such disclosure. Plaintiffs' leadership counsel (Co-Lead and Liaison Counsel) shall file the certifications with the Court no later than November 24, 2025.

IT IS SO ORDERED.

Dated: October 22, 2025

Ethan P. Schulman
Judge of the Superior Court

- 8 -

## Exhibit A

### CERTIFICATION OF INVESTIGATION FACTS

1. I contacted each employee, contractor, consultant or agent (including expert witnesses) working with [INSERT FIRM NAME HERE], as well as any client who, to best of my knowledge and based on a reasonable investigation, had access to the compilation of sealed documents/exhibits (or a significant subset thereof) submitted in connection with Plaintiffs' summary judgment opposition in the JCCP. Each of the individuals confirmed to me they did not share or in any way provide access, directly or indirectly, to any of the documents referenced in the Article to the *New York Times* or its agents, either directly or indirectly. I did not contact consultants, contractors, agents, or experts that I knew were contacted by another law firm.

2a. I do not have any knowledge or information relating to the identity of any person, entity or organization that was involved in any way—either directly or indirectly—in sharing confidential information with the New York Times.

[OR]

2b. The investigation described in paragraph 1 revealed information concerning the source of this unauthorized disclosure to the New York Times [and then describe the circumstances of the disclosure].

[~~PROPOSED~~] ORDER

Case No. CJC-21-005188

# CERTIFICATE OF ELECTRONIC SERVICE
## (CCP 1010.6, and CRC 2.251)

I, Edward Santos, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On October 22, 2025, I electronically served:

**ORDER GRANTING UBER'S MOTION TO ENFORCE THE PROTECTIVE ORDER**

via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Date:   OCT 2 2 2025

Brandon E. Riley, Court Executive Officer

By: _____

Edward Santos, Deputy Clerk