[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**<br><br>This Document Relates to:<br><br>All Cases | No. 3:23-md-03084-CRB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' ADMINISTRATIVE MOTION FOR ORDER ESTABLISHING COMMON FACT DISCOVERY CUT-OFF**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor |

**INTRODUCTION**

Plaintiffs respectfully submit this response in opposition to Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's ("Defendants" or "Uber") motion seeking a November 14, 2025 MDL-wide common fact discovery cut-off. Uber's request is premature as discovery is ongoing and would unfairly preclude Plaintiffs from obtaining critical discovery. Although Defendants rely on the volume of documents produced and depositions taken to date, volume does not equate to completion. Significant discovery remains outstanding, including, for example, discovery on Uber's Women-to-Women ("W2W") ride-matching program, documents first identified in recent 30(b)(6) depositions, additional discovery requests based on new and critical documents Uber inexplicably failed to produce earlier, ongoing disputes regarding previously undisclosed data sources (such as Flack), substantial additional documents the Special Master recently ordered Uber to produce, unresolved privilege disputes, ongoing third-party discovery, and likely new depositions related to this new discovery. Ending common fact discovery at this point would freeze an incomplete record and compromise the fairness and accuracy of expert discovery, dispositive motions, and future bellwether trials.

The purpose of MDL coordination is to promote efficiency, avoid inconsistent rulings, and develop a complete and reliable record on which representative trials and global case management decisions can be made. The Federal Rules of Civil Procedure reinforce that discovery should allow parties to gather the evidence necessary to evaluate claims and defenses. Those principles are not served by the abrupt and improper deadline Defendants seek.

Moreover, at least 84 cases in this MDL involve sexual-assault incidents that occurred in 2025. Women continue to be sexually assaulted by Uber drivers, and these new cases are routinely tagged and transferred into this MDL. These Plaintiffs should not be forced to forfeit access to critical discovery simply because Uber seeks to impose an artificially early cutoff. Discovery

should remain open until after the first Bellwether trial when the Court and the parties are in a suitable position to determine an MDL-wide common fact discovery cut-off. For the reasons stated herein, Defendants' motion should be denied.

## ARGUMENT

Defendants' argument that "the moment has arrived" for discovery to end focuses almost exclusively on the volume of material produced. But MDLs do not end discovery because a certain number of documents have been exchanged. They end discovery only when the record is actually complete. Here, it is not.

Rule 26 allows a party to obtain discovery concerning any non-privileged matter that is relevant to any claim or defense. *See Glass Egg Dig. Media v. Gameloft, Inc.*, 2019 WL 4166780, at *3, (N.D. Cal. Sep. 3, 2019). The purpose of discovery is to eliminate surprise during trial preparation and enable parties to gather evidence necessary to evaluate and resolve disputes. *See Hill v. Eddie Bauer*, 242 F.R.D. 556, 560 (C.D. Cal. 2007)(internal citation omitted). This right of discovery is based on the general principle that litigants have a right to evidence, and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth. *See Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)(internal citation omitted).

These principles apply with particular force in MDLs such as this one, where the coordination of claims across thousands of cases requires a careful, iterative approach rather than premature rigid deadline that will truncate necessary fact development.

Critical discovery obligations remain open. For example, in conjunction with the October 14, 2025 continued Rule 30(b)(6) deposition of Sunny Wong concerning S-RAD, Plaintiffs requested additional information about Uber's supply plan retention policy and S-RAD percentiles, which Uber hast not produced. *See* November 25, 2025 Declaration of Roopal P.

Luhana ("Luhana Decl."), attached as <u>Exhibit A</u>. Similarly, during the November 7, 2025 30(b)(6) deposition of Todd Gaddis regarding "Flack" data systems, Plaintiffs learned for the *first time* of new and previously undisclosed data sources which contain data about every trip Uber sold. *Id*. This data was not previously identified or produced despite being directly responsive to discovery requests about driver supply and trips on the Uber platform and is directly relevant to core issues in this litigation, including regarding alternative drivers that Uber could have sent to each plaintiff. *Id*. These disclosures materially change the factual landscape and require additional discovery. Cutting off discovery before these sources can be explored would undermine the integrity of bellwether selections, expert opinions, and trial preparation. Documents that Uber produces in response to these requests will need to be reviewed and produced, and may necessitate additional follow-up discovery, including potentially re-opening depositions to address these new materials, all of which should have been produced months ago (if not before then).

      Moreover, Uber's Women-to-Women ("W2W") ride-matching program—rolled out in the United Stated in July 2025, but available in other countries well before then—is a central safety feature related to Plaintiffs' claims. Plaintiffs requested supplementation regarding W2W on October 6, 2025, covering December 1, 2024 through October 1, 2025. *Id*. On October 28, 2025, Uber agreed to conduct custodial collections for several key individuals involved in the program and to produce responsive documents on a rolling basis. *Id*. Uber also represented that W2W materials were being collected and that responsive documents would be produced on a rolling basis beginning in early December—weeks after the discovery deadline Uber proposes. *Id*. Because W2W implicates the key safety features, policies, and risk-mitigation strategies at issue in many cases within this MDL, discovery related to this program is essential.

Additionally, while Judge Cisneros held that Plaintiffs' October 6, 2025 discovery requests relating to W2W were untimely to the Dean case because discovery for that matter had ended, the Court held they were not untimely as to other cases. *See* ECF No. 4123 at 2. A premature discovery cut-off would not only prevent Plaintiffs from obtaining relevant documents but would bar Plaintiffs from potentially obtaining responsive documents from additional custodians who Defendants claimed were not essential to this litigation. *See* ECF No. 1698 (Plaintiffs to seek additional custodians upon a showing that those custodians likely possess relevant information).[1]

Further, in October-November 2025 alone, the Special Master determined that over 100 documents Uber withheld or attempted to clawback as privileged were not privileged or over-redacted and must be produced. *Id*. Indeed, just yesterday (November 24), Defendants clawed back additional documents. *Id*. Some of these documents were withheld during the depositions of key corporate witnesses. Indeed, there are approximately 2000 completely withheld or clawbacked docs that Special Master Jones still has to review because of Uber's clear gamesmanship. Plaintiffs, therefore, will likely need to re-open certain depositions to examine witnesses about these newly produced materials and documents determined to not be privileged.

Third-party discovery is also ongoing. For example, Plaintiffs have outstanding subpoenas to Lyft seeking documents concerning sexual-assault incidents and related complaints involving subject drivers (many of whom operate on both the Uber and Lyft platforms). *Id*. Plaintiffs will likely need to present outstanding related disputes to the Court. Similarly, Plaintiffs are continuing to work with Checkr to obtain information that was not previously produced in

---

[1] Importantly, Judge Cisneros had previously concluded that limiting Plaintiffs to 45 fact depositions of Uber witnesses was a "soft cap," or a presumptive number subject to discussions between counsel for the parties to allow for additional depositions if there is good cause for such depositions…" *See* ECF 866, PTO No. 16: Stipulated Deposition Protocol at 11; ECF 771 at 4.

4

response to earlier subpoenas. *Id*. Plaintiffs may need to notice a Rule 30(b)(6) deposition to obtain this discovery. Plaintiffs also continue to seek documents regarding communications between Uber and the nonprofit organizations that Uber strategically relies upon to manage and influence press coverage of sexual-assault issues.

Judge Cisneros previously denied Uber's request for an end date to Defendants' document production because "it was too soon to know what that date should be when new complaints continue to be filed, some of which are based on incidents that occurred in 2024 []." *See* ECF No. 1879 at 4. That remains the case—at least 84 cases have now been filed in the MDL with sexual assault incident dates in 2025, with 25 such cases filed since August 2025 alone. *See* Luhana Decl. And women continue to be sexually assaulted by Uber drivers, with new cases being tagged and transferred to this MDL. New Plaintiffs should not be forced to forfeit access to critical discovery simply because Uber wants to impose an artificially early cutoff; they are entitled to the evidence necessary to prosecute their claims without sacrificing the efficiency that the MDL structure was designed to provide. Uber's proposal would severely prejudice those Plaintiffs.

Defendants contend that a cut-off is needed to "ensure uniform, efficient management" of the MDL. The opposite is true. Imposing a deadline now would increase disputes about incomplete or missing data, precisely the inefficiencies that MDL coordination is designed to prevent. To impose a cut-off now would improperly reward Uber's withholding of material information and prejudice Plaintiffs' ability to build a complete and accurate record. Uber cannot improperly withhold critical documents until the eve of the first Bellwether trial and then demand that discovery end for all cases. The Court should defer any determination of a "cutoff" until closer to the resolution of this MDL, and even then, it cannot be without prejudice to recently filed cases.

## **CONCLUSION**

For these reasons, Defendants' motion should be denied.

Dated: November 25, 2025                    Respectfully Submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Roopal P. Luhana*