Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2500 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB <br><br> **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S NOTICE OF MOTION AND MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD-PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN** |
| This Document Relates to: <br><br> *Jaylynn Dean v. Uber Technologies, Inc. et al.*, Case No. 3:23-cv-06708-CRB | Date: January 6, 2026 <br> Time: 10:00 a.m. <br> Courtroom: 6 – 17th Floor |

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 6, 2026 at 10:00 a.m.,[1] or as soon thereafter as counsel may be heard, before the Honorable Charles R. Breyer, in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") will, and hereby do, move this Court for an order to (1) postpone the upcoming bellwether trial for *Jaylynn Dean v. Uber Technologies, Inc. et al.*, Case No. 3:23-cv-06708-CRB until Consumer Attorneys of California's ("CAOC") misleading Every 8 Minutes advertising campaign has concluded; (2) expand voir dire in the upcoming bellwether trial for *Jaylynn Dean v. Uber Technologies, Inc. et al.*, Case No. 3:23-cv-06708-CRB; and (3) restrain publication of the Every 8 Minutes campaign in states where Wave 1 bellwether cases will be heard. Separate from relief for the Dean trial, Uber seeks the Court's permission to serve a third-party subpoena on CAOC regarding the Every 8 Minutes campaign and its scope.

This Motion is made pursuant to the Court's inherent power to manage its docket, its discretionary power to conduct voir dire, and Rule 47(a) of the Federal Rules of Civil Procedure. The Motion is based on this Notice; the attached briefing; the concurrently filed Declaration of Kristen Renee Fournier; the concurrently filed Proposed Order; all evidence, pleadings, and papers filed herewith; the entire file in this coordinated action; any Reply that may be filed in support of this Motion; and any other arguments or evidence that may be presented to the Court in support of this Motion.

Dated: December 2, 2025

---

[1] Uber respectfully submits that, because some of its requested relief is in the form of expanded voir dire for the upcoming bellwether trial, the instant Motion should be heard at the pretrial conference. Briefing on this motion will be complete by that date, and the noticed date complies with N.D. Cal. Civ. R 7-2(a).

1

DEFENDANTS' MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD-PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN
Case No. 3:23-MD-3084-CRB

## I. INTRODUCTION

An impartial jury is essential to proceedings in this MDL, perhaps especially for the upcoming first bellwether trial. Yet at this crucial stage of litigation, Plaintiffs' counsel have participated in a widespread advertising campaign containing misleading statements about Uber and this litigation. These statements exacerbate the prejudice Uber already faced in parallel JCCP bellwether proceedings. That prejudice stems from the publication of a *New York Times* article on August 7, 2025—just before the first JCCP bellwether trial—that relied on materials provided to the media in clear violation of a protective order. The advertising campaign Uber now faces serves as a mouthpiece for the same article, at times even misrepresenting the article itself, and just ahead of the first MDL bellwether trial. The timing of these ads makes clear that Plaintiffs' counsel intends on litigating this case in the public sphere rather than at trial—working severe prejudice on Uber in the process. To combat the prejudice which Plaintiffs' counsel have wrought in this proceeding before a jury has even been empaneled in the first bellwether trial, Uber requests (1) a delay of the first bellwether trial; expanded voir dire proceedings in the first bellwether trial and procedural safeguards to avoid tainting the entire venire; and a limited restraint on further publication of the advertising campaign at issue, which would further compromise the venire for upcoming Wave 1 bellwether trials. Additionally, Uber asks the Court to permit a third-party subpoena for CAOC to further explore the misleading campaign and its scope.

## II. BACKGROUND

This sprawling mass action, which consists of both a federal MDL and a California JCCP, has been beset by protective order violations. *See* ECF 3692 (Judge Cisneros holding that "Plaintiffs' attorney Bret Stanley violated the protective order by disclosing the complete substantive contents of certain documents produced in discovery and designated as confidential . . . ."); Ex. 2, 10/22/25 Order Granting Uber's Motion to Enforce The Protective Order, at 5 ("[o]n the record before the Court, there appears to be little room for doubt that sealed filings from this proceeding were improperly disclosed to third parties in violation of the protective order" in connection with *New York Times* article). These

1

DEFENDANTS' MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD-PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN

Case No. 3:23-MD-3084-CRB

violations, which have resulted in reporting by the *Times* and affected other litigation for Uber even unrelated to this litigation, have prejudiced Uber.

Unauthorized disclosures in this mass tort have already tainted the jury pool, as demonstrated during jury selection for the first JCCP bellwether trial. *See* Ex. 1, 9/5/25 Hr'g Tr. at 28:3–6, 18–23, 30:10–14 (prospective juror stating they read the *Times* article and found the numbers "shocking," and agreeing it "made a strong impression" that would lead to juror favoring victim). The *Times* article was the direct result of a protective order violation in the JCCP, as both the MDL and JCCP Courts have acknowledged. *See* ECF 3822 (noting there is no dispute "that sealed filings from the JCCP appear to have been disclosed"); Ex. 2, 10/22/25 Order Granting Uber's Motion to Enforce the Protective Order, at 7 ("Regardless, the fact remains that numerous documents filed under seal with the Court were improperly disclosed in violation of the Court's protective order. The Court will not close its eyes to that violation, which it takes seriously, merely because the Court is currently unaware of the responsible party's identity or motivation for violating its order.").

On its own, the *Times* article was bad enough. But Plaintiffs' efforts did not stop there. In late October 2025, CAOC, a plaintiffs' counsel advocacy group for which one member of MDL Plaintiffs' leadership sits on the board and multiple other plaintiffs' counsel in this MDL are members, launched an advertising campaign titled "Every 8 Minutes." The campaign's video advertisement initially stated that "[a] sexual crime was reported to Uber almost every 8 minutes." *See* Decl. of Kristen Renee Fournier ¶ 8. The statistic, which the ad attributes to the *Times* article, is false and does not correspond to "sexual crimes." The numbers, which are based on unaudited and unvetted data, correspond to all categories of unverified and unaudited reports concerning sexual misconduct of any kind reported to Uber. The vast majority of the reports involve non-criminal behavior, such as flirting, staring or leering, or making comments about a person's appearance. Thus, many of the reports, even if true, do not involve sexual crimes. Put simply, even assuming the data are correct about number of reports, there is not a "sexual crime" every 8 minutes on Uber's platform; that is categorically false. Even more importantly, that statistic as framed by the advertisement appears nowhere within the *Times* article. Only after Uber sent CAOC a cease-and-desist letter did the organization remove this "sexual crimes"

framing from the video advertisement currently hosted on its website. *See* Decl. of Kristen Renee Fournier ¶¶ 8–11.

The Every 8 Minutes video advertisement further claims that Uber silences a victim every eight minutes. This purported statistic conflates Uber's receipt of *any* misconduct allegations with the foregone—and incorrect—conclusion that Uber silences victims.[2] This claim remains in the video advertisement, which is available at the campaign's website. *See* Every 8 Minutes, https://every8minutes.com/ (last accessed Dec. 1, 2025) (stating that "every 8 minutes, Uber tries to silence victims" and noting in website disclosures that the advertisement is "[p]aid for by Consumer Attorneys of California Initiative Defense Political Action Committee").

The campaign is far-reaching. CAOC appears to be purchasing national advertising spots. *See* Ex. 3, Julie Gossett, *CAOC Launches New Campaign: Every 8 Minutes*, Consumer Attorneys of California (Oct. 27, 2025), https://www.caoc.org/?pg=Blog&blAction=showEntry&blogEntry=133206. The press release announcing CAOC's advertising admits it is an "expansive, seven-figure campaign" that launched "with premier spots during popular sporting events, including during the World Series, Monday Night Football, and NBA Games." *Id.* As of October 27, the video advertisement was "already looping on trucks around the state of California," and ads were planned for "billboards near high-traffic rideshare pickup locations." *Id.*

While the video advertisement hosted on the Every 8 Minutes website has since been edited to remove the false and misleading "sexual crimes" language, *see* Decl. of Kristen Renee Fournier at ¶¶ 10–11, the ad itself is still available online and presumably is still being published nationwide on the contemplated billboards and trucks, and in purchased sporting-event advertising spots. Further, there is no indication that any printed ads, such as billboards, which were placed before Uber's cease-and-desist efforts, were ever edited to remove some of the most misleading statements. And most

---

[2] To the contrary, Uber was the first company in the gig economy to waive mandatory arbitration for survivors of sexual assault or misconduct, years before the federal government mandated this waiver. *See* Tony West, *Turning the lights on*, Uber Newsroom (May 15, 2018), https://www.uber.com/newsroom/turning-the-lights-on/.

importantly, any number of potential jurors could have seen the even more misleading version of the ad—including during the World Series, Monday Night Football, and NBA games—before the edits were made.

CAOC is affiliated with Plaintiffs in this MDL. Plaintiff counsel Sarah London, a member of Plaintiffs' Leadership, is secretary of CAOC. *See* Ex. 4. Multiple Plaintiffs' counsel who do not serve as officers are also members of CAOC's board. *See* Ex. 5. Plaintiffs' counsel, therefore, are knowingly profiting off of protective order violations in this mass tort and are exacerbating the known risk of tainting the venire.

### III.    LEGAL STANDARD

#### a.    Control of a Court's Docket

The Court has inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254 (1936). To exercise this power, the Court uses its judgment. *Id.* (citing *Kansas City Southern Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)).

#### b.    Voir Dire

The "content and conduct" of voir dire "are generally committed to the sound discretion of the district court in both civil and criminal cases." *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981) (citing *Connors v. United States*, 158 U.S. 408, 413 (1895), Fed. R. Civ. P. 47(a)). The court's voir dire conduct is "subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310 (1931). "It is an abuse of discretion for the district court to refuse to probe the jury adequately for bias or prejudice about material matters on request of counsel." *Darbin*, 664 F.2d at 1114 (citing *United States v. Baldwin*, 607 F.2d 1295, 1297 (9th Cir. 1979)). Voir dire must "permit[] the informed exercise of both the peremptory challenge and the challenge for cause." *Darbin*, 664 F.2d at 1113.

### c.   Restraint on Attorney Speech in Connection with Adjudicative Proceeding

For a Court to impose prior restraints on attorney speech in a proceeding before it, (1) the facts must show a substantial likelihood of material prejudice to the proceeding; (2) the order must be narrowly drawn; and (3) less restrictive alternatives must not be available. *Levine v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 764 F.2d 590, 595 (9th Cir. 1985), first factor modified by *Gentile v. State Bar of Nev.*, 501 U.S. at 1037.

### d.   Third-Party Subpoenas

Subpoenas to non-parties for either production of documents or deposition are permitted under Fed. R. Civ. P. 45. Such subpoenas are permitted if they do not pose an undue burden or expense on the recipient, among other potential objections. *See* Fed. R. Civ. P. 45(d)(3)(A)(i).

## IV.   ARGUMENT

Advertising promulgated in part by Plaintiffs' counsel in this MDL risks affecting potential jurors and prejudicing Uber's rights in the upcoming bellwether trials. Such harm has already occurred through publication of the various versions of the Every 8 Minutes campaign, and that harm will continue unless addressed by this Court. Beyond the trial-specific relief Uber seeks, it further requests an order from this Court permitting the third-party subpoena of CAOC, the organization which multiple Plaintiffs' counsel in this MDL are affiliated with and which paid for the Every 8 Minutes campaign.

### a.   The Every 8 Minutes Campaign Threatens Fairness for the First Bellwether Trial Such That the Trial Should Be Continued.

The advertising campaign Plaintiffs' counsel interposed on these proceedings threatens Uber's ability to empanel an impartial jury. CAOC's advertising is inflammatory and at least misleading. It risks tainting the jury pool. The Court should therefore exercise its inherent power to postpone the first bellwether trial until such time that the Every 8 Minutes campaign ceases.

5

DEFENDANTS' MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD-PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN
Case No. 3:23-MD-3084-CRB

### b. The Every 8 Minutes Campaign Risks Affecting Potential Jurors and Requires, At Minimum, Expanded Voir Dire.

Even if the Court does not grant Uber's requested continuance, expanded voir dire is needed to explore the prejudice the Every 8 Minutes campaign has already worked on Uber. This campaign goes beyond the already-sensationalized *Times* article and makes at least misleading if not outright false statements about Uber. While CAOC has updated its statements on its Every 8 Minutes website, the previous version of its ad included extremely prejudicial statements concerning "sexual crimes." Accordingly, the potential prejudice to Uber, which was already seen in the JCCP bellwether trial, *see* Ex. 1 at 28:3–6, 18–23, 30:10–14, is even higher here.

"The voir dire examination plays a critical role in securing the right to an impartial jury in civil, as well as criminal, trials." *Darbin,* 664 F.2d at 1112–13. Voir dire's "principal purpose" is "to probe each prospective juror's state of mind to enable the trial court to determine actual bias and to allow counsel to assess suspected bias or prejudice." *Id.* at 1113. A trial judge has a "serious duty" to determine actual bias of jurors. *Dennis v. United States,* 339 U.S. 162, 168 (1950). Uber requests that the Court, in its discretion, permit expanded voir dire on media reporting and advertising.

To combat the prejudice occasioned by Plaintiffs' counsel, Uber is asking the Court to include a specific line of inquiry within the jury questionnaire seeking information on potential jurors' exposure to or familiarity with the Every 8 Minutes campaign. In order to avoid further tainting and minimize the effect of this inquiry on the entire jury pool—to the extent possible at this stage—Uber proposes that if questionnaires suggest any potential jurors have seen this campaign in any form, the Court should conduct further voir dire on this topic privately.

Uber further proposes that, if the Court's private voir dire establishes actual prejudice to Uber given the prevalence of CAOC's ads, Uber should be afforded the opportunity to then seek dismissal based on that prejudice.[3] The expanded voir dire Uber requests is "reasonably necessary to ensuring

---

[3] Uber's position is that Plaintiffs should not have a reciprocal opportunity to request dismissal based on private voir dire about the Every 8 Minutes campaign, since this problem is of Plaintiffs' counsels' own making.

an impartial jury" and does not "ask[] questions that may unduly infringe on jurors' privacy." *Guidelines for Civil Jury Trials Before Judge Charles R. Breyer* § C, Northern District of California (July 16, 2025), https://cand.uscourts.gov/sites/default/files/standing-orders/CRB-Civil-JuryTrial-StandingOrder-7-16-2025.pdf.

      **c.    Because of the Campaign's False and Misleading Statements and Its Risks of Prejudicing the Venire, the Court Should Restrain Continued Publication of Every 8 Minutes Ads in States Where the Court Will Hold Bellwether Trials.**

If the Court is not inclined to postpone trial as requested above, Uber proposes that it restrain publication of the Every 8 Minutes campaign in states where the Court anticipates holding Wave 1 bellwether trials: Arizona, California, and North Carolina. Prior restraints on speech are disfavored generally, but the Supreme Court has held that "speech otherwise entitled to full constitutional protection may [] be sanctioned if it obstructs or prejudices the administration of justice." *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1442 (9th Cir. 1995) (citing *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1074–75 (1991)).

For a Court to impose prior restraints on attorneys practicing before it, (1) facts must show a substantial likelihood of material prejudice to an adjudicative proceeding; (2) the order must be narrowly drawn; and (3) less restrictive alternatives must not be available. *Levine v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 764 F.2d 590, 595 (9th Cir. 1985), first factor modified by *Gentile v. State Bar of Nev.*, 501 U.S. at 1037. All factors are satisfied by Uber's requested relief here.

A substantial likelihood of material prejudice exists. To determine whether such prejudice is substantially likely, the Court considers "the statements themselves, the timing of the statements, and whether they were published in the jury pool." *See Murphy-Fauth v. BSNF Ry. Co.*, No. CV-17-79-GF-BMM-JTJ, 2018 WL 5312201, at *4 (D. Mont. Apr. 4, 2018). All of these factors weigh in favor of Uber's position:

(1) the statements themselves are misleading and prejudicial, as explained above;

7

DEFENDANTS' MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD-PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN

Case No. 3:23-MD-3084-CRB

(2) the campaign was published just ahead of the first MDL bellwether trial resulting in likely prejudice; and

(3) the campaign was published nationwide in "premier spots during popular sporting events, including during the World Series, Monday Night Football, and NBA Games" as well as ads on "billboards near high-traffic rideshare pickup locations." Ex. 3.

The Every 8 Minutes website remains available even now, less than two months before jury selection. There is no suggestion that any of the campaign's traditional media advertising has ceased or changed from pre-cease-and-desist edits to the website's updated version, either.

Plaintiffs' counsel Sarah London and other counsel "made" the statements at issue through CAOC. In doing so, Plaintiffs' counsel amplified reporting that it *knows* came from violation of a protective order, exacerbating prejudice to Uber. The fact that these statements were made by attorneys supports a finding of likely prejudice. In *Gentile*, the Supreme Court said attorneys participating in a pending case have "special access to information through discovery and client communications" which poses a heightened threat to "the fair administration of justice." 501 U.S. at 1074. The Court recognized that orders restraining attorney speech address "two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found." *Id.* at 1075.

Uber's proposed, jurisdiction-limited restraint is narrowly drawn. Uber is asking that the advertisement be restrained only in states where the Court currently anticipates holding bellwether trials. This is not a national restraint. Additionally, Uber is not asking for restraint on all attorney speech, just on the Every 8 Minutes campaign.

If the Court is not willing to postpone trial until the ads cease to run and a moderate cooling-off period elapses, then no less restrictive alternatives exist for the relief Uber proposes. This relief is necessary, because the JCCP bellwether process demonstrated that prejudice is almost certain to arise.

While Courts have on occasion approved "voir dire, jury instructions, delay, change of venue or jury sequestration" as appropriate alternatives, *In re Dan Farr Prods.*, 874 F.3d 590, 595 (9th Cir. 2017) (internal citation and quotation marks omitted), those alternatives are not sufficient here.

"[V]oir dire cannot eliminate prejudice caused by publicity during the trial. Moreover, voir dire cannot alleviate the harm to the integrity of the judicial process caused by the extrajudicial statements of trial participants." *Levine*, 764 F.2d at 600. Beyond that, "jury instructions are often an ineffective remedy" and "cannot address the threat to judicial integrity posed by prejudicial extrajudicial statements." *Id.* Change of venue is also not an appropriate less restrictive alternative. "A change of venue would be appropriate if the publicity surrounding a trial is centered on a specific geographical location." *Id.* That is not so here. Sequestration is "an undesirable alternative," too. Its "negative effects" are "well documented." *Id.* (citations omitted). A jurisdiction-limited restraint on publication to protect the venire in Wave 1 bellwether cases is the least-restrictive alternative that will effectively combat the prejudice that is substantially likely to arise from the CAOC's campaign.

### d. Aside From Rulings to Combat Jury Tainting Issues, the Court Should Endorse Discovery From CAOC Regarding the Every 8 Minutes Campaign.

The advertising campaign Plaintiffs' counsel interposed on these proceedings threatens Uber's ability to empanel an impartial jury. CAOC's advertising is inflammatory and at least misleading. It risks tainting the jury pool. The Court should therefore permit Uber to serve a third-party subpoena on CAOC under Rule 45 and make clear in its order related to this Motion that such subpoena shall not be avoided or sidestepped simply on the basis of timing or an argument that the Dean trial is imminent. Such a subpoena is relevant in more cases than the first bellwether trial, because the harm from the Every 8 Minutes campaign exists so long as that campaign is active and reaching potential jury pool members in this MDL.

Uber's proposed subpoena would also aid the Court in fashioning additional relief it deems necessary. The subpoena Uber proposes to serve would seek: (1) information regarding the extent to

9

DEFENDANTS' MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD-PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN
Case No. 3:23-MD-3084-CRB

which Plaintiffs' counsel in this MDL is communicating with or directing the advertising campaign at issue, (2) details on the scope of CAOC's ad buys for this campaign, (3) justification for CAOC's recent editing of its video advertisement to remove some but not all of the false statements made therein, and (4) the source for the assertions made in the campaign, including any protective order acknowledgments showing CAOC has received sealed documents from this MDL. In particular, further detail on the scope of CAOC's advertising campaign would permit the Court to tailor any prohibition on publishing the Every 8 Minutes campaign to the jurisdictions where such advertising is taking place and affecting the venire.

## V.  CONCLUSION

For the foregoing reasons, the Court should postpone the first bellwether trial, permit expanded voir dire for the first bellwether trial, and restrain further publication of the Every 8 Minutes campaign. The Court should also permit the Rule 45 subpoena of Consumer Attorneys of California.

Dated: December 2, 2025					Respectfully submitted,

							/s/ Laura Vartain Horn

							Laura Vartain Horn (SBN 258485)
							**KIRKLAND & ELLIS LLP**
							555 California Street, Suite 2700
							San Francisco, CA 94104
							Telephone: (415) 439-1625
							laura.vartain@kirkland.com

							Allison M. Brown (Admitted *Pro Hac Vice*)
							**KIRKLAND & ELLIS LLP**
							2005 Market Street, Suite 1000
							Philadelphia, PA 19103
							Telephone: (215) 268-5000
							alli.brown@kirkland.com

							Jessica Davidson (Admitted *Pro Hac Vice*)
							**KIRKLAND & ELLIS LLP**
							601 Lexington Avenue
							New York, NY 10022

Telephone: (212) 446-4800
jessica.davidson@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT (Admitted *Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC