UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:  Hon. Charles R. Breyer<br>Courtroom: 6 – 17 Floor (videoconference)<br>Date:  December 5, 2025<br>Time:  10:00 a.m. |

**JOINT CASE MANAGEMENT STATEMENT**

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively "Uber"), and Plaintiffs' Co-Lead Counsel (collectively referred to herein as "the Parties"), respectfully provide this Joint Case Management Conference Statement and Proposed Agenda in advance of the Case Management Conference scheduled for December 5, 2025.

**Proposed Agenda**

    I.     Status of Case Filings

    II.    Update on *Daubert* and Dispositive Motions

    III.   Proposed Schedule and Mechanics for Remaining Pretrial Deadlines

    IV.   Juror Anonymity

    V.    Deposition of Hassan Turay

    VI.   Sequencing of Affirmative Deposition Designations

    VII.  Bifurcation

    VIII. Temporary Stay on Non-Bellwether Related Motions

    IX.   Impending Motion Regarding Common Benefit QSF

    X.    Settlement / Mediation

    XI.   Next Case Management Conference

**I.    STATUS OF CASE FILINGS**

    **A.**    **Number of MDL Case Filings**

As of December 2, 2025, there are 2,859 cases in this MDL, up from 2,804 on October 27, 2025. Since October 27, 2025, the Court has dismissed approximately 110 cases and 162 new cases have been filed.

    **B.**    **Status of JCCP**

Approximately 770 cases are pending in the JCCP. The next trial has been set for May 4, 2026.

    **C.**    **Other Cases and Proceedings**

Defendants have provided a current list of civil actions arising from allegations of sexual assault on the Uber platform in which Uber is a defendant, attached as Exhibit B.

## II. UPDATE ON *DAUBERT* AND DISPOSITIVE MOTIONS

On November 10 and 14, the parties filed *Daubert* and summary judgment motions for the *Dean* case. Oppositions are due December 10, and replies due December 23.

In PTO 34, the Court accepted the parties' proposal that exhibits to *Daubert* motions be filed provisionally under seal, with a briefing schedule for motions to seal.

Uber's *Daubert* motions were filed at ECF 4337 (Keller, public), ECF 4338 (Keller, sealed), ECF 4339 (Valliere, public), ECF 4340 (Valliere, sealed), ECF 4341 (Chandler, public), ECF 4342 (Chandler, sealed), ECF 4343 (Feldis, public), ECF 4344 (Feldis, sealed), ECF 4345 (Weiner, public), ECF 4346 (Weiner, sealed), ECF 4347 (Rando, public), ECF 4348 (Rando, sealed), ECF 4349 (Tremblay, public), ECF 4350 (Tremblay, sealed), and ECF 4351 (Drumwright, public), and ECF 4352 (Drumwright, sealed), ECF 4397 (Cameron, public), ECF 4398 (Cameron, sealed).

Plaintiff's *Daubert* motions were filed at ECF 4358 (omnibus, public), ECF 4357 (omnibus, sealed), ECF 4388 (Orchowski, public), ECF 4389 (Orchowski, sealed).

The parties filed respective unopposed motions to seal portions of exhibits to *Daubert* motions. ECF 4464 (Plaintiff), ECF 4470 (Uber). Under PTO 34, any oppositions to those motions are due December 3 and any replies (which shall also address new materials filed in connection with *Daubert* oppositions) December 15.

Uber's motion for partial summary judgment was filed at ECF 4379 (public) and ECF 4377 (sealed). Plaintiff's statement in support of partial sealing the summary judgment papers and exhibits was filed at ECF 4465.

## III. PROPOSED SCHEDULE AND MECHANICS FOR REMAINING PRETRIAL DEADLINES

The Court ordered the parties to include a proposed schedule for the remaining pretrial deadlines in the Dean case as a part of this joint statement. ECF 4433. The parties agreed on several dates, including:

- **Motions in Limine**: **December 16** [the parties dispute dates for oppositions and replies]
- **Jury Instructions / Verdict Forms**:

- o   Plaintiffs to provide initial drafts: **December 16**
- o   Defendants to provide additions/modifications: **December 22**
- o   Parties to file joint agreed and disputed instructions and verdict forms: **December 30**

- **Joint Proposed Pretrial Order**: December 16

- **Witness Lists**: Parties to exchange witness lists on **December 8.**

- **Exhibit Lists**: Parties to exchange exhibit lists on **December 10.** The parties agree on the columns of information to be included.

- **Voir Dire Questions**: December 19

- **Trial Briefs**: The parties agreed to seek the Court's guidance on the content and timing of pretrial trial briefs.

The parties disagree on the remaining issues. Their positions are set forth below.

A.   **Plaintiffs' Position**

Plaintiff's proposed pretrial scheduling order is attached as **Exhibit A**. Many of its provisions reflect procedures adopted by the Court in *City & Cnty. of S.F. v. Purdue Pharma L.P.*, No. 18-7591 (N.D. Cal.). Plaintiff's positions on the material disputed issues are set out below (without describing every single section of the proposed order). Uber's position generally is that whatever happened in the JCCP trial should happen here. But, as this Court has consistently noted, this is different litigation, with different claims. Rather than meaningfully engage with Plaintiff on pretrial deadlines and procedures specific to this case, Uber proposes delay, ambiguity and arbitrary severe caps on Plaintiff's evidence. To advance efficiency and fairness, the Court should adopt Plaintiff's proposed order.

**Motions in Limine (§ VII.A)**. The parties agreed to file motions in limine on December 16. Given the tight schedule, Plaintiff proposes that the parties file oppositions on **December 30** and that there be **no replies**.

**Date of Filing Branded Exhibit Lists (§ II.A)**. Plaintiff's proposed order sets out a date for exchanging branded and stickered copies of exhibits. Uber has not explained why it objects to this proposal.

**Format of Exhibit Lists (§§ I.B, II.B-D)**. Plaintiff's proposed order sets out the format for the exhibit lists. Uber agrees to the columns to be included in exhibit lists, but has not provided a response to the remainder of the proposal, including, for example, Plaintiff's proposals concerning aggregate data sets and compilation exhibits. Instead, Uber proposes an arbitrary cap of 500 exhibits, but cites no authority imposing such a cap, especially on an initial, pretrial list. Lastly, Plaintiff's exhibit numbering system is most efficient and would serve the MDL and parties in anticipated future trials. As exhibit lists are amended leading up to and during trial, having designations noting which party has placed an exhibit on the exhibit list will contribute to clarity and organization throughout the case waves and maintain consistency across court records.

**Objections to Exhibits (§ II.E)**. Plaintiff's proposed order implements the Court's requirement that the parties be reasonable regarding objections to exhibits. Specifically, Plaintiff's proposal applies a presumption that documents produced in this action by Defendants or third parties are authentic, and that document produced by Defendants are business records under Fed. R. Evid. 803(6).

**Exhibit Disclosure Requirements (§ III)**. Plaintiff proposes that the specific documents any party anticipates using with an adverse witness need not be disclosed before questioning, so long as the document is included on pretrial exhibit lists. If a party anticipates using an exhibit on cross that was not on a pretrial exhibit list, they must disclose that document before 6:30 p.m. the day before their expected use at trial, and if the document is an internal Uber document, then Uber may only use it if it had timely produced the document pursuant to Judge Cisneros' Order [ECF 2924].

**Witness List (§ IV)**. Plaintiff objects to Uber's proposed arbitrary cap of 10 witnesses per side. The Court has imposed time limits on the trial. The parties should be free to shape their case within those limits. Imposing Uber's arbitrary cap would be highly prejudicial and deprive Plaintiff of a fair opportunity to present her case and meet her burden. Plaintiff has the burden of proof on nearly all issues. Plaintiff has every interest in streamlining her case. Some witnesses may testify for very little time (especially those called by deposition). Uber cites no authority for its extreme cap, except

"the JCCP trial", but the record here is significantly more robust, including extensive 30(b)(6) witness testimony concerning the specific bellwether case at issue.

Plaintiff asked Uber to confirm before the Case Management Conference that it will make three corporate witnesses available live during her case (Gus Fuldner, Sunny Wong, and Katy MacDonald) and to advise who it plans to bring live in its case. As indicated below, Uber refuses. Plaintiff intends to seek relief from the Court regarding Uber's refusal to produce these employees live for trial, including an order precluding Uber from cherry-picking the employees it will bring live in its case. Courts have limited defendants' ability to cherry-pick which employees it produces live at trial due to potential prejudice to the other party. *See In re Pacific Fertility Center Litigation*, No. 3:18-cv-01586-JSC, Dkt. 792 (May 12, 2021 Order) (the court was "considering requiring the testimony of all [defense] witnesses to be presented via their depositions absent some good faith explanation for" only making available witnesses that Defendants seek to call live, but not witness that Plaintiffs seek to call live); *id.* Dkt. 810 (pretrial hearing transcript) at 4-5 (confirming all defense witnesses must testify via deposition because defendant chose not to make available the witnesses Plaintiffs sought to call live); *id*. at 55 (holding that Plaintiffs "can certainly comment that [defendant] chose to not have any of its employees testify live."); *In re Vioxx Prod. Liab. Litig*., 439 F. Supp. 2d 640, 643 (E.D. La. 2006) ("[T]he Court assumes that Merck would like to eliminate any unpredictability and limit Mr. Anstice's trial testimony to his 'canned' deposition testimony—a purely tactical reason"); *Mullins v. Ethicon, Inc.,* No. 2:12-CV-02952, 2015 WL 8275744, at *2 (S.D.W. Va. Dec. 7, 2015) ("[T]he witnesses are relatively important and knowledgeable employees of the defendants, the defendants refuse to make these witnesses available, and the defendants want to limit the testimony of these witnesses to deposition testimony. The court...finds these circumstances to show the defendants' refusal is purely tactical."). Uber's response that Plaintiff has deposed these witnesses misses the point. All three of these Uber employees (under Uber's custody and control) have or had key responsibilities in the company on critical issues in this trial (what Uber knew and what it did (and didn't do) regarding the risk of drivers sexually assaulting passengers). Uber has produced (and still continues to produce) highly relevant documents from these witnesses' custodial files *after* their

depositions were taken. Plaintiff has never been able to confront these witnesses (who often gave evasive or non-responsive answers) with these late-produced documents.

**Deposition Designations (§ V)**. The Court's default standing order provides for rolling exchange of deposition designations, with dates triggered five days before the video will be played. Plaintiff proposes to extend that default schedule to begin 9 days before a deposition is to be played, to ease the burden on the parties and the Court. Although Plaintiff was willing to discuss an earlier deadline for some witnesses (given the holidays), Uber's proposal to impose a deadline of December 15 for all potential deposition designations is unnecessary and not feasible given all the other impending deadlines. Generally following the court's ordinary process makes sense to ensure that the parties adequately confer and narrow disputes before submitting to the Court for rulings.

Uber's proposal to arbitrarily cap the number of hours of video designations is unfair, unworkable and pointless. Uber has enforced its terms of use to move this trial outside the subpoena power of its employees. Consequently, absent Court order or agreement, most corporate witnesses will testify via video deposition. Further, the parties' focus should be on substance not score-keeping on picayune squabbles about how many minutes each deposition should be. The Court's time limits are sufficient to address any concerns over length of depositions.

B.    **Uber's Position**

The Court asked the parties to submit a pretrial schedule. Dkt. 4433. Defendants do not agree to Plaintiff's sweeping proposal that they have termed a pretrial order and attached as **Exhibit A**. Plaintiff's document goes far beyond scheduling. Defendants made clear to Plaintiff's counsel in a meet and confer videoconference on December 1, 2025, that any discussion about the broader document should be deferred until after the Case Management Conference on December 5, 2025.  This will allow Defendants to seek the Court's guidance on certain fundamental trial management issues and disputes  before they finalize their position on Plaintiff's proposal. Defendants are prepared to further meet and confer with Plaintiff on these issues following the CMC, and request that the Court enter a simple scheduling order, consistent with its initial request. Should the Court want the parties to meet and confer and submit a more comprehensive pretrial stipulation, Defendants are willing to

meet and confer promptly with Plaintiff, with the benefit of the Court's guidance from the Case Management Conference and ask that the Court give the parties an opportunity to do that, rather than adopt Plaintiff's proposed order. Further, Uber identifies recent experiences from the JCCP trial as relevant data from a recent trial of a similar duration that provides information that may be helpful to the Court in considering certain topics.

**Exhibit Lists:** Uber proposes a limit on the number of exhibits both parties will include on their exhibit lists.  Uber suggests a cap of 500 exhibits per side.  This will promote efficiency at trial. Plaintiff will not agree to a limit and seek to file a list with thousands of exhibits.  Plaintiff's approach is not workable and will not allow the parties to properly address evidentiary disputes before trial.  Notably, in the recent JCCP trial, Plaintiffs admitted a total of 104 exhibits into evidence and Defendants admitted 50 exhibits into evidence.  There is no reason to believe a significantly larger volume of exhibits will be admitted in the Dean trial. For that reason, a limit of 500 exhibits on each party's exhibit list is more than appropriate and still five times in excess of what was ultimately identified by Plaintiffs in the JCCP trial. Defendants respectfully request the Court order a limit on exhibits, and then the parties can confer about the related provisions in Plaintiffs' **Exhibit A**.

**Witness Lists:**   Defendants intend to file a witness list that reflects who they actually intend to call at trial.  Plaintiff's counsel has not agreed to pare down their list in this way.  The Court has limited Plaintiff to 48 hours to put on her case  Plaintiff has had months to prepare and should have her case ready to go weeks before trial. To that end, Defendants request the Court limit the number of witnesses on each party's witness list.  Ten (10) live fact and expert witnesses per side is more than will be called at trial. For context, in the JCCP trial, Plaintiff called 10 live witnesses and Defendant called six live witnesses.

On November 30, Plaintiff provided the names of three company witnesses that they would like to call live, all of whom are outside the subpoena power of the Court and therefore are not available for live testimony at trial.  Each of these company witnesses have been deposed at length, and Plaintiff has their depositions available to play at trial, should she choose to do so.  It is not clear what relief

Plaintiff is seeking, or under what rule, given that Rule 45(c) is directly on point. However, the cases on which Plaintiff relies do not support a request for three out-of-state witnesses to appear live at trial. Plaintiff's reliance on the Vioxx litigation is foreclosed by the 2013 Amendments to Rule 45(c), as the 2013 Committee Notes make clear:

> Because Rule 45(c) directs that compliance may be commanded only as it provides, these amendments resolve a split in interpreting Rule 45's provisions for subpoenaing parties and party officers. *Compare In re Vioxx Products Liability Litigation*, 438 F. Supp. 2d 664 (E.D. La. 2006) (finding authority to compel a party officer from New Jersey to testify at trial in New Orleans), with *Johnson v. Big Lots Stores, Inc.*, 251 F.R.D. 213 (E.D. La. 2008) (holding that Rule 45 did not require attendance of plaintiffs at trial in New Orleans when they would have to travel more than 100 miles from outside the state). Rule 45(c)(1)(A) does not authorize a subpoena for trial to require a party or party officer to travel more than 100 miles unless the party or party officer resides, is employed, or regularly transacts business in person in the state.

Fed. R. Civ. Pro 45(c) 2013 Committee Notes. Plaintiff's other cases do not deal with Rule 45. *Mullins v. Ethicon* concerns a request for video testimony under Rule 43(a). No. 2:12-CV-02952, 2015 WL 8275744, at *2 (S.D.W. Va. Dec. 7, 2015); *In re Pacific Fertility Center Litigation*, No. 3:18-cv-01586-JSC, Dkt. 792 (considering video testimony under Rule 43(a)). Uber will further address this authority in opposing any motion.

**Motions in Limine.** The parties agreed to file motions in limine on December 16. Defendants have proposed December 23 for response briefs, and December 30 for reply briefs. The Court has already limited the parties to 25 pages for motions (less than the default in the Court's standing order), and Defendants believe reply briefs, not to exceed 15 pages in total, will be helpful for the Court.

**Format of Exhibit Lists.** Defendants agree to columns A-E in Plaintiff's proposal for the exhibit list format. Defendants will confer in good faith with Plaintiffs on any other exhibit provisions once the Court weighs in on the number of exhibits allowed per side.

**Exhibit List Requirements.** Defendants believe the parties' exhibit list should include any exhibit the parties seek to enter into evidence on direct examination of witnesses. The lists need not include documents used on cross examination, learned treatises, demonstrative exhibits, or documents for impeachment only.

**Deposition Designations.** Defendants conferred at length with Plaintiff on deposition designations and the parties are at an impasse. Defendants believe the parties should have a date-certain exchange of affirmative deposition designations, with ample time for objections and counter designations. Defendants will not agree to Plaintiff's proposal for "staggered" designations. It is essential for the parties to designate testimony before trial and have the benefit of the Court's ruling on key evidentiary issues. For that reason, Defendants proposed a December 15 deadline for affirmative deposition designations; December 29 deadline for objections/counter designations; and January 5 deadline for objections to counters and counter/counter designations. This schedule will have everything teed up for the Court's consideration before trial.

Defendants also request the Court provide a limit on time allotted for deposition designations. The Court has already allotted 48 hours total for Plaintiffs in this trial. They intend to call numerous live witnesses and cross Defendants' live witnesses. A limit of 15 hours of video designations per side is more than adequate, and Defendants request the Court enter an order to limit designations in this manner. As a barometer, in the recent JCCP trial, there were approximately 6.5 hours of deposition designations, approximately 3.5 of which were from Defendants.

## IV. JUROR ANONYMITY

### A. Plaintiff's Position

Plaintiff intends to file a motion to keep juror identities anonymous throughout voir dire and trial. Potential jurors' names, addresses, and other personally identifiable information should remain confidential to ensure that Uber does not unfairly access juror data from its extensive internal databases and to protect juror privacy during what is expected to be a high-profile case with extensive media coverage. Courts have permitted jurors in civil cases to proceed anonymously in high profile cases to protect them from harassment, unwanted invasions of privacy, and retaliation. *See Carroll v. Trump*, 663 F. Supp. 3d 380, 385 (S.D.N.Y. 2023) (holding that "the names, addresses, and places of employment of prospective jurors on the *voir dire* panel, as well as jurors who ultimately are selected for the petit jury, shall not be revealed"); *United States v. Fabel*, 2007 WL 9728659, at *1 (W.D. Wash. Oct. 30, 2007) ("Empaneling an anonymous jury is a permissible precautionary tool where the

Court identifies a strong reason for concluding that it is necessary to enable the jury to perform its factfinding function, or to ensure juror protection") (internal quotation marks omitted). Juror anonymity will further enhance candor during voir dire by reducing fears of future retribution by Uber, a company that may have potential jurors' sensitive personal information and control over whether and how they can use Uber if they wish to use it. *See United States v. Gotti*, 2004 WL 2274712, at *4 (S.D.N.Y. Oct. 7, 2004) ("jurors will be more inclined to truthfully answer questions when they do not fear retribution, and such fear will be significantly reduced when their identities are concealed."). These concerns are grounded in Uber's history of surveillance and retaliating against adversaries. *See, e.g.*, https://www.nytimes.com/2017/03/03/technology/uber-greyball-program-evade-authorities.html; https://www.foxnews.com/tech/uber-hacked-and-surveilled-rivals-alleges-ex-manager-in-letter; https://www.buzzfeednews.com/article/johanabhuiyan/uber-is-investigating-its-top-new-york-executive-for-privacy; https://www.theguardian.com/technology/2017/nov/28/uber-court-waymo-trade-secrets-trial.

Uber has agreed it should not access the vast data it possesses on prospective and actual jurors. This process will ensure it does not.

### B.     Uber's Position

There is nothing about this case that warrants juror anonymity, and Plaintiff's legal authority demonstrates that this case does not warrant the requested relief. To the extent that Plaintiff decides to move the Court regardless, Uber will oppose.

This case does not involve sensitive and highly inflammatory allegations concerning an individual running for President. Similarly, there are zero facts to support the suggestion of retribution or any need to protect jurors from possible physical threats. The mere suggestion is both frivolous and concerning, and Plaintiff's reach back into the archives of the internet from 2014 and 2017 to make the spurious assertion demonstrates that

In the October 29, 2025 Joint Conference Statement, the parties already jointly informed the Court that "Uber's counsel will never access Uber's company data of any kind concerning potential or selected jurors." Dkt. 4261. Plaintiff's position suggests, based on no evidence whatsoever, that

Uber's counsel cannot be accepted at their word. The Court should reject this legally and factually unsupported position, particularly in light of Uber's clear statement submitted to the Court in October. Uber met and conferred with Plaintiffs to reach the agreed-upon language in the October Case Management Statement, and Plaintiffs did not raise any possibility of juror anonymity in that process or until December 2, 2025.

## V. DEPOSITION OF HASSAN TURAY

### A. Plaintiffs' Position

Even though Mr. Turay appears to be within the Court's subpoena power, the Court should permit his deposition to be played. The Court may permit the use of a deposition upon finding "on motion or notice, that that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used." Fed. R. Civ. P. 32(a)(4)(E). The Court has discretion in applying Rule 32(a)(4). *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 909 (9th Cir. 2008).

Exceptional circumstances exist here. Mr. Turay is accused of rape, a criminal offense for which the statute of limitations has not yet run. *See* A.R.S. § 13-107(B)(1) (limitations period of seven years for class 2 felonies); *id.* § 13-1406 (sexual assault is a class 2 felony). Live testimony by him at trial may devolve into a side-show of Fifth Amendment objections, wasting the jury's time with pointless testimony. *See Felts v. Vollmer*, 2022 WL 22883098, at *2 (E.D. Mo. Aug. 4, 2022) (explaining that a witness's "intent[ion] to invoke the Fifth Amendment" creates "'exceptional circumstances' of the type Rule 32(a)(4) contemplates"); *Perry v. Hanover Ins. Grp., Inc.*, 2022 WL 597950, at *1 (D. Me. Feb. 28, 2022) (same); *see also Emmi v. DeAngelo*, 261 F. Supp. 3d 556, 56061 (E.D. PA. 2017) (similar, where witness invoked spousal privilege). Live testimony will also likely require the Court to determine whether to appoint counsel for Mr. Turay, and whether he has waived any Fifth Amendment rights by testifying at his deposition. *See United States v. Jenkins*, 785 F.2d 1287, 1393 (9th Cir. 1986). There is no prejudice to Uber, as Uber noticed Mr. Turay's deposition after its investigator met with Mr. Turay over several sessions, and Uber's counsel led the questioning. Uber was more than adequately represented at the deposition. Plaintiff has produced to Uber a text

message her counsel received from Mr. Turay after the deposition. Plaintiff reserves all rights with respect to admissibility of this message and will address any objections if and when it is offered for any purpose at trial.

### B.     Uber's Position

Plaintiff requests to call Mr. Turay by video deposition pursuant to Rule 32(a)(4).  Uber will not oppose that request, as long as Plaintiff does not seek to admit post-deposition correspondence at trial.   Plaintiff produced a text message Mr. Turay allegedly sent to Plaintiff's counsel following his deposition. That message (and any other correspondence between Mr. Turay and Plaintiff's counsel that post-dates his deposition) is clearly hearsay and inadmissible if Plaintiff chooses to call him by deposition.   Defendants request the Court address the admissibility of this text message before allowing Plaintiff to call him by video deposition.

## VI.    SEQUENCING OF AFFIRMATIVE DEPOSITION DESIGNATIONS

The parties disagree on whether both sides' affirmative deposition designations should be played together in one party's case-in-chief (usually Plaintiff's), or instead whether each side should play their own designations (even of the same witness) in their own case-in-chief.

### A.     Plaintiffs' Position

Plaintiffs respectfully request an order that (1) only counter-designations for completeness under Federal Rule of Evidence 106 or Fed. R. Civ. P. 32(a)(6) may be played with affirmative designations, and (2) each side's affirmative designations should be played separately during its own case-in-chief.

The "court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to ... make those procedures effective for determining the truth." Fed. R. Evid. 611(a)(1). In the exercise of that discretion, courts have recognized that it can be most effective to play deposition designations designated by each side in its own presentation, to avoid the inherent prejudice and risk of confusion if one party is able to present much of its case during its opponent's case-in chief. *See, e.g., In re Pac. Fertility Ctr. Litig.*, 2021 WL 2075560, at *1 (N.D. Cal. May 24, 2021), *In re: 3M Combat Arms Earplug Products Liab. Litig.*, No. 3:19-md-02885-MCR-

GRJ, Pretrial Order No. 64 Trial Time Allocation For The First Bellwether Trial, Dkt. 1640 at 6 (N.D. Fla. Jan. 21, 2021); *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, Order Regarding Trial Matters, Dkt. 2594 at 2 (N.D. Ohio Sept. 12, 2019).

Testimony beyond that required by Rules 106 and 32 for fairness may, and often should, be offered at a separate time. Courts routinely limit counter-designations to completeness while requiring that all other testimony offered by an adverse party be presented to the jury separately. *In re Yasmim & Yaz (Drospirenone) Mktg., Sales Pracs. & PMF Prod. Liab. Litig.*, 2011 WL 6740391, at *18-19 (S.D. Ill. Dec. 22, 2011) ("[T]he Court will follow Rule 32(a)(6), however, as the rule reads *only* so much counter-designation will be read as is necessary to allow for a *fair* reading of the testimony.") (emphasis in original); *In re Pac. Fertility Ctr. Litig.*, 2021 WL 2075560, at *1 (N.D. Cal. May 24, 2021) (same). As Judge Corley noted in her order in Pacific Fertility Center, "[i]f testimony [Defendant] designated does not come in during Plaintiffs' presentation as a matter of fairness, [Defendant] may offer deposition testimony in its own case-in-chief." 2021 WL 2075560, at *1 (citing Fed. R. Civ. P. 32(b)(6)).

Alternatively, the Court should order designations be played separately where Uber's designation time exceeds that of Plaintiff's. *See In re: Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, No. 19-md-02913-WHO, Dkt. 3170 at 2 (N.D. Cal. May 9, 2022) ("In the few instances where defendants' designations exceed the time of plaintiff's designations, only the designations for completeness will be allowed during plaintiff's case-in-chief."). At minimum, highly disproportionate designations should be played separately. Specifically, the Court could adopt a rule similar to the one used in *In re: National Prescription Opiate Litigation*. There, Judge Polster ordered first, "if one party's designations are very short and the other party's designations are much longer, the Court may allow the first party to present only the short designation by itself," and second, "when the plaintiff wants to play in its case-in-chief portions of a videotaped deposition of a party opponent on cross-examination, the defendant may not force the plaintiff to present concurrently the defendant's own designations." *In re: National Prescription Opiate Litigation*, No. 1:17-MD-2804 (N.D. Ohio), Order Regarding Trial Matters, Dkt. 2594 at 2 (Sept. 12, 2019). This procedure is fair because it

balances the common impulse to hear from a witness all at once against the advantages of playing designations separately when they are disproportionate in length, and the inherent prejudice in allowing an adverse party to put on their best testimony in the middle of their opponent's case.

Uber's proposal to load up Plaintiff's case-in-chief with any and all testimony they want to designate—regardless of whether responsive or not to Plaintiff's cross—stokes confusion and frustrates efficiency. Uber's corporate witnesses often made long speeches throughout depositions, often rattling off defense talking points. Allowing Uber to play this testimony regardless of whatever evidence Plaintiff seeks to offer—no matter how narrow, or how limited the topic—obscures and buries Plaintiff's evidence, leaving the jury unclear about what evidence Plaintiff is offering in her case. Further, this process incentivizes Uber to designate lengthy, boring testimony to frustrate the effective presentation of evidence in Plaintiff's case. Either of Plaintiffs' proposals remove this temptation and keep things moving along in an orderly, fair and efficient way.

### B. Uber's Position

Uber recommends that all designations for a particular witness be handled together, regardless of the offering party.  This approach will make sense to the jury because it most closely mirrors live testimony with direct and cross-examination and avoids the confusion that can easily come from a witness "appearing" on multiple occasions within a trial. It is also the most efficient approach, particularly because the parties have agreed to a "chess clock" format, and the parties will have (or at least need to) factored designations into the time allocations, which is how the process worked successfully in the JCCP trial.

## VII. BIFURCATION

### A. Plaintiff's Position

Despite trial being five weeks away, Uber refuses to provide its position on bifurcation. Instead, for reasons unclear, Uber offers irrelevant argument about hypothetical evidence. Plaintiff renews her request for Uber to provide its position on bifurcation at the Case Management Conference so there is sufficient time for the parties to brief any disputes.

### B. Uber's Position

The Court's Guidelines for Civil Jury Trials identify bifurcation as appropriate for inclusion in the Pretrial Order, and Defendant intends to provide its position in that filing, which the parties have agreed to submit on December 16. This timing will allow Defendant to review Plaintiff's proposed exhibit list and determine whether bifurcation is necessary.

In particular, Uber anticipates that Plaintiff will seek to admit evidence that was properly excluded in the JCCP bellwether trial because it is unduly prejudicial. This includes, by way of example, evidence related to alleged corporate conduct and media strategies whose admission would result in undue prejudice and jury confusion. For example, Plaintiffs have questioned company witnesses about Uber employees' communications with media outlets regarding utterly unrelated allegations of sexual assault with no connection to Plaintiff's claims in this case. The JCCP bellwether plaintiff argued that although such evidence lacked any nexus to her alleged assault, it was relevant to Uber's punitive damages liability. The JCCP court excluded the evidence, finding that it was "at best minimally relevant" and "threaten[ed] . . . undue consumption of time on collateral evidence issues having to do with the accuracy of individual news stories." Order on Parties' Motion in Limine and Motion to Exclude Expert Opinions, *Jane Doe LSA 78 v. Uber Tech.*, No. CGC-21-592427, at 52 (Cal Super. Ct., S.F., Aug. 29, 2025).

If this Court admits such evidence in any respect, it would necessitate bifurcation of the jury's compensatory and punitive liability inquiries. In particular, bifurcation would be the only means of mitigating the risk that a compensatory verdict would be tainted by inadmissible evidence. It would also avoid mini trials during the compensatory phase about Uber's conduct that would unduly prejudice jurors, confuse them, and consume the limited time the parties have to present their evidence. As Uber's motions in limine will explain, this outcome should not be necessary: The JCCP court correctly excluded this evidence and the same outcome is warranted here. However, Uber raises the issue here to highlight the trial management implications that would be presented by plaintiffs' anticipated evidentiary theories, if accepted.

## VIII. TEMPORARY STAY ON NON-BELLWETHER RELATED MOTIONS

### A. Plaintiffs' Position

At the October 31, 2025 case management conference, the Court emphasized the importance of focus on the Dean bellwether trial. 10/31/2025 Conf. Tr. at 4:7-11. To preserve the parties' time and resources, Plaintiffs request deferring briefing and hearings on Uber's motions regarding proposed additional Pretrial Orders, or amendments to the Court's Pretrial Orders regarding non-bellwether related cases, until the *Dean* trial concludes. The PSC has engaged in good faith with Uber to address concerns regarding Plaintiffs who have become disengaged or unwilling or able to timely meet their discovery obligations, and the parties agreed on a stipulated amendment to Pretrial Order No. 10, which provides an orderly process for Uber to move to dismiss cases for failure to produce substantially complete Plaintiff Fact Sheets. Between Amended PTO 10 and PTO 31, Uber has adequate and appropriate tools to ensure compliance or seek relief. Additional motions and proposed amendments beyond those already in place are excessive at this juncture, where the Court and the parties are focused on trying the common issues. While Uber may have vast attorney resources to file serial motions on non-bellwether case management issues, this is an unreasonable and inefficient use of the PSC's resources during this period of intense preparation for the bellwether trial (including continued briefing on Uber's sweeping privilege log and numerous clawbacks). But perhaps that is the point.

### B. Uber's Position

Plaintiffs do not seek restrictions on motions relating to *existing* Court orders, such as PTO 10, PTO 31, or the Court's fraud show cause orders. Uber agrees that the PSC engaged in good faith negotiations relating to the amendments of PTO 10. The PSC opposed entry of PTO 31 and the Court's fraud-related show cause orders, and the Court entered those orders over the PSC's objection. Each of these orders was entered months ago, and Uber does not understand the PSC to be seeking restrictions on enforcement of any of these existing orders.

Instead, Plaintiffs seek a restriction on "motions regarding proposed *additional* Pretrial Orders, or *amendments* to the Court's Pretrial Orders regarding non-bellwether related cases." This relief is

hypothetical, overbroad, and unnecessary. The Court should adjudicate these issues on a case by case basis. The parties and the Court cannot forecast what new orders or amendments may be necessary over the next months. For example, as Uber's filings and this Court's Orders demonstrate, fraud is a significant problem in this MDL. Uber continues to find more fraud on a regular basis. To the extent Plaintiffs seek to muzzle Uber's ability to tell the Court about fraud among non-bellwether plaintiffs, that request should be denied. The purpose of this MDL, like any other, is to consolidate and coordinate a large docket of cases through efficient case management. There are significant attorney resources on both sides to handle both trial and day-to-day case management.

## IX. IMPENDING MOTION REGARDING COMMON BENEFIT QSF

As the Court is aware, this summer, one law firm resolved its cases with Uber, including cases filed in the MDL. Plaintiffs plan to move in this Court to establish a qualified settlement fund for common benefit fees and costs that are subject to Pretrial Order No. 19. They anticipate the motion will be unopposed, and would hope the Court could hear it on an accelerated schedule.

## X. SETTLEMENT / MEDIATION

The parties continue to meet periodically with Judge Andler to discuss the potential for resolution.

## XI. NEXT CASE MANAGEMENT CONFERENCE

The next case management conference has not been scheduled.

Dated: December 3, 2025

By: /s/ Sarah R. London

Sarah R. London (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: /s/ Rachel B. Abrams

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641

rabrams@peifferwolf.com

By: /s/ Roopal P. Luhana

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

Dated: December 3, 2025

**KIRKLAND & ELLIS LLP**

By: /s/ Laura Vartain Horn
    **KIRKLAND & ELLIS LLP**
    ALLISON M. BROWN
    JESSICA DAVIDSON
    LAURA VARTAIN

    **SHOOK, HARDY & BACON L.L.P.**
    MICHAEL B. SHORTNACY
    PATRICK L. OOT, JR.
    CHRISTOPHER V. COTTON
    ALYCIA A. DEGEN

    **O'MELVENY AND MYERS LLP**
    SABRINA H. STRONG
    JONATHAN SCHNELLER

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**FILER'S ATTESTATION**

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: December 3, 2025

/s/ *Laura Vartain Horn*
Laura Vartain Horn