Steve Schulte (TX Bar No. 24051306)
*Appearance Pro Hac Vice*
John Raggio (CA Bar No. 338261)
Arati Furness (CA Bar No. 225435)
**NACHAWATI LAW GROUP**
5489 Blair Road
Dallas, Texas 75231
Telephone: (214) 890-0711
Fax Number: (214) 890-0712
Email: schulte@ntrial.com
Email: jraggio@ntrial.com
Email: afurness@ntrial.com

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB **NACHAWATI LAW GROUP PLAINTIFFS' OPPOSITION TO DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION TO DISMISS CASES FOR FAILURE TO COMPLY WITH PTO 5** |
| This Document Relates to: *Jane Doe NLG (N.T.) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-07540-CRB  *Jane Doe NLG (N.H.) v. Uber Technologies, Inc., et al.*, No 3:25-cv-08109-CRB  *Jane Doe NLG 5 (A.H.) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-08112-CRB  *Jane Doe NLG (N.S.) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-08186-CRB  *Jane Doe NLG (D.S.) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-08258-CRB  *Jane Doe NLG 2 (J.C.) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-08259-CRB  *Jane Doe NLG (M.U.) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-08264-CRB | Judge: Honorable Charles R. Breyer Date: January 16, 2026 Time: 10:00 a.m. Courtroom: 6 – 17th Floor |

*Jane Doe NLG 2 (V.F.) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-08545-CRB

*Jane Doe NLG (J.O.) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-08567-CRB

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................3

II. ARGUMENT .........................................................................................................5

    A. The First and Second Malone Factors: The Public's Interest in Expeditious Resolution of the Litigation and the Court's Need to Manage its Docket Weigh Against Dismissal with Prejudice. ...6

    B. The Third Malone Factor: The Risk of Prejudice to Defendants Weighs Against Dismissal with Prejudice ..................................7

    C. The Fourth Malone Factor: The Public Policy Favoring Disposition of Cases on the Merits Weighs Against Dismissal with Prejudice. ............................................................................8

    D. The Fifth Malone Factor: The Availability of Less Drastic Sanctions Weighs Against Dismissal with Prejudice. ................8

III. CONCLUSION.....................................................................................................9

## I. INTRODUCTION

Nachawati Law Group ("NLG") Plaintiffs submit this Response in Opposition to Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's (collectively referred to as "Defendants" or "Uber") Motion to Dismiss Cases for Failure to Comply with PTO 5 (ECF No. 4490). Uber wrongly presents this issue as one of refusal by the clients to produce a bona fide ride receipt or information sheet regarding their Uber trips, as required by Pretrial Order No. 5 ("PTO 5"). The Plaintiffs are not unwilling; rather, our firm has been unsuccessful in obtaining current contact information and/or connecting with them to obtain a bona fide ride receipt or information sheet. Our firm is, and has been, employing all the resources available to us outside of the original contact information in an effort to obtain the necessary information. Additionally, for some of these Plaintiffs, our firm has been successful in producing bona fide ride receipts and ride information sheets, rendering Uber's motion moot. For these reasons, and for the reasons set forth below, Plaintiffs' counsel respectfully request that this Court deny Defendants' Motion.

As an initial matter, Uber's motion should be denied as moot as to Jane Doe NLG 5 (A.H.), Jane Doe NLG 2 (J.C.), Jane Doe NLG 2 (V.F.), Jane Doe NLG (M.U.), and Jane Doe NLG (J.O.), as their bona fide ride receipts or ride information sheets were submitted and produced via MDL Centrality as of December 10, 2025, and thus, compliance with Pretrial Order No. 5 has been satisfied. (Declaration of Steven S. Schulte, at ¶ 5). Counsel would therefore dispute these Plaintiffs' inclusion on Uber's list of delinquencies as well as respectfully request for their exclusion on any future entry of dismissal by the Court.

For the remaining Plaintiffs, Counsel respectfully requests that this Court allow additional time for it to reach or re-connect with Plaintiffs to obtain a bona fide ride receipt or information sheet due to their current unavailability and or non-responsiveness.

As is true in the majority of cases in this litigation, these Plaintiffs were assaulted, retained our firm, and filed their case some time ago. We have been engaged to represent these women, were provided with information about their cases and contact information but have lost communication or have been unable to reach the clients, despite our best efforts. These efforts include numerous phone calls, emails, texts, letters, written communications, and full contact and address searches. (Schulte Decl. at ¶ 4.) Simply put, while we have made every effort to reach these Plaintiffs to obtain a bona fide ride receipt or information sheet, we have not received any indication that these clients are actually aware that they have failed to comply with the Court's Order. What we do know is that our process of reestablishing contact and communication with clients has been effective in many instances, and it is clear that these Plaintiffs are resurfacing over time and through the different contact methods we are using.

First, as the Court is aware, a plaintiff may become unavailable for various reasons as litigation progresses. Counsel has utilized extensive efforts to reach each of these Plaintiffs, predating and since the filing of Defendants' Motion. Counsel will continue these efforts and will provide the bona fide ride receipt or information sheet for these Plaintiffs immediately upon receipt. Plaintiffs' counsel respectfully request that this Court deny Defendants' Motion as to these Plaintiffs, due to the issue being moot, and to allow additional time for counsel to reach or re-connect with these clients and obtain the requisite missing items. This relief is particularly warranted in light of Defendants' failure to meet and confer as noted below.

Second, Uber's Motion unreasonably prejudices Plaintiffs. Uber did not meet and confer regarding this issue for a subset of these clients. Had Uber done so, the parties could have potentially come up with a process consistent with the Court's prior orders on this same issue. Consequently, these legitimate claims are at risk of dismissal, sometimes with a permanent effect in light of limitations, on the sole basis of their counsel's inability to reach them. Local Rule 37-

1 requires counsel to meet and confer in good faith before bringing a discovery motion. (Civil L.R. 37-1.) Defendants' counsel failed to meet and confer with counsel for NLG Plaintiffs about their alleged failure to comply with PTO 5 before filing this Motion to Dismiss, contrary to this Court's Local Rules. This failure independently warrants denial of Defendants' Motion as to these Plaintiffs.

Third, Uber's Motion ignores the current procedural posture and direction of the litigation. Uber also fails to specifically address how the failure of these Plaintiffs to submit some missing items at this point in the litigation actually causes harm. Currently, the bellwethers have already been selected, and no NLG case has been selected as a bellwether. The current case management deadlines will be focused on the bellwether cases and the corporate discovery.

Therefore, Plaintiffs respectfully request that the Court deny Uber's Motion, and that the Court implement less drastic remedies that are available, and that the Court allow Plaintiffs' counsel additional time to reestablish communication to obtain the missing items for submission, where applicable as here.

## II.   ARGUMENT

Federal Rule of Civil Procedure 41(b) allows a court to dismiss a claim for failure to prosecute or comply with a court order, "dismissal, however, is so harsh a penalty it should be imposed as a sanction only in extreme cases." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (citing *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986)). Involuntary dismissal under FRCP 41(b) is a "drastic remedy which by its nature cannot be appropriately applied to every case of failure to comply with an order of the Court." *Industrial Bldg. Materials v. Interchemical Corp.*, 278 F.Supp. 938, 949 (C.D. Cal. 1967). Additionally, dismissal is appropriate under Fed. R. Civ. P. 37 for violation of a discovery order "only where the failure to comply is due to willfulness, bad faith, or fault of the parties," *Wyle v. R.J. Reynolds*

*Industries, Inc.*, 709 F.2d 585, 589 (9th Cir.1983), and "where lesser sanctions are considered by the district court to be inadequate." *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986). "The sanctions of dismissal or default, however, are generally reserved for those extreme circumstances where deception is willful, in bad faith, or relates to matters in controversy that interfere with rightful decisions of a case." *Id.*

In analyzing whether involuntary dismissal under FRCP 41(b) is warranted in any particular case, the Court must weigh the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (quoting *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829 (1986)). Each of these factors weigh against dismissal because of the posture of the litigation, the nature of the cases, and the unique positioning of these Plaintiffs.

A. **The First and Second Malone Factors: The Public's Interest in Expeditious Resolution of the Litigation and the Court's Need to Manage its Docket Weigh Against Dismissal with Prejudice.**

With respect to the first *Malone* factor, the district court has discretion to determine what is an unreasonable delay in the expeditious resolution of the litigation because "it is in the best position to determine what period of delay can be endured before its docket becomes unmanageable." *In re Eisen*, 31 F.3d 1447, 1452 (9th Cir. 1994). The second *Malone* factor "is usually reviewed in conjunction with the public's interest in expeditious resolution of litigation to determine if there is unreasonable delay…[the district court] knows when its docket may become unmanageable." *Id.* at 1453.

NLG has already decreased the number of Plaintiffs with missing information and/or documents in a majority of cases that this issue has been raised. A Plaintiff's delayed submission

of a bona fide ride receipt or information sheet does not unreasonably impede the resolution of the litigation. These Plaintiffs constitute less than 1 percent of the total MDL. And bellwethers have already been selected. The production of these items will not have a substantial impact on the timeline of the bellwether cases set for trial. Those trial deadlines will be driven by case specific discovery in the bellwether cases as well as the overall corporate discovery.

Also, the unique posture of these Plaintiffs also highlights that a dismissal of their cases would be unreasonable at this juncture. Unlike the other unfiled cases that could be filed into the MDL, these cases were subject to a filing deadline which subsequently triggered all deadlines. In effect, these legitimate claims, which often involve young women who are mobile, are now at risk for dismissal, possibly with a permanent effect in light of limitations, on the sole basis of counsel's current inability to reach them. While Uber is entitled to a bona fide ride receipt or information sheet, noncompliance at this point does not cause an unreasonable delay in the resolution of the MDL overall. *See contra In re Eisen*, 31 F.3d 1451-52 ("the bankruptcy court found that Moneymaker had taken no action to prosecute in four years...the four-year delay in this case is clearly unreasonable.") Therefore, the first two factors weigh against dismissal.

**B. The Third Malone Factor: The Risk of Prejudice to Defendants Weighs Against Dismissal with Prejudice**

"In determining whether a defendant has been prejudiced, we examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987).

Plaintiffs' actions do not impair Uber's ability to go to trial because the only further case-specific discovery that will take place is in those cases set for bellwether trials. Uber's reliance on *In re Phenylpropanolamine (PPA) Product Liability Litigation* (hereinafter "PPA") is misplaced because the underlying facts of the claims and discovery process are inconsistent with this case. 460 F. 3d 1217, 1223 (9th Cir., 2006). In *PPA*, the discovery timeline was triggered by

the submission of the Plaintiff Fact Sheet: Defendants could not take case-specific fact depositions sooner than 120 days after the Plaintiff Fact Sheet was submitted, and the one-year discovery period for completion of discovery would also not start until a Plaintiff Fact Sheet was submitted. *Id*. at 1224. By contrast, here, the case specific discovery process is rooted in the bellwether cases rather than each individual claim. The bellwethers have already been selected and the cases remaining in the litigation are in fact discovery. As such, these cases pose no greater risk to Uber than any unfiled case. Indeed, the prejudice to these sexual assault survivors, some of whom who were the only ones subject to a filing cut-off, is far greater. Therefore, the third factor weighs against dismissal.

### C. The Fourth Malone Factor: The Public Policy Favoring Disposition of Cases on the Merits Weighs Against Dismissal with Prejudice.

At a general level, the "'public policy favoring disposition of cases on their merits'—the fourth Malone factor—always weighs against a default judgment, and often 'strongly' so." *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1147 (9th Cir. 2024) (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)). "By definition, a default judgment does not promote the public policy of resolving lawsuits in their merits." *Smith v. Humboldt Cnty. Sheriff's Off. Corr. Facility*, No. 24-CV-01035-PHK, 2025 WL 41926, at *5 (N.D. Cal. Jan. 7, 2025). A dismissal at this stage would not move these Plaintiffs towards a resolution on the merits. As such, this factor weighs against dismissal.

### D. The Fifth Malone Factor: The Availability of Less Drastic Sanctions Weighs Against Dismissal with Prejudice.

"The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *Malone*, 833 F.2d at 131.

> Our case law reveals that the following factors are of particular relevance in determining whether a district court has considered alternatives to dismissal: (1) Did the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inadequate? (2) Did the court implement alternative methods of sanctioning or curing the malfeasance before ordering dismissal? (3) Did the court warn the plaintiff of the possibility of dismissal before actually ordering dismissal?

*Id*.

These factors as well as the pretrial orders and processes in other multi-district litigations weigh against a dismissal with prejudice. "Before dismissing an action, a court should always be certain that other less drastic alternatives are not available." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

This particular issue can be resolved by less drastic measures. Plaintiffs' proposed measures, including an allowance for additional time to reach this Plaintiff, as discussed above, take a more holistic approach to the needs of litigation and the rights of each Plaintiff to have their day in court.

By contrast, Uber's proposed dismissal process is particularly punitive in light of the nature of Plaintiffs' claims, which all stem from the sexual assault or sexual misconduct by an Uber driver, and this Court's prior Order. There are many reasons why these victims of sexual assault could be unresponsive. These cases often involve young women who are mobile—changes in address name, phone number, etc. are all real human reasons why their initial contact information is no longer valid. However, our methods of locating these Plaintiffs are seemingly working in time.

### III. CONCLUSION

The Court should deny Uber's Motion because less drastic measures are available to the Court and should be implemented rather than a dismissal. Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

| | | |
|---|---|---|
| 1 | Dated: December 10, 2025 | Respectfully submitted, |
| 2 | | By: */s/ Steve Schulte* |
| 3 | | Steve Schulte (TX Bar No. 24051306) |
| | | *Appearance Pro Hac Vice* |
| 4 | | John Raggio (CA Bar No. 338261) |
| | | Arati Furness (CA Bar No. 225435) |
| 5 | | **NACHAWATI LAW GROUP** |
| | | 5489 Blair Road |
| 6 | | Dallas, Texas 75231 |
| 7 | | Telephone: (214) 890-0711 |
| | | Fax: (214) 890-0712 |
| 8 | | Email: schulte@ntrial.com |
| | | Email: jraggio@ntrial.com |
| 9 | | Email: afurness@ntrial.com |
| 10 | | *Counsel for Plaintiffs* |