1
2  [Submitting counsel below]
3
4
5
6
7
8
9
10
11
12                    UNITED STATES DISTRICT COURT
13                  OF NORTHERN DISTRICT OF CALIFORNIA
14                         SAN FRANCISCO DIVISION
15

16  **IN RE: UBER TECHNOLOGIES, INC.,** | No. 3:23-md-03084-CRB
    **PASSENGER SEXUAL ASSAULT**
17  **LITIGATION** | **PLAINTIFF'S MOTION TO PRECLUDE UBER FROM CHERRY-PICKING CORPORATE TRIAL WITNESSES AND FROM CALLING AT TRIAL LATE-DISCLOSED WITNESSES**
18
19
20  This Document Relates to: | Judge: Honorable Charles R. Breyer
                              | Date:  TBD
21  *Jaylynn Dean v. Uber Techs., Inc.*, | Time:  TBD
    N.D. Cal. No. 23-cv-06708           | Ctrm.: 6-17th Floor (zoom)
22  D. Ariz. No. 25-cv-4276
                                        | **REDACTED**
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

    A.    Uber intends to call up to six out-of-state corporate witnesses live, while refusing to produce any of the three corporate witnesses Plaintiff requested. ......... 1

    B.    Uber intends to call two corporate witnesses who were not identified in initial or expert disclosures. ..................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.    The Court should prohibit live corporate witness testimony unless Plaintiff's preferred witnesses are also made available to testify live. ............................... 3

    A.    Uber improperly seeks a tactical advantage by cherry-picking trial witnesses. ........................................................................................................... 3

    B.    The same rules on live corporate witnesses should apply to both sides. ............... 5

II.    The Court should preclude late-disclosed witnesses from testifying live at trial. .............. 5

    A.    Todd Gaddis should not be permitted to testify, or at least should be limited to the scope of his 30(b)(6) deposition. .................................................................. 6

    B.    Chad Dobbs should not be permitted to testify, or at least should be limited to the scope of his 30(b)(6) deposition. .................................................................. 7

CONCLUSION .................................................................................................................... 8

# INTRODUCTION

The Court disfavors trial by surprise, but Uber has sprung several on Plaintiff in the last several days.

*First*, Uber "agreed to make reasonable efforts to produce [company] witnesses Plaintiffs identify" "to testify live" at trial, "assuming Plaintiffs provide a reasonably narrowed list." ECF 4261 at 10. Uber has not fulfilled its commitment. Plaintiff Dean requested that Uber produce three corporate witnesses—Katy McDonald, Gus Fuldner, and Sunny Wong—to testify live at the *Dean* trial. ECF 4559 at 6. Though Uber has chosen to bring its own preferred corporate witnesses live to trial—*five* of them—it refused Plaintiff's request to bring Ms. McDonald, Mr. Fuldner, or Mr. Wong. *Id.* at 8. Uber's attempts to game Rule 45 by calling its preferred witnesses for live trial testimony, while excluding Plaintiff's requested witnesses beyond the subpoena power of the Court, is improper cherry-picking and unfairly prejudicial. If Uber will not make reasonable efforts to produce Plaintiff's preferred witnesses, then it should not be able to call any corporate witness live.

*Second*, Uber's witness list included two corporate fact witnesses who were not previously identified in either Uber's initial or expert disclosures—Todd Gaddis and Chad Dobbs. Although both were deposed as 30(b0(6) witnesses, the scope of their anticipated trial testimony exceeds that of their 30(b)(6) depositions. Uber's late disclosures violate Rule 26 and cannot be found substantially justified or harmless under Rule 37. Regardless of whether Uber can call any corporate witnesses live, it may not call these two individuals. Should the Court permit Mr. Gaddis or Mr. Dobbs to testify, Uber's direct examination of them should be limited to the scope of their 30(b)(6) depositions.

# BACKGROUND

**A.    Uber intends to call up to six out-of-state corporate witnesses live, while refusing to produce any of the three corporate witnesses Plaintiff requested.**

On October 29, Uber agreed to make "reasonable efforts" to produce corporate witnesses Plaintiff desired to bring live to trial, subject only to (1) Plaintiff providing "a reasonably narrowed list" and (2) "relevant considerations including role in the organization, relevance, and availability." ECF 4261 at 10. On November 30, Plaintiff identified three witnesses: Gus Fuldner, Katy McDonald, and Sunny Wong. *See* ECF 4559 at 5. Uber refused to produce any. *See id.* at 7-8.

Then, on December 8 and 11, the parties exchanged witness lists. Uber's revised list includes five Uber executives it "will likely call … at trial" live: Emilie Boman, Heather Childs, Chad Dobbs, Todd Gaddis, and Sachin Kansal. **Ex. A** at 3-4.

### B. Uber intends to call two corporate witnesses who were not identified in initial or expert disclosures.

Two corporate fact witnesses—Mr. Dobbs and Mr. Gaddis—were not disclosed in either Uber's initial or extensive disclosures.

**Todd Gaddis**. Per Uber's witness list, Mr. Gaddis will "testify consistent with his declaration concerning the absence of in-app audio recording on the subject trip, as well as Uber's Safety Reports and incident data." **Ex. A** at 4. Mr. Gaddis was not identified in Uber's initial or expert disclosures. London Decl. at ¶ 5. His custodial file was never produced, nor was he deposed in his personal capacity. *Id.* at ¶ 7. He was deposed as a 30(b)(6) witness, but only on general topics concerning Uber's Safety Reports and statistics concerning numbers of rides and riders, not on anything about Ms. Dean's ride in particular nor about audio recording. *See* London Decl. at ¶¶ 7-8 & **Ex. B**. The "declaration" referenced was produced only on December 4, well past the November 14 close of discovery for Wave 1 cases (set by Judge Cisneros). London Decl. at ¶ 9 & **Ex. C**; ECF 4123 at 2-3. And the declared fact—that Ms. Dean's ride was not recorded—contradicts the documentary record and Uber's own expert's analysis. *See* **Ex. D** (Thomas Reb. Rpt.) at 7 ("███████████████████████████").

**Chad Dobbs**. Per Uber's witness list, Mr. Dobbs will testify "concerning Uber's lack of control over third-party independent drivers and Uber's independent contractor model." Ex. C at 4. Mr. Dobbs was not identified in Uber's initial or expert disclosures. London Decl. at ¶ 11. His custodial file was never produced, nor was he deposed in his personal capacity. *Id.* at ¶ 12. Mr. Dobbs was deposed as a 30(b)(6) witness, but not on Uber's "control," or lack thereof, over its drivers. *Id.* at ¶¶ 13-14 & **Ex. E**. His testimony appears designed to supplement or substitute for Uber's properly-disclosed expert witness on control issues, Mr. Okpaku. *See* ECF 4357-1 (Okpaku Report).

# ARGUMENT

## I. The Court should prohibit live corporate witness testimony unless Plaintiff's preferred witnesses are also made available to testify live.

### A. Uber improperly seeks a tactical advantage by cherry-picking trial witnesses.

Uber plans to call live at trial up to five of its own, out-of-state executives. At the same time, Uber refuses to produce Ms. McDonald, Mr. Fuldner, or Mr. Wong live, despite the parties' prior agreement. *See* ECF 4559 at 8. Uber controls its corporate employees, both those it plans to call at trial and those it plans to leave behind in California. All three witnesses that Plaintiff identified are managing agents: Ms. McDonald is Uber's Data Science Director; Mr. Fuldner is Uber's Senior Vice President of Safety and Core Services; and Mr. Wong is a Senior Applied Science Manager. *See, e.g., Mullins v. Ethicon, Inc.*, 2015 WL 8275744, at *2 (S.D.W. Va. Dec. 7, 2015) ("[D]efendants unquestionably have control of the witnesses because they currently employ Smith and Angelini, both of whom are relatively important and knowledgeable employees"). Ms. McDonald and Mr. Wong both also testified as 30(b)(6) designees. Since Ms. McDonald, Mr. Fuldner, and Mr. Wong are outside the subpoena power of the Court, as their employer, Uber has the sole authority to procure their attendance at trial. *See* Fed. R. Civ. P. 45(c).

Uber's refusal to do so, while at the same time bringing the California-based corporate witnesses it wishes to use as part of its own case-in-chief, demonstrates that Uber is acting to secure a tactical advantage. *See In re Vioxx Prod. Liab. Litig.*, 439 F. Supp.2d 640, 643 (E.D. La. 2006) (concluding defendant "would like to eliminate any unpredictability and limit [the witness's] trial testimony to his 'canned' deposition testimony—a purely tactical reason"). If Uber is permitted to do so, Uber can present concise, engaging, and coherent live testimony from those witnesses it deems most advantageous while forcing Plaintiff to splice together a mishmash of discovery depositions that include hours of questioning from JCCP attorneys pursuing entirely different theories, taken over a period of months. *See, e.g., Mullins*, 2015 WL 8275744 at *2 ("[T]he witnesses are relatively important and knowledgeable employees of the defendants, the defendants refuse to make these witnesses available, and the defendants want to limit the testimony of these witnesses to deposition testimony. The court ... finds these circumstances to show the defendants'

refusal is purely tactical.").[1] Making matters worse, Defendants can dilute and confuse the deposition testimony Plaintiff seeks to present by (improperly) designating, as purported "counters," their corporate witnesses' unresponsive and prolonged answers to many of Plaintiff's questions (answers the witnesses would never be permitted to present in live court). In other words, without Court intervention, Uber can improperly leverage Rule 45's geographical limitations to ensure that it can present its case in a clear, effective manner, while Plaintiff cannot.

Uber's plan would unfairly prejudice Plaintiff. *First*, relying on multiple discovery depositions conducted over months in coordination with JCCP attorneys, littered with unresponsive testimony, and spliced together is the least efficient and most cumbersome way to present evidence to the jury. *See Mullins*, 2015 WL 8275744 at *2; *see also Cline v. Boston Sci. Corp.*, 2021 WL 1614326, at *3 (W.D. Ark. April 26, 2021) ("Good cause justifies ordering the parties to take one videotaped trial deposition for each of the three witnesses… failing to do so will jeopardize not only the factfinder's ability to comprehend the evidence, but also [plaintiff's] ability to present her case to the jury.").[2] *Second*, Uber continues to produce documents, both general and case-specific (in many cases only after improperly withholding the documents as privileged). London Decl. at ¶ 15-16.[3] When a corporate defendant withholds live witness testimony by certain witnesses, this prejudices plaintiffs who are then not able to examine the witnesses regarding new information. *Cf. In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 6327374, at *5 (N.D. Fla. Oct. 28, 2021) (recognizing that "Plaintiffs rightly want" the opportunity to examine the witness "about his new statements in front of the jury"). Uber should not be permitted to unfairly prejudice Plaintiff

---

[1] In its CMC Statement, Uber suggested that *Mullins* is inapposite because it concerned a request for testimony via live video transmission under Fed. R. Civ. P. 43 and not a deposition subpoena under Fed. R. Civ. P. 45. *See* ECF 4559 at 9. Not so. The *Mullins* court's conclusion that refusing to produce witnesses live for trial is for "tactical" reasons and that trial testimony would be more "coherent" than multiple depositions spliced together applies regardless of the remedy sought and applied to cure the issue in that case. *See Mullins*, 2015 WL 8275744, at *2.

[2] In the alternative, Plaintiff served trial depositions subpoenas for Ms. McDonald, Mr. Fuldner, and Mr. Wong. These depositions do not, however, alleviate the prejudice that results from Uber's improper cherry-picking.

[3] For example, Mr. Fuldner's deposition concluded on April 29, 2025. Since then, Uber has produced more than 60,000 documents, over 3,300 of which are associated with Mr. Fuldner. London Decl. at ¶ 16. In addition, prompted by Judge Jones's rulings, Uber has continued to de-designate hundreds of documents inappropriately withheld as privileged. *Id.* at ¶ 17.

by cherry-picking the witnesses that are available for Plaintiff to call live at trial.

### B. The same rules on live corporate witnesses should apply to both sides.

Uber must pick a lane: if Plaintiff must rely on deposition testimony from Uber's corporate witnesses, so must Uber. *See In re Pacific Fertility Center Litigation*, 18-cv-01586, ECF 792, at 1–2 (N.D. Cal. May 12, 2021) (Corley, M.J.) [attached as **Ex. F**] ("[T]he Court is troubled that Cryoport has agreed to produce the two witnesses Chart wants to testify but is refusing to allow the witness Plaintiffs want to call to testify live, even via [live] video [streaming]. Given that Chart has not offered any reason for this position, the Court is considering requiring the testimony of all Cyroport witnesses to be presented via their depositions absent some good faith explanation for the discrepancy."). In *Pacific Fertility*, for example, Judge Corley warned that she would not permit a party to "manipulat[e] the witnesses to only have those come live that you think help" while the opposing party had to rely on recorded depositions. *Id.*, ECF 810, at 56:2-8 (N.D. Cal. May 19, 2021) [attached as **Ex. G**]. Instead, she advised that "[i]f it's all depo, it's all depo." *Id. Cf. R.B. Matthews, Inc. v. Transam. Transp. Servs., Inc.*, 945 F.2d 269, 272 (9th Cir. 1991) ("By denying RBM's request to produce Reed and White as live witnesses, TTS engaged in gamesmanship, forcing RBM to rely on depositions. The district court did not abuse its discretion when it forced TTS to rely on deposition testimony as well."). Here, too, Uber should not be permitted to manipulate the presentation of testimony at trial to ensure that the jury only hears live testimony from those company witnesses it deems most helpful to its case. Such asymmetrical presentation of evidence is prejudicial and unfair.[4] Plaintiff should be afforded the same opportunities as Uber.

### II. The Court should preclude late-disclosed witnesses from testifying live at trial.

At a minimum, the Court should preclude Mr. Gaddis and Mr. Dobbs from testifying live.

Rule 26 requires that witnesses "that the disclosing party may use to support its claims or defense" be included in initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(i). Expert witnesses must be included in expert disclosures. Fed. R. Civ. P. 26(a)(2)(D). Late-disclosed witnesses may not "supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified

---

[4] Notably, after enforcing its Terms of Use to secure transfer to Arizona, ostensibly "for the convenience of the parties and the witnesses," Uber has indicated that intends to call only one live local witness within the subpoena power, the police investigator who handled Ms. Dean's report.

or is harmless." Fed. R. Civ. P. 37(c)(1). The "party whose evidence may be excluded has the burden of proving that its failure to disclose was substantially justified or harmless." *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 937 (N.D. Cal. 2017). Nondisclosure "is harmless if it does not prejudice the other party." *Id.* In evaluating whether a failure is harmless, courts consider: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Id.* (citation omitted).

### A. Todd Gaddis should not be permitted to testify, or at least should be limited to the scope of his 30(b)(6) deposition.

The Court should exclude Mr. Gaddis's testimony under Rules 26(a)(1), 26(a)(2)(D), and (37)(a). Mr. Gaddis was not included in either Uber's initial or expert disclosures. London Decl. at ¶ 5. His custodial file was never produced, nor was he deposed in his personal capacity. *Id.* at ¶ 6. He should not be permitted to testify at all; at a minimum, his proposed testimony regarding "the absence of in-app audio recording on the subject trip," **Ex. A** at 4, must be excluded.

Uber's late disclosure of Mr. Gaddis appears justified only as an improper effort to circumvent the discovery and expert disclosure deadlines. Uber says Mr. Gaddis will testify "consistent with his declaration," *id.*, but that declaration was produced on December 4, well past the close of discovery for this first case (set by Judge Cisneros as November 14, 2025). London Decl. at ¶ 9; **Ex. B**; ECF 4123 at 2-3 (setting deadline). And Uber's own expert says the opposite: that Turay "[redacted]" **Ex. D** (Thomas Reb. Rpt.) at 7.

Whether Mr. Turay audio-recorded Ms. Dean's ride and Uber's failure to preserve any recording are facts central to the parties' disputes about what happened on the ride, about how Uber's policies failed to deter sexual assault, and Uber's subsequent reaction to and investigation of the rape. Uber tracks the actions of its drivers and logs those actions in a database called the "mobile events log." See **Ex. H**. The [redacted] *Id.* at line 13634 ("s[redacted]"). But Uber only

stores in-app audio recordings for a period of seven days before deleting them. **Ex. I** (Esteves 8/28/25 Dep.) at 136-7:15. All the evidence is that—as Uber's own expert concluded—Mr. Turay recorded the audio of the ride but Uber destroyed it (or allowed it to be destroyed knowing its central importance to the police investigation), even though Uber learned of the assault of Ms. Dean the same day it occurred. Uber's attempt to use a non-disclosed witness to clean up the record for its own expert with late-disclosed evidence cannot be substantially justified. *See Zone Sports Ctr., LLC v. Rodriguez*, 2016 WL 224093, at *10 (E.D. Cal. Jan. 19, 2016) ("What is of particular concern to the Court is that the failure to disclose appears to have been a deliberate tactical decision by Zone.").

Mr. Gaddis's late disclosure is also not harmless. Mr. Gaddis's testimony is doubly prejudicial, in that it reflects an undisclosed witness discussing undisclosed evidence. Plaintiff was surprised, considering that Mr. Gaddis never appeared on a witness list, Uber did not produce his custodial file, and all the evidence showed that Mr. Turay *did* record the ride and Uber deleted (or allowed the deletion of) the recording. And Plaintiff cannot cure the surprise: there is no time before trial to secure Mr. Gaddis's custodial file, resolve privilege disputes, and depose him in his personal capacity about this new topic. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) (excluding undisclosed witness because opposing party is entitled to deposition); *Mendoza v. Intuitive Surg., Inc.* 2021 WL 1910886, at *4 (N.D. Cal. May 12, 2021) ("[I]f the undisclosed witness' testimony were allowed, Intuitive would be entitled to documentary and testimonial discovery into what each undisclosed witness knows. Yet the time for such discovery has long passed."). And Uber's attempt to change the record will require Plaintiff to modify her trial strategy at this late stage.

If Mr. Gaddis is permitted to testify at all, he should be limited to the topics on which he was designated as a Rule 30(b)(6) witness. *See* London Decl. at ¶¶ 7-8 & **Ex. B**.

**B.    Chad Dobbs should not be permitted to testify, or at least should be limited to the scope of his 30(b)(6) deposition.**

Like Mr. Gaddis, Mr. Dobbs was not included in either Uber's initial or expert disclosures. London Decl. at ¶ 11. His custodial file was never produced, nor was he deposed in his personal

1  capacity. *Id.* at ¶ 12. He was deposed as a 30(b)(6) witness, but only on certain targeted topics. As
2  relevant here, those topics included Uber's "reasoning and basis for using an independent contractor
3  model and how use of that model affected sexual assault prevention" and Uber's incentives to
4  drivers and other employees to "increase or maintain driver supply." *Id.* at ¶¶ 13-14 & **Ex. E**. Mr.
5  Dobbs did not sit as a 30(b)(6) witness on Uber's "control," or lack thereof, over its drivers. *Id.*

6  Uber's late disclosure of Mr. Dobbs appears deliberate and tactical, and so cannot be
7  substantially justified. *See Zone Sports Ctr., LLC v. Rodriguez*, 2016 WL 224093, at *10. Uber has
8  a "control" expert—Mr. Okpaku. *See* ECF 4357-1 (Okpaku Report). Plaintiff's *Daubert* motion
9  explained that much of Mr. Okpaku's testimony on this point must be excluded because he relies
10 on an factors irrelevant under Arizona law—drivers' "motivators" and contract terms. *See* ECF
11 4357 at 40-41. Evidently concerned that Mr. Okpaku may be excluded or limited, Uber seeks to
12 cover that hole with Mr. Dobbs.

13 Uber's late disclosure is also not harmless. Plaintiff was surprised, considering that Mr.
14 Dobbs never appeared on a witness list and Uber did not produce his custodial file. And Plaintiff
15 cannot cure the surprise: there is no time before trial to secure Mr. Dobbs's custodial file, resolve
16 privilege disputes, and depose him in his personal capacity on these new topics. Mr. Dobb's
17 testimony will also require changes to trial strategy. *See Mendoza*, 2021 WL 1910886, at *4 ("To
18 admit the undisclosed witness' testimony on the eve of trial would prejudice Intuitive."). Plaintiff
19 understood Mr. Okpaku's report to constitute Uber's defense on the control issue, and produced a
20 rebuttal expert report in response. Whatever Mr. Dobbs will say, once revealed, will require re-
21 evaluation and modification of Plaintiff's presentation and possibly supplementation of her rebuttal
22 expert disclosure.

23 If Mr. Dobbs is permitted to testify at all, he should be limited to the topics on which he
24 was designated as a Rule 30(b)(6) witness. *See* London Decl. at ¶¶ 13-14 & **Ex. E**.

## CONCLUSION

26 For these reasons, Plaintiff respectfully requests that the Court (1) preclude Uber from
27 calling any corporate employees or consultants live if it fails to produce Katy McDonald, Gus
28 Fuldner, and Sunny Wong live at trial and (2) in any event, preclude Todd Gaddis and Chad Dobbs

from testifying live at trial. Should the Court permit Mr. Gaddis and Mr. Dobbs to testify at all, Plaintiff requests that their testimony be limited to the scope of their 30(b)(6) depositions.

Dated: December 12, 2025

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

2972299.11       -9-       PL'S MOT. RE CORPORATE TRIAL WITNESSES
CASE NO. 3:23-MD-03084

from testifying live at trial. Should the Court permit Mr. Gaddis and Mr. Dobbs to testify at all, Plaintiff requests that their testimony be limited to the scope of their 30(b)(6) depositions.

Dated: December 12, 2025

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

2972299.11       -9-       PL'S MOT. RE CORPORATE TRIAL WITNESSES
CASE NO. 3:23-MD-03084

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: December 12, 2025           By:   */s/ Andrew R. Kaufman*
                                              Andrew R. Kaufman