# EXHIBIT E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

-----------------------------------------X
IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT LITIGATION

Case No. 3:23-md-03084-CRB
-----------------------------------------X

\*\*\* HIGHLY CONFIDENTIAL \*\*\*

VIDEOTAPED DEPOSITION

OF

CHAD DOBBS

THURSDAY, AUGUST 21, 2025

Reported by:
CANDIDA BORRIELLO
Stenographic Reporter
JOB NO. 6950249-001

1         C. Dobbs - Highly Confidential

2      A.   My understanding is, yes, but I've

3   not spent a ton of time in Arizona.

4      Q.   Okay.  Those cities are both in

5   Uber's Southwest region; is that fair?

6      A.   Yes, they are.

7      Q.   Okay.  Great.  Okay.  Let's go back

8   to Exhibit 1893 to your deposition, which is

9   the Notice of Deposition.

10            (Exhibit 1893, Plaintiffs' Amended

11       Notice of 30(b)(6) Deposition of Uber

12       Technologies, Inc., Rasier, LLC and

13       Rasier-CA, LLC, was marked for

14       identification.)

15      Q.   Let me know when you've got that in

16   front of you.

17      A.   Okay.

18      Q.   Okay.  And you see that this is

19   Plaintiffs' Amended Notice of 30(b)(6)

20   Deposition of Uber Technologies, Inc.,

21   Rasier, LLC and Rasier-CA, LLC.

22            Do you see that?

23      A.   I do.

24      Q.   And then it designates you, Chad

25   Dobbs, with respect to Topics 1 through 9.

1      C. Dobbs - Highly Confidential

2         Do you see that?

3      A.   Yes.

4      Q.   Okay.  So you understand that the

5   witness here today is actually Uber and these

6   two Rasier entities, correct?

7      A.   I do.

8      Q.   And you, Mr. Dobbs, have been

9   designated to testify on behalf of Uber,

10  correct?

11     A.   Yes.

12     Q.   You understand that the testimony

13  you're giving today is binding on Uber and

14  these two Rasier entities, correct?

15     A.   I do.

16     Q.   Okay.  And tell us, as the witness

17  for Uber and these two Rasier entities, can

18  you explain to the jury just briefly what

19  these two Rasier entities are?

20     A.   Those are two subsidiaries of Uber.

21     Q.   Okay.  So if throughout this

22  deposition we refer to Uber, can we agree

23  that that will encompass Uber Technologies,

24  Inc. plus the two Rasier entities?

25     A.   I'm not a lawyer, but I think



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:23-md-03084-CRB |
|---|---|
| This Document Relates to: All Cases | **ALL PLAINTIFFS' AMENDED NOTICE OF 30(b)(6) DEPOSITION OF UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC (CHAD DOBBS AS TO TOPICS 1-9)** <br><br> Judge: Honorable Charles R. Breyer |

Pursuant to Federal Rules of Civil Procedure Rules 30(b)(6) and 45, all Plaintiffs will take the deposition by oral examination of Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively "Uber") through one or more of their designees on the topics listed below. This deposition will be taken before a duly qualified Notary Public, at the time and place specified, and continued from day to day thereafter, Sundays and holidays excepted, until completed, on behalf of all Plaintiffs. Pursuant to Federal Rules of Civil Procedure Rules 30(b)(3)(A) and 45(a)(1)(B), notice is given that the deposing party intends to record the testimony by audio and video technology in addition to the stenographic method.  Notice is hereby given that the video is intended for use at trial.

| | |
|---|---|
| **WITNESS:** | **Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (Chad Dobbs, Topics 1-9)** |
| **DATE:** | **August 21, 2025** |
| **TIME:** | **9:00 a.m. Eastern Time** |
| **LOCATION:** | **Via Zoom Video Conferencing** |

Plaintiffs request that Uber identify in writing at least ten (10) business days in advance of the deposition the name(s) of the person(s) who will testify on their behalf and the subject(s) on which each person will testify. And if Uber intends to have a custodian whose deposition is already scheduled (in his or her personal capacity) testify on its behalf on any of these categories, Plaintiffs request that Uber provide notice of the same at least ten (10) business days in advance of that witness' deposition.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, deponent is directed to produce and permit inspection and copying of the documents and/or tangible things specified in Attachment A to this notice at the time and place of deposition.

**INSTRUCTIONS**

1. For purposes of interpreting or construing the scope of this Notice, the terms shall be given their most expansive and inclusive interpretation unless otherwise specifically limited by the language of an individual topic or request. This includes, without limitation, the following:

   a. The terms "each," "every," "any," and "all" are synonymous with one another and with "each and every" and "any and all;"

   b. The connectives "and" and "or" are used inclusively and not exclusively and shall be construed either disjunctively or conjunctively as to require the broadest possible response;

   c. Construing the singular form of the word to include the plural and the plural form to include the singular;

   d. Construing the masculine to include the feminine, and vice-versa;

   e. The use of any tense of any verb shall also include all other tenses of that verb;

   f. A term or word defined herein is meant to include both the lower and uppercase reference to such term or word;

   g. Any Bates number referenced herein shall be construed to refer not only to the specific page number identified but to the entirety of the document associated with that Bates number, including any family members;

   h. Construing the term "including" to mean including but not limited to.

2. Unless otherwise indicated, the name of any Person, party or business organization shall specifically include all past and present employees, officers, directors, agents, representatives,

general partners, limited partners, successors, predecessors, and attorneys of the Person, party, or business organization.

3. In construing this Notice, You should give effect to the Definitions set forth below. Undefined words and terms shall be given their common meaning.

4. Unless otherwise indicated, the relevant time period for the topics in this Notice is from January 1, 2009, through the present time.

**DEFINITIONS**

1. "COMMUNICATION(S)," "COMMUNICATING," and "COMMUNICATED" are intended it their broadest sense and shall mean the transmittal of information or request for information, and shall include any oral, written, spoken, or electronic transmission of information (in the form of facts, ideas, thoughts, opinions, data, inquiries, or otherwise).

2. "BELLWETHER REGIONS" shall mean the states, cities, counties, and surrounding areas in which the Bellwether Wave 1 incidents occurred.

3. "DOCUMENT(S)" shall mean and include "writings" as defined in Federal Rules of Civil Procedure Rule 34(a) and include any written, recorded, or graphic material of any kind, prepared by anyone, so long as it is in the responding party's possession, custody, or control. Without limitation of the foregoing, a document is deemed to be in a person or entity's control if that person or entity has the right to secure the document or a copy thereof from another person. The term "DOCUMENT" includes agreements; contracts; letters; telegrams; inter-office communications; memoranda; reports; records; instructions; specifications; notes; notebooks; scrapbooks; diaries; plans; drawings; sketches; blueprints; diagrams; photographs; photocopies; charts; graphs; descriptions; drafts, whether or not they resulted in a final document; minutes of meetings, conferences, and telephone or other conversations or communications; invoices; purchase orders; bills of lading; recordings; published or unpublished speeches or articles; publications; transcripts of telephone conversations; phone mail; electronic-mail; ledgers; financial statements; microfilm; microfiche; tape or disc recordings; and computer print-outs. The term "DOCUMENT" also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any

such document or writing is to be produced in a reasonably legible and usable form. The term "DOCUMENT" includes all drafts of a "DOCUMENT" and all copies that differ in any respect from the original, including any notation, underlining, marking, or information not on the original. The term also includes information stored in, or accessible through, computer or other information retrieval systems (including any computer archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations.

4. "DRIVER" means anyone other than a taxi driver, limo driver, or charter party carrier who uses or at any time has used the Uber Application to be connected with RIDERs for the purpose of providing rides to RIDERs. Where appropriate, "Driver" shall be interpreted to also include potential or prospective Drivers.

5. "DRIVER SUPPLY" means the number of drivers available and willing to accept ride requests in a specific area at a particular time.

6. "EXECUTIVE LEADERSHIP TEAM" shall mean and refer to those officers/agents of the UBER whom occupy or occupied the roles of Chief Executive Officer, Chief Financial Officer, Chief Marketing Officer, Chief People Officer, Chief Legal Officer, Chief Architect Officer, Chief Product Officer, Chief Technology Officer, Senior Vice President for Safety & Core Services, Senior Vice President for Delivery, and Senior Vice President for Mobility & Business Operations.

7. "KPI" shall mean and refer to Key Performance Indicators or Key Performance Metrics when applied to executive compensation as outlined and described in the 2024 UBER Proxy Statement.

8. "MARKETING" refers to the efforts to promote and/or sell something, including RESEARCH regarding customer/client/Rider preferences, behavior, and trends; relationship-building with potential or actual customers/clients/Riders; product development and design aimed at fulfilling customer/client/Rider preferences; and/or COMMUNICATIONS with a target audience through various COMMUNICATIONS CHANNELS to promote and/or sell something.

9. "PRSU" shall mean and refer to Performance-Based Restricted Stock Unit as applied to executive compensation as outlined and described in the 2022 UBER Proxy Statement.

10. "RIDE" or "RIDES" refer to rides arranged via the Uber App, which do not involve a taxi or Charter Party Carrier.

11. "RIDER" means any individual taking an Uber Ride, regardless of whether the Ride was coordinated through the Uber Application and regardless of whether the Rider was the person who ordered the ride or owner of the account used to order the ride.

12. "RIDER APP," "UBER APP," "UBER APPLICATION," "UBER APP," or "APP" means Uber's mobile device application that is used by Drivers and Riders to coordinate, provide, or order Uber Rides, including apps used by both DRIVER or RIDER, and including the Uber Driver Application.

13. "RISK SENSITIVE MATCHING" means Uber's matching of RIDERS and/or particular RIDES with DRIVERS, where the risk of a SAFETY INCIDENT is a factor in determining who is matched with whom and/or whether the match occurs. This includes S-RAD (aka Safety Risk Assessed Dispatch), Geo Fencing, and all other prior, subsequent, and/or alternative versions of S-RAD.

14. "SAFETY" means bodily or physical safety, freedom from harm, freedom from bodily injury, including the freedom from unwanted touching, penetration, threats, imprisonment, harassment, and freedom from fear, terror, and other forms of emotional distress.

15. "SAFETY IMPACT" means the effect and/or impact on Riders' actual SAFETY, e.g. through reducing the incidence or severity of SEXUAL ASSAULT, SEXUAL MISCONDUCT, or other harm to Riders.

16. "SEXUAL ASSAULT" shall mean physical or attempted physical conduct that is sexual in nature and without the consent of the Rider, including but not limited to all acts addressed in Defendants' taxonomy and RALIANCE's Sexual Assault taxonomy.

17. "SEXUAL MISCONDUCT" shall mean any and all non-physical conduct (such as verbal or staring) of a sexual nature that is without consent or has the effect of threatening or intimidating a Rider, including but not limited to all acts addressed in Defendants' taxonomy and RALIANCE's Sexual Misconduct taxonomy.

5

Case No. 3:23-MD-3084-CRB

18. "SUBJECT DRIVERS" shall mean the drivers at issue during the SUBJECT INCIDENTS for all Bellwether Wave 1 cases.

19. "SUBJECT INCIDENTS" shall mean the SEXUAL ASSAULT and/or SEXUAL misconduct that occurred in the states, cities, counties, and surrounding areas in which all the Bellwether Wave 1 incidents occurred.

20. "SURGE PRICING" shall mean the specific method and process by which Uber increases pricing for matching drivers in times of increased demand.

21. "TRANSPORTATION SYSTEM" or "TRANSPORTATION NETWORK" refers to the entire system for providing and/or facilitating Rides, which may include but is not limited to Driver recruitment, Driver screening, Driver training, instructions for Drivers, policies and guidelines that apply to Drivers, Rider recruitment, Rider screening, Rider training, instructions for Riders, policies and guidelines that apply to Riders, the way in which a Rider requests a Ride, or someone else may request a Ride on behalf of a Rider, the way in which Drivers are matched with Riders via the Uber App, the way in which a Driver accepts a Ride, where and how Drivers and Riders are instructed to meet one another, the way in which Drivers and Riders and directed to identify one another and confirm that identity, the trade dress or other markings used to help identify Drivers' vehicles, maps and driving instructions, ways in which destinations can be changed, stops can be added, additional Riders can be added, where and how a Driver drops a Rider off, what components of the Ride are supported by technology, devices, or services external to the Uber App, what Fares are charged, the amount of the Fares, the way in which Fares are charged, how much of the Fare is shared with the Driver, what the Driver and Rider each are told about the Fare(s), discounts if any provided, customer support or other services provided before during and after a Ride, devices hardware and software that supports the Ride, safety buttons, features to share a Ride with a third party, GPS and/or other monitoring by Uber of a Ride, automation to detect unusual or unwanted activity during a Ride, video and/or audio recording during a Ride, and/or the lack of any of these things or features.

22. "UBER," "YOU," "YOUR," or "YOURSELF" shall mean and refer to Uber Technologies, Inc., Rasier LLC, and Rasier-CA, LLC, including each of their parents, divisions, departments, subsidiaries, affiliates, predecessors, successors, present or former officers, directors,

owners, members, partners, principals, agents, employees, contractors, subcontractors, administrators, attorneys, experts, investigators, consultants, joint venturers, licensors, and all other Persons acting or purporting to act on its behalf that have Documents and information in their possession, custody, or control responsive to the request herein.

**DEPOSITION TOPICS**

1. Your strategy to increase the number of Riders and Rides for 2018 to present.

2. Your reasoning and basis for using an independent contractor model and how use of that model affected sexual assault prevention.

3. All means You employ to incentivize Drivers, including incentives for Drivers to increase the total number of hours they drive, the times at which they drive, and the locations where they pick up Riders.

4. All means You employ to incentivize Your employees, managers, and agents to increase or maintain driver supply and/or driver supply hours, including but not limited to KPIs or similar metrics, compensation, incentive programs, quotas, rewards and equity.

5. All means You employ to incentivize Your employees, managers, and agents to increase or maintain driver supply and/or driver supply hours available during nights and weekends, including but not limited to KPIs or similar metrics, compensation, incentive programs, quotas, rewards and equity.

6. Uber's costs and expenses related to its Transportation Network, for each year from 2012 to the present, for the following: marketing, advertising, lobbying, and safety (including specifically safety research and testing, safety technology and products, safety operations and services, and any other specific aspects of safety).

7. Uber's costs and expenditures, for each year from 2012 to the present, spent for the purpose of preventing Sexual Assault and Sexual Misconduct in connection with Rides (including the amounts spent, and what specifically those amounts were spent on).

8. Uber's policies, practices, and procedures for recruiting Drivers in each of the Bellwether Regions. As part of this topic, the deponent(s) should be prepared to discuss:

    a. Incentives, campaigns, policies, or directives related to Driver recruitment in the two years prior to each time the Subject Drivers applied to drive with Uber.
    b. Incentives, campaigns, policies, or directives related to Driver Supply in the two years prior to each time the Subject Drivers applied to drive with Uber.
    c. Campaigns or Marketing targeted at the Bellwether Regions in the two years prior to each time the Subject Drivers applied to drive with Uber.
    d. Uber's target quantity of Drivers for the Bellwether Regions in the two years prior to each time the Subject Drivers applied to drive with Uber.

9. Sexual Assault and/or Sexual Misconduct in the Bellwether Regions. As part of this topic, the deponent(s) should be prepared to discuss:
    a. Statistics concerning the frequency of Sexual Assault and/or Sexual Misconduct to Uber in the Bellwether Regions and as compared to national rates of Sexual Assault and/or Sexual Misconduct in Ubers.
    b. Statistics concerning the frequency of Sexual Assault and/or Sexual Misconduct relating to Uber in the Bellwether Regions compared to Driver demand and growth in the Bellwether Regions.

## SCHEDULE B

## DOCUMENTS TO BE PRODUCED

1. Current curriculum vitae or resume for the witness(es) or, alternatively, if one of the foregoing items is not available, a printed and complete copy of his or her LinkedIn profile or similar.

2. All documents the deponent reviewed, referred to, considered, or relied upon in responding to the deposition topics described herein.

3. The custodial file of the deponent, to the extent s/he is not already a custodian.

4. Documents reflecting Uber's costs and expenses related to its Transportation Network, for each year from 2012 to the present, for the following: marketing, advertising, lobbying, and safety (including specifically safety research and testing, safety technology and products, safety operations and services, and any other specific aspects of safety).

5. Documents reflecting Uber's costs and expenditures, for each year from 2012 to the present, spent for the purpose of preventing Sexual Assault and Sexual Misconduct in connection with Rides (including the amounts spent, and what specifically those amounts were spent on).

6. Documents reflecting Uber's payments to nonprofit organizations whose work involves combatting sexual violence (including the amount(s), date(s), and circumstances of the payment(s)).

7. Documents reflecting Uber's policies, practices, and procedures for recruiting Drivers in each of the Bellwether Regions.

8. Documents reflecting Sexual Assault and/or Sexual Misconduct in the Bellwether Regions.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the undersigned caused a copy of the foregoing to be served via electronic mail on August 15, 2025, to counsel for Defendants Uber Technologies, Inc., Rasier LLC and Rasier-CA, LLC, at the following email addresses:

**Kirkland & Ellis LLP**
Alli Brown
alli.brown@kirkland.com
Chris Cox
christopher.cox@kirkland.com
Jessica Davidson:
jessica.davidson@kirkland.com
Jennifer Levy
jlevy@kirkland.com
Rupal Joshi
rupal.joshi@kirkland.com

**O'Melveny and Meyers LLP**
Sabrina Strong
sstrong@omm.com
Jonathan Schneller
jschneller@omm.com
Joshua Revesz
jrevesz@omm.com
Louis Fisher
lfisher@omm.com

**Shook, Hardy & Bacon LLP**
Michael B. Shortnacy
mshortnacy@shb.com
Patrick L. Oot, Jr.
oot@shb.com
Christopher V. Cotton
ccotton@shb.com
Alycia A. Degen
adegen@shb.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com
*Co-Lead Counsel for Plaintiffs*