Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2500 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*See Exhibit to Motion* | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CASES FOR FAILURE TO COMPLY WITH PTO 31 AND SHOW-CAUSE ORDERS**<br><br>Date:         January 16, 2026<br>Time:         10:00 a.m.<br>Courtroom:  6 – 17th Floor |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................4

I. DESPITE REPEATED OPPORTUNITIES, THE 27 FRAUDULENT-RECEIPT PLAINTIFFS HAVE NEITHER DENIED FRAUD NOR APOLOGIZED NOR EXPLAINED THEIR MISCONDUCT. ..........................................................................4

    A. The 27 Fraud Plaintiffs' First Opportunity to Deny Fraud, Apologize, or Explain Their Conduct. ........................................................................6

    B. The 27 Fraud Plaintiffs' Second Opportunity to Deny Fraud, Apologize, or Explain Their Conduct. ........................................................................7

    C. The 27 Fraud Plaintiffs' Third Opportunity to Deny Fraud, Apologize, or Explain Their Conduct. ........................................................................8

    D. The 27 Fraud Plaintiffs Should Be Dismissed with Prejudice, But It Is Critical That the Court Grants Additional Relief. ........................................8

II. PTO 31 SETS FORTH CLEAR PROCEDURES FOR PLAINTIFFS WITH MISSING RECEIPTS. ONE HUNDRED AND THIRTY-THREE PLAINTIFFS HAVE FAILED FOR MONTHS TO COMPLY WITH PTO 31 AND SHOULD BE DISMISSED WITHOUT PREJUDICE. ..........................................................................................9

CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Deepwater Horizon*,
 907 F.3d 232 (5th Cir. 2018) ...................................................................................................2

*In re Silica Prods. Liab. Litig.*,
 398 F. Supp. 2d 563 (S.D. Tex. 2005) .....................................................................................2

*Soto v. United Airlines Inc.*,
 No. 24-cv-03045, 2024 WL 3996068 (N.D. Cal. Aug. 28, 2024) ............................................7

# INTRODUCTION

On July 30 and August 28, 2025, Uber presented evidence that 27 plaintiffs committed fraud by intentionally submitting doctored receipts to this Court and Uber. Those 27 plaintiffs are listed in Exhibit 1.

Of the 27 plaintiffs, 25 do not deny committing fraud.

Two plaintiffs initially offered weak denials. ECF 3771 (Levin Simes stating that Plaintiffs Jane Doe LS 333 and Jane Doe LS 397 "assure us their receipts are authentic"). But when ordered by the Court to produce documents proving the receipts were authentic, they refused. ECF 4443 (Court finding Jane Doe LS 333 and Jane Doe LS 397 "violated this Court's September 9 and 22, 2025 Orders [citation] by failing to produce documents by the extended deadline ordered by this Court"). Like the other 25 fraud plaintiffs, these two are unable to rebut Uber's allegations of fraud. In sum, it is undisputed that 27 plaintiffs committed fraud (although that number is growing, as set forth below).

These 27 plaintiffs gambled that they could get away with fraud. And now, they are making another bet: that it pays to ignore this Court's orders. The 27 plaintiffs who committed fraud have been given numerous opportunities to deny their fraud, to explain, or to apologize: (1) briefs in response to Uber's request for a show-cause order, due on August 27 and September 11, 2025; (2) responses to the Court's show-cause order, due on October 17, 2025; and (3) after they failed to respond to the Court's show-cause order, responses to Uber's motion to dismiss, due on December 5, 2025.

Notwithstanding those three opportunities, none of the 27 fraud plaintiffs have come forward to offer this Court any apology. None have offered any explanation of their egregious misconduct. In fact, 25 of the 27 did not even respond to this Court's show-cause orders.

Mass tort litigation is increasingly plagued by fraudulent claims, particularly in this age of internet click-bait advertisements. Plaintiffs' attorneys have an incentive to stockpile as many claims

as quickly as possible. But there is far too little screening to verify that the person responding to an invitation to "click now" for "substantial compensation with no paperwork" has a valid claim.

2025 marked the biggest sex abuse settlement in history, involving $4 billion paid by Los Angeles County. Not long after the lawsuit was announced, a series of plaintiffs admitted that lawyers had paid them to make fraudulent claims. *See* Rebecca Ellis, *In the biggest sex abuse settlement in U.S. history, some claim they were paid to sue*, L.A. Times (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-02/settlement-story-ab218-sex-abuse. After the fraud surfaced, one sex abuse lawyer concluded that thousands of claims "are total bull—, and [the county] is paying for no reason." *Id.* After the fraud revelations, LA County supervisors questioned the settlement: "Did we do depositions? Did we do due diligence? [. . .] That was the first thing that came to my mind is what responsibility did we have to actually vet each and every one of the cases?" Rebecca Ellis, *L.A. County launches investigation into historic sex abuse settlement*, L.A. Times (Oct. 7, 2025), https://www.latimes.com/california/story/2025-10-07/la-county-sex-abuse-settlement-investigation.

It is now clear that the claims in this MDL, as in the L.A. County settlement, are not being vetted. Because plaintiffs' attorneys in this MDL decline to investigate their clients reasonably and adequately, Uber must invest significant resources itself into vetting cases and finding fraud. Such fraud makes it necessary for Uber to investigate all claims more aggressively, placing a greater burden on true survivors. *See In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636 (S.D. Tex. 2005) (need to focus on fraud also prejudices the rights of claimants who have complied with their discovery obligations and undermine their "full and meaningful access to the courts."); *see also In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018) (fraudulent conduct "hamper[s] the resolution of meritorious claims by real plaintiffs.").

The 27 fraud plaintiffs made a rational but corrupt calculation. In math terms, plaintiffs' Expected Recovery is equal to: ((Probability of Undetected Fraud) X (Expected Payout if Fraud Undetected) Minus ((Probability of Detected Fraud) X (Expected Loss If Fraud Is Detected)). If the Expected Recovery is greater than or equal to zero, fraud will be an economically rational choice, *ex ante*. Considering the first half of the equation (the expected benefits from fraud), artificial intelligence tools and websites like Makereceipt.com make fraud detection more difficult, and fraud-ridden settlements like L.A. County's inflate plaintiffs' hopes of a large payout.

On the other side of the equation, if the sole remedy is dismissal with prejudice, Plaintiffs' expected recovery will always be positive. This will also encourage other not-yet-detected fraudulent plaintiffs to remain quiet in the hopes that Uber does not identify their fraud.

The Court should fashion relief that not only confirms the plaintiffs' conduct is corrupt but also makes it unprofitable for them to continue investing in fraud. Uber defers to the Court to fashion appropriate relief, beyond the necessary (but insufficient) remedy of dismissal with prejudice. Remedies included in Uber's proposed order include but are not limited to: (1) an appropriate monetary penalty in an amount to be determined by the Court; and (2) other equitable remedies as this Court sees fit, including receipt-review certification requirements applicable to attorneys and plaintiffs for all cases filed by firms that have brought claims involving fraudulent receipts.[1]

Unfortunately, Uber continues to find more evidence of fraud. Uber's third receipts motion was granted on November 19, 2025, meaning 7 additional plaintiffs were ordered to show cause for providing fraudulent receipts. ECF 4440. Uber is also preparing a fourth fraudulent receipts motion, to be filed shortly. Uber's "manual, line-by-line review" for fraud is by no means at an end. ECF 3784

---

[1] Separate from any relief ordered by the Court, Uber intends to move for costs.

at 1. Additional fraud motions will follow. And more plaintiffs join this litigation every day, often through fraud-engines like click-bait advertising and claim aggregators.

Finally, with respect to the 303 plaintiffs subject to PTO 31 (who are separate from the 27 fraudulent-receipt plaintiffs), the Court was clear in its Pretrial Order No. 31 ("PTO 31"): "A failure by a Plaintiff to provide the information required in this Order by the [October 9, 13, and 20, 2025] deadlines set forth above shall subject the Plaintiff to dismissal without prejudice." ECF 3877. Plaintiffs do not dispute that 133 of the 303 plaintiffs (listed in Exhibit 2 hereto) have *never* provided a PTO 31 certification. Those 133 plaintiffs' responses were due over 50 days ago under the Court's order, and they should be dismissed. Uber does not seek dismissal of the 48 plaintiffs (who are separate from the 133 mentioned above) who (1) failed to respond by the Court-ordered PTO 31 deadlines but have now provided a PTO 31 statement or ride receipt after the Court-ordered date; and/or (2) now claim a third party ordered the ride at issue; and/or (3) have already been dismissed pursuant to the Court's Order Regarding Defendants' Amended Motion to Dismiss Cases for Failure to Comply with PTO 10 (ECF 4442).

## ARGUMENT

**I.    DESPITE REPEATED OPPORTUNITIES, THE 27 FRAUDULENT-RECEIPT PLAINTIFFS HAVE NEITHER DENIED FRAUD NOR APOLOGIZED NOR EXPLAINED THEIR MISCONDUCT.**

On July 30 and August 28, 2025, Uber submitted Motions for Orders to Show Cause, presenting evidence that 27 plaintiffs had committed fraud by fabricating or altering receipts.

Some of the fraudulent receipts contained watermarks, a result of plaintiffs purchasing their receipt from Makereceipt.com and selecting the cheapest receipt-making option offered by that website:

Ex. 3 (MDL ID 2812)          Ex. 4 (MDL ID 1914)

 

Notably, the receipts Uber has found may only scratch the surface, as plaintiffs can avoid detection by paying a bit more on websites like Makereceipt.com.

In other examples, Uber was able to determine that the fraudulent plaintiff made math errors by adding up the line items in the receipt:

Ex. 5 (MDL ID 3425)

| Total | $14.99 |
|---|---|
| Trip fare | $13.25 |
| Subtotal | $13.25 |
| Marketplace Fee | $3.14 |
| Promotion | -$3.25 |
| Access for All Fee | $0.10 |
| CA Driver Benefits | $1.25 |

Uber included other examples in its motions filed on July 30 and August 28, 2025.

The 27 fraud plaintiffs had at least three opportunities to respond to Uber's Motions for Orders to Show Cause.

**A.    The 27 Fraud Plaintiffs' First Opportunity to Deny Fraud, Apologize, or Explain Their Conduct.**

On July 30 and August 28, 2025, Uber filed its first motions for show-cause orders. On August 27 and September 11, 2025, the 27 fraud plaintiffs had an opportunity to respond. None of the plaintiffs apologized or explained their conduct. Of the 27 plaintiffs, only 2 disputed fraud. Levin Simes LLP, representing Plaintiffs Jane Doe LS 333 and Jane Doe LS 397, initially told the Court that those plaintiffs "assure us their receipts are authentic," ECF 3771 at 2, instead of conducting an investigation into their clients' receipts that would have revealed the fraud. However, Levin Simes's ability to even obtain these assurances is questionable given that it later claimed these plaintiffs are non-responsive. ECF 4146. In any event, Levin Simes did not file any responses to the Court's order to show cause and instead moved to withdraw.

On November 19, 2025, the Court ruled that these same two Levin Simes plaintiffs (1) had violated this Court's orders to produce documents; (2) are required to produce documents relating to their fraud; and (3) are required to sit for a deposition relating to, among other things, whether others may have been involved in the fraud. ECF 4443 ("Having considered Defendants' Motion to Compel Compliance with Court Orders & to Reset Deadline for Certain Depositions, the Court finds that the Plaintiffs Jane Doe LS 333 and Jane Doe LS 397 have violated this Court's September 9 and 22, 2025 Orders (ECF 3876 & 3904) by failing to produce documents by the extended deadline ordered by this Court.") Even after the Court noted Plaintiffs Jane Doe LS 333 and Jane Doe LS 397 violated its orders, these Plaintiffs persisted in violating even more Court Orders, requiring Uber to file yet another motion to compel on December 5, 2025. ECF 4569. Plaintiffs Jane Doe LS 333 and Jane Doe LS 397 no longer deny they committed fraud.

**B.  The 27 Fraud Plaintiffs' Second Opportunity to Deny Fraud, Apologize, or Explain Their Conduct.**

On September 9 and September 22, 2025, the Court held that 27 plaintiffs "submitted non-bona-fide receipts. Some of these receipts show on their faces that they were generated using websites designed for creating receipts, such as Makereceipt.com. Other of these receipts contain math errors, formatting inconsistencies, and other glaring errors proving their inauthenticity. Other receipts submitted by these Plaintiffs were altered from actual receipts." ECF 3876; ECF 3972. To address that fraud, the Court ordered the 27 plaintiffs to "SHOW CAUSE why their claims should not be dismissed with prejudice." *Id.*

Of these 27 fraudulent plaintiffs, 25 (over 90%) entirely failed to respond to the Court's orders. The other two did not deny their receipts were fraudulent. Nor did they apologize or explain their misconduct.

The two plaintiffs who did respond to the order to show cause did not deny fraud:

- Jane Doe 693827, the plaintiff in 24-cv-09515, had two responses filed by two different law firms. *See* ECF 4456-1, Decl. of Michael B. Shortnacy ¶ 3. The firm that currently represents this Plaintiff did not deny that Jane Doe 693827 had submitted a fraudulent receipt but stated that (1) it did not represent her at the time the receipt was filed; and (2) it did represent her at the time of the Court's show-cause order. ECF 4175.

- Plaintiff R.M. filed a response suggesting that "[d]ifficulties in retrieving legacy receipts do not reasonably imply fraud" but did not deny her receipt was fraudulent. ECF 4176. Plaintiff R.M. consented to dismissal with prejudice. *Id*.

In their briefs, plaintiffs do not dispute that **a response to a show-cause order is "fundamentally inadequate"** where, as here, it "**contains no explanation as to *why***" the challenged conduct occurred, "**fails to acknowledge that [an] error was unacceptable or apologize, and does not reflect any commitment to do better in the future**." *Soto v. United Airlines Inc.,* No. 24-cv-03045, 2024 WL 3996068, at *1 n.1 (N.D. Cal. Aug. 28, 2024) (emphasis added).

### C. The 27 Fraud Plaintiffs' Third Opportunity to Deny Fraud, Apologize, or Explain Their Conduct.

On November 21, 2025, Uber moved to dismiss the 25 plaintiffs who had entirely failed to respond to the Court's show-cause order, as well as the 2 plaintiffs who had responded but not denied fraud. ECF 4456. In plaintiffs' December 5 responses, none of the 27 denied fraud, apologized, or explained their misconduct.

### D. The 27 Fraud Plaintiffs Should Be Dismissed with Prejudice, But It Is Critical That the Court Grants Additional Relief.

The Court's September 9 and 22, 2025 show-cause orders stated the 27 "Plaintiffs listed in Exhibit A are hereby ORDERED TO SHOW CAUSE why their claims should not be dismissed with prejudice." ECF 3876; ECF 3972. Those 27 plaintiffs completely failed to show cause, and of course they should be dismissed with prejudice.

But, as these plaintiffs have shown this Court, dismissal with prejudice is not sufficient relief. Plaintiffs have had at least three opportunities to respond. They have shown no remorse. The vast majority of fraud plaintiffs view this Court's orders as optional. As such, Uber has attached an amended proposed order to this Reply that imposes a certification requirement for the law firms that represent these fraudulent plaintiffs and their other clients.[2] Such certifications require counsel and their clients to certify that they conducted a full review and analysis of the ride receipt counsel submitted on each client's behalf before submitting that receipt in this MDL.

Uber respectfully requests that the Court consider the expected value to plaintiffs from committing fraud. Plaintiffs commit fraud when they expect a recovery after considering all the risks. Plaintiffs' gamble will continue to be "rational," albeit entirely corrupt, if the sole remedy is dismissal with prejudice. Instead, in light of their egregious misconduct, including their intentional efforts to

---

[2] These law firms are: Nachawati Law Group; Slater Schulman LLP; Levin Simes LLP; Chaffin Luhana; Cutter Law PC; Walkup, Melodia, Kelly & Schoenberger; Pulaski Law Firm; Simmons Hanly Conroy; Peiffer Wolf; and Kherkher Garcia. *See* ECF 3876; ECF 3972.

deceive this Court and Uber, the Court should order additional relief. Options include but are not limited to: (1) an appropriate monetary penalty; and (2) other equitable remedies as this Court sees fit, including plaintiff testimony, enhanced documentation, and affidavit requirements. Uber defers to the Court to determine what relief will both deliver justice and make it unprofitable for Plaintiffs to continue to bet on fraud.

Attached as Exhibit 6, for the Court's convenience, is a compendium reattaching in one place information that has previously been provided to the Court: the names of the 27 fraud plaintiffs, their reported addresses, the fraudulent receipts they submitted, Uber's defense fact sheets, and the relevant declarations from FTI Consulting detailing the evidence of fraud as to each plaintiff.

## II.     PTO 31 SETS FORTH CLEAR PROCEDURES FOR PLAINTIFFS WITH MISSING RECEIPTS. ONE HUNDRED AND THIRTY-THREE PLAINTIFFS HAVE FAILED FOR MONTHS TO COMPLY WITH PTO 31 AND SHOULD BE DISMISSED WITHOUT PREJUDICE.

On September 9, 2025, the Court entered PTO 31, governing missing receipts for rides ordered by Plaintiffs. PTO 31 applies to "any Plaintiff who claims to have ordered the relevant ride themselves, has not submitted a ride receipt and Uber, as indicated by its Defense Fact Sheet, has not been able to substantiate the ride alleged by that Plaintiff" and provides that "Uber may serve written notice on each such Plaintiff requiring that the Plaintiff comply with the procedures set forth in this Order." ECF 3877 ¶ a. Uber served written notices for all plaintiffs subject to this Motion by September 12, 2025.

PTO 31 further provides that "[w]ithin 30 days of receiving Uber's written notice, the Plaintiff must either (i) produce a bona fide ride receipt to Defendants via MDL Centrality, or (ii) serve a statement indicating that the Plaintiff is unable to locate the receipt, explaining in detail the reasonable efforts that have been undertaken by Plaintiff to search their email and the Uber app for the receipt, and explaining why Plaintiff has been unable to locate the receipt. If a Plaintiff provides a receipt, Plaintiff shall verify under penalty of perjury that it is a bona fide ride receipt relating to the Uber trip relating to the allegations contained in Plaintiff's complaint. If a Plaintiff serves a statement in lieu of

a bona fide receipt, the statement shall identify the date of both the oldest and most recent Uber receipt available in their email and the date of both the oldest and most recent Uber receipt available in the Uber app. Such a statement must be verified under penalty of perjury by the Plaintiff." ECF 3877 ¶¶ b-d.

In PTO 31, the Court was clear about the consequences of not complying with the Order: "A failure by a Plaintiff to provide the information required in this Order by the deadlines set forth above shall subject the Plaintiff to dismissal without prejudice." *Id.* ¶ e.

PTO 31 provided the necessary written notice for 90 plaintiffs. Uber provided additional written notices to over 200 additional plaintiffs by September 12, 2025. *See* ECF 4456-1, Decl. of Michael B. Shortnacy. Therefore, under the Court's order, plaintiffs' deadlines to provide PTO 31 statements were October 9 and 13, 2025. Uber granted an extension in some cases to October 20, 2025. On November 21, Uber filed this motion, applicable to 181 plaintiffs who missed the PTO 31 deadline.

Of those 181 plaintiffs, 48 plaintiffs (listed in Exhibit 7) either (1) failed to respond by the Court-ordered PTO 31 deadlines but have now provided a PTO 31 statement or ride receipt after the Court-ordered date; and/or (2) now claim a third party ordered the ride at issue; and/or (3) have already been dismissed pursuant to the Court's Order Regarding Defendants' Amended Motion to Dismiss Cases for Failure to Comply with PTO 10 (ECF 4442).[3] Although a subset of those plaintiffs technically missed the deadline before complying with PTO 31, Uber does not seek their dismissal here.[4] To that end, Uber's amended proposed order removes those plaintiffs from the list of PTO 31 dismissals. Nonetheless, those plaintiffs claim that Uber's motion is a "transparent attempt to clear

---

[3] In total, Uber received only 21 PTO 31 submissions or ride receipts after its motion was filed.

[4] Uber may later seek dismissal of certain of these plaintiffs—and others who technically "responded" to their PTO 31 notice—on the ground that their PTO 31 responses are inadequate, as opposed to being late.

10
DEFENDANTS' REPLY ISO MOTION TO DISMISS CASES FOR FAILURE TO COMPLY WITH PTO 31 AND SHOW-CAUSE ORDERS
Case No. 3:23-MD-3084-CRB

meritorious cases from the docket on technicalities by forcing sexual assault survivors to repeatedly revisit their assaults and penalizing them with motions to dismiss if they do so—but not on Uber's aggressive timeline." ECF 4492. As an initial matter, PTO 31 is not Uber's "aggressive" timeline. It is simply the Court-ordered deadline in this case. Regardless, Plaintiffs' rendition of these events is not candid. The 2 plaintiffs at issue in ECF 4492 served their PTO 31 statements on November 24, 2025—the Monday before Thanksgiving—and sought to meet and confer with Uber the next day. Before Uber could respond, these plaintiffs filed their response to the instant Motion on Thanksgiving. Plaintiffs misleadingly stated that they "sought to resolve this matter through a Stipulation with Uber's counsel (to take even the instant filings off the Court's docket) but Uber did not agree," ECF 4492 at 4, n.2, all while failing to disclose that the stipulation was offered to Uber three days before a federal holiday and the brief was filed on that holiday. In any event, to avoid doubt, Uber does not seek dismissal of plaintiffs like these who provided a PTO 31 statement or ride receipt as of the date of this brief (even if plaintiffs' responses were filed well beyond the deadline set by the Court). Uber likewise does not seek dismissal of those plaintiffs who have been dismissed by the Court's Order Regarding Defendant's Amended Motion to Dismiss Cases for Failure to Comply with PTO 10 (ECF 4442).

The remaining 133 plaintiffs have missed the latest PTO 31 deadline of October 20, 2025 by more than 50 days. Under PTO 31, they should be "dismiss[ed] without prejudice." ECF 3877 ¶ e.

These plaintiffs have had more than sufficient notice: (1) Uber met and conferred with plaintiffs' leadership and individual plaintiffs' counsel on July 25, 29, and 30, regarding the case management order that became PTO 31; (2) on July 30, 2025, Uber filed its brief seeking entry of PTO 31; (3) on September 9, 2025, the Court entered PTO 31; (4) on September 9 and 12, 2025, Uber provided notice to all plaintiffs subject to this motion to dismiss (ECF 4456-1, Decl. of Michael B. Shortnacy ¶ 5); (5) on November 18, 2025, Uber again met and conferred with plaintiffs' leadership

regarding this motion to dismiss, even though that second meet and confer was not required. *See* ECF 4456-3, Decl. of Christopher V. Cotton ¶ 3; ECF 3877 (no requirement to meet and confer in PTO 31).

A timeline illustrating Uber's efforts with regard to these 133 PTO 31 plaintiffs is below.



A handful of plaintiffs, such as MDL ID 1187, now claim they *may* provide *some* information such as "more specific pick-up and drop-off information in her PFS," which her counsel says it will use to "amend the ride identification form." ECF 4590 at 2. This information is grossly insufficient. It is different from that required by PTO 31, and it has not even been provided as of the date of this Reply's filing. Moreover, the information is not new. It was already provided as part of MDL ID 1187's Plaintiff Fact Sheet. In any event, this information falls far short of the Court's requirements under PTO 31, which requires (1) "a statement indicating that the Plaintiff is unable to locate the receipt, explaining in detail the reasonable efforts that have been undertaken by Plaintiff to search their email and the Uber app for the receipt"; (2) a "statement identify[ing] the date of both the oldest and most recent Uber receipt available in their email and the date of both the oldest and most recent Uber receipt available in the Uber app"; and (3) verification "under penalty of perjury by the Plaintiff." ECF 3877 ¶¶ b-d.

In sum, plaintiffs have been given multiple opportunities to comply with PTO 31. Uber does not seek dismissal of the plaintiffs who complied belatedly. But the 133 plaintiffs who have failed for over 50 days to comply with the Court's order should be dismissed without prejudice.

**CONCLUSION**

The Court ordered 27 plaintiffs—each of whom intentionally sought to deceive this Court and Uber—to show cause why their cases should not be dismissed with prejudice. ECF 3876; ECF 3972. Those plaintiffs failed to do so.

Those plaintiffs should of course now be dismissed with prejudice. But the Court should also order other relief that the Court determines in its discretion will make it unprofitable for Plaintiffs to continue to commit fraud. Such relief should include but not be limited to: (1) an appropriate monetary penalty in an amount to be determined by the Court; and (2) other equitable remedies as this Court sees fit, including receipt-review certification requirements applicable to attorneys and plaintiffs for all cases filed by firms that have brought claims involving fraudulent receipts.

In addition, on September 9, 2025, this Court notified plaintiffs of their PTO 31 obligation to produce a bona fide ride receipt or a statement explaining their search efforts and reasons why they have been unable to locate said receipt. ECF 3877. Despite this clear warning, and after specific notice, 133 plaintiffs still failed to provide a receipt or statement, more than 50 days after the deadline ordered by the Court. This Court should dismiss their claims without prejudice.

Dated: December 12, 2025                    Respectfully submitted,

                                             */s/ Laura Vartain Horn*

                                             Laura Vartain Horn (SBN 258485)
                                             **KIRKLAND & ELLIS LLP**
                                             555 California Street, Suite 2700
                                             San Francisco, CA 94104
                                             Telephone: (415) 439-1625

laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT (*Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

| | |
|---|---|
| 1 | |
| 2 | CHRISTOPHER V. COTTON (*Pro Hac Vice*)<br>ccotton@shb.com<br>**SHOOK, HARDY & BACON, LLP**<br>255 Grand Boulevard<br>Kansas City, MO 64108<br>Telephone: (816) 474-6550<br>Facsimile: (816) 421-5547<br><br>*Counsel for Defendants*<br>UBER TECHNOLOGIES, INC.,<br>RASIER, LLC, and RASIER-CA, LLC |

DEFENDANTS' REPLY ISO MOTION TO DISMISS CASES FOR FAILURE TO COMPLY WITH PTO 31 AND SHOW-CAUSE ORDERS

Case No. 3:23-MD-3084-CRB