Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB (LJC)<br><br>**SUPPLEMENTAL DECLARATION OF GREG BROWN**<br><br>Judge:       Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor<br><br>Judge:       Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

I, Greg Brown, having personal knowledge of the following, state:

1. I am the Director, Head of Central Safety, at Uber. My work at Uber is further detailed in my opening 11/21/25 Declaration. I offer this Supplemental Declaration in the above-captioned matter in support of the Supplemental Motion to Seal filed by Defendants Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber"). The facts set forth herein are true and correct and are based on my own personal knowledge, and I could and would competently testify thereto if called to testify in this matter.

2. I have reviewed Uber's proposed redactions to Uber's Opposition to Plaintiffs' Motion to Exclude Expert Testimony ("Uber's *Daubert* Opposition"), Exhibits 2 and 3 to Uber's *Daubert* Opposition, the Expert Report of David C. Sawyer ("Sawyer Report"), Plaintiffs' Opposition to Defendants' Motions to Exclude Expert Testimony ("Plaintiffs' *Daubert* Opposition"), and the Addendum to Report of Veronique Valliere ("Valliere Addendum") (collectively, the "Supplemental Redacted Materials").

3. The Supplemental Redacted Materials should be protected from disclosure to Uber's competitors because they reveal Uber's confidential and proprietary research, business strategies, procedures, and internal decision making related to Uber's strategic plans in a highly competitive market. Specifically, the Supplemental Redacted Materials divulge competitively sensitive information and details concerning Uber's confidential and proprietary surveys and their results, Uber's driver screening procedures, an unlaunched Uber initiative, and Uber's sensitive relationships and relationship strategies with non-profit organizations. Uber has spent significant time and resources developing its surveys, screening procedures, unlaunched initiatives, and non-profit relationships. Further information about the type of confidential and competitively sensitive information contained in the Supplemental Redacted Materials is set forth below.

4. The confidential information sought to be redacted is only made available to internal Uber employees who need to know about, work from, analyze, or prepare the confidential information. It is not generally available to any and all employees within Uber and is restricted based on document access procedures.

5. I am personally familiar with the confidential information through my work as it relates to overseeing, improving, and implementing Uber's safety policies and standards.

6. Disclosure of the nature and details of the confidential information outlined below, which Uber has not revealed publicly and has taken precautions to safeguard, would cause competitive harm to Uber by providing its competitors with internal information regarding some of the key components of Uber's operational strategies. Uber and its competitors participate in a highly competitive market. Information concerning Uber's survey data, screening procedures, an unlaunched initiative, and non-profit relationships is therefore of great interest to Uber's competitors in developing their own strategies, procedures, and initiatives, and could be leveraged against Uber to its competitive disadvantage.

7. In addition, disclosure of information concerning Uber's strategies could potentially allow competitors to inappropriately co-opt and adopt the same, which could harm Uber's competitive standing. In other words, Uber's competitors could use the confidential information to alter or improve their own respective businesses, which, given Uber's efforts to safeguard the information, would severely diminish Uber's hard-earned competitive advantage.

8. Public disclosure of the redacted information would also reveal Uber's confidential safety-related goals and priorities to its competitors. Permitting Uber's competitors access to this competitively sensitive strategic information could harm Uber by allowing competitors to develop strategies and programs to counter initiatives that Uber is contemplating or working on.

9. The proposed redactions, described in more detail below, are narrowly tailored to protect Uber's competitively sensitive information.

10. **Survey data.** Exhibits 2 and 3 to Uber's *Daubert* opposition are internal Uber documents (produced in conjunction with an outside consultant) concerning a confidential survey that the consultant conducted on Uber's behalf. Specifically, Exhibit 2 provides a detailed description of the survey methodology, including the specific questions and the order in which they were presented to the survey takers. Exhibit 3 provides information and analysis concerning the specific survey results. Uber's *Daubert* Opposition also cites some of these same survey results. Opp'n at 12-13. Publicizing this information could put Uber at a competitive disadvantage by providing Uber's competitors with the benefits of Uber's proprietary research insights, enabling competitors to modify or tweak their own safety and other experiences by free-riding on Uber's investment of time and financial resources. The information could also allow Uber's competitors to assess weak spots in the Uber experience from users' perspectives, and

tailor their own products to differentiate themselves or compete with Uber in those specific areas. Moreover, the disclosure of the survey methodology would permit the competitors to replicate that methodology.

11. **Driver screening.** The Sawyer Report contains descriptions of confidential aspects of Uber's driver screening procedures. Sawyer Report at 30-32. It also includes quotes from confidential internal evaluations of Uber's driver screening procedures and discloses the results of two internal confidential audits of Uber's screening procedures. *Id.* at 38, 48-49, 51, 54. Disclosure of this information would result in competitive harm to Uber by providing its competitors with confidential information that Uber's competitors could leverage against Uber to its competitive disadvantage. As noted above, Uber and its competitors participate in a highly competitive market. Information concerning how Uber is screening drivers is therefore of great interest to Uber's competitors in screening their own work force, and could be leveraged against Uber to its competitive disadvantage.

12. **Unlaunched Uber Initiative.** The Sawyer Report describes Uber's strategies and analysis concerning an unlaunched new initiative. *Id.* at 42, 47. Because Uber has not yet publicly announced its plans regarding whether or not to launch this feature, information concerning the nature and details of this feature and Uber's strategic consideration and analysis of this feature is competitively sensitive and could be used by Uber's competitors to Uber's disadvantage if it were made public.

13. **Uber's relationships with non-profit organizations.** The Valliere Addendum contains discussion of internal Uber documents related to Uber's strategies involving and relationships with non-profit organizations. Valliere Addendum at 1-3. Publicizing this information would provide Uber's competitors with valuable confidential information about Uber's confidential strategies in this area, which the competitors could potentially leverage in competing with Uber and use in their own relationships with non-profits.

14. For all of these reasons, it is essential that the competitively sensitive information set forth herein be maintained under seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 15, 2025

*Gregory Brown*
_____
GREG BROWN