# EXHIBIT 2



FILED
San Francisco County Superior Court

JAN 2 3 2023

CLERK OF THE COURT
BY: _____
                    Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 304

| | |
|---|---|
| COORDINATION PROCEEDING<br>SPECIAL TITLE [RULE 3.550]<br><br>**IN RE UBER RIDESHARE CASES** | Case No. CJC-21-005188<br>JUDICIAL COUNCIL COORDINATION<br>PROCEEDING NO. 5188 |
| <u>This Order Relates to:</u><br><br>*Jane Doe LSA 35 v. Uber Techs., Inc., et al.,*<br>CGC-21-592274<br><br>*Jane Doe LSA WHBE 3 v. Uber Techs., Inc., et*<br>*al.,* CGC-20-584649 | ORDER ON DEFENDANTS AND CROSS-<br>COMPLAINANTS UBER TECHNOLOGIES,<br>INC. AND RASIER LLC'S MOTIONS TO STAY<br>OR DISMISS BASED ON *FORUM NON*<br>*CONVENIENS* |

On January 4, 2023, the motions of Defendants Uber Technologies, Inc. and Rasier LLC to stay or dismiss both of these actions based on *forum non conveniens* came on for hearing before the Court. Having considered the pleadings and papers filed in the case, and the argument of counsel presented at the hearing, both motions are hereby granted.

- 1 -

## **PROCEDURAL AND FACTUAL BACKGROUND**

These coordinated cases involve individual claims of sexual misconduct or assault against Defendants Uber Technologies, Inc. and Rasier, LLC (together, "Uber").  In general, the actions arise out of Plaintiffs' use of the Uber app to arrange trips resulting in alleged sexual misconduct or assault against Plaintiffs by their Uber driver.  Plaintiffs in the actions allege that Uber failed to implement appropriate safety precautions to protect its passengers, such as adequate screening of drivers, adequate safety features of the application, and adequate training of drivers regarding sexual harassment and/or sexual assault.  The actions assert a wide range of claims, including general negligence; negligent hiring, retention, and supervision; common carrier negligence; negligent failure to warn and failure to recall; vicarious liability for torts committed by Uber drivers, including sexual assault, sexual battery, and false imprisonment; intentional and negligent misrepresentation; negligent and intentional infliction of emotional distress; breach of contract; strict products liability for design defect and failure to warn; intentional concealment; negligence by misfeasance and nonfeasance; and fraud.

By an order dated December 9, 2021, the Court (Hon. Andrew Y.S. Cheng) granted the petition for coordination with respect to 86 cases originally filed in San Francisco, Sacramento, Santa Clara, Kern, and Los Angeles counties and ordered those actions stayed.  Since that time, over 1,300 additional cases have been the subjects of add-on orders from this Court.  While nearly all of the coordinated cases were filed in San Francisco County in the first instance, the vast majority of them—according to Uber, nearly three-quarters of those cases where the location of the alleged incident is known—involve incidents of sexual misconduct or assault that occurred outside California, in other states and even, apparently, in foreign countries.

At the initial case management conference held on March 4, 2022, the Court expressed the view that Uber's anticipated motions to stay or dismiss on *forum non conveniens* grounds represented a threshold matter that it should resolve in the first instance so that it might determine which cases would remain in the coordinated proceeding in California and which would be refiled in other states.  Accordingly, the Court directed the parties to meet and confer regarding discovery necessary to bring and oppose *forum non conveniens* motions.  On August 10, 2022, the Court issued a Case Management Order

- 2 -

setting a schedule for such discovery based on the parties' detailed agreement, which provided, among other things, that each Plaintiff would fill out fact sheets and produce copies of their trip receipts and Uber would respond to special interrogatories by producing data and/or written responses.

Uber now has filed motions to stay or dismiss based on *forum non conveniens* or, in the alternative, to dismiss for failure to join an indispensable party.[1] Those motions are directed at two individual cases that fall into two principal categories of out-of-state cases: so-called "Category 1" cases, where the alleged incident occurred outside California and both the plaintiff and the alleged assailant reside outside California; and "Category 2" cases, where the alleged incident occurred outside California, the alleged assailant resides outside California, and the plaintiff resided outside California at the time of the alleged incident and subsequently moved to California.  (LSA Opening Brief, 7.)[2]  Certain pertinent case-specific facts relating to each of the motions are summarized below, while others are addressed in the Discussion section of this Order.[3]

## A. **Jane Doe LSA 35 (Category 1)**

Plaintiff Doe LSA 35 alleges that in November 2017, she arranged for a ride utilizing the Uber app and was sexually assaulted by the Uber driver.  (Atkins Decl., Ex. 1 ¶ 23.)  It is undisputed that the incident took place in Texas, where Plaintiff resided at the time and currently resides.  (Exs. 10, 12.)  In response to discovery, Plaintiff identified her then-boyfriend as a witness likely to have discoverable information, as well as a police officer and investigator and a health care provider from whom she sought treatment, all in Texas.  (Exs. 10, 13; Levin Decl., Exs. B, C.)  It is undisputed that the Uber driver also is a Texas resident.  (Exs. 11, 15, 16.)  He entered a no contest plea and was found guilty of a criminal charge arising out of the incident.  (Levin Decl., Ex. D.)

Plaintiff filed her complaint in San Francisco Superior Court on June 16, 2021.  (Ex. 1.)  On July

---

[1] Because the Court believes that Uber's *forum non conveniens* motions are well-founded, it need not reach the alternative ground.

[2] Uber represents that "most of the cases" fall into Category 1, but that "several" of the out-of-state cases fall into Category 2.  (WHBE Opening Brief, 7.)  In appendices to its papers, Uber lists the cases that discovery to date shows fall within each of the categories.  There appear to be 925 cases listed under Category 1 and 37 under Category 2.  Thus, Uber's motions potentially bear on the proper forum for more than two-thirds of the over 1,400 coordinated cases.

[3] The Court has endeavored not to divulge any detailed information that any party has filed under seal.

- 3 -

2, 2021, Uber filed a cross-complaint against Roes 1-100 seeking equitable indemnity, contribution, declaratory relief, and contractual indemnity for Plaintiff's alleged damages.  By joint stipulation and order filed July 30, 2021, the case was stayed pending a determination of Plaintiffs' coordination petition.

### B. Jane Doe WHBE 3 (Category 2)

Plaintiff Doe WHBE 3 alleges that in January 2020, she arranged for a ride utilizing the Uber app and was sexually assaulted by the Uber driver.  (Atkins Decl., Ex. 1 ¶ 3.)  Although Plaintiff is currently a California resident (*id.* ¶ 5), it is undisputed that the incident occurred in Hawaii, where she was then residing and working.  (Exs. 12-14; Cubberly Decl., Exs. D, E.)  Likewise, the driver who allegedly assaulted her, William Murray, is a Hawaii resident.  (Ex. 15.)  In the parties' forum-related discovery, Plaintiff did not identify any witnesses likely to have discoverable information (Ex. 12), and she neither reported the incident to law enforcement nor sought medical treatment in Hawaii.  (Cubberly Decl., Ex. E.)

Plaintiff filed her complaint in San Francisco Superior Court on June 8, 2020.  By order filed August 3, 2020, the Court denied Uber's motion to stay or dismiss based on *forum non conveniens* on the grounds, among others, that where the plaintiff is a California resident, the plaintiff's choice of a forum should rarely be disturbed, that Defendants had not shown that Plaintiff was not a California resident, and that on the record then before the Court, Uber had not established the driver's residence or that any other evidence or witnesses were located in Hawaii.  After Uber filed a cross-complaint against the driver, Mr. Murray, the Court granted his motion to quash service of summons for lack of personal jurisdiction, finding among other things that Mr. Murray is a resident of Honolulu, Hawaii and that Plaintiff's claims "do not arise out of or relate to Murray's contacts with the [California] forum." (July 26, 2021 Order, 2.) While Uber later filed a renewed motion to stay or dismiss based on *forum non conveniens*, that motion was taken off calendar when the order granting the petition for coordination and request for a stay was granted.  On September 14, 2021, Uber filed a complaint against Mr. Murray in Hawaii seeking indemnity and declaratory relief arising out of the action.

1

## LEGAL STANDARD

2       "When a court upon motion of a party or its own motion finds that in the interest of substantial

3 justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in

4 whole or in part on any conditions that may be just." (Code Civ. Proc. § 410.30(a); see also *id.* §

5 418.10(a)(3).)  *Forum non conveniens* is "an equitable doctrine invoking the discretionary power of a

6 court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that

7 the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54

8 Cal.3d 744, 751.)[4]

9       In ruling on a motion based on *forum non conveniens*, the court engages in a two-step process.

10 First, it decides whether the alternative forum is a suitable place for trial. (*National Football League v.*

11 *Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 917.)  If it makes that finding the court next

12 considers the private interests of the litigants and the interests of the public in retaining the action for trial

13 in California. (*Id.*)

14       The private interest factors are those that make trial and the enforceability of the ensuing judgment

15 expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of

16 obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling

17 witnesses. (*Stangvik*, 54 Cal.3d at 751; *National Football League*, 216 Cal.App.4th at 917.)  The

18 residences of the plaintiff and defendant are also relevant.  If the plaintiff is a California resident, then the

19 plaintiff's choice of forum is entitled to a presumption of convenience, and should rarely be disturbed

20 unless the balance is strongly in favor of the defendant. (*Stangvik*, 54 Cal.3d at 754; *National Football*

21 *League*, 216 Cal.App.4th at 917.)  If the plaintiff is not a California resident, however, the plaintiff's

22 choice of forum is "entitled to due deference," but "not a strong presumption." (*Stangvik*, 54 Cal.3d at

23 754-755; *National Football League*, 216 Cal.App.4th at 929.)

24       The public interest factors include avoidance of overburdening local courts with congested

25

26 [4] Plaintiffs misplace their reliance on cases involving personal jurisdiction rather than *forum non conveniens*. (E.g., LSA Opposition, 20.)  "Obviously, the proposition that a court having jurisdiction

27 must exercise it, is not universally true.  A principal reason for not exercising jurisdiction, recognized by state and federal courts, is that the forum is not convenient." (*Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 706 (cleaned up).)

28

- 5 -

calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation. (*Stangvik*, 54 Cal.3d at 751; *National Football League*, 216 Cal.App.4th at 917.) "Also of potential concern is the interest in trying the case in a forum familiar with the applicable law, and the interest in avoiding unnecessary conflicts of laws." (*Fox Factory, Inc. v. Superior Court* (2017) 11 Cal.App.5th 197, 204 (cleaned up).)

The moving defendant bears the burden of proof on a motion based on *forum non conveniens*. (*Stangvik*, 54 Cal.3d at 918; *Fox Factory*, 11 Cal.App.5th at 204.) The burden is not an insuperable one; in particular, the defendant need not show that California is a "seriously inconvenient" forum. (See *Fox Factory*, 11 Cal.App.5th at 204-207 [rejecting standard adopted in *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604]; *National Football League*, 216 Cal.App.4th at 930-931.) "[T]he evidence before the court, which may include affidavits of the parties, discovery responses, and the undisputed general knowledge of the nature of the action, need only be sufficient to give the court the ability to soundly exercise its discretion regarding the applicability of the general considerations of the *Stangvik* . . . factors to the question of forum non conveniens." (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1462.) To overcome the defendant's showing, the plaintiff may not rely upon unsupported allegations. (See *Hemmelgarn v. Boeing Co.* (1980) 106 Cal.App.3d 576, 589 ["If a court were required to accept any allegation made by a plaintiff as true, the likelihood of the motion based on forum non conveniens being granted in that case would be substantially reduced."].)

The initial determination of whether the alternative forum is suitable is nondiscretionary. (*Fox Factory*, 11 Cal.App.5th at 204.) Where the balancing of the public and private interest factors is reached, the factors are applied flexibly. (*Stangvik*, 54 Cal.3d at 751; *Fox Factory*, 11 Cal.App.5th at 204.) The trial court exercises its discretion in balancing the factors. (*Stangvik*, 54 Cal.3d at 751.)

## PERTINENT EVIDENCE AND AUTHORITY

At the threshold, the Court is constrained to address what is and is not pertinent to its ruling on the motions. First, both parties rely on a wide variety of newspaper articles, television reports, academic

- 6 -

articles, blog entries, websites, advocacy pieces, and other secondary authorities. The Court may not take judicial notice of such materials for the truth of matters stated in them (and for the most part neither side has sought such notice in any event). (E.g., *Voris v. Lampert* (2019) 7 Cal.5th 1141, 1147 fn. 5 [newspaper articles "are not proper authorities to establish the truth of the matters asserted therein"]; *Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 824-827 [declining to take judicial notice of "the existence of a contemporary social movement" or of press releases and other exhibits for the truth of their contents]; *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194 [declining to take judicial notice of the truth of the contents of websites and blogs, including those of newspapers].) While the Court acknowledges that the *forum non conveniens* inquiry is not governed by strict evidentiary standards (*Morris*, 144 Cal.App.4th at 1462), the Court has considered these materials primarily as they may bear on the general considerations it is required to weigh under *Stangvik*.[5]

Second, both parties extensively cite to multiple unpublished trial court rulings, including prior rulings by this and other state courts in both individual cases and coordinated proceedings. While relevant federal decisional opinions generally may be considered by a state court, even if they are unpublished,[6] the same is not true of unpublished state trial court rulings, which (as Plaintiffs correctly acknowledge) have no precedential value. (*Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 761; see also, e.g., *Santa Ana Hospital Medical Center v. Belshe* (1997) 56 Cal.App.4th 819, 831.) The Court considered these materials only to the degree that they may have persuasive value. Both parties' requests for judicial notice of unpublished state trial court rulings are denied.[7]

---

[5] The parties have filed uncontested motions to seal certain materials. The Court finds that the factors set forth in California Rule of Court 2.550(d) are satisfied, and grants those motions.
[6] "It does not violate the California Rules of Court to cite an unpublished federal opinion. They may be persuasive, although not binding, authority." (*Western Heritage Ins. Co. v. Frances Todd, Inc.* (2019) 33 Cal.App.5th 976, 989 fn. 6.)
[7] The Court has taken notice of its own prior rulings, including the order granting coordination (LSA, Ex. A) and the jurisdictional ruling granting the driver's motion to quash for lack of personal jurisdiction in *Jane Doe WHBE 3*, which bears on the merits of Uber's arguments regarding the potential for conflicting rulings and whether the driver is an indispensable party.

- 7 -

## DISCUSSION

### I.    THERE IS A SUITABLE ALTERNATIVE FORUM FOR EACH CASE.

"An alternative forum is suitable if it has jurisdiction and the action in that forum will not be barred by the statute of limitations." (*Guimei v. Gen. Electric Co.* (2009) 172 Cal.App.4th 689, 696.) "'[I]t is sufficient that the action can be brought, although not necessarily won, in the alternative forum.'" (*Id.* at 696.) "It is well settled under California law that the moving parties satisfy their burden on the threshold suitability issue by stipulating to submit to the jurisdiction of the alternative forum and to waive any applicable statute of limitations." (*Hahn v. Diaz-Barba* (2011) 194 Cal.App.4th 1177, 1190.) Uber has offered to enter into just such a stipulation. Plaintiffs do not dispute that there is a suitable forum for each of the cases affected by Uber's motions. (See WHBE Opposition, 7 ["Ms. Doe doesn't deny that Hawaii is a suitable forum"].)

### II.    THE PRIVATE INTEREST FACTORS

The private interests of the litigants include their residences and the location and availability of evidence and witnesses. (*Stangvik*, 54 Cal.3d at 751, 754-757.) The Court addresses each of the pertinent factors in turn.

#### A.  The Parties' Residences

Both Plaintiffs assert that a plaintiff's choice of forum is entitled to great deference. As noted above, however, the presumption of convenience that attaches to a plaintiff's choice of forum applies only to California residents. (*Stangvik*, 54 Cal.3d at 754-755; *National Football League*, 216 Cal.App.4th at 929.) Thus, that Doe LSA 35, a Texas resident, chose to file suit in California "is not a substantial factor in favor of retaining jurisdiction here." (*Stangvik*, 54 Cal.3d at 755.)

Doe LHBE 3 stresses that in 2006, the Court of Appeal quoted *Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604 for the propositions that "[a] plaintiff's choice of forum is entitled to great weight even though the plaintiff is a nonresident" and that a plaintiff's choice of forum can be disturbed only "if the balance is strongly in favor of the defendant." (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464; LHBE Opposition, 1, 7.) However, those propositions are no longer

- 8 -

correct statements of California law, if they ever were.[8]  As one court explained,

> [A] resident of one of our sister states who files suit in California is entitled to due deference under the circumstances presented, not a strong presumption, in favor of its choice of forum. That deference is to be weighed and balanced by the trial court along with all the other pertinent factors, including the defendant's residence or principal place of business, and has no direct bearing on the moving defendant's burden of proof. We therefore disagree with the contrary language in cases such as *Ford*, which assert that all U.S. citizen plaintiffs' choices of forum are entitled to great weight.

(*National Football League*, 216 Cal.App.3d at 929-930; see also *Fox Factory, Inc.*, 11 Cal.App.5th at 206 [agreeing with analysis in *National Football League* and rejecting the suggestion that "in every case great weight is required to overcome a nonresident plaintiff's forum choice"].)

Although Doe LHBE 3 currently is a California resident, she resided in Hawaii at the time of the alleged incident. (Atkins Decl., Ex. 12 at 3.) While her choice of forum is entitled to some deference in the analysis, California does not have a strong interest in assuring her a forum for the redress of grievances suffered in another state that provides her a suitable forum based on the happenstance that she later moved to California. (See *Henderson v. Superior Court* (1978) 77 Cal.App.3d 583, 598 [the general rule that a court should stay rather than dismiss a case on forum non conveniens grounds if the plaintiff is a California resident is limited to "plaintiffs who were bona fide California residents at the time their causes of action arose."].)[9]

"Defendant's residence is also a factor to be considered in the balance of convenience. If a corporation is the defendant, the state of its incorporation and the place where its principal place of business is located is presumptively a convenient forum." (*Stangvik*, 54 Cal.3d at 755.) However, "this presumption is not conclusive." (*Id.* at 756.) "A resident defendant may overcome the presumption of convenience by evidence that the alternate jurisdiction is a more convenient place for trial of the action."

---

[8] "Many cases hold that the plaintiff's choice of a forum should rarely be disturbed unless the balance is strongly in favor of the defendant. But the reasons advanced for this frequently reiterated rule apply only to residents of the forum state . . . ." (*Stangvik*, 54 Cal.3d at 754 (cleaned up).)

[9] Still less can a plaintiff who is a resident of a foreign country claim entitlement to any presumption in favor of her choice of a California forum. (*Stangvik*, 54 Cal.3d at 755 ["Where, however, the plaintiff resides in a foreign country, . . . the plaintiff's choice of forum is much less reasonable and is not entitled to the same preference as a resident of the state where the action is filed."]; see also *David v. Medtronic, Inc.* (2015) 237 Cal.App.4th 734, 741, fn. 7; *Fox Factory*, 11 Cal.App.5th at 206.) While Uber asserts that one of the coordinated cases arises from an incident that occurred in Paraguay, the record is unclear as to the residence of the plaintiff in that case. One of Uber's exhibits shows that of the drivers' last known residences, three were in Paraguay, Bolivia, and Mexico. (Atkins Decl., Ex. 11.)

- 9 -

1  (*Id.* (footnote omitted).)  Here, while Uber is incorporated in Delaware and has its principal place of

2  business in California, it shows that it has multiple regional offices in states around the country, as well as

3  call centers that provide specialized support for critical incidents reported by Uber App users.  (Gilmore

4  Decl. ¶¶ 4-5.)  Thus, while this presumption favors Plaintiffs, it is not especially strong, and may be

5  overcome by other evidence.

**B.  The Location Of Evidence And Witnesses**

7  As in *Stangvik*, the parties "disagree sharply" as to how the Court should assess and weigh in the

8  balance the location and availability of evidence and witnesses.  (54 Cal.3d at 756.)  Uber emphasizes that

9  in each case, the driver—the alleged perpetrator of the sexual assaults of which Plaintiffs complain—is a

10  resident of another state, and hence would not be subject to compulsory attendance to testify at trial in

11  California.  Uber also contends that other non-party witnesses, including friends identified by Plaintiffs,

12  police officers or other public safety personnel who may have responded to the incidents, and health care

13  providers and mental health professionals who may have treated Plaintiffs for their injuries, similarly may

14  not be subject to compulsory process.  Uber also stresses the importance of live testimony to the

15  presentation of the cases.  Plaintiffs, for their part, respond that the drivers' and other witnesses'

16  depositions could be taken, and that there are very few such third-party witnesses in the two exemplar

17  cases in any event.  Finally, Uber contends that any documentary evidence relating to the alleged

18  incidents is located in the states where they occurred.

19  For their part, Plaintiffs place a great deal of emphasis on the location of Uber's corporate

20  headquarters in California, where they contend that many witnesses and documents bearing on Uber's

21  alleged liability on various theories may be found.[10]  Uber, in response, points out that it is regulated by

22  states and localities, and conducts its own business operations on a state or regional basis, and that many

23  of the most pertinent witnesses it identified in its interrogatory responses are located outside California.[11]

---

[10] Plaintiffs assert that according to its discovery responses, Uber has at least 1,112 current California employees and 1,748 former California employees who worked in subject matters relevant to this litigation.  (WHBE Opposition, 4.)  As those numbers make clear, Plaintiffs define the "relevant" subject matters so broadly as to render the analysis nearly meaningless.

[11] Uber shows that key corporate witnesses who are responsible for safety policies and programs reside outside California, and that its operations and decision-making are spread across multiple offices in a number of different states.  (Reply, 10-11; Gilmore Decl. ¶ 4.)

- 10 -

How the balance between these competing arguments is to be struck turns in large part on how the cases are characterized: as individual sexual assault/misconduct cases in which Plaintiffs claim Uber is vicariously liable due to its deficient safety practices, or as corporate misconduct cases in which the individual Plaintiffs' claims are, in effect, merely illustrative of their larger claims. The former view is far more persuasive to the Court since, as one federal court has pointed out, "to prevail in this case Doe must first prove that an assault took place." (*Doe v. Uber Technologies, Inc.* (N.D. Cal. May 31, 2017) 2017 WL 2352032, at *3; see also *id.* at *6 ["While some Uber party-witnesses may well reside in this District, their testimony will only be relevant at trial if Doe is able to prove her underlying battery and assault claims"] [granting motion to transfer venue of tort suit against Uber based upon alleged sexual assault perpetrated against plaintiff by Uber driver in Minnesota, where the majority of evidence and key third party witnesses are in Minnesota and Minnesota's local interest in deciding the controversy is substantially stronger than California's].) The Court need not definitively resolve who has the better of this debate in order to decide these motions. (See *Stangvik*, 54 Cal.3d at 757 ["Before deciding whether the private convenience of the parties weighs in favor of plaintiffs or defendants, we consider the interests of the California public in retaining the trial of the actions in this state."].)

## III.    THE PUBLIC INTEREST FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER.

In the Court's view, the public interest factors involved weigh heavily in favor of transfer, and warrant granting Uber's motions. Again, the Court addresses each of those factors in turn.

### A.  Avoiding Overburdening Local Courts With Congested Calendars

As the *Stangvik* Court recognized, "preventing court congestion resulting from the trial of foreign causes of action is an important factor in the forum non conveniens analysis." (*Stangvik*, 54 Cal.3d at 758.) California courts—and this Court in particular—are overburdened with litigation as a result of the backlog of cases stemming from the pandemic. Transferring these two cases—and many others like them—therefore would avoid overburdening congested California courts with foreign cases.

*Stangvik* and other cases are closely on point in this regard. In *Stangvik*, foreign plaintiffs filed suit in California against Shiley, a California corporation, for products liability arising out of alleged

- 11 -

defects in heart valves received by plaintiffs' decedents. Defendants asserted that the cases should be tried in the countries in which the plaintiffs resided, the valves were sold, decedents received medical care, alleged fraudulent misrepresentations were made, and evidence regarding the provision of health care and other matters existed. (*Id.* at 750.) Plaintiffs countered that California was the more convenient place of trial because the valves were designed, manufactured, tested and packaged in California. (*Id.*) On the question of burden, the court noted that foreign plaintiffs had filed 108 actions in California against Shiley relating to the heart valves, and that, according to plaintiffs, about one million pages of documents are relevant to their actions, and the testimony of hundreds of witnesses might be required. (*Id.* at 758.) Defendants stated that the number of cases filed against Shiley involving the heart valves had increased to 235 by the time the briefs were filed. (*Id.*)

The Court found that the public interest factors "clearly" favored defendants' position, observing, "If we hold that the present cases may be tried in California, it will likely mean that the remaining 108 cases involving the Shiley valve will also be tried here. The burden on the California courts of trying these numerous complex actions is considerable." (*Id.* at 763.) Further, the Court rejected the argument that transferring the foreign cases would undermine the deterrent effect on Shiley, a California-based manufacturer: "California's interest in deterring future improper conduct by defendants would be amply vindicated if the actions filed by California resident plaintiffs resulted in judgments in their favor." (*Id.*)

Similarly, in *Hansen v. Owens-Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, the court affirmed an order staying two actions brought by California residents seeking to recover for personal injuries and wrongful death allegedly caused by asbestos exposure. Most of the decedent's and his wife's asbestos exposure was alleged to have occurred in Montana, where the decedent had lived and worked. The court held that the public interests weighed in favor of Montana, observing,

> California courts are already overburdened with asbestos litigation and have little or no interest in litigation involving injuries incurred outside of California by non-residents. It seems unduly burdensome for California residents to be expected to serve as jurors on a case having so little to do with California. The competing interests of California and Montana strongly weigh in favor of litigating this matter in Montana.

(*Id.* at 760; see also *Campbell v. Parker-Hannifin Corp.* (1999) 69 Cal.App.4th 1534, 1542 ["Trial of the action here would contribute to court congestion, as there are 20 separate plaintiffs whose damages would

- 12 -

1    have to be considered."].)

2        Here, the number of cases pending in this Court far exceed the number of cases at issue in

3    *Stangvik, Hansen*, and *Campbell*. The corresponding burden on this Court therefore would be

4    considerably greater.[12] This factor therefore weighs heavily in favor of transfer.

5        Plaintiffs argue that granting the motions would impose burdens on other courts and judges around

6    the country where multiple cases presumably would be refiled, and that the Court should consider the

7    burden factor in light of the judicial system as a whole. They point to language in the California Supreme

8    Court's decision in *Bristol-Myers Squibb Co. v. Superior Court* (2016) 1 Cal.5th 783, *rev'd* (2017) 137

9    S.Ct. 1773, a products liability action brought against a pharmaceutical manufacturer by both California

10    residents and nonresidents in which plaintiffs alleged they were injured by a prescription drug. The

11    majority reasoned in part as follows:

> [Defendant] argues that it would be a waste of California's judicial resources to provide a forum
> for the nonresident plaintiffs. To be sure, a single court hearing the claims of hundreds of
> plaintiffs is a significant burden on that court. But the overall savings of time and effort to the
> judicial system, both in California and interstate, far outweigh the burdens placed on the
> individual forum court. The alternative the [defendant] proposes would result in the duplication of
> suits in numerous state or federal jurisdictions at substantial costs to both the judicial system and
> to the parties, who would have to deal with disparate rulings on otherwise similar procedural and
> substantive issues.

17    (*Id.* at 811-82.) The quote is taken out of context, however, as the California Supreme Court there was

18    addressing factors bearing on a state's exercise of specific personal jurisdiction over a nonresident

19    defendant, and its holding in that regard was later reversed by the U.S. Supreme Court.[13] As the Court

20    itself pointed out, *forum non conveniens* presents distinct issues. (*Id.* at 809 & fn. 5.) While this Court's

21    rulings may well have an indirect effect on the courts of other states, nothing in *Stangvik* or California law

22    mandates consideration of those effects in the *forum non conveniens* analysis. Moreover, as discussed in

---

[12] Plaintiffs attempt to distinguish *Stangvik* on the ground that the actions in that case were not
coordinated before a single judge. As discussed below, the Court does not believe that the pendency of a
coordination proceeding renders a *forum non conveniens* motion unavailable in actions included in that
proceeding. As the California Supreme Court recognized in the language quoted below, the burden on the
Court of handling large numbers of cases brought by nonresidents is likely to be significant.

[13] Even in that different context, only Justice Sotomayor, who authored the sole dissent in that case,
placed any weight on the argument regarding the burden on other courts. (See 137 S.Ct. at 1789
(dissenting op. of Sotomayor, J.).)

1  the next section, any additional burden on foreign states' courts is likely to be commensurate with their

2  interest in resolving cases brought by their own residents arising out of injuries they occurred in those

3  states.

### B. California's Interest Is Outweighed By That Of The States Where The Injuries Occurred

6  A second critical factor in the public interest balance relates to the competing interests of

7  California, on the one hand, and Texas and Hawaii, on the other.  Because the harms Plaintiffs allegedly

8  sustained occurred outside California, California's interest in providing Plaintiffs a forum is outweighed

9  by that of the states where their injuries occurred.  In general, California courts "have little or no interest

10 in litigation involving injuries incurred outside of California by nonresidents." (*Morris*, 144 Cal.App.4th

11 at 1467.)  "California courts have held that with respect to regulating or affecting conduct within its

12 borders, the place of the wrong has the predominant interest." (*Roman v. Liberty University, Inc.* (2008)

13 162 Cal.App.4th 670, 684 (cleaned up) [trial court properly granted forum non conveniens motion where,

14 among other things, plaintiff's injury and defendant's allegedly negligent conduct took place in Virginia;

15 "California courts have little interest in regulating conduct within Virginia's borders."]; see also *Hahn*,

16 194 Cal.App.4th at 1196 [courts consider the locus of "the effect, harm, and damages caused by

17 defendants' alleged conduct"]; *Boaz*, 40 Cal.App.4th at 713 ["All this having been said, the important

18 reason for affirming the forum non conveniens decision of the trial court is that the torts alleged in this

19 case have nothing to do with California.  They were not committed here; none of the affected appellants

20 received her injury in this state; and none resides here. . . .  We find no justification for California courts

21 and juries to bear the burden of this litigation."].)  Conversely, as Plaintiffs acknowledged at the hearing,

22 foreign states have a substantial interest in cases involving injuries that occur within their borders, and in

23 the application of their laws to regulate the conduct of defendants alleged to be responsible for those

24 injuries.

25 Here, just as in the closely analogous federal case cited above, this factor "strongly favors

26 transfer":

27 While California has some interest in seeing this case decided here, as Uber is headquartered in

28

- 14 -

San Francisco, Minnesota's interest is more substantial because the activities alleged to give rise to Doe's suit occurred there. Doe's recovery in this action depends on proving the alleged sexual assault and battery, which will require testimony from Minnesota witnesses and evidence located in Minnesota. Furthermore, Minnesota has a greater interest in protecting a Minnesota citizen against assault and battery than California does. Finally, while California undoubtedly has significant interests in the conduct of corporations headquartered here, Minnesota has a comparable interest in the conduct of corporations operating in Minnesota.

(*Doe v. Uber Technologies, Inc.*, 2017 WL 2352032, at *8.)

### C. Applicable Law And The Interest In Avoiding Unnecessary Conflicts Of Laws

Yet a third significant factor in the public interest balance is the interest in trying the case in a forum familiar with the applicable law and the interest in avoiding unnecessary conflicts of laws. (*Fox Factory*, 11 Cal.App.5th at 204.) Allowing Plaintiffs' cases to remain in California, although they will likely be governed by the regulatory and tort laws of Texas and Hawaii, the states in which Plaintiffs were allegedly injured, would undermine that interest.

Plaintiffs ignore or understate the importance of other states' tort and regulatory laws in setting the standards by which Uber's liability for alleged sexual misconduct or sexual assaults by its drivers are likely to be determined. As Plaintiffs acknowledge, key legal issues in these cases will include, among others, whether Uber is a "common carrier" (LHBE Opposition, 15), whether it adequately screened drivers, and whether it owed Plaintiffs a duty to warn them about or implement other measures to protect them against assailants. It is likely that those issues will be determined under the laws of the states where the alleged incidents occurred, not under California law. In particular, as Uber shows, it is regulated in Texas as a Transportation Network Company (TNC) under Texas statutes and regulations that govern whether a TNC is a common carrier (it is not) and what criminal background checks it must conduct before hiring drivers, among other issues. (In Hawaii, in contrast, such state laws have only recently been enacted.)

Moreover, Texas and Hawaii law rather than California law are likely to apply to some of the novel questions of tort law posed by these cases such as, for instance, whether a TNC owes its passengers a duty to install cameras in vehicles to safeguard their safety. Under California's governmental interest analysis, "although the law of the place of the wrong is not necessarily the applicable law for all tort actions, the situs of the injury remains a relevant consideration." (*Castro v. Budget Rent-A-Car System,*

- 15 -

1    *Inc.* (2007) 154 Cal.App.4th 1162, 1180.)  Where an incident and the plaintiff's injury occurred within

2    another state's borders, the other state has a presumptive interest in controlling the conduct of the

3    tortfeasor, absent some other compelling interest to be served by applying California law.  (*Id.* [applying

4    Alabama law in personal injury case involving car accident that took place in Alabama]; *Boaz,* 40

5    Cal.App.4th at 713 ["The circumstances of this case—including the site of the tortious acts and their

6    manifestation, and the lack of a significant California connection to those events—provide strong reasons

7    to believe that a California court would look to the substantive law of New York."].)  Thus, California has

8    no interest in applying its law "in a case where there are no California plaintiffs and no one sustained

9    injuries in California"; under those circumstances, "California's interest in applying its law is

10   hypothetical, since no actual harm occurred in California giving rise to an interest to deter conduct or

11   compensate victims." (*Chen v. Los Angeles Truck Centers, LLC* (2019) 42 Cal.App.5th 488, 493.)

12           It is also likely that foreign law would apply to the claims of Jane Doe WHBE 3, even though she

13   currently is a California resident.  In weighing California's interest in applying its own law against

14   another state's, "it is generally appropriate for a court to accord limited weight to California's interest in

15   providing a remedy for a current California resident when the conduct of the defendant from whom

16   recovery is sought occurred in another state, at a time when the plaintiff was present in (and, in the

17   present situation, a resident of) that other state, and where that other state has its own substantive law, that

18   differs from California law, governing the defendant's potential liability for the conduct that occurred

19   within that state." (*McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68, 76.)

20           Accepting Plaintiffs' position could require the Court to apply Texas and Hawaii law in the two

21   cases that are the subject of the pending motions.  Moreover, that adverse effect would be dramatically

22   magnified, were the Court's ruling to be applied to hundreds of other cases arising out of alleged incidents

23   that occurred in some 50 jurisdictions across the United States.  Although the Court does not decide the

24   issue, "[i]t is sufficient to point out that the fact that a California court would have to untangle problems

25   in conflict of law is itself a basis to apply the doctrine of forum non conveniens." (*Id.* (cleaned up).)

26       **D.  The Public Interest Factors Control**

27           In the Court's view, these public interest factors overwhelmingly apply here in favor of granting

28                                                        - 16 -

Uber's motions as to both cases. Even where it is "probable that both parties will suffer some disadvantage from trial in their home forums" because there are witnesses and documentary evidence in both states, it is appropriate to grant a *forum non conveniens* motion where, as here, the public factors "clearly favor" transfer. (*Stangvik*, 54 Cal.3d at 757, 762-763.) For example, in *Campbell*, an action arising out of an airplane crash, virtually all of the evidence relating to damages was in a foreign jurisdiction, and the evidence relating to the design and manufacture of the plane was in the United States. "Thus, each side would suffer some disadvantage from trial in its home forum. The public interest, however, favors granting the motions." (69 Cal.App.4th at 1542; see also *Century Indemnity Co. v. Bank of America* (1997) 58 Cal.App.4th 408, 413-414 [although "[t]he proximity of evidence and witnesses favors neither forum," trial court properly exercised discretion in staying action given "Hawaii's strong public policy interest in interpreting the insurance policies and the lack of a strong countervailing justification for proceeding . . . in California"].) Because Texas and Hawaii's interests in deciding Plaintiffs' cases are substantially stronger than California's, the public interest factors control.

## IV.   THE *FORUM NON CONVENIENS* ANALYSIS IS NOT NEGATED BY THE COORDINATION PROCEEDING.

As noted above, at the very first case management conference in this case, the Court identified the *forum non conveniens* issue as the critical threshold issue to be decided in the coordinated proceedings. Nine months after the Court first adopted this approach, and after the parties have completed substantial discovery on forum-related issues and extensively briefed these motions, Plaintiffs now invite the Court to jettison the entire approach, arguing that the Court should deny or defer ruling on the motions and instead develop a bellwether selection process in which forum considerations would be only one factor in the selection of bellwether cases. (LSA Opposition, 17-18.) Plaintiffs argue, in essence, that the mere existence of the coordination proceedings negates the need to conduct any convenient forum inquiry at all. Moreover, Plaintiffs now appear to back away from the basis for their own stipulation, embodied in the Court's order, that the Court's ruling on these motions would serve as a basis for deciding how other similar cases should be handled. By the terms of that stipulation and order, following this Court's rulings on the instant motions, "the parties shall meet and confer to discuss a process stipulating to or contesting

- 17 -

the applicability of the Court's ruling on the Forum Motions to the remainder of the cases within this coordinated proceeding." (Aug. 10, 2022 Order, 4 ¶ 7.) Yet Plaintiffs now protest that each *forum non conveniens* motion must be decided on an individualized basis, and that there is no authority for "extrapolating" the Court's rulings in these two cases to any others included in the coordinated proceeding. (LSA Opposition, 5, 8-9.) The Court could not disagree more.

First, there is no merit to Plaintiffs' position that the Court's approach is somehow inconsistent with coordination or that inclusion of an individual case in a coordinated proceeding necessarily makes a *forum non conveniens* motion unavailable. Contrary to Plaintiffs' argument, the Court's order setting *forum non conveniens* as its first order of business was entirely consistent with the order granting coordination, which stated that, among other issues, the doctrine's application to the coordinated cases presents "identical threshold and central legal questions that should be decided by one judge." (Dec. 9, 2021 Order, 3.) Indeed, California case authority makes clear that forum motions are equally available in cases included in coordination proceedings. (See, e.g., *Bristol-Myers Squibb Co.*, 1 Cal.5th at 789-790, 809 fn. 5 [stating that defendant in coordinated proceedings involving actions by 86 California residents and 592 residents of 33 other states is "free to make such a showing [that the cost of litigating plaintiffs' claims in San Francisco is excessive or unduly burdensome compared to other relevant forums] on a motion asserting forum non conveniens"]; *Martinez v. Ford Motor Co.* (2010) 185 Cal.App.4th 9, 21 [reversing *forum non conveniens* order dismissing products liability action included in coordinated proceeding against tire and car manufacturers on ground that motion was prejudicially untimely because defendants took extensive discovery beyond the scope of that needed to establish the basis for the motion].)

It is no answer to say, as Plaintiffs assert, that the convenience factors do not matter because few of the cases will actually be tried after the Court selects bellwether cases. For one thing, there is no way of knowing whether the two cases that are the subject of Uber's motions will be selected as bellwethers. More importantly, the incremental burden on the Court of managing more than 1,400 cases rather than "only" 400 or so will itself be substantial: it undoubtedly will necessitate more motion practice and case management conferences, and may require the selection of a larger number of bellwethers. Plaintiffs cite

- 18 -

no authority—and there is none of which the Court is aware—which stands for the proposition that a court should ignore the potential burden on congested local courts posed by the filing of numerous foreign cases, the strength of the different states' interests in trying the cases, the potential applicability of multiple states' laws, and the other *forum non conveniens* factors merely because a bellwether process may be an available mechanism to manage the cases.

At the hearing, Plaintiffs for the first time proposed what they termed "a structural solution" to the Court's concerns. Under that proposal, Plaintiffs would stipulate to select only "California cases" (that is, cases in which the plaintiff was a resident of California at the time of the incident, remains a California resident, and the incident occurred in California) for the bellwether pool, unless Uber decided to select other cases as its bellwether candidates. Plaintiffs would further stipulate that all the non-California cases would be stayed for all purposes during the pendency of the bellwether process, unless the plaintiffs in those actions objected to a stay and wished to proceed in another forum. Finally, in the event the bellwether trials do not result in a resolution of all of the coordinated cases and the Court were to remand individual cases to the counties where they were originally filed (Cal. R. Ct. 3.542), Plaintiffs would agree that renewed *forum non conveniens* motions would not be untimely. As Uber pointed out, however, this novel proposal essentially begs the question of why the non-California cases were filed in this forum in the first place. Moreover, to the extent that the objective of bellwether trials is to yield representative verdicts in order to facilitate a global resolution of multiple coordinated actions,[14] it seems appropriate to the Court that non-California cases be refiled in other states, such that the resulting verdicts may more accurately reflect the governing law and jury venires in the fora with the greatest interest in their resolution.

Second, Plaintiffs' position that Uber is required to bring motions in each individual case subject to transfer under the *forum non conveniens* doctrine obviously would be unworkable, given the unusually large number of cases pending in this Court. Nor does the Court agree that it lacks the authority to devise

---

[14] "The primary purpose of a 'bellwether' trial is to educate the parties and the court about the strengths and weaknesses of the many underlying cases." (*Pacific Fertility Cases* (2022) 78 Cal.App.5th 568, 574 fn.3, review granted, S. 275134 (Aug. 17, 2022), citing 4 Newberg on Class Actions (5th ed. 2021) § 11:13.)

procedures to apply its rulings to groups or categories of cases, rather than merely issuing one-off rulings that would apply to a single case at a time. "The trial court has broad discretion to fashion suitable methods of practice in order to manage complex litigation. This includes requiring standard motions to minimize duplication where issues are similar, and the issuance of standard orders." (*Hernandez v. Superior Court* (2003) 112 Cal.App.4th 285, 295; see also, e.g., *Cohn v. Corinthian Colleges, Inc.* (2008) 169 Cal.App.4th 523, 531 ["judges must be permitted to bring management power to bear upon massive and complex litigation to prevent it from monopolizing the services of the court to the exclusion of other litigants. . . . [T]he trial court is given the discretion to be flexible with complex cases." (cleaned up)]; *First State Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 324, 333-336 [trial court presiding over complex insurance coverage dispute involving 25 insureds, over 40 insurers, and claims arising from numerous jurisdictions, had inherent authority to defer hearing summary judgment motions filed by parties until after it had decided myriad choice of law issues presented by case].)

Third, and most broadly, Plaintiffs' argument seems to assume that the purpose of the coordination procedure is, as Uber puts it, to "nationalize" cases that could otherwise be brought in states across the country, akin to a federal MDL. However, there is nothing in the coordination statutes or rules that suggests any intent on the part of the Legislature to transform California state courts into a national hub for tort litigation. Code of Civil Procedure section 404 authorizes a petition for coordination to the Judicial Council "[w]hen civil actions sharing a common question of fact or law are pending in different courts," referring to different California state courts, which of course are the only courts over which the Judicial Council has jurisdiction. (See also Cal. R. Ct. 3.521(a)(5) [coordination petition shall include title and case number of any other action known to the petitioner to be pending "in a court of this state" that shares a common question of fact or law with the included actions]; *McGhan Medical Corp. v. Superior Court* (1992) 11 Cal.App.4th 804, 807-811 [considering trial court's order denying coordination in light of the objectives and effects of the coordination procedure as they relate to "hundreds of cases on the docket of not only this court but of numerous other trial courts throughout the state"].)

## CONCLUSION

For the foregoing reasons, Defendant's motions to stay both actions are granted. As previously directed, the parties, consistent with their stipulation and the Court's order, shall meet and confer to devise a process to stipulate to or contest the applicability of the Court's rulings on these motions to the remainder of the cases within this coordinated proceeding, and shall be prepared to address those issues at the next case management conference on February 21, 2023. A joint case management conference statement shall be filed at least five court days prior to the case management conference.

IT IS SO ORDERED.

Dated: January 23, 2023

Ethan P. Schulman
Judge of the Superior Court

- 21 -

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.251)

I, Ericka Larnauti, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On January 23, 2023, I electronically served the attached document via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:  January 23, 2023

Mark Culkins, Interim Clerk

By: _____
Ericka Larnauti, Deputy Clerk