Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*, No. 23-cv-06708 | Case No. 3:23-MD-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OMNIBUS MOTIONS IN LIMINE**<br><br>Judge:        Hon. Charles R. Breyer<br>Courtroom:   6 – 17th Floor |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

Please take notice that on January 6, 2026 at 10:00 a.m., before the Honorable Charles R. Breyer in Courtroom No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), by and through their undersigned counsel, will and hereby do move the Court for an order excluding certain matters from trial in the above-captioned case.

This Motion in Limine is based on this notice, the Memorandum of Points and Authorities and accompanying exhibits, the Declaration of Laura Vartain Horn, and the Proposed Order granting the Motion in Limine, served and filed herewith, on the records and file herein, and on such evidence as may be presented at the hearing of this Motion.

Dated: December 16, 2025                    **KIRKLAND & ELLIS LLP**

                                            By: */s/ Laura Vartain Horn*

                                            *Counsel for Uber*

# **TABLE OF CONTENTS**

**Page**

I.      SETTLEMENT NEGOTIATIONS ................................................................................1

II.     REFERENCES IN VOIR DIRE TO SPECIFIC DAMAGES AMOUNTS ................1

III.    INSURANCE COVERAGE, CARRIERS OR THIRD-PARTY
        ADMINISTRATORS ................................................................................................1

IV.     MEDIA REPORTS ....................................................................................................2

V.      INFLAMMATORY EVIDENCE REGARDING UBER'S MEDIA
        STRATEGY ................................................................................................................3

VI.     CONFIDENTIALITY PROVISIONS AND HARVEY WEINSTEIN ......................5

VII.    OTHER LAWSUITS, CLAIMS, OR JUDICIAL ACTIONS
        INVOLVING UBER OR ITS EMPLOYEES ............................................................6

VIII.   UBER'S DE-ACTIVATION/RE-ACTIVATION DECISIONS
        CONCERNING OTHER DRIVERS ..........................................................................8

IX.     UBER'S HISTORICAL POLICIES (OR POLICIES THAT DID NOT
        APPLY TO THE DRIVER IN THE CASE BEING TRIED)....................................8

X.      ALLEGED COMPANY CULTURE .........................................................................10

XI.     GREYBALLING .......................................................................................................11

XII.    CONDUCT OUTSIDE THE UNITED STATES ......................................................12

XIII.   REPTILE ARGUMENTS .........................................................................................13

XIV.    LOBBYING EFFORTS (INCLUDING AB 5 AND PROP 22) ................................15

XV.     ACTIONS BY UBER TO SUE, CROSS-CLAIM, DISMISS CROSS-
        CLAIM, OR HELP ANY DRIVER OBTAIN COUNSEL ....................................15

XVI.    SUPPOSED INADEQUACY OF BACKGROUND CHECKS ................................16

XVII.   THIRD-PARTY REPORTS (INCLUDING GIULIANI AND HOLDER) ...............17

XVIII.  GOVERNMENT INVESTIGATIONS AND CONSENT DECREES ......................18

XIX.    ATTENDANCE AT TRIAL (SIZE OF DEFENSE TEAM OR ABSENCE
        OF SPECIFIC PEOPLE)...........................................................................................19

**XX.     DISCOVERY & OTHER NON-TRIAL DISPUTES** ......................................................**20**

**XXI.    ANY SUGGESTION THAT MR. TURAY SUBMITTED A FAKE ID TO UBER/CHECKR**............................................................................................**20**

**XXII.   PRIOR COMPLAINTS, INCIDENTS, ALLEGATIONS, POOR RATINGS, AND TEMPORARY RESTRICTIONS INVOLVING MR. TURAY** ..................................................................................................................**22**

**XXIII. MR. TURAY'S NATIONALITY OR IMMIGRATION STATUS.** ...........................**24**

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abouelmakarem v. Mssminja Inc.*,
  No. 21-cv-10625 (LJL), 2023 WL 4561765 (S.D.N.Y. July 17, 2023) ...............................25

*Aqua Connect, Inc. v. Code Rebel, LLC*,
  No. CV 11-5764 RSWL (MANx), 2013 WL 4663355 (C.D. Cal. Aug. 28, 2013)..................9

*August v. Provident Life & Accident Ins. Co.*,
  No. CV 09-01951 DMG, 2011 WL 6152349 (C.D. Cal. Nov. 15, 2011) ...............................9

*Barta v. Target Corp.*,
  No. SACV 16-00786 AG (DFMx), 2017 WL 6551145 (C.D. Cal. Sept. 13, 2017),
  *aff'd*, 775 F. App'x 323 (9th Cir. 2019)......................................................................................7

*Borges v. City of Hollister*,
  No. C03-05670 HRL, 2005 WL 6019704 (N.D. Cal. Aug. 24, 2005)....................................10

*Branch v. Umphenour*,
  No. 1:08-cv-01655-SAB (PC), 2023 U.S. Dist. LEXIS 71971 (E.D. Cal. Apr. 25,
  2023) ................................................................................................................................................1

*Bryant v. 4283791 Canada*,
  No. 16-CV-10803, 2018 WL 7891219 (E.D. Mich. May 4, 2018) .......................................20

*Buonanoma v. Sierra Pac. Power Co.*,
  No. 3:04-cv-0077-LRH-VPC, 2010 WL 3724254 (D. Nev. Sept. 16, 2010) ..........................7

*Chaudhry v. Smith*,
  No. 1:16-cv-1243-SAB, 2020 WL 869115 (E.D. Cal. Feb. 21, 2020) .............................3, 11

*Clinton v. Universal Music Grp., Inc.*,
  No. CV 07-672 PSG, 2011 WL 13175080 (C.D. Cal. May 4, 2011) ......................................7

*Coach, Inc. v. Citi Trends, Inc.*,
  No. CV 17-4775 DMG, 2019 WL 6354367 (C.D. Cal. Oct. 23, 2019)..................................18

*Consorti v. Armstrong World Indus., Inc.*,
  72 F.3d 1003 (2d Cir. 1995), *vacated on other grounds*, *Consorti v. Owens-*
  *Corning Fiberglas Corp.*, 518 U.S. 1031 (1996).......................................................................1

*D.I. Eng'g Corp. v. Nippon Express USA (Illinois), Inc.*,
  No. 96 Civ. 6843 LMM, 2000 WL 1218410 (S.D.N.Y. Aug. 28, 2000)...............................17

iii

*Datatreasury Corp. v. Wells Fargo & Co.*,
    No. 2:06-CV-72 DF, 2010 WL 11468934 (E.D. Tex. Oct. 5, 2010) .......................................15

*Ernst v. HB Aspen, Inc.*,
    No. CV 07-1070 CBM (CWx), 2008 WL 11338185 (C.D. Cal. Mar. 24, 2008) ...................24

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
    No. 2:10-CV-1494 JCM (GWF), 2017 WL 4038858 (D. Nev. Sept. 13, 2017) ...................19

*People ex rel. Gallegos v. Pac. Lumber Co.*,
    158 Cal. App. 4th 950 (2008), *as modified* (Feb. 1, 2008) ......................................................15

*Garner v. Network Logistics LLC*,
    No. 4:15-CV-00674, 2017 WL 11630636 (E.D. Tex. Jan. 4, 2017)..........................................1

*Green v. Baca*,
    226 F.R.D. 624 (C.D. Cal. 2005) ................................................................................................2

*Griffiths v. Tucson, City of*,
    No. CV 12-00430-TUC-RM, 2016 WL 7227553 (D. Ariz. Jan. 25, 2016)...........................23

*Heggem v. Snohomish Cnty. Corr.*,
    No. C11-1333 RSM, 2015 WL 1759201 (W.D. Wash. Apr. 17, 2015) ....................................1

*Hendricks v. A-Z Women's Ctr.*,
    No. 2:03-CV-1338-RCJ-LRL, 2007 WL 9734381 (D. Nev. May 22, 2007) ..........................23

*Herzog v. United States*,
    226 F.2d 561 (9th Cir. 1955) ....................................................................................................21

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*,
    888 F.3d 753 (5th Cir. 2018) ..............................................................................................11, 12

*In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mex., on Apr. 20, 2010*,
    MDL No. 2179, 2012 WL 423862 (E.D. La. Feb. 8, 2012) ......................................................4

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d
    376 (9th Cir. 2010)......................................................................................................................4

*In re Seroquel Prods. Liab. Litig.*,
    601 F. Supp. 2d 1313 (M.D. Fla. 2009).....................................................................................13

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-md-01819 CW, 2010 WL 10086747 (N.D. Cal. Dec. 16, 2010)................................19

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
    No. 05CV633 JLS (CAB), 2008 WL 8929013 (S.D. Cal. July 8, 2008)................................19

iv

*J.W. v. City of Oxnard*,
    No. CV 07-06191 CAS, 2008 WL 4810298 (C.D. Cal. Oct. 27, 2008) .................................14

*John v. Rogers*,
    No. C13-881-JPD, 2015 WL 11233123 (W.D. Wash. Apr. 8, 2015).......................................1

*Kelly v. Provident Life & Accident Ins. Co.*,
    No. 04cv807-CAB (BGS), 2012 WL 12845618 (S.D. Cal. Nov. 13, 2012) ...........................9

*Larez v. City of Los Angeles*,
    946 F.2d 630 (9th Cir. 1991) .........................................................................................2, 10

*Larez v. Holcomb*,
    16 F.3d 1513 (9th Cir. 1994) ...............................................................................................1

*M.H. v. Cnty. of Alameda*,
    No. 11-cv-02868-JST, 2015 WL 894758 (N.D. Cal. Jan. 2, 2015) ........................................7

*Med. Mut. of Ohio v. Air Evac EMS, Inc.*,
    No. 1:16 CV 80, 2019 WL 4573700 (N.D. Ohio Sept. 20, 2019) .........................................15

*Mims v. Fed. Express Corp.*,
    No. CV 13-03947-AB, 2015 WL 12711651 (C.D. Cal. Jan. 15, 2015)....................................5

*Navarro v. City of Fontana*,
    No. EDCV 09-01525-VAP (DTBx), 2011 WL 13124691 (C.D. Cal. Mar. 24,
    2011) ...................................................................................................................................25

*Newman v. Underhill*,
    No. 5:23-cv-33-SP, 2024 WL 1151676 (C.D. Cal. Feb. 29, 2024), *aff'd*, 134 F.4th
    1025 (9th Cir. 2025)..............................................................................................................6

*Nielsen v. Cal. Cap. Ins. Co.*,
    No. 2:22-CV-0177-TOR, 2023 WL 11091242 (E.D. Wash. Sept. 29, 2023)..........................19

*Pakootas v. Teck Cominco Metals, Ltd.*,
    No. CV-04-256-LRS, 2012 WL 12862948 (E.D. Wash. June 13, 2012) ...............................17

*Philip Morris USA v. Williams*,
    549 U.S. 346 (2007).........................................................................................................7, 9

*Ray v. Ford Motor Co.*,
    No. 3:07CV175-WHA-TFM, 2011 WL 6183099 (M.D. Ala. Dec. 13, 2011).......................20

*Retamosa v. Target Corp.*,
    No. CV 19-5797 DSF, 2021 WL 4499236 (C.D. Cal. May 4, 2021) ....................................14

*SEC v. Jensen*,
    835 F.3d 1100 (9th Cir. 2016) ............................................................................................19

*Silverthorne v. United States*,
    400 F.2d 627 (9th Cir. 1968) ...................................................................3

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003).............................................................4, 7, 9, 10

*Sugar Ass'n, Inc. v. McNeil-PPC, Inc.*,
    No. CV 04-10077 DSF, 2008 WL 4755611 (C.D. Cal. Jan. 7, 2008) ....................................12

*Teague v. Remington Arms Co.*,
    No. CV 18-184-M-DLC, 2022 U.S. Dist. LEXIS 211757 (D. Mont. Nov. 22,
    2022) ...................................................................14

*U.S. Football League v. Nat'l Football League*,
    634 F. Supp. 1155 (S.D.N.Y. 1986).......................................................15

*United States v. Espinoza-Baza*,
    647 F.3d 1182 (9th Cir. 2011) ...................................................................22

*United States v. Lopez*,
    991 F.2d 804, 1993 WL 118149 (9th Cir. Apr. 15, 1993) ....................................24

*United States v. Yazzie*,
    59 F.3d 807 (9th Cir. 1995) ...................................................................22

*Valles v. Mueting*,
    No. LACV169198, 2018 WL 6515402 (Iowa Dist. Ct. Oct. 25, 2018)..................................14

*Young v. Wolfe*,
    No. 07-03190 RSWL (AJWx), 2017 WL 985632 (C.D. Cal. Mar. 14, 2017)..................2, 3, 4

**Rules**

Fed. R. Evid. 401 ...................................................................2, 7, 17, 21

Fed. R. Evid. 401(a) ...................................................................12

Fed. R. Evid. 402 ...................................................................2, 4, 21

Fed. R. Evid. 403 ...................................................................*passim*

Fed. R. Evid. 404 ...................................................................23

Fed. R. Evid. 404(a)(1) ...................................................................7

Fed. R. Evid. 404(b).......................................................8, 11, 12

Fed. R. Evid. 404(b)(1) ...................................................................8

Fed. R. Evid. 407 ...................................................................18

Fed. R. Evid. 408 ...................................................................................................1, 19

Fed. R. Evid. 801 ...................................................................................................10, 17

Fed. R. Evid. 802 ...................................................................................................6, 17

**Other Authorities**

Mike Isaac, *Inside Uber's Aggressive, Unrestrained Workplace Culture*, N.Y. Times
   (Feb. 22, 2017) ..................................................................................................10

Ryan Parry, *Uber Hosts Top Secret Sin City 'Team Building' Junket for 4,800
   Employees*, Daily Mail (Oct. 1, 2015) ...............................................................10

*Uber CEO Kalanick Took Workers to an 'Escort-Karaoke' Bar*, N.Y. Post (Mar. 27,
   2017) ..................................................................................................................10

Uber, https://www.uber.com/us/en/drive/requirements/how-to-provide-proof-of-
   licensing-history/...............................................................................................21

Uber Newsroom, *Turning the lights on* (May 15, 2018)
   https://www.uber.com/newsroom/turning-the-lights-on/ ...................................5, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## ARGUMENT

### I.    SETTLEMENT NEGOTIATIONS

The Court should exclude any evidence, reference, and argument relating to settlement negotiations engaged in by Uber with Plaintiffs pursuant to Fed. R. Evid. 408. *See Branch v. Umphenour*, No. 1:08-cv-01655-SAB (PC), 2023 U.S. Dist. LEXIS 71971, at *5 (E.D. Cal. Apr. 25, 2023) (granting motion to exclude evidence of settlement negotiations under Rule 408).

### II.    REFERENCES IN VOIR DIRE TO SPECIFIC DAMAGES AMOUNTS

The Court should preclude Plaintiff from referring to, or asking questions about, the specific damages amount she seeks during *voir dire* or opening statements. The JCCP trial court granted a similar motion *in limine*, recognizing that references to specific damages amounts would effectively "precondition the prospective jurors to a particular result[.]" JCCP Order at 49 (Ex. 1). This holding was correct. Such questions improperly "anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence." *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds*, *Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996); *see also John v. Rogers*, No. C13-881-JPD, 2015 WL 11233123, at *7 (W.D. Wash. Apr. 8, 2015) ("plaintiff is not permitted to ask about specific amounts or ranges of damages during voir dire"); *Heggem v. Snohomish Cnty. Corr.*, No. C11-1333 RSM, 2015 WL 1759201, at *4 (W.D. Wash. Apr. 17, 2015) (denying "[p]laintiff's request to state a dollar amount of damages" in *voir dire*); *Garner v. Network Logistics LLC*, No. 4:15-CV-00674, 2017 WL 11630636, at *2 (E.D. Tex. Jan. 4, 2017) ("[T]he parties may not make reference to a defined amount of damages or ask whether prospective jurors could support an award for a specific amount of damages.").

### III.    INSURANCE COVERAGE, CARRIERS OR THIRD-PARTY ADMINISTRATORS

The Court should exclude any evidence, reference, or argument relating to Uber's insurance, including, but not limited to, types of insurance, names of or references to insurers, premium amounts, insurance costs, third-party administrators, or whether any such insurance covers litigation expenses and a potential verdict. *See Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994) ("It has long been

1  the rule in our courts that evidence of insurance or other indemnification is not admissible[.]"). The

2  JCCP court granted a substantially similar motion. *See* JCCP Order at 51.

3  **IV.    MEDIA REPORTS**

4          The Court should exclude any evidence or argument involving any and all media reports

5  related to Uber, including, but not limited to: (a) an August 6, 2025 *New York Times* story entitled

6  "Uber's Festering Sexual Assault Problem"; and (b) the "Crawford Story," a *USA Today* article that

7  describes Uber's partnership with Crawford Global Technical Services, its third-party administrator

8  for claims submitted against the company, including claims of alleged sexual assault or misconduct.

9          The Court should exclude these and other media reports (on CNN, in the *Washington Post* and

10  numerous other media outlets) for several reasons.

11          ***First***, as the JCCP court recognized, JCCP Order at 52, media reports are "quintessential

12  hearsay" and cannot be admitted for their truth. *Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th

13  Cir. 1991); *see also, e.g.*, *Young v. Wolfe*, No. 07-03190 RSWL (AJWx), 2017 WL 985632, at *4

14  (C.D. Cal. Mar. 14, 2017) ("Where a party seeks to introduce a newspaper article, television program

15  or other media reports 'for the truth of the matter asserted, they clearly constitute hearsay.'") (citation

16  omitted); *Green v. Baca*, 226 F.R.D. 624, 637-39 (C.D. Cal. 2005) (excluding newspaper articles

17  regarding over-detentions at county jail as hearsay).

18          ***Second***, evidence related to media reports should also be excluded as irrelevant. *See* Fed. R.

19  Evid. 401, 402. Plaintiff's claims will turn on whether Uber breached a purported duty to prevent the

20  alleged assault, violated a duty to disclose information that would have prevented that alleged event,

21  or can be held vicariously liable for the driver's alleged misconduct. Media accounts have no tendency

22  to answer any of those fundamental questions.

23          For example, the "Crawford Story" report has no bearing on Uber's actions to prevent sexual

24  assault or any other issue in this trial. Moreover, Plaintiff does not contend that Crawford reached out

25  to her on behalf of Uber concerning her claims. As a result, this article is not probative of Plaintiffs'

26  claims and should be excluded on this ground as well. Similarly, articles about other alleged incidents

27  involving riders or drivers who used the Uber platform, Uber employees or Uber policies not at issue

28

1    in this litigation are utterly irrelevant to the questions before the jury in these cases.

2    **Third**, the evidence should also be excluded under Fed. R. Evid. 403. Any tenuous probative

3    value of media reports would be substantially outweighed by the danger of unfair prejudice and

4    confusion of the issues for lay jurors. *See, e.g.*, *Young*, 2017 WL 985632, at *4 (newspaper articles

5    "have the likelihood of confusing the jury"); *Chaudhry v. Smith*, No. 1:16-cv-1243-SAB, 2020 WL

6    869115, at *17 (E.D. Cal. Feb. 21, 2020) (excluding news articles under Fed. R. Evid. 403); *cf.*

7    *Silverthorne v. United States*, 400 F.2d 627, 643 (9th Cir. 1968) ("Jurors are not presumed to separate

8    the truth from the falsity in newspaper articles . . . .").

9    The "Crawford Story" is a particularly egregious example. First, because Crawford is Uber's

10   third-party claims administrator, evidence related to Crawford is inadmissible pursuant to MIL No. 3,

11   which seeks to exclude evidence related to insurance.

12   Second, the article's one-sided coverage is replete with misleading statements and critical

13   omissions. For example, the article incorrectly reports that an agent from Crawford showed up at an

14   alleged victim's father's house and offered her $10,000 in exchange for working with Uber against

15   the alleged perpetrator. Both Uber and Crawford forcefully denied that this ever occurred and sought

16   its exclusion from the story, without success. *See* Ex. 2717 to Hasbun Dep. (Apr. 10, 2025) (Ex. 2).

17   As a result, admission of the Crawford Story, as well as similarly inflammatory and unsubstantiated

18   media reports, would be enormously prejudicial to Uber, requiring exclusion for this reason as well.

19   **V.    INFLAMMATORY EVIDENCE REGARDING UBER'S MEDIA STRATEGY**

20   The Court should bar Plaintiff from introducing inflammatory evidence or argument relating

21   to Uber's media strategy or statements and chats by certain of its communications personnel. This

22   includes: (a) so-called "Catch and Kill" media stories; and (b) certain internal chats. The JCCP court

23   granted a similar motion.

24   During company depositions, Plaintiffs' counsel in this litigation have repeatedly pressed Uber

25   employees about the company's alleged efforts to defuse negative press in order to protect Uber's

26   reputation and goodwill with users of the platform. *E.g.*, 2/28/2025 K. Whaling Dep. 46:21-23 (Ex. 3)

27   (Q. "[Y]ou'd agree that one of your roles [at Uber] was to keep Uber's name out of negative press

28

3

1    stories, correct?"); 5/6/2025 B. Anderson Dep. 97:23-98:17 (Ex. 4) (discussion of internal document

2    titled "2017 Stories Squashed – U.S. Safety Team"). Plaintiffs' counsel also questioned deponents

3    about internal messages that were sent between Uber employees regarding media issues. *E.g.*,

4    4/10/2025 A. Hasbun Dep. 278:18-19 (Ex. 5) (reviewing internal chat communications; Q. . . "And

5    then the next thing that you write is, 'I trashed rape victims to USA Today,' right?"). This evidence is

6    inadmissible for several independent reasons.

7        ***First***, it is irrelevant. Fed. R. Evid. 402. The questions at this trial are: whether Uber breached

8    a purported duty to prevent the alleged assault, violated a duty to disclose information that would have

9    prevented that alleged event, or can be held vicariously liable for the driver's alleged misconduct. The

10   answers to these questions do not turn in any way on Uber's media strategy. Nor is this evidence

11   relevant to the issue of punitive liability. While Plaintiff may seek to argue that Uber's

12   communications strategy with the media reflects generalized misfeasance, "[d]ue process does not

13   permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties'

14   hypothetical claims against a defendant[.]" *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408,

15   422-23 (2003) ("the Utah courts erred in relying upon this and other evidence"). Further, even if this

16   evidence were relevant to punitive liability, that would necessitate bifurcation to ensure that Uber is

17   not prejudiced by its improper admission at the compensatory phase of trial.

18       ***Second***, media reports are "clearly" hearsay where they are being offered for their truth. *See*

19   *Young*, 2017 WL 985632, at *4. It follows perforce that any news articles that ultimately were not

20   published, regardless of the reason, would likewise constitute inadmissible hearsay. *See In re Oracle*

21   *Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050, at *15 n.16 (N.D. Cal. June 19, 2009)

22   (finding that an email chain in which company employees commented on the draft of an article was

23   hearsay), *aff'd*, 627 F.3d 376 (9th Cir. 2010). The Slack chats at issue also constitute hearsay for

24   similar reasons. These chats—conversations between employees rather than formal company

25   communications—were too "casual" and "isolated" to constitute party admissions or to satisfy the

26   business records exception to the hearsay rule. *See In re Oil Spill by Oil Rig "Deepwater Horizon" in*

27   *Gulf of Mex., on Apr. 20, 2010*, MDL No. 2179, 2012 WL 423862, at *2 (E.D. La. Feb. 8, 2012)

28

1  (employee email stating "[t]hanks for the shitty cement job" was hearsay and not a company admission

2  or a business record because it was "sent casually").

3       ***Third***, the evidence is also unduly prejudicial. Fed. R. Evid. 403. The only conceivable purpose

4  for admitting this evidence would be to falsely suggest that Uber's communications team sought to

5  "kill" certain media articles for the purpose of concealing information about Uber's safety practices.

6  But the deponents who testified on this topic made clear that the phrasing "catch and kill" was a

7  euphemism for Uber's reputational vigilance and that Uber pushed back on media stories when Uber

8  believed they were demonstrably false. *E.g.*, 2/28/2025 K. Whaling Dep. 46:3-18; 220:10-221:2 (Q. .

9  . . "And the purpose of killing stories was to keep Uber out of negative press; is that correct?"; A. . . .

10  "So some of these terms are just communications terms. . . . We would provide accurate information

11  and push back on things that might be inaccurate that the reporter was asking about . . . ."); 5/6/2025

12  B. Anderson Dep. 15:14-16:1.

13       As the JCCP court explained, admitting this evidence would also "cause an undue consumption

14  of time on collateral issues." JCCP Order at 52. If the evidence were allowed, Uber would have to

15  explain the circumstances of any individual Uber employee's decision to inquire about a particular

16  news story, including why he or she believed the story was baseless. Such an exercise would entail a

17  significant amount of time, requiring the parties to litigate the veracity of media articles, needlessly

18  protracting an already complex trial, and substantially outweighing any marginal probative value. *See*

19  *Mims v. Fed. Express Corp.*, No. CV 13-03947-AB (SSx), 2015 WL 12711651, at *9 (C.D. Cal. Jan.

20  15, 2015) ("Evidence may be excluded when its admission would lead to litigation of collateral issues,

21  thereby creating a side issue which might distract the jury from the main issues.") (citations and

22  internal quotations omitted).

23  **VI.    CONFIDENTIALITY PROVISIONS AND HARVEY WEINSTEIN**

24       Prior to May 15, 2018, sexual assault claimants settling claims with Uber were required to sign

25  an agreement containing a confidentiality provision that prevented them from speaking about the facts

26  of the alleged sexual assault or sexual harassment. *See* Uber Newsroom, *Turning the lights on* (May

27  15, 2018) https://www.uber.com/newsroom/turning-the-lights-on/. Such provisions were often

28

necessary since "frequently, survivors insist on broad confidentiality in order to preserve their privacy." *Id*. However, after listening to relevant feedback, Uber decided that "survivors will now have the option to settle their claims with Uber without a confidentiality provision that prevents them from speaking about the facts of the sexual assault or sexual harassment they suffered." *Id*. The Court should exclude any evidence or argument related to this historical policy, as well as related references to Harvey Weinstein and the "Me Too" movement. Such evidence is both irrelevant and unduly prejudicial. Unless Uber's motion is granted, Plaintiff's counsel may parade before the jury evidence of notorious litigation and alleged conduct that has absolutely nothing to do with this case, such as Harvey Weinstein's criminal activity in connection with the "Me Too" movement. Introduction of these extraneous and highly inflammatory matters would unfairly prejudice Uber by falsely connecting Uber with individuals with whom the company has no relationship. The JCCP court granted a similar motion as to references to Havey Weinstein and the "Me Too" movement, holding that they "are at best minimally relevant and pose obvious risks of undue prejudice." JCCP Order at 54.[1]

## VII.    OTHER LAWSUITS, CLAIMS, OR JUDICIAL ACTIONS INVOLVING UBER OR ITS EMPLOYEES

The Court should exclude any evidence or argument related to other lawsuits or claims involving Uber or its competitors, including but not limited to personal injury claims, class actions and wage and hour or other employment-related matters involving allegations that drivers are misclassified as independent contractors. The JCCP trial court granted an equivalent motion *in limine* in substantial part,[2] and this Court should grant it entirely.

***First***, it is black letter law that claims asserted against Uber in other lawsuits, along with any

---

[1]    The JCCP court denied the motion with respect to the confidentiality policy, finding that such evidence "has some arguable relevance to Plaintiffs' failure to warn theory." *Id.* This Court should reach a different conclusion here because Plaintiff does not allege that Uber's historical confidentiality clause was applicable to this case in any way.

[2]    Among other things, Uber had moved to exclude evidence of prior sexual assault lawsuits against Uber or its competitors. In response, the JCCP plaintiffs represented that they might offer "evidence relating to prior lawsuits against other companies, including Lyft, for the limited purpose of cross-examining Uber's experts about prior testimony and other attendant matters." JCCP Order at 54 (quoting Pls.' Opp'n at 29). "With that understanding," the JCCP court denied that portion of the motion, but said it would not allow "evidence of the specific allegations in any prior sexual assault lawsuits or the terms, if any, on which such lawsuits were resolved." *Id.*

judgments against Uber, constitute inadmissible hearsay under Federal Rule of Evidence 802. *See, e.g.*, *Newman v. Underhill*, No. 5:23-cv-33-SP, 2024 WL 1151676, at *3 n.3 (C.D. Cal. Feb. 29, 2024) (allegations in a complaint offered for their truth are "hearsay under the Federal Rules of Evidence"), *aff'd*, 134 F.4th 1025 (9th Cir. 2025); *Clinton v. Universal Music Grp., Inc.*, No. CV 07-672 PSG (JWJx), 2011 WL 13175080, at *8 (C.D. Cal. May 4, 2011).

**Second**, evidence of other lawsuits or judicial proceedings is irrelevant. *See* Fed. R. Evid. 401. Many of the lawsuits that Plaintiff's counsel have asked about at fact depositions are unrelated to the subject matter of this litigation. And other lawsuits filed against Uber involving alleged sexual assault are not relevant here because the circumstances of those alleged assaults were too different from those alleged here to bear on Uber's liability. *See, e.g.*, *Barta v. Target Corp.*, No. SACV 16-00786 AG (DFMx), 2017 WL 6551145, at *1, *3 (C.D. Cal. Sept. 13, 2017) ("A showing of substantial similarity is required when a plaintiff attempts to introduce evidence of other accidents as direct proof of negligence . . . or notice . . . ."), *aff'd*, 775 F. App'x 323 (9th Cir. 2019) (citation omitted). Nor are these other lawsuits relevant to punitive damages, as due process does not permit a party to be punished for injuring a nonparty. *See Philip Morris USA v. Williams*, 549 U.S. 346, 354 (2007); *State Farm*, 538 U.S. at 423. And even if other lawsuits were relevant to punitive liability, admitting this evidence would require bifurcation of the compensatory and punitive liability stages of the trial so that Uber is not unfairly prejudiced at the liability stage of trial.

**Third**, the evidence is unduly prejudicial, *see* Fed. R. Evid. 403, and would constitute improper propensity evidence, *see* Fed. R. Evid. 404(a)(1). If evidence of other lawsuits is admitted, there is a substantial risk that the jury would improperly impose liability on Uber due to its purported conduct in these other, unrelated cases. *See, e.g.*, *Buonanoma v. Sierra Pac. Power Co.*, No. 3:04-cv-0077-LRH-VPC, 2010 WL 3724254, at *5 (D. Nev. Sept. 16, 2010) ("Introducing evidence of other lawsuits against [defendant] could unfairly bias the jury against [defendant] for . . . acts that did not take place in this case and confuse the jury into thinking it could hold [defendant] liable in this action for alleged wrongs in other actions."). Additionally, introducing evidence of other lawsuits would force Uber to put on a "trial within a trial" to rebut allegations made in those other cases, wasting the jury's time.

1    *See, e.g.*, *M.H. v. Cnty. of Alameda*, No. 11-cv-02868-JST, 2015 WL 894758, at *13 (N.D. Cal. Jan.

2    2, 2015) ("[E]xamination about the facts and outcomes of prior cases presents the risk of a 'mini-trial'

3    regarding other cases not before the jury; risks prejudicing the Defendants by associating their conduct

4    with the conduct of defendants in other cases; and wastes the time of the jury and the Court."). For

5    this reason, too, the evidence should be excluded.

6    **VIII.    UBER'S DE-ACTIVATION/RE-ACTIVATION DECISIONS CONCERNING OTHER DRIVERS**

7
         The Court should exclude any evidence, reference, or argument relating to Uber's decisions

8    concerning account de-activation or re-activation of drivers who were not involved in the alleged

9    incident giving rise to Plaintiff's lawsuit. Such evidence is irrelevant because Plaintiff does not allege

10   that Uber failed to de-activate the account of the driver involved in this case (Mr. Turay). Such

11   evidence also constitutes impermissible character evidence and would be unduly prejudicial. Fed. R.

12   Evid. 404(b); 403. Admitting such evidence would suggest that because Uber allegedly acted

13   improperly in deciding whether to de-activate or re-activate accounts of other drivers, it therefore acted

14   negligently in this case, which is precisely the kind of reasoning that Rule 404(b)(1) prohibits. The

15   JCCP court granted this motion in part, ruling that it would "not permit evidence regarding the

16   allegations or facts of individual cases in which Uber did not de-activate, or delayed in de-activating,

17   drivers accused of sexual assault." JCCP Order at 55.[3]

18   **IX.    UBER'S HISTORICAL POLICIES (OR POLICIES THAT DID NOT APPLY TO THE DRIVER IN THE CASE BEING TRIED)**

19
         The Court should exclude any evidence, reference, and argument relating to historical policies

20   that were no longer in place at the time of the alleged incident giving rise to the claims in Plaintiff's

21   case. For example, in 2018, Uber had a policy under which a driver's account would be deactivated

22   from Uber's platform after one strike when a report of sexual assault could be confirmed, after two

23   strikes for all other reports of sexual assault, and after three strikes for reports of sexual misconduct,

24

25
_____

26   [3]    Although the JCCP court did not "preclude Plaintiffs from presenting overall statistics," JCCP
     Order at 55, this Court should reach a different conclusion here given the paucity of any evidence
27   connecting account de-activation/re-activation decisions concerning other drivers to the alleged
     assault in this case.

28
     DEFENDANTS' OMNIBUS MOTIONS IN LIMINE                    Case No. 3:23-md-03084-CRB

1  such as masturbation. *See* 4/17/2025 V. Shuping Dep. 94:13-95:14, 95:21-96:6 (Ex. 6). At the time of

2  the alleged incidents involving Plaintiff, however, Uber's policy mandated account de-activation of a

3  driver after a single report of serious sexual assault (i.e., the five most serious categories in Uber's

4  sexual assault Taxonomy), regardless of whether the incident could be confirmed. Similarly, while

5  Uber historically did not re-run annual background checks on drivers who use its platform, it started

6  doing so before the alleged incidents giving rise to Plaintiff's claims. *See* 6/30/2025 H. Nilles Dep.

7  217:13-16 (Ex. 7).

8      The JCCP court substantially granted a similar motion, reasoning that "corporate policies to

9  which an individual driver in question was not subject or was not evaluated are not relevant to

10 [p]laintiffs' claims, because they cannot have caused [p]laintiffs' injuries[.]" JCCP Order at 56.[4] This

11 Court should similarly exclude evidence of prior policies that were not in effect at the time of Plaintiff

12 Dean's alleged injuries because: (a) it is not relevant, *see August v. Provident Life & Accident Ins. Co.*,

13 No. CV 09-01951 DMG (SHx), 2011 WL 6152349, at *4 (C.D. Cal. Nov. 15, 2011) (in order to offer

14 evidence concerning defendant's general "policies and procedures, [p]laintiff will need to establish a

15 nexus to the specific harm suffered by [p]laintiff in this case"); (b) any limited probative value would

16 be substantially outweighed by the danger of unfair prejudice, jury confusion, and delay, *see Kelly v.*

17 *Provident Life & Accident Ins. Co.*, No. 04cv807-CAB (BGS), 2012 WL 12845618, at *2 (S.D. Cal.

18 Nov. 13, 2012) (witnesses' testimony "based on broad and unrelated conduct [] will be confusing to

19 the jury and unduly prejudicial" to defendant and should be limited to "only those corporate policies

20 and initiatives . . . that were actually implemented" with respect to the plaintiff); and (c) it is improper

21 character evidence, *see Aqua Connect, Inc. v. Code Rebel, LLC*, No. CV 11-5764 RSWL (MANx),

22 2013 WL 4663355, at *6 (C.D. Cal. Aug. 28, 2013) (excluding improper character evidence regarding

23 conduct "not at issue in this case" because "that issue is not material; it is collateral to the issues to be

24 raised at trial . . . [and] [s]uch evidence is likely to mislead a jury or confuse the issues").

---

[4]     Although the JCCP court noted that such historical policies "may be pertinent to claims for punitive damages[,]" *id.*, due process does not permit a party to be punished for conduct bearing no nexus to the facts and circumstances of the plaintiff's particular case. *See Philip Morris*, 549 U.S. at 354; *State Farm*, 538 U.S. at 423. Even if this Court were to admit such evidence for that limited purpose, it would require bifurcation of the compensatory and punitive liability stages.

## X.    ALLEGED COMPANY CULTURE

The Court should exclude any evidence, reference, or argument regarding Uber's alleged company culture, including, but not limited to, references to "X to the X," "bro" culture, the *Super Pumped* book or related television series, Susan Fowler, and a Korean karaoke incident.[5] The JCCP court granted a similar motion as unopposed. JCCP Order at 57. This Court should exclude similar evidence in this case because it: (a) consists of inadmissible hearsay; (b) is irrelevant; (c) is unduly prejudicial; and (d) constitutes impermissible propensity evidence.

*First*, to the extent Plaintiff cites to any news article, report, or media depiction of Uber's internal operations for the truth of the matter asserted, such evidence is inadmissible hearsay under Rule 801. *See, e.g.*, *Larez*, 946 F.2d at 641.

*Second*, evidence related to Uber's internal work culture is irrelevant. Uber is not on trial for having a so-called "bro" culture. *See Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2022 WL 17218077, at *30 (C.D. Cal. Aug. 2, 2022) (granting motion *in limine* to exclude evidence of defendant's workplace environment), *aff'd*, Nos. 23-55451, 24-244, 2025 WL 1111495 (9th Cir. Apr. 15, 2025). Rather, the crux of Plaintiff's negligence claims is that Uber breached a supposed duty to prevent an independent third-party driver from allegedly assaulting Plaintiff. These claims will turn on evidence related to Uber's safety-based efforts, not its corporate culture. *See Borges v. City of Holliste*r, No. C03-05670 HRL, 2005 WL 6019704, at *1-2 (N.D. Cal. Aug. 24, 2005) (excluding evidence of plaintiffs discussing "sexually explicit music lyrics" with co-workers and granting motion to exclude evidence that plaintiffs used profanity; "[s]uch evidence is irrelevant"). Nor should Plaintiff be allowed to introduce this evidence under the guise of punitive damages because "[a] defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *State Farm*, 538 U.S. at 423.

---

[5]    *See, e.g.*, Mike Isaac, *Inside Uber's Aggressive, Unrestrained Workplace Culture*, N.Y. Times (Feb. 22, 2017), https://www.nytimes.com/2017/02/22/technology/uber-workplace-culture.html; *Uber CEO Kalanick Took Workers to an 'Escort-Karaoke' Bar*, N.Y. Post (Mar. 27, 2017), https://nypost.com/2017/03/27/uber-ceo-kalanick-took-workers-to-an-escort-karaoke-bar/; Ryan Parry, *Uber Hosts Top Secret Sin City 'Team Building' Junket for 4,800 Employees*, Daily Mail (Oct. 1, 2015), https://www.dailymail.co.uk/news/article-3256259/Luxury-hotels-night-partying-posh-clubs-endless-freebies-Uber-hosts-SECRET-Sin-City-team-building-junket-4-800-employees-world-no-drivers-please.html.

1    **Third**, any marginal probative value of such evidence would be vastly outweighed by the

2    substantial danger of unfair prejudice, jury confusion, and undue consumption of time. Fed. R. Evid.

3    403; *see Chaudhry*, 2020 WL 869115, at *17 (excluding media reports containing sensational and

4    inflammatory statements from third parties regarding defendant, which would have led to mini-trials

5    regarding the veracity of the statements and thus confuse the jury). The clear purpose of introducing

6    inflammatory evidence about alleged internal discrimination, drug use, or other salacious claims

7    would be to appeal to the passions of the jury by suggesting that Uber must be a reprehensible company

8    because some of its employees allegedly made sexist comments or acted distastefully.

9        **Finally**, such evidence constitutes improper character evidence. Fed. R. Evid. 404(b). As the

10    U.S. Court of Appeals for the Fifth Circuit recognized in reversing a verdict after the introduction of

11    salacious evidence, such evidence inappropriately "invit[ed] the jury to infer guilt based on no more

12    than prior bad acts" and "alone provide[d] grounds for a new trial." *In re DePuy Orthopaedics, Inc.,*

13    *Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 784-87 (5th Cir. 2018) (repeated references to

14    a "filthy . . . racial email" alleging internal racial discrimination, including use of racial epithets,

15    "fortifies our conviction that a new trial is required"). Introduction of inflammatory and

16    uncorroborated allegations regarding Uber's internal culture would similarly threaten to generate a

17    tainted jury verdict. For this reason, too, the evidence should be excluded.

18    **XI.    GREYBALLING**

19        The Court should exclude any evidence, reference, and argument relating to so-called

20    "greyballing," an alleged practice whereby Uber allegedly identified riders who were using Uber's

21    app improperly and utilized a tool called Greyball to exclude certain parties, including law

22    enforcement officials (such as code enforcement inspectors), from connecting with a ride on the Uber

23    platform. The JCCP court granted a similar motion as unopposed. JCCP Order at 57. This Court should

24    exclude evidence on this topic for multiple reasons. First, the use of greyballing has no bearing on the

25    claims or defenses at issue in this litigation, which turn on what (if any) duty Uber had to protect

26    Plaintiff from the alleged acts of an independent third-party driver and whether the company satisfied

27    any such duty. Second, any marginal probative value of such evidence would be vastly outweighed by

28

1    the substantial danger of unfair prejudice, jury confusion, and undue consumption of time. Fed. R.

2    Evid. 403. "Greyballing" is an amorphous term that is not readily definable. As a result, the parties

3    would have to devote considerable time and effort to contextualizing the concept and educating jurors

4    about its meaning, resulting in a mini-trial over a collateral issue. And third, evidence of "greyballing"

5    would unfairly suggest to the jury that Uber has a propensity to engage in bad conduct, in plain

6    violation of Rule 404(b). *See In re DePuy*, 888 F.3d at 785 (counsel "tainted [the trial] by inviting the

7    jury to infer guilt based on no more than prior bad acts").

8    **XII.    CONDUCT OUTSIDE THE UNITED STATES**

9            The Court should preclude Plaintiff from introducing or referencing incidents and regulatory

10   actions outside the United States involving Uber, as well as Uber's initiatives in countries outside the

11   United States. This includes, among other things: (a) a 2014 incident in New Delhi, India where Uber

12   was temporarily banned after an alleged sexual assault of a rider by a driver using the Uber platform;

13   and (b) an initiative to match women riders and drivers in foreign countries, including Saudi Arabia.

14   The JCCP trial court permitted limited references to these matters, admitting reference to the 2014

15   New Delhi incident "to the extent Plaintiffs can show it is relevant to other issues such as Uber's

16   policies for handling sexual assault," JCCP Order at 57, and declining to "exclude evidence regarding

17   Uber's adoption of a women-matching option in Saudi Arabia and multiple other countries, which"

18   the JCCP court found "goes to the feasibility of that asserted safety measure," *id.* However, as

19   explained below, the Court should exclude them entirely here.

20           ***First***, the 2014 incident in India is irrelevant. The allegations in this MDL pertain only to

21   Uber's conduct in the United States. Incidents that occurred in foreign countries—as well as adverse

22   actions taken by foreign regulators—have no "tendency to make [it] more or less probable" that Uber

23   breached any duty of care owed to Plaintiff under Arizona law. Fed. R. Evid. 401(a); *see also Sugar*

24   *Ass'n, Inc. v. McNeil-PPC, Inc.*, No. CV 04-10077 DSF (RZx), 2008 WL 4755611, at *2 (C.D. Cal.

25   Jan. 7, 2008) (excluding evidence concerning "the marketing and sale of [product] in jurisdictions

26   outside the United States" since "[t]his case is brought under American law"). In addition, even if the

27   evidence had some minimal probative value, the 2014 New Delhi incident should still be excluded

28

1    under Rule 403. Although the JCCP court declined to preclude this evidence "[o]n the understanding

2    that Plaintiffs will not 'belabor' the incident," JCCP Order at 57, that reasoning misunderstands the

3    impact such evidence will have on jurors and the strong likelihood that they will penalize Uber for

4    extremely disturbing events unrelated to the Plaintiff's claims here. *See, e.g.*, *In re Seroquel Prods.*

5    *Liab. Litig.*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) ("[A] jury might be more inclined to abdicate

6    its responsibilities and defer to the negative decisions of . . . foreign regulators . . . [which] would

7    unfairly prejudice the [defendant].").

8        ***Second***, the women-matching program in Saudi Arabia is similarly irrelevant because that

9    initiative arises out of the unique cultural and legal context of that society. The JCCP court was

10   incorrect to conclude that the existence of such a program in Saudi Arabia "goes to the feasibility of

11   that asserted safety measure" in the United States, JCCP Order at 57, because whether such an

12   initiative is feasible in Saudi Arabia has no bearing on whether it is feasible in the United States.[6] This

13   evidence is all the more irrelevant given that a third party (who is male) arranged for the ride that is

14   the subject of this lawsuit. There is no evidence that he would have selected a women-preferred option

15   had it been available. Moreover, any minimal probative value of this evidence would be substantially

16   outweighed by the risk of misleading the jury, undue delay, or wasting time, because Uber would need

17   to rebut the evidence by putting on a trial-within-a-trial on the cultural and political differences

18   between the U.S. and Saudi Arabia. *See* Fed. R. Evid. 403; *see also In re Seroquel*, 601 F. Supp. 2d at

19   1318 (evidence of foreign regulatory actions would require "a series of 'mini-trials'" to explain

20   "context concerning the regulatory schemes and decision-making processes"). For all of these reasons,

21   the evidence should be excluded.

22   **XIII.   REPTILE ARGUMENTS**

23       The Court should preclude Plaintiff's counsel from attempting, through argument to the jury

24   and examination of witnesses, to persuade jurors that they have the opportunity to improve the "safety"

25   of their community by rendering a verdict in favor of Plaintiff that will eliminate or mitigate Uber's

---

26   [6]    For example, evidence at trial will show that a major concern Uber had about a women-
27   matching program in the United States is that it would violate U.S. gender discrimination laws, a
     concern that obviously presents differently in Saudi Arabia.

28
DEFENDANTS' OMNIBUS MOTIONS IN LIMINE                    Case No. 3:23-md-03084-CRB

1    alleged "dangerous" or "unsafe" conduct. This type of argument—known as "Reptile Theory"—

2    should not be permitted because it violates the prohibition against "golden rule" arguments and

3    improperly rewrites governing law by ignoring the proper standard of care in negligence actions. The

4    JCCP court held that "Reptile arguments" and "'golden rule' argument[s]" will not be permitted,

5    describing them as "hitting below the belt." JCCP Order at 58. This Court should do the same.

6         The "Reptile Theory" argument unfairly suggests that the jury can prevent marketplace

7    platforms (like Uber) from endangering rider safety in the future, thereby encouraging the jury to

8    render a verdict based on bias, rather than an impartial consideration of the evidence. *See Retamosa v.*

9    *Target Corp.*, No. CV 19-5797 DSF (JCx), 2021 WL 4499236, at *1 (C.D. Cal. May 4, 2021) (Reptile

10   Theory arguments are "irrelevant to actual damages alleged in this case and have a substantial

11   likelihood of unfairly prejudicing the jury") (citation omitted). Such an argument is no different from

12   the "golden rule" argument—i.e., that jurors should put themselves in the position of the plaintiff—

13   which has been "universally condemned because it encourages the jury to depart from neutrality."

14   *J.W. v. City of Oxnard*, No. CV 07-06191 CAS (SHx), 2008 WL 4810298, at *8 (C.D. Cal. Oct. 27,

15   2008) (citation omitted). The prohibition against these types of arguments applies to claims for both

16   compensatory damages and punitive damages. *See Teague v. Remington Arms Co.*, No. CV 18-184-

17   M-DLC, 2022 U.S. Dist. LEXIS 211757, at *45 (D. Mont. Nov. 22, 2022) (granting motion to exclude

18   reptile arguments in case involving punitive damages because they "encourage[] jurors to exercise

19   personal bias") (citation omitted).

20        "Reptile Theory" rhetoric also improperly urges the jury to disregard the pertinent legal

21   standards governing negligence actions and to instead focus on amorphous and irrelevant community

22   safety concerns. *See, e.g.*, *Valles v. Mueting*, No. LACV169198, 2018 WL 6515402, at *6 (Iowa Dist.

23   Ct. Oct. 25, 2018) (trial order) ("'[r]eptile' tactics" improperly "emphasiz[e] that the jury has the power

24   to protect their own safety, the safety of their loved ones, and their communities through the discussion

25   of improper standards/rules not otherwise applicable"). Indeed, the defining purpose behind "Reptile

26   Theory" tactics is to imply to jurors that a defense verdict will make them and their family less safe.

27   Although "absolute safety" is not the standard of care for negligence actions under the applicable law,

28

DEFENDANTS' OMNIBUS MOTIONS IN LIMINE                    Case No. 3:23-md-03084-CRB

the Reptile Theory seeks to impose liability whenever a defendant chooses any option that does not constitute "the safest possible choice," without regard to other reasonable choices under the particular circumstances of the case. This tactic serves to dilute a plaintiff's burden by requiring her to prove only that the defendant did not act in the "safest way possible." Accordingly, it should be barred.

## XIV.  LOBBYING EFFORTS (INCLUDING AB 5 AND PROP 22)

The Court should exclude any evidence or argument relating to lobbying efforts by Uber, including contributions related to either California Assembly Bill 5 or Proposition 22, addressing whether rideshare drivers should be classified as independent contractors or employees. *See, e.g.*, 3/20/2025 J. Burke Dep. 42:5-45:24 (Ex. 8) (asking witness how much Uber spent on Proposition 22). The JCCP court granted a similar motion to exclude such evidence for lack of relevance. JCCP Order at 59. In so ruling, the court relied on the *Noerr-Pennington* doctrine, explaining that "[i]t cannot be a violation of a party's duty of care to lobby for laws and regulations, which is absolutely protected by the First Amendment." *Id.* (quoting Order Denying Motion to Compel Lobbying Documents).

That ruling was correct. "The *Noerr-Pennington* doctrine has been extended to preclude virtually all civil liability for a defendant's petitioning activities before not just courts, but also before administrative and other governmental agencies." *People ex rel. Gallegos v. Pac. Lumber Co.*, 158 Cal. App. 4th 950, 959, 964 (2008), *as modified* (Feb. 1, 2008). Accordingly, the evidence is inadmissible. *Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 11468934, at *21 (E.D. Tex. Oct. 5, 2010) ("[E]vidence of Defendants' lobbying activities would risk chilling the First Amendment activities of Defendants and others."); *U.S. Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1171 (S.D.N.Y. 1986) ("The low probative value of this [lobbying] evidence is substantially outweighed by the defendants' strong interest in preserving their First Amendment rights to petition Congress."); *Med. Mut. of Ohio v. Air Evac EMS, Inc.*, No. 1:16 CV 80, 2019 WL 4573700, at *3 (N.D. Ohio Sept. 20, 2019) (excluding evidence of lobbying related to air ambulance regulations as irrelevant to breach-of-contract case).

## XV.  ACTIONS BY UBER TO SUE, CROSS-CLAIM, DISMISS CROSS-CLAIM, OR HELP ANY DRIVER OBTAIN COUNSEL

The Court should exclude any evidence or argument suggesting that Uber has ever sued any

15

driver at issue in these or other cases, dismissed a suit against any driver, or assisted any driver in obtaining counsel. The JCCP court excluded this evidence, holding that "[w]hether or not a driver is or was a party, and Uber's litigation strategy in that regard, has no bearing on any issue legitimately before the jury." JCCP Order at 59 (citations omitted). Uber respectfully urges this Court to do the same. Not only is such evidence utterly irrelevant, as the JCCP court recognized, but it is also unduly prejudicial. The only purpose served by introducing such evidence would be to unfairly suggest that: (1) Uber admitted drivers acted inappropriately by suing them; or (2) Uber somehow condones sexual assault because it obtained legal help for certain drivers. In addition, if such evidence were introduced by Plaintiff, Uber would have to present its own rebuttal evidence, leading to a series of mini-trials over collateral issues. For these reasons, too, the evidence should be excluded.

## XVI.    SUPPOSED INADEQUACY OF BACKGROUND CHECKS

Plaintiffs have repeatedly questioned company witnesses about the supposed inadequacies of screening methods used by Uber and Uber's third-party vendors. *See, e.g.*, 6/30/25 Nilles Dep. 107:20-108:5; 118:4-10; 123:4-6; 124:4-5; 124:10-12; 124:14-16; 129:12-17; 141:17-18 (Ex. 7). The Court should exclude any evidence or argument relating to any purported inadequacies of the background checks performed on drivers who use the Uber platform because there is no evidence that the driver in this case, Hassan Turay, had a criminal record or other disqualifying information that was not identified in Uber's background checks. The JCCP court did not permit evidence on alternative background check methods in light of Plaintiffs' failure to identify evidence that different background checks could have prevented their injuries. JCCP MSJ Order at 20 n.19 (Ex. 9) ("The purpose of a trial is to determine whether Uber's negligence caused a given Plaintiff's injuries, not to conduct a referendum on whether its corporate practices could or should be improved."). The Court should similarly exclude such evidence here.

Challenges to the adequacy of background checks are irrelevant absent evidence tying any such inadequacies to Mr. Turay himself. Here, Plaintiff's own background check expert admitted that he did not uncover any criminal convictions or other disqualifying information for Mr. Turay. *See* 10/23/2025 Sawyer Dep. 243:7-16, 244:5-9 (Ex. 10). He further admitted that he had no evidence that

any of Plaintiff's additional proposed screening measures would have uncovered a criminal conviction or other disqualifying information for Mr. Turay. *See id.* 244:10-245:1 (social media screening); *id.* 249:18-250:7 (foreign criminal background search); *id.* 252:4-14 (fingerprinting); *id.* 256:11-22 (longer lookback period); *id.* 356:14-22 (interview); and *id.* 356:23-357:8 (drug test, employment verification, education verification, and warrant search). Because Plaintiff cannot show that Mr. Turay had a criminal conviction or disqualifying information—or that any of Plaintiff's suggested screening measures would have uncovered such information—evidence regarding the sufficiency of Uber's background checks is irrelevant.

## XVII.  THIRD-PARTY REPORTS (INCLUDING GIULIANI AND HOLDER)

The Court should exclude reports drafted by third parties on Uber's behalf, including, but not limited to: (1) a 2014 report regarding Uber's background check and safety processes by Giuliani Partners LLC, a security consulting firm founded by Rudy Giuliani (the "Giuliani Report"); and (2) a 2017 report drafted by Covington & Burling LLP, the law firm of former U.S. Attorney General Eric Holder (the "Holder Report"), in response to claims of sexual harassment by a software engineer, which made recommendations about fostering a more inclusive company culture. The JCCP court granted a similar motion in substantial part. *See* JCCP Order at 60.

***First***, the reports are hearsay not falling within any exception. *See* Fed. R. Evid. 801, 802. They also contain hearsay-within-hearsay because, for example, the Holder Report predicated its conclusions on interviews with more than 200 employees. *See, e.g., D.I. Eng'g Corp. v. Nippon Express USA, (Illinois), Inc.*, No. 96 Civ. 6843 LMM, 2000 WL 1218410, at *3 (S.D.N.Y. Aug. 28, 2000) (excluding as hearsay a third-party report with findings based on information obtained from others); *Pakootas v. Teck Cominco Metals, Ltd.*, No. CV-04-256-LRS, 2012 WL 12862948, at *1 (E.D. Wash. June 13, 2012) ("[T]he reports present hearsay from third parties.").

***Second***, the Giuliani and Holder Reports are irrelevant. *See* Fed. R. Evid. 401. As to the Holder Report, Uber's corporate culture plainly has no bearing on whether Uber is responsible for or acted negligently with respect to the alleged actions of the independent third-party driver in this case. As to the Giuliani Report, the general and subjective conclusions about Uber's background check and safety-

related processes—as they existed in 2014—have no bearing on whether the *specific* safety checks that Uber conducted on the driver in this case were so inadequate as to have caused Plaintiff's alleged injuries.

*Third*, the Court should exclude these reports under Federal Rule of Evidence 403. Jurors may treat these reports as unduly authoritative and may improperly impose liability on Uber due to perceived deficiencies identified in the reports. *See, e.g.*, *Coach, Inc. v. Citi Trends, Inc.*, No. CV 17-4775 DMG (KSx), 2019 WL 6354367, at *3 (C.D. Cal. Oct. 23, 2019) (excluding third-party opinion due to danger that the jury would "place outsized weight" on it). Additionally, both Mr. Giuliani and Mr. Holder are political figures, and jurors may be biased against Uber due to a perceived affiliation with these men. (The danger is compounded in the case of Mr. Giuliani, who has himself faced accusations of sexual harassment.)

*Fourth*, the Holder Report is inadmissible because it constitutes evidence of subsequent remedial measures. *See* Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . negligence [or] culpable conduct."). As noted above, Uber commissioned this report following allegations of sexual harassment by an Uber engineer, and Uber ultimately adopted the report's recommendations on how to foster a corporate culture where such incidents are less likely to occur. Rule 407 therefore bars Plaintiff from introducing the Holder Report or its recommendations to prove Uber's negligence or culpability.[7]

## XVIII. GOVERNMENT INVESTIGATIONS AND CONSENT DECREES

The Court should preclude Plaintiff from introducing evidence related to investigations of Uber, including, but not limited to: (a) Congressional investigations; (b) actions brought by federal executive agencies; and (c) actions by the California Public Utilities Commission ("CPUC") and any resulting settlements or fines paid to those regulatory bodies. The JCCP court granted a similar motion

---

[7] The JCCP court permitted testimony "to the extent that Uber adopted the recommendations in the Holder Report and they are relevant to issues in the case." JCCP Order at 60. But even admitting evidence of the Report for that limited purpose would be error here under Federal Rule of Evidence 407, an argument the JCCP court did not consider.

as unopposed. JCCP Order at 60. The Court should exclude this evidence as well.

*First*, evidence relating to settlements or corresponding negotiations with the CPUC or any other body should be excluded under Fed. R. Evid. 408. *See, e.g.*, *Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633 JLS (CAB), 2008 WL 8929013, at *4 (S.D. Cal. July 8, 2008) (excluding documents containing the terms of settlement between defendant and the California Department of Insurance pursuant to Rule 408). **Second**, evidence relating to these investigations and regulatory actions is also irrelevant because it is not probative of Plaintiff's claims in any way. **Third**, even if other government investigations had any marginal relevance, they would still be unduly prejudicial because admitting the evidence "would run the risk of 'permitting the jurors to succumb to the simplistic reasoning that if the defendant was accused of the conduct, it probably or actually occurred.'" *SEC v. Jensen*, 835 F.3d 1100, 1116 (9th Cir. 2016) (affirming district court's exclusion of consent decree and injunction) (citation omitted); *see also In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 10086747, at *3 (N.D. Cal. Dec. 16, 2010) (granting motions to exclude evidence of government investigations). Accordingly, the Court should exclude any evidence related to other government investigations or settlements.

## XIX.    ATTENDANCE AT TRIAL (SIZE OF DEFENSE TEAM OR ABSENCE OF SPECIFIC PEOPLE)

The Court should exclude any evidence, reference or argument relating to trial attendance, including, but not limited to: (a) the size and makeup of the defense counsel team; and/or (b) the presence or absence of any corporate representative(s) at trial. This evidence is both irrelevant and unfairly prejudicial. The JCCP court granted a similar motion in part as unopposed "with the caveat that Plaintiffs may comment if appropriate on Uber's failure to call a specific witness." JCCP Order at 60-61. This Court should exclude this evidence in its entirety.

Courts routinely exclude evidence or argument relating to the size and makeup of a party's legal team because it is both "irrelevant and unduly prejudicial[.]" *Nielsen v. Cal. Cap. Ins. Co.*, No. 2:22-CV-0177-TOR, 2023 WL 11091242, at *3 (E.D. Wash. Sept. 29, 2023); *see, e.g.*, *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, No. 2:10-CV-1494 JCM (GWF), 2017 WL 4038858, at *5 (D. Nev. Sept. 13, 2017) (granting motion to exclude evidence of size of defense counsel's law

19

firm; plaintiffs could not explain "why the size of defendants' retained counsel would be probative of or material to plaintiffs' claims"). The size and makeup of Uber's defense team is not probative of Plaintiff's claims; rather, the only conceivable purpose for such commentary would be to falsely suggest that Uber is better represented than Plaintiff, which would unfairly generate sympathy for Plaintiff in the eyes of the jurors.

The same principles preclude the admission of any evidence or argument regarding the presence, absence, and identity of Uber's corporate representatives at trial. "There is no requirement that a party or a corporate representative be present at trial." *Ray v. Ford Motor Co.*, No. 3:07CV175-WHA-TFM, 2011 WL 6183099, at *6 (M.D. Ala. Dec. 13, 2011). And while the failure to call a fact witness might be probative in some cases, evidence concerning the presence (or lack thereof) of a corporate representative is irrelevant because it "will not make the existence of any fact necessary to the Plaintiff's claims any more or less probable." *Id*. Moreover, any slight probative value "would be substantially outweighed by the danger of unfair prejudice and jury confusion." *Id*.; *see also Bryant v. 4283791 Canada*, No. 16-CV-10803, 2018 WL 7891219, at *1 (E.D. Mich. May 4, 2018) (granting motion *in limine* to exclude evidence concerning presence or absence of corporate representative at trial). Any remarks about the absence of a corporate representative at trial would unfairly suggest that such a witness had something to hide or would have hurt Uber's case, which would be unduly prejudicial. For these reasons, the Court should bar any evidence or argument regarding the size of Uber's legal team and/or any particular corporate representative's non-attendance at trial.

## XX.    DISCOVERY & OTHER NON-TRIAL DISPUTES

The Court should exclude any evidence or argument relating to any discovery disputes, including, but not limited to, any Court order regarding document productions, or alleged discovery deficiencies or privilege assertions. This evidence is both irrelevant and unfairly prejudicial and confusing. The JCCP court "generally agree[d] that these topics should not be the subject of examination or argument at trial." JCCP Order at 61. This Court should do the same.

## XXI.   ANY SUGGESTION THAT MR. TURAY SUBMITTED A FAKE ID TO UBER/CHECKR

The Court should exclude any evidence, argument, or suggestion that the driver in this case,

20

1    Hassan Turay, submitted a fake 2008 driver's license to access the Uber platform in 2016. Mr. Turay

2    testified that he moved to the United States in 2013. 7/23/2025 Turay Dep. 14:8-12 (Ex. 11). Mr. Turay

3    signed-up on the Uber platform in 2016. On December 7, 2016, a third-party vendor created a report

4    for the driver showing that he had insufficient driving history because his license had been issued in

5    October 2016.[8] Ex. 1855 to Nilles Dep. (Aug. 7, 2025, Bellwether Wave 1) (Ex. 12). On December

6    19, 2016, the vendor sent the driver an email stating that the vendor would report to Uber, "License

7    status: Cancelled." CHECKR000891 (Ex. 13). On December 22, 2016, Mr. Turay called the vendor

8    regarding his driver's license status. CHECKR000894 (Ex. 14). That same day, the vendor issued a

9    report referencing a driver's license for Mr. Turay that first issued in 2008. CHECKR000742 at 744-

10   745 (Ex. 15).

11       Uber anticipates that Plaintiff will seek to suggest that the driver in this case submitted a fake

12   2008 driver's license to access the Uber platform in 2016. *See, e.g.*, 8/7/2025 Nilles Dep. 325:9-10

13   (Ex. 16) (Q: "Do you think people can get driver's licenses in a country they have not moved to yet?").

14   The Court should exclude any such suggestion because (1) there is no evidence to support this

15   contention; (2) whether Mr. Turay submitted a fake driver's license is irrelevant; and (3) any limited

16   probative value would be substantially outweighed by the danger of unfair prejudice and misleading

17   the jury.

18       ***First***, any suggestion that Mr. Turay submitted a fake driver's license to Uber is purely

19   speculative and should be excluded. Plaintiffs' bellwether counsel admitted that he had never seen the

20   supposed 2008 driver's license at issue. 8/7/2025 Nilles Dep. 319:2-6. Furthermore, Plaintiff's counsel

21   had the opportunity to ask Mr. Turay about the alleged 2008 driver's license at Mr. Turay's deposition

22   and chose not to do so. And Checkr no longer has any relevant documents in its possession. Thus,

23   there is no way to know if the notation is correct or what actually occurred.

24       ***Second***, any testimony or argument about a supposed fake driver's license is irrelevant. *See*

25

26   _____

     [8]    Uber requires at least one year of driving history for individuals over the age of twenty-five.
27   *See*        "What        is        insufficient        licensing        history?"        Uber,
     https://www.uber.com/us/en/drive/requirements/how-to-provide-proof-of-licensing-history/,    last
28   accessed Dec. 11, 2025.

DEFENDANTS' OMNIBUS MOTIONS IN LIMINE                    Case No. 3:23-md-03084-CRB

Fed. R. Evid. 401 (evidence is relevant only if it tends to make a factor of consequence more or less probable); Fed. R. Evid. 402 (irrelevant evidence is inadmissible); *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955) ("The purpose of evidence is to prove or disprove some issue in the cause on trial . . . it has no place in the trial and is either immaterial or collateral to the inquiry."). Plaintiffs do not dispute that Mr. Turay submitted a valid 2016 driver's license when he was initially given access to the Uber platform. Therefore, by 2023, Mr. Turay had possessed a driver's license for at least seven years—well over the one-year minimum. Whether he had sufficient driving history in 2013 is not relevant to whether he could drive on the Uber platform in 2023 and should therefore be excluded.

*Third*, any limited probative value would be substantially outweighed by the danger of unfair prejudice and misleading the jury. *See* Fed. R. Evid. 403. When "evidence is of very slight if any probative value, even a modest likelihood of unfair prejudice or a small risk of misleading the jury will justify excluding that evidence." *United States v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011) (citation and quotations omitted). An unsubstantiated suggestion that Mr. Turay submitted a false driver's license in 2016 would be unduly prejudicial because it is likely to adversely affect the jury's attitude toward Mr. Turay's testimony. *See United States v. Yazzie*, 59 F.3d 807, 811 (9th Cir. 1995). It may also mislead the jurors into thinking that Uber's policies prohibited Mr. Turay from driving on the platform at the time of the incident when in fact he had at least seven years of driving history in 2023. Additionally, such speculation may mislead jurors about whether Uber's background process is sufficient, even though Plaintiff's background check expert admits that his own investigation did not uncover any criminal convictions or other disqualifying information for Mr. Turay. *See* Sawyer Dep. 243:7-16, 244:5-9. This, too, requires exclusion of the evidence.

## XXII.  PRIOR COMPLAINTS, INCIDENTS, ALLEGATIONS, POOR RATINGS, AND TEMPORARY RESTRICTIONS INVOLVING MR. TURAY

The Court should exclude any evidence or argument pertaining to unrelated complaints by riders involving Mr. Turay.

First, the Court should exclude complaints of a non-sexual nature for lack of relevance. *See, e.g.*, UBER-MDL3084-DFS00003702, Ex. 17 (Driver's use of a rental a car); UBER-MDL3084-DFS00003687 (Ex. 18) (interpersonal dispute over window use); UBER-MDL3084-DFS00003705, -

22

159699 (Exs. 19, 26) (complaints on condition of Mr. Turay's car) and UBER-MDL3084-DFS00003707 (Ex. 21) (dangerous driving allegations). The JCCP court granted a similar motion involving non-sexual complaints against drivers at issue in the state court bellwether cases, reasoning that none of the incidents "has any relevance to the issues" and one of the incidents "pose[d] an obvious risk of undue prejudice." JCCP Order at 56. The same is true here.

The Court should also exclude evidence of allegations of sexual misconduct against Mr. Turay because the allegations came from riders who were found to have serially abused Uber's complaint system to procure refunds: UBER-MDL3084-DFS00003690 (Ex. 22) (male rider complaint alleging sexual assault by Mr. Turay); UBER-MDL3084-DFS00159669 (Ex. 20) (nearly identical complaint made by same male rider against different driver); UBER-MDL3084-DFS00003711 (Ex. 23) (Uber investigation finding same male rider made serial identical claims against other drivers); UBER-MDL3084-DFS00216657 (Ex. 24) (series of various claims made over short time period by single female rider against different drivers who use the Uber and Uber Eats platforms, including complaints identical to one made against Mr. Turay); *see also* 8/26/2025 G. Brown Dep. 500:13-501:8 (Ex. 25) (testimony identifying same female rider's claims of suggestive comments as support abuse). Similarly, Uber's precautionary action to inactivate Mr. Turay's account while it investigated the specious sexual assault claim should likewise be excluded. *See* UBER-MDL3084-DFS00159669 (Ex. 20) (Uber communications with Mr. Turay showing temporary hold resolved after investigation).

*First*, the evidence is irrelevant because Uber determined the allegations were specious. *See, e.g.*, *Griffiths v. Tucson, City of*, No. CV 12-00430-TUC-RM, 2016 WL 7227553, at *4 (D. Ariz. Jan. 25, 2016) (excluding discussion of past sexual comments by defendant where the plaintiff offered no constructive evidence such comments actually occurred). *Second*, the evidence is barred by Fed. R. Evid. 404 because it would unfairly (and falsely) suggest that Mr. Turay had a propensity to engage in bad conduct. *Hendricks v. A-Z Women's Ctr.*, No. 2:03-CV-1338-RCJ-LRL, 2007 WL 9734381, at *4 (D. Nev. May 22, 2007) (excluding evidence of alleged misconduct committed by doctor against other patients because the evidence "is not admissible to prove the character of a person in order to show action in conformity therewith"). *Third*, any marginal probative value would be vastly

1  outweighed by the danger of "undue prejudice, confusing the issues, [and] misleading the jury." Fed.

2  R. Evid. 403. The only conceivable purpose for admitting this evidence would be to paint Mr. Turay

3  (falsely) as a bad actor and to invite the jury to find Uber liable simply because the driver has been

4  alleged to have engaged in other purported misconduct. This would not only be highly prejudicial; it

5  would confuse jurors and distract them from the facts and circumstances of this case, ultimately

6  requiring time-intensive "mini-trials" on collateral matters, such as support abuse and each of the

7  complainants' practices of making baseless accusations against multiple drivers. *See Ernst v. HB*

8  *Aspen, Inc.*, No. CV 07-1070 CBM (CWx), 2008 WL 11338185, at *2 (C.D. Cal. Mar. 24, 2008)

9  (excluding co-worker complaints against plaintiff as "both irrelevant and unduly prejudicial,"

10  especially where defendant did not rely on complaints to terminate plaintiff's employment).

11         For these reasons, evidence pertaining to unrelated complaints by riders involving Mr. Turay

12  should be excluded.

13  **XXIII. MR. TURAY'S NATIONALITY OR IMMIGRATION STATUS.**

14         The Court should exclude any evidence or argument related to the nationality, ethnicity, or

15  immigration status of Mr. Turay. This evidence should be excluded because it is not relevant, and any

16  limited probative value would be substantially outweighed by the danger of unfair prejudice. The

17  JCCP court granted a substantially identical motion. *See* JCCP Order at 62.

18         ***First***, the evidence is not relevant. Mr. Turay's nationality, ethnicity, or immigration status has

19  nothing to do with whether he committed sexual assault. There is no allegation that Mr. Turay was in

20  the United States illegally at the time of the alleged incident or that he did not have the proper

21  documentation that is required under applicable law to access Uber's platform. Additionally, this topic

22  has no bearing on whether *Uber* violated any purported duties to Plaintiff, rendering it entirely

23  collateral to Plaintiff's claims. *See United States v. Lopez*, 991 F.2d 804, 1993 WL 118149, at *5 (9th

24  Cir. Apr. 15, 1993) (holding that "the district court erred in allowing, over [defendant's] objection, the

25  introduction of evidence that he is a Colombian citizen" since "[t]he evidence of [defendant's]

26  nationality was plainly irrelevant to identifying him as the man described by the three government

27  witnesses").

28

**Second**, the evidence is enormously prejudicial because it is intended to appeal to any jurors' potential xenophobic inclinations. "[T]he potential probative value of any information regarding" the drivers' nationality, ethnicity, or immigration status "is outweighed by its unfairly prejudicial effect" due to the potential for sowing anti-immigration prejudice and bias. *Navarro v. City of Fontana*, No. EDCV 09-01525-VAP (DTBx), 2011 WL 13124691, at *2 (C.D. Cal. Mar. 24, 2011) (granting motion *in limine* to exclude "evidence that Plaintiff is a legal permanent resident of the United States and a citizen of Mexico"); *see also Abouelmakarem v. Mssminja Inc.*, No. 21-cv-10625 (LJL), 2023 WL 4561765, at *3 (S.D.N.Y. July 17, 2023) (granting "motion in limine . . . [to] exclude all testimony and evidence relating to [p]laintiff's citizenship and immigration status as irrelevant and unduly prejudicial"). Any such prejudice may then be transposed onto Uber. Accordingly, evidence concerning Mr. Turay's nationality, ethnicity, or immigration status should be excluded.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should exclude the matters discussed herein from trial.

DATED: December 16, 2025                    Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## PROOF OF SERVICE

I hereby certify that on December 16, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Laura Vartain Horn*
Laura Vartain Horn