# EXHIBIT 2

 **USA TODAY**

---

**INVESTIGATIONS**                                          Uber    Add Topic

# Uber shares personal rider information in sexual assault cases with a claims company without informing alleged victims

**Tricia L. Nadolny** and **Cara Kelly** USA TODAY
Published 1:33 p.m. ET Oct. 4, 2019 | **Updated 10:56 a.m. ET Oct. 9, 2019**

Uber employs a third-party claims company to investigate and settle cases of sexual assault by its drivers and has handed off riders' personal information without seeking their permission, or even informing them.

The ride-hailing company says the goal is to "facilitate support for victims." But women interviewed by USA TODAY were caught off guard to hear from a claims adjuster and say they were confused, even unsettled, by the repeated calls and vague messages.

In one case, a woman received a call from Crawford Global Technical Services three days after she reported being raped by a driver in Sacramento, California in August.

"I'm like, 'Who the hell are you? I'm already talking to so many people right now,'" Madison McArthur, 22, recalls thinking. " 'I've already talked to Uber. Why are you calling me?'"

She brushed him off, but the man was persistent. He called or emailed five times over nine days, according to McArthur's phone records and emails.

EXHIBIT nys
2717
4/10/25 Hasbun
PENGAD 800-631-6989

"We haven't been able to reach each other," the man said in an Aug. 21 voicemail. "I was hoping to see if you were available this afternoon."

In a statement, Uber spokesman Andrew Hasbun said it is common practice for companies to hire third-party claims administrators like Crawford.

"We have long believed that victims would feel more comfortable working with a 3rd party rather than Uber directly," he wrote.

Uber, however, acknowledged McArthur's case was mishandled and said she should not have been contacted so soon.

In response to USA TODAY's findings, the company vowed to change its practices to inform people who report incidents that they might be hearing from Crawford. It also said it has finalized plans to launch a "survivor resource hotline" staffed by an anti-sexual violence nonprofit, RAINN, which will handle requests for counseling and other support instead of Crawford.

"We strive to create a process that is respectful and survivor-centric," Uber said in a statement. "Any indication otherwise is deeply troubling."

**Read more:**  Rape, assault allegations mount against Lyft in what new suit calls 'sexual predator crisis'

**Read more:**  'Is everything OK?' Uber rolls out RideCheck safety tool nationwide

Uber and its main competitor in the ride-hailing market, Lyft, have come under increasing scrutiny for how they screen drivers and respond to reports of sexual assault from customers. The companies are typically guarded with the personal data of their customers, including declining in most cases to provide information to police without a subpoena.

Women have accused the companies of being slow to remove drivers who face serious accusations, insensitive in their communications with victims, and intent on protecting their reputation over that of riders.

In the three Crawford-related cases provided by USA TODAY, Uber said the drivers were removed from the app as soon as Uber became aware of the allegations and are no longer working for the company.

Asked to describe the terms of Crawford's settlements, Uber said that some limit the rider's ability to later sue the company. In some cases, it said, Uber itself provides money to victims for counseling, and in those cases the money comes with no strings attached.

The company said that prior to May 2018, settlements brokered by Crawford limited a woman's ability to talk about her experience publicly, too. In a policy change announced that month, Uber said it would stop requiring non-disclosure clauses.

Two of the women who spoke with USA TODAY said that wasn't clear from the messages they received from Crawford, which were opaque.

McArthur said she believes Crawford contacted her so quickly because they wanted to secure a settlement before she had obtained a lawyer, hoping to keep what had happened to her under wraps.

"When somebody is just going through this… why would you feel the need to go after them in such an aggressive manner?" McArthur asked. "Unless you're trying to basically attack and silence the victim."

Crawford, which declined to comment generally for this story, is among the largest companies in the world providing claims management services to self-insured businesses. Its Global Technical Services division, whose employees contacted the women interviewed by USA TODAY, is billed as handling "large, complex and specialty claims," and employing "nearly 500 of the world's most experienced senior adjusters and industry specialists."

Uber said it has contracted with Crawford for five years and never received a complaint about the company's conduct. It declined to say how many sexual assault

or harassment claims Crawford has settled or to disclose the amounts of settlements.

Uber said it decides whether to send a report to Crawford based on various factors including whether a customer requests compensation or other kinds of support. Two of the three women interviewed by USA TODAY said they made no such request, the other asked for counseling.

USA TODAY reporters reviewed a handful of emails and one voicemail left by Crawford staff. The messages were light in tone and thin on details, most only a few sentences long.

The adjusters introduced Crawford as a "third party administrator handling claims against Uber" or "a third party administrator for Uber's general liability insurance company." They said they were "investigating," or looking to "confirm the facts of the incident and explain the claims process" and left a call back number.

Attorney Mike Bomberger represents the women who spoke with USA TODAY about Crawford, along with many other women who report being sexually assaulted by ride-hailing drivers. He called the language in the emails "a complete misrepresentation" meant to mislead women who would be leery of communicating with Uber.

"They're not a third party handling claims against Uber, they're a third party handling claims for Uber," he said.

None of the women interviewed by USA TODAY spoke with the agents about what had happened to them. For that reason, they don't know what settling their claim would have entailed. None were explicitly offered a financial settlement in their brief communications.

But the agents' persistence, and the timing of their contact, left some uneasy about the company's intentions. Makenna Simianer, 21, was contacted by Crawford on the

same day a California judge agreed to allow press coverage of a hearing in her driver's criminal case.

On April 26, Simianer ordered an Uber to her dad's house in Santa Maria, California. Instead, the driver detoured to his house and brought a shot of liquor out to the car for her. From there her memory comes in snippets: walking into a motel room, him on top of her, waking up to him sitting in a chair. She alleges he drugged and assaulted her.

The Crawford agent wrote in an email that he was investigating her May 22 Uber ride. Except that wasn't the right date. It was the date her case was first covered by the media after the driver, Shadi Abdul Aziz, was arrested at the Mexico border. He was extradited to the Santa Barbara County Jail where he has pleaded not guilty and is awaiting trial.

Simianer didn't reply to Crawford. Then, last month, a family friend relayed that a man in a suit showed up at her father's house.

Simianer said the friend told her that the man introduced himself as an Uber representative,  said he was looking for information about Simianer and her case, and offered him $10,000 to work with Uber against Simianer.

Simianer says she received a call from a Crawford representative within a few days. The timing makes her suspect that the man worked for Crawford.

Uber and Crawford, in statements responding to Simianer's case, said it is neither company's policy to conduct in-person visits. Crawford said it spoke to "all Crawford employees involved in this claim and have confirmed that no one from our company ever made an in person visit to the victim and claimant." Uber said no one from its company visited Simianer's father's house, either.

"We vehemently deny this disturbing allegation," Uber said in its statement.

Uber said it forwarded Simianer's case to Crawford after she asked for financial support for therapy.

Simianer said she did ask Uber to pay for her counseling. She sent the request in frustration, she said, after receiving an email refunding her $15.30 ride that included a photo of her alleged rapist, his 4.85 star rating, and a note that he was known for "excellent service."

Simianer said she had no idea that is what the Crawford representative was calling about.

"He could have told me, 'I would like to help you out and help you with therapy.' He could have given me at least a hint of what he wanted to discuss," she said. "But from what was in the email and what came out of his mouth, all he wanted to hear was what happened."

In another case reviewed by USA TODAY, 27-year-old Haley Maki-Dearsan says she was repeatedly groped and propositioned for sex by her Uber driver during a Feb.19 trip in Ventura, California.

Maki-Dearsan's grandmother had ordered the car for her that day. Uber said the grandmother later reported the incident to the company. Uber decided to send the case to Crawford, which contacted the grandmother.

"I was following up regarding a recent incident you reported while traveling in an Uber," the claims representative wrote in a March 22 email. He emailed again a week later.

The grandmother said she largely ignored the emails. Her granddaughter said she did finally call Crawford in September, trying to get more information; Uber said Crawford did not engage with her further because by then she had obtained a lawyer.

Maki-Dearsan has vowed that the February trip will be her last with Uber.

"It really, really screwed me up," she said. "Let me tell you. I couldn't go outside for a really long time because I was afraid of people, like guys looking at me."

Ann Burdges, president of the board of directors at End Violence Against Women International, said it troubled her that Crawford would contact someone other than a victim, regardless of the circumstances.

"Based on the nature of the offense that is being reported, it is concerning that there is perhaps not a tighter, clearer policy that would limit and guide communications in a... private, confidential fashion that would protect the victim," she said.

Burdges, a former police officer, and others also questioned whether Crawford's involvement could impact criminal investigations.

"You can imagine a defense attorney going into court and saying. 'Three days after you made this accusation you accepted such and such amount of money from this company,' " said Brian Berkey, an assistant professor of legal studies and business ethics at University of Pennsylvania's Wharton School of Business. "Unfortunately, when these kinds of things happen it often affects the extent to which complainants are treated as credible."

McArthur said she was in no way ready to talk to a claims adjuster three days after her assault. She said she was still in shock, struggling to process what had occurred.

McArthur said she had taken an Uber to the bar that night, knowing that she would be drinking, and ordered a car to take her home at about 1:45 a.m.

Along the way, she dozed off. She woke to find the driver on top of her, raping her. After the man returned to the front seat, McArthur turned on her phone's camera. USA TODAY has reviewed the video.

"How did we end up pulled over on the side of the road?" she asks.

"Because you were sleeping a long time," he responds.

Case 3:23-md-03084-CRB Uber uses claims company for settlements of sexual assault cases outside Document 46-86 Filed 12/16/25 Page 9 of 10

At her home, as McArthur walks toward the front door, he calls after her, "I'm sorry."

Over the coming days, McArthur shared her story again and again, with her roommates, the nurses, family and the police.

She also gave a statement to an employee from Uber's safety team. So, she was confused and frustrated when the Crawford representative asked her to repeat it again.

She ignored the man's calls and emails over the next several weeks. But when he called on Sept. 18, McArthur answered and pressed him to tell her more about what he wanted.

"He said, 'I want to discuss the details with you and see if we can come to a settlement,'" she said. "And I was like, 'Oh, I think you need to talk to my lawyers then.'"

She says she hasn't heard from him since.

*Tricia L. Nadolny is a reporter on the USA Today investigations team. She can be reached at tnadolny@usatoday.com or @TriciaNadolny. Cara Kelly is a reporter on the USA TODAY investigations team, focusing primarily on pop culture, consumer news and sexual violence. Contact her at carakelly@usatoday.com, @carareports or CaraKelly on WhatsApp.*