# EXHIBIT 4

```
 1               UNITED STATES DISTRICT COURT

 2    NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

 3   IN RE:                            :  CASE NO. 3:23-md-03084-CRB
     UBER TECHNOLOGIES, INC,           :
 4   PASSENGER SEXUAL ASSAULT          :
     LITIGATION                        :
 5

 6
           ***HIGHLY CONFIDENTIAL UNDER PROTECTIVE ORDER***
 7
              VIDEOTAPED DEPOSITION OF BROOKE ANDERSON
 8
                    SAN FRANCISCO, CALIFORNIA
 9
                      TUESDAY, MAY 6, 2025
10

11

12

13

14

15

16

17

18

19

20

21

22   REPORTED BY:

23   DEBBIE LEONARD, CSR, RDR, CRR

24   CSR NO. 14350

25   PAGES 1 to 351
```

1    broad sense, understanding when things go wrong or don't
2    follow the right process or whether a process might be
3    improved, it's important for an organization to -- to
4    understand that, to learn from it, and to take action to
5    improve it, also understanding that no organization has a
6    hundred percent record on these kinds of issues, because
7    the world is not a hundred percent safe.
8            But, yes, I think accountability means -- means
9    taking action to constantly improve safety in a broad
10   context, and I believe my organization values that.
11      Q    You used to be the global head -- or the head of
12   global safety communications, right?
13      A    Correct.
14      Q    And in your role as the head of global safety
15   communications, you've instructed your team to defend the
16   company but also know when to own mistakes, right?
17      A    Broadly.  Absolutely.  And what I mean by that,
18   again, not understanding -- not knowing if you're -- what
19   you're referencing specifically, but that sounds like
20   something I would say in the context of, you know,
21   defending the company and -- for example, from a story
22   that we're getting inquired upon that really is not about
23   Uber, and the facts make that clear and it's an error.
24   And we've dealt with quite a few stories that were --
25   that had inaccurate information that wasn't pertaining to

1     our platform.
2              So that would be an example of what I would tell
3     my team, "Hey, share the facts but, you know, defend the
4     company.  Our reputation really shouldn't be related to
5     that because it's not pertaining to Uber."  Or "just
6     share the facts so that they have a clear picture of what
7     happened."
8              I would argue that those are examples of things
9     that I would describe as defending the company.
10             And then on the other side of that issue, I
11    think I would -- if there was ever something -- a
12    situation where our process wasn't followed or something
13    didn't look right and it merited more review, I think
14    it's really important -- you know, I would want to make
15    sure that my team was an advocate in making sure that we
16    flagged it for the right teams to take action and improve
17    it, because that's part of my broad understanding for an
18    organization, that we would do our best to constantly
19    improve an important issue like safety, and also
20    understanding the world where we operate is not going to
21    be a hundred percent incident free.  That was very
22    apparent to me from -- from day one and even before I
23    came to Uber, when managing any -- any safety issue, that
24    not everything in the world is preventable.
25         Q   So my question to you was, in your role as the

1    Q    Okay.  Then you wrote, "Given that we're doing
2    millions of trips every day, the one-in-a-million
3    scenario happens more frequently."
4         Right?
5    A    That's right.
6    Q    You said, "We need to build a strong foundation
7    of positive and proactive safety PR to strengthen and
8    turn the corner on this narrative," right?
9    A    That's right.
10   Q    Then you said, "The challenge will be doing that
11   amidst the daily grind of responding to incidents,"
12   right?
13   A    Correct.
14   Q    Okay.  So let's see that in practice.
15        MR. SMITH:  If I could have tab 21.  This is
16   going to be Exhibit 691.
17        (Exhibit 691 marked for identification.)
18   BY MR. SMITH:
19   Q    This is a document that I've handed you as 691,
20   Exhibit 691.  It's UBER_JCCP_MDL_000878937.  And if you
21   flip to the first page of this document --
22   A    Okay.
23   Q    -- the -- the title of it is "2017 Stories
24   Squashed - U.S. Safety Team," right?
25   A    That's right.

```
 1        Q    Okay.  And there are, if you look at the
 2   pages -- I think it's actually page numbered -- looks
 3   like 12 pages to this document.  Right?
 4        A    That's right.
 5        Q    Okay.  So there are 12 pages of squashed stories
 6   here, right?
 7        A    Yes.  And I just want to --
 8        Q    And if we go to page 4, ending in 878940 --
 9        A    Okay.
10        Q    -- and you look down at number 5, Tampa, it
11   says, "Received call about an individual claiming he is
12   an Uber driver and trying to pick up women.  He is an
13   Uber driver and may have been trying to pick up women off
14   the app.  We didn't confirm that to the reporter but
15   emphasized our safety points and that Uber rides must be
16   requested through the app.
17             "Result:  Story killed."
18             Do you see that?
19        A    I do.
20        Q    All right.  Let's go to the bottom of the
21   page -- the next page, page 5 here.  It says, "Miami,"
22   number 12.
23             Do you see that?
24        A    I do.
25        Q    It says, "Miami - Man claimed that an Uber
```

```
 1                      C E R T I F I C A T E
 2
 3          I, Debbie Leonard, Certified Shorthand Reporter
 4   No. 14350 for the State of California, do hereby
 5   certify:
 6          That the foregoing deposition was taken before me
 7   at the time and place therein set forth, at which time
 8   the witness was put under oath by me; that the testimony
 9   of the witness and all objections made at the time of the
10   examination were recorded stenographically by me, were
11   thereafter transcribed by me by means of computer; and
12   that the foregoing is a true record of same.
13          I further certify that I am neither counsel for
14   nor related to any party to said action, nor in any way
15   interested in the outcome thereof.
16          IN WITNESS WHEREOF, I have subscribed my name
17   this 8th day of May, 2025.
18
19          *Debbie Leonard*
            _____
20          Debbie Leonard, CSR, RDR, CRR
            CSR NO. 14350
21
```