[Submitting counsel below]

UNITED STATES DISTRICT COURT

OF NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFF'S OPPOSITION TO UBER'S MOTION TO QUASH TRIAL DEPOSITIONS** |
| This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*,<br>N.D. Cal. No. 23-cv-06708<br>D. Ariz. No. 25-cv-4276 | Judge: Honorable Charles R. Breyer<br>Date:   TBD<br>Time:   TBD<br>Ctrm.:  6-17th Floor<br><br>**REDACTED** |

**INTRODUCTION**

As the Federal Rules encourage, Plaintiff sought to try this case through live testimony. *See* Fed. R. Civ. P. 43, advisory committee note, 1966 amendment. Her first choice is to call Mr. Fuldner, Ms. McDonald, and Mr. Wong live at trial. Uber earlier agreed to make "reasonable efforts" to produce Plaintiff's requested corporate witnesses, but now refuses to do so—while seeking to bring up to five corporate witnesses of its choosing. *See* Pl's Mot. re Corporate Witnesses (ECF 4654, 4656). Uber could moot this motion to quash by simply honoring the terms of its agreement and bringing these three witnesses live.

Since Uber will not do that, the next best option for the jury is trial depositions. Plaintiff seeks tight, clean, short trial cross examinations focused on the matters most pertinent to the *Dean* case. Uber would restrict Plaintiff and the jury to unfocused, scattered discovery deposition tape littered with evasive non-answers and baseless objections—conduct that would never happen live in a courtroom—and shared with JCCP lawyers pursuing different factual and legal theories. In addition, after the discovery depositions closed, Uber produced thousands of new and de-designated documents that Plaintiff has not yet had the opportunity to question the witnesses about. There is good cause for these trial depositions to go forward: Courtroom cross-examination is "the greatest legal engine ever invented for the discovery of truth." *Lilly v. Virginia*, 527 U.S. 116, 124 (1999). By reneging on its commitment and withholding these three witnesses, Uber deprives Plaintiff and the jury from using that tool. Trial depositions are the best option to cure that prejudice.

Plaintiff respectfully requests that the Court authorize trial depositions of these three witnesses and that either the Court or Judge Cisneros supervise them. Plaintiff noticed the depositions for December 22 (Fuldner and Wong) and 23 (McDonald), but if needed can reschedule for when the Court or Judge Cisneros is available.

**BACKGROUND**

Despite challenging the very existence of this MDL, Uber has reaped the efficiency benefits it provides. Uber's corporate witnesses faced only a few days of discovery deposition questioning across both the MDL and JCCP. MDL Counsel compressed into mere hours discovery of company conduct spanning more than a decade, including on technical topics. Despite Uber's assurances to

Plaintiffs' counsel and the Court that substantial completion of document production would be complete before depositions, relevant custodial documents poured in after depositions that could not be used to confront or rebut a witnesses' testimony. Nevertheless, Plaintiffs' counsel met their commitments under the deposition protocol and the Court's schedule, and completed Uber company discovery in preparation for the first Wave 1 bellwether trial.

Gus Fuldner, Katy McDonald, and Sunny Wong are Uber employees that testified as fact and 30(b)(6) or PMK witnesses in discovery in the MDL and JCCP. Uber greatly overstates the time for which these witnesses were deposed in this litigation (as opposed to the JCCP). Mr. Fuldner was deposed for one day in the MDL (March 27, 2025) and then an additional hour after Judge Cisneros found his testimony was non-responsive and evasive. Ms. McDonald, in her personal capacity, was deposed for fewer than four hours in the MDL (May 7, 2025). And Mr. Wong has been deposed as an MDL-wide 30(b)(6) witness as well as a case-specific 30(b)(6) witness on S-RAD issues in five bellwether cases, making a rote sum of hours misleading.

Each of these witnesses' depositions featured numerous speaking objections by counsel, coaching, and nonresponsive testimony, all of which wasted significant deposition time and make the video difficult to clip coherently for the jury.[1] Throughout the course of the litigation, Plaintiffs

---

[1] *See, e.g.,* **Ex. A** (Fuldner 3/26-27/25 Dep.) at 25:21-25 ▮▮▮); *id.* at 310:19-21 ▮▮▮); *see also id.* at 292:21-294:24 (▮▮▮), 421:8-422:24 (▮▮▮), 424:24-426:16; **Ex. B** (McDonald 5/7/25 Dep.) at 67:21-68:16 (▮▮▮); **Ex. C** (Wong 6/25/25 Dep.) at 94:5-12 (▮▮▮); *id.* at 154:6-21 ▮▮▮); *id.* at 136:23–144:25 (▮▮▮); **Ex. D** (Wong 10/14/25 Dep.) at 451:2-455:22 (▮▮▮); *id.* at 385-24-391:10 (▮▮▮

repeatedly had to obtain court intervention due to evasive testimony by these witnesses specifically. ECF 2705 at 4 ("The Court is particularly concerned about Fuldner's failure, with Uber's attorneys' encouragement or instruction, to answer questions posed by Plaintiffs' counsel. If Plaintiffs elect, they may resume Fuldner's deposition for an additional one hour of remote or in-person testimony."); ECF 3343 ("The witness must answer Ms. Peters's question, and Mr. Wong has not done so despite repeated questioning. The objection is not grounded in any privilege."). Indeed, Plaintiff's estimates from Mr. Wong's testimony alone show more than 80 notations of answers as non-responsive and more than 125 admonitions to answer the question asked. If Plaintiff is forced to use these depositions, no doubt much of Uber's counter-designations will be wasteful, non-responsive testimony.

In particular, much of Mr. Wong's corporate representative testimony about S-RAD, Uber's admitted most powerful tool to prevent sexual assault, is evasive, disjointed and difficult to splice together coherently and efficiently. This is because Uber failed repeatedly to prepare him adequately for the S-RAD topics on which he was designated as a 30(b)(6) witness and made seriatim document and information productions about S-RAD after each deposition. The result was multiple depositions of him over several months. Indeed, even at his last deposition day on October 14, Mr. Wong was unable to answer many questions about S-RAD in connection with the *Dean* case specifically. *See* **Ex. D** at 374:23-375:5 (███); *id.* at 379:10-17 (███); *id.* at 395:8-11 (███); *id.* at 400:15-402:15 (███).

The discovery depositions for Mr. Fuldner, Ms. McDonald, and Mr. Wong concluded on

███); *id.* at 392:18-393:5 (███); *id.* at 453:6-454:14) (███).

April 29, May 7, and October 14, respectively. However, Uber continued producing and de-designating documents from their custodial files through late fall, including more than 60,000 documents since Mr. Fuldner's deposition concluded and hundreds of de-designated documents formerly and improperly withheld as privileged. ECF4654-1 at ¶ 16. As Uber acknowledges, it produced or de-designated 1,877 documents from Mr. Fuldner's custodial file and 780 from Ms. McDonald's custodial file after the close of their depositions, ECF 4653 at 4. Uber's count does not include more than 2,000 other documents with which Mr. Fuldner or Ms. McDonald are associated that are in others' custodial files.

## LEGAL STANDARD

The Court has broad discretion to manage pretrial scheduling and discovery, including depositions. *See, e.g.*, *Ransom v. Herrera*, 2018 WL 4008386, at *2 (E.D. Cal. Aug. 21, 2018). A party must obtain leave of court to take a second deposition of a deponent, but "the court must grant leave to the extent consistent with Rules 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2)(A)(ii). Rule 26(b)(1) authorizes discovery that is relevant and proportional. Rule 26(b)(2) limits discovery that is unreasonably burdensome or where the party seeking discovery has had ample opportunity to obtain the information before.

## ARGUMENT

**I.     The requested trial depositions are appropriate under Rule 26.**

Limited trial depositions are proportional to the needs of the case and not unreasonably cumulative or burdensome. Without trial depositions, jurors may not get the full picture of what Uber knew when it dispatched high-risk driver Turay to pick up Jaylynn Dean the night he raped her. Or they will have to strain much harder to piece it together. Nor have Plaintiffs had ample opportunity to take these type of depositions before, because of (1) the inherent differences between MDL-wide discovery and trial preparation; (2) Uber's and its witnesses' obstruction; and (3) newly-produced documents.

**A.     Trial depositions will enhance the value of this first bellwether trial.**

In an MDL like this one, concerning a company's conduct over more than a decade (the MDL includes incidents from 2015 to 2025), conducting discovery with speed and efficiency is

only possible if there is some flexibility on the backend to hone discovery for trial. Otherwise, discovery would place an impossible burden on Plaintiffs and corporate witnesses to take and sit for trial-ready depositions as discovery just gets underway. It would be necessary to delay nearly all depositions until document production was substantially complete. It would prevent counsel from taking actual discovery depositions, learn from the witnesses, hone their theories, and identify areas for further inquiry. It cannot be that the efficiencies of an MDL must be enforced so stringently that Plaintiffs must do everything at once—long before discovery has even closed. Such a rule encourages gamesmanship and prevents the jury from receiving the benefits of the full range of discovery taken and complete evolution of the theories of the case. Bellwether trials have the most value if the jury can weigh complete liability theories against a fully-developed record. Ensuring a complete record for bellwether trials, especially the first bellwether trial, will protect individual plaintiffs and their due process within the MDL structure, and will benefit all of the cases going forward.

### B. The jury will benefit from focused trial depositions of these three witnesses in particular.

For these witnesses in particular, there is good cause to conduct short (3-hour with plus minute-to-minute re-cross) depositions. The jury will benefit from seeing concise testimony limited to the crucial issues in the case rather than spliced-together deposition tape that, due to witness evasion, improper counsel objection, and lack of preparedness, does not clearly convey the relevant points. *See Cline v. Bos. Sci. Corp.*, 2021 WL 1614326, at *3 (W.D. Ark. Apr. 26, 2021) ("Certainly, the Court owes the jury a duty to not waste its time or cause unnecessary confusion. ... Good cause justifies ordering the parties to take one videotaped trial deposition for each of the three witnesses... failing to do so will jeopardize not only the factfinder's ability to comprehend the evidence, but also [plaintiff's] ability to present her case to the jury.").

The depositions of both Mr. Fuldner and Ms. McDonald are littered with speaking objections, non-responsive answers, and evasive testimony. *See* **Ex. B** at 67:21-68:16 (███████████████████████████████████████████); **Ex. A** at 347:22-349:16 (███████████████████████████████

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓), 421:8-422:24 (▓▓▓▓▓▓▓
2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓), 424:24-426:16 (▓▓).

3       Mr. Wong's depositions are even worse. Despite his designation under Rule 30(b)(6)
4 Plaintiffs were unable to obtain usable testimony due to Uber's failure to prepare the witness
5 adequately. For example, Mr. Wong was completely unprepared to discuss how Uber ▓▓▓▓
6 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See, e.g.*, **Ex. C** at
8 94:13-18, 95:3-23 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); *id.* at 109:14-112:21, 267:17-268:11,
10 228:22-229:2, 229:18-25 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). He was also unprepared to discuss how ▓
12 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See id.* at 273:24-275:23 (▓▓
13 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). Nor could he answer simple questions like whether trips that
15 end in sexual assault are more likely to have a driver and rider of different genders. *See id.* at 205:2-
16 207:2 ("I'm not sure. Yeah.").

17       In addition, numerous hours of Mr. Wong's depositions were taken up by speaking
18 objections and nonresponsive testimony. Plaintiffs had to repeatedly seek court intervention and
19 additional deposition time to eke out discoverable information. *See, e.g., id.* at 48:13-22
20 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
21 ▓▓▓▓▓▓▓▓▓▓▓▓), 116:23-117:15 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); 136:23-144:25 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); **Ex. D** at 360:10-365:20 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
24 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"); 385:24-
25 391:10 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); 392:18:5-393:5
27 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
28 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓), 453:17-454:14 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1    [redacted]).

Mr. Wong's inadequate preparation required Plaintiffs to bring him back for subsequent depositions. While this enabled Plaintiffs to learn more about Uber's systems as counsel gradually identified information Uber had been withholding, this haphazard process did not allow Plaintiff to generate playable trial testimony for Plaintiff Dean's case. The jury needs to understand how this essential safety feature, crucial to Plaintiff's case, works and does not work. Mr. Wong is the best person to provide that understanding.

Finally, piecing together strands of depositions will take much longer and will eat into the efficient schedule the Court has set for this case.

### C. Plaintiff is entitled to examine witnesses on newly-produced documents.

As Uber concedes, good cause to conduct additional depositions of a witness exists "'where a long period of time has elapsed … or new discovery has been produced since the first deposition.'" Mot. at 4. While Uber attempts to minimize the extent of its late productions, the "handful" of late-produced documents is 2,657 documents from the custodial files of these witnesses after their depositions concluded. *Id.* at 6. When including documents in which the witnesses were authors, collaborators, or recipients, this number balloons to more than 4,500 late-produced documents.

### D. Plaintiff has been diligent.

Uber claims that Plaintiff Dean waited until the "eve of trial" to request depositions of these witnesses. ECF 4653 at 3. However, the responsibility for any delay rests on Uber's shoulders. *First*, Plaintiff had every reason to believe she could examine these witnesses with court supervision and on newly produced documents at trial because Uber assured her that it would take every reasonable effort to produce corporate witnesses. It was only on December 5, when Plaintiff learned these assurances were false, that she sought trial preservation depositions to ensure that she would have the benefit of a fulsome record at trial. *Second*, Plaintiff could not reasonably obtain the witnesses' testimony regarding documents and data produced after their depositions concluded. These circumstances are entirely different from those in *United Food Group., LLC v. Cargill, Inc.*, where the court confirmed that there "may be situations where it might

1  be appropriate for a court to permit a party to take a 'trial' deposition after the close of discovery and
2  on the even of trial," but denied leave to do so where the plaintiff waited over eighteen months to
3  request a "redundant" deposition. 2014 WL 12925562, at *4 (C.D. Cal. Oct. 27, 2014). Courts
4  routinely permit depositions, even as trial approaches, to examine a witness on new evidence. For
5  example, in *Cramton v. Grabbagreen Franchising LLC*, which Uber cites, the Court did not consider
6  another witness's testimony to be a valid reason to reopen a deposition but concluded that new
7  evidence *from the original witness* warranted reopening the deposition for three hours. 2019 WL
8  1921595, at *2 (D. Ariz. Apr. 30, 2019).

## II.  The Court (or Judge Cisneros) should supervise the depositions.

The Court should exercise its trial and pretrial management authority to supervise the depositions of Ms. McDonald, Mr. Fuldner, and Mr. Wong, or ask Judge Cisneros to do so. As discussed above, during their discovery depositions in this matter, all three witnesses have been repeatedly nonresponsive to questioning by Plaintiffs' counsel. Indeed, at Mr. Fuldner's deposition, Uber's counsel snarked "there's also no judge here" so Plaintiffs' counsel had no one to whom they could direct motions to strike repeated nonresponsive testimony. **Ex. A** at 348:23-349:2. "[J]udicial supervision is required to ensure that a repeat of the circumstances in the [prior] session does not occur." *Burmayan v. Garfield Beach CVS, LLC*, 2024 WL 591533, at *2 (C.D. Cal. Jan. 11, 2024) (ordering subsequent deposition under court supervision). This is consistent with Judge Cisneros's previous decision to supervise the depositions of key witnesses in this case that were expected to be particularly contentious. ECF 2752 (ordering remote supervision of deposition of Travis Kalanick and Dara Khosrowshahi, taking place in Los Angeles and New York, respectively). Unlike Mr. Kalanick and Mr. Khosrowshahi, who were not present in San Francisco, California at the time of their depositions, Ms. McDonald, Mr. Fuldner, and Mr. Wong are all based in the San Francisco Bay Area. Plaintiff therefore requests that these depositions take place at the courthouse. While prior depositions of these witnesses were characterized by extensive counsel objections, nonresponsive answers, and calls to the court, "[c]ourt supervision will ensure that the deposition session will proceed calmly, quietly, and efficiently." *Burmayan*, 2024 WL 591533, at *2.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Uber's motion to quash the notices of court-supervised trial depositions of Uber corporate witnesses Gus Fuldner, Katy McDonald, and Sunny Wong, and order the depositions to occur at dates and times convenient for the Court.

Dated: December 17, 2025                    Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: December 17, 2025          By:     */s/ Andrew R. Kaufman*
                                          Andrew R. Kaufman