UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.  23-md-03084-CRB   (LJC) |
| This Document Relates To:<br><br>ALL CASES. | **ORDER RESOLVING JOINT LETTERS REGARDING MOTIONS TO STRIKE EXPERT REPORTS AND RELATED SEALING MOTIONS**<br><br>Re: Dkt. Nos. 4315, 4383, 4384, 4385, 4386, 4391, 4392, 4394 |

## I.    INTRODUCTION

The parties have filed four joint letters regarding motions to strike supplemental or rebuttal expert reports.  The presiding district judge determined that such issues fall within the scope of discovery matters that have been referred to the undersigned magistrate judge for resolution.  In resolving these disputes, this Court's role is limited to determining whether a particular opinion was properly presented in a supplemental or rebuttal report after the deadline for opening reports, rather than in an opening report served before that deadline.

Nothing in this Order should be construed as expressing any opinion on the persuasiveness of the expert witnesses' opinions, or even if they qualify as admissible expert testimony under Rule 702 of the Federal Rules of Evidence.  Such questions are outside of this Court's authority. In essence, the question before this Court is one of timeliness: should the opinions at issue have been disclosed in a timely opening report by the September 26, 2025 deadline, *see* Dkt. No. 3997,[1]

---

[1] Later deadlines apply to disclosure of experts beyond the first five bellwether cases.  *See, e.g.*, Dkt. No. 3997 at 3 (setting a November 17, 2025 deadline for opening reports in the *WHB 318* case).  It is therefore possible to that opinions stricken here could be used for subsequent cases. The parties' briefs do not squarely address that question.  The parties are directed to meet and

1  rather than later in a supplemental or rebuttal report?

2       The Court resolves the parties' disputes as follows.

3  ## II.    MOTIONS TO STRIKE REBUTTAL REPORTS

4       Under Rule 26 of the Federal Rules of Civil Procedure, expert opinion evidence is properly

5  considered "rebuttal" evidence if it is "intended solely to contradict or rebut [expert] evidence on

6  the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii).  "The proper

7  function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered

8  by an adverse party." *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934,

9  996 (N.D. Cal. 2018) (quoting *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF,

10  2016 WL 4272430, at *1 (N.D. Cal. Aug. 15, 2016)).  "Rebuttal testimony cannot be used to

11  advance new arguments or new evidence.  The test of whether an expert's opinion constitutes

12  rebuttal or a 'new' opinion, however, is not whether a rebuttal expert employs new testing or

13  methodologies but instead, whether a rebuttal attempts to put forward new theories outside the

14  scope of the report it claims to rebut." *Wadler v. Bio-Rad Lab'ys, Inc.*, No. 15-cv-02356-JCS,

15  2016 WL 6070530, at *3 (N.D. Cal. Oct. 17, 2016) (citations and internal quotation marks

16  omitted).  "A rebuttal expert may cite new evidence and data or introduce new methods of analysis

17  in a rebuttal report so long as the new evidence, data, or method is offered to contradict or rebut

18  the opposing party's expert." *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2022 WL

19  1604753, at *8 (N.D. Cal. Jan. 25, 2022).[2]

20       In performing this analysis, the court "does not ask whether the
        designating party has designated a rebuttal expert whose opinions
21       have probative value or even whether they will be admissible at trial,"
        but focuses on (1) the evidence the rebuttal expert purports to
22

23  ─────────────────────

24  confer and file either a stipulation and proposed order or a joint letter consistent with Pretrial
    Order No. 8 no later than December 30, 2025 addressing this Order's effect (or lack thereof) on
    trials beyond the first five bellwethers.

25  [2] At least one district court has stated that a rebuttal report must "explicitly rebut and contradict
    the same evidence *relied on* by the expert report it seeks to rebut." *Tubio v. Adidas Am. Inc.*, No.
26  CV 22-6424 GW (PVCX), 2024 WL 1191051, at *3 (C.D. Cal. Feb. 5, 2024) (emphasis).  That
    characterization, which was not necessary to that court's holding, may have been based on a
27  misunderstanding of Rule 26(a)(2)(D)(ii)'s requirement that "the [rebuttal] evidence is intended
    solely to contradict or rebut evidence on the same subject matter identified by another party under
28  Rule 26(a)(2)(B) or (C)."  In context, the "evidence" to which that sentence refers is—or at least
    includes—the expert opinion itself, not merely the underlying evidence on which an expert relied.

United States District Court
Northern District of California

contradict or rebut; (2) whether the rebuttal evidence is on the same subject matter as the opposing expert's report; and (3) whether the rebuttal evidence is intended solely to rebut or contradict the opposing expert's evidence.

*United States v. Austin Radiological Ass'n*, No. A-10-CV-914-LY, 2014 WL 2515696, at *4 (W.D. Tex. June 4, 2014) (citation omitted).

Opinions improperly framed as rebuttal that should have been disclosed in an opening report may be excluded from trial under Rule 37(c)(1) of the Federal Rules of Civil Procedure. *MacBook Keyboard*, 2022 WL 1604753, at *7 (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)).  To avoid exclusion, the party seeking to use the report must show that its delay was harmless or substantially justified.  *Yeti by Molly*, 259 F.3d at 1107.

### A.    Rebuttal Report of Dr. Lindsay Orchowski

Plaintiffs move to strike certain opinions by Dr. Lindsay Orchowski, offered by Uber in rebuttal to Plaintiffs' expert Dr. Veronique Valliere.  Dkt. No. 4384.  The opinions at issue are included in two sections of Orchowski's rebuttal report: (1) section VIII, titled "Valliere Overstates Organizational Causation and 'Constructed Opportunity'"; and (2) section V, titled "Prevention Standard in Taxi and Rideshare Industries."  This Order addresses those sections in the same sequence as the parties' arguments, which is the reverse order from how they appear in Orchowski's report.

Uber argues only that Orchowski's opinions are properly characterized as rebuttal.  Dkt. No. 4384 at 5–6.  It does not contend that if the Court disagrees, the opinions should nevertheless be permitted based on substantial justification or harmlessness of disclosing them after the deadline for opening reports.  *See id.*

### 1.    Section VIII of Orchowski's Rebuttal Report

Plaintiffs object to a portion of Orchowski's rebuttal report that accuses of Valliere of a logical fallacy conflating correlation with causation.  According to Plaintiffs, "Valliere does not make a claim of statistical significance[;] instead she offers a qualitative analysis of the Uber environment," such that the distinction between correlation and causation is irrelevant to Valliere's opinions. Dkt. No. 4384 at 3.  Uber responds that Orchowski's opinions are an

1    appropriate rebuttal to Valliere's assertion that Uber "has constructed its own crime triangle," *see*

2    Dkt. No. 4340 (Valliere Report) at 41, a term Valliere uses to describe "factors presented by the

3    offender, the victim, and the opportunity," *id.* at 33. *See* Dkt. No. 4384 at 5–6. Other aspects of

4    Valliere's report, not specifically addressed by the parties, also suggest that Uber has taken steps

5    that increase the risks of sexual assault. *E.g.*, Dkt. No. 4384 at 37 (asserting that despite

6    knowledge of risks, "Uber's advertising campaigns are aimed at attracting women to Uber in the

7    most vulnerable situations"); *id.* at 47 ("By enticing women to use Uber under the promise of

8    safety and trust, Uber has contributed to and increased the risk without addressing it.").

9         Though Valliere does not explicitly attribute a statistical increase in the prevalence of

10    sexual assault to any conduct by Uber, a reader of her report might reasonably understand it as

11    asserting that Uber's decisions in designing and administering its product increased the likelihood

12    of drivers sexually assaulting passengers. Orchowski asserts that Valliere's report does not

13    properly support such a conclusion, because "[c]ausal claims are valid only generated [sic]

14    through a research methodology that is appropriate for generating causal evidence." *See* Dkt. No.

15    4383-4 at 14. In doing so, Orchowski directly seeks to "contradict, impeach or defuse the impact

16    of" Valliere's opinions. *See Huawei Techs.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018). The

17    same is true of Orchowski's critique that Valliere improperly relies on "abstraction" in

18    characterizing Uber as having "constructed" an environment where sexual assault occurred. *See*

19    Dkt. No. 4383-4 at 13. Whether Orchowski offers a sufficient basis for those opinions is a

20    different question, which may overlap with Plaintiffs' motion to exclude Orchowski's opinions

21    under the Rule 702 that is currently pending before Judge Breyer. *See* Dkt. No. 4388. But those

22    opinions are directed squarely towards Valliere's report. As such, they are not untimely when

23    disclosed in a rebuttal report.[3]

24    _____

25    [3] Plaintiffs cite *Avila v. Ford Motor Co.*, 2025 WL 2538722, at *3 (N.D. Cal. Aug. 22, 2025),
      where Judge Pitts struck a rebuttal report that mere "point[ed] out logical flaws in [an opponent's]

26    experts' reports and dispute[d] their conclusion," holding that those arguments were more
      appropriate for cross examination and for the jury's own consideration without need for expert

27    testimony. Though Judge Pitts also addressed questions of whether certain testimony properly
      constituted a "rebuttal," the analysis on which Plaintiffs rely effectively incorporated the
      evidentiary standard for permissible expert testimony, which was the primary subject of Judge

28    Pitts's order. *See id.* at *1 (setting forth a legal standard for Rule 702). Unlike in this case, the

United States District Court
Northern District of California

Two of Orchowski's opinions included in the same Section VII of her report go beyond Valliere's opinions. First, Orchowski asserts that ride-hailing environments, like "bars, elevators, and medical exam rooms," "create proximity between two individuals" but do not themselves cause sexual assault. Dkt. No. 4383-4 at 13. Second, Orchowski asserts that "[i]ndividuals who engage in sexual aggression are responsible for their actions." *Id.* Neither Orchowski nor Uber claim that Valliere opined on the relative risks of bars, elevators, or medical examination rooms; mere proximity as a potential cause of sexual assault;[4] or sexual aggressors' responsibility (or lack thereof) for their conduct. Nor do those opinions contradict Valliere's opinions that some of Uber's decisions increased the risk of sexual assault. Those opinions by Orchowski therefore stray beyond the scope of appropriate rebuttal, and are stricken.

The Court therefore GRANTS Plaintiffs' motion to strike Orchowski's rebuttal report to the extent it expresses opinions regarding bars, elevators, medical examinations rooms, proximity as insufficient to cause sexual assault, or the personal responsibility of sexual aggressors. Plaintiffs' motion is DENIED as to the remainder of section VIII of this report.

### 2.    Section V of Orchowski's Rebuttal Report

Section V of Orchowski's rebuttal report begins by asserting that "Valliere opines, without scientific support, that 'the acts of sexual offenders are often preventable.'" Dkt. No. 4383-4 at 10. Orchowski responds that there is little reliable data on effective approaches to reducing sexual assault in the workplace or in public transit settings. *See id.* She also asserts that Valliere's report exhibits a common error of attempting to implement sexual assault prevention programs without sufficiently examining the problem, risk factors, and suitable solutions specific to the environment in question. *Id.* at 11. Plaintiffs do not challenge such opinions as improper rebuttal.

Plaintiffs take issue, however, with Orchowski's "affirmative opinion that Uber properly

---

motion to strike was not directed to a magistrate judge with a limited scope of authority over the case.

[4] The only reference to proximity between individuals that the Court has identified in Valliere's report is her statement that an "offender driving an Uber can gain access to rides where he will gain close proximity to women, often alone, and in the confined circumstances of his car, a vehicle he, as the driver, has familiarity with and control over." Dkt. No. 4340 at 13. That opinion does not suggest that proximity in itself is (or is not) predictive or causative of sexual assault.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  followed a 'public health' approach by taking 'steps to document, describe, and assess risk factors

2  for risk of violence.'" Dkt. No. 4384 at 4 (quoting Orchowski's rebuttal report).  Uber contends

3  that such opinions are appropriate rebuttal because in response to Valliere's opinion that sexual

4  assault is often preventable, Orchowski explains that a public health approach of gathering data

5  and identifying risk factors is the appropriate method for such prevention, and Uber acted

6  consistently with that framework.  *Id.* at 6.  According to Uber, Orchowski thus properly "rebuts

7  Dr. Valliere's suggestion that Uber failed to implement a proper system for preventing sexual

8  assaults involving riders and drivers using the Uber platform." *Id.*

9      Like Orchowski's rebuttal report, the only statement by Valliere that Uber identifies as the

10  subject of these rebuttal opinions is her assertion that "the acts of sexual offenders are often

11  preventable." *Id.*  To the extent that portions of Orchowski's rebuttal report implicitly dispute

12  Valliere's opinion that sexual assault is often preventable, at least with society's current

13  knowledge and development of prevention programs—that is a proper rebuttal.  To the extent that

14  portions of Orchowski's rebuttal report implies that where prevention is possible, it requires

15  carefully identifying risk factors, rather than a one-size-fits-all approach, that limited opinion is

16  also proper rebuttal.  But to the extent Orchowski goes beyond these points to explain why she

17  believes Uber has taken appropriate steps to identify such factors, such opinions do not respond to

18  Valliere's report, which does not accuse of Uber of failing to identify risk factors appropriately.

19  Plaintiffs are correct that "[i]f Dr. Orchowski wished to opine that Uber did a good job identifying

20  risk factors, she should have offered those affirmative opinions in an opening report." Dkt. No.

21  4384 at 4.

22      The Court GRANTS Plaintiffs' motion to strike the following opinions in section V of

23  Orchowski's rebuttal report:

24      • "Uber's steps to document, describe, and assess risk factors for risk of violence

25      align with the public health framework for violence prevention.  These efforts

26      represent an important step in building the evidence base necessary to inform and

27      then guide prevention decisions tailored to this unique context." Dkt. No. 4383-4

28      at 10.  (To be clear, in striking this rebuttal opinion regarding Uber's conduct

6

specifically, the Court does not prevent Orchowski from testifying that identifying

risk factors is necessary to prevention of sexual assault.)

- "Uber provides evidence of moving along this public health prevention framework pathway in its data collection and typology efforts." *Id.* at 11.

- "Based on my experience, and the materials reviewed, the steps taken by Uber are consistent with the CDC's public health approach for developing a sexual violence prevention approach.  Uber shows evidence of work to identify risk factors for violence with the goal of preventing harm and enhancing public safety, which are reasonable and recommended steps for an organization to implement." *Id.*

To the extent Plaintiffs' motion could be construed as seeking to strike any other portions of section V, it is DENIED.

**B.      Rebuttal Report of Kristen Zgoba**

Uber also offers a rebuttal report from Dr. Kristen Zgoba in response to Valliere's report. Plaintiffs move to strike only one section of that report, in which Zgoba opines that it is impossible to eliminate all risk of sexual assault, Dkt. No. 4385-3 at 9, as well as a corresponding bullet point in Zgoba's summary of her opinions, *id.* at 6.  *See* Dkt. No. 4386 at 3.  As with Orchowski's report discussed above, Uber contends that the opinions at issue were properly disclosed as rebuttal; Uber does not argue that (if the Court disagrees) any delay was substantially justified or harmless.  *Id.* at 4386.

Zgoba characterizes the disputed section as a response to Valliere's "suggest[ion] that Uber should create an assault-free environment," without identifying any portion of Valliere's report that presents such a suggestion.  Dkt. No. 4385-3 at 9.  Plaintiffs contend that Valliere made no such suggestion.  Dkt. No. 4386 at 3.  In its portion of the parties' joint letter, Uber identifies four statements by Valliere as supporting Zgoba's characterization.  *Id.* at 4.  The Court addresses those in turn.

First, Valliere states that "Uber has developed effective methods to identify and eliminate risky drivers, even those who might be involved in future incidents of interpersonal conflict, including sexual assault and misconduct that it is not effectively deploying."  Dkt. No. 4340 at 6.

United States District Court
Northern District of California

To read that statement as suggesting that Uber can remove *all* risky drivers from its platform, rather than only "eliminating" certain drivers it identifies, is a stretch—much less that removing "risky" drivers would eliminate *all* sexual assault.  Valliere has not opined that Uber should or can eliminate all sexual assault from Uber rides.

Second, Valliere states that, "Despite repeated protests that sexual assault cannot be absolutely predicted or eliminated, Uber has identified ways to decrease risk by screening drivers and making safer driver/rider dispatches." Dkt. No. 4340 at 26.  That statement plainly speaks to Uber's ability to *decrease* risk.  Though it identifies tension between such purported ability and Uber's statements regarding the impossibility of total elimination, it does not claim that Uber can eliminate *all* risk of sexual assault.

Third, Valliere states that "[i]n 2017, Uber brought in experts and researched how it could eliminate sexual assault from its platform." *Id.* at 41.  At most, that statement suggests that Uber researched whether it could eliminate all sexual assault, not that Uber could in fact do so.

Fourth, Valliere states that "[w]hile Uber knew that Uber drivers were committing sexual violence towards Uber riders and that it was prevalent, Uber was slow to act on prevention and deactivation.  Failures at deactivation led drivers to commit future sexual assaults." *Id.* at 42 (citations omitted).  That statement asserts that Uber could have prevented some instances of sexual assault, not that it could have prevented all such risk.

To the extent there is any ambiguity, Plaintiffs correctly note that Valliere made clear at her deposition that she did not believe it is possible to reduce the risk of sexual assault to zero:

> Q. Now, we've talked about this before, but I just -- I want to make sure that we have a clear answer. Do you believe that there is no environment that is 100 percent free of the risk of sexual assault?

> MS. LUHANA: Objection to form. Objection to the hypothetical.

> THE WITNESS: In the extreme situation, I do not believe that if an offender is determined to offend, that they will offend. But it is not true that every environment is at risk or can be a high risk. *It's never zero risk*, but it's -- there are environments that are much higher risk and there's many things we can do that will deter offenders.

Dkt. No. 4385-4 (Valliere Dep.) at 140:3–20 (emphasis added).  The relevant statement is buried in a somewhat longer response, but Uber's counsel repeated it back to Valliere immediately after

1    her answer: "Just to make sure I understand, I understand that there are higher risks and lower

2    risks, but you said there is never zero risk." *Id.* at 140:22–25.

3            Valliere did not offer an opinion that Uber could entirely eliminate sexual assault.  As

4    discussed above in the context of Orchowski's rebuttal report, the closest Valliere comes to such

5    an opinion is her assertion "that the acts of sexual offenders are *often* preventable."  Dkt. No. 4340

6    at 5, 49 (emphasis added).  That statement itself carries an implication that sexual assault is not

7    *always* preventable.  Zgoba's assertion that "[n]o organization, public or private, has achieved

8    complete elimination of sexual misconduct," Dkt. No. 4385-3 at 9, neither refutes Valliere's

9    opinion that sexual assault is *often* preventable, nor helps to clarify *how* often such prevention is

10   possible.  It is therefore not proper rebuttal.

11           Plaintiffs' motion to strike the portions of Zgoba's rebuttal report characterizing complete

12   elimination of sexual assault as impossible is GRANTED.  If Uber wished to offer an expert

13   opinion to that effect, it was required to do so by the deadline to disclose opening expert reports.

14           **C.     Rebuttal Report of Dr. Lindsey Cameron**

15           Uber moves to strike large portions of the rebuttal report of Dr. Lindsey Cameron, which

16   Plaintiffs offered in response to a report by Uber's expert Joseph Okpaku.  Plaintiffs contend that

17   Cameron's rebuttal report addresses the portion of Okpaku's report asserting that "[c]ompanies

18   like Uber maintain little to no significant control over third-party rideshare drivers because the

19   drivers fundamentally control if, when, how much, and for how long they choose to make

20   themselves available to provide rides through the Uber app."  Dkt. No.4357-1 (Okpaku's report) at

21   7, 22–30; *see* Dkt. No. 4391 at 5.  Uber argues that Cameron's report strays beyond rebuttal and is

22   effectively an opening report because Plaintiffs have the burden of proof to show Uber's control

23   over drivers, very little of the report addresses Okpaku's opinions directly, it overlaps significantly

24   with an opening report that Cameron prepared for prior litigation, and Cameron largely prepared

25   her report before Okpaku served his.  *Id.* at 3–5.  As a fallback if the disputed portions of

26   Cameron's report are not stricken, Uber requests in the alternative that it be permitted to serve a

27   surrebuttal, and Plaintiffs do not oppose that request.  *Id.* at 4, 5, 7.  The parties' dispute turns

28   largely on disagreement over the nature of a permissible rebuttal report under Rule 23(a)(2)(D)(ii).

9

United States District Court
Northern District of California

1    Uber relies in part on Judge Alsup's decision striking a rebuttal report in *Oracle America,*

2  *Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 5572835 (N.D. Cal. Nov. 15, 2011).  As

3  Uber notes, Judge Alsup described the process for expert disclosure as having "placed a full up-

4  front disclosure duty upon the party with the burden of proof on a given issue."  *Id.* at *3.  Uber

5  neglects to mention, however, that Judge Alsup's decision relied not on Rule 26(a)(2)(D)(ii)'s

6  rebuttal provision but instead on his own case management order, which read in relevant part as

7  follows:

8    [T]he last date for designation of expert testimony and disclosure of
9    full expert reports under FRCP 26(a)(2) as to any issue on which a
     party has the burden of proof ("opening reports") shall be JULY 29,
     2011. Within FOURTEEN CALENDAR DAYS of said deadline, all
10   other parties must disclose any expert reports on the same issue
     ("opposition reports").  Within SEVEN CALENDAR DAYS
11   thereafter, the party with the burden of proof must disclose any reply
     reports rebutting specific material in opposition reports. Reply reports
12   must be limited to true rebuttal and should be very brief. They should
     not add new material that should have been placed in the opening
13   report and the reply material will ordinarily be reserved for the
     rebuttal or sur-rebuttal phase of the trial.

14

15  *Id.* at *1.  In response to the plaintiff's argument that Rule 26's rebuttal provision authorized

16  disclosure of new experts at the "reply" phase of that schedule, Judge Alsup held that that

17  provision "does not refer to reply reports," but instead to "opposition reports" under his schedule,

18  which were not at issue in the motion before him.  *Id.* at *4 (emphasis omitted).

19    That case is of little use here.  Uber points to no case management order in this MDL that

20  sets a three-phase schedule of opening, opposition, and reply reports like Judge Alsup used in

21  *Oracle*.  Nor has Uber identified any order here that conditions the parties' expert disclosure

22  obligations on whether they have the burden of proof.  And as discussed above, Judge Alsup

23  stated specifically that his analysis did not pertain to rebuttal reports under Rule 26(a)(2)(D)(ii).

24  Uber's reliance on *Oracle* is a cautionary tale for cherry-picking seemingly useful language from

25  caselaw without regard for its context.

26    In *this* litigation, Pretrial Order No. 21 described the expert report deadlines for bellwether

27  cases as follows, with no reference to the party with the burden of proof: "The parties shall

28  exchange expert reports by August 8, 2025.  The parties shall exchange rebuttal expert reports by

1    September 8, 2025." Dkt. No. 1950 at 3 (emphasis omitted).  That Order was based on proposals

2    submitted by the parties, where Plaintiffs' proposed deadlines for expert disclosures were not

3    contingent on a party's burden of proof, Dkt. No. 1934 at 7, and Uber's proposal did not include

4    expert disclosure deadlines at all, *id.* at 27.  Subsequent orders extending that deadline or limiting

5    its application to particular bellwether cases did not modify Judge Breyer's original

6    characterization of it.  Dkt. Nos. 2894 at 3, 3533, 3705, 3757, 3997.[5]

7         Uber also relies on a maxim that if a witness's testimony is offered to "contradict an

8    expected and anticipated portion of the other party's case-in-chief, then the witness is not a

9    rebuttal witness or anything close to one."  Dkt. No. 4391 at 4 (quoting caselaw).  At least some

10   district court decisions have quoted that language in the context of motions to strike rebuttal expert

11   reports.  *Clear-View Techs., Inc. v. Rasnick*, No. 13–cv–02744–BLF, 2015 WL 3509384, at *2

12   (N.D. Cal. June 3, 2015)[6] (quoting *Amos v. Makita U.S.A.*, 2011 WL 43092, at *2 (D. Nev. Jan. 6,

13   2011)).  The line of circuit cases from which that quotation originates, however, concerns the use

14   of undisclosed (or untimely disclosed) rebuttal *fact* witnesses at trial.  *In re Apex Oil Co.*, 958 F.2d

15   243, 245 (8th Cir. 1992); *Newman v. A. E. Staley Mfg. Co.*, 648 F.2d 330, 332–23 & n.2 (5th Cir.

16   1981); *Morgan v. Com. Union Assur. Companies*, 606 F.2d 554, 55–56 (5th Cir. 1979).  Language

17   describing the "principal objective of rebuttals" as "to permit a litigant to counter new, unforeseen

18   facts brought out in the other side's case" has similarly been transposed by some district courts

19   into the realm of expert disclosures from appellate decisions discussing trial testimony.  *Compare*,

20   *e.g.*, *R & O Const. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-cv-01749-LRH-LR, 2011 WL

21   2923703, at *2 (D. Nev. July 18, 2011), *and In re President's Casinos, Inc.*, 2007 WL 7232932 at

22   * 2 (E.D. Mo. May 16, 2007), *with Faigin v. Kelly*, 184 F.3d 67, 85 (1st Cir. 1999), *and Marmo v.*

23

24   [5] Judge Breyer's General Standing Order does not address expert reports in any way, and thus also
     does not provide a definition of opening and rebuttal reports that turns on a party's burden of
25   proof.  *See* https://cand.uscourts.gov/sites/default/files/standing-orders/General-Standing-Order-
     Judge-Charles-R.-Breyer-rev-7-16-2025.pdf [https://perma.cc/P4XE-LS3Y].
26   [6] *Clear-View* excluded a purported rebuttal report in part because the author had not reviewed the
     opening report at issue, and because the rebuttal report was not "offered on the 'same subject
27   matter' as" the opening report.  2015 WL 3509384, at *4.  Those reasons are sound, and the result
     reached in that case was correct.  To the extent that decision also addressed the offering party's
28   burden of proof and whether the report addressed an element of a case in chief, however, this
     Court finds those aspects of its reasoning less persuasive.

United States District Court
Northern District of California

*Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) (quoting *Faigin*).[7]  Along the same lines, the Southern District of California characterized a party's rebuttal report related to an element of its case in chief as "indefensible," but relied on an Eight Circuit decision from 1967 discussing the order of trial testimony and potential confusion for jurors.  *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1191 (S.D. Cal. 2016) (citing *Skogen v. Dow Chem. Co.*, 375 F.2d 692, 705 (8th Cir. 1967)).  These are issues that have divided district courts, but this Court is not persuaded that such standards apply to rebuttal expert reports.

Neither Uber nor the district court cases above explain why the same standards should apply to rebuttal expert disclosures governed by Rule 26(a)(2)(D)(ii), which provides its own definition of what is permissible.  Nothing in that rule limits rebuttal reports to *unforeseeable* positions advanced by an opposing expert.  Nor do all of the same concerns that attend to rebuttal trial testimony apply equally to rebuttal expert disclosures.  The former can disrupt the management of trial, create risks of unfair surprise, and introduce confusion to a greater degree than the latter.  Unlike rebuttal witnesses at trial, expert witnesses who are timely disclosed by the rebuttal deadline still must serve reports and sit for depositions based on those reports.  Such discovery generally occurs well before trial, allowing an opposing party to seek appropriate relief—for example, as here, the opportunity to serve a surrebuttal from its own expert—if the sequence of reports has placed that party at an undue disadvantage.  To the extent that some district courts may have suggested that expert rebuttal disclosures may address only "surprise" opinions from an opponent's opening expert, rather than foreseeable elements of either the offering party's or its opponent's case in chief, this Court respectfully disagrees.

---

[7] Though *Faigin* dealt in part with potential rebuttal expert testimony, the First Circuit's decision indicates that dispute pertained to the plaintiff's attempt to offer such testimony after he rested his case in chief at trial, not whether the plaintiff timely disclosed expert opinion evidence under Rule 26(a)(2).  184 F.3d at 85 ("Indeed, Faigin called Kelly *during his case in chief* and inquired pointedly about the investment losses.  Faigin likewise pursued his 'tax benefit' theory during his case in chief.  Thus, Faigin had enough notice of the dimensions of the battlefield that he could—and should—have brought in his heavy artillery and called his expert *prior to resting.* He did not do so." (emphasis added)).  *Marmo* affirmed a district court's refusal to allow a party to redesignate a rebuttal expert (Dr. Meggs) as an opening expert and offer testimony at trial when the opposing had not offered testimony from the expert whose report Dr. Meggs had rebutted.  457 F.3d at 754–55, 758–60.  Such trial management decisions are not before this Court on the parties' present joint letter.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Of course, if a rebuttal expert report does not "contradict or rebut" an opening expert report

2  "on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)," it falls

3  outside the scope of Rule 26(a)(2)(D)(ii) regardless of whether it might be said to "rebut" an

4  opponent's anticipated defense or case in chief.  But where a rebuttal report properly responds to

5  an opening report, the fact that the party offering the rebuttal may have expected its opponent to

6  raise such issues is no barrier to disclosing the opinion as a rebuttal.  "In other words, there is no

7  bright line rule requiring automatic exclusion of a rebuttal report that contains information that

8  could have been included in an initial expert report." *Leadership Stud., Inc. v. Blanchard Training*

9  *& Dev., Inc.*, No. 15cv1831-WQH(KSC), 2018 WL 1989554, at *9 (S.D. Cal. Apr. 27, 2018),

10  *recommendation adopted*, 2018 WL 3752373 (S.D. Cal. Aug. 7, 2018); *see also, e.g.*, *Van Alfen v.*

11  *Toyota Motor Sales, U.S.A., Inc.*, No. 8:10ML02151J VS (FMOx), 2012 WL 12930456, at *3

12  (C.D. Cal. Nov. 9, 2012).  "[S]uch a rule would lead to the inclusion of vast amounts of arguably

13  irrelevant material in an [opening] report" out of an abundance of caution in case it might be

14  relevant on rebuttal.  *See Pakootas v. Teck Cominco Metals, Ltd.*, No. CV-04-256-LRS, 2012 WL

15  1833397, at *1 (E.D. Wash. Apr. 4, 2012) (quoting *Crowley v. Chait*, 322 F. Supp. 2d 530, 551

16  (D.N.J. 2004)).  It would also encourage parties to serve potentially unnecessary opening reports

17  on issues that they might otherwise intend to prove through non-expert evidence, to preserve their

18  rights to counter expert opinion evidence that might be offered by their opponents.

19    Accordingly, neither Plaintiffs' burden of proof on the issue of Uber's control over drivers,

20  nor Plaintiffs' potential to foresee Uber's arguments regarding that issue, required Plaintiffs to

21  serve an opening report by Cameron or forfeit their right to rebuttal.  Once Uber served Okpaku's

22  report addressing that issue, Rule 26(a)(2)(D)(ii) permitted Plaintiff to rebut that evidence.

23    Cameron frames her rebuttal report generally as responsive Okpaku's "opinion regarding

24  Uber's control over drivers."  Dkt. No. 4315-3 (Cameron's rebuttal report) at 2, ¶ 1.  There is no

25  dispute that Okpaku expressed such an opinion in his opening report—specifically, "that drivers

26  have significant control over the amount of their participation on the Uber app, and that Uber does

27  not exercise control over drivers."  Dkt. No. 4357-1 (Okpaku Report) at 30.

28    Uber takes issue with sections IV through IX of Cameron's rebuttal report, which Uber

13

United States District Court
Northern District of California

1  rightly notes do not mention Okpaku or the substance of his report.  *See* Dkt. No. 4391 at 3–4.  In

2  Cameron's summary of arguments (section III of her rebuttal report), however, Cameron addresses

3  Okpaku's report and explains how subsequent sections VI through IX of her rebuttal report relate

4  to her criticism of his conclusions. Dkt. No. 4315-3 at 10–12, ¶¶ 17–19, 22–24.[8]  Had Cameron

5  introduced each of those sections with the same sort of framing that appears in her summary, her

6  rebuttal report would be materially identical in substance, but Uber's critique that those sections

7  do not mention Okpaku would no longer be accurate.

8       For example, Cameron states in her summary that Okpaku's opinion "that ride-hailing

9  'drivers have no boss other than themselves' . . . is not accurate," citing, for example, section VIII

10  of her rebuttal report as discussing "how narratives of freedom and autonomy are a source of

11  organizational control over drivers."  *Id.* at 10–11, ¶ 19.  One might imagine an alternative version

12  of Cameron's rebuttal report where section VIII began with a paragraph along the lines of:

13  
14      Mr. Okpaku states that Uber does not exercise control over drivers.
As previously stated in this rebuttal report, I disagree with that
opinion. One of the ways that ride-hailing companies like Uber
15  exercise control over drivers is by promoting narratives of freedom
and autonomy.

16  That the substance of that hypothetical paragraph instead appears in Cameron's earlier summary-

17  of-arguments section does not change the fact that Cameron has explained her view of how section

18  VIII responds to Okpaku's opinion.  The same is true of the other sections in dispute.

19      Cameron's rebuttal report therefore contradicts and rebuts Okpaku's opening report.  The

20  Court is nevertheless concerned by the degree to which Plaintiffs clearly anticipated providing

21  such a report before Okpaku served his, as shown by billing records and deposition testimony

22  indicating that Cameron performed substantial work on her rebuttal report before the exchange of

23  opening reports. Dkt. No. 4391-1; Dkt. No. 4399-1 at 22–23.  That sequence might reasonably

24  support an inference of gamesmanship.  It at least raises questions of fairness, to the extent that

25  

26  [8] Cameron does not specifically identify sections IV and V as responsive to Okpaku's opinions, though she mentions section IV as supporting her view that her methodology and expertise are superior to his. Dkt. No. 4315-3 at 9, ¶ 14.  In context, both section IV ("Methodology") and

27  section V ("Overview of On-Demand Labor Organizations and their Life Cycle") lay a foundation for Cameron's opinions in the subsequent sections.  They therefore stand or fall with those

28  sections for the purpose of the present dispute.

1    Plaintiffs' withholding of expert opinions developed before the deadline for opening reports

2    deprived Uber of the opportunity to rebut such opinions.

3        Such concerns do not change the fact that Cameron's report—in the form in which it was

4    served, framed as a response to Okpaku's opinions—is a permissible rebuttal under Rule

5    26(a)(2)(D)(ii).  Discretionary relief is nevertheless appropriate to rectify any potential unfairness.

6    Both sides have proposed an option for such relief.  Uber requests (in the alternative to striking

7    Cameron's rebuttal report) that Uber be permitted to offer a further expert report responding to

8    Cameron's opinions.  Dkt. No. 4391 at 4.  Plaintiffs "do not oppose Mr. Okpaku submitting a

9    targeted response to Dr. Cameron's Rebuttal Report."  *Id.* at 7.  The Court adopts that proposal:

10    Uber may serve a surrebuttal report by Okpaku, contradicting or rebutting Cameron's opinions, no

11    later than December 30, 2025.[9]

12        Even if aspects of Cameron's rebuttal report exceeded the bounds of Rule 26(a)(2)(D)(ii),

13    the Court would reach the same outcome.  Belatedly disclosed evidence may be introduced at trial

14    if the delay is harmless or substantially justified.  *Yeti by Molly*, 259 F.3d at 1107.  The burden is

15    on the disclosing party to show harmlessness.  *Id.*  Though Plaintiffs do not address harmlessness

16    in detail, they accurately note that Uber deposed Cameron regarding her opinions following the

17    production of her rebuttal report.  *See generally* Dkt. No. 4399-1.  The record also reflects that, at

18    least in Uber's view, "Dr. Cameron appears to have largely repurposed an *opening* report she

19    recently served in the litigation brought against Uber by the Massachusetts Attorney General."

20    Dkt. No. 4391 at 4 (citing Dkt. No. 4312-1 at 102–58).  Uber was therefore aware of Cameron's

21    opinions prior to expert discovery in this litigation.  Plaintiffs' acquiescence to Uber offering a

22    surrebuttal dispels any prejudice that might remain.

23        Uber invokes general principles against sandbagging, Dkt. No. 4391 at 4, but abstract

24    concerns about gamesmanship do not establish prejudice.  To the extent that the Court's interest in

25    trial management might be relevant, excluding Plaintiffs' expert opinion evidence regarding

26

27    [9] The expert discovery cutoff and deadline for *Daubert* motions have both passed with respect to
at least the first bellwether case.  If Plaintiffs believe either a deposition or *Daubert* motion to be
28    warranted (for at least that first trial) after Uber serves its surrebuttal report, they must therefore
seek leave from Judge Breyer to modify his scheduling orders.

United States District Court
Northern District of California

1    control over drivers from the first wave of trials in this multidistrict litigation would reduce the

2    utility of those cases as bellwethers.  Expert discovery has not closed for other cases that remain to

3    be tried later, so Plaintiffs' delayed disclosure presumably would not affect their ability to offer

4    the same evidence beyond the first wave.  Trying the first wave of bellwether cases without expert

5    opinion evidence that has already been disclosed and might be offered in other cases could call

6    into question whether the outcome of the bellwethers is predictive.  That potential to undermine

7    the bellwether process outweighs the Court's interest in deterring belated disclosures in future

8    cases.[10]

9          Accordingly, the Court declines to strike Cameron's rebuttal report, but allows Uber to

10   serve a surrebuttal report by Okpaku, contradicting or rebutting Cameron's opinions, no later than

11   December 30, 2025.

12   **III.    MOTION TO STRIKE SUPPLEMENTAL REPORT**

13         Uber moves to strike a supplemental report by Dr. Minette Drumwright, whom Plaintiffs

14   offer as an "an expert in marketing, strategic communications, ethics, corporate social

15   responsibility, and corporate governance."  Dkt. No. 4392 at 4.

16         Rule 26 requires a party to supplement its expert disclosures "in a timely manner if the

17   party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the

18   additional or corrective information has not otherwise been made known to the other parties

19   during the discovery process or in writing."  Fed. R. Civ. P. 26(a)(2)(E), (e).  "However,

20   supplementary disclosures do not permit a party to introduce new opinions after the disclosure

21   deadline under the guise of a 'supplement'."  *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062

22   (C.D. Cal. 2010).  "[T]he duty to supplement under Rule 26(e)(1) [cannot] be used as a vehicle to

23   disclose entirely new expert opinions after the deadline established by the court under Rule

24   26(a)(2)(C)."  *Carter v. Finely Hosp.*, No. 01 C 50468, 2003 WL 22232844, at *2 (N.D. Ill. Sept.

25

26

27   ───────────────

     [10] These considerations are less obviously applicable in the context of Plaintiffs' motions to strike
28   portions of Uber's expert reports discussed above, where Uber did not invoke the exceptions for
     harmlessness or substantial justification, and Plaintiffs' motions address only narrow portions of
     the reports at issue.

22, 2003).[11]

Courts also analyze supplemental reports produced after an expert disclosure deadline under Rule 37(c)'s framework of substantial justification and harmlessness. *Se, e.g.*, *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18CV967-GPC(MSB), 2020 WL 8621524, at *9 (S.D. Cal. June 12, 2020) (citing *Yeti by Molly*, 259 F.3d at 1106). Courts generally permit expert witnesses to supplement their reports to address evidence produced after the date of an original report, at least where a party was not delinquent in failing to obtain the evidence earlier. *E.g.*, *Sherwood v. BNSF Ry. Co.*, No. 1:16-cv-00008-EJL-REB, 2018 WL 3340571, at *8 (D. Idaho July 6, 2018); *cf. Carter*, 2003 WL 22232844, at *3 (faulting a party for failing to obtain a relevant document before the expert disclosure deadline). "[C]ourts routinely allow harmless supplementation to the extent, it merely clarifies or amplifies matters expressly referenced in the original report without revising or reversing the original opinion." *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF, 2019 WL 6174936, at *7 (N.D. Cal. Nov. 20, 2019) (cleaned up).

Plaintiffs served an initial report by Drumwright on the September 26, 2025 deadline for disclosure of such reports, in which Drumwright asserted (among other opinions) that Uber "was unreasonable, reckless, and irresponsible in using dark-PR tactics to get its nonprofit partners to 'safetywash' its brand image.'" *See* Dkt No. 4352-1 at 6 (footnote omitted). Uber does not challenge that report here. On October 1, 2025, Plaintiffs deposed Emilie Boman pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure regarding Uber's relationships with nonprofit organizations. *See* Dkt. No. 4393-3. Uber produced a sixty-page document captioned as a deposition aid shortly before Boman's deposition, consisting of a chart of 242 organizations that it worked with, the nature of that work, and the compensation Uber provided to them. Dkt. No. 4393-2. On October 10, 2025, Uber's counsel acknowledged by email that Plaintiff's counsel had

---

[11] Uber seems to quote *Carter* as further stating that "[t]his is particularly true where, as here, all but one of the documents on which the new expert opinions are based" were previously available. Dkt. No. 4392 at 3–4 (missing an opening quotation mark). But rather than discussing "all but one of the documents," *Carter* instead referenced "*the materials* on which the new expert opinions are based." 2003 WL 22232844, at *2 (emphasis added). The Court trusts that discrepancy to be a good faith error in failing to identify accurately the bounds of quoted text or an alteration thereto.

expressed intent to "supplement and/or submit rebuttals" from certain expert witnesses, including Drumwright, and requested clarification of when any supplemental reports would be produced. Dkt. No. 4393-4 at 2.[12]  On October 22, 2025, Plaintiffs served a thirty-eight-page[13] supplemental report by Drumwright addressing Uber's relationships with nonprofit organizations.  Dkt. No. 4393.  In the conclusion of that supplemental report, Drumwright stated that "additional materials [she] reviewed did not change any of [her] opinions disclosed in [her] Opening Report," but "[i]nstead, they reinforced and provided additional bases for [her] earlier opinions that Uber used dark-PR strategies to get its nonprofit partners to 'safetywash' its brand image." *Id.* at 37. Drumwright's deposition occurred on October 26, 2025.  Dkt. No. 4393-5 at 2.  Plaintiffs assert, and Uber does not dispute, that Uber did not serve a rebuttal report addressing Drumwright's opinions.  *See* Dkt. No. 4392 at 6.[14]

Drumwright's supplemental report cites the deposition aid from Boman's deposition, which Uber produced after Drumwright's initial report.  Dkt. No. 4393 at 4 nn.3–6 & 8; *id.* at 5 nn.9 & 13–22; *id.* at 10 n.42; *id.* at 32 nn.108–11.  The supplemental report also occasionally cites the transcript of Boman's deposition testimony.  *Id.* at 5 nn.10 & 11; *id.* at 8 n.38.  The relevant portions of Boman's deposition are not included in the current record, but Uber neither addresses those citations nor explains its seemingly inaccurate assertion that "Dr. Drumwright's supplemental report *does not* cite to any substantive deposition testimony by Ms. Boman."  *See* Dkt. No. 4392 at 3.  Drumwright's supplemental report also extensively cites exhibits from Boman's deposition.  *See* Dkt. No. 4393 at 8 n.38; *id.* at 10 nn.44–45; *id.* at 11–13 nn.47–56; *id.* at 14 nn.58–62; *id.* at 15–16 nn.65–70; *id.* at 17 nn.73–75; *id.* at 19 n.82; *id.* at 25 nn.91 & 94–95; *id.*

_____

[12] Any response by Plaintiffs' counsel is not included in the record before the Court, but Uber's present assertion that Plaintiffs provided "*no* advance notice" of a potential supplemental report by Drumwright does not appear to be accurate.  *See* Dkt. No. 4392 at 3 (emphasis in original).
[13] Not including appendices listing the documents that Drumwright reviewed.
[14] Plaintiffs also assert that "Uber disclaimed any intent to rebut Dr. Drumwright." Dkt. No. 4392. The document Plaintiffs cite for that assertion was filed one day before Plaintiffs served Drumwright's supplemental report.  Dkt. No. 4193.  It therefore sheds little light on whether Uber might have wished to rebut the supplemental report, which Plaintiffs served only two days before the rebuttal deadline.  *See* Dkt. No. 3997 at 2.  That said, Uber does not argue that it would have served a rebuttal report if these opinions were disclosed earlier, nor has Uber sought leave to serve a belated rebuttal report if the supplemental report is not stricken.  *See id.* at 4 (requesting instead to resume Drumwright's deposition).

1    at 30 n.101; *id.* at 31 nn.104–05.[15]  Uber asserts (and Plaintiffs do not dispute) that those exhibits

2    were produced prior to Drumwright's opening report.  The extent to which Drumwright's

3    deposition testimony may have explained or confirmed the relevance of those exhibits is not clear

4    from the current record.

5         Accordingly, at least some portions of Drumwright's supplemental report address a

6    deposition aid and deposition testimony that was not available at the time of her initial report.

7    Uber's motion to strike the supplemental report in its entirety is therefore not justified.  While

8    Drumwright might have been able to address in her original report *some* of the documents she

9    discussed in her supplemental report, Plaintiffs may have reasonably hesitated to serve expert

10   opinions on documents that they had not yet had an opportunity to test through a Rule 30(b)(6)

11   deposition on the topic of Uber's relationship with nonprofits.  The Court finds the supplemental

12   report to be substantially justified on that basis.

13        Further, while Uber only had a few days to review the October 22 supplemental report

14   before Drumwright's October 26 deposition, the report is not extremely long or complex, and

15   Uber has not offered argument or evidence that its attorneys were unable to review and analyze the

16   report in that time.  Instead, Uber's counsel appears to have made a tactical decision to refrain

17   from questioning Drumwright about the supplemental report:

18            So on October 22nd, 2025, just four days before this deposition, 26
              days after the deadline for expert reports, plaintiffs served a 45-page
19            supplemental report from you, Dr. Drumwright. You have mentioned
              it a number of times throughout your deposition. I have very
20            purposefully not asked any questions about it because it is Uber's
              position that this report is untimely and defendants intend to move to
21            strike the supplemental report on those -- on those grounds.

22   Dkt. No. 4393-5 at 3 (Drumwright Dep. at 305:2–10).  The Court does not discern meaningful

23   prejudice where Uber *chose* not to question Drumwright about her supplemental opinions.

24        The supplemental report thus at least substantially consists of "harmless supplementation"

25   that "clarifies or amplifies matters expressly referenced in the original report without revising or

26

27   ───────────────────
     [15] This list includes only footnotes where Drumwright specifically cited a document as an exhibit
28   from Boman's deposition.  It is likely incomplete, in that other footnotes appear to cite some of the
     same documents only by Bates number.  *E.g.*, Dkt. No. 4393 at 17 n.71.

                                              19

United States District Court
Northern District of California

1   reversing the original opinion." *See Finjan*, 2019 WL 6174936, at *7.  Much of it addresses

2   materials that either were not previously available or had not previously been tested through a

3   Rule 30(b)(6) deposition on the relevant topic.  Based on principles of justification and

4   harmlessness, the Court declines to strike the supplemental report.

5          In the alternative, Uber sought "an additional 1.5 hours of deposition time, prior to the

6   deadline for the submission of Rule 702 motions, to question Dr. Drumwright about this report."

7   Dkt. No. 4392 at 4.  Plaintiffs respond that Uber "offers no explanation for why it did not take

8   advantage of the deposition time it already had." *Id.* at 6.  Plaintiff's point is well taken.  In the

9   interest of allowing for sufficient trial preparation, however, the Court GRANTS Uber leave to

10  depose Drumwright on the subject of her supplemental report for no more than one hour.  The

11  deposition will occur by videoconference no later than December 30, 2025, unless the parties

12  mutually agree to another date or format.  If Uber wishes to file a *Daubert* motion after the

13  deadline for such motions has passed, however, it must seek leave from Judge Breyer to modify

14  the scheduling order.

15  **IV.    SEALING MOTIONS**

16         This Order assumes the parties' familiarity with the "good cause" standard for filing

17  documents under seal in contexts no more than tangentially related to the merits of litigation,

18  which the Court has addressed previously in this litigation.  To the extent this Order allows sealing

19  under that standard, it does not address whether there would be "compelling reasons" to seal the

20  same documents if they were later filed in a context more closely related to the merits.

21         Uber filed an administrative motion to file under seal portions of Cameron's rebuttal report

22  that discuss internal company documents.  Dkt. No. 4315.  Uber has shown good cause to seal

23  most of its proposed redactions.  The Court has identified two exceptions.  First, the redaction at

24  page 46 discusses Uber's development of dynamic pricing algorithms in only high-level, generic

25  terms that cannot reasonably be considered confidential or to pose any risk of harm if disclosed.

26  Second, the redaction to paragraph 92(c) at page 49 discusses an aspect of Uber's "UberPro"

27  loyalty program that would be readily apparent to any driver who participates in it. The request to

28  seal those paragraphs is DENIED.  This administrative motion is otherwise GRANTED.  Uber is

20

directed to file a revised public version of Cameron's rebuttal report consistent with this Order no later than December 30, 2025.

Uber also filed an administrative motion to file under seal redacted portions of exhibits to the joint letter regarding Drumwright's supplemental report. Dkt. No. 4394. Many of the redactions relate to Drumwright's characterization of Uber's relationship with nonprofit organizations as "transactional" and "quid pro quo." Uber seeks to seal any reference to such characterizations, as well as to the documents that Drumwright believes support them. The Court does not find good cause to seal Drumwright's characterizations themselves, which reflect her opinions and do not appear likely to cause any particularized harm if disclosed. The Court DENIES to the request to seal proposed redactions at paragraph 5, paragraph 12, footnote 37, heading III (except for the direct quotation), the first three sentences of paragraph 14, paragraph 16, the final sentence of paragraph 20. The remaining redactions addressed by this administrative motion generally relate to specific internal documents, internal discussions of specific initiatives with specific partners, and monetary values of contributions, all of which might reveal corporate strategy in a manner that might cause Uber competitive harm or impair its relationships with nonprofit partners. The Court thus finds good cause to seal all other redactions except as specifically addressed above. Uber is directed to file a revised public version of Drumwright's supplemental report consistent with this Order no later than December 30, 2025.

Plaintiffs filed an administrative motion to consider sealing portions of the parties' joint letter regarding Orchowski's rebuttal report and two exhibits to that letter, based solely on Uber's designations of confidentiality. Dkt. No. 4383. Plaintiffs also filed an administrative motion to consider sealing two exhibits to the joint letter regarding Zgoba's rebuttal report, against based on Uber's designations. Dkt. No. 4385. Uber did not file a statement or declaration in support of sealing in response to either of those administrative motions, and the time allowed by Civil Local Rule 79-5(f)(3) has expired. Plaintiffs' administrative motions are therefore DENIED. Plaintiffs are directed to unredacted versions of those documents no later than December 30, 2025.

Some of the other documents addressed in the Court's substantive analysis above, such as Valliere's report, were filed in connection with motions to exclude expert testimony directed to

1    Judge Breyer and not refiled in connection with the present joint letters.  Those documents are

2    subject to an omnibus sealing process that will be resolved by Judge Breyer rather than by this

3    Court.  *See* Dkt. No. 4332, ¶ 6.

4    **V.    CONCLUSION**

5         For the reasons discussed above:

6         Plaintiffs' motion (Dkt. No. 4384) to strike portions of Dr. Lindsay Orchowski's rebuttal

7    report is GRANTED to the extent that report expresses opinions regarding bars, elevators, medical

8    examinations rooms, proximity as insufficient to cause sexual assault, or the personal

9    responsibility of sexual aggressors, as well as three specific opinions offered in section V.  That

10   motion is otherwise DENIED.

11        Plaintiffs' motion (Dkt. No. 4386) to strike the section of Dr. Kristen Zgoba's rebuttal

12   report in which Zgoba opines that it is impossible to eliminate all risk of sexual assault, as well as

13   a corresponding bullet point in Zgoba's summary of her opinions, is GRANTED.

14        Uber's motion (Dkt. No. 4391) to strike Dr. Lindsey Cameron's rebuttal report is

15   DENIED.  Uber may serve a surrebuttal report by Joseph Okpaku, contradicting or rebutting

16   Cameron's opinions, no later than December 30, 2025.

17        Uber's motion (Dkt. No. 4394) to strike Dr. Minette Drumwright's supplemental report is

18   DENIED.  Uber may further depose Drumwright on the subject of her supplemental report for no

19   more than one hour, no later than December 30, 2025.

20        Uber's administrative motions to file under seal (Dkt. Nos. 4315, 4394) are GRANTED in

21   part and DENIED in part.  Uber shall file revised public versions of documents as discussed above

22   no later than December 30, 2025.

23        Plaintiffs' administrative motions to consider whether documents should be sealed (Dkt.

24   Nos. 4383, 4385) are DENIED.  Plaintiffs shall file the documents at issue in the public record no

25   later than December 30, 2025.

26   / /

27   / /

28   / /

United States District Court
Northern District of California

The parties shall meet and confer and file either a stipulation and proposed order or a joint letter consistent with Pretrial Order No. 8 no later than December 30, 2025 addressing this Order's effect (or lack thereof) on trials beyond the first five bellwethers.

**IT IS SO ORDERED.**

Dated: December 17, 2025

_____
LISA J. CISNEROS
United States Magistrate Judge