1   Laura Vartain Horn (SBN 258485)
    **KIRKLAND & ELLIS LLP**
2   555 California Street, Suite 2700
    San Francisco, CA 94104
3   Telephone: (415) 439-1625
    laura.vartain@kirkland.com
4
    Allison M. Brown (Admitted *Pro Hac Vice*)
5   **KIRKLAND & ELLIS LLP**
    2005 Market Street, Suite 1000
6   Philadelphia, PA 19103
    Telephone: (215) 268-5000
7   alli.brown@kirkland.com

8   Jessica Davidson (Admitted *Pro Hac Vice*)
    **KIRKLAND & ELLIS LLP**
9   601 Lexington Avenue
    New York, NY 10022
10  Telephone: (212) 446-4800
    jessica.davidson@kirkland.com
11
    *Attorneys for Defendants*
12  UBER TECHNOLOGIES, INC.,
    RASIER, LLC, and RASIER-CA, LLC
13
                    **UNITED STATES DISTRICT COURT**
14
                   **NORTHERN DISTRICT OF CALIFORNIA**
15
                        **SAN FRANCISCO DIVISION**
16

17  IN RE: UBER TECHNOLOGIES, INC.,          Case No. 3:23-MD-03084-CRB
    PASSENGER SEXUAL ASSAULT
18  LITIGATION                               **DEFENDANTS UBER TECHNOLOGIES,
                                             INC., RASIER, LLC, AND RASIER-CA,
19                                           LLC'S OPPOSITION TO PLAINTIFF'S
    ───────────────────────────             MOTION TO PRECLUDE UBER FROM
20                                           "CHERRY-PICKING" CORPORATE TRIAL
    This Document Relates to:                WITNESSES AND FROM CALLING AT
21                                           TRIAL CERTAIN WITNESSES**
    *Jaylynn Dean v. Uber Techs., Inc.*,
22  No. 23-cv-06708
                                             Judge:      Hon. Charles R. Breyer
23                                           Courtroom:  6 – 17th Floor

24

25

26

27

28

1

## I.    INTRODUCTION

2        Plaintiff's motion asks the Court to: (1) bar Uber from calling any of its corporate

3   representatives live unless it agrees to produce Plaintiff's preferred witnesses (Katy McDonald, Gus

4   Fuldner, and Sunny Wong); and (2) preclude two other corporate witnesses (Todd Gaddis and Chad

5   Dobbs) from testifying at trial. Neither request has any merit. Rather, this is the latest volley in

6   Plaintiff's ongoing attempt to impede Uber's trial efforts and undermine Uber's ability to defend

7   itself at trial.

8        *First*, Plaintiff does not cite any caselaw remotely supporting the proposition that a corporate

9   defendant is under *any* obligation to produce its opponent's "preferred" witnesses who are located

10  outside the geographic subpoena limits set forth in Rule 45. Rather, the law is clear that the proper

11  course for such witnesses is to play their previously videotaped deposition testimony. That is standard

12  practice in MDL proceedings, and all three of Plaintiff's "preferred" witnesses have sat for trial-ready

13  video depositions multiple times.

14       *Second*, Plaintiff seeks to preclude Chad Dobbs and Todd Gaddis from testifying at trial as

15  fact witnesses, claiming that their proposed testimony exceeds the testimony they provided during

16  their 30(b)(6) depositions. This argument should also be rejected. Plaintiff concedes that Mr. Dobbs

17  was deposed on Uber's "independent contractor model" at his 30(b)(6) deposition, Mot. at 8, a topic

18  that *necessarily* encompasses questions about Uber's control over drivers on its platform. Notably,

19  counsel directly asked Mr. Dobbs at his deposition whether he would "admit that [Uber] had the

20  ability to *control* and supervise and monitor these drivers." Dep. of Chad Dobbs ("8/21 Dobbs Dep.")

21  395:13-17, Aug. 21, 2025 (Ex. 1) (emphasis added). Thus, Plaintiff clearly understood at Mr. Dobbs's

22  deposition that questions about control were fair play.

23       As to Mr. Gaddis, Plaintiff has no basis for objecting to any testimony about Uber's Safety

24  Reports and incident data, a topic that was fully explored during his 30(b)(6) deposition. And

25  although Mr. Gaddis's narrow testimony about the absence of in-app audio recording on Ms. Dean's

26  trip was not covered during his prior examination, that testimony is necessary to counter Plaintiff's

27  false representation (misconstruing Mr. Turay's mobile events log) that Mr. Turay had activated an

28

1

in-app audio-recording feature during the ride, and that Uber either destroyed that recording or allowed it to be destroyed. Uber offered to produce Mr. Gaddis for a supplemental deposition on this topic to avoid any perceived prejudice (an offer that, of course, still stands), but Plaintiff refused even to entertain it. A trial is a search for truth, and barring this testimony would leave jurors with a false impression about the relevant evidence. Such a result can and should be avoided.

## II.    BACKGROUND

The Judicial Panel on Multidistrict Litigation created this MDL proceeding to "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary." *In re Uber Techs., Inc. Passenger Sexual Assault Litig.*, 699 F. Supp. 3d 1396, 1398 (J.P.M.L. 2023). In order to effectuate these goals, Judge Cisneros entered a comprehensive protocol governing the conduct of depositions that contemplated the use of deposition testimony when cases are ultimately remanded or transferred for trial. *See* Doc. No. 886, § 1 ¶ 3 ("All depositions noticed in this MDL or appropriately cross-noticed . . . are deemed noticed and taken in the MDL proceedings, subject to appropriate evidentiary objections to the admission of deposition testimony or exhibits on summary judgment or at trial."); *see also id.* § II, ¶ 5 ("All parties shall cooperate as necessary so that the Court may issue a ruling on any objection to a document prior to trial or prior to any remand of cases for trial in the transferor courts."). This protocol was entered *after* Jaylynn Dean directly filed her lawsuit in the MDL. *See* Doc. No. 195.

On December 8, Uber submitted a timely witness disclosure for the *Dean* trial that identified certain of its employees, including Todd Gaddis and Chad Dobbs, as likely to provide live testimony at trial. Although Uber employees Katy McDonald, Gus Fuldner, and Sunny Wong will not testify live at trial, each of them previously has been deposed in this litigation.

Mr. Wong sat for depositions on four separate occasions, all as a Rule 30(b)(6) witness, totaling more than 25.5 hours. Notably, his most recent examination—which occurred on October 14, 2025, *after* Plaintiff's case was transferred to the District of Arizona for trial—focused on the S-RAD score for Ms. Dean's subject trip and included over three hours of questioning from her counsel. *See* Dep. of Sunny Wong ("10/14 Wong Dep.") 414:9-414:13, Oct. 14, 2025 (Ex. 2) (Q. "So when

1   you say 'not that I know of,' I just want to clarify for the jury it's not that Uber knows of, there is no

2   other program, right?" A. "Correct.").

3       Similarly, Mr. Fuldner was deposed for more than 15.5 hours over the course of three separate

4   days, during which he was asked to talk to directly to the "jury" about a wide array of topics, including

5   Uber's three Safety Reports, sexual assault prevention measures, background checks and onboarding

6   processes, deactivation policies, and Uber's safety features. *See, e.g.*, Dep. of Gus Fuldner ("4/29

7   Fuldner Dep.") 629:19-22, Apr. 29, 2025 (Ex. 3) (Q. "[C]an you remind the jury who Tracey Breeden

8   is?" A. "Tracey was the leader of women's – women's safety."); Dep. of Gus Fuldner ("3/27 Fuldner

9   Dep.") 475:11-476:19, Mar. 27, 2025 (Ex. 4) (questioning about training).

10      And Ms. McDonald sat for four days of depositions, totaling 23.5 hours, during which she

11  testified for "the jury" on a host of topics, including sexual assault and sexual misconduct reporting.

12  *See, e.g.*, Dep. of Katy McDonald ("5/7 McDonald Dep.") 29:25-30:4, May 7, 2025 (Ex. 5) (Q.

13  "Similar to – for folks on the jury that may not know what Slack is, similar to texting each other. Do

14  you agree with that?" A. "Yes. It's a messaging app, application."); *see also, e.g., id.* 23:2-3, 39:21-

15  41:8).

16      Mr. Dobbs and Mr. Gaddis also were deposed during the course of this MDL. Mr. Dobbs was

17  questioned about Uber's "independent contractor model" at his 30(b)(6) deposition, Mot. at 8, during

18  which Plaintiff's counsel specifically asked Mr. Dobbs whether he would "admit that [Uber] had the

19  ability to control and supervise and monitor these drivers." 8/21 Dobbs Dep. 395:13-17. And Mr.

20  Gaddis testified about Uber's Safety Reports and incident data at his 30(b)(6) deposition.

21      After Mr. Gaddis was deposed, as part of Uber's trial-preparation efforts and in an attempt to

22  streamline issues for trial, Uber undertook a factual investigation to determine whether Mr. Turay

23  had in fact activated an in-app audio-recording feature during Ms. Dean's trip. That investigation

24  revealed that he had not. Upon completion of the investigation, Mr. Gaddis executed a short

25  declaration so that Plaintiff would be apprised of Uber's investigation and findings. Gaddis Decl. (Ex.

26  6). Uber then timely listed Mr. Gaddis on its December 8, 2025, witness list, and followed up on

27  December 15, 2025, with an offer to present Mr. Gaddis for a supplemental deposition. *See*

28

12/15/2025 Email from K. Bueno to R. Luhana & E. Hurd (Ex. 7).

## III.    ARGUMENT

### A.    Plaintiff Cannot Dictate Which Corporate Representatives Uber Chooses To Call Live At Trial.

Plaintiff concedes that her preferred corporate witnesses (Ms. McDonald, Mr. Fuldner, and Mr. Wong) are outside the 100-mile geographical limits of the Court's subpoena power and therefore cannot be compelled to appear at trial. Mot. at 3 (citing Fed. R. Civ. P. 45(c)). She nonetheless contends that if those witnesses exercise their rights under Rule 45, Uber should simultaneously be barred from calling any of its own preferred witnesses during its case-in-chief. But Uber has no obligation to call *any* corporate representative at trial. *Orbital Eng'g, Inc. v. Buchko*, No. CV 2:20-593, 2022 WL 170043, at *3 (W.D. Pa. Jan. 19, 2022) (quashing trial subpoena with respect to employees of plaintiff located outside subpoena limits and reasoning that while defendant will have opportunity to question them if plaintiff called them at trial, it "has no obligation to call any of these witnesses"). And to the extent any party wishes to present testimony from any "witnesses who are outside this court's Rule 45 subpoena power" and who elect to exercise their rights under Rule 45, the proper course is to "rely on video depositions" of those individuals. *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Prac. & Antitrust Litig.*, MDL 2785, 2021 WL 2822535, at *1, *4 (D. Kan. July 7, 2021). Such an approach comports with the longstanding rule that "'[o]rdinarily depositions, including video depositions, provide a superior means of securing the testimony of a witness *who is beyond the reach of a trial subpoena*[.]'" *Id.* (citing Fed. R. Civ . P. 43 advisory committee's note to 1996 amendment). Indeed, one of the "means of reducing duplicative discovery activity and expediting later trials" in multidistrict litigation is "videotaping key depositions" "for use at subsequent trials," which "can avoid multiple live appearances by the same witness." MANUAL FOR COMPLEX LITIGATION §§ 11.452, 20.132 (4th ed. 2004).

Plaintiff has not cited any authority that holds otherwise. Instead, Plaintiff relies on a couple of outdated decisions that permitted remote trial testimony from witnesses outside the geographic limits of a trial court's subpoena power under Rule 43. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 439

F. Supp. 2d 640, 643 (E.D. La. 2006) (cited in Mot. at 3-4) (finding "good cause" for compelling out-of-state witnesses to testify remotely, erroneously relying on pre-1996 amendment cases, even though they applied "the then-current Rule 45" rather than Rule 43); *Mullins v. Ethicon, Inc.*, No. 2:12-cv-02952, 2015 WL 8275744, at *2 (S.D. W. Va. Dec. 7, 2015) (relying on *Vioxx* in reaching same conclusion). These decisions are inapposite because they do not address the precise issue raised by Plaintiff's motion (i.e., a corporate defendant's fundamental right to pick which of its corporate representatives to call live at trial). In any event, they are at odds with ***binding Ninth Circuit law*** holding that such an approach improperly "stretch[es] the federal subpoena power well beyond the bounds of Rule 45[.]" *In re Kirkland*, 75 F.4th 1030, 1046 (9th Cir. 2023); *see also Bioconvergence LLC v. Attariwala*, No. 1:19-cv-01745-SEB-MG, 2023 WL 4494020, at *1-2 (S.D. Ind. June 29, 2023) (declining to follow *Mullins*, reasoning that interpreting Rule 43 and Rule 45 in such a manner is "'inconsistent with the text of Rule 45(c)'") (citing *Broumand v. Joseph*, 522 F. Supp. 3d 8, 10 (S.D.N.Y. Feb. 27, 2021)). Thus, Plaintiff's reliance on that caselaw is fundamentally misplaced.

Plaintiff also complains that it would be unfair for Uber to "present concise, engaging, and coherent live testimony . . . while forcing Plaintiff to splice together a mishmash of discovery depositions . . . ." Mot. at 3. But reliance on deposition testimony from a witness outside the Court's subpoena limits "occurs all the time[.]" *Air Turbine Tech., Inc. v. Atlas Copco AB*, 217 F.R.D. 545, 546 (S.D. Fla. 2003) ("Plaintiff will have the opportunity to read a deposition, and the ability to cross-examine the witness if Defendants present the witness live."). This is especially true in MDL proceedings where, as here, cases are worked up for trial in one venue but ultimately tried in another venue—a dynamic Plaintiff's experienced counsel was necessarily familiar with when this case was directly filed pursuant to PTO 6. *See In re EpiPen*, 2021 WL 2822535, at *5 (applying *Air Turbine* in MDL and rejecting argument that "defendants will enjoy a tactical advantage if they refuse to produce [the witnesses] for testimony during plaintiffs' case in-chief").

In any event, Plaintiff's claim of prejudice is simply not credible. As noted above, **Mr. Fuldner** has testified for more than 15.5 hours on safety-related issues; **Ms. McDonald** has testified for nearly 23.5 hours on sexual assault and sexual misconduct reporting, Uber's tracking of incident

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE
Case No. 3:23-md-03084-CRB

1  data, and other related topics; and **Mr. Wong** has testified for 25.5 hours (most recently on October

2  14, 2025) on a similarly wide range of matters related to SRAD and other safety features. The

3  questioning at the depositions was conducted in a manner that anticipated that it would be played to

4  a jury. For example, other plaintiffs' counsel used tight, cross-examination-style questioning at the

5  depositions and made multiple references to "the jury." *See* 4/29 Fuldner Dep. 629:19-22 (Q. "[C]an

6  you remind the jury who Tracey Breeden is?"); 3/27 Fuldner Dep. 475:11-19 (Q. "You determined

7  personally that the sharing of the community guidelines, a process you just discussed, that was

8  insufficient to provide training and education to your drivers? You decided that, right?" A. "I directed

9  the team to invest in more and – a more extensive education, which we – which the team built and

10  rolled out."); 5/7 McDonald Dep. 10:16-17 (Q. "Good afternoon. Could you please introduce yourself

11  to the jury?"); *id.* 40:22-25 (Q. "And were you also familiar with similar safety issues in the United

12  States?" A. "No. My work was very exclusively in Latin America and parts of EMEA such as South

13  Africa."); 10/14 Wong Dep. 470:13-19 (Q. "Can you, as the person that's in charge of the data science

14  team that addresses the risk of sexual assault and sexual misconduct, affirm for the jury that the

15  middle of the night is a more high risk time for sexual assault and sexual misconduct than daytime?");

16  10/14 Wong Dep. 420:7-16 (Q. "Did Uber find Ms. Dean, Jaylynn Dean, the safest match possible

17  on November 15, 2023?" A. "Again, I have no idea about that since I don't have visibility into the

18  other plans available at the time. All we know is that the trip wasn't flagged based on the threshold

19  we set.").

20      Finally, Plaintiff's claim that "[t]he same rules on live corporate witnesses should apply to

21  both sides," Mot. at 5, does not change the analysis. After all, "[j]ust as the Rules may prevent

22  plaintiff[] from calling [Uber's] witnesses during [her] case-in-chief, the Rules also may restrict

23  [Uber] from calling any of plaintiff['s] witness[es] who are beyond the court's Rule 45 subpoena

24  power." *In re EpiPen*, 2021 WL 2822535, at *6 (denying request to allow live remote testimony by

25  witnesses outside the court's subpoena power). "So, to the extent any 'tactical advantage' exists, it

26  applies equally to both ends of the caption and their witnesses." *Id.* Contrary to Plaintiff's claim, then-

27  Magistrate Judge Corley did not rule otherwise in *In re Pacific Fertility Center Litig.*, No. 18-1586,

28

6

ECF 792 (N.D. Cal. May 12, 2021. That case concerned allegations that Cryoport—a "third-party"—"ha[d] agreed to produce . . . two witnesses [the defendant] want[ed] to testify but . . . refus[ed] to allow the witness Plaintiffs want[ed] to call to testify live, even via video." Mot. Ex. F at 1-2. It did not remotely address whether a corporate defendant that chooses to call certain of its out-of-state witnesses as part of its case-in-chief somehow forfeits the rights of various other absent employees who are beyond the geographic limits of the Court's subpoena authority.

In sum, Plaintiff is effectively asking the Court for veto power over Uber's trial strategy. This request is unprecedented and, if granted, would deny Uber's right to a fair trial.

## B.  Plaintiff's Attempt To Preclude Mr. Dobbs And Mr. Gaddis From Testifying Should Also Be Rejected.

Plaintiff also urges the Court to preclude Uber from calling Mr. Dobbs and Mr. Gaddis at trial on the ground that they were not previously identified in Uber's Rule 26 disclosures. *See* Mot. at 1; *see also id.* at 5-8. As explained below, however, the substance of both witnesses' trial testimony was largely disclosed during their prior 30(b)(6) depositions, satisfying Uber's Rule 26 obligations. *See United States v. Johnson & Johnso*n, No. 12-7758 (MAS) (LHG), 2021 WL 7906211, at *4 (D.N.J. June 14, 2021) ("[T]he disclosures and Relators' own acknowledgement of the identities of the witnesses suffices to render them otherwise made known to Relators, such that Janssen's failure to formally disclose them earlier does not constitute a violation of Rule 26."). And while Mr. Gaddis's narrow testimony about the absence of in-app audio recording on Ms. Dean's trip was not covered at his deposition, Uber has offered to produce Mr. Gaddis to sit for a deposition that addresses this specific topic, which would mitigate any supposed prejudice to Plaintiff.[1]

---

[1]    Plaintiff's cases are all inapposite. *See, e.g.*, *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) ("Plaintiffs received Vuckovich's report one month before they were to litigate a complex case. To respond to it, plaintiffs would have had to depose Vuckovich and prepare to question him at trial."); *Zone Sports Ctr., LLC v. Rodriguez*, No. 1:11-cv-00622-SKO, 2016 WL 224093, at *10 (E.D. Cal. Jan. 19, 2016) ("Zone's request to designate an expert years after the deadline and only months prior to trial is a change in litigation strategy" and "Zone's significant delay in raising this issue disregards the Court's need to manage its docket and the public's interest in expeditious resolution of litigation."); *Mendoza v. Intuitive Surgical, Inc.*, No. 18-CV-06414-LHK, 2021 WL 1910886, at *3 (N.D. Cal. May 12, 2021) (excluding new fact witness who would testify about plaintiff's medical condition and damages a day before final pretrial conference where defendant "did not obtain discovery from or depose" the individual).

1

2

a. *Mr. Dobbs Should Be Permitted To Testify About Uber's Lack Of Control Over Third-Party Independent Drivers.*

3   In its witness disclosures, Uber disclosed that its employee, Chad Dobbs, would testify at trial

4   "concerning Uber's lack of control over third-party independent drivers and Uber's independent

5   contractor model." Doc. 4654-2, Defs.' Am. Proposed Witness List at 3-4. Plaintiff concedes that Mr.

6   Dobbs "was deposed as a 30(b)(6) witness" on topics "that included Uber's 'reasoning and basis for

7   using an independent contractor model.'" Mot. at 8. Nonetheless, Plaintiff argues that Mr. Dobbs

8   should not be permitted to testify about Uber's lack of control over third-party independent drivers,

9   on the theory that "Mr. Dobbs did not sit as a 30(b)(6) witness on Uber's 'control,' or lack thereof,

10  over its drivers." *Id.*

11  Plaintiff's argument is nonsensical. Lack of control is the defining characteristic of an

12  independent-contractor model. Just last week, Plaintiff argued that, under Arizona law, the

13  determination whether an individual is an employee or an independent contractor turns on "the

14  common-law 'right to control' standard." Doc. 4621, Pl.'s Opp. to Defs.' Mot. for Partial Summ. J. at

15  15; *see, e.g.*, *Santorii v. MartinezRusso, LLC*, 381 P.3d 248, 253 (Ariz. Ct. App. 2016) (under common

16  law, "[w]hether an individual is an employee or an independent contractor is fundamentally a question

17  of control").[2] As such, Mr. Dobbs's corporate testimony about Uber's independent-contractor model

18  necessarily encompasses Uber's lack of control over drivers on the Uber platform.

19  This reality is obviously known to Plaintiff. After all, during Mr. Dobbs's deposition,

20  Plaintiff's counsel specifically asked Mr. Dobbs whether he would "admit that [Uber] had the ability

21  to *control* and supervise and monitor these drivers." 8/21 Dobbs Dep. 395:13-17 (emphasis added).

22  Plaintiff's counsel posed this question—and Uber did not object on scope grounds (or otherwise)—

23  precisely because everyone understood that Mr. Dobbs's 30(b)(6) deposition encompassed issues

24  concerning Uber's control (or lack thereof) over drivers on its platform. Accordingly, the notion that

25  any testimony from Mr. Dobbs regarding lack of control would constitute some kind of unfair surprise

26

27

[2]   As Uber explained in its partial summary judgment motion, Arizona statutory law explicitly classifies drivers on the Uber platform as independent contractors. *See* Doc. 4356, Defs.' Mot. for Partial Summ. J. at 10-12.

28

8

1  to Plaintiff strains credulity and should be rejected.

2            *b.  Mr. Gaddis Should Be Permitted To Testify About Uber Safety Reports, Incident*

3               *Data, And The Absence Of In-App Audio Recording On Ms. Dean's Trip.*

4       Uber's witness disclosure also states that its employee, Todd Gaddis, will testify at trial about,

5  among other things, "the absence of in-app audio recording on the subject trip, as well as Uber's Safety

6  Reports and incident data." Doc. 4654-2, Defs.' Am. Proposed Witness List at 4. Plaintiff argues that

7  Mr. Gaddis "should not be permitted to testify at all," but "at a minimum, his proposed testimony

8  regarding 'the absence of in-app audio recording on the subject trip' . . . must be excluded." Mot. at

9  6. These arguments should be rejected, too.

10       As a threshold matter, Plaintiff's attempt to preclude Mr. Gaddis from testifying about Uber's

11  Safety Reports and incident data is meritless. Plaintiff acknowledges that "Mr. Gaddis was deposed as

12  a 30(b)(6) witness . . . on general topics concerning Uber's Safety Reports." Doc. 4654-1, London

13  Decl. ¶ 7. In addition, the 30(b)(6) deposition notices Plaintiff attaches demonstrate that Uber

14  produced Mr. Gaddis as its corporate representative to testify about incident data. *See, e.g.*, Doc. 4654-

15  3 Pls.' Am. Notice of 30(b)(6) Deposition to T. Gaddis, at ECF p. 31 (demanding testimony about "the

16  numbers and classifications of Sexual Misconduct and Sexual Assault incidents reported to Uber by

17  Riders" from 2012 to the present). Plaintiff does not explain why Mr. Gaddis should be precluded

18  from testifying about the specific topics for which he was produced and on which he was deposed and

19  has not come close to establishing any violation of Rule 26 as to these issues.

20       While Mr. Gaddis's testimony about the absence of in-app audio recording was not the subject

21  of a prior examination, excluding it from trial would be disproportionate and improper given: (1) its

22  importance to refuting a key theme of Plaintiff's case; and (2) Uber's good-faith attempt to make Mr.

23  Gaddis available for a limited deposition on this subject. As Plaintiff previews in her motion, she

24  intends to tell the jury that a notation in Mr. Turay's mobile events log for Ms. Dean's trip—

25  "safety_audio_recorder_driver_trip_ended_with_recording"—somehow "confirms . . . that the trip

26  had been recorded through the Uber app," and that "Uber destroyed [that recording] (or allowed it to

27  be destroyed . . .)." Mot. at 6. But there is no evidence supporting such a claim. Uber never

28  

                                               9

1    "confirm[ed]" that this notation meant that Mr. Turay had recorded the trip. Indeed, when Plaintiff

2    questioned one of Uber's corporate representatives, Greg Brown, about whether this notation meant

3    that Mr. Turay was audio-recording the trip, Mr. Brown testified that he did not "know the answer to

4    that specific question one way or the other." Dep. of Greg Brown 229:11-20, July 15, 2025 (Ex. 8);

5    Dep. of Greg Brown 332:1-11, July 16, 2025 (Ex. 9).[3]

6           In response to Plaintiff's allegations, Uber conducted a full investigation into Mr. Turay's

7    mobile events log, demonstrating unequivocally that Mr. Turay did *not* activate in-app audio recording

8    during this trip. As Mr. Gaddis explains in his two-page declaration, "after questions arose from

9    Plaintiffs' counsel concerning a reference to an event in Mr. Turay's Mobile Events Log," he "was

10   asked by counsel for Uber to look into whether Hassan Turay activated an in-app audio recording

11   during the ride between Ms. Dean and Mr. Turay." Gaddis Decl. ¶¶ 2, 3 (Ex. 6). Mr. Gaddis explains

12   that "if there had been an in-app audio recording," Mr. Turay's mobile events log would have included

13   other notations that are not found in the log for his trip with Ms. Dean. *Id.* ¶¶ 6, 7. "Based on these

14   findings, an in-app audio recording was never started on the Subject Trip." *Id.* ¶ 8; *accord id.* ¶ 5.

15          The only reason Uber has designated Mr. Gaddis to testify about this topic is to ensure that

16   jurors are not left with a false narrative *created by Plaintiff* with respect to in-app audio recording. If

17   Plaintiff is willing to stipulate that she will no longer press this false claim, then Mr. Gaddis will have

18   no need to testify on that topic and Uber would be willing to withdraw his declaration. But if Plaintiff

19   insists on telling the jury a demonstrably false version of events, "the 'opening the door' principle

20   allows [Uber] to introduce evidence on the same issue to rebut any false impression that might have

21   resulted from the earlier" evidence. *United States v. Sine*, 493 F.3d 1021, 1037 (9th Cir. 2007)

22   (emphasis and internal citations omitted). "Under the open-door doctrine, when a party puts an issue

23

24   _____

     [3]    Plaintiff also claims that one of Uber's experts, Vida Thomas, represented "that Turay 'apparently
     did audio record Plaintiff J.D.'s ride.'" Mot. at 6 (quoting Thomas Rebuttal Rep. at 7). But Ms. Thomas
25   was merely responding to the report of one of Plaintiff's experts, Thomas Tremblay, who incorrectly
     assumed that Mr. Turay had "audio recorded . . . the Incident Ride," and faulted Uber for "not
26   requir[ing] [Mr. Turay] to have video or audio recording during the ride." 9/26/2025 Tremblay Rep.,
     Sch. A.1 at 8-9 (ECF 4350). Ms. Thomas simply noted that "Mr. Tremblay does not explain how"
27   requiring drivers to engage video or audio recording "would have prevented the alleged sexual assault"
     given his understanding that Mr. Turay *had* recorded the ride. *See* Pl.'s Ex. D (Thomas Rebuttal
28   Report).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE
Case No. 3:23-md-03084-CRB

1  into evidence it must accept its opponent's commensurate response." *United States v. Jett*, 908 F.3d

2  252, 271 (7th Cir. 2018). Here, that "commensurate response" is evidence that the "safety_audio-

3  _recorder_driver_trip_ended_with_recording" notation does not mean what Plaintiff thinks it means.

4        Moreover, Uber has offered to make Mr. Gaddis available for a deposition in advance of trial

5  to address his declaration and Uber's corresponding investigation. *See* 12/15/2025 Email from K.

6  Bueno to R. Luhana & E. Hurd (Ex. 7). But Plaintiff refused even to "entertain" Uber's offer unless

7  Uber agreed to "produce [Mr. Gaddis's] custodial file today, waiving all privilege." 12/15/2025 Email

8  from E. Hurd to K. Bueno (Ex. 10). Plaintiff did not explain why she would need Mr. Gaddis's entire

9  custodial file (including all privileged materials) to depose Mr. Gaddis on the exceedingly narrow

10  subject matter in his eight-paragraph declaration. Rather, Plaintiff apparently continues to take the

11  view that there are no limits on discovery, disregarding the proportionality principles codified in Rule

12  26. *See* Fed. R. Civ. P. 26(b)(1). At any rate, Uber's offer stands—if Plaintiff wishes to avail herself

13  of it. But what Plaintiff cannot do is refuse to depose Mr. Gaddis and then cry "prejudice." *See Lanard*

14  *Toys, Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (district court properly rejected claim

15  of prejudice where appellants "made no effort whatsoever to depose" the expert at issue); *see also In*

16  *re Social Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-md-03047-YGR (PHK),

17  2025 WL 3043392, at *4 (N.D. Cal. Oct. 31, 2025) ("[C]ourts have found that allowing for a

18  deposition of a late-disclosed witness can cure the prejudice suffered by the opposing party . . . .").

19        For all of these reasons, if Plaintiff falsely claims at trial that Mr. Turay activated in-app audio

20  recording, Uber should be permitted to correct that claim through the testimony of Mr. Gaddis.

21  **III.    CONCLUSION**

22        For the foregoing reasons, Plaintiff's motion to preclude should be denied.

23

24   DATED: December 17, 2025                    Respectfully submitted,

25                                               */s/ Laura Vartain Horn*

26                                               Laura Vartain Horn (SBN 258485)
                                                 **KIRKLAND & ELLIS LLP**

27                                               555 California Street, Suite 2700
                                                 San Francisco, CA 94104

28

Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE
Case No. 3:23-md-03084-CRB

1

## PROOF OF SERVICE

I hereby certify that on December 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Laura Vartain Horn*

Laura Vartain Horn

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28