1   LAURA VARTAIN HORN (SBN: 258485)
    Laura.vartain@kirkland.com
2   **KIRKLAND & ELLIS LLP**
    555 California Street, 30th Floor
3   San Francisco, CA 94104
    Telephone: (415) 439-1400
4
    ALLISON M. BROWN (Pro Hac Vice
5   admitted)
    alli.brown@kirkland.com
6   2005 Market Street, Suite 1000
    Philadelphia, PA 19103
7   Telephone: (215) 268-5000
8   JESSICA DAVIDSON (Pro Hac Vice
    admitted)
9   jessica.davidson@kirkland.com
    601 Lexington Avenue New York, NY 10022
10  Telephone: (212) 446-4800
11  *Attorneys for Defendants*
    UBER TECHNOLOGIES, INC.,
12  RASIER, LLC, and RASIER-CA, LLC
13

14              **UNITED STATES DISTRICT COURT**
15             **NORTHERN DISTRICT OF CALIFORNIA**
                  **SAN FRANCISCO DIVISION**
16

17  IN RE: UBER TECHNOLOGIES, INC.,          Case No. 3:23-md-03084-CRB
    PASSENGER SEXUAL ASSAULT
18  LITIGATION                               **JOINT PROPOSED PRETRIAL ORDER**

19  ──────────────────────────────
    This Document Relates To:              Judge:        Hon. Charles R. Breyer
20                                         Courtroom:    6 – 17 Floor
    *Jaylynn Dean v. Uber Techs., Inc.*,   Date:         January 6, 2026
21  N.D. Cal. No. 23-cv-06708              Time:         10:00 a.m.
    D. Ariz. No. 25-cv-4276
22

23

24

25

26

27

28

## JOINT PROPOSED PRETRIAL ORDER

Defendants Uber Technologies, Inc., Rasier, LLC, Rasier-CA, LLC (collectively "Uber"), and Plaintiff Jaylynn Dean respectfully submit this Joint Proposed Pretrial Order.

## I.     SUBSTANCE OF THE ACTION

This is a personal injury action. Plaintiff Dean alleges that she was raped by a driver using the Uber platform named Hassan Turay on November 15, 2023, in Phoenix, Arizona. She asserts claims against Uber for negligence, vicarious liability (under respondeat superior and apparent agency theories), and strict products liability (design defect). Uber denies liability and asserts the following defenses: superseding cause, nonliability for independent-contractor acts and acts outside the scope of employment, and state of the art.

## II.     RELIEF PRAYED

Plaintiff Dean seeks compensatory damages for her past and future emotional distress. She also seeks punitive damages. Uber denies liability, including but not limited to causation, opposes Plaintiff's requested relief, and seeks entry of a take-nothing judgment.

## III.     STIPULATED FACTS

### A.     Agreed – Uber Defendants

There are three Uber Defendants: Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC. The jury instructions and verdict form refer to these entities collectively as "Uber." You may see evidence that discusses one or more of these Uber Defendants individually. In evaluating the evidence against the Uber Defendants, you should treat these three Defendants as if they are a single Defendant. Your verdict must be the same as to all of the Uber Defendants.

### B.     Plaintiff's Proposed Stipulated Fact – S-RAD Stipulation

The parties stipulated as to the average S-RAD score for daytime trips in Phoenix and Tempe, AZ over a 7-day period ending on June 28, 2024. ECF 4493.

### Plaintiff's Position

As explained in Plaintiff's opposition to summary judgment, this stipulated fact is relevant to *Dean* because it shows what the average daytime S-RAD score was in the same region, albeit eight months later. Uber has not produced the similar number for November 2023, when Dean was

assaulted, so the stipulated fact is the best evidence available. The fact that the Dean-Turay SRAD score was significantly higher than the daytime average in Phoenix in a relatively close time period goes to show the match was reckless.

The fact is stipulated and therefore comes into evidence. In seeking to exclude it, Uber asks the Court to accept Uber's theory of the case, specifically that its use of S-RAD was neither negligent nor reckless. Uber may argue to the jury that the company was reasonably careful in measuring Jaylynn Dean's match only against other night-time matches (as explained in Plaintiff's MSJ Opp, the Dean-Turay match was unacceptably risky even under that measure), and that the comparison between the match in this case and daytime matches in Phoenix does not matter. But whether Uber is right or wrong is a disputed fact question, not an evidentiary admission issue.

**Uber's Position**

As Plaintiffs well know from the extensive discovery and deposition testimony on the topic, the stipulated fact about the average daytime S-RAD score in June 2024 is irrelevant to *Dean* because it relates to an entirely different context—the alleged incident in *Dean* occurred at night, seven months later. Uber stipulated to the fact at issue to contextualize the S-RAD score of an entirely separate bellwether trip.

As Uber has established through documents and corporate testimony, the S-RAD model accounts for time of the day as one of the main factors for risk. It also takes into account different geographic areas and many other factors. For these reasons, a stipulation from another case about average S-RAD scores during the daytime in June is irrelevant to average S-RAD scores during the nighttime and in November (*Dean*).

That irrelevant stipulation would not plug any holes in Plaintiff's case. As this Court has ruled, Uber has satisfied all of plaintiffs' timely S-RAD discovery requests by producing comprehensive S-RAD data for the trips at issue. October 3, 2025 Order Resolving Discovery Letters Regarding Flack and S-RAD (ECF 4060). Most relevant here, Uber provided Plaintiff the average S-RAD score for nighttime trips in the Phoenix area in the seven days before the alleged incident. Plaintiff thus has the data relevant to the time of day, time of year, and geography at issue.

Permitting Plaintiff to admit an irrelevant stipulation about a different case involving different circumstances would serve no purpose but to intentionally confuse and mislead the jury.

## IV. JOINT STATEMENT – DISPUTED FACTUAL ISSUES[1]

### A. Negligence

- Whether Uber failed to use reasonable care under the circumstances.
- Whether Uber's conduct helped produce Plaintiff's injury, and whether Plaintiff's injury would not have occurred without Uber's acts or omissions.

### B. Design Defect

- Whether the Uber app was defective and unreasonably dangerous.
- Whether the defect helped produce Plaintiff's injury, and whether the injury would not have happened without the defect.
- Whether Uber is not at fault because the design of the Uber app conformed with the state of the art at the time the app was distributed.

### C. Respondeat Superior

- Whether Mr. Turay was at fault for Plaintiff's injuries.
- Whether Mr. Turay was Uber's employee.[2]
- If Mr. Turay was Uber's employee, whether his alleged acts were within the scope of his employment: (1) the act was the kind that the employee was employed to perform, (2) the act occurred substantially within the authorized time and space limit of the employment; and (3) the act was motivated at least in part by a purpose to serve Uber.[3]

---

[1] Section V, *infra*, lists additional disputed factual issues proposed by Uber only, followed by the parties' respective positions, concerning Plaintiff's negligence, design-defect, and apparent-agency claims.

[2] Uber's pending motion for partial summary judgment contends that Mr. Turay was an independent contractor, not Uber's employee, precluding Uber's vicarious liability as a matter of law under Arizona's Qualified Marketplace Statute, A.R.S. § 23-1603. *See* Defendants' Partial Motion for Summary Judgment (Dkt. No. 4379) ("MSJ") at 10-13. If the Court denies summary judgment, then the employee's alleged status as an employee must be tried to the factfinder.

[3] Uber's pending motion for partial summary judgment contends Mr. Turay's alleged misconduct was outside the scope of any employment relationship. *See* MSJ at 15-17. If the Court denies summary judgment, then whether the driver's alleged torts were within the scope of employment must be tried to the factfinder.

### D.    Apparent Agency

- Whether Mr. Turay was at fault for Plaintiff's injuries.
- Whether Uber caused Plaintiff to believe an agency relationship existed between Uber and Mr. Turay.
- If Uber caused Plaintiff to believe such agency relationship existed, whether Plaintiff relied on Uber's representations concerning the agency to her detriment.
- Whether such reliance was reasonably justified.

### E.    All Claims

- The appropriate assignment of fault to Uber, Mr. Turay, and Plaintiff.
- The existence and amount of compensatory damages.
- The existence and amount of punitive damages.

## V.    UBER'S ADDITIONAL PROPOSED DISPUTED FACTUAL ISSUES

### A.    Negligence

- Whether a foreseeable risk of injury to Plaintiff existed as a result of Uber's conduct.
- Whether there was a natural and continuous sequence of events stemming from Uber's alleged acts or omissions, unbroken by any intervening and superseding cause, that produced Plaintiff's injury, in whole or in part.
- Whether Plaintiff suffered actual damages as a result of the injury.

**Plaintiff's Position**:

Foreseeable risk of injury: The Court's Standing Order requests that "factual issues" be stated "with the same generality/specificity as any contested elements in the relevant jury instructions."[4] The Arizona pattern instruction on causation does not include the language Uber proposes here. Rather, the instruction asks whether conduct "helps produce an injury, and if the injury would have happened without the negligence." RAJI FAULT 6; *see also, e.g.*, *Ritchie v. Krasner*, 211 P.3d 1272, 1283-84 (Ariz. App. 2009) (finding no abuse of discretion in giving pattern causation instructions). Arizona courts, in rejecting foreseeability as a factor in assigning duty, state

---

[4] https://cand.uscourts.gov/sites/default/files/standing-orders/CRB-Civil-JuryTrial-StandingOrder-7-16-2025.pdf at 2.

1  that "courts … may still use foreseeability in determining whether the injury is foreseeable (breach

2  and causation)." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 828 (Ariz. 2018). But the fact that concepts of

3  foreseeability inform the scope of negligence claims does not mean that the jury is instructed in that

4  term; the Arizona pattern instructions confirm they are not. (For example, in California, negligence

5  is bounded by foreseeability, *see, e.g.*, *Carter v. Amtrak*, 63 F. Supp. 3d 1118, 1146 (N.D. Cal.

6  2014), but California jury instructions similarly do not include the term, *see* CACI 400.) *See Cavallo*

7  *v. Phoenix Health Plans, Inc.*, 518 P.3d 759, 766 (Ariz. 2022) (citing authority where "the trial court

8  properly refused a proposed instruction because it would 'only heighten the confusion of the jury in

9  an already sufficiently confused area'").

10      Uber seeks to clutter the jury instructions with (1) an instruction that the injury must be

11  foreseeable and (2) as discussed below, an instruction that the injury cannot be *too* unforeseeable.

12  True, a party is entitled to instructions about its theory of the case. But here, Arizona pattern

13  instructions require the jury to find breach and causation. A party is not entitled to instructions for

14  the sake of instructions. *See*, *e.g.*, *Yang v. ActioNet, Inc.*, 2017 WL 2117028, at *9 (C.D. Cal. Jan.

15  23, 2017) (rejecting proximate cause instruction "because it is redundant of the cause of action

16  instructions requiring the jury to find that Defendant's own affirmative conduct either caused or was

17  a substantial factor in causing Plaintiff's harm").

18      <u>Intervening and Superseding Cause</u>: The jury should not be instructed on whether Turay's

19  conduct was an intervening and superseding cause. *See Richie*, 211 P.3d at 1283-84 (affirming

20  refusal to give superseding cause instruction in addition to standard causation instruction). Where, as

21  here, the defendant's conduct and the third-party's conduct are part of the same causal chain, a

22  superseding cause instruction is not warranted. An "intervening force is not a superseding cause if

23  the original actor's negligence creates the very risk of harm that causes the injury." *State v. Slover*,

24  204 P.3d 1088, 1093 (Ariz. App. 2009) (affirming refusal to give jury instruction) (citation

25  omitted).[5] Nor can an "intervening cause [] be considered a superseding cause when the defendant's

26  conduct increases the foreseeable risk of a particular harm occurring through a second actor." *State*

27

28  [5] As Uber notes, Arizona applies the same causation rules in civil cases as it does in the criminal
    context.

1   *v. Aragon*, 473 P.3d 358, 360-61 (Ariz. App. 2020) (finding reversible error in giving superseding-

2   cause instruction), *aff'd on other grounds*, 505 P.3d 657 (Ariz. 2022).[6]

3          Uber cites *Dupray*, but that case confirmed that "[a]n event that contributes to the injuries"

4   can be "intervening and superseding" only if it "was *independent of*[] the original negligent act."

5   *Dupray v. JAI Dining Servs. (Phoenix), Inc.*, 432 P.3d 937, 945 (Ariz. App. 2018) (emphasis

6   added).[7] The court there ordered a superseding cause instruction only because of a downstream chain

7   of events that was attenuated from the duty and conduct at issue: an overserved person going home

8   and then going back out again. *See Nyerges v. Hillstone Rest. Grp., Inc.*, 2021 WL 3299625, at *27

9   (D. Ariz. Aug. 2, 2021) (explaining that *Dupray* and similar dram-shop cases involved "independent

10  and unpredictable" third-party decisions).

11         The whole basis for this case is that Turay's actions were not "independent and

12  unpredictable"—that Uber hired him and had reason to "predict" he would sexually assault Plaintiff.

13  *See State v. Cepeda*, 2020 WL 2203571, at *1 (Ariz. App. 2020) (affirming refusal to give

14  superseding cause instruction "given the direct relationship" between the defendant and the person

15  committing the conduct asserted to be an intervening cause). Uber says that this case is about Uber's

16  "designing its app and services," but it's not just about that.  It's about Uber's decision to match *this*

17  rider with *this* driver. *See* Pl's Opp'n to MSJ at 4-11. The decision in *Slover* is, contrary to Uber's

18  position, directly on-point. Just as "the risk of a drunk-driving victim's death … is indisputably a

19  foreseeable risk of … driving while intoxicated," so too is the risk of being sexually assaulted by an

20  Uber driver is indisputably a foreseeable risk of matching rides known to carry a heightened risk of

21  sexual assault by Uber drivers. That's not just a foreseeable risk, it's the *only* relevant risk.

22         Uber may, of course, defend this case by arguing that it did not breach its duty because its

23  negligence did not unreasonably increase the risk of Turay harming Plaintiff, for example because

24  Uber reasonably concluded Turay was a safe driver. Uber may also argue that Turay, and not Uber,

25  ───────────────

26  [6] Uber says that *Aragon* (which in turn relied on *Slover*) is not good law, but its judgment was
    affirmed on the grounds that the cause was not intervening; the case's analysis of what makes an
    intervening cause superseding remains good law.

27  [7] Uber says that the parties agree *Dupray* provides the appropriate legal standard. That is incorrect.
    The appropriate standard is as set out in cases like *Aragon* and *Slover*: "An intervening force is not a
28  superseding cause if the original actor's negligence creates the very risk of harm that causes the
    injury." *Slover*, 204 P.3d at 1093.

1    bears the lion's share (or even 100%) of the fault in this case. But those defenses go to Uber's

2    negligence and comparative fault, not superseding and intervening cause.

3           Uber's proposed instruction also makes no sense and would confuse the jury because, in this

4    case, Uber owes a duty to protect Plaintiff from the very risk it now says is a superseding cause: a

5    driver assaulting her. *See Stanley v. McCarver*, 92 P.3d 849, 853-56 (Ariz. 2004) (duty based on

6    voluntary undertaking to protect passenger safety);[8] *Nunez v. Prof. Transit Mgmt. of Tucson, Inc.*,

7    271 P.3d 1104, 1108 (Ariz. 2012) ("[C]ommon carriers have a special relationship with passengers,"

8    which "imposes a duty to avoid harm from risks created by the individual at risk as well as those

9    created by a third party's conduct.").[9] By definition, the occurrence of what one has a duty to prevent

10   cannot be a superseding cause.

11          <u>Actual Damages</u>: The parties agree that the existence and amount of damages is a disputed

12   fact question for all claims. Whether the injury resulted in damages does not differ by claim. The

13   pattern instruction Uber cites contemplates only a single claim for negligence. Reasonable

14   modification is necessary to account for multiple claims. *See* RAJI PLI 1, cmt. ("If the case is a

15   comparative fault case, additional transitioning and modification will be necessary to blend the

16   Product Liability Instructions and Fault 5-11 Instructions).

17          **<u>Uber's Position</u>**

18

19

20   [8] Uber takes much too narrow a view of voluntary-undertaking duty. As set out on Plaintiff's
     summary judgment opposition, Uber set out to provide safe transportation services to Plaintiff,
     including safe drivers. That is sufficient under Arizona law to create a duty to do so. *See Stanley*, 92

21   P.3d at 853 (doctor "undertaking to review [] x-ray"). Uber cites *Acri v. State*, 394 P.3d 660 (Ariz.
     App. 2017), but that case rejected a duty based on public policy concerns related to "a fundamental

22   public safety obligation." *Id.* at 663.
     [9] Despite Arizona eliminating a common carrier's heightened duty, such a carrier still owes an

23   affirmative duty of protection from third-party conduct: "Because common carriers have a special
     relationship with passengers, their duties traditionally have extended beyond the mere obligation not

24   to create a risk of harm." *Nunez*, 271 P.3d at 1108; *see also Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 800
     P.2d 962, 967 (Ariz. 1990) (quoted with approval in *Nunez*) (noting that common carriers "are often

25   held to possess an affirmative duty to guard the safety of their [passengers]."). In conformance with
     Arizona law on this point, Plaintiff did not pursue heightened, vicarious, or non-delegable common-

26   carrier liability in this state, but did pursue all available negligence theories. *See* MC ¶ 363(j)
     pleading special relationship). The stipulation Uber cites makes that clear, referencing only a "non-

27   delegable duty." ECF 1932 at ¶ 5. In any event, a complaint need not plead legal theories, and
     pleadings can be amended up to and even after trial to conform with the evidence. *See Skinner v.*

28   *Switzer*, 562 U.S. 521, 530 (2011); Fed. R. Civ. P. 15.

1    Foreseeable risk of injury:  The question whether a foreseeable risk of injury existed as a

2    result of Uber's conduct is a disputed question of fact for the jury to decide.

3    Plaintiff's prima facie case for negligence includes the following four elements: "(1) a duty

4    requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that

5    standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4)

6    actual damages." *Sanders v. Alger*, 394 P.3d 1083, 1085 (Ariz. 2017).

7    Under Arizona law, the "general test" for breach (element 2) is "whether a foreseeable risk of

8    injury existed as a result of defendant's conduct."  *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d

9    1040, 1045 (Ariz. 1990) (in banc); *Markowitz v. Arizona Parks Bd.*, 706 P.2d 364, 369 (Ariz. 1985)

10    (in banc) ("The test for whether conduct is negligent is whether there is a foreseeable risk of injury

11    from the conduct."); *see also Quiroz v. ALCOA Inc.*, 416 P.3d 824, 828 (Ariz. 2018) ("Foreseeability

12    can also be used to determine whether the defendant breached the relevant standard of care or caused

13    the plaintiff's injury.").

14    The question whether Uber's alleged conduct caused a "foreseeable risk of injury" to

15    Plaintiff is therefore part of Plaintiff's prima facie burden to establish breach (and as discussed

16    below, proximate causation).  *See Gipson v. Kasey*, 150 P.3d 228, 231 (Ariz. 2007) (in banc)

17    ("Foreseeability … properly applie[s] to the factual determinations of breach and causation.").

18    Breach and causation are both "factual inquiries . . . reserved for the jury," *id.*, and the jury must

19    decide them here, including by determining whether Uber's conduct created a foreseeable risk to

20    Plaintiff.

21    Plaintiff objects that the Arizona pattern instructions on factual causation do not refer

22    specifically to foreseeability, but that is not the standard.  "A party is entitled to an instruction about

23    his or her theory of the case if it is supported by law and has foundation in the evidence." *Jones v.*

24    *Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff disputes neither that Uber's instruction

25    correctly states the law nor that the evidence in this case creates a fact question for the jury on

26    foreseeability.  As Plaintiff's caselaw acknowledges, foreseeability is relevant to not only causation,

27    but also *breach*.  *See Robertson*, 789 P.2d at 1045; *Ritchie v. Krasner*, 211 P.3d 1272, 1282 (Ariz.

28    Ct. App. 2009) (cited by Plaintiff) ("Juries should engage in a foreseeability analysis to help

1    determine the issues of breach and causation.").  Plaintiff correctly concedes that foreseeability is

2    relevant to breach and causation under Arizona law and the fact that absence of a pattern instruction

3    on the question is not a valid reason to fail to instruct the jury on a correct and materially disputed

4    legal issue.  *See Dupray v. JAI Dining Servs. (Phoenix), Inc*., 432 P.3d 937, 944 (Ariz. Ct. App.

5    2018).

6        <u>Proximate Cause/Intervening and Superseding Cause</u>:  The jury must decide the disputed

7    factual question whether Turay's alleged tortious conduct against Plaintiff constitutes an intervening

8    and superseding cause that breaks the chain of proximate causation between Uber's alleged conduct

9    and Plaintiff's injuries.

10       Plaintiff must prove proximate causation as an element of her prima facie case.  *See, e.g.*,

11   *Sanders*, 394 P.3d at 1085; *Dupray*, 432 P.3d at 942-43.  "'[P]roximate cause' is defined as 'that

12   which, in a natural and continuous sequence, *unbroken by any efficient intervening cause*, produces

13   an injury, and without which the injury would not have occurred.'"  *Salica v. Tucson Heart Hosp.-*

14   *Carondelet, L.L.C.*, 231 P.3d 946, 950 (Ariz. Ct. App. 2010) (emphasis added) (quoting *Robertson*,

15   789 P.2d at 1047); *see also Cecala v. Newman*, 532 F. Supp. 2d 1118, 1137 (D. Ariz. 2007)

16   (proximate cause "has been unvaryingly defined" the same way under Arizona law).  The jury's

17   determination whether Plaintiff has met that burden, "requires consideration of all the facts.  *This*

18   *includes the question whether an intervening and superseding cause exists*."  *Dupray*, 432 P.3d at

19   944 (emphasis added; citation and quotation marks omitted).  Accordingly, the question whether

20   Turay's alleged conduct here was (1) "intervening"—i.e., "ha[d] an independent origin for which the

21   [Uber] is not responsible," and (2) "superseding," i.e., "was unforeseeable by a reasonable person in

22   [Uber's] position" is for the factfinder to determine.  *Id.* at 584.  Plaintiff argues that the instruction

23   is improper because Turay's alleged conduct is a foreseeable consequence of Uber's alleged

24   negligence, but that is the precise question Arizona law requires the jury to answer.  The Court

25   cannot resolve it as a matter of law based only on Plaintiff's say so.  To be sure, Plaintiff will argue

26   that the alleged sexual encounter was a foreseeable consequence of Uber's conduct.  But the jury

27   could easily conclude that even if Uber was negligent in some respect, Turay's alleged conduct was

28   extraordinary and unforeseeable.  Accordingly, as "[i]n most cases, a jury as factfinder must decide

that issue." *Torres v. Jai Dining Servs. (Phoenix) Inc.*, 497 P.3d 481, 485 (Ariz. 2021). *Dupray*

makes this point clear: Just as Plaintiff argues Turay's alleged conduct was a foreseeable

consequence of Uber's conduct, the plaintiff in that case argued that an intoxicated patron's drunk

driving was foreseeable to the tavern that over-served him. 432 P.3d at 939-940. But that theory of

the case did not make a superseding cause instruction improper–the defendant was entitled to dispute

foreseeability, and the Arizona Court of Appeals thus held that the "trial court abused its discretion"

in failing to provide the jury "an instruction defining 'intervening cause' and 'superseding cause.'"

*Id.*[10] So too here.

The vacated Court of Appeals decision in *State v. Aragon* (on which Plaintiff relies) does not

preclude a factual dispute over intervening and superseding causation here either. *See State v.*

*Aragon*, 473 P.3d 358, 359 (Ariz. Ct. App. 2020), *aff'd and opinion vacated*, 505 P.3d 657 (2022).

In that case, as the Arizona Supreme Court explained, the defendant's acts and the victim's

supposedly superseding acts occurred *simultaneously*, so the victim's acts could not constitute an

intervening cause as a matter of law. *See State v. Aragon*, 505 P.3d 657, 662 (Ariz. 2022). By

contrast, Turay's alleged torts against Plaintiff occurred long after Uber's allegedly negligent

conduct (i.e., designing its app and services).

*Slover* (cited by Plaintiff) is likewise inapposite: The defendant's "conduct of driving while

intoxicated was the very reason the victim had ended up near or in a creek, intoxicated, with head

injuries, and, at the very least, increased the foreseeable risk that the victim would die in the

accident." *State v. Slover*, 204 P.3d 1088, 1093 (Ariz. Ct. App. 2009). That is, the risk of a drunk-

driving victim's death (whether from the accident itself, or crawling out of the car into a dangerous

situation) is indisputably a foreseeable risk of the defendant's wrongful conduct of driving while

intoxicated. The same is true of *Cepeda*, which involved a "direct relationship" between the

defendant's conduct and the injury. *State v. Cepeda*, 2020 WL 2203571, at *2 (Ariz. Ct. App. Feb.

---

[10] The parties appear to agree that *Dupray* properly defined intervening and superseding causation.
Plaintiff's response that *Dupray* is inapposite because it involved 'independent and unpredictable'
third-party decisions" begs the question the jury must resolve. *See Nyerges v. Hillstone Rest. Grp.*
*Inc.*, 2021 WL 3299625, at *28 (D. Ariz. Aug. 2, 2021) (cited by Plaintiff) (even where "there is a
rather straight line between" defendant's conduct and Plaintiff's injury, proximate cause is "a fact
question reserved for the jury").

1    25, 2020) (Plaintiff's failure to wear a seatbelt not a superseding cause of injuries from Defendant's

2    reckless driving).

3         Here, in contrast, the foreseeability of Turay's alleged actions to Uber is subject to

4    reasonable dispute. Considering the totality of circumstances here, a reasonable juror could

5    conclude that Turay's alleged extraordinary crime was not a "foreseeable risk" of Uber's alleged

6    conduct, *contra Slover*, 204 P.3d at 1093, so the jury should be instructed on how to decide the

7    intervening-and-superseding cause question as part of Plaintiff's proximate cause burden. *See*

8    *Dupray*, 432 P.3d at 943-44.[11]

9         Finally, Plaintiff claims that instructions on superseding causation will confuse the jury

10    because Uber bears a special duty to protect Plaintiff from Turay, based on (a) a voluntary

11    undertaking, or (b) common-carrier status. That is wrong. No evidentiary basis exists to support

12    Plaintiff's voluntary-undertaking theory of duty, as Uber—a rideshare technology company—did not

13    offer "to render services … necessary for the protection of [Plaintiff's] person or things." *Acri v.*

14    *State*, 394 P.3d 660, 665-66 (Ariz. Ct. App. 2017) (no undertaking "to provide fire protection

15    services" to residents). Nor is common-carrier status (which Uber disputes) relevant here, because

16    under Arizona law, "the appropriate standard of care in negligence actions by passengers against

17    common carriers is the objective, reasonable person standard in *traditional negligence law*"—that is,

18    common carriers in Arizona do not bear a special heightened duty to protect passengers from third-

19    party harm. *Nunez v. Pro. Transit Mgmt. of Tucson, Inc.*, 271 P.3d 1104, 1109 (Ariz. 2012)

20    (emphasis added) (overruling doctrine that "traditionally ha[d] extended beyond the mere obligation

21    not to create a risk of harm" to impose special duty on common carriers). And Plaintiff has

22    expressly disclaimed the existence of any common-carrier negligence duty under Arizona law in any

23

24

25    ─────────────

      [11] Notably, Judge Schulman agreed that the jury should be instructed on whether the driver's alleged
26    conduct in the JCCP constituted a superseding cause under California law. *See* Jury Verdict, *Jane
      Doe LSA 78 v. Uber Tech.*, No. CGC-21-592427 (Cal Super. Ct., S.F., Sept. 30 2025); *see also*
27    CACI No. 432. The only difference here is that superseding cause is "*not an affirmative defense*,"
      under Arizona law, but rather part of plaintiff's prima facie burden on proximate cause. *State v.*
28    *Sucharew*, 66 P.3d 59, 68 (Ariz. Ct. App. 2003) (emphasis added); *see also Slover*, 204 P.3d at 1093
      (recognizing criminal standard for superseding cause same as civil).

event.  Master Compl. ¶ 363(l) (alleging "Uber owed a duty as a common carrier to protect passengers under the laws of states **except** the following: **Arizona**….").[12]

Actual Damages:  The parties agree that actual damages is a disputed question of fact. Uber's proposal reflects that "actual damages" is an individual element of Plaintiff's prima facie case for negligence, as reflected in the Arizona pattern jury instructions.  *See, e.g.*, RAJI (Civil) FI 7 (7th ed.).

### B.    Design Defect

- Whether the alleged design defect, in a natural and continuous sequence, unbroken by any intervening and superseding cause, produced Plaintiff's injury.
- Whether Plaintiff suffered actual damages as a result of the injury.

**Plaintiff's Position**

Intervening and Superseding Cause: As with the negligence claim, the jury should not be instructed on whether Turay's conduct was an intervening and superseding cause. The only new case Uber cites in this section, *Long v. TRW Vehicle Safety Sys., Inc.*, 796 F. Supp. 2d 1005 (D. Ariz. 2011), held only that a defendant was not entitled to summary judgment on the basis that the "violence of [a] rollover accident" was a superseding cause eliminating causation due to a seatbelt defect. *Id.* The case said nothing about when a jury instruction on superseding cause is or is not appropriate.

Actual Damages: The parties agree that the existence and amount of damages is a disputed fact question for all claims. Whether the injury resulted in damages does not differ by claim. The pattern instruction Uber cites contemplates only a single claim for negligence. Reasonable modification is necessary to account for multiple claims. *See* RAJI PLI 1, cmt. ("If the case is a comparative fault case, additional transitioning and modification will be necessary to blend the Product Liability Instructions and Fault 5-11 Instructions).

**Uber's Position**

---

[12] Plaintiffs further stipulated that they are not pursuing any claims for breach of "common carrier's nondelegable duty" (claim E) under Arizona law.  *See* Stipulation and Order Re: Mots. to Dismiss Pursuant to the Laws of Arizona et al. (Dkt. 1932) at 2 ¶ 5.

1    <u>Proximate Cause/Intervening and Superseding Cause:</u>  Like for negligence claims, plaintiffs

2    pursuing product-liability claims for allegedly defective design "must show that … the defective

3    condition is a proximate cause of the plaintiff's injuries."  *Wilson v. U.S. Elevator Corp.*, 972 P.2d

4    235, 237 (Ariz. Ct. App. 1998), *as corrected* (June 1, 1998).  The same definition governs the

5    factfinder's proximate-cause inquiry under either strict liability or negligence," i.e.: "The proximate

6    cause of an injury is defined as 'that which, in a natural and continuous sequence, unbroken by any

7    efficient intervening cause, produces an injury, and without which the injury would not have

8    occurred.'"  *Nance v. Toyota Motor Sales USA, Inc.*, 2014 WL 4702781, at *3 (D. Ariz. Sept. 22,

9    2014) (quoting *Robertson*, 789 P.2d at 1047).

10    And as explained above, under that definition, "[t]he existence of proximate cause requires

11    consideration of all the facts," *and* "includes the question whether an intervening and superseding

12    cause exists."  *Dupray*, 432 P.3d at 943(citation and quotation marks omitted).  Generally, the

13    question "whether the alleged design defect proximately caused Plaintiff's injuries"—including

14    whether "[a] superseding cause, sufficient to become the proximate cause of the final result [operates

15    to] relieve the defendant of liability"—presents a "triable issue" of fact for the jury.  *Long v. TRW*

16    *Vehicle Safety Sys., Inc.*, 796 F. Supp. 2d 1005, 1011-12 (D. Ariz. 2011).[13]  Those principles apply

17    equally here.

18    <u>Actual Damages:</u>  The parties agree that actual damages is a disputed question of fact.

19    Uber's proposal reflects that "actual damages" is an individual element of Plaintiff's prima facie

20    case for design defect, as reflected in the Arizona pattern jury instructions.  *See, e.g.*, RAJI (Civil) 3d

21    PLI 6 (7th ed.).

22    **C.    Apparent Agency**

23    - If Mr. Turay was Uber's apparent agent, whether his alleged acts were within the

24    scope of the apparent agency.

25    **<u>Plaintiff's Position</u>**

26

---

27    [13] Plaintiff accurately observes that *Long* denied summary judgment on causation, and did not
address jury instructions.  But as *Long* confirms, superseding causation is generally a question for

28    the jury.  Thus, the jury must be instructed on the law.

The Court held that apparent agency claims required that the acts in question *could be* within the scope of authority—not that they actually were. *See* PTO 17 at 27 ("[T]he idea of 'scope' does not come into the inquiry in the same way as in the respondeat superior analysis …. This does not doom Plaintiffs' apparent agency theory in California, where Plaintiffs have plausibly pled that Uber *could be* vicariously liable for the driver's alleged torts.") (emphasis added). Uber's proposed requirement does not appear in the relevant Arizona pattern jury instruction. *See* RAJI AI 5.

Uber's proposed requirement makes no sense because, under an apparent agency claim, there need not be any actual agency. So, the jury cannot analyze, for example, whether the acts were "the kind that the [employee] [agent] was employed to perform" or whether the acts "occurred substantially within the authorized time and space limit of the [employment] [authority]," RAJI SI 5, because, under this theory, Mr. Turay need not have been employed to perform any acts or been an agent at all. Requiring the jury answer hypotheticals is not what the Court envisioned in PTO 17. Under the Court's holding, Plaintiff's reliance need only be reasonably justified, meaning that the acts *could be* within the scope if the person were an actual agent. *See* PTO 17 at 27 n.9 ("In other words, there may not be a separate 'scope' inquiry, but scope still matters in the sense that one cannot reasonably believe that an agent has unlimited authority just because they seem like an employee."). Here, Plaintiff believed that it was Uber responsible for transporting her safely, not Mr. Turay independently. Had Mr. Turay "performed an appendectomy," then Plaintiff's claim would fail, because that conduct would be outside the scope of *any* transportation-related agency. Similarly, Uber argues that an act of sexual assault can *never* be within the scope of transportation-related agency. That legal question is before the Court on summary judgment, but it does not present a fact question for the jury.

### **Uber's Position**

The logic of the Court's Pre-trial Order No. 17—which the parties stipulated "applies to Plaintiffs' apparent agency claims (G.2) under the laws of Arizona" (and which Plaintiff selectively quotes)—supports Uber's position: the question whether Mr. Turay's alleged acts were within the scope of any apparent agency presents a factual dispute for the jury (only if that apparent-agency claim survives Uber's motion for partial summary judgment, *see infra*). Dkt. 1932 at 3 ¶ 12 ("'the

1    scope of liability under an apparent agency theory is *limited by the usual scope-of-employment*

2    *rules*'" (quoting PTO 17 at 25) (emphasis added)).

3           As this Court explained: "It is indisputable that apparent authority must be based on the acts

4    of the principal' and '*is limited to the scope of responsibility that is apparently authorized*." PTO 17

5    at 26 (emphasis added; citations and quotation marks omitted). Where, as here, "the type of

6    apparent authority conferred on an apparent agent is that of an employee, the same limitation

7    applies. An employee is a special type of agent, but employees' authority is not unlimited, and no

8    one could reasonably believe it to be so." *Id.* at 27. So while Plaintiff may be correct that "the idea

9    of 'scope' does not come into the inquiry in the same way as in the respondeat superior analysis,"

10    *id.*, "*limited scope is implicit* in the idea of apparent authority" (as this Court went on to note, in the

11    clause Plaintiff omits). *Id.* (emphasis added).

12           Applying those principles here, even if Plaintiff establishes the elements of apparent agency,

13    the jury must still decide "the extent of apparent authority," and whether its scope included Turay's

14    alleged torts against Plaintiff. *See id.* ("an Uber driver who, although an apparent agent, would

15    probably not be acting within the scope of his apparent authority if he performed an appendectomy

16    on a rider.").[14] Just like in the Court's appendectomy example, it is highly unlikely that Plaintiff can

17    establish a reasonable basis for believing that a sexual encounter was the kind of act that Uber had

18    apparently authorized Turay to perform, but that is part of Plaintiff's burden of proof under an

19    apparent-agency liability theory. Indeed, the entire premise of the Court's prior conclusion that

20    Plaintiffs' California apparent-agency was "not doom[ed]" was that the scope of any apparent

21    authority presented a question of fact for the jury (unlike under Texas law, where the claims failed).

22    *Id.* If the Court denies Uber's motion for partial summary judgment, then the factfinder must

23

24    _____

      [14] Plaintiff contends, *supra*, that the jury cannot analyze questions like "whether the acts were
25    'the kind that Mr. Turay was employed to perform' or 'occurred substantially within the authorized
      time and space limit of the employment,'" because Mr. Turay need not have been "employed" for
26    apparent agency (citing RAJI SI 5 (Respondeat Superior). Plaintiff ignores, however, that the RAJI
      contains alternative language for agency claims, which require: (1) "The act was the kind that the
27    [agent] was [authorized] to perform," and (2) the act occurred substantially within the authorized
      time and space limit of the [authority]." RAJI SI 5 (agency language). For apparent agency, the
28    only difference is that Plaintiff must establish the acts occurred within the scope of the agent's
      *apparent* authority and *apparent* time and space limits.

determine whether Mr. Turay was Uber's apparent agent, and if so, whether his alleged facts were within the scope of his apparent authority.

## VI.     DISPUTED LEGAL ISSUES

The parties respectfully refer to the Court to their filings on Uber's partial summary judgment: ECF 4379 (public motion), ECF 4379-2 (sealed motion), ECF 4621 (public opposition), ECF 4622-2 and -3 (sealed opposition); ECF TBD (reply). Those papers set out the parties' positions on the following disputed legal issues:

- Whether A.R.S. § 23-1603 precludes vicarious liability on respondeat superior or apparent agency theories by making Mr. Turay an independent contractor as a matter of law.

- Whether, as a matter of Arizona law, sexual torts fall outside the scope of employment or agency.

- Whether Plaintiff's apparent agency theory fails as a matter of law because Uber did not intentionally or inadvertently cause her to believe that the driver was Uber's agent.

- Whether Plaintiff's apparent agency theory fails as a matter of law for lack of justifiable reliance to her detriment on any representation from Uber.

- Whether Plaintiff's Gender Matching theory properly sounds in products liability as opposed to mere negligence.

- Whether A.R.S. § 12-689 precludes punitive damages.

The parties have not yet exchanged proposed jury instructions, but anticipate additional legal issues may arise in those submissions.  The parties' list of disputed legal issues does not include legal arguments raised and resolved at the motion to dismiss stage, and the parties reserve all rights as to those issues, including for any subsequent appeal.[15]

---

[15] To the extent the Court considers the disputes in the parties' December 16, 2025 Motions in Limine "disputed factual issues" or "disputed legal issues," Guidelines § E(4)-(5), the parties incorporate those disputes into this order by reference.

# VII.    TRIAL ALTERNATIVES AND OPTIONS DISCUSSED

## A.    Settlement Discussions

The MDL parties continue to meet with Judge Andler, the Court-appointed Settlement Special Master. At this time, the parties do not believe there is any prospect of pretrial settlement in the *Dean* matter.

## B.    Consent to Trial before a Magistrate Judge

The Court referred discovery in this MDL to Judge Cisneros, ECF 66, and appointed the Honorable Barbara A. Jones (ret.) as Special Master to oversee privilege issues, ECF 2289. The parties do not consent to trial before a Magistrate Judge.

## C.    Bifurcation, Separate Trial of Issues

**Defendant's Position:**

As explained in Uber's motion for partial summary judgment, Arizona law bars Plaintiff's claim for punitive damages, ECF 4379, § 5.D.

If summary judgment is denied on Plaintiff's punitive damages claim, however, then Uber will request bifurcation of punitive damages liability and amount from compensatory liability if the Court breaks from the JCCP Court and denies Uber's motions in limine to exclude irrelevant and unduly prejudicial evidence, such as media reports and strategy, policies and procedures, and insurance-adjusting evidence having nothing to do with this Plaintiff.[16]

In particular, Judge Schulman excluded evidence about "media reports and internal communications regarding such reports," including for purposes of punitive damages, because evidence on "news stories, Uber's responses to those stories, etc."—such as Uber's alleged "efforts to kill media stories"—threatened time-consuming and prejudicial mini-trials on "minimally relevant" events.[17]   That ruling permitted the JCCP court to conduct a focused unitary proceeding addressing both compensatory and punitive liability.  If this Court allows Plaintiff's Arizona punitive damages claim to proceed, it should follow the same well-reasoned approach here, excluding

---

[16] For avoidance of doubt, Uber does not request bifurcation of only punitive-damages amount from liability.

[17] *See* Order on Parties' Motion in Limine and Motion to Exclude Expert Opinions, *Jane Doe LSA 78 v. Uber Tech.*, No. CGC-21-592427 (Cal Super. Ct., S.F., Aug. 29, 2025), at 52 ("JCCP MIL Order"); Pls. Omnibus Opp. to Uber's Mots. In Limine, *Jane Doe LSA 78 v. Uber Tech.*, No. CGC-21-592427 (Cal Super. Ct., S.F. Aug. 15, 2025), at 19 ("JCCP Pl. MIL Opp.")

irrelevant and unduly prejudicial media-related evidence and avoiding any need to bifurcate punitive-damages liability.

Uber anticipates that, as in the JCCP, Plaintiff will argue that such media-related evidence should be admitted for purposes of punitive-damages liability. That argument lacks merit for the reasons explained by the JCCP court and in Uber's concurrently filed Motions in Limine 4 and 5, ECF 4686 at 2-5. But if accepted, the evidence's acute risk of undue prejudice, confusion, and wasted time for the jury's compensatory-liability inquiry would necessitate bifurcation.

To illustrate, Plaintiff's initial exhibit list includes a number of documents and internal communications about a USA Today story reporting that Crawford Global Technical Services, a third-party claims-administration company retained by Uber, contacted some riders who had reported sexual assaults and who were pursuing legal claims against Uber for compensation. *E.g.*, PX-647, PX-2137, PX-2534. And Plaintiffs have questioned Uber witnesses at deposition about internal chat communications reacting to that story. But Plaintiff Dean does not allege that she was contacted by Crawford and Uber disputes the accuracy of USA Today's reporting about Crawford (which was published years before the underlying incident and which Plaintiff never allegedly saw). So admission of evidence on the Crawford Story for punitive-damages purposes would require a time-consuming, unduly prejudicial, and potentially confusing mini-trial explaining why Uber's responsive media strategy was justified to correct the record (colloquially, to "kill" inaccurate stories). Uber would likewise have to contextualize and explain the internal chats in which communications personnel—whose conduct has nothing to do with Plaintiff's compensatory liability theories—use highly inflammatory language to express their emotional reactions to the Crawford Story and its fallout. The Crawford Story relates to Uber's insurance process and related legal claims handling strategies. This is not generally admissible in any action regarding the types of claims at issue in this litigation.[18] The same is true for other disputed media reports—Uber will be forced to engage in mini-trials in its efforts to counteract false or misleading reporting and contextualize internal communications relating to those efforts. For that reason, as the JCCP court

---

[18] In addition, evidence about Crawford, a third-party insurance administrator, should be excluded for the reasons stated in Uber's Motion in Limine No. 3, ECF 4656 at 1-2, as the JCCP Court concluded. *See* JCCP MIL Order at 51.

correctly recognized that permitting evidence about media reports and Uber's communications strategy "threatens to cause an undue consumption of time on collateral issues having to do with the accuracy of individual news stories, Uber's responses to those stories," and other collateral matters. JCCP MIL Order at 52-53.

But if this Court were to diverge from that JCCP ruling, these same risks of undue prejudice, confusion, and time-wasting would warrant bifurcation. Bifurcation is appropriate where "the issues are clearly separable," and "bifurcation would increase convenience and judicial economy, reduce the risk of jury confusion, and avoid prejudice to the parties." *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 1016670, at *3 (N.D. Cal. Apr. 5, 2022); *see also Ulin v. Lovell's Antique Gallery*, 2010 WL 3768012, at *21 (N.D. Cal. Sept. 22, 2010). Even where "substantial evidence in support of [a] punitive damages claim … [would also] be relevant and admissible for purposes of establishing [underlying] liability," courts will bifurcate punitive liability from underlying liability to avoid undue prejudice if needed. *Tom v. S.B. Inc.*, 2013 WL 12096532, at *1-2 (D.N.M. Mar. 6, 2013).[19] Here, media reports like the Crawford Story—and any inflammatory internal comments certain Uber communications employees made in its wake—would waste precious trial time on issues having zero bearing on the jury's compensatory damages inquiry and zero relation to Jaylynn Dean's case.[20] Further, absent bifurcation, such evidence could lead jurors to "conflate the legal elements of compensatory and punitive damage claims or erroneously award substantial compensatory damages against Defendants" based on events having nothing to do with Plaintiff's negligence and product-

---

[19] *See also Gillis v. Murphy-Brown, LLC*, 2018 WL 11401989, at *2 (E.D.N.C. Nov. 26, 2018) (granting bifurcation of "issues of liability for and the amount of compensatory damages from the issues of liability for and amount of punitive damages at trial"); *Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 WL 13234787, at *2 (E.D.N.C. Oct. 31, 2011) (same); *Fluor Corp. v. Zurich Am. Ins. Co.*, 2021 WL 3021973, at *13 (E.D. Mo. July 16, 2021) (bifurcating "punitive damages phase of trial in the event jury returns a favorable monetary award for [plaintiff']"); *N. Dakota Fair Hous. Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (D.N.D. 2004) (similar).

[20] "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).

1    lability claims.  *Id.*  Bifurcation would be warranted and appropriate to prevent those intolerable

2    risks.[21]

3        The JCCP court adopted a sound and efficient trial format, excluding media-related evidence

4    about unrelated incidents from a single-phase trial.  But if this Court were to admit that evidence,

5    bifurcation of punitive-damages liability would be warranted to avoid prejudicial and confusing

6    mini-trials on inflammatory evidence with zero relevance to the jury's compensatory damages

7    inquiry.

8    **Plaintiff's Position**

9        As explained in Plaintiff's opposition to summary judgment, Arizona law permits punitive

10   damages in this case. Uber argues that, unless the Court grants certain motions in limine, the Court

11   must bifurcate punitive damages liability into a second phase. The Court should decide motions in

12   limine, once briefed, on their own merits. But regardless of any in limine rulings, the Court should

13   not bifurcate punitive damages liability.

14       Rule 42 allows for bifurcation for "convenience, to avoid prejudice, or to expedite and

15   economize." Fed. R. Civ. P. 42(b); *see also, e.g.*, *Jones v. Amtrak*, 2018 WL 6606247, at * (N.D.

16   Cal. Dec. 17, 2018) ("Courts consider several factors in determining whether bifurcation is

17   appropriate, including separability of the issues, simplification of discovery and conservation of

18   resources, and prejudice to the parties.") (internal quotation marks omitted). The "party requesting

19   bifurcation has the burden to prove that it is warranted in that particular case." *Id.*

20        In furtherance of those goals, courts often bifurcate the *amount* of punitive damages because

21   evidence of a defendant's wealth is generally irrelevant to every other element of a claim (including

22   *entitlement* to punitive damages), so bifurcation is an efficient clean break in the trial. As the Court

23   noted at the last CMC, that type of bifurcation does not make sense here given that Uber's financial

24   success is well known.

25       Bifurcating *entitlement*, in contrast, does not further the goals of Rule 42: doing so would not

26   avoid any prejudice and would be inefficient. To prove entitlement, Plaintiff will need to show that

27   ───────────────
     [21] Plaintiff's concern that bifurcation, if necessary, would waste time is not accurate—especially
28   considering that bifurcation would avoid wasting considerable time on punitives-only evidence if
     Phase 1 resulted in a no-liability verdict on underlying compensatory-damages liability.

Uber's conduct was outrageous, oppressive, and intolerable, and that it was reckless. *See* RAJI PIDI 4. Evidence that Uber acted outrageously and disregarded a known risk overlaps extensively with evidence that Uber acted negligently. Take media stories, for example. Without getting into the weeds of specific stories, a core part of Plaintiff's case is the contention that Uber consistently made choices to promote the perception of safety rather than actual safety, conduct that not only failed to protect Ms. Dean, but actually increased the risk of harm by creating the prevailing image of Uber as safe. *See, e.g.*, Drumwright Rpt. at 30, 69, 148. Dr. Drumwright's analysis of Uber's media strategy shows how Uber recognized that "Safety is our largest reputational challenge" and responded by "kill[ing] stories when possible and mitigat[ing] the impact of incidents on our reputation." *Id.* at 149 (citing Uber documents). That evidence may be admissible or not, but admissibility does not vary based the elements of Plaintiff's claims: it goes to negligence just as it goes to outrageousness and recklessness. Uber concedes as much in a footnote, where it says the evidence it seeks to exclude is inadmissible in any Phase 2 as well. Uber says that "bifurcation would avoid wasting considerable time on punitives-only evidence," but does not identify any such evidence.

To the extent Uber persuades the Court to limit the evidence in Phase 1, then the Court will have to engage in endless line-drawing—on both sides. For example, Uber will likely want to introduce evidence of the safety measures it has taken since 2023, but such evidence would be likely inadmissible in a Phase 1. And Plaintiff will likely be forced to call back witnesses, including possibly experts and Uber employees, for Phase 2. Bifurcation will not only waste the Court's and jury's time, but will also make it difficult to keep to the 65-hour limit the Court has set for the trial.

For these reasons, courts almost never bifurcate punitive damages *entitlement*. As the Ninth Circuit explained, affirming a refusal to bifurcate: "Since the evidence usually overlaps substantially, the normal procedure is to try compensatory and punitive damages claims together with appropriate instructions to make clear to the jury the difference in the clear and convincing evidence required for the award of punitive damages." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (citation and alteration omitted) (noting that "Defendants' profits, financial condition, and financial statements helped establish Defendants' alleged business strategies, incentives, and practices, all of which were relevant to Hangarter's claim"); *see also Allison v. Smoot*

*Enters., Inc.*, 2019 WL 1586743, at *3 (D. Or. Apr. 12, 2019) ("There is substantial overlap between the evidence for proving general liability and an entitlement to punitive damages. For example, the evidence supporting Plaintiffs' negligence claims concerns the four commercial drivers' actions on the same stretch of Oregon road. This evidence is also the basis for Plaintiffs' punitive damages claims, from which a jury could infer the requisite recklessness and conscious indifference to the safety of Plaintiffs. In this case, bifurcating will substantially lengthen the trial and will require separate opening statements, closing arguments, and deliberations, and likely involve many of the same witnesses.").

Uber cites *Tom v. S.B. Inc.*, 2013 WL 12096532 (D.N.M. Mar. 6, 2013). But in *Tom*, "[u]nder the particular facts of th[at] case," the court was concerned about the potential for the jury to "award substantial compensatory damages against Defendants on a weak or unviable claim for compensatory damages." *Id.* at *2. But in this Circuit, "[b]ifurcation … is the exception, not the form as a single proceeding will generally be a more efficient and reasonably means of resolving the action." *Martinez v. Cnty. of Alameda*, 2023 WL 7194873, at *2 (N.D. Cal. Nov. 1, 2023) (citation omitted). And "Jurors are presumed to follow instructions." *Diaz v. Tesla*, 697 F. Supp. 3d 906, 920 (N.D. Cal. 2023).[22]

---

[22] Uber cites *Gillis v. Murphy-Brown LLC*, 2018 WL 11401989 (E.D.N.C. Nov. 26, 2018), but in that case, the court found that "much of the evidence that plaintiffs seek to introduce in this matter goes solely to the issue of punitive damages." *Id.* at *2; *see also Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 WL 13234787, at *1-2 (E.D.N.C. Oct. 31, 2011) (similar, and also relying on a North Carolina bifurcation statute); *Fluor Corp. v. Zurich Am. Ins. Co.*, 2021 3021973, at *13 (E.D. Mo. July 16, 2021) (identifying specific evidence that would be inadmissible in Phase 1 but admissible in Phase 2); *N. Dakota Fair Hous. Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (D.N.D 2004) (plaintiffs did not oppose bifurcation). In Uber's other two cases, the courts denied bifurcation. *See Facebook, Inc. v. OnlineNIC, Inc.*, 2022 WL 1016670 (N.D. Cal. Apr. 5, 2022); *Ulin v. Lovell's Antique Gallery*, 2010 WL 3768012 (N.D. Cal. Sept. 22, 2010).

Dated:  December 19, 2025

By: /s/ Sarah R. London

Sarah R. London (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: /s/ Rachel B. Abrams

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

By: /s/ Roopal P. Luhana

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, Floor 12
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

Dated:  December 19, 2025

**KIRKLAND & ELLIS LLP**

By: */s/ Laura Vartain Horn*
    **KIRKLAND & ELLIS LLP**
    ALLISON M. BROWN
    JESSICA DAVIDSON
    LAURA VARTAIN

    **SHOOK, HARDY & BACON L.L.P**.
    MICHAEL B. SHORTNACY
    PATRICK L. OOT, JR.
    CHRISTOPHER V. COTTON
    ALYCIA A. DEGEN

    **O'MELVENY AND MYERS LLP**
    SABRINA H. STRONG
    JONATHAN SCHNELLER

*Attorneys for Defendants*

UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## FILER'S ATTESTATION

I, Laura Vartain Horn, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

Dated: December 19, 2025

*/s/ Laura Vartain Horn*
Laura Vartain Horn