Steve Schulte (TX SBN 24051306)
*Appearance Pro Hac Vice*
John Raggio (CA Bar No. 338261)
Arati Furness (CA Bar No. 225435)
**NACHAWATI LAW GROUP**
5489 Blair Road
Dallas, TX 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712
schulte@ntrial.com
jraggio@ntrial.com
afurness@ntrial.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S MOTION REGARDING "FRAUDULENT" PLAINTIFF FACT SHEETS** |
| This Document Relates to: | |
| *Doe L.N v. Uber Technologies, Inc., et al.*, No. 3:24-cv-00120-CRB | Date: February 13, 2026 |
| *Doe (T.W.) v. Uber Technologies, Inc., et al.*, No. 3:24-cv-00559-CRB | Time: 10:00 a.m. |
| *Doe (BW) v. Uber Technologies, Inc., et al.*, No. 3:24-cv-04308-CRB | Courtroom: 6 – 17th Floor |
| *Doe (ST) v. Uber Technologies, Inc., et al.*, No. 3:24-cv-04309-CRB | |
| *Doe (A.R.) v. Uber Technologies, Inc., et al.*, No. 3:24-cv-04313-CRB | |
| *Doe (VB) v. Uber Technologies, Inc., et al.*, No. 3:24-cv-04317-CRB | |
| *DOE (KH) v. Uber Technologies, Inc., et al.*, No. 3:24-cv-04326-CRB | |

*Doe (S.F.) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-04327-CRB

*Doe (SG) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-04353-CRB

*Doe (TW) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-04356-CRB

*Doe (SW) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-04364-CRB

*Doe (JG) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-04368-CRB

*Doe (P.C.) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-04374-CRB

*Doe (CA) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-05072-CRB

*Doe (R.D.) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-05074-CRB

*Doe (J.H.) v. Uber Technologies Inc., et al.*,
No. 3:24-cv-05079-CRB

*Doe (EB) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-05110-CRB

*DOE (AE) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-05121-CRB

*Doe (D.G.) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-05169-CRB

*Doe (K.H.) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-05174-CRB

*Doe (SK) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-05710-CRB

*Doe (AM) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-05765-CRB

*Doe (CS) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-05964-CRB

CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT"
PLAINTIFF FACT SHEETS                                    Case No. 3:23-md-03084-CRB

*Doe (GT) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-06051-CRB

*Doe (E.W.) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-06073-CRB

*Doe (J.D.) v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-06074-CRB

*Doe NLG (JV) v. Uber Technologies Inc., et al.*,
No. 3:24-cv-08622-CRB

*Doe NLG (KC) v. Uber Technologies Inc., et al.*, No. 3:25-cv-00072-CRB

*Doe NLG (TT) v. Uber Technologies Inc., et al.*,
No. 3:25-cv-00075-CRB

*Doe NLG (PO) v. Uber Technologies Inc., et al.*, No. 3:25-cv-00358-CRB

*Doe NLG (LB) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-00365-CRB

*Doe NLG (BH) v. Uber Technologies Inc., et al.*, No. 3:25-cv-00369-CRB

*Doe NLG (BE) v. Uber Technologies Inc., et al.*,
No. 3:25-cv-00401-CRB

*Doe NLG (KK) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-00673-CRB

*Doe NLG (JN) v. Uber Technologies Inc., et al.*,
No. 3:25-cv-00715-CRB

*Doe NLG (KL) v. Uber Technologies, Inc., et al.*, No. 3:25-cv-01265-CRB

*Doe NLG (AH) v. Uber Technologies Inc., et al.*, No. 3:25-cv-01266-CRB

*Doe NLG (ZD) v. Uber Technologies Inc., et al.*,
No. 3:25-cv-01729-CRB

*Doe NLG (WB) v. Uber Technologies Inc., et al.*, No. 3:25-cv-01799-CRB

CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT" PLAINTIFF FACT SHEETS                                          Case No. 3:23-md-03084-CRB

*Doe NLG (JN) v. Uber Technologies Inc., et al.*, No. 3:25-cv-01818-CRB

*DOE NLG (AH) v. Uber Technologies Inc., et al.*, No. 3:25-cv-02797-CRB

*DOE NLG (KM) v. Uber Technologies Inc., et al.*, No. 3:25-cv-02706-CRB

*DOE NLG (AV) v. Uber Technologies Inc., et al.*, No. 3:25-cv-02855-CRB

*DOE NLG (KM) v. Uber Technologies Inc., et al.*, No. 3:25-cv-02856-CRB

*Doe NLG (BC) v. Uber Technologies Inc., et al.*, No. 3:25-cv-02899-CRB

*Doe NLG (RR) v. Uber Technologies Inc., et al.*, No. 3:25-cv-02788-CRB

*Doe NLG (KM) v. Uber Technologies Inc., et al.*, No. 3:25-cv-02956-CRB

*Doe NLG (MH) v. Uber Technologies, et al.*, No. 3:25-cv-05163-CRB

CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT" PLAINTIFF FACT SHEETS                Case No. 3:23-md-03084-CRB

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. VI

I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................. 1

II.  FACTUAL BACKGROUND ....................................................................................... 2

    A.   The Amendments of Which Uber Complains Merely Conformed a Few Answers to Previously Provided Information .......................................................... 2

        1.   Question 16 (MDL 1496, 1508, 3201). ........................................... 2

        2.   Question 42 (MDL 1496, 1500, 1508, 3201) ................................. 3

        3.   Questions 4 and 17 (MDL 3201). .................................................... 4

    B.   Uber Materially Changed DFS Answers. ..................................................... 4

    C.   The Word "Completing" on Page 3 of the Form PFS Did Not Prevent Uber from Seeing the Blank Signature Lines in the Verifications. ............................. 6

    D.   Uber's "Fraud" Theme Seeks to Exploit the Tragic Reasons Why Some Plaintiffs Would Become Non-Responsive. ................................................................ 6

III. ARGUMENT .............................................................................................................. 8

    A.   Uber's Deposition Demand Is Incoherent, Lawless, and Impossible. ......... 8

    B.   There Was No Fraud, at Least Not on the Part of Plaintiffs or Plaintiffs' Counsel. 11

    C.   Uber Demands a Lawless End Run Around the Court's Fact Sheet Implementation Order (ECF 4287). ............................................................................... 13

IV.  CONCLUSION ......................................................................................................... 15

1

# TABLE OF AUTHORITIES

2

3

**Cases** ............................................................................................................ **Page(s)**

*ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*,
   17 Cal. App. 4th 1773, 22 Cal.Rptr.2d 206 (1993) ................................12

*Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc.*,
   No. 2:17-cv-01515-KJM-AC, 2019 WL 246628 (E.D. Cal. Jan. 17, 2019)............9

*Carson v. Mercury Ins. Co.*,
   210 Cal. App. 4th 409, 148 Cal.Rptr.3d 518 (2012) ..............................12

*Castillo v. CleanNet USA, Inc.*,
   358 F. Supp. 3d 912 (N.D. Cal. 2018).......................................11

*Dytch v. Yoon*,
   No. C10-02915-MEJ, 2011 WL 839421 (N.D. Cal. Mar. 7, 2011)...................8

*Freeman v. Alta Bates Summit Med. Ctr. Campus*,
   No. C04-2019SBA, 2004 WL 2326369 (N.D. Cal. Oct. 12, 2004)..................8

*Grouse River Outfitters, Ltd. v. Oracle Corp.*,
   848 F. App'x 238 (9th Cir. 2021) .........................................11

*Hardin v. Mendocino Coast Dist. Hosp.*,
   No. 17-cv-05554-JST(TSH), 2019 WL 4256383 (N.D. Cal. Sept. 9, 2019)..............10, 11, 15

*Hoban v. Nova Cas. Co.*,
   335 F. Supp. 3d 1192, 1203 (E.D. Cal. 2018) ................................12

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)......................................................13

*Narula v. Orange Cnty. Superior Ct.*,
   No. 8:19-cv-00133-DSF-JC, 2021 WL 2406810 (C.D. Cal. May 3, 2021) .............11

*Ortego v. Lummi Island Scenic Ests. Cmty. Club, Inc.*,
   738 F. App'x 912 (9th Cir. 2018)..........................................8

*Quillinan v. Ainsworth*,
   755 F. App'x 690 (9th Cir. 2019) .........................................8

*Schertzer v. Bank of Am., NA*,
   109 F.4th 1200 (9th Cir. 2024) ...........................................12

*Smith v. Simmons*,
   638 F. Supp. 2d 1180 (E.D. Cal. 2009), *aff'd*, 409 F. App'x 88 (9th Cir. 2010)....................11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*United States v. Rylander*,
   460 U.S. 752 (1983)................................................................................9

**Rules**

N.D. Cal. Civ. L.R. 7-4(a) ................................................................................8

N.D. Cal. Civ. L.R. 3-4(d) ................................................................................8

Fed. R. Civ. P. 5(d)(1)(A) ................................................................................14

Fed. R. Civ. P. 26(g) ...........................................................................12, 13, 14

Fed. R. Civ. P. 37(b)(2) ...........................................................1, 9, 10, 13

Fed. R. Civ. P. 37(b)(2)(B) ................................................................................10

Fed. R. Civ. P. 45(a)(2) ................................................................................10

Fed. R. Civ. P. 45(c)(1)(A) ................................................................................10

**Other Authorities**

Courtney E. Ahrens et al., *To Tell or Not to Tell: The Impact of Disclosure on Sexual Assault Survivors' Recovery*, 25 Violence & Victims 631, 641-644 (2010), https://roqhas.org/wp-content/uploads/2024/07/ahrens-2010-impact-of-disclosure-on-sexual-assault-survivors-recovery.pdf ................................7

Jennifer M. Brown et al., *Characteristics Associated with Rape Attrition and the Role Played by Skepticism or Legal Rationality by Investigators and Prosecutors*, 13 Psychol., Crime & L. 355, 355-358 (2007), https://doi.org/10.1080/10683160601060507................................7

Theresa Mackey et al., *Factors Associated with Long-Term Depressive Symptoms of Sexual Assault Victims*, 6 Archives of Psychiatric Nursing 10, 11-12 (1992), https://www.psychiatricnursing.org/article/0883-9417(92)90050-S/abstract ................................7

Jodie Murphy-Oikonen et al., *Sexual Assault Case Attrition: The Voices of Survivors*, SAGE Open, Oct.-Dec. 2022, 8 (2022), https://journals.sagepub.com/doi/pdf/10.1177/21582440221144612 ................................7

Sarah E. Ullman & Stephanie M. Townsend, *Barriers to Working with Sexual Assault Survivors: A Qualitative Study of Rape Crisis Center Workers*, 13 Violence Against Women 412, 418-441 (2007), https://journals.sagepub.com/doi/10.1177/1077801207299191 ................................7

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT

The only "fraud" is Uber's Motion, ECF Document 4580.

Uber ignores the language of Federal Rule of Civil Procedure 37(b)(2)(A), miscites a case, and proposes an internally inconsistent Order that off-roads from the Rules and the procedures this Court promulgated (*see infra* §III). Uber seeks to squander judicial resources to "evaluat[e]"[1] cases that are no longer pending. Uber's justification for wasting time on dismissed cases is to punish the former plaintiffs' and their counsel—yet it is Uber who mischaracterizes the history of discovery in these cases.

The Plaintiff Fact Sheet ("PFS") amendments Uber decries effect no material changes, but rather conform a handful of answers to information previously provided elsewhere in prior discovery responses (*see infra* §II.A). That plaintiffs who are sexual assault victims became nonresponsive and unavailable, such that counsel could not state they eyeballed these corrections, is not the nefarious plot Uber invents. The published literature amply documents that sexual assault victims as a group struggle to participate in the legal system and that a certain amount of attrition is to be expected (*see infra* §II.D).

Uber does not have clean hands to bring its motion, because it is guilty of materially changing Defendant Fact Sheet ("DFS") answers. Uber denied it could find plaintiffs' Uber accounts and then later admitted plaintiffs had them, and denied it could confirm rides to only later admit the trips had occurred (*see infra* §II.B). Therefore, if the Court orders discovery in dismissed cases, then the undersigned seeks to depose Uber paralegal Alejandra O'Connor on what investigation, if any, she conducted before certifying under penalty of perjury that Uber allegedly could not find accounts for T.W. (MDL 1500), K.C. (MDL 2214), and C.H. (MDL 2231), and allegedly could not confirm the trips of A.V. (MDL 3207) and K.C. (MDL 2214).

Or, Uber's stratagem of litigating dismissed cases could be rejected as the distraction that it is. The unprecedented relief Uber seeks exposes its plan to derail the progress of this MDL by bringing ever more sanctions motions. The pattern is obvious: Uber demands a court order knowing compliance will be impossible, as for example demanding that undersigned produce for depositions

---

[1] *See* ECF 4580-4 [Pages 3-4 of 10], 2:26—3:1.

1  former plaintiffs who have become unavailable and non-responsive. Disrespectful of the time and
2  attention this Court devoted to PTO10 and its amendment, Uber also demands that the amended
3  PTO10 protocols be ignored and that additional redundant signatures be ordered.

4      Uber has no factual or legal grounds for the Proposed Order it expects this Court to sign. In
5  fact, some of its demands are made without any attempt to cite any authority. Uber's Motion
6  respectfully should be denied.

7  **II.    FACTUAL BACKGROUND**

8  **A. The Amendments of Which Uber Complains Merely Conformed a Few Answers to
   Previously Provided Information**

9      Uber seeks depositions of four Nachawati Law Group Plaintiffs[2] on the basis of purported
10 "material" changes to amended Plaintiff Fact Sheets without their review. *See* Uber's Motion
11 Regarding Fraudulent Plaintiff Fact Sheets (occ. Uber's Mot. filed under seal), ECF 4580 [Page 14
12 of 17], at 10:20. Uber's so-called "discrepancies" (*id*. at 4:10), do not in truth represent any material
13 changes, but rather restate, in a different part of the PFS form, information already provided.

14     **1.    Question 16 (MDL 1496, 1508, 3201).**

15     Uber misleadingly attempts to manufacture a discrepancy with former plaintiff Jane Doe S.W.'s
16 response to PFS Question 16 in her second amended PFS (MDL 1508) based on the addition of a
17 single sentence which states that the incident occurred during the ride. Uber's Mot. (filed under seal)
18 at 6:2-10; Uber's Ex. K (filed under seal), ECF 4580-12 at 10. That sentence is consistent with S.W.'s
19 first and second amended PFS responses to Question 20, which describe the incident as occurring
20 during the course of the ride. Uber's Ex. J (filed under seal), ECF 4580-11 at 10; Uber's Ex. K (filed
21 under seal), ECF 4580-12 at 11. The amendment did not introduce new or changed information; it
22 simply reiterated information provided in answer to Question 20 into the answer to Question 16.
23 Uber's Ex. K (filed under seal), ECF 4580-12 at 11.

24     Similarly, Uber cites a purported "discrepancy" in former plaintiff Jane Doe K.M.'s response
25 to Question 16 regarding incident location. Uber's Mot. (filed under seal), at 7:1-7. The response to
26 Question 16 was amended from "n/a" to include the same address previously provided in the Uber
27

28 _____
[2] Jane Doe SG (MDL ID: 1496); Jane Doe TW (MDL ID: 1500); Jane Doe SW (MDL ID: 1508);
and Jane Doe NLG KM (MDL ID: 3201).

1  Ride Information Form. *See* Ex. 1, Uber Ride Information Form (MDL ID 3201) 85040 at 1; Uber's

2  Ex. D (filed under seal), ECF 4580-5 at 9; and Uber's Ex. E (filed under seal), ECF 4580-6, at 10.

3  The amendment simply includes the previously provided address.

4       Uber also inaccurately claims that the former plaintiff in MDL 1496 delayed in providing

5  ride pick-up and drop-off addresses. Uber's Mot. (filed under seal), at 4:13-20. Specifically, Uber

6  laments that Jane Doe S.G. allegedly "changed" her response to PFS Question 16 from "she does not

7  know or recall" to providing specific pick-up and drop-off locations. Uber's Mot. (filed under seal),

8  at 4:1-20. Uber misleadingly states that the addresses were not provided until "[e]ight months later."

9  *Id*. at ECF 4580 [Page 8 of 17], 4:3. However, the same addresses were provided nearly a year earlier

10  in the former plaintiff's Uber Ride Information Form, which was produced before both the first and

11  second amended PFSs. Ex. 2, Uber Ride Information Form (MDL ID 1496) 16464 at 1. The

12  amendment challenged by Uber copies the previously provided addresses into the answer to Question

13  16. *See* Uber's Ex. G (filed under seal), ECF 4580-8 at 10.

14       **2.    Question 42 (MDL 1496, 1500, 1508, 3201)**

15       Uber points to PFS Question 42, which asks whether the plaintiff seeks out-of-pocket costs

16  relating to diagnoses and/or treatment of injuries. Uber Mot. (filed under seal), 5:1-20, 6:11-19, 7:13-

17  21. The amendments merely state what Uber already knew had it read the previously provided

18  answers to Question 40—there are no out-of-pocket treatment costs because there was no treatment.

19       In each of the four PFSs, the former plaintiffs stated in response to Question 40 that they did

20  not receive any incident-related diagnoses or treatment.[3] As to each amendment attacked by Uber,

21  the amendment simply corrects the Question 42 response to that same fact by clarifying that the

22  former plaintiffs were not seeking to recover any out-of-pocket costs for diagnoses or treatment

23  because—per their response already provided in answer to Question 40—no such diagnoses or

24  treatment occurred.[4]

25  _____

26  [3] *See* Jane Doe SG: Uber's Ex. F (filed under seal), ECF 4580-7 at 19; Jane Doe TW: Uber's Ex. H
   (filed under seal), ECF 4580-9 at 19; Jane Doe SW: Uber's Ex. J (filed under seal), ECF 4580-11 at
   19; and Jane Doe NLG KM: Uber's Ex. D (filed under seal), ECF 4580-5 at 19.

27  [4] *See* Jane Doe SG: Uber's Ex. G (filed under seal), ECF 4580-8 at 20-21; Jane Doe TW: Uber's Ex.

28  I (filed under seal), ECF 4580-10 at 20-21; Jane Doe SW: Uber's Ex. K (filed under seal), ECF 4580-
   12 at 20-21; and Jane Doe NLG KM: Uber's Ex. E (filed under seal), ECF 4580-6 at 20-21.

3.      **Questions 4 and 17 (MDL 3201).**

Uber argues that Jane Doe K.M. purportedly changed her discovery response regarding "the name of the driver" because the PFS Q17 answer originally said "n/a" while the first amended PFS states "Plaintiff does not recall the name of the driver." Uber's Mot. (filed under seal), at 7:8-12; Uber's Ex. D (filed under seal), ECF 4580-5, at 9; Uber's Ex. E (filed under seal), ECF 4580-6, at 10. Uber's characterization is misleading: the amendment does not alter any material information, it simply replaces a placeholder with a statement of non-recollection. Uber's Ex. E (filed under seal), ECF 4580-6 at 10.

Uber also complains that K.M. "changed her answer regarding her current address" in Question 4 by amending her response from "n/a" in the PFS, to include her current address in the first amended PFS. Uber's Mot. (filed under seal), at 6:21-25. In fact, however, K.M.'s current address was previously disclosed in the Uber Ride Information Form as the ride pick-up location. Ex. 1, Uber Ride Information Form (MDL ID 3201) 85040 at 1. *See* Uber's Ex. D (filed under seal), ECF 4580-5, at 4 (disclosing city and state of residence at time of incident). The amendment simply added previously provided information to a second responsive field in the form. *See* Uber's Ex. E (filed under seal), ECF 4580-6, at 4.

In sum, Uber is disingenuously claiming that these clarifications and/or corrections made any difference. The real problem here is not plaintiffs' discovery responses, but Uber's own, as discussed below.

**B. Uber Materially Changed DFS Answers.**

If any depositions are appropriate, the Court should get to the bottom of Uber's practice of claiming it cannot find or confirm accounts and/or trips that it later (with no new identifying information from the plaintiff) admits existed and/or occurred, by inquiring why an account could not have been identified or substantiated from the onset. Below are examples of such practice:

*DFS responses are highlighted in ==purple== and First Amended DFS responses are highlighted in ==blue.==

CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT" PLAINTIFF FACT SHEETS                                                    Case No. 3:23-md-03084-CRB

### Jane Doe A.V. (MDL ID: 3207)

| | | |
|---|---|---|
| Ex. 3, Defendant Fact Sheet (MDL ID 3207) 92639 | | Produced on 04/23/2025 |
| Ex. 4, First Amended Defendant Fact Sheet (MDL ID 3207) 152658 | | Produced on 09/26/2025 |
| Ex. 3, Defendant Fact Sheet (MDL ID 3207) 92639 | | Produced on 04/23/2025 |
| Ex. 4, First Amended Defendant Fact Sheet (MDL ID 3207) 152658 | | Produced on 09/26/2025 |

### Jane Doe (K.C.) (MDL ID: 2214)

| | | |
|---|---|---|
| Ex. 7, Defendant Fact Sheet (MDL ID 2214) 27135 | | Produced on 09/26/2024 |
| Ex. 8, First Amended Defendant Fact Sheet (MDL ID 2214) 33493 | | Produced on 11/08/2024 |
| Ex. 7, Defendant Fact Sheet (MDL ID 2214) 27135 | | Produced on 09/26/2024 |
| Ex. 8, First Amended Defendant Fact Sheet (MDL ID 2214) 33493 | | Produced on 11/08/2024 |

### Jane Doe T.W. (MDL ID: 1500)

| | | |
|---|---|---|
| Ex. 5, Defendant Fact Sheet (MDL ID 1500) 18280 | | Produced on 09/03/2024 |
| Ex. 6, First Amended Defendant Fact Sheet (MDL ID 1500) 148100 | | Produced on 09/12/2025 |

### Jane Doe (C.H.) (MDL ID: 2231)

| | | |
|---|---|---|
| Ex. 5, Defendant Fact Sheet (MDL ID 2231) 27153 | | Produced on 09/26/2024 |
| Ex. 6, First Amended Defendant Fact Sheet (MDL ID 2231) 37309 | | Produced on 12/11/2024 |



CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT" PLAINTIFF FACT SHEETS
Case No. 3:23-md-03084-CRB

**C. The Word "Completing" on Page 3 of the Form PFS Did Not Prevent Uber from Seeing the Blank Signature Lines in the Verifications.**

Uber claims to be defrauded because a sentence on PFS page three states that, "The Plaintiff completing this Plaintiff Fact Sheet is under oath …." ECF 4580 [Page 5 of 17], 1:6-9, 1:22; ECF 4580 [Page 6 of 17], 2:3, 2:10, 2:21-25; ECF 4580 [Page 13 of 17], 9:20; ECF 4580 [Page 14 of 17], 10:2, 10:18; ECF 4580 [Page 15 of 17], 11:7, 11:25; ECF 4580-4 [Page 3 of 10], 2:10-13. To be clear, Uber's "fraud" accusation depends on this one sentence on page 3 of the PFS form, which Uber's Motion quotes in whole or in part over a dozen times in its motion and ancillary papers. *See id*. Thus Uber's "fraud" calumny entirely depends on the word "completing" as proof that it was tricked into believing that the former plaintiffs had personally reviewed the amendments. *See, e.g.*, ECF 4580 [Page 5 of 17], at 1:9-10 ("A PFS is fraudulent where (as here) it states that it has been 'completed' [sic][5] by the Plaintiff, when in fact the Plaintiff did not review the completed PFS."); *id*. at [Page 14 of 17), 10:17-19 (Uber's only theory as to why the amended PFSs were "false statements" is to ignore the blank signature line and quote the word "complet[ed]").

There is no fraud first because, as established above, the changes merely conformed a handful of answers to previously disclosed information (*see supra* §II.A). Second, Uber had no trouble looking at the blank signature lines and recognizing that the amended PFSs were _not_ complete: Uber submitted a Declaration sworn under penalty of perjury in which Uber's own counsel states the amended PFSs have "not been verified." ECF 4580-1, 3:17 ¶11, *id*. at 3:23 ¶13, *id*. at 4:2 ¶15, *id*. at 4:8 ¶17. Therefore, Uber's claim that the "completing" language on page three created the fraud, presumably by convincing Uber that the PFS amendments were completed, fails in light of Uber's admission revealing it could readily see the blank signature lines.

**D. Uber's "Fraud" Theme Seeks to Exploit the Tragic Reasons Why Some Plaintiffs Would Become Non-Responsive.**

The point of Uber's motion is to distract from pending cases by harassing people about dismissed ones. Uber's stratagem has its roots in the fact that some of the women who signed up to participate as plaintiffs later stopped responding—that is why they could not eyeball corrective

---

[5] Uber argues that the PFS states it was "completed" (e.g., ECF 4580, 1:9), when the word is "completing." ECF 4287, p. 3 [Page 15 of 49].

1  amendments conforming the PFSs with previously provided information. *See* ECF 4522, at 6. Uber

2  labors to spin the fact that sexual assault victims became non-responsive into a nefarious plot. Rather

3  than proof of "fraud," sexual assault victims' struggles in participating in the legal system are well

4  documented.

5  Sexual assault survivors experience elevated rates of depression and post-traumatic stress

6  disorder, conditions that frequently interfere with survivors' ability to sustain participation in legal

7  proceedings.[6] Delayed disclosure, hesitation, and withdrawal are common and predictable responses

8  by sexual assault survivors navigating legal systems.[7] Even when survivors report promptly and

9  initially cooperate, attrition rates remain extraordinarily high due to myriad factors including

10  institutional skepticism, evidentiary barriers, and societal pressures.[8] Survivors frequently disengage

11  because legal proceedings are overwhelming, retraumatizing, and perceived as unlikely to deliver

12  justice.[9] Service-provider and legal-services research suggests that a combination of societal

13  attitudes, organizational obstacles, and direct service barriers often exacerbate trauma, increase

14  revictimization, and undermine survivor well-being.[10]

15  One can only imagine the effect of Uber falsely denying something as fundamental as the

16  _____

[6] *See* Ex. 9, Theresa Mackey et al., *Factors Associated with Long-Term Depressive Symptoms of Sexual Assault Victims*, 6 Archives of Psychiatric Nursing 10, 11-12 (1992) (finding that sexual assault survivors exhibit significant and persistent depressive symptoms that impair daily functioning over time), https://www.psychiatricnursing.org/article/0883-9417(92)90050-S/abstract; *see also* Ex. 10, Courtney E. Ahrens et al., *To Tell or Not to Tell: The Impact of Disclosure on Sexual Assault Survivors' Recovery*, 25 Violence & Victims 631, 641-644 (2010) (explaining that trauma responses affect survivors' capacity to disclose, engage with institutions, and sustain participation in recovery-related processes), https://roqhas.org/wp-content/uploads/2024/07/ahrens-2010-impact-of-disclosure-on-sexual-assault-survivors-recovery.pdf.

[7] *See* Ex. 10, *supra* note 5, at 642-44 (documenting varied disclosure patterns among sexual assault survivors, including delayed and discontinued disclosure linked to trauma and institutional responses).

[8] *See* Ex. 11, Jennifer M. Brown et al., *Characteristics Associated with Rape Attrition and the Role Played by Skepticism or Legal Rationality by Investigators and Prosecutors*, 13 Psychol., Crime & L. 355, 355-358 (2007), https://doi.org/10.1080/10683160601060507.

[9] *See* Ex. 12, Jodie Murphy-Oikonen et al., *Sexual Assault Case Attrition: The Voices of Survivors*, SAGE Open, Oct.–Dec. 2022, 8 (2022) (reporting survivor accounts that withdrawal from legal processes is driven by trauma, emotional burden, and secondary victimization), https://journals.sagepub.com/doi/pdf/10.1177/21582440221144612.

[10] *See* Ex. 13, Sarah E. Ullman & Stephanie M. Townsend, *Barriers to Working with Sexual Assault Survivors: A Qualitative Study of Rape Crisis Center Workers*, 13 Violence Against Women 412, 418-441 (2007), https://journals.sagepub.com/doi/10.1177/1077801207299191.

1  existence of the Uber account or that the trip even occurred (*see, e.g., supra* § II.B).

## III.    ARGUMENT

3  Uber fails to cite apposite authority—when it deigns to cite any at all. In support of its demand

4  for duplicative rounds of signatures, *see* ECF 4580-4 [Pages 9-10 of 10], Uber *does not even attempt*

5  *to cite caselaw*. *See* ECF 4580 [Pages 14-15 of 17], at 10:23—11:20. Such "shoddy motion

6  practice"—relying on "argument [that] is barely developed and does not cite to any persuasive

7  authority"—"is unacceptable." *Freeman v. Alta Bates Summit Med. Ctr. Campus*, No. C04-

8  2019SBA, 2004 WL 2326369, at *6–7 (N.D. Cal. Oct. 12, 2004) (citing N.D. Cal. Civ. L.R. 7-4(a));

9  *see also* N.D. Cal. Civ. L.R. 3-4(d) (provisions for citations to legal authority). Uber is not entitled

10  to sanctions based on baseless allegations and citation-free demands. *See Quillinan v. Ainsworth*,

11  755 F. App'x 690, 690–91 (9th Cir. 2019) ("The district court did not abuse its discretion by denying

12  defendants' motion for sanctions because defendants failed to develop the record sufficiently to

13  demonstrate that sanctions were warranted.") (citation omitted); *Ortego v. Lummi Island Scenic Ests.*

14  *Cmty. Club, Inc.*, 738 F. App'x 912, 916 (9th Cir. 2018) (affirming denial of Rule 11 sanctions

15  because "Plaintiffs provided neither the authority to support sanctions nor a meaningful explanation

16  of why sanctions were warranted, both of which are required by Federal Rule of Civil Procedure

17  11.") (citation omitted).[11] As addressed below, that is all Uber's Motion offers.

18  ### A.  Uber's Deposition Demand Is Incoherent, Lawless, and Impossible.

19  The cases identified in Uber's Motion were dismissed on November 19, 2025, by order of

20  this Court. ECF 4442. Indeed, the Declaration filed as purported support for Uber's Motion admits

21  that "dismissals … [were] already granted by the Court." ECF 4580-1, at 2:19-20. If the Court signs

22  Uber's Proposed Order, these claims will be dismissed with prejudice. *See* ECF 4580-4 [Page 3 of

23  10], 2:19. Therefore, by Uber's design, none of these women have claims pending before the Court.

24  Uber's motion is thereby incoherent in demanding discovery only available in pending

25  litigation. The former plaintiffs with dismissed cases include MDL ID 1496, 1500, 1508, 3201. ECF

---

27  [11] Having failed to produce the requisite evidence and arguments necessary to sustain its request for
relief in its motion, Uber cannot now supplement its motion with "new facts or different legal

28  arguments" in its reply. *Dytch v. Yoon*, No. C10-02915-MEJ, 2011 WL 839421, at *3 (N.D. Cal.
Mar. 7, 2011) (collecting cases).

4580-4 [Page 6 of 10], 2:7-9, 2:25. Incomprehensibly, Uber's Proposed Order provides that, "[i]n order for Defendants to … *evaluate these Plaintiffs' cases*, the Court orders that each Plaintiff listed on Exhibit A2 shall submit to a two-hour deposition conducted by Defendants within 30 days of this Order." ECF 4580-4 [Pages 3-4 of 10], 2:26—3:1 (emphasis added). It is impossible for Uber to "evaluate these Plaintiffs' cases" because these women *have no cases* anymore. Docs. 4442, 4580-4. These "Plaintiffs' cases" no longer exist. *See id.* And, undersigned is no longer in contact with these women and therefore has no way to present them for a deposition in any event. *See, generally*, ECF 4522, at 6:1-2; *United States v. Rylander*, 460 U.S. 752, 757 (1983) ("While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action."); *cf. Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc*., No. 2:17-cv-01515-KJM-AC, 2019 WL 246628, at *5 (E.D. Cal. Jan. 17, 2019) (protective order granted on certain Rule 30(b)(6) topics where it was "impossible for [party] to identify an appropriate deponent and properly prepare that deponent"). Uber's arguments and its Proposed Order (ECF 4580-4) self-contradict. Uber demands an order dismissing the cases with prejudice while simultaneously demanding depositions to "evaluate … cases"[12]  that do not exist and can never be re-filed.

    Not surprisingly, Uber cites no authority supporting its demand for a self-contradictory court order compelling depositions of unavailable former parties to evaluate dismissed cases. Uber first selectively quotes Federal Rule of Civil Procedure 37(b)(2),[13] omitting the limiting language, emphasized below, that renders the Rule inapplicable:

> *(A) For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where **the action is pending** may issue further just orders. They may include the following:
>
>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

---

[12] ECF 4580-4 [Pages 3-4 of 10], 2:26—3:1.
[13] *See* ECF 4580 [Page 14 of 17], 10:7-8.

CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT"
PLAINTIFF FACT SHEETS                                    Case No. 3:23-md-03084-CRB

1
2
3
4

        (iii) striking pleadings in whole or in part;
        (iv) staying further proceedings until the order is obeyed;
        (v) dismissing the action or proceeding in whole or in part;
        (vi) rendering a default judgment against the disobedient party; or
        (vii) treating as contempt of court the failure to obey any order except an order
        to submit to a physical or mental examination.

5
6
7
8
9
10

Fed. R. Civ. P. 37(b)(2)(A) (emphasis added). Pursuant to the above-quoted and emphasized language of the Rule, the Rule does not provide for "further just orders" here because the actions are not pending. Consistently, none of the listed sanctions include former-party depositions. Uber already has its pound of flesh by dismissal, a sanction listed at Rule 37(b)(2)(A)(v). Uber cites no authority for the proposition that sanctions can include depositions to evaluate cases that do not even exist at the time of the depositions.

11
12
13
14
15
16
17
18

      Ironically, Uber blames plaintiffs for protracted motion practice,[14] yet Uber's Proposed Order has no purpose other than to set the stage for future motions. The Proposed Order is designed in numerous respects to divert judicial resources into a lawless witch hunt. Uber plans to keep beating the dead horse of dismissed cases by demanding ever more sanctions when the undersigned cannot produce nonresponsive former plaintiffs for depositions to evaluate non-existing cases. Even were there a live party in a pending case, a party cannot be sanctioned under Rule 37(b)(2) for failing to produce another person for examination pursuant to a court order if "the disobedient party shows that it cannot produce the other person." Fed. R. Civ. P. 37(b)(2)(B).

19
20
21
22
23
24
25
26

      Not only is Uber's Proposed Order irreconcilable with Rule 37, but Uber cannot satisfy the requirements for subpoenaing a witness to testify pursuant to Federal Rule of Civil Procedure 45. For one thing, "A subpoena must issue from the court where the action **is pending**." Fed. R. Civ. P. 45(a)(2) (emphasis added). That aside, a subpoena may command a person to attend a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(1)(A). These former party plaintiffs are non-responsive; therefore, it is unclear how Uber could make this determination so as to issue a deposition subpoena even were

27
28

---

[14] *See, e.g.,* ECF 4580 [Page 5 of 17], 1:12 (lamenting Uber is allegedly "forced" to file a motion when, in truth, Uber is using its serial motions to harass plaintiffs' firms and de-rail pre-trial litigation).

CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT" PLAINTIFF FACT SHEETS           Case No. 3:23-md-03084-CRB

there a still-pending case.

Uber compounds its disregard for the Federal Rules of Civil Procedure by citing case law that does not remotely support entry of its Proposed Order. Uber boldly miscites *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17-cv-05554-JST(TSH), 2019 WL 4256383, at *3 (N.D. Cal. Sept. 9, 2019), as a purported example of courts' discretion to fashion appropriate relief under Federal Rule of Civil Procedure 37(b)(2), "include[ing] ordering additional discovery." *See* ECF 4580 [Page 14 of 17], 10:11-16. *Hardin* does not cite Federal Rule of Civil Procedure 37. *See* 2019 WL 4256383. *Hardin* does not even use the words "sanction" or "discretion," much less define the court's discretion in imposing sanctions. *See id.* Nor does *Hardin* address, much less condone, depositions of unavailable non-parties to evaluate cases no longer pending before the Court. *See id.*

*Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 244 (9th Cir. 2021) (cited at ECF 4580 [Page 14 of 17], at 10:12-13), says nothing allowing depositions of former parties no longer before the Court in order to evaluate cases dismissed with prejudice, but rather recognized the district court's discretion in granting a motion in limine excluding *a party*'s damages evidence. *Narula v. Orange Cnty. Superior Ct.*, No. 8:19-cv-00133-DSF-JC, 2021 WL 2406810 (C.D. Cal. May 3, 2021) (cited at ECF 4580 [Page 14 of 17], at 10:15-16), does not address Federal Rule of Civil Procedure 37 or the propriety of ordering impossible depositions of unavailable dismissed parties to evaluate dismissed cases. Indeed, *Narula* does not address depositions at all. More ironically, it criticizes a party's request for remedy against entities "who have already been dismissed without leave to amend" as "specious." *Id.* at *5.

Therefore, Uber's demand for court-ordered depositions respectfully should be denied. Were this discovery allowed, then undersigned seeks to depose the person who materially changed DFS answers to only belatedly admit that accounts did in fact exist and that a trip had in fact occurred (*see supra* §II.B). Because this paralegal presumably continues to certify answers in live cases, an investigation into why Uber has claimed ignorance of accounts/trips which it later admits existed/occurred could provide relevant information moving forward.

**B. There Was No Fraud, at Least Not on the Part of Plaintiffs or Plaintiffs' Counsel.**

As argued above, the "completing" language on page 3 did not prove fraud because Uber

11

CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT"
PLAINTIFF FACT SHEETS                                    Case No. 3:23-md-03084-CRB

admitted it understood, from the blank signature lines, that the amendments were not verified, which by definition made them incomplete under PTO10 (*see supra* §II.C). As a matter of law as well, this is the objectively reasonable interpretation of the blank signature lines.

If a general and a specific provision in an instrument are inconsistent, the specific provision controls. *See Castillo v. CleanNet USA, Inc*., 358 F. Supp. 3d 912, 946 (N.D. Cal. 2018) (citation omitted); *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1193 (E.D. Cal. 2009) (citation omitted), *aff'd*, 409 F. App'x 88 (9th Cir. 2010). The blank line under the **VERIFICATION** paragraph at the end of the PFS (ECF 4287, p. 16 [Page 28 of 49]), is more specific than the sentence Uber quotes from PFS page 3. Indeed, for all that Uber hypes the word "completing" on page 3, Uber ignores that this sentence appears under the heading "Accuracy and Supplementation." If incompleteness is fraud, as Uber reasons, then the very concept of supplementing would appear to be inapplicable.

Further, the PFS should be interpreted to avoid redundancy and surplusage. *See, e.g., Schertzer v. Bank of Am., NA*, 109 F.4th 1200, 1209 (9th Cir. 2024) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable." (quoting *Carson v. Mercury Ins. Co*., 210 Cal. App. 4th 409, 420, 148 Cal.Rptr.3d 518 (2012))); *Hoban v. Nova Cas. Co*., 335 F. Supp. 3d 1192, 1203 (E.D. Cal. 2018) (contracts are construed to avoid rendering terms surplusage (parenthetical citing *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1785, 22 Cal.Rptr.2d 206 (1993))). Uber's argument violates this principle by rendering the verification redundant of the "completing" sentence on page 3. Uber is saying, in a circuitous way, that by submitting an unsigned PFS to the portal, the lack of signature is meaningless because the sentence on PFS page 3 somehow equated with a signature under Federal Rule of Civil Procedure 26(g) – even though Uber undeniably could see the amended PFSs at issue were unsigned. Under Uber's interpretation, the failure of a plaintiff to sign the verification is both a fatal defect requiring dismissal *and*, inconsistently, meaningless because a sentence on page 3 of the PFS form automatically executed a signature.

Uber's argument is further inconsistent with the Court's Fact Sheet protocol (ECF 4287). The raison d'être of the deficiency protocol presupposes that the penalty for incompleteness is controlled by that protocol. Ignoring this, Uber invents and demands additional punishments and PFS

certifications different from what the Court ordered. *E.g.*, ECF 4287 [Page 28 of 49] (client verification rather than attorney Rule 26(g) certification); *see also infra* §III.C.

Uber consistently ignores the actual language of Rule 26(g), which is inapplicable to its arguments against the undersigned.[15] Assuming for the sake of argument Rule 26(g) applies, if a discovery response is unsigned, then other parties have no duty to act on it, and the Court must strike it unless a signature is promptly applied after the omission is called to the attorney's or unrepresented party's attention. Fed. R. Civ. P. 26(g)(2). Thus, the lack of a signature is not a "fraud," and the Court has already struck the entire case as a penalty. The fact that the Rule contemplates unsigned discovery documents and allows a cure for same undermines Uber's theory that submitting an unsigned discovery document to a portal is fraud.

### C. Uber Demands a Lawless End Run Around the Court's Fact Sheet Implementation Order (ECF 4287).

Uber demands an order requiring that certain firms execute Uber's Exhibit A3 as to any and all plaintiffs they represent in this MDL, and that these plaintiffs—none of whom Uber names in its unprecedented motion—submit additional signatures per Uber's Exhibit A4. ECF 4580-4, at 3:12-4:2. In support of this indiscriminate harassment of unnamed plaintiffs, Uber *does not and cannot cite caselaw*. *See* ECF 4580 [Pages 14-15 of 17], at 10:23—11:20.

Uber cannot punish plaintiffs *it does not even deign to name* based on (false) allegations about an entirely different group of former plaintiffs. Rule 37(b)(2) sanctions must be just and, independently, "must be specifically related to the particular 'claim.'" *Ins. Corp. of Ireland v.*

---

[15] Uber submits a Declaration claiming that, "Nachawati Law Group … served Rule 26(g) certifications." ECF 4580-1, Declaration of Christopher V. Cotton ISO Defendant's Motion Regarding Fraudulent Plaintiff Fact Sheets, at 2:11-14 ¶3. This is inaccurate. Undersigned filed a "statement" (ECF 4522), which neither cited Rule 26(g) nor used the word "certification" because Rule 26(g) was inapplicable to the discovery at issue. Rule 26(g) only applies to signatures on discovery requests, responses, and objections "by at least one attorney of record in the attorney's own name—or by the party personally, **if unrepresented**[.]" Fed. R. Civ. P. 26(g)(1) (emphasis added). Because the PFS form calls for the signatures of a represented party, Rule 26(g) never applied to the PFSs at issue. Therefore, rather than citing a Federal Rule of Civil Procedure that on its face had no application, which in itself could be deemed some form of falsehood, undersigned filed a statement that omitted any citation to or certification under the inapplicable Rule 26(g). *See* ECF 4522. Moreover, the signature on that statement would not qualify as a Rule 26(g) certification because it was not a "disclosure under Rule 26(a)(1) or (a)(3)" or a "discovery request, response, or objection." Fed. R. Civ. P. 26(g)(1).

1    *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

2    Uber's demands not only lack a scintilla of legal or factual support, but they also violate this

3    Court's Fact Sheet Implementation Orders. The current Fact Sheet Implementation Order, Amended

4    PTO No. 10, ECF 4287, "governs the form, schedule for completion, and service of personal injury

5    Plaintiff Fact Sheets," resolving "the parties' numerous disputes over the form and content of the

6    PFS." ECF 4287, 1:14-15, 1:20-21. Uber's Proposed Order violates this Court's Amended PTO10

7    in several respects.

8    First, Uber can only challenge a PFS response through "a deficiency notice outlining the

9    purported deficiency(ies)," and by following a specifically timed protocol thereafter (ECF 4287, at

10   8:11—9:19)—none of which Uber has done for the unnamed plaintiffs and cases it seeks to subject

11   to Uber's Exhibits A3 and A4.

12   Second, this Court's Order does not require Rule 26(g) certifications, but rather allows fact

13   sheets signed by plaintiffs represented by counsel (ECF 4287 [Page 28 of 49]) and by defense

14   counsel's paralegals (*id*. at Page 49 of 49). Rule 26(g) only applies to attorneys or parties

15   unrepresented by counsel. Fed. R. Civ. P. 26(g)(1) ("at least one attorney of record in the attorney's

16   own name—or by the party personally, if unrepresented"). Therefore, based on the plain language

17   of the rule, by allowing represented parties and paralegals to sign the discovery responses, Amended

18   PTO10 does not require Rule 26(g) certifications. Uber's attorney certifications (Uber Exhibit A3)

19   are therefore inconsistent with the signature protocols this Court promulgated in PTO10.

20   Third, the second round of plaintiff signatures Uber demands (Uber Exhibit A4), expose the

21   harassment at the heart of Uber's motion. Uber already has signatures in the verification format this

22   Court approved. ECF 4287 [Page 28 of 49]. A second round of signatures by plaintiffs who already

23   signed what this Court requires in PTO10 is duplicative and harassing.

24   Fourth, with regard to these untold numbers of cases, Uber is demanding de facto revisions

25   of Amended PTO10 but without completing the revision process dictated therein. ECF 4287, at

26   11:19-20 ("The Court will not revise either this Order or the fact sheets unless the parties agree on a

27   given change.").

28   In sum, Uber's campaign of harassing certain targeted plaintiffs' firms and an untold number

CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT"
PLAINTIFF FACT SHEETS                                            Case No. 3:23-md-03084-CRB

1  of unnamed plaintiffs not only fails for lack of any legal support, but it further reveals Uber's

2  disregard for the time and attention this Honorable Court has devoted to Amended PTO10.[16]

3  **IV.    CONCLUSION**

4      Uber's hyperbolic "fraud" accusations seek to capitalize on the fact that former party

5  plaintiffs became non-responsive. Uber goes so far as to include accusations that have nothing to do

6  with the law firms, former plaintiffs, and unnamed current plaintiffs targeted in its motion.[17] Ignoring

7  its own material failures in DFS responses, Uber distorts unsigned PFS amendments that clarify a

8  handful of former plaintiffs' PFS answers. Uber seeks to mire this litigation in a never-ending series

9  of sanctions motions over discovery answers that are moot because the cases are dismissed.

10      Uber's distraction stratagem, if successful, would be unprecedented. Uber attempts no

11  caselaw citation—none—even ostensibly legitimizing its demand that an untold number of unnamed

12  plaintiffs be forced to submit additional signatures over and above what this Court has already

13  ordered in Amended PTO10.[18] Uber attempts no caselaw citation—none—even ostensibly

14  legitimizing its campaign of harassing plaintiffs' firms by requiring an untold number of signatures

15  contrary to the Amended PTO10 protocol.[19] Worse still, when Uber attempts to dignify its demand

16  that unavailable former plaintiffs be deposed for the avowed purpose of evaluating cases that are no

17  longer pending, Uber cites inapposite authorities, including a boldly inaccurate citation to *Hardin*,

18  2019 WL 4256383, at *3.[20]

19      Uber's Motion can be summed up thusly: Uber is wasting this Court's valuable time. The

20  undersigned respectfully prays that the Court deny Uber's motion. In the alternative, if Uber is

21

22  [16] As further example of the short shrift Uber accords this Court's PTOs and the Federal Rules of

23  Civil Procedure, Uber represents to this Court that the "amended PFS [were] fil[ed]." ECF 4580 [Page 7 of 17], 3:6. Generally speaking, discovery is not filed in federal court. *See* Fed. R. Civ. P.

24  5(d)(1)(A); *see also* ECF 4287, 6:16-19 (Am. PTO 10 generally incorporating Federal Rules of Civil Procedure by reference). Consistently, this Court did not order that the PFS be filed, but rather that

25  they be served and uploaded. ECF 4287, 7:17-22.

26  [17] Uber complains about purported facts that have nothing to do with any of the three plaintiffs' firms that its motion targets. *See* ECF 4580 [Pages 12-13], pp. 8:22—9:8 (complaining about Docs. 4103 & 4104).

27  [18] *See* ECF 4580 [Pages 14-15 of 17], at 10:22—11:20.

  [19] *See id.*

28  [20] *See id.* at 10:11-16; *supra* §III.A.

CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT"
PLAINTIFF FACT SHEETS                                                    Case No. 3:23-md-03084-CRB

granted any relief, undersigned respectfully requests a six-hour deposition of Uber paralegal Alejandra O'Connor on what investigation, if any, she conducted before certifying that Uber had not located accounts for T.W. (MDL 1500), K.C. (MDL 2214), and C.H. (MDL 2231), and could not confirm the trip for A.V. (MDL 3207) and K.C. (MDL 2214). Perhaps this deposition could reveal that Uber is gaslighting sexual assault victims.

Dated: December 19, 2025

**NACHAWATI LAW GROUP**

*/s/ Steven S. Schulte*
Steve Schulte (TX SBN 24051306)
*Appearance Pro Hac Vice*
John Raggio (CA Bar No. 338261)
Arati Furness (CA Bar No. 225435)
**NACHAWATI LAW GROUP**
5489 Blair Road
Dallas, TX 75231
Telephone: (214) 890-0711
Facsimile: (214) 890-0712
schulte@ntrial.com
jraggio@ntrial.com
afurness@ntrial.com

*Counsel for Plaintiffs*

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on December 19, 2025, I electronically filed the foregoing document

3   with the Clerk of the Court using the CM/ECF system, which will automatically send notification of

4   the filing to all counsel of record.

5                                              */s/ Steven S. Schulte*
                                               Steve Schulte (TX SBN 24051306)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTAIN NACHAWATI PLAINTIFFS' RESPONSE TO UBER'S MOTION REGARDING "FRAUDULENT"
PLAINTIFF FACT SHEETS                                              Case No. 3:23-md-03084-CRB