UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL MATTERS | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING THE CORRECTED SUPPLEMENTAL REPORT OF JOHN CHANDLER, PH.D. AND THE UPDATED EXPERT REPORT OF LACEY R. KELLER**<br><br>Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

The Parties respectfully submit this joint letter regarding disputed issues related to the Corrected Supplemental Report of John Chandler, Ph.D. and the Updated Expert Report of Lacey R. Keller.

DATED: December 19, 2025

By: /*Roopal P. Luhana*
ROOPAL P. LUHANA (*Pro Hac Vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, Fl. 12
New York, NY 10016
Telephone: (888) 480-1123
Email: luhana@chaffinluhana.com

SARAH R. LONDON (SBN 267083)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Email: slondon@girardsharp.com

RACHEL B. ABRAMS (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Email: rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

By: *Laura Vartain Horn*
LAURA VARTAIN HORN
**KIRKLAND & ELLIS LLP**
LAURA VARTAIN
Laura.vartain@kirkland.com
ALLISON M. BROWN (*pro hac vice*)
Alli.brown@kirkland.com
JESSICA DAVIDSON (*pro hac vice*)
Jessica.davidson@kirkland.com
KIM BUENO (*pro hac vice*)
kim.bueno@kirkland.com

*Counsel for Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC*

**Uber's Position**: On December 3, 2025, Plaintiff served two expert reports on Uber: 1) a Corrected Supplemental Report of John Chandler, Ph.D.; and 2) an Updated Expert Report of Lacey R. Keller (collectively, the "Supplemental Reports"). Plaintiff's Supplemental Reports are untimely and constitute improper attempts to rewrite and bolster these experts' original reports under the guise of being related to new information. Because these defects are not justified or harmless, and because this is part of an ongoing, prejudicial pattern by Plaintiff of producing untimely reports, the reports should be stricken.

Dr. Chandler and Ms. Keller filed their timely opening expert reports on September 26, 2025. On October 13 and October 17, 2025, Uber produced data related to the Flack system, an internal database related to reported incidents of sexual assault and misconduct. On October 24, 2025, Dr. Chandler filed a rebuttal report to Uber's expert, Dr. Victoria Stodden. On the same date, Dr. Stodden filed a rebuttal report to both Dr. Chandler's and Ms. Keller's opening reports. Seven weeks later, on December 3, 2025, Plaintiff filed two new supplemental expert reports: Dr. Chandler's "Corrected Supplemental Report," which purports to update his opening report, *see* Ex. 1, and Ms. Keller's "Updated Expert Report," which "entirely replaces" her original report, *see* Ex. 2. Both reports purport to be based on the production of the Flack data nearly two months prior.

Rule 26(e) requires parties to supplement expert reports "in a timely manner." Fed. R. Civ. P. 26(e). Rule 37(c)(1) "gives teeth" to Rule 26 by requiring exclusion of any improperly disclosed supplemented information "by forbidding [its] use at trial[.]" *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Under Rule 37(c)(1), an untimely report should be excluded unless the "parties' failure to disclose the required information is substantially justified or harmless." *Id*. Critically, "[s]upplementation under Rule 26(e) does not create a loophole for a party to revise an initial report to its advantage." *Burger v. Excel Contractors, Inc.*, No. 2:12-CR-01634-APG-CW, 2013 WL 5781724, at *3 (D. Nev. Oct. 25, 2013). "Rather, 'supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Id*. Together, these rules mandate exclusion of Plaintiff's supplemental expert reports.

*First*, both reports are untimely. The Flack data upon which they each claim to be based was produced October 13 and 17, 2025.[1] Yet, their updated reports were not served until December 3—nearly seven weeks later,[2] and less than six weeks before trial is set to begin. Any necessary updates to the reports based on the Flack data alone could have and should have been completed more expeditiously, particularly in the light of the looming trial date. *See Butler v. Unified Life Ins. Co.*, No. CV 17-50-BLG-SPW-TJC, 2019 WL 4479838, at *2 (D. Mont. Sept. 18, 2019)

---

[1]  Dr. Chandler also indicates that he relied on the November 7, 2025 30(b)(6) deposition of Todd Gaddis, Uber's Manager II Data Analytics, but his 43-page report only references that deposition three times, each time on minor points that are immaterial to his opinions. *See* Ex. 1 ¶ 13 n.14; ¶ 26 n.19; ¶ 32 n.23.

The Flack counts that were corrected on October 13 were missing data from one single day, December 31, 2024. Plaintiff had correct counts for all other 96 months of incident data prior to the Opening Report deadline.

[2]  This delay is particularly notable given the parties' compressed expert schedule in this case. For reference, all rebuttal reports were required to be served just four weeks after Opening Reports were due.

(excluding reports where plaintiffs "were not diligent in supplementing their expert reports" because they were not provided until two months after discovery of new information).

**Second**, even if they were timely, both reports should be stricken because they rely only minimally on new information, and instead amount to improper attempts to revise and bolster the experts' original reports.[3] Pages and pages of Dr. Chandler's 43-page, 148-paragraph supplemental report do not even purport to rely on Flack data at all and instead rely on and cite internal Uber documents produced and available to him well prior to his opening report. *See, e.g.*, Sections VI-VII. Dr. Chandler even concedes that "**[n]one of the analytical opinions from [his] Opening Report change[d] when [he] recreate[d] them using the Flack data**." Ex. 1 at 2 (emphasis added). In other words, the Flack data proved irrelevant to his conclusions and thus were an improper basis for filing a supplemental report. *See Cyntec Co. v. Chilisin Elecs. Corp.*, No. 18-CV-00939-TLT, 2025 WL 3251601, at *6 (N.D. Cal. Nov. 21, 2025) (excluding supplemental report where expert stated that his opinions had not changed but rather attempted to strengthen his previous report).

As to the Keller report, Ms. Keller inexplicably changes the name of previously-defined terms (such as "Publicly Disclosed Five"), changes the titles of figures and tables included in her initial report (despite using the same or substantially the same values for the data points included in those figures and tables) and changes the y-axis of tables included in her initial report (despite using substantially the same values for datapoints included in those tables). Even for the opinions in her supplemental report that are based on the same data Ms. Keller analyzed in her first report, she changes the text of headings and sub-headings in her supplemental report related to those opinions, as well as explanatory text in the body of those sections of the supplemental report.

Further, Uber had already produced significant incident-level data from JIRA and Bliss on April 9, 2025, 8 months prior to these new reports. Flack pulls data from the JIRA and Bliss database, and as such, the data provided by Flack is functionally coextensive with the data produced from JIRA and Bliss. Many of the new opinions in the updated Keller report rely on incident-level data (not Flack data) that was produced well before the opening report deadline. *See, e.g.*, Opinion 4.

Had the supplemental reports timely and properly addressed only the newly-obtained information, Uber would not have objected. But instead of appropriately confining the reports, Plaintiff seized the opportunity to reframe and augment her experts' original reports in ways that go well beyond the scope of any reasonable response to the new Flack data. Courts in the Ninth Circuit "have rejected supplemental expert reports that were significantly different from the expert's original report and effectively altered the expert's theories or attempted to deepen and strengthen the experts' prior reports." *Martinez v. Costco Wholesale Corp.*, 336 F.R.D. 183, 189 (S.D. Cal. 2020) (internal quotation and citation omitted); *Ruiz v. Walmart Inc.*, No. CV 20-01129-RAO, 2021 WL 4796960, at *6 (C.D. Cal. Apr. 27, 2021) (excluding report where "supplemental report states additional opinions based on information that was available to [the expert] at the time of his initial report).

**Finally**, because Plaintiff cannot meet her burden of showing that the supplemental expert reports are justified and not harmless, Rule 37(c) requires exclusion of the reports. Less than six weeks before trial, Plaintiff served 100+ pages of new expert opinions, many of which could have

---

[3] At Plaintiff's invitation, Uber already identified which portions of the supplemental reports should be withdrawn because they are based on information that has long been available to Plaintiff and her experts. In response, Plaintiff refused to withdraw any portion of the reports.

and should have been disclosed months ago. Uber has no meaningful opportunity to rebut what Dr. Chandler and Ms. Keller have said without seeking, preparing for, and taking new expert depositions, as well as supplementing the reports of Uber's experts and filing new Rule 702 motions. Further, notwithstanding Judge Cisneros' December 17 Order, Plaintiff's new reports also put at issue the question of what the right baseline is when analyzing sexual assault incident data, including whether it is ever feasible to reduce the incidence of reported sexual assault to zero, which Keller and Chander do not reliably address. This is a critical opinion Uber should be permitted to address. It is indisputable that this imposes a substantial burden on Uber.[4] *See Ruiz*, 2021 WL 4796960, at *8 ("the prejudice to Defendant … arise[s] from … the amount of additional work Defendant and its attorneys and experts will have to undergo to review and respond to the supplemented report"); *Cyntec*, 2025 WL 3251601, at *9 (holding that the "disruption to trial factor weighs in favor of striking [plaintiff's] supplemental expert reports" where trial was less than four months away and defendants would need to respond to the supplemental report and take additional expert depositions).

---

[4] Because trial is set to begin in less than 4 weeks, the parties have agreed to schedule 3-hour supplemental depositions of Dr. Chandler and Ms. Keller, and Plaintiff has agreed to allow Uber to serve responsive rebuttal reports 30 days after service of the December 3 reports, while this motion is pending. Uber respectfully request a ruling on this motion in advance of the deposition and responsive report dates to avoid significant trial disruption. With that being said, 3-hour depositions and a compressed timeframe to offer rebuttal reports do not cure the substantial burden on Uber, especially given the expansive scope of the new reports and the fact that the reports were served after Rule 702 motions were due.

**Plaintiffs' Position**: Uber made extensive efforts to obstruct discovery of its Flack database, which Uber uses to house and analyze sexual assault and misconduct (SA/SM) incident data. (ECF 3700, 3878, 3914, 3994). Uber did not disclose Flack as a source of SA/SM data until July 2025 (and even then, only inadvertently so), more than a year and a half after the Court ordered Uber to disclose ESI sources and more than a year after the Court ordered Uber to produce SA/SM incident data. (*Id*.; 190, 683, 706). Uber did not produce Flack data until nearly a month after the expert report deadline and less than three months before trial and now seeks to prevent Plaintiff's data and statistics experts from presenting that data to the jury. Uber should not be permitted to weaponize its own massive, indefensible delays and discovery violations, to Plaintiff's prejudice.

In contrast, Plaintiff served her supplemental reports less than four weeks after the Court-ordered November 7 deposition of Uber's Flack witness. (ECF 4060). This was a notably quick turnaround given the Flack production included raw data on more than half a million SA/SM incidents. As Keller explains in both of her reports, the data needed to be standardized, formatted, validated, and accurately paired with the previously-produced Bliss and Jira data before analysis of it could even begin. And that process could not be completed before the Flack deposition, which was necessary to understand how to reassemble and interpret the raw data.[5] Validation was particularly critical given the numerous errors Plaintiff caught in Uber's prior SA/SM incident data productions, errors that required at least 5 corrected data productions over the course of more than a year. Notably, Uber's final (October 17) Flack raw data production was itself a corrected production, made after Plaintiff identified errors in Uber's initial October 13 production.

Uber brazenly ignores another of its own errors that is critical to the Court's consideration: the Flack SA/SM incident counts that Uber produced and that Keller and Chandler relied on in their initial reports <u>were not accurate</u>.[6] Uber did not disclose its error until October 13. Even if Keller and Chandler had undertaken <u>no</u> analysis of the raw data, supplementation would have been necessary to correct opinions that relied on Uber's erroneous tallies of its Flack incident—nearly *all* of Keller's report as well as Chandler's entire statistical analysis. The extensive impact of Uber's error is why Keller's supplement "entirely replaces" her original report. Uber's request should be denied on this basis alone, given that Uber's error placed an additional, substantial, and unexpected burden on Plaintiff. But to be clear, there is likewise no basis for striking any of the supplemental opinions, whether reliant on the corrected counts, the raw data, or neither.

***First***, the supplements are timely. Rule 26(e) requires only that expert witness disclosures

---

[5] Uber suggests that the number of times Chandler cited the deposition is somehow meaningful. This is a red herring. The deposition was necessary to understand how to process and interpret the data, and is thus a component of every opinion based on the data.

[6] As an interim step, the Court ordered Uber to produce, by September 9, either (1) a declaration confirming that incident numbers Uber produced from its Jira and Bliss database were the same numbers in Flack; or (2) if the numbers were different, the numbers as they existed in Flack. (ECF 3484). Uber chose option 2 and belatedly produced the numbers on September 12. Keller and Chandler heavily relied on those numbers in their opening reports. *See* ECF 4338 (Keller Rpt.) at 19-25, 28-34, 50, App'x A, E; ECF 4342 (Chandler Rpt.) at 74-76, 80-81, 92-97, 113-133.

be supplemented "in a timely manner," and specifically, by the time the party's pretrial disclosures are due. Per Judge Breyer's Order, ECF 4433, the parties agreed that pretrial disclosures were due December 8 and 10, well after the supplemental reports were served. ECF 4559 at 3.

**Second**, the supplements are based on the new evidence. Uber's suggestion otherwise means either Uber does not understand the supplements or intentionally misrepresents them. The supplements rely on both what was and was not in the newly produced Flack data. Uber internally analyzes data about risk factors for SA/SM incidents, such as gender, intoxication, and star rating, as examples. These risk factors have been the subject of lengthy discovery but Uber has never produced that raw data. Plaintiff's experts could not know whether risk factor evidence would be contained in or derivable from the raw Flack data until Uber provided the data and deposition testimony. Rather than offering analyses before discovery was complete, the experts reserved their right to supplement their Opening Reports to address this data, or lack of data. Both Keller and Chandler repeatedly highlighted this possibility in their opening reports and depositions. *See* ECF 4338 (Keller Rpt.) at 5, 10, 11 n. 25, 18, 34 n. 75, 35 n. 77, 46, 53, 70 n. 57, 73; ECF 4342 (Chandler Rpt.) at 98, 99, 112; ECF 4338-1 (Keller Dep.) at 13, 42, 116, 162, 164, 193-94, 195, 202, 226, 228, 256, 257, 259, 261, 262, 263, 264, 272, 278, 334, 373, 374; ECF 4342-1 (Chandler Dep.) at 97, 156, 161. Plaintiff's experts were entitled to complete data, including Flack, before providing opinions that may have been rendered incorrect by the data and exposing themselves to unfair attack created by Uber's delay. When the Flack data did not contain risk factor data, Plaintiff's experts were entitled to provide supplemental opinions that would have used that data, had it been produced, relying on Uber's internal documents instead. These limited supplements are within the scope of the prior opinions, did not come as a surprise to Uber, and result from Uber's own delay.

**Third**, if the supplements violated Rule 26 (they didn't), there is no basis for Rule 37 sanctions because the supplements were justified by Uber's delay tactics and erroneous discovery responses. "Courts generally permit expert witnesses to supplement their reports to address evidence produced after the date of an original report, at least where a party was not delinquent in failing to obtain the evidence earlier." (ECF 4701); *see also*, *Cyntec,* 2025 WL 3251601, at *8 (consider (1) prejudice or surprise to the opposing party; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; (4) bad faith or willfulness by the supplementing party; and (5) the importance of the evidence). Uber cannot claim surprise. Throughout the nearly three-month long exercise of compelling Uber to produce the Flack data, Plaintiff repeatedly expressed concern about timing of the data production with respect to expert report deadlines. (ECF 3700, 3914, 3994-1). In fact, the Court acknowledged the potential need to supplement expert reports after the Flack production. (ECF 4060). Both Keller and Chandler explicitly and repeatedly highlighted the likelihood of supplementation pending the outcome of the Flack data dispute in their opening reports and depositions; Keller no fewer than six times in her opening report and more than 20 times in her deposition. Uber was aware that these reports would be supplemented after the Flack production, and that it would take some time to supplement. Yet Uber rejected Plaintiff's offer to expedite the process by conducting the deposition on written questions. Wilkins Decl. at ¶4. Likewise, there is no prejudice to Uber. Uber requested and Plaintiff

7

provided deposition dates for both experts that will not delay the trial. Plaintiff also agreed that Uber could serve supplemental rebuttal reports. *Id.* at ¶6. Uber's representation that it "has no meaningful opportunity to rebut" these supplements is contrary to Uber's representations during conferrals that Uber would have one rebuttal expert, who it had already identified, and was prepared to produce that expert for deposition.[7] *Id.* at ¶5; *see also, e.g.*, *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.,* 2012 WL 12925789, at *7 (N.D. Cal. July 6, 2012) (motion to strike supplemental report denied where defendant's belated data production prevented plaintiff from submitting supplemental report before the deadline and the only discovery needed was a deposition of the expert that would not disrupt the case schedule).

As in *Burger*, 2013 WL 5781724, at *3 (D. Nev. Oct. 25, 2013), "there is no indication of bad faith or willingness in failing to comply with Rule 26(e)," the experts "made a concerted effort to timely disclose how the new information affected [their] opinion[s]," and the supplements "did not result in prejudice or surprise" because Uber was "aware of the [evidence] prior to initial report and supplements." Plaintiff diligently supplemented her expert reports in good faith. The only bad faith at issue is Uber's delay and obstruction. *See, e.g.*, *Sherwood v. BNSF Ry. Co.*, 2018 WL 3340571, at *9 (D. Idaho Jul. 6, 2018) ("the Court will not now hold that the Sherwoods were remiss in not having their expert opine sooner on materials to which they did not have the access they should" and the supplement was "substantially justified because of BNSF's own delay").

---

[7] Hours before the filing deadline, Uber indicated for the first time that it may seek to address on rebuttal, "whether it is ever feasible to reduce the incidents of reported sexual assault to zero." These issues are outside of the scope of Keller and Chandler's opinions and Uber should not be permitted a second bite at the apple after the Court settled this issue just days ago. (ECF 4701).