# EXHIBIT A

Bret Stanley (TX SBN 24075116)
bstanley@johnsonlawgroup.com
**Johnson Law Group**
2925 Richmond Ave, Suite 1700
Houston, TX 77098
Telephone: (713) 626-9336

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**DECLARATION OF BRET STANLEY SUPPORTING BRET STANLEY'S RESPONSE TO MOTION TO ENFORCE PROTECTIVE ORDER**<br><br>Judge: Honorable Charles R. Breyer<br>Courtroom: 6 – 17th Floor |
| This Document Relates to:<br><br>All Cases | |

I, Bret Stanley, declare:

1. I am a Senior Counsel at the law firm of Johnson Law Group, LLP. I am a named member of the Plaintiffs' Steering Committee of MDL 3084, IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION. I am a member in good standing of the Bar of the State of Texas am admitted to practice before this Court. I know the following facts to be true of my own knowledge, except those matters stated to be based on information and belief. If called upon to testify, I could and would testify competently to the truth of the matters stated herein. I respectfully submit this declaration in support of Bret Stanley's Response to Defendants' Motion for Sanctions Against Bret Stanley. I have reviewed Uber's Motion for Sanctions Against Bret Stanley, including its attached Exhibits A, A-1, A-2, A-3, and B. *See* ECF 4604. Importantly, Uber's Motion for Sanctions and Exhibits attached thereto have relevant omissions to the factual record and the facts provided here are intended to provide the full procedural history. This evidence is provided to show that Bret Stanley did not breach the Protective Order related to records sought in the *Smith* matter pertaining to ▮▮▮▮▮▮ discovery and sanctions should not be granted for the discovery efforts in the *Smith* matter.

2. I have extensively litigated against Uber Technologies, Inc. (Uber) since 2019. From 2019 to early 2024, I spent the overwhelming majority of my professional time representing thousands of Uber Drivers who sought to challenge their employment status and claimed to be employees of Uber, not independent contractors. Over the course of these years, I tried cases on behalf of many Uber Drivers through final arbitration, including trying an arbitration that resulted in an Uber Driver being found to be an employee in California under the Pre-Prop 22 standard. Additionally, I was on the trial team in the *Razak v. Uber Techs., Inc.,* 2024 WL 2831805, (E.D. Pa. June 4, 2024) matter. *Razak* was the first ever jury trial held against Uber in federal court challenging the employment status of Uber Drivers.

3. These litigations against Uber outside of MDL 3084 have allowed me to form a deep knowledge of Uber's systems, processes, procedures, data collection, incident adjudication actions, artificial intelligence systems, telematic systems, deactivation / termination policies, marketing efforts, user communication platforms, rider and driver App functionality, Uber Terms of Art, and

other information related to Uber.

4. Many of the drivers that I have represented used both the Uber Rides application to transport riders and the Uber Eats Application to deliver food/goods. I am aware that Uber deploys many of its systems' capabilities to both Uber Drivers and Uber Eats Deliverers. Uber's policies impact both Uber Drivers and Uber Delivery people. To the extent a single policy impacts both Drivers and Delivery People, Uber uses the term overarching term of "Earners" to signify that the policy relates to both Drivers and Delivery People.

5. I am aware through my litigation efforts prior to MDL 3084, that Uber uses its technology and telematic systems to monitor speed and GPS location of "Earners." Uber understands that Earners (Uber Drivers and/or Uber Delivery People) who go above the speed limit while using the Uber Application could create a safety risk to others and its systems are designed to automatically track an Earner's speed while using the Uber platform.

6. Prior to being named to MDL 3084's Plaintiff Steering Committee, I became aware that Uber used its technology and telematic systems to track the speed of Uber Eats Delivery People, including the speed of Uber Eats Delivery People who only had clearance to make deliveries on the platform by bicycle. I am aware that Uber sets speed thresholds for Delivery People who are only cleared to make deliveries by bicycle or on foot so that Uber can be aware if these individuals are using Uber's system consistent with the delivery logistic they are cleared for (by bicycle or on foot). If an individual who is only cleared by Uber to make deliveries by bicycle exceeds Uber's speed thresholds, this data related to the Uber Delivery person is automatically gathered and stored by Uber's technology and telematic systems.

7. I am aware that when Uber Delivery people, who are only cleared to make deliveries by bicycle or on foot, exceed the speed threshold set by Uber's systems during a bicycle Uber Eats delivery, Uber's technology and telematic systems capture this data and designate the trip as a "▅▅▅▅▅▅▅▅" ("VFB") delivery.[1] Uber uses ▅▅▅▅▅▅▅▅ designations to determine when an Uber Eats delivery person is making deliveries outside of their logistic designation (by bicycle) and

---

[1] In Uber's Motion for Sanctions papers, Uber has sealed all references to "▅▅▅▅▅▅▅▅" seeking to further shroud this term in secrecy, despite it being a general category of data maintained by Uber in the normal course of business.

as an indicator that the Delivery Person is using a vehicle.

8. Uber's ▮▮▮▮ technology is an automated monitoring system that reviews the speed of Uber Eats Deliveries that are supposed to occur by bicycle or on foot.

9. I am aware that when Uber's system identifies ▮▮▮▮ deliveries, this data is stored by Uber. When Uber's system identifies ▮▮▮▮ deliveries, Uber sends push notifications, electronic mail, and other communications to the Delivery Person who is flagged as making ▮▮▮▮ deliveries. Additionally, Uber reviews these flags from a high-level view to make decisions on users that are flagged for ▮▮▮▮.

10. I am aware that Uber's Policies call for ▮▮▮▮ triggers to result in an Uber Eats Delivery Person being removed from the Uber Platform for making deliveries outside of the mode of travel that the delivery person has clearance by Uber to make deliveries. I am aware that Uber identifies ▮▮▮▮ deliveries as a safety violation to the Uber Platform.

- *Smith vs. Uber Technologies, Inc.*, No. 2022-CI-11011, 57th Dist. Court, Bexar County, TX.

11. The *Smith* matter concerns a catastrophic motor vehicle collision between Joshuan Aldana, an Uber Eats Delivery person, and Plaintiff Smith. The collision resulted in Plaintiff Smith being paralyzed from the chest down. At the time of the collision, the Uber Eats Delivery was being made by car, despite Joshua Aldana only being cleared by Uber to make deliveries by bicycle or on foot.

12. Plaintiff Smith was in his early twenties on the date of the collision and was a collegiate tennis star at the University of Incarnate Word in San Antonio, Texas.

13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

14. In *Smith,* Uber's produced GPS and speed data on for Aldana's Uber Eats Deliveries is a central issue in the matter. Additionally, Uber's technology pertaining to whether Uber's system captured data that Aldana was making VFB Deliveries prior to the collision with Plaintiff Smith is a central issue.

15. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ██████████████████████████████████
2  ██████████████████████████████████
3  ██████████████████████████████████
4  ██████████████████████████████████
5  ████████████████████████.

16. On April 17, 2025, Uber was served with Requests for Production by Plaintiff Smith seeking ███████ information. *See* Ex. 1, Plaintiff's Fifth Request for Production, April 17, 2025.

17. Request for Production No. 70 sought the following:

> **70. Produce documents that indicate Uber's system flagged Joshua Aldana (UUID ████████████████████████) as making ████████ ████████ deliveries.**

*See* Exhibit 1, at Request for Production 70.

18. On October 10, 2025, six months after the Requests for Production were served on Uber, Uber made the following response to Plaintiff's Request for Production No. 70:

> "No Responsive Documents to produce."

*See* Exhibit Ex. 2, Defendant's Response to Plaintiff's Fifth Request for Production, October 20, 2025, at Response 70.

19. On November 5, 2025, the Parties in *Smith* participated in a Motion to Compel regarding Plaintiff's Fifth Request for Production. Below are portions of the transcript from the Nov. 5, 2025:

```
12        What's left?
13        MR. STANLEY:  Number 70, Judge.  We're asking that
14   Uber produce every time between February 10th, 2022 and April
15   6th, 2022, when Joshua's account was flagged for ███████████.
16   ███████████ is an indication on Uber's system accounts and
17   flags for Uber Eats deliveries who are only supposed to drive or
18   only supposed to ride a bike or on foot.  When their system
19   accounts or finds that the person is delivering by car, their
20   system flags it.
21        And so for the period from when he signed up, which
22   was February 10th, 2022, up until the date of the crash or the
23   day after the crash or the crash is included.  We're seeking
24   every time the system flagged his account for very fast bike.
25        MS. ANGOTTI:  Your Honor, we responded to this and
```

> ```
> 1  said no responsive documents to produce.
> 2        MR. STANLEY:  In the conferral, Counsel informed me
> 3  that she looked for just the day.  And that's not -- that's not
> 4  what I'm asking for.
> 5        I believe that the system probably did flag him on
> 6  that day if he was driving, especially sustained over ▮▮▮▮ an
> 7  hour, but we're looking for every time the system flagged his car
> 8  between February 10th, 2022 and April 6th, 2022  for ▮▮▮▮
> 9  ▮.
> 10       MS. ANGOTTI:  And, Your Honor, we've responded.  If
> 11  there was no ▮▮▮▮▮▮▮▮ designation for Aldana, we said no
> 12  responsive documents to produce.  We didn't limit it in any way.
> 13       THE COURT:  All right.  So motion to compel is
> 14  granted for that time period.  And I understand there are none.
> 15  All right.  Is that it?
> ```

See Exhibit 3, at 70:13-71:14.

20. During the hearing, no information that could be considered Confidential under MDL 3084's Protective Order was referenced concerning any VFB data that Uber maintains related to Joshua Aldana's account. However, Defense Counsel for Uber, Angela Angotti with Bowman and Brooke (Austin, TX Office), informed the court that there was, "no ▮▮▮▮ designation for Aldana" and "no responsive documents to produce." *See* Exhibit 3, 71:10-12.  Additionally, related to Uber's search for VFB designations responsive to Plaintiff's Request, Defense Counsel for Uber informed the Court that, "[w]e didn't limit it in any way." *Id.*

21. Based on the argument from Counsel, the Court in *Smith* granted Plaintiff's Motion to Compel related to Plaintiff's Request for Production 70, requiring Uber to produce documents that indicate Uber's system captured Joshua Aldana as making VFB deliveries for the period of February 10, 2022 to April 6, 2022.

22. Following the hearing, as customary in Bexar County, Texas District Court, Judge Norma Gonzales issued her "Judge's Notes" to memorialize her orders from the November 5, 2025 hearing. *See* Exhibit 4, File-Stamped November 5, 2025 Judge's Notes from Judge Norma

1  Gonzales.

2  23. Related to Plaintiff's Request for Production No. 70, the Judge's Notes indicate:

> (70) Flags: " [redacted]
> granted

See Exhibit 4 at 003.

24. On November 12, 2025, Ms. Angotti (Counsel for Uber in the *Smith* matter) e-mailed the Plaintiff's team related to the Parties' discussion on extending the Docket Control Order in the *Smith* matter. *See* Exhibit 5, Email Chain at 004-005. Ms. Angotti inquired about any "specific or discrete discovery" that was outstanding. *Id.*

25. In response to Ms. Angotti's Email, On November 13, 2025 Uber's Counsel was informed that Uber still had not produced documents that had been compelled by the Court in the November 5, 2025, including no production related to the Court compelling VFB information. *See* Exhibit 5 at 004. During this response, I informed Ms. Angotti that a substantial misrepresentation was made on the record during the Nov. 5, 2025 hearing, "based on documents related to Aldana's UUID." *Id.* Ms. Angotti was also informed that the November 5, 2025 Order granting RFP 70, "allows me to trigger procedures int eh MDL Protective Order to seek production." *Id.* at 4.

26. On November 18, 2025, Ms. Angotti responded only to Bret Stanley and informed me that she had spent "several days" looking for information related to [redacted] designations on the Uber Eats User Account at issue. *Id.* at 3. Additionally, Ms. Angotti asked the following:

> 2. Please identify the Aldana UUID documents mentioned in your November 13 email below by bates number that you allege demonstrate that that the statements I made are "absolutely untrue based on documents related to Aldana's UUID" as I am unable to locate any documents supporting your very serious accusations, that you put in writing to all parties in this case, that I knowingly made a false statement to the Court.

See Exhibit 5 at 003.

27. In response to Ms. Angotti's request, on November 18, 2025, I asked Ms. Angotti, "Do you have permission from your client for me to share the bates the bates label with this document that is from MDL 3084?" *See* Exhibit 5 at 002.

28. Cognizant with MDL 3084's prior Court Order, I did not desire to share any information from any MDL 3084 document with any counsel outside of MDL 3084, even after a request had been made by Uber's Defense Counsel in *Smith*. Based on Ms. Angotti's request, I pointed out that several attorneys from her firm (Bowman and Brooke) have made appearances in MDL 3084 and suggested these attorneys search for the document, assuming these attorneys had access. *See* Exhibit 5 at 002. I informed Ms. Angotti that, "I have not shared or used the document with anyone in this matter, but Judge Gonzales has ordered Uber to produce documents that indicate ▮▮▮ ▮▮▮ Triggers in connection with RFP 70." *Id.* at 002-003.

29. Additionally, I informed Ms. Angotti of the following:

> Given with how Uber has directly attacked me in multiple jurisdictions, I need to know that I have permission to share the bates label with you. I don't want to get in a position that Uber comes after me again for this. However, I'm in a position where I will need to move forward soon if we can't work it out.

*Id.* at 003.

30. Thereafter, during a telephone conversation with Ms. Angotti, Ms. Angotti informed me that she had reached out to MDL 3084's Counsel for Uber at Shook, Hardy, Bacon ("SHB") about her inquiry into VFB designations captured by Uber related to Joshua Aldana's Uber Eats Delivery account. Presumably, the attorneys that Ms. Angotti approached about these documents were Ms. Gromada, Mr. Shortnacy, and Ms. Priest-Jones.

31. Almost a week passed without any response from Ms. Angotti, which prompted me to follow up with the following to Ms. Angotti:

> From: Bret Stanley <BStanley@johnsonlawgroup.com>
> Sent: Monday, November 24, 2025 5:34 PM
> To: Angela Angotti <Angela.Angotti@bowmanandbrooke.com>
> Subject: Re: Smith - Motion to Extend Docket Control Order
>
> Has SHB responded to your email about ▮▮▮▮▮ information that was ordered?
>
> Thanks.

*See* Exhibit 5 at 002.

32. Ms. Angotti responded on November 25, 2025 that she was, "[t]rying to get this figured out as quickly as I can for us." *Id.* Ms. Angotti once again asked the following:

*See* Exhibit 5 at 002.

33. In response to Ms. Angotti once again requesting information from the document at issue, I sought express permission from Ms. Angotti's client that authorizing consent to me to provide the bates-label:



*See* Exhibit 5 at 001.

34. On November 25, 2025, Ms. Angotti responded, informing me that bates labels are not confidential and that I could provide the information requested by Ms. Angotti at the request of Uber:

1    *See* Exhibit 5 at 001.

2    35. Based on Uber's express authority to provide Ms. Angotti the information and based on Ms. Angotti's statement that the bates label was not confidential, I supplied the information to Ms. Angotti:



*See* Exhibit 5 at 001.

36. The email chain attached as Exhibit 5 is the totality of information shared with Opposing Counsel in the *Smith* matter related to any VFB information. This discussion occurred only with Angela Angotti, who is retained by Uber in the *Smith* matter. Neither the Court nor any other attorney in the *Smith* matter was party to these discussions.

37. At no point was any confidential information shared with the Court or with Ms. Angotti about ▓▓▓▓▓▓ designations associated to the Uber Eats Delivery account at issue in *Smith*. Additionally, extreme caution was taken in providing any information to Uber's Counsel during conferral on producing documents that were compelled by Judge Gonzales on November 5, 2025. The bates-label for this document was only provided to Ms. Angotti after express authority from Uber was granted to share this information.

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, titled "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"

38. I have reviewed the Declaration of Greg Brown associated with ▓▓▓▓▓▓▓▓▓▓▓▓▓, titled "▓▓▓▓▓▓▓▓▓▓▓▓▓▓t" *See* ECF 4604-5.

39. Mr. Brown describes the VFB Analysis as a "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1 ███████████.″ See ECF 4604-5 at ¶4. Mr. Brown states that the VFB Analysis and audit is used
2 to identify "potential fraud and unauthorized conduct on the Uber Eats platform. *Id.* Mr. Brown
3 states the VFB Analysis and audit is used for "improving the safety of the Uber Eats platform…by
4 ████████████████████████████████. Mr. Brown's Declaration states that the VFB
5 Analysis and Audit is used to ██████████████████████ *See* ECF 4604-
6 5 at ¶5.

7     40. Mr. Brown's Declaration confirms that the VFB Analysis included the UUID of Joshua
8 Aldana, the Uber Eats Accountholder and Defendant in the *Smith* matter. *See* ECF 4604-5 at ¶6.

9     41. Mr. Brown's Declaration states that the VFB Analysis does not indicate that Mr. Aldana
10 was "████████." *See* ECF 4604-5 at ¶6.

11     42. ████████████████████████████████████████████
12 ████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████
14 ████████ Mr. Brown's Declaration claims that Uber has "no record of any ███████ for Mr.
15 Aldana. *See* ECF 4604-5 at ¶6. ████████████████████████████████
16 ████████████████████████████████████████████████████
17 ████████████████████████████████████████. Additionally, "████
18 ████████████████████████████████████████████████████
19 ████████.

20     - Stanley's October 16, 2025 Challenge of Confidentiality and/or Request for Use of
21 ████████████████████, titled "████████████████████████████
22 ████████."

23     43. As referenced in Uber's Motion for Sanctions, I sought through conferral with Uber's
24 Counsel to lift the confidentiality of designation of ████████████████████ *See* Exhibit
25 6, Email Chain. Uber attended the conferral with three attorneys, including Ms. Gromada, Ms.
26 Priest Johnson, and Ms. Kirk. During the conferral, I identified the reasons
27 ████████████████ did not qualify as a confidential document per Paragraph 2.3 of
28 Pretrial Order 4 (ECF 176.) *See* Exhibit 6 at 004-005.

    44. During the conferral, Ms. Gromada and Ms. Priest Smith claimed that the document listed

1  "analysis of information across global markets" and claimed that the document exposes Uber's
2  Methodology. *See* Exhibit 6 at 002-003, Gromada's Response.

3      45. In response to these arguments, I informed Ms. Gromada and the rest of the attorneys
4  involved that the document contains no business information related to Uber's financial projections,
5  or information related to research, design, development, financial, business, or commercial
6  information. *See* Exhibit 6 at 001-002. Additionally, I informed the Uber team that while
7  "methodology" is not amongst the items protected by PTO 176, but even if it were, the
8  "methodology" described in ▓▓▓▓▓▓▓▓▓▓▓▓ merely lists the definition for ▓▓
9  ▓▓▓▓ and identifies the parameters that were used to pull the data on the Drivers who had
10 violated Uber's ▓▓▓▓▓▓ designation. *See* Exhibit 6 at 001-002.

11     46. Additionally, during the conferral I asked if Uber would consider allowing use of the
12 document with redactions that may allow for the confidentiality designation to be removed. *See*
13 Exhibit 6 at 002. However, Uber denied this request. *Id.*

14     47. In response to my email, Ms. Gromada responded and claimed that Uber and their counsel
15 considered the Challenge to Confidentiality of ▓▓▓▓▓▓▓▓▓▓▓▓ a "frivolous"
16 challenge. *See* Exhibit 6 at 001.

17     48. Ms. Gromada's indication that Uber and Counsel considered the Challenge to
18 Confidentiality as "frivolous" was a thinly veiled threat that Uber would seek additional sanctions
19 against Bret Stanley under Section 6.4 of MDL 3084's Protective Order which states:

> 6.4    **Frivolous challenges.** Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties), may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

26 *See* ECF 176 at 6.4.

27     49. Desiring not to be embroiled in any additional sanctions motions by Uber, I informed Uber
28 that I would remove my Challenge to the Confidential nature of ▓▓▓▓▓▓▓▓▓▓▓▓

- <u>Uber's actions in MDL 3084 and in other venues are attempts to restrict Bret Stanley's practice of law and are meant for intimidation.</u>

50. Uber is using a barrage of legal tactics to seek to prevent Bret Stanley from the practice of law and to intimidate. As shown in Uber's Motion for Sanctions, Uber is attempting to disqualify Bret Stanley from the Plaintiff Steering Committee, prevent Bret Stanley from representing individuals in MDL 3084, and prevent Bret Stanley from representing individuals harmed using the Uber platform in collateral matters.

51. This Court is well aware of the filings made against me directly in MDL 3084.

52. In Response to Uber's First Motion for Sanctions Against Bret Stanley, I provided additional details relating to Uber's obstructive practices in multiple jurisdictions where I represent individuals in claims against Uber. *See* Declaration of Bret Stanley Supporting Bret Stanley's Response to Uber's Motion to Enforce, ECF 4421-1, ¶¶ 72-81. Additionally, as stated in Bret Stanley's prior Declaration, Uber filed a Motion to Prohibit the Participation of Counsel Bret Stanley in *Scyoc vs Uber Technologies, Inc.*, 3:25-cv-01012, Middle District of Tennessee. *See Id.,* ECF 4421-1, ¶¶ 77-81. This prior motion was denied by the Middle District of Tennessee. *See Id.,* ECF 4421-1, ¶80.

53. Recently in the *Scyoc* Matter, Uber has renewed their Motion to Prohibit the Participation of Counsel Bret Stanley and is once again seeking to prevent me from practicing law in claims where individuals are injured on the Uber Platform. *See* Exhibit 6, 12/15/2025 Motion to Prohibit Participation of Counsel Bret Stanley, ECF 40, *Scyoc vs Uber Technologies, Inc.*, 3:25-cv-01012.

54. Uber's concerted efforts across multiple jurisdictions to attack my credibility and seek to prevent my representation of clients in claims involving Uber as a Defendant is nothing short of bad faith, harassing, and an attempt to intimidate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 22nd day of December, 2025 in Houston, Texas.

_____
Bret Stanley