# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **SHAWNA SCYOC,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:25-cv-01012** |
| **UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC,** | |
| **Defendants.** | |

## DEFENDANTS' MOTION TO PROHIBIT PARTICIPATION OF COUNSEL BRET STANLEY

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"), move this Court to prohibit Counsel Bret Stanley from participating in this action. In a recent multi-district litigation involving Uber—which includes substantially overlapping issues and discovery—a federal court found that Mr. Stanley violated a protective order by creating a derivative spreadsheet from Uber's confidential documents and disseminating it outside the bounds of that MDL. Because this case will require production of Uber's confidential information under a protective order entered by this Court, Mr. Stanley's continued participation presents an unacceptable risk that he will again disregard court-ordered confidentiality restrictions, undermine the efficacy of this Court's protective orders, and engage in conduct that prejudices Uber. Disqualification is necessary to protect the integrity of the Court's processes and to ensure compliance with this Court's confidentiality regime before any further discovery proceeds.

## BACKGROUND

Before discovery commenced in *In re Uber Technologies Inc., Passenger Sexual Assault*

*Litigation* (MDL No. 3084) in the Northern District of California, the parties entered a Stipulated Protective Order governing the use, handling, and dissemination of Uber's confidential information, including internal safety policies, incident data, analytics, and related materials produced in discovery. *See generally* Stipulated Protective Order (ECF 176), attached as **Ex. 1**. The order restricted use of protected information to the MDL and prohibited dissemination to persons outside the MDL without court authorization. *See, e.g.*, *id.* at 12.

During that MDL, Mr. Stanley created a spreadsheet that reproduced and synthesized information drawn from documents designated "Confidential" under the protective order. *See* MDL Court's August 18, 2025 Order on Defendants' Motion to Enforce Protective Order (ECF 3708) at 2, attached as **Ex. 2**. He then disseminated that spreadsheet to attorneys handling other cases against Uber outside the MDL, including in Texas and New Jersey. *See* Defendants' Uber Technologies Inc., Rasier, LLC, and Rasier-CA, LLC's Motion to Enforce Protective Order (ECF 3512) at 5, attached as **Ex. 3**. Upon Uber's motion, the MDL court found that Mr. Stanley's conduct violated the protective order. Ex. 2 at 2. The court emphasized that the purpose of the protective order—like any protective order—was to give Uber confidence that confidential information would not be released or used for purposes other than advancing the MDL. *See* Transcript of Remote Proceedings before MDL Court (August 12, 2025) at 3:21-4:20, attached as **Ex. 4**. The MDL court's findings and rationale underscore the seriousness of the violation and the court's concern with preserving the integrity of discovery.

This case raises nearly identical issues and will involve the same categories of Uber confidential information that were subject to the MDL protective order—e.g., internal safety policies and processes, incident-related data and analytics, and other sensitive materials—and which will be governed by a protective order entered in this case. Mr. Stanley's prior violation,

coupled with his demonstrated willingness to disseminate restricted materials, creates a substantial risk that he will violate this Court's protective order during discovery in this action.

## LEGAL STANDARD

Federal courts possess inherent authority to supervise the conduct of attorneys appearing before them and to impose disqualification when necessary to protect the integrity of the proceedings. *See Bartech Indus., Inc. v. Int'l Baking Co.*, 910 F. Supp. 388, 392 (E.D. Tenn. 1996); *Kitchen v. Aristech Chemical*, 769 F. Supp. 254, 256 (S.D. Ohio 1991). This Court's Local Rules adopt and enforce the state Rules of Professional Conduct governing attorney conduct in this District. *See Tennessee Bonding Co. v. Tennessee Ass'n of Pro. Bail Agents*, No. 3:24-cv-01325, 2025 WL 1921655, at *2 (M.D. Tenn. July 11, 2025). In exercising its discretion on a motion to disqualify, courts balance the public's interest in the integrity of the judicial process and the risk of violating confidentiality against a client's interest in choosing his counsel. *See Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *Bartech Indus. Inc.*, 910 F.Supp. at 392.

## ARGUMENT

Although disqualification is an extreme remedy, it is warranted where, as here, counsel's conduct creates an exceptional appearance of impropriety that undermines confidence in the proceedings, or otherwise threatens to confer an unfair advantage through misuse of privileged or confidential information. *See, e.g.*, *Richards v. Jain*, 168 F.Supp.2d 1195, 1198-1204 (W.D. Wash. 2001) (granting motion to disqualify law firm for improperly reviewing and retaining privileged documents); *Maldonado v. New Jersey*, 225 F.R.D. 120, 136-143 (D.N.J. 2004) (similarly disqualifying counsel for improper use of privileged materials).

3

In *US Dominion, Inc. v. Byrne*, 2024 WL 3792654 (D.D.C. Aug. 13, 2024), for example, the parties executed a protective order before disclosing information and documents in discovery. *Id.* at *1. After the court ordered the protective order and during the discovery process, the plaintiffs flagged that defense counsel had been disseminating discovery material in violation of the protective order. *Id.* The court agreed and immediately disqualified counsel from serving in that case. *Id.* The court emphasized that counsel's violation of the protective order "raise[d] the serious concern that she became involved in th[e] litigation for the sheer purpose of gaining access to and publicly sharing [the plaintiff's] protected discovery" and because counsel's "truly egregious misconduct has already and will undoubtedly continue to infect future proceedings …, disqualification [was] warranted." *Id.* at *2 (cleaned up).

Here, the MDL court found that Mr. Stanley violated the MDL protective order by creating a spreadsheet derived from Uber's confidential documents and disseminating it to attorneys outside the MDL. Ex. 2 at 2. The court emphasized that the protective order existed to ensure that Uber's confidential information would not be released or used for purposes other than advancing the MDL, and that Mr. Stanley's conduct breached that assurance. Ex. 4 at 3:21-4:20. This was not a technical misstep. It was the creation and external distribution of a compilation of Uber's confidential documents, designed to be useful in other litigations against Uber; precisely what the protective order forbade. These findings are directly relevant to the ethical and procedural concerns before this Court. Uber cannot have confidence that its confidential information will remain protected in this case—or that Mr. Stanley won't utilize confidential information he obtained in the MDL to advance this case. It is well within this Court's discretion to disqualify Mr. Stanley's participation.

Disqualification is also warranted because lesser remedies would be ineffective. Additional admonitions or monetary sanctions will not (1) ensure compliance with this Court's protective order given Mr. Stanley's past noncompliance, (2) erase the spreadsheet of Uber's confidential documents that exist outside the courts' protective regimes, nor (3) neutralize the knowledge Mr. Stanley already possesses. A screen is similarly not a credible solution where Mr. Stanley serves as lead counsel; even if instituted, it cannot prevent future mishandling or dissemination of confidential materials. Nor would curative instructions address the systemic harm: protective orders function because courts and parties can rely on compliance. Allowing a known violator to remain in a substantially overlapping case would undermine that reliance interest, chill candid discovery, and erode the Court's ability to manage sensitive materials.

## CONCLUSION

Given the MDL court's finding that Mr. Stanley violated a protective order by creating and disseminating Uber's confidential information and given the substantial overlap between the MDL materials and the discovery at issue here, disqualification is necessary to prevent likely violations of this Court's protective order and to preserve the integrity of these proceedings.

Uber respectfully requests that the Court grant this motion and prohibit Mr. Stanley from further participation in this matter.

In the alternative, Uber requests this Court prohibit any direct or indirect use in this case of Uber confidential information obtained through the MDL.

5

DATED:  December 15, 2025

**PERKINS COIE LLP**

By: */s/ Katherine E. May*
    Katherine E. May (AZ #032335)*
    KMay@perkinscoie.com
    Barry G. Stratford (AZ #029923)*
    BStratford@perkinscoie.com
    Karl J. Worsham (AZ #035713)*
    KWorsham@perkinscoie.com
    Jordan M. Buckwald (AZ #036610)*
    JBuckwald@perkinscoie.com
    2525 E. Camelback Road, Suite 500
    Phoenix, Arizona 85016
    Telephone: (602) 351-8000
    Facsimile: (602) 648-7000

    *Admitted pro hac vice*

**BUTLER SNOW LLP**

By: */s/ Y. Larry Cheng*
    Y. Larry Cheng (BPR #036707)
    Larry.Cheng@butlersnow.com
    1320 Adams Street, Suite 1400
    Nashville, Tennessee 37208
    Telephone: (615) 651-6700
    Facsimile: (615) 651-6701

    *Attorneys for Defendants Uber Technologies,*
    *Inc., Rasier, LLC, and Rasier-CA, LLC*

## CERTIFICATE OF CONFERRAL

Counsel for the Defendants has conferred with Plaintiff's counsel. Plaintiff's counsel opposes the relief requested in this motion.

*/s/ Y. Larry Cheng*
Y. Larry Cheng

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2025, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Russell W. Lewis, IV
Johnson Law Group
1019 16th Avenue South
Nashville, Tennessee 37212
Rlewis@johnsonlawgroup.com

Bret Stanley
Johnson Law Group
2925 Richmond Ave., Suite 1700
Houston, Texas 77098
Bstanley@johnsonlawgroup.com

*/s/ Y. Larry Cheng*
Y. Larry Cheng

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | MDL No. 3084 CRB |
| _____/ | **PROTECTIVE ORDER** |
| This Order Relates To: | |
| ALL ACTIONS | |

Pursuant to Pretrial Order No. 4, the parties filed a Stipulated Protective Order and a letter brief outlining certain outstanding disputes on December 21, 2023. Dkt. No. 170. This Protective Order adopts those provisions on which the parties agreed and resolves the disputes identified in the parties' letter brief.

1.   <u>PURPOSES AND LIMITATIONS</u>

Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.5, below, that this Stipulated

1   Protective Order does not entitle them to file CONFIDENTIAL or HIGHLY

2   CONFIDENTIAL ATTORNEYS' EYES ONLY Information under seal; Civil Local Rule

3   79-5 sets forth the procedures that must be followed and the standards that will be applied

4   when a Party seeks permission from the court to file material under seal.

5   2.    DEFINITIONS

6       2.1    Action: MDL No. 3084 and all related cases that have been or later are filed

7   in, transferred to, or removed to MDL No. 3084.

8       2.2    Challenging Party: A Party or Non-Party that challenges the designation of

9   information or items under this Order.

10       2.3    "CONFIDENTIAL" Information or Items: Any Discovery Material that the

11   Producing Party believes in good faith contains financial or business plans or projections;

12   proprietary business information, or other confidential research, design, development,

13   financial, business or commercial information; information regarding or relating to a

14   Party's insurance program; personnel information; personal information about any Party to

15   this lawsuit or employees (current or former) or board members (current or former) of any

16   Party to this lawsuit; the personal information and any identifying information of any Non-

17   Party; non-public incident reports; executive committee selection; and any information

18   regarding any Party or Non-Party not otherwise available to the public that is protected

19   from disclosure by law, regulation, or contract.

20       2.4    Counsel (without qualifier): Outside Counsel of Record and House Counsel

21   (as well as their support staff).

22       2.5    Designating Party: A Party or Non-Party that designates information or items

23   that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or

24   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

25       2.6    Disclosure or Discovery Material: All items or information, regardless of the

26   medium or manner in which it is generated, stored, or maintained (including, among other

27   things, Testimony, transcripts, and tangible things), that are produced or generated in

28   disclosures or responses to discovery in this matter.

2.7     Expert: A person with specialized knowledge or experience in a matter pertinent to the litigation, along with his or her employees and support personnel, who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this Action.

2.8     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items: Extremely sensitive "CONFIDENTIAL" Information or Items as defined in Section 2.3 that the Designating Party reasonably believes to be economically or competitively sensitive and warrants the extra layer of protection described below. By way of example, and not limitation, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information includes non-public information reflecting: transactional sales data; technical, sales, product and design research or analysis; research or analysis pertaining to drivers who use Uber's platform; sales information related to specific customers or classes of customers; financial, marketing, or strategic business planning information; trade secrets; pricing information; information related to government or regulatory investigations; information relating to research, development, testing of, or plans for existing or proposed future products; information representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs; and communications that constitute, incorporate, summarize, or reference any "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information. In designating Discovery Material as Highly Confidential Information, the Producing or Designating Party shall do so in good faith consistent with the provisions of this Protective Order and rulings of the Court. Nothing herein shall be construed to allow for global designations of all documents as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.9     In-House Counsel: Attorneys who are employees of a party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

3

2.10   Non-Party: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

2.11   Outside Counsel of Record: Attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.12   Party: Any party to this Action, including all of its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staff).

2.13   Privileged Material: Disclosure or Discovery Material subject to a claim of attorney-client privilege, work-product protection, or any other legally recognized privilege or immunity from production.

2.14   Producing Party: A Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.15   Professional Vendors: Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16   Protected Material: Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

2.17   Receiving Party: A Party that receives Disclosure or Discovery Material from a Producing Party.

2.18   Testimony: All depositions, declarations, or other testimony taken, provided or used in this Action.

3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected

United States District Court
Northern District of California

1  Material; and (3) any Testimony, conversations, or presentations by Parties or their

2  Counsel that might reveal Protected Material. However, the protections conferred by this

3  Stipulation and Order do not cover the following information: (a) any information that is in

4  the public domain at the time of disclosure to a Receiving Party or becomes part of the

5  public domain after its disclosure to a Receiving Party as a result of publication not

6  involving a violation of this Order, including becoming part of the public record through

7  trial or otherwise; and (b) any information known to the Receiving Party prior to the

8  disclosure or obtained by the Receiving Party after the disclosure from a source who

9  obtained the information lawfully and under no obligation of confidentiality to the

10 Designating Party. Any use of Protected Material at trial shall be governed by a separate

11 agreement or order. Nothing in this Protective Order shall modify or abrogate the rights or

12 responsibilities of the Parties under HIPAA or any other existing data privacy statute.

13       This Stipulation and Protective Order is without prejudice to the right of any Party

14 to object to disclosing or producing any information or item. Similarly, no Party waives

15 any right to object on any ground to use in evidence any of the material covered by the

16 Stipulation and Protective Order. This stipulation and Protective Order is without prejudice

17 to the right of any Party to seek further or additional protection of any materials or to

18 modify this Stipulation and Protective Order in any way, including, without limitation, an

19 Order that certain materials not be produced at all. This stipulation and Protective Order

20 does not alter, waiver, modify, or abridge any right, privilege or protection otherwise

21 available to any Party with respect to the discovery of matters, including, but not limited

22 to, any Party's right to assert the attorney-client privilege, the attorney work product

23 doctrine, or other privileges, or any Party's right to contest any such assertion.

24       In the event that additional parties join or are joined in this Action, they shall not

25 have access to the materials designated as "CONFIDENTIAL" or "HIGHLY

26 CONFIDENTIAL – ATTORNEYS' EYES-ONLY" pursuant to this Stipulation and

27 Protective Order unless and until the additional parties have executed and, at the request of

28 any Party, filed with the Court, their agreement to be bound by this Stipulation and

Protective Order in the form of their signing the Acknowledgment and Agreement to Be Bound (Exhibit A).[1]

Nothing in this Stipulation and Protective Order shall be construed to preclude any Party from asserting in good faith that certain Protected Materials require additional protection, such as protection of one Party's sensitive personal information from being disclosed to other Parties. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

4.   DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, re-hearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.   DESIGNATING PROTECTED MATERIAL

5.1   Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to material that qualifies under the appropriate standards. The Designating Party must designate for protection only those materials, documents, items, or oral or written communications that qualify—so that other materials, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order. If only a limited and clearly delineated part of

---

[1] If additional non-natural persons are later added as parties to this action and this Protective Order is insufficient to address a party's needs for protection, the party may seek a modification of this Protective Order at that time.

the materials, documents, items, or oral or written communications qualify for protection, The Designating Party shall, to the extent practicable, make all reasonable efforts to designate for protection only those parts that qualify.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions, just as disclosure of Protected Material in violation of this order would do. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2 <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

(a) For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has

indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES-ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES-ONLY" legend to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b)     For Testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party designates within thirty (30) days after receipt of a final transcript, all protected Testimony and specify the level of protection being asserted by giving written notice to the court reporter and all Parties. A Designating Party may specify at the deposition, hearing, or other proceeding, or up to 30 days after receipt of the transcript, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be marked as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" by the court reporter. All rough or final Testimony transcripts shall be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" until thirty (30) days after receipt of the final transcript. After that period ends, only Testimony that has been properly designated for protection consistent with the provisions of this Section 5.2(b) shall be covered by the provisions of this Order. Should a pending motion or procedural requirement necessitate an earlier date, the parties shall meet and confer as to a reasonable

date for provision of the confidentiality designation notice.

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. For paper copies of transcribed deposition Testimony, pages of transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order. The Designating Party shall inform the court reporter of these requirements. Any failure of or refusal by the court reporter to comply with these procedures will not invalidate the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" designation.

(c)    For information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s). When possible, in order to minimize the likelihood of inadvertent disclosure of information protected by this Order transmitted by electronic means, the Producing Party shall make a good faith effort to place the appropriate confidentiality designation in the subject of the electronic mail conveying the Protected Material and on the title of the digital document or media through which it is conveyed, or otherwise notify the Receiving Party of the fact that Protected Material is being conveyed. A failure to place the appropriate confidentiality designation in the subject of the electronic mail conveying the information and on the title of the digital document or media through which it is conveyed, or to otherwise notify the Receiving Party of the fact that information protected by this Order is being conveyed, does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. However, a Designating Party cannot seek sanctions against the

Receiving Party if the Receiving Party fails to treat the produced information as "CONFIDENTIAL" until such time as the Designating Party corrects any error or omission as the confidential nature of said information or electronic mail in writing to the Receiving Party, unless the Receiving Party is otherwise on notice that the information is "CONFIDENTIAL" through, for example, a confidentiality stamp on the document.

5.3 <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If any Producing Party inadvertently produces or disclosed Protected Material without marking it with an appropriate designation, the Producing Party or a Designating Party shall promptly notify the Receiving Party that the Protected Material should be treated in accordance with the terms of the Stipulated Protective Order, and shall forward appropriately stamped copies of the items in question. Within five (5) days of the receipt of the appropriately stamped copies of the items in question, the Receiving Party shall return or destroy the previously unmarked versions of the items and all copies thereof, and, additionally, must make all other reasonable efforts to assure that the material is treated in accordance with the provisions of this Order. The inadvertent disclosure shall not be deemed a waiver of confidentiality.

If any information was disclosed by a non-Designating Party to any person other than in the manner authorized by this Stipulation and Protective Order prior to notice of the inadvertent failure to designate, the non-Designating Party responsible for the disclosure shall bring all pertinent facts relating to such disclosure of such Protected Materials, to the extent such facts are known or reasonably knowable to the non-Designating Party, to the immediate attention of the Designating Party.

6. <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

6.1 <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party

United States District Court
Northern District of California

does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2     Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Parties may agree to seek informal conference with the Court. If the Parties still cannot resolve the challenge or do not have such a conference, the Designating Party must file and serve a motion to retain or challenge confidentiality within 14 days of conferring on the challenged designation or an informal conference with the court, whichever is later. Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Unless prompt intervention to resolve a dispute over a confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to seek an informal conference with the Court promptly after the Parties have completed the procedure set forth above. The procedures set out in this provision shall be procedural

only, and shall not affect the burden on challenging or maintaining a designation as established under applicable law.

6.4    <u>Frivolous challenges</u>. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties), may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.    <u>ACCESS TO AND USE OF PROTECTED MATERIAL</u>

7.1    <u>Basic Principles</u>. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this Action or the consolidated action captioned <u>In re Uber Rideshare Cases</u>, Case No. CJC-21-005188, so long as such use is permitted herein. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 13 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)    The officers, directors, and employees, including current and former employees, as well as In-House Counsel, of the Receiving Party to whom disclosure is

12

reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts (as defined in this Order) or insurers of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     The court and its personnel, and any appellate court in this litigation;

(e)     Court reporters, stenographers, or videographers and their staff and Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(f)     Professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)     During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

(h)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information, or any current employee of the Designating Party.

(i)     Special masters or discovery referees appointed by the Court.

(j)     Mediators or settlement officers, and their supporting personnel, mutually agreed upon by the Parties engaged in settlement discussion.

(k)     Any other person as to whom the Designating Party has consented to disclosure in advance.

7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items. Unless otherwise ordered by the court or permitted in

writing by the Designating Party, a Receiving Party may disclose any information or item designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" to:

(a)     The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b)     Designated In-House Counsel of the Receiving Party who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts of the Receiving Party who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     The Court and its personnel, and any appellate court in this litigation.

(e)     Court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to be Bound." (Exhibit A);

(f)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(g)     Special masters, mediators, or other third parties retained by the parties for settlement purposes or resolution of discovery disputes or mediation;

(h)     During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

8.     <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that

compels disclosure of any information or items designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY," that Party must:

(a)     Promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)     Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c)     Cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material– and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9.     A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)     The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)     In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Protected Material in its possession, and the Party is subject to an agreement

United States District Court
Northern District of California

with the Non-Party not to produce the Non-Party's Protected Material, then the Party shall:

(1)    Promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)    Promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)    Make the information requested available for inspection by the Non-Party.

(c)    If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's Protected Material responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.    <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use reasonable efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11.    <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

11.1.  Pursuant to Federal Rule of Evidence 502(d), if a Producing Party inadvertently discloses information (including both paper documents and electronically

stored information) subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, such disclosure shall not constitute a waiver or forfeiture of any privilege or other protection in this or any other action, provided that the Producing Party notifies the Receiving Party of the inadvertent production, in writing, within a reasonable amount of time of the discovery of the inadvertent production; however, if the discovery is made after the final Pretrial Conference is held, the Producing Party may seek protection for the privileges and doctrines contained in the paragraph for produced information only by further order of the Court.

11.2    When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

11.3    This stipulated Order set forth in this section and its subparts does not constitute a concession by any Party that any documents are subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege. This agreement also is not intended to waive or limit in any way any Party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

12.    MISCELLANEOUS

12.1    <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2    <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    <u>Right to Additional Protection</u>. Nothing in this Order shall be construed to preclude either Party from asserting in good faith that certain Protected Material requires

17

additional protection. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

12.4    This Order shall be binding upon the Parties to this action, upon their attorneys, and upon the Parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, and other persons or organizations over which they have control. The Parties, their attorneys and employees of such attorneys, and their expert witnesses, consultants and representatives retained in connection with this Action each expressly stipulates to the personal jurisdiction of this Court for the purpose of any proceeding brought by a Party to this Action to enforce this Stipulation and Protective Order.

12.5    <u>Filing Protected Material</u>. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action, or any other action, any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving Party may file the information in the public record pursuant to Civil Local Rule 79-5 unless otherwise instructed by the court. While a motion to seal is pending before the Court, no Party shall make use in open court, in public, or in any way inconsistent with the protection in this order of any Disclosure or Discovery Material that is subject to that motion to seal without the consent of the Designating Party or the permission of the Court.

13.     <u>FINAL DISPOSITION</u>

Within 90 days after the final disposition of this Action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all reasonably accessible copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, Expert reports and work product, attorney work product, and consultant work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute as Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

Dated: December 28, 2023

_____

CHARLES R. BREYER
United States District Judge

# EXHIBIT 2

EXHIBIT

1

1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

10

11

12

13

14

15

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB<br><br>**[PROPOSED] ORDER ON DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S MOTION TO ENFORCE PROTECTIVE ORDER** |
| This Document Relates to:<br><br>ALL ACTIONS | |

16

17

18

19

20

21

22

23

24

25

26

27

28

This cause coming before the Court on Defendants Uber Technologies, Inc., Rasier, LLC and Raiser-CA, LLC's Motion to Enforce Protective Order, due notice given and the Court being fully advised, THE COURT HEREBY FINDS:

(a)     The information on the 587 rows of the spreadsheet sent by Bret Stanley to Defendants' counsel on October 9, 2024, which identifies Defendants' internal policy related resources and the repository where each resource is maintained and which are accompanied by MDL Bates numbers (identifiable as the first 587 rows on the version of the spreadsheet attached as Exhibit 3 to the Declaration of Veronica Gromada [ECF 3512-1]) ("Confidential Information"), is covered by the Protective Order, which requires the Confidential Information be used "only for prosecuting, defending, or attempting to settle this Action or the [related JCCP] consolidated action" [ECF 176, ¶ 7.1];

(b)     Based on the record presented, Mr. Stanley has violated the Protective Order [ECF 176], by using and disclosing the Confidential Information outside of the MDL Litigation.

Accordingly, IT IS HEREBY ORDERED:

(c)     Within three days of the date of this Order, Mr. Stanley shall identify to Defendants' counsel all persons outside of the MDL Litigation to whom Mr. Stanley has disclosed any information covered by the Protective Order, including without limitation, the Confidential Information, and Mr. Stanley shall identify to Defendants' counsel all court proceedings in which Mr. Stanley is aware that the Confidential Information has been used or disclosed in discovery or otherwise;

(d)     Within three days of the date of this Order, Mr. Stanley shall provide a copy of this Order to all persons and courts identified pursuant to paragraph (c) of this Order with notice to Defendants' Counsel of same; and

(e)     Mr. Stanley shall take reasonable efforts to retrieve or ensure the destruction of all unauthorized Confidential Information to all persons identified pursuant to paragraph (c) of this Order.

**IT IS SO ORDERED:**

Dated: August 18, 2025

_____

HON. LISA J. CISNEROS
United States Magistrate Judge

3

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: UBER TECHNOLOGIES, INC.,
PASSENGER SEXUAL ASSAULT
LITIGATION

_____/

This Order Relates To:

ALL ACTIONS

_____

MDL No. 3084 CRB

**PROTECTIVE ORDER**

      Pursuant to Pretrial Order No. 4, the parties filed a Stipulated Protective Order and a letter brief outlining certain outstanding disputes on December 21, 2023. Dkt. No. 170. This Protective Order adopts those provisions on which the parties agreed and resolves the disputes identified in the parties' letter brief.

1.    <u>PURPOSES AND LIMITATIONS</u>

      Disclosure and discovery activity in this Action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 12.5, below, that this Stipulated

United States District Court
Northern District of California

Case 3:23-cv-01012 Document 40-2 Filed 10/25/25 Page 6 of 23 PageID #: 359

1    Protective Order does not entitle them to file CONFIDENTIAL or HIGHLY

2    CONFIDENTIAL ATTORNEYS' EYES ONLY Information under seal; Civil Local Rule

3    79-5 sets forth the procedures that must be followed and the standards that will be applied

4    when a Party seeks permission from the court to file material under seal.

5    2.    <u>DEFINITIONS</u>

6         2.1    <u>Action</u>: MDL No. 3084 and all related cases that have been or later are filed

7    in, transferred to, or removed to MDL No. 3084.

8         2.2    <u>Challenging Party</u>: A Party or Non-Party that challenges the designation of

9    information or items under this Order.

10         2.3    <u>"CONFIDENTIAL" Information or Items</u>: Any Discovery Material that the

11    Producing Party believes in good faith contains financial or business plans or projections;

12    proprietary business information, or other confidential research, design, development,

13    financial, business or commercial information; information regarding or relating to a

14    Party's insurance program; personnel information; personal information about any Party to

15    this lawsuit or employees (current or former) or board members (current or former) of any

16    Party to this lawsuit; the personal information and any identifying information of any Non-

17    Party; non-public incident reports; executive committee selection; and any information

18    regarding any Party or Non-Party not otherwise available to the public that is protected

19    from disclosure by law, regulation, or contract.

20         2.4    <u>Counsel (without qualifier)</u>: Outside Counsel of Record and House Counsel

21    (as well as their support staff).

22         2.5    <u>Designating Party</u>: A Party or Non-Party that designates information or items

23    that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or

24    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

25         2.6    <u>Disclosure or Discovery Material</u>: All items or information, regardless of the

26    medium or manner in which it is generated, stored, or maintained (including, among other

27    things, Testimony, transcripts, and tangible things), that are produced or generated in

28    disclosures or responses to discovery in this matter.

2.7     Expert: A person with specialized knowledge or experience in a matter pertinent to the litigation, along with his or her employees and support personnel, who has been retained by a Party or its Counsel to serve as an expert witness or as a consultant in this Action.

2.8     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items: Extremely sensitive "CONFIDENTIAL" Information or Items as defined in Section 2.3 that the Designating Party reasonably believes to be economically or competitively sensitive and warrants the extra layer of protection described below. By way of example, and not limitation, "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information includes non-public information reflecting: transactional sales data; technical, sales, product and design research or analysis; research or analysis pertaining to drivers who use Uber's platform; sales information related to specific customers or classes of customers; financial, marketing, or strategic business planning information; trade secrets; pricing information; information related to government or regulatory investigations; information relating to research, development, testing of, or plans for existing or proposed future products; information representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs; and communications that constitute, incorporate, summarize, or reference any "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information. In designating Discovery Material as Highly Confidential Information, the Producing or Designating Party shall do so in good faith consistent with the provisions of this Protective Order and rulings of the Court. Nothing herein shall be construed to allow for global designations of all documents as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.9     In-House Counsel: Attorneys who are employees of a party to this Action. In-House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10    Non-Party: Any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

2.11    Outside Counsel of Record: Attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.12    Party: Any party to this Action, including all of its officers, directors, employees, consultants, retained Experts, and Outside Counsel of Record (and their support staff).

2.13    Privileged Material: Disclosure or Discovery Material subject to a claim of attorney-client privilege, work-product protection, or any other legally recognized privilege or immunity from production.

2.14    Producing Party: A Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.15    Professional Vendors: Persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material: Any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY."

2.17    Receiving Party: A Party that receives Disclosure or Discovery Material from a Producing Party.

2.18    Testimony: All depositions, declarations, or other testimony taken, provided or used in this Action.

3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected

4

Material; and (3) any Testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order. Nothing in this Protective Order shall modify or abrogate the rights or responsibilities of the Parties under HIPAA or any other existing data privacy statute.

This Stipulation and Protective Order is without prejudice to the right of any Party to object to disclosing or producing any information or item. Similarly, no Party waives any right to object on any ground to use in evidence any of the material covered by the Stipulation and Protective Order. This stipulation and Protective Order is without prejudice to the right of any Party to seek further or additional protection of any materials or to modify this Stipulation and Protective Order in any way, including, without limitation, an Order that certain materials not be produced at all. This stipulation and Protective Order does not alter, waiver, modify, or abridge any right, privilege or protection otherwise available to any Party with respect to the discovery of matters, including, but not limited to, any Party's right to assert the attorney-client privilege, the attorney work product doctrine, or other privileges, or any Party's right to contest any such assertion.

In the event that additional parties join or are joined in this Action, they shall not have access to the materials designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" pursuant to this Stipulation and Protective Order unless and until the additional parties have executed and, at the request of any Party, filed with the Court, their agreement to be bound by this Stipulation and

1    Protective Order in the form of their signing the Acknowledgment and Agreement to Be
2    Bound (Exhibit A).[1]

3        Nothing in this Stipulation and Protective Order shall be construed to preclude any
4    Party from asserting in good faith that certain Protected Materials require additional
5    protection, such as protection of one Party's sensitive personal information from being
6    disclosed to other Parties. The Parties shall meet and confer to agree upon the terms of
7    such additional protection. If the parties cannot reach an agreement after meeting and
8    conferring, the Designating Party shall seek an order from the Court as to any additional
9    protections it seeks within 14 days of the parties' meet and confer.

10   4.    <u>DURATION</u>

11        Even after final disposition of this litigation, the confidentiality obligations imposed
12   by this Order shall remain in effect until a Designating Party agrees otherwise in writing or
13   a court order otherwise directs. Final disposition shall be deemed to be the later of (1)
14   dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final
15   judgment herein after the completion and exhaustion of all appeals, re-hearings, remands,
16   trials, or reviews of this Action, including the time limits for filing any motions or
17   applications for extension of time pursuant to applicable law.

18   5.    <u>DESIGNATING PROTECTED MATERIAL</u>

19        5.1    <u>Exercise of Restraint and Care in Designating Material for Protection</u>. Each
20   Party or Non-Party that designates information or items for protection under this Order
21   must take care to limit any such designation to material that qualifies under the appropriate
22   standards. The Designating Party must designate for protection only those materials,
23   documents, items, or oral or written communications that qualify—so that other materials,
24   documents, items, or communications for which protection is not warranted are not swept
25   unjustifiably within the ambit of this Order. If only a limited and clearly delineated part of
26

27   _____
28   [1] If additional non-natural persons are later added as parties to this action and this
     Protective Order is insufficient to address a party's needs for protection, the party may
     seek a modification of this Protective Order at that time.

the materials, documents, items, or oral or written communications qualify for protection, The Designating Party shall, to the extent practicable, make all reasonable efforts to designate for protection only those parts that qualify.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions, just as disclosure of Protected Material in violation of this order would do. If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2 <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced. Designation in conformity with this Order requires:

(a)    For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has

7

United States District Court
Northern District of California

indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –ATTORNEYS' EYES-ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL ATTORNEYS' EYES-ONLY" legend to every page of each document that contains Protected Material, or, in the case of an electronic document that is produced in native form or is impracticable to produce in a form with the affixed legend, by placing the legend on a placeholder document bearing the document's production number. If only a clearly delineated portion or portions of the material on a page qualifies for protection, the Producing Party, to the extent practicable, also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

(b)      For Testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party designates within thirty (30) days after receipt of a final transcript, all protected Testimony and specify the level of protection being asserted by giving written notice to the court reporter and all Parties. A Designating Party may specify at the deposition, hearing, or other proceeding, or up to 30 days after receipt of the transcript, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be marked as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" by the court reporter. All rough or final Testimony transcripts shall be treated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" until thirty (30) days after receipt of the final transcript. After that period ends, only Testimony that has been properly designated for protection consistent with the provisions of this Section 5.2(b) shall be covered by the provisions of this Order. Should a pending motion or procedural requirement necessitate an earlier date, the parties shall meet and confer as to a reasonable

United States District Court
Northern District of California

date for provision of the confidentiality designation notice.

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. For paper copies of transcribed deposition Testimony, pages of transcribed deposition Testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order. The Designating Party shall inform the court reporter of these requirements. Any failure of or refusal by the court reporter to comply with these procedures will not invalidate the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" designation.

(c)     For information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s). When possible, in order to minimize the likelihood of inadvertent disclosure of information protected by this Order transmitted by electronic means, the Producing Party shall make a good faith effort to place the appropriate confidentiality designation in the subject of the electronic mail conveying the Protected Material and on the title of the digital document or media through which it is conveyed, or otherwise notify the Receiving Party of the fact that Protected Material is being conveyed. A failure to place the appropriate confidentiality designation in the subject of the electronic mail conveying the information and on the title of the digital document or media through which it is conveyed, or to otherwise notify the Receiving Party of the fact that information protected by this Order is being conveyed, does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. However, a Designating Party cannot seek sanctions against the

United States District Court
Northern District of California

Receiving Party if the Receiving Party fails to treat the produced information as "CONFIDENTIAL" until such time as the Designating Party corrects any error or omission as the confidential nature of said information or electronic mail in writing to the Receiving Party, unless the Receiving Party is otherwise on notice that the information is "CONFIDENTIAL" through, for example, a confidentiality stamp on the document.

5.3 <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If any Producing Party inadvertently produces or disclosed Protected Material without marking it with an appropriate designation, the Producing Party or a Designating Party shall promptly notify the Receiving Party that the Protected Material should be treated in accordance with the terms of the Stipulated Protective Order, and shall forward appropriately stamped copies of the items in question. Within five (5) days of the receipt of the appropriately stamped copies of the items in question, the Receiving Party shall return or destroy the previously unmarked versions of the items and all copies thereof, and, additionally, must make all other reasonable efforts to assure that the material is treated in accordance with the provisions of this Order. The inadvertent disclosure shall not be deemed a waiver of confidentiality.

If any information was disclosed by a non-Designating Party to any person other than in the manner authorized by this Stipulation and Protective Order prior to notice of the inadvertent failure to designate, the non-Designating Party responsible for the disclosure shall bring all pertinent facts relating to such disclosure of such Protected Materials, to the extent such facts are known or reasonably knowable to the non-Designating Party, to the immediate attention of the Designating Party.

6. <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

6.1 <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party

1    does not waive its right to challenge a confidentiality designation by electing not to mount

2    a challenge promptly after the original designation is disclosed.

3        6.2    Meet and Confer. The Challenging Party shall initiate the dispute resolution

4    process by providing written notice of each designation it is challenging and describing the

5    basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the

6    written notice must recite that the challenge to confidentiality is being made in accordance

7    with this specific paragraph of the Protective Order. The parties shall attempt to resolve

8    each challenge in good faith and must begin the process by conferring directly within 14

9    days of the date of service of notice. In conferring, the Challenging Party must explain the

10   basis for its belief that the confidentiality designation was not proper and must give the

11   Designating Party an opportunity to review the designated material, to reconsider the

12   circumstances, and, if no change in designation is offered, to explain the basis for the

13   chosen designation. A Challenging Party may proceed to the next stage of the challenge

14   process only if it has engaged in this meet and confer process first or establishes that the

15   Designating Party is unwilling to participate in the meet and confer process in a timely

16   manner.

17       6.3    Judicial Intervention. If the Parties cannot resolve a challenge without court

18   intervention, the Parties may agree to seek informal conference with the Court. If the

19   Parties still cannot resolve the challenge or do not have such a conference, the Designating

20   Party must file and serve a motion to retain or challenge confidentiality within 14 days of

21   conferring on the challenged designation or an informal conference with the court,

22   whichever is later. Each such motion must be accompanied by a competent declaration

23   affirming that the movant has complied with the meet and confer requirements imposed in

24   the preceding paragraph. Unless prompt intervention to resolve a dispute over a

25   confidentiality designation is necessary to avoid foreseeable, substantial unfairness,

26   unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party

27   does not waive its right to challenge a confidentiality designation by electing not to seek an

28   informal conference with the Court promptly after the Parties have completed the

     procedure set forth above. The procedures set out in this provision shall be procedural

United States District Court
Northern District of California

1    only, and shall not affect the burden on challenging or maintaining a designation as

2    established under applicable law.

3        6.4    Frivolous challenges. Frivolous challenges, and those made for an improper

4    purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties),

5    may expose the Challenging Party to sanctions. Unless the Designating Party has waived

6    the confidentiality designation by failing to file a motion to retain confidentiality as

7    described above, all parties shall continue to afford the material in question the level of

8    protection to which it is entitled under the Producing Party's designation until the court

9    rules on the challenge.

10   7.    ACCESS TO AND USE OF PROTECTED MATERIAL

11       7.1    Basic Principles. A Receiving Party may use Protected Material that is

12   disclosed or produced by another Party or by a Non-Party in connection with this case only

13   for prosecuting, defending, or attempting to settle this Action or the consolidated action

14   captioned In re Uber Rideshare Cases, Case No. CJC-21-005188, so long as such use is

15   permitted herein. Such Protected Material may be disclosed only to the categories of

16   persons and under the conditions described in this Order. When the litigation has been

17   terminated, a Receiving Party must comply with the provisions of section 13 below

18   (FINAL DISPOSITION).

19       Protected Material must be stored and maintained by a Receiving Party at a location

20   and in a secure manner that ensures that access is limited to the persons authorized under

21   this Order.

22       7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise

23   ordered by the court or permitted in writing by the Designating Party, a Receiving Party

24   may disclose any information or item designated "CONFIDENTIAL" only to:

25       (a)    The Receiving Party's Outside Counsel of Record in this Action, as well as

26   employees of said Outside Counsel of Record to whom it is reasonably necessary to

27   disclose the information for this litigation;

28       (b)    The officers, directors, and employees, including current and former

     employees, as well as In-House Counsel, of the Receiving Party to whom disclosure is

reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts (as defined in this Order) or insurers of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     The court and its personnel, and any appellate court in this litigation;

(e)     Court reporters, stenographers, or videographers and their staff and Professional Vendors to whom disclosure is reasonably necessary for this litigation.

(f)     Professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)     During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

(h)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information, or any current employee of the Designating Party.

(i)     Special masters or discovery referees appointed by the Court.

(j)     Mediators or settlement officers, and their supporting personnel, mutually agreed upon by the Parties engaged in settlement discussion.

(k)     Any other person as to whom the Designating Party has consented to disclosure in advance.

7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" Information or Items. Unless otherwise ordered by the court or permitted in

writing by the Designating Party, a Receiving Party may disclose any information or item designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" to:

(a)     The Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation.

(b)     Designated In-House Counsel of the Receiving Party who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c)     Experts of the Receiving Party who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     The Court and its personnel, and any appellate court in this litigation.

(e)     Court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to be Bound." (Exhibit A);

(f)     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

(g)     Special masters, mediators, or other third parties retained by the parties for settlement purposes or resolution of discovery disputes or mediation;

(h)     During their depositions, potential or actual witnesses in the Action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the Court. If a potential or actual witness refuses to sign Exhibit A, the witness shall be permitted to see Protected Material, but will not be permitted to retain such material. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order.

8.     <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that

compels disclosure of any information or items designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY," that Party must:

(a) Promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) Cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its Protected Material– and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

9. **A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION**

(a) The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES-ONLY." Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b) In the event that a Party is required, by a valid discovery request, to produce a Non-Party's Protected Material in its possession, and the Party is subject to an agreement

with the Non-Party not to produce the Non-Party's Protected Material, then the Party shall:

(1) Promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2) Promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3) Make the information requested available for inspection by the Non-Party.

(c) If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's Protected Material responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use reasonable efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

11. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

11.1. Pursuant to Federal Rule of Evidence 502(d), if a Producing Party inadvertently discloses information (including both paper documents and electronically

stored information) subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, such disclosure shall not constitute a waiver or forfeiture of any privilege or other protection in this or any other action, provided that the Producing Party notifies the Receiving Party of the inadvertent production, in writing, within a reasonable amount of time of the discovery of the inadvertent production; however, if the discovery is made after the final Pretrial Conference is held, the Producing Party may seek protection for the privileges and doctrines contained in the paragraph for produced information only by further order of the Court.

11.2    When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

11.3    This stipulated Order set forth in this section and its subparts does not constitute a concession by any Party that any documents are subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege. This agreement also is not intended to waive or limit in any way any Party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

12.    MISCELLANEOUS

12.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

12.2    Right to Assert Other Objections. By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

12.3    Right to Additional Protection. Nothing in this Order shall be construed to preclude either Party from asserting in good faith that certain Protected Material requires

additional protection. The Parties shall meet and confer to agree upon the terms of such additional protection. If the parties cannot reach an agreement after meeting and conferring, the Designating Party shall seek an order from the Court as to any additional protections it seeks within 14 days of the parties' meet and confer.

12.4    This Order shall be binding upon the Parties to this action, upon their attorneys, and upon the Parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, and other persons or organizations over which they have control. The Parties, their attorneys and employees of such attorneys, and their expert witnesses, consultants and representatives retained in connection with this Action each expressly stipulates to the personal jurisdiction of this Court for the purpose of any proceeding brought by a Party to this Action to enforce this Stipulation and Protective Order.

12.5    <u>Filing Protected Material</u>. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this Action, or any other action, any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving Party may file the information in the public record pursuant to Civil Local Rule 79-5 unless otherwise instructed by the court. While a motion to seal is pending before the Court, no Party shall make use in open court, in public, or in any way inconsistent with the protection in this order of any Disclosure or Discovery Material that is subject to that motion to seal without the consent of the Designating Party or the permission of the Court.

13.   <u>FINAL DISPOSITION</u>

Within 90 days after the final disposition of this Action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all reasonably accessible copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 90 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, Expert reports and work product, attorney work product, and consultant work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute as Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

**IT IS SO ORDERED.**

Dated: December 28, 2023

_____
CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

# EXHIBIT 3

1   LAURA VARTAIN HORN (SBN: 258485)
    laura.vartain@kirkland.com
2   **KIRKLAND & ELLIS LLP**
    555 California Street, 30th Floor
3   San Francisco, CA 94104
    Telephone: (415) 439-1625
4
5   ALLISON M. BROWN (admitted Pro Hac Vice)
    allison.brown@kirkland.com
6   JESSICA DAVIDSON (admitted Pro Hac Vice)
    jessica.davidson@kirkland.com
7   **KIRKLAND & ELLIS LLP**
    601 Lexington Avenue
8   New York, NY 10022
    Telephone: (212) 446-4723
9
10  *Attorneys for Defendants*
    UBER TECHNOLOGIES, INC.,
11  RASIER, LLC, and RASIER-CA, LLC
12  *[Additional Counsel Listed on Signature Page]*

13                **UNITED STATES DISTRICT COURT**

14               **NORTHERN DISTRICT OF CALIFORNIA**

15                  **SAN FRANCISCO DIVISION**

16  | IN RE: UBER TECHNOLOGIES, INC., | Case No. 3:23-md-03084-CRB |
17  | PASSENGER SEXUAL ASSAULT | |
    | LITIGATION | **DEFENDANTS UBER TECHNOLOGIES,** |
18  | | **INC., RASIER, LLC, RASIER-CA, LLC'S** |
    | | **MOTION TO ENFORCE PROTECTIVE** |
19  | This Document Relates to: | **ORDER** |
20  | ALL ACTIONS | Judge:      Honorable Charles R. Breyer |
    | | Courtroom:  6 - 17th Floor |
21  
22  Date: August 22, 2025
    Time: 10:00 a.m.
23  Location: 17th Floor, Courtroom 6

24
25
26
27
28

1

**NOTICE OF MOTION AND MOTION TO ENFORCE PROTECTIVE ORDER**[1]

2

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that, on August 22, 2025, or as soon as the Court is available for

4 hearing following the completion of briefing, before the Honorable Charles R. Breyer in Courtroom

5 No. 6 on the 17th Floor of the San Francisco Courthouse for the above-entitled Court, located at 450

6 Golden Gate Avenue, San Francisco, CA 94102, Defendants Uber Technologies, Inc., Rasier, LLC,

7 and Rasier-CA, LLC (collectively, "Defendants") will and hereby do move the Court to enforce the

8 Protective Order entered in this action. [ECF 176] Specifically, Defendants seek entry of an Order: (a)

9 finding the Confidential Information is covered by the Protective Order, which requires the

10 Confidential Information be used "only for prosecuting, defending, or attempting to settle this Action

11 or the [related JCCP] consolidated action…" [ECF 176, ¶7.1]; (b) requiring Bret Stanley, within three

12 days of the date of the Order, to identify all persons outside of the MDL or JCCP to whom he has

13 disclosed, or with whom he has discussed, any information covered by the Protective Order, including

14 without limitation, the Confidential Information; and (c) requiring Bret Stanley, within three days of

15 the date of this Order, to provide a copy of this Order to all persons identified pursuant to paragraph

16 (b) of the Order.[2]

17

The Motion to Enforce Protective Order (the "Motion") is based on this Notice of Motion and

18 Motion; the attached Memorandum of Points and Authorities; the accompanying Declaration of

19 Veronica Hayes Gromada, dated July 18, 2025; and the pleadings and papers on file herein.

20

21

22

23

24

25

---

26 [1] This Motion is being filed and noticed for hearing before the Honorable Charles R. Breyer because he is the issuing Court who entered the Protective Order at issue in this Motion.

27 [2] Defendants reserve the right to seek appropriate sanctions for violations of the Protective Order as the facts may develop in connection with this Motion and following based on any Orders by the issuing

28 court.

DATED: July 18, 2025

**SHOOK, HARDY & BACON L.L.P.**

By: */s/ Michael B. Shortnacy*
    MICHAEL B. SHORTNACY

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN HORN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY & BACON L.L.P.**
ALYCIA A. DEGEN
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**TABLE OF CONTENTS**

I.    Introduction and Summary of Argument.................................................................1

II.   Facts ......................................................................................................................3

   A.   The Protective Order restricts the use and disclosure of Protected
        Material. ......................................................................................................3

   B.   Defendants produce policy related documents designated Confidential
        and Highly Confidential/AEO......................................................................4

   C.   Mr. Stanley compiles a list of policy related resources and their related
        homepages by reviewing Defendants' Confidential and Highly
        Confidential/AEO MDL production. ............................................................4

   D.   Mr. Stanley uses his October 2024 Spreadsheet to prosecute other cases ......................5

   E.   Defendants demand that Mr. Stanley cease violating the Protective
        Order.............................................................................................................6

   F.   Defendants recently learned that Mr. Stanley's October 2024
        Spreadsheet is being disseminated among counsel for plaintiffs in other
        litigation against Defendants........................................................................6

   G.   Mr. Stanley did not know the Confidential Information before
        Defendants produced Confidential and Highly Confidential/AEO
        documents in the MDL documents. ..............................................................7

III.  Argument ...............................................................................................................7

   A.   Mr. Stanley's use of information extracted from Protected Material to
        prosecute other cases violates the Protective Order ....................................7

   B.   Mr. Stanley's disclosure of information extracted from Protected
        Material violates the Protective Order..........................................................8

   C.   By its plain language, the Protective Order covers the policy related
        resources......................................................................................................9

i

     D.     A compilation of 587 of Defendants' policy related resources, along with the homepage on which each resource is maintained, is not "general knowledge and experience" Mr. Stanley gained by litigating the MDL ...................... 10

     E.     Attorneys cannot disregard the Protective Order to promote "efficiency ..................... 12

IV.    Conclusion ........................................................................................................................ 14

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4  *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-CV-00007 (CBA)

5      (TAM), 2024 WL 5168734 (E.D.N.Y. Dec. 19, 2024)................................................8

6  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,

7      10 F.3d 693 (9th Cir. 1993) ................................................................11

8  *Gonzales v. Charter Commc'ns, LLC,*

9      No. 2:20-CV-08299-SB-AS, 2022 WL 570003 (C.D. Cal. Jan. 26, 2022) .........................2, 7

10  *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*,

11      1999 WL 528545 (N.D. Ill. July 19, 1999)................................................12

12  *Mahboob v. Educ. Credit Mgmt. Corp.*,

13      No. 15-CV-0628-TWR-AGS, 2021 WL 818971 (S.D. Cal. Mar. 2, 2021), report

14      and recommendation adopted, No. 15-CV-628 TWR (AGS), 2021 WL 7448532

15      (S.D. Cal. Mar. 31, 2021)................................................................2, 7

16  *MKS Instruments, Inc. v. Advanced Energy Indus., Inc.*,

17      No. CV 03-469 JJF, 2005 WL 8170603 (D. Del. June 27, 2005) ............................7

18  *MPI Tech A/S v. Int'l Bus. Machines Corp.*,

19      No. 15CV4891 (LGS) (DF), 2017 WL 11896263 (S.D.N.Y. Apr. 18, 2017) ....................7

20  *On Command Video Corp. v. LodgeNet Ent. Corp.*,

21      976 F. Supp. 917 (N.D. Cal. 1997) ....................................................2, 7

22  *Rsch. & Diagnostic Sys., Inc,* 250 F.R.D. 426, 427-433 (D. Neb. 2008) ...................11

23  *Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH,*

24      No. 22-CV-04986-JSC, 2023 WL 6882749 (N.D. Cal. Oct. 18, 2023) (Corley, J.).............2, 8

25

26

27

28

iii

Case 3:25-cv-01012   Document 40-3   Filed 12/15/25   Page 8 of 22 PageID #: 384

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction and Summary of Argument

This Court entered a Protective Order to facilitate MDL discovery by ensuring confidential information would be used "*only* for prosecuting, defending, or attempting to settle this Action or the [related JCCP] consolidated action…" ECF 176, ¶7.1 (emphasis added). Of course, the Protective Order also requires that confidential information "be disclosed only to the categories of persons and under the conditions described in this Order." *Id*. Unfortunately, a member of Plaintiffs' Steering Committee ("PSC"), Bret Stanley, is violating both of these restrictions. Mr. Stanley has shared information from Protected Material with persons unrelated to this litigation who are not permitted to receive it and have not agreed to be bound by the Protective Order. Mr. Stanley is also using material covered by the Protective Order to prosecute cases unrelated to this MDL or the JCCP.

Mr. Stanley *admittedly* used the content of MDL documents designated Confidential and Highly Confidential/Attorneys' Eyes Only ("AEO") to create a spreadsheet listing 587 of Defendants' internal policy related resources and identifying the repository where each resource is maintained (the "Confidential Information"). Mr. Stanley has now violated the Protective Order by: (1) using this information to prosecute non-MDL or JCCP cases; and (2) disclosing this information to persons not entitled to receive it.

Specifically, Mr. Stanley has: (1) disclosed the list of 587 policy related resources, and the repository (or "homepage") where each resource is maintained, to his co-counsel (not counsel of record in the MDL or JCCP) in two cases against Defendants involving car accidents, *Lord v. Uber Technologies, Inc.* ("*Lord*") and *Smith v. Uber Technologies, Inc.* ("*Smith*"); (2) propounded discovery in *Lord* listing and requesting 473 resources that he admittedly identified by reviewing Confidential and Highly Confidential/AEO MDL documents; and (3) propounded discovery in *Smith* listing and requesting 19 resources that he admittedly identified by reviewing Confidential and Highly Confidential/AEO MDL documents. Moreover, another partner at the law firm of Mr. Stanley's *Lord* co-counsel propounded a request for production in yet another case, *Casey Jones v. Uber Technologies, Inc.* ("*Jones*") that is nearly identical to the *Lord* discovery and again lists and requests 473 resources that Mr. Stanley admittedly identified by reviewing Confidential and Highly

MEMORANDUM SUPPORTING MOTION TO ENFORCE PROTECTIVE ORDER

Case No. 3:23-MD-03084

Confidential/AEO MDL documents. Finally, counsel in yet another case against Defendants, *Soto v. Uber Technologies, Inc.* ("*Soto*"), which is pending in New Jersey state court like *Lord* and *Jones*, issued a request for production nearly identical to those in *Lord* and *Jones*.

Mr. Stanley's use and disclosure of material covered by the Protective Order to prosecute other cases is a violation of this Court's Protective Order. *On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 923 (N.D. Cal. 1997) (finding the protective order was violated where covered information was used to prosecute another lawsuit); *Gonzales v. Charter Commc'ns, LLC*, No. 2:20-CV-08299-SB-AS, 2022 WL 570003, at \*4-5 (C.D. Cal. Jan. 26, 2022) (finding counsel's use of confidential policies to file another case violated protective order); *Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-CV-0628-TWR-AGS, 2021 WL 818971, at \*3 (S.D. Cal. Mar. 2, 2021), report and recommendation adopted, No. 15-CV-628 TWR (AGS), 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021); *Silicon Genesis Corp. v. EV Grp. E. Thallner GmbH*, No. 22-CV-04986-JSC, 2023 WL 6882749, at \*3 (N.D. Cal. Oct. 18, 2023) (Corley, J.) (holding party in contempt for using information derived from a confidential document to file another case). When confronted with his violations, Mr. Stanley and the PSC claimed that the names of Defendants' "policies"[3] are not confidential without further explanation. This argument is belied by the plain language of the Protective Order, which states that its "protections…cover…any information copied or extracted from" Protected Material (i.e., documents designated Confidential or Highly Confidential/AEO). ECF 176, ¶3.

Notwithstanding Mr. Stanley's clear violation, Defendants attempted to resolve this dispute by asking Mr. Stanley and the PSC to: (1) confirm that there had been no disclosure of confidential information beyond *Smith* and *Lord* cases; and (2) agree that Mr. Stanley and the PSC would not use policy related resources or other information from confidential documents without requesting permission from Defendants or the Court as required by the Protective Order. Mr. Stanley represented

---

[3] Mr. Stanley calls the resources listed on his spreadsheet "policies." This is a misnomer and a sleight of hand. The spreadsheet does not list static documents one would typically associate with a "policy." Rather, the spreadsheet identifies and/or references specific resources within Defendants' internal computer systems. In some cases, the resource contains one document. In other cases, the resource is a folder containing multiple documents. In other cases, the resource contains an interface or tool used by Defendants' agents. As a result, Mr. Stanley's spreadsheet is best described as containing "policy related resources."

1  there had been no disclosures beyond *Smith* and *Lord* but rejected the compromise proposal

2  maintaining that he had "not shared…any confidential documents, summaries, or other substantive

3  information from Uber documents…" The PSC did not separately respond to the compromise

4  proposal. After Mr. Stanley's representation, Defendants learned about the further disclosure and use

5  of the Confidential Information in *Jones* and *Soto*.

6     As a result, facing the risk of competitive harm from the repeated improper disclosure,

7  Defendants are left with no choice but to file the instant motion, respectfully requesting that the Court

8  enforce its Protective Order.

9  **II.    Facts**

10    **A.    The Protective Order restricts the use and disclosure of Protected Material.**

11    On December 28, 2023, this Court entered a Protective Order governing the disclosure of

12 confidential information outside this MDL. ECF 176. The purpose of this Court's Protective Order is

13 to provide confidential, proprietary, or private information "special protection from public disclosure

14 and from use for any purpose other than prosecuting this litigation…." ECF 176, ¶1. Consistent with

15 this purpose, the Protective Order requires that a Receiving Party use covered material "*only* for

16 prosecuting, defending, or attempting to settle this Action or the [related JCCP] consolidated action…"

17 ECF 176, ¶7.1 (emphasis added). In addition to the use restriction, Protected Material "may be

18 disclosed only to the categories of persons and under the conditions described in" the Protective Order.

19 ECF 176, ¶7.1.[4]

20    The Protective Order "cover[s] not only Protected Material" but also "any information copied

21 or *extracted* from Protected Material," and "all copies, *excerpts, summaries, or compilations* of

22 Protected Material," and any "conversations…by Parties or their Counsel that might reveal Protected

23 Material." ECF 176, ¶3 (emphasis added). Protected Material is material designated Confidential or

24

25

26

27 ──────────────────
[4] Aside from a few narrow exceptions (*e.g.*, the Court, court personnel, attorneys of record),
28 Confidential and Highly Confidential/AEO material can only be disclosed: (a) to persons identified in
the Protective Order *after* they execute the Acknowledgement and Agreement to Be Bound; (b) with
the permission of the Disclosing Party; or (c) by Court Order. ECF 176, ¶¶7.2, 7.3.

Highly Confidential/AEO. ECF 176, ¶2.16. A Party is required to follow the procedure outlined by the Protective Order to challenge a confidentiality designation. ECF 176, ¶6.[5]

**B.    Defendants produce policy related documents designated Confidential and Highly Confidential/AEO.**

Because Plaintiffs did not believe Defendants had produced all documents responsive to their discovery requests, the Magistrate Judge ordered Defendants, over their objection, to produce an "index, list, table of contents, or some other comparable record…of Uber's policies" and "homepages that operationalize those policies." ECF 706 at 2:7-11. At the conference that led to this Order, the Magistrate Judge explained that the purpose of ordering the production of such information was to enable Plaintiffs to "participate in the identification of relevant policies…." *See*, Ex. A, Declaration of Veronica Hayes Gromada ("Gromada Dec."), Ex. 2 (June 11, 2024 transcript) at 25:15-26:4; 28:19-29:1.

In response to this Order, on July 26, 2024, August 30, 2024, August 31, 2024, and September 6, 2024, Defendants produced documents reflecting indexes or lists of policy related resources drawn from different business units throughout the company, along with homepages related to those resources. Ex. A, Gromada Dec., ¶7. Defendants designated these documents Confidential or Highly Confidential/AEO pursuant to the Protective Order. *Id*.

**C.    Mr. Stanley compiles a list of policy related resources and their related homepages by reviewing Defendants' Confidential and Highly Confidential/AEO MDL production.**

On October 9, 2024, Mr. Stanley emailed a list of policy related resources to Defendants' counsel–a spreadsheet listing 860 resources and related homepages (the "October 2024 Spreadsheet"). Ex. A, Gromada Dec., ¶9-11 & Ex. 3. Mr. Stanley admitted that the October 2024 Spreadsheet was created largely from MDL documents and explained: "[i]f the Policy on this spreadsheet was identified from documents produced in the MDL, then you will find Beg Bates and Source information identifying where the policy name was pulled from." *Id*., Ex. 3.

---

[5] The first stage of the challenge process is to initiate a meet and confer with a written notice of each designation being challenged and the basis for each challenge. ECF 176, ¶6.2. A Party may proceed to the next stage "only" if it has conferred or establishes that the Designating Party will not do so. *Id.*

At a December 19, 2024 status conference, Mr. Stanley confirmed that he created the October 2024 Spreadsheet by reviewing Defendants' Confidential and Highly Confidential/AEO MDL production. *Id.*, ¶14 & Ex. 4 at 32:6-12 (December 19, 2024 transcript). Mr. Stanley said his October 2024 Spreadsheet listed the MDL document in which he identified a policy related resource "by Bates label." *Id.*, Ex. 4 at 36:12-16.

Mr. Stanley's October 2024 Spreadsheet contains 587 policy related resources identified by the MDL Bates number of the document where it was identified. Ex. A, Gromada Dec., ¶10 & Ex. 3. All of the source documents listed on the October 2024 Spreadsheet by MDL Bates number were designated Confidential or Highly Confidential/AEO. *Id.*, ¶12 and Ex. 3.

Plaintiffs have not challenged Defendants' designation of these documents through the process required by the Protective Order. *Id.*, ¶13.

### D.    Mr. Stanley uses his October 2024 Spreadsheet to prosecute other cases.

Mr. Stanley recently appeared as additional counsel in two state court cases involving alleged vehicle accidents:[6] *Smith v. Uber Technologies, Inc., et al.* (Bexar County, Texas) and *Lord v. Uber Technologies, Inc., et al.* (Mercer County, New Jersey). Ex. A, Gromada Dec., ¶ 18.

On April 16, 2025, Mr. Stanley's co-counsel in *Lord* served a 12th Supplemental Notice to Produce containing 41 requests including for "the Documents accessible via the hyperlinks shown in Appendix A." *Id.*, ¶20 & Ex. 6 at Req. No. 41. Appendix A is a spreadsheet listing 891 policy related resources. *Id.*, ¶20 & Ex. 6. *Of the 891 documents listed in Appendix A to the Lord Notice to Produce, 473 were identified by MDL Bates number on the October 2024 Spreadsheet. Id.* at ¶21.[7]

Similarly, on April 17, 2025, Mr. Stanley served a Fifth Set of Requests for Production in *Smith* seeking, *inter alia*, the prior two and subsequent two versions of the "Articles/Policies identified in Exhibit A." Ex. A, Gromada Dec., ¶27 & Ex. 7 at Req. Nos. 80-82. Exhibit A is a spreadsheet identifying 180 policy related resources. *Id.* at Ex. 7. Of the 180 resources on Exhibit A, nineteen were identified by MDL Bates number on the October 2024 Spreadsheet. *Id.* at ¶28.

---

[6] Ex. A, Gromada Dec., Ex. 8 at p. 4 (reflecting that *Smith* involves an Uber Eats trip that resulted in a collision) & Ex. 5 at 19:5-9 (reflecting that *Lord* involves "an automobile accident…").
[7] Defendants excluded any document appearing on Mr. Stanley's May 2024 Spreadsheet from this comparison because those are not governed by the MDL Protective Order.

E.    **Defendants demand that Mr. Stanley cease violating the Protective Order.**

On May 26, 2025, Defendants demanded that Mr. Stanley cease violating the Protective Order. *Id*., ¶31 & Ex. 10. Mr. Stanley and the PSC responded separately denying any violation. *Id*., ¶32-33 & Exs. 11 & 12. The parties conferred in an attempt to resolve this dispute on June 30, 2025. *Id*. at ¶35. During that conferral, Mr. Stanley argued that the names of Defendants' policies are not confidential and it "promotes efficiency" for him to use policy names identified in the MDL in other litigation. *Id*. Mr. Stanley and the PSC representative were asked (twice) whether it was their position that the content on the face of one Confidential MDL document identified as a source on the October 2024 Spreadsheet, UBER_JCCP_MDL_000250806, was not confidential. *Id*. They refused to answer saying it would not be productive to review specific documents. *Id*. However, Mr. Stanley and the PSC confirmed that they are not contending that any particular document was improperly designated as Confidential or Highly Confidential/AEO by Defendants. *Id*. at ¶36.

While Defendants vehemently disagreed with Mr. Stanley and the PSC's position, it proposed an "agreement to disagree" whereby: (a) Mr. Stanley and the PSC "confirm that the only cases in which the names of [Defendants'] policies identified in the MDL have been used are the *Smith* and *Lord* cases identified in our letter;" and (b) "agree that before using the names of [Defendants'] policies or other information from confidential documents identified in the MDL in any other case, you will seek either [Defendants'] permission or permission from the MDL Court." *Id*. at ¶37 & Ex. 14.

Mr. Stanley and the PSC refused. *Id*. at ¶38 & Ex. 15. Notably, Mr. Stanley's response states, "I confirm that the only matters I have made requests for production of KB Policies / Articles specifically by name are the *Smith* and *Lord* matters." *Id*.

F.    **Defendants recently learned that Mr. Stanley's October 2024 Spreadsheet is being disseminated among counsel for plaintiffs in other litigation against Defendants.**

Defendants recently discovered that Mr. Stanley's co-counsel in *Lord*, Bruce Stern of Stark and Stark, publicly filed the Notice to Produce that included a spreadsheet of policy related resources and refused to remove it from the New Jersey filing. *Id*. at ¶39. Defendants also discovered that another attorney with Stark and Stark had served the *Jones* request to produce, which is nearly identical to the *Lord* Notice to Produce. *Id*. at ¶40 & Ex. 16. Defendants also discovered that, on July 11, 2025, the

1    same day Mr. Stanley rejected Defendants' proposed agreement, counsel in another case against

2    Defendants in New Jersey, *Soto*, served a request to produce nearly identical to those in *Lord* and

3    Casey but with certain resources related to sexual assault and sexual misconduct redacted. *Id*. at ¶42

4    & Ex. 17.

**G.    Mr. Stanley did not know the Confidential Information before Defendants**
**produced Confidential and Highly Confidential/AEO documents in the MDL**
**documents.**

8    In rejecting Defendants' proposed compromise, Mr. Stanley referenced his knowledge of some

9    policy related information from other litigation against Defendants. Ex. A, Gromada Dec., Ex. 15.

10   While Mr. Stanley had a list of policy related information that he compiled in non-MDL cases against

11   Defendants (the "May 2024 Spreadsheet"), that list contains only 326 policy related resources and

12   does not include the homepages on which any of these resources are maintained. Ex. A, Gromada

13   Dec., ¶¶2-3 & Ex. 1. Defendants do not claim any MDL Protective Order violation from Mr. Stanley's

14   use of his May 2024 Spreadsheet.[8]

15   **III.    Argument**

**A.    Mr. Stanley's use of information extracted from Protected Material to prosecute**
**other cases violates the Protective Order.**

18   Mr. Stanley violated the Protective Order by using information extracted from Protected

19   Material to prosecute other cases. ECF 176, ¶¶3, 7.1 (prohibiting use of covered information for any

20   purpose other than "prosecuting, defending, or attempting to settle" the MDL or JCCP).

21   This language unambiguously bars the use of material covered by the Protective Order to

22   prosecute other cases. *On Command Video Corp.*, 976 F. Supp. 917, 923 (N.D. Cal. 1997) (finding

23   the magistrate judge erred by failing to recommend a contempt finding because, where protective order

24   prohibits all uses of confidential information except for "analysis of issues presented in this litigation,"

25   an argument that the protective order "could reasonably be interpreted as permitting the filing of a

---

[8] Protective orders were entered in some, if not all, of Mr. Stanley's previous cases against Defendants.
However, Defendants are unable to presently identify the case in which Mr. Stanley learned of each
document on his May 2024 Spreadsheet and thus cannot prove yet other protective order violations at
this time.

7

Case No. 3:23-MD-03084-CRB

completely *separate lawsuit* in state court strains credulity") (emphasis in original); *Gonzales*, 2022 WL 570003, at *4-5 (C.D. Cal. Jan. 26, 2022) (finding counsel's use of confidential policies to file another case violated protective order); *Mahboob*, 2021 WL 818971, at *3 (S.D. Cal. Mar. 2, 2021), *report and recommendation adopted*, No. 15-CV-628 TWR (AGS), 2021 WL 7448532 (S.D. Cal. Mar. 31, 2021) (imposing sanctions where counsel used confidential information to file a separate action).[9]

Similarly, the *Silicon Genesis Corp.* court held a party in contempt for using information derived from a confidential document to file another case finding that, "[b]ecause the Protective Order's plain language protects confidential information produced in this action 'from use for any purpose other than prosecuting this litigation,' there exists no good faith and reasonable interpretation…permitting EVG's use of SiGen's confidential information to instigate a foreign action." 2023 WL 6882749, at *3 (N.D. Cal. Oct. 18, 2023) (Corley, J.).

Mr. Stanley used extensive specific information extracted from Confidential and Highly Confidential/AEO documents produced by Defendants in this MDL in order to draft the discovery requests propounded in *Lord* and *Smith*. Thus, as in the above decisions, Mr. Stanley violated the Protective Order by using covered information to prosecute other cases.

**B.     Mr. Stanley's disclosure of information extracted from Protected Material violates the Protective Order.**

Mr. Stanley also disclosed information in violation of the Protective Order. ECF 176, ¶7.2-7.3. Nothing in the Protective Order allows disclosure of covered information to counsel prosecuting other cases against Defendants. ECF 176, ¶7.2-7.3. Importantly, where the Protective Order permits disclosure of covered material, recipients are generally required to sign the Acknowledgement and

---

[9] *See also MPI Tech A/S v. Int'l Bus. Machines Corp.*, No. 15CV4891 (LGS) (DF), 2017 WL 11896263, at *6-10 (S.D.N.Y. Apr. 18, 2017) (recommending contempt finding where counsel used confidential material to file new claims); *MKS Instruments, Inc. v. Advanced Energy Indus., Inc.*, No. CV 03-469 JJF, 2005 WL 8170603, at *1-3 (D. Del. June 27, 2005) (finding party violated protective order when it attached its expert report from one case, which "relied upon confidential documents," in its petition for injunction in another case); *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-CV-00007 (CBA) (TAM), 2024 WL 5168734, at *5 (E.D.N.Y. Dec. 19, 2024).

1   Agreement to be Bound to protect against further dissemination of confidential material. ECF 176,

2   ¶7.2-7.3.

3          Here, covered material was disclosed to persons not entitled to receive it who did not agree to

4   be bound by the Protective Order. The predictable result - which the MDL Protective Order was

5   intended to prevent - is that the covered material has apparently been shared by Mr. Stanley's *Lord*

6   co-counsel with a colleague at his firm and other counsel prosecuting cases against Defendants. Ex.

7   A, Gromada Dec., ¶40-42. Notably, Mr. Stanley has also publicly disclosed information covered by

8   the Protective Order because his co-counsel in *Lord* included his 12th Supplemental Notice to Produce

9   in a public filing and, as of the date of filing, refuses to remove it. *Id*. at ¶39. Moreover, to date, Mr.

10  Stanley's co-counsel in *Lord* has refused to agree to the entry of a protective order. *Id*. at ¶39.

11         **C.     By its plain language, the Protective Order covers the policy related resources.**

12         The policy related resources on Mr. Stanley's October 2024 Spreadsheet are covered by the

13  Protective Order. Mr. Stanley and the PSC declined to explain why they believe information contained

14  on the face of Confidential and Highly Confidential/AEO documents is not covered by the Protective

15  Order, likely because the plain language of the Protective Order forecloses this position.

16         The restrictions of the Protective Order apply to Protected Material *and* "any information

17  copied or extracted from Protected Material" and "all copies, excerpts, summaries, or compilations of

18  Protected Material…" ECF 176, ¶¶3, 7.1. Protected Material is material designated Confidential or

19  Highly Confidential/AEO. ECF 176, ¶2.16. Thus, if information is contained on a document

20  designated Confidential or Highly Confidential/AEO, it is covered by the Protective Order. If Plaintiffs

21  disagreed with Defendants' designations, they were required to follow the Protective Order challenge

22  process.

23         Here, Mr. Stanley admittedly extracted the policy related resources and the homepage in which

24  the resources are maintained from Confidential and Highly Confidential/AEO documents. The

25  Protective Order therefore covers this information. Moreover, if Mr. Stanley or the PSC believed that

26  information on documents marked Confidential or Highly Confidential/AEO was not confidential,

27  they were required to challenge the designation. They failed to do so. Nor did Mr. Stanley ask this

28  Court to modify the Protective Order to permit the use of information covered by the Protective Order

in his motor vehicle accident cases. Instead, Mr. Stanley unilaterally decided that information on documents marked Confidential and Highly Confidential/AEO was not confidential.[10] Allowing such conduct would render protective orders meaningless.

The Court should not sanction any request to analyze whether the documents containing the policy related resources were properly designated confidential *after* Mr. Stanley and the PSC failed to challenge these designations and *after* Mr. Stanley violated the Protective Order. Doing so would encourage counsel to violate protective orders and challenge confidentiality designations only if and when they are caught.

However, parties routinely - and properly - designate this type of information as confidential. The Protective Order identifies "confidential…business or commercial information" as confidential. ECF 176, ¶2.3. The Confidential and Highly Confidential/AEO documents not only reflect policy related resources, which are confidential, they also identify the homepages on which these resources are located effectively creating a roadmap of Defendants' information infrastructure. Ex. A, Gromada Dec., ¶30. Moreover, the way these resources are organized reveals how they are used within Defendants' business, including what resources are available to what personnel. *Id*. Defendants developed their information infrastructure over a long period of time at significant cost. *Id*. Knowledge of these resources and the manner in which Defendants organize them should not be public, as they are even restricted by roles and responsibilities within the business. *Id*.

Thus, the documents were properly designated Confidential or Highly Confidential/AEO.

**D.    A compilation of 587 of Defendants' policy related resources, along with the homepage on which each resource is maintained, is not "general knowledge and experience" Mr. Stanley gained by litigating the MDL.**

Defendants agree with the PSC's contention that counsel are permitted to use "general knowledge" and experience gained by litigating other cases because they cannot achieve "total amnesia." Ex. A, Gromada Dec., Ex. 12 (PSC letter). But this principle is irrelevant here.

---

[10] Mr. Stanley's apparent interpretation of the Protective Order, which would allow him to keep (and use) the October 2024 Spreadsheet even though it was created by extracting information from Protective Material, would render the requirement to return or destroy Protected Material, and all "abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material," within 90 days of the disposition of the MDL, a nullity. ECF 176, ¶13.

Mr. Stanley is not using "general knowledge" and no one is asking him to achieve "total amnesia." Instead, Mr. Stanley is using his October 2024 Spreadsheet, which lists 587 policy related resources and the homepage on which each resource is maintained within Defendants' systems. This is information Mr. Stanley admittedly extracted from Confidential and Highly Confidential/AEO documents produced in the MDL that he identified by Bates number. Mr. Stanley did not claim that he has a photographic recollection of these materials and thus cannot seriously argue that the details on his October 2024 Spreadsheet are "general knowledge." Instead, he claimed the information was not confidential.

Unsurprisingly, in conferrals, Mr. Stanley and the PSC cited no legal authority suggesting a party can compile detailed information from documents covered by a protective order then claim this is "general knowledge" that can be used to prosecute other cases. Instead, they cited a case observing that counsel need not achieve "total amnesia," which involved a protective order prohibiting the use of "all information produced in discovery" whether confidential or not. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 694 (9th Cir. 1993). Because of its breadth, that order would require counsel to achieve total amnesia "if taken literally…." 10 F.3d 693, 695.

That is not the situation here. *Dual-Deck* involved counsel's knowledge of a few specific facts revealed in discovery. Namely, the plaintiff's counsel learned of an antitrust violation by the defendant and filed a second lawsuit based on this information. 10 F.3d at 694. Unlike the extensive and detailed list at issue here, counsel in *Dual-Deck* was not going to forget this specific antitrust violation and the supporting documents.[11] The *Dual-Deck* court also found that enforcing the strict terms of its (much broader) protective order would have improperly resulted in "immunity from suit." *Id.* at 696. Here,

---

[11] Further, the party seeking sanctions in *Dual-Deck* did not claim that confidential information was disclosed or that the purposes of the protective order were violated. 10 F.3d 693, 694. The court found that the plaintiff technically violated the protective order. *Id.* at 695. The court, however, declined to impose contempt sanctions because the moving party failed to meet its burden of proving a lack of substantial compliance with a reasonable interpretation of the order by clear and convincing evidence considering the breadth of the order, the purpose of the order, and the lack of disclosure of confidential information. *Id.* Here, Mr. Stanley has not substantially complied with the Protective Order, information within Confidential and Highly Confidential/AEO documents has been disclosed, and the purposes of the Protective Order have been violated.

1   no one is preventing any party from filing suit against Defendants (indeed, the *Lord* and *Smith*

2   plaintiffs filed suit long before Mr. Stanley appeared and propounded his discovery).

3          Other cases cited by Mr. Stanley and the PSC are also inapposite. In *Streck, Inc. v. Rsch. &*

4   *Diagnostic Sys., Inc.*, counsel in a patent infringement case "general[ly] reference[d]" confidential

5   documents, without disclosing them, to impeach a witness in a related PTO proceeding. 250 F.R.D.

6   426, 427-433 (D. Neb. 2008). Here, Mr. Stanley has disclosed the content of Confidential and Highly

7   Confidential/AEO MDL documents. Moreover, Mr. Stanley is not making "general reference" to

8   documents. Instead, Mr. Stanley specifically listed 473 policy related resources and the homepage in

9   which each resource is kept in the *Lord* Notice to Produce. *Streck* might be relevant if Mr. Stanley

10  heard a witness in other litigation testify that a certain document does not exist when he recalled that

11  it does. The facts here are obviously - and fundamentally - different from that scenario.[12]

12         Mr. Stanley is not using general knowledge. Instead, he is using extensive detailed information

13  that he extracted from documents marked Confidential and Highly Confidential/AEO. The Protective

14  Order does not allow this conduct. As a practical matter, allowing MDL discovery to serve as a

15  litigation war chest that plaintiffs attorneys could use in future litigation involving *any* type of claim-

16  without seeking permission from any court-would significantly hinder the flow of information that

17  protective orders are meant to facilitate.

18     **E.      Attorneys cannot disregard the Protective Order to promote "efficiency."**

19         Efficiency in litigating other, unrelated matters is not an excuse to violate a Protective Order.[13]

20  If Mr. Stanley truly believed it was efficient and appropriate to request large portions of confidential

21

22  _____

    [12] In *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, cited by the PSC, the defendant argued that a law firm

23  could not represent its opponent because the firm previously represented a party with a similar claim
    and would therefore "inevitably use" confidential information from the prior case and have an unfair

24  "head start" in understanding discovery materials. No. 99 C 0762, 1999 WL 528545, at *1-2 (N.D. Ill.
    July 19, 1999). The defendant in *Hu-Friedy Mfg.* did not even identify any confidential information

25  that was used. *Hu-Friedy Mfg.* bears no resemblance to the facts here.
    [13] Perhaps Mr. Stanley relies on an "efficiency" argument because the Magistrate Judge cited

26  efficiency as a reason to allow Mr. Stanley, *in response to a subpoena*, to produce documents in the
    MDL that he possessed from other litigation against Defendants. Ex. A, Gromada Dec., Ex 13 at 34:13-

27  35:12 (October 1, 2024 transcript). Initially, in that instance, Plaintiffs followed the *process* of issuing
    a subpoena which gave Defendants *notice* and an opportunity to challenge. Here, the required process

28  was ignored. Moreover, while recognizing efficiency concerns, the Magistrate Judge also explained
    the importance of analyzing relevance and proportionality on a case by case basis when parties seek

1   MDL discovery in car accident cases, he could have asked this Court to allow that. He did not. Mr.

2   Stanley has been telling the same story-which he reiterated at the conferral-for years. He claims

3   Defendants are not producing relevant information and his "policy" list can identify information that

4   should have been produced.  Public policy and the public's trust in the judicial system, binding orders

5   of the Court, and the rule of law, all require enforcement of the Protective Order in these

6   circumstances.

7           The *Lord* Notice to Produce debunks this story. In a 12th Supplemental Notice to Produce in

8   a car accident case, Mr. Stanley's co-counsel propounded 41 requests including requests for 891 policy

9   related resources (473 of which were identified in Confidential and Highly Confidential/AEO MDL

10  documents). Ex. A, Gromada Dec., ¶21 & Ex. 6. Many of these resources are self-evidently irrelevant

11  to the driver classification issue.[14] Moreover, the *Lord* Notice to Produce is largely copied from MDL

12  discovery and thus completely divorced from the issues presented. The seventy-nine defined terms in

13  the *Lord* Notice to Produce include "Woman to Woman Matching" and "Date of Uber's Safety

14  Taxonomy Implementation." Ex. A, Gromada Dec., Ex. 6. These are MDL definitions that have

15  nothing to do with the car accident in *Lord*. Ex. A, Gromada Dec., compare Ex. 6 (*Lord* Notice to

16  Produce) with Ex. 9 (MDL Bellwether WHB 823 request).

17          There is nothing efficient about this type of discovery - it is meant to drive up the cost of

18  litigation to extort settlements. The discovery requests in *Lord*, *Jones*, *Soto*, and *Smith* are not attempts

19  to propound proportionate discovery related to relevant issues. These are cut and paste jobs seeking

20  the same burdensome discovery regardless of the facts of the individual case.

21          Ultimately, it does not matter whether the discovery propounded by Mr. Stanley, attorneys at

22  his co-counsel's firm, and other attorneys to whom the confidential information has been disclosed, is

---

to obtain discovery from other cases. *Id*. at 35:20-36:3 ("[I]n other cases where I've handled this issue, even where you're talking about two antitrust cases, I still parse through what the claims are in the respective cases and what the -- what the discovery disputes -- or what the discovery is that's requested to make sure that it's not as simple as copy and dump."). Here, Mr. Stanley did not allow any court to parse through the propriety of using information covered by the Protective Order to seek discovery in other cases. Moreover, it is obviously improper to request hundreds of policy related resources-including resources related to sexual assault and misconduct and other topics that govern Defendants' employees but have nothing to do the driver classification issue-in car accident cases.

[14] For example, an individual employee's transition material (Ex. 6 at Row 605) or resources for Defendants' employees that could not be relevant to driver classification (Ex. 6 at Rows 738 and 15).

appropriate in those cases. It is a violation of the Protective Order regardless. However, Mr. Stanley's attempt to use Defendants' alleged lack of disclosure to excuse his violation of the Protective Order is not only legally irrelevant, it is also factually inaccurate.

**IV.  Conclusion**

Defendants' internal company-policy related resources and the homepages on which these resources are maintained, which were identified by Mr. Stanley by reviewing the content of Confidential and Highly Confidential/AEO MDL documents, are covered by the Protective Order. Thus, Mr. Stanley's use of this information to prosecute other cases, and his disclosure of this information to other unauthorized counsel and non-parties to this MDL, violates the Protective Order. Mr. Stanley maintains his conduct is not a violation. As a result, Court intervention is required to enforce the Protective Order, stop Mr. Stanley's ongoing violations, and prevent further use and dissemination of this Confidential Information.

DATED: July 18, 2025

**SHOOK, HARDY & BACON L.L.P.**

By: */s/ Michael B. Shortnacy*
   MICHAEL B. SHORTNACY

**KIRKLAND & ELLIS LLP**
ALLISON M. BROWN
JESSICA DAVIDSON
LAURA VARTAIN HORN

**O'MELVENY AND MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY & BACON L.L.P.**
ALYCIA A. DEGEN
MICHAEL B. SHORTNACY
PATRICK L. OOT, JR.
CHRISTOPHER V. COTTON

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# EXHIBIT 4

```
 1                   UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN FRANCISCO DIVISION
                                    )
 4                                  )   23-MD-03084 CRB
                                    )
 5      IN RE: UBER TECHNOLOGIES, INC.,   )   SAN FRANCISCO, CALIFORNIA
        PASSENGER SEXUAL ASSAULT    )
 6      LITIGATION.                 )   AUGUST 12, 2025
                                    )
 7      _____  )   PAGES 1 - 17

 8
                        TRANSCRIPT OF REMOTE PROCEEDINGS
 9              BEFORE THE HONORABLE LISA J. CISNEROS
                   UNITED STATES MAGISTRATE JUDGE
10
        A P P E A R A N C E S:
11
        FOR THE PLAINTIFFS:    JOHNSON LAW GROUP
12                             BY: BRET D. STANLEY
                               2925 RICHMOND AVENUE, SUITE 1700
13                             HOUSTON, TEXAS 77098

14                             CHAFFIN LUHANA
                               BY: STEVEN COHN
15                             615 IRON CITY DRIVE
                               PITTSBURGH, PENNSYLVANIA 15205
16
17      FOR THE DEFENDANTS:    SHOOK, HARDY & BACON
                               BY: VERONICA GROMADA
18                             JPMORGAN CHASE TOWER
                               600 TRAVIS STREET, SUITE 3400
19                             HOUSTON, TEXAS 77002

20                             KIRKLAND & ELLIS
                               BY: CHRISTOPHER COX
21                             601 LEXINGTON AVENUE
                               NEW YORK, NEW YORK 10022
22

23      OFFICIAL COURT REPORTER:
                               IRENE L. RODRIGUEZ, CSR, RMR, CRR
24                             CERTIFICATE NUMBER 8074

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

| | |
|---|---|
| 1 | SAN FRANCISCO, CALIFORNIA                    AUGUST 12, 2025 |
| 2 | P R O C E E D I N G S |
| 11:35AM 3 | (COURT CONVENED AT 11:35 A.M.) |
| 11:35AM 4 | THE CLERK:  WE ARE CALLING 23-MD-03084, IN RE UBER |
| 11:35AM 5 | TECHNOLOGIES, INC. |
| 11:35AM 6 | COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD |
| 11:35AM 7 | BEGINNING WITH THE PLAINTIFF. |
| 11:35AM 8 | MR. STANLEY:  BRET STANLEY ON BEHALF OF THE |
| 11:35AM 9 | PLAINTIFF STEERING COMMITTEE AND JOHNSON LAW GROUP. |
| 11:35AM 10 | MR. COHN:  STEVEN COHN ON BEHALF OF PLAINTIFFS. |
| 11:35AM 11 | MR. COX:  ON BEHALF OF THE UBER DEFENDANTS, |
| 11:35AM 12 | CHRISTOPHER COX, AND I'M WITH MY COLLEAGUE VERONICA GROMADA |
| 11:35AM 13 | WITH SHOOK, HARDY BACON. |
| 11:35AM 14 | THE COURT:  GOOD MORNING.  GREAT. |
| 11:35AM 15 | SO WE HAVE TODAY A HEARING ON UBER'S MOTION FOR A |
| 11:35AM 16 | PROTECTIVE ORDER, AND I'VE HAD AN OPPORTUNITY TO REVIEW THE |
| 11:36AM 17 | BRIEFING AS WELL AS THE DECLARATIONS. |
| 11:36AM 18 | SO THIS TO ME JUST -- I'LL GIVE THE PARTIES AN OPPORTUNITY |
| 11:36AM 19 | TO RESPOND TO MY TENTATIVE POSITION, WHICH IS THAT THE |
| 11:36AM 20 | INFORMATION THAT IS CONTAINED IN THE OCTOBER SPREADSHEET IS |
| 11:36AM 21 | CONFIDENTIAL INFORMATION, AND THAT'S BASED ON MY REVIEW OF |
| 11:36AM 22 | MS. GROMADA'S DECLARATION AND THE EXCERPTS THAT SHE PROVIDED. |
| 11:36AM 23 | IT DOESN'T STRIKE ME AS GENERAL KNOWLEDGE. |
| 11:36AM 24 | BUT, MR. STANLEY, YOU CAN RESPOND TO THAT FURTHER. |
| 11:36AM 25 | SO LET'S START AT THAT POINT, AND THEN WE CAN GO FORWARD |

11:36AM  1    AS FAR AS WHAT THE REMEDY IS IF I STICK WITH THAT POSITION.

11:36AM  2              MR. STANLEY:  OKAY, JUDGE.  BRET STANLEY ON BEHALF

11:37AM  3    OF THE PLAINTIFFS.

11:37AM  4        I APPRECIATE THE TIME TO TALK WITH YOU ABOUT THIS ISSUE.

11:37AM  5    IT'S SUPER IMPORTANT, AND IT'S SOMETHING THAT IS GOING TO BE AN

11:37AM  6    ISSUE COMING UP IN MULTIPLE DIFFERENT CASES AS WE GO FORWARD OR

11:37AM  7    COULD BE.  SO WE LOOK FORWARD TO HEARING FROM YOU ON THIS.

11:37AM  8        I'D LIKE TO TAKE A STEP BACK AND LOOK AT HOW WE GOT HERE

11:37AM  9    AND DISCUSS WITH YOU SOME OF THE RULINGS THAT YOU'VE MADE AND

11:37AM 10    HOW WE GOT TO THIS POINT.

11:37AM 11        AND SO ON MAY 17TH, AS YOU KNOW, WE SENT, BASED ON THE

11:37AM 12    PAPERS, WE SENT A REQUEST TO UBER FOR THEM TO PRODUCE KNOWLEDGE

11:37AM 13    BASED POLICIES AND ARTICLES IN THIS MDL, AND THAT WAS FROM

11:37AM 14    INFORMATION THAT I HAD GAINED ALONG THE WAY WHERE I IDENTIFIED

11:37AM 15    THE POLICIES REQUESTED TO BE PRODUCED.

11:37AM 16        ALONG THAT TIME BEFORE, UBER HAD NOT IDENTIFIED KNOWLEDGE

11:37AM 17    BASE AS A REPOSITORY OF INFORMATION AND HAD NOT PRODUCED

11:37AM 18    POLICIES BASED ON GENERAL REQUESTS INSIDE OF THE MDL.  AND SO

11:38AM 19    WE HAD OUR FIRST HEARING ON THAT ON JULY 11TH, AND IN THAT

11:38AM 20    HEARING --

11:38AM 21              THE COURT:  SO THE HISTORY, MR. STANLEY, IT TOOK US

11:38AM 22    A WHILE TO WORK THROUGH THOSE ISSUES AROUND THE PRODUCTION OF

11:38AM 23    THE POLICIES.

11:38AM 24        BUT THE WAY I AM LOOKING AT THIS IS, IS THE INFORMATION

11:38AM 25    THAT IS IN THE SPREADSHEETS, WHICH SEEMS TO HAVE BEEN

4

| | | |
|---|---|---|
| 11:38AM | 1 | DISSEMINATED TO OTHERS OUTSIDE OF THIS LITIGATION, DOES IT |
| 11:38AM | 2 | REFLECT A REPRODUCTION OF INFORMATION THAT WAS CONTAINED IN |
| 11:38AM | 3 | UBER'S PRODUCTION AND DESIGNATED AS CONFIDENTIAL AND NOT |
| 11:38AM | 4 | DISPUTED, THE DESIGNATION WASN'T EVER DISPUTED BY THE |
| 11:38AM | 5 | PLAINTIFFS? |
| 11:38AM | 6 | SO I THINK THAT -- I UNDERSTAND, LIKE, THE EXERCISE -- TO |
| 11:38AM | 7 | THE EXTENT THAT YOU'RE GIVING ME THE LARGER HISTORY SO THAT I |
| 11:39AM | 8 | UNDERSTAND WHY YOU ENDEAVORED TO PUT TOGETHER THE SPREADSHEETS, |
| 11:39AM | 9 | I THINK THAT'S UNDERSTANDABLE, BUT THE PART OF THE MATTER THAT |
| 11:39AM | 10 | I THINK I NEED TO FOCUS ON THIS WITH RESPECT TO THIS MOTION IS |
| 11:39AM | 11 | SIMPLY WAS THERE A DISCLOSURE OF INFORMATION THAT WAS |
| 11:39AM | 12 | DESIGNATED CONFIDENTIAL AND WHERE THE CONFIDENTIALITY |
| 11:39AM | 13 | DESIGNATION HAD NEVER BEEN DISPUTED. |
| 11:39AM | 14 | MR. STANLEY:  UNDERSTOOD. |
| 11:39AM | 15 | THE COURT:  THIS LOOKS LIKE NOT GENERALIZED |
| 11:39AM | 16 | INFORMATION THAT WAS IN THE SPREADSHEET, BUT IT LOOKS LIKE IT |
| 11:39AM | 17 | WAS LIKE BY HAND SORT OF TRANSCRIBED OR -- FROM THE FACE OF |
| 11:39AM | 18 | THESE DOCUMENTS. |
| 11:39AM | 19 | SO IN THAT RESPECT, IT DOESN'T LOOK LIKE GENERALIZED |
| 11:39AM | 20 | INFORMATION TO ME. |
| 11:39AM | 21 | MR. STANLEY:  AND, JUDGE, I APPRECIATE THAT.  AND I |
| 11:39AM | 22 | ENDEAVORED ALL I COULD TO MAINTAIN AND TO FOLLOW THE PROTECTIVE |
| 11:39AM | 23 | ORDER IN THE WAY THAT IT IS WRITTEN AND IN A WAY THAT IS |
| 11:39AM | 24 | REASONABLE FOR THE PRACTICE OF LAW.  SO THAT'S WHAT I INTENDED |
| 11:40AM | 25 | TO DO. |

11:40AM 1            AND IN THIS VERY FIRST HEARING, YOU TALKED ABOUT HOW

11:40AM 2    IDENTIFYING THE POLICIES IS HELPFUL.  AND WHEN I DID THAT THE

11:40AM 3    FIRST TIME BASED UPON THE INFORMATION THAT I HAD, IT WAS NOT

11:40AM 4    FOUND TO BE IN VIOLATION OF ANY PROTECTIVE ORDER.

11:40AM 5            THE PROTECTIVE ORDER THAT WE HAD IN THIS CASE WAS ALREADY,

11:40AM 6    WAS ALREADY ORDERED AND IN THE CASE AS EARLY AS DECEMBER I

11:40AM 7    THINK OF 2024.  FIVE MONTHS LATER I PROVIDE THE IDENTIFICATION

11:40AM 8    OF THESE MATERIALS FROM PRIOR INFORMATION, AND I IDENTIFIED THE

11:40AM 9    CASE FROM WHICH THAT CAME FROM, AND IT CAME IN UNDER NO

11:40AM 10   OBJECTION.

11:40AM 11           AND THEN ALONG THE WAY WE CONTINUED TO IDENTIFY THESE,

11:40AM 12   THESE KNOWLEDGE BASED ARTICLES.  I DID NOT SHARE ANY

11:40AM 13   INFORMATION FROM ANY OF THE KNOWLEDGE BASED ARTICLES WITH

11:40AM 14   ANYONE.  I JUST IDENTIFIED THEM FOR PRODUCTION.

11:40AM 15           AND AS YOU SEE, PRACTICALLY THE WAY THAT IT HAS WORKED IS

11:40AM 16   UBER HAS WITHHELD THIS INFORMATION FROM OTHER LITIGATIONS AND

11:40AM 17   WITHOUT BEING ABLE TO IDENTIFY SOMETHING TO THEM TO PRODUCE,

11:41AM 18   THEY DON'T PRODUCE IT.  THEY DIDN'T PRODUCE IT IN THIS MDL,

11:41AM 19   THEY DON'T PRODUCE IT IN OTHER LITIGATIONS OUTSIDE OF THE MDL.

11:41AM 20   SO BY SIMPLY IDENTIFYING IT, I'M NOT GIVING OR DIVULGING ANY OF

11:41AM 21   THE CONFIDENTIAL INFORMATION FROM THE DOCUMENT ITSELF.  I'M

11:41AM 22   IDENTIFYING THE RECORD ITSELF IN HOPES THAT IT CAN AIM TO FIX

11:41AM 23   OR TO ASSIST IN THE PRODUCTION OF THESE DOCUMENTS.

11:41AM 24           THE COURT:  AS THE DISCOVERY JUDGE IN THIS MDL, I'M

11:41AM 25   NOT IN A POSITION TO SORT OF EXERCISE -- YOU KNOW, ISSUE ANY

| | | |
|---|---|---|
| 11:41AM | 1 | ORDERS OR MANAGE DISCOVERY IN ANY OTHER CASE OR TO TAKE STEPS |
| 11:41AM | 2 | TO ENSURE THAT DISCOVERY THAT HAPPENS IN A DIFFERENT CASE WITH |
| 11:41AM | 3 | UBER IS DONE AND IN ACCORDANCE WITH LAW.  SO IT'S ALL -- IT IS |
| 11:41AM | 4 | KIND OF IRRELEVANT TO THE QUESTION THAT I HAVE. |
| 11:42AM | 5 | MR. STANLEY:  OF COURSE. |
| 11:42AM | 6 | THE COURT:  MY UNDERSTANDING OF UBER'S MOTION IS |
| 11:42AM | 7 | THAT THEY DON'T -- THEY'RE NOT ARGUING THAT IT'S A VIOLATION OF |
| 11:42AM | 8 | THE PROTECTIVE ORDER FOR YOU TO HAVE CREATED A SPREADSHEET TO |
| 11:42AM | 9 | ORGANIZE THE INFORMATION THAT YOU WERE REVIEWING AND FROM THEIR |
| 11:42AM | 10 | PRODUCTIONS AND TO USE THAT WITHIN THE CONFINES OF THIS MDL. |
| 11:42AM | 11 | WHAT THEY'RE OBJECTING TO IS THAT IT APPEARS THAT THE |
| 11:42AM | 12 | SPREADSHEETS SOMEHOW WERE, YOU KNOW, DISSEMINATED TO OTHER, |
| 11:42AM | 13 | OTHER ATTORNEYS IN OTHER CASES AND THAT HAD THE EFFECT OF |
| 11:42AM | 14 | DISCLOSING THEIR CONFIDENTIAL MATERIAL. |
| 11:42AM | 15 | AND THE NAME -- TO THE EXTENT THAT YOU'RE SAYING THAT |
| 11:42AM | 16 | THERE WASN'T A VIOLATION BECAUSE ALL IT HAS IS THE NAMES, HERE |
| 11:42AM | 17 | THE INFORMATION IS NOT JUST THE NAMES.  IT'S SORT OF ALSO THE |
| 11:43AM | 18 | SOURCE OF WHERE IT CAME FROM AND IT IS A REPRODUCTION OF |
| 11:43AM | 19 | INFORMATION THAT IS ON THE FACE OF THESE DOCUMENTS THAT WERE |
| 11:43AM | 20 | DESIGNATED AS CONFIDENTIAL. |
| 11:43AM | 21 | AND ESI HAS A PROCESS FOR DISPUTING CONFIDENTIALITY |
| 11:43AM | 22 | DESIGNATIONS WHERE THEY MIGHT BE OVERREACH ON THE PRODUCING |
| 11:43AM | 23 | PARTY BY SAYING WHAT IS CONFIDENTIAL, BUT WE NEVER HAD THAT |
| 11:43AM | 24 | ISSUE BROUGHT TO MY ATTENTION.  NONE OF THOSE DISPUTES WERE IN |
| 11:43AM | 25 | FRONT OF ME.  SO, LIKE, ON THE RECORD OF THIS, MAYBE YOU WOULD |

7

| | |
|---|---|
| 11:43AM | 1 |
| 11:43AM | 2 |
| 11:43AM | 3 |
| 11:43AM | 4 |
| 11:44AM | 5 |
| 11:44AM | 6 |
| 11:44AM | 7 |
| 11:44AM | 8 |
| 11:44AM | 9 |
| 11:44AM | 10 |
| 11:44AM | 11 |
| 11:44AM | 12 |
| 11:44AM | 13 |
| 11:44AM | 14 |
| 11:44AM | 15 |
| 11:44AM | 16 |
| 11:44AM | 17 |
| 11:44AM | 18 |
| 11:44AM | 19 |
| 11:44AM | 20 |
| 11:45AM | 21 |
| 11:45AM | 22 |
| 11:45AM | 23 |
| 11:45AM | 24 |
| 11:45AM | 25 |

HAVE HAD A CASE TO ARGUE THAT NAMES ALONE ARE NOT CONFIDENTIAL.

I DON'T -- I WOULDN'T PREJUDGE, YOU KNOW, WHAT MY RULING WOULD

BE IN THAT KIND OF A DISPUTE, BUT AT THIS POINT THE

DESIGNATIONS OF THOSE DOCUMENTS WAS NOT CONTESTED.

SO LET ME LET --

MR. STANLEY:  MAY I ASK -- MAY I MAKE ONE FINAL

POINT BEFORE?

AND SO THE WAY THAT THE MOTION IS WRITTEN FROM THE UBER

DEFENDANTS APPEARS TO BE THAT EVEN USE OF THE WORD KNOWLEDGE

BASE, WHICH IS SOMETHING IN MY GENERAL KNOWLEDGE, OR EVEN USE

OF THE WORD KNOWLEDGE BASE HOME PAGE, ALL OF THAT, WHICH IS

INFORMATION THAT I'VE HAD BEFORE AND INFORMATION THAT WAS IN

THIS LITIGATION, IT'S INFORMATION THAT IS RELEVANT AND

NECESSARY WOULD ALSO BE IN VIOLATION OF THE PROTECTIVE ORDER.

AND SO THEY ARE STRANDING AND STRAINING THIS PROTECTIVE

ORDER TO SUCH AN EXTENT TO PULL ALL, ALL WORDS USED IN ANY OF

UBER'S PRODUCTION UNDER THE AMBIT OF THE ORDER.

SO WHEN WE LOOK AT THE LANGUAGE OF THE ORDER, IT

ADMONISHES SO THAT THE ORDER IS NOT USED AS A SOURCE SO THAT IT

CAN PULL ALL OF THIS INFORMATION UNDER THE AMBIT OF THE ORDER

IN THE WAY THAT IT'S NOT DISCLOSING INFORMATION.

I WOULD ALSO SAY THAT THE CASE LAW THAT THEY CITED IN EACH

OF THEIR CASES, IT'S ALL BASED ON WHETHER OR NOT SOMEONE USED

INFORMATION TO GAIN ADDITIONAL INFORMATION TO FILE A NEW

LAWSUIT.  THAT'S WHAT EVERY ONE OF THEIR CASES THAT THEY CITE

11:45AM 1  TO, WHETHER IT'S IN A PATENT CASE OR SOME SORT OF AN

11:45AM 2  INFRINGEMENT CASE, THEY LEARNED OF ADDITIONAL INFORMATION, ALL

11:45AM 3  OF THESE LAWYERS LEARNED OF ADDITIONAL INFORMATION FROM A PRIOR

11:45AM 4  LITIGATION AND WENT AND SOUGHT NEW CLAIMS.

11:45AM 5      IT WOULD BE SIMILAR TO IF I, AFTER TAKING THE DEPOSITION

11:45AM 6  OF JOE SULLIVAN, WHO WAS THE CHIEF SECURITY OFFICER, UNDERSTOOD

11:45AM 7  THAT THERE WAS A DATA BREACH THAT UBER WAS INVOLVED IN SEVERAL

11:45AM 8  YEARS AGO, AND THEN WENT AND SOUGHT DATABASE BREACH CASES

11:45AM 9  BECAUSE I GOT THAT INFORMATION.  AND THAT'S NOT, THAT'S NOT

11:45AM 10  WHAT HAS HAPPENED.

11:45AM 11      THESE CASES, NONE OF THE COMPLAINTS THAT ARE IN THESE

11:45AM 12  CASES WERE FILED IN A WAY THAT USE ANY INFORMATION THAT WAS

11:46AM 13  PROTECTED, AND SO THE -- ONE OF THE CASES THAT I DO THINK THAT

11:46AM 14  UBER DISPUTED THAT IS NOT ON POINT IS THE DUPRE CASE WHERE THE

11:46AM 15  COURT FOUND THAT BY STRETCHING THE TERM "USE" IT WAS PREVENTING

11:46AM 16  A LARGE PRACTICING LAW, AND THAT WAS AGAINST THE ETHICAL RULES

11:46AM 17  THAT ARE ALSO INVOLVED AND THEY'RE ALSO AT HAND IN CALIFORNIA.

11:46AM 18  IT'S RULE 5.6(B), I BELIEVE, OF THE ETHICAL RULES IN CALIFORNIA

11:46AM 19  AS WELL.

11:46AM 20      SO THAT CASE IS ON POINT, TOO, OF WHAT I'M ASKING TO DO.

11:46AM 21          THE COURT:  TO THE EXTENT THAT YOU'RE ARGUING, OKAY,

11:46AM 22  WELL, THIS WASN'T USED TO FILE, THIS PARTICULAR INFORMATION

11:46AM 23  WASN'T USED TO FILE NEW CASES OR SO FORTH, IT DOESN'T STRIKE ME

11:46AM 24  AS BEING RELEVANT TO THE DECISION I HAVE TO MAKE ON THIS

11:46AM 25  MOTION.  IT'S JUST WAS THERE INFORMATION THAT WAS DESIGNATED

11:47AM 1    CONFIDENTIAL AND WAS IT DISCLOSED?  I DON'T ANALYZE WHAT THAT

11:47AM 2    WAS -- WHETHER OR NOT, YOU KNOW, HOW THAT INFORMATION WAS USED

11:47AM 3    AT A LATER POINT.

11:47AM 4        MAYBE THAT WOULD BEAR ON SOME ISSUE LIKE A REMEDY OR

11:47AM 5    SOMETHING LIKE THAT, BUT JUST TO FIGURE OUT WHETHER OR NOT

11:47AM 6    THERE WAS A VIOLATION OF THE PROTECTIVE ORDER, I DON'T -- IT

11:47AM 7    DOESN'T SEEM LIKE MOTIVATIONS OR THE SUBSEQUENT USE OR MANNER

11:47AM 8    OF USE IS RELEVANT.

11:47AM 9        SO IT'S -- WHEN YOU LOOK AT MS. GROMADA'S DECLARATION,

11:47AM 10   IT'S LAID OUT IN A VERY CLEAR, STRAIGHTFORWARD WAY TO SHOW WHAT

11:47AM 11   WAS IN THE DESIGNATED -- IN A PARTICULAR EXEMPLAR DOCUMENT THAT

11:47AM 12   HAD BEEN DESIGNATED CONFIDENTIAL.  I MEAN, YOU LOOK AT

11:47AM 13   PARAGRAPH 15, IT LAYS THAT INFORMATION OUT, AND THEN IT HAS AN

11:48AM 14   EXCERPT FROM YOUR -- AN EXCERPT FROM YOUR SPREADSHEET, AND IT'S

11:48AM 15   JUST, IT REALLY IS CLEAR TO ME THAT IT'S EFFECTIVELY A

11:48AM 16   DISCLOSURE OF THE FULL CONTENT OF THE PAGE.

11:48AM 17       SO I DON'T -- MAYBE YOU'VE GOT A DIFFERENT VIEW OF THAT,

11:48AM 18   BUT --

11:48AM 19           MR. STANLEY:  AND I DO, JUDGE.  IT APPEARS THAT IT

11:48AM 20   IS MAKING -- SO IT'S AS IF THAT I SHOWED THE ACTUAL DOCUMENTS.

11:48AM 21   IT'S AS IF THAT I SHOWED THE HOME PAGE DOCUMENTS.  THAT'S THE

11:48AM 22   WAY THAT HER PLEADINGS READ TO ME IS THAT THERE'S THIS VIRTUAL

11:48AM 23   OR INTERNAL ELECTRONIC FILING CABINET THAT I'M SHOWING TO

11:48AM 24   PEOPLE, AND I'M JUST IDENTIFYING THE DOCUMENT.

11:48AM 25           THE COURT:  BUT IF YOU TYPE IT INTO YOUR OWN LITTLE

11:48AM 1    SPREADSHEET AND THE MATERIAL IS IDENTICAL, IT'S KIND OF LIKE

11:48AM 2    THIS -- TO ME IT'S THE SAME THING, EVEN IF YOU DIDN'T PRINT OUT

11:49AM 3    A COPY OF THAT PAGE FROM THE PRODUCTION, IT STILL ENDS UP

11:49AM 4    DISCLOSING THE MATERIAL.

11:49AM 5        AND SO I DON'T -- IT'S -- I THINK -- I JUST FEEL LIKE THIS

11:49AM 6    IS A POINT WHERE THE RECORD IS SO CLEAR THAT -- I MEAN, YOU

11:49AM 7    MIGHT HAVE ARGUMENTS AS TO WHAT THE HARM ACTUALLY IS, BUT I

11:49AM 8    THINK IT'S REALLY DIFFICULT FOR ME TO GET AROUND THAT.

11:49AM 9            MR. STANLEY:  WELL, I GUESS THE LAST THING I'LL SAY

11:49AM 10   ON THIS BECAUSE I'M HEARING YOU, JUDGE, I'M HEARING YOU, BUT

11:49AM 11   THE PROTECTIVE ORDER MUST COMPLY WITH THE COMMON SENSE READING

11:49AM 12   AND MUST CONNECT ITS PURPOSE WITH THE PROHIBITIONS.  AND IS THE

11:49AM 13   PURPOSE OF THE PROTECTIVE ORDER TO PREVENT AN ATTORNEY WITH

11:49AM 14   EXTENSIVE INFORMATION AND KNOWLEDGE FROM PURSUING ANY

11:49AM 15   LITIGATION AGAINST UBER IN THE FUTURE?

11:50AM 16       AND THAT'S, THAT'S PRETTY MUCH WHAT IS GOING TO BE DONE

11:50AM 17   WITH THIS ORDER IS IT'S GOING TO PREVENT ME FROM ASKING FOR

11:50AM 18   DOCUMENTS IN ANY WAY OTHER THAN SOME VERY GENERALIZED REQUEST

11:50AM 19   THAT WE KNOW BOTH INSIDE THE MDL AND OUTSIDE OF THE MDL UBER

11:50AM 20   WILL NOT RESPOND TO WITH A SUBSTANTIVE RESPONSE.

11:50AM 21       AND SO WE DO NEED TO GO FORWARD THEN.  AND THEN HOW ARE WE

11:50AM 22   TO PRACTICE LAW AFTER THIS MDL OR OUTSIDE OF THIS MDL IF WE

11:50AM 23   CANNOT REQUEST DOCUMENTS IN A WAY THAT WILL RESULT IN THEM

11:50AM 24   BEING PRODUCED?  BECAUSE IT TOOK US A YEAR INSIDE OF THIS MDL,

11:50AM 25   MONTH AFTER MONTH AFTER MONTH AFTER MONTH, AT LEAST SIX TIMES

| | |
|---|---|
| 11:50AM | 1 |
| 11:50AM | 2 |
| 11:50AM | 3 |
| 11:51AM | 4 |
| 11:51AM | 5 |
| 11:51AM | 6 |
| 11:51AM | 7 |
| 11:51AM | 8 |
| 11:51AM | 9 |
| 11:51AM | 10 |

1   FOR US TO GET THESE DOCUMENTS PRODUCED, AND THAT WAS A GREAT

2   BENEFIT TO HAVE YOUR TIME AND YOUR ABILITY TO BE WITH US AND TO

3   SEE THIS DOCUMENT PRODUCTION.  AND WE DON'T GET THAT BENEFIT IN

4   INDIVIDUAL STATE COURT CASES WHERE WE GET TO COME UP EVERY

5   MONTH AND ARGUE.  THAT'S SOMETHING THAT IS PARTICULAR TO MDL'S

6   AND THE DISCOVERY PROCESS HERE.

7        SO THIS WILL DEFINITELY PREVENT THE PRACTICE OF LAW AND

8   MAKE IT ALMOST IMPOSSIBLE TO GET DOCUMENTS IN A TIMEFRAME WHERE

9   WE CAN GET THESE CASES, GET THE DISCOVERY FROM THE CASES, AND

10   LITIGATE THEM IN A WAY THAT IS APPROPRIATE FOR OUR CLIENTS.

11           THE COURT:  I GUESS A COUPLE OF THOUGHTS.  I DON'T

12   THINK THAT THE PROTECTIVE ORDER OR MY RULING ON THE PENDING

13   MOTION WILL PRECLUDE ATTORNEYS FROM PRACTICING LAW OR FILING

14   FUTURE LAWSUITS OR LITIGATING AGAINST UBER IN GENERAL.

15        I THINK THAT IT WOULD -- I HEAR WHAT YOU'RE SAYING,

16   MR. STANLEY, IN EFFECT IT WOULD -- GIVEN THE DIRECTION THAT I'M

17   INCLINED TO GO, IT WOULD DEPRIVE PLAINTIFFS' COUNSEL OF A

18   CERTAIN ADVANTAGE IN DISCOVERY IN OTHER CASES, BUT THE FACT OF

19   THE MATTER IS THAT THERE WAS A PROTECTIVE ORDER THAT WAS

20   STIPULATED TO.  WE'VE GOT ESI PROTOCOLS.  WE HAVE ALL OF THE

21   PROCEDURES THAT WERE ASSOCIATED WITH THE PROTECTIVE ORDER,

22   INCLUDING AN OPPORTUNITY, A PROCESS BY WHICH TO CHALLENGE THE

23   DESIGNATION OF A DOCUMENT AS CONFIDENTIAL.

24        AND SO -- AND THERE'S WAYS TO LITIGATE THAT ISSUE TO SAY

25   THAT A DESIGNATING PARTY IS BEING OVERBROAD AND DESIGNATED

11:53AM 1    THINGS THAT ARE CONFIDENTIAL THAT WOULDN'T IT REVEAL TO THE

11:53AM 2    PUBLIC HARM, A COMPETITIVE ADVANTAGE FOR THE COMPANY IN THE

11:53AM 3    MARKET?

11:53AM 4         BUT THAT WAS NEVER BROUGHT TO THE FLOOR, AND THAT IS

11:53AM 5    SOMETHING THAT EXISTS IN THE PROCESSES THAT ARE PART OF THIS

11:53AM 6    MDL AND COULD BE NEGOTIATED.

11:53AM 7         SO ANYWAY, I JUST THINK THAT THAT'S ONE WAY TO ADDRESS THE

11:53AM 8    CONCERNS THAT I THINK YOU'RE VOICING, WHICH IS THAT THE

11:53AM 9    POSSIBILITY THAT A PROTECTIVE ORDER IS MISUSED OR USED IN A WAY

11:53AM 10   THAT IS NOT INTENDED FOR THE PRINCIPLES THAT UNDERLIE

11:53AM 11   PROTECTIVE ORDERS BEING ADOPTED IN LITIGATION.

11:54AM 12        AND I THINK THE OTHER, YOU KNOW, POSSIBILITY IS SIMPLY

11:54AM 13   THAT ON THE FRONT END YOU TELL UBER THAT YOU WOULD LIKE

11:54AM 14   PERMISSION TO MAKE A DISCLOSURE, AND THEY CAN OBJECT OR NOT

11:54AM 15   OBJECT, AND MAYBE THERE'S SOME INTEREST ON THE PART OF UBER TO

11:54AM 16   NOT OBJECTING TO THE EXTENT IT SPEEDS UP AND MAKES MORE

11:54AM 17   EFFICIENT DISCOVERY PROCESS OVERALL AND SO YOU DON'T END UP

11:54AM 18   USING LOTS OF ATTORNEY TIME TO FIGURE OUT WHAT IS WHAT AND WHAT

11:54AM 19   SHOULD BE -- WHAT THE RELEVANT POLICIES ARE AND SO FORTH.

11:54AM 20        BUT IT WOULD BE SOMETHING THAT YOU GO TO UBER AT THE FRONT

11:54AM 21   END AND ASK ABOUT PERMISSION TO DISCLOSE.

11:54AM 22        SO I THINK THERE'S WAYS TO DEAL WITH THESE CONCERNS THAT

11:54AM 23   YOU'RE RAISING, AND I HAVE A VERY LIMITED QUESTION THAT'S IN

11:54AM 24   FRONT OF ME WITH THIS PROTECTIVE ORDER.

11:55AM 25        MR. STANLEY:  UNDERSTOOD, JUDGE.  AND ASKING FOR

11:55AM  1      PERMISSION TO REQUEST THESE DOCUMENTS VERBALLY ALWAYS END IN A

11:55AM  2      NO, SO THAT'S PROBABLY GOING TO RESULT IN US COMING BACK TO YOU

11:55AM  3      OVER AND OVER IN SPECIFIC CASES OR AT LEAST IN SOME WAY TO

11:55AM  4      UNDERSTAND HOW WE CAN IDENTIFY DOCUMENTS TO ASSIST IN

11:55AM  5      PRODUCTION FROM THIS LITIGATION.

11:55AM  6          AND SO I'M ALSO WORRIED THAT IN THE NEXT TEN CASES THAT I

11:55AM  7      FILE AGAINST UBER, THAT FOR VARIOUS REASONS OF HARM TO

11:55AM  8      INDIVIDUALS, THAT I'M GOING TO NEED TO JAM YOUR DOCKET UP, COME

11:55AM  9      BACK AND REQUEST USE FROM THIS WHEN UBER DOES NOT PERMIT ME TO

11:55AM  10     REQUEST DOCUMENTS IN THIS MANNER.  SO THAT'S ALSO A CONCERN

11:55AM  11     THAT I HAVE, AND ESPECIALLY WHEN IDENTIFYING THE DOCUMENTS WAS

11:55AM  12     HELPFUL TO THE PROCESS INSIDE OF THE MDL, DOCUMENTS THAT I HAD

11:56AM  13     KNOWLEDGE OF BEFORE THE MDL WHEN I DID IT THE SAME WAY THAT

11:56AM  14     THIS IS GOING TO BE SOMETHING THAT IS GOING TO BE RECURRING.

11:56AM  15     AND SO WHEN WE HAVE TO GO FORWARD ON WHAT WE SHOULD DO, THAT'S

11:56AM  16     SOMETHING THAT I JUST WANT YOU TO BE AWARE OF.

11:56AM  17          THE COURT:  I MEAN, MAYBE YOU SHOULD BE ADJUSTING

11:56AM  18     YOUR EXPECTATIONS ABOUT WHAT YOU CAN DO WITH INFORMATION THAT

11:56AM  19     YOU HAVE LEARNED IN THE MDL.

11:56AM  20          THE FACT OF THE MATTER IS THAT THIS DISCOVERY PROCESS

11:56AM  21     INVOLVED UBER DISCLOSING AN IMMENSE AMOUNT OF INFORMATION IN

11:56AM  22     RESPONSE TO PLAINTIFFS' FAR REACHING DISCOVERY REQUESTS AND A

11:56AM  23     LOT OF INFORMATION THAT WAS CONFIDENTIAL OR PROPRIETARY OR

11:56AM  24     SENSITIVE TO THE COMPANY HAD COME INTO PLAY AS PART OF THE

11:56AM  25     DISCOVERY PROCESS, AND THE PURPOSE OF THE PROTECTIVE ORDER WAS

11:57AM  1    TO GIVE THEM SOME CONFIDENCE AND ASSURANCE THAT THIS

11:57AM  2    INFORMATION WOULD NOT GET RELEASED FOR PURPOSES OTHER THAN --

11:57AM  3    OR USED FOR PURPOSES OTHER THAN ADVANCING THIS MDL.

11:57AM  4        DISCOVERY IN THIS MDL IS FOR THIS MDL, AND TO THE EXTENT

11:57AM  5    THAT IT CROSSES OVER IN WAYS THAT THE COURT HAS SANCTIONED FOR

11:57AM  6    THE JCCP, THERE'S THAT, BUT THERE IS A LARGER UNIVERSE OF

11:57AM  7    LITIGATION AGAINST UBER I'M SURE FOR ALL DIFFERENT TYPES OF

11:57AM  8    CASES, BUT THAT IS NOT WHAT THE PURPOSE OF THE PROTECTIVE ORDER

11:57AM  9    HERE WAS.  IT WAS TO DEAL WITH DISCOVERY IN THIS CASE AND TO

11:57AM 10    SIMPLIFY THE PROCESS AND GIVE ASSURANCES TO PARTIES INVOLVED

11:57AM 11    THAT THEIR INFORMATION, THEIR CONFIDENTIAL INFORMATION OR

11:58AM 12    HIGHLY CONFIDENTIAL INFORMATION WOULD BE USED FOR OTHER

11:58AM 13    PURPOSES.

11:58AM 14        ATTORNEYS BECOME EXPERTS IN INDUSTRIES AND ON CERTAIN

11:58AM 15    COMPANIES AND THERE'S A GENERAL KNOWLEDGE THAT DEVELOPS, BUT

11:58AM 16    WHEN YOU SEE A REPRODUCTION LIKE WHAT MS. GROMADA LAID OUT, IT

11:58AM 17    SEEMS PRETTY STRAIGHTFORWARD THAT A DISCLOSURE OCCURRED.

11:58AM 18        SO THAT -- LET'S MOVE ON TO THE -- WHERE DO WE GO FROM

11:58AM 19    HERE AND WHAT IS THE ORDER?

11:58AM 20        IT DOESN'T SEEM -- TO ME IT SEEMS PRETTY STRAIGHTFORWARD

11:58AM 21    AS FAR AS WHAT UBER IS ASKING AS FAR AS YOU IDENTIFYING TO WHOM

11:58AM 22    YOU HAVE GIVEN THIS INFORMATION.  I THINK ONE ASPECT THAT I WAS

11:58AM 23    A LITTLE UNCLEAR ABOUT, THOUGH, WAS WHAT EXACTLY IS THE

11:59AM 24    DEFINITION OF A CONFIDENTIAL AND THEN THERE'S -- YOU HAD

11:59AM 25    ANOTHER SPREADSHEET THAT CONTAINED 326 POLICY RELATED

| | | |
|---|---|---|
| 11:59AM | 1 | RESOURCES.  AND THAT WAS NOT -- UBER DIDN'T ARGUE THAT THAT WAS |
| 11:59AM | 2 | CONFIDENTIAL INFORMATION.  SO ON THE OTHER HAND, YOUR LATER |
| 11:59AM | 3 | SPREADSHEET FROM OCTOBER OF 2024 HAD 860 POLICIES OR POLICY |
| 11:59AM | 4 | SOURCES.  SO THERE'S A DELTA THERE, AND THAT SEEMS TO BE WHAT |
| 11:59AM | 5 | IS OF CONCERN TO UBER IN THIS MOTION. |
| 11:59AM | 6 | BUT I GOT CONFUSED BY SOME OF THE NUMBERS AND ALSO THE -- |
| 11:59AM | 7 | WHETHER OR NOT THERE IS A -- I DON'T THINK THAT THERE IS A |
| 12:00PM | 8 | SUFFICIENTLY TAILORED AND CLEAR DEFINITION OF CONFIDENTIAL |
| 12:00PM | 9 | INFORMATION SO THAT OTHER ATTORNEYS CAN SORT OF BE AWARE OF |
| 12:00PM | 10 | WHAT CAN BE DISCLOSED GOING FORWARD. |
| 12:00PM | 11 | SO I WAS INCLINED TO SEND YOU ALL TO MEET AND CONFER AND |
| 12:00PM | 12 | DEAL WITH THE PROPOSED ORDER, AND SUBMIT A REVISED PROPOSED |
| 12:00PM | 13 | ORDER THAT IS CLEARER. |
| 12:00PM | 14 | MR. COX:  YOUR HONOR, IF I COULD ADDRESS THAT, I'M |
| 12:00PM | 15 | HAPPY TO MEET AND CONFER IF THAT'S WHAT YOU WOULD LIKE US TO |
| 12:00PM | 16 | DO. |
| 12:00PM | 17 | BUT THE CONFIDENTIAL INFORMATION IS DEFINED IN THE BRIEF |
| 12:00PM | 18 | IN SUPPORT OF OUR MOTION, AND IT IS THE 587 ROWS ON |
| 12:00PM | 19 | MR. STANLEY'S OCTOBER 2024 SPREADSHEET THAT ARE IDENTIFIABLE |
| 12:00PM | 20 | WITH MDL BATES NUMBERS. |
| 12:01PM | 21 | SO THAT'S HOW WE'RE DEFINING CONFIDENTIAL INFORMATION AS |
| 12:01PM | 22 | USED IN THE PROPOSED ORDER, BUT I ACTUALLY -- IN DISCUSSIONS IN |
| 12:01PM | 23 | PREPARING FOR THIS HEARING, I WANTED TO CLARIFY MY OWN |
| 12:01PM | 24 | UNDERSTANDING OF THAT, SO I APPRECIATE YOUR HONOR ASKING THE |
| 12:01PM | 25 | QUESTION.  AND IF YOU WOULD LIKE US TO MEET AND CONFER AND |

12:01PM 1    SUBMIT A PROPOSED ORDER OR JUST SUBMIT A PROPOSED ORDER, A

12:01PM 2    REVISED PROPOSED ORDER, WE'RE HAPPY TO DO THAT.

12:01PM 3         I'M SORRY, I DON'T THINK WE CAN HEAR YOU AGAIN.  I'M

12:01PM 4    SORRY.

12:01PM 5              THE COURT:  AND THAT SEEMS OFF BECAUSE THE

12:01PM 6    SPREADSHEET HAD 860 AND THEN THAT WAS THE OCTOBER SPREADSHEET

12:01PM 7    HAD 860.  THE MAY SPREADSHEET HAD 326.  SO IF YOU SUBTRACT,

12:02PM 8    THEN THAT IS, THAT IS 534 POLICIES.

12:02PM 9         BUT THE BRIEFING REFERS TO 586.  SO IT'S NOT CLEAR WHAT

12:02PM 10   THAT'S REFERRING TO.

12:02PM 11             MR. COX:  SO ONE OF THE REASONS I WENT INTO LAW IS

12:02PM 12   BECAUSE OF MY MATH SKILLS.  SO LET US CONFER ON THAT AND MAKE

12:02PM 13   SURE THAT WE HAVE THE NUMBERS CORRECT, BUT WE ARE, AS

12:02PM 14   YOUR HONOR OBSERVED IN CONNECTION WITH LOOKING AT MS. GROMADA'S

12:02PM 15   DECLARATION AND THE DOCUMENT, YOU KNOW, SOME OF THE UNDERLYING

12:02PM 16   MATERIALS THAT WERE PRODUCED IN THE MDL AS COMPARED TO THE

12:02PM 17   SPREADSHEET, WE ARE -- THE ASSERTION IS THAT IT'S, IT'S -- THE

12:03PM 18   BATES NUMBERED MATERIALS THAT ARE REFERENCED.  SO WE CAN DEFINE

12:03PM 19   THAT MORE CLEARLY FOR YOUR HONOR.

12:03PM 20             THE COURT:  OKAY.  LET'S DO THIS.  I'M DIRECTING THE

12:03PM 21   PARTIES TO FILE EITHER A JOINT PROPOSED -- A REVISED JOINT

12:03PM 22   PROPOSED ORDER WITHIN THREE DAYS OR IF YOU DON'T HAVE AN

12:03PM 23   AGREEMENT AS TO WHAT THAT PROPOSED ORDER SHOULD LOOK LIKE, FILE

12:03PM 24   YOUR SEPARATE PROPOSED ORDERS.  AND PLAINTIFFS, BY FILING THE

12:03PM 25   PROPOSED ORDERS WITHIN THREE DAYS, YOU'RE NOT WAIVING YOUR

```
12:03PM   1    OBJECTIONS TO MY RULING FROM THE BENCH TODAY THAT THERE WAS A

12:03PM   2    VIOLATION OF THE PROTECTIVE ORDER IN THIS CASE AND BASED ON THE

12:03PM   3    RECORD THAT I'VE REVIEWED AND FOR THE REASONS THAT I'VE

12:03PM   4    EXPLAINED TODAY.

12:03PM   5        AND IT'S NOT WAIVING YOUR RIGHT TO APPEAL THAT ORDER IF

12:04PM   6    YOU DISAGREE AND WISH TO APPEAL IT TO JUDGE BREYER.

12:04PM   7            MR. STANLEY:  UNDERSTOOD.

12:04PM   8            THE COURT:  OKAY.  ALL RIGHT.

12:04PM   9        SO I DON'T THINK THERE'S ANYTHING FURTHER THAT WE NEED TO

12:04PM  10    DO TODAY.

12:04PM  11            MS. GROMADA:  THANK YOU, YOUR HONOR.

12:04PM  12            MR. COHN:  THANK YOU, YOUR HONOR.

12:04PM  13            MR. STANLEY:  THANK YOU.

12:04PM  14            MR. COX:  THANK YOU.

12:04PM  15            THE CLERK:  COURT IS NOW ADJOURNED.

12:04PM  16        (COURT CONCLUDED AT 12:04 P.M.)

         17

         18

         19

         20

         21

         22

         23

         24

         25
```