UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No.  23-md-03084-CRB   (LJC) |
| This Document Relates To: ALL CASES. | **ORDER REGARDING JOINT DISCOVERY REGARDING THE CORRECTED SUPPLEMENTAL REPORT OF JOHN CHANDLER, PH.D AND THE UPDATED EXPERT REPORT OF LACEY R. KELLER** <br> Re: Dkt. No. 4752 |

Pending before the Court is the parties' joint discovery letter disputing the timeliness and propriety of Plaintiff's supplemental expert reports, specifically the Corrected Supplemental Report of John Chandler, Ph.D. (Corrected Supplemental Chandler Report) and the updated Expert Report of Lacey R. Keller (Updated Keller Report).  Having reviewed the parties' briefing, the record in this action, and the relevant authorities, Uber's request for discovery relief is DENIED for the foregoing reasons.

## I.     TIMELINESS

Uber contends that the December 3, 2025 service of the two reports violates Rule 26(e) of the Federal Rules of Civil Procedure.  Uber contends that rule requires the parties to supplement expert reports "in a timely manner."  With respect to expert witnesses, the rule states:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(2).

The parties agreed to December 8 and 10, 2025 deadlines for the disclosure of witnesses lists and exhibit lists, respectively.  ECF Nos. 4559 at 4, 4576, 4665 at 20 (Tr. 20:11-12, 32:13-

20).  The reports were served several days before these pretrial disclosure deadlines.  In this respect, there is no violation of the deadlines established in Rule 26(e)(1)(B) applicable to supplemental expert witness reports.

Uber also appears to argue the two reports are untimely based on another provision within Rule 26(e).  Subsection (1)(A) of Rule 26(e) contains the "timely manner" requirement and applies to supplementation of disclosures under Rule 26(a), and responses to interrogatories, requests for production and requests for admission.  Fed. R. Civ. P. 26(e)(1)(A).  Rule 26(a)(2) addresses the disclosure of expert testimony, and therefore disclosure of supplemental expert material must be in a "timely manner" in addition to occurring before pretrial disclosures.  *See* Fed R. Civ. P. 26(a)(2)(E) ("The parties must supplement these [expert] disclosures when required under Rule 23(e).").

The two supplemental expert reports were served in a timely manner considering Uber's delayed disclosure and production of Flack data.  Throughout the litigation Uber's tactics have obfuscated the extent of its data collection concerning reported incidents of sexual misconduct and sexual assault, delaying Plaintiffs' related discovery.  In July 2024 the Court ordered Uber to produce its sexual misconduct and sexual assault incident data.  Dkt. No. 683 at 11-12.  The Court ordered Uber to produce "data and documents related to incidents occurring in the United States associated with any of the twenty-one categories of sexual assault and sexual misconduct from the Sexual Misconduct and Violence Taxonomy.  For all incident reports that Uber produces, it shall also produce all underlying trip data (e.g. GPS information, trip date and time, etc)."  *Id.*  Full production in compliance with this order did not occur promptly.  *See* Dkt. No. 3848.  The Court, for example, has discussed Uber's failure to disclose Flack as a relevant non-custodial source of ESI in February 2024, despite orders addressing such relevant databases for purposes of preservation and disclosure to facilitate the identification and production of electronically stored information.  *See* Dkt. Nos. 65 (Pretrial Order No. 2), 175 (Pretrial Order No. 5), 4060 at 3-4.

The experts' supplementation has occurred close to the impending trial for the first bellwether case, but the timing is reasonable considering when the Flack data was ultimately provided and the time necessary to process and validate the data.  Furthermore, Plaintiffs have

made both experts available for further deposition regarding their supplemental reports. Thus, Uber will be able to question both experts. In other circumstances, in another case, the compressed time schedule could be considered unreasonable. Here Uber has formidable resources in its defense, it is not inevitable that the timing will disrupt the trial schedules for all the Wave 1 bellwether cases, and the timing is largely a problem of Uber's making. *See Brocade Comms. Syst., Inc. v. A10 Networks, Inc.*, Case No. 10-cv-03428, 2012 WL 12925789, *6-7 (N.D. Cal. Jul. 6, 2012).

## II.    SCOPE OF SUPPLEMENTATION

Next the Court addresses Uber's arguments that the two reports provided improper supplementation beyond the scope permitted under Rule 26(e). "Supplementing an expert report pursuant to Rule 26(e) means 'correcting inaccuracies, or filing the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Gerawan Farming, Inc. v. Rehrig Pacific Co.*, 2013 WL 1982797, *5 (E.D. Cal. May 13, 2013) (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998). And as this Court has recently addressed, even an opinion that strays beyond the scope of appropriate supplementation may be allowed if the delay in serving it after the expert disclosure deadline was substantially justified or harmless. Dkt. No. 4701 at 17 (citing *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18CV967-GPC(MSB), 2020 WL 8621524, at *9 (S.D. Cal. June 12, 2020)).

Turning to Dr. Chandler first, his supplemental report compared the Flack Data to the incident data previously available and utilized in his Opening Report. Dkt No. 4753 at 7-8 (Part IV). Uber states that "the data provided by Flack is functionally coextensive with the data produced by JIRA and Bliss," Dkt No. 4752 at 4, and Uber produced significant incident-level data from JIRA and Bliss on April 9, 2025. Dr. Chandler, however, points out that the Flack data contain substantially more information per incident, specifically trip-level timestamps, geographic information, ticket-level and internal classification fields and alleged assailant classification fields. Dkt. No. 4752 at 7-8 (Corrected Supplemental Chandler Report, Part IV). Whereas the Opening Report incident data consisted solely of counts by incident type and month, Dr. Chandler's

3

1   supplemental report included new relative risk analysis based on Flack trip-level data.  *See e.g.*

2   Dkt. No. 4752 at 8-18 (Corrected Supplemental Chandler Report, Part V).  Despite Uber's

3   generalized representations concerning the similarities between JIRA and Bliss and Flack data,

4   Uber does not specifically contend that this particular data was available for analysis in Dr.

5   Chandler's Opening Report.  The undersigned notes that Todd Gaddis provided a declaration,

6   signed on August 18, 2025, and filed with the Court on September 15, 2025, attesting that the

7   Flack data fields "are primarily derived from the same Bliss and Jira fields that Uber produced to

8   Plaintiff."  Dkt. No. 3913-3 at 5 (Gaddis Decl. ¶ 11).  Uber has not established that the Flack

9   database fields exclusively contain information from JIRA and Bliss that was already produced to

10  Plaintiffs.  Where the Corrected Supplemental Chandler Report analyzes Flack data that was not

11  previously produced, the report permissibly fills in gaps in the Opening Report.

12          Where other parts of Dr. Chandler's supplemental report addressed risk factor data that

13  was not specifically included in the Flack data, the undersigned considers whether

14  supplementation is permissible given the content and the circumstances.  First, Dr. Chandler's

15  limited supplementation is within the ambit of the risk analysis that he already addressed in his

16  Opening Report.  *See* Corrected Supplemental Chandler Report, ¶ 7.  This part of Dr. Chandler's

17  supplementation does not analyze new raw Flack data, but it points out relevant risk factor data

18  that Uber's Flack database does not include.  That omission is relevant to Plaintiffs' claims about

19  Uber's failure to sufficiently assess risk, a key claim that the Dr. Chandler's Opening Report

20  already addressed.  In this regard, this case is unlike cases where an expert introduces a new

21  theory in a supplemental report that is ultimately stricken.  *See Martinez v. Costco Wholesale*

22  *Corporation*, 336 F.R.D. 183, 189 (S.D. Cal. 2020) (striking a supplemental report that contained

23  a new opinion about the quality of a human resources department's investigation of discrimination

24  claims when the original expert report addressed a company's purported failure to provide

25  reasonable accommodations and engage in the interactive process and information about the

26  investigation was previously available); *Gerawan Farming, Inc.*, 2013 WL 1982797, *5 (striking a

27  supplemental expert report with a significantly different damages calculation).

28          On the other hand, the record is not entirely clear regarding whether Dr. Chandler could

United States District Court
Northern District of California

4

United States District Court
Northern District of California

have addressed this discrete issue pertaining to the Flack database in his Opening Report served on September 26, 2025.  In one respect the record is favorable to Plaintiffs.  At the time of the opening reports, Uber had not produced the Flack data showing definitively that alcohol, age, and other risk factor data would not be contained in or derivable from that raw data.  In advance of the opening report, Plaintiffs moved to compel production of the Flack data.  Dkt No. 3700.  Ultimately the Court agreed with Plaintiff and ordered Uber to produce the Flack data and a 30(b)(6) witness.  Dkts Nos. 3848, 4060.  The data was produced on October 13 and 17, 2025, and the 30(b)(6) deposition took place on November 7, 2025, weeks after the experts' opening reports.  Plaintiffs' experts indicated in their reports and at their depositions that they may supplement their Opening Reports.  These facts tend to show that Dr. Chandler's supplementation is permissible because the full production of the data offered confirmation as to what was and was not included in the Flack data.  In this respect the Flack discovery in October and November 2025 may have allowed Dr. Chandler to fill an existing gap in the information available to him.

Yet, the record also indicates that by late September 2025, Plaintiffs had some information concerning what data was contained in the Flack database.  The August 18, 2025 Gaddis declaration included an attachment listing data field names and "convenience descriptions" from Flack's trip incidents database table.  Dkt. No. 3913-3 at 6-8.  Though ultimately the data itself was not produced until two months later, and Gaddis did not testify as Uber's corporate witness on this topic under Rule 30(b)(6) until November 7, 2025, Dr. Chandler could conceivably have written preliminary opinions based on what he could understand from the available list of Flack field names and descriptions.  Plaintiffs, however, contend that the Gaddis deposition was necessary to understand how to process and interpret the data, and in this respect his testimony is part of every opinion in the expert reports.  Though this assertion may be a stretch regarding the opinions based on risk factor data omitted from the Flack database, to the extent there is doubt, those doubts are resolved in Plaintiffs' favor because Uber could have avoided the delay by providing an earlier disclosure and production of Flack data.  Uber had the option of disclosing the Flack data after Uber's own Head of Safety for the Americas testified on July 23, 2025 to relying on such data.  Instead, Uber resisted Plaintiffs' request and litigated the issue throughout August

and September.  This left an incomplete record for the experts to analyze, and supplementation was appropriate once the nature of the Flack data was clarified through its production and the related deposition of Gaddis, Uber's 30(b)(6) witness.  *See* Dkt. No. 4701 at 19 (finding substantial justification for a supplemental report where "Plaintiffs may have reasonably hesitated to serve expert opinions on documents that they had not yet had an opportunity to test through a Rule 30(b)(6) deposition on the topic").  To the extent that Plaintiffs perhaps could have disclosed at an earlier date some of the new opinions in Dr. Chander's supplemental report, the Court finds substantial justification for Plaintiffs' decision to wait until they had taken a Rule 30(b)(6) deposition to understand the nature of Uber's Flack data.

Turning to the Updated Keller Report, Uber asserts that Keller changed the titles of figures and tables, headings and explanatory text.  It is undisputed that Flack data was not previously produced at the time of the opening report.  Uber has not provided sufficient information to demonstrate that the scope of the changes were improper, namely that they materially changed the nature of Keller's opinions.  *See Hawk Hill Ranch, LLC v. Yarak*, No. 22-cv-01567, 2024 WL 1421265, at *2 (N.D. Cal. Apr. 2, 2024).  Uber challenges in particular Opinion 4, asserting that the opinion relies on incident-level data that was produced well before the opening report deadline.  Even where this opinion is based on previously produced information, it is informed by the belatedly produced Flack data and corresponding deposition testimony.  Based on the limited record available, Court concludes that Keller's updated report is an appropriate supplement, or in the alternative, that any delay in serving that report was substantially justified.

### III.    CONCLUSION

The Court recognizes that allowing the supplemental reports may create scheduling challenges.  As discussed above, however, this is ultimately a problem of Uber's own making, and the Court is confident that both sides have the resources to prepare for the upcoming trials on a compressed schedule that accounts for these supplemental reports.  The Court therefore orders as follows.

Uber's motion to strike the supplemental reports at issue is DENIED.  Uber's reports in rebuttal to Dr. Chandler's and Ms. Keller shall be due by the deadline that the parties already

United States District Court
Northern District of California

agreed to, specifically January 2, 2026 (thirty days after December 3, 2025).  *See* Dkt. No. 4752 at 5 n.4.  The parties have agreed to three-hour depositions of Dr. Chandler and Ms. Keller, *id.*, and to a January 5, 2026 date for Ms. Keller's deposition, Dkt. No. 4752-3, ¶ 6.  The parties shall meet and confer regarding dates for depositions of Dr. Chandler and Uber's rebuttal witness, and file either a stipulation and proposed order or a joint letter setting forth their respective proposals no later than noon on December 29, 2025.

**IT IS SO ORDERED.**

Dated: December 23, 2025

LISA J. CISNEROS
United States Magistrate Judge