# EXHIBIT 1

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES

*Social Media Cases*
JCCP5255
(Lead Case: 22STCV21355)

Dept. 12 SSC
Hon. Carolyn B. Kuhl
Date of Hearing: November 10, 2025

**Defendants' Motion to Exclude the Expert Testimony of Dr. Minette Drumwright**

Court's Ruling:  The Motion is granted.

    Dr. Minette Drumwright (Drumwright) is an expert on marketing, corporate ethics, and corporate responsibility.  Plaintiffs summarize Drumwright's opinions as follows:

> • Each Defendants' actions were inconsistent with industry standards for corporate responsibility.
> • Each Defendant failed to disclose the ineffectiveness of safety features to the public and instead portrayed their platforms as safe.
> • Each Defendant failed to disclose and warn that it had inadequate age management and gating.
> • Meta, Snap, and TikTok failed to disclose and warn of the dangers and risks that their features posed to youth.
> • Meta, Snap, and TikTok failed to disclose and warn about harmful and negative experience that youth had on their platforms including unwanted sexual conduct and instead portrayed their platforms as safe.
> • Snap failed to warn of the dangers of addiction while making decisions to exacerbate addiction among youth and instead portrayed their platforms as safe.

1

> - Meta failed to disclose the risk of problematic use and addiction caused or contributed by its platforms' design and instead portrayed that its platforms are not addictive.
> - Meta failed to create a policy against minor sexualization despite knowing that it was a significant issue on its platforms and failed to disclose and warn users, parents, and the public of risks of exploitation of minors on its platforms, portraying its platforms as safe.
> - Mata failed to disclose and warn that it had no integrity classifier to detect human sex trafficking and underage users.
> - Meta failed to disclose or warn that it had considered but failed to implement certain features that it believed would have improved the safety of its platforms.
> - Meta's action prioritized growth over safety and were reckless and irresponsible.

(Pls' Opp., at pp. 8-9.)

Defendants move to exclude Drumwright's non-general causation opinions. Defendants summarize the testimony as "two broad sets of opinions" offered by Drumwright: (1) "that Defendants violated industry standards of care (set by marketing and advertising associations, the UN, and others) by not disclosing, warning, or fixing numerous purportedly known risks (such as alleged addiction, eating disorders, and harmful experience) on their platforms"; and (2) "that Defendants engaged in 'pseudo corporate social responsibility,' a term she claims 'consists of knowingly failing to meet standards of care, while pretending and claiming the opposite outwardly.' " (Defs' Mot., at p. 6.)

Plaintiffs cite *Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 421, for the proposition that in a negligence action a defendant's compliance, or lack of compliance, with industry standards is evidence a jury may consider in determining whether the defendant acted negligently. (See *Hernandez v. Badger Construction Equipment Co.* (2924) 28 Cal.App.4th 1791, 1830-1831 ["Compliance with regulations, directives or trade custom does not necessarily eliminate negligence but instead simply constitutes evidence for jury consideration with other facts and circumstances."]) But, by definition, the industry standard must be relevant to an assessment of the standard of care for the allegedly negligent action of the defendant. Drumwright's opinion that Defendants "actions were inconsistent with industry standards for corporate responsibility" does not qualify as evidence relevant to Defendants' negligence for two reasons.

2

First, Plaintiffs fail to dispute the fact that the industry standards cited by Drumwright do not "apply to Defendants, who are not members of the organizations that sponsor them." (Defs' Mot., at p. 9.) Drumwright relies on the codes of conduct of diverse industries that do not include social media companies – for example, marketing associations, advertising agencies, public relations professionals, information technology companies, and companies involved in cyber security. (Rep. at pp. 65-74.) Plaintiffs have failed to show that what Drumwright refers to as industry standards are meant to apply to the actions of the social media providers who are Defendants in this case.

In addition, the standards of corporate responsibility that Drumwright invokes do not set up a standard of care for the social media companies' interactions with minors that Plaintiffs claim are negligent. Courts have explained that experts "may opine about whether conduct fell below standards in the industry as long as that testimony is relevant to the particular claims at issue." (*In re Juul Labs, Inc. Marketing, Sales Practices and Products Liability Litigation* (N.D. Cal., June 2, 2022, No. 19-MD-02913-WHO) 2022 WL 1814440, at *20.) Here, Defendants are alleged to have breached a duty of care in adopting certain features that allegedly harm minors. Whether or not Defendants failed to meet a standard of corporate responsibility does not bear on the foreseeability of harm from Defendants' actions toward minor users. The following reasoning applied to similar testimony by Drumwright in a separate JCCP brought against Uber Technologies, Inc. (Uber) is persuasive and relevant to the admissibility of Drumwright's opinions in this proceeding:

> Dr. Drumwright's opinions … are based in large part on the "professional norms and standards" of numerous organizations … of which Uber is concededly not even a member and by which it is not bound. Over and over again, Dr. Drumwright opines that those standards imposed certain obligations on Uber which it "violated" or "did not meet" by its conduct. But if Uber had a duty to warn Plaintiffs of the risks of sexual assault on its platform, that duty would not stem from standards of marketing and advertising associations … , but rather from California law. Dr. Drumwright's opinions that these disparate organizations' standards give rise to duties or obligations on Uber's part in relation to its marketing, advertising, or corporate social responsibility practices are inadmissible.

(Simonsen Decl., Ex. D, at pp. 39-40.)

3

Several of Drumwright's opinions concern warnings that she contends should have been given. Again, the standards for when an actor has a duty to warn another are defined by California law, not by corporate responsibility guidelines or by industry recommendations for unrelated areas of corporate activity. Moreover, many of these opinions are stated as factual propositions – for example, that Defendants failed to disclose and warn that they had inadequate age management and gating. These are statements about what a Defendant did or did not do. Such "opinions" are merely a recounting of the facts alleged. Rather than presenting Drumwright's view of the facts, Plaintiffs must instead rely on percipient testimony and documentary evidence to show that Defendants failed to make certain disclosures. An expert may assist a jury in determining what occurred, but she may not—as Drumwright does here—supplant "the jury by *declaring* what occurred." (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1118, emphasis in original.)

Moreover, Drumwright is not an expert on warnings and how they should be given. She states this limitation clearly in her deposition. (Dep. at pp. 798-799.) Therefore, she is not qualified to address whether any disclosures that Defendants did make were sufficient.

Other opinions address what Defendants knew or believed – for example, that Meta failed to warn that it failed to implement certain features that it believed would have improved safety. This court has already concluded in connection with the testimony of other experts that an expert may not review Defendants' documents and offer an opinion about what Defendants knew and/or intended. (See Ruling on Defendants' General Causation Sargon Motions, Sept. 22, 2025, at p. 29.) "Courts routinely exclude expert testimony as to intent, motive, or state of mind as issues better left to a jury." (*Gold v. Lumber Liquidators, Inc.* (N.D. Cal. 2017) 323 F.R.D. 280, 294.) It would be improper for Drumwright to opine as to whether Defendants knowingly failed to meet certain standards of care. The "pseudo corporate social responsibility" opinions are thus inadmissible at trial. It is for the jury to determine what Defendants knew and/or intended.

Other testimony by Drumwright similarly consists of opinions on ultimate questions that must be determined by the jury and for which Drumwright's testimony would not be helpful. For example, Plaintiffs claim that Drumwright will offer her opinion that "Meta failed to create a policy against minor sexualization despite knowing that it was a significant issue on its platforms and failed to disclose and warn users, parents, and the public of risks of exploitation of minors on its platforms, portraying its platforms as safe." This opinion consists of (1) a conclusion as to Meta's knowledge/intentions, and (2) Drumwright's recounting of what she believes

4

the underlying facts are (i.e., that Meta failed to disclose certain risks). Both of these two components of the "opinion" are questions for the jury directly—not proper subjects for expert testimony. Moreover, this opinion appears to propose that Defendants should be held responsible for content on their websites, liability that is precluded by Section 230.

For these reasons, this court determines that the proffered opinions regarding Defendants' alleged failure to comply with "industry standards" is also inadmissible under Evidence Code section 352. Any relevance of expert testimony regarding "industry standards" is limited, given that a jury is capable of assessing the alleged failure to warn based on the underlying facts of this case. But admission of such testimony would "create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) Drumwright's testimony offers her opinions regarding (1) what Defendants did or failed to do, and (2) whether these actions/inactions violated a loose and inapplicable "industry standard." The testimony would likely confuse the jury by leading jurors to believe that, for example, a Defendant's failure to comply with "the University of Texas at Austin's 'Good Systems' initiative" would be equivalent to a failure to comply with duties imposed by California tort law.

5