UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708 | Case No.: 3:23-MD-03084-CRB<br><br>**JOINT LETTER REGARDING LYFT'S PRODUCTION OF DOCUMENTS IN RESPONSE TO PLAINTIFF'S SUBPOENA**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

December 24, 2025

Dear Judge Cisneros:

      Plaintiff and Lyft respectfully submit this joint letter regarding Lyft's Response to Plaintiff Dean's Subpoena for Production of Documents. This joint letter relates to the *Dean* bellwether case, which is set to begin trial on January 13, 2025. Plaintiff and Lyft attest that they have met and conferred but were unable to resolve their dispute without court action.

Respectfully,

By: /s/ *Sarah R. London*
    ROOPAL P. LUHANA (*Pro Hac Vice*)
    **CHAFFIN LUHANA LLP**
    600 Third Avenue, Fl. 12
    New York, NY 10016
    Telephone: (888) 480-1123
    Email: luhana@chaffinluhana.com

    SARAH R. LONDON (SBN 267083)
    **GIRARD SHARP LLP**
    601 California St., Suite 1400
    San Francisco, CA 94108
    Telephone: (415) 981-4800
    Email: slondon@girardsharp.com

    RACHEL B. ABRAMS (SBN 209316)
    **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
    555 Montgomery Street, Suite 820
    San Francisco, CA 94111
    Telephone: (415) 426-5641
    Email: rabrams@peifferwolf.com

    *Co-Lead Counsel for Plaintiffs*

By: /s/ *David Riskin*
    WARREN METLITZKY
    **CONRAD | METLITZKY | KANE LLP**
    217 Leidesdorff Street
    San Francisco, CA 94111
    Telephone:     (415) 343-7100
    Facsimile:      (415) 343-7101
    Email: wmetlitzky@conmetkane.com

    DAVID RANDALL J. RISKIN (*pro hac vice*)
    **WILLIAMS & CONNOLLY LLP**
    680 Maine Avenue, S.W.
    Washington, DC  20024
    Telephone:     (202) 434-5000
    Facsimile:      (202) 434-5029
    Email: driskin@wc.com

**Plaintiff's Position:** Plaintiff Dean served Lyft with a subpoena to produce documents on April 21, 2025. *See* Declaration of Simon S. Grille ("Grille Decl."), **Ex. 1**, Subpoena to Lyft.[1] Through conferral, Plaintiff agreed to limit her requests to seek: (1) reports of sexual harassment, sexual misconduct, or sexual assault received by Lyft relating to Ms. Dean's driver, Hassan Turay, and (2) incident reports and rider complaints received by Lyft regarding Turay. Grille Decl., ¶ 5. Lyft has refused to search for responsive documents. *Id.*, ¶ 6, **Ex. 2**. For the reasons discussed below, there is good cause to consider this dispute after the close of fact discovery in Ms. Dean's case.[2]

Prior complaints and reports of sexual misconduct are relevant to Turay's pattern of behavior and information that was available to Uber. As Lyft concedes, Uber and Lyft share information about drivers. The requested documents thus bear upon information that Uber knew or could have known about Turay, had it adequately investigated him. *See Doe v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 624 F. Supp. 3d 1292, 1298–99 (S.D. Fla. 2022) (admitting "evidence to show that Defendant was put on notice that Meyers presented a danger to his female students as early as 2008 and that the complaints and complainants were credible."). The Court has recognized that "whether Uber had reason to *believe* that a driver engaged in misconduct…might inform whether Uber reasonably should have taken further steps to protect passengers from that driver." ECF No. 3346 (emphasis in original).

Complaints Lyft received may describe instances when Turay engaged in similar misconduct and can identify pattern witnesses. *Bunn v. Dash*, No. CV 20-7389-DMG (JCX), 2021 WL 1234717, at *2 (C.D. Cal. Feb. 24, 2021) ("allegations relating to Dash's past sexual behavior and other claims of sexual assault against him are not irrelevant."). Lyft speculates that responsive information might be inadmissible under Rule 404(b)(1). But it is well-settled that "[i]nformation within th[e] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26. And even if inadmissible for propensity, the documents may be admissible for other purposes, such as knowledge or *modus operandi*. Fed. R. Ev. 404(b)(2); *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009) ("Rule 404(b) is a "rule of inclusion ... [; u]nless the evidence of other crimes tends only to prove propensity, it is admissible.") (alteration in original); *United States v. Barnason*, 852 F. Supp. 2d 367, 373 (S.D.N.Y. 2012) ("Evidence of Barnason's status as a Level III sex offender is admissible to establish both the Katz Defendants' level of intent, recklessness or negligence and state of mind as well as Barnason's propensity to commit the alleged acts."); *Dosier v. Miami Valley Broad. Corp.*, 656 F.2d 1295, 1300 (9th Cir. 1981) ("Evidence of prior acts may clearly be used to establish the existence of a pattern or scheme."). The documents are also "relevant to the question of punitive damages, as this evidence is highly probative of the state of mind of the…Defendants." *Barnason*, 852 F. Supp.2d at 373.

Even if some portion of the documents are inadmissible under Rule 404, "Rule 415 has been held to be applicable to claims against employers, 'without regard to whether the alleged victim or person accused is a party to the litigation.'" *James v. Tilghman*, 194 F.R.D. 398, 401 (D. Conn. 1999). That Turay is not a defendant does not bar application of Rule 415 in this case, where Plaintiff brings vicarious liability claims against Uber. *See Cleveland v. KFC Nat. Mgmt. Co.*, 948 F. Supp. 62, 64 (N.D. Ga. 1996) ("[T]o accept defendant's argument would put employees who are the victims of sexual misconduct on a disparate ground from other victims of sexual misconduct."). Pattern evidence is

---

[1] Each of the bellwether Plaintiffs served Lyft with a similar subpoena. Given the imminence of Ms. Dean's trial, Plaintiffs agreed to prioritize production of documents related to Ms. Dean's Uber driver and defer production related to drivers in the other bellwether cases.

[2] Contrary to the accusation in Lyft's footnote, Plaintiff abided by the procedures in PTO 8 and the agreement of counsel relating to the exchange of drafts. Grille Decl., ¶ 8.

1

particularly important here, where Uber has questioned Ms. Dean's credibility and credits Turay's argument that their sexual interaction was consensual. *See* ECF No. 4356 at 8 ("Turay maintains that the encounter was consensual."); *Gwen H. v. Foreman*, 766 F. Supp. 3d 976, 983 (C.D. Cal. 2025) (Corroborating "evidence is necessary where there is a suggestion that the plaintiff has fabricated the claims, or when there are other attacks on the plaintiff's credibility."); *Barnason*, 852 F. Supp. 2d at 374 ("[E]vidence of prior sex crimes can be admitted to bolster or undermine witnesses' credibility.").

While Lyft objects that responsive documents may be hearsay, it asserts this objection in a vacuum, preventing any meaningful analysis as to whether it applies or whether the documents would be admissible under an exception. *See Gypsum Res., LLC v. Clark Cnty.*, 674 F. Supp. 3d 985, 1003 (D. Nev. 2023), *appeal dismissed,* No. 23-15924, 2024 WL 5274612 (9th Cir. July 24, 2024) ("Objections based on hearsay are particularly context-specific."). The documents can also identify witnesses, and the Court has ruled that a rider could testify to their personal knowledge of the incident that gave rise to a complaint. ECF No. 3346. Lyft's generalized confidentiality objection fares no better. Documents produced by nonparties in this action are subject to the Protective Order. ECF No. 176, ¶ 9; *Am. Broad. Companies, Inc. v. Aereo, Inc.*, No. CV-12-80300-RMW, 2013 WL 1508894, at *3 (N.D. Cal. Apr. 10, 2013) ("Aereo offers no specific explanation regarding how these measures fail to safeguard information produced by [nonparty] Google."). Numerous documents have already been produced relating to Mr. Turay and in accordance with the Protective Order. To the extent Lyft has concerns about disclosing the identities of complainants, the Court has already ordered a procedure for addressing those concerns. *See* ECF Nos. 3346, 3410. Unlike the trade secret misappropriation case that Lyft cites, the subpoena here does not request commercially sensitive information, such as "analysis of Lyft as a potential acquisition target by Waymo." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *1 (N.D. Cal. July 7, 2017).

Finally, Lyft objects that Plaintiff's requests are unduly burdensome, but it fails to substantiate any burden. *See Shaw v. Experian Info. Sols., Inc,* 306 F.R.D. 293, 301 (S.D. Cal. 2015) (objecting party must provide "sufficient detail regarding the time, money, and procedures required to produce the requested documents"); *Am. Broad. Companies*, 2013 WL 1508894, at *4 ("The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed."); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("As an initial matter, general or boilerplate objections such as "overly burdensome and harassing" are improper—especially when a party fails to submit any evidentiary declarations supporting such objections.").

Good cause exists to consider this dispute after the discovery cut-off. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-05944SC, 2015 WL 13655173, at *4 (N.D. Cal. Aug. 6, 2015) ("Under the Federal Rules of Civil Procedure and the Northern District of California Local Rule 37-3, an untimely motion to compel may be excused for good cause shown."); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (good cause standard "primarily considers the diligence of the party seeking" relief). Plaintiff served Lyft with the subpoena well before the discovery cut-off. Grille Decl., ¶ 3. Lyft objected and refused to search for any documents. Grille Decl., ¶ 6. Beginning in June 2025, Plaintiff conferred with Lyft as to the scope of production and to minimize burden. Grille Decl., ¶ 4. Plaintiff and Lyft reached an impasse after the discovery cut-off, on December 8. Grille Decl., ¶ 7; ECF No. 4123. Plaintiff thus acted diligently in the face of Lyft's refusal to respond to any of Plaintiff's requests by attempting to resolve this dispute without court intervention, narrowing her requests, and agreeing to accept responses after the cut-off. *See In re CRT*, 2015 WL 13655173, at *4 (finding good cause in part because plaintiffs "were attempting to resolve their discovery dispute with defendants without resort to a motion to compel"); *AML Grp. Ltd. v. McCrane Inc*, No. C 13-01716 MMC (LB), 2014 WL 2735019, at *1 (N.D. Cal. June 15, 2014) (finding good cause where responding

2

party "did not answer the discovery requests at all" and moving party agreed to extend the time for responses until after the discovery-cut-off); *see also F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997) (petition to enforce administrative subpoena was timely even though it was brought two years after issuance, when subpoenaed party "failed to cooperate and ignored all requests to comply with the subpoenas").

Upon reaching an impasse, Plaintiff promptly requested that Lyft proceed under the Court's Joint Letter procedure and raised that issue with the Court when Lyft declined. ECF No. 4177. Lyft cannot claim any prejudice from responding after the cut-off, while Plaintiff will be prejudiced by being deprived of probative evidence. The importance of the requested documents, moreover, is amplified by Uber's attacks on the credibility of other Uber passengers who raised allegations of sexual misconduct against Turay and its recent motion *in limine* to exclude those complaints. *See* ECF No. 4686 at 23. Similar complaints in Lyft's possession are essential to assessing the validity of Uber's attacks and evaluating information available to Uber regarding Mr. Turay. Finally, each bellwether Plaintiff has requested similar documents from Lyft, as will future bellwether plaintiffs, so there is good reason to address this dispute now, particularly when it serves the interest of ensuring that evidence presented in the first bellwether is representative of future trials. *See In re CRT*, 2015 WL 13655173, at *4 ("The undersigned also finds good cause in excusing the DAPs' delay in filing these motions because resolving this dispute will promote discovery and may facilitate proof at trial.").

For these reasons, Plaintiff respectfully requests that the Court compel Lyft to produce responsive documents on an expedited basis.

**Lyft's Position:** Plaintiff asks the Court to compel a third party to provide information not relevant to the claims or defenses in her action, after the close of fact discovery (and following much delay) and on a truncated timeline.  There is no warrant for this relief.[3]

*First*, Plaintiff's motion is untimely, as Plaintiff concedes by arguing that the Court should consider this matter after the discovery cut off.  Proceeding now would require Plaintiff to demonstrate good cause, including by showing she acted with diligence.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  Plaintiff cannot.  Consider:  Lyft served its objections to Plaintiff's subpoena on May 1, 2025, almost eight months ago.  Plaintiff sought to confer with Lyft on October 10, 2025[4]—*after*, Lyft now understands, the Wave 1 fact discovery cut-off. (Notably, Plaintiff did not inform Lyft that discovery had closed.)  She cites *FDIC v. Garner* for the proposition that a two-year delay in enforcing a subpoena was not untimely, but that case involved an administrative proceeding and no fact discovery cutoff.  126 F.3d 1138, 1146 (9th Cir. 1997).  Nor is Lyft aware of any intervening facts that prevented Plaintiff from addressing her subpoena with Lyft or the Court in the many months between Lyft's response and the close of discovery.  Plaintiff has not identified any.  That the parties continued discussing the matter *after* the discovery cut off is no demonstration of Plaintiff's diligence.

---

[3] Apparently professionalism takes a rest on Christmas Eve:  Plaintiff's counsel made significant edits— including by adding new arguments—less than two hours before the parties agreed to file the brief, on the holiday evening, without prior notice to Lyft's counsel.

[4] Counsel's declaration references a June discussion about the subpoena between Lyft and a different law firm.  Counsel tellingly does not identify that firm, the content of the discussions, or even state anything other than counsel's "understand[ing]."  In all events, there is no dispute that Plaintiff's current counsel waited until *after* the end of discovery to raise issues with the subpoena.  That is not diligence.

And her delay in proceeding undermines her purported need for the information the subpoena seeks.

*Second*, the material Plaintiff demands—prior reports to Lyft of alleged sexual assault or misconduct by, or passenger complaints about, Hassan Turay—is not relevant. Critically, Plaintiff does not contend Uber actually knew or could have known the type of information she seeks, and that is dispositive. The Court already has held prior complaints about a driver are "unlikely to be directly relevant" absent some indication Uber was aware of them:

> Whether a driver actually engaged in prior sexual misconduct is unlikely to be directly relevant to Plaintiffs' claims here. The question more likely to be relevant—speaking generally, and not resolving the specific elements of any claim—is whether Uber had reason to believe that a driver engaged in misconduct, which might inform whether Uber reasonably should have taken further steps to protect passengers from that driver.

(Order (June 25, 2025) [ECF 3346], at 2.) Plaintiff does not distinguish the Court's prior ruling. Perhaps the information could be relevant *if* Uber had knowledge of it—but if Uber had knowledge of it, then Plaintiff could have obtained it from Uber. Simply, her circular relevance theories make no sense.

Plaintiff's primary argument is that reports to Lyft of Turay's alleged misconduct on the Lyft platform could be "pattern evidence." But this runs headlong into Rule of Evidence 404(b)(1), which prohibits admission of prior acts to establish propensity. Plaintiff offers that Lyft's information might identify "instances when Turay engaged in similar misconduct." That is exactly the type of evidence Rule 404(b)(1) holds inadmissible. Plaintiff hypothesizes a non-propensity purpose for any reports, but that is makeweight. Her reference to "knowledge" founders on the fact that Uber would not know the content of *Lyft's* documents; that answers the misplaced "punitive-damages" theory too. Nor does Plaintiff explain how *modus operandi* evidence would be relevant here. Her related suggestion that Lyft's documents will "identify witnesses" makes little sense, given that Lyft understands the parties already exchanged witness lists. (This, of course, highlights the untimeliness of Plaintiff's motion.)[5]

Plaintiff embraces Federal Rule of Evidence 415 as an antidote, but it has no application here. By its plain terms, that Rule addresses the admissibility of evidence that a "*party*" committed a sexual assault—which Turay is not. Courts hold Rule 415 does not govern where the person accused of sexual assault is not a party to the proceeding. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000) (holding that for Rule 415 to apply, "the defendant must be accused of an offense of sexual assault"); *see also, e.g.*, *Blind-Doan v. Sanders*, 291 F.3d 1079, 1082–83 (9th Cir. 2002) (describing application of Rule 415 "in a civil case predicated on the *defendant's* alleged commission of an offense of sexual assault " (emphasis added)); *J.S. by & through N.S. v. Child of Am., Inc.*, 696 F. App'x 39, 41 (2d Cir. 2017) ("The text of Rule 415 speaks only about admission of evidence of sexual assault or child molestation committed by a 'party.'").

Several of Plaintiff's own cases hold the same thing. *See Bunn v. Dash*, 2021 WL 1234717, at *2 (C.D. Cal. Feb. 24, 2021) (describing Rule 415 as "permitting use of evidence that *defendant* committed other sexual assault" (emphasis added)); *Gwen H. v. Foreman*, 766 F. Supp. 3d 976, 981 (C.D. Cal. 2025) ("Rule 415 applies to evidence when ... the defendant is accused of an offense of sexual assault or child molestation"). Instead of the Ninth Circuit's binding plain reading of Rule 415,

---

[5] Plaintiff's witness theory raises confidentiality concerns, insofar as individuals who may have reported to Lyft have no interest in being identified in a public proceeding.

Plaintiff cites 25- and 30-year-old district court cases, *James v. Tilghman*, 194 F.R.D. 398 (D. Conn. 1999) and *Cleveland v. KFC National Management Co.*, 948 F. Supp. 62 (N.D. Ga. 1996), that applied Rule 415—contrary to the Rule's plain language—when the accused was not a party. *Cleveland* arose in the Title VII context where individual liability is not permitted (unlike in cases involving allegations of sexual assault), 948 F. Supp. at 65–66, and *James* cited *Cleveland* and a case involving application of Federal Rule of Evidence 412, not Rule 415, 194 F.R.D. at 401 (quoting *Truong v. Smith,* 183 F.R.D. 273, 274 (D.Colo.1998)). Rule 415 also would not support admission of reports addressing conduct other than allegations of sexual assault. *Carroll v. Trump*, 660 F. Supp. 3d 196, 208 (S.D.N.Y. 2023).

As a fallback, Plaintiff contends that reports to Lyft about Turay's alleged misconduct on the Lyft platform is relevant in this action against Uber because Uber could have learned the information if it "adequately investigated" Turay. The chain of speculative assertions underlying that argument is extensive, and Plaintiff has not shown (among other things) Uber simply can "learn" any information in Lyft's possession. Uber and Lyft, of course, created the Industry Sharing Safety Program to exchange, through a third-party administrator, information about drivers one entity permanently deactivated, and this undermines Plaintiff's fallback relevance theory. For one thing, the Program underscores what information of Lyft's Uber may learn (which is not what Plaintiff demands in her subpoena). For another, the Program would point, at most, to Uber as the target of discovery in the first instance (for any Lyft information Uber received), then perhaps to the administrator. Not to Lyft.

Plaintiff, of course, bears the burden of establishing the relevance of the material she demands in her subpoena—which she has not done. *See Optimize Tech. Sols., LLC. v. Staples, Inc.*, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014). But even had she cleared this dispositive threshold hurdle, it would be insufficient, as relevance alone is not enough to require a third party to produce documents. "The mere relevance standard does not apply to nonparties. A party seeking to obtain discovery from a nonparty must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." *Vena v. Moore, Schulman & Moore, APC*, 2023 WL 6194315, at *3 (S.D. Cal. Mar. 24, 2023) (quotations omitted and alterations adopted). "Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance." *In re Subpoena to Kingswood Cap. Mgmt., L.P.*, 2024 WL 5423804, at *2 (C.D. Cal. Dec. 16, 2024) (quotation omitted).

Plaintiff's strained relevance arguments counsel against production; so too does Plaintiff's delay in pursuing her subpoena undermine the purported need for the materials. Further, characteristics of the documents Plaintiff demands underscore why requiring Lyft even to search for the material would be burdensome. Most significantly, any reports of Turay's alleged conduct would be hearsay, a point Plaintiff does not dispute. And although hearsay status generally is not an impediment to discovery, here, where Plaintiff seeks to force a third party to provide irrelevant (or, at-best-minimally-relevant) information, the fact that information will be inadmissible bears on the balancing test. (This is to say nothing of the fact that any reports to Lyft about Turay's alleged conduct seemingly would necessitate individual adjudication as to accuracy and similarity. *See Vasquez v. City of Long Beach*, 2016 WL 9114912, at *3 (C.D. Cal. Apr. 19, 2016). Separately, Plaintiff's subpoena seeks production of confidential material from Uber's competitor, a circumstance the protective order cannot remedy. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2929439, at *3–4 (N.D. Cal. July 7, 2017).

Through its motion, Plaintiff demands that a third party produce information that does not bear on the claims or defenses in this proceeding, long after Lyft understands fact discovery closed, on a compressed timeline over the holidays. There is no basis as a matter of procedure or substance for this relief, and the Court should deny Plaintiff's untimely discovery motion.

## ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

DATED: December 24, 2025

>                  */s/ Simon S. Grille*
>                  Simon S. Grille

## CERTIFICATE OF SERVICE

On December 24, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Federal Rule of Civil Procedure 5(a) and Local Rule 5-1 have been so served.

                                                                                      */s/ Simon S. Grille*
                                                                                      Simon S. Grille