1   Laura Vartain Horn (SBN 258485)
    **KIRKLAND & ELLIS LLP**
2   555 California Street, Suite 2700
    San Francisco, CA 94104
3   Telephone: (415) 439-1625
    laura.vartain@kirkland.com
4
5   Jessica Davidson (Admitted *Pro Hac Vice*)
    Christopher D. Cox (Admitted *Pro Hac Vice*)
    **KIRKLAND & ELLIS LLP**
6   601 Lexington Avenue
    New York, NY 10022
7   Telephone: (212) 446-4800
    jessica.davidson@kirkland.com
8   christopher.cox@kirkland.com
9   Allison M. Brown (Admitted *Pro Hac Vice*)
    **KIRKLAND & ELLIS LLP**
10  2500 Market Street, Suite 1000
    Philadelphia, PA 19103
11  Telephone: (215) 268-5000
    alli.brown@kirkland.com
12
    *Attorneys for Defendants*
13  UBER TECHNOLOGIES, INC.;
    RASIER, LLC; and RASIER-CA, LLC
14
15
16
17                    **UNITED STATES DISTRICT COURT**
18                 **NORTHERN DISTRICT OF CALIFORNIA**
19                      **SAN FRANCISCO DIVISION**

20  IN RE: UBER TECHNOLOGIES, INC.,        Case No. 3:23-md-03084-CRB
    PASSENGER SEXUAL ASSAULT
    LITIGATION                             **DEFENDANTS UBER TECHNOLOGIES,**
21                                         **INC., RASIER, LLC, AND RASIER-CA,**
                                           **LLC'S REPLY IN SUPPORT OF MOTION**
22                                         **REGARDING FRAUDULENT PLAINTIFF**
                                           **FACT SHEETS**
23  This Document Relates to:
                                           Date:        February 13, 2026
24  ALL CASES                              Time:        10:00 a.m.
                                           Courtroom:   6 – 17th Floor
25
26
27
28

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................................1

ARGUMENT....................................................................................................................6

I.  PLAINTIFFS' COUNSEL'S ARGUMENT THAT UBER KNEW ABOUT THE
    FRAUD IS WITHOUT MERIT. ..........................................................................6

    A.  Failure to Submit a Verification Did Not Tell Uber That a Plaintiff Did
       Not Review His or Her Fact Sheet.............................................................6

    B.  This Court's Orders Require Plaintiffs, Not Just Plaintiffs' Counsel, to
       Review Their Completed Fact Sheets........................................................8

    C.  Plaintiffs' Materiality Argument Is Incorrect. ..........................................8

    D.  Uber's Defense Fact Sheet Process Is Irrelevant. .....................................9

    E.  Contrary to Kherkher Garcia's Representation, Its Submission of
       Fraudulent Materials Is Anything But an "Isolated Incident." ...............10

    F.  Dismissal of These Plaintiffs With Prejudice Is Necessary and Warranted. .........12

II.  THE COURT HAS JURISDICTION TO ORDER UBER'S REQUESTED
     DEPOSITIONS, PARTICULARLY IN LIGHT OF PLAINTIFFS' DISCOVERY
     MISCONDUCT. ................................................................................................13

CONCLUSION................................................................................................................14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Celsius Holdings, Inc. v. A SHOC Beverage, LLC*,
No. 21-80740-CV, 2022 WL 3568042 (S.D. Fla. July 19, 2022), *aff'd in part, vacated in part, remanded*, No. 22-12687, 2025 WL 2887300 (11th Cir. Oct. 10, 2025) ...................................................................................................................14

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991).........................................................................................................14

*In re Deepwater Horizon*,
907 F.3d 232 (5th Cir. 2018) .........................................................................................3

*In re Exxon Valdez*,
102 F.3d 429 (9th Cir. 1996) ........................................................................................13

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
496 F.3d 863 (8th Cir. 2007) ........................................................................................12

*Jane Doe 693827 v. Uber Technologies, Inc., et al.*,
No. 3:24-cv-09515-CRB (N.D. Cal. Aug. 28, 2025), ECF No. 9...............................10

*In re Mirena IUD Prods. Liab. Litig.*,
No. 13-MD-2434, 2015 WL 10433457 (S.D.N.Y. Mar. 5, 2015) ...............................12

*In re Nimitz Techs.*,
No. 2023-103, 2022 WL 17494845 (Fed. Cir. Dec. 8, 2022)......................................14

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) .....................................................................................12

*In re Silica Prods. Liab. Litig.*,
398 F. Supp. 2d 563 (S.D. Tex. 2005) ...........................................................................2

*In re Taxotere (Docetaxel) Prods. Liab. Litig.*,
966 F.3d 351 (5th Cir. 2020) .......................................................................................12

*In re Zicam Cold Remedy Mktg., Sales Pracs., & Prods. Liab. Litig.*,
No. 09-md-2096, 2011 WL 3438862 (D. Ariz. Aug. 5, 2011) .....................................12

*Zow v. Regions Fin. Corp.*,
595 F. App'x 887 (11th Cir. 2014) ...............................................................................14

**Rules**

Fed. R. Civ. P. 11.................................................................................................................13

Fed. R. Civ. P. 26(g) .............................................................................................................4

Fed. R. Civ. P. 37................................................................................................................13, 14

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Civ. P. 37(b)(2)(A)(v) ..............................................................................................14

Fed. R. Civ. P. 83(b) ............................................................................................................14

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

Using click-bait ads like the ones below (which comes from Nachawati Law Group, a firm at issue in this motion), stating "Qualify Now For Large Settlement!" Plaintiffs' counsel signed up hundreds of Plaintiffs for this litigation:



ECF 4456 at 5; *see also id.* at 12 (citing Total Injury Help, *Rideshare Assault – Free Case Evaluation*, https://www.rideshareassaultjustice.com/ (last visited Nov. 19, 2025)).

These and similar ads promised "no paperwork" and "no hassle" (neither of which is possible in litigation) and dangled a "$9 million settlement." ECF 4456 at 12. The ads were a great success from Plaintiffs' counsel's perspective—the Nachawati firm, for example, attracted hundreds of plaintiffs.

Given the manner in which many Plaintiffs were recruited, it was predictable that Plaintiffs' counsel would lose contact with the 73 Plaintiffs at issue in this Motion. But then litigation deadlines came, and Plaintiffs' counsel faced a choice. Should they respond to discovery on behalf of the missing Plaintiffs, indicating it had been "completed" by the Plaintiffs, but without telling the Court and Uber that they had lost contact with Plaintiffs? Or should they let Uber and the Court know the truth: that all of these Plaintiffs had gone missing?

Plaintiffs' counsel opted for the former. They served discovery that said it had been "completed" by Plaintiffs without disclosing the Plaintiffs were missing, and they hoped that one day

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS

Case No. 3:23-MD-3084-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the Plaintiffs might resurface. And now that the fraud has been uncovered, Plaintiffs' counsel ask that the Plaintiffs be dismissed without prejudice and with no other consequences. Predictably, Plaintiffs' counsel seek to impose no bar on these dismissed-without-prejudice Plaintiffs being signed up by new law firms, as has occurred repeatedly throughout this litigation.[1]

Plaintiffs' proposal would create enormous negative consequences for this litigation. It would mean that Plaintiffs' counsel can (1) sign up hundreds (or thousands) of "Plaintiffs" through click-bait advertising mentioning "large settlements"; (2) then, when their clients predictably go missing and cannot respond to even the minimal discovery requirements applicable to non-bellwether Plaintiffs, respond to discovery on those Plaintiffs' behalf without telling the Court or Uber the Plaintiffs were absent; and (3) face a maximum consequence of dismissal without prejudice, meaning the same Plaintiffs can be shifted to other law firms who will file a new complaint on their behalf, as has already occurred repeatedly. If this fraudulent conduct is permitted to continue without further consequences, these click-bait ads—and the number of resulting non-participating Plaintiffs—will increase significantly.

Plaintiffs state that "[s]urvivors frequently disengage because legal proceedings are overwhelming, retraumatizing, and perceived as unlikely to deliver justice." ECF 4751 at 7 (citation omitted). But not everyone who signed up for litigation after clicking on ads mentioning $9 million settlements, "no paperwork," and/or "no hassle" has meritorious claims. And if a Plaintiff "disengages," the solution is for Plaintiffs' counsel to disclose to the Court and Uber that they have disengaged, not to falsely represent that a discovery response has been "completed" by a Plaintiff. *See In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636 (S.D. Tex. 2005) (the court's need to focus

---

[1]    For example, MDL ID 1384, a Plaintiff dismissed without prejudice for failure to comply with the Court's order, *see* ECF 3130, is now proceeding under MDL ID 2774 with new counsel. She is now alleged to be unresponsive to her Kherkher Garcia counsel, *see infra* at I.E.

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

on fraud also prejudices the rights of claimants who have complied with their discovery obligations and undermines their "full and meaningful access to the courts"); *see also In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018) (fraudulent conduct "hamper[s] the resolution of meritorious claims by real plaintiffs").

Plaintiffs' responses are notable for what they concede. Plaintiffs' counsel do not deny that they submitted 73 Plaintiff Fact Sheets ("PFS") to Uber and the Court and represented they had been "completed" by Plaintiffs, when in fact those Plaintiffs had never reviewed them. *See* ECF 348-1 at 3 ("**The Plaintiff completing this Plaintiff Fact Sheet** is under oath and must provide information that is true and correct to the best of her or his knowledge, information, and belief."); *see also* ECF 4287 at 15 (same).

Plaintiffs' counsel also do not deny that these representations were false. The 73 Plaintiffs did not, in fact, complete their PFS. Nor could they. The 73 Plaintiffs were missing when the PFS at issue were submitted by Plaintiffs' counsel.

Instead, Plaintiffs' main argument is that Uber knew about the fraud from the beginning. *See* ECF 4750 at 4 (Williams Hart & Boundas LLP arguing that its "upload[ing] amended PFS for these Plaintiffs without the verifications" "ma[de] it clear that the Plaintiffs had not yet reviewed the submitted PFS"). That argument is overwhelmingly contradicted by the record in this case:

- The 73 PFS were served by Plaintiffs' counsel from June 24 to August 20, 2025. Each one stated that it was "complet[ed]" by the "Plaintiff." *See* ECF 4287 at 15.

- The 73 PFS were part of a larger group of 216 PFS that, as of October 20, 2025, had been served on Uber without the required verifications. ECF 4203-1 ¶ 5.

- On October 22, 2025, Uber filed its Amended Motion to Dismiss Cases for Failure to Comply with PTO 10. In that motion, Uber made plain that (1) it was *concerned* that the PFS subject to that motion had been served without Plaintiff review; (2) it did not *know* that the PFS had

been served without Plaintiff review, ECF 4203 at 4 ("Plaintiffs' failure to serve a verification at the time they amended it raises the real possibility, however, that counsel for more than 200 *Plaintiffs may have amended and served a new PFS without Plaintiffs' involvement at all.*" (emphasis added)); and (3) Uber *asked the Court to order Plaintiffs to disclose the truth* about whether the PFS had been served without client review. ECF 4203 at 13 (asking that "given the uncertainty the lack of verifications has created about whether Plaintiffs' counsel actually consulted the plaintiffs in amending the PFS at issue here, this Court should order counsel to provide a Rule 26(g) certification" detailing which Plaintiffs reviewed their PFS before it was served).

- The Court granted Uber's motion, dismissing the cases subject to the motion without prejudice and ordered Plaintiffs' counsel to "serve a Rule 26(g) certification within 14 days of the date of this Order identifying on separate lists: (i) which plaintiffs reviewed the amended PFS before it was served, and (b) which plaintiffs did not review the amended PFS before it was served." ECF 4442.

- *Only after the Court ordered this disclosure* did Plaintiffs' counsel disclose on December 3, 2025 that the 73 Plaintiffs subject to Uber's instant motion did not review their PFS before it was served. ECF 4508 (Kherkher Garcia LLP stating "Plaintiff Jane Doe 691046, MDL ID 3067, **did not** review the amended PFS before it was served" (emphasis original)); ECF 4522; ECF 4512 (Williams Hart & Boundas LLP stating that 24 Plaintiffs "did not review their most recently amended PFS before it was served via MDL Centrality").

- Plaintiffs' counsel argues that Uber knew about the fraud because the PFS in question were not verified. But Plaintiffs' counsel repeatedly represented to Uber and this Court that the absence of a Plaintiff verification does not indicate whether or not Plaintiffs reviewed their PFS. Of the 92 Plaintiffs who did not submit verifications from the 3 firms subject to Uber's

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

October 22 Amended Motion to Dismiss, Plaintiffs' counsel certified that (1) 19 *had* reviewed their PFS and (2) 73 *had not* reviewed their PFS. For example, WHB stated that "[t]he two Plaintiffs listed below appear on Exhibit A to the Court's Order. *These Plaintiffs reviewed their most recently amended PFS before it was served via MDL Centrality . . . .*" ECF 4512 at 4 (emphasis added). These are two Plaintiffs—Jane Doe WHB 1549 and Jane Doe WHB 1596—who have *not provided verifications* but were represented by Plaintiffs' counsel on December 3 to have *reviewed their PFS*. Accordingly, Uber did not include these two Plaintiffs in this Motion, filed on December 6. This Motion is not based on whether Plaintiffs provided verifications but whether Plaintiffs reviewed their PFS, in part because Plaintiffs' counsel have said some Plaintiffs who did not provide verifications did review their PFS. Based on Plaintiffs' counsel's own statements, whether a Plaintiff signed a verification is not at all dispositive of whether or not they reviewed their PFS before service. The only way Uber learned the truth was through persistent motion practice—*i.e.*, by filing a motion asking the Court to order Plaintiffs to answer the basic question whether Plaintiffs reviewed their PFS.

The oppositions to Uber's Motion Regarding Fraudulent Plaintiff Fact Sheets also contain deflections to alleged issues with Uber's Defendant Fact Sheets, arguments about inapposite federal rules, and excuses that even though Plaintiffs' counsel did amend answers and sign their clients' names to PFS without their clients' review, those PFS were somehow less fraudulent because counsel had lost contact with its clients. What the oppositions do not contain is any provision, federal rule, or court order that would permit Plaintiffs' counsel to submit fact sheets (the only form of discovery currently permitted on non-bellwether Plaintiffs in this MDL) without their clients reviewing them at all.

Williams Hart & Boundas LLP ("WHB") does not deny it submitted fact sheets without Plaintiffs' review—nor could it, given its certification, ECF 4512—but argued only that (1) certain of its amendments were not "material" and (2) the fact Plaintiffs did not sign their counsel-authored PFS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

means Uber should have understood (notwithstanding each PFS's statement that the PFS was "completed" by each Plaintiff, and that Plaintiffs' counsel contends that multiple non-verified PFS *were* reviewed) that no Plaintiff reviewed the statements therein. Nachawati Law Group similarly sidestepped its certification to the Court that it submitted unreviewed PFS, ECF 4522, and focused on incorrect arguments about available remedies and irrelevant statements about Uber's Defendant Fact Sheet process. Finally, Kherkher Garcia argued in opposition that its changes were "clerical." ECF 4742. None of these responses address the core issue head on: Uber and this Court can no longer assume that any PFS or amended PFS these firms served contains the statements of the Plaintiffs. The integrity of the system is compromised when it comes to these 3 firms, which is why Uber has requested dismissal with prejudice of the 73 Plaintiffs subject to the motion, depositions of 5 Plaintiffs, and a certification requirement for these firms and their clients to ensure that the firms' other clients know what their attorneys are alleging under cover of their Plaintiffs' names. These remedies offer the only path forward that would allow Uber and the Court to know that the statements made in PFS from now on are actually reviewed by the Plaintiffs on whose behalf they are served.

## ARGUMENT

I.    **PLAINTIFFS' COUNSEL'S ARGUMENT THAT UBER KNEW ABOUT THE FRAUD IS WITHOUT MERIT.**

    A.    **Failure to Submit a Verification Did Not Tell Uber That a Plaintiff Did Not Review His or Her Fact Sheet.**

In their oppositions, Plaintiffs' counsel argue that because counsel had not provided a verification for the Plaintiffs at issue, Uber already knew that those Plaintiffs had not reviewed their amended PFS. *See* ECF 4750 at 10 ("Absent a verification, there is no representation or 'statement' by the Plaintiff, and certainly not by Plaintiff's counsel[,] that the Plaintiff completed and reviewed the PFS."). But counsel has previously represented to Uber and the Court that (1) review by Plaintiffs is separate from (2) verification. For the 3 firms subject to Uber's instant motion, 92 Plaintiffs were

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

1
2
3
4
5
6
7

dismissed without prejudice by the Court's Order. Of those 92 Plaintiffs—none of whom had submitted verifications at the time of Uber's October 22, 2025 Motion—counsel for the 3 firms represented that 19 had reviewed their PFS and 73 had not reviewed their PFS. *See, e.g.*, ECF 4512 at 4 (WHB statement that 2 Plaintiffs who had not submitted verifications had reviewed their most recently amended PFS before it was served via MDL Centrality). Based on Plaintiffs' counsel's own statements, some Plaintiffs who were missing verifications nonetheless reviewed their PFS.

8
9
10
11
12
13
14
15
16
17

The fact that as of October 20, 2025, 216 Plaintiffs failed to provide verifications (including the 73 Plaintiffs at issue in this motion) motivated Uber to ask the Court to order Plaintiffs to *disclose* whether they had reviewed the PFS. ECF 4203 at 4 (noting that Plaintiffs' failure to submit a verification along with amended PFS "raises the real possibility" that counsel "may have amended and served a new PFS without Plaintiffs' involvement at all"). Prior to Uber filing its motion to dismiss, counsel would not tell Uber one way or another whether Plaintiffs had reviewed the PFS at issue. ECF 4203-1 at 1-2. That refusal and obfuscation is what led to the Court's order for disclosure statements about Plaintiffs' review of their PFS. At this stage, Uber can no longer rely on any PFS as having been reviewed by Plaintiffs.

18
19
20
21
22
23
24
25
26
27

Here, Plaintiffs' counsel represented that the PFS had been "completed" to meet a deadline for Plaintiffs who were missing. PTO 10 already contemplates a 30-day period for cure or conferral when Uber serves a Notice of Overdue Discovery on a given Plaintiff. ECF 4287 at 8. Each amended PFS at issue here came on the heels of such a notice. Plaintiffs' counsel could not reach missing clients to review the PFS within the first 30-day notice period for a PFS deficiency, so instead of dismissing the case or seeking an extension, counsel amended the PFS without Plaintiff's review and hoped it could find its client before its time ran out under the Court's orders. If Plaintiffs' counsel's clients had remained active, engaged, and willing to participate in this litigation—litigation that each client

28

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

undertook against Uber as an individual case—then Plaintiffs' counsel should never have needed to submit an amended PFS without verification.

### B. This Court's Orders Require Plaintiffs, Not Just Plaintiffs' Counsel, to Review Their Completed Fact Sheets.

The requirement for Plaintiffs to review their completed fact sheets is undisputed. As ordered by this Court in March 2024, and as reaffirmed in the Court's Amended PTO 10 as recently as November 2025, the PFS itself instructs Plaintiffs to complete their fact sheets. ECF 348-1 at 3 (referring to "[t]he Plaintiff completing this Plaintiff Fact Sheet"); ECF 4287 at 15 (same).

The PFS does not require, nor does it even designate a space for, the signature of counsel. Here, however, Plaintiffs' counsel made attorney statements in these PFS but stated they had been "completed" by Plaintiffs.

### C. Plaintiffs' Materiality Argument Is Incorrect.

Plaintiffs' counsel WHB includes in its opposition a list of *some* of the deficiencies it says it addressed when it amended PFS on behalf of unresponsive clients, arguing they are immaterial. As an initial matter, the fact Plaintiffs' counsel do not and cannot argue that *all* PFS amendments Uber raised in its opening motion are immaterial shows that Plaintiffs' counsel cannot be allowed to police its own verification and PFS review practices. There are two additional problems with this argument: 1) WHB attempts to minimize the importance of its PFS amendments, and 2) the supposed "materiality" of amendments is not at issue.

With respect to importance, WHB represented—for multiple clients—that each Plaintiff, to the best of their information, knowledge, and belief, does not know the answer to the question listed. ECF 4750 at 12-19 (for MDL IDs 1573, 1681, 1653, 1702, 1770, 1712, 1866, 1950, and 2177). But each Plaintiff for whom WHB offered this do-not-know response did not actually review the amended PFS. These questions include witness contact information, details about the alleged incident, and medical providers who purportedly treated various Plaintiffs for injuries arising from the alleged incidents.

1   WHB did not check that its information was still correct with its clients, even though each Plaintiff is

2   under an obligation to supplement their PFS consistent with the federal rules. It did not check that its

3   notes were correct, or that its memory of a given Plaintiff's statements were correct. It did not obtain

4   Plaintiff review before submitting the amended PFS, even though it knew that the PFS was required

5   to be verified by the absent Plaintiff.

6          And materiality is not the driving inquiry: the questions were included in the PFS by this Court

7   because they are all material. ECF 1877 ("Judge Breyer has also made clear that the PFS focuses on

8   questions that should be answered at the outset of litigation."). So, to the extent Plaintiffs' counsel

9   argue that "does not know" answers or other PFS amendments were not material, that argument has

10  already been addressed. In any event, "I do not know" is often a material answer.

11         **D.    Uber's Defense Fact Sheet Process Is Irrelevant.**

12         The opposition from Nachawati—instead of addressing the merits of Uber's argument—

13  diverts attention to Uber's Defendant Fact Sheet amendments instead. ECF 4751 at 8. According to

14  Nachawati, the fact Uber has reviewed Plaintiff submissions multiple times, at great expense to itself,

15  must mean Uber comes to any motion based on amended fact sheets with "unclean hands."[2] *Id.* To the

16  contrary, Uber's conduct demonstrates that it has done the right thing: when it discovered that a prior

17  discovery response was incorrect, it corrected it on its own. In contrast, here Uber had to pursue

18  relentless motion practice to obtain a Court order that finally required Plaintiffs' counsel to disclose

19  the truth: that Plaintiffs' counsel had been submitting discovery responses stating they had been

20  "completed" by Plaintiffs without telling Uber or the Court the Plaintiffs had gone missing.

---

[2]    Nachawati states that Uber changed several DFS responses without receiving additional information from the Plaintiffs at issue. This is not true. For one of its examples, MDL ID 3207, the Plaintiff at issue submitted an amended PFS and amended ride information form after Uber's first DFS. Uber then ███████████████ *See* Ex. 1, 2. The amended ride information form and PFS ███████, *see* Ex. 3, 4, which were not in MDL ID 3207's initial ride information form or PFS.

9

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.    Contrary to Kherkher Garcia's Representation, Its Submission of Fraudulent Materials Is Anything But an "Isolated Incident."**

Kherkher argues that its Plaintiff subject to this motion is an "isolated incident" that does not warrant the certification requirement Uber's motion seeks. ECF 4742 at 3. But counsel does not mention that it has already been before this Court on multiple motions to withdraw from representing fraudulent Plaintiffs and Plaintiffs subject to motions to dismiss for violating this Court's orders:

- MDL ID 2774, a Kherkher client, was ordered to show cause for submitting a non-bona-fide receipt after Kherkher filed her case following her previous dismissal without prejudice from this MDL with previous counsel. Kherkher filed MDL ID 2774's complaint, submitted her ride information form and PFS, and, when Uber moved to dismiss this Plaintiff for her previous submission of a fraudulent receipt, Kherkher initially told the Court that "despite repeated efforts to do so, Plaintiff's Counsel has been unsuccessful in reaching Plaintiff MDL ID 2774. This lack of communication means Plaintiff's Counsel is unable to conduct a proper search to identify potentially responsive documents . . . ." ECF 3845 at 2. The "lack of communication" Kherkher mentions for this Plaintiff reaches back to the date of filing her short-form complaint. In its motion to withdraw from representing MDL ID 2774—which was filed on the individual case's docket but not the MDL docket—Kherkher notes that it has not been able to reach MDL ID 2774 since December 2024 when it filed her complaint. *See Jane Doe 693827 v. Uber Technologies, Inc., et al.*, No. 3:24-cv-09515-CRB (N.D. Cal. Aug. 28, 2025), ECF No. 9, at 1-2. Yet somehow counsel met its deadline to file MDL ID 2774's PFS on January 30, 2025. Ex. 5. Uber notified Kherkher of multiple deficiencies with this PFS in July 2025. Ex. 6. One deficiency was failure to submit a verification. *Id.*

- Kherkher filed motions to withdraw for 5 Plaintiffs subject to a pending motion to dismiss for failure to comply with PTO 31. ECF 4582, 4583, 4584, 4585, 4586. In each of those motions, Kherkher represented that it had lost contact with its client and the Plaintiff at issue "has yet to

10

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

provide the information requested by Defendant." ECF 4582 at 1; ECF 4583 at 1 (same); ECF 4584 at 1 (similar); ECF 4585 at 1 (similar); ECF 4586 at 1 (similar). But Kherkher did not inform the Court in any of those motions that the Plaintiff it sought to abandon at the eleventh hour was subject to a pending motion to dismiss and facing dismissal with prejudice. In one such withdrawal motion, ECF 4585, Kherkher told the Court it had not been able to contact its client since July 18, 2025. ECF 4585-1. Yet after that date, Kherkher served a Ride Information Form (served on July 29, 2025), a PFS (served on August 17, 2025), and an amended PFS (served on October 4, 2025) on Uber. *See* Decl. of Christopher V. Cotton ¶¶ 9-11.

- Kherkher filed 3 motions to withdraw for Plaintiffs subject to a pending motion to dismiss for failure to comply with PTO 10's verification requirement on December 17, 2025. ECF 4697, 4698, 4699. In none of these withdrawal motions did Kherkher inform the Court of the Plaintiffs' failure to comply with PTO 10 or potential dismissal with prejudice for this failure. And in one of these motions, Kherkher stated that it had not been able to reach its client since May 5, 2025. ECF 4698 at 1. Between its last client contact and the date of its withdrawal motion, Kherkher served a PFS on behalf of the Plaintiff subject to that motion on June 20, 2025 and an amended PFS on August 27, 2025. *See* Decl. of Christopher V. Cotton ¶¶ 12-13. Neither of those PFS were verified, and Uber had notified Kherkher of the verification deficiency for the June 20 PFS on July 28, 2025. *Id.* ¶ 14.

This pattern undermines Kherkher's argument that its conduct for the single Kherkher Plaintiff at issue in the instant motion is somehow a deviation from that firm's usual practice. In any event, it is not acceptable to attempt to pass off counsel's statements as Plaintiff's statements in even one case.

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**F.      Dismissal of These Plaintiffs With Prejudice Is Necessary and Warranted.**

While these Plaintiffs are currently dismissed without prejudice, conversion of these dismissals to with-prejudice is necessary to ensure ongoing compliance with this Court's orders and prevent these Plaintiffs from following a familiar pattern by re-filing with new counsel and disappearing again.

The 73 Plaintiffs subject to this motion were given multiple chances to comply with this Court's orders. Faced with a litigation deadline, Plaintiffs' counsel filed PFS that had not been reviewed by Plaintiffs to buy more time for their clients to re-emerge. At this point, knowing that these Plaintiffs (1) cannot be reached and (2) have violated this Court's orders, sometimes multiple times, the Court should dismiss these Plaintiffs with prejudice. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232-34 (9th Cir. 2006) (affirming dismissal with prejudice of cases for failure to submit complete PFS); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 966 F.3d 351, 354 (5th Cir. 2020) (affirming dismissal with prejudice for late and incomplete PFS); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 865-66 (8th Cir. 2007) (same); *In re Mirena IUD Prods. Liab. Litig.*, No. 13-MD-2434, 2015 WL 10433457, at *2 (S.D.N.Y. Mar. 5, 2015) (dismissing with prejudice for PFS deficiencies); *In re Zicam Cold Remedy Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 09-md-2096, 2011 WL 3438862, at *2 & n.1 (D. Ariz. Aug. 5, 2011) (same).

Dismissal without prejudice is not a sufficient remedy for these 73 now-absent Plaintiffs, in particular because they present an additional risk of re-filing with new counsel. The problem of dismissed-without-prejudice Plaintiffs re-filing with new lawyers has repeatedly arisen before in this MDL.[3] Given this history, the same problem will recur for many of the 73 Plaintiffs subject to this

---

[3] For example, MDL ID 2774, a Kherkher client the Court has ordered to show cause for providing a non-bona-fide receipt, was previously a Plaintiff in this MDL as a Peiffer Wolf Carr Kane Conway & Wise, LLP client under MDL ID 1384. MDL ID 1384 was dismissed for failure to comply with the Court's order to file a notice whether she intended to pursue her action following withdrawal of her prior counsel. ECF 3130. Now proceeding under MDL ID 2774, this Plaintiff is alleged to be unresponsive to her Kherkher counsel, *see supra* at I.E.

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

1    motion. Because the Court knows these Plaintiffs are not committed to prosecuting their cases once

2    filed, their dismissals should be with prejudice to preserve the Court's resources.

3        Moreover, the Court issued the without-prejudice dismissal order on November 19, 2025, the

4    same date on which it ordered Plaintiffs' counsel to disclose whether their clients reviewed their PFS

5    before service. On December 3, Plaintiffs' counsel were finally forced to disclose that they submitted

6    the discovery without Plaintiff review. Limiting the consequences for this practice to without-

7    prejudice dismissal would undermine the Court's orders. And it will mean that these Plaintiffs are

8    simply signed up by other Plaintiffs' firms, allowing them to be leveraged as part of an "inventory" in

9    an effort to extract payments and requiring Uber to conduct further rounds of investigation and motion

10   practice.

11

12   **II.    THE COURT HAS JURISDICTION TO ORDER UBER'S REQUESTED DEPOSITIONS, PARTICULARLY IN LIGHT OF PLAINTIFFS' DISCOVERY MISCONDUCT.**

13        Although the 73 Plaintiffs at issue here have been dismissed without prejudice, the Court

14   retains jurisdiction over them for purposes of addressing collateral issues like the fraud issues

15   addressed by Uber's motion.[4] In opposition, Nachawati focuses on the language of Rule 37 and argues

16   that when Plaintiffs have been dismissed, they cannot be commanded to attend depositions. ECF 4751.

17        Contrary to Nachawati's argument, in cases involving discovery misconduct (including

18   misconduct far less grave than at issue here), courts have repeatedly relied on Rule 37 to not only to

19   convert without-prejudice dismissals to with-prejudice dismissals but also to retain jurisdiction. *See*

20   *In re Exxon Valdez,* 102 F.3d 429, 431, 433 (9th Cir. 1996) (finding jurisdiction where a district court

21   dismissed an action with prejudice as a discovery sanction even after the action was otherwise

22   dismissed, because a sanction of dismissal with prejudice "imposed . . . under Rule 37 [is] collateral

23

24

25

26

27

28

---

[4]    While Nachawati cites cases regarding availability of sanctions under Rule 11, Uber's instant motion does not rely on Rule 11.

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

1  to the merits of the action [. . .]; though [it] terminate[s] the action [. . .], [it] [does] not signify a district

2  court's assessment of the legal merits of the complaint"; "The overwhelming weight of the factors

3  supporting dismissal overcomes the policy favoring disposition of cases on their merits. But even that

4  policy lends little support to appellants, whose total refusal to provide discovery obstructed resolution

5  of their claims on the merits." (alteration adopted) (citation omitted)); *Zow v. Regions Fin. Corp.*, 595

6  F. App'x 887, 888 (11th Cir. 2014) (affirming "dismissal of their case with prejudice as a sanction"

7  under "Fed. R. Civ. P. 37(b)(2)(A)(v)" for "being in contempt of a discovery order," notwithstanding

8  plaintiffs' argument that "dismissal with prejudice was an inappropriate sanction because they had

9  already voluntarily dismissed their case without prejudice"); *Celsius Holdings, Inc. v. A SHOC

10 Beverage, LLC*, No. 21-80740-CV, 2022 WL 3568042, at *2 (S.D. Fla. July 19, 2022), *aff'd in part,

11 vacated in part, remanded*, No. 22-12687, 2025 WL 2887300 (11th Cir. Oct. 10, 2025) ("I am

12 persuaded that these objections, combined with Plaintiff's failure to produce any documents or other

13 evidence, and the timing of Plaintiff's dismissal on the eve of the hearing before Judge Matthewman,

14 rise to the level of bad faith. Thus, I find that it is appropriate to convert the dismissal without prejudice

15 in this matter to a dismissal with prejudice" under Rule 37).

16   The Court can also order the relief Uber seeks pursuant to its inherent powers. *See In re Nimitz

17 Techs.*, No. 2023-103, 2022 WL 17494845 at *2 (Fed. Cir. Dec. 8, 2022) (noting district courts have

18 "a range of authority" under Fed. R. Civ. P. 83(b) and *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991),

19 to control "aspects of proper practice before the court").

## CONCLUSION

20   Counsel at Williams Hart & Boundas LLP, Kherkher Garcia LLP, and Nachawati Law Group

21 lost contact with these 73 Plaintiffs before serving Plaintiff Fact Sheets that falsely represented they

22 had been "completed" by these Plaintiffs. Uber respectfully requests that the Court enter the proposed

23 order submitted with Uber's motion, dismissing the 73 Plaintiffs listed on Exhibit A to Uber's motion

1   with prejudice and ordering the depositions of 5 Plaintiffs listed on Exhibit B of the Motion, to probe

2   the veracity of counsel's representations on those Plaintiffs' behalf. Finally, the Court should enter the

3   proposed order at Exhibit C of Uber's motion requiring Plaintiffs' counsel Williams Hart & Boundas

4   LLP, Nachawati Law Group, and Kherkher Garcia LLP and those counsel's clients to certify that all

5   fact sheets and amendments thereto have been reviewed by Plaintiffs.

6

7

8   Dated: December 27, 2025                    Respectfully submitted,

9                                               */s/ Laura Vartain Horn*

10                                              Laura Vartain Horn (SBN 258485)
11                                              **KIRKLAND & ELLIS LLP**
                                                555 California Street, Suite 2700
12                                              San Francisco, CA 94104
                                                Telephone: (415) 439-1625
13                                              laura.vartain@kirkland.com

14                                              Jessica Davidson (Admitted *Pro Hac Vice*)
                                                Christopher D. Cox (Admitted *Pro Hac Vice*)
15                                              **KIRKLAND & ELLIS LLP**
                                                601 Lexington Avenue
16                                              New York, NY 10022
                                                Telephone: (212) 446-4800
17                                              jessica.davidson@kirkland.com
                                                christopher.cox@kirkland.com
18
19                                              Allison M. Brown (Admitted *Pro Hac Vice*)
                                                **KIRKLAND & ELLIS LLP**
20                                              2005 Market Street, Suite 1000
                                                Philadelphia, PA 19103
21                                              Telephone: (215) 268-5000
                                                alli.brown@kirkland.com
22
23                                              SABRINA H. STRONG (SBN: 200292)
                                                sstrong@omm.com
24                                              JONATHAN SCHNELLER (SBN: 291288)
                                                jschneller@omm.com
25                                              **O'MELVENY & MYERS LLP**
                                                400 South Hope Street, 19th Floor
26                                              Los Angeles, CA 90071
                                                Telephone: (213) 430-6000
27                                              Facsimile: (213) 430-6407
28

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB

PATRICK L. OOT (*Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice*)
ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' REPLY ISO MOTION REGARDING FRAUDULENT PLAINTIFF FACT SHEETS
Case No. 3:23-MD-3084-CRB