[*Submitting counsel below*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

**IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**

This Document Relates to:

*Jaylynn Dean v. Uber Techs., Inc., et al.*, N.D. Cal. No. 23-cv-06708
D. Ariz. No. 25-cv-4276

No. 3:23-md-03084-CRB

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD-PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN**

Judge: Hon. Charles R. Breyer
Date: January 6, 2026
Time: 10:00 a.m.
Ctrm.: 6 – 17th Floor

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................ 1

BACKGROUND ........................................ 1

ARGUMENT ........................................ 3

I. The Court Should Not Postpone the *Dean* Trial indefinitely. ........................................ 3

a. Postponement Severely Prejudices Plaintiff Dean. ........................................ 3

b. Uber Will Suffer No Hardship if Trial Proceeds as Scheduled. ........................................ 4

c. The Orderly Course of Justice Favors Proceeding with Trial. ........................................ 4

II. Voir Dire Should Not Proceed in a Lopsided Manner Favoring Uber. ........................................ 5

III. The Court Should Not Censor CAOC's Political Speech. ........................................ 7

IV. Uber Cannot Show Good Cause to Reopen Discovery. ........................................ 10

CONCLUSION ........................................ 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alcala v. Emhart Indus., Inc.*,
495 F.3d 360 (7th Cir. 2007)........................................ 6

*Amezcua v. Boon*,
754 F. App'x 551 (9th Cir. 2018)........................................ 6

*Blount v. Plovidba*,
567 F.2d 583 (3d Cir. 1977)........................................ 7

*Carroll v. President & Comm'rs of Princess Anne*,
393 U.S. 175, 89 S. Ct. 347, 21 L. Ed. 2d 325 (1968)........................................ 9

*City of Pomona v. SQM N. Am. Corp.*,
866 F.3d 1060 (9th Cir. 2017)........................................ 10

*Clinton v. Jones*,
520 U.S. 681 (1997)........................................ 3

Dependable Highway Express, Inc. v. Navigators Ins. Co.,
498 F.3d 1059 (9th Cir. 2007)........................................ 3

*Doe v. Uber Techs., Inc.*,
2022 WL 767094 (N.D. Cal. Mar. 11, 2022)........................................ 9, 10

*Edwards v. Oportun, Inc.*,
193 F. Supp. 3d 1096 (N.D. Cal. 2016)........................................ 4

*Gentile v. State Bar of Nevada*,
501 U.S. 1030, 111 S. Ct. 2720, 115 L. Ed. 2d 888 (1991)........................................ 9

*Goldstein v. Kelleher*,
728 F.2d 32 (1st Cir. 1984)........................................ 7

*Hard v. Burlington N. R. Co.*,
870 F.2d 1454 (9th Cir. 1989)........................................ 7

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997)........................................ 7

*In re Dan Farr Prods.*,
874 F.3d 590 (9th Cir. 2017)........................................ 10

*In re Homestore.com, Inc. Sec. Litig.*,
347 F. Supp. 2d 814 (C.D. Cal. 2004)........................................ 4, 5

*In re Tesla Inc. Sec. Litig.*,
2023 WL 1452008 (N.D. Cal. Feb. 1, 2023)........................................ 6

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)........................................ 3

*Levine v. U.S. Dist. Ct. for Cent. Dist. of California*,
764 F.2d 590 (9th Cir. 1985)........................................ 8

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) .... 3

*Mu'Min v. Virginia*, 500 U.S. 415, 111 S. Ct. 1899, 114 L. Ed. 2d 493 (1991) .... 6

*Murphy-Fauth v. BSNF Ry. Co.*, 2018 WL 5312201 (D. Mont. Apr. 4, 2018) .... 8

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976) .... 8, 9, 10

*Paine v. City of Lompoc*, 160 F.3d 562 (9th Cir. 1998) .... 6

*Richards v. Jefferson Cnty.*, 517 U.S. 793 (1996) .... 8

*Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of California v. Yagman*, 55 F.3d 1430 (9th Cir. 1995) .... 8

*Taylor v. Ron's Liquor Inc.*, 2011 WL 499944 (N.D. Cal. Feb. 8, 2011) .... 4

*United States v. Padilla-Valenzuela*, 896 F. Supp. 968 (D. Ariz. 1995) .... 5

*W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519 (9th Cir. 1990) .... 10

*Westwood Lumber Co. v. Weyerhaeuser Co.*, 2003 WL 24892049 (D. Or. Dec. 29, 2003) .... 4

**Rules**

Fed. R. Civ. P. 1 .... 3

Fed. R. Civ. P. 65 .... 8

## INTRODUCTION

Uber's eleventh-hour attempt to delay the first bellwether trial in this MDL is meritless. Uber does not establish any basis to vacate Plaintiff Dean's trial date, which would severely prejudice her right to an expedient trial of her claims and derail the expeditious resolution of this MDL. Uber's alternative requests, relating to voir dire and restraining the speech of an independent non-party, are equally outlandish. The Court has already finalized and distributed a juror questionnaire. The Court has broad discretion in how to conduct voir dire, and whether jurors are examined privately falls squarely within that discretion. Uber, of course, may challenge any juror in accordance with Rule 47 but offers no basis or authority to allow it an advantage for more time or special privileges to dismiss jurors.

Uber also seeks a gag order censoring its political adversary, CAOC, in violation of the First Amendment. Uber justifies its request through the guise of potential prejudice in a bellwether trial that will proceed in an entirely different state from where CAOC operates and advertises. Uber comes nowhere close to meeting its heavy burden of justifying a prior restraint on speech. Finally, Uber's request to serve a new subpoena should be rejected because fact discovery is closed in the *Dean* case, and Uber has failed to show good cause for reopening it, especially with trial less than one month away. The motion should be denied.

## BACKGROUND

The Court ordered trial in the Jaylynn Dean bellwether case to begin on January 13. ECF No. 4425. The Court was clear in setting the trial date that it had no intention of moving it: "My intention is to pick a jury the week of January 6 and go to trial January 14th. And so if anything has to be done in advance of those dates for the cases in Number 1, that's it." Declaration of Sarah London ("London Decl."), Ex. 1, 8/22/25 Case Management Conference ("CMC") Tr. at 12:2-4. The Court made these statements and set the trial date with knowledge of a New York Times article, released on August 6, 2025, which published information that Uber believes is misleading. Specifically, the article states that Uber receives a report of sexual assault or misconduct in the United States almost every eight minutes. *See* ECF No. 3822 (referencing the article: https://www.nytimes.com/2025/08/06/business/uber-sexual-assault.html, Ex. 2). The same

information was made public during the first bellwether trial in the related state court proceedings: *In re: Uber Rideshare Cases*, No. CJC-21-005188, Cal. Super. Ct., SF Cnty. (the "JCCP" action). London Decl., Ex. 3, 9/8/25 JCCP Trial Tr. at 131-32.

On October 27, 2025, a political action committee associated with Consumer Attorneys of California (CAOC) launched the "Every 8 Minutes" campaign in response to a California ballot initiative Uber filed to limit recoveries in automobile accident lawsuits. *See* ECF No. 4498-5. The campaign's advertisement cites New York Times reporting on the rate of sexual assault or misconduct reports received by Uber and expressly attributes the Times as the source. *Id.*

CAOC is "a professional organization that represents the interests of 39 million Californians." *See* Ex. 4, https://www.caoc.org/?pg=history. The organization focuses solely on legal issues affecting Californians. *Id.* As Uber notes, the "Every 8 Minutes" campaign was "[p]aid for by Consumer Attorneys of California Initiative Defense Political Action Committee," which is a separate entity from CAOC. *See* Mot. at 3 (quoting https://every8minutes.com/). Uber claims the advertisement is broadcasted nationwide but offers only guesswork in support of this assumption, stating that CAOC "***appears*** to be to purchasing national advertising spots." Mot. at 3; *see also id.* ("***presumably*** is still being published nationwide") (emphasis added). Uber's conjecture is incorrect. The advertisement is targeted only to Californians, which makes sense given CAOC's stated mission and the advertisement's purpose of responding to Uber's *California* ballot initiative. *See* London Decl., ¶¶ 12-13; *see also* ECF No. 4498-5 ("looping on trucks ***around the state of California***") (emphasis added).

Consumer Attorneys of California Initiative Defense Political Action Committee# (CAIDPAC) is not affiliated with any bellwether Plaintiff and not directed by any of Lead Plaintiffs' counsel. London Decl., ¶ 14. No one on Plaintiff's MDL leadership team sits on the Consumer Attorneys Political Action Committee Executive Board, the body that approved, directed, and runs the "Every 8 Minutes" campaign. *Id.*, ¶ 15. Uber complains that the information in the advertisement traces back to some unspecified protective order violation. But Judge Cisneros found no evidence that any lawyer from the MDL leaked any information to the New York Times. ECF 3822 at 2 ("this matter concerns a sealed filing [from] the JCCP"). Uber resorts

to hyperbole, claiming that this action "has been beset by protective order violations." Mot. at 1. But it cites a violation by a single lawyer from the MDL, which involved information entirely unrelated to the "Every 8 Minutes" campaign, and an order from Judge Schulman relating to JCCP lawyers. *Id.* In fact, lead counsel certified that they had no role in providing information to the New York Times. *See* Ex. 5, Plaintiffs' Certifications in Response to the Court's Order of October 22, 2025.

## ARGUMENT

### I. The Court Should Not Postpone the *Dean* Trial indefinitely.

Uber urges the Court to "postpone the first bellwether trial until such time that the Every 8 Minutes campaign ceases." Mot. at 5. Uber thus proposes to stay the *Dean* matter for an unknown period, citing the general principle that courts have inherent authority to manage their dockets. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). But "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* "Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted). If there is "even a fair possibility" that the stay "will work damage to someone else," a stay is "inappropriate absent a showing by the moving party of 'hardship or inequity." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). As the proponent of a stay, Uber "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Here, the balance of factors disfavors postponing the *Dean* trial.

#### a. Postponement Severely Prejudices Plaintiff Dean.

Postponing Ms. Dean's trial date would prejudice her right to the "just, speedy, and inexpensive determination of [her] action." *See* Fed. R. Civ. P. 1. Ms. Dean filed her complaint on December 29, 2023, alleging that she was raped on November 15, 2023. *Dean v. Uber*, 3:23-cv-0680, N.D. Cal., ECF No. 1. Thus, "[n]early three years have passed since the incident in

question, and defendants seek a virtually indefinite stay." *Taylor v. Ron's Liquor Inc.*, 2011 WL 499944, at *3 (N.D. Cal. Feb. 8, 2011). Like the sexual assault survivor in *Taylor*, Plaintiff Dean will "be prejudiced by delay because of the risk that witnesses will be less able to recall specific facts, and evidence may be lost." *Id.* At least one recording from Ms. Dean's Uber ride may already have been destroyed. ECF No. 4654 at 6:22-7:5. It would therefore "be inappropriate and unjust to force a stay on these civil proceedings" until some undetermined time when the Every 8 Minutes campaign is no longer running and the Court is able to schedule a trial in Arizona. *Taylor*, 2011 WL 499944, at *4; *see also Westwood Lumber Co. v. Weyerhaeuser Co.*, 2003 WL 24892049, at *3 (D. Or. Dec. 29, 2003) ("[A] lengthy setover could seriously prejudice the Plaintiffs."); *Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) ("[T]here is a 'fair possibility of harm' to Plaintiff because the length of the stay is an indefinite one.").

**b. Uber Will Suffer No Hardship if Trial Proceeds as Scheduled.**

By contrast, Uber faces no inequity from an ad campaign running in California about a ballot initiative totally unrelated to this case. Trial will proceed in Phoenix, Arizona, an area outside the reach of the CAOC's California-focused advertising. London Decl, ¶ 13. And even if the ad campaign somehow reached audiences outside of California, it includes no information that was not already released in the August 6, 2025 New York Times article or the first trial in the JCCP action. *See* ECF No. 4498-5; London Decl., Ex. 3, 9/8/25 JCCP Trial Tr. at 131-32. The jury in the JCCP trial heard the same statistics regarding the rate of sexual assault during Uber rides, yet still reached a verdict favorable to Uber, undermining any possibility of undue hardship or inequity to Uber. *See* Ex. 6, 9/30/25 JCCP Trial Tr. at 3271:12-72:8.

**c. The Orderly Course of Justice Favors Proceeding with Trial.**

Finally, postponing trial will not promote judicial economy. Ms. Dean filed her case three years ago "and painstaking effort has already been taken by Judge [Breyer] to ensure that this case is 'trial ready.'" *In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 814, 818 (C.D. Cal. 2004). The Court has ruled on dispositive motions, overseen years of contentious discovery and expert work, and has now made arrangements to travel to Arizona for trial. *See* Ex. 7, 12/5/25 CMC Tr. 2:23-25. Accordingly, "waiting until an undetermined date" when CAOC ceases its

current ad campaign "does not outweigh both the Plaintiff and the Court's interest in judicial economy." *In re Homestore.com*, 347 F. Supp. 2d at 818. Postponing trial will not simplify any legal or factual issues. Only prejudice, inefficiency, and added expense will result from Uber's proposed stay. The Court should deny the motion and proceed with trial on January 13.

## II. Voir Dire Should Not Proceed in a Lopsided Manner Favoring Uber.

Uber's request for a "specific line of inquiry within the jury questionnaire" is moot. Mot. at 6. After considering proposals from both parties, as well as the District of Arizona's standard questionnaire, the Court finalized a juror questionnaire and shared it with the Clerk to be administered to potential jurors. *See* ECF No. 4513. At the December 5 Case Management Conference, the Court confirmed that questionnaires had been distributed to potential jurors. *See* Ex. 7, 12/5/25 CMC Tr. at 25:22-26:14. Accordingly, even if Uber's request to revise the questionnaire had merit, it cannot be accommodated without unduly burdening the jury pool. *See United States v. Padilla-Valenzuela*, 896 F. Supp. 968, 971 (D. Ariz. 1995) ("While the trial lawyer's appetite for information concerning prospective jurors may be insatiable, the burden is borne by prospective jurors. As the scope of inquiry during voir dire has relentlessly expanded, resistance has been expressed by or on behalf of prospective jurors."). Prospective jurors should not be burdened with a second juror questionnaire so Uber can have a second crack at determining the impact of information that has already been public for four months.

In any event, Uber already had the opportunity to propose juror questions regarding any perceived impact of the statistics cited in the "Every 8 Minutes" campaign. Uber submitted its proposed juror questionnaire well after both the New York Times article had been published and the statistics that it claims are misleading had been raised at the JCCP trial. ECF No. 4495-3. It thus had ample opportunity to propose questions it believed would be relevant to any potential prejudice. In fact, Uber proposed asking jurors: "What advertising, if any, have you seen concerning the safety of Uber." *Id.* at number 27. The Court considered but chose not to use that question. *See* Ex. 7, 12/5/25 CMC Tr. at 25:24-26:2 ("I have formulated a questionnaire that incorporates some, but not all…I mean, I took out a fair amount from both sides."). The Court did, however, include Uber's proposed question about whether a potential juror has "read, seen or

heard news coverage of lawsuits involving rideshare companies." *Id.*; ECF No. 4513. Uber, moreover, stated in its proposed juror questionnaire that it "intends to submit a supplemental questionnaire related to Plaintiff lawyers' advertising campaigns, as detailed in its forthcoming motion to be filed on or before December 2, 2025." ECF No. 4495-3. Uber also raised its concerns with the campaign during the October 31 Conference, and the Court acknowledged seeing the advertisement. *See* Ex. 8, 10/31/25 CMC Tr. 17:6-25. The Court then issued an order on December 3 finalizing the juror questionnaire for distribution, notwithstanding its knowledge of the advertisement, Uber's objections to it, and Uber's intention to submit a supplement. ECF No. 4513; *see also Alcala v. Emhart Indus., Inc.*, 495 F.3d 360, 363 (7th Cir. 2007) ("The district court has 'broad discretion in determining how best to conduct *voir dire.*' Moreover, litigants 'do not have a right to have a particular question asked.'") (internal citations omitted).

Uber oversteps by demanding that the Court conduct "private voir dire" if there is any suggestion that a potential juror has seen the "Every 8 Minutes" campaign. Mot. at 6. While there may be sensitive topics raised in this case that could justify questioning jurors privately, any mechanism to isolate jurors should not be one-sided, or suggest that a juror may be in trouble for hearing one message or another. The Court retains discretion to conduct voir dire as it sees fit, including what questions to ask, who may ask the questions, and whether a juror should be examined outside the presence of other jurors. *Amezcua v. Boon*, 754 F. App'x 551, 553 (9th Cir. 2018) ("The district court had the discretion to conduct the voir dire itself."); *In re Tesla Inc. Sec. Litig.*, 2023 WL 1452008, at *3 (N.D. Cal. Feb. 1, 2023) ("certain prospective jurors were voir dired separately, outside the presence of other jurors, so as to avoid any risk of tainting the jury pool."); *but see Mu'Min v. Virginia*, 500 U.S. 415, 425 (1991) ("The trial court in this case expressed reservations about interrogating jurors individually because it might make the jurors feel that they themselves were on trial."). While it's unclear exactly what Uber means by private voir dire, the "content and conduct of voir dire of prospective jurors in civil cases" is within the trial court's "inherent discretion." *Berndt v. California Dep't of Corr.*, 2016 WL 2909392, at *9 (N.D. Cal. May 19, 2016); *see also Paine v. City of Lompoc*, 160 F.3d 562, 564 (9th Cir. 1998) ("A district judge has broad discretion in how to conduct the voir dire."). To the extent any

private voir dire is appropriate, it must be handled in a way that does not advantage only one side, as there is no basis to provide more time or opportunity for Uber to question jurors—particularly given Uber's marketing power and recent campaign in Phoenix regarding new safety features,[1] which Plaintiffs proposed should be the subject of voir dire. *See, e.g.,* ECF No. 4495-2 at No. 9.

Uber goes one step further, demanding that it alone "should be afforded the opportunity to seek dismissal" based on any "actual prejudice" that the Court establishes through private voir dire. Mot. at 6. It is unclear why Uber believes it needs to file a motion to avail itself of the opportunity to challenge jurors for cause. To the extent Uber seeks additional peremptory challenges, it provides no authority to support this request. *See* Ex. 7, 12/5/25 CMC Tr. at 28:3-5 ("each side will get three challenges, peremptory challenges"); *Blount v. Plovidba*, 567 F.2d 583, 585 (3d Cir. 1977) ("[I]n single party civil litigation the court is not authorized to allow more than three peremptory challenges per side."). Uber argues in a footnote, with no authority, that Plaintiff should not be given "a reciprocal opportunity to request dismissal based on private voir dire." Mot. at n.3. But peremptory challenges should be equalized "as between plaintiff and defendants." *Goldstein v. Kelleher*, 728 F.2d 32, 37 (1st Cir. 1984). Finally, Uber offers no reason to give its challenges any special treatment. Ultimately, the merit of any such challenges falls within the Court's broad discretion. *See Hard v. Burlington N. R. Co.*, 870 F.2d 1454, 1460 (9th Cir. 1989) ("The trial court has broad discretion in its rulings on challenges for cause, and can be reversed only for an abuse of discretion."); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220–21 (9th Cir. 1997) ("The trial judge, who observes the demeanor and credibility of a juror, is best suited to determine a juror's impartiality.").

In short, Uber offers no reason to alter the robust voir dire procedures already in place.

## III. The Court Should Not Censor CAOC's Political Speech.

Uber seeks a prior restraint on the political speech of an independent nonparty, but Uber's

---

[1] On July 23, 2025, just weeks before the JCCP bellwether trial was set to begin, Uber issued a press release followed by a large-scale marketing and public relations campaign to launch its "Women Preferences" option in San Francisco. *See* https://www.uber.com/newsroom/women-preferences/. On September 22, 2025, Uber announced it was expanding this offering to Phoenix. *See* https://www.tiktok.com/@uber/video/7552979676071775501. London Decl, ¶ 17.

only authority pertains to restraining the speech of *litigants* in a pending action. *See*, *e.g.*, *Levine v. U.S. Dist. Ct. for Cent. Dist. of California*, 764 F.2d 590, 595 (9th Cir. 1985) ("We note that the district court's order applies *only to trial participants*.") (emphasis added); *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1442 (9th Cir. 1995) (citing *Gentile* and analyzing speech made by "lawyers participating in pending cases"); *Murphy-Fauth v. BSNF Ry. Co.*, 2018 WL 5312201, at *1 (D. Mont. Apr. 4, 2018) (analyzing lawyer statements under Montana's Rules of Professional Conduct).

Uber's entire argument rests on the faulty premise that Plaintiff's counsel "made the statements at issue through CAOC." Mot. at 8; *see also Levine*, 764 F.2d at 595 ("The Supreme Court has suggested that it is appropriate to impose greater restrictions on the free speech rights of trial participants than on the rights of nonparticipants"). Uber is wrong. No one on Plaintiffs' MDL leadership team sits on the Consumer Attorneys Political Action Committee Executive Board, the body that approved, directed, and runs the "Every 8 Minutes" campaign. London Decl., ¶ 15. Accordingly, Uber's request runs afoul of Rule 65, which provides that "an injunction is 'binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.'" *Am. Semiconductor, Inc. v. California Assignments LLC*, 2013 WL 5937968, at *4 (N.D. Cal. Oct. 30, 2013) (quoting; Fed. R. Civ. P. 65).

And while Uber speculates that information in the "Every 8 Minutes" campaign can be traced back to violations of the protective order, it fails to acknowledge that the same information was publicly available via the New York Times and the JCCP trial. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 588 (1976) ("[T]here can be no prohibition on the publication by the press of any information pertaining to pending judicial proceedings or the operation of the criminal justice system, no matter how shabby the means by which the information is obtained.") (Brennan, J., concurring). Uber's unsupported accusation that someone from this litigation may have provided information to the New York Times is irrelevant because the information in the "Every 8 Minutes" campaign has been public for months. Uber offers no evidence tying any of Plaintiff's counsel to the advertisement other than pointing to a page of CAOC's website

indicating that Ms. London serves as the organization's secretary. Mot. at 4. But, as Uber acknowledges, CAOC is not the entity responsible for approving, directing, and running the "Every 8 Minutes" campaign. Mot. at 3. That body is the Consumer Attorneys Political Action Committee Executive Board, and none of lead Plaintiffs' counsel sit on that board. London Decl., ¶ 15. Accordingly, in the absence of any evidence that the "Every 8 Minutes" campaign implicates attorney speech or statements made by litigants, there is no basis for restraint. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1057 (1991) ("One may concede the proposition that an *attorney's* speech about pending cases may present dangers that could not arise from statements by a nonparticipant...") (emphasis added).

Even if the "Every 8 Minutes" campaign were attorney speech, Uber cannot meet its heavy burden for a prior restraint. It is well settled that "[a]ny prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity." *Nebraska Press*, 427 U.S. at 558; *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 181 (1968) ("Prior restraint upon speech suppresses the precise freedom which the First Amendment sought to protect against abridgment."). Uber's proposed restraint fails to pass strict scrutiny. *See Doe v. Uber Techs., Inc.*, 2022 WL 767094, at *1 (N.D. Cal. Mar. 11, 2022) (an order restraining attorney speech is "subject to strict scrutiny because of the peculiar dangers presented by such restraints"). First, Uber fails to identify a "substantial likelihood of material prejudice." *Id.* There is no evidence that the "Every 8 Minutes" campaign ran in Phoenix, and even if it did, it contains no information that hasn't already been public since August. The source of Uber's claimed prejudice boils down to a "single New York Times [] piece," which is insufficient to show any real threat to "the integrity of the judicial system." *Id.* at *2. And "[w]hile the New York Times article mentions this case," it does not reveal "attorney arguments regarding Uber's litigation strategy or the strengths and weaknesses of Uber's case." *Id.*

Uber's proposed order is far from narrowly drawn, as it seeks to stifle the political speech of a non-party, on a topic unrelated to this litigation, for an undefined period of time. A prior restraint is improper unless it is "clear that further publicity, unchecked, would so distort the views of potential jurors that 12 could not be found who would, under proper instructions, fulfill

their sworn duty to render a just verdict exclusively on the evidence presented in open court." *Nebraska Press*, 427 U.S. at 569. Finally, for the reasons discussed in Section II, *supra*, the Court has already ordered comprehensive voir dire in this case, which took into consideration Uber's concerns. Thus, less restrictive means are available, and have been implemented, to address any perceived prejudice. *See In re Dan Farr Prods.*, 874 F.3d 590, 595 (9th Cir. 2017) (voir dire and jury instructions are "appropriate alternatives preferable to censorship."); *see also Doe*, 2022 WL 767094, at *3 ("Uber will have ample opportunity to conduct voir dire to explore the issue of juror taint and the Court will give jury instructions reminding the jurors of their obligation to decide the case based on the evidence presented at trial alone.").

## IV. Uber Cannot Show Good Cause to Reopen Discovery.

Uber's request to censor its political adversary's speech is shocking by itself, but Uber also asks the Court to pre-approve discovery into CAOC's internal discussions about its political speech. Mot. 9-10. Uber fails to provide good cause to issue a new subpoena to a non-party over two months after the discovery cutoff and less than a month before trial begins. Discovery in the first wave of bellwether cases closed on November 14. ECF. No. 4123 at 2-3. In considering whether to grant a motion to re-open discovery, courts consider the following factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017). It is "significant" that Uber seeks to reopen discovery, not just an extension. *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1524 (9th Cir. 1990). "Whereas a request for an extension acknowledges the importance of a deadline, a retroactive request suggests that the party paid no attention at all to the deadline." *Id.*

None of the relevant factors support Uber's request to reopen discovery for the purpose of serving CAOC with a subpoena. Trial is set to begin in less than a month, and Plaintiff opposes Uber's request. Plaintiff will be prejudiced because Uber takes the view that conducting this

discovery takes precedence over proceeding with the trial of Ms. Dean's claims, which were filed three years ago. As discussed, postponement of Plaintiff's trial date is severely prejudicial.

Uber has not been diligent. The "Every 8 Minutes" campaign launched on October 27, more than two weeks before the discovery cutoff. *See* ECF No. 4498-005. Consequently, Uber could have subpoenaed CAOC before the close of discovery. In addition, the substance of the advertisement that Uber finds objectionable has been public for months. Uber, accordingly, could have conducted any discovery that it believes would bear upon juror bias within the discovery period. It also could have (and did) attempt to address any prejudice from the New York Times article through other means that would not delay trial. Finally, Uber offers no reason to believe that CAOC possesses information relevant to any of the factual or legal issues in this case. Uber's request to reopen discovery to subpoena a nonparty for irrelevant information should be denied.

**CONCLUSION**

For these reasons, the Court should deny Uber's motion to postpone the first bellwether trial, expand voir dire, restrain CAOC's speech, and pre-approve a subpoena to CAOC.

Dated: December 29, 2025

Respectfully submitted,

By: */s/ Sarah R. London*

Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*

Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: December 29, 2025

By: */s/ Sarah R. London*
Sarah R. London