# EXHIBIT 7

```
                                              Pages 1 - 41

              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

Before the Honorable Charles R. Breyer, Judge

IN RE: UBER TECHNOLOGIES,     )
INC., PASSENGER SEXUAL ASSAULT)
LITIGATION                    )  No. 23-MD-03084 CRB
                              )
_____)

                         San Francisco, California
                         Friday, December 5, 2025
```

**TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiffs:
        GIRARD SHARP, LLP
        601 California Street, Suite 1400
        San Francisco, California 94108-2819
  BY: **SARAH R. LONDON, ATTORNEY AT LAW**

        PEIFFER WOLF CARR KANE CONWAY & WISE LLP
        555 Montgomery Street, Suite 820
        San Francisco, California 94111-2560
  BY: **RACHEL B. ABRAMS, ATTORNEY AT LAW**

        WALKUP, MELODIA, KELLY & SCHOENBERGER
        650 California Street, 26th Floor
        San Francisco, California 94108-2615
  BY: **KHALDOUN BAGHDADI, ATTORNEY AT LAW**

For Defendants Uber Technologies and Rasier, LLC:
        KIRKLAND & ELLIS LLP
        555 California Street, 27th Floor
        San Francisco, California 94104
  BY: **LAURA E. VARTAIN, ATTORNEY AT LAW**

        KIRKLAND & ELLIS LLP
        401 West Fourth Street
        Austin, Texas 78701
  BY: **KIM BUENO, ATTORNEY AT LAW**

REPORTED BY: Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
        CSR No. 7445, Official United States Reporter

```
 1   Friday - December 5, 2025                              2:02 p.m.
 2                        P R O C E E D I N G S
 3                              ---o0o---
 4         THE COURTROOM DEPUTY:  Calling Civil
 5   Action C 23-MD-03084, In Re Uber Technologies, Inc., Passenger
 6   Sexual Assault Litigation.
 7      Counsel, please state your appearances.
 8         MS. LONDON:  Good afternoon, Your Honor.  Sarah London
 9   on behalf of the plaintiffs.
10         MS. ABRAMS:  Good afternoon, Your Honor.  Rachel
11   Abrams on behalf -- from Peiffer Wolf on behalf of the
12   plaintiffs.
13         MR. BAGHDADI:  Good afternoon, Your Honor.  Khaldoun
14   Baghdadi on behalf of the plaintiffs.
15         THE COURT:  Ms. Vartain, you're not shy, are you?
16         MS. VARTAIN:  I'm here, and I'm joined by my colleague
17   Kim Bueno -- good afternoon, Your Honor -- on behalf of the
18   Uber defendants.
19         MS. BUENO:  Good afternoon.
20         THE COURT:  Good afternoon.
21      So, thank you very much.  I received the joint case
22   management statement.
23      And let me -- let me go right away to the Arizona trial,
24   which is on tap.  We should confirm dates, but I don't think
25   there's a change or anything.
```

1       It's just that it doesn't leap out.  Things over years
2  tend to leap out to us.  Yes, this is this; this is that.  It
3  doesn't leap out here.  Maybe it's there.  I mean, after all,
4  you did go through a trial once without bifurcation.
5          **MS. BUENO:**  Mm-hmm.
6          **THE COURT:**  Okay.  And it turned out okay.
7       So, you know, be that as it may, every trial is different,
8  so forth.  But I do want you to -- I do want you to give some
9  thought to that, sooner rather than later because --
10         **MS. BUENO:**  Yes, Your Honor.
11         **THE COURT:**  -- we really have to plan.
12      I know Arizona is very pleasant in January, but --
13         **MS. BUENO:**  January.
14         **THE COURT:**  -- you know, we've got other places to go.
15      North Carolina.  Texas.  I've got a big travel schedule
16 all set out.  Do you want to know what it is?  Just look at the
17 weather forecast.
18                          (Laughter.)
19         **THE COURT:**  You won't be disappointed.  We're all in
20 this together.
21      Okay.  What else do you want me to deal with?
22         **MS. LONDON:**  Your Honor, do you already know, or who
23 should we ask when we will get questionnaires back?
24         **THE COURT:**  Okay.  Let me tell you what I've done on
25 the questionnaires.  I have chopped and diced.  I have

1  formulated a questionnaire that incorporates some, but not
2  all -- some.  I mean, I took out a fair amount from both sides.
3      You know, I love these questionnaires.  They are carefully
4  drafted for vast sums of money by the experts.  You know, do
5  you read *Field & Stream*?  Because if you subscribe to
6  *Field & Stream*, you're more likely to vote for the plaintiff or
7  for the defendant, so forth.
8      All of that I just tossed by the boards, and I tried to
9  make the questionnaire manageable and important, in my view.
10     They have been sent out.  You will get -- and I think
11 Lashanda will be able to tell me.  I think within a week to
12 ten days, you will get their response.  The idea is to give you
13 the questionnaires, to have you work with them as long as
14 possible.
15     What it won't have, so you know, it will not have their
16 names.  And while, were the case tried here, I think we do give
17 names, the case is in Arizona.  The practice is not to give
18 names.  And I'm trying to emulate, to the extent I can, the
19 Arizona practice because that's what -- that's why we're there.
20 That's why Uber put in the forum selection clause.  So
21 that's -- and that's the point of the bellwether.
22     So you can take a look at it, and then we should have a
23 further conversation.  Obviously, if there are people that both
24 sides agree should not be called in, I like to get rid of them
25 early.  So you can certainly submit a list, a joint list, of

1  going to have a jury the first day.  None of this -- none of
2  this, you know, lengthy proceedings.
3      I intend -- and you can talk me out of it.  I intend to
4  have nine jurors, maybe eight, probably nine.  And each side
5  will get three challenges, peremptory challenges.
6      So that's the way I look at it.  If you have different
7  views, you're free to express them, obviously, obviously.  But
8  I will not turn the jury selection process into an encounter
9  session.  I will -- you know, if somebody's got a problem when
10 they were three years old, I apologize for that, but I've got
11 to move on rather than explore the depth of their problem in a
12 particular way.
13     Now, obviously, somebody who's been assaulted, somebody
14 who's been accused of a violation of -- you know, of normative
15 behavior, of assaulting somebody or being assaulted, they're
16 highly relevant in this case in which it is a sexual assault
17 and in which the defense in the case was it was not -- it was
18 consensual, one of the defenses.  I mean, there's more, but I
19 mean -- well, that's the bottom-line defense, I suppose, in a
20 way.
21     I don't know -- if the jury believes that it was a
22 consensual sexual act, I'm not quite sure where we go from
23 there other than that Uber prevails, I would think, but maybe
24 not.  Maybe not.  Maybe I don't know.  Hey, there's a lot going
25 on.