Deepak Gupta (*pro hac vice*)
Gregory A. Beck (*pro hac vice*)
Sonali Mehta (*pro hac vice*)
**GUPTA WESSLER LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 888-1741
Facsimile: (202) 888-7792
*deepak@guptawessler.com*
*greg@guptawessler.com*
*sonali@guptawessler.com*

Varshini Parthasarathy (SBN 350769)
**GUPTA WESSLER LLP**
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 573-0336
Facsimile: (202) 888-7792
*varshini@guptawessler.com*

*Counsel for Nonparty Consumer
Attorneys of California (CAOC)*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **NONPARTY CONSUMER ATTORNEYS OF CALIFORNIA (CAOC)'S OPPOSITION TO UBER'S MOTION FOR AN INJUNCTION AGAINST POLITICAL SPEECH AND A NONPARTY SUBPOENA INTO A POLITICAL CAMPAIGN** |
| This Documents Relates to: | |
| *Jaylynn Dean v. Uber Technologies, Inc. et al.*, Case. No. 3:23-cv-06708-CRB | Date: January 6, 2025 |
| | Time: 10:00 A.M. |
| | Courtroom: 6, 17th Floor |

# TABLE OF CONTENTS

Table of authorities ............................................................................................................ ii

Introduction .......................................................................................................................... 1

Background ........................................................................................................................... 2

      A.     Uber launches a campaign to limit access to the courts by ballot
           initiative ............................................................................................................ 2

      B.     CAOC and its political action committees launch a counter-campaign .......... 4

Summary of Argument ........................................................................................................ 6

Argument .............................................................................................................................. 6

      I.     This Court should not censor nonparties' political speech ............................. 6

           A.     No authority supports Uber's attempt to enjoin nonparties .............. 6

           B.     Uber cannot overcome the presumption against stifling political
               speech ................................................................................................... 9

      II.    This Court should not pre-approve discovery against the nonparties ......... 11

Conclusion .......................................................................................................................... 13

NONPARTY CAOC'S OPPOSITION TO UBER'S MOTION FOR AN INJUNCTION
AGAINST SPEECH AND A NONPARTY SUBPOENA
3:23-MD-03084-CRB

# TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. Federal Election Commission,*
    333 F.3d 168 (D.C. Cir. 2003) ................................................................................13

*Alemite Manufacturing Corp. v. Staff,*
    42 F.2d 832 (2d Cir. 1930) ......................................................................................7

*Bantam Books, Inc. v. Sullivan,*
    372 U.S. 58 (1963) ....................................................................................................9

*Boos v. Barry,*
    485 U.S. 312 (1988) ................................................................................................10

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ...............................................................................................6, 12

*Citizens United v. Federal Election Commission,*
    558 U.S. 310 (2010) ..................................................................................................6

*Columbia Broadcasting Systems, Inc. v. United States District Court,*
    729 F.2d 1174 (9th Cir. 1984) ...............................................................................11

*Comedy Club, Inc. v. Improv West Associates,*
    553 F.3d 1277 (9th Cir. 2009) .................................................................................7

*Compaq Computing Corp. v. Packard Bell Electronics, Inc.,*
    163 F.R.D. 329 (N.D. Cal. 1995) .....................................................................11, 13

*cPanel, LLC v. Asli,*
    719 F. Supp. 3d 1133 (D. Or. 2024) ........................................................................7

*Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.,*
    649 F.2d 646 (9th Cir. 1980) .................................................................................11

*Eu v. San Francisco County Democratic Central Committee,*
    489 U.S. 214 (1989) ................................................................................................13

*Gentile v. State Bar of Nevada,*
    501 U.S. 1030 (1991) ...............................................................................8, 9, 10, 11

*Hansberry v. Lee,*
    311 U.S. 32 (1940) ....................................................................................................6

*In re Dan Farr Products,*
    874 F.3d 590 (9th Cir. 2017) .................................................................................11

ii

*In re Providence Journal Co.,*
    820 F.2d 1342 (1st Cir. 1986) ................................................................. 9

*In re Providence Journal Co.,*
    820 F.2d 1354 (1st Cir. 1987) ................................................................. 9

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.,*
    123 F. Supp. 3d 1215 (N.D. Cal. 2015) ................................................. 11

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) ............................................................... 10

*Koussa v. Attorney General,*
    188 N.E.3d 510 (Mass. 2022) .................................................................. 3

*Levine v. United States District Court,*
    764 F.2d 590 (9th Cir. 1985) ................................................................... 8

*McCutcheon v. Federal Election Commission,*
    572 U.S. 185 (2014) ............................................................................... 10

*Murphy-Fauth v. BSNF Railway Co.,*
    2018 WL 5312201 (D. Mont. Apr. 4, 2018) ........................................... 8

*NAACP v. Alabama,*
    357 U.S. 449 (1958) ............................................................................... 12

*Near v. Minnesota ex rel. Olson,*
    283 U.S. 697 (1931) ................................................................................. 9

*Nebraska Press Association v. Stuart,*
    427 U.S. 539 (1976) .................................................................. 6, 9, 10, 11

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ............................................................................... 10

*New York Times Co. v. United States,*
    403 U.S. 713 (1971) ............................................................................... 10

*Perry v. Schwarzenegger,*
    591 F.3d 1126 (9th Cir. 2009) ............................................................. 6, 12

*Richards v. Jefferson County,*
    517 U.S. 793 (1996) ................................................................................. 6

*Standing Committee on Discipline of United States District Court v. Yagman,*
    55 F.3d 1430 (9th Cir. 1995) ................................................................ 8, 9

*Tashjian v. Republican Party of Connecticut,*
    479 U.S. 208 (1986)............................................................................................12

*Uber Sexual Assault Survivors for Legal Accountability v. Uber Technologies, Inc.,*
    562 P.3d 519 (Nev. 2025) .................................................................................2, 3

*United States v. Columbia Broadcasting Systems, Inc.,*
    666 F.2d 364 (9th Cir. 1982).............................................................................11

*Vasquez v. Rackauckas,*
    734 F.3d 1025 (9th Cir. 2013).............................................................................7

**Rules**

Fed. R. Civ. P. 45 ....................................................................................................11

Fed. R. Civ. P. 65 ......................................................................................................7

**Other Authorities**

Protecting American Consumers Together,
    *Ambulance Lawyer Con* (YouTube, Dec. 17, 2025),
    https://www.youtube.com/watch?v=DlRyMLdxdDg. .........................................4

Protecting American Consumers Together,
    *Billboard Lawyers Ruin Everything, Episode One: Childhood* (YouTube, Sept. 16,
    2025), https://www.youtube.com/
    watch?v=bNhunogf7f0.........................................................................................4

Protecting American Consumers Together, *California: It's Time To End Lawsuit
    Abuse* (YouTube, June 27, 2025), https://www.youtube.com/watch?v=BHpm-
    XGt0PI .................................................................................................................4

Uber asks this Court to impose a prior restraint on political speech and to authorize a subpoena into the inner workings of a rival political campaign. As a nonparty, Consumer Attorneys of California (CAOC) appears for the limited purpose of opposing Uber's motion insofar as it seeks relief against CAOC or CAOC's independent political action committees.

## INTRODUCTION

Uber and CAOC are political rivals. As it has done in other states in recent years, Uber has proposed a ballot initiative that would make it harder for Californians to hold Uber accountable in court. Alongside its initiative, Uber is funding an extensive ad campaign that vilifies plaintiffs' lawyers in California. In direct response, Uber's opponents—including CAOC's political action committees—have launched a counter-campaign: a competing ballot initiative (the "Sexual Assault Against Rideshare Passengers and Drivers Prevention and Accountability Act") and an accompanying ad campaign titled "Every 8 Minutes."

Like its efforts elsewhere, Uber's campaign in California seeks to silence victims by blocking their access to court, preventing them from hiring lawyers to tell their stories, and making it more difficult for them to secure compensation. But Uber isn't content to stop there. Now it also wants to silence the speech of its political adversaries. Unhappy with the counter-campaign, Uber asks this Court to reach beyond this litigation and hand it a strategic advantage on the political battlefield. Specifically, Uber asks the Court (1) to impose a prior restraint on the political speech of nonparties by enjoining the "Every 8 Minutes" ads, and (2) to bless, in advance, a fishing expedition into its rivals' campaign.

Even if Uber's motion had any basis in fact, granting such extraordinary relief in the midst of an ongoing political campaign would constitute an unprecedented infringement of an advocacy organization's First Amendment rights of free speech and association. Worse still, Uber's motion is untethered to the facts. Indeed, no part of Uber's story—that the plaintiffs' lawyers mounted an ad campaign to taint a jury pool—is remotely true.

*First*, Uber's motion withholds essential context: It fails to inform the Court that the ad campaign it wants enjoined is a direct response in a battle over competing ballot

1  initiatives—a battle that Uber itself instigated three months ago when it injected itself into
2  California politics by proposing a constitutional amendment to curtail access to the courts,
3  accompanied by a multimillion-dollar ad blitz attacking plaintiffs' lawyers across the state.

4      *Second*, Uber professes concern about the jury pool for the upcoming bellwether trial
5  in the case of Jaylynn Dean, who alleges that she was raped by her Uber driver in Arizona.
6  But none of the television ads at issue aired in Arizona—which makes sense, because they are
7  aimed at California voters, not Arizona jurors. All the while, Uber continues to pour money
8  into its own messaging aimed at downplaying its sexual-assault problem.

9      *Third*, Uber makes unfounded allegations about the role of counsel in this MDL. No
10  lawyer in this litigation had any role in approving, directing, or running the "Every 8 Minutes"
11  ad campaign. It is overseen by independent political action committees in which they play no
12  part. And Uber's allegations about leaks to the *New York Times* are irrelevant. All of the
13  information in the "Every 8 Minutes" ads, including the statistic published in the *Times*, was
14  publicly available at the time the ads were created. In any event, the magistrate judge found
15  no evidence that any lawyer in this MDL was responsible for leaks to the *Times*.

16      This Court need not, and therefore should not, wade into this vigorous political dispute.
17  There is no basis in existing law, or in this factual record, that could justify suppressing or
18  subpoenaing nonparties' political speech. Uber's motion should be denied.

19                                    **BACKGROUND**

20  **A.    Uber launches a campaign to limit access to the courts by ballot**
21  **       initiative.**

22      For years, Uber has engaged in a multi-state campaign to attack the civil justice
23  system through what courts have described as "deceptive and misleading" ballot initiatives.
24  *Uber Sexual Assault Survivors for Legal Accountability v. Uber Techs., Inc.*, 562 P.3d 519,
25  519 (Nev. 2025).[1] Earlier this year, the Nevada Supreme Court struck Uber's proposed
26
27      [1] Unless otherwise specified, all internal quotation marks, alterations, and citations are
omitted from quotations throughout.
28

1   initiative to impose a 20% cap on attorneys' fees in all civil cases, concluding that the initiative,

2   framed as *protecting* victims' rights, impermissibly sought to mislead voters about its

3   effects—including its formula for plaintiffs' recovery of medical costs. *See id.* Other courts

4   have similarly rejected Uber's attempt to use "voter confusion" and "obfuscation" to make it

5   harder for people to take Uber to court. *See Koussa v. Att'y Gen.*, 188 N.E.3d 510, 516–17,

6   519–20 (Mass. 2022) (striking Uber's initiative from the ballot in Massachusetts because it

7   used "murky language" to "redefine the scope of tort recovery for third parties, including

8   those who may have been injured in traffic accidents caused by the negligence of app-based

9   drivers, or even sexually assaulted by them").

10       Now Uber has its sights set on California. On October 3, 2025, Uber submitted a ballot

11   initiative to the California Attorney General titled the "Protecting Automobile Accident

12   Victims from Attorney Self-Dealing Act." Gupta Decl., Ex. A. The initiative purports to

13   protect Californians injured in car accidents. In reality, it proposes amendments to the

14   California Constitution that, according to the Attorney General, would "increase victims'

15   burden of proof and limit the amounts they may recover" in personal injury suits. Gupta Decl.,

16   Ex. B. Among other things, the Attorney General's official summary notes, it would amend

17   the Constitution to limit "victims' recovery of medical expenses." *Id.* It would also limit "fees

18   their attorneys may receive," imposing a flat cap of 25% on contingency fees; the initiative

19   "does not," however, "restrict fee arrangements for defendants' attorneys." *Id.*

20       As part of its attempt to convince Californians to vote for this ballot initiative, Uber

21   has launched a statewide advertising campaign. Uber has already committed $12 million

22   toward a fundraising committee for the ballot initiative. *See* Gupta Decl., Ex. C at 3. Uber also

23   funds a coalition called "Protecting American Consumers Together" (PACT), an entity that

24   spends millions of dollars annually targeting plaintiffs' lawyers. Gupta Decl., Ex. D. Just two

25   weeks ago, PACT announced "a new television ad campaign airing in California markets" that

26   spreads the message that "ambulance lawyers are causing chaos." Gupta Decl., Ex. E at 2–3.

27   PACT plans to spend six figures on ads that "will air across cable television and during NFL,

28

NHL and NBA broadcasts, reaching millions of Californians." *Id.* at 3. Already, PACT has produced videos disparaging plaintiffs' lawyers that are aimed at Californians: These include "California: It's Time to End Lawsuit Abuse,"[2] "Billboard Lawyers Ruin Everything,"[3] and "Ambulance Lawyer Con."[4] PACT's videos have racked up hundreds of thousands of views on YouTube alone. PACT is also producing a documentary, which it plans to release in 2026, titled "Behind the Settlement: What Really Happens After You Hire a Billboard Lawyer." Gupta Decl., Ex. F at 2–3. Uber has also funded PACT campaigns outside of California— including seven-figure ad campaigns in Georgia and Texas earlier this year—that also target plaintiffs' lawyers and so-called "lawsuit abuse." *See* Gupta Decl., Ex. G at 2; Ex. H at 3.

### B.   CAOC and its political action committees launch a counter-campaign.

CAOC, a professional organization of plaintiffs' lawyers, disagrees with Uber's messaging about plaintiffs' lawyers and does not want Uber's ballot initiative to succeed. In response to Uber's proposed ballot initiative in California, CAOC has joined the "Alliance Against Corporate Abuse," a consortium that is sponsoring its own ballot initiatives to counter Uber's, and has committed millions of dollars toward that effort. Gupta Decl., Ex. C at 3. One of these ballot initiatives, "The Sexual Assault Against Rideshare Passengers and Drivers Prevention and Accountability Act," aims to protect consumers by requiring rideshare companies like Uber to implement fingerprinting and background checks for their drivers. Gupta Decl., Ex. I at 3–4. Among other things, it would also limit rideshare companies' ability to hire drivers who have been convicted of rape, sexual battery, violent felonies, or domestic-violence offenses, and it would require these companies to publicly report data on sexual misconduct and assault involving passengers and drivers. *See id.* at 4–5.

---

[2] Protecting American Consumers Together, *California: It's Time To End Lawsuit Abuse* (YouTube, June 27, 2025), https://www.youtube.com/watch?v=BHpm-XGt0PI.

[3] Protecting American Consumers Together, *Billboard Lawyers Ruin Everything, Episode One: Childhood* (YouTube, Sept. 16, 2025), https://www.youtube.com/watch?v=bNhunogf7f0.

[4] Protecting American Consumers Together, *Ambulance Lawyer Con* (YouTube, Dec. 17, 2025), https://www.youtube.com/watch?v=DlRyMLdxdDg.

NONPARTY CAOC'S OPPOSITION TO UBER'S MOTION FOR AN INJUNCTION
AGAINST SPEECH AND A NONPARTY SUBPOENA
3:23-MD-03084-CRB

The CAOC PAC is a political action committee that was formed to support and oppose California political candidates and ballot measures; it is a political adversary of Uber. *See* Gupta Decl. ¶ 14. The CAOC PAC's Executive Board is the governing body for several political committees—collectively known as the CAOC PACs—including the CAOC Initiative Defense PAC. *See id.*

In response to Uber's campaign in California and in support of the Alliance Against Corporate Abuse's ballot initiative, the CAOC PACs launched their own counter-campaign— the "Every 8 Minutes" ad campaign—in late October, just weeks after Uber introduced its proposed initiative. *Id.* ¶ 15. The ads quote a *New York Times* article, spotlighting the statistic that "[a]lmost every 8 minutes a case of sexual assault or sexual misconduct was reported to Uber." Gupta Decl., Ex. J at 2; Ex. K at 2. These ads, aimed at Californians, run exclusively in California. *See* Gupta Decl. ¶ 18; ECF No. 4819-1, London Decl. ¶ 12.

Uber speculates (at 1–2), without evidence, that MDL counsel was responsible for leaking sealed documents to the *New York Times*. But the ads drew only on information that was publicly available at the time. In any event, lead counsel have certified that they had no role in leaks to the *Times*, *see* ECF No. 4819-1, London Decl., Ex. 5, and Judge Cisneros held a hearing and found no evidence that any lawyer in this MDL leaked sealed documents. ECF No. 3822 at 2 (concluding that "this matter concerns a sealed filing [from] the JCCP").

Nor was any lawyer in this MDL responsible for creating, directing, or approving the ad campaign. *See* Gupta Decl. ¶ 17–18; ECF No. 4819-1, London Decl. ¶¶ 14–15. It was the CAOC PACs and their Board that created, directed, and approved the ads. *See* Gupta Decl. ¶ 15. No member of this MDL's leadership team sits on the CAOC PAC Board. Gupta Decl. ¶ 16; *see also* ECF No. 4819-1, London Decl. ¶ 15. The PACs are independent entities from CAOC, with their own bylaws and governing structures. *See id.* ¶ 14. The CAOC PACs paid for the ads and created a website for the campaign. *See* Gupta Decl., Ex. J at 2; Ex. K at 2. Meanwhile, Uber continues to pour money into its own messaging aimed at convincing women that Uber is safe, sexual-assault problem aside. *See* Gupta Decl., Ex. L.

1

## SUMMARY OF ARGUMENT

2        Uber asks this Court to impose "the most serious and least tolerable infringement on

3    First Amendment rights"—an unconstitutional prior restraint. *Neb. Press Ass'n v. Stuart*,

4    427 U.S. 539, 559 (1976). And Uber's discovery request, which seeks the disclosure of its

5    political adversaries' internal strategy, would likewise infringe the First Amendment "right

6    to associate with others to advance one's shared political beliefs … , and to do so in private."

7    *Perry v. Schwarzenegger*, 591 F.3d 1126, 1142 (9th Cir. 2009). These constitutional rights are

8    at their apex where, as here, the targeted speech is an ongoing political campaign. Political

9    speech is, after all, entitled to the "fullest and most urgent application" of First Amendment

10    protection. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010); *accord*

11    *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) ("Discussion of public issues and debate on the

12    qualifications of candidates are integral to the operation of the system of government

13    established by our Constitution."). This Court should deny Uber's motion to suppress and to

14    subpoena nonparties' constitutionally protected expression.

15

## ARGUMENT

16    **I.    This Court should not censor nonparties' political speech.**

17        Uber's request for political censorship fails for two reasons. First, the text of Federal

18    Rule of Civil Procedure 65, and the longstanding common-law principles on which it rests,

19    prohibit the requested relief. Second, even if Uber could obtain injunctive relief against

20    nonparties, it can't overcome the extraordinarily heavy presumption against a prior restraint

21    targeting the political speech of a rival in an ongoing campaign.

22        **A.    No authority supports Uber's attempt to enjoin nonparties.**

23        "It is a principle of general application in Anglo-American jurisprudence that one is

24    not bound by a judgment in personam in a litigation in which he is not designated as a party

25    or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S.

26    32, 40 (1940). This principle, reflecting the "deep-rooted historic tradition that everyone

27    should have his own day in court," *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996), is

28

1  codified in Federal Rule of Civil Procedure 65, which contemplates only two types of

2  nonparties who may be bound by an injunction—parties who "aid or abet an enjoined party,"

3  or those who are "in privity with, successors in interest to, or are otherwise legally identified

4  with the enjoined party." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1053 n.25 (9th Cir. 2013); *see*

5  *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (courts may only enjoin nonparties

6  that "either abet the defendant" or are "legally identified with him"). "The text of Rule 65(d)

7  is exclusive, stating that an injunction can permissibly bind 'only' those persons listed in Rule

8  65(d)." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009). Along

9  these lines, multiple district courts within the Ninth Circuit have "refused to bind non-parties

10  to an injunction, citing Rule 65(d)." *cPanel, LLC v. Asli*, 719 F. Supp. 3d 1133, 1155 n.9 (D.

11  Or. 2024) (collecting cases).

12      CAOC and its PACs fall into neither of Rule 65(d)'s categories. Uber does not contend

13  otherwise: It makes no mention of Rule 65(d) or its common-law history. Instead, Uber

14  asserts (at 8)—without evidence—that counsel in this MDL "made the statements at issue

15  through CAOC." Even construing that unsubstantiated assertion as a Rule 65(d) argument,

16  CAOC and its PACs have not acted "in … concert" with the MDL leadership team. *See* Fed.

17  R. Civ. P. 65(d)(2)(C). Recharacterizing political opposition as "acting in concert" would

18  collapse Rule 65(d)'s carefully drawn limits and permit injunctions against any advocacy

19  group that shares a common interest with a party to litigation. Nor are CAOC and its PACs

20  in privity or otherwise legally identified with the plaintiffs in this action. *See* Fed. R. Civ. P.

21  65(d)(2)(B). The record, despite Uber's best efforts to argue otherwise, shows the opposite.

22      Uber's fictionalized version of the facts can't shoehorn this case into Rule 65's

23  requirements. Uber (at 1–4) hypothesizes the following attenuated series of events: (1) the

24  plaintiffs' lawyers in this MDL intentionally leak a sealed litigation document to the *New York*

25  *Times*, in violation of a protective order; (2) the *Times* reports on that document in an unfairly

26  prejudicial manner; and (3) the same unscrupulous lawyers, through CAOC, mount an ad

27  campaign designed to disseminate the fruits of that poisonous tree and taint the jury pool for

28

1  an upcoming trial in Arizona. Each step of this conspiracy theory is wrong. First, and

2  crucially, it fails to disclose that the "Every 8 Minutes" campaign is the counterstrike in a

3  political battle over competing ballot initiatives that Uber itself initiated three months ago.

4  *See supra* at 4–5. Second, Uber dredges up leak allegations that are irrelevant because the

5  ads drew only on information that was publicly available at the time. In any event, Uber

6  implies that the Court found MDL counsel responsible for a leak when, in fact, lead counsel

7  have attested to the contrary and the magistrate judge found no evidence that any lawyer in

8  this MDL was responsible. *See supra* at 5. Third, Uber suggests that the MDL leadership

9  team was responsible for creating, directing, and approving the ad campaign. But, in fact,

10  they played no role in doing so, and CAOC's independent PACs launched the campaign only

11  after Uber proposed its initiative. *See id.* Finally, Uber presents no evidence that any

12  television ads have aired in Arizona, where the bellwether trial will take place. Nor can it—

13  the campaign is aimed at California voters, not Arizona jurors, and the ads run only in

14  California. *See id.*

15      Unable to surmount Rule 65's text or history, Uber ignores it. The company instead

16  cites solely cases (at 5, 7) in which courts restrained the speech of a *party* to an action. *See,*

17  *e.g.*, *Levine v. U.S. Dist. Ct.*, 764 F.2d 590, 595 (9th Cir. 1985) (considering an order that

18  "applie[d] only to trial participants"); *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1057 (1991)

19  (explaining that "the speech of *those participating before the courts* could be limited");

20  *Standing Comm. on Discipline of U.S. Dist. Ct. v. Yagman*, 55 F.3d 1430, 1442 (9th Cir. 1995)

21  (analyzing speech made by "lawyers involved in pending cases"); *Murphy-Fauth v. BSNF*

22  *Ry. Co.*, 2018 WL 5312201, at *2 (D. Mont. Apr. 4, 2018) (same).

23      But these cases all reflect the principle that it may be "appropriate to impose greater

24  restrictions on the free speech rights of trial participants than on the rights of

25  nonparticipants," and that "[t]he case for restraints on trial participants is especially strong

26  with respect to attorneys." *Levine*, 764 F.2d at 595. Because "court personnel and attorneys

27  have a fiduciary responsibility not to engage in public debate that will redound to the

28

NONPARTY CAOC'S OPPOSITION TO UBER'S MOTION FOR AN INJUNCTION
AGAINST SPEECH AND A NONPARTY SUBPOENA
3:23-MD-03084-CRB

detriment of the accused or that will obstruct the fair administration of justice," the First Amendment interests of such "officers of the court" are diminished. *Neb. Press*, 427 U.S. at 601 n.27 (Brennan, J., concurring). But the Supreme Court has carefully drawn a "distinction between participants in the litigation and strangers to it." *Gentile*, 501 U.S. at 1072–73. And it has never suggested that a prior restraint is appropriate against nonparties to an action, *see id.* at 1072 n.5—particularly nonparties that are the defendant's own political adversaries.

Rather, consistent with Rule 65 and its common-law origins, the case law on prior restraints makes clear that only parties who "subject[] themselves to the court's jurisdiction" may be enjoined. *Neb. Press*, 427 U.S. at 609 n.36 (Brennan, J., concurring) (explaining that nonparties, including amici curiae, remain "free to disseminate prejudicial information in the same areas in which petitioners were precluded from doing so"). That conclusion also accords with the First Amendment interests at stake. After all, "a speech restriction that is not bounded by a particular trial or other judicial proceeding"—but targets the political statements of nonparties, in a campaign over ballot initiatives, for an indefinite period of time—"does far more than merely postpone speech." *Yagman*, 55 F.3d at 1443. It threatens to suppress "speech of public importance." *Id.*; *see In re Providence J. Co.*, 820 F.2d 1342, 1351 (1st Cir. 1986), *modified on reh'g*, 820 F.2d 1354 (1st Cir. 1987) (underscoring that "[o]ther media," including nonparties, were not subject to the challenged restraint). The Court should reject Uber's attempt to bypass Rule 65 and the paramount constitutional interests that it protects.

## B. Uber cannot overcome the presumption against stifling political speech.

Even setting aside the bar against enjoining nonparties, Uber cannot overcome the "heavy presumption" against the constitutional validity of prior restraints. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). In line with this presumption, the Supreme Court has said that prior restraints may be appropriate, if at all, in only the rarest of hypothetical circumstances—when necessary to safeguard information about troop movements during wartime, *see Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931), or to "suppress[]

NONPARTY CAOC'S OPPOSITION TO UBER'S MOTION FOR AN INJUNCTION
AGAINST SPEECH AND A NONPARTY SUBPOENA
3:23-MD-03084-CRB

1    information that would set in motion a nuclear holocaust." *N.Y. Times Co. v. United States*,

2    403 U.S. 713, 726 (1971) (Brennan, J., concurring). But even where the speech at issue could

3    impair the government's own national security interests, *see id.* at 714, or a criminal

4    defendant's Sixth Amendment fair trial rights, *see Neb. Press*, 427 U.S. at 561, the Court has

5    consistently invalidated prior restraints. In doing so, it has reiterated the general rule that

6    "the First Amendment stands as an absolute bar to the imposition of judicial restraints." *N.Y.*

7    *Times*, 403 U.S. at 725 (Brennan, J., concurring). And it has cautioned that "[t]he damage can

8    be particularly great when the prior restraint falls upon the communication of news and

9    commentary on current events." *Neb. Press*, 427 U.S. at 559.

10          Those interests are even further heightened where, as here, the targeted speech is an

11    ongoing political response to pending ballot initiatives. As explained above, *supra* at 4–5, the

12    "Every 8 Minutes" campaign was not developed by the plaintiffs' lawyers to advance their

13    interests in this MDL. Rather, it emerged as a direct response to Uber's own ballot initiative,

14    to lay the ground for the Alliance Against Corporate Abuse's competing ballot initiative. The

15    place to resolve that political conflict is the marketplace of ideas, not this lawsuit. That is

16    axiomatic to the First Amendment, which reflects a "profound national commitment" to the

17    principle that "debate on public issues "—like those at issue here—"should be uninhibited,

18    robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). And because

19    political campaigns "operate[] at the core of the First Amendment," *Boos v. Barry*, 485 U.S.

20    312, 318 (1988), courts must "err on the side of protecting political speech rather than

21    suppressing it." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 209 (2014); *see Klein v.*

22    *City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (chilling political speech for "even a

23    day or two may be intolerable"). Uber doesn't confront any of this.

24          Moreover, Uber cannot satisfy the heavy burden of strict scrutiny. Even putting aside

25    the PACs' speech interests, which are at a maximum here given their political content, Uber

26    fails to identify any "material prejudice" it might face. *Gentile*, 501 U.S. at 1075. Uber

27    presents no evidence that the television ads ran in Arizona, where the upcoming trial will take

28

1   place, and even if it could, those advertisements only include information that has already

2   been public since August. *See* Gupta Decl., Ex. K; *see, e.g.*, *Columbia Broad. Sys., Inc. v. U.S.*

3   *Dist. Ct.*, 729 F.2d 1174, 1180 (9th Cir. 1984) ("[I]t is not enough that publicity might prejudice

4   one directly exposed to it. If it is to be restrained, the publicity must threaten to prejudice the

5   entire community so that twelve unbiased jurors can not be found.").

6        Nor is Uber's proposed order "narrowly tailored to achieve [its] objectives." *Gentile*,

7   501 U.S. at 1076. It targets the political statements of nonparties, on a campaign over ballot

8   initiatives, for an indefinite period of time. And a prior restraint cannot issue unless it is "clear

9   that further publicity, unchecked, would so distort the views of potential jurors that 12 could

10  not be found who would … fulfill their sworn duty." *Neb. Press*, 427 U.S. at 569. Uber makes

11  no such showing here, particularly given the availability of less restrictive means such as voir

12  dire and jury instructions. *See, e.g.*, *In re Dan Farr Prods.*, 874 F.3d 590, 595 (9th Cir. 2017).

13  In short, both Rule 65 and the First Amendment foreclose Uber's proposed censorship of

14  nonparties' political speech about pending ballot initiatives.

15  **II.    This Court should not pre-approve discovery against the nonparties.**

16       Uber's extraordinary request (at 9–10) for pre-approval of discovery into the internal

17  strategy of CAOC and its PACs should be rejected for many of the same reasons.

18       For starters, Rule 45 protects nonparties from subpoenas that would impose an

19  "undue burden." Fed. R. Civ. P. 45(d)(1). And "if the sought-after documents are not relevant

20  nor calculated to lead to the discovery of admissible evidence, then *any burden whatsoever*

21  imposed would be by definition 'undue.'" *Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*,

22  163 F.R.D. 329, 335–36 (N.D. Cal. 1995). Additionally, because nonparties are "powerless to

23  control the scope of litigation and discovery," *United States v. Columbia Broad. Sys., Inc.*,

24  666 F.2d 364, 371 (9th Cir. 1982), "the Ninth Circuit has long held that nonparties subject to

25  discovery requests deserve extra protection from the courts." *Intermarine, LLC v. Spliethoff*

26  *Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1218–19 (N.D. Cal. 2015); *see Dart Indus.*

27  *Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980) (recognizing that "the word

28

nonparty serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery"). But Uber has not even followed the ordinary Rule 45 procedures—serving a subpoena with specific, denominated lines of inquiry and then attempting to defend that subpoena in opposition to a motion to quash. Instead, it asks (at 9–10) this Court to authorize discovery in the abstract, without any particularized requests, relevance showings, or opportunity to object—an approach Rule 45 does not countenance.

On top of the heightened protection it affords nonparties, the Ninth Circuit applies "exacting scrutiny" when a subpoena targets the inner workings of a political group. *Perry*, 591 F.3d at 1139–40 ("A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment privilege."). "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). "The First Amendment protects political association as well as political expression," *Buckley*, 424 U.S. at 15, and "[i]mplicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private." *Perry*, 591 F.3d at 1142. For that reason, where, as here, disclosure "would likely have a chilling effect on political association and the formulation of political expression," the party seeking discovery must "demonstrate a sufficient need for the discovery to counterbalance that infringement." *Id.* at 1143, 1145. Uber fails here, too. Indeed, instead of proceeding in the normal course (by subpoena), Uber again asks this Court to bless, sight unseen, an open-ended fishing expedition into the political speech of its adversaries.

This belated discovery request plainly infringes the First Amendment interests of CAOC and its PACs. "There is no question that participation in campaigns is a protected activity," and "[c]ompelled disclosure of internal campaign information can deter that participation" and likewise "have a deterrent effect on the free flow of information within campaigns." *Id.* at 1141–42; *accord Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 224 (1986) ("The Party's determination of the boundaries of its own association, and of the

structure which best allows it to pursue its political goals, is protected by the Constitution."); *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989) (explaining that a state may not "interfere with a [political] party's internal affairs" absent a "compelling state interest"); *AFL-CIO v. Fed. Election Comm'n*, 333 F.3d 168, 177 (D.C. Cir. 2003) ("[E]xtensive interference with political groups' internal operations and with their effectiveness … implicate[s] significant First Amendment interests in associational autonomy.").

Finally, the discovery request also fails the constitutional inquiry—and Rule 45—because Uber seeks information that is neither relevant nor calculated to lead to the discovery of admissible evidence. *Cf. Compaq Comput. Corp.*, 163 F.R.D. at 335–36. First, as explained above, *supra* at 5, neither the bellwether plaintiffs nor any lawyers on this MDL's leadership team are associated with CAOC PAC's Board, the body that approved, directed, and launched the "Every 8 Minutes" campaign. Second, neither the scope of CAOC's ad buys nor its editing of the television ad is relevant to this litigation. And Uber's final bid (at 10) for "the source for the assertions made in the campaign" is a transparent attempt to use this litigation as a vehicle to attack the content of its rival's political ads and rehash its arguments about the *New York Times* article. This Court should reject Uber's irrelevant and unconstitutional discovery request in full.

## CONCLUSION

This Court should deny Uber's request to suppress the political speech of nonparty CAOC (and, more accurately, its independent PACs), and it should likewise deny Uber's request to subpoena the inner workings of a rival political campaign.

NONPARTY CAOC'S OPPOSITION TO UBER'S MOTION FOR AN INJUNCTION
AGAINST SPEECH AND A NONPARTY SUBPOENA
3:23-MD-03084-CRB

Dated: December 29, 2025

Respectfully submitted,

*/s/ Deepak Gupta*

Deepak Gupta (*pro hac vice*)
Gregory A. Beck (*pro hac vice*)
Sonali Mehta (*pro hac vice*)
**GUPTA WESSLER LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 888-1741
Facsimile: (202) 888-7792
*deepak@guptawessler.com*
*greg@guptawessler.com*
*sonali@guptawessler.com*

Varshini Parthasarathy (SBN 350769)
**GUPTA WESSLER LLP**
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 573-0336
Facsimile: (202) 888-7792
*varshini@guptawessler.com*

*Counsel for Nonparty Consumer
Attorneys of California (CAOC)*

NONPARTY CAOC'S OPPOSITION TO UBER'S MOTION FOR AN INJUNCTION
AGAINST SPEECH AND A NONPARTY SUBPOENA
3:23-MD-03084-CRB