

**NIELSEN MERKSAMER**
NIELSEN MERKSAMER PARRINELLO GROSS & LEONI LLP

POLITICAL & GOVERNMENT | LAW ADVOCACY LITIGATION

November 10, 2025

RECEIVED
Nov 10 2025

Hon. Rob Bonta
Attorney General of California
1300 I Street, 17th Floor
Sacramento, CA 95814

Attention: Ms. Anabel Renteria, Initiative Coordinator

INITIATIVE COORDINATOR
ATTORNEY GENERAL'S OFFICE

Re: Request for Title and Summary for Proposed Initiative Constitutional Amendment (A.G. # 25-0022) – *Amended Language*

Dear Mr. Bonta:

We serve as counsel for the proponents of the Protecting Automobile Accident Victims from Attorney Self-Dealing Act (A.G. # 25-0022). On the proponents' behalf, enclosed are amendments to this proposed measure submitted pursuant to subdivision (b) of Section 9002 of the Elections Code. The $2,000 filing fee and required proponent affidavits were included with the original submission.

All legal inquires or correspondence relative to this initiative should be directed to:

Kurt R. Oneto
Nielsen Merksamer LLP
1415 L Street, Suite 1200
Sacramento, CA 95814
(916) 446-6752
koneto@nmgovlaw.com

Sincerely,

*Kurt R. Oneto*

Kurt R. Oneto
Enclosures

SACRAMENTO
1415 L STREET, SUITE 1200
SACRAMENTO, CA 95814
T 916.446.6752  F 916.446.6106

BAY AREA – SAN FRANCISCO
2350 KERNER BLVD, SUITE 250
SAN RAFAEL, CA 94901
T 415.389.6800  F 415.388.6874

NMGOVLAW.COM

November 10, 2025

**VIA PERSONAL DELIVERY**

Hon. Rob Bonta
Attorney General of California
1300 I Street, 17th Floor
Sacramento, CA 95814

Attention:   Ms. Anabel Renteria, Initiative Coordinator

Re:   Request for Title and Summary for Proposed Initiative Constitutional Amendment (A.G. No. 25-0022) – *Amended Language*

Dear Mr. Bonta:

Pursuant to Section 9002(b) of the California Elections Code, please find attached hereto amendments to the above-captioned initiative measure. I hereby request that a title and summary be prepared for the initiative measure using the attached amended language. The required proponent affidavit(s) pursuant to Sections 9001 and 9608 of the California Elections Code, and a check for $2,000.00, were included with the original submission.

All inquires or correspondence relative to this initiative should be directed to Kurt R. Oneto at koneto@nmgovlaw.com or 916-446-6752.

Thank you for your assistance.

Sincerely,

Kurt R. Oneto, Proponent

Enclosure: Proposed Initiative Constitutional Amendment – *Amended Language*

_____Nov. 10_____, 2025

**VIA PERSONAL DELIVERY**

Hon. Rob Bonta
Attorney General of California
1300 I Street, 17th Floor
Sacramento, CA 95814

Attention:   Ms. Anabel Renteria, Initiative Coordinator

Re:   Request for Title and Summary for Proposed Initiative Constitutional Amendment (A.G. No. 25- 0022____) – _Amended Language_

Dear Mr. Bonta:

Pursuant to Section 9002(b) of the California Elections Code, please find attached hereto amendments to the above-captioned initiative measure. I hereby request that a title and summary be prepared for the initiative measure using the attached amended language. The required proponent affidavit(s) pursuant to Sections 9001 and 9608 of the California Elections Code, and a check for $2,000.00, were included with the original submission.

All inquires or correspondence relative to this initiative should be directed to Kurt R. Oneto at koneto@nmgovlaw.com or 916-446-6752.

Thank you for your assistance.

Sincerely,

John Moffatt, Proponent

Enclosure: Proposed Initiative Constitutional Amendment – _Amended Language_

*Section 1. Title.*

This Act shall be known and may be cited as the Protecting Automobile Accident Victims from Attorney Self-Dealing Act.

*Section 2. Findings and Declarations.*

(a) Every year, thousands of Californians are hurt in car accidents. Unfortunately, some lawyers put their own profits ahead of the people they are supposed to represent.

(b) So-called "billboard attorneys" and other personal injury lawyers spend millions of dollars targeting low-income automobile accident victims, promoting huge payouts that rarely happen. According to recent data, the average settlement for a car accident is less than $30,000. Many automobile accident lawsuits settle quickly with little time invested by the attorney. In fact, based on recent data from the California Judicial Council, only around 1% of California automobile accident cases actually go to trial. Nevertheless, these lawyers often take one-third—and *sometimes close to one half*—of an automobile accident victim's recovery.

(c) What is worse, these lawyers often game the system by purposely increasing their client's medical bills–even when it leaves their client worse off. Billboard attorneys and other personal injury lawyers have a financial incentive to do this because higher medical bills can mean a larger overall payout, and therefore higher contingency fees for the attorney.

(d) For example, even though over 90% of Californians have access to health care coverage, many billboard attorneys and other personal injury lawyers frequently encourage automobile accident victims to obtain medical care from out-of-network medical providers who charge astronomical prices. Worse yet, the automobile accident victim, rather than their health insurance, is legally responsible for paying these outrageous costs. These attorneys can even have pre-existing relationships with the medical provider and repeatedly send clients to that provider, not to help the client receive the best possible medical care, but instead to drive up medical bills and therefore the attorney's own profit.

(e) Many of these attorneys will even sometimes direct or pressure those medical providers to perform excessive or unnecessary medical care and to recommend excessive and unnecessary future medical care. Today, unscrupulous attorneys have an incentive to increase automobile accident victims' medical bills in order to increase their own fees through a larger overall payout, without regard for the wellbeing of the automobile accident victim.

(f) In order to further increase the amount of money they make from automobile accident victims' cases, these attorneys can even go so far as to demand discounts, kickbacks, or payments from medical providers in exchange for sending them automobile accident victim patients.

(g) But attorneys' self-dealing schemes to enrich themselves by increasing their clients' medical bills can actually hurt their clients because it is often the automobile accident victim—not their health insurer or the attorney—who is personally obligated to pay these artificially inflated, excessive, and unnecessary attorney-driven medical expenses. If the attorney loses the case or recovers less than what the automobile accident victim owes, the automobile accident victim can be saddled with massive medical debt—sometimes in the hundreds of thousands of dollars—that they are personally responsible for paying. Automobile accident victims can also be subject to ongoing suffering from attorney-driven excessive or unnecessary medical care that is performed, or recommended to be performed, in the future.

(h) Reform is needed to protect automobile accident victims from these self-dealing tactics employed by billboard attorneys and other personal injury lawyers:

(1) First, automobile accident victims deserve to keep more of their own recovery. It is necessary to cap the amount attorneys can take as contingency fees in automobile accident cases to ensure that automobile accident victims retain at least 75 percent of the total amount recovered. Other victims, such as those harmed by medical malpractice or torts committed by the federal government, are protected from excessive attorney fees. California automobile accident victims should be similarly protected.

(2) Second, it is necessary to eliminate the financial incentives for billboard attorneys and other personal injury lawyers to subject automobile accident victims to unjustifiably high medical bills that automobile accident victims are personally responsible for, including when the automobile accident victim has health care coverage that would not leave them in debt. Incentives to pressure health care providers into performing excessive and unnecessary medical care on automobile accident victims, or into recommending such care in the future, should also be eliminated. This is best accomplished as follows:

(A) Automobile accident victims can be better protected from this harmful attorney self-dealing by establishing clear and consistent standards for the recovery of medical expenses

resulting from automobile accidents that are based on Medicare, Medi-Cal, and national health insurance databases. This would not prevent recovery for lost wages or pain and suffering.

(B) Implementing additional safeguards to better ensure automobile accident victims' medical care is reasonably necessary is another effective way to reduce the incentive for billboard attorneys and other personal injury attorneys to push automobile accident victims towards financially and medically risky treatment options that can cause them lasting hardship.

(C) In particular, automobile accident victims who obtain medical care outside the scope of health care coverage are especially vulnerable to abuse. Therefore, such medical care obtained outside the scope of health care coverage should be held to a higher standard of necessity as compared to care that would be covered by health insurance or is otherwise paid for in full. This will further reduce the incentive for attorneys to pressure automobile accident victims into financially and medically risky treatment options in addition to providing a legal basis for automobile accident victims and health care providers to push back against gamesmanship by self-interested attorneys.

These reforms will help protect automobile accident victims from being saddled with massive, uncovered medical debt, and protect them from being subjected to potentially excessive or unnecessary medical care that can cause them longstanding health issues. Once attorneys can no longer personally profit from outrageously priced and excessive medical care, automobile accident victims will be better protected from attorney self-dealing.

(3) Third, unscrupulous financial arrangements, referral agreements, and kickback schemes between billboard attorneys and other personal injury lawyers on the one hand, and health care providers who could be pressured by the lawyers on the other, that involve automobile accident victims must be prohibited. This will discourage attorneys from putting their own personal interests ahead of those of the automobile accident victims they represent. Additionally, whistleblowers who expose these types of schemes must be protected against retaliation so they will be more likely to speak out to protect automobile accident victims.

### Section 3. Statement of Purpose.

In enacting this Act, the purpose and intent of the People of the State of California is to better protect automobile accident victims from self-dealing billboard attorneys and other personal injury lawyers by guaranteeing automobile accident victims shall retain at least 75

percent of the total amount recovered in actions arising out of automobile accidents, eliminating financial incentives for attorneys to inflate automobile accident victims' medical expenses through padded billing and unnecessary and excessive medical care, prohibiting self-dealing financial arrangements between attorneys and health care providers that involve automobile accident victims, and protecting from retaliation whistleblowers who expose these types of schemes.

***Section 4. Article XXIII is added to the California Constitution, to read:***

## ARTICLE XXIII
## PROTECTION OF AUTOMOBILE ACCIDENT VICTIMS FROM ATTORNEY SELF-DEALING

**SECTION 1. Protection of Automobile Accident Victims from Excessive Attorney Fees.**

(a) An attorney shall not contract for or collect a contingency fee for representing any automobile accident victim seeking damages arising out of an automobile accident that would result in the automobile accident victim retaining less than seventy-five percent (75%) of the total amount recovered.

(b) An attorney who contracts to represent an automobile accident victim seeking damages arising out of an automobile accident on a contingency fee basis shall, at the time the contract is entered into, provide a duplicate copy of the contract to the automobile accident victim, or the automobile accident victim's guardian or representative. The contract shall be signed by both the attorney and the automobile accident victim, or the automobile accident victim's guardian or representative. The contract shall be in writing and shall include, but is not limited to, the following:

(1) A statement that subdivision (a) of this section establishes the minimum percentage of the total amount recovered that must be retained by the automobile accident victim, and that the attorney and automobile accident victim may negotiate a larger percentage of the total amount recovered that shall be retained by the automobile accident victim.

(2) A statement of the percentage allocation of the total amount recovered between the automobile accident victim and the attorney that has been agreed upon.

(3) A statement as to what extent, if any, the automobile accident victim could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract.

(4) A description of the standards for recovery of medical expenses contained in Section 2 of this article.

(5) A description of the prohibition on financial arrangements between attorneys and health care providers contained in Section 3 of this article.

(c)(1) A contract in violation of this section is void and unenforceable. Where a contract is void and unenforceable for violating this section, the attorney shall not be entitled to any portion of the total amount recovered.

(2) An attorney who contracts for or collects a contingency fee in violation of subdivision (a) is guilty of a misdemeanor, and may be subject to discipline by the State Bar, in addition to imposition of other civil and criminal penalties. An automobile accident victim may separately seek any remedy available at law or equity for a violation of subdivision (a).

(d) This section only applies to an attorney who contracts to represent an automobile accident victim seeking damages arising out of an automobile accident. This section does not alter or affect other laws that cap attorneys' fees for other causes of action, including causes of action that seek damages from a health care provider based upon alleged professional negligence by the health care provider.

(e) This section shall not apply to a contingency fee contract entered into, or a legal right to collect such a fee which accrued, prior to the effective date of this section.

**SEC. 2. Limitation on Attorneys' Ability to Inflate Medical Expenses for Automobile Accident Victims.**

(a)(1) This section shall apply in any civil action for the recovery of damages for medical expenses arising out of an automobile accident.

(2) This section does not apply to causes of action asserted against a health care provider for professional negligence.

(3) This section shall apply notwithstanding the collateral source rule.

(b) <u>Previously Paid Medical Expenses</u>. The following shall apply to the recovery of damages for previously paid medical expenses of an automobile accident victim:

(1) Evidence of previously paid medical expenses shall not reflect amounts which exceed the amount actually paid by or on behalf of the automobile accident victim to satisfy those expenses, plus the automobile accident victim's share of medical expenses such as co-pays or deductibles.

(2) If previously paid medical expenses are paid by a source other than health care coverage, the source and terms of such payment, and any evidence of the reasonable cost of previously paid medical expenses, including but not limited to what health care coverage would have paid, shall be admissible.

(c) <u>Past Unpaid Medical Expenses</u>. The following shall apply to the recovery of damages for past medical expenses of an automobile accident victim that remain unpaid:

(1) The reasonable cost of an automobile accident victim's past unpaid medical care shall be conclusively presumed to be the following:

(A) One hundred twenty-five percent (125%) of the fee-for-service Medicare reimbursement rate for the same or similar services in the general geographic region in which the services were rendered, calculated at the time the past medical care was provided; or

(B) If there is no applicable Medicare rate, then one hundred seventy percent (170%) of the applicable fee-for-service Medi-Cal reimbursement rate for the same or similar services in the general geographic region in which the services were rendered, calculated at the time the past medical care was provided; or

(C) If there is no applicable Medicare rate or Medi-Cal rate, then the median or average of rates paid by commercial insurers at the time the past medical care was provided for the same or similar services in the same or similar geographic region as set forth in the nonprofit database identified in subdivision (b) of Section 127452 of the Health and Safety Code, calculated at the time the past medical care was provided.

(d) <u>Future Medical Expenses</u>. The following shall apply to the recovery of damages for future medical expenses of an automobile accident victim:

(1) If the automobile accident victim has or is eligible for health care coverage other than Medicare or Medi-Cal, the fact of such health care coverage or eligibility is admissible, and evidence of the reasonable cost of an automobile accident victim's future medical care shall not

reflect amounts which exceed what such health care coverage would pay if the expenses were submitted to such health care coverage, plus the automobile accident victim's share of medical expenses under the health care coverage such as co-pays or deductibles.

(2) If the automobile accident victim does not have health care coverage or has health care coverage through Medicare or Medi-Cal, or is eligible for Medicare or Medi-Cal, the fact of such coverage or eligibility is admissible, and evidence of the reasonable cost of an automobile accident victim's future medical care shall not reflect amounts which exceed the following:

(A) One hundred twenty-five percent (125%) of the fee-for-service Medicare reimbursement rate for the same or similar services in the general geographic region in which the services will be rendered, calculated at the time of trial or arbitration for the medical care the automobile accident victim will receive; or,

(B) If there is no applicable Medicare rate, then one hundred seventy percent (170%) of the applicable fee-for-service Medi-Cal reimbursement rate for the same or similar services in the general geographic region in which the services will be rendered, calculated at the time of trial or arbitration for the medical care the automobile accident victim will receive; or

(C) If there is no applicable Medicare rate or Medi-Cal rate, then the median or average of rates paid by commercial insurers for the same or similar services in the same or similar geographic region as set forth in the nonprofit database identified in subdivision (b) of Section 127452 of the Health and Safety Code, calculated at the time of trial or arbitration for the medical care the automobile accident victim will receive.

(e) <u>Elements and Burden of Proof to Recover Medical Expenses</u>.

(1) <u>Elements for All Past Medical Expenses</u>. In order to recover damages for past medical expenses, whether previously paid or unpaid, the automobile accident victim must prove the reasonable cost of reasonably necessary medical care that the automobile accident victim has received.

(2) <u>Heightened Burden of Proof for Necessity of Past Unpaid Medical Expenses</u>. In order to recover damages for past unpaid medical expenses, an automobile accident victim must prove by clear and convincing evidence that the medical care received by the automobile accident victim was reasonably necessary.

(3) <u>Elements for Future Medical Expenses</u>. In order to recover damages for future medical expenses, an automobile accident victim must prove the reasonable cost of reasonably

necessary medical care that the automobile accident victim is reasonably certain to need in the future.

(4) <u>Other Elements and Requirements Unaffected</u>. All other elements or requirements under the law to recover damages for medical expenses which are not expressly addressed by this section remain unaffected.

**SEC. 3. Illegal Financial Arrangements Between Attorneys and Health Care Providers Involving Automobile Accident Victims.**

(a) It is unlawful for an attorney to refer an automobile accident victim to a health care provider if the attorney or the attorney's immediate family has a financial interest with the person that receives the referral.

(b) It is unlawful for an attorney to knowingly solicit or receive any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind, in return for referring an automobile accident victim to a health care provider for the furnishing or arranging for the furnishing of any medical care.

(c) A violation of this section is a misdemeanor, and may subject the attorney to discipline by the State Bar, in addition to imposition of other civil and criminal penalties.

**SEC. 4. Protections for Whistleblowers Who Report on Illegal Financial Arrangements Between Attorneys and Health Care Providers Involving Automobile Accident Victims.**

(a) No attorney, law firm, or employee of a law firm shall discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee to do any of the following:

(1) Provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of Section 3 of this article.

(2) File, cause to be filed, testify in, participate in, or otherwise assist in a proceeding filed or expected to be filed (with any knowledge of the employer) relating to an alleged violation of Section 3 of this article.

(b) A person who alleges discharge or other discrimination by any person in violation of subdivision (a) may seek relief in any of the following ways:

(1) Filing a complaint with the State Bar or the Labor Commissioner's Office.

(2) Bringing a civil action at law or equity, as available under state or federal law.

(c)(1) An employee prevailing in any action under paragraph (2) of subdivision (b) shall be entitled to all relief necessary to make the employee whole.

(2) Relief for any action under paragraph (2) of subdivision (b) shall include, but not be limited to, the following:

(A) Reinstatement with the same seniority status that the employee would have had but for the discrimination.

(B) Back pay, with interest.

(C) Compensation for any litigation costs or special damages sustained as a result of the discrimination, as well as reasonable attorney fees.

(D) Punitive damages, where deemed appropriate by the court or arbitrator to punish the employer and deter future violations by it or others.

(d) Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any federal or state law, or under any collective bargaining agreement.

(e) The rights and remedies provided for in this section may not be waived by any agreement, policy form, or condition of employment, to the extent permissible under state and federal law.

### SEC. 5. Sexual Harassment and Sexual Assault Exempted.

This article does not apply to any incident of sexual assault or sexual harassment, or any claim for damages, compensation, restitution, or other recovery as a result of sexual assault or sexual harassment.

### SEC. 6. Definitions.

For purposes of this article, as used in both the singular and plural form, the following definitions shall apply:

(a) "Automobile" means any self-propelled motor vehicle, with at least two wheels, designed for use principally upon streets and highways and subject to motor vehicle registration under the laws of this state, another state, or the United States.

(b) "Automobile accident" means an accident associated with the ownership, operation, maintenance, or use of an automobile resulting in bodily injury, death, property damage, or other loss. The term does not include incidents of sexual assault or sexual harassment.

(c) "Automobile accident victim" means a person seeking damages, compensation, restitution, or other recovery for injury, death, property damage, or other loss resulting from an automobile accident. The term does not include a person when that person is seeking recovery arising out of sexual assault or sexual harassment.

(d) "Civil action" includes an "action" as that term is defined by Section 22 of the Code of Civil Procedure, a civil case, or an arbitration.

(e) "Contingency fee" means any monetary compensation, however calculated, that is payable to an attorney only if there is an amount recovered for a person represented by the attorney, whether by agreement between the person and the person's attorney, or awarded by a court pursuant to any law.

(f) "Financial interest" means any type of ownership interest, debt, loan, lease, compensation, remuneration, discount, rebate, refund, dividend, distribution, subsidy, or other form of direct or indirect payment, whether in money or otherwise. A financial interest also exists if there is an indirect financial relationship between an attorney or an attorney's immediate family member and the referral recipient including, but not limited to, an arrangement whereby an attorney or an attorney's immediate family member has an ownership interest in an entity that leases property to the referral recipient. Any financial interest transferred by an attorney to any person, or otherwise established in any person, for the purpose of avoiding the prohibition in subdivision (a) of Section 3 of this article shall be deemed a financial interest of the attorney.

(g) "Health care coverage" means any third-party health care or disability services financing arrangement, including, but not limited to, arrangements with entities certified or authorized under federal law or under state law. "Health care coverage" includes, but is not limited to, health maintenance organization; preferred provider organization; group, individual, or family health insurance policies; managed care plans; fee-for-service plans; Self-Insured

Health Plans; Medi-Cal; Medicaid; Workers' Compensation; TRICARE; Medicare; and Medicare Supplemental Insurance.

(h) "Health care provider" means, but is not limited to, a "health care provider" as defined in all of the following: subdivision (f) of Section 120261, and subdivision (a) of Section 123105, of the Health and Safety Code; Section 4621 of the Probate Code; subdivision (p) of Section 56.05 of the Civil Code; and paragraph (1) of subdivision (h) of Section 10133.65 of the Insurance Code. "Health care provider" includes, but is not limited to, outpatient surgery settings and ambulatory surgery centers.

(i) "Immediate family" means a spouse, child, sibling, spouse of a child, spouse of a sibling, parent, or spouse of a parent.

(j) "Medi-Cal" means California's version of Medicaid under Title XIX of the federal Social Security Act, codified in state law at Chapter 7 (commencing with Section 14000) of Part 3 of Division 9 of the Welfare and Institutions or as later amended or superseded.

(k) "Medical care" means all of the following:

(1) Service rendered by a health care provider, or articles, devices, or drugs prescribed by a health care provider, when intended to aid in the mitigation or treatment of an injury, illness, or other medical condition.

(2) Products, services, and accommodations for diagnosis, cure, mitigation, treatment or prevention of disease or injury, including outpatient surgery settings or ambulatory surgery centers, physical rehabilitation, rehabilitative occupational training, licensed ambulance services, or other remedial treatment or care.

(l) "Medical expenses" means the monetary sums incurred by an automobile accident victim for medical care.

(m) "Medicare" means the federal Health Insurance for the Aged Act, Title XVIII of the Social Security Amendments of 1965 or as later amended or superseded.

(n) "Person" means all of the following:

(1) A natural person.

(2) A deceased natural person's estate.

(3) Any legal, corporate, or governmental entity of any kind.

(o) "Previously paid medical expenses" means medical expenses that have been paid by or on behalf of the automobile accident victim and accepted by the health care provider as payment in full.

(p) "Total amount recovered" means the net sum of all amounts paid or awarded to an automobile accident victim for injury or damage resulting from an automobile accident, whether paid through contract, settlement, arbitration, or judgment, and includes but is not limited to compensatory, non-compensatory, exemplary, statutory, or contractual damages, after deducting the reasonable and necessary disbursements and costs incurred in connection with the prosecution or settlement of the claim. Medical expenses, including liens incurred by the automobile accident victim, attorney liens or referral fees, and office-overhead costs or charges of the automobile accident victim's attorney are not deductible disbursements or costs.

(q)(1) "Unpaid medical expenses" means the medical expenses that have not been satisfied by payment by or on behalf of the automobile accident victim. Unpaid medical expenses include those medical expenses subject to a contractual lien and regardless of whether the right to collect the medical expenses has been sold or otherwise transferred.

(2) Unpaid medical expenses do not include those expenses that have been submitted for payment to health care coverage and which are owing payment by the health care coverage at the time of trial or arbitration.

### SEC. 7. Statutory References.

All cross-references made in this article to federal or state statutes refer to those statutes as they existed on December 31, 2025.

### *Section 5. Severability.*

The provisions of this Act are severable. If any portion, section, subdivision, paragraph, clause, subclause, sentence, phrase, word, or application of this Act is for any reason held to be invalid by a decision of any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this Act. The People of the State of California hereby declare that they would have adopted this Act and each and every portion, section, subdivision, paragraph, clause, subclause, sentence, phrase, word, and application not declared invalid or

unconstitutional without regard to whether any part of this Act or application thereof would be subsequently declared invalid.

### Section 6. *Effective Date.*

This Act shall take effect at the earliest possible date in accordance with Section 10 of Article II of the California Constitution. This Act shall become operative on the same day it takes effect.

### Section 7. *Conflicting Measures.*

(a) In the event that this initiative measure and another measure or measures pertaining to protecting automobile accident victims from attorney self-dealing shall appear on the same statewide election ballot, the other measure or measures shall be deemed to be in conflict with this measure. In the event that this initiative measure receives a greater number of affirmative votes, the provisions of this measure shall prevail in their entirety, and the provisions of the other measure or measures shall be null and void.

(b) If this initiative measure is approved by the voters but superseded in whole or in part by any other conflicting initiative measure approved by the voters at the same election, and such conflicting measure is later held invalid, this measure shall be self-executing and given full force and effect.

### Section 8. *Liberal Construction.*

This Act shall be liberally construed to give effect to its intent and purposes, which are expressed in Sections 2 and 3 of this Act.

### Section 9. *Legal Defense.*

The purpose of this section is to ensure that the people's precious right of initiative cannot be improperly annulled by state politicians who refuse to defend the will of the voters. Therefore, if this Act is approved by the voters of the State of California and thereafter subjected to a legal challenge which attempts to limit the scope or application of this Act in any way, or alleges this Act violates any state or federal law in whole or in part, and both the Governor and

Attorney General refuse to defend this Act to the fullest extent possible on behalf of the State of California, then the following actions shall be taken:

(a) Notwithstanding anything to the contrary contained in Chapter 6 (commencing with Section 12500) of Part 2 of Division 3 of Title 2 of the Government Code or any other law, the Attorney General shall appoint independent counsel to faithfully and vigorously defend this Act to the fullest extent possible on behalf of the State of California.

(b) Before appointing or thereafter substituting independent counsel, the Attorney General shall exercise due diligence in determining the qualifications of independent counsel and shall obtain written affirmation from independent counsel that independent counsel will faithfully and vigorously defend this Act to the fullest extent possible. The written affirmation shall be made publicly available immediately upon request.

(c) In order to support the defense of this Act in instances where the Governor and Attorney General fail to do so despite the will of the voters, a continuous appropriation is hereby made from the General Fund to the Controller, without regard to fiscal years, in an amount necessary to cover the costs of retaining independent counsel to faithfully and vigorously defend this Act on behalf of the State of California to the fullest extent possible.