December 8, 2025

RECEIVED

Dec 08 2025

INITIATIVE COORDINATOR
ATTORNEY GENERAL'S OFFICE

**VIA HAND DELIVERY**

Anabel Renteria
Initiative Coordinator
Office of the Attorney General
1300 "I" Street, 17th Floor
Sacramento, CA 95814

Re:   The Sexual Assault Against Rideshare Passengers and Drivers Prevention and Accountability Act

Dear Initiative Coordinator:

On October 28, 2025, we submitted a proposed statewide initiative titled the "Sexual Assault Against Rideshare Passengers and Drivers Prevention and Accountability Act" ("Initiative") and submitted a request that the Attorney General prepare a circulating title and summary pursuant to section 10(d) of Article II of the California Constitution.

Pursuant to Elections Code section 9002(b), we hereby submit timely amendments to the text of the Initiative. We have also enclosed a redline version showing the differences from the original Initiative. As the proponent of the Initiative, we approve the submission of the amended text to the Initiative and declare that the amendment is reasonably germane to the theme, purpose, and subject of the Initiative. We respectfully request that the Attorney General prepare a circulating title and summary using the amended Initiative.

Please direct all correspondence and inquiries regarding this measure to:

James C. Harrison
Quentin Barbosa
Olson Remcho, LLP
555 Capitol Mall, Suite 400
Sacramento, CA 95814
Phone: (916) 442-2952
Email: jharrison@olsonremcho.com
           qbarbosa@olsonremcho.com

Sincerely,

James C. Harrison

Enclosures

## Sexual Assault Against Rideshare Passengers and Drivers Prevention and Accountability Act

**THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:**

**SECTION 1. Title.**

This measure shall be known as the "Sexual Assault Against Rideshare Passengers and Drivers Prevention and Accountability Act."

**SECTION 2. Findings.**

In enacting the Sexual Assault Against Rideshare Passengers and Drivers Prevention and Accountability Act, the people of the State of California find and declare:

(a) Rideshare companies like Uber and Lyft, which are defined as "transportation network companies" under the California Public Utilities Code, market their services as safe and convenient for vulnerable populations, including children, individuals with disabilities, and people seeking a responsible ride home after consuming alcohol. However, rideshare company riders have reported incidents of sexual assault and sexual misconduct, physical assault, and even homicide.

(b) Rideshare companies have long been aware of the systemic problem of rape, sexual assault and sexual misconduct committed by their drivers. Reports confirm thousands of reported cases of rape or sexual misconduct over multiple years, yet rideshare companies have not implemented meaningful reforms. The actual number of incidents is likely far higher, as studies show that only 30% of sexual assaults are reported, meaning thousands more victims may have been harmed. Rideshare companies should be held accountable for failing to disclose the extent of the problem.

(c) Rape, sexual assault and sexual misconduct by rideshare company drivers is a significant danger to the public. In California alone, there are over 800,000 rideshare drivers. The companies that profit most from having these drivers on the road should be responsible for taking steps to prevent this from occurring and paying compensation to victims when it does occur so that rideshare companies have adequate financial motivation to prevent rape, sexual assault and sexual misconduct by rideshare drivers from happening.

(d) The *New York Times* reported that Uber received a report of sexual assault or sexual misconduct almost every eight minutes between 2017 and 2022, and according to a recent lawsuit against Uber, the company has acknowledged this sexual assault crisis, but it has failed to report instances of sexual assault to the authorities and does not proactively cooperate with law enforcement investigating cases reported to the police.

(e) California law and regulations require that rideshare companies submit data annually to the California Public Utilities Commission regarding the number and type of claims of sexual assault and sexual misconduct and immediately suspend any driver accused of any such violation.  But Uber and Lyft have repeatedly refused to produce these reports and

1

have demanded secrecy over the number and type of claims of sexual assault and sexual misconduct, preventing the public from learning about the high incidence of this dangerous conduct. There is a public interest in obtaining timely access to complete, verified reports regarding incidents of sexual assault and sexual misconduct involving rideshare companies in order to promote state and local policy goals and public safety.

(f) Rideshare drivers are also the victims of sexual assault. According to the *New York Times*, attacks against female drivers typically occur late at night and on the weekend, often originating with pickups near a bar. In the vast majority of these cases, the offenders are men. Despite knowledge of this problem, rideshare companies do not do enough to protect drivers from sexual assault and sexual misconduct.

(g) Despite marketing themselves as a safe and better alternative to other transportation methods, rideshare companies hire drivers without conducting adequate background checks and screening procedures, allow culpable drivers, including those accused of sexual assault and sexual misconduct, to keep driving, and fail to develop and fully implement adequate protections, despite having direct knowledge of serious safety risks to riders.

(h) Rideshare companies prioritize profits over rider safety, refusing to implement reasonable rider protections despite billions of dollars in revenue.

(i) Public oversight is necessary to ensure that rideshare companies protect their riders and drivers and to hold rideshare companies accountable when they fail to do so.

**SECTION 3. Declaration of Purpose.**

By passing this Act, it is the purpose and intent of the people of the State of California to:

(a) Protect the safety of rideshare customers by requiring rideshare companies to conduct rigorous background checks on drivers, including fingerprinting, preventing rideshare companies from allowing sexual predators to use their platform to drive customers, and conducting investigations when they receive reports of sexual assault or sexual misconduct;

(b) Require rideshare companies to publicly report on a monthly basis the total number of reported incidents of sexual assault or sexual misconduct involving app-based drivers or riders using its online-enabled application or platform to promote state and local policy goals and public safety;

(c) Empower customers by requiring rideshare companies to disclose to customers any internal assessment regarding a driver's history of sexual assault or sexual misconduct, or the likelihood that a driver will engage in sexual assault or sexual misconduct, before the customer accepts a ride;

(d) Hold rideshare companies accountable for sexual assault or sexual misconduct suffered by rideshare customers and drivers; and

2

(e) Treat rideshare companies like other common carriers that provide transportation to the public, including buses, trains, and taxis.

**SECTION 4. Rideshare Driver Background Checks.**

**Section 7458.1 is hereby added to Article 5 of Chapter 10.5 of Division 3 of the Business and Professions Code to read:**

*7458.1. Additional Background Checks.*

*(a) A transportation network company shall not contract with, retain, employ or give a driver access to its online-enabled application platform to drive passengers if the driver has been convicted of rape, sexual battery, any violent felony, misdemeanor assault or battery, or domestic violence, or if the driver is listed on the United States Department of Justice National Sex Offender Public Website.*

*(b) In order to comply with subdivision (a), a transportation network company shall retain an entity licensed by the California Bureau of Security and Investigative Services to conduct a criminal background check for the purpose of securing criminal history records from local, state and federal law enforcement and to conduct a national review of arrest records for each app-based driver who uses the transportation network company's online-enabled application or platform to drive passengers. The criminal background check shall be consistent with this Section and the standards contained in subdivision (a) of Section 5445.2 of the Public Utilities Code. The criminal background check required by this subdivision shall include a fingerprint search of the State of California Department of Justice's Fingerprint Verification System and the Federal Bureau of Investigation's Integrated Automated Fingerprint Identification System (IAFIS), and Trustline verification for each app-based driver. Nothing in this subdivision shall prevent a transportation network company from conducting additional background checks through Checkr, or any other licensed agency specializing in conducting background checks. The criminal background check required by this subdivision, including fingerprinting, must occur prior to allowing any app-based driver access to a transportation network company's online-enabled application platform to drive passengers, and then on an annual basis thereafter. Notwithstanding any other provision of law to the contrary, after an app-based driver's consent is obtained by a transportation network company for an initial background check, no additional consent shall be required for the continual monitoring of that app-based driver's criminal or driving history.*

*(c) In addition to any penalty authorized by Section 5378 of the Public Utilities Code, a transportation network company that violates subdivision (a) or (b) shall be liable for a fine, imposed by the Public Utilities Commission, of $10,000 per day for each day that an app-based driver has unauthorized access to the application platform. The fine shall be paid within 15 days of imposition to the Fiscal Office of the Public Utilities Commission to be deposited into the State Treasury, to the credit of the General Fund. The failure of a transportation network company to timely pay the fine set forth in this subdivision shall*

*result in the suspension of the transportation network company's operating permit pursuant to Section 5378 of the Public Utilities Code until the fine has been paid.*

**SECTION 5. Rideshare Company Accountability for Sexual Assault and Sexual Misconduct.**

**Section 7460.1 is hereby added to Article 5 of Chapter 10.5 of Division 3 of the Business and Professions Code to read as follows:**

*7460.1 Investigations for Sexual Assault and Sexual Misconduct.*

*(a) The following definitions apply to this section:*

*(1) "Sexual assault" means: (A) an act by a person; (B) who touches or attempts to touch the sexual body parts (e.g., the mouth, breasts, buttocks, or genitalia) or nonsexual body parts of a transportation network company passenger or app-based driver; and (C) the touching or attempted touching is against the will of the transportation network company passenger or app-based driver being touched.*

*(2) "Sexual misconduct" means: (A) unwelcome visual, verbal, nonverbal, or physical conduct (either a single act or multiple acts); (B) directed at a transportation network company passenger or app-based driver; (C) based on sex or gender (including gender identity, gender expression, or sexual orientation); and (D) which creates an intimidating, hostile, or offensive environment to a reasonable person.*

*(b) A transportation network company shall comply with subdivision (c) if it:*

*(1) Has reason to believe, based on information available to it, that an app-based driver has sexually assaulted any person, or engaged in sexual misconduct, while providing passenger services.*

*(2) Receives a report from law enforcement or through its online-enabled application or platform or any other company-approved method, from any person, including a passenger, who alleges or reasonably suspects that an app-based driver has sexually assaulted any person, or engaged in sexual misconduct, while providing passenger services, or from an app-based driver who is the victim of a sexual assault or sexual misconduct alleged to have been committed by a passenger while the app-based driver was providing passenger services.*

*(c) A transportation network company subject to subdivision (b) shall:*

*(1) Notify law enforcement authorities in the jurisdiction in which the sexual assault or sexual misconduct is alleged to have occurred, if the survivor consents, and if the allegations, if true, would constitute a crime, and cooperate with any law enforcement investigation.*

*(2) Undertake an investigation in compliance with regulations adopted by the Public Utilities Commission that ensure the privacy of victims and afford due process to app-based drivers and passengers.*

4

*(d) A transportation network company that violates subdivision (c) shall be liable for a fine, imposed by the Public Utilities Commission, of $10,000 per violation. The fine shall be paid within 15 days of imposition to the Fiscal Office of the Public Utilities Commission to be deposited into the State Treasury, to the credit of the General Fund. The failure of a transportation network company to timely pay the fine set forth in this subdivision shall result in the suspension of the transportation network company's operating permit pursuant to Section 5378 of the Public Utilities Code until the fine has been paid.*

**Section 7460.2 is hereby added to Article 5 of Chapter 10.5 of Division 3 of the Business and Professions Code to read as follows:**

*7460.2. Duty, Disclosure and Liability.*

*(a) A transportation network company, as defined in subdivision (c) of Section 5431 of the Public Utilities Code, owes passengers the highest degree of care as a common carrier and shall be subject to Sections 2100 and 2168 of the Civil Code.*

*(b) A transportation network company shall be responsible for any and all damages to a person caused by an app-based driver's rape or sexual assault of, or sexual misconduct involving, the person while the person was a passenger of the transportation network company or resulting from the app-based driver learning the whereabouts of the person as a result of the person's use of the transportation network company's services, regardless of whether or not the app-based driver is categorized as an employee or independent contractor.*

*(c) A transportation network company shall be responsible for any and all damages to an app-based driver caused by a passenger's rape or sexual assault of, or sexual misconduct involving, an app-based driver while the app-based driver was providing passenger services if the app-based driver is categorized as an independent contractor.*

*(d) A transportation network company shall, on a monthly basis, publish on its website and submit a report to the Public Utilities Commission, through a Tier 1 Advice Letter, setting forth the total number of reports received of sexual assault or sexual misconduct involving app-based drivers or passengers using its online-enabled application or platform, disaggregated by the type of conduct reported.*

*(e) The duties, remedies, and obligations imposed by this section are cumulative to the duties, remedies, or obligations imposed under any other law and shall not be construed to relieve any person from any duties, remedies, or obligations imposed under any other law.*

*(f) Any contract between a transportation network company and a passenger, or between a transportation network company and its employee or independent contractor, is voidable by the passenger, employee, or independent contractor, as applicable, as against public policy if any provision within the contract attempts or purports to waive any rights specified in this section.*

**Section 7460.3 is hereby added to Article 5 of Chapter 10.5 of Division 3 of the Business and Professions Code to read as follows:**

5

*7460.3. Customer Notice.*

*A transportation network company shall disclose to customers using its online-enabled application or platform any internal rating, hazard analysis, risk assessment, or safety risk assessment score for app-based drivers related to an app-based driver's history of sexual assault or sexual misconduct or the likelihood that an app-based driver will engage in sexual assault or sexual misconduct. This disclosure must occur before the customer is paired with an app-based driver and must enable the customer to refuse a ride with the app-based driver at no cost.*

**SECTION 6. Amendments.**

This Act may be amended by a statute that is passed by a majority vote of the members of each house of the Legislature and signed by the Governor so long as such amendments are consistent with and further the purposes of protecting rideshare passengers and holding rideshare companies accountable for sexual assault and sexual misconduct.

**SECTION 7. Severability.**

The provisions of this Act are severable. If any portion, section, subdivision, paragraph, clause, sentence, phrase, word, or application of this Act is for any reason held to be invalid by a decision of any court of competent jurisdiction, that decision shall not affect the validity of the remaining portions of this Act. The People of the State of California hereby declare that they would have adopted this Act and each and every portion, section, subdivision, paragraph, clause, sentence, phrase, word, and application not declared invalid or unconstitutional without regard to whether any portion of this Act or application thereof would be subsequently declared invalid.

**SECTION 8. Liberal Construction.**

This Act shall be liberally construed to effectuate its purposes.

**SECTION 9. Conflicting Ballot Measures.**

(a) In the event that this measure and another measure protecting rideshare passengers and drivers and holding rideshare companies accountable for sexual assault and sexual misconduct appear on the same statewide election ballot, the provisions of the other measure shall be deemed to be in conflict with this measure. If this measure receives a greater number of affirmative votes than a measure deemed to be in conflict with it, the provisions of this measure shall prevail in their entirety, and the provisions of the other measure shall be null and void.

(b) If this measure is approved by the voters but superseded in whole or in part by a conflicting measure approved by the voters at the same election, and the conflicting measure is later held to be invalid, this measure shall be self-executing and given full force and effect.