# EXHIBIT A

Bret Stanley (TX SBN 24075116)
bstanley@johnsonlawgroup.com
**Johnson Law Group**
2925 Richmond Ave, Suite 1700
Houston, TX 77098
Telephone: (713) 626-9336

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**<br><br>This Document Relates to:<br><br>All Cases | No. 3:23-md-03084-CRB<br><br>**BRET STANLEY'S RESPONSE TO UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S MOTION TO FOR SANCTIONS**<br><br>Judge:      Hon. Lisa J. Cisneros<br>Courtroom:  G-15th Floor<br>Date:       January 20, 2026<br>Time:       10:30 a.m. |

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. AUTHORITIES ........................................................................................................................ 1

III. FACTS .................................................................................................................................... 4

IV. ARGUMENT ........................................................................................................................ 11

    A. Uber has not met its Burden for a Finding of Civil Contempt ............................... 11

    B. Uber's Proposed Sanction of Disqualifying Bret Stanley From the Plaintiff's Steering Committee Should be Denied ................................................. 12

    C. Attorneys' Fees Should Not Be Granted due to Failure to Comply with Civil L.R. 37-4(b)(3) .................................................................................................. 14

    D. General References to Protected Documents in Subsequent Proceedings Does Not Amount to Breach of MDL 3084's Protective Order .......................... 14

V. CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*State Farm Mut. Auto. Ins. Co. v. Federal Ins.*, 72 Cal.App.4th 1422, 86 Cal.Rptr.2d 20 (Cal.Ct.App.1999) ................................................................................................................. 3, 13

*Baycol Steering Comm. v. Bayer Corp.* ....................................................................................... 13

*Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015 (S.D. Cal. 2004) ...................................... 3

*CrossFit Inc. v. JB&AP CFLA BIZ LLC*, 2013 WL 12142635 (C.D. Cal. Oct. 24, 2013) ......... 3, 13

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003) ......................................... 2

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) ..................................................... 3

*Gonzales v. Charter Commc'ns, LLC, No.* 2:20-CV-08299-SB-AS, 2022 WL 570003 (C.D. Cal. Jan. 26, 2022) ................................................................................................................. 3, 11

*Gregori v. Bank of America*, 207 Cal. App. 3d 291 (1989.) ...................................................... 3, 13

*Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, 1999 WL 528545 (N.D. Ill. July 19, 1999) ........................ 2

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993) ...... 2, 3, 14

*In re EXDS, Inc.*, 2005 WL 2043020 (N.D. Cal. Aug. 24, 2005) ............................................. 3, 13

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, (1994) ................................. 2

*Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794 (8th Cir. 2005) ........................ 13

*Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992) .................................. 3

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 250 F.R.D. 426 (D. Neb. 2008) ................................ 2

*United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906 (9th Cir. 1986). ......................................... 1

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947) .............................................. 2

## STATUTES

Fed. R. Civ. P. 37 ............................................................................................................................ 4

# TABLE OF AUTHORITIES

**OTHER AUTHORITIES**

Civil Local Rule 37-4 .................................................................................................. 4

## I. PRELIMINARY STATEMENT

Uber Technologies, Inc. ("Uber") seeks sanctions against Bret Stanley in its recent Motion for Sanctions (ECF 4604) for a discovery request related to Uber's "████████" (VFB) automated system made in a collateral matter. Uber admits in its supporting documents to its Motion for Sanctions that Uber's VFB Analysis is a method for identifying potential fraud and unauthorized conduct on the Uber Eats Platform.

Uber's current Motion for Sanctions is a conscious effort by Uber and Uber's Defense Counsel to harass Bret Stanley and promote court secrecy in collateral matters. Uber seeks to expand MDL 3084's Protective Order (ECF 176) to include terms of art, like VFB, and prevent individuals from obtaining independently relevant discovery in collateral matters. Uber seeks to use this Court's Protective Order to confer blanket protections on all documents. Uber seeks to force Bret Stanley to obtain total amnesia, and to prevent Bret Stanley from using general knowledge and experience gained through litigation against Uber in any way whatsoever in other actions. Uber's tactics in this Court, and in others, violate the spirit of MDL 3084's Protective Order and do not meet the standards for a finding of Civil Contempt. Finally, Uber's Motion for Sanctions seeking an award of fees and costs must be denied because they do not conform with Local Rule 37-4(b)(3), as they are not supported by an itemized list of costs, expenses, or attorney fees directly caused by the alleged breach.

For these reasons, Uber's Second Motion for Sanctions Against Bret Stanley (ECF 4604) must be denied.

## II. AUTHORITIES

Rule 37(b)(2) provides for a range of sanctions based on a party's failure to comply with a court order, including protective orders. *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986). Further, under Rule 37(b)(2)(C) "unless the failure was substantially justified or other circumstances make an award of expenses unjust," the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." *United States v. Nat'l Med. Enters., Inc.,* 792 F.2d 906, 910 (9th Cir. 1986).

1    Courts have consistently held that attorneys may use general knowledge and experience
2    gained in one matter in subsequent litigation, provided that confidential materials themselves are
3    not disclosed. See, e.g., *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695
4    (9th Cir. 1993)(finding no violation of protective order when using knowledge of confidential
5    information in a subsequent matter against the same party: "lawyers cannot achieve total amnesia",
6    those "who learn from and use their experience obtained in discovery under such an order would
7    have to change fields, and never do work again, lest they 'use' what they learned in a prior case 'in
8    any way whatsoever' in any 'other action.' For the protective order to comply with common sense,
9    a reasonable reading must connect its prohibitions to its purpose."); *see also Streck, Inc. v. Rsch. &*
10   *Diagnostic Sys., Inc.*, 250 F.R.D. 426, 435 (D. Neb. 2008) (finding no violation of order because a
11   "**general reference to protected documents [in subsequent] proceedings [was] insufficient**");
12   *Hu-Friedy Mfg. Co. v. Gen. Elec. Co*., 1999 WL 528545, at *3 (N.D. Ill. July 19, 1999) (declining
13   to interpret order "barring future use of confidential information that is independently relevant and
14   discoverable in a subsequent action into a restriction on an attorney's right to practice law")
15   (emphasis added here).

16   Protective Orders cannot be used to "to throw the biggest possible blanket over every kind
17   of knowledge which might be obtained in the lawsuit, lest a secret be exposed." *Dual-Deck* at 695.

18   California courts "strongly favors access to discovery materials" for individuals engaged in
19   other litigation because "[a]llowing the fruits of one litigation to facilitate preparation in other cases
20   advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id,*
21   *Cordero* at 4; *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003).

22   - <u>Civil Contempt</u>

23   A district court also the inherent authority to enforce compliance with its orders through a
24   civil contempt proceeding. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827–
25   28 (1994). A contempt sanction is considered civil if it "is remedial, and for the benefit of the
26   complainant." *Id.* A contempt fine is considered civil and remedial if it either "coerce[s] the
27   defendant into compliance with the court's order, [or] ... compensate[s] the complainant for losses
28   sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947). "The

standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the [non-moving party] violated a specific and definite order of the court." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n. 9 (9th Cir. 1992)). The contempt "need not be willful, and there is no good faith exception to the requirement of obedience to a court order." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). "But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *Id.* (cleaned up). Thus, the Court may grant a motion for an order of contempt if it finds a party (1) violated a court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. *Dual-Deck* at 695.; *see also Gonzales v. Charter Commc'ns, LLC*, No. 2:20-CV-08299-SB-AS, 2022 WL 570003, at *3 (C.D. Cal. Jan. 26, 2022) quoting *Dual-Deck Video* at 695.

- <u>Disqualification of Counsel</u>

While the disqualification of counsel is a discretionary exercise of the trial court's inherent powers, it is seen as a drastic measure which is disfavored." *Crenshaw v. MONY Life Ins. Co.,* 318 F. Supp. 2d 1015, 1020 (S.D. Cal. 2004). "[T]he paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mut. Auto. Ins. Co. v. Federal Ins.,* 72 Cal.App.4th 1422, 1428, 86 Cal.Rptr.2d 20, 24 (Cal.Ct.App.1999). Motions such as these are found in California courts as often "tactically motivated" and thus should be decided based on "substantial evidence." *CrossFit Inc. v. JB&AP CFLA BIZ LLC*, 2013 WL 12142635, at 2 (C.D. Cal. Oct. 24, 2013). (citations omitted). Therefore, the court must ask, "whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court." *Gregori v. Bank of America*, 207 Cal. App. 3d 291, 303 (1989.) "Disqualification is inappropriate simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings." *Id.* "[T]he purpose of the disqualification order must be prophylactic, not punitive…" *In re EXDS, Inc.*, 2005 WL 2043020, at 4 (N.D. Cal. Aug. 24, 2005)

- <u>Sanctions Under Local Rule 37-4</u>

Civil Local Rule 37-4 requires a party moving for an award of attorney fees or other form of sanction under Fed. R. Civ. P. 37 to:

(a.) Comply with Civil. L.R. 7-8 and Civil L.R. 7-2; and

(b.) Be accompanied with competent declarations which:
1. Set forth the facts and circumstances that support the motion;
2. Describe in detail the efforts made by the moving party to secure compliance without intervention by the Court; and
3. If attorney fees or other costs or expenses are requested, itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed.

*See* Civil L.R. 37-4.

**III.    FACTS**

Bret Stanley has significant experience litigating against Uber since 2019. *See* Exhibit A – Stanley Declaration at 2. Bret Stanley has arbitrated many cases against Uber on behalf of Uber Drivers through final arbitration trials and, in 2024, tried the first jury trial in federal court against Uber concerning the employment status of Uber Drivers who allege to be employees. *Id.*

These collateral litigations against Uber (outside of MDL 3084) have allowed Bret Stanley to form a deep knowledge of Uber's systems, processes, procedures, data collection, incident adjudication actions, artificial intelligence systems, telematic systems, deactivation / termination policies, marketing efforts, user communication platforms, rider and driver App functionality, Uber Terms of Art, and other information related to Uber. *See* Exhibit A – Stanley Declaration at 3.

Bret Stanley has represented many Drivers and Delivery people who utilize the Uber Rides application to transport riders and the Uber Eats Application to deliver food/goods. *Id.* at 4. Many of Uber's internal policies and systems impact both Uber Drivers and Uber Delivery people. *Id.*

Uber uses its technology and telematic systems to monitor ▮▮▮▮▮▮▮▮▮▮ of "Earners." *Id.* at 5. Uber understands that Earners (Uber Drivers and/or Uber Delivery People) who ▮▮▮▮▮▮▮▮▮▮ while using the Uber Application could create a safety risk to others and its ▮▮▮▮▮▮▮▮▮▮. *Id.*

Prior to being named to MDL 3084's Plaintiff Steering Committee, Bret Stanley became aware that Uber used its technology and telematic systems to ███████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████. *See* Exhibit A, Stanley Declaration at 6. ██████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████ *Id., see also* ECF 4604-5, Declaration of Greg Brown in Support of Uber's Motion for Sanctions at 4. ███████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████. *See* Exhibit A, Stanley Declaration at 6.

When Uber Delivery people, ██████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ("VFB") delivery.[1] *See* Exhibit A, Stanley Declaration at 7. ████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ *Id.* Uber's VFB designations are "central to…identifying fraud and unauthorized conduct on the Uber Eats platform" and central to "improving safety for the Uber Eats Platform." *See* ECF 4604-5, Declaration of Greg Brown in Support of Uber's Motion for Sanctions at 4.

When Uber's system identifies ████████████████████. *See* Exhibit A, Stanley Declaration at 9 and at 15. Uber may send ████████████████████████████ ███████████████████████████████████████████████████. *See* Exhibit A, Stanley Declaration at 9. Additionally, Uber ██████████████████████████████████ █████████████████████. *Id.*

VFB triggers can result in an Uber Eats Delivery Person being removed from the Uber

---

[1] In Uber's Motion for Sanctions papers, Uber has sealed all references to "█████████" seeking to further shroud this term in secrecy, despite it being a Term of Art and general category of data captured by Uber in the normal course of business.

Platform for making deliveries outside of the mode of travel that the delivery person has clearance by Uber to make deliveries. *See* Exhibit A, Stanley Declaration at 10.

- <u>Smith vs. Uber Technologies, Inc.</u>, No. 2022-CI-11011, 57th Dist. Court, Bexar County, TX.

The *Smith* matter concerns a catastrophic motor vehicle collision between Joshua Aldana, an Uber Eats Delivery person, and Plaintiff Smith. *See* Exhibit A, Stanley Declaration at 11. The collision resulted in Plaintiff Smith being paralyzed from the chest down. *Id.* At the time of the collision, the Uber Eats Delivery was being made by car, despite Aldana only being cleared by Uber to make deliveries by bicycle or on foot.

In *Smith,* Uber's produced ▉▉▉▉ data on for Aldana's Uber Eats Deliveries is a central issue in the matter. *See* Exhibit A, Stanley Declaration at 14. Additionally, Uber's technology pertaining to whether Uber's system captured data that Aldana was making VFB Deliveries prior to the collision with Plaintiff Smith is a central issue. *Id.*

On April 17, 2025, Uber was served with Requests for Production by Plaintiff Smith seeking ▉▉▉▉ information. *See* Ex. 1, Plaintiff's Fifth Request for Production, April 17, 2025.

Request for Production No. 70 from Plaintiff's Fifth Request for Production sought the following:

> **70. Produce documents that indicate Uber's system flagged Joshua Aldana (UUID ▉▉▉▉▉▉▉▉)[2] as making ▉▉▉ deliveries.**

*See* Exhibit 2, at Request for Production 70; *See* also Exhibit A, Stanley Declaration at 17.

On October 10, 2025, six months after the Requests for Production were served on Uber, Uber made the following response to Plaintiff's Request for Production No. 70:

> "No Responsive Documents to produce."

*See* Exhibit 2, Defendant's Response to Plaintiff's Fifth Request for Production, October 20, 2025, at Response 70; *See* also Exhibit A, Stanley Declaration at 18.

On November 5, 2025, the Parties in *Smith* participated in a Motion to Compel regarding

---

[2] Uber's Motion for Sanctions now seeks to claim as confidential anonymized Uber Unique Identifiers (UUIDs). UUIDs are used by Uber to identify Drivers and Delivery People. They are completely anonymous and have no personal identifying information to individuals whatsoever.

1  Plaintiff's Fifth Request for Production. *See* Exhibit A, Stanley Declaration at 19, ; *See also* Exhibit
2  3, Nov. 5, 2025 Hearing Transcript, 70:12-71:15.

3  During the November 5, 2025 hearing, no information that could be considered Confidential
4  under MDL 3084's Protective Order was referenced concerning any VFB data that Uber maintains
5  related to Joshua Aldana's account that is at issue in the *Smith* matter. *See* Exhibit A, Stanley
6  Declaration at 20; *See also* Exhibit 3, Nov. 5, 2025 Hearing Transcript, 70:12-71:15.  However,
7  Defense Counsel for Uber, Angela Angotti with Bowman and Brooke (Austin, TX Office),
8  informed the *Smith* Court that there was, "no ▮▮▮▮▮▮▮▮ designation for Aldana" and "no
9  responsive documents to produce." *See* Exhibit A, Stanley Declaration at 20; *See* also Exhibit 3
10 Hearing Transcript at 70:25-71:01. Additionally, related to Uber's search for VFB designations
11 responsive to Plaintiff's Request, Defense Counsel for Uber informed the Court that, "[w]e didn't
12 limit it in any way." *See* Exhibit A, Stanley Declaration at 20; *See* also, Exhibit 3 Hearing Transcript
13 at 71:10-12.

14 Based on the argument from Counsel, the Court in *Smith* granted Plaintiff's Motion to
15 Compel related to Plaintiff's Request for Production 70, requiring Uber to produce documents that
16 indicate Uber's system captured Joshua Aldana as making VFB deliveries for the period of
17 February 10, 2022 to April 6, 2022. *See* Exhibit A, Stanley Declaration at 21; *See* also Exhibit 3
18 Hearing Transcript at 71:13-14.

19 Following the hearing, as customary in Bexar County, Texas District Court, Judge Norma
20 Gonzales issued her "Judge's Notes" to memorialize her Orders from the November 5, 2025
21 hearing. *See* Exhibit A, Stanley Declaration at 22-23; *See also* Exhibit 4, File-Stamped November
22 5, 2025 Judge's Notes from Judge Norma Gonzales.

23 On November 12, 2025, Ms. Angotti (Counsel for Uber in the *Smith* matter) e-mailed the
24 Plaintiff's counsel related to the Parties' discussion on extending the Docket Control Order in the
25 *Smith* matter. *See* Exhibit A, Stanley Declaration at 24; *see also* Exhibit 5 Email Chain at 004-005.
26 Ms. Angotti inquired about any "specific or discrete discovery" that was outstanding. *Id.*

27 In response to Ms. Angotti's Email, On November 13, 2025, Plaintiff's Counsel informed
28 Uber's Counsel that Uber still had not produced documents that had been compelled by the Court

-7-

RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO. 3:23-MD-03084

1   on November 5, 2025, including no production related to the Court compelling VFB information
2   associated to Joshua Aldana. *See* Exhibit A, Stanley Declaration at 25; *see also* Exhibit 5 at 4. Ms.
3   Angotti was informed that a substantial misrepresentation was made on the record during the Nov.
4   5, 2025 hearing, "based on documents related to Aldana's UUID." *Id.* Ms. Angotti was also
5   informed that the November 5, 2025 Order granting RFP 70, "allows me to trigger procedures
6   under the MDL Protective Order to seek production." *Id.*

7   On November 18, 2025, Ms. Angotti responded only to Bret Stanley claiming she had spent
8   "several days" looking for information related to VFB designations on the Uber Eats User Account
9   at issue. *See* Exhibit A, Stanley Declaration at 26; *see also see also* Exhibit 5 at 003. Additionally,
10  Ms. Angotti asked the following:

> 2. Please identify the Aldana UUID documents mentioned in your November 13 email below by bates number that you allege demonstrate that that the statements I made are "absolutely untrue based on documents related to Aldana's UUID" as I am unable to locate any documents supporting your very serious accusations, that you put in writing to all parties in this case, that I knowingly made a false statement to the Court.

14  *See* Exhibit A, Stanley Declaration at 26; *see also see also* Exhibit 5 at 003.

15  In response to Ms. Angotti's request, on November 18, 2025, Bret Stanley asked, "Do you
16  have permission from your client for me to share the bates the bates label with this document that
17  is from MDL 3084?" *See* Exhibit A, Stanley Declaration at 27; *see also see also* Exhibit 5 at 002.

18  Bret Stanley did not provide the bates-label or any additional information from any
19  documents produced in MDL 3084 due to the Court's prior findings related to confidential
20  information covered under the Protective Order and based on the Protective Order itself. *See*
21  Exhibit A, Stanley Declaration at 28. Ms. Angotti was informed that several attorneys from her
22  firm (Bowman and Brooke) have made appearances in MDL 3084 and Bret Stanley suggested these
23  attorneys could search for the document. *See* Exhibit A, Stanley Declaration at 28; *See also* Exhibit
24  5 at 002. Bret Stanley informed Ms. Angotti that, "I have not shared or used the document with
25  anyone in this matter, but Judge Gonzales has ordered Uber to produce documents that indicate
26  [VFB] Triggers in connection with RFP 70." *See* Exhibit A, Stanley Declaration at 28; *See also*
27  Exhibit 5 at 002-003.

28  Additionally, Bret Stanley informed Ms. Angotti of the following:

-8-

RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS
CASE NO. 3:23-MD-03084

> Given with how Uber has directly attacked me in multiple jurisdictions, I need to know that I have permission to share the bates label with you. I don't want to get in a position that Uber comes after me again for this. However, I'm in a position where I will need to move forward soon if we can't work it out.

*See* Exhibit A, Stanley Declaration at 29; *See also* Exhibit 5 at 003.

Thereafter, during a telephone conversation with Ms. Angotti, Ms. Angotti informed Bret Stanley that she had reached out to Uber's Counsel in MDL 3084 at Shook, Hardy, Bacon ("SHB") about the VFB designations captured by Uber's system related to Joshua Aldana's Uber Eats Delivery account. *See* Exhibit A, Stanley Declaration at 30.

Almost a week passed without any response from Ms. Angotti, which prompted this follow-up email to Ms. Angotti:

> From: Bret Stanley <BStanley@johnsonlawgroup.com>
> Sent: Monday, November 24, 2025 5:34 PM
> To: Angela Angotti <Angela.Angotti@bowmanandbrooke.com>
> Subject: Re: Smith - Motion to Extend Docket Control Order
>
> Has SHB responded to your email about [redacted] information that was ordered?
>
> Thanks.

*See* Exhibit A, Stanley Declaration at 31, *see also* Exhibit 5 at 002.

Ms. Angotti responded on November 25, 2025 that she was, "[t]rying to get this figured out as quickly as I can for us." *See* Exhibit A, Stanley Declaration at 32, *see also* Exhibit 5 at 002. Ms. Angotti's response once again asked Bret Stanley to provide the bates number to the document at issue so that she could identify it to Uber. *Id.*

In response to Ms. Angotti additional request for the bates-label of the VFB document at issue, Bret Stanley sought express permission from Ms. Angotti's client that provided consent from Uber to provide the bates-label:

> From: Bret Stanley <BStanley@johnsonlawgroup.com>
> Sent: Tuesday, November 25, 2025 2:37 PM
> To: Angela Angotti <Angela.Angotti@bowmanandbrooke.com>
> Subject: RE: Smith - Motion to Extend Docket Control Order
>
> Angela,
>
> Due to Uber's multiple filings across various jurisdictions that are directly against me relating to providing any information on the face of any MDL 3084 Document, can you please provide me express permission, based on your client's consent, that I can share the bates number from MDL 3084?
>
> I will give this 24 hours to cool off and to allow your client to object. If I hear nothing from you by tomorrow afternoon, I will comply with your request below.
>
> Thanks,
>
> Bret

1  *See* Exhibit A, Stanley Declaration at 33; *see also* Exhibit 5 at 001.

2  On November 25, 2025, Ms. Angotti responded, informing Bret Stanley that **bates labels are not confidential** and that **Uber granted authorization / consent** for Bret Stanley to provide the bates-label of the document to Ms. Angotti. *See* Exhibit A, Stanley Declaration at 34; *see also* Exhibit 5 at 001.

Based on Uber's express authority to provide Ms. Angotti the bates-label of the MDL document, Bret Stanley supplied the information to Ms. Angotti. *See* Exhibit A, Stanley Declaration at 35; *see also* Exhibit 5 at 001.

- UBER_JCCP_MDL_003941399, titled "INA-4142 | ███████ VFB Logistic Flow List to Audit"

The Declaration of Greg Brown associated with UBER_JCCP_MDL_003941399, provides information relating to a document produced in MDL 3084 titled "**INA-4142 | VFB Logistic Flow List to Audit**" *See* ECF 4604-5.

Mr. Brown's declaration describes the document as "███████████████████████████████████████████████████████████████████" *See* ECF 4604-5 at ¶4. Mr. Brown states that the VFB Analysis is used to identify "potential fraud and unauthorized conduct on the Uber Eats platform. *Id*. Mr. Brown states the VFB Analysis and audit is used for "improving the safety of the Uber Eats platform…by ███████████████████████████. *Id*. Mr. Brown's Declaration states that the VFB Analysis is used to "█████████████████████████████████." *See* ECF 4604-5 at ¶5.

Mr. Brown's Declaration confirms that the VFB Analysis included the UUID of Joshua Aldana, the Uber Eats Accountholder and Defendant in the *Smith* matter. *See* ECF 4604-5 at ¶6.

Mr. Brown's Declaration states that the VFB Analysis does not indicate that Mr. Aldana was "█████ ███." *See* ECF 4604-5 at ¶6.

Importantly, Mr. Brown's Declaration does not inform the MDL Court that the spreadsheet

1  intitled "**INA-4142 |** ▮▮▮▮ **VFB Logistic Flow List to Audit**" includes ▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮. Mr. Brown's Declaration claims that Uber has "no record of any ▮▮▮ for Mr.

4  Aldana. *See* ECF 4604-5 at ¶6. However, the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Additionally,

7  "**INA-4142 |** ▮▮▮▮ **VFB Logistic Flow List to Audit**" identifies Joshua Aldana to have

8  a "▮▮▮▮▮▮▮▮▮ This indicates that Uber's system does capture and maintain data relating

9  to the number of times Joshua Aldana's Uber Eats Account was ▮▮▮▮▮▮▮▮▮.

## IV.  ARGUMENT

### A.  Uber has not met its Burden for a Finding of Civil Contempt

Per *Dual-Deck* and *Gonzales v. Charter Commc'ns*, to hold a lawyer in civil contempt under Rule 37, the court must find a party: (1) violated a court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence. *Dual-Deck* at 695.; *see also Gonzales v. Charter Commc'ns, LLC*, No. 2:20-CV-08299-SB-AS, 2022 WL 570003, at *3 (C.D. Cal. Jan. 26, 2022).

Uber and Uber's Counsel do not provide evidence, and certainly not clear and convincing evidence, that Bret Stanley violated MDL 3084's Protective Order beyond substantial compliance and that Bret Stanley's actions were not based on a good faith and reasonable interpretation of MDL 3084's Protective Order (ECF 176).

As shown above, Bret Stanley has knowledge of Uber's internal systems related to Uber's automated VFB data collection used to identify potential fraud and unauthorized conduct on the Uber Eats Platform. Based on this knowledge, it is apparent from the production in the *Smith* matter that Uber's VFB system would have captured VFB data related to the majority of Joshua Aldana's Uber Eats deliveries. When seeking VFB data related to Joshua Aldana's Uber Eats Account, Bret Stanley did not use or identify any confidential information in Request for Production 70 of Plaintiff's Fifth Request for Production. Bret Stanley did not use or identify any confidential information during the November 5, 2025 Hearing in which VFB data was compelled to be

produced by the Court in the *Smith* matter. Bret Stanley did not use or disclose any confidential information to Uber's Counsel, Angela Angotti, concerning any VFB data associated with Joshua Aldana's account before, during, or after the November 5, 2025 Hearing. Even though Ms. Angotti requested the bates-label of a document that contains information responsive to Plaintiff's VFB discovery request, Bret Stanley refused to provide this information absent being granted express authority by Uber to provide the bates-label. The Plaintiff does not consider bates-labels to be confidential, however out of abundance of caution, Bret Stanley sought authority to share the bates-label.

Bret Stanley only provided the bates-label of the MDL VFB document with responsive information to Plaintiff's discovery request after Uber granted express authority to do so. To be clear, based on the experience of Bret Stanley, it is likely that additional data and documentation exist in Uber's system related VFB Uber Eats deliveries by Joshua Aldana, however Counsel for Uber has indicated in both discovery responses and before the *Smith* court that there are **none**. Clearly VFB Data exists in Uber's System related to Joshua Aldana, as admitted by Greg Brown's Declaration Supporting Uber's Motion for Sanctions.

Here, Civil Contempt against Bret Stanley cannot be found by clear and convincing evidence when Bret Stanley sought discovery based on a category of data and information known as VFB, Bret Stanley did not disclose any protected information to counsel, Bret Stanley did not disclose any protected information to the Court or publicly, and the limited information that ultimately was disclosed to Counsel in Smith was done so only after express consent was given by Uber. Bret Stanley never shared the document complained of by Uber's Counsel in their Motion. These efforts show Bret Stanley was seeking to act in compliance with MDL 3084's Protective Order based on a good faith and reasonable interpretation of the Order.

  **B.** <u>Uber's Proposed Sanction of Disqualifying Bret Stanley From the Plaintiff's Steering Committee Should be Denied</u>

Defendants' request for Mr. Stanley's removal from the Plaintiff Steering Committee is overreaching and as stated— "extraordinary". *See* ECF 4604 at 7. "While the disqualification of counsel is a discretionary exercise of the trial court's inherent powers, it is seen as a drastic measure

which is disfavored." *Crenshaw v. MONY Life Ins. Co.,* 318 F. Supp. 2d 1015, 1020 (S.D. Cal. 2004). The court must look at the appropriateness of the motion and must weigh the motion heavily. "[T]he paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *State Farm Mut. Auto. Ins. Co. v. Federal Ins.,* 72 Cal.App.4th 1422, 1428, 86 Cal.Rptr.2d 20, 24 Cal.Ct.App.1999). Motions such as these are found in California courts as often "tactically motivated" and thus should be decided based on "substantial evidence." *CrossFit Inc. v. JB&AP CFLA BIZ LLC*, 2013 WL 12142635, at 2 (C.D. Cal. Oct. 24, 2013). (citations omitted). Therefore, the court must ask, "whether there exists a genuine likelihood that the status or misconduct of the attorney in question will affect the outcome of the proceedings before the court." *Gregori v. Bank of America*, 207 Cal. App. 3d 291, 303 (1989.) Nothing Defendants allege equates such a severe sanction. "Disqualification is inappropriate simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings." *Id.* Defendants' unsubstantiated basis for disqualification ignores well-settled 9th circuit law. "[T]he purpose of the disqualification order must be prophylactic, not punitive…" *In re EXDS, Inc.,* 2005 WL 2043020, at 4 (N.D. Cal. Aug. 24, 2005). Defendants attempt to compare the fact pattern in *Baycol Steering Comm. v. Bayer Corp.* is misguided. In *Baycol,* the District Court and Eighth Circuit, removed the attorney from the PSC, because he (1) "deliberately tried to cover-up his actions and mislead the Court and the parties…"; (2) failed to exercise care in handling confidential documents; and (3) failed to Attempt to correct the problem when notified by the Court. *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.,* 419 F.3d 794, 807 (8th Cir. 2005). In the entirety of this litigation, Mr. Stanley has never engaged in conduct involving dishonesty, fraud, or deceit. There is no *substantial justification* for the sanctions sought.

Furthermore, pursuant to the court's direction, Mr. Stanley and other members of the PSC are actively working on Modification to the Protective Order, pursuant to *Foltz*. Therefore, unlike in *Baycol,* Mr. Stanley is heeding the Court's direction never acting with deceit or malice. Defendants' request for removal is unfounded and egregious in nature and should not be entertained.

C. **Attorneys' Fees Should Not Be Granted due to Failure to Comply with Civil L.R. 37-4(b)(3)**

Civil Local Rule 37-4(b)(3) requires that:
> If attorney fees or other costs or expenses are requested, itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed.

Civil L.R. 37-4(b)(3). Here, Uber asks for an award of fees and costs incurred in their Motion for Sanctions and seeks leave to submit a fee petition. See ECF 4604 at pp. 8-9. However, Local Rule 37-4(b)(3) requires an itemized showing of the attorney fees or other costs or expenses requested and the hourly rate claimed. Since Uber has failed to provide an itemized fee and expense ledger, with the attorney-fee hourly rate, Uber's Motion for Sanctions seeking fees and costs should be denied.

D. **General References to Protected Documents in Subsequent Proceedings Does Not Amount to Breach of MDL 3084's Protective Order**

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.* allows attorneys to use general knowledge and experience gained in one matter in subsequent litigations, provided that confidential materials themselves are not disclosed. Discovery related to "███████" data was sought in the *Smith* matter based on Bret Stanley's knowledge of the VFB system utilized by Uber. Many courts have found that lawyers cannot obtain amnesia and that "general reference to protected documents [in subsequent] proceedings [was] insufficient" to find a breach of the Protective Order. *See Dual-Deck; Streck, Inc.; Hu-Friedy.* Protective Orders cannot be used to "to throw the biggest possible blanket over every kind of knowledge which might be obtained in the lawsuit, **lest a secret be exposed**." *Dual Deck* at 695 (emphasis added). Uber's seeks to expand MDL 3084's Protective Order to include *general references* to Uber's systems and/or terms of art. By doing so, Uber is attempting to throw the biggest possible blanket over every kind of knowledge, *lest a secret be exposed*. If Uber is allowed to expand the tenants of MDL 3084's Protective Order to that extent, the protective order will no longer comply with common sense and the prohibitions therein will no longer be connected to the Protective Order's purpose. Instead of using MDL 3084's Protective Order to prevent the disclosure of confidential information, Uber will use the Protective Order as a tool to prevent the disclosure of **all** information related to MDL 3084, regardless if it is

1  independently relevant and discoverable. Indeed, Uber's current Motion for Sanctions is attempting to use MDL 3084's Protective Order to prevent the disclosure of confidential information that is independently relevant and discoverable in the *Smith* matter, despite no breaches of the Protective Order occurring and despite Bret Stanley's efforts to request VFB information generally in *Smith*.

Uber's Motion for Sanctions Against Bret Stanley and their claims that Bret Stanley "used" a protected document in *Smith* strains common sense and is not consistent with a reasonable reading of MDL 3084's Protective Order. Knowledge that a protected document exists **does not** amount to use. General references in requests for a production to systems that Uber utilizes for safety, without identifying any protected documents by name or by any other means, **does not** amount to use.

Regarding discovery in collateral matters, the Plaintiff is not charged with educating the Defendant in these matters about independently discoverable information that is in the Uber's possession, custody, and control. Where the Plaintiff makes a general request for documents related to one of Uber's Systems and Uber outright denies the existence of independently relevant and discoverable information that was produced in MDL 3084, a reasonable reading of the Protective Order cannot find a breach occurred simply by <u>asking</u> Uber to look again for the document.

### V.  CONCLUSION

For the above reasons stated, Uber's Motion for Sanctions against Bret Stanley should be DENIED in total. Uber's request that Bret Stanley be disqualified from acting on the Plaintiff's Steering Committee in MDL 3084 should be DENIED. Uber's Request for monetary sanctions, attorneys' fees, and costs should be DENIED.

The Plaintiff's are working on a Motion to Modify the Protective Order concerning collateral litigations and expect to have this motion on file prior to the hearing date for Uber's Motion for Sanctions against Bret Stanley.

Dated: December 22, 2025

JOHNSON LAW GROUP

_/s/ Bret Stanley_
Bret Stanley
Plaintiff's Steering Committee