1  LAURA VARTAIN HORN (SBN: 258485)
       laura.vartain@kirkland.com
2  **KIRKLAND & ELLIS LLP**
   555 California Street, 30th Floor
3  San Francisco, CA 94104
   Telephone: (415) 439-1625
4
5  ALLISON M. BROWN (admitted *Pro Hac Vice*)
       allison.brown@kirkland.com
6  JESSICA DAVIDSON (admitted *Pro Hac Vice*)
       jessica.davidson@kirkland.com
7  **KIRKLAND & ELLIS LLP**
   601 Lexington Avenue
8  New York, NY 10022
   Telephone: (212) 446-4723
9
10 *Attorneys for Defendants*
   UBER TECHNOLOGIES, INC.,
11 RASIER, LLC, and RASIER-CA, LLC
   *[Additional Counsel Listed on Following Pages]*
12

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, RASIER-CA, LLC'S REPLY SUPPORTING MOTION FOR SANCTIONS AGAINST BRET STANLEY** |
| This Document Relates to: ALL ACTIONS | Judge: Hon. Lisa J. Cisneros<br>Courtroom: G-15th Floor<br>Date: January 20, 2026<br>Time: 10:30 a.m. |

**TABLE OF CONTENTS**

I.  Introduction ................................................................................................................................ 1

II. Mr. Stanley ignores the violations at issue in the Motion. ........................................................ 3

   A.  Mr. Stanley fails to explain how his search of the MDL repository for information to use in his *Smith* case was allowed by the Protective Order—it was not. ................................... 3

   B.  The Protective Order prohibits both the use and disclosure of *information* in documents designated as Confidential. ............................................................................................... 4

   C.  Defendants do not seek sanctions for Mr. Stanley's *Smith* discovery request or identification of a Bates number. ............................................................................................................. 6

   D.  Mr. Stanley's "general knowledge" argument is divorced from the facts here. ....................... 6

   E.  Mr. Stanley's attempt to once again blame Defendants for his Protective Order violation underscores the need for sanctions. .................................................................................... 7

   F.  Mr. Stanley's arguments regarding collateral discovery and "judicial economy" are completely misplaced. ......................................................................................................... 9

III. The requested sanctions are appropriate—and modest—under the circumstances. ............... 10

   A.  Defendants did not request disqualification or seek a contempt finding. ............................... 11

   B.  The requested sanctions are just. ............................................................................................ 11

   C.  Removal of Mr. Stanley from the PSC and revoking his access to the full MDL repository are appropriate remedies meant to prevent future violations. ................................................ 12

   D.  Defendants properly requested leave to submit a L.R. 37-4(b)(3) fee petition. ..................... 14

IV. Conclusion .............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Baycol Prods. Litig.*,
   No. MDL 1431, 2004 WL 1052968 (D. Minn. Apr. 12, 2004) ................................................12

*Borger v. Polaris Indus. Inc.*,
   No. CV-23-08052-PCT-SMM, 2023 WL 5179494 (D. Ariz. Aug. 11, 2023) ........................13

*Chandler Gas & Store Inc. v. Treasure Franchise Co. LLC*,
   No. CV-23-00400-PHX-KML, 2025 WL 1331741 (D. Ariz. May 7, 2025)...........................11

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
   482 F.3d 1091 (9th Cir. 2007) .................................................................................................11

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
   No. C01-21151JW(PVT), 2007 WL 1848660 (N.D. Cal. June 27, 2007)................................5

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ......................................................................................................6

*In re eBay Seller Antitrust Litig.*,
   No. C07-01882 JF (HRL), 2010 WL 2836815 (N.D. Cal. July 19, 2010) ..............................10

*Gonzales v. Charter Commc'ns, LLC*,
   No. 2:20-CV-08299-SB-AS, 2022 WL 570003 (C.D. Cal. Jan. 26, 2022) .............................11

*Grimes v. City & Cnty. of San Francisco*,
   951 F.2d 236 (9th Cir. 1991) ..................................................................................................12

*Hernandez v. Syncrasy*,
   No. 21-CV-09212-CRB (LJC), 2023 WL 2600452 (N.D. Cal. Mar. 21, 2023).......................4

*L.D. v. United Behav. Health*,
   No. 4:20-CV-02254-YGR, 2025 WL 3256506 (N.D. Cal. Oct. 7, 2025)...........................2, 11

*LKQ Corporation v. Kia Motors America, Inc.*,
   345 F.R.D. 152 (N.D. Ill. 2023)................................................................................................8

*Maness v. Meyers*,
   419 U.S. 449 (1975).............................................................................................................2, 13

*Navarrete - Pureco v. Tom Gullickson, Inc.*,
   No. 2:24-CV-01719-GMN-MDC, 2025 WL 1569242 (D. Nev. June 2, 2025) ......................13

*NuVasive, Inc. v. Alphatec Holdings, Inc.*,
   No. 18-CV-0347-CAB-MDD, 2019 WL 4934477 (S.D. Cal. Oct. 7, 2019)............................8

*On Command Video Corp. v. LodgeNet Ent. Corp.*,
   976 F. Supp. 917 (N.D. Cal. 1997) .................................................................................................4

*Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*,
   419 F.3d 794 (8th Cir. 2005) .................................................................................................12, 13

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*,
   250 F.R.D. 426 (D. Neb. 2008).................................................................................................5, 6

*True Health Chiropractic Inc v. McKesson Corp.*,
   No. 13CV02219HSGDMR, 2015 WL 1502953 (N.D. Cal. Apr. 1, 2015)..............................13

**Rules**

Fed. R. Civ. P. 1 ...............................................................................................................................8, 12

Fed. R. Civ. P. 37 .......................................................................................................................... *passim*

Fed. R. Civ. P. 37(b) .............................................................................................................................11

Fed. R. Civ. P. 37(b)(2).........................................................................................................................11

Fed. R. Civ. P. 37(b)(2)(A) ...................................................................................................................11

Fed. R. Civ. P. 37(b)(2)(C) ...................................................................................................................14

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Introduction**

Mr. Stanley admits that he searched Plaintiffs' MDL discovery repository for information to use in *Smith*—one of his car accident cases. Mr. Stanley also admits that he advanced arguments in *Smith* based on the Confidential MDL document he found through his improper search—the VFB Analysis. And Mr. Stanley's emails prove that he disclosed information from the VFB Analysis to twenty-nine recipients who were not authorized to receive Confidential MDL information. These three Protective Order violations are the bases of Defendants' Motion.

Mr. Stanley provides no argument or legal authority suggesting his search of the MDL repository was permissible. Mr. Stanley's search plainly violated the Protective Order by using Confidential MDL information for purposes other than the MDL or JCCP. ECF 176, ¶7.1. Mr. Stanley's sole argument is that he did not disclose the VFB Analysis itself. This argument is negated by the Protective Order's plain language, which expressly prohibits use or disclosure of any "information … from" Confidential MDL documents. ECF 176, ¶3. Moreover, Mr. Stanley made this same argument the last time he violated the Protective Order and this Court properly rejected it. ECF 4233-1 (8/12/25 Tr. at 10:2-4).

Instead of addressing the relevant facts, Mr. Stanley mischaracterizes the violations at issue and the remedies Defendants request. First, Defendants did not argue that Mr. Stanley violated the Protective Order through any discovery request, by identifying a Bates number, or by using his general knowledge of Defendants' systems. Mr. Stanley's general knowledge argument cannot apply to his search of the entire MDL repository for documents to use in a non-MDL case. Nor can Mr. Stanley's general knowledge argument excuse his use and disclosure of the VFB Analysis because he does not even *claim* that he knew about this document until *after* he violated the Protective Order by searching the MDL repository. Second, Defendants do not seek to disqualify Mr. Stanley from representing individual MDL Plaintiffs or request a contempt finding. Rather, Defendants request specific remedies designed to prevent future violations of the Court's Protective Order. The requested remedies are appropriate—and necessary—given that Mr. Stanley was not deterred by this Court's previous ruling.

Finally, Mr. Stanley's attempt to excuse his violation by claiming Defendants failed to produce documents in *Smith*—the same defense he offered regarding his last Protective Order violation—underscores the need for sanctions. This Court recently admonished Mr. Stanley that "discovery in this MDL is for this MDL …." ECF 4233-1 (8/12/25 Tr. at 14:4). Thus, Mr. Stanley cannot search the MDL repository when he "does not trust" Defendants' discovery responses in non-MDL cases. Moreover, while it is wholly irrelevant to the issue before this Court, Mr. Stanley is incorrect about what the VFB Analysis shows and is misrepresenting his *Smith* discovery requests in an attempt to suggest Defendants are withholding responsive documents in that case. Simply put, Mr. Stanley's misinterpretation of a document he improperly obtained by searching the MDL repository is once again creating an unnecessary discovery dispute in a non-MDL case.

Mr. Stanley's disregard for this Court's orders—and for the processes required by law to challenge confidentiality designations or seek collateral discovery—cannot be tolerated. *Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."). This Court recently emphasized that: "[i]t is crucial that all the attorneys and their agents and anybody governed by the protective orders abide by them." ECF 3849 (8/28/25 Tr. at 42:17–19). Counsel cannot "treat the terms of protective orders … as optional, and assume the role of arbiter over whether or not competing concerns justify the sharing of information outside the bounds of those agreements." *L.D. v. United Behav. Health*, No. 4:20-CV-02254-YGR, 2025 WL 3256506, at *4 (N.D. Cal. Oct. 7, 2025).

This Court already found that Mr. Stanley violated the Protective Order and issued a narrowly tailored Order in an attempt to remedy the violations. ECF 3708 (8/18/25 Order). Yet, Mr. Stanley continues to violate the Protective Order despite this Court's ruling thereby damaging Defendants again and creating unnecessary motion practice before this Court.[1] For these reasons, Mr. Stanley should be removed from the PSC or, at a minimum, his access to the full MDL repository (*i.e.*,

---

[1] Defendants have reason to believe Mr. Stanley intended to search—or perhaps did search—the MDL repository for the UUID of the driver in his *Lord* car accident case as well. Mr. Stanley's co-counsel first requested the *Lord* driver's UUID on November 5, 2025. ECF 4603-4, Gromada Dec., at n. 2. This was nearly two years after *Lord* was filed but during the same time period that Mr. Stanley searched the MDL repository for the *Smith* Earner's UUID. *Id.*

2
DEFENDANTS' REPLY SUPPORTING MOTION FOR SANCTIONS AGAINST BRET STANLEY
Case No. 3:23-MD-3084-CRB

common corporate discovery) should be revoked. Mr. Stanley can still represent his MDL Plaintiffs and will receive the same access to discovery as every other non-PSC Plaintiffs' counsel. These remedies are necessary to protect Defendants from on-going and future violations.

**II.    Mr. Stanley ignores the violations at issue in the Motion.**

Mr. Stanley's search of the MDL repository for information to use in a non-MDL case, and his subsequent use and disclosure of the Confidential MDL information acquired through his search, clearly violate the Protective Order. Mr. Stanley does not refute the facts proving these violations. Instead, Mr. Stanley mischaracterizes the violations at issue then blames Defendants for his actions by inaccurately claiming Defendants failed to produce responsive documents in a non-MDL case.

**A.    Mr. Stanley fails to explain how his search of the MDL repository for information to use in his *Smith* case was allowed by the Protective Order—it was not.**

Mr. Stanley does not dispute that he searched the MDL repository for the UUID of the Earner in *Smith*. *See generally* ECF 4780-3 & ECF 4780-4 (Mr. Stanley's Response & Declaration); *see also* ECF 4603-4, Gromada Dec., ¶12 ("Mr. Stanley did not deny that he searched the MDL discovery repository using the Smith Earner's UUID."). This search violated the Protective Order because it used Confidential and Highly Confidential documents for a purpose other than "prosecuting, defending, or attempting to settle [the MDL] or the [related JCCP] consolidated action …." ECF 176, ¶7.1. Mr. Stanley offers no argument or legal authority suggesting his search of the MDL repository for information related to a non-MDL case was permitted by the Protective Order.

If an attorney searched a conference room of paper documents designated as confidential pursuant to a protective order from one case for documents to use in a different and unrelated case, the attorney would plainly violate the protective order. What Mr. Stanley did here is no different. Indeed, the Protective Order's stated purpose is to provide confidential, proprietary, or private information "special protection … from use for any purpose other than prosecuting this litigation …." ECF 176, ¶1.[2] Mr. Stanley fails to identify any interpretation of the Protective Order—much less a

---

[2] A bedrock principle of protective orders is prohibiting the use of confidential information for purposes other than the litigation in which such confidential information is produced, including to litigate other cases. Thus, like the Protective Order governing the Parties' conduct here, the Northern

3

DEFENDANTS' REPLY SUPPORTING MOTION FOR SANCTIONS AGAINST BRET STANLEY
Case No. 3:23-MD-3084-CRB

reasonable interpretation—that would allow him to search the MDL repository to further his non-MDL car accident cases. Mr. Stanley concedes that his search of the MDL repository violated the Protective Order by declining to offer any argument defending his conduct.

### B. The Protective Order prohibits both the use and disclosure of *information* in documents designated as Confidential.

Mr. Stanley concedes that he told Defendants' *Smith* counsel—and twenty-eight other email recipients—that "documents related to Aldana's UUID" (the VFB Analysis) show that Mr. Aldana had ▓▓▓▓. ECF 4603-5 (Stanley November 13, 2025 email). Mr. Stanley is incorrect about what the VFB Analysis shows. ECF 4603-6, Brown Dec., ¶6. Still, Mr. Stanley plainly used information in the VFB Analysis to litigate *Smith* and disclosed that information in the process.

Mr. Stanley argues that technically he did not disclose the VFB Analysis itself. ECF 4780-3 (Response) at 12:21 ("Bret Stanley never shared the document complained of by Uber's Counsel …"). Once again, Mr. Stanley's argument ignores the Protective Order's plain language. The Protective Order covers more than physical documents marked as Confidential—it protects the information in those documents. ECF 176, ¶3.[3] Moreover, Mr. Stanley asserted this same argument in defense of his last violation[4] and this Court correctly rejected it. ECF 4233-1 (8/12/25 Tr. at 10:2-4) ("... even if you didn't print out a copy of that page from the production, it still ends up disclosing the material.").

Mr. Stanley ignores the Protective Order's "use" restriction. Because counsel can use information in Confidential MDL documents without disclosing them, the Protective Order intentionally prohibits both "disclosure" and "use." *On Command Video Corp. v. LodgeNet Ent. Corp.*,

---

District of California's Model Stipulated Protective Order, approved by the judges in this District, states that: "A Receiving Party may use Protected Material … only for prosecuting, defending, or attempting to settle this litigation." See CAND_StandardProtOrd.Feb2022_0.pdf; *see also Hernandez v. Syncrasy*, No. 21-CV-09212-CRB (LJC), 2023 WL 2600452, at *2 (N.D. Cal. Mar. 21, 2023) ("The Northern District's model protective order is presumptively reasonable.").

[3] The Protective Order covers "not only Protected Material … but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any Testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material."

[4] In his Response to Defendants' Motion to Enforce Protective Order, Mr. Stanley argued that he "has not disclosed confidential documents to individuals …." ECF 3584 at 1:10.

976 F. Supp. 917, 922 (N.D. Cal. 1997) ("The difficulty with the Magistrate's reasoning is that the Protective Order is not limited to the mere disclosure of protected information. Rather, as defendant correctly points out, it prohibits use."); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C01-21151JW(PVT), 2007 WL 1848660, at *5 (N.D. Cal. June 27, 2007) (interpreting nearly identical use restriction in protective order and finding: "Plaintiffs used the documents in connection with another case, thus they did not substantially comply with the protective order."). While Mr. Stanley claims that he "did not use or disclose any confidential information … concerning any VFB data associated with [the *Smith* Earner's] account," (ECF 4780-3 (Response) at 12:1-3), his emails prove otherwise. Mr. Stanley admitted the VFB Analysis was the basis for his arguments during recent discovery disputes in *Smith*. ECF 4603-5 (Stanley November 18, 2025 email) (When asked "the basis for [his] claims" regarding the *Smith* Earner's UUID, Mr. Stanley wrote: "this document … is from MDL 3084 …").

        Finally, Mr. Stanley cannot defend his use and disclosure of the VFB Analysis by pointing to the "general reference to protected documents" language from *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 250 F.R.D. 426 (D. Neb. 2008). ECF 4783 at 14.[5] The reason is apparent: Mr. Stanley obtained the document to which he made "general reference" by violating the Protective Order. Counsel cannot search through confidential documents from one case for documents to use in other cases—find and use the document—then claim they only made "general reference" to the document. Like Mr. Stanley's other interpretations, this would render the Protective Order meaningless.

        The undisputed evidence establishes that Mr. Stanley used and disclosed information from the VFB Analysis, a Confidential MDL document, for the purpose of litigating *Smith*, both of which violate the Protective Order.

---

[5] Of the cases Mr. Stanley cites, only *Streck* contains the "general reference to protected documents" language. In *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, the defendant did not even argue that a protective order was violated; instead, the defendant sought disqualification of a law firm arguing that the firm would "inevitably use" confidential information from a prior case. No. 99 C 0762, 1999 WL 528545, at *1-2 (N.D. Ill. July 19, 1999).

Case 3:23-md-03084-CRB   Document 4827   Filed 12/29/25   Page 10 of 20

C. **Defendants do not seek sanctions for Mr. Stanley's *Smith* discovery request or identification of a Bates number.**

Mr. Stanley claims Defendants "seek[] sanctions … for a discovery request related to" ▮▮▮ ECF 4780-3 (Response) at 1:2-4; *see also id.* at 11:26 ("Stanley did not use or identify any confidential information in Request for Production 70 …"). This is obviously false. Mr. Stanley was entitled to request documents indicating whether the *Smith* Earner had ▮▮▮. See Declaration of Veronica Hayes Gromada ("Gromada Dec."), Exhibit A, at ¶¶5-6. Mr. Stanley, however, was not permitted to root around in the MDL repository when he did not like Defendants' response. Mr. Stanley also suggests that Defendants believe his identification of a Bates number violated the Protective Order and argues that he sought permission to share this Bates number. ECF 4780-3 (Response) at 12:3-10. But Defendants never claimed Mr. Stanley violated the Protective Order by identifying a Bates number. These arguments are red herrings meant to distract the Court from the facts at issue.

D. **Mr. Stanley's "general knowledge" argument is divorced from the facts here.**

Mr. Stanley's general knowledge argument is entirely inapplicable to the violations at issue. Mr. Stanley does not—and cannot—claim to have general knowledge of over 1.8 million documents in the MDL repository. Thus, Mr. Stanley's general knowledge argument cannot apply to his search of the MDL repository for information to use in a non-MDL case.[6] And Mr. Stanley does not even argue that he had general knowledge of the VFB Analysis from his experience litigating the MDL.[7] Rather, Mr. Stanley admits that he only learned of the VFB Analysis because he affirmatively searched the MDL repository for the *Smith* Earner's UUID. Mr. Stanley absurdly claims that Defendants are

---

[6] Of course, Mr. Stanley cites no cases remotely suggesting that an attorney can rummage through all of the confidential documents produced in one case hoping to find information to use in other cases. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993) and *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 250 F.R.D. 426 (D. Neb. 2008) both involved situations where counsel had an independent recollection of specific documents. *Hu-Friedy Mfg. Co.* does not involve violation of a protective order at all. 1999 WL 528545, at *1-2 (N.D. Ill. July 19, 1999).

[7] Mr. Stanley knows he cannot credibly claim to have learned about the VFB Analysis while litigating the MDL because the document does not relate to the Rides business or sexual assault—it is far afield of the claims and defenses in the MDL.

6
DEFENDANTS' REPLY SUPPORTING MOTION FOR SANCTIONS AGAINST BRET STANLEY
Case No. 3:23-MD-3084-CRB

forcing him to "obtain total amnesia" when he acquired the very specific knowledge at issue here by searching the MDL repository in violation of the Protective Order.

Defendants agree that Mr. Stanley's use of his general knowledge of their systems is not prohibited, including his general knowledge of VFB information. *See* Exhibit A, Gromada Dec. at ¶¶5-6. Mr. Stanley is free to request VFB documents in non-MDL cases. Mr. Stanley can tell the *Smith* court what he thinks a ▮▮▮ is from his general knowledge and why he believes it exists in that case. Mr. Stanley can use his general knowledge to question Defendants' corporate representative about why no ▮▮▮ exist in *Smith*. None of that conduct violates the plain language of the Protective Order. Mr. Stanley's false claim that Defendants object to his use of general knowledge is yet another attempt to obscure the question before the Court.

### E. Mr. Stanley's attempt to once again blame Defendants for his Protective Order violation underscores the need for sanctions.

Mr. Stanley cannot violate the Protective Order because he incorrectly believes Defendants failed to produce documents in *Smith*. Yet, Mr. Stanley apparently disagrees because he again[8] attempts to excuse his violation by disputing Defendants' discovery positions in non-MDL cases. Specifically, Mr. Stanley argues that no "reasonable reading" of the Protective Order could prohibit him from asking Defendants to "look" for the VFB Analysis because Defendants should have produced the VFB Analysis in response to his *Smith* discovery requests. ECF 4780-3 (Response) at 15:15. This argument defies logic. Mr. Stanley only asked Defendants to look for the VFB Analysis because he had *already* violated the Protective Order by searching the MDL repository.

Mr. Stanley's argument would fail even if his speculation about the VFB Analysis were correct. And Defendants should not have to rebut an argument Mr. Stanley can only make because he violated the Protective Order. But, Mr. Stanley is incorrect about the VFB Analysis (ECF 4603-6, ¶6) and he is misrepresenting his discovery requests in an attempt to suggest Defendants are withholding

---

[8] Mr. Stanley's Response to Defendants' Motion to Enforce Protective Order argued that he used Confidential MDL information "[d]ue to Uber's refusal to produce relevant and discoverable documents in matters outside of this MDL." ECF 3584 at 1:13-14. This Court correctly rejected that defense, yet Mr. Stanley advances it again here. ECF 4233-1 (8/12/25 Tr. at 5:24-6:4).

responsive documents. Mr. Stanley requested "documents that indicate" Defendants "flagged" the *Smith* Earner while he was on the Eats platform.[9] ECF 4780-3 (Response) at 6:17-19.[10] The VFB Analysis is not responsive to this request because it does not reflect ▇▇▇. ECF 4603-6, Brown Dec. at ¶6. Instead, the VFB Analysis is a backward looking "audit" found in a custodial file created the year after the *Smith* Earner was removed from the Eats' platform. ECF 4603-6, Brown Dec. at ¶3.[11]

Admittedly, Mr. Stanley has substantial knowledge about Defendants' systems. But he does not know everything, and not everything he purports to know with absolute certainty is accurate. Defendants' technology and capabilities have changed over time and sometimes varies based on region. Because of issues like this, courts recognize that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 18-CV-0347-CAB-MDD, 2019 WL 4934477, at *2 (S.D. Cal. Oct. 7, 2019). Yet, every time Defendants' data differs from Mr. Stanley's preconceived notions, he asserts misconduct. That is not how our discovery system works. *LKQ Corporation v. Kia Motors America, Inc.*, 345 F.R.D. 152, 156 (N.D. Ill. 2023) ("If second-guessing" the opposing party's production "was the norm, the whole discovery system would break down into an endless barrage of motions based on mistrust about the opponent's production.").

---

[9] Contrary to his claims, Mr. Stanley did not propound a "general request for documents related to one of Uber's Systems" (ECF 4780-3 at 15:15) or seek "VFB Data" (ECF 4780-3 at 12:14). Indeed, it is entirely unclear what Mr. Stanley means by "VFB Data" since he admits the system is based on GPS data and admits that Defendants produced GPS data in *Smith*. ECF 4780-3 at 4:24; 6:9.

[10] At a hearing in *Smith*, Mr. Stanley confirmed: "We're asking that Uber produce every time between February 10th, 2022 and April 6th, 2022, when Joshua's account was ▇▇▇▇▇▇▇▇▇▇▇▇▇." ECF 4780-7 (11/5/25 *Smith* Tr.) at 70:13-16.

[11] Had the *Smith* Earner been flagged while he was using the Eats platform, there would be no need to search custodial files for documents created the year after the Earner was deactivated. Instead, the ▇▇▇▇ would be reflected on the Earner's account and related communications.

Mr. Stanley's refusal to accept Defendants' response in *Smith* and resulting decision to violate the Protective Order has created yet another discovery dispute that should not exist.[12] Of course, Mr. Stanley can inquire about Defendants' *Smith* responses in numerous ways *within the rules* including through additional written discovery and corporate representative questioning. He did not do so. Instead, Mr. Stanley violated the Protective Order by searching the MDL repository in hopes of finding information supporting his *Smith* theory.

### F.   Mr. Stanley's arguments regarding collateral discovery and "judicial economy" are completely misplaced.

Mr. Stanley argues that sanctions should not be imposed because now—*after* he violated the Protective Order yet again—he claims to be "working on" a motion to modify the Protective Order. First, there is no motion to modify the Protective Order before this Court and therefore nothing has changed the operative Protective Order applicable to the present Motion.[13] Second, a broad-sweeping modification of the Protective Order that would allow a MDL Plaintiffs' attorney to search the MDL repository for Confidential documents to use in unspecified non-MDL cases—including car accident cases—is not proper pursuant to the legal standard set forth in *Foltz v. State Farm Mut. Auto. Ins. Co.* or any other legal precedent.

Mr. Stanley's reliance on *Foltz* is completely misplaced for several reasons. 331 F.3d 1122 (9th Cir. 2003). First, *Foltz* does not involve—and has nothing to do with—protective order violations. Second, *Foltz* in no way suggests that the "judicial economy" of collateral discovery can excuse a protective order violation. *Id.*[14] Third, *Foltz* clearly provides that the propriety of collateral discovery

---

[12] The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Mr. Stanley's actions violate this fundamental rule.

[13] Defendants agreed to meet and confer regarding Mr. Stanley's unspecified proposed modification motion, but Mr. Stanley subsequently cancelled the conferral. *See* Exhibit A, Gromada Dec. at ¶8. As a result, Defendants do not know what type of Protective Order modification he may seek or for what types of cases he intends to request the use of Confidential MDL discovery. These are nuanced issues and Defendants intend to address them in detail if and when any modification motion is filed.

[14] Modification of the Protective Order will not end discovery disputes in non-MDL cases. Instead, the collateral courts will be forced to decide whether MDL discovery must be produced in their cases. *Foltz*, 331 F.3d at 1133. In fact, making MDL discovery available for use in collateral litigation will

9

DEFENDANTS' REPLY SUPPORTING MOTION FOR SANCTIONS AGAINST BRET STANLEY
Case No. 3:23-MD-3084-CRB

hinges on several fact intensive issues. 331 F.3d 1122, 1132 ("Such relevance hinges 'on the degree of overlap in facts, parties, and issues between the suit covered by the protective order and the collateral proceedings.'"). Unlike the widely disparate claims advanced by the plaintiff in *Smith* (a car accident case) versus those advanced by the MDL Plaintiffs (relating to sexual assault and misconduct), the claims of the underlying and collateral plaintiffs in *Foltz* were identical.[15] 331 F.3d 1122, 1127-1129. Fourth, even if the relevance inquiry is satisfied—which it would not be here—the court "that issued [the protective order] must consider other factors in addition to the relevance of the protected discovery to the collateral litigation." 331 F.3d 1122, 1133. These factors include, without limitation, the reliance interest of a party opposing modification.[16] *Id*.

Mr. Stanley misused the entire MDL repository and the Confidential MDL documents therein by searching for information for his *Smith* case. No legal authority would allow cloned discovery between this MDL and a car accident case.[17]

### III. The requested sanctions are appropriate—and modest—under the circumstances.

Mr. Stanley has repeatedly violated the Protective Order. Mr. Stanley also ignored the required legal processes for challenging confidentiality designations and seeking collateral discovery. Perhaps

---

undoubtedly incentivize Mr. Stanley to request extensive MDL information in every case thereby increasing discovery disputes.

[15] The underlying *Foltz* plaintiffs "alleged that State Farm conspired with [CMR], which provided medical review services, to defraud insureds of personal injury protection owed to them under their State Farm automobile policies" while the collateral plaintiffs also "allege[d] that State Farm conspired with CMR to wrongfully deny personal injury coverage under State Farm automobile policies …." 331 F.3d 1122, 1127-1129.

[16] Defendants' reliance interests are extremely strong in this case. After the parties agreed to certain provisions of the Protective Order, Judge Breyer resolved the parties' remaining disputes including disputes regarding use of MDL discovery for the JCCP. ECF 176 at 1; ECF 170 at 5 (Joint Letter). No other collateral use was requested in the parties' joint letter outlining Protective Order disputes. ECF 170 at 5. Defendants produced an incredible volume of confidential and proprietary information. Numerous discovery issues—primarily related to the scope of Plaintiffs' requests—were litigated after entry of the Protective Order. During those disputes, Defendants were repeatedly reassured that they could rely on the Protective Order. *See, e.g.*, ECF 695 at 15; ECF 1919 at 2; ECF 1996 at 3.

[17] *In re eBay Seller Antitrust Litig.*, No. C07-01882 JF (HRL), 2010 WL 2836815, at *4 (N.D. Cal. July 19, 2010) (refusing to modify protective order to allow the plaintiff's counsel to "go through their set of … document productions [from the same defendant in another case] and select what they want to use" and seeing "no efficiency" in "revers[ing] the role of who searches for and identifies relevant material" by allowing the plaintiff's counsel to resort to "self-help").

most troublingly, Mr. Stanley clearly believes he is justified in resorting to self-help without any regard for the Protective Order. These circumstances require Mr. Stanley's removal from the PSC. At the very least, Mr. Stanley's access to the full MDL repository must be revoked to protect Defendants from future violations.

### A. Defendants did not request disqualification or seek a contempt finding.

Mr. Stanley's Response devotes extensive argument to cases related to disqualification of counsel. Defendants, however, did not request that Mr. Stanley be disqualified as counsel for any MDL Plaintiff. Similarly, Defendants did not seek a contempt finding, although one is more than justified here. Instead, Defendants seek sanctions pursuant to Rule 37, which allows this Court to enter "just orders." Notably, Judge Gonzalez-Rogers imposed both monetary and non-monetary sanctions for violation of a protective order without any finding of contempt. *L.D.*, 2025 WL 3256506, at *5 (N.D. Cal. Oct. 7, 2025).

Here, Defendants request the following: (a) Mr. Stanley be removed from the PSC; (b) Mr. Stanley's access to MDL discovery be restricted such that he receives the same information as every other non-PSC Plaintiffs' counsel;[18] and (c) reimbursement for fees incurred because of Mr. Stanley's Protective Order violation. These sanctions are just and necessary.

### B. The requested sanctions are just.

Rule 37 sanctions do not require bad faith, much less "dishonesty, fraud, or deceit" as Mr. Stanley seems to suggest. *Gonzales v. Charter Commc'ns, LLC*, No. 2:20-CV-08299-SB-AS, 2022 WL 570003, at *3 (C.D. Cal. Jan. 26, 2022). "[T]he 'central factor in evaluating' a[n] … order granting sanctions under Rule 37(b)(2) 'is justice,' which requires some proportionality between the misconduct alleged and the sanction." *Chandler Gas & Store Inc. v. Treasure Franchise Co. LLC*, No. CV-23-00400-PHX-KML, 2025 WL 1331741, at *3 (D. Ariz. May 7, 2025) quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1056 (9th Cir. 1998); *see also* Fed. R. Civ. P. 37(b)(2)(A)

---

[18] No member of the PSC has engaged Defendants' counsel in any communications and/or taken a position on Defendants' request that: (1) Mr. Stanley be removed from the PSC; and (2) Mr. Stanley's access to the MDL repository be revoked. *See* Exhibit A, Gromada Dec. at ¶9.

(Rule 37(b) provides that where a party fails to obey an order, "the court where the action is pending may issue further just orders.").

Here, the requested sanctions are aimed squarely at preventing future misconduct and, thus, are proportional. Moreover, the lesser sanctions previously imposed by this Court did not deter Mr. Stanley from continued violations. *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (The Ninth Circuit evaluates whether lower courts considered or tried lesser sanctions before imposing case dispositive sanctions.). Mr. Stanley argues that he did not engage in "dishonesty, fraud, or deceit." ECF 4780-3 (Response) at 13:22. Even if that is true, it is not the standard. Without the requested remedies, Defendants will undoubtedly be forced to constantly monitor Mr. Stanley's conduct in every non-MDL case to ensure he does not violate the Protective Order. That is neither a just result nor is it consistent with Rule 1.

### C. Removal of Mr. Stanley from the PSC and revoking his access to the full MDL repository are appropriate remedies meant to prevent future violations.

Mr. Stanley does not explain why he should be allowed to serve on the PSC—and have full access to the MDL repository—when he has violated this Court's orders and ignored the processes required by law. Instead, Mr. Stanley argues that an attorney can only be removed from the PSC for "conduct involving dishonesty, fraud, or deceit." ECF 4780-3 (Response) at 13:21-23. Not surprisingly, Mr. Stanley's argument is unsupported by legal authority.

The Court's discretion under Rule 37 is broad. *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (For purposes of Rule 37, the "'court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even.'" (citation omitted)). This discretion clearly extends to removing an attorney from the PSC. No attorney has a right to serve in MDL leadership. In fact, Judge Breyer's Order provides that counsel may be removed from the PSC "[i]f circumstances warrant …." ECF 152 (12/6/23 Order). Here, "circumstances warrant" Mr. Stanley's removal.

Moreover, the *Baycol* court found that an attorney's mishandling of confidential information alone was a sufficient basis to remove such attorney from the PSC:

> In addition, Moll failed to exercise due care regarding the handling of confidential documents. **This improper handling**, and failure to even attempt to correct the problem, demonstrate that Moll is not qualified to perform the duties of a PSC member with the zeal and integrity this Court requires.

*Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 807 (8th Cir. 2005) (quoting the trial court's ruling) (emphasis added). Thus, *Baycol* supports Mr. Stanley's removal from the PSC. *See In re Baycol Prods. Litig.*, No. MDL 1431 (MJD/JGL), 2004 WL 1052968, at *14 (D. Minn. Apr. 12, 2004) ("As a member of the PSC, Moll had a heightened obligation to protect confidential information. Instead of taking the obligation seriously, Moll cavalierly disregarded it."). Nothing in *Baycol* suggests that "dishonesty, fraud, or deceit" are required to remove an attorney from leadership as Mr. Stanley suggests.

This Court previously found that Mr. Stanley ignored required legal processes and acted "in a cavalier manner with respect to the" Protective Order. ECF 4233-1 (8/12/25 Tr. at 6:21-25) (observing that Mr. Stanley failed to follow the "process for disputing confidentiality designations"); 12/9/25 Tr. at 19:23-25 (noting "concerns" that Mr. Stanley acted "in a cavalier manner"); 12/9/25 Tr. at 20:7-8 (observing that Mr. Stanley failed to follow the process required to request discovery for collateral cases). These processes are important. Among other things, these processes are meant to ensure notice and an opportunity to be heard.

Because Mr. Stanley has repeatedly ignored required legal processes and violated this Court's orders, he should be removed from the PSC.[19] At a minimum, his access to the full MDL repository should be revoked to protect Defendants' confidential information. Mr. Stanley either thought he was allowed to search the MDL repository for the UUIDs of parties in his non-MDL car accident cases, or

---

[19] "The orderly and expeditious administration of justice by the courts requires" that parties and attorneys obey court orders. *Maness*, 419 U.S. at 459; *Borger v. Polaris Indus. Inc.*, No. CV-23-08052-PCT-SMM, 2023 WL 5179494, at *4 (D. Ariz. Aug. 11, 2023) (same); *Navarrete - Pureco v. Tom Gullickson, Inc.*, No. 2:24-CV-01719-GMN-MDC, 2025 WL 1569242, at *3 (D. Nev. June 2, 2025) (imposing attorneys' fees as sanctions and quoting *Maness* in rejecting the plaintiffs' argument that they were not obligated to comply with a standing order conferral requirement because they did not believe an issue was a discovery dispute).

1  he knew the Protective Order prohibited this and did it anyway. Either way, his continued access to
2  the full MDL repository is untenable.

3    **D. Defendants properly requested leave to submit a L.R. 37-4(b)(3) fee petition.**

4    Defendants acknowledge that an itemized fee petition is required, which is why they sought
5  leave to submit one. Mr. Stanley provides no authority suggesting this petition must be filed at the
6  same time as a motion asking the Court to find a violation. Indeed, parties are allowed to bring fee
7  motions after seeking substantive relief under Rule 37. *See, e.g.*, *True Health Chiropractic Inc v.*
8  *McKesson Corp.*, No. 13CV02219HSGDMR, 2015 WL 1502953, at *9 & n.4 (N.D. Cal. Apr. 1, 2015)
9  (granting motion for sanctions pursuant to Rule 37 and, citing L.R. 37-4(b)(3), directing the plaintiffs
10 to file their "fee motion" at a later date). Defendants are attempting to stop ongoing violations of the
11 Protective Order. Mr. Stanley presumes he can search the MDL repository to further his non-MDL
12 cases; therefore, Defendants were forced to bring this Motion as expeditiously as possible rather than
13 wait for time entries to be finalized. Fee awards under Rule 37(b)(2)(C) are presumed mandatory
14 because it is critical for attorneys and parties to obey court orders. The Federal Rules do not require
15 parties to choose between stopping an ongoing Protective Order violation and recovering the fees to
16 which they are entitled.

17 **IV. Conclusion**

18   Mr. Stanley's clear and repeated violations of the Protective Order warrant the remedies
19 requested here. The Protective Order prohibits the use of covered information for any purpose other
20 than the MDL or JCCP. ECF 176, ¶7.1. Mr. Stanley searched the MDL repository of over 1.8 million
21 documents for information to use in a non-MDL car accident case. Such conduct clearly violates the
22 Protective Order. Mr. Stanley then used a Confidential MDL document from the MDL repository and
23 disclosed information from the Confidential MDL document in a non-MDL case in violation of the
24 Protective Order. If the Protective Order does not prohibit counsel from searching *all* Confidential and
25 Highly Confidential MDL documents hoping to find information helpful to non-MDL cases, it is
26 meaningless.

27
28

|   |   |
|---|---|
| 1 | Defendants both understand and share this Court's frustration with having to repeatedly address Mr. Stanley's violations of the Protective Order. The solution should be for Mr. Stanley to simply abide by the Protective Order. Unfortunately, that has not happened, despite this Court's prior admonishments. And Mr. Stanley's repeated attempts to rationalize his violations of the Protective Order and divert the Court's attention from those violations with various strawman arguments give Defendants no comfort that Mr. Stanley will *ever* comply with this Court's orders. Therefore, Defendants have no choice but to protect the vast volume of sensitive and proprietary information, which was produced in this MDL in reliance on the protections expressly afforded by the Protective Order, by asking this Court to put a permanent stop to Mr. Stanley's violations. To ensure the integrity of the discovery process in this MDL going forward, Defendants respectfully request that this Court: (a) remove Mr. Stanley from the PSC, or, at minimum, remove Mr. Stanley's access to the full MDL repository; and (b) order Mr. Stanley to reimburse Defendants' reasonable fees incurred as a result of his latest violation of the Protective Order as required by Rule 37. |

| | | |
|---|---|---|
| 1 | DATED: December 29, 2025 | **SHOOK, HARDY & BACON L.L.P.** |
| 2 | | |
| 3 | | By: */s/ Michael B. Shortnacy*<br>      MICHAEL B. SHORTNACY |
| 4 | | **KIRKLAND & ELLIS LLP** |
| 5 | | ALLISON M. BROWN<br>JESSICA DAVIDSON |
| 6 | | LAURA VARTAIN HORN |
| 7 | | **O'MELVENY AND MYERS LLP**<br>SABRINA H. STRONG |
| 8 | | JONATHAN SCHNELLER |
| 9 | | **SHOOK, HARDY & BACON L.L.P**.<br>ALYCIA A. DEGEN |
| 10 | | MICHAEL B. SHORTNACY<br>PATRICK L. OOT, JR. |
| 11 | | CHRISTOPHER V. COTTON |
| 12 | | *Attorney for Defendants* |
| 13 | | UBER TECHNOLOGIES, INC.,<br>RASIER, LLC, and RASIER-CA, LLC |