1  [Submitting counsel below]

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6                       SAN FRANCISCO DIVISION

7

8   **IN RE: UBER TECHNOLOGIES, INC.,**          No. 3:23-md-03084-CRB
    **PASSENGER SEXUAL ASSAULT**
9   **LITIGATION**                               **PLAINTIFF'S OPPOSITION TO**
                                                 **DEFENDANTS' MOTIONS IN LIMINE**
10
    This Document Relates to:                    Judge: Honorable Charles R. Breyer
11                                               Date:  January 6, 2026
    *Jaylynn Dean v. Uber Techs., Inc.*,         Time:  10:00 A.M. PT
12  N.D. Cal. No. 23-cv-06708                    Ctrm.:  6-17th Floor
    D. Ariz. No. 25-cv-4276
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

LEGAL STANDARD ........................................................................................................ 1

ARGUMENT ................................................................................................................... 1

I.    SETTLEMENT NEGOTIATIONS ................................................................. 1

II.   REFERENCES IN VOIR DIRE TO SPECIFIC DAMAGES AMOUNTS ...................... 2

III.  INSURANCE COVERAGE, CARRIERS OR THIRD-PARTY ADMINISTRATORS 2

IV.   MEDIA REPORTS ...................................................................................... 3

V.    EVIDENCE REGARDING UBER'S MEDIA STRATEGY ............................................. 5

VI.   CONFIDENTIALITY PROVISIONS AND HARVEY WEINSTEIN .......................... 7

VII.  OTHER LAWSUITS, CLAIMS, OR JUDICIAL ACTIONS INVOLVING UBER OR ITS EMPLOYEES ...................................................................................... 8

VIII. UBER'S DE-ACTIVATION/RE-ACTIVATION DECISIONS CONCERNING OTHER DRIVERS ........................................................................................ 9

IX.   UBER'S HISTORICAL POLICIES (OR POLICIES THAT DID NOT APPLY TO THE DRIVER IN THE CASE BEING TRIED) ......................................................... 10

X.    ALLEGED COMPANY CULTURE ..................................................................... 11

XI.   GREYBALLING ........................................................................................ 12

XII.  CONDUCT OUTSIDE THE UNITED STATES ..................................................... 12

XIII. REPTILE ARGUMENTS ............................................................................... 14

XIV.  LOBBYING EFFORTS (INCLUDING AB 5 AND PROP 22) ................................... 15

XV.   ACTIONS BY UBER TO SUE, CROSS-CLAIM, DISMISS CROSSCLAIM, OR HELP ANY DRIVER OBTAIN COUNSEL ........................................................... 16

XVI.  SUPPOSED INADEQUACY OF BACKGROUND CHECKS .................................. 16

XVII. THIRD-PARTY REPORTS (INCLUDING GIULIANI AND HOLDER) .................. 17

XVIII. GOVERNMENT INVESTIGATIONS AND CONSENT DECREES ..................... 18

XIX.  ATTENDANCE AT TRIAL (SIZE OF DEFENSE TEAM OR ABSENCE OF SPECIFIC PEOPLE) ...................................................................................... 19

XX.   DISCOVERY & OTHER NON-TRIAL DISPUTES .................................................. 19

XXI.  ANY SUGGESTION THAT MR. TURAY SUBMITTED A FAKE ID TO UBER/CHECKR ........................................................................................... 21

XXII. PRIOR COMPLAINTS, INCIDENTS, ALLEGATIONS, POOR RATINGS, AND TEMPORARY RESTRICTIONS INVOLVING MR. TURAY ............................... 22

XXIII. MR. TURAY'S NATIONALITY OR IMMIGRATION STATUS ......................... 25

CONCLUSION ................................................................................................................. 25

i

# **TABLE OF AUTHORITIES**

## **CASES**

*Aidini v. Costco Wholesale Corp.*, 2017 WL 10775082 (D. Nev. Apr. 12, 2017)........................ 15

*Alley v. County of Pima*, 2024 WL 1908965 (D. Ariz. May 1, 2024) ................................................ 3

*Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2012 WL 3536797 (N.D. Cal. Aug. 13, 2013)...... 18

*Buonanoma v. Sierra Pac. Power Co.*, 2010 WL 3724254 (D. Nev. Sept. 16, 2010).................... 8

*Chaudhry v. Angell*, 2020 WL 1984180 (E.D. Cal. Apr. 27, 2020)................................................ 8

*Chavarria v. Mgmt. & Training Corp.*, 2018 WL 9538773 (S.D. Cal. Jan. 22, 2018)................... 2

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060 (9th Cir. 2017) .......................................... 1

*Classical Silk, Inc. v. Dolan Grp., Inc.*, 2016 WL 7638112 (C.D. Cal. Mar. 21, 2016)................ 3

*Ernst v. HB Aspen, Inc.*, 2008 WL 11338185 (C.D. Cal. Mar. 24, 2008) .................................... 24

*Gomez v. Am. Med. Sys. Inc.*, 2021 WL 12313068 (D. Ariz. June 17, 2021)................................. 8

*Griffiths v. Tucson, City of*, 2016 WL 7227553 (D. Ariz. Jan. 25, 2016)...................................... 24

*Hardesty v. Sacramento Metropolitan Air Quality Management District*, 2023 WL 4564748 (E.D. Cal. July 17, 2023)........................................................................................................................ 15

*Hendricks v. A-Z Women's Center*, 2007 WL 9734381 (D. Nev. May 22, 2007) ........................ 24

*In re Bard IVC Filters Prods. Liab. Litig.*, 2019 WL 5872148 (D. Ariz. Feb. 11, 2021)............... 6

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753 (5th Cir. 2018) ............................................................................................................................................ 12

*In re Korean Ramen Antitrust Litig..* 281 F. Supp. 3d 892 (N.D. Cal. 2017)................................. 4

*In re Levaquin Prods. Liab. Litig.*, 2010 WL 4676973 (D. Minn. Nov. 9, 2010) ........................ 13

*In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mex.*, 2012 WL 423862 (E.D. La. Feb. 8, 2012) ........................................................................................................................................ 6

*In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) .............................. 6

*In re Seroquel Prods. Liab. Litig.*, 601 F. Supp. 2d 1313 (M.D. Fla. 2009)................................ 13

*In re Tylenol (Acetaminophen) Marketing, Sales Practices & Prods. Liab. Litig.*, 181 F. Supp. 3d 278 (E.D. Pa. 2016)........................................................................................................................ 13

*In re Uber Rideshare Cases*, JCCP, Superior Court, Case No. CJC-21-005188 (Aug. 29, 2025) ............................................................................................................................................... passim

*In re Welding Fume Prods. Liab. Litig.*, 2010 WL 7699456 (N.D. Ohio. June 4, 2010) ............. 16

*Jackson v. Cnty. of San Bernardino*, 194 F. Supp. 3d 1004 (C.D. Cal. 2016)................................ 1

*Jenifer v. Fleming, Ingram & Floyd, P.C.*, 2008 WL 637636 (S.D. Ga. Mar. 7, 2008)................. 3

*Kelly v. Provident Life & Accident Ins. Co.*, 2012 WL 12845618 (S.D. Cal. Nov. 13, 2012) ...... 10

*Kinsel v. BMW of North America LLC*, 2023 WL 11899597 (D. Az. June 21, 2023)............... 1, 3

*Kirksey v. Schindler Elevator Corp.*, 2016 WL 7116223 (S.D. Ala. Dec. 6, 2016) ..................... 13

*Larez v. Holcomb*, 16 F.3d 1513 (9th Cir. 1994) ........................................................................... 3

*M.H. v. Cnty. of Alameda*, 2015 WL 894758 (N.D. Cal. Jan. 2, 2015) ........................................ 8

*McKnight v. Hinojosa*, 54 F. 4th 1069 (9th Cir. 2022) ................................................................. 8

*Monster Energy Co. v. Vital Pharms., Inc.*, 2022 WL 17218077 (C.D. Cal. Aug. 2, 2022) ......... 12

*Olson v. Walker*, 781 P.2d 1015, 1018 (Ariz. App. 1st Div. 1989) ............................................. 22

*Oracle America, Inc. v. Hewlett Packard Enterprise Co.*, 2022 WL 20403763 (N.D. Cal. May 3, 2022) ............................................................................................................................................ 19

*Point Ruston, LLC v. Pac. Nw. Reg'l Council of United Bhd. of Carpenters & Joiners of Am.*, 2010 WL 3766503 (W.D. Wash. Sept. 22, 2010) ........................................................................ 24

*Sanchez v. City of Tucson*, 2016 WL 8669901 (D. Ariz. Sept. 30, 2016)............................... 22, 23

*State, Dept. of Admin. v. Schallock*, 941 P.2d 1275 (Ariz. 1997) ............................................... 22

ii

*Sugar Ass'n, Inc. v. McNeil-PPC, Inc*., 2008 WL 4755611 (C.D. Cal. Jan. 7, 2008) .................. 13
*U.S. v. Lewis*, 493 F. Supp. 3d 858 (C.D. Cal. 2020)......................................................... 1
*U.S. v. Lopez,* 991 F.2d 804, 1993 WL 118149 (9th Cir. Apr. 15, 1993)..................................... 24
*U.S. v. Pacific Gas & Electric Co*., 178 F. Supp. 3d 927 (N.D. Cal. 2016) ........................... 16, 18
*United Food Group, LLC. V. Cargill, Inc*., 2014 WL 12925563 (C.D. Cal. Nov. 14, 2014)........ 20
*United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) ....................................................... 1
*Young v. Wolfe*, 2017 WL 985632 (C.D. Cal. Mar. 14, 2017)......................................................... 5

### RULES

Fed. R. Evid. 402 .......................................................................................................... 1
Fed. R. Evid. 403 ................................................................................. 1, 6, 7, 12, 17, 18, 22
Fed. R. Evid. 404(b).............................................................................................. 23, 24

1

**LEGAL STANDARD**

2          A ruling on a motion in limine "is essentially a preliminary opinion that falls entirely

3   within the discretion of the district court." *City of Pomona v. SQM N. Am. Corp*., 866 F.3d 1060,

4   1070 (9th Cir. 2017) (citations and internal quotation marks omitted). "[M]otions in limine must

5   identify the evidence at issue and state with specificity why such evidence is inadmissible." *U.S.*

6   *v. Lewis*, 493 F. Supp. 3d 858, 861 (C.D. Cal. 2020) (cleaned up); *Jackson v. Cnty. of San*

7   *Bernardino*, 194 F. Supp. 3d 1004, 1008 (C.D. Cal. 2016) ("Motions in limine that seek exclusion

8   of broad and unspecific categories of evidence, however, are generally disfavored."); *see also*

9   *Kinsel v. BMW of North America LLC*, 2023 WL 11899597, at *1 (D. Ariz. June 21, 2023)

10  (same). "The 'failure to specify the evidence' that a motion in limine 'seek[s] to exclude

11  constitutes a sufficient basis upon which to deny th[e] motion.'" *Lewis*, 493 F. Supp. 3d at 861

12  (alterations in original) (citation omitted).

13          Relevant evidence is generally admissible. Fed. R. Evid. 402. Relevant evidence may be

14  excluded if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R.

15  Evid. 403. "Relevant evidence is inherently prejudicial; but it only unfair prejudice, substantially

16  outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United*

17  *States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (citation omitted). The rule's "major

18  function is limited to excluding matter of scant or cumulative probative force, dragged in by the

19  heels for the sake of its prejudicial effect." *Id.*

20

**ARGUMENT**

21  **I.      SETTLEMENT NEGOTIATIONS**

22          Plaintiff does not oppose exclusion of settlement negotiations to the extent the limitation

23  applies equally to all parties and does not restrict admissible evidence offered for purposes other

24  than proving liability or damages, including bias, notice, or credibility if Defendants open the

25  door.

26

27

28

1

## II.    REFERENCES IN VOIR DIRE TO SPECIFIC DAMAGES AMOUNTS

2       Plaintiff will not reference a specific dollar amount during voir dire so long as Defendants

3  likewise refrain. But Plaintiff must be permitted to ask prospective jurors whether they can fairly

4  consider awarding substantial damages, up to a certain range, if the evidence supports it. Courts

5  routinely allow general questioning about jurors' comfort with significant damages to expose bias

6  without anchoring jurors to a number. *See, e.g., Chavarria v. Mgmt. & Training Corp.*, 2018 WL

7  9538773, at *2–3 (S.D. Cal. Jan. 22, 2018) ("Plaintiff may, if he chooses, make limited and

8  appropriate references to potential damages in order to probe any biases potential jurors may have

9  related to civil damages awards."). The Uber JCCP Court denied Uber's similar motion to the

10  extent nothing prevents either party from inquiring about limits a jury would put on damages. *See*

11  *In re Uber Rideshare Cases*, JCCP, Superior Court, Case No. CJC-21-005188 (Aug. 29, 2025)

12  ("JCCP Order"), at 49-50, Ex. 1.[1] This Court should do the same—Uber's motion should be

13  denied to the extent it seeks to bar this permissible inquiry.

## III.    INSURANCE COVERAGE, CARRIERS OR THIRD-PARTY ADMINISTRATORS

14

15       Uber's request for a categorical exclusion of any insurance information should be denied.

16  The record shows that Uber responded to sexual assault primarily from a cost-benefit perspective,

17  addressing safety issues only to the extent that insurance costs savings outweighed downward

18  pressure on growth. Plaintiff must be permitted to show that, to the extent Uber addressed safety,

19

20

21

22

23                                                For example, Uber documents show

24

25

26

27

---

28  [1] All exhibits referenced herein are attached to the December 30, 2025 Declaration of Steven D. Cohn, Esq.

1

2      .[2]

3           Documents and testimony showing insurance considerations motivating Uber's safety

4    decision-making, risk modeling, and tolerance for sexual assault are relevant and not unfairly

5    prejudicial. Evidence showing how Uber evaluated, priced, and managed sexual assault risk—

6    including internal analyses of sexual misconduct claims—is not offered to show Uber's ability to

7    pay, but to establish notice, foreseeability, and motive. When insurance information helps a jury

8    understand a defendant's decision-making or risk assessment, courts have found it admissible.

9    *See, e.g., Jenifer v. Fleming, Ingram & Floyd, P.C.*, 2008 WL 637636, at *1-2 (S.D. Ga. Mar. 7,

10   2008) (evidence of scope of malpractice insurance relevant to explain why law firm made certain

11   decisions in litigating plaintiff's case). The only case Uber cites—*Larez v. Holcomb*, 16 F.3d

12   1513 (9th Cir. 1994)—held only that "evidence of insurance … is not admissible on *the issue of*

13   *damages.*" *Id.* at 1518 (emphasis added). Here, Plaintiff does not seek to introduce insurance-

14   related evidence as support for damages. A blanket exclusion would improperly sanitize Uber's

15   internal decision-making. At most, a limiting instruction is appropriate.

16   **IV.    MEDIA REPORTS**

17          Uber's motion seeks an impermissibly broad, categorical exclusion of all media reports

18   without identifying all specific evidence or articulating how particular articles would be used

19   improperly. That failure alone warrants denial. *See, e.g., Kinsel*, 2023 WL 11899597, at *9;

20   *Classical Silk, Inc. v. Dolan Grp., Inc.*, 2016 WL 7638112, at *6 (C.D. Cal. Mar. 21, 2016)

21   (motions in limine seeking "to exclude broad categories of evidence are usually improper as the

22   court is almost always better situated to rule on evidentiary issues in their factual context during

23   trial.") (internal citation omitted). Moreover, Uber's argument rests on a mistaken premise that

24   media coverage is offered solely for the truth of the underlying allegations. Here, media reports

25   are independently relevant to notice, knowledge, foreseeability, motive, and Uber's state of mind,

26   all central issues in Plaintiff's negligence and punitive damages claims. *See, e.g., Alley v. County*

27   _____

     [2] *See*

28

1   *of Pima*, 2024 WL 1908965, at \*17 (D. Ariz. May 1, 2024) (finding 60 Minutes segment and

2   other media reports may be admissible when offered for non-hearsay reasons).

3         Media reports are admissible to show Uber's response to public scrutiny and its pattern of

4   minimizing, delaying, or reframing sexual violence disclosures to protect its brand. *See, e.g., In re*

5   *Korean Ramen Antitrust Litig.*. 281 F. Supp. 3d 892, 936 (N.D. Cal. 2017) (finding plaintiffs can

6   introduce newspaper articles to show defendants' steps to conceal the alleged conspiracy). Uber's

7   internal communications demonstrate that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This evidence

10  goes to what Uber knew and when and what it did with that information—▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮ *See* Drumwright Rpt. at ¶¶ 382-412 (ECF No. 4352-1).

12  They also include statements from Uber in response—▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g.,* ▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮, Ex. 8.

15        The evidence also goes to rebut Uber's defenses. For example, at trial Uber will, as it did

16  in the JCCP trial, tout its "Safety Reports" as voluntary and "industry-leading." In reality, media

17  reports and resulting public pressure are the reasons Uber put out the Safety Reports, and Plaintiff

18  is entitled to respond to Uber's defense with its true motive. Finally, media reports diminished

19  trust in Uber, causing the company to double down on marketing to reassure passengers,

20  especially women, the service was safe.

21        Turning to the only two specific media reports Uber raises, the *USA Today* investigation

22  concerning Uber's use of Crawford is especially probative. Uber's own witnesses testified that

23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮ Uber's Head of Global Safety Communications Andrew

27  Hasbun acknowledged that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1      Shortly thereafter, Uber launched the RAINN hotline and fund. ███████

2 ████████████████████████████ This sequence shows Uber's motive for launching this

3 hotline and fund, like its other purported victim-centered measures, were not altruistic, but done

4 under only after media exposure and public pressure that risked their business.

5      The 2025 *New York Times* article is also relevant: Hannah Nilles, acting Head of Global

6 Safety, identified ██████████████████████████████████████

7 █████████████████████████████████████████

8 ████████████████████████████████████

9 ███████████████████████ The jury is entitled to understand that Uber developed

10 this tool and not only failed to use it appropriately but concealed its very existence from

11 passengers like Jaylynn Dean and the public until prompted by questions from a NYT reporter.

12 That article also prompted blog postings by Uber that reference the article and that Plaintiff's

13 expert, Lacey Keller, may address in her testimony. The story also shows Uber's influence over

14 its non-profit partners: right around the time of the NYT story, RAINN published a story on its

15 website: "Tips for Safer Ridesharing."[3]

16      The JCCP Court held that Plaintiffs could not introduce media reports for the truth of the

17 matter asserted but denied Uber's motion if such reports were offered for non-hearsay purposes,

18 deferring such rulings until trial. *See* JCCP Order at 52. At the JCCP trial, Uber relied on non-

19 profits like RAINN "vouching" for Ube's safety efforts; the New York Times story shows Uber's

20 ability to influence those organizations when helpful to support the company's reputation. Uber's

21 motion should be denied.[4]

22 **V.     EVIDENCE REGARDING UBER'S MEDIA STRATEGY**

23      Uber seeks to exclude evidence of "Catch and Kill" media stories and "internal chats"

24 about media strategy. Both are relevant and not unduly prejudicial.

25

26 [3] https://rainn.org/strategies-to-reduce-risk-increase-safety/tips-for-safer-ridesharing/

27 [4] Uber's case support is readily distinguishable. *See, e.g., Young v. Wolfe*, 2017 WL 985632, at
*3-4 (C.D. Cal. Mar. 14, 2017) (fining newspapers articles on inmate assaults at county jail

28 hearsay because they were offered for the truth of the matter asserted, but not opining on if party
statements in reports are hearsay or if facts surrounding articles are admissible).



1    Uber's senior leadership viewed

2

3

4    In its Safety

5    Communications Plans, Uber acknowledged that

6

7

8

9

10

11

12

13    This is direct

14    evidence of Uber's knowledge of ongoing risk and its decision to manage perception rather than

15    reduce harm.

16         Uber's Slack communications among safety and communications personnel further

17    demonstrate how the company responded when sexual assault allegations became public. These

18    messages—created contemporaneously by employees acting within the scope of their duties—

19    include discussions of

20

21

22    These statements are admissible party admissions and business records. They show Uber's state

23    of mind, priorities, and course of conduct in responding to known dangers. *See In re Bard IVC*

24    *Filters Prods. Liab. Litig.,* 2019 WL 5872148, at *32 (D. Ariz. Feb. 11, 2021) (plaintiffs

25    permitted to introduce evidence of defendant's strategic efforts to control or suppress negative

26    media information, finding such evidence relevant and not excludable under Rule 403.)[5]

27    _____
     [5] Cases cited by Uber, including *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050, at *n.16 (N.D.
28    Cal. June 19, 2009) are inapposite. The *Oracle* Court did not find that Oracle employees'

This evidence is also highly probative of causation. Uber's deliberate efforts to suppress information about sexual violence deprived passengers of material facts necessary to assess risk. A reasonable jury may conclude that Uber's concealment strategy, rather than transparency or meaningful safety intervention, was a substantial factor in Plaintiff's harm—as it contributed materially to the understanding that Uber is a "safe" option for women in her position. The same evidence supports punitive damages by demonstrating conscious disregard: Uber knew of the scope of sexual violence on its platform, understood the risks to passengers, and nevertheless chose to protect its brand image while continuing to solicit riders.

Rule 403 does not justify exclusion. The evidence is not unfairly prejudicial; it is damaging because it reflects Uber's own decisions and motivations. Nor will it result in mini-trials over media accuracy. Plaintiff will rely on Uber's public and internal reactions to media inquiries, not litigate the truth of every reported incident. ██████████████ ████████████████████████████ Any residual concern can be addressed through limiting instructions. But excluding this evidence would improperly prevent the jury from understanding how Uber evaluated, responded to, and concealed the known risk of sexual violence on its platform.[6]

## VI.    CONFIDENTIALITY PROVISIONS AND HARVEY WEINSTEIN

Uber's confidentiality provisions in settlement agreements will be relevant if Uber opens the door by claiming that there were relatively few reports of sexual misconduct before 2017 or if it generally claims to be trauma-informed and survivor-centric (the use of abusive confidentiality provisions show it was not). The JCCP Court denied Uber's motion as to such provisions. *See*

"comments" on the draft of a news article was hearsay, as Uber states. *Id*. Rather, the court found that the employees' "repetition of the out of court statements in the news reports" was inadmissible hearsay to the "extent it is offered to prove what an article stated." *Id*.; *see also In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mex*., 2012 WL 423862, at *2 (E.D. La. Feb. 8, 2012) (finding "message from an iPhone which reads '[t]hanks for the shitty cement job, Trent' was inadmissible because declarant testified "he was kidding" and it was not sent within the course and scope of employment).

[6] Kaya Whaling is not on Plaintiff's witness list. Plaintiff does not intend to affirmatively introduce her testimony cited in Uber's motion, subject to Uber opening the door.

JCCP Order at 53-54. This Court should follow suit. References to the broader "Me Too"

movement may be appropriate in voir dire to address juror bias regarding sexual assault reporting.

Plaintiff does not intend to reference Harvey Weinstein. But her expert Dr. Valliere, who

has spent her career treating sexual offenders, will discuss how predators operate to build trust

and exploit their victims and provide illustrative examples of predators of being charming,

building trust, and only then crossing boundaries and becoming more emboldened.

## VII.    OTHER LAWSUITS, CLAIMS, OR JUDICIAL ACTIONS INVOLVING UBER OR ITS EMPLOYEES

Uber seeks a sweeping exclusion of all other lawsuits, claims, or judicial actions involving

the company or its employees, regardless of subject matter or purpose. Plaintiff does not intend to

introduce unrelated litigation such as Uber's IPO or trade secret disputes. Plaintiff may, however,

introduce evidence of lawsuits, enforcement actions, and judicial findings that directly concern

Uber's representations about safety and its handling of sexual assault risk, including the

*McKnight* Safe Rides Fee litigation and related consumer fraud actions by public prosecutors. *See*

*McKnight v. Hinojosa*, 54 F. 4th 1069 (9th Cir. 2022); █████████████████

These proceedings are relevant because they address the same core issue presented here: Uber's

public portrayal of safety versus its internal knowledge of risk. ████████████████

█████████████████████████████████████

██████████ *Id.*

Such evidence is not offered to prove the truth of allegations in other cases or to invite

liability based on unrelated conduct. Rather, it may be offered to show Uber's state of mind and

notice. *See*, *e.g.*, *Chaudhry v. Angell*, 2020 WL 1984180, at *6 (E.D. Cal. Apr. 27, 2020) (finding

evidence that other lawsuits permissible when relevant and not unduly prejudicial). Evidence that

Uber was warned—through litigation, settlements, or judicial scrutiny—that its safety claims

were misleading bears directly on foreseeability and breach. It also rebuts any contention that

Uber was unaware of the dangers posed to riders or that its safety messaging was made in good

faith. And it is probative of intent and conscious disregard. *See Gomez v. Am. Med. Sys. Inc.*,

1  2021 WL 12313068, at *7 (D. Ariz. June 17, 2021) (finding evidence and argument related to

2  other lawsuits may be admissible to show notice of safety issues).[7]

3        More granularly, Uber's documents repeatedly reference ████████████████

4  ████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ████████████████████████  The jury is entitled to compare those restrictions against how Uber

9  presents itself and those features to the public, including in representations and communications

10  made to Jaylynn Dean.

11  **VIII.    UBER'S DE-ACTIVATION/RE-ACTIVATION DECISIONS CONCERNING
       OTHER DRIVERS**

12        Uber seeks to exclude evidence concerning its decisions to deactivate, temporarily

13  suspend, or allow continued access to drivers accused of sexual misconduct other than the driver

14  who assaulted Plaintiff. Plaintiff does not seek to introduce this evidence to show propensity or to

15  relitigate the facts of other assaults. Rather, Plaintiff's expert Dr. Valliere explains how Uber's

16  lax deactivation policies encourage sexual offenders. *See* Valliere Rpt. at ¶¶ 3, 6-47 (ECF No.

17  4340). Her testimony helps the jury understand how Uber's safety efforts fell short. Uber's

18  deactivation policies also show how Uber prioritize growth over safety—████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  ████████████████████████████

22        More generally, evidence that Uber received prior reports of sexual assault or misconduct

23  by drivers, and how it responded to those reports, bears on whether the risk of future assaults was

24  foreseeable. A jury cannot evaluate whether Uber acted reasonably without understanding what

25  _____

26  [7] Uber's cited cases easily distinguishable. *See, e.g., Buonanoma v. Sierra Pac. Power Co.*, 2010
   WL 3724254, at *5 (D. Nev. Sept. 16, 2010) (finding employment discrimination complaints and

27  lawsuits by other employees "could unfairly bias the jury against [employer] for discriminatory
   acts that did not take place in this case []."); *M.H. v. Cnty. of Alameda*, 2015 WL 894758, at *13

28  (N.D. Cal. Jan. 2, 2015) (precluding cross examination of expert on the outcomes of his prior
   cases).

1    Uber knew about the prevalence of sexual violence on its platform and whether it treated such

2    reports as isolated anomalies or as indicators of a systemic danger. *See* ███████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    ███████████████████ Ex. 18.[8]

8        This evidence is also admissible to establish corporate knowledge, routine practice, and

9    conscious disregard. Where evidence shows that ██████████████████████

10   ██████████████████████████████████████████, a reasonable

11   jury may infer that Uber knowingly accepted the risk of future assaults. *Id*. Such evidence is

12   particularly relevant to punitive damages, as it demonstrates whether Uber acted with willful

13   indifference to passenger safety.

**IX.   UBER'S HISTORICAL POLICIES (OR POLICIES THAT DID NOT APPLY TO THE DRIVER IN THE CASE BEING TRIED)**

15       Uber seeks to exclude evidence of its historical safety policies on the ground that certain

16   policies predated Plaintiff's assault or did not apply to Mr. Turay. Uber's motion perplexingly

17   ignores pertinent facts.[9] Uber references a 2018 policy as inapplicable, but Mr. Turay ██████

18   ████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ███████████████████████ How those policies shaped Turay's behavior and

21   expectations about conduct that would be condoned by Uber is squarely relevant to this case. That

22

23

———————————————————

24   [8] *See also* ███████████████████████████████████████

25   ███████████████████████████████

26   [9] Its case support is also off topic. *See, e.g., Kelly v. Provident Life & Accident Ins. Co*., 2012 WL

27   12845618, at *2 (S.D. Cal. Nov. 13, 2012) (prohibiting expert from opinion on insurance policies not at issue because examples "of how other policy holders were treated, or how other claims

28   handlers were disciplined or rewarded" were not relevant).

the policy had changed by 2023 does not obviate its relevance.[10] As Plaintiff's expert Dr. Valliere will explain, loose consequence structures enable and embolden predators like Mr. Turay. *See* Valliere Rpt. at 1-4, 8, 31-34 (ECF No. 4340). And although Uber has formally eliminated the term ███████████████, it has adopted a substantially similar ███████████████ Regardless of what terms are used, Uber has never had sufficiently clear consequences, which creates an environment that allows predators to access and assault passengers such as Jaylynn Dean. *Id*. at 8. The JCCP Court found such historical policies pertinent to punitive damages. *See* JCCP Order at 55-56. Here, these policies are not only relevant to punitive damages; they are also directly relevant to Plaintiff's underlying claims.[11]

## X.    ALLEGED COMPANY CULTURE

Plaintiff does not intend to introduce evidence, reference, or argument relating to the litigation surrounding "X to the X," the "Super Pumped" book or series (though reference may be made to "super pumped" as a corporate value), or Susan Fowler unless Defendants open the door to such evidence or argument.

As to "bro" culture, Plaintiff lacks sufficient detail to understand what exactly Uber is referring to, so that example should not be excluded. In general, evidence relating to Uber's culture is admissible where it bears directly on how the company understood, prioritized, and responded to sexual violence risks. To the extent Uber's internal norms minimized sexual misconduct, discouraged female participation, or deprioritized safety concerns raised by employees, that evidence is relevant to notice, foreseeability, and breach. *See, e.g.,* ███████

████████████████████████████████████

████████████████████████████████████

████████████████████

---

[10] Uber's executives still refer to ████████████████████████

████████████████████████████

[11] Uber claims that this ruling would require bifurcation of the compensatory and punitive liability stages. Uber does not explain its reasoning but there is no basis for bifurcation.

1    Media coverage of notorious manifestations of Uber's culture involving the objectification

2 and mistreatment of women is also relevant to show how drivers, including Plaintiff's driver,

3 would understand the type of conduct that was condoned by Uber, a topic Dr. Valliere will also

4 explain to the jury. Uber may claim that the most prominent examples of its problematic culture

5 date back to 2017 and earlier.  But, as noted above, Plaintiff's driver began driving for Uber in

6 2016 and attempted to do so two years before that. Further, to the extent these widely publicized

7 incidents took place outside the U.S., that is no reason to exclude them. *See infra.*

8    This evidence is also probative of punitive damages. Corporate culture informs whether

9 harmful conduct resulted from isolated error or from institutional attitudes and incentives that

10 tolerated or normalized risk. Where Uber's culture influenced decisions about safety investment,

11 disclosure, or enforcement, the jury may consider that context in evaluating intent, conscious

12 disregard, and reprehensibility. And Rule 403 does not warrant exclusion, as the evidence is not

13 offered to inflame the jury but to explain how Uber's internal environment shaped the decisions

14 that placed passengers at risk.[12]

## XI.    GREYBALLING

16    Absent some evidence or argument that opens the door to it, Plaintiff does not intend to

17 introduce evidence, reference, and argument relating to "greyballing" as Uber defines that term in

18 its motion.

## XII.    CONDUCT OUTSIDE THE UNITED STATES

20    Uber seeks to categorically exclude evidence of incidents, regulatory actions, and safety

21 initiatives occurring outside the United States. The motion should be denied. Most obviously,

22 Uber's foreign safety initiatives demonstrate feasibility and knowledge. Uber implemented

---

[12] Defendants cite *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 784-87 (5th Cir. 2018) claiming that the court there found that an email with racial epithets was improper character evidence. Not so. The *DePuy* Court actually found that the email in question was "impermissible hearsay" and not valid impeachment evidence because there was no allegation that "racism infected DePuy's workplace culture." *Id*. Likewise, Defendants' reliance on *Monster Energy Co. v. Vital Pharms., Inc*., 2022 WL 17218077, at *30 (C.D. Cal. Aug. 2, 2022) is also unavailing (excluding specific example of "terminated employees or threatened termination as retaliation" because proof was absent but limiting opinion to that example because the "Court cannot rule on such an overbroad category [entitled] [workplace] evidence").

1

2

3

4

5    This evidence rebuts any claim that such measures were infeasible or speculative. That Uber

6    eventually implemented women-to-women matching domestically in 2025 underscores feasibility

7    and confirms evidence that Uber delayed adoption of this feature for economic reasons rather

8    than safety limitations. *Id*.[13] The fact that someone else may have used Jaylynn Dean's account to

9    order her ride is irrelevant; had W2W been offered, she would have had it set automatically in her

10   app settings—as she did in her Lyft account. *See* 6/27/25 Dep. of J. Dean at 186:20-187:4, 190:8-

11   14,  271:4-9, Ex. 32.

12          Similarly, Uber piloted

13

14

15

16

17

18

19

20

21          Excluding all foreign conduct would improperly deprive the jury of context necessary to

22   evaluate foreseeability, causation, and punitive damages. *See, e.g.*, *In In re Tylenol*

23   *(Acetaminophen) Marketing, Sales Practices & Prods. Liab. Litig.*, 181 F. Supp. 3d 278, 307-08

24   (E.D. Pa. 2016) (holding evidence of foreign drug labeling and regulatory actions admissible to

25   show defendants' notice and knowledge of safety risks); *In re Levaquin Prods. Liab. Litig.*, 2010

26   WL 4676973, at *5 (D. Minn. Nov. 9, 2010) (finding defendant's preliminary actions in Europe

27

28   [13] *See also* https://www.uber.com/newsroom/women-preferences

1  admissible as "the evidence not only speaks to defendants' notice but to motive, is relevant, and is

2  not hearsay."); *Kirksey v. Schindler Elevator Corp.*, 2016 WL 7116223, at *4-6 (S.D. Ala. Dec. 6,

3  2016) (holding evidence of foreign designs and the timeframe of their appearance was admissible

4  to show that alternative, feasible safety features were available and existed at the time of the

5  subject incident).[14]

6      The 2014 New Delhi rape is probative as well. That assault, and Uber's response to it,

7  received global attention and was known to senior executives. ████████████████████

8  ████████ Uber leadership recognized ████████████████████████

9  ███████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 ████████████████████.[15] This evidence demonstrates the company's state of

12 mind when it addressed other incidents of sexual misconduct in its operations. It also

13 demonstrated to people interacting with the Uber ecosystem, including drivers, that Uber refused

14 to accept responsibility for sexual assault and instead took efforts to minimize these incidents.

15 Indeed, it was during this period that Turay sought to drive for Uber. The JCCP Court denied

16 Uber's motion regarding this evidence. *See* JCCP Order at 57. This Court should do the same.

17 **XIII.    REPTILE ARGUMENTS**

18     Without specifying exactly what arguments they seek to preclude, Defendants

19 nevertheless make a generic argument that any golden rule or reptile theory arguments should be

20 precluded at trial. While Plaintiff has not yet determined what arguments she will make to the

21 jury, Defendants' blanket assertion that the Court should rule pre-trial that no "reptile" or "golden

22 rule" arguments should be made should be rejected. Plaintiff's counsel is fully aware of the

---

23 [14] In contrast, Uber's cited cases are distinguishable. *See, e.g., Sugar Ass'n, Inc. v. McNeil-PPC,*

24 *Inc.*, 2008 WL 4755611, at *2 (C.D. Cal. Jan. 7, 2008) (excluding evidence of foreign marketing and sale evidence because not relevant to Lanham Act violations); *In re Seroquel Prods. Liab.*

25 *Litig.*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) (excluding evidence of foreign regulatory actions and foreign label changes where foreign regulators took action related to drug label

26 changes).

27 [15] *See also* ████████████████████████████████████████

28 ███████████████████████████████████

1    governing standards and will ensure that any arguments presented at trial conform to Ninth

2    Circuit law. For example, arguments concerning deterrence and reprehensibility are expressly

3    permitted where punitive damages are at issue. While the Ninth Circuit has not explicitly

4    addressed whether golden rule arguments should be categorically prohibited, many courts in this

5    circuit have denied motions in limine seeking to categorically exclude this type of evidence

6    where, as here, the motions do not identify the specific evidence they seek to exclude. *See, e.g.,*

7    *Hardesty v. Sacramento Metropolitan Air Quality Management District*, 2023 WL 4564748, at *4

8    (E.D. Cal. July 17, 2023) (citing *Aidini v. Costco Wholesale Corp.*, 2017 WL 10775082, at *1 (D.

9    Nev. Apr. 12, 2017) ("Federal courts have hissed at motions based on this theory that seek a

10   broad prospective order untethered to any specific statements the other side will make."). This

11   Court should do the same and address any arguments if or when they arise; preemptive exclusion

12   of an undefined argument is unwarranted.

13   **XIV.    LOBBYING EFFORTS (INCLUDING AB 5 AND PROP 22)**

14           Uber seeks to exclude evidence of its lobbying efforts, including those related to

15   Assembly Bill 5 and Proposition 22, by invoking the *Noerr-Pennington* doctrine. Uber's

16   argument overreaches. Plaintiff does not seek to impose liability for Uber's petitioning activity or

17   to argue that lobbying itself constitutes negligence. Rather, evidence of Uber's lobbying may be

18   offered to rebut Uber's anticipated argument that regulations either justify its approach to certain

19   safety issues or limit or constrain its ability to implement more robust safety policies At

20   minimum, lobbying evidence is relevant if Uber opens the door in this manner: Where Uber

21   invokes a regulation or law as a justification for its actions, Plaintiff should not be precluded from

22   introducing evidence that that regulation is in place *because* of Uber's intensive lobbying.

23           Uber's lobbying efforts are directly intertwined with safety. Internal documents and

24   testimony show that ███████████████████████████████████████████

25   ████████████████████████████████████████████████ [16] These efforts

26   ──────────────────────

27   [16] *See* ████████████████████████████████████████

28   ████████████████████████████████████

1   were not abstract policy debates; they reflected ████████████████████

2   ████████████████████████████████████. *Id.* Evidence

3   that Uber knowingly lobbied against measures it understood could reduce sexual assault risk is

4   probative of foreseeability and breach, and of whether Uber prioritized business interests over

5   rider safety.

6        *Noerr-Pennington* does not bar admission of this evidence, as Plaintiff does not seek to

7   impose liability for lobbying activity. *See, e.g.*, *U.S. v. Pacific Gas & Electric Co.*, 178 F. Supp.

8   3d 927, 960 (N.D. Cal. 2016) (holding evidence of defendant's lobbying activities and

9   participation in drafting standards admissible); *In re Welding Fume Prods. Liab. Litig.*, 2010 WL

10  7699456, at *93 (N.D. Ohio. June 4, 2010) (noting defendants could not use the First Amendment

11  as a shield to keep out relevant evidence and finding lobbying documents showing defendants

12  urged regulatory bodies not to lower exposure contain admissions against interest and are relevant

13  to show defendants' knowledge of health effects).

14  **XV.    ACTIONS BY UBER TO SUE, CROSS-CLAIM, DISMISS CROSSCLAIM, OR HELP ANY DRIVER OBTAIN COUNSEL**

15       Plaintiff will not affirmatively introduce evidence concerning whether Uber sued, cross-

16  claimed against, dismissed claims involving, or assisted drivers in obtaining counsel. For the

17  same reasons, Uber should not be able to introduce evidence or argument concerning whether

18  Plaintiff sued the driver. The Court should not, however, allow a ruling on this motion to be used

19  to exclude any other evidence of how Uber responds to reports of sexual misconduct.

20  **XVI.    SUPPOSED INADEQUACY OF BACKGROUND CHECKS**

21       Uber seeks to exclude evidence and argument concerning its driver background checks,

22  but that request mischaracterizes both Plaintiff's claims and the purpose for which the evidence is

23  offered. As Plaintiff explained in her summary judgment opposition, this case is not principally

24  about inadequate criminal background checks. But background checks are relevant in at least two

25  ways.

26  _____

27  ████████████████████████████████

28  ████████████████████████████████

*First*, Uber will rely on Mr. Turay's lack of criminal record as a defense, and Plaintiff will rebut this by explaining how Uber knew that ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████

*Second*, how Uber marketed its background checks is relevant. While Arizona required Uber to conduct criminal screening, it did not authorize Uber to recklessly promote compliance as proof of safety. Uber knew that "driver screening plays a critical role in helping riders feel safe," and deliberately sought to "amplify awareness of its driver screening efforts, especially among women." Drumwright Rpt. at ¶ 213 (ECF No. 4352-1). Uber's advertisements emphasized that it conducted "annual background screenings on every driver so that you can ride with peace of mind." *Id.* ¶ 225. These representations are probative of misrepresentation, reliance, and failure to warn.

Internally, Uber was candid about the limits of background checks. Company documents acknowledged that " ███████████████████████████████████ *Id.* ¶ 205. Despite this knowledge, Uber continued to market background checks as a central safety feature while declining to implement measures more closely tied to preventing sexual assault—and the become even more important in light of the minimal information Uber has about its drivers' past. *Id.* ¶¶ 202-226. Evidence of this disconnect between internal knowledge and external messaging goes directly to foreseeability, breach, causation, and punitive damages.

And Rule 403 does not warrant exclusion of this evidence. The evidence will be narrowly presented to explain what Uber knew about the limitations of its background checks, how it chose to portray them to riders, and how those choices fit within Uber's broader safety calculus. Excluding this evidence would improperly prevent the jury from evaluating whether Uber acted reasonably and honestly in addressing known risks of sexual assault.

## XVII. THIRD-PARTY REPORTS (INCLUDING GIULIANI AND HOLDER)

Uber seeks to exclude all third-party reports prepared on its behalf, including the Giuliani and Holder reports, without distinguishing between the reports themselves and evidence

concerning the circumstances under which they were commissioned, edited, and used. Uber's motion should be denied to the extent it does not specify the evidence it seeks to exclude. *See supra*. Plaintiff does not intend to introduce the Holder Report. Nor does Plaintiff seek to admit the Giuliani Report for the truth of its conclusions. Rather, Plaintiff may introduce evidence regarding Uber's decision to commission the Giuliani Report, its substantial involvement in drafting and revising it, and the manner in which Uber selectively relied on the report to bolster public safety claims while disregarding internal criticisms.

This evidence is not hearsay and is not unduly prejudicial. It is offered to show Uber's state of mind, knowledge, and course of conduct—not to prove that Giuliani Partners' opinions were correct. *See Pacific Gas & Electric Co.*, 178 F. Supp. 3d at 947 (finding investigative report admissible to show defendant's state of mind). It also rebuts Uber's anticipated claims that it relied in good faith on independent experts. Rule 403 does not justify exclusion, as the probative value of showing how Uber curated and deployed third-party validation substantially outweighs any risk of confusion. Excluding this evidence would improperly prevent the jury from understanding how Uber used the appearance of independent review to reassure the public while internally discounting known safety concerns.

## XVIII.    GOVERNMENT INVESTIGATIONS AND CONSENT DECREES

Plaintiff does not intend to introduce evidence, reference, and argument relating to the government investigations and consent decrees Uber references in its motion. This must, however, go both ways: Uber's regulatory expert Mr. Okpaku relies ███████████ ████████████████████████████████████████████████. What is good for the goose is good for the gander: if Plaintiff may not introduce evidence of CPUS investigations, then Mr. Okpaku may not do so either to support the reasonableness of Uber's conduct in a different state altogether. And if Mr. Okpaku opens the door, then all of this evidence should come in.[17]

---

[17] The CPUC investigations would be more relevant in a California trial.

1

2

### XIX.    ATTENDANCE AT TRIAL (SIZE OF DEFENSE TEAM OR ABSENCE OF SPECIFIC PEOPLE)

3

4

Plaintiff does not oppose exclusion of commentary regarding the size of trial teams or the

5

routine presence or absence of parties during trial, so long as the limitation applies equally to all

6

parties. But if Uber elects to not make available certain corporate witnesses to testify live at trial,

7

Plaintiff may comment on that absence during trial and closing. In evaluating the evidence, the

8

jury may properly consider Uber's failure to explain or deny matters within its control. *See, e.g.,*

9

*Apple, Inc. v. Samsung Electronics Co., Ltd*., 2012 WL 3536797, at * 1 (N.D. Cal. Aug. 13, 2013)

10

(party may "properly argue to the jury the possibility of drawing [an adverse] inference from the

11

absence of a witness" if witness "was peculiarly within the adversary's power to produce.")

12

(citation omitted.) The JCCP Court held that Plaintiffs may comment on Uber's failure to call a

specific witness at trial. *See* JCCP Order at 60-61. This Court should do likewise.

### XX.    DISCOVERY & OTHER NON-TRIAL DISPUTES

13

14

In general, "discovery disputes" (like any disputes over and subsequent amendments to

15

Plaintiff's Fact Sheet) are irrelevant and inadmissible. But Uber's motion is overbroad. Plaintiff

16

should be permitted to present evidence that she requested certain information from Uber and

17

what, if any, information was provided in response. This is relevant and admissible to explain, for

18

example, why Plaintiff's experts did not consider certain information (e.g., because it was

19

requested from Uber but not produced) and why Plaintiff's experts were not able to perform

20

certain analyses (e.g., because doing so would require information or data Uber objected to

21

providing). *See*, *e.g., Oracle America, Inc. v. Hewlett Packard Enterprise Co*., 2022 WL

22

20403763, at *2 (N.D. Cal. May 3, 2022) (permitting plaintiff to introduce evidence of the

23

information it asked for from defendant and the information defendant provided in response, such

24

evidence being "similar in form and effect to responses to interrogatories or requests for

25

admission").

26

Likewise, Plaintiff should be permitted to present evidence as to the sequencing and form

27

of production. Among Uber's many critiques of Plaintiff's experts are the time and expense

28

allotted to their work. But Uber often produced piecemeal information, out of order, in

complicated formats, or only after experts had reasonably relied on what was represented as a complete data set. *See* ECF No. 4060. Plaintiff should be permitted to present this testimony to explain the significant time and attention Plaintiff's experts had to expend to sort through and reconcile these documents.

Another example is gender inference data. Uber recognized that, based on its data, ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ . Nonetheless, Uber claimed ███████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████ . And the sexual assault/sexual misconduct incident data Uber did produce does not include any information about gender.

Plaintiff should also be permitted to present evidence as to any factual (as opposed to legal) explanation provided regarding why certain information could not be produced. For example, if Uber (or one of its employees and representatives) had represented that certain information requested was never collected by Uber in the first instance, or was not retained by Uber, Plaintiff should be permitted to present such explanation to the jury. Plaintiff's theory of liability includes that a responsible company would have, from the outset, worked to identify risk factors on its platform, conducted research and gathered related data, tested and analyzed any mitigation efforts to ensure efficacy, and continually reviewed and analyzed the information to fix and improve its efforts. Evidence pertaining to these issues, including explanations about whether certain documents did or did not exist, information was or was not collected, or how long

information was or was not retained, are relevant to these issues and should not be excluded. Such evidence speaks to whether Uber knew or should have known of the prevalence of sexual assault on its platform and whether Uber was acting reasonably in identifying, studying, and mitigating those concerns. *See United Food Group, LLC. V. Cargill, Inc*., 2014 WL 12925563, at *3 (C.D. Cal. Nov. 14, 2014) ("a party may establish that records are missing and argue to the jury any reasonable inference that such facts establish [].").

Uber also seeks a blanket exclusion on "privilege assertion." But Uber's document productions show that Uber employees habitually labeled documents "privileged" in a coordinated effort to shield them from public view. This is how Uber itself kept crucial business documents in the ordinary course of business and reflect what information Uber specifically did not disclose publicly. Uber is not entitled to abuse the privilege protections and then modify documents after the fact to sanitize its image for the jury or confuse whether such material was publicly disclosed.

Further, as explained in Plaintiff's motions in limine, Uber has withheld over 110,000 documents in whole or in part on the basis of attorney-client and work-product privileges, including communications and documents bearing directly on its alleged "legal considerations" behind refusals to adopt safety measures. Because Uber refused to disclose the advice it purportedly relied upon, Plaintiff seeks to exclude that evidence. But should the Court deny Plaintiff's motion, then Plaintiff should be permitted to explain why the lack of any evidence as to Uber's purported "legal considerations" defense.

The JCCP Court denied Uber's motion regarding discovery disputes in the JCCP instead noting that the Court will address such issues during trial. *See* JCCP Order at 61. This Court should go further and deny Uber's motion outright.

## XXI.    ANY SUGGESTION THAT MR. TURAY SUBMITTED A FAKE ID TO UBER/CHECKR

Uber asks the Court to exclude any evidence, argument, or suggestion that the driver in this case, Hassan Turay,

1  ████████████████████████████████████████████. Should the Court agree with Uber

2  that compliance with such laws precludes punitive damages, whether Uber in fact complied

3  becomes centrally relevant.[18]

4      More generally, Plaintiff's expert Dr. Valliere will explain that lax systems like this one—

5  not enforcing rules about what is required to be a driver—telegraphs to predators that the

6  company does not take rules seriously, and that drivers can get away with pushing boundaries

7  without fear of consequences. *See* Valliere Rpt., *supra*. Further, Uber's own corporate witness,

8  Hannah Nilles, explained that ██████████████████████████████████████████████

9  ████████████████████████████████████████████████

10  ███████████████████████ Consequently, Turay's failure to ██████████████████

11  ██████████████████████████████ are plainly relevant to Uber's reasonableness in

12  allowing Turay to drive for Uber.

XXII.    **PRIOR COMPLAINTS, INCIDENTS, ALLEGATIONS, POOR RATINGS, AND**
13       **TEMPORARY RESTRICTIONS INVOLVING MR. TURAY**

14      Uber seeks to bar evidence of prior complaints against Mr. Turay, including allegations of

15  sexual misconduct, dangerous driving, and interpersonal disputes. Uber's motion should be denied.

16  The probative value of these complaints is high. Uber's own internal research recognizes ██████

17  ████████████████████████████████████████████ *See* Pl's S.J. Opp at 16-20

18  (ECF No. 4621). Thus, this evidence goes to whether Uber had notice that Mr. Turay posed a risk

19  of sexual assault to Plaintiff. *See e.g.*, *Sanchez v. City of Tucson*, 2016 WL 8669901, at *5 (D. Ariz.

20  Sept. 30, 2016) (negligent supervision requires showing employer "knew or should have known"

21

22  ────────────────
    [18] As explained in Plaintiff's opposition to summary judgment, ██████████████████████

23  ████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████

the employee was unfit); *State, Dept. of Admin. v. Schallock*, 941 P.2d 1275, 1283 (Ariz. 1997) (scope of employment inquiry considers whether "the master has reason to expect that such an act will be done."); *Olson v. Walker*, 781 P.2d 1015, 1018 (Ariz. App. 1st Div. 1989) (punitive damages warranted where a defendant "consciously disregard[s] the substantial risk of harm created by his conduct."). Uber's vague and speculative assertions of prejudice, confusion, or "mini-trials" under Rule 403 cannot overcome the weight of the relevance of the prior complaints.

Uber argues that rider complaints about Mr. Turay unrelated to sexual misconduct are irrelevant. But Uber's own internal documents acknowledge that ███████████████████ ████████████████████████████████████████████████████████ *See* Pl's S.J. Opp at 16-20 (ECF No. 4621). These reports are specifically considered by Uber in forming their sexual assault risk score. *See* ████████████████████████ Ex 53. And prior acts need not mirror the misconduct at issue, so long as they are probative of the individual's unfitness for the position. *See Sanchez*, 2016 WL 8669901, at *6 (D. Ariz. Sept. 30, 2016) ("no specific requirement" that prior accusations must be for identical misconduct; "Rather, by requiring a showing of causation, the standard requires the unfitness to indicate that an injury such as Plaintiff's may occur."). Uber's claim that non-sexual misconduct complaints are irrelevant is therefore both inaccurate and misleading. They are directly probative of whether Uber was repeatedly placed on notice that Mr. Turay was a danger to riders, ████████████████ █████████████

Next, Uber argues that because it unilaterally (and in one instance, belatedly) deemed other sexual misconduct allegations against Mr. Turay not credible, they are necessarily irrelevant. Uber is incorrect. As explained in Plaintiff's motions in limine, Uber's limited and selectively disclosed post-litigation investigation into the validity of the first complaint ████████ should be excluded. As of the time of the incident, ██████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████

1  ███████████████████████████████████████████████████████████

2  ██████████████████████

3  ███████████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████████

8  ███████████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████████

11 ████████████████████████ At minimum, Plaintiff should be permitted to

12 introduce evidence of Uber's cursory investigation as relevant to its lack of care concerning Turay.

13      Further, Uber argues that Mr. Turay's other sexual misconduct allegations are inadmissible

14 character evidence. But Plaintiff is not offering the evidence to prove Mr. Turay acted in conformity

15 with prior conduct, but to show that Uber knew or should have known he posed a foreseeable danger

16 and did not take any action to address that danger in time to protect Plaintiff. Under Rule 404(b),

17 evidence offered to establish knowledge is explicitly admissible as an exception to the prohibition

18 against character evidence.

19      Finally, Uber's contention that prior complaints of sexual misconduct have only "marginal"

20 probative value is unfounded. As explained in Plaintiff's motions in limine, ████████████████

21 ███████████████████████████████████████████████████████████

22 ███████████████████████████████ These reports, at a minimum, go to notice and are

23 not unduly prejudicial.[19]

---

[19] Uber's cited case *Griffiths v. Tucson, City of*, 2016 WL 7227553, at *4 (D. Ariz. Jan. 25, 2016)
supports Plaintiff's position. In *Griffiths*, the court excluded evidence that the alleged harasser
had privately sent sexual messages to another employee because the conduct was never reported
to the employer. *Id.* Thus, the employer had no notice of the messages. *Id.* But the *Griffiths* Court
refused to exclude evidence that the harasser engaged in other problematic behavior that was
reported to the employer "because it has some tendency to make it more likely [the employer]
was on actual or constructive knowledge of [the harasser's] propensity to engage in sexually

1  **XXIII.    MR. TURAY'S NATIONALITY OR IMMIGRATION STATUS**

2        Uber seeks to exclude any reference to Mr. Turay's nationality, immigration status, or

3  ethnicity. Plaintiff has no intention of offering such evidence for any inflammatory or improper

4  purpose. And Plaintiff does not plan to reference Mr. Turay's lawful or unlawful documentation

5  status. But Uber's motion should be denied as overboard because it would exclude relevant

6  evidence including, as discussed above, relating to the timing of his issued driver's licenses—

7  facts that bear on whether he was licensed to drive when Uber hired him. *See Point Ruston, LLC*

8  *v. Pac. Nw. Reg'l Council of United Bhd. of Carpenters & Joiners of Am.*, 2010 WL 3766503, at

9  *1 (W.D. Wash. Sept. 22, 2010) (barring reference to legality or illegality of immigration status,

10  but holding that mention that a person is from a different country did not violate that prohibition

11  and "[t]he nature of this case and the evidence needed by both parties will not permit such a

12  restrictive and unnecessary ruling.").[20]

13  **CONCLUSION**

14        For these reasons, Defendants' motions should be denied as described herein.

---

harassing conduct" and "[t]he jury is entitled to resolve factual disputes concerning this evidence." *Id.* Just so here. Uber indisputably had notice of the complaints against Mr. Turay but took no action. Uber's other support is equally unavailing. *See Hendricks v. A-Z Women's Center*, 2007 WL 9734381, at *4 (D. Nev. May 22, 2007)(excluding evidence of other medical malpractice suits as proof physician acted in conformity but noting court would consider at trial whether the evidence was permissible for other reasons under Rule 404(b)); *Ernst v. HB Aspen, Inc.*, 2008 WL 11338185, (C.D. Cal. Mar. 24, 2008)(in wrongful termination case excluding evidence plaintiff's coworkers had complained she was rude but noting evidence would be relevant if the employer had actually relied upon the complaints in making the termination decision).

[20] Uber's cite to *U.S. v. Lopez,* 991 F.2d 804, 1993 WL 118149, at *5 (9th Cir. Apr. 15, 1993) is off base. In *Lopez*, the Ninth Circuit held that the district court erred in allowing a witness to testify that the criminal defendant was Colombian, as the evidence was offered solely to suggest he appeared Hispanic, matching witness descriptions of the perpetrator. *Id.* The Court found only the defendant's actual appearance relevant to that determination. *Id.* No such issues arise in this case.

Dated: December 30, 2025

Respectfully Submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY
& WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

1

## **FILER'S ATTESTATION**

2      I am the ECF User whose ID and password are being used to file this document. In

3  compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this

4  filing.

5  Dated:  December 30, 2025                    By:    */s/ Roopal Luhana*

6                                                            Roopal Luhana

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28