1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

11
12
13

**IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION**

14
15

This Document Relates to:

16
17

*Jaylynn Dean v. Uber Techs., Inc.*,
N.D. Cal. No. 23-cv-06708
D. Ariz. No. 25-cv-4276

18

No. 3:23-md-03084-CRB

**JOINT AND CONTESTED PROPOSED JURY INSTRUCTIONS**

Judge: Honorable Charles R. Breyer
Ctrm.:  D. Ariz., 501

19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

Introductory Statement ........................................................................................................ 1

PRELIMINARY INSTRUCTIONS ...................................................................................... 2

Duty of Jury .......................................................................................................................... 3

[Disputed] Claims and Defenses .......................................................................................... 4

The Uber Defendants ............................................................................................................ 6

Corporations and Partnerships—Fair Treatment ................................................................. 7

[Disputed] Wealth of Parties ................................................................................................ 8

Burden of Proof .................................................................................................................... 9

What is Evidence .................................................................................................................. 10

What is Not Evidence ........................................................................................................... 11

Evidence for a Limited Purpose ........................................................................................... 12

Direct and Circumstantial Evidence ..................................................................................... 13

Ruling on Objections ............................................................................................................ 14

Credibility of Witnesses ....................................................................................................... 15

Expert Opinion ..................................................................................................................... 16

Conduct of the Jury .............................................................................................................. 17

Publicity During Trial .......................................................................................................... 19

No Transcript Available to Jury ........................................................................................... 20

Taking Notes ......................................................................................................................... 21

Bench Conferences and Recesses ......................................................................................... 22

Outline of Trial ..................................................................................................................... 23

FINAL INSTRUCTIONS ..................................................................................................... 24

Duty of Jury .......................................................................................................................... 25

Corporations and Partnerships—Fair Treatment ................................................................. 26

[Disputed] Wealth of Parties ................................................................................................ 27

Burden of Proof .................................................................................................................... 28

What is Evidence .................................................................................................................. 29

What is Not Evidence ........................................................................................................... 30

Evidence for a Limited Purpose ........................................................................................... 31

Direct and Circumstantial Evidence ..................................................................................... 32

Credibility of Witnesses ....................................................................................................... 33

## TABLE OF CONTENTS
### (continued)

Page

Expert Opinion ................................................................................................ 34

Taking Notes .................................................................................................... 35

[Disputed] Negligence—Statement of Claim .............................................. 36

[Disputed] Negligence—Definition of Reasonable Care............................ 42

[Disputed] Negligence— Industry Custom & Practice................................ 43

[Disputed] Negligence—Definition of Causation ....................................... 45

[Disputed] Negligence—Superseding Cause ............................................... 47

[Disputed] Negligence—Burden of Proof ................................................... 50

Negligence—Statement of Liability Issues.................................................. 51

Design Defect—Statement of Claim............................................................. 52

[Disputed] Design Defect—Defect and Unreasonable Danger Defined.......... 53

[Disputed] Design Defect—Plaintiff's Burden of Proof............................. 55

Design Defect—Statement of Liability Issues ............................................ 56

[Disputed] Design Defect—State of the Art ............................................... 57

[Disputed] Design Defect—Superseding Cause .......................................... 59

[Explanatory Note] Vicarious Liability ...................................................... 61

[Disputed] [Plaintiff's Proposed Instruction] Employer Liability—Introduction;
         [Uber's Proposed Instruction] Vicarious Liability—Introduction...................... 62

[Disputed] Competing Instructions Regarding Employee Status ................... 67

[Disputed] Employer Liability—Scope of Employment ................................. 72

[Disputed] Apparent Agency ....................................................................... 76

[Disputed] Vicarious Liability—Scope of Employment/Agency ................... 78

[Disputed] Comparative Fault ..................................................................... 81

[Disputed] Determining Relative Degrees of Fault .................................... 82

Personal Injury Damages—Measure of Damages ....................................... 83

[Disputed] Personal Injury Damages—Unusually Susceptible Plaintiff ......... 84

Personal Injury Damages—Punitive Damages ............................................ 87

[Disputed] Personal Injury Damages—Punitive Damages Not Awarded For
         Conduct Unrelated to Harm Alleged.................................................... 88

Duty to Deliberate ......................................................................................... 90

Consideration of Evidence – Conduct of the Jury ...................................... 91

Communication with the Court ..................................................................... 93

# TABLE OF CONTENTS
**(continued)**

**Page**

Return of Verdict...........................................................................................................94

IN-TRIAL INSTRUCTIONS ..........................................................................................95

Deposition in Lieu of Live Testimony .........................................................................96

Video Corporate Representative Deposition...................................................................97

Expert Work on Multiple Cases ....................................................................................98

**Introductory Statement**

Pursuant to the Court's scheduling order, the parties respectfully submit the proposed agreed and disputed jury instructions be given to the jury prior to trial and after the close of evidence as designated herein. These proposed jury instructions are submitted prior to rulings on, among other things, Uber's motion for summary judgment, the parties' Rule 702 motions and motions in limine, deposition designations and evidentiary objections at trial, and without knowing precisely which witnesses will be called at trial or the exact claims that will be submitted to the jury following a ruling on Uber's motions for judgment as a matter of law.

By submitting these proposed instructions, Uber does not waive any defenses or arguments; nor does it concede there is any fact issue on any question pertaining to either liability or damages. Uber submits it is entitled to a take-nothing judgment. Uber reserves their rights to seek dismissal, summary judgment, judgment as a matter of law, j.n.o.v., and any other appropriate relief before, during, or after trial. Plaintiff reserves all rights as well.

The parties reserve rights to offer additional instructions as necessary or to clarify or withdraw instructions already submitted.

# PRELIMINARY INSTRUCTIONS

1

**Duty of Jury**[1]

2       Members of the jury: You are now the jury in this case. It is my duty to instruct you on the

3  law.

4       It is your duty to find the facts from all the evidence in the case. To those facts you will

5  apply the law as I give it to you. You must follow the law as I give it to you whether you agree with

6  it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or

7  sympathy. That means that you must decide the case solely on the evidence before you. You will

8  recall that you took an oath to do so.

9       At the end of the trial I will give you final instructions. It is the final instructions that will

10  govern your duties.

11       Please do not read into these instructions, or anything I may say or do, that I have an opinion

12  regarding the evidence or what your verdict should be.

---

[1] Ninth Cir. Model Civil Instr. 1.3

**[Disputed] Claims and Defenses[2]**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiff's Proposed Language: In this lawsuit, Plaintiff Jaylynn Dean alleges that she was raped by her Uber driver, Hassan Turay, in Tempe, Arizona on November 15, 2023.

Uber's Proposed Language: In this lawsuit, Plaintiff Jaylynn Dean alleges that she was raped by her driver, Hassan Turay, in Tempe, Arizona on November 15, 2023. Ms. Dean's Uber account was used to request the ride and Hassan Turay, who was using the Uber platform at the time, accepted the ride request.

The Defendants in this case are Uber Technologies, Inc., as well as two of its subsidiaries, Rasier LLC and Rasier-CA, LLC. These companies together will be referred to as "Uber." You should think of them as one company. Hassan Turay is not a defendant in this case.

Plaintiff alleges that Uber was negligent, that its application was defective, and that Uber should be held legally and financially responsible for the actions of the driver.

Plaintiff has two claims based on Uber's alleged conduct: Negligence and Design Defect.

Plaintiff also has two claims based on Uber's alleged vicarious responsibility for Hassan Turay's conduct based on Employer Liability and Apparent Agency.

Later I will explain the legal requirements that Plaintiff must prove for these claims.

The Plaintiff has the burden of proving these claims. Uber denies the claims made by Plaintiff. Uber contends that it is not liable for any injuries suffered by Plaintiff. And Uber denies that it is responsible for any act committed by Hassan Turay or that it had an employment or apparent agency relationship with Hassan Turay.

**Plaintiff's Position**:

The Court should adopt Plaintiff's proposed language. Plaintiff's language copies from the joint statement the parties agreed to include in the juror questionnaire: "In this case Plaintiff Jaylynn Dean alleges that she was raped by her Uber driver in Tempe, Arizona on November 15, 2023." ECF 4504. Despite agreeing to this language earlier, Uber now proposes describing the case using awkward, passive-voice language to communicate to the jury that Uber played no role in assigning Mr. Turay to transport Ms. Dean. The undisputed facts are that Uber matched Mr. Turay with Ms. Dean. The term "Uber driver" is common parlance.

[2] Ninth Cir. Model Civil Instr. 1.5 (adapted)

**<u>Uber's Position</u>**:

The term "Uber driver" is argumentative, especially in a case, like this one, in which the parties dispute whether Hassan Turay is an employee or agent of Uber's. It could also lead to confusion or suggest to the jury that it should presume that Turay is an employee or agent, contrary to the burden of proof. Therefore, the jury should be informed of the facts regarding Mr. Turay's role in more neutral terms in this statement of the case, which also goes on to outline for the jury the issues that it is to decide in the case (including the employment/agency issues).

**The Uber Defendants**

There are three Uber Defendants: Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC. The jury instructions and verdict form refer to these entities collectively as "Uber." You may see evidence that discusses one or more of these Uber Defendants individually. In evaluating the evidence against the Uber Defendants, you should treat these three Defendants as if they are a single Defendant. Your verdict must be the same as to all of the Uber Defendants.

1

**Corporations and Partnerships—Fair Treatment**[3]

2      All parties are equal before the law and a corporation is entitled to the same fair and

3  conscientious consideration by you as any party.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[3] Ninth Cir. Model Civil Instr. 4.1

1

**[Disputed] Wealth of Parties**

2
            In reaching a verdict, you may not consider the wealth or poverty of any party. The parties'

3
wealth or poverty is not relevant to any of the issues that you must decide.

4
**Plaintiff's Position**:

5
            Uber's proposed instruction reflects an inaccurate statement of the law, as demonstrated

6
by Uber's reliance on a dissenting opinion. A defendant's wealth is relevant to punitive damage,
one of the "issues [the jury] must decide." *See*, *e.g.*, *Diaz v. Tesla, Inc.*, 697 F. Supp. 3d 906, 937

7
(N.D. Cal. 2023) ("[T]he jury was entitled to consider Tesla's wealth in determining the
necessary amount to punish and deter its conduct.") (citing *Bains LLC v. Arco Prods. Co.*, 405

8
F.3d 764, 777 (9th Cir. 2995); *Hudgins v. Sw. Airlines, Co.*, 212 P.3d 810, 830 (Ariz. App. 2009)

9
("SWA's wealth warrants a more substantial punitive damages award in order to serve the
deterrent purposes underlying such awards."). The California jury instruction Uber cites makes

10
this clear: "This instruction may be given *unless* liability and punitive damages are to be decided
in a nonbifurcated trial. The defendant's wealth is relevant to punitive damages." CACI 117,

11
Directions for Use (emphasis added).

12
**Uber's Position**:

13
            Plaintiff does not dispute that wealth is not relevant to an issue the jury must decide as to

14
any issue other than punitive damages. Thus, there is no basis to object to this instruction if
Uber's request to bifurcate the issue of punitive damages is granted. Even as to punitive damages,

15
Plaintiff's own authority makes clear that wealth may "not [be] used to make up for a dearth" of
other factors such as reprehensibility in a jury's assessment of punitive damages award. *Diaz v.*

16
*Tesla, Inc.*, 697 F. Supp. 3d 906, 937 (N.D. Cal. 2023) (quoting *State Farm Mut. Auto. Ins. Co. v.*
*Campbell*, 538 U.S. 408, 428 (2003)); *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 777 (9th Cir.

17
2005) ("[T]he wealth of a defendant cannot justify an otherwise unconstitutional punitive
damages award, and cannot make up for the failure of other factors."); *see also Leavey v.*

18
*UNUM/Provident Corp.*, No. CV-0202281-PHX-SMM, 2006 WL 1515999, at *16 n.2 (D. Ariz.

19
May 26, 2006) (same). As a matter of due process, a jury "may not increase [a] punitive award
above an amount that is otherwise appropriate merely because [a defendant] has substantial

20
financial resources." *Unsworth v. Musk*, No. 2:18-cv-08048-SVW-JC, 2019 WL 8221086, at *8

21
(C.D. Cal. Nov. 27, 2019). And the admission of wealth evidence poses a significant risk that the
jury will surrender to "the temptation to transfer wealth from out-of-state corporate defendants to

22
in-state plaintiffs" in violation of due process. *TXO Prod. Corp. v. Alliance Resources Corp.*, 509
U.S. 443, 493, 495 (1993) (O'Connor, J., dissenting). Plaintiff has not proposed any instruction to

23
the jury that would guard against such violation of due-process rights were evidence of wealth to

24
be introduced at trial. Uber's proposed instruction accurately reflects the law and the Court should
exercise its discretion to instruct the jury that the parties' wealth or poverty is not relevant to any

25
of the issues.

26

27

28

1

**Burden of Proof**[4]

2      When a party has the burden of proving any claim or affirmative defense by a preponderance

3  of the evidence, it means you must be persuaded by the evidence that the claim or affirmative

4  defense is more probably true than not true.

5      When a party has the burden of proving any claim or defense by clear and convincing

6  evidence, it means that the party must present evidence that leaves you with a firm belief or

7  conviction that it is highly probable that the factual contentions of the claim or defense are true.

8  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not

9  require proof beyond a reasonable doubt.

10      You should base your decision on all of the evidence, regardless of which party presented

11  it.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[4] Ninth Cir. Model Civil Instr. 1.6, 1.7

1

**What is Evidence**[5]

The evidence you are to consider in deciding what the facts are consists of:

    1.   the sworn video and live testimony of any witness;

    2.   the exhibits that are admitted into evidence;

    3.   any facts to which the lawyers have agreed; and

    4.   any facts that I have instructed you to accept as proved.

---

[5] Ninth Cir. Model Civil Instr. 1.9

1

**What is Not Evidence**[6]

2      In reaching your verdict, you may consider only the testimony and exhibits received into

3  evidence. Certain things are not evidence, and you may not consider them in deciding what the

4  facts are. I will list them for you:

5      (1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses.

6  What they will say in their opening statements, closing arguments and at other times is intended to

7  help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from

8  the way the lawyers have stated them, your memory of them controls.

9      (2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their

10 clients to object when they believe a question is improper under the rules of evidence. You should

11 not be influenced by the objection or by the court's ruling on it.

12     (3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not

13 evidence and must not be considered. In addition some evidence may be received only for a limited

14 purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do

15 so and you may not consider that evidence for any other purpose.

16     (4) Anything you may see or hear when the court was not in session is not evidence. You

17 are to decide the case solely on the evidence received at the trial.

18

19

20

21

22

23

24

25

26

27

28

---

[6] Ninth Cir. Model Civil Instr. 1.10 (modified to select among bracketed options)

1

**Evidence for a Limited Purpose[7]**

2        Some evidence may be admitted only for a limited purpose.

3        When I instruct you that an item of evidence has been admitted only for a limited purpose,

4 you may consider it only for that limited purpose, but not for any other purpose.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[7] Ninth Cir. Model Civil Instr. 1.11

1

**Direct and Circumstantial Evidence**[8]

2      Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as

3 testimony by a witness about what that witness personally saw or heard or did. Circumstantial

4 evidence is proof of one or more facts from which you could find another fact. You should consider

5 both kinds of evidence. The law makes no distinction between the weight to be given to either direct

6 or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

7      By way of example, if you wake up in the morning and see that the sidewalk is wet, you

8 may find from that fact that it rained during the night. However, other evidence, such as a turned-

9 on garden hose, may provide a different explanation for the presence of water on the sidewalk.

10 Therefore, before you decide that a fact has been proved by circumstantial evidence, you must

11 consider all the evidence in the light of reason, experience, and common sense.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[8] Ninth Cir. Model Civil Instr. 1.12

1

**Ruling on Objections**[9]

2   There are rules of evidence that control what can and cannot be received into evidence.

3 When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side

4 thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the

5 objection, the question may be answered or the exhibit received. If I sustain the objection, the

6 question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection

7 to a question, you must ignore the question and must not guess what the answer might have been.

8   Sometimes I may order that evidence be stricken from the record and that you disregard or

9 ignore that evidence. That means when you are deciding the case, you must not consider the stricken

10 evidence for any purpose.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[9] Ninth Cir. Model Civil Instr. 1.13

1

**Credibility of Witnesses**[10]

2     In deciding the facts in this case, you may have to decide which testimony to believe and

3 which testimony not to believe. You may believe everything a witness says, or part of it, or none

4 of it. In considering the testimony of any witness, you may take into account:

5     (1) the opportunity and ability of the witness to see or hear or know the things testified to;

6     (2) the witness's memory;

7     (3) the witness's manner while testifying;

8     (4) the witness's interest in the outcome of the case, if any;

9     (5) the witness's bias or prejudice, if any;

10     (6) whether other evidence contradicted the witness's testimony;

11     (7) the reasonableness of the witness's testimony in light of all the evidence; and

12     (8) any other factors that bear on believability.

13     Sometimes a witness may say something that is not consistent with something else he or

14 she said. Sometimes different witnesses will give different versions of what happened. People often

15 forget things or make mistakes in what they remember. Also, two people may see the same event

16 but remember it differently. You may consider these differences, but do not decide that testimony

17 is untrue just because it differs from other testimony.

18     However, if you decide that a witness has deliberately testified untruthfully about something

19 important, you may choose not to believe anything that witness said. On the other hand, if you think

20 the witness testified untruthfully about some things but told the truth about others, you may accept

21 the part you think is true and ignore the rest.

22     The weight of the evidence as to a fact does not necessarily depend on the number of

23 witnesses who testify. What is important is how believable the witnesses were, and how much

24 weight you think their testimony deserves.

25

26

27

28

---

[10] Ninth Cir. Model Civil Instr. 1.14

1

**Expert Opinion**[11]

2      You will hear testimony from expert witnesses, who will testify to opinions and the reasons

3  for their opinions. This opinion testimony is allowed because of the specialized knowledge, skill,

4  experience, training, or education of these witnesses.

5      Such opinion testimony should be judged like any other testimony. You may accept it or

6  reject it, and give it as much weight as you think it deserves, considering the witness's specialized

7  knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the

8  other evidence in the case.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[11] Ninth Cir. Model Civil Instr. 2.13 (modified to select among bracketed options)

**Conduct of the Jury**[12]

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including

---

[12] Ninth Cir. Model Civil Instr. 1.15 (modified to delete optional bracketed additions)

the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately, by sending a note through the clerk signed by any one or more of you.

1

**Publicity During Trial**[13]

2        If there is any news media account or commentary about the case or anything to do with it,

3 you must ignore it. You must not read, watch or listen to any news media account or commentary

4 about the case or anything to do with it. You must disable "push notifications" from any news,

5 media, or social media source on your phone. The case must be decided by you solely and

6 exclusively on the evidence that will be received in the case and on my instructions as to the law

7 that applies. If any juror is exposed to any outside information, please notify me immediately.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[13] Ninth Cir. Model Civil Instr. 1.16 (modified to add "push notifications" sentence)

1

**No Transcript Available to Jury**[14]

2    I urge you to pay close attention to the trial testimony as it is given. During deliberations

3  you will not have a transcript of the trial testimony.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[14] Ninth Cir. Model Civil Instr. 1.17

JOINT AND CONTESTED PROPOSED
JURY INSTRUCTIONS
CASE NO. 3:23-MD-03084-CRB

1

**Taking Notes**[15]

2   If you wish, you may take notes to help you remember the evidence. If you do take notes,

3 please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking

4 distract you. When you leave, your notes should be left in the jury room. No one will read your

5 notes.

6   Whether or not you take notes, you should rely on your own memory of the evidence. Notes

7 are only to assist your memory. You should not be overly influenced by your notes or those of other

8 jurors.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[15] Ninth Cir. Model Civil Instr. 1.18

**Bench Conferences and Recesses**[16]

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

[16] Ninth Cir. Model Civil Instr. 1.20 (modified to select among bracketed options)

1

**Outline of Trial**[17]

2   Trials proceed in the following way: First, each side may make an opening statement. An

3 opening statement is not evidence. It is simply an outline to help you understand what that party

4 expects the evidence will show.

5   Plaintiff will then present evidence, and counsel for Uber may cross-examine. Then Uber

6 may present evidence, and counsel for the plaintiff may cross-examine.

7   After the evidence has been presented, I will instruct you on the law that applies to the case

8 and the attorneys will make closing arguments.

9   After that, you will go to the jury room to deliberate on your verdict.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[17] Ninth Cir. Model Civil Instr. 1.21 (modified to replace "the defendant" with "Uber")

# FINAL INSTRUCTIONS

1

**Duty of Jury**[18]

2      Members of the jury: Now that you have heard all of the evidence, it is my duty to instruct

3  you on the law that applies to this case. A copy of these instructions will be sent to the jury room

4  for you to consult during your deliberations.

5      It is your duty to find the facts from all the evidence in the case. To those facts you will

6  apply the law as I give it to you. You must follow the law as I give it to you whether you agree with

7  it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or

8  sympathy. That means that you must decide the case solely on the evidence before you. You will

9  recall that you took an oath to do so.

10      Please do not read into these instructions, or anything I may say or do, that I have an opinion

11  regarding the evidence or what your verdict should be.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[18] Ninth Cir. Model Civil Instr. 1.4 (modified to select among bracketed options)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Corporations and Partnerships—Fair Treatment[19]

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

---

[19] Ninth Cir. Model Civil Instr. 4.1

1    [Disputed] Wealth of Parties

2         In reaching a verdict, you may not consider the wealth or poverty of any party. The parties'

3    wealth or poverty is not relevant to any of the issues that you must decide.

4    **Plaintiff's Position**:

5         Uber's proposed instruction reflects an inaccurate statement of the law, as demonstrated
6    by Uber's reliance on a dissenting opinion. A defendant's wealth is relevant to punitive damage,
     one of the "issues that [the jury] must decide." *See, e.g.*, *Diaz v. Tesla, Inc.*, 697 F. Supp. 3d 906,
7    937 (N.D. Cal. 2023) ("[T]he jury was entitled to consider Tesla's wealth in determining the
     necessary amount to punish and deter its conduct.") (citing *Bains LLC v. Arco Prods. Co.*, 405
8    F.3d 764, 777 (9th Cir. 2995); *Hudgins v. Sw. Airlines, Co.*, 212 P.3d 810, 830 (Ariz. App. 2009)
9    ("SWA's wealth warrants a more substantial punitive damages award in order to serve the
     deterrent purposes underlying such awards."). The California jury instruction Uber cites makes
10   this clear: "This instruction may be given *unless* liability and punitive damages are to be decided
     in a nonbifurcated trial. The defendant's wealth is relevant to punitive damages." CACI 117,
11   Directions for Use (emphasis added).

12   **Uber's Position**:

13        Plaintiff does not dispute that wealth is not relevant to an issue the jury must decide as to
     any issue other than punitive damages. Thus, there is no basis to object to this instruction if
14   Uber's request to bifurcate the issue of punitive damages is granted. Even as to punitive damages,
     Plaintiff's own authority makes clear that wealth may "not [be] used to make up for a dearth" of
15   other factors such as reprehensibility in a jury's assessment of punitive damages award. *Diaz v.
     Tesla, Inc.*, 697 F. Supp. 3d 906, 937 (N.D. Cal. 2023) (quoting *State Farm Mut. Auto. Ins. Co. v.
16   Campbell*, 538 U.S. 408, 428 (2003)); *Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 777 (9th Cir.
     2005) ("[T]he wealth of a defendant cannot justify an otherwise unconstitutional punitive
17   damages award, and cannot make up for the failure of other factors."); *see also Leavey v.
     UNUM/Provident Corp.*, No. CV-0202281-PHX-SMM, 2006 WL 1515999, at *16 n.2 (D. Ariz.
18   May 26, 2006) (same). As a matter of due process, a jury "may not increase [a] punitive award
     above an amount that is otherwise appropriate merely because [a defendant] has substantial
19   financial resources." *Unsworth v. Musk*, No. 2:18-cv-08048-SVW-JC, 2019 WL 8221086, at *8
     (C.D. Cal. Nov. 27, 2019). And the admission of wealth evidence poses a significant risk that the
20   jury will surrender to "the temptation to transfer wealth from out-of-state corporate defendants to
     in-state plaintiffs" in violation of due process. *TXO Prod. Corp. v. Alliance Resources Corp.*, 509
21   U.S. 443, 493, 495 (1993) (O'Connor, J., dissenting). Plaintiff has not proposed any instruction to
     the jury that would guard against such violation of due-process rights were evidence of wealth to
22   be introduced at trial. Uber's proposed instruction accurately reflects the law and the Court should
     exercise its discretion to instruct the jury that the parties' wealth or poverty is not relevant to any
23   of the issues.

24

25

26

27

28

1

**Burden of Proof**[20]

2    When a party has the burden of proving any claim or affirmative defense by a preponderance

3   of the evidence, it means you must be persuaded by the evidence that the claim or affirmative

4   defense is more probably true than not true.

5    When a party has the burden of proving any claim or defense by clear and convincing

6   evidence, it means that the party must present evidence that leaves you with a firm belief or

7   conviction that it is highly probable that the factual contentions of the claim or defense are true.

8   This is a higher standard of proof than proof by a preponderance of the evidence, but it does not

9   require proof beyond a reasonable doubt.

10    You should base your decision on all of the evidence, regardless of which party presented

11   it.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[20] Ninth Cir. Model Civil Instr. 1.6, 1.7

1

**What is Evidence**[21]

2

The evidence you are to consider in deciding what the facts are consists of:

3

    1.   the sworn video and live testimony of any witness;

4

    2.   the exhibits that are admitted into evidence;

5

    3.   any facts to which the lawyers have agreed; and

6

    4.   any facts that I have instructed you to accept as proved.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[21] Ninth Cir. Model Civil Instr. 1.9

1

**What is Not Evidence**[22]

2
3
4

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

5
6
7
8

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

9
10
11

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

12
13
14
15

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

16
17

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

18
19
20
21
22
23
24
25
26
27
28

---

[22] Ninth Cir. Model Civil Instr. 1.10 (modified to select among bracketed options)

JOINT AND CONTESTED PROPOSED
JURY INSTRUCTIONS
CASE NO. 3:23-MD-03084-CRB

1    **Evidence for a Limited Purpose**[23]

2        Some evidence may have been admitted only for a limited purpose.

3        When I instruct you that an item of evidence has been admitted only for a limited purpose,

4    you must consider it only for that limited purpose and not for any other purpose.

---

[23] Ninth Cir. Model Civil Instr. 1.11 (modified to past tense)

1

**Direct and Circumstantial Evidence**[24]

2      Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as

3  testimony by a witness about what that witness personally saw or heard or did. Circumstantial

4  evidence is proof of one or more facts from which you could find another fact. You should consider

5  both kinds of evidence. The law makes no distinction between the weight to be given to either direct

6  or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

7      By way of example, if you wake up in the morning and see that the sidewalk is wet, you

8  may find from that fact that it rained during the night. However, other evidence, such as a turned-

9  on garden hose, may provide a different explanation for the presence of water on the sidewalk.

10  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must

11  consider all the evidence in the light of reason, experience, and common sense.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[24] Ninth Cir. Model Civil Instr. 1.12

**Credibility of Witnesses**[25]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

---

[25] Ninth Cir. Model Civil Instr. 1.14

**Expert Opinion**[26]

You have heard testimony from expert witnesses, who testified to opinions and the reasons for their opinions. This opinion testimony was allowed because of the specialized knowledge, skill, experience, training, or education of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

---

[26] Ninth Cir. Model Civil Instr. 2.13 (modified to select among bracketed options)

**Taking Notes**[27]

You may have taken notes to help you remember the evidence. If you did take notes, please keep them to yourself until you go to the jury room to decide the case. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you took notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

---

[27] Ninth Cir. Model Civil Instr. 1.18 (modified to past tense)

1    **[Disputed]** Negligence—Statement of Claim[28]

2    Plaintiff's Proposed Instruction:

3    Plaintiff's first claim is negligence. Plaintiff claims Uber was at fault. Uber claims that

4    Plaintiff was at fault. Uber also claims that the driver, Hassan Turay, was at fault.

5    Fault is negligence that was a cause of Plaintiff's injury.

6    Negligence is the failure to use reasonable care. Negligence may consist of action or

7    inaction. Negligence is the failure to act as a reasonable person would act under the circumstances.

8    In this case, Uber was required to use reasonable care to protect Plaintiff while using the

9    Uber service, including from being harmed by the driver, Mr. Turay.

10   Uber's Proposed Instruction:

11   Plaintiff's first claim is negligence. Plaintiff claims Uber was at fault.

12   Fault is negligence that was a cause of Plaintiff's injury.

13   Negligence is the failure to use reasonable care to prevent a foreseeable risk of injury to the

14   plaintiff. Negligence may consist of action or inaction. Negligence is the failure to act as a

15   reasonable person would act under the circumstances.

16   **Plaintiff's Position**:

17   The parties dispute three elements of the negligence instruction.

18   **Comparative Fault**. The jury must be instructed on comparative fault on the part of both
     Plaintiff and the driver. At trial Uber will seek to blame Plaintiff and Mr. Turay for the injuries
19   suffered by Plaintiff.[29] Already, Uber seeks an (improper) superseding cause instruction that Mr.
     Turay's conduct was the sole cause of the harm. And Uber does not concede that Mr. Turay sexually
20   assaulted Plaintiff, instead insinuating that Plaintiff is responsible for her own harm to some degree.

21   In Arizona, Uber's position makes this "a comparative fault case," i.e., "one with a claim
     by any party that someone other than, or as well as, a single defendant is at fault." RAJI FI 5, use
22   note. And under "Arizona's comparative-fault scheme, the trier of fact consider[s] the fault of all
     persons who contributed to the harm, and each person is responsible for only his or her percentage
23   of fault and no more." *Szigeti v. Marana Health Ctr., Inc.*, 2014 WL 6654023, at *3 (Ariz. App.
     Nov. 24, 2014); *see also* A.R.S. § 12-2505 ("The defense of contributory negligence … is in all
24   cases a question of fact and shall at all times be left to the jury.").

25   Uber is trying to have it both ways: admitting evidence and argument showing Plaintiff or
     driver fault, but preventing the jury from evaluating that evidence, making findings, and assigning
26

----

27   [28] RAJI Fault 1, subject to the parties' competing proposed modifications.

28   [29] Plaintiff does not seek a comparative-fault instruction merely because Uber pleaded the defense;
     rather, her expectation (which Uber does not deny) is that Uber will support the defense with
     evidence and argument at trial.

comparative responsibility. Uber invites an inappropriate up-or-down liability determination based on facts that really go to relative fault. That would mislead the jury to treat this case as a contributory negligence case, but Arizona has abolished contributory negligence in favor of comparative fault.

In both cases Uber cites holding an affirmative-defense instruction inappropriate, the courts reached that result only because the defendant did not seek to mislead the jury by offering evidence or argument supporting the defense. *See Davis v. Foust*, 2025 WL 605882, at *3 (Ariz. App. Feb. 25, 2025) (permissible to refuse to instruct on comparative fault only "in the absence of supporting evidence at trial"); *Timmons v. City of Tucson*, 830 P.2d 871, 877 (Ariz. Ct. App. 1991) (explaining that "a jury instruction is warranted by the presentation of *evidence* supporting it," but rejecting the plaintiff's contention "that the evidence justified the instruction" where the defendant did not seek to admit the relevant "evidence" or rely on it in "testimony").

If the Court does not give comparative fault instructions, then it must preclude Uber from offering argument or evidence going to comparative fault. That means Uber cannot blame Plaintiff or the driver. In *Daley v. Gen. Motors Corp.*, 20 Cal. 3d 725 (1978), the court, applying a parallel comparative-fault scheme under California law, confronted a similar situation. In that case, the trial court failed to instruct on comparative fault, but admitted evidence that the decedent contributed to his own injuries through his "failure to use available safety devices and of his intoxication," *Id.* at 744. The court reversed a defense verdict, finding that admission of such evidence permitted "a thinly disguised subversion of the rule that contributory negligence does not prevent recovery." *Id.* at 745. The court expressed concern that the jury was not instructed on what it was supposed to do with the evidence: "In the absence of any such restrictions, we think the jury could well have concluded that decedent's … negligent conduct … completely barred recovery for his death." *Id.*

Finally, even if the Court agrees with Uber that a superseding cause instruction is both appropriate and replaces any comparative-fault inquiry as to Mr. Turay, that says nothing about whether Uber may blame *Plaintiff* and avoid a comparative fault instruction as to her. Uber makes virtually no arguments as to why it may blame Plaintiff at trial and improperly invite the jury to deny liability on that basis.

**Instructing on "Foreseeable Risk of Injury."** Arizona does not instruct juries that negligence extends only to "foreseeable risk of injury." Rather, the pattern instruction asks whether conduct "helps produce an injury, and if the injury would have happened without the negligence." RAJI FAULT 6; *see also, e.g.*, *Ritchie v. Krasner*, 211 P.3d 1272, 1283-84 (Ariz. App. 2009) (finding no abuse of discretion in giving pattern causation instructions). Arizona courts, in rejecting foreseeability as a factor in assigning duty, state that "courts … may still use foreseeability in determining whether the injury is foreseeable (breach and causation)." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 828 (Ariz. 2018). But the fact that concepts of foreseeability inform the scope of negligence claims does not mean that the jury is instructed in that term; the Arizona pattern instructions confirm they are not. This is standard: in California, for example, negligence is bounded by foreseeability, *see, e.g.*, *Carter v. Amtrak*, 63 F. Supp. 3d 1118, 1146 (N.D. Cal. 2014), but California jury instructions similarly do not include the term, *see* CACI 400.) *See Cavallo v. Phoenix Health Plans, Inc.*, 518 P.3d 759, 766 (Ariz. 2022) (citing authority where "the trial court properly refused a proposed instruction because it would 'only heighten the confusion of the jury in an already sufficiently confused area'").

Uber seeks to clutter the jury instructions with (1) an instruction that the injury must be foreseeable and (2) as discussed below, a superseding-cause instruction that the injury cannot be *too* unforeseeable. Arizona pattern instructions require the jury to find breach and causation. A party is not entitled to instructions for the sake of instructions. *See, e.g.*, *Yang v. ActioNet, Inc.*, 2017 WL 2117028, at *9 (C.D. Cal. Jan. 23, 2017) (rejecting proximate cause instruction "because it is redundant of the cause of action instructions requiring the jury to find that Defendant's own affirmative conduct either caused or was a substantial factor in causing Plaintiff's harm"). And the court "properly refuse[s] a proposed instruction" where "it would

1   'only heighten the confusion of the jury in an already sufficiently confused area." *Cavallo v.*
2   *Phoenix Health Plans, Inc.*, 518 P.3d 759, 766 (Ariz. 2022) (citation omitted).

3       **Scope of Duty**. Plaintiff proposes that the negligence instruction state that "Uber was
    required to use reasonable care to protect Plaintiff while using the Uber service, including from
4   being harmed by the driver, Mr. Turay." In this case, although Uber's conduct is measured by the
    reasonable-care standard, the scope of the duty includes an affirmative duty of protection. Uber
5   seeks to confuse the jury as to the scope of its duty, for example asking for a superseding cause
    instruction (discussed below). Uber likely at trial will ask the jury to find reasonable care even if
6   Uber completely abdicated its duty of protection.

7       Uber owes an affirmative duty of protection under both voluntary-undertaking and
    common-carrier theories. As to voluntary undertaking, "[o]ne who undertakes, gratuitously or for
8   consideration, to render services to another which he should recognize as necessary for the
    protection of the other's person or things, is subject to liability to the other for physical harm
9   resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure
    to exercise such care increases the risk of such harm, or (2) the harm is suffered because of the
10  other's reliance upon the undertaking." *Guerra v. State*, 348 P.3d 423, 425 (Ariz. 2015) (quoting
    Restatement (Second) of Torts § 323 (1965)). Here, as explained in Plaintiff's summary judgment
11  opposition, Uber affirmatively promoted itself as offering safe transportation services, including
    ensuring its drivers were safe. *See* ECF 4622-2 at 2-3, 28. Having undertook to provide services it
12  should have recognized as necessary to protect passengers like Ms. Dean, Uber owed a duty to act
    with reasonable care, specifically in "perform[ing its] undertaking."[30]

13      As to common-carrier, although the Arizona Supreme Court eliminated the "highest
    standard of care" for common carriers, it remains Arizona law that common carriers have "broader
14  duties … than … ordinary actors" do, including a duty to avoid harms created by third parties.
    *Nunez v. Prof. Transit Mgmt. of Tucson, Inc.*, 271 P.3d 1104, 1108 (Ariz. 2012) ("[C]ommon
15  carriers have a special relationship with passengers," which "imposes a duty to avoid harm from
    risks created by the individual at risk as well as those created by a third party's conduct."); *see also*
16  *id.* ("Because common carriers have a special relationship with passengers, their duties traditionally
    have extended beyond the mere obligation not to create a risk of harm."); *Ft. Lowell-NSS Ltd.*
17  *P'ship v. Kelly*, 800 P.2d 962, 967 (Ariz. 1990) (quoted with approval in *Nunez*) (common carriers
    "are often held to possess an affirmative duty to guard the safety of their [passengers]"). Uber's
18  position contradicts *Nunez* and the Restatement section and precedents the court relied on.

19      A common carrier is a company that offers transportation to the public for money. *See, e.g.*,
    *Las Vegas Hacienda, Inc. v. C.A.B.*, 298 F.2d 430, 434 (9th Cir. 1962) ("[T]he dominant factor in
20  fixing common carrier status at common law is the presence of a 'holding out' to transport the
    property or person of any member of the public who might choose to employ the proffered
21  service."); *see also Lowrey v. Montgomery Kone, Inc.*, 42 P.3d 621, 626 n.7 (Ariz. App. 2002)
    (citing general common law principles); *Orcutt v. Tucson Warehouse & Transfer Co.*, 318 P.2d
22  671, 673 (Ariz. 1957) ("The law will look to the real transaction, and if the contract be, in fact, one
    for transportation, the undertaking will be considered as that of a common carrier."). As explained
23  in opposition to partial summary judgment and will be shown at trial, Uber holds itself out to the
    public as a transportation provider and vouches for the safety of its rides. *See* ECF 4622-2 at 2-3.

24      Uber contends that Plaintiff did not pursue a negligence claim based on breach of a
25  common-carrier's duty. That is incorrect. Plaintiff did not pursue heightened, vicarious, or non-
    delegable common-carrier liability in Arizona, but did pursue all available negligence theories. *See*
26

27  _____
    [30] Uber cites one Arizona case for the claim that its Terms of Use eliminated any such duty, but in
    that case the plaintiff had no evidence other than her own "statement" that the defendant undertook
28  a duty. *Bishop v. State*, 837 P.2d 1207, 1211 (Ariz. App. 1992). Uber cites *Faroualt v. Am. Aviation*
    *Inc.*, 2025 WL 2322771 (D. Ariz. Aug. 12, 2026), but that case did not involve any safety
    representations or commitments at all. *Id.* at *4 (merely "offer[ing] the flight").

MC ¶ 363(j) (pleading special relationship); ECF 1932 at ¶ 5 (dismissing only "non-delegable duty" claim). In any event, a complaint need not plead legal theories and can be amended even after trial. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011); Fed. R. Civ. P. 15. Uber cannot claim any surprise: the core facts are uniform nationwide.

**Uber's Position**:

**Comparative Fault:** Plaintiff's proposed instruction essentially seeks to force Uber to assert a comparative fault defense that it does not intend to pursue and in doing so disregards both Uber's position and the numerous cases in Arizona holding that it is error to instruct on comparative fault when the defendant is not asserting comparative fault as a defense.

Arizona law is clear: a plaintiff cannot "determine the nature of her opponent's defense and insist that the jury be instructed accordingly." *Timmons v. City of Tucson*, 830 P.2d 871 (Ariz. Ct. App. 1991). Courts have found reversible error in such circumstances where the jury was instructed on a defense over the defendant's objection. *E.g.*, *id.* ("reversible error" occurred where jury was instructed over defendant's objection on defense the defendant raised in "pretrial statement that it abandon[ed] prior to trial"); *Ong v. Pepsi Cola Metro. Bottling Co.*, 503 P.2d 415, 418 (Ariz. Ct. App. 1972) ("Under Arizona law it is reversible error for a trial court to give an instruction on a legal theory which is not supported by evidence even if such theory is raised by the pleadings."); *see also Davis v. Foust*, No. 1 CA-CV 24-0383, 2025 WL 605882, at *3 (Ariz. Ct. App. Feb. 25, 2025) ("Application of comparative-fault principles is not triggered unless a party asserts the defense of contributory negligence . . . . The court commits reversible error if it instructs the jury on an abandoned defense for which supporting evidence was not presented").[31] That precedent decides this issue. Uber does not intend to assert a third-party or contributory fault defense at trial. Instead, it will argue that Hassan Turay's conduct was the superseding cause of Plaintiff's alleged harm.

Plaintiff is also wrong that Uber's assertion that Turay's conduct was a superseding cause necessarily invokes comparative fault principles. By Plaintiff's reasoning, any defendant that asserts a superseding cause defense must also suffer an instruction to the jury on comparative fault because the superseding cause defense necessarily asserts "'that someone other than, or as well as, a single defendant is at fault,'" *see supra* (quoting RAJI FI 5). But that is not right. These defenses are separate, and a defendant's assertion of one does not require it to maintain both. That is because superseding cause negates causation entirely, which "operates to cut off" the liability of a defendant otherwise found negligent by a jury, meaning there is "no apportionment of comparative fault." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837-38 (1996).[32]

**Foreseeability:** Plaintiff does not dispute that foreseeability is the *sine qua non* for breach in Arizona: "The general test for whether a defendant's conduct breached the standard of care is whether a foreseeable risk of injury existed as a result of defendant's conduct." *Robertson v. Sixpence Inns of Am.*, 789 P.2d 1040, 1045 (Ariz. 1990). In other words, "foreseeability . . .

---

[31] Plaintiff's argument that this precedent is inapposite because there was no evidence in the record to support a contributory or comparative fault defense ignores the clear language in the cases that "[a]pplication of comparative-fault principles is not triggered unless a party ***asserts the defense***." *Davis*, 2025 WL 605882, at *3 (emphasis added).

[32] For that reason, the nearly 50-year-old California case on which Plaintiff relies (*Daley v. Gen. Motors Corp.*, 20 Cal. 3d 725, 744 (1978), cited *supra*) is inapposite. It simply adopted comparative fault principles for product liability cases in California. It did not address the relationship between comparative fault and superseding-cause principles.

1  dictate[s] . . . the extent of the conduct necessary to fulfill the duty," *Gipson v. Kasey*, 150 P.3d
2  228, 231 (Ariz. 2007), and therefore "[j]uries should engage in a foreseeability analysis to help
   determine the issue[] of breach," *Ritchie v. Krasner*, 211 P.3d 1272, 1282 (Ariz. Ct. App. 2009).
3  That rule carries special force in cases alleging third-party criminal conduct: "If the possibility of
   [a criminal attack] from Defendant's acts or omissions was not foreseeable, Defendant was not
4  negligent." *Martinez v. Woodmar IV Condominiums Homeowners Ass'n, Inc.*, 189 Ariz. 206, 211,
   941 P.2d 218, 223 (Ariz. 1997) (en banc).

5       Plaintiff argues that the jury should not be instructed on this rule because it is not included
6  in the RAJI (Civil) pattern instructions, but that is no argument at all. The RAJI are drafted by a
   state bar committee and are neither "binding" nor "sanctioned by [the Arizona Supreme Court]."
7  *State v. Miller*, 485 P.3d 554, 558 (Ariz. 2021). Even when the Arizona Supreme Court approved
   them, "[t]he RAJI . . . [were] not authoritative on Arizona law" and the Court's approval "was not
8  an endorsement that the instructions were free from error." *Wareing v. Falk*, 897 P.2d 1381, 1387
   (Ariz. App. 1995) (quotation omitted); *see State v. Larin*, 310 P.3d 990, 1000 (Ariz. Ct. App. 2013)
9  ("courts are not required to follow the RAJI"). This Court is bound to correctly instruct the jury on
   Arizona law as authoritatively stated by the Arizona Supreme Court—not as synthesized by a
10 nonjudicial committee. In so doing, the Court is not bound to any "particular formulation or
   wording," but rather has "broad discretion in formulating jury instructions . . . to ensure that the
11 jury fully understands the issues." *Alozie v. Arizona Bd. of Regents*, 562 F. Supp. 3d 203, 215 (D.
   Ariz. 2021).

12      Plaintiff does not dispute that Uber's proposed foreseeability language correctly states
13 Arizona law and does not explain how correctly instructing the jury on this issue would "heighten
   the confusion." The true threat of confusion would arise from leaving the jury to treat foreseeability
14 as optional and hold Uber liable for failing to prevent an unforeseeable harm when Arizona law is
   clear that "foreseeability . . . dictate[s] . . . the extent of the conduct necessary to fulfill the duty."
15 *Gipson*, 150 P.3d at 231.

16      Plaintiff's analogy to CACI supports Uber's instruction, not Plaintiff's. CACI includes a
   foreseeability instruction on breach for cases involving injurious third-party conduct:  "Every
17 person has a right to expect that every other person will use reasonable care [and will not violate
   the law], ***unless that person knows, or should know, that the other person will not use reasonable
18 care [or will violate the law]***." CACI 411. Uber's proposal to instruct the jury that its duty to use
   reasonable care is delimited by foreseeability aligns with that instruction, accurately states Arizona
19 law, and would inform rather than confuse the jury.

20      **Scope of Duty**:  Plaintiff premises her "duty to protect" instruction on a common carrier
   theory that she has repeatedly waived and a voluntary-undertaking theory that the evidence does
21 not support.

22      Finding common carrier status would not merit a departure from the negligence pattern
   instruction because "the appropriate standard of care in negligence actions by passengers against
23 common carriers is the objective, reasonable person standard in traditional negligence law." *Nunez*,
   271 P.3d at 1109. Regardless, Plaintiff has repeatedly waived common carrier claims. The Master
24 Long-Form Complaint states that "Uber owed a duty as a common carrier to protect passengers
   under the laws of states **except** the following: Arizona…." ¶ 363(l). Plaintiff's bellwether complaint
25 incorporates that allegation and mentions "common carrier" only in declining to assert a claim for
   "Common Carrier's Nondelegable Duty to Provide Safe Transportation." Am. Compl. (Dkt. 2506),
26 at 1, 5 ¶ 30. And Plaintiff has stipulated that she will not pursue a claim for breach of a "common
   carrier's nondelegable duty." Stipulation and Order, (Dkt. 1932) at 2 ¶ 5. Plaintiff now argues she
27 stipulated only to "not pursue heightened, vicarious, or non-delegable common-carrier" duties, but
   the Master Long-Form Complaint disavowed common carrier duties in Arizona, full stop, and her
28 stipulation contains no such qualifications, disclaiming common-carrier claims using the same the
   same phrase Plaintiffs have used throughout this litigation to refer to generically common carrier

                                                                    - 40 -

1    claims. *E.g.*, Master Long-Form Complaint at 73.

2        Plaintiff's assertion that "Uber has not disputed that it is a common carrier under Arizona
law" strategically exploits Plaintiff's own waiver. Uber has consistently maintained in this MDL
3    that it is not a common carrier and absolutely disputes that it is a common carrier.. *See, e.g.*, Reply
ISO Mots. to Dismiss (Dkt. 538) at 19 n. 9 ("Uber does not concede that . . . it is a common carrier");
4    Mot. to Dismiss Master Long-Form Compl. (Cal.) (Dkt. 384) at 6 ("Uber is not a common carrier,
but it does not matter for this Motion.").[33] But Uber has not moved for summary judgment or
5    developed a trial record on these issues in this case because Plaintiff has repeatedly and
unambiguously waived them. Plaintiff cannot undo her waivers on the eve of trial, after summary
6    judgment has been briefed and witnesses and exhibit lists have been submitted. *See Acri v. Int'l
Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("late amendments
7    to assert new theories are not reviewed favorably when the facts and the theory have been known
to the party seeking amendment since the inception of the cause of action").

8

9        Plaintiff's negligent undertaking theory fails because a negligent undertaking "requires
affirmative, deliberate conduct" showing that Uber "***specifically*** undertook to perform that [it] is
10   tasked with having performed negligently." *Dabush v. Seacret Direct LLC*, 478 P.3d 695, 703
(Ariz. 2021) (cleaned up; emphasis added). Specificity is essential: "[P]ublic statements espousing
11   aspirational goals, statements of generic intent, or statements vowing or acknowledging . . . a duty
do not constitute promises that would create a legal duty based on a voluntary undertaking." *In re
12   Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, & Prods. Liab. Litig.*, 553 F.
Supp. 3d 211, 229-30 (D.N.J. 2021); *McCants v. Nat'l Collegiate Athletic Ass'n*, 201 F. Supp. 3d
13   732, 739-44 (M.D.N.C. 2016) (general public statements are insufficient to constitute a voluntary
undertaking). Plaintiff's vague assertion that Uber "promoted itself as offering safe transportation
14   services" lacks the requisite specificity. *See Farouault v. Am. Aviation Inc.*, No. CV-24-08159-
PHX-SPL, 2025 WL 2322771, at *4 (D. Ariz. Aug. 12, 2025) (tour operators undertake no duty to
15   passengers because "offering tour guide services and promoting a flight excursion are not for the
specific purpose of protecting another or their things from harm"). And the Terms of Service that
16   Plaintiff accepted expressly state that Uber "makes *no* representation, warranty, or guarantee" about
the "quality, suitability, [or] safety" of "third-party providers" like Turay.[34] *See, e.g., Bishop v.
17   State, Dep't of Corr.*, 837 P.2d 1207, 1211 (Ariz. Ct. App. 1992) (plaintiff "cannot establish that
defendants undertook a duty to travel" with students because "students were informed" that they
18   were "responsible for providing their own transportation"). Plaintiff cannot seize on "vaguely
promissory statements to the general public" and "generic expressions of intent" to expand the
19   scope of Uber's undertaking beyond its express contractual boundaries. *Ky. Laborers Dist. Council
Health & Welfare Trust Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 774 (W.D. Ky. 1998).

20

21

22

23

24

---

25   [33] Among other things, Uber itself does not itself *carry* anyone, operates a private network from
which it is free to exclude users, permits drivers to refuse ride requests as they see fit, and sets
26   prices dynamically without publishing them publicly. *See, e.g., Doe v. Uber Techs., Inc.*, 551 F.
Supp. 3d 341, (S.D.N.Y. 2021) (dismissing common carrier claim for failure to plead Uber offered
27   services to the general public).

28   [34] *See* Jonathan Schneller Declaration ISO Defs' Mot. for Partial Summ. J. ("Schneller Decl.")
(Dkt. 4356-1) Ex. 4 at –00001068.

JOINT AND CONTESTED PROPOSED
JURY INSTRUCTIONS
CASE NO. 3:23-MD-03084-CRB

**[Disputed] Negligence—Definition of Reasonable Care**

To determine whether Uber used reasonable care under the circumstances, you must consider whether a foreseeable risk of injury to the plaintiff existed as a result of Uber's conduct. If you determine that the danger to Plaintiff was unforeseeable to Uber, or that Uber had taken reasonable precautions to avoid the danger, then Uber's conduct was not negligent.

**Plaintiff's Position**:

In addition to adding "foreseeable risk" language to the pattern instruction above (p. 36), Uber proposes an additional instruction on the same point. Neither instruction is appropriate. Arizona does not instruct juries that negligence extends only to "foreseeable risk of injury. Rather, the pattern instruction asks whether conduct "helps produce an injury, and if the injury would have happened without the negligence." RAJI FAULT 6; *see also, e.g.*, *Ritchie v. Krasner*, 211 P.3d 1272, 1283-84 (Ariz. App. 2009) (finding no abuse of discretion in giving pattern causation instructions). Arizona courts, in rejecting foreseeability as a factor in assigning duty, state that "courts … may still use foreseeability in determining whether the injury is foreseeable (breach and causation)." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 828 (Ariz. 2018). But the fact that concepts of foreseeability inform the scope of negligence claims does not mean that the jury is instructed in that term; the Arizona pattern instructions confirm they are not. (Similarly, in California, negligence is bounded by foreseeability, *see, e.g.*, *Carter v. Amtrak*, 63 F. Supp. 3d 1118, 1146 (N.D. Cal. 2014), but California jury instructions similarly do not include the term, *see* CACI 400.) *See Cavallo v. Phoenix Health Plans, Inc.*, 518 P.3d 759, 766 (Ariz. 2022) (citing authority where "the trial court properly refused a proposed instruction because it would 'only heighten the confusion of the jury in an already sufficiently confused area'").

Uber seeks to clutter the jury instructions with (1) an instruction that the injury must be foreseeable and (2) as discussed below, a superseding-cause instruction that the injury cannot be *too* unforeseeable. Arizona pattern instructions require the jury to find breach and causation. A party is not entitled to instructions for the sake of instructions. *See, e.g.*, *Yang v. ActioNet, Inc.*, 2017 WL 2117028, at *9 (C.D. Cal. Jan. 23, 2017) (rejecting proximate cause instruction "because it is redundant of the cause of action instructions requiring the jury to find that Defendant's own affirmative conduct either caused or was a substantial factor in causing Plaintiff's harm"). And the court "properly refuse[s] a proposed instruction" where "it would 'only heighten the confusion of the jury in an already sufficiently confused area." *Cavallo v. Phoenix Health Plans, Inc.*, 518 P.3d 759, 766 (Ariz. 2022) (citation omitted).

Finally, language concerning whether "Uber had taken reasonable precautions to avoid the danger" is redundant to the agreed-upon negligence language in the immediately preceding instruction "Negligence—Statement of Claim."

**Uber's Position**:

As explained above, Uber is entitled to an instruction on the definition of "reasonable care," which under Arizona law is limited to preventing foreseeable risks of harm from Uber's conduct. Regardless of whether the Arizona pattern instructions specifically instruct on the importance of foreseeability to the jury's determination whether Uber exercised reasonable care, Uber's proposed instruction accurately states the law and will assist the jury in fully understanding the issues. *Alozie*, 562 F. Supp. 3d at 215; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("A party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.").

1

2                    **[Disputed] Negligence— Industry Custom & Practice**

3            You may consider customs or practices in the industry in deciding whether Uber acted

4    reasonably. Customs and practices do not necessarily determine what a reasonable person would

5    have done in Uber's situation. They are only factors for you to consider.

6            Plaintiff's Contingent Proposed Addition, Subject to Objection to Instruction in Total:

7            This is not to say that the actions or inactions of any other company are necessarily relevant

8    to your consideration of Uber's conduct in this case.

9    **Plaintiff's Position**:

10           Uber's proposed instruction should not be given. The instruction is not included in
     Arizona's pattern instructions (which is why Uber cites CACI), and apparently the only authority
11   Uber can find is a 1962 case *reversing* a jury verdict due to error and confusion in a custom
     instruction. *See Am. Smelting & Refining Co. v. Wusich*, 375 P.2d 364, 367 (Ariz. 1961). Uber cites
12   authority that industry customs are admissible, but a party is not entitled to a jury instruction on
     every piece of evidence on which it relies. *See DeLoach v. Hamlet*, 74 F. App'x 696, 698-99 (9th
13   Cir. 2003) ("A defendant is entitled to jury instructions that present the crux of its defense, but he
     is not entitled to specific instructions that pinpoint certain aspects of the defense or that suggest
14   conclusions from certain pieces of evidence."). Otherwise, Plaintiff would be entitled to
     instructions like "If you find that Uber should have known that matching Hassan Turay with
15   Jaylynn Dean created a risk that Mr. Turay would harm Ms. Dean, you must find Uber negligent."
     Or: "If you find that Uber's S-RAD program put Uber on notice of a risk that Mr. Turay would
16   harm Ms. Dean, you must find Uber negligent."

17           Uber's instruction is particularly inappropriate in this case because the nature of the
     "industry" is a fact dispute. Uber has an overwhelming share of the "rideshare" market—76%.[35]
18   *Cf. Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997) ("Courts
     generally require a 65% market share to establish a prima facie case of market power."). Uber may
19   argue to the jury that "no other rideshare company does" one thing or another, and the jury may
     decide, on its own, whether that evidence is persuasive. But the proposed instruction, by requiring
20   the jury to consider "customs or practices in the industry" as "factors," endorses the premise of
     Uber's argument—that its conduct should be judged against an "industry"—when, according to
21   Plaintiff, Uber *is* the industry. One-sided jury instructions are improper. *See United States v.
     Hensley*, 982 F.3d 1147, 1160 (8th Cir. 2020) ("We are troubled by the district court's use of one-
22   sided illustrative examples ….").

23           If the Court does give this instruction, it should include Plaintiff's contingent proposed
     addition. Uber's language instructs the jury that there *are* "customs or practices in the industry,"
24   which is a disputed question of fact. Plaintiff's contingent proposed addition ameliorates the
     prejudice in part.
25

26   **Uber's Position**:

27           "A party is entitled to an instruction about his or her theory of the case if it is supported by

28   [35] Michael Kaczmarski, *Uber vs. Lyft: Who's tops in the battle of U.S. rideshare companies*,
     Bloomberg Second Measure (Apr. 15, 2024), https://secondmeasure.com/datapoints/rideshare-
     industry-overview/

law and has foundation in the evidence." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff does not dispute that Uber's proposed instruction properly states the law of Arizona. And the arguments she does make lack merit.

First, Plaintiff asserts there is no pattern instruction in Arizona. But the Arizona Supreme Court has approved an instruction on custom, *see Am. Smelting & Refining Co. v. Wusich*, 375 P.2d 364, 368-69 (Ariz. 1962) (approving, with modifications, an instruction to the jury on the relevance of evidence of custom to the duty of care). Plaintiff complains about the age and procedural posture of the case, but she cites zero authority rejecting such an instruction. She also ignores that California has a pattern instruction on this issue, underscoring that that instructions on industry standards are commonly given and thus are not "one-sided" or overly-specific as Plaintiff contends (again without case law).

Second, Plaintiff contends that this is a special case because "Uber has an overwhelming share of the market." But Uber has found no authority—and Plaintiff cites none—that market leaders are not entitled to have a jury consider industry custom. Plaintiff is free to make the argument to the jury that a particular custom should be disregarded because it was established by Uber itself if the evidence supports such a contention.

Third, Plaintiff proposes a contingent modification to the instruction, which the Court should reject. Uber's proposed instruction correctly states that the jury "may" consider custom, not that it must. Thus, there is no need for Plaintiff's wordy admonition that such evidence is not "necessarily relevant."

In short, Uber's instruction accurately states the law and the Court should exercise its discretion to instruct the jury on the significance of industry custom and practice to "to ensure that the jury fully understands the issues." *Alozie v. Arizona Bd. of Regents*, 562 F. Supp. 3d 203, 215 (D. Ariz. 2021). It should therefore be given without modification.

1    **[Disputed]** Negligence—Definition of Causation

2    Plaintiff's Proposed Instruction:

3    Before you can find any person or party at fault, you must find that person or party's

4    negligence was a cause of Plaintiff's injury.

5    Negligence causes an injury if it helps produce the injury and if the injury would not have

6    happened without the negligence. There may be more than one cause of the injury.

7    Uber's Proposed Instruction:

8    Before you can find any party at fault, you must find that party's negligence was both a

9    factual and legal a cause of Plaintiff's injury.

10    Negligence causes an injury if it helps produce the injury and if the injury would not have

11    happened but for the negligence.

12    **Plaintiff's Position**:

13    Plaintiff's proposed instruction reflects the pattern instruction (RAJI Fault 6). Uber's

14    modifications reflect four errors.

15    **"Person or party" versus "party."** As discussed above (p. 36), Uber's evidence and
argument in this case will cast blame on both Plaintiff and Mr. Turay. Therefore, it is necessary the

16    jury understand it can assign fault to a "person" (Mr. Turay) or "party" (Plaintiff or Uber).

17    **"Factual and legal cause" versus "a cause."** Uber inserts this language not found in the
pattern instruction. But Arizona does not instruct juries on technical concepts like "legal cause."

18    Instead, the pattern instruction appropriately tells the jury that negligence must "help[] produce
the injury" and that the injury must "not have happened without the negligence." Those clear

19    explanations accurately reflect Arizona law. *See Salazar v. Wilson*, 2025 WL 2731545, at *3
(Ariz. App. Sept. 25, 2025) (affirming verdict, rejecting objection to pattern causation instruction,

20    and explaining that "the causation instruction mirrors how our supreme court has defined
causation for nearly a century"); *Ritchie v. Krasner*, 211 P.3d 1272, 1283-84 (Ariz. App. 2009)

21    (finding no abuse of discretion in giving pattern causation instructions); *Head v. Costco
Wholesale Corp.*, 2025 WL 3238211, at *14 (N.D. Cal. Nov. 2, 2025) (refusing "additional

22    language" to instruction that "is unnecessary and may, if anything, confuse the jury").

23    Uber suggests that modifying the causation instruction in this manner is justified by the
upcoming superseding cause instruction. Plaintiff objects to instructing on superseding cause. But

24    even if the Court disagrees, there is no reason to confuse the causation instruction as a preview of
a later instruction.

25    **"But for" versus "without."** Uber does not explain why the plain-language pattern
instruction is insufficient or why "but for" is "clearer phrasing."

26

27    **Omitting "There may be more than one cause of the injury."** In this case, Uber will put
on evidence and advance argument that either Plaintiff or Mr. Turay are responsible for Plaintiff's

28    injuries. It is crucial that the jury understand—as the Arizona pattern instruction states—that there
may be more than one cause of the injury. This is true whether or not the Court gives comparative-

- 45 -

1    fault instructions. When Uber seeks to blame Plaintiff, the jury must understand that even if she
2    contributed to her injuries, that does not mean Uber did not also do so. And it is true even if the
     Court gives a superseding cause instruction: if the jury decides Mr. Turay contributed to the harm,
3    but was *not* a superseding cause, it must understand that both Uber's conduct and Mr. Turay's
     conduct can be legal causes of the harm.

4    **Uber's Position**:

5        Plaintiff's proposal rests largely on her erroneous contention that she may impose a
6    comparative-fault instruction on Uber even though Uber does not intend to assert that defense at
     trial. A more detailed response to each of her assertions follows.

7        **"Person or party" versus "party."** Plaintiff's argument assumes that Uber seeks to impose
8    some share of fault on her and Hassan Turay, but Uber is not pressing either defense. Instead, it
     asserts a superseding cause defense. As such, only Uber's alleged "fault" is at issue.

9        **"Factual and legal cause" versus "a cause."** Uber proposes this modification to
10   underscore that, in a case where a superseding cause defense is asserted, the jury must consider not
     only the factual sequence of events underlying causation, but also the question whether the
11   superseding cause cuts off liability.

12       **"But for" versus "without."** Uber submits that "but for" is clearer phrasing than "without"
     because "but for" is widely understood to imply a causal nexus. *Cf., e.g.*, *Stearney v. United States*,
13   392 F. Supp. 3d 1037, 1053 (D. Ariz. 2019) (equating "but for" with the Arizona standard for
     causation; "'Actual' or 'but for' cause 'exists if the defendant's act helped cause the final result and
14   if that result would not have happened without the defendant's act.'") (applying Arizona law). In
     any event, Plaintiff does not dispute that "but for" is accurate, and she identifies no drawback or
15   prejudice to making this modification.

16       **Omitting "There may be more than one cause of the injury."** The "more than one cause"
     language sought by Plaintiff appears only in the pattern instruction for cases in which comparative
17   fault is asserted (*see* RAJI FI 6); it does not appear in the pattern causation instruction for cases in
     which comparative fault is not asserted (*see* RAJI FI 2). Uber is not asserting a comparative-fault
18   defense in this case, as discussed above. Plaintiff's assertion that the jury needs to be instructed on
     the possibility of more than one cause in light of Uber's planned superseding cause defense is
19   entirely backward. As discussed above, the nature of the superseding cause defense is that it negates
     causation entirely. *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837-38 (1996). Reading this
20   "more than one cause" instruction to the jury would therefore be unduly confusing because it does
     not fit the theory of the case.

21

22

23

24

25

26

27

28

**[Disputed] Negligence—Superseding Cause**

Uber's Proposed Instruction:[36]

Plaintiff must show there was a natural and continuous sequence of events stemming from Uber's alleged act or omission, unbroken by any superseding cause, that produced the injury, in whole or in part, and but for which the injury would not have occurred. A "superseding cause" is an unforeseeable independent cause that occurs between the original negligence and the final harm, is necessary in bringing about that harm, and may be described, with the benefit of hindsight, as extraordinary.

Plaintiff's Contingent Proposed Instruction, Subject to Objection to Instruction in Total:

Plaintiff must show there was a natural and continuous sequence of events stemming from Uber's alleged act or omission, unbroken by any intervening and superseding cause, that produced the injury, in whole or in part, and without which the injury would not have occurred.

An "intervening cause" is an independent cause that occurs between the original act or omission and the final harm and is necessary in bringing about that harm.

An intervening cause becomes a "superseding cause," thereby relieving Uber of liability for design defect, when the intervening cause was unforeseeable, and may be described, with the benefit of hindsight, as extraordinary. Foreseeability of the intervening cause is assessed from Uber's standpoint.

Hassan Turay's conduct is not a superseding cause if Uber's conduct increased the foreseeable risk of a particular harm occurring through Mr. Turay. Mr. Turay's conduct can be a superseding cause only if it was independent of Uber's conduct.

**Plaintiff's Position**:

**No Superseding Cause Instruction is Appropriate**. Uber's conduct and Turay's conduct are part of a single causal chain. An "intervening force is not a superseding cause if the original actor's negligence creates the very risk of harm that causes the injury." *State v. Slover*, 204 P.3d 1088, 1093 (Ariz. App. 2009) (affirming refusal to give jury instruction, noting same rules apply in civil cases). Nor can an "intervening cause [] be considered a superseding cause when the defendant's conduct increases the foreseeable risk of a particular harm occurring through a second actor." *State v. Aragon*, 473 P.3d 358, 360-61 (Ariz. App. 2020) (finding reversible error

---

[36] Modified based on instruction approved in *Dupray v. JAI Dining Servs*, 432 P.3d 937, 944-45 (Az. App. 2018).

in giving superseding-cause instruction), *aff'd on other grounds*, 505 P.3d 657 (Ariz. 2022).[37] Uber cites *Dupray*, but that case confirmed that "[a]n event that contributes to the injuries" can be "intervening and superseding" only if it "was *independent of*[] the original negligent act." *Dupray v. JAI Dining Servs. (Phoenix), Inc.*, 432 P.3d 937, 945 (Ariz. App. 2018) (emphasis added). The court there ordered a superseding cause instruction only because of a downstream, independent chain of events: an overserved person going home and then going back out again. *See Nyerges v. Hillstone Rest. Grp., Inc.*, 2021 WL 3299625, at *27 (D. Ariz. Aug. 2, 2021) (*Dupray* and similar dram-shop cases involved "independent and unpredictable" third-party decisions).

The whole basis for this case is that Turay's actions were not "independent"—that Uber *hired* him to transport Plaintiff safely. *See State v. Cepeda*, 2020 WL 2203571, at *1 (Ariz. App. 2020) (affirming refusal to give superseding cause instruction "given the direct relationship" between the defendant and the person committing the conduct asserted to be an intervening cause). Uber argues that it did not create a risk of assault, but instead "failed to prevent the alleged assault." But Uber *affirmatively* put Mr. Turay and Ms. Dean in the car together; by definition it created the risk he would assault her. Uber's position makes no sense in light of its *defense*: Uber publishes safety reports documenting hundreds of thousands of sexual misconduct incidents and maintains a special sexual-assault response team (and will tout doing so); this is not a case involving a risk that the defendant had *no* reason to anticipate.

The decision in *Slover* is, contrary to Uber's position, directly on-point. Just as "the risk of a drunk-driving victim's death … is indisputably a foreseeable risk of … driving while intoxicated," so too is the risk of being sexually assaulted by an Uber driver is indisputably a foreseeable risk of matching rides known to carry a heightened risk of sexual assault by Uber drivers. That's not just a foreseeable risk; it's the *only* relevant risk. Uber's proposed instruction also makes no sense and would confuse the jury because, in this case, Uber owes a duty to protect Plaintiff from the very risk it now says is a superseding cause: a driver assaulting her. *See* p. 36, *supra* (discussing bases of Uber's duty). By definition, the occurrence of what one has a duty to prevent cannot be a superseding cause.

Unlike the cases Plaintiff cites involving jury instructions, Uber relies on *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.3d 1040 (Ariz. 1990), a case reversing summary judgment. *Robertson* said nothing about when a superseding cause instruction is appropriate. If anything, *Robertson* emphasized what later cases made explicit: that "the scope of risk created by defendant's original negligence may include the criminal conduct of a third person," such as where there is a "special relationship between defendant and another" or "where defendant's original conduct created or increased the risk of harm through the misconduct of another." *Id.* at 1048. Uber's citation to *Gipson v. Kasey*, 150 P.3d 228 (Ariz. 2007), adds nothing; it merely recited potential fact issues in negligence cases.

**If the Court gives any superseding cause instruction, it should include Plaintiff's contingent proposed additions.** Even if a superseding cause instruction were appropriate, Uber's proposed instruction is legally incorrect and confusing. *First*, Uber omits the requirement that a cause be "intervening" before it can be "superseding." Uber relies on *Dupray*, but *Dupray* instructed on *both* intervening and superseding as distinct elements. *Second*, the Court should instruct the jury, as *Aragon* and *Slover* make clear, that Turay's conduct cannot be a superseding cause if Uber's negligence increased the risk of that very conduct occurring. Uber says that "Plaintiff is free to argue to the jury that Uber foreseeable created the risk," but Uber resists telling the jury what to do with that fact if found.

_____

[37] Uber says that *Aragon* (which in turn relied on *Slover*) is not good law, but its judgment was affirmed on the grounds that the cause was not intervening; the case's analysis of what makes an intervening cause superseding remains good law.

**Uber's Position**:

Under Arizona law, "[i]n most cases, a jury as factfinder must decide" the question of "superseding cause." *Torres v. JAI Dining Servs. (Phoenix) Inc.*, 497 P.3d 481, 485 (Ariz. 2021). And case after Arizona case affirms that superseding cause remains a jury question even when the plaintiff asserts, as Plaintiff does here, that the defendant's conduct increased the risk of third-party misconduct as part of "a single causal chain."

The plaintiff in *Dupray*, for example, argued an intoxicated patron's drunk driving was foreseeable to the tavern that over-served him but the Arizona Court of Appeals held that the "trial court abused its discretion" in failing to provide "an instruction defining 'intervening cause' and 'superseding cause.'" 432 P.3d at 939-940. Plaintiff asserts *Dupray* is distinct because the accident was "independent and unpredictable," but independence and foreseeability is for the jury, not Plaintiff to decide. Similarly, in *Robertson v. Sixpence Inns of Amer., Inc.*, 789 P.2d 1040 (Ariz. 1990), the plaintiff argued a motel's "fail[ure] to furnish a safe place to work" created the risk that led to the guard's murder. *Id.* at 1042-43. Although the crime was "[a]rguably . . . within the scope of the risk [defendant] created," superseding cause was an "issue of fact for the jury." *Id.* at 1048-49. Plaintiff observes that *Robertson* did not analyze jury instructions but cannot escape its holding that superseding cause was a jury question. *See also, e.g.*, *Gipson v. Kasey*, 150 P.3d 228, 234 (Ariz. 2007) (decedent's use of illicit narcotics supplied by defendant "could preclude recovery if deemed a superseding cause of the harm, but those are determinations to be made by the factfinder").

Plaintiff's reckless-driving criminal cases, *Aragon* and *Cepeda*, are inapposite because they involved simultaneous negligence, as the Arizona Supreme Court emphasized in vacating the intermediate *Aragon* decision on which Plaintiff relies. *State v. Aragon* 505 P.3d 657, 662 (Ariz. 2022) ("Shelby's alleged acts and omissions cannot be intervening forces because they occurred simultaneously with Fontes' alleged excessive speeding."); *see id.* at 663 ("we vacate the court of appeals' opinion because it failed to analyze the predicate issue of whether Shelby's alleged acts and omissions were intervening events in the first place"); *see Cepeda*, 2020 WL 2203571, at *2 (victim's failure to wear a seatbelt not a superseding cause). And *Slover* held that an accident victim who drowned after suffering head injuries and exiting his car in a creek was not a superseding cause—but that is nothing like the intervening criminal act alleged here. *Slover*, 204 P.3d at 1093.

*Robertson* makes clear that the "risk-creation" rule of those cases does not apply in negligence. *See Cepeda*, 2020 WL 2203571, at *2 ("the decisions the jury is asked to make in a civil case are quite different than those the jury was asked to make here"). And even if it did, Plaintiff's contention that Uber created the risk by pairing her with Turay is just one of many negligence theories she is pursuing. Others—such as dashcams, GPS Alert, and failure to warn— seek to hold Uber liable for *failing to prevent* the alleged assault. Those risk-prevention theories would warrant a superseding cause instruction even under Plaintiff's inapposite criminal caselaw. Plaintiff is free to argue to the jury that Uber foreseeably created the risk by pairing her with Turay. If the jury agrees, it should have little difficulty concluding, under Uber's proposed instruction, that his alleged conduct was not a superseding cause. But Plaintiff's contention that one of her many negligence theories would not support a superseding cause instruction under vacated criminal caselaw is not a valid basis to take that question from the jury.

Uber's proposed instruction tracks the substance of the instruction approved in *Dupray*, 432 P.3d at 944. Plaintiff's proposed alternative is unnecessarily confusing. First, separately defining "intervening cause" risks confusing a lay jury and serves no discernible benefit given that the definition of superseding cause encompasses intervening cause. Second, like the instruction approved in *Dupray*, Uber's proposed instruction—which requires both unforeseeability and independence—already makes clear that a third-party act is not a superseding cause if Uber "increased the foreseeable risk of [that] particular harm occurring." A separate caution on risk-creation would therefore risk jury confusion with no countervailing benefit.

1

**[Disputed] Negligence—Burden of Proof**[38]

2

Plaintiff must prove:

3

    1. Uber was at fault;

4

    2. Plaintiff was injured; and

5

    3. Plaintiff's damages.

6

**Plaintiff's Position**:

7

This pattern instruction is confusing and unnecessary in a case, like this one, where Plaintiff asserts multiple claims resulting in a single injury. In general, the Arizona "fault" instructions

8

contemplate a single claim, with comments noting the need to modify to reflect multiple claims where applicable. *See* RAJI PLI 1, cmt. ("If the case is a comparative fault case, additional

9

transitioning and modification will be necessary to blend the Product Liability Instructions and Fault 5-11 Instructions). In a single-claim case, this instruction serves to transition from liability to

10

damages.

11

Earlier instructions will tell the jury it must find Uber negligent and that Uber's negligence caused injury. Those findings are sufficient to establish liability on the negligence claim. The jury

12

will be asked to determine damages at the end, after determining liability on all claims. Introducing the concept of damages now, when the jury is not being asked to calculate damages, is confusing.

13

**Uber's Position**:

14

15

This is a standard pattern instruction, and there is nothing in the commentary that suggests that it should not be read in a case involving multiple claims. The passage quoted by Plaintiff refers

16

to the need to modify language fault instructions *5 through 11* to fit product liability theories in a comparative fault case—it does not remotely suggest that this standard instruction (fault instruction

17

*3*) should be omitted entirely (or indeed that it should be altered at all in this case in which Uber is not asserting comparative fault). The instruction properly states Plaintiff's burden of proof on her

18

negligence claims, and that burden is not diminished merely because Plaintiff asserts other claims. Nevertheless, to address Plaintiff's stated concern, if Plaintiff wishes to clarify that, "In order to

19

prevail on her negligence claim, Plaintiff must prove" the listed elements, Uber does not object to that modification of the pattern.

20

21

22

23

24

25

26

27

28

---

[38] RAJI Fault 3.

1

**Negligence—Statement of Liability Issues[39]**

2          If you find that Uber was not at fault, then your verdict on Plaintiff's negligence claim must

3    be for Uber.

4          If you find that Uber was at fault, then Uber is liable to Plaintiff on Plaintiff's negligence

5    claim.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    [39] RAJI Fault 4. <mark>Plaintiff's Note</mark>: This pattern instruction applies where comparative fault is not at issue. As discussed above, comparative fault is at issue in this case. But Plaintiff does not object to

24    this instruction because the jury should be instructed on comparative fault only after being instructed on liability for all claims. *See* RAJI PLI 1, cmt ("If the case is a comparative fault case,

25    additional transitioning and modification will be necessary to blend the Product Liability Instructions and Fault 5-11 Instructions).

26

27    <mark>Defendant's Note</mark>: Comparative fault is not at issue in this case. Uber will not assert a comparative fault defense at trial and, as explained in its objection to Plaintiff's proposed instruction on "Negligence—statement of claim," Uber's inclusion of an apportionment/comparative fault

28    defense in its answer does not bind Uber to assert that defense at trial. *See Ong v. Pepsi Cola Metro. Bottling Co.*, 503 P.2d at 418-19; *Timmons v. City of Tucson*, 830 P.2d at 877.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Design Defect—Statement of Claim**[40]

Plaintiff claims that Uber was at fault for manufacture of a defective and unreasonably dangerous product.

Before you can find Uber at fault on this claim, you must find that Uber manufactured a product that was defective and unreasonably dangerous at the time it left Uber's control, and that the defect was a cause of Plaintiff's injury.

A defect causes injury if it helps produce the injury, and if the injury would not have happened but for the defect.

---

[40] RAJI PLI 1 (modified to remove references to sellers)

**[Disputed] Design Defect—Defect and Unreasonable Danger Defined[41]**

Plaintiff's Proposed Opening Paragraph:

Plaintiff claims that the Uber application contains a design defect.

Uber's Proposed Opening Paragraph:

Plaintiff claims that the Uber application contains a design defect. Plaintiff claims that the application has two design defects: (1) lack of an option to allow female passengers to be matched only with female drivers (i.e., "gender match"); and (2) lack of automatic video recording of rides and the time period immediately around them ("app-based ride recording").

A product is defective and unreasonably dangerous because of a design defect if the harmful characteristics or consequences of its design outweigh the benefits of the design.

A manufacturer is presumed to have known at all relevant times the facts that this trial has revealed about the harmful characteristics or consequences of the product's design, whether or not the manufacturer actually knew those facts. If you find that it would not be reasonable for a manufacturer, with such presumed knowledge, to have put this product on the market without changing the design, then the product is defective and unreasonably dangerous because of a design defect.

A product is also defective and unreasonably dangerous because of a design defect if it fails to perform as safely as an ordinary consumer would expect when the product is used in a reasonably foreseeable manner.

**Plaintiff's Position**:

Uber proposes including descriptions of the asserted defect, including short-hand that Plaintiff may or may not use at trial (for example, in Uber parlance, the first defect is known as "Women Preferences"). These descriptions are unnecessary and unhelpful. For example, the negligence instructions will not include descriptions of Plaintiff's various negligence theories (S-RAD, warning signs, cameras, etc.). Design defect should be no different.

**Uber's Position**:

Uber's proposal is consistent with the Court's defect-specific approach to determining whether Plaintiff's allegations sound in strict products liability. PTO 28 at 15 ("the key question for evaluating plaintiffs' products liability claims becomes whether the alleged 'defects' are really defects in the Uber app, or are they just problems with Uber's services (or with some other aspect of its business model) (citations, quotations, and alterations omitted)).

---

[41] RAJI PLI 3 (modified to remove references to sellers and to accident), subject to the parties' dispute.

1

2       Only two of Plaintiff's alleged product-defect theories survived dismissal under that
approach: "gender match" and "app-based ride recording"—using the labels applied in Plaintiff's
3   operative pleading. *See* Am. Compl. ¶¶ 62, 68.[42] Unless the jury is instructed on the specific
theories relevant to strict products liability, it could improperly impose design-defect liability based
4   on one or more of Plaintiff's "various negligence theories (S-RAD, warning signs, cameras, etc.),"
*see supra*, which this Court has already ruled cannot furnish the basis for Plaintiff's product-
5   liability claims as a matter of law. PTO 28 at 15-16.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

---

28   [42] As explained in Uber's motion for partial summary judgment, Plaintiff's gender-match theory
should be dismissed as well. *See* Dkt. 4356 at 17-19.

**[Disputed] Design Defect—Plaintiff's Burden of Proof**[43]

Plaintiff must prove:

1. Uber was a manufacturer of a product;

2. The product was defective and unreasonably dangerous;

3. The defect was a cause of Plaintiff's injury; and

4. Plaintiff's damages.

**Plaintiff's Position**:

This pattern instruction is confusing and unnecessary in a case, like this one, where Plaintiff asserts multiple claims resulting in a single injury. In general, the Arizona "product liability" instructions contemplate a single claim, with comments noting the need to modify the instructions where a case involved multiple claims. *See* RAJI PLI 1, cmt. ("If the case is a comparative fault case, additional transitioning and modification will be necessary to blend the Product Liability Instructions and Fault 5-11 Instructions). In a single-claim case, this instruction serves to transition from liability to damages.

Earlier instructions will tell the jury it must find the app defective, and that the defect caused injury. Those findings are sufficient to establish liability on the design-defect claim. The jury will be asked to determine damages at the end, after determining liability on all claims. Introducing the concept of damages now, when the jury is not being asked to calculate damages, is confusing.

Uber's proposed instruction also inappropriately includes the element that "Uber was a manufacturer of a product." It is undisputed that Uber manufactured the app. The Court already determined that, with the defect appropriately defined, the app can be a product, and Uber does not contend that issue raises any fact questions for the jury. *See* ECF 4732 (Joint Proposed Pretrial Order) at 3, 12 (disputed fact issues on design-defect claim). Because there is no fact dispute on this point, it is clear Uber seeks the instruction only to confuse the jury.

**Uber's Position**:

This is a standard instruction, and there is nothing in the commentary that suggests that it should not be read in a case involving multiple claims. The passage quoted by Plaintiff refers to the need to modify language *fault* instructions *5 through 11* to fit product liability theories in a comparative fault case—it does not remotely suggest that this standard instruction (RAJI *PLI 5*) should be omitted entirely (or indeed that it should be altered at all in this case in which Uber is not asserting comparative fault). The instruction properly states Plaintiff's burden of proof on her design defect claim, and that burden is not diminished merely because Plaintiff asserts other claims. Nevertheless, to address Plaintiff's stated concern, if Plaintiff wishes to clarify that, "In order to prevail on her design defect claim, Plaintiff must prove" the listed elements, Uber does not object to that slight modification of the pattern.

Plaintiff's additional objection to the standard language that she must prove that Uber manufactured a product is also misplaced. Plaintiff's objection is evidently premised on the concern that the jury will find it counterintuitive that Uber has "manufactured" any "product." But it was Plaintiff who chose to proceed on this ill-fitting cause of action; she must now carry her burden of persuading the jury that she can prove it. Nevertheless, Uber would agree to adding "or seller" after "manufacturer" if that resolves Plaintiff's objection. *See* A.R.S. § 12-681(5) (defining "product liability action" to mean "any action brought against a manufacturer or seller of a product").

[43] RAJI PLI 5 (modified to remove references to sellers).

1

**Design Defect—Statement of Liability Issues[44]**

2        If you find that Uber was not at fault for sale of a defective and unreasonably dangerous

3  product, your verdict on Plaintiff's design defect claim must be for Uber.

4        If you find that Uber was at fault for sale of a defective and unreasonably dangerous product,

5  and that product caused the injury alleged, then Uber is liable to Plaintiff and your verdict on

6  Plaintiff's design defect claim must be for Plaintiff.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[44] RAJI PLI 6 (modified to remove references to sellers and to specify "design defect claim")

**[Disputed] Design Defect—State of the Art**

You may consider the state of the art in determining whether the product was defectively designed at the time it was first distributed by Uber. "State of the art" means the technical, mechanical, and scientific knowledge of manufacturing, designing, testing, or labeling the same or similar products which was in existence and reasonably feasible for use at the time of manufacture. State-of-the-art evidence may be relevant to determine the expectation of the ordinary consumer or whether a product was unreasonably dangerous to the user.

**Plaintiff's Position**:

Through this instruction, Uber seeks to make out an affirmative defense without meeting its burden of proof. Arizona law provides for a "state of the art" affirmative defense: "In any product liability action, a defendant shall not be liable if the defendant proves …. the … designs for the products … conformed with the state of the art at the time the product was first sold by the defendant." A.R.S. § 12-683(1). Plaintiff offered to agree to this instruction if properly framed as an affirmative defense that Uber has the burden to prove. Uber declined.

Uber cites authority that industry standards are admissible, but a party is not entitled to a jury instruction on every piece of evidence on which it relies. *See DeLoach v. Hamlet*, 74 F. App'x 696, 698-99 (9th Cir. 2003) ("A defendant is entitled to jury instructions that present the crux of its defense, but he is not entitled to specific instructions that pinpoint certain aspects of the defense or that suggest conclusions from certain pieces of evidence."). Otherwise, Plaintiff would be entitled to special instructions on her evidentiary theories as well. For example: "Uber's use of Women Preferences in other countries may be relevant to determine whether the product was unreasonably dangerous to the user."

**Uber's Position**:

Once again Plaintiff seeks to require Uber to assert affirmative defenses it does not intend to pursue at trial. But in a design-defect case, state of the art remains relevant even if the defendant does not undertake to prove, as a complete defense, that the product in question was the state of the art. Arizona case law makes clear that, even in cases that do not involve a state-of-the-art defense, "state of the art . . . may be considered in determining whether a product is defective." *Hohlenkamp v. Rheem Mfg. Co.*, 134 Ariz. 208, 212, 655 P.2d 32 (Ct. App. 1982). Such evidence is relevant both to consumer expectations and evaluation of risk-utility. *See id.* ("State-of-art evidence helps to determine the expectation of the ordinary consumer.") (citation omitted); *id.* ("Industry standards have also been found to be admissible in strict liability cases on the ground that these standards often constitute substantive evidence on the strict liability issue of whether a product is in a defective condition, unreasonably dangerous to the user."). Uber's proposed instruction faithfully tracks this precedent and utilizes the definition of "state of the art" from the pattern instruction for the defense. *See* RAJI PLI 7 (for definition of "state of the art"). Notably, Plaintiff **does not even attempt** to argue that the instruction misstates the law in any particular.

Instead, Plaintiff rests solely on the argument that "a party is not entitled to a jury instruction on every piece of evidence on which it relies." But the state of the art does not relate to just a "piece of evidence." Rather, it will be an important question with respect to Plaintiff's design-defect claims, and the jury should be instructed on how to evaluate the relevance of such evidence, especially in light of the fact that design-defect claims are not expressly premised on the exercise of reasonable care and that the jury will be instructed that Uber is "presumed to have known at all

1   relevant times the facts that this trial has revealed about the harmful characteristics or consequences

2   of the product's design." *See* Design Defect—Defect and Unreasonable Danger Defined, *supra*.
    Uber's proposed state-of-the-art instruction goes directly to that issue by explaining to the jury that

3   the state of the art goes to what was "know[able] at all relevant times."

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 58 -

**[Disputed] Design Defect—Superseding Cause**

1

2      Uber's Proposed Instruction:

3      Plaintiff must show there was a natural and continuous sequence of events stemming from

4  Uber's alleged act or omission, unbroken by any and superseding cause, that produced the injury,

5  in whole or in part, and without which the injury would not have occurred. A "superseding cause"

6  is an unforeseeable independent cause that occurs between the original negligence and the final

7  harm, is necessary in bringing about that harm, and may be described, with the benefit of hindsight,

8  as extraordinary.

9      Plaintiff's Contingent Proposed Instruction, Subject to Objection to Instruction in Total:

10      Plaintiff must show there was a natural and continuous sequence of events stemming from

11  Uber's alleged act or omission, unbroken by any intervening and superseding cause, that produced

12  the injury, in whole or in part, and without which the injury would not have occurred.

13      An "intervening cause" is an independent cause that occurs between the original act or

14  omission and the final harm and is necessary in bringing about that harm.

15      An intervening cause becomes a "superseding cause," thereby relieving Uber of liability for

16  design defect, when the intervening cause was unforeseeable, and may be described, with the

17  benefit of hindsight, as extraordinary. Foreseeability of the intervening cause is assessed from

18  Uber's standpoint.

19      Hassan Turay's conduct is not a superseding cause if Uber's conduct increased the

20  foreseeable risk of a particular harm occurring through Mr. Turay. Mr. Turay's conduct can be a

21  superseding cause only if it was independent of Uber's conduct.

22  **Plaintiff's Position**:

23      As explained above beginning on p. 47, the Court should not give a superseding cause
   instruction in this case. Also as explained there, if the Court does give any superseding cause
24  instruction, it should give Plaintiff's version.

25      A superseding cause instruction is even less appropriate for a design defect claim than it
   would be for Plaintiff's negligence claim. The only point of the alleged defects here—Gender
26  Match and App-Based Ride Recording—is to *protect passengers from drivers*. If Uber can
   convince the jury that risks from drivers are shocking and extraordinary, then the app is not
27  unreasonably dangerous. Adding the concept of superseding cause is just confusing. Even more so
   when Uber seeks to omit the "intervening cause" element of the instruction.

28

1    In addition to all the reasons stated above with respect to the negligence claim, here Uber
2  does not cite a single case even discussing, let alone approving, a superseding cause instruction for
   a strict liability design defect claim. The only cases even mentioning superseding cause—*Long v.
3  TRW Vehicle Safety Sys., Inc.*, 796 F. Supp. 2d 1005, 1011-12 (D. Ariz. 2011)—merely denied
   summary judgment; it did not say anything about jury instructions. That a defendant is not entitled
4  to summary judgement does not mean that the defendant can put forward at trial sufficient evidence
   to support a superseding cause finding. The only Arizona Supreme Court case cited, *Robertson v.
5  Sixpence Inns of Am., Inc.*, 789 P.2d 1040 (Ariz. 1990), did not involve products liability at all.

6  **Uber's Position**:

7    Plaintiff's lead argument against a superseding cause instruction is that is "confusing"
   because the alleged defects supposedly relate to passenger protection. That argument is a non-
8  sequitur: Plaintiff must still show that the alleged defects, not Turay's intervening conduct,
   proximately caused her injuries. That is just as much an element of her product-liability claim as
9  her negligence claim. *See Wilson v. U.S. Elevator Corp.*, 972 P.2d 235, 237 (Ariz. Ct. App. 1998),
   *as corrected* (June 1, 1998).

10   The same test governs the factfinder's proximate-cause inquiry under either "strict liability
11 or negligence," i.e.: "The proximate cause of an injury is defined as 'that which, in a natural and
   continuous sequence, unbroken by any *efficient intervening* cause, produces an injury, and without
12 which the injury would not have occurred.'" *Nance v. Toyota Motor Sales USA, Inc.*, 2014 WL
   4702781, at *3 (D. Ariz. Sept. 22, 2014) (emphasis added) (quoting *Robertson*, 789 P.2d at 1047).

13   And as explained above, under that definition, "[t]he existence of proximate cause requires
14 consideration of all the facts" *and* "includes the question whether an *intervening and superseding
   cause exists*." *Dupray*, 432 P.3d at 943 (emphasis added; citation and quotation marks omitted).
15 Generally, the question "whether the alleged design defect proximately caused Plaintiff's
   injuries"—including whether "[a] superseding cause, sufficient to become the proximate cause of
16 the final result [operates to] relieve the defendant of liability"—presents a "triable issue" of fact for
   the jury. *Long v. TRW Vehicle Safety Sys., Inc.*, 796 F. Supp. 2d 1005, 1011-12 (D. Ariz. 2011).
17 Those principles apply equally here.

18   Plaintiff notes that Uber's cases do not address the propriety of jury instructions. But their
   holding that superseding causation is a question for the jury confirms that the jury must be
19 instructed on the applicable law. Further, the absence of case law addressing superseding cause in
   strict product-liability cases reflects the unprecedented nature of Plaintiff's theory: Uber is aware
20 of no Arizona-law case imposing strict product liability on a manufacturer or seller for failing to
   prevent a third-party from committing an intentional tort. But the unprecedented nature of
21 Plaintiff's claim does not displace core causation principles, including that Uber cannot be held
   liable for unforeseeable and extraordinary intervening crimes.

22

23

24

25

26

27

28

**[==Explanatory Note==] Vicarious Liability**

The parties dispute several substantive elements of Plaintiff's two vicarious liability claims (Employer Liability and Apparent Agency). As a result, the parties offer competing proposals for how to organize these instructions.

**Uber proposes instructing the jury in the following order:**

    1. Vicarious Liability—Introduction

    2. Definition of Employee vs. Independent Contractor

    3. Apparent Agency

    4. Vicarious Liability—Scope of Employment/Agency

**Plaintiff proposes instructing the jury in the following order:**

    1. Employer Liability—Introduction

    2. Employer Liability—Employee Status

    3. Employer Liability—Scope of Employment

    4. Apparent Agency

**[Disputed]** **[Plaintiff's Proposed Instruction] Employer Liability—Introduction; [Uber's Proposed Instruction] Vicarious Liability—Introduction**

Plaintiff's Proposed Instruction: Employer Liability—Introduction

Plaintiff's next claim is that Uber is liable because the driver Hassan Turray was its employee and Uber is responsible for his actions. To prove this claim, Plaintiff must establish:

1.    Hassan Turay was at fault for Plaintiff's injury.

2.    Hassan Turay was Uber's employee; and

3.    Hassan Turay was acting in the scope of this employment.

Hassan Turay was at fault if he was negligent and if his negligence was a cause of Plaintiff's injury, or if he acted intentionally to harm Plaintiff or with the substantial certainty harm would occur.

Uber's Proposed Instruction: Vicarious Liability—Introduction

Plaintiff's next claim is that Uber is liable because the driver Hassan Turay was its employee or apparent agent and Uber is responsible for his actions. To prove this claim, Plaintiff must establish:

1.    Hassan Turay was at fault for Plaintiff's injury.

2.    Hassan Turay was Uber's employee or apparent agent; and

3.    Hassan Turay was acting in the scope of this employment or apparent agency.

Hassan Turay was at fault if he engaged in a sexual encounter with Plaintiff without her consent, and those actions were a cause of Plaintiff's injury.

Plaintiff's Contingent Proposed Alternative Language to Uber's Instruction:

Hassan Turay was at fault if he was negligent and if his negligence was a cause of Plaintiff's injury, or if he acted intentionally to harm Plaintiff or with the substantial certainty harm would occur.

**Plaintiff's Position**:

There are two disputes here. ***First***, Uber proposes a single instruction to introduce vicarious liability because it contends that Plaintiff must prove for *both* an employer claim and an apparent agency claim that Mr. Turay acted within the scope of his employment. Plaintiff disagrees: a scope-of-employment element is part of only an Employer claim. Because the claims have different elements, they should be instructed separately. ***Second***, the parties also disagree on the language concerning Mr. Turay's conduct (a dispute that applies to both Employer and Apparent Agency

1    claims).

2    **Scope of Employment**. On the scope-of-employment issue, Uber is incorrect: that element
     applies only to an Employer Liability claim (as confirmed by the fact that it does not appear in the
3    pattern instructions for apparent agency, *see* RAJI AI 5.). Uber's reliance on this Court's holding
     in PTO 17 is misplaced.

4
     The Court held that apparent agency claims required that the acts in question *could be*
5    within the scope of authority—not that they actually were. *See* PTO 17 at 27 ("[T]he idea of
     'scope' does not come into the inquiry in the same way as in the respondeat superior analysis ….
6    This does not doom Plaintiffs' apparent agency theory in California, where Plaintiffs have
     plausibly pled that Uber *could be* vicariously liable for the driver's alleged torts.") (emphasis
7    added).

8    Uber's proposed requirement makes no sense because, under an apparent agency claim,
     there need not be any actual agency. So, the jury cannot analyze, for example, whether the acts
9    were "the kind that the [employee] [agent] was employed to perform" or whether the acts
     "occurred substantially within the authorized time and space limit of the [employment]
10   [authority]," RAJI SI 5, because, under this theory, Mr. Turay need not have been employed to
     perform any acts or been an agent at all. Requiring the jury answer hypotheticals is not what the
11   Court envisioned in PTO 17.

12   Under the Court's holding, Plaintiff's reliance need only be reasonably justified, meaning
     that the acts *could be* within the scope if the person were an actual agent. *See* PTO 17 at 27 n.9
13   ("In other words, there may not be a separate 'scope' inquiry, but scope still matters in the sense
     that one cannot reasonably believe that an agent has unlimited authority just because they seem
14   like an employee."). Here, Plaintiff claims she believed that it was Uber responsible for
     transporting her safely, not Mr. Turay independently. If that claim is proven, this does not mean
15   that Uber is "liable for *any* action taken by a person represented to be its agent"—instead, Uber is
     liable for actions taken that *could* be within the scope of the agency represented if Mr. Turay were
16   an *actual agent*. So, using the Court's example, had Mr. Turay "performed an appendectomy," *id.*
     at 27, then Plaintiff's claim would fail, because that conduct would be outside the scope of *any*
17   transportation-related agency. The jury would not get to decide whether an appendectomy gave
     rise to vicarious liability—Plaintiff would lose as a matter of law. Similarly, Uber argues that an
18   act of sexual assault can *never* be within the scope of transportation-related agency. That legal
     question is before the Court on summary judgment, but it does not present a fact question for the
19   jury.

20   Because the two vicarious liability claims—Employer Liability and Apparent Agency—
     have distinct elements, they should be instructed separately to avoid confusion.

21
     **Turay's Conduct**. The Court should adopt Plaintiff's proposed language. Uber's
22   language is wrong on both the facts and the law. By asking the jury to find a sexual assault, Uber
     seeks to manufacture confusion (and prime the jury to find no scope-of-employment): there is no
23   factual dispute that there was a sexual assault here. The victim in this case immediately reported
     the rape to the police and got a SANE exam. Even Mr. Turay acknowledges that Ms. Dean
24   pushed his hands away and tried to pull her shirt back on, which, as he also acknowledges, means
     there was no consent. Turay Dep. at 98:6-99:3. To be clear, Plaintiff's position is that the entire
25   incident was nonconsensual. But there is no universe where the facts in this case show a fully
     consensual encounter.

26
     As a legal matter, the jury must find some wrongdoing by Mr. Turay. But, especially
27   given the undisputed facts, there is no legal requirement of any degree of sexual contact without
     consent. Plaintiff's vicarious liability claims, if proven, make Uber liable for Mr. Turay's

28

1   negligence or recklessness as well as any intentional misconduct. Some level of fault is all that is required.

2

3   Even putting aside the undisputed facts about non-consent, this case is about Mr. Turay abusing his position of authority to exploit and take advantage of a passenger. Consent is irrelevant, just as it would be in a sexual harassment case. Uber itself recognizes that Mr. Turay's

4   alleged conduct is wrongful, regardless of consent: "Uber has a no-sex rule regardless of whether you know the person or they give you their consent."[45] This case is not a criminal prosecution of

5   Mr. Turay for rape, but a tort action against Uber based on vicarious liability for his conduct. For example, if this were a criminal action, the government would have to prove that Mr. Turay knew

6   Ms. Dean did not consent. *See* Ariz. Pattern Jury Instructions—Criminal § 14.06.01 ("Sexual Assault). But even Uber does not claim that requirement applies here.

7

8   Uber argues that there is no "yardstick" for the jury to determine whether Mr. Turay was negligent, but the jury was already instructed on the definition of negligence.

9   Finally, adopting Uber's proposed instruction would require the Court to instruct the jury on the concept of consent, including how the jury should evaluate the influence of alcohol. *See*

10  Ariz. Pattern Jury Instructions – Criminal § 14.01.07 ("Definition of 'Without Consent'"). The jury would need to be instructed that "without consent" includes where "[t]he victim is incapable

11  of consent by reason of … alcohol … and such condition is known or should have reasonably been known to the" driver. *Id.*

12

13  Uber wants to show that Ms. Dean caused her own injury. Uber may properly do so under the comparative fault framework that it resists.

14  **Uber's Position**:

15  Uber proposes a single instruction ("Vicarious Liability—Introduction") to frame the jury's vicarious liability inquiry, including both Plaintiff's employment and apparent agency theories.

16  The theories share key elements, including: (1) "negligent or tortious acts" by the Turay, *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Tr. of Phoenix, Inc.*, 5 P.3d 249, 254 (Ariz. 2000);

17  (2) a relationship supporting vicarious liability (whether employment or apparent agency); and (3) that the tortious acts by Turay occur "within the scope of his employment" or "authority" (for

18  agents). RAJI (Civil) SI 5 (7th ed.) (presenting employee's scope of employment, and agent's scope of authority as alternative bases for vicarious liability); Restatement (Second) of Agency § 219

19  (1958).

20  Plaintiff asserts that separate introductory instructions on employer liability and apparent agency should be given. But beyond incorrectly claiming that the two vicarious-liability theories

21  have separate elements, *see infra*, she does not explain why the two similar theories with overlapping elements should be introduced separately, which risks confusing the jury by requiring

22  it to hunt for relevant distinctions in largely repetitive instructions.   A single introductory instruction to vicarious liability better tracks the Arizona pattern instruction, which appropriately

23  frames employee liability and agency as alternative versions of the same concept. *See* RAJI (Civil) SI 5 (7th ed.).

24

25  **Scope of Employment.**  Plaintiff concedes that if sexual assault falls outside of the scope of employment/actual agency as a matter of law, then her apparent-agency claim fails. *See supra* at

26  62 (conceding requirement that "acts *could be* within the scope if the person were an actual

27

28  _____

    [45]   https://www.uber.com/us/en/safety/uber-community-guidelines/respect/?uclick_id=7b1a8174-758f-47a6-8feb-85a053e4e385

agent").[46] But according to Plaintiff, if there is a fact dispute on whether a particular sexual-assault falls within the scope of employment/agency, then the scope limitation vanishes for her apparent-agency claims. That outcome cannot be squared with the logic of PTO 17—which the parties stipulated "applies to Plaintiffs' apparent agency claims (G.2) under the laws of Arizona." ECF 1932 ¶ 12. As this Court explained: "It is indisputable that apparent authority must be based on the acts of the principal" and "*is limited to the scope of responsibility that is apparently authorized*." PTO 17 at 26 (emphasis added; citations and quotation marks omitted). "This implies a limit to the estoppel idea on which Plaintiffs hang their hats" when they argue that apparent-agency liability requires that "Plaintiff's reliance need only be reasonably justified, meaning that the acts *could be* within the scope if the person were an actual agent." PTO 17 at 26.[47] As PTO 17 put it, the relevant question is: "Did [Uber] do anything to suggest that the scope of the [driver's] authority include[ed]" his allegedly negligent or intentionally tortious actions? *Id.* at 27. Uber's proposed instructions properly frame that inquiry for the jury.

Plaintiff's argument that RAJI subsumes the scope inquiry as part of reasonable reliance is mistaken twice over. First, Plaintiff misunderstands the RAJI's structure: All vicarious liability theories—"employer," "actual agency (express or implied)," "apparent agency," or "agency by estoppel"—require Plaintiff to establish three common elements: (1) an underlying tort by an individual (2) the requisite relationship to the principal—i.e., an employment or agency relationship, and (3) conduct within the scope of the employment or agency. *See* RAJI (Civil) AI 2 (7th ed.); RAJI (Civil) SI 5. The "Apparent Authority" pattern instruction explains only how to "establish apparent agency"—one of the relationships that can support vicarious liability. *See* RAJI (Civil) AI 2. Second, the facts here underscore that instructing the jury on reasonable reliance will not adequately inform them on the scope requirement. In particular, Plaintiff could establish reasonable reliance by proving she relied on a representation of agency to enter Turay's vehicle, but it would not follow that Uber is liable for any and all torts Turay allegedly committed after she entered the vehicle, no matter how removed from his apparent authorization—there must be a nexus between Turay's apparent authority and his tort. As PTO 17 already explained, that nexus is enforced by the requirement that the tortious act fall within "the scope of responsibility that is apparently authorized." PTO 17 at 26. Uber's scope instruction is necessary to ensure that in such circumstances the jury does not impose apparent-agency liability for acts falling outside of Turay's alleged apparent authority.

**Turay's conduct**. Plaintiff's theory throughout this case was and remains "that she was raped by her Uber driver, Hassan Turay." *See supra* "[Disputed] Claims and Defenses." That sexual assault theory is squarely inconsistent with her proposal to instruct the jury only on Turay's negligence. Under Arizona law, "negligence and intent are mutually exclusive grounds for liability," and "if a defendant acts with the intent to cause a harmful or offensive touching (battery), that same act cannot constitute negligence." *Ryan v. Napier*, 425 P.3d 230, 236 (Ariz. 2018); *see id.* ("We . . . disagree with the trial court that negligent use of intentionally inflicted force is a cognizable claim."). Under *Ryan*, if the Court were to instruct the jury on the elements of the intentional torts Plaintiff has actually committed to proving at trial, it would have to instruct on the elements of battery and false imprisonment—not negligence. Uber's proposed instruction aims to simplify the jury's inquiry and avoid prolix instruction on those torts by instructing the jury only on the core factual dispute before it—whether Turay and Plaintiff engaged in a nonconsensual sexual encounter. If the Court concludes that it must instruct the jury on the formal elements of

---

[46] As explained in Uber's motion for summary judgment, sexual assault falls outside the scope of employment as a matter of law under Arizona law. *See* ECF 4356 at 15-17.

[47] Plaintiff says that apparent-agency claims cannot have a scope limitation, because "under an apparent agency claim, there need not be any actual agency …. [as] under this theory, Mr. Turay need not have been employed to perform any acts or been an agent at all." Plaintiff does not need to prove acts within the *actual* scope of employment or agency, but she *does* need to prove acts within the scope of the *apparent authority* she claims Uber caused Plaintiff to believe that Turay possessed.

1    Turay's alleged intentional torts, it should do so using the RAJI instructions for those torts. But
2    *Ryan* forecloses Plaintiff from repackaging her theory of intentional assault as negligence.

3    Plaintiff insists that she need not prove a lack of consent to establish Turay's fault, but,
     beyond saying that he "abus[ed] his position of authority to exploit and take advantage of" her,
4    does not even try to explain how Turay could be at fault if he and Plaintiff engaged in a
     consensual sexual encounter. Uber is aware of no authority recognizing an Arizona-law tort for a
5    consensual sexual encounter between two adults in any context, and Plaintiff cites none. More
     fundamentally, even if such a theory were cognizable in negligence, it would not permit Plaintiff
6    to assert that Turay sexually assaulted her while instructing the jury only on a negligence theory
     that is "mutually exclusive" with that allegation of intentional wrongdoing. *Ryan*, 425 P.3d at
7    236. If Plaintiff wants to proceed to trial on a new, nebulous, and legally unfounded abuse-of-
     authority theory, she is free to do so, but cannot simultaneously cloak intentional tort allegations
8    in the garb of negligence.

9    Finally, Plaintiff did not move for summary judgment on sexual assault and her belated
     contention that "there is no factual dispute that there was a sexual assault here" is plainly
10   mistaken. The factual record contains more than sufficient evidence from which a reasonable jury
     could conclude that a consensual sexual encounter took place between Plaintiff and Turay. *See,*
11   *e.g.*, Turay Dep. Tr. at 53:2-3 ("I believe it was consensual."), 130:2-7 ( "a lot of actions in that
     moment suggested there was consent"). Plaintiff must prove her theory that she was raped to the
12   jury, which must at minimum be instructed on its defining element—lack of consent.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Disputed] Competing Instructions Regarding Employee Status**

Plaintiff's Proposed Instruction: **Employer Liability—Employee Status**

Plaintiff must prove that Hassan Turay was Uber's employee.

In deciding whether Hassan Turay was Uber's employee, the most important factor is whether Uber had the right to control how Hassan Turay performed the work, rather than just the right to specify the result. One indication of the right to control is that the hirer can discharge the worker without cause. It does not matter whether Uber exercised the right to control.

In deciding whether Uber was Hassan Turay's employer, in addition to the right of control, you must consider the full nature of their relationship. You should take into account the following additional factors, which, if true, may show that Uber was the employer of Hassan Turay. No one factor is necessarily decisive. Do not simply count the number of applicable factors and use the larger number to make your decision. It is for you to determine the weight and importance to give to each of these additional factors based on all of the evidence.

(a)      Uber supplied the equipment, tools, and place of work;

(b)      Hassan Turay was paid by the hour rather than by the job;

(c)      Uber was in business;

(d)      The work being done by Hassan Turay was part of the regular business of Uber;

(e)      Hassan Turay was not engaged in a distinct occupation or business;

(f)      The kind of work performed by Hassan Turay is usually done under the direction of a supervisor rather than by a specialist working without supervision;

(g)      The kind of work performed by Hassan Turay does not require specialized or professional skill;

(h)      The services performed by Hassan Turay were to be performed over a long period of time; and

(i)      Uber and Hassan Turay believed that they had an employer-employee relationship.

Uber's Proposed Instruction: **Definition of Employee vs. Independent Contractor**

Plaintiff must prove that Hassan Turay was Uber's employee, not an independent contractor.

Hassan Turay was Uber's employee only if Uber had the right to control the method and manner in which he did the work he was hired to complete; otherwise, he was an independent contractor. The following factors are relevant to consider:

1.    *The extent of control Uber exercised over the details of Hassan Turay's work and the degree of supervision*. The extent of control Uber exercised over the details of Hassan Turay's work is the most important factor in determining whether Hassan Turay is an employee or an independent contractor. Employees are subject to supervision and control by their employer with respect to the manner and means of the work performed—i.e., where, when, and how to complete his work. Independent contractors are not subject to supervision by the alleged employer and exercise control over the manner and means of their work.

2.    *Whether Hassan Turay was engaged in a distinct business*. If Hassan Turay had business distinct from his responsibility to Uber, then that makes him more like an independent contractor. If Hassan Turay's choices with respect to the services he performed resulted in a profit or loss for him, then that makes it more likely he was an independent contractor.

3.    *Specialization or skilled occupation*. Hassan Turay was more like an employee if you find the work did not require the services of one highly educated or a specialized skill.

4.    *Who provided the materials and place of work*. If Uber supplied equipment (such as a vehicle), and employment was over a specific area or over a fixed route, that indicates Hassan Turay was more like an employee. If Hassan Turay provided the equipment himself and decided when and where his work would occur, that indicates he was more like an independent contractor.

5.    *The duration of the employment and whether Uber had the right to assign additional projects*. The shorter in time the relationship, the less likely the driver will subject

himself to Uber's control over job details, making him more like an independent contractor. If Uber had the right to require Hassan Turay to complete additional rides, that would make it more likely he was an employee rather than an independent contractor. If Uber did not have the right to require Hassan Turay to complete additional rides, then that indicates he was more like an independent contractor.

6.     *The extent of Hassan Turay's discretion over when and how long to work.* Independent contractors have more discretion over when and how long to work than employees.

7.     *The method of payment*. Employees are more often paid by time; independent contractors are more often paid by the job.

8.     *Whether the work was part of Uber's regular business*. It is more likely that a worker is an employee if the work is part of the employer's regular business.

9.     *The belief of the parties regarding their relationship*. If Hassan Turay believed himself to be either an employee or an independent contractor, that may be relevant. You should consider whether Hassan Turay believed himself subject to Uber's control. If he did not believe himself subject to Uber's control, that indicates he was more like an independent contractor.[48] For instance, if Hassan Turay entered into a contract with Uber identifying him as an "independent contractor," that would provide strong evidence that he is an independent contractor.

---

[48] *Santiago v. Phoenix Newspapers, Inc.*, 164 Ariz. 505, 509, 794 P.2d 138, 142 (1990) ("The fundamental criterion is the extent of control the principal exercises or may exercise over the agent's conduct" (listing relevant factors)); *Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 58, 280 P.3d 599, 602 & n.1 (2012) ("manner and means" test for control); *Cox v. Glob. Tool Supply LLC*, 629 F. Supp. 3d 963, 969 (D. Ariz. 2022) (listing additional relevant factors); *Martin v. USCORP*, No. CV 07-048-TUC-CKJ, 2008 WL 11441991, at *5 (D. Ariz. Aug. 18, 2008) (parties' agreement constitutes "strong evidence"; collecting cases); *Tarron v. Bowen Mach. & Fabricating, Inc.*, 225 Ariz. 147, 152, 235 P.3d 1030, 1035 (2010) (in banc) ("Contractual provisions may provide evidence of employment status, but they are not determinative."); Restatement (Third) of Agency § 7.07 (2006) ("When an agent is not an employee, the principal lacks the right to control the manner and means of the agent's physical conduct in how work is performed.")...

1

2    ==In order for Plaintiff to prevail, she must prove that the totality of the relevant factors==

     ==establish that Uber exercised enough control over Hassan Turay to make him an employee. No==

3    ==single factor is dispositive.==

4    **Plaintiff's Position**:

5

6    The Court should give Plaintiff's proposed instruction. There is no Arizona pattern jury instruction on employment status for vicarious liability purposes. But Arizona applies the common-law approach embodied in the Restatement, specifically citing California cases for those principles.

7    *See Santiago v. Phoenix Newspapers, Inc.*, 794 P.2d 138, 141 (Ariz. 1990). For that reason, Plaintiff's proposed instruction reflects CACI 3704. If that instruction is sufficient to guide juries

8    in California, it is sufficient to apply the same legal standard in Arizona. Uber's proposed instruction appears to agree on the basic right-to-control test and relevant secondary factors. Uber

9    adds additional, unnecessary, editorializing for each factor.

10   Uber's proposed instruction also contains two legal errors. *First*, Uber says that the "manner and means of the work" means "where, when, and how to complete his work." The proposed

11   language endorses Uber's position that Mr. Turay's freedom to choose when to work made him an independent contractor. In reality, the "freedom to choose one's days and hours of work … does

12   not in itself preclude a finding of an employment relationship. … The more relevant inquiry is how much control Uber has over its drivers while they are on duty for Uber. The fact that some drivers

13   are only on-duty irregularly says little about the level of control Uber can exercise over them when they do report to work." *O'Connor v. Uber Techs., Inc.*, 82 F. Supp. 3d 1133, 1152 (N.D. Cal.

14   2015).

15   *Second*, Uber says that the Uber-driver agreement is "strong evidence" of an independent contractor relationship. But in Arizona (as in California), "[c]ontract language does not determine

16   the relationship of the parties, rather the 'objective nature of the relationship is determined upon an analysis of the totality of the facts and circumstances of each case." *Santiago v. Phoenix*

17   *Newspapers, Inc.*, 794 P.2d 138, 141 (Ariz. 1990) (citation omitted). Uber cites *Martin v. USCorp*, 2008 WL 11441991, but that was a wage-and-hour case, not a vicarious liability case, for that point,

18   did not cite any Arizona law. *Id.* at *5. Arizona courts do not apply the same test to statutory employment schemes as they do to common law respondeat superior issues. *See Engler v. Gulf*

19   *Interstate Eng'g, Inc.*, 258 P.3d 304, 311-12 (Ariz. App. 2011), *aff'd*, 280 P.3d 599 (Ariz. 2012). Plaintiff's instruction appropriately identifies the belief of the parties as a factor for the jury to

20   consider; putting a thumb on the scale by calling it "strong evidence" is improper. Uber cites *Tarron v. Bowen Machine & Fabricating, Inc.*, 235 P.3d 1030 (Ariz. 2010), but that case said nothing about

21   strong evidence; rather, that court reaffirmed the "contractual language is not talismanic." *Id.* at 1035.

22

23   **Uber's Position**:

24   Plaintiff does not explain her basis for importing a California pattern instruction rather than relying on caselaw from Arizona. The fact that one Arizona case has approvingly cited one

25   California precedent is no ground to disregard extensive Arizona appellate authority and adopt California-law instructions.

26   Plaintiff criticizes Uber's proposed instruction for "editorializing" about the meaning of the factors. But Plaintiff identifies no substantive errors in Uber's proposed language. Plaintiff

27   invokes *O'Connor* (which applied California law) to dispute Uber's definition of the manner and means test, but that case supports Uber: "[T]he fact that Uber has no control over its drivers'

28   hours or whether its drivers even 'report' for work more than once in the relevant period . . . *is a*

1   *significant point*, and … *such evidence might weigh heavily in favor of a finding of independent
2   contractor status.*" *O'Connor v. Uber Techs., Inc.*, 82 F. Supp. 3d 1133, 1152 (N.D. Cal. 2015)
    (emphasis added). Similarly, Plaintiff argues that the wage-and-hour decision in *Martin* does not
3   establish that Turay's contract is relevant to employment status for vicarious liability, but Arizona
    applies the rule that "[c]ontractual provisions may provide evidence of employment status," even
4   if "they are not determinative," in respondeat superior cases too. *Tarron v. Bowen Mach. &
    Fabricating, Inc.*, 235 P.3d 030, 1035 (Ariz. 2010) (in banc) (respondeat superior case).  Indeed,
5   the parties' contract—which reflects their mutual beliefs—can provide "strong evidence that the
    individual is an independent contractor." *Martin v. USCORP*, 2008 WL 11441991, at *5 (D.
6   Ariz. Aug. 18, 2008) (collecting cases from other jurisdictions).  Plaintiff criticizes *Martin* for not
7   applying Arizona law, but *Martin* is an Arizona Wage Act case and cites several Arizona cases,
    including *Santiago*, which both parties agree applies here. *Id.* at *7 (D. Ariz. Aug. 18, 2008).
8   Beyond its misplaced qualms with Uber's case citations, Plaintiff's only substantive objection to
    Uber's instruction is that the factors at issue are not dispositive of employment status—but Uber's
9   proposed instruction does not suggest they are.

10

11          Explaining the relevance of the Arizona-law control factors in a manner consistent with
    Arizona precedents would only further lay jurors' understanding and application of Arizona's
12   multifactor test. Absent such explanation, there is a significant risk of jury confusion—to give just
    one example, whether Turay being "engaged in a distinct occupation or business" weighs in favor
13   of employee or independent contractor status.  Explanation of each factor's significance for the
    employment analysis will benefit the jury far more than a list of factors presented without context.
14   *See United States v. Becerra*, 939 F.3d 995, 1001 (9th Cir. 2019) (noting risk that instructions
    written for lawyers will be inaccessible to lay jurors); *Alozie v. Arizona Bd. of Regents*, 562 F.
15   Supp. 3d 203, 215 (D. Ariz. 2021) ("The trial court has broad discretion in formulating jury
    instructions . . . . So long as the instructions on each element of the case are adequate to ensure that
16   the jury fully understands the issues, no particular formulation or wording is necessary." (citation
    and quotation marks omitted)).

17

18

19

20

21

22

23

24

25

26

27

28

1    **[Disputed] Employer Liability—Scope of Employment**

2    Plaintiff's Proposed Instruction

3    Uber is responsible for the actions of its employee if the employee was acting within the
4    scope of his employment.

5    To be within the scope of the employment, conduct must be of the same general nature as
6    that authorized, or incidental to the conduct authorized.

7    In determining whether or not the conduct, although not authorized, is nevertheless so
8    similar to or incidental to the conduct authorized as to be within the scope of employment, you
9    should consider the following:

10    (a) whether or not the act is one commonly done by such employees;

11    (b) the time, place and purpose of the act;

12    (c) the previous relations between Uber and Mr. Turay;

13    (d) the extent to which the business of Uber is apportioned between different employees;

14    (e) whether or not the act is outside the enterprise of Uber or, if within the enterprise, has
15    not been entrusted to any employee;

16    (f) whether or not Uber has reason to expect that such an act will be done;

17    (g) the similarity in quality of the act done to the act authorized;

18    (h) whether or not the instrumentality by which the harm is done has been furnished by
19    Uber to Mr. Turay;

20    (i) the extent of departure from the normal method of accomplishing an authorized result;
21    and

22    (j) whether or not the act is seriously criminal.

23    Uber's Proposed Instruction

24    Uber is responsible for the actions of its employee if the employee was acting within the
25    scope of his employment.

26    Plaintiff claims that Uber is responsible for the actions of its employee. To establish this
27    claim, Plaintiff must prove that:

28    1.    The act was the kind that the employee was employed to perform;

2.      The act occurred substantially within the authorized time and space limit of the employment; and

3.      The act was motivated at least in part by a purpose to serve the employer.

**Plaintiff's Position**:

The parties have two disputes.

**Placement of Scope of Employment Instruction**. The parties disagree as to whether Plaintiff's apparent-agency claim has a scope-of-employment element. As a result, they disagree whether the scope-of-employment instruction appears here—or at the Employer Liability instruction—or should appear after both vicarious-liability claims. As explained above, on page 62 (disputed instructions introducing Employer Liability or Vicarious Liability), Plaintiff's apparent agency claim does not include a scope-of-employment element. Therefore, this instruction should appear here.

**Text of Scope-of-Employment Instruction**.  As explained in Plaintiff's opposition to summary judgment, the Arizona Supreme Court held that sexual misconduct can be within the scope of employment. *See State v. Schallock*, 941 P.2d 1275, 1283 (Ariz. 1997); *Higgins v. Assman Elecs., Inc.*, 173 P.3d 453, 461 (Ariz. App. 2007); *Larson v. Berumen*, 1997 WL 608676 (9th Cir. Oct. 27, 1997). In so doing, the court emphasized that "[c]onduct within the scope of employment may be either of the same nature as that authorized *or* incidental to that authorized." *Schallock*, 941 P.2d at 1282. Citing the Restatement (Second) of Agency §229(1), the court explained that "[m]any factors are to be considered in determining whether conduct not expressly authorized is so incidental as to be within course and scope." *Id.* Accordingly, in finding a triable respondeat superior claim, the court relied on many Restatement factors not captured in the pattern instruction, e.g., "the previous relation between master and servant." *Id.*

Therefore, the pattern instruction that Uber proposes does not accurately reflect Arizona law on respondeat superior in a sexual misconduct case. Plaintiff's proposed instruction is based, nearly verbatim, on the Restatement section applied in *Schallock*. The Court should not adhere to a pattern instruction that contradicts the law as expounded upon the most closely analogous case. *See Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1092 (9th Cir. 2007) ("[P]rejudicial error results when … the substance of the applicable law was not fairly and correctly covered.") (citation omitted).

As explained in Plaintiff's summary judgment briefing, Uber's position that *Schallock* applies only to supervisory sexual harassment cases finds no basis in *Schallock*, has been implicitly or explicitly rejected by other courts, and ignores the parallels between the supervisor-employee and driver-passenger relationships. *See* ECF 4622-2 at 19-21 (discussing *Higgins*, 173 P.3d at 461 and *Larson*, 1997 WL 608676).

As it did in that briefing, Uber relies on *Doe v. Roman Cath. Church of Diocese of Phoenix*, 533 P.3d 214 (Ariz. App. 2023), but as Plaintiff explained in opposition, even if *Doe* interpreted *Schallock* correctly, *Doe* is distinguishable: there, the defendant lacked notice of the employee's dangerous proclivities; here, Uber had ample notice. *See* ECF 3622-2 at 20. Uber's reliance on *Doe* underscores the need to use Plaintiff's instruction, not Uber's. Plaintiff's instruction correctly tells the jury that it should evaluate whether, as in *Schallock*, Uber had some notice of Turay's misconduct or, as in *Doe*, there was no notice. Uber's proposed instruction inaccurately omits that and other important factors.

Finally, Uber says that the correct test is contained in the Restatement (Third) of Torts § 707, but Uber's proposed instruction does not track the Restatement (Third) section either (an

instruction based on that Restatement Section would be less objectionable than the instruction Uber proposes here). And the Arizona Supreme Court in *Engler* gave no indication it was revisiting, let alone overruling, *Schallock*—rather, it expounded on the law applicable to "an employee's away-from-work conduct," a fact pattern not present here. 280 P.3d at 602.

**Uber's Position**:

**Placement of Scope of Employment Instruction.**  As explained above, both vicarious-employer liability and apparent agency contain a "scope" element. Just as an employer can be liable only for employees' actions within the scope of employment, a principal can be liable only for acts within the scope of the apparent authority of an apparent agent.  *See* Vicarious Liability—Scope of Employment/Agency, *supra*. Uber therefore proposes instructing the jury in the following order: (1) introduction to vicarious liability, (2) relationships that can support vicarious liability—i.e., (a) "Definition of Employee vs. Independent Contractor; (b) "Apparent Agency"; and (c) Scope of Employment/Agency.

**Text of the Scope-of-Employment Instruction.**  If the Court follows Plaintiff's proposed order, and concludes that apparent-agency claims do not contain a scope element, then it should give Uber's alternative proposed employment-only instruction on scope.  Uber's instruction tracks the Arizona pattern instruction essentially verbatim.  *See* RAJI (Civil) SI 5 (7th ed.).  That pattern instruction, in turn, better tracks Arizona law.  As the pattern instruction makes clear, the critical question determining the scope of employment is: Whether the employee was "engaged in an independent course of action not intended to serve his employer's work purposes" at the time of the alleged tort.  *Engler*, 280 P.3d at 602–03.  And for decades, Arizona law has required plaintiffs to prove the following three elements (listed in the pattern instruction) to establish an act fell within the scope of employment.  *See* RAJI (Civil) SI 5 (7th ed.) (collecting cases)*; see also Doe v. Roman Cath. Church of Diocese of Phoenix*, 533 P.3d 214, 222 (Ariz. Ct. App. 2023), review denied (Dec. 15, 2023) ("An employee's conduct is within the scope of employment if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it" (citation, quotation marks, and alterations omitted)).

Plaintiff's proposal to instruct the jury on every factor listed in Restatement (Second) of Agency § 229 has no basis in Arizona law. For starters, the entire premise of Plaintiff's proposed instruction—that *Schallock* applied a binding multifactor test based on the Restatement (Second)—is legally incorrect.  *Schallock* cited some—not all—of the § 229 factors. 941 P.2d at 1282-83. Since *Schallock*, the Arizona Supreme Court has held "the Restatement (Third) § 7.07 sets forth the appropriate test for evaluating whether an employee is acting within the scope of employment." *Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 602 (2012).  And the Restatement Third, which "consolidates the treatment of the topics covered in . . . Restatement Second . . . [§] 229," does not support Plaintiff's ten factors, instead providing: "An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." § 7.07. RAJI accurately reflects this binding test; Plaintiff's instruction does not.

Further, *Schallock* does not apply, as explained in detail in briefing on Uber's Motion for Partial Summary Judgment. Dkt. 4796 at 10-12. *Schallock*'s holding "is narrowly applicable to cases involving longstanding abuse and harassment in the workplace by a manager with authority" over the "subordinates the manager victimizes." *Doe v. Roman Cath. Church of Diocese of Phoenix*, 533 P.3d 214, 223–24 (Ariz. 2023). *Schallock* itself stressed that its outcome turned on "factors peculiar to **supervisory sexual harassment cases**," explaining that this context "distinguishe[d] the case from the great majority of cases involving torts committed by a servant against either a non-employee or co-employee." 941 P.2d at 1281-82 (emphasis added).  Accordingly, there is no basis for Plaintiff's argument that *Schallock* applies here because it is "a sexual **assault** case." Just like the alleged sexual assault by a spiritual counselor in *Doe*, this case has nothing to do with

1    managerial sexual harassment of subordinates, so no legal basis supports Plaintiff's requested
     modification to the pattern instruction.[49]

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27    [49] *Doe*'s observation that *Schallock* was further distinct because the employer in *Doe* lacked notice
      of the employee's conduct did not, as Plaintiff argues, suggest that the controlling test in *Engler* is

28    discarded whenever a plaintiff alleges notice.  In any event, as Uber's Motion for Partial Summary
      Judgment notes, there is no triable fact issue on notice here.

1
[**Disputed**] Apparent Agency[50]

2
Plaintiff's next claim is for Apparent Agency.

3
Agency is a relationship in which one person (a "principal") gives authority, by word or by

4
conduct, to another person (an "agent") to act on the principal's behalf subject to the principal's

5
control.

6
Apparent agency is a relationship in which the principal has intentionally or unintentionally

7
caused Plaintiff to believe that a person was the principal's agent although no actual authority was

8
given to him. Apparent agency can never arise from the acts of the agent alone.

9
In order to establish apparent agency, Plaintiff must prove that:

10
1.       Hassan Turay was at fault for Plaintiff's injury.

11
2.       The alleged principal caused Plaintiff to believe Hassan Turay was principal's agent;

12
3.       Plaintiff relied on this representation to her detriment; and

13
4.       Such reliance was reasonably justified.

14
Plaintiff's Proposed Language:

15
Hassan Turay was at fault if he was negligent and if his negligence was a cause of Plaintiff's

16
injury, or if he acted intentionally to harm Plaintiff or with the substantial certainty harm would

17
occur.

18
Uber's Proposed Language:

19
Hassan Turay was at fault if he engaged in a sexual encounter with Plaintiff without her

20
consent, and those actions were a cause of Plaintiff's injury.

21
**The Parties' Positions**:

22
The parties have two disputes, both previously briefed in connection with the disputed

23
instructions on page 62 (disputed instructions introducing Employer Liability or Vicarious Liability).

24
**Scope of Employment**. Uber contends that apparent agency has a scope-of-employment

25
element. For that reason, Uber proposes a single vicarious liability elements instruction capturing both Employer Liability and Apparent Agency claims. Plaintiff's position is that scope-of-employment is not an element of an apparent agency claim, and so proposes a this separate

26
Apparent Agency instruction.

27
**Turay's Conduct**. As previously explained, the parties disagree on the language

28
[50] RAJI AI 1, 5 (modified to add roadmap sentence and need to find Turay at fault, using RAJI Fault 1).

1  concerning Mr. Turay's conduct. Plaintiff's position is that Plaintiff must prove Turay was at
2  fault—whether negligently, recklessly, or intentionally. Uber's position is that Plaintiff must prove
   Turay engaged in a sexual encounter with Plaintiff without her consent in order to establish her was
3  "at fault."

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[Disputed] Vicarious Liability—Scope of Employment/Agency[51]**

Uber's Proposed Instruction

If Plaintiff proves Hassan Turay was Uber's employee or apparent agent, and that Turay was at fault for Plaintiff's injuries, Plaintiff must also show Turay was acting within the scope of his employment or apparent authority when he engaged in a sexual encounter with Plaintiff without her consent. Uber is responsible for the actions of Hassan Turay if he was acting within the scope of his employment or apparent authority.

To establish this claim, Plaintiff must prove that:

1.    The sexual encounter was the kind of act that the employee or agent was employed or apparently authorized to perform;

2.    The sexual encounter occurred substantially within the authorized time and space limit of the employment, or the apparently authorized time and space limit of the apparent agency; and

3.    The sexual encounter was motivated at least in part by a purpose to serve the employer or apparently motivated by a purpose to serve the apparent agent's principal.

Plaintiff's Contingent Proposed Instruction, Subject to Objecting to Instruction in Total

Plaintiff must show Turay was acting within the scope of his employment or apparent authority.

To be within the scope of the employment or apparent agency, conduct must be of the same general nature as that authorized or apparently authorized, or incidental to the conduct authorized or apparently authorized.

In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment or agency, you should consider the following:

(a) whether or not the act is one commonly done by such employees or agents;

(b) the time, place and purpose of the act;

(c) the previous relations between Uber and Mr. Turay;

---

[51] RAJI SI 5

1    (d) the extent to which the business of Uber is apportioned between different employees or

2    agents;

3    (e) whether or not the act is outside the enterprise of Uber or, if within the enterprise, has

4    not been entrusted to any employee or agent;

5    (f) whether or not Uber has reason to expect that such an act will be done;

6    (g) the similarity in quality of the act done to the act authorized;

7    (h) whether or not the instrumentality by which the harm is done has been furnished by

8    Uber to Mr. Turay;

9    (i) the extent of departure from the normal method of accomplishing an authorized result;

10   and

11   (j) whether or not the act is seriously criminal.

12   **Plaintiff's Position**:

13   The parties have three disputes, mostly briefed in connection with earlier instructions.

14   **Scope of Employment Element for Apparent Agency Claim**. This dispute was briefed in
15   connection with the disputed instructions on page 62 (disputed instructions introducing Employer
     Liability or Vicarious Liability).

16   Uber contends that apparent agency has a scope-of-employment element. For that reason,
17   Uber proposes a single scope instruction (immediately following the Apparent Agency instruction)
     that applies to both Employer Liability and Apparent Agency claims. Plaintiff's position is that
18   scope-of-employment is not an element of an apparent agency claim, and so proposed a scope
19   instruction following the Employer Liability instructions.

20   **Text of Scope Instruction**. This dispute was mostly briefed beginning on page 72
     (Plaintiff's proposed instruction re "Employer Liability—Scope of Employment"). As discussed
21   there, Plaintiff's position is that the scope instruction, per the Arizona Supreme Court's opinion in
22   *Schallock*, should be based on Restatement (Second) of Agency § 229.

23   Even if the Court rejects Plaintiff's position and uses the pattern instruction, it should not
     accept Uber's modifications to that instruction to replace "the act" with "the sexual encounter." As
24   explained in *Schallock*, in a sexual misconduct case, "the act in question is not the ultimate tortious
     act but rather conduct related to the tort"—in that case, "running the office." 941 P.2d at 1382.

25   
26   **Turay's Conduct**. This dispute was mostly briefed in connection with the disputed
     instructions on page 62 (disputed instructions introducing Employer Liability or Vicarious
27   Liability).

28   Even if the Court agrees with Uber that Plaintiff's vicarious liability claims require an
     instruction regarding sexual contact without consent, there is no reason to repeat that requirement

1    here.

2    If the Court (a) gives this instruction and (b) references Turay's conduct in this instruction,
     it should use Plaintiff's description, not Uber's.

3

4    **Uber's Position**:

5    **Scope of Employment Element for Apparent Agency Claim**  Uber's position is that both
     employer and apparent-agency vicarious-liability theories require action within the scope of the
6    employee or agent's authority.  The parties positions are set forth in detail above, in connection
     with the disputed instructions on page 62 (disputed instructions introducing Employer Liability or
7    Vicarious Liability).

8    **Text of Scope Instruction.**  Uber's position—set forth in detail above—is that Plaintiff
     must establish three elements to prove action within the scope,  i.e.: The sexual encounter was (1)
9    the kind of act that the employee or agent was employed or apparently authorized to perform; (2)
     occurred substantially within the authorized time and space limits of that relationship; and (3) was
10   motivated at least in part by a purpose to serve the principal.  Both positions find support in the
     Arizona pattern instruction.  *See* RAJI SI 5. Plaintiff's contention that a ten-factor scope test
11   based on the Second Restatement applies cannot be reconciled with Arizona law adopting the
     Third Restatement in place of the Second Restatement.
12

13   To the extent Plaintiff contends that "the act" in question here was not "the sexual
     encounter," but the "conduct related to the tort," that is also wrong.  Plaintiff's legal premise is
14   faulty, because *Schallock*—the sole case cited—does not apply, as explained in detail above and
     in briefing on Uber's Motion for Partial Summary Judgment. Dkt. 4796 at 10-12.
15

16   **Turay's Conduct**. This dispute was sufficiently briefed in connection with the disputed
     instructions on page 62 (disputed instructions introducing Employer Liability or Vicarious
17   Liability).  Arizona law bars Plaintiff from pursuing a factual theory that she was sexually
     assaulted under a negligence claim, and she cites not support for her contention that a jury could
18   impose negligence liability for a consensual sexual encounter.

19

20

21

22

23

24

25

26

27

28

1

**[Disputed] Comparative Fault**[52]

2      If you found Uber liable for any claim, you should then consider Uber's claim that Plaintiff

3  was at fault and Uber's claim that the driver, Hassan Turay, was at fault.

4  **Plaintiff's Position:**

5      The parties disagree whether the jury should be instructed on comparative fault. As
expanded at page 36 ("Negligence—State of Claim"), Uber may not introduce evidence and

6  argument blaming Plaintiff and Mr. Turay and then mislead the jury into making a contributory
negligence determination by keeping comparative fault off the verdict form.

7

8  **Uber's Position:**

9      As explained more fully in Uber's response to Plaintiff's proposed "Negligence—Statement
of Claim" instruction, Plaintiff cannot "determine the nature of her opponent's defense and insist

10 that the jury be instructed accordingly." *Timmons*, 830 P.2d at 877. Because Uber is not asserting
a comparative fault defense, Plaintiff cannot insist that the jury be instructed on that defense. *See*

11 *Davis*, 2025 WL 605882, at *3; *Ong*, 503 P.2d at 418-19; *Timmons*, 830 P.2d at 877.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[52] RAJI Fault 8 (excerpted to apply to all claims); *see also* RAJI PLI 1, comment ("If the case is a
comparative fault case, additional transitioning and modification will be necessary to blend the
Product Liability Instructions and Fault 5-11 Instructions.").

1

**[Disputed] Determining Relative Degrees of Fault[53]**

2

If you find more than one party or person at fault for Plaintiff's injury, you must then

3

determine the relative degrees of fault of all those whom you find to have been at fault. The relative

4

degrees of fault are to be entered on the verdict form as percentages of the total fault for Plaintiff's

5

injury. The fault of one person or party may be greater or lesser than that of another, but the relative

6

degrees of all fault must add up to 100%. This will be clear from the verdict form.

7

On Uber's claim that Plaintiff was at fault, you must decide whether Uber has proved that

8

Plaintiff was at fault and, under all the circumstances of this case, whether any such fault should

9

reduce Plaintiff's full damages. These decisions are left to your sole discretion.

10

If you decide that Plaintiff's fault should reduce Plaintiff's full damages, the Court will later

11

reduce damages by the percentage of fault you have assigned to Plaintiff.

12

If you assign a percentage of fault to Hassan Turay, the Court will reduce the damages Uber

13

pays for Negligence and Design Defect claims only. The Court will not reduce damages for Hassan

14

Turay's fault if you find Uber liable for Plaintiff's Employer Liability or Apparent Agency claims.

15

**Plaintiff's Position:**

16

The parties disagree whether the jury should be instructed on comparative fault. As

17

expanded on at page 36 ("Negligence—State of Claim"), Uber may not introduce evidence and argument blaming Plaintiff and Mr. Turay and then mislead the jury into making a contributory

18

negligence determination by keeping comparative fault off the verdict form.

**Uber's Position:**

19

As explained more fully in Uber's response to Plaintiff's proposed "Negligence—Statement

20

of Claim" instruction, Plaintiff cannot "determine the nature of her opponent's defense and insist that the jury be instructed accordingly." *Timmons*, 830 P.2d at 877. Because Uber is not asserting

21

a comparative fault defense, Plaintiff cannot insist that the jury be instructed on that defense. *See Davis*, 2025 WL 605882, at *3; *Ong*, 503 P.2d at 418-19; *Timmons*, 830 P.2d at 877.

22

23

24

25

26

27

28

---

[53] RAJI Fault 9, Fault 11 (modified to apply to all clams and to indicate that no reduction for Turay will apply for vicarious liability claims)

**Personal Injury Damages—Measure of Damages[54]**

If you find Uber liable to Plaintiff for any claim, you must then decide the full amount of money that will reasonably and fairly compensate Plaintiff for each of the following elements of damages proved by the evidence to have resulted from the fault of Uber:

1.      The nature, extent, and duration of the injury.

2.      The pain, discomfort, suffering, disability, disfigurement, and anxiety already experienced, and reasonably probable to be experienced in the future as a result of the injury.

3.      Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury.

---

[54] RAJI PIDI 1 (modified to remove certain damages categories, to be further modified depending on evidence at trial)

1

**[Disputed]** **Personal Injury Damages—Unusually Susceptible Plaintiff[55]**

2

Plaintiff is not entitled to compensation for any physical or emotional condition that pre-

3

existed the fault of Uber. However, if Plaintiff had any pre-existing physical or emotional condition

4

that was aggravated or made worse by Uber's fault, you must decide the full amount of money that

5

will reasonably and fairly compensate Plaintiff for that aggravation or worsening.

6

You must decide the full amount of money that will reasonably and fairly compensate

7

Plaintiff for all damages caused by [any party or person at fault] [the fault of Uber], even if Plaintiff

8

was more susceptible to injury than a normally healthy person would have been, and even if a

9

normally healthy person would not have suffered similar injury.

10

Uber's Contingent Proposed Instruction on Aggravation, Subject to Objection to Instruction

11

in Total:

12

If Plaintiff had a pre-existing physical or emotional condition, and you find that Uber's

13

conduct was a proximate cause of a specific aggravation of that condition, Plaintiff may recover

14

only for the aggravation directly and proximately caused by Uber's conduct, and not for the pre-

15

existing condition itself, its natural progression, or harm caused by any other person.

16

**Plaintiff's Position:**

17

18

Uber will likely introduce evidence and argument that Plaintiff had previous traumatic events in her life, events that, Uber will likely argue, themselves caused her harm rather than the incident in this case. For example, Uber moved under Rule 412 to admit evidence of previous sexual

19

behavior, and spent much of the deposition of Plaintiff's psychologist expert suggesting that those previous events caused Plaintiff PTSD. Uber recounts Plaintiff's expert's conclusion regarding Ms.

20

Dean's mental state at the time of the incident, but does not offer to stipulate to those facts, or agree to exclude evidence of pre-existing trauma.

21

22

Plaintiff's expert also concluded, and Uber has no expert countering, that earlier events in Plaintiff's life at most made her more susceptible to harm. In these circumstances, RAJI PIDI 2 is

23

appropriate to ensure that the jury recognizes that even an unusually susceptible person is entitled to all damages caused by a defendant's conduct. *See Matlock v. Greyhound Lines, Inc.*, 2010 WL

24

3171262, at *5 (D. Nev. Aug. 10, 2010) (appropriate to give eggshell plaintiff instruction even where "neither party presented evidence that the bus accident aggravated a preexisting condition").

25

Uber says that *Matlock* only rejected a challenge to the wording of the eggshell plaintiff instruction, but that is incorrect: the defendant challenged both the wording and the giving of the instruction.

26

On the latter, the defendant argued, and the court rejected, that the instruction was improper because "neither party presented evidence that the bus accident aggravated a preexisting condition" and the

27

defendant "never argued that plaintiff had a pre-existing condition or prior psychological issue that was aggravated." *Id.*

28

---

[55] RAJI PIDI 2

Uber cites the thirty-year-old decision in *Testa v. Vill. of Mundelein, Ill.*, 89 F.3d 443 (7th Cir. 1996), in which the court, bemoaning "a litigious society," found no evidence of susceptibility at all. *Id.* at 444, 447. And in *Benkendorf v. Advanced Cardiac Specialists Chartered*, 2012 WL 208792 (Ariz. App. Jan. 24, 2012), the plaintiff asked for an instruction that a decedent was unusually susceptible, but the claim was for wrongful death, meaning the measure of damages was the plaintiff's harm, not the decedent's. *Id.* at *3.

Uber's proposed addition is redundant and inaccurate. It is redundant because the pattern instruction already tells the jury that Uber is not liable for pre-existing conditions. And it is inaccurate because it says that the jury must find a "specific aggravation,"

The bracketed language alternatives reflect the parties' dispute on comparative fault. *See* Page 36 ("Negligence—Statement of Claim").

## Uber's Position:

Uber submits that it is premature to instruct the jury on aggravation as outlined in the first paragraph of Plaintiff's proposal, especially in light of the fact that Uber's Rule 412 motion to admit evidence of prior trauma remains pending, and that an instruction should only be given if Plaintiff establishes that a record has been made to support it. Even if such an instruction is given, Uber requests that the alternative phrasing it proposes be adopted to underscore the fact that causation is in dispute in this case on the ground of superseding cause. Uber's language makes clear that the jury must find that any fault of Uber's must be the cause of aggravation in order to hold it liable.

Uber objects to the second paragraph of this instruction. Plaintiff has not disclosed any expert evidence that she was uniquely susceptible to the mental health harms she alleged. On the contrary, her expert, Dr. Mindy Mechanic, concluded in her report that "[i]n the weeks prior to this incident, by all accounts and on all relevant psychosocial dimensions, Ms. Dean was not only not suffering, or ***not impaired in anyway***, but she was thriving." (9/26/2025 M. Mechanic Rep. 53 (emphasis added).) Accordingly, the jury instructions should not introduce the extraneous concept of unusual susceptibility.

Uber's potential argument that Plaintiff's alleged injuries are attributable in whole or in part to past traumas would not provide a basis for this instruction. But the question of whether some or all of Plaintiff's alleged injuries are attributable to past traumas is separate and distinct from whether she was unusually susceptible to such injuries. To be clear, Uber does not intend to assert an "eggshell plaintiff" defense that Plaintiff was somehow more susceptible to mental-health injuries than others. For that reason, and because Plaintiff has not proffered any expert testimony putting that question at issue, there is no evidentiary predicate for this instruction.

A jury instruction is only warranted if it is supported by "substantial" evidence. *Lozoya v. Laidlaw Educ. Servs., Inc.*, No. 1 CA-CV 08-0510, 2009 WL 1710271, at *3 (Ariz. Ct. App. June 18, 2009). "Substantial" evidence is "more than a mere scintilla and is such proof that reasonable persons could accept as adequate and sufficient to support a verdict." *Marquette Venture Partners II, L.P. v. Leonesio*, No. 1 CA-CV 09-0166, 2011 WL 1867517, at *3 (Ariz. Ct. App. May 3, 2011) (internal citation and quotation marks omitted). Indeed, "[i]t is reversible error to instruct on an issue if there is no evidence to support the instruction." *Herman v. Sedor*, 168 Ariz. 156, 158, 812 P.2d 629 (Ct. App. 1991). Put another way, a judge may not give an instruction that is "not applicable to facts in case at bar," even though it is "correct statement[] of law in the abstract[.]" *O'Rielly Motor Co. v. Rich*, 3 Ariz. App. 21, 27, 411 P.2d 194 (1966). This is an important principle, because "[i]f an unsupported instruction is given, it invites the jury to speculate as to possible non-existent circumstances." *Herman*, 168 Ariz. at 158, 812 P.2d 629 (citation and internal quotation marks omitted). As a result, both Arizona and federal courts have properly declined to give

1   "eggshell skull" instructions where the instruction did not fit the evidence in the case.[56] *See, e.g.,*
2   *Testa v. Vill. of Mundelein, Ill.*, 89 F.3d 443, 446-47 (7th Cir. 1996) (concluding it was
    inappropriate to give eggshell skull instruction where plaintiff presented insufficient evidence of
3   preexisting condition); *Benkendorf v. Advanced Cardiac Specialists Chartered*, No. 1 CA-CV 09-
    0697, 2012 WL 208792, at *3 (Ariz. Ct. App. Jan. 24, 2012) (refusing to give unusual susceptibility
    instruction where such an instruction did not fit plaintiff's theory of the case).

4

5           Here, Plaintiff has not proffered expert evidence supporting a conclusion that she was
    unusually susceptible to injury. Rather, as noted above, her expert opines that "[i]n the weeks prior
6   to this incident, by all accounts and on all relevant psychosocial dimensions, Ms. Dean was not
    only not suffering, or ***not impaired in anyway***, but she was thriving." (9/26/2025 M. Mechanic
7   Rep. 53 (emphasis added).) In short, the issue for the jury to decide in this case is whether the
    alleged assault ***caused*** the mental health conditions claimed by Plaintiff.

8           Finally, for the reasons explained in its response to "Negligence – Statement of Claim",
    Uber maintains its objection to the use of comparative fault language.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27   [56] In support of its argument that an eggshell instruction is appropriate where neither side has
     presented evidence of unusual susceptibility, Plaintiff relies on a single case decided under Nevada
28   law. *See Matlock v. Greyhound Lines, Inc.*, 2010 WL 3171262, at * (D. Nev. Aug. 10, 2010). But
     Plaintiff has not shown that the record here is analogous to the one in *Matlock* or that it otherwise
     supports giving an unusual-susceptibility instruction.

1    **Personal Injury Damages—Punitive Damages[57]**

2        If you find Uber liable for Plaintiff's damages, you may assess additional damages to punish

3    Uber or to deter Uber from similar misconduct in the future. Such damages are called "punitive"

4    damages.

5        To recover punitive damages, Plaintiff must prove by clear and convincing evidence that:

6        1.    Uber's misconduct was intended to cause harm to Plaintiff, or

7        2.    Uber's misconduct was motivated by spite or ill will, or

8        3.    Uber's misconduct was

9            a.    outrageous, oppressive, or intolerable, and

10            b.    Uber knew or intentionally disregarded that its conduct created a substantial

11                risk of significant harm to others.

---

[57] RAJI PIDI 4 (modified to remove reference to deterrence of others and specify that the intent to cause harm must be specific to Plaintiff). <mark>Uber's Note</mark>:  Consistent with its motion to bifurcate the question of punitive liability and damages from the issues of liability and compensatory damages, *see* ECF No. 4732, at 17-20, Uber objects to any instruction on punitive damages in the first phase of the trial.

**[Disputed] Personal Injury Damages—Punitive Damages Not Awarded For Conduct Unrelated to Harm Alleged**

Punitive damages cannot be awarded to punish and deter conduct that had no direct relation to Plaintiff's alleged harm. A defendant's acts, independent from the acts upon which liability was premised, may not serve as the basis for an award of punitive damages. You may not award punitive damages against a defendant because you find it to be an unsavory individual or business.

**Plaintiff's Position:**

Uber's proposed instruction is duplicative. The pattern instruction for determining punitive damages makes clear that punitive damages are to be considered with reference to Uber's conduct in this case. An additional instruction saying those same things is unnecessary and likely would confuse the jury.

Uber says the instruction has been given "in any many mass tort cases" but does not cite even one.

Uber cites *White v. Ford Motor Co.*, 500 F.3d 963 (9th Cir. 2007), but that case required a "harm to nonparties" instruction in the unusual circumstance where the case had been tried before the Supreme Court's decision in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007) and counsel had expressly urged punitive damages to make the defendant "accountable for that conduct" in non-party accidents. *White*, 500 F.3d at 972. There is no reason to expect inappropriate closing argument here.

In addition, Uber's proposed instruction is not a "harm to nonparties" instruction. Instead, it's a combination of "no direct relation," "independent conduct" and "unsavory business" instructions. So, *White* provides no support.

An actual "harm to nonparties" instruction would talk about harm to nonparties, and appropriately instruct the jury on how it *can* consider harm to others: "Punitive damages may not be used to punish Uber for the impact of its alleged misconduct on persons other than Plaintiff. You may, however, consider harm to others in determining whether Uber knew or intentionally disregarded that its conduct created a substantial risk of harm."

Finally, Uber justifies its instruction based on the false claim that "Plaintiffs have already participated in a widespread advertising campaign" about Uber.

**Uber's Position:**

Juries in mass tort cases are routinely instructed about harm to nonparties due to the inherent risk that the jury will determine punitive liability based on the alleged harm caused to other nonparties.[58] As the U.S. Court of Appeals for the Ninth Circuit has explained, "where there is a significant risk that jurors will misapprehend the distinction" between considering harm to nonparties for reprehensibility versus direct punishment, "the court must upon request protect against that risk by 'avoid(ing) procedure that unnecessarily deprives juries of proper legal guidance.'" *White v. Ford Motor Co.*, 500 F.3d 963 (2007) (citation omitted; further holding "failure to give a harm to nonparties jury instruction, restricting the jury from considering harm to other individuals caused by rollaway accidents involving manufacturer's trucks in determining

---

[58] California prescribes standard language, for example. *See* CACI 3945 (including optional language: "Punitive damages may not be used to punish [*name of defendant*] for the impact of [his/her/*nonbinary pronoun*/its] alleged misconduct on persons other than [*name of plaintiff*].").

1    punitive damages award, violated due process"). Plaintiff baselessly suggests that *White* is an
2    outlier limited to situations in which improper closing arguments about harm to nonparties are
     made, but there is no reason to read *White* so narrowly. Indeed, as *Philip Morris USA v. Williams*
3    makes clear, the Court must take steps to protect due process **anytime** there is a risk that the jury
     would premise punitive damages based on improper consideration of harm to others—whether that
4    risk arises from argument or evidence in the case. 549 U.S. 346, 357 (2007) ("where the risk of that
     misunderstanding is a significant one—because, for instance, of the sort of evidence that was
5    introduced at trial or the kinds of argument the plaintiff made to the jury—a court, upon request,
     must protect against that risk"). And it is hard to imagine a case that poses such a risk more than
6    this one, in which Plaintiff has made clear she intends to harp on statistics about the alleged
     frequency of incidents of sexual assault and misconduct on the Uber platform and where Plaintiffs
7    have already participated in a widespread advertising campaign containing misleading statements
     about Uber and this litigation. *See* Dkt. 4498 at 1-4. Accordingly, due process compels the issuance
8    of such an instruction.

9        Plaintiff also objects to the next two sentences of the instruction (regarding nexus and bias),
     but these elements of the instruction are directly supported by Supreme Court precedent. *See State*
10   *Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("A defendant's dissimilar acts,
     independent from the acts upon which liability was premised, may not serve as the basis for punitive
11   damages."); *id.* at 423 ("A defendant should be punished for the conduct that harmed the plaintiff,
     not for being an unsavory individual or business."). Plaintiff does not dispute that the jury in this
12   case will be presented with the opportunity to award punitive damages based on conduct with no
     nexus, or because Plaintiff tries to frame Uber as an unsavory business. Accordingly, the same
13   justifications for the harm-to-others instruction supports giving these instructions as well.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Duty to Deliberate**[59]

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

---

[59] Ninth Cir. Model Civil Instr. 3.1

**Consideration of Evidence – Conduct of the Jury**[60]

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. You must disable "push notifications" from any news, media, or social media source on your phone. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside

---

[60] Ninth Cir. Model Civil Instr. 3.2 (modified to add "push notifications" sentence, to add "the platform 'X' formerly known as" language from 1.15, and to omit optional bracketed language)

the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

1

**Communication with the Court**[61]

2       If it becomes necessary during your deliberations to communicate with me, you may send

3  a note through the clerk, signed by any one or more members of the jury. No member of the jury

4  should ever attempt to communicate with me except by a signed writing. I will not communicate

5  with any member of the jury on anything concerning the case except in writing, or here in open

6  court. If you send out a question, I will consult with the lawyers before answering it, which may

7  take some time. You may continue your deliberations while waiting for the answer to any question.

8  Remember that you are not to tell anyone—including the court—how the jury stands, whether in

9  terms of vote count or otherwise, until after you have reached a unanimous verdict or have been

10  discharged. Do not disclose any vote count in any note to the court.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[61] Ninth Cir. Model Civil Instr. 3.3 (modified bracketed options)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Return of Verdict**[62]

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

---

[62] Ninth Cir. Model Civil Instr. 3.5 (modified to omit bracketed options)

# IN-TRIAL INSTRUCTIONS

1

**Deposition in Lieu of Live Testimony**[63]

2      You will now be shown the video-recorded testimony of [name of witness] taken [date of

3 deposition]. Edits were made both to shorten the video and to comply with my earlier out-of-court

4 rulings on specific objections or issues raised during the testimony. You should consider deposition

5 testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had

6 been present to testify.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[63] Adapted from Ninth Cir. Model Civil Instr. 2.4 (modified to explain video editing)

**Video Corporate Representative Deposition[64]**

You will now be shown the video-recorded testimony of Uber through a witness designated by Uber to testify on its behalf, [name of witness], taken [date of deposition]. The testimony concerns information known or reasonably available to Uber. The testimony should be considered by you as testimony of Uber itself except when it is clear from context or an instruction by the Court that the witness is speaking only on his or her own behalf. Edits were made both to shorten the video and to comply with my earlier out-of-court rulings on specific objections or issues raised during the testimony. You should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

---

[64] Adapted from Ninth Cir. Model Civil Instr. 2.4 to instruct jury on nature of 30(b)(6) testimony

1

**Expert Work on Multiple Cases**[65]

2      You have heard an expert or experts testify as to the amount of money they have been paid

3  for their work in this litigation. It is important for you to know that this trial is part of a larger Multi-

4  District Litigation (MDL) proceeding. An MDL involves a number of similar cases filed in different

5  parts of the country. All of the similar cases are consolidated and transferred to one judge for

6  handling. These cases were consolidated for purposes of the MDL for reasons of efficiency only

7  because they share certain facts in common, including some common expert witnesses.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  [65] This instruction is necessary to avoid prejudice due to experts working on more than just the *Dean* matter.