Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street, Austin, TX 78701
Telephone: (512) 355-4390
kim.bueno@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*, No. 23-cv-06708 | Case No. 3:23-MD-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OPPOSITION TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE**<br><br>Judge:          Hon. Charles R. Breyer<br>Courtroom:   6 – 17th Floor<br><br>**REDACTED** |

**TABLE OF CONTENTS**

**Page**

I.    RESPONSE TO MIL NO. 1: "EXCLUDE ARGUMENT OR EVIDENCE ON THE ABSENCE OF CRIMINAL CHARGES, PROSECUTION, OR CONVICTION OF PLAINTIFF'S UBER DRIVER"..............................................1

II.   RESPONSE TO MIL NO. 2: "EXCLUDE ARGUMENT OR EVIDENCE REGARDING ██████████████████████████████████████"....................................2

III.  ████████████████████████████████████████████..............................3

IV.   RESPONSE TO MIL NO. 4: "EXCLUDE ARGUMENT OR EVIDENCE REGARDING IRRELEVANT AND UNDULY PREJUDICIAL ASPECTS OF PLAINTIFF'S PERSONAL LIFE" ..............................................6

V.    RESPONSE TO MIL NO. 5: "EXCLUDE ARGUMENT OR EVIDENCE OF PLAINTIFF'S POST-INCIDENT RIDESHARE USE" ..............................8

VI.   RESPONSE TO MIL NO. 6: "EXCLUDE ARGUMENT OR EVIDENCE BASED ON UBER'S POST-LAWSUIT INVESTIGATION INTO COMPLAINTS FROM 'JENNIFER,' INCLUDING LATE-PRODUCED DOCUMENTS INDICATING THAT 'JENNIFER' ENGAGED IN UBER SUPPORT ABUSE" ..............................................9

VII.  RESPONSE TO MIL NO. 7: "EXCLUDE ARGUMENT OR EVIDENCE REFERENCING NON-MATERIAL AMENDMENTS TO PLAINTIFF DEAN'S PLAINTIFF FACT SHEET" ..............................................10

VIII. RESPONSE TO MIL NO. 8: "EXCLUDE UNTIMELY OR NON-PRODUCED EVIDENCE" ..............................................12

IX.   RESPONSE TO MIL NO. 9: "EXCLUDE ARGUMENT OR EVIDENCE REGARDING CONTINGENCY FEES, ATTORNEY ADVERTISING, OR 'ATTORNEY-DRIVEN' LITIGATION" ..............................................14

X.    RESPONSE TO MIL NO. 10: "EXCLUDE ARGUMENT OR EVIDENCE CONCERNING THE PERSONAL USE OF UBER BY COUNSEL, WITNESSES, OR THEIR FAMILY OR FRIENDS"..............................................15

XI.   RESPONSE TO MIL NO. 11: "EXCLUDE EVIDENCE OR ARGUMENT THAT UBER WAS LEGALLY PROHIBITED OR CONSTRAINED FROM IMPLEMENTING SAFETY MEASURES"..............................................17

XII.  RESPONSE TO MIL NO. 12: "EXCLUDE ARGUMENT OR EVIDENCE OF NON-PROFIT ENDORSEMENTS OF UBER'S SAFETY DATA OR POLICIES RELATED TO SEXUAL ASSAULT"..............................................19

XIII. RESPONSE TO MIL NO. 13: "EXCLUDE ARGUMENT OR TESTIMONY REGARDING LOW OR RARE PREVALENCE OF SEXUAL VIOLENCE ON UBER'S PLATFORM COMPARED TO SOCIETY IN GENERAL OR

OTHER FORMS OF TRANSPORTATION OR OTHER IRRELEVANT SCENARIOS"........................................................................................20

XIV.   RESPONSE TO MIL NO. 14: "EXCLUDE ARGUMENT OR EVIDENCE THAT UBER HAS HELPED REDUCE DRUNK DRIVING RATES" ..........................21

XV.    RESPONSE TO MIL NO. 15: "EXCLUDE ARGUMENT OR EVIDENCE THAT UBER DRIVERS ARE SAFER DRIVERS THAN THE AVERAGE DRIVER"...................................................................................................23

XVI.   RESPONSE TO MIL NO. 16: "EXCLUDE ARGUMENT OR EVIDENCE THAT UBER DRIVERS PREFER THE INDEPENDENT CONTRACTOR MODEL"...................................................................................................24

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*,
   No. 10-373 ABC, 2013 WL 12122803 (C.D. Cal. June 21, 2013)........................................12

*Anderson v. Morrow*,
   371 F.3d 1027 (9th Cir. 2004) ...........................................................................................5

*Andrews v. Cnty. of Orange*,
   No. 8:20-cv-00925-JWH-ADSx, 2021 WL 6496831 (C.D. Cal. July 27, 2021)..................1, 2

*In re Bard IVC Filters Prods. Liab. Litig.*,
   No. MDL 15-02641-PHX DGC, 2018 WL 934795 (D. Ariz. Feb. 15, 2018)........................23

*Berry v. Deloney*,
   28 F.3d 604 (7th Cir. 1994) ...............................................................................................5

*Camenisch v. Umpqua Bank*,
   763 F.Supp.3d 871 (N.D. Cal. 2025) ................................................................................12

*Castro v. Cnty. of Los Angeles*,
   No. 2:13–cv–06631–CAS(SSx), 2015 WL 4694070 (C.D. Cal. Aug. 3, 2015) ......................2

*Clark v. City of Tucson*,
   No. CV 08-300-TUC-HCE, 2010 WL 11515475 (D. Ariz. Nov. 1, 2010) .............................2

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*,
   No. 2:18-cv-01320, 2021 WL 5577409 (S.D. Ohio Nov. 30, 2021) ......................................16

*Doe v. Bridges to Recovery, LLC*,
   2021 WL 4690830 (C.D. Cal. May 19, 2021) ....................................................................4, 5

*In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
   MDL No. 2327, 2014 WL 505234 (S.D. W. Va. Feb. 5, 2014) ............................................15

*In re Fosamax Prods. Liab. Litig.*,
   No. 06 MD 1789 (JFK), 2013 WL 174416 (S.D.N.Y. Jan. 15, 2013)....................................16

*Galindo v. TMT Transp., Inc.*,
   733 P.2d 631 (Ariz. Ct. App. 1986)....................................................................................24

*In re Grand Jury Procs.*,
   219 F.3d 175 (2nd Cir. 2000)..............................................................................................18

*Gretzinger v. Univ. of Haw. Prof'ls Assembly*,
   No. 97-15123, 1998 U.S. App. LEXIS 15370 (9th Cir. July 7, 1998) ....................................5

iii

*In re Harley-Davidson, Inc. Sec. Litig.*,
   660 F. Supp. 2d 969 (E.D. Wis. 2009)........................................................................21

*Heath v. Cast*,
   813 F.2d 254 (9th Cir. 1987) ....................................................................................2

*Herrera v. Eli Lilly & Co.*,
   No. 2:13-CV-02702-SVW-MAN, 2015 WL 12911753 (C.D. Cal. Aug. 3, 2015)................14

*Koonce v. Quaker Safety Prods. & Mfg. Co.*,
   798 F.2d 700 (5th Cir. 1986) ....................................................................................8

*L.D. v. EzyRoller, LLC*,
   No. 8:23-cv-01715-JLS-ADS, 2024 WL 5416670 (C.D. Cal. Nov. 25, 2024) ......................16

*Lane v. Am. Airlines, Inc.*,
   No. 18-CV-6110 (MKB), 2024 WL 1200074 (E.D.N.Y. Mar. 20, 2024) ...............................4

*Lindsey v. Normet*,
   405 U.S. 56 (1972).......................................................................................................3

*In re Mentor Corp. ObTape, Transobturator Sling Prods. Liab. Litig.*,
   MDL No. 2004, 2015 WL 7863032 (M.D. Ga. Dec. 3, 2015) .................................15

*Nichols v. Am. Nat'l Ins. Co.*,
   154 F.3d 875 (8th Cir.1998) ..................................................................................4, 5

*Oakley, Inc. v. Bugaboos Eyewear Corp.*,
   No. 09-CV-2037-JLS (JMA), 2010 WL 4117223 (S.D. Cal. Oct. 15, 2010).........................18

*Peltz v. City of Los Angeles*,
   No. 2:22-cv -03106-HDV-AGR, 2025 WL 1415327 (C.D. Cal. Apr. 28, 2025) ....................2

*Quang Minh Tran v. Cate*,
   No. SA CV 12-1439-SJO (PLA), 2013 WL 3755968 (C.D. Cal. July 13, 2013)....................8

*Sanchez v. Jiles*,
   No. CV 10-09384 MMM (OPX), 2012 WL 13005996 (C.D. Cal. June 14, 2012) .................2

*Santiago v. Phoenix Newspapers, Inc.*,
   794 P.2d 138 (Ariz. 1990)........................................................................................25

*In re Seroquel Prods. Liab. Litig.*,
   No. 6:06-md-1769-Orl-22DAB, 2009 WL 260989 (M.D. Fla. Feb. 4, 2009).........................15

*Sidibe v. Sutter Health*,
   103 F.4th 675 (9th Cir. 2024) ..................................................................................23

*Stevenson v. Holland*,
   504 F. Supp. 3d 1107 (E.D. Cal. 2020).......................................................................6

iv

*Swan v. Miss Beau Monde, Inc.*,
   566 F. Supp. 3d 1048 (D. Or. 2021) ...................................................................18

*U.S. v. Bustamente*,
   951 F.2d 363 (9th Cir. 1991) .............................................................................25

*U.S. v. Hankey*,
   200 F.3d 1160 (9th Cir. 2000) ...........................................................................11

*U.S. v. Vazquez-Torres*,
   92 F. App'x 502 (9th Cir. 2004) .........................................................................19

*U.S. v. White*,
   519 F.3d 342 (7th Cir. 2008) .............................................................................16

*In re Uber Rideshare Cases*,
   JCCP, Superior Court, Case No. CJC-21-005188, at 18-19 (Aug. 29, 2025).....................1, 23

*Udemba v. Nicoli*,
   237 F.3d 8 (1st Cir. 2001) ...................................................................................6

*United States v. Abel*,
   469 U.S. 45 (1984) .............................................................................................11

*United States v. Barrett*,
   No. 1:22-cr-00213-ADA-BAM-1, 2023 WL 7528606 (E.D. Cal. Nov. 13, 2023) ..................5

*United States v. Haischer*,
   780 F.3d 1277 (9th Cir. 2015) ...........................................................................10

*United States v. Kizer*,
   569 F.2d 504 (9th Cir. 1978) ...............................................................................7

*United States v. Marshall*,
   544 F. Supp. 3d 1032 (D. Mont. 2021)................................................................1

*World Tech Toys, Inc. v. CVS Pharmacy, Inc.*,
   No. 2:23-055667-MWC, 2024 WL 5706160 (C.D. Cal. Nov. 22, 2024)...............................12

**Rules**

Fed. R. Evid. 30(b)(6) ...........................................................................................10

Fed. R. Evid. 106 ..................................................................................................20

Fed. R. Evid. 403 ............................................................................................ *passim*

Fed. R. Evid. 404 ...........................................................................................4, 6, 12

Fed. R. Evid. 404(a).............................................................................................12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Evid. 404(a)(3) .................................................................................................12

Fed. R. Evid. 404(b) ........................................................................................................6

Fed. R. Evid. 404(b)(2) ....................................................................................................6

Fed. R. Evid. 412 .........................................................................................................4, 5

Fed. R. Evid. 412(a) ........................................................................................................4

Fed. R. Evid. 412(b) ........................................................................................................5

Fed. R. Evid. 609(a) .....................................................................................................6, 7

Fed. R. Evid. 801(c) ......................................................................................................19

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    RESPONSE TO MIL NO. 1: "EXCLUDE ARGUMENT OR EVIDENCE ON THE ABSENCE OF CRIMINAL CHARGES, PROSECUTION, OR CONVICTION OF PLAINTIFF'S UBER DRIVER"**

3

4

Plaintiff broadly seeks "to exclude any evidence, testimony, or argument that" Mr. Turay "was

5

not arrested, charged, prosecuted, convicted, or that a criminal investigation was closed without

6

charges." Mot. at 1. Plaintiff's motion should be denied because this evidence is highly relevant and

7

is not unduly prejudicial.

8

Plaintiff contends that "[f]acts about criminal proceedings have no bearing on Plaintiff's civil

9

claims against Uber," *id.*, but Plaintiff's case hinges on her claim that a sexual assault incident occurred

10

during a ride arranged on the Uber app. As such, evidence that goes to the credibility of Plaintiff's

11

account of the sexual assault incident—including the police investigation and subsequent decision not

12

to pursue criminal charges against Mr. Turay—is vitally important to Uber's defense and easily

13

satisfies the "low bar" for relevance. *See United States v. Marshall*, 544 F. Supp. 3d 1032, 1037 (D.

14

Mont. 2021) ("Relevance is a low bar.").

15

The JCCP court, in assessing the particular facts of an entirely different case, held that closure

16

of a criminal "investigation because of [the plaintiff's] failure to return [the police's] phone calls" was

17

"irrelevant" and "would reinforce the myth that a victim of sexual assault who does not promptly

18

report the attack is not to be believed." *See In re Uber Rideshare Cases*, JCCP, Superior Court, Case

19

No. CJC-21-005188, at 18-19 (Aug. 29, 2025) (Ex. 1). Those circumstances are not present here. ███

20

████████████████████████████████████████████████████████████

21

████████████████████████████████████████████████████

22

████████████████████████    *See* BW-Dean_Jaylynn_000024 (Ex. 2).

23

As courts in this circuit have recognized, "the unique facts and issues presented in this case" can render

24

failure-to-prosecute evidence relevant and admissible. *See Andrews v. Cnty. of Orange*, No. 8:20-cv-

25

00925-JWH-ADSx, 2021 WL 6496831, at *5 (C.D. Cal. July 27, 2021) (refusing "to enter a broad

26

order prohibiting any reference" to the decision not to prosecute because, "in view of the unique facts

27

and issues presented in this case, it is not clear that the potential for prejudice outweighs the probative

28

1

1  value of testimony or evidence"); *Peltz v. City of Los Angeles*, No. 2:22-cv -03106-HDV-AGR, 2025

2  WL 1415327, at *1 (C.D. Cal. Apr. 28, 2025) (denying motion to exclude reference to "[t]he decision

3  not to prosecute"; such evidence "[wa]s relevant to Plaintiffs'" civil claims).[1] That is the case here.

4      Plaintiff also argues that evidence of criminal outcomes or investigations would "improperly

5  invite jurors to conflate the separate standards in criminal and civil cases" and "spawn a collateral

6  'mini-trial' . . . regarding prosecutorial discretion and resources." Mot. at 1-3. But the fact that police

7  chose not to proceed with a criminal prosecution does not implicate standards of proof. And while

8  introduction of this evidence would undermine Plaintiff's account of what occurred on the night of the

9  alleged incident, that plainly does not constitute "*undue* prejudice." *Sanchez v. Jiles*, No. CV 10-09384

10  MMM (OPX), 2012 WL 13005996, at *4 (C.D. Cal. June 14, 2012) ("Before exclusion under Rule

11  403 is appropriate, evidence must create a risk of *unfair* prejudice, 'not simply the prejudice that any

12  relevant evidence would create.'") (citation omitted). In any event, any remote "risk of prejudice may

13  [] be ameliorated with appropriate cross examination or instruction to the jury." *Andrews*, 2021 WL

14  6496831, at *5. For all of these reasons, Plaintiff's motion should be denied.

15  **II.    RESPONSE TO MIL NO. 2: "EXCLUDE ARGUMENT OR EVIDENCE REGARDING**

16  ███████████████████████████████████████████████████

17      Uber opposes this MIL. While Uber does not intend to tell the jury that ██████████

18  ███████████████████████████████████████████████████████████

19  ████████████ is admissible to impeach testimony by Plaintiff that Uber caused or contributed to

20  her mental health injuries. A central issue at trial will be the accuracy of Plaintiff's self-report that the

21  alleged incident caused her to develop mental health injuries. ████████████████████

22  ███████████████████████████████████ tends to undermine the veracity of her

23  claims about her mental health here. Alternatively, and at the very least, the evidence should be

24
25  [1]    Plaintiff's cited cases from within the Ninth Circuit are factually inapposite because they involve exclusion of evidence of criminal charges that were dismissed on procedural grounds, *Heath v. Cast*, 813 F.2d 254, 260 (9th Cir. 1987) (cited in Mot. at 2), or charges actually filed against the plaintiff, *Clark v. City of Tucson*, No. CV 08-300-TUC-HCE, 2010 WL 11515475, at *8 (D. Ariz. Nov. 1, 2010) (cited in Mot. at 2). And in *Castro v. Cnty. of Los Angeles*, No. 2:13–cv–06631–CAS(SSx), 2015 WL 4694070, at *1 (C.D. Cal. Aug. 3, 2015), the defendant did not oppose the plaintiffs' motion to exclude reference to lack of criminal charges.

28

1    admitted if Plaintiff opens the door by suggesting that Uber caused her ███████████

2    ██████████████████████████████████. In such a case, the evidence would be relevant to show

3    that Plaintiff herself has ██████████████████████████████████

4    **III.** 

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB



DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB



DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB



IV.    **RESPONSE TO MIL NO. 4: "EXCLUDE ARGUMENT OR EVIDENCE REGARDING IRRELEVANT AND UNDULY PREJUDICIAL ASPECTS OF PLAINTIFF'S PERSONAL LIFE"**

Plaintiff seeks to exclude evidence relating to "familial disputes," ███████████ ███████████ and her parents' criminal convictions, arguing that such evidence is unfairly prejudicial, and that evidence of her parents' criminal convictions is barred by Fed. R. Evid. 609(a). Mot. at 5-6. Plaintiff's motion should be denied. A fundamental question at trial will be what caused or contributed to Plaintiff's alleged mental health injuries. Because this evidence "tends to show that something other than [Uber's] conduct caused" or contributed to those alleged injuries, "the probative value of this evidence is not substantially outweighed under Rule 403." *Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1138 (E.D. Cal. 2020). As noted above, this is especially so given Plaintiff's request for an instruction on aggravation of preexisting injury. Moreover, Rule 609(a) does not apply because Uber will not use evidence of Plaintiff's parents' criminal convictions to "attack[] [their] character for truthfulness." Fed. R. Evid. 609(a).

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

1

2

3

4

5

6

7       11/11/2025 Mechanic Dep. 165:16-24, 166:11-13, 170:5-23, 182:8-183:7.

8 Plaintiff argues that "[t]here is no evidence that these issues caused or contributed to any mental health

9 issue or emotional trauma Plaintiff suffers from today due to the sexual assault." Mot. at 6. But this

10 argument essentially assumes that Plaintiff has already proven causation.

11

12

13

14

15

16

17

18       *See* 11/11/2025 Mechanic Dep. 179:4-21; 291:1-18.[4]

19       Evidence related to Plaintiff's parents' criminal charges is also relevant and not unfairly

20 prejudicial.       *See* N.

21 Ramos Dep. 33:3-36:5 (Ex. 5).

22       *See* O. Ramos Dep. 105:16-106:22 (Ex. 6); Victoria Police Dep't Record (Ex. 3 to N.

23 Ramos Dep.) (Ex. 7). As Dr. Mechanic explains in her report,

24

25       9/26/2025 Mechanic Rep. (Dean) at 35 (ECF 4824-4). This includes

26

27 [4]   Plaintiff's citation to *United States v. Kizer*, 569 F.2d 504 (9th Cir. 1978), does not move the needle. *Contra* Mot. at 6. Unlike here, the witness's drug addiction in *Kizer* "was not logically relevant" to any issue in that case. 569 F.2d at 505-06.

28

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

1  ███████████████████. *See* 11/23/2025 Mechanic Dep. 98:17-99:5, 103:12-25 (Ex. 8). Nor is

2  this evidence rendered inadmissible by Rule 609(a). That Rule applies only to "evidence of a criminal

3  conviction," Fed. R. Evid. 609(a)—not all evidence relating to a criminal conviction. Moreover, Rule

4  609(a) applies only where the evidence of a criminal conviction is used "to attack[] a witness's

5  character for truthfulness." *Id.* That is not the purpose for which Uber seeks to introduce the evidence

6  here, as already explained. For this reason, too, the motion should be denied.

7  **V.    RESPONSE TO MIL NO. 5: "EXCLUDE ARGUMENT OR EVIDENCE OF PLAINTIFF'S POST-INCIDENT RIDESHARE USE"**

8          Plaintiff argues that any reference or evidence regarding her post-incident rideshare use should

9  be excluded because it is irrelevant and "unduly prejudicial." Mot. at 7. The JCCP trial court denied

10  an equivalent motion *in limine*, and this Court should similarly reject Plaintiff's arguments.

11          *First*, evidence concerning Plaintiff's continued rideshare use is highly relevant to her damages

12  claims. As the JCCP court recognized, JCCP Order at 19, in an individual case like this one where

13  Plaintiff asserts a claim for emotional distress and other ongoing adverse effects from the alleged

14  incident, "Plaintiff's post-incident use of Uber or other rideshare services bears on the credibility and

15  strength of her damages claims." This is so because Plaintiff's continued use of ridesharing services

16  tends to negate the severity of her claimed injuries. Additionally, evidence regarding Plaintiff's post-

17  incident rideshare use is relevant to her claim that Uber failed to provide her with adequate warning

18  concerning the dangers of sexual assault and misconduct. After all, Plaintiff's continued use of the

19  Uber app despite her alleged personal experience with the risk she claims Uber should have warned

20  about strongly supports an inference that she would have still used the Uber platform even if she had

21  been warned. *See Koonce v. Quaker Safety Prods. & Mfg. Co.*, 798 F.2d 700, 716 (5th Cir. 1986)

22  ("The manufacturer may . . . [introduce] evidence from which it could fairly be concluded that the

23  dangerous use of the product would likely have occurred despite a warning.").

24          *Second*, the probative value of post-incident usage is not substantially outweighed by undue

25  prejudice. "When the evidence has probative value, and the potential for prejudice resulting from its

26  admission is within tolerable limits, it is not ***unduly*** prejudicial and its admission" should be permitted.

27  *Quang Minh Tran v. Cate*, No. SA CV 12-1439-SJO (PLA), 2013 WL 3755968, at *12 (C.D. Cal.

28

8

July 13, 2013) (emphasis added). Plaintiff fails to appreciate the difference between evidence that may hurt her claims (which is admissible and proper) and evidence that is ***unduly prejudicial.*** There is nothing salacious, inflammatory or otherwise inherently prejudicial about evidence that Plaintiff continued to use rideshare services. For this reason, too, the motion should be denied.

## VI. RESPONSE TO MIL NO. 6: "EXCLUDE ARGUMENT OR EVIDENCE BASED ON UBER'S POST-LAWSUIT INVESTIGATION INTO COMPLAINTS FROM 'JENNIFER,' INCLUDING LATE-PRODUCED DOCUMENTS INDICATING THAT 'JENNIFER' ENGAGED IN UBER SUPPORT ABUSE"

Plaintiff seeks to preclude evidence that Uber investigated a 2019 safety complaint against Hassan Turay by a passenger named Jennifer and determined it to be unfounded. Uber conditionally opposes this motion. Uber has argued that Jennifer's false allegation against Mr. Turay should be excluded entirely, because it is irrelevant. *See* Uber's Motion *in Limine* to Exclude Prior Complaints, Incidents, Allegations, Poor Ratings, and Temporary Restrictions, ECF 4686 at 32 (Dec. 16, 2025). If the Court denies that motion and admits evidence regarding Jennifer's complaint, Uber would need to rebut that evidence by introducing testimony that Uber investigated Jennifer's many complaints and determined them to be invalid. Plaintiff's suggested approach—to admit Jennifer's complaint but exclude the fact that it was fraudulent—would mislead the jury and unfairly prejudice Uber.

In March 2019, a passenger named Jennifer submitted a complaint against Mr. Turay alleging that, during a ride, he complimented her appearance and made her boyfriend jealous. Brown Dep. Ex. 1989 (Ex. 9). Jennifer also submitted similar complaints against other drivers with whom she connected on the Uber app. Uber investigated Jennifer's complaint history, concluded that she had abused Uber's customer support system, and banned Jennifer from the platform. Brown Dep. 517:17-518:4 (Ex. 10). All of this occurred before the alleged incident involving Plaintiff and Mr. Turay. *Id.*

Plaintiff now argues that Uber's investigation of Jennifer is irrelevant because Uber did not investigate Jennifer specifically in connection with Mr. Turay. Mot. at 7. This argument is unpersuasive. Plaintiff also makes much of the fact that Uber's investigation report regarding Plaintiff's claims includes a reference to Jennifer's complaint against Mr. Turay. But an Uber company witness explained that this note remained on the investigation report only because Jennifer's complaint had no bearing on the outcome of the investigation against Mr. Turay insofar as he was banned

9

1   anyway. Had the prior complaint been of any relevance, the notation regarding Jennifer's complaint

2   "would have been changed to invalid." Brown Dep. 520:22-25.[5]

3        Plaintiff also argues that the evidence would cause "delay and confusion of the issues," Mot.

4   at 7, but her argument fails of its own weight. If Plaintiff's goal is a streamlined trial, she would not

5   be trying to introduce evidence about a false complaint against Mr. Turay by a banned passenger with

6   a history of support abuse. If the Court nonetheless admits this evidence, Uber is entitled to rebut it by

7   introducing evidence that it investigated Jennifer and determined that her complaints were false and

8   that she abused the customer support system. Excluding this context while allowing Plaintiff to discuss

9   the false allegations would present a grossly distorted picture of the facts, resulting in unfair prejudice

10  against Uber. *See United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015) (noting that "[u]nfair

11  prejudice is an undue tendency to suggest decision on an improper basis").

12       Finally, Plaintiff asserts that Uber disclosed Jennifer's support abuse for the first time at a Rule

13  30(b)(6) deposition and made "incomplete and unreliable" document productions on this subject. But

14  the reason that this information came up at a deposition is because Uber's witness was asked about it.

15  Plaintiff fails to cite a single discovery request regarding this topic. As Uber has previously noted, a

16  trial is a search for truth. Plaintiff's desire to give the jury half a story in the hopes that doing so will

17  advance her case is highly improper. For this reason, too, the motion should be denied.

**VII.   RESPONSE TO MIL NO. 7: "EXCLUDE ARGUMENT OR EVIDENCE REFERENCING NON-MATERIAL AMENDMENTS TO PLAINTIFF DEAN'S PLAINTIFF FACT SHEET"**

20       Plaintiff moves to preclude any argument or evidence referencing purportedly non-material

21  amendments in Plaintiff's Plaintiff Fact Sheet ("PFS"). The Court should deny this Motion.

22       *First*, although Plaintiff characterizes these amendments as "non-material," Mot. at 8, they are

23  in fact highly material. Plaintiff submitted her initial PFS in May 2024 and, over the following fifteen

24  months, amended her PFS at least six times. These amendments include significant new information,

25  such as Plaintiff "updating the location and timing of her assault . . . detailing additional descriptive

---

[5] Plaintiff also contends that "Uber's own expert Vida Thomas credited Jennifer's complaints." Mot. at 8. But Ms. Thomas's expert report merely notes the existence of Jennifer's complaints; it in no way "credit[s]" them, as Plaintiff misleadingly suggests. Thomas Report at 14, ECF 4375-4.

1  facts; [and] acknowledging out-of-pocket costs." *Id.* For example, in her fourth amended PFS,

2  submitted in February 2025 (over a year after the alleged incident and approximately nine months

3  after submitting her initial PFS), Plaintiff added new details about the alleged assault, including that

4  ███████████████████████████████████████████████████████████

5  ████████████████████  Notably, Plaintiff abandoned these claims in later amendments to the PFS.

6  Plaintiff also changed her damages theory in her fourth amended PFS, dropping her claim for lost

7  wages and adding for the first time a claim for out-of-pocket medical expenses. These amendments

8  could not possibly have resulted from Plaintiff's "ongoing duty to amend and correct" discovery

9  responses, *id.*, because Plaintiff's recollections about the incident and her resulting out-of-pocket costs

10  were or should have been known to her at the time she filed her original PFS.

11       What these amendments actually reflect is Plaintiff changing her story—not about peripheral

12  items but on central questions of what happened during the alleged incident—and adding new damages

13  claims after the fact. This is highly relevant information for the jury because it plainly bears on

14  Plaintiff's credibility. *See, e.g., U.S. v. Hankey*, 200 F.3d 1160, 1171 (9th Cir. 2000) (holding that

15  "[e]vidence helpful in evaluating the credibility of a witness is of consequence to the determination of

16  the action," even if the evidence has only "mere tendency to impeach a witness' credibility").

17       **Second**, introducing the fact of these amendments would not cause Plaintiff to suffer unfair

18  prejudice. Plaintiff argues that this evidence should be barred because it invites the jury to infer that

19  she is "inconsistent, unreliable, or untruthful." Mot. at 9. To be sure, this evidence is potentially

20  prejudicial to Plaintiff in the sense that it is unfavorable to her, but that does not mean it is *unfairly*

21  prejudicial, and certainly does not mean that it should be excluded under Rule 403. Under Plaintiff's

22  logic, Rule 403 would bar as unfairly prejudicial any evidence going to a party's credibility. *See United*

23  *States v. Abel*, 469 U.S. 45, 56 (1984) ("It would be a strange rule of law which held that relevant,

24  competent evidence which tended to show bias on the part of a witness was nonetheless inadmissible

25  because it also tended to show that the witness was a liar.").

26       **Third**, Plaintiff analogizes the PFS amendments to pleading amendments and argues that the

27  latter are generally inadmissible. But as she concedes earlier in her motion, Mot. at 9, the PFS is more

28

properly characterized as a discovery response than a pleading. In any event, at least one trial court in this Circuit has held that pleading amendments ***should*** be admitted where, as here, they "are related to the accuracy and completeness of prior allegations" (rather than to legal and strategy decisions), because such amendments are "probative of the pleader's credibility." *World Tech Toys, Inc. v. CVS Pharmacy, Inc.*, No. 2:23-055667-MWC (JPRx), 2024 WL 5706160, at *3 (C.D. Cal. Nov. 22, 2024).

***Finally***, Plaintiff's suggestion that the PFS amendments constitute inadmissible character evidence, requiring exclusion under Rule 404, is meritless. Uber would not introduce the amendments "to prove that on a particular occasion [Plaintiff] acted in accordance with [a] character" for untruthfulness. Fed. R. Evid. 404(a). Rather, it would introduce the amendments to impeach the credibility of Plaintiff's trial testimony, as it is plainly entitled to do. *See* Fed. R. Evid. 404(a)(3); 607.

## VIII.    RESPONSE TO MIL NO. 8: "EXCLUDE UNTIMELY OR NON-PRODUCED EVIDENCE"

Plaintiff asks the Court to (1) preclude an Uber employee, Todd Gaddis, from testifying that Ms. Dean's ride was not audio-recorded, and (2) exclude a spreadsheet reflecting training courses Uber sent to Mr. Turay. Mot. at 9-11.[6] None of this evidence should be excluded.

*Mr. Gaddis's Testimony*. This Court has already rejected Plaintiff's motion to preclude Mr. Gaddis from testifying that Ms. Dean's ride was not audio-recorded. *See* ECF 4740, Order (denying Plaintiff's motion to preclude). Plaintiff's motion *in limine* largely tracks her previous motion, asks for identical relief, and should again be denied. *See generally* ECF 4709, Defs.' Opp'n to Pl.'s Mot. to Preclude at 9-11 (responding to Plaintiff's argument).[7]

---

[6]    Plaintiff's motion includes two other requests as well. Plaintiff asks the Court to exclude evidence of "sexual assault/misconduct rates from 2025." Mot. at 11. Uber does not intend to introduce evidence of sexual assault or misconduct rates from 2025, and thus does not oppose Plaintiff's motion in this narrow respect. Plaintiff also requests the exclusion of "any evidence that Uber belatedly produced or has not produced," without providing any further detail. Mot. at 9. That broad, vague request should be denied. "[M]otions in limine that seek exclusion of broad and unspecific categories of evidence . . . are generally disfavored." *Camenisch v. Umpqua Bank*, 763 F.Supp.3d 871, 894 (N.D. Cal. 2025) (internal quotation marks omitted).

[7]    As Uber previously explained, Mr. Gaddis's testimony is necessary to ensure that jurors are not left with the false impression that the ride was recorded. Moreover, Plaintiff will not be unfairly prejudiced by Mr. Gaddis's testimony. Plaintiff admits that Uber has "ma[d]e Mr. Gaddis available for deposition," Mot. at 10, and that deposition is now scheduled for January 12. Because Plaintiff "will have the opportunity to depose" Mr. Gaddis, she "will suffer no prejudice." *Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*, No. 10-373 ABC (CWx), 2013 WL 12122803, at *5 (C.D.

1       *The Training Spreadsheet*. Plaintiff also moves to exclude a 12-row, 5-column spreadsheet

2   listing certain training courses sent to and completed by Mr. Turay. *See* UBER-MDL3084-BW-

3   00054160 (Ex. 11). Uber produced this training spreadsheet on December 3, 2025, and timely

4   disclosed it on its exhibit list. *See* ECF 4672-6, Defs.' Initial Trial Ex. List ¶ 137.

5       Plaintiff does not contend that she is surprised by anything on this spreadsheet. *See* Mot. at 11.

6   And for good reason: Uber produced a 43,267-row log of communications with Mr. Turay—which

7   Plaintiff used to question Uber witness Greg Brown at his deposition, *see* 7/15/2025 Brown Dep. 30:7-

8   12 (Ex. 12)—and that log also reflects that Uber sent Mr. Turay the sexual-assault-related training

9   courses listed on the spreadsheet produced on December 3, 2025:[8]

| Date Sent | Training Name | Training Log Row | Communications Log Row(s) |
|---|---|---|---|
| 2/9/2023 | rider-community-guidelines-recommit | 2 | 22069 |
| 1/28/2022 | driver-community-guidelines-recommit-global | 5 | 35239, 38111 |
| 5/19/2021 | driver-sa-sm-education-multiple | 7 | 41624, 42690 |
| 11/14/2020 | driver-sa-sm-education-multiple | 10 | 42559, 42573 |

*See* Decl. of Christopher Cox (Dec. 28, 2025), ¶¶ 7-17.

       The only new information on the training spreadsheet with respect to these four courses is the

inclusion of completion dates for three of them.[9] But the fact that Mr. Turay completed those training

courses is not new information. When asked whether he had been informed about "the law on sexual

activity and consent," Mr. Turay testified that he went "through all the guidelines [Uber] gave" and

that he "did do a training with Uber . . . on the app" that involved "different scenarios." 7/23/2025

Turay Dep. 85:12-86:10 (Ex. 13). Mr. Brown likewise testified that Mr. Turay (i) would have received,

---

Cal. June 21, 2013).

[8]   The training spreadsheet also includes information about training that does not relate to sexual assault, such as covid- and food-related training.

[9]   The November 14, 2020, training entry does not include a completion date.

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

1  and would have had to "affirm[] his understanding of" Uber's "community guidelines," and

2  (ii) "would have needed to complete educational content related to sexual violence and other topics as

3  covered in a series of video modules that [Uber] had co-produced with" the Rape, Abuse & Incest

4  National Network. 7/15/2025 Brown Dep. 16:1-25.[10] Plaintiff complains that Mr. Brown did not

5  "indicate that Uber maintained a log of Turay's trainings," Mot. at 11, but she tellingly does not assert

6  that she ever *asked him* if such a log exists.

7          In a last-ditch effort to exclude this spreadsheet, Plaintiff argues that "Uber should have

8  produced this document in response to Plaintiffs' March 26 discovery requests, which sought

9  'materials reflecting training Uber required the Subject Driver to take at any time.'" *Id.* But Uber ***did***

10  produce these training materials to Plaintiff. *See* Cox Decl., ¶¶ 18-19. And even assuming that

11  Plaintiff's March 26 discovery request could be construed to encompass this training spreadsheet,

12  Plaintiff does not identify any prejudice she incurred from Uber's production of the spreadsheet

13  because, as explained above, there is none. The training spreadsheet simply streamlines the parties'

14  ability to share the training information with jurors at trial.

15  **IX.     RESPONSE TO MIL NO. 9: "EXCLUDE ARGUMENT OR EVIDENCE REGARDING
          CONTINGENCY FEES, ATTORNEY ADVERTISING, OR 'ATTORNEY-DRIVEN'
16        LITIGATION"**

17          Plaintiff seeks to exclude any evidence or argument regarding attorney advertising, the fee

18  structure of Plaintiff's counsel, Plaintiff's financial incentive in filing suit, and any words to the effect

19  that the litigation is "attorney driven" or "lawyer-manufactured." Mot. at 12. While Uber does not

20  intend to address Plaintiff's counsel's fee structure, the manner in which Plaintiff became aware of

21  her potential claims is highly relevant to credibility and bias.

22          The fact that ███████████████████████████████████████

23  ██████████████████████████ is highly probative of her credibility as a witness. *See* 6/27/2025 Dean

24  Dep. 251:22-23. In particular, such evidence is probative of "Plaintiff[']s[] decision to file the case"

25  and whether that course of action was grounded in a sincere belief that she had a bona fide claim of

26

27  _____
    [10]   This testimony belies Plaintiff's false assertion that Mr. Brown "was not able to point to any
28  specific trainings Uber required Turay to take." Mot. at 11 (citing 7/15/2025 Brown Dep. 26:10-28:8).

injury against the defendant. *See Herrera v. Eli Lilly & Co.*, No. 2:13-CV-02702-SVW-MAN, 2015 WL 12911753, at *4 (C.D. Cal. Aug. 3, 2015) (denying motion to exclude attorney advertising "insofar as this motion concerns evidence relating to Plaintiffs' decision to file the case"); *see also, e.g.*, *In re Mentor Corp. ObTape, Transobturator Sling Prods. Liab. Litig.*, MDL No. 2004, 2015 WL 7863032, at *5 (M.D. Ga. Dec. 3, 2015) (denying motion to exclude evidence of TV commercials regarding ObTape and other mesh litigation because it is relevant to "how [plaintiffs] discovered their potential claims"); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2009 WL 260989, at *7 (M.D. Fla. Feb. 4, 2009) (attorney advertising is relevant to determine whether "it played a role in a [p]laintiff's belief that he or she suffered injury as a result of Seroquel"); *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, 2014 WL 505234, at *3 (S.D. W. Va. Feb. 5, 2014) (denying plaintiff's motion in limine to exclude evidence that the plaintiff "was prompted by a television commercial to file suit"; evidence "is probative of her credibility regarding her injuries").

Plaintiff quotes extensively from various closing arguments that one of Uber's counsel made in unrelated cases involving different parties to argue that counsel will likely make similar arguments here as well—i.e., that lawyers, motivated by the prospect of pecuniary gain, drummed up their claims against Uber. *See* Mot. at 12 n.6. Notably, Plaintiff's references to the transcripts from these other trials lack a single citation to a sustained objection to this line of argument. In any event, Uber does not intend to criticize Plaintiff's lawyers; rather, Uber merely seeks to probe what (if any) role attorney advertising played in Plaintiff's decision to initiate this lawsuit. Plaintiff highlights the fact that the JCCP court granted a similar motion, but that court reasoned that "[t]hese cases are about Plaintiffs' claims on the merits, not about how they learned of ***counsel's willingness to represent them or the terms on which they agreed to do so***." JCCP Order at 20 (emphases added). Because Uber has no intention of probing those subjects, that reasoning is inapplicable here.

For all of these reasons, the motion should be denied insofar as it concerns attorney advertising.

## X. RESPONSE TO MIL NO. 10: "EXCLUDE ARGUMENT OR EVIDENCE CONCERNING THE PERSONAL USE OF UBER BY COUNSEL, WITNESSES, OR THEIR FAMILY OR FRIENDS"

Plaintiff seeks to preclude any argument or evidence concerning personal use of the Uber app

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

by Uber's counsel, witnesses, their family members, or their friends. Uber does not oppose this motion to the extent it seeks to preclude Uber's counsel from discussing their personal experiences with Uber or other rideshare platforms. However, Uber opposes Plaintiff's motion to the extent it seeks a categorical bar against ***all*** witnesses' testimony concerning their and their family's use of Uber (and other rideshare apps) because such evidence and testimony is relevant and is not unfairly prejudicial. The JCCP court denied a substantially similar motion in part,[11] ruling that testimony from "Uber's witnesses" that they (or their family members) use the platform "may be relevant to their credibility." *Id.* at 22. This Court should do the same.

***First***, Uber's witnesses are "entitled to testify as to any anecdotal experiences [they or their families] had using [Uber's app], so long as [they have] personal knowledge of these experiences and th[e] testimony does not constitute hearsay." *L.D. v. EzyRoller, LLC*, No. 8:23-cv-01715-JLS-ADS, 2024 WL 5416670, at *4 (C.D. Cal. Nov. 25, 2024) (denying plaintiff's motion in limine to exclude defendant's CEO's or his family member's experiences using defendant's product). Moreover, to the extent Plaintiff attacks the credibility of Uber's witnesses with regard to their testimony addressing the safety of Uber, Uber "may rehabilitate that witness through evidence that the witness [or their family] personally used [Uber's app]." *In re Fosamax Prods. Liab. Litig.*, No. 06 MD 1789 (JFK), 2013 WL 174416, at *2 (S.D.N.Y. Jan. 15, 2013). Such evidence is relevant because it tends to show that the witness believed it was safe to use the Uber app. *See U.S. v. White*, 519 F.3d 342, 346 (7th Cir. 2008) (holding that "a witness whose credibility has been attacked may be rehabilitated").

Evidence and testimony by Uber's witnesses that they (or their family members) used Uber or other rideshare platforms is also relevant to Plaintiff's punitive damages claim. The fact that Uber's witnesses continued to use (or allowed their family members to continue to use) Uber's app is relevant to show that they believed that it was safe. *See In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, No. 2:18-cv-01320, 2021 WL 5577409, at *3 (S.D. Ohio Nov. 30, 2021) (denying in part plaintiffs' motion in limine and noting that "[a] decision maker's personal use or

---

[11]  The JCCP court granted the motion with respect to Uber's counsel, their family members and friends as unopposed. *See* JCCP Order at 22. As noted above, Uber does not oppose that portion of Plaintiff's motion here either.

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

1    recommendation . . . may be used to show the [defendant's] state of mind").

2        **Second**, this evidence would not be unfairly prejudicial. Plaintiff argues that evidence and

3    testimony by Uber's witnesses that they (or their family members) used Uber's app "would also

4    improperly conflate individual preference with corporate responsibility." Mot. at 14. But as just

5    discussed, a witness's "individual preference" for use of rideshare applications has a clear and direct

6    tendency both to refute any attacks on that witness's credibility and to challenge the notion of corporate

7    intentionality. Plaintiff is free to cross-examine witnesses on why such a preference does not outweigh

8    Plaintiff's proffered theory of corporate responsibility. Plaintiff also contends that admitting this

9    evidence "risks reinforcing jurors' own familiarity or experiences with Uber[.]" *Id.* But just as jurors

10   will be able to put their own experiences aside in evaluating **Plaintiff's** claims, so too will jurors be

11   able to separate their own personal circumstances from those of **Uber's** witnesses.

12       **Third**, Plaintiff claims that Uber should be prohibited from introducing testimony on this topic

13   because Uber did not produce discovery related to its witnesses' and their family members' personal

14   use of the Uber app. *Id.* But Plaintiff's counsel has repeatedly questioned Uber witnesses during their

15   depositions about their (and their family members') personal use of the Uber app and have been

16   provided with the very evidence they claim Uber refused to produce during discovery. *See* 5/28/2025

17   Kansal Dep. 432:10-433:1 (Ex. 14) ("Q. You allow your wife to take an Uber at 2:00 a.m. on a

18   Saturday night after she's been drinking?"); 4/29/2025 Fuldner Dep. 664:7-16 (Ex. 15) ("Q. You'd

19   put your wife in an Uber at 2:00 A.M. on a Saturday near bars?"). For this reason, too, the motion

20   should be denied.

21   **XI.    RESPONSE TO MIL NO. 11: "EXCLUDE EVIDENCE OR ARGUMENT THAT UBER**
22   **         WAS LEGALLY PROHIBITED OR CONSTRAINED FROM IMPLEMENTING**
             **SAFETY MEASURES"**

23       Plaintiff seeks to bar "any evidence, testimony, or argument suggesting that [Uber] was legally

24   prohibited or otherwise constrained by legal considerations from implementing effective safety

25   measures—including dashcams, a woman-to-woman matching option, or risk-based dispatch." Mot.

26   at 14-15. According to Plaintiff, Uber is attempting to use attorney-client privilege "as both a sword

27   and a shield." *Id.* This argument rests on a fundamental misunderstanding of the law, and the motion

28

1    should be denied for the same reason Judge Schulman denied it in the JCCP.[12]

2          The "sword and shield" doctrine holds that "a party cannot partially disclose privileged

3    communications or affirmatively rely on privileged communications to support its claim or defense

4    and then shield the underlying communications from scrutiny by the opposing party." *Swan v. Miss*

5    *Beau Monde, Inc.*, 566 F. Supp. 3d 1048, 1066 (D. Or. 2021), quoting *In re Grand Jury Procs.*, 219

6    F.3d 175, 182 (2nd Cir. 2000); *see also Oakley, Inc. v. Bugaboos Eyewear Corp.*, No. 09-CV-2037-

7    JLS (JMA), 2010 WL 4117223, at *3 (S.D. Cal. Oct. 15, 2010) (refusing to find attorney-client

8    privilege waived where there was "no showing that [the plaintiff] has actually asserted the advice of

9    counsel defense," plaintiff had "not relied upon the advice of counsel to defend itself in any pleadings

10   filed with the Court," and there was "nothing in the record before the Court that shows that [plaintiff]

11   has produced or presented evidence of its reliance upon the advice of counsel").

12         Here, Plaintiff has made no showing that Uber has disclosed or will affirmatively rely on

13   attorney-client privileged communications at trial—in other words, that Uber will use the privilege as

14   a sword. Nor could she. Uber has no intention of offering testimony at trial that would be subject to

15   the attorney-client privilege or of asserting an "advice of counsel" defense. Instead, it intends to

16   present ***non-privileged*** evidence about how legal considerations factored into lay employees' decision-

17   making process, which is relevant to determining whether Uber acted reasonably. The jury cannot

18   properly evaluate this question without a full understanding of Uber's decision-making—including

19   legal risks the company considered. For example, understanding that Uber executives considered

20   liability risk under employment and privacy laws in declining to mandate dashcams could lead a juror

21   to conclude that Uber's decision was reasonable. Similarly, Uber's concerns about the potential for

22   discrimination claims due to the launch of women driver preferred (which has in fact now happened)

23   are relevant to the jury's consideration of Uber's conduct. Uber must be allowed to explain to jurors

24   why these types of features cannot be launched without consideration of their potential legal impact.

25   Thus, Uber may present evidence or testimony that ***non-legal*** personnel took the potential for liability

26

27   ---
     [12]   Judge Schulman held that plaintiffs had failed to demonstrate that Uber intended to use the
     privilege as both a sword and a shield. *See* JCCP Order at 10.

28
     ────────────────────────────
     DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
     Case No. 3:23-md-03084-CRB

1    into account when personally evaluating proposed safety measures. Such evidence is not subject to

2    the attorney-client privilege, which protects communications to and from the company's lawyers that

3    seek or provide legal advice. Uber has no intention of presenting the jury with evidence revealing its

4    legal counsel's privileged legal advice.

5            Plaintiff argues that Uber invoked the attorney-client privilege during certain depositions and

6    that Uber "withheld over 110,000 documents in whole or in part on the basis of attorney-client and

7    work-product privileges, including communications and documents bearing directly on its alleged

8    'legal considerations' behind refusals to adopt safety measures." Mot. at 15. But this only shows that

9    Uber has used the privilege as a shield, which is its intended purpose. Absent a showing that Uber has

10   also used, or intends to use, the privilege as a sword, Plaintiff's motion should be denied.

11   **XII.    RESPONSE TO MIL NO. 12: "EXCLUDE ARGUMENT OR EVIDENCE OF NON-
          PROFIT ENDORSEMENTS OF UBER'S SAFETY DATA OR POLICIES RELATED
12        TO SEXUAL ASSAULT"**

13           Plaintiff seeks to exclude evidence concerning Uber's partnership with nonprofit organizations

14   on the ground that such evidence "is both hearsay and undisclosed expert testimony." *Id.* at 17. Neither

15   argument has merit.

16           *First*, the evidence is not hearsay, is admissible for a non-hearsay purpose, or both. Plaintiff

17   targets any testimony suggesting that "Uber's purported safety efforts—including its U.S. Safety

18   Reports—were endorsed by various non-profit groups." *Id.* But the fact of Uber's work with such

19   groups is not hearsay to the extent it is addressed through testimony of Uber witnesses with personal

20   knowledge of such work. *See U.S. v. Vazquez-Torres*, 92 F. App'x 502, 504 (9th Cir. 2004) ("On its

21   face, the statement is not hearsay, as Mario appears to be asserting his personal knowledge of the fact

22   and does not reference an out-of-court statement made by someone else.") (citing Fed. R. Evid.

23   801(c)). Plaintiff does not cite any authority in her motion holding otherwise.

24           While the "endorse[ments]" themselves may be out-of-court statements, they are admissible

25   and highly probative for non-hearsay purposes. Statements to Uber by nonprofits about the quality and

26   efficacy of its safety efforts go to reasonable care and state of mind, which are relevant to negligence

27   and punitive liability. For example, Emilie Boman explained that in order to guide Uber's efforts to

28

                                                    19

synthesize and publish on reported sexual assault and misconduct incidents in the Safety Reports, Uber had to "work with advocate organizations around the creation of the taxonomy" and rely on "experts and advocate organizations to understand how to do this because it was the first time a company was talking about these issues publicly." 10/1/2025 Boman 30(b)(6) Dep. 248:21-249:9 (Ex. 16). Statements by nonprofits to Uber about the Safety Reports are thus necessary to explain to jurors how Uber decided which data went into the Safety Reports and how the data were audited and classified. This evidence is particularly relevant given Plaintiff's experts' criticisms of the Safety Reports.[13]

*Second*, Plaintiff's alternative assertion that the statements of nonprofits somehow constitute "expert or opinion evidence," Mot. at 18, is equally without merit. Plaintiff suggests that such statements would unfairly prejudice the jury because "Uber explicitly presents these non-profits as 'experts,' circumventing the safeguards for expert or opinion evidence." *Id.* But the premise of this argument—that passing references to non-profits in internal communications as "experts" somehow render their statements subject to the rules of expert disclosures—makes no sense. Nor does the fact that Plaintiff thinks this evidence will somehow undermine her case provide any basis to exclude it. Plaintiff has had ample opportunity to depose Uber witnesses about these statements, or if desired, to seek discovery from the nonprofits. There is no basis to exclude them.

## XIII. RESPONSE TO MIL NO. 13: "EXCLUDE ARGUMENT OR TESTIMONY REGARDING LOW OR RARE PREVALENCE OF SEXUAL VIOLENCE ON UBER'S PLATFORM COMPARED TO SOCIETY IN GENERAL OR OTHER FORMS OF TRANSPORTATION OR OTHER IRRELEVANT SCENARIOS"

Plaintiff asks the Court to exclude evidence that: (1) sexual violence is a problem in society at large; (2) the rate of sexual violence on rides arranged through the Uber app is low and rare; and (3) Uber is safer than society in general, other forms of public transportation, and other fairly rare events. Mot. at 18-20. The JCCP court denied a materially identical motion, holding that "[t]he prevalence of sexual violence in other forms of transportation and in society as a whole logically bears on the extent to which Uber knew, or should have known, of a foreseeable risk that such misconduct might occur on its platform." JCCP Order at 17-18. This Court should deny the motion as well.

---

[13] At a minimum, this evidence is admissible under the rule of completeness. *See* Fed. R. Evid. 106.

20

First, the evidence is relevant both to negligence and to punitive liability. Evidence showing that rides arranged through the Uber app are safer than society in general or other public-transportation options is relevant to whether Uber acted negligently and whether its conduct was so egregious that it can be held liable for punitive damages. This is particularly so because Plaintiff intends to argue that "Uber received approximately 558,918 sexual violence reports" from 2017 through 2024. Mot. at 20. Courts routinely hold that such absolute numbers are meaningless without context. *See, e.g.*, *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 986 (E.D. Wis. 2009) (allegation that certain dealerships had between 3,000 and 5,000 units per day of excess inventory "is not very helpful" absent "comparisons to historical inventory levels" or "'normal' inventory levels"). The evidence Plaintiff hopes to exclude puts her frightening-sounding statistics (and indeed the fundamental premise of her lawsuit) into proper context.

Plaintiff also argues that this evidence is supposedly "speculative" or "misleading" because "not all rides share the same risk profile," and Uber's witnesses did not analyze the data in the manner that Plaintiff prefers. Mot. at 19-20. But the data show that individuals have arranged **billions** of rides on the Uber app, and the sexual-assault and sexual-misconduct rate **is** low. Thus, Uber's witnesses' testimony to that effect is not speculative.[14] Plaintiff's disagreement is fodder for cross-examination—not wholesale exclusion of evidence. Accordingly, the motion should be denied.

## XIV. RESPONSE TO MIL NO. 14: "EXCLUDE ARGUMENT OR EVIDENCE THAT UBER HAS HELPED REDUCE DRUNK DRIVING RATES"

Plaintiff seeks to exclude testimony or argument that Uber has helped reduce drunk driving rates. Plaintiff argues that this evidence lacks a sufficient foundation, is irrelevant, and is unduly prejudicial. None of these arguments has any merit.

***First***, Plaintiff is incorrect to suggest that Uber witnesses lack evidentiary foundation to testify that the availability of the Uber app reduces drunk driving. Plaintiff cites one sentence of deposition

---

[14]   Citing a snippet of testimony from a single Uber witness, Rebecca Payne, Plaintiff argues that "Uber admits it lacks the evidence necessary to support such statements." Mot. at 19. But Ms. Payne was not designated to testify about this topic. *See* Pls.' 2d Am. Notice of Dep., Ex. 2501 to 4/2/2025 Payne Dep. Indeed, right before the testimony Plaintiff quotes, Uber objected to the question on the ground that it was "outside the scope of her PMK." 4/2/2025 Payne Dep. 253:17-254:3 (Ex. 17).

testimony by a former Uber communications executive that "we had a lot of . . . anecdotal data, anecdotal information, stories of people being able to use Uber in lieu of drunk driving." Mot. at 21 (citing 2/7/2025 Hourdajian Dep. 154:8-16 (Ex. 18)). But this witness was describing how Uber *marketed* its rides as a safer alternative for intoxicated people, *i.e.*, how Uber highlighted in its marketing materials "stories of people being able to use Uber in lieu of drunk driving." She was not purporting to provide, and was not asked to provide, a comprehensive list of the evidence that the availability of the Uber app in fact reduces drunk driving. *See* 2/7/2025 Hourdajian Dep. 153:15-156:3.

Plaintiff also points to an Uber internal email stating that ride-sharing "must have had an impact on reducing [] [drunk driving] incidents," although the magnitude of this effect was "very hard/impossible to quantify." Mot. at 21 (citing UBER_JCCP_MDL_004910959). But the fact that exact statistics may be hard to precisely quantify does not establish a lack of foundation for a witness's inference from the data that do exist. *E.g.*, *id.* at 21 n.13 (citing Uber employee's deposition testimony that he has seen "lots of studies [] that Uber is significantly reduc[ing] accidents and fatalities associated with drunk driving," by people not getting behind the wheel when they've been drinking or getting behind the wheel with someone that's been drinking).

***Second***, the evidence is undoubtedly relevant. Indeed, Plaintiff herself put it at issue. In the Master Long-Form Complaint, Plaintiff alleges that "Uber also specifically markets its rides as a safe, smart transportation option for intoxicated riders," that "Uber heavily promotes its rides, on New Year's Eve and other holidays, as a safe way to get home after an evening of drinking," and that "Uber engages in joint marketing with alcohol manufacturers and local bars." Master Long-Form Complaint ("Master Compl."), ECF 269 ¶ 22; *see also id.* ¶ 233 ("In 2015, Uber released a report with Mothers Against Drunk Driving that states . . . that with Uber, intoxicated persons can find 'a safe, reliable ride home' that is 'always within reach.'"); *id.* ¶ 237 ("Uber partners with alcohol manufacturers and bars to promote drinking and riding with Uber in tandem.").

Plaintiff's experts also offered opinions on alcohol and driving in connection with Plaintiff's duty-to-warn argument. *E.g.*, Drumwright Rep. ¶ 296 (ECF 4352) ("Uber . . . actively marketed to consumers who had been drinking."); *id.* ¶ 304 ("Uber has continued to target passengers who are

drinking, intoxicated, or going out to take Uber, through its own marketing and partnerships with MADD"); Valliere Rep. at 35 (ECF 4340) ("Uber places the responsibility for safety to others (avoid drunk driving) and on the passenger while promising to provide safety to that same passenger"). Plaintiff cannot put drunk driving at issue in the context of her failure-to-warn claims and then prevent Uber from challenging those claims with contrary evidence.

Evidence about Uber and drunk driving is also relevant because it demonstrates Uber's intent and its employees' beliefs concerning this issue, which goes to the standard of care and punitive damages. At a bare minimum, the fact that Uber company witnesses believed and testified that the work that they were doing was making transportation safer negates the state of mind necessary to support punitive damages. *See, e.g.*, *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 934795, at *2 (D. Ariz. Feb. 15, 2018) (allowing evidence related to defendants' business and good deeds to the extent necessary "to rebut Plaintiffs' themes, stated repeatedly throughout briefing on the expert motions, that Defendants knowingly disregarded patient safety, used patients for experimentation, and placed profits over safety").

***Third***, the probative value of this evidence exceeds any supposed prejudice to Plaintiff. Uber is not only offering this evidence, as Plaintiff suggests, as an example of Uber's "good acts or reputation." Mot. at 22. Rather, this evidence directly rebuts the allegations above that Uber's marketing and other public statements about the Company's impact on drunk driving were somehow inaccurate or improper. And far from prejudicing Plaintiff, excluding this evidence would cause ***Uber*** to suffer unfair prejudice, undermining its ability to adequately defend itself. *See Sidibe v. Sutter Health*, 103 F.4th 675, 699 (9th Cir. 2024) (where evidence is "highly relevant, any risk of prejudice or other dangers must be very high to justify exclusion" under Rule 403).

## XV.    RESPONSE TO MIL NO. 15: "EXCLUDE ARGUMENT OR EVIDENCE THAT UBER DRIVERS ARE SAFER DRIVERS THAN THE AVERAGE DRIVER"

Plaintiff asks the Court to "exclude any evidence or argument that Uber drivers are safer drivers than the average driver," on the theory that "such assertions are irrelevant, minimally probative . . . and highly misleading." Mot. at 22-23. Plaintiff is wrong.

Plaintiff has made safety—writ large—a central issue in this litigation. The Master Long-Form

23

Complaint, which Plaintiff has incorporated by reference (Pl.'s Am. Compl., ECF 2506 at 1), includes dozens of allegations about safety. *See, e.g.*, Master Compl. ¶ 12 (alleging that Uber's "ubiquitous messaging generated reassurance that passengers could count on Uber to keep them safe"), ¶ 189 (alleging that "Uber's passengers are relying on Uber's express and implied promise to provide a safe ride, and Uber's reputation for safety"), ¶¶ 207-08 (alleging that marketing that rides arranged on the Uber app were "the safest rides on the road" was "false"). Indeed, Plaintiff claims that Uber was negligent by, among other things, "market[ing] its product as one that would provide safety for passengers, lulling passengers into a false sense of security," *id.* ¶ 365(c), and is liable for punitive damages because, among other things, Uber "misrepresented the safety of its rides to Plaintiffs and the public, intentionally and actually inducing reliance on those statements and omissions," *id.* ¶ 349.

Having placed Uber's general representations about safety front and center, Plaintiff cannot now demand that the Court exclude evidence showing that drivers who use the Uber app ***are*** safer than the average driver. Plaintiff's motion should therefore be denied.

## XVI.  RESPONSE TO MIL NO. 16: "EXCLUDE ARGUMENT OR EVIDENCE THAT UBER DRIVERS PREFER THE INDEPENDENT CONTRACTOR MODEL"

Plaintiff contends that evidence regarding drivers preferring independent-contractor status is irrelevant because such preferences do not bear on whether Uber acted negligently or "controls its drivers" for vicarious-liability purposes. Mot. at 23. Plaintiff is wrong on both issues. Most drivers on the Uber platform drive less than 20 hours a week and their platform experience—including their preference for being independent contractors—feeds into Uber's business decisions. Plaintiff cannot seek to exclude this fact simply because she does not like it.

***First***, whether drivers prefer an independent-contractor model is relevant to whether Uber acted reasonably in weighing "the burden of taking [certain] precautions against the probability and probable gravity of the anticipated harm ...." *Galindo v. TMT Transp., Inc.*, 733 P.2d 631, 633 (Ariz. Ct. App. 1986). For example, Plaintiff alleges that Uber unreasonably failed to implement mandatory dashcams; but if mandating dashcams would add to the risk of transforming drivers into employees and alienate drivers, that potential cost is relevant to whether Uber acted reasonably. Esteves 8/28/2025 Dep. 123:1-16 (Ex. 19). The same is true of Plaintiff's allegation that Uber negligently

24

failed to implement additional mandatory trainings: if a potential downside would be violating drivers' preference for independent-contractor status, that is relevant to Uber's reasonableness. Nilles 6/30/2025 Dep. 44:5-22 (Ex. 20) ("Because of our independent contractor model, there are very specific constraints in the amount of mandated training and interventions that can be imposed."); *see also* 3/27/2025 Fuldner Dep. 469:20-470:5 (Ex. 21) (similar).

*Second*, drivers' preference for independent-contractor status is also relevant to whether they are in fact independent contractors for vicarious-liability purposes. The jury must consider "several … factors, none of which is dispositive" to determine independent-contractor status. *Santiago v. Phoenix Newspapers, Inc.*, 794 P.2d 138, 141 (Ariz. 1990). One such factor is the "belief of the parties" about whether they have formed an independent-contractor relationship. *Id.* at 142. Although not itself "determinative," it is certainly relevant that some drivers believe they are independent contractors and prefer to stay that way. *Id.* at 141.

*Third*, Plaintiff also argues that driver-preference evidence would be unduly prejudicial and confusing to jurors. Mot. at 23. However, this argument is just a repackaged version of Plaintiff's relevance argument—i.e., that "business or workforce consequences" are "unrelated to Plaintiff's claims[.]" *Id.* As previously discussed, such consequences are highly probative to the cost-benefit analysis that jurors will have to undertake in deciding this case. Plaintiff's claim that such considerations have "no place in determining liability" cannot trump Arizona law, much less establish undue prejudice or confusion of the issues as required for exclusion under Rule 403. *Id.*; *see also U.S. v. Bustamente*, 951 F.2d 363 (9th Cir. 1991) (holding trial court's admission of evidence was proper and rejecting party's "conclusory argument on th[e Rule 403] issue").

DATED: December 30, 2025                    Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)

1

**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

2

3

4

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

5

6

7

Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street, Austin, TX 78701
Telephone: (512) 355-4390
kim.bueno@kirkland.com

8

9

10

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPP'N TO PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE
Case No. 3:23-md-03084-CRB

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: <u>*/s/ Laura Vartain Horn*</u>
Laura Vartain Horn