Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street, Austin, TX 78701
Telephone: (512) 355-4390
kim.bueno@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) **DECLARATION OF SUNNY WONG** |
| This Document Relates to: *Jaylynn Dean v. Uber Techs., Inc.*, No. 23-cv-06708 | Judge:   Hon. Charles R. Breyer Courtroom: 6 – 17th Floor |

1
DECLARATION OF SUNNY WONG
Case No. 3:23-MD-03084-CRB

1          I, Sunny Wong, having personal knowledge of the following, state:

2          1.       I am a Director, Applied Science – Safety at Uber. I was first employed by Uber in 2018 and previously worked as Data Science Manager II - Safety. In my current role, I am responsible for leading the Safety Science team at Uber, which includes a global team of data scientists and applied scientists, supporting new product and policy development through experimentation, causal inference, modeling, insights, and metrics. I offer this Declaration in the above-captioned matter in support of the Motion to Seal filed by Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"). The facts set forth herein are true and correct and are based on my own personal knowledge, and I could and would competently testify thereto if called to testify in this matter.

3          2.       I have reviewed Exhibits 14, 17, 23, 30-32, 53-55, and 57 to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment. I have also reviewed Uber's proposed redactions to these materials (the "Redacted Materials.")

4          3.       The Redacted Materials should be protected from disclosure to Uber's competitors because they reveal Uber's confidential and proprietary business research, technology, and trade secrets. Specifically the Redacted Materials divulge competitively sensitive information and details concerning Uber's confidential and proprietary trip-matching, safety assessment technology called Safety Risk Assessment Dispatch, or S-RAD.

5          4.       As detailed below, the Redacted Materials describe specific variables that are programmed into the S-RAD technology; inputs and data points utilized by the technology; detailed product development and testing information such as results of internal experiments; historical information regarding features and variables utilized in different iterations of S-RAD models over time; reasons and internal business rationales for certain design decisions related to S-RAD; and confidential information about how the S-RAD technology functions.

6          5.       These details of S-RAD are unknown to Uber's competitors, and their disclosure would result in a competitive disadvantage to Uber. Uber operates in a highly competitive space, and the time, money and effort spent in researching and developing proprietary technologies can be used by other companies to harm Uber's competitive advantage. Addressing challenges that face the ridesharing

industry is a key part of Uber's business, and disclosure of research, processes, and technology that Uber has developed and continues to refine would be injurious to Uber's competitive standing.

6. I am personally familiar with this proprietary and highly confidential information about S-RAD through my work leading the Safety Science team at Uber, which is responsible for creating, experimenting, researching, auditing, and updating the S-RAD technology.

7. Uber has expended significant time and money in the research and development of S-RAD, and has maintained documents and communications related to the research and development of S-RAD under strict confidentiality. To my knowledge, S-RAD and its level of sophistication is unique to Uber. It is the result of years of research and testing by Uber's product managers, software engineers, and data scientists, who meticulously collected and analyzed data from several countries and regions to advance this proprietary technology. Even within Uber, documents concerning S-RAD have not been widely disseminated, and have been generally provided only to employees who work on issues related to the technology.

8. Indeed, Plaintiffs' expert Dr. Keller characterized Uber's development of S-RAD as something "Uber has chosen to do … behind closed doors" while telling "the public nothing about that." 10/27/2025 Keller Dep. at 151:16-21. Despite Uber's efforts to maintain secrecy, however, the existence of S-RAD and certain general aspects of the technology have recently been disclosed to the public following an apparent violation of the Protective Order in which sealed JCCP materials were provided to the *New York Times*, which then published an article disclosing S-RAD's existence. Uber subsequently published an article on its website responding to certain inaccuracies in the *New York Times* article; Uber's article acknowledged S-RAD's existence and provided some limited and general information about S-RAD. Certain additional information concerning S-RAD was also disclosed through the JCCP proceedings, including the September bellwether trial. However, although some general information about S-RAD is now known, public disclosure concerning the details of S-RAD, which Uber has not revealed publicly and has taken great lengths to safeguard, would cause competitive harm to Uber. Uber and its competitors participate in a highly competitive market. Information concerning S-RAD is therefore of great interest to Uber's competitors and could be leveraged against Uber to its competitive disadvantage.

9. In addition, disclosure of information concerning S-RAD could potentially allow competitors to reverse-engineer Uber's proprietary tool, which could harm Uber's competitive standing. In particular, competitors could unfairly benefit from the release of highly confidential information concerning S-RAD by trying to "copy" Uber's software code using the confidential information in the Redacted Materials that relates to the functionality, variables, and data inputs relevant to the technology and the impact of those variables on the technology's effectiveness. Given Uber's efforts to safeguard details concerning the S-RAD technology, Uber's competitors would only be able to do so if information concerning S-RAD is released in connection with this litigation.

10. Further, public disclosure of information about the details of S-RAD to the public, such as information about variables that impact S-RAD scores and trip matching functions, may allow users of the Uber platform or other individuals to take steps to undermine or circumvent S-RAD's effectiveness.

11. For all of these reasons, it is essential that competitively sensitive information related to S-RAD be maintained under seal.

**Exhibit 14**

12. Exhibit 14 is a January 24, 2018 slide deck entitled "Change in the Power of Ratings Over Time." Uber seeks to redact from this exhibit charts and descriptions concerning Uber's analysis of its internal data showing how driver ratings correlate to accidents and safety incidents, how that predictive power changed over time, and how specific changes to Uber's ratings procedures impacted their predictive power. Ex. 14 at 7-8, 13-20. Although this particular document does not directly involve S-RAD, this is the sort of analysis conducted by the Data Science team that affects inputs into the S-RAD model. This internal analysis could be leveraged by Uber's competitors in designing and modifying their own ratings system. It would also allow Uber's competitors to gain insights into how Uber analyzes its internal data, for S-RAD and other purposes, and to copy those analyses in examining their own data.

**Exhibit 17**

13. Exhibit 17 consists of excerpts to my June 25, 2025 Rule 30(b)(6) deposition. The redactions discuss certain aspects of how the S-RAD technology works that have not been publicly disclosed. Ex. 17 at 127:4-9, 127:14-17, 127:19-21, 127:23-128:9, 129:13-15, 129:24, 149:12-13, 149:20-21. In addition, it includes quotations from particular Uber documents concerning S-RAD, how it works,

and strategic considerations related to S-RAD. *Id.* at 128:12-15, 128:20-129:3, 129:5-7. The deposition excerpts also disclose the S-RAD trigger rate used by Uber. *Id.* at 149:24, 155:6, 156:5-6, 159:9. Finally, the deposition discusses a portion of Exhibit 32 (discussed in paragraph 17 below) which Uber likewise seeks to redact and which concerns "Predictors of Sexual Assaults." *Id.* at 221:9-10, 221:13-14, 221:17-18, 221:21-222:7, 222:12, 222:15-19, 222:21-24. All of this information should be protected from disclosure to Uber's competitors to prevent them from gaining confidential insight that would help them in copying Uber's S-RAD technology.

**Exhibit 23**

14. Exhibit 23 is a March 28, 2016 document entitled "Bouncer v3." Bouncer is "an intelligent decision system for anticipating and preventing safety incidents on the Uber platform," Ex. 23 at 1, and is a predecessor technology to S-RAD. It is my understanding that portions of this document are redacted in the JCCP proceedings and that Uber is seeking to maintain those redactions in this Court. Uber seeks to redact a list of the types of data that the Bouncer system used in computing risk scores. *Id.* at 4. Uber also seeks to seal a description of how Bouncer works, including detailed discussions of how certain challenges in the model are addressed. *Id.* at 7. The proposed redactions also include discussion of how the model was trained. *Id.* at 8-9. They also include a predictive formula, charts concerning predictions, the results of changing the formula, and comparisons to other strategies and previous Bouncer versions. *Id.* at 12, 14-21. Uber also seeks to seal a detailed discussion of the most important predictors that are inputs to the Bouncer model. *Id.* at 22-24. Many of the proposed redactions involve highly technical discussion about the Bouncer technology, and are instructive as to how S-RAD works. Accordingly, Uber's proposed redactions are necessary to keep Uber's competitors from gaining insight into this technology and reverse-engineering it.

**Exhibit 30**

15. Exhibit 30 is a spreadsheet that details the S-RAD data for the trip where Plaintiff Jaylynn Dean was paired with Hassan Turay. Uber seeks to seal this one-page spreadsheet in full. It includes the S-RAD score for the trip, as well as all of the inputs that went into the overall score. Allowing Uber's competitors to see this information would permit them to potentially discern how Uber calculates its S-RAD scores, thus permitting them to copy a key part of how S-RAD works.

**Exhibit 31**

16.     Exhibit 31 contains excerpts of my July 23, 2025 deposition. Uber seeks to redact discussion of the specific inputs to the Dean score detailed in Exhibit 30. Ex. 31 at 177:2-6, 177:8-13, 177:15-18. Uber also seeks to redact discussion of the trip trigger rate, how it is chosen, and other details of how S-RAD is implemented. *Id.* at 265:3-17, 265:22-266:8, 266:12-24, 267:2-269:13, 269:15-270:6, 270:13-20, 270:24-271:11, 271:17-20. Releasing this information to Uber's competitors would allow them to reverse-engineer portions of the S-RAD technology.

**Exhibit 32**

17.     Exhibit 32 is a July 2018 document entitled "S-RAD Model Overview." It is my understanding that portions of this document are redacted in the JCCP proceedings and that Uber is seeking to maintain those redactions in this Court. Uber seeks to redact part of the section of the document titled "Methodology," which provides details concerning how S-RAD works. Ex. 32 at 4. Uber also seeks to redact Table 2, entitled "Predictors of Sexual Assaults," which describes all of the inputs that go into the S-RAD model. *Id.* at 8. Uber also seeks to redact portions of the section of the document titled "Model Performance," which discusses how Uber measures S-RAD's accuracy, as well as aspects of the S-RAD model. *Id.* at 9. Uber further seeks to redact most of the section titled "Most Important Predictors," which contains detailed information about the predictors that are used in S-RAD and which ones are most important. *Id.* at 14-15, 17. This document contains information that would be very valuable to Uber's competitors, since it includes many of the specifics of how exactly the S-RAD model works. This material should remain sealed so that Uber's competitors are not permitted to access this information and copy Uber's technology.

**Exhibit 53**

18.     Exhibit 53 contains excerpts of my October 14, 2025 deposition. Uber seeks to redact discussion of confidential information concerning numerous S-RAD issues related to the pairing of Ms. Dean and Mr. Turay, such as the trigger rate, threshold, and the discussion of certain hypotheticals concerning that pairing. Ex. 53 at 367:4-10, 367:14, 367:24, 368:18-24, 369:2-3, 369:8-10, 369:19-21, 380:8-11, 381:4-15, 404:23-25, 409:4-6, 409:17-19, 409:5-6, 409:17-19, 410:5-6, 410:8-11, 410:16-17, 410:20-22, 411:7-8, 411:12-17, 411:22-25, 412:2-5, 412:9-16, 412:23-413:5, 413:7-8, 426:3-4, 426:6,

426:9-12, 426:13-15, 427:2-6, 427:9-10, 430:9-15, 430:17-23, 431:3-5. It also includes an extended discussion of an internal analysis related to the S-RAD trigger rate and the potential application of that analysis to Ms. Dean's ride. *Id.* at 385:7-21, 386:2-14, 386:20-388:11, 388:21-389:13, 389:16-23, 390:2-4, 390:7-13, 390:16-19, 390:22-23, 391:4-8, 391:11-13, 391:16-21, 396:12-17, 398:3-12, 398:16-24, 399:4-8, 399:11-13, 399:17-18, 400:2, 400:6-7, 400:16-20. There is also brief discussion of a section of Exhibit 56 that Uber seeks to redact for the reasons explained in the contemporaneously filed declaration of Greg Brown, *i.e.*, that it discloses confidential and valuable Uber data analysis concerning factors associated with sexual assault and sexual misconduct, including data re different cities. *Id.* at 403:16-25, 404:7-9, 404:12-13, 404:16-18. All of these materials should be kept under seal because of the confidential information they reveal about exactly how Uber implements the S-RAD technology. If this information were to be made public, Uber's competitors could use it to copy the S-RAD technology.

**Exhibit 54**

19.     Exhibit 54 contains excerpts from the July 15, 2025 deposition of Mariana Esteves. The portions that Uber is seeking to redact include discussion of certain features that Uber may incorporate into its RideCheck technology, including factors related to S-RAD and a different feature that Uber is currently piloting. Ex. 54 at 103:7-8, 103:10-11, 103:13-15, 104:9-19, 104:25. Uber is also seeking to redact certain information concerning confidential details of how the RideCheck feature is implemented. *Id.* at 25:5-6, 25:11-12, 25:15-18, 25:21-26:2, 26:5-26:15, 104:3. Confidential information concerning this pilot program and RideCheck implementation is competitively sensitive and could be used by Uber's competitors to Uber's disadvantage if it were made public, including by the competitors' adoption of these features.

**Exhibit 55**

20.     Exhibit 55 is a deposition aid that I used at my October 14, 2025 deposition. It includes information related to S-RAD for Ms. Dean and the other bellwethers. Uber seeks to redact information concerning trigger rates, S-RAD scores, and descriptions of how aspects of the S-RAD technology is implemented. Ex. 55 at 2-5. This information could be used by Uber's competitors to copy the S-RAD technology.

**Exhibit 57**

1    21.    Exhibit 57 is a 2022 document entitled "FAQ for MTR [Monthly Tech Review]"; the metadata title is "SRAD SOFT FILTERING FAQ FOR MTR." Uber seeks to redact a discussion of Uber's testing of S-RAD, the resulting data, and internal questions (and some potential answers) arising from that data. Ex. 57 at #2157.2-.4, #2157.10-.14. Uber also seeks to redact specific information concerning how the trigger rate and threshold are determined, S-RAD inputs, other discussion of how S-RAD works, and strategic considerations related to S-RAD. *Id.* at #2157.5-.9. All of this information would be valuable to Uber's competitors, who could use it to reverse-engineer S-RAD.

22.    The proposed redactions are narrowly tailored to protect Uber's competitively sensitive information.

23.    For all of these reasons, it is essential that the competitively sensitive information set forth herein be maintained under seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 23, 2025

/s/ *Sunny Wong*
SUNNY WONG