Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street, Austin, TX 78701
Telephone: (512) 355-4390
kim.bueno@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC., RASIER, LLC,
and RASIER-CA, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) <br><br> **DECLARATION OF GREG BROWN** |
| This Document Relates to: <br><br> *Jaylynn Dean v. Uber Techs., Inc.*, No. 23-cv-06708 | Judge:  Hon. Charles R. Breyer <br> Courtroom: 6 – 17th Floor |

I, Greg Brown, having personal knowledge of the following, state:

1. I am the Director, Head of Central Safety, at Uber. I was first employed by Uber from 2014 through 2020, during which time I worked as Operations and Logistics Manager (July 2014 – September 2015); Senior Operations Manager (September 2015 – November 2017); Program Lead, Safety (November 2017 – August 2019); and Senior Program Lead, Safety & Risk (August 2019 – December 2020). When I returned to Uber in 2022, I initially worked as Director of Safety, United States & Canada (September 2022 – August 2024). Since August 2024, I have served in my current role. In that role, I am responsible for overseeing, organizing, and implementing global risk programs, and ensuring, where applicable, that Uber's safety policies and standards are appropriately globalized. I offer this Declaration in the above-captioned matter in support of the Motion to Seal filed by Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"). The facts set forth herein are true and correct and are based on my own personal knowledge, and I could and would competently testify thereto if called to testify in this matter.

2. I have reviewed Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment, as well as Exhibits 5, 24, 28, 42-45, 52, and 56 thereto. I have also reviewed Uber's proposed redactions to those materials (the "Redacted Materials").

3. The Redacted Materials should be protected from disclosure to Uber's competitors because they reveal Uber's confidential and proprietary research, business strategies, raw data, and internal decision making related to Uber's strategic plans in a highly competitive market. Specifically, the Redacted Materials divulge competitively sensitive information and details concerning survey data and other internal customer research, various other analyses concerning Uber's internal data and related strategies, and certain unaudited raw data, all of which is unknown to Uber's competitors and would result in a competitive disadvantage to Uber if made publicly available. Uber has spent significant time and resources developing its proprietary procedures, analyses, and strategies. Further information about the type of confidential and competitively sensitive information contained in the Redacted Materials is set forth below.

4. The confidential information sought to be redacted is only made available to internal Uber employees who need to know about, work from, analyze, or prepare the confidential information. It is not

generally available to any and all employees within Uber and is restricted based on document access procedures.

5.  I am personally familiar with the confidential information through my work as it relates to overseeing, improving, and implementing global risk programs and Uber's safety policies and standards.

6.  Disclosure of the nature and details of the confidential information outlined below, which Uber has not revealed publicly and has taken precautions to safeguard, would cause competitive harm to Uber by providing its competitors with internal information regarding some of the key components of Uber's operational strategies. Uber and its competitors participate in a highly competitive market. Information concerning Uber's business processes, strategies, and products is therefore of great interest to Uber's competitors in developing their own processes, strategies, and products and could be leveraged against Uber to its competitive disadvantage.

7.  In addition, disclosure of information concerning Uber's internal data and strategies could potentially allow competitors to inappropriately co-opt and adopt the same, which could harm Uber's competitive standing. In other words, Uber's competitors could use the confidential information to alter or improve their own respective businesses, which, given Uber's efforts to safeguard the information, would severely diminish Uber's hard-earned competitive advantage.

8.  Public disclosure of the redacted information would also reveal Uber's confidential safety-related goals and priorities to its competitors. Permitting Uber's competitors access to this competitively sensitive strategic information could harm Uber by allowing competitors to develop strategies and programs to counter initiatives that Uber is contemplating or working on.

9.  The proposed redactions, described in more detail below, are narrowly tailored to protect Uber's competitively sensitive information.

10. **Survey data and customer research.** Exhibit 5 is a March 21, 2017 slide deck entitled "Uber Trust and Safety Brand Narrative." It contains the results of Uber's confidential research studies and survey data reflecting user safety experiences, perceptions, and beliefs. Ex. 5 at 12, 72. Exhibit 42 contains research data reflecting research about user sentiment concerning Uber's incident response procedures. Ex. 42 at 5, 12-14. The deck also includes detailed discussion, analysis, and strategy concerning Uber's customer satisfaction scores (CSAT). *Id.* at 16-17, 23, 26-27. Exhibit 45 is a slide deck

created on or about April 22, 2019 (and potentially modified up through August 6, 2021) entitled "Quality | Safety UX Research." The slide deck describes the detailed results and analysis of driver-rider focus groups and interviews, as well as recommendations and strategy in response to those focus groups and interviews. Ex. 45 at 3, 6-7, 13-20, 23, 26-29, 31-37, 39-41, 43-45, 47, 54-63. Publicizing this information could put Uber at a competitive disadvantage by providing Uber's competitors with the benefits of Uber's proprietary research insights, enabling competitors to modify or tweak their own safety experiences by free-riding on Uber's investment of time and financial resources. The information could also allow Uber's competitors to assess weak spots in the Uber experience from users' perspectives, and tailor their own products to differentiate themselves or compete with Uber in those specific areas.

11. **Research and analyses concerning internal Uber data.** Uber's research into and analysis of its internal data are core to its business operations and strategies, which are often informed by what the internal data reveal. Indeed, Uber has a Data Science team dedicated to conducting these analyses, which other Uber teams then use to develop and test specific features and strategies. Accordingly, the following information reflecting Uber's internal research and analyses should be redacted.

    a. **Analysis concerning rider-to-driver feedback tags.** Exhibit 43 is a November 2018 slide deck entitled "Analysis of Rider-to-Driver Feedback Tags." Ex. 43 at UBER_JCCP MDL_003273495. It includes an analysis of how certain feedback tags correlate to a higher risk of sexual misconduct or assault. Exhibit 44 is a November 2018 email chain that similarly describes this analysis. Ex. 44 at UBER_JCCP_MDL_000108959-961. Exhibit 44 also includes screenshots of edits to the feedback process considered by Uber in light of this analysis. *Id.* at UBER_JCCP_MDL_000108958. This analysis provides information that Uber's competitors could use as a shortcut in assessing their own customer data and potentially revising their own feedback options. It would also provide Uber's competitors with confidential insight into Uber's data.

    b. **Other data analyses and corresponding strategies.** Exhibit 24 is a slide deck dated on or around March 15, 2017, entitled Sexual Misconduct Prevention Plan. It includes an analysis of the results of a manual audit of certain sexual misconduct reports,

including discussion of how certain characteristics of rides correlate with sexual misconduct. Ex. 24 at UBER_JCCP_MDL_001741625-626, UBER_JCCP_MDL_001741628-631, UBER_JCCP_MDL_001741646, UBER_JCCP_MDL_001741648-651, UBER_JCCP_MDL_001741654-663, UBER_JCCP_MDL_001741668-669. The slide deck also discusses particular strategies for reducing sexual misconduct. *Id.* at UBER_JCCP_MDL_001741633-636. Exhibit 52 similarly includes analyses of internal Uber data that attempts to determine "[w]hat features distinguish driver partners with many or serious sexual misconduct ticket[s] from those who don't have misconduct tickets." Ex. 52 at 12; *id.* at 13, 15-25, 27. This deck also includes proposals for addressing sexual assault and misconduct in light of what the data analyses show. *Id.* at 28, 33. In addition, Exhibit 28 includes deposition excerpts that discuss the same information that Uber is seeking to redact from Exhibit 52. Ex. 28 at 426:2-4, 426:12-16, 426:20. Lastly, Exhibit 56 is a 2019 document called "Point in Time Messaging." It contains the results of a manual audit of serious incident reports, including the specific factors associated with such reports. Ex. 56 at UBER_JCCP MDL_000258366, -.0001-.0003. It also describes the details of a particular strategy that Uber wanted to test in order to determine if it would deter sexual assaults. *Id.* at UBER_JCCP MDL_000258366.0001-.0002, UBER_JCCP MDL_000258366.0004-.0005. Uber's internal data and its proprietary analyses concerning those data would be very valuable to Uber's competitors, who could leverage those analyses to gain unfair insight into Uber as well as allowing them to copy and apply Uber's analyses with respect to their own data. Moreover, giving Uber's competitors information about Uber's confidential strategies would also harm Uber by likewise permitting its competitors to leverage this information against Uber and to copy Uber's strategies.

12.     **Data re: Reports of Sexual Assault/Sexual Misconduct.** Exhibit 52 (also discussed in paragraph 11.b above) contains certain raw data concerning Bliss tickets from Uber's internal systems. Ex. 52 at 6. As I previously explained in my November 21, 2025 Declaration, certain top-level raw data

(total annual counts of sexual assault and sexual misconduct reports) from Uber's internal systems has been made public through the JCCP trial, as well as prior to that via a leak of sealed JCCP records to the *New York Times* in violation of the Protective Order. Uber is therefore not seeking to seal any of its raw top-level annual data. However, raw and unaudited data like that in Exhibit 52 concerning the breakdown of the topline numbers into taxonomy categories has not been made public and has instead been kept confidential within Uber. Moreover, these particular data have not been audited, and may contain duplicate and otherwise inaccurate data, and therefore would not provide useful or reliable information to the public. See Ex. 52 at 14 (shortcomings of data include that "reliability and validity of data is unclear").

13. All of Uber's proposed redactions are narrowly tailored to protect Uber's competitively sensitive information.

14. For all of these reasons, it is essential that the competitively sensitive information set forth herein be maintained under seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 29, 2025

/s/ *Gregory Brown*
GREG BROWN