UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*,<br>N.D. Cal. No. 23-cv-06708<br>D. Ariz. No. 25-cv-4276 | Case No. 3:23-md-03084-CRB<br><br>**PRETRIAL ORDER NO. 38: <u>DEAN PRETRIAL GUIDELINES</u>** |

I. PRETRIAL ARRANGEMENTS

A. Ordering transcripts.

Should a daily transcript and/or real-time reporting be desired, the parties shall make arrangements with Elva Cruz-Lauer at Elva_Cruz-Lauer@azd.uscourts.gov (602) 322-7261.

B. Courtroom technology.

The Courtroom is set up with equipment that allows evidence presentation. If additional equipment is necessary, the United States Marshal requires a court order to allow equipment into the courthouse. Please work with Lashanda Scott (415-522-2062) on courtroom-layout issues.

II.   TRIAL

A.   Trial Schedule.

Unless otherwise ordered, trial will be held from 9:30 a.m. to 4:30 p.m. with two 15-minute breaks and lunch. Counsel must arrive by 9:00 a.m. or earlier, as needed, for any matters to be heard out of the presence of the jury. Please be prepared to start with the jury at 9:00 a.m.

B.   Juror Selection.

In civil jury cases, there are no alternate jurors. The jury is selected as follows, though the Court may alter this procedure in its discretion:

1. All potential jurors are called and seated in the jury box and courtroom benches in the order their names are drawn from the drum. This placement will now determine their order in the selection process.

2. The Court then conducts its voir dire of the entire panel.

3. Once this questioning is accomplished, the Court will advise counsel at side-bar which potential jurors it would excuse for cause. This determination is preliminary only.

4. Counsel are then permitted to conduct limited voir dire of the entire panel.

5. Once all voir dire is completed, the Court will address all challenges for cause and excuse those potential jurors who have been successfully challenged. The Court will then advise counsel as to the number of jurors who will be seated.

6. After a short recess, each side may exercise its allotment of peremptory challenges.

7. Once the jury selection is completed, the jurors' names will be read again and they will be seated in the jury box and sworn.

C. Jurors' Use of Notes

Jurors may take notes. Steno notebooks will be distributed at the beginning of each trial. The pads will remain in the jury room at the end of each day. Jurors will be instructed on the use of notes both in the preliminary and final jury instructions.

D. Opening Statements.

Counsel must cooperate and meet and confer to exchange any visuals, graphics or exhibits to be used in the opening statements, allowing for time to work out objections and any reasonable revisions. Be prepared for opening statements as soon as the jury is sworn.

E. Lay Witnesses.

1. Pretrial list. A witness not included in the pre-trial list may not be used without good cause. This rule does not apply to true rebuttal witnesses (other than experts). Defense witnesses are normally case-in-chief witnesses, not "rebuttal" witnesses.

2. Communication with opposing party. Throughout the trial, all counsel are entitled to know a firm order of witnesses for the next full court day and the exhibits that will be used on direct examination (other than for impeachment of an adverse witness). All other counsel shall provide any objections to such exhibits and shall provide a list of all exhibits to be used with the same witness on cross-examination (other

than for impeachment). This requires that the first such notice be provided before trial actually begins.

3. Witness availability. Counsel must always have their next witness ready and in the courthouse. Failure to have the next witness ready or to be prepared to proceed with the evidence will usually constitute resting.

4. Multiple defendants. When there are multiple defendants, counsel are responsible for coordination of their cross-examination to avoid duplication.

F. Expert Witnesses.

1. Scope of testimony. A recurring problem in trials is the problem of expert witnesses trying to go beyond the scope of their expert reports on direct examination. FRCP 26(a)(2) and FRCP 37(c) limit experts to the opinions and bases contained in their timely reports (absent substantial justification or harmlessness). The Court regularly enforces these rules. FRCP 26(a) even requires that any "exhibits to be used as summary of or support for the opinions" be included in the report. Accordingly, at trial, the direct testimony of experts will be limited to the matters disclosed in their reports. Omitted material may not ordinarily be added on direct examination. This means the reports must be complete and sufficiently detailed. Illustrative animations, diagrams, charts and models may be used on direct examination only if they were part to the expert's report, with the exception of simple drawings and tabulations that plainly illustrate what is already in the report, which can be drawn by the witness at trial or otherwise shown to the jury. If cross-examination fairly "opens the door," however, an expert may go beyond the written report on cross-examination and/or

re-direct examination. By written stipulation, of course, all sides may relax these requirements.

2. Damages studies. As to damages studies, the cut-off date for past damages will be as of the expert report (or such earlier date as the expert may select). In addition, the experts may try to project future damages (i.e., after the cut- off date) if the substantive standards for future damages can be met. With timely leave of the Court or by written stipulation, experts may update their reports (with supplemental reports) to a date closer to the time of trial.

3. The case management order will already have set out the timetable for expert reports.

G. Depositions

1. Use of depositions to impeach. Depositions can be used at trial to impeach a witness testifying at trial or, in the case of a party deponent, "for any purpose." Please adhere to the following procedure:

a. On the first day of trial, bring the original and clean copies of any deposition(s) for which you are responsible. Any corrections must be readily available. If you are likely to need to use the deposition during a witness examination, then give the Court a copy with any corrections at the outset of your examination. This will minimize delay between the original question and the read-ins of the impeaching material. Opposing counsel should have their copy immediately available. The first time a deposition is read, the Court will give an appropriate explanation to the jury about how it is to consider depositions.

b. When you wish to read in a passage, simply say, for example: "I wish to read in page 210, lines 1 to 10 from the witness' deposition." Allow a brief pause for any objection.

c. The first time a deposition is read, state the deponent's name, the date of the deposition, and the name of the lawyer asking the question. If it was a FRCP 30(b)(6) deposition, please say so.

d. When reading in the passage, state "question" and then read the question exactly. Then state "answer" and then read the answer exactly. This is necessary so the jury and the court reporter can follow who was talking at the deposition.

e. Please do NOT ask, "Didn't you say XYZ in your deposition?" The problem with such a question is that the "XYZ" rarely turns out to be exactly what the deponent said. Instead, ask for permission to read in a passage, as above, and read it in exactly, so that the jury can hear what was actually testified to.

f. Subject to Rule 403, party depositions may be read by a party opponent whether or not they contradict (and regardless of who the witness is on the stand). For example, a short party deposition excerpt may be used as foundation for questions for a different witness on the stand.

g. Rather than reading the passage, counsel are free to play an audiovisual digitized version of the passage, but must be prepared to do so without delay.

2. Deposition designation. The following procedure applies only to

witnesses who appear by deposition. It does not apply to live witnesses whose depositions are read in while they are on the stand. The following steps should be followed.

   a. Deposition testimony should be provided to all other parties at least five calendar days before it will be used in court. For the rare case of voluminous designations, more lead time will be required. Please be reasonable.

   b. To designate deposition testimony, photocopy the cover page, the page on which the witness is sworn, and each page from which any testimony is proffered, crossing out any portions of such pages not proffered, as well as objections or colloquy (unless needed to understand the question). Please make sure any corrections are interlineated and that references to exhibit numbers conform to the trial numbers.

   c. All other parties must then promptly review and return the packet, highlighting in yellow any passages objected to, and in blue additional passages as needed to cure the completeness objection. Please cross out any irrelevant portions of any additional pages. A completeness objection should normally be made only if a few extra lines will cure the problem. The parties must provide brief explanations for any additions or deletions. They must also return any counter designations at the same time.

   d. The parties must meet and confer as reasonable. Counsel for the proffering party must then assemble a final packet, including objections and responses to objections, and provide it to the Court at least two calendar days before the proffer will be used.

Ordinarily, argument will not be needed.

e. When the packet is read to the jury, the examiner reads the questions (and any relevant colloquy) from the lectern and a colleague sits in the witness stand and reads the answers. When a video-taped deposition is to be played instead, the packets must still be prepared, as above, in order to facilitate rulings on objections. The video should omit any dead time, long pauses, and objections/colloquy not necessary to understand the answers.

H. Requests for Admissions and Interrogatories.

Please designate responses to requests for admissions and interrogatory answers in the same manner and under the same timetable as depositions.

I. Exhibits.

1. Meet and confer. Prior to the final pretrial conference, counsel must meet and confer in person over all exhibit numbers and objections and to weed out duplicate exhibits. Please be reasonable.

2. Numbering. Use numbers only, not letters, for exhibits, preferably the same numbers as were used in depositions. Blocks of numbers should be assigned to fit the need of the case (e.g., Plaintiff has 1 to 100, Defendant A has 101 to 200, Defendant B has 201 to 300, etc.). A single exhibit should be marked only once. If the plaintiff has marked an exhibit, then the defendant should not re-mark it. Different versions of the same document, e.g., a copy with additional handwriting, must be treated as different exhibits. To avoid any party claiming "ownership" of an exhibit, all exhibits shall be marked and referred to as "Trial Exhibit No.," not as "Plaintiff's Exhibit" or "Defendant's Exhibit." If an exhibit number differs from that used in

8

a deposition transcript, however, then the latter must be conformed to the new trial number if and when the deposition testimony is read to the jury (so as to avoid confusion over exhibit numbers). The jury should always hear any given exhibit referred to by its unique number. You cannot have competing versions of the same exhibit numbers.

3. Exhibit tags. Exhibits must be labeled in the lower right-hand corner with the exhibit number in a prominent, bold typeface.

4. Bench copy: Deposit your exhibits with the deputy clerk (Lashanda Scott) on the first day of trial. A bench binder containing a copy of each side's exhibits must be provided to the Court on the first day of trial. Each exhibit must be separated with a label divider. Please use 1-1/2-inch binders with locking rings. (Heavier binders are too hard to handle.)

5. Checking admitted evidence. At the end of each trial day and again immediately before the case goes to the jury, counsel are required to consult with each other and with the deputy clerk and as to which exhibits are in evidence and any limitations thereon. If there are discrepancies between the evidence that the Court has admitted and the evidence that has been placed in the binder, counsel must bring them promptly to the Court's attention. Counsel may, but are not required to, jointly provide a revised list of all exhibits actually in evidence (and no others) stating the exhibit number and a brief, non-argumentative description (e.g., letter from A to B, dated August 17, 1999). This list may go into the jury room to help the jury sort through exhibits.

9

J. Objections.

There may only be one lawyer per witness per party for all purposes, including objections. Counsel shall stand when making objections and succinctly state the legal basis only. Speak up promptly. Side bar conferences are discouraged. The procedure described above should eliminate the need for most side bars. To maximize jury time, counsel must alert the Court in advance of any problems that will require discussion outside the presence of the jury, so that the conference can be held before court begins or after the jury leaves for the day.

K. Time Limits.

Counsel must keep track of everyone's usage of the agreed upon time limits. At the end of each day, counsel must confer over the time used and the time remaining for all parties and advise the Court daily. The Court will also try to keep track. The time taken at a side bar or on objections will still be charged to the examining party unless otherwise ordered.

L. Settlements and Continuances.

1. Advising the Court. Shortly before trial or a final pretrial conference, counsel occasionally wish jointly to advise the clerk that a settlement has been reached and seek to take the setting off calendar but it turns out later that there was only a settlement "in principle" and disputes remain. Cases, however, cannot be taken off calendar in this manner. Unless and until a stipulated dismissal or judgment is filed or placed on the record, all parties must be prepared to proceed with the final pretrial conference as scheduled and to proceed to trial on the trial date, on pain of dismissal of the case for lack of prosecution or entry of default judgment. Only an advance continuance expressly approved by the Court will release counsel and the parties from their obligation to proceed. If the parties expect that a settlement will be final by the time of trial or the final

pretrial conference, they should notify the Court immediately. The Court will attempt to confer with counsel as promptly as circumstances permit to determine if a continuance is in order. Pending such a conference, however, counsel must prepare and make all filings and be prepared to proceed with the trial.

2. Sanctions and costs. Local rule 40-1 provides that jury costs may be assessed as sanctions for failure to provide the Court with timely written notice of a settlement.

M.   Change of trial date.

Because of scheduling conflicts with other cases on the docket, the Court retains the discretion to change the trial date, either by way of advancement or continuance. In the event the trial date is changed, the parties may seek an adjustment of the time limits for compliance with the requirements of this order, which shall be effective only upon Court approval.

**IT IS SO ORDERED.**

Dated: December 31, 2025

_____
CHARLES R. BREYER
United States District Judge

11