Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2500 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.;
RASIER, LLC; and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Technologies, Inc. et al.*, Case No. 3:23-cv-06708-CRB | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S REPLY IN SUPPORT OF MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN**<br><br>Date:      January 6, 2026<br>Time:      10:00 a.m.<br>Courtroom:  6 – 17th Floor |

## **INTRODUCTION**

The Consumer Attorneys of California ("CAOC"), whose officers include a member of Plaintiffs' leadership and whose members include multiple Plaintiffs' counsel, created and distributed an inflammatory advertising campaign accusing Uber of silencing sexual assault victims and permitting sexual crimes on its platform. Now, when Uber raises significant and pressing issues with this campaign affecting its right to an impartial jury in the upcoming bellwether trial, both Plaintiffs' counsel and CAOC seek to confuse the issue and point to a ballot initiative about automobile accidents not involving sexual assaults. Trial should be postponed until this campaign ceases, followed by an appropriate cooling-off period. CAOC's Every 8 Minutes campaign, which is available online at the campaign's website and in news coverage accessible nationwide, and perhaps in additional mediums, should be enjoined as the speech of a party to the trial. At minimum, Uber should be permitted to probe the reach of this campaign with the venire in the first bellwether trial—and to do so outside the presence of the entire venire, to avoid tainting the jury further.

Plaintiffs' oppositions rely largely on mischaracterizations. Uber addresses several here. In Uber's opening motion, Uber never alleged that Plaintiffs' MDL leadership or any MDL counsel were the source of the leak to the *New York Times*. Instead, Uber argued that because all of Plaintiffs' leadership and the vast majority of Plaintiffs' MDL counsel are also participants in the parallel JCCP proceeding, they are aware that the *Times* article originated from what the JCCP court found was a leak stemming from a protective-order violation. *See* ECF 4498-4 at 6 ("[o]n the record before the Court, there appears to be little room for doubt that sealed filings from this proceeding were improperly disclosed to third parties in violation of the protective order" in connection with *Times* article). Due to the JCCP Court's order, counsel submitted the certifications they now rely on in opposition. ECF 4819 at 3. Whether or not any MDL lawyer was responsible for the leak, MDL counsel and CAOC took

advantage of and are still taking advantage of that leak, despite being officers of the court who should not seek to capitalize on a protective-order violation.

The oppositions also wrongly describe the Every 8 Minutes campaign as simply stating statistics reported as a result of this protective-order violation. ECF 4819 at 4; ECF 4820 at 2. Neither CAOC nor Plaintiffs mention that the original version of the video advertisement falsely stated—and incorrectly attributed to the *Times*—that a sexual *crime* was reported to Uber almost every 8 minutes. ECF 4498-2 ¶¶ 7-8. Nor do they state that, after being caught with that representation and following a letter from Uber, they changed that profoundly misleading, and indeed false, characterization of the *Times* article. *Id.* ¶¶ 10-11. This claim is no longer in the video advertisement available online, but it may be available in other mediums. The oppositions also leave out the campaign's equally misleading claim that Uber silences a victim every 8 minutes, which also is not found anywhere in the *Times* article. The silencing-victims claim remains in the video advertisement available online. *See* Every 8 Minutes, https://every8minutes.com/ (last visited Dec. 31, 2025).

While the oppositions describe CAOC as Uber's "political adversar[y]," ECF 4820 at 1, this description misses the point. To the extent that CAOC is Uber's political adversary on a ballot initiative about automobile accidents, that is of no moment here. The Every 8 Minutes campaign barely mentions Uber's ballot initiative, and when it does, it only misleadingly conflates the initiative with silencing victims (presumably sexual-assault victims). Despite its now-alleged signoff from a political action committee, this campaign is focused not on a ballot initiative but tainting the jury pool and perhaps even finding additional clients.

## ARGUMENT

**I.    THE EVERY 8 MINUTES CAMPAIGN PREJUDICES UBER AND THREATENS ITS RIGHT TO AN IMPARTIAL JURY.**

    **A.    The Campaign Goes Beyond *New York Times*-Reported Statistics Into Prejudicial Attacks on Uber.**

Plaintiffs argue in opposition that the CAOC campaign simply parrots statistics from the *New York Times*, and that Uber is able to protect against prejudice from such statistics. Setting aside whether Uber can protect itself from the outcome of protective-order violations, especially ones for which the perpetrator has not yet been found, this argument omits important facts: The Every 8 Minutes campaign initially—and falsely—stated that a "sexual crime" was reported to Uber every eight minutes. *See* ECF 4498-2 ¶¶ 7-8. As Uber noted in its opening motion, this misstatement seriously risks tainting the jury pool. Now that CAOC has been caught with this misrepresentation, it has edited the video that appears on its campaign website to remove this false and inflammatory statement. However, Uber has not been able to determine—nor has CAOC said—whether such statements were removed from all Every 8 Minutes advertising, including billboards, social media posts or advertisements, and the like, which, as discussed *infra*, may still be available *nationwide*. As Uber stated in its opening motion, potential jurors may have seen the previous version of the advertisement before it was changed, as well.

The Every 8 Minutes video advertisement further claims that Uber silences a victim every eight minutes. This false statement still remains in the video advertisement, which is available at the campaign website. *See* Every 8 Minutes, https://every8minutes.com/ (last visited Dec. 31, 2025) (stating that "every 8 minutes, Uber tries to silence victims"). This statement assumes—wrongly—that any misconduct allegation received by Uber automatically results in a victim's "silencing" by

Uber. That is not only incorrect, but plainly prejudicial.[1] It strains credulity for CAOC and Plaintiffs to argue that such a statement is somehow relevant to an ongoing ballot initiative that is not about sexual assault at all.[2]

### A. The Campaign's Reach Is Still Unclear And Threatens To Prejudice The Jury Pool For The First Bellwether Trial.

While both Plaintiffs and CAOC urge that the *television* ad at issue has not played in Arizona where the first bellwether trial will take place, ECF 4819 at 2 & ECF 4820-1 ¶ 18, they remain conspicuously silent on whether the campaign is available in Arizona in any other form, *including potential online advertisements or links*.[3] The initial press release for this campaign touted not only television spots, but billboard placements and looping the ad on trucks. ECF 4498-5. (describing the campaign's "premier spots during popular sporting events, including during the World Series, Monday Night Football, and NBA Games" as well as circulation on billboards and trucks) The press release also referenced a Politico article. *Id.* (citing B. Jones & D. Gardiner, *California Playbook: Late-stage intercessions on Prop 50*, Politico, https://www.politico.com/newsletters/california-playbook/2025/10/27/late-stage-intercessions-on-prop-50-00623504 (Oct. 27, 2025) ("'Almost every eight minutes, a sexual crime was reported to Uber, but despite more than 400,000 sex crime reports,

---

[1]    Indeed, Uber was the first company in the gig economy to waive mandatory arbitration for survivors of sexual assault or misconduct, years before the federal government mandated this waiver. *See* Tony West, *Turning the lights on*, Uber Newsroom (May 15, 2018), https://www.uber.com/newsroom/turning-the-lights-on.

[2]    Nor is what CAOC describes as a competing ballot initiative a complete answer to the question of whether the "Every 8 Minutes" ad campaign is prejudicial to Uber's jury rights. Even if it were, the campaign can still be restrained in the narrowly tailored manner Uber proposes because Plaintiffs' counsel speaks through CAOC in making its claims.

[3]    Mr. Gupta's declaration states that the FCC must keep publicly available records of purchased *television* ad spots, and that Uber can answer any questions about geographic scope by doing basic diligence. ECF 4820-1 ¶ 18. This argument (made in declaration and not in the opposition itself) misses the mark, because as Uber has urged since its opening motion, it is unable to determine the full scope of the advertising campaign across mediums and geographic lines. CAOC stated in October that the campaign would span multiple mediums. ECF 4498-5.

4

DEFENDANTS' REPLY ISO MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN
Case No. 3:23-MD-3084-CRB

Uber dragged its feet, refused safety improvements,' the ad warns, over clippings from a New York Times report headlined: 'Uber's Festering Sexual Assault Problem.'"). That article, still available online, maintains the "sexual crime" false statement discussed in Part I.A, *supra*. And at minimum, the Every 8 Minutes campaign website is available nationwide.

**B.    Uber's Requested, Narrowly Tailored Restraint on the Every 8 Minutes Campaign Is Proper.**

Plaintiffs frame Uber's request to restrain the CAOC campaign from airing in states where bellwether trials are currently scheduled as seeking "a prior restraint on the political speech of an independent nonparty." ECF 4819 at 7. But Uber has demonstrated that *Plaintiffs' counsel* are the ones "speaking" through CAOC. Indeed, despite leadership's repeated statements that it "does not and cannot speak for CAOC," ECF 4675 at 2, leadership (particularly counsel Sarah London) did speak on CAOC's behalf by filing a motion to extend the briefing schedule for them and in discussing the campaign during a status conference before the Court. *See* Ex. 1, 10/31/25 Hr'g Tr. 18:7-17 ("Ms. London: Your Honor, since Counsel has brought it up, and just under duty of candor, you know, I am on the executive committee of the Consumer Attorneys of California, and I can represent to the Court that on this topic, Uber has filed an initiative that was threatening to remove access to justice on attorneys' fees in California. They filed a petition."); *see also* ECF 4675-1 ¶¶ 3-4 (counsel Sarah London stating in declaration that "[Uber's] Motion seeks, among other things, to effect a prior restraint on an advocacy group's publication of a political advertising campaign, referred to as the Every 8 Minutes campaign, and discovery concerning that advocacy group's internal speech concerning the campaign" and "the Every 8 Minutes campaign was paid for by Consumer Attorneys of California Initiative Defense Political Action Committee, which is not affiliated with any bellwether Plaintiff"). Sarah London is also an officer for CAOC. ECF 4498-6.

Plaintiffs and CAOC now argue that the Consumer Attorneys Political Action Committee Executive Board was actually the organization in charge of the Every 8 Minutes campaign and that no

5

member of Plaintiffs' leadership sits on that PAC board. But CAOC has already taken responsibility for this campaign. *See* ECF 4498-5 ("Today, *we* unveil a robust ad campaign"; "***Our*** expansive, seven-figure campaign" (emphasis added)). CAOC cannot both take responsibility for the campaign and then claim ignorance when convenient—including by locking the very blog post that took credit for it. *Compare* ECF 4498-5 with Consumer Attorneys of California, https://www.caoc.org/?pg=Blog&blAction=showEntry&blogEntry=133206 (last visited Dec. 31, 2025) (same web address now redirecting to a password-protected "site login" page).

Based on all the cases Uber cited in its motion, the campaign can be properly restrained in the narrowly tailored manner Uber has already proposed as the speech of a party.

## II. THE COURT SHOULD APPROVE UBER'S PROPOSED SUBPOENA ON CONSUMER ATTORNEYS OF CALIFORNIA.

Plaintiffs argue Uber has not shown good cause to reopen discovery to serve a subpoena on CAOC about the Every 8 Minutes campaign. They say that because the Every 8 Minutes campaign launched two weeks before the discovery cutoff, Uber was not diligent in seeking discovery. But two weeks before the discovery cutoff was still not enough time to "initiate discovery requests . . . sufficiently in advance of the cut-off date to comply" with the Court's local rules regarding discovery motions, which must be filed a week before the discovery cutoff. N.D. Cal. Civ. R. 37-3.[4]

Discovery here is necessary particularly in light of the one-sided declarations provided in opposition by Ms. London (on behalf of Plaintiffs) and Mr. Gupta (on behalf of CAOC).[5] Uber should have the opportunity to probe these declarations, and particularly to explore all the facts that the

---

[4] Uber reserves its right to serve a Fed. R. Civ. P. 45 subpoena on CAOC according to any discovery periods in this MDL that remain open.

[5] Mr. Gupta is counsel for CAOC. ECF 4820-1 ¶ 1. While he states facts that he says are "specifically confirmed" with his client, *id.* ¶¶ 17-18, no one employed by his client provided a declaration in support of CAOC's opposition.

DEFENDANTS' REPLY ISO MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN
Case No. 3:23-MD-3084-CRB

declarations deliberately ignore, such as CAOC's use of the originally even more misleading language, how long and where that language was used, and how that language came to be changed.

Mr. Gupta's declaration supporting CAOC's opposition also raises a troubling inconsistency: CAOC's opposition, through its attorney Mr. Gupta, disclaims any of its leadership's responsibility for the Every 8 Minutes campaign, stating instead that two of its affiliated political action committees, at the direction of CAOC's PAC Board, "were the independent entities responsible for approving, directing, creating, producing, and running the 'Every 8 Minutes' ad campaign." ECF 4820-1 ¶ 15. Mr. Gupta then declares that he "specifically confirmed" multiple allegations "with CAOC's leadership." *Id.* ¶ 17. This is not just hearsay: it is hearsay passed on by an attorney partial to the outcome. Mr. Gupta adds that "[i]t was the CAOC PACs and their Board that created, directed, and approved the ads." ECF 4820 at 5. And CAOC goes even further, stating that "[t]he PACs are independent entities from CAOC, with their own bylaws and governing structures." *Id.* By the terms of their own argument, CAOC's leadership first denies any knowledge or responsibility for this campaign, then expects to be trusted to "specifically confirm" multiple facts at issue in Uber's motion regarding the same campaign. Uber's proposed subpoena is necessary to address these inconsistencies and omissions.

## III.   AT MINIMUM, EXPANDED AND PRIVATE VOIR DIRE IS NECESSARY TO ADDRESS POSSIBLE TAINTING OF THE JURY POOL.

Since Uber's motion was filed, the Court has ruled on the parties' proposed jury questionnaires and sent its questionnaire to potential jurors in the first bellwether case. ECF 4513. Uber acknowledges that its request for expanded voir dire specifically on the Every 8 Minutes campaign *in the questionnaire* is now moot, but it re-urges its request for the Court to conduct voir dire on publications and media privately—a decision that is properly within the Court's discretion—in order to minimize the taint from the CAOC campaign and related reporting based in protective-order violations.

1

2      This relief is necessary to ensure that jurors who have not previously seen this campaign are

3  not influenced if Uber or Plaintiffs ask additional questions related to Questions 18 or 22 on the entered

4  juror questionnaire during voir dire. *See* ECF 4513 at 6-7 ("18. What is your opinion on Uber?"; "22.

5  Have you read, seen, or heard news coverage of lawsuits involving rideshare companies?"). And

6  further, Uber urges that questions on the Every 8 Minutes campaign should be permitted during voir

7  dire separate and apart from juror questionnaire responses.

8      Plaintiffs argue in opposition that Uber's request for expanded voir dire and the ability to move

9  for dismissal depending on the responses elicited is a veiled request for additional peremptory strikes

10  or an affirmation of its ability to move to strike jurors for cause. ECF 4819 at 7. That is not the case.

11  If Plaintiffs' counsel's speaking through CAOC has so tainted the jury pool that voir dire makes it

12  clear that Uber cannot empanel an impartial jury, Uber respectfully requests that it be able to move for

13  dismissal at that time. This option should not be reciprocal, because Plaintiffs' counsel created the

14  prejudice at issue.

15

16                                   **<u>CONCLUSION</u>**

17      The Court should postpone the first bellwether trial and restrain further publication of the

18  Every 8 Minutes campaign in states where bellwether trials are currently scheduled. The Court should

19  also permit Uber's service of a Fed. R. Civ. P. 45 subpoena on Consumer Attorneys of California. At

20  the very least, the expanded voir dire requested by Uber is necessary to protect Uber's right to an

21  impartial jury.

22

23

24  Dated: January 2, 2026                    Respectfully submitted,

25                                   */s/ Laura Vartain Horn*
                                     Laura Vartain Horn (SBN 258485)
26                                   **KIRKLAND & ELLIS LLP**
                                     555 California Street, Suite 2700
27                                   San Francisco, CA 94104

28

---

8

Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT (*Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, LLP**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, LLP**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

DEFENDANTS' REPLY ISO MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND
RELATED RELIEF, AND (2) THIRD PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN
Case No. 3:23-MD-3084-CRB

CHRISTOPHER V. COTTON (*Pro Hac Vice*)
ccotton@shb.com
**SHOOK, HARDY & BACON, LLP**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' REPLY ISO MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND
RELATED RELIEF, AND (2) THIRD PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN
Case No. 3:23-MD-3084-CRB

1

## **PROOF OF SERVICE**

I hereby certify that on January 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Laura Vartain Horn*
Laura Vartain Horn

DEFENDANTS' REPLY ISO MOTION FOR (1) POSTPONEMENT OF FIRST BELLWETHER TRIAL AND RELATED RELIEF, AND (2) THIRD PARTY SUBPOENA REGARDING MISLEADING AD CAMPAIGN
Case No. 3:23-MD-3084-CRB