1
2  [Submitting counsel below]
3
4                    UNITED STATES DISTRICT COURT
5                  OF NORTHERN DISTRICT OF CALIFORNIA
6                        SAN FRANCISCO DIVISION
7
8  | **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB |
   |---|---|
   | | **PLAINTIFF'S TRIAL BRIEF RE: SEXUAL ASSAULT CAUSE CHALLENGES** |
   | This Document Relates to: | Judge:  Honorable Charles R. Breyer |
   | | Ctrm.:   D. Ariz., 501 |
   | *Jaylynn Dean v. Uber Techs., Inc.*, N.D. Cal. No. 23-cv-06708 D. Ariz. No. 25-cv-4276 | |

15                    UNITED STATES DISTRICT COURT
16                         DISTRICT OF ARIZONA
17                          PHOENIX DIVISION
18
    | JAYLYNN DEAN, | No. 25-cv-4276-PHX-CRB |
    |---|---|
    | Plaintiff, | Judge:  Honorable Charles R. Breyer |
    | v. | Ctrm.:   501 |
    | UBER TECHNOLOGIES, INC., et al., | |
    | Defendants. | |

**INTRODUCTION**

Plaintiff respectfully submits this trial brief on an anticipated voir dire issue: Plaintiff should be permitted to rehabilitate prospective jurors who indicated on their juror questionnaires that they cannot be fair and impartial due to personal experience with sexual assault. Exclusion of these jurors for cause without an oral examination to probe their understanding of the rules and the basis for their questionnaire responses would run afoul of the Court's task to select a jury that represents "a fair cross section of the community." 28 U.S.C. § 1861. This issue is not case-specific: a fair and thorough process here will protect the integrity of jury selection for all future bellwether trials.

**BACKGROUND**

On the juror questionnaire, Question No. 2 presents the parties' stipulated three-sentence joint statement of the case, then asks: "Given the nature of the case, if selected, can you be a fair and impartial juror?" *See* ECF No. 4513 at 2. Prospective jurors may check only "Yes" or "No." *Id*. They are then asked: "If you answered 'No,' such that you believe you could NOT be a fair and impartial juror due to the subject matter of the case, please explain why." *Id*. Save for the parties' joint statement of the case, Question No. 2 is drawn verbatim from the District of Arizona's standard juror questionnaire. *See* ECF No. 4495-1 at 1.

In response to Question No. 2, four prospective jurors answered "No" and stated that their reason for so answering included that either they themselves or someone they knew had experienced sexual assault. *See, e.g.*, Questionnaire Response of Prospective Juror No. 42 ("I was raped as a teenager and believe that there should be consequences for the perpetrator."); Questionnaire Response of Prospective Juror No. 56 ("My mother is a victim of sexual assault. I have also worked with many students who have been victims of sexual abuse."). Another 34 prospective jurors did not indicate a hardship related to sexual assault, but noted elsewhere in their questionnaire that they or someone they knew had experienced sexual assault. Altogether, this amounts to 27% of the jury pool, not including jurors excused for hardship.

## LEGAL STANDARD[1]

A district court has "broad discretion in how to conduct the voir dire." *Paine v. City of Lompoc*, 160 F.3d 562, 564 (9th Cir. 1998). A challenge to strike a prospective juror for cause is "narrowly confined to instances in which threats to impartiality are admitted or presumed from the relationships, pecuniary interests, or *clear biases* of a prospective juror." *Darbin v. Nourse*, 664 F.2d 1109, 1113 (9th Cir. 1981) (emphasis added). Actual bias is defined as a prospective juror's "inability to act impartially or a refusal to weigh the evidence properly." *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1220 (9th Cir. 1997). In assessing bias, a prospective juror's "initial impressions or initial bias may be irrelevant" if the prospective juror "commits to lay aside those feelings and reach a verdict based on the evidence presented and the court's instructions." *Id.* A prospective juror's statement that he "can lay aside his impressions and decide the case on the evidence presented and the charge of the court should [] be weighed in the discretion of the trial judge." *United States v. Claiborne*, 765 F.2d 784, 800 (9th Cir. 1985), *abrogated on other grounds*, *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

In Arizona, the court "must conduct voir dire orally." Ariz. R. Civ. P. 47(c)(5)(A). After "thoroughly question[ing] the jury panel," upon request, the court "must allow the parties sufficient time, with other reasonable limitations, to conduct a further oral examination of the prospective jurors." *Id.*; *see also* Ariz. R. Civ. P. 47, comments to 2022 amendment ("When feasible, the court should permit liberal and comprehensive examination by the parties … and use open-ended questions that elicit prospective jurors' views narratively."). A party may challenge a prospective juror for cause if the prospective juror "has—by words or actions—shown bias or prejudice for or against any party." Ariz. R. Civ. P. 47(d)(1)(D). A prospective juror who is challenged for cause "may be examined under oath by the court or, with the court's permission, by a party." Ariz. R. Civ. P. 47(d)(2). The party asserting the challenge must show by a preponderance of the evidence that the juror "cannot render a fair and impartial verdict." Ariz. R.

---

[1] Because the Court has indicated that it intends to emulate Arizona practice to the extent possible in conducting voir dire, Plaintiff provides relevant state and federal law.

Civ. P. 47(d)(3). In making this determination, the court "must consider the totality of a prospective juror's conduct and answers given during voir dire as stated on the record by the trial court." *Id*.

## ARGUMENT

"Prudence dictates that courts … should hesitate before formulating categories of relationships which bar jurors from serving in certain types of trials." *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990). Arizona law prevents a crime victim from being disqualified as a potential juror "simply because he was the victim of a crime similar to one with which the defendant is charged." *State v. Rose*, 121 Ariz. 131, 140 (1978). So too in the Ninth Circuit, "even in cases that involve crimes that generate a strong emotional response, such as molestation and rape." *Ruderman v. Ryan*, 2010 WL 2757282, at *9 (D. Ariz. July 13, 2010), *aff'd*, 484 F. App'x 144 (9th Cir. 2012). The same is true for prospective jurors who have close relationships with individuals who have experienced sexual violence. *See, e.g., Fields v. Brown*, 503 F.3d 755, 774 (9th Cir. 2007) ("Being the spouse of a rape victim is not, in and of itself, such an 'extreme' or 'extraordinary' situation that it should automatically disqualify one from serving on a jury in a case that involves rape."); *Tinsley*, 895 F.2d at 529 (no presumption of bias warranted for prospective juror, a social worker who had counseled rape victims, to serve on a rape case).

This makes sense for a few reasons. First, "to hold that a rape victim can never be an impartial juror in a rape trial [] would insult not only all rape victims but also our entire jury system, which is built upon the assumption that jurors will honestly try to live up to the sanctity of their oath." *Fields*, 503 F.3d at 775 (cleaned up). Second, as Uber itself has recognized[2], a staggering proportion of Americans—and women in particular—have been victims of sexual violence. In Uber's 2021-2022 US Safety Report, the company stated, "[n]ational data shows that

---

[2] https://tb-static.uber.com/prod/udam-assets/drclg/UberUSSafetyReport_201718_FullReport.pdf (last accessed January 5, 2026) ("Sexual assault is one of the most pervasive yet under-reported crimes in modern society.... [N]early 44% of US women and nearly 25% of US men will be the victim of contact sexual violence in their lifetime. This is an issue that almost 52.2 million women and 27.6 million men live with every single date."); https://uber.app.box.com/s/lea3xzb70bp2wxe3k3dgk2ghcyr687x3?uclick_id=5e4f66f9-4137-4bf4-910a-f2b153952795 (last accessed January 5, 2026) ("Sexual violence is a devastating and pervasive crime that profoundly affects every facet of society. In the United States, nearly 1 in 2 women and about 1 in 4 men experience some form of sexual violence in their lifetime.")

women are disproportionately affected by sexual violence. In Uber-related reports of non-consensual sexual penetration, women were 89% of the survivors..." (internal citations omitted).[3] The CDC's National Center for Injury Prevention and Control recently reported that 53.1% of women in Arizona have experienced contact sexual violence (including rape, sexual coercion, and/or unwanted sexual contact)—an estimated 1,463,000 women.[4] 22.3% of women in Arizona have experienced completed or attempted rape.[5] These rates are slightly higher than those for women in the U.S. as a whole (45.1% and 21%, respectively).[6] Automatic exclusion of those personally affected by sexual violence would eliminate an enormous swath of potential jurors, predominantly women.

Given the statistics, it is unsurprising that a significant portion of the jury pool here reported direct or indirect personal experience with sexual violence. It is likewise unsurprising that many jurors who reported such experience, erring on the side of caution in the face of a "Yes" or "No" question on a court document, selected that they could not be fair and impartial. But the juror questionnaire lacks any explanation of what it means to serve as a "fair and impartial juror," or a seated juror's duty to follow the law as stated by the Court. *See* Ex. A at 70:25-71:24 (April 21, 2023 Trial Tr., *San Francisco Unified School District v. JUUL Labs, Inc.*, Case. No. 19-MD-02913-WHO) (prospective juror during counsel's voir dire following court's instructions: "Part of the issue I have with the questionnaire, which I'm sure it's designed that way, is that you can never get to middle ground on anything. You either had to agree or disagree. You couldn't say I'm neutral. So it forced me into, you know, [my answer]. … But, I mean, I

---

[3] https://uber.app.box.com/s/lea3xzb70bp2wxe3k3dgk2ghcyr687x3?uclick_id=5e4f66f9-4137-4bf4-910a-f2b153952795 (last accessed January 5, 2026).

[4] https://www.cdc.gov/nisvs/media/pdfs/sexualviolence-brief.pdf?ACSTrackingID=FCP_3_USCDC_1104-DM151455&ACSTrackingLabel=%5BProof%203%5D%20CDC%20Releases%20the%20National%20Intimate%20Partner%20and%20Sexual%20Violence%20Survey%20(NISVS)%3A%20New%202023%2F2024%20Sexual%20Violence%20Data%20&deliveryName=FCP_3_USCDC_1104-DM151455&ACSTrackingID=USCDC_1104-DM151455&ACSTrackingLabel=CDC%20Releases%20the%20National%20Intimate%20Partner%20and%20Sexual%20Violence%20Survey%20(NISVS)%3A%20New%202023%2F2024%20Sexual%20Violence%20Data%20&deliveryName=USCDC_1104-DM151455 (last accessed on January 5, 2026).

[5] *Id*.

[6] *Id*.

1  have no problem looking at the facts in this case and deciding."). With such context, some jurors
2  can and do genuinely amend their initial answers. *See, e.g., id.* at 93:25-99:6, 213:13-214:10
3  (declining to strike for cause juror who expressed strong views in questionnaire based on spouse's
4  personal experience, but affirmed at voir dire that he could be impartial); *State v. Smith*, 182 Ariz.
5  113, 115 (Ct. App. 1995) (affirming trial court's decision not to strike for cause juror who
6  initially stated her daughter's status as a crime victim "might" cause her difficulty to be fair and
7  impartial, but upon further questioning stated: "I think I could be fair."); *see also Image Tech.*,
8  125 F.3d at 1220 (prospective juror's initial bias "may be irrelevant" if they "commit[] to lay
9  aside those feelings and reach a verdict based on the evidence presented and the court's
10 instructions").

11    Rehabilitation will not be unduly time-consuming or difficult: a simple explanation of
12 impartiality and inquiry as to whether jurors can follow the Court's instructions and make a
13 judgment based solely on the evidence presented is all that is required. But the value of assessing
14 jurors' in-person demeanor cannot be understated. *See State v. Puga*, 564 P.3d 631, 637 (Ct. App.
15 2025) (explaining that the reason for deference to a superior court's rulings on voir dire is that
16 "review of a cold transcript does not allow us to look a prospective juror in the eye or hear her
17 tones of voice"); *State v. Lucas*, 578 P.3d 822, 826 (Ariz. Ct. App. 2025), *as amended* (Oct. 1,
18 2025) ("Verbal voir dire is critical—it lets the trial judge evaluate the jurors' demeanor as well as
19 words."). For this reason, the juror questionnaire is a tool meant to supplement—not replace—a
20 thorough oral voir dire, using open-ended questions to elicit narrative responses by prospective
21 jurors. *See Lucas*, 578 P.3d at 827 ("Courts cannot substitute a written questionnaire for verbal
22 questioning."). In determining whether a juror can be fair and impartial despite personal
23 experience with sexual violence, the Court may inquire how that experience affected the juror,
24 and how it compares factually to Plaintiff's. *See Ruderman*, 2010 WL 2757282, at *10
25 (describing inquiry to determine whether a prospective juror has implied bias due to personal
26 experience); *United States v. Powell*, 226 F.3d 1181, 1189 (10th Cir. 2000) (similar, considering
27 whether there are "compelling similarities between the experiences of the challenged juror and
28 the facts at issue in the trial at hand").

        Arizona courts have rejected cause challenges to strike jurors whose juror questionnaires indicated potential bias where the jurors asserted at voir dire that they will nevertheless heed their duty to set that bias aside. *See, e.g.*, *State v. Montoya*, 554 P.3d 473, 501 (Ariz. 2024) (finding no abuse of discretion in denying motion to strike for cause juror in capital murder trial where juror indicated on questionnaire that he was strongly in favor of the death penalty, but repeatedly affirmed that he would consider the facts and follow the law); *State v. Riley*, 459 P.3d 66, 85 (Ariz. 2020) (affirming trial court's declining to strike for cause juror who indicated on questionnaire that she disagreed that a defendant did not need to present evidence, but later clarified that her answer was based on a lack of understanding of the law and indicated she would follow the law even if she did not agree with it). Other courts have done so specifically for prospective jurors who reported personal experiences with sexual assault in cases involving the same. *See, e.g.*, *State v. Atherton*, 144 A.3d 311, 317 (Vt. 2016) (prospective jurors in sexual assault trial did not have actual or fixed bias despite reporting in questionnaires that they knew sexual assault victims and that it would affect their ability to be fair and impartial, where no jurors indicated that they would be unable to be fair and impartial at voir dire following court and counsel's instructions, explanations, and further questioning); *see also id*. at 316 ("[W]hile written responses to a questionnaire may alert the trial court and the parties to a potential issue of juror bias, voir dire provides the opportunity to explore the issue and confirm or deny its actual existence. … It is hardly surprising [] that a juror's initial written response on a questionnaire may change in the voir dire proceeding, just as an initial response in the proceeding itself may change after further questioning and instruction."); *People v. Richardson*, 350 P.3d 905, 915 (Colo. App. 2014) (same, for prospective juror whose mother was a sexual assault victim and wrote on questionnaire that she believed she could not be fair and impartial, but said at voir she could "do her best" to base her verdict on the evidence). Here, in light of the pervasive nature of sexual violence, the Court should utilize voir dire to elicit thorough, informed answers from each prospective juror who reported personal experience with the subject to determine whether they can nevertheless serve as fair and impartial jurors.

## CONCLUSION

For these reasons, the Court should decline to strike for cause prospective jurors on the basis of their personal experience with sexual assault alone, and Plaintiff should be permitted to rehabilitate those prospective jurors who indicated on their questionnaires that they cannot be fair and impartial due to prior experience with sexual assault.

Dated: January 5, 2026                                  Respectfully submitted,

By: /s/ Sarah R. London
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: /s/ Rachel B. Abrams
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: /s/ Roopal P. Luhana
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

## **FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: January 5, 2026                By:     */s/ Andrew R. Kaufman*
                                              Andrew R. Kaufman