Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com
Jessica Davidson (Admitted *Pro Hac Vice*)

Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

*Attorneys for Defendants*

UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB (LJC) |
| | **MOTION FOR (1) ENTRY OF AN ORDER TO SHOW CAUSE WHY 6 PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE AND (2) ALLOWING LIMITED DEPOSITIONS OF 5 PLAINTIFFS REFERENCED HEREIN** |
| This Document Relates to: | |
| ALL ACTIONS | |
| | Judge: Hon. Charles R. Breyer |
| | Date: February 13, 2026 |
| | Time: 10:00 a.m. |
| | Courtroom: 6 – 17th Floor |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................1

II.  BACKGROUND .................................................................................5

A.   PTO #5 ..............................................................................................5

B.   NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS .............5

     1.   Uber Has Identified the Alteration of Additional Actual Receipts ...........5

III. ARGUMENT ....................................................................................13

A.   AS WITH ORDERS GRANTING PRIOR MOTIONS, THE COURT SHOULD
     EXERCISE ITS AUTHORITY UNDER RULE 37(B) TO DISMISS THE CLAIMS
     OF PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS .......13

B.   THE COURT SHOULD AUTHORIZE LIMITED DEPOSITIONS OF PLAINTIFF
     MDL ID'S 3698, 3700, 3879, 4142 AND 4243 TO UNDERSTAND THE FRAUD,
     HOW THEY BECAME PLAINTIFFS, AND THEIR CONNECTIONS TO OTHER
     PLAINTIFFS SUBJECT TO UBER'S FRAUDULENT RECEIPTS MOTIONS .....17

IV.  CONCLUSION ................................................................................20

i

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
   69 F.3d 337 (9th Cir. 1995) ...................................................................................................14

*Estate of Arroyo v. Cnty. of San Diego*,
   No. 21-cv-1956, 2025 WL 1914399 (S.D. Cal. Apr. 14, 2025) ............................................19

*Barton v. Delfgauw*,
   No. 21-cv-5610, 2025 WL 814484 (W.D. Wash. Mar. 13, 2025)..........................................19

*In re Deepwater Horizon*,
   907 F.3d 232 (5th Cir. 2018) ................................................................................................16

*Garcia v. Berkshire Life Ins. Co. of Am.*,
   569 F.3d 1174 (10th Cir. 2009) .......................................................................................14, 16

*Goodyear Tire & Rubber Co. v. Haeger*,
   581 U.S. 101 (2017)...............................................................................................................20

*IV Solutions, Inc. v. Office Depot Emple. Welfare Benefit Plan*,
   Case No. EDCV 07-1603-VAP, 2009 U.S. Dist. LEXIS 133650 (C.D. Cal. May 13,
   2009) ...........................................................................................................................14, 15, 16

*Malone v. U.S. Postal Serv.*,
   833 F.2d 128 (9th Cir. 1987) ...........................................................................................14, 15, 16

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   460 F.3d 1217 (9th Cir. 2006) .........................................................................................14, 15

*Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*,
   727 F.2d 1470 (9th Cir. 1984) ...........................................................................................4, 13

*In re Silica Prods. Liab. Litig.*,
   398 F. Supp. 2d 563 (S.D. Tex. 2005) ..............................................................................15, 16

*Singh v. Hancock Nat. Res. Grp., Inc.*,
   Case No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893 (E.D. Cal. Feb. 21,
   2017) ...............................................................................................................................14, 16

*Thompson v. Hous. Auth. of City of Los Angeles*,
   782 F.2d 829 (9th Cir. 1986) .................................................................................................14

*Wood v. Cnty. of Los Angeles*,
   No. 16-cv-7451, 2018 WL 6332275 (C.D. Cal. May 16, 2018)............................................19

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

*Wyle v. R.J. Reynolds Indus., Inc.*,
709 F.2d 585 (9th Cir. 1983) ............................................................................13, 14

*In re Yasmin and Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
No. 3:09-md-02100-DRH-PMF, 2011 WL 3035087 (S.D. Ill. July 25, 2011) ......................20

*Yourish v. Cal. Amplifier*,
191 F.3d 983 (9th Cir. 1999) ...........................................................................15

**Rules**

Fed. R. Civ. P. 16(f) ........................................................................................13

Fed. R. Civ. P. 16(f)(C) ...................................................................................13

Fed. R. Civ. P. 37 .......................................................................................13, 14

Fed. R. Civ. P. 37(b)(2)(A)(v) .........................................................................13

Fed. R. Civ. P. 37(b)(2)(C) ..............................................................................4

**Other Authorities**

https://www.rideshareassaultjustice.com/ ........................................................15

L.A. TIMES (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-
02/settlement-story-ab218-sex-abuse ..............................................................15

Uber, https://help.uber.com/en/riders/article/access-for-all-fee?nodeId=1447a1cb-6522-
4f70-9647-1cdf960c4da0 ..................................................................................9

Uber, https://help.uber.com/riders/article/what-is-the-ca-driver-benefit-
fee?nodeId=5086f3dc-2085-46e4-98c4-65e881072114 .....................................9

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

## I.     INTRODUCTION

Uber's First Fraudulent Receipts Motion on July 30, 2025 (ECF 3604) should have been the first *and last* motion addressing Plaintiffs' Counsel's review and submission of fraudulent receipts in this litigation. Unfortunately, Uber has since filed two additional Fraudulent Receipt Motions (ECF 3784 and 4137) and is now before this Court again with a Fourth Fraudulent Receipts Motion addressing 6 additional Plaintiffs' fraudulent receipts. 4 out of 6 of the Plaintiffs at issue in this motion had their counsel upload a ride receipt to MDL Centrality ("MDLC") *after* Uber's Second Fraudulent Receipts Motion. This is conduct that demonstrates not only ongoing fraud in this litigation, but a disregard for prior Court orders.

Plaintiffs' Leadership stated in a brief filed over four months ago, that "fraud has no place in the MDL." (ECF 3768). Yet, Plaintiffs' Counsel has continued to submit fraudulent receipts provided by their clients with little to no investigation on their part that would eliminate the need for motions like this one.

One of the Plaintiffs' firms at issue represents a Plaintiff who, before filing a Complaint on October 15, 2025, had already been the subject of Uber's fraudulent receipts motions because she had allowed her receipts to be used for *three other Plaintiff's fraudulent receipts* (one in the present motion), including a receipt included in Uber's First Fraudulent Receipts Motion filed nearly 5 months ago. ECF 3604.  Further, in early September 2025, Defendants provided Plaintiffs' Counsel Leadership with notice of service of a non-party subpoena directed to this Plaintiff *prior* to her filing of an action in the present litigation. In other words, a Plaintiffs' firm in this litigation – knowing that a Plaintiff had repeatedly been involved in fraud – took her on as a client and filed a Complaint on her behalf after the fraud had been made public.

This repeated fraud underscores a systemic problem that extends beyond individual Plaintiffs. It reflects a broader pattern of noncompliance with Court Orders, failures to provide bona fide ride receipts, and troubling practices by firms that prioritize mass recruitment over claim vetting. This motion addresses the latest instances of fraud but also discusses larger issues that threaten the integrity of this litigation.

Some of these receipts show on their faces they were generated using websites designed for creating receipts, such as Makereceipt.com. Meanwhile, other receipts contain basic math errors, formatting inconsistencies, and other glaring errors proving their inauthenticity. And some receipts submitted by these Plaintiffs were even altered from actual receipts. ECF 3876; ECF 3972. To address that fraud, the Court ordered the 34 Plaintiffs identified in the first three Fraudulent Receipt Motions to show cause why their claims should not be dismissed with prejudice. Of these 34 fraudulent receipt Plaintiffs, 28 (over 82%) entirely failed to respond to the Court's orders. The other 6 did not claim that their receipts were not fraudulent.  Further breakdown of the numbers from the 34 Plaintiffs is below:

| | |
|---|---|
| Number of Plaintiffs Who Uber Claimed Provided Non-Bona-Fide Receipts | 34 |
| Number of Receipts Plaintiffs' Counsel Claim Are Bona Fide (Out of 34) | 0[1] |
| Number Who Plaintiffs' Counsel Claim to Be Unable to Contact (Out of 34) | 13 |
| Number of Plaintiffs Subject to the Court's Show-Cause Orders | 34 |
| Number of Plaintiffs Who Failed to Respond to the Court's Show Cause Orders | 28 |
| Number of Plaintiffs Who Responded to the Court's Show Cause Orders But Did Not Dispute Fraud | 6 |
| Number of Fraud Plaintiffs Whose Attorneys Moved to Withdraw | 29[2] |
| Number of Fraud Plaintiffs Whose Attorneys' Motions to Withdraw Were Denied | 25 |

In light of these statistics, Uber continues to observe another troubling pattern emerging on the part of Plaintiffs' firms in this litigation. Rather than abide by the Court's Orders and improve their intake and vetting process, Plaintiffs' Counsel continue to file cases and shift the vetting burden to Uber, counting on Uber to root out fraud. Plaintiffs' Counsel demonstrated that they are unbothered by this behavior even months after the First Fraudulent Receipts Motion and multiple Show Cause Orders. Since July 30, 2025

---

[1] Levin Simes LLP, representing Plaintiffs Jane Doe LS 333 and Jane Doe LS 397, initially stated that those Plaintiffs "assure us their receipts are authentic," ECF 3771 at 4, but did not ultimately file any responses to the Court's order to show cause and instead moved to withdraw without any apology to this court. ECF 4146.

[2] This figure does not include MDL 1384, who also filed a separate lawsuit (now dismissed) with different counsel under the pseudonym J.H. Although Peiffer Wolf withdrew as counsel for J.H., it did so before Uber filed its fraud motion. Kherkher Garcia has separately moved to withdraw as counsel for MDL 2774. Kherkher Garcia maintains that their firm is unconnected to MDL 1384/2774's fraud against Defendants but even the most elementary vetting during intake would have uncovered that MDL 1384/2774 had previously filed a duplicate claim with Peiffer Wolf using a fraudulent receipt just 6 months prior to the filing of MDL 2774's claim in late 2024.

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

(which encompasses the filing of Uber's three Motions), the number of active complaints has grown by over 650 and the litigation now includes more than 2,900 active Plaintiffs (which grows nearly daily). Contributing, in part, to the increase in new matters is click-bait advertising that Plaintiffs' law firms use heavily to attract additional clients, who are drawn in by promises of "free compensation" with no paperwork.  Yet, Plaintiffs' law firms do not vet the legitimacy of these Plaintiffs' claims or the single most fundamental piece of evidence – a ride receipt. Plaintiffs' law firms' arguments that only Uber is in a position to determine whether a ride receipt is fraudulent are unavailing when, for the last 5+ months, Uber has developed detailed instructions via the public record of what constitutes fraud within a ride receipt. For example, Uber has stated on 4 occasions, across three Fraudulent Receipt Motions, that a ride receipt is fraudulent if the payment occurs before the start of the alleged ride. ECF 3604, 3784, and 4137. Yet, there are 2 receipts in the present motion that include this indicia of fraud.

To date Plaintiffs' Counsel have identified zero fraudulent receipts to Uber or this court. In fact, the Pulaski Firm represents twelve (12) of the twenty-seven (27) plaintiffs identified in the first two Fraudulent Receipts Motions, three (3) of the seven (7) plaintiffs identified in the Third Fraudulent Receipts Motion, and three (3) of the seven (7) plaintiffs (including MDL ID 4243) addressed in this Fourth Fraudulent Receipts Motion.[3] Reich and Binstock, LLP represents three (3) of the seven (7) plaintiffs identified in Uber's Third Fraudulent Receipts Motion, and two (2) of the seven (7) plaintiffs addressed in this Fourth Fraudulent Receipts Motion.[4] The only proactive step taken by Plaintiffs' Counsel, including the firms representing Plaintiffs subject to this motion, is to file motions to withdraw, attempting to leave their clients, Uber, and this Court to address the fraud with zero accountability.

---

[3] Overall, the Pulaski Firm represents 17 of the 40 plaintiffs who have been identified in the four Fraudulent Receipts Motions. This is more clients than the next five firms combined across the Fraudulent Receipt Motions.
[4] Overall, Reich and Binstock come in second with 5 plaintiffs identified as submitting fraudulent receipts.  All 5 of these claims were submitted after the First and Second Fraudulent Receipt Motions were filed with this Court.

3

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Uber respectfully moves for an order to show cause why the claims of the 6 Plaintiffs identified in this motion—who have submitted non-bona-fide receipts—should not be dismissed with prejudice. *See* Exhibit B. Moreover, in light of the apparently coordinated use of bona fide Uber receipts as the basis for Plaintiffs' PTO #5 submissions, Uber respectfully moves for an order authorizing a targeted deposition of Plaintiff with MDL ID 4243—whose receipts have been altered and submitted by three Plaintiffs subject to Uber's Fraudulent Receipts Motions since July 30, 2025. Uber believes that Plaintiffs and third parties may be coordinating with other Plaintiffs to perpetrate fraud in this litigation. Accordingly, Uber seeks a 3-hour deposition of MDL ID 4243 to explore (a) her connection to Plaintiffs with MDL IDs 3286, 3962, and 4097 included in Uber's Fraudulent Receipts Motions; (b) who else was involved in or aware of the misconduct; and (c) why, after accepting service of a non-party subpoena in early September 2025 due to her connection to Uber's First Fraudulent Receipts Motion, she refused to comply but then, on October 15, 2025, filed a lawsuit against Uber with the Pulaski Law Firm. Defendants notified Plaintiffs' Leadership of the fraud related to MDL ID 4243 prior to serving the non-party subpoena. In light of the apparently coordinated use of bona-fide Uber receipts from a non-party account holder as the basis for Plaintiffs' PTO #5 submissions in this litigation, Uber also respectfully moves for an order authorizing the targeted depositions of Plaintiffs with MDL IDs 3698, 3700, and 3879. Finally, in light of the apparently coordinated use of a real, substantiated receipt that a different Plaintiff (MDL ID 2785) submitted in support of their allegations as the basis for Plaintiff's PTO #5 submission in this litigation, Uber respectfully moves for an order authorizing the targeted deposition of Plaintiff with MDL 4142.

As the Ninth Circuit has recognized, dismissal of claims is warranted where a party, "[p]ursuant to a discovery order," "willfully, deliberately, and intentionally submitted false documents to support apparently untenable claims and defenses." *See Pro. Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1472, 1474 (9th Cir. 1984) (upholding dismissal under Fed. R. Civ. P. 37(b)(2)(C) where "[p]ursuant to a discovery order, [a party] produced documents" that were "falsified,"

4

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

including "photocopies of checks," without holding an evidentiary hearing). This relief is consistent with the Court's three prior orders on the issue of submission of fraudulent receipts. ECF 3876, 3972, and 4440.

## II.     BACKGROUND

### A.     PTO #5

The Court's PTO #5 required Plaintiffs to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident." PTO #5, ECF 175, ¶ 4; *see also* PTO #10, ECF 348, ¶ 2.

### B.     NON-BONA-FIDE RECEIPTS SUBMITTED BY CERTAIN PLAINTIFFS

At least an additional 6 Plaintiffs listed in Exhibit B have violated the Court's Order by submitting receipts that are non-bona-fide. Since July 30, 2025 (*i.e.*, the filing of Uber's First Fraudulent Receipts Motion), Plaintiffs have submitted at least 13 additional fraudulent receipts (not including the 6 at issue in the present motion). Unfortunately, this is the tip of the iceberg of the fraud in this litigation, including because Plaintiffs may have purchased the "Pro" or "Enterprise" membership from Makereceipt.com (discussed in Uber's Receipts Motion), which makes receipt alteration more difficult to detect. The present motion addresses only those that Uber has been able to identify through its manual, line-by-line review process thus far, but adds to the growing population already subject to a Motion and/or Show Cause Order.

#### 1.     Uber Has Identified the Alteration of Additional Actual Receipts
MDL ID 4097

The below is a version of the original receipt identified by Uber for an actual ride that occurred on November 9, 2023, not September 20, 2023 as Plaintiff with MDL ID 4097 alleges. The version of the receipt produced in the litigation was altered to match the allegations made by MDL ID 4097.

Specifically, the name of the rider was changed from ▮▮▮ (now also MDL ID 4243) to ▮▮▮▮. Declaration of Brett D. Harrison, at 6:7-9.  Further, the date of receipt submitted by Plaintiff includes a "0" padding before the date of the trip. *Id.* at 6:5-6. The purported time of payment (9:16 PM) occurs prior to the time the trip commenced (9:32 PM). *Id.* at 6:6-7.



**Real Receipt (Cotton, Decl. Ex. 1)**          **MDL ID 4097 (Cotton, Decl. Ex. 2)**

Further, and most telling of the fraudulent nature of this receipt, the Trip uuID in MDL ID 4097's

PTO #5 submission matches that of the bona-fide receipt (in Uber's system) *and* the PTO #5 submission

for *two* entirely different MDL ID's (3286 and 3962[5]) which is readily apparent based on the active "Visit

the trip page" URL available in the receipts. *Id.* at 6:2-4. The underlying real receipt and associated Trip

uuID is now the basis of *three* fraudulent receipts in this litigation – MDL ID 3286 is already subject to

the Court's Order to Show Cause issued on September 9, 2025 and MDL ID 3962 is subject to the Court's

recent Order to Show Cause issued on November 19, 2025. ECF 4440.



**Real Receipt (Cotton, Decl. Ex. 1)**          **MDL ID 4097 (Cotton, Decl. Ex. 2)**

**MDL 3962 (Cotton, Decl. Ex. 3)**          **MDL ID 3286 (Cotton, Decl. Ex. 4)**

Based on the evidence of fraud, MDL ID 4097 should also be ordered to show cause.

---

[5] Plaintiff MDL ID 3962 was noticed to appear for a deposition on December 17, 2025 following this Court's Order dated November 29, 2025 (ECF 4440). MDL ID 3962 failed to appear without justification. Uber will be seeking an appropriate remedy for this blatant contempt of court and is addressing this is a separate filing in this litigation.

**MDL ID 4142**

Below is a version of the original receipt identified by Uber for an actual ride that occurred on January 28, 2024 not on October 25, 2024 as the Plaintiff with MDL ID 4142 alleges. Ex. 6. The ride receipt that MDL ID 4142 submitted appears to be the altered version of a real, substantiated receipt that a different Plaintiff (MDL ID 2785) submitted in support of their allegations. With the exception of the Plaintiff's name, the driver's name, the date of the ride, and the 4 pages of the receipt being reordered, all the details are the same. Harrison Decl. at 8:19-22. The pickup and drop off locations, and the route taken are the same. *Id.* at 8:20. The total charge, line-item charges and payment method (including the last 4 digits of the Apple Pay Visa card number) are the same. *Id.* at 8:19-20. The format of the PTO #5 submission uploaded by counsel for MDL ID 2785 includes screenshots from a mobile device.



**MDL ID 2785 (Cotton, Decl. Ex. 5)**          **MDL ID 4142 (Cotton, Decl. Ex. 6)**



**MDL ID 2785 (Cotton, Decl. Ex. 5)**    **MDL ID 4142 (Cotton, Decl. Ex. 6)**

The Trip uuID in MDL ID 4142's PTO #5 submission matches that of MDL ID 2785's receipt (**on the face of the document**; below). MDL ID 4142 should also be ordered to show cause.

7



MDL ID 2785 (Cotton, Decl. Ex. 5)    MDL ID 4142 (Cotton, Decl. Ex. 6)

**MDL ID 4385**

The receipt submitted by MDL ID 4385 contains several indicators that the document was altered prior to counsel's upload to MDLC. Further, when compared to a real receipt from Uber's system from the same geographic location and on the same date as the alleged incident, Defendants have demonstrated below that the receipt submitted by MDL ID 4385 is for a ride in an entirely different state.

First, the payment time for the ride occurred prior to the pickup time which is an indicator that the receipt was altered. Harrison Decl. at 10:1-2. Further, there is an unexpected space between the pickup street address and the pickup city ▮▮▮▮▮▮▮▮▮▮ *Id.* at 10:2-3.




MDL ID 4358 (Cotton, Decl. Ex. 7)    MDL ID 4358 (Cotton, Decl. Ex. 7)

Uber receipts contain line-item charges based upon taxes and fees of the state in which the ride occurred. *See* Declaration of Chad Dobbs at 2, 3 (ECF 3604-39). The ride receipt submitted by MDL ID 4358 contains charges that do not match what would be expected to have been charged based on the date and geographic location of the ride. Specifically, the purported ride occurred in ▮▮▮▮▮▮▮▮ and contains charges for "Access for All Fee" and "TX Driver Benefits". Neither of these charges are expected to have appeared on a bona-fide Uber ride receipt from ▮▮▮▮▮▮▮▮ (as demonstrated below).

8

| | |
|---|---|
| Subtotal | $13.49 |
| Booking Fee | $1.93 |
| Access for All Fee | $0.50 |
| TX Driver Benefits | $1.29 |

**MDL ID 4358 (Cotton, Decl. Ex. 7)**

Uber receipts occurring in the same week as MDL ID 4358's alleged ride and starting at the same pick-up location, have the expected charges of "Booking Fee" and "Texas Regulatory Recovery Fee." Exs. 8 and 9. The latter charge is missing from the receipt submitted by Plaintiff with MDL ID 4358.




**Bona-Fide Texas Receipt A (Cotton, Decl. Ex. 8)**    **Bona-Fide Texas Receipt B (Cotton, Decl. Ex. 9)**

Instead of the expected Texas charge ("Texas Regulatory Recovery Fee"), the receipt submitted appears to be modeled after a receipt that would have come from a ride in California. The "Access for All Fee" is a fee charged in the state of California for ride share trips which helps fund programs aimed at the promotion of disability access in buildings.[6] It is a flat fee of $0.10 per ride.[7] Further, California also includes a charge for "CA Driver Benefits" which is a fee enabled by law to enable benefits for drivers including a healthcare stipend, injury protection insurance, and a minimum earnings guarantee.[8]

---

[6] *See Access For All Fee*, Uber, https://help.uber.com/en/riders/article/access-for-all-fee?nodeId=1447a1cb-6522-4f70-9647-1cdf960c4da0 (public resource) ("The funds generated from the fee support the expansion of on-demand transportation for non-folding wheelchair users who require a wheelchair accessible vehicle (WAV).")
[7] *Id.*
[8] *See What is the CA Drive Benefit Fee?*, Uber, https://help.uber.com/riders/article/what-is-the-ca-driver-benefit-fee?nodeId=5086f3dc-2085-46e4-98c4-65e881072114 (public resource) ("The CA Driver Benefits fee, implemented on December 14th 2020, helps us fund the new benefits offered to drivers").

MDL ID 4358 should also be ordered to show cause.

**MDL ID's 3700, 3879, and 3698**

The receipts submitted by MDL ID's 3700, 3879, and 3698 originate from a non-party account holder. The Plaintiffs ordered rides in the same city as the non-party account holder ███████; all three rides occurred within a few weeks of each other, and the three receipts (two non-bona-fide) share addresses with the real receipts.

*MDL ID 3700*

MDL ID 3700 submitted a ride receipt via MDLC which purports to have occurred on August 13, 2024, but is an exact match to the receipt from non-party account holder with the name altered to ████.




**Real Receipt (Cotton, Decl. Ex. 10)**        **MDL ID 3700 (Cotton, Decl. Ex. 11)**

Beyond the name, the other details of MDL ID 3700's PTO #5 submission are an exact match. The driver, date, times, charges, sub charges, pickup location, drop off location, and payment method with the last 4 numbers of the account number (████) are the same. Harrison Decl. at 4:6-9. Further, and most telling of the fraudulent nature of this receipt, the Trip uuID in MDL ID 3700's PTO #5 submission matches that of the non-party account holder's bona-fide receipt (in Uber's system).



Real Receipt (Cotton, Decl. Ex. 10)          MDL ID 3700 (Cotton, Decl. Ex. 11)

    

Real Receipt (Cotton, Decl. Ex. 10)     MDL ID 3700 (Cotton, Decl. Ex. 11)

MDL ID 3700 should be ordered to show cause.

### *MDL ID 3879*

MDL ID 3879 submitted a ride receipt which purports to have occurred on August 30, 2024, but is an exact match to the receipt from the same non-party account holder with the name altered to ████.

Real Receipt (Cotton, Decl. Ex. 12)          MDL ID 3879 (Cotton, Decl. Ex. 13)

    

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

Beyond the altered name, the other details of the MDL ID 3879's PTO #5 submission are an exact match. The driver, license plate number, date, times, charges, pickup location, drop off location, and payment method with the last 4 numbers of the account number (███) are the same. Harrison Decl. at 4:28, 5:1-2. Similar to MDL ID 3700, the Trip uuID in MDL ID 3879's PTO #5 submission matches that of the non-party account holder's bona-fide receipt (in Uber's system). *Id.* at 4:28.

**Real Receipt (Cotton, Decl. Ex. 12)**          **MDL ID 3879 (Cotton, Decl. Ex. 13)**




**Real Receipt (Cotton, Decl. Ex. 12)**          **MDL ID 3879 (Cotton, Decl. Ex. 13)**

MDL ID 3879 should also be ordered to show cause.

### *MDL ID 3698*

MDL ID 3698 submitted a screenshot of the Uber application's user interface for the alleged ride but it does not provide a name for the passenger. The fraud here is not an alteration of the real receipt; rather, MDL ID 3698 simply submitted *the* real receipt for another non-party passenger and represented that, under penalty of perjury, it was her own bona fide Uber receipt. The driver, license plate, date, times, charges, pickup drop-off location are all the same as the non-party's real receipt.

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)

 

**Real Receipt (Cotton, Decl. Ex. 14)**              **MDL ID 3698 (Cotton, Decl. Ex. 15)**

Further, the pickup location within MDL ID 3698's PTO #5 submission is the same as the pickup location for MDL ID 3879's submission above. The drop-off location for MDL ID 3698's PTO #5 submission is the same as the pickup location for MDL ID 3700's PTO #5 submission discussed above.

MDL ID 3698 should also be ordered to show cause.

## III.    ARGUMENT

### A.    AS WITH ORDERS GRANTING PRIOR MOTIONS, THE COURT SHOULD EXERCISE ITS AUTHORITY UNDER RULE 37(B) TO DISMISS THE CLAIMS OF PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS.

6 Plaintiffs in Exhibit B have not complied with PTO #5 to provide "a bona fide ride receipt from an Uber trip connected to the alleged incident." PTO #5, ECF 175, ¶ 4; PTO #10, ECF 348, ¶ 2.

Rule 16(f) provides that "the [C]ourt may issue any just orders" when a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(C). Such "just orders" may include, for example, "dismissing the action." Fed. R. Civ. P. 37(b)(2)(A)(v); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983) ("By its terms, Rule 37 authorizes the sanction of dismissal."). The production of "falsified" discovery in response to a "discovery order" is grounds for dismissal under Rule 37. *Pro. Seminar Consultants, Inc.*, 727 F.2d at 1472-73 (affirming default judgment against defendant that "did not assert that the documents were genuine"). Courts may impose sanctions as part of their "inherent power to control their dockets," including their "inherent power to dismiss an action when a party has

13

willfully deceived the court." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986); *Wyle, Inc.*, 709 F.2d at 589. "Where a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings'—such as "fabricat[ing]" evidence during discovery—'[i]t is well settled that dismissal is warranted" under the Court's inherent authority. *IV Solutions, Inc. v. Office Depot Emple. Welfare Benefit Plan*, Case No. EDCV 07-1603-VAP (JWJx), 2009 U.S. Dist. LEXIS 133650, at *21 (C.D. Cal. May 13, 2009) (dismissing action where plaintiff "fabricated an invoice" during discovery) (citing *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)); *see also, e.g.*, *Singh v. Hancock Nat. Res. Grp., Inc.*, Case No. 1:15-cv-01435-LJO-JLT, 2017 U.S. Dist. LEXIS 24893, at *24 (E.D. Cal. Feb. 21, 2017) (plaintiffs "falsified documents to respond to discovery requests," which "demonstrate bad faith and . . . willful abuse of the judicial process and support the issuance of terminating sanctions"); *Garcia v. Berkshire Life Ins. Co. of Am.*, 569 F.3d 1174, 1176 (10th Cir. 2009) (affirming dismissal where plaintiff "fabricated a number of discovery documents in an effort to win her case."). Regardless of whether a district court is acting pursuant to Rule 37 or its inherent authority, the Ninth Circuit has held that "[a] district court must weigh five factors in determining whether to dismiss a case for failure to comply with a court order: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (internal quotations omitted).

Each of the *Malone* factors support dismissal with prejudice here.

***Public interest and the Court's docket***. The first two factors— "the public's interest in expeditious resolution of litigation" and "the court's need to manage its docket"—both "strongly support the court's dismissal" of the claims of Plaintiffs who deliberately fail to comply with court orders or engage in fraudulent discovery. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226, 1240, 1247 (9th Cir. 2006). "[T]he public's interest in expeditious resolution of litigation always favors

14

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

dismissal." *Yourish v. Cal. Amplifie*r, 191 F.3d 983, 990 (9th Cir. 1999). Plaintiffs' failure to comply honestly with their discovery obligations or even conduct the most basic of investigations has also consumed scarce judicial time and resources. "Sound management of the court's docket also counsels in favor of sanctions as a deterrent to others, particularly in the context of an MDL proceeding where there are thousands of plaintiffs and tag-along cases are continually being added." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.* at 1234.  Given the already existing fraud, deterrence is vital here. There are now more than 2,900 Plaintiffs in this proceeding, resulting in part from aggressive online advertising from Plaintiffs' Counsel, such as the ad promising "Significant Compensation" with "No Paperwork" and "No Hassle." *See* https://www.rideshareassaultjustice.com/; *see also* Rebecca Ellis, *In the biggest sex abuse settlement in U.S. history, some claim they were paid to sue*, L.A. TIMES (Oct. 2, 2025), https://www.latimes.com/california/story/2025-10-02/settlement-story-ab218-sex-abuse. (stating that in Instagram attorney advertisement for L.A. County sex abuse lawsuit, "a representative for the firm's intake department called" a Times reporter who entered their phone number in the ad "more than 38 times"). Prospective plaintiffs need to understand there is a consequence for falsifying evidence (or aiding) and that doing so during the course of this litigation will not result in monetary compensation.

**Prejudice**. Courts "examine whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131. Here, Plaintiffs' fabrication (and Plaintiffs' firms' failure to conduct a reasonable investigation) of receipts means that Uber has "been forced to defend this case from the outset – despite its basis in fraud," which is the paradigmatic form of prejudice. *See IV Solutions Inc.*, 2009 U.S. Dist. LEXIS 133650, at *20; *see also In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 636 (S.D. Tex. 2005) (filing claims based on false diagnoses forced defendants to "pay significant costs litigating meritless claims[.]") This misconduct also calls into question the "veracity" of all of these Plaintiffs' other discovery responses, which will require Uber to "attempt independent corroboration of each submission, at substantial expense or time and

15

money, or to accept the real possibility that those discovery documents . . . are inaccurate." *Garcia*, 569 F.3d at 1180 ("submission of falsified evidence substantially prejudices an opposing party"). Allowing these claims to proceed would also prejudice the rights of claimants who have complied with their discovery obligations and undermine their "full and meaningful access to the courts[.]" *In re Silica*, 398 F. Supp. 2d at 636; *see also In re Deepwater Horizon*, 907 F.3d 232, 236 (5th Cir. 2018) (explaining that non-bona-fide lawsuits "hamper the resolution of meritorious claims by real plaintiffs").

**Public policy**. Where Plaintiffs have "purposefully and defiantly violated a court order"—in this case, by submitting non-bona-fide receipts— "it is unnecessary … to discuss why alternatives to dismissal are infeasible." *Malone*, 833 F.2d at 132. Nor is any further warning to Plaintiffs necessary. There is no concern that the receipts at issue were somehow generated in good faith by unsophisticated people. For example, in the case of receipts altered utilizing bona-fide Uber receipts, it takes a level of sophistication and consciousness of wrong-doing to know how to edit certain aspects of an image (even if doing so on a mobile device like an Apple iPhone). Dismissal is thus very strongly in the public interest.

**Availability of lesser sanctions**. "It is difficult to conceive an act of misconduct graver than the outright fabrication of evidence that Plaintiffs here undertook[.]" *IV Solutions Inc.*, 2009 U.S. Dist. LEXIS 133650, at *23. Such actions "demonstrate bad faith and Plaintiffs' willful abuse of the judicial process and support the issuance of terminating sanctions." *Singh*, 2017 U.S. Dist. LEXIS 24893, at *24. Lesser sanctions would not sufficiently compensate Uber for having to defend against these claims. Nor would lesser sanctions deter other current (or potential) Plaintiffs from engaging in similar conduct.

For these reasons, the Court should enter Uber's proposed order attached as Exhibit A, requiring the 6 Plaintiffs in Exhibit B to show cause why their claims should not be dismissed with prejudice.

16

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

**B.      THE COURT SHOULD AUTHORIZE LIMITED DEPOSITIONS OF PLAINTIFF MDL ID'S 3698, 3700, 3879, 4142 AND 4243 TO UNDERSTAND THE FRAUD, HOW THEY BECAME PLAINTIFFS, AND THEIR CONNECTIONS TO OTHER PLAINTIFFS SUBJECT TO UBER'S FRAUDULENT RECEIPTS MOTIONS.**

Uber respectfully requests leave to conduct limited, three-hour depositions of Plaintiffs with MDL ID's 3698, 3700, 3879, 4142 and 4243. Uber has established that Plaintiffs with MDL ID's 3698, 3700 and 3879 submitted ride receipts originating from the same non-party's account.  MDL ID 4142 submitted an altered version of a ride receipt already submitted in this action by another Plaintiff (MDL ID 2785).  Further, while Uber has substantiated the authenticity of Plaintiff MDL ID 4243's ride receipt, receipts from her account were used by three other Plaintiffs, each of which has been identified as fraudulent.

***The First Node of Fraud***. MDL ID 4243's PTO #5 submission, originally for a November 9, 2023 ride, has been altered and repurposed in submissions by Plaintiffs with MDL IDs 3286, 3962, and 4097. MDL ID 3286 (PTO #5 submission filed on June 3, 2025 by Cutter Law, P.C.) was identified in Uber's First Fraudulent Receipts Motion (ECF 3604, filed July 30, 2025) and is subject to this Court's Order to Show Cause (ECF 3876, entered on September 9, 2025).  MDL ID 3962 (PTO #5 submission filed on September 9, 2025 by Reich and Binstock, LLP) was identified in Uber's Third Fraudulent Receipts Motion (ECF 4137, filed on October 13, 2025) and is subject to this Court's Order to Show Cause (ECF 4440, entered on November 19, 2025).  MDL ID 4097 (PTO #5 submission filed on October 3, 2025 by Wagstaff Law Firm) is described in this Fourth Fraudulent Receipts Motion. MDL ID 4243, represented by the Pulaski Law Firm, then filed a lawsuit and uploaded the ride receipt on October 15, 2025.

These submissions include manipulated rider names, dates, and payment timestamps, yet retain identical Trip uuIDs and formatting anomalies that trace back to the original bona fide receipt from MDL ID 4243's Uber rider account. The repeated use of this Plaintiff's bona-fide receipts raises serious questions about how the document(s) was obtained and distributed, and whether the Plaintiffs coordinated its misuse for purposes of defrauding Uber. The Plaintiffs who filed the fraudulent receipts based on MDL

ID 4243's receipts live in three separate states, and all three Plaintiffs are represented by separate counsel yet share this very important commonality – the first fraud "node" raised by Uber in this litigation.

MDL ID 4243 has not submitted a fraudulent receipt for *her* claim.  But she has allowed the same receipt to be used for other fraudulent claims. Her testimony is critical to understanding: a) how her receipt came to be used by *three* Plaintiffs; b) whether she was aware of or involved in the dissemination of a receipt from her account; c) whether any third party facilitated or encouraged the reuse of her receipt(s); and d) the circumstances surrounding her own entry into the litigation with the Pulaski Law Firm.

Defendants further note that they attempted to effectuate service of a third-party subpoena on MDL ID 4232 prior to her filing in order to address these concerns.  While she accepted service, she refused to respond.  The attempts predated her representation by counsel, and her subsequent filing raises questions about the coordination between Plaintiffs' firms and individuals whose receipts are fraudulent.

Additionally, and as noted previously, this Court ordered the deposition of MDL ID 3962 in its Order dated November 19, 2025 (ECF 4440).  The Order was entered to specifically allow Uber to investigate how the fraudulent receipt that MDL ID 3962 submitted was generated and distributed.  That fraudulent receipt is an altered version of MDL ID 4243's bona fide receipt.  MDL ID 3962 failed to appear at the properly noticed deposition, depriving Uber of the opportunity to investigate MDL ID 4243's involvement in MDL ID 3962's claims. Given the limited scope of this deposition and the Plaintiff's unique relevance to the broader pattern of misconduct dating back to Uber's First Fraudulent Receipts Motion in July 2025, this request is reasonable and necessary to safeguard the integrity of the litigation.

***The Second Node of Fraud.*** The facts for Plaintiffs with MDL ID's 3698, 3879 and 3700 largely mimic the details of the first fraud node relating to Plaintiff with MDL ID 4243.  In both instances: (a) there is evidence of coordinated use of bona-fide Uber receipts from a non-party as the basis for fraud; and (b) three separate Plaintiffs submitted altered ride receipts from a single account belonging to a non-party.  Unlike the first fraud node – where each individual resided in a different state, has different ride

18

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

information, and chose a different law firm - the specifics of these three Plaintiffs suggest that the four individuals (including the non-party) may know or have interacted with each other throughout this process. The four individuals (including the non-party) reside in the same area. The three rides all occurred in a two-week period. Further, the three rides share pickup and drop off locations.

These two nodes of fraudulent activity share notable commonalities among the firms representing the Plaintiffs involved. The Pulaski Law Firm represents two of the three Plaintiffs in the second node (MDL ID's 3698 and 3700) and the central Plaintiff in the first node (MDL ID 4243). Reich and Binstock represents the remaining Plaintiff in the second node (MDL ID 3879) and a Plaintiff from the first node whose deposition was ordered by the Court but who failed to appear (MDL ID 3962). Combined, the clients for these two firms make up more than half of the fraudulent receipts in Uber's Fraud Motions.

Uber also seeks a limited deposition of Plaintiff MDL ID 4142, who submitted a receipt that is an altered version of a receipt previously submitted by MDL ID 2785. Although this instance does not constitute a full fraud node, the reuse and alteration of receipts across Plaintiffs raises similar concerns about coordination and oversight. These overlapping matters once again involve Reich and Binstock (MDL ID 4142) and the Pulaski Law Firm (MDL ID 2785). The repeated appearance of their clients in these fraud clusters raises serious concerns about intake practices and oversight. These patterns warrant closer scrutiny to ensure compliance with Court orders and to safeguard the integrity of this litigation.

Courts have routinely authorized targeted depositions where discovery violations raise concerns about the credibility of submissions and the potential involvement of third parties in coordinated fraud. *See, e.g., Estate of Arroyo v. Cnty. of San Diego,* No. 21-cv-1956, 2025 WL 1914399, at *12 (S.D. Cal. Apr. 14, 2025) (ordering deposition to permit exploration of late-produced evidence); *Barton v. Delfgauw,* No. 21-cv-5610, 2025 WL 814484, at *4 (W.D. Wash. Mar. 13, 2025) (ordering limited discovery after late disclosure of evidence that "call[s] into question the veracity of Plaintiff's claim"); *Wood v. Cnty. of Los Angeles,* No. 16-cv-7451, 2018 WL 6332275, at *4 (C.D. Cal. May 16, 2018) (ordering limited

19

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

Case No. 3:23-md-03084-CRB (LJC)

discovery to mitigate prejudice from production violating scheduling order). Given the substantial "questions about the credibility of the information that has been obtained" through the PFS, depositions would be doubly helpful for counsel on both sides to assess the quality of these claims and whether they "should proceed to trial, settlement, or dismissal." *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2011 WL 3035087, at *3 (S.D. Ill. July 25, 2011). Courts and litigants alike have reason to be concerned about potential fraud in the discovery process and to explore whether a plaintiff has "initiate[d] a case in complete bad faith." *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 110 (2017). Ordering a limited deposition of this Plaintiff is equally important to identify any coordinated efforts and safeguard the integrity of this litigation.

## IV.    CONCLUSION

For the reasons stated above, Uber respectfully requests that the Court:

1.    Enter the Order attached as Exhibit A, requiring the 6 Plaintiffs to show cause why their claims should not be dismissed with prejudice for submitting non-bona-fide receipts;

2.    Enter the Order attached as Exhibit A, authorizing a limited and narrowly tailored deposition of Plaintiff with MDL ID 4243 to investigate the origin of her substantiated receipt submission and how it came into the possession of three individuals who submitted fraudulent receipts;

3.    Enter an Order attached as Exhibit A, authorizing limited and narrowly tailored depositions of Plaintiffs with MDL ID's 3698, 3879, 3700 and 4142 to investigate how the Plaintiffs became involved in the litigation, how the fraudulent receipts were generated and distributed, and who else was involved in or aware of the fraud at issue; and

4.    Consider whether dismissal alone is sufficient or whether additional relief is necessary for the Pulaski Law Firm and Reich and Binstock for repeatedly submitting fraudulent receipts.

DATED: January 7, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
Christopher D. Cox (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com
christopher.cox@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

SABRINA H. STRONG (SBN: 200292)
sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
jschneller@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

PATRICK L. OOT (*Pro Hac Vice*)
oot@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
1800 K Street NW, 10th Floor
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)

21

adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
mshortnacy@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (*Pro Hac Vice*) ccotton@shb.com
**SHOOK, HARDY & BACON, L.L.P.**
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Counsel for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED
NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE

## PROOF OF SERVICE

I hereby certify that on January 7, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: */s/ Laura Vartain Horn*
Laura Vartain Horn

MOTION FOR ENTRY OF AN ORDER TO SHOW CAUSE WHY PLAINTIFFS WHO HAVE SUBMITTED NON-BONA-FIDE RECEIPTS SHOULD NOT BE DISMISSED WITH PREJUDICE
Case No. 3:23-md-03084-CRB (LJC)