1  [Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION, | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS' SUPPLEMENTAL TRIAL BRIEF ON MEDIA-RELATED EVIDENCE** |
| This Document Relates to: | Judge: Hon. Charles R. Breyer |
| *Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708 | Courtroom: Courtroom 6 – 17th Floor |
| | Date Filed: January 8, 2026 |
| | Trial Date: January 13, 2026 |

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| JAYLYNN DEAN, | CASE NO. 25-cv-4276-PHX-CRB |
| Plaintiff, | Judge: Hon. Charles R. Breyer |
| v. UBER TECHNOLOGIES, INC., et al., | Courtroom: 501 |
| Defendants | |

1    LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
2    **KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
3    San Francisco, CA 94104
Telephone: (415) 439-1625
4

Kim Bueno (Pro Hac Vice admitted)
5    **KIRKLAND & ELLIS LLP**
kim.bueno@kirkland.com
6    401 W. 4th St.
Austin, TX 78701
7    Telephone: (512) 355-4390

8    Allison M. Brown (Pro Hac Vice admitted)
**KIRKLAND & ELLIS LLP**
9    alli.brown@kirkland.com
2005 Market Street, Suite 1000
10    Philadelphia, PA 19103
Telephone: (215) 268-5000
11

JESSICA DAVIDSON (Pro Hac Vice admitted)
12    **KIRKLAND & ELLIS LLP**
jessica.davidson@kirkland.com
13    601 Lexington Avenue
New York, NY 10022
14    Telephone: (212) 446-4723

15

SABRINA H. STRONG (SBN: 200292)
16    sstrong@omm.com
JONATHAN SCHNELLER (SBN: 291288)
17    jschneller@omm.com
**O'MELVENY & MYERS LLP**
18    400 South Hope Street, 19th Floor
Los Angeles, CA 90071
19    Telephone: (213) 430-6000
Facsimile: (213) 430-6407
20

PATRICK L. OOT, JR. (Pro Hac Vice admitted)
21    oot@shb.com
**SHOOK, HARDY & BACON, LLP**
22    1800 K Street NW, 10th Floor
Washington, DC 20006
23    Telephone: (202) 783-8400
24    Facsimile: (202) 783-4211

25    ALYCIA A. DEGEN (SBN: 211350)
adegen@shb.com
26    MICHAEL B. SHORTNACY (SBN: 277035)
27    mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
28    Los Angeles, CA 90067

Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Pro Hac Vice admitted)
ccotton@shb.com
255 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

Counsel for Defendants
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

Uber anticipates that during Plaintiff's opening statement, Plaintiff will refer to mid-level Uber communications employee Andrew Hasbun's highly inflammatory "chats" with a colleague who is a personal friend about a 2019 USA Today article, the "Crawford Story."  *See* Dkt. 4686-3.[1]  As explained below, those statements are precisely the kind of "remote," "inflammatory," and "marginal" media evidence that this Court has advised the parties it will exclude in its "piece by piece" evaluation. Tr. of Pretrial Conference at 16:9-15.  The article at issue has no relevance to Plaintiff's claims here and Mr. Hasbun's language and tone are likely to inflame the jury against Uber, undermining its ability to have a fair trial. This is precisely the sort of evidence that Rule 403 is intended to keep out of the courtroom, and presenting it to the jury in opening statements would immediately and irremediably prejudice Uber and taint this bellwether proceeding.

Mr. Hasbun is one of several employees involved in safety communications at Uber.  He and others on his team liaise with press and media about safety or customer-support issues.  In September 2019, a reporter from USA Today contacted Mr. Hasbun about a potential story concerning Crawford Global Technical Services, a third-party claims-administration company that Uber retained for administration of its insurance program.  Mr. Hasbun learned that the story was expected to cover three riders who claimed Crawford contacted them to settle legal claims after they reported sexual assaults to Uber.  As part of his role on Uber's communications team, Mr. Hasbun helped coordinate Uber's response to the potential story, including by providing USA Today with a statement on behalf of the company in early October.  PX-88 (UBER_JCCP_MDL_002036670).

Both Uber and Crawford disputed the accuracy of certain claims in the article, and Mr. Hasbun communicated those corrections to USA Today.  The disputes pertained only to Crawford's settlement-related conduct—not the occurrence of assaults or the safety of the Uber platform.  To give one example, the article reported that a Crawford agent appeared at the house of one alleged victim's father and offered her $10,000 to work with Uber against the alleged

---

[1] JCCP MIL Order at 52-53; PX-75 (UBER_JCCP_MDL_000208167) (Sept. 30, 2019 Chat); PX-88 (UBER_JCCP_MDL_002036670 ) (Oct. 4, 2019 Email); PX-740 (UBER_JCCP_MDL_002096546) (Nov. 18, 2019 Chat); *see* PX-94, Tricia L. Nadolny and Cara Kelly, *Uber shares personal rider information in sexual assault cases with a claims company without informing alleged victims*, USA TODAY (Oct. 9, 2019).

1  assailant; both Crawford and Uber have consistently denied that report and sought its retraction—
2  including through Hasbun. PX-88 (UBER JCCP _MDL_002036670) . For another example, Mr.
3  Hasbun corrected the reporter's initial impression that Crawford had initiated contact with an
4  alleged victim's grandmother, when in fact it was the grandmother who initiated contact with
5  Uber.

6  While helping coordinate the company's communications with USA Today, Mr. Hasbun
7  engaged in long exchanges with a colleague and personal friend via Uber's internal workplace
8  messaging platform. Those exchanges—some of which span dozens of pages—are personal
9  conversations rather than professional communications. At several points, Mr. Hasbun uses
10 colorful language to opine about the Crawford Story's public-relations impacts—e.g., "USA
11 Today Thinks we are sleazy"; "The email from USA Today is horrible and we are fucked." PX-
12 75 (UBER_JCCP MDL_000208167).

13 After the story was published on October 4, 2019, Mr. Hasbun perceived a "contentious,
14 heated, high-pressure environment" and remained "emotional and upset" about his experience
15 coordinating the response to USA Today. Apr. 10, 2025 Hasbun Dep. at 281:19-23. During
16 informal online chats with his close colleague, he referred to his Crawford-Story experience in
17 incendiary terms. For example, on November 23, 2019, when discussing his experience disputing
18 certain claims that two of the three survivors made to USA Today, Mr. Hasbun wrote that he
19 "sold his soul" when he "trashed rape Vcitims to usatiday" (sic) and "sliced their credibility," and
20 that "my soul . . . is in [then Vice President of Safety and Insurance's Gus Fuldner's] basement
21 along with the heads of various missing women." PX-740 (UBER_JCCP MDL_002096570
22 (sic)). At no point in these personal exchanges with a colleague did Mr. Hasbun express doubt
23 about the truthfulness of the corrections he had urged on USA Today. See Apr. 10, 2025 Hasbun
24 Dep. at 279:19-23 ("Q. And then you said, 'Out of 3, I trashed 2,' correct? A. What I'm referring
25 to here is correcting facts in their story. I used a poor choice of words.").

26 Plaintiff does not allege that she interacted with Crawford, does not allege that the story or
27 Uber's relationship with Crawford has any causal bearing on her case, and does not assert any
28 theory of liability based on post-incident settlement attempts by Uber with respect to her claims.

1    Mr. Hasbun's assessments of the Crawford Story's PR impact and the inflammatory terms
2    in which he expressed his discomfort about correcting claims made by sexual assault survivors
3    are therefore irrelevant, threaten severe undue prejudice to Uber, and would waste limited trial
4    time litigating the details and veracity of claims made by two sexual assault survivors in 2019 not
5    about Uber's safety measures but about the alleged and disputed post-incident conduct of a third-
6    party claims administrator.  Plaintiff's direct liability claims against Uber will ask the jury to
7    determine if Uber should have implemented different safety precautions in 2023 and, if so,
8    whether they would have prevented Plaintiff's alleged sexual assault.  Plaintiff's apparent agency
9    claim will require it to determine if Plaintiff reasonably relied on a representation by Uber that
10   Turay was Uber's agent and, if so, whether the alleged assault was within the scope of his
11   apparent authority.  Mr. Hasbun's use of incendiary language to describe his personal qualms
12   about questioning two assault survivors' claims and the PR fallout from the "Crawford Story" do
13   not pertain to any of these liability issues.

14   In opposing Uber's motion in limine to exclude media evidence, Plaintiff contended that
15   "Slack communications among safety and communications personnel" are relevant to showing
16   "Uber's state of mind, priorities, and course of conduct in responding to known dangers," because
17   they "demonstrate how the company responded when sexual assault allegations became public"
18   in general.  MIL Opp. at 6.  But Uber is fully entitled to correct false statements in media outlets
19   about its handling of legal claims, including statements concerning its third-party claims
20   administrator, and one mid-level employee's discomfort correcting the record on sensitive issues
21   sheds no light about the company at all—much less on its decision-making with respect to safety
22   features or its relationship with Mr. Turay.  Judge Schulman was therefore correct in concluding
23   that such evidence is "at best, minimally relevant" to whether Uber adequately protected against
24   the risk of sexual assault of its users.  Order on Parties' Motions in Limine and Motions to
25   Exclude Experts, *In re Uber Rideshare Cases*, No. CJC-21-005188, at 52 (Cal. S.F. Super. Aug.
26   29, 2025)[2]; *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003) ("conduct

---

[2] Plaintiff's reliance on *In re Bard* fails for similar reasons: There, in a case about allegedly defective heart implants called "Recovery Filters," the Court "permitted evidence and testimony concerning the Recovery Filter Crisis Communications Plan that Bard had prepared in 2004 to

must have a nexus to the specific harm suffered by the plaintiff" to support punitive damages).

The statements' obvious prejudicial potential, moreover, would dwarf any marginal relevance.  It is common sense that an employee's communications about "trash[ing] rape victims," having "sold [his] soul," and the "heads of various missing women" being in the basement of a senior Uber safety executive holds enormous potential to inflame the jury and prejudice its assessment of the actual issues—Uber's safety measures and its relationship with Turay.  *See United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015) ("Evidence is unfairly prejudicial if it . . . provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to" the merits); *see Aquino v. Cnty. of Monterey Sheriff's Dep't*, 2018 WL 3548867, at *4 (N.D. Cal. July 24, 2018) (redacting charged language "which may unduly inflame the passions of the jury" under Rule 403); *United States v. Williams*, 663 F. Supp. 3d 1085, 1135-37 (D. Ariz. 2023) (excluding "highly inflammatory . . . language and imagery," including use of profanity). Compounding the harm, the evidence also poses significant risk of confusing the issues as the jury tries to determine what, if anything, one employee's outrageous comments sent in personal messages to another colleague about a 2019 news story on claims adjustment has to do with the safety of the Uber platform in 2023 or Ms. Dean's claims.

Further, allowing Plaintiff to introduce Mr. Hasbun's messages "threatens to cause an undue consumption of time on collateral issues having to do with the accuracy of [the Crawford Story], Uber's responses to [it], etc."  JCCP MIL Order at 52-53.  Uber will be forced to contextualize Mr. Hasbun's provocative language by presenting evidence explaining the claims he disputed to USA Today—e.g., one survivor's claim that Uber (through Crawford) initiated contact with her grandmother rather than her grandmother initiating contact with Uber—and demonstrating its basis for believing that those claims were, in fact, false.  The jury, for its part, would have to adjudicate the merits of a factual dispute on third-party claims adjusters' conduct

---

help manage damaging media coverage about a Recovery migration death." *In re Bard IVC Filters Prods. Liab. Litig.*, 2019 WL 5872148, at *32 (D. Ariz. Oct. 17, 2019).  But this case is not about Crawford, so Uber's internal communications about "managing" Crawford-related "media coverage" are not relevant—unlike Bard's media strategy concerning injuries from the very same Recovery Filters Plaintiffs alleged harmed them.

in 2019 in order to decide how much, if any, weight to assign to Mr. Hasbun's statements in a case about an assault that occurred in 2023. That is precisely the kind of severely prejudicial and confusing sideshow that Rule 403 is designed to protect against. It was the same sideshow that Judge Schulman sought to avoid and correctly concluded should be excluded from evidence. Uber therefore respectfully requests that the Court bar Plaintiff from referencing Hasbun's communications about the Crawford Story in her opening statement.

Dated: January 8, 2026                                     **KIRKLAND & ELLIS LLP**

By: /s/ *Laura Vartain Horn*

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN HORN
KIM BUENO
ALLISON M. BROWN
JESSICA DAVIDSON

**O'MELVENY & MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

**SHOOK, HARDY & BACON, LLP**
PATRICK L. OOT, JR.
ALYCIA A. DEGEN
MICHAEL B. SHORTNACY
CHRISTOPHER V. COTTON

*Counsel for Defendants*