1 [Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION,<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708 | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS' TRIAL MOTION TO EXCLUDE COMPANY-CULTURE EVIDENCE**<br><br>Judge:      Hon. Charles R. Breyer<br>Courtroom:  Courtroom 6 – 17th Floor<br><br>Date Filed: January 11, 2026<br><br>Trial Date: January 13, 2026 |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

**PHOENIX DIVISION**

| | |
|---|---|
| JAYLYNN DEAN,<br><br>  Plaintiff,<br><br>v. UBER TECHNOLOGIES, INC., et al.,<br><br>  Defendants | CASE NO. 25-cv-4276-PHX-CRB<br><br>Judge:      Hon. Charles R. Breyer<br>Courtroom:  501 |

Through deposition designations of Uber's co-founder and former CEO Travis Kalanick, Plaintiff seeks to introduce evidence concerning controversial incidents during his tenure, from 2010 to June 2017. The Court should not permit Plaintiff to present this evidence, including during Opening Statement, because it is irrelevant and unduly prejudicial.

On January 9, 2025, Plaintiff served initial designations of deposition testimony from Travis Kalanick, which included questioning and exhibits about irrelevant and unduly prejudicial news coverage of Uber's alleged company culture while he served as CEO before the Board of Directors replaced him in 2017 nearly nine years ago, including: (1) an incident at a karaoke bar in Seoul in mid-2014; (2) an alleged remark about "Boob-er"; and (3) a 2014 alleged sexual-assault of a rider by a driver in New Dehli, India. *See* Uber MILs No. 5, 12. Uber anticipates that Plaintiff may intend to refer to these incidents and related coverage in her opening statement. But this evidence is irrelevant to the issues in this case, such as "whether Uber . . . adhered to reasonable standards… reasonably related to reducing risk." Dkt. 4934 (Jan. 6, 2025 PTC Tr.) at 23 ("I'm saying that I don't want to hear evidence of the culture of Uber."). Permitting Plaintiff to introduce hearsay statements about these inflammatory incidents from Mr. Kalanick's tenure, which concluded in 2017, to the jury during opening risks irreversibly and unfairly prejudicing Uber's defense from the outset.

1. <u>The Korean Karaoke Incident</u>. Plaintiff seeks to introduce a news story from March 25, 2017 from "The Information," as well as deposition questioning of Mr. Kalanick about that article. The article reports that Mr. Kalanick, his then-girlfriend, "and a team of five Uber employees visited an escort-karaoke bar in Seoul in mid-2014," ultimately resulting in an "HR Complaint." *See* Ex. 1: P-01858.[1] According to the article, the "male Uber . . . managers picked women out of the group, calling out their numbers, and sat with them." *Id.* In his deposition, Mr. Kalanick testified he went to a karaoke bar and did not see any escorts. *See* Ex. 2 (Kalanick Dep. Tr. 184:22-23). Plaintiff's counsel asked Mr. Kalanick: "So in 2014 you and other Uber executives attended this escort bar where some of you chose women by calling out the number on

---

[1] Amir Efrati, *Uber Group's Visit to Seoul Escort Bar Sparked HR Complaint*, THEINFORMATION.COM (March 25, 2017).

1  their tags; right?" Mr. Kalanick answered: "Again, I – I didn't see any escorts there at all. We
2  went to a karaoke bar." *Id.* Mr. Kalanick was asked: "So you deny the account of this happening."
3  He responded: "We went to a karaoke bar, for sure." Mr. Kalanick confirmed that he did not see
4  any escorts. *Id.*

5      The Court should exclude the article for several reasons. *First*, the article is "quintessential
6  hearsay." *See Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991); *In re DePuy*
7  *Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 786 (5th Cir. 2018)
8  (admission of hearsay email to show "that racism infected [defendant's] workplace culture . . .
9  fortifies [court's] conviction that a new trial is required").

10      *Second*, the article's contentions are irrelevant to Plaintiff's claims: whether Mr. Kalanick
11  went to a karaoke bar with or without escorts in 2014 does not tend to bear on the truth of any fact
12  in dispute in this case. Fed. R. Evid. 401. The Court previously recognized that company culture
13  was likely irrelevant when addressing Uber's motion *in limine* 10: "Number 10, alleged company
14  culture. Well, that's one of those things where I think Uber has the better argument. . . I'm not
15  sure that it really bears on the question of whether Uber used reasonable – adhered to reasonable
16  standards or standards that were reasonably related to reducing risk and offering a safe ride." Dkt.
17  4934 at 23. Nor could the jury consider Uber's allegedly "unsavory" culture in 2014 under Mr.
18  Kalanick's leadership in determining whether punitive damages are warranted, given the lack of
19  any nexus between Uber's 2014 internal workplace culture and Plaintiff's alleged harm in 2023
20  from "dissimilar acts." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) ("A
21  defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory
22  individual or business."). Plaintiff plainly has no relevant purpose to admit the evidence and
23  appears to be trying to suggest that Mr. Kalanick promoted a culture that was immoral or not
24  ethical.

25      Evidence of Uber's alleged pre-2017 workplace culture during Mr. Kalanick's tenure is
26  particularly irrelevant for an additional reason: In mid-2017, current CEO Dara Khosrowshahi
27  replaced Mr. Kalanick, ushering in a period of widespread culture change at the company. That
28  included a concerted effort to reinforce commitments to transparency, accountability, and

1  responsibility, reinforcing a "cultural value" to "Do the right thing, period," reflecting a top-
2  down, companywide commitment "to take responsibility for your actions and in your best
3  judgment do the right thing in terms of . . . your everyday decision-making." July 1, 2025
4  Khosrowshahi Dep. at 194:24-195:23. In other words, even if the 2014 karaoke incident
5  constituted evidence of a "male-dominated culture" from 2010 to 2017, which itself is of
6  marginal—if any—relevance, the pervasive cultural reforms instituted under Mr. Khosrowshahi's
7  leadership since then render irrelevant Uber's prior culture during its nascent years.

8      *Third*, any marginal probative value of the Kalanick-era karaoke incident would be vastly
9  outweighed by the risk of undue prejudice to Uber's defense. Fed. R. Evid. 403. Media reporting
10 that unnamed Uber "managers" hired escorts at a karaoke bar in Seoul, nearly a decade before the
11 events underlying Plaintiff's allegations, would serve only to inflame jurors' passions against the
12 company while diverting their attention from the issues relevant to liability. *See Chaudhry v.*
13 *Smith*, 2020 WL 869115, at *17 (E.D. Cal. Feb. 21, 2020) (excluding media reports containing
14 "highly sensational and inflammatory statements"). Simply put, evidence connecting Uber's
15 former CEO to managers engaging with escorts has "an undue tendency to prompt a jury decision
16 based on emotion," which "outweighs any marginal relevancy" to Plaintiff's tort claims. *In re*
17 *Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 1876896, at *3 (D. Ariz. Apr. 18, 2018)
18 (excluding evidence under Rule 403); *United States v. Cooper*, 286 F. Supp. 2d 1283, 1291 (D.
19 Kan. 2003) (excluding evidence of "spending money on gambling and strip clubs" that risks
20 "inflaming moral prejudice against the defendants"); *see also United States v. Haischer*, 780 F.3d
21 1277, 1282 (9th Cir. 2015) ("Evidence is unfairly prejudicial if it . . . provokes an emotional
22 response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant
23 wholly apart from its judgment as to" the merits).

24      2.     "Boob-er" reference. Plaintiff also intends to introduce a February 27, 2014 GQ
25 Article titled "Uber Cab Confessions" and deposition testimony from Mr. Kalanick about that
26 article. The article claims that Mr. Kalanick referred to Uber as "Boob-er" because Uber
27 "skyrocket[ed] [his] desirability" with women. Ex. 3 at p. 4. Mr. Kalanick denied that in his
28 deposition testimony. Plaintiff should not be permitted to refer to the article including the alleged

"Boob-er" comment in opening statements.

The article is itself hearsay, and its unreliability is only underscored by the Mr. Kalanick's vehement denial of the comment at issue: "I don't believe I said that. . . . I deny that." Ex. 2 at 175:23-176:10; Ex. 4. In addition, the Boob-er comment—like the karaoke incident—is irrelevant to any factual question bearing on Uber's liability. The only conceivable purpose of introducing this evidence is to attack Uber's allegedly "male-dominated culture" under Mr. Kalanick, which is irrelevant for the reasons above. Even if Uber's former CEO made the remark about "Boob-er" to a reporter in 2014, which he says he did not, that has no bearing on whether Uber took reasonable safety precautions or held Turay out as an "agent." The alleged "Boob-er" comment would thus serve only to divert the jury's attention from the material issues at trial by provoking an emotional response against Uber based on its former CEO's alleged remark. Rule 403 requires exclusion of such evidence to prevent undue prejudice. *See Aquino v. Cnty. of Monterey Sheriff's Dep't*, 2018 WL 3548867, at *4 (N.D. Cal. July 24, 2018) (redacting charged language "which may unduly inflame the passions of the jury" under Rule 403); *United States v. Williams*, 663 F. Supp. 3d 1085, 1135-37 (D. Ariz. 2023) (excluding "highly inflammatory . . . language and imagery," including use of profanity); *Chaudry*, 2020 WL 869115, at *17 (excluding media report with "highly sensational and inflammatory statements").[2]

3. <u>India Incident.</u> Plaintiff intends to introduce testimony from Mr. Kalanick's deposition concerning media reporting on 2014 allegations of rape by a driver against a rider in New Dehli, India. Ex. 5. At his deposition, Mr. Kalanick was asked questions about whether an Uber employee "somehow [stole] this victim's medical records." *Id.* Mr. Kalanick testified that he did not remember the details and agreed that the employee should not have had possession of the medical records. *Id.*

---

[2] To the extent that Plaintiff intends to argue that the karaoke incident or Boob-er remark constitute evidence of the entire company's "character" (i.e., its allegedly male-dominated culture), the Court should preclude Plaintiff from arguing during opening statement that Uber acted tortiously in conformity with that character by failing to prevent Turay's alleged assault. *See* Fed. R. Evid. 404(b)(1). Allowing such argument risks "taint[ing] the [trial] result by inviting the jury to infer guilt based on no more than prior bad acts, in direct contravention of Rule 404(b)(1), and would "alone provides grounds for a new trial." *In re DePuy Orthopaedics,* 888 F.3d at 785.

None of that testimony is relevant to this case. *See* Uber MIL No. 12. But even if the Court were to ultimately conclude that "how [Uber] handled claims abroad, such as in India" bears on "what [Uber] did in the United States," Jan. 6, 2026 PTC Tr. at 24:10-14 ("It may, and it may not."), Plaintiff's deposition designations reveal that they intend to focus on irrelevant and unduly prejudicial testimony about the incident. For example, Plaintiff has designated questioning about a Bloomberg article on the India incident in which Plaintiff's counsel insinuates a former Uber employee, Eric Alexander, "somehow st[ole] this victim's medical records." July 3, 2025 Kalanick Depo. at 306:12-309:8 ("Q: It's despicable, wouldn't you say?").

The Court should not permit Plaintiff to introduce this evidence during opening statements. *First*, it is completely irrelevant to direct or punitive-damages liability, despite the fact that the India incident involved sexual-assault allegations. Plaintiff has never alleged that Uber improperly obtained her medical records. *See State Farm*, 538 U.S. at 423 (prohibiting punitive damages based on "dissimilar acts"). *Second*, any minimal probative value is substantially outweighed by the risk of unfair prejudice. By insinuating a former employee stole medical records from a victim, Plaintiff intends to prejudicially inflame the jury against Uber by painting it as an "unsavory" company. *Id.*; *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 1876896, at *3 (evidence that patients died of unrelated complications from same device underlying plaintiff's claims "would have an undue tendency to prompt a jury decision based on emotion"). And to combat that undue emotional reaction, Uber would be forced to waste time litigating the collateral questions, like how it handled the 2014 assault, how Mr. Alexander obtained the medical records, and how the company "acted as fiercely as [it] could to get them from him, and to make sure that he no longer was carrying them." July 3, 2025 Kalanick Depo. 310:20-25. *Finally*, during opening statements, Plaintiff cannot introduce Bloomberg's reporting on Mr. Alexander's actions in India "to infer guilt based on no more than prior bad acts"— especially given that the article's allegations are hearsay. Fed. R. Evid. 404(b)(1); *In re DePuy Orthopaedics*, 888 F.3d at 786 ("coupling [Plaintiff's] impermissible references to [prior bad acts] with hearsay allegations of race discrimination" required new trial).

The Court should exclude this evidence from Mr. Kalanick's deposition, and should not

permit Plaintiff to refer to it during opening statement.

Dated: January 11, 2026                                  **KIRKLAND & ELLIS LLP**


                                                         By: */s/ Laura Vartain Horn*

                                                         **KIRKLAND & ELLIS LLP**
                                                         LAURA VARTAIN HORN
                                                         KIM BUENO
                                                         ALLISON M. BROWN
                                                         JESSICA DAVIDSON

                                                         **O'MELVENY & MYERS LLP**
                                                         SABRINA H. STRONG
                                                         JONATHAN SCHNELLER

                                                         *Counsel for Defendants*