# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL WAVE 1 BELLWETHER ACTIONS | Case No.: 3:23-MD-03084 CRB<br><br>**JOINT DISCOVERY LETTER BRIEF REGARDING STODDEN AND ZGOBA REBUTTAL REPORTS**<br><br>Judge:    Hon. Lisa J. Cisneros<br>Courtroom:  G – 15th Floor |

Dear Judge Cisneros:

    Pursuant to Pretrial Order No. 8 (ECF No. 323), the parties respectfully submit this joint letter regarding Plaintiffs' motion to strike in part the rebuttal reports submitted by Dr. Kristen Zgoba and Dr. Victoria Stodden.

Dated: January 12, 2026                      Respectfully Submitted,

By: */s/ Andrew R. Kaufman*                By: */s/ Laura Vartain*

ROOPAL P. LUHANA *(Pro Hac Vice)*      **KIRKLAND & ELLIS LLP**
**CHAFFIN LUHANA LLP**                    ALLISON M. BROWN
600 Third Avenue, Fl. 12                   JESSICA DAVIDSON
New York, NY 10016                      LAURA VARTAIN
Telephone: (888) 480-1123              CHRISTOPHER COX
Email: luhana@chaffinluhana.com        KIM BUENO

SARAH R. LONDON (SBN 267083)      **SHOOK, HARDY & BACON L.L.P**.
**GIRARD SHARP LLP**                     MICHAEL B. SHORTNACY
601 California St., Suite 1400             PATRICK L. OOT, JR.
San Francisco, CA 94108                CHRISTOPHER V. COTTON
Telephone: (415) 981-4800              ALYCIA A. DEGEN
Email: slondon@girardsharp.com

                                              **O'MELVENY AND MYERS LLP**
RACHEL B. ABRAMS (SBN 209316)     SABRINA H. STRONG
**PEIFFER WOLF CARR KANE CONWAY**   JONATHAN SCHNELLER
**& WISE, LLP**

555 Montgomery Street, Suite 820  
San Francisco, CA 94111  
Telephone: (415) 426-5641  
Email: rabrams@peifferwolf.com  

*Co-Lead Counsel for Plaintiffs*

*Attorneys for Defendants*  
UBER TECHNOLOGIES, INC.,  
RASIER, LLC, and RASIER-CA, LLC

**Plaintiffs' Position**:

After the Court denied Uber's motion to strike the supplemental reports of Dr. Chandler and Ms. Keller based on Uber's Flack data, Uber served two rebuttal reports, one by Dr. Stodden (**Ex. A**) and one by Dr. Zgoba (**Ex. B**). Dr. Keller and Ms. Chandler's supplemental reports expand on their prior reports by showing how Uber's internal data supports the conclusions in the prior reports, which relied on Uber's internal documents and interrogatory responses in lieu of the data. Proper rebuttal would be limited to that data and the conclusions drawn from it that were *not* in the original reports—but Uber's purported rebuttal opinions reach well beyond those limits. Uber has taken advantage of its own discovery violations to introduce inappropriate and untimely expert opinion. Even if the belated disclosures were substantially justified or harmless (they are neither), exclusion would be justified as a sanction for Uber's willful manipulation of the case schedule.

Most significantly, after failing to serve a single expert report) on S-RAD, Uber has now tried to belatedly create an expert case on the issue, even though the supplemental Chandler and Keller reports do not add any new S-RAD opinions (since the Flack data have nothing to do with S-RAD). The issue of S-RAD was covered extensively in fact depositions. If Uber wanted to offer expert opinions on S-RAD, the time to do so was in September, when opening expert reports were due. At a minimum, Uber should have served these reports by the October rebuttal deadline. To serve these opinions now, on the eve of trial, is prejudicial to Plaintiff. She has lost her opportunity to file related *Daubert* motions; and, if the new opinions are permitted, will be forced to prepare for and depose these experts in the middle of trial. (Uber's answer that Plaintiff should have deposed the experts in the peak of pre-trial preparation is no answer at all.)

**Dr. Stodden and Dr. Zgoba offer S-RAD opinions that should have been provided much earlier, if at all.** Dr. Zgoba's new report discusses S-RAD and compares it to actuarial risk assessment tools, concluding that S-RAD cannot predict sexual assaults. *See* Ex. B at 6-11. Dr. Stodden opines on S-RAD too. *See*, *e.g.*, Ex. A at 32-346 (tables and "Figure 4"). Dr. Stodden claims that "Ms. Keller and Dr. Chandler did not offer opinions about the S-RAD algorithm in their Opening Reports. For this reason, I did not previously address the S-RAD algorithm." *Id.* at 26-27. But both Dr. Chandler and Ms. Keller did offer S-RAD opinions in their Opening reports, making these rebuttals late. For example, in her opening report, Ms. Keller offered an entire opinion regarding S-RAD. Keller Rpt. at 41-54. Similarly, Dr. Chandler's opening report discusses how Uber built risk factors into S-RAD. Chandler Rpt. at ¶¶ 202-203.

Uber argues that Keller and Chandler's supplemental reports include new S-RAD opinions, but that is false. Uber conflates Plaintiff's experts' opinions regarding "relative risk" with their opinions on S-RAD. They are not the same. Analysis of S-RAD concerns how the program works and doesn't work. Relative risk is what Uber's documents show about how much higher the risk is when certain factors are present. *Compare* Keller Rpt. at 35-41 (risk factors) with *id.* at 41-54 (S-RAD). The supplemental reports included zero new S-RAD opinions. Ms. Keller's supplemental added a single new citation on S-RAD, noting a deposition defined a previously-used term. And Dr. Chandler's new report uses previously unavailable risk-factor data to construct his own risk-assessment model; he mentions S-RAD only by reference in a single paragraph. Chandler Supp. Rpt. at ¶ 12.

1

**Dr. Zgoba resurrects her "impossible to eliminate all sexual assault opinion" that the Court already struck**. The Court stuck Dr. Zgoba's opinion "that is impossible to eliminate all risk of sexual assault" finding the opinion to be improper rebuttal, and explaining that "[i]f Uber wished to offer an expert opinion to that effect, it was required to do so by the deadline to disclose opening expert reports." ECF 4701 at 9. Now Dr. Zgoba tries again. *See* Ex. B at 5 ("[D]ecades of empirical research demonstrate that neither training nor technology, independently or in combination, can eliminate all instances of sexual violence."); *see also id.* at 6, 11, 13 (similar). Neither Dr. Chandler nor Ms. Keller offer the opinion that sexual assault elimination is possible or even that Uber should have obtained reduction in rates.

**Dr. Zgoba's discussion of "safety features" is improper rebuttal.** Dr. Zgoba engages in a lengthy discussion of Uber's "safety features," opining that the existence of these measures is evidence of Uber's "investment in safety governance," especially as compared to other transportation methods." Ex. B at 9. However, neither Ms. Keller nor Dr. Chandler offer opinions on the sufficiency of Uber's safety governance, risk-reduction strategy, or purported safety features. And neither suggests that Uber should have instituted any particular features. Indeed, Ms. Keller does not discuss Uber's safety features at all in her reports, aside from noting in her Opening Report that Uber piloted "nudges" to prompt drivers and riders to consider turning on safety features, but that Uber had not produced data on nudges. Keller Rpt. at ¶ 71. Likewise, Dr. Chandler's opinion on Uber's safety features is limited to his assessment that "despite continuing to add new features, considering my analysis of both Uber's internal documents and utilizing the Flack raw data, I can say with a reasonable degree of scientific certainty that the platform is no safer than it was previously." Chandler Supp. Rpt. at 43. He does not offer opinions on Uber's risk-reduction strategy or the efficacy (or lack thereof) of purported safety features. Ex. B at 9.

**Dr. Zgoba's new opinions about sexual assault rates and Safety Data are untimely.** Dr. Zgoba's new rebuttal report criticizes Ms. Keller and Dr. Chandler's presentation of Uber's sexual assault rates for failing "to include [a] real-world baseline," *id.* at 4, and failing "to identif[y] a transportation system, institutional model, or prevention framework that has achieved lower sexual violence rates than Uber," *id.* at 11. These opinions are untimely. Both Ms. Keller and Dr. Chandler offered opinions about sexual assault and sexual misconduct rates in their opening reports. The untimeliness of Dr. Zgoba's rebuttal is underscored by the fact that *Dr. Stodden* included these same opinions in her 10/24/25 rebuttal report. For example, Dr. Stodden criticized Ms. Keller for not considering "relevant benchmarks such as public transportation systems, ECF 4342-6 (Stodden Reb. Rpt.). at ¶¶ 11, 33, and for "fail[ing] to account for…concurrent external trends that could provide benchmarks for comparisons." *Id*. at ¶¶ 8a, 8c.

Similarly, Dr. Zgoba's new report opines regarding the propriety of about Uber's decision to include in its Safety Reports only five of the twenty-one categories of sexual assault and sexual misconduct in Uber's taxonomy. But both Ms. Keller and Dr. Chandler opined on that topic in their opening reports; their supplemental reports add nothing new. Uber's claim that Keller's opinion is new is belied by simple comparison of her reports. *Compare* Keller Rpt. at ¶ 38 & Fig. 6 *with* Keller Supp. Rpt. at ¶ 42 & Fig. 6.

**Dr. Stodden's sexual assault rate opinions are untimely**. Dr. Stodden, for the first time, says that "without appropriate benchmarks, the reader is left to assume an appropriate risk rate

2

implicitly, with the unsupported implication that it might be zero." Ex. A at ¶ 17. This is improper for the same reasons as are Dr. Zgoba's "elimination" opinions. Dr. Stodden also adds new criticism of Ms. Keller's choice to calculate incident rates "per 100 million trips." *Id.* at ¶¶ 24-25 & App'x D. However, this is the same metric Ms. Keller used throughout her opening Report. Keller Rept. at Fig. 3, 4, 5. Dr. Stodden did not raise this criticism in her October rebuttal report and thus it is untimely—as are the accompanying figures in Appendix D (all of which rely on data that was available before the first Stodden rebuttal report).[1] Finally, to counter Ms. Keller and Dr. Chandler's opinions that Uber's SA/SM rate has increased since 2021, Dr. Stodden offers new opinions that the rates of sexual assault have increased in the United States in those same years. Ex. A at ¶¶ 29-30 and Fig. 1. But Ms. Keller's and Dr. Chandler offered those opinions in their prior reports. Keller Rpt. at ¶¶ 31, 33, 35 80; Chandler Reb. Rpt. at ¶¶ 15 n. 8, 58, 65.

**Uber's Position:**

Dr. Chandler's and Ms. Keller's new reports contain 84 pages of sweeping new opinions. Dr. Chandler's 43-page report is entirely new, and Ms. Keller's 96-page report is a heavily modified version of her original 55-page report. Consistent with the parties' agreement, Uber produced rebuttal reports on January 2 (Exs. A and B).[2] Those reports were proper in all respects. Plaintiff argues that some of these opinions could have been offered earlier because Chandler and Keller addressed S-RAD in their original reports. But the new Stodden and Zgoba reports directly "'contradict, impeach or defuse the impact of'" those experts' new opinions on S-RAD, several of which are based on the recently produced Flack data. Moreover, Plaintiff declined the opportunity to re-depose these experts before trial, belying her claims of prejudice.

*S-RAD Opinions*. Plaintiff contends that Drs. Stodden's and Zgoba's S-RAD opinions are improper rebuttal because Plaintiff's experts address S-RAD in their original reports. This argument ignores that the reports include substantial new material related to S-RAD. Plaintiff's position that "the Flack data have nothing to do with S-RAD" is disingenuous. Dr. Chandler initially said that he did *not* have "data necessary to recreate the insights from" S-RAD. (Chandler Opening Rpt. ¶ 204.) He now claims that the "Flack data allowed [him] to conduct a more comprehensive risk assessment for the relative risk levels," enabling him to "recreate . . . the insights from the S-RAD model" and "illustrate what Uber could have disclosed." (Chandler Supp. Rpt. 1 ¶ 8.) His new report is almost entirely about relative-risk data, which he uses to opine on what Uber, through S-RAD, knew or should have allegedly known. (*See, e.g.*, *id.* ¶¶ 82-89 (opining that Uber "had access to information that would allow the company to predict high risk patterns for Ms. Dean's ride"); *see generally id.* ¶¶ 7-108.) Ms. Keller, likewise, has dramatically expanded her report to offer new relative-risk opinions concerning rides based on the day of the week, the time of day, and whether the driver has previously been reported for misconduct. (*See* Keller Supp. Rpt. 2 ¶¶ 65-70, 94-95.)

---

[1] While Keller's Figures 18-20 rely on new data, Stodden's Figures 12-14 are untimely because they are offered to criticize Keller's "100 million trips" metric, not to show Stodden's analysis of the data (which was available to her at the time of her first rebuttal report).

[2] Plaintiff *agreed* to these rebuttal reports to prevent the exclusion of her new reports, making her arguments about months-old discovery disputes a red herring.

Drs. Stodden and Zgoba properly criticize these opinions. Dr. Stodden explains that while the experts previously mentioned S-RAD, the new reports address "the S-RAD algorithm in the context of the alleged risk or precursor factors that [S-RAD] considers." (Ex. A ¶¶ 44-46.) She also explains that the new reports misrepresent how S-RAD analyzes risk factors and rebuts the new reports by explaining how S-RAD *actually* works. (*Id.* ¶¶ 44-59.) Dr. Zgoba similarly critiques the reports because they "fail to consider how Uber" uses S-RAD information and "misunderstand the purpose and limits of such data inputs." (Ex. B at 6-7.) She also explains how S-RAD differs from actuarial risk assessments, and that S-RAD cannot predict future safety incidents. (*Id.* at 10.) This is classic expert rebuttal. Plaintiff produced about 84 pages of *new* opinions largely focused on what S-RAD should have known, opening the door to these responsive opinions.

**Lack Of Appropriate Benchmarks**. Plaintiff argues that Drs. Zgoba and Stodden's opinions regarding risk benchmarks are untimely. Not so. As explained above, Dr. Chandler's and Ms. Keller's new reports include new, extensive discussions of various risk factors. And Dr. Chandler purports to calculate the relative risk of SA/SM incidents based on those factors, faulting Uber for not disclosing that supposed risk. (Chandler Supp. Rpt. ¶¶ 70-108.) Dr. Zgoba explains that these analyses fail to utilize a "comparative risk framework." (Ex. B at 5.) Because risk is "inherently comparative," she explains, an analytically sound risk calculation "requires situating it alongside the realistic alternatives," like walking, taking public transportation, or driving while intoxicated. (*Id.* at 4.) Dr. Stodden likewise criticizes Plaintiff's experts for "not provid[ing] any benchmarks with which to contextualize and assess their alleged risk factors." (Ex. A ¶ 17.) Once again, Drs. Zgoba and Stodden's opinions are classic expert rebuttal.

**Dr. Zgoba's Opinions on Whether Sexual Assault Can Be Eradicated.** Plaintiff also faults Dr. Zgoba for statements in her report about the limitations of detection and prevention measures, claiming she attempts to "resurrect" a previously stricken opinion. But the Court struck portions of a different Zgoba report, rebutting a different expert, that "characteriz[ed] complete elimination of sexual assault as impossible" finding that it was not responsive to that expert's opinions. (Order (Doc. 4701) at 7-9.) That reasoning does not apply here. Dr. Chandler's and Ms. Keller's discussions of risk factors, elevated risk, and relative risk fail to identify any baseline, suggesting that the only acceptable risk level is no risk. The report excerpts cited by Plaintiff respond to that suggestion. (*See* Ex. B at 3 ("This report examines certain aspects of Uber's sexual-violence prevention systems within the broader scientific understanding that risk must be measured against a real-world baseline.").)

**Safety Data**. Dr. Zgoba's opinions on Uber's SA/SM incident classification in its Safety Reports are also timely. Dr. Keller's new report seeks to discredit an Uber blog post explaining that most SA/SM incidents not published in the Safety Reports have not been audited and have not undergone the same vetting as those that were disclosed. (Keller Supp. Rpt. ¶ 71.) Dr. Zgoba properly rebuts Dr. Keller's new suggestion that Uber is improperly concealing information by explaining that Uber's practices are consistent with federal crime-classification and reporting systems.

**Dr. Zgoba's Safety Features Opinion**. Plaintiff objects to Dr. Zgoba's discussion of Uber safety measures as improper rebuttal. But Dr. Chandler newly opines that Uber's "[e]xtensive

4

[c]atalogue" of safety measures did not change "the level of risk" and made "the platform no safer than it was previously." (Chandler Supp. Rpt. ¶¶ 131-146.) Dr. Zgoba rebuts this new opinion by discussing Uber's prevention measures and concluding that those measures "reflect a layered risk-reduction strategy" that "aligns with accepted prevention frameworks that emphasize risk identification, safeguards, and exposure mitigation." (Ex. B at 9.) Having disclosed a new opinion on the efficacy of Uber's safety measures, Plaintiff cannot fairly object to Dr. Zgoba's rebuttal on that topic.

***Ms. Keller's Misleading Incident Rates***. Ms. Keller's new report includes a brand new opinion (no. 5) and three new figures (nos. 18-20) that report incident rates "per 100 million trips." (Keller Supp. Rpt. ¶¶ 80-85.) Dr. Stodden explains that portrayal of these rates per 100 million trips—instead of per trip—is misleading: it makes the rates "appear larger than they actually are." (Ex. A ¶¶ 24-25.) She also produced non-misleading versions of Ms. Keller's new figures. (*Id.* App'x D, figs. 12-14.) That is classic rebuttal. While some of Dr. Stodden's criticisms apply equally to certain rates and figures in the original Keller report, they are directed to Ms. Keller's new opinions and figures. In any event, to the extent Dr. Stodden's versions of Ms. Keller's figures 3-5 should have been disclosed initially, this concept is so elementary that any delay is harmless.

***Flawed Claims About Allegedly Increasing SA/SM Incidents***. Dr. Stodden opines on the national rate of sexual assault and reporting (*see* Ex. A ¶ 29-30 & fig. 1) to rebut new opinions about SA/SM reporting rates that Dr. Chandler made in his new report, and that Ms. Keller made in three new paragraphs in her new report. (*See id.* ¶¶ 26-27 & nn.40-41 (citing Chander Supp. Rpt. ¶¶ 118-121, Keller Supp. Rpt. ¶¶ 80, 82, 84).) Plaintiff does not claim that Dr. Chandler covered these opinions in his opening report (she cites only his rebuttal), conceding that Dr. Stodden properly rebuts Dr. Chandler's new report. While Ms. Keller did initially render some similar opinions (*see* Keller Rpt. ¶¶ 31, 33, 35), her new report adds opinions based on the recently produced Flack data (*see* Keller Supp. Rpt. ¶¶ 80, 82, 84), rendering Dr. Stodden's responsive opinions proper rebuttal to Ms. Keller as well.

***Plaintiff Declined The Opportunity To Depose Drs. Stodden And Zgoba Before Trial***. Plaintiff complains she "will be forced" to depose Drs. Stodden and Zgoba "in the middle of trial." But Uber offered them for deposition before trial. (Ex. 1.) Plaintiff agreed to depose Dr. Stodden on January 9 but declined to depose Dr. Zgoba before trial. (Ex. 2.) Then, on January 5, Plaintiff declared that the reports were improper, demanded that Uber "withdraw them," and stated that she would not "tak[e] either deposition until after this is resolved" because the new opinions should "be withdrawn or stricken." (Ex. 3.) After receiving Uber's first draft of this letter, Plaintiff noticed Dr. Stodden's deposition for January 19, during trial. Plaintiff cannot fairly claim prejudice when she could have deposed these experts before trial and instead chose to seek relief from the Court.

In short, if anyone is prejudiced, it is Uber. After refusing to depose these experts before trial, Plaintiff now challenges only portions of their reports, thereby conceding, at the least, that they are mostly proper. If Uber is now forced to present these experts for depositions during trial, it will be unfairly diverted from trial efforts for depositions that should have taken place last week. Uber requests a timely ruling, given the immediate implications for trial.

## **ATTESTATION**

      Pursuant to Civil Local Rule 5-1(h)(3), I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's consent and have authorized the filing.

Dated: January 12, 2026

By: /s/ <i>Andrew R. Kaufman</i>