[Submitting counsel below]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*,<br>N.D. Cal. Case No. 3:23-cv-06708-CRB<br>D. Ariz. Case No. 2:25-cv-04276-CRB | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC AND RASIER-CA, LLC'S STATEMENT IN RESPONSE TO PLAINTIFF'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED [PLAINTIFF'S OPPOSITION TO UBER'S MOTIONS IN LIMINE]**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor |

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

### PHOENIX DIVISION

| | |
|---|---|
| JAYLYNN DEAN,<br><br>  Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>  Defendants. | CASE NO. 25-cv-4276-PHX-CRB<br><br>Judge: Hon. Charles R. Breyer<br><br>Courtroom: 501 |

Pursuant to Northern District of California Civil Local Rule 79-5(f)(3) and the Stipulation and Order entered on January 5, 2026, ECF 4882, Defendants Uber Technologies Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber") respectfully submit this Statement in Response to Plaintiff's Administrative Motion to Consider Whether Another Party's Material Should Be Sealed [Plaintiff's Opposition to Uber's Motions in Limine]. Plaintiff takes no position on Uber's proposed redactions. *See* Declaration of Laura Vartain Horn in Support of the Administrative Motion to Seal, ¶ 2. For the reasons set forth herein, there are compelling reasons to seal the narrowly-tailored proposed redactions in the following brief and exhibits:

| Document | Description[1] |
|---|---|
| Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. A) (ECF 4835-3) | Plaintiff's Motions in Limine [redactions conforming to redactions requested to exhibits[2]] |
| Ex. 2 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. B) (ECF 4835-4) | UBER_JCCP_MDL_000337623 |
| Ex. 3 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. C) (ECF 4835-5) | UBER_JCCP_MDL_000475307 |
| Ex. 4 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. D) (ECF 4835-6) | UBER_JCCP_MDL_001717430 |
| Ex. 5 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. E) (ECF 4835-7) | UBER_JCCP_MDL_000118664 |
| Ex. 6 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. F) (ECF 4835-8) | UBER_JCCP_MDL_002010063 |
| Ex. 7 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. G) (ECF 4835-9) | UBER_JCCP_MDL_001319387 |
| Ex. 15 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. H) (ECF 4835-17) | UBER_JCCP_MDL_003340515 |

---

[1] In each case, Uber is the party claiming confidentiality.

[2] In addition, Uber seeks to redact a portion of page 13 of the opposition that corresponds to redactions that it requested to the report of Veronique Valliere. ECF 4470 at 7 (requesting redactions related to Cerebro tool).

| Document | Description[1] |
|---|---|
| Ex. 17 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. I) (ECF 4835-19) | UBER_JCCP_MDL_005031659 |
| Ex. 19 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. J) (ECF 4835-20) | UBER_JCCP_MDL_001701663 |
| Ex. 20 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. K) (ECF 4835-21) | UBER_JCCP_MDL_000122017 |
| Ex. 21 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. L) (ECF 4835-22) | UBER_JCCP_MDL_003231342 |
| Ex. 22 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. M) (ECF 4835-23) | July 8, 2025 Todd Gaddis Deposition Exhibits 4912 & 4913 |
| Ex. 23 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. N) (ECF 4835-24) | UBER_JCCP_MDL_000108957 |
| Ex. 35 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. O) (ECF 4835-35) | UBER_JCCP_MDL_001711889 |
| Ex. 47 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. P) (ECF 4835-47) | UBER_JCCP_MDL_003040649 |
| Ex. 48 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. Q) (ECF 4835-48) | Aug. 18, 2025 Todd Gaddis Declaration |
| Ex. 49 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. R) (ECF 4835-49) | Incident Report |
| Ex. 50 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. S) (ECF 4835-50) | Aug. 18, 2025 Uber Discovery Responses in Lieu of 30(b)(6) Depositions |
| Ex. 53 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. T) (ECF 4835-53) | Oct. 14, 2025 Sunny Wong Deposition Transcript Excerpts |
| Ex. 54 to Plaintiff's Opposition to Uber's Motions in Limine (Vartain Decl. Ex. U) (ECF 4835-54) | UBER-MDL3084-DFS00159600 |

## I. LEGAL STANDARD

In the Ninth Circuit, courts use one of two standards to decide whether a document supporting a motion should remain under seal: the "compelling reasons" standard or the "good cause" exception.

*Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, No. 22-cv-08958-CRB, 2024 WL 4487404, at *1 (N.D. Cal. Aug. 13, 2024) (citations omitted). When a motion is dispositive, the compelling reasons standard applies. *Id.* Motions in limine are generally considered dispositive for purposes of a sealing motion. *E.g.*, *Doe v. Regents of Univ. of Cal.*, No. 22-CV-1506 JLS (VET), 2025 WL 1115295, at *1 (S.D. Cal. Apr. 14, 2025); *see also Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016) ("plenty of technically nondispositive motions—including routine motions in limine—are strongly correlative to the merits of a case").[3]

"'[B]usiness information that might harm a litigant's competitive standing [if disclosed]' meets the compelling reasons standard for sealing." *Miller v. RP On-Site, LLC*, No. 19-CV-02114-LHK, 2021 WL 624175, at *2 (N.D. Cal. Jan. 8, 2021) (citing *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008)); *see also Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2015 WL 13673842, at *2 (N.D. Cal. Aug. 4, 2015) ("common-law right of inspection has bowed before the power of a court to insure that its records" are not used as "sources of business information that might harm a litigant's competitive standing") (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)); *Lawson v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2017 WL 2951608, at *9 (N.D. Cal. July 10, 2017) ("Sources of business information that might harm a litigant's competitive strategy may also give rise to a compelling reason to seal, as may pricing, profit, and customer usage information kept confidential by a company that could be used to the company's competitive disadvantage.") (internal alterations and citations omitted); *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827-EJD, 2019 WL 1767158, at *2 (N.D. Cal. Apr. 22, 2019) (noting that under the compelling reasons standard, courts have upheld the sealing of "trade secrets, marketing strategies, product development plans, detailed product-specific financial information, customer information, internal reports and other such materials that could harm a party's competitive standing").

---

[3] The Ninth Circuit provided the example of a motion in limine to admit statements in furtherance of a conspiracy, which it noted "will often spell out the very conspiracy alleged in a civil RICO complaint." *Id.* at 1099 n.5. Of course, some motions in limine may be more tangentially related to the merits of the case, particularly when the argument to exclude evidence is that it is irrelevant. Indeed, Plaintiff argues that the good cause standard applies to motions related to the scope of evidence that may be presented at trial. ECF 4880 at 1. Uber contends that its proposed redactions are appropriate under either the good cause or compelling reasons standard, and addresses the higher standard out of an abundance of caution.

## II.   ARGUMENT

Uber has a compelling interest in redacting the requested portions of the Exhibits. Release of the redacted materials described below to Uber's competitors and the public would result in competitive harm to Uber, which outweighs the public interest in disclosure here.

<u>Safety Risk Assessment Dispatch ("S-RAD") and Bouncer (S-RAD precursor).</u> Exhibit 53 to Plaintiff's Opposition to Uber's Motions in Limine is an excerpt of Sunny Wong's October 14, 2025 deposition. The excerpt discusses specific inputs to the S-RAD score calculated for the Dean trip. Ex. 53 at 432:6-10, 433:3, 433:6-7, 433:9, 433:13-16, 433:24-434:10, 434:13-16, 434:21-24. These inputs were set forth in Exhibit 30 to Plaintiff's summary judgment opposition. For the reasons described in Paragraphs 15-16 of the December 23, 2025 Declaration of Sunny Wong, ECF 4848-3, Uber previously sought to redact Exhibit 30 to Plaintiff's summary judgment opposition, as well as a different discussion of that exhibit at Mr. Wong's deposition. ECF 4848 at 3-5. The Court should seal the excerpts here for the same reasons.

Exhibit 21 to Plaintiff's Opposition to Uber's Motions in Limine is identical to Exhibit 23 to Plaintiff's summary judgment opposition. Uber sought certain redactions to that document, which relates to Bouncer, a predecessor technology to S-RAD. ECF 4388 at 3-5; ECF 4388-3 at ¶ 14. Uber asks that the Court apply these same redactions here (which redactions were also ordered by the JCCP Court). Ex. 21 at 4, 7-9, 12, 14-24.

<u>Analysis concerning rider-to-driver feedback tags.</u> Exhibit 23 to Plaintiff's Opposition to Uber's Motions in Limine is identical to Exhibit 44 to her summary judgment opposition. Relying on Paragraph 11.a of the December 29, 2025 Declaration of Greg Brown, ECF 4848-4, Uber sought certain redactions to that document, which relates to a particular data analysis undertaken by Uber. ECF 4848 at 6-7. Uber asks that the Court apply these same redactions to the exhibit here. Ex. 23 at UBER_JCCP_MDL_000108958-61.

<u>Uber's Financial Information.</u> Uber seeks to seal descriptions of Uber's financials and costs to run its business, including many specific dollar amounts, as well as internal considerations and discussions about how to maintain and operate the business. Brown Decl. ¶¶ 11-13.[4] In particular, Uber seeks to seal

---

[4]   The page numbering for the redactions to Exhibits 4, 17, 19, 20, and 22 in the Proposed Order differs slightly from the page numbering used in the Declaration of Greg Brown. This is because those

(1) information concerning Uber's insurance costs, as well as strategies related to lowering those costs; (2) information concerning Uber's survivor resources program, its costs, and the methods through which support funds were distributed to survivors; and (3) financial information, costs, goals, and projections concerning Uber's operations, strategies, and key performance indicators. *Id.* Publicly disclosing any of this data would cause competitive harm to Uber by providing its competitors with internal information regarding some of the key components of Uber's operational strategies as related to its financial decisions. Disclosure of Uber's financial information, reflecting its priorities and choices, would provide competitively sensitive information to Uber's competitors that they could use to gain insight into Uber's allocation of resources and financial position, providing competitors with an unfair competitive advantage over Uber. *See E. W. Bank v. Shanker*, No. 20-CV-07364-WHO, 2021 WL 3112452, at *17 (N.D. Cal. July 22, 2021) (granting motion to seal "financial investment and budget" information under compelling reasons standard); *Bold Ltd. v. Rocket Resume, Inc.*, No. 22-cv-01045-BLF, 2024 WL 1329921, at *2 (N.D. Cal. Mar. 27, 2024) ("Compelling reasons exist to seal confidential business information, including non-public information about a company's business strategy, business transactions, corporate structure, and finances"); *Aerodynamics Inc. v. Caesars Ent. Operating Co.*, No. 2:15-CV-01344-JAD-PAL, 2015 WL 5679843, at *14 (D. Nev. Sept. 24, 2015) (sealing budget analysis and financial model under compelling reasons standard).

Information regarding executive compensation. Uber seeks to seal the confidential compensation information of one of Uber's executives. Brown Decl. ¶ 14. Unlike the compensation of the other executives, which Uber does not seek to seal, this executive's compensation is not publicly reported. Courts have routinely sealed such information. *Gomo v. NetApp, Inc.*, No. 17-CV-02990-BLF, 2019 WL 1170775, at *2 (N.D. Cal. Mar. 13, 2019) (sealing, under compelling interest standard, "non-public, confidential information regarding Defendant NetApp's compensation plan and executives"); *Kenny v. Pac. Inv. Mgmt. Co. LLC*, No. C14-1987 RSM, 2018 WL 3328224, at *2 (W.D. Wash. July 6, 2018) (compelling reasons to seal individual compensation amounts).

---

five exhibits do not have any internal page numbers or Bates numbers to reference, and the page numbers of the PDF are used instead. For these exhibits, the PDF page numbers in the Brown declarations are all one digit off from the page numbers in the proposed order because the numbering in the Brown declaration did not take into account the lettered slipsheets that were added in connection with this filing.

<u>Research and analyses concerning internal Uber data.</u> Uber's internal data and its analyses of that data are core to its business operations and strategies. Brown Decl. ¶ 15. As one of Plaintiff's experts stated, "Uber says that data is 'crucial for [its] products' and that technology is 'at the heart' of its safety approach." Keller Rep. ¶ 59 (ECF 4470-17) (internal footnote omitted; alteration in Keller). Accordingly, Uber seeks to redact information concerning research, analyses, and experimentation involving its internal data and products, encompassing both specific analyses and information about how Uber conducts its proprietary analyses, research, and experiments, and the tools that it uses to do so. Brown Decl. ¶ 15. Uber also seeks to seal information concerning a particular proprietary machine learning model. *Id.* Uber closely guards these data, analyses, research, experiments, models, and strategies, which would be valuable to Uber's competitors, who could gain insight into those data and copy those analyses and apply them to their own data. *See DeMartini v. Microsoft Corp.*, No. 22-CV-08991-JSC, 2023 WL 4205770, at *4 (N.D. Cal. June 26, 2023) (finding compelling reasons to seal "confidential and internal data, including platform user and franchise data, and economic and commercial analysis that are not publicly accessible outside the company"); *Daybreak Game Co., LLC v. Takahashi*, No. 25-CV-01489-BAS-BLM, 2025 WL 3552744, at *3 (S.D. Cal. Dec. 11, 2025) (compelling reasons to seal user engagement metrics, which are the sort of "confidential business information that companies guard closely"); *Craig v. Am. Tuna, Inc.*, No. 22-CV-473-RSH-MSB, 2023 WL 8242460, at *3 (S.D. Cal. Nov. 28, 2023) (finding compelling reasons to seal "aggregated data and analysis that could be used 'as sources of business information that might harm [Defendant's] competitive standing'") (citation omitted); *Rodman*, 2015 WL 13673842, at *2 (granting motion to seal materials concerning "business decision-making" and "customer research"). Further, the competitors could copy Uber's strategies derived from the data. *See In re Qualcomm Litig.*, No. 3:17-CV-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (sealing information to "prevent competitors from gaining insight into the parties' business model and strategy"); *Bold Ltd.*, 2024 WL 1329921, at *2 ("Compelling reasons exist to seal confidential business information, including non-public information about a company's business strategy….").

<u>Deactivation and investigation processes.</u> The redacted materials include confidential details concerning Uber's deactivation and investigation procedures following its receipt of various incident reports, including screenshots of tools Uber uses in following those procedures. Brown Decl. ¶ 16.

Unsealing these documents would result in competitive harm to Uber because Uber's main competitors could replicate Uber's investigative and deactivation processes, which Uber has invested significant human and financial capital to develop and operationalize. *Laatz v. Zazzle, Inc.*, No. 22-CV-04844-BLF, 2025 WL 405702, at *3 (N.D. Cal. Feb. 5, 2025) (granting motion to seal information about party's "internal technical operations, technical search processes, [and] internal business processes" under compelling reasons standard); *E. W. Bank*, 2021 WL 3112452, at *17 (granting motion to seal "proprietary, confidential, and trade secret information, which if made public, would harm [party's] business by, e.g., allowing competitors to replicate [party's] development of [its digital banking service] without expending the resources it invested"); *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2016 WL 7911651, at *4 (N.D. Cal. Apr. 6, 2016) (sealing information when "there could be a risk that competitors would reproduce or recreate features of Defendants' products"); *U.S. v. Rite Aid Corp.*, No. 2:12-CV-1699-KJM-EFB, 2019 WL 1923234, at *2 (E.D. Cal. Apr. 30, 2019) (granting motion to seal "'detailed, non-public information' regarding [party's] 'internal data systems, processes, and practices,'. . . consisting primarily of the layout, organization, and content of [party's] internal computer system") (citation omitted); *id.* (compelling reasons existed to seal exhibit where public dissemination "may allow Defendants' competitors to reap the benefit of the [content] without having to incur the costs associated with developing the[m]") (citing *Esquivel v. Bank of Am., N.A.*, No. 2:12-CV-02502-GEB, 2015 WL 4224712, at *4 (E.D. Cal. July 10, 2015)). Moreover, revealing Uber's investigative and deactivation processes to the public could allow third-party users of the Uber app to undermine and exploit Uber's methodologies for investigating and deactivating riders and drivers, including through fraudulent activity, compromising safety to the detriment of users and drivers. *Ashcraft v. Welk Resort Grp., Corp.*, No. 2:16-cv-02978-JAD-NJK, 2019 WL 12518367, at *2 (D. Nev. Sept. 26, 2019) (sealing information that "identity thieves could use [ ] to develop methods to circumvent Experian's protections").

Survey data and customer research. Uber seeks to seal the results of surveys that Uber conducted related to itself or its products. Brown Decl. ¶ 17. Publicizing this information could put Uber at a competitive disadvantage by providing Uber's competitors with the benefits of Uber's proprietary research insights, enabling competitors to modify or tweak their own safety experiences by free-riding on Uber's investment of time and financial resources. The information could also allow Uber's competitors

to assess weak spots in the Uber experience from users' perspectives, and tailor their own products to differentiate themselves or compete with Uber in those specific areas. *See Rodman*, 2015 WL 13673842, at *2 (granting motion to seal materials concerning "business decision-making" and "customer research"); *Hyams v. CVS Health Corp.*, No. 18-CV-06278-HSG, 2023 WL 2960009, at *2 (N.D. Cal. Mar. 15, 2023) (finding compelling reasons to seal "research and data on customers and employees"); *Craig v. Am. Tuna, Inc.*, No. 22-cv-473-RSH-MSB, 2023 WL 9503374, at *2 (S.D. Cal. Dec. 13, 2023) (finding compelling reasons to redact "data from customer surveys concerning the information customers rely on in making a purchasing decision").

Data re: Reports of Sexual Assault/Sexual Misconduct. The redacted materials contain certain raw data from Uber's internal systems. Brown Decl. ¶ 18. Certain top-level raw data (total annual counts of sexual assault and sexual misconduct reports) from Uber's internal systems has been made public through the JCCP trial, as well as prior to that via a leak of sealed JCCP records to the *New York Times* in violation of the Protective Order. Uber is therefore not seeking to seal any of its raw top-level annual data. However, Uber seeks to seal certain non-public sensitive data which concern not the number of complaints, but instead the number of drivers about whom Uber received sexual assault or misconduct complaints. These data have been kept confidential within Uber. The release of this data to Uber's competitors would provide them with insight that they could leverage in competing with Uber.

Data Collection and Classification. Uber seeks to seal information concerning its internal data systems, specifically how data is collected and classified, and the fields of information that are maintained by Uber. Brown Decl. ¶ 19. This is sensitive and confidential information that would be valuable to Uber's competitors to copy in their own data collection and classification. *See Rite Aid Corp.*, 2019 WL 1923234, at *2 (granting motion to seal information about "the layout, organization, and content of [party's] internal computer system") (citation omitted).

Uber's City-Specific COVID-19 Strategies. Uber seeks to seal the detailed city-by-city descriptions of its strategies during various stages of the COVID-19 pandemic. Brown Decl. ¶ 20. Although some of these strategies are no longer directly applicable to Uber's current operations, Uber's approach to the pandemic would be of keen interest to its competitors in gaining insight into how to compete against Uber in the current environment and should another acute pandemic situation arise. *See*

*In re Qualcomm Litig.*, 2017 WL 5176922, at *2 (sealing information to "prevent competitors from gaining insight into the parties' business model and strategy"); *Bold Ltd.*, 2024 WL 1329921, at *2 ("Compelling reasons exist to seal confidential business information, including non-public information about a company's business strategy….").

<u>Uber's Women's Preference Product.</u> Uber seeks to seal certain non-public information regarding the development of Uber's recently launched Women Preference product. Brown Decl. ¶ 21. Certain high-level information about this product has been made public through the launch of the product or in the JCCP proceedings. Uber therefore is not seeking to seal any information that is already publicly available. Instead, Uber only seeks to redact the following specific categories of sensitive and confidential information: (1) information concerning Uber's methods for inferring or otherwise determining or verifying gender or gender identity, (2) internal data and analysis concerning Uber's customer base, its breakdown into different categories, and other metrics, as well as research about customer preferences and expectations concerning a woman-matching product, and results and research from similar products outside the United States; and (3) analysis, simulation and evaluation of the logistical details, strategies, and policy considerations involved in implementing the feature, including choices about how the feature should work and how it should be piloted. *Id.* This information has not been made public and instead has been kept confidential within Uber. These categories of data are particularly sensitive because some of Uber's competitors have similar women-matching features and publicizing this information would provide Uber's competitors with valuable confidential information about Uber's sensitive and confidential strategies in this area, including the strategies Uber considered but did not adopt, how it sought to differentiate itself from its competitors, and the research and data that it considered, all of which the competitors could potentially leverage or copy in competing with Uber. *See E. W. Bank*, 2021 WL 3112452, at *17 (granting motion to seal "proprietary, confidential, and trade secret information, which if made public, would harm [party's] business by, e.g., allowing competitors to replicate [party's] development of [its digital banking service] without expending the resources it invested"); *Finjan, Inc.*, 2016 WL 7911651, at *4 (sealing information when "there could be a risk that competitors would reproduce or recreate features of Defendants' products"); *Ashcraft*, 2019 WL 12518367, at *2 (sealing information that "a competitor could [use to] reverse-engineer" Experian's systems); *Exeltis USA Inc. v.*

*First Databank, Inc.*, No. 17-CV-04810-HSG, 2020 WL 2838812, at *2 (N.D. Cal. June 1, 2020) (granting motion to seal when "public release of these documents could give non-party competitors an unfair advantage in the development or marketing of rival products"); *Kowalsky v. Hewlett-Packard Co.*, No. 5:10-CV-02176-LHK, 2012 WL 892427, at *4 (N.D. Cal. Mar. 14, 2012) (granting motion to seal information concerning party's "product testing, development, and evaluation processes"); *Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2021 WL 2476916, at *4 (N.D. Cal. June 17, 2021) (granting motion to seal "exhibits that comprise internal Apple documents on iCloud's development and technical metrics"); *Rodman*, 2015 WL 13673842, at *2 (granting motion to seal materials concerning "business decision-making" and "customer research"); *Craig*, 2023 WL 9503374, at *2 (finding compelling reasons to redact "data from customer surveys concerning the information customers rely on in making a purchasing decision").[5]

Hyperlinks. Uber seeks to redact internal hyperlinks in certain exhibits. *See* Ex. 2 at UBER_JCCP_MDL_000337623.0016, .0041, .0045; Ex. 3 at UBER_JCCP_MDL_000475436, 475443, 475473, 475485; Ex. 4 at 31-34, Ex. 5 at UBER_JCCP_MDL_000118664.0028; Ex. 6 at UBER_JCCP_MDL_002010063, 2010071-73, 2010077; Ex. 7 at UBER_JCCP_MDL_001319387, 1319397, 1319402-03; Ex. 15 at UBER_JCCP_MDL_003340516, UBER_JCCP_MDL_003340522-23; Ex. 17 at 937; Ex. 35 at UBER_JCCP_MDL_001711889, 1711892; Ex. 47 at UBER-JCCP-MDL-003040912, 3040914, 3040948, 3040950, 3040952, 3040954, 3040956, 3040959, 3040999. Redacting the hyperlinks is necessary to avoid any inadvertent access to Uber internal documents by unauthorized individuals, who could click on the link and accidentally be granted access by the internal Uber owners of the documents. Redaction of the hyperlinks here does not impair the public right of access, because the hyperlinks themselves do not reveal any substantive information and the documents to which they link are not part of the public record.

---

[5] Exhibit 17 and Exhibit 47 are extremely long (900+ and 800+ pages, respectively) slide decks, with multiple subsections; the subsections in Exhibit 17 correspond to weekly meeting materials. To the extent that reviewing Uber's proposed redactions to these lengthy documents places an undue burden on the Court in resolving this sealing motion, Uber suggests that the Court may require Plaintiff to instead file versions that excerpt only the subsections with the few pages that Plaintiff cites. *E.g., U.S. ex rel. Brown v. Celgene Corp.*, No. CV 10-3165 GHK (SS), 2016 WL 6542729, at *1 (C.D. Cal. Mar. 14, 2016) ("Relator shall not re-file the entire transcript of [witness's] deposition transcript, but only the specific pages cited in its supplemental memorandum.").

\* \* \* \* \*

Uber is not seeking to seal almost any of the exhibits in full,[6] but only to redact limited excerpts that are necessary to seal in order to protect Uber from competitive harm. *See Rodman*, 2015 WL 13673842, at \*2 (granting motion to seal when company "has proposed to redact only the portions of the documents containing the confidential information"); *In re Qualcomm Litig.*, 2017 WL 5176922, at \*2 (granting motion to seal when parties sought "to only redact the portions of the filings and the precise exhibits that implicate such confidential business information"). Moreover, to the extent information was already made public in connection with the JCCP trial and other proceedings, Uber is also not seeking to protect that information. Thus, Uber's approach is the least restrictive alternative and is narrowly tailored to protect Uber's competitive and other interests.

Accordingly, compelling reasons exist for the Court to redact the Exhibits as described above. Uber therefore respectfully requests that the Court order that the redacted Exhibits be maintained on the docket under seal.

DATED: January 13, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022

---

[6] The only exception, Exhibit 54, is a screenshot which Uber seeks to seal in full.

Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street, Austin, TX 78701
Telephone: (512) 355-4390
kim.bueno@kirkland.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, And RASIER-CA, LLC