UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*,<br>N.D. Cal. Case No. 3:23-cv-06708-CRB<br>D. Ariz. Case No. 2:25-cv-04276-CRB | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DECLARATION OF GREG BROWN**<br><br>Judge:      Hon. Charles R. Breyer<br>Courtroom: 6 – 17th Floor |

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| JAYLYNN DEAN,<br><br>      Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>      Defendants. | CASE NO. 25-cv-4276-PHX-CRB<br><br>Judge:      Hon. Charles R. Breyer<br><br>Courtroom: 501 |

I, Greg Brown, having personal knowledge of the following, state:

1. I am the Director, Head of Central Safety, at Uber. I was first employed by Uber from 2014 through 2020, during which time I worked as Operations and Logistics Manager (July 2014 – September 2015); Senior Operations Manager (September 2015 – November 2017); Program Lead, Safety (November 2017 – August 2019); and Senior Program Lead, Safety & Risk (August 2019 – December 2020). When I returned to Uber in 2022, I initially worked as Director of Safety, United States & Canada (September 2022 – August 2024). Since August 2024, I have served in my current role. In that role, I am responsible for overseeing, organizing, and implementing global risk programs, and ensuring, where applicable, that Uber's safety policies and standards are appropriately globalized. I offer this Declaration in the above-captioned matter in support of the Motion to Seal filed by Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC (collectively, "Uber"). The facts set forth herein are true and correct and are based on my own personal knowledge, and I could and would competently testify thereto if called to testify in this matter.

2. I have reviewed Uber's proposed redactions (the "Redacted Materials") to Exhibits 2-5, 17, 19-20, 22, 47-50, and 54 to Plaintiff's Opposition to Uber's Omnibus Motions in Limine ("Plaintiff's MIL Opposition").

3. The Redacted Materials should be protected from disclosure to Uber's competitors because they reveal Uber's confidential and proprietary financial information; information about research, analyses, and experimentation; information about specific technologies, products, initiatives, and processes; customer research; raw data; and other internal decision making related to Uber's strategic plans in a highly competitive market. Specifically, the Redacted Materials divulge competitively sensitive details concerning Uber's financial information, including detailed and specific dollar amounts; non-public information concerning a particular executive's compensation; proprietary research, analyses, and experimentation concerning Uber's products and data; information concerning Uber's proprietary investigation and deactivation processes; survey and customer data; certain other data from Uber's systems; information about Uber's data collection and classification; Uber's COVID-19-related strategies; and information about Uber's Women Preference product. All of this information is unknown to Uber's competitors and would result in a competitive disadvantage to Uber if made publicly available. Uber has

spent significant time and resources developing its proprietary information, procedures, research, data, and product features. Further information about the type of confidential and competitively sensitive information contained in the Redacted Materials is set forth below.

4. The confidential information sought to be redacted is only made available to internal Uber employees who need to know about, work from, analyze, or prepare the confidential information. It is not generally available to any and all employees within Uber and is restricted based on document access procedures.

5. I am personally familiar with the confidential information through my work as it relates to overseeing, improving, and implementing global risk programs and Uber's safety policies and standards.

6. Disclosure of the nature and details of the confidential information outlined below, which Uber has not revealed publicly and has taken precautions to safeguard, would cause competitive harm to Uber by providing its competitors with internal information regarding some of the key components of Uber's operational strategies. Uber and its competitors participate in a highly competitive market. Information concerning Uber's finances, processes, strategies, data and analyses is therefore of great interest to Uber's competitors in developing their own processes, strategies, and analyses and could be leveraged against Uber to its competitive disadvantage.

7. In addition, disclosure of information concerning Uber's internal procedures, methodologies, and strategies could potentially allow competitors to inappropriately co-opt and adopt the same, which could harm Uber's competitive standing. In other words, Uber's competitors could use the confidential information to alter or improve their own respective businesses, which, given Uber's efforts to safeguard the information, would severely diminish Uber's hard-earned competitive advantage.

8. Public disclosure of the Redacted Materials would also reveal Uber's confidential safety-related goals and priorities to its competitors. Permitting Uber's competitors access to this competitively sensitive strategic information could harm Uber by allowing competitors to develop strategies and programs to counter initiatives that Uber is contemplating or working on.

9. Further, disclosure of information about the details of Uber's proprietary deactivation policies and investigative procedures to the public may allow users of the Uber platform or other individuals to take steps to undermine or circumvent the effectiveness of these safety measures.

10. The proposed redactions, described in more detail below, are narrowly tailored to protect Uber's competitively sensitive information.

**Financial and other data.**

11. Exhibit 2, Exhibit 3, Exhibit 4, Exhibit 5 and Exhibit 17 to Plaintiff's MIL Opposition describe Uber's financials and costs to run its business, including many specific dollar amounts, as well as internal considerations and discussions about how to maintain the business. In particular, Exhibit 2, Exhibit 3, and Exhibit 4 discuss detailed information concerning Uber's insurance costs, as well as strategies related to lowering those costs. Ex. 2 at UBER_JCCP_MDL_000337623.0007, .0009, .0011, .0013, .0023, .0025-.0030, .0032-.0034, .0036, .0038-.0039, .0047-.0048, .0062; Ex. 3 at UBER_JCCP_MDL_000475322, 475425-26, 475436-37, 475442-43, 475445-47, 475449, 475452; Ex. 4 at 9, 11. Exhibit 4 and Exhibit 5 include detailed information concerning Uber's survivor resources program, its costs, and the methods through which support funds were distributed to survivors. Ex. 4 at 19, 45; Ex. 5 at UBER_JCCP_MDL_000118664.0001, .0005, .0007-.0009, .0011, .0013, .0023, .0025-.0027.

12. Exhibit 17 is a slide deck covering two years of weekly materials for the US City Ops Weekly Leads Meeting. It includes financial information, costs, goals, and projections concerning Uber's operations, strategies, and key performance indicators. Ex. 17 at 60-61, 73, 75-80, 83-85, 87, 89-90, 93, 123-130, 198-203, 205, 222, 224, 257, 341, 343, 353, 355, 371-372, 380, 382, 387, 392, 400, 404, 412-13, 420, 422-23, 429, 431-32, 442-44, 450, 452-53, 460-61, 463, 470-72, 477, 479-480, 486-487, 489, 494-96, 504, 506, 508, 514-15, 517, 525-26, 528, 534-36, 542-43, 545, 550-52, 554-56, 560-63, 574-76, 581-83, 602-604, 608-09, 611, 615-17, 621-23, 628-30, 634-36, 644-646, 653-55, 661-63, 669-671, 675-76, 678, 682, 710-15, 724-28, 886, 894, 908, 933. Exhibit 17 also includes an analysis of specific market risks in particular markets. *Id.* at 236-238.

13. Publicly disclosing any of this data would cause competitive harm to Uber by providing its competitors with internal information regarding some of the key components of Uber's operational strategies as related to its financial decisions. Disclosure of Uber's financial information, reflecting its priorities and choices, would provide competitively sensitive information to Uber's competitors that they

could use to gain insight into Uber's allocation of resources and financial position, providing competitors with an unfair competitive advantage over Uber.

**Information regarding executive compensation.**

14. Exhibit 50 to Plaintiff's MIL Opposition includes the confidential compensation information of one of Uber's executives. Ex. 50 at 13:12. This non-publicly-reported information could be used by Uber's competitors in competing for executive talent with Uber.

**Research, analyses, and experimentation concerning internal Uber products and data.**

15. Exhibit 2 and Exhibit 3 to Plaintiff's MIL Opposition include research, analyses, and experimentation involving Uber's internal data and products, encompassing both specific analyses as well as information about how Uber conducts its proprietary analyses, research, and experiments, and the tools that it uses to do so. Ex. 2 at UBER_JCCP_MDL_000337623.0020-.0021; Ex. 3 at UBER_JCCP_MDL_000475393, 475396, 475405, 475411, 475413, 475418, 475422, 475429, 475469-76, 475479-80, 475483-85. Exhibit 17 includes information concerning a particular confidential and proprietary machine learning model used by Uber related to budget allocation. Ex. 17 at 99-104. Uber's research into and analysis of its internal data, and its experimentation procedures, are core to its business operations and strategies, which are often informed by what the internal data reveal. Indeed, Uber has a Data Science team dedicated to conducting these analyses, which other Uber teams then use to develop and test specific features and strategies. These analyses would therefore be very valuable to Uber's competitors, which could use them for their own purposes.

**Investigative and deactivation processes.**

16. Exhibit 2, Exhibit 19, and Exhibit 20 to Plaintiff's MIL Opposition describe Uber's deactivation criteria, including non-public details about how Uber resolves reports and makes deactivation decisions, discuss the impacts that those deactivation decisions have on Uber's business, provide the results of an audit related to deactivation, and include screenshots of Uber tools used in the deactivation process. Ex. 2 at UBER_JCCP_MDL_000337623.0050-.0052, .0055-.0058, .0060-.0061; Ex. 19 at 10-11, 13-14, 16, 19, 26 and 28; Ex. 20 at 9, 14-22 and 25. Exhibit 54 is a screenshot of an internal Uber tool used in its investigations and deactivations. Unsealing these documents would result in competitive harm to Uber because Uber's main competitors could replicate Uber's investigative and deactivation processes,

which Uber has invested significant human and financial capital to develop and operationalize. Moreover, revealing Uber's investigative and deactivation processes to the public could allow third-party users of the Uber app to undermine and exploit Uber's methodologies for investigating incidents, compromising safety to the detriment of users and drivers.

**Survey data and customer research.**

17. Exhibit 3 and Exhibit 4 to Plaintiff's MIL Opposition include the results of surveys that Uber conducted related to itself or its products. Ex. 3 at UBER_JCCP_MDL_000475467; Ex. 4 at 7. Publicizing this information could put Uber at a competitive disadvantage by providing Uber's competitors with the benefits of Uber's proprietary research insights, enabling competitors to modify or tweak their own safety experiences by free-riding on Uber's investment of time and financial resources. The information could also allow Uber's competitors to assess weak spots in the Uber experience from users' perspectives, and tailor their own products to differentiate themselves or compete with Uber in those specific areas.

**Data re: Reports of Sexual Assault/Sexual Misconduct.**

18. Exhibit 22 to Plaintiff's MIL Opposition contains raw data pulled from Uber's internal systems in response to a request for information from Plaintiffs. Ex. 22 at pp. 2-3. Certain top-level raw data (total annual counts of sexual assault and sexual misconduct reports) from Uber's internal systems has been made public through the JCCP trial, as well as prior to that via a leak of sealed JCCP records to the *New York Times* in violation of the Protective Order. Uber is therefore not seeking to seal any of its raw top-level annual data. However, this Exhibit reveals non-public sensitive data which concern not the number of complaints, but instead the number of drivers about whom Uber received sexual assault or misconduct complaints. These data have been kept confidential within Uber. The release of this data to Uber's competitors would provide them with insight that they could leverage in competing with Uber.

**Data Collection and Classification.**

19. Exhibit 3 and Exhibit 48 to Plaintiff's MIL Opposition include information on Uber's Flack system, specifically how data is collected and classified, and the fields of information that are maintained by Uber. Ex. 3 at UBER_JCCP_MDL_000475385; Ex. 48 at 5-7. Exhibit 49 describes the specific fields and terms that Uber's internal investigators and representatives use during an investigation when creating

investigatory materials such as JIRA reports, which are described further in my December 16, 2025 Declaration. *See* ECF 4684-11. Ex. 49 at 1-12. This is also sensitive and confidential information that would be valuable to Uber's competitors to copy in their own data collection and classification.

**Uber's City-Specific COVID-19 Strategies.**

20. Exhibit 17 to Plaintiff's MIL Opposition includes a detailed city-by-city description of Uber's strategies during various stages of the COVID-19 pandemic. Ex. 17 at 748-753, 755-58, 760-67, 783-788, 791-94, 797-802. Although many of these strategies are no longer directly applicable to Uber's current operations, Uber's approach to the pandemic would be of keen interest to its competitors in gaining insight into how to compete against Uber in the current environment and should another acute pandemic situation arise.

**Uber's Women Preferences product.**

21. Exhibit 47 to Plaintiff's MIL Opposition discusses non-public information regarding the development of Uber's recently launched Women Preferences product. Certain high-level information about this product has been made public through the launch of the product or in the JCCP proceedings. Uber therefore is not seeking to seal any information that is already publicly available. Instead, Uber only seeks to redact the following specific categories of sensitive and confidential information (1) information concerning Uber's methods for inferring or otherwise determining or verifying gender or gender identity, Ex. 47 at UBER_JCCP MDL_003040666-667, 3040787-788, 3040801, 3040804, 3040815, 3040841-842, 3040865-866, 3040872-873, 3040894, 3041027; (2) internal data and analysis concerning Uber's customer base, its breakdown into different categories, and other metrics, as well as research about customer preferences and expectations concerning a woman-matching product, and results and research from similar products outside the United States, *id.* at UBER_JCCP MDL_003040669-670, 3040905, 3040957, 3040961-966, 3040968-970, 3040972, 3040974-975, 30409780-983, 3040985, 3040988, 3040990-991, 3040995, 3041000, 3041003, 3041030-031, 3041040, 3041043, 3041049, 3041052-053, 3041056-057, 3041075, 3041081, 3041093, 3041102, 3041106, 3041108, 3041219-224, 3041226-228, 3041230, 3041232, 3041234-235, 3041243-244, 3041246, 3041251-257, 3041260, 3041262, 3041264-267, 3041269, 3041273, 3041275, 3041277-280, 3041285, 3041300, 3041303, 3041305, 3041307-309, 3041313, 3041322, 3041333-336, 3041338, 3041340, 3041342, 3041349-351, 3041354, 3041356,

3041358, 3041360-362, 3041367-368, 3041377, 3041393-396, 3041399, 3041404, 3041412-413, 3041421, 3041423, 3041425-427, 3041432, 3041434, 3041437; and (3) analysis, simulation and evaluation of the logistical details, strategies, and policy considerations involved in implementing the feature, including choices about how the feature should work and how it should be piloted, *id.* at UBER_JCCP_MDL_003040790-792, 3040913, 3040939, 3040947, 3040949, 3040951, 3040953, 3040955, 3040958, 3040993, 3040998, 3041007, 3041011, 3041022, 3041025-026, 3041035, 3041037, 3041073, 3041095, 3041139, 3041141, 3041145, 3041188-189, 3041259, 3041286, 3041295-296, 3041312, 3041315-318, 3041320, 3041331, 3041337, 3041352-353, 3041363, 3041365, 3041372-376, 3041384, 3041386-387, 3041417, 3041429, 3041446. This information has not been made public and instead has been kept confidential within Uber. These categories of data are particularly sensitive because some of Uber's competitors have similar women-matching features and publicizing this information would provide Uber's competitors with valuable confidential information about Uber's sensitive and confidential strategies in this area, including the strategies Uber considered but did not adopt, how it sought to differentiate itself from its competitors, and the research and data that it considered, all of which the competitors could potentially leverage or copy in competing with Uber.

22. All of Uber's proposed redactions are narrowly tailored to protect Uber's competitively sensitive information.

23. For all of these reasons, it is essential that the competitively sensitive information set forth herein be maintained under seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 13, 2026

/s/ *Gregory Brown*
GREG BROWN