LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

Attorneys for Uber
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S (COLLECTIVELY "UBER") OBJECTION TO SPECIAL MASTER'S ORDER** |
| This Document Relates to: | |
| ALL ACTIONS | Judge: Hon. Charles R. Breyer |
| | Date: February 20, 2026 |
| | Time: 10:00 a.m. |
| | Courtroom: 6-17th Floor |

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

1

**NOTICE OF OBJECTION AND OBJECTION TO SPECIAL MASTER'S ORDER**

2

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

3

PLEASE TAKE NOTICE that Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's

4

(collectively, "Uber") Objection to Special Master's Order is set for hearing on February 20, 2026 at

5

10:00 a.m.

6

Pursuant to Federal Rule of Civil Procedure 53 and the Amended Order Appointing Honorable

7

Barbara Jones (Ret.) as Master [Dkt. 2302], Uber hereby objects to the Special Master's January 9,

8

2026 ruling [Dkt. 4965] that Uber may not claw back 42[1] documents that Uber initially designated as

9

privileged and subsequently produced following a re-review because Uber waived attorney-client and

10

work-product protections. Specifically, Uber respectfully requests that the Court wholly reverse and

11

vacate the ruling and direct the Special Master to decide whether the documents are privileged by

12

assessing the merits of Uber's privilege and work product claims, and Plaintiffs' challenges.

13

This objection is based on this Notice of Objection and Objection, the attached Memorandum

14

of Points and Authorities, the attached exhibits, and the pleadings and papers on file herein.

15

16

DATED: January 14, 2026                    Respectfully submitted,

17

**SHOOK HARDY & BACON L.L.P.**

18

By: */s/ Maria Salcedo*

19

        Maria Salcedo

20

**KIRKLAND & ELLIS LLP**

21

LAURA VARTAIN HORN
ALLISON M. BROWN

22

23

**O'MELVENY AND MYERS LLP**
SABRINA STRONG

24

JONATHAN SCHNELLER

25

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)

26

oot@shb.com

27

---

28

[1] The documents are identified in a chart in Ex. A. Uber will provide the documents to the Court at
the Court's request.

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER            Case No. 3:23-MD-3084-CRB

1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
    adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
    mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
    ccotton@shb.com
JENNIFER HILL (Admitted *Pro Hac Vice*)
    jshill@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
    msalcedo@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

3

# **TABLE OF CONTENTS**

I.      Introduction and Summary of Argument ..................................................................... 1

II.     Relevant Facts and Background................................................................................... 2

III.    Legal Standard ........................................................................................................... 4

IV.     Argument ................................................................................................................... 4

       A.     The Special Master Substantively Erred in Finding That Uber May Not Claw Back
Documents Because It Waived Privilege by Producing the Documents After a Re-
Review. ............................................................................................................... 5

            i.     Rule 502 Exists to Protect Against Waiver of Privilege.................................. 5

            ii.     Production Does Not Result in Waiver of Privilege Under PTO No. 14. ........ 6

            iii.     Purported Concerns About Serial Designation, De-designation, and Clawback
Creating Delay and Inefficiency Do Not Justify Ignoring Rule 502(d)............ 8

            iv.     Uber's Disclosures Were Inadvertent. ........................................................... 10

       B.     The Special Master's Finding of Waiver Was Erroneous Because It Followed and
Applied Magistrate Judge Cisneros's Procedurally Improper *Sua Sponte*, Blanket
Ruling on Waiver by Disclosure. ........................................................................ 13

V.      Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amobi v. District of Columbia Dept. of Corrections*,
   262 F.R.D. 45 (D.D.C. 2009) .................................................................................11

*Arconic Inc. v. Novelis Inc.*,
   2019 WL 911417 (W.D. Pa. Feb. 26, 2019) ...........................................................9

*B&G Foods North America, Inc. v. Embry*,
   2024 WL 922900 (E.D. Cal. March 4, 2024) .........................................................10

*Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*,
   1988 WL 138254 (E.D.N.Y. Dec. 19, 1988) ...........................................................12

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
   712 F.3d 1349 (9th Cir. 2013) .................................................................................9

*BNP Paribas Mortg. Corp. v. Bank of America N.A.*,
   2013 WL 2322678 (S.D.N.Y. May 21, 2013) .........................................................12

*Brookfield Asset Management, Inc. v. AIG Financial Products Corp.*,
   2013 WL 142503 (S.D.N.Y. Jan. 7, 2013) ..............................................................7

*Carmody v. Bd. of Trs. of Univ. of Ill.*,
   893 F.3d 397 (7th Cir. 2018) ...................................................................................11

*Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*,
   218 F. Supp. 3d 197 (E.D.N.Y. 2016) .....................................................................9

*Datel Holdings Ltd. v. Microsoft Corp.*,
   2011 WL 866993 (N.D. Cal. March 11, 2011) ........................................................11

*Dietz v. Bouldin*,
   579 U.S. 40 (2016) ...................................................................................................9

*Epic Games, Inc. v. Apple Inc.*,
   781 F. Supp. 3d 943 (N.D. Cal. 2025) .....................................................................9

*Epic Games, Inc. v. Apple, Inc.*,
   Case No. 20-cv-05640-YGR (TSH), 2025 U.S. Dist. LEXIS 34007 (N.D. Cal.
   Feb. 25, 2025) ...........................................................................................................12

*Eureka Financial Corp. v. Hartford Acc. and Indem. Co.*,
   136 F.R.D. 179 (E.D. Cal. 1991) .............................................................................15

*Everest Nat'l Ins. Co. v. Am. Claims Mgmt., Inc.*,
   2025 WL 2381475 (D.N.J. Aug. 15, 2025) ..............................................................7

ii

*Garcia v. Progressive Choice Ins. Co.*,
   2012 WL 3113172 (S.D. Cal. July 30, 2012) ...................................................................15

*Great-West Life & Annuity Ins. Co. v. American Economy Ins. Co.*,
   2013 WL 5332410 (D. Nev. Sept. 23, 2013) .....................................................................6

*Guidiville Rancheria of California v. United States*,
   2013 WL 6571945 (N.D. Cal. Dec. 13, 2013) ..................................................................10

*GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*,
   2024 WL 4960008 (N.D. Miss. Dec. 3, 2024) ...................................................................7

*Hatfield v. Bonneville Cnty.*,
   2025 WL 358441 (D. Idaho Jan. 31, 2025) ......................................................................11

*Heinz v. C.I.R.*,
   770 F.2d 874 (9th Cir. 1985) ...........................................................................................14

*Hernandez v. Tanninen*,
   604 F.3d 1095 (9th Cir. 2010) .........................................................................................15

*Jones v. L.A. Central Plaza LLC*,
   74 F.4th 1053 (9th Cir. 2023) ..........................................................................................14

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
   529 F.3d 371 (7th Cir. 2008) ...........................................................................................12

*Landgraf v. USI Film Prods.*,
   511 U.S. 244 (1994) ...........................................................................................................9

*Lewis v. Woodford*,
   2007 WL 196635 (E.D. Cal. Jan. 23, 2007) ....................................................................14

*Mead Reinsurance v. Granite State Ins. Co.*,
   873 F.2d 1185 (9th Cir. 1988) .........................................................................................14

*Northwest Acceptance Corp. v. Lynwood Equipment, Inc.*,
   841 F.2d 918 (9th Cir. 1988) . PTO 14............................................................................13

*Pac. Coast Steel v. Leany*,
   2011 WL 4704217 (D. Nev. Oct. 4, 2011) .......................................................................11

*Patagonia, Inc. v. Anheuser Busch, LLC*,
   2020 WL 12048989 (C.D. Cal. Sept. 29, 2020) ...............................................................12

*Redd v. Guerrero*,
   84 F.4th 874 (9th Cir. 2023) ............................................................................................15

*Reyes v. Garland*,
   11 F.4th 985 (9th Cir. 2021) ..............................................................................................9

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

*S.E.C. v. TheStreet.Com,*
   273 F.3d 222 (2d Cir. 2001)................................................................................9

*Smith v. Best Buy Stores, L.P.,*
   2017 WL 3484158 (D. Idaho Aug. 14, 2017)................................................9, 10

*Sukumar v. Direct Focus, Inc.,*
   349 Fed. Appx. 163 (9th Cir. 2009)......................................................................4

*T&W Holding Co., LLC v. City of Kemah, Texas,*
   641 F. Supp. 3d 378 (S.D. Tex. 2022)................................................................11

*Thomas v. Marshall Public School,*
   690 F. Supp. 3d 941 (D. Minn. 2023)..................................................................7

*U.S. v. Silverman,*
   861 F.2d 571 (9th Cir. 1988) ................................................................................4

*United States v. Bauer,*
   132 F.3d 504 (9th Cir. 1997) ..............................................................................14

*United States v. Caroleo,*
   2019 WL 5869690 (E.D.N.Y. Nov. 11, 2019)......................................................7

*United States v. Garcia-Lopez,*
   309 F.3d 1121 (9th Cir. 2002) ............................................................................15

*United States v. Hall,*
   No. 2020 WL 7027473 (N.D. Tex. Nov. 30, 2020)..............................................7

*United States v. Hatfield,*
   2010 WL 11515679 (E.D.N.Y. July 13, 2010)......................................................7

*United States v. Potts,*
   528 F.2d 883 (9th Cir. 1975) ................................................................................9

*United States v. Sainz,*
   933 F.3d 1080 (9th Cir. 2019) ............................................................................15

*United States v. Sanmina Corp.,*
   968 F.3d 1107 (9th Cir. 2020) ............................................................................15

*United States v. United Health Grp., Inc.,*
   2020 WL 10731257 (C.D. Cal. Nov. 9, 2020)....................................................11

*Upjohn Co. v. United States,*
   449 U.S. 383 (1981)............................................................................................14

*Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.,*
   2009 WL 464989 (N.D. Tex. Feb. 23, 2009)........................................................8

iv

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    2019 WL 6122012 (E.D. Va. July 16, 2019) ........................................................................10

**Statutes**

28 U.S.C. § 2074 (b) ........................................................................................................................5

Pub. L. 110-322, § 1(a), Sept. 19, 2008 ..........................................................................................5

**Rules**

Fed. R. Civ. P. 53 (f)(3) ...................................................................................................................4

Fed. R. Civ. P. 53(f)(3)-(4) ..............................................................................................................4

Fed. R. Civ. P. 53(f)(3)-(5) ..............................................................................................................4

Fed. R. Evid. 502 ..................................................................................................................4, 5, 6, 8

Fed. R. Evid. 502(b) .................................................................................................................. *passim*

Fed. R. Evid. 502(b)(1) ...................................................................................................................11

Fed. R. Evid. 502(d) .................................................................................................................. *passim*

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER    Case No. 3:23-MD-3084-CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction and Summary of Argument

The Special Master's finding that Uber may not clawback 42 documents because Uber supposedly waived privilege and work-product protections by producing them following a re-review cannot be reconciled with the protections against waiver in Pre-trial Order No. 14 and Federal Rule of Evidence 502(d). Citing Federal Rule of Evidence 502(d), PTO 14 provides that "the production of *any* privileged or otherwise protected . . . information in this case *shall not be deemed a waiver* or impairment of any claim of privilege or protection in this case." (emphases added). Congress enacted Rule 502(d) to authorize courts to issue orders providing broader protections from waiver than the otherwise default provision in Rule 502(b), such that disclosure of documents in litigation does not constitute waiver of privilege. This Court implemented those broader protections in PTO 14. And the Special Master's rejection of clawback ignores those protections, and should be overruled.

The Special Master's error traces back to April 2025, when with no pending dispute before her, no documents identified for ruling, and no briefing, Judge Cisneros ruled *sua sponte* at a status conference that Uber waived privilege and could not claw back *any* of the thousands of documents it re-reviewed, de-designated, and produced under her supervision. Uber has attempted to claw back only a small number of those documents. The Special Master followed that ruling and applied the principles of Magistrate Judge Cisneros's ruling to 42 documents de-designated and produced after the Special Master's appointment. Neither Judge Cisneros's ruling nor the Special Master's ruling provide the legal basis for the waiver conclusion for any documents, much less how that conclusion can be reconciled with PTO 14 and Rule 502(d). As explained below, Uber's re-review and production of documents does not constitute a waiver of attorney-client or work-product protections under Rule 502(d) and PTO 14.  By relying upon and applying Judge Cisneros's blanket ruling, the Special Master swept in the procedural and due process errors of that ruling and avoided addressing the merits of the privilege claims underlying Uber's clawback requests.

The Special Master's ruling inflicts harsh consequences: Uber has been deprived of its attorney-client and work-product protections despite its good faith re-review of tens of thousands of documents, produced on a compressed schedule, while relying on PTO 14 and Rule 502(d)'s

1

protections against waiver by production. Uber, therefore, respectfully requests that the Court reverse and vacate the Special Master's January 9, 2026 order, and instruct her to decide on the merits whether the documents at issue are privileged.

## II.    Relevant Facts and Background

*Document Production and Initial Privilege Dispute:* Uber reviewed and ultimately produced approximately 1.7 million documents at breakneck speed in 18 months. By the Fall 2024, Plaintiffs had systematically challenged thousands of entries in Uber's privilege logs. *See*, *e.g.*, Dkt. 1681.

Magistrate Judge Cisneros was responsible for supervising privilege disputes at that time.  She ruled on samples of privilege disputes in Fall 2024 and early 2025, ordering Uber to apply "lessons learned" from those rulings within a very short time (14 or 21 days) to previously produced and future privilege logs. *See* Dkts. 1785, 1808, 1908, 2005, and 2168. Uber employed a team to review its privilege logs in a good faith effort to apply the "lessons learned" to tens of thousands of privilege log entries, removing or narrowing numerous privilege claims in the process. Importantly, when producing documents to Plaintiffs, Uber consistently represented that its productions were "not intended to, and [did] not, waive any applicable privilege or other legal basis under which information may be protected from disclosure"—clearly invoking the Rule 502(d) non-waiver provision of PTO 14. *See*, *e.g.*, Ex. B, Jan. 10, 2025 Correspondence to Plaintiffs' Counsel.

*Judge Cisneros's* **Sua Sponte** *Blanket Waiver Ruling*: On April 24, 2025, during a status conference Magistrate Judge Cisneros issued a blanket ruling that Uber had "waived the right to claw back documents that it originally designated as privileged and then de-designated as part of the privilege dispute resolution process overseen by Judge Cisneros." Dkt. 2855. The ruling issued *sua sponte*, with no clawback dispute pending before the Court and no documents identified for ruling. Magistrate Judge Cisneros also held that whether "that principle applies to documents de-designated after privilege issues were referred to Judge Jones[2] is a question for Judge Jones." *Id.* Uber moved Judge Cisneros for leave to file a motion to reconsider her ruling. Dkt. 3442. She denied leave on procedural grounds, under Local Rule 7-9(b) governing motions for reconsideration, without

_____

[2] The Special Master was appointed to handle privilege disputes on February 6, 2025. Dkts. 2289 and 2168.

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

1    addressing the merits of Uber's waiver and due process arguments. Dkt. 3545. Uber next sought relief

2    from this Court, which denied the motion and affirmed the order denying leave. Dkt. 3649.

3        ***Judge Jones's Application of the Blanket Waiver Ruling:*** In the clawback dispute underlying

4    this objection (the first time a court addressed an actual clawback dispute implicating waiver by

5    production), the Special Master concluded on September 3, 2025 that specific documents falling

6    within the scope of Magistrate Judge Cisneros's ruling could not be clawed back. Ex. C, Sept. 3, 2025

7    Email Ruling. In subsequent briefing, Uber argued that the Special Master should decide the issue of

8    privilege-waiver *de novo* as to documents inadvertently de-designated after her appointment and

9    explained why Judge Cisneros's earlier blanket ruling was incorrect. Ex. D, Sept. 10, 2025 Brief.

10       On September 30, 2025, the Special Master rejected Uber's argument, concluding "that the

11   same principles applied by Judge Cisneros in her April 24, 2025 and July 22, 2025 orders apply to the

12   42 documents de-designated after February 6, 2025 and Uber may not claw back those documents."

13   Ex. E, Sept. 30, 2025 Email Ruling; Dkt. 4965.  On October 7, 2025, the Special Master entered an

14   order applying the September 30 ruling to 15 of the 42 documents and determined that those

15   documents were "not privileged" because they may not be clawed back.[3] Ex. F, Oct. 7, 2025 Email

16   Ruling; Dkt. 4965.

17       On October 21, 2025, Uber objected to the Special Master's September 30 and October 7

18   rulings. Ex. G, Defs.' Oct. 21, 2025 Brief. On November 17, 2025, the Special Master denied Uber's

19   objection via email. Ex. H, Nov. 17, 2025 Email Ruling. On January 9, 2026, the Special Master

20   entered her Nov. 17 ruling on ECF. Dkt. 4965.

21

22

23

24   [3]    Those documents are:    JCCP_MDL_PRIVLOG006612,    JCCP_MDL_PRIVLOG006613, JCCP_MDL_PRIVLOG006614, JCCP_MDL_PRIVLOG006714, JCCP_MDL_PRIVLOG006832,

25   JCCP_MDL_PRIVLOG007165, JCCP_MDL_PRIVLOG007166, JCCP_MDL_PRIVLOG007167, JCCP_MDL_PRIVLOG007475, JCCP_MDL_PRIVLOG007476, JCCP_MDL_PRIVLOG007513,

26   JCCP_MDL_PRIVLOG007515, JCCP_MDL_PRIVLOG007553, JCCP_MDL_PRIVLOG007555, and JCCP_MDL_PRIVLOG039302. The Special Master found three documents could not be clawed

27   back because they were substantially identical to one of the 42 documents subject to waiver (JCCP_MDL_PRIVLOG110078,              JCCP_MDL_PRIVLOG110079,              and

28   JCCP_MDL_PRIVLOG110080).

### III. Legal Standard

A district court must decide *de novo* all objections to findings of fact and conclusions of law made by a Special Master. Fed. R. Civ. P. 53(f)(3)-(4).[4] Under the *de novo* standard of review, the court does not defer to the "lower court's ruling but freely consider[s] the matter anew, as if no decision had been rendered below." *U.S. v. Silverman*, 861 F.2d 571 (9th Cir. 1988). *De novo* review means the court must give Uber's objection a "fresh look" and "independently consider all of the evidence that the special master considered." *Sukumar v. Direct Focus, Inc.*, 349 Fed. Appx. 163, 165 (9th Cir. 2009).

### IV. Argument

The upshot of the Special Master's order is that Uber's inadvertent privilege de-designation of 42 documents, effected at a rapid pace following Judge Cisneros's sample privilege-dispute rulings, amounted to a waiver of privilege.

First, that conclusion is legally erroneous. It cannot be reconciled with Rule 502, operationalized by this Court through PTO 14, which together provide that disclosure of privileged documents does not constitute an automatic privilege waiver. Yet that is the exact effect of the Special Master's rejection of Uber's attempt to clawback inadvertently de-designated, privileged documents. This Court should sustain Uber's objection under Rule 502(d) and PTO 14.

Second, the Special Master's ruling rejecting clawback should be overruled because it was procedurally improper. Specifically, the Special Master relied upon and applied Judge Cisneros's earlier *sua sponte* blanket ruling that Uber waived privilege over all de-designated documents, thereby replicating Judge Cisneros's earlier procedural errors. Judge Cisneros rejected privilege categorically over all de-designated documents, without any privilege dispute pending before her and thereby deprived Uber of any opportunity to be heard.

---

[4] The order appointing the Special Master states that pursuant to "Rule 53(f)(3)-(5), the Court shall review findings of fact made or recommended by the Master for clear error." Dkt. 2302. Rule 53 (f)(3), however, provides that a court "must decide *de novo* all objections to findings of fact made or recommended by a master" unless the parties with the court's approval stipulate that the findings will be reviewed for clear error. Here the parties did not stipulate that findings of fact would be reviewed by clear error. The *de novo* standard of review provided in Rule 53(f)(3) therefore applies to both findings of fact and conclusions of law.

4

### A. The Special Master Substantively Erred in Finding That Uber May Not Claw Back Documents Because It Waived Privilege by Producing the Documents After a Re-Review.

#### i. Rule 502 Exists to Protect Against Waiver of Privilege.

Rule 502(d) enables federal courts to issue orders protecting parties from waiver of privilege or protection by merely producing documents in discovery–the exact circumstances underlying the Special Master's erroneous rejection of clawback here.

Rule 502(d) provides: "A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding."

Under the traditional, common-law rule, a party waives attorney-client privilege when it voluntarily discloses privileged information to a third party, including an adversary in litigation. By enacting Rule 502 in 2008, Congress substantially departed from the traditional rule by imposing limitations on the waiver by disclosure of the attorney-client privilege or work product protection in federal proceedings. Fed. R. Evid. 502, Advisory Committee Notes, Sept. 26, 2007 Committee Letter to Congress.[5] In his statement supporting the proposed legislation, co-sponsor Senator Specter remarked:

> Current law on attorney-client privilege and work product is responsible in large part for the rising costs of discovery-especially electronic discovery. Right now, it is far too easy to inadvertently lose or "waive" the privilege. A single inadvertently disclosed document can result in waiving the privilege not only as to what was produced, but as to all documents on the same subject matter. In some courts, a waiver may be found even if the producing party took reasonable steps to avoid disclosure. Such waiver will not just affect the case in which the accidental disclosure is made, but will also impact other cases filed subsequently in State or Federal courts.

S. Rep. No. 110-264, at 2 (2008).

Two key congressional purposes for enacting Rule 502 were: (1) mitigate the otherwise harsh consequence of waiver for mistaken disclosures, and (2) enhance predictability of the consequences

---

[5] See Pub. L. 110-322, § 1(a), Sept. 19, 2008. Unlike all other federal rules of procedure, rules governing evidentiary privilege must be approved by an affirmative act of Congress. See 28 U.S.C. § 2074 (b).

of disclosure of privilege information by creating the first uniform national rule on waiver-by-disclosure. *Id.* at 3; Fed. R. Evid. 502, Statement of Congressional Intent Regarding Rule 502.

Congress included two key provisions to accomplish those goals. First, Rule 502(b) sets a "default" procedure that only allows a party to claw back certain inadvertent disclosures. Specifically, Rule 502(b) provides that disclosure does not operate as a waiver only if the disclosure was inadvertent, occurred despite reasonable steps, and reasonable steps were taken to promptly rectify. Second, Rule 502(d) allows courts to "order that the privilege or protection *is not waived* by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." (emphasis added). In other words, Rule 502(d) orders allow courts to "supplant[] the default procedures set forth in Rule 502(b)." *Great-West Life & Annuity Ins. Co. v. American Economy Ins. Co.*, 2013 WL 5332410, at *11 (D. Nev. Sept. 23, 2013). Such "court order[s] may provide for return of documents without waiver *irrespective of the care taken by the disclosing party.*" Fed. R. Evid. 502, Advisory Committee's Note to subdivision (d) (emphasis added); *see also id.*, Statement of Congressional Intent Regarding Rule 502, Subdivision (d) - Court Orders (Rule 502(d) "is designed to enable a court to enter an order . . . that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, *while still preserving each party's right to assert the privilege* to preclude use in litigation of information disclosed in such discovery.") (emphasis added).

In this case, the Court operationalized the protections Rule 502(d) contemplates through PTO 14, as explained below.

### ii.    Production Does Not Result in Waiver of Privilege Under PTO No. 14.

Acting on its Rule 502(d) authority, this Court issued PTO 14 to ensure that mere production of privileged documents does not amount to automatic waiver.

Merely producing documents does not constitute waiver of privilege under Stipulated Pretrial Order 14, which provides:

> Pursuant to Federal Rule of Evidence 502(d), the production of **any** privileged or otherwise protected or exempted information in this case **shall not be deemed a waiver** or impairment of **any claim of privilege or protection** in this case or in any other federal or state proceeding, including,

6

but not limited to, the attorney-client privilege, the protection afforded to work production materials, statutory privileges and protections, or the subject matter thereof, as to the produced documents and any related materials.

PTO 14 at 2 (emphases added). And for clawback disputes specifically, PTO 14 further prohibits the party challenging the privilege from relying on "the fact or circumstances of disclosure" (PTO 14 ¶ 6), requiring instead that the clawback-opponent argue the *merits* of the privilege claim.

The non-waiver language of PTO 14 applies categorically to *all* document productions in this litigation: it does not even require inadvertence, *cf.* Fed. R. Evid. 502(b), or otherwise impose any limitations concerning how or during what stage of discovery the production occurred.

Further, PTO 14 provides a claw-back procedure for documents that have "been produced for which the Producing Party asserts privilege and/or other protection," regardless of whether such production was inadvertent. *Id.* at ¶ 4. The majority of courts interpret Rule 502(d) orders "allow[] a party to claw back privileged materials ***without regard to whether the disclosure was inadvertent***." *GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*, 2024 WL 4960008, at *4 (N.D. Miss. Dec. 3, 2024) (emphasis added); *Thomas v. Marshall Public School*, 690 F. Supp. 3d 941, 962 (D. Minn. 2023) (stating "Rule 502(d) allows a party who discloses privileged material to claw them back without having to prove the disclosure was 'inadvertent'"); *United States v. Hall*, No. 2020 WL 7027473, at *3 (N.D. Tex. Nov. 30, 2020) (finding Rule 502(d) applicable to privileged materials disclosed "inadvertently or purposefully"); *United States v. Caroleo*, 2019 WL 5869690, at *1 (E.D.N.Y. Nov. 11, 2019) ("Even if the disclosure is not 'inadvertent' under Rule 502(b), however, a court may nevertheless 'order that [the] privilege or protection is not waived by disclosure connected with the litigation . . . .'" (quoting Fed. R. Evid. 502(d)); *Brookfield Asset Management, Inc. v. AIG Financial Products Corp.*, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (holding that under stipulated Rule 502(d) order that no waiver of any applicable privilege would result from the defendant's production "of any documents in this proceeding," the defendant had a right to claw back privileged documents "no matter what the circumstances giving rise to their production were").[6]

---

[6] *See also, e.g.*, *Everest Nat'l Ins. Co. v. Am. Claims Mgmt., Inc.*, 2025 WL 2381475, at *5 (D.N.J. Aug. 15, 2025); *United States v. Hatfield*, 2010 WL 11551679, at *1 (E.D.N.Y. July 13, 2010);

7

That majority interpretation–permitting clawback categorically, without even requiring inadvertence–correctly applies Rule 502(d), which (unlike 502(b)) does not contain an inadvertence requirement. And it is consistent with the intent of the rule's drafters. Indeed, in the attached declaration, Professor Daniel Capra, the co-author of the text of Rule 502, author of the Committee Note to that Rule, and Reporter to the Judicial Conference Advisory Committee on Evidence Rules since 1996, confirms that:

> The Advisory Committee viewed Rule 502(d) as the most important provision in the rule [because] it provides parties a predictable protection that can be relied upon . . . That is why the Committee was of the view that a Rule 502(d) order could protect against waiver *even when disclosures are intentional*. The Advisory Committee clearly intended that Rule 502 (d) orders could cover intentional disclosures as well as mistaken ones. . . . Under Rule 502(d), protective orders—like the one in this case—are only effective when they approve procedures that would not pass muster if analyzed exclusively under Rule 502(b).

Ex. I at ¶¶ 4-5, 7 (emphasis added).

### iii. Purported Concerns About Serial Designation, De-designation, and Clawback Creating Delay and Inefficiency Do Not Justify Ignoring Rule 502(d).

While neither Magistrate Judge Cisneros nor the Special Master have provided the legal basis for the conclusion that Uber waived privilege despite the Rule 502 (d) order in this case, Judge Cisneros has noted "the clawback protocol on which Uber relies in Pretrial Order No. 14 did not contemplate Uber serially designating, de-designating, and re-designating documents as privileged in a manner that undermines the completion of discovery on any reasonable schedule." Dkt. 3545 at 8; *see also* Ex. J, April 24, 2025 Hr'g Tr. at 15:9-19 (Judge Cisneros stating that allowing clawbacks of de-designated documents would be "inefficient" and amount to "redoing" the "prior corpus of . . . documents that we worked through over the fall."). Those concerns about supposed delay and inefficiency are not only misguided, but also cannot justify ignoring the plain text and purposes of

---

*Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, 2009 WL 464989, at *4 (N.D. Tex. Feb. 23, 2009). As explained in more detail below, a minority of courts require a showing of *inadvertence* before permitting clawback under Rule 502(d). That minority view incorrectly applies the rule, but Uber would be entitled to clawback even under that reading, as its production was inadvertent. *See infra* at 9-12.

Rule 502(d) and PTO 14, which permit Uber to clawback privileged documents in these exact circumstances regardless of inadvertence.

Courts' inherent authority "to manage their own affairs" must yield "to any express grant of or limitation on the district court's power contained in a rule," like Rule 502(d). *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016). As explained above, PTO 14 plainly provides, as Rule 502(d) permits, that production of a document is not a waiver of privilege. Dkt. 396 ¶ 2. Neither Magistrate Judge Cisneros nor the Special Master have identified anything other than the review and production of documents that could constitute a waiver. But to treat mere review and production of documents as waiver would require ignoring PTO 14 and Rule 502(d), which prohibit treating mere production as waiver and provide a procedure to clawback privileged documents post-production. That result is impermissible, as PTO 14 "entitled [Uber] to rely on Rule 502(d) for the documents already produced" to permit clawback. *See, e.g.*, *Arconic Inc. v. Novelis Inc.*, 2019 WL 911417, at *2 (W.D. Pa. Feb. 26, 2019).[7]

A minority of courts apply an inadvertence requirement to 502(d) orders—notwithstanding its lack of textual support—for policy reasons, fearing that parties will otherwise "intentionally and tactically disclose protected materials during litigation, while preserving the ability to assert privilege when such tactics change." *E.g.*, *Smith v. Best Buy Stores, L.P.*, 2017 WL 3484158, at *4 (D. Idaho Aug. 14, 2017) (dicta).[8]

---

[7] Finding waiver in violation of the 502(d) order in PTO 14 violates due process and basic notions of fairness because it would effectively amend that order and apply the amendment retroactively, despite Uber's reliance on the non-waiver protections of the order. *Cf. Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *Reyes v. Garland*, 11 F.4th 985 (9th Cir. 2021); *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1355 (9th Cir. 2013); *United States v. Potts*, 528 F.2d 883, 886 (9th Cir. 1975); *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001).

[8] Many such cases are inapposite because they reject an argument much broader than the one Uber makes here, that no waiver is possible *by any means* when a 502(d) order is in place, even waiver by means other than mere disclosure and production. *See, e.g. Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 202 (E.D.N.Y. 2016); *Smith*, 2017 WL 3484158, at *4. For example, notwithstanding a 502(d) order, a party's "*offensive* introduction of [its own] privileged communication" in litigation "will likely constitute waiver, under the well-established doctrine that attorney-client privilege may not be used both as a sword and shield." *Epic Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943, 996 (N.D. Cal. 2025). Here Uber has not used the documents for any purpose and there is no basis for finding waiver other than Uber' review and production.

Those policy concerns not only must yield to the plain text of Rule 502(d), but they also have no application here. There is no evidence that Uber clawed back documents to engage in any type of gamesmanship or because it was acting "tactically" to gain an advantage in litigation, such as using the documents in support of a motion. *Smith*, 2017 WL 3484158, at *4. Instead, the goal of Uber's re-review was to ensure its privilege assertions better adhere to Judge Cisneros's sample rulings. But inevitably, that re-review was imperfect: some privileged documents were incorrectly de-designated. As a result, Uber has clawed back a small number of those documents-42 documents at issue representing 0.0024% of the 1.7 million produced–upon discovering the privileged productions.

Judge Cisneros's concerns about efficiency and delay from following PTO 14's clawback procedure are likewise misguided and inapplicable here. Indeed, there is *zero evidence* in the record of how the relevant clawbacks have meaningfully delayed the case schedule. The Court's procedures sufficiently guard against any delay, given that any clawback notices must be made within 21 days of discovery and can be challenged by Plaintiffs under Special Master Order No. 4 (Dkt. 2933). If Plaintiffs do not challenge the clawback, that ends the matter–no inefficiency or delay will materialize. The Special Master procedures have allowed any challenge to be resolved quickly. But for the blanket waiver ruling, the clawbacks at issue could have been resolved on the merits months ago.

### iv.    Uber's Disclosures Were Inadvertent.

Even if the minority view were correct that the inadvertence requirement must be met to avoid waiver by production under Rule 502(d) orders, Uber would still be entitled to clawback.  Uber's production of later-clawed back documents was inadvertent, regardless of the fact that attorneys had reviewed the documents prior to de-designation.

"An 'inadvertent disclosure' is simply where the work-product protected [or privileged] document was produced as the result of a mistake."  *B&G Foods North America, Inc. v. Embry*, 2024 WL 922900, at *2 (E.D. Cal. March 4, 2024). "[A] document may be produced inadvertently even after review and redaction."  *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *7 (E.D. Va. July 16, 2019) (collecting cases); *Guidiville Rancheria of California v. United States*, 2013 WL 6571945, at *4 (N.D. Cal. Dec. 13, 2013).  This is because "the 'inadvertence' requirement of Rule 502(b) was not designed to turn on fine distinctions based on the nature of the mistake to determine

10

whether the particular type of mistaken disclosure qualifie[s] for protection from waiver." *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *3 (N.D. Cal. March 11, 2011); *see also United States v. United Health Grp., Inc.*, 2020 WL 10731257, at *3 (C.D. Cal. Nov. 9, 2020). Therefore, an intentional production of documents qualifies as inadvertent disclosure if it is the result of a mistake. *Datel*, 2011 WL 866993, at *3. This comports with the purpose of Rule 502(b). "[T]he point of Rule 502(b) is to protect clients' confidences from their lawyers' human errors." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 406 (7th Cir. 2018). As one court explained:

> [T]o find that a document disclosed by a lawyer is never inadvertent would vitiate the entire point of Rule 502(b). Concluding that a lawyer's mistake never qualifies as inadvertent disclosure under Rule 502(b) would gut that rule like a fish. It would essentially reinstate the strict waiver rule in cases where lawyers reviewed documents, and it would create a perverse incentive not to have attorneys review documents for privilege.

*Amobi v. District of Columbia Dept. of Corrections*, 262 F.R.D. 45, 54 (D.D.C. 2009); *see also Hatfield v. Bonneville Cnty.*, 2025 WL 358441, at *6 (D. Idaho Jan. 31, 2025).

These cases are consistent with the intent of the rule's drafters, who "by that term, intended to cover any disclosure that was mistaken. The term 'inadvertent' was taken from prior case law . . . . That case law covered all disclosures that the producing party claimed to be a mistake." Ex. I, ¶ 11 (Prof. Capra Decl.).

While nothing more than a mistake is required to establish inadvertence, courts also take account of the realities of large-scale discovery when determining whether a disclosure was inadvertent.[9] *Pac. Coast Steel v. Leany*, 2011 WL 4704217, at *5 (D. Nev. Oct. 4, 2011) ("The scope

---

[9] Some courts have distinguished between two approaches to the inadvertence analysis under Rule 502(b)(1), the first approach considering "if the party intended to produce a privileged document or if the production was a mistake," and the second approach conducting a "totality of the circumstances" analysis that, in effect, determines whether the disclosure was both inadvertent *and* reasonable based on factors like the precautions taken to prevent the inadvertent disclosure and efforts to rectify it. *Amobi*, 262 F.R.D. at 53; *see also T&W Holding Co., LLC v. City of Kemah, Texas*, 641 F. Supp. 3d 378, 382 (S.D. Tex. 2022); *Pac. Coast Steel v. Leany*, 2011 WL 4704217, at *4 (D. Nev. Oct. 4, 2011) (totality of the circumstances approach). Most courts have rejected the second approach, noting that this analysis conflates the 502(b)(2) and (3) factors ("reasonable steps to prevent" and "reasonable steps to rectify" the inadvertent disclosure) with the 502(b)(1) inadvertence factor, and that the first, simpler approach is more consistent with the language of the rule. *E.g.*, *Amobi*, 262 F.R.D. at 53-54. However, courts using the simpler "mistake" inadvertence standard can still consider the

11

of the discovery . . . in this case also weighs in favor of finding the documents were inadvertently disclosed. Plaintiffs produced more than 2.3 million pages of documents."). "Such errors are, of course, inevitable in complex litigation involving the production of tens of thousands of documents." *BNP Paribas Mortg. Corp. v. Bank of America N.A.*, 2013 WL 2322678 at *8 (S.D.N.Y. May 21, 2013). As such, "[c]ourts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver." *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 1988 WL 138254, at *5 (E.D.N.Y. Dec. 19, 1988); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008).

Indeed, under similar circumstances, Judge Hixson of this District found that Apple inadvertently disclosed and was entitled to clawback two documents it de-designated following a re-review because:

> Epic cites no authority for the proposition that inadvertence does not include an intentional but mistaken decision by a human document reviewer. The question, after all, is whether Apple deliberately produced a document, not whether one particular document reviewer deliberately decided these documents should have been redacted rather than withheld in full. Apple used a large team of reviewers to make privilege calls on large numbers of documents, and a mistake does not mean that the company deliberately produced the document.

*Epic Games, Inc. v. Apple, Inc.*, Case No. 20-cv-05640-YGR (TSH), 2025 U.S. Dist. LEXIS 34007 (N.D. Cal. Feb. 25, 2025).

Here too, certain documents were produced by reviewing attorneys who did not appreciate the privileged nature during review or who simply made a mistake in applying redactions or coding a document–a common occurrence in any large-scale, time-pressured document production as illustrated by the above authority. Uber did not intend to produce privileged documents and waive its privilege. In fact, the content of the documents at issue confirms that privileged content was inadvertently produced. For example, JCCP_MDL_PRIVLOG007423 and JCCP_MDL_PRIVLOG006832 are email threads that were produced in full on March 8, 2025. While the last emails in each thread are

---

circumstances and context of a disclosure, such as the large scope and timing of discovery, to determine whether a disclosure of privileged documents was, in fact, a mistake. *See, e.g.*, *Patagonia, Inc. v. Anheuser Busch, LLC*, 2020 WL 12048989, at *1 (C.D. Cal. Sept. 29, 2020) (finding disclosure of narrowly redacted documents was inadvertent in "a major case with massive document discovery and production, posing a major challenge to review of documents for privilege").

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

between non-lawyers only, the thread includes earlier emails to and from Aaron Brand, then-Legal Director, Mobility Product Counsel Team. These documents were clawed back and reproduced on May 16 and June 16 to apply redactions to the legal advice requested from and provided by Mr. Brand. Plaintiffs have never disputed the privileged nature of the redacted communications to and from Mr. Brand.

Another example is JCCP_MDL_PRIVLOG057200, an email thread that was produced in full on March 8, 2025. Shortly thereafter, it was discovered that the document was produced and mistakenly did not contain the necessary redactions. It was clawed back and reproduced with redactions on April 18, 2025. Limited redactions have been applied to messages to and from Scott Binnings, Uber's Associate General Counsel.

As a result of the Special Master's erroneous ruling denying clawback, Uber is unfairly deprived of its bedrock right to attorney-client privilege and work-product protection even though Plaintiffs have not challenged the underlying merits of Uber's clawback.

**B.    The Special Master's Finding of Waiver Was Erroneous Because It Followed and Applied Magistrate Judge Cisneros's Procedurally Improper *Sua Sponte*, Blanket Ruling on Waiver by Disclosure.**

The Special Master's ruling rested on the finding "that the same principles applied by Judge Cisneros in her April 24, 2025 and July 22, 2025 orders apply to the 42 documents de-designated after February 6, 2025 and Uber may not claw back those documents." Dkt. 4965; Ex. E. By relying upon and applying Magistrate Judge Cisneros's *sua sponte* blanket ruling, the Special Master's ruling sweeps in the procedural and due process errors of that blanket ruling.

First, the issue was not properly before Magistrate Judge Cisneros as the blanket privilege ruling was made with no pending clawback challenge dispute before her. PTO 14 governs clawback disputes in this litigation and provides specific procedural mechanisms for resolving them. *Northwest Acceptance Corp. v. Lynwood Equipment, Inc.*, 841 F.2d 918, 924 (9th Cir. 1988) ("A pretrial order . . . controls the subsequent course of action in the litigation."). PTO 14 prescribes a procedure for a producing party to notify the receiving party that it produced a document for which it asserts privilege. The receiving party then can contest the assertion of privilege by providing a written "Notice of

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER                    Case No. 3:23-MD-3084-CRB

Clawback Challenge." The parties then go through a conferral period. If the conferral does not resolve the dispute, the parties are required to submit the issue to the Court by filing a "joint letter brief." Dkt. 396 ¶¶ 4-6.

None of that happened here. The general topic of clawbacks *procedures* was mentioned by Plaintiffs in a Joint Status Report, along with many other discovery topics. Plaintiffs made no substantive challenge to documents Uber had clawed back. Joint Status Report (Dkt. 2823) at 2-3. Plaintiffs never mentioned waiver—neither in the Joint Status Report nor at the Status Conference. Nevertheless, the Court found Uber's de-designation decisions constituted a waiver of its attorney-client or work-product privilege before Uber was given an opportunity to argue against waiver. Ex. J, April 24, 2025 Hr'g Tr. at 9:18–19. This is directly contrary to PTO 14's clawback dispute resolution procedures.

Second, and relatedly, the blanket ruling was improper because it was made *sua sponte* without an opportunity for Uber to be heard on an important issue with wide implication. To allow litigants the full and fair opportunity to be heard, courts generally disfavor *sua sponte* review. *See, e.g., Lewis v. Woodford*, 2007 WL 196635, at *20 n.12 (E.D. Cal. Jan. 23, 2007). "There are, however, several respects in which the Federal Rules allow the district court, *with appropriate notice*, to raise issues *sua sponte*." *Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (emphasis added). Further, "[a] court *may only* grant a motion *sua sponte* if all parties have a full opportunity to address the issue." *Mead Reinsurance v. Granite State Ins. Co.*, 873 F.2d 1185, 1189 (9th Cir. 1988) (emphasis added); *see also Heinz v. C.I.R.*, 770 F.2d 874, 876 (9th Cir. 1985).

The due process problems with a *sua sponte* ruling are only heightened when a court determines whether a party has waived attorney-client privilege. "[T]he **attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges**, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) (emphasis added). Indeed, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Thus, "[w]hether express or implied, the scope of a waiver must be *narrowly construed* and 'fit within the confines of the waiver.'"

14

1    *Garcia v. Progressive Choice Ins. Co.*, 2012 WL 3113172, at *3 (S.D. Cal. July 30, 2012) (emphasis

2    added).

3        By rejecting Uber's clawbacks *sua sponte*, without an opportunity to be heard, Judge

4    Cisneros's order violated Uber's due process right to notice and an opportunity to be heard on the

5    matter.[10] Uber neither had notice that waiver would be raised at the Status Conference before Judge

6    Cisneros nor a fair opportunity to address the issue. In short, Uber did not have the "full opportunity

7    to address the issue" necessary for the Court to raise and rule on waiver of the attorney-client and

8    attorney work-product protections *sua sponte*.[11] And while the Special Master allowed Uber the

9    opportunity to be heard, she rested her decision on the blanket ruling that violates due process,

10    effectively replicating Judge Cisneros's earlier procedural errors.

11    **V.    Conclusion**

12        The Special Master's order and its reliance on Magistrate Judge Cisneros's orders denied Uber

13    of substantive rights afforded under PTO 14's non-waiver provision. Uber respectfully requests that

14    the Court vacate the Special Master's January 9, 2026 order and direct her to decide Uber's clawback

15    privilege claims on the merits.

16

17

18    [10] Those errors were magnified by the fact that Judge Cisneros opted to resolve Uber's privilege

19    dispute through a categorical, blanket ruling, rather than on a document-by-document basis.  As a
      mixed question of fact and law, "waiver of the attorney-client privilege favors a case-by-case
      determination of waiver based on a consideration of all the circumstances." *Eureka Financial Corp.*

20    *v. Hartford Acc. and Indem. Co.*, 136 F.R.D. 179, 184 (E.D. Cal. 1991); *see also United States v.*

21    *Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (mixed question); *Hernandez v. Tanninen*, 604
      F.3d 1095, 1101 (9th Cir. 2010). The Magistrate Judge did not consider the specific factual

22    circumstances concerning Uber' de-designations or clawback of certain documents. Nor did Uber have
      the opportunity to develop, brief, or present its legal arguments that its de-designations do not

23    constitute waiver before the Magistrate Judge made the blanket ruling.

      [11] Even assuming that the parties' mention of clawback procedures in the Status Report was sufficient

24    to allow Magistrate Judge Cisneros to rule on waiver *sua sponte* without violating due process (and it

25    was not), the ruling would still be improper because Plaintiffs themselves forfeited the potential
      privilege-waiver argument by not asserting it. *See Redd v. Guerrero*, 84 F.4th 874, 892 (9th Cir. 2023)

26    ("[T]his court will not address waiver if not raised by the opposing party." (quoting *United States v.*
      *Doe*, 53 F.3d 1081, 1082 (9th Cir. 1995)); *United States v. Garcia-Lopez*, 309 F.3d 1121, 1123 (9th

27    Cir. 2002) (noting that a party "can 'waive waiver' implicitly by failing to assert it"); *cf. United States*
      *v. Sainz*, 933 F.3d 1080 (9th Cir. 2019) (reversing based on district court raising *sua sponte* defendant's

28    waiver of right to seek sentence reduction).

DATED: January 14, 2026                    Respectfully submitted,

                                           **SHOOK HARDY & BACON L.L.P.**

                                           By: */s/ Maria Salcedo*
                                                  Maria Salcedo

                                           **KIRKLAND & ELLIS LLP**
                                           LAURA VARTAIN HORN
                                           ALLISON M. BROWN

                                           **O'MELVENY AND MYERS LLP**
                                           SABRINA STRONG
                                           JONATHAN SCHNELLER

                                           **SHOOK, HARDY, & BACON, LLP**
                                           PATRICK OOT (Admitted *Pro Hac Vice*)
                                              oot@shb.com
                                           1800 K St. NW Ste. 1000
                                           Washington, DC 20006
                                           Telephone: (202) 783-8400
                                           Facsimile: (202) 783-4211

                                           ALYCIA A. DEGEN (SBN: 211350)
                                              adegen@shb.com
                                           MICHAEL B. SHORTNACY (SBN: 277035)
                                              mshortnacy@shb.com
                                           2121 Avenue of the Stars, Suite 1400
                                           Los Angeles, CA 90067
                                           Telephone: (424) 285-8330
                                           Facsimile: (424) 204-9093

                                           CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
                                              ccotton@shb.com
                                           JENNIFER HILL (Admitted *Pro Hac Vice*)
                                              jshill@shb.com
                                           MARIA SALCEDO (Admitted *Pro Hac Vice*)
                                              msalcedo@shb.com
                                           **SHOOK, HARDY & BACON L.L.P.**
                                           2555 Grand Blvd.
                                           Kansas City, MO 64108
                                           Telephone: (816) 474-6550
                                           Facsimile: (816) 421-5547

                                           *Attorney for Defendants*
                                           UBER TECHNOLOGIES, INC.,

16

RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' OBJECTION TO SPECIAL MASTER'S ORDER          Case No. 3:23-MD-3084-CRB

**EXHIBIT A**

| Privilege Log Number |
| --- |
| JCCP_MDL_PRIVLOG006153 |
| JCCP_MDL_PRIVLOG058772 |
| JCCP_MDL_PRIVLOG005511 |
| JCCP_MDL_PRIVLOG007033 |
| JCCP_MDL_PRIVLOG059502 |
| JCCP_MDL_PRIVLOG024087 |
| JCCP_MDL_PRIVLOG009470 |
| JCCP_MDL_PRIVLOG006133 |
| JCCP_MDL_PRIVLOG016154 |
| JCCP_MDL_PRIVLOG016161 |
| JCCP_MDL_PRIVLOG016164 |
| JCCP_MDL_PRIVLOG017899 |
| JCCP_MDL_PRIVLOG017900 |
| JCCP_MDL_PRIVLOG005512 |
| JCCP_MDL_PRIVLOG059680 |
| JCCP_MDL_PRIVLOG059681 |
| JCCP_MDL_PRIVLOG059682 |
| JCCP_MDL_PRIVLOG059683 |
| JCCP_MDL_PRIVLOG059684 |
| JCCP_MDL_PRIVLOG059685 |
| JCCP_MDL_PRIVLOG023201 |
| JCCP_MDL_PRIVLOG043587 |

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| JCCP_MDL_PRIVLOG007423 |
| JCCP_MDL_PRIVLOG057200 |
| JCCP_MDL_PRIVLOG057551 |
| JCCP_MDL_PRIVLOG057552 |
| JCCP_MDL_PRIVLOG006612 |
| JCCP_MDL_PRIVLOG006613 |
| JCCP_MDL_PRIVLOG006614 |
| JCCP_MDL_PRIVLOG006832 |
| JCCP_MDL_PRIVLOG006714 |
| JCCP_MDL_PRIVLOG007165 |
| JCCP_MDL_PRIVLOG007166 |
| JCCP_MDL_PRIVLOG007167 |
| JCCP_MDL_PRIVLOG007475 |
| JCCP_MDL_PRIVLOG007476 |
| JCCP_MDL_PRIVLOG007553 |
| JCCP_MDL_PRIVLOG007555 |
| JCCP_MDL_PRIVLOG039302 |
| JCCP_MDL_PRIVLOG007513 |
| JCCP_MDL_PRIVLOG007515 |
| JCCP_MDL_PRIVLOG014929 |

2