# EXHIBIT D



September 10, 2025

Hon. Barbara Jones (Ret.)
Bracewell LLP
31 W. 52nd Street, Suite 1900
New York, NY 10019-6118
barbara.jones@bracewell.com

Maria R. Salcedo

2555 Grand Blvd.
Kansas City, Missouri 64108
**t** 816.474.6550
**d** 816.559.2689
**f** 816.421.5547
msalcedo@shb.com

Dear Judge Jones,

Defendants submit this letter brief in response to your September 3, 2025, ruling. Defendants ask that the Special Master reject Plaintiffs' request to expand the scope of Judge Cisneros's April 24, 2025 Order (Dkt. 2855) finding that Defendants waived their right to clawback documents that were de-designated while Judge Cisneros was overseeing privilege disputes for at least three reasons. First, this issue impacts a sacred legal protection that the Special Master can and should decide *de novo*. Second, Defendants are entitled to the protections of Pretrial Order No. 14, which provides that production of "any" privileged material shall not be deemed a waiver. Finally, concerns of inefficiency and delay have not borne out given the small number of documents at issue, and even if those concerns were supported by the record, they do not justify stripping Defendants of their attorney-client and work-product protections.

I.   **The Special Master Should Decide This Issue** *De Novo*

As a threshold matter, the Special Master is not bound to adopt Judge Cisneros's waiver ruling. Judge Cisneros's April 24 Order specifically states the Court's ruling does not apply to documents de-designated after the Special Master was appointed. Whether the ruling would apply to documents de-designated since the Special Master has overseen privilege disputes was explicitly referred to the Special Master to decide. *See* April 24 Order (Dkt. 2855) ("Whether that principle applies to documents de-designated after privilege issues were referred to Judge Jones is a question for Judge Jones.").

SHOOK
HARDY & BACON

September 10, 2025
Page 2

Thus, the issue of whether a blanket waiver applies to documents after the appointment of the Special Master can and should be decided *de novo*.[1]

Free to examine the appropriateness of the Defendants' post-February clawbacks *de novo*, the Special Master should consider the core principle of attorney-client privilege, the express language of PTO 14 which allows for clawbacks regardless of when they happen within the review process, whether clawbacks of de-designated documents will delay discovery, and the merits of the underlying privilege claim for each document. All of these factors counsel towards a finding that the documents at issue were appropriately clawed back.

"[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). Indeed, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Consequently, "[w]hether express or implied, the scope of a waiver must be *narrowly construed* and 'fit within the confines of the waiver.'" *Garcia v. Progressive Choice Ins. Co.*, 2012 WL 3113172, at *3 (S.D. Cal. July 30, 2012) (quotation omitted) (emphasis added). Waiver of privilege is inappropriate for a blanket rule, but rather should be analyzed in a fact-specific manner. Indeed, "[w]hether a privilege has been waived is a mixed question of fact and law." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (emphasis added). Accordingly, "waiver of the attorney-client privilege favors a case-by-case determination of waiver based on a consideration of all the circumstances." *Eureka Financial Corp. v. Hartford Acc. and Indem. Co.*, 136 F.R.D. 179, 184 (E.D. Cal. 1991) (citing *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 329 (N.D. Cal. 1985)).

For the reasons outlined below, Defendants respectfully request that the Special Master find Defendants have not categorically waived their right to claw back documents that were de-designated after February 6, 2025.

---

[1] Respectfully, Judge Cisneros initially issued her April 24 order orally from the bench during a status conference without the benefit of briefing or argument on the applicable law or the factual circumstances concerning the de-designation or clawback of the documents at issue (which were not specifically identified at the time of the conference). While the Court may have taken this approach for efficiency and to avoid a perceived potential delay in the case schedule, these factors do not warrant such a result in the instant case in front of the Special Master as these clawbacks will not delay discovery. Moreover, as discussed in more detail below, a finding by the Special Master that Defendants have waived their ability to clawback the instant documents would cause great prejudice to Defendants, sacrificing a bedrock legal protection that was explicitly provided in PTO No. 14.



## II. The Governing Pretrial Order (No. 14) Explicitly Provides that Production of *Any* Privileged Material *Shall* Not Be Deemed a Waiver

September 10, 2025
Page 3

PTO No. 14 provides, "Pursuant to Federal Rule of Evidence 502(d), the production of ***any*** privileged or otherwise protected or exempted information in this case ***shall not be deemed a waiver or impairment*** of any claim of privilege or protection in this case . . . ." PTO 14 ¶ 2 (emphases added). This non-waiver provision applies to ***any*** production of privileged or protected information; there is no limitation concerning de-designation following a re-review. A categorical finding of waiver for documents Uber de-designated after February 6, 2025 would directly contradict this order.

Judge Cisneros's finding that Uber waived privilege for documents it de-designated following a re-review while the Court was overseeing privilege disputes in essence turned this clear Rule 502(d) non-waiver provision into a Rule 502(b) provision, which provides a different, inapplicable, legal standard.

Federal Rule of Evidence 502(b) sets a "default" procedure that only allows a party to claw back certain inadvertent disclosures. Specifically, Rule 502(b) provides that production does not operate as a waiver only if the disclosure was inadvertent, occurred despite reasonable steps, and reasonable steps were taken promptly to rectify. Rule 502(d), however, allows the court to "order that the privilege or protection ***is not waived*** by disclosure connected with the litigation pending before the court." (emphasis added). In other words, Rule 502(d) orders can "supplant[] the default procedures set forth in Rule 502(b)." *Great-West Life & Annuity Ins. Co. v. American Economy Ins. Co.*, No. 2:11–cv–02082–APG–CWH, 2013 WL 5332410, at *11 (D. Nev. Sept. 23, 2013) (finding Rule 502(d) order supplanted Rule 502(b) where "it outline[d] specific action required from the receiving party when it receive[d] information subject to a claim of privilege after inadvertent production."). The Advisory Committees Notes further explain, "[T]he court order may provide for return of documents without waiver *irrespective of the care taken by the disclosing party*." Fed. R. Evid. 502, Advisory Committee's Note to subdivision (d) (emphasis added). Indeed, "Rule 502(d) permits courts to enter orders that provide that a disclosure does not constitute a waiver–*regardless of the actions taken by the producing party*" and "avoid any question about whether [it] was inadvertent." The Sedona Conference, *The Sedona Conference Commentary on Protection of Privileged ESI*, 17 SEDONA CONF. J. 95, 104 (2016) (emphasis added); *see also* The Sedona Conference, *The Sedona Conference Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders*, 23 Sedona Conf. J. 1, 25 (2022) ("[T]he text of Rule 502(d) is not limited to 'inadvertent' disclosures . . . . [T]he risk that the court will engage in a Rule 502(b) analysis to determine whether a disclosure was or was not inadvertent . . . is one of the principal problems with 502(b) that 502(d) eliminates.").

**SHOOK**
HARDY & BACON

September 10, 2025
Page 4

Here, PTO 14 invokes Rule 502(d) to supplant the default procedures in Rule 502(b). PTO 14 ¶ 2. By its plain language, the non-waiver provision does not require inadvertence. Further, PTO 14 provides a procedure to claw back documents that have "been produced for which the Producing Party asserts privilege and/or other protection," regardless of whether such production was inadvertent. *Id.* at 4. Several courts have found similar orders pursuant to Rule 502(d) "allow[] a party to claw back privileged materials *without regard to whether the disclosure was inadvertent.*" *GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*, 2024 WL 4960008, at *4 (N.D. Miss. Dec. 3, 2024) (emphasis added); *United States v. Hall*, No. 3:18-CR-623-S, 2020 WL 7027473, at *3 (N.D. Tex. Nov. 30, 2020) (finding Rule 502(d) applicable to privileged materials disclosed "inadvertently or purposefully"); *United States v. Caroleo*, No. 17-cr-177 (ENV), 2019 WL 5869690, at *1 (E.D.N.Y. Nov. 11, 2019) ("Even if the disclosure is not 'inadvertent' under Rule 502(b), however, a court may nevertheless 'order that [the] privilege or protection is not waived by disclosure connected with the litigation pending before the court.'") (quoting Fed. R. Evid. 502(d)); *Brookfield Asset Management, Inc. v. AIG Financial Products Corp.*, No. 09 Civ. 8285(PGG)(FM), 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (holding that under stipulated Rule 502(d) order that no waiver of any applicable privilege would result from defendants' production "of any documents in this proceeding," defendants had right to claw back privileged documents "no matter what the circumstances giving rise to their production were").

Even if inadvertence was required (and it is not), Uber's de-designation of certain documents was inadvertent under the circumstances, regardless of the fact that attorneys had reviewed the documents prior to de-designation. "An 'inadvertent disclosure' is simply where the work-product protected document was produced as the result of a mistake." *B&G Foods North America, Inc. v. Embry*, 2024 WL 922900, at *2 (E.D. Cal. March 4, 2024). "[A] document may be produced inadvertently even after review and redaction." *In re Zetia (Ezetimibe) Antitrust Litig.*, MDL No. 2:18md2836, 2019 WL 6122012, at *7 (E.D. Va. July 16, 2019) (collecting cases). This is particularly true where, as here, "'[s]uch errors are, of course, inevitable in complex litigation involving the production of tens of thousands of documents.'" *BNP Paribas Mortg. Corp. v. Bank of America N.A.*, Nos. 09 Civ. 9783(RWS), 09 Civ. 9784(RWS), 2013 WL 2322678, at *8 (S.D.N.Y. May 21, 2013) (quotation omitted). As such, "Courts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver." *Baker's Aid v. Hussmann Foodservice Co.*, No. 87 Civ. 0937, 1988 WL 138254, at *5 (E.D.N.Y. Dec. 19, 1988).

Indeed, under similar circumstances, Judge Thomas Hixson of this District found that Apple inadvertently disclosed and was entitled to clawback two documents it de-designated following a re-review process because:



September 10, 2025
Page 5

> Epic cites no authority for the proposition that inadvertence does not include an intentional but mistaken decision by a human document reviewer. The question, after all, is whether Apple deliberately produced a document, not whether one particular document reviewer deliberately decided these documents should have been redacted rather than withheld in full. Apple used a large team of reviewers to make privilege calls on large numbers of documents, and a mistake does not mean that the company deliberately produced the document.

*Epic Games, Inc. v. Apple, Inc.*, Case No. 20-cv-05640-YGR (TSH), 2025 U.S. Dist. LEXIS 34007 (N.D. Cal. Feb. 25, 2025).

Uber has produced approximately 1.7 million documents in this litigation. Due to the large number of documents and compressed timeline for review, certain documents were produced as a result of decisions by reviewing attorneys who had an incomplete and/or incorrect understanding of the documents. Uber did not intend to produce privileged documents and waive privilege.

### III. Clawbacks of De-Designated Documents Have Not Delayed, and Will Not Delay, Discovery

Neither the April 24 Order nor the July 22 order denying leave to move for reconsideration provided any legal support for the Court's blanket waiver finding. Rather, the driving principles behind Judge Cisneros's April 24 Order were factual in nature; they were concerns that: (1) allowing clawbacks of de-designated documents would be "inefficient" and amount to "redoing" the "prior corpus of . . . documents that we worked through over the fall," April 24 Hr'g Tr. at 15:9-19, and (2) "serially designating, de-designating, and re-designating documents as privileged" would prevent the parties from completing discovery on a reasonable schedule. *See* Dkt. 3545 at 8. Defendants respectfully submit that those concerns are not supported by the factual record, but even if they were, they do not justify stripping Defendants of their privilege and work product protections here.

As a preliminary matter, Defendants have clawed back an exceedingly small fraction of the 1.7 million documents produced in this litigation and have done so only when they believe in good faith that a clawback is necessary to maintain a fundamental legal protection. Specifically, the 46 documents at issue here represent only 0.0027% of the total number of documents produced in this case. While Plaintiffs speculated that "thousands of additional entries may be clawed back" (Dkt. 3490 at 3), in reality, the volume has been, and remains, small.

Other than speculating about thousands of additional clawbacks, the only concern Plaintiffs have articulated about how documents that have actually

**SHOOK**
HARDY & BACON

September 10, 2025
Page 6

been clawed back might affect the case schedule relates to the expert reports due on September 12. *See* Pls.' August 26, 2025 Submission to the Special Master, p. 2. While the parties have, from time to time, identified for the Special Master certain documents for which a privilege determination was particularly time-sensitive, Plaintiffs have never requested to do the same for any of these 46 documents despite multiple invitations to do so from Defendants, and direction from the Special Master on September 3rd.

Plaintiffs have not even challenged the merits of Defendants' privilege claim for 40 of the 46 documents at issue.[2] For these 40 documents, Plaintiffs' sole argument is that Defendants should be procedurally foreclosed from exercising their clawback rights. In essence, Plaintiffs seek to capitalize on Defendants' good faith efforts to re-review documents and apply prior court rulings to resolve privilege disputes and to facilitate the completion of document production at the aggressive schedule set by the Court. While Judge Cisneros issued her waiver ruling to avoid the perceived inefficiency of revisiting privilege claims that were subject to an earlier review, in reality, there are very few privilege claims that would require adjudication. This is because Defendants have clawed back very few documents, and the majority of those documents are not subject to substantive challenges.

Of the six documents that Plaintiffs have challenged on the merits, there is an existing process to resolve these narrow disputes in a timely fashion. Indeed, any challenges to these documents would have been subject to the existing privilege dispute process under Master Orders Nos. 2-4. None of those orders contemplate that Defendants' privilege protection would be waived for procedural reasons.

PTO 14 provides Rule 502(d) protections for clawbacks in this circumstance for good reason. For example, four of the six documents that Plaintiffs have challenged on the merits were part of a set of documents that were compiled by counsel, or at the direction of counsel, to prepare an Uber witness for deposition. Neils Melius, Uber's Senior Counsel, Litigation, provided a declaration on June 26, 2025, which described the origin of these documents. Dkt. 3363-1. Mr. Melius explained that the documents were compiled in a tabbed binder, and each file name begins with a "TAB" number. *Id.* Each of these four documents include highlighting from outside counsel at the law firm

---

[2] As to one document, JCCP_MDL_PRIVLOG014929, Plaintiffs apparently dropped their challenge prior to submission to the Special Master. This document was included on Plaintiffs' initial list of challenges provided to defense counsel on June 12, but not on their corresponding list of challenges provided to the Special Master on June 23. Indeed, Plaintiffs' chart of "disputed and submitted documents," sent to the Special Master on August 26, 2025, indicates that this document was not sent to the Special Master. *See* Row 51, Column D.

SHOOK
HARDY & BACON

September 10, 2025
Page 7

A&O Shearman. *Id.* Based on these facts, the Special Master determined that other documents in the same compilation of deposition preparation materials were privileged and could be withheld in full. *See* Master Privilege Determinations, June 5 Clawback Notice (Aug. 27, 2025). However, the facts that Mr. Melius provided in his June 26 declaration, which the Special Master considered in finding similar documents to be privileged, were not available to the document reviewers who marked these documents for de-designation in March 2025.

The Special Master's procedures have allowed any clawback challenges to be resolved quickly and without impacting the overall case schedule. Concerns of efficiency do not justify further denying Defendants of privilege and work product protections.

For these reasons, Defendants respectfully request that the Special Master decline to expand the scope of Judge Cisneros's waiver order.

Respectfully submitted,

Maria Salcedo

cc:  Rachel Goldman, rachel.goldman@bracewell.com
Tom Kokalas, thomas.kokalas@bracewell.com
Daniel Connolly, daniel.connolly@bracewell.com
Rebecca Foxwell, rebecca.foxwell@bracewell.com
Andrew Jacobs, andrew.jacobs@bracewell.com
David Ball, david.ball@bracewell.com

Roopal Luhana, luhana@chaffinluhana.com
Geoffrey Spaulding, spaulding@chaffinluhana.com
Rachel Abrams, rabrams@peifferwolf.com
Reenee Gangopadhyay, gangopadhyay@chaffinluhana.com
Sarah London, slondon@girardsharp.com
Steven Cohn, cohn@chaffinluhana.com
Tiffany Ellis, tellis@peifferwolf.com
Veronica Stewart, vstewart@peifferwolf.com