# EXHIBIT G

LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

*[Additional Counsel Listed on Following Pages]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:23-md-03084-CRB |
| | **DEFENDANT UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES** |
| This Document Relates to: | |
| ALL ACTIONS | |

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

Defendants Uber Technologies, Inc., Rasier, LLC, and Rasier-CA LLC respectfully submit the following objections to the Special Master's September 30, 2025 and October 7, 2025 rulings on Defendants' waiver of attorney-client privilege and attorney work product protection.[1]

\* \* \* \* \*

As a Rule of substance over procedure, Congress enacted Federal Rule of Evidence 502(d) to allow courts to issue orders providing that disclosure of documents in litigation does not constitute waiver of privilege. Orders issued under 502(d) provide much broader protection from waiver than the default provision in 502(b). The Court issued a broad 502(d) order in PTO No. 14 in this litigation providing that "the production of any privileged or otherwise protected … information in this case shall not be deemed a waiver or impairment of any claim of privilege or protection in this case."

With no pending clawback dispute before her and no briefing from the parties, Magistrate Judge Cisneros ruled *sua sponte* at a status conference that Defendants waived privilege and could not claw back *any* of the tens of thousands of documents it previously re-reviewed, de-designated, and produced. Defendants have only attempted to claw back a small number of these documents. To this day, Magistrate Judge Cisneros has not issued any order articulating the legal basis for her *sua sponte* blanket waiver ruling or how it could be consistent with the Court's Rule 502(d) order. The Special Master followed this ruling and applied the principles of Magistrate Judge Cisneros's ruling to documents de-designated and produced after her appointment. As Defendants explain below, under 502(d) and the 502(d) order here, Defendants' re-review and production of documents was not a waiver of privilege, even if the inadvertence requirement of 502(b)(1) were required to avoid waiver notwithstanding the 502(d) order.

The upshot of these rulings is that Defendants have been deprived of their legal rights as to dozens of indisputably privileged documents produced by mistake as part of Defendants' good faith privilege re-review of tens of thousands of documents. Defendants respectfully object to the Special

---

[1] For purposes of preserving future review, Defendants also object to the related September 3, 2025 ruling from the Special Master.

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

1  Master's ruling and its reliance on Magistrate Judge Cisneros's legally and procedurally infirm blanket

2  waiver ruling.

3  ## BACKGROUND

4  ### *Defendants' Document Production and Privilege Logs*

5  The parties have kept an aggressive pace of discovery in this case, resulting in producing

6  approximately 1.7 million documents in 18 months and reviewing many more. By the fall of 2024,

7  Plaintiffs had systematically challenged thousands of entries on Defendants' privilege logs. *See* Dkt.

8  1681, § XIII. As the Court began to hear and resolve privilege disputes on a limited number of

9  documents, Magistrate Judge Cisneros advised the parties that "Uber is expected to apply rulings on

10  privilege disputes to other previous designations of privilege" Dkt. 1785, but Defendants were left to

11  interpret how those rulings applied in the context of a growing body of documents. As the parties

12  worked to resolve their disputes as expeditiously as possible in advance of impending company

13  custodian depositions, the Court entered Pretrial Order No. 20, which set an expedited schedule for

14  re-reviewing and producing documents from privilege logs in advance of depositions. Magistrate

15  Judge Cisneros then entered a series of orders in November 2024, December 2024, and January 2025,

16  ruling on samples of privilege disputes, and Defendants were ordered to apply "lessons learned" within

17  14 or 21 days to previously produced privilege logs and to future privilege logs. *See* Dkts. 1908, 2005,

18  and 2168.

19  Under the protections of 502(d), Defendants reviewed their privilege logs in a good faith effort

20  to apply the "lessons learned" to tens of thousands of privilege log entries within a compressed

21  schedule to accommodate depositions. To meet the aggressive schedule, Defendants employed a team

22  of reviewers to conduct an expedited review in order to meet the extremely quick deadlines set forth

23  by Judge Cisneros and adjust privilege claims to reflect the Court's latest instructions and the parties'

24  ongoing conferrals. Throughout that process, Defendants removed or narrowed their privilege claim

25  as to many documents in dispute. Importantly, in Defendants' production of documents to Plaintiffs,

26  Defendants have consistently represented that their productions were "not intended to, and [did] not,

27  waive any applicable privilege or other legal basis under which information may be protected from

28

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS
ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

disclosure." *See*, *e.g.*, Jan. 10, 2025 Correspondence to Plaintiffs' Counsel. Plaintiffs received multiple

productions under this reservation of rights without objection.

### *Magistrate Judge Cisneros's* **Sua Sponte** *Blanket Waiver Ruling*

On April 24, 2025, Magistrate Judge Cisneros issued her blanket ruling that Uber had "waived

the right to claw back documents that it originally designated as privileged and then de-designated as

part of the privilege dispute resolution process overseen by Judge Cisneros." Dkt. 2855. The Court did

so even though there was no clawback dispute pending before the Court and no documents identified

for ruling. Magistrate Judge Cisneros deferred to the Special Master to decide if that ruling should

apply to documents de-designated after the Special Master was appointed. *Id.* Following Magistrate

Judge Cisneros's blanket waiver ruling, Defendants worked diligently to identify the universe of

documents affected by the ruling, including attempting to confer with Plaintiffs on a dispute over the

number of affected documents and raising the issue with the Special Master. *See* Dkt. 3442 at 3-4;

Dkt. 3505 at 2-4. Then, because of the procedure, or lack thereof, by which the blanket waiver ruling

was made, Defendants filed a motion for leave to file a motion to reconsider the waiver ruling with

Magistrate Judge Cisneros. Dkt. 3442. She denied leave on procedural grounds, under Civil Local

Rule 7-9(b) governing motions for reconsideration, without addressing the merits of Defendants'

waiver or due process and procedural arguments. Dkt. 3545. Defendants moved for relief from Judge

Breyer, who also denied the motion on procedural grounds. Dkt. 3649.

### *Special Master's Application of the Blanket Waiver Ruling*

The first actual clawback dispute implicating waiver by disclosure after privilege re-review

and de-designation was the underlying dispute before the Special Master. On September 3, 2025, the

Special Master concluded that documents falling within the scope of Magistrate Judge Cisneros's

ruling could not be clawed back. In briefing that followed, Defendants argued that the Special Master

should decide the issue of waiver *de novo* as to documents de-designated after her appointment and

explained why the blanket ruling was incorrect. Defs.' Sept. 10, 2025 Letter Brief. On September 30,

2025, the Special Master disagreed and found "that the same principles applied by Judge Cisneros in

her April 24, 2025 and July 22, 2025 orders apply to the 42 documents de-designated after February

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS
ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

6, 2025 and Uber may not claw back those documents." Special Master Sept. 30, 2025 Email Ruling. On October 7, 2025, the Special Master entered an order applying the September 30, 2025 ruling to 15 of the 42 documents at issue and determined that those documents were "not privileged" because they may not be clawed back.[2]

## ARGUMENT

## I. The Special Master Erred in Finding That Uber Waived Privilege by Producing Documents After a Re-Review.

### A. Rule 502 Exists to Protect Against Waiver of Privilege Here.

Congress enacted Rule 502 in order to protect against waiver of privileges in circumstances like this. It did so by providing a baseline protection against waiver by disclosure in Rule 502(b) and allowed courts to provide greater protection from waiver in Rule 502(d).

Rule 502 was enacted by Congress and signed into law by President Bush in 2008. Pub. L. 110-322, § 1(a), Sept. 19, 2008. Unlike all other federal rules of procedure, rules governing evidentiary privilege, like Rule 502, must be approved by an affirmative act of Congress. *See* 28 U.S.C. § 2074 (b). Under the traditional rule, a party waives attorney-client privilege when it voluntarily discloses privileged information to a third party, including an adversary in litigation. In enacting Rule 502, Congress substantially departed from the traditional rule by imposing limitations on the waiver by disclosure of the attorney-client privilege or work product protection in federal proceedings. Fed. R. Evid. 502, Advisory Committee Notes, Sept. 26, 2007 Committee Letter to Congress. In his statement supporting the proposed legislation, co-sponsor Senator Specter remarked:

> Current law on attorney-client privilege and work product is responsible in
> large part for the rising costs of discovery-especially electronic discovery.
> Right now, it is far too easy to inadvertently lose or "waive" the privilege.

---

[2] Those documents are: JCCP_MDL_PRIVLOG006612, JCCP_MDL_PRIVLOG006613, JCCP_MDL_PRIVLOG006614, JCCP_MDL_PRIVLOG006714, JCCP_MDL_PRIVLOG006832, JCCP_MDL_PRIVLOG007165, JCCP_MDL_PRIVLOG007166, JCCP_MDL_PRIVLOG007167, JCCP_MDL_PRIVLOG007475, JCCP_MDL_PRIVLOG007476, JCCP_MDL_PRIVLOG007513, JCCP_MDL_PRIVLOG007515, JCCP_MDL_PRIVLOG007553, JCCP_MDL_PRIVLOG007555, JCCP_MDL_PRIVLOG039302, JCCP_MDL_PRIVLOG110078,JCCP_MDL_PRIVLOG110079, JCCP_MDL_PRIVLOG110080.

4

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS
ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

> A single inadvertently disclosed document can result in waiving the privilege not only as to what was produced, but as to all documents on the same subject matter. In some courts, a waiver may be found even if the producing party took reasonable steps to avoid disclosure. Such waiver will not just affect the case in which the accidental disclosure is made, but will also impact other cases filed subsequently in State or Federal courts.

S. Rep. No. 110-264, at 2 (2008).

In addition to addressing the high cost of privilege reviews and providing protections against waiver, Congress enacted Rule 502 to address the fact that, when mistakes happened, the standards for evaluating the consequences of the disclosure varied from district to district, and to prevent the harsh consequence of waiver for mistaken disclosures. *Id.* at 3. Rule 502 codified, for the first time, a national standard that addressed waiver resulting from disclosure of privileged material. *Id.*; Fed. R. Evid. 502, Statement of Congressional Intent Regarding Rule 502. In other words, two key purposes for enacting Rule 502 were to ensure (1) protection against waiver of privilege, and (2) predictability of the consequences of disclosure of privilege information.

Congress included two key provisions to accomplish those goals. First, Rule 502(b) sets a "default" procedure that only allows a party to claw back certain inadvertent disclosures. Specifically, Rule 502(b) provides that disclosure does not operate as a waiver only if the disclosure was inadvertent, occurred despite reasonable steps, and reasonable steps were taken promptly to rectify. Second, Rule 502(d) allows courts to "order that the privilege or protection *is not waived* by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." (emphasis added). In other words, Rule 502(d) orders can "supplant[] the default procedures set forth in Rule 502(b)." *Great-West Life & Annuity Ins. Co. v. American Economy Ins. Co.*, 2013 WL 5332410, at *11 (D. Nev. Sept. 23, 2013). Rule 502's Advisory Committees Notes further explain, "[T]he court order may provide for return of documents without waiver *irrespective of the care taken by the disclosing party.*" Fed. R. Evid. 502, Advisory

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

Committee's Note to subdivision (d) (emphasis added).[3] Additionally, the Statement of Congressional Intent explains that subdivision (d) "is designed to enable a court to enter an order ... that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, *while still preserving each party's right to assert the privilege* to preclude use in litigation of information disclosed in such discovery." *Id.*, Statement of Congressional Intent Regarding Rule 502, Subdivision (d) - Court Orders (emphasis added).

Those are the exact 502(d) protections the Court adopted in the pretrial order in this case—return of documents without waiver irrespective of Defendants' actions and preservation of Defendants' right to assert privilege even after production—and upon which Defendants relied at the time they re-reviewed documents to apply the Court's privilege rulings.

**B.    Production Does Not Result in Waiver of Privilege Under Pretrial Order No. 14.**

Merely producing documents does not operate as a waiver under the non-waiver provision of Stipulated Pretrial Order 14, which provides:

> Pursuant to Federal Rule of Evidence 502(d), the production of ***any*** privileged or otherwise protected or exempted information in this case ***shall not be deemed a waiver*** or impairment of ***any*** claim of privilege or protection in this case or in any other federal or state proceeding, including, but not limited to, the attorney-client privilege, the protection afforded to work production materials, statutory privileges and protections, or the subject matter thereof, as to the produced documents and any related materials.

PTO 14 ¶ 2 (emphases added). PTO 14 further provides that, in a clawback dispute presented to the Court or Special Master, the party challenging the privilege is not permitted to assert "the fact or

---

[3] Indeed, "Rule 502(d) permits courts to enter orders that provide that a disclosure does not constitute a waiver–regardless of the actions taken by the producing party" and "avoid any question about whether [it] was inadvertent." The Sedona Conference, The Sedona Conference Commentary on Protection of Privileged ESI, 17 SEDONA CONF. J. 95, 104 (2016) (emphasis added); *see also* The Sedona Conference, The Sedona Conference Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders, 23 Sedona Conf. J. 1, 25 (2022) ("[T]he text of Rule 502(d) is not limited to 'inadvertent' disclosures . . . . [T]he risk that the court will engage in a Rule 502(b) analysis to determine whether a disclosure was or was not inadvertent . . . is one of the principal problems with 502(b) that 502(d) eliminates.").

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

circumstances of disclosure" (PTO 14 ¶ 6), and instead must argue the merits of the privilege claim. By its plain language, this non-waiver provision does not require inadvertence. It does not depend on the level of review or re-review conducted prior to production. Nor does it have any conditions or limitations concerning how or during what stage of discovery the production occurred. *Any* production is subject to the non-waiver clause. Further, PTO 14 provides a procedure to claw back documents that have "been produced for which the Producing Party asserts privilege and/or other protection," regardless of whether such production was inadvertent. *Id.* at ¶ 4. Many courts addressing this issue have found that similar orders pursuant to Rule 502(d) "allow[] a party to claw back privileged materials ***without regard to whether the disclosure was inadvertent***." *GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*, 2024 WL 4960008, at *4 (N.D. Miss. Dec. 3, 2024) (emphasis added); *Thomas v. Marshall Public School*, 690 F. Supp. 3d 941, 962 (D. Minn. 2023) (stating "Rule 502(d) allows a party who discloses privileged material to claw them back without having to prove the disclosure was 'inadverent'"); *United States v. Hall*, No. 2020 WL 7027473, at *3 (N.D. Tex. Nov. 30, 2020) (finding Rule 502(d) applicable to privileged materials disclosed "inadvertently or purposefully"); *United States v. Caroleo*, 2019 WL 5869690, at *1 (E.D.N.Y. Nov. 11, 2019) ("Even if the disclosure is not 'inadvertent' under Rule 502(b), however, a court may nevertheless 'order that [the] privilege or protection is not waived by disclosure connected with the litigation pending before the court.'" (quoting Fed. R. Evid. 502(d)); *Brookfield Asset Management, Inc. v. AIG Financial Products Corp.*, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (holding that under stipulated Rule 502(d) order that no waiver of any applicable privilege would result from defendants' production "of any documents in this proceeding," defendants had right to claw back privileged documents "no matter what the circumstances giving rise to their production were").[4]

---

[4] *See also, e.g.*, *Everest Nat'l Ins. Co. v. Am. Claims Mgmt., Inc.*, 2025 WL 2381475, at *5 (D.N.J. Aug. 15, 2025) ("While some courts have engrafted additional standards to determine if a waiver has occurred even in the presence of a Rule 502(d) order, this Court finds the plain language of Rule 502(d) to not be so constrained. Indeed, 'the text of Rule 502(d) is not limited to "inadvertent" disclosures[.]'"); *United States v. Hatfield*, 2010 WL 11515679, at *1 (E.D.N.Y. July 13, 2010) (stating that argument "Rule 502 is limited to inadvertent disclosure … finds no support in either Rule 502(d)'s plain text, or in the Advisory Committee notes"); *Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil & Gas Corp.*, 2009 WL 464989, at *4 (N.D. Tex. Feb. 23, 2009) (in discussion of

7

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

These courts' decisions are correct. They accord with the text of Rule 502(d), which does not contain an inadvertence requirement. And they are consistent with the intent of the rule's drafters. Indeed, in the attached declaration, Professor Daniel Capra, the co-author of the text of Rule 502, the author of the Committee Note to that Rule, and the Reporter to the Judicial Conference Advisory Committee on Evidence Rules since 1996, confirms that the "Advisory Committee viewed Rule 502(d) as the most important provision in the rule" because it "provides parties a predictable protection that can be relied upon – a protection that does not require a showing of reasonable efforts that will result in significant expenditure of resources. That is why the Committee was of the view that a Rule 502(d) order could protect against waiver even when disclosures are intentional. The Advisory Committee clearly intended that Rule 502 (d) orders could cover intentional disclosures as well as mistaken ones." Ex. A at ¶¶ 4-5. He further explains that "the principal benefit of Rule 502(d) is that it provides certainty at the time of production–rather than waiting for an after-the-fact determination of reasonableness (as Rule 502(b) mandates). Under Rule 502(d), protective orders—like the one in this case—are only effective when they approve procedures that would not pass muster if analyzed exclusively under Rule 502(b)." *Id.* at ¶ 7.

Plaintiffs cited only one case in their September 16 opposition submitted to the Special Master, *De Coster v. Amazon.com, Inc.*, 2025 WL 904465, at *4–5 (W.D. Wash. Mar. 25, 2025). But that case is inapposite. The protective order in *De Coster* explicitly invoked the protections of Rule 502(b), and the district court therefore applied the Rule 502(b) standard in deciding that Amazon could not claw back documents it de-designated following a re-review. *Id.* at *4 ("No reasonable reading of the Order supports Amazon's contention that it allows a party to claw back a document under any circumstances. The Order expressly [invoked Rule 502(b)] . . . . Thus, the Rule 502 (b) waiver standard applies to the parties' claw back request."). Not so here. The relevant pretrial order clearly invokes the protections

---

502(d), rejecting "argu[ment] that Rule 502 is limited to inadvertent disclosures. Although the rule addresses the consequences of an inadvertent disclosure of privileged information, this is not the extent of the rule. Instead, the plain language of the rule addresses the 'disclosure of a communication or information covered by the attorney-client privilege or work-product protection' in various 'circumstances.'").

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

1    of Rule 502(d), so the case is not on point. But even if it was, *De Coster* is not binding on the Special

2    Master.

3        In short, Defendants' production of the documents at issue does not operate as a waiver of the

4    attorney-client or work-product protections under the Court's order adopting Rule 502(d).

5    **C.    The concerns of serial designation, de-designation, and clawback, creating**

6        **delay and inefficiency do not justify ignoring Rule 502(d).**

7        Concerns that not imposing the inadvertence requirement of 502(b)(1) onto 502(d) would

8    result in serial designation, de-designation, and re-designation and clawback, leading to significant

9    delay and inefficiency, are misguided. And in any event, they do not justify ignoring the text of Rule

10   502(d) and the 502(d) order in PTO 14 (Dkt. 396 ¶ 2).

11       Courts no doubt have inherent authority to "to manage their own affairs so as to achieve the

12   orderly and expeditious disposition of cases," but that "exercise of an inherent power cannot be

13   contrary to any express grant of or limitation on the district court's power contained in a rule," like

14   Federal Rule of Evidence 502(d). *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016). As explained above, PTO

15   14 plainly provides, as Rule 502(d) permits, that production of a document is not a waiver of privilege.

16   Dkt. 396 ¶ 2. Neither Magistrate Judge Cisneros nor the Special Master have identified anything other

17   than the review and production of documents that could constitute a waiver.[5] The Court cannot ignore

18   its own order pursuant to a federal rule that Congress enacted and find waiver inconsistent with the

19   502(d) order in effect at the time the productions were made. *See, e.g.*, *Arconic Inc. v. Novelis Inc.*,

20   2019 WL 911417, at *1 (W.D. Pa. Feb. 26, 2019) (holding that "the parties are entitled to rely on Rule

21   502(d) for the documents already produced" when 502(d) order was in effect).[6]

22

23   ───────────────

     [5] If the Court wished to place a further limitation on parties' ability to claw back documents, it could

24   have adopted a 502(d) order that was limited to *inadvertent* disclosures (*see, e.g.*, *BNP Paribas

     Mortg. Corp. v. Bank of Am., N.A.*, 2013 WL 2322678, at *2 (S.D.N.Y. May 21, 2013)), but instead

25   afforded the parties the full protection of 502(d) in PTO 14 and protects all "production[s] … in this

     case" from resulting in waiver.

26   [6] Finding waiver in violation of the 502(d) order in PTO 14 violates due process and basic notions of

     fairness because it would effectively amend that order and apply the amendment retroactively,

27   despite Defendants' reliance on the non-waiver protections of the order. *Cf. Landgraf v. USI Film

     Prods.*, 511 U.S. 244, 265 (1994) (the presumption against retroactive application of new laws and

28

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS
ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

1    Some of the courts adopting the minority view that the inadvertence requirement of 502(b)(1)

2    applies to 502(d)—notwithstanding the lack of textual support in 502(d)—have done so for policy

3    reasons, fearing this would "[a]llow[] a party to intentionally and tactically disclose protected

4    materials during litigation, while preserving the ability to assert privilege when such tactics change."

5    *E.g.*, *Smith v. Best Buy Stores, L.P.*, 2017 WL 3484158, at *4 (D. Idaho Aug. 14, 2017) (dicta).[7]

6    Magistrate Judge Cisneros expressed a similar concern, "not[ing] that the clawback protocol on which

7    Uber relies in Pretrial Order No. 14 did not contemplate Uber serially designating, de-designating, and

8    re-designating documents as privileged in a manner that undermines the completion of discovery on

9    any reasonable schedule." Dkt. 3545 at 8.

10    This concern is misguided. There is no evidence that Defendants clawed back previously de-

11    designated documents to engage in any type of gamesmanship or because they were acting "tactically"

12    
_____

13    rules "is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our
Republic. Elementary considerations of fairness dictate that individuals should have an opportunity

14    to know what the law is and to conform their conduct accordingly; settled expectations should not be
lightly disrupted."); *Reyes v. Garland*, 11 F.4th 985 (9th Cir. 2021) ("[A] due process concern

15    always at the heart of retroactivity analysis.") (holding that Board of Immigration Appeals erred by
retroactively applying new interpretation retroactively); *Blum v. Merrill Lynch Pierce Fenner &*

16    *Smith Inc.*, 712 F.3d 1349, 1355 (9th Cir. 2013) ("[B]efore deciding to modify the protective order,
the court that issued it … must weigh the countervailing reliance interest of the party opposing

17    modification"); *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007) (noting that
"bankruptcy courts have as courts of equity [power] '"to reconsider, modify or vacate their previous

18    orders *so long as no intervening rights have become vested in reliance on the orders.*" (emphasis

19    added)); *United States v. Potts*, 528 F.2d 883, 886 (9th Cir. 1975) (en banc) (finding that "due
process fairness bars the retroactive judgment of his conduct using the expanded definition" of crime

20    in case law that "expands the scope of potential criminal liability"); *S.E.C. v. TheStreet.Com*, 273
F.3d 222, 229 (2d Cir. 2001) ("Where there has been reasonable reliance by a party or deponent, a

21    District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of
improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'").

22    [7] Many such cases are inapposite because they reject an argument much broader than the one

23    Defendants make here, that no waiver is possible *by any means* when a 502(d) order is in place, even
waiver by means other than disclosure and production. *See, e.g. Certain Underwriters at Lloyd's,*

24    *London v. Nat'l R.R. Passenger Corp.*, 218 F. Supp. 3d 197, 202 (E.D.N.Y. 2016); *Smith*, 2017 WL

25    3484158, at *4. For example, notwithstanding a 502(d) order, a party's "*offensive* introduction of
[its own] privileged communication" in litigation "will likely constitute waiver, under the well-

26    established doctrine that attorney-client privilege may not be used both as a sword and a shield." *Epic*

27    *Games, Inc. v. Apple Inc.*, 781 F. Supp. 3d 943, 996 (N.D. Cal. 2025). But here, Defendants have not
used the clawed back documents for any purpose and there is no basis for finding waiver other than

28    Defendants' review and production.

10

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS
ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

to gain an advantage in litigation. *Smith*, 2017 WL 3484158, at \*4. Defendants have complied with discovery obligations that are enormous in scale on a rapid schedule, producing 1.7 million documents and reviewing many more. The goal of the re-review was for Defendants' privilege assertions to better adhere to the Court's guidance. But inevitably, it was imperfect; some errors were made in the other direction when de-designating documents. As a result, Defendants have clawed back a small number of these documents upon discovering inadvertently produced privileged documents, representing a very small fraction of those it de-designated and a miniscule percentage of the overall discovery in this litigation. No evidence even suggests that Defendants' clawbacks were some sort of gamesmanship or bad faith, nor did Defendants use them "tactically" before clawing them back, such as using them in support of a motion. And courts have ample tools to deal with gamesmanship other than rewriting Rule 502(d).

Concerns over efficiency and delay are likewise misguided. The process of resolving privilege disputes, by necessity of the scale and scope of discovery, has been an iterative approach, with the number of disputes narrowing dramatically at each step. The documents previously de-designated and produced, then clawed back, represent the bottom of this funnel. The concern that Defendants will continue "serially designating, de-designating, and re-designating [these] documents as privileged in a manner that undermines the completion of discovery on any reasonable schedule" (Dkt. 3545 at 8) is not realistic or possible. Indeed, despite multiple briefs and orders on this issue, there is zero evidence in the record of how the relevant clawbacks have or will meaningfully delay the case schedule. Any clawback notices by Defendants must be made within twenty-one days of discovery and can be challenged by Plaintiffs under Special Master Order No. 4 (Dkt. 2933). If Plaintiffs do not timely challenge the clawback notice, that ends the matter as well. The Special Master procedures have allowed any challenge to be resolved quickly without impacting the overall case schedule. But for the blanket waiver ruling, the clawbacks at issue could have been resolved on the merits long ago following these procedures.

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

1

### D.    Defendants' disclosures were inadvertent.

2    Even if the minority view were correct that the inadvertence requirement of Rule 502(b)(1)

3    must be met to avoid waiver by production, notwithstanding a 502(d) order, Defendants' production

4    of later-clawed back documents was inadvertent.

5    Uber's de-designation and production of certain privileged documents was inadvertent under

6    the circumstances, regardless of the fact that attorneys had reviewed the documents prior to de-

7    designation. "An 'inadvertent disclosure' is simply where the work-product protected [or privileged]

8    document was produced as the result of a mistake." *B&G Foods North America, Inc. v. Embry*, 2024

9    WL 922900, at *2 (E.D. Cal. March 4, 2024). "[A] document may be produced inadvertently even

10   after review and redaction." *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *7 (E.D.

11   Va. July 16, 2019) (collecting cases); *Guidiville Rancheria of California v. United States*, 2013 WL

12   6571945, at *4 (N.D. Cal. Dec. 13, 2013) (finding, despite two levels of attorney privilege review,

13   "that the Production Disclosure of the document … was inadvertent").   This is because "the

14   'inadvertence' requirement of Rule 502(b) was not designed to turn on fine distinctions based on the

15   nature of the mistake to determine whether the particular type of mistaken disclosure qualifie[s] for

16   protection from waiver." *Datel Holdings Ltd. v. Microsoft Corp.*, 2011 WL 866993, at *3 (N.D. Cal.

17   March 11, 2011); *see also United States v. United Health Grp., Inc.*, 2020 WL 10731257, at *3 (C.D.

18   Cal. Nov. 9, 2020) ("[I]nadvertence could include any type of accidental or mistaken production,

19   particularly when that production occurs during the production of voluminous documents."),

20   Therefore, an intentional production of documents is an inadvertent disclosure if it is the result of a

21   mistake.  *Datel*, 2011 WL 866993, at *3.  This comports with the purpose of Rule 502(b).  "[T]he

22   point of Rule 502(b) is to protect clients' confidences from their lawyers' human errors." *Carmody v.*

23   *Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 406 (7th Cir. 2018). As one court explained:

24

25
> [T]o find that a document disclosed by a lawyer is never inadvertent would vitiate
> the entire point of Rule 502(b).  Concluding that a lawyer's mistake never qualifies
> as inadvertent disclosure under Rule 502(b) would gut that rule like a fish.  It would
> essentially reinstate the strict waiver rule in cases where lawyers reviewed
> documents, and it would create a perverse incentive not to have attorneys review
> documents for privilege.

26

27

28

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS
ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

1    *Amobi v. District of Columbia Dept. of Corrections*, 262 F.R.D. 45, 54 (D.D.C. 2009); *see also*

2    *Hatfield v. Bonneville Cnty.*, 2025 WL 358441, at *6 (D. Idaho Jan. 31, 2025) (stating, in case where

3    attorney reviewers mistakenly missed an attorney-client communication in an email in a large-scale

4    review, that "although the document itself may have been intentionally produced, the disclosure of a

5    communication protected by the attorney-client privilege was inadvertent").

6        These cases are consistent with the intent of the rule's drafters. As Professor Capra states in

7    his declaration, "the Committee by that term, intended to cover any disclosure that was mistaken. The

8    term 'inadvertent' was taken from prior case law ....  That case law covered all disclosures that the

9    producing party claimed to be a mistake." Ex. A, ¶ 11.

10       While nothing more than a mistake is required to establish inadvertence, courts take account

11   of the realities of large-scale discovery when determining whether a disclosure was inadvertent.[8] *Pac.*

12   *Coast Steel v. Leany*, 2011 WL 4704217, at *5 (D. Nev. Oct. 4, 2011) ("The scope of the discovery

13   … in this case also weighs in favor of finding the documents were inadvertently disclosed. Plaintiffs

14   produced more than 2.3 million pages of documents.").  "Such errors are, of course, inevitable in

15   complex litigation involving the production of tens of thousands of documents."  *BNP Paribas Mortg.*

16   *Corp. v. Bank of America N.A.*, 2013 WL 2322678 at *8 (S.D.N.Y. May 21, 2013).  As such, "[c]ourts

17

---

18   [8] Some courts have distinguished between two approaches to the inadvertence analysis under Rule
     502(b)(1), the first approach considering "if the party intended to produce a privileged document or
19   if the production was a mistake," and the second approach conducting a "totality of the
     circumstances" analysis that, in effect, determines whether the disclosure was both inadvertent *and*
20   reasonable based on factors like the precautions taken to prevent the inadvertent disclosure and
     efforts to rectify it.  *Amobi*, 262 F.R.D. at 53; *see also T&W Holding Co., LLC v. City of Kemah,*
21   *Texas*, 641 F. Supp. 3d 378, 382 (S.D. Tex. 2022); *Pac. Coast Steel v. Leany*, 2011 WL 4704217, at
     *4 (D. Nev. Oct. 4, 2011) (totality of the circumstances approach).  Most courts have rejected the
22   second approach, noting that this analysis conflates the 502(b)(2) and (3) factors ("reasonable steps
     to prevent" and "reasonable steps to rectify" the inadvertent disclosure) with the 502(b)(1)
23   inadvertence factor, and that the first, simpler approach is more consistent with the language of the
     rule.  *E.g.*, *Amobi*, 262 F.R.D. at 53-54.  However, courts using the simpler "mistake" inadvertence
24   standard can still consider the circumstances and context of a disclosure, such as the large scope and
     timing of discovery, to determine whether a disclosure of privileged documents was, in fact, a
25   mistake.  *See, e.g.*, *Patagonia, Inc. v. Anheuser Busch, LLC*, 2020 WL 12048989, at *1 (C.D. Cal.
     Sept. 29, 2020) (finding disclosure of narrowly redacted documents was inadvertent in "a major case
26   with massive document discovery and production, posing a major challenge to review of documents
     for privilege").
27

28
                                                    13

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS
ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure rather than a knowing waiver." *Baker's Aid, a Div. of M. Raubvogel Co. v. Hussmann Foodservice Co.*, 1988 WL 138254, at \*5 (E.D.N.Y. Dec. 19, 1988); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) ("Where discovery is extensive, mistakes are inevitable.").

Indeed, under similar circumstances, Judge Hixson of this District found that Apple inadvertently disclosed and was entitled to clawback two documents it de-designated following a re-review process because:

> Epic cites no authority for the proposition that inadvertence does not include an intentional but mistaken decision by a human document reviewer. The question, after all, is whether Apple deliberately produced a document, not whether one particular document reviewer deliberately decided these documents should have been redacted rather than withheld in full. Apple used a large team of reviewers to make privilege calls on large numbers of documents, and a mistake does not mean that the company deliberately produced the document.

*Epic Games, Inc. v. Apple, Inc.*, Case No. 20-cv-05640-YGR (TSH), 2025 U.S. Dist. LEXIS 34007 (N.D. Cal. Feb. 25, 2025).

Uber has produced approximately 1.7 million documents in this litigation. As is common with any large-scale document production under a compressed timeline for review, certain documents were produced by reviewing attorneys who did not appreciate the privileged nature during review or who simply made a mistake in applying redactions or coding a document as not privileged. Uber did not intend to produce privileged documents and waive its privilege.

The documents at issue in the Special Master's September 30 decision illustrate how privileged content was mistakenly produced without an intentional waiver of privilege. One such example is JCCP_MDL_PRIVLOG007033, a 14-page email thread that was produced with redactions on March 8, 2025. When the document was subsequently used as a deposition exhibit, it was discovered that the redactions were incomplete. For example, the thread includes an email from Uber attorney Mr. Binnings that carries across two PDF pages. The March 8 production included a redaction only to half

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

1   of Mr. Binnings's email. The second half of Mr. Binnings's email was unintentionally left unredacted

2   on the next page. There were also messages directed to Mr. Binnings seeking his legal advice within

3   the body of larger communications that should have been redacted when the document was produced

4   on March 8. Defendants reproduced the document with corrected redactions on May 2, 2025. While it

5   was always maintained on Defendants' privilege log, a clawback was necessary to correct the scope

6   of redactions. PTO 14 provides a procedure for clawing back documents under these circumstances.

7   **E.      The Special Master's finding of waiver was erroneous because it followed Magistrate**

8   **Judge Cisneros's *sua sponte*, blanket ruling on waiver by disclosure.**

9       The Special Master's September 30, 2025 ruling on Uber's clawback rested on the finding

10  "that the same principles applied by Judge Cisneros in her April 24, 2025 and July 22, 2025 orders

11  apply to the 42 documents de-designated after February 6, 2025 and Uber may not claw back those

12  documents" (Email from Spec. Mast. Hon. Barbara S. Jones (Sep. 30, 2025)).  By deferring to

13  Magistrate Judge Cisneros's *sua sponte* blanket ruling, rather than deciding the issue *de novo*, the

14  Special Master's ruling sweeps in the procedural and due process errors of that blanket ruling.

15      First, the blanket privilege ruling was made with no pending clawback challenge dispute before

16  Magistrate Judge Cisneros.  PTO 14 (Dkt. 396 ¶ 4) governs clawback procedures in this litigation.

17  *Northwest Acceptance Corp. v. Lynwood Equipment, Inc.*, 841 F.2d 918, 924 (9th Cir. 1988) ("A

18  pretrial order … controls the subsequent course of action in the litigation."). PTO 14 prescribes a

19  procedure by which the producing party may notify the receiving party that it produced a document

20  for which it asserts privilege. The receiving party then can contest the assertion of privilege by

21  providing a written "Notice of Clawback Challenge." The parties then go through a conferral period.

22  If the conferral does not resolve the dispute, the parties are required to submit the issue to the Court

23  by filing a "joint letter brief." Dkt. 396 ¶¶ 4-6.

24      None of that happened here.  The general topic of clawbacks *procedures* was mentioned by

25  Plaintiffs in a Joint Status Report–updating the Court on the status of *eight* different discovery disputes

26  within ten pages (five per side)–none of which included a challenge to any particular claw back

27  document.  Plaintiff made no substantive challenge to documents Uber had clawed back.  Indeed,

28

15

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

1    Plaintiffs argued they did not have the "requisite information … to assess and potentially challenge

2    the clawback." Joint Status Report (Dkt. 2823) at 3.  Plaintiffs never mentioned the notion of waiver—

3    neither in the Joint Status Report nor at the Status Conference.  Nevertheless, the Court found Uber's

4    de-designation decisions constituted a waiver of its attorney-client or work-product privilege before

5    Uber was given an opportunity to argue against waiver. April 24, 2025 Hr'g Tr. at 9:18–19.

6    Respectfully, this is directly contrary to PTO 14's clawback dispute resolution procedures.

7         Second, and relatedly, the blanket privilege ruling was improper because it was made *sua*

8    *sponte* without an opportunity for Defendants to be heard in violation of their due process rights.  To

9    allow litigants the full and fair opportunity to be heard, it is generally disfavored for courts to raise

10   issues *sua sponte*.  *See, e.g., Lewis v. Woodford*, 2007 WL 196635, at *20 n.12 (E.D. Cal. Jan. 23,

11   2007) ("[I]t is generally inappropriate for judicial officers to raise issues sua sponte.").  "There are,

12   however, several respects in which the Federal Rules allow the district court, *with appropriate notice*,

13   to raise issues *sua sponte*." *Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023)

14   (emphasis added).  Further, "[a] court *may only* grant a motion *sua sponte* if all parties have a full

15   opportunity to address the issue." *Mead Reinsurance v. Granite State Ins. Co.*, 873 F.2d 1185, 1189

16   (9th Cir. 1988) (emphasis added); *see also Heinz v. C.I.R.*, 770 F.2d 874, 876 (9th Cir. 1985) (reversing

17   the tax court's *sua sponte* ruling where the taxpayers "were not given a 'full and fair opportunity to

18   ventilate the issues'").  This is because "[i]n our adversarial system of adjudication, we follow the

19   principle of party presentation" (*United States v. Sinneng-Smith*, 590 U.S. 371, 375 (2020)), "it is

20   generally up to the parties to decide, within the parameters of the applicable procedural rules, what

21   particular relief they wish to seek, what type of motion they wish to present to obtain that relief, and

22   which arguments they wish to make in support" (*Jones*, 74 F.4th at 1058).  At the very least, "[g]iven

23   the due process and fairness concerns presented, a district court generally must provide the parties

24   with adequate notice that it is contemplating invoking a particular procedural device *sua sponte*." *Id.*

25   at 1060.

26        Due process concerns are particularly acute when a court determines a party has waived

27   attorney-client privilege.  "[T]he attorney-client privilege is, perhaps, the most sacred of all legally

28

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS
ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

recognized privileges, and its preservation is essential to the just and orderly operation of our legal system." *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997). Indeed, "[t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Consequently, "[w]hether express or implied, the scope of a waiver must be *narrowly construed* and 'fit within the confines of the waiver.'" *Garcia v. Progressive Choice Ins. Co.*, 2012 WL 3113172, at *3 (S.D. Cal. July 30, 2012) (emphasis added).

Waiver of privilege is inappropriate for a blanket rule, but rather should be analyzed in a fact-specific manner. Indeed, "[w]hether a privilege has been waived is a mixed question of fact and law." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). Thus, "waiver of the attorney-client privilege favors a case-by-case determination of waiver based on a consideration of all the circumstances." *Eureka Financial Corp. v. Hartford Acc. and Indem. Co.*, 136 F.R.D. 179, 184 (E.D. Cal. 1991).

The Magistrate Judge did not have the opportunity to consider the specific factual circumstances concerning Defendants' de-designations or clawback of certain documents. In fact, the documents subject to waiver pursuant to the Order were not even specifically identified at the Status Conference or in the Order itself. Nor did Defendants have the opportunity to develop and brief legal arguments that its de-designations do not constitute waiver before the Magistrate Judge made the blanket ruling. The Court indicated its position concerning waiver before Defendants had an opportunity to speak about the topic during the hearing. *See* Hr'g at 9:18–19. And after the Court stated its position, Uber had limited opportunity to argue its position on its privilege claim.

Even assuming that the mention of clawback procedures in the Status Report was sufficient to allow Magistrate Judge Cisneros to rule on waiver *sua sponte* without violating due process (and it was not), the ruling would still be improper because Plaintiffs themselves waived the potential waiver by not asserting it. *See Redd v. Guerrero*, 84 F.4th 874, 892 (9th Cir. 2023) ("[T]his court will not address waiver if not raised by the opposing party." (quoting *United States v. Doe*, 53 F.3d 1081, 1082 (9th Cir. 1995)); *United States v. Garcia-Lopez*, 309 F.3d 1121, 1123 (9th Cir. 2002) (noting that a

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

party "can 'waive waiver' implicitly by failing to assert it"); *cf. United States v. Sainz*, 933 F.3d 1080 (9th Cir. 2019) (reversing based on district court raising *sua sponte* defendant's waiver of right to seek sentence reduction).

"'The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending "hearing."' … Without notice, '[the] right to be heard has little reality or worth.'" *Wright v. Beck*, 981 F.3d 719, 727 (9th Cir. 2020). Defendants neither had notice that waiver would be raised at the Status Conference nor a fair opportunity to address the issue. In short, Defendants did not have the "full opportunity to address the issue" necessary for the Court to raise and rule on waiver of the attorney-client and attorney work-product protections *sua sponte*. Magistrate Judge Cisneros's ruling, finding a blanket waiver of privilege for an unidentified group of at least 30 documents, stripped Defendants of the opportunity to inform the Court of the particular circumstances they believe entitle them to assert attorney-client privilege over certain documents they de-designated. While the Special Master allowed Defendants the opportunity to be heard, she rested her decision on the blanket ruling that violates due process, making the Special Master's ruling the fruit of the poisonous tree, subject to the same errors.

**F.    The waiver ruling results in the unfair outcome of production of clearly privileged documents in violation of Defendants' bedrock right to attorney-client privilege.**

The consequences of the Court's April 24 decision are far-reaching and significant. While the Court entered this order because of the perceived need to promote efficiency and avoid lingering privilege disputes, the result is that Defendants are unable to claw back undeniably privileged documents, even though Plaintiffs have not challenged the merits of the clawback. For example:

- JCCP_MDL_PRIVLOG005511 is an email thread with Dalene Bramer, then-Senior Counsel, Employment. It was produced in full on March 8, 2025. It was clawed back less than four weeks later when it was discovered that the document was produced without necessary redactions. It was reproduced on April 1, 2025, with redactions, including redactions to an email from Ms. Bramer to Uber employees in which she summarized the legal advice that she provided to the business from her employment law perspective. Plaintiffs have never challenged the merits of Defendants' redactions, and there could be no credible basis to do so.

- JCCP_MDL_PRIVLOG007423 and JCCP_MDL_PRIVLOG006832 are email threads that were produced in full on March 8, 2025. While the last emails in each thread are between non-

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

lawyers only, the thread includes earlier emails to and from Aaron Brand, then-Legal Director, Mobility Product Counsel Team. These documents were clawed back and reproduced on May 16 and June 16 to apply redactions to the legal advice requested from and provided by Mr. Brand. Plaintiffs have never disputed the privileged nature of the redacted communications to and from Mr. Brand.

- JCCP_MDL_PRIVLOG057200 is another email thread that was produced in full on March 8, 2025. Shortly thereafter, it was discovered that the document was produced without the necessary redactions. It was clawed back and reproduced with redactions on April 18, 2025. Limited redactions have been applied to discrete messages to and from Scott Binnings, Associate General Counsel, regarding his legal advice on the development of a product feature.

Denying Defendants the ability to claw documents back in these circumstances undermines a primary purpose of Rule 502(d), which is to provide a predictable protection for privileged material. Defendants made their document productions with the protections of Rule 502(d) in mind. To circumvent these protections after the fact is fundamentally unfair because it deprives Defendants of a substantive legal right in a way that the Court's pretrial orders did not contemplate.

## CONCLUSION

The April 24 Order denied Defendants of substantive rights afforded under PTO 14's non-waiver provision. It should not be adopted to apply to the documents at issue here. Defendants respectfully request that the Special Master decide this issue *de novo* and decline to adopt the April 24 Order for the reasons outlined above.


DATED: October 21, 2025                          Respectfully submitted,


                                                 **SHOOK HARDY & BACON L.L.P.**

                                                 By: */s/ Maria Salcedo*
                                                     Maria Salcedo

                                                 **KIRKLAND & ELLIS LLP**
                                                 LAURA VARTAIN
                                                 ALLISON M. BROWN
                                                 JESSICA DAVIDSON

                                                 **O'MELVENY AND MYERS LLP**
                                                 SABRINA STRONG

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JONATHAN SCHNELLER

**SHOOK, HARDY, & BACON, LLP**
PATRICK OOT (Admitted *Pro Hac Vice*)
  oot@shb.com
1800 K St. NW Ste. 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

ALYCIA A. DEGEN (SBN: 211350)
  adegen@shb.com
MICHAEL B. SHORTNACY (SBN: 277035)
  mshortnacy@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (424) 285-8330
Facsimile: (424) 204-9093

CHRISTOPHER V. COTTON (Admitted *Pro Hac Vice*)
  ccotton@shb.com
MARIA SALCEDO (Admitted *Pro Hac Vice*)
  msalcedo@shb.com
JENNIFER HILL (Admitted Pro Hac Vice)
  jshill@shb.com
**SHOOK, HARDY & BACON L.L.P.**
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547

*Attorney for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S SEPTEMBER 30, 2025 AND OCTOBER 7, 2025 RULINGS ON PLAINTIFFS' CLAWBACK CHALLENGES

Case No. 3:23-MD-3084-CRB