# EXHIBIT I

LAURA VARTAIN HORN (SBN: 258485)
laura.vartain@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 439-1625

ALLISON M. BROWN (*Pro Hac Vice* admitted)
allison.brown@kirkland.com
JESSICA DAVIDSON (*Pro Hac Vice* admitted)
jessica.davidson@kirkland.com
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4723

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:23-md-03084-CRB<br><br>Judge:    Honorable Charles Breyer<br><br>**DECLARATION OF PROFESSOR DANIEL J. CAPRA** |

1.    I am the Philip Reed Professor of Law at Fordham Law School. I have served as the Reporter to the Judicial Conference Advisory Committee on Evidence Rules since 1996. I am the co-author of the text of Rule 502 of the Federal Rules of Evidence, and I authored the Committee Note to that Rule. I also worked with Congressional staffers and Members of Congress in the run-up to the enactment of Rule 502 by Congress in 2008.

2.    I have also served as Special Master reviewing privilege claims in MDLs before Judge Scheindlin and Judge David Norton, D.S.C. And I have written and co-authored articles and treatises on the Federal Rules of Evidence, including Rule 502.

---

DECLARATION OF PROFESSOR DANIEL J. CAPRA                                    Case No. 3:23-MD-3084-CRB

3. I have been asked by the defendants in this litigation for my view on the purpose and scope of Rule 502(b) and (d), including Rule 502(d)'s protection for disclosures of privilege and work product. Fundamentally, the question is whether Rule 502(d) was designed to act independently from Rule 502(b).

4. The Advisory Committee viewed Rule 502(d) as the most important provision in the rule. Rule 502(b) provides protection from waiver, but that protection is unpredictable. Rule 502(b) protection is dependent on whether a court, after the fact, finds the producing party's efforts to preserve confidentiality to be reasonable. The Committee was well aware that risk-averse lawyers, in the absence of a court order, would spend significant time and resources to avoid a subsequent determination that their efforts were unreasonable. And yet, the very reason for Rule 502 was to reduce the costs of privilege review. It was clear to the Committee that Rule 502(b) was a band aid --- necessary to provide protection against some of the common law cases that applied a strict liability rule for waiver of privilege, but clearly not the answer to controlling the costs of preproduction privilege review.

5. It is Rule 502(d) that provides parties a predictable protection that can be relied upon --- a protection that does not require a showing of reasonable efforts that will result in significant expenditure of resources. That is why the Committee was of the view that a Rule 502(d) order could protect against waiver even when disclosures are intentional.[1]

6. The Advisory Committee clearly intended that Rule 502(d) orders could cover intentional disclosures as well as mistaken ones. The Committee discussed, for example, the fact that parties may not care about whether they disclose privileged information in the instant litigation, but are very concerned that disclosure will result in use of the material in other litigations. Without Rule 502(d) protections, such parties will have to undertake substantial costs of preproduction privilege review when they don't even care about disclosure in the case. Protecting intentional disclosures

---

[1] Judge Grimm makes this point in *Federal Rule 502: Has it Lived Up to Its Potential?*, 17 Richmond J. L. & Tech. 8, 64 (2011) ("parties should be permitted the flexibility to enter into non-waiver agreements that permit less than full compliance with Rule 502(b)(2) preproduction review. This freedom would allow parties to avoid disproportionate discovery costs occasioned by comprehensive preproduction review for privilege or work-product protection").

allows these costs to be avoided. The Committee was also aware that in large scale productions of ESI, the producing party will be aware that many privileged documents will be turned over to the other side; the Committee did not want parties subject to arguments that such disclosures were "intentional" simply because they were inevitable, and therefore concluded that intentional disclosures should be subject to protection under a Rule 502(d) order.

7. The Advisory Committee structured the rule so that the provisions of a Rule 502(d) order could displace the requirements under Rule 502(b) that a privilege holder take reasonable steps to prevent disclosure and reasonable steps to rectify the error. Rules 502(b) and (d) are independent protections. The principal benefit of Rule 502(d) is that it provides certainty at the time of production—rather than waiting for an after-the-fact determination of reasonableness (as Rule 502(b) mandates). Under Rule 502(d), protective orders --- like the one in this case --- are only effective when they approve procedures that would not pass muster if analyzed exclusively under Rule 502(b).

8. Indeed, incorporating Rule 502(b) principles in a Rule 502(d) order makes no sense. Those Rule 502(b) provisions apply by operation of law; the parties don't need a Rule 502(d) order to make the Rule 502(b) provisions applicable. The very purpose of a Rule 502(d) order is to allow the parties greater and more predictable protection from waiver than Rule 502(b) provides.

9. It is notable that nothing in the text of Rule 502(d) indicates that it is subject to Rule 502(b), or that it is intended to operate subject to Rule 502(b) standards. The rule is written without any restriction at all:

> **Controlling Effect of a Court Order**. A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding.

The Committee Note emphasizes that Rule 502(d) does not operate in the shadow of Rule 502(b) by stating that a "court order may provide for return of documents without waiver *irrespective of the care taken by the disclosing party.*"

10. Finally, the Advisory Committee was well aware that a producing party could make two different kinds of mistakes in disclosing privileged material during discovery. One is to mistakenly

3

disclose a document that is clearly privileged or work product, but is one of a million similar such documents. The other is a document that is reviewed and found to be unprotected, but that analysis is mistaken and the document is actually privileged. The Advisory Committee intended for Rule 502 to cover *both* kinds of error. Both errors are more than possible in the context of a large production of ESI. Providing protection for mistaken legal analysis is especially important because without that protection, the party is likely to overdesignate documents --- declaring them privileged on the off chance that their assessment of unprivileged status turns out to be incorrect. Determinations of privilege are obviously not cut-and-dried. That is why we have Special Masters. Subtle issues include whether legal advice is being sought, whether a particular party on the e-mail chain destroys the privilege, and whether the document is prepared for ultimate public disclosure. Legal review of terabytes of information is bound to result in some analytic errors on these complex topics, and these are precisely the kinds of errors that are subject to the protection of Rule 502(d). The costs of analyzing and re-analyzing legal issues in a document are every bit as problematic as the costs of reviewing documents.

11. I have also been asked to express what Rule 502(b) means when it refers to an "inadvertent" disclosure. The Committee, by that term, intended to cover any disclosure that was mistaken. The term "inadvertent" was taken from prior case law (as was the term "waiver"). That case law covered all disclosures that the producing party claimed to be a mistake. There was no intent to require courts to delve deeply into the state of mind of the producing party. Nor was there an intent to have the court review the producing party's efforts to protect the document in determining whether the disclosure was "inadvertent." The party's protective efforts were to be reviewed in determining whether "reasonable steps" were taken to prevent disclosure, not whether the disclosure was mistaken in the first place. The Advisory Committee intended that if disclosure of privileged information was a mistake, then waiver should be determined under the relatively permissive standards of Rule 502(b). The structure laid out by the Committee provides that Rule 502(a) governs voluntary or purposeful disclosures—specifically where the disclosing party is attempting to gain an advantage by selectively

4

DECLARATION OF PROFESSOR DANIEL J. CAPRA                                         Case No. 3:23-MD-3084-CRB

and misleadingly providing only certain documents—while Rule 502(b) governs mistaken disclosures.[2]

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 21, 2025.

_____
Daniel J. Capra

---

[2] Judge Grimm put it as follows:
The courts that have construed "inadvertence" under Rule 502(b)(1) as the equivalent of "unintentional" or "mistaken" have adopted an approach that is much more consistent with Rule 502 as a whole (in which the focus of 502(a) is intentional disclosure, and 502(b) is the opposite of that, namely, mistaken or unintentional disclosure). This approach makes far more sense than the approach taken by the courts that have adhered to the pre-502 case law and duplicatively applied the same balancing factors to determine inadvertence as to measure reasonableness of actions taken to prevent disclosure of privileged or protected information.

Grimm, supra at 33.