1

2  [Submitting counsel below]

3

4                  UNITED STATES DISTRICT COURT
5            OF NORTHERN DISTRICT OF CALIFORNIA
                    SAN FRANCISCO DIVISION
6

7  **IN RE: UBER TECHNOLOGIES, INC.,**          No. 3:23-md-03084-CRB
8  **PASSENGER SEXUAL ASSAULT**
   **LITIGATION**                               **PLAINTIFF'S MOTION TO EXCLUDE**
9                                               **PORTIONS OF UBER'S DEPOSITION**
                                                **DESIGNATIONS FOR HASSAN TURAY**
10
                                                Judge: Honorable Charles R. Breyer
11  This Document Relates to:                   Ctrm.:  D. Ariz., 501

12  *Jaylynn Dean v. Uber Techs., Inc.*,
    N.D. Cal. No. 23-cv-06708
13  D. Ariz. No. 25-cv-4276

14

15

16                  UNITED STATES DISTRICT COURT
                        DISTRICT OF ARIZONA
17                       PHOENIX DIVISION

18

19  JAYLYNN DEAN,                               No. 25-cv-4276-PHX-CRB

20          Plaintiff,                          Judge: Honorable Charles R. Breyer
                                                Ctrm.:  501
21      v.

22  UBER TECHNOLOGIES, INC., et al.,

23          Defendants.

24

25

26

27

28

1

## INTRODUCTION

2    Plaintiff moves to exclude Uber's deposition designations for Mr. Turay that pertain to: (1)

3    the Tempe Police Department's General Offense Report concerning the assault on Ms. Dean (Ex.

4    03956); (2) testimony regarding rider complaints; and (3) testimony indicating that Mr. Turay was

5    not criminally charged, prosecuted, or convicted.

6    Plaintiff intends on playing Mr. Turay's deposition to the jury this week, and so respectfully

7    requests a ruling on this motion on Tuesday, January 20.

8    **Police Report**. Police reports are not admissible where the "source of information or other

9    circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). Here, Uber seeks to

10   admit evidence through Mr. Turay's deposition a portion of the police report, specifically a

11   summary by Officer Lopez of an interview he conducted with Ms. Dean. The interview occurred

12   on November 15, 2023 and was video recorded.[1] Two months later, on January 3, 2024, Officer

13   Lopez completed his written account. Officer Lopez's recent deposition (in December 2025)

14   demonstrates that his written account of the interview is inaccurate. Among other things, there are

15   significant discrepancies between the written account and the video recording and an

16   acknowledgement by Officer Lopez that he may have wrongly attributed statements made by Mr.

17   Turay to Ms. Dean. Therefore, "the source of information or other circumstances indicate a lack of

18   trustworthiness" and so the police report is not exempt from the prohibition against hearsay. Fed.

19   R. Evid. 803(8)(B).

20   The police report is independently inadmissible under Rule 403. The summary of the

21   interview in the police report states that Ms. Dean told the police that when Mr. Turay said "he

22   wishe[d] to have sex with her," she said "'ok' in a sarcastic tone." Ex. C (Ex. 03956) at 0002. In

23   reality, the video of the interview confirms that she never said that. Admission of this indisputably

24   inaccurate document would give Uber ammunition to argue that law enforcement found that Ms.

25   Dean consented, when video evidence contradicts even the contention that she reported saying "ok"

26   *at all*, sarcastically or not. Because the report is obviously erroneous, it has no probative value and

27   presents an extreme risk of unfair prejudice on a crucial issue in the case. At minimum, admission

28

---

[1] There is not dispute that the video is admissible.

1    will require wasting the jury's time on a mini-trial over how the police report came to include such

2    an inaccuracy, and what to do with the report's conclusion that Ms. Dean was being sarcastic.

3         Given the significant prejudice at issue, Plaintiff respectfully requests that if the Court is at

4    all inclined to admit the report, the Court first view the video recording and see the inconsistencies

5    firsthand.

6         Even if the report were admissible, Mr. Turay's testimony regarding it is not. Mr. Turay

7    lacks any personal knowledge of the document and its content (he had not even read it until his

8    deposition). Accordingly, Uber's attempt to admit the report through Mr. Turay, and to elicit

9    commentary from him regarding its contents is inadmissible.

10         **Rider Complaints**. Similarly lacking in foundation, is Mr. Turay's testimony regarding a

11    rider complaint that Uber's counsel represented was made in 2019 about another driver—a report

12    for which he has no personal knowledge. His testimony as the contents of that complaint is therefore

13    impermissible.

14         **Criminal Charges/Prosecution (Plaintiff's MIL No. 1)**. Lastly, Uber seeks to admit

15    testimony that would indicate whether Mr. Turay was subject to criminal charges, prosecution, or

16    conviction, issues which this Court has excluded at trial. *See* PTO 39 at 3 (granting Plaintiff's MIL

17    No. 1).

18         Plaintiff respectfully request that the Court exclude this evidence.

19    <u>**ARGUMENT**</u>

20    I.    <u>**The police report and Mr. Turay's corresponding testimony is inadmissible.**</u>

21        A.    <u>**The report is inadmissible hearsay.**</u>

22         A police report does not fall within Rule 803(8)'s exception to hearsay if "circumstances

23    indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). "Justification for the exception is the

24    assumption that a public official will perform his duty properly and the unlikelihood that he will

25    remember details independently of the record." Fed. R. Evid. 803(8), Advisory Committee Notes;

26    *see also San Francisco Baykeeper v. West Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 744 (N.D. Cal.

27    2011) (noting that "Rule 803(8) deems public report admissible based on the notion that its official

28    author knows what he is talking about and will state the facts accurately").

Here, Officer Lopez's deposition testimony demonstrates that the report is untrustworthy and must be excluded. *See* Fed. R. Evid. 803(8)(B). To start, Officer Lopez's written account of the interview was completed on January 3, 2024, months *after* the interview was conducted on November 15, 2023. Ex. A (Lopez Dep.) at 203:6-20. An attempt to reconstruct statements and details months later substantially increases the risk of inaccuracies, risks that Officer Lopez confirmed manifested here. Specifically, Officer Lopez explained that his written account was intended to only be a summary of what was said, not a detailed account nor a transcript (there was already a video recording of the interview itself): "[T]he summary is just a summary" and "if something's in the summary that's not in the video that just means that it's potentially a mistake when writing…." Ex. A at 95:16-20. And significant and prejudicial mistakes do exist in this report, including potentially incorrectly attributing statements made by Mr. Turay to Ms. Dean. For example, the report reflects that Ms. Dean stated "[Mr. Turay] went on to say he wishes he could have sex with her," Ex. C at .0002, but that statement is not reflected in the video recording of her forensic interview. Ex. A at 94:08-95:08; P-01927 (video).[2] Officer Lopez agreed that this might be an instance "where something a suspect said may accidentally be transposed into the summary of Jaylynn's forensic interview." *Id.* at 95:08 (responding "Oh, okay. Yeah."); *see also id.* at 95:23-96:06 ("Q: And sometimes there may be a time where you accidentally write something that the suspect said in the victim statement correct….A: Potentially. I mean, I haven't looked at this in a while. But I know at some point, one or both parties made that statement").

**B.    The report is inadmissible under Rule 403.**

The report is also inadmissible under Rule 403. A critical discrepancy in the report is that Officer Lopez incorrectly ascribed a statement of consent to Ms. Dean: Officer Lopez writes "[Mr. Turay] went on to say he wishes he could have sex with her. Jaylynn said she did not know how to respond to that and said 'ok' in a sarcastic tone." Ex. C at 0002. This account is *not* in the video recording. Admitting this demonstrably incorrect statement would allow Uber to misleadingly suggest that law enforcement had concluded that Ms. Dean consented, when the video shows

---

[2] Plaintiff is prepared to provide the video recording via electronic transfer, physical media (USB-drive), or, alternatively, play relevant portions for the Court.

otherwise. *See* P-01927 (video). There is no question that this is an incredibly consequential inaccuracy. It therefore has little to no probative value, while its admission would result in severe risk of unfair prejudice and confusion on an issue central to this case. Admission of the report would also result in a mini-trial to resolve the varied inaccuracies—an unnecessary delay when the video recording already exists.[3]  Uber cannot be permitted to use this flawed document to create a false impression of consent where none existed. The report should be excluded under Rule 403.

### C.    Even if the report were admissible, Mr. Turay's testimony about it is not, for he lacks personal knowledge regarding its creation and contents.

The inclusion of the report within the context of Mr. Turay's deposition designations is independently problematic because Mr. Turay lacks personal knowledge as to its creation and contents. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). In fact, Mr. Turay had not even read the report until his deposition. *See* Ex. B (Turay Dep.) at 71:12-20. He therefore cannot provide relevant and reliable testimony regarding its content, which he is asked to do repeatedly in Uber's deposition designations. *See, e.g., id.* at 49:12-52:15 (directing Mr. Turay to confirm the appearance of various statements reflected in the report); *id.* at 56:15-57:6 ("Q: And to be clear, Mr. Turay, this is what Ms. Dean herself, reported to the police. You understand that? …A: Yes"); *id.* at 93:5-8 (testifying that he was "reading a little bit what she told the officer, she said she was being sarcastic. I didn't perceive it that way");[4] *Panchenko v. Comenity Cap. Bank*, 2025 WL 3043959, at *2 (N.D. Cal. Oct. 31, 2025) (excluding questioning related to police report where "the witness testified repeatedly that she had not seen the report before. Therefore, the witness lacks personal knowledge to testify on the matter").

Insofar as Uber argues that this testimony is intended to show consistency between Mr. Turay's version of events and what was documented by the Tempe Police Department of what Ms.

---

[3] Indeed, when asked about the inconsistencies in the report, Officer Lopez agreed that because his summary was not intended to be verbatim, one should instead look to the video for accuracy. *See* Ex. A at 98:06-98:15.

[4] This is now multiple levels of inaccuracies. The report is inaccurate as to what Ms. Dean said, and now Mr. Turay's testimony incorrectly attributes the observations of Officer Lopez to statements made by Ms. Dean. He then confusingly inserts his own perceptions about an interview that he was not present at.

Dean had purportedly said, the testimony is triple hearsay (purported statements by Ms. Dean to Officer Lopez, reduced to a summary writing, read and interpreted by Mr. Turay), cumulative, and prejudicial. Uber has already designated portions of Mr. Turay's testimony regarding his version of events. *See* Ex. B at 41:17-49:11. The jury can and should only evaluate what if any consistencies (or inconsistencies) exist based on admissible evidence; not on an unreliable and inaccurate summary. The tactic of filtering the police report through Mr. Turay, who, in turn, uses the incorrectly recorded statements to validate his own version of events is incredibly misleading and prejudicial. It suggests that Mr. Turay's story was endorsed by law enforcement when it was not.

## II.    Mr. Turay's testimony regarding a rider complaint is inadmissible.

Uber's deposition designations for Mr. Turay include testimony regarding a March 2019 rider complaint by "Jennifer" that Uber's counsel represented as a complaint about a different driver. *See* Ex. B at 30:7-31:23. Obviously, if it is indeed a report against a different driver, Mr. Turay has no personal knowledge about that driver or that report. The gist of this testimony is to set the stage for Mr. Turay to say that the report "says the exact same thing" as a complaint "Jennifer" had also made against Mr. Turay. Ex. B at 31:4-9. But his conclusion on this issue is irrelevant (and displays multiple levels of hearsay). Uber cannot shoehorn this rider complaint that Uber says is about another driver into evidence through the testimony of Mr. Turay, whose personal knowledge of its creation and contents is non-existent. Probative value, if any, is far outweighed by the misleading nature of such testimony, which lacks any foundation. *See* Rule 403.

## III.    Testimony indicating that Mr. Turay was not subject to criminal charges, prosecution, or conviction is excluded under the Court's ruling on Plaintiff's MIL No. 1.

Uber's deposition designations regarding Mr. Turay's "voluntary" appearance for deposition[5] and interactions with the police, his current employment status, and his lack of any arrests, *see* Ex. B at 13:22-24, 16:2-3, 17:10-19, 39:22-23, 40:16-19, all tend to indicate the lack of criminal charges, prosecution, and convictions. This inferential testimony serves as an end-run around the Court's ruling on Plaintiff's MIL No. 1, PTO 39 at 3, and should be excluded.

---

[5] The testimony regarding voluntary appearance for deposition is also inaccurate and misleading as Mr. Turay appeared pursuant to a subpoena.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

Plaintiff respectfully requests that the Court exclude the above portions of Hassan Turay's deposition testimony.

Dated: January 18, 2026

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

## FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated:  January 18, 2026

By:      */s/ Ellyn Hurd*
Ellyn Hurd

PL'S MOT. TO EXCLUDE PORTIONS OF UBER'S
DEPOSITION DESIGNATIONS FOR H. TURAY
N.D. CAL. NO. 3:23-MD-03084; D. ARIZ. NO. 25-CV-4276