1  [Submitting counsel below]

2                    **UNITED STATES DISTRICT COURT**

3                    **NORTHERN DISTRICT OF CALIFORNIA**

4                         **SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION, | Case No. 3:23-md-03084-CRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE DR. MINETTE DRUMWRIGHT'S UNDISCLOSED EXPERT OPINIONS** |
| This Document Relates to:<br><br>*Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708 | Judge:      Hon. Charles R. Breyer<br>Courtroom:  Courtroom 6 – 17th Floor<br><br>Date Filed: January 20, 2026<br><br>Trial Date: January 13, 2026 |

                         **UNITED STATES DISTRICT COURT**

                              **DISTRICT OF ARIZONA**

                               **PHOENIX DIVISION**

| | |
|---|---|
| JAYLYNN DEAN,<br><br>Plaintiff,<br><br>v. UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants | CASE NO. 25-cv-4276-PHX-CRB<br><br>Judge:      Hon. Charles R. Breyer<br>Courtroom:  501 |

---

| | |
|---|---|
| 1 | LAURA VARTAIN HORN (SBN: 258485) |
| | laura.vartain@kirkland.com |
| 2 | **KIRKLAND & ELLIS LLP** |
| | 555 California Street, 30th Floor |
| 3 | San Francisco, CA 94104 |
| | Telephone: (415) 439-1625 |
| 4 | |
| | Kim Bueno (Pro Hac Vice admitted) |
| 5 | **KIRKLAND & ELLIS LLP** |
| | kim.bueno@kirkland.com |
| 6 | 401 W. 4th St. |
| | Austin, TX 78701 |
| 7 | Telephone: (512) 355-4390 |
| 8 | Allison M. Brown (Pro Hac Vice admitted) |
| | **KIRKLAND & ELLIS LLP** |
| 9 | alli.brown@kirkland.com |
| | 2005 Market Street, Suite 1000 |
| 10 | Philadelphia, PA 19103 |
| | Telephone: (215) 268-5000 |
| 11 | |
| | JESSICA DAVIDSON (Pro Hac Vice admitted) |
| 12 | **KIRKLAND & ELLIS LLP** |
| | jessica.davidson@kirkland.com |
| 13 | 601 Lexington Avenue |
| | New York, NY 10022 |
| 14 | Telephone: (212) 446-4723 |
| 15 | SABRINA H. STRONG (SBN: 200292) |
| | sstrong@omm.com |
| 16 | JONATHAN SCHNELLER (SBN: 291288) |
| | jschneller@omm.com |
| 17 | **O'MELVENY & MYERS LLP** |
| | 400 South Hope Street, 19th Floor |
| 18 | Los Angeles, CA 90071 |
| | Telephone: (213) 430-6000 |
| 19 | Facsimile: (213) 430-6407 |
| 20 | PATRICK L. OOT, JR. (*Pro Hac Vice* admitted) |
| | oot@shb.com |
| 21 | **SHOOK, HARDY & BACON, LLP** |
| | 1800 K Street NW, 10th Floor |
| 22 | Washington, DC 20006 |
| | Telephone: (202) 783-8400 |
| 23 | Facsimile: (202) 783-4211 |
| 24 | ALYCIA A. DEGEN (SBN: 211350) |
| | adegen@shb.com |
| 25 | MICHAEL B. SHORTNACY (SBN: 277035) |
| | mshortnacy@shb.com |
| 26 | 2121 Avenue of the Stars, Suite 1400 |
| | Los Angeles, CA 90067 |
| 27 | Telephone: (424) 285-8330 |
| | Facsimile: (424) 204-9093 |
| 28 | |

1  CHRISTOPHER V. COTTON (*Pro Hac Vice* admitted)
   ccotton@shb.com
2  255 Grand Boulevard
   Kansas City, MO 64108
3  Telephone: (816) 474-6550
   Facsimile: (816) 421-5547
4
   Counsel for Defendants
5  UBER TECHNOLOGIES, INC.,
   RASIER, LLC, and RASIER-CA, LLC

## I.      Introduction

Plaintiff's elaborate attempts to connect the dots between Dr. Drumwright's challenged trial opinions and her expert report only underscores the opinions' absence in the report itself. Plaintiff suggests that the reports are offshoots of opinions stated nowhere in her report, which Uber could have identified by drawing inferences from the opinions she actually disclosed and then analyzing documents not cited in the report, most of which connect to her report only insofar as she claimed to rely on every deposition in this litigation, including the thousands of exhibits admitted in those depositions. That is the antithesis of Rule 26's requirement that Dr. Drumwright's report include a "complete statement of *all* opinions" she would present at trial, as well as the "the basis and reasons for them." Rule 26 did not require Uber to analyze every deposition exhibit in this case to piece together potential opinions tenuously related to subjects actually addressed in Dr. Drumwright's report.

Plaintiff's contention that Dr. Drumwright's serial departures from her report were harmless because they articulated Plaintiff's known trial themes gets things precisely backwards. If Plaintiff intended to present core pillars of her case through Dr. Drumwright, Uber was entitled to notice so that it could depose Dr. Drumwright and effectively cross-examine her on those subjects. Not learning *until an expert's trial testimony* that she will serve as a mouthpiece for critical trial theories is obviously prejudicial. Under Rule 37, the mandatory remedy for that prejudice is to strike Dr. Drumwright's undisclosed opinions.

## II.     Plaintiff Identifies Nothing in the Drumwright Report Previewing Her Trial Opinion that Structural and Organizational Factors Caused Uber to Prioritize Growth over Safety.

Dr. Drumwright repeatedly opined at trial that Uber prioritized growth over safety, not only in its marketing but in other areas such as background checks, and attributed this alleged conduct to organizational factors such as executive compensation and reporting responsibilities within the company. Plaintiff fails to identify either that general opinion or the supporting explanation anywhere in the report.

1   Plaintiff cites just a single passage of Dr. Drumwright's opinion addressing the relationship between growth and safety: "Uber knew safety and trust were critical attributes for the usage of its rideshare business" and so "spent **billions** of dollars marketing Uber rides in the U.S. as safe without disclosing the dangers and risk factors." Opp. 3 (quoting Drumwright Rep. ¶ 163). That statement is specific to Uber's alleged failure to disclose the risk of sexual assault in its safety marketing. But Dr. Drumwright's trial testimony was not so limited. She opined that Uber prioritized growth over safety across the board—not just in its safety marketing—and illustrated that opinion by reference to Uber's background checks, Trial Tr. (hereinafter "Tr.") 330:4-22, 334:6-19; Uber's consideration of insurance benefits from an unspecified "safety program," Tr. 350:3-352:1; and internal reports of employee views on the general subject of safety, not safety marketing. Tr. 330:4-22. Further, she cast the issue as endemic based on structural corporate traits such as reporting responsibilities and compensation practices. Tr. 330:4-22, 352:2. None of this was in her report. A single statement in a 194-page report that growth drove safety marketing, in particular, did not provide notice of this sweeping company-wide opinion.

Start with Dr. Drumwright's opinions that compensation practices and reporting responsibilities systematically biased decision-makers in favor of growth over safety. Plaintiff's only attempt to locate an opinion on compensation practices in Dr. Drumwright's report is to note that the report "cited documents concerning how Uber tied safety into its 'key performance indicators' as part of analyzing how Uber portrayed its risk in safety reports." Opp. 6. The footnote Plaintiff cites discusses safety metrics, not compensation. *See* Drumwright Rep. ¶ 457 n.779. Plaintiff argues that Uber's compensation practices are a "subordinate point to Dr. Drumwright's larger discussion of growth incentivizing promotion of safety sentiment at the expense of actual safety," but Dr. Drumwright's report disclosed no opinion that Uber "incentiviz[ed]" anything— her opinions on Uber's compensation practices came out of the blue. Opp. 6.

The same is true of Dr. Drumwright's testimony regarding an "inherent conflict" relating to the placement of Uber's "screening department" in its "growth department." Tr. 330:14-22, 334:6-19. Plaintiff argues that this is simply "a fact that supports her fully-disclosed opinion," "contrasting Uber's marketing about its background checks with internal concerns about the

1  'quality' of those background checks." Opp. 6.  But there is a far cry between noting that some employees criticized the efficacy of Uber's background checks and opining that reporting responsibilities at the company created an "inherent conflict" on the subject akin to "the fox guarding the henhouse."  The latter is expert opinion that Dr. Drumwright did not disclose and was not qualified to offer.

Likewise, despite its exhaustive factual recitation, Dr. Drumwright's report did not preview her trial testimony that "people within Uber were concerned about the focus on growth compromising safety." Tr. 333:24-334:2.  Plaintiff points to nothing in her report making that claim or citing support for it; her only assertion is that the exhibit Dr. Drumwright relied on was among the thousands of exhibits used in depositions in this case—every single one of which Dr. Drumwright purportedly relied on.  Opp. 6; *see* Drumwright Rep., Ex. B at 1–31 (listing materials considered by Dr. Drumwright).  The same is true for Dr. Drumwright's testimony regarding Uber's consideration of safety benefits in connection with an unspecified safety program.  Contrary to Plaintiff's contention that "Dr. Drumwright discusses this document as an example of pseudo-corporate responsibility," Opp. 7, she discussed the document ***immediately*** after testifying that at Uber as a whole "growth was . . . prioritized over safety," and explicitly described it as an "as an example of a document that explains the priorities." Tr. 350:2-21.  Plaintiff does not contend that the document or her opinions about it were mentioned anywhere in her report.

Plaintiff attempts to paper over her nondisclosure with a series of non-sequiturs.  She argues that Uber should have anticipated her opinions because, before setting forth Dr. Drumwright's opinions, her report included eight pages describing Uber's business model, including the importance of growth to that business model. Opp. 4.  The importance of growth to Uber's business is not disputed.  But stating that uncontroversial fact is not the same disclosing an opinion that structural attributes drove Uber to systematically prioritize growth over safety.  Similarly, Plaintiff asserts that some of Dr. Drumwright's testimony concerned the "Stand for Safety campaign" discussed in her report, Opp. 4, but Dr. Drumwright's report describes "Stand for Safety" only as an internal Uber value, not a campaign, *see, e.g.*, Drumwright Rep. ¶ 314, while the testimony she cites concerns a "Moving Forward" campaign that her report does not mention once. Tr. 348:2-9.

In the end, Plaintiff does not (and cannot) contend that Dr. Drumwright's report disclosed her trial testimony that Uber as a whole prioritized growth over safety in areas as wide-ranging as background checks and local safety programs due to structural factors such compensation metrics and reporting responsibilities. Her report specifically lists and identifies her opinions, and none remotely resembles that trial testimony. *See* Drumwright Rep. ¶ 2. Despite this, Plaintiff's apparent position is that Uber should have extrapolated Dr. Drumwright's safety-marketing opinion beyond marketing to the company as a whole; then prepared to defend against any non-marketing opinion Dr. Drumwright might offer based on any document entered as a deposition exhibit at some point in this litigation; and, on top of that, somehow anticipated the undisclosed structural features that Dr. Drumwright testified drove Uber's prioritization. That approach cannot remotely be squared with Rule 26's requirement to disclose "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

### III. Plaintiff Identifies Nothing in the Drumwright Report Previewing Her Trial Opinion that Various Structural Considerations Prevented Change After Mr. Khosrowshahi Became CEO.

Dr. Drumwright testified at trial that the "stickiness" of corporate behavior, Mr. Kalanick's post-CEO role on Uber's board, and Mr. Khosrowshahi's compensation metrics all prevented a changed approach to safety after Mr. Khosrowshahi became CEO. Plaintiff does not dispute that all of those subjects constitute expert opinion. And Plaintiff does not even try to locate any such opinions in Dr. Drumwright's report. The best she can muster is to assert that Dr. Drumwright's "opinions discuss practices that were consistent from before and after 2017." Opp. 8. But that is the purported factual basis for an opinion that Dr. Drumwright's report does not state—the report simply does not compare safety during Mr. Kalanick's and Mr. Khosrowshahi's tenures, and certainly does not opine that "stickiness," Mr. Kalanick's board seat, or Mr. Khosrowshahi's compensation served as obstacles to change. Those comparative opinions and her structural explanations for them were presented for the first time at trial.

**IV.     Plaintiff Identifies Nothing in the Drumwright Report Previewing Her Trial Opinion that RideCheck "Does Nothing."**

Plaintiff contends that Dr. Drumwright disclosed her opinion that RideCheck "does nothing" by listing it among "safety features that Uber knew did not improve safety." Opp. 8. But her report discloses no such opinion. Rather, it states that an increase in sexual assault or misconduct rates "despite the safety features that were in effect . . . strongly suggests that those features were effective as anti-warnings, resulting in more vulnerable customers taking Uber in risky contexts more frequently." Drumwright Rep. ¶ 366. It then states that "[a]lternatively," the alleged increase "*could* suggest that the safety features themselves were ineffective in reducing SA/SM." *Id.* (emphasis added). An "alternative" remark that Uber's safety features as a whole "could" be ineffective is not an opinion about the efficacy of RideCheck—much less does it disclose Dr. Drumwright's unqualified trial opinion that RideCheck "does nothing." Tr. 405:2-8.

**V.     Plaintiff Identifies Nothing in the Drumwright Report Previewing the Remaining Opinions Challenged in Uber's Motion.**

Plaintiff's attempts to trace the remainder of Dr. Drumwright's challenged opinions to her report are similarly far-fetched:

- ***Driver Cancellation.***  Plaintiff does not dispute that Dr. Drumwright's report does not mention driver cancellation as a risk factor predictive of sexual assault or misconduct. Opp. 9. Instead, she notes that documents cited in her report reference driver cancellation as a predictor. *Id.* But her report cites to specific pages of those documents, which say nothing about driver cancellation. Drumwright Rep. ¶ 474, n. 454 (citing UBER_JCCP_MDL_004567739–43[1]; UBER_JCCP_MDL_000503308–3308.0005[2]"). Rule 26 did not require Uber to review uncited portions of every document cited in the report's 846 footnotes to anticipate opinions stated nowhere in the report.

---

[1] *See* Ex. A (P-03177) to the concurrently filed Declaration of Laura Vartain Horn.
[2] *See* Ex. B (P-01092) to the concurrently filed Declaration of Laura Vartain Horn.

-8-

- ***Targeting Hispanics.*** Plaintiff likewise appears to concede that Dr. Drumwright's report did not disclose her opinion that Uber's marketing targeted Hispanics. Opp. 9. Plaintiff insists that this trial opinion nevertheless falls under Dr. Drumwright's report because it "logically flows from the discussion in her report of how companies, including Uber, engage in sub-population targeting." *Id.* But the report states no general opinion that Uber "engage[d] in sub-population targeting"—it opines (at length) that Uber's marketing targeted women and "Intoxication and Near Bar Areas, Late Night, Weekends, and Holidays." *See* Drumwright Rep. ¶¶ 240-311. Dr. Drumwright's trial testimony on targeting Hispanics does not relate to those opinions, but rather appears calculated to prejudice Uber based on case-specific considerations.

- ***Other Safety Reports.*** Dr. Drumwright's testimony that Uber's Safety Report is not "unique" because companies like Google and Meta release "transparency reports" detailing their productions of data to law enforcement is similarly undisclosed. Tr. 389:14-390:3. Contrary to Plaintiff's contention, Opp. 9, Dr. Drumwright's report's statement that "companies use various forms of strategic communications (e.g., advertising, safety reports, blogs and speeches by executives, digital marketing) when they create anti-warnings" provided no such notice—as Dr. Drumwright testified, Google and Meta produce "transparency reports," not "safety reports." Tr. 389:14–390:3.

- ***Themes v. Ads.*** Plaintiff argues Dr. Drumwright's testimony that consumers typically recall themes rather than specific ads "is basic stuff for a marketing expert," Opp. 10, but Rule 26 does not contain a "basic stuff" exception. Plaintiff misleads in asserting that Uber questioned Dr. Drumwright about this opinion in her deposition: Dr. Drumwright ***volunteered*** the opinion in an attempt to link her marketing opinions to ads that Plaintiff does not claim to have seen. Drumwright Dep. Oct. 26, 2025 at 45:6–14. After she did so, Uber's only question was whether

Dr. Drumwright's report disclosed the opinion. Dr. Drumwright confirmed that it did not. *Id.* at 55:17–56:1.

### VI. The Portions of Dr. Drumwright's Trial Testimony that Deviated from the Scope of Her Expert Reports Were Not Harmless

Plaintiff fails to carry her burden to show that the violation of Rule 26 was harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). Plaintiff's assertion that "Uber was able to explore Dr. Drumwright's testimony on cross-examination" (Opp. 11) or can rebut her opinions in its defense case embrace the precise prejudice Rule 26 protects against, replacing timely disclosure with on-the-fly trial responses. Even where an untimely expert opinion is disclosed well in advance of trial, it is not harmless when it undermines a party's ability "to meaningfully depose or cross-examine" the expert about her opinions and "the reasons and bases therefore, and the facts or data he considered in forming his opinions." *Pineda v. City & Cnty. of San Francisco*, 280 F.R.D. 517, 522 (N.D. Cal. 2012).

Unsurprisingly, the only case Plaintiff cites treating cross-examination as an adequate substitute for timely disclosure involved a new "expert opinion offered *in response to prior trial testimony*"—an opinion that, by definition, cannot be disclosed in advance of trial. *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006) (emphasis added). That holding has no application here—Uber had no opportunity to depose Dr. Drumwright on opinions disclosed for the first time at trial. The loss of that opportunity is per se prejudicial, regardless of whether Uber can present evidence to compete with Dr. Drumwright's untested expert opinions. *See Pineda*, 280 F.R.D. at 522; *PharMerica Mountain LLC v. Arizona Rehab Campus LLC*, 2022 WL 1689370, at *3 (D. Ariz. May 26, 2022) ("Where late disclosure of a supplemental expert opinion deprives a party of the opportunity to . . . meaningfully depose the expert on her new opinions, courts have found that the late disclosure is not substantially justified or harmless.").

Plaintiff's observation that Dr. Drumwright's new testimony goes to "what this case is all about" heightens, rather than rebuts the prejudice. Opp. 10-11. If Plaintiff intended to present her theory of the case with Dr. Drumwright's expert imprimatur, a meaningful opportunity to

1  depose and cross-examine her on the relevant opinions is more important—not less.  The only
2  authorities Plaintiff cites for this remarkable argument are cases finding harmlessness where the
3  same opinion *was disclosed in a different expert's report*.  See *Withrow v. Spears*, 967 F.Supp.2d
4  982, 1004 (D. Del. 2013) ("[T]he subject matter of Dr. Dove's opinion is already covered . . . in
5  the Desch Report."); *Lorme v. Delta Air Lines, Inc.*, 251 F. App'x 691, 693 (2d Cir. 2007) ("The
6  final pre-trial order put Lormé on notice of Delta's defense that her back injury reflected a
7  preexisting condition. The report of Dr. Rubenstein, who, though never called to the stand, was
8  listed as a witness, went even further, explaining that the proximate cause of her injury was
9  morbid obesity, not the collision.").[3]  They do not support a finding of harmlessness here.

Plaintiff's observations that Uber did not designate a rebuttal expert and moved to exclude some of Dr. Drumwright's only underscore the prejudice.  Uber had no opportunity to challenge Dr. Drumwright's new opinions, whether via a rebuttal expert or via a pretrial *Daubert* motion. As a result, the jury received Plaintiff's theory of the case through an expert whose severely prejudicial opinions could not be properly tested.

---

[3] *Schneider v. Molony*, 418 F. App'x 392, 396 (6th Cir. 2011) did not involve Rule 37 harmlessness at all:  The court recognized that the admission of undisclosed opinions "may have been an abuse of discretion" and found harmlessness only for purposes of reversible-error analysis.  *Id.*

| | |
|---|---|
| Dated: January 20, 2026 | **KIRKLAND & ELLIS LLP** |
| | By: /s/ *Laura Vartain Horn* |
| | **KIRKLAND & ELLIS LLP**<br>LAURA VARTAIN HORN<br>KIM BUENO<br>ALLISON M. BROWN<br>JESSICA DAVIDSON |
| | **O'MELVENY & MYERS LLP**<br>SABRINA H. STRONG<br>JONATHAN SCHNELLER |
| | *Counsel for Defendants* |

-12-
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE
CASE NO. 3:23-md-03084-CRB