1  [Submitting counsel below]

2

3  UNITED STATES DISTRICT COURT

4  NORTHERN DISTRICT OF CALIFORNIA

5  SAN FRANCISCO DIVISION

6

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION, | Case No. 3:23-md-03084-CRB  **[CORRECTED] DEFENDANTS' TRIAL BRIEF CONCERNING CROSS-EXAMINATION OF THOMAS R. TREMBLAY AND MOTION TO STRIKE IMPERMISSIBLE TESTIMONY** |
| This Document Relates to: *Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708 | Judge: Hon. Charles R. Breyer  Courtroom: Courtroom 6 – 17th Floor  Date Filed: January 23, 2026  Trial Date: January 13, 2026 |

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| JAYLYNN DEAN, Plaintiff, v. UBER TECHNOLOGIES, INC., et al., Defendants | CASE NO. 25-cv-4276-PHX-CRB  Judge: Hon. Charles R. Breyer  Courtroom: 501 |

I.      INTRODUCTION

Pursuant to the Court's direction during today's proceedings,[1] Uber respectfully submits this trial brief to address two issues concerning the scope of permissible cross examination of Plaintiff's "law enforcement and public safety expert," Thomas R. Tremblay.

First, Mr. Tremblay offered numerous opinions concerning safety features he believes Uber should have adopted, which he opined would have "reduced the risk" of Plaintiff's specific alleged assault. This testimony, which was composed entirely of summarizing and commenting on record evidence—which the jury is more than capable of evaluating itself—was impermissible and should be stricken. But in any event, Uber is entitled to rebut Mr. Tremblay's opinions on cross by showing that Uber did not "increase the risk to" Ms. Dean, because she would not have used those features even if Uber had included them.

Second, Uber is entitled to cross-examine Mr. Tremblay about the contents of Officer Lopez's police report under Federal Rules of Evidence 703 and 705, because that document constitutes a basis for Mr. Tremblay's opinion—as his report itself confirms.

II.     **PERMISSIBLE CROSS EXAMINATION ON TREMBLAY'S OPINIONS ABOUT EFFECTIVENESS OF PRECAUTIONS**

Mr. Tremblay spent nearly four hours of court time walking through Uber documents and testimony, arguing to the jury that evidence shows "Uber knew" it should have implemented features like "woman matching" generally, and giving an ultimate opinion that Uber "increased the risk to" Ms. Dean specifically by failing to implement those features. Mr. Tremblay's opinion was inadmissible commentary on the evidence and should be stricken. At a minimum, Uber must be allowed to rebut Mr. Tremblay's narrative by showing that it did not "increase the risk to" Ms. Dean.

Mr. Tremblay's direct testimony started by commenting on the credibility of Mr. Turay's testimony—arguing that Mr. Turay's testified like a "classic offender," and claiming that Mr.

---

[1] Uber respectfully withdraws its initial Trial Brief Concerning Cross-Examination of Thomas R. Tremblay and Motion to Strike Impermissible Testimony filed on January 23, 2026 (25-cv-4276; ECF No. 87) (23-md-03094; ECF No. 5076) for the reasons discussed in court on January 23, 2026.

1   Turay's testimony was "consistent" with "offenders [who] oftentimes den[y] to blame and shame
2   the victim."  Rough Tr. 1326:20-24 ("I had seen his testimony before and saw it again yesterday.
3   And what was interesting to me ... is that this was really kind of classic offender context, if you
4   will."); 1327:17-21 ("the response I saw yesterday and in my evaluation of his statement is that
5   this is consistent with what I saw and what the research and training where that combines where
6   offenders this is an offenders oftentimes denial to blame and shame the victim.").  Mr. Tremblay
7   then spent hours summarizing Uber documents and testimony and arguing to the jury that it
8   shows Uber "knew" it "had a problem."  Rough Tr. 1341:7.  He presented a demonstrative deck
9   that included numerous slides that simply excerpted Uber documents and testimony and claimed
10  they showed "What Uber Knew" or answered the question "What did Uber know?"  *See*
11  Tremblay Demonstrative Deck at 42-43, 46-47, 52-69, 71-93.  Mr. Tremblay opined that these
12  documents and testimony show that Uber should have implemented various measures that it
13  "knew" about—such as in-vehicle cameras and "women matching."  Rough Tr. 1362:8-16;
14  Unpaginated Rough Transcript ("Uber did not at the time have women matching options available
15  to them, despite them identifying it as having value to reduce sexual misconduct.").

16         This was closing argument, not permissible expert testimony.  As Uber already explained,
17  an expert cannot give expert opinion that either (1) simply summarizes record evidence, or (2)
18  opines on the intent or "state of mind" of a party.  *See* ECF No. 4349 at 5-6; *see* Unpaginated
19  Rough Tr. (The Court: "the relevance of the quote, advertising, . . . is that it was an admission by
20  Uber … that is their state of minds.").  Expert testimony that merely summarizes documents and
21  testimony "is inappropriate under Rule 702, as the jury is in as good a position as [Mr. Tremblay]
22  to draw conclusions from the evidence, and is capable of drawing its own inferences."  *Siqueiros,*
23  *et al, v. General Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022) (excluding expert
24  testimony that summarized and restated "deposition testimony and internal GM
25  documents").  And "a party's knowledge, state of mind, or other matters related to corporate
26  conduct and ethics are not appropriate subjects of expert testimony because opinions on these
27  matters will not assist the jury."  *Gomez v. Am. Med. Sys. Inc.*, 2021 WL 1163087, at *4 (D. Ariz.
28  Mar. 26, 2021) (citing *Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501, 517-18 (S.D. W. Va. 2014));

1  *McCalla v. ACE Am. Ins. Co.*, 2022 WL 2290552, at *9-10 (D. Ariz. June 24, 2022) ("To the extent that Flood's testimony is based on his view of the corporate motivation of CorVel, expert testimony as to such matters is ordinarily inappropriate."). Here, Mr. Tremblay did *both*—he simply summarized the evidence, and gave his view of what it showed, *and* testified about what Uber "knew." Mr. Tremblay's opinions were inadmissible and should be stricken.

At a minimum, Uber should be allowed to introduce factual evidence that rebuts the factual narrative that Mr. Tremblay constructed—a narrative that told the jury that Uber increased the risk of the *specific alleged assault* in this case.

Cross-examination is permissible "'as to all matters reasonably related to the issues [the witness] put in dispute by [his] testimony on direct.'" *United States v. Ruiz*, 665 F. App'x 607, 611 (9th Cir. 2016) (quoting *United States v. Vasquez*, 858 F.2d 1387, 1392 (9th Cir. 1988)). And "cross-examination [is] impermissibly limited both when the defendant [is] not given adequate scope to impeach a witness's credibility, ... and when matters clearly relevant to crucial issues [are] excluded." *United States v. Uramoto*, 638 F.2d 84, 87 (9th Cir. 1980).

Here, Mr. Tremblay didn't just testify about—and "put in dispute," *Vasquez*, 858 F.2d at 1392—whether Uber should have taken additional safety measures as a general matter. He also testified that by failing to implement these particular measures, Uber increased the risk that *Ms. Dean specifically* would be assaulted. Plaintiff's counsel directly asked Mr. Tremblay if Uber "actually increased the risk *to her*" by failing to implement the measures he said were required, and Mr. Tremblay testified that Uber had done just that. Unpaginated Rough Transcript ("Q. And did you form any opinions that based on what you reviewed *that the actions that Uber did take with respect to Ms. Dean actually increased the risk to her*? A. I believe by not taking action, not creating responses, it does increase the risk." (emphasis added)) Similarly, Mr. Tremblay testified that Uber's failure to implement his preferred measures "increased ... the risk of *the crime* happening", with "the crime" apparently referring to the alleged assault of Ms. Dean. Unpaginated Rough Transcript ("Q. And did you find that any of the responses they took may have in fact increased the vulnerabilities or the risk of the crime happening? A. Yes.").

Mr. Tremblay thus directly opined that Uber "increased the risk" that *the specific alleged*

-3-
DEFENDANTS' TRIAL BRIEF CONCERNING CROSS-EXAMINATION OF THOMAS R. TREMBLAY
CASE NO. 3:23-md-03084-CRB

*assault on Ms. Dean* would occur by failing to do what he claimed it should have done—such as use a "women matching" program. As such, Uber is entitled to cross Mr. Tremblay on this opinion by asking him about evidence that shows that Uber did not "increase the risk" *to her*, because Ms. Dean would not have taken advantage of these features even if they were available to her. For example, the evidence shows that Mr. Tremblay had access to and could have used Lyft's "women matching" program for her ride on the night of November 14, 2023—but Ms. Dean decided not to, and instead used Uber. Ms. Dean's decision to forgo a readily available women-matching option directly undercuts Mr. Tremblay's premise that offering such an option on Uber would have reduced the risk to her. This directly contradicts Mr. Tremblay's opinion that Uber "increased the risk" *to Ms. Dean* (and increased "the risk of the crime") by not having a "women matching" program.

Similarly, Mr. Tremblay testified that Uber's communications to customers "increased the risk to Ms. Dean" by supposedly not communicating enough information about Mr. Turay.[2] Uber is entitled to refute this assertion, introducing evidence that Ms. Dean did not look at her app on the night of November 14, 2023, and that providing additional information in the app would not have changed the "risk" *to her*.

Uber maintains that Mr. Tremblay's testimony is inadmissible and should be stricken. But in any event, Uber should be allowed to cross-examine Mr. Tremblay regarding evidence that contradicts the factual narrative he presented to the jury that Uber "increased the risk to" Ms. Dean specifically. Cross-examining Mr. Tremblay with evidence that contradicts this narrative both undermines his "credibility" and goes "to crucial issues"—i.e., whether Uber failed to

---

[2] Unpaginated Rough Tr. ("Q. And in terms of what Uber communicated to the community and engaging the community, how if at all did that increase the risk to Ms. Dean? A. As I said earlier in my testimony, when we don't involve community engagement, we don't let them know of the totality and prevalence of the problem on the platform, what we don't let them know that we've identified risk factors that can predict sexual assault, we are missing a key component of crime prevention."); ("Q. And are you aware of any communications that Uber made to Ms. Dean on the night of this incident saying this is a risky ride, you should records it, if he doesn't, are you aware of anything like that? A. No, and this is part of the, the problem I've been talking about is that when we know there are risk factors present but the rider is completely unaware there is no community engagement around that her they're less likely to engage in the safety precautions that they should.").
-4-
DEFENDANTS' TRIAL BRIEF CONCERNING CROSS-EXAMINATION OF THOMAS R. TREMBLAY
CASE NO. 3:23-md-03084-CRB

include safety features that could have reduced the risk of the alleged assault—and is thus critical to Uber's defense. *Uramoto*, 638 F.2d at 87 (limitation of cross-examination was erroneous when "the excluded cross-examination could have colored the jury's perception of [the witness's] credibility" and "concerned the heart of [the] defense").

### III.  PERMISSIBLE CROSS EXAMINATION ABOUT DET. LOPEZ'S REPORT

Because Mr. Tremblay formed his opinions after reviewing, citing, and selectively disregarding Detective Lopez's police report, Rules 703 and 705 entitle Uber to cross-examine him about the contents of that police report to undermine his credibility.

Together, Federal Rules of Evidence 703 and 705 "address the extent to which an expert may be questioned about the bases for his or her opinion." *Jensen v. EXC, Inc.*, 82 F.4th 835, 847 (9th Cir. 2023). "Rule 703 generally allows experts to rely on otherwise inadmissible evidence in formulating their opinions '[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Id.* (quoting Fed. R. Evid. 703)). Rule 703 thereby "creates a shield by which a party may enjoy the benefit of inadmissible evidence by wrapping it in an expert's opinion." *United States v. A & S Council Oil Co.*, 947 F.2d 1128, 1135 (4th Cir. 1991).

"[T]o counteract the potential advantage this liberalized rule confers on the proponent of the opinion," *id.*, however, "Rule 705 then broadly allows the opposing party, on cross-examination, to elicit any 'underlying facts or data' on which the opinion was based." *Jensen*, 82 F.4th at 847–48 (quoting Fed. R. Evid. 705). In other words, Rule 705 provides a "cross-examiner's sword, and, within very broad limits, he may wield it as he likes," thereby "permit[ting] the cross-examiner to require the expert to reveal otherwise-inadmissible underlying information before the jury, subject only to Fed. R. Evid. 403's prejudice/probative value balancing test." *A & S Council Oil Co.*, 947 F.2d at 1135.

One permissible purpose of Rule 705 cross-examination is to present evidence "undercutting the credibility of [experts'] opinions"—such as an expert's "failure to account" for facts presented in a report he reviewed, but then discounted because it did not support his ultimate opinion. *See Richter v. Romero*, 2024 WL 309940, at *2 (D. Ariz. Jan. 26, 2024) (permitting

1    cross-examination about "post-assault investigation report" that expert reviewed but partially
2    disagreed with).

3        For the same reason, Rule 705 entitles Uber to cross-examine Mr. Tremblay regarding
4    facts recounted in Detective Lopez's report that undermine the narrative Mr. Tremblay presented
5    to the jury. Detective Lopez's police report constitutes part of the "underlying facts and data"
6    Mr. Tremblay considered when forming his opinions. Fed. R. Evid. 705. Mr. Tremblay's report
7    not only lists the police report among his "materials considered," see Tremblay Rep., Schedule
8    A.1, p. 3, but *also affirmatively relies on Detective Lopez's report for information critical to his*
9    *opinions* about the supposed "steps Uber knew would reduce the likelihood of sexual assault /
10   misconduct during Plaintiff J.D.'s ride include failure to require video and/or audio recordings
11   during the Incident Ride." *Id.* at 1. Specifically, Mr. Tremblay cites and relies on Detective
12   Lopez's report when stating that "[t]he police report notes that while communicating with Uber"
13   about the driver's records for the ride, … Uber told the police that cameras / recordings are at the
14   discretion of each individual driver," and "indicates that Driver H.T. indicated he did not have a
15   camera, or recording of the ride, and the search of his vehicle for a camera / recording device was
16   negative." Tremblay Schedule A.1, p. 17. If Mr. Tremblay relied on Uber's out-of-court
17   statements in the report to form his opinions, Uber is entitled to cross-examine him on Ms.
18   Dean's out-of-court statements in the same report.

19       For this reason, Plaintiff's position that Mr. Tremblay did not rely at all on the report is
20   wrong. But even if Mr. Tremblay had not *relied* on the report (and he did), it would still be
21   admissible under Rule 705 because he *considered* it. "[T]he underlying facts or data on which the
22   opinion is based may also include facts that are 'unfavorable to the opinion'—i.e., facts that are
23   among those considered by the expert but that, for one reason or another, were discounted in
24   formulating the expert's opinion." *Jensen*, 82 F.4th at 848.[3] Three Plaintiff experts–Dr.

---

[3] In *Jensen*, the Ninth Circuit held that Rule 705's rule that materials "considered" by an expert are admissible on cross-examination does not extend to *conclusions* and *opinions* in contrary reports from non-testifying experts, because "the unique situation of questioning one expert about the competing opinion of a non-testifying expert on the very same issue is one that raises special concerns." *Jensen*, 82 F.4th at 848. But the police report at issue here does not include opinions or conclusions—just factual matter reciting what the officer observed. This factual material in the

1   Drumwright, Dr. Valliere, and now, Mr. Tremblay–have been permitted broad leeway to weave
2   years and oftentimes decade-old documentary evidence into tendentious trial narratives reflecting
3   no discernible expertise.  It would be grossly unfair and prejudicial to insulate that testimony
4   from scrutiny by foreclosing Uber from questioning Mr. Tremblay about other documentary
5   evidence that he considered but declined to weave into his narrative because it undermines his
6   conclusions.

7   And Mr. Tremblay "fail[ed] to account for" Detective Lopez's report to the extent it did
8   not fit his other opinions or preferred narrative of the events, "undercutting the credibility of his
9   opinions." *Richter*, 2024 WL 309940, at *2.  For example, Mr. Tremblay's testimony on direct
10  essentially vouched for the truth of Plaintiff's allegations, claiming he saw "DNA evidence that
11  did corroborate what … Ms. Dean has, has claimed," and also opining that Mr. Turay was an
12  "offender," *supra* at 1-2.  But Detective Lopez's report casts doubt on the truth of those
13  allegations, stating that "Ms. Dean told the police that when Mr. Turay said "he wishe[d] to have
14  sex with her," she said "'ok' in a sarcastic tone," and that when Mr. Turay "told her he was going
15  to pull over to find a place to park," Ms. Dean "again said 'ok,' in a sarcastic tone." Dkt. 3956 at
16  -0002.

17  Because the facts recounted in the police report support a different narrative from the
18  narrative Mr. Tremblay presented, and because Mr. Tremblay reviewed the report but chose to
19  rely on some parts while disregarding others, "it is fair cross-examination under Rule
20  705." *Richter*, 2024 WL 309940, at *3.  Mr. Tremblay's decision to review, selectively rely on,
21  and partially disregard the police report is relevant to the jury's evaluation of his credibility and
22  his factual narrative.

23  No risk of undue prejudice weighs against permitting this line of questioning.  Plaintiff
24  claims that admitting the report itself is unduly prejudicial because she disputes Detective

---

report—which was considered and reviewed by Mr. Tremblay—is fair game for cross-examination.  *See Richter*, 2024 WL 309940, at *3 (report in which "the investigator did not reach a conclusion" was *factual* material that could be used to cross-examine expert, and did not raise the special concerns implicated by cross-examining an expert with another witness's *opinion*).

-7-
DEFENDANTS' TRIAL BRIEF CONCERNING CROSS-EXAMINATION OF THOMAS R. TREMBLAY
CASE NO. 3:23-md-03084-CRB

Lopez's recitation of Ms. Dean's statement that Mr. Turay "went on to say he wishes he could have sex with her. Jaylynn said she did not know how to respond to that and said 'ok' in a sarcastic tone." Dkt. 5033 at 3. According to Plaintiff, that statement is "demonstrably false" because it is not in "the video recording." *Id.* But that does not demonstrate falsity: Detective Lopez has stood by the veracity of that statement, testifying under oath "that should definitely be in there," Lopez Dep. 96:9–16, and that he "met with Ms. Dean [on] three occasions"—only one of which was video recorded. Lopez Dep. 202:21-22.

Nor does Detective Lopez's report display sufficient indicia of untrustworthiness to merit its exclusion. The factors bearing on a public report's trustworthiness are (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation. *See Willis*, 2014 WL 12596313, at *13. None of those factors raise questions about the trustworthiness of Detective Lopez's report here. First, the fact that Detective Lopez's report about the November 15, 2023 incident was dated January 3, 2024 (about 6 weeks later) does not render his investigation untimely—contemporaneity is not a prerequisite for trustworthiness; a report rendered several months after a complaint may be still sufficiently reliable. *Sussel v. Wynne*, 2006 WL 5940802, at *5 (D. Haw. Oct. 12, 2006) (Title VII investigative report issued months after complaint). Second, Detective Lopez's skill and experience are beyond reproach, as he had nearly two decades of experience with the Tempe Police Department at the time of the investigation and belonged to the "Special Victims Unit" of that Department. Lopez Dep. 192:25-193:2, 193:4-6. Detective Lopez reaffirmed at the deposition that he is confident that he accurately documented the statement Ms. Dean now challenges. Lopez Dep. 202:21-22. Nor has Plaintiff introduced any reason to believe Detective Lopez harbored any bias against her.[4] Given the lack of any evidence suggesting Detective Lopez's report should not be trusted, no grounds exists to keep from the jury the fact that Plaintiff's law enforcement expert chose to completely

---

[4] Because Plaintiff has not met her "burden of establishing a basis for exclusion" based on lack of trustworthiness, Uber respectfully maintains that the report is admissible under Rule 803(8), *contra* Dkt. 5047. *See Willis v. Vasquez*, 2014 WL 12596313, at *13 (C.D. Cal. Apr. 1, 2014), aff'd, 648 F. App'x 720 (9th Cir. 2016).

disregard Detective Lopez's report only to the extent it did not support his opinions.

## IV. CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court strike Mr. Tremblay's inadmissible testimony on Uber's knowledge and state of mind, and narrative summary of evidence, and that the Court permit cross-examination about evidence contradicting his factual narrative, including Detective Lopez's police report.

Dated: January 23, 2026                                **KIRKLAND & ELLIS LLP**

By: <u>/s/ Laura Vartain Horn</u>

**KIRKLAND & ELLIS LLP**
LAURA VARTAIN HORN
KIM BUENO
ALLISON M. BROWN
JESSICA DAVIDSON

**O'MELVENY & MYERS LLP**
SABRINA H. STRONG
JONATHAN SCHNELLER

*Counsel for Defendants*