1    [*Submitting counsel below*]

2

3

4

5                            UNITED STATES DISTRICT COURT
6                        OF NORTHERN DISTRICT OF CALIFORNIA
                              SAN FRANCISCO DIVISION
7

8    | | |
     |---|---|
     | **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB |

9

10

11

12

13   This Document Relates to:

14   *Jaylynn Dean v. Uber Techs., Inc.*,
     N.D. Cal. No. 23-cv-06708
15   D. Ariz. No. 25-cv-4276

16

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING MOTION FOR MISTRIAL**

Judge: Honorable Charles R. Breyer
Ctrm.:  D. Ariz., 501

17

18                            UNITED STATES DISTRICT COURT
                              DISTRICT OF ARIZONA
19                            PHOENIX DIVISION

20

21   JAYLYNN DEAN,                           No. 25-cv-4276-PHX-CRB

22           Plaintiff,                      Judge: Honorable Charles R. Breyer
                                             Ctrm.:  501
23       v.

24   UBER TECHNOLOGIES, INC., et al.,

25           Defendants.

26

27

28

1

**<u>OPPOSITION</u>**

2      Uber's motion to reconsider the denial of its motion for a mistrial should be denied. A

3   "motion for reconsideration should not be granted, absent highly unusual circumstances, unless the

4   district court is presented with newly discovered evidence, committed clear error, or if there is an

5   intervening change in the controlling law." *In re Transpacific Air Transp. Antitrust Litig.*, 2023

6   WL 1428564, at *2 (N.D. Cal. Jan. 25, 2023), *aff'd*, 2024 WL 810703 (9th Cir. Feb. 27, 2024); *see*

7   *also* D. Ariz. L.R. 7.2(g) ("The Court will ordinarily deny a motion for reconsideration of an Order

8   absent a showing of manifest error or a showing of new facts or legal authority that could not have

9   been brought to its attention earlier with reasonable diligence."). A "motion for reconsideration is

10  not to be used as a means to reargue a case or to ask a court to rethink a decision it has made."

11  *Fallay v. S.F. City & Cnty.*, 2016 WL 888901, at *2 (N.D. Cal. Mar. 8, 2016), *aff'd*, 706 F. App'x

12  439 (9th Cir. 2017); *see also* D. Ariz. L.R. 7.2(g) ("No motion for reconsideration of an Order may

13  repeat any oral or written argument made by the movant in support of or in opposition to the motion

14  that resulted in the Order.").[1]

15      Uber contends that reconsideration is warranted because Plaintiff did not include Jennifer

16  Chase—a person Plaintiff had no idea existed—on her initial disclosures. Uber does not cite a single

17  case finding that long-ago served discovery material constituted "newly discovered evidence,"

18  *TransPacific*, 2023 WL 1428564 at *2, or "new facts … that could not have been brought to [the

19  Court's] attention" when the mistrial motion for was made and denied, D. Ariz. L.R. 7.2(g). By

20  definition, disclosures served in April 2025 cannot be new. *See*, *e.g.*, *Integrated Tech. Corp. v.*

21  *Rudolph Techs., Inc.*, 2010 WL 8545468, at *1 (D. Ariz. Sept. 2, 2010) (denying motion for

22  reconsideration made on asserted "new evidence" that "was available" before the order in question).

23      On the merits, Uber's claim that Plaintiff violated Rule 26 and that this asserted violation

24  prejudiced Uber must be rejected. Jennifer's contact information, identity, and very existence were

25

26  [1] Uber suggests that the Court should relax the standards for reconsideration between the mistrial
    motion was made orally. *See* Mot. at 1. But the two cases Uber cites did not involve motions that

27  were previously denied. *See United States v. Carpenter*, 2013 WL 6631139, at *1-2 (E.D. Mich.
    Dec. 17, 2013) (court prohibited oral motion); *United States v. Noryian*, 2022 WL 17813153, at

28  *1-3 (N.D. Tex. Dec. 19, 2022) (opinion implies that the court *granted* the oral motion for a
    mistrial, and later issued a written opinion setting out its reasoning).

1    facts within Uber's exclusive possession. The only reason Plaintiff even knew of Jennifer was

2    because, over Uber's objection, Judge Cisneros ordered Uber to provide the contact information of

3    riders who had lodged previous sexual misconduct complaints against the drivers in the bellwether

4    cases. *See* ECF 3346, *mot. for relief denied*, ECF 3479.[2] A party cannot claim or complain of

5    ignorance of the identity of a person disclosed through its own discovery productions. *See, e.g.*, *V5*

6    *Techs v. Switch, Ltd.*, 334 F.R.D. 615, 618 (D. Nev. 2020) ("A formal disclosure is unnecessary

7    when the information has 'otherwise been made known to the other parties during the discovery

8    process.'") (quoting Fed. R. Civ. P. 26(e)(1)(A)); *White v. City of Middletown*, 45 F. Supp. 3d 195,

9    209 (D. Conn. 2014) (finding no duty to disclose witnesses who were identified in the discovery

10   provided by the movant itself); *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d

11   810, 812-13 (E.D. Cal. 2006) (denying motion to exclude witnesses who were identified in

12   discovery, including the movant's own discovery and disclosures). Moreover, the only "evidence"

13   from Jennifer that has been used in this trial is a printout of her Uber ride history—a document

14   generated by Uber itself. (Jennifer's presence in the courtroom is not evidence, as the Court

15   instructed the jury.)

16        Even if the rule were violated, any non-disclosure was harmless. Uber was given specific

17   notice that Jennifer might have relevant information because Plaintiff successfully moved to

18   compel Uber to provide Jennifer's identify and contact information. *See, e.g.*, *Borgman v. Yamaha*

19   *Motor Corp.*, 2023 WL 6797687, at *2 (D. Alaska Feb. 8, 2023) ("Because defendant was aware

20   of the Anchorage Yamaha signs and could have pursued discovery related to the signs, plaintiffs'

21   untimely disclosure of the photographs of the signs was harmless."). Indeed, Uber even tried to

22   contact Jennifer itself. *See* ECF 3410 (stipulation and order providing that Uber would contact

23   previous complainants before providing their information to Plaintiffs).

24        In any event, Rule 26 does not require disclosure of witnesses who may provide information

25   where "the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Plaintiff sought

26   to prove only that (1) Jennifer reported sexual misconduct (inappropriate comments) against Mr.

27

28   ────────────────
     [2] Uber produced Jennifer's contact information on July 29, 2025, but the information was invalid.
     Plaintiff first made contact with Jennifer in early January 2026.

Turay, (2) Uber believed the report was sufficiently credible to give Mr. Turay a "notation" for "Sexual Misconduct Comments or Gestures – Comments About Appearance"; (3) Uber reassured Mr. Turay that he would not be consequented for his reported misconduct in violation of the Community Guidelines; and (4) despite a sexual-misconduct notation, Uber allowed Mr. Turay to remain on the platform without restriction and be assigned to risky rides. Trial Tr. at 1003-12.

Having proved those points through Uber documents and Ms. Cissna's knowledge, Plaintiff did not introduce anything about Jennifer's Uber account or otherwise seek to establish the truth or falsity of Jennifer's report. Indeed, the Court immediately instructed the jury:

> These documents, which purport to be complaints, are not admitted for the truth of the matter. That is, that these things actually did happen. Rather, they're being admitted for the limited purpose of demonstrating what Uber knew at the time. That is, the information that was given to Uber. It doesn't mean that the information was reliable. It doesn't mean that it was accurate, doesn't mean that it actually happened. All it means if you -- if you believe that this is the way the system was correctly described by the witness, that Uber had this information about an incident involving this driver, and so it's introduced for that limited purpose only.

*Id.* at 1006:5-16. Whether "Ms. Chase's complaint against Mr. Turay was in fact fraudulent" is not an issue that Plaintiff put before the jury. Mot. at 4.

The only reason that status of Jennifer's account came up was that Uber, cross-examining its own employee, elicited testimony that Jennifer was a support abuser who had submitted earlier complaints against Uber drivers and who was "banned the day after the complaint against Mr. Turay." Trial Tr. at 1179-84. Plaintiff then introduced evidence that Jennifer was in fact not banned. Plaintiff did so solely to contradict Ms. Cissna's account on an issue with no independent relevance.[3] Uber says that Jennifer's active account "has nothing to do with Ms. Cissna's credibility or reliability as a witness," which is false. Ms. Cissna testified to complete confidence that Jennifer's account had been banned for support abuse. The evidence showed reason to disbelieve the rigor of her investigation into that point (which does not appear part of her regular duties), and to think that she might be eager to include in her cross-examination testimony what her longtime

---

[3] On January 23, 2026, the Court suggested a theory of relevance by which the validity of Jennifer's complaint would help the jury evaluate Mr. Turay's credibility. But that inference is not how Plaintiff used the testimony (and now how Uber seeks to use Jennifer's testimony either). And the jury has already been instructed that the merits of earlier complaints are not at issue in this case. Trial Tr. at 1006:5-16.

employer wanted her to say (an inference supported by her repeated glances at Uber's counsel before answering questions on direct). Plaintiff did not "use" the evidence to "support [her] claims.|" The substantive fact—whether Jennifer was banned or not banned—has nothing to do the facts that Uber treated her report as legitimate and evaluated Mr. Turay on that basis going forward. Plaintiff "use[d]" the evidence solely for impeachment.[4]

Most of Uber's remaining arguments for reconsideration were previously made in the oral motion for a mistrial that the Court considered and denied. *See* D. Ariz. L.R. 7.2(g) ("No motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order."); *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 607 (N.D. Cal. 2019) ("McKesson is of course entitled to disagree with the Court's conclusions. But such disagreement does not warrant a motion for reconsideration that rehashes arguments the Court has already rejected or which fail to undermine the Court's analysis."). The Court already found that its curative instruction was appropriate mitigation of any prejudice, actual or perceived, from reference to Jennifer's presence in the gallery, and that Uber did not object to the curative instruction when given. Trial Tr. at 1266-68. Uber provides no reason to revisit that finding.

Uber argues that Dr. Drumwright's testimony creates cumulative prejudice sufficient to support a mistrial, but the Court largely denied Uber's motion to strike Dr. Drumwright's testimony, meaning there is no "prejudice from these undisclosed opinions" as Uber claims. ECF 5049. Uber evidently seeks reconsideration of that order as well, but does not even argue that any new facts or evidence support reconsideration. (The small portions of testimony the Court struck have no connection to anything involving Jennifer.)

---

[4] Uber cites *Standley v. Edmonds-Leach*, 783 F.3d 1276 (D.C. Cir. 2015), but that case declined to resolve whether Rule 26's impeachment exception applies only if "the evidence can have no substantive non-impeachment value." *Id.* at 1283. The court acknowledged circuit authority stating that "undisclosed evidence with both impeachment and substantive qualities may be presented at trial so long as it is strictly used to impeach." *Id.* Uber cites *Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir. 1998), but in that case the evidence in question—letters from a decedent expressing unhappiness in her marriage—bore directly on the damages sought for "lost enjoyment of life." *Id.* at 270. Finally, in *Putman v. Mgmt. & Training Corp.*, 2009 WL 10669155, at *2-3 (W.D. Tex. Aug. 18, 2009), the undisclosed evidence was testimony from the plaintiff about her allegations of discrimination—no impeachment involved. *Id.* at *2.

1    All that is new is that Uber cites the inadvertently played clip of Mr. Wong's deposition and

2    Mr. Tremblay's casual use of the word "employ." But Plaintiff's counsel immediately stopped

3    playing the Wong video as soon as she was notified of the mistake. Trial Tr. at 1269-70. The jury

4    has already heard about the compensation paid to other Uber employees (for example, Ms.

5    Hazelbaker) and later heard about Mr. Wrong's compensation too (when the correct video was

6    played). The only portion the Court excluded from Mr. Wong's trial deposition connected changes

7    in title and compensation to the timing of multiple depositions. There is no reason to think that the

8    jury will place weight on this brief and withdrawn snippet of video, especially when it saw the full

9    trial deposition video on a different day altogether, with the excluded portion removed. Indeed,

10    even though Uber did not object to a separate question-and-answer referencing Mr. Wong's

11    promotion, Plaintiff unilaterally removed that designation out of caution. There is no reason to

12    assume any incurable prejudice. *See Bahamas Surgery Ctr., LLC v. Kimberly-Clark Corp.*, 2018

13    WL 11274489, at *19 (C.D. Cal. Mar. 30, 2018) ("Plaintiff admits that the relevant pages were

14    'inadvertently and mistakenly not removed from the testimony that was played for the jury.' … In

15    any case, the Court does not find these limited references to [inadmissible evidence] to have been

16    prejudicial or sufficiently pervasive to warrant a new trial."), *rev'd on Rule 23 grounds*, 820 F.

17    App'x 563 (9th Cir. 2020).

18    As to Mr. Tremblay, the Court observed that he used the word "employ" in a plain-language

19    sense, as other parts of his testimony confirm. *See* Trial Tr. at 1348:11-15; *see also id.* at 1333:20-

20    23 ("So there are many problem-solving and risk-reduction strategies. This is just something that I

21    worked through the years and still employ today."); *id.* at 3389:1-4 ("The location is inside the car

22    Uber is employing."). Given the Court's summary judgment ruling, the jury has heard nothing in

23    this trial about "employees" or "independent contractors" and so cannot be assumed to place any

24    significance on Mr. Trembley's mention of the word, particularly in light of the Court's limiting

25    instruction. *See, e.g., Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 610 F. Supp. 2d 998,

26    1017 (D. Minn. 2009) (denying motion for new trial based on "inappropriate[e] … stray remarks"

27    by expert); Trial Tr. at 1352:25-1353:4 ("I am striking this testimony and instructing you to

28    disregard it.").

1    The motion for reconsideration should be denied.

2    Dated: January 24, 2026                    Respectfully submitted,

3

4                                               By*: /s/ Sarah R. London*
                                                   Sarah R. London (SBN 267083)

5                                               **GIRARD SHARP LLP**
                                                601 California St., Suite 1400
6                                               San Francisco, CA 94108
                                                Telephone: (415) 981-4800
7                                               slondon@girardsharp.com

8                                               By*: /s/ Rachel B. Abrams*
                                                   Rachel B. Abrams (SBN 209316)
9

10                                              **PEIFFER WOLF CARR KANE**
                                                **CONWAY & WISE, LLP**
                                                555 Montgomery Street, Suite 820
11                                              San Francisco, CA 94111
                                                Telephone: (415) 426-5641
12                                              Facsimile: (415) 840-9435
                                                rabrams@peifferwolf.com
13

14                                              By*: /s/ Roopal P. Luhana*
                                                   Roopal P. Luhana
15

16                                              **CHAFFIN LUHANA LLP**
                                                600 Third Avenue, 12th Floor
17                                              New York, NY 10016
                                                Telephone: (888) 480-1123
18                                              Facsimile: (888) 499-1123
                                                luhana@chaffinluhana.com

19                                              *Co-Lead Counsel*

20                            **FILER'S ATTESTATION**

21        I am the ECF User whose ID and password are being used to file this document. In

22   compliance with N.D. Cal. L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

23   Dated: January 24, 2026              By:      /s/ Andrew R. Kaufman
24                                                  Andrew R. Kaufman

25

26

27

28

PL'S OPPOSITION TO DEFS.'
MOT. FOR RECONSIDERATION
N.D. CAL. NO. 3:23-MD-03084; D. ARIZ. NO. 25-CV-4276