1    [*Submitting counsel below*]

2

3

4

5                   UNITED STATES DISTRICT COURT
6                 OF NORTHERN DISTRICT OF CALIFORNIA
7                      SAN FRANCISCO DIVISION

8

**IN RE: UBER TECHNOLOGIES, INC.,**          No. 3:23-md-03084-CRB
9    **PASSENGER SEXUAL ASSAULT**
**LITIGATION**                               **PLAINTIFF'S MOTION FOR ESI**
10                                           **SPOLIATION SANCTIONS AND**
                                             **PROPOSED JURY INSTRUCTIONS**
11
                                             Judge: Honorable Charles R. Breyer
12   This Document Relates to:               Ctrm.:  D. Ariz., 501

13   *Jaylynn Dean v. Uber Techs., Inc.*,
     N.D. Cal. No. 23-cv-06708
14   D. Ariz. No. 25-cv-4276

15

16

17                   UNITED STATES DISTRICT COURT
                        DISTRICT OF ARIZONA
18                       PHOENIX DIVISION

19

20   JAYLYNN DEAN,                           No. 25-cv-4276-PHX-CRB

21          Plaintiff,                       Judge: Honorable Charles R. Breyer
                                             Ctrm.:  501
22       v.

23   UBER TECHNOLOGIES, INC., et al.,

24          Defendants.

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 3

LEGAL STANDARD ................................................................................................... 4

ARGUMENT ................................................................................................................ 4

I.      Uber spoliated ESI. ........................................................................................ 4

        A.      The supply plan data is ESI. .............................................................. 5

        B.      The ESI is gone and cannot be restored or replaced. ....................... 5

        C.      The ESI should have been preserved in the anticipation of litigation.................... 5

        D.      Uber failed to take reasonable steps to preserve the ESI. ............... 6

II.     The destruction of the evidence caused prejudice to Plaintiff. ..................... 7

III.    The Court should mitigate the prejudice to Plaintiff by precluding Uber from
        arguing that no safer match was available and informing the jury of the spoliation. ......... 8

IV.     If the Court finds intent, the Court should also give a mandatory presumption
        instruction.................................................................................................... 9

        A.      The Court may find that Uber intended to deprive Plaintiff of the
                information........................................................................................ 10

        B.      If the Court finds intent, the Court should give a mandatory presumption
                instruction........................................................................................ 11

CONCLUSION ........................................................................................................ 12

1

2  **INTRODUCTION**

In this trial, Uber will contend that there is no evidence that it could have sent a safer driver

3  than Mr. Turay to pick up Ms. Dean on November 15, 2023. This argument depends on the absence

4  of evidence of other available drivers (or "matches," in Uber's terminology). The problem is that,

5  as Uber's data scientist and 30(b)(6) designee on S-RAD topics testified, Uber possessed exactly

6  that evidence—"supply plans for this particular trip"—but "deleted" the data after 30 days pursuant

7  to the company's "data retention policy." Wong 1/7/26 Dep. at 81:14-84:05, 116:24-117:09.[1] Uber

8  seeks to take advantage of its own destruction of relevant evidence; Rule 37 does not permit it to

9  do so.

10  Uber learned of Ms. Dean's rape the same day it happened and, after conducting a "thorough

11  investigation," determined the incident involved "non-consensual sexual penetration" (Uber's term

12  for what is otherwise commonly known as "rape") and deactivated the driver within two days. *See*

13  Trial Tr. at 1087:15-1110:11. Uber was well-aware of its preservation obligations in potential

14  sexual assault cases. Not only was it self-evident that a confirmed sexual assault, particularly a

15  rape, carried the potential for litigation (there were more than 1,000 cases filed when Ms. Dean was

16  assaulted), Uber was acutely on notice of potential litigation when it received Ms. Dean's police

17  report on November 15. And it was obvious that evidence of potentially safer rides would be

18  relevant to sexual assault claims by Uber riders: an internal Uber document titled "S-RAD

19  Leadership Update 09.16.2021" stated: "Concern is that if in the future, we have to disclose

20  information on this, how we explain or justify we had the information that it was a high-risk trip

21  but we still match it … and a very bad incident happened … it will be … hard to explain that to the

22  public, government officials, et cetera." Wong 6/25/25 Dep. at 128:19-12:04; Ex. 01366.00496,

23  .00519. Notably, just two weeks before Ms. Dean reported to Uber that her Uber driver raped her,

24  this Court issued PTO 2 in response to MDL Plaintiffs' concerns about evidence preservation. PTO

25  2 requires broad preservation of custodial and non-custodial data sources. ECF 65.

26  The Court should find intentional destruction and order that the jury must presume the

27

28  ---
[1] The run reports for the three Wong clips played have not yet been filed on ECF, but are attached
to this motion as **Exhibits A** (6/25/25), **B** (7/23/25 & 10/14/25), and **C** (1/7/26).

deleted information was unfavorable to Uber, i.e., that there *was* a safer driver (match) available that night. But whether or not the Court finds intent, it may "order measures … necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Here, the prejudice is manifest because Uber intends to seize on the very evidentiary gap it created to argue that Plaintiffs have failed to prove their cases. The only way to ameliorate that prejudice is to preclude Uber from making that disingenuous argument.

## LEGAL STANDARD

Under Rule 37, if "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it and it cannot be restored or replaced through additional discovery," the Court may issue sanctions. Fed. R. Civ. P. 37(e). Upon "finding prejudice to another party from loss of information," the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the Court "find[s] that the party acted with the intent to deprive another party of the information's use in the litigation," it may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). The "relevant standard of proof for spoliation sanctions is a preponderance of the evidence." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022).

## ARGUMENT

### I.     Uber spoliated ESI.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Estate of Bosco ex rel. Kozar v. Cnty. of Sonoma*, 640 F. Supp. 3d 915, 923-24 (N.D. Cal. 2022) (citation omitted). Rule 37(e) authorizes sanctions for "spoliation of electronically stored information ('ESI')." *Id.* Sanctions "may be appropriate if: (1) the information qualifies as ESI; (2) the ESI is lost and cannot be restored or replaced; (3) the ESI should have been preserved in the anticipation or conduct of litigation; and (4) the responding party failed to take reasonable steps to preserve the ESI." *Id.* Every requirement is met here.

### A.    The supply plan data is ESI.

Uber refers to the other available drivers that Uber could have sent to pick up a particular rider as "supply plans." Mr. Wong's testimony confirms that the missing supply plans takes the form of "data or data compilations." Fed. R. Civ. P. 34(a)(1)(A) (defining ESI); *see also*, *e.g.*, Wong 1/7/26 Dep. at 85:07 ("supply plan data"). And the data regarding Uber's pairing of Ms. Dean and Mr. Turay, which Uber *did* preserve, demonstrates that the data could have been "obtained … into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(A); *see also* Wong 1/7/26 Dep. at 107:9-110:14 (discussing the S-RAD risk score for Uber's match between Mr. Turay and Ms. Dean and the factors incorporated into that score).

### B.    The ESI is gone and cannot be restored or replaced.

Mr. Wong's testimony established that the deleted S-RAD data cannot be restored because "[t]he supply plans for that trip no longer exist." Wong 1/7/26 Dep. at 85:21-22.

### C.    The ESI should have been preserved in the anticipation of litigation.

The "duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Colonies Partners, L.P. v. Cnty. of San Bernardino*, 2020 WL 1496444, at *6 (C.D. Cal. Feb. 27, 2020) (citation omitted). As "soon as a potential claim is identified, a litigant is under a duty to preserve evidence which he or she knows or reasonably should know is relevant to the action or may be relevant to future litigation." *Id.* (citation omitted).

Here, when Uber received notice of Ms. Dean's claim that her Uber driver raped her (a claim it deemed credible), Uber was already facing a thousand-plus sexual assault cases. Uber was on notice that a confirmed incident of sexual assault created "more than a possibility" of litigation. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (citation omitted).

Uber also was on notice that data concerning "other supply plans" might be relevant to Ms. Dean's potential litigation. S-RAD is the "only tool that Uber uses to reduce the risk of sexual assault or sexual misconduct through the pairing process." Wong 7/23/25 Dep. at 111:14-18. Uber's counsel conceded on the record that the company knows S-RAD data is relevant to litigation: it preserved the Dean-Turay S-RAD score because "Ms. Dean filed her lawsuit." Trial Tr. at 1707:6-

7. And when discovery started in this MDL, Uber produced information concerning S-RAD in response to Plaintiffs' first set of RFPs—because it was obviously relevant to sexual assault claims. Lest there was any doubt, weeks before Ms. Dean was assaulted, after MDL Plaintiffs raised concerns about Uber's preservation efforts, *see* ECF 57 at 7-8, this Court entered PTO 2 enforcing the broad scope of preservation obligations in these kinds of cases. *See* ECF 65 at 2 (specifically requiring preservation of "[s]tructured data"). The Court further ordered that Uber could only destroy potentially relevant ESI after obtaining leave from Judge Cisneros to do so. *Id.* at 3.

### D.    <u>Uber failed to take reasonable steps to preserve the ESI.</u>

In evaluating whether a party took reasonable steps to preserve ESI, some courts consider factors set out in the advisory committee notes to Rule 37: "(1) a party's good-faith operation of an electronic information system; (2) a party's sophistication with regard to litigation; (3) the extent to which a party knew of and protected against such risks; and (4) whether the information is destroyed by events outside the party's control." *Bosco*, 640 F. Supp. 3d at 924-25 (internal quotation marks omitted). In this case, the deletion of the S-RAD data was no accident by a novice litigant. Uber, as sophisticated a litigant as any, intentionally applied a selective 30-day policy, deleting certain S-RAD data but maintaining others.

Uber did so even though MDL Plaintiffs at that very time were asking Uber to "suspend its companywide six-month ESI deletion policy." *See* ECF 160-6 (letter from Plaintiffs' counsel). In refusing Plaintiffs' request, Uber did not disclose its selective and more destructive 30-day deletion policy for supply plans. *See* ECF 160-4 (Uber's response).[2] Then, Uber assured Judge Cisneros that "it [was] not destroying potentially relevant evidence," ECF 172 at 5—a claim that appears to have been untrue, given that there is no evidence Uber preserved supply plan data even for cases filed within 30 days of the assault.

Uber has offered two defenses of its deletion. *First*, Mr. Wong, although he was "not an expert in that space," testified that preserving all supply plans would result in excessive data "storage costs." Wong 1/7/26 Dep. at 117:2-15. But, as the Court pointed out, the requirement is

---

[2] Uber even refused to disclose the list of non-custodial sources it *did* preserve, until compelled to do so by Judge Cisneros. *See* ECF 190 at 6.

not that Uber should have saved data from every ride ever, but rather preserved data for the potential pairings that were rejected in favor of *this ride*, a confirmed rape. *See* Trial Tr. at 1709:5-16.

*Second*, Uber argues that Plaintiff's S-RAD theory lacks merit. *See* ECF 4897-2 at 2-3 (Uber's trial brief laying out the argument). Even if this argument were correct (the evidence shows that it is not), a party may not selectively delete ESI based on its own view of the merits of the case. *See Waymo LLC v. Uber Techs, Inc.*, 2018 WL 646701, at *17 (N.D. Cal. Jan. 30, 2018) ("Uber's unfounded insistence that the evidence it failed to preserve would have been irrelevant does not bar Waymo's requests for relief."); *Fast*, 340 F.R.D. at 344 ("Plaintiff argues that Defendants are not prejudiced by the loss of the ESI contained on her stolen phone because she already produced all the information contained on it that she considered relevant. But Plaintiff is not the one who determines what is relevant.") (internal quotation marks omitted); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (in pre-2015 amendment case, explaining that "because the relevance of destroyed documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents") (internal quotation marks and alterations omitted).

## II.    The destruction of the evidence caused prejudice to Plaintiff.

The "Court's evaluation of whether the loss of information was prejudicial depends in part on the importance of the information to the case." *Bosco*, 640 F. Supp. 3d at 926-27 (citation omitted). Rule 37(e) "does not place the burden of providing or disproving prejudice on one party or the other." *Id.* (citing advisory committee note). Ultimately, "discretion is left to judges 'to determine how to best assess prejudice in particular cases.'" *Id.*

Here, "prejudice exists" because "the spoliation … threatens to interfere with the rightful decision of the case." *In re Vaxart, Inc. Sec. Litig.*, 2025 WL 1865848, at *6 (N.D. Cal. July 7, 2025) (internal quotation marks omitted). Plaintiff argues that Uber should not have sent Mr. Turay to drive her, the S-RAD score being one of the reasons. Uber's defense is, in part, that "there is no evidence that such an alternative would have been feasible in light of potential wait times, other ride requests requiring accommodation, and the many other factors influencing Uber's pairing of riders and drivers." ECF 4897-2 at 3 (Uber's trial brief); *see also id.* ("[N]o evidence supports …

the assertion that a different pairing was feasible or preferable ….”). Courts find substantial prejudice where the injured party “must rely on incomplete evidence” as a result. *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1060 (S.D. Cal. 2015) (“[T]he Court finds that the risk of prejudice is great, as Plaintiff’s spoliation of evidence requires Defendant to rely on incomplete evidence.”). Here, the prejudice is significantly worse, because Uber, the culpable party, resets its defense on an evidentiary gap that it itself created.

The lost evidence also damages Plaintiff’s ability to rebut Uber’s case that the platform is safe overall. Uber will try to show, for example, that Uber is safer than certain forms of public transportation. *See* Stodden Rpt. Rather than comparing Uber to Los Angeles County public transit, the more relevant comparison is between the driver Uber assigns and the drivers it *could* have assigned. Plaintiff can make that argument using just the S-RAD score (which was above average for Phoenix at night), but the rebuttal would be even more powerful if Plaintiff could compare the pairing with Mr. Turay to other available pairings. Uber’s spoliation prevents her from doing that.

## III.   The Court should mitigate the prejudice to Plaintiff by precluding Uber from arguing that no safer match was available and informing the jury of the spoliation.

Absent a finding of intent, sanctions are limited to those “no greater than necessary to cure the prejudice.” Fed. R. Civ. P. 37(e)(1). The Court has “wide discretion to determine a broad range of measures to cure prejudice caused by spoliation.” *Intex Rec. Corp. v. Bestway USA Inc.*, 2025 WL 2020012, at *6 (C.D. Cal. July 14, 2025). Such “measures could include forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information or, *inter alia*, giving jury instructions to assist in the jury’s evaluation of such evidence or argument.” *Id.* (citing case itself citing the advisory committee note).

Here, Plaintiff is prevented from relying on the destroyed evidence, and Uber aims to take advantage of its own malfeasance and rely on an evidentiary gap of its own making. To cure that prejudice, the sanction must include a prohibition on Uber arguing that no safer match was available. *See Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 806 (N.D. Tex. 2011) (ordering remedy that “ameliorates the prejudice caused by Defendants’ spoliation because it prevents them

from arguing that the lack of physical evidence is proof that Muthee did not strike Ashton or that without such evidence Plaintiff cannot show Ashton was alive when he was struck"); *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 68 (S.D.N.Y. 2020) (precluding evidence and argument as a sanction under (e)(1), and explaining that "the order will [] prevent Kapoor or his former employers from taking advantage of an evidentiary gap created by the Acero Defendants themselves").[3]

In addition to preclusion, the Court should inform the jury of Uber's destruction of relevant evidence:

> In this case, Uber had a duty to preserve evidence of other Uber drivers who it could have sent to pick up Ms. Dean on November 15, 2023. In breach of its duty, Uber destroyed that evidence. You may consider the fact that Uber destroyed that evidence, along with all the other evidence in the case, in reaching your verdict.

*See*, *e.g.*, *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at \*28 (S.D.N.Y. June 20, 2019) ("[D]efendants will be permitted to 'present evidence to the jury concerning the loss and [potential] relevance of the ESI … and may seek a jury instruction … informing the jury 'that it may consider that evidence, along with all the other evidence in the case, in making its decision.'") (quoting Fed. R. Civ. P. 37(e), advisory committee note, 2015 amendment; alteration in original). This instruction is necessary to balance the evidentiary playing field and ensure that the jury does not hold the gap against Plaintiff, the innocent party.

## IV.    If the Court finds intent, the Court should also give a mandatory presumption instruction.

The "severity of the sanctions allowed under Rule 37 increases 'upon finding that the party acted with the intent to deprive another party of the information's use in the litigation.'" *Bosco*, 640 F. Supp. 3d at 927 (quoting Fed. R. Civ. P. 37(e)(2)). As relevant, if the Court finds "that the party

---

[3] The requested preclusion sanction does not impermissibly "have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent." Fed. R. Civ. P. 37, advisory committee note, 2015 amendment. While the advisory committee suggested that "[a]n example of an inappropriate (e)(1) measure might be an order … precluding party from offering *any* evidence in support of[] the central or only claim or defense in the case," the committee expressly provided that "it may be appropriate to exclude a specific item of evidence to offset prejudice caused by the failure to preserve other evidence that might contradict the excluded item of evidence." *Id.* Here, Uber retains every other basis for its defense.

acted with the intent to deprive another party of the information's use in the litigation," the Court may "instruct the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2)(B).

**A.** **The Court may find that Uber intended to deprive Plaintiff of the information.**

Rule 37(e) "does not define 'intent,' but in context, the word is most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). Because "intent can rarely be shown directly, a district court may consider circumstantial evidence in determining when a party acted with the intent required for Rule 37(e)(2) sanctions." *Id.* "Relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Id.* at 735.

Intent may be inferred here. Uber knew that evidence of potential alternative "supply plans" was potentially relevant to a victim's lawsuit. Years earlier the company knew it could prevent sexual assaults in part by predicting matching risk. *See, e.g.*, Ex. 01701.00003-4 (2016 document). The company promotes on its own website that "Uber may [] modify pairings of drivers and riders in certain instances to help maintain a safe platform[.]"[4] Uber knows that many pairings are dangerous, that many dangerous pairings result in sexual assault, and that many sexual assault victims will file lawsuits as a result of their dangerous match. That evidence of alternative matches would be relevant is obvious. Indeed, Uber executives were expressly concerned about the effect of public knowledge of S-RAD-related data: "[I]f in the future, we have to disclose information on this, how we explain or justify we had the information that it was a high-risk trip but we still match it … and a very bad incident happened … it will be … hard to explain that to the public, government officials, et cetera." Wong 6/25/25 Dep. at 128:19-12:04. Uber's litigation position—likely not invented solely for the purposes of this trial—is that one cannot show a trip was "high-risk" without evidence that other trips were "lower-risk"—the exact evidence it destroyed.

Uber executives made conscious decisions about what information to preserve and what to

---

[4] https://www.uber.com/us/en/marketplace/matching/ (accessed Jan. 24, 2026).

1    destroy. At the very moment Uber decided not to preserve the records of Ms. Dean's potential

2    matches, it was defending itself in this MDL against contentions that it had failed to disable ESI

3    deletion policies in connection with sexual assault cases. The company also made the deliberate

4    decision to preserve *some* S-RAD data concerning the match that was actually made, implying an

5    equally intentional choice to destroy the other data.

6        In determining state of mind, the Court should also consider the company's demonstrated

7    history of evidence preservation violations. *Cf.* Fed. R. Evid. 404(b)(2) (evidence of prior acts

8    admissible to prove state of mind). In 2018, Judge Alsup found that Uber violated Rule 37 by

9    destroying relevant ESI, including finding "considerable ground for Waymo to argue that Uber had

10    the requisite intent to warrant relief under [Rule] 37(e)(2)." *Waymo*, 2018 WL 646701, at *17-18.

11    And, just months earlier, Richard Jacobs, Uber's former "Manager of Global Intelligence," alleged

12    that the company routinely engaged in "evidence spoliation[] and other discovery abuse." ECF 607-

13    14 at 5. According to Mr. Jacobs, "Uber … implemented a sophisticated strategy to destroy,

14    conceal, cover up, and falsify records or documents with the intent to impede or obstruct

15    government investigations as well as discovery obligations in pending and future litigation." *Id.* at

16    6. Uber executives employed "ephemeral and encrypted communications for the express purpose

17    of destroying evidence of illegal or unethical practices to avoid discovery in actual or potential

18    litigation." *Id.* at 6.

19        According to Jacobs, Uber executives demonstrated a willingness to evade preservation

20    orders specifically. Specifically, they used "non-attributable devices … to avoid detection and

21    never be subject to legal discovery of … Uber work laptops, Uber networks, and Uber mobile

22    devices." *Id*. at 7. "Non-attributable devices were deemed as not reasonably subsumed by any such

23    preservation order and the team could, and did, 'legally' (not so) dispose of any evidence or

24    documentation held on these devices in the intervening period before knowledge of the devices'

25    existence could be uncovered." *Id.* at 7-8.

26    **B.    If the Court finds intent, the Court should give a mandatory presumption instruction.**

27

28    Here, the Court should issue a mandatory presumption instruction (in addition to an order

precluding Uber from taking advantage of its own data destruction, as set forth above). This is the "second highest penalty level" (below deeming facts admitted). *Lee v. Cnty. of Los Angeles*, 2025 WL 2505484, at *21 (C.D. Cal. Aug. 29, 2025) (citation omitted). The alternative, a "rebuttable jury instruction in favor of one party nevertheless leaves that party helpless—due to the very absence of the spoliated evidence—to rebut any material that the spoliating party might use to overcome the presumption." *Id. Cf. Bosco*, 640 F. Supp. 3d at 931 (finding a "permissive instruction" appropriate only because "there [was] other evidence" on the disputed question). Plaintiff proposes the following instruction:

> In this case, Uber had a duty to preserve evidence of other Uber drivers who it could have sent to pick up Ms. Dean on November 15, 2023. In breach of its duty, Uber destroyed that evidence. You must presume that the destroyed evidence would have shown that, on November 15, 2023, there were Uber drivers reasonably available who Uber could have sent to pick up Ms. Dean, with the pairing resulting in a lower S-RAD score than the score for Mr. Turay.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court order appropriate sanctions for Uber's ESI spoliation.

Dated: January 25, 2026                    Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: /s/ Roopal P. Luhana
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

### FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated:  January 25, 2026              By:      /s/ Andrew R. Kaufman
                                                Andrew R. Kaufman