1  [Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION, <br><br> This Document Relates to: <br><br> *Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708 | Case No. 3:23-md-03084-CRB <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING MOTION FOR MISTRIAL** <br><br> Judge: Hon. Charles R. Breyer <br> Courtroom: Courtroom 6 – 17th Floor <br><br> Date Filed: January 26, 2026 <br><br> Trial Date: January 13, 2026 |

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| JAYLYNN DEAN, <br><br> Plaintiff, <br><br> v. UBER TECHNOLOGIES, INC., et al., <br><br> Defendants | CASE NO. 25-cv-4276-PHX-CRB <br><br> Judge: Hon. Charles R. Breyer <br> Courtroom: 501 <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING MOTION FOR MISTRIAL** |

DEFENDANTS' TRIAL BRIEF CONCERNING CROSS-EXAMINATION OF THOMAS R. TREMBLAY
CASE NO. 3:23-md-03084-CRB

# **INTRODUCTION**

Plaintiff's opposition to Uber's motion for reconsideration fails to acknowledge the severity of counsel's misconduct and quintessential trial-by-ambush tactics in first telling the jury that Jennifer was in the courtroom and then trading on that representation to peddle false inferences in Jennifer's name. To be clear: Plaintiff's counsel trafficked in demonstrable falsehoods by insinuating to the jury that Jennifer was a reliable complainant, and Uber has been deprived of its basic due process right to cross-examine Jennifer and defend itself. If the Court does not declare a mistrial, Uber will show that the account information Plaintiff admitted into evidence comes from one of more than 30 Uber accounts associated with the same individual, many of which have been flagged for fraudulent activity (including yet another account repeatedly making the same verbatim complaint that Jennifer had previously leveled against Mr. Turay *and 18 other drivers* on her banned account). *See* Ex. A, Declaration of Cory Freivogel (hereinafter "Freivogel Decl."), ¶¶ 2-9. Because Plaintiff did not disclose Jennifer as an individual possessing evidence that Plaintiff may use, as Rule 26(a)(1)(A)(i) requires, Plaintiff's counsel was able to suggest to the jury that Uber had reactivated Jennifer's account and that Jennifer suffered domestic abuse *because of* Mr. Turay's supposed compliment. Those suggestions could not be more obviously false—as Plaintiff's efforts to stop Jennifer from testifying make clear—but Uber had no reason to anticipate Plaintiff's inflammatory stunt and thus was unable to immediately rebut it. The jury has sat with its recollection of this improper spectacle for nearly a week and cannot be expected to simply wipe it from its memory. The bell cannot be unrung from this damage.

Plaintiff argues that Uber had notice Plaintiff might rely on this evidence because Judge Cisneros's order required Uber to disclose the identity of every complainant against a driver in the Wave 1 and 2 bellwether cases. Not so. A generic discovery order covering Jennifer among

others did not give Uber notice that Plaintiff might rely on evidence obtained from a serial fraudster. Indeed, the only reason Plaintiff *could* rely on that evidence was that she did not give Uber notice, leaving it unable to immediately explain that the new account was created by circumventing Jennifer's ban and that Jennifer engaged in similar fraudulent activity on other accounts. *See* Freivogel Decl., ¶ 8. Uber satisfied Local Rule 7.2's requirement to bring the issue to the Court's attention with reasonable diligence, identifying the issue shortly after Ms. Cissna's testimony and raising it with the Court at the earliest possible opportunity. And contrary to Plaintiff's contention, the surprise evidence did not impeach Ms. Cissna's limited testimony that Jennifer had been banned in 2019–and even if it had, it would not fall within the narrow carveout to Rule 26(a)(1)(A)(i) for evidence offered *solely* for impeachment, not evidence that Plaintiff has explicitly represented is intended to substantively buttress Jennifer's obviously fraudulent complaint and, by extension, Plaintiff's notice theory.

Developments since Uber filed its Motion for Reconsideration reinforce the necessity of a mistrial. Plaintiff has not added Jennifer to her rebuttal witness list, and has not just opposed Uber's subpoena to Jennifer but also secured an attorney with a long track-record of suing Uber to represent her in moving to quash it. It is now clear that Plaintiff never intended to call Jennifer as a witness—to do so would be to suborn perjury. The plan all along was to have Plaintiff's counsel invoke Jennifer's presence in the courtroom to lend credence to a series of false suggestions made by counsel on Jennifer's behalf, depriving Uber of its fundamental due process right to cross examine an adverse witness. *See Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). That tactic vitiates not just counsel's comments about Jennifer's presence in the courtroom but all of the questioning trading on counsel's contacts with Jennifer. Because of Plaintiff's nondisclosure, the prejudicial false narrative elicited by Plaintiff's counsel has sat

unrebutted with the jury for nearly a week. Yet another curative instruction cannot cure the prejudice. Only a mistrial can ensure this bellwether proceeding's fairness.

**ARGUMENT**

**I.    PLAINTIFF'S DISCOVERY VIOLATION AND POST-MOTION CONDUCT CONSTITUTE NEW FACTS WARRANTING RECONSIDERATION.**

Local Rule 7.2 forecloses Plaintiff's argument that her nondisclosure of Jennifer cannot constitute a new fact warranting reconsideration because she served her initial disclosures in April 2025. (Opp. 1.) The relevant test is whether the "new facts" at issue could have been "brought to [the Court's] attention earlier with reasonable diligence." Rule 7.2(g)(1). There is no conceivable argument that Uber was not diligent here. Uber moved orally for a mistrial immediately before a lunch break, and the Court denied the motion on the record immediately after proceedings resumed. Tr. 1258:14–1259:13, 1266:20-1267:3. Uber had identified the nondisclosure issue over the break and immediately raised it with the Court, which stated it would "hear that argument later." Tr. 1268:2-13. Plaintiff makes no argument that Uber should be faulted for not identifying the omission of Jennifer from Plaintiff's Rule 26 disclosures immediately while being blindsided by Plaintiff's improper questioning. Uber was ambushed and identified the issue promptly—it then immediately raised the issue with the Court. That is reasonable diligence warranting reconsideration.

**II.   RULE 26 REQUIRED PLAINTIFF TO DISCLOSE JENIFFER'S POSSESSION OF EVIDENCE ON WHICH PLAINTIFF INTENDED TO RELY.**

Plaintiff's primary response to Uber's motion is that she owed no duty to disclose Jennifer as possessing information that she may use because Judge Cisneros ordered Uber to produce identifying information for all complainants against Wave 1 and 2 bellwether drivers. But as Plaintiff's own authorities explain, "[w]hether sufficient notice of a potential witness has been

provided during discovery to negate any duty for a formal disclosure is an issue resolved based on the specific circumstances of each case." *V5 Techs. v. Switch Ltd.*, 334 F.R.D. 615, 618 (D. Nev. 2020). The facts and circumstances known to Uber before January 21, 2026 were that Jennifer made nearly identical complaints to Uber accusing 19 different drivers, including Mr. Turay, of complimenting her in front of her boyfriend or fiance and demanding a refund, and that the account in question was subsequently deactivated for support abuse. *See* Tr. 1245:22–1246:18. Uber had no reason to expect Plaintiff would seek to rely on evidence obtained from an obvious fraudster. And Judge Cisneros's blanket order for Uber to provide the identity of all complainants in Wave 1 and 2 did not change those "specific circumstances" or give Uber such notice—particularly given that the order barred the parties from subpoenaing the complainants without leave of the Court. *See* Dkt. 3346 at 2 ("Absent prior leave of the Court, the parties may not serve subpoenas on the prior complainants, or on other persons for the purpose of seeking information about prior complainants.").[1]

Plaintiff did not seek leave of the Court to take discovery from Jennifer. Instead, she worked with Jennifer in secret while Uber was foreclosed by Court order from deposing her, developed an implausible defense of Jennifer's fraudulent complaint about Turay that Uber had no basis to anticipate, and then presented that account to the jury through Plaintiff's counsel's testimony, rather than Jennifer's—all without notifying Uber of the possibility that Plaintiff may use evidence secretly secured from Jennifer. The outlandishness of Plaintiff's gambit only underscores Uber's lack of notice: Jennifer is such an obviously unhelpful witness for Plaintiff's

---

[1] Nor did Uber have notice of this issue because it possessed the account data for other accounts Jennifer opened using different contact information. Uber possesses account information for hundreds of millions of users. Without the requisite notice that Plaintiff anticipated using evidence obtained from Jennifer, Uber had no reason to investigate the possibility that Jennifer circumvented her ban to open other accounts–all the more so given the Court's motion in limine order that post-incident information about complaints against Turay would not be admissible.

-4-
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
CASE NO. 3:23-md-03084-CRB

case that, rather than place her on the stand, Plaintiff traded on her presence in the gallery and had *counsel* inject Jennifer's story into the case, insinuate that Uber caused her to suffer domestic violence, even authenticate her documents, and is now fighting to stop Jennifer from actually testifying. The suggestion that Judge Cisneros's order gave Uber notice that Plaintiff "may use" evidence obtained from such a textbook fraudster is not plausible.[2]

Those circumstances distinguish Plaintiff's authorities, in which the party seeking exclusion had notice not only of a witness's identity but also that they possessed information that the party's opponent might rely on. *See, e.g., V5 Techs.*, 334 F.R.D. at 619 ("When the identity of a witness *and subject areas of pertinent information* are *well-understood* by the opposing party given developments in discovery, however, a formal disclosure is not required.") (emphasis added); *White v. City of Middletown*, 45 F. Supp. 3d 195, 209 (D. Conn. 2014) ("Where, as here, a party knew of the witnesses *and the information they possessed*, the duty to supplement disclosure under Rule 26(e) does not apply.") (emphasis added).[3] The relevant question is whether Uber had reason to know Plaintiff "may use" evidence obtained from Jennifer—if not, Plaintiff was obligated to disclose her to Uber. Rule 26(a)(1)(A)(i), (e)(1). The fraudulent nature of Jennifer's complaint, the improper tactics Plaintiff used to turn her evidence to Plaintiff's

---

[2] Plaintiff's suggestion that "Uber even tried to contact Jennifer herself" simply misleads. Opp. 2. To safeguard the privacy of non-party users who filed complaints about Wave 1 and 2 drivers, the parties stipulated that Uber would serve notice on all such complainants whose contact information it was subject to required pursuant to Judge Cisneros's order. See Dkt. 3410. That was not substantive outreach for purposes of investigating Jennifer—the notice simply informed all complainants, including Jennifer, that the parties may contact them, and gave them seven days to respond to the notice before Uber divulged their contact information. *Id.* at 2.

[3] The Court should not follow the outlier holding of *McKesson v. Info. Solutions, Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 813 (E.D. Cal. 2006), which finds exclusion unwarranted simply because a witness's identity was disclosed at some point in discovery.

advantage, and Judge Cisneros's order barring any subpoenas to Jennifer without leave of Court all negate any such notice.[4]

Nor was Plaintiff excused from disclosure because she offered the printout suggesting Jennifer had an active Uber account as of January 18 to "impeach" Ally Cissna's testimony that "that Jennifer was . . . banned" for support abuse in 2019.  Opp. 3.  The January 18, 2026 printout states that the user at issue had "been with [Uber] for 474 days"— since September 2024.  Tr. 1209:3–5, 1248:16–18.  The possibility that Jennifer was able to open an Uber account more than five years after Ms. Cissna testified she was banned is not in any way inconsistent with Ms. Cissna's testimony.  *See* Freivogel Decl. ¶ 8.  And even if it were, Plaintiff's insinuation that Jennifer was "not banned," Opp. 4, was plainly offered to "offered to establish the truth" of a fact Plaintiff seeks to prove to establish Uber had notice that Turay posed a risk of sexual assault.  Plaintiff unabashedly defended the evidence to the Court as substantive evidence refuting Uber's contention that Jennifer's complaint against Turay was fraudulent. Tr. 1225:13-1226:6.  As the Court summarized Plaintiff's view, "if Uber took a person who they think is a fraudster and put them back on the platform, [a] reasonable inference might be, maybe she isn't a fraudster."  Tr. 1234:7-89.  Plaintiff asked the jury to draw an inference about the facts—not Ms. Cissna's credibility.   Such a substantive use of evidence is not "solely for impeachment" and thus triggers Plaintiff's disclosure obligations. Mot. 4 (quoting *Standley v. Edmonds-Leach*, 783 F.3d 1276, 1282 (D.C. Cir. 2015)).[5]  The lack of notice to Uber undercut Uber's readiness to respond

---

[4] For these same reasons, Plaintiff's violation was not harmless.  Plaintiff's nondisclosure deprived Uber of the notice that would have allowed it to immediately rebut Plaintiff's prejudicial theatrics.

[5] Plaintiff notes that *Standley* left open the possibility that "undisclosed evidence with both impeachment and substantive qualities may be presented at trial so long as it is strictly used to impeach," Opp. 4 n.4, but that possibility is not in play here.  The Jennifer printout was not inconsistent with Ms. Cissna's testimony but instead plainly served the substantive purpose of demonstrating that Uber had allowed Jennifer back on the platform.

to the entirety of Plaintiff's questioning about Jennifer, compounding the prejudice of Plaintiff counsel's improper courtroom theatrics.

### III. ADDITIONAL DEVELOPMENTS SINCE UBER'S MOTION FOR RECONSIDERATION UNDERSCORE THAT THE JENNIFER TESTIMONY AS A WHOLE WAS IMPROPER.

Since Uber's Motion for Reconsideration was filed, it has become abundantly clear that Plaintiff's questioning about Jennifer as a whole was calculated to present the jury with a false narrative using counsel to testify on Jennifer's behalf. After using a dramatic and improper assertion about Jennifer's presence in the courtroom to establish that counsel had been in contact with Jennifer, Tr. 1204:4-7, counsel proceeded to trade on that purported relationship to pose a series of questions that could only be interpreted as conveying Jennifer's version of events. Counsel authenticated the printout purportedly obtained from Jennifer, Tr. 1205:3-23, suggested to the jury that Turay's supposed compliment to Jennifer in front of her boyfriend "caused a significant fight in her life that she actually remembers to this day," 1253:2-11, and "was trying to get a hold of somebody to solve that problem because it was a meaningful impact on her life and safety," Tr. 1254:6-18, and suggested to the jury that Jennifer's presence in the courtroom spoke to the veracity of her complaint, Tr. 1212:22-1213:3.

None of this was accidental. Plaintiff's subsequent conduct—in particular, failing to add Jennifer as a rebuttal witness and securing a plaintiff's lawyer who has frequently sued Uber and donated large sums to anti-Uber ballot measures to fight Uber's subpoena for her deposition—makes clear that counsel never had any intent of calling Jennifer as a witness. For good reason. Uber's investigation has confirmed that Jennifer is, beyond dispute, a serial abuser of its platform. After Jennifer was banned for the pattern of fraud that included her complaint against Mr. Turay and 18 other drivers, she set up a new account using a different name and email address, proceeding to make the same cut-and-paste complaint against seven additional drivers

before Uber banned that account.  *See* Freivogel Decl., ¶ 6.  In 2021, she established an "Earner" account on Uber Eats to deliver food before being banned for fraud after receiving several "driver failed to deliver order" reports—i.e., picking up orders and stealing them. *Id.*, ¶ 7.  Jennifer appears to be linked to more than 30 Uber accounts associated with more than two dozen email addresses, some of which she has deleted, others of which are active with fraud flags, one of which was banned for payment arrears, and others of which are active. *Id.*, ¶ 8.  Uber has also identified a prior criminal conviction for shoplifting which court records suggest she may have perpetrated by concealment–a crime of dishonesty that Uber would be entitled to cross-examine her about under Federal Rule of Evidence 609.  To put Jennifer on the stand to testify to the truthfulness of her complaint against Turay—the ninth of *26* nearly identical refund-seeking complaints made using two accounts—would be to suborn perjury.  So Plaintiff's counsel instead trafficked on Jennifer's presence in the courtroom to bombard the jury with innuendo Plaintiff's counsel should have known to be false—and certainly knew would never be supported by admissible evidence.  This improper tactic allowed Plaintiff the best of both worlds, putting Jennifer's purported narrative into the case while insulating her from cross-examination about her pervasive fraud on the Uber platform and her criminal history.

Now that it is clear Plaintiff never intended to have Jennifer testify—indeed, intended to *fight* her testimony tooth and nail—there can be little doubt that this entire course of questioning violated counsel's duty to "not allude to any matter that the lawyer does not reasonably believe . . . will be supported by admissible evidence." Ariz. Rule of Prof. Conduct 3.4(e).  That misconduct extends beyond counsel's reference to Jennifer's presence in the courtroom to all of the insinuations counsel made about Jennifer's version of events—not least the suggestion that Turay caused Jennifer to suffer domestic violence, or that Jennifer's active Uber account somehow indicated her complaint against Turay was true.

-8-
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
CASE NO. 3:23-md-03084-CRB

That misconduct vitiates the entirety of Plaintiff's questioning about Jennifer and incurably prejudices Uber. The falsity of Jennifer's complaint is an essential component of Uber's defense and supported by the overwhelming evidence. To circumvent that defense, Plaintiff's counsel orchestrated an elaborate ploy to allude to incendiary facts that Plaintiff's counsel knew or should have known were false—and certainly knew would never come into evidence. Another curative instruction – on top of two related to the testimony of Sunny Wong and Thomas Tremblay, and one yet to be given to address Dr. Minette Drumwright's stricken testimony – would not be adequate to cure the prejudice to Uber. It is implausible to believe that "the jury can possibly be expected to forget" Plaintiff's theatrical questioning, particularly since the Court has already given at least four curative instructions in this case and a further curative instruction would "come long after the impermissible inference was implanted in the minds of the jury." *United States v. Kallin*, 50 F.3d 689, 694 (9th Cir. 1995).

If the Court does not declare a mistrial, Jennifer's complaint as a whole should be stricken from this case. *See* Ex. B, Proposed Curative Instruction. Uber should not be put to a choice on whether to devote precious trial time to rebutting Plaintiff's highly prejudicial and entirely improper tactics in connection with a patently fraudulent complaint against Mr. Turay.

DATED:  January 26, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Kim Bueno (Admitted Pro Hac Vice)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX  78701
kim.bueno@kirkland.com

| | |
|---|---|
| 1 | Allison M. Brown (Admitted *Pro Hac Vice*) |
| | **KIRKLAND & ELLIS LLP** |
| 2 | 2005 Market Street, Suite 1000 |
| | Philadelphia, PA 19103 |
| 3 | Telephone: (215) 268-5000 |
| | alli.brown@kirkland.com |
| 4 | |
| | Jessica Davidson (Admitted *Pro Hac Vice*) |
| 5 | **KIRKLAND & ELLIS LLP** |
| | 601 Lexington Avenue |
| 6 | New York, NY 10022 |
| | Telephone: (212) 446-4800 |
| 7 | jessica.davidson@kirkland.com |

Theane Evangelis (*Pro Hac Vice* forthcoming)
Daniel Nowicki (*Pro Hac Vice* forthcoming)
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
TEvangelis@gibsondunn.com
DNowicki@gibsondunn.com

Sabrina H. Strong (SBN: 200292)
Jonathan Schneller (SBN: 291288)
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
sstrong@omm.com
jschneller@omm.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

-10-