[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION,

This Document Relates to:

*Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708

Case No. 3:23-md-03084-CRB

**DEFENDANTS' OPPOSITION TO MOTION TO QUASH DEPOSITION SUBPOENA AND TRIAL SUBPOENA**

Judge: Hon. Charles R. Breyer
Courtroom: Courtroom 6 – 17th Floor

Date Filed: January 22, 2026

Trial Date: January 13, 2026

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

**PHOENIX DIVISION**

JAYLYNN DEAN,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants

CASE NO. 25-cv-4276-PHX-CRB

Judge: Hon. Charles R. Breyer
Courtroom: 501

Plaintiff has knowingly injected the Jennifer Chase sideshow into this case in a self-serving attempt to prejudice the jury against Uber. Now, confronted with the imminent exposure of Ms. Chase's history of deception, Plaintiff seeks to deprive Uber of its due process right to present "every available defense" by denying Uber the opportunity to cross examine Ms. Chase. *Lindsey v. Normet*, 405 U.S. 56, 66 (1972). The Court should reject Plaintiff's transparent gambit to taint the jury while shielding Ms. Chase's fraudulent history from scrutiny.

Plaintiff relied on Ms. Chase's complaint against Hassan Turay to establish that he was supposedly a dangerous individual, but panicked when Ms. Chase's credibility was destroyed by indisputable evidence that she had submitted numerous identical or near-identical fraudulent complaints—resulting in Uber banning her from the platform. Desperate to rehabilitate Ms. Chase, Plaintiff's counsel engaged in a theatrical spectacle to bolster Ms. Chase's credibility—while shielding her from cross-examination—by bringing her into the courtroom, telling the jury that her presence alongside her daughter proved her veracity, implying that she is a victim of domestic abuse, and showing the jury a document (apparently created by Ms. Chase at Plaintiff's direction) that, according to Plaintiff, proves that Uber never banned Ms. Chase after all. Ms. Chase now claims that allowing Uber to question her would create a "time-wasting sideshow" (ECF No. 94 at 1), but the sideshow was created entirely by Plaintiff—and Ms. Chase. Plaintiff decided (and Ms. Chase agreed) to parade Ms. Chase in front of the jury and make her presence—and her Uber accounts—a focal point of Plaintiff's trial presentation, and Ms. Chase cannot now stop Uber from testing the veracity of her claims about Mr. Turay and her account history.

During Plaintiff's examination of Allison Cissna, Plaintiff repeatedly insisted that Hassan Turay was dangerous—and Uber should have known about it—because Ms. Chase had complained in 2019 that Mr. Turay had called her beautiful. Trial Tr. 1005:15–24. But as Uber demonstrated, Ms. Chase had submitted nearly identical complaints against 18 other drivers—even submitting the same complaint against several drivers on the same day—and her account was suspended for support abuse shortly after her complaint against Mr. Turay. *Id.* at 1181:3–1182:10; 1183:23–1184:8. When Plaintiff again examined Ms. Cissna, Plaintiff introduced a *new* document, marked P-4532, purporting to show that Ms. Chase had later created a new account on the Uber platform.

*Id.* at 1208:6–1209:19. Plaintiff even suggested to the jury that Ms. Chase was in the audience and her mere presence in the courtroom demonstrated that her many identical complaints were somehow true. *Id.* at 1212:22–1213:3. Plaintiff also tried to connect the supposed fact that Ms. Chase had been reinstated on Uber with Mr. Turay's use of a "guest ride" after he was banned from the platform, to demonstrate that Uber's account management policies were lax. *Id.* at 1209:10–1213:3. And Plaintiff just filed a brief (opposing Uber's motion for reconsideration), arguing that P-4532 shows Ms. Chase was "not banned" from Uber at all (and thus her complaints were true). *See* ECF No. 93 at 3.

Plaintiff has thus made the provenance of P-4532, and Ms. Chase's account history, a key issue in this case. Uber is entitled to discover where the document came from, what it represents, and, if the document does in fact show a valid Uber account for Ms. Chase, what she did to create the account—including whether she has taken steps to avoid Uber's fraud enforcement policies. This is directly relevant to rebutting the impression Plaintiff created that Uber voluntarily reinstated (or never banned) Ms. Chase—either because it takes a lax approach to account management or because it decided that her complaints, including her complaint against Mr. Turay, were true. And as the Court correctly observed, whether Ms. Chase's complaint against Mr. Turay is valid bears directly on Mr. Turay's credibility. Trial Tr. 1558:2–11. Uber thus promptly served deposition and trial subpoenas on Ms. Chase, seeking her communications with Plaintiff's counsel (including any communications about P-4532), any communications between her and Uber relating to her accounts, and any other document involving her involvement in this lawsuit. Mr. Panish accepted representation for a Monday deposition of Ms. Chase, knowing he could not attend "because of other matters both professional and personal." Panish Dec. 5

Yet now, after working with Plaintiff's counsel to engineer a dramatic presentation before the jury designed to bolster her own credibility and Plaintiff's case, Ms. Chase and her counsel—a prominent personal injury attorney with a long history of suing Uber—say she is an innocent, put-upon third party who does not need to produce anything or offer any testimony. All of her arguments fail.

***Plaintiff has made Ms. Chase's documents and testimony relevant.*** According to Ms.

Chase, she need not respond to the subpoenas because "[w]hether Ms. Chase submitted a fraudulent report does not say anything about Uber's knowledge or state of mind at the time." Mot. at 2. But this is not about Uber's state of mind. Plaintiff—with Ms. Chase's cooperation—has made the question of what P-4532 is, and how it was created, extremely relevant, by claiming the document either shows that (1) Uber's enforcement policies were lax or (2) Ms. Chase's identical complaints against Mr. Turay and 18 other drivers were real.

If Ms. Chase has in fact been using surreptitious means to evade Uber's ban on her account, that is relevant to rebutting Plaintiff's claim that the existence of the document (and Ms. Chase's purported creation of a new account on Uber and the account it purports to be associated with) shows Uber does not care about account enforcement. And if Plaintiff intends to argue to the jury that P-4532 shows Ms. Chase was not banned at all—as Plaintiff argues in her brief opposing Uber's motion for reconsideration—then investigating the creation of P-4532 and the account it purports to be associated with is even *more* relevant, because it bears directly on the credibility of Ms. Chase's 2019 complaint against Mr. Turay.

In short, Ms. Chase has placed the document she created, her Uber account activity, and her own credibility at issue in this case. Uber is entitled to probe those issues and establish that (1) Ms. Chase's complaints are not credible, and (2) Uber was not lax in its approach to Ms. Chase's account(s).

***Ms. Chase's argument about which documents Uber may have is not a valid objection.*** Ms. Chase also argues that the subpoenas "seek information that is largely in Uber's possession." ECF No. 94 at 2. But this is irrelevant: "whether a party already has the information requested is *not* a valid objection." *Vanguard Logistics v. Robinson*, 2024 WL 1171654, at *7 (C.D. Cal. Mar. 6, 2024) (emphasis added) (collecting cases). In any event, the documents and communications relating to Ms. Chase's creation of P-4532 and discussion with Plaintiff's counsel are not in Uber's possession. Even setting documents aside, Uber is entitled to test Ms. Chase's credibility directly, through examination, particularly after Ms. Chase appeared in court and Plaintiff's counsel vouched for her credibility. *See* Trial Tr. 1212:23–1213:3.

***Ms. Chase's communications with Plaintiff's counsel are not protected work product.*** Ms. Chase also argues her communications with *Plaintiff's* counsel are "protected work product." Mot. at 2. Communications sent by Ms. Chase to Plaintiff's counsel are unquestionably not work product—they are simply verbatim statements from a nonparty. The "'verbatim statements of third-party witnesses' are not protected under work product." *In re Enf't of Subpoena Issued by F.D.I.C.*, 2011 WL 2559546, at *2 (N.D. Cal. June 28, 2011). Ms. Chase relies on a single case to support her assertion of work product protection (*Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 2606830 (N.D. Cal. May 6, 2016)), but even that case is inapplicable. *Hatamian* held that emails from a witness to counsel—which were made in connection with preparation of a statement by the witness, included in a complaint—were work product because "the communications at issue constituted interview correspondence for the purpose of witness development." 2016 WL 2606830, at *6. Even if that were a correct statement of work product doctrine, it would not entitle Ms. Chase to protection here. Ms. Chase does not and cannot show that any communication was made "for the purpose of witness development," *id.*—Plaintiff did not disclose or call Ms. Chase as a witness and did not submit any affidavit from her.[1] Five months ago, Uber produced documents showing Ms. Chase's Uber support abuse. At no point has Plaintiff amended her witness list to indicate that Ms. Chase would be presented as a rebuttal witness.

In any event, to the extent any communications between Plaintiff's counsel and Ms. Chase could be considered work product, Plaintiff's counsel has waived that protection. In *Gonzales v. United States*, 2010 WL 1838948 (N.D. Cal. May 4, 2010), a tax refund suit in which the plaintiff sought to protect communications between his attorney and accountant under the work product doctrine, the court concluded the plaintiff waived any work product protection where the accountant was "an important fact witness." *Id.* at *2. The court explained that plaintiff "created the [] dilemma

[1] What's more, *Hatamian* explains that communications with a witness can be withheld as work product *when the witness will be deposed*. In *Hatamian*, the court held that the defendants did not show a "substantial need" for the plaintiff's communications with witnesses, particularly because "they have or will question the witnesses at issue under oath." 2016 WL 2606830, at *6 ("Courts often find no substantial need for otherwise protected materials *where the requesting party has the opportunity to depose the witness* about his earlier statements.") (emphasis added). Here, Ms. Chase is resisting *both* producing the documents *and* testifying under oath. While her communications with Plaintiff's counsel are not work product, even if they were, that would only further support Uber's need to depose Plaintiff.

by communicating with a third party fact witness." *Id.* Here Plaintiff not only identified Ms. Chase in front of the jury, but also made representations about Ms. Chase, essentially treating her as a witness. Moreover, Plaintiff showed the jury in open court—and entered into evidence—a document sent by Ms. Chase to Plaintiff's counsel, for Plaintiff's benefit. Parties are not permitted to "shield their work product from discovery but at the same time use it as a sword." *Kintera, Inc. v. Convio*, Inc., 219 F.R.D. 503, 512 (S.D. Cal. 2003) (work product waived where party affirmatively referenced work product publicly on a website). Plaintiff's intentional disclosure of portions of their communications with Ms. Chase in open court is directly inconsistent with an intent to protect that information. Plaintiff made the choice to use "work product" as a sword, Plaintiff cannot now lament the consequences of that decision. *Id.*

Plaintiff—and Ms. Chase—chose to put on a spectacle before the jury, vouching for Ms. Chase's credibility while protecting her from cross-examination. Plaintiff—with Ms. Chase's active cooperation—has put Ms. Chase's veracity, her creation of P-4532, and her Uber account activity at issue in this case. Uber is entitled to her testimony on those topics, and to obtain documents regarding those topics. The fact that Ms. Chase has now retained an attorney from Los Angeles who is conveniently unavailable to attend the deposition he was retained for is no justification for quashing the deposition subpoena. The motion to quash should be denied.

DATED: January 26, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
Telephone: (512) 678-9100
kim.bueno@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Theane Evangelis (*Pro Hac Vice* forthcoming)
Daniel Nowicki (Admitted *Pro Hac Vice*)
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
TEvangelis@gibsondunn.com
DNowicki@gibsondunn.com

Sabrina H. Strong (SBN: 200292)
Jonathan Schneller (SBN: 291288)
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
sstrong@omm.com
jschneller@omm.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC