[Submitting counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION

This Document Relates to:

*Jaylynn Dean v. Uber Techs., Inc.*, No. 23-cv-06708
D. Ariz. No. 25-cv-4276

CASE NO. 3:23-MD-03084-CRB

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS REGARDING ADVICE OF COUNSEL DEFENSE AND PROPOSED INSTRUCTION**

Judge: Hon. Charles R. Breyer

Courtroom: 6 – 17th Floor

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

**PHOENIX DIVISION**

JAYLYNN DEAN,

Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

Defendants.

CASE NO. 25-cv-4276-PHX-CRB

Judge: Hon. Charles R. Breyer

Courtroom: 501

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

Per the Court's request, Uber respectfully submits supplemental briefing addressing: (1) whether a party may present evidence that non-legal personnel considered the possibility of litigation in making business decisions, separate and apart from any advice received by counsel, without waiving privilege as to its attorneys' communications and work product; and (2) whether Plaintiff opened the door to evidence regarding Uber's consideration of litigation risks by presenting company witness deposition testimony ***on this very issue*** at trial. The answer to both questions is yes.

***First***, a defendant can present evidence that non-legal personnel considered the potential for litigation in making business decisions without waiving privilege. Here, one of the central issues at trial is whether Uber and its employees acted reasonably in considering certain safety measures, including a "gender-matching" feature. Plaintiff's own evidence makes clear that those decisions were guided by a number of factors, including the possibility that this feature could open the company to lawsuits given the litigious atmosphere in the U.S. This was not a hypothetical concern. Indeed, such lawsuits were filed almost immediately after Uber eventually launched a gender-matching feature. These are facts in the case, laid out in non-privileged evidence that Plaintiff has presented to the jury. It does not implicate the advice of counsel or put at issue any privileged communications.

***Second***, Plaintiff, in any event, affirmatively opened the door to introduction of this evidence. In her case-in-chief, Plaintiff affirmatively played deposition testimony from Uber witnesses in which Plaintiff's counsel questioned the witnesses about the company's consideration of the potential for lawsuits in deciding whether to implement certain safety measures. Having injected Uber's consideration of the possibility of litigation into this case, Plaintiff opened the door to its admission and is not entitled to any curative instruction. Further, Plaintiff's suggestion that Uber first injected this issue into the case by asserting privilege claims as to documents (or portions of documents) revealing counsel's legal advice and mental impressions is illogical and irrelevant.

For these reasons, Plaintiff's proposed jury instructions should be rejected and, if the Court decides that an instruction is appropriate, Uber's proposed alternative instruction should be adopted.

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS REGARDING ADVICE OF COUNSEL DEFENSE
1 CASE NO. 3:23-MD-03084-CRB / 25-CV-4276-PHX-CRB

**BACKGROUND**

During the depositions of Uber witnesses, including Rebecca Payne and Andrew Hasbun, Plaintiff's counsel chose to ask these witnesses about Uber's consideration of potential litigation risk in evaluating the implementation of a gender-matching feature in the United States, often using non-privileged, produced documents related to this issue. In response to such questioning, and based on the documents Plaintiff used, Ms. Payne and Mr. Hasbun testified that Uber had implemented the gender-matching feature in other countries, but its business personnel weighed several business factors in deciding not to implement the feature in the U.S., including the regulatory risks arising from antidiscrimination laws not present in other international markets and the threat of lawsuits given the litigious nature of the American legal system. Such questioning and testimony included, for example:

- Ms. Payne reading, at Plaintiff's counsel's request, an Uber document stating: "We recently launched our first western market: Australia. But they have a government process in place for requesting legal exemptions to anti-discrimination laws, and they don't have a litigious culture quite like the US." *See, e.g.*, 4/3/25 Payne Dep. 439:15-20.

- Plaintiff's counsel reading a document discussing the gender-matching program in which Uber personnel state, "So it is . . . Let Australia go, see what happens, maybe US later"; "Yep. Look at safety impact, add supply impact. Do proper marketing around it to attract women drivers . . . And then revisit trade-off in US . . . supply impact vs legal cost." *See* 4/11/25 Hasbun Dep. 510:3-25.

- Ms. Payne reading, at Plaintiff's counsel's request, document stating: "I don't think anyone will be surprised by the decision, it's just unfortunate how the legal system works in the US and that even if we know the product we are launching is a worthy case, it doesn't change the potential legal costs and the fact that Uber is a magnet for these issues." 4/3/25 Payne Dep. 431:2-7.

- Plaintiff's counsel reading document stating: "Consider legal cost associated with Women Rider Preferred as research and development to acquire and maximize supply benefit from women earners; meet back mid-February with a tighter view on legal and policy risk, safety and supply benefit; then reassess the go-forward decision." *Id.* 485:25-486:5.

- Ms. Payne reading, at Plaintiff's counsel's request, document stating: "I mean from my personal perspective, giving women the tools to manage their own risk seems like a positive thing to be adding to the marketplace, but it doesn't come without potential downside cost." *Id.* 532:3-10.

- Plaintiff's counsel reading document discussing business risks in implementing the gender-matching program in which Uber personnel state: "Fully recognize and appreciate the public relations impact Women Rider Preferred could have, however the supply needed to clear the legal risk is substantial; we haven't seen similar increases other than at new city launches. While Women Rider Preferred shows signal on

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS REGARDING ADVICE OF COUNSEL DEFENSE
2 CASE NO. 3:23-MD-03084-CRB / 25-CV-4276-PHX-CRB

adoption and improving safety, at this point don't have confidence that the exposure risk will be outweighed by the P[ublic] R[elations] moment or that WRP will add women to the platform in a manner that is sticky/has staying power." *Id.* 499:5-14.

- Plaintiff's counsel reading document in which Uber personnel state "For additional context, the conversations around this feature happened in spring/summer 2021 . . . which was a very different time at Uber – we were still in the middle of the pandemic, business health was a serious concern, and we were dealing with significant legal blowback from the Eats lawsuits." *Id.* 442:24-443:8.

- Plaintiff's counsel questioning Mr. Hasbun about an Uber employee's concerns regarding a gender-matching program: Q. "You're saying [non-legal employee] is being kind of afraid about Women Driving Women. He doesn't want to take the risk on it, right? A. "That can be inferred, absolutely." 4/11/25 Hasbun Dep. 478:9-12.

There was good reason for Uber to have business concerns, independent of any advice of counsel, regarding potential litigation risks that could result from adopting the gender-matching program in the United States. For example, Uber had previously been sued by the Arizona Attorney General for alleged racial discrimination regarding a delivery discount fee program it implemented for businesses owned by Black entrepreneurs, *see* https://cronkitenews.azpbs.org/2021/06/02/uber-doordash-settle-state-claim-end-breaks-for-black-businesses/, and Uber paid more than $11 million in arbitration fees in connection with individual discrimination lawsuits related to this program, *see* https://www.businessinsider.com/uber-owes-11-million-fees-reverse-discrimination-case-2022-4. Moreover, concerns about the potential for litigation stemming from a gender-matching feature became a reality last year, when Uber piloted a Women's Preferred Program in select cities and was sued in a putative class action shortly thereafter. *See* https://time.com/7332356/uber-lawsuit-sex-discrimination-lyft.

Prior to trial, Plaintiff filed a motion *in limine* to "exclude argument or evidence that Uber was Legally Prohibited or Constrained from Implementing Safety Measures." ECF 4688-3 at 24. In her motion, Plaintiff sought to exclude evidence related to legal considerations about, among other things, "woman-to-woman matching." *Id.* At the Pretrial Conference, the Court indicated that such evidence may be relevant to the issues in this case. *See* 1/6/26 Pretrial Tr. 77:5-77:25. Contrary to her own motion, Plaintiff then made the strategic decision to inject Uber personnel's consideration of potential legal risks into trial by affirmatively playing the deposition testimony from Ms. Payne and Mr. Hasbun discussed above. Notably, in the testimony Plaintiff played for the jury, neither Ms. Payne nor Mr. Hasbun affirmatively

volunteered any information regarding discussions with counsel; rather, it was Plaintiff's counsel who expressly raised this issue and questioned them on it. *See* 4/2/25 Payne Dep. 342:25-343:12 (Q: [T]he legal folks at Uber was – were claiming there was a significant legal risk associated with a female-matching option, right? A: The legal team provided inputs, . . . that was discussions with counsel.").

Despite asking these questions and choosing to play this testimony for the jury, Plaintiff subsequently requested that the Court issue curative instructions precluding the jury from considering evidence related to litigation concerns in weighing the reasonableness of Uber's conduct. ECF 5046 at 2. On January 22, 2026, Uber submitted an objection to Plaintiff's proposed instructions, arguing that no curative instruction is needed. *See* ECF 5067. In the alternative, Uber asked the Court, at a minimum, to enter an instruction making clear that Uber is not invoking an advice-of-counsel defense and the jury can consider whether Uber business personnel considered the risk of possible litigation in evaluating safety measures. *Id*.

Also on January 22, the Court held a hearing regarding Plaintiff's proposed curative instructions and requested further briefing on whether "a witness can be permitted to testify that it was his or her concerns about legal jeopardy that then influenced the decision as to whether" to implement safety measures. 1/22/26 Hr'g Tr. 1529:20-25. During the hearing, Plaintiff suggested that Uber, not Plaintiff, injected the issue of Uber's legal considerations in deciding to implement safety measures into the case by asserting privilege over documents that include attorney-client communications and/or work product on this issue, and the Court invited supplemental briefing on this topic as well. *Id*. 1527:5-1533:11.

## ARGUMENT

### I. UBER'S CONSIDERATION OF POTENTIAL LITIGATION IN CONNECTION WITH ITS BUSINESS DECISIONS IS NOT PRIVILEGED AND DOES NOT PUT LEGAL ADVICE AT ISSUE.

Evidence that Uber employees considered a multitude of issues in making business decisions—including the potential for litigation and its effect on the company—is relevant and admissible and does not implicate, much less waive, the attorney-client privilege.

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th

Cir. 2011); *see also* Cal. Evid. Code § 954 ("client…has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer").[1] Evidence that Uber's business personnel considered the possibility of litigation and its attendant costs in making business decisions does not involve any such communications and is therefore not covered by the attorney-client privilege. Indeed, the testimony that Plaintiff has played for the jury makes clear that internal Uber communications about the risk of litigation were part of business decision-making by non-lawyers separate and apart from any legal advice from attorneys:

- "I don't think anyone will be surprised by the decision, it's just unfortunate how the legal system works in the US and that even if we know the product we are launching is a worthy case, ***it doesn't change the potential legal costs and the fact that Uber is a magnet for these issues***." 4/3/25 Payne Dep. 431:2-7 (emphasis added).

- "We recently launched our first western market: Australia. But they have a government process in place for requesting legal exemptions to anti-discrimination laws, and ***they don't have a litigious culture quite like the US***." *Id.* 439:15-20 (emphasis added).

- "So it is . . . Let Australia go, see what happens, maybe US later"; "Yep. Look at safety impact, and supply impact. Do proper marketing around it to attract women drivers . . . And then revisit trade-off in US . . . ***supply impact vs legal cost***." 4/11/25 Hasbun Dep. 510:3-25 (emphasis added).

- A gender-matching feature was not adopted in 2022 because "we were still in the middle of the pandemic, ***business health was a serious concern***, and we were dealing with significant legal blowback from the Eats lawsuits" and therefore the "***executive leadership teams . . . didn't have much of an appetite for risk at that time***." 4/3/25 Payne Dep. 443:5-444:2 (emphasis added).

- "***Consider legal cost associated with Women Rider Preferred*** as research and development to acquire and maximize supply benefit from women earners; meet back mid-February with ***a tighter view on legal and policy risk, safety and supply benefit***; then reassess the go-forward decision." *Id.* 485:25-486:5 (emphasis added).

---

[1] Courts in this District have indicated that it is an open question whether a federal court with diversity jurisdiction over a matter should apply the privilege law of the state that governs the substantive claims in the case or the law of the state with the most significant relationship to the communications at issue (in this case, California). *See, e.g.*, *Lion Elec. Co. v. Nikola Corp.*, No. CV-23-00372-PHX-DGC, 2024 WL 4186803, at *1 (D. Ariz. Sept. 13, 2024); *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-2641 PHX DGC, 2016 WL 3970338, at *1 (D. Ariz. July 25, 2016) (same). Judge Cisneros has previously recognized that "California law . . . applies to issues of privilege in this multi-district litigation, at least absent any showing that the law of some other state should apply" and considered federal cases as persuasive authority in deciding privilege issues. *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-md-03084-CRB (LJC), 2024 WL 5190360, at *1-2 (N.D. Cal. Dec. 21, 2024); *see also S. Cal. Gas Co. v. Pub. Utils. Comm'n*, 784 P.2d 1373, 1379 (Cal. 1990) (collecting cases) (noting that "federal courts have applied a standard similar to [California's] own for determining whether a party has impliedly waived a privilege").

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS REGARDING ADVICE OF COUNSEL DEFENSE

5   CASE NO. 3:23-MD-03084-CRB / 25-CV-4276-PHX-CRB

In addition, as set forth above, these business concerns were based on objective facts, rather than legal advice, given that Uber had previously been sued for alleged racial discrimination in connection with waived delivery fees for Black-owned businesses. *See* https://cronkitenews.azpbs.org/2021/06/02/uber-doordash-settle-state-claim-end-breaks-for-black-businesses/. And Uber's business concern that a gender-matching feature could embroil the company in lawsuits proved correct. When the company eventually launched this feature in 2025, within just a few months after the pilot program launched, male drivers in California filed a putative class action lawsuit against the company, alleging that they "are discriminated against and receive fewer and different rides than they otherwise would absent the policy." https://time.com/7332356/uber-lawsuit-sex-discrimination-lyft/.

All of this evidence goes to business considerations discussed among non-legal employees at Uber; none of it discloses confidential communications between lawyer and client seeking or providing legal advice on the merit of any potential claim related to a potential gender-matching feature. *See De Coster v. Amazon.com, Inc.*, No. 2:20-CV-00424-JHC, 2025 WL 904465, at *5 (W.D. Wash. Mar. 25, 2025) (email chain not privileged where "there [wa]s no discernable request for legal advice or any legal analysis in the emails"). Importantly, the relevant caselaw draws a distinction between communications involving counsel that analyze the legal risks associated with a specific course of action a company is contemplating, and business communications reflecting a broader concern—unconnected to any such legal risks—about whether a company is prepared to accept the inevitable cost of litigation. The former are subject to the attorney-client privilege; the latter are not. *See In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 CIV. 7488 (CM), 2019 WL 6242128, at *9 (S.D.N.Y. Aug. 2, 2019) (witness could discuss "litigation risk" without waiving attorney-client privilege as long as it "implicate[s] only business decisions and could have been theoretically reached without attorney-client input"); *Arnett v. Bank of Am., N.A.*, No. 3:11-cv-01372-SI, 2013 WL 12321485, at *2-3 (D. Or. Mar. 29, 2013) (communications between non-lawyer employees discussing displeasure with company policy and "frustration at not getting support from legal and other divisions" were not privileged). The evidence at issue here does not reflect legal advice, an analysis of potential claims or liability, or anything of the kind. Rather, it shows that Uber employees

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS REGARDING ADVICE OF COUNSEL DEFENSE

6   CASE NO. 3:23-MD-03084-CRB / 25-CV-4276-PHX-CRB

were weighing business interests, including the high costs associated even with unmeritorious litigation. Accordingly, it is not privileged and does not implicate privileged communications.

The same would be true even if the communications and evidence at issue did implicitly refer to legal advice (though they do not). Courts "apply the 'primary-purpose test' to determine whether" communications that address both business and legal concerns fall within the ambit of privilege. *Wisk Aero LLC v. Archer Aviation Inc.*, No. 21-cv-02450-WHO (DMR), 2023 WL 2699971, at *3-4 (N.D. Cal. Mar. 29, 2023) (citing *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021)). Specifically, courts consider whether the "primary purpose of the communication is to give or receive legal advice, as opposed to business . . . advice." *Id*. Quoting *Wisk*, Judge Cisneros has previously recognized in this litigation that "[n]o privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." *In re Uber*, 2024 WL 5190360, at *2. In *Epic Games*, *Inc. v. Apple Inc.*, 161 F.4th 1162 (9th Cir. 2025), for example, the Ninth Circuit found that documents "analyz[ing] how various compliance options would affect its revenue, not the strength or risk of its legal positions," were not privileged because they did not show that "receiving legal advice was even a primary purpose, much less the primary purpose" of those documents. *Id.* at 1180 (emphases omitted). Likewise, here, none of the evidence at issue—including internal business communications Plaintiff has presented to the jury or evidence that Uber may offer in response—was created for the primary purpose of requesting or providing, or the provision of, legal advice.

Nor does the result change where there is separate evidence of communications reflecting legal advice that would be subject to the privilege. In *In re Namenda Direct Purchaser Antitrust Litigation*, the court denied a motion *in limine* to preclude evidence of a party's "business reasons" for taking a particular action, including "litigation risk" or "risk aversion." 2019 WL 6242128, at *9. The court found that evidence of litigation risk could be offered "as long as it 'implicate[s] only business decisions and could have been theoretically reached without attorney-client input.'" *Id.* At the same time, it disallowed "subjective evidence of litigation risk related specifically to . . . its beliefs about the strength or weakness" of its position in a particular litigation. *Id*. A similar line can and should be drawn between Uber's

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS REGARDING ADVICE OF COUNSEL DEFENSE

7 CASE NO. 3:23-MD-03084-CRB / 25-CV-4276-PHX-CRB

consideration of "litigation risks"—i.e., the likelihood of litigation and its attendant costs—in weighing the risks and benefits of a business proposal, and legal analyses and advice provided by legal counsel as to the merits of such possible litigation. *See Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 873 (N.D. Cal. 2019) (concluding that document relating to "business impact" of course of action is not privileged even though the party "sought legal advice on that topic" at some point in time).

Because none of the evidence already introduced by Plaintiff (nor similar evidence that Uber may introduce in response) implicates the attorney-client privilege, the jury's consideration of it would put not legal advice at issue or waive any privilege. *See Roberts v. Legacy Meridian Park Hosp., Inc.*, 97 F. Supp. 3d 1245, 1253 (D. Or. 2015) (no waiver where document "did not disclose, reveal, or describe, in whole or in part, the substance of any confidential communication that he actually had with his attorney").

## II. PLAINTIFF OPENED THE DOOR TO EVIDENCE REGARDING UBER'S CONSIDERATION OF LITIGATION RISKS.

Even if evidence or testimony regarding Uber personnel's consideration of litigation risk in evaluating safety measures were somehow inadmissible, Plaintiff still would not be entitled to a "curative" instruction because she affirmatively opened the door to such evidence at trial.

The Ninth Circuit has recognized that, even in cases where a court has excluded certain evidence at a party's request, that same party "open[s] the door" to its introduction (and consideration by the jury) if she affirmatively raises it at trial. *Weekley v. City of Los Angeles*, 656 F. App'x 824, 826-27 (9th Cir. 2016) (holding, pursuant to the "'opening the door' doctrine," that even if the evidence at issue was inadmissible, plaintiff "opened the door to [that evidence] by initially eliciting testimony from his own expert" on the topic); *see also Nguyen v. Sw. Leasing & Rental Inc.*, 282 F.3d 1061, 1067 (9th Cir. 2002) ("Under the doctrine of curative admissibility, 'the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission.'") (citation omitted). As courts have explained, "[a] party may not complain about the introduction of evidence where he himself opens the door," and "[h]aving opened the door to a subject, a party 'open[s] the door to a full and not just a selective development of that subject.'" *Torres v. Johnson Lines*, No. CIV-No. 85-3513-RJK, 1989 WL 87085, at

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS REGARDING ADVICE OF COUNSEL DEFENSE

8   CASE NO. 3:23-MD-03084-CRB / 25-CV-4276-PHX-CRB

*2 (C.D. Cal. Feb. 21, 1989) (holding that plaintiff's counsel "opened the door" to previously excluded evidence by pursuing a line of questioning on cross-examination that solicited evidence the court had previously limited) (quoting *United States v. Helina*, 549 F.2d 713, 719 (9th Cir. 1977)), *aff'd*, 932 F.2d 748 (9th Cir. 1991). For similar reasons, courts have rejected requests for "curative" jury instructions regarding evidence that the moving party itself injected into the case. *See, e.g.*, *Pruitt v. Welsh*, No. 1:08CV2550, 2009 WL 6765332, at *10 (N.D. Ohio Dec. 18, 2009) (affirming refusal to provide a curative instruction regarding allegedly improper evidence because the party seeking the instruction opened the door to the testimony at issue; "[a] party cannot take advantage of an error he invited or induced").

Here, Plaintiff opened the door to evidence that Uber's business personnel considered the potential for litigation in evaluating a potential gender-matching feature. Despite moving to exclude such evidence prior to trial, Plaintiff made the strategic decision to play deposition testimony in which Plaintiff's counsel questioned Uber witnesses about communications among business personnel regarding the potential for litigation if such a feature were implemented. *See, e.g.*, 4/3/25 Payne Dep. 439:15-20; 4/11/25 Hasbun Dep. 510:3-25. Plaintiff presented this evidence in an apparent attempt to convince the jury that Uber acted unreasonably in delaying the adoption of gender-matching in the U.S. when the technology was available and had been successfully adopted elsewhere in the world. But "[h]aving opened the door to [the] subject" of litigation concerns, she also "open[ed] the door to a full and not just a selective development of that subject." *Torres*, 1989 WL 87085, at *2.

Further, to the extent Plaintiff claims that she may be prejudiced if such evidence leads the jury to speculate that Uber's concerns about litigation were motivated by counsel, it is ***Plaintiff*** who specifically raised that possibility before jurors. In portions of Ms. Payne's testimony that Plaintiff played, it was ***Plaintiff's counsel***, not Ms. Payne, who stated that litigation risk was an issue raised by the company's lawyers. 4/2/25 Payne Dep. 342:25-343:3 (Plaintiff's counsel asking witness: "But the legal folks at Uber was – were claiming there was a significant legal risk associated with a female-matching option, right?"). Again, Plaintiff "may not complain about the introduction of evidence where [she herself] open[ed] the door" to it. *Torres*, 1989 WL 87085, at *2.

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS REGARDING ADVICE OF COUNSEL DEFENSE
9 CASE NO. 3:23-MD-03084-CRB / 25-CV-4276-PHX-CRB

Finally, there is no merit to Plaintiff's illogical suggestion that her affirmative use of testimony regarding Uber's consideration of litigation risk was required or motivated by Uber's assertion of privilege as to separate communications to and from attorneys involving actual legal advice. During the January 22 hearing, Plaintiff stated:

> And if you look at the record, what Uber did is they withheld, partially or in full, mostly partially, hundreds of documents on this basis. And what they do is they produce the document, and it says -- this is just one example. This is Exhibit 1479. It talks about: Well, this document is going to look at our views on legal and policy risks. Okay. And then it just redacts everything afterwards. So that's the record of the case. Are we supposed to say, well, we can't use this document? We can't ask this witness because Uber redacted the rest of this? That doesn't make any sense.

1/22/26 Hr'g Tr. 1531:11-22. Uber was careful to narrow its privilege claims to documents and portions of documents that actually reveal requests for, or the provision of, legal advice from lawyers, while producing non-privileged business communications. Indeed, Judge Cisneros has expressly held that, where documents contain both privileged and non-privileged communications, Uber must "produce a version . . . with privileged comments redacted and non-privileged comments unredacted." *In re Uber*, 2024 WL 5190360, at *3. As a result, Uber's redaction of privileged information from produced documents in accordance with the Court's direction did not inject legal advice into the case. By contrast, Plaintiff's affirmative decision to enter into evidence the ***non-privileged***, produced portions of documents that discuss Uber's business consideration of the potential for litigation arising from a gender-matching feature certainly opened the door to Uber also using that evidence and the jury considering it.

In response to Plaintiff's argument at the hearing, the Court also noted a concern that certain documents that have been produced include language such as "attorney-client privilege," "do not disclose" or "private" and therefore questioned whether Uber has "raised th[e] specter of attorney-client privilege as to these [materials]." 1/22/26 Hr'g Tr. 1533:4-11. Such language, however, appears in the original documents and was added by the individuals who wrote or created those documents, including non-lawyers with no training on the legal application of the attorney-client privilege. During the discovery process, Uber's counsel evaluated collected documents for privilege independent of that language, and documents (or portions of documents) that were not deemed to satisfy the requirements for privilege were produced. As a result, references to privilege within a document do not control whether privilege

protection applies. Moreover, with respect to documents related to gender-matching that Plaintiff has entered into the record, references to "privilege" in the contents of those documents merely indicate that the ***redacted*** portions are subject to a privilege, not the portions that were produced and include business information.[2]

Plaintiff's opening the door renders her proposed instruction not only improper but severely prejudicial to Uber. Plaintiff has already presented the jury with extensive testimony that concerns about legal risk delayed Uber's adoption of a gender-matching feature. Instructing the jury that Uber is not defending those legal concerns would send an unmistakable message that they were not valid; the only conclusion the jury could draw is that Uber delayed gender matching on unreasonable grounds it is not even trying to defend in this case. The opening-the-door doctrine bars Plaintiff from first injecting Uber's legal considerations into the case and then preventing Uber from defending those considerations.

In short, Uber's consideration of the potential for litigation and resulting harm to the company as part of its business decisions regarding the adoption of a gender-matching feature is not privileged and does not implicate privileged information. As a result, there is no reason to bar the introduction and consideration of this evidence at trial. Moreover, even if such evidence were inadmissible in the first instance, Plaintiff opened the door by affirmatively introducing it at trial, entitling Uber to address this issue as well and to have the jury consider it.

## CONCLUSION

For the foregoing reasons, the Court should refuse to adopt Plaintiff's proposed jury instructions. In the alternative and at a minimum, if the Court believes any instruction is necessary, it should adopt Uber's proposed instruction.

[2] To the extent the Court is concerned that jurors will misinterpret documents that include the words "private" or "attorney-client privilege" to be subject to a privilege, or to reflect the advice of counsel, the Court could address this concern by instructing the jury prior to deliberations to disregard such markings in considering the evidence.

DATED: January 26, 2026

Respectfully submitted,

/s/ Laura Vartain Horn
Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX 78701
kim.bueno@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Theane Evangelis (Admitted *Pro Hac Vice*)
Daniel Nowicki (Admitted *Pro Hac Vice*)
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
TEvangelis@gibsondunn.com
DNowicki@gibsondunn.com

Sabrina H. Strong (SBN: 200292)
Jonathan Schneller (SBN: 291288)
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
sstrong@omm.com
jschneller@omm.com

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS REGARDING ADVICE OF COUNSEL DEFENSE
12 CASE NO. 3:23-MD-03084-CRB / 25-CV-4276-PHX-CRB

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Laura Vartain Horn*
Laura Vartain Horn