1  [Submitting counsel below]

2  ## UNITED STATES DISTRICT COURT

3  ## NORTHERN DISTRICT OF CALIFORNIA

4  ## SAN FRANCISCO DIVISION

5  | | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | CASE NO. 3:23-MD-03084-CRB |

**DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S TRIAL BRIEF REGARDING TENTATIVE FINAL INSTRUCTIONS ON APPARENT AGENCY**

This Document Relates to:

*Jaylynn Dean v. Uber Techs., Inc.*, No. 23-cv-06708
D. Ariz. No. 25-cv-4276

Judge:        Hon. Charles R. Breyer

Courtroom:   6 – 17th Floor

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

## PHOENIX DIVISION

JAYLYNN DEAN,

      Plaintiff,

v.

UBER TECHNOLOGIES, INC., et al.,

      Defendants.

CASE NO. 25-cv-4276-PHX-CRB

Judge:        Hon. Charles R. Breyer

Courtroom:   501

## TRIAL BRIEF REGARDING TENTATIVE FINAL INSTRUCTIONS ON APPARENT AGENCY

Uber submits this trial brief in response to the Court's comments on Plaintiff's apparent agency claim during today's morning session and the discussion during the charging conference. In particular, Uber writes to highlight: (1) that the Court's tentative instruction on scope of apparent agency is at odds with the Arizona Court of Appeal's holding in *Doe v. Roman Catholic Church of Diocese of Phoenix*, 533 P.3d 214, 223-24 (Ariz. Ct. App. 2023), which is controlling in this diversity case given the absence of "convincing evidence" that the Arizona Supreme Court would reject it, *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007); and (2) that the Court's on-the-record distinction of *Fadely v. Encompass Health Valley of the Sun Rehab. Ctr.*, 515 P.3d 701 (Ariz. Ct. App. 2022), overlooks key aspects of Uber's Terms of Service, the reasoning of *Fadely*, and other Arizona authority interpreting *Fadely*.

1. The Court's tentative "Apparent Agency—Scope of Agency Instruction" departs from Arizona law in instructing the jury only to determine whether "the legitimate conduct and services performed by Mr. Turay as a driver that were incidental to the sexual encounter were done within the scope of his apparent authority as a driver for Uber," and in further instructing that the jury is "not being asked to determine whether the alleged nonconsensual sexual encounter itself is not within the ordinary scope of Uber's business or Mr. Turay's apparent authority." Dkt. 5135 at 23. Arizona law makes clear that it is *the tortious act* that must fall within scope of employment for vicarious liability to arise. Further, Arizona law makes clear that with only one exception–the context of supervisory sexual harassment by a manager of a subordinate employee–sexual assault does not fall within the scope of an employee's or agent's authority as a matter of law.

a. The Court's proposed instruction appears premised on *State v. Schallock*, 941 P.2d 1275 (Ariz. 1997), but that case does not apply here. The observation of *Schallock* that "in a sexual harassment case" the scope inquiry looks "not the ultimate sexual act but conduct related to the tort" reflected the "mixed motives" involved in managerial sexual harassment: "In fondling the file clerks and offering advancement for sex, [the employee] was both serving the master by running the office—a task he was

explicitly authorized to do—and serving his personal desires." *Id.* at 1283. The Arizona Supreme Court repeatedly cautioned that this analysis reflects "factors peculiar to supervisory sexual harassment cases," where a manager harasses a junior employee. *Id.* at 1281. The court stressed that "claims of a managing officer's sexual harassment of subordinate employees over whom he had power to hire and fire, promote and demote, instruct and control . . . *distinguishe[d] the case* from the great majority of cases involving torts committed by a servant against either a non-employee or co-employee." *Id.* at 1283 (emphasis added). The Court also emphasized the "considerable evidence that the abusive working conditions created by [the employee] were so pervasive that a jury could infer [the employer] was aware of the way [he] ran its business and by permitting such conditions to continue authorized his abusive acts." *Id.* at 1283.

Arizona courts have since repeatedly limited *Schallock* to those facts, stressing that *Schallock* is limited to the context of a manager sexually harassing a junior employee. *See Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 603–04 (Ariz. 2012) ("The Court itself recognized [in *Schallock*] that 'special factual and legal considerations' distinguish [supervisory sexual harassment] cases 'from the great majority of cases involving torts committed by a servant against' a third party."); *Doe v. Roman Catholic Church of Diocese of Phoenix*, 533 P.3d 214, 223-24 (Ariz. Ct. App. 2023) ("*Schallock* is narrowly applicable to cases involving longstanding abuse and harassment in the workplace by a manager with authority to 'hire and fire, promote and demote, [and] instruct and control' subordinates the manager victimizes."). But those facts are absent here. The record is clear that Uber had no notice of any prior similar conduct by Turay (and in particular, none ***as to this plaintiff on a repeated basis***)—much less evidence that such conduct by Turay was "pervasive." *Schallock*, 941 P.2d at 1283. Moreover, Turay was not a manager and Plaintiff was not an employee, did not have sustained interactions with the alleged perpetrator as was the case in *Schallock*, and unlike a manager who discharges both managerial and personal functions in harassing subordinates, *id.*, there is no conceivable argument that Turay was serving Uber's interests in any way in allegedly assaulting Plaintiff. *See also* Trial Tr. 1175:12–18 (undisputed testimony that Uber deactivated Turay's account within two days of

1    the incident). Simply put, while "*Schallock* involved managerial sexual harassment," this case does

2    not. *Engler*, 280 P.3d at 603 (Arizona Supreme Court distinguishing *Schallock* on this basis).

3         This case is thus governed not by *Schallock*, but by *Doe*, which held, *as a matter of law*, that

4    sexual assault fell outside a priest's scope of employment when he allegedly assaulted a youth

5    parishioner during a spiritual counseling trip. 533 P.3d at 223-24. Although the assault occurred during a

6    counseling trip in which the employee was isolated with the minor parishioner, the *Doe* court explained

7    that these acts were committed "solely to gratify [the priest's] personal, apparently sexual desires," and

8    thus could not be within the scope of his employment. *Id.* at 222.  And *Doe* explained that *Schallock* was

9    limited to "narrowly applicable to cases involving longstanding abuse and harassment in the workplace

10   by a manager with authority to 'hire and fire, promote and demote, [and] instruct and control'

11   subordinates the manager victimizes."  *Id.* at 223-24 (quoting *Schallock*, 941 P.2d at 1282).  *Doe* is

12   wholly consistent with the Arizona Supreme Court's holding in *Engler* that *Schallock* is limited to

13   circumstances "involv[ing] managerial sexual harassment."  *Engler*, 280 P.3d at 603. And absent

14   "convincing evidence" that the Arizona Supreme Court would depart from *Doe*, that holding is binding

15   here. *Ryman*, 505 F.3d at 994. No such evidence exists. On the contrary, the Arizona Supreme Court has

16   twice emphasized the "special" and "peculiar" context of managerial sexual harassment, *see Schallock*,

17   941 P.2d at 1281; *Engler*, 280 P.3d at 603-04, and denied review in *Doe*, *see* 533 P.3d 214 (Ariz. 2023).

18   *Doe* is not materially distinguishable: There is no logical reason why the scope of agency analysis would

19   be different for a rideshare driver than it is for a spiritual counselor whose employment places him alone

20   with a minor under his control and supervision.

21        The holding of *Doe* is consistent with Arizona-law cases before and after *Schallock* holding that

22   sexual assault falls outside the scope of employment as a matter of law absent supervisory harassment

23   implicitly ratified by the employer—including a recent Arizona law decision dismissing apparent agency

24   claims against Lyft.   *Stencel v. Lyft Inc.*, 2024 WL 4008752, at *4-5 (N.D. Cal. 2024).  In *Stencel*, as

25   here, the plaintiff argued a rideshare company was vicariously liable under *Schallock* for a driver's

26   assault because the assault "was perpetrated due to [the assailant's] job as a Lyft driver and part of or

27   incidental to his role as [such]." *Id.* at *4. The court held that an assault by a rideshare driver on a

28

1    passenger "fall[s] far short of cases in which Arizona cases have found an assault is within the scope of

2    employment," noting that *Schallock* "found a jury question as to authorization existed where the

3    defendant employer "was aware for close to a decade that [its employee], the person managing its

4    affairs, was engaged in egregious improprieties and did little or nothing to call it to a halt." *Id.* The

5    court found *Schallock* inapplicable because "although Stencel alleges the assault took place during a

6    Lyft ride, she also alleges that 'Lyft informed [her] that the Lyft driver had been suspended from the

7    Lyft platform,' an allegation essentially negating any inference of ratification." *Id.* Other Arizona cases

8    are in accord. *See, e.g.*, *Tonner v. United States*, 2025 WL 2097927, at *4 (D.Ariz. 2025) ("Arizona

9    courts have consistently held that sexual misconduct rarely furthers an employer's business.");

10   *Chamberlain v. Neumann*, 2019 WL 2716961, at *3 (D. Ariz. 2019) (bar owner's "sexually harassing

11   conduct and alleged sexual assault of [bar employee] were not expressly or impliedly authorized as part

12   of his job duties and cannot be reasonably contemplated as necessary or incidental to his employment");

13   *Guzman-Martinez v. Corr. Corp. of Am.*, 2012 WL 2873835, at *16 (D. Ariz. 2012) (dismissing

14   vicarious liability claim against private prison company where inmate assaulted by guard "did not allege

15   facts to support finding that [the guard] served or furthered [private prison company's] business

16   purpose").

17        b. Even if the Court finds *Schallock* applicable, the decision would not support instructing the

18   jury that what must be within the scope of apparent agency is "the legitimate conduct and services

19   performed by Mr. Turay as a driver that were incidental to the sexual encounter." Dkt. 5135, at 23. The

20   observation of *Schallock* that "in a sexual harassment case" the scope inquiry looks at "not the ultimate

21   sexual act but conduct related to the tort" reflected the "mixed motives" involved in managerial sexual

22   harassment. *Id.* at 1283. But even in supervisory harassment cases, *Schallock* made clear, the relevant

23   question is whether any unauthorized conduct is incidental to authorized conduct, not vice versa. *Id.* at

24   1282 ("Many factors are to be considered in determining whether conduct not expressly authorized is so

25   incidental as to be within the scope."); *id.* ("[W]e do not believe it can be said as a matter of law that

26   Heinze was outside the course and scope of authority *with regard to many or most of the incidents*

27

28

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S TRIAL BRIEF
REGARDING TERMS OF SERVICE

*alleged by Saunders and Schallock*."). Instructing the jury that the authorized conduct (Turay's driving) must be incidental to the unauthorized conduct (the alleged assault) would get that inquiry backwards.

Further, *Schallock* did not retreat from the Arizona law rule that "to be within the course and scope, the act must be, at least in part, motivated by a purpose to serve the master rather than solely to serve personal motives unconnected to the master's business." 941 P.2d at 1283. The requirement is black-letter Arizona law on which the Court should instruct the jury. *See* RAJI (Civil) SI 5 (7th ed.) ("If the [describe allegedly tortious act] was an independent course of conduct not intended by [name of person claimed to be agent] to serve any purpose of [name of defendant], then the act would be outside the scope of employment. . . ."); *see* Restatement (Third) of Agency § 7.07 ("An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer."); *see Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 602 (Ariz. 2012) ("[T]he Restatement (Third) § 7.07 sets forth the appropriate test for evaluating whether an employee is acting within the scope of employment."). In doing so, the Court should instruct the jury that it is *the alleged tort*—an assault— not Turay's "legitimate conduct and services . . . as a driver," Dkt. 5135 at 23, that must have been motivated in part to serve Uber's interests. In finding a fact question on the motivation requirement because the employee's harassment may have had a "mixed motive" in "fondling the file clerks and offering advancement for sex," *id.* at 1283, *Schallock* made clear that it is the *tortious act*–the "fondling" and "offer[s]"–that must be at least in part intended to serve the employer's interests. If the *Schallock* court had meant to suggest that only the employee's "legitimate conduct" as a manager was relevant to the motive requirement, it would not have stated that the factor "seemingly favor[s] a finding that [the employee's] actions were not in the scope and course of employment." *Id.*

2. With respect to the effect of Uber's Terms of Service, at the close of today's morning session, the Court expressed the view that this case is distinct from *Fadely* due to: (1) the fact that the agreement foreclosing apparent agency in *Fadely* stated that doctors working at the defendant hospital performed their own billing; and (2) the length of Uber's Terms of Service. Neither consideration distinguishes *Fadely* on this record.

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S TRIAL BRIEF REGARDING TERMS OF SERVICE

5    CASE NO. 3:23-MD-03084-CRB / 25-cv-4276-PHX-CRB

1    *Fadely* held that plaintiff's apparent agency claim failed as a matter of law because a consent

2    form she signed upon admission to the defendant hospital stated that the hospital did not control doctors,

3    who "practice independently," "maintain sole responsibility for their medical judgment and

4    professionalism," and "bill and collect for their services independently from the hospital." 515 P.3d at

5    706. Because, through the contract, the hospital "did not represent [the doctors] as its employees or

6    agents to Plaintiff," and "instead inform[ed] her of the independent relationship between them," the

7    court held that "Plaintiff cannot show either the representation or justifiable reliance needed for an

8    apparent agency." *Id.* That outcome rested on the plaintiff's contractual agreement alone, *id.*—the court

9    did not even have to consider any evidence purportedly supporting the impression of agency to reject the

10   plaintiff's apparent agency claim as a matter of law.

11       Like the agreement in *Fadely*, Uber's Terms of Service repeatedly highlight the independence of

12   drivers who use the platform, instructing Plaintiff that the Uber app allowed her to "find, request, or

13   receive . . . Third-Party Services from third-party service providers," such as "independent drivers," who

14   "ARE NOT ACTUAL AGENTS, APPARENT AGENTS, OSTENSIBLE AGENTS, OR EMPLOYEES

15   OF UBER IN ANY WAY"; that Uber itself "DOES NOT TRANSPORT" Plaintiff; that "[i]t is up to [the

16   driver] to decide whether or not to offer Third-Party Services to [Plaintiff] at all"; and that "UBER

17   DOES NOT CONTROL, MANAGE, OR DIRECT ANY THIRD-PARTY PROVIDERS." P-

18   04531.00013, 00021.

19       *Fadely* did not turn on the way the agreement allocated responsibility for billing–the *Fadely*

20   court held the contract precluded apparent agency "[b]ecause [the defendant] did not represent [the

21   doctors] as its employees or agents to Plaintiff, instead informing her of the independent relationship

22   between them." 515 P.3d at 706. For the reasons just explained, the same is true for Uber's Terms of

23   Service. In any event, even if the provision regarding billing had been essential to *Fadely*'s holding–and

24   it was not–Uber's Terms of Service with respect to billing similarly highlight drivers' independence:

25   "*Charges you incur will be owed directly to Third-Party Providers*, and Uber will collect payment of

26   those charges from you, on the Third-Party Provider's behalf as their limited payment collection agent,

27   *and payment of the Charges shall be considered the same as payment made directly by you to the Third-*

28

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S TRIAL BRIEF
REGARDING TERMS OF SERVICE

1    *Party Provider*." P-04531.00018-00019 (emphases added). Like the agreement in *Fadely*, that term

2    makes clear that payment for services is owed by the user to the driver—not Uber—and that, in

3    collecting that payment, Uber acts as the independent driver's agent. That billing arrangement does not

4    distinguish *Fadely* but only underscores the "plain line" between independent drivers and Uber. *Fadely*,

5    515 P.3d at 706.

6          Nor does the length of Uber's Terms of Service distinguish them from the contract in

7    *Fadely*. *Fadely* turned on the unambiguous meaning of the contract, not its length.  *See id.* at 706-07

8    (rejecting plaintiff's argument that contract ambiguous, because it repeatedly stated that doctors were

9    "independent"). The plaintiff in *Fadely* asserted that the consent form at issue was "ambiguous and

10   unenforceable because the contract never include[d] the words 'agent, agency or anything directly

11   dealing with that unique relationship,' and never name[d] the individual physicians who would care for

12   her." *Id.* at 706-07.  In rejecting that argument, the Court of Appeals held that the meaning and effect of

13   the contract "present[ed] a question of law," citing Arizona precedent holding that "[w]hether a contract

14   is ambiguous is a question of law." *Id.* at 706 (citing *Hartford v. Indus. Comm'n of Ariz.*, 870 P.2d 1202,

15   1207 (Ariz. Ct. App. 1994)). In other words, *Fadely* turned on the *legal effect* of the plaintiff's

16   contractual agreement—regardless whether she read the agreement or understood it, the plaintiff's

17   agreement to an enforceable contract plainly disclaiming an agency relationship precluded her apparent

18   agency claim. For good reason: in Arizona, "[t]he general rule holds that one who signs a written

19   document *is bound to know and assent to its provisions* in the absence of fraud, misrepresentation, or

20   other wrongful acts by the other party." *Teran v. Citicorp Person-to-Person Fin. Ctr.*, 706 P.2d 382, 385

21   (Ariz. Ct. App. 1985) (emphasis added).

22          Like the agreement in *Fadely*, Uber's Terms of Service provisions disclaiming an agency

23   relationship are plainly enforceable under Arizona law.  The Court has already held that,

24   notwithstanding their length, Uber's Terms of Service as a whole are enforceable. *See* PTO 29 at 4-5,

25   12-13. And there is no compelling basis to hold otherwise as to their provisions addressing agency,

26   which correctly describe drivers' Arizona-law status as independent contractors. *See* A.R.S. 23-1603(A).

27   Under *Fadely*, Plaintiff's binding agreement to those terms is dispositive—having agreed to a contract

28

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S TRIAL BRIEF
REGARDING TERMS OF SERVICE

1    correctly stating that Turay is *not* Uber's agent, she is "bound to know and assent" to that reality, and

2    cannot now assert that she incorrectly believed otherwise. *See Teran*, 706 P.2d at 385; *see* Ex. A,

3    *Crawley v. Uber Techs., Inc.,* No. BER-L-5888-20, at 20–21 (N.J. Super. Ct. Sept. 22, 2025) ("While

4    Uber Defendants' conduct may have misled Plaintiffs into believing that a relationship of authority

5    existed, Uber's Terms of Use, which Plaintiff agreed to, unequivocally states that no such agency

6    relationship exists between Uber Defendants and its drivers. As such, the Court finds that Plaintiff

7    cannot sustain his argument regarding a purported claim of apparent authority.").

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  January 28, 2026

Respectfully submitted,

*/s/ Laura Vartain Horn*

Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625
laura.vartain@kirkland.com

Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
401 W. 4th Street
Austin, TX  78701
Telephone: (512) 678-9100
kim.bueno@kirkland.com

Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jessica.davidson@kirkland.com

Theane Evangelis (Admitted *Pro Hac Vice*)
Daniel Nowicki (Admitted *Pro Hac Vice*)
**GIBSON DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
TEvangelis@gibsondunn.com
DNowicki@gibsondunn.com

Sabrina H. Strong (SBN: 200292)
Jonathan Schneller (SBN: 291288)
**O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
sstrong@omm.com
jschneller@omm.com

*Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,
RASIER, LLC, and RASIER-CA, LLC

DEFENDANTS UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC'S TRIAL BRIEF
REGARDING TERMS OF SERVICE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2026, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will automatically send Notification of the filing to all counsel of record.

*/s/ Laura Vartain Horn* _____
Laura Vartain Horn