# Exhibit A

|  |  |
|---|---|
| MAXIMILLI V. DEFFAA,<br><br>                    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., RAISER, LLC, HAMZA E. ABUHASSOUNA, JOHN DOES 1-10, JANE DOES 1-10 and JOHN DOE CORP. 1-10, fictitious names,<br><br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br>DOCKET NO.: BER-L-3607-20<br><br>CIVIL ACTION<br><br>CONSOLIDATED ACTION |
| BRANDON A. CRAWLEY,<br><br>                    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., RAISER, LLC, HAMZA E. ABUHASSOUNA, JOHN DOES 1-10, JANE DOES 1-10 and XYZ CORPORATIONS 1-10,<br><br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br>DOCKET NO.: BER-L-5888-20<br><br>CIVIL ACTION<br><br>**ORDER** |

**FILED**
SEP 22 2025
GREGG A. PADOVANO, J.S.C.

**THIS MATTER** having been brought before the court on motion filed by Fagre Drinker Biddle & Reath LLP, attorneys for defendants Uber Technologies, Inc. and Raiser, LLC (collectively "Uber Defendants"), seeking an order granting summary judgment and barring expert reports and testimony of plaintiff Brandon A. Crawley's ("Plaintiff") experts, Chis Lack and Kristin Kucsma; and a cross-motion having been brought before the court on motion by Vacrcadipane & Pinnisi, P.C., attorneys for Plaintiff, seeking an order granting summary judgment as to the issue of liability; and opposition having been filed to each motion; and the court having reviewed all papers filed in connection with each motion and having heard oral argument of counsel; and for the reasons set forth in the attached rider; and for other good cause having been shown

**IT IS ON THIS 22nd DAY OF SEPTEMBER 2025**

**ORDERED** that the Uber Defendant's the motion seeking to bar the testimony and reports of Plaintiff's experts, Chris Lack and Kristin Kucsma, at the time of trial, is **DENIED;** and it is further

**ORDERED** that Uber Defendants' motion for summary judgment is **GRANTED in part**. Plaintiff's claim for negligent hiring asserted against Uber Defendants is dismissed.   The remaining portions of the Uber Defendants' motion are **DENIED**, as identified herein; and it is further

**ORDERED** that Plaintiff's cross-motion is **DENIED** in its entirety; and it is further

**ORDERED** that a copy of this order and attached rider shall be served upon all counsel of record by eCourts.

_____
GREGG A. PADOVANO, J.S.C.

# MAXIMILLI V. DEFFAA
## v.
# UBER TECHNOLOGIES, INC., RAISER, LLC, and HAMZA E. ABUHASSOUNA

# BRANDON A. CRAWLEY
## v.
# UBER TECHNOLOGIES, INC., RAISER LLC, and HAMZA E. ABUHASSOUNA

## DOCKET NO: BER-L-3607-20 and BER-L-5888-20

## RIDER TO ORDER DATED SEPTEMBER 22, 2025[1]

This matter comes before the court upon a motion filed on behalf of defendants Uber Technologies, LLC and Raiser, LLC (collectively "Uber Defendants") seeking summary judgment and barring plaintiff Brandon A. Crawley's ("Plaintiff") expert's, Chris Lack and Kristin Kucsma, from testifying at the time of trial. Opposition to the motion to bar was filed by Plaintiff. A cross-motion was also filed on behalf of Plaintiff seeking summary judgment on the issue of liability. Opposition to the cross-motion was submitted by defendant Hamza E. Abuhassouna ("Abuhassouna"). The court reviewed all papers submitted in connection with the motion and oral argument was had.

---

[1] Not for publication without the approval of committee on opinions (See R. 1:36-1).

The record shows that Plaintiff filed this personal injury lawsuit to recover damages for injuries he alleges to have sustained in a single-vehicle incident that occurred in Glen Rock, New Jersey. Uber Defendants' Brief at 1. At the time of the accident, Plaintiff and several friends were passengers in a motor vehicle owned and operated by Abuhassouna, which allegedly drifted off the roadway and collided with a utility pole. Ibid. Plaintiff alleges that he suffered head injuries that led to the premature end of his professional hockey career. Plaintiff's Opposition Brief at 1.

**Uber Defendants' Motion for Summary Judgment**

Uber Defendants argue that Plaintiff has failed to establish a prima facie claim that Uber Defendants are either vicariously or directly liable for his injuries. Uber Defendants' Brief at 4. Uber Defendants assert that they did not retain or exercise the right to control Abuhassouna and, therefore, cannot be vicariously liable over his actions as an independent contractor. Id. at 5. Uber Defendants argue that under the express language of the agreement between Uber Defendants and Abuhassouna, Uber Defendants did not have an employment or agency relationship with him. Id. at 8. Uber Defendants further argue that the sworn testimony of Plaintiff's paid transportation expert, Mr. Gary Dersarkissian, supports the argument that Abuhassouna was an independent contractor because of the similarities between Uber's drivers and the independent operators hired by Mr. Dersarkissian's company. Id. at 11-13.

**Plaintiff's Cross-Motion for Summary Judgment**

Plaintiff argues that Uber Defendants misrepresented the status of New Jersey law, asserting that under New Jersey law and that of many other jurisdictions, Uber Defendants are not entitled to summary judgment on the eleven-factor test that governs whether Uber Defendants' drivers are employees rather than independent contractors. Plaintiff's Cross-Motion at 4. Plaintiff argues that the unpublished appellate division case of Fontana v. Executive Cars is instructive in

the present matter, with the appellate division refusing to disturb the factual determinations of the trial court that found a master-servant relationship existed and the company was thus vicariously liable for injuries. Id. at 7-9, citing A-4520-18T2, 2020 N.J. Super. Unpub. LEXIS 1406 at *11 (N.J. Super. Ct. App. Div.). Plaintiff asserts that Uber Defendants also mislead the court regarding New York law, asserting all three New York Appellate Division decisions addressing similar issues have concluded that Uber was not entitled to summary judgment. Id. at 10, citing Uy v. A. Hussein, 131 N.Y.S.3d 70 (App. Div. 2020); Porcasi v. Oji, 198 N.Y.S.3d 371, 373-74 (App. Div. 2023); Soares v. Rahmatulloev, 227 N.Y.S.3d 276 (App. Div. 2025). Plaintiff further argues that other jurisdictions that follow a similar legal framework as New Jersey have found that whether Uber Defendants' drivers were independent contractors or employees is a question of fact. Id. at 15-20, citing Search v. Uber Techs., Inc., 128 F. Supp. 3d 222 (D.D.C. 2015); Razak v. Uber Techs., Inc., 951 F.3d 137 (3d. Cir. 2020), cert. den'd, Uber Techs., Inc. v. Razak, 141 S. Ct. 2629 (2021); Cotter v. Lyft, Inc., 60 F. Supp. 3d 1067 (N.D. Cal. 2015); Lowman v. Unemployment Comp. Bd. of Review, 235 A3d 278 (Pa. 2020). Furthermore, Plaintiff argues that when applying the eleven-factor, fact-sensitive analysis to the facts, there are questions of fact regarding nearly all of the eleven factors. Plaintiff's Cross-Motion at 24-39.

Plaintiff argues that questions of fact exist regarding Uber Defendants' vicarious liability under the Majestic Realty Assoc., Inc. v. Toti Contracting Co. exceptions. Id. at 39, citing 30 N.J. 425 (1959). Plaintiff asserts that there is evidence that Uber Defendants did reserve control over the equipment used, the manner of doing the work, and the direction of the employees. Id. at 40-43. Plaintiff argues that there are questions of fact regarding Uber Defendants' vicarious liability under Majestic because it retained a driver with a history of careless driving and causing motor vehicle accidents. Id. at 44-48. Plaintiff further asserts that Uber Defendants fail to eliminate all

questions of fact that it is vicariously liable for Abuhassouna's negligence based upon apparent agency. Id. at 50. Plaintiff argues that the ride was booked through the Uber app and Uber acted as a dispatcher, with Abuhassouna identifying himself as an Uber driver. Id. at 52. Plaintiff asserts that that are questions of fact as to whether Uber's negligence was a proximate cause of the accident, as the Uber App gave Abuhassouna incorrect directions and Uber had a duty to provide its drivers with accurate directions. Id. at 52-53.

Abuhassouna argues in opposition that the cross-motion filed by Plaintiff is not a proper cross-motion. Abuhassouna's Opposition at 1. Abuhassouna asserts that the issue of whether he acted reasonably in attempting to control his vehicle when confronted with a detour must be left to a jury, as the fact finder is the one who weighs the evidence. Ibid. Abuhassouna asserts that Plaintiff's cross-motion raises a question of whether all the Uber Defendants' statements about the accident are truthful, and therefore these questions should be left for a jury to decide. Id. at 2.

In reply, Uber Defendants argues that Plaintiff's reliance on control factors that are mandated by New Jersey's Transportation Network Company statute cannot be used as compliance with a law is not indicative of control. Uber Defendants' Reply Brief at 2-8. Uber Defendants assert that the community guidelines are not mandatory rules but guidelines for both riders and drivers. Id. at 8-9. Uber Defendants argue that the TSA governs Abuhassouna's relationship with Uber, as the agreement between Uber Defendants and Abuhassouna clearly states there is no employment agreement between the parties as Abuhassouna was free to work and choose which rides to pick as he pleased. Id. at 10-12.

Uber Defendants further argue that Plaintiff misstates New Jersey case law, and the case law from other jurisdictions cited by Plaintiff is inapplicable to the case at hand. Id. at 14-19. Uber Defendants argue that New Jersey's Department of Labor and Workforce Audit has no bearing on

this matter as it was not an analysis of agency and tort liability, rather it concerned workers' compensation benefits that have been determined to have no bearing on vicarious liability analysis in tort litigation. Id. at 19-22. Uber Defendants further argue that Plaintiff's reliance on the Majestic exceptions to extend vicarious liability for an independent contractor fails as a matter of law because Uber does not retain the necessary control to impute liability. Id. at 22-25. Uber Defendants further assert that Plaintiff did not plead vicarious liability based on apparent authority and cannot demonstrate apparent authority because there is no evidence that Plaintiff was misled. Id. at 25-26.

**Uber Defendant's Motion to Bar Expert Testimony**

Uber Defendants argue that there is no foundation for Plaintiff's expert Chris Lack's speculative risk analysis report. Uber Defendants' Brief at 10. Uber Defendants argue that Mr. Lack's conclusions are based on speculation about Plaintiff's future earnings had his career continued in the same trajectory. Id. at 12. Uber Defendants assert that nothing in the record establishes that Plaintiff would have signed contracts earning him $33.6 million to $37 million had he not sustained injuries or that Plaintiff would play in the National Hockey League through 2028. Id. at 10-14. Uber Defendants further argue that Kristin Kucsma does not have a factual foundation, as her report is devoid of any independent factual findings. Ibid. Uber Defendants assert that if the court bars Mr. Lack's opinion, then it must bar Ms. Kucsma because her report solely adopts Mr. Lack's findings. Id. at 14. Uber Defendants argue that Ms. Kucsma's report should also be barred because she improperly relief upon data from the U.S. Department of Labor that does not analyze nor evaluate individuals in fixed term contracts when determining Plaintiff's past and future wage lost. Id. at 15.

Plaintiff argues in opposition that Mr. Lack's opinions are supported by overwhelming factual evidence, data, and statistics and clearly explain the generally accepted methodology used to project Plaintiff's future. Plaintiff's Opposition Brief at 22. Plaintiff asserts that Mr. Lack clearly explained how and why he chose the comparable players for the panel, explaining that they exhibited comparable attributes and performances to Plaintiff. Ibid. Plaintiff further argues the cases cited by Uber Defendants involved barred expert opinions because they offered nothing more than a conclusion unsupported by facts in the record and/or opinions that failed to explain and apply a generally accepted methodology. Id. at 26-29. Plaintiff asserts that Ms. Kucsma's report is not a net opinion, rather it is a legally mandated counterpart to Mr. Lack's projections to demonstrate the net, after-taxes future earnings. Id. at 29-30. Plaintiff argues that if this court does consider entering an order barring Plaintiff's experts, a hearing pursuant to N.J.R.E. 104 is respectfully requested. Id. at 30.

Uber Defendants argue in reply that Mr. Lack's opinion is rife with speculation and devoid of critical context regarding the Rangers roster, Plaintiff's pre-existing injuries, Plaintiff's competition within the minor leagues, and the composition of incoming drafts in 2018. Uber Defendants' Reply at 2-3. Uber Defendants assert that Mr. Lack's report fails to account for obvious and material differences in player characteristics and information. Id. at 4. Uber Defendants argue that Mr. Lack does not follow a methodology for connecting the dots and relies on speculation for his conclusions. Id. at 5. Uber Defendants highlight their position that Mr. Lack did not follow a particular methodology by asserting that his reliance on favorable scouting reports while allegedly ignoring negative reports proves that there was no reasoning to his findings. Id. at 6. Uber Defendants further argue that if Mr. Lack's net opinion is barred, Ms. Kucsma's calculations must also be barred because her report relies on Mr. Lack's findings. Id. at 9.

**Analysis and Findings of the Court**

**Uber Defendant's Motion to Bar Expert Testimony**

The court here recognizes that New Jersey's standard for summary judgment, set forth in

Brill v. Guardian Life Ins. Co. Am., 142 N.J. 520, 540 (1995), entitles a movant to summary

judgment if the adverse party, having all facts and inferences viewed most favorably towards it,

has not demonstrated the existence of a dispute whose resolution in its favor will entitle him to

judgment. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers

to interrogatories and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact challenged[.]" R. 4:46-2(e). If the non-moving party "points only to

disputed issues of fact that are of an insubstantial nature, the proper disposition is summary

judgment." Brill, 142 N.J. at 529. "Bare conclusions in the pleadings, without factual support in

tendered affidavits, will not defeat a meritorious application for summary judgment." U.S. Pipe &

Foundry Co. v. Amer. Arbitration Association, 67 N.J. Super. 384, 399-400 (App. Div. 1961)

(citing Gherardi v. Trenton Board of Education, 53 N.J. Super. 349, 358 (App. Div. 1958)). The

Court in Brill encouraged trial courts not to hesitate in granting summary judgment when the

appropriate circumstances are presented, such that the "evidence is so one-sided that one party

must prevail as a matter of law. Brill, 142 N.J. at 540.

The Brill Court encourages courts to grant summary judgment, stressing the importance of

not sending "worthless" cases to a jury. Id. at 541. In deciding whether there is a genuine issue of

fact for trial, the motion judge should consider whether the competent evidence submitted on the

motion, viewed in the light most favorable to the non-moving party, is sufficient to allow a rational

factfinder to resolve the fact issue in favor of the non-moving party. Brill, 142 N.J. at 540; R. 4:46-

2(e). The motion judge should therefore weigh the evidence for its sufficiency, and where the

evidence is so one-sided that one party must prevail as a matter of law, the court should not hesitate to grant summary judgment. Id. at 540. Therefore, the opponent of a summary judgment motion must show controverting facts, not merely bare assertions, representations, or allegations in pleadings without affidavit or other evidentiary support to establish the existence of a genuine issue of material fact. The failure to discharge this duty entitles the movant to summary judgment. Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 75 (1954). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. "[W]hen the evidence is so one-sided that one party must prevail as a matter of law, the trial court should not hesitate to grant summary judgment." Id. (internal quotation marks and citation omitted).

With regard to Uber Defendants' motion seeking to bar Mr. Lack and Ms. Kucsma's expert reports and trial testimonies, the court recognizes that New Jersey Rule of Evidence 702 and 703 requires an expert's opinion to be based on facts, data, or another expert's opinion, either perceived by or made known to the expert, at or before trial. Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002). The New Jersey Supreme Court has determined that "[t]he 'net opinion' rule renders inadmissible any opinion consisting of bare conclusions that are unsupported by factual evidence." Buckelew v. Grossbard, 87 N.J. 512, 524 (1981). An expert must "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 411 (2014) (quoting Pomerantz, 207 N.J. at 372 (2011)). A trial court "may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified." Pomerantz, 207 N.J. at 373. "The net opinion rule is not a standard of perfection. The rule does not mandate that an expert

organize or support an opinion in a particular manner that opposing counsel deems preferable."
Townsend, 221 N.J. at 53. "The expert's failure "to give weight to factor thought important by an adverse party does not reduce his testimony to

an inadmissible net opinion if he otherwise offers sufficient reasons which logically support his opinion." Id. at 54, citing Rosenberg, 352 N.J. Super. at 402.

"The net opinion rule, however, mandates that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable. An expert's conclusion 'is excluded if it is based merely on unfounded speculation and unquantified possibilities.'" Townsend, 221 N.J. 36 at 53, citing Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992); Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997). "A party's burden of proof on an element of claim may not be satisfied by an expert opinion that is unsupported by the factual record or by an expert's speculation that contradicts the record." Townsend, 221 N.J. 36 at 55. "[E]xpert opinions are inadmissible if they constitute 'net opinions,' that is, opinions that constitute 'bare conclusions, unsupported by factual evidence.'" Funtown Pier Amusements, Inc. v. Biscayne Ice Cream & Asundries, Inc., 477 N.J. Super. 499, 516 (App. Div. 2024), certif. denied, 257 N.J. 408 (2024) (quoting Buckelew v. Grossbard, 87 N.J. 512, 524 (1981)). The expert must be able to identify an objective, generally accepted standard of practice that would allow the expert's opinion to be relied upon. See Koruba v. Am. Honda Motor Co., 396 N.J. Super. 517, 526 (App. Div. 2007). Without this basic requirement, "[a]n opinion lacking in foundation is worthless." State v. One Marlin Rifle, 319 N.J. Super. 359, 370 (App. Div. 1999). So long as experts "otherwise offer[] sufficient reasons which logically support [their] opinion[s]," such omissions could be explored during cross-examination at trial. Townsend, 221 N.J. at 54-55.

The court finds that Mr. Lack and Ms. Kucsma's expert reports and opinions are adequately supported by an appropriate factual foundation and they should thus not be barred from testifying at trial. The court recognizes the issues raised by Uber Defendants regarding Dr. Lack's methodology, and in turn Ms. Kucsma's calculations, however, counsel will be afforded the opportunity to cross-examine Mr. Lack and Ms. Kucsma during trial. Furthermore, the court finds it appropriate that Mr. Lack relied on quantitative and qualitative data gathered from (1) key player attributes; (2) performance; (3) statistics; and (4) key earnings. While Uber Defendants maintain that Mr. Lack and Ms. Kucsma's reports are rife with speculation, this court finds both experts' calculations and methodology to have an appropriate foundation that was thoroughly explained throughout each of their reports. Accordingly, Uber Defendants' motion to bar Plaintiff's experts, Mr. Lack and Ms. Kucsma, from testifying at trial is hereby **DENIED**.

**Plaintiff's Cross-Motion for Summary Judgment as to Abuhassouna's Negligence**

To establish negligence, a plaintiff must establish: 1) that the defendant owed a duty of care; 2) the defendant breached that duty; 3) that the breach was a proximate cause of plaintiff's injuries; and 4) that the plaintiff suffered actual compensable injuries as a result. Townsend v. Pierre, 221 N.J. 36, 51 (2015). "The driver of an automobile is required to use reasonable care in the control, management, and operation of his/her machine." N.J. Model Jury Charge (Civil) 5.30A General Duty Owing (1999). "It is the primary responsibility of the driver to obey the law and to avoid distractions." Kubert v. Best, 432 N.J. Super. 495, 516 (App. Div. 2013).

Here, Plaintiff argues that Abuhassouna failed to exercise reasonable care in the control, management, and operation of his vehicle, and resultingly caused the accident in which Plaintiff sustained his injuries. The record presented reveals that Abuhassouna admitted that while

operating his vehicle, he was distracted by his Uber App and drove his vehicle off the road and into a telephone pole. See Certification of Tracey Salmon-Smith, Esq., Ex. I, Ex. D, Ex. G at 16-17. Defendant Abuhassouna asserts that the issue of liability must be addressed by the trier of fact. Where there are claims of negligence, as here, the New Jersey Supreme Court has reasoned that "[a]lthough the existence of a duty is a question of law, whether the duty was breached is a question of fact." Jerkins v. Anderson, 191 N.J. 285, 305 (2007) (citing Anderson v. Sammy Redd & Assocs., 278 N.J. Super. 50, 56 (App. Div. 1994), certif. denied, 139 N.J. 441, 655 (1995)). "There can be no doubt that the question of negligence in each case may properly be left to the jury with the general instruction . . . of reasonable care under existing circumstances. Questions of proper speed and control of a vehicle are pre-eminently questions of fact for the jury to determine." Universal Underwriters Grp. v. Heibel, 386 N.J. Super. 307, 321 (App. Div. 2006) (quoting Stackenwalt v. Washburn, 42 N.J. 15, 24 (1964)). The court here recognizes that it has long been held that "it is ordinarily a plaintiff's burden to prove negligence, and that it is never presumed." Khan v. Singh, 200 N.J. 82, 91 (2009).   Based upon the facts and circumstances presented in the record, when viewed in the light most favorable to the non-moving party, the court finds that the issue of negligence must be resolved completely by the trier of fact and that summary judgment as to this issue is not appropriate. The portion of Plaintiff's cross-motion seeking summary judgment as to defendant Abuhassouna's negligence is **DENIED**.

**Uber Defendants' Summary Judgement Motion and Plaintiff's Cross-Motion for Summary Judgment**

**Respondeat Superior**

An employer can be found liable for the negligence of an employee under the doctrine of respondeat superior if the employee was acting within the scope of their employment during the supposed incident. Carter v. Reynolds, 175 N.J. 402, 408-09 (2003); see Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 619 (1993). A plaintiff must prove: "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." Id. at 409. Typically, if an independent contractor commits negligent acts while fulfilling the task of their contractual obligation, his employer is not liable. Bahrle v. Exxon Corp., 145 N.J. 144, 156 (1996). As it is usually a factual issue and rarely decided as a matter of law, ordinarily the jury decides whether an employment relationship exists. Kelly v. Geriatric & Med. Servs., Inc. 287 N.J. Super. 567, 577 (App. Div. 1996); see Bennett v. T. & F. Distrib. Co., 117 N.J. Super. 439, 441 (App. Div. 1971). A judge may, however, grant summary judgment if there are no contested facts or inferences that can be derived from undisputed facts about the employment relationship. Marion v. Pub. Serv. Electric & Gas Co., 72 N.J. Super. 146, 157-58 (App. Div. 1962). A trial judge should only rule on a matter of agency when the facts and inferences are so one-sided that a rational jury could not come to an alternative conclusion. Mangual v. Berezinsky, 428 N.J. Super. 299, 308 (App. Div. 2012).

A master-servant relationship lacks an exact definition, rather it must be ascertained by considering the totality of the facts surrounding the nature of the relationship. Gilborges v. Wallace, 153 N.J. Super 121, 132 (App. Div. 1977). In determining whether agency exists, New Jersey applies the standard set forth in section 220 of the Restatement (Second) of Agency. Section 220 provides:

1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

    a.  the extent of control which, by the agreement, the master may exercise over the details of the work;

    b.  whether or not the one employed is engaged in a distinct occupation or business;

    c.  the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

    d.  the skill required in the particular occupation;

    e.  whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

    f.  the length of time for which the person is employed;

    g.  the method of payment, whether by the time or by the job;

    h.  whether or not the work is a part of the regular business of the employer;

    i.  whether or not the parties believe they are creating the relation of master and servant; and

    j.  whether the principal is or is not in business.

[Restatement (Second) of Agency § 220 (1958); see NJ CV JI 5.10H]

New Jersey has further incorporated an all-inclusive factor which allows courts to consider

"such other factors as may be reasonably considered in determining whether the entity for which

the services are being performed controls, or has the right to control, the entity preforming the

services." Model Jury Charge (Civil), 5.10H (A), "Agency: Employer/Employee" (2011); Carter, 175 N.J. at 410. Moreover, the essence of vicarious liability based on respondeat superior hinges on the employer's control of the employee. Galvao v. G.R. Robert Constr. Co., 179 N.J. 462, 467 (2004). Control is established by an employer's ability to direct both the outcome of the work and the manner in which the work is performed. Wright v. State, 169 N.J. 422, 436-37 (2001).

The court recognizes that the issue of whether Uber drivers should be classified as employees or independent contractors is far from settled in the State of New Jersey. No published New Jersey case has directly addressed the issue of whether Uber drivers are employees or independent contractors and the unpublished New Jersey court cases cited by Plaintiff and Uber Defendants are at odds with each other. Because the court recognizes the lack of binding authority on this issue, as well as the highly fact intensive analysis that is required in resolving this issue, the court applies each of the factors identified above in a totality of the facts analysis for guidance in determining whether a master-servant relationship existed here. The court recognizes that the issue of the existence of an employment relationship should be left to the jury unless the evidence and the inferences drawn show that the issue is so one-sided that no reasonable jury could come to a different conclusion. See Kelly, 287 N.J. Super. at 577; Mangual, 428 N.J. Super. at 308. The court finds that this is not one of those cases in which no reasonable jury could find that no employment relationship exists between Abuhassouna and Uber Defendants.

The court finds that there exist genuine issues of material fact that warrant the denial of both Uber Defendants' summary judgment motion and Plaintiff's cross-motion for summary judgment. The court finds that it is undisputed that Abuhassouna was not engaged in a distinct occupation or business; operating an automobile does not require one to be highly skilled; and that Uber is in business. All of these factors militate in favor of finding that Abuhassouna was an

employee of Uber at the time of the accident. The court also finds that it is undisputed that Abuhassouna decided the length of time for which he would perform services; Abuhassouna was paid by the job; and Abuhassouna and Uber did not subjectively believe that they were creating an employer-employee relationship. The court recognizes that all these factors militate in favor of finding that Abuhassouna was an independent contractor. The court finds, however, that there exist disputed issues of material fact as to the extent of control by which Uber may exercise over the details of the work; whether in the locality of this occupation, the work is usually done under the direction of the employer or by a specialist with no supervision; and whether or not the work is part of the regular business of Uber Defendants. In assessing the undisputed facts relating to whether an employment relationship existed and appreciating the existence of disputed material facts, the court finds that a jury is best suited to determine whether an employment relationship existed between the parties.

The court also recognizes that the determinative factor for establishing an employment relationship is whether the employer exercised sufficient control over the individual in question. Galvao, 179 N.J. at 468. As noted above, the court determines that a question of fact pertains to whether Uber Defendants exercised such control over the methods or manner in which Abuhassouna performed his transportation services so as to give rise to an employment relationship. Abuhassouna controlled when, where, and for how long he would perform his transportation services. Abuhassouna reserved control over certain aspects of equipment including his vehicle and the device upon which he accessed and utilized the Uber App, while Uber Defendants retained complete control over the Application itself. Uber Defendants controlled only certain aspects that relate to Abuhassouna's day-to-day operations including the furnishing of specific directions via the Uber App and Abuhassouna's inability to delegate work to any other

individual. The court finds that the question of whether Uber Defendants exerted sufficient control over the manner or method of doing work as to establish an employment relationship is best left for a trier of fact. In viewing the evidence in a light most favorable to the non-moving parties, the court finds that neither Plaintiff nor Uber Defendants have produced evidence demonstrating that the issue of whether an employment relationship existed between Uber Defendants and Abuhassouna is so one-sided that no reasonable jury could come to a different conclusion.

**Majestic Exceptions**

Even if the court were to conclude that Abuhassouna was an independent contractor, there still exists a separate basis upon which Uber Defendants may be held vicariously liable for the conduct of Abuhassouna. Where an individual engages an independent contractor to do work that is not a nuisance, the individual is not liable for any negligent acts that may arise by the independent contractor during the course of their work. Majestic Realty Assocs., Inc. v. Toti Contracting Co., 30 N.J. 425, 429-31 (1959). Exceptions to this protection from liability include: "(a) where the landowner retains control of the manner and means of the doing of the work which is the subject of the contract; (b) where he engages an incompetent contractor; or (c) where, as noted in the statement of the general rule, the activity contracted for constitutes a nuisance per se." Id. at 431. Application of the principles of respondeat superior are not warranted where the contractee's supervisory interest relates only to the result to be accomplished, not to the means of accomplishing it. Majestic, 30 N.J. at 431. As to the hiring of an incompetent contractor, "a plaintiff must show that the contractor was, in fact, incompetent or unskilled to perform the job for which he/she was hired, that the harm resulted arose out of the incompetence, and that the principal knew or should have known of the incompetence." Puckrein v. ATI Transp., Inc., 186 N.J. 563, 576 (2006).

Here, the court finds that questions of fact exist regarding Uber Defendants' vicarious liability under the first Majestic exception. As discussed supra, the court finds that there exists a genuine issue of material fact regarding whether Uber Defendants sufficiently controlled the means and manner of Abuhassouna's performance of his services. As to the second Majestic factor, the court finds that Plaintiff has failed to demonstrate that Abuhassouna was incompetent or unskilled to perform the job of providing passenger transportation services and Uber Defendants knew or should have known of Abuhassouna's incompetence or his particular unfitness. As previously discussed, the court determines that providing passenger transportation services does not require one to be highly skilled. A review of Abuhassouna's driving history does not reveal a magnitude of violations so egregious as to warrant the court to conclude that Abuhassouna was incompetent in providing transportation services. Abuhassouna's driving history does not reveal a propensity or pattern of dangerous driving such that Uber Defendants should have realized that he was an incompetent driver. The facts presented reveal that Abuhassouna was insured and licensed in the State of New Jersey, Uber Defendants conducted the requisite background check, and Uber Defendants exercised reasonable care to employ a competent driver. As such, the court finds that Plaintiff has failed to sufficiently demonstrate that Uber Defendants engaged an incompetent contractor when contracting with Abuhassouna.

**Apparent Authority**

A principal is generally immune from liability of the negligent acts of an independent contractor unless apparent authority exists, which "imposes liability on the principal 'not as the result of the reality of a contractual relationship but rather because of the actions of a principal or an employer is somehow misleading the public into believing that the relationship or authority exists.'" Estate of Cordero, ex rel Cordero v. Christ Hosp., 403 N.J. Super. 306, 312 (App. Div.

2008); see Lampley v. Davis Mach. Corp., 219 N.J. Super. 540, 548 (App. Div. 1987). A putative

agent must establish that

> (1) the appearance of authority has been created by the conduct of
> the alleged principal and it cannot be established alone and solely
> by the proof of [conduct by] the supposed agent; (2) a third party
> has relied on the agent's apparent authority to act for a principal;
> and (3) the reliance was reasonable under the circumstances.
> [AMB Prop., LP v. Penn America Ins. Co, 418 N.J. Super. 441, 454
> (App. Div. 2011)].

Apparent authority "imposes liability on the principal not as a result of an actual contractual

relationship, but because the principal's actions have misled a third-party into believing that a

relationship of authority in fact exists." Mercer v. Weyerhaeuser Co., 324 N.J. Super. 290, 317

(App. Div. 1999). "'A court must examine the totality of the circumstances to determine whether'

the facts support a finding of apparent authority. Ibid. (quoting Sears Mortg. Corp. v. Rose, 134

N.J. 326, 338 (1993)).

Regarding apparent authority[2], the court finds that Plaintiff has failed to present sufficient

evidence demonstrating that Uber Defendants somehow misled Plaintiff into believing that

Abuhassouna was an agent of Uber Defendants. Here, the facts presented reveal that Plaintiff

reserved the subject ride through the Uber App with Uber acting as dispatcher; Abuhassouna's

vehicle displayed Uber's logo, and he identified himself as being "from Uber"; and Uber was

responsible for collecting the fare from Plaintiff and apportioning it to Abuhassouna. On the other

hand, Uber Defendants have submitted evidence demonstrating that Plaintiff has specifically been

informed that Uber's drivers act as independent contractors and "drivers are not actual agents,

apparent agents, ostensible agents, or employees of Uber in any way" in its Terms of Use which

Plaintiff agreed to. See Certification of Tracey Salmon-Smith, Ex. Q, § 3. While Uber Defendants'

---

[2] The court notes that Plaintiff did not specifically plead vicarious liability based on apparent authority.

conduct may have misled Plaintiff into believing that a relationship of authority existed, Uber's Terms of Use, which Plaintiff agreed to, unequivocally states that no such agency relationship exists between Uber Defendants and its drivers. As such, the court finds that Plaintiff cannot sustain his argument regarding a purported claim of apparent authority.

As to Plaintiff's claim of negligent hiring asserted against Uber Defendants, the court finds that Plaintiff has failed to put forth sufficient evidence to support this claim. As discussed more extensively above, the court finds that Plaintiff has failed to demonstrate that Abuhassouna was incompetent or unskilled to perform the job of providing passenger transportation services. As such, the court finds that Plaintiff cannot sustain his claim of negligent hiring. Accordingly, summary judgment should be granted in favor of Uber Defendants as to Plaintiff's negligent hiring claim. The court recognizes that to prevail on a claim of negligent supervision, a plaintiff "must prove that 1) an employer knew or had reason to know that the failure to supervise or train an employee in a certain way would create a risk of harm and 2) that risk of harm materializes and causes plaintiff's damages. G.A.-H. v. K.G.G., 238 N.J. 401, 415 (2019). Negligent supervision is not a form of vicarious liability and is instead based on the direct fault of an employer. Schultz v. Roman Catholic Archdiocese, 95 N.J. 530 (1984). Here, the court finds that questions of fact remain preventing entry of summary judgment as to Plaintiff's claim of negligent supervision. Again, the court finds that it is a question of fact for the jury whether Abuhassouna was an employee of Uber Defendants. As such, the court finds that questions of fact exist as to whether Uber, as Abuhassouna's alleged employer, knew or had reason to know that the failure to supervise him would create a risk of harm that caused Plaintiff's damages. These questions prevent the court from entering summary judgment in favor of Uber Defendants as to Plaintiff's negligent supervision claim.

Accordingly, based on the foregoing, Uber Defendants' motion for summary judgment is **GRANTED in part**. The portion of Uber Defendants' motion seeking summary judgment as to Plaintiff's claims of vicarious liability is denied. The portion of Uber Defendants' motion seeking summary judgment as to Plaintiff's claim of negligent hiring is granted; Count Four of Plaintiff's complaint is dismissed with prejudice. The portion of Uber Defendants' motion seeking summary judgment as to Plaintiff's negligent supervision claim is denied.

Plaintiff's cross-motion is **DENIED**, in its entirety. As identified herein,  the portion of Plaintiff's cross-motion seeking summary judgment as to the claim of negligence asserted against defendant Abuhassouna is denied. The portion of Plaintiff's cross-motion seeking summary judgment as the claims of vicarious liability asserted against Uber Defendants is also denied.