1  [*Submitting counsel below*]

UNITED STATES DISTRICT COURT
OF NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFF'S TRIAL BRIEF RE: EXCLUDING EX. 4096 AS HEARSAY**<br><br>Judge: Honorable Charles R. Breyer<br>Ctrm.: D. Ariz., 501 |
| This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*,<br>N.D. Cal. No. 23-cv-06708<br>D. Ariz. No. 25-cv-4276 | |

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| JAYLYNN DEAN,<br><br>      Plaintiff,<br><br>    v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>      Defendants. | No. 25-cv-4276-PHX-CRB<br><br>Judge: Honorable Charles R. Breyer<br>Ctrm.: 501 |

**TRIAL BRIEF RE: EXCLUDING EX. 4096 AS HEARSAY**

Plaintiff moves to exclude Exhibit 4096 as inadmissible hearsay. Uber has indicated it intends to play Exhibit 4096 to the jury on Monday, February 2. Exhibit 4096 is a recording of a phone call between Mr. Turay and the police. The recording is almost entirely cumulative of the portions of Mr. Turay's deposition the jury has already seen, except for Mr. Turay's assertion that Ms. Dean accused him of rape to get money from Uber. Uber seeks to finish its case by playing an audio recording of the alleged rapist, Mr. Turay, commenting on his victim's veracity and motivation. Admitting such prejudicial hearsay would be incurable error.

Uber argues that Plaintiff stipulated to admitting over a dozen hours of Tempe Police video and audio, including this recording, for all purposes. Plaintiff did not. There is no stipulation in the record, and no evidence that Plaintiff ever even contemplated admission of this recording in this way. The Court should exclude the exhibit.

**I.    Mr. Turay's interview with the police is inadmissible hearsay.**

Exhibit 4096 is an audio recording of a phone interview between the police and the driver, Hassan Turay, approximately a week after the incident.[1] In the portion Uber wants to play, the detective asks Mr. Turay: "Do you think there's any reason for her to make this up or lie about it?" Ex. 4096.0004. Mr. Turay speculates that Ms. Dean "is maybe trying to get some money from Uber" or had "a plan … something to do with Uber." *Id.* at .0004, 12-13. Otherwise, the audio is largely cumulative of Mr. Turay's deposition.[2]

The recording is hearsay: an out-of-court statement by a non-party used to prove the truth of the matter asserted. *See Jensen v. EXC, Inc.*, 82 F. 4th 835, 846 (9th Cir. 2023) ("[A]ny statements from third parties that are recounted in a police report involve an additional layer of hearsay that must be separately justified by another exception to the hearsay rule."); *United States*

---

[1] The police called Mr. Turay on November 16 (Thursday) and left a voicemail. According to a different video, Mr. Turay called them back that same day. Then Mr. Turay left a voicemail on "a Sunday or Monday." Ex. 4096.0003:1-10. The conversation in Exhibit 4096 happened sometime after that voicemail. The conversation concludes with Mr. Turay wishing the detective "Happy Thanksgiving." Ex. 4096.0013:22. Thanksgiving in 2023 was on Thursday, November 23.

[2] Mr. Turay testified at his deposition that he told the police the same story he later recounted in the deposition. *See* Turay Dep. at 41:17-46:17 ("And I told the detective this.").

*v. Frederick*, 78 F.3d 1370, 1377 (9th Cir. 1996) ("Defendant is correct that S.F.'s testimony about what she had told Officer Geionety in an out-of-court interview is hearsay …."). As hearsay, the recording is inadmissible. Fed. R. Evid. 802.

**II.     No pretrial stipulation makes this video admissible.**

Uber contends that Plaintiff stipulated that all Tempe Police audio and video records, a dozen+ hours of video and audio, are admissible in any way and for any purpose. This argument is wrong for several reasons.

**A.     There was no stipulation.**

While the parties discussed the Tempe Police files as part of a broader pre-trial stipulation, no document was ever finalized, signed, or filed with the Court. Uber points to a moment during an argument concerning Mr. Tremblay's testimony where Uber's counsel (not Plaintiff's counsel) stated that "The parties have stipulated that all of that video is coming in," Trial Tr. at 1553:19-21, but the context shows the parties and the Court were discussing Uber playing various videos of *Ms. Dean*'s statements during the cross-examination of Mr. Tremblay. *See id.* at 1545:14-1553:18 (possibly also referring to non-police video of Ms. Dean walking into the hotel). Ms. Dean's statements, when introduced by Uber, are non-hearsay statements of a party-opponent.[3]

Uber also cites a portion of Officer Lopez's deposition during which counsel for Plaintiff was authenticating and laying the foundation for many Tempe Police videos and, "to maybe save time" and not "burn time we don't have to" asked Uber's counsel whether there was a stipulation of admissibility. Lopez Dep. at 104:7-105:10. In other words, Plaintiff's counsel understood there to be an agreement that the police records did not require police testimony for admission. Plaintiff's counsel gave no indication that Plaintiff stipulated to admissibility of all video and audio for all purposes, and nothing to that effect was ever presented to the Court.

---

[3] Uber also cites its own attorney's statement at the pretrial conference, arguing that the decision not to charge Mr. Turay should be admissible because "the parties have already stipulated that all the body cam footage is admissible. All the video is admissible. All the audio is admissible." 1/6/26 Hr'g Tr. at 53:3-7. But Plaintiff never adopted or agreed with that vague statement, and the Court did not rely on it. Rather, the Court ruled against Uber on the point being argued.

**B.    Admission, even if stipulated, does not necessarily extend to every use of evidence, especially where, as here, circumstances have changed.**

There is a difference between admissibility and admissibility in all ways and for all purposes. Any pretrial stipulation of admissibility would not necessarily extend to every *use* of a piece of evidence. For example, if an expert testified that he or she relied on the Turay audio recording (none did), then the video could potentially have come in on that basis. *See* Fed. R. Evid. 703. Under Uber's view of this "stipulation," Uber could have played this audio (or any of the dozen+ hours of other recordings) with any witness, even Ms. Dean, or even without a witness, as if the recordings were all party-opponent depositions. There's no universe where Plaintiff would have ever agreed to that. If Uber was under the impression that Plaintiff had agreed to something so at odds with the Rules of Evidence and common sense, then it should have pushed to memorialize the "stipulation." It did not.

Even if there were such an agreement, it would have necessarily reflected the circumstances as they then existed. When Officer Lopez was deposed on December 30, the Court had not issued rulings on, among many other things: (1) whether the police decision not to charge Mr. Turay would be admissible; (2) whether the police report would be admissible; or (3) whether Ms. Dean's sexual history would be admissible. As with evidence generally, the relevance and propriety of each of the Tempe Police videos and audio depended on the Court's rulings, the subsequent events in the trial, and the purpose for which the evidence would be offered. For example, had the Court admitted the police report, the state of mind of the officer, including through interviews of Mr. Turay, could have been relevant to demonstrate the accuracy or inaccuracy of the statements in the report. And had the Court admitted evidence of the non-prosecution decision, then Mr. Turay's statements might have been relevant to show why the police closed the file. Pretrial admissibility determinations are inherently tentative and open to being revisited as trial develops. *See Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("*[I]n limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial.").

**C.    There is no unfair prejudice to Uber from correctly applying the hearsay rule.**

Even if there was a stipulation (there was not), Uber cannot point to any prejudice from

1  exclusion now. Uber was able to play Mr. Turay's deposition presenting his side of the story. The
2  only thing this audio recording adds is Mr. Turay's speculation that Ms. Dean was trying to get
3  money from Uber. A person's speculation on another person's motivation is inadmissible even if
4  not hearsay. *See*, *e.g.*, *Diunugala v. Dep't of Conserv.*, 2018 WL 6137175, at *1 (C.D. Cal. Sept.
5  28, 2018) ("Garoyan's speculation regarding DOC's motivation for its adverse employment actions
6  is inadmissible."); *Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1105 n.8 (C.D. Cal. 2007)
7  (testimony about another person's "motivation" is inadmissible unless the witness can testify to
8  "facts supporting it"). Uber cannot maintain any reliance on a ludicrous "agreement" that every
9  second of every video and audio recording is categorically admissible, no matter how speculative,
10 cumulative, or prejudicial.

11    Uber also cannot point to any action it would have taken had it known that this recording—
12 obvious hearsay—would not be admitted. There is no other path to getting this evidence in for the
13 truth that Uber could have taken but did not take. Uber could not call a police officer to testify to
14 what Mr. Turay said to them, because Mr. Turay's statements remain hearsay. Uber could not call
15 Mr. Turay to testify about what he said to the police, because, again, his statements remain hearsay.
16 There simply is no way to admit hearsay for the truth of the matter asserted.

17    Uber claims that it relied on the supposed stipulation in not objecting to the videos the police
18 interviews of Mr. Bagby, the hotel clerk. But the videos of Mr. Bagby were admissible independent
19 of any supposed "stipulation." *First*, the Bagby videos are admissible under Rule 703. Plaintiff used
20 those videos during Mr. Tremblay's examination as facts or data Mr. Tremblay relied on in forming
21 his opinions. *See* Trial Tr. at 1451:6-1452:20, 1464:20-1467:1; Exs. 1923, 1936. Specifically, Mr.
22 Tremblay found significant the descriptions offered by an "immediate outcry witness" in forming
23 his opinion that Ms. Dean's circumstances included the risk factor of intoxication. Trial Tr. at
24 1451:6-15, 1465:11-16; *see also id.* 1485:14-1486:13 (cross-examination on same subject, using
25 different videos). And the Bagby videos presented zero risk of unfair prejudice. Accordingly, the
26 Bagby videos were admissible, given that "their probative value of helping the jury evaluate the
27 opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

28    *Second*, the Bagby videos are also admissible as excited utterances under Fed. R. Evid.

1  803(2). Mr. Bagby's statements concerned a "startling event," the sudden and dramatic arrival of Ms. Dean back at her hotel, and were made while Mr. Bagby "was under the stress of the excitement that it caused." Fed. R. Evid. 803(2). As the Court could observe in the videos (made at 1:55 A.M. and 2:27 A.M.), Mr. Bagby was still distressed by the conditions in which he found Ms. Dean and by the scramble to preserve evidence from her phone. *See* Ex. 1923.0007:13-18 ("First time this happened, got -- … Hey, I'm try – I tried. I'm trying to do the best, like, you got anger, you got sadness, you got a lot of emotions going on, because you think about what if this was so and so of your life, you know what I mean? So you got a thousand things going through your head.").

When applying Rule 803(2), "[t]he lapse of time between the startling event and the out-of-court statement although relevant is not dispositive[.]" *United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995) (citation omitted). Indeed, courts find the exception applicable even to statements made hours after the event.[4] Rather than turning on the number of minutes or hours that have elapsed, "the utterance must have been made before there had been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective power to be yet in abeyance." *United States v. Alarcon-Simi*, 300 F.3d 1172, 1175 (9th Cir. 2002) (citation omitted).

Here, in giving statements as a disinterested observer to the police in the middle of the night, Mr. Bagby "lacked the time or the incentive to reflect upon and confabulate a story." *Leavitt v. Arave*, 383 F.3d 809, 830 (9th Cir. 2004); *see also United States v. Carneglia*, 256 F.R.D. 384, 392-93 (E.D.N.Y. 2009) (eyewitness report "one hour after the shooting"). He had no motive to lie about Ms. Dean's condition or the events he witnessed. And his agitated state in the video demonstrates "his subjective stress." *United States v. Davis*, 2025 WL 1201983, at *3 (E.D.N.Y. Apr. 25, 2025) (admitting witness "statements approximately five hours after the alleged rape" because "his tone indicates his belief the event just occurred and evidences his subjective stress").

*Third*, the Bagby videos are admissible under the residual exception. *See* Fed. R. Evid. 807.

---

[4] *See United States v. Tocco*, 135 F.3d 116, 127-28 (2d Cir. 1998) (more than three hours); *United States v. Baggett*, 251 F. 3d 1087, 1090 & n. 1 (6th Cir.2001) (several hours); *United States v. Cruz*, 156 F.3d 22, 30 (1st Cir.1998) (four hours); *United States v. Scarpa*, 913 F.2d 993, 1016-17 (2d Cir.1990) (five to six hours).

The statements in question were made by a Good Samaritan, shortly after the event, with no motive to lie, and with the sole objective of assisting law enforcement. *See* Ex. 1923.0007:4-8 ("I just wanted to make sure she had all her, you know, stacked up just in case you guys had these questions, and she was too intoxicated, she couldn't do it or anything like that, or she couldn't remember. So you guys have that for you."). The "totality of the circumstances" demonstrate "guarantees of trustworthiness." Fed. R. Evid. 807(a)(1); *see also Caneglia*, 256 F.R.D. at 392-93 (admitting "subsequent police interviews … one day to eight months after the murder" based on "circumstantial guarantees of trustworthiness reflected in their consistent with [other] statements…, the high degree of specificity of the statements, and the fact that Ball's only apparent motive was to assist law enforcement"). And, coming as they do from the only eyewitness to Ms. Dean's condition when she walked into the hotel, Mr. Bagby's statements are "more probative on the point for which [they are] offered than any other evidence that" Plaintiff "can obtain through reasonable efforts." Fed. R. Evid. 807(a)(2).[5]

Dated: February 1, 2026

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

---

[5] Both parties tried to serve deposition subpoenas on Mr. Bagby, but were unable to complete service.

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

## FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: February 1, 2026          By:   */s/ Andrew R. Kaufman*
                                       Andrew R. Kaufman