1  [Submitting counsel below]

2

3  **UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

4  **SAN FRANCISCO DIVISION**

5

6

7  IN RE: UBER TECHNOLOGIES, INC.,          Case No. 3:23-md-03084-CRB
PASSENGER SEXUAL ASSAULT
LITIGATION,                              **DEFENDANTS' MOTION FOR**
8                                                **MISTRIAL**

9  This Document Relates to:                 Judge:      Hon. Charles R. Breyer
                                           Courtroom:  Courtroom 6 – 17th Floor
10 *Jaylynn Dean v. Uber Technologies, Inc., et
al.*, No. 3:23-cv-06708                   Date Filed:    February 2, 2026

11                                           Trial Date:    January 13, 2026

12

13

14 **UNITED STATES DISTRICT COURT**

15 **DISTRICT OF ARIZONA**

16 **PHOENIX DIVISION**

17

18 JAYLYNN DEAN,                            CASE NO. 25-cv-4276-PHX-CRB

19       Plaintiff,                         Judge:      Hon. Charles R. Breyer
                                           Courtroom:  501
20 v.

21 UBER TECHNOLOGIES, INC., et al.,

22       Defendants.

23

24

25

26

27

28

# INTRODUCTION

Throughout this trial, Plaintiff repeatedly has attempted—and often has been permitted—to flout disclosure obligations, the rules of evidence, and this Court's rulings. But Plaintiff's latest maneuver—playing for the jury an undisclosed, emotionally-charged, entirely hearsay CNN video depicting not only a tearful sexual assault victim with no connection to this case, but also highly inflammatory graphics regarding numerous other alleged assaults and criminal convictions and lawsuits—is so egregious and prejudicial that it cannot be cured by anything short of a new trial.

Plaintiff's decision to show this video of an unrelated alleged sexual assault, littered with unsubstantiated statistics of other unrelated incidents, injected severe error and prejudice into this case. For starters, Plaintiff violated Rule 26 and this Court's pretrial order requiring advance disclosure of trial exhibits. That failure to disclose was not mere oversight; Plaintiff's counsel admitted she planned on showing at least *four* undisclosed videos to Uber's witness Sanchin Kansal. Tr. 3118:13–14. Uber's counsel watched the video at the same time as the jury, depriving Uber of any meaningful opportunity to investigate the video's claims or to prepare a substantive objection. Plaintiff all but ensured that Uber would be unable to rebut that evidence or cure the prejudice it caused. The Court permitted that to happen by wrongly considering the video to be impeachment evidence, when it plainly was not. Making matters worse, the Court instructed the jury that it could consider the video as substantive evidence, Tr. 3107:7–10—something that the Ninth Circuit has made clear is grounds for a do-over. *See Urooj v. Holder*, 734 F.3d 1075, 1078–79 (9th Cir. 2013). Plaintiff's "trial by ambush"—and this Court's acceptance of it—necessitates a mistrial. *See Klonoski v. Mahlab*, 156 F.3d 255, 276 (1st Cir. 1998) (new trial warranted where defense engaged in "trial by ambush" by cross-examining witness about previously undisclosed and inflammatory letters for purported impeachment).

Plaintiff's failure to disclose aside, the video should not have been shown to the jury because it is replete with hearsay. Every statement in that video—from the anonymous victim's allegations about Uber, to the unsupported statistics attempting to tie Uber to sexual assault—were shown to the jury to advance Plaintiff's false narrative that Uber is unsafe. There was no other reason to show the video. Aside from inflaming the jurors' emotions, it was presented to support

1   Plaintiff's assertions of negligence, which are the very core of this case. It should have been

2   excluded on that basis alone. The assertion that this is evidence of "Uber's state of mind"—as this

3   Court has routinely said during the course of trial to allow other inflammatory prejudicial evidence

4   into the record—is meritless. This was a third-party account and not related at all to this litigation

5   and was clear hearsay.

6       On top of all that, the video is extremely prejudicial ***with no probative value***, so it should

7   have been excluded under Rule 403, too. Beyond the clear prejudice introduced by inflammatory

8   and emotional images and statements, the video allows Plaintiff to falsely imply that this case is

9   like the other cases mentioned in the video, when in fact it is not. Mr. Turay—unlike other drivers

10  mentioned in the video—***has not been criminally charged***, which is critical evidence that this Court

11  has prevented Uber from presenting to the jury. So Uber is not only severely prejudiced by the

12  video, but it also cannot even attempt to rebut it because of this Court's rulings. There is no

13  justification for allowing the video in.

14      This trial has been rife with improper admissions, nearly all of which have been favorable

15  to Plaintiff. The Court's default attempt to cure these many improper admissions—supposedly

16  curative instructions—cannot undo the damage they have caused. The prejudice introduced by

17  Plaintiff's video cannot, in fact, be cured by the Court's attempt at a curative instruction. The jury

18  has already seen the video: It will continue to permeate these proceedings and deliberations and

19  skew their views of the evidence—evidence that *actually* pertains to this case. That bell cannot be

20  unrung. *See Thomas v. United States*, 363 F.2d 159, 165 (9th Cir. 1966) (improper and prejudicial

21  impeachment before jury constitutes "the traditional ringing of a bell that could not be unrung"

22  necessitating reversal of judgment); *Rosa v. City of Chester, Pa.*, 278 F.2d 876, 882 (3d Cir. 1960)

23  (curative instruction unlikely to "effectively remove improperly admitted evidence from the jury's

24  consideration" and may "do more harm than good" by emphasizing jury's awareness of censored

25  evidence). The only way to cure the prejudice that has been injected into these proceedings is a

26  new trial. The Court should therefore grant this motion and declare a mistrial.

27                          **BACKGROUND**

28      On January 30, 2026, Uber's witness Sanchin Kansal—Chief Product Officer at Uber—

testified about safety products and features developed at the company.  While cross-examining Mr. Kansal, Plaintiff repeatedly introduced hearsay documents over Uber's objection and aggressively questioned the witness on facts preceding his time at Uber.  Throughout his testimony, Mr. Kansal repeatedly acknowledged his awareness of the existence of news reports about sexual assaults from both before and during his time at Uber. Plaintiff then followed up with the following question:

> "Q.  I'll make a better question. During this time period in 2018 Uber, in response to negative news reports, one of its reputation strategies was to tell the public in response to a negative news report about all the safety features that you were working on, right?
>
> A. Counsel [we were] actually very proactive about talking about our features.  In fact, in April 2018 we had our first big safety event that was not in response to any news articles, but we launched a lot of features then.  Then we had another one in October of 2018 where we launched a lot of those products that was proactive.  That was not in reaction to any negative news media."
>
> Q. Okay. So let's go ahead and - - I'd like to play Tab 76. This is a CNN video, a negative news report from 19 September of 2018." Tr. 3106:5–19.

Uber objected on 403 grounds, and this Court swiftly overruled the objection without seeing the video or hearing further argument.  Tr. 3106:20–21.

Plaintiff then played the three-minute video depicting a CNN interview of an anonymous woman—not Ms. Dean—who tearfully described the details of her alleged sexual assault by a driver using Uber's platform back in 2018 (five years before the incident at issue).  Ex. 4567.  She described waking up with her pants and underwear on the floor, finding stains on her bed, and feeling ashamed.  Ex. 4567.  She further described suffering from stress, anxiety and depression following the incident.  Ex. 4567.  The interviewee also stated "You think that you're safer for some reason because [Uber is] the big name and that they protect."  Ex. 4567.

Between interview clips, the video featured slides of uncited statistics of the number of convictions and arrests of drivers while somber music played in the background.  Those statistics included statements such as: "CNN has documented at least 103 Uber drivers in the U.S. who have been accused of sexually assaulting or abusing passengers in the past 4 years"; "[a]t least 31 Uber drivers have been convicted on charges ranging from battery to rape; and "[d]ozens of criminal and civil cases are pending."  Ex. 4567.

The Court instructed the jury that the document was received for "what was this witness

1    aware of at the time that he was performing his responsibilities in developing safety products"

2    Tr. 3107:23–17.  During the recess, Uber renewed its objection, notified the Court that the video

3    was not previously disclosed, and moved to strike.  Tr. 3107:11–12.  The Court denied Uber's

4    motion. Tr. 3118:24–3119:1. The Court instructed the jury again that the video could be considered

5    for "what Uber knew as of that particular date."  Tr. 3127:19–3128:21.  When Uber pointed the

6    Court to its own rule about disclosing cross-examination exhibits ahead of trial, the Court pivoted,

7    concluding that there was no violation because Mr. Kansal was "being impeached."  Tr. 3116:21–

8    3117:15.  It is unclear how a video Plaintiff represented as being from September 2018 could have

9    prompted previously scheduled safety events in April and October 2018, but the Court nonetheless

10   maintained that the video was impeachment evidence.  Tr. 3117:12–15.

11                                              **ARGUMENT**

12   **I.    The Court erred by admitting an undisclosed video that is fraught with hearsay and
          is extremely prejudicial with no probative value.**

13
14       Plaintiff's video exhibit is plainly inadmissible for several reasons:  (1) It was never

15   disclosed as a cross-examination exhibit for Mr. Kansal, (2) it is entirely hearsay, and (3) it is

16   unduly prejudicial with no probative value.  The Court's decision to allow it to be shown to the jury

17   was thus error several times over.  *See* Fed. R. Evid. 103(d) ("To the extent practicable, the court

     must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means.").

18
19       ***Impermissibly undisclosed substantive evidence***.  For starters, Plaintiff violated the Rules

20   of Civil Procedure and this Court's rules by failing to provide Uber notice of the video before

21   playing it to the jury.  That, alone, makes the video inadmissible.  And the Court compounded the

22   problem by instructing the jury that it could consider the video for a substantive purpose—

23   evaluating Uber's state of mind—despite the Ninth Circuit's clear ruling that undisclosed evidence

24   *cannot* be admitted for *any* substantive purpose.  *See Urooj*, 734 F.3d at 1078.

25       Rule 37(c)(1) requires that parties disclose "each document or other exhibit" they plan to

26   introduce at trial.  *See also* Fed. R. Civ. P. 26(a)(3)(A)(iii).  And it "forbids the use at trial of any

     information required to be disclosed by Rule 26(a) that is not properly disclosed."  *R & R Sails,

27   Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012).  This Court's rules further require that

28

1    counsel "provide a list of all exhibits to be used … on cross-examination."  At the pretrial

2    conference, the parties agreed to exchange cross-examination documents the evening before their

3    use in trial.  *See* Tr. 156:18–20.  In fact, *Plaintiff* then requested even more notice, and the Court

4    obliged by ruling that the parties must disclose cross-examination documents forty-eight hours

5    before their use.  Tr. 291:11–292:18.

6         Despite those clear rules and Plaintiff's own agreement, Plaintiff admittedly did not give

7    Uber any notice that she would play a highly prejudicial video to the jury (and this was not the first

8    time Plaintiff's counsel violated this rule).[1]  She instead blatantly disregarded the several

9    procedural safeguards imposed by the Federal Rules and this Court, without any justification for

10   her failure to provide the requisite notice.  And in doing so, she deprived Uber of a meaningful

11   opportunity to investigate the video's authenticity, accuracy, and admissibility or to prepare an

12   objection to the video's admission.  Plaintiff's failure to disclose is nothing short of trial by

13   "surprise" or "ambush."  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir.

14   2014).  That basis alone is sufficient to warrant a mistrial.  *See Klonoski*, 156 F.3d at 276 (new trial

15   warranted where defense cross-examined witness about previously undisclosed and inflammatory

16   evidence for purported impeachment).

17        The Court admitted the video and refused to strike it because it was supposedly

18   impeachment evidence (Uber is still trying to understand what it could have possibly been

19   impeaching), Tr. 3116:1–3117:15, but that is not only incorrect—it is directly contradicted by the

20   Court's own instruction that the evidence could be considered for the substantive purpose of

21   evaluating Uber's state of mind.  "Impeachment evidence is limited to 'show[ing] background facts

22   which bear directly on whether [the factfinder] ought to believe [one witness].'"  *Urooj*, 734 F.3d

23   at 1078 (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)).  The *sole*

24   permissible purpose for undisclosed impeachment evidence is to attack a particular witness's

25   credibility—it cannot have *any* substantive purpose.  *See id.* at 1078–79 (reliance on "impeachment

26   evidence for proof of the facts in dispute" was "error, as it improperly conflated impeachment

27

28   [1] In addition, Plaintiff served other cross-examination exhibits shortly before, and even after,
     Mr. Kansal took the stand.  This is not unsurprising; Plaintiff has repeatedly disclosed exhibits for
     cross examination last minute.

1   evidence with substantive evidence"); *id.* at 1079 ("Impeachment evidence proves only that the

2   declarant lacks credibility; substantive evidence proves the facts in dispute."). Indeed, Rule 26

3   makes clear that the only exception to the disclosure rule is evidence that is presented "*solely* for

4   impeachment." Fed. R. Civ. P. 26(a)(3)(A) (emphasis added); *see also Robert Kubicek Architects

5   & Assocs., Inc. v. Bosley*, 2013 WL 998222, at *2 (D. Ariz. Mar. 13, 2013) (excluding undisclosed

6   evidence that had "independent relevancy to the merits of the case" because it was "not 'solely for

7   impeachment'").

8       Here, there was nothing in Mr. Kansal's response to counsel's questioning that rendered the

9   CNN video proper impeachment of Mr. Kansal's credibility. *See* Tr. 3106:5–19. Plaintiff's

10  counsel asked Mr. Kansal if, in response to news reports, one of Uber's "reputation strategies was

11  to tell the public … about all the safety features that you were working on." *Id.* Mr. Kansal

12  responded that Uber was in fact "proactive about talking about our features," and had launched

13  safety features at various events in 2018, which were not in response to news articles

14  specifically. The video is in no way inconsistent with that testimony and in fact, includes a slide

15  stating that Uber had "recently strengthen our safety approach with new features." *See* Ex. 4567. If

16  anything, the video *corroborates* Mr. Kansal's testimony that Uber did introduce new features in

17  2018.

18      It is also unclear exactly how Mr. Kansal was being impeached. Mr. Kansal testified that

19  Uber held safety feature events in April and October 2018; Plaintiff represented that the CNN video

20  is from September 2018—after Uber had already conducted its April event. Neither of those safety

21  feature events would have been responsive to a video from September 2018. Mr. Kansal's

22  testimony that his team discloses safety features at scheduled events is in no way contradicted by a

23  CNN video interview regarding an unrelated sexual assault incident. There simply was no valid

24  reason to play a highly prejudicial video of a completely unrelated incident. To chalk it up to

25  impeachment makes no sense.

26      Moreover, the Court's own actions belie any argument that the video was shown as

27  impeachment: The Court admitted the document as an exhibit and repeatedly instructed the jury

28  that it could be considered as evidence of "what Uber knew as of that particular date." 3127:19–

3128:21.  That is not impeachment evidence on the witnesses' credibility, that is the admission of an exhibit for a substantive purpose—notice.  And this "was error, as it improperly conflated impeachment evidence with substantive evidence."  *Urooj*, 734 F.3d at 1079; *cf. Madrid v. Apache Cnty.*, 2006 WL 1273945, at *4 (D. Ariz. May 9, 2006) (admitting impeachment evidence "subject to a limiting instruction pursuant Rule 105 that the evidence relates only to the witnesses' credibility and may not be considered in determining Plaintiff's claim").  Regardless of any impeachment value (and there is none), the fact that the undisclosed video bears on the substance of Plaintiff's claims renders it inadmissible.  *Bosley*, 2013 WL 998222, at *2.

In short, not only was the evidence not proper impeachment, the Court told the jury to consider it for an invalid substantive purpose.  That, alone, was clear legal error.  Far from remedying Plaintiff's violation of the rules, the Court's instruction compounded it.

**The video was inadmissible hearsay.**  The video also should not have been shown because it is entirely inadmissible hearsay.  The interviewee's statements about the alleged assault and that Uber failed to take adequate precautions to protect her, along with CNN's unsupported assertions as to the number of drivers who have been convicted or arrested for assault, is hearsay because it is offered for the truth of Plaintiff's assertions: Plaintiff sought to use both the interviewee's narrative and CNN's statistics to buttress her overarching claim that Uber does not adequately value safety, all while inflaming the jury's emotions.  *See* Tr. 208:1–5 (opening statement); Tr. 207:21–23 (same); Tr. 333:1–3 (testimony of Dr. Drumwright); Tr. 351:22–23 (same).  That is the very definition of hearsay.  *See* Fed. R. Evid. 801.

Plaintiff's and the Court's assertion that the evidence is not hearsay because it shows Uber's state of mind misses the mark.  A video from nearly eight years ago does nothing to show Uber's state of mind with respect **to this specific incident**.  *See, e.g.*, *United States v. Cardascia*, 951 F.2d 474, 488 (2d Cir. 1991) ("To admit statements of one's state of mind with regard to conduct that occurred eight months earlier as in this case would significantly erode the intended breadth of this hearsay exception.").  In any event, the Court's assertion directly contradicts the Court's previous statement that the video is impeachment evidence—and conflating those two types of evidence is reversible error.  *Urooj*, 734 F.3d at 1078.  Even if the video *could* have been evidence of state of

1    mind, it could *not* have been admitted for that purpose here because it was undisclosed. *See supra*

2    pp. 4–7.

3        ***The evidence was extraordinarily and unduly prejudicial.***    The video was also exactly the

4    type of exceedingly inflammatory, minimally probative evidence that should be excluded under

5    Rule 403: The video's low probative value is substantially outweighed by its risks of unfair

6    prejudice, including the risk that the jury would use the interview for non-hearsay purposes. *See*

7    *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994) (evidence must not be admitted where its

8    "probative value … for its non-hearsay purpose is outweighed by the danger of unfair prejudice

9    resulting from [its] impermissible hearsay use").

10        On the one hand, the video has no probative value because it involves allegations about

11    numerous alleged assaults that occurred *five or more* years before Plaintiff's alleged assault—and

12    there was no foundation whatsoever for the claim that the circumstances of any of the alleged

13    assaults referenced in the video were at all similar to Plaintiff's alleged assault.  Given the utter

14    absence of any evidence tying these alleged assaults with Plaintiff's, or evidence explaining why

15    reports of incidents in 2018 were relevant to what Uber should have done in 2023, there was simply

16    no reason to show the video—other than to inflame the jury.  Indeed, the jury has already heard

17    days of evidence about Uber's alleged knowledge of sexual assault incidents on its platform, so

18    even if the video could bear on any relevant issue, it was wholly cumulative.[2]  *See, e.g.*, Tr. 336:7–

19    11, 367:3–12, 1284:3–23; *see also United States v. Hicks*, 103 F.3d 837, 847 (9th Cir. 1996),

20    *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008)

21    (upholding exclusion of expert testimony because its substance was covered in cross-examination

22    and jury instructions).  The Court itself recognized as much when it noted that further reports of

23    the kind should not be shown to the jury to establish Uber's notice.  Tr. 3112:13–16.

24

25    ───────────────

26    [2] By the Court's own standard, this video is indisputably cumulative.   The Court previously ruled
     that Uber could not play a video of a conversation between Plaintiff and Scott McLaughlin the night
27   of the incident—a conversation that Plaintiff previously testified never happened—because the jury
     had already heard Plaintiff's story "as to what happened that night." Tr. 1901:16–21. Even though
28   the jury had never seen the video before, the Court ruled that it was "cumulative to the facts in this
     case." *Id*.  Although Uber maintains that the Court's decision to exclude that video was error, the
     Court should have at least applied its rules consistently here.  But it did not.

1    By contrast, the video's risk of unfair prejudice is extremely high—for several

2  reasons. First, the interview features a tearful and sympathetic victim describing the emotionally

3  charged narrative of an unrelated traumatic assault. That sort of evidence has an undue tendency

4  to encourage the jury to make its decision as to Uber's liability and Plaintiff's damages on an

5  improper emotional basis—a result that Rule 403 prohibits. *See* Fed. R. Evid. 403 advisory

6  committee's notes (noting that unfair prejudice is most commonly found where the evidence tends

7  to suggest decision on emotional grounds); *United States v. Skillman*, 922 F.2d 1370, 1374 (9th

8  Cir. 1990) (unfair prejudice "appeals to the jury's sympathies, arouses its sense of horror, provokes

9  its instinct to punish, or otherwise may cause a jury to base its decision on something other than the

10  established propositions in the case"); *see also U.S. v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985)

11  (excluding last hour of tape captured by Jim Jones during the Jonestown massacre because the

12  "emotional impact and distracting effect" of the tape could not be mitigated); *United States v.*

13  *Williams*, 663 F. Supp. 3d 1085, 1096 (D. Ariz. 2023) (excluding rap video with "highly

14  inflammatory" lyrics that could mislead the jury by "becom[ing] a feature of the trial"). Even if

15  the video contained some statement that impeached Mr. Kansal's testimony (it did not), it is still

16  "clear beyond cavil that the prejudicial statements referring to defendants' alleged [other] acts

17  should have been excised before the [video] was played." *White v. Cohen*, 635 F.2d 761, 762 (9th

18  Cir. 1981). But they were not. Instead, the jury heard three minutes of comments that "were neither

19  relevant nor impeachment related, but quite obviously entailed significant prejudicial harm to

20  [Uber's] case." *Id.* (citing Fed. R. Evid. 403). The Court's reasoning is therefore insufficient to

21  overcome the substantial prejudice to Uber. *See id.* (granting new trial).

22    The video also misleadingly involves a criminal assault and statistics on drivers' convictions

23  and arrests. Its admission is unfairly one-sided and prejudicial to Uber, as the Court has refused to

24  admit Uber's proffered police report of the incident in question and has prohibited Uber from

25  distinguishing its case by clarifying that Mr. Turay was not criminally charged for the incident

26  involved in this litigation. *See* Tr. 1120:22–1121:4 (excluding police report); Tr. 550:12–18

27  (disallowing references to absence of criminal charges); *see also In re Crash of Aircraft N93PC on*

28  *July 7, 2013, at Soldotna, Alaska*, 455 F. Supp. 3d 906, 915 (D. Alaska 2020) (excluding evidence

1   that risked misleading the jury into believing that the agencies had investigated and determined the

2   cause of the crash).

3           Even taking Plaintiff's assertion that this is state-of-mind evidence at face value, there is

4   *still* a substantial risk that jurors will interpret the evidence as supporting the substantive elements

5   of Plaintiff's claims rather than "Uber's state of mind."  Courts repeatedly have held that such a

6   risk is sufficiently prejudicial to justify exclusion under Rule 403.  *See, e.g.*, *United States v. Spayd*,

7   2022 WL 4367621, at *9 fn. 85 (D. Alaska Sept. 20, 2022) ("[M]ere identification of a relevant

8   non-hearsay use of such evidence is insufficient to justify its admission if the jury is likely to

9   consider the statement for the truth of what was stated with significant resultant prejudice.")

10  (citation omitted); *Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*, 2009 WL 10670877, at *4

11  (C.D. Cal. Aug. 18, 2009) (finding slight probative value of evidence outweighed by likelihood that

12  jury "will consider th[e] hearsay statements for the truth of the matters they assert").

13                                          *       *       *

14          At bottom, Plaintiff should have been prevented from showing this video to the jury for any

15  number of reasons.  The Court had no legal basis for refusing to step in and for subsequently

16  refusing to strike the evidence—and even made the issue worse by telling the jury it could consider

17  the evidence for a substantive purpose.  Those decisions have severely prejudiced Uber's right to

18  defend itself in a fair proceeding and warrant a mistrial.  *See Klonoski*, 156 F.3d at 276 (ordering

19  new trial where admission of undisclosed and inflammatory evidence at a key point in trial resulted

20  in severe prejudice); *Bayramoglu v. Estelle*, 806 F.2d 880, 888 (9th Cir. 1986) (curative instruction

21  insufficient where evidence is "highly prejudicial").

22  **II.    The only way to remedy the prejudice caused by the video is a mistrial.**

23          Now that the jury has seen the video and that Uber has no way to rebut it, the only remedy

24  is a new trial.  The Ninth Circuit has held that mistrial is appropriate when evidence "played for the

25  jury contained prejudicial statements which seriously impaired defendants' right to a fair and

26  impartial trial."  *White v. Cohen*, 635 F.2d 761, 761 (9th Cir. 1981).  That is exactly the case here.

27          The traditional means of curing prejudice are not available to Uber here.  Uber cannot, for

28  example, cross-examine the woman featured in the video to put her statements in context and

1  distinguish her experience from Plaintiff's. *See Fenenbock v. Director of Corr. for Cal.*, 692 F.3d

2  910, 919 (9th Cir. 2012) ("Cross-examination is the principal means by which the believability of

3  a witness and the truth of his testimony are tested, allowing the cross-examiner to delve into the

4  witness' story to test the witness' perceptions and memory and to impeach, i.e., discredit the

5  witness.") (cleaned up).  Nor can Uber dissect the various statistics displayed during the course of

6  the video, which do not include any citations or supporting data, much less cross-examine

7  whomever at CNN created those graphics. The Court has protected Plaintiff's ability to cross-

8  examine, even allowing Plaintiff extra time to put on her case to ensure she can do so. 3203:5–

9  7. As the Court explained, this case "is a bellwether and so the oddest thing would be if something

10  comes in to which there was no cross-examination." 3204:6–11 (emphasis added).  But this is

11  precisely the outcome the Court has permitted by admitting the CNN video over Uber's objection.[3]

12          The upshot, then, is that the jury was given compelling, unrebutted evidence of what

13  essentially amounted to "other acts" that were not relevant to the case, but that paints Uber as a

14  serially negligent actor on sexual assault.  *See United States v. Bailey*, 696 F.3d 794, 801 (9th Cir.

15  2012) ("other acts" evidence improperly admitted where it "may have permitted the jurors to

16  succumb to the simplistic reasoning that if the defendant was accused of the conduct, it probably

17  or actually occurred").  That substantial prejudice "[has] so tainted this case that a new trial is

18  necessary." *White*, 635 F.2d at 763.

19          The Court's instruction—that the video should only be considered as "state of mind"

20  evidence—did nothing to cure the prejudice to Uber, and in fact made it worse.  An instruction

21  cannot sufficiently purge evidence of its prejudicial value if evidence "is highly prejudicial or the

22  instruction is clearly inadequate." *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir.

23  2016) (emphasis added).  Both of those reasons apply here:  First, the video is "highly prejudicial"

24  for all the reasons discussed above. *See supra*, pp. 8–11.    Second, the Court's instruction

25  compounded—rather than remedied—the prejudice.  Again, undisclosed impeachment evidence

26  ---

27  [3] This is not the first time that Plaintiff has introduced undisclosed evidence, robbing Uber of its right to cross-examination.  Plaintiff paraded surprise witness "Jennifer" into the courtroom during questioning of Uber representative Ally Cisna, inviting the jury to infer that the support abuse tags
28  on Jennifer's account were inaccurate. Though the Court later instructed the jury to disregard "a reference of somebody in the courtroom," the damage had already been done. Tr. 1236:7–16.

1   cannot be used for a substantive purpose—yet the Court told the jury it could use the evidence for

2   that purpose.  The Court's instruction was legally wrong and aggravated the error, necessitating a

3   new trial.  *See United States v. Aims Back*, 588 F.2d 1283, 1286 (9th Cir. 1979) (instruction leading

4   jurors to misuse prejudicial evidence warranted a new trial).

5       At minimum, the Court's instruction is woefully insufficient.  Even if the jury could have

6   permissibly considered this evidence for Uber's "state of mind"—and again, it absolutely could

7   not—there still remains the extreme prejudice of effectively allowing a highly respected news

8   organization, and a sympathetic, tearful victim, to tell the jury that Uber allows criminal sexual

9   assault without any ability for Uber to rebut it.  Given the highly prejudicial nature of the evidence,

10  the instruction cannot mitigate the risk that the jury reaches the erroneous conclusion that if Uber

11  was negligent in allowing the victim on CNN to be assaulted, it also was negligent in allowing

12  Plaintiff to be assaulted.  *See Aims Back*, 588 F.2d at 1286 (granting new trial after admission of

13  prejudicial evidence and misleading instruction).

14      Under these circumstances, a mistrial is the only way to cure the prejudicial impact of

15  Plaintiff's undisclosed, emotionally-fraught video evidence.

16                                    **CONCLUSION**

17      For these reasons, the Court should grant this motion and declare a mistrial.

18

19

20

21

22

23

24

25

26

27

28

1    Dated: February 2, 2026                 Respectfully submitted,

2                                           */s/ Laura Vartain Horn*

3                                           Laura Vartain Horn (SBN 258485)
**KIRKLAND & ELLIS LLP**

4                                           555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1625

5                                           laura.vartain@kirkland.com

6                                           Kim Bueno (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**

7                                           401 W. 4th Street
Austin, TX  78701
Telephone: (512) 678-9100

8                                           kim.bueno@kirkland.com

9

10                                          Allison M. Brown (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**

11                                         2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000

12                                          alli.brown@kirkland.com

13                                          Jessica Davidson (Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**

14                                          601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

15                                          jessica.davidson@kirkland.com

16

17                                          Theane Evangelis (Admitted *Pro Hac Vice*)
Daniel Nowicki (Admitted *Pro Hac Vice*)
**GIBSON DUNN & CRUTCHER LLP**

18                                          333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000

19                                          TEvangelis@gibsondunn.com

20                                          DNowicki@gibsondunn.com

21                                          Sabrina H. Strong (SBN: 200292)
Jonathan Schneller (SBN: 291288)

22                                          **O'MELVENY & MYERS LLP**
400 South Hope Street, 19th Floor

23                                          Los Angeles, CA 90071
Telephone: (213) 430-6000

24                                          sstrong@omm.com
jschneller@omm.com

25

26                                          *Attorneys for Defendants*
UBER TECHNOLOGIES, INC.,

27                                          RASIER, LLC, and RASIER-CA, LLC

28

1

## <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on February 2, 2026, I electronically filed the foregoing document

3  with the Clerk of the Court by using the CM/ECF system which will automatically send

4  Notification of the filing to all counsel of record.

5
                              */s/ Laura Vartain Horn*
6
                                Laura Vartain Horn

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28