1  [Submitting Counsel on following page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE UBER TECHNOLOGIES, INC. PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br>*Jaylynn Dean v. Uber Technologies, Inc., et al.*, No. 3:23-cv-06708 | Case No. 3:23-md-03084-CRB<br><br>**EX PARTE APPLICATION OF NON-PARTY THE EMILY NORMANDIN-PARKER FOUNDATION FOR AN ORDER TO INTERVENE AND (1) ALLOWING ACCESS TO ADMITTED EXHIBITS; OR (2) REQUIRING COURT TO REMAIN IN POSSESSION OF EXHIBITS PENDING ORDER ON NOTICED MOTION FOR INTERVENTION AND ACCESS TO EXHIBITS; MEMORANDUM OF POINTS AND AUTHORITIES** |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

**PHOENIX DIVISION**

| | |
|---|---|
| JAYLYNN DEAN,<br><br>    Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 25-cv-4276-PHX-CRB |

**APPLICATION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1  Peter R. Afrasiabi (CA SBN 193336)
   *Arizona Pro Hac Vice to be filed as necessary*
2  Email: pafrasiabi@onellp.com
   **ONE LLP**
3  23 Corporate Plaza, Suite 150-105
   Newport Beach, CA 92660
4  Telephone:   (949) 502-2870
   Facsimile:   (949) 258-5081
5
   Kenneth G. Parker (Cal. Bar No, 182911)
6    *Arizona Pro Hac Vice to be filed as necessary*
     email: ken.parker@haynesboone.com
7  HAYNES AND BOONE, LLP
   600 Anton Blvd., Suite 600
8  Costa Mesa, CA 92626
   949-202-3014
9
   *Attorneys for Non-Party,*
10 *The Emily Normandin-Parker Foundation*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**APPLICATION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**

## APPLICATION AND MOTION

Non-Party The Emily Normandin-Parker Foundation hereby applies and moves for an expedited order allowing access to, and copying, of exhibits admitted in the public record in this action prior to the release of exhibits to counsel of record; or, in the alternative, an expedited order requiring the Clerk of the Court to maintain possession of the exhibits to allow such public access or further briefing on access, as the Court may desire.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. SUMMARY OF ARGUMENT

This Application and Motion seeks to ensure public access to all exhibits admitted in this unsealed, public trial. It is well-settled that pursuant to federal common law and the First Amendment, the public enjoys a right of access to judicial records such as those sought here. That includes not just the transcripts of the trial, which may be ordered from the court reporters by any member of the public at any time, but also exhibits that have been admitted into evidence and exhibits that contain deposition transcript excerpts as played in open court.

Here, there is a substantial and legitimate public interest in these proceedings and their outcome.  There is further a substantial and legitimate public interest in understanding the factual and legal issues raised by the parties, and in understanding the conduct of Uber Technologies, Inc. that led to this case and thousands of others.

Under standard procedures in both the Northern District of California and the District of Arizona, normally all exhibits will be returned to one or the other party, or both, after the jury reaches its verdict. After that, there will be no way for any member of the public to obtain access to them. Thus, intervenor The Emily Normandin-Parker Foundation seeks and order either (1) allowing public access to the exhibits for inspection and copying before they are returned to the parties in this action; or (2) requiring the Clerk of the Court to maintain possession of them

1

APPLICATION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES

until this application and motion is decided. Only with such an order can public access to the exhibits introduced in open court be maintained.

## II.  FACTUAL BACKGROUND

In the past three weeks, the parties have litigated this case in open Court. The proceeding has been open to the public at all times, and the courtroom has never been sealed. In addition, as this Court made clear on the record on January 14, 2026, it a "public trial," and there is a dial-in number at which any member of the public could listen in on the proceedings.

During the trial, both parties have introduced exhibits in the public record. All are important or they would not have been introduced, and all are key to understanding not just how an Uber driver's alleged rape of Jaylynn Dean occurred in the back of an Uber, but how and why Uber conducts its business the way it does. In addition, deposition videos have been played in open court, but were not transcribed. The deposition excerpts of testimony as played have been filed with the Court as additional exhibits.

At the end of this trial, all exhibits will be returned to the parties pursuant to local rule and practice (in which the parties take possession of the exhibits after the jury returns its verdict). *See, e.g.*, N.D. Cal. Civil L.R. 79-4. Thus, after this public trial ends, the exhibits that are part of the public record in this trial will no longer be available to the public at all. Rather, they will be in the hands of private counsel and private party, where there is no guarantee any interested member of the media or of the public can access them. At that point, the public and media will have to rely on the discretion of private parties to provide such documents.[1]

---

[1] The nature of the private parties in this case and their relationship is important. Uber's incentive to make documents available on a voluntary basis is not known. But it has engaged in aggressive motion practice in this case and the related JCCP in California with respect to alleged dissemination of documents it regards as sensitive, and has often sought to seal pleadings prior to trial. Further, it has threatened or filed lawsuits against certain plaintiffs' firms in the past for various alleged infractions. *See, e.g.*, P. Christopher Ardalan, Uber's assault on civil justice: a play out of the corporate intimidation playbook, *Daily Journal*,

2

**APPLICATION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1   As of the date of this application, the exhibits are in the possession of this
2   Court. Thus, this motion seeks two things: (1) that the Court order that, at a time
3   convenient to the Court, third parties be permitted to obtain copies, at their
4   expense, of the exhibits admitted into evidence in this trial; and (3) that, to the
5   extent this relief is not immediately granted for any reason, the Clerk of Court
6   retain possession of all exhibits admitted into evidence and provided to the jury
7   until this matter is fully considered and ruled upon.

**III.    ARGUMENT**

    **A.    The Emily Normandin-Parker Foundation Should Be Permitted to Intervene for the Limited Purpose of Ensuring Public Availability of Records**

The Emily Normandin-Parker Foundation was established after Emily was killed during an Uber ride. At age 23, Emily was killed in traffic after her Uber driver kicked her and her friend out of the Uber on the gore point of a high-speed freeway. After Emily's tragic and needless death, her parents formed The Emily Normandin-Parker Foundation to pursue certain interests. Those include ensuring transparency and accountability in the car service industry of which Uber is a part, as well as transparency with respect to litigation and arbitration of wrongful death and serious injury cases.

The Emily Normandin-Parker Foundation has obtained, and intends to obtain, public records related to this action and ensure that they remain publicly available. Declaration of Carol L. Normandin ¶ 3. As such, The Emily Normandin-

---

September 10, 2025 (https://www.dailyjournal.com/article/387410-uber-s-assault-on-civil-justice-a-play-out-of-the-corporate-intimidation-playbook). As for plaintiff, her attorneys must protect her interests and that of other plaintiffs in this MDL proceeding, and logically must be aware of Uber's tendency to sue or threaten to sue for alleged misdeeds. Thus, plaintiff's counsel in this matter may choose not to disclose public documents even if those documents are clearly part of a public record. Thus, whether one side or the other agrees that the documents are public or not is insufficient to assure their availability to the public. This Court must preserve the record and ensure the public has access to the documents in it.

3

**APPLICATION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1  Parker Foundation has standing to intervene, since its interests directly align with,
2  and vindicate interests of, the interests of freedom of information, transparency,
3  and public accountability. *See, e.g.*, *Globe Newspaper Co. v. Superior Court*, 457
4  U.S. 596, 609 n.25 (1982) (newspaper has right to be heard on issue of exclusion
5  from court proceedings). For that reason, this Court should grant the request to
6  intervene for that limited purpose.

        **B.**    **The Public Has a Right to Access to the Judicial Records from the Dean Trial**

The federal common law and the First Amendment create a presumptive right of public access to judicial documents. Although that right can sometimes be overcome, the burden is on the party seeking to avoid public access to show that it can be justified. It is well-settled that the public has a presumptive right of access to judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *Kamakana v. City and Cty. Of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (judicial "records are public documents almost by definition, and the public is entitled to access by default."). "Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point." *Id.* at 1178 (internal quotations and citation omitted).

This presumption of openness "promot[es] the public's understanding of the judicial process and of significant public events." *Valley Broad. Co. v. U.S. Dist. Court—D. Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986); *In re Granick*, 388 F. Supp. 3d 1107, 1115 (N.D. Cal. 2019) (finding that "promoting the public's understanding … of significant public events" weighs in favor of finding a public access right). Under the common law presumption of access, a party seeking to avoid disclosure of a judicial record "bears the burden of overcoming this strong presumption by … articulat[ing] compelling reasons supported by specific factual

4
APPLICATION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES

1  findings … that outweigh the general history of access and the public policies
2  favoring disclosure, such as the public interest in understanding the judicial
3  process." *Kamakana*, 447 F.3d at 1178 (internal alterations, quotations, and
4  citations omitted).  Even filings that are tangentially related to the merits still
5  require a showing of "good cause" to be withheld from public inspection. *Ctr. for*
6  *Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

7        In addition to the well-established common law right, the First Amendment
8  provides an independent right of access to court records. See, e.g., *Courthouse*
9  *News Serv. v. Planet*, 947 F.3d 581, 590 (9th Cir. 2020) (First Amendment right of
10 access extends to filings in civil proceedings). "The public has a right to know how
11 its resources are being used—courts are funded by the public, judges are evaluated
12 by the public, officials who appoint and approve judges are voted on by the public,
13 and the laws under which parties sue may be refined, rescinded, or strengthened
14 based on the public's views of the ways in which they play out in court." *Id.* at 592
15 (quotation omitted).

16       **C.**    **Substantial Prejudice to Public Interest Will Likely Occur if the**
17            **Exhibits Are Released Back to the Parties Without Public Access.**

18       This case presents important legal issues in which the public has a legitimate
19 interest. At issue are allegations that Uber employs a car service in which its
20 drivers rape and commit sexual misconduct against passengers, and that Uber does
21 not take proper steps to ensure their safety.  Further, exhibits in this case involved
22 matters of intense public interest, including: (1) the failure to follow up on
23 complaints against drivers; (2) the lack of efficacy of various safety features Uber
24 touts as helping ensure passenger safety; (3) the economic reasons for failing to
25 adopt certain safety features such as dashcams, mandatory video recording, human
26 intervention, and proper driver supervision; (4) the adoption of Uber's Safety-Risk
27 Assessed Dispatch ("S-RAD"), how it works; (5) Uber's failure to inform its
28 passengers of the risk assessed via S-RAD; (6) Uber's failure to inform at least

1   20% of passengers (at any given time) that the passengers had been randomly
2   placed in a "placebo" group, and therefore were unknowingly at higher risk as part
3   of Uber's ongoing S-RAD experimental development; (7) the failure to inform
4   women passengers of the increased dangers of night rides after drinking; (8) the
5   known solicitation of intoxicated passengers, including women, to use Uber rather
6   than stay home, not drink, get a ride home from a family member, or use a
7   designated driver; (9) Uber's focus on the costs of follow-up on passenger conduct
8   or complaints versus not following up and its role in allowing driver sexual
9   assaults to occur; (10) Uber's knowledge that a long-term driver has twenty times
10  the long term value to Uber as a passenger, and the accompanying incentive of
11  Uber to refrain from disciplining or firing drivers; and (11) costs associated with
12  firing drivers (known as "driver churn") and Uber's financial incentives to avoid it
13  to the detriment of passenger safety.
14          As this Court is aware, a substantial number of exhibits involved these
15  issues. And all of them are matters of intense public interest.  For example, either
16  this trial or the matters at issue in it—Uber's alleged lack of care for the safety of
17  its passengers, primarily female passengers—have been the subject of massive
18  media interest from The New York Times, CNN, The Wall Street Journal, The
19  Washington Post, ABC, NBC, and CBS.[2] Further, the matter is currently a subject
20  of inquiries from Congress.[3]
21  / / /
22  / / /
23  / / /
24  / / /
25

---

[2] *See, e.g.*, https://www.nytimes.com/2025/12/29/business/uber-sexual-assault-drivers-complaints.html; https://www.cnn.com/2022/06/30/tech/uber-safety-report.
[3] *See* https://debbiedingell.house.gov/news/documentsingle.aspx?DocumentID=6513.

6

**APPLICATION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**

      **D.     To the Extent They Can Even Be Considered, There are No Countervailing Interests to Making Exhibits Publicly Available.**

Given that this is a public proceeding, the exhibits were all introduced in it, and neither party sought to seal the courtroom, no countervailing interests should be considered here. But to the extent they are considered, they are unavailing.

      **1.     Uber, in Particular, Has Waived the Right to Prevent Disclosure**

Long ago, Uber agreed to litigate these cases "in open court." *See, e.g.*, Tony West, Uber Chief Legal Officer, *Turning the Lights On* (May 15, 2018) ("[S]urvivors will be free to choose . . . ***open court***.") (emphasis added) (available at https://www.uber.com/newsroom/turning-the-lights-on/). Moreover, Uber has taken great pains to claim that it is providing transparency in these cases. In Uber's own words, "We don't believe corporate secrecy will make anyone safer." 2017-18 Uber Safety Report at p. 10 (available at https://tb-static.uber.com/prod/udam-assets/drclg/UberUSSafetyReport_201718_FullReport.pdf.).

> In addition, the protective order entered in this case was crystal clear: However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, ***including becoming part of the public record through trial or otherwise . . . . Any use of Protected Material at trial shall be governed by a separate agreement or order.***

MDL Dkt. 3094, Protective Order ¶ 3 (emphasis added). This Court stated on January 14, 2026 that it was a public trial. At no point during the trial, to the undersigned or The Emily Normandin-Parker Foundation's knowledge, has Uber asked to seal the courtroom, terminate the open public line, or remove the public

from the courtroom. Further, the undersigned understands that the plaintiff in this case has bravely agreed to try this case in open court, despite Uber denying her rape and spotlighting her trauma history in public.

### 2. Even Absent Waiver, Intense Public Interests Outweigh Any Other Concerns

Uber, in particular, cannot articulate any basis for objecting to public inspection of the exhibits, even if it had not already waived the right to do so. The mere fact the documents are embarrassing, incriminating, or may lead to further litigation against Uber "will not, without more" allow withholding records. *Kamakana*, 447 F.3d. at 1179; *see also Ponomarenko v. Shapiro*, No. 16-cv-02763-BLF, 2017 U.S. Dist. LEXIS 133560, at *11 (N.D. Cal. Aug. 21, 2017) ("[P]otential embarrassment alone is not a compelling reason to seal or redact the Court's records.") (citation omitted).[4] For example, a claim that Uber investors, such as The Vanguard Group, Inc. or BlackRock, Inc., might be subject to public criticism or embarrassment for supporting Uber's alleged neglect of passenger safety is not an appropriate basis for withholding exhibits. Moreover, even if Uber were to argue that competitive information is at stake, that information was both relevant to the merits of the claims and admitted to support or defend against them. Where the information is so integral to the merits, it cannot be kept from the public, at least in part because it will help "ensur[e] the public's understanding of the judicial process and of significant public events." *Richards v. Centripetal Networks, Inc.*, 2023 U.S. Dist. LEXIS 69502, at *4-5 (N.D. Cal. Apr. 20, 2023) (denying sealing of "investor reports, capitalization and financial information, and

---

[4] Uber elected to allow litigation of sexual assault cases in open court. But it is well known that Uber continues to enforce confidential arbitration when possible in all other matters, including other personal injury, property injury, and wrongful death. *See, e.g., Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 310, 260 N.E.3d 1060, 1078 (2024) (upholding Uber's "clickwrap" arbitration agreement and requiring arbitration of personal injury case); *Good v. Uber Techs., Inc.*, 494 Mass. 116, 130, 234 N.E.3d 262, 277 (2024) (same). Any concerns Uber may have about documents introduced in open court being used elsewhere are not availing here.

8
**APPLICATION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**

a settlement agreement with Plaintiff' of a non-public company on that basis); *M.A. Silva Corks USA, LLC v. M.A. Silva Holdings, Inc.*, 2023 U.S. Dist. LEXIS 41065, at *5 (N.D. Cal. Mar. 10, 2023) (denying sealing of information "critical (even central) to Plaintiff's claims.").

## IV. CONCLUSION

For all of the reasons set out above, The Emily Normandin-Parker Foundation respectfully requests that the Court grant its motion to intervene and issue an order (1) allowing The Emily Normandin-Parker Foundation and other members of the public access to all exhibits admitted in the trial, including exhibits containing deposition transcripts of video played at trial, and to obtain copies, before they are returned to counsel for the parties; and (2) if the above relief is not immediately granted, requiring the Clerk of Court to maintain custody of the exhibits until the matter of public access is fully resolved here or by appeal to the Ninth Circuit.

Dated: February 2, 2026        **ONE LLP**

By: /s/ Peter R. Afrasiabi
    Peter R. Afrasiabi

    -and-

HAYNES & BOONE, LLP
Kenneth G. Parker

*Attorneys for Non-Party,
The Emily Normandin-Parker
Foundation*

9
**APPLICATION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES**