[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB |
| | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S ORDER** |
| This Document Relates to: | |
| All Cases | Judge: Honorable Charles R. Breyer |
| | Date: February 20, 2026 |
| | Time: 10:00 a.m. |
| | Courtroom: 6-17th Floor |

1    Plaintiffs respectfully submit this response in opposition to Defendants' objection to the

2  Special Master's November 17, 2025 Ruling on Scope of Clawback Orders. For the reasons

3  explained below, the objection should be overruled.

4                            **INTRODUCTION**

5    As the Court observed during the *Dean* bellwether trial, Uber's practice is to (1) mark

6  virtually every relevant document attorney-client privileged, (2) withhold a large portion of those

7  documents as privileged, and (3) begrudgingly produce those documents, in whole or in part, only

8  after adverse rulings from Judge Cisneros or Judge Jones. Trial Tr. at 1532. Uber's objections to

9  the Master's orders are merely the latest example of its wholesale abuse of the attorney-client

10  privilege and process in this litigation.

11    On September 30, 2025, the Special Master correctly denied Uber's renewed request to

12  claw back 42 documents. In so doing, Judge Jones correctly applied Judge Cisneros's prior orders

13  and the governing legal framework to hold that Uber's serial de-designations and production

14  decisions constituted a privilege waiver as to the documents at issue. Uber objected to the Master's

15  rulings -- an objection she denied on November 17, 2025. Inexplicably, Uber did nothing for

16  months, and waited until the middle of the *Dean* bellwether trial in January 2025 to seek relief from

17  the Court. Indeed, 10 of the 42 documents here were on Plaintiff's *Dean* trial exhibit list and three

18  were admitted.[1]

19    Uber's objections are untimely and meritless. On timing, Uber relies on an improper reading

20  of the Amended Order Appointing the Special Master (ECF 2302) and never explains how its

21  belated clawbacks can be timely under PTO 14 and the protective order. On the merits, Uber rests

22  on an expansive and baseless reading of Federal Rule of Evidence 502(d) and PTO No. 14. Uber's

23  position would transform Rule 502(d) into a blanket, consequence-free safe harbor for deliberate

24  litigation choices and allow endless document re-designation—precisely the "merry-go-round"

25  Judge Cisneros has already rejected. The Master's ruling should be affirmed.

26    _____

27  [1] The marked trial exhibits at issue here are P-00047, P-00131, P-00464, P-00870*, P-01480*, P-
01483*, P-01522, P-02554, P-02678, and P-02994. Judge Breyer's January 12, 2026 Order

28  prohibiting Uber from clawing back any documents produced before December 1, 2025 that were
designated as potential exhibits in the Dean trial. (ECF No. 4977)(*Admitted Exhibits).

**<u>BACKGROUND</u>**

This is Uber's newest attempt at its ongoing privilege gamesmanship. Uber has repeatedly logged, re-logged, de-designated, and then attempted to reclaim privilege over the same documents. The issue in the instant dispute, and its exhaustive precursors, have been in front of one Judge or another in this litigation since at least April 2025. *See* ECF 3545 at 4. Each time this specific dispute and these documents have been formally addressed, Judge Cisneros or Master Jones ruled Uber could not later clawback documents it had initially withheld but then later produced and withdrew privilege designations. *Id.*

Beginning in late 2024, Judge Cisneros required Uber to "apply lessons learned" from privilege rulings to its tranche privilege logs and to re-review those logs by March 10, 2025. *See* ECF 1908 at 13; 2344 at 5; 2357 at 2.

On an April 24, 2025 hearing, Judge Cisneros stated unequivocally: "I consider [the] de-designation decisions to be waiver of … the privilege assertion." Tr. 9:18–19 (**Exhibit A**). Judge Cisneros plainly and repeatedly expressed her view on Defendants' serial de-designations during that hearing and explained, "allow[ing] Uber to serve clawback notices as to documents that were de-designated during that process after they had been posted on a privilege log that was then re-reviewed, then we are seriously turning this into a merry-go-round process." (Exhibit A at 9:13–17).

In the accompanying April 24, 2025 Order, Judge Cisneros also stated that "[w]hether that principle applies to documents de-designated after privilege issues were referred to Judge Jones is a question for Judge Jones." ECF No. 2855. She reiterated that ruling on May 22, 2025, explaining that Uber could not claw back documents it had "removed the privilege designation after re-reviewing." Tr. 49:7–9 (**Exhibit B**). Two and half months after the April Order, on July 9, 2025 Uber moved for leave to file a motion for reconsideration of the Court's April 24, 2025 Order. ECF No. 3442. On July 22, 2025, Judge Cisneros denied that motion and detailed this litigation's significant history of privilege disputes and subsequent orders. ECF No. 3545. In her ruling Judge Cisneros again confirmed the meaning of her rulings, explaining Uber was foreclosed from clawing back "certain documents that had been subject to re-review for privilege designation" ECF 3545 at

1, and noted, "the clawback protocol on which Uber relies in Pretrial Order No. 14 did not contemplate Uber serially designating, de-designating, and re-designating documents as privileged in a manner that undermines the completion of discovery on any reasonable schedule." *Id.* at 8.

On July 28, 2025, at the Master's request, Plaintiff provided, among other things, the Master and Uber a list of documents Uber had previously de-designated, then later attempted to clawback. (**Exhibit C**). On August 20, 2025, Uber responded, inexplicably arguing that the 42 documents at instant issue are among those "outside the scope of Judge Cisneros's order because they were de-designated after privilege issues were referred to the Special Master" and that Judge's Cisneros' April Order as to the documents within Judge Jones' purview did not explicitly apply to the July Order (**Exhibit D**).  On September 3, 2025, Judge Jones ruled that Uber could more "fully brief and argue their position" regarding the 42 documents that it de-designated after February 6, 2025 and then later attempted to clawback. (**Exhibit E**). Uber submitted its brief to Judge Jones on September 10, 2025 arguing the Master should decide these issues *De Novo*. (**Exhibit F**). Plaintiffs responded on September 16, 2025. (**Exhibit G**).

Based on the above, the Master found the principles set out by Judge Cisneros in fact did apply and determined that Uber waived privilege over those materials by voluntarily removing its privilege designations and re-producing the documents. *See* Master's September 30, 2025 ruling on Scope of Clawback Orders (ECF 5004-5). Uber objected to the Master's ruling on October 21, 2025. Judge Jones, in the November 17, 2025 Ruling on Scope of Clawback Orders (ECF 4965), reaffirmed the September 2025 ruling, concluding that Uber "may not claw back those documents."

Uber then did nothing. It was not until January 9, 2026 that Uber requested the Master file her order on ECF. Once she did, Uber objected, relying on the provision of the Appointment Order permitting objections "within 5 days from the day the Master filed the order … via ECF." ECF 2302 at 4. Uber delayed taking action even though it knew that the Master, as a regular practice, did not file her orders on ECF, and even though it knew that Plaintiffs were relying on the Master's orders in preparing for the *Dean* trial and the litigation more broadly.

1

## ARGUMENT

The Master and Judge Cisneros found waiver here because Uber made deliberate de-designation decisions and then produced documents as part of a negotiated and court-supervised re-review process. The record here shows Uber's purposeful de-designations and productions—not a stray, accidental slip—after targeted application of "lessons learned" under accelerated schedules. These circumstances, including Uber's intentional re-review, targeted de-designation, and actual production of documents, are textbook hallmarks of waiver. Nothing in Rule 502 or PTO 14 authorizes Uber's gamesmanship.

### I.   Uber's objection to the Master's order, as well as the underlying clawbacks themselves, are untimely.

#### A.   Uber's objection to the Master's order is untimely and appears designed to cause maximum prejudice to Plaintiffs.

The Master orders at issue were issued on September 30 and November 17. Yet, Uber waited until January 14—the day after opening statements in the *Dean* trial—to seek relief from the Court, even though 10 of the 42 documents at issue were on Plaintiff's *Dean* exhibit list. *See* **Exhibit H**.

Uber appears to have justified its extensive delays by the provision in the Amended Appointment Order stating that "[a]ny party wishing to file objections to or a motion to adopt or modify the Master's orders, reports, and/or recommendations must file such objections or motion with the Court within 5 days from the day the Master filed the order, report, and/or recommendation via ECF." ECF 2302 at 4. Yet Uber knew that Judge Jones did not, as a regular practice, file her privilege determinations on the docket. And the company waited until January 9, 2026, more than 50 days and right before the *Dean* trial kicked off, to request the ruling be filed on the docket. *See* **Exhibit I**. Basic principles of equity preclude Uber's tactics.

#### B.   Uber's clawback are untimely under PTO 14 and the Protective Order.

Even if Uber's objection to the Master's orders was timely, the underlying clawback must be timely too. Save one document, they are not. PTO 14, paragraph 4 requires a producing party to provide written notice of any clawback within 21 days of discovering the allegedly privileged production. ECF 396 at ¶ 4. Similarly, the Protective Order provides that any inadvertent

production of privilege material is not a waiver only if the producing party notifies the receiving party "within a reasonable amount of time" after discovering the inadvertent disclosure. ECF 176 at ¶ 11.1. Plaintiff's analysis shows that Uber produced the documents at issue after withdrawing its claims of privilege in whole or in part between February 11 and March 19, 2025. These documents were clawed back on various dates between March 21 and June 19, 2025. One document was clawed back 11 days after it was produced following a privilege review. The other clawbacks came between 27 and 122 days later. *See* **Exhibit. J** (Declaration of Tiffany R. Ellis and supporting chart).

Uber has not made any showing that it satisfied the requirements of PTO 14 even if they were applicable given the robust history of this dispute. These clawbacks, by definition, came at an unreasonable time.

## II.     Judge Cisneros's ruling is final, and Judge Jones correctly found no basis to apply a different rule to privilege disputes presented to her.

Judge Cisneros held that Uber waived privilege over documents the company de-designated following court-ordered re-review. ECF 2855. Uber did not timely seek relief from that ruling. Instead, Uber belatedly filed a motion for reconsideration. Judge Cisneros denied reconsideration, a determination that the Court affirmed. *See* ECF 3545, *mot. for relief denied*, ECF 3649. Judge Cisneros's waiver order is final.

So, the key question for the Master was whether anything had changed. The Master carefully considered Judge Cisneros's ruling and correctly concluded that the same principles applied to the 42 documents de-designated after February 6, 2025. ECF 5004-5. Specifically, Master Jones held "considering the parties' submissions, the relevant authority, the procedural history in this case, and the related court orders, I find that the same principles applied by Judge Cisneros in her April 24, 2025 and July 22, 2025 orders apply to the 42 documents de-designated after February 6, 2025 and Uber may not claw back those documents." *Id*. The Master, in the November 17, 2025, Order upholding the September 30, 2025, ruling, stated "Defendants have proffered no reasonable or principled distinction between the documents de-designated in accordance with Judge Cisneros' orders before or after February 6, 2025. The 42 documents in

dispute were de-designated pursuant to, and as a part of, the process ordered and overseen by Judge Cisneros." ECF 4965 at 3.

The reason Judge Jones found no distinction is that there is no distinction. There should be no substantive difference between Uber's obligations before Judge Jones was appointed with its obligations afterwards. Uber was, at all relevant times, subject to an ongoing requirement to re-review its privilege logs and apply lessons learned, which did not terminate upon the February 6, 2025 appointment of the Master. *See, e.g.*, ECF 3545 at 3; ECF 1908 at 13 (imposing re-review obligation "going forward"). Uber provides no justifiable basis to apply a different standard to de-designations and clawbacks made by Uber after the Master was appointed to oversee the privilege dispute process, nor could they.

**III.    Judge Cisneros and Judge Jones correctly concluded that PTO 14 did not contemplate Uber's abuse of process.**

PTO 14, which Judge Cisneros entered under Federal Rule of Evidence 502(d), states that "the production of any privileged or otherwise protected or exempted information in this case shall not be deemed a waiver … of privilege." PTO 14 at 1. To state the obvious, "production" does not mean 'withholding from production, production, then re-withholding from production.' As Judge Cisneros later explained, "the clawback protocol on which Uber relies in Pretrial Order No. 14 did not contemplate Uber serially designating, de-designating, and re-designating documents as privileged in a manner that undermines the completion of discovery on any reasonable schedule." ECF 3545 at 8. The purpose of PTO 14 was to accelerate discovery, a purpose Uber intentionally— or at least recklessly—frustrated through its abuse of process. *See id.* (recounting tortured history).

**IV.    Uber's clawbacks target intentional, not inadvertent productions, and so are prohibited by Rule 502(d), PTO 14, and the Protective Order.**

Uber argues that intentional productions are subject to clawback because PTO 14 cites to Rule 502(d). Uber is wrong. The Protective Order expressly limits Rule 502(d)'s non-waiver protection to inadvertent disclosures:

> Pursuant to Federal Rule of Evidence 502(d), if a Producing Party ***inadvertently discloses*** information (including both paper documents and electronically stored

1

2

information) subject to protection by the attorney-client privilege, the work-product, joint defense or other similar doctrine, or by another legal privilege protecting information from discovery, such disclosure shall not constitute a waiver or forfeiture of any privilege or other protection in this or any other action, ***provided that the Producing Party notifies the Receiving Party of the inadvertent production, in writing, within a reasonable amount of time of the discovery of the inadvertent production***; however, if the discovery is made after the final Pretrial Conference is held, the Producing Party may seek protection for the privileges and doctrines contained in the paragraph for produced information only by further order of the Court.

3

4

5

6

ECF No. 176 at 16-17 (emphases added).

7

This language makes clear that the Rule 502(d) protection, as implemented by the Court's

8

orders, applies only to *inadvertent* productions. This is consistent with rulings in this circuit where

9

Courts are not "inclined to hold Rule 502(d) applies to the intentional disclosure of privilege and

10

protected materials, where such disclosure would normally result in waiver." *Melendres v.*

11

*Sheridan*, 2025 WL 3124741, at *11 (D. Ariz. Nov. 7, 2025).

12

Uber argues that "certain documents were produced by reviewing attorneys who did not

13

appreciate the privileged nature during review or who simply made a mistake in applying redactions

14

or coding a document–a common occurrence in any large-scale, time-pressured document

15

production as illustrated by the above authority." Obj. at 12. Uber does not support this claim with

16

any evidence or declaration. To support its clawback (timeliness issues aside), Uber would need to

17

explain the circumstances surrounding the de-designation and re-designation of each of the 42

18

documents (and each of the hundreds of clawbacks that will no doubt follow if Uber's objection is

19

sustained). Uber also offers zero discussion, or even acknowledgment, of why these 42 documents

20

(including the two examples it discusses) were improperly withheld in their entirety to begin with.

21

All of this speaks to intentional obfuscation, abuse, and delay—the opposite of accident.

22

Uber cites case law in its objection that actually underscores why the documents at issue

23

here were not inadvertently produced. Uber relies on *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893

24

F.3d 397, 406 (7th Cir. 2018), suggesting that Federal Rule of Evidence 502(b) protects against

25

"lawyers' human errors." Obj. at 11. But Defendants' actions were not the result of human error or

26

mistake. In *Carmody*, a legal memorandum was properly logged on a privilege log and then

27

28

inadvertently produced without counsel's knowledge. *Carmody*, 893 F.3d at 405. Here, by contrast, Uber intentionally de-designated the documents at issue and knowingly produced them.

Additionally, Defendants cite to *Pac. Coast Steel v. Leany*, 2011 WL 4704217, at *5 (D. Nev. Oct. 4, 2011) emphasizing that the large volume of discovery supported a finding of inadvertent disclosure where plaintiffs produced more than 2.3 million pages. Obj. at 11–12. That case is likewise inapposite. There, the three emails at issue "were inadvertently produced as part of Plaintiffs' initial disclosures and were simply overlooked during the privilege reviews." *Pac. Coast Steel*, 2011 WL 4704217, at *1. Here, Uber did not overlook the 42 documents at issue. To the contrary, Uber reviewed and re-reviewed them and made a deliberate decision to de-designate and produce them. Far from supporting Defendants' position, the cases Uber cites confirm that the production here was intentional, not inadvertent, and therefore falls outside the protection of Rule 502(b).

Because Uber did not inadvertently de-designate the documents at issue, their de-designation should be deemed waiver of privilege. Uber's conduct was not a case of producing documents later determined to be privileged, whether by mistake or otherwise. Rather, Uber produced documents only after it affirmatively stripped them of privilege designations following multiple, Court-ordered rounds of privilege review. Uber concedes that it applied "the Court's latest instructions" and "removed or narrowed" privilege claims on these documents. ECF No. 5004-7 at 2) Those actions reflect purposeful judgment, not inadvertent error. *See De Coster v. Amazon.com, Inc.*, 2025 WL 904465, at *5 (W.D. Wash. Mar. 25, 2025) ("Amazon intentionally produced these documents with specific redactions after completing a comprehensive re-review of its privilege logs. When a party makes a strategic decision that it later regrets, such as redacting a document rather than withholding it completely as privileged, it cannot later claim inadvertence to shield itself from the consequences of its own judgment call.") (internal quotation marks omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For these reasons stated herein, Uber's Objections to the Master's Order should be overruled.

Dated: February 11, 2026                    Respectfully Submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267093)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

PLAINTIFFS' RESPONSE TO DEFENDANTS'
OBJECTIONS TO SPECIAL MASTER'S ORDER
NO. 3:23-MD-03084

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>FILER'S ATTESTATION</u>**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: February 11, 2026

By: <u>*/s/Roopal P. Luhana*</u>
Roopal P. Luhana

- 11 -