# EXHIBIT A

Pages 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Lisa J. Cisneros, Magistrate Judge

```
IN RE:  UBER TECHNOLOGIES,      )
INC., PASSENGER SEXUAL ASSAULT  )
LITIGATION                      )   NO. C 23-md-03084-CRB (LJC)
                                )
_____ )
```

San Francisco, California
Thursday, April 24, 2025

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**: (via videoconference)

For Plaintiffs:

        CHAFFIN LUHANA LLP
        600 Third Avenue - 12th Floor
        New York, New York  10016
  BY:  **ROOPAL LUHANA, ATTORNEY AT LAW**
        **ELIZABETH M. WILKINS, ATTORNEY AT LAW**

        PEIFFER WOLF CARR KANE CONWAY & WISE
        555 Montgomery Street - Suite 820
        San Francisco, California 94111
  BY:  **RACHEL B. ABRAMS, ATTORNEY AT LAW**

        GIRARD SHARP LLP
        601 California Street - Suite 1400
        San Francisco, California  94108
  BY:  **SARAH R. LONDON, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Remotely Reported:  Marla F. Knox, RMR, CRR
                 CSR No. 14421, Official U.S. Reporter

| | |
|---|---|
| 1 | **APPEARANCES**:   (CONTINUED, VIA VIDEOCONFERENCE) |
| 2 | |
| 3 | For Defendants:<br>                        SHOOK, HARDY & BACON LLP |
| 4 |                        2121 Avenue of the Stars - Suite 1400<br>                        Los Angeles, California  90067 |
| 5 |                 BY:  **MICHAEL B. SHORTNANCY, ATTORNEY AT LAW**<br>                      **ALYCIA A. DEGEN, ATTORNEY AT LAW** |
| 6 |                        SHOOK, HARDY & BACON LLP<br>                        600 Travis Street - Suite 3400 |
| 7 |                        Houston, Texas  77002 |
| 8 |                 BY:  **VERONICA H. GROMADA, ATTORNEY AT LAW**<br>                      **KATHLEEN FRAZIER, ATTORNEY AT LAW** |
| 9 |                        SHOOK, HARDY & BACON LLP<br>                        2555 Grand Boulevard |
| 10 |                        Kansas City, Missouri  64108 |
| 11 |                 BY:  **JEREMIAH WIKLER, ATTORNEY AT LAW**<br>                      **CHRISTOPHER V. COTTON, ATTORNEY AT LAW** |
| 12 |                        KIRKLAND & ELLIS LLP<br>                        601 Lexington Avenue |
| 13 |                        New York, New York  10022 |
| 14 |                 BY:  **JESSICA DAVIDSON, ATTORNEY AT LAW** |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| | |
|---|---|
| 1 | **Thursday - April 24, 2025**                                      **8:38 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:** All right.  We will get started.  The U.S. |
| 5 | District Court is now in session.  The Honorable Magistrate |
| 6 | Judge Lisa J. Cisneros presiding. |
| 7 | We are calling 23-MD-03084, In Re: Uber Technologies, Inc. |
| 8 | Counsel, please state your appearances for the record.  We |
| 9 | will start off with Plaintiff and Roopal. |
| 10 | **MS. LUHANA:**  Good morning, Your Honor, Roopal Luhana |
| 11 | of Chaffin Luhana for the Plaintiffs. |
| 12 | **THE COURT:**  Good morning. |
| 13 | **MS. LONDON:**  Good morning, Your Honor, Sarah London, |
| 14 | Girard Sharp, on behalf of the Plaintiffs. |
| 15 | **THE COURT:**  Good morning. |
| 16 | **MS. ABRAMS:**  Good morning, Your Honor, Rachel Abrams |
| 17 | from Peiffer Wolf for the Plaintiffs. |
| 18 | **THE COURT:**  Good morning. |
| 19 | **MS. WILKINS:**  Good morning, Your Honor, Beth Wilkins |
| 20 | Chaffin Luhana for the Plaintiffs. |
| 21 | **THE COURT:**  Good morning. |
| 22 | **THE CLERK:**  Defendants.  Michael, will you start us |
| 23 | off. |
| 24 | **MR. SHORTNANCY:**  Sure.  Good morning, Your Honor, good |
| 25 | to see you.  Michael Shortnancy from Shook Hardy on behalf of |

1    the Uber Defendants.

2        I have a number of colleagues on with me who will speak

3    depending on the topic including Alycia Degen, Chris Cotton,

4    Veronica Gromada and Jeremy Wikler.

5            **THE COURT:**  Okay.  Good morning.

6            **MR. SHORTNANCY:**  Good morning.

7            **THE COURT:**  Okay.  So, thank you for the joint status

8    report that you-all filed in advance of today's discovery

9    status conference.  We don't have a lot of time this morning,

10   so I'm going to walk through this as quickly as possible, the

11   various issues that were addressed; and I want to also touch on

12   the depositions for the current Uber CEO as well as the former

13   one, Travis Kalanick, just briefly at the end regarding

14   logistics.

15       So, focusing in on this report, there are some issues

16   related to 30(b)(6) depositions, and Plaintiffs had proposed a

17   May 2nd deadline to attempt to reach an agreement and a May 5th

18   deadline to raise disputes if they are not resolved.

19       I think that just given the tight timeline that we have to

20   get all of this done, it does make sense for the Court to

21   impose those deadlines to keep the process moving.

22       So, I -- I hope that you-all can resolve this by May 2nd.

23   If -- if Uber wants to be heard on that deadline and a May 5th

24   deadline to submit briefing on this, you can propose some

25   alternate timeframe right now; but those deadlines seem

1    reasonable to me as opposed to Uber's proposal that no

2    deadlines be set at all.

3        **MS. DEGEN:**  Good morning, Your Honor, this is Alycia

4    Degen with Shook Hardy for the Uber Defendants.  We would like

5    to be heard briefly on the timing of resolving the disputes and

6    getting a submission to the Court and some suggestions on how

7    we might do that sort of submission most efficiently.

8        I would suggest if we can -- so, I think May 2nd is next

9    Friday.  May 5th is next Monday.  Knowing the coordination that

10   needs to happen on these issues, I would suggest that we move

11   the time to finish our meet-and-confer to early the week of the

12   5th with a submission later that week; and I think that will be

13   important because I just -- as I walked in or turned on my

14   computer this morning, we had suggested last Friday a series of

15   dates to Plaintiffs on topics that overlap with depositions

16   that are moving forward in the JCCP including dates coming up

17   relatively quickly.

18       And I saw for the first time this morning that Plaintiffs

19   do not want those dates and want to -- looks like reschedule

20   them.  It is not clear to me at this point whether the

21   rescheduling is just for the MDL or for the JCCP as well, but I

22   think we are going to need a little bit of time to herd the

23   cats and get this done in a way that's going to make sense

24   because, you know, there is a lot to be done in both

25   jurisdictions; and I think we can get these done in a

**PROCEEDINGS**

 1  coordinated fashion relatively directly.

 2      With respect to how we would provide the submission, I'm

 3  familiar with the PTO 8 process.  I also know there's a lot --

 4  there can be a lot of back-and-forth that takes up time.

 5      Our thought was if we are going to need to submit

 6  something to the Court, that the parties exchange a list of the

 7  topics that they think are at issue.  We each write up our --

 8  set a time for that exchange, set a time to exchange our

 9  positions.  Defendants will be happy to combine all of that

10  into a single document to the Court, but I don't think this is

11  something we are going to need to have a lot of -- you know,

12  back-and-forth in a written submission over the course of a

13  week.  We should all just get our positions down on paper and,

14  you know, get them to the Court in a single document.

15                  (Pause in proceedings.)

16          **THE COURT:**  Why -- sorry, why doesn't the PTO process

17  that is currently in place not work for that?

18          **MS. DEGEN:**  So, Your Honor, I think it is more a

19  question of -- the PTO 8 process, effectively if we were going

20  to be submitting a -- disputes to the Court -- if we are

21  supposed to meet and confer through next Friday and then submit

22  disputes to the Court on Monday, we effectively have to start

23  drafting now.  And I think the parties -- we all just need to

24  get -- to sit down and work through this a bit more.

25      So, I think in this one circumstance something a little

1    more direct that doesn't take a week -- or a week-and-a-half of

2    back and forth on what we are going to say on paper, let us

3    focus on what we actually need to get done; see what we can

4    work out, and then this should be a -- you know, this topic,

5    you know, Plaintiffs, Defendants; this topic, Plaintiffs

6    Defendants.  So, we do it pretty quickly.

7              THE COURT:  Okay.  Do Plaintiffs want to respond to

8    either the timing or this formatting proposal?

9              MS. LUHANA:  Yes, Your Honor, Roopal Luhana for the

10   Plaintiffs.  Judge, just to give you some background, we had

11   served these 30(b)(6) notices on Defendants March 19th and

12   March 21st.  We received dates for depositions on April 18th,

13   and those were dates that were negotiated with the JCCP, and

14   they have provided dates all in the beginning of May with three

15   depositions on the same date.  They are unworkable only for the

16   MDL.  We are not representing the JCCP Plaintiffs, of course.

17        And so, we believe in light of what's outstanding, we have

18   18 more depositions to handle.  We have eight more 30(b)(6)s to

19   do.  We just need to move this process along in terms of the

20   timeline.

21        I think next week is sufficient to meet and confer, as we

22   had suggested, to be resolving these issues by May 2nd to file

23   something on May 5th; and we think the PTO process thus far has

24   worked well, and I think will work in this circumstance.

25             MS. DEGEN:  May I respond, Your Honor?

1          THE COURT:  Sure.

2          MS. DEGEN:  Thank you.  They served 162 30(b)(6)

3    topics.  A lot of those overlap with topics that are moving

4    forward in the JCCP.  We have had lawyers who participate in

5    both the JCCP and the MDL involved in the meet-and-confers and

6    the coordination.  In fact, we have a gentleman who is -- you

7    know, his job in this is to coordinate amongst the two

8    jurisdictions.

9          If we -- we need to be speaking with MDL and JCCP Counsel

10   right away to get these issues figured out.  In fact, some of

11   the deposition dates -- you know, they are not following

12   through on placeholder dates that have been -- that we have

13   been holding for quite some time.  So --

14         THE COURT:  All right.  Let's do this.  Finish your

15   meet-and-confer effort by Friday, May 2nd; and then submit the

16   dispute by May 8th to the Court if you haven't resolved it

17   entirely or if there is some remaining disputes that I need to

18   address; but May 2nd is the deadline for the meet-and-confer

19   process and then the submission will be by May 8th.

20         In terms of the page limits and the like, PTO 8 sets the

21   default; but if the parties stipulate to some other format that

22   doesn't give me more than ten pages to read as a letter, that

23   will be fine with me.  Given the number of topics that have

24   been noticed, you-all may need some more pages.

25         So, all right.  So let's move on.  Clawback procedures.

1    So, I -- when I looked at this issue, I tend to agree with Uber

2    that -- to the extent that these clawback disputes are

3    privilege disputes, then they ought to be addressed by Special

4    Master Judge Barbara Jones.

5        However, I have a problem with allowing clawback notices

6    concerning documents that were de-designated over the course of

7    the fall months, winter when -- before Judge Jones was

8    appointed as Special Master; and when I was overseeing a -- you

9    know, tranches of privilege log disputes, and I specifically

10   ordered in multiple orders -- in October, November, December --

11   Uber to rereview and de-designate based on what my rulings had

12   been.

13       So, essentially if I allow Uber to serve clawback notices

14   as to documents that were de-designated during that process

15   after they had been posted on a privilege log that was then

16   re-reviewed, then we are seriously turning this into a

17   merry-go-round process.

18       And so, I consider those de-designation decisions to be

19   waiver of -- of the privilege assertion.  So, those -- I don't

20   know how many -- I think the status report referenced 30.  It

21   may not be a lot that are at issue in that regard, but at least

22   to cabin this process so that it's focused on documents that

23   were not previously on the privilege log that Uber may view

24   that it inadvertently disclosed them as part of the discovery

25   process, then those seem to me fair game for a clawback notice

1  unless there is something that Judge Jones has done in her --

2  in her handling of the privilege logs dispute.  I will leave

3  that to her.

4      But at least for the time period in which privilege

5  assertions were withdrawn, documents were de-designated and

6  taken off the privilege log while I was handling the privilege

7  log process and ordering rereviews on multiple occasions, then

8  those privilege assertions are waived and they should not be

9  part of clawback -- new clawback notices and disputes that are

10 submitted to Judge Jones.

11         MS. LUHANA:  Thank you, Your Honor.

12         MR. SHORTNANCY:  May I speak to that, Your Honor?

13 This is Michael Shortnancy speaking for the Uber Defendants.

14         THE COURT:  Yes.

15         MR. SHORTNANCY:  I hear what you are saying, Judge.  I

16 absolutely understand that.  Let me offer some additional, I

17 think, color.  When we were in the process before Your Honor

18 for the privilege log challenges, there were a number of

19 documents that we reviewed on very tight timelines.  I don't

20 have the exact dates in front of me; but as Your Honor was

21 entering orders, we were directed to go back -- and we did go

22 back -- to re-review documents on the log to apply lessons

23 learned.  Plaintiffs also were ordered to apply lessons learned

24 to their challenges but -- the parties did that.

25      Uber was required to do that in very compressed

**PROCEEDINGS**

 1  timeframes.  And so, to the extent a document may have been

 2  de-designated -- and there are very few of them.  So, we are

 3  talking about 30 at this point, give or take -- but in the rare

 4  instance that I think some of those documents may have come off

 5  of the privilege logs or assertions of privilege over them --

 6  over the passage of time and with rulings subsequent by

 7  Your Honor and by Judge Jones and as we learn additional

 8  information that may not have been apparent at the time we were

 9  working under those deadlines to apply the Court's lessons

10  learned -- there may be cases where we believe a clawback is

11  appropriate and supportable.

12       And so, I would just urge Your Honor -- you know, the

13  attorney-client privilege is a very important privilege.  I

14  would urge the Court to consider not imposing a blanket waiver

15  in that -- and permitting because the circumstances are quite

16  few.  We are not trying to redo or get everybody back on the

17  merry-go-round.  We are very sincerely asserting what we

18  believe is a privilege that we have a foundation to assert in a

19  rare instance in these cases where information may have become

20  apparent later through the course of our discovery and

21  investigation about, perhaps, the -- that a lawyer who was not

22  apparent on the face of the document actually asked the

23  business person to prepare the presentation or something like

24  that, to use a hypothetical, those are the instances where we

25  would be asserting a clawback.

1       I would respectfully request that the Court permit the

2   parties to bring that to Judge Jones.  It is not something that

3   we have, you know, used in bad faith to encourage a

4   merry-go-round and let Judge Jones decide; was that a waiver,

5   was it not.  Was that part of lessons learned or was it not.

6   It is such a small number of documents, Judge, and the

7   privilege is so important that I think that it militates in

8   favor in this case allowing Judge Jones to be sort of the

9   arbiter of that decision.

10      **THE COURT:**  I'm not inclined to do that.  To me it

11  sounds like a motion for reconsideration based on newly

12  discovered evidence, so it would be submitted to me since I

13  made the decision.  And for Judge Jones it was, you know, would

14  be within her purview to address new privilege log disputes

15  that couldn't have been raised in front of me.  And I think

16  it's a bad -- if I went in that direction that you are

17  proposing, it sets up, I think, a -- some real procedural

18  problems in the way it incentivizes parties to maybe not do a

19  thorough review in the first instance; and really, the

20  re-review process was a second opportunity for Uber to do the

21  due diligence that it needed to do to appropriately assert

22  attorney-client privilege and any other privilege that may --

23  or protection that might have been applicable.

24      So, I was serious about the re-review process.  The

25  timeframes for what they were -- if there was concern that

1    there were individuals that you were not able to talk to and

2    that you needed to, you know, follow-up with for a certain

3    subset of documents, that could have been raised at that time.

4          And so, I think also what -- I'm thinking about too is the

5    extent to which there was broad de-designations of thousands of

6    documents that were then -- where the assertions were then

7    withdrawn.  And so, that to me -- struck me as substantial

8    over-designation.  And so, you know, that's just also why I'm

9    skeptical of any further efforts to turn this process into

10   another trip around a carousel.  It felt like we already took

11   one trip around the merry-go-round.

12          **MR. SHORTNANCY:**  Your Honor --

13          **THE COURT:**  And -- go ahead, sir.

14          **MR. SHORTNANCY:**  Sorry, I didn't want to interrupt,

15   Judge.  Are you --

16          **THE COURT:**  No.  I'm done.  What did you want to --

17          **MR. SHORTNANCY:**  Thank you.  I would just clarify a

18   couple of points.  I mean, we are not suggesting that we take a

19   document the Court has specifically ruled on and redoing that

20   document.  I think that is a fair point, Judge.

21          I think what we are suggesting is that in a situation

22   where you have many thousands of documents and many thousands

23   of privilege log entries where we were asked to have lawyers

24   sitting in -- you know, in a room apply the Court's thinking

25   and reasoning on one document that was ruled on and applying it

1    to a larger set of documents, that is the situation I think

2    that we are talking about.

3        **THE COURT:**  It is a larger set of documents that were

4    already on privilege logs that had already been served to the

5    Plaintiffs that were already part of the process of involving a

6    series of tranches of documents that were sampled.  And so,

7    that's a process that I instituted and oversaw and utilized

8    everyone's time and resources as we focused in on that.

9        And so, I'm not going to have that process redone.  Even

10   if I didn't adjudicate a particular document, it still feels

11   like we are going back to that prior corpus of -- of ESI or

12   documents that we worked through over the fall.  And it seems

13   inefficient and inconsistent.  And then if I'm willing to

14   re-open the process, then that undercuts the Court's efforts to

15   do things as efficiently as possible and also not reintroduce a

16   whole new set of privilege disputes for Judge Jones that we at

17   least -- were a portion of.

18       So, I don't think that it's a good use of my discretion

19   and oversight of the process to re-open that.  I think, you

20   know, obviously attorney-client privilege and other privileges

21   are, you know, incredibly, exceptionally important and

22   foundational to how litigation happens and how people and

23   companies seek representation.  And that's why at the outset,

24   that attention and care needs to be taken to get -- make the

25   right calls.  And essentially Uber -- for the body of documents

1  that we worked through, Uber had two opportunities.  So, that's

2  where -- how I'm handling this.

3         **MS. LUHANA:**  Your Honor, can I say one thing?

4         **THE COURT:**  Well, we don't have a lot of time today

5  because I have also got --

6         **MS. LUHANA:**  It's just -- sorry.  It is just a quick

7  request.  We just had requested that we submit the dispute to

8  Judge Jones by April 28th because these clawbacks were

9  happening on the eve of depositions during depositions, so the

10 process just needs to be addressed.  So, we want to submit our

11 dispute.  And so, we just wanted to ensure that --

12        **THE COURT:**  I'm not going to control the timeline for

13 when she handles these disputes.  I don't know how she is going

14 to want them worked up or what timeframe that would be.  So, I

15 would leave that to the parties to, you know, meet and confer

16 and to propose to her a timeframe and she can respond to that

17 how she sees fit.

18        **MS. LUHANA:**  Understood, Your Honor.

19        **MR. SHORTNANCY:**  Judge, just so you know, the parties

20 met ex parte separately with the Special Master yesterday to

21 discuss gaming out a plan for this, just so you are aware.

22        **THE COURT:**  Okay.  All right.  Thank you.

23      All right.  Safety data.  Okay.  So, the interrogatory

24 request looks pretty straightforward.  To the extent that

25 Plaintiffs are asking for the number of sexual violent

1   incidents for each month in each category, those terms say

2   "incidents" not "reports."  It sounds like there is a lot of --

3   there was meet-and-confers on this.  Obviously it's possible

4   that there is more to the story as far as what Uber agreed to,

5   and I don't have a record of that.  This dispute is not briefed

6   or explained beyond what I have in the status report, but it

7   just seems like if it is -- it says "incidents," not "reports."

8        So, to the extent Uber may need to de-duplicate the data

9   so that it reflects incidents rather than reports, then -- you

10  know, per month and per category, then that would be Uber's

11  burden to do that.

12       I will give you-all another week to meet and confer on

13  this.  And if you don't have it fully resolved, you can submit

14  it through a PTO 8 letter to me a week from today.

15       **MR. WIKLER:**  Your Honor, Jeremy Wikler, if I may,

16  that's what Uber provided is the number of incidents classified

17  by each category by month for 2017 to 2022.

18                 (Pause in proceedings.)

19       **THE COURT:**  Plaintiffs.

20       **MS. WILKINS:**  Your Honor, Beth Wilkins for the

21  Plaintiffs.  I'm happy to respond to that.  Appreciate the

22  deadlines for filing a PTO 8 letter.  I think that makes sense.

23  From the Plaintiffs' perspective, despite what Mr. Wikler just

24  represented, there is still a dispute that remains.  What Uber

25  provided to the Plaintiffs includes duplication in potentially

1    every category and every data point from January 1st, 2017, all

2    the way through December of 2022.

3        They have identified that each month in each of the 23

4    categories that were produced is essentially unreliable because

5    we don't know how much duplication is in each category.

6        I'm glad to continue to meet and confer on that and file a

7    PTO 8 letter if we can't reach resolution, but the bottom line

8    is what Plaintiffs need is whatever Uber's witnesses intend to

9    rely on without being surprised when we see it in an expert

10   report or somewhere later on.  So, if they are going to use

11   de-duplicated data at some point in this litigation, then we

12   need to know what their numbers are.

13       **THE COURT:**  Okay.  Then it seems like to some extent

14   Uber's position in the status report is that Plaintiffs have

15   raw data.  And so, therefore, they should just look at and

16   analyze the raw data; but I think Plaintiffs are entitled to

17   serve interrogatories to ask, you know, additional questions

18   that are relevant to the case, and those questions may be about

19   data that -- or analyses that Uber is relying on or uses apart

20   from what's in the safety report or what's in the data that was

21   provided in the safety report.

22       So, to the extent Uber's position is, Well, you know, they

23   will have everything and there is nothing -- based on that raw

24   data and nothing further is discoverable, I just don't foresee

25   that Rule 26 applying in that way but --

1            **MR. SHORTNANCY:**  Your Honor, it is Michael Shortnancy,

2     if I may speak to that.  The chief data scientist is being

3     deposed about a hundred yards from me right now, the person who

4     prepared this data, the person who certified this data.

5     I believe, although I'm obviously not in that room right now,

6     that there is participation by the MDL Plaintiffs in the

7     deposition by agreement to minimize duplicative questions that

8     may arise in what is set to be a deposition of the same data

9     scientist tomorrow on these topics.

10           So, I think that this is being presented to the Court as

11    somewhat of a manufactured dispute.  We have provided

12    information to Plaintiffs.  We have provided in numerous forms

13    at the Plaintiffs' request.  We provided unique counts at the

14    Plaintiffs' request.  We are not saying that the data is

15    unreliable.

16           We are saying what we have always said to the Court and in

17    the safety reports; that when you are outside of the five most

18    serious categories of the taxonomy, which go through the audit

19    process and the safety reporting process, some of the -- the 16

20    through 21 can be categorized in multiple categories because

21    they may be subjective.

22           And so, when they are not sort of adjudicated or firmly

23    decided or audited to be in one category, they are going to be

24    in multiple; and that's why we are saying -- we have explained

25    this to Counsel multiple times -- that that's the way the data

 1    exists.  And so, this is being presented, Judge, as some

 2    dispute and --

 3            **THE COURT:**  Yeah.

 4            **MR. SHORTNANCY:**  -- there is no --

 5            **THE COURT:**  I'm not going to decide it today.  So,

 6    there will be a letter where you can provide this more fulsome

 7    explanation and record there.  And I will carefully review it.

 8        Okay.  All right.  So, moving on, we have got the TAR

 9    update.  It doesn't seem like there is an active dispute here

10    that needs to be addressed, and we really don't have time to

11    talk about anything that's unnecessary for discussion today.

12        So, the bellwether -- I'm going to move on to the next

13    item.  The bellwether deposition -- Plaintiffs' depositions,

14    I'm going to hold off on resolving this until I have a clear

15    understanding with what -- of what Judge Breyer is going to do

16    with the bellwether waves and staggering discovery by

17    bellwether waves.  So -- so, that's how I'm going to approach

18    that.  I think that should be resolved soon given that you-all

19    briefed it and submitted it to him, you know, just a short

20    while ago; but the parties should be prepared to conduct the

21    Wave 1 depositions very, very quickly.

22        I think at different times Plaintiffs have said that this

23    is like exceptionally challenging, but there are a lot of

24    different firms involved in this litigation.  So, I imagine

25    that the leads will allocate the work so it can be handled

1    expeditiously.

2        So, all right.

3        **MS. ABRAMS:**  Thank you, Your Honor, Rachel Abrams for

4    the Plaintiffs.  And we have provided deposition dates for all

5    of the proposed bellwether in Wave 1 and most of them in 2

6    already.

7        **THE COURT:**  Okay, all right.  So, let's move on to the

8    next item, release authorizations.  And this does not sound

9    like a dispute that's ripe just yet.

10        So, now moving on to the Plaintiffs' responses to

11    discovery request, it seems like this is a dispute about

12    delinquencies in the Plaintiff fact sheets and that Uber is

13    looking for a more -- a streamline process than what PTO 10

14    provides for, for raising deficiencies.

15        You know, I'm reluctant at this point to diverge from that

16    process; but if there are particular Plaintiffs' firms or

17    lawyers that are using that process essentially to get de facto

18    extensions and to consistently avoiding Plaintiff fact sheets

19    when they are actually due, then, you know, that's disregarding

20    a discovery order and that's opening yourself up to potential

21    sanctions.

22        So, I don't know exactly what is going on here but that's

23    my reaction on the record.  So, you know.

24        **MS. ABRAMS:**  Thank you, Your Honor, this is Rachel

25    Abrams for the Plaintiffs again.  Just so you know, we as well

1    were unaware of this -- this issue, and this is the first time

2    in the JSR that we saw this; and we have not been advised of

3    the firms, the cases that are allegedly deficient for PFSs.

4    So, we are very much willing to work with Uber and their

5    Counsel on rectifying these.  We were just unaware of it and

6    typically, as we have done in the past, we have seen the PTO 8

7    briefs on this failure to provide PFSs.  So, again we were as

8    surprised as you were.

9         **THE COURT:**  Okay.  Well, now that you.

10        **MS. FRAIZER:**  If I may, Kat Frazier for the Uber

11   Defendants.  We just raised this here because it is an ongoing

12   issue, and we wanted to raise to Your Honor's awareness that we

13   were just thinking about ways to potentially not change PTO 10

14   in any way but to increase the -- maybe the effectiveness and

15   the efficiencies in resolving deficiencies.

16        And so, we are absolutely willing to meet and confer with

17   the Plaintiffs about how best to do that in a way that won't

18   further burden the Court and that will be something that we can

19   all sort of agree on moving forward.

20        **THE COURT:**  Okay.

21             (Pause in proceedings.)

22        **THE CLERK:**  Sorry, Your Honor, I'm seeing --

23        **THE COURT:**  A raised hand.

24        **THE CLERK:**  Jessica Davidson, is she with any --

25        **MS. DEGEN:**  Yes, Your Honor, she is with the

 1    Defendants and may be the best person if we have questions

 2    about the Apex depositions.

 3            THE COURT:  Oh, okay.  So, let's bring her on because

 4    I want to turn to that very quickly before we wrap up.

 5            THE CLERK:  Yes, Your Honor.

 6            THE COURT:  Just to respond to Ms. Frazier, so now --

 7    it sounds like, according to Ms. Abrams, the lead Counsel on

 8    Plaintiffs' side were unaware of this.  Now, they are.  And,

 9    you know, that's one of the benefits of the joint status

10    reports is it helps to surface issues that the parties need to

11    address and to keep the process moving.

12        So, you-all should address it and you have got my -- the

13    Plaintiffs' Counsel have my preliminary views on this.  I do --

14    you know, we need to make sure that the PFS process serves --

15    happens in a timely way, in a way that's consistent with PTO

16    10.  And if not, it is disregard of the discovery order so

17    that's very risky and creates exposures to sanctions.

18        So let's move on.  I got the safety lens order out.  I

19    know there is an outstanding set of issues related to the

20    bellwether depositions protocols.  I will handle those shortly.

21    But as far as the depositions for Khosrowshahi and for

22    Mr. Kalanick, I don't think we set a start time; and I think

23    the parties kindly start to planning late morning on the East

24    Coast so that I could get on Zoom at an ordinary hour and

25    monitor the depositions.

 1        I'm willing to start as early as 8:00 in the morning or

 2   7:30 in the morning to move the process along.  And given that

 3   there is coordination for -- in depositions with JCCP Counsel,

 4   that may be necessary.  So, we can talk about timing right now

 5   or you could e-mail my courtroom deputy after we wrap up today

 6   and let me know what time you think it would make sense to

 7   start and share with me -- to the extent you know today -- how

 8   you plan -- how you think this process will play out

 9   timing-wise and as far as coordination.

10        **MS. DAVIDSON:**  Your Honor, this is Jessica Davidson.

11   It is nice to meet you.  I'm with the firm of Kirkland & Ellis.

12   As you may have heard, we recently joined Uber's defense team.

13   I'm the one who is tasked with making sure that all of your

14   accessibility is perfect for those depositions.  And so, if

15   something goes wrong, if your real-time doesn't work, I'm the

16   person to yell at.

17        **THE COURT:**  Thank you.

18        **MS. DAVIDSON:**  I just want to make sure I understand

19   one thing.  When you say "8:00 a.m." -- obviously one

20   deposition is going to be in California.  One deposition is

21   going to be in New York.  I assume you mean 8:00 a.m. Pacific

22   time.

23        **THE COURT:**  Yes, Pacific time so that your

24   7:30 a.m. -- and I was specifically -- didn't want to delay the

25   deponent, Mr. Khosrowshahi and all the Counsel on the East

 1  Coast.  I can wake up and get onto Zoom if it needs to be

 2  7:30 or 8:00 or earlier.  I don't want you to be shy about

 3  asking me to start earlier than you might have originally

 4  anticipated if that's going to be helpful for the process.

 5          MS. DAVIDSON:  That would be very, very helpful with

 6  respect to Dara's deposition in New York.  If I may, I would

 7  like to take you up on the offer that we follow up with an

 8  e-mail after I talk to our team and talk to Plaintiffs and make

 9  sure that we are well coordinated with the MDL part and the JCC

10  part.

11          THE COURT:  Okay.  Also, I will have my law clerk

12  observing as well.  So, that's something that you can handle on

13  the back end with my courtroom deputy.

14          MS. DAVIDSON:  Will your law clerk be with you or

15  separate?

16          THE COURT:  We will probably be on separate screens.

17          MS. DAVIDSON:  And do you want real-time for your law

18  clerk as well?

19          THE COURT:  Sure.  Why not?  All right.  Is there

20  anything else that we should discuss?

21          MS. LUHANA:  Nothing for the Plaintiffs, Your Honor.

22          THE COURT:  Okay.

23                  (Pause in proceedings.)

24          THE COURT:  From Defense?

25          MR. SHORTNANCY:  Nothing, Your Honor.

PROCEEDINGS

```
 1              THE COURT:  Okay.  All right.  Thank you.  I had to
 2     move this along pretty quickly just because I have other
 3     settings this morning.
 4              MR. SHORTNANCY:  We appreciate your time.
 5              MS. LUHANA:  Thank you, Your Honor.
 6              THE COURT:  All right.  Thank you.
 7              THE CLERK:  Court is adjourned.
 8              (Proceedings adjourned at 9:17 a.m.)
 9                         ---oOo---
10
11                   CERTIFICATE OF REPORTER
12              I certify that the foregoing is a correct transcript
13     from the record of proceedings in the above-entitled matter.
14
15     DATE:   April 24, 2025
16
17
18
19     _____
20          Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
21          United States District Court - Official Reporter
22
23
24
25
```